EXHIBIT B

WORK LETTER AGREEMENT

Branch – Douglasville, LLC ("Landlord") and O'Reilly Automotive Stores, Inc. ("Tenant") are executing simultaneously with this Work Letter Agreement ("Work Letter"), a written lease (the "Lease") covering the demised premises (the "Demised Premises"), as further described in the Lease.

This Work Letter defines the design and construction of the Improvements (as defined below) that Landlord is obligated to provide on the Demised Premises. If there is a conflict between the terms and provisions of this Work Letter and the Lease, this Work Letter shall control. Terms not otherwise defined in this Work Letter shall have the meaning set forth in the Lease.

This Work Letter is a part of the Lease and is subject to all of its terms and conditions, including all definitions in the Lease. Unless the context otherwise requires, any references to the Lease shall include the Work Letter and the obligations herein shall, to the extent applicable, continue during the Lease term.

In consideration of the mutual covenants herein, Landlord and Tenant mutually agree as set forth below:

**1. DESIGN.**

Landlord and Tenant shall coordinate and provide information to the other in order to accomplish the Permitted Construction Documents (as hereinafter defined) provided for in Section One (1) of this Work Letter in accordance with the following:

1.1     Design Criteria and Standards

(a)     *Basis for Documents*
The design of the Improvements shall be based upon criteria set forth in the Lease Agreement, Lease Exhibits (including the Tenant provided sample plans, herein defined as "Reference Set"), Work Letter Exhibits B-1 (Site Investigation and Design Requirements), B-2 (Design/Construction Requirements, including Scope of Work Schedule), B-3 (Geotechnical Requirements), B-4 (Design Approval), governing codes, ordinances, and standards. Project design shall comply with all applicable governing laws and regulations, including Americans with Disabilities Act (ADA), in effect at the time of construction.

(b)     *Form of Documents*
Landlord and Tenant drawing submittals referenced herein shall adhere to the United States National CAD Standard (Current Edition) Uniform Drawing System (UDS). Drawing sheet size shall be 24"x36". All drawing submittals required herein shall be in PDF format with all sheets contained within a single file. File naming shall contain the City, State, and Tenant's project designated code. Where hard copy submittals are indicated herein, in

**EXHIBIT B TO COMPLAINT**

1

addition to the electronic copy, such submittals shall be full size sheets and bound in a complete set.

(c)    *Approval and Consent*
Any approval or consent required by either Tenant or Landlord in this Exhibit B Work Letter Agreement shall not be considered achieved until dated signatures of Landlord Representative's and Tenant's Project Coordinator (as both are provided in Section 5 herein) are provided on the Design Approval Document, attached hereto as Work Letter Exhibit B-4. **Landlord and Tenant shall not move to the next phase of this Work Letter until Work Letter Exhibit B-4 reflects such approval.** Landlord and Tenant shall cooperate in the processing of all plans, documentation, and information of this Work Letter and shall respond to all requests for comments and information in accordance with this Work Letter. Should Tenant provide comment rather than approval to any Landlord submittal herein, such submittal shall be deemed disapproved. In the event of a Tenant comment rather than approval, Landlord shall resubmit such item addressing Tenant's comments. Tenant shall then have fifteen (15) days to provide comment or approval to the resubmitted item.  Such process shall continue until Tenant approves any Landlord requirement herein and provides a dated signature on Exhibit B-4 hereto.  Tenant's approval of any plans, drawings or reports is not a representation or warranty that such items comply with any applicable code, law or regulation.  Except as otherwise expressly stated herein, any approval or consent required by either Tenant or Landlord shall require a response within fifteen (15) days upon receipt of a request for comments and/or approvals.

(d)    *Acceptance of Landlord Requirements*
Landlord acknowledges that Tenant's store opening scheduling relies heavily on the timing for information provided in this Work Letter.  As such, Tenant may delay its acceptance of any of the Landlord requirements, set forth herein in the following sections of this Work Letter Agreement until fifteen (15) days before the due date for any particular requirement.

1.2    Landlord's Due Diligence

No later than thirty (30) days after the Effective Date of the Lease, Landlord shall deliver to Tenant, for its review and approval,  a preliminary site plan based on Lease Exhibit A-1, a land survey based on Lease Exhibit B-1 (electronic copy signed and sealed) including confirmation of any plans (or lack thereof) for road or street improvement  projects, medians to be constructed (current or future) or right–of–way takings  that potentially affect access to the Demised Premises or the normal course of business operations of Tenant, an environmental report (Phase I) certified to Tenant and created within six (6) months of the Effective Date of the Lease, a geotechnical report (in accordance with Work Letter Exhibit B-3, and a title policy (collectively "Landlord's Due Diligence Items"). Tenant shall have thirty (30) days to approve Landlord's Due Diligence Items.

1.3    Landlord Civil and Site Plans

No later than forty-five (45) days after Tenant's approval of Landlord's Due Diligence Items, Landlord shall deliver to Tenant civil plans and specifications based upon Landlord's Due Diligence Items including preliminary drawings of site grading plan with contours, site

**EXHIBIT B TO COMPLAINT**

development plan with dimensions, Tenant's proposed ground signage location, site pavement design sections, landscape and irrigation layout plan (if applicable), and site utilities diagram plan (collectively "Landlord Civil Package"). The Landlord Civil Package shall not include exterior project lighting, which shall be part of Tenant's Building Package, as defined in Section 1.4. Tenant shall have thirty (30) days to approve the Landlord Civil Package. No later than five (5) days after Tenant's approval of the Landlord Civil Package, Landlord shall submit to Tenant both a final paper and electronic copy set of construction documents, signed and sealed by a licensed professional.

1.4     Tenant Building Package

No later than forty-five (45) days after Tenant's approval of the Landlord Civil Package Tenant shall deliver to Landlord plans including architectural, structural, mechanical, electrical, plumbing, Tenant's sign power requirements, and exterior project lighting plans (collectively "Tenant's Building Package"). Landlord shall have fifteen (15) days to approve Tenant's Building Package. Tenant's Building Package shall be based upon the Reference Set and Work Letter Exhibits B-1 and B-2. Collectively, the Landlord's Civil Package and Tenant's Building Package shall be the "Overall Construction Documents."

1.5     Permitted Construction Documents and Permits

**LANDLORD SHALL NOT SUBMIT ANY DOCUMENTS TO ANY GOVERNING AUTHORITIES WITHOUT TENANT'S PRIOR APPROVAL.** No later than five (5) days after approval and compilation of the Overall Construction Documents, Landlord shall submit the Overall Construction Documents to the City of Douglasville, GA and all other appropriate governing authority having review jurisdiction, and apply for all applicable permits (collectively the "Permits"). Landlord shall notify the Project Coordinator and Project Administrator, as defined in Section 5.1 herein, of such submittal. Any change or modification to the Overall Construction Documents after submission of same to the City shall be submitted to Tenant in the form of a proposal request for approval by the Project Coordinator. Throughout the permitting process, Landlord shall provide a weekly status update to the Project Coordinator, in the form of Work Letter Exhibit B-4. Within five (5) days of the City's issuance of the Permits, Landlord shall provide Project Coordinator with a copy of all Permits and the permitted construction plans for the Improvements (the "Permitted Construction Documents"). Tenant shall have ten (10) days to approve the Permitted Construction Documents.

