**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| MATTHEW RAMSEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. _____ |
| | ) | |
| ACE AMERICAN INSURANCE | ) | |
| COMPANY d/b/a CHUBB | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff, Mr. Matthew Ramsey ("Plaintiff" or "Mr. Ramsey"), submits the following Complaint for Damages and Equitable Relief against ACE American Insurance Company d/b/a Chubb ("Defendant" or "Chubb") and shows as follows:

## INTRODUCTION

1.

Mr. Ramsey was employed with Chubb as a Claims Specialist in its Commercial General Liability Group since September 18, 2017, before transferring to its Employment Practices Liability Group in January 2020. After Mr. Ramsey experienced health difficulties and was diagnosed with autism and ADHD, however, he began suffering discrimination and retaliation at the hands of his supervisor, Mr. Ala Barreto, when he requested FMLA and disability leave and work

accommodations. Mr. Barreto's unlawful actions against Mr. Ramsey continued for months, until Mr. Ramsey was unlawfully fired for pretextual reasons.

2.

Plaintiff asserts claims under the Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C. § 12112 et seq. ("ADAAA"), the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq. ("FMLA"). He seeks back pay and lost economic benefits of his employment, liquidated damages, reinstatement or front pay in lieu of reinstatement, compensatory and punitive damages, and reasonable attorney's fees and costs.

## JURISDICTION AND VENUE

3.

Plaintiff's claims present federal questions over which this Court has jurisdiction pursuant to 28 U.S.C. § 1331, § 1343(a), and 42 U.S.C. § 2000e.

4.

The violations of Mr. Ramsey's rights occurred in the Northern District of Georgia. Venue is proper under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(b) and (c), as every act of which he complains occurred in this District.

## **PARTIES**

5.

Mr. Matthew Ramsey is a citizen of the United States residing in Fulton County in the State of Georgia. At all relevant times, Mr. Ramsey was employed by Chubb Insurance.

6.

In 2016, ACE acquired Chubb and adopted its name, creating the world's largest publicly traded property and casualty insurance company.

7.

Defendant may be served by personal service on its registered agent, CT Corporation System, 289 S. Culver Street, Lawrenceville, Georgia 30046.

8.

Chubb is an employer within the meaning of the ADAAA, 42 U.S.C. § 12111(5), and the FMLA, 29 U.S.C. §2611(4)(A)(ii)(I).

9.

At all times while Mr. Ramsey was employed by Chubb, there were 50 or more employees employed by the company within 75 miles of his primary worksite. 29 U.S.C. § 2611(2)(B)(ii).

10.

Mr. Ramsey is an "employee" as defined by the ADAAA, and an "eligible employee" as defined by the FMLA, 29 U.S.C. § 2611(2)(A).

11.

Mr. Ramsey is a "qualified individual with a disability" as that term is used and defined by the ADAAA.

## ADMINISTRATIVE PROCEEDINGS

12.

Mr. Ramsey timely filed a charge of discrimination against Chubb with the United States Equal Employment Opportunity Commission ("EEOC"). He received the Notice of Right to Sue from the EEOC, and has complied with all other conditions precedent to assert his claims under the ADAAA in this lawsuit.

## FACTS

13.

Mr. Ramsey was hired by Chubb on September 18, 2017, as a Claims Specialist on the Casualty Team.

14.

He received very favorable semi-annual and annual performance reviews while on Chubb's Casualty Team from September 2017 through December 2019, along with annual raises and performance bonuses.

15.

In January 2020, Mr. Ramsey was offered a new position as Claims Specialist on the Financial Lines – Employment Practices Liability Team.

16.

Mr. Ramsey accepted the position and began working under the supervision of Mr. Ala Barreto.

17.

In April 2020, Mr. Ramsey began suffering flu-like symptoms and fever.

18.

He was required to take short-term disability leave beginning April 20, 2020, per Chubb's Covid-19 policy, even though he did not have Covid-19.

19.

On May 13, 2020, Mr. Ramsey was bitten by a poisonous brown recluse spider in his apartment.

20.

The bite resulted in very serious internal and external injuries, required Mr. Ramsey to be hospitalized, caused difficulty walking, and called for regular follow-up treatment.

21.

As a result, Mr. Ramsey's short-term disability leave was extended until June 7, 2020.

