IN THE UNITED STATE DISTRCT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| STEPHEN GRAY,<br><br>    Plaintiff,<br><br>v.<br><br>STATE OF GEORGIA-GEORGIA ENVIRONMENTAL FINANCE AUTHORITY,<br><br>    Defendant. | Civil Action File No.:<br><br>         -cv-<br><br>**JURY TRIAL DEMANDED** |

# COMPLAINT

Plaintiff Stephen Gray ("Plaintiff" or "Gray") files this Complaint against the Georgia Environmental Finance Authority for the State of Georgia ("GEFA" or "Defendant"), seeking damages and other relief as the Court deems just and proper for retaliation and discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.* ("Title VII"), respectfully showing the Court as follows:

**PARTIES, JURISDICTION AND VENUE**

1.

The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and § 1343.

2.

Venue is proper in this Court under 28 U.S.C. § 1391 because Defendant is a resident of this federal judicial district.

3.

Plaintiff is a citizen of the State of Georgia who was employed by GEFA.

4.

GEFA is an agency of the State of Georgia. GEFA as an agency of the State may be served by having process delivered to the Executive Director of GEFA, Mr. Hunter Hill, 47 Trinity Avenue, SW, Atlanta, Georgia, 30334.

**FACTUAL BACKGROUND GIVING RISE TO CLAIMS**

<u>Gray's Employment at GEFA</u>

5.

GEFA manages programs that conserve and improve Georgia's energy, land, and water resources. GEFA provides loans for water, wastewater, and solid waste infrastructure; manages energy efficiency and renewable energy programs; administers land conservation loans; and manages and monitors state-owned fuel storage tanks. GEFA has provided more than $5 billion in low-interest loans to cities, counties, and infrastructure authorities for improvements to water, wastewater, and solid waste systems. More than 1,900 projects have been funded by GEFA, including solid waste management projects and land conservation purchases and easements.

6.

GEFA has three primary divisions: The Energy Resources Division; the Water Resources Division; and the Financial Services Division.

7.

The Water Resources Division supports the development of water, wastewater, and solid waste infrastructure projects, which help protect the environment, facilitate economic development, accommodate population growth, and safeguard public health.

8.

Gray was on the Board of Directors for GEFA for 7 years and was then hired as the Director of Water Resources Division.

9.

Throughout his tenure at GEFA, Gray performed his job duties in an exemplary manner.

10.

Gray managed the Water Resources division particularly well during the unprecedented challenges of operating during the COVID-19 pandemic, during which time the department processed 740 loan deferrals to free payments despite being short-staffed.

11.

During the last two loan cycles, Gray's Division closed more loans for Water Resources projects than at any time during the history of GEFA's existence.

<u>Gray is Terminated for Engaging in Protected Activity</u>

12.

During his tenure, Gray, who is white or Caucasian, became increasingly concerned with the racially discriminatory practices he observed occurring at GEFA, in particular the treatment of African American employees, and the lack of racial and minority diversity in employees and management of the agency.

13.

Specifically, Gray voiced his concerns about and stood up in opposition to discriminatory practices against African American employees of GEFA put into place by the then Executive Director of GEFA, Kevin Clark.

14.

Under Clark's tenure, discrimination was rampant at GEFA. Clark demonstrated his discriminatory behavior on several occasions with board members. Grady Thompson, a board member of GEFA, frequently referenced black communities in a derogatory manner. Clark was aware of the tension it brought in the room and chose not to address the matter.

15.

In response to Gray's repeated overtures that an African American should be appointed to GEFA's Board, Clark responded that GEFA "just needed God Ole Boys" on the Board. It was not until Gray was terminated and filed a Charge of Discrimination that an African American was appointed to the Board.

16.

GEFA's Board President, Boyd Austin, stated in a conversation with Mr. Clark and Mr. Gray around the time of the Governor's race that there were "enough n***ers in Atlanta, we don't need another one running our state." Mr. Clark responded with laughter.

17.

Clark displayed a history of failing to promote qualified African Americans at GEFA.

18.

In response, Gray continually voiced his concerns during GEFA Board and management meetings and became an outspoken critic of the lack of diversity and discriminatory practices at GEFA.

19.

