No. 22A04501
_____

**STATE COURT OF DEKALB COUNTY**
**GEORGIA, DEKALB COUNTY**

**Date Summons Issued and E-Filed**

11/21/2022
_____
/s/ Monica Gay
_____

Deputy Clerk

Deposit Paid $ _____

**SUMMONS**

JOSHUA MONTGOMERY
_____

_____
Plaintiff's name and address

**vs.**

**[X] JURY**

STATE FARM FIRE AND CASUALTY
_____
COMPANY
_____
Defendant's name and address

**TO THE ABOVE-NAMED DEFENDANT:**

You are hereby summoned and required to file with the Clerk of State Court, Suite 230, 2nd Floor, Administrative Tower, DeKalb County Courthouse, 556 N. McDonough Street, Decatur, Georgia 30030 and serve upon the plaintiff's attorney, to wit:
Richard E. Dolder, Jr.
_____
Name
Slappey & Sadd, LLC, 352 Sandy Springs Circle, Atlanta, GA 30328 _____
Address
(404) 255-6677                                                    220237
_____
Phone Number                              Georgia Bar No.

an **ANSWER** to the complaint which is herewith served upon you, within thirty (30) days after service upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. The answer or other responsive pleading can be filed via electronic filing through eFileGA via www.eFileGA.com or, if desired, at the e-filing public access terminal in the Clerk's Office at 556 N. McDonough Street, Decatur, Georgia 30030

_____        _____
Defendant's Attorney                      Third Party Attorney

_____        _____
Address                                   Address

_____        _____
Phone No.              Georgia Bar No.     Phone No.              Georgia Bar No.

**TYPE OF SUIT**

☐ Personal Injury ☐ Products Liability        Principal $ TBD
☐ Contract ☐ Medical Malpractice                        _____
☐ Legal Malpractice ☐ Product Liability       Interest $ TBD
☒ Other                                                 _____

                                              Atty Fees $ TBD
                                                         _____

**Access to the e-filing site and the rules is available at www.dekalbstatecourt.net**
**To indicate consent to e-service check the box below.**
**☒(Plaintiff consents to e-service pursuant to OCGA 9-11-5 (f). The email address for service appears in the complaint.**

E-file summons1-2016

## General Civil and Domestic Relations Case Filing Information Form

☐ Superior or ☒ State Court of _____DeKalb_____ County

| For Clerk Use Only | |
|---|---|
| Date Filed _____11/21/2022_____ | Case Number _____22A04501_____ |
| MM-DD-YYYY | |

**Plaintiff(s)**
Montgomery  Joshua

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

**Defendant(s)**
State Farm Fire and Casualty Company

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

**Plaintiff's Attorney** Richard E. Dolder, Jr.     **Bar Number** 220237     **Self-Represented** ☐

### Check One Case Type in One Box

**General Civil Cases**
- ☐ Automobile Tort
- ☐ Civil Appeal
- ☐ Contract
- ☐ Garnishment
- ☒ General Tort
- ☐ Habeas Corpus
- ☐ Injunction/Mandamus/Other Writ
- ☐ Landlord/Tenant
- ☐ Medical Malpractice Tort
- ☐ Product Liability Tort
- ☐ Real Property
- ☐ Restraining Petition
- ☐ Other General Civil

**Domestic Relations Cases**
- ☐ Adoption
- ☐ Dissolution/Divorce/Separate Maintenance
- ☐ Family Violence Petition
- ☐ Paternity/Legitimation
- ☐ Support – IV-D
- ☐ Support – Private (non-IV-D)
- ☐ Other Domestic Relations

**Post-Judgment – Check One Case Type**
- ☐ Contempt
  - ☐ Non-payment of child support, medical support, or alimony
- ☐ Modification
- ☐ Other/Administrative

☐ Check if the action is related to another action(s) pending or previously pending in this court involving some or all of the same parties, subject matter, or factual issues. If so, provide a case number for each.

_____     _____
**Case Number**                    **Case Number**

☒ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in O.C.G.A. § 9-11-7.1.

☐ Is an interpreter needed in this case? If so, provide the language(s) required. _____
**Language(s) Required**

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

_____
_____

Version 1.1.18

## IN THE STATE COURT OF DEKALB COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| **JOSHUA MONTGOMERY, individually** | ) | |
| **and as assignee of the estate of Joseph** | ) | |
| **Daniel Wayton, Jr.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action File** |
| **v.** | ) | **No.** 22A04501 _____ |
| | ) | |
| **STATE FARM FIRE AND CASUALTY** | ) | |
| **COMPANY,** | ) | **DEMAND FOR JURY TRIAL** |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

Joshua Montgomery, individually and as assignee of the estate of Joseph

Daniel Wayton, Jr. files his Complaint as follows:

## PARTIES, VENUE AND JURISDICTION

### 1.

Joshua Montgomery is a natural person and a Georgia resident.

### 2.

State Farm Fire and Casualty Company is a property and casualty insurance

company doing business in DeKalb County.

STATE COURT OF
DEKALB COUNTY, GA.
11/21/2022 10:33 AM
E-FILED
BY: Monica Gay

3.

State Farm's agent for service of process is J. Patrick O'Brien c/o

Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners,

Georgia, 30092.

4.

State Farm was properly served with process in this action.

5.

State Farm has agents selling insurance policies in DeKalb County, and

State Farm insures risks in DeKalb County.  Venue in this Court is proper.

## **FACTUAL ALLEGATIONS**

6.

On September 12, 2018, Joshua Montgomery was seriously injured when he

fell from the second-floor deck of a property located at 218 Neely Road,

Fayetteville, Georgia ("Property").

7.

The Property was owned by Joseph Wayton, Mr. Montgomery's uncle.

8.

Prior to the accident, Mr. Wayton removed the railings from a second-floor

deck without notice or warning, creating a hazardous condition at the Property.

9.

The hazardous condition was unknown to Mr. Montgomery.

10.

When he fell, Mr. Montgomery was his uncle's temporary guest.  Around the same time, coincidentally, Mr. Wayton was hit by a car and hospitalized.

11.

While Mr. Wayton was hospitalized because of his own injuries from getting hit by the car, Mr. Montgomery woke up one night and stepped outside to get some fresh air.  Rotten decking broke beneath his feet, causing him to lose balance in the dark and fall off the deck.  He crushed his right arm as he fell into the side of the steps and broke his neck when he hit the ground.

12.

Mr. Montgomery was knocked unconscious by the impact and awoke hours later, severely injured.  Luckily, his phone had fallen with him, and he was able to dial 911.  Emergency services transported him to a hospital.

13.

Mr. Montgomery suffered a permanent disability to his arm.  He experienced devastating pain and suffering and permanent scaring.  He lost work and the ability to do work he had previously done.  His ability to play music, fish, hunt and to enjoy other life pleasures was greatly decreased.

14.

The uncle's Property was insured by State Farm Fire and Casualty Company ("State Farm"), No. 11-LC-7105-9, effective October 30, 2017, to October 30, 2018, and with personal liability limits of $300,000 ("Policy").  (Documents that are believed to be the Policy's declarations pages are attached as Exhibit A.)

15.

Mr. Wayton informed his nephew of the Policy and told him he could make a claim against it.

16.

Mr. Wayton ultimately died of injuries he suffered from being hit by a car (which was unrelated Mr. Montgomery's fall), and his coverage benefits under the Policy devolved to the executor or representative of his estate.

17.

Given the circumstances, Mr. Montgomery was initially reluctant to pursue claims against his uncle or the estate, but he changed his mind when large medical bills began arriving.

18.

