# Exhibit A

 **SOCIAL SECURITY ADMINISTRATION**

Office of Hearings Operations
Suite 500, Marquis 1
245 Peachtree Ctr. Avenue
Atlanta, GA 30303-9913

Date: April 20, 2022

Carlette D. Robinson on behalf of

751 Pegg Road SW
Atlanta, GA 30315-6101

## Notice of Decision – Unfavorable

I carefully reviewed the facts of your case and made the enclosed decision. Please read this notice and my decision.

**If You Disagree With My Decision**

If you disagree with my decision, you may file an appeal with the Appeals Council.

**How To File An Appeal**

To file an appeal you or your representative must ask in writing that the Appeals Council review my decision. The preferred method for filing your appeal is by using our secure online process available at https://www.ssa.gov/benefits/disability/appeal.html.

You may also use our Request for Review form (HA-520) or write a letter. The form is available at https://www.ssa.gov/forms/ha-520.html. Please write the Social Security number associated with this case on any appeal you file. You may call (800) 772-1213 with questions.

Please send your request to:

**Appeals Council**
**5107 Leesburg Pike**
**Falls Church, VA 22041-3255**

**Time Limit To File An Appeal**

You must file your written appeal **within 60 days** of the date you get this notice. The Appeals Council assumes you got this notice 5 days after the date of the notice unless you show you did not get it within the 5-day period.

Form HA-L76-OP2 (03-2010)

**Suspect Social Security Fraud?**
**Please visit http://oig.ssa.gov/r or call the Inspector General's Fraud Hotline**
**at 1-800-269-0271 (TTY 1-866-501-2101).**

See Next Page

The Appeals Council will dismiss a late request unless you show you had a good reason for not filing it on time.

**What Else You May Send Us**

You or your representative may send us a written statement about your case.  You may also send us new evidence.  You should send your written statement and any new evidence **with your appeal**.  Sending your written statement and any new evidence with your appeal may help us review your case sooner.

**How An Appeal Works**

The Appeals Council will consider your entire case.  It will consider all of my decision, even the parts with which you agree.  Review can make any part of my decision more or less favorable or unfavorable to you.  The rules the Appeals Council uses are in the Code of Federal Regulations, Title 20, Chapter III, Part 416 (Subpart N).

The Appeals Council may:

- Deny your appeal,
- Return your case to me or another administrative law judge for a new decision,
- Issue its own decision, or
- Dismiss your case.

The Appeals Council will send you a notice telling you what it decides to do.  If the Appeals Council denies your appeal, my decision will become the final decision.

**The Appeals Council May Review My Decision On Its Own**

The Appeals Council may review my decision even if you do not appeal.  If the Appeals Council reviews your case on its own, it will send you a notice within 60 days of the date of this notice.

**When There Is No Appeals Council Review**

If you do not appeal and the Appeals Council does not review my decision on its own, my decision will become final.  A final decision can be changed only under special circumstances.  You will not have the right to Federal court review.

**New Application**

You have the right to file a new application at any time, but filing a new application is not the same as appealing this decision.  If you disagree with my decision and you file a new application instead of appealing, you might lose some benefits or not qualify for benefits at all.  If you disagree with my decision, you should file an appeal within 60 days.

Form HA-L76-OP2 (03-2010)

See Next Page

ı (BNC#: 21TZ472J88780)                    Page 3 of 3

**If You Have Any Questions**

We invite you to visit our website located at www.socialsecurity.gov to find answers to general questions about social security.  You may also call (800) 772-1213 with questions.  If you are deaf or hard of hearing, please use our TTY number (800) 325-0778.

If you have any other questions, please call, write, or visit any Social Security office.  Please have this notice and decision with you.  The telephone number of the local office that serves your area is (866) 931-9946.  Its address is:

> Social Security Administration
> 401 W. Peachtree Street NW
> Suite 2860 Flr 28
> Atlanta, GA 30308-3538

> Laura G. McHenry
> Administrative Law Judge

Enclosures:
Decision Rationale

cc:      Kathleen Flynn, Esq.
         315 W. Ponce de Leon Avenue
         Suite 940
         Decatur, GA 30030

**SOCIAL SECURITY ADMINISTRATION**
**Office of Hearings Operations**

**DECISION**

**IN THE CASE OF**                                    **CLAIM FOR**

_____                    Supplemental Security Income
(Claimant)                                           _____

_____                    _____
(Wage Earner)                                        (Social Security Number)

## JURISDICTION AND PROCEDURAL HISTORY

This case is before the undersigned Administrative Law Judge on remand from the Appeals
Council.  On September 30, 2021, the undersigned held a telephone hearing due to the
extraordinary circumstance presented by the Coronavirus Disease 2019 (COVID-19) Pandemic.
All participants attended the hearing by telephone. The claimant and his grandmother, Carlette
Robinson, agreed to appear by telephone before the hearing, and confirmed such agreement at
the start of the hearing.  The claimant was represented at the hearing by Brynne Holt, an attorney
and associate of attorney Kathleen Flynn, the primary representative.

In its remand order, Appeals Council directed the undersigned to exhibit and consider the
consultative examination now at Exhibit B18F, evaluating the issue of disability for the period
from the alleged onset date, December 1, 2016, through the date of decision, and to further
evaluate whether the claimant meets or medically equals a listing.

The claimant is alleging disability since December 1, 2016.

After the hearing, the undersigned proffered additional medical records to the claimant and his
appointed representative that previously unexhibited (Exhibits B19F-B22F, B22E-B23E).

If the claimant wishes that written evidence be considered at the hearing, then the claimant must
submit or inform the Administrative Law Judge about the evidence no later than five business
days before the date of the scheduled hearing (20 CFR 404.935(a)). Pursuant to 20 CFR
404.935(b), if the claimant misses this deadline but submits or informs the Administrative Law
Judge about written evidence before the hearing decision is issued, the Administrative Law
Judge will accept the evidence if: (1) an action of the Social Security Administration misled the
claimant; (2) the claimant had a physical, mental, educational, or linguistic limitation(s) that
prevented submitting or informing the Administrative Law Judge about the evidence earlier, or
(3) some other unusual, unexpected, or unavoidable circumstance beyond the claimant's control
prevented the claimant from submitting or informing the Administrative Law Judge about the
evidence earlier.

