# Exhibit A



**SOCIAL SECURITY ADMINISTRATION**

Office of Hearings Operations
Suite 500, Marquis 1
245 Peachtree Ctr. Avenue
Atlanta, GA 30303-9913

Date: July 27, 2022


Christopher O'Neal Reynolds
7505 Ann Street
Riverdale, GA 30274

## Notice of Decision – Unfavorable

I carefully reviewed the facts of your case and made the enclosed decision. Please read this notice and my decision.

**If You Disagree With My Decision**

If you disagree with my decision, you may file an appeal with the Appeals Council.

**How To File An Appeal**

To file an appeal you or your representative must ask in writing that the Appeals Council review my decision.  The preferred method for filing your appeal is by using our secure online process available at https://www.ssa.gov/benefits/disability/appeal.html.

You may also use our Request for Review form (HA-520) or write a letter.  The form is available at https://www.ssa.gov/forms/ha-520.html.  Please write the Social Security number associated with this case on any appeal you file.  You may call (800) 772-1213 with questions.

Please send your request to:

**Appeals Council**
**5107 Leesburg Pike**
**Falls Church, VA 22041-3255**


Form HA-L76-OP2 (03-2010)
**Suspect Social Security Fraud?**
**Please visit http://oig.ssa.gov/r or call the Inspector General's Fraud Hotline**
**at 1-800-269-0271 (TTY 1-866-501-2101).**

See Next Page

Christopher O'Neal Reynolds (BNC#: 21MT340K80182)    Page 2 of 3

**Time Limit To File An Appeal**

You must file your written appeal **within 60 days** of the date you get this notice.  The Appeals Council assumes you got this notice 5 days after the date of the notice unless you show you did not get it within the 5-day period.

The Appeals Council will dismiss a late request unless you show you had a good reason for not filing it on time.

**What Else You May Send Us**

You or your representative may send us a written statement about your case.  You may also send us new evidence.  You should send your written statement and any new evidence **with your appeal**.  Sending your written statement and any new evidence with your appeal may help us review your case sooner.

**How An Appeal Works**

The Appeals Council will consider your entire case.  It will consider all of my decision, even the parts with which you agree.  Review can make any part of my decision more or less favorable or unfavorable to you.  The rules the Appeals Council uses are in the Code of Federal Regulations, Title 20, Chapter III, Part 416 (Subpart N).

The Appeals Council may:

- Deny your appeal,
- Return your case to me or another administrative law judge for a new decision,
- Issue its own decision, or
- Dismiss your case.

The Appeals Council will send you a notice telling you what it decides to do.  If the Appeals Council denies your appeal, my decision will become the final decision.

**The Appeals Council May Review My Decision On Its Own**

The Appeals Council may review my decision even if you do not appeal.  If the Appeals Council reviews your case on its own, it will send you a notice within 60 days of the date of this notice.

**When There Is No Appeals Council Review**

If you do not appeal and the Appeals Council does not review my decision on its own, my decision will become final.  A final decision can be changed only under

Christopher O'Neal Reynolds (BNC#: 21MT340K80182)    Page 3 of 3

special circumstances.  You will not have the right to Federal court review.

**New Application**

You have the right to file a new application at any time, but filing a new application is not the same as appealing this decision.  If you disagree with my decision and you file a new application instead of appealing, you might lose some benefits or not qualify for benefits at all.  If you disagree with my decision, you should file an appeal within 60 days.

**If You Have Any Questions**

We invite you to visit our website located at www.socialsecurity.gov to find answers to general questions about social security.  You may also call (800) 772–1213 with questions.  If you are deaf or hard of hearing, please use our TTY number (800) 325–0778.

If you have any other questions, please call, write, or visit any Social Security office.  Please have this notice and decision with you.  The telephone number of the local office that serves your area is (866) 331–2215.  Its address is:

> Social Security
> 6670 Merchants Way
> Morrow, GA 30260–1776

> Laura G. McHenry
> Administrative Law Judge

Enclosures:
Decision Rationale

cc:    Kathleen Flynn, Esq.
       315 W. Ponce De Leon
       Avenue, Suite 940
       Decatur, GA 30030

## SOCIAL SECURITY ADMINISTRATION
### Office of Hearings Operations

### DECISION

**IN THE CASE OF**                                    **CLAIM FOR**

Christopher O'Neal Reynolds                 Supplemental Security Income
(Claimant)

_____        _____
(Wage Earner)                                  (Social Security Number)

### JURISDICTION AND PROCEDURAL HISTORY

On August 12, 2020, the claimant filed an application for supplemental security income, alleging disability beginning December 25, 2019.  The claim was denied initially on March 11, 2021, and upon reconsideration on July 29, 2021. Thereafter, the claimant filed a written request for hearing received on August 18, 2021 (20 CFR 416.1429 *et seq.*).  On December 16, 2021, the undersigned held a telephone hearing due to the extraordinary circumstance presented by the Coronavirus Disease 2019 (COVID–19) Pandemic.  All participants attended the hearing by telephone. The claimant agreed to appear by telephone before the hearing and confirmed such agreement at the start of the hearing (Exhibit B9B).  The claimant's primary representative is Kathleen Flynn, an attorney.  At the hearing, the claimant was represented by attorney Kathleen Flynn, the primary representative. Brynne Holt, an attorney and associate of Ms. Flynn, represented the claimant at the hearing.  Mary Cornelius, an impartial vocational expert, also appeared at the hearing.

The claimant alleges that his disability began on December 25, 2019.

The claimant submitted or informed the Administrative Law Judge about all written evidence at least five business days before the date of the claimant's scheduled hearing (20 CFR 416.1435(a)).[1]
### ISSUES

---

[1] As of the date the undersigned is signing this decision, the undersigned has admitted into the Administrative Record all relevant evidence that has been submitted, as enumerated hereinabove.  The undersigned finds that the duty to develop the record has been met and therefore closes the record.  Importantly, because of the central printing process used by the Social Security Administration Office of Hearing Operations, the date affixed to this decision, and the effectuation date thereof, is automatically set five days _after_ the undersigned actually signs the decision.  Therefore, any evidence submitted during this five–day period was done so _after_ the undersigned signed this decision.

Christopher O'Neal Reynolds (BNC#: 21MT340K80182)  Page 2 of 21

The issue is whether the claimant is disabled under section 1614(a)(3)(A) of the Social Security Act.  Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

Although supplemental security income is not payable prior to the month following the month in which the application was filed (20 CFR 416.335), the undersigned has considered the complete medical history consistent with 20 CFR 416.912.

After careful consideration of all the evidence, the undersigned concludes the claimant has not been under a disability within the meaning of the Social Security Act since August 12, 2020, the date the application was filed.

## APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has established a five–step sequential evaluation process for determining whether an individual is disabled (20 CFR 416.920(a)).  The steps are followed in order.  If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the undersigned must determine whether the claimant is engaging in substantial gainful activity (20 CFR 416.920(b)).  Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful.  "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 416.972(a)).  "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 416.972(b)).  Generally, if an individual has earnings from employment or self–employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA (20 CFR 416.974 and 416.975).  If an individual engages in SGA, he is not disabled regardless of how severe his physical or mental impairments are and regardless of his age, education, and work experience.  If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the undersigned must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 416.920(c)).  An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities.  An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's

Christopher O'Neal Reynolds (BNC#: 21MT340K80182)  Page 3 of 21

ability to work (20 CFR 416.922, Social Security Rulings (SSRs) 85–28 and 16–3p).  If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled.  If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, the undersigned must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926).  If the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listing and meets the duration requirement (20 CFR 416.909), the claimant is disabled.  If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the undersigned must first determine the claimant's residual functional capacity (20 CFR 416.920(e)).  An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments.  In making this finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 416.920(e) and 416.945; SSR 96–8p).

