### DECLARATION OF CONVENANTS, CONDITIONS AND RESTRICTIONS FOR MAPLE CREEK HOME OWNERS ASSOCIATION, INC.

THIS DECLARATION OF CONVENANTS, CONDITIONS AND RESTRICTIONS is made this _2_ day of _AUGUST, 2005__, by __MAPLE CREEK Home Owners Association__, a Georgia _ Non-Profit Organization_(hereinafter referred to as th Declarant):

Exhibit D

WHEREAS, Declarant is the owner of certain real property located in ____LAND LOT 268_ of the _17TH DISTRICT__, Fulton County, Georgia, des ibed in Exhibit "A-1" (the " Property") attached hereto and incorporated herein by reference and depicted on that certain survey plat for ("WESTGATE PLAT" IN PLAT BOOK 133, PAGE 120,FULTON COUNTY, GEORGIA RECORDS, ALSO KNOWN AS "MAPLE CREEK ") of the Property, a copy of which is attached hereto as Exhibit "B" and incorporated herein by reference.

WHEREAS, Declarant desires to create on the Property a residential community (the " Community") consisting of residential quadraplex living units (each, a " Living Unit" or collectively, the " Living Units") with Common Area Property for the use of he Occupants (as hereinafter defined) of the Living Units located on the Lots (as hereinafter defined) situated on the Property.

WHEREAS, Declarant desires to provide for the preservation and enhancement of the property values, amenities and opportunities in the Community and for the maintenance of the Property and the improvements located thereon, and to this end desires to subject the Property to the easements, covenants, conditions, restrictions, charges and/or assessments and liens hereinafter set forth and/or described.

WHEREAS, Declarant has deemed it desirable, for the efficient preservation of the values and amenities in said community, to create an association to which should be delegated and assigned the powers of owning, maintaining and administering the Common Area Property and administering and enforcing the covenants, conditions and restrictions and collecting and disbursing the charges and assessments hereinafter created, and promoting the welfare of the Owners and Occupants of the Living Units located on the Lots; and

WHEREAS, Declarant has incorporated under the laws of the state of Georgia, as a non-profit corporation, a corporation known as    MAPLE CREEK HOME OWNERS ASSOCIATION, for the purpose of exercising the functions aforesaid;

NOW, THEREFORE, Declarant hereby subjects the entirety of the Property to the easements, covenants, conditions, restrictions charges and assessments and liens and hereby declares that the entirety of the Property shall be held, sold and conveyed subject to such covenants, conditions, restrictions, charges, assessments and liens hereinafter created, all of which are the purpose of enhancing and protecting the value, desirability and attractiveness of the Community and the Property. Such covenants, conditions,

AFTER RECORDING RETURN TO:

CARL W. WRIGHT
P.O. BOX 790
LOGANVILLE, GA  30052
(770)513-7400



Deed Book 40776 Pg 673
Filed and Recorded Aug-26-2005 05:00pm
2005-0293775
Juanita Hicks
Clerk of Superior Court
Fulton County, Georgia

all parties having or acquiring any right, title or interest in the Property, or any part thereof and shall inure to the benefit of each owner of the Property or any party thereof, and their heirs, successors in title and assigns.

## ARTICLE I.

## DEFINITIONS

Section 1. Definitions. The following terms when used herein in this Declaration, or any amendment or supplement hereto (unless the context shall otherwise require or unless otherwise specified herein or therein) shall have the following meanings:

(a)   "Architectural Control Committee" shall mean and refer to committee appointed by the Board to oversee the development and enforcement of the architectural control standards and restrictions with respect to the Community, the Living Units and the Property, and to perform such other functions described in the Declaration.

(b)   " Articles " shall mean and refer to the Articles of Incorporation of the Association, a copy of which is attached hereto as Exhibit "C", as same may be amended or restated from time to time.

(c)   " Assessments" shall mean and refer to the Assessments described in Article VI of this Declaration.

(c)   "Association" shall mean and refer to, a Georgia non-profit corporation, it successors and assigns.

(d)   " Board" shall mean and refer to the Board of Directors of the Association, which shall be and constitute the governing body of the Association.

(e)   " Bylaws" shall mean and refer to the Bylaws of the Association, a copy of which is attached hereto as Exhibit "D", as same may be amended or restated from time to time.

(f)   " Capital Contribution" shall have the meaning as set forth in Section 7.1 hereof.

(g)   " Common Area Property" shall mean and refer to that certain tract of real property located in Fulton County, Georgia and more particularly described on Exhibit "A-2", this being the same property shown and described on the Plat as "Common Area Property".

(h)   "Declarant" shall mean and refer to _MAPLE CREEK HOME OWNERS ASSOCIATION__, a Georgia  NON-PROFIT

ASSOCIATION_, its successors in title and assigns, provided that any such successors in title or assign shall acquire for the purpose of development and/or sale all or substantially all of the remaining unsold Property or portions of the Property and, provided further, that in the instrument of conveyance to any such successor in title or assign, such successor in title is designated as the " Declarant" hereunder at the time of such conveyance. Provided further, that upon such designation of such successor Declarant, all rights, and obligations of the former Declarant in and to such status as " Declarant" hereunder shall cease, it being understood that as to all the Property, there shall be only one person or legal entity entitled to exercise the rights and powers of the " Declarant" hereunder at any given time.

(i) " Mortgage" shall mean and refer to any mortgage, deed to secure debt, security deed or deed of trust constituting a first priority lien on a Lot or a Living Unit.

(j) "Living Unit" of "Living Units" shall mean and refer, singularly or collectively, as applicable, each quadraplex building situated upon a Lot and any other building, structure or other improvement constructed and/or situated upon a Lot, intended for use and occupancy as multifamily residence.

(k) "Lot" shall mean and refer to each numbered tract of land shown on the Plat, which is part of the Property, which is intended for individual ownership together with each Living Unit and other buildings, structures and/or improvements located thereon.

(l) "Member" shall mean and refer to each Owner who is a member of the Association.

(m) "Person" or "Persons" shall mean and refer, singularly or collectively, as applicable, to any natural person, corporation, joint venture, partnership, limited liability Company, association, trust or other legal entity.

(n) "Occupant" or "Occupants" shall mean and refer, singularly or collectively, as applicable, to any Person or Persons occupying all or any portion of a Lot for residential purposes for any period of time, regardless of whether such Person is a tenant of the Owner of such Lot or the Owner, himself, herself, or itself, as applicable, of such Lot.

(o) "Owner" shall mean and refer to the record owner, whether one or more Persons of fee simple title to any Lot, exclusive of those Persons having such an interest merely as security for the performance of an obligation.

(p) "Plat" shall mean and refer to any that certain survey of plat for filed and recorded with the Clerk of the Superior Court of Fulton County, Georgia, a copy of which is attached hereto as Exhibit "E", together with any other plats recorded hereafter from time to time affecting and/or relating to the Property.

(q) "Property" shall mean and refer to that certain tract or real property located in Fulton County, Georgia and more particularly described on Exhibit "A-1"

## ARTICLE II.

## PROPERTY

Section 2.1 Property made subject to this Declaration. This Declaration shall be governed by the provisions of the Georgia Property Owners' Association Act (O.C.G.A. 44-3-220 et seq.) The Property is hereby made subject to this Declaration and the Property shall be owned, held, leased, transferred, sold mortgaged and/or conveyed by the Declarant, the Association, each owner and each party owning record title to any of the Property subject to this Declaration and the controls, covenants, conditions, restrictions, easements, charges, assessments, and liens set forth in this Declaration.

