## IN THE STATE COURT OF DEKALB COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| **EDWARD KEVELIER, JR. AND 19102 WALDROP, LLC** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | **CIVIL ACTION FILE NO.:** |
| **v.** ) | |
| ) | |
| **LM GENERAL INSURANCE COMPANY,** ) | |
| ) | |
| **Defendant.** ) | |

_____

### DEFENDANT LM GENERAL INSURANCE COMPANY'S
### ANSWER TO PLAINTIFF'S COMPLAINT

COMES NOW Defendant, LM General Insurance Company ("LM General" or "Defendant"), by and through its undersigned counsel, within the time limits allowed by law, without waiver of any affirmative defenses raised herein, and timely states its Answer to Plaintiffs Edward Kevelier, Jr. and 19102 Waldrop, LLC's ("Plaintiffs") Complaint (the "Complaint").

LM General responds to the individually numbered paragraphs of the Complaint as follows:

### PARTIES

1.

LM General is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1 of the Complaint and such

allegations are deemed denied.

2.

In responding to the allegations contained in Paragraph 2 of the Complaint, LM General admits only that it is a foreign insurance company existing under the laws of the State of Illinois and that it is authorized to transact business in the state of Georgia. LM General denies the remaining allegations contained in paragraph 2 of the Complaint.

3.

In responding to the allegations contained in Paragraph 3 of the Complaint, LM General admits only that it may be served with summons and complaint through its registered agent, Corporation Service Company at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092. LM General denies the remaining allegations contained in paragraph 3 of the Complaint.

4.

LM General denies the allegations contained in Paragraph 4 of the Complaint.

5.

LM General denies the allegations contained in Paragraph 5 of the Complaint.

6.

In responding to the allegations contained in Paragraph 6 of the Complaint, LM General admits only that it issued policy number H6S25184995640, which

speaks for itself. LM General is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 6 of the Complaint and such allegations are deemed denied.

7.

LM General is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 7 of the Complaint and such allegations are deemed denied.

8.

LM General is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 8 of the Complaint and such allegations are deemed denied.

9.

LM General denies the allegations contained in Paragraph 9 of the Complaint.

10.

LM General denies the allegations contained in Paragraph 10 of the Complaint.

11.

LM General denies the allegations contained in Paragraph 11 of the Complaint.

12.

LM General admits the allegations contained in Paragraph 12 of the Complaint.

## **COUNT I – BREACH OF CONTRACT (FAILURE TO PAY)**

13.

LM General incorporates by this reference its responses to the allegations contained in Paragraphs 1 through 12 of the Complaint as if fully stated herein.

14.

LM General admits the allegations contained in Paragraph 14 of the Complaint.

15.

LM General denies the allegations contained in Paragraph 15 of the Complaint.

16.

LM General denies the allegations contained in Paragraph 16 of the Complaint.

17.

LM General denies the allegations contained in Paragraph 17 of the Complaint.

## COUNT II – BAD FAITH (O.C.G.A. § 33-4-6)

### 18.

LM General incorporates by this reference its responses to the allegations contained in Paragraphs 1 through 18 of the Complaint as if fully stated herein.

### 19.

In response to Paragraph 19 of the Complaint, LM General admits only that Plaintiff made a demand for dwelling damage on September 21, 2022.  A copy of the demand is attached hereto as Exhibit 1.  LM General denies the remaining allegations contained in Paragraph 19 of the Complaint.

### 20.

LM General denies the allegations contained in Paragraph 20 of the Complaint.

### 21.

LM General denies the allegations contained in Paragraph 21 of the Complaint.

### 22.

LM General denies the allegations contained in Paragraph 22 of the Complaint.

## COUNT III – RECOVERY OF INTEREST UPON DAMAGES (O.C.G.A. § 13-6-13)

23.

LM General incorporates by this reference its responses to the allegations contained in Paragraphs 1 through 23 of the Complaint as if fully stated herein.

24.

