# EXHIBIT 1

ID# 2022-0127097-CV
⊕ EFILED IN OFFICE
CLERK OF SUPERIOR COURT
COBB COUNTY, GEORGIA

**22106857**

Robert E. Flournoy III - 40
SEP 30, 2022 11:21 PM

Connie Taylor, Clerk of Superior Court
Cobb County, Georgia

## SUPERIOR COURT OF COBB COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| **LINDSAY BRADY** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **COMCAST CORPORATION dba** | ) |
| **COMCAST CABLE and COMCAST;** | ) |
| **COMCAST CABLE** | ) |
| **COMMUNICATIONS** | ) |
| **MANAGEMENT, LLC; COMCAST** | ) |
| **CABLE COMMUNICATIONS, LLC;** | ) |
| **AND COMCAST** | ) |
| **COMMUNICATIONS, INC., and** | ) |
| **CHRISTINA GALLAGHER,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

Civil Action File No.

_____

## COMPLAINT

The Plaintiff, Lindsay G. Brady ("Brady") brings this action for:

i)   Disability discrimination and retaliation in violation of the Americans with Disabilities Act of 1990 as amended by the Americans with Disability Act Amendments of 2008 ("ADA"), 42 U.S.C. § 12101 et seq.;

ii)  Defamation in violation of Georgia tort law;

iii) Breach of fiduciary duty in violation of Georgia tort law;

iv)     Intentional infliction of emotional distress in violation of Georgia tort

law; and

v)      Negligent retention in violation of Georgia tort law.

Plaintiff seeks equitable relief; general, compensatory, and punitive damages; costs;

and attorneys' fees, and other appropriate relief for the injuries she suffered from the

unlawful conduct of Comcast Cable ("Comcast").

## **Parties**

1.

Plaintiff Brady is currently a resident and citizen of the State of Georgia.

2.

Defendant Comcast Corporation ("CC") is a foreign corporation doing

business in Georgia with its principal office address at 1701 Boulevard, Philadelphia,

Pennsylvania 19103. CC has not registered with the Georgia Secretary of State to do

business in Georgia. CC also does business as Comcast Cable or Comcast. Neither

Comcast Cable nor Comcast are registered with the Georgia Secretary of State to do

business in Georgia.

3.

Defendant Comcast Cable Communications Management, LLC ("CCCM")

is a subsidiary of CC and does business in Georgia. CCCM's principal office

2

address is 1701 JFK Boulevard Philadelphia, Pennsylvania 19103 and is registered with the Georgia Secretary of State. The Georgia registered agent for CCCM is CT Corporation System, 289 S. Culver St. Lawrenceville, Georgia 30041.

4.

Defendant Comcast Cable Communications, LLC ("CCC") is a subsidiary of CC and does business in Georgia. CCCs principal office address is 1701 Boulevard, Philadelphia, Pennsylvania 19103 and is registered with the Georgia Secretary of State. The Georgia registered agent for CCC is CT Corporation System, 289 S. Culver St. Lawrenceville, Georgia 30041.

5.

Defendant Comcast Communications, Inc. ("CComm") is a subsidiary of CC and does business in Georgia. CComm's principal office address is 1701 JFK Boulevard Philadelphia, Pennsylvania 19103 but is not registered with the Georgia Secretary of State to do business in Georgia.

6.

CC and its Defendant subsidiaries (collectively "Comcast") are the largest multinational telecommunications conglomerate in the United States.

7.

At all times relevant to this Complaint, Defendant CC and its named

3

subsidiaries each employed more than fifteen employees.

8.

Christina Gallagher is a resident of the state of Georgia. Gallagher may be served at her home address of 464 McWilliams Ave SE, Atlanta, Georgia 30316, or her place of employment, Comcast Central Division HQ Office, 2605 Circle 75 Pkwy Atlanta, GA 30339.

## **Jurisdiction and Venue**

9.

This Court has jurisdiction over the Defendants and over the subject matter of this action.

10.

Venue is proper in this Court.

11.

Plaintiff satisfied all administrative prerequisites to institute this action under the ADA. Specifically, Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on March 15, 2022. Plaintiff will request the EEOC to issue a Notice of Right to Sue. Upon receipt of the Notice of Right to Sue, Plaintiff will have brought this suit within ninety (90) days of receipt of the Notice of Right to Sue.

4

12.

Plaintiff is a citizen of the United States and is entitled to bring actions of this nature and type. Plaintiff is a citizen of the state of Georgia residing within Forsyth County, Georgia and is subject to this Court's jurisdiction.

13.

At all times relevant to this action, Plaintiff was an employee of Comcast within the meaning of the ADA.

