# Exhibit A


**SOCIAL SECURITY ADMINISTRATION**

Office of Hearings Operations
Suite 500, Marquis 1
245 Peachtree Ctr. Ave
Atlanta, GA 30303-9913

Date: August 16, 2022

Felicia Ann Scott
2650 Bently Rd
Apt 8-A
Atlanta, GA 30067

# Notice of Decision – Unfavorable

I carefully reviewed the facts of your case and made the enclosed decision.  Please read this notice and my decision.

**If You Disagree With My Decision**

If you disagree with my decision, you may file an appeal with the Appeals Council.

**How To File An Appeal**

To file an appeal you or your representative must ask in writing that the Appeals Council review my decision.  The preferred method for filing your appeal is by using our secure online process available at https://www.ssa.gov/benefits/disability/appeal.html.

You may also use our Request for Review form (HA-520) or write a letter.  The form is available at https://www.ssa.gov/forms/ha-520.html.  Please write the Social Security number associated with this case on any appeal you file.  You may call (800) 772-1213 with questions.

Please send your request to:

> **Appeals Council**
> **5107 Leesburg Pike**
> **Falls Church, VA 22041-3255**

**Time Limit To File An Appeal**

You must file your written appeal **within 60 days** of the date you get this notice.  The Appeals Council assumes you got this notice 5 days after the date of the notice unless you show you did not get it within the 5-day period.

Form HA-L76-OP2 (03-2010)

**Suspect Social Security Fraud?**
**Please visit http://oig.ssa.gov/r or call the Inspector General's Fraud Hotline**
**at 1-800-269-0271 (TTY 1-866-501-2101).**

See Next Page

The Appeals Council will dismiss a late request unless you show you had a good reason for not filing it on time.

**What Else You May Send Us**

You or your representative may send us a written statement about your case.  You may also send us new evidence.  You should send your written statement and any new evidence **with your appeal**.  Sending your written statement and any new evidence with your appeal may help us review your case sooner.

**How An Appeal Works**

The Appeals Council will consider your entire case.  It will consider all of my decision, even the parts with which you agree.  Review can make any part of my decision more or less favorable or unfavorable to you.  The rules the Appeals Council uses are in the Code of Federal Regulations, Title 20, Chapter III, Part 404 (Subpart J) and Part 416 (Subpart N).

The Appeals Council may:

- Deny your appeal,
- Return your case to me or another administrative law judge for a new decision,
- Issue its own decision, or
- Dismiss your case.

The Appeals Council will send you a notice telling you what it decides to do.  If the Appeals Council denies your appeal, my decision will become the final decision.

**The Appeals Council May Review My Decision On Its Own**

The Appeals Council may review my decision even if you do not appeal.  If the Appeals Council reviews your case on its own, it will send you a notice within 60 days of the date of this notice.

**When There Is No Appeals Council Review**

If you do not appeal and the Appeals Council does not review my decision on its own, my decision will become final.  A final decision can be changed only under special circumstances.  You will not have the right to Federal court review.

**New Application**

You have the right to file a new application at any time, but filing a new application is not the same as appealing this decision.  If you disagree with my decision and you file a new application instead of appealing, you might lose some benefits or not qualify for benefits at all.  My decision could also be used to deny a new application for benefits if the facts and issues are the same.  If you disagree with my decision, you should file an appeal within 60 days.

Form HA-L76-OP2 (03-2010)

See Next Page

Felicia Ann Scott (BNC#: 21OC564E76422)                Page 3 of 3

**If You Have Any Questions**

1. Visit www.ssa.gov for fast, simple, and secure online service.
2. Call us at **1-800-772-1213**, weekdays from 8:00 am to 7:00 pm. If you are deaf or hard of hearing, call TTY **1-800-325-0778**. Please mention this notice and decision when you call.
3. You may also call your local office at (866) 964-4690.

