**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| PerDiemCo LLC, | |
| Plaintiff, | **Civil Action No.:** |
| v. | |
| NexTraq LLC, | **JURY TRIAL DEMANDED** |
| Defendant. | |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff PerDiemCo LLC ("PerDiem" or "Plaintiff"), for its Complaint against Defendant NexTraq LLC, ("NexTraq" or "Defendant") alleges the following:

## NATURE OF THE ACTION

1.     This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, involving infringement of certain claims of patents identified by United States Patent Nos. 9,680,941 ("the '941 patent", Exhibit A); 9,871,874 ("the '874 patent", Exhibit B); 10,021,198 ("the '198 patent", Exhibit C); 10,397,789 ("the '789 patent", Exhibit D); 10,602,364 ("the '364 patent", Exhibit E); 10,819,809 (the '809 patent, Exhibit F) and 11,064,038 (the '038 patent, Exhibit G) (collectively "the Patents-in-Suit").  Herein, the asserted claims of the Patents-in-Suit are referred to as "Asserted Claims."

## THE PARTIES

2.      Plaintiff PerDiem is a limited liability company organized under the laws of the State of Texas with a place of business at 505 East Travis Street, Suite 205, Marshall, Texas 75670.

3.     PerDiem is the current assignee of each and all of the Patents-in-Suit.

4.     On information and belief, Defendant NexTraq is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business at 1200 Lake Hearn Drive, Suite 500, Atlanta, Georgia 30319.

5.     NexTraq does business in the Northern District of Georgia and nationally through the sale and servicing of its mobile communications products and technology in the transportation industry.

6.     NexTraq conducts business in this District at its corporate headquarters, located at 1200 Lake Hearn Drive, Suite 500, Atlanta, Georgia 30319 ("NexTraq's Physical Location").

7.     NexTraq's Physical Location is a fixed physical location located within this District.

8.     NexTraq's Physical Location is a location that represents a regular and established place of business for NexTraq.

9.     Upon information and belief, NexTraq is the owner and/or lessee of NexTraq's Physical Location.

10.     Upon information and belief, NexTraq is in possession of and has control over, NexTraq's Physical Location.

11.     Upon information and belief, NexTraq has employees in Georgia and employs Georgia residents within the Northern District of Georgia.

12.     NexTraq also does business in the Northern District of Georgia and nationally through its website—www.nextraq.com.

## JURISDICTION AND VENUE

13.     This is an action for patent infringement arising under the Patent Laws of the United States, Title 35 of the United States Code.

14.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

15.     This Court has personal jurisdiction over NexTraq. NexTraq's actions establish such minimum contacts that jurisdiction comports with the Georgia longarm statute, O.C.G.A. § 9-10-91, and the United States Constitution.

16.     Upon information and belief, NexTraq has conducted and does conduct business within the State of Georgia and maintains a regular and established place of business in the Northern District of Georgia, including but not limited to NexTraq's Physical Location

17.     Upon information and belief, NexTraq, directly and/or through subsidiaries or intermediaries, ships, distributes, offers for sale, sells, and/or advertises (including through its web pages) its products and services (including infringing products and services) described herein within this District.

18.     Upon information and belief, NexTraq has committed acts of patent infringement within this District.

19.     Upon information and belief, NexTraq has contributed to or induced (instructing and supplying others with infringing products and instructions for use) patent infringement by others in this District.

20.     NexTraq has purposefully and voluntarily placed one or more infringing products into the stream of commerce with the expectation that it will be purchased and used by consumers in the Northern District of Georgia.

21.     Upon information and belief, NexTraq has committed acts of patent infringement within the State of Georgia and, more particularly, within the Northern District of Georgia.

22.     Venue is proper within this District under 28 U.S.C. § 1400(b) because, on information and belief, NexTraq maintains its corporate headquarters in this District and has committed infringing acts in this District.  These infringing acts include at least its sales of the Accused

Instrumentalities in this District and also under 28 U.S.C. § 1391(b)(2) because NexTraq sells and offers to sell products and services throughout the United States, including in this District, and introduces its products and services into the stream of commerce and effectuates these sales knowing that the products and services would be sold and used in this District and elsewhere in the United States.

23.     Venue is also proper in this District because it is the most convenient forum for the parties.

## THE TECHNOLOGY AND THE PATENTS-IN-SUIT

24.     Darrell Diem, the inventor of the Patents-in-Suit, served in the Air Force for four years as an electronics technician.  After being honorably discharged, Mr. Diem worked his way through college to earn degrees in physics and mathematics from Marquette University.  Mr. Diem also obtained a Master of Business Administration from Michigan State University, and a Master of Arts in Pastoral Ministries from St. Thomas University, Miami, Florida.  Mr. Diem has worked for Motorola, Harris Corporation, Time Domain, and other leading technology companies.

25.     Mr. Diem conceived the inventions in the Patents-in-Suit when his daughter's car broke down on a long road trip.  Mr. Diem wanted to convey location information for his daughter in an efficient way that would still protect her privacy.  Mr. Diem's inventions have a broad range of significant applications and are widely used today.

26.     Each of the asserted patents is valid and enforceable.

27.     PerDiem is the exclusive owner of all right, title, and interest in each of the asserted patents.  PerDiem has the right to bring this action to recover damages for any current or past infringement of these patents.  Plaintiff PerDiem has never granted Defendant NexTraq a license to practice any of the Patents-in-Suit.

28.     The '941 patent, entitled "Location Tracking System Conveying Event Information Based on Administrator Authorizations," was duly and legally issued by the United States Patent and Trademark Office on June 13, 2017.  A copy of the '941 patent is attached hereto as Exhibit A.

29.     The '874 patent, entitled "A Multi-Level Database Management System and Method for an Object Tracking Service That Protects User Privacy," was duly and legally issued by the United States Patent and Trademark Office on January 16, 2018.  A copy of the '874 patent is attached hereto as Exhibit B.

30.     The '198 patent, entitled "Software-Based Mobile Tracking Service with Video Streaming When Events Occur," was duly and legally issued by the United States Patent and Trademark Office on July 10, 2018.  A copy of the '198 patent is attached hereto as Exhibit C.

31.     The '789 patent, entitled, "Method for Controlling Conveyance of Event Information About Carriers of Mobile Device Based on Location Information Received from Location Information Sources Used by the Mobile Devices," was duly and legally issued by the United States Patent and Trademark Office on August 27, 2019.  A copy of the '789 patent is attached hereto as Exhibit D.

32.     The '364 patent, entitled, "Method for Conveyance of Event Information to Individuals Interested Devices Having Phone Numbers," was duly and legally issued by the United States Patent and Trademark Office on March 24, 2020.  A copy of the '364 patent is attached hereto as Exhibit E.

33.     The '809 patent, entitled "Method for Controlling Conveyance Of Event Notifications in Sub-Groups Defined Within Groups Based on Multiple Levels Of Administrative Privilege,"

was duly and legally issued by the United States Patent and Trademark Office on October 27, 2020.  A copy of the '364 patent is attached hereto as Exhibit F.

