# Exhibit I

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| PERDIEMCO, LLC,<br><br> *Plaintiff,*<br><br>v.<br><br>INDUSTRACK LLC, et al.<br><br> *Defendants.* | § § § § § § § § § § § § § | Case No. 2:15-cv-727-JRG-RSP |
| PERDIEMCO, LLC,<br><br> *Plaintiff,*<br><br>v.<br><br>GPS LOGIC, LLC, et al.<br><br> *Defendants.* | § § § § § § § § § § § § § § | Case No. 2:15-cv-1216-JRG-RSP |

**REPORT AND RECOMMENDATION**

Before the Court is a Motion for Judgment on the Pleadings that the Asserted Patents[1] Claim Ineligible Subject Matter under 35 U.S.C. § 101. Dkt. No. 62.[2] Also before the Court is a Motion for Judgment on the Pleadings that the Claims of the Asserted Patents are Invalid under

---

[1] The Asserted Patents in Case No. 2:15-cv-727 and Case No. 2:15-cv-1216 are the same. They are U.S. Patent Nos. 8,223,012; 8,493,207; 8,717,166; 9,003,499; and 9,071,931. These patents share a common specification.

[2] Citations to the docket are to Case No. 2:15-cv-727 except where otherwise indicated. Citations to the docket use the page numbers assigned by the Court's CM/ECF system.

35 U.S.C. § 112 ¶¶ 1 and 2.[3] Dkt. No. 66. These motions were filed by Defendants Geotab Inc., Teletrac, Inc. and Navman Wireless North America Ltd., and TV Management, Inc. d/b/a/ GPS North America, Inc.

Defendant TV Management, Inc. d/b/a GPS North America filed Motions for Judgment on the Pleadings in Case No. 2:15-cv-1216 requesting the same relief and reciting substantially identical arguments and authorities. Dkt. Nos. 48, 49 in Case No. 2:15-cv-1216.

The Court addresses these Motions (Dkt. Nos. 62, 66 in Case No. 2:15-cv-727; Dkt. Nos. 48, 49 in Case No. 2:15-cv-1216) collectively in this Report and Recommendation.

**I. LAW**

**A. Judgment on the Pleadings**

A motion for judgment on the pleadings under Rule 12(c) "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). "Rule 12(b)(6) decisions appropriately guide the application of Rule 12(c) because the standards for deciding motions under both rules are the same." *Id.* at 313 n.8.

A court must assume that all well-pleaded facts are true and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 218 (5th Cir. 2012). The court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir.

---

[3] Because the applications resulting in the Asserted Patents were filed before September 16, 2012, the effective date of the America Invents Act ("AIA"), the Court refers to the pre-AIA version of § 112.

2010). The court must then decide whether those facts state a claim for relief that is plausible on its face. *Bowlby*, 681 F.3d at 217. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### B. Subject Matter Eligibility

Section 101 of the Patent Act defines what is eligible for patent protection: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101.

The Supreme Court has held that there are three specific exceptions to patent eligibility under § 101: laws of nature, natural phenomena, and abstract ideas. *Bilski v. Kappos*, 561 U.S. 593, 601 (2010). In *Mayo*, the Supreme Court set out a two-step test for "distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014) (citing *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1296–97 (2012)). Subject matter eligibility under § 101 serves as an important check on the scope of the patent monopoly by preventing a patentee from capturing a "building block[] of human ingenuity," "a method of organizing human activity," a "fundamental truth," an "idea of itself," "an original cause," "an algorithm," or a similar foundational concept. *Alice*, 134 S. Ct. at 2354–57 ("the concern that drives this exclusionary principle is one of pre-emption"). The doctrine of subject matter eligibility exists to prevent patent law from "inhibit[ing] further discovery by improperly tying up the future use of these building blocks of human ingenuity." *Id.* at 2354. Yet "we tread carefully in construing this exclusionary principle lest it swallow all of patent law." *Id.*

The first step of *Mayo* requires a court to determine if the claims are directed to a law of nature, natural phenomenon, or abstract idea. *Alice*, 134 S. Ct. at 2355. "If not, the claims pass muster under § 101." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714 (Fed. Cir. 2014). In making this determination, the court looks at what the claims cover. *Ultramercial*, 772 F.3d at 714 ("We first examine the claims because claims are the definition of what a patent is intended to cover."); *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1369 (Fed. Cir. 2015) ("At step one of the *Alice* framework, it is often useful to determine the breadth of the claims in order to determine whether the claims extend to cover a 'fundamental … practice long prevalent in our system ….'") (quoting *Alice*, 134 S. Ct. at 2356).

