# Exhibit K

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| PERDIEMCO, LLC., | § § | |
| Plaintiff, | § § | Case No. 2:15-CV-00727-JRG-RSP |
| v. | § § | |
| INDUSTRACK LLC, | § § | |
| Defendant. | § § § | |

| | | |
|---|---|---|
| PERDIEMCO LLC, | § § | |
| Plaintiff, | § § | Case No. 2:15-CV-00726-JRG-RSP |
| v. | § § | |
| GEOTAB INC., GEOTAB USA, INC., | § § | |
| Defendants. | § § | |

## REPORT AND RECOMMENDATION

Geotab seeks summary judgment that claims 1, 4, and 5 of U.S. Patent No. 9,003,499, and claims 1, 2, 6, 20, and 22 of U.S. Patent No. 9,071,931 are invalid for failing to satisfy the written description and enablement requirements of 35 U.S.C. § 112. *See* Dkt. 174. The Court recommends that Geotab's motion be denied.

## BACKGROUND

PerDiem filed this action against Geotab, accusing Geotab of infringing five patents, including the '499 and '931 patents. Dkt. 17 at 1. The '499 and '931 patents issued on April 7, 2015, and June 30, 2015, respectively. Dkt. 17-4; Dkt. 17-5. Both patents claim priority to a number of continuation applications, all of which trace to Provisional Application

1

No. 60/752,879, filed on December 23, 2005, and Non-Provisional Application No. 11/335,699, filed on January 20, 2006. *See, e.g.*, Dkt. 17-4. The specifications of the '499 and '931 patents are identical except for the claims. *See id.*; Dkt. 17-5.

According to the Complaint, Darrell Diem conceived the invention claimed in the patents-in-suit when his daughter's car broke down on a road trip. Dkt. 17 ¶ 4. Mr. Diem, then a software engineer, *see* Dkt. 198-2, thought of a system for conveying information about his daughter's location while maintaining her privacy, Dkt. 17 ¶ 4. As the background section of the patents explains, various sources were capable of determining the location of an object. *See, e.g.*, '931 patent at 1:21-27. Perhaps the most well-known was the Global Positioning System (GPS) receiver. *See id.* Advances in computing devices allowed users to access information in more locations, and certain computing devices came equipped with GPS receivers. *Id.* at 1:40-57.

Based on this existing technology, the patents describe an inventive system that conveys location information about an object to one or more users. *Id.* at 1:61-62. The following prophetic example is illustrative:

> Pet Tracking
>
> A pet has associated with it a location information source. The pet owner defines zones that the pet is supposed to stay in (e.g., a yard) and may define zones in which the pet is not allowed (e.g., a garden). An object location event for leaving the yard sends an email and phones the pet owner. An object location event for entering the garden might cause a siren to go off to scare the pet.

*Id.* at 19:1-8. The claims recite systems for implemental this and other examples, including examples involving multi-user information sharing networks. *See, e.g., id.* at 18:56-60. Claim 1 of the '931 patent recites:

> A location tracking system comprising:
>     one or more servers capable of communicating with a plurality of mobile devices, each mobile device is associated with an

> identification (ID) and at least one location information source that provides location information for the mobile device;
> the one or more servers **configured to**:
> define first level administrative privileges to protect privacy of a group of multiple mobile devices;
> define second level administrative privileges to control conveyance of information regarding the group;
> check the first level administrative privileges before adding a mobile device to the group;
> provide one or more interfaces for setting a zone, an event, and an alert for the group;
> receive a request to set a zone for the group, the zone having a boundary that is independent of where the group's mobile devices are located;
> receive a request to set an event for the group;
> receive a request to set an alert for the group, the request identifying a recipient of the alert;
> check the second level administrative privileges before setting a zone, an event, or an alert for the group;
> store the group's zone, event and alert in one or more databases;
> receive IDs and location information for the multiple mobile devices in the group;
> compare the IDs and location information with the group's zone and event to determine whether to send the group's alert; and
> cause the group's alert to be sent.

*Id.* 22:53-23:17 (emphasis added). Claims 2, 6, 20, and 22 depend from claim 1. *Id.* at 22:18-24. Claim 1 of the '499 patent is similar to the '931 patent claims in that it recites "one or more computer servers **configured to** create a plurality of information-sharing environments." '499 patent at 22:61-62 (emphasis added). Claims 4 and 5 depend from claim 1. *Id.* at 23:58-67.

The emphasized "configured to" language forms the basis of Geotab's motion for summary judgment. Geotab argues that the specification does not adequately describe or enable a computer "configured to" perform the recited functions.

## DISCUSSION

Summary judgment must be granted when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "A genuine

3

issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Crawford v. Formosa Plastics Corp., La.*, 234 F.3d 899, 902 (5th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must consider evidence in the record in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Thorson v. Epps*, 701 F.3d 444, 445 (5th Cir. 2012). The moving party must identify the portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once a party has made that showing, the non-moving party bears the burden of establishing otherwise. *Geiserman v. MacDonald*, 893 F.2d 787, 793 (5th Cir. 1990) (citing *Celotex*, 477 U.S. at 323). The non-moving party cannot "rest upon mere allegations or denials" in the pleadings, but "must set forth specific facts showing there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 248. Thus, summary judgment "is appropriate if the non-movant 'fails to make a showing sufficient to establish the existence of an element essential to that party's case.'" *Bluebonnet Hotel Ventures, LLC v. Wells Fargo Bank, N.A.*, 754 F.3d 272, 276 (5th Cir. 2014) (quoting *Celotex*, 477 U.S. at 322).

### Compliance With § 112, ¶ 1

Section 112 of the Patent Act requires that a patent "contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same." 35 U.S.C. § 112, ¶ 1. The statute imposes distinct "written description" and "enablement" standards. *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc). Although these standards are different, "there is little difference in some fields between describing an invention and enabling one to make and use it."

*Id.* at 1352. A separate written description requirement nonetheless "plays a vital role in curtailing claims that do not require undue experimentation to make and use, and thus satisfy enablement, but that have not been invented, and thus cannot be described." *Id.*

### A. Written Description

"The test for the sufficiency of the written description 'is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date.'" *Vasudevan Software, Inc. v. MicroStrategy, Inc.*, 782 F.3d 671, 682 (Fed. Cir. 2015) (quoting *Ariad*, 598 F.3d at 1351). This "test requires an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art. Based on that inquiry, the specification must describe an invention understandable to that skilled artisan and show that the inventor actually invented the invention claimed." *Ariad*, 598 F.3d at 1351. Whether a patent complies with the written description requirement is a question of fact. *Id.* Because issued patents are presumed valid under § 282, a party must prove invalidity for lack of written description by clear and convincing evidence. *Vasudevan*, 782 F.3d at 682; *Laryngeal Mask Co. v. Ambu*, 618 F.3d 1367, 1374 (Fed. Cir. 2010).

Geotab contends that claims of the '499 and '931 patents do not satisfy the written description requirement because the patents do not describe a server configured to perform each function recited in the claims. Dkt. 174 at 4, 8. The patents do, however, describe a server configured to carry out functions associated with administrative privileges. *See, e.g.*, '931 patent at 12:61-13.9. The patents describe an administrator of an information-sharing environment who maintains a database of user information on "a company's computer server or an individual's personal computer." *Id.* at 12:66-67. The administrator provides users access privileges based on

"the user's position or role within a company or family." *Id.* at 13:4-9. The patents explain that a "worldwide user base" can be maintained by an internet server. *Id.* at 5:27-33. The patents also describe a "map server" that stores maps and a web page for creating zones on these maps. *See, e.g., id.* at 3:19-21, Fig. 2, 22:15-16, Fig. 21. PerDiem's expert, Dr. Dan Schonfeld, explained that such a web page, like web pages generally, could be stored on an internet server. Dkt. 174-5 ¶ 286.

Geotab is correct that the description section of the patents does not explicitly describe a server configured to perform every function recited in the claims, but the "original claims themselves constitute their own description," and "[l]ater added claims of similar scope and wording are described thereby." *See Application of Koller*, 613 F.2d 819, 824 (C.C.P.A. 1980).[1] The patents claim priority to a provisional application that includes claims reciting various functions, including "defining a zone," "defining an event," and "conveying information regarding the event to the users." *See* Application No. 60/752,879 at 36. The subsequent non-provisional application claims these same functions in more detail. *See* Application No. 11/335,699 at 36. Geotab does not address these original claims or their contribution to the written description of the '499 and '931 patents.

Notwithstanding these original claims, "*ipsis verbis* disclosure is not necessary to satisfy the written description requirement of section 112." *Fujikawa v. Wattanasin*, 93 F.3d 1559, 1570 (Fed. Cir. 1996). PerDiem explains that because the patents describe zones that are managed by internet servers, a person of ordinary skill in the art would recognize that event and alert information can be managed by those same internet servers because events and alerts are defined and triggered by their relationship to a geographical zone. *See* Dkt. 190 at 2-3. Dr. Schonfeld

---

[1] *See South Corp. v. United States*, 690 F.2d 1368, 1370 (Fed. Cir. 1982) (adopting decisions of the Court of Claims and Court of Customs and Patent Appeals as binding precedent).

suggests that PerDiem's explanation is realistic because a person of ordinary skill in the art "would understand basic server architecture and computer coding of operations performed at servers." *See* Dkt. 174-5 at 114.

Geotab argues that summary judgment is nonetheless appropriate because its expert, Dr. Stephen Heppe, explained that a person having ordinary skill in the art "would not understand the inventor to have had possession of a 'server configured to' to perform the recited functions unless the specification provided some description of a server actually being configured to perform those functions.'" Dkt. 174-4 ¶ 1556. The patents, however, appear to include sufficient disclosure—which if not explicit, may have been well-understood by a person of ordinary skill in the art. *See In re Hayes Microcomputer Prod., Inc. Patent Litig.*, 982 F.2d 1527, 1534 (Fed. Cir. 1992) ("Disclosing a microprocessor capable of performing certain functions is sufficient to satisfy the requirement of section 112, first paragraph, when one skilled in the relevant art would understand what is intended and know how to carry it out."). At most, the issue of whether the patents describe a computer "configured to" performed the claimed functions reduces to a dispute between experts.

Finally, Geotab alleges that Mr. Darrell Diem, inventor of the patents-in-suit, testified that the patents do not describe how to correlate certain data required by the claims to a specific location in a server database and that his first prototype did not include source code that was compatible with a server. Dkt. 174 at 6. This testimony, according to Geotab, indicates that Mr. Diem was not in possession of the invention at the priority date. *See id.* To the extent this testimony is relevant, however, PerDiem highlights contrary testimony. *See* Dkt. 190 at 6 n.3. As a result, Geotab is not entitled to summary judgment of invalidity based on inadequate written description.

### B. Enablement

To prove that a claim is invalid for lack of enablement, a challenger must show "that a person of ordinary skill in the art would not be able to practice the claimed invention without 'undue experimentation.'" *Allergan, Inc. v. Sandoz Inc.*, 796 F.3d 1293, 1309 (Fed. Cir. 2015) (quoting *In re Wands*, 858 F.2d 731, 736-37 (Fed. Cir. 1988)). "A claim is sufficiently enabled even if 'a considerable amount of experimentation' is necessary, so long as the experimentation 'is merely routine, or if the specification in question provides a reasonable amount of guidance with respect to the direction in which the experimentation should proceed.'" *Vasudeven*, 782 F.3d at 684 (quoting *In re Wands*, 858 F.2d at 737).

If undue experimentation is needed, the claims are invalid. *Id.* In determining whether experimentation is undue, courts consider the *Wands* factors: "They include (1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims." *Id.* (quoting *In re Wands*, 858 F.2d at 737). A court need not consider every one of the *Wands* factors in its analysis but rather may consider only those factors relevant to the facts of the case. *See Amgen, Inc. v. Chugai Pharm. Co., Ltd.*, 927 F.2d 1200, 1213 (Fed. Cir. 1991). "Enablement is a legal question based on underlying factual determinations." *Vasudeven*, 782 F.3d at 684. "A party must prove invalidity for lack of enablement by clear and convincing evidence." *Id.*

Geotab does not address any of the *Wands* factors specifically, but rather argues that the claims are not enabled because they are not adequately described and because Dr. Heppe testified that a person of ordinary skill in the art "would not be enabled to make and use a server

8

'configured' to perform the recited functions, unless the specification provided some description on how to actually configure a server to perform the recited functions." *See* Dkt. 174-4 ¶ 1556. Dr. Schonfeld testified, however, that a person of ordinary skill would understand server architecture and basic coding operations and thus would be equipped to configure servers to perform the recited functions. *See* Dkt. 174-5 ¶ 290.

Geotab cites *Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 1000 (Fed. Cir. 2008), for the proposition that Dr. Schonfeld's "conclusory assertions" are insufficient to rebut Dr. Heppe's testimony. Dkt. 174 at 8. If anything, it is the other way around. Dr. Schonfeld at least explained what a person of ordinary skill in the art would have known and opined on how this knowledge would translate to understanding the claimed invention. *See* Dkt. 174-5 ¶ 290. Dr. Heppe, on the other hand, testified that the claims could not be enabled unless the specification provided guidance "on how to actually a configure a server to perform the recited functions." *See* Dkt. 174-4 ¶ 1556. In other words, Dr. Heppe opined that the claims are not enabled because the specification does not enable them.

*Sitrick* involved a similar imbalance of expert testimony. The invention at issue in *Sitrick* related to integrating a user's audio signal or visual image into a pre-existing video game or movie. 516 F.3d at 995-96. The patent taught how to apply the invention to video games, but not to movies. *Id.* at 1000-01. The defendants' experts explained that the patent's instruction regarding video games could not apply to movies because video games and movies were "technically different," making it difficult if not impossible to integrate a user's audio signal into an existing movie soundtrack. *Id.* at 1001. Plaintiff's expert, by contrast, simply concluded that movies could be substituted for video games, which of course was insufficient to rebut defendants' more detailed testimony. *Id.* The same could be said of Dr. Heppe's testimony.

Finally, Geotab argues that Dr. Schonfeld's testimony implies that a person of ordinary skill in the art would have to rely exclusively on their own knowledge, and enablement must be based on something more. Dkt. 174 at 8. According to Geotab, *Genentech, Inc. v. Novo Nordisk A/S*, 108 F.3d 1361 (Fed. Cir. 1997), supports this proposition because *Genentech* explains that "[i]t is the specification, not the knowledge of one skilled in the art, that must supply the novel aspects of an invention in order to constitute adequate enablement." *Id.* at 1366.

*Genentech* does not advance Geotab's argument. First, *Genentech* involved an invention relating to protein cleavage, which corresponds to a higher level of skill than what is required by the '499 and '931 patents. *See Id.* at 1364. Second, *Genentech* emphasized that the specification must supply "*the novel aspects*" of an invention to satisfy the enablement requirement. *See id.* at 1366 (emphasis added). By contrast, "a specification need not disclose what is well known in the art." *Id.* at 1366 (citing *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1385 (Fed. Cir. 1986)). The novel aspect of an invention cannot—by definition—be enabled by existing knowledge. *Genentech* demands more instruction for an invention's point of novelty, but Geotab does not suggest that configuring the claimed server is the alleged point of novelty. Accordingly, Geotab is not entitled to summary judgment of invalidity based on lack of enablement.

## CONCLUSION

Geotab fails to show the absence of a genuine issue as to any material fact relating to written description or enablement under § 112, ¶ 1. Accordingly, IT IS RECOMMENDED that Geotab's motion for summary judgment (Dkt. 174) be DENIED.

A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report within fourteen days after being served with a copy shall bar that party from de novo review by the district judge of those findings, conclusions, and

recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. Fed. R. Civ. P. 72(b)(2); *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

**SIGNED this 28th day of October, 2016.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE