E-FILED IN OFFICE - JM
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
22-A-10758-5
12/19/2022 2:57 PM
TIANA P. GARNER, CLERK

## IN THE SUPERIOR COURT OF GWINNETT COUNTY

## STATE OF GEORGIA

**Quasar Alexander**
3294 Sequoia Ave
Atlanta, GA 30349

**PLAINTIFF**          CIVIL ACTION NUMBER: _____22-A-10758-5_____

**VS**

**MemberSelect Insurance Company**
**RA: C T Corporation System**
289 S. Culver St.
Lawrenceville, GA 30046

**DEFENDANT**

---

## SUMMONS

---

### TO THE ABOVE-NAMED DEFENDANT:

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

**Michael D. Turner**
**Attorney For the Plaintiff**
**THE HUGGINS LAW FIRM, LLC**
**110 Norcross Street**
**Roswell, GA 30075**
**770-913-6229**
mdturner@lawhuggins.com

an Answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

19th day of December, 2022

This _____ day of _____, 2022.

Tiana P. Garner,
Clerk of Superior Court

BY: _____
Deputy Clerk

Exhibit A

E-FILED IN OFFICE - JM
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
**22-A-10758-5**
**12/19/2022 2:57 PM**
TIANA P. GARNER, CLERK

## IN THE SUPERIOR COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| QUASAR ALEXANDER, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION FILE NO.:** |
| | ) | |
| MEMBERSELECT INSURANCE | ) | _____ |
| COMPANY, | ) | 22-A-10758-5 |
| a foreign corporation, | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

**COMES NOW** Plaintiff **Quasar Alexander**, by and through the undersigned counsel, and files this Complaint for breach of first party property insurance contract and bad faith denial of insurance coverage against Defendant, **MemberSelect Insurance Company**, and in support hereof, states as follows:

## PARTIES

1.

Plaintiff is an adult resident citizen of Fulton County, Georgia.

2.

Upon information and belief, Defendant is a foreign insurance company, registered to transact business in, and in fact transacts business in, the State of Georgia. Defendant is in the business of insuring risks and properties located throughout the United States, including Georgia. Defendant maintains an office at 289 S. Culver St., Lawrenceville, GA 30046, where it may be served with process through its registered agent, C T Corporation System, as identified by the state of Georgia Secretary of State registry.

Exhibit A

## JURISDICTION AND VENUE

3.

This Court has subject matter jurisdiction over this action for breach of contract and bad faith denial of an insurance claim because the breached contract was entered into, and concerned property in, the state of Georgia and the amount in controversy exceeds $15,000.00. This Court has personal jurisdiction over Defendant because Defendant is transacting business and insuring properties in the state of Georgia and has appointed a registered agent for service of process in Georgia pursuant to O.C.G.A. § 33-4-1 and O.C.G.A. § 33-4-4.

4.

Venue is proper in this Court because Defendant has a registered agent doing business in Gwinnett County pursuant to O.C.G.A. § 33-4-1, O.C.G.A. § 33-4-4.

5.

In addition, by virtue of the express terms of the insurance policy at issue, Defendant has consented to jurisdiction and venue of this Court.

## THE POLICY

6.

Prior to October 26, 2020 and October 29, 2020, and in consideration of the premiums paid to Defendant by the Plaintiff, Defendant issued a policy with Policy No. HOM700121987 (the "Policy"). A true and accurate copy of the Policy is attached hereto as Exhibit "A." The policy insures against property damage to Plaintiff's home located at 3294 Sequoia Avenue, Atlanta, GA 30349 (the "Insured Property" or the "home"), and the Policy likewise insures against loss of wind/hail and water damage. Specifically, the Policy provides coverage for "Dwelling and

attached structures" and "Personal property owned or used by an insured person," with a deductible of $2,500.00 per occurrence. (*See* Ex. A).

7.

The Policy covers property repairs on a full replacement cost basis, "the whole amount of loss for property covered," for the real and personal property located at 3294 Sequoia Ave, Atlanta, GA 3034. (*See* Ex. A). The Policy is an all-perils policy providing coverage against loss due to Water and Wind. (*See* Ex. A).

8.

The covers various types of expenses, including mitigating expenses for the reasonable and necessary costs incurred for temporary repairs to protect covered property from further imminent covered loss. (*See* Ex. A).

## SUDDEN AND ACCIDENTAL DAMAGE TO THE INSURED PROPERTY

9.

On or about October 26, 2020 and October 29, 2020, the above-referenced property suffered damage from a sudden and accidental direct physical loss resulting from Water and Wind respectively (the "Losses"). The Policy was in effect at the time of the Loss.

10.

Plaintiff promptly and timely notified Defendant of the damage to the Property resulting from the Losses and made a claim pursuant to the Policy. As a result, Defendant assigned an adjuster ("Adjuster") to investigate Plaintiff's claims for sudden and accidental direct physical loss. The Adjuster was authorized as Defendant's representative and agent for purposes of the claim.

11.

At all times, Plaintiff made himself and the Property available to, and fully cooperated with, the Defendant and its representative and agent to inspect and investigate the damages caused by the losses.

12.

Defendant, through its authorized representative and agent, Adjuster, performed a site inspection of the Property.

13.

Defendant's authorized representative and agent, Adjuster, incurred the duty of acting with due diligence in achieving a proper disposition of the Plaintiff's claim when Adjuster undertook the handling of the claim.

## DAMAGE TO THE INSURED PROPERTY

14.

Defendant, through its authorized representative and agent, Adjuster, grossly underestimated the scope of loss suffered by the Plaintiff as a result of the Water event. Defendant failed to properly indemnify the Plaintiff and estimated Plaintiff's total loss to be $2,481.63. Plaintiff's deductible is $2,500.00 per occurrence, and Defendant withheld $0.00 in recoverable depreciation; thus, after $792.54 in deductions for depreciation and Plaintiff's deductible, Defendant claims Plaintiff was due $0.00 as indemnification under the Policy. A true and accurate copy of the Defendant's estimate is attached hereto as Exhibit "B."

15.

Defendant, through its authorized representative and agent, Adjuster, grossly underestimated the scope of loss suffered by the Plaintiff as a result of the Wind event. Defendant

4

failed to properly indemnify the Plaintiff and estimated Plaintiff's total loss to be $4,469.36. Plaintiff's deductible is $2,500.00 per occurrence, and Defendant withheld $0.00 in recoverable depreciation; thus, after deductions for depreciation and Plaintiff's deductible, Defendant claims Plaintiff was due $1,969.36 as indemnification under the Policy. A true and accurate copy of the Defendant's estimate is attached hereto as Exhibit "C."

16.

As a result of Defendant's gross underestimation, Plaintiff requested multiple times that Defendant reconsider its position regarding Defendant's estimates. Defendant refused to comply with the Plaintiff's requests and continued to frivolously and baselessly deny any additional payment on Plaintiff's claim. Furthermore, the Defendant continued to ignore the opinions of the Plaintiff's experts as to the extent of damage and the amount it will cost the Plaintiff to be properly indemnified for the Loss.

17.

Plaintiff made repeated requests for payment of the claims, including a written demand sent to Defendant on August 8, 2022. A true and accurate copy of the written demand is attached hereto as Exhibit "D." Despite this demand for $259,898.66 less previous payments and the applicable deductible, Defendant continued to frivolously deny Plaintiff's claim without just cause when, under one or more portions of the Policy, the obligation to settle the claim became reasonably clear.

18.

The Plaintiff's August 8, 2022, correspondence (Ex. D) to Defendant was a letter of representation from Plaintiff's counsel and a formal 60-Day demand, pursuant to the guidelines

5

set forth in O.C.G.A. §33-4-6. After putting Defendant on notice of a potential lawsuit through the formal 60-Day demand, the Defendant continued to deny Plaintiff's claim without just cause.

19.

Defendant did not act fairly or honestly toward the Plaintiff, or with due regard to the Plaintiff's claim and interests, when Defendant, under all circumstances articulated herein, failed to indemnify the Plaintiff for their damages in direct breach of the terms and conditions of the Policy.

20.

Plaintiff has fulfilled all conditions precedent and contractual obligations under the Policy prior to this lawsuit, or the same were waived.

21.

There exists a genuine, justifiable controversy between the Plaintiff and the Defendant as to whether Defendant is responsible for further indemnification owed to the Plaintiff as a result of the Loss. Plaintiff has exhausted every reasonable means possible to resolve this dispute with the Defendant. With no other option, Plaintiff was constrained to hire legal counsel, incur additional expenses, and file this lawsuit.

22.

Plaintiff has suffered loss under the Policy in an amount to be determined at trial.

## COUNT I: BREACH OF CONTRACT

23.

Plaintiff hereby adopts, re-alleges, and incorporates their allegations set forth in Paragraphs 1-22 of this Complaint as if fully set forth herein.

6

24.

Plaintiff has performed all conditions precedent to the Defendant's obligation to perform under the Policy including, without limitation, the timely payment of premiums, timely notice of the claim, and post loss obligations, or the Defendant has waived any and all other conditions.

25.

Under the terms of the Policy, Defendant is required to fully indemnify the Plaintiff for the damages sustained from the Loss.

26.

Despite Plaintiff's timely written demand, Defendant failed to provide full indemnification to the Plaintiff under the terms of the Policy.

27.

Defendant failed to act in good faith and fair dealing under the terms of the Policy by refusing to properly investigate and fully indemnify the Plaintiff according to the terms of the Policy.

28.

As a result of the Defendant's denying and delaying payment in Plaintiff's claim, Plaintiff sustained additional covered losses from mitigation and temporary repairs of the direct physical damage to the Property in an amount to be determined at trial.

29.

The Plaintiff suffered damages as a direct result of Defendant's failure to indemnify the Plaintiff for their loss.

Exhibit A

30.

All foregoing conduct constitutes a breach of contract that has resulted in damages to the Plaintiff.

31.

**WHEREFORE,** Plaintiff prays for this Court to enter an award in Plaintiff's favor of compensatory damages, attorneys' fees, pre- and post-judgment interest, and such other and further relief as the Court may deem just and proper.

## COUNT II: BAD FAITH PURSUANT TO O.C.G.A. § 33-4-6

32.

Plaintiff hereby adopts, re-alleges, and incorporates their allegations set forth in Paragraphs 1-31 of this Complaint as if fully set forth herein.

33.

By failing to achieve a proper disposition of Plaintiff's claim, Defendant acted frivolously, and without a reasonable basis or justification, in contravention of its duty of good faith and fair dealing.

34.

Defendant did not attempt in good faith to settle the Plaintiff's claim when it could have, and should have, done so under all attendant circumstances had it acted fairly and honestly toward the Plaintiff and with due regard for the Plaintiff's interests.

35.

Defendant's failures to adjust Plaintiff's claim in good faith include, but are not limited to:

(1) Knowingly misrepresenting to claimants, and insureds, relevant facts or policy provisions relating to coverages at issue (*see* O.C.G.A. § 33-6-34(1));

8

(2) Failing to acknowledge with reasonable promptness pertinent communications with respect to claims arising under its policies (*see* O.C.G.A. § 33-6-34(2));

(3) Failing to adopt and implement procedures for the prompt investigation and settlement of claims arising under its policies (*see* O.C.G.A. § 33-6-34(3));

(4) Not attempting in good faith to effectuate prompt, fair, and equitable settlement of claims submitted in which liability has become reasonable clear (*see* O.C.G.A. § 33-6-34(4));

(5) Compelling insureds or beneficiaries to institute suits to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in suits brought by them (*see* O.C.G.A. § 33-6-34(5));

(6) Refusing to pay claims without conducting a reasonable investigation (*see* O.C.G.A. § 33-6-34(6));

(7) When requested by the insured in writing, failing to affirm or deny coverage of claims within a reasonable time after having completed its investigation related to such claim or claims (*see* O.C.G.A. § 33-6-34(7)); and

(8) When requested by the insured in writing, failing in the case of payments or offers of compromise to provide promptly a reasonable and accurate explanation of the basis for such action (or, in the case of claims denials, providing said denial to the insured in writing) (*see* O.C.G.A. § 33-6-34(10)).

36.

The above and foregoing actions of Defendant constitute bad faith pursuant to O.C.G.A. § 33-4-6, as the Defendant refused to pay Plaintiff's covered loss within sixty (60) days after Plaintiff's timely written demand (Ex. D) for payment without a reasonable basis for doing so.

9

37.

Defendant frivolously, and without a reasonable basis, denied proper indemnification to the Plaintiff for their covered loss.

38.

Defendant's refusal to indemnify the Plaintiff was done frivolously, without a reasonable basis, and in bad faith.

39.

As a result of Defendant's above-referenced bad faith breach of the Policy issued to the Plaintiff, and pursuant to O.C.G.A. § 33-4-6(a), Defendant is liable for penalties in the amount of "not more than fifty percent (50%) of the liability of the insurer for the loss, or $5,000.00, whichever is greater, and all reasonable attorneys' fees for the prosecution of the action against the Insurer."

40.

**WHEREFORE,** Plaintiff prays for this Court to enter an award, in Plaintiff's favor, of the statutory award in an amount of fifty percent (50%) of the total compensatory damages awarded or $5,000.00, whichever is greater, along with a statutory allowance for reasonable attorneys' fees in prosecuting this action, pursuant to O.C.G.A. § 33-4-6, for Defendant's unfair claims settlement practices and bad faith refusal to pay Plaintiff's loss claim when it could and should have done so, had it acted fairly and reasonably toward the insured.

## **DEMAND FOR JURY TRIAL**

41.

Plaintiff requests a trial by Jury on all counts of the Complaint.

10

Exhibit A

**PRAYER FOR RELIEF**

42.

**WHEREFORE,** Plaintiff requests that after due proceedings are had, all appropriate penalties be assessed against the Defendant and that the Plaintiff receive any and all damages at law to which they are justly entitled, and thus prays for judgment against the Defendant, as follows:

a. That this Court grant judgment in favor of the Plaintiff and against Defendant in an amount to be determined at trial for breach of insurance contract.

b. Compensatory damages, including all damages to the Plaintiff by the Defendant and any resulting expenses.

c. Bad faith damages in an amount of fifty percent (50%) of the total compensatory damages awarded or $5,000.00, whichever is greater, for Defendant's bad faith delay, denial, and its intentional, frivolous failure to conduct a reasonable investigation of the Plaintiff's claim without a reasonable basis;

d. Plaintiff's attorneys' fees and costs of suit in this action;

e. Plaintiff's consultant and expert fees;

f. Pre- and post-judgment interest in the maximum amount allowed by law;

g. All statutory penalties;

h. Any and all applicable multipliers; and,

i. Any and all other relief that the Court may deem just and proper, whether such relief sounds in law or equity.

Exhibit A

Dated, this 19th day of December, 2022.

RESPECTFULLY SUBMITTED,

**The Huggins Law Firm, LLC**
110 Norcross Street
Roswell, GA 30075
(o) (770) 913-6229
(e) remington@lawhuggins.com
(e) mdturner@lawhuggins.com

J. Remington Huggins, Esq.
Georgia Bar No.: 348736
Michael D. Turner, Esq.
Georgia Bar No.: 216414
*Attorneys for the Plaintiff*

12

Exhibit A

# EXHIBIT A



Georgia

# Here is your Homeowners Insurance Policy

*MemberSelect Insurance Company*



ACG351-GA-1018

Exhibit A

# Table of Contents

Agreements We Make With You...........................................................................................................................3

Definitions................................................................................................................................................................3

General Insuring Agreement...............................................................................................................................5

**Part I – Property Insurance Coverages** ........................................................................................................5

Coverage A - Dwelling..........................................................................................................................................5

Property We Cover Under Coverage A:...........................................................................................................5

Property We Do Not Cover Under Coverage A:.............................................................................................6

Coverage B - Additional Structures..................................................................................................................6

Property We Cover Under Coverage B:...........................................................................................................6

Property We Do Not Cover Under Coverage B:.............................................................................................6

Losses We Cover Under Coverages A And B:.................................................................................................6

Losses We Do Not Cover Under Coverages A And B:...................................................................................6

Coverage C - Personal Property........................................................................................................................10

Property We Cover Under Coverage C:..........................................................................................................10

Special Limits on Certain Personal Property:...............................................................................................11

Property We Do Not Cover Under Coverage C:............................................................................................11

Losses We Cover Under Coverage C:..............................................................................................................12

Losses We Do Not Cover Under Coverage C:...............................................................................................13

**Part I – Additional Insurance Coverages** ..................................................................................................16

1.  Additional Living Expense.........................................................................................................................16

2.  Civil, Governmental And Military Authorities......................................................................................16

3.  Debris Removal..............................................................................................................................................16

4.  Emergency Removal Of Property..............................................................................................................16

5.  Fire Department Charges.............................................................................................................................16

6.  Temporary Repairs After A Loss................................................................................................................16

7.  Trees, Shrubs, Plants And Lawns...............................................................................................................17

8.  Arson Reward.................................................................................................................................................17

9.  Collapse...........................................................................................................................................................17

10. Land.................................................................................................................................................................18

11. Lock Replacement.........................................................................................................................................18

**Part I – Conditions** ...........................................................................................................................................18

1.  Deductibles.....................................................................................................................................................18

2.  Insurable Interest And Our Liability.........................................................................................................18

3.  What You Must Do After A Loss.................................................................................................................18

4.  Our Settlement Options................................................................................................................................19

5.  How We Pay For A Loss................................................................................................................................19

6.  Our Settlement Of Loss................................................................................................................................20

7.  Appraisal.........................................................................................................................................................21

8.  Abandoned Property.....................................................................................................................................21

9.  Our Rights To Recover Payment.................................................................................................................21

10. Our Rights To Obtain Salvage....................................................................................................................21

11. Suit Against Us...............................................................................................................................................21

12. Loss To A Pair Or Set....................................................................................................................................21

13. Glass Replacement........................................................................................................................................21

14. No Benefit To Bailee.....................................................................................................................................21

15. Other Insurance.............................................................................................................................................21

Exhibit A

16. Property Insurance Adjustment. ...................................................................................................21
17. Mortgagee. ...................................................................................................................................22
18. Mold, Fungus, Wet Rot And Dry Rot Remediation As A Direct Result Of A Covered Water Loss. ....22
19. Assignment of Claim. ....................................................................................................................23

**Part II – Liability Insurance Coverages** .............................................................................................**23**

Coverage E - Personal Liability ............................................................................................................23
Losses We Cover Under Coverage E: ...................................................................................................23
Losses We Do Not Cover Under Coverage E: .......................................................................................23
Coverage F - Medical Payments To Others ...........................................................................................25
Losses We Cover Under Coverage F: ...................................................................................................25
Losses We Do Not Cover Under Coverage F: .......................................................................................25

**Part II – Additional Payments** ...........................................................................................................**27**

1. Claim Expense .............................................................................................................................27
2. Emergency First Aid .....................................................................................................................28
3. Damage To Property Of Others .....................................................................................................28

**Part II – Conditions** .........................................................................................................................**28**

1. What You Must Do After A Loss. ...................................................................................................28
2. What An Injured Person Must Do - Coverage F - Medical Payments to Others. .................................29
3. Our Payment Of Loss - Coverage F - Medical Payments to Others. ..................................................29
4. Our Limits Of Liability. .................................................................................................................29
5. Severability Of Insurance. ............................................................................................................29
6. Bankruptcy. .................................................................................................................................29
7. Our Rights To Recover Payment - Coverage E - Personal Liability. ..................................................29
8. Suit Against Us. ...........................................................................................................................29
9. Other Insurance - Coverage E - Personal Liability. ........................................................................30

**General Policy Conditions** ................................................................................................................**30**

1. Entire Contract - Waiver or Change of Policy Provisions. ................................................................30
2. Joint Obligations. .........................................................................................................................30
3. Conformity To State Statutes. .......................................................................................................30
4. Coverage Changes. ......................................................................................................................30
5. Assignment of Policy. ...................................................................................................................30
6. Death. .........................................................................................................................................30
7. Cancellation. ...............................................................................................................................31
8. Policy Expiration ..........................................................................................................................31
9. Conditional Reinstatement. ..........................................................................................................31
10. Misrepresentation, Fraud Or Concealment. ...................................................................................31
11. Policy Term. .................................................................................................................................32
12. Premium Payment and Fees. .........................................................................................................32
13. What Law Will Apply. .....................................................................................................................32
14. Where Lawsuits May Be Brought. ...................................................................................................32
15. Suit Against Us. ...........................................................................................................................32
16. Policy Notices. ............................................................................................................................32
17. Right to Inspect. ..........................................................................................................................33

**Signature Clause.** ............................................................................................................................**33**

Exhibit A

READ YOUR POLICY CAREFULLY.

This policy is a legal contract between you (the policyholder) and us (the company). It contains certain Exclusions.

## AGREEMENTS WE MAKE WITH YOU

**We** make the following agreements with **you**:

## DEFINITIONS

**We** define the following words or phrases for use throughout this policy. These definitions apply to the singular, plural, and possessive forms of these words and phrases. When the following words appear in bold type, they are defined as follows:

1.  **Actual Cash Value** means the reasonable replacement cost at time of loss less deduction for depreciation.

    **We** may depreciate all replacement costs, including, but not limited to, the costs of:

    a)  materials, including any tax;

    b)  labor, including any tax; and

    c)  overhead and profit.

    The depreciation deduction may include such considerations as:

    a)  age;

    b)  condition;

    c)  reduction in useful life;

    d)  obsolescence; and

    e)  any pre-loss damage including wear, tear, or deterioration;

    of the damaged part of the property.

2.  **Bodily injury** means physical harm to the body, including physical sickness or disease, and resulting death, to a person other than an **insured person**, except that **bodily injury** does not include:

    a)  psychological or mental injury or effect, including, but not limited to, fear, depression, humiliation, anxiety, anguish, shock or distress, unless it arises from actual physical harm to the body of a person;

    b)  the actual or alleged exposure to or transmission of any communicable disease, bacteria, parasite, virus or other organism by any **insured person** to any other person;

    c)  herpes, Acquired Immune Deficiency Syndrome (AIDS), AIDS Related Complex (ARC), Human Immunodeficiency Virus (HIV);

    d)  any auto-immune disease; or

    any resulting symptom, effect, condition, disease or illness related to a) through d) listed above.

3.  **Building structure** means a structure with walls and a roof.

4.  **Business** means:

    a)  any full-time or part-time activity, trade, profession, employment, or occupation or a commercial, mercantile, or industrial undertaking of an economic nature. It does not matter whether it is continuous or regular, is a secondary or supplemental source of income, or is an **insured person's** principal means of livelihood. Profit and profit motive are irrelevant. The providing of home day care services to other than an **insured person** or relative of an **insured person** for economic gain is also a **business**. However, the mutual exchange of home day care services is not considered a **business**;

    b)  the rental or holding for rental of property by an **insured person**. Rental of **your residence premises** is not considered a **business** when:

        1)  it is rented occasionally for use as a private residence;

        2)  a portion is rented to roomers or boarders, provided not more than two roomers or boarders reside on the **residence premises** at any one time;

        3)  a portion is rented as a private garage.

    c)  **business** does not include:

        1)  Volunteer activities for a not-for-profit or non-profit or public agency for which no money is received other than payment of expenses;

        2)  Incidental and infrequent personal economic activity such as hobby, garage and yard sale, or traditional farm activities when the farm products are for the personal use of an **insured person**; or

Exhibit A

3)  the ownership, maintenance, or use of systems and equipment used to generate electrical power up to but not exceeding 125 percent of the actual electrical power usage by the residence premises in the 12-month period prior to the date of the loss.

5.  **Diminution in value** means any actual or perceived reduction in the value of any covered property prior to or following repair or replacement as compared to the value of that property immediately before the loss.

6.  **Drug** means any substance listed in the schedules of controlled substances in Chapter 13 of Title 21 of the United States code.

7.  **Dwelling** means the single-family **building structure**, identified as the insured property on the Declaration Certificate, where **you** reside and which is principally used as a private residence.

8.  **Fungus** or **fungi** means any part or form of any **fungus** or **fungi**, including mold, mildew, spores, wet or dry rot, parasitic microorganisms, mycelial agent or fragment, scents, or mycotoxins. This includes any by-product of any of the foregoing, whether germinated, whether forming a colony or infestation, whether aerosolized, and whether visible or not visible to the unaided human eye.

9.  **Insured person(s)** means **you** and, if a resident of **your** household:

    a)  any relative; and

    b)  any person under the age of 21 in **your** care.

    Under **Coverage E - Personal Liability** and **Coverage F - Medical Payments To Others**, **insured person** also means:

    a)  any person or organization legally responsible for loss caused by animals or watercraft covered by this policy which are owned by an **insured person**. **We** do not cover any person or organization using or having custody of animals or watercraft in any **business**, or without permission of the owner.

    b)  with respect to the use of any vehicle covered by this policy, any person while engaged in the employment of an **insured person**.

10. **Insured premises** means:

    a)  the **residence premises**;

    b)  individual or family cemetery plots or burial vaults owned by an **insured person**; and

    c)  under **Part II - Liability Insurance Coverages** only:

        1)  the part of any other premises, additional structures and grounds used by **you** as a residence. This includes premises, structures and grounds **you** acquire for **your** use as a private residence while this policy is in effect;

        2)  any part of a premises not owned by an **insured person** but where an **insured person** is temporarily residing;

        3)  land owned by or rented to an **insured person** where a single-family dwelling is being built as that person's residence;

        4)  any premises used by an **insured person** in connection with the **residence premises**; and

        5)  any part of a premises occasionally rented to an **insured person** for other than **business** purposes.

11. **Hurricane** means a weather system declared by the **National Weather Service** to be a hurricane.

12. **National Weather Service** means the National Weather Service or, if the National Weather Service ceases to exist, ceases to perform the function of declaring weather systems to be hurricanes or tropical storms, or ceases to perform the function of issuing hurricane watches or hurricane warnings, such other entity as determined by **us**.

13. **Occurrence** means an accident which first occurs during the policy term, and which results in **bodily injury** or **property damage**. Repeated or continuous exposure to the same general harmful conditions is considered to be one **occurrence**.

14. **Property damage** means physical injury to or destruction of tangible property, including loss of its use resulting from such physical injury or destruction.

    **Property damage** does not mean:

    a)  actual, threatened, feared, constructive or alleged **diminution in value** or loss of value or diminution of equity;

    b)  functional impairment or loss of use of property unless the property has sustained direct, distinct and demonstrable, physical injury or destruction; or

    c)  non-economic damages.

15. **Residence employee** means an employee of an **insured person** or an employee leased to an **insured person** by a labor leasing firm under an agreement between an **insured person** and the labor leasing firm while performing duties arising out of and in the course of employment in connection with the maintenance or use of **your residence premises**. This includes similar duties performed elsewhere for an **insured person**, not in connection with a **business** of an **insured person**.

16. **Residence premises** means the **dwelling**, additional structures and land located at the address stated on the Declaration Certificate.

Exhibit A

17. **Roof material** means the roof surface material type (slate, composition, wood, tile, metal, all other roof surface material types) of a **building structure** or additional structure covered under **Coverage A - Dwelling** or **Coverage B - Additional Structures** and all other roofing components, including, but not limited to:

    a)   flashing, caps, vents, drip edges, and ice shields;

    b)   sheeting, felt and membranes;

    c)   modified bitumen, bitumen, rubber, built-up and sprayed polyurethane foam roofing;

    d)   foam inserts and elastomeric coating;

    e)   finials, eave and gable trim and snow guards;

    f)   battens, counter battens, bird stops, gravel stops; and

    g)   coatings, adhesives, adherents and other finishing materials for roof surface materials and all other roofing components.

18. **Tropical cyclone** means a **hurricane**, a **tropical storm**, or any wind, hail, rain, snow, or sleet accompanying a **hurricane** or a **tropical storm**.

19. **Tropical storm** means weather system declared by the **National Weather Service** to be a tropical storm, provided such weather system:

    a)   was a **hurricane** or, at any time in the 24 hours immediately following **your** covered loss, becomes a **hurricane**; and

    b)   was the subject of a hurricane watch or hurricane warning issued by the **National Weather Service** for any part of the state in which **your residence premise** is located.

20. **Vacancy** or **vacant** means:

    a)   no one is legally using the **dwelling** as a principal, habitual place of abode; and

    b)   a predominant amount of personal property has been removed or is absent from the **dwelling**.

    A **dwelling** will be considered legally used only if it is with the knowledge and approval of the owner.

    A **dwelling** under active construction, or actively being repaired because of damage otherwise covered under this policy, will not be considered **vacant** even if a) and b) apply. A **dwelling** is under active construction when it is being erected as a new structure or when it is undergoing substantial improvements, renovations, remodeling or modifications and the construction results in substantial continuing activities by persons associated with the construction project at the premises during the relevant time periods. This definition will apply whether or not a **dwelling** is in fact habitable.

21. **Vandalism or malicious mischief** means malicious or willful, intentional physical injury or damage to property.

22. **We**, **us**, or **our** means the company named on the Declaration Certificate.

23. **Windstorm** means wind with or without precipitation.

24. **You**, **your** means the person listed under Named Insured(s) on the Declaration Certificate, as the insured and that person's resident spouse.

## GENERAL INSURING AGREEMENT

In reliance on the information **you** have given **us**, **we** agree to provide the coverages indicated on the Declaration Certificate. In return, **you** must pay the premium when due and comply with the policy terms and conditions, and inform **us** of any change in title, use or occupancy of the **residence premises**.

Subject to the terms of this policy, the Declaration Certificate shows the location of the **residence premises**, applicable coverages, limits of liability and premiums. The policy applies only to losses or **occurrences** that take place during the policy term. The Policy Term is shown on the Declaration Certificate. This policy is not complete without the Declaration Certificate.

# Part I — Property Insurance Coverages

## COVERAGE A - DWELLING

**Property We Cover Under Coverage A:**

1.   **Your dwelling**, including attached structures. Structures connected to **your dwelling** by only a fence, utility line, or similar connection are not considered attached structures.

2.   Construction materials and supplies at the **residence premises** for use in connection with **your dwelling**.

3.   Wall-to-wall carpeting fastened to **your dwelling**.

Exhibit A

**Property We Do Not Cover Under Coverage A:**

1. Any structure, including fences, or other property covered under **Coverage B - Additional Structures**.
2. Land.
3. Satellite dish antennas and their systems, whether or not attached to **your dwelling**.
4. Systems and equipment used to generate electrical power exceeding 125 percent of the actual electrical power usage by the **residence premises** in the 12-month period prior to the date of the loss.

## COVERAGE B - ADDITIONAL STRUCTURES

**Property We Cover Under Coverage B:**

1. Structures at the address shown on the Declaration Certificate separated from **your dwelling** by clear space.
2. Structures at the address shown on the Declaration Certificate connected to **your dwelling** by only a fence, utility line, or similar connection.
3. Construction materials and supplies at the **residence premises** for use in connection with structures other than **your dwelling**.
4. Wall-to-wall carpeting fastened to **building structures**, other than **your dwelling**, at the address shown on the Declaration Certificate.

**Property We Do Not Cover Under Coverage B:**

1. Structures used in whole or in part for **business** purposes.
2. Any structure or other property covered under **Coverage A - Dwelling**.
3. Land.
4. Construction materials and supplies at the **residence premises** for use in connection with the **dwelling**.
5. Satellite dish antennas and their systems, whether or not attached to **building structures**.
6. Systems and equipment used to generate electrical power exceeding 125 percent of the actual electrical power usage by the **residence premises** in the 12-month period prior to the date of the loss.

**Losses We Cover Under Coverages A And B:**

**We** will cover sudden and accidental direct physical loss to property described in **Coverage A - Dwelling** and **Coverage B - Additional Structures** except as limited or excluded in this policy. However, loss does not include and **we** will not pay for, any **diminution in value**.

**Losses We Do Not Cover Under Coverages A And B:**

A. Under **Coverage A - Dwelling** and **Coverage B - Additional Structures** of this policy, **we** do not cover any loss which consists of, is caused by, or would not have occurred but for, one or more of the following excluded events, perils or conditions. Such loss is excluded regardless of: a) the cause or source of the excluded event, peril or condition; b) any other causes contributing concurrently or in any sequence with the excluded event, peril or condition to produce the loss; c) whether the excluded event, peril or condition is caused by acts of commission or omission; or d) whether the excluded event, peril or condition occurs abruptly or gradually, involves isolated or widespread damage, arises from natural, man-made or other forces, or arises as a result of any combination of these forces.

   1. Water damage, meaning:
      a) flood, including, but not limited to, surface water, waves, storm surge, tsunami, tidal water or overflow of any body of water from any source, or spray from any of these, whether or not driven by wind.
      b) water or any other substance from outside the **residence premises** plumbing system that enters the dwelling or additional structure through household sewers, drains or drainage fixtures or a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area.
      c) water or any other substance originating from inside the dwelling or additional structure which escapes the plumbing system through a floor drain inside the dwelling or additional structure.
      d) water or any other substance originating from any source on or below the surface of the ground. This includes water which exerts pressure on or flows, seeps or leaks through any part of a **building structure**, sidewalk, driveway, foundation or swimming pool or other structure.

      **We** do cover sudden and accidental direct physical loss caused by fire or explosion resulting from items a) through d) listed above.

Exhibit A

2. Earth movement of any type, including, but not limited to, earthquake, volcanic eruption, lava flow, landslide, sinkhole or subsidence, mudflow, pressure, sinkhole, erosion, or the sinking, rising, shifting, creeping, expanding, bulging, cracking, settling or contracting of the earth. This exclusion applies whether or not the earth movement is combined with water, sewage, or any material carried by, or otherwise moved by the earth.

   **We** do cover sudden and accidental direct physical loss caused by fire or explosion resulting from earth movement.

3. Actions taken by civil, governmental or military authorities:

   a) to enforce any building codes, ordinances or laws regulating or requiring the construction, reconstruction, maintenance, replacement, repair, placement or demolition of any **building structure**, additional structure or land at the **residence premises**; or

   b) requesting, demanding or ordering that an **insured person** test for, monitor, clean up, remove, contain, treat, detoxify, decontaminate, or neutralize, or in any way respond to or assess the effects of, any loss or potential loss at the **residence premises**.

   However, **we** will cover sudden and accidental direct physical loss caused by actions of civil, governmental or military authority to prevent the spread of fire.

4. Nuclear hazard, meaning any nuclear reaction, discharge, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or, any consequence of any of these. Loss which consists of, is caused by, or would not have occurred but for, the nuclear hazard is considered loss by fire, explosion or smoke.

5. a) War, whether declared or undeclared;

   b) warlike acts;

   c) invasion;

   d) insurrection;

   e) rebellion;

   f) revolution;

   g) civil war;

   h) usurped power;

   i) destruction or use for a military purpose; or

   j) action taken by civil, governmental or military authority to hinder or defend against an actual or impending enemy act.

6. Soil conditions, including, but not limited to, corrosive action, chemicals, compounds, elements, suspensions, crystal formations or gels in the soil.

7. Vapors, fumes, smoke, smog, soot, alkalis, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials, or other irritants, contaminants or pollutants.

   However, **we** will not apply this exclusion to sudden and accidental direct physical loss which consists of, is caused by, or would not have occurred but for:

   a) a fire or an explosion at **your residence premises**;

   b) smoke or soot resulting from food preparation at **your residence premises**;

   c) the malfunction of a heating or air conditioning system or a household appliance at **your residence premises**;

   d) smoke, soot or fumes originating away from **your residence premises**, provided the smoke, soot or fumes:

   　1) were not from industrial, governmental or military operations, agricultural smudging, or the manufacturing of any controlled substance; and

   　2) did not result from nuclear hazard, meaning nuclear reaction, discharge, radiation or radioactive contamination, or any consequence of any of these;

   e) spray, overspray, spatter, or spillage, by a person located on the ground at the **residence premises** or in or upon a structure **we** cover at the **residence premises**, of lawfully possessed, commercially available supplies manufactured or produced for use in food preparation, personal hygiene, or for cleaning or maintaining a residential property or personal property;

   f) spray, overspray, spatter or spillage of lawfully possessed, commercially available supplies by a person performing cleaning or other maintenance services at a premises located within 500 feet of the **residence premises**;

   g) spillage or release at **your residence premises** of gas or oil, in any form, used to prepare foods at **your residence premises**, or to heat the **dwelling** or other **building structures** at **your residence premises**, when such spillage or release results in a fire or an explosion at **your residence premises**;

Exhibit A

h) fuel, oil or other fluids necessary to operate a motorized land vehicle if, at the time of the loss, such fuel, oil or other fluids are being used solely for the purpose of operating a motorized land vehicle and the loss results from a collision, at the **residence premises**, of the motorized land vehicle with property **we** cover under **Coverage A – Dwelling** or **Coverage B – Additional Structures**; or

i) 1) irritants;

2) contaminants; or

3) pollutants;

produced, discharged, dispersed, released or that have escaped as part of an otherwise covered loss occurring at the **residence premises** which consists of, is caused by, or would not have occurred but for one or more perils listed under **Losses We Cover Under Coverage C.**

8. Lack of utility services at the **residence premises**, meaning loss or interruption of, lack or loss of access to, or unavailability of, one or more utility services for the **residence premises**, including, but not limited to, electric, natural gas or other fuels, water, sanitation, sewer, cable or communication services, unless the lack of utility services results solely from a sudden and accidental direct physical loss to property located at the **residence premises** caused by an event, peril or condition not excluded by this policy.

When the lack of utility services results in freezing of:

a) plumbing, automatic fire protective sprinkler systems, heating or air conditioning systems;

b) household appliances; or

c) swimming pools, hot tubs or spas located within a heated portion of the dwelling, or their filtration and circulation systems located within a heated portion of the **dwelling**;

or when the lack of utility services results in discharge, leakage or overflow from within a), b) or c) above caused by freezing, **we** do cover sudden and accidental direct physical loss caused by the freezing if **you** used reasonable care to maintain heat in the **building structure**. If the **building structure** is not equipped with an automatic fire protective sprinkler system, **you** may elect to shut off the water supply and drain the water from the systems, appliances, swimming pools, hot tubs, spas and their filtration and circulation systems instead of maintaining heat in the **building structure**.

9. Inability of an **insured person** to use, access or remain at the **residence premises** due to an actual, impending or expected lack, impassability or unavailability of any reasonable means of ingress to or egress from the **residence premises**, including, but not limited to, roads, highways, causeways, sidewalks, paths, rails, bridges, tunnels or waterways.

For purposes of this exclusion, a particular means of ingress or egress will be considered impassable or unavailable if:

a) it cannot be safely traveled due to physical damage or destruction of that means of ingress or egress; or

b) it cannot be traveled due to actions by others, including, but not limited to, civil, governmental or military authorities which prohibit or restrict travel using that means of ingress or egress.

10. Seizure, confiscation or quarantine by civil, governmental or military authority.

**We** will cover sudden and accidental direct physical loss caused by actions of civil, governmental or military authority to prevent the spread of fire.

11. The manufacturing of any controlled substance if involvement is within the knowledge of an **insured person**.

12. Weather Conditions that contribute in any way with an event, peril or condition excluded under **Losses We Do Not Cover Under Coverages A And B** to produce a loss.

13. cosmetic loss or damage to the surface of a metal, tile or slate roof, including but not limited to, indentations, dents, distortions, scratches, or marks, that change only the physical appearance of the surface of a metal, tile or slate roof and does not result in:

a) penetration of water through the roof surface; or

b) the failure of the roof to perform its intended function of keeping out the elements for an extended period of time.

This exclusion applies to all components of the surface of a metal, tile or slate roof, including but not limited to, panels, shingles, flashing, caps, vents, drip edges, finials, eave and gable trim and snow guards, coatings and other finishing materials.

B. Under **Coverage A – Dwelling** and **Coverage B – Additional Structures** of this policy, **we** do not cover any loss consisting of or caused by mold, fungus, wet rot, dry rot or bacteria. This includes any loss which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

This exclusion applies regardless of whether mold, fungus, wet rot, dry rot or bacteria arises from any other cause of loss, including, but not limited to, a loss involving water, water damage or discharge, which may otherwise be covered by this policy, except as specifically provided in **Part I – Conditions – Mold, Fungus, Wet Rot And Dry Rot Remediation As A Direct Result Of A Covered Water Loss.**

Exhibit A

However, if mold, fungus, wet rot, dry rot or bacteria ensues from a covered fire or lightning loss, this exclusion does not apply.

C.   When loss is not excluded under paragraph A. or paragraph B. of **Losses We Do Not Cover Under Coverages A And B**, and there are two or more causes of loss to the covered property, **we** do not cover the loss if the predominant cause(s) of loss is (are) excluded under paragraph D., immediately below.

D.   Under **Coverage A - Dwelling** and **Coverage B - Additional Structures** of this policy, **we** do not cover any loss consisting of or caused by one or more of the following excluded events, perils or conditions. Such loss is excluded regardless of whether the excluded event, peril or condition involves isolated or widespread damage, arises from natural, man-made or other forces, or arises as a result of any combination of these forces.

1.   The failure by any **insured person** to take all reasonable steps to save and preserve property when the property is endangered by a cause of loss **we** cover.

2.   Any substantial change or increase in hazard, if changed or increased by any means within the control or knowledge of an **insured person**.

3.   Intentional or criminal acts of or at the direction of any **insured person**, if the loss that occurs:

a)   may be reasonably expected to result from such acts; or

b)   is the intended result of such acts.

This exclusion applies regardless of whether the **insured person** is actually charged with, or convicted of, a crime.

**We** will not deny payment to an **insured person** for a claim based on property loss or damage resulting from an act, or pattern, of abuse or domestic abuse if that **insured person** did not cooperate in or contribute to the creation of the loss or damage and if the person who committed the act or act that caused the loss or damage is criminally prosecuted for the act or acts.

Payment to the innocent **insured person** may be limited in accordance with his or her ownership interest in the property or reduced by payments to a mortgagee or other holder of a secured interest.

4.   Collapse, except as specifically provided in **Part I - Additional Insurance Coverages** under item 9, Collapse.

5.   a)   Wear and tear, aging, marring, scratching, deterioration, inherent vice, or latent defect;

b)   mechanical breakdown;

c)   pressure by, push from, presence of or growth of trees, shrubs, plants or lawns, regardless of whether such growth is above or below the surface of the ground;

d)   rust or other corrosion;

e)   settling, cracking, shrinking, bulging or expansion of pavements, patios, foundations (including slabs, basement walls, crawl space walls, and footings), walls, floors, roofs or ceilings;

f)   nesting or infestation, or discharge or release of waste products or secretions, by any animals; or

g)   insects, rodents, birds or domestic animals. **We** do cover the breakage of glass or safety glazing materials caused by birds.

If any of a) through g) cause the sudden and accidental escape of water or steam from a plumbing, heating or air conditioning system, a household appliance or an automatic fire protective sprinkler system within **your dwelling**, **we** cover the direct physical damage caused by the water or steam.

If loss to covered property is caused by water or steam not otherwise excluded, **we** will cover the cost of tearing out and replacing any part of **your dwelling** and additional structures necessary to repair the system or appliance. This does not include damage to the defective system or appliance from which the water or steam escaped.

6.   Freezing of:

a)   plumbing, automatic fire protective sprinkler systems, heating or air conditioning systems;

b)   household appliances; or

c)   swimming pools, hot tubs or spas located within a heated portion of the **dwelling**, or their filtration and circulation systems located within a heated portion of the **dwelling**;

or discharge, leakage or overflow from within a), b) or c) above, caused by freezing, while the **building structure** is vacant, unoccupied or being constructed, unless **you** have used reasonable care to maintain heat in the **building structure** at 55 degrees Fahrenheit or higher, where possible. If the **building structure** is not equipped with an automatic fire protective sprinkler system, **you** may elect to shut off the water supply and drain the water from the systems, appliances, swimming pools, hot tubs, spas and their filtration and circulation systems instead of maintaining heat at 55 degrees Fahrenheit or higher in the **building structure**.

7.   Freezing, thawing, pressure or weight of water, snow or ice, whether or not driven by wind. This exclusion applies to fences, pavements, patios, foundations (including slabs, basement walls, crawl spaces walls, and footings), retaining walls, bulkheads, piers, boat hoists, wharves and docks.

Exhibit A

This exclusion also applies to swimming pools, hot tubs, spas, and their covers, filtration and circulation systems, which are not located within a heated portion of the **dwelling**.

8.  Seepage, meaning continuous or repeated seepage or leakage over a period of weeks, months, or years, of water, steam, sewage or fuel:

    a)  from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance; or

    b)  from a plumbing system, including from within or around any plumbing fixtures, including, but not limited to, shower stalls, shower baths, tub installations, sinks or other fixtures designed for the use of water or steam.

    **We** also will not pay for losses arising from condensation or the presence of humidity, moisture, or vapor that occurs or develops over a period of time.

    Item 8 does not apply if the seepage or leakage of water, steam, sewage, or fuel is hidden from view within the walls, ceilings, or floors, and is unknown by all **insured persons**.

9.  Theft from **your residence premises** while **your dwelling** is under construction, or of materials and supplies for use in construction, until **your dwelling** is completed and occupied.

10. Theft from the **residence premises**:

    a)  if, for a period of more than 30 days prior to the theft, the **dwelling** has been **vacant** or no person has actually legally lived in the **dwelling**; or

    b)  if the date of the theft is not known and if for a period of more than 30 days prior to the date on which the theft is discovered the **dwelling** has been **vacant** or no person has actually legally lived in the **dwelling**;

11. Loss which is directly or indirectly caused by, arises out of, or results from **vandalism or malicious mischief** if the **dwelling** has been **vacant** for a period of more than 60 days prior to the **vandalism or malicious mischief**.

    If the date that the **vandalism or malicious mischief** occurred is not known, then the date of discovery of the damage will be the date of loss.

    **Vandalism or malicious mischief** does not include theft of property. Each time period can begin before this policy incepts.

12. Planning, Construction or Maintenance, meaning faulty, inadequate or defective:

    a)  planning, zoning, development, surveying, siting;

    b)  design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

    c)  materials used in repair, construction, renovation or remodeling, grading, or compacting; or

    d)  maintenance;

    of any property (including land, structures, or improvements of any kind) whether on or off the **residence premises** by any person or organization.

## COVERAGE C - PERSONAL PROPERTY

**Property We Cover Under Coverage C:**

1.  Personal property owned or used by an **insured person** anywhere in the world. When personal property is located away from the **residence premises**, coverage is limited to 10% of **Coverage C - Personal Property**.

    This limitation does not apply to personal property:

    a)  in a newly acquired principal residence for the first 30 days immediately after **you** begin to move property there; or

    b)  in use at a temporary residence when a direct physical loss **we** cover makes **your residence premises** uninhabitable.

2.  At **your** option, personal property owned by a guest or **residence employee** while the property is in a residence **you** are occupying.

**Special Limits on Certain Personal Property:**

Special limits of insurance apply to the following groups of personal property. If personal property can reasonably be considered a part of two or more of the groups listed below, the lowest limit will apply. These limitations do not increase the amount of insurance under **Coverage C - Personal Property**. The total amount of coverage for each group in any one loss is as follows:

| | | |
|---|---|---|
| 1. | $200 | Property used or intended for use in a **business** while the property is away from the **residence premises**. This does not include electronic data processing equipment or the recording or storage media used with that equipment. |
| 2. | $500 | Theft of any recording or storage media while such property is away from the **residence premises**, whether or not it is used with electronic data processing equipment or in a **business**. Recording or storage media includes, but is not limited to: |

    a) tapes;
    b) CDs, DVDs and other discs;
    c) records;
    d) disks;
    e) reels;
    f) cassettes;
    g) cartridges; or
    h) programs.

| | | |
|---|---|---|
| 3. | $1,000 | Property used or intended for use in a **business**, including property held as samples or for sale or delivery after sale, while the property is on the **residence premises**. This does not include electronic data processing equipment or the recording or storage media used with that equipment. |
| 4. | $1,000 | Trading cards, subject to a maximum amount of $250 per card. |
| 5. | $1,000 | Watercraft, including their attached or unattached trailers, furnishings, equipment, parts, and motors. |
| 6. | $1,000 | Trailers not used with watercraft. |
| 7. | $1,500 | Motorized land vehicle parts, equipment or accessories not attached to or located in or upon any motorized land vehicle. |
| 8. | $2,000 | Theft of firearms, their related equipment, and accessories. |
| 9. | $2,500 | Theft of goldware, pewterware and platinumware. |
| 10. | $5,000 | Theft of jewelry, watches, precious and semi-precious stones, gold other than goldware, silver other than silverware, pewter other than pewterware, platinum other than platinumware, and furs, including any item containing fur which represents its principal value, subject to a maximum amount of $1,000 per item. |
| 11. | $10,000 | Theft of tools and their accessories. |
| 12. | $10,000 | Motorized land vehicles used solely for the service of the **insured premises** and not licensed for use on use on public roads. This does not include motorized land vehicles designed for assisting the disabled and not licensed for use on public roads. |
| 13. | $1,000 | Medical marijuana prescribed for the legitimate use of an **insured person** following the orders of a licensed physician and any equipment, accessories or paraphernalia whether or not located at the **residence premises**. |

**Property We Do Not Cover Under Coverage C:**

1. Personal property specifically described and insured by this or any other insurance.
2. Animals or creatures. This includes, but is not limited to, mammals, birds, fish, reptiles, insects and spiders.
3. Motorized land vehicles, including, but not limited to, any land vehicle powered or assisted by a motor or engine. **We** do not cover any motorized land vehicle parts, equipment or accessories attached to or located in or upon any motorized land vehicle. **We** do cover motorized land vehicles designed for assisting the disabled, or used solely for the service of the **insured premises**, and not licensed for use on public roads.
4. Aircraft and aircraft parts. This does not include model or hobby craft not designed to carry people or cargo.
5. Property of roomers, boarders or tenants not related to **you**.
6. Property located away from the **residence premises** and rented or held for rental to others.
7. Satellite dish antennas and their systems.

Exhibit A

8. Money, bullion, bank notes, coins and other numismatic property, scrip, stored value cards, smart cards, electronic currency, digital currency, virtual currency, crypto-currency, and other similar mediums of exchange.

9. Accounts, bills, deeds, evidences of debt, letters of credit, notes other than bank notes, checks, cashier's checks, traveler's checks, passports, securities, tickets, and stamps, including philatelic property.

10. Manuscripts, including documents stored on electronic media.

11. Medical marijuana and any equipment, accessories or paraphernalia used at any time or in any manner for medical marijuana **business** purposes whether or not located at the **residence premises**.

**Losses We Cover Under Coverage C:**

**We** will cover sudden and accidental direct physical loss to the property described in **Coverage C - Personal Property** caused by the following, except as limited or excluded in this policy. However, loss does not include and **we** will not pay for, any **diminution in value**.

1. Fire or lightning.

2. **Windstorm** or hail.

   **We** do not cover:

   a) loss to covered property inside a **building structure**, caused by rain, snow, sleet, sand or dust unless the wind or hail first damages the roof or walls and the wind forces rain, snow, sleet, sand or dust through the damaged roof or wall;

   b) loss to watercraft and their trailers, furnishings, equipment and motors unless inside a fully enclosed **building structure**. However, **we** do cover canoes and rowboats on the **residence premises**.

3. Explosion.

4. Riot or civil commotion, including pillage and looting during, and at the site of, the riot or civil commotion.

5. Aircraft, including self-propelled missiles and spacecraft.

6. Vehicles.

7. Smoke.

8. **Vandalism or malicious mischief.**

9. Falling objects.

   **We** do not cover loss to personal property inside a **building structure** unless the falling object first damages the exterior walls or roof of the **building structure**.

10. Weight of ice, snow or sleet which causes damage to personal property in a **building structure**, but only if the **building structure** is damaged due to the weight of ice, snow or sleet.

11. Artificially generated electrical current to electronics, electrical appliances, fixtures and wiring.

12. Bulging, burning, cracking or rupture of a steam or hot water heating system, an air conditioning system, an automatic fire protective sprinkler system or an appliance for heating water.

13. Water, sewage or steam that escapes from a plumbing, heating or air conditioning system, an automatic fire protective sprinkler system, or from a household appliance due to accidental discharge or overflow.

   **We** do not cover loss:

   a) to the system or appliance from which the water, sewage or steam escapes;

   b) caused by or resulting from water or any other substance from outside the **residence premises** plumbing system that enters the dwelling or additional structure through household sewers, drains or drainage fixtures or a sump pump, sump pump well or any other system designed for the removal of subsurface water which is drained from a foundation area of a structure;

   c) caused by or resulting from pressure from or presence of tree, shrub, or plant roots; or

   d) caused by or resulting from water or any other substance originating from inside the dwelling or additional structure which escapes the plumbing system through a floor drain inside the dwelling or additional structure.

14. Freezing of a plumbing, heating or air conditioning system, an automatic fire protective sprinkler system or a household appliance.

   **We** do not cover loss at the **residence premises** under items 12, 13, and 14, immediately above, which is caused by freezing while the **building structure** is vacant, unoccupied or under construction, or when freezing results from a lack of utility services at the **residence premises** to which item A.7 in **Losses We Do Not Cover Under Coverage C** applies, unless **you** have used reasonable care to maintain heat at 55 degrees Fahrenheit or higher, where reasonably possible, in the **building structure**. If the **building structure**

is not equipped with an automatic fire protective sprinkler system, **you** may elect to shut off the water supply and drain the water from the systems and appliances instead of maintaining heat in the **building structure**.

15. Theft, or attempted theft, including disappearance of property from a known place when it is likely that a theft has occurred. Any theft must be promptly reported to the police.

**We** do not cover theft:

a) or attempted theft committed by an **insured person** or at the direction of an **insured person**;

b) in or from the **residence premises** while under construction or of materials and supplies for use in construction, until the **dwelling** is completed and occupied;

c) from the **residence premises**:

  1) if, for a period of more than 30 days prior to the theft, the **dwelling** has been **vacant** or no person has actually legally lived in the **dwelling**; or

  2) if the date of the theft is not known and if for a period of more than 30 days prior to the date on which the theft is discovered the **dwelling** has been **vacant** or no person has actually legally lived in the **dwelling**;

d) of any property while at any other residence owned, rented to or occupied by an **insured person** unless the **insured person** is temporarily residing there;

e) of trailers, campers, watercraft, including furnishings, equipment and outboard motors, away from the **residence premises**; or

f) from that part of the **residence premises** rented by **you** to other than an **insured person**.

16. Breakage of glass, meaning damage to covered personal property caused by breakage of glass constituting a part of any **building structure** on the **residence premises**. This does not include damage to the glass.

**Losses We Do Not Cover Under Coverage C:**

A. Under **Coverage C - Personal Property** of this policy, **we** do not cover any loss which consists of, is caused by, or would not have occurred but for, one or more of the following excluded events, perils or conditions. Such loss is excluded regardless of: a) the cause or source of the excluded event, peril or condition; b) any other causes contributing concurrently or in any sequence with the excluded event, peril or condition to produce the loss; c) whether the excluded event, peril or condition is caused by acts of commission or omission; or d) whether the excluded event, peril or condition occurs abruptly or gradually, involves isolated or widespread damage, occurs on or off the **residence premises** arises from natural, man-made or other forces, or arises as a result of any combination of these forces.

1. Water damage, meaning:

a) flood, including, but not limited to, surface water, waves, storm surge, tsunami, tidal water or overflow of any body of water from any source, or spray from any of these, whether or not driven by wind.

b) water or any other substance from outside the **residence premises** plumbing system that enters the **dwelling** or additional structure through household sewers, drains or drainage fixtures or a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area.

c) water or any other substance originating from inside the **dwelling** or additional structure which escapes the plumbing system through a floor drain inside the **dwelling** or additional structure.

d) water or any other substance originating from any source on or below the surface of the ground. This includes water which exerts pressure on or flows, seeps or leaks through any part of a **building structure**, sidewalk, driveway, foundation or swimming pool or other structure.

**We** do cover sudden and accidental direct physical loss caused by fire or explosion resulting from items a) through d) listed above.

2. Earth movement of any type, including, but not limited to, earthquake, volcanic eruption, lava flow, lahar, landslide, sinkhole or subsidence, mudflow, pressure, sinkhole, erosion, or the sinking, rising, shifting, creeping, expanding, bulging, cracking, settling or contracting of the earth. This exclusion applies whether or not the earth movement is combined with water, sewage, or any material carried by, or otherwise moved by the earth.

**We** do cover sudden and accidental direct physical loss caused by fire or explosion resulting from earth movement.

3. Actions taken by civil, governmental or military authorities:

a) to enforce any building codes, ordinances or laws regulating or requiring the construction, reconstruction, maintenance, replacement, repair, placement or demolition of any **building structure**, additional structure or land at the **residence premises**; or

b) requesting, demanding or ordering that an **insured person** test for, monitor, clean up, remove, contain, treat, detoxify, decontaminate, or neutralize, or in any way respond to or assess the effects of, any loss or potential loss at the **residence premises**.

Exhibit A

However, **we** will cover sudden and accidental direct physical loss caused by actions of civil, governmental or military authority to prevent the spread of fire.

4. Nuclear hazard, meaning any nuclear reaction, discharge, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these. Loss which consists of, is caused by, or would not have occurred but for, the nuclear hazard is not considered loss by fire, explosion or smoke.

5. a) War, whether declared or undeclared;
   b) warlike acts;
   c) invasion;
   d) insurrection;
   e) rebellion;
   f) revolution;
   g) civil war;
   h) usurped power;
   i) destruction or use for a military purpose; or
   j) action taken by civil, governmental or military authority to hinder or defend against an actual or impending enemy act.

6. Vapors, fumes, smoke, smog, soot, alkalis, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials, or other irritants, contaminants or pollutants.

   However, **we** will not apply this exclusion to sudden and accidental direct physical loss which consists of, is caused by, or would not have occurred but for:

   a) a fire or an explosion at **your residence premises.**
   b) smoke or soot resulting from food preparation at **your residence premises**;
   c) the malfunction of a heating or air conditioning system or a household appliance at **your residence premises**;
   d) smoke, soot or fumes originating away from **your residence premises**, provided the smoke, soot or fumes:
      1) were not from industrial, governmental or military operations, agricultural smudging, or the manufacturing of any controlled substance; and
      2) did not result from nuclear hazard, meaning nuclear reaction, discharge, radiation or radioactive contamination, or any consequence of any of these;
   e) spray, overspray, spatter, or spillage, by a person located on the ground at the **residence premises** or in or upon a structure **we** cover at the **residence premises**, of lawfully possessed, commercially available supplies manufactured or produced for use in food preparation, personal hygiene, or for cleaning or maintaining a residential property or personal property;
   f) spillage or release at **your residence premises** of gas or oil, in any form, used to prepare foods at **your residence premises**, or to heat the **dwelling** or additional **building structures** at **your residence premises**, when such spillage or release results in a fire or an explosion at **your residence premises**;
   g) fuel, oil or other fluids necessary to operate a motorized land vehicle if, at the time of the loss, such fuel, oil or other fluids are being used solely for the purpose of operating a motorized land vehicle and the loss results from a collision, at the **residence premises**, of the motorized land vehicle with property **we** cover under **Coverage A - Dwelling** or **Coverage B - Additional Structures**; or
   h) 1) irritants;
      2) contaminants; or
      3) pollutants;

   produced, discharged, dispersed, released or that have escaped as part of an otherwise covered loss occurring at the **residence premises** which consists of, is caused by, or would not have occurred but for one or more perils listed under **Losses We Cover Under Coverage C.**

7. Lack of utility services at the **residence premises**, meaning loss or interruption of, lack or loss of access to, or unavailability of, one or more utility services for the **residence premises**, including, but not limited to, electric, natural gas or other fuels, water, sanitation, sewer, cable or communication services, unless the lack of utility services results solely from a sudden and accidental direct physical loss to property located at the **residence premises** caused by an event, peril or condition not excluded by this policy.

   When the lack of utility services results in freezing of:

   a) plumbing, automatic fire protective sprinkler system, heating or air conditioning systems; or
   b) household appliances;

or when the lack of utility services results in discharge, leakage or overflow from within a) or b) above caused by freezing, **we** do cover sudden and accidental direct physical loss caused by the freezing if **you** used reasonable care to maintain heat in the **building structure**. If the **building structure** is not equipped with an automatic fire protective sprinkler system, **you** may elect to shut off the water supply and drain the water from the systems and appliances instead of maintaining heat in the **building structure**.

8.  Inability of an **insured person** to use, access or retain personal property **we** cover under **Coverage C - Personal Property** due to an actual, impending or expected lack, impassability or unavailability of any reasonable means of ingress to or egress from the **residence premises** or any other location where the property is located, including, but not limited to, roads, highways, causeways, sidewalks, paths, rails, bridges, tunnels or waterways.

    For purposes of this exclusion, a particular means of ingress or egress will be considered impassable or unavailable if:

    a)  it cannot be safely traveled due to physical damage or destruction of that means of ingress or egress; or

    b)  it cannot be traveled due to actions by others, including, but not limited to, civil, governmental or military authorities which prohibit or restrict travel using that means of ingress or egress.

9.  Weather Conditions that contribute in any way with an event, peril or condition excluded under **Losses We Do Not Cover Under Coverage C** to produce a loss.

B.  Under **Coverage C - Personal Property** of this policy, **we** do not cover any loss consisting of or caused by mold, fungus, wet rot, dry rot or bacteria. This includes any loss which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

    This exclusion applies regardless of whether mold, fungus, wet rot, dry rot or bacteria arises from any other cause of loss, including, but not limited to, a loss involving water, water damage or discharge, which may otherwise be covered by this policy, except as specifically provided in **Part I - Conditions - Mold, Fungus, Wet Rot And Dry Rot Remediation As A Direct Result Of A Covered Water Loss**.

    However, if mold, fungus, wet rot, dry rot or bacteria ensues from a covered fire or lightning loss, this exclusion does not apply.

C.  When loss is not excluded under paragraph A. or paragraph B. of **Losses We Do Not Cover Under Coverage C**, and there are two or more causes of loss to the covered property, **we** do not cover the loss if the predominant cause(s) of loss is (are) excluded under paragraph D., immediately below.

D.  Under **Coverage C - Personal Property** of this policy, **we** do not cover any loss consisting of or caused by one or more of the following excluded events, perils or conditions. Such loss is excluded regardless of whether the excluded event, peril or condition involves isolated or widespread damage, arises from natural, man-made or other forces, or arises as a result of any combination of these forces.

    1.  The failure by any **insured person** to take all reasonable steps to save and preserve property when the property is endangered by a cause of loss **we** cover.

    2.  Any substantial change or increase in hazard, if changed or increased by any means within the control or knowledge of an **insured person**.

    3.  Intentional or criminal acts of or at the direction of any **insured person**, if the loss that occurs:

        a)  may be reasonably expected to result from such acts; or

        b)  is the intended result of such acts.

        This exclusion applies regardless of whether the **insured person** is actually charged with, or convicted of, a crime.

        **We** will not deny payment to an **insured person** for a claim based on property loss or damage resulting from an act, or pattern, of abuse or domestic abuse if that insured did not cooperate in or contribute to the creation of the loss or damage and if the person who committed the act or act that caused the loss or damage is criminally prosecuted for the act or acts.

        Payment to the innocent insured may be limited in accordance with his or her ownership interest in the property or reduced by payments to a mortgagee or other holder of a secured interest.

    4.  Loss which is directly or indirectly caused by, arises out of, or results from **vandalism or malicious mischief** if the **dwelling** has been **vacant** for a period of more than 60 days prior to the **vandalism or malicious mischief**.

        If the date that the **vandalism or malicious mischief** occurred is not known, then the date of discovery of the damage will be the date of loss.

        **Vandalism or malicious mischief** does not include theft of property. Each time period can begin before this policy incepts.

    5.  Planning, Construction or Maintenance, meaning faulty, inadequate or defective:

        a)  planning, zoning, development, surveying, siting;

        b)  design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

        c)  materials used in repair, construction, renovation or remodeling, grading or compacting; or

        d)  maintenance;

Exhibit A

of any property (including land, structures, or improvements of any kind) whether on or off the **residence premises** by any person or organization.

# Part I — Additional Insurance Coverages

**1.   Additional Living Expense**

**We** will pay the reasonable increase in living expenses necessary to maintain **your** normal standard of living when a direct physical loss **we** cover under **Coverage A – Dwelling**, **Coverage B – Additional Structures** or **Coverage C – Personal Property** makes **your residence premises** uninhabitable. However, additional living expense due to remediation of mold, fungus, wet rot or dry rot will not be paid in addition to any amounts paid or payable under **Part I Conditions – Mold, Fungus, Wet Rot And Dry Rot Remediation As A Direct Result Of A Covered Water Loss**.

Payment for additional living expense as a result of a covered loss under **Coverage A – Dwelling**, **Coverage B – Additional Structures** or **Coverage C – Personal Property** will be limited to the least of the following:

a)   the time period required to repair or replace the property **we** cover, using due diligence and dispatch;

b)   if **you** permanently relocate, the shortest time for **your** household to settle elsewhere; or

c)   24 months.

These periods of time are not limited by the expiration of this policy.

In no event shall **our** payment for additional living expenses exceed the Limit Of Liability shown on **your** Declaration Certificate for Additional Living Expense.

**We** do not cover any lost income or expense due to the cancellation of a lease or agreement.

No deductible applies to this coverage.

**2.   Civil, Governmental And Military Authorities**

**We** will pay the reasonable and necessary increase in living expenses for up to two weeks should civil, governmental or military authorities prohibit the use of the **residence premises** due to a loss at a neighboring premises caused by an event, peril or condition **we** insure against under **Coverage A – Dwelling**, **Coverage B – Additional Structures** or **Coverage C – Personal Property**. However, payments for increase in living expenses due to remediation of mold, fungus, wet rot or dry rot will not be paid in addition to any amounts paid or payable under **Part I - Conditions - Mold, Fungus, Wet Rot And Dry Rot Remediation As A Direct Result Of A Covered Water Loss**.

The two-week period of time referenced above is not limited by the expiration of this policy.

No deductible applies to this coverage.

**3.   Debris Removal**

**We** will pay reasonable expenses **you** incur to remove debris of covered property damaged by a loss **we** cover. If the loss to the covered property and the cost of debris removal are more than the Limit Of Liability shown on the Declaration Certificate for the covered property, **we** will pay up to an additional 5% of that limit for debris removal.

**4.   Emergency Removal Of Property**

**We** will pay for sudden and accidental direct physical loss to covered property from any cause while removed from a premises because of danger from a loss **we** cover. Coverage is limited to a 30-day period from date of removal. This coverage does not increase the limit of liability that applies to the covered property.

**5.   Fire Department Charges**

**We** will pay up to $500 for service charges made by fire departments called to protect **your** property from a loss **we** cover at the **residence premises**.

No deductible applies to this coverage.

**6.   Temporary Repairs After A Loss**

**We** will reimburse **you** up to $5,000 for the reasonable and necessary cost **you** incur for temporary repairs to protect covered property from further imminent covered loss following a loss **we** cover. This coverage does not increase the limit of liability applying to the property being repaired.

Exhibit A

**7.    Trees, Shrubs, Plants And Lawns**

**We** will pay up to 5% of the Limit Of Liability shown on the Declaration Certificate under **Coverage A - Dwelling** for loss to trees, shrubs, plants and lawns at the address of the **residence premises**. **We** will not pay more than $500 for any one tree, shrub, or plant, including expenses incurred for removing debris. This coverage applies only to sudden and accidental direct physical loss caused by fire or lightning, explosion, riot or civil commotion, aircraft, vehicles not owned by an occupant of the **residence premises**, **vandalism or malicious mischief**, theft, or collapse of a **building structure** or any part of a **building structure**.

**We** will pay up to $500 for reasonable expenses **you** incur for the removal of debris of trees at the address of the **residence premises** for sudden and accidental direct physical loss caused by **windstorm**, hail, or weight of ice, snow or sleet.

The fallen tree must:

a)    have caused damage to property covered under **Coverage A - Dwelling** or **Coverage B - Additional Structures**;

b)    block an entrance to the **dwelling** in such a way that a car or truck cannot enter or leave the **residence premises**; or

c)    block a ramp or device designed to assist handicapped people in such a way that a handicapped person cannot enter or leave **your** dwelling.

**We** do not cover trees, shrubs, plants, or lawns grown for **business** purposes.

This coverage does not increase the **Coverage A - Dwelling** limit of liability.

**8.    Arson Reward**

**We** will pay up to $5,000 for information leading to an arson conviction in connection with a fire loss to property covered under **Part I** of this policy. The $5,000 limit applies regardless of the number of persons providing information.

**9.    Collapse**

**We** will cover at the **residence premises**:

a)    the entire collapse of a covered **building structure**;

b)    the entire collapse of part of a covered **building structure**; and

c)    direct physical loss to covered property caused by a) or b) above.

For coverage to apply, the collapse of a **building structure** specified in a) or b) above must be a sudden and accidental direct physical loss caused by one or more of the following:

a)    a loss **we** cover under **Part I, Coverage C - Personal Property**;

b)    hidden decay of the **building structure**;

c)    hidden damage to the **building structure** caused by insects or vermin;

d)    weight of persons, animals, equipment or contents;

e)    weight of rain, snow or ice which collects on a roof;

f)    defective methods or materials used in construction, repair, remodeling or renovation, but only if the collapse occurs in the course of such construction, repair, remodeling or renovation.

Collapse, as referenced herein, means the covered **building structure** or part of the covered **building structure** has actually fallen down or separated into pieces unexpectedly and instantaneously such that the building structure cannot be occupied for its intended purpose. It does not include settling, cracking, shrinking, bulging, expansion, sagging, or bowing. Furthermore, collapse does not include or mean substantial structural impairment or imminent collapse. Sudden, as used herein, means not only unexpected, but also instantaneous.

Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, fuel oil tank, septic tank, cistern or similar system, foundation, retaining wall, bulkhead, pier, wharf or dock is not included, unless the loss is a direct result of the collapse of a **building structure** or part of a **building structure** that is a sudden and accidental direct physical loss caused by one or more of the following:

a)    a loss **we** cover under **Part I, Coverage C - Personal Property**;

b)    hidden decay of the **building structure**;

c)    hidden damage to the **building structure** caused by insects or vermin;

d)    weight of persons, animals, equipment or contents;

e)    weight of rain, snow or ice which collects on a roof; or

f)    defective methods or materials used in construction, repair, remodeling or renovation, but only if the collapse occurs in the course of such construction, repair, remodeling or renovation.

This coverage does not increase the limit of liability applying to the covered property.

Exhibit A

10. **Land**

If a sudden and accidental direct physical loss results in both a covered loss to the **dwelling**, other than the breakage of glass or safety glazing material, and a loss of land stability, **we** will pay up to $10,000 as an additional amount of insurance for repair costs associated with the land. This includes the costs required to replace, rebuild, stabilize or otherwise restore the land necessary to support that part of the **dwelling** sustaining the covered loss.

The **Part I - Losses We Do Not Cover Under Coverages A And B** reference to earth movement does not apply to the loss of land stability provided under this additional insurance.

11. **Lock Replacement**

When a key to a lock is stolen as part of a covered theft loss, **we** will pay, under **Coverage A - Dwelling** or **Coverage B - Additional Structures**, as applicable, up to $500 for each loss for the reasonable expenses **you** incur to replace, program, reprogram or re-key exterior door locks at the **residence premises** with locks or cylinders of like kind and quality. This coverage includes remote devices designed solely for locking, unlocking, opening, or closing doors, including garage doors and gates.

This coverage does not increase the limit of liability that applies to the covered property.

# Part I — Conditions

1. **Deductibles.**

   a) All Other Perils

   **We** will pay when a covered loss exceeds the applicable deductible shown on the Declaration Certificate. **We** will then pay only the excess amount, unless **we** have indicated otherwise in this policy.

   b) Windstorm And Hail

   The **windstorm** and hail deductible applies in the event of covered loss caused by **windstorm** or hail.

   The **windstorm** and hail deductible amount will appear on **your** Declaration Certificate. **We** will pay only when a covered loss to which this deductible applies exceeds the **windstorm** and hail deductible amount. **We** will then pay only the excess amount.

   If another deductible applicable to the loss exceeds the **windstorm** and hail deductible, the greater deductible will be applied to the loss.

   c) Tropical Cyclone

   The tropical cyclone deductible applies in the event of covered loss caused by **tropical cyclone** or by any object(s) driven by **tropical cyclone**.

   The tropical cyclone deductible amount will appear on **your** Declaration Certificate. **We** will pay only when a covered loss to which this deductible applies exceeds the tropical cyclone deductible amount. **We** will then pay only the excess amount.

   If another deductible applicable to the loss exceeds the tropical cyclone deductible, the greater deductible will be applied to the loss.

   Deductibles will be applied per occurrence.

2. **Insurable Interest And Our Liability.**

   In the event of a covered loss, **we** will not pay for more than an **insured person's** insurable interest in the property covered, nor more than the amount of coverage afforded by this policy.

3. **What You Must Do After A Loss.**

   In the event of a loss to any property that may be covered by this policy, **you** must cooperate with **us** in the investigation of the claim and also see that the following duties are performed:

   a) immediately give **us** or **our** agent notice. Report any theft to the police as soon as possible. If loss is caused by or results from the peril of hail, loss must be reported to **us** within 12 months of the loss.

   b) protect the property from further loss. Make any reasonable repairs necessary to protect it. Keep an accurate record of any repair expenses.

   c) separate damaged from undamaged personal property. Give **us** a detailed inventory of the damaged, destroyed or stolen property, showing the quantity, description, age, replacement cost, **actual cash value** and the amount of loss claimed.

   d) give **us** all accounting records, bills, invoices and other vouchers, or certified copies, which **we** may reasonably request to examine and permit **us** to make copies.

   e) produce receipts for any increased costs to maintain **your** standard of living while **you** reside elsewhere, and records supporting any claim for loss of rental income.

   f)    as often as **we** reasonably require:

       1)   show **us** the damaged property. **We** have a right to reasonable and safe opportunities to view and inspect the loss as often as necessary, unimpeded by actions of **you** or others, including, but not limited to, civil, governmental or military authorities, that prevent **us** from viewing and inspecting the loss. **We** may require **you** to accompany **us** when **we** conduct these activities.

       2)   at **our** request, submit to examinations under oath, separately and apart from any other person defined as **you** or **insured person** and sign a transcript of the same.

       3)   produce representatives, employees, members of the **insured person's** household or others to the extent it is within the **insured person's** power to do so; and

   g)   within 60 days after the loss, give **us your** signed, sworn proof of the loss. This statement must include the following information:

       1)   the date, time, location and cause of loss;

       2)   the interest **insured persons** and others have in the property, including any encumbrances on the property;

       3)   the value and amount of loss for each item damaged, destroyed or stolen;

       4)   any other insurance that may cover the loss;

       5)   any changes in title, use, occupancy or possession of the property that have occurred during the policy term; and

       6)   at **our** request, the specifications of any damaged **building structure** or additional structure.

**We** have no duty to provide coverage under this part if **you**, an **insured person**, or a representative of either fail to comply with items a) through g) above, and this failure to comply is prejudicial to **us**.

**4.**  **Our Settlement Options.**

In the event of a covered loss, **we** have the option to:

   a)   repair, rebuild or replace all or any part of the damaged, destroyed or stolen property with property of like kind and quality within a reasonable time; or

   b)   pay for all or any part of the damaged, destroyed or stolen property as described in Condition 5. How We Pay For A Loss.

Within 30 days after **we** receive **your** signed, sworn proof of loss, **we** will notify **you** of the option or options **we** intend to exercise.

**5.**  **How We Pay For A Loss.**

Under **Coverage A - Dwelling**, **Coverage B - Additional Structures** and **Coverage C - Personal Property**, payment for covered loss will be by one or more of the following methods. However, the valuation of any covered property losses does not include, as **we** will not pay, any amount for **diminution in value**.

   a)   Special Payment. At **our** option, **we** may make payment for a covered loss before **you** repair, rebuild or replace the damaged, destroyed or stolen property if:

       1)   the whole amount of loss for property covered under **Coverage A - Dwelling** and **Coverage B - Additional Structures**, without deduction for depreciation, is less than $2,500 and if the property is not excluded from the Building Structure Reimbursement provision; or

       2)   the whole amount of loss for property covered under **Coverage C - Personal Property**, without deduction for depreciation, is less than $2,500, and the property is not excluded from the Personal Property Reimbursement provision.

   b)   Actual Cash Value. If **you** do not repair or replace the damaged, destroyed or stolen property, payment will be on an **actual cash value** basis. Payment will not exceed the Limit Of Liability shown on the Declaration Certificate for the coverage that applies to the damaged, destroyed or stolen property, regardless of the number of items involved in the loss.

       **You** may make claim for additional payment as described in paragraph c) and paragraph d) below, if applicable, if **you** repair or replace the damaged, destroyed or stolen covered property within 180 days of the **actual cash value** payment.

   c)   Building Structure Reimbursement. Under **Coverage A - Dwelling** and **Coverage B - Additional Structures**, **we** will make additional payment to reimburse **you** for cost in excess of **actual cash value** if **you** repair, rebuild or replace damaged, destroyed or stolen covered property within 180 days of the **actual cash value** payment. This additional payment includes the reasonable and necessary expense for treatment or removal and disposal of contaminants or pollutants as required to complete repair or replacement of that part of a **building structure** damaged by a covered loss. This additional payment shall not include any amounts which may be paid or payable under **Part I - Conditions - Mold, Fungus, Wet Rot And Dry Rot Remediation As A Direct Result Of A Covered Water Loss**, and shall not be payable for any losses excluded in **Part I - Property Insurance Coverages**, under **Losses We Do Not Cover Under Coverages A And B**, paragraph B.

Building Structure Reimbursement will not exceed the smallest of the following amounts:

Exhibit A

1) the replacement cost of the part(s) of the **building structure(s)** for equivalent construction for similar use on the same **residence premises**;

2) the amount actually and necessarily spent to repair or replace the damaged **building structure(s)** with equivalent construction for similar use on the same **residence premises**; or

3) the Limit Of Liability applicable to the **building structure(s)** as shown on the Declaration Certificate for **Coverage A - Dwelling** or **Coverage B - Additional Structures**, regardless of the number of **building structures** and structures other than **building structures** involved in the loss.

If **you** replace the damaged **building structure(s)** at an address other than shown on the Declaration Certificate through construction of a new structure or purchase of an existing structure, such replacement will not increase the amount payable under Building Structure Reimbursement described above. The amount payable under Building Structure Reimbursement described above does not include the value of any land associated with the replacement structure(s).

Building Structure Reimbursement payment will be limited to the difference between any **actual cash value** payment made for the covered loss to **building structures** and the smallest of 1), 2) or 3) above.

Building Structure Reimbursement will not apply to:

1) property covered under **Coverage C - Personal Property**;

2) property covered under **Coverage B - Additional Structures** that is not a **building structure**;

3) fences, awnings and outdoor antennas, whether or not fastened to a **building structure**;

4) **roof material(s)** when the loss is caused by **windstorm** or hail; or

5) land.

Payment under a), b) or c) above will not include any increased cost due to the enforcement of building codes, ordinances or laws regulating or requiring the construction, reconstruction, maintenance, replacement, repair, relocation or demolition of **building structures** or additional structures.

In addition, **we** will not be liable under a), b) or c) above for costs resulting from mismatch of existing undamaged roof and/or siding materials and new materials used to repair or replace damaged roof and/or siding because of:

1) color differences due to fading, oxidation, rust, corrosion or weathering; or

2) obsolescence, unavailability or discontinuation of existing materials.

d) Personal Property Reimbursement. Under **Coverage C - Personal Property**, **we** will make additional payment to reimburse **you** for cost in excess of **actual cash value** if **you** repair, rebuild or replace damaged, destroyed or stolen covered personal property within 180 days of the **actual cash value** payment.

Personal Property Reimbursement payment will not exceed the smallest of the following amounts:

1) the amount actually and necessarily spent to repair or replace the property with similar property of like kind and quality;

2) the cost of repair or restoration; or

3) the Limit Of Liability shown on the Declaration Certificate for **Coverage C - Personal Property**, or any special limit of liability described in the policy, regardless of the number of items of personal property involved in the loss.

Personal Property Reimbursement will be limited to the difference between any **actual cash value** payment made for the covered loss to personal property and the smallest of 1), 2) or 3) above.

Personal Property Reimbursement will not apply to:

1) property insured under **Coverage A - Dwelling** and **Coverage B - Additional Structures**;

2) antiques, fine arts, paintings, statuary and similar articles which, by their inherent nature, cannot be replaced;

3) articles whose age or history contribute substantially to their value. This includes, but is not limited to, memorabilia, souvenirs and collector's items;

4) property that was obsolete or unusable for the originally intended purpose because of age or condition prior to the loss; or

5) motorized land vehicles used solely for the service of the **insured premises** and not licensed for use on public roads. This does not include motorized land vehicles designed for assisting the disabled and not licensed for use on public roads.

6. **Our Settlement Of Loss.**

**We** will settle any covered loss with **you** unless some other person or entity is named in the policy or is legally entitled to receive payment. **We** will settle within 60 days after the amount of loss is finally determined. This amount may be determined by an agreement between **you** and **us**, an appraisal award or a court judgment.

Exhibit A

**7.   Appraisal.**

If **you** and **we** fail to agree on the amount of loss, either party may make written demand for an appraisal. Upon such demand, each party must select a competent and impartial appraiser and notify the other of the appraiser's identity within 20 days after the demand is received. The appraisers will select a competent and impartial umpire. If the appraisers are unable to agree upon an umpire within 15 days, **you** or **we** can ask a judge of a court of record in the state where the **residence premises** is located to select an umpire.

The appraisers shall then determine the amount of loss, stating separately the **actual cash value** and the amount of loss to each item. If the appraisers submit a written report of an agreement to **you** and to **us**, the amount agreed upon shall be the amount of loss. If they cannot agree, they will submit their differences to the umpire. A written award agreed upon by any two will determine the amount of loss.

Each party will pay the appraiser it chooses, and equally bear expenses for the umpire and all other appraisal expenses.

**8.   Abandoned Property.**

**We** are not obligated to accept any property or responsibility for any property abandoned by an **insured person**.

**9.   Our Rights To Recover Payment.**

When **we** pay for any loss, an **insured person's** right to recover from anyone else becomes **ours** up to the amount **we** have paid. An **insured person** must protect these rights and help **us** enforce them. **You** may waive **your** rights to recover against another person for loss involving the property covered by this policy. This waiver must be in writing prior to the date of loss.

**10.   Our Rights To Obtain Salvage.**

**We** have the option to take all or any part of the damaged or destroyed covered property upon replacement by **us** or payment of the agreed or appraised value.

**We** will notify **you** of **our** intent to exercise this option within 30 days after **we** receive **your** signed, sworn proof of loss. If no signed, sworn proof of loss is requested by **us**, **we** will notify **you** of **our** intent to exercise this option within 60 days after the date **you** report the loss to **us**.

When **we** settle any loss caused by theft or disappearance, **we** have the right to obtain all or part of any property which may be recovered. An **insured person** must protect this right and inform **us** of any property recovered. **We** will inform **you** of **our** intent to exercise this right within 10 days of **your** notice of recovery to **us**.

**11.   Suit Against Us.**

No one may bring an action against **us** in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under a coverage to which **Part I - Conditions** applies, unless:

a)   there has been full compliance with all policy terms; and

b)   any action by any party is commenced within two years after the inception of loss or damage.

**12.   Loss To A Pair Or Set.**

If there is a covered loss to a pair or set, **we** may choose to:

a)   repair or replace any part of the pair or set to restore it to its **actual cash value** before the loss; or

b)   pay the difference between the **actual cash value** of the pair or set before and after the loss.

**13.   Glass Replacement.**

Payment for loss to covered glass includes the cost of using safety glazing materials when required by law.

**14.   No Benefit To Bailee.**

This insurance will not benefit any person or organization that may be caring for or handling **your** property for a fee.

**15.   Other Insurance.**

If both this insurance and other insurance apply to a loss, **we** will pay the proportionate amount that this insurance bears to the total amount of all applicable insurance. However, in the event of a loss by theft, this insurance shall be excess over any other insurance that covers loss by theft.

**16.   Property Insurance Adjustment.**

At each policy renewal, **we** may increase the Limit Of Liability shown on the Declaration Certificate for **Coverage A - Dwelling** to reflect the minimum amount of insurance coverage **we** are willing to issue for the succeeding policy term under **Coverage A - Dwelling** for **your dwelling** and other property **we** cover under **Coverage A - Dwelling**.

Exhibit A

Any adjustment in the limit of liability for **Coverage A – Dwelling** may result in an adjustment in the limit of liability for **Coverage B – Additional Structures, Coverage C – Personal Property** and **Additional Living Expense** in accordance with **our** Rule Manual.

Any adjustment in premium resulting from the application of this condition will be made based on premium rates in use by **us** at the time a change in limits is made.

**We** will not reduce the Limit Of Liability shown on the Declaration Certificate without **your** consent. **You** agree that it is **your** responsibility to ensure that each of the Limits of Liability shown on the Declaration Certificate are appropriate for **your** insurance needs. If **you** want to increase or decrease any of the Limits of Liability shown on the Declaration Certificate, **you** must contact **us** to request such a change.

17. **Mortgagee.**

A covered loss will be payable to the mortgagee(s) named on the Declaration Certificate, to the extent of their interest and in the order of precedence. All provisions of **Part I** of this policy apply to these mortgagees.

**We** will:

a) protect the mortgagee's interest in a covered **building structure** in the event of an increase in hazard, intentional or criminal acts of, or directed by, an **insured person**, failure by any **insured person** to take all reasonable steps to save and preserve property after a loss, a change in ownership, or foreclosure if the mortgagee has no knowledge of these conditions; and

b) give the mortgagee at least 10 days' notice if **we** cancel this policy.

The mortgagee will:

a) furnish proof of loss within 60 days after notice of the loss if an **insured person** fails to do so;

b) pay upon demand any premium due if an **insured person** fails to do so;

c) notify **us** in writing of any change of ownership or occupancy or any increase in hazard of which the mortgagee has knowledge;

d) give **us** the mortgagee's right of recovery against any party liable for loss; and

e) after a loss, and at **our** option, permit **us** to satisfy the mortgage requirements and receive full transfer of the mortgage.

This mortgage interest provision shall apply to any trustee or loss payee or other secured party.

18. **Mold, Fungus, Wet Rot And Dry Rot Remediation As A Direct Result Of A Covered Water Loss.**

In the event of a covered water loss under **Coverage A – Dwelling, Coverage B – Additional Structures** or **Coverage C – Personal Property, we** will pay up to $10,000 for mold, fungus, wet rot or dry rot **remediation.** However, if a limit is shown on the Declaration Certificate for **Optional Protection For Mold, we** will pay up to the applicable limit of liability shown on the Declaration Certificate for **Optional Protection For Mold** for mold, fungus, wet rot or dry rot **remediation.**

If a premium is shown on the Declaration Certificate for **Optional Protection For Mold:**

a) the Remediation limit shown on the Declaration Certificate for **Optional Protection For Mold** is the maximum **we** will pay for all mold, fungus, wet rot or dry rot **remediation** resulting from any one covered water loss; and

b) the Aggregate Remediation limit shown on the Declaration Certificate for **Optional Protection For Mold** is the maximum **we** will pay for all mold, fungus, wet rot or dry rot **remediation** resulting from all covered water losses during the premium period, regardless of the number of locations insured under the policy or number of claims made. This Aggregate Remediation limit is subject to the Remediation limit.

**Remediation** means:

a) any investigation or testing to detect, measure or evaluate mold, fungus, wet rot or dry rot;

b) payment for any reasonable increase in living expenses necessary to maintain **your** normal standard of living if mold, fungus, wet rot or dry rot makes **your residence premises** uninhabitable; and

c) the reasonable and necessary treatment, removal or disposal of mold, fungus, wet rot or dry rot as required to complete repair or replacement of property **we** cover under **Coverage A – Dwelling, Coverage B – Additional Structures,** or **Coverage C – Personal Property** damaged by a covered loss.

**Remediation** does not include any activities or amounts other than those described in a), b) or c) above.

This condition does not increase the limits of liability under **Coverage A – Dwelling, Coverage B – Additional Structures** or **Coverage C – Personal Property.**

This condition does not apply to mold, fungus, wet rot, dry rot or bacteria that ensues from a covered fire or lightning loss.

Exhibit A

19. **Assignment of Claim.**

Assignment to another party of any of **your** rights or duties under this policy regarding any claim, or any part of any claim, will be void and **we** will not recognize any such assignment, unless **we** give **our** written consent. However, once **you** have complied with all policy provisions, **you** may assign to another party, in writing, payment of claim proceeds otherwise payable to **you**.

# Part II — Liability Insurance Coverages

## COVERAGE E – PERSONAL LIABILITY

### Losses We Cover Under Coverage E:

Subject to the terms, conditions and limitations of this policy, **we** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies, and is covered by this part of the policy.

**We** may investigate or settle any claim or suit for covered damages against an **insured person**. If an **insured person** is sued for these damages, **we** will provide a defense with counsel of **our** choice, even if the allegations are groundless, false or fraudulent. **We** are not obligated to pay any claim or judgment after **we** have exhausted **our** limit of liability. **We** will not provide a defense to any **insured person** for criminal prosecution or proceedings.

### Losses We Do Not Cover Under Coverage E:

1. **We** do not cover any **bodily injury** or **property damage** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any **insured person**, which are crimes pursuant to the Georgia Criminal Code. However, this exclusion shall not apply if such act or omission was for the preservation of life or property. This exclusion applies even if:

   a) such **insured person** lacks the mental capacity to govern his or her conduct, to appreciate the criminal nature or wrongfulness of the act or omission or to conform his or her conduct to the requirements of the law or to form the necessary intent under the law;

   b) such **bodily injury** or **property damage** is of a different kind or degree than intended or reasonably expected; or

   c) such **bodily injury** or **property damage** is sustained by a different person than intended or reasonably expected.

   This exclusion applies regardless of whether such **insured person** is actually charged with, or convicted of, a crime.

2. **We** do not cover **bodily injury** to any **insured person** or any resident of any **insured person's** household. This exclusion does not apply to a:

   a) **residence employee** unless the **bodily injury** is the result of the conduct of an **insured person** or representative of an **insured person** which would be serious and willful misconduct under the worker's compensation laws; or

   b) to a person not related to **you** who resides in **your** household under a rental agreement.

3. **We** do not cover **property damage** to property owned, at the time of the **occurrence**, by any **insured person** or any other resident of any **insured person's** household.

4. **We** do not cover **bodily injury** to any person eligible to receive any benefits required to be provided, or voluntarily provided, by an **insured person** under any workers' compensation, non- occupational disability or occupational disease law.

5. **We** do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of aircraft.

   **We** will not apply this exclusion to **bodily injury** to a **residence employee** arising out of and in the course of employment by any **insured person**.

6. **We** do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer. **We** will not apply this exclusion to:

   a) a motor vehicle in dead storage or used exclusively on an **insured premises**;

   b) any motor vehicle designed principally for recreational use off public roads, unless that vehicle is owned by an **insured person** and is being used away from an **insured premises**;

   c) a motorized wheelchair;

   d) a vehicle used to service an **insured premises** which is not designed for use on public roads and not subject to motor vehicle registration;

   e) a golf cart owned by an **insured person** when used for golfing purposes;

Exhibit A

f) a trailer of the boat, camper, home or utility type unless it is being towed or carried by a motorized land vehicle;

g) a vehicle not subject to motor vehicle registration because it is designed as a toy vehicle for use by children, powered by one or more batteries and not built, or modified after manufacture, to exceed a speed of five miles per hour on level ground;

h) lawn or garden implements under 40 horsepower; or

i) **bodily injury** to a **residence employee** arising out of and in the course of employment by any **insured person**.

7. **We** do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of watercraft away from an **insured premises** if the watercraft:

a) has inboard or inboard-outboard motor power of more than 50 horsepower;

b) is a sailing vessel 26 feet or more in length;

c) is powered by one or more outboard motors with more than 25 total horsepower;

d) is designated as an airboat, air cushion, or similar type of watercraft; or

e) is a personal watercraft, meaning a craft propelled by a water jet pump engine and designed to be operated by a person or persons sitting, standing or kneeling on the craft.

**We** will not apply this exclusion to **bodily injury** to a **residence employee** arising out of and in the course of employment by any **insured person**.

8. **We** do not cover **bodily injury** or **property damage** arising out of:

a) the negligent supervision by any **insured person** of any person; or

b) any liability statutorily imposed on any insured person;

arising from the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any aircraft, watercraft, hovercraft, motorized land vehicle or trailer which is not covered under **Part II** of this policy.

9. **We** do not cover **bodily injury** which results from lead in any form in any rental unit, of a two, three, or four family **building structure** that is not occupied by the **insured person**.

10. **We** do not cover **property damage** which results from lead in any form in any rental unit, of a two, three, or four family **building structure** that is not occupied by the **insured person**.

11. **We** do not cover **bodily injury** or **property damage** arising out of the rendering of, or failure to render, professional services by an **insured person**.

12. **We** do not cover **bodily injury** or **property damage** arising out of the past or present **business** activities of any **insured person**.

**We** will not apply this exclusion to **bodily injury** or **property damage** arising from the occasional or part-time **business** activities of an **insured person** who is a student under 21 years of age who is self-employed and has no employees.

13. **We** do not cover **bodily injury** or **property damage** arising out of any premises, other than an **insured premises**, owned, rented or controlled by an **insured person**. **We** will not apply this exclusion to **bodily injury** to a **residence employee** arising out of and in the course of employment by any **insured person**.

14. **We** do not cover **property damage** to property rented to, occupied or used by, or in the care of, any **insured person**, at the time of the **occurrence**. **We** will not apply this exclusion if the **property damage** is caused by fire, explosion or smoke.

15. **We** do not cover any liability:

a) for **your** share of any loss assessment charged against all members of any type of association of property owners; or

b) imposed on or assumed by any **insured person** arising out of any written or unwritten contract or agreement. This exclusion does not apply to liability for damages that the **insured person** would have in absence of the contract or agreement.

16. **We** do not cover **bodily injury** or **property damage** caused directly or indirectly by:

a) war, whether declared or undeclared;

b) warlike acts;

c) invasion;

d) insurrection;

e) rebellion;

f) revolution;

g) civil war;

h) usurped power;

i) destruction for a military purpose; or

Exhibit A

j) action taken by civil, governmental or military authority to hinder or defend against an actual or impending enemy act.

17. **We** do not cover **bodily injury** or **property damage** arising out of nuclear hazard, meaning nuclear reaction, discharge, radiation or radioactive contamination, or any consequence of any of these. **Bodily injury** or **property damage** arising out of a nuclear hazard is not considered as arising from fire, explosion or smoke.

18. **We** do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of hovercrafts. **We** will not apply this exclusion to **bodily injury** to a **residence employee** arising out of and in the course of employment by any **insured person**.

19. **bodily injury** or **property damage** resulting from, arising from, or in connection with property **you** or any **insured person** has sold or transferred. This includes, but is not limited to:

   a) known, unknown or hidden property conditions, problems or defects, including, but not limited to, manufacturing, structural, or plumbing, heating, air conditioning or electrical system conditions, problems or defects;

   b) known, unknown or hidden soil or drainage conditions, problems or defects; or

   c) concealment or misrepresentation of or the failure to disclose any known condition, problem or defect in or of the property.

20. **We** do not cover **bodily injury** or **property damage** arising out of any actual, alleged, or threatened:

   a) sexual harassment, sexual molestation, or sexual misconduct;

   b) physical or mental abuse; or

   c) corporal punishment;

   by any **insured person**;

21. **We** do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, or use of systems and equipment used to generate electrical power exceeding 125 percent of the actual electrical power usage by the **residence premises** in the 12-month period prior to the date of the loss.

22. **We** do not cover **bodily injury** or **property damage** arising out of the use, distribution, manufacture, sale, delivery, possession or transfer of any **drug** by any **insured person**.

23. **We** do not cover **bodily injury** or **property damage** arising out of acts or omissions committed by or at the direction of any **insured person** while under the influence of any **drug**.

   This exclusion does not apply to any acts or omissions committed while under the influence of any prescription **drug** that is:

   a) legally dispensed in the USA; and

   b) taken under the order of and in compliance with the instructions of a doctor licensed in the USA;

## COVERAGE F - MEDICAL PAYMENTS TO OTHERS

**Losses We Cover Under Coverage F:**

**We** will pay the reasonable expenses incurred for necessary medical, surgical, x-ray and dental services, ambulance, hospital, licensed nursing and funeral services, and prosthetic devices, eye glasses, hearing aids, and pharmaceuticals. These expenses must be incurred and the services performed within three years from the date of an **occurrence** causing **bodily injury** to which this policy applies, and is covered by this part of the policy.

Each person who sustains **bodily injury** is entitled to this coverage when that person is:

1. on the **insured premises** with the permission of an **insured person**; or

2. off the **insured premises**, if the **bodily injury**:

   a) arises out of a condition on the **insured premises** or immediately adjoining ways;

   b) is caused by the activities of an **insured person** or a **residence employee**;

   c) is caused by an animal owned by or in the care of an **insured person**; or

   d) is sustained by a **residence employee**.

**Losses We Do Not Cover Under Coverage F:**

1. **We** do not cover any **bodily injury** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any **insured person**, which are crimes pursuant to the Georgia Criminal Code. However, this exclusion shall not apply if such act or omission was for the preservation of life or property. This exclusion applies even if:

Exhibit A

    a)    such **insured person** lacks the mental capacity to govern his or her conduct, to appreciate the criminal nature or wrongfulness of the act or omission or to conform his or her conduct to the requirements of the law or to form the necessary intent under the law;

    b)    such **bodily injury** is of a different kind or degree than intended or reasonably expected; or

    c)    such **bodily injury** is sustained by a different person than intended or reasonably expected.

This exclusion applies regardless of whether such **insured person** is actually charged with, or convicted of, a crime.

2.   **We** do not cover **bodily injury** to any **insured person** or any resident of any **insured person's** household. This exclusion does not apply to a:

    a)    **residence employee** unless the **bodily injury** is the result of the conduct of an **insured person** or representative of an **insured person** which would be serious and willful misconduct under the worker's compensation laws; or

    b)    to a person not related to **you** who resides in **your** household under a rental agreement.

3.   **We** do not cover **bodily injury** to any person eligible to receive any benefits required to be provided, or voluntarily provided, under any workers' compensation, non-occupational disability or occupational disease law.

4.   **We** do not cover **bodily injury** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of aircraft.

**We** will not apply this exclusion to **bodily injury** to a **residence employee** arising out of and in the course of employment by any **insured person**.

5.   **We** do not cover **bodily injury** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer. **We** will not apply this exclusion to:

    a)    a motor vehicle in dead storage or used exclusively on an **insured premises**;

    b)    any motor vehicle designed principally for recreational use off public roads, unless that vehicle is owned by an **insured person** and is being used away from an **insured premises**;

    c)    a motorized wheelchair;

    d)    a vehicle used to service an **insured premises** which is not designed for use on public roads and not subject to motor vehicle registration;

    e)    a golf cart owned by an **insured person** when used for golfing purposes;

    f)    a trailer of the boat, camper, home or utility type unless it is being towed or carried by a motorized land vehicle;

    g)    a vehicle not subject to motor vehicle registration because it is designed as a toy vehicle for use by children, powered by one or more batteries and not built, or modified after manufacture, to exceed a speed of five miles per hour on level ground;

    h)    lawn or garden implements under 40 horsepower; or

    i)    **bodily injury** to a **residence employee** arising out of and in the course of employment by any **insured person**.

6.   **We** do not cover **bodily injury** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of watercraft away from an **insured premises** if the watercraft:

    a)    has inboard or inboard-outboard motor power of more than 50 horsepower;

    b)    is a sailing vessel 26 feet or more in length;

    c)    is powered by one or more outboard motors with more than 25 total horsepower;

    d)    is designated as an airboat, air cushion, or similar type of watercraft; or

    e)    is a personal watercraft, meaning a craft propelled by a water jet pump engine and designed to be operated by a person or persons sitting, standing or kneeling on the craft.

**We** will not apply this exclusion to **bodily injury** to a **residence employee** arising out of and in the course of employment by any **insured person**.

7.   **We** do not cover **bodily injury** arising out of:

    a)    the negligent supervision by any **insured person** of any person; or

    b)    any liability statutorily imposed on any insured person;

arising from the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any aircraft, watercraft, hovercraft, motorized land vehicle or trailer which is not covered under **Part II** of this policy.

8.   **We** do not cover **bodily injury** which results from lead in any form in any rental unit, of a two, three, or four family **building structure** that is not occupied by the **insured person**.

9.   **We** do not cover **bodily injury** arising out of the rendering of, or failure to render, professional services by an **insured person**.

10. **We** do not cover **bodily injury** arising out of the past or present **business** activities of an **insured person**.

    **We** will not apply this exclusion to **bodily injury** arising from the occasional or part-time **business** activities of an **insured person** who is a student under 21 years of age who is self-employed and has no employees.

11. **We** do not cover **bodily injury** to any person on the **insured premises** because of a **business** activity conducted there.

12. **We** do not cover **bodily injury** to any person on the **insured premises** because of a professional service conducted there.

13. **We** do not cover **bodily injury** arising out of any premises, other than an **insured premises**, owned, rented or controlled by an **insured person**. **We** will not apply this exclusion to **bodily injury** to a **residence employee** arising out of and in the course of employment by any **insured person**.

14. **We** do not cover **bodily injury** caused directly or indirectly by:
    a) war, whether declared or undeclared;
    b) warlike acts;
    c) invasion;
    d) insurrection;
    e) rebellion;
    f) revolution;
    g) civil war;
    h) usurped power;
    i) destruction for a military purpose; or
    j) action taken by civil, governmental or military authority to hinder or defend against an actual or impending enemy act.

15. **We** do not cover **bodily injury** arising out of nuclear hazard, meaning nuclear reaction, discharge, radiation or radioactive contamination, or any consequence of any of these. **Bodily injury** arising out of a nuclear hazard is not considered as arising from fire, explosion or smoke

16. **We** do not cover **bodily injury** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of hovercrafts. **We** will not apply this exclusion to **bodily injury** to a **residence employee** arising out of and in the course of employment by any **insured person**. .

17. **We** do not cover **bodily injury** arising out of any actual, alleged, or threatened:
    a) sexual harassment, sexual molestation, or sexual misconduct;
    b) physical or mental abuse; or
    c) corporal punishment;
    by any **insured person**;

18. **We** do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, or use of systems and equipment used to generate electrical power exceeding 125 percent of the actual electrical power usage by the **residence premises** in the 12-month period prior to the date of the loss.

19. **We** do not cover **bodily injury** arising out of the manufacture, sale, delivery or transfer of any **drug** by any **insured person**.

20. **We** do not cover **bodily injury** arising out of acts or omissions committed by or at the direction of any **insured person** while under the influence of any **drug**.

    This exclusion does not apply to any acts or omissions committed while under the influence of any prescription drug that is:
    a) legally dispensed in the USA; and
    b) taken under the order of and in compliance with the instructions of a doctor licensed in the USA;

# Part II — Additional Payments

**We** will pay, in addition to the limits of liability:

1. **Claim Expense**

   **We** will pay:
   a) all costs **we** incur in the settlement of any claim or the defense of any suit against an **insured person**;
   b) interest accruing on damages awarded until such time as **we** have paid, formally offered, or deposited in court the amount for which **we** are liable under this policy; interest will be paid only on damages which do not exceed **our** limits of liability;

Exhibit A

   c)   premiums on appeal or attachment bonds required in any suit **we** defend; **we** will not pay bond premiums in an amount that is more than **our** limit of liability; **we** have no obligation to apply for or furnish bonds;

   d)   up to $150 per day for loss of wages and salary, when **we** ask **you** to attend trials and hearings;

   e)   any other reasonable expenses incurred by an **insured person** at **our** request.

**2. Emergency First Aid**

   **We** will pay reasonable expenses incurred by an **insured person** for immediate first aid to others at the time of an accident involving **bodily injury** covered under this policy. **We** will not pay for first aid to **you** or any other **insured person**.

**3. Damage To Property Of Others**

   At **your** request, **we** will pay:

   a)   subject to the $1,000 per excursion limit described in this sub-item 3.a), for **property damage** an **insured person** causes to someone else's property which is, or is furnished in connection with, a private residence, or a hotel room or similar accommodation, rented to, occupied or used by, or in the care of, an **insured person** for temporary overnight lodging purposes while such **insured person** is traveling, vacationing or otherwise away from their residence.

      The total amount **we** will pay will not exceed $1,000 per excursion. For purposes of this insurance, an excursion begins the day an **insured person** leaves their residence for the purpose described above and ends on the day such person returns to their residence with no intent to continue that excursion. However, in the event multiple **insured persons** participate in any portion of an excursion, the excursion begins the day the first **insured person** leaves their residence for the purpose described above and ends on the day that all **insured persons** have returned to their residence with no intent to continue that excursion.

      **We** will not pay more than $1,000 per excursion, regardless of the number of **insured persons** participating in the excursion or causing **property damage** during the excursion, the number of separate acts causing **property damage**, the duration of the excursion, or the number of separate policy periods through which the excursion extends.

   b)   up to $1,000 each time an **insured person** causes **property damage** to someone else's property of a type for which no insurance is afforded under sub-item 3.a), above.

   At **our** option, **we** will pay the cost to either repair or replace the property damaged by an **insured person**, without deduction for depreciation.

   **We** will not pay for **property damage**:

   a)   to property covered under **Part I** of this policy;

   b)   to property intentionally damaged by an **insured person** who has attained the age of 13;

   c)   under sub-item 3.a) to property damaged in a student dormitory, fraternity, sorority or off-campus housing caused by any student other than **you**;

   d)   1)   to property owned by an **insured person**;

        2)   to property of an **insured person's** tenant, roomer or boarder;

        3)   to property of any employee of an **insured person's** tenant, roomer or boarder;

        4)   to property of any guest of an **insured person's** tenant, roomer or boarder; or

        5)   to property of any resident in **your** household; or

   e)   arising out of:

        1)   past or present **business** activities;

        2)   any act or omission in connection with a premises, other than an **insured premises**, owned, rented or controlled by an **insured person**; or

        3)   the ownership or use of trailer, aircraft, hovercraft, watercraft or a motorized land vehicle.

# Part II — Conditions

**1. What You Must Do After A Loss.**

   In the event of **bodily injury** or **property damage**, **you** must cooperate with **us** in the investigation, settlement, or defense of any claim or suit and also perform the following duties that apply. **You** must cooperate with **us** in seeing that these duties are performed::

   a)   Promptly notify **us** or **our** agent stating:

        1)   **your** name and policy number;

        2)   the date, the place and the circumstances of the loss;

Exhibit A

    3)   the name and address of anyone who might have a claim against an **insured person**;

    4)   the names and addresses of any witnesses.

b)   Promptly send **us** any legal papers relating to the accident.

c)   At **our** request, an **insured person** will:

    1)   cooperate with **us** and assist **us** in any matter concerning a claim or suit;

    2)   help **us** enforce any right of recovery against any person or organization who may be liable to an **insured person**;

    3)   attend any hearing or trial.

d)   Under the **Part II - Additional Payments**, **Damage To Property Of Others**, give **us** a sworn statement of the loss. This must be made within 60 days after the date of loss. Also, an **insured person** must be prepared to show **us** any damaged property under that person's control.

Any **insured person** will not voluntarily pay any money, assume any obligations or incur any expense, other than for first aid to others at the time of the loss as provided for in this policy.

**2.**   **What An Injured Person Must Do - Coverage F - Medical Payments to Others.**

If someone is injured, that person, or someone acting for that person, must do the following:

a)   Promptly give **us** written proof of the loss. If **we** request, this must be done under oath.

b)   Give **us** written authorization to obtain copies of all medical records and reports.

c)   Permit doctors **we** select to examine the injured person as often as **we** may reasonably require.

**3.**   **Our Payment Of Loss - Coverage F - Medical Payments to Others.**

**We** may pay the injured person or the provider of the medical services. Payment under this coverage is not an admission of liability by **us** or an **insured person**.

**4.**   **Our Limits Of Liability.**

Regardless of the number of **insured persons**, injured persons, claims, claimants or policies involved, **our** total liability under **Coverage E - Personal Liability** for damages resulting from one **occurrence** will not exceed the Limit Of Liability shown on the Declaration Certificate. All **bodily injury** and **property damage** resulting from continuous or repeated exposure to the same general conditions is considered the result of one **occurrence**.

**Our** total liability under **Coverage F - Medical Payments to Others** for all medical expenses payable for **bodily injury**, to any one person, shall not exceed the "each person" Limit Of Liability shown on the Declaration Certificate.

**5.**   **Severability Of Insurance.**

This insurance applies separately to each **insured person**. This condition does not increase **our** limit of liability for any one **occurrence**.

**6.**   **Bankruptcy.**

**We** are not relieved of any obligation under this policy because of the bankruptcy or insolvency of an **insured person**.

**7.**   **Our Rights To Recover Payment - Coverage E - Personal Liability.**

When **we** pay any loss, an **insured person's** right to recover from anyone else becomes **ours** up to the amount **we** have paid. An **insured person** must protect these rights and help **us** enforce them.

**8.**   **Suit Against Us.**

a)   No one may bring an action against **us** in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, unless there has been full compliance with all policy terms.

b)   No one may bring an action against **us** in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under **Coverage E - Personal Liability**, unless the obligation of an **insured person** to pay has been finally determined either by judgment against the **insured person** after actual trial, or by written agreement of the **insured person**, injured person and **us**, and the action against **us** is commenced within two years of such judgment or agreement.

c)   No one may bring an action against **us** in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under **Coverage F - Medical Payments to Others**, unless such action is commenced within two years after the date the expenses for which coverage is sought were actually incurred.

Exhibit A

d) No one may bring an action against us in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under **Part II - Additional Payments**, unless such action is commenced within two years after the date the claim expenses or emergency first aid expenses for which coverage is sought were actually incurred, or within two years after the date of loss to the property if coverage is being sought under **Part II - Additional Payments**, **Damage To Property Of Others**.

e) No one shall have any right to make **us** a party to an action to determine the liability of an **insured person**.

9. **Other Insurance - Coverage E - Personal Liability.**

This insurance is excess over any other valid and collectible insurance except insurance that is written specifically as excess over the limits of liability that apply to this policy.

# General Policy Conditions

1. **Entire Contract - Waiver or Change of Policy Provisions.**

This policy, including the Declarations and any endorsements, include all the agreements between **you** and **us** and any of **our** agents relating to this insurance. The terms, conditions, and exclusions of this policy may not be changed or waived by any oral agreement and may only be changed or waived by endorsement issued by **us**.

**We** may change this policy or replace it to conform to the policy form and coverage **we** then currently use. The change or new policy will be delivered to **you** or mailed to **you** pursuant to the Policy Notices condition in accordance with state law before its effective date. **Our** request for an appraisal or examination under oath will not waive any of **our** rights.

2. **Joint Obligations.**

This policy imposes joint obligations on the Named Insured(s) listed on the Policy Declarations and on that person's resident spouse. These persons are defined as **you** or **your**. This means that the responsibilities, acts and omissions of a person defined as **you** or **your** will be binding upon any other person defined as **you** or **your**.

The terms of this policy are joint obligations of all persons defined as an **insured person**. This means that the responsibilities, acts, and failures to act of any **insured person** will be binding upon any other **insured person**. To the extent an **insured person**, other than **you**, is a direct beneficiary of coverage by this policy, that **insured person** is also responsible for complying with the duties and responsibilities set forth in this policy.

3. **Conformity To State Statutes.**

If the terms of this policy are in conflict with the statutes of the state in which the residence premise is located, they shall be as set forth in the statutes of that state.

4. **Coverage Changes.**

When **we** broaden coverage during the policy term without an additional premium charge, **you** have the new features if **you** have the coverage to which they apply. Otherwise, the policy can be changed only by endorsement.

The coverage provided and the premium for the policy are based on information **you** have given **us**. **You** agree to cooperate with **us** in determining if this information is correct and complete. **You** agree that if this information changes, or if this information is incorrect or incomplete, **we** may adjust **your** coverage and premium accordingly during the policy term.

5. **Assignment of Policy.**

Any interest **you** may have in this policy or benefits payable under this policy may not be assigned or transferred to another person or organization without **our** written consent and is void and invalid.

6. **Death.**

If **you** should die, **we** will cover until the end of the current policy period:

a) **your** spouse, if a resident of the same household with **you** at the time of **your** death, or any other member of **your** household on the **residence premises** who is an **insured  person** at the time of **your** death, but only while a resident of the **residence premises**;

b) **your** legal representative while acting as such, but only with respect to the **residence premises** and property covered by this policy at the time of **your** death; or

c) any person having proper temporary custody of **your** insured property until **your** legal representative is appointed and qualified.

Exhibit A

**7.   Cancellation.**

   a)   **Your** Right to Cancel:

   **You** may cancel this policy by notifying **us** of the cancellation on or before the date **you** wish to stop coverage.

   However, if this policy may not be canceled unless notice is given to a governmental agency, mortgagee, or other third party, **we** shall mail or deliver such notice stating the date cancellation shall become effective, but such date shall not be less than ten days from the date of mailing or delivery of the notice.

   b)   **Our** Right to Cancel:

   **We** may cancel this policy by mailing notice or delivering notice to **you** pursuant to the Policy Notices condition. When this policy has been in effect for less than 60 days, and it is not a renewal with **us**, **we** may cancel this policy for any reason by giving **you** at least 10 days' notice before the cancellation takes effect.

   When the policy has been in effect for 60 days or more, or if it is a renewal with **us**, **we** may cancel this policy for one or more of the following reasons:

   1)   non-payment of premium;

   2)   the policy was obtained by misrepresentation, fraud or concealment of material facts;

   3)   material misrepresentation, fraud or concealment of material facts in presenting a claim, or violation of any of the policy terms; or

   4)   there has been a substantial change or increase in hazard in the risk **we** originally accepted.

   If the cancellation is for non-payment of premium, **we** will give **you** at least 10 days' notice. If the cancellation is for any of the other reasons, **we** will give **you** at least 30 days' notice.

   **Our** mailing the notice of cancellation to **you** will be deemed proof of notice. Coverage under this policy will terminate on the effective date and hour stated on the cancellation notice. **Your** return premium, if any, will be calculated on a pro rata basis and refunded on or before the cancellation date, or if an audit or rate investigation is required within 30 days after the conclusion of the audit or rate. However, refund of unearned premium is not a condition of cancellation.

   Notice of the cancellation of a policy protecting the interest of any lienholder shall be delivered or mailed to the last address of record shown in the policy unless the lienholder has opted to accept notification electronically. This notice shall state when, not less than ten days or such longer period as may be provided in the contract or by the statute, the cancellation shall become effective.

   c)   **Our** Right Not to Renew or Continue:

   **We** have the right not to renew or continue the policy beyond the current policy term. If **we** do not intend to continue or renew the policy, **we** will mail or deliver written notice to **you** pursuant to the Policy Notices condition at least 30 days before the end of the policy term. **Our** mailing the notice of nonrenewal to **you** will be deemed proof of notice.

**8.   Policy Expiration.**

   If **we** offer to renew this policy, and **you** decline, this policy will automatically expire at the end of the current policy period. Failure to pay the required renewal continuation premium when due shall mean that **you** have not accepted **our** offer. Any form of premium payment not honored for any reason will not constitute payment, and will not continue coverage beyond any date when such coverage would otherwise terminate for lack of payment.

**9.   Conditional Reinstatement.**

   If **you** fail to pay any installment when due, **we** will cancel the policy. If **you** make adequate payment after the due date and **we** reinstate the policy, there will be no coverage during the period of time between the date the policy cancelled and the date and time **we** received the payment. However, reinstatement of the policy is conditioned upon the following and any notice **we** issue which waives the cancellation or reinstates coverage is void if:

   a)   any form of premium payment is not honored for any reason; or

   b)   there is a claim under the policy arising from an event that occurred between the policy cancellation date and the date and time **we** received your payment to reinstate the policy.

   If the reinstatement is void for either of these reasons, the policy remains cancelled as of the date and time indicated on the cancellation notice, and **we** will not be liable for any claims or damages after that date and time.

**10.  Misrepresentation, Fraud Or Concealment.**

   **We** do not cover any loss or **occurrence** in which any **insured person** has concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

   If **we** make any payments pursuant to this policy and **we** later apply this condition, **you** must indemnify us for all payments made.

Exhibit A

**11.   Policy Term.**

This policy applies only to losses under Part I or **bodily injury** or **property damage** under Part II which occurs during the period this policy is in effect.

**12.   Premium Payment and Fees.**

**Your** policy is conditional based on payment to **us**. If **your** initial premium payment is not honored by a financial institution and was given with the intent to deceive **us**:

a)   it will not constitute payment and,

b)   all coverage which would otherwise be provided pursuant to the application and any action taken thereon will be considered null and void.

In addition to premium, fees may be charged on **your** policy for installment payments, for payments not honored by a financial institution and other transactions. Payments made to **your** policy will be applied first to fees, then to premium due.

Any calculation or adjustment of **your** premium will be made using the rules, rates and forms in effect, and on file if required, for **our** use in **your** state. The rates in effect at the beginning of **your** current policy term will be used to calculate any change in **your** premium. If **your** policy is changed by endorsement and the net change in **your** premium is less than $5.00, no charge will be made and no refund will be given unless requested by **you**.

**13.   What Law Will Apply.**

This policy is issued in accordance with the laws of the state in which the **residence premises** is located and covers property or risks principally located in that state. Subject to the following paragraph, the laws of the state in which the **residence premises** is located shall govern any and all claims or disputes in any way related to this policy.

If a covered loss to property, or any other **occurrence** for which coverage applies under this policy, happens outside the state in which the **residence premises** is located, claims or disputes regarding that covered loss to property, or other covered **occurrence**, may be governed by the laws of the jurisdiction in which that covered loss to property or other covered **occurrence** happened, only if the laws of that jurisdiction would apply in the absence of a contractual choice of law provision such as this.

**14.   Where Lawsuits May Be Brought.**

Subject to the following two paragraphs, any and all lawsuits in any way related to this policy, shall be brought, heard and decided only in a state or federal court located in the state in which the **residence premises** is located. Any and all lawsuits against persons not parties to this policy but involved in the sale, administration, performance, or alleged breach of this policy, or otherwise related to this policy, shall be brought, heard and decided only in a state or federal court located in the state in which the **residence premises** is located, provided that such persons are subject to or consent to suit in the courts specified in this paragraph.

If a covered loss to property, or any other **occurrence** for which coverage applies under this policy, happens outside the state in which the **residence premises** is located, lawsuits regarding that covered loss to property, or other covered **occurrence**, may also be brought in the judicial district where that covered loss to property or other covered **occurrence** happened.

Nothing in this provision, **Where Lawsuits May Be Brought**, shall impair any party's right to remove a state court lawsuit to a federal court.

**15.   Suit Against Us.**

No one may bring an action against **us** unless there has been full compliance with all policy terms.

Any action against **us** to which neither the Suit Against Us provision located in **Part I - Conditions** nor the Suit Against Us provision located in **Part II - Conditions** applies must be commenced within two years of the date the cause of action accrues.

If an action is brought asserting claims relating to the existence or amount of coverage, or the amount of loss for which coverage is sought, under different coverages of this policy, the claims relating to each coverage shall be treated as if they were separate actions for the purpose of the time limit to commence action.

**16.   Policy Notices.**

**We** will address policy notices to **you** at **your** address shown in the Declaration Certificate. **We** may mail or, unless prohibited by law, deliver such notices to **you**. If a mortgagee is named in this policy, any notices **we** give to the mortgagee may be mailed or delivered.

With **your** consent, except where prohibited by law, a policy notice including a notice to renew, nonrenew, or cancel, per this Policy Notices Condition will be deemed "mailed" or "delivered" if it is delivered by electronic transmittal or facsimile. Proof of transmission will be sufficient proof of notice.

Exhibit A

17. **Right to Inspect.**

   a) **We** have the right but are not obligated to perform the following:

      1) make inspections and surveys of the **insured premises** at any time;

      2) provide **you** with reports on conditions **we** find; or

      3) recommend changes.

   b) **We** do not:

      1) make safety inspections;

      2) undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public;

      3) warrant that conditions are safe or healthful; or

      4) warrant that conditions comply with laws, regulations, codes or standards.

This condition applies to **us** and the any rating, advisory, rate service or similar organization that makes insurance inspection, surveys, reports or recommendations on **our** behalf.

# Signature Clause

MemberSelect Insurance Company has caused its Officers to sign this policy at Dearborn, Michigan as of the effective date of this policy.

MEMBERSELECT INSURANCE COMPANY
(A Capital Stock Company)

Joseph J. Richardson Jr.
President

John Bruno
Secretary

Exhibit A

# EXHIBIT B

**MemberSelect Insurance Company**

1 Auto Club Group Drive
Dearborn MI 48126

| | | | |
|---|---|---|---|
| Insured: | QUASAR ALEXANDER | Home: | (214) 289-6876 |
| Property: | 3294 SEQUOIA AVE | | |
| | ATLANTA, GA 30349-8717 | | |
| Home: | 3294 SEQUOIA AVE | | |
| | ATLANTA, GA 30349-8717 | | |

| | | | |
|---|---|---|---|
| Claim Rep.: | Andrew Jadlos | Business: | (313) 436-7327 |
| Company: | AAA-Michigan | E-mail: | atjadlos@aaamichigan.com |
| Estimator: | Scott Robinson | Business: | (404) 906-9834 |
| | | E-mail: | scottr51@att.net |

**Claim Number:** 401311951          **Policy Number:** HOM700121987          **Type of Loss:** Water/Plumbing

| Coverage | Deductible | Policy Limit |
|---|---|---|
| HO Cvg A -- Dwelling | $2,500.00 | $323,694.00 |
| HO Cvg B -- Addl Structures | $0.00 | $32,369.00 |
| HO Cvg C -- Personal Property | $0.00 | $97,108.00 |

| | | | |
|---|---|---|---|
| Date Contacted: | 2/25/2021 11:00 AM | | |
| Date of Loss: | 10/26/2020 2:00 PM | Date Received: | 10/27/2020 1:32 PM |
| Date Inspected: | 3/5/2021 1:00 PM | Date Entered: | 10/29/2020 3:11 PM |
| Date Est. Completed: | 3/10/2021 3:22 PM | | |

| | | | | | |
|---|---|---|---|---|---|
| Price List: | GAAT8X_NOV20 | Depreciate Material: | Yes | Depreciate O&P: | No |
| | Restoration/Service/Remodel | Depreciate Non-material: | Yes | Depreciate Taxes: | Yes |
| Estimate: | QUASAR_ALEXANDER1 | Depreciate Removal: | Yes | | |

STATEMENT TO THE INSURED: PLEASE READ CAREFULLY
The following estimate represents a fair and reasonable figure to repair or replace the damaged items or structures noted by the adjuster at the time of the inspection. It is not a contract to effect those repairs, nor is it a guarantee of payment in any amount. The final decision regarding payments made, if any, will be determined by a AAA Representative.

Please present this estimate to a contractor before you authorize the start of repairs. We will not accept any supplements unless they have prior approval by a representative of the company. If a contractor has questions regarding this estimate, please contact the Catastrophe Claims Office.

Items in this estimate which are noted as "Recoverable Depreciation" will be paid upon receipt of proof that those items have been replaced or repaired. Be aware that some limitations may apply. Please refer to your policy for details on what limitations apply, and how to collect this payment.

Exhibit A

**MemberSelect Insurance Company**

1 Auto Club Group Drive
Dearborn MI 48126

### QUASAR_ALEXANDER1

### 2nd Floor

| | | |
|---|---|---|
| **Laundry Room** | | **Height: 8'** |

| | |
|---|---|
| 208.00 SF Walls | 40.89 SF Ceiling |
| 248.89 SF Walls & Ceiling | 40.89 SF Floor |
| 4.54 SY Flooring | 26.00 LF Floor Perimeter |
| 26.00 LF Ceil. Perimeter | |

| **Door** | **3' X 6' 8"** | **Opens into LIVING_ROOM** |
|---|---|---|

| CAT | SEL | ACT DESCRIPTION | | | | | |
|---|---|---|---|---|---|---|---|
| | | CALC | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
| 1. APP | WSHRS | + Washing machine - Remove & reset | | | | | | |
| | 1 | 1.00 EA | 0.00+ | 35.09 = | 0.00 | 7.02 | 42.11 |
| 2. APP | DRYRS | + Dryer - Remove & reset | | | | | | |
| | 1 | 1.00 EA | 0.00+ | 27.06 = | 0.00 | 5.42 | 32.48 |
| 3. CON | ROOM< | + Contents - move out then reset - Small room | | | | | | |
| | 1 | 1.00 EA | 0.00+ | 37.42 = | 0.00 | 7.48 | 44.90 |
| 4. PNT | MASKSF | + Mask the floor per square foot - plastic and tape - 4 mil | | | | | | |
| | F | 40.89 SF | 0.00+ | 0.22 = | 0.16 | 1.80 | 10.96 |
| 5. FNC | B | & R&R Baseboard - 2 1/4" | | | | | | |
| | PF | 26.00 LF | 0.37+ | 2.56 = | 1.79 | 15.24 | 93.21 |
| 6. FNC | SHOE | + Base shoe | | | | | | |
| | PF | 26.00 LF | 0.00+ | 1.22 = | 0.89 | 6.34 | 38.95 |
| 7. FCV | PREP | + Floor preparation for resilient flooring | | | | | | |
| | F | 40.89 SF | 0.00+ | 0.44 = | 0.32 | 3.60 | 21.91 |
| 8. FCV | AV | - Remove Vinyl floor covering (sheet goods) | | | | | | |
| | F | 40.89 SF | 0.80+ | 0.00 = | 0.00 | 6.54 | 39.25 |
| 9. FCV | AV | + Vinyl floor covering (sheet goods) | | | | | | |
| | F*1.15 | 47.02 SF | 0.00+ | 2.55 = | 6.09 | 23.98 | 149.97 |
| 10. PNT | B1SP | + Seal & paint baseboard - two coats | | | | | | |
| | PF | 26.00 LF | 0.00+ | 1.34 = | 0.20 | 6.96 | 42.00 |
| 11. PNT | SHOE | + Seal & paint base shoe or quarter round | | | | | | |
| | PF | 26.00 LF | 0.00+ | 0.72 = | 0.20 | 3.74 | 22.66 |

| | | | | | |
|---|---|---|---|---|---|
| **Totals: Laundry Room** | | | 9.65 | 88.12 | 538.40 |

Exhibit A

**MemberSelect Insurance Company**

1 Auto Club Group Drive
Dearborn MI 48126



**Living Room**                                                           **Height: 8'**

|  |  |
|---|---|
| 667.30 SF Walls | 319.20 SF Ceiling |
| 986.51 SF Walls & Ceiling | 319.20 SF Floor |
| 35.47 SY Flooring | 82.75 LF Floor Perimeter |
| 86.75 LF Ceil. Perimeter | |

| | | | |
|---|---|---|---|
| **Missing Wall** | 8' 10" X 8' | | **Opens into Exterior** |
| **Door** | 4' X 6' 8" | | **Opens into Exterior** |
| **Door** | 2' 6" X 6' 8" | | **Opens into Exterior** |
| **Door** | 2' 8" X 6' 8" | | **Opens into Exterior** |
| **Door** | 2' 6" X 6' 8" | | **Opens into Exterior** |
| **Door** | 3' X 6' 8" | | **Opens into LAUNDRY_ROOM** |
| **Door** | 3' X 6' 8" | | **Opens into BEDROOM** |
| **Missing Wall** | 3' 5" X 8' | | **Opens into Exterior** |

| CAT | SEL | ACT DESCRIPTION | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | CALC | QTY | | REMOVE | REPLACE | TAX | O&P | TOTAL |
| 12. CON | ROOM> | + Contents - move out then reset - Large room | | | | | | |
| | 1 | 1.00 EA | | 0.00+ | 74.76 = | 0.00 | 14.96 | 89.72 |
| 13. FCC | AVRS | + Carpet - Detach & relay | | | | | | |
| | F | 319.20 SF | | 0.00+ | 0.61 = | 0.49 | 38.94 | 234.14 |
| 14. FCC | PAD | & R&R Carpet pad | | | | | | |
| | 1/8F | 39.90 SF | | 0.10+ | 0.56 = | 1.48 | 5.26 | 33.07 |
| remove and replace water exposed pad only | | | | | | | | |
| 15. PNT | MASKSF | + Mask the floor per square foot - plastic and tape - 4 mil | | | | | | |
| | F | 319.20 SF | | 0.00+ | 0.22 = | 1.24 | 14.04 | 85.50 |
| 16. CLN | FCC | + Clean and deodorize carpet | | | | | | |
| | F | 319.20 SF | | 0.00+ | 0.42 = | 0.25 | 26.82 | 161.13 |
| 17. PNT | B | + Paint baseboard - one coat | | | | | | |
| | PF | 82.75 LF | | 0.00+ | 0.86 = | 0.51 | 14.24 | 85.92 |
| 18. FCC | SEAMS | + Seam carpet | | | | | | |
| | 21 | 21.00 LF | | 0.00+ | 3.43 = | 0.34 | 14.40 | 86.77 |

| | | | |
|---|---|---|---|
| **Totals: Living Room** | 4.31 | 128.66 | 776.25 |

Exhibit A

**MemberSelect Insurance Company**

1 Auto Club Group Drive
Dearborn MI 48126

| | | |
|---|---|---|
| **Bedroom** | | **Height: 8'** |
| 366.67 SF Walls | 134.31 SF Ceiling |
| 500.98 SF Walls & Ceiling | 134.31 SF Floor |
| 14.92 SY Flooring | 45.17 LF Floor Perimeter |
| 49.17 LF Ceil. Perimeter | |

| Door | 4' X 6' 8" | Opens into Exterior |
|---|---|---|
| Door | 3' X 6' 8" | Opens into LIVING_ROOM |

| CAT | SEL | ACT DESCRIPTION | | | | | |
|---|---|---|---|---|---|---|---|
| | CALC | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
| 19. CON | ROOM | + Contents - move out then reset | | | | | |
| | 1 | 1.00 EA | 0.00+ | 49.84 = | 0.00 | 9.96 | 59.80 |
| 20. FCC | AVRS | + Carpet - Detach & relay | | | | | |
| | F | 134.31 SF | 0.00+ | 0.61 = | 0.21 | 16.38 | 98.52 |
| 21. FCC | PAD | & R&R Carpet pad | | | | | |
| | 1/4F | 33.58 SF | 0.10+ | 0.56 = | 1.25 | 4.44 | 27.85 |
| remove and replace water exposed pad only | | | | | | | |
| 22. PNT | MASKSF | + Mask the floor per square foot - plastic and tape - 4 mil | | | | | |
| | F | 134.31 SF | 0.00+ | 0.22 = | 0.52 | 5.92 | 35.99 |
| 23. CLN | FCC | + Clean and deodorize carpet | | | | | |
| | F | 134.31 SF | 0.00+ | 0.42 = | 0.10 | 11.28 | 67.79 |
| 24. PNT | B | + Paint baseboard - one coat | | | | | |
| | PF | 45.17 LF | 0.00+ | 0.86 = | 0.28 | 7.78 | 46.91 |
| 25. FCC | SEAMS | + Seam carpet | | | | | |
| | 5 | 5.00 LF | 0.00+ | 3.43 = | 0.08 | 3.44 | 20.67 |
| 26. DOR | DOR-RS | + Interior door - Detach & reset - slab only | | | | | |
| | 1 | 1.00 EA | 0.00+ | 19.44 = | 0.00 | 3.88 | 23.32 |
| 27. PNT | OP1 | + Paint door or window opening - 1 coat (per side) | | | | | |
| | 2 | 2.00 EA | 0.00+ | 19.00 = | 0.47 | 7.60 | 46.07 |
| 28. PNT | DOR1 | + Paint door slab only - 1 coat (per side) | | | | | |
| | 2 | 2.00 EA | 0.00+ | 22.20 = | 0.70 | 8.88 | 53.98 |

detach and reset door slab for carpet reinstall/pad repairs, then repaint door slab, jamb, and baseboards affected by carpet re-installation to pre loss condition

| Totals: Bedroom | | | | | 3.61 | 79.56 | 480.90 |
|---|---|---|---|---|---|---|---|

| Total: 2nd Floor | | | | | 17.57 | 296.34 | 1,795.55 |
|---|---|---|---|---|---|---|---|

**Main Level**

Exhibit A

**MemberSelect Insurance Company**

1 Auto Club Group Drive
Dearborn MI 48126



| **Office** | | **Height: 8'** |
|---|---|---|
| 652.11 SF Walls | 370.92 SF Ceiling | |
| 1023.03 SF Walls & Ceiling | 370.92 SF Floor | |
| 41.21 SY Flooring | 84.83 LF Floor Perimeter | |
| 88.17 LF Ceil. Perimeter | | |

| **Window** | 3' X 4' | **Opens into Exterior** |
|---|---|---|
| **Window** | 3' X 4' | **Opens into Exterior** |
| **Missing Wall** | 5' 10" X 8' | **Opens into FOYER_ENTRY** |
| **Missing Wall - Goes to neither Floor/Ceiling** | 7' 9" X 4' | **Opens into FOYER_ENTRY** |
| **Window** | 3' X 4' | **Opens into Exterior** |
| **Window** | 3' X 4' | **Opens into Exterior** |
| **Window** | 3' X 4' | **Opens into Exterior** |
| **Missing Wall - Goes to Floor** | 3' 4" X 6' 8" | **Opens into Exterior** |

| CAT | SEL | ACT DESCRIPTION | | | | | |
|---|---|---|---|---|---|---|---|
| | CALC | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
| 29. CON | ROOM>> | + Contents - move out then reset - Extra large room | | | | | |
| | 1 | 1.00 EA | 0.00+ | 149.53 = | 0.00 | 29.90 | 179.43 |
| 30. PNT | MASKSF | + Mask the floor per square foot - plastic and tape - 4 mil | | | | | |
| | F | 370.92 SF | 0.00+ | 0.22 = | 1.44 | 16.32 | 99.36 |
| 31. PNT | S | + Seal part of the ceiling w/latex based stain blocker - one coat | | | | | |
| | 1/4C+16 | 108.73 SF | 0.00+ | 0.56 = | 0.59 | 12.18 | 73.66 |
| 32. PNT | P | + Paint the walls and ceiling - one coat | | | | | |
| | WC | 1023.03 SF | 0.00+ | 0.60 = | 8.72 | 122.76 | 745.30 |
| seal and repaint water stained ceiling & wals (located below laundry room on 1st floor) | | | | | | | |
| 33. PNT | JP | + Paint - judges paneling - one coat | | | | | |
| | 8,2*4 | 32.67 SF | 0.00+ | 2.73 = | 0.43 | 17.84 | 107.46 |

| Totals: Office | | | | | 11.18 | 199.00 | 1,205.21 |
|---|---|---|---|---|---|---|---|



| **Foyer/Entry** | | **Height: 16'** |
|---|---|---|
| 334.33 SF Walls | 46.67 SF Ceiling | |
| 381.00 SF Walls & Ceiling | 46.67 SF Floor | |
| 5.19 SY Flooring | 17.00 LF Floor Perimeter | |
| 22.00 LF Ceil. Perimeter | | |

| **Door** | 5' X 6' 8" | **Opens into Exterior** |
|---|---|---|
| **Missing Wall** | 5' 10" X 16' | **Opens into OFFICE** |
| **Missing Wall - Goes to neither Floor/Ceiling** | 7' 9" X 4' | **Opens into OFFICE** |

QUASAR_ALEXANDER1

3/10/2021        Page: 5

Exhibit A

**MemberSelect Insurance Company**

1 Auto Club Group Drive
Dearborn MI 48126

| CAT | SEL | ACT DESCRIPTION | | | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| | CALC | QTY | REMOVE | REPLACE | | | |
| 34. FCW | LAMTD | & R&R Engineered wood flooring | | | | | |
| | F | 46.67 SF | 2.03+ | 8.38 = | 21.77 | 97.16 | 604.76 |
| remove and replace water exposed engineered wood flooring at foyer | | | | | | | |
| 35. FCW | GADDC | & Add for glued down application over concrete substrate | | | | | |
| | F | 46.67 SF | 1.30+ | 1.02 = | 3.15 | 21.66 | 133.08 |
| 36. FNC | B | & R&R Baseboard - 2 1/4" | | | | | |
| | PF | 17.00 LF | 0.37+ | 2.56 = | 1.17 | 9.96 | 60.94 |
| 37. FNC | SHOE | + Base shoe | | | | | |
| | PF | 17.00 LF | 0.00+ | 1.22 = | 0.58 | 4.14 | 25.46 |
| 38. DRY | PATCHLF | + Drywall tape joint/repair - per LF | | | | | |
| | 4 | 4.00 LF | 0.00+ | 6.08 = | 0.09 | 4.86 | 29.27 |
| 39. PNT | MASKSF | + Mask the floor per square foot - plastic and tape - 4 mil | | | | | |
| | F | 46.67 SF | 0.00+ | 0.22 = | 0.18 | 2.06 | 12.51 |
| 40. PNT | JP | + Paint - judges paneling - one coat | | | | | |
| | 1/2PF*4 | 34.00 SF | 0.00+ | 2.73 = | 0.45 | 18.56 | 111.83 |
| 41. PNT | B1SP | + Seal & paint baseboard - two coats | | | | | |
| | PF | 17.00 LF | 0.00+ | 1.34 = | 0.13 | 4.56 | 27.47 |
| 42. PNT | SHOE | + Seal & paint base shoe or quarter round | | | | | |
| | PF | 17.00 LF | 0.00+ | 0.72 = | 0.13 | 2.44 | 14.81 |
| 43. PNT | S | + Seal the surface area w/latex based stain blocker - one coat | | | | | |
| | 32 | 32.00 SF | 0.00+ | 0.56 = | 0.17 | 3.58 | 21.67 |
| 44. PNT | P | + Paint the walls - one coat | | | | | |
| | W | 334.33 SF | 0.00+ | 0.60 = | 2.85 | 40.12 | 243.57 |
| 45. PNT | PHIGH | + Additional cost for high wall or ceiling - Over 14' | | | | | |
| | PC*2 | 44.00 SF | 0.00+ | 0.08 = | 0.00 | 0.70 | 4.22 |
| 46. PNT | PHIGH< | + Additional cost for high wall or ceiling - 11' to 14' | | | | | |
| | PC*3 | 66.00 SF | 0.00+ | 0.06 = | 0.00 | 0.80 | 4.76 |

| Totals: Foyer/Entry | | | | | 30.67 | 210.60 | 1,294.35 |
|---|---|---|---|---|---|---|---|

| Total: Main Level | | | | | 41.85 | 409.60 | 2,499.56 |
|---|---|---|---|---|---|---|---|

### General

| CAT | SEL | ACT DESCRIPTION | | | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| | CALC | QTY | REMOVE | REPLACE | | | |
| 47. DMO | PU | - Haul debris - per pickup truck load - including dump fees | | | | | |
| | 1 | 1.00 EA | 145.21+ | 0.00 = | 0.00 | 29.04 | 174.25 |

| Totals: General | | | | | 0.00 | 29.04 | 174.25 |
|---|---|---|---|---|---|---|---|

| Line Item Totals: QUASAR_ALEXANDER1 | | | | | 59.42 | 734.98 | 4,469.36 |
|---|---|---|---|---|---|---|---|

Exhibit A

**MemberSelect Insurance Company**

1 Auto Club Group Drive
Dearborn MI 48126

## Grand Total Areas:

| | | | | | |
|---|---|---|---|---|---|
| 2,228.41 | SF Walls | 911.99 | SF Ceiling | 3,140.40 | SF Walls and Ceiling |
| 911.99 | SF Floor | 101.33 | SY Flooring | 255.75 | LF Floor Perimeter |
| 0.00 | SF Long Wall | 0.00 | SF Short Wall | 272.08 | LF Ceil. Perimeter |
| | | | | | |
| 911.99 | Floor Area | 995.15 | Total Area | 2,228.41 | Interior Wall Area |
| 2,049.58 | Exterior Wall Area | 237.83 | Exterior Perimeter of Walls | | |
| | | | | | |
| 0.00 | Surface Area | 0.00 | Number of Squares | 0.00 | Total Perimeter Length |
| 0.00 | Total Ridge Length | 0.00 | Total Hip Length | | |

QUASAR_ALEXANDER1                                3/10/2021          Page: 7

Exhibit A

**MemberSelect Insurance Company**

1 Auto Club Group Drive
Dearborn MI 48126

## Summary for HO Cvg A -- Dwelling

| | |
|---|---|
| Line Item Total | 3,674.96 |
| Overhead | 367.49 |
| Profit | 367.49 |
| Material Sales Tax | 59.42 |
| **Replacement Cost Value** | **$4,469.36** |
| Less Deductible | (2,500.00) |
| **Net Claim** | **$1,969.36** |

Scott Robinson

Exhibit A

**MemberSelect Insurance Company**

1 Auto Club Group Drive
Dearborn MI 48126

### Recap of Taxes, Overhead and Profit

| | Overhead (10%) | Profit (10%) | Material Sales Tax (7.75%) | Storage Rental Tax (7.75%) | Local Food Tax (3.75%) |
|---|---|---|---|---|---|
| Line Items | 367.49 | 367.49 | 59.42 | 0.00 | 0.00 |
| **Total** | **367.49** | **367.49** | **59.42** | **0.00** | **0.00** |

Exhibit A

**MemberSelect Insurance Company**

1 Auto Club Group Drive
Dearborn MI 48126

### Recap by Room

**Estimate: QUASAR_ALEXANDER1**

**Area: 2nd Floor**

| | | |
|---|---:|---:|
| Laundry Room | 440.63 | 11.99% |
| Living Room | 643.28 | 17.50% |
| Bedroom | 397.73 | 10.82% |
| **Area Subtotal:  2nd Floor** | **1,481.64** | **40.32%** |

**Area: Main Level**

| | | |
|---|---:|---:|
| Office | 995.03 | 27.08% |
| Foyer/Entry | 1,053.08 | 28.66% |
| **Area Subtotal:  Main Level** | **2,048.11** | **55.73%** |
| General | 145.21 | 3.95% |

| | | |
|---|---:|---:|
| **Subtotal of Areas** | **3,674.96** | **100.00%** |

| | | |
|---|---:|---:|
| **Total** | **3,674.96** | **100.00%** |

Exhibit A

**MemberSelect Insurance Company**

1 Auto Club Group Drive
Dearborn MI 48126

## Recap by Category

| O&P Items | Total | % |
|---|---:|---:|
| APPLIANCES | 62.15 | 1.39% |
| CLEANING | 190.47 | 4.26% |
| CONTENT MANIPULATION | 311.55 | 6.97% |
| GENERAL DEMOLITION | 356.59 | 7.98% |
| DOORS | 19.44 | 0.43% |
| DRYWALL | 24.32 | 0.54% |
| FLOOR COVERING - CARPET | 406.96 | 9.11% |
| FLOOR COVERING - VINYL | 137.89 | 3.09% |
| FLOOR COVERING - WOOD | 438.69 | 9.82% |
| FINISH CARPENTRY / TRIMWORK | 162.54 | 3.64% |
| PAINTING | 1,564.36 | 35.00% |
| O&P Items Subtotal | 3,674.96 | 82.23% |
| Overhead | 367.49 | 8.22% |
| Profit | 367.49 | 8.22% |
| Material Sales Tax | 59.42 | 1.33% |
| Total | 4,469.36 | 100.00% |

Exhibit A

2nd Floor

Page: 12

3/10/2021

N

Living Room

Laundry Room

Bedroom

QUASAR_ALEXANDER1

Exhibit A

2nd Floor

Main Level

Page: 13

3/10/2021

N

Office

Foyer/Entry

16' 9"

16' 3"

6' 4"

5' 10"

8'

8' 2"

2'

14' 5"

13' 9"

13' 8"

13' 8"

3' 2"

3' 2"

13' 6"

14' 2"

7' 11"

7' 11"

11' 11"

12' 7"

# EXHIBIT C

 **Auto Club Group Insurance Company**

1 Auto Club Group Drive
Dearborn MI 48126

| | | | |
|---|---|---|---|
| Insured: | QUASAR ALEXANDER | Home: | (214) 289-6876 |
| Home: | 3294 SEQUOIA AVE | | |
| | ATLANTA, GA 30349-8717 | | |
| Property: | 3294 SEQUOIA AVE | | |
| | ATLANTA, GA 30349-8717 | | |

Claim Rep.: Daija Ewell                         E-mail: drewell@aaamichigan.com

Estimator: Hesley Valembrun
Company: Auto Club Group

**Claim Number:** 401313188        **Policy Number:** HOM700121987        **Type of Loss:** Wind and/or Hail

| | | | |
|---|---|---|---|
| Date Contacted: | 10/31/2020 6:00 PM | | |
| Date of Loss: | 10/29/2020 3:00 AM | Date Received: | 10/30/2020 11:43 AM |
| Date Inspected: | 11/4/2020 9:00 AM | Date Entered: | 10/31/2020 9:31 AM |
| Date Est. Completed: | 11/6/2020 4:19 PM | | |

Price List: GAAT8X_OCT20
            Restoration/Service/Remodel
Estimate: QUASAR_ALEXANDER

### STATEMENT TO THE INSURED: PLEASE READ CAREFULLY

The following estimate represents a fair and reasonable figure to repair or replace the damaged items or structures noted by the Adjuster at the time of the inspection. It is not a contract to effect those repairs, nor is it a guarantee of payment in any amount. The final decision regarding payments made, if any, will be determined by a AAA Representative.

Please present this estimate to a contractor before you authorize the stat of repairs. We will not accept any supplements unless they have prior approval by a representative of the company. If a contractor has questions regarding this estimate, please contact the Catastrophe Claims Office.

Items in this estimate which are noted as "Recoverable Depreciation" will be paid upon receipt of proof that those items have been replaced or repaired. Be aware that some limitations may apply. Please refer to your policy for details on what limitations apply, and how to collect this payment.

Exhibit A

 **Auto Club Group Insurance Company**

1 Auto Club Group Drive
Dearborn MI 48126

### QUASAR_ALEXANDER

**QUASAR_ALEXANDER**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 1. Haul debris - per pickup truck load - including dump fees | 1.00 EA | 145.21 | 0.00 | 145.21 | (0.00) | 145.21 |
| **Total: QUASAR_ALEXANDER** | | | **0.00** | **145.21** | **0.00** | **145.21** |

### SKETCH1

### Roof



**Roof1**

| | |
|---|---|
| 2247.17 Surface Area | 22.47 Number of Squares |
| 198.31 Total Perimeter Length | 9.04 Total Ridge Length |
| 163.47 Total Hip Length | |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 2. Remove 3 tab - 20 yr. - composition shingle roofing (per SHINGLE) | 9.00 EA | 5.85 | 0.00 | 52.65 | (0.00) | 52.65 |
| 8 shingles on the front slope & 1 shingle on back slope | | | | | | |
| 3. 3 tab - 20 yr. - composition shingle roofing (per SHINGLE) | 9.00 EA | 13.19 | 1.10 | 119.81 | (59.91) | 59.90 |
| Below items are to account for labor due to steep and high | | | | | | |
| 4. Remove Additional charge for steep roof - 7/12 to 9/12 slope | 1.00 SQ | 12.10 | 0.00 | 12.10 | (0.00) | 12.10 |
| 5. Additional charge for steep roof - 7/12 to 9/12 slope | 1.00 SQ | 37.87 | 0.00 | 37.87 | (0.00) | 37.87 |
| 6. Remove Additional charge for high roof (2 stories or greater) | 1.00 SQ | 4.56 | 0.00 | 4.56 | (0.00) | 4.56 |
| 7. Additional charge for high roof (2 stories or greater) | 1.00 SQ | 16.72 | 0.00 | 16.72 | (0.00) | 16.72 |
| **Totals: Roof1** | | | **1.10** | **243.71** | **59.91** | **183.80** |
| **Total: Roof** | | | **1.10** | **243.71** | **59.91** | **183.80** |

### Level 2

Exhibit A



**Auto Club Group Insurance Company**

1 Auto Club Group Drive
Dearborn MI 48126



| Bedroom two | | | | | Height: 8' |
|---|---|---|---|---|---|

| | | |
|---|---|---|
| 401.98 SF Walls | | 146.81 SF Ceiling |
| 548.80 SF Walls & Ceiling | | 146.81 SF Floor |
| 16.31 SY Flooring | | 50.25 LF Floor Perimeter |
| 50.25 LF Ceil. Perimeter | | |

| | | | |
|---|---|---|---|
| Door | 2' 6" X 6' 8" | | Opens into Exterior |
| Door | 2' 4 11/16" X 6' 8" | | Opens into Exterior |
| Door | 2' 6" X 6' 8" | | Opens into Exterior |
| Window | 5' X 4' | | Opens into Exterior |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 8. R&R 5/8" drywall - hung, taped, floated, ready for paint | 16.00 SF | 2.36 | 0.67 | 38.43 | (2.55) | 35.88 |
| 9. R&R Blown-in insulation - 14" depth - R38 | 16.00 SF | 2.11 | 1.04 | 34.80 | (2.32) | 32.48 |
| 10. Seal the surface area w/PVA primer - one coat | 18.00 SF | 0.55 | 0.08 | 9.98 | (6.65) | 3.33 |
| 11. Paint the walls and ceiling - one coat | 548.80 SF | 0.60 | 4.68 | 333.96 | (222.64) | 111.32 |
| 12. Contents - move out then reset | 1.00 EA | 49.75 | 0.00 | 49.75 | (0.00) | 49.75 |
| 13. Floor protection - plastic and tape - 10 mil | 146.81 SF | 0.28 | 1.25 | 42.36 | (0.00) | 42.36 |
| 14. Mask and cover light fixture | 1.00 EA | 12.84 | 0.05 | 12.89 | (0.00) | 12.89 |
| 15. Final cleaning - construction - Residential | 146.81 SF | 0.21 | 0.00 | 30.83 | (0.00) | 30.83 |
| **Totals: Bedroom two** | | | 7.77 | 553.00 | 234.16 | 318.84 |



| Master bathroom | | | | | Height: 8' |
|---|---|---|---|---|---|

| | | |
|---|---|---|
| 409.57 SF Walls | | 127.36 SF Ceiling |
| 536.94 SF Walls & Ceiling | | 127.36 SF Floor |
| 14.15 SY Flooring | | 51.20 LF Floor Perimeter |
| 51.20 LF Ceil. Perimeter | | |

| | | | |
|---|---|---|---|
| Door | 2' 6" X 6' 8" | | Opens into Exterior |
| Window | 4' 9 7/8" X 4' | | Opens into Exterior |
| Door | 1' 10 3/4" X 6' 8" | | Opens into Exterior |
| Window | 1' 7 15/16" X 4' | | Opens into Exterior |
| Door | 1' 4 5/8" X 6' 8" | | Opens into Exterior |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 16. R&R 5/8" drywall - hung, taped, floated, ready for paint | 4.00 SF | 2.36 | 0.17 | 9.61 | (0.64) | 8.97 |
| 17. R&R Blown-in insulation - 14" depth - R38 | 4.00 SF | 2.11 | 0.26 | 8.70 | (0.58) | 8.12 |
| 18. Seal the surface area w/PVA primer - one coat | 6.00 SF | 0.55 | 0.03 | 3.33 | (2.22) | 1.11 |

 **Auto Club Group Insurance Company**

1 Auto Club Group Drive
Dearborn MI 48126

**CONTINUED - Master bathroom**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 19. Paint the walls and ceiling - one coat | 536.94 SF | 0.60 | 4.58 | 326.74 | (217.82) | 108.92 |
| 20. Contents - move out then reset | 1.00 EA | 49.75 | 0.00 | 49.75 | (0.00) | 49.75 |
| 21. Mask and cover light fixture | 2.00 EA | 12.84 | 0.10 | 25.78 | (0.00) | 25.78 |
| 22. Floor protection - plastic and tape - 10 mil | 127.36 SF | 0.28 | 1.09 | 36.75 | (0.00) | 36.75 |
| 23. Final cleaning - construction - Residential | 127.36 SF | 0.21 | 0.00 | 26.75 | (0.00) | 26.75 |
| **Totals: Master bathroom** | | | 6.23 | 487.41 | 221.26 | 266.15 |

| | | | | | | |
|---|---|---|---|---|---|---|
| **Total: Level 2** | | | 14.00 | 1,040.41 | 455.42 | 584.99 |

**Main Level**

**Family room eat in kitchen**          Height: 8'

| | |
|---|---|
| 1106.53 SF Walls | 668.73 SF Ceiling |
| 1775.25 SF Walls & Ceiling | 668.73 SF Floor |
| 74.30 SY Flooring | 137.89 LF Floor Perimeter |
| 140.46 LF Ceil. Perimeter | |

| Door | 2' 5 1/8" X 6' 8" | Opens into ROOM2 |
|---|---|---|
| Door | 2' 7 1/4" X 6' 8" | Opens into GARAGE |
| Door | 2' 3/8" X 6' 8" | Opens into Exterior |
| Missing Wall | 3' X 8' | Opens into STAIRS |
| Missing Wall - Goes to Floor | 2' 6 15/16" X 6' 8" | Opens into Exterior |
| Door | 1' 3 9/16" X 6' 8" | Opens into ROOM3 |
| Window | 2' 8 1/4" X 4' | Opens into Exterior |
| Window | 2' 6 5/8" X 4' | Opens into Exterior |
| Window | 2' 5 15/16" X 4' | Opens into Exterior |
| Window | 2' 6 5/16" X 4' | Opens into Exterior |
| Door | 2' 7 7/8" X 6' 8" | Opens into Exterior |
| Window | 4' 11 9/16" X 4' | Opens into Exterior |
| Window | 5' X 4' | Opens into Exterior |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 24. Seal the surface area w/PVA primer - one coat | 16.00 SF | 0.55 | 0.07 | 8.87 | (5.92) | 2.95 |
| 25. Paint the ceiling - one coat | 668.73 SF | 0.60 | 5.70 | 406.94 | (271.29) | 135.65 |

QUASAR_ALEXANDER                                11/6/2020         Page: 4

Exhibit A

 **Auto Club Group Insurance Company**

1 Auto Club Group Drive
Dearborn MI 48126

### CONTINUED - Family room eat in kitchen

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 26. Contents - move out then reset | 1.00 EA | 49.75 | 0.00 | 49.75 | (0.00) | 49.75 |
| 27. Floor protection - plastic and tape - 10 mil | 668.73 SF | 0.28 | 5.70 | 192.94 | (0.00) | 192.94 |
| 28. Mask and cover large light fixture | 1.00 EA | 17.72 | 0.05 | 17.77 | (0.00) | 17.77 |
| 29. Final cleaning - construction - Residential | 668.73 SF | 0.21 | 0.00 | 140.43 | (0.00) | 140.43 |
| **Totals: Family room eat in kitchen** | | | **11.52** | **816.70** | **277.21** | **539.49** |

| | | | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| **Total: Main Level** | | | **11.52** | **816.70** | **277.21** | **539.49** |
| **Total: SKETCH1** | | | **26.62** | **2,100.82** | **792.54** | **1,308.28** |

**Labor Minimums Applied**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 30. Roofing labor minimum* | 1.00 EA | 235.60 | 0.00 | 235.60 | (0.00) | 235.60 |
| **Totals: Labor Minimums Applied** | | | **0.00** | **235.60** | **0.00** | **235.60** |
| **Line Item Totals: QUASAR_ALEXANDER** | | | **26.62** | **2,481.63** | **792.54** | **1,689.09** |

## Grand Total Areas:

| | | | | | |
|---|---|---|---|---|---|
| 3,036.38 | SF Walls | 1,406.91 | SF Ceiling | 4,443.28 | SF Walls and Ceiling |
| 1,426.77 | SF Floor | 158.53 | SY Flooring | 373.29 | LF Floor Perimeter |
| 0.00 | SF Long Wall | 0.00 | SF Short Wall | 387.01 | LF Ceil. Perimeter |
| | | | | | |
| 1,426.77 | Floor Area | 1,514.81 | Total Area | 2,689.82 | Interior Wall Area |
| 2,117.92 | Exterior Wall Area | 237.47 | Exterior Perimeter of Walls | | |
| | | | | | |
| 2,247.17 | Surface Area | 22.47 | Number of Squares | 198.31 | Total Perimeter Length |
| 9.04 | Total Ridge Length | 163.47 | Total Hip Length | | |

Exhibit A

 **Auto Club Group Insurance Company**

1 Auto Club Group Drive
Dearborn MI 48126

## Summary for HO Cvg A -- Dwelling

| | |
|---|---:|
| Line Item Total | 2,455.01 |
| Material Sales Tax | 26.62 |
| **Replacement Cost Value** | **$2,481.63** |
| Less Depreciation | (792.54) |
| **Actual Cash Value** | **$1,689.09** |
| Less Deductible            [Full Deductible = 2,500.00] | (1,689.09) |
| **Net Claim** | **$0.00** |
| Total Depreciation | 792.54 |
| Less Residual Deductible   [Full Residual Deductible = 810.91] | (792.54) |
| Total Recoverable Depreciation | 0.00 |
| **Net Claim if Depreciation is Recovered** | **$0.00** |

_____

Hesley Valembrun

QUASAR_ALEXANDER                                    11/6/2020          Page: 6

Exhibit A



**Auto Club Group Insurance Company**

1 Auto Club Group Drive
Dearborn MI 48126

## Recap of Taxes

|  | Material Sales Tax (7.75%) | Storage Rental Tax (7.75%) | Local Food Tax (3.75%) |
|---|---|---|---|
| **Line Items** | 26.62 | 0.00 | 0.00 |
| **Total** | **26.62** | **0.00** | **0.00** |

Exhibit A

 **Auto Club Group Insurance Company**

1 Auto Club Group Drive
Dearborn MI 48126

## Recap by Room

| | | |
|---|---:|---:|
| **Estimate: QUASAR_ALEXANDER** | 145.21 | 5.91% |
| **Area: SKETCH1** | | |
| **Area: Roof** | | |
| Roof1 | 242.61 | 9.88% |
| Area Subtotal:  Roof | 242.61 | 9.88% |
| **Area: Level 2** | | |
| Bedroom two | 545.23 | 22.21% |
| Master bathroom | 481.18 | 19.60% |
| Area Subtotal:  Level 2 | 1,026.41 | 41.81% |
| **Area: Main Level** | | |
| Family room eat in kitchen | 805.18 | 32.80% |
| Area Subtotal:  Main Level | 805.18 | 32.80% |
| Area Subtotal:  SKETCH1 | 2,074.20 | 84.49% |
| Labor Minimums Applied | 235.60 | 9.60% |
| **Subtotal of Areas** | 2,455.01 | 100.00% |
| **Total** | 2,455.01 | 100.00% |

Exhibit A



**Auto Club Group Insurance Company**

1 Auto Club Group Drive
Dearborn MI 48126

### Recap by Category with Depreciation

| Items | RCV | Deprec. | ACV |
|---|---|---|---|
| CLEANING | 198.01 | | 198.01 |
| CONTENT MANIPULATION | 149.25 | | 149.25 |
| GENERAL DEMOLITION | 240.52 | 1.73 | 238.79 |
| DRYWALL | 39.80 | 2.65 | 37.15 |
| INSULATION | 23.60 | 1.57 | 22.03 |
| PAINTING | 1,394.93 | 716.45 | 678.48 |
| ROOFING | 408.90 | 59.36 | 349.54 |
| Subtotal | 2,455.01 | 781.76 | 1,673.25 |
| Material Sales Tax | 26.62 | 10.78 | 15.84 |
| Total | 2,481.63 | 792.54 | 1,689.09 |

Exhibit A



Main Level

Page: 10

11/6/2020

Main Level

Exhibit A

QUASAR_ALEXANDER

Level 2

Page: 11

11/6/2020

N ⇐

Master bathroom

Closet

Bedroom two

12' 7"

11' 11"

3' 11"

3' 11"

3' 5"

3' 8"

3'

2' 11"

3' 3"

2' 6"

9' 6"

2' 5"

2' 1"

2' 2"

2' 7"

7' 10"

8' 4"

10' 1"

2' 4"

8"

1' 5"

7' 7"

11' 8"

11'

14' 9"

3' 9"

QUASAR_ALEXANDER

Exhibit A

Roof

Page: 12

11/6/2020

N ⇦

F4(D)

F1(A)

F2(B)

F3(C)

F7(C)

Roof2 (1)

Roof3 (2)

Roof4

21' 9"

21' 9"

22' 11"

22' 11"

47' 6"

43' 6"

18' 5"

15' 4"

14' 6"

29"

15' 4"

14' 6"

20' 4"

21' 1"

20' 6"

21' 1" A

1' 4"

1' 1"

2' 4" 1' 10"

4' 11"

1' 10" 2' 1"

6' 9"

Roof

QUASAR_ALEXANDER

Exhibit A

# EXHIBIT D



**HUGGINS** LAW FIRM

Michael D. Turner, Esq.
110 Norcross Street
Roswell, GA 30075
mdturner@lawhuggins.com
(770) 913-6229

August 8, 2022

MemberSelect Insurance Company
Andy Jadlos
The Auto Club Group
Claim Department
P.O. Box 8001
Royal Oak, MI 48068

**Sent Via email:**
atjadlos@acg.aaa.com

Re:   Named Insured(s):   Quasar Alexander
Policy Number:   HOM700121987
Claim Number:   40131151 and 401313188
Date of Loss:   October 26, 2020 and October 29, 2020

To Whom it May Concern:

I have been retained by Quasar Alexander ("Your Insured") to represent them regarding the above referenced property insurance claim. All further communication regarding this claim should be directed to my office.

Please also accept this letter as a formal demand for a **certified copy of the relevant insurance policy, to include the original policy, any renewals, and any endorsements.** We also request a copy of any and all repair estimates drafted to date, **as well as a payment sheet or payment log detailing all insurance proceeds issued to date for this claim.**

My client has complied with all conditions contained in the insurance policy. My client is at a loss as to why MemberSelect Insurance Company ("MemberSelect") has not afforded the proper coverage under the applicable policy. This lack of good faith has forced Your Insured to retain my legal services in order to fairly settle their claim. It is our belief that MemberSelect has violated the Unfair Claims Settlement Practice Act pursuant to O.C.G.A. § 33-6-34 and has breached the insurance policy.

Bad faith claims handling triggers additional liability on your part under O.C.G.A. § 33-4-6 that includes the amount of the claim, plus a penalty of an additional fifty percent (50%) of the value of the claim and reasonable attorneys' fees and costs.

Therefore, per the enclosed spreadsheets of damages to Your Insured's property, we are hereby making formal demand that you settle the above claim for the sum of **$259,898.66, less previous payments and the applicable deductible. This includes $113,533.91 less prior payments and the deductible for the October 26, 2020 claim, and $146,364.75 less prior payments and the deductible for the October 29, 2020 claim.** The invoice & estimate of

To: MemberSelect Insurance Company
Client: Quasar Alexander
August 8, 2022
Page **2** of **2**

damages is attached for your review. This demand is being made pursuant to O.C.G.A. § 33-4-6, and you have sixty (60) days in which to make payment on this claim or be subject to a lawsuit containing a claim for breach of contract and bad faith seeking all compensation allowed by law, including attorneys' fees and a penalty of fifty percent (50%) of the loss amount.

This letter constitutes a "proper demand" for payment under O.C.G.A. § 33-4-6. If you contend that a proper demand has not been made, you must immediately notify us of the reasons for such allegation. Otherwise, it will be assumed you agree this letter constitutes a proper demand.

The purpose of this correspondence is to encourage MemberSelect to resolve Your Insured's claim in a fair and equitable manner in hopes of avoiding litigation. If you fail to respond to this letter with an offer of settlement that is acceptable to Your Insured, we will have no alternative other than recommending to Your Insured that a lawsuit be filed against you.

Payment must be received in my office within sixty (60) days of your receipt of this letter in order to avoid a suit for bad faith penalties and attorney's fees. Any check issued should list Huggins Law Firm, LLC as sole payee. Any objection to these payment terms shall be submitted in writing to Huggins Law Firm, LLC within 10 days of receipt of this letter.

I look forward to working with you to resolve this matter quickly and amicably. Please feel free to contact me should you have any questions regarding this formal 60-day demand. Should you have any questions or concerns, please reach out to me at mdturner@lawhuggins.com or by phone at (770) 913-6229.

Sincerely,

Michael D. Turner, Esq.
Attorney at Law

MDT/aak
Encl.

Exhibit A



## Noble Public Adjusting Group

| | | | | |
|---|---|---|---|---|
| Insured: | Quasar Alexander | | | |
| Property: | 3294 Sequoia Avenue | | | |
| | Atlanta, GA 30349 | | | |

| | | | | |
|---|---|---|---|---|
| Claim Rep.: | Noble Public Adjusting Group | | Business: | (850) 249-6972 |
| Business: | 107 Amar Place, Suite 103 | | E-mail: | contact@noblepagroup.com |
| | Panama City Beach, FL 32413 | | | |

| | | | | |
|---|---|---|---|---|
| Estimator: | Noble Public Adjusting Group | | Business: | (850) 249-6972 |
| Business: | 107 Amar Place, Suite 103 | | E-mail: | contact@noblepagroup.com |
| | Panama City Beach, FL 32413 | | | |

| | |
|---|---|
| Reference: | |
| Company: | AAA Insurance |

**Claim Number:** HOM700121987    **Policy Number:** 40131151    **Type of Loss:** Water Damage

| | | | |
|---|---|---|---|
| Date Contacted: | 11/27/2020 1:00 AM | | |
| Date of Loss: | 10/26/2020 1:00 AM | Date Received: | 11/12/2020 1:00 AM |
| Date Inspected: | 12/2/2020 1:00 AM | Date Entered: | 12/3/2020 9:00 AM |
| Date Est. Completed: | 12/3/2020 7:07 PM | | |

| | |
|---|---|
| Price List: | GAAT8X_DEC20 |
| | Restoration/Service/Remodel |
| Estimate: | C1414-ALEXANDER-SC |

*The following is our estimate for the repair of the damage to your property. Since this quotation will be used for insurance claim submittal purposes, we have used Xactimate which is an insurance industry standard. The prices are calculated based on local criteria and are deemed to the most accurate figures available at the time of this estimate. The estimates are hereby based on seen, disclosed, or otherwise obvious damage. Unseen, undisclosed or otherwise not obvious conditions, if discovered later or during repairs, will be considered not included. If discovered, any necessary additional repairs will be submitted for supplemental coverage, based on Xactimate and/or market value pricing.*

Exhibit A

 **Noble Public Adjusting Group**

## C1414-ALEXANDER-SC

### Dwelling Exterior - Elevation



**Left Elevation**                                                          **Height: 8'**

| 1,229.33 SF Walls | 1,010.00 SF Ceiling |
| 2,239.33 SF Walls & Ceiling | 1,010.00 SF Floor |
| 112.22 SY Flooring | 153.67 LF Floor Perimeter |
| 153.67 LF Ceil. Perimeter | |

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| **Clean-Pressure wash:** | | | | | | | |
| 1. Clean with pressure/chemical spray | 1,010.00 SF | | 0.00 | 0.28 | 0.81 | 56.72 | 340.33 |
| Pressure wash exterior once construction is complete | | | | | | | |
| Totals: Left Elevation | | | | | 0.81 | 56.72 | 340.33 |



**Right Elevation**                                                        **Height: 8'**

| 1,246.67 SF Walls | 1,078.50 SF Ceiling |
| 2,325.17 SF Walls & Ceiling | 1,078.50 SF Floor |
| 119.83 SY Flooring | 155.83 LF Floor Perimeter |
| 155.83 LF Ceil. Perimeter | |

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| **Clean-Pressure wash:** | | | | | | | |
| 2. Clean with pressure/chemical spray | 1,078.50 SF | | 0.00 | 0.28 | 0.86 | 60.58 | 363.42 |
| Pressure wash after construction is complete | | | | | | | |
| Totals: Right Elevation | | | | | 0.86 | 60.58 | 363.42 |

**Rear Elevation**                                                         **Height: 8'**

| 1,006.67 SF Walls | 750.67 SF Ceiling |
| 1,757.33 SF Walls & Ceiling | 750.67 SF Floor |
| 83.41 SY Flooring | 125.83 LF Floor Perimeter |
| 125.83 LF Ceil. Perimeter | |

Exhibit A



**Noble Public Adjusting Group**

## CONTINUED - Rear Elevation

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| **Clean-Pressure wash:** | | | | | | | |
| 3. Clean with pressure/chemical spray | 750.67 SF | | 0.00 | 0.28 | 0.60 | 42.16 | 252.95 |
| Pressure wash after construction is complete | | | | | | | |
| Totals: Rear Elevation | | | | | 0.60 | 42.16 | 252.95 |
| Total: Dwelling Exterior - Elevation | | | | | 2.27 | 159.46 | 956.70 |

### Front Elevation                                                    Height: 8'



| | |
|---|---|
| 1,030.67 SF Walls | 816.11 SF Ceiling |
| 1,846.78 SF Walls & Ceiling | 816.11 SF Floor |
| 90.68 SY Flooring | 128.83 LF Floor Perimeter |
| 128.83 LF Ceil. Perimeter | |

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| **Clean-Pressure wash:** | | | | | | | |
| 4. Clean with pressure/chemical spray | 816.11 SF | | 0.00 | 0.28 | 0.65 | 45.84 | 275.00 |
| Pressure wash after construction is complete | | | | | | | |
| Totals: Front Elevation | | | | | 0.65 | 45.84 | 275.00 |

## Dwelling First Floor

### Living Room                                                      Height: 8'

| | |
|---|---|
| 424.67 SF Walls | 295.56 SF Ceiling |
| 720.22 SF Walls & Ceiling | 295.56 SF Floor |
| 32.84 SY Flooring | 53.08 LF Floor Perimeter |
| 53.08 LF Ceil. Perimeter | |

| Missing Wall | 7' 11" X 8' | Opens into FOYER_ENTRY |
|---|---|---|
| Missing Wall | 9' 2" X 8' | Opens into BAR_AREA__SI |

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| Flooring: | | | | | | | |
| 5. Carpet - High grade | 295.56 SF | | 0.28 | 0.00 | 0.00 | 16.56 | 99.32 |
| 6. Carpet - High grade | 339.89 SF | | 0.00 | 4.92 | 118.28 | 358.12 | 2,148.66 |

C1414-ALEXANDER-SC                                    12/3/2020        Page: 3

Exhibit A



**Noble Public Adjusting Group**

## CONTINUED - Living Room

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 15 % waste added for Carpet - High grade. | | | | | | | |
| 7a.  Carpet pad - High grade | 295.56 SF | | 0.12 | 0.00 | 0.00 | 7.10 | 42.57 |
| 7b.  Carpet pad - High grade | 295.56 SF | | 0.00 | 0.72 | 15.13 | 45.58 | 273.51 |
| 8a.  Baseboard - 2 1/4" | 53.08 LF | | 0.37 | 0.00 | 0.00 | 3.92 | 23.56 |
| 8b.  Baseboard - 2 1/4" | 53.08 LF | | 0.00 | 2.59 | 3.91 | 28.28 | 169.67 |
| Painting: | | | | | | | |
| 9.  Base cap or shoe / Quarter round - Detach & reset | 50.00 LF | | 0.00 | 1.39 | 0.04 | 13.90 | 83.44 |
| 10.  Seal & paint base shoe or quarter round | 75.00 LF | | 0.00 | 0.75 | 0.60 | 11.38 | 68.23 |
| 11.  Paint door/window trim & jamb - 2 coats (per side) | 2.00 EA | | 0.00 | 29.16 | 0.66 | 11.80 | 70.78 |
| 12.  Paint baseboard - two coats | 75.00 LF | | 0.00 | 1.35 | 0.72 | 20.40 | 122.37 |
| Fixtures: | | | | | | | |
| 13.  Heat/AC register - Mechanically attached - Detach & reset | 1.00 EA | | 0.00 | 13.39 | 0.00 | 2.68 | 16.07 |
| 14.  Smoke detector | 1.00 EA | 43.18 | 0.00 | 0.00 | 0.00 | 8.64 | 51.82 |
| 15.  Window drapery - hardware - Detach & reset | 2.00 EA | | 0.00 | 27.22 | 0.00 | 10.88 | 65.32 |
| 16.  Remove and rehang drapery - per hour | 2.00 HR | | 0.00 | 49.68 | 0.00 | 19.88 | 119.24 |
| **Total hours are not just the removal and reset but also the storage and packaging of the drapes during the rebuild process.** | | | | | | | |
| 17.  Window blind - horizontal or vertical - Detach & reset | 2.00 EA | | 0.00 | 27.22 | 0.00 | 10.88 | 65.32 |
| **Painting of the ceiling:** | | | | | | | |
| 18.  Mask and prep for paint - tape only (per LF) | 17.00 LF | | 0.00 | 0.57 | 0.05 | 1.96 | 11.70 |
| **To mask wall paneling before painting.** | | | | | | | |
| 19.  Seal the ceiling w/latex based stain blocker - one coat | 295.56 SF | | 0.00 | 0.58 | 1.66 | 34.62 | 207.70 |
| 20.  Paint the ceiling - two coats | 295.56 SF | | 0.00 | 0.90 | 4.97 | 54.20 | 325.17 |
| Ceiling tiles were painted. | | | | | | | |
| **General Cleaning:** | | | | | | | |
| 21.  Deodorize building - Hot thermal fog | 4,728.89 CF | | 0.00 | 0.06 | 0.00 | 56.74 | 340.47 |
| **(C+F+W)*2** | | | | | | | |

**Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.   Fogging is recommended in addition to spray application to ensure disinfectant is applied to hard to reach areas.**

| Totals: Living Room | | | | | 146.02 | 717.52 | 4,304.92 |
|---|---|---|---|---|---|---|---|

Exhibit A

 **Noble Public Adjusting Group**



| Kitchen | | | | | | Height: 8' |
|---|---|---|---|---|---|---|
| 291.33 SF Walls | | | | 148.02 SF Ceiling | | |
| 439.35 SF Walls & Ceiling | | | | 148.02 SF Floor | | |
| 16.45 SY Flooring | | | | 36.42 LF Floor Perimeter | | |
| 36.42 LF Ceil. Perimeter | | | | | | |

| Missing Wall | | 12' 3" X 8' | | Opens into DINING_ROOM | | |
|---|---|---|---|---|---|---|
| **DESCRIPTION** | **QTY** | **RESET** | **REMOVE** | **REPLACE** | **TAX** | **O&P** | **TOTAL** |

**General Cleaning:**

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 22. Deodorize building - Hot thermal fog | 2,368.33 CF | | 0.00 | 0.06 | 0.00 | 28.42 | 170.52 |

(C+F+W)*2

Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.   Fogging is recommended in addition to spray application to ensure disinfectant is applied to hard to reach areas.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 23. Apply plant-based anti-microbial agent to more than the ceiling | 1,174.75 SF | | 0.00 | 0.31 | 4.70 | 73.78 | 442.65 |

(C+F+W)*2

Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.

C+F+W

Wipe surfaces after application of disinfectant.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 24. HEPA Vacuuming - Detailed - (PER SF) | 587.37 SF | | 0.00 | 0.79 | 0.00 | 92.80 | 556.82 |

| Totals: Kitchen | | | | | 4.70 | 195.00 | 1,169.99 |
|---|---|---|---|---|---|---|---|

| Foyer/Entry | | | | | | Height: 17' |
|---|---|---|---|---|---|---|
| 517.50 SF Walls | | | | 71.91 SF Ceiling | | |
| 589.41 SF Walls & Ceiling | | | | 71.91 SF Floor | | |
| 7.99 SY Flooring | | | | 26.25 LF Floor Perimeter | | |
| 34.17 LF Ceil. Perimeter | | | | | | |

| Missing Wall | | 7' 11" X 17' | | Opens into LIVING_ROOM | | |
|---|---|---|---|---|---|---|
| **DESCRIPTION** | **QTY** | **RESET** | **REMOVE** | **REPLACE** | **TAX** | **O&P** | **TOTAL** |

Flooring:

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 25a. Pre-finished solid wood flooring - Premium grade | 71.91 SF | | 2.40 | 0.00 | 0.00 | 34.52 | 207.10 |
| 25b. Pre-finished solid wood flooring - Premium grade | 71.91 SF | | 0.00 | 13.81 | 65.12 | 211.64 | 1,269.84 |

Exhibit A

 **Noble Public Adjusting Group**

## CONTINUED - Foyer/Entry

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 26a. Baseboard - 2 1/4" | 26.25 LF | | 0.37 | 0.00 | 0.00 | 1.94 | 11.65 |
| 26b. Baseboard - 2 1/4" | 26.25 LF | | 0.00 | 2.59 | 1.93 | 13.98 | 83.90 |
| Painting: | | | | | | | |
| 27. Base cap or shoe / Quarter round - Detach & reset | 50.00 LF | | 0.00 | 1.39 | 0.04 | 13.90 | 83.44 |
| 28. Seal & paint base shoe or quarter round | 75.00 LF | | 0.00 | 0.75 | 0.60 | 11.38 | 68.23 |
| 29. Paint door/window trim & jamb - 2 coats (per side) | 2.00 EA | | 0.00 | 29.16 | 0.66 | 11.80 | 70.78 |
| 30. Paint baseboard - two coats | 75.00 LF | | 0.00 | 1.35 | 0.72 | 20.40 | 122.37 |
| Fixtures: | | | | | | | |
| 31. Heat/AC register - Mechanically attached - Detach & reset | 1.00 EA | | 0.00 | 13.39 | 0.00 | 2.68 | 16.07 |
| 32. Smoke detector | 1.00 EA | 43.18 | 0.00 | 0.00 | 0.00 | 8.64 | 51.82 |
| 33. Window drapery - hardware - Detach & reset | 2.00 EA | | 0.00 | 27.22 | 0.00 | 10.88 | 65.32 |
| 34. Remove and rehang drapery - per hour | 2.00 HR | | 0.00 | 49.68 | 0.00 | 19.88 | 119.24 |
| **Total hours are not just the removal and reset but also the storage and packaging of the drapes during the rebuild process.** | | | | | | | |
| 35. Window blind - horizontal or vertical - Detach & reset | 2.00 EA | | 0.00 | 27.22 | 0.00 | 10.88 | 65.32 |
| **Painting of the ceiling:** | | | | | | | |
| 36. Mask and prep for paint - tape only (per LF) | 17.00 LF | | 0.00 | 0.57 | 0.05 | 1.96 | 11.70 |
| **To mask wall paneling before painting.** | | | | | | | |
| 37. Seal the ceiling w/latex based stain blocker - one coat | 71.91 SF | | 0.00 | 0.58 | 0.40 | 8.42 | 50.53 |
| 38. Paint the ceiling - two coats | 71.91 SF | | 0.00 | 0.90 | 1.21 | 13.18 | 79.11 |
| Ceiling tiles were painted. | | | | | | | |
| **General Cleaning:** | | | | | | | |
| 39. Clean more than the ceiling - Heavy | 1,322.64 SF | | 0.00 | 0.66 | 1.06 | 174.80 | 1,048.80 |
| C+F+W | | | | | | | |

**Clean surfaces before application of disinfectant.**

**The CDC states "If surfaces are dirty, they should be cleaned using a detergent or soap and water prior to disinfection."**

| 40. Apply plant-based anti-microbial agent to more than the ceiling | 1,322.64 SF | | 0.00 | 0.31 | 5.29 | 83.06 | 498.37 |
|---|---|---|---|---|---|---|---|
| (C+F+W)*2 | | | | | | | |

**Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.**

Exhibit A



**Noble Public Adjusting Group**

### CONTINUED - Foyer/Entry

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| **C+F+W** | | | | | | | |
| **Wipe surfaces after application of disinfectant.** | | | | | | | |
| 41. HEPA Vacuuming - Detailed - (PER SF) | 661.32 SF | | 0.00 | 0.79 | 0.00 | 104.48 | 626.92 |
| 42. Deodorize building - Hot thermal fog | 2,444.93 CF | | 0.00 | 0.06 | 0.00 | 29.34 | 176.04 |
| **(C+F+W)*2** | | | | | | | |

Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.   Fogging is recommended in addition to spray application to ensure disinfectant is applied to hard to reach areas.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Totals: Foyer/Entry | | | | | 77.08 | 787.76 | 4,726.55 |



**Bar Area/ Sitting Area**          **Height: 8'**

| | |
|---|---|
| 538.67 SF Walls | 420.78 SF Ceiling |
| 959.45 SF Walls & Ceiling | 420.78 SF Floor |
| 46.75 SY Flooring | 67.33 LF Floor Perimeter |
| 67.33 LF Ceil. Perimeter | |

| Missing Wall | 9' 2" X 8' | Opens into LIVING_ROOM |
|---|---|---|
| Missing Wall | 6' 2" X 8' | Opens into DINING_ROOM |

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| **1/2 inch drywall:** | | | | | | | |
| 43a. 1/2" drywall - hung, taped, heavy texture, ready for paint | 959.45 SF | | 0.37 | 0.00 | 0.00 | 71.00 | 426.00 |
| 43b. 1/2" drywall - hung, taped, heavy texture, ready for paint | 959.45 SF | | 0.00 | 2.27 | 50.66 | 445.74 | 2,674.35 |
| 44. Batt insulation - 4" - R13 - paper faced | 134.67 SF | | 0.00 | 0.77 | 5.39 | 21.82 | 130.91 |
| 45a. Crown molding - 2 1/4" | 67.33 LF | | 0.57 | 0.00 | 0.00 | 7.68 | 46.06 |
| 45b. Crown molding - 2 1/4" | 67.33 LF | | 0.00 | 3.24 | 5.60 | 44.76 | 268.51 |
| Flooring: | | | | | | | |
| 46. Carpet - High grade | 420.78 SF | | 0.28 | 0.00 | 0.00 | 23.56 | 141.38 |
| 47. Carpet - High grade | 483.90 SF | | 0.00 | 4.92 | 168.40 | 509.84 | 3,059.03 |
| 15 % waste added for Carpet - High grade. | | | | | | | |
| 48a. Carpet pad - High grade | 420.78 SF | | 0.12 | 0.00 | 0.00 | 10.10 | 60.59 |
| 48b. Carpet pad - High grade | 420.78 SF | | 0.00 | 0.72 | 21.54 | 64.90 | 389.40 |
| 49a. Baseboard - 2 1/4" | 67.33 LF | | 0.37 | 0.00 | 0.00 | 4.98 | 29.89 |

Exhibit A



**Noble Public Adjusting Group**

### CONTINUED - Bar Area/ Sitting Area

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 49b.  Baseboard - 2 1/4" | 67.33 LF | | 0.00 | 2.59 | 4.96 | 35.88 | 215.22 |
| Painting: | | | | | | | |
| 50.  Base cap or shoe / Quarter round - Detach & reset | 50.00 LF | | 0.00 | 1.39 | 0.04 | 13.90 | 83.44 |
| 51.  Seal & paint base shoe or quarter round | 75.00 LF | | 0.00 | 0.75 | 0.60 | 11.38 | 68.23 |
| 52.  Paint door/window trim & jamb - 2 coats (per side) | 2.00 EA | | 0.00 | 29.16 | 0.66 | 11.80 | 70.78 |
| 53.  Paint baseboard - two coats | 75.00 LF | | 0.00 | 1.35 | 0.72 | 20.40 | 122.37 |
| Fixtures: | | | | | | | |
| 54.  Heat/AC register - Mechanically attached - Detach & reset | 1.00 EA | | 0.00 | 13.39 | 0.00 | 2.68 | 16.07 |
| 55.  Smoke detector | 1.00 EA | 43.18 | 0.00 | 0.00 | 0.00 | 8.64 | 51.82 |
| 56.  Window drapery - hardware - Detach & reset | 2.00 EA | | 0.00 | 27.22 | 0.00 | 10.88 | 65.32 |
| 57.  Remove and rehang drapery - per hour | 2.00 HR | | 0.00 | 49.68 | 0.00 | 19.88 | 119.24 |
| **Total hours are not just the removal and reset but also the storage and packaging of the drapes during the rebuild process.** | | | | | | | |
| 58.  Window blind - horizontal or vertical - Detach & reset | 2.00 EA | | 0.00 | 27.22 | 0.00 | 10.88 | 65.32 |
| **Painting of the ceiling:** | | | | | | | |
| 59.  Mask and prep for paint - tape only (per LF) | 17.00 LF | | 0.00 | 0.57 | 0.05 | 1.96 | 11.70 |
| **To mask wall paneling before painting.** | | | | | | | |
| 60.  Seal the ceiling w/latex based stain blocker - one coat | 420.78 SF | | 0.00 | 0.58 | 2.36 | 49.30 | 295.71 |
| 61.  Paint the ceiling - two coats | 420.78 SF | | 0.00 | 0.90 | 7.07 | 77.16 | 462.93 |
| Ceiling tiles were painted. | | | | | | | |
| **General Cleaning:** | | | | | | | |
| 62.  Clean more than the ceiling - Heavy | 2,760.47 SF | | 0.00 | 0.66 | 2.21 | 364.82 | 2,188.94 |
| C+F+W | | | | | | | |

Clean surfaces before application of disinfectant.

The CDC states "If surfaces are dirty, they should be cleaned using a detergent or soap and water prior to disinfection."

| 63.  Apply plant-based anti-microbial agent to more than the ceiling | 2,760.47 SF | | 0.00 | 0.31 | 11.04 | 173.36 | 1,040.15 |
| (C+F+W)*2 | | | | | | | |

**Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.**
**C+F+W**

Wipe surfaces after application of disinfectant.

Exhibit A

 **Noble Public Adjusting Group**

### CONTINUED - Bar Area/ Sitting Area

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 64. HEPA Vacuuming - Detailed - (PER SF) | 1,380.24 SF | | 0.00 | 0.79 | 0.00 | 218.08 | 1,308.47 |
| 65. Deodorize building - Hot thermal fog | 6,732.56 CF | | 0.00 | 0.06 | 0.00 | 80.80 | 484.75 |
| (C+F+W)*2 | | | | | | | |

Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.   Fogging is recommended in addition to spray application to ensure disinfectant is applied to hard to reach areas.

| Totals: Bar Area/ Sitting Area | | | | | 281.30 | 2,316.18 | 13,896.58 |
|---|---|---|---|---|---|---|---|



| **Stairs** | | | | | | | **Height: 13'** |
|---|---|---|---|---|---|---|---|

| | | | | | | |
|---|---|---|---|---|---|---|
| 373.49 SF Walls | | | | 80.15 SF Ceiling | | |
| 453.65 SF Walls & Ceiling | | | | 108.74 SF Floor | | |
| 12.08 SY Flooring | | | | 39.43 LF Floor Perimeter | | |
| 38.00 LF Ceil. Perimeter | | | | | | |

| **Missing Wall** | | 4' 10" X 12' 11 15/16" | | **Opens into DINING_ROOM** | | |
|---|---|---|---|---|---|---|

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| **General Cleaning:** | | | | | | | |
| 66. Clean more than the ceiling - Heavy | 1,124.77 SF | | 0.00 | 0.66 | 0.90 | 148.66 | 891.91 |
| C+F+W | | | | | | | |

Clean surfaces before application of disinfectant.

The CDC states "If surfaces are dirty, they should be cleaned using a detergent or soap and water prior to disinfection."

| 67. Apply plant-based anti-microbial agent to more than the ceiling | 1,124.77 SF | | 0.00 | 0.31 | 4.50 | 70.64 | 423.82 |
|---|---|---|---|---|---|---|---|
| (C+F+W)*2 | | | | | | | |

Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.
C+F+W

Wipe surfaces after application of disinfectant.

| 68. HEPA Vacuuming - Detailed - (PER SF) | 562.38 SF | | 0.00 | 0.79 | 0.00 | 88.86 | 533.14 |
|---|---|---|---|---|---|---|---|
| 69. Deodorize building - Hot thermal fog | 1,689.26 CF | | 0.00 | 0.06 | 0.00 | 20.28 | 121.64 |
| (C+F+W)*2 | | | | | | | |

Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.   Fogging is recommended in addition to spray application to ensure disinfectant is applied to hard to reach areas.

Exhibit A



**Noble Public Adjusting Group**

## CONTINUED - Stairs

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| Totals: Stairs | | | | | 5.40 | 328.44 | 1,970.51 |

**Dining Room**                                                   **Height: 8'**

| | | |
|---|---|---|
| 168.67 SF Walls | | 244.29 SF Ceiling |
| 412.96 SF Walls & Ceiling | | 244.29 SF Floor |
| 27.14 SY Flooring | | 21.08 LF Floor Perimeter |
| 21.08 LF Ceil. Perimeter | | |

| Missing Wall | 17' 5" X 8' | Opens into FAMILY_ROOM |
|---|---|---|
| Missing Wall | 12' 3" X 8' | Opens into KITCHEN |
| Missing Wall | 6' 2" X 8' | Opens into BAR_AREA__SI |
| Missing Wall | 4' 10" X 8' | Opens into STAIRS |
| Missing Wall | 4' 1" X 8' | Opens into ROOM2 |

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| **General Cleaning:** | | | | | | | |
| 70. Deodorize building - Hot thermal fog (C+F+W)*2 | 3,908.64 CF | | 0.00 | 0.06 | 0.00 | 46.90 | 281.42 |

Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.   Fogging is recommended in addition to spray application to ensure disinfectant is applied to hard to reach areas.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 71. Apply plant-based anti-microbial agent to more than the ceiling (C+F+W)*2 | 1,314.50 SF | | 0.00 | 0.31 | 5.26 | 82.56 | 495.32 |

Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.

**C+F+W**

Wipe surfaces after application of disinfectant.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 72. HEPA Vacuuming - Detailed - (PER SF) | 657.25 SF | | 0.00 | 0.79 | 0.00 | 103.84 | 623.07 |
| | | | | | | | |
| Totals: Dining Room | | | | | 5.26 | 233.30 | 1,399.81 |

Exhibit A

 **Noble Public Adjusting Group**

| Hallway | | | | | Height: 8' | |
|---|---|---|---|---|---|---|
| 331.33 SF Walls | | | | 93.20 SF Ceiling | | |
| 424.53 SF Walls & Ceiling | | | | 93.20 SF Floor | | |
| 10.36 SY Flooring | | | | 41.42 LF Floor Perimeter | | |
| 41.42 LF Ceil. Perimeter | | | | | | |

| Missing Wall | 4' 1" X 8' | | Opens into DINING_ROOM | | | |
|---|---|---|---|---|---|---|
| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |

**General Cleaning:**

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 73. Deodorize building - Hot thermal fog | 1,491.13 CF | | 0.00 | 0.06 | 0.00 | 17.90 | 107.37 |

**(C+F+W)*2**

Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.   Fogging is recommended in addition to spray application to ensure disinfectant is applied to hard to reach areas.

| 74. Apply plant-based anti-microbial agent to more than the ceiling | 1,035.45 SF | | 0.00 | 0.31 | 4.14 | 65.02 | 390.15 |
|---|---|---|---|---|---|---|---|

**(C+F+W)*2**

Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.

**C+F+W**

Wipe surfaces after application of disinfectant.

| 75. HEPA Vacuuming - Detailed - (PER SF) | 517.72 SF | | 0.00 | 0.79 | 0.00 | 81.80 | 490.80 |
|---|---|---|---|---|---|---|---|

| Totals: Hallway | | | | | 4.14 | 164.72 | 988.32 |
|---|---|---|---|---|---|---|---|

| Total: Dwelling First Floor | | | | | 523.90 | 4,742.92 | 28,456.68 |
|---|---|---|---|---|---|---|---|

| Family Room | | | | | Height: 8' | |
|---|---|---|---|---|---|---|
| 524.66 SF Walls | | | | 419.44 SF Ceiling | | |
| 944.10 SF Walls & Ceiling | | | | 419.44 SF Floor | | |
| 46.60 SY Flooring | | | | 65.58 LF Floor Perimeter | | |
| 65.58 LF Ceil. Perimeter | | | | | | |

| Missing Wall | 17' 5" X 8' | | Opens into DINING_ROOM | | | |
|---|---|---|---|---|---|---|
| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |

**General Cleaning:**

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 76. Deodorize building - Hot thermal fog | 6,711.00 CF | | 0.00 | 0.06 | 0.00 | 80.54 | 483.20 |

C1414-ALEXANDER-SC

12/3/2020

Page: 11

Exhibit A



**Noble Public Adjusting Group**

### CONTINUED - Family Room

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| (C+F+W)*2 | | | | | | | |

Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.   Fogging is recommended in addition to spray application to ensure disinfectant is applied to hard to reach areas.

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 77.  Apply plant-based anti-microbial agent to more than the ceiling | 2,727.07 SF | | 0.00 | 0.31 | 10.91 | 171.26 | 1,027.56 |

(C+F+W)*2

Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.

C+F+W

Wipe surfaces after application of disinfectant.

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 78.  HEPA Vacuuming - Detailed - (PER SF) | 1,363.54 SF | | 0.00 | 0.79 | 0.00 | 215.44 | 1,292.64 |

| Totals:  Family Room | | | | | 10.91 | 467.24 | 2,803.40 |
|---|---|---|---|---|---|---|---|

### Dwelling 2nd floor



**Bedroom 3**                 **Height: 8'**

| | |
|---|---|
| 464.00 SF Walls | 208.00 SF Ceiling |
| 672.00 SF Walls & Ceiling | 208.00 SF Floor |
| 23.11 SY Flooring | 58.00 LF Floor Perimeter |
| 58.00 LF Ceil. Perimeter | |

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| **General Cleaning:** | | | | | | | |
| 79.  Deodorize building - Hot thermal fog | 3,328.00 CF | | 0.00 | 0.06 | 0.00 | 39.94 | 239.62 |

(C+F+W)*2

Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.   Fogging is recommended in addition to spray application to ensure disinfectant is applied to hard to reach areas.

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 80.  Apply plant-based anti-microbial agent to more than the ceiling | 1,760.00 SF | | 0.00 | 0.31 | 7.04 | 110.52 | 663.16 |

(C+F+W)*2

Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.

C+F+W

Wipe surfaces after application of disinfectant.

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 81.  HEPA Vacuuming - Detailed - (PER SF) | 880.00 SF | | 0.00 | 0.79 | 0.00 | 139.04 | 834.24 |

Exhibit A

 **Noble Public Adjusting Group**

## CONTINUED - Bedroom 3

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| Totals: Bedroom 3 | | | | | 7.04 | 289.50 | 1,737.02 |



**Hall Bathroom**               Height: 8'

| 401.33 SF Walls | 153.46 SF Ceiling |
|---|---|
| 554.79 SF Walls & Ceiling | 153.46 SF Floor |
| 17.05 SY Flooring | 50.17 LF Floor Perimeter |
| 50.17 LF Ceil. Perimeter | |

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| **General Cleaning:** | | | | | | | |
| 82. Deodorize building - Hot thermal fog | 2,455.33 CF | | 0.00 | 0.06 | 0.00 | 29.46 | 176.78 |
| (C+F+W)*2 | | | | | | | |

Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.  Fogging is recommended in addition to spray application to ensure disinfectant is applied to hard to reach areas.

| 83. Apply plant-based anti-microbial agent to more than the ceiling | 1,416.50 SF | | 0.00 | 0.31 | 5.67 | 88.96 | 533.75 |
| (C+F+W)*2 | | | | | | | |

Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.

**C+F+W**

Wipe surfaces after application of disinfectant.

| 84. HEPA Vacuuming - Detailed - (PER SF) | 708.25 SF | | 0.00 | 0.79 | 0.00 | 111.90 | 671.42 |

| Totals: Hall Bathroom | | | | | 5.67 | 230.32 | 1,381.95 |



**Bedroom 2**               Height: 8'

| 416.00 SF Walls | 166.75 SF Ceiling |
|---|---|
| 582.75 SF Walls & Ceiling | 166.75 SF Floor |
| 18.53 SY Flooring | 52.00 LF Floor Perimeter |
| 52.00 LF Ceil. Perimeter | |

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| **General Cleaning:** | | | | | | | |

C1414-ALEXANDER-SC           12/3/2020       Page: 13

Exhibit A

 **Noble Public Adjusting Group**

## CONTINUED - Bedroom 2

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 85.  Deodorize building - Hot thermal fog | 2,668.00 CF | | 0.00 | 0.06 | 0.00 | 32.02 | 192.10 |
| (C+F+W)*2 | | | | | | | |

Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.  Fogging is recommended in addition to spray application to ensure disinfectant is applied to hard to reach areas.

| 86.  Apply plant-based anti-microbial agent to more than the ceiling | 1,499.00 SF | | 0.00 | 0.31 | 6.00 | 94.14 | 564.83 |
| (C+F+W)*2 | | | | | | | |

Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.

C+F+W

Wipe surfaces after application of disinfectant.

| 87.  HEPA Vacuuming - Detailed - (PER SF) | 749.50 SF | | 0.00 | 0.79 | 0.00 | 118.42 | 710.53 |

| Totals:  Bedroom 2 | | | | | 6.00 | 244.58 | 1,467.46 |

---

 **Master Bathroom**                                                        **Height: 8'**

434.67 SF Walls              140.95 SF Ceiling
575.62 SF Walls & Ceiling      140.95 SF Floor
15.66 SY Flooring            54.33 LF Floor Perimeter
54.33 LF Ceil. Perimeter

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| **General Cleaning:** | | | | | | | |
| 88.  Deodorize building - Hot thermal fog | 2,272.11 CF | | 0.00 | 0.06 | 0.00 | 27.26 | 163.59 |
| (C+F+W)*2 | | | | | | | |

Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.  Fogging is recommended in addition to spray application to ensure disinfectant is applied to hard to reach areas.

| 89.  Apply plant-based anti-microbial agent to more than the ceiling | 1,433.14 SF | | 0.00 | 0.31 | 5.73 | 90.00 | 540.00 |
| (C+F+W)*2 | | | | | | | |

Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.

C+F+W

Wipe surfaces after application of disinfectant.

| 90.  HEPA Vacuuming - Detailed - (PER SF) | 716.57 SF | | 0.00 | 0.79 | 0.00 | 113.22 | 679.31 |

---

Exhibit A



**Noble Public Adjusting Group**

### CONTINUED - Master Bathroom

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| Totals: Master Bathroom | | | | | 5.73 | 230.48 | 1,382.90 |



**Master Bedroom**                                                                    Height: 8'

| | |
|---|---|
| 781.33 SF Walls | 489.34 SF Ceiling |
| 1,270.67 SF Walls & Ceiling | 489.34 SF Floor |
| 54.37 SY Flooring | 97.67 LF Floor Perimeter |
| 97.67 LF Ceil. Perimeter | |



**Subroom: Master Closet (2)**                                                        Height: 8'

| | |
|---|---|
| 288.00 SF Walls | 72.00 SF Ceiling |
| 360.00 SF Walls & Ceiling | 72.00 SF Floor |
| 8.00 SY Flooring | 36.00 LF Floor Perimeter |
| 36.00 LF Ceil. Perimeter | |



**Subroom: Master Closet (1)**                                                        Height: 8'

| | |
|---|---|
| 141.03 SF Walls | 18.08 SF Ceiling |
| 159.11 SF Walls & Ceiling | 18.08 SF Floor |
| 2.01 SY Flooring | 17.63 LF Floor Perimeter |
| 17.63 LF Ceil. Perimeter | |

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| **General Cleaning:** | | | | | | | |
| 91. Deodorize building - Hot thermal fog | 9,270.77 CF | | 0.00 | 0.06 | 0.00 | 111.26 | 667.51 |
| (C+F+W)*2 | | | | | | | |

Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.   Fogging is recommended in addition to spray application to ensure disinfectant is applied to hard to reach areas.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 92. Apply plant-based anti-microbial agent to more than the ceiling | 4,738.41 SF | | 0.00 | 0.31 | 18.95 | 297.58 | 1,785.44 |
| (C+F+W)*2 | | | | | | | |

Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.

C+F+W

Wipe surfaces after application of disinfectant.

Exhibit A

 **Noble Public Adjusting Group**

### CONTINUED - Master Bedroom

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 93. HEPA Vacuuming - Detailed - (PER SF) | 2,369.21 SF | | 0.00 | 0.79 | 0.00 | 374.34 | 2,246.02 |
| Totals: Master Bedroom | | | | | 18.95 | 783.18 | 4,698.97 |



**Loft Sitting Area**        **Height: 8'**

| | | |
|---|---|---|
| 875.21 SF Walls | 570.23 SF Ceiling | |
| 1,445.44 SF Walls & Ceiling | 570.23 SF Floor | |
| 63.36 SY Flooring | 109.40 LF Floor Perimeter | |
| 109.40 LF Ceil. Perimeter | | |

**Missing Wall**     5' 5 3/16" X 8'       Opens into Exterior

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| Flooring: | | | | | | | |
| 94. Carpet - High grade | 570.23 SF | | 0.28 | 0.00 | 0.00 | 31.94 | 191.60 |
| 95. Carpet - High grade | 655.77 SF | | 0.00 | 4.92 | 228.21 | 690.92 | 4,145.52 |
| 15 % waste added for Carpet - High grade. | | | | | | | |
| 96a. Carpet pad - High grade | 570.23 SF | | 0.12 | 0.00 | 0.00 | 13.68 | 82.11 |
| 96b. Carpet pad - High grade | 570.23 SF | | 0.00 | 0.72 | 29.20 | 87.96 | 527.73 |
| 97a. Baseboard - 2 1/4" | 109.40 LF | | 0.37 | 0.00 | 0.00 | 8.10 | 48.58 |
| 97b. Baseboard - 2 1/4" | 109.40 LF | | 0.00 | 2.59 | 8.05 | 58.30 | 349.70 |
| Painting: | | | | | | | |
| 98. Base cap or shoe / Quarter round - Detach & reset | 50.00 LF | | 0.00 | 1.39 | 0.04 | 13.90 | 83.44 |
| 99. Seal & paint base shoe or quarter round | 75.00 LF | | 0.00 | 0.75 | 0.60 | 11.38 | 68.23 |
| 100. Paint door/window trim & jamb - 2 coats (per side) | 2.00 EA | | 0.00 | 29.16 | 0.66 | 11.80 | 70.78 |
| 101. Paint baseboard - two coats | 75.00 LF | | 0.00 | 1.35 | 0.72 | 20.40 | 122.37 |
| Fixtures: | | | | | | | |
| 102. Heat/AC register - Mechanically attached - Detach & reset | 1.00 EA | | 0.00 | 13.39 | 0.00 | 2.68 | 16.07 |
| 103. Smoke detector | 1.00 EA | 43.18 | 0.00 | 0.00 | 0.00 | 8.64 | 51.82 |
| 104. Window drapery - hardware - Detach & reset | 2.00 EA | | 0.00 | 27.22 | 0.00 | 10.88 | 65.32 |
| 105. Remove and rehang drapery - per hour | 2.00 HR | | 0.00 | 49.68 | 0.00 | 19.88 | 119.24 |

**Total hours are not just the removal and reset but also the storage and packaging of the drapes during the rebuild process.**

Exhibit A



**Noble Public Adjusting Group**

## CONTINUED - Loft Sitting Area

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 106. Window blind - horizontal or vertical - Detach & reset | 2.00 EA | | 0.00 | 27.22 | 0.00 | 10.88 | 65.32 |
| **Painting of the ceiling:** | | | | | | | |
| 107. Mask and prep for paint - tape only (per LF) | 30.33 LF | | 0.00 | 0.57 | 0.10 | 3.48 | 20.87 |
| **To mask wall paneling before painting.** | | | | | | | |
| 108. Seal the ceiling w/latex based stain blocker - one coat | 570.23 SF | | 0.00 | 0.58 | 3.19 | 66.78 | 400.70 |
| 109. Paint the ceiling - two coats | 570.23 SF | | 0.00 | 0.90 | 9.58 | 104.56 | 627.35 |
| Ceiling tiles were painted. | | | | | | | |
| **General Cleaning:** | | | | | | | |
| 110. Deodorize building - Hot thermal fog | 9,123.72 CF | | 0.00 | 0.06 | 0.00 | 109.48 | 656.90 |
| (C+F+W)*2 | | | | | | | |

Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.   Fogging is recommended in addition to spray application to ensure disinfectant is applied to hard to reach areas.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 111. Apply plant-based anti-microbial agent to more than the ceiling | 4,031.35 SF | | 0.00 | 0.31 | 16.13 | 253.16 | 1,519.01 |
| (C+F+W)*2 | | | | | | | |

Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.

**C+F+W**

Wipe surfaces after application of disinfectant.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 112. HEPA Vacuuming - Detailed - (PER SF) | 2,015.67 SF | | 0.00 | 0.79 | 0.00 | 318.48 | 1,910.86 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Totals: Loft Sitting Area | | | | | 296.48 | 1,857.28 | 11,143.52 |



**Bedroom 4**                                                  **Height: 8'**

| | | |
|---|---|---|
| 429.33 SF Walls | | 167.94 SF Ceiling |
| 597.28 SF Walls & Ceiling | | 167.94 SF Floor |
| 18.66 SY Flooring | | 53.67 LF Floor Perimeter |
| 53.67 LF Ceil. Perimeter | | |

Exhibit A

 **Noble Public Adjusting Group**

CONTINUED - Bedroom 4



| Subroom: Bedroom 4 Closet (1) | | | | | Height: 8' |
|---|---|---|---|---|---|
| 248.00 SF Walls | | | 44.72 SF Ceiling | | |
| 292.72 SF Walls & Ceiling | | | 44.72 SF Floor | | |
| 4.97 SY Flooring | | | 31.00 LF Floor Perimeter | | |
| 31.00 LF Ceil. Perimeter | | | | | |

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| Flooring: | | | | | | | |
| 113.  Carpet - High grade | 212.67 SF | | 0.28 | 0.00 | 0.00 | 11.92 | 71.47 |
| 114.  Carpet - High grade | 244.57 SF | | 0.00 | 4.92 | 85.11 | 257.68 | 1,546.07 |
| 15 % waste added for Carpet - High grade. | | | | | | | |
| 115a.  Carpet pad - High grade | 212.67 SF | | 0.12 | 0.00 | 0.00 | 5.10 | 30.62 |
| 115b.  Carpet pad - High grade | 212.67 SF | | 0.00 | 0.72 | 10.89 | 32.80 | 196.81 |
| 116a.  Baseboard - 2 1/4" | 84.67 LF | | 0.37 | 0.00 | 0.00 | 6.26 | 37.59 |
| 116b.  Baseboard - 2 1/4" | 84.67 LF | | 0.00 | 2.59 | 6.23 | 45.10 | 270.63 |
| Painting: | | | | | | | |
| 117.  Base cap or shoe / Quarter round - Detach & reset | 50.00 LF | | 0.00 | 1.39 | 0.04 | 13.90 | 83.44 |
| 118.  Seal & paint base shoe or quarter round | 75.00 LF | | 0.00 | 0.75 | 0.60 | 11.38 | 68.23 |
| 119.  Paint door/window trim & jamb - 2 coats (per side) | 2.00 EA | | 0.00 | 29.16 | 0.66 | 11.80 | 70.78 |
| 120.  Paint baseboard - two coats | 75.00 LF | | 0.00 | 1.35 | 0.72 | 20.40 | 122.37 |
| Fixtures: | | | | | | | |
| 121.  Heat/AC register - Mechanically attached - Detach & reset | 1.00 EA | | 0.00 | 13.39 | 0.00 | 2.68 | 16.07 |
| 122.  Smoke detector | 1.00 EA | 43.18 | 0.00 | 0.00 | 0.00 | 8.64 | 51.82 |
| 123.  Window drapery - hardware - Detach & reset | 2.00 EA | | 0.00 | 27.22 | 0.00 | 10.88 | 65.32 |
| 124.  Remove and rehang drapery - per hour | 2.00 HR | | 0.00 | 49.68 | 0.00 | 19.88 | 119.24 |
| Total hours are not just the removal and reset but also the storage and packaging of the drapes during the rebuild process. | | | | | | | |
| 125.  Window blind - horizontal or vertical - Detach & reset | 2.00 EA | | 0.00 | 27.22 | 0.00 | 10.88 | 65.32 |
| Painting of the ceiling: | | | | | | | |
| 126.  Mask and prep for paint - tape only (per LF) | 17.00 LF | | 0.00 | 0.57 | 0.05 | 1.96 | 11.70 |
| To mask wall paneling before painting. | | | | | | | |

Exhibit A



**Noble Public Adjusting Group**

### CONTINUED - Bedroom 4

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 127. Seal the ceiling w/latex based stain blocker - one coat | 212.67 SF | | 0.00 | 0.58 | 1.19 | 24.92 | 149.46 |
| 128. Paint the ceiling - two coats | 212.67 SF | | 0.00 | 0.90 | 3.57 | 39.00 | 233.97 |
| Ceiling tiles were painted. | | | | | | | |
| **General Cleaning:** | | | | | | | |
| 129. Deodorize building - Hot thermal fog | 3,402.67 CF | | 0.00 | 0.06 | 0.00 | 40.84 | 245.00 |
| (C+F+W)*2 | | | | | | | |

Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.  Fogging is recommended in addition to spray application to ensure disinfectant is applied to hard to reach areas.

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 130. Apply plant-based anti-microbial agent to more than the ceiling | 2,205.33 SF | | 0.00 | 0.31 | 8.82 | 138.50 | 830.97 |
| (C+F+W)*2 | | | | | | | |

Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.

**C+F+W**

Wipe surfaces after application of disinfectant.

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 131. HEPA Vacuuming - Detailed - (PER SF) | 1,102.67 SF | | 0.00 | 0.79 | 0.00 | 174.22 | 1,045.33 |
| Totals: Bedroom 4 | | | | | 117.88 | 888.74 | 5,332.21 |



**Laundry Room**          **Height: 8'**

| | |
|---|---|
| 209.33 SF Walls | 41.53 SF Ceiling |
| 250.86 SF Walls & Ceiling | 41.53 SF Floor |
| 4.61 SY Flooring | 26.17 LF Floor Perimeter |
| 26.17 LF Ceil. Perimeter | |

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| Painting: | | | | | | | |
| 132. Base cap or shoe / Quarter round - Detach & reset | 26.17 LF | | 0.00 | 1.06 | 0.02 | 5.54 | 33.30 |
| 133. Seal & paint base shoe or quarter round | 26.17 LF | | 0.00 | 0.75 | 0.21 | 3.96 | 23.80 |
| 134. Paint door/window trim & jamb - 2 coats (per side) | 2.00 EA | | 0.00 | 28.98 | 0.65 | 11.74 | 70.35 |
| 135. Paint baseboard - two coats | 26.17 LF | | 0.00 | 1.35 | 0.25 | 7.12 | 42.70 |
| Fixtures: | | | | | | | |
| 136. Washing machine - Reset | 1.00 EA | | 0.00 | 16.35 | 0.00 | 3.28 | 19.63 |

Exhibit A

 **Noble Public Adjusting Group**

Noble Public Adjusting Group
*Release and Always be the lowest*

## CONTINUED - Laundry Room

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 137. Dryer - Electric - Reset | 1.00 EA | | 0.00 | 12.60 | 0.00 | 2.52 | 15.12 |
| 138. Heat/AC register - Mechanically attached - Detach & reset | 1.00 EA | | 0.00 | 10.71 | 0.00 | 2.14 | 12.85 |
| 139. Smoke detector | 1.00 EA | | 0.00 | 22.34 | 0.00 | 4.46 | 26.80 |
| **Painting of the ceiling:** | | | | | | | |
| 140. Mask and prep for paint - tape only (per LF) | 43.17 LF | | 0.00 | 0.57 | 0.14 | 4.94 | 29.69 |
| **To mask wall paneling before painting.** | | | | | | | |
| 141. Seal the ceiling w/latex based stain blocker - one coat | 41.53 SF | | 0.00 | 0.56 | 0.23 | 4.70 | 28.19 |
| 142. Paint the ceiling - two coats | 41.53 SF | | 0.00 | 0.89 | 0.66 | 7.54 | 45.16 |
| Ceiling tiles were painted. | | | | | | | |
| Flooring: | | | | | | | |
| 143a. Sheathing - 1 1/8" - tongue and groove | 41.53 SF | | 2.46 | 0.00 | 0.00 | 20.44 | 122.60 |
| 143b. Sheathing - 1 1/8" - tongue and groove | 41.53 SF | | 0.00 | 3.54 | 7.08 | 30.82 | 184.92 |
| 144. Linoleum floor covering (sheet goods) | 41.53 SF | | 0.80 | 0.00 | 0.00 | 6.64 | 39.86 |
| 145. Linoleum floor covering (sheet goods) | 68.00 SF | | 0.00 | 7.02 | 24.48 | 100.38 | 602.22 |
| **General Cleaning:** | | | | | | | |
| 146. Deodorize building - Hot thermal fog | 664.44 CF | | 0.00 | 0.06 | 0.00 | 7.98 | 47.85 |
| **(C+F+W)*2** | | | | | | | |

Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions. Fogging is recommended in addition to spray application to ensure disinfectant is applied to hard to reach areas.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 147. Apply plant-based anti-microbial agent to more than the ceiling | 584.78 SF | | 0.00 | 0.31 | 2.34 | 36.72 | 220.34 |
| **(C+F+W)*2** | | | | | | | |

Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.

**C+F+W**

Wipe surfaces after application of disinfectant.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 148. HEPA Vacuuming - Detailed - (PER SF) | 292.39 SF | | 0.00 | 0.79 | 0.00 | 46.20 | 277.19 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Totals: Laundry Room | | | | | 36.06 | 307.12 | 1,842.57 |
| Total: Dwelling 2nd floor | | | | | 493.81 | 4,831.20 | 28,986.60 |

## General - Loss Specific

Exhibit A



**Noble Public Adjusting Group**

Noble Public Adjusting Group
*Package and Efficiency for the Insured*

## GC - General Conditions

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| **Residential Supervision required for this project:** | | | | | | | |

This line item is for one foreman part time at 20 hours per month during the duration of repairs to ensure that the work is being done correctly and that the work is progressing correctly.

Xactware/Xactimate specifically states that general overhead expenses are those *" that cannot be attributed to individual projects and include any and all expenses necessary for the general contractor to operate their business., however, "Job related overhead are expenses that can be attributed to a project, but cannot be attributed to a specific task and include any and all necessary expenses to complete the project other than direct materials and labor."*

*Xactware/Xactimate provides examples of such job related overhead items to include project managers or foremen and states that such expenses should be added as a separate line item to the estimate.*

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 149.  Residential Supervision / Project Management - per hour | 20.00 HR | | 0.00 | 65.13 | 0.00 | 260.52 | 1,563.12 |
| 150.  Temporary toilet (per month) | 1.00 MO | | 0.00 | 106.15 | 0.00 | 21.24 | 127.39 |
| Totals:  GC - General Conditions | | | | | 0.00 | 281.76 | 1,690.51 |

## COVID-19 Precautions

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| ******   COVID 19 Special Provisions   ****** | | | | | | | |
| ********  Personal Protective Equipment   ******** | | | | | | | |
| **PPE Suits** | | | | | | | |
| 151.  Add for personal protective equipment (hazardous cleanup) | 10.00 EA | | 0.00 | 15.22 | 12.18 | 32.88 | 197.26 |
| 152.  Add for personal protective equipment - Heavy duty | 10.00 EA | | 0.00 | 39.14 | 31.31 | 84.54 | 507.25 |
| **PPE Face Covering / Eye Protection** | | | | | | | |
| 153.  Personal protective mask (N-95) | 10.00 EA | | 0.00 | 5.36 | 4.29 | 11.58 | 69.47 |
| 154.  Eye protection - plastic goggles - Disposable | 10.00 EA | | 0.00 | 10.07 | 8.06 | 21.76 | 130.52 |
| 155.  Face shield - Disposable | 10.00 EA | | 0.00 | 5.95 | 4.76 | 12.86 | 77.12 |
| **PPE  Respirator** | | | | | | | |
| 156.  Respirator - Half face - multi-purpose resp. (per day) | 10.00 DA | | 0.00 | 1.80 | 0.00 | 3.60 | 21.60 |
| 157.  Respirator - Full face - multi-purpose resp. (per day) | 10.00 DA | | 0.00 | 7.61 | 0.00 | 15.22 | 91.32 |
| 158.  Respirator cartridge - HEPA only (per pair) | 10.00 EA | | 0.00 | 14.80 | 11.84 | 31.96 | 191.80 |
| 159.  Supply Air Respirator (SAR) - per day | 10.00 DA | | 0.00 | 61.25 | 0.00 | 122.50 | 735.00 |

Exhibit A

 **Noble Public Adjusting Group**

Noble Public Adjusting Group

## CONTINUED - COVID-19 Precautions

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| **PPE Gloves** | | | | | | | |
| 160.  Personal protective gloves - Disposable (per pair) | 10.00 EA | | 0.00 | 0.40 | 0.32 | 0.86 | 5.18 |
| **PPE Boots** | | | | | | | |
| 161.  Boots - waterproof latex - Disposable (per pair) | 10.00 EA | | 0.00 | 11.44 | 9.15 | 24.72 | 148.27 |
| **PPE Accessories** | | | | | | | |
| 162.  Tape to Seal Gloves / Boots | 2.00 EA | | 0.00 | 10.00 | 1.60 | 0.00 | 21.60 |
| Orig. Desc. - Tape | | | | | | | |
| **PPE Cleaning** | | | | | | | |
| 163.  Cleaning PPE - incl. cleaning agent - to decontaminate of possible COVID - 19 | 20.00 HR | | 0.00 | 37.08 | 1.90 | 148.70 | 892.20 |
| **Additional Labor** | | | | | | | |
| 164.  Additonal time needed due to working in PPE | 8.00 HR | | 0.00 | 36.54 | 0.00 | 58.46 | 350.78 |

Due to the mandated Covid-19 Pandemic regulations placed upon the construction industry  implementing shift work, limiting crossover of subcontractors mandatory hand washing, mandatory additional rest breaks  and more, this job will take an extra ??? hours to complete.

**Required COVID-19 Safety Procedure**

**#1** Each worker will perform a self-temperature check before leaving for work to confirm he or she does not have a temperature above 99.6 degrees Fahrenheit. We will not be charging for the this and will be providing equipment to all sub-contractors to ensure this temperature check is carried out.

**#2** This hour is to account for The Covid-19 state / county order. Workers will take extra 5 minutes each to execute mandatory temperature checks, prior to work starting.

**#3** We will implement a shift work rotation if any task takes long than 8 /10 hours total to complete including the mandatory breaks referenced in the COVID-19 Order for State / County. THIS IS AN INCURED ITEM **(No charge unless carried out)**

 **#4** We will schedule each sub-contractor at least 24 hours apart from the completion of each trade.

**#5** Keeping a Distance of 6 ft between each worker. Calculated hours is to account for slowdown of all work related operations for each trade.

 **#6** As the General Contractor we will provide individual water bottles, and this will have no effect on our normal process, and we will be charging for this accordingly. OSHA requires a water station to insure proper hydration of the worker that way we do not cross contaminate workers at the water station.

**#7** Any and all personnel present at the job site will have been deemed essential to the project.

**#8** As the General Contractor, we will provide and keep on site throughout the project, enough soap, water, and hand sanitizer for each separate sub-contractor/Trade's men.

**#9** We will calculate 1.15 hours is to account for the slowdown of production due to the multiple mandatory hygiene procedure(s).

**#10** Required COVID-19 Safety Procedure / Mandatory breaks will be set in place. (no addition charge) We will be adhering to rule mandated from the State or county directives necessary to keep the health and wellbeing of our Sub-Contractor/Trade's men.

Exhibit A



**Noble Public Adjusting Group**

### CONTINUED - COVID-19 Precautions

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|

**Global COVID-19 Pandemic Notice**
**CDC Warning - Level 3, Avoid Nonessential Travel Widespread Ongoing Transmission**

Widespread ongoing transmission of a respiratory illness caused by a novel (new) corona virus (COVID-19) is occurring globally. During the COVID-19 pandemic you may be exposed to the virus while traveling from sick persons at airports, or on airplanes, ships, trains, or buses. Some health care systems are becoming overwhelmed and there may be limited access to adequate medical care in affected areas. Many countries are implementing travel restrictions and mandatory quarantines, closing borders, and prohibiting non-citizens from entry with little advance notice. Airlines have canceled many international flights and in-country travel may be unpredictable. If you choose to travel internationally, your travel plans may be severely disrupted, and you may have to remain outside the United States for an indefinite length of time.

Illness with COVID-19 has ranged from mild to severe. Signs and symptoms of infection include fever, cough, and trouble breathing. This new corona virus has caused severe disease and death in patients who developed pneumonia. Risk factors for severe illness are not yet clear, although older adults and people of any age with serious chronic medical conditions are at higher risk for severe illness.

**What can travelers do to protect themselves and others?**
**CDC recommends that travelers avoid all nonessential international travel. If you must travel:**

Avoid contact with sick people.
Avoid touching your eyes, nose, or mouth with unwashed hands.
Wash your hands often with soap and water for at least 20 seconds. If soap and water are not readily available, use an alcohol-based hand sanitizer that contains at least 60% alcohol.
It is especially important to clean hands after going to the bathroom; before eating; and after coughing, sneezing or blowing your nose.
Avoid traveling if you are sick.

**If you traveled internationally in the last 14 days:**

Stay home, monitor your health, and practice social distancing for 14 days after you return from travel. Social distancing means staying out of crowded places, avoiding group gatherings, and maintaining distance (approximately 6 feet or 2 meters) from others when possible.
Learn more about what to do if you are sick after travel.

| | | | | | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| Totals: COVID-19 Precautions | | | | | 85.41 | 569.64 | 3,439.37 |

### PPE

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| The removal of materials indicated should be the responsibility of persons trained in these matters, having a mold license and liability insurance. Workers should comply with EPA, IICRC-S520, IICRC-S500, NIOSH, and OSHA guidelines regarding clothing, respirators, and remediation practices and principles. | | | | | | | |
| 165. Hazardous Waste/Mold Cleaning Technician - per hour | 12.00 HR | | 0.00 | 66.40 | 0.00 | 0.00 | 796.80 |
| 166. Hazardous Waste/Mold Cleaning- Supervisory/Admin- per hour | 6.00 HR | | 0.00 | 73.04 | 0.00 | 0.00 | 438.24 |
| 167. Add for personal protective equipment (hazardous cleanup) | 6.00 EA | | 0.00 | 15.22 | 7.31 | 0.00 | 98.63 |
| 168. Respirator - Half face - multi-purpose resp. (per day) | 6.00 DA | | 0.00 | 1.80 | 0.00 | 0.00 | 10.80 |
| 169. Respirator cartridge - HEPA only (per pair) | 6.00 EA | | 0.00 | 14.80 | 7.10 | 0.00 | 95.90 |
| 170. Boots - waterproof latex - Disposable (per pair) | 6.00 EA | | 0.00 | 11.44 | 5.49 | 0.00 | 74.13 |

 **Noble Public Adjusting Group**

### CONTINUED - PPE

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 171. Eye protection - plastic goggles - Disposable | 6.00 EA | | 0.00 | 10.07 | 4.83 | 0.00 | 65.25 |
| 172. Personal protective gloves - Disposable (per pair) | 6.00 EA | | 0.00 | 0.40 | 0.19 | 0.00 | 2.59 |
| 173. Temporary safety shower | 6.00 EA | | 0.00 | 90.61 | 0.00 | 0.00 | 543.66 |
| 174. Contamination - on-site ATP testing | 2.00 EA | | 0.00 | 21.86 | 0.49 | 0.00 | 44.21 |
| Totals: PPE | | | | | 25.41 | 0.00 | 2,170.21 |

### HVAC - Post Construction

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| **Cleaning of the ductwork - post construction:** | | | | | | | |
| 175. Clean ductwork - Interior - Heavy clean (PER REGISTER) | 11.00 EA | | 0.00 | 38.44 | 0.07 | 84.58 | 507.49 |
| **Clean of the HVAC handler unit:** | | | | | | | |
| 176. HVAC Technician - per hour | 1.50 HR | | 0.00 | 97.30 | 0.00 | 29.20 | 175.15 |
| Totals: HVAC - Post Construction | | | | | 0.07 | 113.78 | 682.64 |

### Pack In - Pack Out

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| **Pack out/in during the restoration period.** | | | | | | | |
| Note: This area is highly infected with COVID-19. CDC protocols must be followed. | | | | | | | |
| **Pack-out** | | | | | | | |
| 177. Equipment setup, takedown, travel time and warehouse time | 40.00 HR | | 0.00 | 36.54 | 0.00 | 292.32 | 1,753.92 |
| **2 Techs X 15 Mins X 3 Days to setup + Travel time to storage facility and back: 2 Techs X  20 Hours + Unloading time at storage facility and organizing pallets: 4 Techs X 6 Hours** | | | | | | | |
| 178. Contents Evaluation and/or Supervisor/Admin - per hour | 20.00 HR | | 0.00 | 48.88 | 0.00 | 195.52 | 1,173.12 |
| **1 Supervisor X 3 Days** | | | | | | | |
| 179. On-Site Inventory, Packing, Boxing, Moving chrg - per hour | 80.00 HR | | 0.00 | 35.89 | 0.00 | 574.24 | 3,445.44 |
| **4 Techs X 3 days** | | | | | | | |

Exhibit A

 **Noble Public Adjusting Group**

### CONTINUED - Pack In - Pack Out

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 180.  Moving van (21'-27') and equipment - per day | 6.00 EA | | 0.00 | 259.64 | 0.00 | 311.56 | 1,869.40 |
| Additional 2 days of truck rental due to travel period with 2 trucks. | | | | | | | |
| 181.  Bubble Wrap - Add-on cost for fragile items | 1,000.00 LF | | 0.00 | 0.22 | 17.60 | 47.52 | 285.12 |
| 182.  Provide stretch film/wrap | 1.00 RL | | 0.00 | 25.92 | 2.07 | 5.60 | 33.59 |
| 183.  Loose fill peanuts - Add-on cost for fragile items | 100.00 CF | | 0.00 | 2.83 | 22.64 | 61.12 | 366.76 |
| 184.  Provide box, packing paper & tape - small size | 20.00 EA | | 0.00 | 3.78 | 3.92 | 15.90 | 95.42 |
| 185.  Provide box, packing paper & tape - medium size | 15.00 EA | | 0.00 | 4.41 | 4.00 | 14.04 | 84.19 |
| 186.  Provide box, packing paper & tape - large size | 10.00 EA | | 0.00 | 6.01 | 3.54 | 12.72 | 76.36 |
| 187.  Provide box, packing paper & tape - extra large size | 5.00 EA | | 0.00 | 6.32 | 2.29 | 6.78 | 40.67 |
| **Storage** | | | | | | | |
| 188.  Off-site storage & insurance - per month | 2,200.00 SF | | 0.00 | 1.03 | 0.00 | 453.20 | 2,719.20 |
| Contents must be taken to a specialized cleaning and storage facility to be properly cleaned and disinfected. | | | | | | | |
| **Decontamination** | | | | | | | |
| **Cleaning** | | | | | | | |
| 189.  Clean bric-a-brac - per Lg box - Hvy clean | 20.00 EA | | 0.00 | 81.90 | 2.24 | 328.04 | 1,968.28 |
| 190.  Clean dishpack - per box - Heavy clean | 10.00 EA | | 0.00 | 66.02 | 1.10 | 132.26 | 793.56 |
| 191.  Clean glasspack - per box - Heavy clean | 10.00 EA | | 0.00 | 53.89 | 1.10 | 108.00 | 648.00 |
| 192.  Contents Cleaning - Supervisory/Administrative - per hour | 24.00 HR | | 0.00 | 48.88 | 0.00 | 234.62 | 1,407.74 |
| 193.  Cleaning Technician - incl. cleaning agent - Hard Surface Items | 32.00 HR | | 0.00 | 37.08 | 3.05 | 237.94 | 1,427.55 |
| **Clean and disinfect hard surface items** | | | | | | | |
| **Re-pack in Non-Contaminated Boxes** | | | | | | | |
| 194.  Evaluate pack & inventory dishpack - per box | 10.00 EA | | 0.00 | 14.26 | 6.13 | 29.74 | 178.47 |
| 195.  Provide dishpack box, packing paper & tape | 10.00 EA | | 0.00 | 7.66 | 6.13 | 16.54 | 99.27 |
| 196.  Evaluate pack & inventory glasspack - per box | 10.00 EA | | 0.00 | 19.85 | 11.69 | 42.04 | 252.23 |
| 197.  Provide glasspack box, packing paper & tape | 10.00 EA | | 0.00 | 14.61 | 11.69 | 31.56 | 189.35 |
| 198.  Clean bric-a-brac - per Lg box | 20.00 EA | | 0.00 | 54.01 | 0.96 | 216.24 | 1,297.40 |

Exhibit A



**Noble Public Adjusting Group**

## CONTINUED - Pack In - Pack Out

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| **Pack-back** | | | | | | | |
| 199. Equipment setup, takedown, travel time and warehouse time | 36.00 HR | | 0.00 | 36.54 | 0.00 | 263.08 | 1,578.52 |
| **+ Travel time to storage facility and back: 2 Techs X  10 Hours** **+ Unloading time at storage facility and organizing pallets: 4 Techs X 4 Hours** | | | | | | | |
| 200. Moving van (21'-27') and equipment - per day | 4.00 EA | | 0.00 | 259.64 | 0.00 | 207.72 | 1,246.28 |
| 201. Contents Evaluation and/or Supervisor/Admin - per hour | 8.00 HR | | 0.00 | 48.88 | 0.00 | 78.20 | 469.24 |
| **1 Supervisor X 3 Days** | | | | | | | |
| 202. On-Site Inventory, Packing, Boxing, Moving chrg - per hour | 32.00 HR | | 0.00 | 35.89 | 0.00 | 229.70 | 1,378.18 |
| **4 Techs X 3 days** | | | | | | | |
| **Decontamination of Storage and Moving Van(s)** | | | | | | | |
| 203. Clean the surface area - Heavy | 3,000.00 SF | | 0.00 | 0.66 | 2.40 | 396.48 | 2,378.88 |
| **To decontaminate the Moving van:** **Clean surfaces before application of disinfectant.** | | | | | | | |
| **The CDC states "If surfaces are dirty, they should be cleaned using a detergent or soap and water prior to disinfection."** | | | | | | | |
| 204. Apply plant-based anti-microbial agent to the surface area | 3,000.00 SF | | 0.00 | 0.31 | 12.00 | 188.40 | 1,130.40 |
| **To decontaminate the Moving van:** **Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.** | | | | | | | |
| 205. HEPA Vacuuming - Detailed - (PER SF) | 3,000.00 SF | | 0.00 | 0.79 | 0.00 | 474.00 | 2,844.00 |
| 206. Deodorize building - Hot thermal fog | 3,000.00 CF | | 0.00 | 0.06 | 0.00 | 36.00 | 216.00 |
| **To decontaminate the Moving van:** **Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.  Fogging is recommended in addition to spray application to ensure disinfectant is applied to hard to reach areas.** | | | | | | | |
| Totals:  Pack In - Pack Out | | | | | 114.55 | 5,241.08 | 31,446.54 |

## Debris - Buildback

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| **Debris and cleanup portion of this job:** | | | | | | | |
| 207. Dumpster load - Approx. 20 yards, 4 tons of debris | 1.00 EA | | 417.30 | 0.00 | 0.00 | 83.46 | 500.76 |
| **This dumpster is for non-roofing debris only.** | | | | | | | |
| 208. Sheathing - plywood - 3/4" CDX | 240.00 SF | | 0.00 | 1.25 | 24.00 | 64.80 | 388.80 |

C1414-ALEXANDER-SC

12/3/2020          Page: 26

Exhibit A



**Noble Public Adjusting Group**

## CONTINUED - Debris - Buildback

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| For the underside of the dumpster/driveway so the dumpster will not tear and chip and damage driveway - laid prior to drop off of the container. | | | | | | | |
| Sheathing is good for the entire job and multiple drops of container. | | | | | | | |
| **Roof Dumpster:** | | | | | | | |
| 209. Dumpster load - Approx. 20 yards, 4 tons of debris | 1.00 EA | | 417.30 | 0.00 | 0.00 | 83.46 | 500.76 |
| This dumpster is only for roofing debris. | | | | | | | |
| 210. Sheathing - plywood - 3/4" CDX | 240.00 SF | | 0.00 | 1.25 | 24.00 | 64.80 | 388.80 |
| Plywood required under dumpster to prevent damage to driveway and lawn. | | | | | | | |
| 211. General Demolition - per hour | 2.00 HR | | 43.34 | 0.00 | 0.00 | 17.34 | 104.02 |
| Final roof clean up. | | | | | | | |
| Totals: Debris - Buildback | | | | | 48.00 | 313.86 | 1,883.14 |

## Final Clean Up - Post Construction

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| **Post Final Construction: Clean up** | | | | | | | |
| 212. Cleaning Technician - per hour | 20.00 HR | | 0.00 | 35.89 | 0.00 | 143.56 | 861.36 |
| 213. Disinfect building - fog / spray - per SF | 10.00 SF | | 0.00 | 0.43 | 0.03 | 0.86 | 5.19 |
| Totals: Final Clean Up - Post Construction | | | | | 0.03 | 144.42 | 866.55 |

## Ordinance & Law

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| **ORDINANCE & LAW:** | | | | | | | |
| 214. Framing & Rough Carpentry (Bid Item) | 1.00 EA | | | | | | OPEN ITEM |
| This item has been left open for further consideration for the value to bring the home up to code structurally. Items may include additional blocking, anchors, hangers, straps, window and door buckling, sheathing, header replacement, etc.. | | | | | | | |
| 215. Electrical (Bid Item) | 1.00 EA | | | | | | OPEN ITEM |
| This item has been left open for further consideration for the value to bring the home up to code electrically. Items such as smoke alarms, carbon monoxide detection, outlet spacing, wet area GFCI's, wiring size, trunk lines, dedicated kitchen circuits, panel amperage, etc.. | | | | | | | |
| 216. Heat, Vent, & Air Conditioning (Bid Item) | 1.00 EA | | | | | | OPEN ITEM |
| This item has been left open for further consideration for the value to bring the mechanical systems up to code. Cold air returns, register locations, tonnage, equalizing air flow, etc.. | | | | | | | |

C1414-ALEXANDER-SC

Exhibit A



**Noble Public Adjusting Group**

### CONTINUED - Ordinance & Law

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 217. Engineering fees (Bid Item) | 1.00 EA | | | | | | OPEN ITEM |

**This item has been left open for further consideration for engineering fees incurred due to code upgrades.**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Totals: Ordinance & Law | | | | | 0.00 | 0.00 | 0.00 |

### Permits / Architectural Fees

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| **County Permits which are mandated: Payable when incurred.** | | | | | | | |
| 218. Taxes, insurance, permits & fees (Bid Item) | 1.00 EA | | 0.00 | 500.00 | 0.00 | 100.00 | 600.00 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Totals: Permits / Architectural Fees | | | | | 0.00 | 100.00 | 600.00 |

### Coverage D - Loss of Use

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| Temporary housing figured at $1.50 per SF of current dwelling per month until repairs are complete. | | | | | | | |
| 219. Temporary housing | 3,000.00 EA | | 0.00 | 1.50 | 0.00 | 900.00 | 5,400.00 |

Note: Loss of use is estimated only based on the SF of the current dwelling to provide similar housing. However due to hurricane housing is extremely limited. Supply and demand has driven prices higher than normal limits.

**Calculated by the Dwelling SF * Number of months to complete repairs.**

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 220. Additional Living Expenses | 6.00 EA | | 0.00 | 500.00 | 0.00 | 600.00 | 3,600.00 |

To cover additional expenses unrelated to the cost of temporary housing. This covers dining, additional fuel for vehicle, using laundry facilities and other assorted expenses.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Totals: Coverage D - Loss of Use | | | | | 0.00 | 1,500.00 | 9,000.00 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Total: General - Loss Specific | | | | | 273.47 | 8,264.54 | 51,778.96 |

### Labor Minimums Applied

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 221. Framing labor minimum | 1.00 EA | | 0.00 | 5.16 | 0.00 | 1.04 | 6.20 |
| 222. Insulation labor minimum | 1.00 EA | | 0.00 | 118.77 | 0.00 | 23.76 | 142.53 |
| 223. Water extract/remediation labor minimum | 1.00 EA | | 0.00 | 84.40 | 0.00 | 16.88 | 101.28 |
| 224. General labor - labor minimum | 1.00 EA | | 0.00 | 22.14 | 0.00 | 4.42 | 26.56 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Totals: Labor Minimums Applied | | | | | 0.00 | 46.10 | 276.57 |

Exhibit A

 **Noble Public Adjusting Group**

Noble Public Adjusting Group

Line Item Totals: C1414-ALEXANDER-SC          1,305.01    18,557.30    113,533.91

## Grand Total Areas:

| | | | | | |
|---|---|---|---|---|---|
| 15,126.03 | SF Walls | 10,868.49 | SF Ceiling | 25,994.51 | SF Walls and Ceiling |
| 10,897.07 | SF Floor | 1,210.79 | SY Flooring | 1,845.06 | LF Floor Perimeter |
| 0.00 | SF Long Wall | 0.00 | SF Short Wall | 1,851.55 | LF Ceil. Perimeter |
| | | | | | |
| 10,897.07 | Floor Area | 11,380.82 | Total Area | 14,496.53 | Interior Wall Area |
| 11,376.32 | Exterior Wall Area | 1,225.13 | Exterior Perimeter of Walls | | |
| | | | | | |
| 3,474.27 | Surface Area | 34.74 | Number of Squares | 242.78 | Total Perimeter Length |
| 13.61 | Total Ridge Length | 144.25 | Total Hip Length | | |

| Coverage | Item Total | % | ACV Total | % |
|---|---|---|---|---|
| Dwelling | 79,931.69 | 70.40% | 79,931.69 | 70.40% |
| Other Structures | 0.00 | 0.00% | 0.00 | 0.00% |
| Contents | 24,602.22 | 21.67% | 24,602.22 | 21.67% |
| Loss of Use | 9,000.00 | 7.93% | 9,000.00 | 7.93% |
| Building Ordinance | 0.00 | 0.00% | 0.00 | 0.00% |
| Fungi | 0.00 | 0.00% | 0.00 | 0.00% |
| Debris Removal | 0.00 | 0.00% | 0.00 | 0.00% |
| Total | 113,533.91 | 100.00% | 113,533.91 | 100.00% |

Exhibit A

 **Noble Public Adjusting Group**

## Summary for Dwelling

| | |
|---|---:|
| Line Item Total | 65,754.14 |
| Material Sales Tax | 1,217.01 |
| | |
| Subtotal | 66,971.15 |
| Overhead | 6,480.27 |
| Profit | 6,480.27 |
| | |
| **Replacement Cost Value** | **$79,931.69** |
| **Net Claim** | **$79,931.69** |

Noble Public Adjusting Group

Exhibit A

 **Noble Public Adjusting Group**

## Summary for Contents

| | |
|---|---:|
| Line Item Total | 20,417.46 |
| Material Sales Tax | 88.00 |
| | |
| Subtotal | 20,505.46 |
| Overhead | 2,048.38 |
| Profit | 2,048.38 |
| | |
| **Replacement Cost Value** | **$24,602.22** |
| **Net Claim** | **$24,602.22** |

Noble Public Adjusting Group

 **Noble Public Adjusting Group**

## Summary for Loss of Use

| | |
|---|---:|
| Line Item Total | 7,500.00 |
| Overhead | 750.00 |
| Profit | 750.00 |
| **Replacement Cost Value** | **$9,000.00** |
| **Net Claim** | **$9,000.00** |

Noble Public Adjusting Group

Exhibit A

 **Noble Public Adjusting Group**

### Recap of Taxes, Overhead and Profit

|  | Overhead (10%) | Profit (10%) | Material Sales Tax (8%) | Storage Rental Tax (8%) | Local Food Tax (4%) |
|---|---|---|---|---|---|
| Line Items | 9,278.65 | 9,278.65 | 1,305.01 | 0.00 | 0.00 |
| Total | 9,278.65 | 9,278.65 | 1,305.01 | 0.00 | 0.00 |

Exhibit A



**Noble Public Adjusting Group**

## Recap by Room

**Estimate: C1414-ALEXANDER-SC**

**Area: Dwelling Exterior - Elevation**

| | | | |
|---|---|---|---|
| **Left Elevation** | | **282.80** | **0.30%** |
| Coverage: Dwelling | 100.00% = | 282.80 | |
| **Right Elevation** | | **301.98** | **0.32%** |
| Coverage: Dwelling | 100.00% = | 301.98 | |
| **Rear Elevation** | | **210.19** | **0.22%** |
| Coverage: Dwelling | 100.00% = | 210.19 | |
| **Area Subtotal:  Dwelling Exterior - Elevation** | | **794.97** | **0.85%** |
| Coverage: Dwelling | 100.00% = | 794.97 | |
| **Front Elevation** | | **228.51** | **0.24%** |
| Coverage: Dwelling | 100.00% = | 228.51 | |

**Area: Dwelling First Floor**

| | | | |
|---|---|---|---|
| **Living Room** | | **3,441.38** | **3.67%** |
| Coverage: Dwelling | 100.00% = | 3,441.38 | |
| **Kitchen** | | **970.29** | **1.04%** |
| Coverage: Dwelling | 100.00% = | 970.29 | |
| **Foyer/Entry** | | **3,861.71** | **4.12%** |
| Coverage: Dwelling | 100.00% = | 3,861.71 | |
| **Bar Area/ Sitting Area** | | **11,299.10** | **12.06%** |
| Coverage: Dwelling | 100.00% = | 11,299.10 | |
| **Stairs** | | **1,636.67** | **1.75%** |
| Coverage: Dwelling | 100.00% = | 1,636.67 | |
| **Dining Room** | | **1,161.25** | **1.24%** |
| Coverage: Dwelling | 100.00% = | 1,161.25 | |
| **Hallway** | | **819.46** | **0.87%** |
| Coverage: Dwelling | 100.00% = | 819.46 | |
| **Area Subtotal:  Dwelling First Floor** | | **23,189.86** | **24.76%** |
| Coverage: Dwelling | 100.00% = | 23,189.86 | |
| **Family Room** | | **2,325.25** | **2.48%** |
| Coverage: Dwelling | 100.00% = | 2,325.25 | |

**Area: Dwelling 2nd floor**

| | | | |
|---|---|---|---|
| **Bedroom 3** | | **1,440.48** | **1.54%** |
| Coverage: Dwelling | 100.00% = | 1,440.48 | |
| **Hall Bathroom** | | **1,145.96** | **1.22%** |
| Coverage: Dwelling | 100.00% = | 1,145.96 | |
| **Bedroom 2** | | **1,216.88** | **1.30%** |
| Coverage: Dwelling | 100.00% = | 1,216.88 | |

Exhibit A

 **Noble Public Adjusting Group**

| | | | |
|---|---|---:|---:|
| **Master Bathroom** | | **1,146.69** | **1.22%** |
| Coverage: Dwelling | 100.00% = | 1,146.69 | |
| **Master Bedroom** | | **3,896.84** | **4.16%** |
| Coverage: Dwelling | 100.00% = | 3,896.84 | |
| **Loft Sitting Area** | | **8,989.76** | **9.60%** |
| Coverage: Dwelling | 100.00% = | 8,989.76 | |
| **Bedroom 4** | | **4,325.59** | **4.62%** |
| Coverage: Dwelling | 100.00% = | 4,325.59 | |
| **Laundry Room** | | **1,499.39** | **1.60%** |
| Coverage: Dwelling | 100.00% = | 1,499.39 | |
| | | | |
| **Area Subtotal:  Dwelling 2nd floor** | | **23,661.59** | **25.26%** |
| Coverage: Dwelling | 100.00% = | 23,661.59 | |
| | | | |
| **Area: General - Loss Specific** | | | |
| **GC - General Conditions** | | **1,408.75** | **1.50%** |
| Coverage: Dwelling | 100.00% = | 1,408.75 | |
| **COVID-19 Precautions** | | **2,784.32** | **2.97%** |
| Coverage: Dwelling | 99.28% = | 2,764.32 | |
| Coverage: Contents | 0.72% = | 20.00 | |
| **PPE** | | **2,144.80** | **2.29%** |
| Coverage: Dwelling | 100.00% = | 2,144.80 | |
| **HVAC - Post Construction** | | **568.79** | **0.61%** |
| Coverage: Dwelling | 100.00% = | 568.79 | |
| **Pack In - Pack Out** | | **26,090.91** | **27.85%** |
| Coverage: Dwelling | 21.82% = | 5,693.45 | |
| Coverage: Contents | 78.18% = | 20,397.46 | |
| **Debris - Buildback** | | **1,521.28** | **1.62%** |
| Coverage: Dwelling | 100.00% = | 1,521.28 | |
| **Final Clean Up - Post Construction** | | **722.10** | **0.77%** |
| Coverage: Dwelling | 100.00% = | 722.10 | |
| **Permits / Architectural Fees** | | **500.00** | **0.53%** |
| Coverage: Dwelling | 100.00% = | 500.00 | |
| **Coverage D - Loss of Use** | | **7,500.00** | **8.01%** |
| Coverage: Loss of Use | 100.00% = | 7,500.00 | |
| | | | |
| **Area Subtotal:  General - Loss Specific** | | **43,240.95** | **46.16%** |
| Coverage: Dwelling | 35.44% = | 15,323.49 | |
| Coverage: Contents | 47.22% = | 20,417.46 | |
| Coverage: Loss of Use | 17.34% = | 7,500.00 | |
| **Labor Minimums Applied** | | **230.47** | **0.25%** |
| Coverage: Dwelling | 100.00% = | 230.47 | |
| | | | |
| **Subtotal of Areas** | | **93,671.60** | **100.00%** |
| Coverage: Dwelling | 70.20% = | 65,754.14 | |

C1414-ALEXANDER-SC

12/3/2020        Page: 35

Exhibit A

 **Noble Public Adjusting Group**

| | | |
|---|---|---|
| Coverage: Contents | 21.80% = | 20,417.46 |
| Coverage: Loss of Use | 8.01% = | 7,500.00 |

| | | | |
|---|---|---|---|
| **Total** | | **93,671.60** | **100.00%** |

C1414-ALEXANDER-SC

12/3/2020        Page: 36

Exhibit A



**Noble Public Adjusting Group**

## Recap by Category

| O&P Items | | | Total | % |
|---|---|---|---:|---:|
| **APPLIANCES** | | | **28.95** | **0.03%** |
| Coverage: Dwelling | @ | 100.00% = | 28.95 | |
| **CONT: GARMENT & SOFT GOODS CLN** | | | **4,516.48** | **3.98%** |
| Coverage: Dwelling | @ | 11.00% = | 496.80 | |
| Coverage: Contents | @ | 89.00% = | 4,019.68 | |
| **CONT: CLEAN - GENERAL ITEMS** | | | **6,276.98** | **5.53%** |
| Coverage: Contents | @ | 100.00% = | 6,276.98 | |
| **CLEANING** | | | **6,881.32** | **6.06%** |
| Coverage: Dwelling | @ | 100.00% = | 6,881.32 | |
| **CONT: PACKING,HANDLNG,STORAGE** | | | **10,334.25** | **9.10%** |
| Coverage: Dwelling | @ | 2.26% = | 233.45 | |
| Coverage: Contents | @ | 97.74% = | 10,100.80 | |
| **GENERAL DEMOLITION** | | | **2,348.39** | **2.07%** |
| Coverage: Dwelling | @ | 100.00% = | 2,348.39 | |
| **DRYWALL** | | | **2,177.95** | **1.92%** |
| Coverage: Dwelling | @ | 100.00% = | 2,177.95 | |
| **ELECTRICAL** | | | **238.24** | **0.21%** |
| Coverage: Dwelling | @ | 100.00% = | 238.24 | |
| **FLOOR COVERING - CARPET** | | | **9,562.17** | **8.42%** |
| Coverage: Dwelling | @ | 100.00% = | 9,562.17 | |
| **FLOOR COVERING - RESILIENT** | | | **477.36** | **0.42%** |
| Coverage: Dwelling | @ | 100.00% = | 477.36 | |
| **FLOOR COVERING - WOOD** | | | **993.08** | **0.87%** |
| Coverage: Dwelling | @ | 100.00% = | 993.08 | |
| **FEES - CONTENTS MISC.** | | | **7,500.00** | **6.61%** |
| Coverage: Loss of Use | @ | 100.00% = | 7,500.00 | |
| **PERMITS AND FEES** | | | **500.00** | **0.44%** |
| Coverage: Dwelling | @ | 100.00% = | 500.00 | |
| **FINISH CARPENTRY / TRIMWORK** | | | **1,475.89** | **1.30%** |
| Coverage: Dwelling | @ | 100.00% = | 1,475.89 | |
| **FRAMING & ROUGH CARPENTRY** | | | **752.18** | **0.66%** |
| Coverage: Dwelling | @ | 100.00% = | 752.18 | |
| **HAZARDOUS MATERIAL REMEDIATION** | | | **30,987.28** | **27.29%** |
| Coverage: Dwelling | @ | 100.00% = | 30,987.28 | |
| **HEAT, VENT & AIR CONDITIONING** | | | **223.61** | **0.20%** |
| Coverage: Dwelling | @ | 100.00% = | 223.61 | |
| **INSULATION** | | | **222.47** | **0.20%** |
| Coverage: Dwelling | @ | 100.00% = | 222.47 | |
| **LABOR ONLY** | | | **1,617.06** | **1.42%** |
| Coverage: Dwelling | @ | 100.00% = | 1,617.06 | |
| **PAINTING** | | | **3,658.19** | **3.22%** |
| Coverage: Dwelling | @ | 100.00% = | 3,658.19 | |

Exhibit A

 **Noble Public Adjusting Group**

| O&P Items | | | Total | % |
|---|---|---|---|---|
| **TEMPORARY REPAIRS** | | | **106.15** | **0.09%** |
| Coverage: Dwelling | @ | 100.00% = | 106.15 | |
| **WINDOW TREATMENT** | | | **544.40** | **0.48%** |
| Coverage: Dwelling | @ | 100.00% = | 544.40 | |
| **WATER EXTRACTION & REMEDIATION** | | | **84.40** | **0.07%** |
| Coverage: Dwelling | @ | 100.00% = | 84.40 | |
| **O&P Items Subtotal** | | | **91,506.80** | **80.60%** |

| Non-O&P Items | | | Total | % |
|---|---|---|---|---|
| **HAZARDOUS MATERIAL REMEDIATION** | | | **2,101.08** | **1.85%** |
| Coverage: Dwelling | @ | 100.00% = | 2,101.08 | |
| **OFFICE SUPPLIES** | | | **20.00** | **0.02%** |
| Coverage: Contents | @ | 100.00% = | 20.00 | |
| **WATER EXTRACTION & REMEDIATION** | | | **43.72** | **0.04%** |
| Coverage: Dwelling | @ | 100.00% = | 43.72 | |
| **Non-O&P Items Subtotal** | | | **2,164.80** | **1.91%** |
| **O&P Items Subtotal** | | | **91,506.80** | **80.60%** |
| **Material Sales Tax** | | | **1,305.01** | **1.15%** |
| Coverage: Dwelling | @ | 93.26% = | 1,217.01 | |
| Coverage: Contents | @ | 6.74% = | 88.00 | |
| **Overhead** | | | **9,278.65** | **8.17%** |
| Coverage: Dwelling | @ | 69.84% = | 6,480.27 | |
| Coverage: Contents | @ | 22.08% = | 2,048.38 | |
| Coverage: Loss of Use | @ | 8.08% = | 750.00 | |
| **Profit** | | | **9,278.65** | **8.17%** |
| Coverage: Dwelling | @ | 69.84% = | 6,480.27 | |
| Coverage: Contents | @ | 22.08% = | 2,048.38 | |
| Coverage: Loss of Use | @ | 8.08% = | 750.00 | |
| **Total** | | | **113,533.91** | **100.00%** |

Exhibit A

Footprint

Page: 39

12/3/2020

N ⇧



Footprint1

60.8'

60'

42.8'

42'

C1414-ALEXANDER-SC

Footprint

Exhibit A



Dwelling Roof

12/3/2020     Page: 40

N ⇑



Dwelling First Floor

Dwelling First Floor        Page: 41

12/3/2020

Kitchen

Dining Room

Family Room

Hallway Closet

Bar Area/ Sitting Area

Stairs

Hallway

Foyer/Entry

Living Room

Garage

C1414-ALEXANDER-SC

Exhibit A



Dwelling 2nd floor

12/3/2020          Page: 42

Master Bedroom

Bedroom 4

Bedroom 4 Closet (1)

Laundry Room

Loft Sitting Area

Master Closet (1)

Master Bathroom

Master Closet (2)

Bedroom 2

Hall Bathroom

Bedroom 3

C1414-ALEXANDER-SC

Dwelling 2nd floor

Exhibit A

Dwelling Exterior - Elevation

Page: 43

12/3/2020

Right Elevation

60' 4"

11' 6"

18'

18' 8"

Rear Elevation

8' 91"

91"

46' 2"

46' 11"

Front Elevation

8' 31"

8' 21"

47' 2"

47' 1"

Left Elevation

8' 09"

09"

11' 6"

16' 10"

N ⇧

Dwelling Exterior - Elevation

C1414-ALEXANDER-SC

Exhibit A

 **Noble Public Adjusting Group**

1   Dwelling Exterior - Elevation/Left
    Elevation - 184-Left Elevation
    Date Taken: 12/2/2020



2   Dwelling Exterior - Elevation/Left
    Elevation - 183-Left Elevation
    Date Taken: 12/2/2020



Exhibit A

 **Noble Public Adjusting Group**

3   Dwelling Exterior -
    Elevation/Right Elevation - 164-
    Right Elevation
    Date Taken: 12/2/2020



4   Dwelling Exterior -
    Elevation/Right Elevation - 165-
    Right Elevation
    Date Taken: 12/2/2020





**Noble Public Adjusting Group**

5   Dwelling Exterior -
    Elevation/Right Elevation - 166-
    Right Elevation
    Date Taken: 12/2/2020



6   Dwelling Exterior -
    Elevation/Right Elevation - 171-
    Right Elevation
    Date Taken: 12/2/2020



 **Noble Public Adjusting Group**

7   Dwelling Exterior -
    Elevation/Right Elevation - 172-
    Right Elevation
    Date Taken: 12/2/2020



8   Dwelling Exterior -
    Elevation/Right Elevation - 182-
    Right Elevation
    Date Taken: 12/2/2020



C1414-ALEXANDER-SC

Exhibit A



**Noble Public Adjusting Group**

9    Dwelling Exterior -
     Elevation/Right Elevation - 186-
     Right Elevation
     Date Taken: 12/2/2020



10   Dwelling Exterior - Elevation/Rear
     Elevation - 173-Rear Elevation
     Date Taken: 12/2/2020





**Noble Public Adjusting Group**

11   Front Elevation - 153-Front
     Elevation
     Date Taken: 12/2/2020



12   Front Elevation - 152-Front
     Elevation
     Date Taken: 12/2/2020





**Noble Public Adjusting Group**

13   Front Elevation - 154-Front
Elevation
Date Taken: 12/2/2020



14   Front Elevation - 185-Front
Elevation
Date Taken: 12/2/2020



C1414-ALEXANDER-SC

12/3/2020          Page: 7

Exhibit A



**Noble Public Adjusting Group**

15   Front Elevation - 187-Front Door
Date Taken: 12/2/2020



16   Dwelling Roof/Dwelling Ro1 - 167-Roof
Date Taken: 12/2/2020



Exhibit A

 **Noble Public Adjusting Group**

17   Dwelling Roof/Dwelling Ro1 -
155-Roof
Date Taken: 12/2/2020



18   Dwelling Roof/Dwelling Ro1 -
168-Roof
Date Taken: 12/2/2020



 **Noble Public Adjusting Group**

19   Dwelling Roof/Dwelling Ro1 -
     156-Roof
     Date Taken: 12/2/2020



20   Dwelling Roof/Dwelling Ro1 -
     157-Roof
     Date Taken: 12/2/2020



 **Noble Public Adjusting Group**

21   Dwelling Roof/Dwelling Ro1 -
158-Roof
Date Taken: 12/2/2020



22   Dwelling Roof/Dwelling Ro1 -
159-Roof
Date Taken: 12/2/2020



 **Noble Public Adjusting Group**

23   Dwelling Roof/Dwelling Ro1 -
     181-Roof
     Date Taken: 12/2/2020



24   Dwelling Roof/Dwelling Ro1 -
     169-Roof
     Date Taken: 12/2/2020



C1414-ALEXANDER-SC



**Noble Public Adjusting Group**

25   Dwelling Roof/Dwelling Ro1 -
     160-Roof
     Date Taken: 12/2/2020



26   Dwelling Roof/Dwelling Ro1 -
     161-Roof
     Date Taken: 12/2/2020



 **Noble Public Adjusting Group**

27   Dwelling Roof/Dwelling Ro1 -
     170-Roof
     Date Taken: 12/2/2020



28   Dwelling Roof/Dwelling Ro1 -
     180-Roof
     Date Taken: 12/2/2020





**Noble Public Adjusting Group**

29  Dwelling Roof/Dwelling Ro1 -
179-Roof
Date Taken: 12/2/2020



30  Dwelling Roof/Dwelling Ro1 -
178-Roof
Date Taken: 12/2/2020





## Noble Public Adjusting Group

31  Dwelling Roof/Dwelling Ro1 -
177-Roof
Date Taken: 12/2/2020



32  Dwelling Roof/Dwelling Ro1 -
176-Roof
Date Taken: 12/2/2020



 **Noble Public Adjusting Group**

33   Dwelling Roof/Dwelling Ro1 -
     175-Roof
     Date Taken: 12/2/2020



34   Dwelling Roof/Dwelling Ro1 -
     174-Roof
     Date Taken: 12/2/2020



Exhibit A

 **Noble Public Adjusting Group**

35   Dwelling Roof/Dwelling Ro1 -
     163-Roof
     Date Taken: 12/2/2020



36   Dwelling Roof/Dwelling Ro1 -
     162-Roof
     Date Taken: 12/2/2020



 **Noble Public Adjusting Group**

37  Dwelling First Floor/Living Room -
191-Living Room
Date Taken: 12/2/2020



38  Dwelling First Floor/Living Room -
192-Living Room
Date Taken: 12/2/2020



 **Noble Public Adjusting Group**

39   Dwelling First Floor/Kitchen - 200-Kitchen
Date Taken: 12/2/2020



40   Dwelling First Floor/Kitchen - 201-Kitchen
Date Taken: 12/2/2020



C1414-ALEXANDER-SC                                              12/3/2020          Page: 20

Exhibit A



**Noble Public Adjusting Group**

41   Dwelling First Floor/Kitchen - 202-
Kitchen
Date Taken: 12/2/2020



42   Dwelling First Floor/Foyer/Entry -
189-Foyer
Date Taken: 12/2/2020





**Noble Public Adjusting Group**

43   Dwelling First Floor/Foyer/Entry -
     188-Foyer
     Date Taken: 12/2/2020



44   Dwelling First Floor/Foyer/Entry -
     190-Foyer
     Date Taken: 12/2/2020





**Noble Public Adjusting Group**

45   Dwelling First Floor/Garage - 211-
Garage
Date Taken: 12/2/2020



46   Dwelling First Floor/Garage - 212-
Garage damage from roof
compromised
Date Taken: 12/2/2020



C1414-ALEXANDER-SC

Exhibit A

 **Noble Public Adjusting Group**

47   Dwelling First Floor/Garage - 213-
     Garage damage from roof
     compromised
     Date Taken: 12/2/2020



48   Dwelling First Floor/Garage - 214-
     Garage damage from roof
     compromised
     Date Taken: 12/2/2020



 **Noble Public Adjusting Group**

49   Dwelling First Floor/Garage - 215-
Garage damage from roof
compromised
Date Taken: 12/2/2020



50   Dwelling First Floor/Garage - 216-
Garage damage from roof
compromised
Date Taken: 12/2/2020



 **Noble Public Adjusting Group**

51   Dwelling First Floor/Bar Area/
Sitting Area - 193-Bar Area
Date Taken: 12/2/2020



52   Dwelling First Floor/Bar Area/
Sitting Area - 194-Bar Area
Date Taken: 12/2/2020



Exhibit A

 **Noble Public Adjusting Group**

53   Dwelling First Floor/Bar Area/
     Sitting Area - 195-Bar Area
     Date Taken: 12/2/2020



54   Dwelling First Floor/Bar Area/
     Sitting Area - 196-Damage from
     washing machine failure
     Date Taken: 12/2/2020



Exhibit A



**Noble Public Adjusting Group**

55   Dwelling First Floor/Bar Area/
     Sitting Area - 197-Damage from
     washing machine failure
     Date Taken: 12/2/2020



56   Dwelling First Floor/Bar Area/
     Sitting Area - 198-Damage from
     washing machine failure
     Date Taken: 12/2/2020



12/3/2020      Page: 28

Exhibit A



**Noble Public Adjusting Group**

57  Dwelling First Floor/Bar Area/
    Sitting Area - 199-Damage from
    washing machine failure
    Date Taken: 12/2/2020



58  Dwelling First Floor/Stairs - 204-
    Stairs
    Date Taken: 12/2/2020





**Noble Public Adjusting Group**

59  Dwelling First Floor/Stairs - 218-
Stairs
Date Taken: 12/2/2020



60  Dwelling First Floor/Dining Room
- 203-Dining Room
Date Taken: 12/2/2020



 **Noble Public Adjusting Group**

61   Dwelling First Floor/Hallway -
     210-Hallway
     Date Taken: 12/2/2020



62   Dwelling First Floor/Hallway -
     217-Hallway
     Date Taken: 12/2/2020





**Noble Public Adjusting Group**

63   Family Room - 136-Family Room
     Date Taken: 12/1/2020



64   Family Room - 143-Family Room
     Date Taken: 12/1/2020



 **Noble Public Adjusting Group**

65    Family Room - 137-Flooring in
      Family Room
      Date Taken: 12/1/2020



66    Family Room - 138-Ceiling
      Date Taken: 12/1/2020



 **Noble Public Adjusting Group**

67   Family Room - 139-Ceiling
     Damage
     Date Taken: 12/1/2020



68   Family Room - 140-Ceiling
     Damage
     Date Taken: 12/1/2020



 **Noble Public Adjusting Group**

69   Family Room - 141-Ceiling
     Damage
     Date Taken: 12/1/2020



70   Family Room - 142-Ceiling
     Damage
     Date Taken: 12/1/2020





**Noble Public Adjusting Group**

71  Family Room - 144-Ceiling
    Damage
    Date Taken: 12/1/2020

    The entire ceiling needs to be repair
    and replaced



72  Family Room - 205-Family Room
    damage from roof
    Date Taken: 12/2/2020



C1414-ALEXANDER-SC                                              12/3/2020        Page: 36

                                                                    Exhibit A



**Noble Public Adjusting Group**

73 Family Room - 206-Family Room
damage from roof
Date Taken: 12/2/2020



74 Family Room - 207-Family Room
damage from roof
Date Taken: 12/2/2020



Exhibit A

 **Noble Public Adjusting Group**

75   Family Room - 208-Family Room
Date Taken: 12/2/2020



76   Family Room - 209-Family Room
damage from roof
Date Taken: 12/2/2020



Exhibit A



**Noble Public Adjusting Group**

77   Dwelling 2nd floor/Bedroom 3 -
     230-Bedroom 3
     Date Taken: 12/2/2020



78   Dwelling 2nd floor/Bedroom 3 -
     231-Bedroom 3
     Date Taken: 12/2/2020





**Noble Public Adjusting Group**

79   Dwelling 2nd floor/Bedroom 3 -
232-Bedroom 3
Date Taken: 12/2/2020



80   Dwelling 2nd floor/Hall Bathroom -
229-Hall Bathroom
Date Taken: 12/2/2020





**Noble Public Adjusting Group**

81  Dwelling 2nd floor/Hall Bathroom -
    228-Hall Bathroom
    Date Taken: 12/2/2020



82  Dwelling 2nd floor/Hall Bathroom -
    233-Hall Bathroom
    Date Taken: 12/2/2020



 **Noble Public Adjusting Group**

83   Dwelling 2nd floor/Hall Bathroom -
     234-Hall Bathroom
     Date Taken: 12/2/2020



84   Dwelling 2nd floor/Bedroom 2 -
     249-Bedroom 2
     Date Taken: 12/2/2020



 **Noble Public Adjusting Group**

85   Dwelling 2nd floor/Master
     Bathroom - 240-Master Bathroom
     Date Taken: 12/2/2020



86   Dwelling 2nd floor/Master
     Bathroom - 241-Master Bathroom
     Date Taken: 12/2/2020



 **Noble Public Adjusting Group**

87   Dwelling 2nd floor/Master
     Bathroom - 242-Water damage
     from roof leaking
     Date Taken: 12/2/2020



88   Dwelling 2nd floor/Master
     Bathroom - 243-Water damage
     from roof leaking - master bath
     Date Taken: 12/2/2020





**Noble Public Adjusting Group**

89   Dwelling 2nd floor/Master
     Bathroom - 244-master bath
     Date Taken: 12/2/2020



90   Dwelling 2nd floor/Master
     Bathroom - 246-Master Bath
     Date Taken: 12/2/2020





**Noble Public Adjusting Group**

91   Dwelling 2nd floor/Master
     Bathroom - 247-Master Bath
     Date Taken: 12/2/2020



92   Dwelling 2nd floor/Master
     Bathroom - 248-Master Bath
     Date Taken: 12/2/2020



Exhibit A

 **Noble Public Adjusting Group**

93 Dwelling 2nd floor/Master
Bedroom - 236-Master Bedroom
Date Taken: 12/2/2020



94 Dwelling 2nd floor/Master
Bedroom - 238-Master Bedroom
Date Taken: 12/2/2020





**Noble Public Adjusting Group**

95   Dwelling 2nd floor/Master
Bedroom - 239-Master Bedroom
Date Taken: 12/2/2020



96   Dwelling 2nd floor/Loft Sitting
Area - 223-Loft Sitting area
Date Taken: 12/2/2020





**Noble Public Adjusting Group**

97   Dwelling 2nd floor/Loft Sitting
     Area - 235-Loft Area
     Date Taken: 12/2/2020



98   Dwelling 2nd floor/Loft Sitting
     Area - 227-Loft
     Date Taken: 12/2/2020





**Noble Public Adjusting Group**

99    Dwelling 2nd floor/Bedroom 4 -
      219-Bedroom 4
      Date Taken: 12/2/2020



100   Dwelling 2nd floor/Bedroom 4 -
      220-Bedroom 4 had carpet and
      baseboard damage fro
      Date Taken: 12/2/2020



 **Noble Public Adjusting Group**

101 Dwelling 2nd floor/Bedroom 4 -
221-Bedroom 4 had carpet and
baseboard damage fro
Date Taken: 12/2/2020



102 Dwelling 2nd floor/Bedroom 4 -
222-Bedroom 4 had carpet and
baseboard damage fro
Date Taken: 12/2/2020



C1414-ALEXANDER-SC

Exhibit A



**Noble Public Adjusting Group**

103  Dwelling 2nd floor/Laundry Room
- 224-Laundry Room had a
spongy floor due to washe
Date Taken: 12/2/2020

Floor has to be replaced



104  Dwelling 2nd floor/Laundry Room
- 225-Laundry Room
Date Taken: 12/2/2020





**Noble Public Adjusting Group**

105  Dwelling 2nd floor/Laundry Room
    - 226-Laundry Room
    Date Taken: 12/2/2020



 **Noble Public Adjusting Group**

| | |
|---|---|
| Insured: | Quasar Alexander |
| Property: | 3294 Sequoia Avenue |
| | Atlanta, GA 30349 |

| | | | |
|---|---|---|---|
| Claim Rep.: | Noble Public Adjusting Group | Business: | (850) 249-6972 |
| Business: | 107 Amar Place, Suite 103 | E-mail: | contact@noblepagroup.com |
| | Panama City Beach, FL 32413 | | |

| | | | |
|---|---|---|---|
| Estimator: | Noble Public Adjusting Group | Business: | (850) 249-6972 |
| Business: | 107 Amar Place, Suite 103 | E-mail: | contact@noblepagroup.com |
| | Panama City Beach, FL 32413 | | |

| | |
|---|---|
| Reference: | |
| Company: | AAA Insurance |

**Claim Number:** HOM700121987IV    **Policy Number:** 401313188    **Type of Loss:** Hurricane

| | | | |
|---|---|---|---|
| Date Contacted: | 11/27/2020 1:00 AM | | |
| Date of Loss: | 10/29/2020 1:00 AM | Date Received: | 11/12/2020 1:00 AM |
| Date Inspected: | 12/2/2020 1:00 AM | Date Entered: | 12/3/2020 9:00 AM |
| Date Est. Completed: | 12/3/2020 6:14 PM | | |

| | |
|---|---|
| Price List: | GAAT8X_NOV20 |
| | Restoration/Service/Remodel |
| Estimate: | C1447-ALEXANDER-SC |

*The following is our estimate for the repair of the damage to your property. Since this quotation will be used for insurance claim submittal purposes, we have used Xactimate which is an insurance industry standard. The prices are calculated based on local criteria and are deemed to the most accurate figures available at the time of this estimate. The estimates are hereby based on seen, disclosed, or otherwise obvious damage. Unseen, undisclosed or otherwise not obvious conditions, if discovered later or during repairs, will be considered not included. If discovered, any necessary additional repairs will be submitted for supplemental coverage, based on Xactimate and/or market value pricing.*

Exhibit A



**Noble Public Adjusting Group**

### C1447-ALEXANDER-SC

### Dwelling Exterior - Elevation



**Left Elevation**                                                                 **Height: 8'**

| 1,229.33 SF Walls | 1,010.00 SF Ceiling |
| 2,239.33 SF Walls & Ceiling | 1,010.00 SF Floor |
| 112.22 SY Flooring | 153.67 LF Floor Perimeter |
| 153.67 LF Ceil. Perimeter | |

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| **Clean-Pressure wash:** | | | | | | | |
| 1. Clean with pressure/chemical spray | 1,010.00 SF | | 0.00 | 0.27 | 0.81 | 54.70 | 328.21 |
| Pressure wash exterior once construction is complete | | | | | | | |
| Totals: Left Elevation | | | | | 0.81 | 54.70 | 328.21 |



**Right Elevation**                                                                 **Height: 8'**

| 1,246.67 SF Walls | 1,078.50 SF Ceiling |
| 2,325.17 SF Walls & Ceiling | 1,078.50 SF Floor |
| 119.83 SY Flooring | 155.83 LF Floor Perimeter |
| 155.83 LF Ceil. Perimeter | |

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| **Clean-Pressure wash:** | | | | | | | |
| 2. Clean with pressure/chemical spray | 1,078.50 SF | | 0.00 | 0.27 | 0.86 | 58.42 | 350.48 |
| Pressure wash after construction is complete | | | | | | | |
| Totals: Right Elevation | | | | | 0.86 | 58.42 | 350.48 |

**Rear Elevation**                                                                 **Height: 8'**

| 1,006.67 SF Walls | 750.67 SF Ceiling |
| 1,757.33 SF Walls & Ceiling | 750.67 SF Floor |
| 83.41 SY Flooring | 125.83 LF Floor Perimeter |
| 125.83 LF Ceil. Perimeter | |

C1447-ALEXANDER-SC

Exhibit A

 **Noble Public Adjusting Group**

## CONTINUED - Rear Elevation

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| **Clean-Pressure wash:** | | | | | | | |
| 3. Clean with pressure/chemical spray | 750.67 SF | | 0.00 | 0.27 | 0.60 | 40.66 | 243.94 |
| Pressure wash after construction is complete | | | | | | | |

| | | | | | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| Totals: Rear Elevation | | | | | 0.60 | 40.66 | 243.94 |
| Total: Dwelling Exterior - Elevation | | | | | 2.27 | 153.78 | 922.63 |

### Front Elevation                                                  Height: 8'



| | | |
|---|---|---|
| 1,030.67 SF Walls | | 816.11 SF Ceiling |
| 1,846.78 SF Walls & Ceiling | | 816.11 SF Floor |
| 90.68 SY Flooring | | 128.83 LF Floor Perimeter |
| 128.83 LF Ceil. Perimeter | | |

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| **Clean-Pressure wash:** | | | | | | | |
| 4. Clean with pressure/chemical spray | 816.11 SF | | 0.00 | 0.27 | 0.65 | 44.22 | 265.22 |
| Pressure wash after construction is complete | | | | | | | |

| | | | | | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| Totals: Front Elevation | | | | | 0.65 | 44.22 | 265.22 |

### Dwelling Roof



### Dwelling Ro1

| | | |
|---|---|---|
| 3,474.27 Surface Area | | 34.74 Number of Squares |
| 242.78 Total Perimeter Length | | 13.61 Total Ridge Length |
| 144.25 Total Hip Length | | |

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| **Roof: 3tab** | | | | | | | |
| **Tarping of the risk: (Prevention of further devastation or damage)** | | | | | | | |
| 5. Tarp - all-purpose poly - per sq ft (labor and material) | 1,868.00 SF | | 0.00 | 0.82 | 32.88 | 312.94 | 1,877.58 |
| Delivery & Staging: | | | | | | | |
| 6. Delivery charge (Bid Item) | 1.00 EA | | 0.00 | 150.00 | 0.00 | 0.00 | 150.00 |

C1447-ALEXANDER-SC                                   12/3/2020          Page: 3



**Noble Public Adjusting Group**

Noble Public Adjusting Group
*Indemed and Advocacy for the Insured*

## CONTINUED - Dwelling Ro1

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| **Delivery fee for roofing materials.** | | | | | | | |
| 7. Roofing - General Laborer - per hour | 30.00 HR | | 0.00 | 36.54 | 0.00 | 219.24 | 1,315.44 |

Hourly rate to stage roofing materials on roof.  OSHA **1926.1053(b)(22)** states an employee shall not carry any object or load that could cause the employee to lose balance and fall.

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 8. 3 tab - 25 yr. - composition shingle roofing - incl. felt | 34.74 SQ | | 118.13 | 0.00 | 0.00 | 820.76 | 4,924.60 |
| 9. 3 tab - 25 yr. - comp. shingle roofing - w/out felt | 36.33 SQ | | 0.00 | 187.46 | 253.18 | 1,412.72 | 8,476.32 |
| 10. Roofing felt - synthetic underlayment | 34.74 SQ | | 0.00 | 38.60 | 47.52 | 277.70 | 1,666.18 |
| 11. Water barrier joint taping - Mod. bitumen - 4" seam tape | 3,474.27 SF | | 0.00 | 0.25 | 19.46 | 177.62 | 1,065.65 |

**R908.7.2** Roof secondary water barrier for site-built single family residential structures
A secondary water barrier shall be installed using one of the following methods when roof covering is removed and replaced.
**In HVHZ regions:**
All joints in structural panel roof sheathing or decking shall be covered with a minimum 4 inch (102 mm) wide strip of self-adhering polymer modified bitumen tape applied directly to the sheathing or decking. The deck and self-adhering polymer modified bitumen tape shall be covered with one of the underlayment systems approved for the particular roof covering to be applied to the roof.

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 12. Asphalt starter - universal starter course | 242.78 LF | | 0.00 | 1.88 | 11.26 | 93.54 | 561.23 |
| **Ridge Cap:** | | | | | | | |
| 13. Ridge cap - composition shingles | 157.86 LF | | 2.32 | 0.00 | 0.00 | 73.24 | 439.48 |
| 14. Ridge cap - composition shingles | 76.00 LF | | 0.00 | 3.63 | 6.32 | 56.44 | 338.64 |
| 15a. Continuous ridge vent - shingle-over style | 9.61 LF | | 0.73 | 0.00 | 0.00 | 1.40 | 8.42 |
| 15b. Continuous ridge vent - shingle-over style | 9.61 LF | | 0.00 | 7.87 | 2.58 | 15.64 | 93.85 |
| **Flashing:** | | | | | | | |
| 16. Drip edge/gutter apron | 229.03 LF | | 0.28 | 0.00 | 0.00 | 12.82 | 76.95 |
| 17. Drip edge/gutter apron | 251.93 LF | | 0.00 | 2.25 | 18.14 | 116.98 | 701.96 |

**10% waste added to account for overlap and cutting loss.**

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 18. Caulking - butyl rubber | 242.78 LF | | 0.00 | 3.26 | 7.96 | 159.90 | 959.32 |

**Drip edge:** There shall be a minimum of 4 inch width of roof cement installed over the drip edge flange,

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 19a. Valley metal | 27.00 LF | | 0.51 | 0.00 | 0.00 | 2.76 | 16.53 |
| 19b. Valley metal | 27.00 LF | | 0.00 | 5.04 | 4.38 | 28.10 | 168.56 |

**R905.2.8.2 Valleys**

Valley linings shall be installed in accordance with the manufacturer's instructions before applying shingles. Valley linings of the following types shall be permitted:
For open valleys (valley lining exposed) lined with metal, the valley lining shall be not less than 16 inches (406 mm) wide and of any of the corrosion-resistant metals in Table R903.2.1.

C1447-ALEXANDER-SC

12/3/2020          Page: 4

Exhibit A

 **Noble Public Adjusting Group**

Noble Public Adjusting Group

### CONTINUED - Dwelling Ro1

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 20a.  Flashing - L flashing - galvanized | 32.00 LF | | 0.51 | 0.00 | 0.00 | 3.26 | 19.58 |
| 20b.  Flashing - L flashing - galvanized | 32.00 LF | | 0.00 | 3.46 | 3.30 | 22.80 | 136.82 |
| 21a.  Flashing - pipe jack - lead | 3.00 EA | | 16.34 | 0.00 | 0.00 | 9.80 | 58.82 |
| 21b.  Flashing - pipe jack - lead | 3.00 EA | | 0.00 | 65.26 | 9.17 | 41.00 | 245.95 |
| **Vents:** | | | | | | | |
| 22a.  Roof vent - turtle type - Metal | 6.00 EA | | 7.78 | 0.00 | 0.00 | 9.34 | 56.02 |
| 22b.  Roof vent - turtle type - Metal | 6.00 EA | | 0.00 | 57.65 | 10.36 | 71.26 | 427.52 |
| 23a.  Exhaust cap - through roof - 6" to 8" | 3.00 EA | | 7.78 | 0.00 | 0.00 | 4.66 | 28.00 |
| 23b.  Exhaust cap - through roof - 6" to 8" | 3.00 EA | | 0.00 | 77.48 | 8.21 | 48.12 | 288.77 |
| 24.  Apply mastic around vent pipes to repair leakage | 9.00 EA | | 0.00 | 22.24 | 0.44 | 40.12 | 240.72 |
| Steep Charge: | | | | | | | |
| 25.  Additional charge for steep roof - 7/12 to 9/12 slope | 34.74 SQ | | 32.43 | 0.00 | 0.00 | 225.32 | 1,351.94 |
| 26.  Additional charge for steep roof - 7/12 to 9/12 slope | 39.95 SQ | | 0.00 | 37.87 | 0.00 | 302.58 | 1,815.49 |
| **High Charge:** | | | | | | | |
| 27.  Additional charge for high roof (2 stories or greater) | 34.74 SQ | | 12.26 | 0.00 | 0.00 | 85.18 | 511.09 |
| 28.  Additional charge for high roof (2 stories or greater) | 39.95 SQ | | 0.00 | 16.72 | 0.00 | 133.60 | 801.56 |
| 29.  Fall protection harness and lanyard - per day | 40.00 DA | | 0.00 | 8.00 | 0.00 | 64.00 | 384.00 |

1926.501
 Each employee who is constructing a leading edge 6 feet (1.8 m) or more above lower levels shall be protected from falling by guardrail systems, safety net systems, or personal fall arrest systems.

| Sheathing: | | | | | | | |
|---|---|---|---|---|---|---|---|
| 30.  Re-nailing of roof sheathing - complete re-nail | 3,474.27 SF | | 0.00 | 0.24 | 5.56 | 167.88 | 1,007.26 |
| 31a.  Sheathing - OSB - 5/8" | 192.00 SF | | 0.49 | 0.00 | 0.00 | 18.82 | 112.90 |
| 31b.  Sheathing - OSB - 5/8" | 192.00 SF | | 0.00 | 2.47 | 19.35 | 98.72 | 592.31 |

The above line item is an allowance to replace any soft spots found in the decking, or decking damaged during the roof demo.

Additional Items:

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 32.  Digital satellite system - Detach & reset | 1.00 EA | | 0.00 | 31.18 | 0.00 | 6.24 | 37.42 |
| 33.  Digital satellite system - alignment and calibration only | 1.00 EA | | 0.00 | 93.55 | 0.00 | 18.72 | 112.27 |
| 34a.  Meter mast for overhead power - 2" conduit | 1.00 EA | | 67.93 | 0.00 | 0.00 | 13.58 | 81.51 |

C1447-ALEXANDER-SC

12/3/2020    Page: 5

Exhibit A



**Noble Public Adjusting Group**

## CONTINUED - Dwelling Ro1

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 34b. Meter mast for overhead power - 2" conduit | 1.00 EA | | 0.00 | 444.28 | 8.93 | 90.64 | 543.85 |
| **Gutters:** | | | | | | | |
| 35a. Gutter / downspout - aluminum - 6" | 165.00 LF | | 0.43 | 0.00 | 0.00 | 14.20 | 85.15 |
| 35b. Gutter / downspout - aluminum - 6" | 165.00 LF | | 0.00 | 8.86 | 76.82 | 307.74 | 1,846.46 |
| 36. Soffit & Fascia Installer - per hour | 12.00 HR | | 0.00 | 75.42 | 0.00 | 181.00 | 1,086.04 |
| Totals: Dwelling Ro1 | | | | | 545.82 | 5,760.38 | 34,712.16 |
| Total: Dwelling Roof | | | | | 545.82 | 5,760.38 | 34,712.16 |

### Dwelling First Floor

**Living Room**                                                                                        Height: 8'

| | |
|---|---|
| 424.67 SF Walls | 295.56 SF Ceiling |
| 720.22 SF Walls & Ceiling | 295.56 SF Floor |
| 32.84 SY Flooring | 53.08 LF Floor Perimeter |
| 53.08 LF Ceil. Perimeter | |

| | | | |
|---|---|---|---|
| **Missing Wall** | 7' 11" X 8' | Opens into FOYER_ENTRY | |
| **Missing Wall** | 9' 2" X 8' | Opens into BAR_AREA__SI | |

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| **General Cleaning:** | | | | | | | |
| 37. Clean - Heavy | 1,182.22 SF | | 0.00 | 0.66 | 0.95 | 156.26 | 937.48 |
| C+F+W | | | | | | | |

Clean surfaces before application of disinfectant.

The CDC states "If surfaces are dirty, they should be cleaned using a detergent or soap and water prior to disinfection."

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 38. Apply plant-based anti-microbial agent to | 1,182.22 SF | | 0.00 | 0.31 | 4.73 | 74.24 | 445.46 |
| (C+F+W)*2 | | | | | | | |

Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.
C+F+W

Wipe surfaces after application of disinfectant.

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 39. HEPA Vacuuming - Detailed - (PER SF) | 591.11 SF | | 0.00 | 0.78 | 0.00 | 92.22 | 553.29 |

Exhibit A



## Noble Public Adjusting Group

### CONTINUED - Living Room

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 40.  Deodorize building - Hot thermal fog | 4,728.89 CF | | 0.00 | 0.06 | 0.00 | 56.74 | 340.47 |
| (C+F+W)*2 | | | | | | | |

Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.  Fogging is recommended in addition to spray application to ensure disinfectant is applied to hard to reach areas.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Totals:  Living Room | | | | | 5.68 | 379.46 | 2,276.70 |

**Kitchen**  Height: 8'

291.33 SF Walls        148.02 SF Ceiling
439.35 SF Walls & Ceiling    148.02 SF Floor
16.45 SY Flooring      36.42 LF Floor Perimeter
36.42 LF Ceil. Perimeter

| **Missing Wall** | **12' 3" X 8'** | | | **Opens into DINING_ROOM** | | | |
|---|---|---|---|---|---|---|---|
| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
| Painting: | | | | | | | |
| 41.  Base cap or shoe / Quarter round - Detach & reset | 50.00 LF | | 0.00 | 1.39 | 0.04 | 13.90 | 83.44 |
| 42.  Seal & paint base shoe or quarter round | 75.00 LF | | 0.00 | 0.72 | 0.60 | 10.92 | 65.52 |
| 43.  Paint door/window trim & jamb - 2 coats (per side) | 2.00 EA | | 0.00 | 28.11 | 0.66 | 11.38 | 68.26 |
| 44.  Paint baseboard - two coats | 75.00 LF | | 0.00 | 1.30 | 0.72 | 19.64 | 117.86 |
| Fixtures: | | | | | | | |
| 45.  Heat/AC register - Mechanically attached - Detach & reset | 1.00 EA | | 0.00 | 13.39 | 0.00 | 2.68 | 16.07 |
| 46.  Smoke detector | 1.00 EA | 43.18 | 0.00 | 0.00 | 0.00 | 8.64 | 51.82 |
| **General Cleaning:** | | | | | | | |
| 47.  Deodorize building - Hot thermal fog | 2,368.33 CF | | 0.00 | 0.06 | 0.00 | 28.42 | 170.52 |
| (C+F+W)*2 | | | | | | | |

Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.  Fogging is recommended in addition to spray application to ensure disinfectant is applied to hard to reach areas.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 48.  Apply plant-based anti-microbial agent to more than the ceiling | 1,174.75 SF | | 0.00 | 0.31 | 4.70 | 73.78 | 442.65 |
| (C+F+W)*2 | | | | | | | |

Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.

C1447-ALEXANDER-SC                                    12/3/2020        Page: 7

Exhibit A



**Noble Public Adjusting Group**

### CONTINUED - Kitchen

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| **C+F+W** | | | | | | | |
| **Wipe surfaces after application of disinfectant.** | | | | | | | |
| 49. HEPA Vacuuming - Detailed - (PER SF) | 587.37 SF | | 0.00 | 0.78 | 0.00 | 91.64 | 549.79 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Totals: Kitchen | | | | | 6.72 | 261.00 | 1,565.93 |



**Foyer/Entry**                                                                 **Height: 17'**

| | |
|---|---|
| 517.50 SF Walls | 71.91 SF Ceiling |
| 589.41 SF Walls & Ceiling | 71.91 SF Floor |
| 7.99 SY Flooring | 26.25 LF Floor Perimeter |
| 34.17 LF Ceil. Perimeter | |

**Missing Wall**                    **7' 11" X 17'**                    Opens into LIVING_ROOM

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| **General Cleaning:** | | | | | | | |
| 50. Clean more than the ceiling - Heavy | 1,322.64 SF | | 0.00 | 0.66 | 1.06 | 174.80 | 1,048.80 |
| **C+F+W** | | | | | | | |

**Clean surfaces before application of disinfectant.**

**The CDC states "If surfaces are dirty, they should be cleaned using a detergent or soap and water prior to disinfection."**

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 51. Apply plant-based anti-microbial agent to more than the ceiling | 1,322.64 SF | | 0.00 | 0.31 | 5.29 | 83.06 | 498.37 |
| **(C+F+W)*2** | | | | | | | |

**Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.**
**C+F+W**

**Wipe surfaces after application of disinfectant.**

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 52. HEPA Vacuuming - Detailed - (PER SF) | 661.32 SF | | 0.00 | 0.78 | 0.00 | 103.16 | 618.99 |
| 53. Deodorize building - Hot thermal fog | 2,444.93 CF | | 0.00 | 0.06 | 0.00 | 29.34 | 176.04 |
| **(C+F+W)*2** | | | | | | | |

**Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.   Fogging is recommended in addition to spray application to ensure disinfectant is applied to hard to reach areas.**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Totals: Foyer/Entry | | | | | 6.35 | 390.36 | 2,342.20 |

| | | |
|---|---|---|
| C1447-ALEXANDER-SC | 12/3/2020 | Page: 8 |

Exhibit A



**Noble Public Adjusting Group**

| Garage | | | | | | Height: 8' |
|---|---|---|---|---|---|---|
| 708.00 SF Walls | | | | 464.88 SF Ceiling | | |
| 1,172.88 SF Walls & Ceiling | | | | 464.88 SF Floor | | |
| 51.65 SY Flooring | | | | 88.50 LF Floor Perimeter | | |
| 88.50 LF Ceil. Perimeter | | | | | | |

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| **1/2 inch drywall:** | | | | | | | |
| 54a. 1/2" drywall - hung, taped, heavy texture, ready for paint | 1,172.88 SF | | 0.60 | 0.00 | 0.00 | 140.74 | 844.47 |
| 54b. 1/2" drywall - hung, taped, heavy texture, ready for paint | 1,172.88 SF | | 0.00 | 2.27 | 61.93 | 544.86 | 3,269.23 |
| 55. Batt insulation - 4" - R13 - paper faced | 177.00 SF | | 0.00 | 0.77 | 7.08 | 28.68 | 172.05 |
| Fixtures: | | | | | | | |
| 56. Overhead door - Detach & reset | 1.00 EA | | 0.00 | 354.42 | 0.00 | 70.88 | 425.30 |
| **Painting:** | | | | | | | |
| 57. Mask and prep for paint - tape only (per LF) | 21.92 LF | | 0.00 | 0.55 | 0.07 | 2.44 | 14.57 |
| To mask wall paneling before painting. | | | | | | | |
| 58. Seal the ceiling w/latex based stain blocker - one coat | 464.88 SF | | 0.00 | 0.56 | 2.60 | 52.58 | 315.51 |
| 59. Paint the surface area - two coats | 1,172.88 SF | | 0.00 | 0.87 | 19.70 | 208.02 | 1,248.13 |
| Ceiling tiles were painted. | | | | | | | |
| **General Cleaning:** | | | | | | | |
| 60. Clean more than the ceiling - Heavy | 3,275.53 SF | | 0.00 | 0.66 | 2.62 | 432.90 | 2,597.37 |
| C+F+W | | | | | | | |
| Clean surfaces before application of disinfectant. | | | | | | | |
| The CDC states "If surfaces are dirty, they should be cleaned using a detergent or soap and water prior to disinfection." | | | | | | | |
| 61. Apply plant-based anti-microbial agent to more than the ceiling | 3,275.53 SF | | 0.00 | 0.31 | 13.10 | 205.70 | 1,234.21 |
| (C+F+W)*2 | | | | | | | |
| Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions. | | | | | | | |
| C+F+W | | | | | | | |
| Wipe surfaces after application of disinfectant. | | | | | | | |
| 62. HEPA Vacuuming - Detailed - (PER SF) | 1,637.76 SF | | 0.00 | 0.78 | 0.00 | 255.50 | 1,532.95 |
| 63. Deodorize building - Hot thermal fog | 7,438.11 CF | | 0.00 | 0.06 | 0.00 | 89.26 | 535.55 |

Exhibit A



**Noble Public Adjusting Group**

Noble Public Adjusting Group
*Damage and Advocacy for the Insured*

### CONTINUED - Garage

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| (C+F+W)*2 | | | | | | | |

Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.   Fogging is recommended in addition to spray application to ensure disinfectant is applied to hard to reach areas.

| Totals: Garage | | | | | 107.10 | 2,031.56 | 12,189.34 |
|---|---|---|---|---|---|---|---|

---

**Bar Area/ Sitting Area**                                                                                 **Height: 8'**

| | |
|---|---|
| 538.67 SF Walls | 420.78 SF Ceiling |
| 959.45 SF Walls & Ceiling | 420.78 SF Floor |
| 46.75 SY Flooring | 67.33 LF Floor Perimeter |
| 67.33 LF Ceil. Perimeter | |

| Missing Wall | 9' 2" X 8' | Opens into LIVING_ROOM |
|---|---|---|
| Missing Wall | 6' 2" X 8' | Opens into DINING_ROOM |

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| **General Cleaning:** | | | | | | | |
| 64. Clean more than the ceiling - Heavy | 2,760.47 SF | | 0.00 | 0.66 | 2.21 | 364.82 | 2,188.94 |
| C+F+W | | | | | | | |

Clean surfaces before application of disinfectant.

The CDC states "If surfaces are dirty, they should be cleaned using a detergent or soap and water prior to disinfection."

| 65. Apply plant-based anti-microbial agent to more than the ceiling | 2,760.47 SF | | 0.00 | 0.31 | 11.04 | 173.36 | 1,040.15 |
|---|---|---|---|---|---|---|---|
| (C+F+W)*2 | | | | | | | |

Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.
C+F+W

Wipe surfaces after application of disinfectant.

| 66. HEPA Vacuuming - Detailed - (PER SF) | 1,380.24 SF | | 0.00 | 0.78 | 0.00 | 215.32 | 1,291.91 |
|---|---|---|---|---|---|---|---|
| 67. Deodorize building - Hot thermal fog | 6,732.56 CF | | 0.00 | 0.06 | 0.00 | 80.80 | 484.75 |
| (C+F+W)*2 | | | | | | | |

Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.   Fogging is recommended in addition to spray application to ensure disinfectant is applied to hard to reach areas.

| Totals: Bar Area/ Sitting Area | | | | | 13.25 | 834.30 | 5,005.75 |
|---|---|---|---|---|---|---|---|

---

Exhibit A



**Noble Public Adjusting Group**

| Stairs | | | | | Height: 13' |
|---|---|---|---|---|---|

| 373.49 SF Walls | 80.15 SF Ceiling |
|---|---|
| 453.65 SF Walls & Ceiling | 108.74 SF Floor |
| 12.08 SY Flooring | 39.43 LF Floor Perimeter |
| 38.00 LF Ceil. Perimeter | |

| Missing Wall | 4' 10" X 12' 11 15/16" | Opens into DINING_ROOM |
|---|---|---|

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| **General Cleaning:** | | | | | | | |
| 68. Clean more than the ceiling - Heavy | 1,124.77 SF | | 0.00 | 0.66 | 0.90 | 148.66 | 891.91 |
| **C+F+W** | | | | | | | |

Clean surfaces before application of disinfectant.

The CDC states "If surfaces are dirty, they should be cleaned using a detergent or soap and water prior to disinfection."

| 69. Apply plant-based anti-microbial agent to more than the ceiling | 1,124.77 SF | | 0.00 | 0.31 | 4.50 | 70.64 | 423.82 |
|---|---|---|---|---|---|---|---|
| **(C+F+W)*2** | | | | | | | |

Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.
**C+F+W**

Wipe surfaces after application of disinfectant.

| 70. HEPA Vacuuming - Detailed - (PER SF) | 562.38 SF | | 0.00 | 0.78 | 0.00 | 87.74 | 526.40 |
|---|---|---|---|---|---|---|---|
| 71. Deodorize building - Hot thermal fog | 1,689.26 CF | | 0.00 | 0.06 | 0.00 | 20.28 | 121.64 |
| **(C+F+W)*2** | | | | | | | |

Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.  Fogging is recommended in addition to spray application to ensure disinfectant is applied to hard to reach areas.

| Totals: Stairs | | | | | 5.40 | 327.32 | 1,963.77 |
|---|---|---|---|---|---|---|---|

Exhibit A



## Noble Public Adjusting Group

---

**Dining Room**                                                                **Height: 8'**

| | |
|---|---|
| 168.67 SF Walls | 244.29 SF Ceiling |
| 412.96 SF Walls & Ceiling | 244.29 SF Floor |
| 27.14 SY Flooring | 21.08 LF Floor Perimeter |
| 21.08 LF Ceil. Perimeter | |

| | | |
|---|---|---|
| **Missing Wall** | 17' 5" X 8' | **Opens into FAMILY_ROOM** |
| **Missing Wall** | 12' 3" X 8' | **Opens into KITCHEN** |
| **Missing Wall** | 6' 2" X 8' | **Opens into BAR_AREA__SI** |
| **Missing Wall** | 4' 10" X 8' | **Opens into STAIRS** |
| **Missing Wall** | 4' 1" X 8' | **Opens into ROOM2** |

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| **General Cleaning:** | | | | | | | |
| 72. Deodorize building - Hot thermal fog | 3,908.64 CF | | 0.00 | 0.06 | 0.00 | 46.90 | 281.42 |
| **(C+F+W)*2** | | | | | | | |

**Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.   Fogging is recommended in addition to spray application to ensure disinfectant is applied to hard to reach areas.**

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 73. Apply plant-based anti-microbial agent to more than the ceiling | 1,314.50 SF | | 0.00 | 0.31 | 5.26 | 82.56 | 495.32 |
| **(C+F+W)*2** | | | | | | | |

**Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.**

**C+F+W**

**Wipe surfaces after application of disinfectant.**

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 74. HEPA Vacuuming - Detailed - (PER SF) | 657.25 SF | | 0.00 | 0.78 | 0.00 | 102.54 | 615.20 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Totals: Dining Room | | | | | 5.26 | 232.00 | 1,391.94 |

---

**Hallway**                                                                 **Height: 8'**

| | |
|---|---|
| 331.33 SF Walls | 93.20 SF Ceiling |
| 424.53 SF Walls & Ceiling | 93.20 SF Floor |
| 10.36 SY Flooring | 41.42 LF Floor Perimeter |
| 41.42 LF Ceil. Perimeter | |

| | | |
|---|---|---|
| **Missing Wall** | 4' 1" X 8' | **Opens into DINING_ROOM** |

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|

Exhibit A

 **Noble Public Adjusting Group**

### CONTINUED - Hallway

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| **General Cleaning:** | | | | | | | |
| 75. Deodorize building - Hot thermal fog | 1,491.13 CF | | 0.00 | 0.06 | 0.00 | 17.90 | 107.37 |
| **(C+F+W)*2** | | | | | | | |

Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.   Fogging is recommended in addition to spray application to ensure disinfectant is applied to hard to reach areas.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 76. Apply plant-based anti-microbial agent to more than the ceiling | 1,035.45 SF | | 0.00 | 0.31 | 4.14 | 65.02 | 390.15 |
| **(C+F+W)*2** | | | | | | | |

Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.

**C+F+W**

Wipe surfaces after application of disinfectant.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 77. HEPA Vacuuming - Detailed - (PER SF) | 517.72 SF | | 0.00 | 0.78 | 0.00 | 80.76 | 484.58 |

| | | | | | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| Totals: Hallway | | | | | 4.14 | 163.68 | 982.10 |

| | | | | | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| Total: Dwelling First Floor | | | | | 153.90 | 4,619.68 | 27,717.73 |



**Family Room**                                                                 **Height: 8'**

524.66 SF Walls            419.44 SF Ceiling
944.10 SF Walls & Ceiling     419.44 SF Floor
46.60 SY Flooring           65.58 LF Floor Perimeter
65.58 LF Ceil. Perimeter

**Missing Wall**                     17' 5" X 8'                     **Opens into DINING_ROOM**

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| **1/2 inch drywall:** | | | | | | | |
| 78a. 1/2" drywall - hung, taped, heavy texture, ready for paint | 944.10 SF | | 0.60 | 0.00 | 0.00 | 113.30 | 679.76 |
| 78b. 1/2" drywall - hung, taped, heavy texture, ready for paint | 944.10 SF | | 0.00 | 2.27 | 49.85 | 438.60 | 2,631.56 |
| 79. Batt insulation - 4" - R13 - paper faced | 131.17 SF | | 0.00 | 0.77 | 5.25 | 21.26 | 127.51 |
| 80a. Crown molding - 2 1/4" | 65.58 LF | | 0.97 | 0.00 | 0.00 | 12.72 | 76.33 |
| 80b. Crown molding - 2 1/4" | 65.58 LF | | 0.00 | 3.24 | 5.46 | 43.60 | 261.54 |
| 81a. Baseboard - 2 1/4" | 65.58 LF | | 0.60 | 0.00 | 0.00 | 7.88 | 47.23 |
| 81b. Baseboard - 2 1/4" | 65.58 LF | | 0.00 | 2.56 | 4.67 | 34.52 | 207.07 |

C1447-ALEXANDER-SC                                          12/3/2020          Page: 13

Exhibit A


**Noble Public Adjusting Group**

**CONTINUED - Family Room**

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| Painting: | | | | | | | |
| 82. Base cap or shoe / Quarter round - Detach & reset | 50.00 LF | | 0.00 | 1.39 | 0.04 | 13.90 | 83.44 |
| 83. Seal & paint base shoe or quarter round | 75.00 LF | | 0.00 | 0.72 | 0.60 | 10.92 | 65.52 |
| 84. Paint door/window trim & jamb - 2 coats (per side) | 2.00 EA | | 0.00 | 28.11 | 0.66 | 11.38 | 68.26 |
| 85. Paint baseboard - two coats | 75.00 LF | | 0.00 | 1.30 | 0.72 | 19.64 | 117.86 |
| Fixtures: | | | | | | | |
| 86. Heat/AC register - Mechanically attached - Detach & reset | 1.00 EA | | 0.00 | 13.39 | 0.00 | 2.68 | 16.07 |
| 87. Smoke detector | 1.00 EA | 43.18 | 0.00 | 0.00 | 0.00 | 8.64 | 51.82 |
| 88. Window drapery - hardware - Detach & reset | 2.00 EA | | 0.00 | 27.21 | 0.00 | 10.88 | 65.30 |
| 89. Remove and rehang drapery - per hour | 2.00 HR | | 0.00 | 49.66 | 0.00 | 19.86 | 119.18 |

**Total hours are not just the removal and reset but also the storage and packaging of the drapes during the rebuild process.**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 90. Window blind - horizontal or vertical - Detach & reset | 2.00 EA | | 0.00 | 27.21 | 0.00 | 10.88 | 65.30 |
| **Painting of the ceiling:** | | | | | | | |
| 91. Mask and prep for paint - tape only (per LF) | 17.00 LF | | 0.00 | 0.55 | 0.05 | 1.90 | 11.30 |

**To mask wall paneling before painting.**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 92. Seal the ceiling w/latex based stain blocker - one coat | 419.44 SF | | 0.00 | 0.56 | 2.35 | 47.46 | 284.70 |
| 93. Paint the ceiling - two coats | 419.44 SF | | 0.00 | 0.87 | 7.05 | 74.40 | 446.36 |
| Ceiling tiles were painted. | | | | | | | |
| **General Cleaning:** | | | | | | | |
| 94. Deodorize building - Hot thermal fog | 6,711.00 CF | | 0.00 | 0.06 | 0.00 | 80.54 | 483.20 |
| (C+F+W)*2 | | | | | | | |

**Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.  Fogging is recommended in addition to spray application to ensure disinfectant is applied to hard to reach areas.**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 95. Apply plant-based anti-microbial agent to more than the ceiling | 2,727.07 SF | | 0.00 | 0.31 | 10.91 | 171.26 | 1,027.56 |
| (C+F+W)*2 | | | | | | | |

**Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.**

**C+F+W**

**Wipe surfaces after application of disinfectant.**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 96. HEPA Vacuuming - Detailed - (PER SF) | 1,363.54 SF | | 0.00 | 0.78 | 0.00 | 212.72 | 1,276.28 |

Exhibit A

 **Noble Public Adjusting Group**

## CONTINUED - Family Room

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| Totals: Family Room | | | | | 87.61 | 1,368.94 | 8,213.15 |

### Dwelling 2nd floor

**Bedroom 3**      **Height: 8'**

464.00 SF Walls      208.00 SF Ceiling
672.00 SF Walls & Ceiling      208.00 SF Floor
23.11 SY Flooring      58.00 LF Floor Perimeter
58.00 LF Ceil. Perimeter

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| **General Cleaning:** | | | | | | | |
| 97. Deodorize building - Hot thermal fog | 3,328.00 CF | | 0.00 | 0.06 | 0.00 | 39.94 | 239.62 |
| (C+F+W)*2 | | | | | | | |

Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.  Fogging is recommended in addition to spray application to ensure disinfectant is applied to hard to reach areas.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 98. Apply plant-based anti-microbial agent to more than the ceiling | 1,760.00 SF | | 0.00 | 0.31 | 7.04 | 110.52 | 663.16 |
| (C+F+W)*2 | | | | | | | |

Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.

C+F+W

Wipe surfaces after application of disinfectant.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 99. HEPA Vacuuming - Detailed - (PER SF) | 880.00 SF | | 0.00 | 0.78 | 0.00 | 137.28 | 823.68 |
| Totals: Bedroom 3 | | | | | 7.04 | 287.74 | 1,726.46 |



**Hall Bathroom**      **Height: 8'**

401.33 SF Walls      153.46 SF Ceiling
554.79 SF Walls & Ceiling      153.46 SF Floor
17.05 SY Flooring      50.17 LF Floor Perimeter
50.17 LF Ceil. Perimeter

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|

C1447-ALEXANDER-SC      12/3/2020      Page: 15

Exhibit A



**Noble Public Adjusting Group**

## CONTINUED - Hall Bathroom

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| **General Cleaning:** | | | | | | | |
| 100. Deodorize building - Hot thermal fog | 2,455.33 CF | | 0.00 | 0.06 | 0.00 | 29.46 | 176.78 |
| (C+F+W)*2 | | | | | | | |

Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.  Fogging is recommended in addition to spray application to ensure disinfectant is applied to hard to reach areas.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 101.  Apply plant-based anti-microbial agent to more than the ceiling | 1,416.50 SF | | 0.00 | 0.31 | 5.67 | 88.96 | 533.75 |
| (C+F+W)*2 | | | | | | | |

Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.

C+F+W

Wipe surfaces after application of disinfectant.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 102.  HEPA Vacuuming - Detailed - (PER SF) | 708.25 SF | | 0.00 | 0.78 | 0.00 | 110.48 | 662.92 |

| Totals: Hall Bathroom | | | | | 5.67 | 228.90 | 1,373.45 |
|---|---|---|---|---|---|---|---|



**Bedroom 2**                                                                 **Height: 8'**

|  |  |
|---|---|
| 416.00 SF Walls | 166.75 SF Ceiling |
| 582.75 SF Walls & Ceiling | 166.75 SF Floor |
| 18.53 SY Flooring | 52.00 LF Floor Perimeter |
| 52.00 LF Ceil. Perimeter | |

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| **General Cleaning:** | | | | | | | |
| 103.  Deodorize building - Hot thermal fog | 2,668.00 CF | | 0.00 | 0.06 | 0.00 | 32.02 | 192.10 |
| (C+F+W)*2 | | | | | | | |

Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.  Fogging is recommended in addition to spray application to ensure disinfectant is applied to hard to reach areas.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 104.  Apply plant-based anti-microbial agent to more than the ceiling | 1,499.00 SF | | 0.00 | 0.31 | 6.00 | 94.14 | 564.83 |
| (C+F+W)*2 | | | | | | | |

Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.

C+F+W

Wipe surfaces after application of disinfectant.

Exhibit A



**Noble Public Adjusting Group**

## CONTINUED - Bedroom 2

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 105. HEPA Vacuuming - Detailed - (PER SF) | 749.50 SF | | 0.00 | 0.78 | 0.00 | 116.92 | 701.53 |
| Totals: Bedroom 2 | | | | | 6.00 | 243.08 | 1,458.46 |



**Master Bathroom**            **Height: 8'**

| | |
|---|---|
| 434.67 SF Walls | 140.95 SF Ceiling |
| 575.62 SF Walls & Ceiling | 140.95 SF Floor |
| 15.66 SY Flooring | 54.33 LF Floor Perimeter |
| 54.33 LF Ceil. Perimeter | |

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| **1/2 inch drywall:** | | | | | | | |
| 106a. 1/2" drywall - hung, taped, heavy texture, ready for paint | 575.62 SF | | 0.58 | 0.00 | 0.00 | 66.78 | 400.64 |
| 106b. 1/2" drywall - hung, taped, heavy texture, ready for paint | 575.62 SF | | 0.00 | 2.19 | 30.39 | 258.20 | 1,549.20 |
| 107. Batt insulation - 4" - R13 - paper faced | 108.67 SF | | 0.00 | 0.68 | 4.00 | 15.58 | 93.48 |
| 108a. Crown molding - 2 1/4" | 54.33 LF | | 0.74 | 0.00 | 0.00 | 8.04 | 48.24 |
| 108b. Crown molding - 2 1/4" | 54.33 LF | | 0.00 | 2.71 | 4.52 | 30.34 | 182.09 |
| **Flooring:** | | | | | | | |
| Bathroom Fixtures: | | | | | | | |
| 109a. Vanity | 8.00 LF | | 11.88 | 0.00 | 0.00 | 19.00 | 114.04 |
| 109b. Vanity | 8.00 LF | | 0.00 | 139.46 | 65.28 | 236.20 | 1,417.16 |
| Base of cabinet sat in water for an extended period of time. The wood has began to swell and delaminate. Replacement required. | | | | | | | |
| 110a. Countertop - post formed plastic laminate | 8.00 LF | | 6.59 | 0.00 | 0.00 | 10.54 | 63.26 |
| 110b. Countertop - post formed plastic laminate | 8.00 LF | | 0.00 | 47.26 | 20.89 | 79.80 | 478.77 |
| 111a. Backsplash - plastic laminate | 4.00 SF | | 0.78 | 0.00 | 0.00 | 0.62 | 3.74 |
| 111b. Backsplash - plastic laminate | 4.00 SF | | 0.00 | 6.58 | 0.92 | 5.44 | 32.68 |
| 112. P-trap assembly - ABS (plastic) | 2.00 EA | 50.36 | 0.00 | 0.00 | 0.00 | 20.14 | 120.86 |
| 113. Sink - single | 2.00 EA | 140.67 | 0.00 | 0.00 | 0.00 | 56.26 | 337.60 |
| 114. Mirror - 1/4" plate glass | 32.00 SF | 5.21 | 0.00 | 0.00 | 0.00 | 33.34 | 200.06 |
| 115. Light bar - 3 lights - High grade | 2.00 EA | | 0.00 | 145.21 | 17.83 | 61.64 | 369.89 |

Exhibit A

 **Noble Public Adjusting Group**

Noble Public Adjusting Group

**CONTINUED - Master Bathroom**

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 116.  Light bulb - Incand. small or medium globe - mat. only | 6.00 EA | | 0.00 | 1.45 | 0.70 | 1.88 | 11.28 |
| 117.  Towel ring - Detach & reset | 2.00 EA | | 0.00 | 14.94 | 0.00 | 5.98 | 35.86 |
| 118.  Towel bar - Detach & reset | 1.00 EA | | 0.00 | 14.16 | 0.00 | 2.84 | 17.00 |
| 119.  Clean towel bar - Heavy | 3.00 EA | | 0.00 | 6.39 | 0.00 | 3.84 | 23.01 |
| Includes 2 towel rings. | | | | | | | |
| 120.  Shower curtain rod - Detach & reset | 1.00 EA | | 0.00 | 13.45 | 0.00 | 2.70 | 16.15 |
| 121.  Toilet paper holder - Detach & reset | 1.00 EA | | 0.00 | 14.94 | 0.00 | 2.98 | 17.92 |
| 122.  Toilet - Detach & reset | 1.00 EA | | 0.00 | 229.31 | 0.45 | 45.96 | 275.72 |
| 123.  Plumbing fixture supply line | 4.00 EA | | 0.00 | 17.14 | 1.91 | 14.10 | 84.57 |
| For sink. | | | | | | | |
| Painting: | | | | | | | |
| 124.  Base cap or shoe / Quarter round - Detach & reset | 12.83 LF | | 0.00 | 1.39 | 0.01 | 3.56 | 21.40 |
| 125.  Seal & paint base shoe or quarter round | 12.83 LF | | 0.00 | 0.72 | 0.10 | 1.86 | 11.20 |
| 126.  Paint door/window trim & jamb - 2 coats (per side) | 2.00 EA | | 0.00 | 28.11 | 0.66 | 11.38 | 68.26 |
| 127.  Paint baseboard - two coats | 12.83 LF | | 0.00 | 1.30 | 0.12 | 3.36 | 20.16 |
| Fixtures: | | | | | | | |
| 128.  Heat/AC register - Mechanically attached - Detach & reset | 1.00 EA | | 0.00 | 13.39 | 0.00 | 2.68 | 16.07 |
| 129.  Smoke detector | 1.00 EA | 43.18 | 0.00 | 0.00 | 0.00 | 8.64 | 51.82 |
| **Painting of the ceiling:** | | | | | | | |
| 130.  Mask and prep for paint - tape only (per LF) | 29.83 LF | | 0.00 | 0.55 | 0.10 | 3.30 | 19.81 |
| **To mask wall paneling before painting.** | | | | | | | |
| 131.  Seal the ceiling w/latex based stain blocker - one coat | 140.95 SF | | 0.00 | 0.56 | 0.79 | 15.94 | 95.66 |
| 132.  Paint the ceiling - two coats | 140.95 SF | | 0.00 | 0.87 | 2.37 | 25.00 | 150.00 |
| Ceiling tiles were painted. | | | | | | | |
| Totals:  Master Bathroom | | | | | 151.04 | 1,057.92 | 6,347.60 |

Exhibit A

 **Noble Public Adjusting Group**



### Master Bedroom                                                    Height: 8'

| | |
|---|---|
| 781.33 SF Walls | 489.34 SF Ceiling |
| 1,270.67 SF Walls & Ceiling | 489.34 SF Floor |
| 54.37 SY Flooring | 97.67 LF Floor Perimeter |
| 97.67 LF Ceil. Perimeter | |



### Subroom: Master Closet (2)                                        Height: 8'

| | |
|---|---|
| 288.00 SF Walls | 72.00 SF Ceiling |
| 360.00 SF Walls & Ceiling | 72.00 SF Floor |
| 8.00 SY Flooring | 36.00 LF Floor Perimeter |
| 36.00 LF Ceil. Perimeter | |

### Subroom: Master Closet (1)                                        Height: 8'

| | |
|---|---|
| 141.03 SF Walls | 18.08 SF Ceiling |
| 159.11 SF Walls & Ceiling | 18.08 SF Floor |
| 2.01 SY Flooring | 17.63 LF Floor Perimeter |
| 17.63 LF Ceil. Perimeter | |

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| **General Cleaning:** | | | | | | | |
| 133. Deodorize building - Hot thermal fog | 9,270.77 CF | | 0.00 | 0.06 | 0.00 | 111.26 | 667.51 |
| **(C+F+W)*2** | | | | | | | |

Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.   Fogging is recommended in addition to spray application to ensure disinfectant is applied to hard to reach areas.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 134. Apply plant-based anti-microbial agent to more than the ceiling | 4,738.41 SF | | 0.00 | 0.31 | 18.95 | 297.58 | 1,785.44 |
| **(C+F+W)*2** | | | | | | | |

Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.

**C+F+W**

Wipe surfaces after application of disinfectant.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 135. HEPA Vacuuming - Detailed - (PER SF) | 2,369.21 SF | | 0.00 | 0.78 | 0.00 | 369.60 | 2,217.58 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Totals: Master Bedroom | | | | | 18.95 | 778.44 | 4,670.53 |

C1447-ALEXANDER-SC

12/3/2020          Page: 19

Exhibit A

 **Noble Public Adjusting Group**



## Loft Sitting Area

**Height: 8'**

| | |
|---|---|
| 875.21 SF Walls | 570.23 SF Ceiling |
| 1,445.44 SF Walls & Ceiling | 570.23 SF Floor |
| 63.36 SY Flooring | 109.40 LF Floor Perimeter |
| 109.40 LF Ceil. Perimeter | |

| **Missing Wall** | 5' 5 3/16" X 8' | **Opens into Exterior** |
|---|---|---|

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| **General Cleaning:** | | | | | | | |
| 136. Deodorize building - Hot thermal fog | 9,123.72 CF | | 0.00 | 0.06 | 0.00 | 109.48 | 656.90 |
| **(C+F+W)*2** | | | | | | | |

Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.   **Fogging is recommended in addition to spray application to ensure disinfectant is applied to hard to reach areas.**

| 137. Apply plant-based anti-microbial agent to more than the ceiling | 4,031.35 SF | | 0.00 | 0.31 | 16.13 | 253.16 | 1,519.01 |
|---|---|---|---|---|---|---|---|
| **(C+F+W)*2** | | | | | | | |

Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.

**C+F+W**

**Wipe surfaces after application of disinfectant.**

| 138. HEPA Vacuuming - Detailed - (PER SF) | 2,015.67 SF | | 0.00 | 0.78 | 0.00 | 314.44 | 1,886.66 |
|---|---|---|---|---|---|---|---|

| Totals: Loft Sitting Area | | | | | 16.13 | 677.08 | 4,062.57 |
|---|---|---|---|---|---|---|---|



## Bedroom 4

**Height: 8'**

| | |
|---|---|
| 429.33 SF Walls | 167.94 SF Ceiling |
| 597.28 SF Walls & Ceiling | 167.94 SF Floor |
| 18.66 SY Flooring | 53.67 LF Floor Perimeter |
| 53.67 LF Ceil. Perimeter | |

## Subroom:  Bedroom 4 Closet (1)

**Height: 8'**

| | |
|---|---|
| 248.00 SF Walls | 44.72 SF Ceiling |
| 292.72 SF Walls & Ceiling | 44.72 SF Floor |
| 4.97 SY Flooring | 31.00 LF Floor Perimeter |
| 31.00 LF Ceil. Perimeter | |

C1447-ALEXANDER-SC

Exhibit A

 **Noble Public Adjusting Group**

CONTINUED - Bedroom 4

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| **General Cleaning:** | | | | | | | |
| 139. Deodorize building - Hot thermal fog | 3,402.67 CF | | 0.00 | 0.06 | 0.00 | 40.84 | 245.00 |
| (C+F+W)*2 | | | | | | | |

Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.  Fogging is recommended in addition to spray application to ensure disinfectant is applied to hard to reach areas.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 140. Apply plant-based anti-microbial agent to more than the ceiling | 2,205.33 SF | | 0.00 | 0.31 | 8.82 | 138.50 | 830.97 |
| (C+F+W)*2 | | | | | | | |

Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.

C+F+W

Wipe surfaces after application of disinfectant.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 141. HEPA Vacuuming - Detailed - (PER SF) | 1,102.67 SF | | 0.00 | 0.78 | 0.00 | 172.02 | 1,032.10 |

| Totals: Bedroom 4 | | | | | 8.82 | 351.36 | 2,108.07 |
|---|---|---|---|---|---|---|---|



**Laundry Room**                                                            Height: 8'

| | | |
|---|---|---|
| 209.33 SF Walls | | 41.53 SF Ceiling |
| 250.86 SF Walls & Ceiling | | 41.53 SF Floor |
| 4.61 SY Flooring | | 26.17 LF Floor Perimeter |
| 26.17 LF Ceil. Perimeter | | |

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| **General Cleaning:** | | | | | | | |
| 142. Deodorize building - Hot thermal fog | 664.44 CF | | 0.00 | 0.06 | 0.00 | 7.98 | 47.85 |
| (C+F+W)*2 | | | | | | | |

Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.  Fogging is recommended in addition to spray application to ensure disinfectant is applied to hard to reach areas.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 143. Apply plant-based anti-microbial agent to more than the ceiling | 584.78 SF | | 0.00 | 0.31 | 2.34 | 36.72 | 220.34 |
| (C+F+W)*2 | | | | | | | |

Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.

C+F+W

Wipe surfaces after application of disinfectant.

Exhibit A



**Noble Public Adjusting Group**

### CONTINUED - Laundry Room

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 144.  HEPA Vacuuming - Detailed - (PER SF) | 292.39 SF | | 0.00 | 0.78 | 0.00 | 45.62 | 273.68 |
| Totals:  Laundry Room | | | | | 2.34 | 90.32 | 541.87 |
| Total: Dwelling 2nd floor | | | | | 215.99 | 3,714.84 | 22,289.01 |

### General - Loss Specific

### GC - General Conditions

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|

**Residential Supervision required for this project:**

This line item is for one foreman part time at 20 hours per month during the duration of repairs to ensure that the work is being done correctly and that the work is progressing correctly.

Xactware/Xactimate specifically states that general overhead expenses are those *" that cannot be attributed to individual projects and include any and all expenses necessary for the general contractor to operate their business., however, "Job related overhead are expenses that can be attributed to a project, but cannot be attributed to a specific task and include any and all necessary expenses to complete the project other than direct materials and labor."*

 *Xactware/Xactimate provides examples of such job related overhead items to include project managers or foremen and states that such expenses should be added as a separate line item to the estimate.*

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 145.  Residential Supervision / Project Management - per hour | 20.00 HR | | 0.00 | 65.13 | 0.00 | 260.52 | 1,563.12 |
| 146.  Temporary toilet (per month) | 1.00 MO | | 0.00 | 106.15 | 0.00 | 21.24 | 127.39 |
| Totals:  GC - General Conditions | | | | | 0.00 | 281.76 | 1,690.51 |

### COVID-19 Precautions

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| ******  COVID 19 Special Provisions   ****** | | | | | | | |
| ********  Personal Protective Equipment   ******** | | | | | | | |
| **PPE Suits** | | | | | | | |
| 147.  Add for personal protective equipment (hazardous cleanup) | 10.00 EA | | 0.00 | 15.22 | 12.18 | 32.88 | 197.26 |
| 148.  Add for personal protective equipment - Heavy duty | 10.00 EA | | 0.00 | 39.62 | 31.31 | 85.50 | 513.01 |
| **PPE Face Covering / Eye Protection** | | | | | | | |
| 149.  Personal protective mask (N-95) | 10.00 EA | | 0.00 | 5.36 | 4.29 | 11.58 | 69.47 |

C1447-ALEXANDER-SC

12/3/2020          Page: 22



**Noble Public Adjusting Group**

### CONTINUED - COVID-19 Precautions

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 150. Eye protection - plastic goggles - Disposable | 10.00 EA | | 0.00 | 10.07 | 8.06 | 21.76 | 130.52 |
| 151. Face shield - Disposable | 10.00 EA | | 0.00 | 5.95 | 4.76 | 12.86 | 77.12 |
| **PPE  Respirator** | | | | | | | |
| 152. Respirator - Half face - multi-purpose resp. (per day) | 10.00 DA | | 0.00 | 1.80 | 0.00 | 3.60 | 21.60 |
| 153. Respirator - Full face - multi-purpose resp. (per day) | 10.00 DA | | 0.00 | 7.61 | 0.00 | 15.22 | 91.32 |
| 154. Respirator cartridge - HEPA only (per pair) | 10.00 EA | | 0.00 | 14.80 | 11.84 | 31.96 | 191.80 |
| 155. Supply Air Respirator (SAR) - per day | 10.00 DA | | 0.00 | 61.25 | 0.00 | 122.50 | 735.00 |
| **PPE Gloves** | | | | | | | |
| 156. Personal protective gloves - Disposable (per pair) | 10.00 EA | | 0.00 | 0.40 | 0.32 | 0.86 | 5.18 |
| **PPE Boots** | | | | | | | |
| 157. Boots - waterproof latex - Disposable (per pair) | 10.00 EA | | 0.00 | 11.44 | 9.15 | 24.72 | 148.27 |
| **PPE Accessories** | | | | | | | |
| 158. Tape to Seal Gloves / Boots | 2.00 EA | | 0.00 | 10.00 | 1.60 | 0.00 | 21.60 |
| Orig. Desc. - Tape | | | | | | | |
| **PPE Cleaning** | | | | | | | |
| 159. Cleaning PPE - incl. cleaning agent - to decontaminate of possible COVID - 19 | 20.00 HR | | 0.00 | 37.08 | 1.90 | 148.70 | 892.20 |
| **Additional Labor** | | | | | | | |
| 160. Additonal time needed due to working in PPE | 8.00 HR | | 0.00 | 36.54 | 0.00 | 58.46 | 350.78 |

Due to the mandated Covid-19 Pandemic regulations placed upon the construction industry  implementing shift work, limiting crossover of subcontractors mandatory hand washing, mandatory additional rest breaks  and more, this job will take an extra ??? hours to complete.

Exhibit A



**Noble Public Adjusting Group**

### CONTINUED - COVID-19 Precautions

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|

**Required COVID-19 Safety Procedure**

**#1** Each worker will perform a self-temperature check before leaving for work to confirm he or she does not have a temperature above 99.6 degrees Fahrenheit. We will not be charging for the this and will be providing equipment to all sub-contractors to ensure this temperature check is carried out.

**#2** This hour is to account for The Covid-19 state / county order. Workers will take extra 5 minutes each to execute mandatory temperature checks, prior to work starting.

**#3** We will implement a shift work rotation if any task takes long than 8 /10 hours total to complete including the mandatory breaks referenced in the COVID-19 Order for State / County. THIS IS AN INCURED ITEM **(No charge unless carried out)**

**#4** We will schedule each sub-contractor at least 24 hours apart from the completion of each trade.

**#5** Keeping a Distance of 6 ft between each worker. Calculated hours is to account for slowdown of all work related operations for each trade.

**#6** As the General Contractor we will provide individual water bottles, and this will have no effect on our normal process, and we will be charging for this accordingly. OSHA requires a water station to insure proper hydration of the worker that way we do not cross contaminate workers at the water station.

**#7** Any and all personnel present at the job site will have been deemed essential to the project.

**#8** As the General Contractor, we will provide and keep on site throughout the project, enough soap, water, and hand sanitizer for each separate sub-contractor/Trade's men.

**#9** We will calculate 1.15 hours is to account for the slowdown of production due to the multiple mandatory hygiene procedure(s).

**#10** Required COVID-19 Safety Procedure / Mandatory breaks will be set in place. (no addition charge) We will be adhering to rule mandated from the State or county directives necessary to keep the health and wellbeing of our Sub-Contractor/Trade's men.

Exhibit A



**Noble Public Adjusting Group**

## CONTINUED - COVID-19 Precautions

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|

**Global COVID-19 Pandemic Notice**
**CDC Warning – Level 3, Avoid Nonessential Travel Widespread Ongoing Transmission**

Widespread ongoing transmission of a respiratory illness caused by a novel (new) corona virus (COVID-19) is occurring globally. During the COVID-19 pandemic you may be exposed to the virus while traveling from sick persons at airports, or on airplanes, ships, trains, or buses. Some health care systems are becoming overwhelmed and there may be limited access to adequate medical care in affected areas. Many countries are implementing travel restrictions and mandatory quarantines, closing borders, and prohibiting non-citizens from entry with little advance notice. Airlines have canceled many international flights and in-country travel may be unpredictable. If you choose to travel internationally, your travel plans may be severely disrupted, and you may have to remain outside the United States for an indefinite length of time.

Illness with COVID-19 has ranged from mild to severe. Signs and symptoms of infection include fever, cough, and trouble breathing. This new corona virus has caused severe disease and death in patients who developed pneumonia. Risk factors for severe illness are not yet clear, although older adults and people of any age with serious chronic medical conditions are at higher risk for severe illness.

**What can travelers do to protect themselves and others?**
**CDC recommends that travelers avoid all nonessential international travel. If you must travel:**

   Avoid contact with sick people.
   Avoid touching your eyes, nose, or mouth with unwashed hands.
   Wash your hands often with soap and water for at least 20 seconds. If soap and water are not readily available, use an alcohol-based hand sanitizer that contains at least 60% alcohol.
   It is especially important to clean hands after going to the bathroom; before eating; and after coughing, sneezing or blowing your nose.
   Avoid traveling if you are sick.

**If you traveled internationally in the last 14 days:**

   Stay home, monitor your health, and practice social distancing for 14 days after you return from travel. Social distancing means staying out of crowded places, avoiding group gatherings, and maintaining distance (approximately 6 feet or 2 meters) from others when possible.
   Learn more about what to do if you are sick after travel.

| | | | | | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| Totals: COVID-19 Precautions | | | | | 85.41 | 570.60 | 3,445.13 |

## PPE

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| The removal of materials indicated should be the responsibility of persons trained in these matters, having a mold license and liability insurance. Workers should comply with EPA, IICRC-S520, IICRC-S500, NIOSH, and OSHA guidelines regarding clothing, respirators, and remediation practices and principles. | | | | | | | |
| 161. Hazardous Waste/Mold Cleaning Technician - per hour | 12.00 HR | | 0.00 | 66.15 | 0.00 | 0.00 | 793.80 |
| 162. Hazardous Waste/Mold Cleaning- Supervisory/Admin- per hour | 6.00 HR | | 0.00 | 72.98 | 0.00 | 0.00 | 437.88 |
| 163. Add for personal protective equipment (hazardous cleanup) | 6.00 EA | | 0.00 | 15.22 | 7.31 | 0.00 | 98.63 |
| 164. Respirator - Half face - multi- purpose resp. (per day) | 6.00 DA | | 0.00 | 1.80 | 0.00 | 0.00 | 10.80 |
| 165. Respirator cartridge - HEPA only (per pair) | 6.00 EA | | 0.00 | 14.80 | 7.10 | 0.00 | 95.90 |
| 166. Boots - waterproof latex - Disposable (per pair) | 6.00 EA | | 0.00 | 11.44 | 5.49 | 0.00 | 74.13 |

Exhibit A

 **Noble Public Adjusting Group**

## CONTINUED - PPE

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 167.  Eye protection - plastic goggles - Disposable | 6.00 EA | | 0.00 | 10.07 | 4.83 | 0.00 | 65.25 |
| 168.  Personal protective gloves - Disposable (per pair) | 6.00 EA | | 0.00 | 0.40 | 0.19 | 0.00 | 2.59 |
| 169.  Temporary safety shower | 6.00 EA | | 0.00 | 90.61 | 0.00 | 0.00 | 543.66 |
| 170.  Contamination - on-site ATP testing | 2.00 EA | | 0.00 | 21.82 | 0.49 | 0.00 | 44.13 |
| Totals:  PPE | | | | | 25.41 | 0.00 | 2,166.77 |

## HVAC - Post Construction

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| **Cleaning of the ductwork - post construction:** | | | | | | | |
| 171.  Clean ductwork - Interior - Heavy clean (PER REGISTER) | 11.00 EA | | 0.00 | 38.39 | 0.07 | 84.48 | 506.84 |
| **Clean of the HVAC handler unit:** | | | | | | | |
| 172.  HVAC Technician - per hour | 1.50 HR | | 0.00 | 97.30 | 0.00 | 29.20 | 175.15 |
| Totals: HVAC - Post Construction | | | | | 0.07 | 113.68 | 681.99 |

## Pack In - Pack Out

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| **Pack out/in during the restoration period.** | | | | | | | |
| Note: This area is highly infected with COVID-19. CDC protocols must be followed. | | | | | | | |
| **Pack-out** | | | | | | | |
| 173.  Equipment setup, takedown, travel time and warehouse time | 40.00 HR | | 0.00 | 36.54 | 0.00 | 292.32 | 1,753.92 |
| **2 Techs X 15 Mins X 3 Days to setup + Travel time to storage facility and back: 2 Techs X  20 Hours + Unloading time at storage facility and organizing pallets: 4 Techs X 6 Hours** | | | | | | | |
| 174.  Contents Evaluation and/or Supervisor/Admin - per hour | 20.00 HR | | 0.00 | 48.75 | 0.00 | 195.00 | 1,170.00 |
| **1 Supervisor X 3 Days** | | | | | | | |
| 175.  On-Site Inventory, Packing, Boxing, Moving chrg - per hour | 80.00 HR | | 0.00 | 35.89 | 0.00 | 574.24 | 3,445.44 |
| **4 Techs X 3 days** | | | | | | | |

Exhibit A

 **Noble Public Adjusting Group**

### CONTINUED - Pack In - Pack Out

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 176.  Moving van (21'-27') and equipment - per day | 6.00 EA | | 0.00 | 259.64 | 0.00 | 311.56 | 1,869.40 |
| **Additional 2 days of truck rental due to travel period with 2 trucks.** | | | | | | | |
| 177.  Bubble Wrap - Add-on cost for fragile items | 1,000.00 LF | | 0.00 | 0.22 | 17.60 | 47.52 | 285.12 |
| 178.  Provide stretch film/wrap | 1.00 RL | | 0.00 | 23.99 | 1.92 | 5.18 | 31.09 |
| 179.  Loose fill peanuts - Add-on cost for fragile items | 100.00 CF | | 0.00 | 2.40 | 19.20 | 51.84 | 311.04 |
| 180.  Provide box, packing paper & tape - small size | 20.00 EA | | 0.00 | 3.78 | 3.86 | 15.90 | 95.36 |
| 181.  Provide box, packing paper & tape - medium size | 15.00 EA | | 0.00 | 4.41 | 3.95 | 14.04 | 84.14 |
| 182.  Provide box, packing paper & tape - large size | 10.00 EA | | 0.00 | 6.01 | 3.50 | 12.72 | 76.32 |
| 183.  Provide box, packing paper & tape - extra large size | 5.00 EA | | 0.00 | 6.32 | 2.27 | 6.78 | 40.65 |
| **Storage** | | | | | | | |
| 184.  Off-site storage & insurance - per month | 2,200.00 SF | | 0.00 | 1.03 | 0.00 | 453.20 | 2,719.20 |
| **Contents must be taken to a specialized cleaning and storage facility to be properly cleaned and disinfected.** | | | | | | | |
| **Decontamination** | | | | | | | |
| **Cleaning** | | | | | | | |
| 185.  Clean bric-a-brac - per Lg box - Hvy clean | 20.00 EA | | 0.00 | 81.90 | 2.24 | 328.04 | 1,968.28 |
| 186.  Clean dishpack - per box - Heavy clean | 10.00 EA | | 0.00 | 66.02 | 1.10 | 132.26 | 793.56 |
| 187.  Clean glasspack - per box - Heavy clean | 10.00 EA | | 0.00 | 53.89 | 1.10 | 108.00 | 648.00 |
| 188.  Contents Cleaning - Supervisory/Administrative - per hour | 24.00 HR | | 0.00 | 48.75 | 0.00 | 234.00 | 1,404.00 |
| 189.  Cleaning Technician - incl. cleaning agent - Hard Surface Items | 32.00 HR | | 0.00 | 37.08 | 3.05 | 237.94 | 1,427.55 |
| **Clean and disinfect hard surface items** | | | | | | | |
| **Re-pack in Non-Contaminated Boxes** | | | | | | | |
| 190.  Evaluate pack & inventory dishpack - per box | 10.00 EA | | 0.00 | 14.22 | 6.10 | 29.66 | 177.96 |
| 191.  Provide dishpack box, packing paper & tape | 10.00 EA | | 0.00 | 7.62 | 6.10 | 16.46 | 98.76 |
| 192.  Evaluate pack & inventory glasspack - per box | 10.00 EA | | 0.00 | 19.81 | 11.66 | 41.96 | 251.72 |
| 193.  Provide glasspack box, packing paper & tape | 10.00 EA | | 0.00 | 14.57 | 11.66 | 31.48 | 188.84 |
| 194.  Clean bric-a-brac - per Lg box | 20.00 EA | | 0.00 | 54.01 | 0.96 | 216.24 | 1,297.40 |

Exhibit A

 **Noble Public Adjusting Group**

### CONTINUED - Pack In - Pack Out

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| **Pack-back** | | | | | | | |
| 195. Equipment setup, takedown, travel time and warehouse time | 36.00 HR | | 0.00 | 36.54 | 0.00 | 263.08 | 1,578.52 |
| **+ Travel time to storage facility and back: 2 Techs X  10 Hours** <br> **+ Unloading time at storage facility and organizing pallets: 4 Techs X 4 Hours** | | | | | | | |
| 196. Moving van (21'-27') and equipment - per day | 4.00 EA | | 0.00 | 259.64 | 0.00 | 207.72 | 1,246.28 |
| 197. Contents Evaluation and/or Supervisor/Admin - per hour | 8.00 HR | | 0.00 | 48.75 | 0.00 | 78.00 | 468.00 |
| **1 Supervisor X 3 Days** | | | | | | | |
| 198. On-Site Inventory, Packing, Boxing, Moving chrg - per hour | 32.00 HR | | 0.00 | 35.89 | 0.00 | 229.70 | 1,378.18 |
| **4 Techs X 3 days** | | | | | | | |
| **Decontamination of Storage and Moving Van(s)** | | | | | | | |
| 199. Clean the surface area - Heavy | 3,000.00 SF | | 0.00 | 0.66 | 2.40 | 396.48 | 2,378.88 |
| **To decontaminate the Moving van:** <br> **Clean surfaces before application of disinfectant.** | | | | | | | |
| **The CDC states "If surfaces are dirty, they should be cleaned using a detergent or soap and water prior to disinfection."** | | | | | | | |
| 200. Apply plant-based anti-microbial agent to the surface area | 3,000.00 SF | | 0.00 | 0.31 | 12.00 | 188.40 | 1,130.40 |
| **To decontaminate the Moving van:** <br> **Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.** | | | | | | | |
| 201. HEPA Vacuuming - Detailed - (PER SF) | 3,000.00 SF | | 0.00 | 0.78 | 0.00 | 468.00 | 2,808.00 |
| 202. Deodorize building - Hot thermal fog | 3,000.00 CF | | 0.00 | 0.06 | 0.00 | 36.00 | 216.00 |
| **To decontaminate the Moving van:** <br> **Manufactures dwell time requires 2 applications of chemical to keep "wet" the specified time in the instructions.   Fogging is recommended in addition to spray application to ensure disinfectant is applied to hard to reach areas.** | | | | | | | |

| Totals:  Pack In - Pack Out | | | | | 110.67 | 5,223.72 | 31,342.01 |
|---|---|---|---|---|---|---|---|

### Debris - Buildback

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| **Debris and cleanup portion of this job:** | | | | | | | |
| 203. Dumpster load - Approx. 20 yards, 4 tons of debris | 1.00 EA | | 417.30 | 0.00 | 0.00 | 83.46 | 500.76 |
| **This dumpster is for non-roofing debris only.** | | | | | | | |
| 204. Sheathing - plywood - 3/4" CDX | 240.00 SF | | 0.00 | 1.49 | 28.61 | 77.24 | 463.45 |

Exhibit A



**Noble Public Adjusting Group**

### CONTINUED - Debris - Buildback

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| For the underside of the dumpster/driveway so the dumpster will not tear and chip and damage driveway - laid prior to drop off of the container. | | | | | | | |
| Sheathing is good for the entire job and multiple drops of container. | | | | | | | |
| **Roof Dumpster:** | | | | | | | |
| 205. Dumpster load - Approx. 20 yards, 4 tons of debris | 1.00 EA | | 417.30 | 0.00 | 0.00 | 83.46 | 500.76 |
| This dumpster is only for roofing debris. | | | | | | | |
| 206. Sheathing - plywood - 3/4" CDX | 240.00 SF | | 0.00 | 1.49 | 28.61 | 77.24 | 463.45 |
| Plywood required under dumpster to prevent damage to driveway and lawn. | | | | | | | |
| 207. General Demolition - per hour | 2.00 HR | | 43.30 | 0.00 | 0.00 | 17.32 | 103.92 |
| **Final roof clean up.** | | | | | | | |
| Totals: Debris - Buildback | | | | | 57.22 | 338.72 | 2,032.34 |

### Final Clean Up - Post Construction

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| **Post Final Construction: Clean up** | | | | | | | |
| 208. Cleaning Technician - per hour | 20.00 HR | | 0.00 | 35.89 | 0.00 | 143.56 | 861.36 |
| 209. Disinfect building - fog / spray - per SF | 10.00 SF | | 0.00 | 0.43 | 0.03 | 0.86 | 5.19 |
| Totals: Final Clean Up - Post Construction | | | | | 0.03 | 144.42 | 866.55 |

### Ordinance & Law

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| **ORDINANCE & LAW:** | | | | | | | |
| 210. Framing & Rough Carpentry (Bid Item) | 1.00 EA | | | | | | OPEN ITEM |
| This item has been left open for further consideration for the value to bring the home up to code structurally. Items may include additional blocking, anchors, hangers, straps, window and door buckling, sheathing, header replacement, etc.. | | | | | | | |
| 211. Electrical (Bid Item) | 1.00 EA | | | | | | OPEN ITEM |
| This item has been left open for further consideration for the value to bring the home up to code electrically. Items such as smoke alarms, carbon monoxide detection, outlet spacing, wet area GFCI's, wiring size, trunk lines, dedicated kitchen circuits, panel amperage, etc.. | | | | | | | |
| 212. Heat, Vent, & Air Conditioning (Bid Item) | 1.00 EA | | | | | | OPEN ITEM |
| This item has been left open for further consideration for the value to bring the mechanical systems up to code. Cold air returns, register locations, tonnage, equalizing air flow, etc.. | | | | | | | |

C1447-ALEXANDER-SC                                    12/3/2020          Page: 29

Exhibit A



**Noble Public Adjusting Group**

### CONTINUED - Ordinance & Law

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 213. Engineering fees (Bid Item) | 1.00 EA | | | | | | OPEN ITEM |

**This item has been left open for further consideration for engineering fees incurred due to code upgrades.**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Totals: Ordinance & Law | | | | | 0.00 | 0.00 | 0.00 |

### Permits / Architectural Fees

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| County Permits which are mandated: Payable when incurred. | | | | | | | |
| 214. Taxes, insurance, permits & fees (Bid Item) | 1.00 EA | | 0.00 | 500.00 | 0.00 | 100.00 | 600.00 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Totals: Permits / Architectural Fees | | | | | 0.00 | 100.00 | 600.00 |

### Coverage D - Loss of Use

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| Temporary housing figured at $1.50 per SF of current dwelling per month until repairs are complete. | | | | | | | |
| 215. Temporary housing | 3,000.00 EA | | 0.00 | 1.50 | 0.00 | 900.00 | 5,400.00 |

Note: Loss of use is estimated only based on the SF of the current dwelling to provide similar housing. However due to hurricane housing is extremely limited. Supply and demand has driven prices higher than normal limits.

**Calculated by the Dwelling SF * Number of months to complete repairs.**

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 216. Additional Living Expenses | 6.00 EA | | 0.00 | 500.00 | 0.00 | 600.00 | 3,600.00 |

To cover additional expenses unrelated to the cost of temporary housing. This covers dining, additional fuel for vehicle, using laundry facilities and other assorted expenses.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Totals: Coverage D - Loss of Use | | | | | 0.00 | 1,500.00 | 9,000.00 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Total: General - Loss Specific | | | | | 278.81 | 8,272.90 | 51,825.30 |

**Labor Minimums Applied**

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 217. Framing labor minimum | 1.00 EA | | 0.00 | 165.88 | 0.00 | 33.18 | 199.06 |
| 218. Heat, vent, & air cond. labor minimum | 1.00 EA | | 0.00 | 21.81 | 0.00 | 4.36 | 26.17 |
| 219. Window treatment repair | 1.00 EA | | 0.00 | 24.99 | 0.00 | 5.00 | 29.99 |
| 220. Insulation labor minimum | 1.00 EA | | 0.00 | 52.78 | 0.00 | 10.56 | 63.34 |
| 221. Water extract/remediation labor minimum | 1.00 EA | | 0.00 | 84.15 | 0.00 | 16.84 | 100.99 |

Exhibit A



**Noble Public Adjusting Group**

### CONTINUED - Labor Minimums Applied

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| Totals: Labor Minimums Applied | | | | | 0.00 | 69.94 | 419.55 |
| **Line Item Totals: C1447-ALEXANDER-SC** | | | | | **1,285.05** | **24,004.68** | **146,364.75** |

## Grand Total Areas:

| | | | |
|---|---|---|---|
| 15,126.03 SF Walls | 10,868.49 SF Ceiling | 25,994.51 SF Walls and Ceiling |
| 10,897.07 SF Floor | 1,210.79 SY Flooring | 1,845.06 LF Floor Perimeter |
| 0.00 SF Long Wall | 0.00 SF Short Wall | 1,851.55 LF Ceil. Perimeter |
| 10,897.07 Floor Area | 11,380.82 Total Area | 14,496.53 Interior Wall Area |
| 11,376.32 Exterior Wall Area | 1,225.13 Exterior Perimeter of Walls | |
| 3,474.27 Surface Area | 34.74 Number of Squares | 242.78 Total Perimeter Length |
| 13.61 Total Ridge Length | 144.25 Total Hip Length | |

| Coverage | Item Total | % | ACV Total | % |
|---|---|---|---|---|
| Dwelling | 112,830.89 | 77.09% | 112,830.89 | 77.09% |
| Other Structures | 0.00 | 0.00% | 0.00 | 0.00% |
| Contents | 24,533.86 | 16.76% | 24,533.86 | 16.76% |
| Loss of Use | 9,000.00 | 6.15% | 9,000.00 | 6.15% |
| Building Ordinance | 0.00 | 0.00% | 0.00 | 0.00% |
| Fungi | 0.00 | 0.00% | 0.00 | 0.00% |
| Debris Removal | 0.00 | 0.00% | 0.00 | 0.00% |
| Total | 146,364.75 | 100.00% | 146,364.75 | 100.00% |

Exhibit A

 **Noble Public Adjusting Group**

## Summary for Dwelling

| | |
|---|---:|
| Line Item Total | 93,210.85 |
| Material Sales Tax | 1,200.76 |
| Subtotal | 94,411.61 |
| Overhead | 9,209.64 |
| Profit | 9,209.64 |
| **Replacement Cost Value** | **$112,830.89** |
| **Net Claim** | **$112,830.89** |

Noble Public Adjusting Group

Exhibit A

 **Noble Public Adjusting Group**

## Summary for Contents

| | |
|---|---:|
| Line Item Total | 20,364.17 |
| Material Sales Tax | 84.29 |
| Subtotal | 20,448.46 |
| Overhead | 2,042.70 |
| Profit | 2,042.70 |
| **Replacement Cost Value** | **$24,533.86** |
| **Net Claim** | **$24,533.86** |

Noble Public Adjusting Group

Exhibit A

 **Noble Public Adjusting Group**

## Summary for Loss of Use

| | |
|---|---:|
| Line Item Total | 7,500.00 |
| Overhead | 750.00 |
| Profit | 750.00 |
| **Replacement Cost Value** | **$9,000.00** |
| **Net Claim** | **$9,000.00** |

Noble Public Adjusting Group

Exhibit A



## Noble Public Adjusting Group

### Recap of Taxes, Overhead and Profit

|  | Overhead (10%) | Profit (10%) | Material Sales Tax (8%) | Storage Rental Tax (8%) | Local Food Tax (4%) |
|---|---|---|---|---|---|
| Line Items | 12,002.34 | 12,002.34 | 1,285.05 | 0.00 | 0.00 |
| **Total** | **12,002.34** | **12,002.34** | **1,285.05** | **0.00** | **0.00** |

Exhibit A



**Noble Public Adjusting Group**

## Recap by Room

**Estimate: C1447-ALEXANDER-SC**

| Area: Dwelling Exterior - Elevation | | | |
|---|---|---|---|
| Left Elevation | | 272.70 | 0.23% |
| Coverage: Dwelling | 100.00% = | 272.70 | |
| Right Elevation | | 291.20 | 0.24% |
| Coverage: Dwelling | 100.00% = | 291.20 | |
| Rear Elevation | | 202.68 | 0.17% |
| Coverage: Dwelling | 100.00% = | 202.68 | |
| **Area Subtotal:  Dwelling Exterior - Elevation** | | **766.58** | **0.63%** |
| Coverage: Dwelling | 100.00% = | 766.58 | |
| Front Elevation | | 220.35 | 0.18% |
| Coverage: Dwelling | 100.00% = | 220.35 | |
| **Area: Dwelling Roof** | | | |
| Dwelling Ro1 | | 28,405.96 | 23.46% |
| Coverage: Dwelling | 100.00% = | 28,405.96 | |
| **Area Subtotal:  Dwelling Roof** | | **28,405.96** | **23.46%** |
| Coverage: Dwelling | 100.00% = | 28,405.96 | |
| **Area: Dwelling First Floor** | | | |
| Living Room | | 1,891.56 | 1.56% |
| Coverage: Dwelling | 100.00% = | 1,891.56 | |
| Kitchen | | 1,298.21 | 1.07% |
| Coverage: Dwelling | 100.00% = | 1,298.21 | |
| Foyer/Entry | | 1,945.49 | 1.61% |
| Coverage: Dwelling | 100.00% = | 1,945.49 | |
| Garage | | 10,050.68 | 8.30% |
| Coverage: Dwelling | 100.00% = | 10,050.68 | |
| Bar Area/ Sitting Area | | 4,158.20 | 3.43% |
| Coverage: Dwelling | 100.00% = | 4,158.20 | |
| Stairs | | 1,631.05 | 1.35% |
| Coverage: Dwelling | 100.00% = | 1,631.05 | |
| Dining Room | | 1,154.68 | 0.95% |
| Coverage: Dwelling | 100.00% = | 1,154.68 | |
| Hallway | | 814.28 | 0.67% |
| Coverage: Dwelling | 100.00% = | 814.28 | |
| **Area Subtotal:  Dwelling First Floor** | | **22,944.15** | **18.95%** |
| Coverage: Dwelling | 100.00% = | 22,944.15 | |
| Family Room | | 6,756.60 | 5.58% |

Exhibit A

 **Noble Public Adjusting Group**

| | | | |
|---|---|---|---|
| Coverage: Dwelling | 100.00% = | 6,756.60 | |
| **Area: Dwelling 2nd floor** | | | |
| **Bedroom 3** | | **1,431.68** | **1.18%** |
| Coverage: Dwelling | 100.00% = | 1,431.68 | |
| **Hall Bathroom** | | **1,138.88** | **0.94%** |
| Coverage: Dwelling | 100.00% = | 1,138.88 | |
| **Bedroom 2** | | **1,209.38** | **1.00%** |
| Coverage: Dwelling | 100.00% = | 1,209.38 | |
| **Master Bathroom** | | **5,138.64** | **4.24%** |
| Coverage: Dwelling | 100.00% = | 5,138.64 | |
| **Master Bedroom** | | **3,873.14** | **3.20%** |
| Coverage: Dwelling | 100.00% = | 3,873.14 | |
| **Loft Sitting Area** | | **3,369.36** | **2.78%** |
| Coverage: Dwelling | 100.00% = | 3,369.36 | |
| **Bedroom 4** | | **1,747.89** | **1.44%** |
| Coverage: Dwelling | 100.00% = | 1,747.89 | |
| **Laundry Room** | | **449.21** | **0.37%** |
| Coverage: Dwelling | 100.00% = | 449.21 | |
| **Area Subtotal:  Dwelling 2nd floor** | | **18,358.18** | **15.16%** |
| Coverage: Dwelling | 100.00% = | 18,358.18 | |
| **Area: General - Loss Specific** | | | |
| **GC - General Conditions** | | **1,408.75** | **1.16%** |
| Coverage: Dwelling | 100.00% = | 1,408.75 | |
| **COVID-19 Precautions** | | **2,789.12** | **2.30%** |
| Coverage: Dwelling | 99.28% = | 2,769.12 | |
| Coverage: Contents | 0.72% = | 20.00 | |
| **PPE** | | **2,141.36** | **1.77%** |
| Coverage: Dwelling | 100.00% = | 2,141.36 | |
| **HVAC - Post Construction** | | **568.24** | **0.47%** |
| Coverage: Dwelling | 100.00% = | 568.24 | |
| **Pack In - Pack Out** | | **26,007.62** | **21.48%** |
| Coverage: Dwelling | 21.78% = | 5,663.45 | |
| Coverage: Contents | 78.22% = | 20,344.17 | |
| **Debris - Buildback** | | **1,636.40** | **1.35%** |
| Coverage: Dwelling | 100.00% = | 1,636.40 | |
| **Final Clean Up - Post Construction** | | **722.10** | **0.60%** |
| Coverage: Dwelling | 100.00% = | 722.10 | |
| **Permits / Architectural Fees** | | **500.00** | **0.41%** |
| Coverage: Dwelling | 100.00% = | 500.00 | |
| **Coverage D - Loss of Use** | | **7,500.00** | **6.19%** |
| Coverage: Loss of Use | 100.00% = | 7,500.00 | |

C1447-ALEXANDER-SC

Exhibit A



**Noble Public Adjusting Group**

| | | | |
|---|---|---|---|
| **Area Subtotal:  General - Loss Specific** | | **43,273.59** | **35.74%** |
| Coverage: Dwelling | 35.61% = | 15,409.42 | |
| Coverage: Contents | 47.06% = | 20,364.17 | |
| Coverage: Loss of Use | 17.33% = | 7,500.00 | |
| **Labor Minimums Applied** | | **349.61** | **0.29%** |
| Coverage: Dwelling | 100.00% = | 349.61 | |
| **Subtotal of Areas** | | **121,075.02** | **100.00%** |
| Coverage: Dwelling | 76.99% = | 93,210.85 | |
| Coverage: Contents | 16.82% = | 20,364.17 | |
| Coverage: Loss of Use | 6.19% = | 7,500.00 | |
| **Total** | | **121,075.02** | **100.00%** |

 **Noble Public Adjusting Group**

## Recap by Category

| O&P Items | | | Total | % |
|---|---|---|---:|---:|
| **CABINETRY** | | | **1,520.08** | **1.04%** |
| Coverage: Dwelling | @ | 100.00% = | 1,520.08 | |
| **CONT: GARMENT & SOFT GOODS CLN** | | | **4,119.00** | **2.81%** |
| Coverage: Dwelling | @ | 2.41% = | 99.32 | |
| Coverage: Contents | @ | 97.59% = | 4,019.68 | |
| **CONT: CLEAN - GENERAL ITEMS** | | | **6,273.86** | **4.29%** |
| Coverage: Contents | @ | 100.00% = | 6,273.86 | |
| **CLEANING** | | | **7,173.35** | **4.90%** |
| Coverage: Dwelling | @ | 100.00% = | 7,173.35 | |
| **CONT: PACKING,HANDLNG,STORAGE** | | | **10,284.08** | **7.03%** |
| Coverage: Dwelling | @ | 2.27% = | 233.45 | |
| Coverage: Contents | @ | 97.73% = | 10,050.63 | |
| **GENERAL DEMOLITION** | | | **9,295.14** | **6.35%** |
| Coverage: Dwelling | @ | 100.00% = | 9,295.14 | |
| **DOORS** | | | **354.42** | **0.24%** |
| Coverage: Dwelling | @ | 100.00% = | 354.42 | |
| **DRYWALL** | | | **6,066.16** | **4.14%** |
| Coverage: Dwelling | @ | 100.00% = | 6,066.16 | |
| **ELECTRICAL** | | | **573.82** | **0.39%** |
| Coverage: Dwelling | @ | 100.00% = | 573.82 | |
| **ELECTRICAL - SPECIAL SYSTEMS** | | | **124.73** | **0.09%** |
| Coverage: Dwelling | @ | 100.00% = | 124.73 | |
| **FEES - CONTENTS MISC.** | | | **7,500.00** | **5.12%** |
| Coverage: Loss of Use | @ | 100.00% = | 7,500.00 | |
| **PERMITS AND FEES** | | | **500.00** | **0.34%** |
| Coverage: Dwelling | @ | 100.00% = | 500.00 | |
| **FINISH CARPENTRY / TRIMWORK** | | | **684.42** | **0.47%** |
| Coverage: Dwelling | @ | 100.00% = | 684.42 | |
| **FINISH HARDWARE** | | | **72.43** | **0.05%** |
| Coverage: Dwelling | @ | 100.00% = | 72.43 | |
| **FRAMING & ROUGH CARPENTRY** | | | **881.08** | **0.60%** |
| Coverage: Dwelling | @ | 100.00% = | 881.08 | |
| **HAZARDOUS MATERIAL REMEDIATION** | | | **35,875.77** | **24.51%** |
| Coverage: Dwelling | @ | 100.00% = | 35,875.77 | |
| **HEAT, VENT & AIR CONDITIONING** | | | **207.93** | **0.14%** |
| Coverage: Dwelling | @ | 100.00% = | 207.93 | |
| **INSULATION** | | | **363.97** | **0.25%** |
| Coverage: Dwelling | @ | 100.00% = | 363.97 | |
| **LABOR ONLY** | | | **1,594.92** | **1.09%** |
| Coverage: Dwelling | @ | 100.00% = | 1,594.92 | |
| **LIGHT FIXTURES** | | | **299.12** | **0.20%** |
| Coverage: Dwelling | @ | 100.00% = | 299.12 | |

Exhibit A

 **Noble Public Adjusting Group**

| O&P Items | | | | Total | % |
|---|---|---|---|---:|---:|
| **MOISTURE PROTECTION** | | | | **791.46** | **0.54%** |
| Coverage: Dwelling | @ | 100.00% | = | 791.46 | |
| **MIRRORS & SHOWER DOORS** | | | | **166.72** | **0.11%** |
| Coverage: Dwelling | @ | 100.00% | = | 166.72 | |
| **PLUMBING** | | | | **679.93** | **0.46%** |
| Coverage: Dwelling | @ | 100.00% | = | 679.93 | |
| **PAINTING** | | | | **2,617.50** | **1.79%** |
| Coverage: Dwelling | @ | 100.00% | = | 2,617.50 | |
| **ROOFING** | | | | **16,200.94** | **11.07%** |
| Coverage: Dwelling | @ | 100.00% | = | 16,200.94 | |
| **SCAFFOLDING** | | | | **320.00** | **0.22%** |
| Coverage: Dwelling | @ | 100.00% | = | 320.00 | |
| **SOFFIT, FASCIA, & GUTTER** | | | | **2,366.94** | **1.62%** |
| Coverage: Dwelling | @ | 100.00% | = | 2,366.94 | |
| **TEMPORARY REPAIRS** | | | | **1,637.91** | **1.12%** |
| Coverage: Dwelling | @ | 100.00% | = | 1,637.91 | |
| **WINDOW TREATMENT** | | | | **133.83** | **0.09%** |
| Coverage: Dwelling | @ | 100.00% | = | 133.83 | |
| **WATER EXTRACTION & REMEDIATION** | | | | **84.15** | **0.06%** |
| Coverage: Dwelling | @ | 100.00% | = | 84.15 | |
| **O&P Items Subtotal** | | | | **118,763.66** | **81.14%** |

| Non-O&P Items | | | | Total | % |
|---|---|---|---|---:|---:|
| **PERMITS AND FEES** | | | | **150.00** | **0.10%** |
| Coverage: Dwelling | @ | 100.00% | = | 150.00 | |
| **HAZARDOUS MATERIAL REMEDIATION** | | | | **2,097.72** | **1.43%** |
| Coverage: Dwelling | @ | 100.00% | = | 2,097.72 | |
| **OFFICE SUPPLIES** | | | | **20.00** | **0.01%** |
| Coverage: Contents | @ | 100.00% | = | 20.00 | |
| **WATER EXTRACTION & REMEDIATION** | | | | **43.64** | **0.03%** |
| Coverage: Dwelling | @ | 100.00% | = | 43.64 | |
| **Non-O&P Items Subtotal** | | | | **2,311.36** | **1.58%** |
| **O&P Items Subtotal** | | | | **118,763.66** | **81.14%** |
| **Material Sales Tax** | | | | **1,285.05** | **0.88%** |
| Coverage: Dwelling | @ | 93.44% | = | 1,200.76 | |
| Coverage: Contents | @ | 6.56% | = | 84.29 | |
| **Overhead** | | | | **12,002.34** | **8.20%** |
| Coverage: Dwelling | @ | 76.73% | = | 9,209.64 | |
| Coverage: Contents | @ | 17.02% | = | 2,042.70 | |
| Coverage: Loss of Use | @ | 6.25% | = | 750.00 | |
| **Profit** | | | | **12,002.34** | **8.20%** |
| Coverage: Dwelling | @ | 76.73% | = | 9,209.64 | |
| Coverage: Contents | @ | 17.02% | = | 2,042.70 | |

Exhibit A



**Noble Public Adjusting Group**

| Coverage: Loss of Use | @ | 6.25% = | 750.00 | |
|---|---|---|---|---|
| **Total** | | | **146,364.75** | **100.00%** |

Exhibit A

Footprint

12/3/2020



Footprint1

Footprint

C1447-ALEXANDER-SC

Exhibit A







Dwelling 2nd floor

Dwelling 2nd floor

12/3/2020

Page: 45

C1447-ALEXANDER-SC

Exhibit A

Dwelling Exterior - Elevation

Page: 46

12/3/2020

Right Elevation

Rear Elevation

Front Elevation

Left Elevation

Dwelling Exterior - Elevation

C1447-ALEXANDER-SC

Exhibit A



**Noble Public Adjusting Group**

11   Front Elevation - 153-Front
     Elevation
     Date Taken: 12/2/2020



12   Front Elevation - 152-Front
     Elevation
     Date Taken: 12/2/2020



 **Noble Public Adjusting Group**

13   Front Elevation - 154-Front
     Elevation
     Date Taken: 12/2/2020



14   Front Elevation - 185-Front
     Elevation
     Date Taken: 12/2/2020





**Noble Public Adjusting Group**

3    Dwelling Exterior -
Elevation/Right Elevation - 164-
Right Elevation
Date Taken: 12/2/2020



4    Dwelling Exterior -
Elevation/Right Elevation - 165-
Right Elevation
Date Taken: 12/2/2020



C1447-ALEXANDER-SC

12/3/2020     Page: 2

Exhibit A

 **Noble Public Adjusting Group**

1   Dwelling Exterior - Elevation/Left
    Elevation - 184-Left Elevation
    Date Taken: 12/2/2020



2   Dwelling Exterior - Elevation/Left
    Elevation - 183-Left Elevation
    Date Taken: 12/2/2020





**Noble Public Adjusting Group**

5   Dwelling Exterior -
    Elevation/Right Elevation - 166-
    Right Elevation
    Date Taken: 12/2/2020



6   Dwelling Exterior -
    Elevation/Right Elevation - 171-
    Right Elevation
    Date Taken: 12/2/2020



 **Noble Public Adjusting Group**

7    Dwelling Exterior -
     Elevation/Right Elevation - 172-
     Right Elevation
     Date Taken: 12/2/2020



8    Dwelling Exterior -
     Elevation/Right Elevation - 182-
     Right Elevation
     Date Taken: 12/2/2020





**Noble Public Adjusting Group**

9    Dwelling Exterior -
Elevation/Right Elevation - 186-
Right Elevation
Date Taken: 12/2/2020



10    Dwelling Exterior - Elevation/Rear
Elevation - 173-Rear Elevation
Date Taken: 12/2/2020



 **Noble Public Adjusting Group**

15  Front Elevation - 187-Front Door
    Date Taken: 12/2/2020



16  Dwelling Roof/Dwelling Ro1 -
    167-Roof
    Date Taken: 12/2/2020



Exhibit A



**Noble Public Adjusting Group**

17    Dwelling Roof/Dwelling Ro1 -
      155-Roof
      Date Taken: 12/2/2020



18    Dwelling Roof/Dwelling Ro1 -
      168-Roof
      Date Taken: 12/2/2020





**Noble Public Adjusting Group**

19  Dwelling Roof/Dwelling Ro1 -
    156-Roof
    Date Taken: 12/2/2020



20  Dwelling Roof/Dwelling Ro1 -
    157-Roof
    Date Taken: 12/2/2020



 **Noble Public Adjusting Group**

21   Dwelling Roof/Dwelling Ro1 -
     158-Roof
     Date Taken: 12/2/2020



22   Dwelling Roof/Dwelling Ro1 -
     159-Roof
     Date Taken: 12/2/2020



C1447-ALEXANDER-SC

Exhibit A

 **Noble Public Adjusting Group**

23   Dwelling Roof/Dwelling Ro1 -
     181-Roof
     Date Taken: 12/2/2020



24   Dwelling Roof/Dwelling Ro1 -
     169-Roof
     Date Taken: 12/2/2020



C1447-ALEXANDER-SC



**Noble Public Adjusting Group**

25   Dwelling Roof/Dwelling Ro1 -
     160-Roof
     Date Taken: 12/2/2020



26   Dwelling Roof/Dwelling Ro1 -
     161-Roof
     Date Taken: 12/2/2020



 **Noble Public Adjusting Group**

27   Dwelling Roof/Dwelling Ro1 -
     170-Roof
     Date Taken: 12/2/2020



28   Dwelling Roof/Dwelling Ro1 -
     180-Roof
     Date Taken: 12/2/2020





**Noble Public Adjusting Group**

29   Dwelling Roof/Dwelling Ro1 -
179-Roof
Date Taken: 12/2/2020



30   Dwelling Roof/Dwelling Ro1 -
178-Roof
Date Taken: 12/2/2020



C1447-ALEXANDER-SC

Exhibit A



**Noble Public Adjusting Group**

31   Dwelling Roof/Dwelling Ro1 -
     177-Roof
     Date Taken: 12/2/2020



32   Dwelling Roof/Dwelling Ro1 -
     176-Roof
     Date Taken: 12/2/2020





**Noble Public Adjusting Group**

33   Dwelling Roof/Dwelling Ro1 -
     175-Roof
     Date Taken: 12/2/2020



34   Dwelling Roof/Dwelling Ro1 -
     174-Roof
     Date Taken: 12/2/2020



 **Noble Public Adjusting Group**

35   Dwelling Roof/Dwelling Ro1 -
     163-Roof
     Date Taken: 12/2/2020



36   Dwelling Roof/Dwelling Ro1 -
     162-Roof
     Date Taken: 12/2/2020





**Noble Public Adjusting Group**

37   Dwelling First Floor/Living Room -
191-Living Room
Date Taken: 12/2/2020



38   Dwelling First Floor/Living Room -
192-Living Room
Date Taken: 12/2/2020



 **Noble Public Adjusting Group**

39   Dwelling First Floor/Kitchen - 200-Kitchen
Date Taken: 12/2/2020



40   Dwelling First Floor/Kitchen - 201-Kitchen
Date Taken: 12/2/2020





**Noble Public Adjusting Group**

41   Dwelling First Floor/Kitchen - 202-
     Kitchen
     Date Taken: 12/2/2020



42   Dwelling First Floor/Foyer/Entry -
     189-Foyer
     Date Taken: 12/2/2020





**Noble Public Adjusting Group**

43   Dwelling First Floor/Foyer/Entry -
     188-Foyer
     Date Taken: 12/2/2020



44   Dwelling First Floor/Foyer/Entry -
     190-Foyer
     Date Taken: 12/2/2020





**Noble Public Adjusting Group**

45   Dwelling First Floor/Garage - 211-
     Garage
     Date Taken: 12/2/2020



46   Dwelling First Floor/Garage - 212-
     Garage damage from roof
     compromised
     Date Taken: 12/2/2020



 **Noble Public Adjusting Group**

47  Dwelling First Floor/Garage - 213-
    Garage damage from roof
    compromised
    Date Taken: 12/2/2020



48  Dwelling First Floor/Garage - 214-
    Garage damage from roof
    compromised
    Date Taken: 12/2/2020



C1447-ALEXANDER-SC                                    12/3/2020        Page: 24

Exhibit A



**Noble Public Adjusting Group**

49   Dwelling First Floor/Garage - 215-
Garage damage from roof
compromised
Date Taken: 12/2/2020



50   Dwelling First Floor/Garage - 216-
Garage damage from roof
compromised
Date Taken: 12/2/2020



 **Noble Public Adjusting Group**

51   Dwelling First Floor/Bar Area/
     Sitting Area - 193-Bar Area
     Date Taken: 12/2/2020



52   Dwelling First Floor/Bar Area/
     Sitting Area - 194-Bar Area
     Date Taken: 12/2/2020





**Noble Public Adjusting Group**

53    Dwelling First Floor/Bar Area/
      Sitting Area - 195-Bar Area
      Date Taken: 12/2/2020



54    Dwelling First Floor/Bar Area/
      Sitting Area - 196-Damage from
      washing machine failure
      Date Taken: 12/2/2020



C1447-ALEXANDER-SC                                    12/3/2020         Page: 27

Exhibit A



**Noble Public Adjusting Group**

55    Dwelling First Floor/Bar Area/
Sitting Area - 197-Damage from
washing machine failure
Date Taken: 12/2/2020



56    Dwelling First Floor/Bar Area/
Sitting Area - 198-Damage from
washing machine failure
Date Taken: 12/2/2020





C1447-ALEXANDER-SC

12/3/2020        Page: 28

Exhibit A

 **Noble Public Adjusting Group**

57   Dwelling First Floor/Bar Area/
     Sitting Area - 199-Damage from
     washing machine failure
     Date Taken: 12/2/2020



58   Dwelling First Floor/Stairs - 204-
     Stairs
     Date Taken: 12/2/2020



Exhibit A



**Noble Public Adjusting Group**

59  Dwelling First Floor/Stairs - 218-
Stairs
Date Taken: 12/2/2020



60  Dwelling First Floor/Dining Room
- 203-Dining Room
Date Taken: 12/2/2020



Exhibit A



**Noble Public Adjusting Group**

61   Dwelling First Floor/Hallway -
     210-Hallway
     Date Taken: 12/2/2020



62   Dwelling First Floor/Hallway -
     217-Hallway
     Date Taken: 12/2/2020



 **Noble Public Adjusting Group**

63   Family Room - 136-Family Room
     Date Taken: 12/1/2020



64   Family Room - 143-Family Room
     Date Taken: 12/1/2020



 **Noble Public Adjusting Group**

65 Family Room - 137-Flooring in
Family Room
Date Taken: 12/1/2020



66 Family Room - 138-Ceiling
Date Taken: 12/1/2020



 **Noble Public Adjusting Group**

67   Family Room - 139-Ceiling
     Damage
     Date Taken: 12/1/2020



68   Family Room - 140-Ceiling
     Damage
     Date Taken: 12/1/2020



 **Noble Public Adjusting Group**

69   Family Room - 141-Ceiling
Damage
Date Taken: 12/1/2020



70   Family Room - 142-Ceiling
Damage
Date Taken: 12/1/2020





**Noble Public Adjusting Group**

71   Family Room - 144-Ceiling
Damage
Date Taken: 12/1/2020

The entire ceiling needs to be repair
and replaced



72   Family Room - 205-Family Room
damage from roof
Date Taken: 12/2/2020





**Noble Public Adjusting Group**

73    Family Room - 206-Family Room
damage from roof
Date Taken: 12/2/2020



74    Family Room - 207-Family Room
damage from roof
Date Taken: 12/2/2020



 **Noble Public Adjusting Group**

75   Family Room - 208-Family Room
Date Taken: 12/2/2020



76   Family Room - 209-Family Room
damage from roof
Date Taken: 12/2/2020





**Noble Public Adjusting Group**

77  Dwelling 2nd floor/Bedroom 3 -
    230-Bedroom 3
    Date Taken: 12/2/2020



78  Dwelling 2nd floor/Bedroom 3 -
    231-Bedroom 3
    Date Taken: 12/2/2020





**Noble Public Adjusting Group**

79   Dwelling 2nd floor/Bedroom 3 -
     232-Bedroom 3
     Date Taken: 12/2/2020



80   Dwelling 2nd floor/Hall Bathroom -
     229-Hall Bathroom
     Date Taken: 12/2/2020





**Noble Public Adjusting Group**

81   Dwelling 2nd floor/Hall Bathroom -
     228-Hall Bathroom
     Date Taken: 12/2/2020



82   Dwelling 2nd floor/Hall Bathroom -
     233-Hall Bathroom
     Date Taken: 12/2/2020





**Noble Public Adjusting Group**

83   Dwelling 2nd floor/Hall Bathroom -
     234-Hall Bathroom
     Date Taken: 12/2/2020



84   Dwelling 2nd floor/Bedroom 2 -
     249-Bedroom 2
     Date Taken: 12/2/2020



C1447-ALEXANDER-SC                                    12/3/2020          Page: 42

Exhibit A

 **Noble Public Adjusting Group**

85   Dwelling 2nd floor/Master
     Bathroom - 240-Master Bathroom
     Date Taken: 12/2/2020



86   Dwelling 2nd floor/Master
     Bathroom - 241-Master Bathroom
     Date Taken: 12/2/2020



 **Noble Public Adjusting Group**

87  Dwelling 2nd floor/Master
    Bathroom - 242-Water damage
    from roof leaking
    Date Taken: 12/2/2020



88  Dwelling 2nd floor/Master
    Bathroom - 243-Water damage
    from roof leaking - master bath
    Date Taken: 12/2/2020





**Noble Public Adjusting Group**

89    Dwelling 2nd floor/Master
      Bathroom - 244-master bath
      Date Taken: 12/2/2020



90    Dwelling 2nd floor/Master
      Bathroom - 246-Master Bath
      Date Taken: 12/2/2020



 **Noble Public Adjusting Group**

91   Dwelling 2nd floor/Master
     Bathroom - 247-Master Bath
     Date Taken: 12/2/2020



92   Dwelling 2nd floor/Master
     Bathroom - 248-Master Bath
     Date Taken: 12/2/2020



 **Noble Public Adjusting Group**

93   Dwelling 2nd floor/Master
     Bedroom - 236-Master Bedroom
     Date Taken: 12/2/2020



94   Dwelling 2nd floor/Master
     Bedroom - 238-Master Bedroom
     Date Taken: 12/2/2020





**Noble Public Adjusting Group**

95   Dwelling 2nd floor/Master
     Bedroom - 239-Master Bedroom
     Date Taken: 12/2/2020



96   Dwelling 2nd floor/Loft Sitting
     Area - 223-Loft Sitting area
     Date Taken: 12/2/2020





**Noble Public Adjusting Group**

97   Dwelling 2nd floor/Loft Sitting
     Area - 235-Loft Area
     Date Taken: 12/2/2020



98   Dwelling 2nd floor/Loft Sitting
     Area - 227-Loft
     Date Taken: 12/2/2020



 **Noble Public Adjusting Group**

99  Dwelling 2nd floor/Bedroom 4 -
219-Bedroom 4
Date Taken: 12/2/2020



100  Dwelling 2nd floor/Bedroom 4 -
220-Bedroom 4 had carpet and
baseboard damage fro
Date Taken: 12/2/2020





**Noble Public Adjusting Group**

101  Dwelling 2nd floor/Bedroom 4 -
221-Bedroom 4 had carpet and
baseboard damage fro
Date Taken: 12/2/2020



102  Dwelling 2nd floor/Bedroom 4 -
222-Bedroom 4 had carpet and
baseboard damage fro
Date Taken: 12/2/2020



Exhibit A



**Noble Public Adjusting Group**

103  Dwelling 2nd floor/Laundry Room
     - 224-Laundry Room had a
     spongy floor due to washe
     Date Taken: 12/2/2020

Floor has to be replaced



104  Dwelling 2nd floor/Laundry Room
     - 225-Laundry Room
     Date Taken: 12/2/2020



Exhibit A



**Noble Public Adjusting Group**

105  Dwelling 2nd floor/Laundry Room
     - 226-Laundry Room
     Date Taken: 12/2/2020



**IN THE SUPERIOR COURT OF GWINNETT COUNTY**
**STATE OF GEORGIA**

| | | |
|---|---|---|
| QUASAR ALEXANDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE NO.: |
| | ) | |
| MEMBERSELECT INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS DIRECTED TO DEFENDANT

COMES NOW, Plaintiff, **Quasar Alexander**, by and through the undersigned counsel, and hereby propounds the following First Set of Interrogatories and Request for Production of Documents to the Defendant, **MemberSelect Insurance Company**, to be answered separately and fully, in writing, under oath, and in accordance with the Georgia Civil Practice Act, O.C.G.A. §§ 9-11-33 and 9-11-34.

## GENERAL INSTRUCTIONS

1. You are required to answer and verify the following interrogatories and requests for production of documents within forty-five (45) days of the date of service.

2. Each paragraph below shall operate and be construed independently; and, unless otherwise indicated, no paragraph limits the scope of any other paragraph.

3. In answering these discovery requests, you are required to furnish all information available to You (not merely such information as you know of your own personal knowledge), including information in the possession of your attorneys and accountants, other persons directly or indirectly employed by or connected with you or your attorneys or accountants, or anyone else acting on your behalf or otherwise subject to your control.

Page | 1

4. Your obligation to answer these discovery requests is intended to be continuing in nature; therefore, you are required by O.C.G.A. § 9-11-26 and instructed by the Plaintiff to reasonably & promptly amend or supplement your response if you learn that any prior response is in some material respect incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to Plaintiff during the discovery process or in writing.

5. You are instructed that a failure by you to make, amend, or supplement a response in a timely manner or to otherwise comply with O.C.G.A. § 9-11-26 may result in sanctions against You.

6. The singular includes the plural number, and vice versa. The masculine includes the feminine and neutral genders. The past tense includes the present tense where the clear meaning is distorted by a change of tense.

7. Each document request shall be deemed to call for the production of the original document or documents. If the original is not available, then a copy shall be produced if it differs in any respect from the original or from other copies (e.g., by reason of handwritten, typed, or printed notes or comments having been added to the copy that do not appear on the original).

8. If a request seeks a document that, to your knowledge, does not exist, please state that the document does not exist.

9. Without interfering with the readability of a document, please identify by Bates number or other means the request(s) to which the document is responsive.

10. For each document responsive to any request that is withheld under a claim of privilege, you are required by Uniform Superior Court Rule 5.5 to provide a privilege log containing the following information:

    a. The date the document was prepared or created;

    b. The name and title of the author or authors of the document;

    a. A summary of the subject matter of the document;

    b. The identity of each person or persons (other than those giving solely stenographic or clerical assistance) who assisted the author or authors in creating the document;

    c. The identity of each person to whom the document or the contents of the document have been communicated (either intentionally or inadvertently), the date(s) of such communication, the title of each such person, and the date of such communication;

    d. A statement of the basis on which privilege is claimed; and

    e. The identity and title, if any, of the person or persons providing the information requested in subsections (a) through (f) above.

## **DEFINITIONS**

As used in these interrogatories, the terms listed below are defined as follows:

1. "Document(s)" or "documentation" means any writing of any kind, including originals and all non-identical copies (whether different from the originals by reason of any notation made on such copies or otherwise), including without limitation correspondence, memoranda, notes, desk calendars, diaries, statistics, letters, telegrams, minutes, contracts, reports, studies, checks, invoices, statements, receipts, returns, warranties, guaranties, summaries, pamphlets, books, prospectuses, interoffice and intra-office communications, offers, notations of any sort of conversation, telephone calls, meetings or other

communications, bulletins, magazines, publications, printed matter, photographs, computer printouts, teletypes, faxes, invoices, worksheets and all drafts, alterations, modifications, changes and amendments of any of the foregoing, tapes, tape recordings, transcripts, graphic or aural records or representations of any kind, memorialized depictions of the Property or of Communications relating to the Claim, and electronic, mechanical or electric records or representations of any kind which You have knowledge or which are now or were formally in your actual or constructive possession, custody or control.

2. "Claim" or "Policyholder's Claim" shall refer to Claim No. 401311951 and 401313188, which was drafted by the Insurance Company and issued to the Policyholder for direct physical loss or direct physical damage to the Property.

3. "Communication" shall mean and include any oral or written utterance, notation, or statement of any nature whatsoever, including but not limited to correspondence, personal conversation, telephone calls, dialogues, discussions, interviews, consultations, telegrams, telexes, cables, memoranda, agreements, notes, and oral, written, or other understandings or agreements. This shall include all written, recorded, or signed statements of any party, including the Policyholder, any adjuster, subcontractor, witnesses, investigators, or agents, representative, or employee of the parties concerning the subject matter of this action.

4. "Identify" shall mean:

    a. when used to refer to a document, means to state the following:

        1. The subject of the document;

        2. The title of the document;

        3. The type of document (e.g., letter, memorandum, telegram, chart);

4. The date of the document, or if the specific date thereof is unknown, the month and year or other best approximation of such date with reference to other events;

5. The identity of the person or persons who wrote, contributed to, prepared or originated such document; and

6. The present or last known location and custodian of the document.

b. when used in reference to a *person*, "identify" means to state to the fullest extent possible the person's name, present or last known address, present or last known telephone number(s), and, if a natural person, the person's employer and position of employment at the time(s) in question.

c. when used in reference to a *conversation* or *communication*, "identify" means to state the date and length of the communication, the identity of all parties to the communication, the identity of all other witnesses to the communication, the place where the communication took place (if the communication did not take place in person, set forth the location of each party to and each witness to the communication), and the general subject matter(s) of the communication.

d. when used in reference to a *claim*, "identify" means to state the date and location the claim arose, the location the claim was defended, the names of the parties involved, the case style, the amount in controversy, and the general nature of the claim.

e. "Relating to" any given subject means any document, communication, or statement that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with,

touches upon, or is in any manner whatsoever pertinent to that subject and supports, evidences, describes, mentions, refers to, contradicts or comprises the subject.

5. "Including" shall mean "including, but not limited to."

6. "And" and "or" shall be construed conjunctively or disjunctively as required by the context within the scope of a discovery request so as not to exclude any information that might be deemed outside the scope of the request or by any other construction.

7. "Person(s)" shall mean and include a natural person, firm, association, organization, partnership, business trust, corporation (public or private), or government entity.

8. "Parties" includes all named parties in this litigation and their agents, employees, servants, officers, and directors.

9. "Plaintiff" and "Policyholder" mean the above-captioned Plaintiff or the Policyholder listed on HOM700121987 and his/her/its employees, representative, agents, employees, servants, officers, and directors.

10. "Property" or "Insured Property" means the property located at 3294 Sequoia Ave, Atlanta, GA 30349.

11. "You," "Your," "Defendant," and "Insurance Company" means Defendant Insurance Company and its employees, representatives, agents, employees, servants, officers, directors, adjusters, branch claims representatives, regional or home office claims auditors or claims examiners, all claims managers and claims supervisors at any level, executive officers of the company, and all members of any review or claims committee, and each person presently or formerly acting or authorized to act on Defendant's behalf.

12. "Policy" means Policy No. HOM700121987 issued by MemberSelect Insurance Company.

Exhibit A

13. "Broker" means an insurance broker, excess/surplus lines broker, licensed insurance agent, managing general agent, or other insurance intermediary involved in the purchase, sale, negotiation, or placement of the Policy.

14. "Coverage Letter(s)" means the correspondence from You to Policyholder dated anytime, regarding Your position as to coverage for the Loss.

15. "Loss" means the event on or around October 26, 2020 and October 29, 2020, in which Policyholder suffered property damage and has consequently incurred extra expenses such as additional living expenses, business income losses, and other losses afforded coverage for under the Policy.

16. "Possession, custody or control" includes the joint or several possession, custody, or control not only by the person to whom these interrogatories are addressed, but also the joint or several possession, custody, or control by each or any other person acting, or purporting to act on behalf of, the Person, whether as an employee, attorney, accountant, agent, sponsor, spokesman, or otherwise.

## **INTERROGATORIES**

### 1.

Identify any and all Persons involved in any way whatsoever in the investigation, adjustment, and handling of Plaintiff's claim for insurance benefits arising from the Loss on or about October 26, 2020 and October 29, 2020, and for each, please include his/her name, place of employment, address, and telephone number; his/her title, license(s), and certification(s); the date his/her involvement in this claim commenced; the date his/her involvement in this claim concluded; and a description his/her involvement in this claim.

Exhibit A

This interrogatory seeks information about every individual involved in the Claim including, but not limited to, Persons employed by the Defendant or retained by Defendant through a third-party entity. For Defendant's employees specifically, this Interrogatory seeks the name of every employee of Defendant who had anything to do with the Claim.

2.

If any Person identified in Your answer to Interrogatory No. 1 is or was Your employee, agent, or representative, please state whether said Person has been promoted, demoted, terminated, or transferred from October 26, 2020 and October 29, 2020 to present; describe in detail the change in employment status of each such Person, including the circumstances of the Person's employment before and after the change in status; and provide the last-known residence address and telephone number or place of current employment of each such former employee.

3.

Describe each and every investigative step conducted by You, or by anyone on Your behalf, regarding Plaintiff's Claim, beginning with the date and method You received notice of the subject Claim, and identify any and all documents and correspondence (paper or electronic) generated, obtained, or otherwise placed in Your possession, in the course of Your investigation.

4.

Identify each and every person that You expect to call as an expert witness at trial, and for each, please state: the subject matter on which the expert is expected to testify; the substance of the facts and opinions to which the expert is expected to testify; a summary of the grounds for each opinion; the data or other information considered by the expert in forming their opinions; whether a written report has been prepared; and identify the data or other information considered by the expert in forming their opinions & all documents You furnished to the expert.

Exhibit A

5.

If You have retained or employed an expert in conjunction with the Claim who is not expected to be called as a witness at trial, please identify said expert(s), and for each, please state their address and contact information.

6.

Please state the date and manner in which You received notice of the Claim; the date and manner in which You acknowledged receipt of the Claim; the date and manner in which You commenced investigation of the Claim; the date and manner in which You requested from the Plaintiff all items, statements, and forms that You reasonably believed, at the time, would be required from the Plaintiff; the date and manner in which You notified the Plaintiff in writing of the acceptance or rejection of the claim; and the date, amount, and reason for any insurance proceed payments You have made to the Plaintiff.

7.

Have You extended coverage for any part of Plaintiff's Claim for insurance benefits, or have You denied or rejected Plaintiff's Claim? If You extended coverage for any part of Plaintiff's Loss, please state with specificity the provisions, endorsements, or any other part of the Policy governing Plaintiff's Loss that supports Your extension of coverage; please state with specificity Your reasons for denying or rejecting any part of Plaintiff's Claim; and include all facts and policy provisions that supported Your decision to deny or reject Plaintiff's Claim. This Interrogatory seeks the above information even if coverage was extended for the Loss but fell below the Plaintiff's deductible.

8.

Exhibit A

Do You contend the damage to the Property can be repaired?  If so, please state with specificity the method of repair Defendant contends should be used to repair the Property. This request seeks any and all building codes (state, county, city, or municipal), industry standards, and industry practices employed in the investigation, evaluation, and determination of methods used to repair damages caused by the Loss that Defendant states could be used to repair the Property. If such information exists, please state: the name(s), address(es), and telephone number(s) of all Persons who have personal knowledge of any of these industry standards or practices; and identify all documents that support or explain any of these building codes, engineering industry standards, and practices.

If You do not have an answer to this Interrogatory, please affirmatively state none of the above was relied upon in determining if the damage sustained to the Property by the Loss is or was repairable.

9.

Does the Policy owe for anything less than a proper repair of the damaged Property caused by a covered loss? If the Policy does not owe for a proper repair, please state with specificity the provision of the Policy which does not provide for a proper repair.

10.

Please identify any and all written policies, procedures, guidelines, or other documents (including document(s) maintained in physical or electronic form) You maintained for Your internal or third party adjusters to use in the state of Georgia in connection with adjusting Water and Wind losses that were in effect on October 26, 2020 and October 29, 2020 through present.

11.

Please state with specificity the approximate date and event which caused You to anticipate litigation with respect to Plaintiff's cause of action and identify all documents that support or explain any of these facts.

12.

Identify any and all documents (including those maintained electronically) relating to the investigation, claim handling, and adjustment of Water and Wind claims in the state of Georgia that are routinely generated throughout the handling and investigation of such claims (including, but not limited to, Investigation Reports; reserve sheets; electronic claims diaries or similar record logs; claims review reports; and/or any team report relative to this claim) for the two years preceding October 26, 2020 and October 29, 2020 to the present, and state whether any such documents were generated during the investigation and handling of the Claim.

13.

Have any documents (including those maintained electronically) relating to the Claim been destroyed, lost, or disposed of? If so, please identify what, when and why the document was destroyed, and describe Your document retention policy.

14.

Do You contend the Property was damaged by any excluded peril? If so, state the specific provision in the Policy supporting the exclusion and how the exclusion impacted Your claim decision, state in detail Your factual basis for this contention, and identify any documents supporting Your contention.

15.

Do You contend the Plaintiff failed to satisfy any condition, covenant, or duty of the Policy or otherwise breached the Policy? If so, identify each specific condition, covenant, or duty of the

Policy You contend the Plaintiff failed to satisfy or breach, and identify all the documents relating to Your assertion and all Persons with knowledge of such facts.

16.

Identify the underwriting documents created or acquired in the formation of the Policy for the Property including any risk reports for the Property that have been generated or obtained at any time, and state if any Notice(s) of Cancellation or Notice(s) of Non-Renewal of the Policy have been issued.

17.

Identify any and all photographs, audio recordings, video recordings, written statements taken, or other memorializing documentation obtained during the course of Your investigation of the Claim. In Your response, please describe in detail what each document depicts or memorializes and state the date when each such document or memorialization was obtained or generated.

18.

Identify any and all repair estimates, invoices, quotes, receipts, or other documentation reflecting the cost or methodology to repair the damages at issue in this Claim, even if said item never left Your possession. In Your response, please describe in detail what each document depicts, when it was generated or obtained, why it was generated or obtained, and state the date when the item was created, received, or requested.

19.

Please identify each Person who assisted You in any way to provide responses to these Interrogatories. For each identified Person, please include the Person's name, place of employment, address, telephone number and relationship to you.

20.

State the good faith factual basis for Your Affirmative Defenses(s), and identify the date, type of document, author(s), recipient(s), and present custodian of every document known or believed by You to refer or relate in any way to the facts You contend support Your Affirmative Defense(s) and comprehensively describe all basis (factual and otherwise), documents, notes, memorandum, reports, or other documentation supporting Your responses to the paragraphs of Plaintiff's Complaint.

## **REQUEST FOR PRODUCTION OF DOCUMENTS**

1.

All documents responsive to Plaintiff's Interrogatories identified in Your responses to Plaintiff's Interrogatories or otherwise reviewed or relied upon in responding to Plaintiff's Interrogatories.

2.

The entire claim file, claims notes, or other similar records from the home, regional, or local offices; third party adjusters or adjusting firms; or ladder assist Persons retained by You regarding the Claim. This request includes, but it not limited to, copies of the file jackets; "field" files and notes; and drafts of documents contained in the file.

To the extent that this request seeks documents from third-party adjusters/adjusting firms, ladder assists, or other Persons retained by the Defendant, this request is only seeking such documents that have been provided to, or are in the control of, the Defendant.

3.

A certified copy of the Policy or insurance policies possessed by Defendant pertaining to the Property involved in this suit.

4.

All documents and tangible things supporting the method You contend could be used to properly repair the damages sustained to the Property as a result of the Loss.

5.

Your written procedures, policies, guidelines, or other similar documentation (including document(s) maintained in electronic form) that pertain to the handling of Water and Wind claims in the state of Georgia for the year preceding October 26, 2020 and October 29, 2020 to present.

6.

Any and all weather reports in Your possession which concern the Property, regardless of whether You relied upon them in making Your claims decision in this matter, for the two years preceding October 26, 2020 and October 29, 2020 to present.

7.

The Operation Guides which relate to the handling of Water and Wind claims in the state of Georgia in effect for the year preceding October 26, 2020 and October 29, 2020 to present.

8.

The field notes, measurements, electronic diary, file materials, or other similar records (including all electronic and paper notes) created, obtained, or maintained by the claims personnel, contractors, adjusters, engineers, or any other Person who physically inspected the Property or adjusted the Claim.

9.

The emails, instant messages, internal or external correspondence, or any other communication between Defendant and any agent, representative, employee, or other Person pertaining to the Claim.

10.

Defendant's internal newsletters, bulletins, publications, or other memoranda internally circulated which relates to the policies and procedures relied upon in the handling of Water and Wind claims in the state of Georgia that were issued one year preceding October 26, 2020 and October 29, 2020 through the present, including, but not limited to, memoranda issued to claims adjusters.

11.

The price guidelines, price indexes, or other similar information utilized in the creation of any repair estimates prepared, edited, requested, or relied upon by the Defendant. In the event published guidelines of "off the shelf" software (including, but not limited to, Xactimate software) were utilized to inform pricing decisions, You may respond by simply identifying the name, version, and/or edition of the published guidelines used.

12.

Any "Summary of Loss," "Pay sheet," "Payment Log," copy of issued payments, or other similar list or record of payments made by Defendant in relation to the Claim. This includes, but is not limited to, all payments issued to Plaintiff or Plaintiff's agents and representatives; all payments issued to independent adjusters, ladder assists, engineers, or other Persons retained in Your adjustment of this claim; all copies of any and all checks issued; and all expenses incurred by You in Your adjustment of this claim.

13.

The documents reflecting reserves applied to the Claim.

14.

The contract or agreement between the Defendant and any third-party Person retained in the investigation and adjustment of the Claim. This request includes, but is not limited to, contracts

or agreements with ladder assists, independent adjusters, contractors, engineers, meteorologists, or hygienists involved in any way throughout the Claim.

15.

All documents submitted to, or received from, each Person You expect to call as an expert witness at trial. This request includes, but is not limited to: any agreement exchanged or entered into between Defendant and the witness (including proposals not agreed upon and counteroffers to the same); all reports generated by the witness (including drafts); a current *curriculum vitae* for the witness; a list of all other publications authored by the witness; a list of all other cases in which the witness has testified as an expert at trial or by deposition; an invoice showing the compensation paid or owed to the witness; and all documents and tangible things consulted by and relied upon by the witness in forming his or her expert opinion.

16.

All documents submitted to, or received from, each Person Defendant hired or consulted as an expert witness which Defendant does not intend to call as an expert witness at trial in this case. This request includes, but is not limited to: any agreement exchanged or entered into between Defendant and the witness (including proposals not agreed upon and counteroffers to the same); all reports generated by the witness (including drafts); a current *curriculum vitae* for the witness; a list of all other publications authored by the witness; a list of all other cases in which the witness has testified as an expert at trial or by deposition; an invoice showing the compensation paid or owed to the witness; and all documents and tangible things consulted by and relied upon by the witness in forming his or her expert opinion.

17.

All documents in Your possession concerning the underwriting of the Policy issued for the Property. This request includes, but is not limited to, any risk reports for the Property and any Notice(s) of Cancellation or Notice(s) of Non-Renewal of the Policy for the Property.

18.

All repair estimates, invoices, quotes, receipts, or other documentation Defendant reviewed throughout the adjustment of the Claim which reflect the cost to repair any agreed upon, contested, or suspected damages at issue in the Claim. This request is inclusive of documents not transmitted to the Plaintiff through the adjustment of the Claim.

19.

Any and all photographs, audio recordings, video recordings, written statements taken, or other memorializing documentation obtained during the course of Your investigation of the claim. This request seeks the requested documentation to be produced in a format most similar to the original, in the highest quality version available, and in a format which retains the original metadata.

20.

A copy of the license, registration, certification, or other similar documentation for all Persons retained, employed, or consulted by the Defendant to inspect the Property and/or adjust the Claim.

21.

All evidence You intend to introduce at the trial of this matter.

Page | 17

Exhibit A

It is requested that the above-requested responses be made within forty-five (45) days of service of this request at the offices of The Huggins Law Firm, LLC, 110 Norcross Street, Roswell, GA 30075.

Dated, this this 20th day of December, 2022.

RESPECTFULLY SUBMITTED,

**THE HUGGINS LAW FIRM, LLC**
110 Norcross Street
Roswell, GA 30075
(o) (770) 913-6229
(e) remington@lawhuggins.com
(e) mdturner@lawhuggins.com

J. Remington Huggins, Esq.
Georgia Bar No.: 348736
Michael D. Turner, Esq.
Georgia Bar No.: 216414
*Attorneys for the Plaintiff*

Exhibit A

E-FILED IN OFFICE - JM
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA

**22-A-10758-5**

**12/19/2022 2:57 PM**
TIANA P. GARNER, CLERK

## IN THE SUPERIOR COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

QUASAR ALEXANDER,                )
                                 )
    Plaintiff,               )
                                 )
v.                               )      **CIVIL ACTION FILE NO.:**
                                 )
MEMBERSELECT INSURANCE           )      <u>22-A-10758-5</u>
COMPANY,                         )
  a foreign corporation,        )
                                 )
    Defendant.               )

### <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have served the foregoing upon the Defendant MemberSelect Insurance Company by serving them with the ***Summons, Complaint and Exhibits***, and ***Plaintiff's First Set of Interrogatories and Request for Production of Documents*** in accordance with the Court's rules to Defendant MemberSelect Insurance Company at the address listed below:

**C T Corporation System**
**Registered Agent for Defendant MemberSelect Insurance Company**
**289 S. Culver St.**
**Lawrenceville, GA 30046**

Respectfully submitted, this 19th day of December, 2022.

For: The Huggins Law Firm, LLC,

**The Huggins Law Firm, LLC**          J. Remington Huggins, Esq.
110 Norcross Street                    Georgia Bar No.: 348736
Roswell, GA 30075                      Michael D. Turner, Esq.
(o) (770) 913-6229                     Georgia Bar No.: 216414
(e) remington@lawhuggins.com           *Attorneys for the Plaintiff*
(e) mdturner@lawhuggins.com

Exhibit A