# EXHIBIT A

E-FILED IN OFFICE - JM
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
**22-A-10787-11**
**12/20/2022 1:00 PM**
TIANA P. GARNER, CLERK

## IN THE SUPERIOR COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

Sothy Heng
1010 Landmark Drive
McDonough, GA 30252

PLAINTIFF            CIVIL ACTION NUMBER: 22-A-10787-11 _____

VS

State Farm Fire and Casualty Company
RA: Corporation Service Company
2 Sun Court, Suite 400
Peachtree Corners, GA 30092

DEFENDANT

---

### SUMMONS

---

**TO THE ABOVE-NAMED DEFENDANT:**

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

**Foster L. Peebles**
**Attorney For the Plaintiff**
**THE HUGGINS LAW FIRM, LLC**
**110 Norcross Street**
**Roswell, GA 30075**
**770-913-6229**
**fpeebles@lawhuggins.com**

an Answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This 20th day of December, 2022 _____ day of _____, 2022.

Tiana P. Garner,
Clerk of Superior Court

BY: _____
Deputy Clerk

E-FILED IN OFFICE - JM
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
**22-A-10787-11**
**12/20/2022 1:00 PM**
TIANA P. GARNER, CLERK

## IN THE SUPERIOR COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| **SOTHY HENG,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION FILE NO.:** |
| | ) | |
| **STATE FARM FIRE AND CASUALTY** | ) | 22-A-10787-11 |
| **COMPANY,** | ) | |
| a foreign corporation, | ) | |
| | ) | |
| **Defendant.** | ) | |

### COMPLAINT

**COMES NOW** Plaintiff **Sothy Heng,** by and through the undersigned counsel, and files this Complaint for breach of first party property insurance contract and bad faith denial of insurance coverage against Defendant, **State Farm Fire and Casualty Company,** and in support hereof, states as follows:

### PARTIES

1.

Plaintiff is an adult resident citizen of Henry County, Georgia.

2.

Upon information and belief, Defendant is a foreign insurance company, registered to transact business in, and in fact transacts business in, the State of Georgia. Defendant is in the business of insuring risks and properties located throughout the United States, including Georgia. Defendant maintains an office at 2 Sun Court, Suite 400, Peachtree Corners, GA 30092 where it may be served with process through its registered agent, Corporation Service Company, as identified by the state of Georgia Secretary of State registry.

## JURISDICTION AND VENUE

3.

This Court has subject matter jurisdiction over this action for breach of contract and bad faith denial of an insurance claim because the breached contract was entered into, and concerned property in, the state of Georgia and the amount in controversy exceeds $15,000.00. This Court has personal jurisdiction over Defendant because Defendant is transacting business and insuring properties in the state of Georgia and has appointed a registered agent for service of process in Georgia pursuant to O.C.G.A. § 33-4-1 and O.C.G.A. § 33-4-4.

4.

Venue is proper in this Court because Defendant has a registered agent doing business in Gwinnett County pursuant to O.C.G.A. § 33-4-1, O.C.G.A. § 33-4-4.

5.

In addition, by virtue of the express terms of the insurance policy at issue, Defendant has consented to jurisdiction and venue of this Court.

## THE POLICY

6.

Prior to January 2, 2022, and in consideration of the premiums paid to Defendant by the Plaintiff, Defendant issued a policy with Policy No. 81-G0-P898-7 (the "Policy"). A true and accurate copy of the Policy is attached hereto as Exhibit "A."

7.

The Policy provides numerous coverages for the real and personal property located at 1010 Landmark Drive, McDonough, GA 30252 (the "Insured Property," "Property," or the "home").

The Policy likewise insures against loss due to Wind and Hail, subject to a deductible of $1,660.00 per occurrence. (*See* Ex. A).

8.

The Policy is an all-perils policy providing coverage for sudden and accidental direct physical loss to the dwelling, other structures, and personal property. The Policy covers property repairs and personal property on a full replacement cost basis. (*See* Ex. A).

9.

The Policy covers various types of expenses, including reasonable and necessary costs incurred for temporary repairs to protect covered property from further imminent covered loss and additional living expenses. (*See* Ex. A).

## SUDDEN AND ACCIDENTAL DAMAGE TO THE INSURED PROPERTY

10.

On or about January 2, 2022, the above-referenced property suffered damage from a sudden and accidental direct physical loss resulting from Wind and Hail (the "Loss"). The Policy was in effect at the time of the Loss.

11.

Plaintiff promptly and timely notified Defendant of the damage to the Property resulting from the Loss and made a claim pursuant to the Policy. As a result, Defendant assigned an adjuster ("Adjuster") to investigate Plaintiff's claim for sudden and accidental direct physical loss. The Adjuster was authorized as Defendant's representative and agent for purposes of the claim.

3

12.

At all times, Plaintiff made themselves and the Property available to, and fully cooperated with, the Defendant and its representative and agent to inspect and investigate the damages caused by the loss.

13.

Defendant, through its authorized representative and agent, Adjuster, performed a site inspection of the Property.

14.

Defendant's authorized representative and agent, Adjuster, incurred the duty of acting with due diligence in achieving a proper disposition of the Plaintiff's claim when Adjuster undertook the handling of the claim.

15.

Defendant, through its authorized representative and agent, Adjuster, grossly underestimated the scope of loss suffered by the Plaintiff as a result of the Wind and Hail event. Defendant failed to properly indemnify the Plaintiff and estimated Plaintiff's total loss to be $745.40. Plaintiff's deductible is $1,660.00 per occurrence, and Defendant withheld $130.08 in recoverable depreciation; thus, after deductions for depreciation and Plaintiff's deductible, Defendant claims Plaintiff was due no compensation as indemnification under the Policy. A true and accurate copy of the Defendant's estimate is attached hereto as Exhibit "B."

16.

As a result of Defendant's gross underestimation, Plaintiff requested multiple times that Defendant reconsider its position regarding Defendant's estimate. Defendant refused to comply with the Plaintiff's requests and continued to frivolously and baselessly deny any additional

4

payment on Plaintiff's claim. Furthermore, the Defendant continued to ignore the opinions of the Plaintiff's experts as to the extent of damage and the amount it will cost the Plaintiff to be properly indemnified for the Loss.

17.

Plaintiff made repeated requests for payment of the claim, including a written demand sent to Defendant on . A true and accurate copy of the written demand is attached hereto as Exhibit "C." Despite this demand for $66,207.44 less previous payments and the applicable deductible, Defendant continued to frivolously deny Plaintiff's claim without just cause when, under one or more portions of the Policy, the obligation to settle the claim became reasonably clear.

18.

The Plaintiff's September 21, 2022, correspondence (Ex. C) to Defendant was a letter of representation from Plaintiff's counsel and a formal 60-Day demand, pursuant to the guidelines set forth in O.C.G.A. §33-4-6. After putting Defendant on notice of a potential lawsuit through the formal 60-Day demand, the Defendant continued to deny Plaintiff's claim without just cause.

19.

Defendant did not act fairly or honestly toward the Plaintiff, or with due regard to the Plaintiff's claim and interests, when Defendant, under all circumstances articulated herein, failed to indemnify the Plaintiff for their damages in direct breach of the terms and conditions of the Policy.

20.

Plaintiff has fulfilled all conditions precedent and contractual obligations under the Policy prior to this lawsuit, or the same were waived.

5

### 21.

There exists a genuine, justifiable controversy between the Plaintiff and the Defendant as to whether Defendant is responsible for further indemnification owed to the Plaintiff as a result of the Loss. Plaintiff has exhausted every reasonable means possible to resolve this dispute with the Defendant. With no other option, Plaintiff was constrained to hire legal counsel, incur additional expenses, and file this lawsuit.

### 22.

Plaintiff has suffered loss under the Policy in an amount to be determined at trial.

### **COUNT I: BREACH OF CONTRACT**

### 23.

Plaintiff hereby adopts, re-alleges, and incorporates their allegations set forth in Paragraphs 1-22 of this Complaint as if fully set forth herein.

### 24.

Plaintiff has performed all conditions precedent to the Defendant's obligation to perform under the Policy including, without limitation, the timely payment of premiums, timely notice of the claim, and post loss obligations, or the Defendant has waived any and all other conditions.

### 25.

Under the terms of the Policy, Defendant is required to fully indemnify the Plaintiff for the damages sustained from the Loss.

### 26.

Despite Plaintiff's timely written demand, Defendant failed to provide full indemnification to the Plaintiff under the terms of the Policy.

27.

Defendant failed to act in good faith and fair dealing under the terms of the Policy by refusing to properly investigate and fully indemnify the Plaintiff according to the terms of the Policy.

28.

As a result of the Defendant's denying and delaying payment in Plaintiff's claim, Plaintiff sustained additional covered losses from mitigation and temporary repairs of the direct physical damage to the Property in an amount to be determined at trial.

29.

The Plaintiff suffered damages as a direct result of Defendant's failure to indemnify the Plaintiff for their loss.

30.

All foregoing conduct constitutes a breach of contract that has resulted in damages to the Plaintiff.

31.

**WHEREFORE,** Plaintiff prays for this Court to enter an award in Plaintiff's favor of compensatory damages, attorneys' fees, pre- and post-judgment interest, and such other and further relief as the Court may deem just and proper.

## COUNT II: BAD FAITH PURSUANT TO O.C.G.A. § 33-4-6

32.

Plaintiff hereby adopts, re-alleges, and incorporates their allegations set forth in Paragraphs 1-31 of this Complaint as if fully set forth herein.

33.

By failing to achieve a proper disposition of Plaintiff's claim, Defendant acted frivolously, and without a reasonable basis or justification, in contravention of its duty of good faith and fair dealing.

34.

Defendant did not attempt in good faith to settle the Plaintiff's claim when it could have, and should have, done so under all attendant circumstances had it acted fairly and honestly toward the Plaintiff and with due regard for the Plaintiff's interests.

35.

Defendant's failures to adjust Plaintiff's claim in good faith include, but are not limited to:

(1) Knowingly misrepresenting to claimants, and insureds, relevant facts or policy provisions relating to coverages at issue (*see* O.C.G.A. § 33-6-34(1));

(2) Failing to acknowledge with reasonable promptness pertinent communications with respect to claims arising under its policies (*see* O.C.G.A. § 33-6-34(2));

(3) Failing to adopt and implement procedures for the prompt investigation and settlement of claims arising under its policies (*see* O.C.G.A. § 33-6-34(3));

(4) Not attempting in good faith to effectuate prompt, fair, and equitable settlement of claims submitted in which liability has become reasonable clear (*see* O.C.G.A. § 33-6-34(4));

(5) Compelling insureds or beneficiaries to institute suits to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in suits brought by them (*see* O.C.G.A. § 33-6-34(5));

(6) Refusing to pay claims without conducting a reasonable investigation (*see* O.C.G.A. § 33-6-34(6));

8

(7) When requested by the insured in writing, failing to affirm or deny coverage of claims within a reasonable time after having completed its investigation related to such claim or claims (*see* O.C.G.A. § 33-6-34(7)); and

(8) When requested by the insured in writing, failing in the case of payments or offers of compromise to provide promptly a reasonable and accurate explanation of the basis for such action (or, in the case of claims denials, providing said denial to the insured in writing) (*see* O.C.G.A. § 33-6-34(10)).

36.

The above and foregoing actions of Defendant constitute bad faith pursuant to O.C.G.A. § 33-4-6, as the Defendant refused to pay Plaintiff's covered loss within sixty (60) days after Plaintiff's timely written demand (Ex. C) for payment without a reasonable basis for doing so.

37.

Defendant frivolously, and without a reasonable basis, denied proper indemnification to the Plaintiff for their covered loss.

38.

Defendant's refusal to indemnify the Plaintiff was done frivolously, without a reasonable basis, and in bad faith.

39.

As a result of Defendant's above-referenced bad faith breach of the Policy issued to the Plaintiff, and pursuant to O.C.G.A. § 33-4-6(a), Defendant is liable for penalties in the amount of "not more than fifty percent (50%) of the liability of the insurer for the loss, or $5,000.00, whichever is greater, and all reasonable attorneys' fees for the prosecution of the action against the Insurer."

40.

**WHEREFORE,** Plaintiff prays for this Court to enter an award, in Plaintiff's favor, of the statutory award in an amount of fifty percent (50%) of the total compensatory damages awarded or $5,000.00, whichever is greater, along with a statutory allowance for reasonable attorneys' fees in prosecuting this action, pursuant to O.C.G.A. § 33-4-6, for Defendant's unfair claims settlement practices and bad faith refusal to pay Plaintiff's loss claim when it could and should have done so, had it acted fairly and reasonably toward the insured.

## DEMAND FOR JURY TRIAL

41.

Plaintiff requests a trial by Jury on all counts of the Complaint.

## PRAYER FOR RELIEF

42.

**WHEREFORE,** Plaintiff requests that after due proceedings are had, all appropriate penalties be assessed against the Defendant and that the Plaintiff receive any and all damages at law to which they are justly entitled, and thus prays for judgment against the Defendant, as follows:

a. That this Court grant judgment in favor of the Plaintiff and against Defendant in an amount to be determined at trial for breach of insurance contract.

b. Compensatory damages, including all damages to the Plaintiff by the Defendant and any resulting expenses.

c. Bad faith damages in an amount of fifty percent (50%) of the total compensatory damages awarded or $5,000.00, whichever is greater, for Defendant's bad faith delay, denial, and its

10

intentional, frivolous failure to conduct a reasonable investigation of the Plaintiff's claim without a reasonable basis;

d. Plaintiff's attorneys' fees and costs of suit in this action;

e. Plaintiff's consultant and expert fees;

f. Pre- and post-judgment interest in the maximum amount allowed by law;

g. All statutory penalties;

h. Any and all applicable multipliers; and,

i. Any and all other relief that the Court may deem just and proper, whether such relief sounds in law or equity.

Dated, this 20th day of December, 2022.

RESPECTFULLY SUBMITTED,

**The Huggins Law Firm, LLC**
110 Norcross Street
Roswell, GA 30075
(o) (770) 913-6229
(e) remington@lawhuggins.com
(e) fpeebles@lawhuggins.com

J. Remington Huggins, Esq.
Georgia Bar No.: 348736
Foster L. Peebles, Esq.
Georgia Bar No.: 410852
*Attorneys for the Plaintiff*

11

# EXHIBIT A

Georgia
HW-2111

    (3)  owned by roomers, boarders, tenants, and other residents, any of whom are related to *you*.

**b.** *We* cover personal property usually located at an *insured's* residence, other than the *residence premises*, for up to $1,000 or 10% of the Coverage B limit, whichever is greater. This limitation does not apply to personal property:

    (1)  in a newly acquired principal residence for the first 30 days after *you* start moving the property there. If the *residence premises* is a newly acquired principal residence, personal property in *your* immediate past principal residence is not subject to this limitation for the first 30 days after the inception of this policy; and

    (2)  of a student who is an *insured* while located at a residence away from the *residence premises*.

**Special Limits of Liability.** These limits do not increase the Coverage B limit. The special limit for each of the following categories is the total limit for each loss for all property in that category:

**a.**  $200 on money, coins, and medals, including any of these that are a part of a collection, bank notes, bullion, gold other than goldware, silver other than silverware, and platinum;

**b.**  $1,500 on property used or intended for use in a *business*, including merchandise held as samples or for sale or for delivery after sale, while on the *residence premises*. This coverage is limited to $750 on such property away from the *residence premises*.

    Electronic data processing system equipment or the recording or storage media used with that equipment is not included under this coverage, and is addressed in item c. below;

**c.**  $10,000 on electronic data processing system equipment used or intended for use in a *business*, including but not limited to computers, tablets, mobile personal communication equipment, global positioning systems, mobile personal electronic devices used for the reproduction of sound,

and standard media or non-media equipment for use with the above devices;

**d.**  $1,500 on securities, checks, cashiers checks, travelers checks, money orders, gift certificates, gift cards, rechargeable debit cards, phone cards and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, and tickets;

**e.**  $1,500 on watercraft of all types and outboard motors, including their trailers, furnishings, and equipment;

**f.**  $1,500 on trailers not used with watercraft;

**g.**  $2,500 on stamps, trading cards, and comic books, including any of these that are a part of a collection;

**h.**  $2,500 for loss by theft of firearms;

**i.**  $2,500 for loss by theft of silverware and goldware;

**j.**  $5,000 on any one article and $10,000 in the aggregate for loss by theft of any rug, carpet (except wall-to-wall carpet), tapestry, wall-hanging, or other similar article;

**k.**  $1,000 on commercially manufactured two, three, or four wheeled personal conveyances powered only by or assisted by an unmodified motor or engine with a manufacturer's power rating of no more than 1 horsepower and capable of a top speed of no more than 20 miles per hour. This does not include such conveyances that are:

    (1)  designed for assisting persons with disabilities;

    (2)  not designed for travel on public roads; and

    (3)  not subject to motor vehicle registration; and

**l.**  $1,000 for loss by theft of jewelry, watches, fur garments and garments trimmed with fur, and precious and semi-precious stones.

**2.** **Property Not Covered.** *We* do not cover:

**a.**  articles separately described and specifically insured in this or any other insurance;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

b. animals, birds, or fish;

c. any engine-propelled or motor-propelled vehicle or machine, including parts, designed for movement on land, except as provided in **Special Limits of Liability**, item k. However, *we* do cover those vehicles or machines:

  (1) that are:

    (a) not designed for travel on public roads; and

    (b) not subject to motor vehicle registration;

  (2) and that are:

    (a) used primarily to service the *insured location*; or

    (b) designed for assisting persons with disabilities;

d. any electronic equipment, devices, or accessories designed for the recording, reproduction, or storage of audio, video, photos, or other data that is permanently installed in or permanently fastened to an engine-propelled or motor-propelled vehicle or hard-wired directly to the vehicle's electrical system. *We* also do not cover removable products that may be used with the equipment or devices described above, including but not limited to tapes, discs, videos, or memory cards while in an engine-propelled or motor-propelled vehicle;

e. aircraft and parts. This does not apply to unmanned aircraft systems used as model aircraft and operated solely for recreational or hobby purposes;

f. property of roomers, boarders, tenants, and other residents not related to *you*;

g. property regularly rented or held for rental to others by an *insured*. This does not apply to property of an *insured*:

  (1) in a sleeping room when the *dwelling* is rented in part, for use as a permanent residence, by either one or two full-time roomers or boarders; or

  (2) on the *residence premises* if it is rented, either completely or in part, for exclusive use as a residence, for no more than 30 nights in the 12-month period prior to the date of the loss;

h. property rented or held for rental to others away from the *residence premises*;

i. any radio devices or transmitters, global positioning systems, radar or laser detectors, antennas, and all other similar equipment that is permanently installed in or permanently fastened to an engine-propelled or motor-propelled vehicle or that is hard-wired directly to the vehicle's electrical system;

j. books or records of accounts receivable, abstracts or other journals, architectural or technical drawings, card index systems, or other records. This does not apply to any recording or storage media for electronic data processing. *We* will cover the cost of blank books, cards, or other blank material plus the cost of labor *you* incur for transcribing or copying such records;

k. recording or storage media for electronic data processing that cannot be replaced with property of like kind and quality on the current retail market;

l. purchased or created audio, video, photos, or other data that cannot be replaced with like kind and quality on the current retail market and that is transferred or downloaded onto mobile communication equipment, global positioning systems, or electronic devices designed for the recording, reproduction, or storage of audio, video, photos, or other data;

m. contraband, or any property used in the course of illegal consumption, possession, import, export, or trade;

n. outdoor hardscape property used for aesthetic purposes except as provided in **SECTION I – ADDITIONAL COVERAGES, Trees, Shrubs, and Landscaping**; or

o. electronic currency, digital currency, virtual currency, crypto-currency, and other similar mediums of exchange.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

## COVERAGE C – LOSS OF USE

The most *we* will pay for the sum of all losses combined under **Additional Living Expense, Fair Rental Value,** and **Prohibited Use** is the limit of liability shown in the *Declarations* for **Coverage C – Loss of Use.**

1. **Additional Living Expense.** When a *loss insured* causes the *residence premises* to become uninhabitable, *we* will pay the reasonable and necessary increase in cost incurred by an *insured* to maintain their normal standard of living for up to 24 months. *Our* payment is limited to incurred costs for the shortest of:

   a. the time required to repair or replace the premises;

   b. the time required for *your* household to settle elsewhere; or

   c. 24 months.

   This period of time is not limited by the expiration of this policy.

   *We* will not pay more than the limit of liability shown in the *Declarations* for **Coverage C – Loss of Use.** Any normal expenses that are reduced or discontinued due to a *loss insured* will be subtracted from any amount owed.

2. **Fair Rental Value.** When a *loss insured* causes that part of the *residence premises* rented to others or held for rental by *you* to become uninhabitable, *we* will pay its fair rental value. Payment will be for the shortest time required to repair or replace the part of the premises rented or held for rental, but not to exceed 12 months. This period of time is not limited by the expiration of this policy. Fair rental value will not include any expense that does not continue while that part of the *residence premises* rented or held for rental is uninhabitable.

3. **Prohibited Use.** *We* will pay Additional Living Expense and Fair Rental Value, for a continuous period not to exceed two weeks, beginning when a civil authority issues an order of evacuation or prohibits *your* use of the *residence premises,* provided that:

   a. direct physical damage occurs to any property, other than covered property located on the *residence premises,* arising from a cause of loss that would be a *loss insured* under this policy

   if the damage had occurred to property on the *residence premises;*

   b. the *residence premises* is within one mile of property damaged by a cause of loss identified in 3.a. above; and

   c. the action of the civil authority is taken in response to:

      (1) dangerous physical conditions resulting from the continuation of the cause of loss identified in 3.a. above;

      (2) dangerous physical conditions resulting from the damage caused by the cause of loss identified in 3.a. above; or

      (3) the need to gain free access to property damaged by the cause of loss identified in 3.a. above.

   *We* will not pay for loss or expense due to cancellation of a lease or agreement.

## SECTION I – ADDITIONAL COVERAGES

The following Additional Coverages are subject to all the terms, provisions, exclusions, and conditions of this policy.

1. **Debris Removal.** *We* will pay the reasonable expenses *you* incur in the removal of debris of covered property damaged by a *loss insured.* This expense is included in the limit applying to the damaged property. The following coverages and limits also apply:

   a. When the amount payable for the property damage plus the debris removal exceeds the limit for damaged property, an additional 5% of that limit is available for debris removal expense. This additional amount of insurance does not apply to **SECTION I – ADDITIONAL COVERAGES, Trees, Shrubs, and Landscaping.**

   b. *We* will also pay up to $1,000 total for each loss to cover the reasonable expenses *you* incur in the removal of tree debris and stumps from the *residence premises,* unless otherwise excluded. This coverage applies when:

      (1) the tree has caused a *loss insured* to Coverage A property; or

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

(2) the tree debris felled by windstorm, hail, or weight of snow or ice blocks:

    (a) the driveway, on the *residence premises*, and prevents land *motor vehicle* access to or from the *dwelling*; or

    (b) a ramp designed to assist persons with disabilities, on the *residence premises*, and prevents access to or from a *building structure*.

2. **Temporary Repairs.** If damage is caused by a *loss insured*, *we* will pay the reasonable and necessary cost *you* incur for temporary repairs to covered property to protect the property from further immediate damage or loss. This coverage does not increase the limit applying to the property being repaired.

3. **Trees, Shrubs, and Landscaping.** *We* will pay for accidental direct physical loss to outdoor:

    a. trees, shrubs, live or artificial plants, and lawns;

    b. artificial grass; and

    c. hardscape property used for aesthetic purposes not permanently affixed to realty;

on the *residence premises*, caused by the following perils: **Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles** (not owned or operated by a resident of the *residence premises*), **Vandalism or malicious mischief,** or **Theft.**

The limit for this coverage, including the removal of debris, will not exceed 5% of the amount shown in the *Declarations* for COVERAGE A – DWELLING. *We* will not pay more than $750 for any one outdoor tree, shrub, plant, or hardscape item, including debris removal expense. This coverage may increase the limit otherwise applicable. *We* will not pay for any loss to property grown for *business* purposes.

4. **Fire Department Service Charge.** *We* will pay up to $500 per occurrence for fire department charges incurred when the fire department is called to save or protect Coverage A property from fire, lightning, or explosion. No deductible applies to this coverage. This coverage may increase the limit otherwise applicable.

5. **Property Removed.** *We* will pay for any accidental direct physical loss to covered property while being removed from a premises endangered by a *loss insured*. This coverage also applies to the property

for up to 30 days while removed. *We* will also pay for reasonable expenses incurred by *you* for the removal and return of the covered property. This coverage does not increase the limit applying to the property being removed.

6. **Credit Card, Bank Fund Transfer Card, Forgery, and Counterfeit Money.**

    a. *We* will pay up to $1,000 for:

    (1) the legal obligation of an *insured* to pay because of the theft or unauthorized use of credit cards and bank fund transfer cards issued to or registered in an *insured's* name. If an *insured* has not complied with all terms and conditions under which the cards are issued, *we* will not pay for use by an *insured* or anyone else;

    (2) loss to an *insured* caused by forgery or alteration of any check or negotiable instrument; and

    (3) loss to an *insured* through acceptance in good faith of counterfeit United States or Canadian paper currency.

No deductible applies to this coverage.

*We* will not pay more than the limit stated above for forgery or alteration committed by any one person. This limit applies when the forgery or alteration involves one or more instruments in the same loss.

    b. *We* will not pay for loss arising out of *business* pursuits or dishonesty of an *insured*.

    c. Defense:

    (1) *We* may make any investigation and settle any claim or suit that *we* decide is appropriate. *Our* obligation to defend claims or suits ends when the amount *we* pay for the loss equals *our* limit of liability.

    (2) If claim is made or a suit is brought against an *insured* for liability under the Credit Card or Bank Fund Transfer Card coverage, *we* will provide a defense. This defense is at *our* expense by counsel of *our* choice.

    (3) *We* have the option to defend at *our* expense an *insured* or an *insured's* bank

9

HW-2111

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

against any suit for the enforcement of payment under the Forgery coverage.

7. **Power Interruption.** *We* will pay for accidental direct physical loss caused directly or indirectly by a change of temperature that results from power interruption that takes place on the *residence premises*. The power interruption must be caused by a *loss insured* occurring on the *residence premises*. The power lines off the *residence premises* must remain energized. This coverage does not increase the limit applying to the damaged property.

8. **Refrigerated Products.** Coverage B is extended to cover the contents of deep freeze or refrigerated units on the *residence premises* for loss due to power failure or mechanical failure. If mechanical failure or power failure is known to *you*, all reasonable means must be used to protect the property insured from further damage or this coverage is void. Power failure or mechanical failure does not include:

   a. removal of a plug from an electrical outlet; or

   b. turning off an electrical switch unless caused by a *loss insured*.

   This coverage does not increase the limit applying to the damaged property.

9. **Arson Reward.** *We* will pay $1,000 for information that leads to an arson conviction in connection with a fire loss to property covered by this policy. This coverage may increase the limit otherwise applicable. However, the $1,000 limit will not be increased regardless of the number of persons providing information.

10. **Volcanic Action.** *We* will pay for accidental direct physical loss to a covered *building structure* or covered property contained in a *building structure* resulting from the eruption of a volcano when the loss is directly and immediately caused by:

   a. airborne volcanic shock waves;

   b. ash, dust, or particulate matter; or

   c. lava flow.

   *We* will also pay for the removal of that ash, dust, or particulate matter that has caused accidental direct physical loss to a covered *building structure* or covered property contained in a *building structure*.

All volcanic eruptions that occur within any 168-hour period will be considered one volcanic eruption.

This coverage does not increase the limit applying to the damaged property.

11. **Collapse.** *We* will pay for accidental direct physical loss to covered property involving the abrupt, entire collapse of a *building structure* or any part of a *building structure*.

   a. Collapse means the abrupt and entire falling down, caving in, or falling into pieces of a *building structure* or any part of a *building structure*. Collapse does not include any of the following:

      (1) settling, cracking, crumbling, deterioration, shrinking, bulging, expansion, sagging, bowing, leaning, or bending;

      (2) substantial structural impairment;

      (3) imminent or threatened collapse;

      (4) a *building structure* or any part of a *building structure* that is in danger of falling down or caving in; or

      (5) a part of a *building structure* that is standing even if:

         (a) it has separated from another part of the *building structure*; or

         (b) it shows evidence of settling, cracking, crumbling, deterioration, shrinking, bulging, expansion, sagging, bowing, leaning, or bending.

   b. The collapse must be directly and immediately caused by one or more of the following:

      (1) perils described in SECTION I – LOSSES INSURED, COVERAGE B – PERSONAL PROPERTY. These perils apply to *building structures* covered under Coverage A or Coverage B for loss insured by this Additional Coverage;

      (2) decay or deterioration of, or damage from animals, birds, or insects to:

         (a) a connector; or

         (b) a structural member of a *building structure*;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

The decay, deterioration, or damage must be hidden from view and unknown to all *insureds* prior to the collapse;

(3) weight of contents, equipment, animals, or people;

(4) weight of ice, snow, sleet, or rain that collects on a roof, porch, or deck; or

(5) use of defective material or methods in the construction (includes remodeling or renovation) of the *building structure*, if the collapse occurs during the course of the construction of the *building structure*.

Loss to awnings, fences, patios, pavement, swimming pools, underground pipes, flues, drains, cesspools, septic tanks, foundations (including slabs, basement walls, and crawl space walls), retaining walls, bulkheads, piers, wharfs, docks, trellises, or antennas and their supporting structures is not included under items (2), (3), and (4) immediately above unless the loss is the direct and immediate result of the collapse of a *building structure* or any part of a *building structure*.

This coverage does not increase the limit applying to the damaged property.

12. **Locks and Remote Devices.** *We* will pay up to $1,000 for each loss for the reasonable expenses *you* incur to rekey, replace, recode, program, or reprogram locks on exterior doors to the *dwelling* or other structures located on the *residence premises* when the keys or remote devices used with those doors are part of a covered theft loss. This coverage includes remote devices designed solely for locking, unlocking, opening, or closing doors, including garage doors and gates.

No deductible applies to this coverage.

13. **Fuel Oil Release.** *We* will pay up to $10,000 for each loss for accidental direct physical loss to covered property caused by the abrupt and accidental escape of liquid fuel oil from a fixed household tank, apparatus, or pipes that are part of a heating unit for the *dwelling*. This includes damage to covered property resulting from an accidental spill or overflow of fuel oil in the course of filling a fixed household tank.

This coverage includes surface clean up only. *We* will not pay for:

a. the cost to repair or replace the fuel oil tank, apparatus, and pipes; or

b. the cost of testing, monitoring, removing, treating, or detoxifying of soil, air, or water.

This coverage does not increase the limit applying to the damaged property.

14. **Tear Out.** If a *loss insured* to Coverage A property is caused by water, steam, or sewage escaping from a system or appliance, *we* will also pay the reasonable cost *you* incur to tear out and replace only that particular part of the *building structure* necessary to gain access to the specific point of that system or appliance from which the water, steam, or sewage escaped. *We* will not pay for the cost of repairing or replacing the system or appliance itself. This coverage does not increase the limit applying to Coverage A property.

15. **Home Certification.** If damage to covered property is caused by a *loss insured*, *we* will pay the reasonable increase in cost to repair or replace only the damaged property to maintain the *dwelling's* FORTIFIED HOME or FORTIFIED FOR SAFER LIVING certification in place at the time of the loss. This coverage does not increase the limit applying to the damaged property.

*We* will not pay:

a. any increase in cost until the repair or replacement of the property is complete; or

b. for increased costs resulting from enforcement of any ordinance or law regulating the construction or repair of the *dwelling* except as provided under **OPTIONAL POLICY PROVISIONS, Option OL – Building Ordinance or Law.**

This coverage does not apply if Loss Settlement provision A2 – Replacement Cost Loss Settlement – Common Construction is shown in the *Declarations*.

**INFLATION COVERAGE**

The limits of liability shown in the *Declarations* for Coverage A, Coverage B, and when applicable, Option ID will be increased at the same rate as the increase in the Inflation Coverage Index shown in the *Declarations*.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

To find the limits on a given date:

1. divide the Index on that date by the Index as of the effective date of this Inflation Coverage provision; then

2. multiply the resulting factor by the limits of liability for Coverage A, Coverage B, and Option ID separately.

The limits of liability will not be reduced to less than the amounts shown in the *Declarations*.

If during the term of this policy the Coverage A limit of liability is changed at *your* request, the effective date of this Inflation Coverage provision is changed to coincide with the effective date of such change.

## SECTION I – LOSSES INSURED

### COVERAGE A – DWELLING

*We* will pay for accidental direct physical loss to the property described in Coverage A, unless the loss is excluded or limited in **SECTION I – LOSSES NOT IN-SURED** or otherwise excluded or limited in this policy. However, loss does not include and *we* will not pay for, any *diminution in value*.

### COVERAGE B – PERSONAL PROPERTY

*We* will pay for accidental direct physical loss to the property described in Coverage B caused by the following perils, unless the loss is excluded or limited in **SECTION I – LOSSES NOT INSURED** or otherwise excluded or limited in this policy.  However, loss does not include and *we* will not pay for, any *diminution in value*.

1. **Fire or lightning.**

2. **Windstorm or hail.**  This peril does not include loss to property contained in a structure caused by rain, snow, sleet, sand, or dust.  This limitation does not apply when the direct force of wind or hail damages the structure causing an opening in a roof or wall and the rain, snow, sleet, sand, or dust enters through this opening.

   This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard motors, only while inside a *building structure*.

3. **Explosion.**

4. **Riot or civil commotion.**

5. **Aircraft,** including self-propelled missiles and spacecraft.

6. **Vehicles,** meaning accidental direct physical loss to covered property caused by the weight, force, power, or movement of a vehicle.

   a. This includes:

      (1) the impact of a vehicle;

      (2) an object propelled from the tire or body of a vehicle;

      (3) the upset or collision of a vehicle with a stationary object or other vehicle, including damage to personal property carried on the exterior of the vehicle; or

      (4) a vehicle door or trunk lid being closed on personal property.

   b. This peril does not include loss:

      (1) to personal property that falls off a vehicle and strikes the ground, any other surface, or any object;

      (2) caused by shifting of the load being carried in or on a vehicle; or

      (3) to the vehicle itself unless the vehicle is property covered under **COVERAGE B – PERSONAL PROPERTY** and the loss is caused by the weight, force, power, or movement of another vehicle.

7. **Smoke,** meaning abrupt and accidental damage from smoke.

   This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. **Vandalism or malicious mischief,** meaning only willful and malicious damage to or destruction of property.

9. **Theft,** including attempted theft and loss of property from a known location when it is probable that the property has been stolen.

   This peril does not include:

   a. loss of a precious or semi-precious stone from its setting;

   b. loss caused by theft:

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

(1) committed by an *insured* or by any other person regularly residing on the *insured location*. Property of a student who is an *insured* is covered while located at a residence away from the *residence premises*, if the theft is committed by a person who is not an *insured*;

(2) in or to a dwelling under construction or of materials and supplies for use in the construction until the dwelling is completed and occupied; or

(3) from the part of a *residence premises* rented to others:

    (a) caused by a tenant, members of the tenant's household, or the tenant's employees unless the *residence premises* is rented, either completely or in part, for exclusive use as a residence, for no more than 30 nights in the 12-month period prior to the date of the loss;

    (b) of money, bank notes, bullion, gold, goldware, silver, silverware, pewterware, platinum, coins, and medals;

    (c) of securities, checks, cashiers checks, travelers checks, money orders, gift certificates, gift cards, rechargeable debit cards, phone cards, and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, tickets, and stamps; or

    (d) of jewelry, watches, fur garments and garments trimmed with fur, and precious and semi-precious stones; or

c. loss caused by theft that occurs away from the *residence premises* of:

(1) property while at any other residence owned, rented to, or occupied by an *insured*, except while an *insured* is temporarily residing there. Property of a student who is an *insured* is covered while at a residence away from the *residence premises*;

(2) watercraft of all types, including their furnishings, equipment, and outboard motors; or

(3) trailers and campers designed to be pulled by or carried on a vehicle.

If the *residence premises* is a newly acquired principal residence, property in the immediate past principal residence will not be considered property away from the *residence premises* for the first 30 days after the inception of this policy.

10. **Falling objects.** This peril does not include loss to property contained in a structure unless the roof or an exterior wall of the structure is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow, or sleet** that causes damage to property contained in a structure.

12. **Abrupt and accidental discharge or overflow of** water, steam, or sewage from within a plumbing, heating, air conditioning, or automatic fire protective sprinkler system, or from within a household appliance.

This peril does not include loss:

a. to the system or appliance from which the water, steam, or sewage escaped;

b. caused by or resulting from:

    (1) freezing;

    (2) water or sewage from outside the *residence premises* plumbing system that enters through sewers or drains, or water that enters into and overflows from within a sump pump, sump pump well, or any other system designed to remove subsurface water that is drained from the foundation area; or

    (3) the pressure from or presence of tree, shrub, or plant roots; or

c. that occurs or develops over a period of time and is caused by or resulting from:

    (1) condensation or the presence of humidity, moisture, or vapor; or

    (2) seepage or leakage of water, steam, or sewage that is:

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

(a) continuous;

(b) repeating;

(c) gradual;

(d) intermittent;

(e) slow; or

(f) trickling.

13. **Abrupt and accidental tearing asunder, cracking, burning, or bulging** of a steam or hot water heating system, an air conditioning system, an automatic fire protective sprinkler system, or an appliance for heating water.

This peril does not include loss:

a. caused by or resulting from freezing; or

b. that occurs or develops over a period of time and is caused by or resulting from:

(1) condensation or the presence of humidity, moisture, or vapor; or

(2) seepage or leakage of water or steam that is:

(a) continuous;

(b) repeating;

(c) gradual;

(d) intermittent;

(e) slow; or

(f) trickling.

14. **Freezing** of a plumbing, heating, air conditioning, or automatic fire protective sprinkler system, or of a household appliance.

This peril does not include:

a. loss to a portable hot tub or portable spa unless **you** have used reasonable care to prevent freezing; or

b. loss on the **residence premises** unless **you** have used reasonable care to:

(1) maintain heat in the **building structure** at 55 degrees Fahrenheit or higher; or

(2) shut off the water supply and drain the system and appliances of water.

However, if the **building structure** is protected by an automatic fire protective sprinkler system, **you** must use reasonable care to continue the water supply and maintain heat in the **building structure** at 55 degrees Fahrenheit or higher for coverage to apply.

15. **Abrupt and accidental damage** to electrical appliances, devices, fixtures, and wiring from an increase or decrease of artificially generated electrical current. **We** will pay up to $3,000 under this peril for each damaged item described above.

16. **Breakage of glass**, meaning damage to personal property caused by breakage of glass that is a part of a structure on the **residence premises**. **We** will not pay for loss or damage to the glass.

17. **Wild bears or deer**, meaning damage caused by wild bears or deer to property located in a **building structure**.

## SECTION I – LOSSES NOT INSURED

1. **We** will not pay for any loss to the property described in Coverage A that consists of, or is directly and immediately caused by, one or more of the perils listed in Items a. through m. below, regardless of whether the loss occurs abruptly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

a. collapse, except as specifically provided in **SECTION I – ADDITIONAL COVERAGES, Collapse;**

b. freezing of a plumbing, heating, air conditioning, or automatic fire protective sprinkler system or

of a household appliance; or discharge, leakage, or overflow from within the system or appliance caused by freezing. This does not apply if **you** have used reasonable care to:

(1) maintain heat in the **building structure** at 55 degrees Fahrenheit or higher; or

(2) shut off the water supply and drain the system and appliances of water.

However, if the **building structure** is protected by an automatic fire protective sprinkler system, **you** must use reasonable care to continue the water supply and maintain heat in the

14

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

*building structure* at 55 degrees Fahrenheit or higher for coverage to apply;

c. freezing, thawing, pressure, or weight of water, ice, snow, or sleet, whether driven by wind or not, to:

   (1) a swimming pool, hot tub, or spa, including their covers, filtration, and circulation systems; or

   (2) an awning, fence, pavement, patio, foundation (including slabs, basement walls, crawl space walls, and footings), retaining wall, bulkhead, pier, wharf, or dock;

d. theft in or to a dwelling under construction, or of materials and supplies for use in the construction, until the dwelling is completed and occupied;

e. theft, vandalism, malicious mischief, or breakage of glass and safety glazing materials if the dwelling is a *vacant dwelling*;

f. seepage or leakage of water, steam, or sewage that occurs or develops over a period of time:

   (1) and is:

      (a) continuous;

      (b) repeating;

      (c) gradual;

      (d) intermittent;

      (e) slow; or

      (f) trickling; and

   (2) from a:

      (a) heating, air conditioning, or automatic fire protective sprinkler system;

      (b) household appliance; or

      (c) plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings, or floors.

*We* also will not pay for losses arising from condensation or the presence of humidity, moisture, or vapor that occurs or develops over a period of time.

Item f. does not apply if the seepage or leakage of water, steam, or sewage is hidden from view within the walls, ceilings, or floors, and unknown by the *insured*;

g. wear, tear, decay, marring, scratching, deterioration, inherent vice, latent defect, or mechanical breakdown;

h. corrosion, electrolysis, or rust;

i. wet or dry rot;

j. contamination or pollution, meaning the presence, discharge, dispersal, seepage, migration, release, or escape of contaminants or pollutants at or from any source. This does not apply if the presence, discharge, dispersal, seepage, migration, release, or escape is itself caused by a peril described in SECTION I – LOSSES INSURED, COVERAGE B – PERSONAL PROPERTY.

   (1) Contaminants and pollutants include but are not limited to any:

      (a) solid, liquid, gaseous, or thermal irritant, including smoke from agricultural smudging or industrial operations, smog, soot, vapor, fumes, acids, alkalis, chemicals, pathogens, noxious substances, asbestos, or lead;

      (b) contaminants or pollutants resulting from any natural resource extraction activities; or

      (c) fuel oil except as specifically provided in SECTION I – ADDITIONAL COVERAGES, Fuel Oil Release.

   (2) *We* also will not pay for:

      (a) losses arising from contamination or pollution caused by or resulting from defective building materials, nuclear substances, and waste. Waste includes materials to be recycled, reconditioned, or reclaimed;

      (b) the cost to extract contaminants or pollutants from land, water, or air, or the cost to remove, restore, or replace contaminated or polluted land, water, or air; or

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

(c) the cost of testing, monitoring, cleaning, removing, containing, treating, detoxifying, neutralizing, remediating, disposing of, or assessing the effects of contaminants or pollutants;

k. settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations (including slabs, basement walls, crawl space walls, and footings), walls, floors, roofs, or ceilings;

l. all animals, birds, or insects.

  (1) This includes:

    (a) nesting, infestation, gnawing, feeding, breeding, or discharge or release of waste products or secretions by animals, birds, or insects;

    (b) costs to remove animals, birds, or insects from the covered property; and

    (c) costs to prevent the animals, birds, or insects from returning to the property;

  (2) However, *we* will pay for:

    (a) losses caused by wild bears or deer; and

    (b) the breakage of glass or safety glazing material that is a part of a *building structure*, when caused by animals, birds, or insects; or

m. pressure from or presence of tree, shrub, or plant roots.

However, *we* will pay for any resulting loss from items a. through l. unless the resulting loss is itself a Loss Not Insured as described in this Section.

2. *We* will not pay for, under any part of this policy, any loss that would not have occurred in the absence of one or more of the following excluded events. *We* will not pay for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs abruptly or gradually, involves isolated or widespread damage, occurs on or off the *residence premises*, arises from any natural or external forces, or occurs as a result of any combination of these:

a. **Ordinance or Law,** meaning enforcement of any ordinance or law regulating the construction, repair, or demolition of a *building structure* or other structure.

b. **Earth Movement,** meaning the sinking, rising, shifting, expanding, or contracting of earth, all regardless of whether combined with water, sewage, or any material carried by, or otherwise moved by the earth. Earth movement includes but is not limited to:

  (1) earthquake;

  (2) landslide, mudslide, or mudflow;

  (3) sinkhole or subsidence;

  (4) movement resulting from:

    (a) improper compaction;

    (b) site selection;

    (c) natural resource extraction activities; or

    (d) excavation;

  (5) erosion;

  (6) pressure by surface or subsurface earth or fill; or

  (7) any volcanic activity, except as specifically provided in **SECTION I – ADDITIONAL COVERAGES, Volcanic Action.**

However, *we* will pay for any accidental direct physical loss by fire, explosion other than explosion of a volcano, or theft resulting from earth movement, provided the resulting loss is itself a *loss insured*.

c. **Water,** meaning:

  (1) flood;

  (2) surface water. This does not include water solely caused by the release of water from a swimming pool, spigot, sprinkler system, hose, or hydrant;

  (3) waves (including tidal wave, tsunami, and seiche);

  (4) tides or tidal water;

  (5) overflow of any body of water (including any release, escape, or rising of any body

16

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

of water, or any water held, contained, controlled, or diverted by a dam, levee, dike, or any type of water containment, diversion, or flood control device);

(6) spray or surge from any of the items c.(1) through c.(5) described above, all whether driven by wind or not;

(7) water or sewage from outside the *residence premises* plumbing system that enters through sewers or drains, or water or sewage that enters into and overflows from within a sump pump, sump pump well, or any other system designed to remove subsurface water that is drained from the foundation area;

(8) water or sewage below the surface of the ground, including water or sewage that exerts pressure on, or seeps or leaks through a *building structure*, sidewalk, driveway, swimming pool, or other structure; or

(9) material carried or otherwise moved by any of the water or sewage, as described in items c.(1) through c.(8) above.

However, *we* will pay for any accidental direct physical loss by fire, explosion, or theft resulting from water, provided the resulting loss is itself a *loss insured*.

d.  **Neglect,** meaning neglect of the *insured* to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered.

e.  **War,** including any undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these.  Discharge of a nuclear weapon will be considered a warlike act even if accidental.

f.  **Nuclear Hazard,** meaning any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke.

However, *we* will pay for any accidental direct physical loss by fire resulting from the nuclear hazard, provided the resulting fire loss is itself a *loss insured*.

g.  *Fungus,* including:

(1) any loss of use or delay in rebuilding, repairing, or replacing covered property, including any associated cost or expense, due to interference at the *residence premises* or location of the rebuilding, repair, or replacement of that property, by *fungus;*

(2) any remediation of *fungus,* including the cost or expense to:

(a) remove the *fungus* from covered property or to repair, restore, or replace that property;

(b) tear out and replace any part of the *building structure* or other property as needed to gain access to the *fungus;* or

(c) contain, treat, detoxify, neutralize or dispose of or in any way respond to or assess the effects of the *fungus;* or

(3) the cost of any testing or monitoring of air or property to confirm the type, absence, presence, or level of *fungus,* whether performed prior to, during, or after removal, repair, restoration, or replacement of covered property.

However, item g. does not apply if *fungus* results from an accidental direct physical loss caused by fire or lightning.

h.  **Intentional Losses.**  If any *insured* intentionally causes or procures a loss to property covered under this policy, *we* will not pay any *insured* for this loss.  This applies regardless of whether the *insured* is charged with or convicted of a crime.

17

HW-2111

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

This does not apply to:

(1) an *insured* who did not participate in, co-operate in, or contribute to causing or pro-curing the loss; or

(2) a claim of an innocent *insured*, to the extent of the innocent *insured's* interest in the covered property, if the loss:

    (a) arises out of family violence against an innocent *insured*; and

    (b) is caused by an intentional act of an *insured* against whom a family violence complaint is brought.

3. *We* will not pay for, under any part of this policy, any loss consisting of one or more of the items below. Further, *we* will not pay for any loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to, or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

    a. conduct, act, failure to act, or decision of any person, group, organization, or governmental body whether intentional, wrongful, negligent, or without fault;

    b. defect, weakness, inadequacy, fault, or un-soundness in:

        (1) planning, zoning, development, surveying, or siting;

        (2) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, or compaction;

        (3) materials used in repair, construction, renovation, remodeling, grading, or compaction; or

        (4) maintenance;

    of any property (including land, structures, or improvements of any kind) whether on or off the *residence premises*; or

    c. weather conditions.

However, *we* will pay for any resulting loss from items 3.a., 3.b., and 3.c. unless the resulting loss is itself a Loss Not Insured as described in this Section.

## SECTION I – LOSS SETTLEMENT

Only the **Loss Settlement Provisions** shown in the *Declarations* apply. *We* will settle covered property losses according to the following. However, the valuation of any covered property losses does not include, and *we* will not pay, any amount for *diminution in value*.

### COVERAGE A – DWELLING

1. **A1 – Replacement Cost Loss Settlement – Similar Construction.**

    a. *We* will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the *Declarations*, the damaged part of the property covered under **SECTION I – PROPERTY COVERAGES, COVERAGE A – DWELLING**, except for wood fences, subject to the following:

        (1) until actual repair or replacement is completed, *we* will pay only the *actual cash value* of the damaged part of the property, up to the applicable limit of liability shown in the *Declarations*, not to exceed the cost to repair or replace the damaged part of the property;

        (2) when the repair or replacement is actually completed, *we* will pay the covered additional amount *you* actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the *Declarations*, whichever is less;

        (3) to receive any additional payments on a replacement cost basis, *you* must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify *us* within 30 days after the work has been completed; and

        (4) *we* will not pay for increased costs resulting from enforcement of any ordinance or

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017
HW-2111

law regulating the construction, repair, or demolition of a *building structure* or other structure, except as provided under OP-TIONAL POLICY PROVISIONS, Option OL – Building Ordinance or Law.

b. Wood Fences: *We* will pay the *actual cash value* for loss or damage to wood fences, not to exceed the limit of liability shown in the *Declarations* for COVERAGE A – Other Structures.

2. **A2 – Replacement Cost Loss Settlement – Common Construction.**

a. *We* will pay the cost to repair or replace with common construction and for the same use on the premises shown in the *Declarations*, the damaged part of the property covered under SECTION I – PROPERTY COVERAGES, COVERAGE A – DWELLING, except for wood fences, subject to the following:

(1) *we* will pay only for repair or replacement of the damaged part of the property with common construction techniques and materials commonly used by the building trades in standard new construction. *We* will not pay the cost to repair or replace obsolete, antique, or custom construction with like kind and quality;

(2) until actual repair or replacement is completed, *we* will pay only the *actual cash value* of the damaged part of the property, up to the applicable limit of liability shown in the *Declarations*, not to exceed the cost to repair or replace the damaged part of the property as described in a.(1) above;

(3) when the repair or replacement is actually completed as described in a.(1) above, *we* will pay the covered additional amount *you* actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the *Declarations*, whichever is less;

(4) to receive any additional payments on a replacement cost basis, *you* must complete the actual repair or replacement of the damaged part of the property within

two years after the date of loss, and notify *us* within 30 days after the work has been completed; and

(5) *we* will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair, or demolition of a *building structure* or other structure, except as provided under OP-TIONAL POLICY PROVISIONS, Option OL – Building Ordinance or Law.

b. Wood Fences: *We* will pay the *actual cash value* for loss or damage to wood fences, not to exceed the limit of liability shown in the *Declarations* for COVERAGE A – Other Structures.

## COVERAGE B – PERSONAL PROPERTY

1. **B1 – Limited Replacement Cost Loss Settlement.**

a. *We* will pay the cost to repair or replace property covered under SECTION I – PROPERTY COVERAGES, COVERAGE B – PERSONAL PROPERTY, except for property listed in item b. below, subject to the following:

(1) until repair or replacement is completed, *we* will pay only the *actual cash value* of the damaged property;

(2) after repair or replacement is completed, *we* will pay the difference between the *actual cash value* and the cost *you* have actually and necessarily spent to repair or replace the property; and

(3) if property is not repaired or replaced within two years after the date of loss, *we* will pay only the *actual cash value*.

b. *We* will pay market value at the time of loss for:

(1) antiques, fine arts, paintings, statuary, and similar articles which by their inherent nature cannot be replaced with new articles;

(2) articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs, and collectors items; and

(3) property not useful for its intended purpose.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

However, *we* will not pay an amount exceeding the smallest of the following for items a. and b. above:

(1) *our* cost to replace at the time of loss;

(2) the full cost of repair;

(3) any special limit of liability described in this policy; or

(4) any applicable Coverage B limit of liability.

2. **B2 – Depreciated Loss Settlement.**

a. *We* will pay the *actual cash value* for property covered under **SECTION I – PROPERTY COVERAGES, COVERAGE B – PERSONAL PROPERTY**, except for property listed in item b. below.

b. *We* will pay market value at the time of loss for:

(1) antiques, fine arts, paintings, statuary, and similar articles which by their inherent nature cannot be replaced with new articles;

(2) articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs, and collectors items; and

(3) property not useful for its intended purpose.

However, *we* will not pay an amount exceeding the smallest of the following for items a. and b. above:

(1) *our* cost to replace at the time of loss;

(2) the full cost of repair;

(3) any special limit of liability described in this policy; or

(4) any applicable Coverage B limit of liability.

## SECTION I – CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, *we* will not be liable:

a. to the *insured* for an amount greater than the *insured's* interest; or

b. for more than the applicable limit of liability.

2. **Your Duties After Loss.** After a loss to which this insurance may apply, *you* must cooperate with *us* in the investigation of the claim and also see that the following duties are performed:

a. give immediate notice to *us* or *our* agent and also notify:

(1) the police if the loss is caused by theft, vandalism, or any other criminal act; and

(2) the credit card company or bank if the loss involves a credit card or bank fund transfer card;

b. protect the property from further damage or loss and also:

(1) make reasonable and necessary temporary repairs required to protect the property; and

(2) keep an accurate record of repair expenses;

c. prepare an inventory of damaged or stolen personal property:

(1) showing in detail the quantity, description, age, replacement cost, and amount of loss; and

(2) attaching all bills, receipts, and related documents that substantiate the figures in the inventory;

d. as often as *we* reasonably require:

(1) exhibit the damaged property;

(2) provide *us* with any requested records and documents and allow *us* to make copies;

(3) while not in the presence of any other *insured*:

(a) give statements; and

(b) submit to examinations under oath; and

(4) produce employees, members of the *insured's* household, or others for examination under oath to the extent it is within the *insured's* power to do so; and

e. submit to *us*, within 60 days after the loss, *your* signed, sworn proof of loss that sets forth, to the best of *your* knowledge and belief:

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

(1) the time and cause of loss;

(2) interest of the **insured** and all others in the property involved and all encumbrances on the property;

(3) other insurance that may cover the loss;

(4) changes in title or occupancy of the property during the term of this policy;

(5) specifications of any damaged structure and detailed estimates for repair of the damage;

(6) an inventory of damaged or stolen personal property described in 2.c.;

(7) receipts for additional living expenses incurred and records supporting the fair rental value loss; and

(8) evidence or affidavit supporting a claim under **SECTION I – ADDITIONAL COVERAGES, Credit Card, Bank Fund Transfer Card, Forgery, and Counterfeit Money coverage**, stating the amount and cause of loss.

3. **Loss to a Pair or Set.** In case of loss to a pair or set, **we** may choose to:

a. repair or replace any part to restore the pair or set to its value before the loss; or

b. pay the difference between the depreciated value of the property before the loss and the depreciated value of the property after the loss.

4. **Appraisal.** If **you** and **we** fail to agree on the amount of loss, either party can demand that the amount of the loss be set by appraisal. Only **you** or **we** may demand appraisal. A demand for appraisal must be in writing. **You** must comply with **SECTION I – CONDITIONS, Your Duties After Loss** before making a demand for appraisal. At least 10 days before demanding appraisal, the party seeking appraisal must provide the other party with written, itemized documentation of a specific dispute as to the amount of the loss, identifying separately each item being disputed.

a. Each party will select a competent, disinterested appraiser and notify the other party of

the appraiser's identity within 20 days of receipt of the written demand for appraisal.

b. The appraisers will then attempt to set the amount of the loss of each item in dispute as specified by each party, and jointly submit to each party a written report of agreement signed by them. In all instances the written report of agreement will be itemized and state separately the **actual cash value**, replacement cost, and if applicable, the market value of each item in dispute.

The written report of agreement will set the amount of the loss of each item in dispute.

c. If the two appraisers fail to agree upon the amount of the loss within 30 days, unless the period of time is extended by mutual agreement, they will select a competent, disinterested umpire and will submit their differences to the umpire. If the appraisers are unable to agree upon an umpire within 15 days:

(1) **you** or **we** may make a written application for a judge of a court of record in the same state and county (or city if the city is not within a county) where the **residence premises** is located to select an umpire;

(2) the party requesting the selection described in item c.(1) must provide the other party:

(a) written notice of the intent to file, identifying the specific location and identity of the court at least 10 days prior to submission of the written application; and

(b) a copy of the written application; and

(3) a written report of agreement, as required in item b., signed by any two (appraisers or appraiser and umpire) will set the amount of the loss of each item in dispute. In all instances the written report of agreement will be itemized and state separately the **actual cash value**, replacement cost, and if applicable, the market value of each item in dispute.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

d. To qualify as an appraiser or umpire for a loss to property described in **COVERAGE A – DWELLING**, a person must be one of the following and be licensed or certified as required by the applicable jurisdiction:

   (1) an engineer or architect with experience and training in building construction, repair, estimating, or investigation of the type of property damage in dispute;

   (2) an adjuster or public adjuster with experience and training in estimating the type of property damage in dispute; or

   (3) a contractor with experience and training in the construction, repair, and estimating of the type of property damage in dispute.

e. A person may not serve as an appraiser or umpire if that person, any employee of that person, that person's employer, or any employee of their employer:

   (1) has performed services for either party with respect to the claim at issue in the appraisal; or

   (2) has a financial interest in the outcome of the claim at issue in the appraisal.

f. Each party will be responsible for the compensation of their selected appraiser. Reasonable expenses of the appraisal and the reasonable compensation of the umpire will be paid equally by *you* and *us*.

g. *You* and *we* do not waive any rights by demanding or submitting to an appraisal, and retain all contractual rights to determine if coverage applies to each item in dispute.

h. Appraisal is only available to determine the amount of the loss of each item in dispute. The appraisers and the umpire have no authority to decide:

   (1) any other questions of fact;

   (2) questions of law;

   (3) questions of coverage;

   (4) other contractual issues; or

   (5) to conduct appraisal on a class-wide basis.

i. Appraisal is a non-judicial proceeding and does not provide for or require arbitration. Neither party will be awarded attorney fees. The appraisal award may not be entered as a judgment in a court.

j. A party may not demand appraisal after that party brings suit or action against the other party relating to the amount of loss.

5. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, *we* will pay only *our* share of the loss. *Our* share is the proportion of the loss that the applicable limit under this policy bears to the total amount of insurance covering the loss.

6. **Suit Against Us.** No action will be brought against *us* unless there has been full compliance with all of the policy provisions. Any action by any party must be started within one year after the date of loss or damage.

   However, if the action results from a loss caused by fire or lightning, the action must be started within two years after the date of loss or damage.

7. **Our Option.** *We* may repair or replace any part of the property damaged or stolen with similar property. Any property *we* pay for or replace becomes *our* property.

8. **Loss Payment.** *We* will adjust all losses with *you*. *We* will pay *you* unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after *we* receive *your* proof of loss and:

   a. reach agreement with *you*;

   b. there is an entry of a final judgment; or

   c. there is a filing of an appraisal award with *us*.

9. **Abandonment of Property.** *We* need not accept any property abandoned by an *insured*.

10. **Mortgagee Clause.** The word "mortgagee" includes trustee.

   a. If a mortgagee is named in this policy, any loss payable under Coverage A will be paid to the mortgagee and *you*, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

b. If *we* deny *your* claim that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

(1) notifies *us* of any change in ownership, occupancy, or substantial change in risk of which the mortgagee is aware;

(2) pays on demand any premium due under this policy, if *you* have not paid the premium; and

(3) submits a signed, sworn statement of loss within 60 days after receiving notice from *us* of *your* failure to do so. Policy conditions relating to **Appraisal**, **Suit Against Us**, and **Loss Payment** apply to the mortgagee.

c. If *we* cancel this policy, the mortgagee will be notified at least 10 days before the date cancellation takes effect. Proof of mailing will be proof of notice.

d. If *we* pay the mortgagee for any loss and deny payment to *you*:

(1) *we* are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

(2) at *our* option, *we* may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, *we* will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

e. Subrogation does not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

11. **No Benefit to Bailee.** *We* will not recognize an assignment or grant coverage for the benefit of a person or organization holding, storing, or transporting property for a fee. This applies regardless of any other provision of this policy.

12. **Recovered Property.** If either *you* or we recover any property after loss settlement, that party must give the other prompt notice. At *your* option, *you* may keep the property or *we* will return it to *you*. Otherwise, it will become *our* property. If *you* choose to keep the property, the loss payment will be adjusted based on the amount *you* received for the recovered property.

13. **Assignment of Claim.** Assignment to another party of any of *your* rights or duties under this policy regarding any claim, or any part of any claim, will be void and *we* will not recognize any such assignment, unless *we* give *our* written consent. However, once *you* have complied with all policy provisions, *you* may assign to another party, in writing, payment of claim proceeds otherwise payable to *you*.

## SECTION II – LIABILITY COVERAGES

### COVERAGE L – PERSONAL LIABILITY

If a claim is made or a suit is brought against an *insured* for damages because of *bodily injury* or *property damage* to which this coverage applies, caused by an *occurrence*, *we* will:

1. pay up to *our* limit of liability for the damages for which the *insured* is legally liable. *We* will not pay for criminal restitution; and

2. provide a defense at *our* expense by counsel of *our* choice. *We* may make any investigation and settle any claim or suit that *we* decide is appropriate. *Our* obligation to defend any suit ends when the amount *we* pay for damages, to effect settlement or satisfy a judgment resulting from the *occurrence*, equals *our* limit of liability. *We* will not provide a defense to any *insured* for criminal prosecution or proceedings.

### COVERAGE M – MEDICAL PAYMENTS TO OTHERS

*We* will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing *bodily injury*. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, rehabilitation, pharmaceuticals, orthopedic devices, prosthetic devices, and funeral services. This coverage applies only:

1. to a person on the *insured location* with the permission of an *insured*;

2. to a person off the *insured location*, if the *bodily injury*:

a. arises out of a condition on the *insured location* or the ways immediately adjoining;

23

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

b. is caused by the activities of an *insured*;

c. is caused by a *residence employee* in the course of the *residence employee's* employment by an *insured*; or

d. is caused by an animal owned by or in the care of an *insured*; or

3. to a *residence employee* if the *occurrence* causing *bodily injury* occurs off the *insured location* and arises out of or in the course of the *residence employee's* employment by an *insured*.

## SECTION II – ADDITIONAL COVERAGES

The following Additional Coverages are subject to all the terms, provisions, exclusions, and conditions of this policy. *We* will pay for the following in addition to the limits of liability:

1. **Claim Expenses.** *We* will pay:

   a. expenses *we* incur and costs taxed against an *insured* in suits *we* defend. Taxed costs do not include attorney fees;

   b. premiums on bonds required in suits *we* defend, but not for bond amounts greater than the Coverage L limit. *We* are not obligated to apply for or furnish any bond;

   c. reasonable expenses an *insured* incurs at *our* request. This includes actual loss of earnings (but not loss of other income) up to $250 per day for aiding *us* in the investigation or defense of claims or suits;

   d. interest the *insured* is legally liable to pay on damages payable under Coverage L above before a judgment, but only the interest on the lesser of:

      (1) that part of the damages *we* pay; or

      (2) the Coverage L limit; and

   e. interest on the entire judgment that accrues after entry of the judgment and before *we* pay or tender, or deposit in court that part of the judgment that does not exceed the limit of liability that applies.

2. **First Aid Expenses.** *We* will pay expenses for first aid to others incurred by an *insured* for *bodily injury*

covered under this policy. *We* will not pay for first aid to *you* or any other *insured*.

3. **Damage to Property of Others.**

   a. *We* will pay for *property damage* to property of others caused by the activities of an *insured*.

   b. *We* will not pay more than the smallest of the following amounts:

      (1) replacement cost at the time of loss;

      (2) full cost of repair; or

      (3) the limit of liability shown in the *Declarations* for Damage to Property of Others for any one *occurrence*.

   c. *We* will not pay for *property damage*:

      (1) for a loss that is recoverable under Section I of this policy. *We* also will not pay for any applicable deductible regardless of whether the amount of the loss exceeds the deductible;

      (2) caused intentionally by an *insured* 13 years of age or older;

      (3) to property, other than a rented golf cart, owned by, or rented to an *insured*, a tenant of an *insured*, or a resident in *your* household;

      (4) arising out of:

         (a) *business* pursuits;

         (b) any act or omission in connection with a premises an *insured* owns, rents, or controls, other than the *insured location*;

         (c) a condition on the *insured location* or the ways immediately adjoining; or

         (d) the ownership, maintenance, or use of a *motor vehicle*, aircraft, or watercraft, including airboat, air cushion, personal watercraft, sail board, or similar type watercraft; or

      (5) if a payment is made under **COVERAGE L – PERSONAL LIABILITY** for the same *property damage*.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

# SECTION II – EXCLUSIONS

1. Coverage L and Coverage M do not apply to:

   a. *bodily injury* or *property damage* that:

      (1) was a result of a:

         (a) willful and malicious; or

         (b) criminal;

         act or omission of the *insured*;

      (2) was intended by the *insured*; or

      (3) would have been expected by the *insured* based on a reasonable person standard.

      However, exclusions a.(2) and a.(3) above do not apply to *bodily injury* or *property damage* resulting from the use of reasonable force to protect persons or property.

      Exclusions a.(1), a.(2), and a.(3) above apply to all *bodily injury* or *property damage* even if the:

      (1) *bodily injury* or *property damage* was sustained by a different person, entity, or property than was expected or intended;

      (2) *bodily injury* or *property damage* was of a different kind, quality, or degree than was expected or intended;

      (3) *insured* lacked the mental capacity to control his or her conduct;

      (4) *insured* was not charged with or convicted of a criminal act or omission; or

      (5) *insured* was impaired by drugs or alcohol;

   b. *bodily injury* or *property damage* arising out of *business* pursuits of any *insured*, except as provided in item c. below. This exclusion does not apply to activities that are ordinarily incident to non-*business* pursuits;

   c. *bodily injury* or *property damage* arising out of the rental of any part of any premises by any *insured*. This exclusion does not apply:

      (1) to the rental of the *residence premises*:

         (a) either completely or in part, for exclusive use as a residence, for up to 30 nights in the 12-month period prior to the date of the loss;

         (b) in part, for use as a permanent residence, by either one or two full-time roomers or boarders; or

         (c) in part, as an office, school, studio, or private garage;

      (2) when the *dwelling* on the *residence premises* is a two, three, or four family *dwelling* and *you* occupy one part and rent the other part to others;

      (3) to farm land (without buildings), rented to others, but not to exceed a total of 500 acres, regardless of the number of locations; or

      (4) to activities that are ordinarily incident to non-*business* pursuits;

   d. *bodily injury* or *property damage* arising out of the rendering or failing to render professional services;

   e. *bodily injury* or *property damage* arising out of any premises currently owned or rented to any *insured* which is not an *insured location*. This exclusion does not apply to *bodily injury* to a *residence employee* arising out of and in the course of the *residence employee's* employment by an *insured*;

   f. *bodily injury* or *property damage* arising out of the ownership, maintenance, use, loading, or unloading of:

      (1) an aircraft. This exclusion does not apply to the ownership, maintenance, use, loading, or unloading of unmanned aircraft systems used as model aircraft:

         (a) solely for recreational or hobby purposes;

         (b) designed to be operated within the visual line of sight of the operator and operated within the visual line of sight of the operator; and

25

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

(c) weighing not more than 55 pounds at the time of operation;

unless the ownership, maintenance, use, loading, or unloading of such aircraft results in:

(a) *property damage* to any aircraft; or

(b) *bodily injury* or *property damage* resulting from interference with an aircraft carrying people regardless of whether the *bodily injury* or *property damage* is sustained by people or property on the aircraft or not;

(2) a *motor vehicle* owned or operated by or rented or loaned to any *insured*; or

(3) a watercraft:

(a) owned by or rented to any *insured* if it has inboard or inboard-outdrive motor power of more than 50 horsepower;

(b) owned by or rented to any *insured* if it is a sailing vessel, with or without auxiliary power, 26 feet or more in overall length;

(c) powered by one or more outboard motors with more than 25 total horsepower owned by any *insured*;

(d) designated as an airboat, air cushion, or similar type of craft; or

(e) owned by any *insured* if it is a personal watercraft using a water jet pump powered by an internal combustion engine as the primary source of propulsion.

This exclusion does not apply to *bodily injury* to a *residence employee* arising out of and in the course of the *residence employee's* employment by an *insured*. Exclusion f.(3) does not apply while the watercraft is on the *residence premises*;

g. *bodily injury* or *property damage* arising out of:

(1) the entrustment by any *insured* to any person;

(2) the supervision by any *insured* of any person;

(3) any liability statutorily imposed on any *insured*; or

(4) any liability assumed through an unwritten or written agreement by any *insured*;

with regard to the ownership, maintenance, or use of any aircraft, watercraft, or *motor vehicle* not covered under Section II of this policy;

h. *bodily injury* or *property damage* caused directly or indirectly by war, including undeclared war, or any warlike act including destruction, seizure, or use for a military purpose, or any consequence of these. Discharge of a nuclear weapon will be considered a warlike act even if accidental;

i. *bodily injury* to any *insured* within the meaning of part 9.a., 9.b., or 9.c. of the definition of *insured*.

This exclusion also applies to any claim made or suit brought against any *insured* within the meaning of part 9.a., 9.b., or 9.c. of the definition of *insured* to share damages with or repay someone else who may be obligated to pay damages because of the *bodily injury* sustained by any *insured* within the meaning of part 9.a., 9.b., or 9.c. of the definition of *insured*;

j. any claim made or suit brought against any *insured* by:

(1) any person in the care of any *insured* because of child care services provided by or at the direction of:

(a) any *insured*;

(b) any employee of any *insured*; or

(c) any other person actually or apparently acting on behalf of any *insured*; or

(2) any person who makes a claim because of *bodily injury* to any person in the care of any *insured* because of child care services provided by or at the direction of:

(a) any *insured*;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

(b) any employee of any *insured*; or

(c) any other person actually or apparently acting on behalf of any *insured*.

This exclusion does not apply to the occasional child care services provided by any *insured*, or to the part-time child care services provided by any *insured* under 19 years of age;

k. *bodily injury* or *property damage* arising out of an *insured's* participation in, or preparation or practice for, any prearranged or organized race, speed or demolition contest, or similar competition involving a motorized land vehicle or motorized watercraft. This exclusion does not apply to a sailing vessel less than 26 feet in overall length with or without auxiliary power;

l. *bodily injury* or *property damage* arising out of the use, sale, manufacture, distribution, delivery, transfer, or possession, by any *insured*, of any substance that is illegal or is a controlled substance under either federal or state law.

This exclusion does not apply to:

(1) the legitimate use of legally prescribed drugs, under either federal or state law, by a person following orders of a licensed health care professional; or

(2) an *insured* who did not knowingly participate or cooperate in the acts described in paragraph l. above;

m. *bodily injury* or *property damage* arising out of any actual, alleged, or threatened:

(1) sexual harassment, sexual molestation, or sexual misconduct;

(2) physical or mental abuse; or

(3) corporal punishment;

by the *insured*;

n. *bodily injury* or *property damage* arising out of the actual, alleged, or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any *fungus* at or from any source or location.

*We* also do not cover any loss, cost, or expense arising out of any:

(1) request, demand, order, or statutory or regulatory requirement that any *insured* or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, remediate, dispose of, or in any way respond to or assess the effects of *fungus*; or

(2) claim or suit for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, disposing of, or in any way responding to or assessing the effects of *fungus*; or

o. *bodily injury* or *property damage* arising out of the ownership, maintenance, or use of systems and equipment used to generate electrical power exceeding 125 percent of the actual electrical power usage by the *residence premises* in the 12-month period prior to the date of the loss.

2. Coverage L does not apply to:

a. liability:

(1) for *your* share of any loss assessment charged against all members of any type of association of property owners; or

(2) imposed on or assumed by any *insured* through any unwritten or written contract or agreement. This exclusion does not apply to liability for damages that the *insured* would have in absence of the contract or agreement;

b. *property damage* to property owned by any *insured* at the time of the *occurrence*;

c. *property damage* to property rented to, used or occupied by, or in the care, custody, or control of any *insured* at the time of the *occurrence*. This exclusion does not apply to *property damage* caused by fire, smoke, explosion, or abrupt and accidental damage from water;

d. *bodily injury* to a person eligible to receive any benefits required to be provided or voluntarily provided by an *insured* under a workers'

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

compensation, non-occupational disability, or occupational disease law;

e. *bodily injury* or *property damage* for which an *insured* under this policy is also an insured under a nuclear energy liability policy or would be an insured but for its termination upon exhaustion of its limit of liability. A nuclear energy liability policy is a policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors;

f. *bodily injury* or *property damage* arising out of any real property any *insured* has sold or transferred. This includes but is not limited to *bodily injury* or *property damage* arising out of known, unknown, hidden, or alleged property conditions, problems, or defects.

This exclusion also applies to any *property damage* to the sold or transferred real property itself.

However, this exclusion does not apply to:

(1) *bodily injury* arising out of fire, smoke, explosion, electrocution, or carbon monoxide poisoning; or

(2) *property damage* arising out of fire, smoke, or explosion.

3. Coverage M does not apply to *bodily injury*:

a. to a *residence employee* if it occurs off the *insured location* and does not arise out of or in the course of the *residence employee's* employment by an *insured*;

b. to a person eligible to receive any benefits required to be provided or voluntarily provided under any workers' compensation, non-occupational disability, or occupational disease law;

c. to a person other than a *residence employee* of an *insured*, regularly residing on any part of the *insured location*; or

d. from nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

## SECTION II – CONDITIONS

1. **Limit of Liability.** The Coverage L limit is shown in the *Declarations*. This is the limit for all damages from each *occurrence* for the policy period in which the *bodily injury* or *property damage* first occurs, regardless of the number of *insureds*, claims made, or persons injured. No additional limits or coverage will be available for the *occurrence* under any additional policy periods while this policy remains in force.

The Coverage M limit is shown in the *Declarations*. This is *our* limit for all medical expenses for *bodily injury* to one person as the result of one accident.

2. **Severability of Insurance.** This insurance applies separately to each *insured*. This condition does not increase *our* limit of liability for any one *occurrence*.

3. **Duties After Loss.** In case of an accident or *occurrence*, the *insured* must cooperate with *us* in the investigation, settlement, or defense of any claim or suit and also perform the following duties

that apply. *You* must cooperate with *us* in seeing that these duties are performed:

a. give written notice to *us* or *our* agent as soon as possible, which sets forth:

(1) the identity of this policy and the *insured*;

(2) reasonably available information on the time, place, and circumstances of the accident or *occurrence*; and

(3) names and addresses of any claimants and available witnesses;

b. immediately forward to *us* every notice, demand, summons, or other process relating to the accident or *occurrence*;

c. at *our* request, assist in:

(1) making settlement;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017
HW-2111

(2) the enforcement of any right of contribution or indemnity against a person or organization who may be liable to an *insured*;

(3) the conduct of suits and attend hearings and trials; and

(4) securing and giving evidence and obtaining the attendance of witnesses;

d. under **SECTION II – ADDITIONAL COVERAGES, Damage to Property of Others,** exhibit the damaged property if within the *insured's* control; and

e. the *insured* must not, except at the *insured's* own cost, voluntarily make payments, assume obligations, or incur expenses. This does not apply to expense for first aid to others at the time of the *bodily injury.*

4. **Coverage M Requirements.** *We* may require the following in regard to any Coverage M claim:

a. written proof of claim, under oath if required, as soon as possible from the injured person, or when appropriate, someone acting on behalf of that person;

b. the injured person's submission to physical examinations by a physician selected by *us* when and as often as *we* reasonably require; and

c. any authorizations from the injured person as *we* may require.

5. **Payment of Claim – Coverage M or Damage to Property of Others.** Payment under either of these is not an admission of liability by an *insured* or *us.*

6. **Suit Against Us.** No action will be brought against *us* unless there has been compliance with the policy provisions.

No one will have the right to join *us* as a party to an action against an *insured*. Further, no action with respect to Coverage L will be brought against *us* until the obligation of the *insured* has been determined by final judgment on the merits, after an actual trial or by an agreement signed by *us*; but *we* will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable Limit of Liability.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an *insured* will not relieve *us* of *our* obligation under this policy.

8. **Other Insurance – Coverage L.** This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

## SECTION I AND SECTION II – CONDITIONS

1. **Policy Period.** This policy applies only to loss under Section I or *bodily injury* or *property damage* under Section II that occurs during the period this policy is in effect.

2. **Concealment or Fraud.**

a. This policy is void as to *you* and any other *insured* if *you* or any other *insured* under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

However, this condition applies only to facts or circumstances:

(1) on which *we* rely and are either:

(a) material; or

(b) made with intent to deceive; or

(2) that contribute to the loss.

b. No failure of a policy condition before the loss and no breach of a promissory warranty affects *our* obligations under this policy unless such failure or breach exists at the time of loss and either:

(1) increases the risk at the time of loss; or

(2) contributes to the loss.

Item 2.b. does not apply to failure to tender payment of premium.

c. Violation of this condition by an *insured* does not apply to a claim of an innocent *insured*, to

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

the extent of the innocent *insured's* interest in the covered property, if the loss:

    (1)  arises out of family violence against an innocent *insured*; and

    (2)  is caused by an intentional act of an *insured* against whom a family violence complaint is brought.

3.  **Liberalization Clause.**  If *we* adopt any revision that would broaden coverage under this policy without additional premium, within 60 days prior to or during the period this policy is in effect, the broadened coverage will immediately apply to this policy.

4.  **Waiver or Change of Policy Provisions.**  A waiver or change of any provision of this policy must be in writing by *us* to be valid.  *Our* request for an appraisal or examination does not waive any of *our* rights.

5.  **Cancellation.**

  a.  *You* may cancel this policy at any time by giving *us* advance written notice of the date cancellation is to take effect.  If only *your* interest is affected, the effective date of cancellation will be the later of:

    (1)  the date *we* receive *your* notice of cancellation; or

    (2)  the date specified in the notice.

  However, upon receipt of *your* notice of cancellation, *we* may waive the requirement that the notice be in writing by confirming the date and time of cancellation to *you* in writing.

  b.  *We* may cancel this policy only for the reasons stated in this condition.  *We* will notify *you* in writing of the date cancellation takes effect. This cancellation notice may be delivered to *you*, or mailed to *you* at *your* mailing address shown in the *Declarations*.  Proof of mailing will be sufficient proof of notice.

    (1)  When *you* have not paid the premium, *we* may cancel at any time by notifying *you* at least 10 days before the date cancellation takes effect.  This condition applies whether the premium is payable to *us* or

*our* agent or under any finance or credit plan.

    (2)  When this policy has been in effect for less than 60 days and is not a renewal with *us*, *we* may cancel for any reason. *We* may cancel by notifying *you* at least 30 days before the date cancellation takes effect.

    (3)  When this policy has been in effect for 60 days or more, or at any time if it is a renewal with *us*, *we* may cancel:

      (a)  if there has been a material misrepresentation of fact that, if known to *us*, would have caused *us* not to issue this policy; or

      (b)  if the risk has changed substantially since this policy was issued.

    *We* may cancel this policy by notifying *you* at least 30 days before the date cancellation takes effect.

    (4)  When this policy is written for a period longer than one year, *we* may cancel for any reason at anniversary.  *We* may cancel by notifying *you* at least 30 days before the date cancellation takes effect.

  c.  When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded.  The return premium will be pro rata.

  d.  The return premium may not be refunded with the notice of cancellation or when this policy is returned to *us*.  In such cases, *we* will refund it within a reasonable time after the date cancellation takes effect.

  e.  If *we* cancel this policy, *we* will notify any mortgagee shown in this policy in accordance with Georgia state insurance law.

6.  **Nonrenewal.**  *We* may elect not to renew this policy. If *we* elect not to renew, a written notice will be delivered to *you*, or mailed to *you* at *your* mailing address shown in the *Declarations*.  The notice will be mailed or delivered at least 30 days before the expiration date of this policy.  Proof of mailing will be sufficient proof of notice.

30

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

If *we* elect not to renew this policy, *we* will notify any mortgagee shown in this policy in accordance with Georgia state insurance law.

7. **Assignment of Policy.** Assignment of this policy will be void and *we* will not recognize any such assignment, unless *we* give *our* written consent.

8. **Subrogation and Reimbursement.**

   a. **Subrogation.**

      (1) Applicable to SECTION I:

          If any *insured* to or for whom *we* make payment under this policy has rights to recover damages from another, those rights are transferred to *us* to the extent of *our* payment. That *insured* must do everything necessary to secure *our* rights and must do nothing after loss to impair them. However before a loss, an *insured* may waive in writing all rights of recovery against any person.

      (2) Applicable to SECTION II:

          If any *insured* has rights to recover all or part of any payment *we* have made under this policy, those rights are transferred to *us*. An *insured* must do nothing after loss to impair them. At *our* request, an *insured* will bring suit or transfer those rights to *us* and help *us* enforce them.

      Subrogation does not apply under Section II to **Medical Payments to Others** or **Damage to Property of Others.**

   b. **Reimbursement.**

      If *we* make payment under this policy and any *insured* to or for whom *we* make payment recovers or has recovered from another person or organization, then the *insured* to or for whom *we* make payment must:

      (1) hold in trust for *us* the proceeds of any recovery; and

      (2) reimburse *us* to the extent of *our* payment.

9. **Death.** If *you* die:

   a. *we* insure the legal representative of the deceased. This condition applies only with respect to the premises and property of the deceased covered under this policy at the time of death;

   b. *Insured* includes:

      (1) any member of *your* household who is an *insured* at the time of *your* death, but only while a resident of the *residence premises*; and

      (2) with respect to *your* property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

10. **Conformity to State Law.** When a policy provision is in conflict with the applicable law of the state in which this policy is issued, the law of the state will apply.

11. **Premium.**

    a. Unless as otherwise provided by an alternative payment plan in effect with the *State Farm Companies* with respect to the premium for this policy, the premium is due and payable in full on or before the first day of the policy period shown in the most recently issued *Declarations*.

    b. The renewal premium for this policy will be based upon the rates in effect, the coverages carried, the applicable limits, deductibles, and other elements that affect the premium applicable at the time of renewal.

    c. The premium for this policy may vary based upon:

       (1) the purchase of other products or services from the *State Farm Companies*;

       (2) the purchase of products or services from an organization that has entered into an agreement or contract with the *State Farm Companies*. The *State Farm Companies* do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization; or

       (3) an agreement, concerning the insurance provided by this policy, that the *State Farm Companies* has with an organization

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

of which *you* are a member, employee, subscriber, licensee, or franchisee.

   d.   *Your* purchase of this policy may allow:

      (1)  *you* to purchase or obtain certain coverages, coverage options, coverage deductibles, coverage limits, or coverage terms on other products from the *State Farm Companies*, subject to their applicable eligibility rules; or

      (2)  the premium or price for other products or services purchased by *you*, including non-insurance products or services, to vary. Such other products or services must be provided by the *State Farm Companies* or by an organization that has entered into an agreement or contract with the *State Farm Companies*. The *State Farm Companies* do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization.

**12.  Right to Inspect.**

   a.   *We* have the right but are not obligated to perform the following:

      (1)  make inspections and surveys of the *insured location* at any time;

      (2)  provide *you* with reports on conditions *we* find; or

      (3)  recommend changes.

      Any inspections, surveys, reports, or recommendations relate only to insurability and the premiums to be charged.

   b.   *We* do not:

      (1)  make safety inspections;

      (2)  undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public;

      (3)  warrant that conditions are safe or healthful; or

      (4)  warrant that conditions comply with laws, regulations, codes, or standards.

      This condition applies to *us* and to any rating, advisory, rate service, or similar organization that makes insurance inspections, surveys, reports, or recommendations on *our* behalf.

**13.  Joint and Individual Interests.** When there are two or more Named Insureds, each acts for all to cancel or change this policy.

**14.  Change of Policy Address.** *We* may change the Named Insured's policy address as shown in the *Declarations* and in *our* records to the most recent address provided to *us* by:

   a.   *you*; or

   b.   the United States Postal Service.

**15.  Electronic Delivery.** With *your* consent, *we* may electronically deliver any document or notice, including a notice to renew, nonrenew, or cancel, instead of mailing it or delivering it by other means. Proof of transmission will be sufficient proof of notice.

**16.  Our Rights Regarding Claim Information.**

   a.   *We* will collect, receive, obtain, use, and retain all the items described in item b.(1) below and use and retain the information described in item b.(3)(b) below, in accordance with applicable federal and state laws and regulations and consistent with the performance of *our* business functions.

   b.   Subject to 16.a. above, *we* will not be restricted in or prohibited from:

      (1)  collecting, receiving, or obtaining records, receipts, invoices, medical bills, medical records, wage information, salary information, employment information, data, and any other information;

      (2)  using any of the items described in item b.(1) above; or

      (3)  retaining:

         (a)  any of the items in item b.(1) above; or

         (b)  any other information *we* have in *our* possession as a result of *our* processing, handling, or otherwise resolving claims submitted under this policy.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

c. **We** may disclose any of the items in b.(1) above and any of the information described in item b.(3)(b) above:

   (1) to enable performance of **our** business functions;

   (2) to meet **our** reporting obligations to insurance regulators;

   (3) to meet **our** reporting obligations to insurance data consolidators;

   (4) to meet other obligations required by law; and

   (5) as otherwise permitted by law.

d. **Our** rights under 16.a., 16.b., and 16.c. above will not be impaired by any:

   (1) authorization related to any claim submitted under this policy; or

   (2) act or omission of an **insured** or a legal representative acting on an **insured's** behalf.

17. **Duties Regarding Claim Information.** An **insured** or a legal representative acting on an **insured's** behalf must provide **us** with any requested authorizations related to the claim. **Our** rights as set forth under **Our Rights Regarding Claim Information** of this policy will not be impaired by any:

a. authorization related to the claim; or

b. act or omission of an **insured** or a legal representative acting on an **insured's** behalf.

## OPTIONAL POLICY PROVISIONS

Each Optional Policy Provision applies only as shown in the **Declarations** and is subject to all the terms, provisions, exclusions, and conditions of this policy.

**Option AI – Additional Insured.** The definition of **insured** is extended to include the person or organization shown in the **Declarations** as an Additional Insured or whose name is on file with **us**. Coverage is with respect to:

1. **SECTION I – Coverage A, Coverage B, or Coverage C; or**

2. **SECTION II – Coverage L and Coverage M** but only with respect to the **residence premises**. This coverage does not apply to **bodily injury** to an employee arising out of or in the course of the employee's employment by the person or organization.

This option applies only with respect to the location shown in the **Declarations**.

**Option BP – Business Property.** The COVERAGE B – PERSONAL PROPERTY, Special Limits *of* Liability, item b., for property used or intended for use in a **business**, including merchandise held as samples or for sale or for delivery after sale, is changed as follows:

The $1,500 limit is replaced with the amount shown in the **Declarations** for this option.

**Option BU – Business Pursuits. SECTION II – EXCLUSIONS**, item 1.b. is modified as follows:

1. Section II coverage applies to the **business** pursuits of an **insured** who is a:

a. clerical office employee, salesperson, collector, messenger; or

b. teacher (except college, university, and professional athletic coaches), school principal, or school administrator;

while acting within the scope of the above listed occupations.

2. However, no coverage is provided:

a. for **bodily injury** or **property damage** arising out of a **business** owned or financially controlled by the **insured** or by a partnership of which the **insured** is a partner or member;

b. for **bodily injury** or **property damage** arising out of the rendering of or failure to render professional services of any nature (other than teaching or school administration). This exclusion includes but is not limited to:

   (1) computer programming, architectural, engineering, or industrial design services;

   (2) medical, surgical, dental, or other services or treatment conducive to the health of persons or animals; and

   (3) beauty or barber services or treatment;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

c. for *bodily injury* to a fellow employee of the *insured* injured in the course of employment; or

d. when the *insured* is a member of the faculty or teaching staff of a school or college:

   (1) for *bodily injury* or *property damage* arising out of the maintenance, use, loading, or unloading of:

      (a) draft or saddle animals, including vehicles for use with them; or

      (b) aircraft, *motor vehicles*, recreational *motor vehicles* or watercraft, airboats, air cushions, or personal watercraft which use a water jet pump powered by an internal combustion engine as the primary source of propulsion;

     owned, operated, or hired by or for the *insured* or employer of the *insured* or used by the *insured* for the purpose of instruction in the use thereof; or

   (2) under Coverage M for *bodily injury* to a student arising out of corporal punishment administered by or at the direction of the *insured*.

**Option FA – Firearms.** Firearms are covered for accidental direct physical loss or damage.

The limits for this option are shown in the *Declarations*. The first amount is the limit for any one article; the second amount is the aggregate limit for each loss.

The following additional provisions apply:

1. *We* will not pay for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

   a. mechanical breakdown, wear and tear, or gradual deterioration;

   b. all animals, birds, or insects, including nesting, infestation, gnawing, feeding, breeding, or discharge or release of waste products or secretions by animals, birds, or insects. However, *we* will pay for losses caused by wild bears or deer;

   c. any process of refinishing, renovating, or repairing;

   d. dampness of atmosphere or extremes of temperatures;

   e. inherent defect or faulty manufacture;

   f. rust, fouling, or explosion of firearms;

   g. breakage, marring, scratching, tearing, or denting unless caused by fire, thieves, or accidents to conveyances; or

   h. infidelity of an *insured's* employees or persons to whom the insured property may be entrusted or rented;

2. *Our* limit for loss by any Coverage B peril except theft is the limit shown in the *Declarations* for Coverage B, plus the aggregate limit;

3. *Our* limits for loss by theft are those shown in the *Declarations* for this option. These limits apply in lieu of the Coverage B theft limit; and

4. *Our* limits for loss by any covered peril except those in items 2. and 3. above are those shown in the *Declarations* for this option.

**Option ID – Increased Dwelling Limit.** *We* will settle losses to damaged *building structures* covered under **COVERAGE A – DWELLING** according to the **Loss Settlement Provision** shown in the *Declarations*.

If the amount *you* actually and necessarily spend to repair or replace damaged *building structures* exceeds the applicable limit of liability shown in the *Declarations*, *we* will pay the additional amounts not to exceed:

1. the Option ID limit of liability shown in the *Declarations* to repair or replace the *dwelling*; or

2. 10% of the Option ID limit of liability to repair or replace *building structures* covered under **COVERAGE A – DWELLING, Other Structures.**

**Report Increased Values.** *You* must notify *us* within 90 days of the start of construction on any new *building structure* costing $5,000 or more; or any additions to or remodeling of *building structures* that increase their values by $5,000 or more. *You* must pay any additional premium due for the increased value. *We* will not pay more than the applicable limit of liability shown in the *Declarations* if *you* fail to notify *us* of the increased value within 90 days.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

**Option IO – Incidental Business.** The coverage provided by this option applies only to that incidental *business* occupancy on file with *us.*

1.  **COVERAGE A – DWELLING, Other Structures,** item 2.b. is deleted.

2.  **COVERAGE B – PERSONAL PROPERTY** is extended to include equipment, supplies, and furnishings usual and incidental to this *business* occupancy. This Optional Policy Provision does not include electronic data processing system equipment or the recording or storage media used with that equipment or merchandise held as samples or for sale or for delivery after sale.

    The Option IO limits are shown in the *Declarations.* The first limit applies to property on the *residence premises.* The second limit applies to property while off the *residence premises.* These limits are in addition to the **COVERAGE B – PERSONAL PROPERTY, Special Limits of Liability** on property used or intended for use in a *business.*

3.  Under Section II, the *residence premises* is not considered *business* property because an *insured* occupies a part of it as an incidental *business.*

4.  **SECTION II – EXCLUSIONS,** item 1.b. is replaced with the following:

    b.  *bodily injury* or *property damage* arising out of *business* pursuits of any *insured,* except as provided in item c. below. This exclusion does not apply to activities that are ordinarily incident to non-*business* pursuits or to *business* pursuits of an *insured* that are necessary or incidental to the use of the *residence premises* as an incidental *business;*

5.  This insurance does not apply to:

    a.  *bodily injury* to an employee of an *insured* arising out of the *residence premises* as an incidental *business* other than to a *residence employee* while engaged in the employee's employment by an *insured;*

    b.  *bodily injury* to a student arising out of corporal punishment administered by or at the direction of the *insured;*

    c.  liability arising out of any acts, errors, or omissions of an *insured,* or any other person for whose acts an *insured* is liable, resulting from the preparation or approval of data, plans, designs, opinions, reports, programs, specifications, supervisory inspections, or engineering services in the conduct of an *insured's* incidental *business* involving data processing, computer consulting, or computer programming; or

    d.  any claim made or suit brought against any *insured* by:

        (1)  any person in the care of any *insured* because of child care services provided by or at the direction of:

            (a)  any *insured;*

            (b)  any employee of any *insured;* or

            (c)  any other person actually or apparently acting on behalf of any *insured;* or

        (2)  any person who makes a claim because of *bodily injury* to any person in the care of any *insured* because of child care services provided by or at the direction of:

            (a)  any *insured;*

            (b)  any employee of any *insured;* or

            (c)  any other person actually or apparently acting on behalf of any *insured.*

        Coverage M does not apply to any person indicated in d.(1) and d.(2) above.

        This exclusion does not apply to the occasional child care services provided by any *insured,* or to the part-time child care services provided by any *insured* under 19 years of age.

**Option JF – Jewelry and Furs.** Jewelry, watches, fur garments and garments trimmed with fur, precious and semi-precious stones, gold other than goldware, silver other than silverware, and platinum are covered for accidental direct physical loss or damage.

The limits for this option are shown in the *Declarations.* The first amount is the limit for any one article; the second amount is the aggregate limit for each loss. All provisions and exclusions of **SECTION I – LOSSES**

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

INSURED, COVERAGE B – PERSONAL PROPERTY, Theft apply to Option JF.

The following additional provisions apply:

1. *We* will not pay for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

   a. mechanical breakdown, wear and tear, or gradual deterioration;

   b. all animals, birds or insects, including nesting, infestation, gnawing, feeding, breeding, or discharge or release of waste products or secretions by animals, birds, or insects. However, *we* will pay for losses caused by wild bears or deer;

   c. inherent vice; or

   d. seizure or destruction under quarantine or customs regulations;

2. *Our* limit for loss by any Coverage B peril except theft is the limit shown in the *Declarations* for Coverage B, plus the aggregate limit;

3. *Our* limits for loss by theft are those shown in the *Declarations* for this option. These limits apply in lieu of the Coverage B theft limit; and

4. *Our* limits for loss by any covered peril except those in items 2. and 3. above are those shown in the *Declarations* for this option.

**Option OL – Building Ordinance or Law.**

1. **Coverage Provided.** The total limit of insurance provided by this option will not exceed an amount equal to the Option OL percentage shown in the *Declarations* of the Coverage A limit shown in the *Declarations* at the time of the loss, as adjusted by the Inflation Coverage provisions of this policy. This is an additional amount of insurance and applies to *building structures* on the *residence premises*.

2. **Damaged Portions of Building Structure.** When a *building structure* covered under COVERAGE A – DWELLING is damaged by a *loss insured*, *we* will pay for the increased cost to repair or rebuild the physically damaged portion of the *building structure* caused by the enforcement of a building, zoning, or land use ordinance or law if the enforcement is directly caused by the same *loss insured* and the

requirement is in effect at the time the *loss insured* occurs.

3. **Undamaged Portions of Damaged *Building Structure*.** When a *building structure* covered under COVERAGE A – DWELLING is damaged by a *loss insured*, *we* will also pay for:

   a. the cost to demolish and clear the site of the undamaged portions of the *building structure* caused by the enforcement of a building, zoning, or land use ordinance or law if the enforcement is directly caused by the same *loss insured* and the requirement is in effect at the time the *loss insured* occurs; and

   b. loss to the undamaged portion of the *building structure* caused by enforcement of any ordinance or law if:

      (1) the enforcement is directly caused by the same *loss insured*;

      (2) the enforcement requires the demolition of portions of the same *building structure* not damaged by the same *loss insured*;

      (3) the ordinance or law regulates the construction or repair of the *building structure*, or establishes zoning or land use requirements at the described premises; and

      (4) the ordinance or law is in force at the time of the occurrence of the same *loss insured*; or

   c. legally required changes to the undamaged portion of the *building structure* caused by the enforcement of a building, zoning, or land use ordinance or law, if:

      (1) the enforcement is directly caused by the same *loss insured*;

      (2) the requirement is in effect at the time the *loss insured* occurs; and

      (3) the legally required changes are made to the undamaged portions of specific *building structure* features, systems, or components that have been physically damaged by the *loss insured*.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

*We* will not pay for legally required changes to specific *building structure* features, systems, or components that have not been physically damaged by the *loss insured*.

4. **Building Ordinance or Law Coverage Limitations.**

    a.    *We* will not pay for any increased cost of construction:

        (1)  until the *building structure* is actually repaired or replaced at the same or another premises in the same general vicinity;

        (2)  unless the repairs or replacement are made as soon as reasonably possible after the loss, not to exceed two years; and

        (3)  due to any original or subsequent construction, addition, modification, renovation, remodel, or repair to a *building structure* that did not comply with a building, zoning, or land use ordinance or law in effect when the construction, addition, modification, renovation, remodel, or repair was performed.

    b.    *We* will not pay more under this coverage than the amount *you* actually spend:

        (1)  for the increased cost to repair or rebuild the *building structure* at the same or another premises in the same general vicinity if relocation is required by ordinance or law; and

        (2)  to demolish and clear the site of the undamaged portions of the *building structure* caused by enforcement of building, zoning, or land use ordinance or law.

*We* will not pay for more than a *building structure* of the same height, floor area, and style on the same or similar premises as the *building structure*, subject to the limit provided in paragraph 1. **Coverage Provided** of this option.

**Option SG − Silverware and Goldware Theft.** The **COVERAGE B − PERSONAL PROPERTY, Special Limits of Liability**, item i., for theft of silverware and goldware is increased to be the amount shown in the *Declarations* for this option.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

# EXHIBIT B

HENG, SOTHY

11-30M3-31X



**State Farm**
**P.O. Box 106169**
**Atlanta, GA  30348-6169**
**Fax: 1-844-236-3646**
**statefarmfireclaims@statefarm.com**

# Structural Damage Claim Policy

This estimate is priced based on estimated market pricing for the cost of materials, labor, and other factors at the time of the loss.

Adjustments in market pricing and timing of the repairs may impact the final cost of covered repairs. Should you or the contractor you select have questions concerning our estimate, please contact us. If your contractor's estimate is higher than ours, you should contact us prior to beginning repairs. State Farm will work with you and your contractor to determine the actual and necessary cost of covered repairs at the time repairs will be completed, subject to policy terms, conditions and limits.

- We want you to receive quality repair work to restore the damages to your property.

- We will provide you with a detailed estimate of the scope of the damage and costs of repairs. Should the contractor you select have questions concerning our estimate, they should contact your claim representative directly.

- Depending upon the complexity of your repair, our estimate may or may not include an allowance for general contractor's overhead and profit. If you have questions regarding general contractor's overhead and profit and whether general contractor services are appropriate for your loss, please contact your claim representative before proceeding with repairs.

- There may be building codes, ordinances, laws, or regulations that affect the repairs of your property. These items may or may not be covered by your policy. Please contact your claim representative if you have any questions regarding coverage which may be available under your policy.

- State Farm® cannot authorize any contractor to proceed with work on your property. Repairs should proceed only with your authorization.

- State Farm does not guarantee the quality of the workmanship of any contractor or guarantee that the work will be accomplished within any specific time frame.

- It is understood that the contractor is hired by you, our insured, and that they work for you - not State Farm.

If you have any questions or need additional information regarding your claim, please contact your claim representative immediately.

Date:   4/14/2022 8:30 AM

132214.1  06-18-2009      Page: 1

11-30M3-31X

### StateFarm   **Building Estimate Summary Guide**

**This summary guide is based on a sample estimate and is provided for reference only.**
**Please refer to the estimate for specifics of your claim.**

---

#### State Farm Insurance

| | |
|---|---|
| Insured: | Smith, Joe & Jane |
| Property: | 1 Main Street |
| | Anywhere, IL 00000-0000 |
| Type of Loss: | Other |
| Deductible: | $1,000.00 |

| | |
|---|---|
| Estimate: | 00-0000-000 |
| Claim number: | 00-0000-000 |
| Policy Number: | 00-00-0000-0 |
| Price List: | ILBL8F_MAR 13 |
| | Restoration/Service/ |
| | Remodel |
| | F = Factored In, |
| | D = Do Not Apply |

#### Summary for Dwelling

| | | | |
|---|---|---|---|
| Line Item Total [1] | | | 5,953.10 |
| Material Sales Tax | @ | 10.000% x 1,520.00 | |
| Subtotal | | | 6,105.10 |
| General Contractor Overhead [2] | @ | 10.0% x 6,105.10 | 610.51 |
| General Contractor Profit | @ | 10.0% x 6,105.10 | |
| Replacement Cost Value (Including General Contractor Overhead and Profit [3] | | | 7,326.12 |
| Less Depreciation (Including Taxes) [4] | | | (832.50) |
| Less General Contractor Overhead & Profit on Recoverable & | | | |
| Non - recoverable Depreciation | | | (166.50) |
| Less Deductible [5] | | | |
| Net Actual Cash Value Payment [6] | | | |

#### Maximum Additional Amounts Available If Incurred:

| | | |
|---|---|---|
| Total Line Item Depreciation (Including Taxes) [4] | 832.50 | |
| Less Non - recoverable Depreciation (Including Taxes) [7] | | |
| Subtotal | | 312.50 |
| General Contractor O&P on Depreciation | 166.50 | |
| Less General Contractor O&P on Non - recoverable Depreciation | | |
| Subtotal | | |
| Total Maximum Additional Amounts Available If Incurred [8] | | |
| Total Amount of Claim If Incurred [9] | | |

---

Claim Representative

**ALL AMOUNTS PAYABLE ARE SUBJECT TO THE TERMS, CONDITIONS AND LIMITS OF YOUR POLICY.**

1. **Line Item Total –** Total value of all line items in the estimate plus possible adjustments for *labor minimums. Labor Minimum* is to cover a certain minimum number of hours for drive-time, set up time and applicable administrative costs and repairs.

2. **General Contractor's Overhead and Profit –** General contractor's charge for coordinating your repairs.

3. **Replacement Cost Value (RCV) –** Estimated cost to repair or replace damaged property.

4. **Depreciation –** The decrease in the value of property over a period of time due to wear, tear, condition, and obsolescence. A portion or all of this amount may be eligible for replacement cost benefits.

5. **Deductible –** The insurer will pay for losses, up to the policy limits, in excess of your applicable deductible.

6. **Net Actual Cash Value Payment (ACV) –** The repair or replacement cost of the damaged part of the property less *depreciation* and *deductible*.

7. **Non Recoverable Depreciation –** *Depreciation* applied to items that are not eligible for replacement cost benefits.

8. **Total Maximum Additional Amount If Incurred –** Total amount of recoverable depreciation after actual repair or replacement of the property.

9. **Total Amount of Claim If Incurred –** Total amount of the claim, including *net actual cash value payment and total maximum additional amount available if incurred.*

---

## State Farm

HENG, SOTHY                                                                                11-30M3-31X

| | | | |
|---|---|---|---|
| Insured: | HENG, SOTHY | Estimate: | 11-30M3-31X |
| Property: | 1010 LANDMARK DR | Claim Number: | 1130M331X |
| | MCDONOUGH, GA 30252-3973 | Policy Number: | 81G0P8987 |
| Cellular: | 404-316-2863 | Price List: | GAAT28_JAN22 |
| Type of Loss: | Wind Damage | | Restoration/Service/Remodel |
| Deductible: | $1,660.00 | | |
| Date of Loss: | 1/2/2022 | | |
| Date Inspected: | 2/18/2022 | | |

### Summary for Coverage A - Dwelling - 35 Windstorm and Hail

| | |
|---|---:|
| Line Item Total | 1,595.66 |
| Material Sales Tax | 20.10 |
| Replacement Cost Value | 1,615.76 |
| Less Depreciation (Including Taxes) | (130.08) |
| Less Deductible | (1,660.00) |
| Actual Cash Value Total | (174.32) |
| Net Actual Cash Value Payment | $0.00 |

### Maximum Additional Amounts Available If Incurred:

| | | |
|---|---:|---:|
| Total Line Item Depreciation (Including Taxes) | 130.08 | |
| Less Actual Cash Value Total | (174.32) | |
| Subtotal | (44.24) | |
| Replacement Cost Benefits | -44.24 | |
| Total Maximum Additional Amount Available If Incurred | | 0.00 |
| Total Amount of Claim If Incurred | | $0.00 |

Pegram, Takeysha
866-787-8676 x 12906

**ALL AMOUNTS PAYABLE ARE SUBJECT TO THE TERMS, CONDITIONS AND
LIMITS OF YOUR POLICY.**

**State Farm**

HENG, SOTHY                                                                                              11-30M3-31X

Roof



**Dwelling**

| | |
|---|---|
| 4,631.45 Surface Area | 46.31 Number of Squares |
| 382.19 Total Perimeter Length | 114.87 Total Ridge Length |
| 82.50 Total Hip Length | |

| | QUANTITY | UNIT PRICE | TAX | RCV | AGE/LIFE CONDITION | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|
| 1. Remove 3 tab - 25 yr. - composition shingle roofing (per SHINGLE) | | | | | | | |
| | 7.00 EA | 6.60 | 0.00 | 46.20 | | | 46.20 |
| 2. 3 tab - 25 yr. - composition shingle roofing (per SHINGLE) | | | | | | | |
| | 10.00 EA | 15.16 | 1.43 | 153.03 | | | 153.03 |
| This is an allowance for 7 wind damaged shingles based on engineer report. The estimate also has allowance for 3 additional shingles. | | | | | | | |
| 3. Roofer - per hour | | | | | | | |
| | 2.00 HR | 120.30 | 0.00 | 240.60 | | | 240.60 |
| This is the allowance for steep and high charges. | | | | | | | |
| 4. R&R Continuous ridge vent - aluminum | | | | | | | |
| | 45.00 LF | 9.33 | 10.68 | 430.53 | | | 430.53 |
| | | | | | | | |
| **Totals: Dwelling** | | | **12.11** | **870.36** | | **0.00** | **870.36** |

**Front Elevation**

| | | |
|---|---|---|
| 0.00 SF Walls | 0.00 SF Ceiling | 0.00 SF Walls & Ceiling |
| 0.00 SF Floor | 0.00 SF Short Wall | 0.00 LF Floor Perimeter |
| 0.00 SF Long Wall | | 0.00 LF Ceil. Perimeter |

| | QUANTITY | UNIT PRICE | TAX | RCV | AGE/LIFE CONDITION | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|
| There was no accidental direct physical loss to this elevation related to this loss. | | | | | | | |
| | | | | | | | |
| **Totals: Front Elevation** | | | **0.00** | **0.00** | | **0.00** | **0.00** |

**Left Elevation**

| | | |
|---|---|---|
| 0.00 SF Walls | 0.00 SF Ceiling | 0.00 SF Walls & Ceiling |
| 0.00 SF Floor | 0.00 SF Short Wall | 0.00 LF Floor Perimeter |
| 0.00 SF Long Wall | | 0.00 LF Ceil. Perimeter |

## State Farm

HENG, SOTHY                                                                                    11-30M3-31X

| | QUANTITY | UNIT PRICE | TAX | RCV | AGE/LIFE CONDITION | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|
| There was no accidental direct physical loss to this elevation related to this loss. | | | | | | | |
| Totals: Left Elevation | | | 0.00 | 0.00 | | 0.00 | 0.00 |

### Rear Elevation

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 0.00 SF Walls | | 0.00 SF Ceiling | | | 0.00 SF Walls & Ceiling | | |
| 0.00 SF Floor | | 0.00 SF Short Wall | | | 0.00 LF Floor Perimeter | | |
| 0.00 SF Long Wall | | | | | 0.00 LF Ceil. Perimeter | | |

| | QUANTITY | UNIT PRICE | TAX | RCV | AGE/LIFE CONDITION | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|
| There was no accidental direct physical loss to this elevation related to this loss. | | | | | | | |
| Totals: Rear Elevation | | | 0.00 | 0.00 | | 0.00 | 0.00 |

### Right Elevation

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 0.00 SF Walls | | 0.00 SF Ceiling | | | 0.00 SF Walls & Ceiling | | |
| 0.00 SF Floor | | 0.00 SF Short Wall | | | 0.00 LF Floor Perimeter | | |
| 0.00 SF Long Wall | | | | | 0.00 LF Ceil. Perimeter | | |

| | QUANTITY | UNIT PRICE | TAX | RCV | AGE/LIFE CONDITION | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|
| There was no accidental direct physical loss to this elevation related to this loss. | | | | | | | |
| Totals: Right Elevation | | | 0.00 | 0.00 | | 0.00 | 0.00 |

Area Totals: Roof

| | | | |
|---|---|---|---|
| 1,422.65 Exterior Wall Area | | | |
| 5,048.29 Surface Area | 50.48 Number of Squares | | 464.01 Total Perimeter Length |
| 136.58 Total Ridge Length | 82.50 Total Hip Length | | |

| | QUANTITY | UNIT PRICE | TAX | RCV | AGE/LIFE CONDITION | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|
| Total: Roof | | | 12.11 | 870.36 | | 0.00 | 870.36 |

## Interior

### Main Level

**State Farm**

HENG, SOTHY                                                                    I1-30M3-31X



| | | | | | | |
|---|---|---|---|---|---|---|
| **Bathroom** | | | | | **Height: Peaked** | |
| 879.33 SF Walls | | | | 181.83 SF Ceiling | | |
| 1,061.17 SF Walls & Ceiling | | | | 149.62 SF Floor | | |
| 53.99 LF Ceil. Perimeter | | | | 49.00 LF Floor Perimeter | | |

| | QUANTITY | UNIT PRICE | TAX | RCV | AGE/LIFE CONDITION | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|
| 5. Seal the surface area w/latex based stain blocker - one coat | | | | | | | |
| | 9.00 SF | 0.61 | 0.05 | 5.54 | 2/15 yrs Avg. | (0.74) 13.33% | 4.80 |
| 6. Paint the ceiling - one coat | | | | | | | |
| | 181.83 SF | 0.66 | 1.65 | 121.66 | 5/15 yrs Avg. | (40.55) 33.33% | 81.11 |
| 7. Mask and prep for paint - plastic, paper, tape (per LF) | | | | | | | |
| | 53.99 LF | 1.40 | 1.02 | 76.61 | | | 76.61 |
| **Totals: Bathroom** | | | 2.72 | 203.81 | | 41.29 | 162.52 |



| | | | | | | |
|---|---|---|---|---|---|---|
| **Kitchen** | | | | | **Height: 8'** | |
| 705.33 SF Walls | | | | 389.80 SF Ceiling | | |
| 1,095.13 SF Walls & Ceiling | | | | 389.80 SF Floor | | |
| 88.17 LF Ceil. Perimeter | | | | 88.17 LF Floor Perimeter | | |

| | QUANTITY | UNIT PRICE | TAX | RCV | AGE/LIFE CONDITION | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|
| 8. Seal the surface area w/latex based stain blocker - one coat | | | | | | | |
| | 9.00 SF | 0.61 | 0.05 | 5.54 | 5/15 yrs Avg. | (1.85) 33.33% | 3.69 |
| 9. Paint the ceiling - one coat | | | | | | | |
| | 389.80 SF | 0.66 | 3.55 | 260.82 | 5/15 yrs Avg. | (86.94) 33.33% | 173.88 |
| 10. Mask and prep for paint - plastic, paper, tape (per LF) | | | | | | | |
| | 88.17 LF | 1.40 | 1.67 | 125.11 | | | 125.11 |
| **Totals: Kitchen** | | | 5.27 | 391.47 | | 88.79 | 302.68 |

Area Totals: Main Level

## State Farm

HENG, SOTHY                                                                                    11-30M3-31X

| | | |
|---|---|---|
| 1,584.67 SF Walls | 571.63 SF Ceiling | 2,156.30 SF Walls and Ceiling |
| 539.41 SF Floor | 586.02 Total Area | 137.17 LF Floor Perimeter |
| 539.41 Floor Area | 142.50 Exterior Perimeter | 142.15 LF Ceil. Perimeter |
| 1,787.43 Exterior Wall Area | of Walls | 1,584.67 Interior Wall Area |

| | | | | |
|---|---|---|---|---|
| **Total: Main Level** | 7.99 | 595.28 | 130.08 | 465.20 |

Area Totals: Interior

| | | |
|---|---|---|
| 1,584.67 SF Walls | 571.63 SF Ceiling | 2,156.30 SF Walls and Ceiling |
| 539.41 SF Floor | 586.02 Total Area | 137.17 LF Floor Perimeter |
| 539.41 Floor Area | 142.50 Exterior Perimeter | 142.15 LF Ceil. Perimeter |
| 1,787.43 Exterior Wall Area | of Walls | 1,584.67 Interior Wall Area |

| | | | | |
|---|---|---|---|---|
| **Total: Interior** | 7.99 | 595.28 | 130.08 | 465.20 |

### Debris Removal

| | | |
|---|---|---|
| 0.00 SF Walls | 0.00 SF Ceiling | 0.00 SF Walls & Ceiling |
| 0.00 SF Floor | 0.00 SF Short Wall | 0.00 LF Floor Perimeter |
| 0.00 SF Long Wall | | 0.00 LF Ceil. Perimeter |

| | QUANTITY | UNIT PRICE | TAX | RCV | AGE/LIFE CONDITION | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|
| 11. Haul debris - per pickup truck load - including dump fees | | | | | | | |
| | 1.00 EA | 150.12 | 0.00 | 150.12 | | | 150.12 |
| **Totals: Debris Removal** | | | 0.00 | 150.12 | | 0.00 | 150.12 |

### Temporary Repairs

| | | |
|---|---|---|
| 0.00 SF Walls | 0.00 SF Ceiling | 0.00 SF Walls & Ceiling |
| 0.00 SF Floor | 0.00 SF Short Wall | 0.00 LF Floor Perimeter |
| 0.00 SF Long Wall | | 0.00 LF Ceil. Perimeter |

| | QUANTITY | UNIT PRICE | TAX | RCV | AGE/LIFE CONDITION | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|
| Please provide the invoice for the tarp. | | | | | | | |
| **Totals: Temporary Repairs** | | | 0.00 | 0.00 | | 0.00 | 0.00 |

| | | | | | |
|---|---|---|---|---|---|
| **Line Item Totals: 11-30M3-31X** | | 20.10 | 1,615.76 | 130.08 | 1,485.68 |

**State Farm**

HENG, SOTHY                                                                                          11-30M3-31X

**Grand Total Areas:**

| | | |
|---|---|---|
| 1,584.67 SF Walls | 571.63 SF Ceiling | 2,156.30 SF Walls and Ceiling |
| 539.41 SF Floor | | 137.17 LF Floor Perimeter |
| | | 142.15 LF Ceil. Perimeter |
| 539.41 Floor Area | 586.02 Total Area | 1,584.67 Interior Wall Area |
| 3,210.08 Exterior Wall Area | 142.50 Exterior Perimeter of Walls | |
| 5,048.29 Surface Area | 50.48 Number of Squares | 464.01 Total Perimeter Length |
| 136.58 Total Ridge Length | 82.50 Total Hip Length | |

**State Farm**

HENG, SOTHY                                                                                        11-30M3-31X

### Recap of Taxes, Overhead and Profit

| | GC Overhead (0%) | GC Profit (0%) | Material Sales Tax (7%) | Storage Rental Tax (7%) | Local Food Tax (3%) |
|---|---|---|---|---|---|
| Line Items | 0.00 | 0.00 | 20.10 | 0.00 | 0.00 |
| Total | 0.00 | 0.00 | 20.10 | 0.00 | 0.00 |

Date:    4/14/2022 8:30 AM

Exterior - Roof



Date:   4/14/2022 8:30 AM

Interior - Main Level





Main Level

# EXHIBIT C



**HUGGINS** LAW FIRM

**Foster L. Peebles, Esq.**
110 Norcross Street
Roswell, GA 30075
fpeebles@lawhuggins.com
(770) 913-6229

September 21, 2022

State Farm Fire and Casualty Company
P.O. Box 88049
Atlanta, GA 30356

**Sent Via email:**
statefarmfireclaims@statefarm.com

Re:    Named Insured(s):    Sothy Heng
          Policy Number:       81-G0-P898-7
          Claim Number:        11-30M3-31X
          Date of Loss:         January 2, 2022

To Whom it May Concern:

I have been retained by Sothy Heng ("Your Insured") to represent them regarding the above referenced property insurance claim. All further communication regarding this claim should be directed to my office.

Please also accept this letter as a formal demand for a **certified copy of the relevant insurance policy, to include the original policy, any renewals, and any endorsements.** We also request a copy of any and all repair estimates drafted to date, **as well as a payment sheet or payment log detailing all insurance proceeds issued to date for this claim.**

My client has complied with all conditions contained in the insurance policy. My client is at a loss as to why State Farm Fire and Casualty Company ("State Farm") has not afforded the proper coverage under the applicable policy. This lack of good faith has forced Your Insured to retain my legal services in order to fairly settle their claim. It is our belief that State Farm has violated the Unfair Claims Settlement Practice Act pursuant to O.C.G.A. § 33-6-34 and has breached the insurance policy.

Bad faith claims handling triggers additional liability on your part under O.C.G.A. § 33-4-6 that includes the amount of the claim, plus a penalty of an additional fifty percent (50%) of the value of the claim and reasonable attorneys' fees and costs.

Therefore, per the enclosed spreadsheets of damages to Your Insured's property, we are hereby making formal demand that you settle the above claim for the sum of **$66,207.44, less previous payments and the applicable deductible.** The invoice & estimate of damages is attached for your review. This demand is being made pursuant to O.C.G.A. § 33-4-6, and you have sixty (60) days in which to make payment on this claim or be subject to a lawsuit containing a claim for breach of contract and bad faith seeking all compensation allowed by law, including attorneys' fees and a penalty of fifty percent (50%) of the loss amount.

To:  State Farm Fire and Casualty Company
Client: Sothy Heng
September 21, 2022
Page **2** of **2**

This letter constitutes a "proper demand" for payment under O.C.G.A. § 33-4-6. If you contend that a proper demand has not been made, you must immediately notify us of the reasons for such allegation. Otherwise, it will be assumed you agree this letter constitutes a proper demand.

The purpose of this correspondence is to encourage State Farm to resolve Your Insured's claim in a fair and equitable manner in hopes of avoiding litigation. If you fail to respond to this letter with an offer of settlement that is acceptable to Your Insured, we will have no alternative other than recommending to Your Insured that a lawsuit be filed against you.

Payment must be received in my office within sixty (60) days of your receipt of this letter in order to avoid a suit for bad faith penalties and attorney's fees. Any check issued should list Huggins Law Firm, LLC as sole payee. Any objection to these payment terms shall be submitted in writing to Huggins Law Firm, LLC within 10 days of receipt of this letter.

I look forward to working with you to resolve this matter quickly and amicably. Please feel free to contact me should you have any questions regarding this formal 60-day demand. Should you have any questions or concerns, please reach out to me at fpeebles@lawhuggins.com or by phone at (770) 913-6229.

Sincerely,

Foster L. Peebles, Esq.
Attorney at Law

FLP/aak
Encl.

| | | | | |
|---|---|---|---|---|
| Client: | Sothy Heng | | Cellular: | (404) 316-2863 |
| Property: | 1010 Landmark Dr | | | |
| | McDonough, GA 30252 | | | |

| | | | | |
|---|---|---|---|---|
| Estimator: | Arturo Salgado | | Business: | (678) 281-5679 |
| Company: | Phoenix Restoration Inc. | | E-mail: | arturos@phoenixrestoration. |
| Business: | 6825 Jimmy Carter Blvd. Ste 1250 | | | site |
| | Norcross, GA 30071 | | | |

| | |
|---|---|
| Type of Estimate: | Wind Damage |
| Date Entered: | 9/15/2022      Date Assigned:   9/14/2022 |

| | |
|---|---|
| Price List: | GAAT8X_SEP22 |
| Labor Efficiency: | Restoration/Service/Remodel |
| Estimate: | SOTHY_HENG |
| File Number: | 1130M331X |

*Dear Sothy Heng,*

*The following estimate is based on the damages noted at the time of inspection by your Phoenix Restoration Inc. representative, Arturo Salgado.*

*During the repair process, any further damages that are discovered or come forth will be submitted in a supplement estimate that will include (but not be limited to) the building permit fee, etc.*

*Phoenix Restoration Inc. reserves the right to incorporate general contractor overhead and profit into each estimate. As Contractor, Phoenix Restoration Inc. is required to handle the permit process, OSHA regulations compliance, General Liability Insurance for the project and Workmen's Compensation Insurance for Phoenix Restoration Inc. employees/subcontractors that Phoenix Restoration Inc. supervises, or otherwise enter the job site while work is in progress. Xactware's white paper on O&P states:*

*"General Overhead are expenses incurred by a General Contractor, that cannot be attributed to individual projects, and include any and all expenses necessary for the General Contractor to operate their business. Examples (including but not limited to): General and Administrative (G&A) expenses, office rent, utilities, office supplies, salaries for office personnel, depreciation on office equipment, licenses, and advertising. Including General Overhead expenses in an Xactimate estimate–General Overhead expenses are not included in Xactware's unit pricing, but are typically added to the estimate as a percentage of the total bid along with the appropriate profit margin. These two costs together constitute what is normally referred to in the insurance restoration industry as General Contractor's O&P, or just O&P. General Overhead and Profit percentages can be added in the Estimate Parameters window within an Xactimate estimate."*

*We are, as contractors, committed with all our customers to provide them a peace of mind for every project following all law requirements that are specified on the IRC (International Residential Code and IECC (International Energy Conservation Code) that the State of Georgia has adapted. Under the Georgia law, any structure built in the estate must comply with these codes whether or not the local government chooses to locally enforce. We are also committed with the application of the OSHA standards. COMPLIANCE WITH BUILDING CODES IS NOT OPTIONAL, IT IS REQUIRED FOR EVERY PROJECT. Please also be aware that our business model as general construction firm is to subcontract al specialty, licensed, and/or hazardous trades to specialized tradesmen. Therefore, we do not use the default demolition general labor (DMO) in the "unit price" of the Xactimate removal line item on any specialty, licensed or hazardous trade. All removal lines "unit price" are attributed to their appropriate specialty, licensed and/or hazardous trade. This is required to appropriately represent our cost of job-personnel overhead that is built into Xactimate's line item price .*

SOTHY_HENG

**Temporary Repairs**

| DESCRIPTION | QTY | UNIT PRICE | TOTAL |
|---|---|---|---|
| 1. Temporary Repairs (Bid Item) | 1.00 EA @ | 1,250.00 = | 1,250.00 |

**Roof**

| DESCRIPTION | QTY | UNIT PRICE | TOTAL |
|---|---|---|---|
| 2. Remove Laminated - comp. shingle rfg. - w/ felt | 52.23 SQ @ | 160.36 = | 8,375.60 |
| Tear off main roof and detached garage. Dump fees, hauling, disposal, and labor to remove composition shingles and felt. | | | |
| 3. Laminated - comp. shingle rfg. - w/out felt | 62.33 SQ @ | 253.56 = | 15,804.39 |
| Waste calculations of 19% due to amount of facets (22). Includes labor and materials for the detached garage. Universal starter and hip/ridge composition shingles not included on waste calculations. | | | |
| 4. Remove Additional charge for steep roof - 10/12 - 12/12 slope | 49.56 SQ @ | 68.19 = | 3,379.50 |
| 5. Additional charge for steep roof - 10/12 - 12/12 slope | 58.97 SQ @ | 78.53 = | 4,630.91 |
| 6. Roofing felt - 30 lb. | 57.45 SQ @ | 40.52 = | 2,327.87 |
| 30 pound felt is necessary for crew safety on this roof pitch. 10% of waste added to this line item since per code, underlayment shall be overlapped on certain areas. | | | |
| 7. Asphalt starter - universal starter course | 461.00 LF @ | 2.04 = | 940.44 |
| 8. Ice & water barrier | 72.00 SF @ | 1.68 = | 120.96 |
| Ice & water barrier needs to be installed on the bend area in back side of the house where the slope changes it steep. | | | |
| 9. Remove Continuous ridge vent - aluminum | 143.00 LF @ | 2.61 = | 373.23 |
| 10. R&R Hip / Ridge cap - Standard profile - composition shingles | 224.00 LF @ | 8.74 = | 1,957.76 |
| 11. Continuous ridge vent - shingle-over style | 143.00 LF @ | 9.94 = | 1,421.42 |
| 12. R&R Valley metal | 139.00 LF @ | 7.82 = | 1,086.98 |
| IRC section R905.2.8.2, that said that for closed valleys, self adhering polymer-modify bitumen underlayment shall be permitted. IRC section R908.5 said that any flashing, edging, outlets, vents or similar devices that are part of the assembly shall be replaced where rusted, damaged or deteriorated. | | | |
| 13. R&R Drip edge | 484.05 LF @ | 3.96 = | 1,916.84 |
| The International Residential Code for drip edge states on section R905.2.8.5: A drip edge shall be provided at eaves and rake edges of shingle roofs. Adjacent segments of drip edge shall be overlapped not less than 2 inches. Drip edge shall be mechanically fastened to the roof deck at no more than 12 inches with fasteners as specified on R905.2.5. Underlayment shall be installed over drip edge along eaves and under drip edge along rake edges. A 5% is added to the perimeter measurements in order to comply with overlapping requirements. | | | |
| 14. R&R Flashing - pipe jack | 3.00 EA @ | 70.87 = | 212.61 |
| 15. R&R Furnace vent - rain cap and storm collar, 6" | 1.00 EA @ | 110.09 = | 110.09 |
| 16. Step flashing | 41.00 LF @ | 10.65 = | 436.65 |
| 17. R&R Flashing - L flashing - galvanized | 13.00 LF @ | 6.88 = | 89.44 |
| 18. Digital satellite system - Detach & reset | 1.00 EA @ | 130.48 = | 130.48 |
| 19. Digital satellite system - alignment and calibration only | 1.00 EA @ | 116.96 = | 116.96 |
| 20. Detach & Reset Gutter guard/screen - Premium grade | 227.00 LF @ | 15.16 = | 3,441.32 |
| 21. Residential Supervision / Project Management - per hour | 10.00 HR @ | 70.75 = | 707.50 |

SOTHY_HENG

9/15/2022          Page: 2

**CONTINUED - Roof**

| DESCRIPTION | QTY | UNIT PRICE | TOTAL |
|---|---|---|---|

This line item is for a superintendent to oversee the production of restorations, expedite possible change orders, unforseen damages, quality assurance inspections and to keep the restorations on a targeted completion date. They will be available to answer any questions of building inspectors, officials, and homeowner when questions arise. 8 hours per day.
Xactimate states : "This item is for a supervisor/project manager used to manage residential jobs where supervisor/project manager is needed to coordinate the work of subcontractors or perform project manager duties. Full time supervisor/project manager may be typical on larger residential projects where the number of subcontractors and trades justifies full time. Smaller jobs may warrant supervisor/project manager charges on an as-needed basis. Project manager may complete tasks such as , but not limited to, create/maintain project schedules, coordinate/meet trades, order materials, inspect job sites, obtain permits, meet with inspectors, etc."

| 22. Roofing - General Laborer - per hour | 20.00 HR @ | 42.03 = | 840.60 |
|---|---|---|---|

This is labor cost for loading roof with laddervator. Also two persons for 10hrs. per day keeping the project clean, to obey local building permitting requirements and OSHA regulation on site cleanliness and hazard free. This line item is for setup and teardown of tarps and wall protection for landscaping and hvac units.

**Main Level**
**Interior**

**Interior**

| DESCRIPTION | QTY | UNIT PRICE | TOTAL |
|---|---|---|---|
| 23. Residential Supervision / Project Management - per hour | 16.00 HR @ | 70.75 = | 1,132.00 |

Time for scheduling, ordering materials and supervising crews while interior work is performed. @ days, 8 hours per day.

| 24. Haul debris - per pickup truck load - including dump fees | 1.00 EA @ | 281.28 = | 281.28 |
|---|---|---|---|

**Kitchen**

| DESCRIPTION | QTY | UNIT PRICE | TOTAL |
|---|---|---|---|
| 25. Content Manipulation charge - per hour | 4.00 HR @ | 42.03 = | 168.12 |

Hourly labor rate for a general laborer. 2 People manipulating contents and resetting  after work. 2 hours per person for a total of 4 hours.

| 26. Floor protection - plastic and tape - 10 mil | 389.80 SF @ | 0.32 = | 124.74 |
|---|---|---|---|
| 27. Mask wall - plastic, paper, tape (per LF) | 88.17 LF @ | 1.63 = | 143.72 |
| 28. R&R Crown molding - 3 1/4" | 18.00 LF @ | 7.48 = | 134.64 |
| 29. R&R 5/8" drywall - hung, taped, with smooth wall finish | 20.00 SF @ | 5.14 = | 102.80 |
| 30. R&R Batt insulation - 10" - R30 - paper / foil faced | 20.00 SF @ | 2.90 = | 58.00 |
| 31. Drywall tape joint / repair - per LF | 8.00 LF @ | 9.74 = | 77.92 |
| 32. Seal/prime then paint the surface area (2 coats) | 48.00 SF @ | 1.00 = | 48.00 |
| 33. Paint trhe ceiling - one coat | 389.80 SF @ | 0.70 = | 272.86 |

SOTHY_HENG                                                                                              9/15/2022                      · Page: 3

**CONTINUED - Kitchen**

| DESCRIPTION | QTY | UNIT PRICE | TOTAL |
|---|---|---|---|
| 34. Mask and cover light fixture | 1.00 EA @ | 14.73 = | 14.73 |
| 35. Paint trim - one coat - crown moulding | 18.00 LF @ | 1.00 = | 18.00 |
| 36. Final cleaning - construction - Residential | 389.80 SF @ | 0.29 = | 113.04 |

Pantry

| DESCRIPTION | QTY | UNIT PRICE | TOTAL |
|---|---|---|---|
| 37. Content Manipulation charge - per hour @ men manipulating contents on | 2.00 HR @ | 42.03 = | 84.06 |
| 38. Shelving - wire (vinyl coated) - Detach & reset | 12.00 LF @ | 11.63 = | 139.56 |
| 39. Floor protection - plastic and tape - 10 mil | 6.00 SF @ | 0.32 = | 1.92 |
| 40. Mask wall - plastic, paper, tape (per LF) | 10.00 LF @ | 1.69 = | 16.90 |
| 41. Drywall patch / small repair, ready for paint | 1.00 EA @ | 95.26 = | 95.26 |
| 42. R&R Batt insulation - 10" - R30 - paper / foil faced | 8.00 SF @ | 2.13 = | 17.04 |
| 43. Seal the surface area w/PVA primer - one coat | 6.00 SF @ | 0.61 = | 3.66 |
| 44. Paint the surface area - one coat | 6.00 SF @ | 0.70 = | 4.20 |

Master bathroom

| DESCRIPTION | QTY | UNIT PRICE | TOTAL |
|---|---|---|---|
| *Following line items are for repairs in Master bathroom + toilet room.* | | | |
| 45. Contents - move out then reset | 1.00 EA @ | 61.68 = | 61.68 |
| 46. Floor protection - plastic and tape - 10 mil 181.83 main ceiling + 23.32 toilet room | 205.15 SF @ | 0.32 = | 65.65 |
| 47. Mask wall - plastic, paper, tape (per LF) | 67.65 LF @ | 1.63 = | 110.27 |
| 48. Mask and cover light fixture | 3.00 EA @ | 14.73 = | 44.19 |
| 49. Ceiling fan - Detach & reset | 1.00 EA @ | 203.74 = | 203.74 |
| 50. R&R 5/8" drywall - hung, taped, with smooth wall finish | 10.00 SF @ | 5.14 = | 51.40 |
| 51. Seal the surface area w/PVA primer - one coat | 10.00 SF @ | 0.61 = | 6.10 |
| 52. Seal the surface area w/oil based/hybrid stain blocker - one coat @ small areas by ac's registers, Each area 2x2 | 8.00 SF @ | 0.71 = | 5.68 |
| 53. Paint the surface area - one coat | 24.00 SF @ | 0.70 = | 16.80 |
| 54. Paint the ceiling - one coat | 205.15 SF @ | 0.70 = | 143.61 |
| 55. Final cleaning - construction - Residential | 210.00 SF @ | 0.29 = | 60.90 |

**CONTINUED - Master bathroom**

| DESCRIPTION | QTY | UNIT PRICE | TOTAL |
|---|---|---|---|

**Labor Minimums Applied**

| DESCRIPTION | QTY | UNIT PRICE | TOTAL |
|---|---|---|---|
| 56. Insulation labor minimum | 1.00 EA @ | 119.42 = | 119.42 |
| 57. Electrical labor minimum | 1.00 EA @ | 102.86 = | 102.86 |
| 58. Plaster labor minimum | 1.00 EA @ | 485.94 = | 485.94 |

## Summary

| | |
|---|---:|
| Line Item Total | 54,202.24 |
| Material Sales Tax | 970.58 |
| Subtotal | 55,172.82 |
| Overhead | 5,517.31 |
| Profit | 5,517.31 |
| **Replacement Cost Value** | **$66,207.44** |
| Less Deductible | (1,660.00) |
| **Net Claim** | **$64,547.44** |

Arturo Salgado

### Recap of Taxes, Overhead and Profit

| | Overhead (10%) | Profit (10%) | Material Sales Tax (9%) | Storage Rental Tax (9%) | Local Food Tax (5%) |
|---|---|---|---|---|---|
| Line Items | 5,517.31 | 5,517.31 | 970.58 | 0.00 | 0.00 |
| **Total** | **5,517.31** | **5,517.31** | **970.58** | **0.00** | **0.00** |

## Recap by Room

| | | |
|---|---:|---:|
| **Estimate: SOTHY_HENG** | | |
| Temporary Repairs | 1,250.00 | 2.31% |
| Roof | 48,421.55 | 89.33% |
| | | |
| **Area: Main Level** | | |
| | | |
| **Area: Interior** | 1,413.28 | 2.61% |
| Kitchen | 1,276.57 | 2.36% |
| Pantry | 362.60 | 0.67% |
| Master bathroom | 770.02 | 1.42% |
| | | |
| Area Subtotal: Interior | 3,822.47 | 7.05% |
| | | |
| Area Subtotal: Main Level | 3,822.47 | 7.05% |
| Labor Minimums Applied | 708.22 | 1.31% |
| | | |
| **Subtotal of Areas** | 54,202.24 | 100.00% |
| | | |
| **Total** | 54,202.24 | 100.00% |

## Recap by Category

| O&P Items | Total | % |
|---|---:|---:|
| CLEANING | 173.94 | 0.26% |
| CONTENT MANIPULATION | 313.86 | 0.47% |
| GENERAL DEMOLITION | 14,034.98 | 21.20% |
| DRYWALL | 551.67 | 0.83% |
| ELE | 102.86 | 0.16% |
| ELECTRICAL - SPECIAL SYSTEMS | 116.96 | 0.18% |
| FINISH CARPENTRY / TRIMWORK | 245.94 | 0.37% |
| HEAT,  VENT & AIR CONDITIONING | 76.83 | 0.12% |
| INSULATION | 174.62 | 0.26% |
| LABOR ONLY | 1,839.50 | 2.78% |
| LIGHT FIXTURES | 203.74 | 0.31% |
| INTERIOR LATH & PLASTER | 502.84 | 0.76% |
| PAINTING | 770.14 | 1.16% |
| ROOFING | 30,403.04 | 45.92% |
| SOFFIT, FASCIA, & GUTTER | 3,441.32 | 5.20% |
| TEMPORARY REPAIRS | 1,250.00 | 1.89% |
| O&P Items Subtotal | 54,202.24 | 81.87% |
| Material Sales Tax | 970.58 | 1.47% |
| Overhead | 5,517.31 | 8.33% |
| Profit | 5,517.31 | 8.33% |
| Total | 66,207.44 | 100.00% |

E-FILED IN OFFICE - JM
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
**22-A-10787-11**
**12/20/2022 1:00 PM**
TIANA P. GARNER, CLERK

## IN THE SUPERIOR COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| **SOTHY HENG,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION FILE NO.:** |
| | ) | |
| **STATE FARM FIRE AND CASUALTY** | ) | 22-A-10787-11 |
| **COMPANY,** | ) | |
| a foreign corporation, | ) | |
| | ) | |
| **Defendant.** | ) | |

### CERTIFICATE OF SERVICE

This is to certify that I have served the foregoing upon the Defendant State Farm Fire and Casualty Company by serving them with the *Summons, Complaint and Exhibits,* and *Plaintiff's First Set of Interrogatories and Request for Production of Documents* in accordance with the Court's rules to Defendant State Farm Fire and Casualty Company at the address listed below:

**Corporation Service Company**
**Registered Agent for Defendant State Farm Fire and Casualty Company**
**2 Sun Court, Suite 400**
**Peachtree Corners, GA 30092**

Respectfully submitted, this 20th day of December, 2022.

For: The Huggins Law Firm, LLC,

**The Huggins Law Firm, LLC**
110 Norcross Street
Roswell, GA 30075
(o) (770) 913-6229
(e) remington@lawhuggins.com
(e) fpeebles@lawhuggins.com

J. Remington Huggins, Esq.
Georgia Bar No.: 348736
Foster L. Peebles, Esq.
Georgia Bar No.: 410852
*Attorneys for the Plaintiff*

**IN THE SUPERIOR COURT OF GWINNETT COUNTY**
**STATE OF GEORGIA**

| | | |
|---|---|---|
| SOTHY HENG, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION FILE NO.:** |
| | ) | **22-A-10787-11** |
| STATE FARM FIRE AND CASUALTY | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS DIRECTED TO DEFENDANT

COMES NOW, Plaintiff, **Sothy Heng**, by and through the undersigned counsel, and hereby propounds the following First Set of Interrogatories and Request for Production of Documents to the Defendant, **State Farm Fire and Casualty Company**, to be answered separately and fully, in writing, under oath, and in accordance with the Georgia Civil Practice Act, O.C.G.A. §§ 9-11-33 and 9-11-34.

### GENERAL INSTRUCTIONS

1. You are required to answer and verify the following interrogatories and requests for production of documents within forty-five (45) days of the date of service.

2. Each paragraph below shall operate and be construed independently; and, unless otherwise indicated, no paragraph limits the scope of any other paragraph.

3. In answering these discovery requests, you are required to furnish all information available to You (not merely such information as you know of your own personal knowledge), including information in the possession of your attorneys and accountants, other persons directly or indirectly employed by or connected with you or your attorneys or accountants, or anyone else acting on your behalf or otherwise subject to your control.

Page | 1

4.  Your obligation to answer these discovery requests is intended to be continuing in nature; therefore, you are required by O.C.G.A. § 9-11-26 and instructed by the Plaintiff to reasonably & promptly amend or supplement your response if you learn that any prior response is in some material respect incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to Plaintiff during the discovery process or in writing.

5.  You are instructed that a failure by you to make, amend, or supplement a response in a timely manner or to otherwise comply with O.C.G.A. § 9-11-26 may result in sanctions against You.

6.  The singular includes the plural number, and vice versa. The masculine includes the feminine and neutral genders. The past tense includes the present tense where the clear meaning is distorted by a change of tense.

7.  Each document request shall be deemed to call for the production of the original document or documents. If the original is not available, then a copy shall be produced if it differs in any respect from the original or from other copies (e.g., by reason of handwritten, typed, or printed notes or comments having been added to the copy that do not appear on the original).

8.  If a request seeks a document that, to your knowledge, does not exist, please state that the document does not exist.

9.  Without interfering with the readability of a document, please identify by Bates number or other means the request(s) to which the document is responsive.

10. For each document responsive to any request that is withheld under a claim of privilege, you are required by Uniform Superior Court Rule 5.5 to provide a privilege log containing the following information:

    a.   The date the document was prepared or created;

    b.   The name and title of the author or authors of the document;

    a.   A summary of the subject matter of the document;

    b.   The identity of each person or persons (other than those giving solely stenographic or clerical assistance) who assisted the author or authors in creating the document;

    c.   The identity of each person to whom the document or the contents of the document have been communicated (either intentionally or inadvertently), the date(s) of such communication, the title of each such person, and the date of such communication;

    d.   A statement of the basis on which privilege is claimed; and

    e.   The identity and title, if any, of the person or persons providing the information requested in subsections (a) through (f) above.

## **DEFINITIONS**

As used in these interrogatories, the terms listed below are defined as follows:

1. "Document(s)" or "documentation" means any writing of any kind, including originals and all non-identical copies (whether different from the originals by reason of any notation made on such copies or otherwise), including without limitation correspondence, memoranda, notes, desk calendars, diaries, statistics, letters, telegrams, minutes, contracts, reports, studies, checks, invoices, statements, receipts, returns, warranties, guaranties, summaries, pamphlets, books, prospectuses, interoffice and intra-office communications, offers, notations of any sort of conversation, telephone calls, meetings or other

communications, bulletins, magazines, publications, printed matter, photographs, computer printouts, teletypes, faxes, invoices, worksheets and all drafts, alterations, modifications, changes and amendments of any of the foregoing, tapes, tape recordings, transcripts, graphic or aural records or representations of any kind, memorialized depictions of the Property or of Communications relating to the Claim, and electronic, mechanical or electric records or representations of any kind which You have knowledge or which are now or were formally in your actual or constructive possession, custody or control.

2. "Claim" or "Policyholder's Claim" shall refer to Claim No. 11-30M3-31X, which was drafted by the Insurance Company and issued to the Policyholder for direct physical loss or direct physical damage to the Property.

3. "Communication" shall mean and include any oral or written utterance, notation, or statement of any nature whatsoever, including but not limited to correspondence, personal conversation, telephone calls, dialogues, discussions, interviews, consultations, telegrams, telexes, cables, memoranda, agreements, notes, and oral, written, or other understandings or agreements. This shall include all written, recorded, or signed statements of any party, including the Policyholder, any adjuster, subcontractor, witnesses, investigators, or agents, representative, or employee of the parties concerning the subject matter of this action.

4. "Identify" shall mean:

    a. when used to refer to a document, means to state the following:

        1. The subject of the document;

        2. The title of the document;

        3. The type of document (e.g., letter, memorandum, telegram, chart);

4. The date of the document, or if the specific date thereof is unknown, the month and year or other best approximation of such date with reference to other events;

5. The identity of the person or persons who wrote, contributed to, prepared or originated such document; and

6. The present or last known location and custodian of the document.

b. when used in reference to a *person*, "identify" means to state to the fullest extent possible the person's name, present or last known address, present or last known telephone number(s), and, if a natural person, the person's employer and position of employment at the time(s) in question.

c. when used in reference to a *conversation* or *communication*, "identify" means to state the date and length of the communication, the identity of all parties to the communication, the identity of all other witnesses to the communication, the place where the communication took place (if the communication did not take place in person, set forth the location of each party to and each witness to the communication), and the general subject matter(s) of the communication.

d. when used in reference to a *claim*, "identify" means to state the date and location the claim arose, the location the claim was defended, the names of the parties involved, the case style, the amount in controversy, and the general nature of the claim.

e. "Relating to" any given subject means any document, communication, or statement that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with,

touches upon, or is in any manner whatsoever pertinent to that subject and supports, evidences, describes, mentions, refers to, contradicts or comprises the subject.

5. "Including" shall mean "including, but not limited to."

6. "And" and "or" shall be construed conjunctively or disjunctively as required by the context within the scope of a discovery request so as not to exclude any information that might be deemed outside the scope of the request or by any other construction.

7. "Person(s)" shall mean and include a natural person, firm, association, organization, partnership, business trust, corporation (public or private), or government entity.

8. "Parties" includes all named parties in this litigation and their agents, employees, servants, officers, and directors.

9. "Plaintiff" and "Policyholder" mean the above-captioned Plaintiff or the Policyholder listed on 81-G0-P898-7 and his/her/its employees, representative, agents, employees, servants, officers, and directors.

10. "Property" or "Insured Property" means the property located at 1010 Landmark Drive, McDonough, GA 30252.

11. "You," "Your," "Defendant," and "Insurance Company" means Defendant Insurance Company and its employees, representatives, agents, employees, servants, officers, directors, adjusters, branch claims representatives, regional or home office claims auditors or claims examiners, all claims managers and claims supervisors at any level, executive officers of the company, and all members of any review or claims committee, and each person presently or formerly acting or authorized to act on Defendant's behalf.

12. "Policy" means Policy No. 81-G0-P898-7 issued by State Farm Fire and Casualty Company.

13. "Broker" means an insurance broker, excess/surplus lines broker, licensed insurance agent, managing general agent, or other insurance intermediary involved in the purchase, sale, negotiation, or placement of the Policy.

14. "Coverage Letter(s)" means the correspondence from You to Policyholder dated anytime, regarding Your position as to coverage for the Loss.

15. "Loss" means the event on or around January 2, 2022, in which Policyholder suffered property damage and has consequently incurred extra expenses such as additional living expenses, business income losses, and other losses afforded coverage for under the Policy.

16. "Possession, custody or control" includes the joint or several possession, custody, or control not only by the person to whom these interrogatories are addressed, but also the joint or several possession, custody, or control by each or any other person acting, or purporting to act on behalf of, the Person, whether as an employee, attorney, accountant, agent, sponsor, spokesman, or otherwise.

## **INTERROGATORIES**

1.

Identify any and all Persons involved in any way whatsoever in the investigation, adjustment, and handling of Plaintiff's claim for insurance benefits arising from the Loss on or about January 2, 2022, and for each, please include his/her name, place of employment, address, and telephone number; his/her title, license(s), and certification(s); the date his/her involvement in this claim commenced; the date his/her involvement in this claim concluded; and a description his/her involvement in this claim.

This interrogatory seeks information about every individual involved in the Claim including, but not limited to, Persons employed by the Defendant or retained by Defendant through

a third-party entity. For Defendant's employees specifically, this Interrogatory seeks the name of every employee of Defendant who had anything to do with the Claim.

2.

If any Person identified in Your answer to Interrogatory No. 1 is or was Your employee, agent, or representative, please state whether said Person has been promoted, demoted, terminated, or transferred from January 2, 2022 to present; describe in detail the change in employment status of each such Person, including the circumstances of the Person's employment before and after the change in status; and provide the last-known residence address and telephone number or place of current employment of each such former employee.

3.

Describe each and every investigative step conducted by You, or by anyone on Your behalf, regarding Plaintiff's Claim, beginning with the date and method You received notice of the subject Claim, and identify any and all documents and correspondence (paper or electronic) generated, obtained, or otherwise placed in Your possession, in the course of Your investigation.

4.

Identify each and every person that You expect to call as an expert witness at trial, and for each, please state: the subject matter on which the expert is expected to testify; the substance of the facts and opinions to which the expert is expected to testify; a summary of the grounds for each opinion; the data or other information considered by the expert in forming their opinions; whether a written report has been prepared; and identify the data or other information considered by the expert in forming their opinions & all documents You furnished to the expert.

**5.**

If You have retained or employed an expert in conjunction with the Claim who is not expected to be called as a witness at trial, please identify said expert(s), and for each, please state their address and contact information.

**6.**

Please state the date and manner in which You received notice of the Claim; the date and manner in which You acknowledged receipt of the Claim; the date and manner in which You commenced investigation of the Claim; the date and manner in which You requested from the Plaintiff all items, statements, and forms that You reasonably believed, at the time, would be required from the Plaintiff; the date and manner in which You notified the Plaintiff in writing of the acceptance or rejection of the claim; and the date, amount, and reason for any insurance proceed payments You have made to the Plaintiff.

**7.**

Have You extended coverage for any part of Plaintiff's Claim for insurance benefits, or have You denied or rejected Plaintiff's Claim? If You extended coverage for any part of Plaintiff's Loss, please state with specificity the provisions, endorsements, or any other part of the Policy governing Plaintiff's Loss that supports Your extension of coverage; please state with specificity Your reasons for denying or rejecting any part of Plaintiff's Claim; and include all facts and policy provisions that supported Your decision to deny or reject Plaintiff's Claim. This Interrogatory seeks the above information even if coverage was extended for the Loss but fell below the Plaintiff's deductible.

**8.**

Do You contend the damage to the Property can be repaired?  If so, please state with specificity the method of repair Defendant contends should be used to repair the Property. This request seeks any and all building codes (state, county, city, or municipal), industry standards, and industry practices employed in the investigation, evaluation, and determination of methods used to repair damages caused by the Loss that Defendant states could be used to repair the Property. If such information exists, please state: the name(s), address(es), and telephone number(s) of all Persons who have personal knowledge of any of these industry standards or practices; and identify all documents that support or explain any of these building codes, engineering industry standards, and practices.

If You do not have an answer to this Interrogatory, please affirmatively state none of the above was relied upon in determining if the damage sustained to the Property by the Loss is or was repairable.

**9.**

Does the Policy owe for anything less than a proper repair of the damaged Property caused by a covered loss? If the Policy does not owe for a proper repair, please state with specificity the provision of the Policy which does not provide for a proper repair.

**10.**

Please identify any and all written policies, procedures, guidelines, or other documents (including document(s) maintained in physical or electronic form) You maintained for Your internal or third party adjusters to use in the state of Georgia in connection with adjusting Wind and Hail losses that were in effect on January 2, 2022 through present.

11.

Please state with specificity the approximate date and event which caused You to anticipate litigation with respect to Plaintiff's cause of action and identify all documents that support or explain any of these facts.

12.

Identify any and all documents (including those maintained electronically) relating to the investigation, claim handling, and adjustment of Wind and Hail claims in the state of Georgia that are routinely generated throughout the handling and investigation of such claims (including, but not limited to, Investigation Reports; reserve sheets; electronic claims diaries or similar record logs; claims review reports; and/or any team report relative to this claim) for the two years preceding January 2, 2022 to the present, and state whether any such documents were generated during the investigation and handling of the Claim.

13.

Have any documents (including those maintained electronically) relating to the Claim been destroyed, lost, or disposed of? If so, please identify what, when and why the document was destroyed, and describe Your document retention policy.

14.

Do You contend the Property was damaged by any excluded peril? If so, state the specific provision in the Policy supporting the exclusion and how the exclusion impacted Your claim decision, state in detail Your factual basis for this contention, and identify any documents supporting Your contention.

15.

Do You contend the Plaintiff failed to satisfy any condition, covenant, or duty of the Policy or otherwise breached the Policy? If so, identify each specific condition, covenant, or duty of the Policy You contend the Plaintiff failed to satisfy or breach, and identify all the documents relating to Your assertion and all Persons with knowledge of such facts.

16.

Identify the underwriting documents created or acquired in the formation of the Policy for the Property including any risk reports for the Property that have been generated or obtained at any time, and state if any Notice(s) of Cancellation or Notice(s) of Non-Renewal of the Policy have been issued.

17.

Identify any and all photographs, audio recordings, video recordings, written statements taken, or other memorializing documentation obtained during the course of Your investigation of the Claim. In Your response, please describe in detail what each document depicts or memorializes and state the date when each such document or memorialization was obtained or generated.

18.

Identify any and all repair estimates, invoices, quotes, receipts, or other documentation reflecting the cost or methodology to repair the damages at issue in this Claim, even if said item never left Your possession. In Your response, please describe in detail what each document depicts, when it was generated or obtained, why it was generated or obtained, and state the date when the item was created, received, or requested.

19.

Please identify each Person who assisted You in any way to provide responses to these Interrogatories. For each identified Person, please include the Person's name, place of employment, address, telephone number and relationship to you.

20.

State the good faith factual basis for Your Affirmative Defenses(s), and identify the date, type of document, author(s), recipient(s), and present custodian of every document known or believed by You to refer or relate in any way to the facts You contend support Your Affirmative Defense(s) and comprehensively describe all basis (factual and otherwise), documents, notes, memorandum, reports, or other documentation supporting Your responses to the paragraphs of Plaintiff's Complaint.

## REQUEST FOR PRODUCTION OF DOCUMENTS

1.

All documents responsive to Plaintiff's Interrogatories identified in Your responses to Plaintiff's Interrogatories or otherwise reviewed or relied upon in responding to Plaintiff's Interrogatories.

2.

The entire claim file, claims notes, or other similar records from the home, regional, or local offices; third party adjusters or adjusting firms; or ladder assist Persons retained by You regarding the Claim. This request includes, but it not limited to, copies of the file jackets; "field" files and notes; and drafts of documents contained in the file.

To the extent that this request seeks documents from third-party adjusters/adjusting firms, ladder assists, or other Persons retained by the Defendant, this request is only seeking such documents that have been provided to, or are in the control of, the Defendant.

3.

A certified copy of the Policy or insurance policies possessed by Defendant pertaining to the Property involved in this suit.

4.

All documents and tangible things supporting the method You contend could be used to properly repair the damages sustained to the Property as a result of the Loss.

5.

Your written procedures, policies, guidelines, or other similar documentation (including document(s) maintained in electronic form) that pertain to the handling of Wind and Hail claims in the state of Georgia for the year preceding January 2, 2022 to present.

6.

Any and all weather reports in Your possession which concern the Property, regardless of whether You relied upon them in making Your claims decision in this matter, for the two years preceding January 2, 2022 to present.

7.

The Operation Guides which relate to the handling of Wind and Hail claims in the state of Georgia in effect for the year preceding January 2, 2022 to present.

8.

The field notes, measurements, electronic diary, file materials, or other similar records (including all electronic and paper notes) created, obtained, or maintained by the claims personnel,

contractors, adjusters, engineers, or any other Person who physically inspected the Property or adjusted the Claim.

### 9.

The emails, instant messages, internal or external correspondence, or any other communication between Defendant and any agent, representative, employee, or other Person pertaining to the Claim.

### 10.

Defendant's internal newsletters, bulletins, publications, or other memoranda internally circulated which relates to the policies and procedures relied upon in the handling of Wind and Hail claims in the state of Georgia that were issued one year preceding January 2, 2022 through the present, including, but not limited to, memoranda issued to claims adjusters.

### 11.

The price guidelines, price indexes, or other similar information utilized in the creation of any repair estimates prepared, edited, requested, or relied upon by the Defendant. In the event published guidelines of "off the shelf" software (including, but not limited to, Xactimate software) were utilized to inform pricing decisions, You may respond by simply identifying the name, version, and/or edition of the published guidelines used.

### 12.

Any "Summary of Loss," "Pay sheet," "Payment Log," copy of issued payments, or other similar list or record of payments made by Defendant in relation to the Claim. This includes, but is not limited to, all payments issued to Plaintiff or Plaintiff's agents and representatives; all payments issued to independent adjusters, ladder assists, engineers, or other Persons retained in

Your adjustment of this claim; all copies of any and all checks issued; and all expenses incurred by You in Your adjustment of this claim.

13.

The documents reflecting reserves applied to the Claim.

14.

The contract or agreement between the Defendant and any third-party Person retained in the investigation and adjustment of the Claim. This request includes, but is not limited to, contracts or agreements with ladder assists, independent adjusters, contractors, engineers, meteorologists, or hygienists involved in any way throughout the Claim.

15.

All documents submitted to, or received from, each Person You expect to call as an expert witness at trial. This request includes, but is not limited to: any agreement exchanged or entered into between Defendant and the witness (including proposals not agreed upon and counteroffers to the same); all reports generated by the witness (including drafts); a current *curriculum vitae* for the witness; a list of all other publications authored by the witness; a list of all other cases in which the witness has testified as an expert at trial or by deposition; an invoice showing the compensation paid or owed to the witness; and all documents and tangible things consulted by and relied upon by the witness in forming his or her expert opinion.

16.

All documents submitted to, or received from, each Person Defendant hired or consulted as an expert witness which Defendant does not intend to call as an expert witness at trial in this case. This request includes, but is not limited to: any agreement exchanged or entered into between Defendant and the witness (including proposals not agreed upon and counteroffers to the same);

all reports generated by the witness (including drafts); a current *curriculum vitae* for the witness; a list of all other publications authored by the witness; a list of all other cases in which the witness has testified as an expert at trial or by deposition; an invoice showing the compensation paid or owed to the witness; and all documents and tangible things consulted by and relied upon by the witness in forming his or her expert opinion.

17.

All documents in Your possession concerning the underwriting of the Policy issued for the Property. This request includes, but is not limited to, any risk reports for the Property and any Notice(s) of Cancellation or Notice(s) of Non-Renewal of the Policy for the Property.

18.

All repair estimates, invoices, quotes, receipts, or other documentation Defendant reviewed throughout the adjustment of the Claim which reflect the cost to repair any agreed upon, contested, or suspected damages at issue in the Claim. This request is inclusive of documents not transmitted to the Plaintiff through the adjustment of the Claim.

19.

Any and all photographs, audio recordings, video recordings, written statements taken, or other memorializing documentation obtained during the course of Your investigation of the claim. This request seeks the requested documentation to be produced in a format most similar to the original, in the highest quality version available, and in a format which retains the original metadata.

20.

A copy of the license, registration, certification, or other similar documentation for all Persons retained, employed, or consulted by the Defendant to inspect the Property and/or adjust the Claim.

21.

All evidence You intend to introduce at the trial of this matter.

It is requested that the above-requested responses be made within forty-five (45) days of service of this request at the offices of The Huggins Law Firm, LLC, 110 Norcross Street, Roswell, GA 30075.

Dated, this this 20th day of December, 2022.

RESPECTFULLY SUBMITTED,

**The Huggins Law Firm, LLC**
110 Norcross Street
Roswell, GA 30075
(o) (770) 913-6229
(e) remington@lawhuggins.com
(e) fpeebles@lawhuggins.com

J. Remington Huggins, Esq.
Georgia Bar No.: 348736
Foster L. Peebles, Esq.
Georgia Bar No.: 410852
*Attorneys for the Plaintiff*

E-FILED IN OFFICE - JM
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
22-A-10787-11
12/20/2022 1:00 PM
TIANA P. GARNER, CLERK

## IN THE SUPERIOR COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| SOTHY HENG, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )    **CIVIL ACTION FILE NO.:** |
| | ) |
| **STATE FARM FIRE AND CASUALTY** | )    22-A-10787-11 |
| **COMPANY,** | ) |
| a foreign corporation, | ) |
| | ) |
| **Defendant.** | ) |

### CERTIFICATE OF SERVICE

This is to certify that I have served the foregoing upon the Defendant State Farm Fire and Casualty Company by serving them with the *Summons, Complaint and Exhibits*, and *Plaintiff's First Set of Interrogatories and Request for Production of Documents* in accordance with the Court's rules to Defendant State Farm Fire and Casualty Company at the address listed below:

**Corporation Service Company**
**Registered Agent for Defendant State Farm Fire and Casualty Company**
**2 Sun Court, Suite 400**
**Peachtree Corners, GA 30092**

Respectfully submitted, this 20th day of December, 2022.

For: The Huggins Law Firm, LLC,

**The Huggins Law Firm, LLC**
110 Norcross Street
Roswell, GA 30075
(o) (770) 913-6229
(e) remington@lawhuggins.com
(e) fpeebles@lawhuggins.com

J. Remington Huggins, Esq.
Georgia Bar No.: 348736
Foster L. Peebles, Esq.
Georgia Bar No.: 410852
*Attorneys for the Plaintiff*



# CSC

## Notice of Service of Process

**KSB / ALL**
**Transmittal Number: 26102655**
**Date Processed: 12/22/2022**

| | |
|---|---|
| **Primary Contact:** | State Farm Enterprise SOP<br>Corporation Service Company- Wilmington, DELAWARE<br>251 Little Falls Dr<br>Wilmington, DE 19808-1674 |

| | |
|---|---|
| **Entity:** | State Farm Fire and Casualty Company<br>Entity ID Number  3461650 |
| **Entity Served:** | State Farm Fire and Casualty Company |
| **Title of Action:** | Sothy Heng vs. State Farm Fire and Casualty Company |
| **Matter Name/ID:** | Sothy Heng vs. State Farm Fire and Casualty Company (13383724) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Gwinnett County Superior Court, GA |
| **Case/Reference No:** | 22-A-10787-11 |
| **Jurisdiction Served:** | Georgia |
| **Date Served on CSC:** | 12/22/2022 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| **Sender Information:** | The Huggins Law Firm, LLC<br>770-913-6229 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**
251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

SHERIFF'S ENTRY OF SERVICE

Civil Action No. _22-A-10787-11_____

|  | Superior Court | ☒ | Magistrate Court ☐ |
|---|---|---|---|
|  | State Court | ☐ | Probate Court ☐ |
|  | Juvenile Court | ☐ |  |

Date Filed _12/20/2022_____

Georgia, _Gwinnett_____ COUNTY

Sothy Heng

Attorney's Address

Huggins Law Firm, LLC

110 Norcross St.

Roswell, GA 30075

_____
Plaintiff

VS.

State Farm Fire and Casualty Company

Name and Address of Party to Served

State Farm Fire and Casualty Company

RA: Corporation Service Company

2 Sun Court, Suite 400, Peachtree Corners, 30092

_____
Defendant

_____
Garnishee

## SHERIFF'S ENTRY OF SERVICE

**PERSONAL**
I have this day served the defendant _____ personally with a copy
☐ of the within action and summons.

**NOTORIOUS**
I have this day served the defendant _____ by leaving a
copy of the action and summons at his most notorious place abode in this County.

☐ Delivered same into hands of _____ described as follows:
age, about _____ years; weight _____ pounds; height _____ feet and _____ inches, domiciled at the residence of
defendant.

**CORPORATION**
Served the defendant _State Farm Fire_   _of Casualty Company_____ a corporation
☐ by leaving a copy of the within action and summons with _Arlene Garcia_____
In charge of the office and place of doing business of said Corporation in this County.

**TACK & MAIL**
I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises
designated in said affidavit and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an
☐ envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice
to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST**
Diligent search made and defendant _____
☐ not to be found in the jurisdiction of this Court.

This _____ day of _____, 20_____

DEPUTY

CLERK'S | DEFENDANT'S | PLAINTIFF'S COPY

IN THE SUPERIOR COURT OF GWINNETT COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| SOTHY HENG, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | |
| | ) | FILE NO. 22-A-10787-11 |
| STATE FARM FIRE AND | ) | |
| CASUALTY COMPANY, | ) | |
| A foreign corporation, | ) | |
| | ) | |
|     Defendant. | ) | |

## ANSWER OF STATE FARM FIRE AND CASUALTY COMPANY

COMES NOW, State Farm Fire and Casualty Company (hereinafter "Defendant" or "State Farm") and hereby files this, its Answer and Affirmative Defenses to Plaintiff's Complaint, and shows this Court as follows:

### FIRST AFFIRMATIVE DEFENSE

Plaintiff's Complaint fails to state a claim against Defendant upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Defendant State Farm is not liable to Plaintiff for any cause of action, including for breach of contract, because Defendant State Farm at no time breached or otherwise violated any of the terms or conditions of the insurance policy between State Farm and Plaintiff. At all times, Defendant State Farm acted in accordance with its rights and obligations as set forth in the Policy.

## THIRD AFFIRMATIVE DEFENSE

To the extent Plaintiff's Complaint or prayer for relief seeks, or is construed as seeking, damages other than the contractual damages, such remedies are not available to the Plaintiff inasmuch as O.C.G.A. § 33-4-6 is the sole manner by which to recover extra-contractual damages, including attorney's fees, from an insurer in a first party dispute over payment of insurance benefits.

## FOURTH AFFIRMATIVE DEFENSE

To the extent Plaintiff's Complaint seeks or is construed as seeking, to recover bad faith penalties and attorney's fees under O.C.G.A. § 33-4-6 against State Farm, such remedies are not available to Plaintiff, as Plaintiff failed to satisfy the substantive and/or procedural requirements for making a claim for bad faith, as required under O.C.G.A. § 33-4-6.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff may not recover for any damage to real or personal property under the subject insurance policy and applicable Georgia law to the extent that the damages are excluded by the Policy.

## SIXTH AFFIRMATIVE DEFENSE

To the extent Plaintiff is entitled to any recovery under the Policy, which State Farm denies, Plaintiff's recovery is limited by the coverage limits and loss settlement provisions of the insurance Policy.

## SEVENTH AFFIRMATIVE DEFENSE

Even if Plaintiff was entitled to recover under the Complaint, which State Farm denies, Plaintiff is unable to recover the damages as set forth in the Complaint because this amount does not reflect the reasonable and necessary costs to repair the damage to the Property.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff may not recover from Defendant on the basis that Plaintiff failed to mitigate the damages in accordance with Georgia law.

## NINTH AFFIRMATIVE DEFENSE

To the extent that Plaintiff attempts to impose duties upon Defendant aside from those set forth in the insurance contract, Plaintiff fails in both fact and law. Georgia law does not impose extra-contractual duties on insurers when adjusting claims asserted by insureds. Moreover, at all times relevant hereto, State Farm acted in good faith and in accordance with the terms and conditions of the Policy.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff is barred from recovery on the basis of waiver and/or estoppel.

## ELEVENTH AFFIRMATIVE DEFENSE

To the extent Plaintiff seeks to recover pursuant to any alleged violation of Georgia's Unfair Settlement Practices Act, Plaintiff is legally prohibited from doing so as the Act does not create or imply any private cause of action. See O.C.G.A. § 33-6-37.

## TWELFTH AFFIRMATIVE DEFENSE

To the extent Plaintiff seeks to recover replacement cost benefits, Plaintiff has not satisfied the contractual requirements to recover these benefits pursuant to the terms of the Policy and applicable law.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff may not recover from Defendant because the Policy specifically excludes coverage for Plaintiff's claimed damages. Specifically, the Policy provides:

## SECTION I – LOSSES NOT INSURED

1. We will not pay for any loss to the property described in Coverage A that consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through m. below, regardless of whether the loss occurs abruptly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

. . .

g. wear, tear, decay, marring, scratching, deterioration, inherent vice, latent defect, or mechanical breakdown;

. . .

2. We will not pay for, under any part of this policy, any loss that would not have occurred in the absence of one or more of the following excluded

events. We will not pay for such loss regardless of. (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs abruptly or gradually, involves isolated or widespread damage, occurs on or off the residence premises, arises from any natural or external forces, or occurs as a result of any combination of these:

. . .

**d. Neglect**, meaning neglect of the insured to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered.

**h. Intentional Losses.** If any insured intentionally causes or procures a loss to property covered under this policy, we will not pay any insured for this loss. This applies regardless of whether the insured is charged with or convicted of a crime.

. . .

3. We will not pay for, under any part of this policy, any loss consisting of one or more of the items below. Further, we will not pay for any loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to, or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

a. conduct, act, failure to act, or decision of any person, group, organization, or governmental body whether intentional, wrongful, negligent, or without fault;

b. defect, weakness, inadequacy, fault, or unsoundness in:

    (1) planning, zoning, development, surveying, or siting;

    (2) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, or compaction;

(3) materials used in repair, construction, renovation, remodeling, grading, or compaction; or

(4) maintenance

Of any property (including land, structures, or improvements or any kind) whether on or off the residence premises; OR

c. weather conditions.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff is unable to recover for any damages that did not result from accidental direct physical loss as required by the policy. Specifically, the Policy provides:

## SECTION I – LOSSES INSURED

## COVERAGE A – DWELLING

We will pay for accidental direct physical loss to the property described in Coverage A, unless the loss is excluded or limited in SECTION I – LOSSES NOT INSURED or otherwise excluded or limited in the policy. However, loss does not include and we will not pay for, any diminution in value.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiff is unable to recover for any damages that occurred outside of the applicable policy period. Specifically, the Policy provides:

## SECTION I AND SECTION II – CONDITIONS

1. Policy Period. This policy applies only to loss under Section I or bodily injury or property damage under Section II that occurs during the period this policy is in effect.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiff may not maintain this action against Defendant because Plaintiff failed to satisfy the conditions precedent to bringing suit set forth in the insurance policy issued by Defendant to Plaintiff. Specifically, the policy provides:

### SECTION I – CONDITIONS

• • •

6. **Suit Against Us**. No action will be brought against us unless there has been full compliance with all of the policy provisions. Any action by any party must be started within one year after the date of loss or damage[.]

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiff may not maintain this action against Defendant because Plaintiff did not satisfy the duties after loss provisions in accordance with the policy requirements. Specifically, the Policy provides:

### SECTION I – CONDITIONS

• • •

2. **Your Duties After Loss**. After a loss to which this insurance may apply, you must cooperate with us in the investigation of the claim and also see that the following duties are performed:

    a. give immediate notice to us or our agent, and also notify:

        (1) the policy if the loss is caused by theft, vandalism, or any other criminal act and

        (2) the credit card company or bank if the loss involves a credit card or bank fund transfer card;

    b. protect the property from further damage or loss, and also:

    (1) make reasonable and necessary temporary repairs required to protect the property; and

    (2) keep an accurate record of repair expenses;

c. prepare an inventory of damaged or stolen personal property:

    (1) showing in detail the quantity, description, age, replacement cost, and amount of loss; and

    (2) attaching all bills, receipts, and related documents that substantiate the figures in the inventory;

d. as often as we reasonably require:

    (1) exhibit the damaged property;

    (2) provide us with any requested records and documents and allow us to make copies;

    (3) while not in the presence of any other insured:

        (a) give statements; and

        (b) submit to examinations under oath; and

    (4) produce employees, members of the insured's household, or others for examination under oath to the extent it is within the insured's power to do so; and

e. submit to us within 60 days after the loss, your signed, sworn proof of loss that sets forth, to the best of your knowledge and belief:

    (1) the time and cause of loss;

    (2) interest of the insured and all others in the property involved and all encumbrances on the property;

    (3) other insurance which may cover the loss;

    (4) changes in title or occupancy of the property during the terms of this policy;

    (5) specifications of any damaged building and detailed estimates for repair of the damage;

    (6) an inventory of damaged or stolen personal property described in 2.c.;

(7) receipts for additional living expenses incurred and records supporting the fair rental value loss; and

(8) evidence of affidavit supporting a claim under SECTION I – ADDITIONAL COVERAGES, Credit Card, Bank Fund Transfer Card, Forgery, and Counterfeit Money coverage, stating the amount and cause of loss.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Even if Plaintiff was entitled to recover benefits in this matter, which State Farm denies, Plaintiff is only able to recover benefits of the costs to repair or replace the damaged Property to the extent these costs of repair exceed the Policy Deductible. The Policy provides in pertinent part:

## DEDUCTIBLE

In case of loss under this policy, we will pay, subject to specified policy limits, only that part of the amount of the loss that exceeds the deductible amount shown in the Declarations. Deductibles will be applied per occurrence. Deductibles apply to specific losses as described in this policy.

## NINETEENTH AFFIRMATIVE DEFENSE

Plaintiff is unable to recover in this matter to the extent that Plaintiff has no insurable interest in the Property which is the subject of this Policy and the insurance claim as is required by the terms and provisions of the Policy and applicable Georgia law. Specifically, the Policy provides:

## SECTION I – CONDITIONS

**1. Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable:

a. to the insured for an amount greater than the insured's interest; or

b. for more than the applicable limit of liability.

## TWENTIETH AFFIRMATIVE DEFENSE

Defendant responds to the specific allegations of Plaintiff's Complaint as follows:

### PARTIES

1.

Upon information and belief, in response to Paragraph 1 of Plaintiff's Complaint, Defendant admits only that Plaintiff Sothy Heng resides in the State of Georgia. Defendant is without information necessary to respond to the remainder of the allegations contained in Paragraph 1 of Plaintiff's Complaint, and therefore denies all remaining allegations in Paragraph 1 of Plaintiff's Complaint.

2.

In response to the allegations contained in Paragraph 2 of Plaintiff's Complaint, Defendant admits only that it is a foreign insurance company, authorized to transact business in the State of Georgia, and in the business of selling insurance policies and that its registered agent is located at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 2 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that the insurance policy issued by Defendant provides unfettered and/or unrestricted insurance

coverage. All coverage provided is subject to the terms and provisions of the Policy and applicable Georgia law.

## JURISDICTION AND VENUE

### 3.

In response to the allegations contained in Paragraph 3 of Plaintiff's Complaint, Defendant admits only that the Superior Court of Gwinnett County has jurisdiction over this matter but denies all remaining allegations contained in Paragraph 3 of Plaintiff's Complaint, including, but not limited to, any allegations that the Superior Court of Gwinnett County is the only court having jurisdiction over this matter and any allegations that Defendant breached its contract with Plaintiff or otherwise acted in bad faith.

### 4.

In response to the allegations contained in Paragraph 4 of Plaintiff's Complaint, Defendant admits only that the Superior Court of Gwinnett County is a proper venue in which to bring this matter, but denies all remaining allegations contained in Paragraph 4 of Plaintiff's Complaint, including, but not limited to, any allegations that the Superior Court of Gwinnett County is the only venue in which this matter could be brought and any allegations that Defendant breached its contract with Plaintiff or otherwise acted in bad faith.

### 5.

In response to the allegations contained in Paragraph 5 of Plaintiff's Complaint, Defendant admits only that the terms and provisions of the Policy and applicable Georgia

law speak for themselves and denies all allegations contained in Paragraph 5 in direct contradiction thereto. Defendant denies that it has consented to jurisdiction and venue in this Court.

## THE POLICY

6.

In response to the allegations contained in Paragraph 6 of Plaintiff's Complaint, Defendant admits only that it issued Policy Number 81-G0-P898-7 (the "Policy") to Plaintiff. Defendant responds further that the terms and provisions of the Policy and applicable Georgia law speak for themselves and denies all allegations contained in Paragraph 6 in direct contradiction thereto. Defendant denies that Exhibit "A" is a complete copy of the Policy. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 6 of Plaintiff's Complaint are denied.

7.

In response to the allegations contained in Paragraph 7 of Plaintiff's Complaint, Defendant admits only that it issued the Policy to Plaintiff to provide specified coverage for the property located at 1010 Landmark Drive, McDonough, Georgia (the "Property"). Defendant responds further that the terms and provisions of the Policy and applicable Georgia law speak for themselves and denies all allegations contained in Paragraph 7 in direct contradiction thereto. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 7 of Plaintiff's Complaint are denied,

including, but not limited to, any allegations that the Policy provided unrestricted and/or unfettered insurance coverage, as all coverage under the Policy is subject to the terms and conditions of the Policy and applicable Georgia law.

8.

In response to the allegations contained in Paragraph 8 of Plaintiff's Complaint, Defendant admits only that the terms and provisions of the Policy and applicable Georgia law speak for themselves and denies all allegations contained in Paragraph 8 in direct contradiction thereto. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 8 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that the Policy provided unrestricted and/or unfettered insurance coverage, as all coverage provided under the Policy is subject to the terms and conditions of the Policy and applicable Georgia law.

9.

In response to the allegations contained in Paragraph 9 of Plaintiff's Complaint, Defendant admits only that the terms and provisions of the Policy and applicable Georgia law speak for themselves and denies all allegations contained in Paragraph 9 in contradiction thereto. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 9 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that the Policy provided unrestricted and/or unfettered insurance coverage, as all coverage provided under the Policy is subject to the terms and provisions of the Policy and applicable Georgia law.

## SUDDEN AND ACCIDENTAL DAMAGE TO THE INSURED PROPERTY

10.

In response to the allegations contained in Paragraph 10 of Plaintiff's Complaint, Defendant admits only that the coverage terms of the Policy originated on October 28, 2021, and that Plaintiff reported that the Property suffered damage from wind and hail on or about January 2, 2022. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 10 of Plaintiff's Complaint are denied.

11.

In response to the allegations contained in Paragraph 11 of Plaintiff's Complaint, Defendant admits only that the Plaintiff notified Defendant of the alleged wind and hail damage to the Property. Defendant admits further that Plaintiff made a claim pursuant to the Policy for the alleged wind and hail damage to the Property, and a State Farm Claim Representative was assigned to adjust the claim on behalf of State Farm. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 11 of Plaintiff's Complaint are denied.

12.

In response to the allegations contained in Paragraph 12 of Plaintiff's Complaint, Defendant admits only that Plaintiff permitted Defendant to inspect the Property and provided some of the documents requested by Defendant. Except as otherwise herein

14

admitted, all remaining allegations contained in Paragraph 12 of Plaintiff's Complaint are denied.

13.

In response to the allegations contained in Paragraph 13 of Plaintiff's Complaint, Defendant admits only that Plaintiff permitted Defendant to physically and virtually inspect the Property. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 13 of Plaintiff's Complaint are denied.

14.

In response to Paragraph 14 of Plaintiff's Complaint, Defendant admits only that Defendant conducted an inspection of the Property. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 14 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant owed Plaintiff any duties aside from those set forth by the terms and provisions of the insurance contract.

15.

In response to the allegations contained in Paragraph 15 of Plaintiff's Complaint, Defendant admits that the deductible under the Policy is $1,660.00 per occurrence. Defendant further admits that Exhibit "B" is a true and accurate copy of Defendant's estimate, which speaks for itself. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 15 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant undervalued the claim.

16.

In response to the allegations contained in Paragraph 16 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 16 in direct contravention thereto. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 16 of Plaintiff's Complaint are denied.

17.

In response to the allegations contained in Paragraph 17 of Plaintiff's Complaint, Defendant admits only that Plaintiff sent correspondence to Defendant dated September 21, 2022, which speaks for itself. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 17 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that the September 21, 2022 correspondence constituted a timely or valid demand for payment.

18.

In response to the allegations contained in Paragraph 18 of Plaintiff's Complaint, Defendant admits only that Plaintiff sent correspondence to Defendant dated September 21, 2022, which speaks for itself. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 18 of Plaintiff's Complaint are denied, including, but

not limited to, any allegations that the September 21, 2022, correspondence constituted a timely or valid demand for payment.

19.

All allegations contained in Paragraph 19 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant failed to issue payment for covered damages to the Property pursuant to the terms and provisions of the Policy and applicable Georgia law.

20.

In response to the allegations contained in Paragraph 20 of Plaintiff's Complaint, Defendant admits only that Plaintiff provided some information and documentation requested by State Farm during the adjustment of Plaintiff's claim as required under the terms and conditions of the Policy. Except as otherwise herein admitted, Defendant denies all remaining allegations contained in Paragraph 20 of Plaintiff's Complaint.

21.

In response to the allegations contained in Paragraph 21 of Plaintiff's Complaint, Defendant admits only that there is a dispute between Plaintiff and Defendant regarding whether the alleged damage to the Property was caused by a covered cause of loss on January 2, 2022. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 21 of Plaintiff's Complaint are denied.

22.

All allegations contained in Paragraph 22 of Plaintiff's Complaint are denied.

## COUNT I – BREACH OF CONTRACT

23.

To the extent a response is required to the allegations contained in Paragraph 23 of Plaintiff's Complaint, Defendant incorporates herein by reference its responses to Plaintiff's enumerated Paragraphs 1 through 22.

24.

In response to the allegations contained in Paragraph 24 of Plaintiff's Complaint, Defendant admits only that Plaintiff provided some information and documentation requested by State Farm during the adjustment of Plaintiff's claim as required under the terms and conditions of the Policy. Except as otherwise herein admitted, Defendant denies all remaining allegations contained in Paragraph 24 of Plaintiff's Complaint.

25.

In response to the allegations contained in Paragraph 25 of Plaintiff's Complaint, Defendant admits that the Policy speaks for itself and would afford coverage for certain losses subject to the Policy's terms and conditions and applicable Georgia law. All remaining allegations contained in Paragraph 25 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant failed to issue payment for

covered damages to the Property resulting from the January 2, 2022 loss, pursuant to the terms and provisions of the Policy and applicable Georgia law.

26.

All allegations contained in Paragraph 26 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant failed to issue payment for covered damages to the Property pursuant to the terms and provisions of the Policy and applicable Georgia law.

27.

All allegations contained in Paragraph 27 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant failed to conduct a proper claim investigation or that it failed to issue payment for covered damages to the Property pursuant to the terms and provisions of the Policy and applicable Georgia law.

28.

All allegations contained in Paragraph 28 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant failed to issue payment for covered damages to the Property pursuant to the terms and provisions of the Policy and applicable Georgia law.

29.

All allegations contained in Paragraph 29 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant failed to issue payment for

covered damages to the Property pursuant to the terms and provisions of the Policy and applicable Georgia law.

30.

Defendant denies all the allegations contained in Paragraph 30 of Plaintiff's Complaint.

31.

To the extent a response is required to the allegations contained in Paragraph 31 of Plaintiff's Complaint, Defendant denies the allegations contained in Paragraph 31 of Plaintiff's Complaint.

## **COUNT II: BAD FAITH PURSUANT TO O.C.G.A. § 33-4-6**

32.

To the extent a response is required to the allegations contained in Paragraph 32 of Plaintiff's Complaint, Defendant incorporates herein by reference its responses to Plaintiff's enumerated Paragraphs 1 through 31.

33.

All allegations contained in Paragraph 33 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant failed to conduct a proper claim investigation or that it failed to issue payment for covered damages to the Property

pursuant to the terms and provisions of the Policy and applicable Georgia law, or that Defendant owed any duty other than those set forth in the Policy.

34.

All allegations contained in Paragraph 34 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant failed to conduct a proper claim investigation or that it failed to issue payment for covered damages to the Property pursuant to the terms and provisions of the Policy and applicable Georgia law, or that Defendant owed any duty other than those set forth in the Policy.

35.

Defendant denies all allegations contained in Paragraph 34 of Plaintiff's Complaint, including those allegations set forth in subsections (1) through (8) contained therein, including but not limited to any allegation that Defendant owed any duty other than those set forth in the Policy.

36.

Defendant denies all allegations contained in Paragraph 36 of Plaintiff's Complaint.

37.

Defendant denies all allegations contained in Paragraph 37 of Plaintiff's Complaint.

38.

Defendant denies all allegations contained in Paragraph 38 of Plaintiff's Complaint.

39.

Defendant denies all allegations contained in Paragraph 39 of Plaintiff's Complaint.

40.

To the extent a response is required to the allegations contained in Paragraph 40 of Plaintiff's Complaint, Defendant denies the allegations contained in Paragraph 40 of Plaintiff's Complaint.

## DEMAND FOR JURY TRIAL

41.

To the extent a response is required to the allegations contained in Paragraph 41 of Plaintiff's Complaint, Defendant admits the allegations contained in Paragraph 41 of Plaintiff's Complaint.

## PRAYER FOR RELIEF

42.

Defendant denies all allegations contained in Plaintiff's Prayer for Relief, including those allegations set forth in subsections (a) through (i) contained therein.

43.

Except as otherwise herein admitted, Defendant denies all remaining allegations contained in Plaintiff's Complaint.

WHEREFORE, having fully answered, Defendant respectfully requests that this

Court:

(a) Deny Plaintiff's prayer for damages;

(b) Dismiss this action with prejudice and cast all costs upon Plaintiff; and

(c) Award Defendant any other relief that this Court deems just and equitable.

Respectfully submitted this 19th day of January, 2023.

SWIFT, CURRIE, McGHEE & HIERS, LLP

*/s/ Mark T. Dietrichs*
Mark T. Dietrichs
Georgia Bar No. 221722
Christopher Wood
Georgia Bar No. 272768
*Attorneys for Defendant State Farm Fire and*
*Casualty Company*

1420 Peachtree Street, NE, Suite 800
Atlanta, GA   30309
Tel:    (404) 874-8800
Fax:    (404) 888-6199
mark.dietrichs@swiftcurrie.com
christopher.wood@swiftcurrie.com

23

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have electronically filed the foregoing **ANSWER OF STATE FARM FIRE AND CASUALTY COMPANY** with the Clerk of Court using the Odyssey e-filing system, which will automatically send e-mail notification and service of such filing to counsel of record follows:

J. Remington Huggins
Foster L. Peebles
THE HUGGINS LAW FIRM, LLC
110 Norcross Street
Roswell, GA 30075
remington@lawhuggins.com
fpeebles@lawhuggins.com
*Attorneys for Plaintiff*

This 19th day of January, 2023.

SWIFT, CURRIE, McGHEE & HIERS, LLP

*/s/ Mark T. Dietrichs*

Mark T. Dietrichs
Georgia Bar No. 221722
Christopher Wood
Georgia Bar No. 272768
*Attorneys for Defendant State Farm Fire and Casualty Company*

1420 Peachtree Street, NE, Suite 800
Atlanta, GA   30309
Tel:    (404) 874-8800
Fax:    (404) 888-6199
mark.dietrichs@swiftcurrie.com
christopher.wood@swiftcurrie.com

4877-7897-9915, v. 3

IN THE SUPERIOR COURT OF GWINNETT COUNTY

STATE OF GEORGIA

| | | |
|---|---|---|
| SOTHY HENG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | |
| | ) | FILE NO. 22-A-10787-11 |
| STATE FARM FIRE AND | ) | |
| CASUALTY COMPANY, | ) | |
| A foreign corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## NOTICE OF FILING REMOVAL

TO:   J. Remington Huggins
      Foster L. Peebles
      THE HUGGINS LAW FIRM, LLC
      110 Norcross Street
      Roswell, GA 30075
      remington@lawhuggins.com
      fpeebles@lawhuggins.com

Please take notice that STATE FARM FIRE AND CASUALTY COMPANY, Defendant in the above-styled action, has on this date filed its Notice of Removal, a copy of which is attached hereto, in the Office of the Clerk of the United States District Court for the Northern District of Georgia, Atlanta Division.

Respectfully submitted this 19th day of January, 2023.

SWIFT, CURRIE, McGHEE & HIERS, LLP

*/s/ Mark T. Dietrichs*
Mark T. Dietrichs
Georgia Bar No. 221722

Christopher Wood
Georgia Bar No. 272768
*Attorneys for Defendant State Farm Fire and*
*Casualty Company*

1420 Peachtree Street, NE
Suite 800
Atlanta, GA   30309
Tel:    (404) 874-8800
Fax:    (404) 888-6199
mark.dietrichs@swiftcurrie.com
christopher.wood@swiftcurrie.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that I electronically filed the foregoing **NOTICE OF FILING REMOVAL** with the Clerk of Court using the Odyssey e-filing system, which will automatically send e-mail notification and service of such filing to counsel of record follows:

J. Remington Huggins
Foster L. Peebles
THE HUGGINS LAW FIRM, LLC
110 Norcross Street
Roswell, GA 30075
remington@lawhuggins.com
fpeebles@lawhuggins.com
*Attorneys for Plaintiff*

This 19th day of January, 2023.

SWIFT, CURRIE, McGHEE & HIERS, LLP

*/s/ Mark T. Dietrichs*
Mark T. Dietrichs
Georgia Bar No. 221722
Christopher Wood
Georgia Bar No. 272768
*Attorneys for Defendant State Farm Fire and Casualty Company*

1420 Peachtree Street, NE
Suite 800
Atlanta, GA   30309
Tel:    (404) 874-8800
Fax:    (404) 888-6199
mark.dietrichs@swiftcurrie.com
christopher.wood@swiftcurrie.com

4886-4471-0475, v. 2

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| SOTHY HENG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | FILE NO. _____ |
| | ) | |
| STATE FARM FIRE AND | ) | [On removal from the Superior Court |
| CASUALTY COMPANY, | ) | of Gwinnett County, Civil Action File |
| A foreign corporation, | ) | No. 22-A-10787-11] |
| | ) | |
| Defendant. | ) | |

## NOTICE OF REMOVAL

Comes now, STATE FARM FIRE AND CASUALTY COMPANY (hereinafter "State Farm"), by and through its undersigned counsel, and hereby files this Notice of Removal, respectfully showing this Honorable Court as follows:

1.

On December 20, 2022, Plaintiff SOTHY HENG (the "Plaintiff"), by and through counsel, filed a Complaint against State Farm in the Superior Court of Gwinnett County, Georgia, styled as *SOTHY HENG v. STATE FARM FIRE AND CASUALTY COMPANY*, assigned Case No. 22-A-10787-11 (the "Superior Court Action"). True and correct copies of all process, pleadings, and orders served upon

this defendant to date in the Superior Court Action are collectively attached hereto as **Exhibit "A."**

2.

The Complaint and Summons in this action were served upon State Farm on December 22, 2022, the date on which State Farm first received the Complaint and notice of this lawsuit. Thus, removal is timely under 28 U.S.C. § 1446(b).

3.

The United States District Court for the Northern District of Georgia, Atlanta Division, embraces Gwinnett County, Georgia. Removal to this Court is therefore proper under 28 U.S.C. § 1441(a).

4.

Pursuant to 28 U.S.C. § 1446(d), promptly after the filing of this Notice of Removal, State Farm will give written notice to the Plaintiffs by notifying their attorney of record, Foster L. Peebles, Esq., of The Huggins Law Firm, LLC, and will file a copy of this Notice of Removal with the Clerk of Superior Court of Gwinnett County, which shall effect the removal.

## DIVERSITY JURISDICTION

5.

The United States District Court for the Northern District of Georgia, Atlanta Division, possesses diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

6.

Upon information and belief, the Plaintiff SOTHY HENG was previously a resident of McDonough, Georgia and remains a resident of Georgia.  Thus, the Plaintiff is a citizen of the State of Georgia.

7.

State Farm is a corporation organized under the laws of the State of Illinois, with its principal place of business in the State of Illinois. Thus, State Farm is a citizen of the State of Illinois.

8.

Because Plaintiff and State Farm are citizens of different States, complete diversity exists between Plaintiff and State Farm in accordance with 28 U.S.C. § 1332(a)(1).

9.

In Plaintiff's Complaint, Plaintiff seeks damages in the amount of $66,207.44. *See* Complaint, Paragraph 17. Plaintiff seeks further bad faith damages in the "amount of fifty percent (50%) of the total compensatory damages awarded or $5,00.00, whichever is greater[.]" *See* Complaint, Prayer for Relief. Plaintiff seeks further unspecified damages against State Farm, asking to recover "[a]ny and all multipliers" and "[a]ny and all other relief that the Court may deem just and proper[.]" *See* Complaint, Prayer for Relief. Accordingly, the amount in controversy, $99,311.16, exceeds $75,000.00, exclusive of interest and costs, as required by 28 U.S.C. § 1332(a).

10.

Venue is proper in this Court for purposes of removal under 28 U.S.C. § 1441(a), but not necessarily for purposes of 28 U.S.C. § 1391 or any other applicable venue provision. By filing this Notice of Removal, State Farm does not waive any of its jurisdictional objections or affirmative defenses.

WHEREFORE, State Farm prays that this action proceed in this Court as an action properly removed pursuant to 28 U.S.C. § 1446, and that no further proceedings be had in said case in the Superior Court of Gwinnett County, Georgia.

This 19th day of January, 2023.

                                  SWIFT, CURRIE, McGHEE & HIERS, LLP

                                  */s/ Mark T. Dietrichs*

                                  Mark T. Dietrichs

                                  Georgia Bar No. 221722

                                  *Attorney for Defendant State Farm Fire and Casualty Company*

1420 Peachtree Street, NE, Suite 800
Atlanta, GA   30309
Tel:   (404) 874-8800
Fax:   (404) 888-6199
mark.dietrichs@swiftcurrie.com

## <u>CERTIFICATE OF SERVICE</u>

I have this day electronically filed the foregoing **NOTICE OF REMOVAL**

with the Clerk of Court using the CM/ECF System.  The clerk will serve opposing

counsel as follows:

J. Remington Huggins
Foster L. Peebles
THE HUGGINS LAW FIRM, LLC
110 Norcross Street, Roswell, GA 30075
remington@lawhuggins.com
fpeebles@lawhuggins.com
*Attorneys for Plaintiff*

This 19th day of January, 2023.

SWIFT, CURRIE, McGHEE & HIERS, LLP

*/s/ Mark T. Dietrichs*
Mark T. Dietrichs
Georgia Bar No. 221722
*Attorney for Defendant State Farm Fire and Casualty Company*

1420 Peachtree Street, NE, Suite 800
Atlanta, GA   30309
Tel:   (404) 874-8800
Fax:   (404) 888-6199
mark.dietrichs@swiftcurrie.com

4876-2169-3771, v. 3