# EXHIBIT A

### <u>COMPLAINT</u>
**with Service of Process**

**Gwinnett Superior Court CAFN 22-A-10800-5**



null / ALL
**Transmittal Number: 26104414**
**Date Processed: 12/23/2022**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | SOP Team nwsop@nationwide.com<br>Nationwide Mutual Insurance Company<br>Three Nationwide Plaza<br>Columbus, OH 43215-2410 |
| **Electronic copy provided to:** | Ashley Roberts |
| **Entity:** | Crestbrook Insurance Company<br>Entity ID Number  3286201 |
| **Entity Served:** | Crestbrook Insurance Company |
| **Title of Action:** | Kevin A. Teston and Berkeley Teston vs. Crestbrook Insurance Company |
| **Matter Name/ID:** | Kevin A. Teston and Berkeley Teston vs. Crestbrook Insurance Company (13385200) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Gwinnett County Superior Court, GA |
| **Case/Reference No:** | 22-A-10800-5 |
| **Jurisdiction Served:** | Georgia |
| **Date Served on CSC:** | 12/22/2022 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | The Huggins Law Firm, LLC<br>Not Shown |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

SHERIFF'S ENTRY OF SERVICE

Civil Action No. _22-A-10800-5_____

| | |
|---|---|
| Superior Court ☒ | Magistrate Court ☐ |
| State Court ☐ | Probate Court ☐ |
| Juvenile Court ☐ | |

Date Filed _12/20/2022_____

Georgia, _Gwinnett_____ COUNTY

_Kevin A. Teston and Berkeley Teston_____

Attorney's Address

_Huggins Law Firm, LLC_____

_____ Plaintiff

_110 Norcross St._____

VS.

_Roswell, GA 30075_____

Name and Address of Party to Served

_Crestbrook Insurance Company_____

_Crestbrook Insurance Company_____

_____ Defendant

_RA: Corporation Service Company_____

_2 Sun Court, Suite 400, Peachtree Corners, GA 30092_

_____ Garnishee

## SHERIFF'S ENTRY OF SERVICE

**PERSONAL**

☐ I have this day served the defendant _____ personally with a copy of the within action and summons.

**NOTORIOUS**

I have this day served the defendant _____ by leaving a copy of the action and summons at his most notorious place abode in this County.

☐ Delivered same into hands of _____ described as follows: age, about _____ years; weight _____ pounds; height _____ feet and _____ inches, domiciled at the residence of defendant.

**CORPORATION**

☒ Served the defendant _Crestbrook Insurance Company_ a corporation by leaving a copy of the within action and summons with _N. Smith_ In charge of the office and place of doing business of said Corporation in this County.

**TACK & MAIL**

☐ I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST**

☐ Diligent search made and defendant _____ not to be found in the jurisdiction of this Court.

This _20_ day of _December_, 20_22_.

DEPUTY

_____

**CLERK'S | DEFENDANT'S | PLAINTIFF'S COPY**

E-FILED IN OFFICE - CE
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
22-A-10800-5
12/20/2022 4:23 PM
TIANA P. GARNER, CLERK

## IN THE SUPERIOR COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

**Kevin A. Teston** and **Berkeley Teston**
512 Regent Place
Augusta, GA 30909

**PLAINTIFFS**          **CIVIL ACTION NUMBER:** _____

22-A-10800-5

**VS**

**Crestbrook Insurance Company**
**RA: Corporation Service Company**
2 Sun Court, Suite 400
Peachtree Corners, GA 30092

**DEFENDANT**

---

## SUMMONS

---

**TO THE ABOVE-NAMED DEFENDANT**:

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiffs' attorney, whose name and address is:

**J. Remington Huggins**
**Attorney For the Plaintiffs**
THE HUGGINS LAW FIRM, LLC
**110 Norcross Street**
**Roswell, GA 30075**
**770-913-6229**
remington@lawhuggins.com

an Answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This _____ day of _____, 2022.

20th day of December, 2022

Tiana P. Garner,
Clerk of Superior Court

BY: _____
Deputy Clerk

E-FILED IN OFFICE - CE
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
22-A-10800-5
12/20/2022 4:23 PM
TIANA P. GARNER, CLERK

## IN THE SUPERIOR COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| **KEVIN A. TESTON AND** | ) | |
| **BERKELEY TESTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION FILE NO.:** |
| | ) | _____ 22-A-10800-5 |
| **CRESTBROOK INSURANCE COMPANY,** | ) | |
| **a foreign corporation,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

### COMPLAINT

**COMES NOW** Plaintiffs **Kevin A. Teston and Berkeley Teston**, by and through the undersigned counsel, and files this Complaint for breach of first party property insurance contract and bad faith denial of insurance coverage against Defendant, **Crestbrook Insurance Company**, and in support hereof, states as follows:

### PARTIES

1.

Plaintiff is an adult resident citizen of Richmond County, Georgia.

2.

Upon information and belief, Defendant is a foreign insurance company, registered to transact business in, and in fact transacts business in, the State of Georgia. Defendant is in the business of insuring risks and properties located throughout the United States, including Georgia. Defendant maintains an office at 2 Sun Court, Suite 400, Peachtree Corners, GA 30092 where it may be served with process through its registered agent, Corporation Service Company, as identified by the state of Georgia Secretary of State registry.

## JURISDICTION AND VENUE

3.

This Court has subject matter jurisdiction over this action for breach of contract and bad faith denial of an insurance claim because the breached contract was entered into, and concerned property in, the state of Georgia and the amount in controversy exceeds $15,000.00. This Court has personal jurisdiction over Defendant because Defendant is transacting business and insuring properties in the state of Georgia and has appointed a registered agent for service of process in Georgia pursuant to O.C.G.A. § 33-4-1 and O.C.G.A. § 33-4-4.

4.

Venue is proper in this Court because Defendant has a registered agent doing business in Gwinnett County pursuant to O.C.G.A. § 33-4-1, O.C.G.A. § 33-4-4.

5.

In addition, by virtue of the express terms of the insurance policy at issue, Defendant has consented to jurisdiction and venue of this Court.

## THE POLICY

6.

Prior to March 16, 2022, and in consideration of the premiums paid to Defendant by the Plaintiffs, Defendant issued a policy with Policy No. HO00233883 (the "Policy"). A true and accurate copy of the Policy is attached hereto as Exhibit "A."

7.

The Policy provides numerous coverages for the real and personal property located at 512 Regent Place, Augusta, GA 30909 (the "Insured Property," "Property," or the "home"). The Policy

2

likewise insures against loss due to Hail and Wind, subject to a deductible of 5,000 per occurrence. (*See* Ex. A).

8.

The Policy is an all-perils policy providing coverage for sudden and accidental direct physical loss to the dwelling, other structures, and personal property. The Policy covers property repairs and personal property on a full replacement cost basis. (*See* Ex. A).

9.

The Policy covers various types of expenses, including reasonable and necessary costs incurred for temporary repairs to protect covered property from further imminent covered loss and additional living expenses. (*See* Ex. A).

## SUDDEN AND ACCIDENTAL DAMAGE TO THE INSURED PROPERTY

10.

On or about March 16, 2022, the above-referenced property suffered damage from a sudden and accidental direct physical Loss resulting from Hail and Wind (the "Loss"). The Policy was in effect at the time of the Loss.

11.

Plaintiffs promptly and timely notified Defendant of the damage to the Property resulting from the Loss and made a claim pursuant to the Policy. As a result, Defendant assigned an adjuster ("Adjuster") to investigate Plaintiffs' claim for sudden and accidental direct physical loss. The Adjuster was authorized as Defendant's representative and agent for purposes of the claim.

3

12.

At all times, Plaintiffs made themselves and the Property available to, and fully cooperated with, the Defendant and its representative and agent to inspect and investigate the damages caused by the loss.

13.

Defendant, through its authorized representative and agent, Adjuster, performed a site inspection of the Property.

14.

Defendant's authorized representative and agent, Adjuster, incurred the duty of acting with due diligence in achieving a proper disposition of the Plaintiffs' claim when Adjuster undertook the handling of the claim.

15.

Defendant, through its authorized representative and agent, Adjuster, grossly underestimated the scope of loss suffered by the Plaintiffs as a result of the Hail and Wind event. Defendant failed to properly indemnify the Plaintiffs and estimated Plaintiffs' total loss to be . Plaintiffs' deductible is 5,000 per occurrence, and Defendant withheld   in recoverable depreciation; thus, after deductions for depreciation and Plaintiffs' deductible, Defendant claims Plaintiffs were due   as indemnification under the Policy. A true and accurate copy of the Defendant's estimate is attached hereto as Exhibit "B."

16.

As a result of Defendant's gross underestimation, Plaintiffs requested multiple times that Defendant reconsider its position regarding Defendant's estimate. Defendant refused to comply with the Plaintiffs' requests and continued to frivolously and baselessly deny any additional

4

payment on Plaintiffs' claim. Furthermore, the Defendant continued to ignore the opinions of the Plaintiffs' experts as to the extent of damage and the amount it will cost the Plaintiffs' to be properly indemnified for the Loss.

17.

Plaintiffs made repeated requests for payment of the claim, including a written demand sent to Defendant on August 16, 2022. A true and accurate copy of the written demand is attached hereto as Exhibit "C." Despite this demand for $124,339.86 less previous payments and the applicable deductible, Defendant continued to frivolously deny Plaintiffs' claim without just cause when, under one or more portions of the Policy, the obligation to settle the claim became reasonably clear.

18.

The Plaintiffs' August 16, 2022, correspondence (Ex. C) to Defendant was a letter of representation from Plaintiff's counsel and a formal 60-Day demand, pursuant to the guidelines set forth in O.C.G.A. §33-4-6. After putting Defendant on notice of a potential lawsuit through the formal 60-Day demand, the Defendant continued to deny Plaintiffs' claim without just cause.

19.

Defendant did not act fairly or honestly toward the Plaintiffs, or with due regard to the Plaintiffs' claim and interests, when Defendant, under all circumstances articulated herein, failed to indemnify the Plaintiffs for their damages in direct breach of the terms and conditions of the Policy.

20.

Plaintiffs have fulfilled all conditions precedent and contractual obligations under the Policy prior to this lawsuit, or the same were waived.

21.

There exists a genuine, justifiable controversy between the Plaintiffs and the Defendant as to whether Defendant is responsible for further indemnification owed to the Plaintiffs as a result of the Loss. Plaintiff has exhausted every reasonable means possible to resolve this dispute with the Defendant. With no other option, Plaintiffs were constrained to hire legal counsel, incur additional expenses, and file this lawsuit.

22.

Plaintiffs have suffered loss under the Policy in an amount to be determined at trial.

## COUNT I: BREACH OF CONTRACT

23.

Plaintiffs hereby adopt, re-allege, and incorporate their allegations set forth in Paragraphs 1-22 of this Complaint as if fully set forth herein.

24.

Plaintiffs have performed all conditions precedent to the Defendant's obligation to perform under the Policy including, without limitation, the timely payment of premiums, timely notice of the claim, and post loss obligations, or the Defendant has waived any and all other conditions.

25.

Under the terms of the Policy, Defendant is required to fully indemnify the Plaintiffs for the damages sustained from the Loss.

26.

Despite Plaintiffs' timely written demand, Defendant failed to provide full indemnification to the Plaintiffs under the terms of the Policy.

6

27.

Defendant failed to act in good faith and fair dealing under the terms of the Policy by refusing to properly investigate and fully indemnify the Plaintiffs according to the terms of the Policy.

28.

As a result of the Defendant's denying and delaying payment in Plaintiffs' claim, Plaintiffs sustained additional covered losses from mitigation and temporary repairs of the direct physical damage to the Property in an amount to be determined at trial.

29.

The Plaintiffs suffered damages as a direct result of Defendant's failure to indemnify the Plaintiffs for their loss.

30.

All foregoing conduct constitutes a breach of contract that has resulted in damages to the Plaintiffs.

31.

**WHEREFORE,** Plaintiffs pray for this Court to enter an award in Plaintiffs' favor of compensatory damages, attorneys' fees, pre- and post-judgment interest, and such other and further relief as the Court may deem just and proper.

## COUNT II: BAD FAITH PURSUANT TO O.C.G.A. § 33-4-6

32.

Plaintiffs hereby adopt, re-allege, and incorporate their allegations set forth in Paragraphs 1-32 of this Complaint as if fully set forth herein.

7

Case 1:23-mi-99999-UNA   Document 202-1   Filed 01/20/23   Page 12 of 70

33.

By failing to achieve a proper disposition of Plaintiffs' claim, Defendant acted frivolously, and without a reasonable basis or justification, in contravention of its duty of good faith and fair dealing.

34.

Defendant did not attempt in good faith to settle the Plaintiffs' claim when it could have, and should have, done so under all attendant circumstances had it acted fairly and honestly toward the Plaintiffs and with due regard for the Plaintiffs' interests.

35.

Defendant's failures to adjust Plaintiffs' claim in good faith include, but are not limited to:

(1) Knowingly misrepresenting to claimants, and insureds, relevant facts or policy provisions relating to coverages at issue (*see* O.C.G.A. § 33-6-34(1));

(2) Failing to acknowledge with reasonable promptness pertinent communications with respect to claims arising under its policies (*see* O.C.G.A. § 33-6-34(2));

(3) Failing to adopt and implement procedures for the prompt investigation and settlement of claims arising under its policies (*see* O.C.G.A. § 33-6-34(3));

(4) Not attempting in good faith to effectuate prompt, fair, and equitable settlement of claims submitted in which liability has become reasonable clear (*see* O.C.G.A. § 33-6-34(4));

(5) Compelling insureds or beneficiaries to institute suits to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in suits brought by them (*see* O.C.G.A. § 33-6-34(5));

8

(6) Refusing to pay claims without conducting a reasonable investigation (*see* O.C.G.A. § 33-6-34(6));

(7) When requested by the insured in writing, failing to affirm or deny coverage of claims within a reasonable time after having completed its investigation related to such claim or claims (*see* O.C.G.A. § 33-6-34(7)); and

(8) When requested by the insured in writing, failing in the case of payments or offers of compromise to provide promptly a reasonable and accurate explanation of the basis for such action (or, in the case of claims denials, providing said denial to the insured in writing) (*see* O.C.G.A. § 33-6-34(10)).

36.

The above and foregoing actions of Defendant constitute bad faith pursuant to O.C.G.A. § 33-4-6, as the Defendant refused to pay Plaintiffs' covered loss within sixty (60) days after Plaintiffs' timely written demand (Ex. C) for payment without a reasonable basis for doing so.

37.

Defendant frivolously, and without a reasonable basis, denied proper indemnification to the Plaintiffs for their covered loss.

38.

Defendant's refusal to indemnify the Plaintiffs was done frivolously, without a reasonable basis, and in bad faith.

39.

As a result of Defendant's above-referenced bad faith breach of the Policy issued to the Plaintiff, and pursuant to O.C.G.A. § 33-4-6(a), Defendant is liable for penalties in the amount of "not more than fifty percent (50%) of the liability of the insurer for the loss, or $5,000.00,

9

whichever is greater, and all reasonable attorneys' fees for the prosecution of the action against the Insurer."

40.

**WHEREFORE,** Plaintiffs pray for this Court to enter an award, in Plaintiffs' favor, of the statutory award in an amount of fifty percent (50%) of the total compensatory damages awarded or $5,000.00, whichever is greater, along with a statutory allowance for reasonable attorneys' fees in prosecuting this action, pursuant to O.C.G.A. § 33-4-6, for Defendant's unfair claims settlement practices and bad faith refusal to pay Plaintiffs' loss claim when it could and should have done so, had it acted fairly and reasonably toward the insured.

**DEMAND FOR JURY TRIAL**

41.

Plaintiffs request a trial by Jury on all counts of the Complaint.

**PRAYER FOR RELIEF**

42.

**WHEREFORE,** Plaintiffs request that after due proceedings are had, all appropriate penalties be assessed against the Defendant and that the Plaintiffs receive any and all damages at law to which they are justly entitled, and thus prays for judgment against the Defendant, as follows:

a. That this Court grant judgment in favor of the Plaintiffs and against Defendant in an amount to be determined at trial for breach of insurance contract.

b. Compensatory damages, including all damages to the Plaintiffs by the Defendant and any resulting expenses.

10

c.  Bad faith damages in an amount of fifty percent (50%) of the total compensatory damages awarded or $5,000.00, whichever is greater, for Defendant's bad faith delay, denial, and its intentional, frivolous failure to conduct a reasonable investigation of the Plaintiffs' claim without a reasonable basis;

d.  Plaintiffs' attorneys' fees and costs of suit in this action;

e.  Plaintiffs' consultant and expert fees;

f.  Pre- and post-judgment interest in the maximum amount allowed by law;

g.  All statutory penalties;

h.  Any and all applicable multipliers; and,

i.  Any and all other relief that the Court may deem just and proper, whether such relief sounds in law or equity.

Dated, this 20th day of December, 2022.

RESPECTFULLY SUBMITTED,

**The Huggins Law Firm, LLC**
110 Norcross Street
Roswell, GA 30075
(o) (770) 913-6229
(e) remington@lawhuggins.com
(e) mdturner@lawhuggins.com

J. Remington Huggins, Esq.
Georgia Bar No.: 348736
Michael D. Turner, Esq.
Georgia Bar No.: 216414
*Attorneys for the Plaintiff*

# EXHIBIT A



Private Client

# Personal Homeowners Renewal Policy

Prepared For: Kevin A Teston and Berkeley Teston

Date: 03/30/2022

Agency Name: Burns & Wilcox, LTD. - Atlanta, GA

Agency Phone Number: (770) 650-7511

03/30/2022

**Dear Kevin A Teston and Berkeley Teston,**

Thank you for your continued confidence in Nationwide® Private Client and Burns & Wilcox, LTD. - Atlanta, GA to service your insurance needs.

We are pleased to present you with your personalized renewal policy. We designed this policy to protect your assets and provide you peace of mind. With Nationwide Private Client, you also benefit from the stability of Nationwide, a Fortune 100 company with superior credit ratings.

When you acquire new possessions or your assets change, please advise your insurance agent so we can ensure your exposures are properly protected.

In the event of a loss, we deliver on our promise with claims service that's available 24/7, 365 days a year at 1-855-473-6410 or via email at PrivateClient@nationwide.com.

If you have any questions about your policy or if you would like to know if you qualify for any additional credits or discounts, please contact your agent.

For online access to pay your bills or view your coverage, account information or proof of insurance documentation, visit nationwideprivateclient.com and select "Pay Your Bill."

We appreciate the opportunity to be your carrier of choice and will continue to work hard to protect what is important to you.

Regards,

Paul VanDenBosch
President, Nationwide Private Client

Insurance overview is for informational purposes only and does not replace or modify the definitions and information contained in individual insurance policies or declaration pages, which are controlling. Terms and availability vary by state and exclusions apply. Products underwritten by Nationwide Mutual Insurance Company and Affiliates, Columbus, OH. Nationwide Private Client, Nationwide, the Nationwide N and Eagle, and Nationwide is on your side and are service marks of Nationwide Mutual Insurance Company. © 2015 Nationwide. PVO-0113MO (04/15)

**Nationwide**
is on your side

**Private Client**

**Your Renewal Policy Declaration**
**Personal Home Policy**
Policy Number: HO00233883-02
Policy Period: 05/14/2022 to 05/14/2023
**Date Prepared: 03/30/2022**

**Policyholder (Named Insured)**

**Kevin A Teston and Berkeley Teston**
**512 Regent Pl**
**Augusta, GA 30909-3113**

**Agency Name / Agency Code**

**Burns & Wilcox, LTD. - Atlanta, GA /**
**GA000101**
**6 Concourse Pkwy Ste 3100**
**Atlanta, GA 30328-5353**
**Phone: (770) 650-7511**

**Mortgagee**

**Specialized Loan Services LLC**
**ISAOA**
**PO BOX 620188**
**Atlanta, GA 30362-2188**
**Number:50500000000089741000**

**General Policy Information**

**Issued: 03/30/2022**
These Declarations are a part of the policy named above and identified by the policy number above. They supersede any Declarations issued earlier. Your **Policy** will provide the insurance described in this policy in return for the premium and compliance with all applicable policy provisions. See policy for details regarding the other coverages and additional coverage options.

**Policy Period From 05/14/2022 To 05/14/2023** but only if the required premium for this period has been paid and only for annual renewal periods if premiums are paid as required. Each period begins and ends at 12:01 A.M. standard time at the Residence Premises.

**Residence Premises:**

**512 Regent Pl**
**Augusta, GA 30909-3113**

**How You saved on this Policy with Nationwide Private Client**

Protective Devices Discount
Gated Community Discount
Multiple Policy Discount

Underwritten by Crestbrook Insurance Company

P1501 (11-15)
Page 1



Private Client

**Your Renewal Policy Declaration**
**Personal Home Policy**
Policy Number: HO00233883-02
Policy Period: 05/14/2022 to 05/14/2023

## Changes Made to Your Policy

Building Limit Changed From $1,152,000 to $1,330,560
Contents Limit Changed From $803,400 to $928,400
Coverage added: Service Line Coverage
Loss History details changed
Other Structures Limit Changed From $80,400 to $116,100

---

| Section I | Limits Of Liability | Deductible: $5,000 All Peril |
|---|---|---|

**Property Coverages**

| | Limits Of Liability | |
|---|---|---|
| Coverage A - Dwelling | $1,330,560 | |
| Coverage B - Other Structures | $116,100 | |
| Coverage C - Personal Property | $928,400 | |
| Coverage D - Loss of Use | Reasonable Amount of Time to Restore. | |

---

| Section II Liability Coverages | Limits Of Liability |
|---|---|
| Coverage E - Personal Liability | $500,000 |
| Coverage F - Medical Payments to Others | $25,000 |

---

**Other Coverages / Options / Endorsements Applicable**

| | Coverage Limits | Premium |
|---|---|---|
| Crestbrook Protection with Earthquake | | $228.63 |
| Biological Deterioration Clean Up | $10,000 | Included |
| Credit Card, EFT Card, Access Device, Forgery Coverage | $10,000 | Included |
| Earthquake And Volcanic Eruption | Coverage C Only - Deductible 10% | Included |
| Equipment Breakdown Enhancement | $100,000 | Included |
| Service Line Coverage Deductible $1,000 | $2,500 | Included |
| Extended Dwelling Replacement Cost | | Included |

Underwritten by Crestbrook Insurance Company



**Private Client**

**Your Renewal Policy Declaration**
**Personal Home Policy**
Policy Number: HO00233883-02
Policy Period: 05/14/2022 to 05/14/2023

| | | |
|---|---|---|
| Fire Department Service Charge | $1,000 | Included |
| Loss Assessment - Sec I | $50,000 | Included |
| Ordinance or Law | | Included |
| Identity Theft or Identity Fraud Expenses | $25,000 | Included |
| Loss Assessment - Sec II | $50,000 | Included |

**Premium Summary**

| | |
|---|---|
| Policy Premium | $2,373.03 |
| Other Coverages / Options / Endorsements Premium | $228.63 |
| **Total Policy Premium:** | **$2,601.66** |

**FORMS AND ENDORSEMENTS MADE PART OF POLICY**

G8000 01/13 Privacy statement - Crestbrook
G8206 08/20 Important Insurance Information
P1405 05/16 Homeowner Policy
G8001 07/18 Signature Page
P8042GA 04/16 Home Protection Endorsement
P8010 11/15 Identity Theft or Identity Fraud Expenses Coverage
P8013GA 11/19 Georgia Amendatory Endorsement
P8096GA 04/16 Optional Hurricane Deductible
P8097GA 04/16 Limited Coverage for Fungi, Wet or Dry Rot, or Bacteri
P8041 03/16 Equipment Breakdown Enhancement Endorsement
P8112 08/20 Service Line Coverage

**Issued By:**   **Nationwide Private Client**
Home Office: One Nationwide Plaza • Columbus, Ohio 43215
Administrative Office: 18700 North Hayden Road • Scottsdale, Arizona 85255
A stock company wholly owned by Nationwide Mutual Insurance Company

Underwritten by Crestbrook Insurance Company



Agent Copy

**Private Client**

**Your Renewal Policy Declaration**
**Personal Home Policy**
Policy Number: HO00233883-02
Policy Period: 05/14/2022 to 05/14/2023

**How to Contact Us**
Your Agent
24-Hours claims Reporting 855-473-6410

Underwritten by Crestbrook Insurance Company

P1501 (11-15)
Page 4



Agent Copy

**Private Client**

IMPORTANT INSURANCE INFORMATION – CHANGES TO YOUR POLICY

Thank you for choosing Nationwide® Private Client to help you protect what is important to you. Please read this notice carefully. Enclosed with this notice is your renewal policy which replaces your current policy.

This notice is **not** part of your insurance policy and is only intended to provide guidance on understanding the terms of the insurance policy. No coverage is provided by this notice, nor can it be construed to replace any provisions of your policy, which prevails and controls. We encourage you to read your entire policy, and to review your Declarations for complete information on the coverages you are provided.

If there are any discrepancies between the policy and this notice, **THE PROVISIONS OF THE POLICY GOVERN.**

**What's changing**

Please be aware that effective upon your renewal, endorsement P8112 (08-20) Service Line Coverage, has been added to your policy.

**For help when you need it**

We appreciate your business and look forward to continuing to serve you. If you have any questions, or would like to discuss your coverage options, please contact your Nationwide Private Client agent or broker. The agent or broker contact information can be found in the Declarations.

**Nationwide Private Client**
P.O. Box 4110 ● Scottsdale, AZ 85261-4110
18700 N. Hayden Rd. ● Scottsdale, AZ 85255
Phone: 855-473-6410

G8206 (08-20)



**Private Client**

## PRIVACY STATEMENT

**Thank you for choosing Crestbrook**

Our privacy statement explains how we collect, use, share, and protect your personal information. So just how do we protect your privacy? In a nutshell, we respect your right to privacy and promise to treat your personal information responsibly. It's as simple as that. Here's how.

**Confidentiality and security**

We follow all data security laws. We protect your information by using physical, technical, and procedural safeguards. We limit access to your information to those who need it to do their jobs. Our business partners are legally bound to use your information for permissible purposes.

**Collecting and using your personal information**

We collect information about you when you ask about or buy one of our products or services. The information comes from your application, business transactions with us, consumer reports, and publicly available sources. Please know that we only use that information to sell, service, or market products to you.

We may collect the following types of information:

- Name, address, and Social Security number
- Assets and income
- Property address and value
- Account and policy information
- Credit reports and other consumer report information
- Family member and beneficiary information
- Public information

**Sharing your information for business purposes**

We share your information with other Nationwide companies and business partners. When you buy a product, we may share your personal information for everyday business purposes. Some examples include mailing your statements or processing transactions that you request. You cannot opt out of these. We also share your information with your agent or producer. They use your personal information to manage your policy or account. We may also share your personal information as federal and state law requires.

**Sharing your information for marketing purposes**

We don't sell your information to anyone—period. We may share your personal information with Nationwide companies or business partners to market products to you. We have joint marketing agreements with our business partners. This means that we have partnered with them to offer you a product that might interest you. They may use your personal information to market their products. If you would like to learn more about opting out, please read the next section.

**Opting Out**

You can ask us not to share your personal information with the Nationwide family of companies listed below or our business partners to market products to you. Just remember, Nationwide offers many different types of products and services. If you would like to learn about these products from one of our companies, you may not want to opt out. You can opt out of sharing with other Nationwide affiliates and sharing with third parties.

To opt out of sharing for marketing purposes, please call us toll free at 1-866-280-1809. You may opt out at any time and your request will take effect in thirty (30) days. An opt out request from one joint customer will apply to all joint customers on the policy or account. If you have already opted out, you don't need to opt out again because your request will never expire.

We will not share the personal information of Vermont customers with the Nationwide family of companies or third parties for marketing purposes without your consent.

**Using your medical information**

We sometimes collect medical information. We may use this medical information for a product or service you're interested in, to pay a claim, or to provide a service. We may share this medical information for these business purposes if required or permitted by law. But we won't use it for marketing purposes unless you give us permission.

**Accessing your information**

You can always ask us for a copy of your personal information. Please send your privacy inquiry to the address below and have your signature notarized. This is for your protection so we may prove your identity. We don't charge a fee for giving you a copy of your information now, but we may charge a small fee in the future.

You can change your personal information at MyNationwide.com or by calling your agent. But we can't update information that other companies, like credit agencies, provide to us. So you'll need to contact these other companies to change and correct your information.

Send your privacy inquiries to the address below. Please include your name, address, and policy number. If you know it, include your agent's name and number.

Nationwide Insurance
Attn: Customer Relations—Privacy
One Nationwide Plaza, 3-04-101
Columbus, OH 43215

**A parting word...**

These are our privacy practices. They apply to all current, joint, and former clients of Nationwide Mutual Insurance Company, Nationwide Agents, and the affiliates and subsidiaries that offer auto, home, property, life insurance, banking services, and investments. This includes the following companies:

Nationwide Mutual Insurance Company
Nationwide Mutual Fire Insurance Company
Nationwide Property and Casualty Insurance Company Nationwide General Insurance Company
Nationwide Insurance Company of America Nationwide Affinity Insurance Company of America
Nationwide Agribusiness Insurance Company Nationwide Sales Solutions, Inc.
Nationwide Insurance Company of Florida
Nationwide Lloyds
Nationwide Assurance Company Nationwide Securities, LLC Nationwide Life Insurance Company
Nationwide Bank
Nationwide Advantage Mortgage Company
Titan Holdings, Inc.
Colonial County Mutual Insurance Company
Insurance Intermediaries, Inc. Crestbrook Insurance Company

CRESTBROOK INSURANCE COMPANY                                        PERSONAL HOMEOWNERS

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SERVICE LINE COVERAGE

---

Coverage is subject to all terms and conditions of the policy, except as changed by this endorsement.

The following additional coverage is added to the Section I - Property Coverages section of your Policy.

**COVERAGE AGREEMENT**

We will provide the insurance described in this endorsement in compliance with all applicable provisions (including but not limited to Conditions, Definitions and Exclusions) of your Policy. Coverage provided under this endorsement does not increase any limit of liability in your Policy.

**DEFINITIONS**

With respect to the coverage provided by this endorsement, the following definitions are added:

1. **Covered service line**

   a. "**Covered service line**" means exterior underground piping and wiring, including permanent connections, valves or attached devices providing one of the following services to your **residence premises**:

      (1) Communications, including cable transmission, data transmission, internet access and telecommunications;

      (2) Compressed air;

      (3) Drainage;

      (4) Electrical power;

      (5) Heating, including geothermal, natural gas, propane and steam;

      (6) Waste disposal; or

      (7) Water.

   b. A **covered service line** must be owned by you or you must be responsible for its repair or replacement as required by law, regulation or service agreement. Should repair or replacement be your responsibility, a **covered service line** ends at the precise location where your responsibility for such repair or replacement ends. However, in no event will a **covered service line** extend beyond the point of connection to the main service or utility line.

   c. **Covered service line** does not include:

      (1) Piping or wiring that is not connected and ready for use;

      (2) That part of piping or wiring that runs through or under a body of water, including but not limited to a swimming pool, pond or lake; or

      (3) That part of piping or wiring that runs through or under the dwelling or other structure. However, this clause c.(3) shall not apply to piping or wiring that runs under:

         (a) A driveway or walkway; or

         (b) A structure, such as a deck, not immediately above a foundation and raised sufficiently from the ground that such piping or wiring can be accessed without damaging or dismantling any structure.

2. "**Earth movement**" means:

   a. Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

   b. Landslide, mudslide or mudflow;

   c. Tsunami or volcanic action; or

   d. Any other naturally occurring earth movement including earth sinking, rising or shifting.

© 2018, The Hartford Steam Boiler Inspection and Insurance Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CRESTBROOK INSURANCE COMPANY

PERSONAL HOMEOWNERS

3. **"One service line failure"** means: If an initial **service line failure** causes other **service line failures,** all will be considered **one service line failure.** All **service line failures** that are the result of the same event will be considered **one service line failure.**

4. **"Service line failure"** means a leak, break, tear, rupture, collapse or electrical arcing of a **covered service line** not otherwise excluded by this endorsement. A **service line failure** may be caused by, but is not limited to, the following perils:

   a. Wear and tear, marring, deterioration or hidden decay;

   b. Rust or other corrosion;

   c. Mechanical breakdown, latent defect or inherent vice;

   d. Weight of vehicles, equipment, animals or people;

   e. Vermin, insects, rodents or other animals;

   f. Artificially generated electrical current;

   g. Freezing or frost heave;

   h. External force from a shovel, backhoe or other form of excavation; or

   i. Tree or other root invasion.

   **Service line failure** does not include blockage or low pressure of a **covered service line** when there is no physical damage to the **covered service line.**

**PROPERTY COVERAGES**

The following coverages are added, subject to the Service Line Coverage limit of liability shown in the Declarations unless otherwise specified below:

1. **Damage to Covered Service Line**

   We will pay for physical loss or damage to your **covered service line** that is the direct result of a **service line failure.**

2. **Excavation Costs**

   With respect to your **covered service line** that is damaged as the result of a **service line failure,** we will pay the necessary and reasonable excavation costs that are required to repair or replace the damaged **covered service line.**

3. **Expediting Expenses**

   With respect to your **covered service line** that is damaged as the result of a **service line failure,** we will pay the reasonable extra cost to:

   a. Make temporary repairs; and

   b. Expedite permanent repairs or permanent replacement.

4. **Loss of Use**

   Coverage for Additional Living Expense and Fair Rental Value, as described under Coverage D— Loss of Use, is extended to the coverage provided by this endorsement.

5. **Outdoor Property**

   We will pay for your outdoor property, including but not limited to trees, shrubs, plants, lawns, walkways and driveways, that is damaged as a result of a **service line failure** or that is damaged during the excavation of your **covered service line** following a **service line failure.**

**EXCLUSIONS**

The following exclusions are added:

1. We will not pay for loss or damage to:

© 2018, The Hartford Steam Boiler Inspection and Insurance Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CRESTBROOK INSURANCE COMPANY                                    PERSONAL HOMEOWNERS

   a. Septic systems, including leach fields, septic tanks, pumps, motors or piping that runs from the septic tank to the leach fields, other than loss or damage to covered waste disposal piping running from your dwelling or other structure to a septic tank;

   b. Water wells, including well pumps or motors;

   c. Heating and cooling systems, including heat pumps; or

   d. Sprinkler system pumps, motors, or heads.

2. We will not pay for loss or damage to a **covered service line** that is damaged while it is being installed, dismantled or repaired. However, this exclusion shall not apply if a covered **service line failure** necessitated such installation, dismantling or repair.

3. We will not pay to clean up or remove pollutants, hazardous waste or sewage.

4. We will not pay under this endorsement for loss or damage caused by or resulting from any of the following causes of loss:

   a. Fire; or water or other means used to extinguish a fire;

   b. Explosion;

   c. Lightning; windstorm or hail; smoke; aircraft, riot or civil commotion; theft; breakage of glass;

   d. Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not; or water that backs up or overflows from a sewer, drain or sump; or

   e. **Earth movement,** except for **earth movement** that results from the ground thawing after a freeze.

5. We will not pay additional costs incurred for loss or increased usage of water, natural gas, propane or any other service caused by or resulting from a **service line failure.**

**CONDITIONS**

The following conditions are added:

1. **Limit of Liability**

   The limit of liability under this endorsement is dependent upon the age of your dwelling located on the **residence premises** shown in the Declarations.

   The most we will pay for loss, damage or expense arising from any **one service line failure** is:

   a. The limit of liability shown in the Declarations for all damaged **covered service lines** if your dwelling is less than 50 years old; or

   b. $2,500 per damaged **covered service line** if your dwelling is 50 years old or older. However, if the damaged **covered service line** was newly installed or replaced in its entirety within 50 years of the **service line failure,** the limit shown in a. above will apply.

   The maximum limit per occurrence under this endorsement is the limit of liability shown in the Declarations regardless of whether a single **covered service line** or multiple **covered service lines** are damaged by **one service line failure.**

2. **Deductible**

   We will pay only the part of the total payable loss that exceeds $1000, subject to the applicable limit. No other deductible applies to this coverage.

3. **Environmental, Safety and Efficiency Improvements**

   If a **covered service line** requires replacement due to a **service line failure,** we will pay your additional cost to replace with materials that are better for the environment, safer for people, or more energy or water efficient than the materials being replaced.

© 2018, The Hartford Steam Boiler Inspection and Insurance Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CRESTBROOK INSURANCE COMPANY                                    PERSONAL HOMEOWNERS

     However, we will not pay to increase the size or capacity of the materials and we will not pay more than 150% of what the cost would have been to replace with like kind and quality. This condition does not increase the limit of liability that applies to this endorsement.

4. **Loss Settlement**

    Losses under this endorsement will be settled as follows:

    a. Our payment for damaged covered property will be the smallest of:

        (1) The applicable limit of liability;

        (2) The cost to repair the damaged property;

        (3) The cost to replace the damaged property with like kind, quality and capacity on the same **residence premises**; or

        (4) The necessary amount actually spent to repair or replace the damaged property.

    b. Except as described in Environmental, Safety and Efficiency Improvements above, you are responsible for the extra cost of replacing damaged property with property of a better kind or quality or a different size or capacity.

    c. You are responsible for the extra cost to alter or relocate **covered service lines,** unless such alteration or relocation is required by law or ordinance.

This endorsement applies as stated in the policy Declarations.

© 2018, The Hartford Steam Boiler Inspection and Insurance Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

# EXHIBIT B



**Nationwide®**

**Private Client**

Underwritten by Crestbrook Insurance Company
Amanda Jeckell, CIFR
Private Client Claims Specialist II
8877 N. Gainey Center Dr.
Scottsdale, AZ 85259
C 816-606-7254 / F 844-230-2557
jeckea1@nationwide.com

| | | | |
|---|---|---|---|
| Insured: | Kevin A Teston and Berkeley Teston | Home: | (678) 834-9088 |
| Property: | 512 Regent Pl | | |
| | Augusta, GA 30909 | | |
| Home: | 512 Regent Pl | | |
| | Augusta, GA 30909 | | |

| | | | |
|---|---|---|---|
| Claim Rep.: | Amanda Jeckell | Business: | (816) 606-7254 |
| Business: | 8877 N. Gainey Center Drive | E-mail: | jeckea1@nationwide.com |
| | Scottsdale, AZ 85258 | | |

| | | | |
|---|---|---|---|
| Estimator: | Amanda Jeckell | Business: | (816) 606-7254 |
| Business: | 8877 N. Gainey Center Drive | E-mail: | jeckea1@nationwide.com |
| | Scottsdale, AZ 85258 | | |

**Claim Number:** CLM-00112143        **Policy Number:** HO00233883        **Type of Loss:** HAIL

| | | | |
|---|---|---|---|
| Date Contacted: | 3/30/2022 11:48 AM | | |
| Date of Loss: | 3/16/2022 2:00 AM | Date Received: | 3/30/2022 4:41 PM |
| Date Inspected: | | Date Entered: | 3/30/2022 4:45 PM |
| Date Est. Completed: | 4/18/2022 10:07 AM | | |

| | |
|---|---|
| Price List: | GAAU8X_MAR22 |
| | Restoration/Service/Remodel |
| Estimate: | KEVIN_A_TESTON_AND_1 |



**Nationwide®**

**Private Client**

Underwritten by Crestbrook Insurance Company
Amanda Jeckell, CIFR
Private Client Claims Specialist II
8877 N. Gainey Center Dr.
Scottsdale, AZ 85259
C 816-606-7254 / F 844-230-2557
jeckea1@nationwide.com

Dear Valued Customer,

Please refer to the attached itemized estimate. The estimate contains our valuation of the damages for the reported loss and was prepared using usual and customary prices for your geographic area. If this is a supplemental or updated estimate and your policy includes replacement cost coverage, please refer to our communication regarding how to make a claim for any additional eligible payment.

Please note that if your mortgage company is included on your claim payment check, contact the mortgage company to discuss how to handle the proceeds of this payment.

If you choose to hire a contractor or vendor to make repairs, please provide this estimate to them. If you, your contractor, or vendor determine that there are additional building fees and/or permits associated with the estimated repairs that are not included in this estimate, please contact me immediately so that I may review and make a determination as to the appropriate payment.

If you discover any additional damage to your property, please immediately contact me, either personally or through your contractor/vendor. We may need to re-inspect your property before authorization of supplemental payment. Please do not destroy or discard any of the damaged items until we have had an opportunity to inspect the damages and have reached an agreement with you on any supplemental cost.

Nationwide may also request to re-inspect your property, at your convenience, as part of our commitment to quality and customer service.

Thank you for allowing Private Client to serve your insurance needs. Please contact me at the numbers listed above if you have any questions regarding this estimate or any other matter pertaining to your claim.



**Private Client**

Underwritten by Crestbrook Insurance Company
Amanda Jeckell, CIFR
Private Client Claims Specialist II
8877 N. Gainey Center Dr.
Scottsdale, AZ 85259
C 816-606-7254 / F 844-230-2557
jeckea1@nationwide.com

**Nationwide®**

### KEVIN_A_TESTON_AND_1

#### Source - Eagle View

#### Source - Eagle View



### Roof

| | | | | | |
|---|---|---|---|---|---|
| 6307.01 Surface Area | | | 63.07 Number of Squares | | |
| 107.31 Total Hip Length | | | 149.60 Total Ridge Length | | |

| QUANTITY | UNIT | TAX | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|
| 1. R&R Roof vent - turtle type - Metal | | | | | | | | |
| 1.00 EA | 55.83 | 1.68 | 57.51 | 0/35 yrs | Avg. | 0% | (0.00) | 57.51 |
| 2. R&R Rain cap - 6" | | | | | | | | |
| 1.00 EA | 40.36 | 1.98 | 42.34 | 0/35 yrs | Avg. | 0% | (0.00) | 42.34 |
| 3. R&R Cupola - Copper | | | | | | | | |
| 1.00 EA | 3,700.85 | 282.00 | 3,982.85 | 0/150 yrs | Avg. | 0% | (0.00) | 3,982.85 |
| 4. R&R Chimney flashing - average (32" x 36") - copper | | | | | | | | |
| 1.00 EA | 560.45 | 27.81 | 588.26 | 0/150 yrs | Avg. | 0% | (0.00) | 588.26 |
| 5. R&R Valley metal - copper | | | | | | | | |
| 140.00 LF | 20.26 | 196.11 | 3,032.51 | 0/150 yrs | Avg. | 0% | (0.00) | 3,032.51 |
| 6. Remove Laminated - Slate look comp. shingle - w/felt | | | | | | | | |
| 8.40 SQ | 51.44 | 0.00 | 432.10 | 0/50 yrs | Avg. | NA | (0.00) | 432.10 |
| For valley metal replacement | | | | | | | | |
| 7. Laminated - Slate look comp. shingle - w/felt | | | | | | | | |
| 9.25 SQ | 330.22 | 159.57 | 3,214.11 | 0/50 yrs | Avg. | 0% | (0.00) | 3,214.11 |

This line item includes a shingle material allowance of $ 206.13 per square, which reflects current market prices in your area. Market prices were verified by ITEL. The ITEL Asphalt Shingle Program allows you or your contractor of choice to have materials delivered directly to your home for installation. For more information on ordering shingles through ITEL, contact them at customerservice@itelinc.com or 800-890-4835.
Includes 10% waste factor

| QUANTITY | UNIT | TAX | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|
| 8. R&R Metal roofing | | | | | | | | |
| 294.00 SF | 5.26 | 50.33 | 1,596.77 | 0/75 yrs | Avg. | 0% | (0.00) | 1,596.77 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Totals: Roof** | | 719.48 | 12,946.45 | | | | 0.00 | 12,946.45 |

### Debris Removal

| QUANTITY | UNIT | TAX | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|



**Nationwide®**

**Private Client**

Underwritten by Crestbrook Insurance Company
Amanda Jeckell, CIFR
Private Client Claims Specialist II
8877 N. Gainey Center Dr.
Scottsdale, AZ 85259
C 816-606-7254 / F 844-230-2557
jeckea1@nationwide.com

**CONTINUED - Debris Removal**

| | QUANTITY | UNIT | TAX | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|
| 9. Single axle dump truck - per load - including dump fees | | | | | | | | | |
| | 1.00 EA | 217.48 | 0.00 | 217.48 | 0/NA | Avg. | NA | (0.00) | 217.48 |
| **Totals: Debris Removal** | | | 0.00 | 217.48 | | | | 0.00 | 217.48 |
| **Total: Source - Eagle View** | | | 719.48 | 13,163.93 | | | | 0.00 | 13,163.93 |
| **Total: Source - Eagle View** | | | 719.48 | 13,163.93 | | | | 0.00 | 13,163.93 |
| **Line Item Totals: KEVIN_A_TESTON_ AND_1** | | | 719.48 | 13,163.93 | | | | 0.00 | 13,163.93 |

[%] - Indicates that depreciate by percent was used for this item
[M] - Indicates that the depreciation percentage was limited by the maximum allowable depreciation for this item

## Grand Total Areas:

| | | | | | |
|---|---|---|---|---|---|
| 0.00 | SF Walls | 0.00 | SF Ceiling | 0.00 | SF Walls and Ceiling |
| 0.00 | SF Floor | 0.00 | SY Flooring | 0.00 | LF Floor Perimeter |
| 0.00 | SF Long Wall | 0.00 | SF Short Wall | 0.00 | LF Ceil. Perimeter |
| | | | | | |
| 0.00 | Floor Area | 0.00 | Total Area | 0.00 | Interior Wall Area |
| 4,822.64 | Exterior Wall Area | 0.00 | Exterior Perimeter of Walls | | |
| | | | | | |
| 6,307.01 | Surface Area | 63.07 | Number of Squares | 0.00 | Total Perimeter Length |
| 149.60 | Total Ridge Length | 107.31 | Total Hip Length | | |


**Nationwide®**

**Private Client**

Underwritten by Crestbrook Insurance Company
Amanda Jeckell, CIFR
Private Client Claims Specialist II
8877 N. Gainey Center Dr.
Scottsdale, AZ 85259
C 816-606-7254 / F 844-230-2557
jeckea1@nationwide.com

## Summary for Dwelling

| | |
|---|---:|
| Line Item Total | 12,444.45 |
| Material Sales Tax | 719.48 |
| **Replacement Cost Value** | **$13,163.93** |
| Less Deductible | (5,000.00) |
| Less Salvage Retention | (323.04) |
| **Net Claim** | **$7,840.89** |

_____
Amanda Jeckell

# EXHIBIT C


**HUGGINS** LAW FIRM

**J. Remington Huggins, Esq.**
110 Norcross Street
Roswell, GA 30075
remington@lawhuggins.com
(770) 913-6229

August 16, 2022

Nationwide Mutual Insurance Company
18700 North Hayden Road
Scottsdale, Arizona 85255

**Sent Via email:**
privateclient@nationwide.com

Re:  Named Insured(s):  Kevin A. Teston and Berkeley Teston
Policy Number:   HO00233883
Claim Number:    CLM-00112143
Date of Loss:       March 16, 2022

To Whom it May Concern:

I have been retained by Kevin A. Teston and Berkeley Teston ("Your Insured") to represent them regarding the above referenced property insurance claim. All further communication regarding this claim should be directed to my office.

Please also accept this letter as a formal demand for a **certified copy of the relevant insurance policy, to include the original policy, any renewals, and any endorsements.** We also request a copy of any and all repair estimates drafted to date, **as well as a payment sheet or payment log detailing all insurance proceeds issued to date for this claim.**

My client has complied with all conditions contained in the insurance policy. My client is at a loss as to why Nationwide Mutual Insurance Company ("Nationwide") has not afforded the proper coverage under the applicable policy. This lack of good faith has forced Your Insured to retain my legal services in order to fairly settle their claim. It is our belief that Nationwide has violated the Unfair Claims Settlement Practice Act pursuant to O.C.G.A. § 33-6-34 and has breached the insurance policy.

Bad faith claims handling triggers additional liability on your part under O.C.G.A. § 33-4-6 that includes the amount of the claim, plus a penalty of an additional fifty percent (50%) of the value of the claim and reasonable attorneys' fees and costs.

Therefore, per the enclosed spreadsheets of damages to Your Insured's property, we are hereby making formal demand that you settle the above claim for the sum of **$124,339.86, less previous payments and the applicable deductible.** The invoice & estimate of damages is attached for your review. This demand is being made pursuant to O.C.G.A. § 33-4-6, and you have sixty (60) days in which to make payment on this claim or be subject to a lawsuit containing a claim for breach of contract and bad faith seeking all compensation allowed by law, including attorneys' fees and a penalty of fifty percent (50%) of the loss amount.

To:  Nationwide Mutual Insurance Company
Client: Kevin A. Teston and Berkeley Teston
August 16, 2022
Page 2 of 2

This letter constitutes a "proper demand" for payment under O.C.G.A. § 33-4-6. If you contend that a proper demand has not been made, you must immediately notify us of the reasons for such allegation. Otherwise, it will be assumed you agree this letter constitutes a proper demand.

The purpose of this correspondence is to encourage Nationwide to resolve Your Insured's claim in a fair and equitable manner in hopes of avoiding litigation. If you fail to respond to this letter with an offer of settlement that is acceptable to Your Insured, we will have no alternative other than recommending to Your Insured that a lawsuit be filed against you.

Payment must be received in my office within sixty (60) days of your receipt of this letter in order to avoid a suit for bad faith penalties and attorney's fees. Any check issued should list Huggins Law Firm, LLC as sole payee. Any objection to these payment terms shall be submitted in writing to Huggins Law Firm, LLC within 10 days of receipt of this letter.

I look forward to working with you to resolve this matter quickly and amicably. Please feel free to contact me should you have any questions regarding this formal 60-day demand. Should you have any questions or concerns, please reach out to me at remington@lawhuggins.com or by phone at (770) 913-6229.

Sincerely,

Remington Huggins, Esq.
Attorney at Law

JRH/aak
Encl.

**Precision Claim Consultants**

| | | | | |
|---|---|---|---|---|
| Insured: | Kevin Teston | | | |
| Property: | 512 Regent Pl | | | |
| | Augusta, GA 30909 | | | |

| | | | | |
|---|---|---|---|---|
| Claim Rep.: | Marcos Moran | Business: | (561) 613-9802 |
| Company: | Precision Claim Consultants | E-mail: | marcos@precisionclaimadjusters.com |

| | | | | |
|---|---|---|---|---|
| Estimator: | Marcos Moran | Business: | (561) 613-9802 |
| Company: | Precision Claim Consultants | E-mail: | marcos@precisionclaimadjusters.com |

**Claim Number:** CLM112143          **Policy Number:** SA00097424-01          **Type of Loss:** hail and wind damage

| | | | |
|---|---|---|---|
| Date of Loss: | 3/16/2022 6:27 PM | Date Received: | |
| Date Inspected: | | Date Entered: | 7/11/2022 6:26 PM |

| | |
|---|---|
| Price List: | GAAT8X_MAY22 |
| | Restoration/Service/Remodel |
| Estimate: | KEVIN_TESTON |

**All scope and unit costs presented here are subject to correction, revision or modification pending further review, research,   analysis and reinspection, as may be deemed necessary.**

**We have changed the pricing to price list GAAT8X to reflect accurate pricing for this area. Xactimate has failed to update pricing in other areas of the state in regards to shortages of materials and labor due to the Pandemic.**

**Please adjust unit Labor Pricing to RFG. The default unit Labor Price in Xactimate is DMO. We are replacing a roof and the labor price needs to properly reflect the trade performing the repairs**

 **Precision Claim Consultants**

**KEVIN_TESTON**

### Roof

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 1. Remove Laminated - Slate look comp. shingle - w/out felt | 55.89 SQ | 61.36 | 0.00 | 685.88 | 4,115.29 | (0.00) | 4,115.29 |
| 2. Laminated - Slate look comp. shingle - w/out felt | 64.50 SQ | 387.36 | 1,060.53 | 5,209.04 | 31,254.29 | (0.00) | 31,254.29 |
| 3. Roofing felt - 15 lb. | 55.89 SQ | 30.82 | 24.73 | 349.44 | 2,096.70 | (0.00) | 2,096.70 |
| 4. Asphalt starter - universal starter course | 581.00 LF | 1.80 | 18.71 | 212.90 | 1,277.41 | (0.00) | 1,277.41 |
| 5. Drip edge | 581.00 LF | 3.04 | 46.77 | 362.60 | 2,175.61 | (0.00) | 2,175.61 |
| 6. Copper valley - v-channel - High grade | 136.00 LF | 35.13 | 281.89 | 1,011.92 | 6,071.49 | (0.00) | 6,071.49 |
| 7. Continuous ridge vent - shingle-over style | 134.00 LF | 9.37 | 31.52 | 257.42 | 1,544.52 | (0.00) | 1,544.52 |
| 8. Ridge cap - High profile - composition shingles | 273.00 LF | 8.45 | 56.95 | 472.78 | 2,836.58 | (0.00) | 2,836.58 |
| 9. Flashing - pipe jack | 5.00 EA | 51.10 | 4.57 | 52.02 | 312.09 | (0.00) | 312.09 |
| 10. Rain cap - 4" to 5" | 2.00 EA | 41.82 | 2.74 | 17.28 | 103.66 | (0.00) | 103.66 |
| 11. Chimney flashing - average (32" x 36") | 1.00 EA | 400.29 | 5.61 | 81.18 | 487.08 | (0.00) | 487.08 |
| 12. Roofing - General Laborer - per hour | 2.00 HR | 40.31 | 0.00 | 16.12 | 96.74 | (0.00) | 96.74 |
| 13. Step flashing | 162.00 LF | 9.34 | 17.46 | 306.12 | 1,836.66 | (0.00) | 1,836.66 |
| 14. Counterflashing - Apron flashing | 184.00 LF | 10.00 | 18.68 | 371.74 | 2,230.42 | (0.00) | 2,230.42 |
| **Totals: Roof** | | | **1,570.16** | **9,406.44** | **56,438.54** | **0.00** | **56,438.54** |

### Copper

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 15. Bay window and strip* | 1.00 EA | 20,000.00 | 0.00 | 0.00 | 20,000.00 | (0.00) | 20,000.00 |
| 16. Flat Copper* | 1.00 EA | 15,000.00 | 0.00 | 0.00 | 15,000.00 | (0.00) | 15,000.00 |
| 17. Cupola - Copper - Large | 1.00 EA | 7,700.11 | 519.61 | 1,643.96 | 9,863.68 | (0.00) | 9,863.68 |
| **Totals: Copper** | | | **519.61** | **1,643.96** | **44,863.68** | **0.00** | **44,863.68** |

### Eaves

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 18. Gutter / downspout - Detach & reset For Proper Drip edge installation | 425.00 LF | 5.40 | 0.00 | 459.00 | 2,754.00 | (0.00) | 2,754.00 |
| **Totals: Eaves** | | | **0.00** | **459.00** | **2,754.00** | **0.00** | **2,754.00** |

**Precision Claim Consultants**

### Pa Fee

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 19. Pa Fee* | 1.00 EA | 16,218.24 | 0.00 | 0.00 | 16,218.24 | (0.00) | 16,218.24 |
| **Totals: Pa Fee** | | | **0.00** | **0.00** | **16,218.24** | **0.00** | **16,218.24** |

### Standing Seam

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 22. Remove Standing seam metal roofing | 294.00 SF | 0.52 | 0.00 | 30.58 | 183.46 | (0.00) | 183.46 |
| 24. Standing seam metal roofing | 338.10 SF | 7.74 | 90.17 | 541.42 | 3,248.48 | (0.00) | 3,248.48 |
| 15% waste factor | | | | | | | |
| 25. Ice & water barrier - High temp | 294.00 SF | 1.75 | 13.38 | 105.58 | 633.46 | (0.00) | 633.46 |
| **Totals: Standing Seam** | | | **103.55** | **677.58** | **4,065.40** | **0.00** | **4,065.40** |
| **Line Item Totals: KEVIN_TESTON** | | | **2,193.32** | **12,186.98** | **124,339.86** | **0.00** | **124,339.86** |

 **Precision Claim Consultants**

## Summary for Dwelling

| | |
|---|---:|
| Line Item Total | 109,959.56 |
| Material Sales Tax | 2,193.32 |
| Subtotal | 112,152.88 |
| Overhead | 6,093.49 |
| Profit | 6,093.49 |
| **Replacement Cost Value** | **$124,339.86** |
| **Net Claim** | **$124,339.86** |

Marcos Moran

KEVIN_TESTON                                                      7/15/2022          Page: 4



512 Regent Pl, Augusta, GA 30909 (1)

June 20, 2022

Prepared For: Humbled Roofing & Restoration LLC



## Contents

| | |
|---|---|
| Overview | 1 |
| Top View | 2 |
| Side Views | 3 |
| Lengths | 4 |
| Pitches | 5 |
| Areas | 6 |
| Summary | 7 |
| Materials | 8 |

## Measurements

| | |
|---|---|
| Roof Area | 6,366 sq ft |
| Roof Facets | 35 |
| Predominant Pitch | 6 / 12 |
| Ridges/Hips | 273 ft |
| Valleys | 136 ft |
| Rakes | 241 ft |
| Eaves | 425 ft |
| Bends | 20 ft |



Top View





**Side Views**








# Lengths

| Flash | Step | Drip |
|-------|------|------|
| 182   | 164  | 666  |

N

38
14
23
14
38
14
15
3
8
13
2
3
24
11
8
24
20
15
20
20
4
4
5
17
35
35
3
21
35
12
19
3
66
23
20
20
15
15
7
27
5
22
6
17
12
29
12
25
15
20
20
29
21
22
7
13

| ■ Bend | ▨ Eave | ⬚ Hip | ■ Rake | ■ Ridge | ■ Valley |
|--------|--------|-------|--------|---------|----------|
| 20     | 425    | 139   | 241    | 134     | 136      |

Lengths in feet

Prepared For: Humbled Roofing & Restoration LLC        **4**        512 Regent Pl, Augusta, GA 30909 (1)

# **Quick**Measure
### Roof Reports in Under an Hour

# Pitches



Pitches in inches per foot



**Quick**Measure
Roof Reports in Under an Hour

# Areas



N

Areas in square feet





# **Quick**Measure
### Roof Reports in Under an Hour

# Summary

| Pitch | 1 | 2 | 3 | 5 | 6 | 8 | 10 | 21+ |
|---|---|---|---|---|---|---|---|---|
| Area | 1,099 | 39 | 135 | 8 | 4,065 | 970 | 23 | 29 |
| Percent | 17% | 1% | 2% | 0% | 64% | 15% | 0% | 0% |

| Waste | 0% | 15% | 18% | Suggested 20% | 22% | 25% | 30% |
|---|---|---|---|---|---|---|---|
| Area | 6,366 | 7,321 | 7,512 | 7,639 | 7,766 | 7,957 | 8,276 |
| Squares | 64 | 74 | 76 | 77 | 78 | 80 | 83 |



| | |
|---|---|
| **Roof Area** | 6,366 sq ft |
| **Roof Facets** | 35 |
| **Predominant Pitch** | 6 / 12 |
| **Bends** | 20 ft |
| **Eaves** | 425 ft |
| **Hips** | 139 ft |
| **Rakes** | 241 ft |
| **Ridges** | 134 ft |
| **Valleys** | 136 ft |
| **Flash** | 182 ft |
| **Step** | 164 ft |
| **Drip Edge** | 666 ft |
| **Leak Barrier** | 1,085 ft |
| **Ridge Cap** | 273 ft |
| **Starter** | 581 ft |
| **Parapets** | 0 ft |

Notes: 1) Measurements are rounded to the nearest whole number. 2) Rakes are defined as sloped roof edges. 3) Eaves are defined as level roof edges. 4) Flashing pertains to level roof edges and excludes valleys. 5) Step flashing pertains to sloped roof edges and excludes areas around penetrations. 6) Drip edge = eaves + rakes. 7) Waste table excludes additional materials needed for ridges, hips, valleys, etc. 8) Suggested waste factor is based on the roof complexity and is provided for guidance purposes only.  You should confirm the appropriate waste factor prior to ordering.

Prepared For: Humbled Roofing & Restoration LLC             7             512 Regent Pl, Augusta, GA 30909 (1)



# Roofing Materials

| | Waste | 0% | 15% | Suggested 20% | 25% |
|---|---|---|---|---|---|
| **Timberline Products** | | | | | |
| HDZ, HD, Natural Shadow, American Harvest, Reflector, Royal Sovereign, and Cool Series | bundle | 161 | 185 | 193 | 201 |
| **Low-Slope Roofing System *** | | | | | |
| Liberty Base/Ply Sheet | roll | 6 | 7 | 7 | 7 |
| Liberty Cap Sheet | roll | 11 | 13 | 14 | 14 |
| **Starter** | | | | | |
| WeatherBlocker | bundle | 6 | 7 | 7 | 8 |
| Pro-Start | bundle | 5 | 6 | 6 | 7 |
| Quick-Start | roll | 18 | 21 | 22 | 22 |
| **Roof Deck Protection *** | | | | | |
| Deck-Armor, Tiger Paw, FeltBuster 10 sq | roll | 6 | 7 | 7 | 7 |
| Shingle-Mate | roll | 14 | 16 | 16 | 17 |
| VersaShield | roll | 16 | 18 | 19 | 19 |
| **Leak Barrier *** | | | | | |
| StormGuard, WeatherWatch 2 sq | roll | 17 | 19 | 20 | 21 |
| WeatherWatch 1.5 sq | roll | 22 | 25 | 27 | 28 |
| **Ridge Cap** | | | | | |
| Seal-A-Ridge | bundle | 11 | 13 | 14 | 14 |
| TimberTex | bundle | 14 | 16 | 17 | 18 |
| Z-Ridge | bundle | 9 | 10 | 10 | 11 |
| TimberCrest | box | 14 | 16 | 17 | 18 |
| **Attic Ventilation** | | | | | |
| Cobra 4' Plastic Ridge Vents | foot | 71 | | | |
| Master Flow SSB960 Metal Slant-Black | vent | 22 | | | |
| Master Flow High-Capacity Dome Vent | vent | 9 | | | |
| Cobra IntakePro Rooftop Intake | foot | 141 | | | |

Notes: 1) These approximate quantities are based on estimated measurements and are for guidance purposes only.  You should always confirm quantities prior to ordering and ensure you are following local building code requirements.  2) For Timberline, 3 bundles = 0.984 squares.  3) Starter = eaves + rakes.  4) Leak barrier = bends + eaves + flashing + hips + rakes + step + valleys.  5) Ridge cap = hips + ridges. 6) Estimated quantity of attic ventilation products based solely on exterior roof area and intended for estimating purposes only.  Installer must verify attic floor square footage, roof design, local code requirements, quantity/type/approved roof pitch of recommended vent products, and conditioned space under the roof.  Always have a balanced attic ventilation system.  In no case should the amount of exhaust ventilation exceed the amount of intake ventilation. For more info, visit gaf.com/ventcalculator. 7) Low-slope products applied to 1/12 pitch areas.  8) Timberline products applied to 2/12 pitch areas and above.

\* Installed coverage will be less and depend on quantity and width of side and end laps.

Prepared For: Humbled Roofing & Restoration LLC



512 Regent Pl, Augusta, GA 30909 (1)







IN THE SUPERIOR COURT OF GWINNETT COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| **KEVIN A. TESTON AND**<br>**BERKELEY TESTON,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION FILE NO.:** |
| | ) | 22-A-10800-5 |
| **CRESTBROOK INSURANCE COMPANY,** | ) | |
| **a foreign corporation,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## PLAINTIFFS' FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS DIRECTED TO DEFENDANT

COMES NOW, Plaintiffs, **Kevin A. Teston and Berkeley Teston**, by and through the undersigned counsel, and hereby propounds the following First Set of Interrogatories and Request for Production of Documents to the Defendant, **Crestbrook Insurance Company**, to be answered separately and fully, in writing, under oath, and in accordance with the Georgia Civil Practice Act, O.C.G.A. §§ 9-11-33 and 9-11-34.

## GENERAL INSTRUCTIONS

1. You are required to answer and verify the following interrogatories and requests for production of documents within forty-five (45) days of the date of service.

2. Each paragraph below shall operate and be construed independently; and, unless otherwise indicated, no paragraph limits the scope of any other paragraph.

3. In answering these discovery requests, you are required to furnish all information available to You (not merely such information as you know of your own personal knowledge), including information in the possession of your attorneys and accountants, other Persons

directly or indirectly employed by or connected with you or your attorneys or accountants, or anyone else acting on your behalf or otherwise subject to your control.

4.  Your obligation to answer these discovery requests is intended to be continuing in nature; therefore, you are required by O.C.G.A. § 9-11-26 and instructed by the Plaintiffs to reasonably & promptly amend or supplement your response if you learn that any prior response is in some material respect incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to Plaintiffs during the discovery process or in writing.

5.  You are instructed that a failure by you to make, amend, or supplement a response in a timely manner or to otherwise comply with O.C.G.A. § 9-11-26 may result in sanctions against You.

6.  The singular includes the plural number, and vice versa. The masculine includes the feminine and neutral genders. The past tense includes the present tense where the clear meaning is distorted by a change of tense.

7.  Each document request shall be deemed to call for the production of the original document or documents. If the original is not available, then a copy shall be produced if it differs in any respect from the original or from other copies (e.g., by reason of handwritten, typed, or printed notes or comments having been added to the copy that do not appear on the original).

8.  If a request seeks a document that, to your knowledge, does not exist, please state that the document does not exist.

9.  Without interfering with the readability of a document, please identify by Bates number or other means the request(s) to which the document is responsive.

10. For each document responsive to any request that is withheld under a claim of privilege, you are required by Uniform Superior Court Rule 5.5 to provide a privilege log containing the following information:

    a.   The date the document was prepared or created;

    b.   The name and title of the author or authors of the document;

    a.   A summary of the subject matter of the document;

    b.   The identity of each person or persons (other than those giving solely stenographic or clerical assistance) who assisted the author or authors in creating the document;

    c.   The identity of each person to whom the document or the contents of the document have been communicated (either intentionally or inadvertently), the date(s) of such communication, the title of each such person, and the date of such communication;

    d.   A statement of the basis on which privilege is claimed; and

    e.   The identity and title, if any, of the person or persons providing the information requested in subsections (a) through (f) above.

## DEFINITIONS

As used in these interrogatories, the terms listed below are defined as follows:

1. "Document(s)" or "documentation" means any writing of any kind, including originals and all non-identical copies (whether different from the originals by reason of any notation made on such copies or otherwise), including without limitation correspondence, memoranda, notes, desk calendars, diaries, statistics, letters, telegrams, minutes, contracts, reports, studies, checks, invoices, statements, receipts, returns, warranties, guaranties, summaries, pamphlets, books, prospectuses, interoffice and intra-office communications, offers, notations of any sort of conversation, telephone calls, meetings or other

communications, bulletins, magazines, publications, printed matter, photographs, computer printouts, teletypes, faxes, invoices, worksheets and all drafts, alterations, modifications, changes and amendments of any of the foregoing, tapes, tape recordings, transcripts, graphic or aural records or representations of any kind, memorialized depictions of the Property or of Communications relating to the Claim, and electronic, mechanical or electric records or representations of any kind which You have knowledge or which are now or were formally in your actual or constructive possession, custody or control.

2. "Claim" or "Policyholders' Claim" shall refer to Claim No. CLM-00112143, which was drafted by the Insurance Company and issued to the Policyholders for direct physical loss or direct physical damage to the Property.

3. "Communication" shall mean and include any oral or written utterance, notation, or statement of any nature whatsoever, including but not limited to correspondence, personal conversation, telephone calls, dialogues, discussions, interviews, consultations, telegrams, telexes, cables, memoranda, agreements, notes, and oral, written, or other understandings or agreements. This shall include all written, recorded, or signed statements of any party, including the Policyholder, any adjuster, subcontractor, witnesses, investigators, or agents, representative, or employee of the parties concerning the subject matter of this action.

4. "Identify" shall mean:

    a. when used to refer to a document, means to state the following:

        1. The subject of the document;

        2. The title of the document;

        3. The type of document (e.g., letter, memorandum, telegram, chart);

        4. The date of the document, or if the specific date thereof is unknown, the month and year or other best approximation of such date with reference to other events;

        5. The identity of the person or persons who wrote, contributed to, prepared or originated such document; and

        6. The present or last known location and custodian of the document.

b.  when used in reference to a *person*, "identify" means to state to the fullest extent possible the person's name, present or last known address, present or last known telephone number(s), and, if a natural person, the person's employer and position of employment at the time(s) in question.

c.  when used in reference to a *conversation* or *communication*, "identify" means to state the date and length of the communication, the identity of all parties to the communication, the identity of all other witnesses to the communication, the place where the communication took place (if the communication did not take place in person, set forth the location of each party to and each witness to the communication), and the general subject matter(s) of the communication.

d.  when used in reference to a *claim*, "identify" means to state the date and location the claim arose, the location the claim was defended, the names of the parties involved, the case style, the amount in controversy, and the general nature of the claim.

e.  "Relating to" any given subject means any document, communication, or statement that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with,

touches upon, or is in any manner whatsoever pertinent to that subject and supports, evidences, describes, mentions, refers to, contradicts or comprises the subject.

5. "Including" shall mean "including, but not limited to."

6. "And" and "or" shall be construed conjunctively or disjunctively as required by the context within the scope of a discovery request so as not to exclude any information that might be deemed outside the scope of the request or by any other construction.

7. "Person(s)" shall mean and include a natural person, firm, association, organization, partnership, business trust, corporation (public or private), or government entity.

8. "Parties" includes all named parties in this litigation and their agents, employees, servants, officers, and directors.

9. "Plaintiff(s)" and "Policyholder(s)" mean the above-captioned Plaintiffs or the Policyholders listed on HO00233883 and his/her/its/their employees, representative, agents, employees, servants, officers, and directors.

10. "You," "Your," "Defendant," and "Insurance Company" means Defendant Insurance Company and its employees, representatives, agents, employees, servants, officers, directors, adjusters, branch claims representatives, regional or home office claims auditors or claims examiners, all claims managers and claims supervisors at any level, executive officers of the company, and all members of any review or claims committee, and each person presently or formerly acting or authorized to act on Defendant's behalf.

11. "Policy" means Policy No. HO00233883 issued by Crestbrook Insurance Company.

12. "Property" or "Insured Property" means the property located at 512 Regent Place, Augusta, GA 30909.

13. "Broker" means an insurance broker, excess/surplus lines broker, licensed insurance agent, managing general agent, or other insurance intermediary involved in the purchase, sale, negotiation, or placement of the Policy.

14. "Coverage Letter(s)" means the correspondence from You to Policyholder dated anytime, regarding Your position as to coverage for the Loss.

15. "Loss" means the event on or around March 16, 2022, in which Policyholder suffered property damage and has consequently incurred extra expenses such as additional living expenses, business income losses, and other losses afforded coverage for under the Policy.

16. "Possession, custody or control" includes the joint or several possession, custody, or control not only by the person to whom these interrogatories are addressed, but also the joint or several possession, custody, or control by each or any other person acting, or purporting to act on behalf of, the Person, whether as an employee, attorney, accountant, agent, sponsor, spokesman, or otherwise.

## **INTERROGATORIES**

1.

Identify any and all Persons involved in any way whatsoever in the investigation, adjustment, and handling of Plaintiffs' claim for insurance benefits arising from the Loss on or about March 16, 2022, and for each, please include his/her name, place of employment, address, and telephone number; his/her title, license(s), and certification(s); the date his/her involvement in this claim commenced; the date his/her involvement in this claim concluded; and a description his/her involvement in this claim.

This interrogatory seeks information about every individual involved in the Claim including, but not limited to, Persons employed by the Defendant or retained by Defendant through

a third-party entity. For Defendant's employees specifically, this Interrogatory seeks the name of every employee of Defendant who had anything to do with the Claim.

2.

If any Person identified in Your answer to Interrogatory No. 1 is or was Your employee, agent, or representative, please state whether said Person has been promoted, demoted, terminated, or transferred from March 16, 2022 to present; describe in detail the change in employment status of each such Person, including the circumstances of the Person's employment before and after the change in status; and provide the last-known residence address and telephone number or place of current employment of each such former employee.

3.

Describe each and every investigative step conducted by You, or by anyone on Your behalf, regarding Plaintiffs' Claim, beginning with the date and method You received notice of the subject Claim, and identify any and all documents and correspondence (paper or electronic) generated, obtained, or otherwise placed in Your possession, in the course of Your investigation.

4.

Identify each and every person that You expect to call as an expert witness at trial, and for each, please state: the subject matter on which the expert is expected to testify; the substance of the facts and opinions to which the expert is expected to testify; a summary of the grounds for each opinion; the data or other information considered by the expert in forming their opinions; whether a written report has been prepared; and identify the data or other information considered by the expert in forming their opinions & all documents You furnished to the expert.

5.

If You have retained or employed an expert in conjunction with the Claim who is not expected to be called as a witness at trial, please identify said expert(s), and for each, please state their address and contact information.

6.

Please state the date and manner in which You received notice of the Claim; the date and manner in which You acknowledged receipt of the Claim; the date and manner in which You commenced investigation of the Claim; the date and manner in which You requested from the Plaintiffs all items, statements, and forms that You reasonably believed, at the time, would be required from the Plaintiffs; the date and manner in which You notified the Plaintiffs in writing of the acceptance or rejection of the claim; and the date, amount, and reason for any insurance proceed payments You have made to the Plaintiffs.

7.

Have You extended coverage for any part of Plaintiffs' Claim for insurance benefits, or have You denied or rejected Plaintiffs' Claim? If You extended coverage for any part of Plaintiffs' Loss, please state with specificity the provisions, endorsements, or any other part of the Policy governing Plaintiffs' Loss that supports Your extension of coverage; please state with specificity Your reasons for denying or rejecting any part of Plaintiffs' Claim; and include all facts and policy provisions that supported Your decision to deny or reject Plaintiffs' Claim. This Interrogatory seeks the above information even if coverage was extended for the Loss but fell below the Plaintiffs' deductible.

8.

Do You contend the damage to the Property can be repaired?  If so, please state with specificity the method of repair Defendant contends should be used to repair the Property. This

request seeks any and all building codes (state, county, city, or municipal), industry standards, and industry practices employed in the investigation, evaluation, and determination of methods used to repair damages caused by the Loss that Defendant states could be used to repair the Property. If such information exists, please state: the name(s), address(es), and telephone number(s) of all Persons who have personal knowledge of any of these industry standards or practices; and identify all documents that support or explain any of these building codes, engineering industry standards, and practices.

If You do not have an answer to this Interrogatory, please affirmatively state none of the above was relied upon in determining if the damage sustained to the Property by the Loss is or was repairable.

9.

Does the Policy owe for anything less than a proper repair of the damaged Property caused by a covered loss? If the Policy does not owe for a proper repair, please state with specificity the provision of the Policy which does not provide for a proper repair.

10.

Please identify any and all written policies, procedures, guidelines, or other documents (including document(s) maintained in physical or electronic form) You maintained for Your internal or third party adjusters to use in the state of Georgia in connection with adjusting Hail and Wind losses that were in effect on March 16, 2022 through present.

11.

Please state with specificity the approximate date and event which caused You to anticipate litigation with respect to Plaintiffs' cause of action and identify all documents that support or explain any of these facts.

12.

Identify any and all documents (including those maintained electronically) relating to the investigation, claim handling, and adjustment of Hail and Wind claims in the state of Georgia that are routinely generated throughout the handling and investigation of such claims (including, but not limited to, Investigation Reports; reserve sheets; electronic claims diaries or similar record logs; claims review reports; and/or any team report relative to this claim) for the two years preceding March 16, 2022 to the present, and state whether any such documents were generated during the investigation and handling of the Claim.

13.

Have any documents (including those maintained electronically) relating to the Claim been destroyed, lost, or disposed of? If so, please identify what, when and why the document was destroyed, and describe Your document retention policy.

14.

Do You contend the Property was damaged by any excluded peril? If so, state the specific provision in the Policy supporting the exclusion and how the exclusion impacted Your claim decision, state in detail Your factual basis for this contention, and identify any documents supporting Your contention.

15.

Do You contend the Plaintiffs failed to satisfy any condition, covenant, or duty of the Policy or otherwise breached the Policy? If so, identify each specific condition, covenant, or duty of the Policy You contend the Plaintiffs failed to satisfy or breach, and identify all the documents relating to Your assertion and all Persons with knowledge of such facts.

16.

Identify the underwriting documents created or acquired in the formation of the Policy for the Property including any risk reports for the Property that have been generated or obtained at any time, and state if any Notice(s) of Cancellation or Notice(s) of Non-Renewal of the Policy have been issued.

17.

Identify any and all photographs, audio recordings, video recordings, written statements taken, or other memorializing documentation obtained during the course of Your investigation of the Claim. In Your response, please describe in detail what each document depicts or memorializes and state the date when each such document or memorialization was obtained or generated.

18.

Identify any and all repair estimates, invoices, quotes, receipts, or other documentation reflecting the cost or methodology to repair the damages at issue in this Claim, even if said item never left Your possession. In Your response, please describe in detail what each document depicts, when it was generated or obtained, why it was generated or obtained, and state the date when the item was created, received, or requested.

19.

Please identify each Person who assisted You in any way to provide responses to these Interrogatories. For each identified Person, please include the Person's name, place of employment, address, telephone number and relationship to you.

20.

State the good faith factual basis for Your Affirmative Defenses(s), and identify the date, type of document, author(s), recipient(s), and present custodian of every document known or

believed by You to refer or relate in any way to the facts You contend support Your Affirmative Defense(s) and comprehensively describe all basis (factual and otherwise), documents, notes, memorandum, reports, or other documentation supporting Your responses to the paragraphs of Plaintiffs' Complaint.

## REQUEST FOR PRODUCTION OF DOCUMENTS

1.

All documents responsive to Plaintiffs' Interrogatories identified in Your responses to Plaintiffs' Interrogatories or otherwise reviewed or relied upon in responding to Plaintiffs' Interrogatories.

2.

The entire claim file, claims notes, or other similar records from the home, regional, or local offices; third party adjusters or adjusting firms; or ladder assist Persons retained by You regarding the Claim. This request includes, but it not limited to, copies of the file jackets; "field" files and notes; and drafts of documents contained in the file.

To the extent that this request seeks documents from third-party adjusters/adjusting firms, ladder assists, or other Persons retained by the Defendant, this request is only seeking such documents that have been provided to, or are in the control of, the Defendant.

3.

A certified copy of the Policy or insurance policies possessed by Defendant pertaining to the Property involved in this suit.

4.

All documents and tangible things supporting the method You contend could be used to properly repair the damages sustained to the Property as a result of the Loss.

5.

Your written procedures, policies, guidelines, or other similar documentation (including document(s) maintained in electronic form) that pertain to the handling of Hail and Wind claims in the state of Georgia for the year preceding March 16, 2022 to present.

6.

Any and all weather reports in Your possession which concern the Property, regardless of whether You relied upon them in making Your claims decision in this matter, for the two years preceding March 16, 2022 to present.

7.

The Operation Guides which relate to the handling of Hail and Wind claims in the state of Georgia in effect for the year preceding March 16, 2022 to present.

8.

The field notes, measurements, electronic diary, file materials, or other similar records (including all electronic and paper notes) created, obtained, or maintained by the claims personnel, contractors, adjusters, engineers, or any other Person who physically inspected the Property or adjusted the Claim.

9.

The emails, instant messages, internal or external correspondence, or any other communication between Defendant and any agent, representative, employee, or other Person pertaining to the Claim.

10.

Defendant's internal newsletters, bulletins, publications, or other memoranda internally circulated which relates to the policies and procedures relied upon in the handling of Hail and

Wind claims in the state of Georgia that were issued one year preceding March 16, 2022 through the present, including, but not limited to, memoranda issued to claims adjusters.

11.

The price guidelines, price indexes, or other similar information utilized in the creation of any repair estimates prepared, edited, requested, or relied upon by the Defendant. In the event published guidelines of "off the shelf" software (including, but not limited to, Xactimate software) were utilized to inform pricing decisions, You may respond by simply identifying the name, version, and/or edition of the published guidelines used.

12.

Any "Summary of Loss," "Pay sheet," "Payment Log," copy of issued payments, or other similar list or record of payments made by Defendant in relation to the Claim. This includes, but is not limited to, all payments issued to Plaintiff or Plaintiffs' agents and representatives; all payments issued to independent adjusters, ladder assists, engineers, or other Persons retained in Your adjustment of this claim; all copies of any and all checks issued; and all expenses incurred by You in Your adjustment of this claim.

13.

The documents reflecting reserves applied to the Claim.

14.

The contract or agreement between the Defendant and any third-party Person retained in the investigation and adjustment of the Claim. This request includes, but is not limited to, contracts or agreements with ladder assists, independent adjusters, contractors, engineers, meteorologists, or hygienists involved in any way throughout the Claim.

15.

All documents submitted to, or received from, each Person You expect to call as an expert witness at trial. This request includes, but is not limited to: any agreement exchanged or entered into between Defendant and the witness (including proposals not agreed upon and counteroffers to the same); all reports generated by the witness (including drafts); a current *curriculum vitae* for the witness; a list of all other publications authored by the witness; a list of all other cases in which the witness has testified as an expert at trial or by deposition; an invoice showing the compensation paid or owed to the witness; and all documents and tangible things consulted by and relied upon by the witness in forming his or her expert opinion.

16.

All documents submitted to, or received from, each Person Defendant hired or consulted as an expert witness which Defendant does not intend to call as an expert witness at trial in this case. This request includes, but is not limited to: any agreement exchanged or entered into between Defendant and the witness (including proposals not agreed upon and counteroffers to the same); all reports generated by the witness (including drafts); a current *curriculum vitae* for the witness; a list of all other publications authored by the witness; a list of all other cases in which the witness has testified as an expert at trial or by deposition; an invoice showing the compensation paid or owed to the witness; and all documents and tangible things consulted by and relied upon by the witness in forming his or her expert opinion.

17.

All documents in Your possession concerning the underwriting of the Policy issued for the Property. This request includes, but is not limited to, any risk reports for the Property and any Notice(s) of Cancellation or Notice(s) of Non-Renewal of the Policy for the Property.

18.

All repair estimates, invoices, quotes, receipts, or other documentation Defendant reviewed throughout the adjustment of the Claim which reflect the cost to repair any agreed upon, contested, or suspected damages at issue in the Claim. This request is inclusive of documents not transmitted to the Plaintiff through the adjustment of the Claim.

19.

Any and all photographs, audio recordings, video recordings, written statements taken, or other memorializing documentation obtained during the course of Your investigation of the claim. This request seeks the requested documentation to be produced in a format most similar to the original, in the highest quality version available, and in a format which retains the original metadata.

20.

A copy of the license, registration, certification, or other similar documentation for all Persons retained, employed, or consulted by the Defendant to inspect the Property and/or adjust the Claim.

21.

All evidence You intend to introduce at the trial of this matter.

It is requested that the above-requested responses be made within forty-five (45) days of service of this request at the offices of The Huggins Law Firm, LLC, 110 Norcross Street, Roswell, GA 30075.

Dated, this this 20th day of December, 2022.

RESPECTFULLY SUBMITTED,

THE HUGGINS LAW FIRM, LLC
110 Norcross Street
Roswell, GA 30075
(o) (770) 913-6229
(e) remington@lawhuggins.com
(e) mdturner@lawhuggins.com
(e) fpeebles@lawhuggins.com

J. Remington Huggins, Esq.
Georgia Bar No.: 348736
Michael D. Turner, Esq.
Georgia Bar No.: 216414
Foster L. Peebles, Esq.
Georgia Bar No.: 410852
*Attorneys for the Plaintiff*

E-FILED IN OFFICE - CE
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
**22-A-10800-5**
**12/20/2022 4:23 PM**
TIANA P. GARNER, CLERK

## IN THE SUPERIOR COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| **KEVIN A. TESTON AND** | ) | |
| **BERKELEY TESTON,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION FILE NO.:** |
| | ) | |
| **CRESTBROOK INSURANCE** | ) | _____ |
| **COMPANY,** | ) | 22-A-10800-5 |
| **a foreign corporation,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### CERTIFICATE OF SERVICE

This is to certify that I have served the foregoing upon the Defendant Crestbrook Insurance Company by serving them with the ***Summons, Complaint and Exhibits,*** and ***Plaintiffs' First Set of Interrogatories and Request for Production of Documents*** in accordance with the Court's rules to Defendant Crestbrook Insurance Company at the address listed below:

**Corporation Service Company**
**Registered Agent for Defendant Crestbrook Insurance Company**
**2 Sun Court, Suite 400**
**Peachtree Corners, GA 30092**

Respectfully submitted, this 20th day of December, 2022.

For: The Huggins Law Firm, LLC,

**The Huggins Law Firm, LLC**
110 Norcross Street
Roswell, GA 30075
(o) (770) 913-6229
(e) remington@lawhuggins.com
(e) mdturner@lawhuggins.com

J. Remington Huggins, Esq.
Georgia Bar No.: 348736
Michael D. Turner, Esq.
Georgia Bar No.: 216414
*Attorneys for the Plaintiff*