IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| COLLEGE PARK GATEWAY OFFICE ONE, LLC, | ) ) ) | |
| Plaintiff | ) ) | |
| v. | ) ) | Civil Action File<br>_____ |
| COLLEGE PARK BUSINESS AND INDUSTRIAL DEVELOPMENT AUTHORITY, | ) ) ) ) ) | **JURY TRIAL DEMANDED**<br>**ON ALL ISSUES SO TRIABLE** |
| Defendant. | ) | |

## COMPLAINT

**COMES NOW** Plaintiff College Park Gateway Office One, LLC ("Gateway" or "Plaintiff"), by and through its undersigned counsel, and files this Complaint against Defendant College Park Business and Industrial Development Authority ("BIDA" or "Defendant"), showing as follows:

## INTRODUCTION

In or around 2008, Defendant College Park Business and Industrial Development Authority ("BIDA") sought to incentivize College Park Gateway Office One, LLC ("Gateway") to build and operate a commercial office complex (the "Project" or the "Project Parcel") in the City of College Park, Georgia. Steep incentives were necessary as the area, especially in 2008 but continuing to this day,

-1-

was competitively disadvantaged in the market for office space due to high crime and other market factors. Nonetheless, Gateway, and purportedly BIDA, were both interested in developing the area as a means of benefitting the City of College Park and its population via thoughtful commercial development and its attendant benefits for the city.

BIDA and Gateway therefore entered into two contracts – respectively, the Parcel, Design, Development, and Operating Agreement (the "PDDO Agreement"), and the related Parcel PILOT Agreement (the "Pilot Agreement") (collectively the "Agreements") – which provided the structure for Gateway's incentive-induced development of the Project. The Agreements, which were both drafted by BIDA, were duly executed, and the Project was developed by Gateway.

This lawsuit relates to BIDA's recent efforts to manipulate the Parties' Agreements and to convert the Project into a cash cow for itself and the City of College Park, all at the expense of Gateway and in disregard of the Parties' contractual obligations and intentions.

Specifically at issue in this lawsuit are payments which the Agreements refer to as "Payments in Lieu of Taxes" ("PILOT payments" or "PILOT assessments"). The PILOT assessments are tax-like fees which are the intended mechanism for

Gateway to repay BIDA for certain financing bonds (the 2008A Bonds) that were issued in connection with the Project.

Under both Agreements, the PILOT assessments are to be calculated as an "amount equal to the ad valorem property taxes that would be due if title to the [Project] were vested in [Gateway]." The Agreements thus contemplate the tax assessor of Clayton County to provide the Parties a fair market value ("FMV") of the Project Parcel, so that a reasonable estimate of ad valorem taxes can be made. The Agreements further contemplate cooperation between BIDA and Gateway in securing the fair market value of the property. Likewise, the Agreements contemplate that Gateway shall have appeal rights should it determine that the FMV or assessed value of the Project Parcel is improper.

Thus, both Agreements contemplate the tax assessor of Clayton County providing an appealable assessment of the Project Parcel's FMV. However, because the property is tax exempt, there is no obligation for the tax assessor to meaningfully assess the Project Parcel or to provide a good faith estimate of FMV. To the contrary, beginning in or around 2020 and continuing for each year since, the Clayton County tax assessor conducted and provided an arbitrary and capricious valuation of the Project Parcel. These valuations were not based on any legitimate mathematical formula nor any other relevant information which could reasonably be relied upon

to value the Project Parcel. Moreover, Gateway was not provided timely notice of the inflated valuations nor any appeal rights. BIDA also failed to appeal the assessments despite knowing that they were not based on even a remote approximation of the Project's actual value. To the contrary, rather than appeal, BIDA seized on the false and inflated valuation to charge Gateway exorbitant PILOT assessments.

In addition, part of the 2022 PILOT invoice issued by BIDA (specifically, $223,723.20 out of the total $761,945.29 PILOT invoice) seeks payment from Gateway for special assessments levied by the City of College Park. As described below, these assessments are not lawful, and therefore cannot constitute an approximation of the taxes which "would be due if title to the [Project] were vested in [Gateway]."

The net result of all of the above has been that BIDA has unreasonably, unfairly, and illegally charged Gateway invalid PILOT assessments for the sole purpose of lining its own pockets at Gateway's expense. In other words, BIDA has endeavored to create a windfall for itself through its arbitrary, capricious, and unreasonable reliance on a blatantly improper valuation of the Project Parcel—all in breach of the Agreements. Gateway brings this lawsuit to vindicate and declare its rights, specifically in regard to the 2022 PILOT assessment recently issued by BIDA.

## PARTIES AND JURISDICTION

1.

Gateway is a limited liability company with its principal office address located at 9155 S Dadeland Blvd, Suite #1408, Miami, Florida 33156. Gateway is incorporated in Delaware. None of the members of Gateway are residents of the State of Georgia.

2.

BIDA is duly chartered and established by the Georgia Constitutional Development Authority, created by an act of the Georgia legislature, Ga. L. 1980, p. 2071 *et seq* (the "BIDA Amendment"). BIDA's principal place of business is 3667 Main Street, College Park, Georgia 30337, located in Fulton County.

3.

This Court has jurisdiction pursuant to 28 U.S.C. §1332, as the Parties are completely diverse from one another and the amount in controversy exceeds $75,000.00.

4.

Venue in this district is proper under 28 U.S.C. §1391(b), as a substantial part of the events giving rise to the within claims occurred in this judicial district, which is located within Fulton County, GA.

## <u>STATEMENT OF FACTS</u>

### 5.

The Parties entered into the Agreements in or around 2008.

### 6.

The Agreements were initially drafted by BIDA or its counsel.

### 7.

The Agreements were intended to provide the legal framework for the development, operation, and maintenance of the Project Parcel.

### 8.

A primary purpose of the Agreements was to induce Gateway to develop the Project Parcel.

### 9.

Gateway developed the Project Parcel.

### 10.

Under the PDDO Agreement (a true and correct copy of which is attached hereto as **Exhibit 1**) and the Pilot Agreement (a true and correct copy of which is attached hereto as **Exhibit 2**), the PILOT assessments are to be calculated as an "amount equal to the ad valorem property taxes that would be due if title to the [Project] were vested in [Gateway]."

11.

The Agreements contemplate that the tax assessor of Clayton County provide the Parties a fair market value ("FMV") of the Project, so that a reasonable estimate of ad valorem taxes can be made.

12.

The Agreements further contemplate cooperation between BIDA and Gateway in securing the fair market value of the property.

13.

The Agreements contemplate that Gateway shall have appeal rights should it determine that the FMV or assessed value of the Project Parcel is improper.

14.

In conflict with the intentions of the Parties, because the property is tax exempt, there is no obligation for the tax assessor to meaningfully assess the Project Parcel or to provide a good faith estimate of FMV.

15.

Beginning not later than in or around 2020 and continuing in each year since, the Clayton County tax assessor has provided an arbitrary valuation for the Project Parcel. Such valuations were based on neither a legitimate mathematical formula nor any other relevant information that could reasonably be used to value to Project.

16.

BIDA has at all relevant times been aware that since 2020, the Clayton County

tax assessor has willfully failed to value the Project in a manner similar to how it

values other similar properties, or in fact in any reasonable manner whatsoever.

17.

Gateway was not provided timely notice of the tax assessor's 2020, 2021, and

2022 assessments, nor any appeal rights.

18.

BIDA willfully failed to challenge or otherwise appeal any of the 2020, 2021,

and 2022 FMV assessments, despite knowing that such assessments were not based

on even a remote approximation of the Project's actual value.

19.

To the contrary, BIDA seized on the false and inflated valuations to charge

Gateway exorbitant PILOT assessments, while simultaneously depriving Gateway

of any mechanism to appeal the assessments.

20.

BIDA has unreasonably, unfairly, and illegally charged PILOT assessments

to Gateway for the years 2020 - 2022 which it knows are based on arbitrary,

capricious, and false valuations of the Project.

21.

Specifically at issue in this case is the 2022 PILOT assessment, which BIDA claims requires Gateway to pay $761,945.29. A true and correct copy of the 2022 PILOT assessment, as presented by BIDA, is attached hereto as **Exhibit 3**.

22.

BIDA asserts that the 2022 PILOT assessment must be paid pursuant to the Agreements.

23.

Gateway contends that the 2022 PILOT assessment is neither owed nor due, because it is based on an arbitrary and capricious valuation, which was unreasonably relied upon by BIDA, and because Gateway's appeal rights under the Agreements are illusory.

24.

In addition, part of the 2022 PILOT invoice issued by BIDA (specifically, $223,723.20 out of the total $761,945.29 PILOT invoice) seeks payment from Gateway for special assessments levied by the City of College Park. As described below, these assessments are not lawful, and therefore cannot constitute an approximation of the taxes which "would be due if title to the [Project] were vested in [Gateway]."

25.

Special assessments are designed for the improvement and infrastructure of the Project Parcel.  Once the improvements have been completed, there is no obligation to continue payments for a special assessment, as same would no longer be a legal special assessment.

26.

The BIDA Amendment states that the City of College Park can create special tax districts "… upon the areas of any projects for redevelopment or development that said Authority may determine, and to levy and collect taxes withing such districts based on values of real property fixed by the tax digest of the City of College Park to meet, pay for and retire and all financial obligations of the Authority, its bonds and/or revenue certificates, and may pledge said revenue, and to levy and collect taxes within said districts for the retirement of said financial obligations."

27.

On information and belief, funds collected by levy and pursuant to the PILOT Agreement have not been used by the City of College Park in a manner authorized by law. On information and belief, BIDA is well aware of this fact but continues its efforts to improperly collect special assessment payments from Plaintiff.

-10-

28.

The Georgia International Convention Center Area Infrastructure Special Tax District ("GICC Tax District") increased the millage rate by an astronomical 267% in 2020, thereby increasing the alleged special assessment and PILOT payments due from Plaintiff for all years since 2020, including 2022.

29.

Pursuant to the applicable GICC Tax District Ordinance, the purpose of the GICC Tax District is for the "installation of all infrastructure, including roads and utilities, to serve the area encompassed by the GICC Tax District."

30.

On information and belief, having faced a budget deficit for both the convention center and BIDA, at a College Park City Council meeting it was determined to arbitrarily increase the 2020 millage rate to provide a surplus of funds for BIDA, to the detriment of Plaintiff. This arbitrarily inflated millage rate has been in place since 2020, including for the year 2022.

31.

On information and belief, the funds generated by the increased millage rate were used and are intended to be used for operational expenses at the convention

center, contrary to the intent of applicable law, the BIDA Amendment, and the PILOT Agreement.

32.

On information and belief, BIDA has been aware of the improper use of the special assessment levy as the same benefits BIDA to the detriment of Plaintiff. Further, the increase in property value, falsely and artificially inflated by the tax assessor and unreasonably relied upon by BIDA, coupled with a dramatic increase in the millage rate, has caused further harm to Plaintiff.

33.

BIDA's conduct as described above has placed Gateway in a position of uncertainty as to its rights, as BIDA apparently contends that, in calculating the purported PILOT assessments, it can rely on any county-generated valuation of the Project Parcel, regardless of how arbitrary or unreasonable. Likewise, BIDA has invoiced PILOT charges for special assessments which are unlawful, and therefore cannot constitute what taxes would be if the Project Parcel were not tax exempt. Gateway, contends that such conduct by BIDA is not authorized under the Parties' Agreements. If BIDA's conduct were to continue into the future, it could mean the financial ruin of Gateway and the Project.

34.

Gateway has been and will continue to be damaged if BIDA can place it in a position of uncertainty with respect to the Agreements because it will be constrained in making any future business decisions regarding the Project, as BIDA could effectively put Gateway out of business through its arbitrary and capricious PILOT assessments.

35.

Accordingly, in addition to other relief, Gateway seeks a declaration from this Court as to its rights. Specifically, Gateway seeks confirmation that the Agreements do not allow BIDA to unreasonably rely on arbitrary and capricious valuations in calculating PILOT assessments or to invoice Gateway for unlawful special assessments. Alternatively, Gateway seeks to have the PILOT assessment language of the Agreements found invalid and unenforceable, including because it contemplates appeal rights which are illusory.

## COUNT I
## DECLARATORY JUDGMENT

36.

Gateway incorporates the preceding paragraphs as if fully stated herein.

37.

A substantial, justiciable, and actual controversy exists between Gateway and BIDA concerning BIDA's purported rights to charge Gateway for PILOT assessments under the Agreements without regard to the true value of the Project Parcel.

38.

A substantial, justiciable, and actual controversy exists between Gateway and BIDA concerning BIDA's purported rights to charge Gateway for PILOT assessments under the Agreements even though BIDA has deprived Gateway of the ability to appeal the assessments.

39.

A substantial, justiciable, and actual controversy also exists between Gateway and BIDA concerning BIDA's purported rights to charge Gateway for special assessments which are not authorized by law or contract, as set forth above.

40.

Gateway reasonably believes that the Agreements cannot be used by BIDA as a basis for charging unreasonable amounts to Gateway as purported PILOT assessments when such assessments are not actually intended by BIDA to be a substitute for what ad valorem taxes would have been had taxes been due. In other

words, Gateway contends that the PILOT assessments cannot be based on an arbitrary and capricious valuation of the Project Parcel, since such a valuation would never support a county-generated tax assessment if the Project Parcel were not tax exempt. Likewise, Gateway contends that the PILOT assessments cannot be based on unlawful and unauthorized special assessments, again, since such special assessments would not and could not support a lawful tax assessment if the Project Parcel were not tax exempt.

41.

If BIDA is authorized to unreasonably, arbitrarily, and capriciously make PILOT assessments in disregard for the FMV of the Project Parcel, and in contravention of applicable law, then Gateway's ability to operate its business, and to plan for future business operations, will be dramatically impacted.

42.

Gateway is in a position of uncertainty and insecurity as to its rights, interests, status, and legal relations. Without ruling from the Court, there is a significant likelihood that Gateway will be hindered in its business activities. Thus, Gateway respectfully requests that this Court afford it with certainty and declaratory relief as set forth above.

43.

**WHEREFORE**, Gateway is entitled to a declaration and decree, pursuant to Federal Rule of Procedure 57 and 28 U.S.C. § 2201, that: (a) the Agreements do not allow BIDA to unreasonably, arbitrarily, and capriciously rely on false and/or unsupported Project Parcel valuations in calculating PILOT assessments; (b) the Agreements do not and cannot support the issuance of PILOT invoices which have as their basis special assessments which are themselves not authorized by applicable law; (c) that no PILOT assessment may be charged in the absence of appeal rights having been afforded to Gateway; or (d) that the sections of the Agreements which relate to PILOT assessments are invalid and unenforceable because: (1) the Agreements rely on the County tax assessor's legitimate valuation of the Project Parcel despite the fact that the County tax assessor is not required to value the Project Parcel, and in fact has arbitrarily and capriciously placed a value on the Project Parcel for tax year 2022 in a manner that bears no relation to how otherwise similarly situated taxable real estate (as compared to tax exempt real estate) is actually valued by the County, and/or (2) because Gateway's appeal rights with respect to PILOT payments are illusory, and thus the Agreements are not capable of being performed as intended.

## COUNT II
## BREACH OF CONTRACT

44.

Gateway incorporates each of the paragraphs above as if fully stated herein.

45.

At all relevant times, the Parties hereto have been bound by the Agreements.

46.

In calculating the amount of the 2022 PILOT assessment, under both Agreements, and specifically pursuant to Section 7 of the PILOT Agreement and Section 16.2 of the PDDO Agreement, BIDA was required to obtain the fair market value of the Project Parcel for the 2022 tax year.

47.

The County tax assessor's purported 2022 assessment of the value of the Project Parcel does not reflect the fair market value of the Project Parcel.

48.

On information and belief, the County tax assessor's purported 2022 assessment of the value of the Project Parcel was never intended to reflect the fair market value of the Project Parcel.

49.

On information and belief, the County tax assessor willfully failed to calculate the fair market value of the Project Parcel because the Project Parcel is tax exempt. As a result, the County tax assessor did not value the Project Parcel using a reliable or commercially reasonable valuation technique, and instead arbitrarily and capriciously assigned a valuation which did not reflect the true value of the Project Parcel. Likewise, the County tax assessor treated the Project Parcel different – for purposes of valuation and otherwise – than it treats similarly situated taxable property. As a result, the 2022 valuation of the County tax assessor cannot be used to determine the amount of ad valorem property taxes for tax year 2022 that would be due if title to the Project Parcel were vested in Gateway as set forth in Section 2 of the Pilot Agreement.

50.

BIDA willfully. maliciously, and unreasonably failed to obtain a fair market valuation of the Project Parcel for tax year 2022, and instead knowingly relied on an arbitrary and capricious valuation made by the County Tax Assessor.

51.

BIDA is obligated to cooperate with Gateway and in furnishing to the tax assessor of Clayton County information which is reasonably required to establish the fair market value of the Project Parcel.

52.

Despite its knowledge that the purported valuation of the Project Parcel was unreasonable in tax years 2020 and 2021, and despite its knowledge that the valuation was likewise unreasonable in 2022, BIDA has refused to cooperate with Gateway – in breach of Section 7 of the PILOT AGREEMENT – in furnishing information to the tax assessor such that the tax assessor could provide a fair market valuation of the Project Parcel.

53.

In summary, BIDA has breached the Agreements by: (1) purporting to charge a 2022 PILOT assessment which does not reflect a reasonable approximation of the ad valorem taxes that would be due if the Project Parcel were not tax exempt, in breach of Sections 2 and 7 of the PILOT Agreement and Section 16.2 of the PDDO Agreement; (2) by failing to obtain the fair market value of the Project Parcel prior to issuing its purported PILOT assessment for 2022, in breach of Section 7 of the PILOT Agreement and Section 16.2 of the PDDO Agreement; (3) by failing to

furnish information to the county tax assessor which would allow the tax assessor to fairly value the Project Parcel, in breach of Section 7 of the PILOT Agreement and Section 16.2 of the PDDO Agreement; and (4) by failing to cooperate with Gateway in regards to the same, in breach of Section 7 of the PILOT Agreement and Section 16.2 of the PDDO Agreement.

54.

As a direct and proximate consequence of BIDA's breaches of contract, Gateway has suffered damages in an amount to be proven at trial.

55.

**WHEREFORE**, Gateway seeks monetary damages, attorneys' fees and costs, and such other and further relief as the court deems appropriate.

**<u>COUNT III</u>**
**BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING**

56.

Gateway incorporates each of the paragraphs above as if fully stated herein.

57.

A covenant of good faith and fair dealing is implied in every Georgia contract and imposes upon each party a duty of good faith and fair dealing in its performance.

-20-

58.

Where an agreement affords one party the power to make a discretionary decision without defined standards, the duty to act in good faith limits that party's ability to act capriciously to contravene the reasonable contractual expectations of the other party.

59.

The Agreements contemplate the payment of PILOT payments, but do not define standards for doing so when the County Tax assessor has failed to fairly and adequately value the property.

60.

If the Agreements are judicially determined to allow BIDA to charge PILOT assessments which are not agreed to by Gateway, the Agreements necessarily allow BIDA discretion, in coordination with Gateway, to calculate the PILOT assessments in those situations when, like in 2022, the county tax assessor has not fairly valued the Project Parcel.

61.

In such circumstances, BIDA has an obligation to exercise its discretion in good faith, and not capriciously or in bad faith.

62.

Nonetheless, in breach of its obligation of good faith and fair dealing, in calculating the PILOT assessments BIDA contends are owed for the year 2022, BIDA has willfully, maliciously, and unreasonably relied on a valuation of the Project Parcel it knows to be incorrect. BIDA has done this to extract payments from Gateway which BIDA has no lawful entitlement to receive.

63.

The Agreements likewise purport to allow Gateway to appeal any valuation of the property, but do not define the standards for BIDA's conduct in regard to hearing or facilitating such appeals.

64.

Because the assessed value is not a legally binding tax assessment, Section 7 of the PILOT Agreement allows Gateway to appeal to any party capable of hearing such appeal, including BIDA itself. Yet, Section 7 of the PILOT Agreement does not define the standards by which BIDA will consider any such appeal.

65.

Thus, in considering any appeal, BIDA had an obligation to exercise its discretion in good faith, and not capriciously or in bad faith.

66.

However, BIDA has refused, in bad faith, to consider the appeals of Gateway in regard to Gateway's contention that the 2022 PILOT assessment is based on a valuation which was conducted in an arbitrary and capricious manner.

67.

In regard to all of the above, BIDA has acted in bad faith for the purposes of unlawfully extracting money from Gateway and depriving Gateway of any recourse, all in violation of the covenant of good faith and fair dealing.

68.

As a direct, proximate, and legal result of the aforementioned breaches of the covenant of good faith and fair dealing, Gateway has suffered damages in an amount to be proven at trial.

69.

**WHEREFORE**, Gateway seeks a judicial declaration that the PILOT assessments purportedly charged by BIDA, as well as BIDA's refusal to consider or facilitate any appeal, violate the duties of good faith and fair dealing. Gateway also seeks monetary damages resulting from BIDA's breaches of its duties. Gateway further seeks such any other and further relief deemed appropriate by this Court, including attorneys' fees and costs.

This 20th day of January, 2023.

*/s/ John C. Stivarius, Jr.*
John C. Stivarius, Jr.
Georgia Bar No. 682599
Justin B. Connell
Georgia Bar No. 142692
Brent D. Wasser
Georgia Bar No. 371672

**ELARBEE, THOMPSON, SAPP & WILSON, LLP**
229 Peachtree Street, N.E.
800 International Tower
Atlanta, Georgia 30303
(404) 659-6700
(404) 222-9712 (Facsimile)
stivarius@elarbeethompson.com
connell@elarbeethompson.com
wasser@elarbeethompson.com
*Attorneys for Plaintiff*