# Exhibit 2

09566
00375

FILED
CLAYTON CO., GA

2008 DEC -9 AM 11: 25

LINDA T. MILLER
CLERK SUPERIOR COURT

---------------------------------------Space Above This Line for Recorder's Use---------------------------------------

After recording, please return to:
Kilpatrick Stockton LLP
1100 Peachtree Street - Suite 2800
Atlanta, Georgia 30309-4530
Attn: Eunice S. Smith

## PARCEL PILOT AGREEMENT (PROJECT PARCEL 7, LOT 1)

**THIS PARCEL PILOT AGREEMENT (PROJECT PARCEL 7, LOT 1)** (this "Agreement"), made and entered into as of this 1st day of December 2008, by and between the College Park Business and Industrial Development Authority (the "Authority"), a Georgia public corporation, and College Park Gateway Office One, LLC (the "Parcel Developer"), a Delaware limited liability company.

**WHEREAS**, the Authority is the owner of approximately 4.82 acres of real property, more particularly described on Exhibit A attached hereto and by this reference made a part hereof (the "Parcel"), on which is or will be located an approximately 130,000 gross square foot, four story office building and related structured and surface parking (the "Parcel Improvements"); and

**WHEREAS**, the Parcel Developer has agreed to design, develop, and operate on the Parcel for and on behalf of the Authority the Parcel Improvements, pursuant to the terms of a Parcel Design, Development, and Operating Agreement (Project Parcel 7, Lot 1), dated December 2, 2008, between the Authority and the Parcel Developer, as the same may be supplemented and amended from time to time (the "Parcel DDO Agreement"); and

THE RIGHTS AND INTEREST OF THE COLLEGE PARK BUSINESS AND INDUSTRIAL DEVELOPMENT AUTHORITY IN THIS PARCEL PILOT AGREEMENT (PROJECT PARCEL 7, LOT 1) AND THE REVENUES AND RECEIPTS DERIVED HEREFROM HAVE BEEN ASSIGNED AND ARE THE SUBJECT OF A GRANT OF A SECURITY INTEREST TO U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, UNDER A TRUST INDENTURE AND SECURITY AGREEMENT, DATED AS OF DECEMBER 1, 2008.

BK09566PG375

US2000 11103709.4

**WHEREAS**, pursuant to the terms of the Parcel DDO Agreement, the Parcel Developer will operate the Parcel and the Parcel Improvements (collectively the "Parcel Project") for and on behalf of the Authority for a management fee equal to the gross revenues to be derived from the operation of the Parcel Project and will be obligated to pay all costs of operating, maintaining, and repairing the Parcel Project; and

**WHEREAS**, since the Parcel Project will be owned by the Authority, the Parcel Project will be exempt from ad valorem taxation, but the Authority desires to impose payments in lieu of ad valorem property taxes upon the Parcel Developer, pursuant to the terms of this Agreement; and

**WHEREAS**, the Authority has issued its Economic Development Revenue Bonds (Gateway Initial Office Project), Series 2008A (the "Series 2008A Bonds"), in the original aggregate principal amount of $7,445,000, pursuant to the terms of a Trust Indenture and Security Agreement (the "Indenture"), dated as of December 1, 2008, between the Authority and U.S. Bank National Association, as trustee (the "Trustee"), in order to finance a portion of the costs of acquiring, constructing, and installing the project that originally included the Parcel and will apply payments received pursuant to this Agreement to the payment of the principal of and interest on the Series 2008A Bonds;

### NOW, THEREFORE, WITNESSETH THAT:

1. In consideration of the issuance by the Authority of the Series 2008A Bonds and the application of the proceeds of the Series 2008A Bonds to finance a portion of the costs of acquiring, constructing, and installing the project that originally included the Parcel, and in consideration of the Authority's execution of the Parcel DDO Agreement, and in further consideration of the laws of the State of Georgia granting an exemption from ad valorem taxation for the Parcel Project, the Parcel Developer agrees to pay in lieu of ad valorem property taxes the following sums to or for the account of the Authority as hereinafter provided.

2. In lieu of the ad valorem property taxes for the Parcel Project for the period of time that title to the Parcel Project is vested in the Authority, other than special assessments levied on account of special benefits, the Parcel Developer shall pay by separate check to the Authority, or other appropriate officer designated by the Authority, on or before the day of each year set for the payment of ad valorem property taxes in Clayton County generally, an amount equal to the ad valorem property taxes that would be due if title to the Parcel Project were vested in the Parcel Developer.

3. [Reserved].

4. In the event that any tangible property interest of the Parcel Developer in the Parcel Project becomes subject to ad valorem property taxation during the period of time that title to the Parcel Project is vested in the Authority, the amounts to be paid hereunder shall be reduced (but not below zero) by the actual payments paid by the Parcel Developer or any party that succeeds to the interest of the Parcel Developer under the Parcel DDO Agreement (including, without limitation, any lender of the Parcel Developer) as such taxes, other than special assessments.

09566 00377

5. All special assessments levied on account of special benefits shall not abate and shall continue to be the obligation of the Parcel Developer until completely paid.

6. Should the Parcel Developer fail to make payments stated in paragraph 2 above, penalty or interest will be assessed against the Parcel Developer by the Authority in accordance with applicable Georgia laws relating to late ad valorem property tax payments.

7. In calculating the amounts payable pursuant to paragraph 2 above, the Authority and the Parcel Developer shall obtain from the tax assessor of Clayton County the fair market value and the assessed value of the Parcel Project for the year in which such payments are due. The Authority shall file all tax returns and other reports with the tax assessor of Clayton County that are necessary or desirable in order to establish the fair market value of the Parcel Project from time to time and shall obtain exemption from all ad valorem property taxes to the extent permitted under applicable Georgia laws. The Authority and the Parcel Developer shall cooperate fully in furnishing to the tax assessor of Clayton County such information as may be reasonably required to establish the fair market value of the Parcel Project for ad valorem property tax purposes. The Parcel Developer, at its sole cost and expense, may, in the name and on behalf of the Authority, contest or appeal the fair market value or assessed value of the Parcel Project determined by the tax assessor of Clayton County, using any contest or appeal rights that are available to the Authority under applicable Georgia laws.

8. To secure its obligation to pay principal of, premium, if any, and interest on the revenue bonds to be issued under the Indenture (the "Bonds"), including the Series 2008A Bonds, the Authority will assign and pledge to the Trustee, and grant a first priority security interest in, all of its right, title, and interest in this Agreement and the payments to be made hereunder, pursuant to the Indenture. The Parcel Developer hereby assents to the assignment and grant of a first priority security interest to the Trustee for the benefit of the owners of the Bonds (the "Bondholders") made in the Indenture and hereby agrees that its obligations to make all payments under this Agreement shall be absolute and shall not be subject to any defense, except payment, or to any right of setoff, counterclaim, or recoupment arising out of any breach by the Authority of any obligation to the Parcel Developer, whether hereunder or otherwise, or arising out of any indebtedness or liability at any time owing to the Parcel Developer by the Authority. The Parcel Developer further agrees that all payments required to be made under this Agreement shall be paid directly to the Trustee for the account of the Authority. The Trustee shall have all rights and remedies herein accorded to the Authority, and any reference herein to the Authority shall be deemed, with the necessary changes in detail, to include the Trustee, and the Trustee and the Bondholders are deemed to be and are third party beneficiaries of the representations, covenants, and agreements of the Parcel Developer herein contained.

9. Any deed to secure debt, mortgage, or other instrument securing any Financing (as defined in the Parcel DDO Agreement) shall provide that the payments required by paragraph 2 above shall be superior in priority to the payment of the principal of, premium, if any, and interest on the Financing and shall provide that title to the Parcel Project shall not be transferred from the Authority pursuant to such security instrument before the Indenture is fully discharged. The remedies that may be exercised in such a security instrument before the Indenture is fully discharged include, without limitation, (1) the assignment of the Parcel DDO Agreement, (2) the taking of possession of the Parcel Project or any portion thereof by the lender or its agent and the

US2000 11103709.4

BK09566PG377

operation of the Parcel Project or any portion thereof by the lender or its agent, and (3) the appointment of a receiver by the lender to take possession of and operate the Parcel Project or any portion thereof. Any such security instrument shall provide that the party in possession of the Parcel Project or any portion thereof as a result of the exercise of remedies contained in such a security instrument shall assume the obligations of the Parcel Developer under this Agreement.

10. The Authority shall take all actions that are necessary or desirable to cause the Parcel to be treated as a separate tax parcel with the tax assessor of Clayton County, so that the Parcel is assessed separately from the remainder of the parcel of which it was originally a part, for ad valorem property tax purposes and has its own assessed value. The Authority shall take all actions that are necessary or desirable to remove from such separate tax parcel any portion of the Parcel that becomes subject to a separate Parcel Design, Development, and Operating Agreement, as contemplated by Section 2.4 of the Parcel DDO Agreement.

11. Subject to the provisions of paragraph 9 hereof, the Authority shall not (a) sell, transfer, or convey the Parcel Project to any person or entity that is not exempt from ad valorem property taxation or (b) take any other action that might reasonably be construed as causing or inducing the levy or assessment of ad valorem property taxes on the Parcel Project.

12. The Authority shall reimburse the Parcel Developer, on the terms hereinafter set forth, the Annual Fee Payment (as defined in the Parcel DDO Agreement) paid to the Authority by the Parcel Developer prior to the earlier to occur of (i) the date of issuance of a certificate of occupancy (either temporary or permanent) for the Parcel Project or (ii) the date upon which the Parcel Improvements must be completed as set forth in the Parcel DDO Agreement. The payments set forth in this paragraph 12 and paragraph 12 of all other Pilot Agreements (as defined in the Indenture) shall be payable solely from and limited to the difference between the Pilot Payments (as defined in the Indenture) received by the Authority and the debt service paid by the Authority on the Series 2008A Bonds, with 50% of such excess being reserved to reimburse the Authority for payments of debt service on the Series 2008A Bonds made with sources of funds other than the proceeds of the Series 2008A Bonds or Pilot Payments received by the Authority. The Authority shall report to the Parcel Developer, annually on or before March 1 of each year, the Pilot Payments received by the Authority and the debt service paid by the Authority on the Series 2008A Bonds for the preceding bond year (February 2 - February 1). The payments set forth in this paragraph 12 shall be due on or before March 31 of each year.

13. The Parcel Developer hereby covenants and agrees that it will comply with and carry out all of the provisions of the Continuing Disclosure Agreement, dated the date hereof, between the Parcel Developer and the Trustee, as originally executed and as it may be amended from time to time in accordance with the terms thereof (the "Continuing Disclosure Agreement"). Notwithstanding any other provision of this Agreement, failure of the Parcel Developer to comply with the Continuing Disclosure Agreement shall not be considered a default hereunder; however, the Trustee may (and, at the request of any Participating Underwriter (as defined in the Continuing Disclosure Agreement) or the beneficial owners of at least 25% in aggregate principal amount of outstanding Bonds, shall) or any beneficial owner of the Bonds may take such actions as may be necessary and appropriate, including seeking specific performance by court order, to cause the Parcel Developer to comply with its obligations under this paragraph 13.

-4-

US2000 11103709.4

09566
00379

14. [Reserved].

15. This Agreement shall become effective upon its delivery and shall be in full force and effect until August 2, 2057.

16. All notices, certificates, requests, demands, or other communications hereunder shall be sufficiently given and shall be deemed given upon receipt, by hand delivery, mail, overnight delivery, telecopy, or other electronic means, addressed as follows:

|  |  |
|---|---|
| If to the Authority: | College Park Business and Industrial Development Authority<br>3667 Main Street<br>College Park, Georgia 30337<br>Telecopy: (404) 669-3799<br>Attention: Development Director |
| with copies to: | City of College Park<br>City Hall Complex<br>3667 Main Street<br>College Park, Georgia 30337<br>Attention: City Manager |
|  | Fincher Denmark & Williams LLC<br>2262 Mount Zion Road<br>Jonesboro, Georgia 30236<br>Attention: Steven M. Fincher |
|  | Mack & Harris, P.C.<br>205 Corporate Center Drive<br>Suite B<br>Stockbridge, Georgia 30281<br>Attention: Robert L. Mack, Jr. |
| If to the Parcel Developer: | College Park Gateway Office One, LLC<br>3625 Cumberland Boulevard, Suite 400<br>Atlanta, Georgia 30339<br>Telecopy: (770) 818-4101<br>Attention: Kevin M. Kern, Manager |

BK09566PG379

US2000 11103709.4

09566
00380

|  |  |
|---|---|
| with copies to: | Sheley & Hall, P.C.<br>303 Peachtree Street, N.E.<br>Suite 4440<br>Atlanta, Georgia 30308<br>Attention: Raymond P. Sheley |
|  | GFIII/College Park Hotels LLC<br>c/o Pyramis Global Advisors Trust Company<br>82 Devonshire Street, G12C<br>Boston, Massachusetts 02109<br>Attention: Mr. Michael L. Elizondo |
|  | Pyramis Global Advisors Trust Company<br>82 Devonshire Street, G12C<br>Boston, Massachusetts 02109<br>Attention: David P. Lucey, Esq.<br>Goodwin Procter LLP<br>Exchange Place<br>Boston, Massachusetts 02109-2881<br>Attention: James M. Broderick, Esq. |
| If to the Trustee: | U.S. Bank National Association<br>1349 West Peachtree Street, N.W.<br>Suite 1050<br>Atlanta, Georgia 30309<br>Telecopy: (404) 365-7946<br>Attention: Corporate Trust Department |

BK09566PG380

A duplicate copy of each notice, certificate, or other communication given hereunder shall also be given to the Trustee. Any party named in this paragraph 16 may, by notice given to each of the others, designate any additional or different addresses to which subsequent notices, certificates, or other communications shall be sent. For purposes of this paragraph 16, "electronic means" shall mean telecopy or facsimile transmission or other similar electronic means of communication that produces evidence of transmission.

17. This Agreement constitutes the entire agreement of the parties with respect to the subject matter hereof and supersedes any prior agreements. This Agreement shall inure to the benefit of and shall be binding upon the Authority, the Parcel Developer, and their respective successors and assigns.

18. In the event any provision of this Agreement shall be held invalid or unenforceable by any court of competent jurisdiction, such holding shall not invalidate or render unenforceable any other provision hereof.

-6-

US2000 11103709.4

09566
00381

19. This Agreement may not be amended, changed, modified, altered, or terminated, except as provided in the Indenture and in each instance only with the prior written consent of the Trustee.

20. This Agreement may be executed in several counterparts, each of which shall be an original and all of which shall constitute but one and the same instrument.

21. This Agreement is prepared and entered into with the intention that the law of the State of Georgia, exclusive of such state's rules governing choice of law, shall govern its construction.

[Signatures and Seals To Follow]

BK09566PG381

US2000 11103709.4

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement as of the day and year first above written.

**COLLEGE PARK BUSINESS AND INDUSTRIAL DEVELOPMENT AUTHORITY**

By: *April H. Wyatt*
Chairman

Attest: *Myrna Brooks*
Secretary-Treasurer
(Ass't)

Signed, sealed, and delivered
this 5th day of December 2008
in the presence of:

_____
Unofficial Witness

_____
Notary Public

My Commission Expires: 3/18/2012
(date)

(NOTARIAL SEAL)

**COLLEGE PARK GATEWAY OFFICE ONE, LLC,**

By: _____
Manager

Signed, sealed, and delivered
this 5th day of December 2008
in the presence of:

_____
Unofficial Witness

_____
Notary Public

My Commission Expires: 8/2/09
(date)

(NOTARIAL SEAL)

US2000 11103709.4

-8-

BK09566PG382

## EXHIBIT "A"

## LEGAL DESCRIPTION

ALL THAT TRACT OR PARCEL of land being and lying in Land Lot 6 of the 13th District, Clayton County, Georgia and being more particularly described as follows:

Commencing at the intersection of the Western right-of-way line of Roosevelt Highway (right-of-way varies) and the Land Lot line common to Land Lot 27, 13th District of Clayton County and Land Lot 28, 13th District of Fulton County; Thence in a Northeasterly direction along said Western right-of-way line of Roosevelt Highway a distance of 708.79 feet to a 1/2 inch rebar found; Thence leaving the Western right-of-way line of Roosevelt Highway North 47 degrees 21 minutes 50 seconds West, a distance of 2.41 feet to a 5/8 inch rebar set, said 5/8 inch rebar set being the TRUE POINT OF BEGINNING. Thence North 47 degrees 22 minutes 33 seconds West, a distance of 257.13 feet to a 5/8 inch rebar set; Thence North 45 degrees 00 minutes 09 seconds East, a distance of 327.75 feet to a 5/8 inch rebar set; Thence North 10 degrees 00 minutes 00 seconds East, a distance of 236.71 feet to a 5/8 inch rebar set on the Southern right-of-way line of Convention Center Concourse (right-of-way varies); Thence along said southern right-of-way line of Convention Center Concourse along a curve to the left, having a radius of 470.00 feet, and an arc length of 273.75 feet, with a chord bearing of North 83 degrees 41 minutes 37 seconds East a chord distance of 269.90 feet to a 5/8 inch rebar set at the intersection of the Southern right-of-way line of Convention Center Concourse and the Western right-of-way line of Gateway Boulevard (right-of-way varies); Thence continuing along the Western right-of-way line of Gateway Boulevard the following four (4) courses and distances: (1) South 72 degrees 52 minutes 33 seconds East, a distance of 30.93 feet to 5/8 inch rebar set; (2) South 32 degrees 46 minutes 55 seconds East, a distance of 82.82 feet to a 5/8 inch rebar set; (3) along a curve to the left, having a radius of 520.00 feet, and an arc length of 54.46 feet, with a chord bearing of South 35 degrees 46 minutes 57 seconds East a chord distance of 54.44 feet to a 5/8 inch rebar set; (4) along a curve to the right, having a radius of 72.00 feet, and an arc length of 106.07 feet, with a chord bearing of South 03 degrees 58 minutes 43 seconds West a chord distance of 96.74 feet to a 5/8 inch rebar set at the intersection of the Western right-of-way line of Gateway Boulevard and the Western right-of-way line of Roosevelt Highway (right-of-way varies); Thence continuing along the Western right-of-way line of Roosevelt Highway the following five (5) courses and distances: (1) South 34 degrees 09 minutes 27 seconds West, a distance of 70.18 feet to a 5/8 inch rebar set; (2) South 46 degrees 11 minutes 59 seconds West, a distance of 135.11 feet to a 5/8 inch rebar set; (3) South 46 degrees 12 minutes 47 seconds West, a distance of 145.62 feet to a 5/8 inch rebar set; (4) South 53 degrees 46 minutes 00 seconds West, a distance of 52.20 feet to a 5/8 inch rebar set; (5) South 45 degrees 13 minutes 18 seconds West, a distance of 235.69 feet to a 5/8 inch rebar set, said 5/8 inch rebar set being the TRUE POINT OF BEGINNING.

Said tract or parcel of land containing 4.820 acres, more or less.

BK09566PG383

TOGETHER WITH:

1. those real property rights and appurtenant easements as set forth in that certain Master Declaration of Restrictions, Covenants, Conditions and Easements executed by the College Park Business and Industrial Development Authority dated April 10, 2008 and filed April 25, 2008 in Deed Book 46657, Page 216, Fulton County, Georgia records, and filed June 6, 2008 in Deed Book 9455, Page 582, Clayton County, Georgia records.

2. those real property rights and appurtenant easements as set forth in that certain People Mover Easement Agreement from Gateway Associates, L.P., a Georgia limited partnership, to City of Atlanta, a municipal corporation and political subdivision of the State of Georgia, dated April 17, 2000, filed April 24, 2000 and recorded in Deed Book 28909, Page 308, records of the Superior Court of Fulton County, Georgia and filed April 25, 2002 and recorded in Deed Book 4346, Page 152, records of the Superior Court of Clayton County, Georgia; as amended by First Amendment to People Mover Easement Agreement from Gateway Airport Associated, L.P., a Georgia limited partnership, to City of Atlanta, a municipal corporation and political subdivision of the State of Georgia, and College Park Business and Industrial Development Authority, dated October 10, 2005, filed January 19, 2006 and recorded in Deed Book 41752, Page 575, records of the Superior Court of Fulton County, Georgia; as assigned by that certain Assignment and Assumption Agreement by and between Gateway Airport Associates, L.P. and College Park Business and Industrial Authority, dated August 21, 2007, filed September 11, 2007 and recorded in Deed Book 45667, Page 428, records of the Superior Court of Fulton County, Georgia and filed September 10, 2007 and recorded in Deed Book 9237, Page 1, records of the Superior Court of Clayton County, Georgia.

3. those real property rights and appurtenant easements as set forth in that certain Easement Agreement by and between City of Atlanta, a municipal corporation and political subdivision of the State of Georgia, and Gateway Airport Associates, L.P., a Georgia limited partnership, dated October 10, 2005, filed November 2, 2005 and recorded in Deed Book 8369, Page 1, records of the Superior Court of Clayton County, Georgia and filed December 6, 2006 and recorded in Deed Book 44035, Page 667, records of the Superior court of Fulton County, Georgia.

4. those real property rights and appurtenant easements as set forth in that certain Construction and Air Rights Use and Easement Agreement (Tract 7, Lot 1) by and between College Park Business and Industrial Development Authority, and College Park Gateway Office One, LLC, a Delaware limited liability company, dated December 5, 2008, to be filed and recorded in records of the Superior Court of Clayton County, Georgia.

5. those real property rights and appurtenant easements as set forth in that certain Access and Utility Easement and Use Agreement (Tract 7, Lot 1) by and between College Park Business and Industrial Development Authority, and College Park Gateway Office One, LLC, a Delaware limited liability company, dated December 5, 2008, to be filed and recorded in records of the Superior Court of Clayton County, Georgia.

BK09566PG384

09566
00385

6. those real property rights and appurtenant easements set forth in that certain APM Use and Access Easement Agreement (Tract 7, Lot 1) by and between College Park Business and Industrial Development Authority and College Park Gateway Office One, LLC, dated December 5, 2008, to be filed and recorded in records of the Superior Court of Clayton County, Georgia.

7. those real property rights and appurtenant easements set forth in that certain Tri-Party Agreement (Tract 7, Lot 1) by and among College Park Business and Industrial Development Authority, College Park Gateway Office One, LLC, and City Of College Park, dated December 5, 2008, to be filed and recorded in records of the Superior Court of Clayton County, Georgia.

8. those real property rights and appurtenant easements set forth in that certain Property Use and Access Easement Agreement (Tract 7, Lot 1) by and between College Park Business and Industrial Development Authority and College Park Gateway Office One, LLC, dated December 5, 2008, to be filed and recorded in records of the Superior Court of Clayton County, Georgia.

9. those real property rights and appurtenant easements set forth in that certain Declaration of Easements and Common Uses (Tract 7, Lot 1), dated December 5, 2008, to be filed and recorded in records of the Superior Court of Clayton County, Georgia.