IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| Miranda Whitworth, | ) | |
| Plaintiff, | ) ) ) | Civil Action File No.: |
| vs. | ) ) ) | |
| Cascade Capital Funding, LLC, | ) ) | **COMPLAINT WITH** <br> **JURY TRIAL DEMAND** |
| Defendant | ) ) | |

## PRELIMINARY STATEMENT

This action for damages is based upon the Defendant's overt and intentional, unlawful conduct in the furtherance of its efforts to collect a consumer debt. The Defendant's conduct is in violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq. and the Georgia Fair Business Practices Act, (GFBPA) O.C.G.A. 10-1-390 et seq.

## PARTIES

1. Plaintiff, Miranda Whitworth, is a natural person who resides in Hart County, Georgia.

2. Defendant, Cascade Capital Funding, LLC, (Cascade) is a foreign limited liability corporation registered to do business in Georgia. Defendant may be

1

served with process via its registered agent, Corporation Service Company at 40 Technology Parkway South, Suite 300, Norcross, Georgia 30092.

## JURISDICTION AND VENUE

3. This Court has federal question jurisdiction over Plaintiff's Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq., claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d). This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4. This Court has personal jurisdiction over Defendant because, inter alia, Defendants frequently and routinely conducts business in the State of Georgia, including the conduct complained of herein.

5. Pursuant to 28 U.S.C. § 1391, venue is proper in the Northern District of Georgia because a substantial part of the events or omissions giving rise to the claims occurred in this district.

6. Venue is proper in the Atlanta Division because the Defendant maintains a Registered Agent in Gwinnett County.

## FACTUAL ALLEGATIONS

7. Plaintiff is a 44-year-old woman with deteriorating health. She is disabled, unable to engage in competitive employment, and is in the process of obtaining disability insurance benefits through the Social Security Administration.

8. Plaintiff is allegedly obligated to pay a consumer debt arising out of medical services and is, therefore, a "consumer", as that term is defined by 15 U.S.C. § 1692a(3).

9. Defendant's principal business is the purchase of consumer debt and the collection of those accounts for its commercial benefit. Defendant regularly collects, or attempts to collect, directly or indirectly, debts owed or due, or asserted to be owed or due, to a third party.

10. Defendant uses interstate commerce and/or mail in its business in the collection of consumer debts.

11. Defendant manages, and collects upon, thousands of consumer debt accounts annually.

12. Defendant is, therefore, a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

13. As a result of her physical condition, it is common for the Plaintiff to require emergency medical services.

14. The Plaintiff has been a recipient of Medicaid as administered by the State of Georgia's plan since 1999.

15. In December, 2019, the Plaintiff was the recipient of emergency care at St. Mary's Hospital/Sacred Heart Hospital (St. Mary's) and a medical group identified as Sound Physicians.

16. Sound Physicians is a physician group that contracts with various hospitals to provide emergency room care.

17. Upon her admittance, the Plaintiff advised hospital personnel that she was covered under Georgia's Medicaid program.

18. At the time the medical services were rendered at St. Mary's, it was a provider that accepted Medicaid patients.

19. Emergency room care is a mandatory benefit that Medicaid covers in every state. In Georgia, a Medicaid patient may be charged a co-pay of no more than $3.00. [1]

20. Sound Physicians attempted to bill the Plaintiff the sum of $1,761.00 for services rendered at St. Mary's Hospital in violation of its contracts with both St. Mary's and with Georgia Medicaid.

---

[1] https://www.medicareadvantage.com/medicaid/does-medicaid-cover-emergency-room-isits#:~:text=Emergency%20room%20care%20is%20a,Medicaid%20covers%20in%20every%20state.

21. Subsequently, the account was purchased by the Defendant.

22. In keeping with its business model, Cascade soon began collection efforts against the Plaintiff for the face value of the amount charged by Sound Physicians,

23. In 2021, the Defendant was represented by Financial Data Systems, (FDS) a national consumer collection agency based in Wilmington, North Carolina (hereinafter referred to as FDS.)

24. FDS was the Defendant's agent for collection with respect to the Plaintiff. All actions taken by FDS in its attempt to collect the debt held by the Defendant were taken at the behest of and for the benefit of the Defendant.

25. In response to telephone calls she received from FDS, Plaintiff called FDS On September 7th, 2021.

26. She was connected with an individual identifying herself as an agent of FDS, who confirmed that it was collecting a debt originating at St. Mary's Hospital by and through Sound Physicians in the amount of $1,761.00. FDS advised that the date of treatment was December 27th, 2019.

27. The Plaintiff responded by informing FDS that she was a Medicaid recipient and that the bill should have been paid through that program.

28. The Plaintiff specifically requested of FDS that she not receive any further telephonic or written communications regarding this debt. FDS responded that she would not.

29. On September 17th, 2021, the Plaintiff caused to be sent to FDS a letter specifically advising FDS and, through its agent, the Defendant, that she would not make any payments on the account in collection.

30. Plaintiff's statement that she will not be making a payment on the account was a refusal to pay the account.

31. Plaintiff's written correspondence was sent to Defendants with the intention that Defendants cease contacting Plaintiff about the debt.

32. The Fair Debt Collection Practices Act provides an indisputable means by which a consumer may discontinue most communications from a collector, thereby preserving their peace. 15 U.S.C. § 1692c.

33. The act states specifically, "If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt, or if the consumer wishes the debt collector to cease their communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt. 15 U.S.C. § 1692c(c).

34. The statute further provides three exceptions related to future communications that include the debt collector advising the consumer that further efforts are being terminated, that the collector may invoke specified remedies which are ordinarily invoked by such a debt collector, or that the debt collector intends to invoke a specified remedy.

35. The FDCPA does not require Plaintiff's refusal to pay to be unconditional, nor does it require that Plaintiff's wish to be left alone be stated in the most general terms. *See Barnes v. Seterus, Inc.*, 2013 U.S. Dist. LEXIS 180418, at *4-5 (S.D. Fla. Dec. 26, 2013).

36. The ordinary meaning of refuse does not encompass an unalterable rejection and the FDCPA does not require that the consumer use any specific language or magic words to tell a debt collector to cease communication. *Bishop v. I.C. Systems, Inc.*, 713 F. Supp. 2d 1361, 1367-68 (M.D. Fla. 2010).

37. FDS remained the Defendant's agent with respect to its collection efforts against the Plaintiff through at least October 4, 2021, when it last reported the account as in collection to Transunion, a national credit reporting agency.

38. Between October 5, 2021 and December 21st, 2021, the Defendant recalled the Plaintiff's account from FDS. During this same timeframe, the

Defendant retained Professional Bureau of Collections of Maryland, Inc. (PBCM) to continue its collection efforts against the Plaintiff.

39. Despite its previous agent, FDS, agreeing that the Plaintiff would not receive any future communications regarding this debt, and despite Defendant having knowledge that Plaintiff had invoked her right to cause a cessation of such communications under 15 U.S.C. § 1692c(c), Defendant provided its new agent, PBCM with Plaintiff's complete contact information.

40. Moreover, the Defendant instructed its new agent to institute collection activity including direct contact with the Plaintiff.

41. The Defendant did not advise PBCM of its agreement to halt communication, or that the Plaintiff had disputed the debt, or that Plaintiff had invoked a cessation of direct communication via her letter of September 17th, 2021.

42. In accordance with its instructions from the Defendant, PBCM instituted a collection campaign against the Plaintiff that included direct communication and reporting of the debt to various credit bureaus including TransUnion.

43. In response to communications from PBCM, Plaintiff initiated a call on April 26, 2022.

44. At that time she was connected to an individual identifying themselves as "Andrew Harris". After confirming Plaintiff's identity, Mr. Harris advised that PBCM was collecting the same debt on behalf of the Defendant that had previously been placed with FDS.

45. Plaintiff repeated the dispute originally conveyed to FDS, advising she was a Medicaid recipient and that she should not be billed for the charge in collection. Plaintiff advised PBCM that she refused to pay the account.

46. PBCM asked Plaintiff if she consented to automated communications to her cell phone, which she clearly rejected.

47. Despite Plaintiff's rejection of communications, both in September, 2021 and April 26, 2022, Defendant's agent PBCM sent two separate text messages seeking collection to Plaintiff on April 28, 2022.

48. Beginning no later than December 23rd, 2021, PBCM reported the Defendant's account in collection with TransUnion on Plaintiff's credit file. Defendant's agents reporting indicated that the amount owed was $1,761.00 and that the current status of the debt was a charge off in collection. Missing from the reporting of the Defendant's agent was the critical information that the account had been disputed by the Plaintiff.

49. The Defendant facilitated the FDCPA violations of PBCM by withholding information conveyed by its previous agent for collection and releasing to PBCM Plaintiff's private collection information.

50. The Defendant is liable for the acts and omissions of its agent, PBCM, in its collection efforts against the Plaintiff and, in particular, those acts and omissions that cause harm as a result of the Defendant failing to advise its agent of legal restrictions on collection efforts as invoked by the Plaintiff.

## INJURIES-IN-FACT AND DAMAGES

51. The FDCPA provides consumers with "statutorily-created rights to be free from 'being subjected to false, deceptive, unfair, or unconscionable means to collect a debt.'" *McCamis v. Servis One, Inc.*, No. 8:16-CV-1130-T-30AEP, 2016 U.S. Dist. LEXIS 99492 (M.D. Fla. July 29, 2016); *Church v. Accretive Health, Inc.*, 654 Fed. Appx. 990, 2016 U.S. App. LEXIS 12414, 2016 WL 3611543 (11th Cir. 2016).

52. An injury-in-fact sufficient to satisfy Article III standing requirements "may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Church*, at 993, quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373, 102 S. Ct. 1114, 71 L. Ed. 2d 214 (1982).

53. Violation of statutory rights are not a "hypothetical or uncertain" injury, but one "that Congress has elevated to the status of a legally cognizable injury through the FDCPA." *McCamis*, at 4, citing *Church*, at 3.

54. Defendant is subjecting Plaintiff to false, deceptive, and unfair means to collect the debt.

55. As a result of the Defendant's actions and/or omissions, Plaintiff has suffered actual damages, including but not limited to the following:

   a.) Being subjected to false, deceptive, and unfair debt collection practices;

   b.) Defendant's false and misleading communications to leading credit reporting bureaus, through its agent, were akin to defamation of the Plaintiff resulting in subscribers to the credit reporting services receiving a false impression of Plaintiff's credit worthiness and debt-to-income ratio;

   c.) Uncompensated time expended away from activities of daily living, to confer with counsel regarding the Defendant's collection efforts;

   d.) Disturbance of the Plaintiff's peace and her right to be free of communications from the Defendant or its agents after invoking her rights under 15 U.S.C. § 1692c(c);

   e.) The Plaintiff suffered a violation of her right to privacy.

f.) Anxiety and worry caused by concern that Defendant was going to continue making collection calls to/communicate with the Plaintiff through its agents;

56. Accordingly, through the violation of Plaintiffs' statutorily created rights under the FDCPA, Plaintiff has suffered an injury-in-fact sufficient to establish Article III standing.

## CAUSES OF ACTION

## COUNT I

**VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**
**15 U.S.C. § 1692 et. seq.**

*Violations of 15 U.SC. § 1692c and subparts*

57. The communications from the Defendant's agent, PBCM, violated 15 U.S.C. § 1692c(c).

*Violations of 15 U.SC. § 1692e and its subparts*

58. 15 U.S.C. § 1692e specifically prohibits the use of any false, deceptive, or misleading representations or means in connection with the collection of any debt.

59. The use of "or" in § 1692e means a representation violates the FDCPA if it is false or deceptive or misleading. *Bourff v. Rubin Lublin*, LLC, 674 F.3d 1238, 1241 (11th Cir. 2012).

60. "The FDCPA protects consumers from abusive and deceptive practices by debt collectors, and protects non-abusive debt collectors from competitive disadvantage. 15 U.S.C. § 1692(e). Section 1692e forbids the use of 'any false, deceptive, or misleading representation or means' in debt collection, and provides a non-exhaustive list of prohibited conduct." *United States v. National Financial Servs.*, 98 F.3d 131, 135 (4th Cir. 1996).

61. "Violations of Section 1692e are viewed from the perspective of the "least sophisticated consumer." *National Financial Servs.*, 98 F.3d at 135-36. "[E]valuating debt collection practices with an eye to the 'least sophisticated consumer' comports with basic consumer-protection principles." *Id.* at 136. The purpose of that standard "is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Id.* at 136 *quoting Clomon v. Jackson*, 988 F.2d 1314, 1318 (2nd Cir. 1983). Indeed, its purpose is to protect "naive consumers" with a minimal understanding of personal finance and debt collection. *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010) (per curiam).

62. Moreover, the least sophisticated consumer is not to be held to the same standard as a reasonably prudent consumer. The least sophisticated consumer, though not unreasonable, is "ignorant" and "unthinking," "gullible," and of "below-average sophistication or intelligence," *Pinson v. JPMorgan Chase Bank, Nat'l*

*Ass'n*, No. 16-17107, 2019 U.S. App. LEXIS 33662, at 12-13 (11th Cir. Nov. 12, 2019), quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993)

63. Moreover, the least sophisticated consumer is not to be held to the same standard as a reasonably prudent consumer. The least sophisticated consumer, though not unreasonable, is "ignorant" and "unthinking," "gullible," and of "below-average sophistication or intelligence," *Pinson v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 16-17107, 2019 U.S. App. LEXIS 33662, at 12-13 (11th Cir. Nov. 12, 2019), quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993).

64. A false representation in connection with the collection of a debt is sufficient to violate the FDCPA, even if it is not alleged or proven to be misleading or deceptive.

65. The Defendant's representation, through its then-agent FDS, that it would cease communication with the Plaintiff was a false and a material misrepresentation, and a violation of 15 U.S.C. §§ 1692e and 1692e(10).

66. The Defendant's failure, through its agent PBCM, to report the debt in collection as disputed was a violation of 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(8) and 1692e(10).

***Violations of 15 U.SC. § 1692f and its subparts***

67. The conduct of the Defendant as described herein was unfair and unconscionable. It preyed upon perceived lack of sophistication of the Plaintiff.

68. It violated other provisions of the Act to facilitate collection and, when it became clear payment by the Plaintiff was impossible, it sought to harass and embarrass the Plaintiff.

69. Defendant's conduct violated 15 U.S.C. § 1692f.

## COUNT II

## VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT
## O.C.G.A. § 10-1-390, et seq.

70. Plaintiff incorporates by reference paragraphs 1 through 69 as though fully stated herein.

71. O.C.G.A. § 10-1-390 et seq is commonly known as the "Fair Business Practices Act of 1975" (the "GFBPA").

72. The purpose of the GFBPA, is to protect consumers from unfair and/or deceptive practices in the conduct of any trade or commerce in part or wholly in the state. O.C.G.A. § 10-1-391.

73. O.C.G.A. § 10-1-391 directs that the GFPBA is to be interpreted and applied liberally and in harmony with the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1), which implements the FDCPA.

74. O.C.G.A. § 10-1-393(a) of the GFBPA broadly prohibits unfair and/or deceptive business practices.

75. Defendant intentionally engaged in unfair and deceptive business practices, as set forth herein, in an effort to collect a consumer debt.

76. Defendant's conduct has implications for the consuming public in general.

77. Defendant's conduct negatively impacts the consumer marketplace.

78. Upon information and belief, Defendant does not maintain a place of business in Georgia and has no assets in Georgia, thus relieving Plaintiffs of the Notice and Demand requirements of O.C.G.A. § 10-1-399(b).

79. As a result of Defendant's violations of O.C.G.A. § 10-1-393(a), Plaintiff is entitled to recover general damages pursuant to O.C.G.A. § 10-1-399(a).

80. As a result of Defendant's intentional violations of O.C.G.A. § 10-1-393(a), Plaintiff is entitled to recover exemplary damages pursuant to O.C.G.A. § 10-1-399(a).

81. As a result of Defendant's intentional violations of O.C.G.A. § 10-1-393(a), Plaintiff is entitled to recover treble damages pursuant to O.C.G.A. § 10-1-399(c).

82. Plaintiff is entitled to recover reasonable attorney's fees and expenses of litigation pursuant to O.C.G.A. § 10-1-399(d).

## TRIAL BY JURY

83. Plaintiff is entitled to and hereby requests a trial by jury.

WHEREFORE, Plaintiff prays that judgment be entered against Defendant for:

    a.)    Plaintiff's actual damages;

    b.)    Statutory damages pursuant to 15 U.S.C. § 1692k;

    c.)    Reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k

    d.)    General, exemplary, and treble damages pursuant to O.C.G.A. § 10-1-399(a) & (c);

    e.)    Reasonable attorney's fees and costs pursuant to O.C.G.A. § 10-1-399(d); and

    f.)    Such other and further relief as may be just and proper.

Respectfully submitted this 17th day of January, 2023.

[Signatures follow]

**BERRY & ASSOCIATES**

*/s/ Matthew T. Berry*
Matthew T. Berry
Georgia Bar No.: 055663
matt@mattberry.com
2751 Buford Highway, Suite 600
Atlanta, GA 30324
Ph. (404) 235-3300
Fax (404) 235-3333

*Plaintiff's Attorney*