## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

JOSE RAMIREZ and JIMMY PIZARRO,
Individually and on behalf of all others
similarly situated,

      Plaintiff,

                               Case No:

  v.                       COLLECTIVE ACTION

VERIZON CONNECT FLEET USA LLC,
And VERIZON CONNECT INC., d/b/a
VERIZON CONNECT

      Defendants.

_____.

## FLSA SECTION 216B COLLECTIVE ACTION COMPLAINT

Plaintiffs JOSE RAMIREZ and JIMMY PIZARRO, individually, and on behalf of all others similarly situated who consent to their inclusion in a collective action, sue Defendants, VERIZON CONNECT FLEET USA LLC., and VERIZON CONNECT INC. (hereinafter collectively referred to as "Verizon Connect" or "Defendants") for violations of 29 U.S.C. 201 et seq. of the Fair Labor Standards Act (the "FLSA"), and states as follows:

## INTRODUCTION

1.     Defendants have willfully FAILED to pay overtime wages to all Inside Sales Representatives (ISR) working under various job titles, some self-created, others created by the company such as:  Business Development Representative

(BDR), Business Development Manager (BDM), Account Manager, Closer, Consultant, Fleet Manager, Development Manager, Associate Sales Partner or Sales Partner (aka Closer), Specialist, Inside Sales Representative and other interchangeable or related job titles, all of which are now or were at one time, used to identify employees working as non-exempt, Inside Sales Representatives.  All members of the putative class were classified as non-exempt status with based compensation plan of some stated annualized base pay, plus a bonus plan based upon achieving a percentage to goal of sales.

2.      Historically, Defendants purchased Fleetmatics USA, LLC for $2.4 billion dollars in 2016 to commence or gain access to the telematics industry and sell GPS tracking software and products focused on fleet management, mobile workforce solutions and the IoT (Internet of Things).

3.      After the purchase, Verizon Connect continued to operate the purchased Fleetmatics company and its assets without change and continued to operate the company until on or about April 1, 2018, when the name was officially changed to Verizon Connect and employees were then paid directly by Verizon.

4.      Defendants operated its business from 5 offices:   1) San Diego, California;  2) Rolling Meadows, Illinois; 3) Charlotte, North Carolina; 4) Tampa, Florida; 5) Scottsdale, Arizona (since Closed) sometime in 2019 or 2020, from where it employed similarly situated ISR, all working on similar compensation

plans, performing similar if not identical job responsibilities, and all suffering from the same, common unlawful pay practices pursuant to a de facto policy and scheme to avoid overtime wages and save millions of dollars in labor costs.

5.      Upon information and belief, Defendants have since employed other ISR working remotely in other geographic regions or from other offices.

6.      It is not a mere coincidence that Verizon Connect continues to subject employees to the same unlawful pay practices that plagued Fleetmatics USA, LLC., and which resulted in a settlement on November 3, 2016, in the case of *Gillard, Stramiello and Pate v. Fleetmatics USA LLC,* Case no. 8:16-cv-00081, DE 70, in the sum of $2,102,250.00.

7.      Similarly, in *LAUREN GARNICK, TSHACHA ROMEO and COREY HANVEY, Individually, and on behalf of all others similarly situated, v. VERIZON CONNECT FLEET USA LLC*, Case No: 8:20-cv-01474, (MDFL) Verizon Connect settled the unpaid overtime wage claims for approximately 185 present and former employees in 2022 (DE 143) for the Gross Settlement Amount of $3,200,000.00.

8.      Defendants have continued with a scheme to avoid paying overtime wages to all its ISR nationally, and thus save and steal millions of dollars of wages owed to 1000 or more employees, but instituting a De Facto policy discouraging employees against reporting more than 40 hours of work per week and also

intentionally not putting in place an accurate and contemporaneous time clock system.

9.      Ironically, Defendants even WARNS the public of the risks of not properly tracking the work hours of non-exempt employees in their own literature and marketing materials easily found on the web: https://www.verizonconnect.com/resources/article/software-improves-time-card-reporting/ "**Accurate, Efficient, Simplified Timecard Reporting**".

10.     Plaintiffs herein commence this legal action against Defendants for willful violations of the federal wage and hour overtime pay laws and related regulations on behalf of all similarly situated current and former employees of Defendants who worked anytime in the preceding three (3) years to the present.

11.     While there was a prior settlement in the _Garnick v. Verizon Connect_ action in 2022 for approximately 185 present and former employees of Verizon Connect, the majority of putative class members or the collective group did not join the action.

12.     Further, upon information and belief, a significant number of persons working as ISR never received notice of this action who worked in California, or who were account managers or account executives because they were left off the disclosed list by Defendants but who nonetheless were ISR whose primary duty was making sales.

13.     Finally, that settlement in Granick also does not prospectively bar claims after May 2022 by those who participated in the *Garnick* action and who continued to suffer from not being paid overtime premiums for all hours worked by Defendants continued failure to change its unlawful pay practices.

14.     Pursuant to a national, common policy and plan, Plaintiffs and the classes of similarly situated current and former employees who worked under company assigned or self-created job titles, all used to describe the same inside sales position, including but not limited to the following: "Account Executive", "Business Development Representative", "Specialist", "Business Development Consultant", "Account Manager", "Fleet Consultant", "Senior Business Developer", Business Coordinator", "Associate Sales Partner", "Sales Partner", "Closer", Inside Sales Representative and "Business Developer".  These titles are all used to describe persons working as Inside Sales Representatives (ISR) engaged in selling products and services on a non-retail basis to other businesses and commercial enterprises (aka "b2b").  Plaintiffs, and the class of similarly situated employees, were unlawfully not compensated a premium for all hours worked over forty (40) in each and every workweek by a scheme and plan of Defendants to evade the overtime wage laws and save many millions of dollars in labor costs to the detriment and harm of Plaintiff and all other Inside Sales Representatives.

15.     Indeed, just examining the complaint in *Gillard, et. al. v. Fleetmatics USA LLC*, Verizon, knew what had been going on, and had knowledge of this case at the time of the settlement with Fleetmatics USA, LLC., as clearly evident by the timing of the purchase of Fleetmatics USA, LLC. in the same calendar year.

16.     Defendants did not institute during the years 2017 to the present day for ISR, and not after these numerous lawsuits, any actual time tracking or recording system which employees log in and out of and clock their exact times of work and breaks.

17.     While Defendants have some system for hourly employees to self-report work hours, the Defendants have still violated 29 CFR Part 516. Alternatively, even if later a court concludes the system used satisfies 29 CFR Part 516 record keeping requirements, the time records are wholly inaccurate and unreliable as Defendants have not tracked and record the actual times employees started working, took breaks, and left for the day. Some Managers have just entered and filled out time records for and on behalf of ISR and falsified the records by filing in 8 hours per day and 40 hours per week.

18.     Defendants absolutely know that Inside Sales Representatives routinely worked overtime hours, as managers and supervisors witnessed the extra hours, encouraged, and even pressured Inside Sales Representatives to work as many hours

as possible to hit quotas and meet goals and performance metrics called (KPI meaning key performance indicators).

19.     Moreover, Defendants never asked employees to leave after the shift ended, never prohibited them from working prior to the shift time, and witnessed and knew that employees, including Plaintiffs, routinely worked through some or all of the (1) one hour provided meal break as to which Defendants took an automatic one (1) hour deduction from the total work hours each day, regardless of whether Inside Sales Representatives took such uninterrupted meal breaks or simply worked throughout some or all of the times deducted and without any means to report or claim this time.

20.     Defendants have turned a "blind eye" to all of the off the clock work for numerous reasons including reduced labor costs and increased profits, while pressuring, coercing, intimidating and encouraging Inside Sales Representatives to work as many hours as necessary to hit their quotas, metrics and production goals.

21.     Defendants has willfully failed to pay Plaintiffs and all similarly situated persons in accordance with the Fair Labor Standards Act (FLSA). Specifically, Plaintiffs, and similarly situated employees were not paid premiums for all hours they worked in excess of forty (40) hours per week.

22.     Plaintiffs, and the class of similarly situated employees, did not and currently do not perform work that meets the definition of any exemption under the

FLSA, and the Defendants' pay practices are not only clearly unlawful, but UNFAIR as well.

23.    In this pleading, the term "Inside Sales Representative" means any employee of Defendants working under the various titles of:  "Account Executive", "Account Manager", Business Development Representative" (BDR), "Closer", "Associate Sales Partner", "Sales Partner", "Specialist", Business Development Consultant", National Account Manager, Regional Account Executive, Fleet Manager, Senior Business Developer, Business Developer, Business Coordinator, Specialist Solutions Consultant, Inside Sales Representative or any other title or position, where employees perform substantially the same work as an ISR (discovery may reveal additional job titles and employees that should be included).  Inside Sales Representatives (ISR) in this class handle inbound and/or make outbound phone calls (cold calls), research the internet and either make internet presentations or demonstrations or schedule this for others such as Closers to finalize and consummate the sales or complete the full cycle sales process and execute orders for sales and consummate the sale.

24.    In this pleading, "Defendants" means the named Defendants and any other subsidiary or affiliated and wholly owned corporation, organization or entity responsible for the employment practices complained of herein (discovery may reveal additional defendants that should be included).

25.     The allegations in this pleading are made without any admission that, as to any particular allegation, Plaintiff bears the burden of pleading, proof, or persuasion.  Plaintiff reserves all rights to plead in the alternative.

## JURISDICTION AND VENUE

26.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 because this action involves a federal question under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).

27.     This Court is empowered to issue a declaratory judgment under 28 U.S.C.§§ 2201 and 2202.

28.     This Court has general jurisdiction over Defendants for the claims of all those similarly situated from across the U.S. and for non-resident opt in Plaintiffs because the Defendants corporate offices are here within this district.

29.     Venue is proper to this Court pursuant to 28 U.S.C. Sec. 1391(b) because the damages occurred within this district.

30.     Defendants' principal place of business is located within this district in Alpharetta, Georgia and is subject to this Court's jurisdiction.

## THE PARTIES

31.     Plaintiff Jose Ramirez is a citizen of Florida.  He has worked for Defendants as a Business Development Representative (BDR), as a sales partner and/or in inside sales representative since approximately September 2019.  Prior to

Covid, Ramirez worked at Defendants' office in Tampa, FL.  In or about March 2020, Plaintiff Ramirez worked remotely from his home but still reported to the Tampa, FL office.   Plaintiff, like other ISR, now works 1 day a week in the Tampa office, and the other 4 days remotely from his home.

32.    Plaintiff Ramirez' primary job duty as a BDR was to develop qualified "warm" leads for other people in the company to attempt to sell Verizon telematics products and services to, usually by such persons called "Closers".  These same job titles and work procedures were carried over by Defendants from Fleetmatics business practices.

33.    Plaintiff Ramirez was provided leads and made outbound and inbound calls and sent out emails to solicit businesses to attend demonstration appointments of the Verizon telematics and GPS tracking products and services with "Closers" or Associate Sales Partners/Sales Partners.

34.    Plaintiff Jimmy Pizarro was hired by Defendants to work in the Tampa office on or about December 2018 as a BDR.

35.    Plaintiff Pizarro now works under the title of lead inside sales representative, and like Ramirez, has the same schedule including working remote 4 days and 1 day in the office.

36.    Over the last year or so, Defendants have altered the BDR position and merged the BDR position with the closers or sales partners, or otherwise made many

BDR also responsibility for the full cycle of the sales process, including consummating the sales and may have given them titles as inside sales rep.

37.    The primary duty and function of the Closers, Sales Partner, or Associate Sales Partners is or was to attend appointments for demonstrations with potential business customers, and attempt to close or make the sale of the Defendants' telematics products and services, namely GPS vehicle tracking and related services.

38.    The primary duty of Account Managers is to upsell and continue to sell Defendants' products and services to existing clients.

39.    All ISR also did not have the discretion and judgment to unilaterally make pricing decisions, nor did they create their own marketing plans for the Defendants' products and services.

40.    All ISR had to submit by electronically transmitted means, weekly time sheets and just like BDR, were prohibited from submitting more than forty (40) hours per week and discouraged from claiming overtime wages.

41.    Defendants time sheets are pre-populated with 8 hours each day and 40 hours for the week, and do not provide a specific line for the ISR to report their exact break times if any, as the Verizon Connect automatically deducts 1 hour from their 9 hours days for breaks whether the employees took some or all of the breaks.

42.     Moreover, Defendants time keeping and meal break policy precludes an ISR from being able to report the exact break times and claim those times when he or she worked during some or all of this 1 hour auto deduction.

43.     At all times material, Plaintiffs were an employee of Defendants during the term of his employment as contemplated by 29 U.S.C. § 203.

44.     Defendants classified Plaintiffs and all others similarly situated as non-exempt, employees who were subject to the FLSA, including entitlement to overtime premiums for all hours worked more than 40 in each and every workweek.

45.     Plaintiffs were paid a base hourly rate of pay stated in some annualized sum, and is believed to be an hourly employee, but discovery is necessary to determine this.  In addition, all ISR have been placed on a monthly bonus structure based upon percentage to goal performance, such that if they met 100% of the goal or quota set by management there was a maximum sum in bonus money they could earn, and less in bonus money using a pro rata percentage of the sales goals met.

## DEFENDANTS, VERIZON CONNECT FLEET USA LLC AND VERIZON CONNECT INC.

46.     Defendant, VERIZON CONNECT FLEET USA LLC. (hereinafter "Defendant" and/or "Verizon Connect"), is a Foreign Limited Liability Corporation, a wholly owned subsidiary of VERIZON COMMUNICATIONS INC., is a publicly

traded corporation on the NYSE under the symbol VZ, and has a principal place of business located at 5055 North Point Parkway, Alpharetta, GA 30022.

47.     Defendant VERIZON CONNECT INC. is a Foreign Limited Liability Corporation, a wholly owned subsidiary of VERIZON COMMUNICATIONS INC., is a publicly traded corporation on the NYSE under the symbol VZ, and has a principal place of business located at 5055 North Point Parkway, Alpharetta, GA 30022. Verizon Connect Inc. and Verizon Connect Fleet USA LLC ae herein jointly referred to as Verizon Connect, and are joint employers of all ISR including Plaintiffs and the alter egos of each other.

48.     Regardless, both Verizon Connect entities operate the company jointly, and do business as Verizon Connect using shared officers, policies, pay practices, corporate offices and oth4r shared resources such that they are single, integrated entity or business enterprise.

49.     Defendants may be served through its Registered Agent for service of process, CT Corporation System, at 289 S. Culver St, Lawrenceville, GA, 30046-4805.

50.     As stated by Defendants on their website, Verizon Connect is a company which offers: "Guiding a connected world on the go by automating, optimizing and revolutionizing the way people, vehicles and things move through the world".

51.     Defendants are joint employers and alter egos, and it is uncertain why 2 Verizon Connect entities exist, but upon information and belief they are joint employers who direct the work of Plaintiffs from the same corporate office with the same officers, and have the same company policies and procedures.

52.     Defendants have now, or had in the past, 11 offices in the US, including: Rolling Meadows, Il, Atlanta, Austin, Charlotte, Waltham, Boston, Irvine, San Diego, Scottsdale, AZ, Tampa and Temple Terrace, FL along with one (1) office in Toronto.  Upon information and belief, Defendants also now or in the past 3 years, employed similarly situated ISR in other geographic locations working remotely.

53.     Defendants are both employers within the definition of the FLSA, has revenues exceeding $500,000 annually in all applicable time periods, and is involved in interstate commerce.

54.     Defendants provides fleet operators (companies or businesses with numerous vehicles) with an internet based system that enhances workforce productivity through real time vehicle tracking, route optimization, job dispatch, and fuel usage monitoring.

55.     Competitors who also employ similar ISR such as Fleetcor and NEXTRAQ, have been caught numerous times stealing wages, and violating the FLSA for inside sales representatives through numerous unlawful pay practices, and

when factoring in the *Gillard et al. v. Fleetmatics* and *Garnick et al. v. VERIZON CONNECT FLEET USA LLC* case settlement for ISR, it is unlikely that Defendant Verizon has not already had more than enough reasons to have been aware of the unlawful pay practices complained of herein and continued to act with reckless disregard for the FLSA, if not willfully continuing to violate the FLSA.

56.     Thus, Defendants had a duty to have investigated, studied, audited, and assessed its pay practices and its federal and state law duties and obligations and determine if it was in compliance; and the failure to have done so subjects it to payment of liquidated damages, a three (3) year statute of limitations for FLSA violations.

## FACTUAL AND COLLECTIVE ACTION ALLEGATIONS

57.     This collective action arises from a longstanding and continuing wrongful scheme by Defendants to: a) willfully fail to accurately and properly track and record the work hours of ISR, and b) willfully refuse to pay overtime wages to a large class of Inside Sales Representatives who Defendants knows or should have known, were working off the clock and working overtime hours without being paid for all such hours.

58.     Plaintiffs brings this suit individually, and on behalf of all similarly situated persons composed of the following FLSA CLASS members:

**THE FLSA CLASS:**

**All employees working as Inside Sales Representatives under the titles of: Account Executive, Account Manager, Consultant, Business Development Representative, Closer, Associate Sales Partner, Sales Partner, Inside Sales Representative, team leader, pod leader, or any other job titles used to describe non-exempt, inside sales positions, who are currently employed by or were previously employed anywhere in the U.S. with Verizon Connect Fleet USA LLC or Verizon Connect Inc. within the past three years preceding the filing of this lawsuit to the present.**

59.     Plaintiffs are able to protect and represent the Collective or putative Class, is willing, able, and consents to doing so.

60.     Plaintiffs have routinely worked more than forty (40) hours in workweeks throughout the term of their employment with Defendants and without being paid a premium for all these overtime hours.

61.     Plaintiffs worked at Defendants' Tampa/Temple Terrace, FL office where Defendants required Business Development Representatives and Closers and ISR to work Monday through Friday, nine (9) hours per day, forty-five (45) hours per work week at a minimum in a set schedule of 8 am until 5 pm., and later after the Covid pandemic shutdown, working remotely from their homes.

62.     Each day, the company has a standardized one (1) hour lunch break, where all ISR are expected and required to use this set one (1) hour time for a meal break or just for break time, without deviation.

63.     Thus for each nine (9) hour work day scheduled and assigned by Defendants, the company automatically deducts one (1) hour of pay for each day for

this break and informs ISR to claim and report ONLY eight (8) hours in total if they worked the full shift of nine (9) hours, regardless of whether Plaintiff or any other ISR took 5 minutes of uninterrupted meal break, 10 minutes, or no uninterrupted break at all.

64.     There is no real mechanism or policy in place for ISR to report and claim the time ISR perform work during the 1 hour meal break time, but they are all permitted to access systems, emails, phones during so-called meal breaks.

65.      Defendants do not use a time clock that ISR clock in and out their exact work times and break times despite clearly readily available software and programs that can easily record their actual work times and minimize claims and provide a real means by which an ISR can be paid for all their actual work hours.

66.     Plaintiffs allege for themselves, and on behalf of the putative class who elect to opt-in to this action, that they are entitled to unpaid wages from Defendants for overtime work for which they did not receive overtime premium pay as required by the FLSA, including for all meal break times they performed work during and which they did not have or take bona fide meal breaks, started work before the shift times or performed work after the ending shift time or outside the regular business hours.

67.     Defendants employ, upon information and belief and investigation, an estimated 500 or more Inside Sales Representatives working from numerous offices

or working remotely and reporting to these offices including: Atlanta, Georgia; Alpharetta, Georgia; Boston, Massachusetts; Temple Terrace, Florida; Rolling Meadows, Illinois; Charlotte, North Carolina; San Diego, California; Irvine, California.   Upon information and belief, Defendants may also now have, or had within the relevant three (3) year class period, employed other Inside Sales Representatives working from their homes or other offices in other states, such as New York or Michigan, and have employed upwards of 1000 or more during the preceding three (3) years.

68.     Upon information and belief, the Inside Sales Representatives in all offices or remotely working under the various titles, are all paid under a common pay or compensation plan of a base pay and a percentage to goal bonus structure.

69.     All BDR, Closers and all other Inside Sales Representatives under the various job titles also perform their job duties in a uniform, similar manner; and all are supervised and managed according to the same national standards and uniform policies and procedures set by the Defendant and applicable to all offices.

70.     All Inside Sales Representatives within this putative class here were treated and classified by Defendants as nonexempt employees, and whose primary duty is making sales or developing business leads for others to sell.

71.     Inside Sales Representatives were purposefully misled by Defendant to believe it was, and is, lawful to take one (1) hour off of the forty-five (45) hour work

schedule for a mandatory meal break deduction without regard or concern as to whether the employees ever took the full one hour break or worked through the allotted one (1) hour meal breaks.

72.    Said differently, Defendants failed to provide any mechanism and real opportunity for Plaintiff and all other Inside Sales Representatives to claim the times they worked through the one (1) hour meal breaks or to log in and out for breaks.

73.    The actual work hours of all the Inside Sales Representatives were never recorded by the Defendants.  Instead, they instructed employees one time, every two weeks, to simply put on the payroll database or website, eight (8) hours for each full day worked, and forty (40) hours for each week, unless they missed a day.

74.    The company time reporting system as well is pre-populated with a total of eight (8) hours for each day and forty (40) hours for each workweek, and no boxes or lines to put in break times started or ended, nor any place to log in the actual times they started working each day or ceased working at the end of the day.

75.    Moreover, all Inside Sales Representatives were routinely advised subsequent to their acceptance of the offer to work for the Defendant, that the sales positions are "not 9 to 5" (40 hours per week) jobs.

76.    The Defendants maintained a companywide policy throughout the relevant three (3) year class period of willfully refusing to pay overtime wages for

all overtime hours worked for Inside Sales Representatives despite clear knowledge Inside Sales Representatives have worked and continue to work overtime hours which are unreported and off the clock.

77.    As per the company pay stubs and electronically submitted timesheets, it's generally and almost always just going to say forty (40) hours worked each week and eighty (80) hours for the two (2) week period.

78.    Upon information and belief, all Inside Sales Representatives are supervised by Directors and other managers, who very closely monitor performance, scrutinize sales representatives and their performance metrics, such as phone calls and production, and report results to the corporate office under a structured, corporate controlled manner.  Defendants have micro-managed all Inside Sales Representatives.

79.    All Inside Sales Representatives handling outbound calls, primarily those with titles of BDR are expected to make a certain number of daily phone calls, and have sales goals or quotas for appointments for demonstrations of the telematics GPS tracking products and services with businesses set up for the Closers, which if not met, subject them to disciplinary action, including termination of employment.

80.    All Closers similarly have sales goals and quotas related to the number of appointments/demonstrations held and sales.  The Closers' primary job duty is to sell the GPS tracking units, attend appointments set by the Business Development

Representatives with other businesses, and demonstrate and sell the products over the internet.

81.    Defendants also created and maintained a De Facto policy that ISR should not report more than 40 hours, or overtime hours, on the time sheets unless pre-authorized, but all ISR should work as many overtime hours as needed or required, off the clock and "on their own dime," to meet quotas, metrics and sales goals and thus keep their jobs.

82.    Some Inside Sales Representatives call upon potential new clients or customers, and others, upon information and belief, from Defendants' job descriptions, are assigned a group of current customers or clients to call.  In all cases, the primary job duties of all Inside Sales Representatives are to sell and the sales take place generally over the telephone and/or internet to other businesses, generally known as B2B sales.

83.    The overtime wage provisions set forth in FLSA §207 apply to Defendants, as they engage in interstate commerce.  Indeed, at all relevant times, Defendants engaged in interstate commerce and/or in the production of goods for commerce within the meaning of FLSA Sec. 203.

84.    The actual job duties performed by the proposed putative class of Inside Sales Representatives do not satisfy the elements of any exemptions within FLSA §213, as all perform routine jobs whose primary job duty was production,

setting appointments for others to attempt to sell GPS tracking products or other products or services, or actually attending the appointments and making the sales pitches and demonstrations of the products and services.

85.    Plaintiffs, as well as the members of the putative class of similarly situated persons routinely worked through part or all of their lunch breaks, worked prior to or after the set and standardized nine (9) hour daily shift times, and also performed other work incidental to their job duties by working at home or outside the office making or receiving client phone calls, sending or receiving and reading emails without being paid for all these additional work hours.

86.    Plaintiffs routinely engaged in making or receiving telephone calls, reading or sending emails after business hours and on weekends, as to which Defendants did not provide any guidance or opportunity to submit or claim these additional work hours.

87.    Many sales calls and demonstrations had to take place in the evening hours lasting after the ending shift time to accommodate business owners and their officers so as not to disrupt their business during standard daily working hours.

88.    Plaintiffs routinely commenced working prior to and after the scheduled shift times of 8:30 am until 5:30 pm, and were not precluded from the same.

89.    Plaintiffs, and all other similarly situated employees are currently or have previously been covered under FLSA §207.

90.    Pursuant to FLSA §207, Defendants, as the employer and joint employers of Plaintiffs and other similarly situated ISR, was and is required to pay one and one-half times each employee's hourly rate for hours worked in excess of forty (40) hours per week.

91.    Defendants are fully aware that employees who work through lunches come in early and stay late, as management can clearly see them doing so and encourage employees to do so and take advantage of the additional time to meet production goals and quotes.

92.    Defendants were also fully aware that the nature of the position required and involved ISR making and receiving telephone calls and sending and receiving emails outside the office, and at times accessing the CRM Salesforce system/programs.

93.    Defendants also required a mandatory number of phone calls or dials, demonstrations and talk times and appointments set, all of which produced a very stressful, boiler room type environment and which combined with the threats of discipline and termination of employment for not meeting production goals and requirements, fostered the off the clock work by ISR.

94.     Upon information and belief, all of the top performing Inside Sales Representatives routinely worked overtime and extra hours and there is a known direct correlation between the number of hours worked and the production and productivity of the sales employees.

95.     Defendants however, maintained a De Facto policy against ISR reporting overtime hours, or complaining about not being paid for all overtime hours worked each day and each week under fear and threat of scrutiny being brought upon them for incurring overtime hours.

96.     Defendants even suggested to ISR that all overtime had to be "preapproved" by several levels of management, and thus, to many it was futile to even ask if they were not already meeting and exceeding goals and quotas. Defendants' policy was circular, and the proverbial chicken and egg type game of do not claim or seek to claim overtime without approval and without having met or exceeded goals and quotas.

97.     Thus, even when Plaintiffs did have an opportunity to claim and report overtime hours, from fear of reprisal, he limited the hours reported, even though he worked through breaks, coming in early, doing work outside the office.

98.     The Company maintained a code of silence when it came to the issue of overtime hours and overtime wages, with literally no meetings or discussions about the time tracking requirements of the FLSA, or how to submit and claim

overtime hours worked both inside and outside the office, including the 1 hour meal breaks.

99.    Defendants maintained a culture and environment of discouraging and intimidating BDR from submitting, or reporting overtime hours worked because if they were not the top producers or meeting all quotas and goals, they would be subjected to a high level of scrutiny and face the ire of management.

100.    Defendants do not presently, and has not throughout the relevant three (3) year class period, properly clocked, tracked or recorded the actual working hours of each Inside Sales Representative in all of their offices.

101.    All Inside Sales Representatives worked a similar schedule of five (5) days per week, typically from about 8:30 a.m. until 5:30 p.m., or in some offices, 7:30 a.m. until 4:30 p.m., or 8:00 a.m. until 5:00 p.m.   All shifts are nine (9) hour days with one hour allotted for lunch.

102.    Defendants at times, commanded and made it mandatory for Inside Sales Representatives to come in prior to their scheduled shift time, stay later, or at other times, work weekends or from home in some capacity.

103.    Defendants have strongly encouraged and pressured Inside Sales Representatives to work overtime hours from home or to come in early or stay late.

104.    In order to meet sales quotas and maximize their commission and bonus, Plaintiffs and other Inside Sales Representatives would routinely work as

many overtime hours as they wished with the full knowledge, approval and encouragement of sales Managers/Directors and officers of the Defendants.

105.   Inside Sales Representatives were warned when falling short of quotas that their jobs could be terminated and encouraged to work as many hours as necessary and possible to hit goals and quotas; thus overtime hours increased towards the end of the month by many ISR.

106.   All Inside Sales Representatives followed corporate policies and procedures applicable to all their offices where Inside Sales Representatives worked.

107.   All Inside Sales Representatives were trained to perform their job duties and expected to perform their job duties in similar manners throughout their multiple offices.

108.   All Inside Sales Representatives attended sales meetings during which the Defendant went over new procedures, policies and sales protocols and was clear to Plaintiff, applied to all Inside Sales Representatives employed by the Defendants.

109.   Defendants was aware that ISR were working off the clock, working more hours than reported or underreporting hours, including coming in early, working during allotted meal breaks and staying late.

110.   Moreover, Defendants were keenly aware from the prior FLSA cases it settled that it had a history of permitting ISR to suffer to work off the clock, and that

its time keeping policy of a prepopulated  and without being paid premiums for all overtime hours worked.

111.   As a result of the prior FLSA collective action lawsuit, *Garnick v. Verizon Connect* action, Defendants knew that ISR were working during meal breaks, beyond the prepopulated 40 hour time sheets, and that their time records were inaccurate and in instances falsified and fraudulently completed by management.

## COUNT I
## VIOLATIONS OF FLSA §207 AND DECLARATORY ACTION PURSUANT TO 28 U.S.C. SECTIONS 2201 and 2202

112.   Plaintiffs alleges and incorporates by reference the foregoing paragraphs of this Complaint and fully restates and realleges all facts and claims herein as if fully stated.

113.   Defendants have willfully and intentionally engaged in a common company pattern and practice of violating the provisions of the FLSA, by failing to pay all Inside Sales Representatives, under the various job titles identified in this complaint, required overtime wages for all hours worked.

114.   Plaintiffs, and all other BDR, Closers and Inside Sales Representatives, routinely worked through some or all of the one (1) hour meal break provided, and as such all time should have been counted as compensable overtime hours during

any workweek that Plaintiff and all others similarly situated worked the rest of the forty (40) hour shift times.

115.    Defendants knew that Plaintiffs and ISRs routinely worked through some or all of this 1 hour provided lunch break, and knew that working while eating was not an uninterrupted, excluded work time.

116.    Employees were not given any real opportunity to report and claim these compensable meal break hours, or the times spent on telephone calls and emails outside the office, and the company time reporting system did not provide for any contemporaneous time tracking in which breaks were logged in and out or the actual start or ending times for the day were actually logged.

117.    Similarly, all ISR, including Plaintiffs, were permitted to commence working prior to the shift times, but likewise, there was no means to clock in when they started working.

118.    Plaintiffs and other ISR also routinely worked after the ending shift time and were discouraged by management from claiming and reporting these overtime hours.

119.    The BDR and Closer positions, as well as other ISR positions, because of the nature of the business being B2B, involved having to communicate with customers after business hours, and even on weekends by telephone and email.

120.   ISR were required to use personal cell phones, have their company email on their phones and expected to respond to customers when they contacted them outside of the office.

121.   Defendants also failed to provide any real means to report these additional times and work hours, and should have been counted as compensable time.

122.   Defendants had a duty and obligation under the FLSA, and as per CFR part 516, to contemporaneously track and record all work hours of hourly non-exempt employees, including BDR, Closers, and ISR under any job titles.

123.   As Defendants failed to institute any actual time tracking system or time clock for employees to log in and out their ACTUAL work times, the system left Plaintiffs, and all other ISR subject to working off the clock and routinely working overtime, compensable hours without being paid for all the hours worked.

124.   Defendants' conduct and actions of turning a blind eye, ignoring the fact that time sheets showing eight (8) hours every day, and forty (40) hours every week were clearly known to be inaccurate and an understatement of Plaintiffs and all other ISR actual working hours, resulted in a willful violation of the overtime wage law of Section 207 of the FLSA.

125.   Defendants' actions constitute permitting Plaintiffs and all other ISR to suffer to work off the clock without being paid for all hours, as literally there was no actual time clock.

126.   Defendants maintained a code of silence as to discussing overtime hours, overtime pay and any problems of employees knowingly exceeding the forty (40) hour workweek by coming in early, working through meal breaks and staying late while their time sheets reflect only forty (40) hours for the week and eight (8) hours for the day.

127.   At any given time, managers and supervisors were aware of Plaintiffs and other BDR, Closers and ISR coming in and working early, working through meal breaks and staying late and that their time sheets were inaccurate and not capturing all their work hours.

128.   Indeed, all ISR, including Closers and BDR were intimidated against reporting the extra compensable overtime hours and told to focus on their performance goals and bonuses, while simultaneously being pressured and warned to hit goals, metrics and quotas or be subject to disciplinary action, including termination of their employment.

129.   The Defendants intentionally created a work environment and culture that was oppressive, laced with fear and intimidation against reporting overtime

hours and complaining about not being paid for all overtime hours, as doing so would draw the ire and scrutiny of management.

130.    Meanwhile, Plaintiffs and all other ISR were warned to hit metrics and goals or they would find themselves on the way out the door.

131.    Some managers simply filled in forty (40) hours for each workweek of BDR and Closers, knowing this to be false, inaccurate and resulting in the employees involved not being paid for all hours worked, because management maintained a policy of discouraging them from reporting all overtime hours worked.

132.    Employees worked in fear of reporting the overtime hours worked, out of fears and concerns that if they were not meeting the quotas, metrics and goals, they would be subjected to review, scrutiny and potential termination.

133.    Thus, Plaintiffs and other ISRs worked off the clock without complaints, despite management knowing that the top producers and performers did so, and in order to be a top producer and performer, the job required working more than 40 hours routinely.

134.    Thus, Plaintiffs and other ISR remained silent and worked overtime hours routinely without reporting these hours and without being paid for all the hours worked.

135.    Defendants have willfully and with reckless disregard for the requirements of the FLSA and its regulations, failed to pay Plaintiffs and the Putative

Class, comprised of all current and former similarly situated ISR a premium or overtime wages for all work hours over (40) hours in one or more work weeks as mandated by FLSA §207.

136.    Defendants do not have a good faith basis for these described unlawful pay practices, such that Plaintiff and each and every member of the putative class is entitled to be paid an equal sum in overtime wages owed at rates of one and one half times their respective regular rates of pay as liquidated damages. *See Johnson v. Big Lots Stores, Inc.*, 604 F.Supp.2d 903 at 925 (E.D. La. 2009).

137.    Defendants knowingly and willfully failed to track the hours worked by Plaintiff and the class of similarly situated employees.

138.    Defendants suggested, encouraged and requested that all ISRs work as many hours as they could to meet or exceed sales goals, and has direct knowledge of ISR working overtime hours.

139.    By failing to record, report, and/or preserve records of all minutes and hours worked by Plaintiffs and the class of similarly situated ISR, Defendants have failed to make, keep, and preserve records with respect to each of its employees sufficient to determine their wages, hours, and other conditions of employment in violation of the FLSA 29 USC 201 et. seq., including 29 USC Sec. 211(c) and 215 (a).

140.   Defendants knew or should have known that the act of permitting ISR to work off the clock and without a clock, including working through meal breaks, coming in early, staying late was grossly insufficient and evades the wage and hour requirements of the FLSA such that a three (3) year statute of limitations applies.

141.   Defendants knew or should have known that its time keeping practices of prepopulating 8 hours per day and 40 hours per week, and auto deducting 1 hour of breaks without the real means to report and claim times worked during these meal breaks was a grossly insufficient practice, discourages accurate reporting of overtime hours, and evades the wage and hour requirements of the FLSA such that a three (3) year statute of limitations applies.

142.   Defendants knew and have known by prior actions and complaints, that overtime wages are to be paid to all ISR for time they worked and which they, by and through supervisors or managers or other employees had reasons to know was occurring, but, as a means to save hundreds of millions of dollars in labor costs each year, willfully created policies and procedures to limit and avoid paying employees the overtime wages due and owing and discouraged the reporting of overtime hours.

143.   To summarize, Defendants have willfully and lacking in good faith, violated the FLSA by the following unlawful pay practices applicable to Plaintiff, and the class of similarly situated persons:  a) Willfully instituting and maintaining a deficient, inaccurate time tracking system to the harm and detriment of all other

ISRs; b) maintaining a De Facto policy against reporting all overtime hours worked, including working during meal breaks; and c) permitting Plaintiffs and all other ISRs to suffer to work off the clock without being paid for all hours worked.

144.    As a result of the prior FLSA Section 216b collective action lawsuit by *Gillard, Stramiello and Pate v. Fleetmatics*, settled in November 2016, and the <u>*Garnick V. Verizon Connect Fleet USA LLC*</u> action, settled in 2022, Defendants was keenly aware of its history of violating the FLSA and stealing wages from non-exempt employees, including Plaintiff and all other similarly situated ISRs, yet, continued to maintain unlawful procedures, policies, including a De Facto policy against reporting all overtime hours worked as to which deprive Plaintiff and all other ISRs their overtime wages earned.

145.    As a result of Defendants' willful violations of the FLSA, Plaintiffs and the putative Class, composed of all other present and former ISR similarly situated, have suffered economic damages by Defendants' failure to pay overtime compensation in accordance with FLSA §207.

146.    Due to Defendants' willful violations of the FLSA, a three-year statute of limitations applies to the FLSA violations pursuant to 29 U.S.C. §255(a).

147.    As a result of Defendants' unlawful acts and pay practices described herein, Plaintiffs and the Putative Class of all other similarly situated ISRs, have been deprived of overtime compensation in amounts to be determined at trial; and

are entitled to recovery of such amounts, liquidated damages in amount equal to the overtime wages due, prejudgment interest, attorneys' fees, costs and other compensation pursuant to 29 U.S.C. §216(b), as well as injunctive relief pursuant to 29 U.S.C. §217.

## COUNT II
## FAILURE TO MAINTAIN TRUE & ACCURATE RECORDS OF HOURS WORKED IN VIOLATIONS OF THE FLSA

148.   Plaintiffs adopt and realleges the paragraphs 1 through 111 as if fully set forth herein.

149.   Evidence reflecting the precise number of overtime hours worked by Plaintiff and every member of the Class, as well as the applicable compensation rates, is in the possession of Defendants.

150.   However, and to the extent records are unavailable, Plaintiffs, and members of the Class, may establish the hours they worked solely by their testimony and the burden of overcoming such testimony shifts to the employer. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946).

151.   All employers subject to the FLSA must maintain and preserve certain records describing the wages, hours and working conditions of their employees.

152.   With respect to an employee subject to the FLSA provisions, the following records must be kept:

a.   Personal information, including employee's name, home address, occupation, sex, and birth date if under nineteen (19) years of age;

b.   Hour and day when work week begins;

c.   Regular hourly pay rate for any week when overtime is worked;

d.   Total hours worked each workday and each workweek;

e.   Total daily or weekly straight-time earnings;

f.   Total overtime pay for the workweek;

g.   Deductions from or additions to wages;

h.   Total wages paid each pay period; and

i.   Date of payment and pay period covered

153.   Failure to comply with the recordkeeping requirements is a violation of the FLSA for which criminal or civil sanctions may be imposed, whether or not other statutory violations exist.  *See,* 29 U.S.C. § 215(a)(5); *See Also, Dunlop v. Gray-Goto, Inc.,* 528 F.2d 792 (10th Cir. 1976).

154.   Accurate records are not only required for regulatory purposes, they are critical to an employer's defense of claims that it violated the Act.  An employer that fails to maintain the required records cannot avoid liability in a wage-hour case through argument that there is insufficient evidence of the claimed hours worked. *See, Wirtz v. First State Abstract Ins. Co.,* 362 F.2d 83 (8th Cir. 1966); *Boekemeier v. Fourth Universalist Soc'y,* 86 F. Supp. 2d 280 (S.D.N.Y. 2000).

155.    An employer's failure to maintain records may create a presumption in the aggrieved employee's favor.  *See, Myers v. The Copper Cellar Corp.*, 192 F.3d 546, 551 n.9 (7th Cir. 1999), *citing Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946).

156.    Defendants have failed to accurately and contemporaneously record, track and report the Plaintiffs and Class of similarly situated members' time and work hours as required under the FLSA, and the related DOL regulations.

157.    Defendants have failed to make, keep and preserve records, with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of 29 CFR 516.2, 29 U.S.C. §§ 211, 216.

158.    Defendants never designated any set representative period for examining the application of exemptions, nor did they have any agreement with the ISR as to the application of any exemption or designate any pay or wages on records as subject to any exemption.

**WHEREFORE,** Plaintiffs JIMMY RAMIREZ and JOE PIZARRO, individually, and on behalf of all other similarly situated past and present Inside Sales Representatives (ISR), seek the following relief:

    a. Designate Plaintiff Jose Ramirez and Jimmy Pizarro as Representatives of the FLSA Collective Class and award him a

service fee or award for bringing this action on behalf of all others similarly situated.

b. That the Court find and declare Defendants have willfully violated the overtime compensation provisions of the FLSA;

c. That the Court find and declare Defendants' violations of the FLSA overtime laws were and are willful and lacking a good faith basis for complying with the state and federal overtime laws;

d. That the Court enjoin Defendants, under 29 U.S.C. § 217, from withholding future payments of overtime compensation owed to members of the FLSA Class;

e. That the Court award to Plaintiffs Ramirez and Pizarro, and the FLSA Class, comprised of all similarly situated employees, overtime compensation at the lawful and applicable overtime and premium rates of pay, including the value of all compensation earned for bonuses/commission, for previous hours worked in excess of forty (40) for any given week during the past three years AND liquidated damages of an equal amount of the overtime compensation, in addition to penalties and interest on

said award pursuant to FLSA §216 and all other related economic losses;

f.  That the Court award Plaintiffs Ramirez, Pizarro and the plaintiffs who opt into this action, recovery of their reasonable attorneys' fees, costs and  expenses of litigation pursuant to FLSA § 216;

g.  That the Court finds Defendants have willfully, and with a lack of good faith, violated the overtime provisions of the FLSA, including the time tracking requirements for non-exempt employees;

h.  That the Court apply a three (3) year statute of limitations to the FLSA claims;

i.  That the Court award any other legal and equitable relief as this Court may deem fair, just or appropriate.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by this Complaint.

Respectfully submitted January 23, 2023.

*/s/Mitchell L. Feldman*
**Mitchell L. Feldman, Esq**

Georgia Bar No.: 25779
FELDMAN LEGAL GROUP
1201 Peachtree St. N.E., Suite 100
Atlanta, GA 30361
Tele: (813) 639-9366
Fax: (813) 639-9376
mfeldman@flandgatrialattorneys.com
*Attorney for Plaintiffs and the class of
similarly situated*