## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| Clear Blue Specialty Insurance Company, | ) ) ) | |
| Plaintiff | ) ) | |
| v. | ) ) | Civil Action No. |
| Shonett Arnold, as the Heir of Aaron Lewis and as the Administrator of the Aaron Lewis Estate; Protect Security, LLC; and George Chavier Jones, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW Plaintiff Clear Blue Specialty Insurance Company ("Clear Blue") and files this Complaint for Declaratory Judgment against Defendants Shonett Arnold, as the Heir of Aaron Lewis, Protect Security, LLC, and George Chavier Jones (collectively the "Defendants"), alleging as follows:

## INTRODUCTION

1.

This is an action for Declaratory Judgment pursuant to 28 U.S.C. §§ 2201 and 2202 to determine and resolve questions of actual controversy involving commercial general liability primary and excess insurance coverage.

2.

Defendant Protect Security, LLC, seeks coverage from Clear Blue as the result of a lawsuit filed in the case styled *Shonett Arnold, as Heir of Aaron Lewis vs. Columbia Fayetteville, LP d/b/a The Villages of East Lake Gardenside, New Columbia Residential Property Management, LLC, Protect Security, LLC, George Chavier Jones, and Sabrina Laverne Robbs,* Civil Action No. 22A02187, State Court of DeKalb County, State of Georgia (the "Underlying Lawsuit"). A copy of the Complaint filed in the Underlying Lawsuit is attached hereto as Exhibit "A."

3.

The Underlying Lawsuit concerns the alleged shooting and death of Aaron Lewis on August 19, 2021, purportedly at the Villages of East Lake Apartments in DeKalb County, Georgia, at which Protect Security was allegedly performing security services.

4.

Clear Blue issued Commercial General Liability Policy Number WCSE-CGL-0001392-01 to Named Insured Protect Security LLC for the policy period of February 17, 2021 to February 17, 2022 (the "Primary Policy").   Protect Security and George Chavier Jones (Mr. "Jones") have demanded that Clear Blue defend and

indemnify them in the Underlying Suit pursuant to the terms of the Primary Policy .

A copy of the Primary Policy is attached hereto as Exhibit "B."

5.

Clear Blue also issued Commercial Excess Liability Policy Number WCSE-CEL-0001393-01 to Named Insured Protect Security LLC for the policy period of February 17, 2021 to February 17, 2022 (the "Excess Policy").  The Excess Policy follows the same provisions, exclusions, conditions and limitations that are contained in the Primary Policy.  A copy of the Excess Policy is attached hereto as Exhibit "C."

6.

Clear Blue denies that it has any duty to defend or indemnify Protect Security for the claims asserted in the Underlying Lawsuit. Therefore, Clear Blue seeks a declaration from this Court that it has no duty to defend, indemnify or otherwise pay under the Primary or Excess Policies for any defense or indemnity costs associated with the Underlying Lawsuit.

## THE PARTIES, JURISDICTION, AND VENUE

7.

Clear Blue is a North Carolina  corporation with its principal place of business in Charlotte, North Carolina.

8.

Defendant Shonett Arnold ("Ms. Arnold") is the mother of Aaron Lewis and has brought the Underlying Suit in her individual capacity as his heir.  Ms. Arnold is a citizen of the State of Georgia and is subject to the jurisdiction and venue of this Court. Her citizenship as of the filing of this Complaint is considered for purposes of diversity jurisdiction with respect to this action against her as Aaron Lewis' Personal Representative.  *D.R. Ex Rel Igles v. Grant,* 770 F. Supp. 2d 1337,1343 (M.D. Ga., 2011).  At the time of his death, Aaron Lewis was a citizen of the State of Georgia.  Mr. Lewis' citizenship at the time of death is considered for purposes of diversity jurisdiction with respect to this action against Ms. Arnold as the Administrator of the Aaron Lewis Estate. *D.R. Ex Rel Igles,* 770 F. Supp. 2d at 1343.

9.

Protect Security, LLC ("Protect Security") is a Georgia Domestic Limited Liability Company which is doing business in the State of Georgia, with its registered office address being 659 Auburn Avenue, NE, Suite G-09, Atlanta, Georgia 30312. Protect Security may be served by delivering the Summons and Complaint to its registered agent for service, Mr. Jones, at the same address.  Protect Security is subject to the jurisdiction and venue of this Court. Its citizenship for diversity purposes is determined by the citizenship of all of its members. *Endurance*

*American Specialty Insurance Company v. Morris Hardwick Schneider, LLC.* No. 1:16-CV-01375-ELR, 2018 WL 8949294 at * 1, (N.D. Ga., August 24, 2018). Protect Security's sole Member is Mr. Jones who is a citizen of the State of Georgia.

10.

Mr. Jones is a citizen of the State of Georgia. Mr. Jones may be served at 659 Auburn Avenue, NE, Suite G-09, Atlanta, Georgia 30312.  Mr. Jones is subject to the jurisdiction and venue of this Court.

11.

This declaratory judgment action is brought pursuant to 28 U.S.C. §§ 2201 and 2202, and Rule 57 of the Federal Rules of Civil Procedure.

12.

An actual justiciable controversy exists between Clear Blue, Ms. Arnold, Protect Security, and Mr. Jones within the meaning of 28 U.S.C. § 2201 regarding whether Clear Blue has any defense or indemnity obligations under the Primary or Excess Policies for the Underlying Lawsuit.

13.

This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000 and the dispute is between citizens of different states. "When an insurer seeks a judgment declaring the absence of liability under a policy, the value of the declaratory relief to the plaintiff-insurer

5

is the amount of *potential* liability under its policy." *First Mercury Ins. Co. v. Excellent Computing Distributors, Inc.*, 648 F. App'x. 861, 864–65 (11th Cir. 2016). The Primary and Excess Policies at issue here each have a $1,000,000 per occurrence limit which is Clear Blue's potential exposure.

14.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this judicial district. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(3) because the Defendants are subject to this Court's personal jurisdiction with respect to this action.

<strong><u>FACTUAL BACKGROUND</u></strong>

15.

According to the allegations of the Underlying Lawsuit's Complaint, Aaron Lewis was visiting a friend at the Villages of East Lake Apartments on August 19, 2021, when he was shot and killed.

16.

The Villages of East Lake Apartments where Aaron Lewis was shot provide affordable housing for low income families and individuals.

6

17.

Per the Underlying Lawsuit's Complaint, Protect Security was providing security services for the Villages of East Lake Apartments at the time of the shooting.

18.

Although the shooting occurred on August 19, 2021, it was not reported to Clear Blue until July of 2022, some eleven months later.

19.

Clear Blue is currently defending Protect Security and Mr. Jones in the Underlying Lawsuit under a reservation of rights.

20.

The Primary Policy contains the following Insuring Agreement:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against and "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

7

21.

The Primary Policy contains the following pertinent Expected or Intended

Injury Exclusion:

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

22.

The Primary Policy's "Who is an Insured" provision states:

**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business, Your managers are insureds, but only with respect to their duties as your managers.

23.

The Primary Policy requires notice of an "occurrence" or an offense which may give rise to a claim as soon as practicable as a condition precedent to coverage, stating as follows:

**SECTION IV — COMMERCIAL GENERAL LIABILITY CONDITIONS**

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

    **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

        (1) How, when and where the "occurrence" or offense took place:

        (2) The names and addresses of any injured persons and witnesses: and

        (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

24.

The Primary Policy contains the following Punitive or Exemplary Damages Exclusion:

**THIS ENDORSEMENT CHANGES/MODIFIES THE POLICY.  PLEASE READ IT CAREFULLY.**

**EXCLUSION - PUNITIVE OR EXEMPLARY DAMAGES**

This endorsement changes/modifies insurance provided under the following.

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE
FORM**

This insurance does not apply to any claim for punitive or exemplary damages, fines or penalties imposed by law, restitution or any damages which are a multiple of, or in addition to, compensatory damages including related interest or costs whether or not such damages, related interest or costs are characterized as punitive or exemplary damages (hereinafter referred to as punitive or exemplary damages).  If a "suit" shall have been brought against the insured for a claim falling within the coverage provided under the policy, seeking both compensatory and punitive or exemplary damages, then the company will afford a defense to such action; however, the company shall not have an obligation to pay for any costs, interest, or damages attributable to punitive or exemplary damages.

25.

The Primary Policy contains the following Assault and Battery Exclusion:

**SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, Item 2.  Exclusions,**

caused or independently caused said "bodily injury" or "property damage";

**SECTION I – COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, Item 2.  Exclusions** and **SECTION I – COVERAGES, COVERAGE D – ERRORS AND OMISSIONS LIABILITY COVERAGE, Item 2.  Exclusions** are amended and the following added:

**ASSAULT AND BATTERY EXCLUSION**

10

**A.** Claims or suits to recover any damages, including but not limited to "bodily injury," "property damage," and "personal and advertising injury" based upon, related to, arising out of, directly or indirectly resulting from, in consequence of, in any way connected to, or in the sequence of events involving any actual or alleged "assault" and/or "battery," as those items are defined herein, and claims or suits for false arrest, false detention or false imprisonment, where such false arrest, false detention or false imprisonment is based upon, relates to, arises out of, directly or indirectly results from, is in consequence of, is in any way connected to, or is in the sequence of events involving any actual or alleged "assault" and/or "battery." Pursuant to this exclusion, the Company is under no duty to defend or indemnify any insured regardless of the degree of culpability or intent and without regard to:

**1.** Whether the acts are alleged to be by or at the instruction or at the direction of any Insured, Insured's officers, employees, agents or servants; or by any other person lawfully or otherwise on, at or near premises owned or occupied by any insured; or by any other person;

**2.** Whether the acts are alleged to be the legal or proximate or but for cause of "bodily injury" or "property damage" or to have concurrently

**3.** The actual or alleged failure or fault of any Insured or Insured's officers, employees, agents or servants, in the hiring, supervision, retention or control of any person, whether or not an officer, employee, agent or servant of any Insured;

**4.** The actual or alleged failure or fault of any Insured, or Insured's officers, employees, agents or servants, to attempt to suppress, prevent, bar, manage or halt any such acts which may constitute an "assault" and/or "battery";

**5.** The actual or alleged failure or fault of any Insured, or Insured's officers, employees, agents, or servants, to maintain a safe or secure environment or place of business;

**6.** Any act, error or omission by any Insured, or Insured's officers, employees, agents, or servants, in rendering or failing to render aid or assistance to any person; or

11

**7.** The theory of or basis for liability, recovery or relief, or the manner in which such theory of or basis for liability, recovery or relief is alleged, asserted or pleaded (including, but not limited to, "claims" or "suits" which allege, assert or plead negligence in whole or in part), where the operative acts and/or underlying events constitute an "assault" and/or "battery." The Company shall have the sole and exclusive right to determine whether or not such operative acts and/or underlying events constitute an "assault" and/or "battery." If such determination is disputed, the Company shall have the right, in addition to all other rights and remedies at law and/or in equity, to file and prosecute an action for declaratory relief at any time in a court having appropriate jurisdiction.

**B.** Additionally, this exclusion applies to any claim or suit by any person, firm or organization, asserting rights derived from, or contingent upon, any person having or asserting a claim or suit that is excluded under paragraph A. above. This exclusion also excludes from coverage claims suits for:

**1.** Emotional distress, or for loss of society, services, consortium and/or income;

**2.** Reimbursement for expenses (including, but not limited to medical expenses, hospital expenses and wages) paid or incurred by such other person, firm or organization; or

**3.** Any obligation to share damages with indemnify or repay someone who must pay damages because of "bodily injury" or "property damage";

where such claims or suits are based upon, relate to, arise out of, directly or indirectly result from, are in consequence of, are in any way connected to, or are in the sequence of events involving any actual or actual or alleged "assault" and/or "battery."

## ASSAULT AND BATTERY EXTENSION OF COVERAGE AND LIMITS OF INSURANCE

**A.** If a claim or suit is excluded from coverage by operator of the Assault and Battery Exclusion, the Company hereby agrees to waive the Assault and Battery Exclusion, but only (i) with respect to the location(s) or operation(s) listed in the Schedule of Location(s) or

Operation(s); (ii) to the extent of the limits shown in this Schedule of Limits of Insurance set forth in this Assault and Battery Coverage Limitation endorsement and (iii) with respect to "bodily injury," "property damage" or "personal or advertising injury" under Section I – Coverage A or Coverage B.

The Assault and Battery Limit is the most we will pay for all damages and claim expenses for all claims or suits based upon, related to, arising out of, directly or indirectly resulting from, in consequence of, in any way connected to, or in the sequence of events involving any "assault" and/or "battery" at location(s) or operation(s) listed in the Schedule of Location(s) or Operation(s).

Any series of related incidents of "Assault" and "Battery" such as a battery involving multiple blows, an altercation involving multiple participants, a battery and false imprisonment, or any combination thereof, shall be deemed to be a single occurrence for purposes of the "Assault and Battery Limit" scheduled in this endorsement, regardless of the number of persons that have sustained injury or the number of persons that have been sold, served, or furnished an alcoholic beverage or beverages.

The Assault and Battery Aggregate Limit is the most we will pay for all damages and claim expenses for all claims or suits based upon, related to, arising out of, directly or indirectly resulting from, in consequence of, in any way connected to, or in the sequence of events involving any "assault" or "battery" at the location listed in the Schedule of Location(s) or Operation(s).

2. The incurrence of claim expenses serves to reduce and may exhaust the Limits of Insurance available to pay for damages because of an "assault" and/or "battery." The right and duty to defend with respect to any "assault" and/or "battery" claim ends when we have used up the Assault and Battery Limit or the Assault and Battery Aggregate Limit.

**B.** The limits of coverage if applicable provided by your **Commercial General Liability Coverage Form** for "bodily injury," "property damage," and "personal and advertising

13

injury," arising out of "Assault" and "Battery" are subject to the Assault and Battery Limit and the Assault and Battery Aggregate Limit as scheduled in this endorsement.

1.   The Assault and Battery Limit as set forth herein is the most we will pay under the coverage form to which this endorsement may apply for the sum of:

    **a.**   all damages under Section I – Coverage A and Coverage B of your Commercial General Liability Coverage Form

    because of all "bodily injury," "property damage," and "personal and advertising injury arising out of any one occurrence and/or offense of an "Assault" and "Battery."

**2.**   The "Assault and Battery Aggregate Limit" shown in the schedule of this endorsement is the most we will pay under the coverage form to which this endorsement applies for the sum of:

    **a.**   All damages under Section I – Coverage A and Coverage B arising out of all claims or suits for "Assault" and "Battery."

**3.**   Any damages payable under this endorsement shall be included within and reduce:

    **a.**   The Each Occurrence Limit or Personal and Advertising Injury Limit; and

    **b.**   The General Aggregate Limit except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard,"

of the Commercial General Liability Coverage Form, as applicable.

26.

The Excess Policy contains the following Insuring Agreement:

## COMMERCIAL EXCESS LIABILITY COVERAGE FORM

## SECTION I - COVERAGES

**1. Insuring Agreement**

    **a.** We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "injury or damage" to which this insurance applies.

    **b.** The insurance under this Policy will follow the same provisions, exclusions, conditions and limitations that are contained in the applicable "controlling underlying insurance," unless otherwise directed by this insurance.  To the extent such provisions differ or conflict, the provisions of this Policy will apply.  However the coverage under this Policy will be no broader than that provided by:

        **(1)** The applicable "controlling underlying insurance"; and

        **(2)** Any other "underlying insurance."

27.

    The Excess Policy requires notice of an "event " which may  result in a claim

as soon as practicable as a condition precedent to coverage, stating as follows:

## SECTION III – CONDITIONS

**5. Duties In The Event Of a Claim, Event, or Suit**

LEGAL\61191311\1

**a.** You must see to it that we are notified as soon as practicable of an "event," regardless of the amount, which may result in a claim under this Policy. To the extent possible, notice should include:

    **(1)** How, when and where the "event" took place;

    **(2)** The names and addresses of any injured persons and witnesses; and

    **(3)** The nature and location of any "injury or damage" arising out of the "event."

28.

The Excess Policy contains the following Definitions:

## SECTION IV — DEFINITIONS

As used in this policy:

**5.** "**Retained limit**" means the sum of all "underlying insurance" shown in the Schedule of Underlying Insurance, and any other insurance or self-insurance applicable to the claim or "suit," except insurance specifically written to apply in excess of this policy.

**7** "**Ultimate net loss**" means the total sum, after reduction for recoveries, or salvages collectible, that the insured becomes legally obligated to pay as damages by reason of:

**a.** Settlements, judgments, binding arbitration; or

    **b.** Other binding alternate dispute resolution proceeding entered into with our consent.

29.

The Excess Policy contains the following Punitive or Exemplary Damages

Exclusion:

**********

**THIS ENDORSEMENT CHANGES/MODIFIES THE POLICY.  PLEASE READ IT CAREFULLY.**

**EXCLUSION — PUNITIVE OR EXEMPLARY DAMAGES**

This endorsement changes/modifies insurance provided under the following:

**COMMERCIAL EXCESS LIABILITY COVERAGE FORM**

**SECTION I - COVERAGES, 2.  Exclusions** is amended and the following Exclusion is added:

**Punitive or Exemplary Damages**

This insurance does not apply to any claim for punitive or exemplary damages, fines or penalties imposed by law, restitution, or any damages which are a multiple of, or in addition to, compensatory damages, including related interest or costs, whether or not such damages, related interest, or costs are characterized as punitive or exemplary damages (hereinafter referred to as punitive or exemplary damages).  If a "suit" shall have been brought against the Insured for a claim falling within the coverage provided under the Policy, seeking both compensatory and punitive or exemplary damages, then the company will afford a defense to such action, however, the company shall not have an obligation to pay for any costs, interest, or damages attributable to punitive or exemplary damages.

## COUNT ONE: DECLARATORY JUDGMENT

### 30.

Clear Blue incorporates herein by reference each of the allegations contained in Paragraphs 1 through 29 above.

### 31.

There is a real, substantial, and justifiable controversy between the parties concerning Clear Blue's duty to defend and indemnify Protect Security and Mr. Jones under the Primary and Excess Policies for the claims asserted in the Underlying Lawsuit.

### 32.

Clear Blue is not obligated to defend or indemnify Protect Security or Mr. Jones under the Primary and Excess Policies for the claims asserted against them or any judgment that may be entered against them in the Underlying Lawsuit for one or more of the following reasons:

(a)     The claims do not fall within the general Insuring Provisions of the Primary or Excess Policies or their Endorsements;

(b)     The Primary and Excess Policies and their Endorsements and Exclusions preclude coverage; and

(c)     Conditions precedent to coverage have not been met under the Primary and Excess Policies.

18

33.

The claims asserted in the Underlying Lawsuit are otherwise precluded and/or limited from coverage by the application of one or more Provisions, Exclusions, and/or Endorsements contained in the Primary and Excess Policies.

34.

Clear Blue, therefore, has no obligation to defend or indemnify Protect Security or Mr. Jones for the Underlying Lawsuit because the terms and conditions of the Primary and Excess Policies have not been met.

35.

Upon judicial determination of non-coverage under the Primary and Excess Policies, Clear Blue is entitled to and may withdraw from Protect Security's and Mr. Jones' defense in the Underlying Lawsuit.

36.

Upon a judicial determination of non-coverage under the Primary and Excess Policies, Clear Blue is entitled to and may recoup any and all attorneys' fees and costs expended in defending Protect Security and Mr. Jones in the Underlying Lawsuit.

**WHEREFORE**, Plaintiff Clear Blue Specialty Insurance Company requests that judgment be entered in this action:

LEGAL\61191311\1

A.      Declaring that the Primary and Excess Policies do not provide coverage to Protect Security or Mr. Jones for the Underlying Lawsuit due to the Primary and Excess Policies' language, requirements, conditions, endorsements, and exclusions;

B.      Declaring that Clear Blue has no duty to defend or indemnify Protect Security or Mr. Jones  in connection with the Underlying Lawsuit;

C.      Declaring that Clear Blue may recoup its costs, attorneys' fees, and disbursements incurred in defending Protect Security and Mr. Jones in the Underlying Lawsuit;

D.      Awarding Clear Blue its costs and attorneys' fees incurred in bringing this action; and

E.      Declaring that Clear Blue is entitled to such further relief as may be necessary and proper.

Respectfully submitted this 23rd day of January, 2023.

s/ Kenan G. Loomis
Kenan G. Loomis
Georgia Bar No. 457865
COZEN O'CONNOR
1230 Peachtree Street, N.E.
The Promenade, Suite 400
Atlanta, GA  30309
Telephone:  404-572-2028
Facsimile:   866-591-9127
E-mail:  kloomis@cozen.com
*Attorney for Plaintiff Clear Blue*
*Specialty Insurance Company*

20

CERTIFICATION:  The above-signed counsel hereby certifies that this document was prepared in Times New Roman 14-point font and a 1.5 inch top margin in accordance with LR 5.1B, N.D.Ga.