**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| AKIRAH WILLIAMS, | ) | |
| Plaintiff, | ) | Civil Action File No. |
| | ) | |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| LAMODAR, LLC, | ) | |
| Defendant. | ) | |

## COMPLAINT

COMES NOW Plaintiff, Akirah Williams, and files suit against Defendant, Lamodar, LLC, showing the Court as follows:

## Introduction

1.   This is an action for wage theft and unpaid overtime under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (the "FLSA"), retaliation under the FLSA, sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and related Georgia state law claims.

## Parties

2.   Plaintiff is a citizen of the United States and of the State of Georgia.

3.   Defendant is a Georgia corporation with its principal place of business in Georgia.

4.    Defendant is a franchisee operating hotels under the Hilton family of hotel brands.

5.    Plaintiff worked for Defendant in Defendant's Hapeville, Georgia, Embassy Suites location.

### Jurisdiction

6.    This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Count I of this Complaint, which is brought under the FLSA.

7.    This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Count II of this Complaint, which is brought under the FLSA.

8.    This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Count III of this Complaint, which is brought under the FLSA.

9.    This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Count IV of this Complaint, which arises under the same nucleus of operative fact as Counts I through III.

10.   This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Count V of this Complaint, which is brought under Title VII.

11.   This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Count VI of this Complaint, which is brought under Title VII.

12.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Count VII of this Complaint, which is brought under Title VII.

13.     This Court has supplemental jurisdiction over Count VIII of this Complaint, which arises under the same nucleus of operative fact as Counts V through VII.

14.     This Court has supplemental jurisdiction over Count IX of this Complaint, which arises under the same nucleus of operative fact as Counts V through VII.

15.     Venue is proper in this Court because the employment practices described herein occurred within the Atlanta Division of the Northern District of Georgia.

## Statement of Facts

16.     Plaintiff began working for Defendant on or about May 5, 2022.

17.     Plaintiff worked for Defendant as a Front Desk Receptionist.

18.     Defendant set Plaintiff's work schedule.

19.     Plaintiff was to be paid an hourly rate.

20.     Plaintiff's base pay was $15.00 per hour.

21.     Plaintiff was supposed to get an additional $2.00 per hour for night shifts.

22.     Plaintiff worked at least five days per week.

23.     Plaintiff frequently worked seven days per week.

24.     Each shift Plaintiff worked was eight hours.

25.     Plaintiff sometimes worked double shifts.

26.     Defendant had a system for employees to clock in and clock out.

27.     Defendant's time-clock system did not work.

28.     Defendant knew its time-clock system did not work.

29.     Defendant instructed employees to report their time outside of the time-clock system.

30.     Plaintiff accurately reported her time.

31.     Plaintiff was typically only paid for twenty hours per week.

32.     Plaintiff was typically only paid $15.00 per hour for the twenty hours for which she was paid.

33.     Plaintiff was supervised by Monsour Abubuker.

34.     Abubuker was the Assistant General Manager of Defendant's Hapeville Embassy Suites location.

35.     Plaintiff was supervised by Francis Kalema.

36.     Kalema was the General Manager of Defendant's Hapeville Embassy Suites location.

37.   Kalema maintained a personal relationship with an employee named Kurt Russell.

38.   Russell became interested in Plaintiff immediately upon Plaintiff's hire by Defendant.

39.   Kalema aided Russell in Russell's efforts to harass Plaintiff.

40.   Kalema issued Plaintiff uniform pants that were too small.

41.   Plaintiff had informed Kalema of her clothing sizes prior to being issued the uniform clothing.

42.   Within a week of Plaintiff's start of employment, Plaintiff reported to Kalema that she (Plaintiff) had been issued uniform pants that were too small.

43.   Plaintiff was never issued properly sized uniform pants.

44.   Russell is significantly larger than Plaintiff.

45.   Russell repeatedly commented that Plaintiff should wear her uniform pants.

46.   Russell repeatedly commented that Plaintiff's uniform pants made her look good.

47.   Russell regularly eavesdropped on Plaintiff's conversations.

48.   Russell repeatedly commented on Plaintiff's conversations.

49.   Russell repeatedly stated that he would "work [Plaintiff] out."

50.   Russell repeatedly said he would put Plaintiff's feet in his mouth.

51.   Russell regularly referred to Plaintiff as "snacks."

52.   Russell regularly told Plaintiff that he (Russell) would lick all over her (Plaintiff's) body.

53.   Russell regularly told Plaintiff that he wanted to eat various food items off of her body.

54.   On one occasion, Russell approached Plaintiff and put his hand on Plaintiff's thigh.

55.   On multiple occasions, Russell approached Plaintiff from behind and pressed his penis against Plaintiff's back.

56.   Plaintiff recoiled from Russell's physical contact.

57.   Russell would regularly follow Plaintiff into the hallway, walking so close to Plaintiff that his body made contact with her behind.

58.   Plaintiff had to walk as quickly as possible, nearly running, to attempt to avoid coming into contact with Russell.

59.   While Russell followed behind Plaintiff, as described above, he made aggressive sexual comments toward her.

60.   Plaintiff repeatedly and regularly told Russell to stop making sexual comments towards her.

61.   Plaintiff repeatedly and regularly told Russell to not touch her.

62. Plaintiff repeatedly reported Russell's conduct described herein to Abubuker.

63. Abubuker took no action to stop Russell.

64. Kalema took no action to stop Russell.

65. After Plaintiff reported Russell's conduct to Mansour, Kalema began threatening to terminate Plaintiff for not wearing her uniform.

66. On one occasion, Kalema threatened to terminate Plaintiff for not wearing her uniform while Kalema was wearing slippers in place of uniform-approved footwear.

67. Other employees wore non-uniform clothing without threat of punishment.

68. Other employees wore non-uniform clothing without punishment.

69. At all relevant times, Defendant maintained video monitoring of the hotel.

70. When Russell engaged in unwanted sexual or threatening conduct, Plaintiff would attempt to report to Kalema privately in Kalema's office.

71. When Plaintiff approached Kalema's office, Kalema would lock her door.

72. Kalema would not answer her door when Plaintiff knocked.

73. Plaintiff regularly reported that she was being underpaid.

74. Plaintiff reported missing hours to Kalema.

75. On June 24, 2022, Plaintiff requested to file an "official" report regarding missing hours and Russell's actions.

76.   On July 2, 2022, Plaintiff was transferred to night shift.

77.   Kalema told Plaintiff that she (Plaintiff) was being moved to night shift because Kalema "[did] not want to see [Plaintiff's] face."

78.   The last time Plaintiff reported missing hours to Kalema during her employment was the morning of July 6, 2022.

79.   Plaintiff worked the night shift on the night of July 5, 2022.

80.   When Plaintiff returned for her night shift on the night of July 6, 2022, she was fired by Kalema.

81.   Kalema stated that Plaintiff was fired for failing to complete an audit of housekeeping activities.

82.   Plaintiff did not have access to the systems and information to audit housekeeping activities.

83.   An employee named Deborah (last name unknown) was tasked with the same audit as Plaintiff.

84.   Deborah had not reported missing hours.

85.   Deborah had not reported not being paid minimum wage.

86.   Deborah had not reported not being paid overtime.

87.   Deborah had not reported sexual harassment.

88.   Deborah was not terminated.

89.    Deborah was not punished in any way for failure to complete the audit.

90.    Plaintiff timely filed a Charge of Discrimination with the Equal Employment

Opportunity Commission on August 12, 2022.

91.    The Equal Employment Opportunity Commission issued Plaintiff a Notice of

Right to Sue on October 25, 2022.

## Count I:  Failure to Pay Minimum Wages
## (FLSA)

92.    Plaintiff reasserts and incorporates Paragraphs 1 through 91 of this Complaint

as if fully set forth herein.

93.    Defendant engages in interstate commerce and is covered by the FLSA.

94.    Plaintiff was regularly denied pay for hours she worked, as shown in

Paragraphs 22-25 and 31-32.

95.    Plaintiff's regular rate of pay dropped below minimum wage.

96.    Defendant had notice of the hours Plaintiff worked, as shown in Paragraphs

18, 29-30, 69, 73-75, and 78.

97.    Defendant failed to keep accurate time records, as shown in Paragraphs 26-

29.

98.    Plaintiff is therefore entitled to recover all unpaid minimum wages plus

interest, an equal amount as liquidated damages, attorney fees, and litigation

costs.

## Count II:  Failure to Pay Overtime
## (FLSA)

99.   Plaintiff reasserts and incorporates Paragraphs 1 through 91 of this Complaint as if fully set forth herein.

100.   Defendant engages in interstate commerce and is covered by the FLSA.

101.   Plaintiff was regularly denied pay for hours she worked, as shown in Paragraphs 22-25 and 31-32.

102.   Plaintiff regularly worked over forty hours per week.

103.   Plaintiff was not paid one and one-half times her hourly pay rate for hours worked above forty per week.

104.   Defendant had notice of the hours Plaintiff worked, as shown in Paragraphs 18, 29-30, 69, 73-75, and 78.

105.   Defendant failed to keep accurate time records, as shown in Paragraphs 26-29.

106.   Plaintiff is therefore entitled to recover all unpaid overtime wages plus interest, an equal amount as liquidated damages, attorney fees, and litigation costs.

## Count III:  Retaliation
## (FLSA)

107.   Plaintiff reasserts and incorporates Paragraphs 1 through 106 of this Complaint as if fully set forth herein.

108.   Defendant engages in interstate commerce and is covered by the FLSA.

109.   Plaintiff has an objectively reasonable, good faith belief that her rights under the FLSA were being violated as described in Counts I and II of this Complaint.

110.   Plaintiff engaged in protected activity by reporting violations of the FLSA, as shown in Paragraphs 73-75 and 78.

111.   Plaintiff was moved to a different shift in retaliation for engaging in protected activity under the FLSA.

112.   Plaintiff was moved to a different shift to discourage further protected activity under the FLSA.

113.   Plaintiff was terminated for engaging in protected activity under the FLSA.

114.   Causation may be inferred by timing.

115.   Defendant's alleged reason for terminating Plaintiff is merely pretext.

116.   Pretext may be inferred through a comparator, as shown in Paragraphs 83-86 and 88.

117.   Plaintiff is therefore entitled to reinstatement or front pay, to recover lost wage damages plus interest, to recover an equal amount as liquidated damages, attorney fees, and litigation costs.

## Count IV:  Breach of Contract
## (Georgia State Law)

118.   Plaintiff reasserts and incorporates Paragraphs 1 through 117 of this Complaint as if fully set forth herein.

119.   Plaintiff and Defendant entered into an employment agreement whereby Plaintiff would perform the duties of a Front Desk Receptionist and, in return, Defendant would compensate Plaintiff as described in Paragraphs 19-21.

120.   Plaintiff worked for Defendant, as shown in Paragraphs 22-25.

121.   Defendant failed to pay Plaintiff the wages it had promised her.

122.   Plaintiff is therefore entitled to recover all unpaid wages.

## Count V:  Sexual Harassment (Quid Pro Quo)
## (Title VII)

123.   Plaintiff reasserts and incorporates Paragraphs 1 through 122 of this Complaint as if fully set forth herein.

124.   Plaintiff is a member of a protected class, i.e., she is a woman.

125.   Plaintiff refused to give in to Russell's sexual demands, as described in Paragraphs 60-61.

126.  Defendant took tangible employment action against Plaintiff as described in Paragraphs 80.

127.  There is a causal connection between Plaintiff's refusal to give in to Russell's sexual demands and the employment action taken against her.

128.  Defendant is liable for the sexual harassment of Plaintiff under a theory of vicarious or direct liability.

129.  Defendant has willfully and wantonly disregarded Plaintiff's rights.

130.  Defendant's discrimination against Plaintiff was undertaken in bad faith.

131.  As a direct and proximate cause of Defendant's violation of Title VII, Plaintiff has been made victim of acts that adversely affected her psychological and physical well-being.

132.  Defendant is liable for the damages Plaintiff has sustained as a result of Defendant's unlawful discrimination.

133.  Plaintiff is entitled to recover compensatory damages, including damages for emotional distress.

134.  Defendant acted with malice and in reckless indifference to Plaintiff's federally protected rights.

135.   Plaintiff is entitled to punitive damages, lost wages and benefits, attorney's

fees and costs, prejudgment interest, reinstatement or front pay in lieu

thereof, and any other relief available under the law.

### Count VI:  Sexual Harassment (Hostile Work Environment)
### (Title VII)

136.   Plaintiff reasserts and incorporates Paragraphs 1 through 135 of this

Complaint as if fully set forth herein.

137.   Defendant permitted its employee to act in a hostile manner towards Plaintiff

and other employees, and in failing and refusing to take any appropriate

remedial action to remedy the unlawful employment practices has not only

deprived Plaintiff of equal employment opportunities but exhibits malice or

reckless indifference to the federally protected rights of Plaintiff.

138.   As a direct and proximate result of Defendant G.I.'s unlawful employment

practices, Plaintiff has been embarrassed, humiliated and has suffered

damage to their emotional health.

139.   Plaintiff thus seeks compensatory and punitive damages pursuant to

§102(a)(1) of the Civil Rights Act of 1991.

## Count VII:  Retaliation
## (Title VII)

140.   Plaintiff reasserts and incorporates Paragraphs 1 through 139 of this Complaint as if fully set forth herein.

141.   Plaintiff had an objectively reasonable, good faith belief that her rights were being violated under Title VII of the 1964 Civil Rights Act, as described in Counts V and VI of this Complaint.

142.   Plaintiff engaged in protected activity by reporting violations of Title VII, as shown in Paragraphs 62-65.

143.   Plaintiff was moved to a different shift in retaliation for engaging in protected activity under the Title VII.

144.   Plaintiff was moved to a different shift to discourage further protected activity under Title VII.

145.   Plaintiff was terminated for engaging in protected activity under Title VII.

146.   Causation may be inferred by timing.

147.   Defendant's alleged reason for terminating Plaintiff is merely pretext.

148.   Pretext may be inferred through a comparator, as shown in Paragraphs 83 and 87-88.

149.   Plaintiff is therefore entitled to punitive damages, lost wages and benefits, compensatory damages, attorneys' fees and costs, prejudgment interest,

reinstatement or front pay in lieu thereof, and any other relief available under the law.

### Count VIII:  Negligence
### (Georgia State Law)

150.  Plaintiff reasserts and incorporates Paragraphs 1 through 149 of this Complaint as if fully set forth herein.

151.  Defendant was aware of Russell's propensity to engage in sexually offensive conduct, as described in Paragraphs 62 and 65-72.

152.  Defendant knew or had reason to know of Russell's propensity to engage in sexually offensive conduct toward Plaintiff, as described in Paragraphs 62 and 65-72.

153.  It was foreseeable that Russell would engage in tortious conduct toward Plaintiff.

154.  Defendant nevertheless failed and refused to act to protect Plaintiff.

155.  Defendant was willfully negligent in supervising, and/or continuing the employment of Russell.

156.  As a result of said negligence, which was gross and in reckless disregard for Plaintiff's health and safety, Plaintiff has been subjected to tortious conduct and suffered mental anguish, humiliation, and other indignities.

## <u>Count IX:  Intentional Infliction of Emotional Distress</u>
## <u>(Georgia State Law)</u>

157.   Plaintiff reasserts and incorporates Paragraphs 1 through 156 of this Complaint as if fully set forth herein.

158.   Defendant subjected Plaintiff to extreme and outrageous misconduct of a sexual nature.

159.   Defendant intended to inflict severe emotional distress and knew that their acts of sexual harassment would inflict extreme emotional distress on Plaintiff.

160.   Defendant is liable for all general and special damages proximately resulting from the intentional infliction of emotional distress.

161.   Defendant acted in bad faith, was stubbornly litigious, and/or caused Plaintiff unnecessary trouble and expense in litigating this case, and Plaintiff is thus entitled to recovery of the expenses of this litigation, including attorney's fees, under Georgia law, including but not limited to O.C.G.A. Section 13-6-11.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE,** Plaintiff respectfully prays for the following relief:

(a)      General damages for mental and emotional suffering caused by Defendant's misconduct;

(b)        Punitive damages based on Defendant's willful, malicious,

intentional, and deliberate acts, including ratification,

condonation and approval of said acts;

(c)        Special damages for lost wages and benefits and prejudgment

interest thereon;

(d)        Liquidated damages equal to Plaintiff's lost wages and benefits

of employment and prejudgment interest thereon;

(e)        Reasonable attorney's fees and expenses of litigation;

(f)        Trial by jury as to all issues;

(g)        Prejudgment and post judgment interest at the rate allowed by

law;

(h)        Declaratory relief to the effect that Defendant has violated

Foster's statutory rights;

(i)        Injunctive relief of reinstatement, or front pay in lieu thereof,

and prohibiting Defendant from further unlawful conduct of the

type described herein; and

(j)        All other relief to which Plaintiff may be entitled.

Respectfully submitted this 23rd day of January, 2023,

**BARRETT & FARAHANY**

*s/ Micah Barry*
Micah Barry
Georgia Bar No. 103184

P.O. Box 530092
Atlanta, Georgia 30353
(404) 214-0120
micah@justiceatwork.com

## **JURY DEMAND**

Plaintiff requests a jury trial on all questions of fact raised by this Complaint.

This 23rd day of January, 2023.

Respectfully submitted,

**BARRETT & FARAHANY**

*s/ Micah Barry*

Micah Barry
Georgia Bar No. 103184

## <u>FONT AND POINT CERTIFICATION</u>

The undersigned counsel for Plaintiff certifies that the within and foregoing

**COMPLAINT** was prepared using Times New Roman, 14-point font in

accordance with LR 5.1(B).

This 23rd day of January, 2023.

Respectfully submitted,

**BARRETT & FARAHANY**

*s/ Micah Barry*

Micah Barry
Georgia Bar No. 103184
