# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| TANESHA SPAULDING, | ) | |
| | ) | |
| PLAINTIFF, | ) | Civil Action File No. |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED DIGESTIVE MSO | ) | |
| PARENT, LLC d/b/a ATLANTA | ) | |
| GASTROENEROLOGY & ASSOCIATES | ) | |
| | ) | JURY TRIAL DEMANDED |
| DEFENDANT. | ) | |
| | ) | |
| | ) | |

## COMPLAINT

Tanesha Spaulding ("Ms. Spaulding" or "Plaintiff") files this Complaint against Defendant United Digestive MSO Parent, LLC d/b/a Atlanta Gastroenterology & Associates ("United Digestive"). Plaintiff respectfully shows this Court as follows:

## INTRODUCTION

1. This action is for sexual harassment, and retaliation arising under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §2000e, *et seq.* ("Title VII"), and related state-law claims. Plaintiff seeks declaratory and injunctive relief, back pay, front pay, compensatory damages, punitive damages and attorney's fees

1

and costs. Plaintiff further invokes pendant jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to hear and decide claims arising under the laws of the State of Georgia for assault, battery, negligent supervision, and negligent retention.

## JURISDICTION AND VENUE

2. Ms. Spaulding's Title VII claims present federal questions over which the Court has jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. §2000e-5(f)(3).

3. This Court has pendant jurisdiction over Ms. Spaulding's claims arising under the laws of the State of Georgia pursuant to 28 U.S.C. § 1367.

4. This Court is an appropriate venue for all of Ms. Spaulding's claims under 28 U.S.C. § 1391(b) and 42 U.S.C. §2000e-5(f)(3), because all of the parties reside within the Northern District of Georgia, and a substantial majority of events giving rise to Ms. Spaulding's claims occurred in this judicial district.

## ADMINISTRATIVE PROCEEDINGS

5. Ms. Spaulding filed a timely charge of sexual harassment and retaliation with the Equal Employment Opportunity Commission ("EEOC"). A true and accurate copy of the Charge is attached hereto as Exhibit "A" and is incorporated herein.

6. Ms. Spaulding received a notice of right to sue from the EEOC within ninety (90) days of filing this Complaint and has complied with all other conditions

precedent to the institution of this lawsuit.  A true and accurate copy of the Notice of Right to Sue is attached hereto as Exhibit "B" and is incorporated herein.

## PARTIES

7. Ms. Spaulding is female.

8. Ms. Spaulding is a citizen of the United States.

9. Ms. Spaulding is a resident of the State of Georgia.

10. Ms. Spaulding was an employee of Defendant at all times material to this Complaint.

4. Ms. Spaulding is a member of a protected class under Title VII.

5. United Digestive is licensed to do business in Georgia.

6. United Digestive transacts business in the Northern District of Georgia.

7. United Digestive is subject to this Court's jurisdiction and may be served with process through its registered agent for service of process.

## STATEMENT OF FACTS

8. United Digestive is subject to the anti-discrimination and anti-retaliation provisions of Title VII.

9. United Digestive employed 15+ employees for each working day in each of twenty or more calendar weeks from 2021 throughout 2022.

10. United Digestive employed well over 15 employees for each working day in each of twenty or more calendar weeks throughout 2022.

11. Plaintiff began employment with United Digestive in 2020.

12. Plaintiff's job title was medical assistant.

13. Plaintiff was paid $19.75 an hour

14. Plaintiff's supervisor/team lead was Chrisanda Johnson ("Ms. Johnson").

15. Ms. Johnson was the supervisor/team lead for all medical assistants.

16. Ms. Johnson often engaged in inappropriate sexual conversation and touching within the office in an open and notorious way.

17. For example, Ms. Johnson asked Plaintiff's co-workers to come and check out Plaintiff's "titties" as she claimed that Plaintiff's had excited or hard nipples.

18. By way of further example, Ms. Johnson would caress or sensually run her hands down Plaintiff's arm while provocatively looking at Plaintiff, and Ms. Johnson would lean down and have her breast touch Plaintiff as she guided Plaintiff.

19. Ms. Johnson's behavior was frequently in front of Plaintiff's co-workers and sometimes in the presence of medical doctors.

20. The above behaviors by Ms. Johnson were unwelcome, offensive, and intimidating to Plaintiff.

21. The above behaviors were frequently open and obvious in the workplace such that any supervisor would be aware of Ms. Johnson's conduct.

22. Despite the open and obvious nature of the conduct, Defendant's took no action to deter Ms. Johnson's sexual harassment.

23. Toward the later part of 2021, Ms. Johnson's behavers got more extreme and even more frequent.

24. For example, in approximately December 2021, Ms. Johnson began to joke with Plaintiff that she was going to get her a "dildo" for Christmas to give Plaintiff a much needed release.

25. Plaintiff made it known to Ms. Johnson that her comments were unwelcome, but this only seemed to encourage Ms. Johnson to make more and more extreme sexual comments.

26. On or around December 13, 2021, Ms. Johnson gathered a group of Plaintiff's co-workers and in the additional presence of at least one doctor, she opened a package with her Christmas gift for Plaintiff. Ms. Johnson gave Plaintiff two dildos, one called "the Rose", and the other called a "long stemmed" dildo. (See "Exhibit C")

27. Plaintiff was mortified, and this seemed to excite Ms. Johnson.

28. Plaintiff asked Ms. Johnson why she gave her such a gift, and Ms. Johnson responded that Plaintiff, "needed dick in her life or some kind of release".

29. Ms. Johnson kept insisting that Plaintiff hold the dildo's and touch them. Ms. Johnson kept saying these are yours.

30. Plaintiff quickly tried to put the gifts away, but Ms. Johnson would not stop. Ms. Johnson began to say, "You're going to use this tonight, right?"

31. Even worse the following days, Ms. Johnson kept asking did you use your new toys? How was it? Tell us about it? How many times did you use it, etc.

32. Plaintiff was mortified and refused to answer any questions. This seemed to anger Ms. Johnson and she began to say, "I hope you're not wasting my money."

33. Finally, Plaintiff got fed up with Ms. Johnson's sexual harassment and she asked Ms. Johnson if she was trying to have a relationship with her, and she told Ms. Johnson that her comments were unwelcome and made her extremely uncomfortable, and that Plaintiff was not gay.

34. After this confrontation, both Plaintiff and Ms. Johnson were upset.

35. Plaintiff attempted to contact the office manager Richarda ("Ricky") Brown, but she was not able to reach her.

36. On or about January 22, 2022, Plaintiff was called into a meeting with Ms. Brown and the harasser, Ms. Johnson.

37. Plaintiff explained the above to Ms. Brown.

38. Incredibly, Ms. Brown's response was, we know you are not happy here, we can move you to the front.

39. Plaintiff was shocked by Mr. Brown's response to her complaint, and her apparent refusal to take action against Ms. Johnson.

40. After the above incidents and Mr. Brown's response to her complaint, Plaintiff was emotionally devastated. She felt that she could not continue to work at Defendant's office with its tolerance for sexual harassment.

41. Plaintiff took FMLA leave because of the sexual harassment from January 24 – April 17.

42. During Plaintiff's leave, Plaintiff filed a formal complaint of sexual harassment against Ms. Johnson.

43. Plaintiff met with Vanessa Irving in Defendant's HR department regarding her sexual harassment complaint.

44. During the interview, Ms. Irving tried to convince Plaintiff that Ms. Johnson was just joking and that she was not sexually harassing the Plaintiff.

45. Ms. Irving tried to persuade Plaintiff to withdraw her complaint of sexual harassment.

46. Plaintiff refused to withdraw her complaint, and on April 4, 2022 she filed the EEOC charge attached as Exhibit A.

47. After Plaintiff returned from FMLA leave she was ostracized by Defendant in retaliation for her complaint of sexual harassment.

48. Finally, on or about November 8, 2022 Plaintiff was fired by Defendant allegedly for being late.

49. Plaintiff's termination was pretext for retaliation.

50. Plaintiff's co-workers have had similar or worse attendance issues but have not been terminated.

## COUNT I
### Sexual Harassment in Violation of Title VII

51. Plaintiff incorporates by reference the preceding Paragraphs as if fully restated herein.

52. As a woman, Plaintiff is a member of protected groups.

53. As detailed above, throughout her employment with United Digestive, Plaintiff was subjected to sexual harassment and hostile work environment by United Digestive' employees and management.

54. All the above conduct by Defendants' employees and management were unwelcome, offensive, and intimidating to Plaintiff, and open and obvious in the workplace.

55. Plaintiff complained that the sexually harassing conduct was unwelcome.

56. At all times relevant to this action, Defendants knew or should have known of the sexual harassment endured by Plaintiff and the existence of a sexually harassing work environment and failed to meaningfully remedy the workplace environment to protect Plaintiff.

57. Defendants willfully and wantonly disregarded Plaintiff's rights, were undertaken in bad faith, and constitute unlawful intentional gender and race discrimination in violation of Title VII.

58. As a result of Defendants' unlawful actions, Plaintiff has suffered emotional distress, inconvenience, loss of income and benefits (past and future), humiliation, and other indignities.  Plaintiff seeks all damages available.

## COUNT II
### Retaliation in Violation of Title VII

59. Plaintiff incorporates by reference the preceding paragraphs as if fully restated herein.

60. Plaintiff engaged in protected activities protected under Title VII by making complaints of sexual harassment.

61. As a result of her complaints, Plaintiff suffered adverse employment actions including, but not limited to removal from the KMA job and ultimately termination.

62. As a direct and proximate result of Defendants' unlawful discriminatory and retaliatory actions, Plaintiff has suffered lost wages and other benefits of employment, significantly diminished employment opportunities, inconvenience, loss of income, and emotional distress, including but not limited to outrage, shock, and humiliation because she exercised her rights under Title VII.

63. Defendants willfully and wantonly disregarded Plaintiff's rights, and Defendants' discrimination and retaliation against Plaintiff was undertaken in bad faith.

64. As a result, Plaintiff is entitled to both equitable and monetary relief in all forms provided by law.

## COUNT III
## Assault and battery

65. Plaintiff hereby incorporates each and every preceding paragraph as if set forth fully herein.

66. Ms. Johnson's behavior as detailed above constitutes civil assault and/or battery.

67. Defendants knew that Plaintiff was likely to be subjected to sexually harassing comments and/or fear of touching's due to the open and obvious nature of Defendants' employees conduct in the workplace.

68. Defendants failed to take prompt and appropriate remedial steps to protect Plaintiff from sexual harassment and assault and battery.

69. Because of Defendants' negligent supervision and retention, Defendant ratified Ms. Johnson's behavior.

70. Plaintiff suffered damages in the form of lost wages and benefits, significantly diminished employment opportunities, and emotional distress.

## COUNTS IV AND V
### Negligent Retention and Negligent Supervision

71. Plaintiff hereby incorporates each and every preceding paragraph as if set forth fully herein.

72. At all times material to this Complaint, Defendants owed a legal duty of care toward their employees to exercise reasonable care and prudence in the hiring, supervision, and retention of its employees.

73. By and through the conduct, actions, and malfeasance cited above, Defendants breached the above-described legal duties of care that it owed to Plaintiff.

74. Defendants knew that Plaintiff was being subjected to sexually harassing comments and harassing conduct because of Plaintiff's repeated complaints of sexual harassment and the open and obvious nature of Defendants' employees' conduct in the workplace.

75. Defendants failed to take prompt and appropriate remedial steps to protect Plaintiff from sexual harassment.

76. Because of Defendants' negligent supervision and retention, Plaintiff suffered damages in the form of lost wages and benefits, significantly diminished employment opportunities, and emotional distress.

**WHEREFORE**, Plaintiff demands an arbitration and the following relief:

(a)  cause process to issue;

(b)     issue a declaratory judgment that Defendants' acts, policies, practices, and procedures complained of herein violated Plaintiff's rights under Title VII and state law;

(c)     grant Plaintiff a permanent injunction enjoining Defendants, their officers, agents, successors, employees, attorneys, and those acting in concert with them, from engaging in any employment practice or policy which discriminates against the Plaintiff and others similarly situated because of the exercise of their rights under Title VII or because of their participation in this lawsuit;

(d)     grant Plaintiff judgment in her favor and against Defendants under all Counts of this Complaint;

(e)     order Defendants to make the Plaintiff whole by providing for her out-of-pocket losses as well as back pay in an amount equal to the sum of any wages, salary, employment benefits or other compensation denied or lost as a result of Defendants' unlawful and discriminatory acts, together with interest thereon, all in an amount to be proven at trial;

(f)     grant to Plaintiff liquidated damages for Defendants' willful violations of Title VII;

(g)     grant to Plaintiff reasonable attorney's fees together with any and all other costs associated with this action as provided by Title VII and state law violations; and

(h) grant plaintiff all her compensatory, punitive and nominal damages, and all other damages available by law.

(i) grant such additional relief as the adjudicating officer(s) deem just and proper.

Respectfully submitted on this 24th day of January 2023.

/s/ J. Stephen Mixon
J. Stephen Mixon
Georgia Bar No. 514050

THE MIXON LAW FIRM
3344 Peachtree Rd. Suite 800
Atlanta, GA 30326
Phone: 770-955-0100
steve@mixon-law.com