**SUPERIOR COURT OF FULTON COUNTY**
**STATE OF GEORGIA**

| | |
|---|---|
| ESTATE OF DILLARD JONES, ) | |
| ) | |
| PLAINTIFF, ) | CIVIL ACTION FILE |
| ) | |
| VS. ) | 2022CV368605 |
| ) | NO. _____ |
| ) | |
| FREEDOM LOFTS CONDOMINIUM ) | |
| ASSOCIATION, INC., ) | |
| BEACON MANAGEMENT SERVICES, ) | |
| LLC, LONGINO & ASSOCIATES, INC., ) | |
| ABC CORP., AND ) | |
| JOHN DOES 1, 2, AND 3, ) | |
| ) | |
| DEFENDANTS. ) | |

**COMPLAINT FOR DAMAGES**

NOW COMES The Estate of Dillard Jones (hereafter "Plaintiff") by and through counsel and files this Complaint for Damages against Defendants Freedom Lofts Condominium Association, LLC, Beacon Management Services, LLC, Longino & Associates, Inc., ABC Corps 1, 2 and 3 and John Does 1, 2, and 3, showing the Court as follows:

**PARTIES**

PLAINTIFF

1.

Plaintiff is an estate opened in the State of Georgia.

DEFENDANTS

2.

Defendant Freedom Lofts Condominium Association, Inc., ("FLCA") is a domestic nonprofit corporation with its principal place of business located at 6285 Barfield Road, Suite 150,

Exhibit "B"

Atlanta, GA, 30328, USA. Defendant FLCA may be served with process via its registered agent, Beacon Management Services, LLC, at 6285 Barfield Road, Suite 150, Atlanta, GA, 30328, USA.

3.

Defendant Beacon Management Services, LLC ("BMS") is a Georgia for-profit limited liability company with its principal place of business located at 6285 Barfield Road, Suite 150, Atlanta, GA, 30328, USA. Defendant BMS may be served with process via its registered agent, Steven Lynn Weibel, at 8535 Sentinae Chase Drive, Roswell, GA, 30076-4465, USA.

4.

Defendant Longino & Associates, Inc. ("Longino") is a Georgia domestic profit corporation with its principal place of business located at 3605 Sandy Plains Road, Suite 240-256, Marietta, Georgia 30066. Defendant Longino may be served with process via its registered agent, Paul Fiorentino, at 450 Shallowford Road NE, Kennesaw, Georgia 30144.

5.

Defendants ABC Corp. 1, 2, and 3, are corporate entities.

6.

Defendant James Doe 1, 2, and 3 are individuals.

**JURISDICTION AND VENUE**

7.

This Court has subject matter jurisdiction over this action pursuant to Article VI, §IV, ¶1 of the Constitution of the State of Georgia.

8.

This Court has personal jurisdiction over Defendants as they reside in or conduct business within the State of Georgia.

9.

Venue is proper in this Court pursuant to O.C.G.A. §9-10-31 as one or more of Defendants resides in Fulton County, Georgia.

**STATEMENT OF FACTS**

10.

The Estate of Dillard Jones brings this matter on behalf of Dillard Jones, deceased, his heirs, and assigns.

11.

Dillard M. Jones, Jr., hereinafter referred to as <u>Decedent</u>," was the owner of property located at 821 Ralph McGill Boulevard, Unit 3101, Fulton County, City of Atlanta, Georgia, 30306 (the "<u>Unit</u>") from 2002 until the date of his death on August 8, 2020.

12.

The Unit is one residence located in a complex of units that make up the Freedom Heights Downtown Atlanta Condos (the "<u>Condominium</u>"). At all times relevant to this Complaint Mr. Jones resided in the Unit.

13.

Defendant FLCA is a condominium association organized and operating with and pursuant to the duly recorded Declaration of Condominium for Freedom Lofts Condominium ("<u>Declarations</u>"), other governing documents, and the Georgia Condominium Act, O.C.G.A §44-

3-70 et seq. (hereinafter the "Act") (the Declaration, other governing documents, and Act may hereinafter be referred to as the "Governing Documents").

14.

Defendant BMS was engaged by Defendant FLCA to manage the affairs of Defendant FLCA, including the maintenance of the Condominium, including the Common Elements.

15.

Pursuant to Section 17(b) of the Declaration FLCA is responsible to keep in good repair as the "Area of Common Responsibility," which is defined by the Declaration of Association to include "all Common Elements."

16.

"Common Elements" is defined in Section 5 of the Declaration of Association as "all portions of the Condominium not located within the boundaries of a Unit."

17.

The "Common Elements" includes the roof of all buildings included in the Freedom Heights Downtown Atlanta Condos under the Declaration of Association.

18.

In or about 2015 and 2016 Defendant FLCA determined that a new roof was required for all buildings included in the Condominium under the Declaration of Association.

19.

On information and belief, Defendant FLCA through Defendant BMS engaged Defendant Longino to perform repairs to the roof of all buildings included in the Condominium.

20.

On information and belief, Defendant Longino inspected the roof of all buildings included in the Condominium, determined that the roof of the buildings needed to be replaced (including the building in which the Unit is located), designed the replacement roof needed, and installed such roof.

21.

Defendants FLCA and/or BMS supervised the work performed by Defendant Longino, approved the plan for repairs, the design of the replacement roof needed, and approved the installation of such roof.

22.

After the repairs were completed Defendant FLCA and or Defendant BMS began receiving complaints from owners of Units in Freedom Heights Downtown Atlanta Condos of ongoing leaks from the roof of some or all buildings included in the Freedom Heights Downtown Atlanta Condos.

23.

Mr. Jones gave notice to Defendant FLCA and Defendant BMS of water leaking into his Unit on multiple occasions following the repairs to the roof provided by Defendant Longino.

24.

Upon inspection of the roof, it was shown that the following defects were present and allowing water intrusions and excessive moisture into Mr. Jones's Unit:

a) Deteriorating, cracking shingles;
b) High subsurface moisture;
c) Incorrect installation of gutters in front of the drip edge of the shingle roof system;
d) Extreme deflection between roof trusses;

e) Inadequate attic ventilation; and

f) Open flaps and areas of flashing.

25.

On or about July 8, 2020, Defendant FLCA, by and through its counsel, sent a Right to Repair letter pursuant to O.C.G.A. § 8-2-35 to Defendant Longino detailing the roof defects.

26.

Upon information and belief, Defendant FLCA took no further action to repair the roof defects or to cause Defendant Longino to repair the roof defects.

27.

None of Defendants repaired the roof conditions causing dampness and water intrusions from the roof.

28.

Mr. Jones began experiencing difficulties breathing and other health-related symptoms after the repairs to the roof.

29.

Mr. Jones's symptoms were caused by continuing dampness caused by ongoing water leaking into his Unit through the faulty roof and its inadequate repairs.

30.

The unremediated leaks and dampness caused Mr. Jones to seek medical treatment for his symptoms.

31.

In July 2020 Mr. Jones engaged Air Allergen and Mold Testing LLC, to test his Unit for mold and other allergens.

32.

Air Allergen's detected increased mold growth and colonization of other water-related bacterium throughout Mr. Jones' Unit related to the ongoing water leaking from the roof.

33.

Mr. Jones was admitted to Piedmont Atlanta Hospital on or about July 7, 2020, with respiratory and other complaints including septic shock.

34.

Mr. Jones was diagnosed with pneumonia and sepsis relating to "infectious organism."

35.

The "infectious organism" was later isolated and identified as mycobacterium.

36.

Mycobacterium is a common water-born bacterium.

37.

Mr. Jones died on August 8, 2020, from, among other causes, septic shock, and fungal pneumonia.

38.

Mr. Jones died due to exposure to allergens and bacterium directly and proximately caused by water intruding into the Unit from the roof.

39.

Mr. Jones' death was directly and proximately caused by the failure of Defendants to maintain the common areas of the Condominium by, specifically, failing to maintain the roof of the Condominium in a manner which would keep water from leaking through the roof and into the individual units and common areas.

**COUNT I**

NEGLIGENCE

40.

Plaintiff hereby incorporates paragraphs 1-39 as if fully stated herein.

41.

Pursuant to the Declaration of Condominium Defendant FLCA was responsible for the maintenance of common elements including the roof of all buildings Condominium, including the building in which the Unit was located.

42.

Defendant BMS was engaged by Defendant FLCA to assist in management and maintenance of the Condominium.

43.

Defendants FLCA and BMS engaged Defendant Longino as described above.

44.

Defendants FLCA and BMS had a duty to supervise Defendant Longino in the performance of its work and to ensure that the repairs to the roof eliminated all points at which water could intrude into the Condominium, including, but not limited to, the Unit, at all times relevant hereto

45.

Defendant Longino had a duty to exercise reasonable care in the design, construction, and repair of the roof of the Condominium, including the building in which the Unit was located.

46.

Defendant Longino failed to exercise that degree of care to be reasonably expected of a general contractor with similar experience and training and under like circumstances in

constructing the roof.

47.

Defendant Longino failed to exercise that degree of care to be reasonably expected of a general contractor with similar experience and training and under like circumstances in selecting, training, and supervising subcontractors to help construct the roof.

48.

Defendant Longino failed to exercise that degree of care to be reasonably expected of a contractor with similar experience and training and under like circumstances in selecting, training, and supervising their employees and agents to construct and repair the roof.

49.

Defendant Longino failed to resolve the defective conditions of the roof after being provided notice of the defective conditions of the roof, which have allowed the numerous water intrusions and excessive moisture in the Unit and the mold damage within the Unit and to Decedent's person and possessions.

50.

Defendants had actual and constructive notice of the defective conditions in the Condominium, including but not limited to, the Unit.

51.

Defendants breached their respective duties of care by failing to fix and maintain the roof and ensure that water did not intrude into the Unit.

52.

Defendants breached their respective duties of care by failing to exercise reasonable care and failing to follow their own procedures and/or any known engineering or remedial guidelines

for investigating and curing the water intrusions, structural defects, and toxic mold affecting the Unit.

53.

Defendants breached their respective duties of care by failing to exercise reasonable care in the selection, supervision, and hiring of person(s) to investigate and repair the water intrusions, structural defects, and toxic mold in the unit.

54.

Defendants' respective breaches directly and proximately caused Mr. Jones to suffer physical damage, pain and suffering, and, ultimately, to die.

55.

The breaches proximately caused damages Mr. Jones property and to incur alternative living costs related to his relocation from the contaminated premises.

56.

Due to Defendants' negligence, Defendants are liable to compensate Plaintiff for Decedent's personal injuries, property damages, past and future medical damages, loss of life, and Decedent's pain and suffering and anguish, including, but not limited to, loss of enjoyment of life, loss of companionship, and the diminished rental value of the contaminated unit.

## COUNT II

### PRIVATE NUISANCE

57.

Plaintiff hereby incorporates paragraphs 1-56 as if fully stated herein.

58.

The Georgia Code designates as a nuisance "anything that causes hurt, inconvenience, or damage to another and the fact that the act done may otherwise be lawful shall not keep it from being a nuisance. The inconvenience complained of shall not be fanciful, or such as would affect only one of fastidious taste, but it shall be such as would affect an ordinary, reasonable man." O.C.G.A. §41-1-1.

59.

Defendants' failure to repair the roof leak resulted in flooding of the Unit, severe water damage, and mold contamination of Mr. Jones' property, resulted in a private nuisance, an invasion of the use and enjoyment of the Mr. Jones' property, injury to Mr. Jones' health, and destruction of Mr. Jones' personal property.

60.

As a result of said private nuisance Decedent suffered financial injury and Defendants are liable to Plaintiff for Decedent's damages, including but not limited to the cost of remediation of the premises and the cost of decontamination of personal property, in an amount in excess of $150,000.00, as shall be proven at trial.

61.

As a result of said private nuisance Decedent suffered personal injury and Defendants are liable to Plaintiff for Decedent's special damages as shall be proven at trial and general damages in an amount to be set by the enlightened conscience of fair and impartial jurors.

## **COUNT II**

CONTINUING NUISANCE

62.

Plaintiff hereby incorporates paragraphs 1-61 as if fully stated herein.

63.

The roof leak water intrusion on the Unit constitutes a continuing nuisance and continuing trespass onto Decedent's property.

64.

Defendants breached their duty by failing to rectify the nuisance and hazardous conditions of Decedent's property.

65.

Decedent gave Defendants ample notice of the nuisance and repeatedly requested that Defendants abate the nuisance.

66.

As a result of the continuing nuisance and trespass toxic mold has contaminated Decedent's property, rendering the Unit uninhabitable, and caused the death of Mr. Jones.

67.

Defendants are liable to Plaintiff for said continuing nuisance and continuing trespass and Plaintiff is entitled to Decedent's damages, including but not limited to the cost of remediation of the premises and the cost of decontamination of personal property, in an amount in excess of $150,000.00, as shall be proven at trial.

68.

As result of said Defendants' continuing nuisance and continuing trespass, Mr. Jones suffered personal injuries and death, and Plaintiff is entitled to recovery in the amount of Decedent's special damages as shall be proven at trial and general damages in an amount to be set by the enlightened conscience of fair and impartial jurors.

## COUNT III

### BREACH OF RESTRICTIVE COVENANT/ FIDUCIARY DUTY

69.

Plaintiff hereby incorporates paragraphs 1-68 as if fully stated herein.

70.

Defendant's above-described actions breached fiduciary duties owed to Decedent as contemplated in §§ O.C.G.A. 14-3-830(1)(A) and (1)(B).

71.

Defendant FLCA owed Decedent, a fiduciary duty to act in the utmost good faith regarding all matters pertaining to the terms and conditions of ownership, occupancy and use of said units.

72.

The Defendant FLCA was (and still is) responsible for, the maintenance of the common areas, walkways, surface areas and exterior of the Freedom Heights Downtown Atlanta Condos.

73.

Defendants' actions are in complete disregard to the duties contemplated by § O.C.G.A. 14-3-830(1)(A) and (1)(B), and the Governing Documents and have caused Plaintiff unnecessary trouble and expense, entitling the Decedent to attorney's fees and costs incurred in asserting this claim pursuant to §O.C.G.A. 13-6-11.

74.

Therefore, as a result of said Defendant's breach, Mr. Jones suffered personal injuries and death, and Plaintiff is entitled to Decedent's recovery in the amount of special damages as shall be proven at trial and general damages in an amount to be set by the enlightened conscience of fair and impartial jurors.

**COUNT IV**

BREACH OF CONTRACT AND IMPLIED WARRANTY OF HABITABILITY

75.

Plaintiff hereby incorporates paragraphs 1-74 as if fully stated herein.

76.

Defendants breached the implied warranty of habitability contained within the Declaration of Condominium by failing to maintain and provide a habitable living space for Mr. Jones.

77.

Defendants had actual and constructive notice of water intrusions affecting the Unit, including, but not limited to, roof leaks above the Unit, as well as other water intrusions, which would inevitably lead to water damage and mold growth.

78.

Defendants failed to repair and remediate the causes of water leakage and the resultant mold.

79.

These breaches led directly and proximately to Mr. Jones's physical and property damage.

80.

These defects and the toxic mold diminished the value of the Unit.

81.

Defendants are liable to Plaintiff for Decedent's financial injuries and damages naturally arising from Defendants' breach of said lease agreement.

## COUNT V

### WRONGFUL DEATH

82.

Plaintiff hereby incorporates paragraphs 1-81 as if fully stated herein.

83.

Defendants' negligence directly and proximately caused the wrongful death of Mr. Jones.

84.

Pursuant to O.C.G.A. § 51-4-1(2), "'Homicide' includes all cases in which the death of a human being results from a crime, from criminal *or other negligence*, or from property which had been defectively manufactured, whether or not as the result of negligence."

85.

Pursuant to O.C.G.A. § 51-4-4 and § 19-7-1, Plaintiff is entitled to sue for wrongful death and recover the full value of the life of Mr. Jones.

## COUNT VI

### GROSS NEGLIGENCE, MALICE, WANTON DISREGARD

86.

Plaintiff hereby incorporates paragraphs 1-85 as if fully stated herein.

87.

Defendants acted negligently, recklessly and with wanton disregard for Mr. Jones' safety in failing to maintain the common areas, repair the roof leak, remediate the defective conditions in

the common areas of the condominium and to the exterior of the Unit and address the water intrusions responsible for flooding, serve water damage, and mold contamination of the Unit.

88.

The severity of the continuing water intrusion and mold contamination, rendering the Unit inhabitable and leading to the death of Mr. Jones demonstrate the Defendants' failure to address the defective conditions after repeated requests was, at best, grossly negligent, and at worst, intentional, thereby willfully disregarding Mr. Jones' safety and well-being.

89.

As a result of Defendants' grossly negligent and willful actions, Decedent has suffered financial and physical damages for which Defendant is liable as a matter of law to Plaintiff for said damages.

90.

Due to the wanton and reckless nature of Defendant's actions, Plaintiff, by and through Decedent, is also entitled to recover punitive damages and attorneys' fees in an amount to be determined at trial.

WHEREFORE Plaintiff requests that the Court:

1) Grant Plaintiff a jury trial on all claims triable by jury;

2) Award damages to Plaintiff in amounts to be determined at trial, and against Defendant as compensation for: (i) the cost to remediate personal property, (ii) the loss in value of personal property and/or cost to replace personal property, (iii) moving and storage expenses; (iv) other necessary expenses incurred as a result of Defendant' conduct, (v) past medical expenses for Decedent, (vi) the diminished rental value of the contaminated unit; (vii) Decedent's pre-death pain and suffering,

    including the loss of enjoyment of life and loss of companionship, (viii) reasonable expenses of litigation, including attorney's fees, expert witness fees, and other litigation expenses, and (ix) the life expectancy of Mr. Jones' life;

3) Plaintiff requests that this Court enter judgment in favor of Plaintiff and against Defendants for punitive damages to Plaintiff; and

4) Plaintiff request such other relief as this court deems just.

Respectfully submitted this 8th day of August 2022.

                                              /s/ David G. Carter
                                              David G. Carter
                                              GA Bar 141355
                                              Carter Jeffries LLC
                                              400 Perimeter Center East, Suite 530
                                              Atlanta, GA 30346
                                              404-341-6653
                                              dcarter@moldfirm.com