## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## AT ATLANTA

| | | |
|---|---|---|
| THERESA KAZA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. _____ |
| | § | |
| UNITED OF OMAHA LIFE | § | |
| INSURANCE COMPANY, | § | |
| | § | |
| Defendant. | § | |

## COMPLAINT FOR RECOVERY OF PLAN BENEFITS AND FOR THE ENFORCEMENT OF RIGHTS UNDER ERISA

**COMES NOW**, Plaintiff Theresa Kaza, and makes the following representations to the Court for the purpose of obtaining relief from Defendant's refusal to pay long-term disability benefits due under an employee benefits plan under ERISA, and for Defendant's other violations of the Employee Retirement Income Security Act of 1974 ("ERISA").

## JURISDICTION AND VENUE

1. This Court's jurisdiction over the Plaintiff's claims for long term disability benefits is invoked under federal question jurisdiction pursuant to 28 U.S.C. § 1331 and under the express jurisdiction found in the ERISA statute under 29 U.S.C. § 1132(e) (ERISA § 5-2(e)).

1

2. Plaintiff's claims "relate to" an "employee welfare benefits plan" or "plans" as defined by ERISA, 29 U.S.C. § 1001 *et seq*., and the subject disability benefit plans constitutes a "plan under ERISA."

3. The ERISA statute, at 29 U.S.C. § 1133, as well as Department of Labor regulations, at 29 C.F.R. § 2569.503-1 provide a mechanism for administrative or internal appeal of benefits denials.

4. In this case, the avenues of appeal have been exhausted and this matter is now properly before this court for judicial review.

5. Venue is proper within the Northern District of Georgia pursuant to 29 U.S.C. § 1132(e)(2).

## PARTIES

6. Plaintiff, Theresa Kaza (hereinafter "Plaintiff" or "Ms. Kaza"), was at all relevant times, a resident of the City of Marietta, County of Cobb, State of Georgia.

7. The Plaintiff was employed by Apex Software Technologies LLC at its location at 500 Colonial Center Parkway, Suite 650, Roswell, Georgia 30076.

8. Plaintiff alleges upon information and belief that the Group Long Term Disability Insurance for Employees of Apex Software Technologies LLC

(hereinafter "Plan") is, and at all relevant times was, an "employee welfare benefit plan" as defined by ERISA.

9.  The Plan provides eligible employees with disability income protection as defined by the Plan.

10. Plaintiff alleges upon information and belief that Apex Software Technologies LLC, is the Plan Sponsor and Plan Administrator of the long-term disability Plan.

11. United of Omaha Life Insurance Company is the underwriter for Group Policy Number G000BG6H.

12. United of Omaha Life Insurance Company (hereinafter "United of Omaha") is the party obligated to pay benefits and to determine eligibility for benefits under Group Policy Number GD3-830-510207-01 and the Plan.

13. United of Omaha is an insurance company authorized to transact the business of insurance in this State, and may be served with process by and through its registered agent, Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092, or at its principal place of business, Mutual of Omaha Plaza, 3316 Farnam Street, Omaha, Nebraska 68175.

## FACTS

14. Defendant United of Omaha was the entity responsible for processing claims and adjudicating appeals regarding long-term disability benefits under the Plan.

15. The long-term disability Plan is fully insured by United of Omaha under Group Policy Number G000BG6H.

16. The Plaintiff timely filed an application for benefits under the Plan, was subsequently denied benefits, Plaintiff timely appealed, and United of Omaha issued its final denial on December 2, 2022.  In that denial United of Omaha stated: "We determined that Ms. Kaza was covered under the prior plan as of January 1, 2018.  This means she was continually covered from January 1, 2018, onward, and the condition for which she claimed disability under this LTD policy as of December 12, 2019, was not pre-existing."

17. The Plaintiff was employed as a Training Specialist for Apex Software Technologies LLC since December of 2000, and as such, Plaintiff was thereby a participant or beneficiary of the Plan, and is covered by the policy that provides benefits under the Plan.

18. The Plaintiff ceased work on or about December 12, 2019, due to a disability while covered under the Plan.

19. The Plaintiff has been and continues to be disabled as defined by the provisions of the Plan.

20. In accordance with the review procedures set forth in the Plan, 29 U.S.C. § 1133, and 29 C.F.R. § 2560.503-1, Plaintiff appealed the claim until exhausting the required plan appeals.

21. Having submitted her appeal, and as confirmed by United of Omaha, Plaintiff exhausted her administrative remedies.

22. Based on the terms of the insurance policy, Plaintiff's complaint is timely and is not otherwise time barred.

23. The relevant long-term disability policy in this matter initially defines total disability as an inability to perform at least one of the material duties of Ms. Kaza's regular occupation on a part-time or full-time basis and, after 2 years, total disability is defined as an inability to perform all the material duties of any gainful occupation.

24. In terms of job responsibilities and duties, a software training specialist develops and executes training plans, training materials, and classes, schedules classes into facilities, and provides software instruction to the organization's employees. They also review results and trainee feedback to improve materials and classes, as well as identify and develop additional software training opportunities A training specialist's duties also include the

following: assess individual and group training needs; maintain individual and group training records; plan, prepare, and research lessons; organize and promote courses; develop and deliver programs of learning activities; prepare teaching/course materials; instruct users on an individual or group basis; assess users' work and deliver feedback; apply new technologies to deliver courses and improve the learning experience for users (*e.g.*, distance learning, interactive CBT, blended training); and keep personal IT skills and knowledge up to date.  Additionally, exceptional communication skills and the ability to work well with people at all levels are essential. Strong organizational, planning, and motivational skills are desired. Knowledge of, experience with educational, presentation software is necessary.

25. Plaintiff is entitled to long term disability benefits as she has met the long-term disability Plan's requirements, and her disability continues to prevent her from performing at least one of the material duties of Ms. Kaza's regular occupation on a part-time or full-time basis and from performing all the material duties of any gainful occupation.

26. If disabled pursuant to the terms of the policy, Plaintiff, who was paid short-term disability benefits through February 1, 2020, but was paid no long-term disability benefits, is entitled to a monthly gross long-term disability benefit of $3,637.55 offset by a monthly Social Security disability

benefit of $2,188.00 (there are no auxiliary beneficiaries), for a net monthly long-term disability benefit of $1,449.55 from March 12, 2020 to November 21, 2031, such that she is owed $51,284.70 in back benefits, $130,073.59 in future benefits (using 4.0% to discount to net present value), with no overpayment owed, for a total long-term disability benefit of $181,358.29.

27. Evidence submitted by Plaintiff to United of Omaha supporting her disability includes, *inter alia*, the following:  initially, on June 2, 2020, Jeffrey Reznik, M.D., one Ms. Kaza's treating physicians, indicated his patient could not sit at a desk for longer than ten minutes without the need to change position, which impairs her ability to work on a computer or talk on the telephone while access files.  On September 10, 2020, Dr. Reznik opined that Ms. Kaza could sit, stand, and walk for less than one hour in an eight-hour workday.   The physician determined that Ms. Kaza had restriction with driving and operating motorized equipment, lifting, carrying, using her hands in repetitive actions, using her feet in repetitive movements, bending, squatting, crawling, climbing, and reaching above shoulder level.  Dr. Reznik stated that Ms. Kaza was unable to perform at a consistent pace or interact with the public/customers.  He said she was markedly limited in performing repetitive or short cycle work, maintaining

attention and concentration, and interacting with supervisors.  Dr. Reznik indicated Ms. Kaza was somewhat limited with performing a variety of duties, understanding, remembering, and carrying out complex job instructions, attaining set limits and standards, relating to coworkers, using judgment, and making decisions, directing, controlling, and planning activities of others, influencing people in their opinions, attitudes, and judgments, expressing personal feelings, and working alone or apart in physical isolation from others.  On October 26, 2020, Dr. Reznik wrote that Ms. Kaza had experienced significant functional impairment due to depression and physical pain and limitations.  On November 22, 2021, Dr. Reznik indicated the Plaintiff had the following limitations and restrictions: can sit for less than one-hour for 30 minutes at a time; can stand or walk less than one-hour for 30 minutes at a time; can occasionally lift/carry 1-10 pounds and infrequently lift/carry 11-20 pounds but nothing heavier; can occasionally use hands for fine manipulation, infrequently reach above shoulders or stand on a hard surface, and never bend at waist; requires at least 30-minutes of bed-rest during a normal workday; has problems with stamina and endurance and would require, at least 3 days a week, to take an extra, unscheduled rest-break of at least 10-minutes or more in addition to the one 30-minute break and two 15-minute breaks normally allowed in

full-time competitive employment; could not be expected to be reliable and dependable in regularly attending an 8-hour a day, 40-hour work week; suffered moderately severe pain and fatigue; would be off-task at least more than 10% of any given workday; and would be absent from full-time work at least 2 days during any given month.

28. Additionally, on February 24, 2021, ALJ Juan E. Milanes issued a fully favorable decision granting Ms. Kaza Social Security disability benefits back to December 9, 2019.  Ms. Kaza was represented by Martin E. Keane, an attorney.

29. United of Omaha's policy contained an "offset" provision that required Plaintiff to apply to the Social Security Administration for benefits (as the offset applies to benefits Plaintiff received or is eligible to receive). If she won her Social Security case, then not only are future benefits from United of Omaha reduced by the amount of the monthly check from Social Security, but to the extent that any back benefits from Social Security overlap with benefits United of Omaha has already paid, United of Omaha gets to recoup these benefits from the Plaintiff.    As indicated above, Plaintiff applied for and received her Social Security disability benefits.

30. It is the undersigned's current understanding that United of Omaha referred Ms. Kaza to the law firm of Doherty, Cella, Keane & Associates, LLP,

(hereinafter "Doherty Law Firm") to pursue her Social Security disability claim. Ms. Kaza's attorney was one of the law firm's partners, Martin E. Keane.   United of Omaha did this because, as noted above, it offsets its long-term disability payments by its insureds' Social Security disability benefit and this reduction is considered to be one of the most important cost containment features of its long-term disability contracts and is usually termed "recovery of an overpayment."

31. The Doherty Law Firm provides attorneys for the insureds of disability insurance companies like Standard so that the insureds can pursue Social Security disability benefits. The Doherty Law Firm also provides "overpayment recovery specialists" to disability insurance companies like Standard so that Standard can recover the Social Security disability back benefits from its insureds.   On its website the Doherty Law Firm states: "When working with Long Term Disability carriers we offer a voluntary service to our claimants to help them with repaying any overpayment created on their long-term disability claim. When the claimant receives notification of a long-term disability overpayment, we will verify the overpayment calculation, communicate with the claimant, and then initiate an Electronic Fund Transfer (EFT) to our attorney escrow IOLTA account. The money is then transferred to the Insurance carrier…"  To reiterate, Ms.

Kaza applied for and received her Social Security disability benefits through the Doherty Law Firm.

32. In any case, ALJ Milanes found Ms. Kaza had severe impairments of degenerative disc disease, scoliosis, and depression. The ALJ found Ms. Kaza had the residual functional capacity to perform sedentary work, except that she must have the option to alternate between sitting and standing up to four times per hours for 5 to 10 minutes. She could frequently interact with her co-workers and supervisors and could occasionally interact with the public. She was limited to simple and repetitive tasks, in a low stress work environment, which was defined as involving only simple work-related decisions, having no problem-solving tasks, and with few (defined as three or less), if any, workplace changes in routine. The ALJ specifically found that Ms. Kaza was unable to perform her past work, including that of a training specialist, and did not have any job skills that could be transferred to other work.

33. ALJ Milanes found Dr. Reznik's opinions persuasive. The ALJ found the opinions were supported by Dr. Reznik's findings of limited spinal range of motion, with inability to rotate axially or bend in flexion and extension, and tenderness across the back with multiple spastic areas. They were also consistent with Ms. Kaza's reports of back pain, constant spasm, inability to

11

sit for more than ten minutes without increased pain, limited arm strength, difficulty working overhead, sharply reduced ability to bend, turn and flex, and difficulty driving following her spinal surgeries.  Moreover, they were consistent with other findings of restricted range of motion or her cervical spine, tightness and pain in her trapezius and levator scapulae muscles, spinal tenderness, and tension, absent spinal sensation, reduced strength in the lower extremities, and unsteady, weak, and stiff motor activity.  In addition, the ALJ found Dr. Reznik's opinion as to Ms. Kaza's mental limitations were supported by his findings that she was depressed and tearful, with poor eye contact and had difficulty answer questions.  It was also consistent with other findings of depressed and anxious presentation and dysphoric mood with flat affect.  Further, it was consistent with Ms. Kaza's reported symptoms, including difficulty concentrating and organizing her thoughts and stress due to pain.  Finally, the ALJ found it consistent with Ms. Kaza's report of overwhelming pain.

34. United of Omaha's Vice President and Medical Director, Thomas A. Reeder, after reviewing the medical records and claim file, indicated Ms. Kaza was a 57-year-old software training specialist with idiopathic scoliosis since she was a young child who underwent an anterior cervical discectomy and fusion at C6-7 on August 8, 2018 and multiple level lumbar fusion

surgery at T2-3 through L5-S1 on February 14, 2019.  She received short-term disability benefits to the maximum period of May 22, 2019.  Ms. Kaza returned to work on June 4, 2019 but stopped working again on December 8, 2019.  She then was hospitalized psychiatrically for three days starting on December 9, 2019.   The short-term disability claim was approved to February 1, 2020.  Further disability benefits were denied.  Ms. Kaza was also found to have scoliosis with back pain, weakness, and lumbar radiculopathy.  Dr. Reeder indicated the primary disabling condition was the February 14, 2019 spine surgery.  However, the physician said there was no evidence of physical impairment or support for restrictions and limitations beyond the return-to-work date of June 4, 2019.  Additionally, Dr. Reeder said that except for a brief psychiatric hospitalization during December of 2019, there is no documentation of impairment from a behavioral health perspective.  Dr. Reeder's opinions are entirely inconsistent with the medical evidence.

35. Another of United of Omaha's medical consultants, Audrey Longson, D.O., who worked for United of Omaha via Dane Street, indicated that the past two years have no mental health care clinical encounter notes.  Dr. Longson said that Ms. Kaza has no impairment in her mental status or cognitive function.  Dr. Longson's opinion is not material to Ms. Kaza's claim of

physical disability.

36. Additionally, another United of Omaha medical consultants via Dane Street, Margaret Harvey, D.O., essentially revisited Dr. Reeder's report. Dr. Harvey indicated Ms. Kaza has an orthopedic diagnosis of low back pain, she is status post a lumbar laminectomy and decompression in 2014, a C6-7 cervical disc arthroplasty on August 8, 2018, and a posterior spine fusion at T2-S1 in February of 2019. Dr. Harvey noted that Ms. Kaza's job description requires 8 hours of sitting and is classified as sedentary. Dr. Harvey opined that functional impairment was not supported for the dates of February 1, 2020 and ongoing from an orthopedic standpoint. However, Dr. Harvey conceded Ms. Kaza continues to complain of low back pain, she underwent appropriate treatment, and there was no evidence of symptom magnification. However, she also said Ms. Kaza has no documentation of focal neurologic deficits or a dermatomal pattern of radicular symptoms and thus can work in her own occupation. Dr. Harvey's opinion regarding functionality is entirely inconsistent with the medical evidence.

37. There is no requirement that the insured provide *only* objective medical evidence or other objective indica of disability. Since the policy does not say it, United of Omaha does not have the authority to require it. *See*, *e.g.*, 29 U.S.C. § 1104(a)(1)(d); *Fifth Third Bancorp. v. Dudenhoeffer*, 134 S.Ct.

2459, 2468 (2014), *Salomaa v. Honda*, 642 F.3d 666, 678 (9th Cir. 2011);

*Carradine v. Barnhart,* 360 F.3d 751,755 (7th Cir. 2004); *Abdullah v.*

*Accentcare Long Term Disability Plan*, 2012 WL 4112291 *11 (N.D. Cal);

*Krupp v. Liberty Life Assurance Company of Boston*, 936 F.Supp.2d 908,

917 (N.D. Ill. 2013).   United of Omaha's medical consultants dismissed

Ms. Kaza's subjective complaints out of hand without meaningful analysis.

This was unreasonable.

38. The relevant policy allows for independent medical examinations and

functional capacity examinations.  United of Omaha failed to conduct any

such examinations.  All United of Omaha's medical opinions come from

file reviews.  Non-examining evidence has little value in evaluating pain,

fatigue or impaired focus, concentration, or cognition. *See*, *e.g.*, *Kalish v.*

*Liberty Mutual*, 419 F. 3d 501, 508 (6th Cir. 2005); *Calvert v. Firstar*

*Finance, Inc.*, 409 F. 3d 286, 295 (6th Cir. 2005); *Smith v. Aetna*, 312 F.

Supp. 2d 942, 954 (S.D. Ohio 2004); *Meyer v. MetLife*, 341 F. Supp. 2d 865

(S.D. Ohio 2004); *Black v. Unum Life Insurance Company of America*, 324

F. Supp. 2d 206, 215 fn.8 (D. Me. 2004).

39. Ignoring evidence of pain, fatigue, or other disabling conditions because

they are subjective is arbitrary and capricious. *Miles v. Prudential Life*

*Insurance Co.*, 720 F.3d 472, 486 (2d Cir. 2013).  This is precisely what

United of Omaha's medical consultants did.

40. An ability to perform the material and substantial duties of any fulltime occupation requires reliability, consistency, substantial capacity, psychological stability, and steady attendance. *Rhines v. Harris*, 634 F.2d 1076, 1079 (8th Cir. 1980); *Tippitt v. Reliance Std. Life Ins. Co.*, 457 F.3d 1227, 1236 (11th Cir. 2006); *McIntyre-Handy v. APAC Customer Services, Inc.*, 2005 WL 5369158, *6 (E.D. Va. 2005); *Tyndall v. Nat'l Educ. Centers, Inc. of California*, 31 F.3d 209, 213 (4th Cir. 1994).  Indeed, job preclusive vocational limitations include, *inter alia*, needing additional, unscheduled work breaks, chronic absenteeism, and being off task more than 10% of the work period. *Johnson v. Saul*, 2019 WL 6876012, at *3 (E.D. Mo., 2019); *Ricardo C. v. Saul*, 2019 WL 4034484, at *2 (N.D. Ill., 2019); *Hicks v. Commissioner of Social Security*, 2016 WL 2605234, at *4 (E.D. Mich., 2016); *Mershad v. Commissioner of Social Security*, 2016 WL 659307, at *12 (S.D. Ohio, 2016); *Coffman v. Commissioner of Social Security*, 2015 WL 9311522, at *3 (E.D. Mich., 2015); *Williams v. Commissioner of Social Sec.*, 2013 WL 3771381, at *6 (E.D. Mich., 2013). United of Omaha's medical consultants provided no meaningful analysis on any of these issues.

41. To reiterate, United of Omaha relied on medical consultants for file reviews during the administrative appeal of Plaintiff's disability claim and said consultants opined, *inter alia*, that Plaintiff had minor impairments which had no meaningful impact on her functionality without addressing her work reliability, consistency, substantial capacity, and steady attendance and dismissed her subjective complaints.

42. United of Omaha relied, *inter alia*, on third party vendors, including Dane Street (Margaret Harvey, D.O.; Paul Kaloostian, M.D.; Martin Lipschutz, M.D.; and Audrey Longson, D.O.), to conduct medical file reviews during the administrative appeal of Ms. Kaza's disability claim.

43. With respect to Dane Street, it enters into Administrative Service Agreements ("ASA") with insurers like United of Omaha.  In those ASA's, Dane Street promises that it can create Management Reports on a monthly and quarterly basis that lists information for short-term disability and long-term disability claims.  The reports track data on activity, performance, and outcome, including the ultimate outcome of the medical record review.  This permits insurers like United of Omaha to have the ability to track the result of every claim in which it retains Dane Street to provide a medical record review.  Dane Street can also provide a list of medical record reviewers who have previously provided reviews for insurance companies.

It sends these reports to insurers who can then identify "repeat players" who were instrumental in helping deny disability claims.

44. Dane Street's bias goes further. Courts have noted Dane Street's history of bias and that it is "known to render biased opinions on the ultimate issue of disability." This is done "to reduce benefit payouts, thereby satisfying their clients and resulting in increased profits for themselves." *Davidson v. Ascension Long-Term Disability Plan*, Case No. 4:17-cv-995 (E.D. Missouri, October 16, 2017). Dane Street's lack of credibility can also be seen in the similarity in the language of its physician's reports; a court has called a similarity in language between four Dane Street physician reports "concerning" and a possible indication of procedural irregularity. *Heartsill v. Ascension Health Alliance*, Case No. 17-cv-00155 (E.D. Missouri, July 11, 2017). In *Karen Jones v. Unum Life Insurance Company of America*, Case No. 1:19-at-00655 (N.D. Cal.) (Dkt. Nos. 1 and 1-1), evidence demonstrated that Dane Street altered a medical consultant's report to be presented to Unum in opposition to plaintiff Jones' claim for benefits.

45. With respect to Dr. Reeder, United of Omaha's Medical Director, the physician was deposed in *Vinson v. USAble Life*, Civil Action No. CV 2007-9379 (Ark. Cir. Ct.) on October 24, 2008. In that deposition Dr. Reeder indicated he was an internist who had worked for Unum as a

medical director, reviewing claims, as well as for Disability RMS. Dr. Reeder indicated he had not had a private practice since a medical malpractice suit was filed against him in 1998, after which he went into the Air Force and then started working for Unum.  Dr. Reeder also worked for Advantage Occupational Health Services where he did evaluations at the behest of the Social Security Administration regarding their eligibility for disability benefits.

46. Dr. Reeder's flawed analysis here is nearly identical to highly criticized analysis that received little weight before.  See *Williams v. United of Omaha Life Ins. Co.*, No. CV-11-BE3948-S, 2013 U.S. Dist. LEXIS 141563, at *39–40 (N.D. Ala. Sept. 30, 2013):  "[T]he opinion of in-house physician, Dr. Reeder, is entitled to little weight. Out of the many doctors who have treated and examined Williams or reviewed her medical records, Reeder, who only reviewed her records, stands alone in opining that no objective evidence exists to support the medical diagnoses. Reeder is not an examining physician or a rheumatologist, and yet, he disagreed with a treating rheumatologist's opinion in the area of the rheumatologist's expertise, and disagreed as well with the opinions of other examining specialists. Reeder also ignored or overlooked strong objective evidence in the record, such as repeated references in the medical records to the lab

work showing positive RH factors and positive ANA factors, etc. Given the wealth of evidence by treating and examining specialists supporting the existence of Williams's disability, Reeder's opinion calls into question his credibility and fairness." *Id.* at *39–40.

47. Additionally, in *Tassone v. United of Omaha Life Ins. Co.*, Case No. 1:15-cv-08557, Ct. Dkt. 61, p.15 (N.D. Ill.), Dr. Reeder similarly ignored the objective evidence and failed to examine the plaintiff.   The court said that Dr. Reeder's conclusion appeared to be based exclusively on the reports of doctors treating plaintiff's maladies unrelated to her pain that, not surprisingly, did not prevent her from working.   The court also said Dr. Reeder was "undoubtably biased" in favor of his employer, United of Omaha Life Insurance Company.  *Id.*

48. There are no challenges to Plaintiff's credibility. In other words, Ms. Kaza's treating physicians have directly addressed her reliability, consistency, substantial capacity, psychological stability, and steady attendance.   United of Omaha's medical consultants have failed to substantively account for, much less address, any of these issues.

49. The Plaintiff has now exhausted her required administrative remedies for her long-term disability benefits under the Plan pursuant to ERISA or such

administrative remedies are deemed exhausted and/or her long-term disability benefits are deemed denied.

50. The Court's standard of review for the ERISA claims is *de novo* under *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989).

51. The entity that chose to deny long term disability benefits would pay any such benefits due out of its own funds.

52. Defendant United of Omaha was a claims decision-maker under a perpetual conflict of interest because the long-term disability benefits would have been paid out of its own funds.

53. Defendant United of Omaha allowed its concern over its own funds to influence its decision-making.

54. Defendant has acted under a policy to take advantage of the potential applicability of ERISA to claims.

55. Defendant's administrative process did not provide Plaintiff with a full and fair review; by way of example, its denial letters did not contain the specific reasons for the denial and did not advise Plaintiff of the information Defendant required in order to approve her continuing benefits.

56. The disability insurance policy does *not* provide United of Omaha with discretionary authority.

57. In the alternative, relevant state law bans any such clause purporting to confer United of Omaha with discretionary authority.

58. At all times relative hereto, United of Omaha has been operating under an inherent and structural conflict of interest because any monthly benefits paid to Plaintiff are paid from United of Omaha's own assets with each payment depleting those same assets.

59. As the party obligated to pay benefits and the administrator given discretion in construing and applying the provisions of the disability plan and assessing Plaintiff's entitlement to benefits, United of Omaha is an ERISA fiduciary.

60. United of Omaha, as an ERISA fiduciary, will have to show it exercised care, skill, prudence, diligence, and loyalty solely for the benefit of Plaintiff like that borne by a trustee under common law. *See* § 1002(21)(A)(i) and (iii); *Aetna Health Inc. v. Davila*, 542 U.S. 200, 220, 124 S. Ct. 2488, 2502 (2004); *Mondry v. Am. Fam. Mut. Ins. Co.*, 557 F.3d 781, 803 (7th Cir.), *cert. denied*, 130 S. Ct. 200 (2009). Indeed, United of Omaha has admitted it has an obligation in good faith and fair dealing to its insureds which includes giving at least as much consideration to its insured's interest as to its own interest. December 16, 2009, Deposition of Tim Ahlgren at p. 15, *Pralinsky v. United of Omaha*, Case No. 8:09-cv-8 (D. Neb).

61. United of Omaha failed to satisfy its duties under ERISA as specified in paragraph 60 of this complaint.

62. Under ERISA, a fiduciary should fully investigate the relevant and applicable facts of any claim.

63. United of Omaha failed to satisfy its duties under ERISA as specified in paragraph 62 of this complaint.

64. Under ERISA, a fiduciary should fairly consider all information obtained regarding a claim, including that which tends to favor claim payment or continuation as well as that which tends to favor claim declination or termination.

65. United of Omaha failed to satisfy its duties under ERISA as specified in paragraph 64 of this complaint.

66. Under ERISA, a fiduciary should consider the interests of its insured at least equal to its own and to resolve undeterminable issues in its insured's favor.

67. United of Omaha failed to satisfy its duties under ERISA as specified in paragraph 66 of this complaint.

68. Under ERISA, a fiduciary has the obligation to read, interpret and understand all the pertinent medical information with sufficient clarity so as

to be able to make a fair, objective and thorough evaluation of its insured's claims for disability benefits.

69. United of Omaha failed to satisfy its duties under ERISA as specified in paragraph 68 of this complaint.

70. Under ERISA, a fiduciary's denial of a claim should not be based on speculation.

71. United of Omaha failed to satisfy its duties under ERISA as specified in paragraph 70 of this complaint.

72. Under ERISA, a fiduciary should be objective in its assessment of facts and not attempt to bias the claims investigation process in any manner.

73. United of Omaha failed to satisfy its duties under ERISA as specified in paragraph 72 of this complaint.

74. Under ERISA, a fiduciary should not take into consideration the amount of money it would save if a particular claim or set of claims is denied, terminated, or otherwise not paid.

75. United of Omaha failed to satisfy its duties under ERISA as specified in paragraph 74 of this complaint.

76. Under ERISA, a fiduciary should refrain from excessive reliance on in-house medical staff to support the denial, termination, or reduction of benefits.

77. United of Omaha failed to satisfy its duties under ERISA as specified in paragraph 76 of this complaint.

78. Under ERISA, a fiduciary should not conduct unfair evaluation and interpretation of attending physicians' or independent medical examiners' reports.

79. United of Omaha failed to satisfy its duties under ERISA as specified in paragraph 78 of this complaint.

80. Under ERISA, a fiduciary should evaluate the totality of its insured's medical conditions.

81. United of Omaha failed to satisfy its duties under ERISA as specified in paragraph 80 of this complaint.

82. Under ERISA, a fiduciary has an obligation to conduct a fair, thorough, and objective review.

83. United of Omaha failed to satisfy its duties under ERISA as specified in paragraph 82 of this complaint.

## CAUSE OF ACTION
## FOR PLAN BENEFITS AGAINST ALL DEFENDANTS
## PURSUANT TO 29 U.S.C. § 1132(a)(1)(B)

**PLAINTIFF** incorporates all the allegations contained in paragraphs 1 through 83 as if fully stated herein and says further that:

84. Under the terms of the Plan, Defendant agreed to provide Plaintiff with long term disability benefits if Plaintiff became disabled as defined in the Plan.

85. Plaintiff is disabled under the terms of the Plan.

86. Defendant failed to provide benefits due under the Plan, and this denial of benefits to Plaintiff constitutes a breach of the Plan.

87. The decision to deny benefits was wrong under the terms of the Plan.

88. The decision to deny benefits and decision-making process were arbitrary and capricious.

89. The decision to deny benefits was not supported by substantial evidence in the record.

90. The decision-making process did not provide a reasonable opportunity to the Plaintiff for a full and fair review of the decision denying the claims, as is required by 29 U.S.C. § 1133 and 29 C.F.R. 2560.503-1.

91. The appellate procedures did not provide the Plaintiff a full and fair review.

92. As an ERISA fiduciary, the Defendant owed the Plaintiff fiduciary duties, such as an obligation of good faith and fair dealing, full and complete information, and a decision-making process free of influence by self-interest.

93. The Defendant violated the fiduciary duties owed to the Plaintiff.

94. As a direct and proximate result of the aforementioned conduct of the Defendant in failing to provide benefits for Plaintiff's disability and in failing to provide a full and fair review of the decision to deny benefits, Plaintiff has been damaged in the amount equal to the amount of benefits to which Plaintiff would have been entitled to under the Plan, and continued benefits payable while the Plaintiff remains disabled under the terms of the Plan.

95. As a direct and proximate result of the conduct of the Defendants in failing to provide benefits for Plaintiff's disability, Plaintiff has suffered, and will continue to suffer in the future, damages under the Plan, plus interest and other damages, for a total amount to be determined.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that this Court grant her the following relief in this case:

1. A finding in favor of Plaintiff against Defendant;

2. Damages in the amount equal to the disability income benefits to which she was entitled through date of judgment, for unpaid benefits pursuant to 29 U.S.C. § 1132(a)(1)(B);

3. Prejudgment and postjudgment interest;

4. An Order requiring Defendant to pay continuing benefits in the future so long as Plaintiff remains disabled under the terms of the Plan;

5. Plaintiff's reasonable attorney fees and costs; and,

6. Such other relief as this Court deems just and proper.

Dated this 27th day of December, 2022.

`

BY: */s/ D. Seth Holliday*
D. SETH HOLLIDAY, ESQ.
GA Bar No. 426951
**MCMAHAN LAW FIRM, LLC**
700 S. Thornton Avenue
P.O. Box 1607
Dalton, Georgia 30722
(706) 217-6118
sholliday@mcmahanfirm.com
*Attorneys for Plaintiff*