# Exhibit A

 **SOCIAL SECURITY ADMINISTRATION**

Office of Hearings Operations
2nd Floor
4100 Old Milton Pkwy
Alpharetta, GA 30005-4442

Date: June 27, 2022

Johnny Eugene Jones
P.O. Box 1025
Tucker, GA 30085

## Notice of Decision – Unfavorable

I carefully reviewed the facts of your case and made the enclosed decision.
Please read this notice and my decision.

**If You Disagree With My Decision**

If you disagree with my decision, you may file an appeal with the Appeals
Council.

**How To File An Appeal**

To file an appeal you or your representative must ask in writing that the
Appeals Council review my decision.  The preferred method for filing your
appeal is by using our secure online process available at
https://www.ssa.gov/benefits/disability/appeal.html.

You may also use our Request for Review form (HA-520) or write a letter.  The
form is available at https://www.ssa.gov/forms/ha-520.html.  Please write the
Social Security number associated with this case on any appeal you file.  You
may call (800) 772-1213 with questions.

Please send your request to:

**Appeals Council**
**5107 Leesburg Pike**
**Falls Church, VA 22041-3255**

Form HA-L76-OP2 (03-2010)

**Suspect Social Security Fraud?**
**Please visit http://oig.ssa.gov/r or call the Inspector General's Fraud**
**Hotline**
**at 1-800-269-0271 (TTY 1-866-501-2101).**

See Next Page

Johnny Eugene Jones (BNC#: 21ZN702B52031)               Page 2 of 3

**Time Limit To File An Appeal**

You must file your written appeal **within 60 days** of the date you get this notice.  The Appeals Council assumes you got this notice 5 days after the date of the notice unless you show you did not get it within the 5–day period.

The Appeals Council will dismiss a late request unless you show you had a good reason for not filing it on time.

**What Else You May Send Us**

You or your representative may send us a written statement about your case. You may also send us new evidence.  You should send your written statement and any new evidence **with your appeal**.  Sending your written statement and any new evidence with your appeal may help us review your case sooner.

**How An Appeal Works**

The Appeals Council will consider your entire case.  It will consider all of my decision, even the parts with which you agree.  Review can make any part of my decision more or less favorable or unfavorable to you.  The rules the Appeals Council uses are in the Code of Federal Regulations, Title 20, Chapter III, Part 404 (Subpart J) and Part 416 (Subpart N).

The Appeals Council may:

- Deny your appeal,
- Return your case to me or another administrative law judge for a new decision,
- Issue its own decision, or
- Dismiss your case.

The Appeals Council will send you a notice telling you what it decides to do.  If the Appeals Council denies your appeal, my decision will become the final decision.

**The Appeals Council May Review My Decision On Its Own**

The Appeals Council may review my decision even if you do not appeal.  If the Appeals Council reviews your case on its own, it will send you a notice within 60 days of the date of this notice.

**When There Is No Appeals Council Review**

If you do not appeal and the Appeals Council does not review my decision on its own, my decision will become final.  A final decision can be changed only under

Form HA–L76–OP2 (03–2010)

Johnny Eugene Jones (BNC#: 21ZN702B52031)                    Page 3 of 3

special circumstances.  You will not have the right to Federal court review.

**New Application**

You have the right to file a new application at any time, but filing a new application is not the same as appealing this decision.  If you disagree with my decision and you file a new application instead of appealing, you might lose some benefits or not qualify for benefits at all.  My decision could also be used to deny a new application for benefits if the facts and issues are the same.  If you disagree with my decision, you should file an appeal within 60 days.

**If You Have Any Questions**

1. Visit www.ssa.gov for fast, simple, and secure online service.
2. Call us at **1–800–772–1213**, weekdays from 8:00 am to 7:00 pm. If you are deaf or hard of hearing, call TTY **1–800–325–0778**. Please mention this notice and decision when you call.
3. You may also call your local office at (877) 803–6320.

> Social Security
> 4365 Shackleford Rd
> Norcross, GA 30093–2931

**How are we doing?** Go to www.ssa.gov/feedback to tell us.

> Gregory Fons
> Administrative Law Judge

Enclosures:
Decision Rationale

cc:     Kathleen Flynn, Esq.
          315 W. Ponce De Leon Avenue
          Suite 940
          Decatur, GA 30030

**SOCIAL SECURITY ADMINISTRATION**
**Office of Hearings Operations**

**DECISION**

<u>**IN THE CASE OF**</u>

<u>**CLAIM FOR**</u>

Period of Disability, Disability
Insurance Benefits, and Supplemental
Security Income

Johnny Eugene Jones
(Claimant)

(Wage Earner)

(Social Security Number)

<u>**JURISDICTION AND PROCEDURAL HISTORY**</u>

This case is before the undersigned Administrative Law Judge on remand from the Appeals Council.  On June 10, 2022, the undersigned held a telephone hearing due to the extraordinary circumstance presented by the Coronavirus Disease 2019 (COVID–19) Pandemic.  All participants attended the hearing by telephone. The claimant agreed to appear by telephone before the hearing and confirmed such agreement at the start of the hearing.  On December 16, 2021, the claimant agreed to appear by telephone hearing (Exh. 22E).  The claimant is represented by Kathleen Flynn, an attorney. Erica Dempsey, an attorney associated with Ms. Flynn, appeared and represented the claimant at the hearing. Randy J. Salmons, an impartial vocational expert, also appeared and testified at the hearing. The claimant was alleging disability since May 12, 2019 (see below in regard to amendment at the hearing)

In its remand order dated November 26, 2021, Appeals Council directed the undersigned to further consider the claimant's earnings and work history; give further consideration to the claimant's maximum residual functional capacity; and if needed, obtain supplemental evidence from a vocational expert (Exh. 10A).

At the hearing on June 10, 2022, the claimant through his attorney (Erica Dempsey) amended the alleged onset date of disability to a closed period in regard to disability from May 12, 2019, through June 20, 2020. This amendment was made knowingly and voluntarily, by and through his attorney. The claimant and his representative admitted at the hearing that the claimant has had medical improvement related to ability to work, engages in substantial gainful activity, and is not alleging disability after June 20, 2020.

The claimant submitted or informed the Administrative Law Judge about all written evidence at least five business days before the date of the claimant's scheduled hearing (20 CFR 404.935(a) and 416.1435(a)).

## ISSUES

The issue is whether the claimant is disabled under sections 216(i), 223(d) and 1614(a)(3)(A) of the Social Security Act.  Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

With respect to the claim for a period of disability and disability insurance benefits, there is an additional issue whether the insured status requirements of sections 216(i) and 223 of the Social Security Act are met.  The claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through December 31, 2026.  Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.

After careful consideration of all the evidence, the undersigned concludes the claimant has not been under a disability within the meaning of the Social Security Act from May 12, 2019, through the date of this decision.

## APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 404.1520(a) and 416.920(a)).  The steps are followed in order.  If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the undersigned must determine whether the claimant is engaging in substantial gainful activity (20 CFR 404.1520(b) and 416.920(b)).  Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful.  "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 404.1572(a) and 416.972(a)).  "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 404.1572(b) and 416.972(b)).  Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA (20 CFR 404.1574, 404.1575, 416.974, and 416.975).  If an individual engages in SGA, he is not disabled regardless of how severe his physical or mental impairments are and regardless of his age, education, and

work experience.  If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the undersigned must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 404.1520(c) and 416.920(c)).  An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities.  An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 404.1522 and 416.922, Social Security Rulings (SSRs) 85–28 and 16–3p).  If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled.  If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, the undersigned must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).  If the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listing and meets the duration requirement (20 CFR 404.1509 and 416.909), the claimant is disabled.  If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the undersigned must first determine the claimant's residual functional capacity (20 CFR 404.1520(e) and 416.920(e)).  An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments.  In making this finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e), 404.1545, 416.920(e), and 416.945; SSR 96–8p).

Next, the undersigned must determine at step four whether the claimant has the residual functional capacity to perform the requirements of his past relevant work (20 CFR 404.1520(f) and 416.920(f)).  The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established.  In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b), 404.1565, 416.960(b), and 416.965).  If the claimant has the residual functional capacity to do his past relevant work, the claimant is not disabled.  If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

See Next Page

At the last step of the sequential evaluation process (20 CFR 404.1520(g) and 416.920(g)), the undersigned must determine whether the claimant is able to do any other work considering his residual functional capacity, age, education, and work experience.  If the claimant is able to do other work, he is not disabled.  If the claimant is not able to do other work and meets the duration requirement, he is disabled.  Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration.  In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 404.1512, 404.1560(c), 416.912 and 416.960(c)).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, the undersigned makes the following findings:

**1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2026.**

**2.  The claimant engaged in substantial gainful activity during the following periods: June 21, 2020 to present (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).**

Pursuant to the remand order, the undersigned has considered the claimant's earnings and work history. The claimant was hired on June 21, 2020, at Express Services (Exh. 6D). The New Hire report showed the claimant earned $8,149 in the third quarter of 2020 and $9,7892 in the fourth quarter of 2020 (Exh. 13D). Additionally, the claimant was hired on May 10, 2021, at HB Fuller Company (Exh. 13D). The earnings record shows the claimant earned $45,664 in 2021 (Exh. 9D). At the hearing, the claimant testified he continues working full-time by working 40 hours per week and making $15 per hour (Hearing Testimony). Therefore, the undersigned finds the claimant has engaged in substantial gainful activity since June 21, 2020.  I also note that both the claimant and the representative agreed that they were not alleging disability since June 21, 2020.

**3.  However, there has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity.  The remaining findings address the period(s) the claimant did not engage in substantial gainful activity.**

The claimant's representative amended the onset date to a closed period in regard to disability from May 12, 2019, through June 20, 2020. The earnings

record shows the claimant earned $5,313 in the second quarter of 2019 and $749 in the second quarter of 2020 (Exh. 5D). The claimant earned unemployment benefits in the second quarter of 2019 and third quarter of 2019 (Exh. 5D). The claimant stopped working at Plaid Enterprises in May 2019 and did not work again until June 2020 (Exh. 3E, p. 4; 5D; Hearing Testimony). Thus, the claimant did not engage in substantial gainful activity from May 12, 2019 to June 20, 2020.

**4. From May 12, 2019, through June 20, 2020, the claimant had the following severe impairments: cerebrovascular accident, diabetes with retinopathy, depression, tendonitis of right tibial tendon, obesity, anxiety disorder, degenerative joint disease of the ankle, and fracture of right ankle (20 CFR 404.1520(c) and 416.920(c)).**

The above medically determinable impairments significantly limit the ability to perform basic work activities as required by SSR 85–28.

**5. From May 12, 2019, through June 20, 2020, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**

Although the claimant had "severe" impairments, they did not meet the criteria of any listed impairments described in Appendix 1 of the Regulations (20 CRF, Subpart P, Appendix 1). No treating or examining physician mentioned findings equivalent in severity to the criteria of any listed impairment, nor did the evidence show medical findings that were the same or equivalent to those of any listed impairment of the Listing of Impairments.

The severity of the claimant's mental impairments, considered singly and in combination, did not meet or medically equal the criteria of listings 12.04 and 12.06. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning. An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.

In understanding, remembering or applying information, the claimant has a mild limitation. The claimant graduated from high school (Exh. 8F, p. 1). The claimant complained of depressed mood, crying spells, irritability, isolation, anhedonia, difficulty sleeping, low energy, limited concentration, feelings of helplessness, and anxiety (Exh. 8F, p. 2). A consultative examination showed

adequate eye contact, normal speech, normal orientation, and minimally limited problems in memory and attention (Exh. 8F, p. 3).

In interacting with others, the claimant has a moderate limitation.  The claimant complained of depressed mood, crying spells, irritability, isolation, anhedonia, feelings of helplessness, and anxiety (Exh. 8F, p. 2). A consultative examination showed adequate eye contact, depressed mood, congruent affect, normal speech, normal orientation, limited insight, and limited judgment (Exh. 8F, p. 3).

With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation.  The claimant complained of anhedonia, difficulty sleeping, low energy, and limited concentration (Exh. 8F, p. 2). A consultative examination showed below normal energy level, below normal processing speed, normal orientation, and minimally limited problems in memory and attention (Exh. 8F, p. 3).

As for adapting or managing oneself, the claimant has experienced a moderate limitation.  The claimant reported depressed mood, crying spells, irritability, isolation, anhedonia, difficulty sleeping, feelings of helplessness, and anxiety (Exh. 8F, p. 2). During a consultative examination, the claimant exhibited limited insight and judgment (Exh. 8F, p. 3). Nevertheless, he was capable of preparing simple meals, doing laundry, shopping, managing money, and driving (Exh. 8F, p. 2). However, he needed assistance with completing personal grooming (Exh. 8F, p. 2).

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.

The undersigned has also considered whether the "paragraph C" criteria are satisfied.  In this case, the evidence fails to establish the presence of the "paragraph C" criteria.  The record does not establish that the claimant has only marginal adjustment, that is, a minimal capacity to adapt to changes in the claimant's environment or to demands that are not already part of the claimant's daily life.

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process.  The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning.  The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

See Next Page

**6. After careful consideration of the entire record, the undersigned finds that, from May 12, 2019, through June 20, 2020, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he could occasionally reach overhead to the right; for all other reaching, he could reach frequently to the right; frequently handle items and finger with the right hand; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; and never work at unprotected heights or around moving mechanical parts. The claimant was limited to understanding, remembering, and carrying out simple instructions, but not at a production rate pace (e.g., no assembly line work); was limited to making simple work-related decisions; no more than frequent interaction with the public, coworkers, and supervisors; no more than occasional changes in a routine work setting; and need to use a cane over rough or uneven surfaces only. He could sit for about 6 hours during an 8-hour workday, but for no more than about 1 hour without interruption, followed by an opportunity to stand briefly (5 minutes) without leaving the workstation; and stand or walk for a combined total of about 6 hours out of an 8-hour workday, but for no more than about 1 hour without interruption, followed by an opportunity to sit for up to 5 minutes.**

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p. The undersigned also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c and 416.920c.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities.

See Next Page

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

In terms of the claimant's impairments, the claimant testified he had ankle pain, ambulation with a cane, memory and speech issues, depression, and difficulty walking (Hearing Testimony). Nonetheless, he could prepare meals, do laundry, shop, manage money, and drive (Exh. 8F). As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because the evidence generally does not support the claimant's allegations of disability. Subsequent to a stroke in October 2019, physical examinations showed mild expressive aphasia, full strength, normal range of motion, and intact gait (Exh. 9F, p. 8). Additionally, a consultative examination revealed normal speech and no evidence of speech or language impairment (Exh. 8F, p. 3).

In May 2019, the claimant complained of pain and swelling of the ankles (Exh. 4F, p. 6). In June 2019, the claimant continued reporting ankle pain due to a previous hairline fracture, but the pain decreased since he stopped working (Exh. 4F, p. 3). An MRI of the right ankle on June 11, 2019, showed mild degenerative changes of the ankle, mild tibial tendinopathy and tenosynovitis, and calcaneal marrow edema (Exh. 4F, p. 3). A physical examination on June 11, 2019, revealed regular heart rhythm, clear lungs, minimal tenderness of the ankle, no swelling, intact sensation, and intact pulses (Exh. 4F, p. 4). Trinidad Osselyn, M.D., diagnosed the claimant with diabetes mellitus with retinopathy and right ankle pain (Exh. 4F, p. 4).

In October 2019, the claimant was hospitalized for stroke evaluation due to right-sided weakness and aphasia (Exh. 6F, p. 7). A physical examination on October 24, 2019, revealed normal range of motion, regular heart rhythm, normal breath sounds, no edema, weakness in the right leg, abnormal sensation, normal mood, normal behavior, normal judgment, and normal thought content (Exh. 6F, p. 9). A CT of the head on October 24, 2019, revealed small focal infarction of the left frontal lobe (Exh. 6F, p. 13). Aaron Anderson, M.D., diagnosed the claimant with acute ischemic left stroke (Exh. 6F, p. 23). On October 25, 2019, the claimant underwent cerebral angiogram and left thrombectomy (Exh. 6F, pp. 63–64). A physical examination on October 27, 2019, showed regular heart rhythm, clear lungs, symmetric extremities, no edema, mild expressive aphasia, right facial droop, normal motor strength, intact sensation, intact coordination, and normal reflexes (Exh. 6F, pp. 23–24).

Debra Lewis, Ph.D., conducted a consultative psychological examination of the claimant on December 19, 2019 (Exh. 8F). The claimant complained of

depressed mood, crying spells, irritability, isolation, anhedonia, difficulty sleeping, low energy, limited concentration, feelings of helplessness, and anxiety (Exh. 8F, p. 2). Despite these allegations, the claimant was not in mental health treatment or taking any psychotropic medications (Exh. 8F, p. 2). A mental status examination showed slow ambulation with a cane, adequate eye contact, depressed mood, congruent affect, below normal energy level, below normal processing speed, normal speech, normal orientation, minimally limited problems in memory and attention, limited insight, and limited judgment (Exh. 8F, p. 3). Dr. Lewis diagnosed the claimant with depressive disorder and anxiety disorder (Exh. 8F, p. 4).

In January 2020, the claimant reported shortness of breath and dizziness while exercising (Exh. 9F, p. 2). A physical examination on January 27, 2020, revealed full range of motion without restrictions, no tenderness, full strength, mild aphasia, and appropriate mood (Exh. 9F, p. 2). Cassandra Kaiser, D.O., opined the claimant had "significantly improved" aphasia and no significant motor deficits (Exh. 9F, p. 2). A retinal screening on February 7, 2020, showed no diabetic retinopathy (Exh. 15F, p. 54).

In April 2020, the claimant reported depression, anxiety, sleep disturbance, pain, and suicidal ideation (Exh. 17F, pp. 6–7). A mental status examination on April 1, 2020, revealed slowed speech, normal orientation, depressed mood, tangential thoughts, good memory, fair insight, good judgment, and good impulse control (Exh. 17F, pp. 9–10). In May 2020, the claimant denied any new stroke symptoms such as dysarthria, weakness, numbness, vertigo, dizziness, nausea, and blurred vision (Exh. 16F, p. 4). In June 2020, the claimant complained of depression, anxiety, passive thoughts of death, poor memory, and concentration problems (Exh. 18F, p. 6). A mental status examination on June 11, 2020, showed logical speech, normal orientation, fair insight, and fair judgment (Exh. 17F, p. 43). Joseph Thompson, M.D., diagnosed the claimant with major depressive disorder and prescribed Sertaline (Exh. 17F, pp. 43–44). As discussed earlier in this decision, on June 21, 2020, the claimant medically improved and returned to work. Furthermore, he amended his onset date to a closed period of disability from May 12, 2019 to June 20, 2020.

In June 2019, the claimant had a height of six feet and two inches and weighed 250 pounds (Exh. 4F, p. 3). In February 2020, he weighed 264 pounds (Exh. 13F, p. 298). SSR 19–2p (formerly SSR 02–1p) recognizes that obesity can cause limitation of function. An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It may also affect ability to do postural functions, such as climbing, balance, stooping, and crouching. The ability to manipulate may be affected by the presence of adipose (fatty) tissue in the hands and fingers. The ability to tolerate extreme heat, humidity, or hazards may also be affected. The undersigned has considered the effects of the claimant's obesity in this residual functional capacity assessment. An assessment has been made to consider

whether obesity has an effect on the claimant's ability to perform routine movement and necessary physical activity within the work environment.

As for medical opinion(s) and prior administrative medical finding(s), the undersigned cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources. The undersigned has fully considered the medical opinions and prior administrative medical findings.

The undersigned finds the opinion of State agency physician, Dr. Muoneke, has little persuasiveness. Dr. Muoneke opined the claimant was capable of medium work (Exh. 5A–6A). This opinion is not supported or consistent with the claimant's complaints. The claimant testified during the relevant time period, he had ankle pain, difficulty walking, and ambulated with a cane (Hearing Testimony). Treatment records confirm the claimant used a cane due to pain, leg weakness, and abnormal sensation (Exh. 6F, p. 9; 8F, p. 3). These objective findings are more consistent with a light residual functional capacity with postural limitations. Furthermore, due to stroke, the claimant displayed right-sided weakness; thus, the residual functional capacity includes reaching and manipulative limitations of the right upper extremity (Exh. 6F).

The undersigned finds the opinion of State agency physician, Dr. LeDuc, has little persuasiveness. Dr. LeDuc opined the claimant has no limitations in understanding, sustaining concentration, and interacting (Exh. 3A–4A). This portion of the opinion is not supported by revealed slowed speech, depressed mood, tangential thoughts, and fair insight (Exh. 17F, pp. 9–10). Additionally, it is not consistent with Dr. Lewis' evaluation or the claimant's complaints of difficulty sleeping and focusing (Hearing Testimony; Exh. 8F). Dr. LeDuc found the claimant has moderate limitation to adapt to change; mild limitation in setting goals; and able to adapt to routine changes but may need support and supervision for major changes (Exh. 3A–4A). This portion of the opinion is supported by the treatment records that show depressed mood, below normal energy level, below normal processing speed, minimally limited problems in memory and attention, limited insight, and limited judgment (Exh. 8F, p. 3). Additionally, this is consistent with the residual functional capacity that limits the claimant to simple work–related decisions, occasional changes in routine, and no production rate.

The undersigned finds the opinion of Dr. Osselyn is not persuasive. Trinidad Osselyn, M.D., found the claimant is unable to work due to stroke (Exh. 7F). This issue is reserved for the Commissioner. This opinion was rendered in December 2019, which was only two months after the stroke. The totality of the evidence shows the claimant's condition has improved. A physical examination on October 27, 2019, showed regular heart rhythm, clear lungs, symmetric extremities, no edema, mild expressive aphasia, right facial droop, normal motor strength, intact sensation, intact coordination, and normal reflexes (Exh.

6F, pp. 23–24). A physical examination on January 27, 2020, revealed full range of motion without restrictions, no tenderness, full strength, mild aphasia, and appropriate mood (Exh. 9F, p. 2). These physical examinations are not consistent with a finding of disability.

The undersigned finds the opinion of consultative examiner, Dr. Lewis, is somewhat persuasive, but only where consistent with the decision's findings. Dr. Lewis found the claimant is able to follow one and two step verbal instructions; sufficient attention and concentration; able to get along with others; and may have difficulty adapting to some typical workplace stressors (Exh. 8F, p. 4). With regard to Dr. Lewis' opinion that the claimant is able to follow one and two step verbal instructions, the evidence does not support a limitation in verbal instructions. Mental status examinations showed adequate eye contact, below normal processing speed, normal speech, normal orientation, and minimally limited problems in memory and attention (Exh. 8F, p. 3). These findings are consistent with simple instructions. Dr. Lewis found the claimant is able to get along with others, but this is not consistent with the claimant's testimony that he needed to stay away from others due to depression and anxiety. Dr. Lewis' opinion that the claimant may have difficulty adapting to workplace stressors is supported by mental status examinations that showed limited insight and judgment (Exh. 8F, p. 3).

**7. From May 12, 2019, through June 20, 2020, the claimant was unable to perform any past relevant work (20 CFR 404.1565 and 416.965).**

The claimant has past relevant work as a landscape laborer (DOT 408.687–014), heavy in exertion (performed as medium) and unskilled in complexity; and batch mixer (DOT 550.685–010), medium and semi–skilled. As required by SSR 82–62, this work was substantial gainful activity, was performed long enough for the claimant to achieve average performance, and was performed within the relevant period. The vocational expert testified that based upon the residual functional capacity as set forth above and the claimant's vocational factors that such an individual could not return to any of the claimant's past relevant work. Accordingly, the claimant is unable to perform past relevant work as actually or generally performed.

**8. The claimant was born on June 28, 1971, and was 47 years old, which is defined as a younger individual age 18–49, on the alleged disability onset date. He continued to be a younger individual through June 20, 2020 (the end of his requested closed period of disability) (20 CFR 404.1563 and 416.963).**

**9. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).**

See Next Page

**10. Transferability of job skills is not material to the determination of disability because using the Medical–Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82–41 and 20 CFR Part 404, Subpart P, Appendix 2).**

**11. From May 12, 2019, through June 20, 2020, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).**

In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical–Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2.  If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical–vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83–11).  When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical–vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83–12 and 83–14).  If the claimant has solely nonexertional limitations, section 204.00 in the Medical–Vocational Guidelines provides a framework for decisionmaking (SSR 85–15).

If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical–Vocational Rule 202.21.  However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations.  To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity.  The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as storage facility rental clerk (DOT 295.367–026), light and unskilled with 116,000 jobs nationally; toll collector (DOT 211.462–038), light and unskilled with 18,700 jobs nationally; parking lot cashier (DOT 211.462–010), light and unskilled with 49,000 jobs nationally; and office helper worker (DOT 239.567–010), light and unskilled with 11,000 jobs nationally.

Additionally, the vocational expert testified that there are representative sedentary occupations such as addresser (DOT 209.587–010), sedentary and

unskilled with 40,500 jobs nationally; document preparer (DOT 249.587–018), sedentary and unskilled with 25,000 jobs nationally; and surveillance systems monitor (DOT 379.367–010), sedentary and unskilled with 4,000 jobs nationally.

Pursuant to SSR 00–4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles except for the consideration of the sit or stand option, use of a cane, and directional reaching, which are not addressed in the DOT. That testimony is based on the vocation expert's education and field experience, and is thus a reliable source of occupational information appropriate for consideration under Social Security Ruling 00–4p.

Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.  A finding of "not disabled" is therefore appropriate under the framework of the above–cited rule in regard to the period of time (requested closed period in regard to disability) from May 12, 2019 through June 20, 2020.

**12. As noted earlier, the claimant has been engaging in substantial gainful activity since June 21, 2020, medical improvement has occurred which is related to the ability to work and neither the claimant nor the representative are alleging disability since June 21, 2020.**

The claimant and his representative admit medical improvement occurred, which is related to the ability to work. In particular, the claimant intentionally lost weight and achieved stability in the right ankle (Hearing Testimony). He returned to full–time work at substantial gainful activity levels. The claimant amended his onset date to a closed period in regard to disability.  The claimant and his representative admit the claimant has had medical improvement related to ability to work, engages in substantial gainful activity, and are not alleging disability after June 20, 2020.

**13. The claimant has not been under a disability, as defined in the Social Security Act, from May 12, 2019, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).**

**<u>DECISION</u>**

Based on the application for a period of disability and disability insurance benefits protectively filed on May 17, 2019, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.

See Next Page

Johnny Eugene Jones (BNC#: 21ZN702B52031)          Page 14 of 14

Based on the application for supplemental security income filed on May 17, 2019, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

/s/ Gregory  Fons
_____
Gregory Fons
Administrative Law Judge

June 27, 2022
_____
Date

# LIST OF EXHIBITS

## Payment Documents/Decisions

| Component | No. | Description | Received | Dates | Pages |
|---|---|---|---|---|---|
| X83 | 1A | Disability Determination Transmittal | | 2020–02–06 | 1 |
| X83 | 2A | Disability Determination Transmittal | | 2020–02–06 | 1 |
| X83 | 3A | Disability Determination Explanation | | 2020–02–13 | 15 |
| X83 | 4A | Disability Determination Explanation | | 2020–02–13 | 15 |
| X83 | 5A | Disability Determination Explanation | | 2020–06–03 | 21 |
| X83 | 6A | Disability Determination Explanation | | 2020–06–03 | 21 |
| X83 | 7A | Disability Determination Transmittal | | 2020–06–03 | 1 |
| X83 | 8A | Disability Determination Transmittal | | 2020–06–03 | 1 |
| X83 | 9A | ALJ Hearing Decision | | 2021–01–26 | 19 |
| X83 | 10A | AC Order | | 2021–11–26 | 6 |

## Jurisdictional Documents/Notices

| Component | No. | Description | Received | Dates | Pages |
|---|---|---|---|---|---|

| X83 | 1B | SSA–1693 – Fee Agreement for Representation before SSA | 2019–05–21 | 2 |
| X83 | 2B | SSA–1696 – Claimant's Appointment of a Representative | 2019–05–21 | 2 |
| X83 | 3B | T2 Notice of Disapproved Claim | 2020–02–13 | 9 |
| X83 | 4B | T16 Notice of Disapproved Claim | 2020–02–13 | 11 |
| X83 | 5B | SSA–1696–SUP2 – Representative's Withdrawal of Acceptance of Appointment | 2020–02–21 | 2 |
| X83 | 6B | Request for Reconsideration | 2020–03–18 | 1 |
| X83 | 7B | SSA–1696 – Claimant's Appointment of a Representative | 2020–04–29 | 4 |
| X83 | 8B | SSA–1693 – Fee Agreement for Representation before SSA | 2020–04–29 | 1 |
| X83 | 9B | T2 Disability Reconsideration Notice | 2020–06–03 | 9 |
| X83 | 10B | T16 Disability Reconsideration Notice | 2020–06–03 | 9 |
| X83 | 11B | Request for Hearing by ALJ | 2020–06–11 | 2 |
| X83 | 12B | Request for Hearing Acknowledgement Letter | 2020–06–22 | 15 |
| X83 | 13B | Objection to Video Hearing | 2020–06–24 | 1 |
| X83 | 14B | Hearing Notice | 2020–09–10 | 25 |
| X83 | 15B | Notice Of Hearing Reminder | 2020–11–23 | 2 |

| X83 | 16B | SSA–1696 – Claimant's Appointment of a Representative | | 2020–12–21 | 6 |
|-----|-----|------|---|------------|---|
| X83 | 17B | Fee Agreement for Representation before SSA | | 2020–12–21 | 1 |
| X83 | 18B | SSA–1696 – Claimant's Appointment of a Representative– KATHLEEN FLYNN ATTY | | 2020–12–21 | 4 |
| X83 | 20B | Request for Review of Hearing Decision/Order | | 2021–03–18 | 11 |
| X83 | 21B | AC Correspondence | | 2021–03–29 | 5 |
| X83 | 22B | Outgoing ODAR Correspondence– COVID LETTER | | 2021–12–15 | 16 |
| X83 | 23B | Request for Hearing Acknowledgement Letter | | 2021–12–20 | 15 |
| X83 | 19B | Fee Agreement for Representation before SSA– KATHLEEN FLYNN ATTY 25/6000 | | 2020–12–21 | 1 |
| X83 | 24B | Hearing Notice | | 2022–03–14 | 27 |
| X83 | 25B | Acknowledge Notice of Hearing | | 2022–04–04 | 2 |
| X83 | 26B | Notice Of Hearing Reminder | | 2022–05–13 | 6 |

## Non–Disability Development

| Compone nt | No. | Description | Received | Dates | Pages |
|------------|-----|-------------|----------|-------|-------|
| X83 | 1D | Lead Protective Filing Worksheet | | 2019–05–17 | 3 |

| X83 | 2D | Application for Disability Insurance Benefits | | 2019-07-10 | 4 |
|-----|-----|------|------|------|------|
| X83 | 3D | Detailed Earnings Query | | 2020-08-29 | 4 |
| X83 | 4D | Summary Earnings Query | | 2020-08-29 | 1 |
| X83 | 5D | New Hire, Quarter Wage, Unemployment Query (NDNH) | | 2020-08-29 | 1 |
| X83 | 6D | New Hire, Quarter Wage, Unemployment Query (NDNH) | | 2020-12-17 | 1 |
| X83 | 7D | Detailed Earnings Query | | 2020-12-17 | 4 |
| X83 | 8D | Certified Earnings Records | | 2020-12-21 | 3 |
| X83 | 9D | Certified Earnings Records | | 2022-01-29 | 3 |
| X83 | 10D | Detailed Earnings Query | | 2022-01-29 | 4 |
| X83 | 11D | Summary Earnings Query | | 2022-01-29 | 1 |
| X83 | 12D | New Hire, Quarter Wage, Unemployment Query (NDNH) | | 2022-01-29 | 2 |
| X83 | 13D | New Hire, Quarter Wage, Unemployment Query (NDNH) | | | 2 |
| X83 | 14D | Detailed Earnings Query | | | 4 |

## Disability Related Development

| Component | No. | Description | Received Source | Dates | Pages |
|-----------|-----|-------------|-----------------|-------|-------|
| X83 | 1E | Statement of Claimant or Other Person | | 2019-05-21 to 2019-05-21 | 2 |

| X83 | 2E | Disability Report – Field Office | | 2019–07–10 to 2019–07–10 | 2 |
|-----|-----|-----|-----|-----|-----|
| X83 | 3E | Disability Report – Adult | | 2019–07–10 to 2019–07–10 | 9 |
| X83 | 4E | 3rd Party Function Report – Adult | Janey Reynolds | 2019–08–07 to 2019–08–07 | 12 |
| X83 | 5E | Function Report – Adult | Jones, Johnny E | 2019–08–16 to 2019–08–16 | 9 |
| X83 | 6E | Function Report – Adult | Jones, Johnny E | 2019–10–17 to 2019–10–17 | 2 |
| X83 | 7E | Function Report – Adult | Jones, Johnny E | 2020–01–07 to 2020–01–07 | 3 |
| X83 | 8E | Disability Report – Appeals | | 2020–03–20 to 2020–03–20 | 6 |
| X83 | 9E | Disability Report – Field Office | | 2020–03–20 to 2020–03–20 | 2 |
| X83 | 10E | 3rd Party Function Report – Adult | Junie Reynolds | 2020–05–18 to 2020–05–18 | 9 |
| X83 | 11E | Function Report – Adult | Jones, Johnny E | 2020–06–01 to 2020–06–01 | 8 |
| X83 | 12E | 3rd Party Function Report – Adult | Junie Reynolds | 2020–06–01 to 2020–06–01 | 8 |

| X83 | 13E | 3rd Party Function Report – Adult | Junie Reynolds | 2020–06–03 to 2020–06–03 | 8 |
| X83 | 14E | Disability Report – Field Office | | 2020–06–15 to 2020–06–15 | 2 |
| X83 | 15E | Disability Report – Appeals | | 2020–06–15 to 2020–06–15 | 7 |
| X83 | 16E | Exhibit List to Rep PH2E | | 2020–08–29 to 2020–08–29 | 5 |
| X83 | 17E | Representative Correspondence | | to 2020–10–02 | 2 |
| X83 | 18E | Misc Disability Development and Documentation | | to 2020–11–19 | 3 |
| X83 | 19E | Representative Correspondence | Erica Dempsey | to 2020–12–10 | 1 |
| X83 | 20E | Resume of Vocational Expert | Dian L. Haller | to 2020–12–21 | 2 |
| X83 | 21E | Representative Brief | Kathleen Flynn, Rep | to 2021–05–18 | 15 |
| X83 | 22E | Report of Contact– AGREES TO PHONE HEARING | Csu | to 2021–12–16 | 1 |
| X83 | 23E | Exhibit List to Rep PH2E | | to 2022–01–29 | 11 |
| X83 | 24E | Correspondence regarding efforts to obtain evidence | | to 2022–05–05 | 2 |
| X83 | 25E | Resume of Vocational Expert | | to 2022–05–15 | 2 |

## Medical Records

| Compone nt | No. | Description | Received Source | Dates | Pages |
|---|---|---|---|---|---|

| X83 | 1F | Outpatient Hospital Records | Dekalb Medical | 2015-04-30 to 2015-05-20 | 73 |
| --- | --- | --- | --- | --- | --- |
| X83 | 2F | Office Treatment Records | Edward C Mack Md | 2011-12-14 to 2016-07-07 | 23 |
| X83 | 3F | Office Treatment Records | Edward C Mack Md | 2015-03-27 to 2016-07-07 | 19 |
| X83 | 4F | HIT MER | Kaiser Permanente | 2018-05-12 to 2019-07-10 | 23 |
| X83 | 5F | Medical Source – No MER Available | Emory Decatur Hospital | to 2019-07-17 | 3 |
| X83 | 6F | Outpatient Hospital Records | Grady Memorial Hospital | 2019-10-24 to 2019-11-15 | 220 |
| X83 | 7F | Treating Source Statement | Kaiser Permanente | to 2019-12-02 | 2 |
| X83 | 8F | CE Psychology | Debra M Lewis PhD | 2019-12-19 to 2019-12-19 | 5 |
| X83 | 9F | Outpatient Hospital Records | Grady Memorial Hospital | 2020-01-27 to 2020-01-28 | 11 |
| X83 | 10F | Outpatient Hospital Records | Grady Memorial Hospital | 2019-11-15 to 2020-01-28 | 14 |
| X83 | 11F | Hospital Records | Grady Hospital | 2015-04-30 to 2020-01-28 | 92 |

| | | | | | |
|---|---|---|---|---|---|
| X83 | 12F | Outpatient Hospital Records | Dekalb Medical | 2015-04-30 to 2020-02-07 | 547 |
| X83 | 13F | Office Treatment Records | Kaiser Permanente | 2017-10-11 to 2020-02-07 | 298 |
| X83 | 14F | Medical Source – No MER Available | Emory Decatur Hospital | to 2020-05-04 | 3 |
| X83 | 15F | Hospital Records | Kaiser Permanente / Henry Town Centre | 2019-06-11 to 2020-05-04 | 56 |
| X83 | 16F | Hospital Records | Grady Hospital | to 2020-05-26 | 6 |
| X83 | 17F | Office Treatment Records | Kaiser Permanente | 2020-04-01 to 2020-06-11 | 45 |
| X83 | 18F | Office Treatment Records | Kaiser Permanente | 2020-06-19 to 2020-07-23 | 19 |
| X83 | 19F | Office Treatment Records | Dr. Edward Mack | 2011-12-14 to 2016-07-05 | 26 |
| X83 | 20F | Office Treatment Records | Kaiser Permanente | to 2020-08-20 | 8 |
| X83 | 21F | Laboratory Test Report | Kaiser Permanente | to 2020-09-29 | 7 |
| X83 | 22F | Office Treatment Records | Kaiser Permanente | to 2020-11-20 | 17 |
| X83 | 23F | Office Treatment Records | Edward Mack Md | 2021-08-10 to 2021-12-07 | 18 |