## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| LAQUASHEA TURNER, | |
| Plaintiff, | Civil Action No.: |
| v. | _____ |
| MANNING AND ASSOCIATES SECURITY, LLC, and WAYNE MANNING | **Jury Trial Demanded** |
| Defendants. | |

## **COMPLAINT**

Plaintiff Laquashea Turner (hereinafter "Ms. Turner" or "Plaintiff") files this Complaint against the Defendant Manning and Associates Security, LLC ("Manning Security") and Defendant Wayne Manning ("Mr. Manning" or "Manning"), showing the Court that Defendant discriminated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") as follows:

## **INTRODUCTION**

Defendant's owner Wayne Manning sexually harassed Plaintiff in an ever escalating manner in May – June 2022, culminating in sexual battery during the week of June 27, 2022 when first, he touched her backside and attempted to put his hands down her pants while in the office, and then a few days later, while in the

1

office, he uncovered his penis, made masturbatory motions and asking Plaintiff "Do you like that? Do you want that?"  Plaintiff rejected all of these advances and repeatedly reported the improper harassment in June to Defendant's H.R. Director, "Crystal," who at first took no action, but after the most severe incident involving the uncovered penis (see above), "Crystal" met with Wayne Manning in the company conference room for a long time on approximately July 5, 2022.  After this meeting, Mr. Manning emerged angry, and told Plaintiff to "keep your mouth shut," then demanded she turn in her office keys, and then shortly thereafter fired Plaintiff without explanation.  There was no valid reason to fire plaintiff other than the obvious retaliatory one.

## **PARTIES**

1. Plaintiff is a Georgia resident and citizen who was employed by Defendant Manning Security during the times relevant to this Complaint.

2. Plaintiff started working for Defendant in May 2022.

3. Defendant Manning Security provides security personnel and monitoring to private entities such as warehouses.  At all times relevant to this Complaint, Defendant Manning Security has continuously been doing business throughout the State of Georgia (but not outside of Georgia), including within this District.

4.  All of the key events occurred at Manning Security's headquarters located at 2255 Cumberland Parkway, Bldg. 1900, Suite 1905, Atlanta, GA 30339. Defendant Manning Security can be served via its registered agent, Wayne L. Manning, at 2255 Cumberland Parkway, Bldg. 1900, Suite 1905, Atlanta, GA 30339 or by delivering it to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process.

5.  Defendant Manning is a resident and citizen of the state of Georgia and may be served at Manning Security's office, as above.

6.  At all times relevant to this action, Defendant Manning Security was Ms. Turner's employer within the meaning of Title VII.

## JURISDICTION AND VENUE

7.  This Court's jurisdiction is proper pursuant to 28 U.S.C. § 1331 as the claims herein present a federal question.

8.  Venue is proper in this district and division under 28 U.S.C. § 1391 because Defendants conduct business in this district and division, and the unlawful actions and practices alleged herein were committed within the Northern District of Georgia.

## CONDITIONS PRECEDENT SATISFIED

9. Ms. Turner complied with all conditions precedent to the filing of this action, including timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and receiving a Notice of Right to Sue, and this action has been filed within ninety (90) days of receipt of said Notice of Right to Sue.

10. On July 15, 2022, Plaintiff Turner filed EEOC Charge No. 410-2022-07126 against Manning Security.

11. On or about December 6, 2022 the EEOC issued a Notice of Right to Sue to Plaintiff Turner, and this Complaint is filed within ninety (90) days of said Notice.

## FACTS

12. Ms. Turner, whom has an extensive security background, applied to work for Manning Security in March or April 2022. After an interview with "Crystal," Ms. Turner was hired to work as a security guard at various client sites. Her first day of work was May 9, 2022.

13. Soon thereafter, she was introduced to the Defendant's Manning Security's owner, Defendant Wayne Manning. Mr. Manning was immediately flirty

and solicitous.  Mr. Manning instructed Plaintiff to meet him at a gas station (the QT on S. Cobb) and he would fill her car with gas at no cost to her.

14. During her work hours, he would come visit her while she was onsite to her security booth and talk to her at length.  She was stationed there alone.  Oftentimes, the conversation was not about work, and for example Mr. Manning would engage in flirty conversation and talk about her hair or her clothing.

15. On May 29, at 12:32 a.m., Mr. Manning sent a text message to Plaintiff asking her to meet him at the office that evening, and offering to pay her gas if she did.  He did not explain why this was necessary at the late hour.  Plaintiff refused this request.

16. Mr. Manning would later text her again, similarly late at night and similarly asking her to come to the office for an unexplained reason.  She similarly refused this request, and her refusal was not mentioned during the work hours as any problem or the basis for any discipline.

17. Also in the same timeframe, Mr. Manning attempted to video chat late at night with Plaintiff, but hung up when Plaintiff's daughter answered Plaintiff's phone.

18. In June 2022, Mr. Manning explained to Plaintiff that he was promoting her to work in the office (where Mr. Manning worked) at Defendant's headquarters.

He told her she would be the first person to arrive at the office and gave her keys to allow her to open up. Plaintiff had never worked in the office of a security company before, and was excited at the opportunity to learn new skills and advance with the Company.

19. Plaintiff did not know that Mr. Manning had arranged it so that they would be working in the office alone. Mr. Manning had instructed the other staff, including "Crystal", that they could work remotely on the days that Plaintiff was assigned to work in the office with Mr. Manning.

20. When Plaintiff started in the office, alone with Mr. Manning, his inappropriate talk and sex harassment increased, and he would talk about her hair (he asked her to wear it down, offered to "help you" with it"), her clothing (telling her to wear high heels, short skirts) and other inappropriate and flirtatious talk ("I can't keep my eyes off you, I'm gonna get in trouble with you").

21. Plaintiff privately told "Crystal", the Defendant's HR director, that she did not want to be working alone with Mr. Manning. "Crystal" did not ask why, and replied only that "that's how he [Wayne Manning] wants it."

22. During the week of June 27, 2022, while Plaintiff was working in the office alone with Mr. Manning and had her back to Mr. Manning while she was putting files in a multi-level filing cabinet. Mr. Manning commented on Plaintiff's

6

long hair and she responded that she wanted to put it in a pony tail. Mr. Manning approached her from behind, as she was knelt over filing, and said he would help her put her hair in a pony tail, and put one hand on her hair and put his other hand on her backside and then attempted to put his hands down the back (on the inside) of her pants. As she quickly stood up to move away, he pressed his pelvic area hard against her so that she could feel his penis. She moved away from him, unsure of what to say at first, finally stammering that she would put her own hair in a pony tail.

23.  Shortly thereafter, she disclosed this incident to "Crystal", who did not seem surprised or unhappy about the incident, and told Plaintiff that Mr. Manning had previously had an affair with a prior female employee and had given her a lot of money during the affair. Crystal said "Get that money!" though it was unclear what she meant or if she was joking. Regardless, no remedial action was taken.

24.  Just a few days later, Plaintiff was again alone in the office when Mr. Manning came in with a suitcase, and said he was leaving to go on an out of town trip.

25.  Plaintiff was working in an office, and again had her back to Mr. Manning when he came into the office and sat down on the corner of the desk. When she turned around, he had taken down his pants to expose his penis, and was moving

his hand over his penis. He said "Do you like that? Do you want that?" Plaintiff immediately ran out of the office and as she ran by Mr. Manning, he grabbed her arm, twice, and pulled her towards him. Plaintiff pulled away from him and ran out of the office.

26. Shortly thereafter, Mr. Manning left the office, saying only that he was leaving for his trip. Plaintiff again told "Crystal" about this incident, and said that she thought she should expose Mr. Manning to others, such as the police. Crystal revealed that "he tried me too [sexually]" and said that "he don't need to do that if you're not into it."

27. On or about July 5, Mr. Manning returned to the office. Both Plaintiff and Crystal were there. Crystal asked Mr. Manning to meet her in the conference room, and the two had a long meeting. After he came out of the meeting, Mr. Manning was angry. Mr. Manning said to Plaintiff that "you need to keep your mouth shut," and "nobody needs to know what goes on in this office." He instructed her to return her keys to him. She did so and asked him how she could open the office in the morning without keys. He did not respond. He later continued to make angry statements to Plaintiff, so much so that Crystal commented "I don't like the tension in this office." Mr. Manning finally suggested to Plaintiff that she "didn't need to be here," and terminated her.

8

28. Plaintiff was never informed of any legitimate non-discriminatory reason for her termination.

## COUNT I: HOSTILE ENVIRONMENT - SEXUAL HARASSMENT AND TANGIBLE EMPLOYMENT ACTION/QUID PRO QUO SEXUAL HARASSMENT
### (Against Manning Security)

29. Plaintiff incorporates herein by reference the allegations set forth in the above paragraphs of this Complaint as if fully set forth herein.

30. As a female, Plaintiff is a member of a protected class under Title VII.

31. Defendant is a privately-owned employer within the meaning of Title VII, which applies to all private, state and local government employers with more than fifteen employees.

32. Plaintiff has been subjected to verbal and physical unwanted sexual harassment because of and based on her sex.

33. Defendant engaged in two types of sexual harassment: sexual harassment that was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create an abusive working environment and Plaintiff was also subject to quid-pro-quo sexual harassment because Plaintiff suffered a tangible employment action that was causally linked to her refusal to accept Mr. Manning's sexual advances.

34. Mr. Manning's sexual harassment of Plaintiff was sufficiently severe

or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment.

35. Defendant had no sexual harassment policy and had never trained employees such as Plaintiff Turner regarding reporting sexual harassment.

36. Defendant subjected Plaintiff to a tangible-employment action on or around July 5, 2022 when it terminated Plaintiff's employment.

37. Defendant's termination of Plaintiff's employment was causally related to sexual harassment because when Plaintiff rebuffed Manning's sexual harassment, and Manning fired (or gave input to fire) Plaintiff's employment shortly after Plaintiff made her opposition clear.

38. As described above, Plaintiff was subject to Manning's unwelcome severe and pervasive sexual assault and harassment, including his quid-pro-quo proposal of sex for money and ultimately sex for her job. Director Manning further made repeated and verbal comments to her over the course of multiple months during her employment with Defendant.  Manning engaged in unwelcome physical touching by grabbing her rear-end, grabbing her arm, and pressing his body into hers.

39. The severe and pervasive sexual assault and harassment at Manning Security's altered the terms and/or conditions of Ms. Turner's employment and created a discriminatorily hostile working environment where she did not feel safe.

40. Manning Security is vicariously liable to Plaintiff Turner for the hostile work environment created by a supervisor with immediate (or successively higher) authority over the employee.

41. Manning Security did not exercise reasonable care to prevent the harassment. Manning Security did not have an anti-harassment policy. There is no evidence that Manning Security monitored the location where Plaintiff worked with Director Manning. Manning Security failed to provide a system for registering complaints.

42. Ms. Turner subjectively perceived the harassment as sufficiently severe and pervasive to alter the terms or conditions of employment. Ms. Turner was unable to fully perform her job while she was being physically sexually harassed and Plaintiff Turner ultimately lost her employment because she rebuffed Manning's sexual harassment.

43. Ms. Turner's perception was reasonable because the environment at Manning Security was one that a reasonable person would find hostile or abusive. The sexual harassment frequently occurred. Further, the Director Manning's

repeated demands for a sexual relationship in exchange for money was severe, sexually explicit, and humiliating.

44. Manning Security provided Plaintiff with no reasonable corrective opportunities and Manning Security did not promptly act to correct the sexually harassing behavior, and instead terminated Plaintiff's employment.

45. As a result of Defendant's sex discrimination described herein, Ms. Turner has suffered actual and compensatory damages, including but not limited to lost wages, mental and emotional distress, attorneys' fees, and punitive damages.

### COUNT II: RETALIATION IN VIOLATION OF TITLE VII
### (Against Defendant Manning Security)

46. Plaintiff realleges the above paragraphs and herein incorporates them by reference to this count.

47. Plaintiff engaged in protected conduct during her employment when she opposed a practice – an unlawful employment practice under Title VII – because she rejected and rebuffed Director Manning's sexual harassment and propositions of a sexual relationship, and reported same to the Defendant's Director of Human Resources.

48. Defendant retaliated against Plaintiff because Plaintiff engaged in statutorily protected activity. This conduct is prohibited by Title VII of the Civil Rights Act of 1964.

49. The very close temporal proximity between when Plaintiff Turner reported the illegal sex harassment and made clear in late June that she would not engage in a sexual relationship with Manning, Manning's input in Plaintiff Turner's termination, and the lack of any stated or legitimate reason for Plaintiff's termination suggest that her report of and/or rebuff of his sexual harassment caused her firing.

50. Defendant knew that federal law prohibits discrimination, and willfully and/or recklessly disregarded Plaintiff's federally protected rights in its termination of Plaintiff.

51. Due to Defendant's unlawful actions, Plaintiff was injured and is therefore entitled to punitive and compensatory damages, back pay, prejudgment interest, reinstatement or front pay, attorneys' fees, costs, and further relief in an amount to be determined at trial.

## COUNT III: NEGLIGENT TRAINING AND SUPERVISION
**(Against Both Defendants)**

52. Plaintiff incorporates herein by reference the allegations set forth in the paragraphs above of this Complaint as if fully set forth herein.

53. Manning and Crystal were employees and/or agents of Defendant Manning Security during the timeframe relevant to this lawsuit acting within the course and scope of his employment and agency.

54. As a result of Manning's position, Defendant Manning Security provided both with supervisory authority over Plaintiff.

55. Defendants had a duty to exercise ordinary care in the supervision, training, and retention of its managers that it knows or should have known pose a risk of harm to others where it is reasonably foreseeable that the employee's tendencies or propensities could cause harm.

56. In the exercise of reasonable care, Defendants should have engaged in anti-sexual harassment training, had a policy prohibiting sexual harassment, and had a procedure for reporting sexual harassment. None of this existed at Manning Security.

57. Defendants breached their duty when they failed to take any steps to train to prevent sexual harassment by Mr. Manning.

58. Defendants knew or should have known that Mr. Manning sexually harassed other employees because his harassment was common and repeated at Manning Security.

59. Defendants were negligent in failing to train or supervise their supervisory employees whom were in a position exercise reasonable care.

60. Because Defendants failed to act on their knowledge and exercise their duty of ordinary care, Mr. Manning committed multiple intentional torts to Plaintiff including battery.

61. As a direct result of this breach, Plaintiff suffered damages in an amount to be determined at trial.

### **COUNT IV: BATTERY, PUNITIVE DAMAGES, ATTORNEYS' FEES**
**(Against both Defendants)**

62. Plaintiff incorporates all of the above statements as if set forth fully herein.

63. Defendant Manning, while in the course and scope of his employment, engaged in multiple offensive and unwanted touchings (e.g. battery) against Plaintiff that were not consented to.

64. Plaintiff was damaged by and continues to be damaged by this battery.

65. Punitive damages should be awarded in this case because the Defendants' actions show "willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1 (b).

66. An award of attorneys' fees and expenses is appropriate in this case against both Defendants for violations of counts III and IV because Defendant has "acted in bad faith, has been stubbornly litigious, or has caused the plaintiff

unnecessary trouble and expense…" O.C.G.A. § 13-6-11. Defendant's failure to institute any preventative policies despite Manning's widespread sexual harassment satisfies one or more of the statutory criteria for attorneys' fees and expenses.

67.   Plaintiff is entitled to attorneys' fees and litigation expenses in an amount to be determined at trial.

## **PRAYERS FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that this Court grant the following relief:

1) Issue judgment in favor of Plaintiff Turner and against Defendants;

2) Issue judgment in favor of Plaintiff that Defendant Manning Security discriminated against Ms. Turner on the basis of her sex in violation of Title VII;

3) That Plaintiff have and recover compensatory damages for the mental and emotional distress occasioned by Defendant Manning Security's discriminatory conduct in an amount to be determined by a jury;

4) That Plaintiff be awarded prejudgment interest for Defendant Manning Security's discriminatory conduct;

5) That Plaintiff have and recover punitive damages from Defendant Manning Security in an amount to be determined by a jury;

6) That Plaintiff have and recover her attorneys' fees and costs of litigation from Defendant Manning Security pursuant to 42 U.S.C. § 2000e-5 and all other applicable laws; and

7) Plaintiff be awarded full compensation under state law as described above in Counts III and IV, and

8) Any and other such further relief that this Court or the Finder of Fact deems equitable and just.

**Jury Trial Demanded**

This 26th day of January, 2023.

Respectfully submitted,

        HILL, KERTSCHER & WHARTON, LLP

        By:   /s/ Douglas R. Kertscher
               Douglas R. Kertscher
               Georgia State Bar No. 416265

               *Attorney for Plaintiff*

3625 Cumberland Blvd., Suite 1050
Atlanta, Georgia 30339
Telephone: 770-953-0995
Facsimile: 770-953-1358
E-mail: drk@hkw-law.com