# Exhibit A

Sheriff Number: 22040773    Court Case Number: 22-C-07404-S1          State of Georgia
Date Received: 12/28/2022 Time: 3:09 PM                                Gwinnett County
Special Service Inst:

<u>ATTORNEY'S ADDRESS</u>

CONNIE AMAYA
PLAINTIFF
VS.
STATE FARM FIRE AND CASUALTY COMPANY
DEFENDANT

<u>NAME AND ADDRESS OF PARTY TO BE SERVED</u>

STATE FARM FIRE & CASUALTY CO
SUITE 400
2 SUN COURT
PEACHTREE CORNERS, GA 30092

SHERIFF'S ENTRY OF SERVICE

**PERSONAL** ☐    Sex_____ Skin Color_____ Hair Color_____ Age_____ Hgt_____ Wgt_____
I have this day served the defendant_____ personally with a copy of the within action and summons.

**NOTORIOUS** ☐
I have this day served the defendant _____ by leaving a copy of the action and
summons at his most notorious place in this County.

Delivered same into the hands of _____ described as follows:

| SEX | SKIN COLOR | HAIR COLOR | AGE | HGT | WGT |
|---|---|---|---|---|---|
| | | | | | |

**CORPORATION** ☒
I have this day served the _____ a corporation by leaving a copy of
the within action and summons with _____ in charge of the office and place of
doing business of said Corporation in this County.

**TACK AND MAIL** ☐

I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises
designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an
envelope properly addressed to the defendant at the address shown in said summons, with adequate postage affixed thereon containing notice to the
defendant(s) to answer said summons at the place stated in the summons.

**NON EST** ☐
Diligent search made and defendant _____ not to be found
in the jurisdiction of this Court.

**SPECIAL PROCESS**

**COMMENTS**

Date:_____

Time:_____

_____
Deputy Sheriff

GWINNETT COUNTY GEORGIA

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**22-C-07404-S1**

**12/21/2022 2:13 PM**
**TIANA P. GARNER, CLERK**

## IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| CONNIE AMAYA | ) | Civil Action No. |
| *Plaintiff,* | ) | |
| | ) | 22-C-07404-S1 |
| v. | ) | |
| | ) | |
| STATE FARM FIRE AND CASUALTY | ) | JURY TRIAL DEMANDED |
| COMPANY | ) | |
| | ) | |
| *Defendant,* | ) | |
| | ) | |

### SUMMONS

TO: STATE FARM FIRE AND CASUALTY COMPANY

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's Attorney, whose name and address is:

Ryan T. Baxter, Esq.
Baxter Law Firm, LLC
2400 Herodian Way Suite #220
Smyrna, GA 30080

an Answer to the Complaint which is herewith served upon you, within 30 days after service of this Summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

This 21st day of December, 2022.

Tiana P. Garner

Clerk of State Court:

_____
D/ CLERK

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**22-C-07404-S1**

**12/21/2022 2:13 PM**
TIANA P. GARNER, CLERK

## IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

CONNIE AMAYA                                )
                                            )        Civil Action No.
         *Plaintiff,*                       )
                                            )
v.                                          )        22-C-07404-S1
                                            )
STATE FARM FIRE AND CASUALTY                )        JURY TRIAL DEMANDED
COMPANY                                     )
                                            )
         *Defendant,*                       )
                                            )

## COMPLAINT

COMES NOW, Connie Amaya ("Plaintiff") by and through her attorneys, Baxter Law Firm, and

herein files her Complaint against State Farm Fire and Casualty Company ("Defendant") and

upon personal knowledge and upon information and belief, allege and claim as follows:

## PARTIES

1.

Plaintiff CONNIE AMAYA is the policyholder who resides at 121 RIVER PARK XING

WOODSTOCK, GA 30188.

2.

Defendant State Farm Fire and Casualty Company is a Foreign Insurance Company whose

registered agent in Georgia, Corporation Service Company, is located at 2 Sun Court, Suite

400, Peachtree Corners, GA 30092, in Gwinnett County.

## JURISDICTION AND VENUE

3.

Jurisdiction and Venue are proper in this Court because Defendant's registered agent is located in Gwinnett County, GA; Defendant may be served by and through its registered agent in Gwinnett County and because this Court has subject matter jurisdiction over this case.

## FACTUAL BACKGROUND

4.

This matter began on December 24, 2021, when Plaintiff's home at 121 RIVER PARK XING WOODSTOCK, GA 30188, sustained water damage due to a sudden and accidental incident that caused damage to Plaintiff's home.

5.

Plaintiff hired/retained Large Loss Public Adjusters, LLC, to advocate on her behalf and assist her with the insurance claim process. Furthermore, Plaintiff hired E&S Restoration Services to mitigate the water damage and to prevent the property from further damage.

6.

Plaintiff has complied with all conditions contained in the insurance policy.

7..

Defendant has not afforded the proper coverage under the applicable policy. This lack of good faith has compelled Plaintiff to hire legal counsel and file a lawsuit against Defendant.

8.

Defendant purposefully delayed the claim process and consciously underpaid this claim.

9.

On December 27, 2021, The Public Adjuster emailed Defendant the Letter of Representation "LOR." The LOR was attached to the email. In the LOR, the following was requested: A certified Copy of the Policy and Proof of Loss Forms.

10.

On December 29, 2021, at 2:17 PM, the Public Adjuster emailed Defendant the Incident Report. The report was attached to the email. The incident report contained sixty-nine pages and included the following:

- Description of the incident
- Diagrams of Upper Level, Main Level and Lower Level
- Fire Department Report
- Plumber Report
- Images

11.

On December 29, 2021, at 2:17 PM, the Public Adjuster emailed Defendant an Evaluation of Subrogation.

12.

On January 03, 2022, The Public Adjuster emailed Defendant's adjuster, Sarah Higgins regarding inspecting the Risk/Property.

13.

On January 07, 2022, The Public Adjuster emailed Defendant his preliminary rebuild estimate. The estimate was attached to the email. The preliminary estimate contains twenty-eight pages.

14.

On January 12, 2022, at 8:32 AM, Defendant's adjuster Sarah Higgins emailed the Public Adjuster two attachments as follows:

- A letter about the policy provisions.
- A blank proof of loss form

15.

On January 12, 2022, at 9:06 AM, Defendant's adjuster Sarah Higgins emailed the Public Adjuster a letter. The letter stated: "Based on the current scope of repairs, we expect your home to be uninhabitable through April 15, 2022."

16.

On January 12, 2022, at 1:05 PM, the Public Adjuster emailed Defendant's adjuster, Sarah Higgins, the measurements of the Risk/Property.

17.

On January 24, 2022, Defendant's adjuster, Sarah Higgins emailed the Public Adjuster her estimate.

18.

On January 25, 2022, The Public Adjuster received an email from "HVACi" to schedule an inspection appointment. HVACi is the Defendant's vendor.

19.

On January 26, 2022, The Public Adjuster emailed Defendant's adjuster, Sarah Higgins, a report from the Plaintiff's potential contractor to show that it would take up to Six (6) Months to rebuild the Risk/Property.

20.

Also, the Public Adjuster explained that once the Rebuild process is completed, additional time is needed to move the Plaintiff back into her property. Only once the townhouse is 'move-in ready,' the furniture (Personal Property Move Back) must be scheduled, moved back, and situated; additionally, the Plaintiff must purchase new furniture to replace her non-salvageable items, which will require additional time.

21.

The Public Adjuster addressed that the HVAC and Electrical systems need further evaluation.

22.

On January 27, 2022, The Public Adjuster received an email from Myra Kipper from "StrikeCheck" to schedule an appointment to inspect the electrical system. StrikeCheck is the Defendant's vendor.

23.

On January 28, 2022, The Public Adjuster emailed Defendant's vendor "StrikeCheck" or "HVACi" to schedule an inspection appointment ("StrikeCheck" or "HVACi" are sister companies that share employees to schedule appointments). In this email, the Public Adjuster addressed a scheduling issue. Defendant's vendor wants to schedule the appointment with a Four (4) Hour of arrival-window and not a specific time slot.

24.

Defendant's adjuster, Sarah Higgins, failed to provide specific information to Defendant's vendor, such as the home was unoccupied, and that the appointment should be scheduled at a specific time rather than a time-window.

25.

Defendant was included in the emails; therefore, Defendant was aware of the issue. Defendant's adjuster Sarah Higgins failed to inform her vendor that the insured has a Public Adjuster handling this claim and that all appointments must be specific to an actual meeting time.

26.

Upon information and belief, Plaintiff believed that Defendant was intentionally delaying the claim process.

27.

On January 29, 2022, at 1:05 PM, the Public Adjuster emailed Defendant's vendor "HVACi". In this email, the Public Adjuster included Defendant as well. Defendant's vendor has not replied to the January 28, 2022 email.

28.

On January 29, 2022, at 1:25 PM, HVACi emailed the Public Adjuster. In this email, Defendant was included as well; therefore, Defendant had full knowledge of this situation. HVACi stated the following: "…Unfortunately I am not able to confirm that time it appears the NI declined that appointment time. We are now offering Friday, Feb 04, 2022, 9 AM."

29.

On January 31, 2022, The Public Adjuster emailed HVACi and advised that the Feb 04, 2022, 9 AM appointment is acceptable.

30.

On February 02, 2022, The Public Adjuster received an email from Defendant's vendor, "StrikeCheck."  An appointment was made for February 8th at 8 am.

31.

On February 3, 2022, at 6:36 AM, Defendant emailed Home Source Adjuster, a company that specializes in finding temporary housing for the insured; Defendant copied Plaintiff's Public Adjuster on this email.  Defendant's adjuster Sarah Higgins stated the following: "I have received approval to extend a 3 month lease agreement for Connie Amaya claim 11-28S4-67J thru May 3rd for property…"

32.

On February 3, 2022, at 6:37 AM, Defendant emailed the Public Adjuster and attached a
formal letter to the email. The letter stated, "Based on the current scope of repairs, we expect
your home to be uninhabitable through May 3rd, 2022".

33.

At this point, Defendant had not reached an agreement regarding a Final Rebuild Settlement
and had not made any payments to Plaintiff; however, Defendant wanted Plaintiff to repair
her property.

34.

On February 4, 2022, The Public Adjuster emailed Defendant's vendor "HVACi" and
included Defendant in the email. In this email, the Public Adjuster informed HVACi that
their technician did not show up.

35.

The Public Adjuster and Plaintiff's vendor arrived at the scheduled appointment fifteen
minutes early and waited for almost one hour.

36.

The HVACi technician who was supposed to inspect the HVAC unit failed to show up.

37.

Prior emails show the struggle of making the appointment with Defendant's vendor.

38.

The Defendant had not completed its evaluation yet and wanted the Plaintiff to rebuild her home.

39.

On February 7, 2022, at 11:19 AM, the Public Adjuster emailed Defendant and stated the following: "As of today, I still have not received a Certified Copy of the Policy."

40.

The Public Adjuster requested a Proof of Loss Form and a Certified Copy of the Policy from Defendant on December 27, 2021.

41.

Defendant emailed the Proof of Loss forms on January 12, 2022; however, Defendant failed to address the Certified Policy.

42.

Upon information and belief, Plaintiff posited that this was another delay tactic by Defendant to withhold information that can assist Plaintiff's claim.

43.

On February 7, 2022, at 1:29 PM, the Public Adjuster emailed Defendant's vendor; Defendant was included in the email. The Public Adjuster stated the following:

- "Tomorrow, Tuesday 02/08/2022 at 10 AM, I am meeting with STRIKE CHECK to inspect the electrical system and major appliances (Refer to the attached PDF file).

- Can the HVAC technician be there at 10 am and inspect the HVAC unit?

- Please note that your HVAC Technician did not show up for the Friday, Feb 04, 2022 (9 AM) appointment (please refer to the email thread below).

- Also, no one called me on Friday to address the reason why the technician did not show up. My phone log shows that I tried to reach out to HVACi twice on Friday and I was placed on hold."

44.

Defendant's Rebuild Estimate was not completed; furthermore, Defendant and the Public Adjuster had not reached an agreement regarding the rebuild estimate. Still, Defendant already decided that Plaintiff must begin rebuilding her home.

45.

On February 10, 2022, The Public Adjuster emailed Defendant the Preliminary Proof of Loss. The Proof of Loss was attached to the email, the document contained 110 pages.

46.

On February 11, 2022, The Public Adjuster received an email from Defendant. In this email, Defendant requested the Water Mitigation Invoice and Pack-out Invoice.

47.

On February 15, 2022, at 8:36 AM, the Public Adjuster emailed Defendant and requested the following:

- HVAC Unit Evaluation

- Appliances Evaluation
- Electrical Evaluation

48.

On February 15, 2022, at 9:54 AM, the Public Adjuster received an email from Defendant. The email contained four attachments as follows:

- Electronics Evaluation – Only one page, page "4 of 12," was sent. Defendant refused to provide the entire report.

- Electronic Summary page – Only one page, "3 of 12," was sent. Defendant refused to provide the entire report.

- HVACi partial report – Only one page, "6 of 17," was sent. Defendant refused to provide the entire report.

- HVACi summary page – Only one page, "3 of 17," was sent. Defendant refused to provide the entire report.

In this email, Defendant stated, "I have updated estimate for repairs based on findings and will be sending over shortly."

49.

As of February 15, 2022, Defendant did not have a finalized rebuild estimate; however, Defendant kept insisting that Plaintiff must rebuild her townhouse and only allowed three months for the rebuild.

50.

On February 17, 2022, Defendant emailed the Public Adjuster and advised him that Defendant

issued a payment of $61,897.80 for the Dwelling/Rebuild. In this email, Defendant attached the

rebuild estimate.

51.

On February 18, 2022, The Public Adjuster emailed Defendant sixteen emails. The Public

Adjuster submitted photos of the damaged personal property and the pack-out photos. Sixteen

batches were submitted.

52.

The Public Adjuster emailed Defendant the Pack-out, Storage, Cleaning & Move-back Invoice. In

this invoice, E&S Restoration indicated the following:

"Line 31 Labor - Clean Salvageable Items by Hand (Per Item) Additional Information needed.

We will invoice separately.

Line 32 Contents Repair/Restoration This pertains to the non-salvageable items.

This is pending additional evaluation from insurance company and vendor to make final decision

or to reach an agreement of what is salvageable."

53.

On February 23, 2022, The Public Adjuster emailed Defendant the Water Mitigation Invoice. The

Water Mitigation Invoice contains Two-Hundred and Ten (210) Pages.

54.

On March 1, 2022, at 1:16 PM, the Public Adjuster emailed Defendant a list of the Cleanable Items

of the Personal Property. The Cleanable Items List contains Two-Hundred and Ten (210) Pages.

55.

On March 1, 2022, at 1:23 PM, the Public Adjuster emailed Defendant a list of the Non-Salvageable Items of the Personal Property. The Non-Salvageable Items List contains Sixty-Nine (69) Pages.

56.

On March 3, 2022, the Public Adjuster emailed Defendant the Proof of Loss document.

57.

On March 7, 2022, The Public Adjuster emailed Defendant regarding the electrical system. The attachment stated: "Electrical:

• The electrical evaluation (completed by STRIKE-CHECK) is insufficient.

• Based on the partial report that I have received, the electrical panel and electrical wiring was ONLY visually observed.

• The Risk/Property was severely impacted by water; therefore, the electrical system was also exposed to water.

• A thorough inspection by an Electrical Engineer should be conducted.

• The following items should be inspected:

     o Electrical wiring

     o Electrical outlets and switches

     o GFCI outlets

     o Electrical panel and circuit breaker

• The report should address the following:

• Whether the system is safe to use or not.

• Whether the system is a fire hazard or not.

• Corrosion to any components (present or not present).

• Breaker box – is it safe? Does water exposure compromise the integrity of the breakers?

Please let me know if you would like to hire an Electrical engineer or should the insured hire

one?

The electrical evaluation is part of Coverage A (dwelling)."


58.

As of March 7, 2022, Defendant still had not addressed many issues regarding the rebuild of the

Dwelling; yet, Defendant demanded that Plaintiff rebuild her home.


59.

Additionally, Defendant's Rebuild Estimate clearly states, "If you cannot have the repairs

completed for the repair/replacement cost estimated, please contact your claim specialist prior to

beginning repairs".


60.

Upon information and belief, Plaintiff believed that Defendant was trying to get rid of this claim

and forced Plaintiff into an unfair settlement.

61.

On March 7, 2022, at 10:23 AM, Defendant emailed the Public Adjuster its version of a Water

Mitigation Estimate.

62.

Defendant did not do the water mitigation; however, Defendant produced an estimate for the water mitigation.

63.

On March 7, 2022, at 12:01 PM, the Public Adjuster emailed Defendant and requested that Defendant releases the undisputed amount for the Water Mitigation.

64.

On March 8, 2022, The Public Adjuster emailed Defendant regarding the HVAC System and stated:

"HVAC System:

• The HVAC evaluation (completed by HVACi) is insufficient.

• Based on the partial report that I have received, the HVAC System was ONLY visually observed.

• The Risk/Property was severely impacted by water; therefore, the internal HVAC unit was also exposed to water.

• A thorough inspection by a licensed HVAC technician should be conducted.

• The following items should be inspected:

    o The furnace unit (make sure it heats).

    o The AC unit (make sure it cools).

• The report should address the following:

    o Whether the system is safe to use or not.

    o Whether the system is a fire hazard or not.

    o Corrosion to any components (present or not present)."

65.

On March 9, 2022, at 9:36 AM, Defendant emailed the Public Adjuster regarding the HVAC system. In this email, Defendant did not address the corrosion, Defendant stated that the unit is operational.

66.

Defendant did not provide the entire HVAC report; rather, Defendant provided two pages of the report. Furthermore, Defendant did not address the Public Adjuster's concerns regarding the HVAC System.

67.

On March 9, 2022, at 10:09 AM, the Public Adjuster emailed Defendant a Rebuild Estimate Review regarding Defendant's Rebuild Estimate. The Rebuild Estimate Review was Seventeen (17) Pages long. In this report, the Public Adjuster showed Defendant that its rebuild estimate was insufficient.

68.

Defendant wants the insured to rebuild her home immediately; however, no agreement has been reached.

69.

On March 9, 2022, at 10:11 AM, the Public Adjuster emailed Defendant and advised that Defendant release the undisputed amount for the water mitigation invoice; this was the second request to Defendant to release the undisputed amount for the Water Mitigation.

70.

On March 10, 2022, at 5:49 AM, Defendant emailed the Public Adjuster stating that a check for

the water mitigation invoice was released. The check amount is significantly less than the

invoice submitted by E&S Restoration.

71.

On March 10, 2022, at 4:27 PM, Defendant emailed the Public Adjuster a rejection letter for the

Proof of Loss. According to Defendant, they rejected the Proof of Loss due to the "Salvageable

Items Cleaning" for the following reason, "There is no estimate, supporting documentation or

amount included for this claim".

72.

On March 11, 2022, The Public Adjuster emailed Defendant the location of the stored Personal

Property. Furthermore, the Public Adjuster confirmed the time for Defendant to inspect the

Personal Property (March 16, 2022, at 8 am).

73.

On March 16, 2022, The Public Adjuster, along with E&S Restoration's Representative, met

with Defendant's adjuster Sarah Higgins at the Storage unit so Defendant could assess the

Personal Property.

Defendant's adjuster glanced at Only One Unit (out of Five Units) and recommended that one of

its vendors will contact the Public Adjuster to evaluate the Personal Property.

74.

On March 25, 2022, The Public Adjuster emailed Defendant and requested its revised rebuild estimate. Also, in this email, the Public Adjuster requested the vendor's information from Defendant to evaluate the Personal Property.

75.

On March 30, 2022, at 9:56 AM, the Public Adjuster emailed Defendant and requested an update regarding the March 25, 2022, email.

76.

On March 30, 2022, at 10:32 AM, Defendant emailed the Public Adjuster and stated: "Working on it. I plan to have response to you later today."

77.

On April 04, 2022, at 6:50 AM, the Public Adjuster emailed Defendant and stated the following: "Please provide me with State Farm's vendor that will handle the Personal Property."

78.

On April 8, 2022, Home Source's employee, Leanne Ferber, emailed Defendant. The Public Adjuster was included in this email. Home Source requested an extension beyond May 23, 2022, for the loss of use (Additional Living Expenses/Temporary housing rental).

79.

On April 11, 2022, The Public Adjuster emailed Defendant the following:

"Please provide me with an update on this claim. Also, please provide me with the Contents'
vendor contact information as well."

80.

The Public Adjuster met with Defendant's adjuster, Sarah Higgins on March 16, 2022, regarding
the Personal Property. Defendant glanced at Only One Unit (out of Five Units) and decided to
have a vendor evaluate the Personal Property. As of April 11, 2022, there was still no update
from Defendant.

81.

On April 12, 2022, The Public Adjuster emailed Defendant and stated the following: "Please
note that I called you at 404-938-4867 (Tuesday, April 07, 2022 – 8:18 AM) and left you a voice
message. Please provide me with an update on this claim."

82.

On April 15, 2022, Defendant emailed the Public Adjuster its revised rebuild estimate.
Defendant revised its rebuild estimate; however, Defendant still has not addressed the extension
for the Loss of Use (extension for the temporary housing).

83.

On April 18, 2022, The Public Adjuster emailed Defendant and stated the following:
"Regarding the Rebuild:

• Please provide me with the complete evaluation report for the HVAC system. You have only provided me with a partial report. I need the entire report to validate your findings/evaluation.

• Please provide me with the complete evaluation report for the electrical system. You have only provided me with a partial report. I need the entire report to validate your findings/evaluation.

Regarding the Start-Time to Begin the Rebuild:

• Your estimate states the following:

o "If your contractor's estimate is higher than ours, you should contact us prior to beginning repairs."

• Please note that State Farm's estimate is incomplete and there are numerous items that we need to address.

• We are in the process of reviewing your recent revised estimate; our initial review still shows numerous items missing.

We understand the ACV payment has been released and we can begin the work immediately; however, we would have to supplement the missing items afterward, in this case, State Farm will not like that and may reject the supplement.

• To avoid supplement rejection, we should address the missing items before we begin the rebuild.

Regarding the Personal Property:

• Please address the pack-out invoice. Please release the undisputed amount.

• Please provide me with your non-salvageable list."

84.

On April 25, 2022, at 11:37 AM, the Public Adjuster emailed Defendant the Electrical Evaluation of the Dwelling; the electrician was hired by the Insured. The Electrical Evaluation stated the following:

"BACKGROUND:

The Residential Property (3 Level Townhouse) sustained substantial water damage originating on the Upper Level in the Master Bathroom Area and spread throughout the Main Level and Lower Level.

Water Mitigation was performed to prevent the property from further damage.

We inspected the property on April 20th, 2022.

INSPECTION FINDINGS:

Wiring: The electrical wiring was exposed to water; however, there are no signs of any water damage to the electrical wiring. The wiring is made out of copper and is insulated; therefore, it was not impacted.

The wiring before the water-loss is the same condition as after the water-loss. The current electrical wiring is not a fire hazard and is safe to use again.

Light Fixtures and Ceiling Fans: The light fixtures and ceiling fans were exposed to water and were damaged by water. All light fixtures and ceiling fans exposed to water must be replaced.

The light fixtures and ceiling fans before the water-loss are NOT the same condition as after the water-loss. The light fixtures and ceiling fans are a fire hazard and are not safe to use again.

Kitchen Appliances: The Kitchen Appliances were exposed to water and were damaged by water. All Kitchen Appliances exposed to water must be replaced.

The Kitchen Appliances before the water-loss are NOT the same condition as after the water-loss. The Kitchen Appliances are a fire hazard and are not safe to use again.

Electrical Receptacles and Light Switches: The Electrical Receptacles and Light Switches were exposed to water and were damaged by water. All Electrical Receptacles and Light Switches exposed to water must be replaced.

The Electrical Receptacles and Light Switches before the water-loss are NOT the same condition as after the water-loss. The Electrical Receptacles and Light Switches are a fire hazard and are not safe to use again.

There are several Electrical Receptacles that are already showing signs of corrosions and rust. Based on this water loss, the Electrical Receptacles and Light Switches must be replaced, and it is definitely a fire hazard.

Main Service Panel/Housing: The Main Service Panel/Housing was exposed to water; however, there are no signs of any water damage to the Main Service Panel/Housing.

The Main Service Panel/Housing before the water-loss is the same condition as after the water-loss. The current Main Service Panel/Housing is not a fire hazard and is safe to use again.

Circuit Breakers: The Circuit Breakers were exposed to water and were damaged by water. All Circuit Breakers exposed to water must be replaced.

The Circuit Breakers before the water-loss are NOT the same condition as after the water-loss. The Circuit Breakers are definitely a fire hazard and are not safe to use again.

Smoke Detectors: The Smoke Detectors were exposed to water and were damaged by water. All Smoke Detectors exposed to water must be replaced.

The Smoke Detectors before the water-loss are NOT the same condition as after the water-loss. The Smoke Detectors are not safe to use again.

9 Remove and Replace: GFCI Outlets $900

71 Remove and Replace: Electrical Receptacles $3,550

38 Remove and Replace: Light Switches $1,900

35 Remove and Replace: Circuit Breakers $1,750

TOTAL $8,100"

85.

On April 25, 2022, at 1:42 PM, Defendant emailed the Public Adjuster its evaluation of the
Pack-out for the Personal Property.

86.

On April 25, 2022, at 4:58 PM, Defendant emailed the Public Adjuster a breakdown of the
additional living expenses.

87.

On April 28, 2022, The Public Adjuster received an email from Defendant's adjuster. The
adjuster, Sarah Higgins, stated that she contacted StrikeCheck for a possible inspection of the
electrical system.

88.

On May 2, 2022, Home Source's employee, Linda McGladdery emailed Defendant; the Public
Adjuster was included in the email. Linda from Home Source stated the following:

"Please provide a payment status for the attached two ALE Invoice on Behalf of Connie Amaya, Claim#: 1128S467J from 01/01/22 – 05/23/22."

89.

On May 3, 2022, The Public Adjuster emailed Defendant and stated: "Please refer to the attached PDF file "2nd Revision Request" along with the other supporting documents."

The email contained Seven (7) Attachments, and the Main Attachment briefly described the attachments. The Main Attachment stated:

"This is in reference to your email dated April 15, 2022. A true and correct copy of the same email is attached as 'Exhibit A'.

➢ 'Exhibit B' addresses the "Not warranted" section of your April 15, 2022 email.

➢ 'Exhibit C' reflects the items that need revision. We have requested the revision back on March 9, 2022; however, State Farm did not address items.

➢ The insured would like to begin the rebuild process; however, there are many items that must be addressed. Please address all items accordingly.

➢ Your estimate states the following:

o "If your contractor's estimate is higher than ours, you should contact us prior to beginning repairs."

➢ Please note that State Farm's estimate is incomplete and there are numerous items that we need to address.

➢ We understand the ACV payment has been released and we can begin the work immediately; however, we would have to supplement the missing items afterward, in this case, State Farm will not like that and may reject the supplement.

➢ To avoid supplement rejection, we should address the missing items before we begin the rebuild."

90.

On May 04, 2022, at 11:49 AM, the Public Adjuster emailed Defendant and stated the following: "Please extend the Housing accommodation. The housing accommodation expires by the end of this month. Also, according to Home Source, as of today, they have not received any payments from State Farm. Did you issue any payments to Home Source? If so, please provide me with the details."

91.

On May 04, 2022, at 12:25 AM, Defendant emailed the Public Adjuster and provided a revised rebuild estimate. Defendant revised its rebuild estimate.

92.

On May 06, 2022, The Public Adjuster emailed Defendant the following:

"Please refer to the attached PDF file. The PDF file reflects the HVAC unit's evaluation by the Insured's Vendor.

The file contains fourteen pages. This is a thorough evaluation that reflects the current condition of the HVAC unit.

   1. E&S Restoration has images of the duct system that clearly show the duct system filled with water.

   2. The HVAC unit is at the lowest point of the Risk/House.

3. The ductwork leads to the HVAC unit.

4. The water inside of the ductwork flowed to the HVAC unit; therefore, water got inside the unit.

When State Farm's Vendor did an inspection, the HVAC unit was dry, which is normal since water mitigation and dry-out were performed.

The notion that no water entered the HVAC unit based on the dryness level is not a true reflection of the HVAC's condition.

The images from the Insured's Vendor absolutely show evidence of water intrusion into the HVAC unit.

The fact of the matter is that the supply vents filled with water and that water flowed to the lowest point, which is the HVAC system.

HVACi's Vendor did not take the time to understand the background or the extent of the water damage; rather, he rushed through the inspection without completing a true and accurate evaluation of the HVAC unit. Furthermore, HVACi's Vendor did not count how many HVAC registers to provide a proper estimate of the duct system, nor did he address the Zone Controler, Damper, or Damper Actuator.

The Insured's Vendor "HVAC Evaluation" clearly and absolutely shows signs of rust, corrosion, and tarnishing in the unit.

Your vendor, "HVACi", created an evaluation that is incomplete and does not show the details of the HVAC unit's current condition.

Your vendor, "HVACi", evaluated the system quickly (less than 15 minutes) and clearly does not show an accurate representation of the actual HVAC damages.

Please include Remove & Replace the HVAC unit in your rebuild estimate. Also, please add the Zone controller to the estimate as well.

As of today, I still have not received your vendor's complete "Electrical Evaluation" nor "HVAC Evaluation"."

93.

On May 12, 2022, the Public Adjuster emailed Defendant the following:

"Please note that as of today, I still have not received the check for the ALE. Please void the check and issue a new one."

94.

On May 16, 2022, at 11:28 AM, Defendant emailed the Public Adjuster regarding the Personal Property items. In this case, Defendant is ignoring prior arrangements, which was to have a vendor evaluate the Personal Property.

95.

On May 16, 2022, at 12:58 PM, the Public Adjuster emailed Defendant and stated the following:

"Please refer to the attached PDF files. We need to finalize the rebuild estimate so the Insured can begin restoring her property.

Also, I still have not heard back from you regarding the electrical evaluation and HVAC evaluation."

In this email, the Public Adjuster attached the following:

A report requesting that Defendant change its rebuild estimate. The Public Adjuster provided a detailed report outlining the items that Defendant missed in its rebuild estimate, items that Defendant overlooked, and items that Defendant ignored.

● A guide that shows the proper method of how to install a firewall (Defendant was using Xactimate line items for the wall insulation as if the firewall is typical insulation. The fact is that this is a Firewall (not just wall insulation) and must be installed in a specific way).

● Six Images to show Defendant certain items such as the countertop, backsplash, and more. Defendant inspected the Risk/Property twice and had images to produce a proper rebuild estimate. In this case, Defendant is purposely ignoring several items to reduce the cost of the rebuild.

96.

On May 19, 2022, The Public Adjuster emailed Defendant the following:
"In this email, I would like to address the rebuild estimate.

● As you know, on May 16, 2022, I submitted another revision request regarding the rebuild estimate.

● Furthermore, I would like to expedite this process by specifically addressing the Electrical and HVAC Issues.

● If you are planning to re-inspect either the electrical system or the HVAC systems, then please make arrangements to do so as soon as possible.

● While you are revising your rebuild estimate, your vendors and the Public Adjuster can address the Electrical and HVAC Issues.

● Finally, you never emailed me the full HVAC and Electrical Inspection Report as previously requested."

### 97.

On May 25, 2022, the Public Adjuster emailed Defendant and stated the following:

"Please refer to the email below along with the attached PDF files.

The email below was sent to you on May 16, 2022, and as of today, I still have not received a reply.

Also, I called your manager Patrick at 309-824-2377 and left him a message to call me back. I am trying to see if we can reach an agreement on the rebuild."

### 98.

On June 02, 2022, The Public Adjuster emailed Defendant and stated the following:

"Please refer to the email thread below.

We submitted a request for revision on May 16, 2022, and thus far, no reply from State Farm.

Additionally, I left a voice message to Patrick at 309-824-2377 and I never heard back.

The goal is to finalize the rebuild portion of this claim as soon as possible.

Please revise your rebuild estimate accordingly. Also, HVACi and Strike Check never called me for reinspection."

### 99.

On June 7, 2022, at 6:15 AM, Defendant emailed the Public Adjuster and stated the following:

"Please see attached State Farm Estimate for repairs as this is what State Farm is paying for repairs. As I have said to you previously if your contractor does not agree with pricing allowed please find another contractor as there are plenty that will complete the work for Exactimate pricing.

State Farm estimate was completed in February to your contractors scope. Since then you have provided two additional supplements with out any work being completed. State Farm estimate was revised to your first supplement at which time you submitted a second supplement. I will be happy to review any additional supplements once you provide me with a signed contract. I believe that your biggest concern is insulation and we have allow 12" blown with net is at $3.54 per SF and mineral wool without netting is at $1.26 per SF.

Please be aware that housing has been extended thru August 27th and will not be extended as 6 months is more than enough time to have completed repairs.

We have had expert come out to inspect electricity and HVAC and their findings stand."

100.

On June 7, 2022, at 11:10 AM, the Public Adjuster emailed Defendant, stating:

"In this email, I am including Ryan Baxter @ Baxter Law Firm. The attorney is not currently involved; however, the progression of this claim is being observed accordingly.

This is in reference to your email below.

Sarah Higgins stated: "As I have said to you previously if your contractor does not agree with pricing allowed please find another contractor as there are plenty that will complete the work for Exactimate pricing."

o Public Adjuster reply:

▪ This is NOT a pricing issue. There are many items that are missing from your estimate and you are simply ignoring the items.

▪ A detailed report/request was provided to you to address the missing items. You have revised your estimate partially and chose to ignore the remaining items.

▪ Also, for some line items, you are choosing the wrong Xaxtimate line items. For example: The firewall insulation.

Sarah Higgins stated: "State Farm estimate was completed in February to your contractors scope. Since then you have provided two additional supplements with out any work being completed. State Farm estimate was revised to your first supplement at which time you submitted a second supplement. I will be happy to review any additional supplements once you provide me with a signed contract. I believe that your biggest concern is insulation and we have allow 12" blown with net is at $3.54 per SF and mineral wool without netting is at $1.26 per SF."

- Public Adjuster reply:

▪ Again, your estimate is incomplete and does not provide a true value of the water loss.

▪ I am reattaching the "State Farm's Estimate Review" report to this email. The report is clearly NOT a supplement, rather it is a report that shows your estimate is inadequate.

▪ The following is an example of a supplement: State Farm pays to remove and replace hardwood floors. During construction, the contractor removes the hardwood floor and discovers vinyl flooring underneath. The contractor then takes pictures of the vinyl flooring, then removes the vinyl flooring, then installs the new hardwood flooring. In this case, the contractor would submit a "Supplement" to the Insurance Company to pay for the additional cost associated with the vinyl flooring removal.

▪ My report addresses issues that show State Farm's rebuild estimate is inadequate. In this case, you have addressed part of the missing items and ignored the remaining items. Then somehow, you are referring to my report as a "Supplement".

▪ As to the firewall: Again you are trying to manipulate this situation and are still ignoring my report. I have provided you with a report that shows how the firewall is installed. You still have not addressed the firewall properly, nor have you addressed many other items that I have pointed out to you. Again, you simply ignored most of the report.

Sarah Higgins stated: "Please be aware that housing has been extended thru August 27th and will not be extended as 6 months is more than enough time to have completed repairs."

o Public Adjuster reply:

▪ Based on your statement, you make it look like State Farm's rebuild estimate was finalized six months ago... Which is not the case.

▪ The last revised estimate from State Farm was completed on May 04, 2022. This estimate is incomplete and it is inadequate; the attached PDF files clearly show why and how.

▪ As of today, State Farm has NOT released the complete ACV amounts (based on your own estimate, you have not released the entire ACV amount); YET, "according to you", the insured must begin the rebuild process despite the ACV amount not being fully paid.

▪ Your own estimate states: "If you cannot have the repairs completed for the repair/replacement cost estimated, please contact your claim specialist prior to beginning repairs." Your email below contradicts your estimate's statement aforementioned line.

▪ On one hand, you are instructing the insured NOT to begin the work if the replacement cost is insufficient and on the other hand (your email below) you instruct the insured to

begin the work even though State Farm's estimate is insufficient/adequate. Do you think

State Farm is acting in good faith?

Sarah Higgins stated: "We have had expert come out to inspect electricity and HVAC and their

findings stand."

o Public Adjuster reply:

▪ You never provided me with the complete reports nor have you provided me with the

expert's photos.

▪ You have never provided me with the expert's credentials, experience, or

work/professional background.

▪ You have never provided me with pictures from the expert to support their findings.

▪ Furthermore, the experts that you are referring to, inspected the house/risk in less than

ten minutes. Do you believe this constitutes a thorough inspection?

Moving Forward:

o Please issue the entire ACV amount (this is based on your May 04, 2022, estimate). Thus far,

we have received $70,417.82 only.

o As of today, I still have Not received a certified copy of the policy. I requested a certified copy

of the policy on December 27, 2021.

o State Farm should act in good faith and comply with O.C.G.A. § 33-6-34; therefore, please

address the attached PDF files and reply accordingly.

o If State Farm disagrees with any items in the attached reports, then please issue a partial denial

letter.

o Your email below did not address our "State Farm's Estimate Review" report. You simply ignored the report and advised the insured to begin the rebuild process despite State Farm's estimate being inadequate.

▪ Again, to properly address our "Defendant 's Estimate Review" report, either you revise your estimate OR you need to issue a partial denial letter that addresses each and every one of our concerns.

▪ Also, make sure to explain in your partial denial letter the reason for the denial... Simply stating "Not Warranted" is not considered an explanation.

o Please release all undisputed amounts pertaining to all estimates/invoices that have been submitted to you. Thus far, State Farm release partial payments or no payments for the following:

▪ Rebuild (ACV incomplete)

▪ Water Mitigation invoice (partial payment was made).

▪ Pack out the invoice (no funds have been released)

▪ Personal Property (no funds have been released)"


101.

On June 20, 2022, The Public Adjuster emailed Defendant and stated the following:

"Moving forward, I will continue to include the attorney in my correspondence with State Farm. Baxter Law Firm is not currently involved; however, the progression of this claim is being observed accordingly.

Please refer to the email below dated June 7, 2022 and reply accordingly. There is no need to continue delaying this claim."

102.

On June 23, 2022, at 10:30 AM, the Public Adjuster emailed Defendant the following:

"Please refer to the email thread below, specifically the email that is dated June 7th, 2022, and

reply accordingly."

103.

On June 23, 2022, at 2:45 PM, Defendant emailed the Public Adjuster and stated the following:

"I have received your email and it is being reviewed."

104.

On June 29, 2022, The Public Adjuster emailed Defendant and stated the following:

• "Please refer to the email thread below. The email thread began on June 07, 2022, and as of

today, State Farm has NOT replied... Despite the fact, that it has been three weeks.

• Please refer to O.C.G.A § 33-6-34 - Unfair claims settlement practices:

o (2) Failing to acknowledge with reasonable promptness pertinent communications with respect

to claims arising under its policies;

Please reply accordingly, the insured would like to restore her home as soon as possible;

therefore, there Isn't Any Reason to further delay this claim."

105.

On July 1, 2022, Defendant emailed the Public Adjuster and stated the following:

"Our payment in the amount of $18,119.73 for additional items for repairs and $19,817.75 for pack out, storage and pack back for contents in settlement of your Dwelling claim will be mailed to Large Loss Public Adjuster."

106.

On July 4, 2022, The Public Adjuster emailed Defendant and stated the following:

"As of today, I still have Not received a certified copy of the policy. I requested a certified copy of the policy on December 27, 2021. Please explain the reason for the delay.

Also, I would like to address the rebuild estimate. Please refer to the email below that was sent to you on June 7, 2022. As of today, I still have not received a revised estimate from you.

Please reply accordingly."

107.

On July 5, 2022, Defendant emailed the Public Adjuster a copy of the Policy. The copy is NOT a Certified Copy of the Policy. It took Defendant over Six Months to email an Uncertified Copy of the policy.

108.

On July 11, 2022, The Public Adjuster emailed Defendant and stated the following:

• "Please refer to the email below. The email was sent to you on June 07, 2022; it has been OVER one month and you still have NOT replied regarding the rebuild.

• As I indicated in my previous emails, it is a priority to rebuild the Risk/Townhouse as soon as possible. In this case, I have addressed the inadequacies of State Farm's rebuild estimate.

● I have provided you with estimate reviews that show the missing line-items or items that need revision.

● State Farm did initially revise the estimate; however, there are still many line-items that need to be addressed by adding to the estimate or simply by revising the line items (a detailed report is attached to this email that explains these items).

Please address the email thread below along with the attached PDF files."


## COUNT 1 – BREACH OF CONTRACT

Pursuant to the facts stated above, Defendant has breached its contract with Plaintiff by failing to fully pay Plaintiff's vendor on behalf of Plaintiff in accordance with the policy.


## PRAYER FOR RELIEF

Plaintiff respectfully requests that this honorable court award damages in the following amounts:

DWELLING - REBUILD:                                              $190,154.64

DWELLING - WATER MITIGATION:                            $108,821.16

PERSONAL PROPERTY - NON-SALVAGEABLE ITEMS:        $210,590.53

PERSONAL PROPERTY - CLEANABLE AND RESTORABLE ITEMS: $85,800.00

PERSONAL PROPERTY - PACK OUT, STORAGE, AND MOVE BACK: $74,685.36

LOSS OF USE - ADDITIONAL LIVING EXPENSES:            $43,000.00

Plaintiff also requests that, pursuant to the facts stated above, as well as those facts which will be proven at trial, this Court find that Defendant has acted in bad faith; Plaintiff requests that Defendant be held liable to pay Plaintiff's costs and reasonable attorneys' fees.

Plaintiff also requests any further relief that this honorable Court deems just and proper.

Plaintiff also demands a trial by jury.


Respectfully submitted this December 21, 2022.


/s/Ryan Baxter
Ryan Baxter
Georgia Bar No. 588243


BAXTER LAW FIRM, LLC
2400 Herodian Way Suite #220
Smyrna, GA 30080
Telephone:  (678) 813-1900
ryan@baxlegal.com

*Attorney for Plaintiff*

IN THE STATE COURT OF GWINNETT COUNTY
STATE OF GEORGIA

CONNIE AMAYA,                              )
                                          )
                    Plaintiff,            )
                                          )
v.                                        )        CIVIL ACTION FILE
                                          )        NO.  22-C-07404-S1
STATE FARM FIRE AND CASUALTY              )
COMPANY,                                  )
                                          )
                    Defendant.            )

## DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

COMES NOW, State Farm Fire and Casualty Company (hereinafter "State Farm" or "Defendant"), by and through the undersigned attorneys, and hereby files this, its Answer and Affirmative Defenses to Plaintiff's Complaint, and shows this Court as follows:

### FIRST AFFIRMATIVE DEFENSE

Plaintiff's Complaint fails to state a claim against Defendant upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's Complaint fails to state a claim for bad faith penalties and attorneys fees pursuant to O.C.G.A. § 33-4-6.

### THIRD AFFIRMATIVE DEFENSE

Defendant State Farm is not liable to Plaintiff for any cause of action, including for breach of contract, because Defendant State Farm at no time breached or otherwise violated any of the terms or conditions of the insurance policy between State Farm and Plaintiff. At all times,

Defendant State Farm acted in accordance with its rights and obligations as set forth in the Policy.

**FOURTH AFFIRMATIVE DEFENSE**

To the extent Plaintiff's Complaint or prayer for relief seeks, or is construed as seeking, damages other than the contractual damages, such remedies are not available to the Plaintiff inasmuch as O.C.G.A. § 33-4-6 is the sole manner by which to recover extra-contractual damages, including attorney's fees, from an insurer in a first party dispute over payment of insurance benefits.

**FIFTH AFFIRMATIVE DEFENSE**

To the extent Plaintiff's Complaint seeks or is construed as seeking, to recover bad faith penalties and attorney's fees under O.C.G.A. § 33-4-6 against State Farm, such remedies are not available to Plaintiff, as Plaintiff failed to satisfy the substantive and/or procedural requirements for making a claim for bad faith, as required under O.C.G.A. § 33-4-6.

**SIXTH AFFIRMATIVE DEFENSE**

Plaintiff may not recover for any damage to real or personal property under the subject insurance policy and applicable Georgia law to the extent that the damages are excluded by the Policy.

**SEVENTH AFFIRMATIVE DEFENSE**

To the extent Plaintiff is entitled to any recovery under the Policy, which State Farm denies, Plaintiff's recovery is limited by the coverage limits and **SECTION I – LOSS SETTLEMENT** provisions of the insurance Policy.

### EIGHTH AFFIRMATIVE DEFENSE

Even if Plaintiff was entitled to recover under her Complaint, which State Farm denies, Plaintiff is unable to recover the damages as set forth in her Complaint because this amount does not reflect the reasonable and necessary costs to repair the damage to the Property resulting from a covered cause of loss.

### NINTH AFFIRMATIVE DEFENSE

To the extent Plaintiff seeks to recover pursuant to any alleged violation of Georgia's Unfair Settlement Practices Act, Plaintiff is legally prohibited from doing so as the Act does not create or imply any private cause of action. See O.C.G.A. § 33-6-37.

### TENTH AFFIRMATIVE DEFENSE

Plaintiff may not recover from Defendant on the basis that Plaintiff failed to mitigate her damages in accordance with Georgia law.

### ELEVENTH AFFIRMATIVE DEFENSE

To the extent Plaintiff seeks to recover replacement cost benefits, Plaintiff has not satisfied the contractual requirements to recover these benefits pursuant to the terms of the Policy and applicable law.

### TWELFTH AFFIRMATIVE DEFENSE

To the extent that Plaintiff attempts to impose duties upon Defendant aside from those set forth in the insurance contract, Plaintiff fails in both fact and law. Georgia law does not impose extra-contractual duties on insurers when adjusting claims asserted by insureds. Moreover, at all times relevant hereto, State Farm acted in good faith and in accordance with the terms and conditions of the Policy.

## <u>THIRTEENTH AFFIRMATIVE DEFENSE</u>

Plaintiff is barred from recovery on the basis of waiver and/or estoppel.

## <u>FOURTEENTH AFFIRMATIVE DEFENSE</u>

Plaintiff is not entitled to additional living expenses to the extent Plaintiff has not incurred any additional expenses as a direct result of any covered cause of loss, and or failed to satisfy any other condition of the requirements under the Loss of Use provision under the Policy. Specifically, the Policy provides:

### SECTION I – PROPERTY COVERAGES
. . .
### COVERAGE C – LOSS OF USE

The most we will pay for the sum of all losses combined under Additional Living Expenses, Fair Rental Value, and Prohibited Use is the limit shown in the Declarations for Coverage C – Loss of Use

1. Additional Living Expenses. When a loss insured causes the residence premises to become uninhabitable, we will pay the reasonable and necessary increase in cost incurred by an insured to maintain their normal standard of living for up to 24 months. Our payment is limited to incurred costs for the shortest of:
   a. the time required to repair or replace the premises;
   b. the time required for your household to settle elsewhere; or
   c. 24 months.
This period of time is not limited by the expiration of the policy.

We will not pay more than the limit of liability shown in the Declarations for Coverage C – Loss of Use. Any normal expenses that are reduced or discontinued due to a loss insured will be subtracted from any amount owed.

## <u>FIFTEENTH AFFIRMATIVE DEFENSE</u>

To the extent Plaintiff is entitled to recover from State Farm, which State Farm expressly denies, State Farm is entitled to a set-off of any amounts already paid by State Farm for the subject loss.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiff may not recover for any damage to personal property under the subject insurance policy and applicable Georgia law to the extent that the damages are not the result of a named peril for which coverage is provided under the Policy and/or which are excluded by the policy.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiff is unable to recover for any damages that did not result from accidental direct physical loss as required by the policy. Specifically, the Policy provides:

### SECTION I – LOSSES INSURED

**COVERAGE A – DWELLING**
We will pay for accidental direct physical loss to the property described in Coverage A, unless the loss is excluded or limited in SECTION I – LOSSES NOT INSURED or otherwise excluded or limited in this policy. However, loss does not include and we will not pay for, any diminution in value.

**COVERAGE B – PERSONAL PROPERTY**
We will pay for accidental direct physical loss to the property described in Coverage B caused by the following perils, unless the loss is excluded or limited in SECTION I – LOSSES NOT INSURED or otherwise excluded or limited in this policy. However, loss does not include and we will not pay for, any diminution in value[.]

## EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiff may not maintain this action against Defendant because Plaintiff failed to satisfy the conditions precedent to bringing suit set forth in the insurance policy issued by Defendant to Plaintiff. Specifically, the policy provides:

### SECTION I – CONDITIONS

. . .
6. **Suit Against Us**. No action will be brought against us unless there has been full compliance with all of the policy provisions. Any action by any party must be started within one year after the date of loss or damage[.]

## NINETEENTH AFFIRMATIVE DEFENSE

Plaintiff may not maintain this action against Defendant because Plaintiff did not satisfy the duties after loss provisions in accordance with the policy requirements. Specifically, the Policy provides:

### SECTION I – CONDITIONS

. . .

2. **Your Duties After Loss**. After a loss to which this insurance may apply, you must cooperate with us in the investigation of the claim and also see that the following duties are performed:

    a. give immediate notice to us or our agent, and also notify:

        (1) the policy if the loss is caused by theft, vandalism, or any other criminal act and

        (2) the credit card company or bank if the loss involves a credit card or bank fund transfer card;

    b. protect the property from further damage or loss, and also:

        (1) make reasonable and necessary temporary repairs required to protect the property; and

        (2) keep an accurate record of repair expenses;

    c. prepare an inventory of damaged or stolen personal property:

        (1) showing in detail the quantity, description, age, replacement cost, and amount of loss; and

        (2) attaching all bills, receipts, and related documents that substantiate the figures in the inventory;

    d. as often as we reasonably require:

        (1) exhibit the damaged property;

        (2) provide us with any requested records and documents and allow us to make copies;

        (3) while not in the presence of any other insured:

            (a) give statements; and

            (b) submit to examinations under oath; and

        (4) produce employees, members of the insured's household, or others for examination under oath to the extent it is within the insured's power to do so; and

    e. submit to us within 60 days after the loss, your signed, sworn proof of loss that sets forth, to the best of your knowledge and belief:

        (1) the time and cause of loss;

        (2) interest of the insured and all others in the property involved and all encumbrances on the property;

        (3) other insurance which may cover the loss;

        (4) changes in title or occupancy of the property during the terms of this policy;

(5) specifications of any damaged building and detailed estimates for repair of the damage;

(6) an inventory of damaged personal property described in 2.c.;

(7) receipts for additional living expenses incurred and records supporting the fair rental value loss; and

(8) evidence of affidavit supporting a claim under SECTION I – ADDITIONAL COVERAGES, Credit Card, Bank Fund Transfer Card, Forgery, and Counterfeit Money coverage, stating the amount and cause of loss.

## TWENTIETH AFFIRMATIVE DEFENSE

Defendant responds to the specific allegations of Plaintiff's Complaint as follows:

## PARTIES

1.

Upon information and belief, in response to Paragraph 1 of Plaintiff's Complaint, Defendant admits that Plaintiff is a resident of Woodstock, Georgia. Defendant further admits that it issued Policy Number 11-EP-C184-1 (the "Policy") to Plaintiff for the property located at 121 River Park Xing, Woodstock, Georgia (the "Property"). Defendant responds further that the terms and provisions of the Policy and applicable Georgia law speak for themselves and denies all allegations contained in Paragraph 1 in direct contradiction thereto. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 1 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that the Policy provided unrestricted and/or unfettered insurance coverage, as all coverage under the Policy is subject to the terms and conditions of the Policy and applicable Georgia law.

2.

In response to the allegations contained in Paragraph 2 of Plaintiff's Complaint, Defendant admits only that it is a foreign insurance company, authorized to transact business in the State of Georgia, and in the business of selling insurance policies and that its registered agent

is located at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 2 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that the insurance policy issued by Defendant provides unfettered and/or unrestricted insurance coverage. All coverage provided is subject to the terms and provisions of the Policy and applicable Georgia law.

## JURISDICTION AND VENUE

3.

In response to the allegations contained in Paragraph 3 of Plaintiff's Complaint, Defendant admits only that the State Court of Gwinnett County has jurisdiction over this matter and that the State Court of Gwinnett County is a proper venue in which to bring this matter, but denies all remaining allegations contained in Paragraph 3 of Plaintiff's Complaint, including, but not limited to, any allegations that the State Court of Gwinnett County is the only court having jurisdiction over this matter, that the State Court of Gwinnett County is the only venue in which this matter could be brought, and any allegations that Defendant breached its contract with Plaintiffs or otherwise acted in bad faith.

## FACTUAL BACKGROUND

4.

In response to the allegations contained in Paragraph 4 of Plaintiff's Complaint, Defendant admits only that the Plaintiff notified Defendant of the alleged water damage to the Property. Defendant admits further that Plaintiff made a claim pursuant to the Policy for the alleged water damage to the Property. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 4 of Plaintiff's Complaint are denied.

5.

Upon information and belief, Defendant admits only that Plaintiff retained Large Loss Public Adjuster, LLC as her public adjuster, and E&S Restoration Services to perform certain services at the Property. Except as otherwise herein admitted, all allegations contained in Paragraph 5 of Plaintiff's Complaint are herein denied.

6.

Defendant denies all allegations contained Paragraph 6 of Plaintiff's Complaint.

7.

All allegations contained in Paragraph 7 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant failed to issue payment for covered damages to the Property pursuant to the terms and provisions of the Policy and applicable Georgia law, and that Defendant acted in bad faith in adjustment and handling of the Plaintiff's claim.

8.

All allegations contained in Paragraph 8 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant failed to issue payment for covered damages to the Property pursuant to the terms and provisions of the Policy and applicable Georgia law, and that Defendant acted in bad faith in adjustment and handling of the Plaintiff's claim.

9.

In response to the allegations contained in Paragraph 9 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications

speak for themselves and denies any allegations contained in Paragraph 9 in direct contravention thereto. By admitting the communications occurred, Defendant is not admitting that the statements made therein are truthful or correct. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 9 of Plaintiff's Complaint are denied.

10.

In response to the allegations contained in Paragraph 10 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 10 in direct contravention thereto. By admitting the communications occurred, Defendant is not admitting that the statements made therein are truthful or correct. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 10 of Plaintiff's Complaint are denied., including but not limited to that the documents submitted to Defendant represented the reasonable and necessary amount to repair the Property.

11.

In response to the allegations contained in Paragraph 11 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 11 in direct contravention thereto. By admitting the communications occurred, Defendant is not admitting that the statements made therein are truthful or correct. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 11 of Plaintiff's Complaint are denied.

12.

In response to the allegations contained in Paragraph 12 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 12 in direct contravention thereto. By admitting the communications occurred, Defendant is not admitting that the statements made therein are truthful or correct.  Except as otherwise herein admitted, all remaining allegations contained in Paragraph 12 of Plaintiff's Complaint are denied.

13.

In response to the allegations contained in Paragraph 13 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 13 in direct contravention thereto. By admitting the communications occurred, Defendant is not admitting that the statements made therein are truthful or correct. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 13 of Plaintiff's Complaint are denied.

14.

In response to the allegations contained in Paragraph 14 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 14 in direct contravention thereto. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 14 of Plaintiff's Complaint are denied.

15.

In response to the allegations contained in Paragraph 15 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 15 in direct contravention thereto. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 15 of Plaintiff's Complaint are denied.

16.

In response to the allegations contained in Paragraph 16 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 16 in direct contravention thereto. By admitting the communications occurred, Defendant is not admitting that the statements made therein are truthful or correct. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 16 of Plaintiff's Complaint are denied.

17.

In response to the allegations contained in Paragraph 17 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 17 in direct contravention thereto. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 17 of Plaintiff's Complaint are denied.

18.

In response to the allegations contained in Paragraph 18 of Plaintiff's Complaint, Defendant admits only that Defendant retained HVACi in connection with the adjustment of Plaintiff's claim for water damage to the Property. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 18 of Plaintiff's Complaint are denied.

19.

In response to the allegations contained in Paragraph 19 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 19 in direct contravention thereto. By admitting the communications occurred, Defendant is not admitting that the statements made therein are truthful or correct. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 19 of Plaintiff's Complaint are denied.

20.

In response to the allegations contained in Paragraph 20 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 20 in direct contravention thereto. By admitting the communications occurred, Defendant is not admitting that the statements made therein are truthful or correct. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 20 of Plaintiff's Complaint are denied.

21.

In response to the allegations contained in Paragraph 21 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 21 in direct contravention thereto. By admitting the communications occurred, Defendant is not admitting that the statements made therein are truthful or correct. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 21 of Plaintiff's Complaint are denied, including but not limited to that Defendant failed to issue payment for covered damages to the Property pursuant to the terms and provisions of the Policy and applicable Georgia law.

22.

In response to the allegations contained in Paragraph 22 of Plaintiff's Complaint, Defendant admits only that Defendant retained StrikeCheck in connection with the adjustment of Plaintiff's claim for water damage to the Property. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 22 of Plaintiff's Complaint are denied.

23.

Defendant is without sufficient information to admit the allegations contained in Paragraph 23 of Plaintiff's Complaint, therefore all allegations contained in Paragraph 23 of Plaintiff's Complaint are denied.

24.

Defendant denies all allegations contained in Paragraph 24 of Plaintiff's Complaint.

25.

Defendant denies all allegations contained in Paragraph 24 of Plaintiff's Complaint.

- 14 -

26.

Defendant denies all allegations contained in Paragraph 26 of Plaintiff's Complaint.

27.

Defendant is without sufficient information to admit the allegations contained in Paragraph 27 of Plaintiff's Complaint, therefore all allegations contained in Paragraph 27 of Plaintiff's Complaint are denied.

28.

Defendant is without sufficient information to admit the allegations contained in Paragraph 28 of Plaintiff's Complaint, therefore all allegations contained in Paragraph 28 of Plaintiff's Complaint are denied.

29.

Defendant is without sufficient information to admit the allegations contained in Paragraph 29 of Plaintiff's Complaint, therefore all allegations contained in Paragraph 29 of Plaintiff's Complaint are denied.

30.

Defendant is without sufficient information to admit the allegations contained in Paragraph 30 of Plaintiff's Complaint, therefore all allegations contained in Paragraph 30 of Plaintiff's Complaint are denied.

31.

In response to the allegations contained in Paragraph 31 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 31 in direct

contravention thereto. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 31 of Plaintiff's Complaint are denied.

32.

In response to the allegations contained in Paragraph 32 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 32 in direct contravention thereto. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 32 of Plaintiff's Complaint are denied.

33.

All allegations contained in Paragraph 33 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant failed to issue payment for covered damages to the Property pursuant to the terms and provisions of the Policy and applicable Georgia law, and that Defendant acted in bad faith in adjustment and handling of the Plaintiff's claim.

34.

Defendant is without sufficient information to admit the allegations contained in Paragraph 34 of Plaintiff's Complaint, therefore all allegations contained in Paragraph 34 of Plaintiff's Complaint are denied.

35.

Defendant is without sufficient information to admit the allegations contained in Paragraph 35 of Plaintiff's Complaint, therefore all allegations contained in Paragraph 35 of Plaintiff's Complaint are denied.

36.

Defendant is without sufficient information to admit the allegations contained in Paragraph 36 of Plaintiff's Complaint, therefore all allegations contained in Paragraph 36 of Plaintiff's Complaint are denied.

37.

Defendant is without sufficient information to admit the allegations contained in Paragraph 37 of Plaintiff's Complaint, therefore all allegations contained in Paragraph 37 of Plaintiff's Complaint are denied.

38.

All allegations contained in Paragraph 38 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant failed to issue payment for covered damages to the Property pursuant to the terms and provisions of the Policy and applicable Georgia law, and that Defendant acted in bad faith in adjustment and handling of the Plaintiff's claim.

39.

Defendant admits the allegations contained in Paragraph 39 of Plaintiff's Complaint but states that Defendant provided Plaintiff with a copy of the insurance Policy that was in effect at the time of the loss.

40.

Defendant admits the allegations contained in Paragraph 40 of Plaintiff's Complaint.

41.

In response to the allegations contained in Paragraph 41 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff

exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 41 in direct contravention thereto. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 41 of Plaintiff's Complaint are denied.

42.

All allegations contained in Paragraph 42 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant failed to issue payment for covered damages to the Property pursuant to the terms and provisions of the Policy and applicable Georgia law, and that Defendant acted in bad faith in adjustment and handling of the Plaintiff's claim.

43.

Defendant is without sufficient information to admit the allegations contained in Paragraph 43 of Plaintiff's Complaint, therefore all allegations contained in Paragraph 43 of Plaintiff's Complaint are denied.

44.

All allegations contained in Paragraph 44 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant failed to issue payment for covered damages to the Property pursuant to the terms and provisions of the Policy and applicable Georgia law, and that Defendant acted in bad faith in adjustment and handling of the Plaintiff's claim.

45.

In response to the allegations contained in Paragraph 45 of Plaintiff's Complaint, Defendant admits that Plaintiff's representative provided an incomplete Proof of

Loss to is on or about February 10, 2022. Except as herein admitted, all remaining allegations contained in Paragraph 45 of Plaintiff's Complaint are denied.

46.

In response to the allegations contained in Paragraph 46 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 46 in direct contravention thereto. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 46 of Plaintiff's Complaint are denied.

47.

In response to the allegations contained in Paragraph 47 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 47 in direct contravention thereto. By admitting the communications occurred, Defendant is not admitting that the statements made therein are truthful or correct. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 47 of Plaintiff's Complaint are denied.

48.

In response to the allegations contained in Paragraph 48 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 48 in direct

contravention thereto. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 48 of Plaintiff's Complaint are denied.

49.

All allegations contained in Paragraph 49 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant failed to issue payment for covered damages to the Property pursuant to the terms and provisions of the Policy and applicable Georgia law, and that Defendant acted in bad faith in adjustment and handling of the Plaintiff's claim.

50.

Defendant admits the allegations contained in Paragraph 50 of Plaintiff's Complaint.

51.

In response to the allegations contained in Paragraph 51 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 51 in direct contravention thereto. By admitting the communications occurred, Defendant is not admitting that the statements made therein are truthful or correct. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 51 of Plaintiff's Complaint are denied.

52.

In response to the allegations contained in Paragraph 52 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 52 in direct

contravention thereto. By admitting the communications occurred, Defendant is not admitting that the statements made therein are truthful or correct. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 52 of Plaintiff's Complaint are denied.

53.

In response to the allegations contained in Paragraph 53 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 53 in direct contravention thereto. By admitting the communications occurred, Defendant is not admitting that the statements made therein are truthful or correct. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 53 of Plaintiff's Complaint are denied.

54.

In response to the allegations contained in Paragraph 54 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 54 in direct contravention thereto. By admitting the communications occurred, Defendant is not admitting that the statements made therein are truthful or correct. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 54 of Plaintiff's Complaint are denied.

55.

In response to the allegations contained in Paragraph 55 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications

speak for themselves and denies any allegations contained in Paragraph 55 in direct contravention thereto. By admitting the communications occurred, Defendant is not admitting that the statements made therein are truthful or correct. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 55 of Plaintiff's Complaint are denied.

56.

In response to the allegations contained in Paragraph 56 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 56 in direct contravention thereto. By admitting the communications occurred, Defendant is not admitting that the statements made therein are truthful or correct. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 56 of Plaintiff's Complaint are denied.

57.

In response to the allegations contained in Paragraph 50 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 50 in direct contravention thereto. By admitting the communications occurred, Defendant is not admitting that the statements made therein are truthful or correct. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 50 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant failed to issue payment for covered damages to the Property pursuant to the terms and provisions of the Policy and applicable Georgia law, and that Defendant acted in bad faith in adjustment and handling of the Plaintiff's claim.

- 22 -

58.

All allegations contained in Paragraph 58 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant failed to issue payment for covered damages to the Property pursuant to the terms and provisions of the Policy and applicable Georgia law, and that Defendant acted in bad faith in adjustment and handling of the Plaintiff's claim.

59.

In response to the allegations contained in Paragraph 59 of Plaintiff's Complaint, Defendant admits only that Defendant prepared estimates for the covered damage to the Property and that the estimate forms contain the language cited in Plaintiff's Complaint, but states that the estimates speak for themselves and must be read in their entirety, and denies any allegations contained in Paragraph 59 in direct contravention thereto. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 59 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant failed to issue payment for covered damages to the Property pursuant to the terms and provisions of the Policy and applicable Georgia law, and that Defendant acted in bad faith in adjustment and handling of the Plaintiff's claim.

60.

All allegations contained in Paragraph 60 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant failed to issue payment for covered damages to the Property pursuant to the terms and provisions of the Policy and applicable Georgia law, and that Defendant acted in bad faith in adjustment and handling of the Plaintiff's claim.

61.

In response to the allegations contained in Paragraph 61 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 61 in direct contravention thereto. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 61 of Plaintiff's Complaint are denied.

62.

In response to the allegations contained in Paragraph 62 of Plaintiff's Complaint, Defendant admits only that Defendant prepared estimates for the covered damage to the Property, but states that the estimates speak for themselves and denies any allegations contained in Paragraph 62 in direct contravention thereto. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 62 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant failed to issue payment for covered damages to the Property pursuant to the terms and provisions of the Policy and applicable Georgia law, and that Defendant acted in bad faith in adjustment and handling of the Plaintiff's claim.

63.

In response to the allegations contained in Paragraph 63 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 63 in direct contravention thereto. By admitting the communications occurred, Defendant is not admitting

that the statements made therein are truthful or correct. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 63 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant failed to issue payment for covered damages to the Property pursuant to the terms and provisions of the Policy and applicable Georgia law, and that Defendant acted in bad faith in adjustment and handling of the Plaintiff's claim.

64.

In response to the allegations contained in Paragraph 64 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 64 in direct contravention thereto. By admitting the communications occurred, Defendant is not admitting that the statements made therein are truthful or correct. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 64 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant failed to issue payment for covered damages to the Property pursuant to the terms and provisions of the Policy and applicable Georgia law, that Defendant failed to conduct a full and thorough investigation of Plaintiff's Claim, and that Defendant acted in bad faith in adjustment and handling of the Plaintiff's claim.

65.

In response to the allegations contained in Paragraph 65 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 65 in direct contravention thereto. Except as otherwise herein admitted, all remaining allegations

contained in Paragraph 65 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant failed to issue payment for covered damages to the Property pursuant to the terms and provisions of the Policy and applicable Georgia law, and that Defendant acted in bad faith in adjustment and handling of the Plaintiff's claim.

66.

In response to the allegations contained in Paragraph 66 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 66 in direct contravention thereto. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 66 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant failed to issue payment for covered damages to the Property pursuant to the terms and provisions of the Policy and applicable Georgia law, that Defendant failed to provide the full and complete HVAC evaluation report to Plaintiff, and that Defendant acted in bad faith in adjustment and handling of the Plaintiff's claim.

67.

In response to the allegations contained in Paragraph 67 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 67 in direct contravention thereto. By admitting the communications occurred, Defendant is not admitting that the statements made therein are truthful or correct. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 67 of Plaintiff's Complaint are denied, including,

but not limited to, any allegations that Defendant failed to issue payment for covered damages to the Property pursuant to the terms and provisions of the Policy and applicable Georgia law, and that Defendant acted in bad faith in adjustment and handling of the Plaintiff's claim.

68.

All allegations contained in Paragraph 68 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant failed to issue payment for covered damages to the Property pursuant to the terms and provisions of the Policy and applicable Georgia law, and that Defendant acted in bad faith in adjustment and handling of the Plaintiff's claim.

69.

In response to the allegations contained in Paragraph 69 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 69 in direct contravention thereto. By admitting the communications occurred, Defendant is not admitting that the statements made therein are truthful or correct. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 69 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant failed to issue payment for covered damages to the Property pursuant to the terms and provisions of the Policy and applicable Georgia law, and that Defendant acted in bad faith in adjustment and handling of the Plaintiff's claim.

70.

In response to the allegations contained in Paragraph 70 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff

exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 70 in direct contravention thereto. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 70 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant failed to issue payment for covered damages to the Property pursuant to the terms and provisions of the Policy and applicable Georgia law, and that Defendant acted in bad faith in adjustment and handling of the Plaintiff's claim.

71.

In response to the allegations contained in Paragraph 71 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 71 in direct contravention thereto. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 71 of Plaintiff's Complaint are denied.

72.

In response to the allegations contained in Paragraph 72 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 72 in direct contravention thereto. By admitting the communications occurred, Defendant is not admitting that the statements made therein are truthful or correct. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 72 of Plaintiff's Complaint are denied.

73.

In response to the allegations contained in Paragraph 73 of Plaintiff's Complaint, Defendant admits only that Plaintiff permitted Defendant to inspect Plaintiff's personal property items, but states that Defendant was unable to complete its inspection due to weather conditions and conditions at the storage facility. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 73 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant failed to issue payment for covered damages to the Property pursuant to the terms and provisions of the Policy and applicable Georgia law, and that Defendant acted in bad faith in adjustment and handling of the Plaintiff's claim.

74.

In response to the allegations contained in Paragraph 74 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 74 in direct contravention thereto. By admitting the communications occurred, Defendant is not admitting that the statements made therein are truthful or correct. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 74 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant failed to issue payment for covered damages to the Property pursuant to the terms and provisions of the Policy and applicable Georgia law, and that Defendant acted in bad faith in adjustment and handling of the Plaintiff's claim.

75.

In response to the allegations contained in Paragraph 75 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff

exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 75 in direct contravention thereto. By admitting the communications occurred, Defendant is not admitting that the statements made therein are truthful or correct. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 75 of Plaintiff's Complaint are denied.

76.

In response to the allegations contained in Paragraph 76 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 76 in direct contravention thereto. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 76 of Plaintiff's Complaint are denied.

77.

In response to the allegations contained in Paragraph 77 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 77 in direct contravention thereto. By admitting the communications occurred, Defendant is not admitting that the statements made therein are truthful or correct. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 77 of Plaintiff's Complaint are denied.

78.

In response to the allegations contained in Paragraph 78 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff

exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 78 in direct contravention thereto. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 78 of Plaintiff's Complaint are denied.

79.

In response to the allegations contained in Paragraph 79 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 79 in direct contravention thereto. By admitting the communications occurred, Defendant is not admitting that the statements made therein are truthful or correct. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 79 of Plaintiff's Complaint are denied.

80.

In response to the allegations contained in Paragraph 80 of Plaintiff's Complaint, Defendant admits only that Plaintiff permitted Defendant to inspect Plaintiff's personal property items, but states that Defendant was unable to complete its inspection due to weather conditions and conditions at the storage facility. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 80 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant failed to issue payment for covered damages to the Property pursuant to the terms and provisions of the Policy and applicable Georgia law, and that Defendant acted in bad faith in adjustment and handling of the Plaintiff's claim.

81.

In response to the allegations contained in Paragraph 81 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 81 in direct contravention thereto. By admitting the communications occurred, Defendant is not admitting that the statements made therein are truthful or correct. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 81 of Plaintiff's Complaint are denied.

82.

In response to the allegations contained in Paragraph 82 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 82 in direct contravention thereto. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 82 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant failed to issue payment for covered damages to the Property pursuant to the terms and provisions of the Policy and applicable Georgia law, and that Defendant acted in bad faith in adjustment and handling of the Plaintiff's claim.

83.

In response to the allegations contained in Paragraph 83 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications

speak for themselves and denies any allegations contained in Paragraph 83 in direct contravention thereto. By admitting the communications occurred, Defendant is not admitting that the statements made therein are truthful or correct. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 83 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant failed to issue payment for covered damages to the Property pursuant to the terms and provisions of the Policy and applicable Georgia law, that Defendant failed to complete a full and thorough investigation of Plaintiff's Claim, and that Defendant acted in bad faith in adjustment and handling of the Plaintiff's claim.

84.

In response to the allegations contained in Paragraph 84 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 84 in direct contravention thereto. By admitting the communications occurred, Defendant is not admitting that the statements made therein are truthful or correct. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 84 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant failed to issue payment for covered damages to the Property pursuant to the terms and provisions of the Policy and applicable Georgia law, that Defendant failed to complete a full and thorough investigation of Plaintiff's Claim, and that Defendant acted in bad faith in adjustment and handling of the Plaintiff's claim.

85.

In response to the allegations contained in Paragraph 85 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff

exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 85 in direct contravention thereto. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 85 of Plaintiff's Complaint are denied.

86.

In response to the allegations contained in Paragraph 86 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 86 in direct contravention thereto. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 86 of Plaintiff's Complaint are denied.

87.

In response to the allegations contained in Paragraph 87 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 87 in direct contravention thereto. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 87 of Plaintiff's Complaint are denied.

88.

In response to the allegations contained in Paragraph 88 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 88 in direct

contravention thereto. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 88 of Plaintiff's Complaint are denied.

89.

In response to the allegations contained in Paragraph 89 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 89 in direct contravention thereto. By admitting the communications occurred, Defendant is not admitting that the statements made therein are truthful or correct. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 89 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant failed to issue payment for covered damages to the Property pursuant to the terms and provisions of the Policy and applicable Georgia law, that Defendant failed to complete a full and thorough investigation of Plaintiff's Claim, and that Defendant acted in bad faith in adjustment and handling of the Plaintiff's claim.

90.

In response to the allegations contained in Paragraph 90 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 90 in direct contravention thereto. By admitting the communications occurred, Defendant is not admitting that the statements made therein are truthful or correct. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 90 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant failed to issue payment for covered damages to

the Property pursuant to the terms and provisions of the Policy and applicable Georgia law, and that Defendant acted in bad faith in adjustment and handling of the Plaintiff's claim.

91.

In response to the allegations contained in Paragraph 91 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications and Defendant's estimate for the repair of the covered damages to Plaintiff's Property speaks for themselves and denies any allegations contained in Paragraph 91 in direct contravention thereto. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 91 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant failed to issue payment for covered damages to the Property pursuant to the terms and provisions of the Policy and applicable Georgia law, and that Defendant acted in bad faith in adjustment and handling of the Plaintiff's claim.

92.

In response to the allegations contained in Paragraph 92 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 92 in direct contravention thereto. By admitting the communications occurred, Defendant is not admitting that the statements made therein are truthful or correct. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 92 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant failed to issue payment for covered damages to the Property pursuant to the terms and provisions of the Policy and applicable Georgia law, that

- 36 -

Defendant failed to complete a full and thorough investigation of Plaintiff's Claim, and that Defendant acted in bad faith in adjustment and handling of the Plaintiff's claim.

93.

In response to the allegations contained in Paragraph 93 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 93 in direct contravention thereto. By admitting the communications occurred, Defendant is not admitting that the statements made therein are truthful or correct. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 93 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant failed to issue payment for covered damages to the Property pursuant to the terms and provisions of the Policy and applicable Georgia law, and that Defendant acted in bad faith in adjustment and handling of the Plaintiff's claim.

94.

All allegations contained in Paragraph 68 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant failed to issue payment for covered damages to the Property pursuant to the terms and provisions of the Policy and applicable Georgia law, that Defendant failed to complete a full and thorough investigation of Plaintiff's Claim, and that Defendant acted in bad faith in adjustment and handling of the Plaintiff's claim.

95.

In response to the allegations contained in Paragraph 95 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff

exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 95 in direct contravention thereto. By admitting the communications occurred, Defendant is not admitting that the statements made therein are truthful or correct. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 95 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant failed to issue payment for covered damages to the Property pursuant to the terms and provisions of the Policy and applicable Georgia law, that Defendant failed to complete a full and thorough investigation of Plaintiff's Claim, and that Defendant acted in bad faith in adjustment and handling of the Plaintiff's claim.

96.

In response to the allegations contained in Paragraph 96 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 96 in direct contravention thereto. By admitting the communications occurred, Defendant is not admitting that the statements made therein are truthful or correct. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 96 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant failed to issue payment for covered damages to the Property pursuant to the terms and provisions of the Policy and applicable Georgia law, that Defendant failed to complete a full and thorough investigation of Plaintiff's Claim, and that Defendant acted in bad faith in adjustment and handling of the Plaintiff's claim.

97.

In response to the allegations contained in Paragraph 97 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 97 in direct contravention thereto. By admitting the communications occurred, Defendant is not admitting that the statements made therein are truthful or correct. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 97 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant failed to issue payment for covered damages to the Property pursuant to the terms and provisions of the Policy and applicable Georgia law, that Defendant failed to complete a full and thorough investigation of Plaintiff's Claim, and that Defendant acted in bad faith in adjustment and handling of the Plaintiff's claim.

98.

In response to the allegations contained in Paragraph 98 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 98 in direct contravention thereto. By admitting the communications occurred, Defendant is not admitting that the statements made therein are truthful or correct. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 98 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant failed to issue payment for covered damages to the Property pursuant to the terms and provisions of the Policy and applicable Georgia law, that

Defendant failed to complete a full and thorough investigation of Plaintiff's Claim, and that Defendant acted in bad faith in adjustment and handling of the Plaintiff's claim.

99.

In response to the allegations contained in Paragraph 99 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 99 in direct contravention thereto. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 99 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant failed to issue payment for covered damages to the Property pursuant to the terms and provisions of the Policy and applicable Georgia law, that Defendant failed to complete a full and thorough investigation of Plaintiff's Claim, and that Defendant acted in bad faith in adjustment and handling of the Plaintiff's claim.

100.

In response to the allegations contained in Paragraph 100 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 100 in direct contravention thereto. By admitting the communications occurred, Defendant is not admitting that the statements made therein are truthful or correct. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 100 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant failed to issue payment for covered damages to the Property pursuant to the terms and provisions of the Policy and applicable Georgia law, that

- 40 -

Defendant failed to complete a full and thorough investigation of Plaintiff's Claim, and that Defendant acted in bad faith in adjustment and handling of the Plaintiff's claim.

101.

In response to the allegations contained in Paragraph 101 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 101 in direct contravention thereto. By admitting the communications occurred, Defendant is not admitting that the statements made therein are truthful or correct. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 101 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant failed to issue payment for covered damages to the Property pursuant to the terms and provisions of the Policy and applicable Georgia law, that Defendant failed to complete a full and thorough investigation of Plaintiff's Claim, and that Defendant acted in bad faith in adjustment and handling of the Plaintiff's claim.

102.

In response to the allegations contained in Paragraph 102 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 102 in direct contravention thereto. By admitting the communications occurred, Defendant is not admitting that the statements made therein are truthful or correct. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 102 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant failed to issue payment for covered damages to

the Property pursuant to the terms and provisions of the Policy and applicable Georgia law, that Defendant failed to complete a full and thorough investigation of Plaintiff's Claim, and that Defendant acted in bad faith in adjustment and handling of the Plaintiff's claim.

103.

In response to the allegations contained in Paragraph 103 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 103 in direct contravention thereto. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 103 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant failed to issue payment for covered damages to the Property pursuant to the terms and provisions of the Policy and applicable Georgia law, that Defendant failed to complete a full and thorough investigation of Plaintiff's Claim, and that Defendant acted in bad faith in adjustment and handling of the Plaintiff's claim.

104.

In response to the allegations contained in Paragraph 104 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 104 in direct contravention thereto. By admitting the communications occurred, Defendant is not admitting that the statements made therein are truthful or correct. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 104 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant failed to issue payment for covered damages to

the Property pursuant to the terms and provisions of the Policy and applicable Georgia law, that Defendant failed to complete a full and thorough investigation of Plaintiff's Claim, and that Defendant acted in bad faith in adjustment and handling of the Plaintiff's claim.

105.

In response to the allegations contained in Paragraph 105 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 105 in direct contravention thereto. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 105 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant failed to issue payment for covered damages to the Property pursuant to the terms and provisions of the Policy and applicable Georgia law, that Defendant failed to complete a full and thorough investigation of Plaintiff's Claim, and that Defendant acted in bad faith in adjustment and handling of the Plaintiff's claim.

106.

In response to the allegations contained in Paragraph 106 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 106 in direct contravention thereto. By admitting the communications occurred, Defendant is not admitting that the statements made therein are truthful or correct. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 106 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant failed to issue payment for covered damages to

the Property pursuant to the terms and provisions of the Policy and applicable Georgia law, that Defendant failed to complete a full and thorough investigation of Plaintiff's Claim, and that Defendant acted in bad faith in adjustment and handling of the Plaintiff's claim.

107.

In response to the allegations contained in Paragraph 107 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 107 in direct contravention thereto. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 107 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant failed to issue payment for covered damages to the Property pursuant to the terms and provisions of the Policy and applicable Georgia law, that Defendant failed to complete a full and thorough investigation of Plaintiff's Claim, and that Defendant acted in bad faith in adjustment and handling of the Plaintiff's claim.

108.

In response to the allegations contained in Paragraph 108 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 108 in direct contravention thereto. By admitting the communications occurred, Defendant is not admitting that the statements made therein are truthful or correct. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 108 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant failed to issue payment for covered damages to

the Property pursuant to the terms and provisions of the Policy and applicable Georgia law, that

Defendant failed to complete a full and thorough investigation of Plaintiff's Claim, and that

Defendant acted in bad faith in adjustment and handling of the Plaintiff's claim.

## COUNT I – BREACH OF CONTRACT

109.

Defendant denies all allegations contained in Count I of Plaintiff's Complaint.

110.

Defendant denies all allegations contained in Plaintiff's Prayer for Relief.

111.

Except as otherwise herein admitted, Defendant denies all remaining allegations

contained in Plaintiff's Complaint.

WHEREFORE, having fully answered, Defendant respectfully requests that this Court:

(a) Deny Plaintiff's prayer for damages;

(b) Dismiss this action with prejudice and cast all costs upon Plaintiff; and

(c) Award Defendant any other relief that this Court deems just and equitable.

Respectfully submitted this 27th day of January, 2023.

SWIFT, CURRIE, McGHEE & HIERS, LLP

*/s/ Brittney A. Sizemore*
Mark T. Dietrichs
Georgia Bar No. 221722
Brittney A. Sizemore
Georgia Bar No. 332873
***Attorneys for Defendant***

1420 Peachtree Street, NE,Suite 800
Atlanta, GA  30309
OFF:   (404) 874-8800
FAX:  (404) 888-6199
Mark.dietrichs@swiftcurrie.com
Brittney.Sizemore@swiftcurrie.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I have electronically filed the foregoing ***State Farm Fire and Casualty Company Answer and Affirmative Defenses*** with the Clerk of Court using the Odyssey e-filing system, which will automatically send e-mail notification and service of such filing to counsel of record follows:

Ryan Baxter
Baxter Law Firm, LLC
2400 Herodian Way, Suite 220
Smyrna, Georgia 30080
ryan@baxlegal.com
*Counsel for Plaintiff*

This 27th day of January, 2023.

SWIFT, CURRIE, McGHEE & HIERS, LLP

*/s/ Brittney A. Sizemore*
Mark T. Dietrichs
Georgia Bar No. 221722
Brittney A. Sizemore
Georgia Bar No. 332873
***Attorneys for Defendant***

1420 Peachtree Street, NE
Suite 800
Atlanta, GA   30309
Tel:    (404) 874-8800
Fax:    (404) 888-6199
Mark.dietrichs@swiftcurrie.com
Brittney.sizemore@swiftcurrie.com

4885-4170-0935, v. 1

- 46 -

IN THE STATE COURT OF GWINNETT COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| CONNIE AMAYA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE |
| | ) | NO.  22-C-07404-S1 |
| STATE FARM FIRE AND CASUALTY | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## NOTICE OF FILING REMOVAL

TO:   Ryan Baxter, Esq.
      Baxter Law Firm, LLC
      2400 Herodian Way, Suite 220
      Smyrna, Georgia 30080
      ryan@baxlegal.com

Please take notice that State Farm Fire and Casualty Company, Defendant in the above-

styled action, on this date has filed its **Notice of Removal**, a copy of which is attached hereto as

Exhibit A, with the Clerk of the Court of the United States District Court for the Northern

District of Georgia, Atlanta Division.

Respectfully submitted this 27th day of January, 2023.

SWIFT, CURRIE, McGHEE & HIERS, LLP

*/s/ Brittney A. Sizemore*
Mark T. Dietrichs
Georgia Bar No. 221722
Brittney A. Sizemore
Georgia Bar No. 332873
***Attorneys for Defendant***

1420 Peachtree Street, NE
Suite 800
Atlanta, GA   30309
OFF:   (404) 874-8800
FAX:   (404) 888-6199
Mark.dietrichs@swiftcurrie.com
Brittney.Sizemore@swiftcurrie.com

1

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I have electronically filed and served the foregoing ***NOTICE***

***OF FILING REMOVAL*** with the Clerk of Court using the Odyssey e-filing system which will

automatically send e-mail notification and service of such filing to counsel of record as follows:

Ryan Baxter
Baxter Law Firm, LLC
2400 Herodian Way, Suite 220
Smyrna, Georgia 30080
ryan@baxlegal.com
*Counsel for Plaintiff*

This 27th day of January, 2023.

SWIFT, CURRIE, McGHEE & HIERS, LLP

*/s/ Brittney A. Sizemore*
Mark T. Dietrichs
Georgia Bar No. 221722
Brittney A. Sizemore
Georgia Bar No. 332873
***Attorneys for Defendant***

1420 Peachtree Street, NE
Suite 800
Atlanta, GA   30309
Tel:     (404) 874-8800
Fax:     (404) 888-6199
Mark.dietrichs@swiftcurrie.com
Brittney.sizemore@swiftcurrie.com

4857-8892-6791, v. 1

2

# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| CONNIE AMAYA, | ) | |
| | ) | CIVIL FILE ACTION NO. |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STATE FARM FIRE AND | ) | [ON REMOVAL FROM STATE |
| CASUALTY COMPANY, | ) | COURT OF GWINNETT COUNTY |
| | ) | CIVIL ACTION NO. 22-C-07404-S1] |
| Defendant. | ) | |
| | ) | |

## NOTICE OF REMOVAL

COMES NOW, State Farm Fire and Casualty Company, Defendant in the above referenced matter, and within the time prescribed by law, files this Notice of Removal, respectfully showing the Court the following facts:

1.

Plaintiff Connie Amaya (hereinafter "Plaintiff") filed suit against Defendant in the State Court of Gwinnett County, which is a county within the Atlanta Division of this Court.  This suit is styled as above and numbered Civil Action File No. 22-A-07404-S1 in that Court.

2.

Suit was initiated by the Plaintiff on December 21, 2022, in the State Court of Gwinnett County.  Plaintiff served Defendant on December 29, 2022.  Defendant shows that this Notice of Removal is filed within thirty (30) days from the date of service of said suit on Defendant.  Therefore, removal is timely pursuant to 28 U.S.C. § 1446(b).

3.

Upon information and belief, Plaintiff is a resident and citizen of Cherokee County, Georgia.  See, Complaint ¶ 1.

4.

Defendant State Farm Fire and Casualty Company is a corporation organized under the laws of the State of Illinois, with its principal place of business in the State of Illinois and is not a citizen of the State of Georgia.  Defendant State Farm was not a citizen of the State of Georgia on the date of filing this action and has not been thereafter.

5.

Complete diversity exists between Plaintiff and Defendant in accordance with 28 U.S.C. § 1332(a)(1).

6.

This action is a civil action between citizens of different states where the controversy exceeds the sum of $75,000.00, exclusive of interest and costs.  Plaintiff expressly allege in her Complaint that she is entitled to all damages to her Property and any resulting expenses and temporary repairs in the amount of $713,051.69.  <u>See</u>, Complaint ¶ 110.  Given the statements of Plaintiff regarding the value of her claim and the amount she contends she is entitled to recover, the amount in dispute in this matter will exceed the jurisdictional requirement of $75,000.00.

7.

This Court is authorized to include attorneys' fees in determining the amount in controversy for removal purposes where those fees are allowed by statute.  <u>Hall v. Travelers Ins. Co.</u>, 691 F. Supp. 1406, 1409 (N.D. Ga. 1988) ("Where, as here, attorney's fees are allowable by applicable law, they may be included in assessing the jurisdictional amount in controversy.") (<u>citing</u> <u>Vacca v. Meetze</u>, 499 F. Supp. 1089, 1091 (S.D. Ga. 1981)), *vacated on other grounds*,  <u>Hall v. Travelers Ins. Co.</u>, 691 F. Supp. 1406, 1411 (N.D. Ga. 1988).  To that end, the Court is authorized to assign a "reasonable amount" of attorneys' fees in assessing the amount in controversy. <u>Morrison v. Allstate Indem. Co.</u>, 228 F.3d 1255, 1265 (11th Cir.

2000)("When a statute authorizes the recovery of attorney's fees, *a reasonable amount of those fees is included in the amount in controversy*.") (emphasis added).

8.

In light of the foregoing, the amount in controversy for this matter exceeds the jurisdictional requirement for removal of $75,000.00.

9.

This case is a civil action that may be removed to this Court pursuant to 28 U.S.C. § 1441.   This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) and (b) as there is complete diversity of citizenship between Plaintiffs and Defendant and, as shown above, the amount in controversy exceeds $75,000.00. Further, as required by 28 U.S.C. § 1441(b), Defendant is not a citizen of the State of Georgia.

10.

Defendant has attached hereto copies of all process, pleadings, and orders served upon it in this case prior to the date of this Notice of Removal.  Such copies are attached hereto as **Exhibit A**.

11.

Defendant has given written notice of the filing of this Notice of Removal to Plaintiff by notifying her attorney of record, Ryan Baxter, Esq. of Baxter Law Firm,

LLC, 2400 Herodian Way, Suite 220, Smyrna, Georgia 30080.  Defendant State Farm has also filed a written notice with the State Court of Gwinnett County, a copy of said notice being attached hereto and made in part hereof.

WHEREFORE, Defendant prays that this case be removed to the United States District Court for the Northern District of Georgia, Atlanta Division.

Respectfully submitted this 27th day of January, 2023.

SWIFT, CURRIE, McGHEE & HIERS, LLP

*/s/ Brittney A. Sizemore*
Mark T. Dietrichs
Georgia State Bar No. 221722
Brittney A. Sizemore
Georgia State Bar No. 332873
*Attorneys for Defendant State Farm Fire and Casualty Company*

1420 Peachtree Street, NE
Suite 800
Atlanta, Georgia 30309
OFFICE: 404.874.8800
FAX: 404.888.6199
mark.dietrichs@swiftcurrie.com
Brittney.sizemore@swiftcurrie.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I have electronically filed and served the foregoing **Notice of Removal** with the Clerk of Court via the CM/ECF e-filing system which will automatically send e-mail notification and service of such filing to counsel of record as follows:

Ryan Baxter
Baxter Law Firm, LLC
2400 Herodian Way, Suite 220
Smyrna, Georgia 30080
ryan@baxlegal.com
*Counsel for Plaintiff*

This 27th day of January, 2023.

SWIFT, CURRIE, McGHEE & HIERS, LLP

*/s/ Brittney A. Sizemore*
Mark T. Dietrichs
Georgia State Bar No. 221722
Brittney A. Sizemore
Georgia State Bar No. 332873
*Attorneys for Defendant State Farm Fire and Casualty Company*

1420 Peachtree Street, NE
Suite 800
Atlanta, Georgia 30309
OFFICE: 404.874.8800
FAX: 404.888.6199
mark.dietrichs@swiftcurrie.com
Brittney.sizemore@swiftcurrie.com
4856-8872-2247, v. 1