IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| **HAROLD JOSEPH KENDALL**<br>**Individually, and as**<br>**the Administrator  as**<br>**of the ESTATE OF SHANE**<br>**KENDALL**<br>      **Plaintiffs,** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| **v.** | )<br>) | **CIVIL ACTION NO.** |
| **FULTON COUNTY, GEORGIA,**<br>**SHERIFF PATRICK LABAT,**<br>in his official nd individual<br>**capacities,**<br>**NAPHCARE, INC.**<br>**MICHAEL AGYEI, PA-C,**<br>**individually, and**<br>**EDITH NWANKO, RN,**<br>**individually**<br>      **Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **JURY TRIAL DEMANDED** |

## <u>AFFIDAVIT OF Dr. MICHAEL MCMUNN, APRN, NP-BC, CCHP-MH</u>

**STATE OF GEORGIA**

**COUNTY OF BIBB**

COMES NOW, Dr. MICHAEL MCMUNN, APRN, NP-BC, CCHP-MH, CCHP-A, after having first been sworn by the undersigned-attesting officer and makes the following Affidavit based upon his personal knowledge and acts:

1.

1

I am Michael McMunn, and I am of sound mind and am otherwise competent to make this Affidavit. I am a Nurse Practitioner duly licensed and practicing in the State of Georgia within the specialties in correctional healthcare. I have been continuously licensed as a nurse since 1996 and thus was licensed at the time of the events described herein. I am a Dual Certified Correctional Healthcare Professional (CCHP-MH & CCHP-A) by the National Commission on Correctional Healthcare. I am also Board Certified by the American Nurses Credentialing Center.

2.

In connection with my current positions, and for more than three out of the five years preceding the dates of the events described herein, I have been engaged in the active practice of nursing and correctional healthcare, frequently examining and treating patients like or similar to Shane Kendall ("Mr. Kendall") when he was detained in the Fulton County Detention Center ("FCDC") in Atlanta, Georgia in May 2019 and again, between August 2019 and his untimely death on February 1, 2021.

3.

I have extensive experience in the overall operation and performance of the healthcare system in a county jail setting. Thus, I have extensive and applicable knowledge and experience in the creation, implementation and operation of

2

correctional healthcare systems in cities and counties like or similar to Fulton County, Georgia, and thus am knowledgeable about the standards of care and/or practices that apply to such medical facilities and/or programs.  Further, I have extensive experience in the medical management of inmate/detainee patients like or similar to Mr. Kendall while he was detained in the FCDC in February, 2021, and have cared for such inmate/detainee patients as an actively practicing nurse and correctional healthcare nurse practitioner on a weekly basis for more than the last five years, including for the entire five years preceding the time of the events described herein.

4.

With respect to such inmate/detainee patients, I have (1) frequently examined and evaluated such patients, including those with mental-medical conditions like those experienced by Mr. Kendall, as described herein, and all of the consequences thereof; (2) frequently diagnosed and treated such patients; (3) have made decisions concerning not only treatment of such patients, but also referral to a hospital for admission; (4) have supervised and taught other medical and jail personnel responsible for or involved and they care of such patients; and (5) have instructed students how to manage and care for patients like or similar to Mr. Kendall. In summary, as a result of my education, training and experience, as set forth above in

3

my curriculum vitae, a copy of which is attached hereto as Exhibit "A", I have appropriate levels of knowledge about and significant familiarity with the creation, implementation and operation of city/county jail medical programs and with the mental-medical management and care of patients like or similar to Mr. Kendall so as to be a knowledgeable and competent to testify concerning the standards of care for any healthcare and other personnel responsible for and/or involved in the care of Mr. Kendall while he was at the FCDC during the time as mentioned above, as well as the standards applicable to the overall medical system at the FCDC.

5.

Review of pertinent medical records and other documentation is an accepted methodology for investigating whether in a particular patient's case, the medical care and treatment provided the patient met that degree of care and skill utilized by the medical profession generally under similar conditions and like surrounding circumstances. Utilizing this methodology, and in addition to my education, training and experience, my opinions in this Affidavit are based upon my personal review of the following medical records and other documentation relating to Mr. Kendall:

a) NaphCare Medical Records

b) NaphCare Psychiatric Progress Notes

c) Kendall Suicide Report

4

d) Medical Examiner Report

e) Kendall History and Event Timeline

f) 2018 National Commission on Correctional Healthcare Jail Standards

6.

The opinions expressed in this Affidavit are based upon the following facts, which I have been asked to assume as true and which are supported by the above-referenced records, medical records and/or other documents:

a) NaphCare staff, when responding to Mr. Kendall's medical emergency, failed to provide basic life support/CPR.

b) NaphCare staff, when responding to Mr. Kendall's medical emergency, failed to respond to calls (in a timely or prompt manner or as typically required under jail protocols. When finally on scene, they were described by security staff as "disoriented".

c) NaphCare staff, despite being aware of loss in over 25% of body weight (57 lbs.), failed to act on this objective data.

d) NaphCare staff, violated multiple 2018 National Commission on Correctional Healthcare Jail standards and failed to properly complete multiple required forms for intake, monitoring and mental health.

5

e)    NaphCare staff deliberately failed to respond and protect Mr. Kendall. despite multiple well identified risk factors for suicide:

*1.    Mr. Kendall was previously diagnosed with autism, attention deficit disorder, bipolar disorder, schizophrenia.*

*2.    Mr. Kendall's daily edication regimen, as implementedby NaphCare, Inc., involved high doses of Seroquel, Depakote, and Benadryl.*

*3.    NaphCare, Inc. records demonstrate its agents/employees flagged Mr. Kendall with, in part, psychotic disorders, mood disorders, developmental delay/mental retardation, impulsiveness.*

*4.    Mr. Kendall lost a significant amount of body weight while in Fulton County jail.*

*5.    Mr. Kendall expressed that he felt more depressed and and asked for a medication increase on January 28, 2021.*

*6.    The night before his death, Mr. Kendall was balled up in the floor of his cell, expressing to jail staff that he did not want to be in his cell anymore*

*7.    Upon learning of Mr. Kendall's medical emergency, NaphCare, Inc. and/or its agents/employees failed to respond in a timely manner.*

*8.    Upon learning of Mr.Kendall's medical emergency, NaphCare, Inc. and/or its agents/employees failed to respond with proper equipment and failed and/or refused to provide basic life support/CPR.*

*9.    NaphCare staff violated several National Commission on Correctional Healthcare Jail standards throughout their "care" of Mr. Kendall.*

*10.   NaphCare, Inc. and/or its employee/agents appeared to provide untruthful narratives regarding their response to Mr. Kendall's medical emergency.*

7.

"Based on my review, education, training and experience as a nurse practitioner and in supervising nurses, particularly in the specialty of correctional healthcare, based on a reasonable degree of medical certainty, NaphCare, Inc. and Fulton County failed to exercise that degree and skill and care ordinarily required by the medical profession in general, under like conditions, and similar circumstances in their treatment of Shane Kendall. I have identified specific facts and omissions in support of this opinion:

**1. It was a deviation of the standard of care and indifference to Mr. Kendall's serious medical need for NaphCare, Inc. and it's agents/employees and Fulton County jail and it's agents/employee to**:

*-Assign Mr. Kendall to general population housing given his psychiatric issues and risk factors.*

*-Fail to act on known, repeated physical abuse he endured while housed in general population.*

*-Fail to adequately complete medical/mental health forms.*

*-Fail to respond to multiple, well-identified risk factors for suicide that Mr. Kendall presented.*

*-Fail to act on the objective data, known to and recorded by NaphCare, Inc., and it's agents/employees that Mr. Kendall had lost over 25% of his bodyweight while in the custody of Fulton County jail and while heavily medicated with antipsychotics and mood stabilizers that cause weight gain.*

**2. It was deviation of the standard of care and indifference to Mr. Kendall's serious medical need for Michael Agyei, a NaphCare employee and agent to:**

*-Delay responding to the emergency call for medical assistance.*

*-Delay bringing the AED (automated defibrillator).*

*-Failing to perform CPR properly, having been described by Fulton County jail personnel as disoriented upon his arrival and unable adequately, competently and properly provide medical care.*

**3.  It was deviation of the standard of care and indifference to Mr. Kendall's serious medical need for Edith Nwanko, a NaphCare employee and agent to:**

*-Deliberately refuse to provide emergency medical care and/or CPR/resuscitation*

*efforts to Mr. Kendall.*

*-Fail to bring the AED (automated external defibrillator) and use it to treat Mr.*

*Kendall.*

### 8.

Based on my education, training, and experience as a nurse practitioner, and in supervising nurses, particularly in regard to the specialty of correctional healthcare, when NaphCare staff assessed Mr. Kendall at the FCDC, knew, or should have known, as a trained professional nurse working in a detention facility, had they been acting within the standard of care, that Mr. Kendall was in immediate need of mental-medical care superior to that which NaphCare staff provided, and that the failure to provide said care would cause the death of Mr. Kendall.

### 10.

I further have the opinion within a reasonable degree of medical certainty that Mr. Kendall's death was avoidable and that as a direct and proximate result of the wrongful acts and omissions of the NaphCare staff and NaphCare, such acts/omissions constituting a breach of the applicable standard of care and professional medical negligence, Mr. Kendall was caused to suffer significant

mental anguish, unnecessary suffering, and death.

11.

All of the opinions stated in this Affidavit are based upon a reasonable degree of medical certainty.

12.

This Affidavit is being provided by me in order to comply with the requirements of O.C.G.A. § 9-11-9.1 and for such other purposes as allowed by applicable law.  This Affidavit does not and is not intended to include all of my opinions that I have formed following my review of the above-referenced records or further documents produced in discovery of this case.  I reserve the right to alter, supplement, and/or amend my opinions after I have reviewed additional records, deposition testimony, and/or received additional information.

FURTHER SAYETH AFFIANE NOT.

Dr. MICHAEL MCMUNN,
APRN, NP-BC, CCHP-MH,
CCHP-A

Sworn to and subscribed before me this
9th day of January, 2023.

NOTARY PUBLIC

My Commission Expires:
3-17-2024

AMBER CRYER
NOTARY
EXPIRES
GEORGIA
3-17-2024
PUBLIC
CRAWFORD COUNTY



# Dr. Michael McMunn DNP CCHP-MH, CCHP- A
## Expert Witness – Correctional Healthcare NP



### Contact

5962 Zebulon Rd. #200
Macon GA 31210
770-712-2210
correctionalexpert@gmail.com

### Summary

Expert regarding Standard of Care determination in correctional healthcare settings for NP, PA, RN, LPN, CNA, MA and EMT function. Advanced Certification in Correctional Healthcare (CCHP-A), per the National Commission on Correctional Healthcare (NCCHC).
Experience in 50+ Georgia correctional 'acilities with 25 - 2500 inmates.  Knowledge base includes policy development and the current legal/business/political trends in correctional healthcare. Experience with Diagnostic Facilities, State Prisons, CI's, PDC's, Transitional Centers, YDC's, RYDC's and County Jails.
*Currently providing services in 6 county jails and 1 Correctional Institute (state inmates).*

### Education

**University of North Georgia**
*DNP Nursing – Graduation 2021*
Doctoral Project – Suicide Prevention
Training for Correctional Officers
Additional Coursework – Risk
Management and Reimbursement
Additional Research – Correctional
Officer Training Theories,
Epidemiology of Jail Suicides,
NCCHC Standards

**Medical College of Georgia**
*MSN Nursing – Graduation 2000*

**Brenau University**
*BSN Nursing – Graduation 1997*

**Athens Technical College**
*ADN Nursing – Graduation 1996*

**Emmanuel College**
*AA Religion – Graduation 1987*

### NCCHC Certifications

*CCHP-A – Advanced - 2020*
*CCHP-MH – Mental Health - 2013*
*CCHP - 2007*

### Moderator

**2019 NCCHC National Conference**
*Prison Standards Review*
**2020 NCCHC National Conference**
*Cancelled due to COVID-19*
**2021 NCCHC National Conference**
*Five sessions*
**2022 NCCHC Spring Conference**
*Two sessions*
**2022 NCCHC National Conference**
*TBA*

### Experience - Licenses, Qualifications, Memberships and Certifications

| | |
|---|---|
| Correctional Healthcare Expert Witness | *2015 to Present* |
| Nurse Practitioner (APRN) - Southern Health Partners | *2002 to Present* |
| Nurse Practitioner (APRN) - Vista Healthcare Partners | *2002 to 2020* |
| Nurse Practitioner (APRN) - CareATC – Monroe | *2014 to 2019* |
| Project Manager - The Little Clinic | *2008 to 2011* |
| Clinic and Project Development - MinuteClinic | *2005 to 2008* |
| College Instructor - Medical College of Georgia | *2002 to 2005* |
| Clinic Director – The Bridge Institute - YDC (Georgia DJJ | *2001 to 2002* |
| Agency and Contract Critical Care Work – Multiple Sites | *2000 to 2001* |
| Piedmont Athens Hospital – Pulmonary, Medical, ACLS | *1996 to 2000* |

ANCC board certified as Family Nurse Practitioner since 2000
Licensed in Georgia as a RN and APRN (FNP), Licensed in Alabama as an RN
Current DEA authorization, license to practice has never been restricted.
Content Reviewer – Journal of Correctional Health
Member – Georgia Nursing Congress, Correctional Healthcare – 2 Terms
Member – Academy of Correctional Professionals, ACA, GJA, and GSA

2021 Approved Georgia POST Trainer – Suicide Prevention Training in County Jails

### Previous Expert Witness Testimony Jurisdictions

Alabama   Arizona   Arkansas   California   Colorado
Florida   Georgia   Illinois   Indiana   Kansas   Kentucky
Louisiana   Massachusetts   Maryland   Maine
Michigan   Montana   New Jersey   North Dakota   Ohio
Oregon   Pennsylvania   South Carolina   Tennessee
Vermont   Virginia   Washington   West Virginia

11