**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| AMANDA WHITE, | |
| Plaintiff, | Civil Action No. |
| v. | |
| KAIJET TECHNOLOGY INTERNATIONAL LIMITED, INC. d/b/a J5CREATE, | **JURY TRIAL DEMANDED** |
| Defendant. | |

## <u>COMPLAINT</u>

Plaintiff Amanda White ("Plaintiff") files this Complaint against Defendant Kaijet Technology International Limited, Inc. d/b/a J5Create ("Defendant"). Plaintiff asserts a claim against Defendant for unpaid overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* Plaintiff also alleges that Defendant violated the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101 *et seq.* (the "ADA"), by: (1) discriminating against her because of her disability, record of disability, and/or because Defendant regarded her as disabled; (2) failing to provide her with a reasonable accommodation for her disability; and/or (3) retaliating against her for engaging in protected activity under the ADA.

1

Plaintiff shows the Court as follows:

## **NATURE OF THE ACTION**

1.      Plaintiff claims that Defendant failed to pay her overtime wages for all hours worked in excess of forty (40) each workweek, in violation of the FLSA (Count I).

2.      Additionally, Plaintiff claims that Defendant violated the ADA by: (1) suspending her without pay and terminating her employment because of her disability (which disability made it necessary for her to continue working from home as she had been doing successfully for over a year), record of disability, and/or because Defendant regarded Plaintiff as disabled (Count II); (2) failing to accommodate Plaintiff's request for a reasonable accommodation, to wit, that she be permitted to continue working from home (Count III); and/or (3) retaliating against Plaintiff for engaging in protected activity, to wit, opposing her discriminatory suspension without pay and requesting a reasonable accommodation for her disability (Count IV).

3.      With respect to her FLSA overtime claim, Plaintiff seeks all unpaid overtime wages, liquidated damages, and attorneys' fees and costs.

4.      With respect to her ADA claims, Plaintiff seeks declaratory relief, lost wages and benefits, compensatory and punitive damages, interest, and attorneys' fees and costs.

## JURISDICTION AND VENUE

5.      This Court has federal-question jurisdiction over Plaintiff's FLSA and ADA claims, pursuant to 28 U.S.C. § 1331.

6.      Pursuant to 28 U.S.C. § 1391(b), 42 U.S.C. § 2000e-5(f)(3), and Local Rule 3.1(B), venue is proper in this Court because the unlawful employment practices described herein were primarily committed within the Atlanta Division of the Northern District of Georgia, where Defendant is located and employed Plaintiff.

## PARTIES

7.      Plaintiff is a citizen of the United States of America and a resident of the State of Georgia; she submits herself to the jurisdiction of this Court.

8.      Plaintiff was formerly employed by Defendant as a Sales Executive Assistant from approximately October 2019 until on or about January 20, 2022.

9.      Defendant is a Georgia for-profit corporation that has its Principal Office Address within the Atlanta Division of the Northern District of Georgia.

10.     Defendant may be served with process through its Registered Agent, Lee & Hayes, PLLC, at 75 14th Street NE, Suite 2500, Atlanta, Georgia 30361.

11.    Defendant was an "employer" within the definition of the FLSA and the ADA at all times relevant to this Complaint and is governed thereby.

12.    More specifically, at all relevant times, Defendant has been, and continues to be, an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A) because it "has employees engaged in commerce or in the production of goods for commerce, or . . has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person," and, upon information and belief, had gross annual revenues in excess of $500,000.00 at all relevant times.

13.    Further, Defendant was an employer within the meaning of the ADA, 42 U.S.C. § 12111(5)(A), at all relevant times.

14.    Plaintiff was Defendant's "employee" within the meaning of the FLSA and ADA at all times relevant to this Complaint.

## ADMINISTRATIVE EXHAUSTION

15.    Plaintiff has satisfied all administrative prerequisites for bringing her ADA claims in this Court.

16.    On April 13, 2022, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") (Charge

No. 410-2022-02240), in which she asserted that Defendant had discriminated against her because she was disabled and had retaliated against her for having requested a reasonable accommodation for her disability.

17.     On July 15, 2022, Plaintiff filed an Amended EEOC Charge, in which she asserted that Defendant had discriminated against her based on her disability, had failed to provide a reasonable accommodation for her disability, and had retaliated against her for requesting a reasonable accommodation and/or opposing Defendant's discrimination.

18.     On November 28, 2022, the EEOC issued a Notice of Right to Sue ("NTRS") on Plaintiff's EEOC Charge.

19.     Plaintiff files her Complaint within ninety (90) days of her receipt of the NRTS.

## STATEMENT OF FACTS

### I.     Allegations Regarding Defendant's Violation of the FLSA

20.     Plaintiff began working for Defendant as a Sales Executive Assistant in approximately October 2019.

21.     From October 2019 until approximately August 2020, Plaintiff was classified as an hourly employee. However, in approximately August 2020, Defendant reclassified Plaintiff as a salaried employee.

22.    From approximately August 2020 until approximately December 2021, Defendant paid Plaintiff an annual salary of $29,500.00.

23.    During that time period, August 2020 until December 2021, Plaintiff worked approximately forty-five (45) hours per week.  However, Defendant did not compensate Plaintiff at an overtime rate equal to one-and-one-half times her regular rate of pay for all hours worked in excess of 40 per workweek.

24.    On information and belief, Defendant violated the FLSA by failing to maintain records of Plaintiff's time worked for the period during which she was classified as a salaried employee.

25.    As a Sales Executive Assistant, Plaintiff's primary duties included assisting Defendant's executive sales team by, *inter alia*, answering and screening emails, coordinating schedules, conducting research, compiling reports, supporting sales representatives, and organizing events.  Plaintiff did not exercise discretion and independent judgment with respect to matters of significance in performing these job duties.

26.    None of the exemptions to the FLSA's overtime provisions contained in 29 U.S.C. § 213 applied to Plaintiff at any time during the relevant time period.

27.    On information and belief, Defendant's failure to pay Plaintiff one-and-one-half her regular rate of pay for all hours worked in excess of 40 per

week was pursuant to a policy and practice of minimizing labor costs by violating the FLSA.

28.    Defendant's violations of the FLSA were willful and not in good faith.

## II.    Allegations Regarding Defendant's Violations of the ADA

29.    At all times relevant to this Complaint, Plaintiff was an individual with a disability within the meaning of the ADA.  Specifically, Plaintiff suffers from, *inter alia*, generalized anxiety disorder.

30.    Plaintiff's generalized anxiety disorder, if not adequately managed via medication, caused severe anxiety, panic attacks, and vomiting, and interfered with her ability to eat, sleep, and travel.

31.    From the start of her employment until approximately September 2020, Plaintiff worked in-office.  However, beginning in approximately September 2020, the medication that Plaintiff had been taking for years to manage her generalized anxiety disorder stopped working effectively, which made it difficult, if not impossible, to leave her home.

32.    As Plaintiff's disability-related condition worsened, her doctor and psychiatrist both recommended that she work from home.

33.    As a result, in approximately October 2020, and in accordance with her healthcare  provider's  recommendation,  Plaintiff  requested  a  reasonable

accommodation from her direct supervisor, Chuck Akins (Defendant's VP of Sales and Marketing) and Human Resources.  Specifically, Plaintiff requested that she be permitted to work from home, which request Defendant initially granted.

34.    Plaintiff's October 2020 request for a reasonable accommodation for her disability constituted protected activity for the purposes of the ADA.

35.    On or about January 14, 2021, at the direction of Mr. Akins and for the purpose of providing an update on Plaintiff's disability, Plaintiff emailed Human Resources and stated that she had been suffering "non stop daily panic attacks and anxiety," which often caused her to vomit, and which interfered with her ability to eat and sleep.

36.    Plaintiff further informed Human Resources that she refrained from leaving her home because she was afraid that she would have "a severe panic attack in public, while driving, and especially in the office."

37.    In her January 14, 2021 email, Plaintiff also stated that staying home eased her anxiety, that she did not believe that she was any less productive as a result of working from home, and that she was continuing to work with her healthcare providers to manage her symptoms caused by her disability with the hope of being able to return to the office in the future.

38.    Plaintiff's January 14, 2021 email to Human Resources constituted a request for a reasonable accommodation for her disability and protected activity for the purposes of the ADA.

39.    Human Resources responded to Plaintiff's email by stating, in relevant part, that she needed to provide updates from her healthcare provider that included a "recommendation for staying and home" and "specifying the time frame that you will be working from home," because "[t]he accommodations we are making for you need to be documented. . . ."

40.    As requested by Human Resources, Plaintiff agreed to provide regular updates from her healthcare providers, which she then did throughout the remainder of her employment.

41.    On June 9, 2021, Plaintiff received "written coaching" from Human Resources via email, in which she was told that Defendant would continue to try to accommodate her by permitting her to work from home if she provided statements from her doctor "informing us so that we may know the specific accommodations needed."

42.    In contemporaneous text messages with Mr. Akins regarding the "written coaching" that Plaintiff received on June 9, 2021, he told her, among other

things, that the coaching was not "a write up," and she was "not in any danger or in any trouble."

43.    Mr. Akins also suggested, however, that Plaintiff try to report to the office as often as she could because "[t]he culture here is not really friendly for working at home. Old school micro management mindset at j5 sometimes unfortunately."

44.    Plaintiff tried reporting to the office a few times a week in approximately July 2021 but had to return to working remotely full-time (with Defendant's approval) after trying to work from the office significantly worsened her anxiety and the physical manifestations of her disability.

45.    While working remotely from October 2020 to October 2021, Plaintiff performed her job well, and Mr. Akins never reported any dissatisfaction with her performance or the fact that she was working remotely.

46.    Beginning in approximately October 2021, Human Resources increased its pressure on company employees, including Plaintiff, to return to the office.  In response, Plaintiff reiterated that she was still unable to do so because of her disability.

47.    Mr. Akins, who remained Plaintiff's direct supervisor, told Plaintiff to disregard Human Resources' directive to return to the office given her personal

circumstances and his satisfaction with her ability to perform her job duties from home.

48.    Nevertheless, Human Resources repeatedly pressed Plaintiff on the matter, even though she continually informed Human Resources that her circumstances with respect to her disability had not changed, and she needed to continue to work from home.

49.    On or about October 25, 2021, Defendant issued Plaintiff a "Performance Improvement Plan" that indicated, *inter alia*, that Plaintiff needed to improve her compliance with Defendant's policies and procedures concerning working from home, including reporting her work hours and daily work performed.

50.    Human Resources' directives regarding what Plaintiff was required to report each day directly conflicted with the directives that she was receiving from Mr. Akins concerning the same, which Plaintiff mentioned to Human Resources.

51.    On or about January 12, 2022, Defendant placed Plaintiff on unpaid administrative leave, citing her failure to report to the office, as well as alleged issues with her responsiveness and alleged failure to submit certain work-related documents.

52.     When Plaintiff challenged the alleged issues with her performance and reiterated her inability to return to the office due to her disability, Human Resources did not meaningfully respond.

53.     Plaintiff's opposition to her unpaid and discriminatory suspension constituted protected activity for the purposes of the ADA.

54.     In addition, Plaintiff's reiteration of her inability to return to the office due to the symptoms caused by her disability constituted a request for a reasonable accommodation for her disability.

55.     In text message communications with Mr. Akins about Human Resources' decision to place her on unpaid administrative leave, he stated that "[i]t's an hr thing and I can't do anything. Have to deal with [Human Resources] on this. The only thing I will say is this wasn't prompted by me questioning your work."

56.     In addition, Mr. Akins later stated, "I appreciate your hard work and would like to continue if we can.  There is a lot of stigma attached with [working from home] at j5 unfortunately."

57.     On or about January 20, 2022, Defendant fired Plaintiff because, given her ongoing disability and conditions related thereto, she could not provide a medical clearance from her healthcare provider permitting her to return to the office.

58.     Defendant fired Plaintiff even though she had communicated to Human Resources that she had a medical appointment on or about January 24, 2022, at which appointment her ability to return to the office would be reassessed against the symptoms that she was continuing to experience as a result of her disability.

59.     Defendant intentionally discriminated against Plaintiff because of her disability, record of disability, and/or because Defendant regarded Plaintiff as disabled, by suspending her without pay and then terminating her employment.

60.     Additionally, Defendant denied Plaintiff a reasonable accommodation for her disability, to wit, that she be permitted to continue working from home, as she had been doing successfully for well over a year.

61.     Additionally, or alternatively, Defendant retaliated against Plaintiff for requesting a reasonable accommodation for her disability by suspending her without pay and then terminating her employment.

62.     In discriminating against Plaintiff, failing to provide her a reasonable accommodation, and/or retaliating against her, Defendant acted intentionally, maliciously, and/or with reckless indifference with respect to Plaintiff's federally-protected rights under the ADA.

63.     Due to Defendant's violations of the ADA, Plaintiff has incurred lost wages and benefits, and has suffered emotional distress, inconvenience, mental anguish, and loss of enjoyment of life.

**COUNT I**
**Willful Failure to Pay Overtime Wages in Violation of the FLSA**

64.     At all relevant times, Plaintiff was engaged in commerce within the meaning of the FLSA.

65.     At all relevant times, Defendant was an "employer" within the meaning of the FLSA.

66.     At all relevant times, Defendant employed Plaintiff within the meaning of the FLSA.

67.     The overtime wage provisions set forth in the FLSA apply to Defendant and protect Plaintiff.

68.     From approximately August 2020 until December 2021, during which period Defendant classified Plaintiff as a salaried employee, Defendant violated the FLSA by failing to pay her overtime at a rate of one and one half her regular rate of pay for all hours in excess of 40 per week.

69.     During that time period, Plaintiff regularly worked substantial hours in excess of 40 per week.   Specifically, Plaintiff estimates that she worked

approximately 45 hours per week during the time period during which Defendant classified her as a salaried employee.

70.    On information and belief, Defendant violated the FLSA by failing to maintain records of Plaintiff's time worked for the period during which she was classified as a salaried employee.

71.    None of the exemptions from the FLSA's overtime provisions contained in 29 U.S.C. § 213 applied to Plaintiff at any time during the relevant time period.

72.    As a result of Defendant's willful failure to compensate Plaintiff at a rate of one and one-half her regular rate for hours worked in excess of 40 per week, Defendant violated the FLSA.

73.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).  Because Defendant's violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255(a).

74.    Defendant did not make a good-faith effort to comply with the FLSA with respect to its compensation of Plaintiff.

75.    Due to Defendant's willful FLSA violations, Plaintiff is entitled to recover from Defendant her unpaid overtime wages for all of the hours that she

worked in excess of 40 per week during the relevant time period, an additional and equal amount as liquidated damages, interest, and reasonable attorneys' fees and costs of litigation.

## COUNT II
### Discriminatory Suspension and Termination in Violation of the ADA

76.     At all relevant times, Plaintiff was an employee with disabilities within the meaning of the ADA.

77.     At all relevant times, Plaintiff had a record of a disability, as set forth in 42 U.S.C. § 12102(1)(B).

78.     At all relevant times, Defendant regarded Plaintiff as having a disability, as set forth in 42 U.S.C. § 12102(1)(C).

79.     At all relevant times, Plaintiff was qualified to perform the essential functions of the Sales Executive Assistant role.

80.     At all relevant times, Defendant was an "employer" within the meaning of the ADA, 42 U.S.C. § 12111(5).

81.     Defendant violated the ADA by discriminating against Plaintiff because of her disability, record of disability, and/or because Defendant regarded her as disabled, by suspending her without pay and then terminating her employment in January 2022.

82.     Specifically, Defendant suspended Plaintiff without pay and then terminated her employment because her disability (generalized anxiety disorder) made it necessary for her to perform her work from home, which employment practice Defendant stigmatized, notwithstanding that Plaintiff was fully able to perform the essential functions of her position from home, which she had been doing for an extended period.

83.     In discriminating against Plaintiff, Defendant acted intentionally, maliciously, and/or with reckless indifference with respect to Plaintiff's federally-protected rights under the ADA.

84.     Due to Defendant's violations of the ADA, Plaintiff has incurred lost wages and benefits, and has suffered emotional distress, inconvenience, mental anguish, and loss of enjoyment of life.

85.     Plaintiff seeks all available relief under the ADA, including lost wages and benefits, compensatory and punitive damages, interest, and reasonable attorneys' fees and costs.

**COUNT III**
**Failure to Accommodate in Violation of the ADA**

86.     At all relevant times, Plaintiff was an employee with disabilities within the meaning of the ADA.

87.     At all relevant times, Plaintiff had a record of a disability, as set forth in 42 U.S.C. § 12102(1)(B).

88.     At all relevant times, Plaintiff was qualified to perform the essential functions of the Sales Executive Assistant role.

89.     At all relevant times, Defendant was an "employer" within the meaning of the ADA, 42 U.S.C. § 12111(5).

90.     Defendant violated the ADA by failing to provide Plaintiff with a reasonable accommodation for her disabilities, to wit, permitting Plaintiff to continue to work from home until such time as her symptoms caused by her disability, including anxiety and physical manifestations, were adequately managed.

91.     As a result of Defendant's violations of the ADA, Plaintiff has incurred lost compensation, and has suffered emotional distress, inconvenience, mental anguish, and loss of enjoyment of life.

92.     Plaintiff seeks all available relief under the ADA, including lost wages and benefits, compensatory and punitive damages, interest, and reasonable attorneys' fees and costs.

**COUNT IV**
**Retaliatory Suspension and Termination in Violation of the ADA**

93.     Plaintiff engaged in protected activity under the ADA by, *inter alia*, opposing her unpaid suspension in January 2022 and requesting a reasonable accommodation for her disability.

94.     Defendant retaliated against Plaintiff for requesting a reasonable accommodation for her disability by suspending her without pay in January 2022.

95.     Defendant's retaliation against Plaintiff would have dissuaded a reasonable person from engaging in protected activity.

96.     As a result of Defendant's retaliatory suspension without pay and subsequent termination of Plaintiff's employment, Plaintiff has incurred lost wages and benefits.

97.     Plaintiff seeks all available relief under the ADA, including lost wages and benefits, interest, and reasonable attorneys' fees and costs.

**COUNT V**
**Retaliatory Termination in Violation of the ADA**

98.     Plaintiff engaged in protected activity under the ADA by, *inter alia*, opposing her unpaid suspension in January 2022 and requesting a reasonable accommodation for her disability.

99.     Defendant retaliated against Plaintiff for requesting a reasonable accommodation for her disability by terminating her employment in January 2022.

100.    Defendant's retaliation against Plaintiff would have dissuaded a reasonable person from engaging in protected activity.

101.    As a result of Defendant's retaliatory termination of Plaintiff's employment, Plaintiff has incurred lost wages and benefits.

102.    Plaintiff seeks all available relief under the ADA, including lost wages and benefits, interest, and reasonable attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands a **TRIAL BY JURY** and the following relief:

a)  A declaratory judgment that the practices of Defendant complained of herein are unlawful under the FLSA and ADA;

b)  An award of all unpaid overtime wages;

c)  An award of liquidated damages on Plaintiff's FLSA claim;

d)  An award of full lost wages and benefits on Plaintiff's ADA claims;

e)  Compensatory damages on Plaintiff's ADA claims in an amount to be determined by the jury;

f) Punitive damages on Plaintiff's ADA claims in an amount to be determined by the jury;

g) An award of prejudgment and post-judgment interest on any award on Plaintiff's ADA claims;

h) An award of costs and expenses of this action, together with reasonable attorneys' and expert fees; and

i) All other equitable and other further relief as this Court deems just and proper.

Respectfully submitted this 30th day of January 2023.

*/s/ Justin M. Scott*
Justin M. Scott
Georgia Bar No. 557463
Tierra Monteiro
Georgia Bar No. 743224
SCOTT EMPLOYMENT LAW, P.C.
160 Clairemont Avenue, Suite 610
Decatur, Georgia 30030
Telephone: 678.780.4880
Facsimile: 478.575.2590
jscott@scottemploymentlaw.com
tmonteiro@scottemploymentlaw.com

Counsel for Plaintiff