1.6     Failure to Perform

In the event Landlord is unable to obtain all Permits or does not adhere to the requirements of this Work Letter then Tenant shall have the option to terminate the Lease. In the event the Lease is so terminated, both parties will be released from any obligation to the other and the Lease shall become null and void.

2.     **CONSTRUCTION**

Landlord shall complete, as defined in Section 2.4(a) herein, the Improvements in accordance with the following:

**EXHIBIT B TO COMPLAINT**

2.1    Improvements

The specifications, standards, and criteria set forth in the Permitted Construction Documents shall be the "Improvements."

2.2    Construction Commencement

Landlord shall commence construction of the Improvements within forty-five (45) days of Tenant's approval of the Permitted Construction Documents.  Within five (5) days of starting construction, Landlord shall provide Project Administrator with written notice of the date it commenced construction of the Improvements, and such date shall be considered the "Construction Commencement Date."

2.3    During Construction

(a) *Weekly Field Reports and Photos*
Beginning within seven (7) days of the start of site improvement and/or construction and continuing until Tenant accepts the Demised Premises, Landlord shall provide Project Administrator, with weekly field reports and photos of the interior and exterior as set forth in Work Letter Exhibit B-5, and final photos as set forth in Section 2.4(d) herein.  Landlord shall immediately comply with any Tenant request for supplemental photos.  **IF LANDLORD FAILS TO SUBMIT WEEKLY FIELD REPORTS AND PHOTOS, TENANT SHALL BE ENTITLED TO RETAIN OR RECOVER FROM LANDLORD, AS LIQUIDATED DAMAGES AND NOT AS A PENALTY, FIVE HUNDRED DOLLARS ($500.00) PER OCCURRENCE.  TENANT MAY RECOVER LIQUIDATED DAMAGES DESCRIBED HEREIN BY ABATEMENT OF TENANT'S OBLIGATION TO PAY RENT ON OR AFTER THE COMMENCEMENT DATE OR DAMAGES VIA ANY OTHER LEGAL REMEDY SET FORTH IN THE LEASE, OR AT LAW OR EQUITY FOR BREACH OF THIS PROVISION.**  Any liquidated damages not recovered by Tenant by abatement of Tenant's obligation to pay rent shall be payable to Tenant on demand, together with interest from the date of the demand at the highest lawful rate of interest payable by Landlord.

(b) *Inspection*
During the Landlord's construction of the Improvements, Project Administrator or his designee may, in Tenant's sole discretion, periodically visit and inspect the construction to determine if the work is being accomplished in a satisfactory manner.

(c) *Deviation from Permitted Construction Plans*
Any deviations from the Permitted Construction Documents or inadequacies of construction or materials shall be immediately communicated to the Tenant's Representative, as defined in Section 5.1 herein, and Landlord shall commence to correct such items within twenty-four (24) hours of notification.  **IN THE EVENT LANDLORD DOES NOT COMMENCE TO MAKE SUCH CORRECTIONS TENANT MAY ISSUE A NOTICE TO STOP WORK TO THE LANDLORD.  IN THE EVENT OF TENANT'S NOTICE TO STOP WORK, TENANT MAY, AT ITS SOLE**

4

EXHIBIT B TO COMPLAINT

**DISCRETION, IMMEDIATELY TERMINATE THE LEASE BY WRITTEN NOTICE TO LANDLORD. IF THE LEASE IS TERMINATED BY TENANT, BOTH PARTIES WILL BE RELEASED FROM ANY OBLIGATION TO THE OTHER AND THIS LEASE SHALL BE VOID.**

(d) *Force Majeure and Excused Delay*

Landlord shall diligently proceed with the construction of the Landlord's Improvements and complete the same and deliver possession thereof to Tenant on or before the Completion Date (as defined Section 2.4 herein); provided, however, if delay is caused or contributed to by delivery of Tenant Supplied Items or force majeure (as defined in Section 34.2 of the Lease), then the Completion Date shall be extended without penalty for the additional time caused by such delay. Such delays are each referred to as an "Excused Delay." Landlord shall notify Tenant within forty eight (48) hours after an event occurs that will result in an Excused Delay, including a description of the event and the impact on the Schedule. Failure to notify Tenant as required shall result in a potential Excused Delay being deemed a Landlord Delay.

(e) *Possession*

Prior to Acceptance of the Improvements Tenant shall have the right to access the Demised Premises to install fixtures, inventory and equipment ("Fixture Period") Tenant shall conduct its work in such a manner as to maintain harmonious labor relations so as not to interfere unreasonably with, or delay, the work of Landlord.

2.4     Completion

Within one hundred and fifty (150) days of the Construction Commencement Date, Landlord shall Complete (as defined herein) the Improvements. Should Landlord finish construction of the Improvements prior to the expiration of such one hundred and fifty (150) days after the Construction Commencement Date, Tenant may consider the Improvements not yet Complete, at its sole discretion, up to the one hundred fifth (150th) day. The date upon which Landlord has satisfied all of the requirements of this paragraph shall be the "Completion Date."

(a) *Completion Defined*

"Completion", "Complete" or "Completed" as used herein shall mean finished construction of the Improvements on the Demised Premises pursuant to the approved Permitted Construction Documents and delivery of written notice (as required and set forth in Section 33 of the Lease) to Tenant of same, with the exception of Punch List Items (as defined in Section 2.4(d) herein) and in accordance with the Completion Date, has been accomplished.

(b) *Failure to Complete*

**LANDLORD AGREES THAT IF THE IMPROVEMENTS ARE NOT COMPLETED ON OR BEFORE THE COMPLETION DATE AS A RESULT OF ANY LANDLORD DELAY (AS DEFINED BELOW), THEN SUCH DELAY SHALL RESULT IN ABATEMENT OF TENANT'S OBLIGATION TO PAY RENT AFTER THE COMMENCEMENT DATE IN AN AMOUNT EQUAL TO TWO THOUSAND AND 00/100 DOLLARS ($2,000.00) PER DAY FOR EACH DAY**

EXHIBIT B TO COMPLAINT

BEYOND THE COMPLETION DATE THAT THE IMPROVEMENTS ARE NOT COMPLETED.

(c) *Landlord Delay*

"Landlord Delay" as used herein shall mean any delay that is not an Excused Delay as defined in Section 2.3(d) herein.

(d) *Punch List Items*

Subsequent to the Completion Date and upon forty-eight (48) hour notice to Landlord, the Project Administrator shall provide a "Punch List" to the Landlord identifying the corrective work of the type commonly found on an architectural punch list with respect to the Improvements, which list shall be in Tenant's reasonable discretion based on whether such items were required by the approved Permitted Construction Documents ("Punch List Items"). Landlord shall complete the Punch List Items and provide the Project Administrator with photos verifying completion of the Punch List Items within ten (10) business days after Tenant's delivery of the Punch List Items to Landlord.

(e) *Acceptance of the Improvements*

Within five (5) business days after Tenant's receipt of Landlord's notice that all Punch List Items are complete, the Project Administrator shall notify Landlord, in writing, of all portions of the Improvements that are incomplete and Landlord shall immediately complete such items. Failure to deliver such notice shall constitute an acknowledgment that the Landlord's Improvements are complete.  Within ten (10) business days after Tenant's acceptance of the Improvements and Punch List Items, Landlord shall deliver to Tenant a set of documents showing any revisions due to any Change Order (as described in Section 2.4(f) of this Work Letter Agreement) to include interior and exterior photos for the Completed Improvements, along with all warranties and operating manuals for any equipment Tenant is responsible for maintaining.  Landlord shall remove or cause to be removed from the Demised Premises all tools, extra building materials, waste materials, debris and rubbish of any sort.  The achievement of all items in this Section 2.4(e) shall constitute "Acceptance."

(f) *Change Orders*

Prior to commencing any change in the Permitted Construction Documents or work during construction of a permitted trade, Landlord shall obtain multiple bids for the change and will deliver to Tenant's representatives as designated in the Work Letter the bids and a form approved by Tenant, setting forth a description of the change and the total costs of such change, including associated architectural, engineering and construction contractor's fees (the "Change Order").  All Change Orders requested by someone other than Tenant are subject to Tenant's prior written approval, which may be withheld or granted by Tenant in its sole discretion. If Tenant fails to approve such Change Order, the Change Order will be deemed denied and Landlord will not proceed to perform the change.

2.5    Cost of the Improvements

Tenant shall provide only those material listed as Tenant Supplied Items, as identified as "TSI" in Work Letter Exhibit B-2.  Landlord shall reimburse Tenant for the TSI as provided for in Section

EXHIBIT B TO COMPLAINT

2 of the Lease. Landlord agrees to furnish, at Landlord's sole cost and expense, all of the material, labor, and equipment for the construction of the Improvements. Tenant shall not be responsible for any damage, loss or destruction to the Demised Premises resulting from any construction or engineering error or defect. Landlord agrees to indemnify, defend and save Tenant harmless of any and all liability, loss, damages, cost or expenses, including reasonable attorneys' fees, incurred in connection with any claims of any nature relating to Landlord's construction of the Demised Premises and Improvements. Notwithstanding any other provision, term or clause of the Work Letter that states otherwise, if a conflict exists between the indemnification provision of the Work Letter and any indemnification provision set forth in the Lease, the Lease provisions shall control. If Tenant makes any payment or advance at the expense or for the account of Landlord, pursuant to any provisions of the Lease or of this Work Letter, the Tenant is entitled to reimbursement from Landlord within fifteen (15) days of written notice to Landlord of the reimbursement amount. Past due amounts are subject to interest and costs of collection, including attorney fees, at the maximum rate allowed by law. The Tenant may offset for any such claim against any subsequent installment of rent, and if not reimbursed at the expiration of the term hereby granted or any extensions thereof, may remain in possession of the premises until completely reimbursed.

2.6     Coming Soon Sign

Within ten (10) days of the Construction Commencement Date, as defined in Section 2.2, Tenant shall provide Landlord with its prototypical "Coming Soon" sign banner and sign structure plans for same, attached as Exhibit K. Landlord shall complete construction of the "Coming Soon" sign structure and place the sign in a location with maximum visibility to passersby within seven (7) days of Landlord's receipt of Tenant's Coming Soon sign banner and sign structure plans for same. Failure to receive the Coming Soon sign shall not delay the Construction Commencement Date.

3. INSURANCE AND RISK OF LOSS.

3.1     Builder's risk insurance is Landlord's responsibility.

3.2     All materials, work, installations and decorations of any nature brought upon or installed in the Demised Premises before the Commencement Date shall be at the risk of the party who brought such materials or items onto the Demised Premises. Neither Landlord nor any party acting on Landlord's behalf shall be responsible for any damage or loss or destruction of such items brought to or installed in the Demised Premises by Tenant prior to such date, except in the event of Landlord's negligence or willful misconduct.

4. CONFORMANCE WITH LAWS.

4.1     All work performed by Landlord shall be done in conformity with applicable codes and regulations of governmental authorities having jurisdiction over the Improvements and the Demised Premises. Valid building permits and other necessary authorizations from appropriate governmental agencies when required, shall be obtained by Landlord at Landlord's expense. Notwithstanding any failure by Tenant to object to any such work, Tenant shall have no responsibility therefore.

EXHIBIT B TO COMPLAINT

4.2     All materials used and incorporated into the Improvements shall be new and of first quality and shall contain no asbestos, asbestos containing materials or materials or substances defined or categorized by either the U.S. Environmental Protection Agency or any state or local law as either "toxic" or "hazardous".

## 5. REPRESENTATIVES.

5.1     Tenant's Representatives (Project Coordinator and Project Administrator)

Tenant has designated **Charles Norton** "Project Coordinator" and John Barnes and Robert Turrentine "Project Administrator" as its representatives with respect to the matters set forth in this Work Letter, who shall have full authority and responsibility to act on behalf of Tenant as required in this Work Letter. Tenant may change its Coordinator or Administrator, as the case may be, under this Work Letter at any time by providing five (5) days prior written notice to Landlord. All inquiries, requests, instructions, authorizations and other communications with respect to matters covered by this Work Letter from Landlord shall be made to Project Coordinator or Project Administrator, as the case may be. Landlord will communicate solely with the Project Coordinator or Project Administrator, including providing a Weekly Field Reports and Photos as set forth in Section 2.3 beginning on the Effective Date and continuing until Tenant accepts the Demised Premises. Landlord will not make any inquiries of or requests to, and will not give any instructions or authorizations to, any other employee or agent of Tenant, including Tenant's architect, engineers, and contractors or any of their agents or employees, with regard to matters covered by this Work Letter.

5.2     Landlord's Representative

Landlord has designated _____ as its representative ("Landlord's Representative") with respect to the matters set forth in this Work Letter, who shall have full authority and responsibility to act on behalf of Landlord as required in this Work Letter. Landlord may change its representative under this Work Letter at any time by providing five (5) days prior written notice to Tenant. All inquiries, requests, instructions, authorizations and other communications with respect to the matters covered by this Work Letter from Tenant will be made to Landlord's Representative.

## 6. MISCELLANEOUS.

6.1     Sole Obligations
Except as herein expressly set forth with respect to the Improvements, Landlord has no agreement with Tenant and has no obligation to do any work with respect to the Demised Premises. Any other work in the Demised Premises which may be permitted by Landlord pursuant to the terms and conditions of the Lease, including any alterations or improvements as contemplated in the Lease, shall be done at Tenant's sole cost and expense and according to the terms and conditions of the Lease.

6.2     Authority; Counterparts

EXHIBIT B TO COMPLAINT

Any person signing this Work Letter on behalf of Landlord or Tenant warrants and represents that such person has authority to do so. This Work Letter may be executed in counterparts, each of which shall be deemed an original, but all of which together constitute one instrument.

6.3    Binding on Successors

Subject to the limitations on assignment and subletting in the Lease, this Work Letter shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, legal representatives, successors and assigns.

6.4    Time of the Essence

Time is of the essence as to each and every term and provision of this Work Letter. In all instances where Tenant is required to approve an item, if no written notice of approval is given within the stated time period at the end of said period the item shall automatically be deemed disapproved. Except as otherwise provided, all references herein to a "number of days" shall mean and refer to calendar days.

6.5    Attorneys' Fees

In any action to enforce or interpret the terms of this Work Letter, the party prevailing in that action shall be entitled to recover its reasonable attorneys' fees and costs of suit, both at trial and on appeal.

6.6    Incorporation

This Work Letter is and shall be incorporated by reference in the Lease and all of the terms and provisions of the Lease are incorporated herein for all purposes. Any default by Landlord or Tenant hereunder also constitutes a default under the Lease.


LANDLORD:
Branch – Douglasville, LLC
STORES, INC.
a Georgia limited liability company

By:    Piedmont Land Development, Inc., its Manager


By: Ron L. Turner, Jr.
Title:  President
Date:   8. 4. 2021


TENANT:
O'REILLY AUTOMOTIVE

a Missouri corporation


By: Scott Kraus
Title: Senior Vice President
Date:   9-16-2021

EXHIBIT B TO COMPLAINT

## WORK LETTER EXHIBIT B-1

### Build-to-Suit - Site Investigation and Design Requirements

### REQUIRED COMPLETION FOR ALL BUILD TO SUIT DEVELOPMENT PROJECTS

All sections to be completed in full by Landlord. Landlord represents that the information contained herein is accurate and correct to the best of its knowledge and Tenant shall rely on such representations.

**A. General**

Prepared By: Jeff Watson – Chen Development, LLC          Date Of Completion: _____ 11/27/20 _____

Project Location
Street: _____ 4005 Fielding Drive _____
City: _____ Douglasville _____
State: _____ Georgia _____

**B. Codes**
1. Building Code: _____
2. Plumbing Code: _____
3. Mechanical Code: _____
4. Electric Code: _____
5. Energy Code: _____

**C. Site Data** (Direction referenced to building front)
1. Existing Site Condition Photos Provided
   a. X Yes
   b. __ No

2. Preliminary Site Plan Drawing Provided
   a. X Yes
   b. __ No

3. Property Dimensions
   Front: _241_ +/-    Right: _220_ +/-    Rear: _220_ +/- Left: _220_ +/-
   Area: _____ S.F.    Acres: _1.2_

4. Existing Topography Estimated Elevation Change (Indicate Direction and Approximate Feet)
   a. Front / Rear: _____ mostly flat, slopes south _____
   b. Right Side / Left Side: _____ mostly flat, slopes south _____

5. Zoning Classifications (As defined per local ordinance):
   a. Subject Property: _____ CCC _____
   b. Adjacent Front Property: _____ RLD _____
   c. Adjacent Left Side Property: _____ CCC _____

**EXHIBIT B TO COMPLAINT**

d. Adjacent Right Side Property: _____ PUD _____
e. Adjacent Rear Property: _____ CCC _____

6. Current use of subject property: _____ vacant land _____

7. Former use of subject property: _____ vacant land _____

8. Has site ever been used as gas station or dry cleaners
   a. __ Yes
   b. X No

9. Describe any unusual or noteworthy conditions around site: _____ none _____

10. Located in Historical District or Special Architectural Overlay District (Check).
    a. __ Yes (Specify): _____
    b. X No

11. Storm Water Detention or Water Quality Measures Required (Check).
    a. X    Yes    (Specify):    detention    required.    engineer    still
       studying _____
    b. __ No

12. Street Information and Governing Jurisdiction (Check all that apply and complete):
    a. Front: X State    __ City    __ County    __ Private    __ Median Present
    b. Right: __ State    __ City    __ County    __ Private    __ Median Present
    c. Left: __ State    X City    __ County    __ Private    __ Median Present
    d. Rear: __ State    __ City    __ County    __ Private    __ Median Present

13. Curb Cut Locations, Quantity, & Widths (Check all that apply and complete)
    a. __ Front    ___ Qty.    Width(s): _____
    b. X Left Side   1   Qty.    Width(s): 28' _____
    c. __ Right Side ___ Qty.    Width(s): _____
    d. __ Rear    ___ Qty.    Width(s): _____

14. Department Of Transportation permit required (Check).
    a. X Yes
    b. __ No

15. Road and Location Projects - Verify with all governing authority any planned or projected projects to the roadways, landscaping, CID, etc. that may affect the project anytime.

    _____
    _____
    _____

16. Access Easements Required (Check)

EXHIBIT B TO COMPLAINT

a. X_ Yes (Specify): <u>We are subdividing the property and so access will between us as owners/developer</u>

b. __ No

17. Drive Aisles and Widths (Check all that apply and complete)
   a. __ Front        Width: __24'___
   b. __ Right Side  Width: __24'___
   c. __ Left Side   Width: _24'____
   d. __ Rear        Width: _24'____

18. Parking
   a. Zoning Formula: __5:1000 = 37 spaces provided___
   b. Quantity Required: __37_____
   c. Quantity Provided: __37_____
   d. Minimum Space Size: _9 wide by 20 deep_____

19. Pavement Material Type Proposed (Check all that apply)
   X  Concrete X Asphalt

20. Refuse Area Screening Required (Check and complete)
   a. __ Yes (Specify material to be used) _____
   b. __ No

21. Perimeter Screen Fence Required by Zoning Ordinance (Check)
   a. X Yes (Specify): _will provide adjacent PUD (right side)_____
   b. __ No

22. Landscaping Required by Zoning Ordinance
   a. X Yes (Specify): _____
   b. __ No

23. Landscape Irrigation System to be Provided (check)
   a. X Yes
   b. __ No

24. Site Lighting Ordinance (check):
   a. X Yes (Specify): <u>Photometric to be provided.</u>_____
   b. __ No

25. Sign allowances (size, location, structure, and design requirements, etc.)
      Building Signage: _____
      Ground Signage: _____

26. Site and Exterior Building Lighting – City requirements on type and/or heights (check):
   a. __ Yes (Specify): _____

EXHIBIT B TO COMPLAINT

b. __ No

27. Utilities (Check if already available to site).
_X_ Water _X_ Sewer    _X_ Electric    _X_ Gas        _X_ Storm Sewer


28. Electric Utility available (Check all that apply)
    X Aerial            __ Underground
    __ Single Phase    X 3Phase
    ___Voltage(s)

29. Fire Hydrant within 150 feet of property line (check)
    a.  X Yes. (corner of Fielding Drive and Chapel Hill Road
    b.  __ No

**D. Building Data**
1.  Gross Floor Area of Proposed Development: ___7396 sf_____

2.  PEMB Dimensions: _____85 x 85_____
    (ex. 85' x 85' or 70' x 100')

    Overall Building Footprint Dimensions on site plan: _EIFS/Block_____
    Metal – Same as PEMB Dimensions (ex. 85' x 85' or 70' x 100')
    Block – Add 1'4" to PEMB Dimensions (ex. 86'4" x 86'4" or 71'4" x 101'4")
    Brick – Add 2'4" to PEMB Dimensions (ex. 87'4" x 87'4" or 72'4" x 102'4")
    EIFS/Stucco – Add 1'4" to PEMB Dimensions (ex. 86'4" x 86'4" or 71'4" x 101'4")

    **Note:  Accurate exterior building dimension and setback requirements MUST be reflected on the site plan.**

3.  Building Orientation Dimensions:
    a.  Front Dimension (Elevation with Customer Entry): _____
    b.  Side Dimension: _____

4.  **Primary Type** of Structural Framing System (**Check one**)
    a.  X  Pre-Engineered Metal Building System (Metal Panels, Brick, EIFS)
    b.  __ Load Bearing (CMU) Walls with Pre-Engineered Metal Roof System
    c.  __ Other (Specify): _____

5.  **Primary Type** of Exterior Finish Material (**Check one**)
    a.  __ Pre-Engineered Metal Building Exterior Metal Wall Panels (PEMB):
    b.  __ Concrete Masonry Units (CMU):
    c.  __ Clay Masonry Units (Brick):
    d.  X  Exterior Insulation Finish System (EIFS):
    e.  __ Other (Specify): _____

**EXHIBIT B TO COMPLAINT**

6. Primary Material Colors (Check all that apply)
   a. X O'Reilly Prototypical Standards:
   b. __ Custom (Specify): _____

7. Special Architectural Design Requirements, i.e. wainscot, pilasters etc.
   a. Style                                                                (Specify):
   _____
   b. Percentage                          of                          Materials:
   _____
   c. Additional    Architectural    features    i.e.    awnings    faux    glass    etc.:
   _____
   _____
   _____

8. Mechanical Equipment Screening Required (Check)
   a. X Yes (Specify): _____
   b. __ No

9. Exterior materials and/or architectural style(s) are required or allowed due to one or more of the
   following (Check all that apply)
   a. __ Building Code
   b. X Zoning Ordinance
   c. X Restrictive Covenants
   d. __ Developer Requirements

10. Exterior Building Materials Proposed (Describe in referenced to item 3 above)
   a. Front Elevation: ___ EIFS/Block/Masonry base _____
   b. Right Side Elevation: _____ EIFS/Block/Masonry base _____
   c. Rear Elevation: _____ EIFS/Block/Masonry base _____
   d. Left Side Elevation: _____ EIFS/Block/Masonry base _____

11. Building Exterior Perimeter Walls Required to be Fire Rated Assemblies (Check)
   a. X Yes (Rating(s) Required): __ typically 1 hour, architect/engineer to verify ___
   b. __ No

12. Energy Code requires HVAC economizers (Check).
   a. __ Yes
   b. __ No

13. Building required to be protected with automatic fire suppression system (Check)
   a. Yes
   b. X No

EXHIBIT B TO COMPLAINT

14. Fire Alarm System/Monitoring System required
    a. __ Yes
    b. _X_ No

15. Permit required for Tenant fixtures that is separate from Building Permit (Check)
    a. _X_ Yes
    b. __ No

16. Tenant fixtures required to be anchored (Check)
    a. _X_ Yes
    b. __ No

16. Seismic Calculations required for Tenant fixtures (Check)
    a. __ Yes
    b. _X_ No


**E. Developer Information**

1. Developer has received applicable O'Reilly prototypical design standards, reference drawings, and specifications and acknowledges proposed design concept shall meet or exceed quality of construction indicated or specified (Check).
    a. __ Yes
    b. __ No
    c. _X_ Not Sure, further clarification required (Specify): _We haven't received the architectural standards/prototype from O'Reilly_

2. **Developer information contained herein has been verified and preliminary approved provided by applicable governing authorities having jurisdiction for the project (Check)**
    a. __ Yes (list governing authorities and contact information that has supplied verification )

_____
_____
_____
_____
_____
_____
_____

    b. **X No (information will be / could be deemed incomplete without verification)**

3. Developer Name and Certification
    Company Name: ____Chen Development, LLC_____
    Representative Name: __Jeff Watson_____
    Representative Signature: ___ *Jeff Watson*

**EXHIBIT B TO COMPLAINT**

Title: _____ Manager _____

Date: _____ 11-27-20 _____

Phone Number: ____ office 704-895-2084 mobile 704-906-4491 _____

Email address: ____ watson@piedmontlanddevelopment.com _____

Should Landlord find additional information or requirements of any governing authority it shall provide such information below (and attached as needed):

_____

_____

_____

_____

_____

_____

LANDLORD REPRESENTS AND WARRANTS THAT THE INFORMATION PROVIDED IN THIS EXHIBIT ARE TRUE AND CORRECT. SHOULD THE INFORMATION HEREIN BE INCOMPLETE, INCORRECT, OR OTHERWISE INCONSISTENT WITH GOVERNING AUTHORITY REQUIREMENTS, TENANT MAY TERMINATE THE LEASE AND SEEK DAMAGES AGAINST LANDLORD FOR THE COSTS EXPENDED FOR ANY TENANT REQUIREMENT OR TENANT SUPPLIED ITEM AS PROVIDED IN THE LEASE OR WORK LETTER AGREEMENT.

**EXHIBIT B TO COMPLAINT**

### WORK LETTER EXHIBIT B-2

#### Build-to-Suit Design / Construction Requirements

Landlord is responsible for the cost of the Improvements, as described in the Work Letter, unless otherwise indicated herein. Questions about construction design requirements indicated herein shall be directed to Tenant's designated Project Representative. This Exhibit is for reference only and any specifics refer to Tenant supplied "Reference Set" for prototypical conditions for use in the Overall Construction Documents as describe in the Work Letter.

1.      GENERAL

1.1     Use of these Requirements: Landlord shall use these Design/Construction Requirements, in conjunction with the Reference Set, as a guideline in its production of the Landlord Civil Package and any other requirement provided in the Work Letter Agreement.   Should a discrepancy between these Requirements and the Permitted Construction Documents exist, the Permitted Construction Documents shall control.

1.2     Form of Documents: see Work Letter Section 1.1(a) and (b).

1.3     Design Substitutions: Refer to Tenant's Reference Set for typical design standards and requirements. Landlord's submittals of shop drawings, product data, samples, and request for substitutions shall be directed to O'Reilly's designated Project Representative. as designated in Section 5.1 of the Work Letter for review and approval.

2.      SITE

2.1     Drives: Drives and driveways to be constructed shall be a minimum width of 30' in the customer parking area of the site and a minimum of 26' in the employee parking area.

2.2     Pavements: Parking lot may be constructed using reinforced concrete or hot-mix asphalt paving. Parking lot to be designed for standard duty paving minimum sections based on the Landlord's Geotechnical Report.  See provided map for locations requiring the use of asphalt.  If asphalt is used in the construction of the parking lot, a 20' concrete apron shall be installed in the customer head-in parking area along the front of the store.

2.3     Curbing: Concrete curbing (6" high min) shall be provided around perimeter of pavement areas. Provide 6:8 slope profile in areas subject to snow removal, except at head-in parking sidewalk curbs. For head-in parking sidewalk curbs provide integral turn down sidewalk curb profile.

2.4     Concrete Mix Design: All on-site concrete design mix to be 4,000 PSI minimum. Refer to Tenant's prototypical specifications for additional requirements.

2.5     Accessible Parking: Accessible parking and access aisle to align approximately with front entry. Pavement at accessible aisle to be flush with sidewalk and slope down as steep as possible parallel with sidewalk to form 6" high sidewalk curb. Provide tactile warning surface complying

EXHIBIT B TO COMPLAINT

with accessibility standards at pavement and sidewalk transition. Provide accessible parking signs mounted in front sidewalk bollards.

2.6     Parking Blocks: Concrete parking blocks to be installed at all head-in parking spaces around building perimeter.

2.7     Refuse Container Pads: Concrete refuse container pad shall be 14'x14' minimum with 6' minimum approach apron. Where screening required, provide 6' high composite fence construction with steel post and double gates with heavy duty hinges. Where required by governing authorities, provide masonry screen wall construction to match building exterior materials.

2.8     Sidewalks: Sidewalks shall be 6' wide minimum and provided at head-in parking along front of building, at freight door, and at exit door landings. Sidewalk control and expansion joint layout around building perimeter to align with front window vertical mullions and freight door.

2.9     Bollards: Concrete filled 4" diameter painted steel pipe bollards (36" high) to be provided as follows: (8 or 9) at front sidewalk aligning with front window vertical mullions and control joints, (2) at freight door sidewalk, and (2) at paving for each refuse container. Set bollards in sidewalk a distance of 10" from face of curb or edge of pavement to centerline.

2.10    Grading: Grading around building perimeter to be 6" minimum below finish floor, except at doors and front sidewalk in contact with building. Grade at front sidewalk in contact with building to be 0.15' minimum below finish floor. Grade at doors to be flush with finish floor and slope away 2% maximum for a distance of 5' minimum perpendicular to building. Accessible parking spaces and aisle to slope 2% maximum in all directions. Designated accessible routes to slope 5% maximum in direction of travel with 2% maximum cross slope. Pavement at parking areas to slope 1% minimum and 5% maximum. Lawn areas to slope 2% minimum. Where building masonry cavity wall construction provided, grading criteria to be adjusted down to provide proper weeping.

2.11    Roof Drainage: Building roof slopes to rear perimeter. Provide concrete splash blocks or underground drainage systems at downspouts discharge locations.

2.12    Landscaping and Plantings: Landscaping shall be designed for the minimum number of plantings required by governing authorities. Avoid obscuring free-standing site sign from right-of-way with large plantings. Provide sod on entire public facing areas, at all other lawn areas adjacent to building perimeter (5' wide minimum) and any place that slopes exceed 1:4. At interior parking islands provide landscape gravel ground cover over weed barrier. At large trees and dense planting areas provide landscape edging around perimeter with mulch over weed barrier.

2.13    Irrigation Systems: Irrigation system with separate meter shall be provided where required by governing authorities or where costs of plantings exceed $5,000.00.

2.14    Site Utilities: Tenant's site utility drawings shall indicate design and routing of electrical service, telephone service, site electrical, site lighting, and building utility service entry points to a

EXHIBIT B TO COMPLAINT

distance of 5' outside of building perimeter for utility service connections of water, sanitary sewer, gas (where available) and fire protection system (where required). Landlord's site utility drawings shall indicate design and routing of water service, irrigation water service (where required), sanitary sewer, gas (where available) and fire protection systems (where required) from building points of connection to utility provider available systems. Final design and locations to be coordinated with Tenant and Landlord drawings.

2.15   Site Lighting: See Reference Set

2.16   Site Signage: Pole sign will be direct buried by Tenant with conduit/electrical wiring to be installed by Landlord. Signage graphics Tenant furnished and installed. Final type and location to be coordinated with Tenant and Landlord drawings.

3.   STRUCTURAL

3.1   Foundation Design:  See Reference Set

3.2   Structural Steel Framing: See Reference Set

4.   ARCHITECTURAL

4.1   Building Design: Final building design, quality and quantity of construction shall be based upon Tenant's design standards and criteria defined in **Site Investigation and Design Requirements (Exhibit B-1).** Non-prototypical designs concepts shall be reviewed and approved by Landlord and Tenant. Tenant may provide preliminary design concept drawings of exterior elevations, perspective sketches, or digital modeling indicating and defining exterior material locations, type, finishes, colors and textures. Non-prototypical exterior finish material samples shall be provided, unless otherwise waived by Tenant.

4.2   Construction Type: Building code construction type to be classified as II-B (non-combustible / unprotected). Fire protection systems are not required unless otherwise required by building code or governing authorities. Fire rated assemblies shall be provided as required by project conditions.

4.3   Thermal Envelope: See Reference Set

4.4   Interior Floor Finishes: See Reference Set

4.5   Interior Wall Finishes: See Reference Set

4.6   Interior Ceiling Finishes: See Reference Set

4.7   Door Hardware: See Reference Set

4.8   Toilet Accessories: See Reference Set

**EXHIBIT B TO COMPLAINT**

5.      PLUMBING

        See Reference Set

6.      **FIRE PROTECTION**

6.1     Fire Hydrants: Where required, shall be provided as required by governing authorities.

6.2     Fire Sprinkler Systems: Where required, shall be designed as required by governing authorities. Tenant drawings shall indicate building design criteria and performance requirements. Final design shall be performed by Landlord's licensed engineer and submitted as shop drawings for review and approval.

7.      **MECHANICAL**

        See Reference Set

8.      **ELECTRICAL**

        See Reference Set

9.      **ENERGY MANAGEMENT SYSTEM (EMS)**

        See Reference Set

10.     **SCOPE OF WORK**

10.1    Tenant Furnished / Landlord Installed Work: Items indicated as furnished by Tenant include cost of materials, taxes, shipping, and delivery to project site. Landlord shall assist with ordering, site receipt, inventory verification, unloading, handling, storing, protecting, and installation of Landlord and Tenant furnished materials. Refer to Tenant's project manual for specific work procedures and documentation requirements.

10.2    Scope of Work Schedule: The attached "Scope of Work Schedule" provides a detailed description of materials to be provided and installed in the construction of the Improvements. The attached schedule describes the **Tenant Supplied Items**, as referred to in the Work Letter Agreement, in the column labeled "Furnished by Tenant." Tenant shall install only those certain items as denoted in the attached schedule. Landlord shall provide all materials and installation in its construction of the Improvements for those items not indicated to be provided or installed by Tenant. **Should the Permitted Construction Documents provide for materials or installation that is not described in the attached Scope of Work Schedule, Landlord shall procure and install such materials at its sole cost and expense.**

| | | FURNISHED BY TENANT | INSTALLED BY TENANT | FURNISHED BY Landlord | INSTALLED BY Landlord | |
|---|---|---|---|---|---|---|
| | SCOPE OF WORK SCHEDULE | | | | | |
| PROJECT MANUAL (CSI) SECTION REFERENCE NUMBER | PROJECT MANUAL (CSI) SECTION REFERENCE - Description of Work (Refer to Construction Documents) | | | | | CONTACT INFORMATION |
| 01 45 16 | QUALITY CONTROL PROCEDURES – Testing and inspections | | | X | X | O'REILLY (Assigned Project Coordinator) 417.862.2674 |
| 07 21 00 | BUILDING INSULATION - Pre-engineered metal building batt insulation | X | | | X | GBR SILVERCOTE Jerry Miller 417.861.9513 |
| 08 11 19 | STEEL DOORS AND FRAMES - Exterior doors and frames | X | | | X | O'REILLY (Assigned Project Coordinator) 417.862.2674 |
| 08 71 00 | DOOR HARDWARE - Exterior steel door hardware | X | | | X | O'REILLY (Assigned Project Coordinator) 417.862.2674 |
| 09 90 00 | PAINTING - Showroom interior painted graphics | | | X | X | O'REILLY (Assigned Project Coordinator) 417.862.2674 |
| 10 14 00 | SIGNAGE - Exterior free standing signs, exterior surface mounted signs, temporary marketing and advertising signs (Except monuments, raceways and boxes) | X | X | | | O'REILLY (Assigned Project Coordinator) 417.862.2674 |
| 10 28 13 | TOILET ACCESSORIES - Tissue paper dispensers, Soap dispensers, Paper towel dispensers | X | | | X | O'REILLY (Assigned Project Coordinator) 417.862.2674 |
| 10 80 00 | MISCELLANEOUS SPECIALTIES - Floor safes | X | | | X | O'REILLY (Assigned Project Coordinator) 417.862.2674 |
| 12 57 00 | INDUSTRIAL FURNISHING - Racking and shelving | X | X | | | O'REILLY (Assigned Project Coordinator) 417.862.2674 |
| 13 34 19 | PRE-ENGINEERED METAL BUILIDNG SYSTEM ERECTION - Metal building materials | X | | | X | O'REILLY (Assigned Project Coordinator) 417.862.2674 |
| 22 40 00 | PLUMBING FIXTURES - Water heater unit | X | | | X | GRAYBAR ELECTRIC COMPANY Sandy Young or Sam Cast 800.289.5254 |

EXHIBIT B TO COMPLAINT

| SCOPE OF WORK SCHEDULE | | | | | | |
|---|---|---|---|---|---|---|
| PROJECT MANUAL (CSI) SECTION REFERENCE NUMBER | PROJECT MANUAL (CSI) SECTION REFERENCE - Description of Work (Refer to Construction Documents) | FURNISHED BY TENANT | INSTALLED BY TENANT | FURNISHED BY CONTRACTOR | INSTALLED BY CONTRACTOR | CONTACT INFORMATION |
| 23 74 00 | ROOF TOP HEATING/COOLING UNITS – Equipment | X | | | X | CARRIER CORPORATION  Paul Witz 315-317-2481 or Maria Campanello 315-432-3946 |
| 25 00 00 | CONTROLS AND INSTRUMENTATION - Disconnect switch or circuit breaker | X | | | X | GRAYBAR ELECTRIC COMPANY Sandy Young or Kathy Schrumpf 800.289.5254 |
| 25 00 00 | CONTROLS AND INSTRUMENTATION - Energy management systems, T-stats, Remote sensors | X | | | X | VENSTAR INC.  (Technical Support) 818.812.9812 |
| 26 24 00 | ELECTRICAL EQUIPMENT  - Switchgear (panel boards, transformers, disconnects, breakers) (Except for roof top units) | X | | | X | GRAYBAR ELECTRIC COMPANY Sandy Young or Kathy Schrumpf 800.289.5254 |
| 26 50 00 | LIGHTING  – Light fixtures and sensors | X | | | X | GRAYBAR ELECTRIC COMPANY Sandy Young or Kathy Schrumpf 800.289.5254 |
| 27 00 00 | COMMUNICATIONS  SYSTEMS - Raceways and boxes | | | X | X | O'REILLY (Assigned Project Coordinator) 417.862.2674 |
| 27 00 00 | COMMUNICATIONS  SYSTEMS - Electronics and conductors | X | X | | | O'REILLY (Assigned Project Coordinator) 417.862.2674 |
| 28 00 00 | ELECTRONIC SAFETY AND SECURITY SYSTEMS - Raceways, boxes and equipment | X | X | | | O'REILLY (Assigned Project Coordinator) 417.862.2674 |
| 28 30 00 | FIRE DETECTION AND ALARM SYSTEMS - Raceways, boxes and equipment | X | X | | | O'REILLY Leigh Sides 417.829.5712 |

**EXHIBIT B TO COMPLAINT**

## CONSTRUCTION DOCUMENT SCOPE

**Landlord Civil Design Package**
Cover Sheet
SV1 -   Site Survey
D1.1 -  Demolition Plan
C1 -    Site Development Plan
C1.1 –  Site Grading Plan
C1.2 –  Site Storm Water Controls Details
C2.2 -  Site Details
C2.3 -  Site Details
L1.1 -  Landscape Plan
L1.2 -  Landscape Details
L2.1 -  Landscape Irrigation Plan
US1 –   Utilities Site Plan

Sheets will vary per project and only reflects prototypical condition. Refer to Tenant supplied 'Reference Set' for
further details.

**Tenant Building Design Package**
T1.1 -  Cover Sheet
T1.2 –  Scope of Work Schedule
G1.1 –  Code Summary Plan
S1.1 -  Structural Notes
S1.2 -  Sign Foundation Details
S2 –    Foundation Plan
S3.1 -  Foundation Details
S3.2 -  Foundation Details
S4 –    Framing Details
A1.1 -  Floor Plan
A1.2 –  Interior Finish Plan
A2.1 –  Exterior Elevations
A3.1 -  Wall Sections
A3.2 -  Wall Sections
A4.1 –  Interior Elevations
A4.2 –  Interior Sections & Details
A5.1 –  Door Schedule
A5.2 –  Window Schedule
A6.1 –  Exterior Details
US1 –   Utilities Site Plan
SP1 -   Site Lighting Photometrics
SP2 –   Site Lighting Details
SP3 –   Site Lighting Details
P1 -    Plumbing Plan
P2 –    Plumbing Details
M1 -    HVAC Plan
M2 -    HVAC Schedules
M-3 -   HVAC Details
E1 -    Lighting Plan

**EXHIBIT B TO COMPLAINT**

E2 -    Power Plan
E3 –   Electrical Schedules
E4 –   Electrical Notes
EM1.0 – Gridpoint EMS
EM1.1 – Gridpoint EMS
EM1.2 – Gridpoint EMS
SG1.1 – Site Signage Plan
SG1.2 – Site Signage Details
SG2.1 – Building Exterior Signage

Tenant Building Design Package set will also contain PEMB information that includes but not limited to Anchor Bolt layout, details and reactions, Permit Set, and Final Erection Drawings. Content based on final determination of building design.

Sheets will vary per project and only reflects prototypical condition. Refer to Tenant supplied Reference Set for further details.

EXHIBIT B TO COMPLAINT

Recommended States for Asphalt Lots:

Selected States outlined in Red



| Selected States | | | Divisions & DVP's | |
| --- | --- | --- | --- | --- |
| Alaska | Massachusetts | Ohio | Chris Farrow | Div 4 |
| Connecticut | Michigan | Pennsylvania | Chris Mancini | Div 9 |
| Indiana | Minnesota | Rhode Island | Doug Bragg | Div 1 |
| Iowa | New Hampshire | Wisconsin | Jason Tarrant | Div 6 |
| Maine | North Dakota | South Dakota | Scott Leonhart | Div 5 |

EXHIBIT B TO COMPLAINT

WORK LETTER EXHIBIT B-3

GEOTECHNICAL/MATERIALS TESTING REQUIREMENTS

A Geotechnical Engineer will provide the following geotechnical investigation and engineering services and produce the required Geotechnical Report at Landlord's expense.

## 1.   PROPOSED BUILDING TYPE

1.1     The proposed building will consist of a one-story pre-engineered metal building/masonry building. The proposed foundation will consist of a slab on grade with continuous footings and spread footings to support column loads. Typical floor loads are 125 psf. Maximum column loads are 40 kips. Typical wall loads are 1 k/ft.

## 2.   DRILLING AND SAMPLING METHODS

2.1     Drilling and sampling will include a minimum of six borings (three in the building footprint and three in the parking lot) at a minimum depth of 15 feet for each boring.

2.2     Unless otherwise stipulated, drilling and sampling will be performed in accordance with current applicable ASTM Standards and other standards, including but not limited to ASTM Standards D1586, D1587 and D2113. Samples of soil shall be taken at the ground surface, at two feet below existing grade and at each identifiable change in condition, but not further apart than five feet in each of the borings. Where clayey cohesive soils are encountered, thin-walled tube samples shall be taken of representative strata. Split-spoon samples shall be placed in sealed jars labeled with the following information: (1) boring numbers, (2) sample number, (3) sample depth, (4) blows per increment required to drive sample as per applicable standards, (5) date, (6) project name, and (7) Geotechnical Engineer's name.

2.3     Rock cores shall be not less than 1 3/8 inches in diameter, and shall be placed in core boxes properly labeled as indicated above.

2.4     The samples shall be preserved and field logs prepared either by a Geotechnical Engineer or by an experienced Soil Technician acting under the supervision of a Geotechnical Engineer.

## 3. EVALUATION AND RECOMMENDATIONS

3.1     The Geotechnical Engineer shall analyze the information developed by investigation or otherwise available to the Geotechnical Engineer, including those aspects of the subsurface conditions, which may affect design and construction of proposed structures, and shall report the design and engineering requirements of the project.   Based on such analysis the Geotechnical Engineer shall submit a professional evaluation and recommendations for the necessary areas of consideration, including but not limited to the following:

A.     Foundation support of the structure and slab including type(s) of soil, depths and distribution of

EXHIBIT B TO COMPLAINT

each soil type, consistency and density of clay and granular soils, Atterberg limits and allowable soil bearing pressures. When expansive clay soils are encountered provide maximum anticipated values of vertical differential soil movement and horizontal distance of moisture variation from slab perimeter for both edge lift and center lift conditions.

B.    Anticipation of, and management of, groundwater for design of structures and pavements.

C.    Lateral earth pressures for design of walls below grade, including backfill, compaction and subdrainage, and their requirements.

D.    Soil material and compaction requirements for site fill, construction backfill, and for the support of structures and pavements.

E.    Concrete pavement design.

F.    Stability of slopes.

G.    Seismic activity.

H.    Frost penetration depth and effect, if applicable.

I.    Analysis of the effect of weather and/or construction equipment on soil during construction.

J.    Analysis of soils to ascertain presence of potentially expansive, deleterious, chemically active or corrosive materials or conditions, or presence of gas.

3.2     The Geotechnical Engineer shall report any further exploration and testing required to obtain information that the Geotechnical Engineer requires for a professional interpretation of subsoil conditions at the building site and shall perform such additional work as authorized. The extent of exploration undertaken shall be consistent with the scope of the project indicated by the information given above.

## 4.  FIELD AND LABORATORY REPORTS

4.1     The Geotechnical Engineer will deliver an electronic copy and one paper copy of the report and logs. All segments of the reports covering the investigations and analyses shall be made on white paper, 8 1/2 x 11inches, suitable for photocopying and bound in booklet form. If larger drawings are absolutely necessary, they shall be folded and bound into the booklet. Written reports and analyses shall be on the Geotechnical Engineer's letterhead. Each drawing shall carry a title block that contains the project name and location, the Geotechnical Engineer's name and address, the date of the subsurface investigation, the date of the drawings, the initials of the person in charge of the crew making the investigation, the initials of the drafter, and the initials of the Professional Engineer who is the responsible checker.

4.2     All data required to be recorded according to the ASTM Standards or other standard test methods employed shall be obtained, recorded in the field and referenced to boring numbers; soil shall be classified in the field logs in accordance with current applicable ASTM Standards and other standards,

EXHIBIT B TO COMPLAINT

including but not limited to ASTM Standard D2488, but the classification for final logs shall be based on the field information, plus results of tests, plus further inspection of samples in the laboratory by the Geotechnical Engineer preparing the reports.

4.3     Include with the report a chart illustrating the soil classification criteria and the terminology and symbols used on the boring logs.

4.4     Identify the ASTM Standards or other recognized standard sampling and test methods utilized.

4.5     Provide a plot plan giving dimensioned locations of test borings.

4.6     Provide a boring log for each boring plotted and graphically presented showing boring number, sampling method used, date of start and finish, description of soil and thickness of each layer, depth to loss or gain of drilling fluid, hydraulic pressure required or number of blows per foot (N value) and, where applicable, depth to wet cave-in, depth to artesian head, groundwater elevation and time when water reading was made (repeat observation after 24 hours) and presence of gases. Note the location of strata containing organic materials, wet materials or other inconsistencies that might affect engineering conclusions.

4.7     Describe the existing surface conditions and summarize the subsurface conditions found to be present.

4.8     Analyze the probable variations in elevation and movements of subsurface water due to seasonal influences.

4.9     Report all laboratory determinations of soil properties.

EXHIBIT B TO COMPLAINT



## Work Letter Exhibit B-4 Design Approval

**Phase 1  - Sec.1.2 Landlord Due Diligence**

| Documents Dated: _____ | Documents Dated: _____ |
| Documents Received: _____ | Documents Received _____ |

| Tenant:    O'Reilly Automotive Stores, Inc. | Landlord: _____ |

| Date: _____ | Date: _____ |

**Phase 2 - Sec. 1.3 Landlord Civil Design Package**

| Documents Dated: _____ | Documents Dated _____ |
| Documents Received: _____ | Documents Received _____ |

| Tenant:    O'Reilly Automotive Stores, Inc. | Landlord: _____ |

| Date: _____ | Date: _____ |

**Phase 3 –Sec. 1.4 Overall Construction Documents**

| Documents Dated _____ | Documents Dated: _____ |
| Documents Received: _____ | Documents Received: _____ |

| Tenant:    O'Reilly Automotive Stores, Inc. | Landlord: _____ |

| Date _____ | Date: _____ |

**Phase 4 - Sec. 1.5 Permitted Construction Documents**

| Documents Dated: _____ | Documents Dated _____ |
| Documents Received: _____ | Documents Received: _____ |

| Tenant:    O'Reilly Automotive Stores, Inc. | Landlord: _____ |

| Date _____ | Date: _____ |

EXHIBIT B TO COMPLAINT

EXHIBIT B-5



## WEEKLY FIELD REPORT

Date: _____
Project: _____
GC: _____

Work in Progress: _____
_____
_____

**Percent Complete:**

| | | | |
|---|---|---|---|
| Demolition | _____ | Signs | _____ |
| Sitework | _____ | Storefront | _____ |
| Conc/Asphalt Paving | _____ | Painting | _____ |
| Site Concrete | _____ | Flooring | _____ |
| Building Concrete | _____ | Ceilings | _____ |
| Hardware/Doors | _____ | PEMB | _____ |
| Drywall/Framing | _____ | Plumbing | _____ |
| E.I.F.S. | _____ | HVAC | _____ |
| Electrical | _____ | Masonry | _____ |
| | | Landscape | _____ |

Total % Complete _____

Permit Date _____    Start Date _____

Observations: _____
_____
_____
_____
_____
_____
_____

**WEEKLY FIELD REPORT**
**ORL-R**

1

EXHIBIT B TO COMPLAINT

EXHIBIT B-5



O'Reilly Auto Parts – Interior Photo Documentation Points

EXHIBIT B TO COMPLAINT

EXHIBIT B-5



3

EXHIBIT B TO COMPLAINT