22.

Upon Mr. Ramsey's return to work, Mr. Barreto's attitude towards him changed significantly.

23.

Mr. Barreto appeared to be unhappy with the duration of Mr. Ramsey's leave.

24.

When Mr. Ramsey first told Mr. Barreto about the brown recluse spider bite, Mr. Barreto appeared incredulous and said something to the effect of, "So you need time off because of a bug bite?".

25.

Mr. Ramsey explained the seriousness of his injury, and that he was hospitalized and could not walk as a result of the spider bite.

26.

Mr. Barreto said he understood, but his demeanor toward Mr. Ramsey changed almost immediately.

27.

Before Mr. Ramsey's leave, his interactions with Mr. Barreto had been friendly, but thereafter, the friendliness was gone and replaced with annoyance and exasperation.

28.

In July 2020, Mr. Ramsey received a diagnosis of ADHD-combined type and Autism Spectrum Disorder by his treating psychiatrist.

29.

On August 3, 2020, Mr. Ramsey's psychiatrist sent a medical accommodation request form/letter to Chubb's human resources department and to Mr. Barreto, requesting reasonable accommodations, including:

 a. Providing Mr. Ramsey with additional support regarding deadlines;

 b. Allowing Mr. Ramsey to check email only three times per day so he did not get distracted by extraneous information;

 c. Providing a mentor who could give concrete guidance; and

 d. Assisting Mr. Ramsey with gaining access to dictation software.

30.

On August 6, 2020, Mr. Ramsey participated in a conference call with Mr. Barreto and Chubb HR Manager Becky Salisbury to discuss the aforementioned accommodations.

31.

Chubb ultimately denied his request to be allowed to check email only three times per day.

32.

On August 18, 2020, Mr. Ramsey received approval for intermittent FMLA leave from July 23, 2020, through January 24, 2021

33.

He was approved for leave for two days, three times each month. However, he did not use all of these leave days.

34.

Mr. Barreto's retaliation against Mr. Ramsey began immediately.

35.

Mr. Barreto explained that in order to satisfy Mr. Ramsey's accommodation requests, the two of them would have a one-hour phone call every morning from 9:00 – 10:00 a.m. for the foreseeable future.

36.

Mr. Barreto claimed that the daily meeting calls would serve two purposes: (1) he would act as a mentor; and (2) Mr. Barreto would provide occasional support regarding deadlines.

37.

After Mr. Ramsey's first daily telephone meeting with Mr. Barreto, however, it was clear that the purpose of the daily calls was to manufacture performance issues.

38.

Mr. Barreto thus began to micromanage every aspect of Mr. Ramsey's daily work.

39.

Mr. Barreto meticulously assigned and reviewed Mr. Ramsey's work each day and "discovered" issues with it. When there were no problems, he contrived them.

40.

Mr. Barreto's method for harassing, retaliating, and discriminating against Mr. Ramsey was as follows. First, he created a spreadsheet with Mr. Ramsey's cases listed, and told him that he could only use Mr. Barreto's spreadsheet to manage his cases. Any to-do lists that Mr. Ramsey had, any task lists or calendars or other methods that he used to keep track of his files were explicitly banned by Mr. Barreto. To ensure that Mr. Ramsey only used his spreadsheet, Mr. Barreto required that Mr. Ramsey update it daily with that day's completed tasks and email it to him before close of business for Mr. Barreto's review.

41.

Mr. Ramsey had successfully managed claims at Chubb for over two years before joining Mr. Barreto's team and had continued to do so since.

42.

Mr. Ramsey's audit scores since joining Mr. Barreto's team had all been in the 90th percentile (sometimes 100 percent).

43.

There was no basis for Mr. Barreto to inflict these draconian new requirements on Mr. Ramsey other than harassment and retaliation.

44.

None of Mr. Ramsey's peers or coworkers on Mr. Barreto's team were required to use Mr. Barreto's spreadsheet, nor were they required to email him a spreadsheet every night.

45.

Mr. Barreto soon imposed additional restrictions and requirements on Mr. Ramsey's use of his spreadsheet.  These requirements were arbitrary, burdensome, and created significant impediments to Mr. Ramsey's ability to adequately perform his job.

46.

For example, Column G of Mr. Barreto's spreadsheet was titled "Date of Next Update."  Anytime a file was worked on, the date in Column G was to be updated. Mr. Barreto, however, only allowed Mr. Ramsey to have five files or "tasks" listed per day.  If Mr. Ramsey ever had more than five cases listed in a day, Mr. Barreto would reject the spreadsheet in its entirety and require Mr. Ramsey to revise and resubmit it.  The nature of the task did not matter, whether it was a five-minute phone call or a complex project requiring many hours. All tasks were treated the same by Mr. Barreto for purposes of the daily spreadsheet, and Mr. Ramsey was never allowed to have more than five cases listed.

47.

Mr. Barreto also prohibited Mr. Ramsey from moving tasks around.  This requirement was clearly impracticable and unmanageable, since the dynamic nature of legal work means priorities are shifting all the time.

48.

When Mr. Ramsey pushed back on this requirement, Mr. Barreto adamantly refused to change his restrictions.

49.

Condescendingly, he claimed that his justification for only allowing five tasks per day was that he didn't want to "overwhelm" Mr. Ramsey, despite the fact that he regularly assigned Mr. Ramsey 8-10 tasks per day during their morning meetings.

50.

When Mr. Barreto refused to change his requirements, Mr. Ramsey began keeping a separate "to-do" list with all his actual tasks – i.e., the overflow from Mr. Barreto's spreadsheet.

51.

Mr. Ramsey mentioned this to Mr. Barreto one day, and Mr. Barreto chastised him for violating his rule of only using Mr. Barreto's spreadsheet.

52.

Mr. Barreto falsely claimed that Mr. Ramsey was undermining all the months of work they had put in together, when in fact Mr. Ramsey was only trying to do his job in the face of Mr. Barreto's unworkable restrictions.

53.

Beginning in August 2020, Mr. Barreto began arbitrarily moving the meetings around on the calendar.

54.

Mr. Ramsey would prepare for a meeting and all the work would be done, and then Mr. Barreto would reschedule the meeting at the last minute – i.e., 30 minutes before the meeting was scheduled to begin, Mr. Barreto would message Mr. Ramsey and tell him the meeting was being pushed back two weeks.  There was never any reason to move any of these meetings.

55.

On more than one occasion Mr. Barreto told Mr. Ramsey that he was falling behind in his work and his performance was suffering and used the fact that the meetings "had to be rescheduled four or five times" as supposed proof of Mr. Ramsey's poor performance.

56.

Mr. Ramsey called Mr. Barreto on the phone to express his disagreement with Mr. Barreto's characterization of his performance.

57.

During the call, Mr. Barreto admitted that Mr. Ramsey never needed or asked for the meetings to be pushed back, and that he had done that on his own volition.

58.

Mr. Barreto claimed that he moved the meetings to help Mr. Ramsey, and that he didn't want to "overwhelm" Mr. Ramsey since he suspected he was backlogged on other tasks.

59.

Mr. Barreto had put these criticisms of Mr. Ramsey in an email to memorialize the supposed performance issue. Mr. Ramsey asked Mr. Barreto if he would please send a follow-up email correcting the mischaracterization of Mr. Ramsey's performance.  He did not.

60.

Another common tactic Mr. Barreto employed was to criticize Mr. Ramsey for being "unresponsive.".

61.

Mr. Barreto claimed that many clients had contacted him because they could not get in touch with Mr. Ramsey. These periods of unresponsiveness, however, corresponded with periods when Mr. Ramsey was out on protected medical leave.

62.

Mr. Barreto told Mr. Ramsey he needed to respond to clients within 24 hours, even though he knew Mr. Ramsey was on protected leave.

63.

When it became increasingly clear that Mr. Barreto did not want him on his team, Mr. Ramsey asked multiple times during October-November 2020 for a transfer. However, Mr. Barreto claimed Mr. Ramsey was not eligible to transfer.

64.

In addition, Mr. Barreto restricted Mr. Ramsey's work hours to 8 a.m. to 4 p.m. daily.  Mr. Ramsey was not permitted to work outside these hours, even though most of his clients were in California and on Pacific Time.

65.

In October 2020, Mr. Ramsey contracted COVID-19, and as a result was on short-term disability leave from October 19 through October 26, 2020.

66.

Shortly thereafter, on November 3, 2020, Mr. Ramsey received a Documented Performance Warning from Mr. Barreto.

67.

The alleged performance issues were due to backlogs that had occurred during Mr. Ramsey's protected leave, as well as to Mr. Barreto's months-long efforts to manufacture performance deficiencies for Mr. Ramsey.

68.

Mr. Barreto followed this unwarranted warning with a Performance Termination Warning on December 4, 2020, again alleging deficiencies in Mr. Ramsey's work performance that Mr. Barreto had himself engineered and created, and/or were attributable to Mr. Ramsey's FMLA and STD leave.

69.

The Termination Warning was for a period of 30 days, through January 7, 2021.

70.

On January 7, 2021, Mr. Barreto terminated Mr. Ramsey's employment.

## COUNT I

## RETALIATION IN VIOLATION OF THE FMLA

71.

Mr. Ramsey incorporates paragraphs 1 through 70 as if set forth fully herein.

72.

Mr. Ramsey was an eligible employee who was entitled to a total of 12 workweeks of leave because of his own serious health condition within the meaning of 29 U.S.C. § 2612(a)(1)(D).

73.

By terminating Mr. Ramsey's employment because he exercised and attempted to exercise rights under 29 U.S.C. § 2612(a)(1)(D), Chubb retaliated against Mr. Ramsey because of his exercise of rights under the FMLA.

74.

Chubb's actions in retaliating against Mr. Ramsey because he exercised rights under the FMLA were committed with reckless disregard for his right to take up to 12 workweeks of leave time because of his own serious health condition, and in violation of 29 U.S.C. § 2612(a)(1)(D).

75.

The effect of Chubb's actions has been to deprive Mr. Ramsey of a job, as well as income in the form of wages, health insurance, prospective retirement benefits, social security, and other benefits because he exercised FMLA rights.

76.

Accordingly, and because the violations of the FMLA committed by Defendant, Mr. Ramsey is entitled to both equitable and monetary relief pursuant to 29 U.S.C. § 2617(a)(1)(A) and (B), including, but not limited to, back pay and other lost economic benefits of employment, reinstatement or front pay in lieu of reinstatement, and reasonable attorney's fees and costs of litigation.

77.

Mr. Ramsey is also entitled to liquidated damages for the willful violation of his rights under the FMLA. 29 U.S.C. § 2617(a)(1)(A)(iii).

## COUNT II

## FMLA INTERFERENCE

78.

Plaintiff incorporates paragraphs 1 through 70 herein by reference as if set forth fully herein.

79.

Mr. Ramsey was an eligible employee who was entitled to a total of 12 workweeks of leave because of his own serious health condition within the meaning of 29 U.S.C. § 2612(a)(1)(D).

80.

By terminating Mr. Ramsey's employment when he was entitled to take additional leave under 29 U.S.C. § 2612(a)(1)(D), among other actions, Defendant interfered with and prevented him from exercising his rights under the FMLA.

81.

The actions of Defendant in interfering with Mr. Ramsey's leave under the FMLA were committed with reckless disregard for his right to take up to 12

workweeks of leave time because of his serious health condition and in violation of 29 U.S.C. § 2612(a)(1)(D).

82.

The effect of the actions of Defendant has been to deprive Mr. Ramsey of a job, as well as income in the form of wages, health insurance, prospective retirement benefits, social security, and other benefits as a result of his right to leave under the FMLA.

83.

Accordingly, and because the violations of the FMLA committed by Defendant, Mr. Ramsey is entitled to both equitable and monetary relief pursuant to 29 U.S.C. § 2617(a)(1)(A) and (B), including, but not limited to, back pay and other lost economic benefits of employment, reinstatement or front pay in lieu of reinstatement, and reasonable attorney's fees and costs of litigation.

84.

Mr. Ramsey is also entitled to liquidated damages for the willful violation of his rights under the FMLA. 29 U.S.C. § 2617(a)(1)(A)(iii).

## **COUNT III**

## **DISABILITY DISCRIMINATION IN VIOLATION OF THE ADAAA**

85.

Mr. Ramsey incorporates paragraphs 1 through 70 as if set forth fully herein.

86.

At all relevant times, Chubb has been subject to the requirements of Title I of the Americans with Disabilities Act as amended by the ADAAA.

87.

At all times relevant, Mr. Ramsey was an individual with a disability as defined by the ADAAA, 42 U.S.C. § 12102(1), inasmuch as he had mental and physical impairments that substantially limited one or more major life activities, he had a record of such impairments, and he was regarded as a person with such impairments.

88.

At all relevant times, Mr. Ramsey has been a qualified individual with a disability as that term is defined by 42 U.S.C. § 12111(8), and he was able to perform the essential functions of his job with or without a reasonable accommodation.

89.

Chubb intentionally discriminated against Mr. Ramsey by subjecting him to adverse employment actions including, but not limited to, unwarranted performance counseling and termination of his employment, because of his disabilities.

90.

Defendant violated Mr. Ramsey's rights under the ADAAA, 42 U.S.C. § 12112, by discriminating against him on the basis of his disabilities.

91.

As a direct and proximate result of Chubb's intentional discrimination, Mr. Ramsey has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other job-related benefits, including social security, all in an amount to be established at trial.

92.

Chubb's actions have caused and will continue to cause Mr. Ramsey to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, all in an amount to be established at trial.

93.

Chubb's actions were undertaken intentionally, willfully, and maliciously with respect to, or with reckless disregard for, Mr. Ramsey's federally protected rights, and he is therefore entitled to punitive damages.

94.

Mr. Ramsey is entitled to be reinstated to employment by Chubb, and, if reinstatement is not feasible, he is entitled to an award of damages for future lost wages and benefits of employment.

## COUNT IV

## RETALIATION IN VIOLATION OF THE ADAAA

95.

Plaintiff incorporates paragraphs 1 through 70 as if set forth fully herein.

96.

At all relevant times, Chubb has been subject to the requirements of Title I of the Americans with Disabilities Act as amended by the ADAAA.

97.

At all times relevant, Mr. Ramsey was an individual with a disability as defined under the ADAAA, 42 U.S.C. § 12102(1), inasmuch as he had mental and physical impairments that substantially limited one or more major life activities, he had a record of such impairments, and he was regarded as a person with such impairments.

98.

At all relevant times, Mr. Ramsey has been a qualified individual with a disability as that term is defined by 42 U.S.C. § 12111(8), and able to perform the essential functions of his job with or without a reasonable accommodation.

99.

Chubb intentionally retaliated against Mr. Ramsey by, among other things, issuing unwarranted performance counseling and terminating his employment after he requested a reasonable accommodation, and because of his disabilities.

100.

Chubb's actions violate the ADAAA, which prohibits retaliation because an individual requests a reasonable accommodation or seeks to exercise rights under the Act. 42 U.S.C. § 12203.

101.

As a direct and proximate result of Chubb's unlawful retaliation against Mr. Ramsey, he has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other job-related benefits, including social security, all in an amount to be established at trial.

102.

Chubb's actions have caused, continue to cause, and will cause Mr. Ramsey to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

103.

Chubb's actions were undertaken intentionally, willfully, and maliciously with respect to, or with reckless disregard for, Mr. Ramsey's federally protected rights, and he is therefore entitled to punitive damages.

104.

Mr. Ramsey is entitled to be reinstated to employment by Defendant, and, if reinstatement is not feasible, he is entitled to an award of damages for future lost wages and benefits of employment.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands a **TRIAL BY JURY** and that the following relief be granted:

A.     That the Court take jurisdiction of this matter;

B.     That process be served;

C.     That the Court award Mr. Ramsey his back pay and lost economic benefits of employment and front pay in an amount to be determined at the trial of this case;

D.     That the Court award compensatory damages in an amount to be determined by the trier of fact;

E.     That the Court award Plaintiff liquidated damages under the FMLA;

F.      That the Court award Plaintiff his costs of litigation in this action and reasonable attorney's fees;

G.      That the Court grant to Plaintiff the right to have a trial by jury on all issues triable to a jury; and

H.      That the Court grant such additional relief as the Court deems proper and just.

Respectfully submitted this 6th day of January, 2023.

**HALL & LAMPROS LLP**

By:    */s/ Rachel Berlin Benjamin*
       Rachel Berlin Benjamin
       Georgia Bar No. 707419
       rachel@hallandlampros.com
       Hall & Lampros LLP
       300 Galleria Parkway, Suite 300
       Atlanta, Georgia 30339

       *Counsel for Plaintiff*