Clark's discriminatory behavior continued, however. For example, Mr. Clark instructed Gray to "build a file" on an African American employee, Dana Eldridge,

in order to fabricate performance issues needed to justify Clark's desire to terminate her employment at GEFA.

20.

Eldridge was performing her job at an acceptable level, however, and Gray told Clark that he did not see any reason to terminate her.

21.

Clark had engaged in a pattern of concocting justifications to rid GEFA of otherwise able performing African American employees and replace them with Caucasians.

22.

Gray refused to Clark's directives to "build a file" on Eldredge and voiced his concerns to Clark and others at GEFA about Clark's racially discriminatory practices.

23.

At or near the same time, Gray also opposed Clark's directives to send another African American employee of GEFA, Larry Paul, on assignments into certain rural North Georgia communities that were experiencing a resurgence of white supremacy groups and white supremacy protests and activities.

24.

When Clark insisted that Paul go on assignments to these communities, Gray

requested permission to accompany Paul to help ensure his safety.

25.

Clark refused Gray's request to accompany Paul.

26.

Gray then requested that at minimum Paul be provided with a State of Georgia government decal that he could display on his car to help ensure Paul's safety on the assignments to these communities.

27.

Clark also refused the request for the decal for Paul's vehicle, and in response Gray again raised his concerns about discrimination within GEFA.

28.

After Gray's repeated efforts to stand up for and oppose the discriminatory practices within GEFA, Clark summarily terminated Gray's employment on May 4, 2021.

29.

Clark first contended that he was terminating Gray for failing to complete assigned projects.

30.

In response, Gray demonstrated that the supposed incomplete projects had in fact been completed timely and provided documentation of the same.

31.

In response to Gray's rebuttal of the alleged justification for the termination, Clark failed to provide any reason for the termination.

32.

In the month preceding his unexplained, summary termination, Gray hired two African American employees. Clark became upset over Gray's decision to make these hires and expressed his anger to Gray that Gray had hired the two African Americans.

33.

Gray was terminated by GEFA in retaliation for engaging in protected activity.

Exhaustion of Administrative Remedies

34.

Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission alleging retaliation in violation of Title VII of the Civil Rights Act of 1964.

35.

Plaintiff initiated this lawsuit within 90 days of his receipt of a right to sue notice from the EEOC.

## SUBSTANTIVE COUNT: Retaliation in Violation of Title VII

36.

Plaintiff incorporates Paragraphs 1 through 35 as though set forth fully herein.

37.

Defendant's termination of Plaintiff was undertaken in retaliation for Plaintiff's opposition to racially discriminatory practices under Title VII.

38.

Defendant's discriminatory conduct was willful and intentional, with reckless indifference to Plaintiff's federally protected rights.

39.

As a result of Defendant's retaliatory actions, Plaintiff suffered monetary damages in the form of lost wages, lost employment benefits and opportunities for advancement in an amount to be determined at trial.

40.

Plaintiff has suffered additional monetary and non-monetary compensatory damages in an amount to be determined at trial. By way of example, he has experienced fear, stress, and anxiety resulting from the termination of his employment.

## JURY DEMAND

41.

Plaintiff demands a trial by jury on all issues and claims so triable.

WHEREFORE, Plaintiff respectfully requests that the Court:

1. Award Plaintiff actual, compensatory, and punitive damages in an amount to be determined by the evidence;

2. Award Plaintiff backpay for his lost wages and compensation for his lost past and current employee benefits;

3. Award Plaintiff injunctive relief in the form of reinstatement or front pay in the alternative;

4. Award Plaintiff pre-judgment and post-judgment interest;

5. Award Plaintiff his reasonable expenses, including attorneys' fees and costs; and

6. Grant Plaintiff such other relief as the Court deems just and proper.

Respectfully submitted: January 5, 2023.

                                              /s/ M. Travis Foust
                                              M. Travis Foust
                                              Georgia Bar No. 104996
                                              tfoust@pcwlawfirm.com

**PARKS, CHESIN & WALBERT, P.C.**
75 Fourteenth Street, N.E., 26th Floor
Atlanta, Georgia 30309
T: (404) 873-8000
F: (404) 873-8050
*Counsel for Plaintiff*