On September 20, 2019, Mr. Montgomery's counsel sent a demand letter to State Farm offering to settle all claims against his uncle's estate for policy limits of $300,000.  (A true and correct copy of the demand letter is attached as Exhibit B.)

4

19.

The demand letter explained the circumstances by which Mr. Montgomery found himself temporarily at his uncle's Property, explained his uncle's liability for causing the fall, and outlined his extensive damages, which clearly exceeded policy limits of $300,000.

20.

The demand was capable of acceptance by State Farm.

21.

The demand was a valid and reasonable opportunity to settle Mr. Montgomery's claims.

22.

On October 25, 2019, State Farm rejected the settlement demand.  (A true and correct copy of the rejection letter is attached as Exhibit C.)

23.

State Farm's rationale for the rejection was that Mr. Montgomery "had been residing with his uncle … for a number of years prior to September 12, 2018."

24.

State Farm's rationale is factually incorrect, as Mr. Montgomery had not resided with his uncle for a lengthy period prior to September 12, 2018.  In fact, at the time he fell and was injured, Mr. Montgomery lived in Alabama.  Mr.

Montgomery did not meet the policy definition of insured, and his claims were not excluded from coverage.

25.

Counsel for Mr. Montgomery contacted State Farm to advise of its incorrect facts and assumptions and advised that Mr. Montgomery did not live with his uncle at the time of his fall, but State Farm maintained its denial.

26.

On May 22, 2020, Mr. Montgomery filed *Joshua Montgomery v. Diana L. Tardif as executor of the Estate of Joseph Daniel Wayton, Jr.,* State Court of Fayette County, Georgia, 2020SV-0269 ("Underlying Lawsuit").  (A true and correct copy of the complaint in the Underlying Lawsuit is attached as Exhibit D.)

27.

Diane L. Tardif, as executrix of the estate of Joseph Wayton, is an insured under the Policy.

28.

The defense of the Underlying Lawsuit was tendered to State Farm.

29.

State Farm received timely notice of the Underlying Lawsuit.

30.

On June 12, 2020, State Farm denied coverage and refused to defend the Underlying Lawsuit.  (A true and correct copy of the denial letter is attached as Exhibit E.)

31.

State Farm has waived or is otherwise estopped from relying on any policy provision or coverage defense with respect to the claims that are the subject of the Underlying Lawsuit other than those policy provisions or coverage defenses specifically referenced in Exhibit E.

32.

The Underlying Lawsuit resulted in a judgment against State Farm's insured for $1,068,313.90.  (A true and correct copy of the Final Judgment Order, "Judgment", is attached hereto as Exhibit F.)

33.

The Judgment is subject to post-judgment interest of 6.25 percent.

34.

On July 28, 2020, State Farm's insureds assigned to Mr. Montgomery their claims against State Farm, including claims asserted in this Complaint.  (A true and copy of the Assignment, Release and Indemnity Agreement is attached as Exhibit G.)

35.

State Farm's insureds complied with all conditions precedent to coverage under the Policy with respect to the Underlying Lawsuit.

## COUNT 1
## BREACH OF CONTRACT

36.

Mr. Montgomery incorporates and realleges the allegations in paragraphs 1-35 of this complaint as if fully set forth herein.

37.

Mr. Wayton, Mr. Wayton's estate and the executor of the estate fulfilled all conditions precedent to coverage under the Policy.

38.

Prior to June 12, 2020, which is the date State Farm denied all coverage to Mr. Wayton's estate (*see* Exhibit E), neither Mr. Wayton nor Mr. Wayton's estate nor the executor of the estate had failed to respond to any request by State Farm for cooperation or information.

39.

The June 12, 2020, denial of coverage acted as a breach by State Farm with respect to any duties State Farm owed to Mr. Wayton's estate (or its executory) under the Policy, releasing Mr. Wayton's estate and its executor from any conditions or contractual provisions placed in the Policy for State Farm's benefit.

40.

The factual allegations in the Underlying Lawsuit triggered potential coverage under the Policy for Mr. Wayton's estate and the executor.

41.

State Farm had a duty to defend Mr. Wayton's estate and the executor under the terms of the Policy, and State Farm breached that duty by failing to defend Mr. Wayton's estate or the executor in the Underlying Lawsuit.

42.

The default and Judgment in the Underlying Lawsuit arise naturally and according to the usual course of things from an insurer's breach of the duty to defend.  The parties to an insurance contract would contemplate a default and money judgment to be probable results of the breach of the duty to defend.

43.

State Farm has breached the duty to indemnify Mr. Wayton's estate and the executor for the resulting Judgment, post-judgment interest and by failing to pay any other benefits due under the policy.

44.

Because of its breaches, State Farm is liable to Mr. Montgomery, as assignee of Mr. Wayton's estate, for the full amount of the judgment and all post-judgment interest and other damages, including nominal damages.

## COUNT 2
## NEGLIGENT OR BAD FAITH FAILURE TO SETTLE
## UNDER THE COMMON LAW

### 45.

Mr. Montgomery incorporates and realleges the allegations in paragraphs 1-44 of this complaint as if fully set forth herein.

### 46.

Upon receiving the September 20, 2019, demand (*see* Exhibit B), State Farm had a duty to investigate whether there was liability coverage for Mr. Wayton's estate or its executor and the extent of potential legal liability to which they were exposed because of Mr. Montgomery's claims.

### 47.

State Farm had reasonable opportunities to settle Mr. Montgomery's claims against State Farm's insured(s) within policy limits.

### 48.

State Farm unreasonably refused to settle Mr. Montgomery's claims against State Farm's insured(s) within policy limits.

### 49.

State Farm breached its duties by failing to adequately investigate and evaluate Mr. Montgomery's claims, which failure contributed to State Farm's failure to accept reasonable opportunities to settle within policy limits.

50.

State Farm failed to treat Mr. Wayton's estate's and the executor's interests equal to its own interests by gambling with their financial interests, by failing to adequately investigate and by choosing to not settle a claim where its insured was at fault and exposed to damages.

51.

State Farm failed to act as a reasonably prudent liability insurer and failed to settle negligently or in bad faith and with a specific intent to injure.

52.

In addition, or in the alternative, State Farm's negligent or bad faith failure to settle was caused by its failure to hire and retain competent claims professionals and by its failure to train, supervise, provide time and resources to, or otherwise manage its claims professionals as would a reasonably prudent insurer that was attempting to or desired to treat its insured's interests equal to its own interests. All of these actions were taken with the specific intent to save money for itself while exposing its insureds to legal liability in excess of policy limits.

53.

The Judgment is a proximate result of these breaches, and State Farm is liable for the full amount of the Judgment, plus post-judgment interest and other damages.

## COUNT 3
## JUDGMENT CREDITORS' DIRECT ACTION
## AGAINST JUDGMENT DEBTOR'S INSURANCE COMPANY

### 54.

Mr. Montgomery incorporates and realleges the allegations in paragraphs 1-53 of this complaint as if fully set forth herein.

### 55.

The Judgment fixes the liability of State Farm's insured, allowing Mr. Montgomery to maintain an action directly against State Farm for the proceeds of the Policy. *Smith v. GEICO*, 179 Ga. App. 654 (1986).

### 56.

Under Georgia law, "where an injured party obtains an unsatisfied judgment against a party who has insurance covering the injuries – so that the judgment fixes the liability of the insured party to the injured party – the injured party may bring an action directly against the insurer to satisfy the judgment from the available insurance proceeds." *State Farm v. Bauman*, 313 Ga. App. 771, 771 (2012).

### 57.

State Farm is required to pay to Mr. Montgomery all amounts due and owing under the terms of the Policy in partial satisfaction of the Judgment.

## COUNT 4
## ATTORNEYS' FEES AND EXPENSES OF LITIGATION
## UNDER O.C.G.A. § 13-6-11

58.

Mr. Montgomery incorporates and realleges the allegations in paragraphs 1-57 of this complaint as if fully set forth herein.

59.

State Farm's actions and omissions constitute bad faith, stubborn litigiousness, and have caused Mr. Montgomery (individually and as assignee) unnecessary trouble and expense within the meaning of O.C.G.A. § 13-6-11, entitling Mr. Montgomery to attorneys' fees and expenses of litigation.

## DEMAND FOR JURY TRIAL

Mr. Montgomery hereby demands a trial by jury for each and every claim and defense for which there is a right to a jury.

**WHEREFORE**, Mr. Montgomery prays for judgment in his favor and against State Farm for the following:

A. That he have a trial by jury;

B. That he have and recover the following:

1.   Special damages in the principal amount of the Judgment;

2.   All post-judgment interest accruing on the Judgment;

3.   Further special damages, including all benefits due under the Policy;

4.      General damages in an amount to be determined by the enlightened

conscious of a fair and impartial jury;

5.      Nominal damages for each and every count of this complaint;

6.      Pre-judgment interest; and

7.      Other and further relief as the Court may deem just and proper.

Respectfully submitted on November 21, 2022.

> */s/ Richard E. Dolder*
> James (Jay) Sadd
> Georgia Bar No. 622010
> Richard E. Dolder, Jr.
> Georgia Bar No. 220237
> **SLAPPEY & SADD**
> 352 Sandy Springs Circle
> Atlanta, Georgia 30328
> (404) 255-6677 (telephone).
> jay@lawyersatlanta.com
> rich@lawyersatlanta.com
> *Attorneys for Mr. Montgomery*

STATE COURT OF
DEKALB COUNTY, GA.
11/21/2022 10:33 AM
E-FILED
BY: Monica Gay

**State Farm Fire and Casualty Company**
*11350 Johns Creek Parkway*
*Duluth, GA 30098-0001*

H-27- 1226-FB7D   H  W   F

003577  0001
WAYTON,  JOSEPH D JR
218 NEELY RD
FAYETTEVILLE GA  30214-3812



ST-
0204-0000

Location:   Same as Mailing Address

SFPP No: 1354658027

**Loss Settlement Provisions (See Policy)**
A1  Replacement Cost - Similar Construction
B1  Limited Replacement Cost - Coverage B

**Forms, Options, and Endorsements**

| | |
|---|---|
| Homeowners Policy | FP-7955 |
| Increase Dwlg up to $39,100 | OPT  ID |
| Ordinance/Law  10%/ $19,550 | OPT  OL |
| Jewelry and Furs $1,500/$2,500 | OPT  JF |
| Fungus (Including Mold) Excl | FE-5440 |
| Fungus (Incl Mold) Liability | FE-5412 |
| Fungus (Incl Mold) Limited Cov | FE-5443 |
| Homeowners Policy Endorsement | FE-3443 |
| Amendatory Endorsement | FE-2365 |
| Diminution in Value Loss Restr | FE-5621 |

Fungus (including Mold) Limited Coverage    $10,000

Please help us update the data used to determine your premium. Contact your agent with the year each of
your home's utilities (heating/cooling, plumbing, or electrical) and roof were last updated.

138-3076 f.8  10-11-2010 (012089c)

**RENEWAL CERTIFICATE**

| POLICY NUMBER | 11-LC-7105-8 |
|---|---|

Homeowners Policy
OCT 30 2017  to  OCT 30 2018

BILLED THROUGH SFPP

**Coverages and Limits**
**Section I**

| | | | |
|---|---|---|---|
| A | Dwelling | | $195,500 |
| | Dwelling Extension | Up To | 19,550 |
| B | Personal Property | | 146,625 |
| C | Loss of Use | | Actual Loss Sustained |

**Deductibles - Section I**

| | | |
|---|---|---|
| All Losses  1/2%   (MIN) | | 1,000 |

**Section II**

| | | |
|---|---|---|
| L | Personal Liability | $300,000 |
| | Damage to Property of Others | 500 |
| M | Medical Payments to Others (Each Person) | 1,000 |

**Annual Premium**                              $888.00

**Premium Reductions**

| | |
|---|---|
| Home/Auto Discount | 425.00 |
| Claim Record Discount | 301.00 |

Inflation Coverage Index:   234.6

---

EXHIBIT

A

*Thanks for letting us serve you.  We appreciate our long term customers.*

13225      4011   I
DR,NP,6T,H1,R7

**Agent** WILLIAM H GARRARD
**Telephone** (770) 461-3544

N
014

*Moving? See your State Farm agent.*
*See reverse for important information.*
**Prepared** SEP 06 2017

REP

# JOHN FOY & ASSOCIATES

### A PROFESSIONAL CORPORATION
### ATTORNEYS & COUNSELORS AT LAW
### 3343 PEACHTREE ROAD, N.E.
### SUITE 350
### ATLANTA, GEORGIA 30326

---

**TELEPHONE (404) 400-4000     TOLL FREE (877) 873-4488**
**FACSIMILE (404) 873-4490**
**WWW.JOHNFOY.COM**

September 20, 2019

**VIA CERTIFIED US MAIL**
Lisa  Hantman
State Farm Insurance Company
P.O Box 106169
Atlanta, GA  30348

| | | | |
|---|---|---|---|
| RE: | Our Client: | Joshua Montgomery | |
| | Your Insured: | Joseph D. Wayton | |
| | Date of Loss: | 9/12/2018 | |
| | Claim No.: | 11-8883-N35 | |

<div style="border:1px solid black">

**EXHIBIT**

**B**

</div>

## PRE-SUIT SETTLEMENT DEMAND PURSUANT TO O.C.G.A.§ 9-11-67.1

Dear Ms. Hantman:

The following material, including medical reports, bills, receipts, analysis, evaluations, and other documents, has been compiled to evaluate the liability of your insured, the nature of our client's injuries, and the extent of damages sustained by our client as a result of the dangerous condition of your insured's property.

This material is being submitted to you for purposes of negotiation only.  Your review of this information is under the condition that nothing contained herein shall constitute an admission by our client and that nothing contained herein shall be admissible against our client at any hearing or trial.

## LIABILITY

On September 12, 2018, Joshua Montgomery was seriously injured when he fell from the second-floor deck of your insured's property located at 218 Neely Road in Fayetteville, Georgia. Your insured is liable for damages sustained in this incident as a result of his failure to maintain the deck in a safe condition or adequately warn our client of its dilapidated condition.

Your insured, Joseph Wayton, since deceased, was our client's uncle.  Mr. Montgomery had not been on the deck in question since 2017. At that time, the deck in question had railings.

In early September 2018, Mr. Montgomery went to the property to retrieve tools and other belongings that he had stored at the property. While Mr. Montgomery was at the property on September 7, 2018, he received a phone call from Mr. Wayton advising he had been in a serious car accident. A driver reversed into Mr. Wayton, causing severe injuries that resulted in Mr. Wayton being hospitalized. Mr. Montgomery visited his uncle at the hospital on September 11. Mr. Wayton's daughter, who resides in Florida, had come up to Georgia due to the accident and after discussion Mr. Wayton and his family requested that Mr. Montgomery stay at and tend to his uncle's property while he remained in the hospital. None of the other family members stayed at the house.

Mr. Montgomery gladly agreed to do this and went to the property that evening. Mr. Montgomery played a few games on his smartphone to unwind from the day's stressful events and he eventually went to sleep in the back bedroom.

The bedroom in question has a raised deck attached to it outside that is accessed through a bedroom door. Mr. Montgomery had not been on or seen the deck in quite sometime. When Mr. Montgomery last saw the deck it had railings attached to it. Unbeknownst to our client, Mr. Wayton had since had work done on the deck. Specifically, someone had removed the railings and placed a sheet of plywood on top of the deck. The last time Mr. Montgomery saw the deck he believed it to be in safe condition. Later it would become apparent that Mr. Wayton had started to repair the deck but had not finished, leaving it in a hazardous condition.

At approximately 1:00 am, Mr. Montgomery woke up and stepped outside to get some fresh air. In the dark, Mr. Montgomery could not see that the deck no longer had railings. Our client stepped onto the deck and over the piece of plywood that covered the middle of the deck. When Mr. Montgomery stepped off of the plywood and onto the deck he felt a piece of wood beneath his feet give way (see enclosed photo). When Mr. Montgomery's foot went through the deck he lost his balance and reached out to brace himself on the railing. It was only at this precise moment that Mr. Montgomery realized there was in fact no longer a railing on the deck.

Mr. Montgomery fell off the side of the deck and landed on the ground below. Mr. Montgomery landed on his right side and was instantly knocked unconscious by the impact. Our client awoke some hours later and immediately realized he was severely injured. Mr. Montgomery attempted to sit up but was unable to do so due to the excruciating pain he felt throughout his body. By sheer luck Mr. Montgomery's phone had fallen nearby and he was able to crawl to it on his shoulders. Our client dialed 911 and awaited emergency services who would come and transport him to a nearby hospital.

Under Georgia law, an owner or occupier of land is liable for damages to an invitee "for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe" O.C.G.A. §51-3-1. Mr. Wayton was under a statutory duty to keep areas open to visitors in a safe condition. Mr. Wayton invited Mr. Montgomery to stay at his property but failed to warn him of the dangerous condition of the deck. Mr. Montgomery was aware that Mr. Wayton had been doing work on the property with the hopes of improving its value but our client was completely unaware of the specific changes that had occurred since he last spent time at the property.

It is a matter of fact that Mr. Wayton was aware of the deck's condition because he had personally directed the initial modifications including removal of the railings. The home was built in 1970 and many areas, such as the deck, are constructed of old, worn, and, in places, decrepit wood. As can be seen in the enclosed photos, the deck was dilapidated with wooden beams that were completely rotted through and a patch of plywood that covered the surface without providing structural support. The removal of railings should have immediately led to the deck being closed off.

Despite the deck's dangerous condition, no warnings were posted and the deck was easily accessible from the bedroom. When Mr. Montgomery stepped onto the deck he had no reason to suspect it was unsafe. Had Mr. Wayton warned our client or closed-off the deck he could have easily prevented this incident. Instead, our client suffered grievous injuries as a result of your insured's failure to keep the property in a safe condition. Liability is clear.

Mr. Wayton was made aware of our client's fall after it occurred. However, Mr. Wayton had been seriously injured in the auto accident and several weeks later died from his injuries. Before passing away, Mr. Wayton told Mr. Montgomery that he had homeowner's insurance policy with State Farm Insurance Company that would cover his medical bills. Since Mr. Wayton and his family were understandably preoccupied with his own tragic accident, Mr. Montgomery initially did not feel comfortable pursuing the claim Mr. Wayton had advised he was entitled to. Several months later, after receiving massive medical bills that he could not possibly repay, Mr. Montgomery finally decided to investigate making a claim.

## INJURIES AND TREATMENT

Fayette County EMS arrived at approximately 3:30 am and rushed Mr. Montgomery to Wellstar Atlanta Medical Center. Upon arrival, it was apparent Mr. Montgomery had a badly broken right arm in addition to severe neck pain and numerous other traumatic injuries. Our client was administered Fentanyl for pain and a battery of imaging studies were performed. Mr. Montgomery was ultimately diagnosed with:

| | |
|---|---|
| **S02.113** | **Occipital condyle fracture, closed** |
| **S42.351** | **Displaced comminuted fracture of shaft of humerus, right arm, closed** |
| **S12.101** | **Nondisplaced fracture of second cervical vertebra, closed** |
| **S12.201** | **Nondisplaced fracture of third cervical vertebra, closed** |
| **D62** | **Acute post-hemorrhagic anemia** |
| **G44.209** | **Tension-type headache** |

Mr. Montgomery's condition stabilized over the following days as he remained an in-patient at the hospital. On September 18, Mr. Montgomery underwent ORIF surgery to repair his broken arm. The treating physicians decided against surgical intervention for Mr. Montgomery's other fractures and instead ordered intensive physical therapy. Our client worked hard at therapy and was released from the hospital on September 20.

Mr. Montgomery was referred for extensive physical therapy services but our client, like many Americans, lacks health insurance and was unable to afford therapy. Our client's mother is a physical therapist and she helped him develop a home therapy regimen in place of proper physical therapy. Mr. Montgomery went to one follow up appointment with his surgeon, Dr. Thomas Ross, at Resurgens Orthopaedics. Dr. Ross believed our client's arm was healing well and again

recommended physical therapy.  Since that appointment on November 1, 2018, Mr. Montgomery has been unable to pursue therapy or additional follow up treatment.  While our client's arm and other injuries have continued to heal he has not received proper follow up medical care and continues to deal with pain and limited functionality in his arm and neck.   Our client self-treats with OTC pain medication and home therapy.

## PAIN & SUFFERING

It is hard to overstate the devastating impact this accident has had on Mr. Montgomery's life.  Out client sustained massive and debilitating injuries when he fell that night.  These injuries were excruciatingly painful and may never fully heal.  Our client has permanent scarring on his arm that is a daily reminder of this accident and which will require surgical revision.    Although our client is grateful to be alive, he has been unable to afford proper rehabilitation or medical care.

Mr. Montgomery previously worked as a mechanic and general laborer.  Our client is now unable to perform these jobs and has been forced to find work in a different field.  Mr. Montgomery would easily qualify for disability benefits but does not want to give up on working.  With crushing medical debt and limited employment prospects, our client was forced to move back to Alabama where he is currently staying with a family friend.  In the past six months, Mr. Montgomery has tried his hand as a local delivery driver, a short order cook, and an online reseller for Amazon. Mr. Montgomery has had no other choice than to fight through his chronic pain to find suitable employment.

All of this has taken a tremendous toll on our client's mental well-being.  Mr. Montgomery barely had time to process his Uncle's own tragic accident when he suffered this traumatic fall. Our client faces daily anxiety and depression as he navigates life after this accident all while suffering from chronic pain and limited mobility.   Activities that our client used to enjoy such as playing basketball and fishing are now difficult or impossible.  Even the basic activities of daily living can be painful and challenging.

Georgia law presumes that other forms of pain and suffering accompany a physical injury. White v. Hammond, 129 Ga. App. 408 (1973); See also Cochran v. Lynch, 126 Ga. App. 866 (1972).  Pain and suffering includes mental suffering, anxiety, shock, and worry as examples of what might be included under mental pain and suffering. Williams v. Vinson, 106 Ga .App. 886, 893 (1961). By any measure, our client has suffered immense pain and suffering as a result of this accident and the mental, emotional, and physical toll it has taken on his life. Mr. Montgomery's mental pain and suffering has not ceased and will undoubtedly continue in the future.

Georgia law is also very clear that in weighing the future damages, which a Plaintiff has sustained as a result of the injuries, the trier of fact is not limited to the consideration of future earning capacity or future physical pain and suffering.  Impaired capacity "to pursue ordinary applications of life" or "to perform normal physical function" is compensated as part of pain and suffering, irrespective of whether there is evidence of a loss of diminishment of future earning capacity. Jones v. Hutchins, 101 Ga. App. 141 (1960). Mr. Montgomery is entitled to compensation for his future pain and suffering pursuant to Georgia law.

## DAMAGES

Joshua Montgomery has incurred damages to date as follows:

| Medical Provider | | Amount Charged |
|---|---|---|
| Fayette County EMS | $ | 998.73 |
| Wellstar Atlanta Medical Center | $ | 167,707.42 |
| Diagnostic Imaging Specialists | $ | 1,958.00 |
| Resurgens Orthopedics | $ | 4,598.63 |
| **TOTAL SPECIAL DAMAGES** | $ | **175,262.78** |

## SETTLEMENT PROPOSAL

In light of the pain and suffering which our client, Joshua Montgomery, was forced to endure, due to the negligence of your insured, as well as the financial strain on his life, we are willing to settle this claim for the amount of THREE HUNDRED THOUSAND DOLLARS ($300,000.00). We are willing to recommend this figure to our client as a fair and reasonable resolution to this matter.

We would appreciate your response to this letter within thirty (30) days. We look forward to hearing from you in the near future so that we can discuss the resolution of this matter.

Very truly yours,

FOY & ASSOCIATES, P.C.

Allison E. Horne
Attorney at Law

AEH:TS
Enclosures:



State Farm General Insurance Company

October 25, 2019

JOHN FOY & ASSOCIATES
ATTN:  ALLISON HORNE
3343 PEACHTREE ROAD, N.E.
SUITE 350
ATLANTA, GA  30326

**SENT VIA FAX 404-873-4490 AND USPS**

RE:   Claim Number:      11-8883-N35
      Insured:           Joseph D. Wayton
      Date of Loss:      September 12, 2018
      Policy Number:     11-LC-7105-9
      Insured Property:  218 Neely Road/Fayetteville, GA  30214
      Type of Policy     Homeowners
      Claimant:          Joshua Montgomery

Dear Ms. Horne:

I've had an opportunity to review your demand dated September 20, 2019.

Based on our investigation and the review of the demand supports, it appears Mr. Montgomery had been residing with his uncle, Joseph Wayton, at 218 Neely Road, Fayetteville, GA  30214 for a number of years prior to September 12, 2018.

Under Mr. Wayton's Homeowners Policy FP-7955, there is an exclusion for bodily injury to an insured.  As a resident of Mr. Wayton's household, Mr. Montgomery meets the policy definition of insured.  State Farm, therefore, must reject your demand.

If you have any additional information you would like State Farm to review regarding residency please forward it to my attention.

Sincerely,

EXHIBIT
C

Lisa G. Hantman
Claim Specialist
6103587219
E-mail statefarmfireclaims@statefarm.com
State Farm Fire and Casualty Company

⚖ EFILED IN OFFICE
CLERK OF STATE COURT
FAYETTE COUNTY, GEORGIA

**2020SV-0269**
**JASON B THOMPSON**
**MAY 22, 2020 12:03 PM**

Sheila Studdard, Clerk
Fayette County, Georgia

IN THE STATE COURT OF FAYETTE COUNTY
STATE OF GEORGIA

JOSHUA MONTGOMERY,

      PLAINTIFF,

v.

DIANA L. TARDIF AS EXECUTOR OF
THE ESTATE OF JOSEPH DANIEL
WAYTON, JR.,

      DEFENDANT.

Civil Action File

No. _____

JURY TRIAL DEMANDED

---

COMPLAINT IN CIVIL ACTION

Plaintiff JOSHUA MONTGOMERY [*hereinafter* "Plaintiff"] brings this Complaint against the above-named Defendant, DIANA L. TARDIF AS EXECUTOR OF THE ESTATE OF JOSEPH DANIEL WAYTON, JR., and represents to the Court as follows:

I. PARTIES AND JURISDICTION

1.

Plaintiff is a resident of the State of Georgia.

2.

On March 29, 2019, Diana L. Tardif was appointed as Executor of the Estate of Joseph Daniel Wayton, Jr, in the Probate Court of Fayette County, State of Georgia, Estate No. 19-14824.

3.

Diana L. Tardif, as executor of estate of Joseph Wayton, Jr., may be served with process at her last known address of 6340 2nd Palm Point Street, Pete Beach, Pinellas, Florida 33706.

4.

Venue and jurisdiction are proper in this Court.

EXHIBIT

D

III. NEGLIGENCE

5.

Plaintiff incorporates by reference paragraphs 1 through 4 above as if they were restated herein verbatim.

6.

On September 12, 2018, Plaintiff was an invitee at the home of Joseph Daniel Wayton, Jr., located at 218 Neely Road, Fayetteville, GA (*hereinafter* "Premises or Property").

7.

On or about September 12, 2018, Plaintiff was in one of the bedrooms of the home, which had an attached deck.  When Plaintiff stepped outside onto the attached deck, a piece of wood beneath his feet gave way.  The deck had no hand railings.  Plaintiff's foot went through the deck causing Plaintiff to fall off the side of the deck and sustain injuries.

8.

At all relevant times, Joseph Daniel Wayton, Jr. owned Premises and owed a duty of ordinary care to keep the Premises in a safe condition.

9.

At all relevant times, Joseph Daniel Wayton, Jr. breached his duty of ordinary care by failing to reasonably inspect the area where the incident occurred and keep the Premises in a safe condition and by failing to have appropriate hand railing in place.

10.

Under the substantive law of Georgia, "[w]here an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose,

he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe." O.C.G.A. § 51-3-1.

11.

At all relevant times, Joseph Daniel Wayton, Jr. breached his duty of care under O.C.G.A. § 51-3-1, by failing to inspect and take safety measures to ensure the Premises was in a safe condition.

12.

At all relevant times, Plaintiff lacked knowledge of the hazard despite his exercise of ordinary care.

13.

At all relevant times, Joseph Daniel Wayton, Jr. had actual and/or constructive knowledge of the hazard posed by the bedroom deck on the Premises.

14.

At all relevant times, Joseph Daniel Wayton, Jr. knew or should have known, prior to the subject incident, of the existence of the hazard posed by the bedroom deck.

15.

At all relevant times, Joseph Daniel Wayton, Jr. knew or should have known that the deck presented a hazard.

16.

At all relevant times, Joseph Daniel Wayton, Jr. was negligent in failing to take adequate measures to warn or protect invitees and guests from the unforeseen hazard presented by bedroom deck.

17.

As a result of Joseph Daniel Wayton, Jr.'s negligence, Plaintiff suffered serious physical injury.

18.

Joseph Daniel Wayton, Jr.,'s negligence was the proximate cause of Plaintiff's injuries.

DAMAGES

19.

Plaintiff incorporates by reference thereto each and every preceding paragraph of the within Complaint and re-alleges those averments herein as if the same were more fully set forth verbatim.

20.

As a direct and proximate result of the negligent acts and omissions by Joseph Daniel Wayton, Jr., Plaintiff suffered substantial injuries and damages, including past and future medical expenses, past and future mental and physical pain and suffering.

21.

As a direct and proximate result of Joseph Daniel Wayton, Jr.'s negligent acts and omissions, Plaintiff incurred in excess of $168,706.15, in past medical expenses.

22.

The Estate of Joseph Daniel Wayton, Jr. is indebted to Plaintiff for compensatory damages, past, present and future treatment expenses; past, present and future pain and suffering; past, present and future loss of ability to enjoy life; lost wages and loss of earning capacity; attorney's fees; expenses of litigation; and all other damages allowed by Georgia law.

WHEREFORE, Plaintiff prays:

a.      That process issue according to law;

b.      That Defendants be served with a copy of Plaintiff's Complaint for Damages and

Demand for Trial by Jury and show cause why the prayers for relief requested by

Plaintiff herein should not be granted;

c.      That Plaintiff be granted a trial by jury in this matter;

d.      That judgment be entered in favor of Plaintiff against the Estate of Joseph Daniel

Wayton, Jr., for personal injuries sustained and for physical, mental pain and

suffering, past, present and future, in an amount to be determined by the enlightened

conscience of an impartial jury;

e.      That judgment be entered in favor of Plaintiff against the Estate of Joseph Daniel

Wayton, Jr., for medical expenses and lost wages with the exact amount of damages

to be proven at trial;

f.      That Plaintiff have such further relief as the Court may deem just and proper.


This 22nd day of May, 2020.

                                        _/s/ Daphne Duplessis Saddler_
                                        Daphne Duplessis Saddler
                                        Georgia Bar No. 575602
                                        Attorney for Plaintiff

John Foy & Associates, P.C.
3343 Peachtree Road, NE
Suite 350
Atlanta, GA 30326
Tel: (404) 400-4000
Fax: (404) 445-3146



June 12, 2020

**State Farm Fire and Casualty**
PO Box 106169
Atlanta GA 30348-6169

Diana L. Tardif as Executor of the Estate of
Joseph Daniel Wayton, JR
6340 2nd Palm Point
St Pete Beach, FL  33706

**CERTIFIED MAIL RETURN RECEIPT REQUESTED AND REGULAR MAIL**

RE:   Claim Number:       11-8883-N35
       Policy number:      11-LC-7105-9
       Insured:            Joseph D Wayton
       Date of Loss:       September 12, 2018
       Action:             *Joshua Montgomery vs Diana Tardif*, CA No. 2020SV-0269,
                           State Court Fayette County

Dear Ms. Tardif:

We have completed our coverage review of the suit captioned *Joshua Montgomery vs Diana Tardif*, CA No. 2020SV-0269, State Court Fayette County.  We reviewed the Complaint together with Homeowner's Policy Form FP-7955, policy number 11-LC-7105-9.  This letter explains the position of State Farm Fire and Casualty Company regarding this suit.

Suit was filed by Joshua Montgomery for bodily injury incurred at the residence premises of Joseph D. Wayton located at 218 Neely Rd, Fayetteville, GA.  The Complaint alleges that Joshua Montgomery was an invitee at the residence when he stepped onto an attached deck that gave way.  The Complaint alleges further that Mr. Wayton had actual or constructive knowledge of the hazard while Joshua Montgomery had no knowledge of the hazard. The relief requested by Mr. Montgomery includes compensatory damages for his pain and suffering, medical expenses, lost wages and attorney fees.

Our investigation shows that Joshua Montgomery is the nephew of our Named Insured Joseph D. Wayton, and he resided with Mr. Wayton at the residence premises for several years prior to and including the date of his injury.  As such, Mr. Montgomery was a resident relative at the time of his injury and therefore an Insured by definition. Because he meets the definition of an insured, coverage for his bodily injury claim is excluded by the policy.

**EXHIBIT
E**

We regret to inform you there is no coverage available under the Homeowner's Policy for this suit. Specifically, coverage is excluded by the following:

Exclusion 1.h. **bodily injury** to you or any **insured** within the meaning of part a. or b. of the definition of **insured**.

Please see page 15 of the Homeowner's policy for the following:

## SECTION II - LIABILITY COVERAGES

### COVERAGE L - PERSONAL LIABILITY

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**, we will:

1. pay up to our limit of liability for the damages for which the **insured** is legally liable; and

2. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the **occurrence**, equals our limit of liability.

Please page 16 of the policy for the following exclusions:

## SECTION II - EXCLUSIONS

1. Coverage L and Coverage M do not apply to:

   h. **bodily injury** to you or any **insured** within the meaning of part a. or b. of the definition of **insured**.

   This exclusion also applies to any claim made or suit brought against you or any **insured** to share damages with or repay someone else who may be obligated to pay damages because of the **bodily injury** sustained by you or any **insured** within the meaning of part a. or b. of the definition of **insured**.

Please see page 1 of the policy for the following additional definitions:

## DEFINITIONS

"You" and "your" mean the "named insured" shown in the **Declarations**. Your spouse is included if a resident of your household. "We", "us" and "our" mean the Company shown in the **Declarations**.
Certain words and phrases are defined as follows:

1. "**bodily injury**" means physical injury, sickness, or disease to a person. This includes required care, loss of services and death resulting therefrom.

   **Bodily injury** does not include:
   a. any of the following which are communicable: disease, bacteria, parasite, virus, or other organism, any of which are transmitted by any **insured** to any other person;

   b. the exposure to any such disease, bacteria, parasite, virus, or other organism by any **insured** to any other person; or

   c. emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person.

4. "**insured**" means you and, if residents of your household:

   a. your relatives; and

   b. any other person under the age of 21 who is in the care of a person described above.

The specific reason for denial given above is not intended to waive or alter any of the terms, conditions, exclusions or provisions of the policy of insurance or any defense this company may have.   We reserve the right to rely on any other applicable terms, conditions, and exclusions in the policy.

Since coverage is specifically excluded by the Homeowner's Policy, we are unable to provide defense for the Complaint filed by Joshua Montgomery against you as Executor of the Estate of Joseph Daniel Wayton.   We regret that we are unable to be of service to you in this matter.

If an amended complaint or supplemental pleading is filed in this matter or if you have any additional information you would like us to consider, please forward it immediately to our office for an additional coverage review.

Sincerely,


Maude Niedzielski
Claim Specialist
State Farm Fire and Casualty Company
855-856-3381 Ext 6103587338

EFILED IN OFFICE
CLERK OF STATE COURT
FAYETTE COUNTY, GEORGIA
**2020SV-0269**
**JASON B THOMPSON**
**JUL 13, 2021 10:46 AM**

Sheila Studdard, Clerk
Fayette County, Georgia

IN THE STATE COURT OF FAYETTE COUNTY
STATE OF GEORGIA

JOSHUA MONTGOMERY,

     PLAINTIFF,

v.

DIANA L. TARDIF AS EXECUTOR OF
THE ESTATE OF JOSEPH DANIEL
WAYTON, JR.,

     DEFENDANT.

Civil Action File

No. 2020SV-0269

### FINAL JUDGMENT ORDER

The above styled matter comes before the Court on Plaintiff's Motion for Default Judgment. Having considered the entire case file, having entered default judgment as to liability against Defendant on September 29, 2020, having conducted a proof hearing as to damages on June 23, 2021, Defendant having been noticed of said proof hearing, Plaintiff having established damages, and for good cause shown:

IT IS ORDERED AND FINAL JUDGMENT is hereby entered in favor of Plaintiff and against Defendant for the following amount:

Past Medical Expenses: $175,262.78,

Past Pain and Suffering: $192,000.00, and

Future Pain and Suffering: $701, 051.12,

for a total award of $1,068,313.90. A writ of *fieri facias* shall issue.

SO ORDERED.

This 13th day of July, 2021.

By his signature on this Order,
the Judge certifies that a copy was
served upon counsel via
PeachCourt email generated upon
efiling of same and staff has
served unrepresented litigants
via USPS at address on file
with Clerk of Court.
3056SCS

Honorable Jason B. Thompson
Judge, State Court of Fayette County

**EXHIBIT
F**

## ASSIGNMENT, RELEASE AND INDEMNITY AGREEMENT

This Assignment and Indemnity Agreement (the "Agreement") entered into this 28 day of July , 2020, by and between Joshua Montgomery ("Montgomery"), individually, Diana Lynne Tardif, individually and as Executrix of the Last Will and Testament of Joseph Daniel Wayton, Jr. ("Tardif") and Honey Wayton, individually ("Wayton, and together with Tardif, the "Wayton Parties");

WHEREAS, Tardif, in her capacity as Executrix of the Last Will and Testament of Joseph Daniel Wayton, Jr., is the owner of, and an insured under, a certain homeowners insurance policy issued by State Farm Fire & Casualty Company ("State Farm"), Homeowners Policy Form FP-7955, Policy Number 11-LC-7105-9 (the "Policy"); and,

WHEREAS, the Policy provided liability insurance protection in favor of Joseph Daniel Wayton, Jr., deceased (the "Deceased"), during his lifetime, and, after her appointment, to Tardif in her capacity as the Executrix of the Last Will and Testament of Joseph Daniel Wayton, Jr., in regards to claims of personal injury and/or property damage occurring during the policy period (the "Policy Period") at the then residence of the Deceased, to wit: 218 Neely Road, Fayetteville, Georgia 30214-3812 (the "Premises"); and,

WHEREAS, Montgomery asserts that during the Policy Period, on or about September 12, 2018 (the "Date of Loss"), he was an invitee at the Premises and that while at the Premises he was injured due to the existence of certain latent defects at the Premises which were allegedly known to, or should have been known to, the Deceased and unknown to Montgomery. Montgomery further asserts that the injuries he incurred at the Premises on the Date of Loss were the proximate result of the negligence of the Deceased; and,

WHEREAS, on or about May 20, 2019 and again on September 20, 2019, Montgomery made a demand upon State Farm to settle all of his claims against the Deceased and Tardif for injuries he suffered at the Premises on the Date of Loss for an amount within the limits of liability of the Policy, which demand State Farm rejected without a counter offer; and,

WHEREAS, subsequently, on May 22, 2020, Montgomery filed a lawsuit against Tardif in her capacity as Executor, in the State Court of Fayette County, Georgia, styled as Joshua Montgomery v. Diana L. Tardif as Executor of the Estate of Joseph Daniel Wayton, Jr., Civil Action File No. 2020SV-0269 (the "Lawsuit") in which he alleges, inter alia, that the negligence of the Deceased as described above was the proximate cause of certain injuries he incurred at the Premises on September 12, 2018; and,

WHEREAS, the Lawsuit was properly served on Tardif on June 2, 2020; and,

WHEREAS, upon being served with the Lawsuit, Tardif promptly put State Farm on notice of the Lawsuit, provided State Farm a copy of the Lawsuit and demanded State Farm provide a defense against the claims asserted in the Lawsuit and indemnification against any damages sought against her up to the limits of coverage as provided in the Policy; and,

-1-

EXHIBIT
G

WHEREAS, on June 12, 2020, State Farm sent Tardif a letter (the "Denial Letter") in which State Farm informed Tardif that it would not be providing a defense or coverage for any of the claims asserted by Montgomery in the Lawsuit. A true and correct copy of the Denial Letter is attached hereto and made a part hereof as Exhibit "A"; and,

WHEREAS, in the Denial Letter, State Farm justified its refusal to provide coverage or any defense to the claims asserted in the Lawsuit on the basis of its investigation which it asserted established Montgomery was a relative of the Deceased who on the Date of Loss was residing at the Premises, and therefore, State Farm contended, all claims by Montgomery as asserted in the Lawsuit are subject to an express exclusion from coverage under the Policy; and,

WHEREAS, Montgomery denies he was a resident of the Premises on the Date of Loss; and,

WHEREAS, State Farm's refusal to provide any defense or insurance coverage on behalf of Tardif to the claims asserted by Montgomery in the Lawsuit has exposed the Wayton Parties to significant financial liability and mental suffering and distress; and,

WHEREAS, in order to protect the Wayton Parties from further financial liability and exposure arising out of State Farm's refusal to provide Tardif any defense to or insurance coverage for the claims asserted in the Lawsuit an in consideration of the parties' covenants as contained herein, the parties have agreed to enter this Agreement;

NOW THEREFORE, in consideration of the mutual covenants of the parties as contained herein, the parties agree as follows:

1.      The parties agree that all statements contained in the preamble set forth above are true and correct.

2.      Tardif hereby assigns to Montgomery all rights Tardif has as an insured under the Policy in regard to any of the (i) claims asserted by Montgomery, or which could have been asserted by Montgomery, in the Lawsuit,  (ii) any other claims which could be asserted by Montgomery for any personal injuries or damages to property occurring at the Premises on the Date of Loss or (iii) any breach of contract claims, bad faith claims, and claims for attorney's fees and costs which could be asserted by Tardif against State Farm arising under the Policy due to claims asserted by Montgomery against Tardif for any personal injuries or damages to property occurring at the Premises on the Date of Loss (jointly the "Claims" and each a "Claim").

3.      In material consideration of the covenants of Tardif as set forth herein, Montgomery, his  representatives, attorneys, executors, administrators, successors, and assigns (the "Releasing Parties"), release, acquit, and forever discharge Tardif, solely in her individual capacity and not in her capacity as the Executor of the Last Will and Testament of Joseph Daniel Wayton, Jr., Wayton and all of their representatives, attorneys, executors, administrators, successors and assigns (the "Fully Released Parties") from any and all actions, causes of action, obligations, costs, expenses, damages, losses, claims, liabilities, suits, debts, demands, and benefits (including attorneys' fees and costs), of whatever character, in law or in equity, known or unknown, suspected or unsuspected, matured or unmatured, of any kind or nature whatsoever,

-2-

which arose at any time from the creation of the world through the date of this Agreement, including, without limitation, the Claims and all claims arising from any distributions made to them as devisees of the Last Will and Testament of Joseph Daniel Wayton, Jr.

4.    In material consideration of the covenants of Tardif as set forth herein, the Releasing Parties release, acquit, and forever discharge Tardif, in her capacity as the Executor of the Last Will and Testament of Joseph Daniel Wayton, Jr., and all of her representatives, attorneys, executors, administrators, successors and assigns (collectively the "Partial Released Parties") from any and all actions, causes of action, obligations, costs, expenses, damages, losses, claims, liabilities, suits, debts, demands, and benefits (including attorneys' fees and costs), of whatever character, in law or in equity, known or unknown, suspected or unsuspected, matured or unmatured, of any kind or nature whatsoever, which arose at any time from the creation of the world thru the date of this Agreement, expressly excluding the Claims.

5.    In material consideration of the covenants of Tardif as set forth herein, Montgomery agrees to look solely to State Farm for collection of any judgment he may obtain in the Lawsuit or in any other litigation or arbitration based upon any of the Claims (each a "Judgment"), and expressly waives any right to collect, attempt to collect, enforce or attempt to enforce any Judgment against any of the Wayton Parties, their heirs, successors or assign (the "Indemnified Parties" and each an "Indemnified Party").  Without limiting the covenants of Montgomery as set forth in this paragraph in any fashion, Montgomery, specifically agrees that Montgomery will not attempt to subpoena or otherwise obtain any post-judgment testimony from any of the Indemnified Parties; issue post-judgment subpoenas or otherwise attempt to obtain from the Indemnified Parties or any third party, as part of any post judgment discovery, any records of any of the Indemnified Parties; record any Writ of Fieri Facias or any other evidence of any Judgment in any public records of any State located within the United States of America or attempt to domesticate any Judgment in any State located in the United States of America or in any foreign country.

6.    In material consideration of the covenants of Tardif as set forth herein, Montgomery hereby agrees to indemnify and hold each of the Indemnified Parties harmless from and against any and all damages or costs, including reasonable attorneys' fees incurred in defending against same or in enforcing the provisions of this paragraph, arising out of (i) any effort by Montgomery, his successor or assigns, to collect, attempt to collect, enforce or attempt to enforce, any Judgment against any of the Indemnified Parties, including, without limitation, the subpoenaing or otherwise obtaining or attempting to obtain any post-judgment testimony from any of the Indemnified Parties; issuance of post-judgment subpoenas or otherwise attempting to obtain from the Indemnified Parties or any third party, as part of any post judgment discovery, any records of any of the Indemnified Parties; the filing of any Writ of Fieri Facias or any other evidence of a Judgment in the public records of any State located within the United States of America or attempting to domesticate a Judgement in any State located in the United States of America or in any foreign country or (ii) any falsity of any warranty or representation made by Montgomery in this Agreement.

7.    Montgomery hereby represents and warrants to the Wayton Parties that he is the sole holder of all of the Claims, that he has not transferred or assigned any interest in any of the

Claims to any third party and that no third party has any right to recover any damages (including, without limitation, damages for loss of consortium), against any of the Indemnified Parties arising from any injuries suffered by Montgomery at the Premises on the Date of Loss.

8.     Tardif hereby represents and warrants to Montgomery that on or about June 2, 2020, she provided State Farm with notice of the Lawsuit and a copy thereof. Tardif further represents and warrants to Montgomery that she received the Denial Letter from State Farm on or about June 12, 2020.

9.     The parties hereby warrant and represent to one another that:

    a.     they are competent, as a matter of law, to enter into this Agreement;

    b.     they have by this Agreement been advised and encouraged in writing to consult with their attorneys before signing this Agreement;

    c.     they have relied on their own judgment and that of their counsel regarding the consideration for and language of this Agreement;

    d.     they understand this document and have obtained answers to questions which they have raised about the document; and

    e.     no statements made by either party or any other individual or entity have in any way coerced or unduly influenced their decision to execute this Agreement.

10.     A "covenant not to sue" is a legal term which means a person promises not to file a lawsuit in court.  It is different from the release provisions contained in Paragraphs 3 and 4 above.  In addition to waiving and releasing the claims covered by Paragraphs 3 and 4 above, the Releasing Parties agree never to sue the Fully Released Parties in any forum for any claims, violation of law, or legal theories covered by the release language in Paragraph 3 above or the Partial Released Parties in any forum for any claims, violation of law, or legal theories covered by the release language in Paragraph 4 which arose prior to the date the Effective Date of this Agreement.  Each of the Releasing Parties further agrees never to sue in his or its individual capacity, or in a representative capacity on behalf of others similarly situated or purported to be members of a class or collective action, or as a purported member of a class or collective action, for any claims, violation of law, or theories covered by the release language in Paragraphs 3 or 4 above, which arose prior to the date this Agreement is executed.

11.     This Agreement is entered into in compromise of disputed claims.  All parties acknowledge that none of the parties admits that they have done anything wrong, and that each party specifically states that it has not violated or abridged any federal, state, or local law or ordinance, or any right or obligation that it may owe or may have owed to the other.

12.     This Agreement sets forth the entire understanding and agreement of the parties and supersedes all prior oral or written agreements among the parties hereto relating to subject matter contained herein and merges all prior and contemporaneous discussions among them.  No

-4-

party hereto shall be bound by any definition, condition, representation, warranty, covenant or provision other than as expressly stated in this Agreement or as hereafter set forth in a writ that has been executed by such party or by a duly authorized representative of such party.

13.     In the event either party desires or is required to give notice to the other party in connection with this Agreement, the same shall be in writing and shall be deemed to have been given when delivered in person, by recognized overnight air courier service, by confirmed facsimile transaction, by electronic mail (otherwise known as "e-mail"), or deposited with the United States Postal Service, postage prepaid, or certified mail, return receipt requested, addressed to Montgomery, Tardif or Wayton at the appropriate address as set forth below:

A.     If to Montgomery:

Joshua Montgomery

_____

Email: _____

with copy to:

Foy & Associates, P.C.
3343 Peachtree Road NE
Suite 350
Atlanta, Georgia 30326
Attn: Daphne Saddler, Esq.
Email: dsaddler@johnfoy.com

B.     If to Tardif:

Diana Lynne Tardif
6340 2nd Palm Point
St. Pete Beach, Florida 33706
Email: amldiana@tampabay.rr.com

with copy to:

Richard J. Dreger, Attorney at Law, P.C.
2101 Macy Drive
Roswell, Georgia 30076
Attn: Richard J. Dreger, Esq.
Email: rick@rdregerlaw.com

-5-

C.      If to Wayton:

Honey Wayton
6216 N Church Avenue
Tampa, Florida 33614
Email: yswolf17@gmail.com

Any such notice shall be deemed to have been given on the date so delivered, if delivered personally or by overnight air courier service, or, if mailed, on the date shown on the return receipt as the date of delivery or the date on which the Post Office certified that it was unable to deliver, whichever is applicable. E-mail shall be deemed delivered on the date sent if sent during normal business hours of the recipient, and on the next business day if sent after normal business hours of the recipient. Either party may, by written notice to the other party, specify a different address to which notices shall be given, by sending notice thereof in the manner set forth above.

14.     The validity, instruction and enforceability of this Agreement shall be governed in all respects by the laws of the State of Georgia, without regard to its conflict of laws rule.

15.     No party may assign any of his/her obligations under the terms of this Agreement without the prior express written consent of the other.

16.     The parties hereto expressly agree that it is not the intention of the parties hereto to violate any public policy, statutory or common law rules, regulations, treaties or decisions of any government or agency thereof.   If any provision of this Agreement is judicially or administratively interpreted or construed as being in violation of any such provision, such articles, sections, sentences, words, clauses or combinations thereof shall be inoperative in such jurisdiction and the remainder of this agreement shall remain binding upon the parties hereto and in full force and effect.

17.     This Agreement shall be binding upon and shall enure to the benefit of the parties hereto and their respective heirs, executors, administrators, personal representatives, successors and assigns.

18.     Any and all actions or proceedings seeking to enforce any provision of, or based upon any right arising out of, this Agreement may only be brought against a party in the Superior Court of Fayette County, Georgia, and each of the parties consents to the exclusive jurisdiction of such court (and the appropriate appellate courts) in any such action or proceeding and waives any objection to personal jurisdiction or venue laid therein. Process in any action or proceeding referred to in the preceding sentence may be served on any party anywhere in the world in any manner authorized by law.  The parties agree that a final judgment in any such action or proceeding will be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

19.     This Agreement may be executed in two or more counterparts, each of which shall be deemed and original, but all of which shall constitute one and the same document.

THE PARTIES HERETO ACKNOWLEDGE THAT THEY HAVE READ THIS AGREEMENT AND UNDERSTAND ITS TERMS AND AGREE TO BE BOUND HEREBY.

(See following page for execution signatures)

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date set forth above.

Sworn to and subscribed before me this 16th day of July, 2020.

_____
Notary Public
My commission expires: 8|11|23

[SEAL]

AS TO MONTGOMERY:

_____
Joshua Montgomery, individually

Sworn to and subscribed before me this 28th day of July, 2020.

_____
Notary Public
My commission expires:

TANIQUA SMITH
MY COMMISSION # GG 226473
EXPIRES: September 2, 2023

AS TO TARDIF:

_____
Diana Lynne Tardif, individually and as Executrix of the Last Will and Testament of Joseph Daniel Wayne, Jr.

Sworn to and subscribed before me this 28th day of July, 2020.

_____
Notary Public
My commission expires:

[SEAL]

DANA RAYBURN
MY COMMISSION # GG 076776
EXPIRES: March 4, 2021
Bonded Thru Budget Notary Services

AS TO WAYTON:

_____
Honey Wayton, individually

-7-