The claimant submitted or informed the Administrative Law Judge about additional written evidence less than five business days before the scheduled hearing date.  The undersigned Administrative Law Judge finds that the requirements of 20 CFR 404.935(b) are satisfied and admits this evidence into the record (Exhibit B23F).[1]

## ISSUE AND APPLICABLE LAW

The issue is whether the claimant is disabled under section 1614(a)(3)(C) of the Social Security Act.  To make this determination, the undersigned has considered all relevant evidence based on the requirements of 20 CFR 416.924.

A claimant under the age of 18 is considered disabled if they have a physical or mental impairment, or combination of impairments, that results in marked and severe functional limitations, and that have lasted, or can be expected to last for a continuous period of not less than 12 months, or can be expected to result in death. Additionally, an individual that is engaging in substantial gainful activity (SGA), is not considered disabled under our rules.

A three-step sequential evaluation process is used to determine whether a claimant under age 18 is disabled (20 CFR 416.924(a)). If it is determined that the claimant is not disabled at step 1 or 2 of the evaluation process, the evaluation ends at that step. The three steps are: (1) Is the claimant engaging in SGA? (2) Does the claimant have an impairment or combination of impairments that is severe? (3) Does the claimant's impairment or combination of impairments meet, medically equal, or functionally equal a listed impairment?

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, the undersigned makes the following findings:

**1.   The claimant was born on August 15, 2007.  Therefore, he was a school-age child on April 13, 2017, the date application was filed, and is currently a school-age child (20 CFR 416.926a(g)(2)).**

**2.   The claimant has not engaged in substantial gainful activity since April 13, 2017, the application date (20 CFR 416.924(b) and 416.971 *et seq*.).**

At step one, the undersigned must determine whether the claimant is engaging in SGA, defined as work that involves significant physical or mental activities and that is done for pay or profit (20 CFR 416.972).  There is no evidence of work activity on or after the application date.

---

[1] As of the date the undersigned is signing this decision, the undersigned has admitted into the Administrative Record all relevant evidence that has been submitted, as enumerated hereinabove.  The undersigned finds that the duty to develop the record has been met and therefore closes the record.  Importantly, because of the central printing process used by the Social Security Administration Office of Hearing Operations, the date affixed to this decision and the effectuation date thereof, is automatically set five days after the undersigned actually signs the decision. Therefore, any evidence submitted during this five-day period was done so after the undersigned signed this decision.

See Next Page

**3.   The claimant has the following severe impairments:  asthma; attention deficit hyperactivity disorder; oppositional defiant disorder; speech/language disorder; and other specified stress-related disorder (20 CFR 416.924(c)).**

At step two, the undersigned must determine if the claimant has a severe impairment, defined as a medically determinable impairment that causes more than minimal functional limitations, or a combination of impairments that causes more than minimal functional limitations.  The medical evidence of record, summarized in finding 5 below, shows that the above- mentioned severe impairments are medically determinable and cause more than slight abnormality.  Therefore, they are found to be severe within the meaning of the Regulations.

The record also discloses that the claimant has been diagnosed with restless leg syndrome, chronic rhinitis, obstructive sleep apnea, obesity, and eczema.  These impairments were not of the severity that they substantially interfered with the claimant's ability to perform basic work activities; therefore, the undersigned finds that they are non-severe.  Despite being judged to be non-severe, they will be considered in evaluating the residual functional capacity of the claimant, as the combined effect of both severe and non-severe impairments are to be considered as part of a thorough analysis of the capacity to work (20 CFR § 404.1523; 20 CFR 416.923; Social Security Ruling 85-28).

**4.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).**

At step three, the undersigned must first determine whether the claimant has an impairment or combination of impairments that meets or medically equals the severity of one of our medical listings. These listings describe impairments that cause marked and severe functional limitations. In making this determination, the undersigned must consider the combined effect of all medically determinable impairments, even those that are not severe.  If the severity of the impairment(s) meets or medically equals the medical criteria in a listing, the claimant is disabled under our rules.

The undersigned has considered the Listing of Impairments, but the medical evidence does not establish that the claimant's impairment(s), individually or in combination, meet or equal in severity the criteria of a listed impairment.

The most closely associated Listings of Impairments are 3.03 and 103.03, Asthma; 111.09, Communication Disorder; 12.08 and 112.08, Personality Disorders; and 12.11 and 112.11, Neurodevelopmental Disorders. However, after careful analysis of the medical evidence of record, no listing is met.  The medical evidence of record does not include documentation of pulmonary function testing values or reflect a sufficient number of hospitalizations or medical interventions to meet the criteria for a respiratory listing.  The medical evidence of record does not reflect the degree of speech deficit to satisfy the criteria of the listing.  As for each mental health impairment, all listings include a paragraph B with four areas of function, two of which must be markedly limited for the listing to be met.  The criteria for paragraph B correspond to

the domains for functional equivalency.  For example, limitations in social functioning consider the same factors as the domain of interacting with and responding to others.  No opinion of an acceptable medical source designated by the Commissioner exists in the record to support a listing being equaled as required by regulation (20 CFR §§ 404.1526 and 416.926).

The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.08, 112.08 and 12.11 and 112.11.  In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied.  To satisfy the "paragraph B" criteria, as explained above, the mental impairments must result in at least two of the following: marked restriction of understanding, remembering, and applying information; marked difficulties in interacting with others; marked difficulties in maintaining concentration, persistence, or pace; or a marked limitation in adapting and managing oneself.  A marked limitation means more than moderate but less than extreme.

In understanding, remembering, and applying information, the claimant has a moderate restriction.  The claimant's progress in academics, as explained in the first domain addressed in paragraph 5 below, reflects this degree of limitation, as does some of the other evidence summarized and discussed in domains 1 and 5.  In interacting with others, the claimant has marked limitations as discussed in domains 3 and 5.  With regard to concentration, persistence or pace, the claimant has moderate difficulties, as reflected best in domains 1 and 2.  As for adapting and managing oneself, the claimant has moderate difficulties, as reflected in domains 1 and 5.  The record did not reveal a substantial and persisting issue in setting realistic goals, making independent plans, or not being aware of hazards.  The claimant has no more than moderate limitation in this area of function.

Because the claimant's mental impairments do not cause at least two "marked" limitations, the "paragraph B" criteria are not satisfied.

The undersigned has also considered whether the "paragraph C" criteria are satisfied.  In this case, the evidence fails to establish the presence of the "paragraph C" criteria.  The medical evidence of record does not establish both ongoing medical treatment, mental health therapy, psychosocial supports, or highly structured settings that diminish the impairment symptoms and signs and marginal adjustment with minimal capacity to adapt to changes in environment or to demands not already part of daily life.

**5.  The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a).**

If the claimant has a severe impairment or combination of impairments that does not meet or medically equal any listing, the undersigned must determine whether the claimant has an impairment or combination of impairments that functionally equals the listings. When determining functional equivalence, the undersigned evaluates the "whole child" (see Social Security Ruling 09-1p), by considering how the claimant functions at home, at school, and in the community; the interactive and cumulative effects of all of the claimant's medically determinable impairments on the claimant's activities; and the type, extent, and frequency of help the claimant needs.

See Next Page

The undersigned must consider how the claimant functions in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being.  To functionally equal the listings, the claimant's impairment or combination of impairments must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain.  Our rules explain that a claimant has a "marked" limitation in a domain when his impairment(s) "interferes seriously" with the ability to independently initiate, sustain, or complete activities, and a claimant has an "extreme" limitation" in a domain when his impairment(s) "interferes very seriously" with these same abilities.  In making this assessment, the undersigned must compare how appropriately, effectively, and independently the claimant performs activities compared to the performance of other children of the same age who do not have impairments (20 CFR 416.926a).

Based on the requirements of 20 CFR 416.924a(a) and SSR 09-2p, the undersigned has considered all the relevant evidence in the case record.  "All of the relevant evidence" includes objective medical evidence and other relevant evidence from medical sources; information from other sources, such as schoolteachers, family members, or friends; the claimant's statements (including statements from the claimant's parent(s) or other caregivers); and any other relevant evidence in the case record, including how the claimant functions over time and in all settings (i.e., at home, at school, and in the community).

> The undersigned finds that the claimant has:
> - <u>less than a marked</u> limitation in acquiring and using information;
> - <u>less than a marked</u> limitation in attending and completing tasks;
> - <u>marked</u> limitation in interacting and relating with others;
> - <u>no</u> limitation in moving about and manipulating objects;
> - <u>less than a marked</u> limitation in the ability to care for himself; and
> - <u>less than a marked</u> limitation in health and physical well-being.

In determining the degree of limitation in each of the six domains of functioning, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSR 09-2p through 8p, and 16-3p.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations.  For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other

symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine the claimant's functional limitations.

The claimant alleged and testified that he is attending school at the Carver Academy, and school is going well.  He has one C in Science and has a B in the rest of his courses.  He did not like science since he stuttered.  The claimant is not taking a math class this term because the class is too full.  Asthma had been doing adequately in the past, but his breathing worsened in June or July 2021, and he had to go to the emergency room.  It is hard for him to breathe when he does not take his medication.  Twice each day, he takes medication, and he uses the CPAP machine at night.

The claimant's grandmother, Ms. Robinson, alleged and testified that the claimant had to go to the hospital emergency room in June 2021 because a summer cold triggered his asthma.  He was placed on a CPAP machine because they noticed that he stopped breathing, which she brought from home instead of him being place on oxygen.  Heat can also trigger the claimant's asthma, as well as going outside at times.  He is doing well in school currently, despite not liking to talk due to stuttering.  He goes to speech therapy each week.  There are no reported problems with the claimant paying attention and getting his work done.  Although she first stated that there had been no time this year that he did not finish an assignment, his grandmother later noted during testimony that the claimant did not finish one assignment and that he becomes frustrated when work is complicated, needing to sit down for a while.  He does chores around the home, but he sometimes needs to be told repeatedly to do the chores.  Ms. Robinson testified that he is becoming scared about his asthma.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the allegations concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record.

The medical evidence of record shows that the claimant's most significant problems relate to his speech impediment, manifested by stuttering and a behavioral disorder.  He has received speech/language services for several years.  While there has been improvement in his articulation, the claimant continues to have some ongoing difficulties with stuttering.  It has been noted that he frequently experiences anxiety and frustration when talking to others (See, e.g., Exhibits B1F at p. 6 and B4F at pp. 5 and 39).

There are consultative examinations from prior to the alleged onset date. On May 1, 2012, the claimant presented for a consultative examination with Dr. Tiffany Strawbridge (Exhibit B19F). Upon objective examination, the claimant was found to be pleasant and cooperative. His lungs were clear to auscultation, with no wheezes, rhonchi, or rales. Dr. Strawbridge diagnosed asthma, prematurity, and sleep apnea. She opined that he should avoid concentrated areas of toxins, fumes, and inhalants based on his asthma. The Denver Developmental Screening Test showed that the claimant was functioning at an age-appropriate level in all four categories of the test.

See Next Page

On May 13, 2013, the claimant presented for a consultative examination with Stephen Hamby, Ph.D. (Exhibit B20F). During the examination, Dr. Hamby noted that the claimant was not impulsive and seemed to apply good attention and effort. He made good eye contact, and his attention span and concentration were good. In the Wechsler Preschool and Primary Scale of Intelligence test, the claimant had a full-scale IQ of 119, with a processing speed of 125 and a performance score of 96. Overall, Dr. Hamby provisionally diagnosed the claimant with an expressive language disorder. He opined that the claimant would have little difficulty understanding and remembering instructions and new information at an age-appropriate level. His ability to engage in appropriate social interaction and his ability to exhibit adequate self-control were good. Based on his grandmother's report of attentional problems in school, Dr. Hamby opined that the claimant would be mildly impaired in his ability to sustain attention over time.

A Psychosocial Assessment from a licensed clinical social worker (LCSW) at Pathways Transition Programs in August 2014 found that the claimant had severe ADHD and learning/speech delays, including a severe stutter.  The stutter created frustrations and communication problems.  Therapy was recommended "to build confidence, improve emotional regulation, and improve decision making." (Exhibit B1F at p. 6).  This assessment and other therapy records from Pathways Transition Programs include a CAFAS (Child and Adolescent Functional Assessment Scale) score, which were provided by an LCSW (See, e.g., Exhibits B4F, B5F, and B7F). There are various therapy records from 2014 to 2017 when the claimant sought treatment from Pathways Transition Programs in the record, with some duplication of treatment notes (Exhibits B1F, B2F, B4F, B5F, and B7F). The claimant sought treatment for impulsivity and hyperactivity. The undersigned has discussed these records in more detail in the discussion of the functional domains and B criteria below.

A speech/language assessment performed on October 17, 2016, found that the claimant had marked limitations in speech fluency (Exhibit B8F at p. 37).  His stutter significantly interfered with his ability to communicate.  During a consultative examination on July 24, 2017, Angela Jones, a speech language pathologist, noted that the claimant appeared to be a very healthy child with no persistent or frequent health issues. She noted that his social skills seemed appropriate for his age, and he was able to communicate his wants and needs.  A stuttering assessment revealed that his dysfluency severity was moderate.  She opined that the claimant's overall communication ability was within functional limits and did not have a negative effect on his learning and social development (Exhibit B6F).  This opinion is consistent with the finding of treating physicians that the claimant had no more than mild problems and that he was able to communicate with entire sentences. Further, Ms. Jones supported her opinion with references to a formal testing, including stuttering assessment (Stuttering Severity Instrument (SSI)-3) and the claimant's responses to an information language sample, to support her opinion.  While each speech pathology report prior to this assessment had some persuasiveness as a snapshot in time of the claimant's capacity at the time, the claimant has continued to improve, and the later speech report is more persuasive.

With respect to his behavior and attention, oppositional defiant disorder (ODD) has been diagnosed, as well as attention deficit hyperactivity disorder.  The record reflects problems with the anger management and a lack of ability to delay gratification. The claimant resists being

disciplined and is argumentative with family (See, e.g., Exhibits B7F at p. 3 and Exh. B4F at p. 23).  There has been some speculation that his behavioral difficulties may be related to his speech impediment.  Ms. Robinson reported that to get the claimant to comply with her instructions, she must ask two to three times (Exhibit B2F at p. 5).  The claimant could be distracted due to attention deficit hyperactivity disorder.

Dawn Allen, Ph.D., a consultative examiner, noted in 2017 that, after a clinical interview, collateral interview, testing, and mental status examination, the claimant exhibited mild limitations in sustained attention and concentration due to some distractibility and impulsivity. However, he had marked limitations in speech fluency. His stutter significantly interfered with his ability to communicate, and he became somewhat emotional about his struggle to communicate.  He appeared to be able to perform simple and age-appropriate tasks.  However, he seemed to have some social concerns.  More than likely, his behavioral difficulties were related to his speech impairments.  The claimant did not have age-appropriate coping skills.  It was clear that speech therapy was a very important part of his educational plan (Exhibit B18F). Regarding mental health diagnoses, the examiner diagnosed childhood-onset fluency disorder; ADHD, inattentive presentation; other specified stress-related disorder.

The medical evidence of record summarized above establishes that the claimant has asthma, attention deficit hyperactivity disorder, oppositional defiant disorder, a speech/language disorder of stuttering, other specified stress-related disorder, restless leg syndrome, chronic rhinitis, obstructive sleep apnea, and eczema.  These impairments, singly and in combination, cause limitations in all domains except the domain of moving about and manipulating objects, in which the claimant is not hindered in freely moving and handling things as he participates in sports.

There are limitations in the five other domains.  The claimant, nevertheless, succeeds in classwork; adequately pays attention with ADHD medication; cares for himself and does chores; and has generally good health, despite the limitations.  The limitations in the four corresponding domains are deemed to be less than marked because the claimant retains substantial residual capabilities.  The medical evidence shows that the claimant gets along with most others with medication.  As discussed below, the claimant has also participated in Cub Scouts and school sports.  However, on balance, here has been sufficient misbehavior and relational difficulties that this domain might be considered to be markedly limited.  The degree of limitation in each domain is discussed in greater detail below.

With respect to the first domain of acquiring and using information, school records in March 2017 reflect a moderate fluency disorder for which the claimant received speech/language services. The claimant has a speech impediment involving stuttering.  His mother has reported that he is sometimes stutter free while at home, but when excited or frustrated, his stuttering increases. It was noted that he was below grade level expectancy in reading. (Exhibit B3F, B4F). The consultative examiner in October 2017 noted that the claimant struggled with reading and reported math as his toughest subject.  The claimant has a limitation in this domain.

However, the claimant and his grandmother testified to the claimant obtaining average grades. He typically earned A's and B's in school.  In February 2018, the claimant was said to be able to recite his medications and did well in school (Exhibit B9F at p. 19).  The undersigned notes that

the claimant has an individualized education program for speech/language but not for academics. While the claimant tested as below grade level in math and reading in a February 2017 IEP reevaluation (Exhibit B3F at p. 113), this result or concern is not consistent in the longitudinal record. While the claimant's teacher, Patricia Belcher, noted in a 2010-2011 individualized education program or plan (IEP) that the claimant struggled with various class work (Exhibit B2E/9), this was not a consistent concern in later IEPs (See, e.g., Exhibits B14E).  While receiving some failing grades in classes, his grades have generally ranged from A's to C's (See, e.g., Exhibit B3F at p. 113).

The claimant met his developmental milestones, other than in speech and language.  He made good progress in school in what was essentially a regular curriculum.  Although impeded by stuttering, he was acquiring new information in the classroom, and he was applying it to different situations in accordance with what was required in his academic setting.  He was working toward a general education diploma (Exhibit B14E at p. 21).  The undersigned concludes that there is a less than marked limitation in acquiring and using information.

As for the next domain of attending to and completing tasks, Ms. Robinson testified that the claimant did not finish an assignment in the past year, and he becomes frustrated when work is complicated, needing to sit down for a while.  The consultative examiner in 2017 noted that sustained attention and concentration were mildly limited, and the claimant had difficulty doing Series 3 mental calculations correctly.  He was somewhat distracted and impulsive.  Instructions had to be repeated (Exhibit B18F at p. 4).  The Attention deficit hyperactivity disorder, by its nature, diminishes the consistency of attention paid.  There is limitation in this domain.

On the other hand, during a well-child check up on February 6, 2018, it was reported that the claimant did well in school with A's and B's and had no behavioral issues (Exhibit B9F at p. 19). Ms. Robinson testified at one point during the hearing that there has been no time this year that he did not finish an assignment.  She also testified that there are no reported problems with the claimant paying attention and getting his work done.  The speech/language consultative examiner reported in July 2017 that the clamant was able to perform simple age-appropriate tasks. The examiner also reported that the claimant was able to attend to the stimulus items and did not require any redirection. His attention and task persistence were adequate (Exhibit B6F at p. 2). In school records, the claimant's ELA teacher noted in a 2020 IEP report that the claimant wrote well but was not turning in assignments (Exhibit B16F at p. 15).  No additional details were provided.  However, in the same report the claimant's math teacher reported that he was able to independently engage in a computer assignment (Id. at p. 13).  Additionally, the claimant testified at the hearing that he makes passing grades in school.

The claimant took medication addressing his attention deficit hyperactivity disorder in the second grade, but the medication was stopped because it interfered with his asthma medication (Exhibit B18F).  Even without medication, the examiner noted that the claimant exhibited mild limitations in sustained attention and concentration due to some distractibility and impulsivity (See. e.g., Exhibits B4F at p. 53 and Exhibit B18F). With mild limitation and a demonstrated ability to focus well enough to attain generally good grades, the undersigned finds less than marked limitation in attending to and completing tasks.

See Next Page

The next domain is interacting with and relating to others.  The claimant testified that he stutters, and his grandmother testified that the claimant needs to go to speech therapy regularly.  Further, it was noted in in the evidence that the claimant experiences anxiety and frustration with talking with others.  He had difficulty with the ability to delay gratification (Exhibit 8F at pp. 7, 19). The record reflects that the claimant has some reported difficulty with anger management and that he can lack age-appropriate coping skills (Exhibit B2F).  On February 29, 2016, the claimant's grandmother reported that the claimant was acting out at school, but she attributed some of these changes to the claimant being taken off his medication (Exhibit B5F at p. 73). On March 18, 2016, the claimant's grandmother again reported increased calls from school regarding the claimant acting out in class (Exhibit B4F at p. 61). On April 19, 2017, the claimant's grandfather reported that the claimant had a tantrum at an egg hunt and was defiant (Exhibit B4F at p. 39). During the therapy session, the claimant was talkative and engaged, and the social worker noted that the claimant had made some progress in his ability to manage anger at home.

Conversely, during check-ups in 2017, the claimant was said to get along with teachers and had not been suspended or expelled from school (Exhibit B8F at p. 7, B8F at p. 19). An IEP dated February 1, 2017, noted that the claimant did not have any disciplinary actions on file (Exhibit B2E at p. 4).  In therapy records from 2016, the claimant's grandmother reported progress with decreasing the claimant's non-compliance at home (See, e.g., Exhibit B2F at p. 5). On May 25, 2016, the claimant's grandmother reported that she had had minimal problems with the client misbehaving (Id.). Ms. Robinson testified at a previous hearing that the claimant had no significant issues in school and had friends with whom he interacted outside of school. He was involved in sports and in the band, exhibited an ability to tolerate others in large groups (Exhibit B3F at p. 114). He was also involved in Cub Scouts, with the claimant winning a contest and participating in trips (See, e.g., Exhibits B4F at p. 54 and B7F at p. 12).   Further, during a well-child check-up on February 6, 2018, it was reported that the claimant did well in school and had no behavioral issues (Exhibit B9F at p. 19). The claimant did serve an out-of-school suspension for fighting with another student in October 2019 (Exhibit B16F at p. 10). In the review of systems for follow-up appointments for asthma on October 5, 2021, and January 4, 2022, no psychological or emotional problems were noted (Exhibit B23F at pp. 16 and 86).

Overall, the undersigned finds that the domain of interacting with and relating to others has a limitation that is marked.  The claimant's stuttering, his emotional reaction and frustration with stuttering noted during the consultative examination, and the claimant's limited number of friends reflect a severity that the undersigned finds to be marked despite some countervailing evidence.

The fourth domain is moving about and manipulating objects.  The claimant has no musculoskeletal impairments. He is engaged in sports and is active physically.  The claimant was active in playing football (Exhibit B14F at p. 106).  The physical examinations have reflected normal range of motion (Exhibit B17F).  Ms. Robinson noted that the claimant's physical abilities were not limited (Exhibit B8E at p. 6).  There is no reason to believe that there is any significant limitation in moving about and manipulating objects.

See Next Page

Self-care is the next domain.  Ms. Robinson testified that the claimant must be told repeatedly to do his chores.  These reports were also reiterated by Ms. Robinson during the consultative examination, and she also stated that the claimant needed reminders to brush his teeth and bathe. She thought that the claimant needed parental assistance to clean his room "completely."  The claimant acknowledged that he forgot to clean his room, and he lost things, which required him to "retrace" his steps (Exhibit B18F at p. 4).  There is a limitation in this domain.

Ms. Robinson, however, also testified that the claimant does eventually complete his chores.  At a consultative examination, the claimant displayed good hygiene and grooming.  Ms. Robinson acknowledged that the claimant was able to get dressed, put his shoes on correctly, obtain simple foods and beverages, and use a microwave oven without assistance.  He appeared to be able to perform simple and age-appropriate tasks (Exhibit B18F). Ms. Robinson wrote in a function report that the claimant 's impairments did not affect his ability to help himself or cooperate with others in taking care of his personal needs (Exhibit B8E at p. 8).  The undersigned finds, overall, the domain of self-care is less than markedly limited.

The final domain is health and physical well-being.  The claimant testified that it is hard for him to breathe when he does not take his medication.  Twice each day, he takes medication, and he uses the CPAP machine at night.  Obstructive sleep apnea was confirmed by polysomnography testing (Exhibit B17F at p. 61).  The claimant did have an exacerbation of asthma in June 2021, requiring a visit to the emergency department (Exhibit B17F at p. 475).  There is also a diagnosis of eczema at times, along with chronic rhinitis and restless leg syndrome.  Body mass index is indicative obesity.  This domain has a limitation.

Yet, the condition of asthma has been generally well-controlled with medication.  In February 2018, it was noted that the claimant had no emergency room visits for the prior year and no hospitalizations for asthma (Exhibit B9F at p. 19).  Further, he is engaged in sports and is active physically.  In fact, the claimant presented on November 25, 2019, with a right ankle injury that he sustained while playing football the prior week (Exhibit B14F at p. 106).  Despite not being fully compliant in taking his asthma medication, the claimant had no emergency department visits or hospitalization between pulmonary clinic appointments (Exhibit B17F at p. 108).  The June 2021 emergency department visit was due to non-compliance (Exhibit B17F at p. 489).  On October 5, 2021, the claimant presented for a follow-up visit for asthma (Exhibit B23F at p. 18). He reported that he experienced night-time cough and/or difficulty breathing one to two times per month since his last appointment. Regarding daytime cough and/or wheezing, he experienced these one to two times per week. On objective examination, effort and breath sounds were normal. (Id. at p. 23). He had no wheezes, rales, or stridor. Poor adherence to medication and treatment plan were noted (Id. at p. 29). During another follow-up appointment on January 4, 2022, the claimant denied non-adherence but had run out of his inhaler the night before (Id. at p. 82). He had symptoms of a cough, sore throat, runny nose, and wheezing/shortness of breath that began a few days prior. However, he had no retractions and good aeration upon physical examination. He was diagnosed with moderate persistent asthma without complication and acute nasopharyngitis (Id. at p. 88). The restless leg syndrome was noted to be resolved.  Eczema was transient and had little effect on function, as did chronic rhinitis.  Obstructive sleep apnea was controlled by a CPAP machine if the claimant was compliant, and the claimant otherwise reported no problem with sleeplessness. For example, on February 1, 2022, the claimant

presented for follow-up with allegations of cerumen impaction and snoring.  He reported that he used his CPAP at night and with naps, and his snoring was much improved when using the CPAP (Id. at p. 138). It was recommended that the claimant be seen in the ROSATA clinic for his residual sleep apnea.

In connection with the effect of obesity upon functions involving movement, Social Security Ruling 19-2p instructs that "People with obesity have a higher risk for other impairments, and the effects of obesity combined with other impairments can be greater than the effects of each of the impairments considered separately."  Even considering obesity, the claimant is health overall. Typically, reviews of systems were unremarkable.  The claimant denied coughs or wheezing, a well as arthralgia, headaches, dizziness, or weakness.  He also denied anxiety or sleeplessness on typical medical visits.  Physical examinations showed normal effort and breath sounds with no wheezes and good aeration, as well as normal gait (see, e.g., Exhibit B17F at pp. 165, 169). Overall, the claimant has less than marked limitation in health and physical well-being.

In determining the degree of limitation in the claimant's functioning, the undersigned has also considered the medical opinions in accordance with the applicable regulations.  Turning to evaluation of this evidence, the undersigned finds the opinion of the state agency medical consultant to be generally persuasive (Exhibits B1A and B3A). Although the undersigned found that the claimant has a marked limitation in interacting and relating with others, the overall opinion that the claimant's impairments do not meet or functionally equal a listed impairment is generally persuasive.  The consultants did support their opinions with citations to the medical evidence available at the time, including therapy records and to teacher reports (See, e.g., Exhibit B1A at p.11). The medical records and other evidence are consistent with either no limitation or less than marked limitations in the other four domains, as discussed above.  Additional evidence and testimony available at the hearing level has convinced the undersigned that the claimant has a marked limitation in interacting and relating with others.

The October 2017 psychological consultative examination noted that the claimant had a significant stutter, and the claimant became somewhat emotional about his struggle to communicate.  Most likely, behavioral difficulties were related to speech impairments.  While the claimant did not have a best friend or group of friends, it was also noted that the claimant had friends and got along well with teachers and peers (Exhibit B18F at pp. 4, 5).  Overall, the claimant had mild limitations in attention and concentration with marked limitations in speech fluency.  Further, the claimant could perform simple and age-appropriate tasks.  The claimant did have some social concerns and did not have age-appropriate coping skills.  The overall opinion is somewhat persuasive. The consultative examiner did not support her opinions with citations to her objective examination or to the records that she had at her disposal, particularly the opinion regarding age-appropriate coping skills, which makes the finding less persuasive. The opinion regarding mild limitations in attention and concentration is consistent with the examiner's findings and with the other objective medical and other evidence of record of the claimant having a stutter but being able to communicate and succeed in school (See, e.g., Exhibits B6F, B16F at pp. 13 and 15, B9F at p. 19).

The opinion that the claimant does not have age-appropriate coping skills is less persuasive.  For example, an IEP dated February 1, 2017, noted that the claimant had a lack of a disciplinary

record on file (Exhibit B2E at p. 4). During a well-child check up on February 6, 2018, it was reported that the claimant did well in school with A's and B's and had no behavioral issues (Exhibit B9F at p. 19).  The undersigned notes one disciplinary record in October 2019 for fighting with another student, which resulted in a one day out-of-school suspension (Exhibit B16F at p. 10).  However, it appears that this formal disciplinary action was an isolated incident as the undersigned did not note other similar incidents. While the claimant was described as defiant and having tantrums in some 2014-2015 therapy records, he also participated in Cub Scouts with some apparent success (See, e.g., Exhibits B4F at p. 54 and B7F at p. 12). In a function report, the claimant's grandmother noted that the claimant's impairments did not affect his behavior with other people (Exhibit B8E at p. 7).  While the claimant certainly has speech and social interaction limitations from his stuttering, as well as some symptoms from ADHD and oppositional defiant disorder, the longitudinal medical and other evidence of record are not consistent with the opinion that the claimant does not have some age-appropriate coping skills. For these reasons, the opinion regarding age-appropriate coping skills is found less persuasive. The consultative examiner further opined that the claimant had a "significant" stutter and "marked" limitations in speech fluency.  However, a consultative examination in July 2017 with a speech language pathologist, an expert on speech/language impairments, found that the claimant had moderate dysfluency after a formal stuttering assessment (Exhibit B6F at p. 5). Further, the speech pathologist reported that his social language skills were within normal limits compared to peers of the same age (Id.).

Finally, the consultative examiner's opinion does not adequately quantify any degree of limitation. For example, the examiner noted that the claimant appeared to have "some" social concerns but does not explain what this means as far as the claimant's daily functioning. Further, the examiner opined that the claimant did not have age-appropriate coping skills but did not specify what coping skills were lacking and the degree of any limitation. Given the vagueness of the examiner's opinion, the differing expert opinions in the record, and the evidence of record that is not entirely consistent with the same level of impairment severity, the undersigned finds the consultative examiner's opinion only somewhat persuasive.

As discussed above, Angela Jones, a speech language pathologist, completed a speech/language consultative examination of the claimant on July 24, 2017 (Exhibit B6F).  She found that the claimant has a moderate dysfluency severity upon a formal stuttering assessment (Id.).  Ms. Jones recommended that the claimant "continue speech therapy services to improve his fluency skills to age-appropriate levels so that wants, needs, and ideas can be clearly expressed." (Id. at p. 5). However, the clinician opined that the claimant's communication abilities were generally within functional limits and did not have a negative impact on his social development or learning.  The undersigned finds this opinion to be persuasive as it is based on objective testing and examination and is consistent with the evidence as a whole (See, e.g., Exhibits B8F at p. 7, B9F at p. 19, and B16F at pp. 15 and 31).  Further, Ms. Jones supported her opinion with references to the formal stuttering assessment and pointing to questions and answers that helped her formulate her opinion, including an information language sample.

The undersigned also considered the speech/language assessment performed on October 17, 2016, which found that the claimant had marked limitations in speech fluency (Exhibit B8F at p. 37).  The undersigned also found this opinion to be generally persuasive as it is based on

objective testing and examination available at the time.  Further, it is consistent with the evidence from that point in time.  While the later speech/language consultative examination found the claimant to have a moderate dysfluency severity, the two assessments are not entirely inconsistent, considering the time that elapsed between the two evaluations and the therapy that the claimant received in the interim.  Further, treating physicians have noted that the claimant spoke in complete sentences, and there were no retractions or only mild issues with the intercostal muscles (Exhibit B17F at p. 427).

Regarding the CAFAS scores from Pathways, the undersigned considered the evaluations and included observations. These scores reflect a particular clinician's subjective evaluation at a single point in time and may vary from day to day, from time to time, and between practitioners. However, an LCSW provided these scores, which is not generally an acceptable medical source under 20 CFR 416.902(a), (i), and (j).  For this reason, the undersigned has not evaluated the persuasiveness of any opinions in this evaluation.  However, the undersigned has considered any objective findings and observations in these treatment notes in the evaluation of the claimant's case, consistent with 20 CFR 404.1520b(c) and 416.920b(c).

Regarding the psychological consultative evaluation from 2013 and the consultative evaluation from 2012, the undersigned finds the opinions less persuasive, given the remoteness in time of these evaluations to the period at issue are remote in time to the alleged onset date for the current application. There are also other medical opinions in the file closer to or during the relevant period that provide a more accurate picture of the claimant's functioning during the period at issue. However, the undersigned carefully considered the content of these evaluations, including testing scores, physical examinations, and mental status examinations.

The undersigned did not provide articulation about the evidence in this case that is inherently neither valuable nor persuasive in accordance with 20 CFR 404.1520b(c) and 416.920b(c).  This includes a Function Report from the claimant's grandmother, Ms. Robinson (Exhibit B8E). Nonetheless, as for other evidence not discussed herein, the undersigned has considered the entire evidence of record as whole, to include any evidence not dispositive to the findings or final determinations by the undersigned.

Accordingly, the claimant does not have an impairment or combination of impairments that functionally equals a listing, because the claimant does not have either "marked" limitations in two domains of functioning or "extreme" limitation in one domain of functioning.

**6.   The undersigned finds that the claimant has not been disabled, as defined in the Social Security Act, since April 13, 2017, the date the application was filed (20 CFR 416.924(a)).**

## DECISION

See Next Page

Based on the application for supplemental security income filed on April 13, 2017, the claimant is not disabled under section 1614(a)(3)(C) of the Social Security Act.

/s/ *Laura G. McHenry*

Laura G. McHenry
Administrative Law Judge

April 20, 2022

Date

# LIST OF EXHIBITS

### Payment Documents/Decisions

| Component | No. | Description | Received | Dates | Pages |
|---|---|---|---|---|---|
| Y13 | B1A | NO ASSESSMENT WITH THIS CLAIM | | 2017-11-29 | 16 |
| Y13 | B2A | Initial Disability Determination by State Agency, Title XVI | | 2017-11-30 | 1 |
| Y13 | B3A | NO ASSESSMENT WITH THIS CLAIM | | 2018-02-28 | 16 |
| Y13 | B4A | Reconsideration Disability Determination by State Agency, Title XVI | | 2018-03-01 | 1 |
| Y13 | B5A | ALJ Hearing Decision UNFAV - Laura G McHenry ALJ | | 2020-06-04 | 21 |
| Y13 | B6A | AC Order - REVIEW SUBSTANTIAL EVIDENCE&ERROR OF LAW | | 2021-01-04 | 6 |

### Jurisdictional Documents/Notices

| Component | No. | Description | Received | Dates | Pages |
|---|---|---|---|---|---|
| Y13 | B1B | Appointment of Representative | | 2017-04-04 | 2 |
| Y13 | B2B | Representative Fee Agreement | | 2017-04-07 | 2 |
| Y13 | B3B | Representative Correspondence | | 2017-04-07 | 4 |
| Y13 | B4B | T16 Notice of Disapproved Claim | | 2017-11-30 | 4 |
| Y13 | B5B | Request for Reconsideration | | 2017-12-05 | 3 |
| Y13 | B6B | T16 Disability Reconsideration Notice | | 2018-03-02 | 5 |
| Y13 | B7B | Request for Hearing by ALJ | | 2018-03-09 | 3 |

| Y13 | B8B | Request for Hearing Acknowledgement Letter | | 2018-03-29 | 15 |
| Y13 | B9B | Objection to Video Hearing | | 2018-04-03 | 1 |
| Y13 | B10B | Hearing Notice | | 2019-10-17 | 25 |
| Y13 | B11B | Notice Of Hearing Reminder | | 2020-01-02 | 6 |
| Y13 | B12B | Appointment of Representative | | 2020-01-09 | 1 |
| Y13 | B13B | Representative Fee Agreement | | 2020-01-16 | 1 |
| LEW | B14B | Request for Review of Hearing Decision/Order | | | 3 |
| Y13 | B15B | AC Correspondence | | 2020-07-22 | 5 |
| Y13 | B16B | COVID Hearing Agreement Form | | 2021-02-09 | 14 |
| X51 | B17B | Hearing Notice | | 2021-06-25 | 22 |
| X51 | B18B | Notice Of Hearing Reminder | | 2021-09-02 | 6 |
| Y13 | B19B | Fee Agreement for Representation before SSA | | 2021-09-29 | 1 |
| Y13 | B20B | SSA-1696 - Claimant's Appointment of a Representative | | 2021-09-29 | 1 |
| Y13 | B21B | Fee Agreement for Representation before SSA | | 2021-09-22 | 1 |
| Y13 | B22B | SSA-1696 - Claimant's Appointment of a Representative | | 2021-09-29 | 1 |

## Non-Disability Development

| Component | No. | Description | Received | Dates | Pages |
|---|---|---|---|---|---|
| Y13 | B1D | Application for Supplemental Security Income Benefits | | 2017-05-11 | 6 |
| Y13 | B2D | Detailed Earnings Query | | 2018-11-03 | 1 |
| Y13 | B3D | New Hire, Quarter Wage, Unemployment Query (NDNH) | | 2018-11-03 | 1 |

| Y13 | B4D | Summary Earnings Query | | | 2018-11-03 | 1 |
| Y13 | B5D | Certified Earnings Records | | | 2018-11-03 | 1 |
| Y13 | B6D | Certified Earnings Records | | | 2021-06-07 | 1 |
| Y13 | B7D | Detailed Earnings Query | | | 2021-06-09 | 1 |
| Y13 | B8D | Summary Earnings Query | | | 2021-06-09 | 1 |
| Y13 | B9D | New Hire, Quarter Wage, Unemployment Query (NDNH) | | | 2021-06-09 | 1 |
| Y13 | B10D | Detailed Earnings Query | | | 2021-09-16 | 1 |
| Y13 | B11D | Summary Earnings Query | | | 2021-09-16 | 1 |
| Y13 | B12D | New Hire, Quarter Wage, Unemployment Query (NDNH) | | | 2021-09-16 | 1 |
| Y13 | B13D | Certified Earnings Records | | | 2021-09-16 | 1 |

## Disability Related Development

| Component | No. | Description | Received | Source | Dates | Pages |
|---|---|---|---|---|---|---|
| Y13 | B1E | SPEECH/LANGUAGE IMPAIRMENT REPORT | | Atlanta Public Schools | 2012-10-24 to 2013-10-22 | 8 |
| Y13 | B2E | Individualized Education Plan | | | 2012-10-23 to 2013-10-22 | 29 |
| Y13 | B3E | Individualized Education Plan | | Atlanta Public Schools | 2013-10-17 to 2014-10-16 | 24 |
| Y13 | B4E | Individualized Education Plan | | | 2014-11-03 to 2015-11-02 | 30 |
| Y13 | B5E | Disability Report - Field Office | | FO Employee | to 2017-05-11 | 3 |
| Y13 | B6E | Disability Report - Child | | Claimant | to 2017-05-12 | 8 |
| Y13 | B7E | SCHOOL RECORDS | | Atlanta Public Schools | 2010-06-28 to 2017-05-25 | 28 |

| Y13 | B8E | Function Report - Child Age 6 to 12 | Claimant | to 2017-07-10 | 10 |
| Y13 | B9E | Disability Report - Appeals | Claimant | to 2017-12-06 | 7 |
| Y13 | B10E | Disability Report - Field Office | FO Employee | to 2017-12-06 | 2 |
| Y13 | B11E | Disability Report - Appeals | Claimant | to 2018-03-12 | 7 |
| Y13 | B12E | Disability Report - Field Office | FO Employee | to 2018-03-12 | 2 |
| Y13 | B13E | Individualized Education Plan | Atlanta Public Schools | to 2018-05-01 | 23 |
| T2L | B14E | Individualized Education Plan | Sylvan Hills Middle School | 2013-09-18 to 2019-11-06 | 30 |
| T2L | B15E | Correspondence regarding efforts to obtain evidence | K. Flynn, Representative | 2020-01-02 to | 3 |
| LEW | B16E | Representative Brief | | | 5 |
| X51 | B17E | Report of Contact | | | 1 |
| X51 | B18E | Representative Correspondence | | 2021-09-02 to | 2 |
| Y13 | B19E | Representative Correspondence | | 2021-09-27 to | 3 |
| Y13 | B20E | Misc Disability Development and Documentation | | 2021-09-27 to | 1 |
| Y13 | B21E | Misc Disability Development and Documentation | | 2021-09-30 to | 2 |
| Y13 | B22E | Proffer Correspondence | | | 3 |
| Y13 | B23E | Response to Proffer Correspondence | | 2022-02-18 to | 2 |

## **Medical Records**

| Component | No. | Description | Received | Source | Dates | Pages |
| --- | --- | --- | --- | --- | --- | --- |
| Y13 | B1F | Outpatient/Inpatient Rehabilitation Records | | Pathways Transition Programs, Inc. | 2014-08-22 to 2014-12-23 | 124 |
| Y13 | B2F | Outpatient/Inpatient Rehabilitation Records | | Pathways Transition Programs Inc | 2016-05-12 to 2016-10-14 | 73 |

| Y13 | B3F | SCHOOL RECORDS | | Atlanta City Schools | 2013-11-14 to 2017-02-01 | 114 |
|-----|-----|----------------|---|----------------------|--------------------------|-----|
| Y13 | B4F | Outpatient/Inpatient Rehabilitation Records | | Pathways Transition Programs Inc | 2016-10-14 to 2017-03-08 | 79 |
| Y13 | B5F | Outpatient/Inpatient Rehabilitation Records | | Pathways Transition Programs, Inc | 2015-07-09 to 2017-04-07 | 273 |
| Y13 | B6F | Consultative Examination Report | | Angela M Jones, Ccc-Slp | to 2017-07-24 | 5 |
| Y13 | B7F | Outpatient/Inpatient Rehabilitation Records | | Pathways Transition Programs, Inc | 2017-04-07 to 2017-09-24 | 22 |
| Y13 | B8F | HIT MER | | Children's Healthcare Of Atlanta | 2016-05-01 to 2017-10-04 | 86 |
| Y13 | B9F | Hospital Records | | Children's Healthcare Of Atlanta | 2018-01-29 to 2018-02-28 | 37 |
| Y13 | B10F | Hospital Records | | Children's Healthcare Of Atlanta | 2018-05-01 to 2018-06-10 | 73 |
| Y13 | B11F | Office Treatment Records | | Childrens Healthcare Of Atlanta | 2019-05-23 to 2019-05-23 | 28 |
| Y13 | B12F | Progress Notes | Subsequent to hearing | After Visit Summary-Choa | to 2020-01-16 | 3 |
| Y13 | B13F | Progress Notes | Subsequent to hearing | Asthma Action Plan | to 2020-01-16 | 1 |
| Y13 | B14F | Progress Notes | Subsequent to hearing | Childrens Healthcare Of Atlanta | 2019-07-15 to 2020-01-16 | 241 |
| Y13 | B15F | Hospital Records | | Childrens Healthcare Of Atlanta | 2020-02-26 to 2020-02-26 | 8 |
| Y13 | B16F | Education Records - Medical | | Sylvan Hills Middle School | 2019-12-05 to 2020-12-07 | 36 |
| Y13 | B17F | Hospital Records | | Childrens Healthcare Of Atlanta | 2020-07-11 to 2021-06-11 | 537 |

| Y13 | B18F | Consultative Examination Report | Dawn M Allen, PhD | to 2017-10-25 | 5 |
| Y13 | B19F | Consultative Examination Report | Tiffany Strawbridge Lee Md | to 2012-05-01 | 5 |
| Y13 | B20F | Consultative Examination Report | Charles Stephen Hamby PhD | to 2013-05-13 | 5 |
| Y13 | B21F | Hospital Records | Grady Health System | 2007-11-06 to 2008-06-13 | 29 |
| Y13 | B22F | Medical Evidence of Record | Psychiatric Consultants Of Atlanta | 2013-01-01 to 2013-12-03 | 8 |
| Y13 | B23F | Progress Notes | Childrens Healthcare Of Atlanta | 2021-10-05 to 2022-02-01 | 158 |