Next, the undersigned must determine at step four whether the claimant has the residual
functional capacity to perform the requirements of his past relevant work (20 CFR 416.920(f)).  The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established.  In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 416.960(b) and 416.965).  If the claimant has the residual functional capacity to do his past relevant work, the claimant is not disabled.  If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 416.920(g)), the undersigned must determine whether the claimant is able to do any other work considering his residual functional capacity, age, education, and work experience.  If the claimant is able to do other work, he is not disabled.  If the claimant is not able to do other work and meets the duration requirement, he is disabled.  Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration.  In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that

See Next Page

Christopher O'Neal Reynolds (BNC#: 21MT340K80182)  Page 4 of 21

other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 416.912 and 416.960(c)).

## <u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>

After careful consideration of the entire record, the undersigned makes the following findings:

**1.  The claimant has not engaged in substantial gainful activity since August 12, 2020, the application date (20 CFR 416.971 *et seq.*).**

**2.  The claimant has the following severe impairments: degenerative joint disease (lumbar spine), obesity, post-traumatic stress disorder (PTSD), gout (foot), and bipolar disorder (20 CFR 416.920(c)).**

The above medically determinable impairments significantly limit the ability to perform basic work activities as required by SSR 85-28.

The claimant's hearing loss not treated with cochlear implant, hypertensive vascular disease, substance addiction disorders (alcohol and drugs), and right hammer toe are not severe impairments.  The undersigned considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity.  Social Security Ruling 85-28 states that an impairment is found "not severe" when medical evidence establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work.  Basic work activities are the abilities and aptitudes necessary to do most jobs.  Examples of these include functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision and coworkers; and dealing with changes in a routine work setting (SSR 85-28).

The claimant alleges difficulty with hearing (Exhibit B2A/8) and has hearing loss not treated with a cochlear implant.  Per notes provided by the non-examining medical reviewers at the state agency Disability Determination Services (DDS), they spoke with the claimant in February 2021, and he informed them that he has no problem with hearing and no difficulty understanding conversation (Exhibit B2A/7).

The claimant has hypertension vascular disease.  He has stated that he was assessed with hypertension in 2015 or 2016 and reported that the condition is under good control with medication (Exhibit B17F/7, 9).  Despite hypertension, he continued to smoke cigarettes during the relevant period (Exhibit B15F/26).

See Next Page

Christopher O'Neal Reynolds (BNC#: 21MT340K80182) Page 5 of 21

Notably, the record reflects that he has no primary care physician and that his blood pressure medication is prescribed by a psychiatrist (Exhibit (B15F/38).

The record demonstrates that the claimant has substance addiction disorders (alcohol and drugs), (Exhibits B4F/28; B6F/10, 11,78; B9F/38; B20F/38, 74, 139). He was diagnosed with polysubstance disorder in 2015 (Exhibit B6F/14), and with moderate cannabis disorder and moderate cocaine stimulant use disorder in 2018 (Exhibits B6F/52, 80; B11F/32, 79). He reports using ecstasy until 2016 (Exhibit B11F/69). The claimant stated during a brief voluntary hospitalization in April 2019 that he consumed one beer per day; however, he then retracted that statement and reported consuming over six beers and a pint of gin daily (Exhibit B7F/10). He also has a history of tetrahydrocannabinol (THC) usage and reported smoking marijuana occasionally (Exhibits B6F/11; B7F/10, 17; B8F; B11F/50). He was assessed in April 2019 with alcohol dependence (Exhibit B7F/7). He reported using alcohol and/or drugs in March 2020 (Exhibit B20F/38).

The claimant was assessed by consultative physical examiner Oluropo Ayeni, M.D., with hammer toe of the right foot (Exhibit B17F/10). The claimant reported a history of a gunshot wound to the right foot when he was age 21 and that he never had surgery for the condition (Exhibits B17F/7; B20F/6). X–ray studies of the right foot on February 11, 2021, revealed a hallux valgus deformity with post–traumatic deformity to the distal aspect of the third metatarsal bone without any acute finding (Exhibit B17F/11). The complaint complained of a swollen left foot and pain on the side of the big toe and noted that this happens once in a while and then goes away (Exhibit B19F/36). There is no evidence of venous insufficiency in the bilateral lower extremities (B19F/37).

The undersigned has reviewed and considered the medical evidence of record and finds that it supports a determination that hearing loss not treated with cochlear implant, hypertensive vascular disease, substance addiction disorders (alcohol and drugs), and right hammer toe cause no more than minimal functional work limitations, and therefore are not severe impairments.

There is no objective medical evidence that the claimant has been medically diagnosed with Bell's Palsy; therefore, the condition is not a medically determined impairment. The claimant says that he was stabbed in the face in 2015 and that this caused him to have Bell's palsy in the face; however, there is no objective medical evidence that shows this is a medically determined impairment (Exhibit B17F/7).

**3.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).**

See Next Page

Christopher O'Neal Reynolds (BNC#: 21MT340K80182)  Page 6 of 21

The undersigned administrative law judge has reviewed the record and finds
that the claimant
does not have a mental or physical impairment that meets or equals the
requirements of any section of Appendix 1 (Exhibits B1E–B23F). Additionally,
Section 1.00, *Musculoskeletal disorders*, and Listing 1.15: *Disorders of the
skeletal spine* have been considered.  The claimant does not meet or equal
listing level criteria.

The severity of the claimant's mental impairments, considered singly and in
combination, do not meet or medically equal the criteria of Listings 12.04,
12.06, and 12.15.  In making this finding, the undersigned has considered
whether the "paragraph B" criteria are satisfied.  To satisfy the "paragraph B"
criteria, the mental impairments must result in one extreme limitation or two
marked limitations in a broad area of functioning.  An extreme limitation is the
inability to function independently, appropriately, or effectively, and on a
sustained basis.  A marked limitation is a seriously limited ability to function
independently, appropriately, or effectively, and on a sustained basis.

In understanding, remembering, or applying information, the claimant has a
moderate limitation. The claimant says that he does not follow written or
spoken instructions (Exhibit B10E/7).  J. Tendler, M.D., a non–examining mental
reviewer for the state agency Disability Determination Services (DDS), opines
that the claimant has no limitations in the capacity to understand and
memorize simple instructions or detailed instructions and notes that the
claimant reported that he manages his own funds (Exhibit B4A/19). In the
medical record, the claimant stated in July 2020 that he had been painting his
house and working in the yard (Exhibits B11/88; B15F/4; B20F/95).  He also
reported that he liked to draw, tattoo, and train dogs (Exhibit B6F/14). While
the claimant was noted to have impaired short–term memory in a treatment
visit (Exhibit BB9F/5), his mental status examinations mostly show intact
memory (See, e.g., Exhibits B11F/97, B15F/17, B20F/86–87).

Regarding interacting with others, the claimant has a moderate limitation.  The
claimant reports that regarding authority figures, he trusts no one (Exhibits
B10E/7; B11F/58).  Dr. Tendler stated that the claimant has moderate
limitations in the ability to interact appropriately with the general public
(Exhibit B4A).  Consultative physical examiner Oluropo Ayeni, M.D., noted that
during evaluation on February 11, 2021, the claimant was cooperative and
interacted appropriately (Exhibit B17F/5, 8).

Regarding concentrating, persisting, or maintaining pace, the claimant has a
moderate limitation.  The claimant alleges that he does not finish what he starts
(Exhibit B10F/7).  Dr. Tendler stated that the claimant is not significantly
limited in the ability to sustain concentration and persistence (Exhibit B4A/19).
Dr. Ayeni reported that the claimant had normal cognition (Exhibit B17F/9).

See Next Page

Christopher O'Neal Reynolds (BNC#: 21MT340K80182)  Page 7 of 21

Clayton Center progress notes dated July 29, 2020, reflect that the claimant reports painting his house and doing yard work, activities that demonstrate concentration, persistence, and pace (Exhibit B15F/4).

As for adapting or managing oneself, the claimant has experienced a moderate limitation.  The claimant says that he can attend to personal care independently and take medication without reminders (Exhibit B10E/3, 4).  Dr. Tendler notes that the claimant is not significantly limited in the ability to use public transportation and travel independently; can maintain an acceptable level of attendance; and can adequately adapt to changes in routine and to simple situations that do not call for rapid or extensive changes in work tasks or procedures (Exhibit B4A/22).  The claimant reports in progress notes dated April 19, 2021, that he was compliant with a prescribed medication regimen, does chores during the day, stays busy, takes care of his dog, has a good appetite, and sleeps well (Exhibit B21F/21).  Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.

The undersigned has also considered whether the "paragraph C" criteria are satisfied.  In this case, the evidence fails to establish the presence of the "paragraph C" criteria.  The record does not establish that the claimant has only marginal adjustment, that is, a minimal capacity to adapt to changes in the claimant's environment or to demands that are not already part of the claimant's daily life.

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process.  The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning.  The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

**4.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 416.967(b) except lifting 20 pounds occasionally and 10 pounds frequently; carrying 20 pounds occasionally and 10 pounds frequently; sitting for 6 hours; standing for 4 hours; walking for 4 hours; push/pull as much as can lift/carry; he can operate foot controls bilaterally occasionally; and he can operate hand controls bilaterally frequently. The claimant can reach overhead occasionally bilaterally. The claimant can climb ramps and stairs occasionally; can never climb ladders, ropes, or scaffolds; and balance frequently, stoop occasionally, kneel occasionally, crouch occasionally, and crawl occasionally. The claimant can never work at unprotected heights,**

**can never work around moving mechanical parts, can work in extreme cold occasionally, and can work in vibration occasionally.  He can work in moderate noise. The claimant can perform simple, routine tasks with simple instructions and simple work-related decisions.  He can work in environments with occasional changes in workplace settings and routines. The claimant can have occasional interaction with supervisors and with co-workers, and no interaction with the public.**

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSR 16-3p. The undersigned also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 416.920c.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities.  For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities.

At the hearing, the claimant testified that he is six feet two inches and weighs 285 pounds.  His weight goes up and down due to stress.  He is right-handed, single, and has a driver's license.  He alleges that he does not drive because he cannot control his right hand as he has arthritis in the right elbow and hand. He takes Ibuprofen and has no primary care doctor.  He completed the eighth grade.  He has PTSD due to being stabbed in the face in prison.  He has flashbacks daily lasting one to five minutes each.  He has panic attacks daily that last for about 15 minutes.  His memory is good, but the flashbacks interfere with his concentration.  He has gout in the foot but had not had a flare for a month prior to the hearing.  He testified that he has flares about once a month that last for about two weeks at a time.  His stated that his diet is not very good (on-the-go food). He stays with friends (Hearing testimony).

See Next Page

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

When considering the factors in Social Security Ruling 16–3p, there is evidence that is consistent with the claimant's allegations.  He reports that he has had lower back pain since 2013 without any precipitating event (Exhibit B17F/7). He has been assessed by Dr. Ayeni, a consultative physical examiner, with degenerative joint disease with lumbar radiculopathy (Exhibit B17F/10).  He has also been assessed with gouty arthritis of the foot (Exhibits B2A/16); B17F/10). Treating psychiatrist Ramesh Amin, M.D., has assessed the claimant with bipolar disorder and PTSD and has also advised that the claimant should walk regularly (Exhibits B15F/29; B20F/18, 46, 47, 130).

The record demonstrates that the claimant is obese (Exhibits B10F/24; B15F/53; B17F/8, 10).  He is six feet one inch and weighted around 285 pounds in August 2021, with a body mass index above 30 (Exhibit B21F/24).  In accordance with Social Security Ruling 19–2p, obesity has been considered in evaluating the claimant's residual functional capacity.  However, the record does not document any significant problems secondary to obesity that would reduce the claimant's residual functional capacity beyond that discussed herein.

Although there is some evidence that lends some support to the claimant's allegations, his allegations are not entirely consistent with the evidence when considering the factors in Social Security Ruling 16–3p.

Regarding the claimant's physical impairments, the claimant presented to the emergency room in September 2018 after a fall, with complaints of right shoulder and left knee pain (Exhibit B19F/6). Objective examination of the right shoulder and left knee showed tenderness but no swelling, crepitus, or deformity. He otherwise showed normal range of motion (Exhibit B19F/7). X–rays of the shoulder and knee showed no acute findings (Exhibit B19F/8). Dr. Ayeni reports that the claimant could get on and off the examination table without assistance and did not use an assistive device for ambulation (Exhibit B17F/10).  X–ray studies of the lumbar spine in February 2021 show disc spaces preserved with no acute osseous findings (Exhibit B16F/2).  Dr. Ayeni stated per consultative examination notes dated February 11, 2021, that the claimant had an antalgic gait at that time; however, multiple physical exams of record show the claimant with a normal musculoskeletal range of motion and/or normal gait (see, e.g., Exhibits B7F/11; B9F/18, 27, 38; B19F/16, 25, 37). The claimant has reported that he uses a cane sometimes and acknowledges that it was not prescribed by a doctor (Exhibit B10E/8).  Despite degenerative disc disease, the claimant walks, uses public transportation,

travels alone, and shops in stores (Exhibit B10E/5).  Although the claimant presented to the emergency room (ER) for a swollen left foot and pain on June 14, 2021, examination showed that he had no inability to bear weight (Exhibit B19F/36).  He reported that this happened "every once in a while" and went away (Exhibit B19F/36). He had normal range of motion in the cervical spine and tenderness, erythema, and swelling in the MTP joint of the left foot (Exhibit B19F/37). The claimant was diagnosed with gouty arthritis.

Regarding mental impairment, his history reflects that the claimant was diagnosed with polysubstance disorder and major depression at Jenkins Correctional Facility/Center in 2015 (Exhibits B6F/14; B20F/5).  He was assessed with PTSD in 2016 after being stabled in the face while in prison (Exhibit B17F/7).  At Clayton Center in March 2017, he was diagnosed with moderate bipolar disorder (Exhibit B6F/14).  Prior to the relevant period, he had a voluntary hospital admission for temporary observation due to suicidal thoughts in April 2019 and was assessed with bipolar disorder, PTSD, and alcohol dependence (Exhibit B7F/7, 16).  During the admission, he acknowledged that he was not taking his medications prior to the hospitalization (Exhibit B7F/5, 10).

The claimant has received treatment at Clayton County Center, including medication management, individual counseling, and case management services (Exhibit B9F/2, 3, 8).
These services appear to be part of his probation requirements for at least part of the relevant period (Exhibits B6F/1, 14; B9F/2; B11F/69, 84).  Psychiatrist Ramesh Amin, M.D., has provided the claimant with medication management, and the claimant also sees a counselor (Exhibit B7F/10). The claimant has reported symptoms including depressed mood, crying spells, flashbacks, hallucinations, paranoia, and low energy (Exhibit B9F/3).

The claimant's mental health progress notes reflect that he has reported improvement in symptoms when he is medication compliant.  Progress notes reflect that in July 2019, the claimant reported that he was living with a girlfriend, was compliant with medications, denied suicidal ideations, had a stable mood, had no agitation, and became paranoid at times (Exhibit B9F/12). Treatment notes in November 2019 show that the claimant presented to the Clayton Center to have his services reauthorized (Exhibit B9F/3). He reported continued symptoms including depressed mood, crying spells, flashbacks, hallucinations, paranoia, and low energy. Upon objective examination, the claimant was cooperative, his speech and thought content were within normal limits, and his thought process was normal. However, he had impaired short–term memory, had an anxious, depressed, and irritable mood, and reported auditory and visual hallucinations (Exhibits B9F/5; B20F/25).  At time he was homeless, and his counselor noted the need for stable housing to decrease symptoms and stress (Exhibits B9F/7; B20F/27).

See Next Page

Christopher O'Neal Reynolds (BNC#: 21MT340K80182)Page 11 of 21

Progress notes dated January 22, 2020, reflect that the claimant reported that he had been depressed "ever since he was denied disability" (Exhibits B9F/32; B20F/73).  His mental status examination showed that the claimant was calm, with a euthymic mood, grossly intact memory, and coherent thought process; and no hallucinations or suicidal ideations (Exhibits B9F/34–35; B20F/75–76). He was diagnosed with moderate bipolar I disorder and post-traumatic stress disorder. In April 2020, progress notes reflected that the claimant had gotten another support dog, that he had been enjoying the dog, and that the dog had made a big difference for him during a difficult time while he awaited a disability hearing (Exhibits B10F/13; B11F/17; B20F/84).  Upon examination, his mood was euthymic, his memory was grossly intact, and he denied hallucinations or suicidal ideations (Exhibits B10F/15–16; B11F/19–20; B20F/86–87).  He stated in July 2020 that he had been painting his house and working in the yard (Exhibits B11/88; B15F/4; B20F/95).  He also reported that he liked to draw, tattoo, and train dogs (Exhibit B6F/14).  On October 28, 2020, the claimant reported that his medications were working, he was sleeping well, had no nightmares, and was calmer (Exhibits B15F/15; B11F/99; B20F/106). Progress notes dated January 28, 2021, show that the claimant reported being "a whole lot calmer," did not have any nightmares, and denied suicidal/homicidal ideations and auditory/visual hallucinations (Exhibit B15F/55).  The claimant stated in April 2021 that he paid bills, did chores, and tried to stay busy. His medication helped with mood and agitation, and his sleep and appetite were okay (Exhibit B20F/127).  The claimant chose to continue with county services, including medication management and individual therapy in June 2021 (Exhibit B21F/17).

As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are not entirely consistent with the medical evidence of record. The claimant says that he does not cook because he blacks out.  While the claimant's acquaintance Selena Nesbit stated that the claimant does not cook, she did note that he makes sandwiches (Exhibits B4E/3; B10E/4).  Further, the claimant reported that he has worked in hotels and fast-food restaurants, and that "he has been a cook all his life" (Exhibits B8F/12; B11F/75; B20F/73).  The claimant has also stated that he is unable to work because he cannot focus; however, he also reports that he enjoys taking care of and training dogs, activities that require the ability to focus (Exhibits B6F/14; B15F/15, 25).

As for medical opinion(s) and prior administrative medical finding(s), the undersigned cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources. The undersigned has fully considered the medical opinions and prior administrative medical findings as follows.

See Next Page

Christopher O'Neal Reynolds (BNC#: 21MT340K80182)Page 12 of 21

The prior administrative medical findings at the initial level in February 2021 by J. McWatters, M.D., a non-examining medical reviewer for the state agency Disability Determination Services (DDS), concluded that the claimant is limited to sedentary work with occasional overhead reaching bilaterally; however, the physical residual functional capacity is somewhat persuasive (Exhibit B2A). While Dr. McWatters supported the opinion with an explanation and citations to the record (Exhibit B2A/16), the limitation to sedentary work is too limiting for what the objective medical evidence of record in fact shows.  The claimant has a history of chronic pain in the right foot/ankle due to an old gunshot wound to the right foot, and February 2021 x-ray studies of the right foot show deformity to the third metatarsal bone without any acute finding (Exhibits B4A/11; B17F/11).  While the claimant showed positive straight leg raising during the consultative examination, the x-ray of the lumbar spine showed no acute osseous findings, including preserved disc spaces and congruent facet joints (Exhibit B16F). The claimant has also been diagnosed with gouty arthritis and suffers from obesity. Although the record shows that the claimant has had both a normal gait and an antalgic gait, the medical need for a cane or any assistive device is not established (Exhibit B17F/5, 10). Given the claimant's ability to perform some chores around the house, including yard work and painting, a light exertional level with reduced standing and walking is more consistent with the limited physical examinations and with the claimant's daily activities. The limitation to occasional overhead reaching is generally persuasive and consistent with the medical evidence showing degenerative joint disease and limited range of motion with pain (Exhibit B19F/7).  While Dr. McWatters found that the claimant could occasionally balance and could never kneel or crawl, the undersigned does not find these limitations consistent with the claimant's daily activities as discussed previously, including household chores, which have included yard work and painting (Exhibits B11F/88; B15F/4; B20F/95).

The prior administrative medical findings at the reconsideration level in July 2021 by H. Moghbeli, M.D., a non-examining medical reviewer for the DDS, determined that the claimant is capable of light work with frequent overhead reaching bilaterally (Exhibit B4A).  Dr. Moghbeli's opinion for light work is generally persuasive. Dr. Moghbeli did provide an explanation for the opinion, with citations to the record (Exhibit B4A/12).  The overall residual functional capacity from Dr. Moghbeli is generally consistent with the longitudinal medical evidence of record.  A finding of light work with reduced standing and walking requirements is consistent with the evidence showing degenerative disc disease of the lumbar spine, medication for gout, and an old gunshot wound to the right foot that causes chronic pain, but no prescription for a cane is noted. While restrictions in overhead reaching are consistent with the medical evidence, the undersigned finds that consistent with the initial DDS opinion, occasional overhead reaching is more consistent with the objective evidence, given the limited shoulder abduction bilaterally and limited left elbow and forearm flexion in the consultative examination. Overall, the undersigned found

the postural limitations less persuasive. While Dr. Moghbelie found that the claimant could occasionally balance and could never kneel or crawl, the undersigned does not find these limitations consistent with the claimant's daily activities, including household chores, which have included yard work and painting (Exhibits B11F/88; B15F/4; B20F/95).

Regarding mental impairments, the prior administrative psychological findings at the initial level by Aroon Suansilppongse, M.D., a non-examining medical reviewer for the DDS, are somewhat persuasive (Exhibit B2A). Dr. Suansilppongse opined that the claimant has the mental capacity for simple work-related activity (1-2 step tasks) with infrequent contact with co-workers and the public.  The mental functional capacity is generally persuasive. Dr. Suansilppongse provided a well-reasoned explanation for his opinion, with citations to the available medical evidence (Exhibit B2A/16). Given the claimant's documented symptoms, including some mood swings, paranoia, and inability to focus, limitations to simple instructions with an ability to complete work at an acceptable pace are persuasive as it is consistent with the claimant's mental status examinations in the longitudinal record (See, e.g., Exhibits B11F/97, B15F/17). However, the opinion that the claimant's transient cognitive dysfunction, depressive reaction, and polysubstance abuse would "occasionally" interfere with adaptability is less persuasive as it is not clearly defined. Dr. Suansilppongse did not specifically define what "occasional" interference means or provide any specific functional limitations related to interference with adaptability, which lessens its helpfulness in assigning specific functional limitations. The undersigned has addressed any cognitive and adaptation concerns with the limitation to only occasional changes in workplace settings and routines, which will limit the claimant's exposure to stressful situations or demands that could require the claimant to react emotionally and trigger psychological symptoms. The limitation to simple, routine tasks, which by their nature are less stressful and require less focus to maintain production standards and pacing, also addresses concentration, persistence, and maintaining pace limitations. The limitation to occasional changes in workplace settings and routines is also meant to address adaptation concerns by limiting the claimant's exposure to stressful situations that could trigger symptoms.

The mental residual functional capacity at the reconsideration level by Dr. Tendler, a non-examining medical reviewer for the DDS, is less persuasive. Dr. Tendler provided an explanation for his opinion, but the opinion is not carefully worded or sufficiently explained, which limits its persuasiveness. For example, Dr. Tendler found that the claimant would have no limitations in the ability to understand and memorize detailed instructions only based on the claimant's ability to manage money. However, Dr. Tendler also found that the claimant could "...adequately adapt to changes of routine, and simple instructions not calling for rapid or extensive changes in work tasks and procedures." He could also tolerate the minimal social demands of 1-2 step simple task settings. The undersigned disagrees with the finding that the claimant has no limitations in

the ability to understand and memorize detailed instructions, and the residual functional capacity reflects limitations in this ability. However, the undersigned interprets the fundamental opinion to limit the claimant to simple tasks and instructions, occasionally changes in routine, and limited social interactions is consistent with the evidence. The undersigned has addressed any pace concerns with the limitation to simple, routine tasks, which are by their nature less stressful and require less focus to maintain production standards and pacing, addresses concentration, persistence, and maintaining pace limitations. The limitation to occasional changes in workplace settings and routines is also meant to limit the claimant's exposure to stressful situations that could trigger symptoms. As explained in this decision, the residual functional capacity is consistent with the longitudinal medical evidence. For example, while there is some worsening of symptoms in the medical evidence of record (See, e.g., Exhibit B20F/17), symptoms also improve, particularly with medication compliance (See, e.g., Exhibits B15F/15; B21F/21, 29).  In progress notes dated April 19, 2021, the claimant reported having flashbacks of being stabbed while in jail and that he was not doing well, specifically mentioning his parents being in the hospital for COVID treatment and his disability appeal having been denied, but also that he was compliant with medication and that it helped with his mood and agitation (Exhibit B21F/21). The longitudinal medical evidence of record also generally shows normal concentration, memory, and thought processes (See, e.g., Exhibits B11F/97, B15F/17, B20F/86–87). Overall, however, his mental health progress notes show that he reports symptom improvement with medication management and compliance (see, e.g., Exhibits B15F/15, 17; B21F/21, 29). Dr. Tendler also found that the claimant would have occasional absences, but he did not define what he meant by occasional, which again lessens the opinion's helpfulness in assigning specific functional limitations and therefore its persuasiveness.

There are several mental impairment questionnaires from Dr. Amin in the record, completed in 2019, 2020, and 2021 (Exhibits 12F, 13F, B22F, and B23F). In a 2019 questionnaire, Dr. Amin's opinion that the claimant had moderate limitations in understanding, remembering, or applying information and marked limitations int the other B criteria. He also opined that the claimant meets the C criteria of applicable listings. This opinion is not persuasive because it is inconsistent with Dr. Amin's treatment notes (Exhibit B12F).  For example, most of the mental status exams by Dr. Amin from show coherent thought, grossly intact memory, calm psychomotor activity, and cooperative attitude (see, e.g., Exhibits B20F/34, 35, 44, 45, 64, 65, 75, 76, 86, 87, 97, 98, 108, 109, 139, 140; B21F/14, 15, 31, 32, 41, 42).  His opinion is also inconsistent with the claimant's longitudinal psychiatric history and clinical presentation. The claimant certainly has some limitations from mental health diagnoses, but this opinion does not have any support or explanation about why specific ratings were given.  Further, Dr. Amin did not provide a sufficient explanation, such as with examples from medical records, to support the opinion that the claimant has experienced marginal adjustment, including

evidence of changes or increased demands in the claimant's daily life have led to periods of deterioration in functioning, e.g., being unable to function out of the home or a more restrictive setting. Further, the undersigned did not note such extreme symptoms or reactions in the medical evidence of record. While the claimant had an inpatient hospitalization in April 2019, this was due to medical non-compliance and alcohol abuse (Exhibits B7F; B8F/1, 14, 18, 20, 22)

Dr. Amin also completed mental health questionnaires in 2020 (Exhibit B13F). In this questionnaire, Dr. Amin again found that the claimant had moderate limitations in understanding, remembering, or applying information and extreme limitations int the other B criteria. He also opined that the claimant meets the C criteria of applicable listings. In support of his opinion, Dr. Amin noted that the claimant has mood swings and is not able to focus (Exhibit B13F/4).  His opinion is unpersuasive because Dr. Amin provided insufficient support for such an extreme opinion, only including a short statement without any reference to treatment records.  It is also overall incongruent with treatment notes.  For example, the claimant reported in March 2020 progress notes that he was compliant with medication and that it was helpful. He denied suicidal thoughts and hallucinations and reported eating and sleeping well (Exhibit B10F/25). Further, most of the mental status exams with Dr. Amin coherent thought, grossly intact memory, calm psychomotor activity, and cooperative attitude (see, e.g., Exhibits B20F/34, 35, 44, 45, 64, 65, 75, 76, 86, 87, 97, 98, 108, 109, 139, 140; B21F/14, 15, 31, 32, 41, 42).

The undersigned also considered Dr. Amin's opinion that the claimant's bipolar disorder and PTSD are separate and apart from his history with drug and/or alcohol use disorders and that the claimant has bipolar disorder and PTSD when not consuming drugs or alcohol (Exhibits B13F and B14F). Overall, the undersigned notes that this opinion is provided in a short sentence, fill-in-the-blank format, and Dr. Amin did not provide adequate support for its rendered opinion, including references to medical findings from treatment records. Notably, the two opinions provide different dates for their applicability without any explanation, with Exhibit B14F stating that the mental health diagnoses have existed separate from drug and alcohol abuse since 2009, and Exhibit B13F states that the mental health diagnoses have existed separate from drug and alcohol abuse since 2013. The undersigned finds this opinion that the claimant's diagnoses exist outside of drugs and alcohol to be persuasive solely because it is consistent with the medical evidence of record (see, e.g., Exhibit B11F/50).  However, Dr. Amin's opinion that the claimant is "disabled" from these conditions is not inherently useful or persuasive pursuant to 20 CFR 404.1520b(c) and 416.920b(c), and the undersigned therefore has not provided articulation about this opinion.

Exhibit B22F is another mental health questionnaire from Dr. Amin. In this 2021 opinion, Dr. Amin included extreme limitations in concentration, persistence,

and pace and in adaption but marked in social interaction and moderate in understanding, remembering, or applying information. Dr. Amin only provided a hand–written explanation that was difficult to read, although it appeared to be a list of symptoms that included crying spells. This opinion is also unpersuasive, as "extreme" ratings are not consistent with treatment notes or even with the claimant's daily functioning.  The undersigned acknowledges that there has been a waxing and waning of the claimant's symptoms, but not to the degree that the claimant has any extreme or even marked limitations. For example, Dr. Amin notes "poor/none" ability as far as adjusting to simple job instructions, yet his mental status examinations of the claimant generally show memory grossly intact (Exhibit B6F, 2186; B7F/12; B9F/14: B21F/31, 41).  On November 1, 2019, the claimant was noted to have impaired short–term memory (Exhibit B9F/5); however, on January 22, 2020, he had grossly intact memory (Exhibit B9F/34).  While the claimant's mood is sometimes noted as "irritable," "anxious," or "depressed" in some treatment visits (Exhibits B21F/41; B6F/86; B9F/5; B21F/41; Exhibits B21F/14, B15F/41), in other visits it is noted to be euthymic (Exhibits B11F/19, 101; B15F/28; B20F/132).  The claimant is also generally described as cooperative, even when his mood is described as irritable or anxious (Exhibits B6F/40, 50, 86; B9F/24; B10F/5; B15F/39). Given the opinion's inconsistency with the medical evidence and lack of sufficient support, the undersigned finds this opinion unpersuasive.

The B criteria ratings in Dr. Amin's 2021 PTSD questionnaire are not persuasive as Dr. Amin did not provide support for the opinion, and it is generally inconsistent with the longitudinal evidence (Exhibit 23F). The undersigned notes that the ratings are less severe than they are in the other mental health evaluations completed by him. For example, in understanding, remembering, or applying, the claimant is rated as slight; however, for Listing 12.04, Dr. Amin rated the claimant as having a moderate limitation in this area (Exhibit B13F/3). In concentrating, persisting, or maintaining pace, Dr. Amin rated the claimant as having a moderate limitation. For Listing 12.04, Dr. Amin rated the claimant as an extreme limitation (Exhibit 22F).  There is no explanation for the differences between these opinions. Dr. Amin also opined that the claimant has "marked" limitation in interacting with others and in adapting or managing self and that he meets the C criteria for the applicable listing. Dr. Amin's opinion is overall unpersuasive. First, he did not support his opinion an explanation, including with citations treatment notes or objective testing.  Further, this opinion is not supported by the claimant's 2021 medical records, which show overall improvement in symptoms with continued medical compliance (See, e.g., Exhibits B15F/26, B21F/21, 39).

Consultative physical examiner Dr. Ayeni did not provide any opinion regarding functional limitations (ExhibitB17F).  The undersigned, however, considered the examination and report when formulating the residual functional capacity in this decision.

Pursuant to 20 CFR 404.1520c(d) and 416.920c(d), the undersigned is not required to articulate how evidence from non-medical source was considered using the requirements in paragraphs (a)- (c) of 20 CFR 404.1520c and 416.920c. This includes the third-party function report from Salena Nesbit, an acquaintance of the claimant (Exhibit B4E).  Nonetheless, the undersigned has considered the entire evidence of record as whole, to include any evidence not dispositive to the findings or final determinations by the undersigned.

Based on the foregoing, the undersigned finds the claimant has the above residual functional capacity assessment, which is supported by the medical evidence of record.  This is a Title XVI application and is the claimant's second disability application; his prior application was denied by an Administrative Law Judge on December 24, 2019 (Exhibit B1A).  Although the claimant alleges an onset date of December 25, 2019, his protective filing date is August 12, 2020, which would be the earliest allowable onset date.  The claimant testified that he has an eighth-grade education; however, he told doctors and reported in his disability application that he has a ninth-grade education (Exhibits B1F/4, 7; B2E/3; B6F/86; B7F/11).  For purposes of his application, there is no distinction, as he is considered to have a limited education whether he completed the eighth or ninth grade.  Notably, he has also reported that he completed the eleventh grade (Exhibit B11F/74) and that he started a GED class but did not complete it (Exhibit B6F/2).  Additionally, the claimant has stated in the record that he has no difficulty with reading (Exhibit B20F/6).  He has reported that he had special education services; however, the record does not show any objective evidence that the claimant received special education services in school (Exhibit B1F).

In summary, the alleged symptom severity is not supported by the medical evidence of record.  The record contains minimal physical evaluations.  The claimant has degenerative joint disease of the lumbar spine and has had both an antalgic gait and a normal gait during the relevant period (Exhibits B7F/11; B17F/5, 10).  X-ray studies of the lumbar spine in February 2020 show no acute osseous findings (B16F/2).  He is also obese (Exhibit B17F/8, 10).  Acquaintance Nesbit says that the claimant does not use any assistive devices for ambulation (Exhibit B4E/8).  Dr. Ayeni noted that the claimant had an antalgic gait but did not require any assistive device (Exhibit B17F/10).  There is no evidence of end organ abnormality from treatment for hypertension.  The residual functional capacity provides for reduced standing/walking due to degenerative disc disease and obesity, particularly as the consultative examination showed an antalgic gait.  The overhead reaching limitations are based on the DDS opinions and on the consultative exam findings, which showed decreased abduction of the shoulders.

The claimant clearly has mental limitations from his mental health diagnoses, and the claimant's symptoms are adequately addressed by the limitations included in the residual functional capacity.  While the claimant did have an

Christopher O'Neal Reynolds (BNC#: 21MT340K80182)Page 18 of 21

inpatient psychiatric hospitalization in April 2019, immediately before the relevant period, even this episode was resolved without issue and involved alcohol abuse and medication non-compliance for two weeks prior to the admission (Exhibits B7F; 8F/1, 14, 18, 20, 22).  The claimant was noted as depressed and unkept, but he had coherent thought process and good recent and remote memory with intact/appropriate judgment (Exhibit B8F/13). Further, the longitudinal medical evidence of record does not support disabling symptoms. Though the claimant's symptoms have waxed and waned, the above residual functional capacity accounts for the claimant's conditions during symptomatic periods, and the record would not support a finding that during symptomatic periods that work within this residual functional capacity could not be performed.  For example, the claimant can go to the hospital and seek treatment for his physical medical needs without problems from his mental health diagnoses (Exhibit B19F).  He interacted appropriately during the consultative examination (Exhibit B17F).  At one treatment visit, the claimant noted his symptoms and then stated that he was trying "to stay active and keep his mind busy" (Exhibits B9F/21; B20F/62). The claimant has also reported being able to care of his dog, doing some chores, and trying to stay busy (Exhibit B21F/21). A review of the mental status examinations of record show that in November 2019, the claimant had impaired short-term memory (B9F/5), and in June 2021 had pressured speech and language (B20F/17). However, in January 2020 (Exhibit B9F), October 2020 (Exhibit B11F/97), and January 2021 (Exhibit B15F/17), he was calm with normal speech and normal thought content.  His treatment notes show that he reported symptom reduction and doing well when compliant with prescribed medication, and he also generally has stable mental status evaluations (see, e.g., Exhibits B6F/58, 78; B20F/53; 55, 56, 84, 86. 87, 106, 117, 119, 120, 127, 129, 130). While the claimant has in some records reported hallucinations (see, e.g., Exhibits B9F/5; B17F; B20F/25), he has mostly denied hallucinations (see, e.g., Exhibits B20F/87, 104, 130; B15F/7, 55).  Therefore, the evidence of record supports a determination that the claimant can perform simple tasks and requires work in environments with occasional changes in workplace settings and routines**. **The limitation to these simple, routine tasks, which are by their nature less stressful and require less focus to maintain production standards and pacing, addresses concentration, persistence, and maintaining pace limitations in addition to the other B-Criteria. The residual functional capacity addresses any pace and adaptation concerns with the limitation to simple, routine tasks, which are by their nature less stressful and require less focus to maintain production standards and pacing, addresses concentration, persistence, and maintaining pace limitations. The limitation to occasional changes in workplace settings and routines is also meant to limit the claimant's exposure to stressful situations and emotional responses that could trigger symptoms. The DDS psychological consultants opined that the claimant should have only incidental contact with the public and avoid prolonged interpersonal contacts (Exhibit B4A/21). Additionally, the claimant reports that he does not trust authority figures (Exhibit B10E/7).  His combination of severe mental impairments has been

See Next Page

considered in determining that the claimant can have only occasional interaction with supervisors and co-workers and no interaction with the public to avoid triggering anger or irritability in the claimant. The limitation to moderate noise is also meant to limit external forces, such as loud noises, that could cause emotional responses. Further limitations are not consistent with or supported by the medical evidence of record and daily activities, as discussed above.

In conclusion, although the evidence as a whole establishes underlying medical conditions capable of producing some limitations, that evidence neither confirms disabling limitations arising from the claimant's underlying medical conditions, nor does it support a conclusion that the objectively determined medical conditions are of such severity that they could reasonably be expected to give rise to disabling limitations.  After having carefully considered the entire documentary evidence of record, as well as the testimony at the hearing, the undersigned concludes that the claimant retained the residual functional capacity to perform work as described above.

Regarding the claimant's substance use disorders, there is no evidence that the symptoms have worsened or improved because of his substance use disorders (Exhibit B6F/78 [April 5, 2018], B7F/10 [April 22, 2019]).  Dr. Amin opined that the claimant's bipolar disorder and PTSD have existed separate and apart from any history of drug or alcohol use since both 2009 and 2013 (Exhibits B13F; B14F).  By January 22, 2020, the claimant reported being clean from alcohol and drugs for two years (Exhibits B11F/50; B20F/74).

**5.  The claimant is unable to perform any past relevant work (20 CFR 416.965).**

The vocational expert testified that the claimant has past relevant work as a kitchen helper, *Dictionary of Occupational Titles* (DOT) Code 318.687-010, medium, unskilled work, SVP2.
As required by SSR 82-62, this work was substantial gainful activity, was performed long enough for the claimant to achieve average performance, and was performed within the relevant period. The vocational expert opined that a hypothetical individual with the claimant's age, education, and residual functional capacity would be unable to perform the claimant's past relevant work.

Accordingly, the undersigned finds that the claimant is unable to perform past relevant work as actually or generally performed.

**6.  The claimant was born on May 31, 1978, and was 42 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).**

**7.  The claimant has a limited education (20 CFR 416.964).**

**8.  Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 416.968).**

**9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).**

In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical–Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2.  If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical–vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83–11).  When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has non–exertional limitations, the medical–vocational rules are used as a framework for decision-making unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or non–exertional limitations (SSRs 83–12 and 83–14).  If the claimant has solely non–exertional limitations, section 204.00 in the Medical–Vocational Guidelines provides a framework for decision-making (SSR 85–15).

If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical–Vocational Rule 202.17.  However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations.  To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity.  The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative light, unskilled occupations such as a garment sorter, DOT Code 222.687–014, SVP2, with approximately 200,000 jobs in the national economy; an office helper, DOT Code 239.567–010, SVP2, with approximately 160,000 jobs in the national economy; and a routing clerk, DOT Code 222.687–022, SVP2, with approximately 75,000 jobs in the national economy.  The vocational expert testified that answers to questions not addressed in the DOT including an employer's tolerance for additional breaks, being off task, and absences were based upon her observation, experience with employers, and knowledge of job performance.

See Next Page

Christopher O'Neal Reynolds (BNC#: 21MT340K80182)Page 21 of 21

Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the DOT and with the *Selected Characteristics of Occupations Defined* in the *Revised Dictionary of Occupational Titles (SCO)* (Social Security Ruling 00-4p). The vocational expert testified that her opinions regarding limitations not directly addressed by the DOT, such as reduction of the duration of sitting, standing, and walking; types of climbing; and directional reaching, were also based on her observation and knowledge of job performance (Hearing and Exhibit B18E). This explanation is reasonable, and I accept her explanation.

Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.  A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

10. **The claimant has not been under a disability, as defined in the Social Security Act, since August 12, 2020, the date the application was filed (20 CFR 416.920(g)).**

<u>DECISION</u>

Based on the application for supplemental security income filed on August 12, 2020, the
claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

/s/ Laura G. McHenry
Laura G. McHenry
Administrative Law Judge

July 27, 2022
Date

# LIST OF EXHIBITS

## Payment Documents/Decisions

| Component | No. | Description | Received | Dates | Pages |
|---|---|---|---|---|---|
| Y13 | B1A | ALJ Hearing Decision | | 2019–12–24 | 17 |
| Y13 | B2A | T16 Initial Disability Determination Explanation | | 2021–02–17 | 24 |
| Y13 | B3A | T16 Initial Disability Determination Transmittal | | 2021–02–17 | 1 |
| Y13 | B4A | T16 Recon Disability Determination Explanation | | 2021–07–17 | 25 |
| Y13 | B5A | T16 Recon Disability Determination Transmittal | | 2021–07–17 | 1 |

## Jurisdictional Documents/Notices

| Component | No. | Description | Received | Dates | Pages |
|---|---|---|---|---|---|
| Y13 | B1B | SSA–1696 – Claimant's Appointment of a Representative | | 2020–08–04 | 4 |
| Y13 | B2B | T16 Notice of Disapproved Claim | | 2021–03–11 | 5 |
| Y13 | B3B | Fee Agreement for Representation before SSA | | 2021–04–29 | 1 |
| Y13 | B4B | SSA–1696 – Claimant's Appointment of a Representative | | 2021–05–06 | 4 |
| Y13 | B5B | T16 Disability Reconsideration Notice | | 2021–07–29 | 6 |

| Y13 | B6B | Request for Hearing by ALJ | | 2021–08–18 | 1 |
|-----|-----|---------------------------|--|------------|---|
| Y13 | B7B | Request for Hearing Acknowledgement Letter | | 2021–08–31 | 15 |
| Y13 | B8B | Hearing Notice | | 2021–09–24 | 25 |
| Y13 | B9B | Acknowledge Notice of Hearing | | 2021–10–01 | 2 |
| Y13 | B10B | Fee Agreement for Representation before SSA | | 2021–10–21 | 1 |
| Y13 | B11B | SSA–1696 – Claimant's Appointment of a Representative | | 2021–10–21 | 4 |
| Y13 | B12B | Notice Of Hearing Reminder | | | 6 |
| Y13 | B13B | SSA–1696 – Claimant's Appointment of a Representative | | 2021–12–16 | 4 |
| Y13 | B14B | Fee Agreement for Representation before SSA | | 2021–12–16 | 1 |

## Non–Disability Development

| Component | No. | Description | Received | Dates | Pages |
|-----------|-----|-------------|----------|-------|-------|
| Y13 | B1D | Application for Disability Insurance Benefits | | 2020–08–12 | 5 |
| Y13 | B2D | Application for Supplemental Security Income Benefits (Abbreviated) | | 2020–08–12 | 10 |
| Y13 | B3D | Application for Supplemental Security Income Benefits (Abbreviated) | | 2020–08–28 | 7 |

| Y13 | B4D | Certified Earnings Records | | 2021–10–25 | 2 |
| Y13 | B5D | Detailed Earnings Query | | 2021–10–25 | 3 |
| Y13 | B6D | Summary Earnings Query | | 2021–10–25 | 1 |
| Y13 | B7D | New Hire, Quarter Wage, Unemployment Query (NDNH) | | 2021–10–25 | 1 |
| Y13 | B8D | Detailed Earnings Query | | 2021–12–01 | 3 |
| Y13 | B9D | Certified Earnings Records | | 2021–12–01 | 2 |
| Y13 | B10D | New Hire, Quarter Wage, Unemployment Query (NDNH) | | 2021–12–01 | 1 |
| Y13 | B11D | Summary Earnings Query | | 2021–12–01 | 1 |

## Disability Related Development

| Component | No. | Description | Received Source | Dates | Pages |
|---|---|---|---|---|---|
| Y13 | B1E | Work History Report | | 2020–08–28 to | 8 |
| Y13 | B2E | Disability Report – Adult | | 2020–08–28 to | 7 |
| Y13 | B3E | Disability Report – Field Office | | 2020–08–28 to | 3 |
| Y13 | B4E | 3rd Party Function Report – Adult | Selena Nesbit | 2020–10–01 to | 9 |
| Y13 | B5E | Function Report – Adult | Christopher Reynolds | 2020–10–01 to | 9 |
| Y13 | B6E | Work History Report | | 2020–10–01 to | 13 |
| Y13 | B7E | Function Report – Adult | | 2020–11–10 to | 9 |
| Y13 | B8E | Disability Report – Field Office | | 2021–04–14 to | 2 |
| Y13 | B9E | Disability Report – Appeals | | 2021–04–14 to | 6 |

| Y13 | B10E | Function Report – Adult | | | 2021–07–11 to | 9 |
| Y13 | B11E | Disability Report – Field Office | | | 2021–08–19 to | 2 |
| Y13 | B12E | Disability Report – Appeals | | | 2021–08–19 to | 6 |
| Y13 | B13E | Representative Correspondence | | The Law Offices Of Kathleen Flynn | 2020–10–21 to | 2 |
| Y13 | B14E | Exhibit List to Rep PH2E | | | 2021–10–26 to | 5 |
| Y13 | B15E | Representative Brief | | | 2021–11–18 to | 2 |
| Y13 | B16E | Resume of Vocational Expert | | | 2021–11–22 to | 1 |
| Y13 | B17E | Request for Vocational Interrogatory | | | 2022–05–16 to | 5 |
| Y13 | B18E | Response to Vocational Interrogatory | | | 2022–05–20 to 2022–05–20 | 5 |
| Y13 | B19E | Proffer Correspondence | | | | 3 |
| Y13 | B20E | Representative Correspondence | | | 2022–06–06 to | 1 |

## Medical Records

| Component | No. | Description | Received | Source | Dates | Pages |
| --- | --- | --- | --- | --- | --- | --- |
| Y13 | B1F | Education Records – Medical | | Fulton CO. Schools | 1993–08–23 to 1994–01–25 | 7 |
| Y13 | B2F | Medical Records covering the period | | Dekalb CO. Jail – Correct Care Solutions | 2012–09–24 to 2012–11–13 | 135 |
| Y13 | B3F | Medical Records covering the period | | Cobb CO. Detention Facilities | 2014–11–15 to 2014–11–19 | 22 |

| | | | | | |
|---|---|---|---|---|---|
| Y13 | B4F | Medical Records covering the period | Ga Dept Of Corrections | 2015–03–04 to 2015–03–27 | 88 |
| Y13 | B5F | Medical Records covering the period | Fulton CO. Correction Center | 2018–08–11 to 2018–08–15 | 34 |
| Y13 | B6F | Progress Notes | Clayton Center | 2017–09–05 to 2019–01–10 | 90 |
| Y13 | B7F | Medical Records covering the period | Ga Regional Psyshiatic Hosp | 2019–04–22 to 2019–04–23 | 27 |
| Y13 | B8F | Hospital Records | Ga Reg Hospital Atlanta | 2019–04–22 to 2019–04–24 | 41 |
| Y13 | B9F | Progress Notes | Clayton Center | 2019–10–24 to 2020–01–22 | 41 |
| Y13 | B10F | Office Treatment Records | Clayton Center | 2020–03–12 to 2020–04–21 | 29 |
| Y13 | B11F | Progress Notes | Clayton Behavior Health Center | 2020–03–26 to 2020–07–29 | 104 |
| Y13 | B12F | Medical Assessment Mental Ability–Work Related Activities | Ramesh Amin, Md | 2019–06–17 to | 6 |
| Y13 | B13F | Medical Assessment Mental Ability–Work Related Activities | Ramesh Amin, Md | 2020–07–01 to | 8 |
| Y13 | B14F | Medical Opinion – Mental | Ramesh Amin, Md | 2020–07–01 to | 2 |
| Y13 | B15F | Progress Notes | Clayton Center | 2020–07–29 to 2021–01–28 | 57 |

| | | | | | |
|---|---|---|---|---|---|
| Y13 | B16F | Consultative Examination Report | Piedmont Henry Hospital – CE | 2021-02-09 to | 2 |
| Y13 | B17F | Consultative Examination Report | Oluropo Alfred Ayeni Md – CE | 2021-02-11 to | 11 |
| Y13 | B18F | Medical Source – No MER Available | Clayton Center | 2021-04-01 to | 5 |
| Y13 | B19F | Emergency Department Records | Piedmont Fayette Hospital | 2018-09-24 to 2021-06-14 | 43 |
| Y13 | B20F | Progress Notes | Clayton Center Csb | 2019-01-10 to 2021-06-16 | 144 |
| Y13 | B21F | Progress Notes | Clayton Center | 2021-04-19 to 2021-08-03 | 51 |
| Y13 | B22F | Medical Assessment Mental Ability–Work Related Activities | Amin, Ramesh Md | 2021-08-30 to | 5 |
| Y13 | B23F | Medical Assessment Mental Ability–Work Related Activities | Dr. R.N. Amin | 2021-11-02 to 2021-11-02 | 3 |