Section 2.0 changes to this Declaration or Additional or Supplementary Declarations Requiring Declarants's Consent. Notwithstanding anything contained herein in this Declaration to the contrary, it is expressly understood and agreed that, so long as Declarant owns any part of the Property, the prior written consent of Declarant shall be required for any parties to modify, change and/or amend, in whole or in part, the terms and provisions of this Declaration, any supplementary or additional declaration or to impose any new or additional covenants, conditions, restrictions or easements on any part of the Property.

## ARTICLE III.

## EASEMENTS AND OTHER RIGHTS

Declarant, in addition to any other easements granted or reserved herein, hereby reserves unto itself, its successors and assigns, and grants to the Association and any other persons or entities hereinafter set forth, the following non-exclusive easements on, upon, over, across, through and under the Property. In addition, Declarant hereby reserves unto itself, its successors and assigns, the right, on behalf of itself and the Association, to grant  additional easements on, upon, over, across, through and under the Common Area Property and any portion of the Property owned by Declarant as deemed to be in the best interests of and proper for the Community, the Property, the Lots and the Living Units, including, but not limited to, easements in favor of Declarant, the Association, any designees of the foregoing, the Owners, and all their family members,

guests, invitees and lessees and to various governmental and quasi-governmental authorities and agencies and private concerns for the purposes and uses hereinafter specified.

Section 3.1 Easements and Cross-Easements on Property. Declarant, for itself, its designees and the Association, reserves the right to impose upon the Property henceforth, including each Lot, and from time to time such easements and cross-easements for ingress and egress, installation, maintenance, construction and repair of utilities and facilities including, but not limited to, electric power, telephone, cable television, master antenna transmission, surveillance services, governmental and quasi-governmental purposes, sewer, water, gas, drainage, irrigation, storm water management, lighting, television transmission, garbage and waste removal, energy services, and the like as it deems to be in the best interests of, and necessary and proper for, the Property or any portion thereof.

Section 3.2 use of Common Area Property. Declarant declares that the Common Area Property is subject to perpetual nonexclusive easement in favor of Declarant, the Association and their designees, the Owners and all their family members, guests, invitees and lessees, and appropriate governmental and quasi-governmental agencies to use Common Area Property for all proper and normal purposes including, but not limited to, ingress, egress and access for the construction, furnishing and maintenance of services and utilities and for such use of the facilities as the same are reasonably intended in accordance with the terms of this Declaration. If ingress or egress to any Lot or other portion of the Property is through any portion of the Common Area Property, any conveyance or encumbrance of such Common Area Property, or portion thereof, is subject to this easement.

Section 3.4 Right of Association and Declarant to Enter Upon the Common Area Property and Lots. Declarant hereby reserves for the benefit of itself, its successors in interest and assigns, and grants to the Association and all agents, employees or other designees of Declarant or the Association an easement for ingress, egress and access to enter upon or over the Common Area Property and the Lots for the purposes of inspecting any construction, proposed construction, or improvements or fulfilling the rights, duties and responsibilities of ownership, administration, maintenance and repair of Declarant or the Association, as appropriate. Such easement includes an easement in favor of the Association and Declarant to enter upon the Common Area Property and any Lots now or hereafter created to use, repair, maintain and replace the same for the purposes for which they are initially designated or for such purposes as they are hereafter re-designated or as Declarant otherwise determines them to be reasonably suited. Notwithstanding the foregoing, nothing contained herein shall be interpreted as imposing any obligation upon the Association or Declarant to maintain, repair, or construct improvements which an Owner is required to maintain, construct or repair.

Section 3.5 Easement for Encroachments. Declarant hereby resolves, for the benefit of itself, its successors in interest and assigns, and grants to the Association and the Owners, their successors and assigns, and to the Occupants of Lots, easements for encroachments,

to the extent necessary, in the event any portion of the improvements located on any portion of the Property now and hereafter encroaches upon any of the remaining portions of the Property as a result of minor inaccuracies in survey, construction or reconstruction, or due to settlement or movement. Any easement(s) for encroachment shall include an easement(s) for the maintenance and use of the encroaching improvements in favor of Declarant, the Association, the Owners and all their designees.

Section 3.6 Easement Reserved for the Association and Declarant. Full rights of access, ingress, and egress are hereby reserved by Declarant for itself and the Association all the times over and upon any Lot, Living Unit or other portion of the Property for the exercise of the easement rights described in this Article III as well as the maintenance and repair rights set forth herein in this Declaration for the carrying out by Declarant of the Association of the rights, functions, duties and obligations of each hereunder; provided, that any such entry by Declarant or the Association upon any Lot, Living Unit or portion of the Property shall be made with the minimum inconvenience to the Owner and Occupant(s) of such property as it reasonably practical, and any damage caused as a result of the gross negligence of Declarant, the Association or their employees or agents shall be repaired by Declarant or the Association, as the case may be, at the expense of Declarant or the Association, as the case may be.

Section 3.7 Additional Easements. Declarant shall have the right to grant over, under, across and upon any portion of the Property owned by Declarant, and the Association shall have the authority, in its sole discretion, to grant over, under, across and upon the Common Area Property, such easements, rights-of-way, licenses and other rights in accordance with or to supplement the provisions of this Declaration or as may otherwise be desirable for the development of the Property and the Community, by the execution, without further authorization, of such grants of easement or other instruments as may from time to time be necessary or desirable. Such easements may be for use and benefit of persons who are not Association Members or Owners.

Section 3.8 No Merger of Easements. The easements hereby established shall not be terminated by merger or otherwise, except upon execution and recordation of as instrument specifically terminating any such easement.

## ARTICLE IV.

## GENERAL COVENANTS AND RESTRICTIONS

The Property, each Lot or Living Unit situated thereon and the Common Area Property shall be occupied and/or used subject to the following:

Section 4.1 Residential Purposes Only. Each Lot and each Living Unit situated thereon shall be used exclusively for residential purposes; provided, however, Declarant shall have the right to use the Lots designated from time to time by Declarant for the purpose of construction and operation of construction offices and sales /marketing offices (and for

related uses) for the Property and the Community. No trade, business or business activity of any kind shall be conducted upon a Lot or in Living Unit, or any part thereof, except by Declarant as described hereinabove or except with the written approval of the Association. Provided, however, the Association may permit a business or business activity to be conducted on a Lot or in a Living Unit so long as such business, in the sole discretion of the Association, does not otherwise violate the provisions of this Declaration, does not create a disturbance and does not unduly increase traffic flow or parking congestion on the Property or in the Common Area Property. The Association may make rules regarding permitted business activities. Leasing of a Lot or Living Unit located thereon shall not be considered a business or business activity.

Section 4.2 Subdivisions of Lots and/or Living Units. No Lot and/or Living Unit may be split, divided or subdivided for sale, resale, gift, transfer or otherwise, without the prior written approval in recordable form of the Declarant or the Association, as the case may be. The transfer of an undivided fractional interest in a Lot and/or a Living Unit shall not constitute a transfer requiring approval of the Association.

Section 4.3 Restricted Activities on Common Area Property. No cutting of vegetation, dumping, digging, filling, destruction or other waste shall be committed on the Common Area Property. There shall be no obstruction of the Common Area Property, nor shall anything be kept or stored in the Common Area Property, nor shall anything be altered, or constructed or planted in, or removed from, the Common Area Property, without the prior written consent of the Association. Each Owner or Occupant shall be liable to the Association and/or Declarant for any damage to any Common Area Property caused by the negligence or willful misconduct of the Owner or Occupant or his family, tenants, guests, agents, employees, or invitees. Provided, however, the provisions of this Section 4.3. shall not apply to Declarant in connection with Declarant's construction and/or maintenance activities on the Property.

Section 4.4 Recreational and Other Equipment. No recreational equipment (including, but not limited to, basketball backboards and hoops, trampolines, swing sets, tree houses, children's climbing or play apparatus and other equipment associated with either adult or juvenile leisure or recreation) shall be attached to the exterior of any Living Unit or otherwise placed or kept on any Lot, except as otherwise authorized in writing by the Association.

Section 4.5 Fences and Walls. In addition to the restrictions contained elsewhere in this Declaration, no fence or wall (including densely planted hedges, rows, or similar landscape barriers) (i) shall be erected, placed, maintained or altered on any Lot except as Declarant may construct or maintain such dividing instrumentality in accordance with its architectural plans or specification or except as approved in writing by the Association's Architectural Control Committee.

Section 4.6 HVAC Equipment. No air conditioning or heating equipment or apparatus shall be installed on the front of, or attached to the front wall of any Living Unit or any

other improvements located on a Lot. No window air conditioning or heating equipment shall be installed on any Living Unit or other improvements on a Lot.

Section 4.7 Mailboxes and House Numbers. Declarant shall provide to each Owner a standard mailboxes/newspaper boxes suitable for a Living Unit. No other mailboxes or newspaper boxes shall be erected or maintained on any Lot or on a Living Unit. The location of the mailboxes/newspaper boxes on a Lot must be approved in writing by the Architectural Control Committee. House numbers may be displayed on a Living Unit and/or a mailbox only as approved by the Architectural Control Committee.

Section 4.8 Animals. No animals, livestock, or poultry shall be raised, bred or kept on any portion of the Property except that dogs, cats or other normal and ordinary household pets may be kept, but not for any commercial purposes, provided that they do not create a nuisance (in the judgment of the Association) such as, but without limitation, by noise, odor, damage or destruction of property or refuse. Dogs shall at all times whenever they are outside of a Living Unit be on a leash or otherwise confined in a manner acceptable to the Association. Animal control authorities shall be permitted to enter the Property to patrol and remove pets and wild animals. All pets shall be registered, licensed and inoculated as required by law. No fenced dog enclosure or other structure for pets may be constructed or maintained on any Lot unless the same has been approved in writing by the Architectural Control Committee.

Section 4.9 Waste. No Lot shall be used or maintained as a dumping ground for rubbish, trash or garbage. During any construction or maintenance on a Lot, all rubbish and debris shall be stored and disposed of in accordance with the rules and regulations established by the Architectural Control Committee.

Section 4.10 No Temporary Structures; Structure Materials. No residence or building of a temporary nature, including a construction trailer, shall be erected or allowed to remain on any Lot, and no metal, fiberglass, plastic or canvas tent, barn, carport, garage, utility building, storage building or other metal, fiberglass, plastic, or canvas structure shall be erected on any Lot or attached to any residence. Provided, however, nothing herein shall prohibit Declarant from erecting or moving temporary buildings or Lot owned by Declarant to be used for storage, or for construction or sales offices.

Section 4.11 No Clothes Lines. No clotheslines of any description or type, and no outside drying of clothes shall be allowed on any Lot.

Section 4.12 Vegetable Gardens. Vegetable gardens shall not be permitted on any Lot without prior written approval of the Architectural Control Committee.

Section 4.13 Lawn Furniture and Statues. No lawn furniture or decorative items, such as statues or renderings of animate or inanimate objects, shall be maintained on any Lot unless approved in advance in writing by the Architectural Control Committee.

Section 4.14 Signs. No sign of any kind shall be displayed on any Lot or on any Living Unit except for sign(s) provided by Declarant or approved in writing by the

Architectural Control Committee. The Architectural Control Committee shall have the power, but not the obligation, to adopt and issue from time to time sign guidelines to assist the Architectural Control Committee in reviewing and approving proposed signs to be erected on the Property. Provided, however, the foregoing shall not act to resist or prohibit Declarant from erecting and maintaining signs and billboards advertising the Property, the Community or portions of either thereof, or for any other purpose, on any portion of the Property owned by Declarant or on the Common Area Property, or to restrict or prohibit the Association from posting (a) temporary signs in the Common Area Property which reference Association related activities or (b) permanent signs designed to aid in vehicular access and related information.

Section 4.15 Nuisances.  It shall be the responsibility of each Owner and Occupant of a Lot or Living Unit to prevent the development of any unclean, unhealthy, or unkempt condition on his or her property. No Lot or Living Unit within the Property shall be used, in whole or part, for the deposit, storage or burial of any property or thing that will cause such property to appear to be in an unclean or untidy condition or that will be obnoxious to the eye; nor shall any substance, thing, or material be kept that will emit foul or obnoxious odors or that will came any noise or other condition that will or might disturb the peace, quiet, safety, comfort, or serenity of the occupants of surrounding property. No obnoxious or offensive activity shall be carried on within any Lot or Living Unit, nor shall anything be done lending to cause embarrassment, discomfort, annoyance, or nuisance to any Person using any property within the Project. There shall not be maintained on any Lot or Living Unit any plants or animals or device or thing of any sort whose activity or existence in any way it noxious, dangerous, unsightly, unpleasant, or of a nature as may diminish or destroy the enjoyment of the Property and the Community. Without limiting the generality of the foregoing, no speaker, horn, whistle, siren, bell, amplifier, or other sound device, except such devices as may be used exclusively for security purposes, shall be located, installed, or maintained upon the exterior of any Lot or Living Unit unless required by law.

Section 4.16 Parking.  Commercial use vehicles and trucks not involved with construction activity on the Property and with carrying capacity and/or size designation greater than or equal to three-fourths (3/4th) ton, shall not be permitted to park overnight on any streets, roadways, driveways, or otherwise within Property, unless approved in advance in writing by the Association. No vehicle of any size, which transports inflammatory or explosive cargo, may be kept within the Property at any time. No vehicles that are not in a condition to be normally operated or that do not have a current registration tag may be stored or situated on or in the Property for more than ten (10) days. No recreational vehicles or related equipment, including any boat, houseboat, trailer, motor home or "camper" vehicle maybe maintained, stored or kept on any portion of the Property. All vehicles must be parked so as not to impede traffic or damage vegetation. No construction or maintenance of same or any Living Unit located thereon, except as approved in writing by the Architectural Control Committee. Provided, however, nothing herein shall be prohibit Declarant from erecting or moving temporary buildings onto Lots owned by Declarant to be used as construction or sales offices. Other construction vehicles (trucks, vans, cars, construction equipment, equipment trailers, etc.)

maybe left overnight on the Property (including any Lot, street, roadway or parking area) only in accordance with such rules as may be established by the Architectural Control Committee.

Section 4.17 Leases. Any Owner of a Lot may lease his/her/its Lot, or a portion thereof (inclusive of a Living Unit contained on a Lot), but only in strict compliance with this paragraph. This paragraph shall not apply, except for the requirement of compliance with applicable zoning ordinances, to any individual Lot until its first conveyed to an Owner by the Declarant, nor to any Lot owned by a former first mortgagee or secondary purchase money mortgagee in possession of a Lot following default. All leases shall be for only those purposes permitted under applicable zoning ordinances, and shall be subject to the terms and conditions of this Declaration, the Association's Articles of Incorporation and Bylaws, and the rules and regulations of the Association. The rules and regulations adopted by the Board with respect to leasing may provide for a reasonable limitation on the number of occupants of a Lot or within the single-family residences contained thereon in a Living Unit. All leases shall be in writing. The Owner of a Lot shall provide a copy of the written leases to the Association and shall provide the lessee with copies of the Declaration, Bylaws and rules and regulations, as each may be amended. All leases by a Lot Owner shall be for a term of at least _Twelve_____ (_12__) months. The term "lease" shall include all leases, rental agreements and other agreements for occupancy.

Section 4.18 Miscellaneous. No exterior antennas for the sending or receiving of radio or television signals shall be erected or maintained on any Lot. Subject to the prior written approval of the Association or the Architectural Control Committee, satellite dishes of less than 24 inches in diameter may be permitted on any Lot provided they are not visible form the front of any Lot and provided that the Owner requesting the right to install such dish provide the Association with a written indemnity for any damage or loss that may result from the installation of such dish (including any loss of coverage under any building or building product warranty of which the Association is a beneficiary). No exterior fires whatsoever, except barbecue fires contained in the proper receptacles therefore, or other fires specifically permitted in writing by the Board, shall be permitted.

Section 4.19 Occupants Bound.   All provisions of this Declaration, the Bylaws and any and all rules and regulations, use restrictions or architectural and landscape guidelines promulgated pursuant hereto or thereto which govern the conduct of Owners and which provide for sanctions against Owners shall also apply to all Occupants are not specifically mentioned.

## ARTICLE V

## ASSOCIATION: POWERS & DUTIES

Section 5.1 Purpose, General powers, and Duties of the Association.  The Association shall be formed as a non-profit corporation for the sole purpose of performing certain functions for the common good and general welfare of the Owners

and Occupants, including the Declarant as Owners of Lots. The Association shall have no power or duty to do or perform any act or thing other than those acts and things, which will promote in some way the common good and general welfare of the Owners and Occupants. To the extent necessary to carry out such purposes, the Association shall have (i) all of the powers of a corporation organized under Georgia Non-Profit Corporation Code and (ii) the power and duty to exercise al of the rights, powers and privileges and to perform all of the duties and obligations of the Association as set forth in this Declaration. The Association shall not be liable for injury to any Person or property, whether occurring on the Common Area Property or not, caused by the conduct of the Owner of any Lot or such Owner's family, tenant, invitee or licensee or of any Occupant or such Occupant's family, subtenant, invitee, or licensee.

Section 5.2 Common Area Property. Subject to the rights of the Owners set forth in this Declaration, the Association shall be responsible for the exclusive management and control of the Common Area Property and all improvements thereon, and shall keep the same in good, clean, attractive and sanitary condition, order and repair. The Association shall not be liable for injury to Person or property caused by the elements or by a leak or flow of water from any utility conduit or rain, snow or ice, whether or not any such flow or leak originates from the Common Area Property. The Association shall not be liable for loss or damage to any property, by theft or otherwise, which is placed or stored anywhere on the Property, the Common Area Property or a Lot or Living Unit. The Association shall have the right to establish and collect reasonable admission and other fees for the use of the recreational portions, if any are constructed, of the Common Area Property.

Section 5.3 Lots. Maintenance of utility lines and conduits from the point of such line is tapped into a main line or conduit shall be their responsibility of the benefited Lot Owners. Except as otherwise herein provided, each Owner shall have the sole responsibility for maintaining and repairing such Owner's Lot and the improvements located thereon in a neat, clean, attractive and sanitary condition.

Section 5.4 Services. The Declarant and/or the Association may obtain, employ and pay for the services of any person or entity to manage its affairs, or any part thereof, to the extent it deems advisable, as well as such other personnel as the Association shall determine to be necessary or desirable for the proper operation of the Property, whether such personnel are furnished or employed directly by the Association or by any person or entity with whom or which it contracts. The Association may obtain and pay for legal and accounting services necessary or desirable in connection with the operation of the Property or the enforcement of this Declaration. The Association may arrange with others to furnish water, trash collection, sewer service and other common services to each Lot. The Association may also maintain on the Common Area Property signs as may be deemed to identify the Property.

Section 5.5 Rules and Regulations and Fines. The Association may make and adopt reasonable rules and regulations from time to time governing the use of the Lots, the Living Units, the Common Area Property and the Property by the Owners, Occupants

and other Persons, and their respective guests, family, invitees, or licensees. The Association may impose such reasonable fines for violation of the Rules and Regulations as are determined by the Board of the Association. Any such fine shall be deemed a special assessment under Article VII of this Declaration and shall be added to and become a part of the assessment to which the Lot is subject.

Section 5.6 Rules and Regulations. If an Owner shall fail to maintain its Lot or Living Unit in the manner required by this Declaration, then the Association, after approval by two-thirds (2/3s) vote of the Board, shall have the right, through its agents and employees, to enter upon said Lot and to perform any maintenance, restoration, or repairs necessary to meet the standards and requirements imposed by this Declaration. The cost of such repair, maintenance or restoration shall be added to and become a part of the assessment to which such Lot is subject.

Section 5.7 Rules and Regulations. The Association may exercise any other right or privilege given to it expressly by this Declaration or by law, and every other right or privilege reasonable to be implied from the existence of any right, privilege, or duty created herein or reasonably necessary to effect any such right, privilege or duty.

Section 5.8 Limitation of Powers. Notwithstanding anything in this Declaration to the contrary, the Association shall not have the power to convey any interest in the Common Area Property whether by deed, easement (other than general utility easements not materially affecting the use of the Common Area Property or any Lot), license, mortgage, deed to secure debt, lease or otherwise, except for such limited purposes as many be set out elsewhere in this Declaration, without the advance written consent of two-thirds (2/3) of all Owners and, in the event the Mortgagee's interest in the Lots would be materially adversely affected by the conveyance of such interest, the advance written consent of two-thirds (2/3) of all first mortgages of the individual Lots.

Section 5.9 Limitation on Liability. Neither Declarant, nor any Association Member, nor the Board, nor the Association, nor any officers, directors; agents or employees of any of them shall be personally liable for debts contracted for or otherwise incurred by the Association or for a tort of another Association Member, whether or not such other Association Member was acting on behalf of the Association or otherwise. Neither Declarant, nor the Association, nor their directors, officers, agents or employees shall be liable for any incidental or consequential damages for failure to inspect any premises, improvements or portions thereof or for failure to repair or maintain the same. Declarant, the Association or any other person, firm or association making such repairs or maintenance shall not be liable for any personal injury or other incidental or consequential damages occasioned by any act or omission in the repair or maintenance of any premises, improvements or portions thereof. The Association shall, to the extent permitted by applicable law, indemnify and defend all members of the Board from any and all loss, cost, expense, damage, liability, claim, action and cause of action arising from or relating to the performance by the Board of its duties and obligations, except for any such loss, cost, expense, damage, liability, claim, action or came of action resulting from the gross negligence or willful misconduct of the person(s) to be indemnified.

Section 5.10 Reserve Funds.  The Board may establish reserve funds, which may be maintained and accounted for separately from other funds maintained for annual operating expenses and may establish separate, irrevocable trust accounts in order to better demonstrate that the amounts deposited therein are capital contributions and not net income to the Association. The aggregate deposits in such reserve fund(s) shall not exceed an amount as may be reasonably determined by the Board to be necessary.

Section 5.11 Security. The Association may, shall not be obligated to, maintain or support certain activities within the Property designed to make the Property safer than they otherwise might be. Neither the Association, nor the Declarant shall in any way be considered insurers or guarantors of security within the Property, nor shall any of them be held liable for any loss or damage by reason of failure to provide adequate security or ineffectiveness of security measures undertaken. No representation or warranty is made that any fire protection system, burglar alarm system or other security system or measures cannot be compromised or circumvented, nor that any such system or security measures undertaken will in all cases prevent loss or provide the detection or protection for which the system is designated or intended. Each Owner acknowledges, understands and covenants to inform its tenants and all occupants of its Lot and Living Units that the Association, its Board and committees, the Declarant and any successor Declarant are not insurers and that each Person using the Property assumes all risks of personal injury and loss or damage to property, including Lots and the Living Units and the contents of Lots and Living Units, resulting from acts of third parties.

Section 5.12 Utility. Each Owner, occupant, guest, and invitee acknowledges that neither the Association, the Board nor the Declarant, shall in any way be considered insurers or guarantors of health within the Property and neither the Association, the Board, nor Declarant shall be liable for any personal injury, illness or any other loss or damage caused by the presence or malfunction of utility lines or utility sub-stations adjacent to, near, over, or on the Property. Each Owner, occupant, guest, and invitee assumes all risk of personal injury, illness or other loss or damage arising from the presence of utility lines or utility sub-stations and further acknowledges that neither the Declarant nor the Association have made any representation or warranties, nor has any Owner, occupant, guest or invitee relied upon any representations or warranties, expressed or implied, relative to the condition or impact of utility lines or utility substations.

## ARTICLE VI.

## ASSOCIATION: MEMBERSHIP & VOTING RIGHTS

Section 6.1 Membership.  Every Owner, including the Declarant, shall be a member of the Association by virtue of ownership of a Lot. There shall be only one membership, and one vote per Lot with each vote being equally weighted. If title to a Lot is held by more than one Person, each of such Persons shall have an equal percentage interest in the membership assigned to the Lot. Each such membership shall be appurtenant to the Lot

upon which it is based and shall be transferred automatically by conveyance of that Lot. No person or entity other than an Owner or the Declarant may be a member of the Association, and a membership in the Association may not be transferred except in connection with the transfer of title to a Lot; provided, however, that the rights or voting may, if required by a mortgagee, be assigned by an Owner to such mortgagee as further security for a loan secured by a Lot. If more than one person holds interest in any Lot, then the vote for such Lot shall be exercised as such persons among themselves determine, but in no event shall more than one vote be cast with respect to such Lot. If the co-Owners of any Lot cannot agree as to how a vote on a particular issue shall be counted; there can be no split vote. Notwithstanding the foregoing, any co-Owner of a Lot who purports to cast a vote for such Lot shall be conclusively deemed to be casting such vote on behalf of, and with the approval of, all of the co-Owners of such Lot unless another co-Owner objects before the final vote tally.

Section 6.2 Administration by Developer. Notwithstanding any other provisions hereof, the Declarant shall have the right to appoint and remove any member or members of the Board of the Association until the earliest of the following dates:

(a) Such date which is 30 days after 100% of the Lots have been conveyed to Owners other than a person   or person constituting the Declarant; or

(b) Such date as the Declarant files of record with the Clerk of the Superior Court, Fulton County, Georgia, an amendment to this Declaration waiving all further rights to appoint and remove any member or members of the Board.

During any time when Declarant has the right to appoint and remove the Board, Declarant shall have the right to appoint and remove any officer of the Association.

Section 6.3 Amplification. The provisions of this Article VI of this Declaration are to be amplified by the Articles of Incorporation of the Association and by the Bylaws of the Association; provided, however, that no such amplification shall substantially alter or amend any of the rights or obligations of the Owners set forth herein. In the event of any conflict between this Declaration and the Articles of Incorporation or the Bylaws, this Declaration shall control.

## ARTICLE VII.

## ASSESSMENTS

Section 7.1 Capital Contributions. In addition to Assessments, each Lot Owner other than Declarant shall pay to the Association at closing when they acquire a Lot, and any improvements thereon, a one-time capital contribution in the amount of _One

Thousand_____ and No/100 Dollars ($_1000_. 00) (a "Capital Contribution"). This provision applies to each subsequent Owner of a Lot as well as the initial Owner.

Section 7.2 Creation of Lien and Personal Obligations of Assessments.

(a) Each Owner of any Lot, other than the Declarant, shall pay the following sums to the Association: (i) annual assessments or charges; (ii) special assessments against all of the Lots for the purposes hereinafter described, such assessments to be established and collected as hereinafter provided; and (iii) special assessments against any particular Lot or Lots which are authorized and established pursuant to the terms of this Declaration. All such assessments, together with interest, costs and reasonable attorney's fees actually incurred, shall also be the personal obligation of the person who was the Owner of such Lot at the time when the assessment fell due. The personal obligation for a delinquent assessment shall not pass to said Owner's successors in title to such Lot unless expressly assumed by them or unless a notice of lien had been filed prior to the date of transfer, but the lien against such Lot shall not be extinguished by any transfer of title. Every Owner of a Lot, by acceptance of a deed therefore, is deemed to covenant and agree to pay assessments as set forth in this Section 7.2 and as otherwise provided in this Article VII, whether or not such covenant and agreement be expressed in such deed.

(b) The Declarant shall be exempt from paying regular assessments under subsection (a) of this Section on any Lot owned by the Declarant until such time as Declarant's right to appoint and remove any member or members of the Board of the Association shall have terminated in accordance with the terms and provisions of Section 6.2 hereof. This exemption shall not pass to any Owner unless said Owner falls within the definition of Declarant provided in this Declaration. During the period of exemption for any Lots submitted to this Declaration and owned by the Declarant, the Declarant shall be responsible for payment of an amount which is equal to the difference between the amount of regular assessments levied against other Lots (exclusive of the portion of such assessment which is designated by the Association's budget as being allocated for Reserves) and the actual operating expenses of the Association. These sums due by the Declarant shall be treated as assessments against the Lots owned by the Declarant, and shall be enforceable and collectable in the same manner as assessments against any other Lot Owner. The period of exemption for any Lots owned by the Declarant shall cease as to any particular Lot upon the earlier of (i) as to an individual Lot, such time as Declarant's right to appoint and remove any member or members of the Board of the Association shall have terminated in accordance with the terms and provisions of Section 6.2 hereof, (ii) as to all Lots owned by the Declarant, the delivery of written notice to the Association of the Declarant's election to terminate the exemption period, or (iii) as to all Lots owned by the Declarant, the date upon which a judgment becomes final

which awards to the Association any sums past due for assessments due by the Declarant under the terms of this paragraph.

Section 7.3 Purpose and Categories of Assessments. The Capital Contributions and assessments levied by the Association shall be used exclusively to promote the general welfare of the Owners and Occupants of the Property, to pay the cost of the improvements and maintenance of the Common Area Property and portions of the Lots which the Association is obligated to repair (if any), including management fees to others, to make such repairs as the Association may deed necessary, to pay ad valorem taxes, to pay gas, electric and water charges assessed against the Common Area Property or provided, in common, by the Association to the lots and to pay insurance premiums as contemplated by Article IX hereof, and for such other related purposes as the Board may determine.

Section 7.4 Annual Assessment. The annual assessments to be levied by the Association shall be determined as follows:

(i)    The initial annual assessments shall be established by the Board prior to the first conveyance of a Lot from the Declarant.

(ii)   Within thirty (30) days prior to the date of each annual meeting of the Association, the Board shall cause to prepare a budget for the maintenance and operation of the Common Area Property for the succeeding fiscal year. The budget shall include compensation of any entity, which is employed by the Board to perform the duties imposed upon the Association hereunder. The budget shall be based upon reasonable, good faith estimates of the actual expenses of the Association for such year and shall include reasonable reserves for periodic, maintenance, repair and replacement, which is the Association's responsibility. Based on this budget, the Board shall fix the amount of the annual assessment against each Lot at least thirty (30) days in advance of each annual assessment period. Written notice of the annual assessment shall be sent to every Owner. Unless the Board shall otherwise determine, the annual assessments shall be payable within thirty (30) days from the due date specified in the notice of annual assessment. The Association shall, upon request, and for reasonable charge (not to exceed $50.00), furnish a certificate signed by an officer of the Association setting forth whether Capital Contribution and the assessments on a specific Lot have been paid.

(iii)  If the annual budget established hereunder proves inadequate for such fiscal year, then the Board may, at anytime within said fiscal year, levy a special assessment for the purpose of meeting the expenses of the Association.

(iv)   If the budget established hereunder for any fiscal year results in a surplus for such year, then the Board may credit such surplus to a reserve fund for maintenance and improvements of the Common Area Property or make such other disposition of such surplus, as the Board deems consistent with the obligations imposed on the Association hereunder. The Board shall

take into consideration the existence and amount of such reserve fund
when establishing the amount of assessments for succeeding fiscal years.

  Section 7.5 Special Assessments Against Specific Lots.  Any expenses incurred
by the Association which are occasioned by the conduct of an Owner or Occupant
of a Lot, his family, tenants, invitees or licensees, including reasonable attorneys
fees actually incurred enforcing this Declaration, shall be specially assessed
against such Lot; provided, however, that no such assessment may be made
against any Lot after the Owner thereof has conveyed the Lot to a bona fide
purchaser or after such Lot has been transferred in a manner which would, under
this Section 7.5 of this Declaration, extinguish the lien for any outstanding
assessments. Any expenses incurred by the Association benefiting fewer that all
of the Lots or significantly disproportionately benefiting the Lots shall be
assessed equitably among the Lots so benefited. The special assessments provided
for this Section shall be levied by the Board, and the amount and due date(s) of
such special assessments so levied shall be specified by the Board.

  Section 7.6 Special Assessments for Capital Improvements.  In addition to the
annual assessments authorized above, the Association may levy, in any
assessment year, a special assessment applicable to that year only for the purpose
of defraying, in whole or in part, the cost of any construction, reconstruction,
repair or replacement of a capital improvement upon the Common Area Property
or the portion of the Lots which the Association is obligated to maintain (if any),
including fixtures and personal property related thereto, provided that any such
assessment shall have the assent of more than fifty percent (50%) of the votes of
voting members of the Association who are voting in person or by proxy at a
meeting duly called for that purpose, together with the vote of the Declarant
should the Declarant be the original owner of any Lots at that time. The Board
may make such special assessment payable in installments.

  Section 7.8 Association Approval of Special Assessments.  Written notice of
any meeting called for the purpose of taking any action authorized under Section
7.7 shall be sent to all members not less than fifteen (15) days nor more than
thirty (30) days in advance of the meeting. At any such meeting called, the
presence of members, either in person or by proxy, entitled to cast more than fifty
percent (50%) of all the votes shall constitute a quorum. If the required quorum is
not present, another meeting may be called subject to the same notice
requirements. No such subsequent meeting shall be held more than thirty (30)
days following the preceding meeting.

  Section 7.9 Payment of Annual Assessments. Except as otherwise provided in
this Article, both annual and special assessments shall be equally assessed against
all Lots. Notwithstanding the foregoing, this requirement of equal assessment
shall not prevent disproportionate assessments against one or more of the lots
pursuant to specific provisions of this Declaration. Except as hereinafter set forth,
the assessments provided for herein shall commence as to all Lots and subject to

this Declaration on the date thirty (30) days after notice is sent by the Association to the Owner of each lot at the Lot address or such other address as furnished by the Owner to the Association; such notice may be addressed "Owner" at the Lot address unless the Owner has provided to the Association a written notice of the name of the Owner. Failure to give proper notice to any Owner shall not postpone the commencement of assessments for any other Owner. The first annual budget shall be adjusted according to the number of months then remaining in the fiscal year.

Section 7.10 Lien for Assessments. All sums assessed to any Lot pursuant to this Article VII together with late charges and interest as provided herein shall be secured by a lien on such Lot in favor of the Association. To the extent permitted by law, such lien shall be superior to all other liens and encumbrances on such Lot, except only for:

(a) Liens of ad valorem taxes for the Common Area Property; and

(b) A lien for all sums unpaid on a first mortgage or on any secondary purchase money mortgage, duly recorded in the public records of Fulton County, Georgia and all amounts advanced pursuant to any such mortgage and secured thereby in accordance with the terms of such instrument.

All other persons acquiring liens or encumbrances on any Lot after this Declaration shall have been recorded in said records shall be deemed to consent that such liens or encumbrances shall be inferior to any lien for assessments against such Lot which are less than thirty (30) days delinquent or for which a notice of lien has been recorded prior to such person's acquisition of such lien or encumbrance, as provided herein, whether or not such consent be specifically set forth in the instruments creating such liens or encumbrances.

The Association shall evidence a lien for sums assessed pursuant to this Article VII by preparing a written notice of lien setting forth the amount of the assessment, the date due, the amount remaining unpaid, the name of the Owner of the Lot and a description of the Lot. Such a notice shall be signed by an appropriate officer of the Association and shall be recorded in the public records of Fulton County, Georgia. No notice of lien shall be recorded until there is a delinquency in payment of the assessment of at least thirty (30) days. Such lien may be enforced by appropriate proceedings in the Superior Court of Fulton County or by any other procedure permitted by applicable law. Any delinquent Owner shall be required to pay the costs and expenses filing the notice of lien, the costs of any legal proceedings commenced to enforce or collect the amount of the lien, and all reasonable attorneys' fees actually incurred. All such costs and expenses shall also be secured by a lien against such Lot, which shall be enforceable against such Lot without the necessity for filing any further notice of lien. The owner shall also be required to pay the Association any assessments against the Lot, which shall become due during the collection proceedings. The Association shall have the right and power to bid

at any foreclosure or judicial sale or other legal sale and acquire, hold, convey, lease, rent, encumber, use and otherwise deal with the Lots as the Owner thereof.

A release of notice of lien shall be executed by the Association and recorded in the public records of Fulton County, Georgia upon payment of all sums secured by a lien, which has been made the subject of a recorded notice of lien.

Section 7.11 Effect of Nonpayment of Assessments: Remedies of Association.  Any assessment or portion thereof not paid when due shall be delinquent. Any assessment or portion thereof which remains delinquent for more than ten (10) days shall bear a late charge in an amount as determined by the Board but not in excess of fifteen percent (15%) of the amount past due. In addition, any assessment not paid within thirty (30) days after the due date, may at the option of the Board, bear interest from the due date at the rate of fifteen percent (15%) per annum.  The Association may bring an action at law against the Owner personally obligated to pay the same or foreclose or otherwise enforce the lien against the Lot in any manner permitted by law. No Owner may waive or otherwise escape liability for the assessments provided for herein by non-use of the Common Area Property or the abandonment of his or her Lot. A suit to recover a money judgment for unpaid assessments hereunder shall be maintainable without foreclosing or waiving the lien securing the same. Upon default in the payment of any one or more installments of any assessment, the Board may accelerate the remaining installment payments and declare the entire balance of said assessment then due and payable in full.

Section 7.12 Extinguishments of Lien.  Except as hereinafter provided, the sale or transfer of a Lot shall not affect the lien for unpaid assessments. The enforcement of any lien which is superior to the lien for assessments, as provided in Section 7.9 of this Declaration, whether by sale or under power or judicial sale or foreclosure, or the enforcement of any first mortgage or secondary _ purchase money mortgage by transfer in lieu of foreclosure, shall extinguish the lien for any special assessments of annual assessments which are inferior to such lien and which fell due prior to the date of such under power, foreclosure, or transfer.

ARTICLE VIII.

ARCHITECTURAL CONTROLS.

Section 8.1 Approval Procedure.  No buildings or improvements, exterior additions or alterations to any building or improvement on the Property, additional awnings, additional fences, satellite dishes, additional outbuildings or other structures, or changes in existing fences, hedges, walls, walkways, and other structures shall be commenced, erected or maintained except such as are installed or approved by the Declarant in connection with the initial construction of the buildings on the Property, until the plans and showing specifications showing the nature, kind, shape, height, materials, location, color, and approximate cost of same shall have been submitted to and approved in writing as to harmony of external design and location in relation to surrounding buildings located on the Property by the Architectural Control Committee or by a representative or

representatives designated by the Architectural Control Committee. No alterations may be made in approved plans or specifications without further approval by the Architectural Control Committee. No road or driveway shall be constructed or altered on any Lot without prior written approval of the Architectural Control Committee. No additional paving of any kind shall be permitted without prior approval of the Architectural Control Committee. In the event the Architectural Control Committee or its designated representative fails to approve or disapprove such design and location within thirty (30) days after said plans and specifications have been submitted to it, such approval will be deemed to have been given. If no application has been made to the Architectural Control Committee or their representatives, suit to enjoin or remove such additions, alterations, or changes may be instituted at any time by the Association or by the Owner of any Lot. The member of the Architectural Control Committee or its designated representatives shall not be entitled to compensate themselves for services performed pursuant to this paragraph, but compensation may be allowed to independent professional advisors retained by the Board to assist the Architectural Control Committee. The costs of such permitted compensation shall be the responsibility of the Owner making the application, the amount shall be payable upon demand, and payment shall be condition precedent to any approval of submitted plans. The Architectural Control Committee may adopt design guidelines to be provided, upon request, to Lot Owners to assist with the approval process.

Section 8.2 Architectural Control Committee.  The Architectural Control Committee shall constitute a standing committee of the Association. The Architectural Control Committee shall consist of the Board unless the Board delegates to other Lot Owners the authority to serve on the Architectural Control Committee The initial members of the Architectural Control Committee and the membership shall be appointed by the Board until the administration of the Association by the Declarant terminates pursuant to Article VI, Section 6.2 of this Declaration. The Board may delegate such authority to individual Lot Owners by resolution, or the Board may call for a special election by the Association to select the Lot Owners to whom the authority shall be delegated. At all times, however, the chairperson of the Architectural Control Committee shall be a member of the Board.

Section 8.3 Landscaping. All landscaping shall conform to the following standards. Declarant as part of the initial construction shall prepare a landscape plan for the Property including the costs. The Architectural Control Committee may publish rules regarding alterations to the initial landscaping of the portion of any Lot visible from public or private streets or roadways. In the absence of published rules relating to such alterations, all changes from the initial landscaping of the portion of any Lot visible from any public or private street or roadway must be approved by the Architectural Control Committee.

## ARTICLE IX

## INSURANCE

Section 9.1 Scope of Insurance. The Board of the Association or its duly authorized agent shall obtain and maintain fire and extended coverage insurance for all insurable

improvements located or contained in the Common Area Property and all personal property and supplies an belonging to the Association in an amount sufficient to cover the full replacement cost of such improvements in the event of damage or destruction from any insured peril, as determined annually by the Board with the assistance of the insurance company providing such insurance. Unless a higher amount is approved by a majority of the Association membership at a special meeting duly called for such purpose, the deductible amount on such policy shall not exceed $_500_. 00 per occurrence or, if such deductible is unavailable, the lowest available deductible amount in excess of $___500___. 00 per occurrence. The Board shall also obtain such public liability and property damage insurance in such amounts and in such forms as shall be determined by the Board of the Association, but not in amount less than $_100,000____. 00 for injury, including death, arising out of single occurrence, and $__205,000___. 00 property damage, covering the Association, all agents and all employees of the Association, all Lot Owners and other persons entitled to occupy any Lot and, to the extent obtainable, the Board and officers of the Association. If the Board is unable to obtain a liability policy providing coverage on a "per occurrence" basis, the Board may substitute therefore a liability policy providing an aggregate of $_2,000,000__. 00 coverage accompanied by an additional umbrella liability policy in an amount not less than $_1,000,000__. 00 The Board shall obtain and maintain such worker's compensation insurance as may be required by law, directors and officers liability coverage, and such other insurance as it may from time to time deem appropriate. Premiums for all such insurance shall be an expense of the Association. All such insurance coverage obtained by the Board shall be written in the name of the Association. Such insurance shall be governed by the provisions contained in the Bylaws of the Association and this Declaration.

The Board shall utilize every reasonable effort to secure policies for the Association that will provide the following:

(a) That the insurer waives its rights of subrogation of any claims against directors, officers, the managing agent, the Lot Owners, and their respective household member;

(b) That the policies cannot be cancelled, invalidated, or suspended on account of the conduct of any director, officer, or employee of the Association or the managing agent without prior demand in writing delivered to the Association and to all mortgages of units to cure the defect may be cured;

(c) That any "other insurance" clause contained the Association's policy shall expressly exclude individual Lot Owner's policies from its operation;

(d) That the policies may not be jeopardized, cancelled, or substantially modified without at least thirty (30) days prior written notice in writing to the Board and all mortgages of the Lots; and

(e) An agreed value endorsement and inflation guard endorsement.

All Association policies of insurance shall be written with a company licensed to do business in the State of Georgia and hold a rating of "_A_" or better in the Financial Category as established by the current issue of the Best's Insurance Reports, if available,

or, if not available, the best rating available. The company shall provide insurance certificates to each owner and each mortgagee.

Each Lot Owner at all times shall maintain adequate fire and extended insurance coverage on the interior and exterior portion of a Living Unit as well as all other improvements constructed on his or her Lot. Such policies shall have a reasonable deductible and name the Association as an additional insured. Upon written request of the Association, each Lot Owner shall provide the Association with evidence of such insurance.

Section 9.2 Owner's Personal Property. Neither the Association nor the Declarant shall be liable in any manner for the safekeeping or condition of any personal property belonging to or used by any Owner or Occupant, or their respective family, guests or invitees, located on or used in the Common Area Property. Further, neither the Association nor the Declarant shall be responsible or liable for any damage or loss to any personal property of any Owner or Occupant or their respective family, guest or invitees located on or used in the Common Area Property. Each Owner and Occupant shall be solely responsible for all personal property and for any damage thereto or loss thereof, and shall be responsible for the purchase of, as such Owner's or Occupant's sole cost and expense, any liability or other insurance for damage to or loss of any such property.

Section 9.2 No Obligation to Insure Owner's Property. By virtue of taking title to a Lot within the Property, each Owner acknowledges that neither the Association nor Declarant has any obligation to provide any insurance for a portion of such Lot or any Living Unit or other properly located thereon.

## ARTICLE X

## GENERAL PROVISIONS

Section 10.1 Amendment. This Declaration and the controls, covenants, restrictions and standards set forth herein shall run with and bind the Property and any Owner, and shall insure to the benefit of every Owner of a Lot in the Property and every Owner of any portion of the Property, including Declarant, said their respective heirs, successors, and assigns, for a term of twenty (20) years beginning on the date this Declaration is recorded with the Clerk of Superior Court of Fulton County, Georgia. At the end of such twenty (20) year period, the easements, covenants, conditions and restrictions set forth herein shall automatically be extended for successive period(s) of twenty (20) additional years, unless prior to the expiration of a respective period, by two-thirds (2/3) vote of the Association Members, there shall be adopted a resolution to terminate these covenants and restrictions. Owners may vote in person or by proxy at a meeting duly called for such purpose at which a quorum is presents, written notice of which shall have been given to all Owners at least thirty (30) days in advance of the date of such meeting, which notice shall act forth the purpose of such meeting. Pursuant to O.C.G.A. 44-5-60 (d), to terminate theses covenants and restrictions pursuant to this Section 10.1 , said two-thirds (2/3) of the Association Members shall execute a document containing a legal description

of the Property, a list of the names of all Owners of the Property, and a description of which covenants and restrictions may be terminated, which may be incorporated by reference to another recorded document. By signing such document, each such Person shall verify that he or she is an Owner of Property affected by the covenant or restriction. Such document shall be recorded in the Office of the Clerk of the Superior Court of Fulton County, Georgia no sooner than but within two (2) years prior to the expiration of the initial twenty (20) year period or any subsequent twenty (20) year period. The Clerk of the Superior Court of Fulton County, Georgia shall index the document under the name of each record Owner appearing in the document. The foregoing shall not limit the right of Declarant to amend and/or supersede, in whole or in part, the terms and provisions hereof; as such right in favor of Declarant is described in Section 10.2 below.

Section 10.2 Amendment. Subject to the limitations hereinafter contained, this Declaration shall be amended only by the agreement of Owners of Lots to which two thirds (2/3) of the votes in the Association pertain; provided, however, that, during any such time as the Declarant has the right to control the Association under this Declaration, the agreement shall be that of the Declarant and the Owners of Lots to which two-thirds (2/3) of the votes in the Association   pertain, exclusive of any vote or votes   appurtenant to any Lot or Lots then owned by the Declarant. Notwithstanding the above, during such time as the Declarant shall own at least one Lot primarily for the purpose of sale of such Lot, no amendment shall be made to the instrument without the written agreement of the Declarant if such amendment would impose greater restriction on the use or development of the Lot or Lots owned by the Declarant. Any such vote shall be taken at a duly held meeting of the Association Members at which a quorum is present, in all accordance with the Bylaws. Any amendment or modification upon which the vote of Association Members is required pursuant to this Section 10.2 shall become effective when an instrument executed by the Association Members voting for such amendment or modification is filed of record with the Clerk of the Superior Court of Fulton County, Georgia provided, however, such an amendment or modification, in lieu of being executed by the Association Member voting for such amendment or modification, may contain a certification of the Secretary of the Association stating that the amendment or modification has been voted on and approved by the requisite number of votes of the Association Members, as provided in this Section 10.2. Unless agreed upon by all Owners of Lots and the Mortgagees of all Lots, no amendment to this Declaration shall change the boundaries of any Lot, the number of votes in the Association pertaining thereto, or the liability for common expenses pertaining thereto. The approval of any proposed amendment by a Mortgagee shall be deemed implied and consented to if the Mortgagee fails to submit a response to any written proposal for an amendment within thirty (30) days after the Mortgagee receives notice of the proposed amendment sent by certified mail, return receipt requested.

Section 10.3 Enforcement. The Association, Declarant or any Owner shall have the right, but not the obligation, on its own behalf or on behalf of others, to enforce the provisions of this Declaration. Enforcement of the controls, covenants, conditions, restrictions, easements, developments guidelines, charges, assessments and liens for

which provision is made in this Declaration shall be by a proceeding at law or in equity (or otherwise, as provided in this Declaration) against any person or persons violating or attempting to violate any such control, covenant, condition, restriction, easement, development guideline, charge, assessment or lien, either to restrain such violation or to recover damages, and against the land to enforce any lien created by these covenants, and failure by the Association, Declarant or any Owner to enforce any such control, covenant, condition, restriction, easement, development guideline, charge, assessment or lien shall in no event deemed a waiver of the might to do so thereafter or of any other or future violation of any thereof. The prevailing party in any motion at law or in equity instituted by the Association to enforce or interpret the limitations, restrictions, conditions, or covenants herein shall be entitled to all costs incurred in connection therewith, including, without limitation, reasonable attorneys' fees.

Section 10.4 Sever ability of Provisions If any paragraph, section, sentence, clause or phrase of this Declaration shall be or become illegal, null or void for any reason or shall be held by any court of competent jurisdiction to be illegal, null or void, the remaining paragraphs, sections, sentences, clauses or phrases of this Declaration shall continue in full force and effect and shall not be affected thereby. It is hereby declared that the remaining paragraphs, sections, sentences, clauses and phrases would have been and are imposed irrespective of the fact that any one or more other paragraphs, sections, clauses, or phrases, shall become or be illegal, null or void.

Section 10.5 Notice. Except as otherwise set forth herein expressly, whenever written notice to an Owner, Association Member or Member (including Declarant) is required hereunder, such notice shall be given by the mailing of same, postage prepaid, to the address of such Owner, Association Member or Member appearing on the records of Declarant or the Association. If notice is given in such manner, such notice shall be conclusively deemed to have been giving by placing same in the United States mail properly addressed, with postage prepaid, whether received by addressee or not. Declarant's address as of the date of recording of this Declaration is _130 West Wieuca Suite 208, Atlanta, GA 30342__.

Section 10.6 Titles and Headings. The titles, headings and captions which have been used throughout this Declaration are for convenience only and are not to be used in construing this Declaration or any part thereof.

Section 10.7 No Exemption. No Owner or other party may exempt himself from the coverage hereof or obligations imposed hereby by non-use of such Owner's Lot(s) or other property located within the Property or the Common Area Property.

Section 10.8 Changes to Plans for the Property. Nothing contained herein shall be deemed to incorporate, by reference or otherwise, any plans or proposals promulgated by Declarant with respect to the development of the Property, and Declarant, subject to the covenants, conditions and restrictions contained in the Declaration and any Additional Declaration, reserves the right to change any plans for the Project at any time from time

Deed Book **40776** Pg   **697**
**Juanita Hicks**
Clerk of Superior Court
Fulton County, Georgia

to time as Declarant may determine to be necessary based upon Declarant's continuing research and design program and/or market conditions, and any plans for the Project shall not bind Declarant or its successors and assigns to adhere to such plans in the development of the Property or any part thereof, in addition, Declarant reserves the right to change, from time to time, the uses and densities that exist on any portion(s) of the Property owned by Declarant, subject to the covenants, conditions and restrictions contained in this Declaration.

Section 10.9 No Liability.  The Declarant has, using the best efforts and all due diligence, prepared and recorded this Declaration so that each and every Owner shall the right and power to enforce the rights and powers of this Declaration against every other Owner. Declarant shall have no liability for its failure to enforce any term or provision hereof.

IN WITNESS WHEREOF, Declarant has caused this Declaration to be executed under seal by its duly authorized member as the day and year first written above.

Signed, sealed, and delivered                    Declarant:

In the presence of:

By: _____

Its:  PRESIDENT

Print Name:  Patrick Hixson

Unofficial Witness

[Company Seal]

Notary Public