LM General denies the allegations contained in Paragraph 24 of the Complaint.

In responding to the allegations contained in the final "WHEREFORE" paragraph of Plaintiff's Complaint, LM General states that said paragraph, including sub-paragraphs a-g, contain no factual allegations, but only a demand for trial and prayers for relief. Consequently, no response to this paragraph is necessary. To the extent a response may be deemed necessary, LM General denies any factual allegations purportedly contained in said paragraph, including sub-paragraphs a-g, and denies that Plaintiff is entitled to any of the relief requested.

## AFFIRMATIVE DEFENSES

Having fully responded to Plaintiffs' Complaint and without prejudice to the denials or other averments contained herein, LM General asserts the following Affirmative Defenses Pursuant to the Federal Rules of Civil Procedure:

## FIRST DEFENSE

LM General denies all matters and things alleged in Plaintiffs' Complaint unless specifically admitted herein.

## SECOND DEFENSE

Plaintiffs' Complaint fails to state a claim against LM General upon which relief can be granted.

## THIRD DEFENSE

The relief requested by Plaintiffs is barred because no action or omission by LM General caused Plaintiffs injury or damage.

## FOURTH DEFENSE

Plaintiffs' Complaint fails to specifically state items of special damage claimed and therefore fails to comply with Fed. R. Civ. P. 9(g).

## FIFTH DEFENSE

Plaintiffs' Complaint seeking recovery of penalties and attorney's fees pursuant to O.C.G.A. § 33-4-6 fails to state a claim against LM General upon which relief may be granted.

## SIXTH DEFENSE

Plaintiffs' claims for bad faith penalties and attorney's fees against LM General pursuant to O.C.G.A. § 33-4-6 are barred because LM General's actions were not, as a matter of law, unreasonable, frivolous, unfounded, or in bad faith.

## SEVENTEENTH DEFENSE

The limit of insurance provided in the Policy is $77,690 for Dwelling, $15,600 for Personal Property, $6,240 for Loss of Use of Insured Location, subject to a

$1,000 deductible, and an Amendatory Mold Endorsement of $5,000. While preserving its other defenses as stated herein, and without prejudice thereto, to the extent Plaintiffs sustained damage compensable under the policy, which is explicitly denied, Plaintiffs' claim is limited by these provisions of the Policy.

## EIGHTH DEFENSE

Plaintiffs have not sustained damages of the nature, and to the extent, claimed in the Complaint, and Plaintiffs are precluded from the recovery they seek.

## NINTH DEFENSE

The Policy provides, at Form FMHO 3490 03 13, as follows:

### SEEPAGE EXCLUSION ENDORSEMENT

THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.

SECTION I – PERILS INSURED AGAINST

**Coverage A – Dwelling and Coverage B – Other Structures**

**Exclusion 10.** is added:
**10.**     Seepage, meaning a gradual, continuous, or repeated seepage or leakage of water, steam or fuel over a period of 14 days or more, resulting in damage to the structure. This exclusion applies unless such seepage or leakage of water, steam or fuel and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

**This endorsement takes precedence over all other endorsements attached to your policy.**

Plaintiffs' claim seeks recovery of damage which was caused by a gradual, continuous or repeated seepage or leakage of water over a period of 14 days or more and the resulting damage was open and obvious. As a result, Plaintiffs' claim is excluded from coverage by the Seepage Exclusion Endorsement.

## <u>TENTH DEFENSE</u>

The Policy, at Form FMHO 3480 03 13, at pp. 1-3, the **AMENDATORY MOLD, FUNGUS, WET ROT, DRY ROT, BACTERIA, OR VIRUS ENDORSEMENT**, provides, in pertinent part, as follows:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**DEFINITIONS**

The following definition is added to the DEFINITIONS section:

**9. "Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"** means any type or form of fungus, rot, virus or bacteria. This includes mold, mildew and any mycotoxins (meaning a toxin produced by a fungus), other microbes, spores, scents or byproducts produced or released by mold, mildew, fungus, rot, bacteria, or viruses.

**SECTION I – PROPERTY COVERAGES**

**Additional Coverages**

The following Additional Coverage is added:

**10. Remediation of "Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus" Resulting Directly From Any Covered Loss**

We will pay, up to the Basic Policy Limits or Option shown in the Declarations, for the **"Remediation"** of **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"** resulting directly from any covered loss.

**"Remediation"** means the reasonable and necessary treatment, containment, decontamination, removal or disposal of **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"** as required to complete the repair or replacement of property, covered under Section I of the policy, that is damaged by any covered peril insured against, and also consists of the following:

1.  The reasonable costs or expense to remove, repair, restore, and replace, restore, and replace that property including the costs to tear out and replace any part of the building as needed to gain access to the **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"**; and

2.  the reasonable costs or expense for the testing or investigation necessary to detect, evaluate or measure **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus";** and

3.  any loss of fair rental value, or reasonable increase in additional living expenses, that is necessary to maintain your normal standard of living, if **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"** resulting directly from any covered loss makes your residence premises uninhabitable.

We will pay no more than the Basic Policy Limits or Option shown in the Declarations for the **"Remediation"** of **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"** resulting directly from any covered loss during the

policy period, regardless of the number of locations under the policy to which this endorsement is attached, the number of persons whose property is damaged, the number of "insureds," or the number of losses or claims made.

If there is a covered loss or damage to covered property, not caused, in whole or in part by **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"** loss payment will not be limited by the terms of this Additional Coverage, except to the extent that **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"** causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Additional Coverage.

This Additional Coverage does not increase the limits of liability under Section I of the policy as shown in the Declarations.

## SECTION I – EXCLUSIONS

Exclusion **9.** is added:

**i.** Except as provided by **Additional Coverage 11.**, loss consisting of or caused by **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"** is excluded, even if resulting from a peril insured against under Section I. We do not cover **"Remediation"** of **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus,"** even if resulting from a peril insured against under Section I, except as provided by **Additional Coverage 11.**

. . .

**This endorsement takes precedence over all other endorsements attached to your policy.  All other provisions of the policy apply.**

## BASIC COVERAGE LIMITS AND OPTIONAL INCREASED LIMITS

Basic Policy Limits:        SECTION I        $5,000 if Cov A is

|                                    |             | less than $100,000                          |
|------------------------------------|-------------|---------------------------------------------|
|                                    |             | or                                          |
|                                    |             | 5% if Cov A is greater than $100,000        |
|                                    | SECTION II  | $50,000                                     |
| Option A – for a premium charge:   | SECTION I   | $10,000                                     |
|                                    | SECTION II  | $50,000                                     |

The Plaintiffs' claimed loss is excluded pursuant to the Seepage Exclusion Endorsement and the other exclusions cited herein. As a result, no coverage is afforded pursuant to the Mold, Fungus, Wet Rot, Dry Rot, Bacteria or Virus Endorsement for remediation of damage caused by Mold, Fungus, Wet Rot, Dry Rot, Bacteria or Virus because the underlying loss is not covered.

## **ELEVENTH DEFENSE**

The Policy, at pages 6-7 of 13 of Form HO 00 06 04 91, provides, in pertinent part, as follows:

## **SECTION I - CONDITIONS**

2. **Your Duties After Loss**. In case of a loss to covered property, you must see that the following are done:
   a. Give prompt notice to us or our agent;

   * * *

   d. Protect the property from further damage.  If repairs to the property are required, you must:

    (1)   make reasonable and necessary repairs to protect the property; and

    (2)   keep an accurate record of repair expenses;

The Policy then provides, in the Special Provisions – Georgia Endorsement (Form FMHO 6100 GA 10 16) at page 8 of 10, in pertinent part, as follows:

## SECTION I - CONDITIONS

**2.  Your Duties After Loss**.

  Paragraph a. is deleted and replaced with the following:

**a.**  Give prompt notice to us or our agent. With respect to a loss caused by the peril of windstorm or hail, that notice must be no later than 365 days after the date of loss.

This provision was violated and Plaintiffs' Complaint is barred in that, upon information and belief, an insured under the Policy failed to give prompt or accurate notice of the loss.  This failure constitutes a breach of the applicable contract of insurance, and the Policy provides no coverage for Plaintiffs' claimed loss.

## TWELFTH DEFENSE

The Policy, at page 9 of 16 of Form HO 00 06 04 91, provides, in pertinent part, as follows:

**3.  Loss Settlement.**  Covered property losses are settled as follows:

  **a.** Personal property at actual cash value at the time of loss but not more than the amount required to repair or replace.

  **b.** Coverage A - Dwelling:

    (1)  If the damage is repaired or replaced within a reasonable time, at the actual cost to repair or replace;

    (2) If the damage is not repaired or replaced, at actual
        cash value but not more than the amount required
        to repair or replace.

The Policy then provides, in the Special Provisions – Georgia Endorsement

(Form FMHO 6100 GA 10 16) at page 8 of 10, in pertinent part, as follows:

**3. Loss Settlement**
Under Form **HO 00 06,** Item b.(2) is deleted and replaced
by the following:
  (2) If the damage is not repaired or replaced within a
     reasonable time, at actual cash value but not more
     than the amount required to repair or replace.
The following paragraph is added and applies to this
policy and to any Loss Settlement provision in any other
endorsement applicable to this policy Loss Settlement
does not include payment for any actual or perceived
decrease in market or resale value resulting from loss to or
repair of your covered property.

The Policy then provides, in Form FMHO 2934 07 20 Homeowner

Amendatory Endorsement, in pertinent part, as follows:

The following is added: "Actual cash value"

a.  When damage to property is economically repairable,
    "actual cash value" means the cost that would be necessary
    to repair the damage based on the age and conditions of
    the materials making up the damaged property, less
    reasonable deduction for wear and tear, deterioration, and
    obsolescence.

b.  When damage to property is not economically repairable
    or loss prevents repair, "actual cash value" means the
    market value of property in a used condition equal to that
    of the lost or damaged property, if reasonably available on
    the used market.

    c.  Otherwise, "actual cash value" means the market value of new, identical, or nearly identical property, less reasonable deduction for wear and tear, deterioration, and obsolescence.

The reasonable deduction in items a. and c., above, will apply to materials, labor, and overhead and profit.

Where the term actual cash value is stated in the policy and any endorsements attached to the policy, this Definition of "actual cash value" applies.

To the extent that any portion of Plaintiffs' claimed loss is covered under the Policy, which is explicitly denied, any payment is to be made in compliance with these provisions of the Policy. In addition, and upon information and belief, Plaintiffs have not paid for the replacement of the property alleged to have been damaged in the seepage loss at issue, and actual repair or replacement is not complete. While preserving its other defenses as stated herein, and without prejudice thereto, to the extent Plaintiffs sustained damage compensable under the policy, which is explicitly denied, the measure of damage is determined at Actual Cash Value until actual repair or replacement is complete.

## THIRTEENTH DEFENSE

The Policy provides, at Form FMHO HO 00 06, provides in pertinent part:  :

**The following exclusions are added to SECTION I - EXCLUSIONS:**
We do not insure for loss to property described in Coverage A caused by any of the following. However, any ensuing loss to property described in Coverage A not excluded or

excepted in this policy is covered.

\*\*\*

**c. Faulty, inadequate or defective:**
**(1)** Planning, zoning, development,
surveying, siting;
**(2)** Design, specifications, workmanship,
repair, construction, renovation,
remodeling, grading, compaction;
**(3)** Materials used in repair, construction,
renovation or remodeling; or
**(4)** Maintenance;
of part or all of any property whether on
or off the "residence premises."
All other provisions of this policy apply.

This provision was violated and Plaintiffs' Complaint is barred in that, upon

information and belief, an insured under the Policy failed to properly maintain the

dwelling.  This failure constitutes a breach of the applicable contract of insurance,

and the Policy provides no coverage for Plaintiffs' claimed loss.

## FOURTEENTH DEFENSE

The Policy, at pages 8 of 13 of Form HO 00 06 04 91, provides, in pertinent

part, as follows:

**12. Mortgage Clause.**
The word "mortgagee" includes trustee.
If a mortgagee is named in this policy, any  loss
payable under Coverage A – Dwelling will be paid to
the mortgagee and you, as interests appear.  If more
than one mortgagee is named, the order of payment
will be the same as the order of precedence of the
mortgages.
If we deny your claim, that denial will not apply to a

valid claim of the mortgagee, if the mortgagee:

    a.    Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

    b.    Pays any premium due under this policy on demand if you have neglected to pay the premium; and

    c.    Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so.  Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

If we pay the mortgagee for any loss and deny payment you:

    a.    We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

    b.    At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest.  In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

While preserving its other defenses as stated herein, and without prejudice thereto, to the extent Plaintiffs sustained damage to the dwelling and which is compensable under the Policy, which is explicitly denied, any amount owed to Plaintiffs pursuant to the Policy for damage to the dwelling, which amounts are denied, must be paid in accord with the foregoing Policy provisions.

## FIFTEENTH DEFENSE

Inasmuch as the Complaint does not describe the alleged underlying claims or damages with sufficient particularity to enable LM General to determine all its legal, contractual and equitable rights, LM General reserves the right to amend or supplement the averments of its Answer to assert any and all defenses ascertained through further investigation and discovery in this action.

**WHEREFORE**, LM General respectfully demands judgment dismissing Plaintiffs' Complaint with prejudice and awarding it such other and further relief as the Court may deem just and proper, including the fees and costs incurred in defending this action.

This 11th day of January 2023.

ISENBERG & HEWITT, P.C.

/s/ Hilary W. Hunter
Hilary W. Hunter
Georgia Bar No. 742696
600 Embassy Row, Suite 150
Atlanta, GA  30328
(770) 351-4400 (O)
hilary@isenberg-hewitt.com
**Attorney for Defendant**
**LM General Insurance Company**

## <u>LOCAL RULE 7.1 CERTIFICATE</u>

The undersigned counsel hereby certifies that this pleading was prepared with one of the font and point selections approved by the Court in L.R. 5.1.C. Specifically, Times New Roman was used in 14 point.

<u>/s/ Hilary W. Hunter</u>
Hilary W. Hunter
Georgia Bar No. 742696
Isenberg & Hewitt, P.C.
600 Embassy Row, Suite 150
Atlanta, Georgia 30328
(770) 351-4400 Telephone
(770) 828-0100 Facsimile
**Attorney for Defendant**

## IN THE STATE COURT OF DEKALB COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| **EDWARD KEVELIER, JR. AND 19102** ) | |
| **WALDROP, LLC** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | **CIVIL ACTION FILE NO.:** |
| **v.** ) | |
| ) | |
| **LM GENERAL INSURANCE** ) | |
| **COMPANY,** ) | |
| ) | |
| **Defendant.** ) | |

_____

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I electronically filed **DEFENDANT LM GENERAL INSURANCE COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT** with the Clerk of Court via Odyssey E-File & Serve, which will send automatic notification of such filing to all parties to this matter as follows:

Max Compton
Morgan & Morgan
mcompton@forthepeople.com

This 11th day of January 2023.

ISENBERG & HEWITT, P.C.

/s/ Hilary W. Hunter
Hilary W. Hunter
Georgia Bar No. 742696
Georgia Bar No. 892497
600 Embassy Row, Suite 150
Atlanta, GA  30328

(770) 351-4400 (O)
hilary@isenberg-hewitt.com
**Attorney for Defendant**
**LM General Insurance Company**