14.

At all times relevant to this Complaint, Defendant Comcast employed more than fifteen employees.

**<u>Factual Allegations</u>**

15.

Comcast hired Brady as a contractor in March 2020.

16.

Brady began performing work for Comcast on June 29, 2020.

17.

On February 1, 2021, Brady transitioned from contractor to employee.

18.

As an employee, Brady received from Comcast:

i.      Salary of $102,500 per year;

ii.     An annual merit increase;

iii.    A bonus of 8% of Brady's "eligible earnings";

iv.     100 shares of restricted, Class A Common Stock;

v.      "[C]omprehensive benefits package" that includes "benefits and programs designed to help you be at your best physically, emotionally, and financially";

vi.     401(k) Plan and related options;

vii.    Employee Stock Purchase Plan; and

viii.   Financial Services "such as financial counseling ... and investment guidance ..."

19.

As a contractor and later as an employee, Brady worked as a Project Manager 3 in the Central Division Business Operations PMO ("CD BOPMO").

20.

Initially, Brady reported to Christina Gallagher, Senior Manager, Business Operations PMO (CD BOPMO). Gallagher, in turn, reported to Felice Schmookler, Vice President of Project Management, Business Operations PMO (CD BOPMO),

6

and later to Kianta Prince-Bryant, Senior Director, Business Operations PMO, (CD BOPMO).

21.

Whether working as a contractor or employee for Defendant, Brady provided oversight and facilitation of the development of Internal Business Operation and IT projects that included Rate Event (Commercial) and Video Simplification (performed parallel to "Rate Event"), Real Estate Logistics ("Logistics"), Collections Recovery Tool ("CRT"), PTO Tool ("PTO"), and other digital application development and enhancement projects in support of Comcast's internal business operations.

22.

In August 2020, Brady was diagnosed with bacterial colitis caused by stress.

23.

When experiencing chronic stress, Brady suffered an outbreak of severe gastral intestinal issues, abdominal pain, insomnia, malaise, and fatigue which heightened the severity of Brady's illness.

24.

In August of 2020, Brady shared her condition with her supervisor, Christina Gallagher.

7

25.

In the Winter of 2020 – 2021, Brady received another diagnosis that later was identified as demodicosis, a rare type of dermatitis. Chronic stress again caused Brady to suffer an outbreak of severe skin rash, lesions, neuropathy, insomnia, headaches, malaise, and fatigue which further worsened her condition.

26.

Brady again shared the new and ongoing symptoms with Gallagher in January 2021.

27.

Despite her ongoing condition, Brady continued to perform her work effectively and continued to be recognized for the success of her projects.

28.

Over time, Gallagher began to resent Brady's success at Comcast. As a result, Gallagher would make unnecessary and counterproductive work assignments that negatively affected Brady's ability to interact efficiently with colleagues and other persons with responsibility and interest in the execution and resolution of various team projects. Despite Gallagher's conduct and the Plaintiff's ongoing condition, Brady continued to perform her work effectively and continued to be recognized for the success of her projects.

29.

As a result of the heightened work stress caused by Gallagher, Brady suffered a reaction on January 17, 2021, and was rushed to a nearby emergency room.

30.

Despite her condition that required emergency treatment, Brady continued to perform work and even received two Comcast Finance Awards evaluated and issued by Comcast Executive Senior Leadership.

31.

On February 1, 2021, Brady converted from contractor to employee of Comcast and continued to work as Project Manager 3, Central Division Business Ops PMO. Gallagher continued to supervise Plaintiff's work and to target her with harassment.

32.

On April 7, 2021, Brady spoke with Traci Barnes, a Comcast Senior HR Manager, and explored different scenarios regarding medical leave and her condition.

33.

9

After Brady's April 7 meeting with Barnes, Brady met with Liz Menscer, a Comcast Senior Leader (Vice President) on April 29, 2021.

34.

In the meeting with Menscer, Brady described Gallagher's conduct and the resulting stress that impacted her health. Brady asked to be reassigned to another supervisor.

35.

In a subsequent email to Brady, Menscer stated that she had formally reported the incident to HR and that HR would contact Brady to begin an investigation into her complaint about Gallagher's conduct and its impact on the Plaintiff's health condition.

36.

In May 2021, HR interviewed Brady, Gallagher, and other Comcast employees about Brady's complaint.

37.

On June 9, 2021, Brady learned that a video conference call would be held to address her complaint.

38.

10

On June 21, 2021, Brady followed HR instructions and attended a recorded video call with Barnes, Gallagher, and Prince-Bryant.

39.

During the HR-required, June 21, 2021 video conference call, Gallagher blindsided the Plaintiff with fabricated allegations of poor performance. At the beginning of the June 21 meeting, Brady was told that the purpose of the meeting was to resolve and address her complaints about Gallagher's conduct and its impact on the Plaintiff. Brady was asked what she "need[ed]" to be successful at Comcast. At this point, Gallagher pulled an excel spreadsheet that contained a list of fabricated and defamatory shortcomings of the Plaintiff. Gallagher offered false allegations as a response to the question about Brady's *needs* to achieve success at Comcast. At no point during the June 21 meeting did Gallagher or any other Comcast representative address Brady's complaints about Gallagher or her health condition. Before Gallagher completed her critique of Brady's performance, the time for the meeting expired.

40.

In a follow-up, June 23, 2021 video call with Gallagher, Barnes, Prince-Bryant, and Brady, Gallagher completed her summary of fabricated performance shortcomings of the Plaintiff. As in the prior June 21 call, Brady was not allowed to

11

offer any explanation about Gallagher's fabricated allegations of poor performance, or to discuss Gallagher's misconduct or how Brady's working environment could be modified to accommodate her condition.

41.

During the June 21st and 23rd meetings, the Comcast representative never addressed the underlying purpose of the meeting – Brady's ongoing complaints about Gallagher's conduct and the Plaintiff's request for assistance in dealing with her disabling condition made worse by Gallagher's conduct.

42.

On July 8, 2021, Barnes announced that HR's investigation process and Gallagher's list of allegations necessitated a performance correction action plan which eventually was converted into a Performance Improvement Plan ("PIP") for the Plaintiff.

43.

Gallagher's list of allegations contained fabricated facts and unattainable deadlines.

44.

Gallagher's corrective actions included new or increased areas of responsibility for Brady. Even though Brady had continued to complete her assigned

12

projects and receive positive recognition for her work, Gallagher's added workload caused further stress for Brady.  As a result, her disabling condition worsened.

45.

In a series of online meetings in July, the Plaintiff met with Gallagher and another Comcast representative. Gallagher simply restated the false allegations of Brady not performing up to expectations.

46.

Despite Brady's original complaint and request for help, no one addressed her original complaint about Gallagher's conduct and Brady's deteriorating health condition.

47.

On August 5, Brady was placed on a PIP and given 30-days to improve her performance.

48.

On August 9, 2021, Brady filed a grievance through Comcast's internal grievance system. The claim included her manager's repeated refusal to provide any accommodation or address the retaliation of Gallagher taken in response to Brady's complaints.

49.

13

Eventually, the Plaintiff was directed to report to Prince-Bryant for further counseling. Plaintiff's PIP had now been extended by two weeks.

50.

In a September 16 online meeting, Barnes and Prince-Bryant reminded Plaintiff that her PIP would soon expire.

51.

On September 23, 2021, Brady met with Prince-Bryant and a Comcast HR representative to evaluate the Plaintiff's performance as measured under the PIP.

52.

During the September 23, 2021 meeting, Prince-Bryant reviewed a document outlining Brady's weekly performance and told the Plaintiff that she had not satisfied any area of required performance. Contrary to Prince-Bryant's description of Brady's performance, Brady either met her performance requirements or had been asked to perform a task altered by Gallagher's after-the-fact modification.

53.

Brady was told that the information would be communicated to senior leadership and that their feedback would be shared with the Plaintiff the following week.

54.

14

Brady was not allowed to review or receive a copy of the document being shared by Prince-Bryant during the meeting.

### 55.

While still employed with Comcast, Plaintiff filed a claim with Comcast's Comcast Solutions – Step 1 ("Claim-Step 1") on September 30, 2021.

### 56.

In the Claim-Step 1, Brady included claims of disability discrimination and failure to accommodate her disability.

### 57.

On October 1, 2021, Prince-Bryant told Plaintiff that she would be terminated.

### 58.

The next day, Plaintiff receive a notice of termination from Comcast effective October 2, 2021.

### Causes of Action

### Count I
### Disability Discrimination in Violation of the Americans with Disabilities Act

### 59.

Plaintiff incorporates by reference the Paragraphs 1 through 58 as if fully restated herein.

15

60.

Plaintiff is a person with a disability and a member of a protected class under the ADA.

61.

At all times relevant to this action, the relationship between Plaintiff and Defendant Comcast was a relationship of "employee" to "employer" within the meaning of the ADA.

62.

Defendant discriminated against Plaintiff on the basis of her disability.

63.

Defendant's termination of Plaintiff was a materially adverse employment action.

64.

Plaintiff's disability was a motivating factor in Defendant's decision to terminate Plaintiff's employment.

65.

Plaintiff was qualified to perform her duties as an employee of Defendant.

66.

Defendant Comcast's actions constitute unlawful disability discrimination in violation of the ADA.

67.

Defendant has willfully and wantonly disregarded Plaintiff's statutory rights and engaged in discrimination in bad faith.

68.

As a direct and proximate result of the above-described unlawful employment practices, Plaintiff has suffered and continues to suffer the indignity of disability discrimination, the invasion of the right to be free from disability discrimination, humiliation, emotional pain, mental distress, inconveniences, and mental anguish, for which she is entitled to recover damages.

**Count II**
**Retaliation in Violation of the Americans with Disabilities Act**

69.

Plaintiff incorporates by reference the Paragraphs 1 through 58 as if fully restated herein.

70.

At all times relevant to this action, the relationship between Plaintiff and Defendant Comcast was one of employer and employee.

17

71.

At all times relevant to this action, Brady was an employee of Comcast.

72.

The ADA declares unlawful employer retaliation against an employee who reports or opposes harassment and discrimination based on a person's disability.

73.

Comcast and its representative, Gallagher, unlawfully retaliated against Brady by, among other things, terminating Brady's employment because she opposed Gallagher's disability discrimination and reported the discrimination to Comcast's HR department.

74.

Comcast had knowledge of Plaintiff's participation in protected activities.

75.

As a proximate and direct result of Defendant's conduct, Brady has suffered, and will continue to suffer, damages including emotional distress, inconveniences, loss of income and benefits, humiliation, and other indignities for which she is entitled to recover damages.

**Count III**
**Defamation**

18

76.

Plaintiff incorporates by reference the Paragraphs 1 through 58 as if fully restated herein.

77.

Defendant Gallagher made false and defamatory statements about the Plaintiff.

78.

The statements made by Gallagher were published to a third party.

79.

The statements made by Gallagher were not privileged.

80.

Defendant Gallagher made the false and defamatory statements knowing the statements were false and intended to injure the Plaintiff.

81.

Defendant Gallagher's statements were defamatory words "injurious on their face" entitling Plaintiff to special damages.

82.

19

Defendant Gallagher's statement caused personal injury to the Plaintiff.

## Count IV
## Breach of Fiduciary Duty

### 83.

Plaintiff incorporates by reference the Paragraphs 1 through 58 as if fully restated herein.

### 84.

At all times described herein, Brady relied on the fiduciary relationship which existed between Plaintiff and her employer Comcast. As a result, Defendants owed to Brady a fiduciary duty and therefore was obligated to exercise the duty with the skill, prudence, and diligence of a fiduciary and to fulfill the responsibilities in a manner reflecting the trust and confidence reposed in a fiduciary.

### 85.

Defendants failed to perform and abide by the duties of a fiduciary and breached the duty of trust and performance owed to the Plaintiff by, and as a result of, the acts and omissions alleged in this Complaint.

### 86.

As a proximate result of the breach of the Defendants' fiduciary obligations owed to Plaintiff, Brady has suffered injury and damages.

87.

As a proximate and direct result of Defendants' conduct, Brady has suffered and will continue to suffer injury and damages including emotional distress, inconveniences, loss of income and benefits, humiliation, and other indignities for which she is entitled to recover damages.

**Count V**
**Intentional Inflection of Emotional Distress**

88.

Plaintiff incorporates by reference the Paragraphs 1 through 58 as if fully restated herein.

89.

Defendants intentionally or recklessly engaged in extreme and outrageous conduct against Plaintiff.

90.

The conduct of Defendants conduct was so extreme in degree as to go beyond all possible bounds of decency and as to be regarded as atrocious and utterly intolerable in a civilized community.

91.

21

Brady suffered severe emotional distress as a result of Defendants' conduct.

92.

Defendants' extreme and outrageous conduct proximately caused Brady to suffer injury and damages.

93.

As a proximate and direct result of Defendants' conduct, Brady has suffered and will continue to suffer injury and damages including emotional distress, inconveniences, loss of income and benefits, humiliation, and other indignities for which she is entitled to recover damages.

**Count VI**
**Negligent Supervision and Retention**

94.

Plaintiff incorporates by reference the Paragraphs 1 through 58 as if fully restated herein.

95.

Defendant Comcast knew, or in the exercise of ordinary diligence, should have known of Gallagher's discriminatory, retaliatory, and tortious treatment of Brady.

22

96.

Comcast owed a duty to Plaintiff to retain employees who would lawfully conduct themselves and not engage in discriminatory and tortious conduct.

97.

Comcast breached its legal duty by negligently supervising and retaining Gallagher who continued to engage in illegal discriminatory, retaliatory, and tortious conduct and, therefore, continued to expose Plaintiff to a series of illegal, demeaning, and injurious acts. Further, Defendant Comcast ratified, condoned, or adopted via inaction the conduct of Gallagher and other Comcast representatives.

98.

Defendant Comcast acted maliciously, willfully, wantonly, oppressively, and with specific intent to injure Brady and to deprive her of her protected state and federal civil rights. Additionally, and in the alternative, Comcast acted recklessly toward Plaintiff and her protected state and federal civil rights.

99.

As a proximate and direct result of Defendant Comcast's conduct, Plaintiff has suffered, and will continue to suffer, damages including emotional distress, inconveniences, loss of income and benefits, humiliation, and other indignities for which she is entitled to recover damages.

23

100.

Accordingly, Defendant Comcast is liable to Plaintiff for all damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands a TRIAL BY JURY and requests the following relief:

a.      a declaratory judgment that Defendants violated the Plaintiff's rights under the ADA and Georgia tort law;

b.      a permanent injunction, prohibiting Defendants from engaging in unlawful employment practices in violation of the ADA and Georgia tort law;

c.      full back pay from the date of Plaintiff's termination, taking into account all raises and other financial gains to which Plaintiff would have been entitled but for her unlawful termination, and all fringe, welfare, and pension benefits of employment;

d.      front pay to compensate Plaintiff for loss of earnings including future wages, benefits and pension, and loss of earnings potential;

e.      compensatory damages for Plaintiff's emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life and special damages;

f.      punitive damages for Defendants' intentional violation of the ADA and Georgia tort law;

24

h.      attorneys' fees, costs, and disbursements;

i.      pre- and post-judgment interest as allowed by law; and

j.      such further and additional relief as may be just and appropriate.

Respectfully submitted this 30th day of September 2022.

/s/ E. Ray Stanford, Jr.
E. Ray Stanford, Jr.
Georgia Bar No. 674725
Attorney for Plaintiff

Stanford IO Law Group LLC
P.O. Box 19161
Atlanta, GA 31126
Telephone:  404-991-7300
Facsimile:  404-991-7299
rstanford@siolaw.com

ID# 2022-0127103-CV
⊕ EFILED IN OFFICE
CLERK OF SUPERIOR COURT
COBB COUNTY, GEORGIA

**22106857**

Robert E. Flournoy III - 40

SEP 30, 2022 11:21 PM

**General Civil and Domestic Relations Case Filing Information Form**

☑ Superior or ☐ State Court of  Cobb                County

| **For Clerk Use Only** | |
|---|---|
| **Date Filed** 09-30-2022 | **Case Number** 22106857 |
| **MM-DD-YYYY** | |

Connie Taylor, Clerk of Superior Court
Cobb County, Georgia

**Plaintiff(s)**

Brady, Lindsay

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

**Defendant(s)**

Comcast Cable Communications Management, LLC,

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

Comcast Cable Communications, LLC, -

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

Gallagher, Christina

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

Comcast Communications, Inc., -

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

**Plaintiff's Attorney** Stanford, Mr. E. Ray Jr       **Bar Number** 674725       **Self-Represented** ☐

**Check one case type and, if applicable, one sub-type in one box.**

**General Civil Cases**

☐ Automobile Tort
☐ Civil Appeal
☐ Contract
☐ Contempt/Modification/Other Post-Judgment
☐ Garnishment
☑ General Tort
☐ Habeas Corpus
☐ Injunction/Mandamus/Other Writ
☐ Landlord/Tenant
☐ Medical Malpractice Tort
☐ Product Liability Tort
☐ Real Property
☐ Restraining Petition
☐ Other General Civil

**Domestic Relations Cases**

☐ Adoption
☐ Contempt
  ☐ Non-payment of child support, medical support, or alimony
☐ Dissolution/Divorce/Separate Maintenance/Alimony
☐ Family Violence Petition
☐ Modification
  ☐ Custody/Parenting Time/Visitation
☐ Paternity/Legitimation
☐ Support – IV-D
☐ Support – Private (non-IV-D)
☐ Other Domestic Relations

☐ Check if the action is related to another action(s) pending or previously pending in this court involving some or all of the same parties, subject matter, or factual issues. If so, provide a case number for each.

_____       _____
**Case Number**                              **Case Number**

☑ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in O.C.G.A. § 9-11-7.1.

☐ Is a foreign language or sign-language interpreter needed in this case? If so, provide the language(s) required.

_____ **Language(s) Required**

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

_____
_____

Version 1.1.20