> Social Security
> Suite 250
> 200 Chastain Center Bl
> Kennesaw, GA 30144-9801

**How are we doing?** Go to www.ssa.gov/feedback to tell us.

> Carla McMichael
> Administrative Law Judge

Enclosures:
Decision Rationale

cc:     Kathleen Flynn
        315 W. Ponce De Leon
        Avenue, Suite 940
        Decatur, GA 30030

Form HA-L76-OP2 (03-2010)

**SOCIAL SECURITY ADMINISTRATION**
Office of Hearings Operations

**DECISION**

| **IN THE CASE OF** | **CLAIM FOR** |
|---|---|
| | Period of Disability, Disability Insurance |
| Felicia Ann Scott | Benefits, and Supplemental Security Income |
| (Claimant) | |
| | 21OC564E76422 |
| (Wage Earner) | (Beneficiary Notice Control Number) |
| | *Social Security Number removed for your protection* |

## JURISDICTION AND PROCEDURAL HISTORY

This case is before me on remand from the Appeals Council. On June 2, 2022, I held a telephone hearing (20 CFR 404.936(c) / 416.1436(c)) due to the extraordinary circumstance presented by the Coronavirus Disease 2019 (COVID-19) Pandemic. All participants attended the hearing by telephone. The claimant is represented by Erica Dempsey, an attorney. Barry Murphy, an impartial vocational expert, also appeared at the hearing.

In its remand order, Appeals Council directed me to advise the claimant of the right to and availability of representation pursuant to HALLEX I-2-6-52 and I-2-1-80.

The claimant is alleging disability since October 15, 2016.

The claimant submitted or informed me about all written evidence at least five business days before the date of the claimant's scheduled hearing (20 CFR 404.935(a) and 416.1435(a)).

## ISSUES

The issue is whether the claimant is disabled under sections 216(i), 223(d) and 1614(a)(3)(A) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

With respect to the claim for a period of disability and disability insurance benefits, there is an additional issue whether the insured status requirements of sections 216(i) and 223 of the Social Security Act are met. The claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through December 31, 2025. Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.

See Next Page

After careful consideration of all the evidence, I conclude the claimant has not been under a disability within the meaning of the Social Security Act from October 15, 2016, through the date of this decision.

## APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 404.1520(a) and 416.920(a)).  The steps are followed in order.  If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, I must determine whether the claimant is engaging in substantial gainful activity (20 CFR 404.1520(b) and 416.920(b)).  Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful.  "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 404.1572(a) and 416.972(a)).  "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 404.1572(b) and 416.972(b)).  Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that she has demonstrated the ability to engage in SGA (20 CFR 404.1574, 404.1575, 416.974, and 416.975).  If an individual engages in SGA, she is not disabled regardless of how severe her physical or mental impairments are and regardless of her age, education, and work experience.  If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, I must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 404.1520(c) and 416.920(c)).  An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities.  An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 404.1522 and 416.922, Social Security Rulings (SSRs) 85-28 and 16-3p).  If the claimant does not have a severe medically determinable impairment or combination of impairments, she is not disabled.  If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, I must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).  If the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listing and meets the duration requirement (20 CFR 404.1509 and 416.909), the claimant is disabled.  If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, I must first determine the claimant's residual functional capacity (20 CFR 404.1520(e) and 416.920(e)).  An individual's

See Next Page

residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. In making this finding, I must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e), 404.1545, 416.920(e), and 416.945; SSR 96-8p).

Next, I must determine at step four whether the claimant has the residual functional capacity to perform the requirements of her past relevant work (20 CFR 404.1520(f) and 416.920(f)). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b), 404.1565, 416.960(b), and 416.965). If the claimant has the residual functional capacity to do her past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 404.1520(g) and 416.920(g)), I must determine whether the claimant is able to do any other work considering her residual functional capacity, age, education, and work experience. If the claimant is able to do other work, she is not disabled. If the claimant is not able to do other work and meets the duration requirement, she is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 404.1512, 404.1560(c), 416.912 and 416.960(c)).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, I make the following findings:

**1.   The claimant meets the insured status requirements of the Social Security Act through December 31, 2025.**

**2.   The claimant engaged in substantial gainful activity since the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).**

The record reflects income at the SGA level in 2017, 2018, and 2019.

**3.   However, there has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity. The remaining findings address the period(s) the claimant did not engage in substantial gainful activity.**

**The claimant has the following severe impairments: post-traumatic stress disorder (PTSD); major depressive disorder; schizophrenia; and bipolar disorder (20 CFR 404.1520(c) and 416.920(c)).**

The above medically determinable impairments significantly limit the ability to perform basic work activities as required by SSR 85-28.

Hypertension, asthma, polysubstance Abuse (alcohol and cocaine), and degenerative disc disease are additional conditions. However, there is no evidence of any significant complications and/or work-related limitations due to these conditions documented in the record. Accordingly, the undersigned concludes that these additional impairments do not have more than a minimal impact on the claimant's ability to perform work-related activities and are therefore, non-severe.

**4.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**

The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.03, 12.04, and 12.15. In making this finding, I have considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning. An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.

In understanding, remembering or applying information, the claimant has a mild limitation. The claimant testified to performing work as a self- employed housekeeper in 2017 and 2018, and her self-employment income during those years was just below the levels of substantial gainful activity for 2017 and 2018. (See Exhibits 12D, 13D). Mental status examinations have shown the claimant's thought process to be organized with adequate memory and subtraction skills (Exhibits 1F, 2F).

In interacting with others, the claimant has a moderate limitation. The claimant testified that she does not like to go outside. She reported being incarcerated for assault and battery against a family member. The record also reflects arrests for assault on a boyfriend (Exhibit 15F)

With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. The claimant complained to treatment providers of anxiety and depression symptoms with difficulties sleeping and racing thoughts. However, she demonstrated good concentration and attention, and no signs of thought content abnormalities on the mental status examinations (Exhibits 1F, 2F). She has previously reported that one of her strengths included reading (Exhibit 15F/42).

As for adapting or managing oneself, the claimant has experienced a moderate limitation. The claimant testified that her difficulties managing stress contributed to inability to perform fulltime work. She also mentioned pain in her back, legs and chest. However, she did not report any difficulty with activities of daily living and she worked as a self-employed housekeeper in 2017

See Next Page

and 2018.  There is no evidence that she is unable to care for person needs including hygiene and dress.

 Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.

I have also considered whether the "paragraph C" criteria are satisfied.  In this case, the evidence fails to establish the presence of the "paragraph C" criteria.

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process.  The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning.  The following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental function analysis.

**5.   After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: She is limited to performing simple routine tasks and simple work-related decision with few workplace changes and occasional interaction with coworkers and the general public.**

In making this finding, I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p. I also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c and 416.920c.

In considering the claimant's symptoms, I must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, I must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities.  For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, I must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities.

At the hearing, the claimant testified that she was recently released from jail.  She served 97 days for assault and simple battery.  She was participating in a recovery program for six months.  According to the claimant, she worked cleaning houses from 2016 to 2021 but stopped due to stress and difficulty concentrating.  She testified that she has looked for work and received

unemployment for one year. Her mental issues were said to include confusion, and difficulty concentrating, as well as problems following instructions.  She testified that she hates going out in public and does not shop anymore.  She reported pain in back, legs and chest.  She reported difficulty withstanding and walking but no problem with sitting.  Since she has no insurance, her treatment has been through the emergency rooms.  The claimant reported severe chest pain and shortness of breath.  She testified that she has confusion, as well as difficulty sleeping and concentrating.

The record reflects intensive treatment for substance abuse at Cobb/Douglas County CSB.  The claimant has been treated for at least 10 years for substance abuse disorders (cocaine, alcohol and cannabis), bipolar disorder and post-traumatic stress disorder.  In July 2011, it was noted that her children had been removed from her custody (Exhibit 18F).  The record shows a hospitalization for five days in April 2018 at which time severe cocaine stimulant use disorder, moderate alcohol use disorder and PTSD were diagnosed (Exhibit 15F/98).

The claimant was arrested on April 3, 2019, and released on June 6, 2019.  She was charged with simple battery related to a boyfriend.  She was said to have a prior incarceration in March 2019 for a similar charge.  Her current symptoms were said to be anxiety, depression and nightmares.  It was noted that the claimant was homeless and sleeping at a laundry mat.  The record reflects a hospitalization for alcohol detox from January 13-17, 2020.  She reported that her longest period of sobriety was 13 months (Id./183).  She was diagnosed with severe cocaine stimulant use disorder, moderate alcohol use disorder, post-traumatic stress disorder and bipolar 1 disorder, unspecified (Id/198).

On April 1, 2020, it was  noted that the  claimant lacked insight,  had poor judgment and impulse control.  She reportedly talked over the counselor and did not respond well to redirection (Id./77).

When seen on November 17, 2021, diagnoses included bipolar I disorder, current or most recent episode manic, with psychotic features; post-traumatic stress disorder; severe cocaine stimulant use disorder, moderate alcohol use disorder and mild cannabis use disorder (Id./4).

Treatment notes from the Cobb County Jail from February to April 2022 reflect myriad complaints including stomach issues and requests for medication.  However, headaches appear to have been a consistent complaint.

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent. The record reflects an extensive history of substance abuse.  However, the allegation at the hearing was that the claimant's other mental and physical impairments would preclude work activity notwithstanding the substance abuse.  Nevertheless,

See Next Page

mental status examinations have been essentially normal although there has been evidence of anxiety and depression.  In any event, the record does not support a conclusion that the claimant's substance abuse considered in combination with her other impairments has precluded all work activity for a period of 12 continuous months. Her testimony that her difficulty managing stress and difficulty concentrating would not preclude work activity within the residual functional capacity assessment herein.  In this regard, I have accounted for the claimant's mental impairments in finding that the claimant is limited to simple, routine, and repetitive tasks with simple work-related decisions and simple workplace changes, and occasional interaction with coworkers and the general public.

As for medical opinion(s) and prior administrative medical finding(s), I cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources. I have fully considered the medical opinions and prior administrative medical findings as follows:

I considered the prior administrative medical findings provided by the Disability Determination Services psychological consultants. In September 2017, James Kelly, Ph.D., concluded that the claimant had substance addiction disorders and depressive, bipolar, and related disorders but concluded that there was insufficient evidence to evaluate the claimant's mental impairments and claims. (See Exhibits 1A, 2A). Virginia Bell-Pringle, Ph.D., reached the same conclusions at the reconsideration level in February 2018. (Exhibits 5A, 6A). Dr. Kelly and Dr. Bell-Pringle did not have an opportunity to consider all of the evidence at the hearing level, including the claimant's testimony and earnings records, and I find that the evidence at the hearing level is sufficient to support the findings herein. Therefore, I find the prior administrative medical findings provided by Dr. Kelly and Dr. Bell-Pringle to be unpersuasive.

Based on the foregoing, I find the claimant has the above residual functional capacity assessment, which is supported by the overall record, including the documentary evidence and the testimony at the hearing.

**The claimant is capable of performing past relevant work as housekeeper (DOT # 323.687-014), light, unskilled, SVP 2; fast-food worker (DOT # 311.472-010), light, SVP 2; cashier (DOT # 290.477-014), light, semi-skilled,  SVP 2, retail sales (DOT # 299.677-010), light, SVP 2; and hand packager (DOT # 920.587-018), medium, unskilled, SVP 2.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).**

In comparing the claimant's residual functional capacity with the physical and mental demands of this work, I find that the claimant is able to perform it as actually and generally performed. This work activity satisfies recency, duration, and substantial gainful activity requirements of 20 CFR 404.1565(a) and 416.965(a). The testimony of the vocational expert is being accepted in accordance with SSR 00-4p.

In addition to past relevant work, there are other jobs that exist in significant numbers in the national economy that the claimant also can perform, considering the claimant's age, education, work experience, and residual functional capacity (20 CFR 404.1569, 404.1569a, 416.969, and

See Next Page

Case 1:23-mi-99999-UNA   Document 105-1   Filed 01/12/23   Page 12 of 20

Felicia Ann Scott (BNC#: 21OC564E76422)                    Page 8 of 9

416.969a).  Therefore, I make the following alternative findings for step five of the sequential evaluation process.

The claimant was born on May 23, 1979, and was 37 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).  The claimant has at least a high school education (20 CFR 404.1564 and 416.964).  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

In determining whether a successful adjustment to other work can be made, I must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2.  If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11).  When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decision-making unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14).  If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decision making (SSR 85-15).

The claimant's ability to perform work at all exertional levels has been compromised by nonexertional limitations.  To determine the extent to which these limitations erode the occupational base of unskilled work at all exertional levels, I asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity.  The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as laundry worker, DOT # 361 684 014, 15,000 in  the national economy; kitchen worker, 318 687 010, 180,000 in the national economy; and  janitor custodian,  DOT 381.687-018 medium, unskilled, SVP 2, 18,000 in the national economy.

Pursuant to SSR 00-4p, I have determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

Based on the testimony of the vocational expert, I conclude that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.  A finding of "not disabled" is therefore appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines.

**6.    The claimant has not been under a disability, as defined in the Social Security Act, from October 15, 2016, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).**

See Next Page

## DECISION

Based on the application for a period of disability and disability insurance benefits protectively filed on May 1, 2017, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.

Based on the application for supplemental security income protectively filed on May 2, 2017, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

/s/ *Carla McMichael*

Carla McMichael
Administrative Law Judge

August 16, 2022
Date

## LIST OF EXHIBITS

### Payment Documents/Decisions

| Component | No. | Description | Received | Dates | Pages |
|---|---|---|---|---|---|
| X83 | 1A | DDE-T2 Initial / PRT / No RFC / signed by DDS Dr. | | 2017-09-21 | 8 |
| X83 | 2A | DDE-T16 Initial / PRT / No RFC / signed by DDS Dr. | | 2017-09-21 | 8 |
| X83 | 3A | Initial Disability Determination by State Agency, Title II | | 2017-09-21 | 1 |
| X83 | 4A | Initial Disability Determination by State Agency, Title XVI | | 2017-09-21 | 1 |
| X83 | 5A | DDE-T16 Recon / PRT / No RFC / signed by DDS Dr. | | 2018-02-05 | 7 |
| X83 | 6A | DDE- T2 Recon / PRT / No RFC / signed by DDS Dr. | | 2018-02-05 | 7 |
| X83 | 7A | Reconsideration Disability Determination by State Agency, Title II | | 2018-02-05 | 1 |
| X83 | 8A | Reconsideration Disability Determination by State Agency, Title XVI | | 2018-02-05 | 1 |
| Y13 | 9A | ALJ Hearing Decision | | 2020-02-03 | 22 |
| Y13 | 10A | AC Order | | 2021-03-18 | 4 |

### Jurisdictional Documents/Notices

| Component | No. | Description | Received | Dates | Pages |
|---|---|---|---|---|---|
| X83 | 1B | Appointment of Representative | | 2017-03-24 | 2 |
| X83 | 2B | T2 Notice of Disapproved Claim | | 2017-09-28 | 4 |
| X83 | 3B | T16 Notice of Disapproved Claim | | 2017-09-28 | 4 |

| | | | | |
|---|---|---|---|---|
| X83 | 4B | Request for Reconsideration | 2017-10-18 | 2 |
| X83 | 5B | T2 Disability Reconsideration Notice | 2018-02-06 | 4 |
| X83 | 6B | T16 Disability Reconsideration Notice | 2018-02-06 | 4 |
| X83 | 7B | Request for Hearing by ALJ | 2018-04-13 | 2 |
| X83 | 8B | Request for Hearing Acknowledgement Letter | 2018-06-08 | 15 |
| X83 | 9B | Claimant's Change of Address Notification | 2018-07-05 | 2 |
| X83 | 10B | Hearing Notice | 2018-12-11 | 23 |
| X83 | 11B | Claimant's Change of Address Notification | 2018-12-11 | 1 |
| X83 | 12B | Notice Of Hearing Reminder | 2019-02-14 | 6 |
| X83 | 13B | Hearing Notice | 2019-05-21 | 29 |
| X83 | 14B | Notice Of Hearing Reminder | 2019-07-23 | 6 |
| X83 | 15B | Notice to Show Cause for Failure to Appear | 2019-08-07 | 3 |
| X83 | 16B | Hearing Notice | 2019-10-18 | 29 |
| X83 | 17B | Notice Of Hearing Reminder | 2019-12-26 | 6 |
| Y13 | 18B | Request for Review of Hearing Decision/Order | 2020-02-28 | 1 |
| Y13 | 19B | AC Correspondence | 2020-07-30 | 5 |
| Y13 | 20B | Request for Hearing Acknowledgement Letter | 2021-01-07 | 14 |
| Y13 | 21B | Hearing Notice | 2021-02-05 | 18 |
| Y13 | 22B | SSA-1696 - Claimant's Appointment of a Representative | 2021-07-20 | 4 |
| Y13 | 23B | Fee Agreement for Representation before SSA | 2021-07-20 | 1 |
| Y13 | 24B | Notice Of Hearing Reminder | 2022-01-20 | 6 |
| Y13 | 25B | SSA-1696 - Claimant's Appointment of a Representative | 2022-02-08 | 1 |

| Y13 | 26B | Fee Agreement for Representation before SSA | 2022-02-08 | 1 |
| Y13 | 27B | SSA-1696-SUP2 - Representative's Withdrawal of Acceptance of Appointment | 2022-02-17 | 1 |
| Y13 | 28B | Waive Advance Notice of Hearing | 2022-02-17 | 1 |
| Y13 | 29B | Hearing Notice | 2022-03-15 | 28 |
| Y13 | 30B | Notice Of Hearing Reminder | 2022-05-05 | 6 |
| Y13 | 31B | Claimant's Change of Address Notification | 2022-06-02 | 1 |

## Non-Disability Development

| Component | No. | Description Received | Dates | Pages |
|---|---|---|---|---|
| X83 | 1D | Application for Disability Insurance Benefits | 2017-05-02 | 2 |
| X83 | 2D | Amendments To Application | 2017-05-02 | 4 |
| X83 | 3D | Application for Supplemental Security Income Benefits | 2017-05-24 | 6 |
| X83 | 4D | Certified Earnings Records | 2018-10-23 | 2 |
| X83 | 5D | Detailed Earnings Query | 2018-10-24 | 5 |
| X83 | 6D | Summary Earnings Query | 2018-10-24 | 1 |
| X83 | 7D | New Hire, Quarter Wage, Unemployment Query (NDNH) | 2018-10-24 | 1 |
| X83 | 8D | Detailed Earnings Query | 2019-02-26 | 7 |
| X83 | 9D | Certified Earnings Records | 2019-02-27 | 3 |
| X83 | 10D | Detailed Earnings Query | 2019-07-29 | 7 |
| X83 | 11D | Certified Earnings Records | 2019-08-02 | 2 |
| X83 | 12D | Certified Earnings Records | 2019-12-31 | 2 |
| X83 | 13D | Detailed Earnings Query | 2019-12-31 | 7 |

| | | | | | |
|---|---|---|---|---|---|
| Y13 | 14D | New Hire, Quarter Wage, Unemployment Query (NDNH) | | 2021-03-18 | 1 |
| Y13 | 15D | Summary Earnings Query | | 2021-03-18 | 1 |
| Y13 | 16D | Certified Earnings Records | | 2021-03-18 | 3 |
| Y13 | 17D | DIBWIZ | | 2021-03-18 | 4 |
| Y13 | 18D | DISCO DIB Insured Status Report | | 2021-03-18 | 2 |
| Y13 | 19D | WHAT - Work History Assistant Tool | | 2021-04-27 | 16 |
| Y13 | 20D | Detailed Earnings Query | | 2021-04-27 | 11 |
| Y13 | 21D | Summary Earnings Query | | 2021-04-27 | 1 |
| Y13 | 22D | New Hire, Quarter Wage, Unemployment Query (NDNH) | | 2021-04-27 | 1 |
| Y13 | 23D | Certified Earnings Records | | 2021-04-27 | 3 |
| Y13 | 24D | Summary Earnings Query | | 2022-02-16 | 1 |
| Y13 | 25D | Detailed Earnings Query | | 2022-02-16 | 10 |
| Y13 | 26D | New Hire, Quarter Wage, Unemployment Query (NDNH) | | 2022-02-16 | 1 |
| Y13 | 27D | WHAT - Work History Assistant Tool | | 2022-02-17 | 11 |
| Y13 | 28D | WHAT - Work History Assistant Tool | | 2022-05-20 | 6 |

### Disability Related Development

| Component | No. | Description | Received | Source | Dates | Pages |
|---|---|---|---|---|---|---|
| X83 | 1E | Function Report - Adult | | Scott, Felicia Ann | to 2017-03-24 | 9 |
| X83 | 2E | Disability Report - Field Office | | | to 2017-05-24 | 3 |
| X83 | 3E | Disability Report - Adult | | | to 2017-05-24 | 7 |
| X83 | 4E | Work History | | Scott, Felicia Ann | to 2017-07-07 | 13 |

| | | | | | |
|---|---|---|---|---|---|
| X83 | 5E | Claimant did not keep scheduled CE Appointment | Scott, Felicia Ann | to 2017-08-25 | 1 |
| X83 | 6E | Disability Report - Appeals | | to 2017-10-19 | 7 |
| X83 | 7E | Disability Report - Field Office | | to 2017-10-19 | 2 |
| X83 | 8E | Statement of Claimant or Other Person | | to 2018-02-13 | 3 |
| X83 | 9E | Disability Report - Field Office | | to 2018-06-06 | 2 |
| X83 | 10E | Disability Report - Appeals | | to 2018-06-06 | 10 |
| X83 | 11E | Exhibit List to Rep PH2E | | to 2018-10-24 | 11 |
| X83 | 12E | Resume of Vocational Expert | | | 4 |
| X83 | 13E | Resume of Vocational Expert | | | 2 |
| X83 | 14E | Report of Contact | | to 2019-08-05 | 1 |
| X83 | 15E | Report of Contact | | to 2019-08-05 | 1 |
| X83 | 16E | Resume of Vocational Expert | | | 3 |
| Y13 | 17E | Exhibit List to Rep PH2E | | to 2021-03-18 | 12 |
| Y13 | 18E | Report of Contact | | to 2021-03-29 | 1 |
| Y13 | 19E | 3rd Party Function Report - Adult | Bart Scott | to 2021-03-31 | 11 |
| Y13 | 20E | Resume of Vocational Expert | Marilyn J. Stroud | to 2021-04-20 | 2 |
| Y13 | 21E | Report of Contact | | to 2021-12-04 | 1 |
| Y13 | 22E | Report of Contact | | to 2021-12-04 | 1 |
| Y13 | 23E | Resume of Vocational Expert | Barbara H. Azzam | to 2022-01-21 | 2 |
| Y13 | 24E | Misc Disability Development and Documentation | | to 2022-01-21 | 2 |

| Component | No. | Description | | Source | Dates | Pages |
|---|---|---|---|---|---|---|
| Y13 | 25E | Correspondence regarding efforts to obtain evidence | | | to 2022-05-02 | 2 |
| Y13 | 26E | Correspondence regarding efforts to obtain evidence | | | to 2022-05-26 | 2 |
| Y13 | 27E | Resume of Vocational Expert | | Barry Murphy | to 2022-06-01 | 1 |
| Y13 | 28E | Representative Correspondence | | | 2022-06-01 to | 1 |

## Medical Records

| Component | No. | Description | Received | Source | Dates | Pages |
|---|---|---|---|---|---|---|
| X83 | 1F | Office Treatment Records | | Cobb Douglas Community Service Board | 2012-02-08 to 2017-03-16 | 49 |
| X83 | 2F | Office Treatment Records | | Cobb Douglas Community Service Board | 2017-02-13 to 2017-06-22 | 113 |
| X83 | 3F | Medical Request | | Hope Springs Wellness & Recovery | to 2017-07-19 | 2 |
| X83 | 4F | Medical Request for Additional Records | | Cobb Douglas Community Service Baord | to 2017-11-17 | 3 |
| X83 | 5F | Office Treatment Records | | Cobb County Community Services Board | 2018-01-01 to 2018-12-20 | 1 |
| X83 | 6F | Office Treatment Records | | Cd Cobb Outpatient Services | 2018-12-13 to 2018-12-20 | 2 |
| T2L | 7F | Office Treatment Records | | Cobb / Douglas County Csb | 2018-12-13 to 2019-12-09 | 15 |
| T2L | 8F | Office Treatment Records | | Cobb County Community Service Board | 2010-01-01 to 2020-01-07 | 19 |
| Y13 | 9F | HIT MER | | Wellstar Health System | 2018-12-23 to 2020-08-29 | 683 |
| Y13 | 10F | HIT MER | | Wellstar Health System #2 | 2021-02-24 to 2021-02-25 | 128 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Y13 | 11F | Medical Evidence of Record | | Cobb Douglas Community Service Board | 2011-07-27 to 2021-01-16 | 1512 |
| Y13 | 12F | Office Treatment Records | | Georgia Cancer Specialists - M | 2020-05-04 to 2021-04-27 | 14 |
| Y13 | 13F | Office Treatment Records | | Peachford Hospital | 2021-11-07 to 2021-11-15 | 26 |
| Y13 | 14F | Office Treatment Records | | Piedmont Eastside Medical Center | to 2020-08-18 | 15 |
| Y13 | 15F | Office Treatment Records | | Cobb Community Service Board | 2011-08-05 to 2022-01-27 | 1966 |
| Y13 | 16F | Office Treatment Records | | Wellstar Cobb Hospital | 2021-11-05 to 2022-01-05 | 73 |
| Y13 | 17F | Medical Evidence of Record | | Ridgeview Institute | 2010-01-01 to 2022-05-02 | 1 |
| Y13 | 18F | Office Treatment Records | Subsequent to hearing | Highland Rivers Health Cobb County | 2018-05-03 to 2022-06-02 | 491 |