34.     The '038 patent, entitled, "Method for Tracking Mobile Objects Based on Event Conditions Met at Mobile Object Locations", was duly and legally issued by the United States Patent and Trademark Office on July 13, 2021.  A copy of the '364 patent is attached hereto as Exhibit G.

35.     The Asserted Claims are patentable under 35 U.S.C. §§ 101, 102, 103, and 112, as confirmed because multiple Patent Examiners agreed and allowed the Patents-in-Suit over extensive prior art as disclosed and of record during the prosecution of the Patents-in-Suit. See *Stone Basket Innov. v. Cook Med.,* 892 F.3d 1175, 1179 (Fed. Cir. 2018) ("when prior art is listed on the face of a patent, the examiner is presumed to have considered it") (citing *Shire LLC v. Amneal Pharm., LLC*, 802 F.3d 1301, 1307 (Fed. Cir. 2015)); *Exmark Mfg. v. Briggs & Stratton*, 879 F.3d 1332, 1342 (Fed. Cir. 2018).

36.     After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiners allowed all of the claims of the Patents-in-Suit to issue. In so doing, it is presumed that Examiners used their knowledge of the art when examining the claims. See *K/S Himpp v. Hear-Wear Techs.*, LLC, 751 F.3d 1362, 1369 (Fed. Cir. 2014). It is further presumed that Patent Examiners had experience in the field of the invention and that the Patent Examiners properly acted in accordance with a person of ordinary skill. *In re Sang Su Lee*, 277 F.3d 1338, 1345 (Fed. Cir. 2002).

37.     The claims of the Patents-in-Suit are novel and non-obvious, including overall non-cited art that is merely cumulative with the referenced and cited prior art. See 37 C.F.R. § 1.56(b)

(information is material to patentability when it is not cumulative to information already of record in the application); see also *AbbVie Deutschland GmbH v. Janssen Biotech*, 759 F.3d 1285, 1304 (Fed. Cir. 2014); *In re DBC*, 545 F.3d 1373, 1382 (Fed. Cir. 2008). Likewise, the claims of the Patents-in-Suit are novel and non-obvious, including overall non-cited contemporaneous state-of-the-art systems and methods, all of which would have been known to a person of ordinary skill in the art, and which were therefore presumptively also known and considered by the Examiners. See, e.g., *St. Clair I.P. Consultants v. Canon, Inc.,* 2011 WL 66166 at *6 (Fed. Cir. 2011); *In re Sang Su Lee*, 277 F.3d 1338, 1345 (Fed. Cir. 2002); *In re Koninklijke Philips Patent Litigation*, 2020 WL 7392868 at *19 (N.D. Cal. 2020); *Standard Oil v. American Cyanamid*, 774 F.2d 448, 454 (Fed. Cir. 1985) (persons of ordinary skill are presumed to be aware of all pertinent prior art.

38.     The claims of the Patents-in-Suit are entitled to the presumption of validity under 35 U.S.C. § 282.

39.     Now with knowledge of the Patents-in-Suit, Defendant induces infringement under Title 35 U.S.C. § 271(b). Defendant will have performed actions that induced infringing acts that Defendant knew or should have known would induce actual infringements. See *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed.Cir.1990), quoted in *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed.Cir.2006) (en banc in relevant part). "[A] finding of inducement requires a threshold finding of direct infringement—either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Ricoh*, 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co.*, 501 F.3d 1307, 1313, (Fed. Cir. 2007).

40.     Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element. See *Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee

may prove intent through circumstantial evidence."); *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

41.    Defendant has taken active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the accused product to be used in an infringing manner. See *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

## PERDIEM'S PATENTS

42.    The inventions claimed in the Patents-in-Suit represent improvements to location tracking systems.  More specifically, the claims of the geofencing patents are directed to, in part, improved location tracking systems and related methods.  The system may track locations of a plurality of mobile objects or devices in a network employed to provide a tracking service that sends notifications or alerts after group event conditions which are based on locations of grouped tracked objects are met.

43.    Group event conditions may relate to mobile object/device locations and a zone where the occurrence of an event causes an alert/notification to be sent when grouped vehicles equipped with GPS devices cross a boundary.

44.    The claimed inventions provide improvements over conventional networks by providing a reliable and efficient way for the service subscribers to track objects and convey the notifications to authorized recipients.  The claimed inventions provide these benefits, in part, by

creating multiple levels of administrative privileges and applying multiple levels of access control by checking the privileges.

45.     In one embodiment, the multiple levels of administrative privileges include a first level of administrative privilege used by a system administrator of the tracking service for controlling user membership in groups specified by the administrator and a second level of privilege being assigned to a second administrator, e.g., a service subscriber, in each group by the system administer for controlling conveyance of the notifications in the corresponding group such that the administrator having the first level of administrative privilege does not exercise the second level of administrative privilege.

46.     Under this structure, the second administrator has control over who receives the notifications in the group independent of the system administrator and second administrators of other groups.   Interfaces may be provided to the second administrator allow for setting event conditions and alert/notifications for the group.

47.     As this embodiment is claimed, a first level of access control is used to allow the second administrator to specify an event condition, i.e. a geo-fence, for the group and specify an access list such that only identified authorized users on the access list can receive the notification information, thereby providing enhanced privacy.  A second level of access control is used to allow authorized            recipients            to            access            the            notifications/alerts.


## PERDIEM'S CLAIMS ARE PATENT ELIGIBLE

48.     The claims in the Patents-in-Suit are directed to patent-eligible subject matter.

49.    The Patents-in-Suit are directed to providing unconventional computing solutions that address problems that are particular to computerized location tracking systems.

50.    The systems, devices and methods of the Patents-in-Suit claim establishing object location events that may be defined at an application or user level.  (*See, e.g.,* '941 patent at 2:11-15.)  The systems, devices and methods and of the Asserted Claims are also directed to conveying information relating to the object location events to one or more computing devices which may be associated with corresponding identification codes of one or more users.  (*Id.* at 2:16-19.)

51.    According to one embodiment, an object location event can relate to information about a location of an object and information about a zone that is defined by a user.  (*Id.* at 2:23-25.)  In another embodiment, information about a location can be derived from a location information source that is associated with an object and the object location event may occur by satisfaction of a defined relationship or condition between an object location information and user-defined zone information.  (*Id.* at 2:26-31.)

52.    Providing computerized location tracking systems with systems, devices and methods in the manner claimed in the Patents-in-Suit solved challenges over the techniques and systems known in the art at the time.  Thus, the claims of the Patents-in-Suit contain inventive concepts, being both novel and unconventional, which are sufficient to render the Asserted Claims to be patent eligible.

53.    In particular, prior to the priority date of the Patents-in-Suit, in systems, such as traditional location tracking systems, information about the mere location of a device might be conveyed but without the correlation of events with location of objects and the conveyance of information about such events to computing devices.  (*Id.* at 1:55-60.)

54.     The Patents-in-Suit overcame these disadvantages by, for example, describing and enabling systems, devices and methods for delivering information about a location that is derived from a location information source that is associated with an object and the object location event that may occur by satisfaction of a defined relationship or condition between an object location information and user-defined zone information (*id.* at 2:26-31), and conveying information relating to the object location events to one or more computing devices which may be associated with corresponding identification codes of one or more users (*id*. at 2:16-19).

55.     The inventions of the Patents-in-Suit resolve technical problems related to interactive location tracking technology.  For example, the inventions allow remotely located parties to interact in a computerized environment in real time with one or more users, which, on information and belief, is exclusively implemented using computer technology.  (*id*. at 17:9-57).

56.     The claims of the Patents-in-Suit do not merely recite the performance of some method known from the pre-Internet world along with the requirement to perform it on the Internet. Instead, the claims of the Patents-in-Suit recite inventive concepts that are rooted in computerized location tracking system technology and overcome problems specifically arising in the realm of computerized location tracking system technologies.  (*id*. at 1:21-59).

57.     The technology claimed in the Patents-in-Suit does not preempt all ways of using location tracking system technology, nor preempt the use of any well-known location tracking technology, nor preempt any other well-known or prior art technology.

58.     The Asserted Claims are not directed to any general or well-known "method of organizing human activity," "fundamental economic practice long prevalent in our system of commerce," nor are any of the claims "a building block of the modern economy."

59.     The Patents-in-Suit do not take a well-known or established business method or process and apply it to a general-purpose computer.  Instead, the specific systems and processes described in the Patents-in-Suit have no direct corollary to a process that predates the advent of the Internet.

60.     The Asserted Claims are directed toward a solution rooted in computer technology and uses technology, unique to computers and networks, to overcome problems specifically arising in the realm of computerized location tracking technologies.

61.     The Asserted Claims are not directed at a mere mathematical relationship or formula.

62.     The Asserted Claims cannot be performed by a human, in the human mind, or by pen and paper.

63.     Accordingly, each claim of the Patents-in-Suit recites a combination of elements sufficient to ensure that each claim, in practice, amounts to significantly more than a claim on an ineligible concept.

## PERDIEM'S PATENT LITIGATION HISTORY

64.     The eight patents asserted here each claim priority to U.S. Provisional Patent Application No. 60/752,879, filed on December 23, 2005.

65.     PerDiem owns other, non-asserted related patents that share a patent specification with the asserted patents and claim priority to the same provisional application, Serial No. 60/752,879. Several of the related PerDiem patents, both asserted and non-asserted, have been subject to extensive federal court litigations in various districts.

66.     Several of the non-asserted related PerDiem patents have been subject to extensive federal court litigations in the Eastern District of Texas ("the EDTX Litigations") against eleven companies, each of which settled with PerDiem after the filing of thirteen *Inter Partes* Review

(IPR) petitions ("the EDTX-related IPRs") challenging the validity of various of PerDiem's patent claims.  All settlements in these EDTX Litigations resulted in licensing agreements in which PerDiem was compensated.   Furthermore, all the prior art that has been recited in an asserted ground in any of the thirteen EDTX-related IPRs was submitted for consideration by the USPTO in the prosecution history of the Patents-in-Suit.

67.     PerDiem is the owner of all right, title and interest in the Patents-in-Suit, including the right to bring patent enforcement actions for damages.  The assignment to PerDiem of ownership of the Patents-in-Suit was recorded with the United States Patent & Trademark Office ("USPTO") at Reel 035620, Frame 0088 of the USPTO assignment records.   The recorded assignment references all subsequent related applications of the parent patents listed on the recorded assignment, thereby encompassing the Patents-in-Suit.

68.     During one previous Litigation, the court issued a Claim Construction Memorandum and Order attached hereto as Exhibit H construing several terms relevant to this action. *PerDiemCo LLC v. Industrack LLC et al.*, No. 2:15-cv-727-JRG-RSP (July 7, 2016) at Dkt. 107. The Patents-in-Suit in this action have the same ownership and specification as those at issue in the EDTX.

69.     In the previous Litigation, the court adopted the R&R attached hereto as Exhibit I, confirming that the claims at issue contain eligible subject matter under 35 U.S.C. §101 and that the specification supports the claims under 35 U.S.C. §112.  *PerDiemCo LLC v. Industrack LLC et al.*, No. 2:15-cv-727-JRG-RSP (September 29, 2016) at DKT 233

70.     During another previous Litigation, the court issued a Claim Construction Memorandum and Order attached hereto as Exhibit J construing several terms relevant to this

action. *PerDiemCo LLC v GPS LOGIC, LLC, et al.*, No. 2:15-cv-1216-JRG-RSP (July 27, 2016,) at Dkt. 155.

71.     During this previous Litigation, the court issued an R&R attached as Exhibit K holding the specification satisfies the written description and enablement requirement. *PerDiemCo LLC v GPS LOGIC, LLC, et al.*, No. 2:15-cv-1216-JRG-RSP (July 27, 2016,) at Dkt. 272.

72.      NexTraq's accused products and services infringe one or more claims of the Patents-in-Suit (Exhibits A through G) as set forth in detail in the attached claim charts (Exhibits A-1 through G-1) as indicated below.

## THE ACCUSED INSTRUMENTALITIES

73.     NexTraq offers tracking products and services (the Accused Instrumentalities), including but not limited to NexTraq® Fleet Tracking solution (https://www.nextraq.com/wp-content/uploads/2018/04/NexTraq_New_User_Quick_Start_Guide.pdf), which provides data to NexTraq® Web Services (http://www.discretewireless.com/resources/APIReference.pdf) for use in various platforms and solutions that support:

1.      NexTraq®'s Fleet Visibility and  Productivity products, services and solutions which are used for vehicle tracking (https://www.nextraq.com/services/vehicle-tracking/), asset tracking https://www.nextraq.com/services/asset-tracking/), geo-fencing and mapping (https://www.nextraq.com/services/geofencing-mapping/), real-time alerts (https://www.nextraq.com/services/real-time-alerts/), sensors (https://www.nextraq.com/services/sensors/) and integration with third-party platforms, solutions and/or applications (https://www.nextraq.com/services/integration/);

2.      NexTraq® View™ and NexTraq® Connect™ mobile apps which are used by mobile workforce (https://www.nextraq.com/services/mobile-apps/);

3.      NexTraq® Fleet Defender (https://www.nextraq.com/services/fleet-defender/) and NexTraq® Dashcam™ (https://www.nextraq.com/services/dashcam/) which are used for drive safety;

4.      NexTraq® Driver ID, which is used for Automatic Driver Assignment (https://www.nextraq.com/services/automatic-driver-assignment/); or

5.      NEXTRAQ® ELD for iOS® and Android® tablets and smartphones which are used for ELD Compliance (https://www.nextraq.com/services/eld-compliance/).

74.     More specifically, NexTraq makes, uses, sells, offers for sale, and/or imports at least the Accused Instrumentalities, each of which supports the ability to monitor and report vehicle fleet activity.

75.     On information and belief, NexTraq is a for-profit entity owned by Groupe Michelin of France.  Moreover, NexTraq, its employees and/or agents make, use, sell, offer to sell, import, and/or provide and/or cause to be used the Accused Instrumentalities for NexTraq's partners and customers, leading to direct or indirect revenues and profit.  On information and belief, without the availability of infringing tools such as the Accused Instrumentalities, NexTraq would be at a disadvantage in the marketplace and would generate less revenue and profit overall.

## COUNT I – INFRINGEMENT OF THE '941 PATENT

76.     Paragraphs 1 through 75 are incorporated by reference as if fully set forth herein.

77.     NexTraq directly infringes and continues to directly infringe under 35 U.S.C. § 271(a) at least one or more claims of the '941 patent either literally and/or under the doctrine of equivalents, by, among other things, making, using, importing, selling, offering for sale and/or providing and/or causing to be used in the United States the Accused Instrumentalities.  An

exemplary claim chart detailing the correspondence of every element of claims 1, 3, 4, 7, 8, 9, 11, 12, 19 of the '941 patent with features of the Accused Instrumentalities is attached hereto as Exhibit A-1 and incorporated by reference.

78.     Third parties, including NexTraq's customers, have directly infringed, and continue to directly infringe under 35 U.S.C. § 271(a), one or more claims of the '941 patent, either literally and/or under the doctrine of equivalents, by making, using, importing, selling, and/or offering for sale the Accused Instrumentalities in the United States so as to infringe one or more claims of the '941 patent.

79.     NexTraq was made aware of the '941 patent and its infringement through at least the filing and service or notice of filing of this Complaint.

80.     Upon information and belief, since at least the time NexTraq received notice, NexTraq has induced infringement and continues to induce infringement under 35 U.S.C. § 271(b). NexTraq has actively, knowingly, and intentionally induced, and with specific intent or conscious blindness, actively aided and abetted others to infringe, and continues to actively, knowingly, and intentionally induce others to infringe, including but not limited to each of NexTraq's partners, clients, customers, and end users, whose use of the Accused Instrumentalities constitutes direct infringement of at least one claim of the '941 patent.

81.     NexTraq induces infringement by selling or otherwise supplying and supporting the Accused Instrumentalities in the United States with the knowledge and intent that third parties will use, sell, and/or offer for sale in the United States the accused products, for their intended purpose to infringe the '941 patent, with instructions as to the use of that product and guidance as to the specific steps that must be taken to utilize that product, including the provision of interactive data fields,   such   as   through   NexTraq's   Fleet   Tracking   software   (see   User   Guide   at

https://www.nextraq.com/wp-content/uploads/2018/04/NexTraq_New_User_Quick_Start_Guide.pdf, last accessed and downloaded December 6, 2022.), all with the knowledge and intent to encourage and facilitate infringement through the dissemination of the Accused Instrumentalities and/or the creation and dissemination of documentation and technical information to customers and prospective customers related to the Accused Products and Services, including the product literature described in Exhibit A-1, attached hereto.

82.     In particular, NexTraq's actions that aid and abet others to infringe include advertising and/or providing support services to partners contracted by NexTraq or providing instruction materials, training, and services regarding the Accused Instrumentalities which actively induce a user of the NexTraq system to infringe the Asserted Claims.  For example, NexTraq provides potential users with detailed instruction materials on how to operate NexTraq's Fleet Tracking software (see FleetOutlook® User Guide at https://www.nextraq.com/wp-content/uploads/2018/04/NexTraq_New_User_Quick_Start_Guide.pdf, last accessed and downloaded December 6, 2022) in a way that infringes at least one claim of the '941 patent.

83.     Upon information and belief, since at least the time NexTraq received notice, NexTraq has contributed to, and continues to contribute to, the infringement by third parties, including their customers, of one or more claims of the '941 patent, including at least claims 1, 3, 4, 7, 8, 9, 11, 12, 19 under 35 U.S.C. § 271(c), by, for example, selling and/or offering for sale products and services in the United States, including NexTraq's Fleet Tracking software (see User Guide at https://www.nextraq.com/wp-content/uploads/2018/04/NexTraq_New_User_Quick_Start_Guide.pdf, last accessed and downloaded December 6, 2022) knowing that those products constitute a material part of the inventions of the '941 patent, knowing that those products are especially made

or adapted to infringe the '941 patent, and knowing that those products are not staple articles of commerce suitable for substantial non-infringing use.

84.     PerDiem has been and continues to be damaged by NexTraq's infringement of the '941 patent.

85.     From the time of notice, NexTraq has willfully infringed the '941 patent.

86.     The conduct by NexTraq in infringing the '941 patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

87.     PerDiem reserves the right to modify its infringement theories as discovery progresses in this case and is not to be estopped for purposes of its infringement contentions or any claim construction, express or implied, set forth within the attached claim charts.  PerDiem intends the claim chart for the '941 patent (Exhibit A-1) only to satisfy the notice requirements of Rule 8(a)(2) of the Federal Rule of Civil Procedure.  The claim chart does not represent PerDiem's preliminary or final infringement contentions or preliminary or final claim construction positions.

## COUNT II – INFRINGEMENT OF THE '874 PATENT

88.      Paragraphs 1 through 87 are incorporated by reference as if fully set forth herein.

89.     NexTraq directly infringes and continues to directly infringe under 35 U.S.C. § 271(a) at least one or more claims of the '874 patent either literally and/or under the doctrine of equivalents, by, among other things, making, using, importing, selling, offering for sale and/or providing and/or causing to be used in the United States the Accused Instrumentalities.  An exemplary claim chart detailing the correspondence of every element of claims 11 and 44-5 of the '874 patent with features of The Accused Instrumentalities is attached hereto as Exhibit B-1 and incorporated by reference.

90.     Third parties, including NexTraq's customers, have directly infringed, and continue to directly infringe under 35 U.S.C. § 271(a), one or more claims of the '874 patent, either literally and/or under the doctrine of equivalents, by making, using, importing, selling, and/or offering for sale the Accused Instrumentalities in the United States so as to infringe one or more claims of the '874 patent.

91.     NexTraq was made aware of the '874 patent and its infringement through at least the filing and service or notice of filing of this Complaint.

92.     Upon information and belief, since at least the time NexTraq received notice, NexTraq has induced infringement and continues to induce infringement under 35 U.S.C. § 271(b). NexTraq has actively, knowingly, and intentionally induced, and with specific intent or conscious blindness, actively aided and abetted others to infringe, and continues to actively, knowingly, and intentionally induce others to infringe, including but not limited to each of NexTraq's partners, clients, customers, and end users, whose use of the Accused Instrumentalities constitutes direct infringement of at least one claim of the '874 patent.

93.     NexTraq induces infringement by selling or otherwise supplying and supporting the Accused Instrumentalities in the United States with the knowledge and intent that third parties will use, sell, and/or offer for sale in the United States the Accused Instrumentalities, for their intended purpose to infringe the '874 patent, with instructions as to the use of that product and guidance as to the specific steps that must be taken to utilize that product, including location tracking system, application and/solutions, based for example, on NexTraq's web based solution (see, https://www.nextraq.com/wp-content/uploads/2018/04/NexTraq_New_User_Quick_Start_Guide.pdf) and NexTraq's Web Services (http://www.discretewireless.com/resources/APIReference.pdf), last accessed and

downloaded December 5, 2022), all with the knowledge and intent to encourage and facilitate

infringement through the dissemination of the Accused Instrumentalities and/or the creation and

dissemination of documentation and technical information to customers and prospective customers

related to the Accused Instrumentalities, including the product literature described in Exhibit B-1,

attached hereto.

94.    In particular, NexTraq's actions that aid and abet others to infringe include advertising

and/or providing support services to partners contracted by NexTraq or providing instruction

materials, training, and services regarding the Accused Instrumentalities which actively induce a

user of the NexTraq system to infringe the Asserted Claims.  For example, NexTraq provides

potential users with detailed instruction materials on how to operate NexTraq's Fleet Tracking

system, application and/solutions, based for example, on NexTraq's web based solution (see,

https://www.nextraq.com/wp-

content/uploads/2018/04/NexTraq_New_User_Quick_Start_Guide.pdf)    and    NexTraq's    Web

Services    (http://www.discretewireless.com/resources/APIReference.pdf),    last    accessed    and

downloaded December 6, 2022) in a way that infringes at least one claim of the '874 patent.

95.    Upon information and belief, since at least the time NexTraq received notice, NexTraq

has contributed to, and continues to contribute to, the infringement by third parties, including their

customers, of one or more claims of the '874 patent, including at least claims 11 and 44-45, under

35 U.S.C. § 271(c), by, for example, selling and/or offering for sale products and services in the

United States, including NexTraq's location tracking system, application and/solutions, based for

example,    on    NexTraq's    web    based    solution    (see,    https://www.nextraq.com/wp-

content/uploads/2018/04/NexTraq_New_User_Quick_Start_Guide.pdf)    and    NexTraq's    Web

Services    (http://www.discretewireless.com/resources/APIReference.pdf),    last    accessed    and

downloaded December 6, 2022) knowing that those products constitute a material part of the inventions of the '874 patent, knowing that those products are especially made or adapted to infringe the '874 patent, and knowing that those products are not staple articles of commerce suitable for substantial non-infringing use.

96.     PerDiem has been and continues to be damaged by NexTraq's infringement of the '874 patent.

97.     From the time of notice, NexTraq has willfully infringed the '874 patent.

98.     The conduct by NexTraq in infringing the '874 patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

99.     PerDiem reserves the right to modify its infringement theories as discovery progresses in this case and is not to be estopped for purposes of its infringement contentions or any claim construction, express or implied, set forth within the attached claim charts.  PerDiem intends the claim charts for the '874 patent (Exhibit B-1) only to satisfy the notice requirements of Rule 8(a)(2) of the Federal Rule of Civil Procedure.  The claim chart does not represent PerDiem's preliminary or final infringement contentions or preliminary or final claim construction positions.

## COUNT III – INFRINGEMENT OF THE '198 PATENT

100.    Paragraphs 1 through 99 are incorporated by reference as if fully set forth herein.

101.    NexTraq directly infringes and continues to directly infringe under 35 U.S.C. § 271(a) at least one or more claims of the '198 patent either literally and/or under the doctrine of equivalents, by, among other things, making, using, importing, selling, offering for sale and/or providing and/or causing to be used in the United States the Accused Instrumentalities.   An exemplary claim chart detailing the correspondence of every element of claims 1, 7, 12 of the '198

patent with features of NexTraq's Accused Instrumentalities is attached hereto as Exhibit C-1 and incorporated by reference.

102.     Third parties, including NexTraq's customers, have directly infringed, and continue to directly infringe under 35 U.S.C. § 271(a), one or more claims of the '198 patent, either literally and/or under the doctrine of equivalents, by making, using, importing, selling, and/or offering for sale the Accused Instrumentalities in the United States so as to infringe one or more claims of the '198 patent.

103.     NexTraq was made aware of the '198 patent and its infringement through at least the filing and service or notice of filing of this Complaint.

104.     Upon information and belief, since at least the time NexTraq received notice, NexTraq has induced infringement and continues to induce infringement under 35 U.S.C. § 271(b). NexTraq has actively, knowingly, and intentionally induced, and with specific intent or conscious blindness, actively aided and abetted others to infringe, and continues to actively, knowingly, and intentionally induce others to infringe, including but not limited to each of NexTraq's partners, clients, customers, and end users, whose use of the Accused Instrumentalities constitutes direct infringement of at least one claim of the '198 patent.

105.     NexTraq induces infringement by selling or otherwise supplying and supporting the Accused Instrumentalities in the United States with the knowledge and intent that third parties will use, sell, and/or offer for sale in the United States the Accused Instrumentalities, for their intended purpose to infringe the '198 patent, with instructions as to the use of that product and guidance as to the specific steps that must be taken to utilize that product, including the provision of interactive data fields, such as through NexTraq's location tracking system, application and/solutions, based for   example,   on   NexTraq's   web   based   solution   (see,   https://www.nextraq.com/wp-

content/uploads/2018/04/NexTraq_New_User_Quick_Start_Guide.pdf) and NexTraq's Web Services (http://www.discretewireless.com/resources/APIReference.pdf), last accessed and downloaded December 6, 2022), all with the knowledge and intent to encourage and facilitate infringement through the dissemination of the Accused Products and Services and/or the creation and dissemination of documentation and technical information to customers and prospective customers related to the Accused Instrumentalities, including the product literature described in Exhibit C-1, attached hereto.

106.    In particular, NexTraq's actions that aid and abet others to infringe include advertising and/or providing support services to partners contracted by NexTraq or providing instruction materials, training, and services regarding the Accused Instrumentalities which actively induce a user of the NexTraq system to infringe the Asserted Claims.  For example, NexTraq provides potential users with instructions on how to operate the Accused Instrumentalities, including location-tracking system, application and solutions, based on NexTraq's web-based solution (https://www.nextraq.com/wp-content/uploads/2018/04/NexTraq_New_User_Quick_Start_Guide.pdf) and NexTraq's Web Services (http://www.discretewireless.com/resources/APIReference.pdf), last accessed and downloaded December 6, 2022) in a way that infringes at least one claim of the '198 patent.

107.    Upon information and belief, since at least the time NexTraq received notice, NexTraq has contributed to and continues to contribute to, the infringement by third parties, including their customers, of one or more claims of the '198 patent, including at least claims 1, 7 and 12, under 35 U.S.C. § 271(c), by, for example, selling and/or offering for sale products and services in the United States, including NexTraq's location tracking system, application and/solutions, based for example, on NexTraq's web based solution (see, https://www.nextraq.com/wp-

content/uploads/2018/04/NexTraq_New_User_Quick_Start_Guide.pdf) and NexTraq's Web Services (http://www.discretewireless.com/resources/APIReference.pdf), last accessed and downloaded December 6, 2022. knowing that those products constitute a material part of the inventions of the '198 patent, knowing that those products are especially made or adapted to infringe the '198 patent, and knowing that those products are not staple articles of commerce suitable for substantial non-infringing use.

108.    PerDiem has been and continues to be damaged by NexTraq's infringement of the '198 patent.

109.    From the time of notice, NexTraq has willfully infringed the '198 patent.

110.    The conduct by NexTraq in infringing the '198 patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

111.    PerDiem reserves the right to modify its infringement theories as discovery progresses in this case and is not to be estopped for purposes of its infringement contentions or any claim construction, express or implied, set forth within the attached claim charts.  PerDiem intends the claim chart for the '198 patent (Exhibit C-1) only to satisfy the notice requirements of Rule 8(a)(2) of the Federal Rule of Civil Procedure.  The claim chart does not represent PerDiem's preliminary or final infringement contentions or preliminary or final claim construction positions.

## COUNT IV – INFRINGEMENT OF THE '789 PATENT

112.    Paragraphs 1 through 111 are incorporated by reference as if fully set forth herein.

113.    NexTraq directly infringes and continues to directly infringe under 35 U.S.C. § 271(a) at least one or more claims of the '789 patent either literally and/or under the doctrine of equivalents, by, among other things, making, using, importing, selling, offering for sale and/or providing and/or causing to be used in the United States the Accused Instrumentalities.  An

exemplary claim chart detailing the correspondence of every element of claims 1, 12, 14, 16 of the '789 patent with a feature of NexTraq's Accused Product and Services is attached hereto as Exhibit D-1and incorporated by reference.

114.   Third parties, including NexTraq's customers, have directly infringed, and continue to directly infringe under 35 U.S.C. § 271(a), one or more claims of the '789 patent, either literally and/or under the doctrine of equivalents, by making, using, importing, selling, and/or offering for sale the Accused Instrumentalities in the United States so as to infringe one or more claims of the '789 patent.

115.   NexTraq was made aware of the '789 patent and its infringement through at least the filing and service or notice of filing of this Complaint.

116.   Upon information and belief, since at least the time NexTraq received notice, NexTraq has induced infringement and continues to induce infringement under 35 U.S.C. § 271(b). NexTraq has actively, knowingly, and intentionally induced, and with specific intent or conscious blindness, actively aided and abetted others to infringe, and continues to actively, knowingly, and intentionally induce others to infringe, including but not limited to each of NexTraq's partners, clients, customers, and end users, whose use of the Accused Instrumentalities constitutes direct infringement of at least one claim of the '789 patent.

117.   NexTraq induces infringement by selling or otherwise supplying and supporting the Accused Instrumentalities in the United States with the knowledge and intent that third parties will use, sell, and/or offer for sale in the United States the Accused Instrumentalities, for their intended purpose to infringe the '789 patent, with instructions as to the use of that product and guidance as to the specific steps that must be taken to utilize that product, including NexTraq's web based solution                              (see,                              https://www.nextraq.com/wp-

content/uploads/2018/04/NexTraq_New_User_Quick_Start_Guide.pdf) and NexTraq's Web

Services (http://www.discretewireless.com/resources/APIReference.pdf), last accessed and

downloaded December 6, 2022), all with the knowledge and intent to encourage and facilitate

infringement through the dissemination of the Accused Instrumentalities and/or the creation and

dissemination of documentation and technical information to customers and prospective customers

related to the Accused Instrumentalities, including the product literature described in Exhibit D-1,

attached hereto.

118.    In particular, NexTraq's actions that aid and abet others to infringe include advertising

and/or providing support services to partners contracted by NexTraq or providing instruction

materials, training, and services regarding the Accused Instrumentalities which actively induce a

user of the NexTraq system to infringe the Asserted Claims.  For example, NexTraq provides

potential users with detailed instruction materials on how to operate including NexTraq's location

tracking system, application and/solutions, based for example, on NexTraq's web-based solution

(see,https://www.nextraq.com/wp-

content/uploads/2018/04/NexTraq_New_User_Quick_Start_Guide.pdf) and NexTraq's Web

Services (http://www.discretewireless.com/resources/APIReference.pdf), last accessed and

downloaded December 6, 2022) in a way that infringes at least one claim of the '789 patent.

119.    Upon information and belief, since at least the time NexTraq received notice, NexTraq

has contributed to and continues to contribute to, the infringement by third parties, including their

customers, of one or more claims of the '789 patent, including at least claims 1, 12, 14  and 16,

under 35 U.S.C. § 271(c), by, for example, selling and/or offering for sale products and services

in the United States, including NexTraq's location tracking system, application and/solutions,

based  for  example,  on  NexTraq's  web-based  solution  (see,  https://www.nextraq.com/wp-

content/uploads/2018/04/NexTraq_New_User_Quick_Start_Guide.pdf)   and   NexTraq's   Web

Services   (http://www.discretewireless.com/resources/APIReference.pdf),   last   accessed   and

downloaded December 6, 2022. knowing that those products constitute a material part of the

inventions of the '789 patent, knowing that those products are especially made or adapted to

infringe the '789 patent, and knowing that those products are not staple articles of commerce

suitable for substantial non-infringing use.

120.   PerDiem has been and continues to be damaged by NexTraq's infringement of the '789

patent.

121.   From the time of notice, NexTraq has willfully infringed the '789 patent.

122.   The conduct by NexTraq in infringing the '789 patent renders this case exceptional

within the meaning of 35 U.S.C. § 285.

123.   PerDiem reserves the right to modify its infringement theories as discovery progresses

in this case and is not to be estopped for purposes of its infringement contentions or any claim

construction, express or implied, set forth within the attached claim charts.  PerDiem intends the

claim chart for the '789 patent (Exhibit D-1) only to satisfy the notice requirements of Rule 8(a)(2)

of the Federal Rule of Civil Procedure.  The claim chart does not represent PerDiem's preliminary

or final infringement contentions or preliminary or final claim construction positions.

## <u>COUNT V – INFRINGEMENT OF THE '364 PATENT</u>

124.   Paragraphs 1 through 123 are incorporated by reference as if fully set forth herein.

125.   NexTraq directly infringes and continues to directly infringe under 35 U.S.C. § 271(a)

at least one or more claims of the '364 patent either literally and/or under the doctrine of

equivalents, by, among other things, making, using, importing, selling, offering for sale and/or

providing and/or causing to be used in the United States the Accused Instrumentalities.   An

exemplary claim chart detailing the correspondence of every element of claim 3 of the '364 patent with features of NexTraq's Accused Instrumentalities is attached hereto as Exhibit F-1 and incorporated by reference.

126.    Third parties, including NexTraq's customers, have directly infringed, and continue to directly infringe under 35 U.S.C. § 271(a), one or more claims of the '364 patent, either literally and/or under the doctrine of equivalents, by making, using, importing, selling, and/or offering for sale the Accused Instrumentalities in the United States so as to infringe one or more claims of the '364 patent.

127.    NexTraq was made aware of the '364 patent and its infringement through at least the filing and service or notice of filing of this Complaint.

128.    Upon information and belief, since at least the time NexTraq received notice, NexTraq has induced infringement and continues to induce infringement under 35 U.S.C. § 271(b). NexTraq has actively, knowingly, and intentionally induced, and with specific intent or conscious blindness, actively aided and abetted others to infringe, and continues to actively, knowingly, and intentionally induce others to infringe, including but not limited to each of NexTraq's partners, clients, customers, and end users, whose use of the Accused Instrumentalities constitutes direct infringement of at least one claim of the '364 patent.

129.    NexTraq induces infringement by selling or otherwise supplying and supporting the Accused Instrumentalities in the United States with the knowledge and intent that third parties will use, sell, and/or offer for sale in the United States the Accused Instrumentalities, for their intended purpose to infringe the '364 patent, with instructions as to the use of that product and guidance as to the specific steps that must be taken to utilize that product, including NexTraq's web based solution                              (see,                              https://www.nextraq.com/wp-

content/uploads/2018/04/NexTraq_New_User_Quick_Start_Guide.pdf) and NexTraq's Web

Services (http://www.discretewireless.com/resources/APIReference.pdf, last accessed and

downloaded December 6, 2022), all with the knowledge and intent to encourage and facilitate

infringement through the dissemination of the Accused Instrumentalities and/or the creation and

dissemination of documentation and technical information to customers and prospective customers

related to the Accused Instrumentalities, including the product literature described in Exhibit E-1,

attached hereto.

130.    In particular, NexTraq's actions that aid and abet others to infringe include advertising

and/or providing support services to partners contracted by NexTraq or providing instruction

materials, training, and services regarding the Accused Instrumentalities which actively induce a

user of the NexTraq system to infringe the Asserted Claims.  For example, NexTraq provides

potential users with detailed instruction materials on how to operate including NexTraq's location

tracking system, application and/solutions, based for example, on NexTraq's web-based solution

(see,                                                      https://www.nextraq.com/wp-

content/uploads/2018/04/NexTraq_New_User_Quick_Start_Guide.pdf) and NexTraq's Web

Services (http://www.discretewireless.com/resources/APIReference.pdf, last accessed and

downloaded December 6, 2022) in a way that infringes at least one claim of the '364 patent.

131.    Upon information and belief, since at least the time NexTraq received notice, NexTraq

has contributed to, and continues to contribute to, the infringement by third parties, including their

customers, of one or more claims of the '364 patent, including at least claim 3, under 35 U.S.C. §

271(c), by, for example, selling and/or offering for sale products and services in the United States,

including NexTraq's location tracking system, application and/solutions, based for example, on

NexTraq's      web      based      solution      (see,      https://www.nextraq.com/wp-

content/uploads/2018/04/NexTraq_New_User_Quick_Start_Guide.pdf) and NexTraq's Web Services (http://www.discretewireless.com/resources/APIReference.pdf), (last accessed and downloaded December 6, 2022), knowing that those products constitute a material part of the inventions of the '364 patent, knowing that those products are especially made or adapted to infringe the '364 patent, and knowing that those products are not staple articles of commerce suitable for substantial non-infringing use.

132.    PerDiem has been and continues to be damaged by NexTraq's infringement of the '364 patent.

133.    NexTraq was made aware of the '364 patent and its infringement thereof at least as early as the filing of this Complaint.

134.    From the time of notice, NexTraq has willfully infringed the '364 patent.

135.    The conduct by NexTraq in infringing the '364 patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

136.    PerDiem reserves the right to modify its infringement theories as discovery progresses in this case and is not to be estopped for purposes of its infringement contentions or any claim construction, express or implied, set forth within the attached claim charts.  PerDiem intends the claim chart for the '364 patent (Exhibit E-1) only to satisfy the notice requirements of Rule 8(a)(2) of the Federal Rule of Civil Procedure.  The claim chart does not represent PerDiem's preliminary or final infringement contentions or preliminary or final claim construction positions.

## COUNT VI – INFRINGEMENT OF THE '809 PATENT

137.    Paragraphs 1 through 136 are incorporated by reference as if fully set forth herein.

138.    NexTraq directly infringes and continues to directly infringe under 35 U.S.C. § 271(a) at least one or more claims of the '809 patent either literally and/or under the doctrine of

equivalents, by, among other things, making, using, importing, selling, offering for sale and/or providing and/or causing to be used in the United States the Accused Instrumentalities.   An exemplary claim chart detailing the correspondence of every element of claims 1-5 of the '809 patent with features of NexTraq's Accused Instrumentalities is attached hereto as Exhibit F-1 and incorporated by reference.

139.   Third parties, including NexTraq's customers, have directly infringed, and continue to directly infringe under 35 U.S.C. § 271(a), one or more claims of the '809 patent, either literally and/or under the doctrine of equivalents, by making, using, importing, selling, and/or offering for sale the Accused Instrumentalities in the United States so as to infringe one or more claims of the '809 patent.

140.   NexTraq was made aware of the '809 patent and its infringement through at least the filing and service or notice of filing of this Complaint.

141.   Upon information and belief, since at least the time NexTraq received notice, NexTraq has induced infringement and continues to induce infringement under 35 U.S.C. § 271(b). NexTraq has actively, knowingly, and intentionally induced, and with specific intent or conscious blindness, actively aided and abetted others to infringe, and continues to actively, knowingly, and intentionally induce others to infringe, including but not limited to each of NexTraq's partners, clients, customers, and end users, whose use of the Accused Instrumentalities constitutes direct infringement of at least one claim of the '809 patent.

142.   NexTraq induces infringement by selling or otherwise supplying and supporting the Accused Instrumentalities in the United States with the knowledge and intent that third parties will use, sell, and/or offer for sale in the United States the accused products, for their intended purpose to infringe the '809 patent, with instructions as to the use of that product and guidance as to the

specific steps that must be taken to utilize that product, including NexTraq's web based solution (see, https://www.nextraq.com/wp-content/uploads/2018/04/NexTraq_New_User_Quick_Start_Guide.pdf) and NexTraq's Web Services (http://www.discretewireless.com/resources/APIReference.pdf), (last accessed and downloaded December 6, 2022), all with the knowledge and intent to encourage and facilitate infringement through the dissemination of the Accused Instrumentalities and/or the creation and dissemination of documentation and technical information to customers and prospective customers related to the Accused Instrumentalities, including the product literature described in Exhibit F-1, attached hereto.

143.    In particular, NexTraq's actions that aid and abet others to infringe include advertising and/or providing support services to partners contracted by NexTraq or providing instruction materials, training, and services regarding the Accused Instrumentalities which actively induce a user of the NexTraq system to infringe the Asserted Claims.  For example, NexTraq provides potential users with detailed instruction materials on how to operate including NexTraq's location tracking system, application and/solutions, based for example, on NexTraq's web-based solution (see, https://www.nextraq.com/wp-content/uploads/2018/04/NexTraq_New_User_Quick_Start_Guide.pdf) and NexTraq's Web Services (http://www.discretewireless.com/resources/APIReference.pdf), (last accessed and downloaded December 6, 2022), in a way that infringes at least one claim of the '809 patent.

144.    Upon information and belief, since at least the time NexTraq received notice, NexTraq has contributed to, and continues to contribute to, the infringement by third parties, including their customers, of one or more claims of the '809 patent, including at least claims 1-5, under 35 U.S.C. § 271(c), by, for example, selling and/or offering for sale products and services in the United

States, including NexTraq's location tracking system, application and/solutions, based for example, on NexTraq's web based solution (see, https://www.nextraq.com/wp-content/uploads/2018/04/NexTraq_New_User_Quick_Start_Guide.pdf) and NexTraq's Web Services (http://www.discretewireless.com/resources/APIReference.pdf), (last accessed and downloaded December 6, 2022), knowing that those products constitute a material part of the inventions of the '809 patent, knowing that those products are especially made or adapted to infringe the '809 patent, and knowing that those products are not staple articles of commerce suitable for substantial non-infringing use.

145.   PerDiem has been and continues to be damaged by NexTraq's infringement of the '809 patent.

146.   From the time of notice, NexTraq has willfully infringed the '809 patent.

147.   The conduct by NexTraq in infringing the '809 patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

148.   PerDiem reserves the right to modify its infringement theories as discovery progresses in this case and is not to be estopped for purposes of its infringement contentions or any claim construction, express or implied, set forth within the attached claim charts.  PerDiem intends the claim chart for the '809 patent (Exhibit F-1) only to satisfy the notice requirements of Rule 8(a)(2) of the Federal Rule of Civil Procedure.  The claim chart does not represent PerDiem's preliminary or final infringement contentions or preliminary or final claim construction positions.

## COUNT VII – INFRINGEMENT OF THE '038 PATENT

149.   Paragraphs 1 through 148 are incorporated by reference as if fully set forth herein.

150.   NexTraq directly infringes and continues to directly infringe under 35 U.S.C. § 271(a) at least one or more claims of the '038 patent either literally and/or under the doctrine of

equivalents, by, among other things, making, using, importing, selling, offering for sale and/or providing and/or causing to be used in the United States the Accused Instrumentalities.   An exemplary claim chart detailing the correspondence of every element of claims 1-5 of the '038 patent with features of NexTraq's Accused Instrumentalities is attached hereto as Exhibit G-1 and incorporated by reference.

151.   Third parties, including NexTraq's customers, have directly infringed, and continue to directly infringe under 35 U.S.C. § 271(a), one or more claims of the '038 patent, either literally and/or under the doctrine of equivalents, by making, using, importing, selling, and/or offering for sale the Accused Instrumentalities in the United States so as to infringe one or more claims of the '038 patent.

152.   NexTraq was made aware of the '038 patent and its infringement through at least the filing and service or notice of filing of this Complaint.

153.   Upon information and belief, since at least the time NexTraq received notice, NexTraq has induced infringement and continues to induce infringement under 35 U.S.C. § 271(b). NexTraq has actively, knowingly, and intentionally induced, and with specific intent or conscious blindness, actively aided and abetted others to infringe, and continues to actively, knowingly, and intentionally induce others to infringe, including but not limited to each of NexTraq's partners, clients, customers, and end users, whose use of the Accused Instrumentalities constitutes direct infringement of at least one claim of the '809 patent.

154.   NexTraq induces infringement by selling or otherwise supplying and supporting the Accused Instrumentalities in the United States with the knowledge and intent that third parties will use, sell, and/or offer for sale in the United States the accused products, for their intended purpose to infringe the '038 patent, with instructions as to the use of that product and guidance as to the

specific steps that must be taken to utilize that product, including NexTraq's web based solution (see, https://www.nextraq.com/wp-content/uploads/2018/04/NexTraq_New_User_Quick_Start_Guide.pdf) and NexTraq's Web Services (http://www.discretewireless.com/resources/APIReference.pdf), (last accessed and downloaded December 6, 2022), all with the knowledge and intent to encourage and facilitate infringement through the dissemination of the Accused Instrumentalities and/or the creation and dissemination of documentation and technical information to customers and prospective customers related to the Accused Instrumentalities, including the product literature described in Exhibit G-1, attached hereto.

155.    In particular, NexTraq's actions that aid and abet others to infringe include advertising and/or providing support services to partners contracted by NexTraq or providing instruction materials, training, and services regarding the Accused Instrumentalities which actively induce a user of the NexTraq system to infringe the Asserted Claims.  For example, NexTraq provides potential users with detailed instruction materials on how to operate including NexTraq's location tracking system, application and/solutions, based for example, on NexTraq's web-based solution (see, https://www.nextraq.com/wp-content/uploads/2018/04/NexTraq_New_User_Quick_Start_Guide.pdf) and NexTraq's Web Services (http://www.discretewireless.com/resources/APIReference.pdf), (last accessed and downloaded December 6, 2022), in a way that infringes at least one claim of the '038 patent.

156.    Upon information and belief, since at least the time NexTraq received notice, NexTraq has contributed to, and continues to contribute to, the infringement by third parties, including their customers, of one or more claims of the '038 patent, including at least claims 1-5, under 35 U.S.C. § 271(c), by, for example, selling and/or offering for sale products and services in the United

States, including including NexTraq's location tracking system, application and/solutions, based for example, on NexTraq's web-based solution (see, https://www.nextraq.com/wp-content/uploads/2018/04/NexTraq_New_User_Quick_Start_Guide.pdf) and NexTraq's Web Services (http://www.discretewireless.com/resources/APIReference.pdf), (last accessed and downloaded December 6, 2022), knowing that those products constitute a material part of the inventions of the '038 patent, knowing that those products are especially made or adapted to infringe the '038 patent, and knowing that those products are not staple articles of commerce suitable for substantial non-infringing use.

157.    PerDiem has been and continues to be damaged by NexTraq's infringement of the '038 patent.

158.    From the time of notice, NexTraq has willfully infringed the '038 patent.

159.    The conduct by NexTraq in infringing the '038 patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

160.    PerDiem reserves the right to modify its infringement theories as discovery progresses in this case and is not to be estopped for purposes of its infringement contentions or any claim construction, express or implied, set forth within the attached claim charts.  PerDiem intends the claim chart for the '038 patent (Exhibit G-1) only to satisfy the notice requirements of Rule 8(a)(2) of the Federal Rule of Civil Procedure.  The claim chart does not represent PerDiem's preliminary or final infringement contentions or preliminary or final claim construction positions.

## JURY DEMAND

161.    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, PerDiem demands a trial by jury on all issues triable as such.

## PRAYER FOR RELIEF

WHEREFORE, PerDiem demands judgment for itself and against NexTraq as follows:

A.      An adjudication that NexTraq has infringed each of the Patents-in-Suit;

B.      An award of damages to be paid by NexTraq adequate to compensate PerDiem for NexTraq's past infringement of the Patents-in-Suit, and any continuing or future infringement through the date such judgment is entered, including interest, costs, expenses and an accounting of all infringing acts including, but not limited to, those acts not presented at trial;

C.      A declaration that this case is exceptional under 35 U.S.C. § 285, and an award of PerDiem's reasonable attorneys' fees; and

D.      An award to PerDiem of such further relief at law or in equity as the Court deems just and proper.

Dated: January 13, 2023                    Respectfully submitted,


                                           /s/ *Meredith Martin Addy*

                                           Meredith Martin Addy
                                           meredith@addyhart.com
                                           Charles A. Pannell
                                           cpannell@addyhart.com
                                           ADDYHART P.C.
                                           10 Glenlake Parwkay, Suite 130
                                           Atlanta, Georgia 30328
                                           Telephone:  312.320.4200
                                           Facsimile:   312.264.2547

                                           Benjamin M. Cappel *(pro hac vice* to be filed)
                                           benjamin@addyhart.com
                                           ADDYHART P.C.
                                           401 Michigan Avenue, Suite 1200-1
                                           Chicago, Illinois 60611
                                           Telephone:  732.991.7285
                                           Facsimile:   312.264.2547

                                           *Attorneys for Plaintiff,*
                                           *PerDiemCo LLC*