"The abstract idea exception prevents patenting a result where 'it matters not by what process or machinery the result is accomplished.'" *McRO, Inc. v. Bandai Namco Games America, Inc.*, App. No. 2015-1080, slip op. at 19, 2016 U.S. App. LEXIS 16703 (Fed. Cir. Sept. 13, 2016). For example, in *Bilski*, the Supreme Court rejected as a patent-ineligible "Claims 1 and 4 in petitioners' application" because the claims simply "explain[ed] the basic concept of hedging, or protecting against risk." *Bilski*, 561 U.S. at 611; *see also BASCOM Global Internet Servs. v. AT&T Mobility LLC*, 2016 U.S. App. LEXIS 11687 at *26–27 (Fed. Cir. June 27, 2016) ("The claims in *Intellectual Ventures I* preempted all use of the claimed abstract idea on 'the Internet, on a generic computer.' The claims in *Content Extraction* preempted all use of the claimed abstract idea on well-known generic scanning devices and data processing technology. The claims in *Ultramercial* preempted all use of the claimed abstract idea on the Internet. And the claims in *Accenture* preempted all use of the claimed abstract idea on generic computer components performing conventional activities.") (citations omitted). However, when performing this step, the Court "cannot simply ask whether the claims *involve* a patent-ineligible

concept, because essentially every routinely patent-eligible claim involving physical products and actions *involves* a law of nature and/or natural phenomenon—after all, they take place in the physical world." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. May 12, 2016).

A court applies the second step of *Mayo* only if it finds in the first step that the claims are directed to a law of nature, natural phenomenon, or abstract idea. *Alice*, 134 S. Ct. at 2355. The second step requires the court to determine if the elements of the claim individually, or as an ordered combination, "transform the nature of the claim" into a patent-eligible application. *Alice*, 134 S. Ct. at 2355. In determining if the claim is transformed, "[t]he cases most directly on point are *Diehr* and *Flook*, two cases in which the [Supreme] Court reached opposite conclusions about the patent eligibility of processes that embodied the equivalent of natural laws." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1298 (2012); *see also Alice*, 134 S. Ct. at 2355 ("We have described step two of this analysis as a search for an 'inventive concept.'").

In *Diehr*, the Court "found [that] the overall process [was] patent eligible because of the way the additional steps of the process integrated the equation into the process as a whole." *Mayo*, 132 S. Ct. at 1298 (citing *Diamond v. Diehr*, 450 U.S. 175, 187 (1981)); *see also Mayo*, 132 S. Ct. at 1299 ("It nowhere suggested that all these steps, or at least the combination of those steps, were in context obvious, already in use, or purely conventional."). In *Flook*, the Court found that a process was patent-ineligible because the additional steps of the process amounted to nothing more than "insignificant post-solution activity." *Diehr*, 450 U.S. at 191–92 (citing *Parker v. Flook*, 437 U.S. 584 (1978)).

A claim may become patent-eligible when the "claimed process include[s] not only a law of nature but also several unconventional steps … that confine[] the claims to a particular, useful

application of the principle." *Mayo*, 132 S. Ct. at 1300; *see also DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014) ("In particular, the '399 patent's claims address the problem of retaining website visitors that, if adhering to the routine, conventional functioning of Internet hyperlink protocol, would be instantly transported away from a host's website after 'clicking' on an advertisement and activating a hyperlink."); *BASCOM Global Internet Servs. v. AT&T Mobility LLC*, 2016 U.S. App. LEXIS 11687 at *15 (Fed. Cir. June 27, 2016) ("some inventions' basic thrust might more easily be understood as directed to an abstract idea, but under step two of the Alice analysis, it might become clear that the specific improvements in the recited computer technology go beyond 'well-understood, routine, conventional activit[ies]' and render the invention patent-eligible"); *but see Enfish*, 822 F.3d at 1335 ("We do not read Alice to broadly hold that all improvements in computer-related technology are inherently abstract and, therefore, must be considered at step two."). A claim, however, remains patent-ineligible if it describes only "'[p]ost-solution activity' that is purely 'conventional or obvious.'" *Mayo*, 132 S. Ct. at 1299.

"The question of eligible subject matter must be determined on a claim-by-claim basis." *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1340 (Fed. Cir. 2013) *vacated on other grounds* 134 S. Ct. 2870 (2014).

### C. Written Description

"The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same." 35 U.S.C. § 112(a). The Federal Circuit has consistently held that this statute sets forth two separate and distinct requirements, known as "enablement" and "written

description." *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010). Although distinct, the doctrines of written description and enablement are related and "often rise and fall together." *Id.* at 1352. Both issues are routinely tried to a jury. *See, e.g.*, *Enzo Biochem, Inc. v. Applera Corp.*, 780 F.3d 1149, 1153 (Fed. Cir. 2015) ("The case then proceeded to a jury trial, where the jury found that the … patent was not invalid for lack of written description and enablement.")

"The test for the sufficiency of the written description 'is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date.'" *Vasudevan Software, Inc. v. MicroStrategy, Inc.*, 782 F.3d 671, 682 (Fed. Cir. 2015) (quoting *Ariad*, 598 F.3d at 1351). "[T]he test requires an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art. Based on that inquiry, the specification must describe an invention understandable to that skilled artisan and show that the inventor actually invented the invention claimed." *Ariad*, 598 F.3d at 1351. Whether a patent complies with the written description requirement is a question of fact. *Id.* "A party must prove invalidity for lack of written description by clear and convincing evidence." *Vasudevan Software*, 782 F.3d at 682.

### D. The "Regards as His Invention" Validity Requirement of § 112(2)

"A determination of whether a claim recites the subject matter which that applicant regards as his invention and is sufficiently definite, so as to satisfy the requirements of 35 U.S.C. § 112, paragraph 2, is a legal conclusion and is reviewed de novo." *Allen Eng'g Corp. v. Bartell Indus.*, 299 F.3d 1336, 1344 (Fed. Cir. 2002). "Where it would be apparent to one of skill in the art, based on the specification, that the invention set forth in a claim is not what the patentee regarded as his invention, we must hold that claim invalid under § 112, paragraph 2." *Id.* at 1349

(finding claim invalid where specification required "parallel" but claim recited "perpendicular"). "[T]here must be a showing of a logical inconsistency or contradiction between the claims and the specification." *JuxtaComm-Texas Software, LLC v. Axway, Inc.*, Case No. 6:10-cv-11, Dkt. No. 1079 at 8, 2012 U.S. Dist. LEXIS 186559 at *16 (E.D. Tex. July 5, 2012).

## II. ANALYSIS

### A. Subject Matter Eligibility

Defendants move for judgment on the pleadings under Fed. R. Civ. P. 12(c) that the asserted patents claim ineligible subject matter under 35 U.S.C. § 101.[4] Defendants contend that all asserted claims of all asserted patents embody an abstract idea—"managing the dissemination of location and/or event information within a community." Dkt. No. 62 at 10; *see also* Case No. 2:15-cv-1216, Dkt. No. 48 at 8. "At most, they recite different ways of organizing people into groups and managing the dissemination of location/event information through use of conventional computer and GPS technology. But for the recitation of conventional computer and location tracking elements, all the Asserted Claims could be performed entirely by human activity." Dkt. No. 62 at 10.

Defendants begin their analysis with claim 6 of the '012 Patent, arguing that "[r]epresentative claim 6 merely requires (1) interfacing with an administrator who (2) authorizes a first user to (3) access the location/zone/event information of a second user and (4) convey that information to a third user." Dkt. No. 62 at 17. Defendants provide a highlighted copy of the claim in which "[t]erms that recite only generic computing or location tracking technology and

---

[4] Rule 12(d) provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Defendants cite matters outside the pleadings that pertain to the nature of PerDiem and its business. Dkt. No. 62 at 8; Dkt. No. 48 at 7 in Case No. 2:15-cv-1216. Because the cited materials are extrinsic to the pleadings and irrelevant to the § 101 inquiry, the Court will exclude these materials.

'codes' to facilitate a computerized implementation of the claimed method have not been highlighted." *Id.* at 18.

That claim is reproduced here with Defendants' highlighting:

> **Claim 6 (rewritten in independent form):**
>
> A method for conveying user location information, comprising:
>
> interfacing with an administrator that authorizes a first user associated with a first user identification code to access an object location information from a location information source associated with a second user identification code that is different from the first identification code; and
>
> conveying the object location information to a third user based on an information access code specified by said first user, said information access code being associated with a third user identification code that is different from the first and second user identification codes;
>
> wherein the second user identification code is associated with a zone information comprising a coordinate on a map; and wherein at least one of the object location information or zone information is conveyed to the third user based on the information access code and
>
> wherein the second user identification code is associated with an object location event information that relates the object location information to the zone information; and wherein at least one of the object location information or the zone information or the object location event information is conveyed to the third user based on the information access code

Dkt. No. 62 at 17–18; *see also* Case No. 2:15-cv-1216, Dkt. No. 48 at 16 (underlining instead of highlighting).

Having purportedly factored out all the conventional computer components, Defendants construct an analogy between the remaining, highlighted portion of claim 6 and a scenario in which "[e]ach highlighted step of claim 6 could easily be performed by humans without the need for any computer or location tracking technology." Dkt. No. 62 at 18.

> [C]onsider an exemplary scenario similar to one contemplated in Perdiem's common specification of a mother desiring to track the location of her daughter who is travelling on a class field trip from Florida to Washington D.C. In this scenario, the mother (administrator) may authorize a chaperone (first user) that has travelled with the daughter's (second user) class to supervise and track her daughter as well as have access to and convey the daughter's location (access object location information associated with the second user). When the class arrives at their hotel in Washington (associating the second user with a zone

> and/or event), the chaperone is authorized to notify the mother and father (third user) that they have safely arrived at their destination (conveying location, zone and/or event information to a third user).

Dkt. No. 62 at 18–19. This example apparently confirms that claim 6 is directed to no more than the abstract idea of "managing the dissemination of location and/or event information within a community" and is therefore patent ineligible.

There are a number of fatal problems with Defendants' analysis of claim 6. First, it is improper to "simply ask whether the claims *involve* a patent-ineligible concept." *Enfish*, 822 F.3d at 1335. To be sure, "mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 134 S. Ct. at 2358. But this is not a license to delete all computer-related limitations from a claim and thereby declare it abstract. *See McRO*, slip op. at 20 ("in determining the patentability of a method, a court must look to the claims as an ordered combination, without ignoring the requirements of the individual steps"). The presence of computer components in a claim can often be consequential to the outcome of the § 101 analysis—in some circumstances the computer-related limitations of the claim will dispositively render the claim patent-eligible. *See, e.g.*, *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014) ("the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks"). Moreover, the mere fact that all the recited computer components are "conventional" because the applicant did not invent an entirely new kind of computer is not inherently troubling. *See, e.g.*, *Enfish*, 822 F.3d at 1338 ("we are not persuaded that the invention's ability to run on a general-purpose computer dooms the claims"); *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418–19 (2007) ("[I]nventions in most, if not all, instances rely upon building blocks long since

uncovered, and claimed discoveries almost of necessity will be combinations of what, in some sense, is already known.").

Instead, the analysis turns on "whether the claims in these patents focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *McRO*, slip op. at 23. This analysis requires the movant to substantively engage with the role played by the computer limitations in the context of the claim, not ignore those limitations. Here, claim 6 requires a variety of computer-related components, including: "user identification code[s]," "a location information source," and "an information access code." The claim then recites a specific structure of rules for providing information about the locations of objects to users and for managing user access to this information. It is therefore not apparent that claim 6 recites "'nothing significantly more' than an instruction to apply [an] abstract idea . . . using some unspecified, generic computer." *Alice*, 134 S. Ct. at 2360. Instead, claim 6 defines a set of rules for organizing and improving the behavior of a computerized location information system. Here, as in *McRO*, "[t]he specific structure of the claimed rules would prevent broad preemption of all rules-based means" for achieving the desired result. *McRO*, slip op. at 22.

The second problem with Defendants' argument is the premise that analogizing the method of claim 6 to a class field trip "confirms that claim 6 is directed to an abstract idea." Dkt. No. 62 at 19; see also Case No. 2:15-cv-1216, Dkt. No. 48 at 17. Even assuming *arguendo* that the field trip analogy falls squarely within the scope of claim 6, this fact is not necessarily dispositive—"processes that automate tasks that humans are capable of performing are patent eligible if properly claimed." *McRO*, slip op. at 22. More importantly, the field trip analogy omits or glosses over many limitations of the claim, including the aforementioned "location

information source" and access codes. As discussed *supra*, these limitations are not afterthoughts. Managing the information provided by the location information source using a set of relationships defined in part by access codes is what the claim is all about. The analogy also fails to capture another key feature of the claim: centralization. In the field trip analogy a variety of independent actors (mother, father, chaperone) must coordinate with one another and no single actor performs all the claimed steps. It is also not clear that *any* actor in the analogy performs the "interfacing" and "conveying" steps. These deficiencies in the analogy help to illustrate why claim 6 is not merely a computerized version of conventional human activity, it is an improvement to a computer system that administers, manages, and conveys location information in a centralized way.

A final problem with Defendants' position is a failure to meaningfully address preemption, which is the fundamental concern at stage one of the *Mayo* analysis. *See Mayo*, 132 S. Ct. at 1301 (§ 101 embodies "a concern that patent law not inhibit further discovery by improperly tying up the future use of laws of nature . . . [or] the basic tools of scientific and technological work"); *see also McRO*, slip op. at 25 ("The concern underlying the exceptions to § 101 is not tangibility, but preemption."). Defendants do not show that claim 6 preempts the idea of "managing the dissemination of location and/or event information within a community" such that "it matters not by what process or machinery the result is accomplished." *See O'Reilly v. Morse*, 56 U.S. 62, 113 (U.S. 1854); *see McRO*, slip op. at 19 (quoting same). Instead, claim 6 recites a specialized procedure for accomplishing this result by using four different access codes, an administrator, users, location information, zones, and a variety of other features all working together in a particular fashion. Defendants cannot argue that there is a danger of claim 6 "tying up the future use" of the concept of location information management and dissemination. There

are other ways to accomplish this result without following the strictures of the claim (*e.g.* by following Defendants' chaperone protocol, which omits many claim limitations).

Accordingly, like the claims in *Enfish* and *McRO*, the Court finds that claim 6 of the '012 Patent is not directed to an abstract idea and therefore survives step one of the *Mayo* eligibility analysis. *See McRO*, slip op. at 27 ("By incorporating the specific features of the rules as claim limitations, claim 1 . . . does not preempt approaches that use rules of a different structure or different techniques."); *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1339 (Fed. Cir. 2016) ("we are not faced with a situation where general-purpose computer components are added post-hoc to a fundamental economic practice or mathematical equation").

Defendants contends that "[a] similar analysis and conclusion is applicable to all Asserted Claims of the '012 patent. While there are slight differences in the steps recited in the various claims, all are directed to the same abstract idea." Dkt. No. 62 at 19; *see also* Case No. 2:15-cv-1216, Dkt. No. 48 at 8. Defendants attach copies of the other claims in appendices to their motions. This is as detailed as the representative claim analysis gets for any of the asserted patents—a bare recital that all asserted claims are basically the same.

To the extent Defendants' characterization of the claims is accurate, the other asserted claims of the '012 Patent are patent-eligible for the same reasons as claim 6. Moreover, the Court finds that Defendants have not met their burden to identify a representative claim. When the movant relies on a representative claim in its § 101 analysis, it bears the burden of showing that the other asserted claims are "substantially similar and linked to the same abstract idea." *See Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1348 (Fed. Cir. 2014); *see also* Wright & Miller, Federal Practice and Procedure: Civil 3d § 1357 (2004) ("All federal courts are in agreement that the burden is on the moving party [under Rules

12(b)(6) and 12(c)] to prove that no legally cognizable claim for relief exists."). District courts have denied motions to dismiss where the movant failed to carry this burden. *See JSDQ Mesh Techs. LLC v. Fluidmesh Networks, LLC*, Case No. 16-cv-212-GMS, 2016 U.S. Dist. LEXIS 119811 at *7 (D. Del. Sept. 6, 2016) ("Fluidmesh fails to provide meaningful analysis for each of the challenged patent claims at issue"). Accordingly, the Court finds that Defendants have not shown the other claims of the '012 Patent are patent-ineligible.

Defendants' arguments about claim 6 on the '012 Patent are representative of Defendants' arguments about the other asserted patents. For every asserted patent, Defendants strip away all limitations related to computers as mere "conventional concepts" or "conventional computer and location tracking elements" without addressing the role played by those elements in the context of the claim as an ordered combination. Dkt. No. 62 at 20, 21–22, 23–24, 25–26; *see also* Case No. 2:15-cv-1216, Dkt. No. 48 at 18, 19–20, 22–23, 24–25. For every asserted patent, Defendants propose a scenario of a class field trip illustrating how children, parents, chaperones, and school employees participating in a class field trip could approximate the behavior described in each exemplary claim. However, as discussed above, the proposed scenarios fail by assuming that each and every computer-related limitation can be properly excluded from the claims and by crafting a scenario that involves the decentralized actions of multiple participants, unlike the claims. Likewise, Defendants' identification of a representative claim is equally conclusory for every asserted patent.

Accordingly, Defendants have not shown that the asserted claims are patent-ineligible.

### B. Written Description

Defendants move for judgment on the pleadings that the asserted patents are invalid under § 112(1) for failure to provide adequate written description. Dkt. No. 66 at 19–29; *see also*

Case No. 2:15-cv-1216, Dkt. No. 49 at 19–29. Defendants contend that "[t]he common specification and prosecution history of the Asserted Patents unequivocally establish that the inventor required user defined zones and user defined events to be essential to his purported invention. . . . Because each of the Asserted Claims does not include both a user defined zone and user defined event, and are thus broader than the specification disclosure, the Asserted Claims are invalid for failing to comply with the written description requirement." Dkt. No. 66 at 19.

Defendants acknowledge that "[c]ompliance with the written description requirement of 35 U.S.C. § 112 ¶ 1 is a question of fact." Dkt. No. 66 at 17. This fact question is routinely submitted to a jury and is often the subject of expert testimony. Experts can be especially important to the written description question because the test for sufficiency of the written description is "whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date.'" *Vasudevan Software*, 782 F.3d at 682 (emphasis added). In *Vasudevan*, the Federal Circuit reversed a district court's summary judgment of invalidity for failure to meet the written description requirement because the district court had not credited the uncontroverted testimony of the non-movant's expert witness. *Id.* at 1356. The Federal Circuit held that "[a]s a general rule, summary judgment [on the written description defense] is inappropriate where an expert's testimony supports the non-moving party's case." *Id.* at 1356–57.

In the context of a 12(c) motion, the Court may not consider expert testimony or any other evidence outside the pleadings. Fed. R. Civ. P. 12(d). Instead, the Court must draw all reasonable factual inferences in favor of the non-movant. For this reason, the Court cannot conclude that Defendants have established their written description defense by clear and

convincing evidence. Even if the claims do not recite every "essential" technological feature discussed in the specification, this does not render them invalid as a matter of law. *See Cooper Cameron Corp. v. Kvaerner Oilfield Prods.*, 291 F.3d 1317, 1323 (Fed. Cir. 2002) ("we did not announce a new 'essential element' test mandating an inquiry into what an inventor considers to be essential to his invention and requiring that the claims incorporate those elements."). A motion for judgment on the pleadings under Rule 12(c) "is designed to dispose of cases where the material facts are not in dispute." *Great Plains Trust*, 313 F.3d at 312. Judgment on the pleadings is, therefore, not the proper way to resolve this fact-intensive defense.

### C. "Regards as His Invention"

Defendants contend that the asserted patents are invalid under § 112(2) for failing to claim "what the patentee regarded as his invention." Dkt. No. 66 at 29; *see also* Case No. 2:15-cv-1216, Dkt. No. 49 at 29. This argument is based on the same premise as Defendants' § 112(1) defense, that "the inventor of the Asserted Patents unequivocally regarded user defined zones and user defined events as required features of his purported invention." *Id.*

Unlike written description, validity under § 112(2) is a question of law. *Allen Eng'g*, 299 F.3d 1344. However, the party asserting this defense must make "a showing of a logical inconsistency or contradiction between the claims and the specification." *JuxtaComm-Texas Software*, Case No. 6:10-cv-11, Dkt. No. 1079 at 8. The fact that the asserted claims do not encompass every feature, or even every important feature, disclosed in the specification does not imply a logical contradiction. *See Allen Eng'g*, 299 F.3d 1349 (claims invalidated because "parallel" and "perpendicular" have opposite meanings). Defendants cite no authority for the proposition that every feature disclosed in the specification must be claimed, and indeed the converse appears to be true. *Cf. TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc.*, 529 F.3d

1364, 1373 (Fed. Cir. 2008) ("[T]he claims of the patent need not encompass all disclosed embodiments. . . . Our precedent is replete with examples of subject matter that is included in the specification, but is not claimed.") (collecting cases). The Court finds no logical contradiction between the asserted claims and the common specification.

### III. CONCLUSION

In light of the foregoing, the Court **RECOMMENDS** that Defendants' Motions for Judgment on the Pleadings (Dkt. Nos. 62, 66 in Case No. 2:15-cv-727; Dkt. Nos. 48, 49 in Case No. 2:15-cv-1216) be **DENIED.**

A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report by **September 28, 2016** after being served with a copy shall bar that party from de novo review by the district judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. Fed. R. Civ. P. 72(b)(2); *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

**SIGNED this 21st day of September, 2016.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE