# EXHIBIT "C"

**GeneralStar**
*Beyond Security™*

**GENERAL STAR INDEMNITY COMPA** 
**120 LONG RIDGE ROAD**
**PO BOX 10354**
**STAMFORD, CONNECTICUT 06904-2354**
A Stock Insurance Company

**COMMON POLICY DECLARATIONS**

**CERTIFIED COPY**
This policy is certified to be complete and contains all forms and endorsements applicable to this policy based on the best knowledge and information currently available.

01/22/2021
Date                    Authorized Signature - Kevin Lewis

POLICY # ___IMA-335234___                  RENEWAL OF POLICY # ___NEW___

**1. NAMED INSURED**      NORTHBROOK INDUSTRIES, INC
                          DBA: UNITED INN
   MAILING ADDRESS        4649 MEMORIAL DRIVE
                          DECATUR, GA 30032

**2. POLICY PERIOD:**     From ___06/26/2017___ to ___06/26/2018___
                          at 12:01 A.M. Standard Time at your mailing address shown above.

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

**3. THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.**                      PREMIUM

| | |
|---|---|
| Commercial Property Coverage Part | $ NOT COVERED |
| Commercial Inland Marine Coverage Part | $ NOT COVERED |
| Commercial General Liability Coverage Part | $ 4,783.00 |
| Equipment Breakdown Coverage | $ NOT COVERED |
| Liquor Liability Coverage Part | $ NOT COVERED |
| _____ Coverage Part | $ _____ |
| **TOTAL PREMIUM** | $ 4,783.00 |
| STATE SURPLUS TAX ( %) | $ 199.32 |
| POLICY FEE | $ 200.00 |

APP ID NUMBER(S) _____ _____
(REQUIRED if SUBMIT/PRIOR APPROVAL business)
Prior Approval by:

_____
(General Star Underwriter)
Inspection Report:
   Ordered _____
   Attached _____
   Not Required _X_
Underwriter in Producer's Office:
C. YOUNG
(required for every policy.)

**POLICY TOTAL (payable at inception)** $ 5,182.32

**4. FORM OF BUSINESS:**
☐ Individual          ☐ Partnership       ☐ Limited Liability Company
☐ Joint Venture       ☒ Organization (Other than Partnership, Joint Venture or Limited Liability Company)

**5. BUSINESS DESCRIPTION:** HOTEL

**6. FORMS AND ENDORSEMENTS (other than applicable Forms and Endorsements shown elsewhere in the policy)**

See Schedule of Forms & Endorsements GSI-04-FORMSCH (1-01)

THESE COMMON POLICY DECLARATIONS, AND OTHER APPLICABLE COVERAGE PART DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

COUNTERSIGNED AT NORCROSS, GA _____   BY: _____
                                         Authorized representative or countersignature, whichever applies.
DATE _06/23/2017_____       PRODUCER CODE: _10348_____

                                       PRODUCER NAME: _SCU_____

GSI-04-CP00D (3/10)                        COMPANY

**GeneralStar**

Beyond Security™

# SCHEDULE OF FORMS AND ENDORSEMENTS

| POLICY NUMBER:<br><br>IMA-335234 | NAMED INSURED<br><br>NORTHBROOK INDUSTRIES, INC<br>DBA: UNITED INN |
|---|---|

Endorsement No./ Edition Date/ Form Description

**Forms Applicable – INTERLINE**

```
GSI-04-CP00D (03-10)     COMM POLICY DECL
GSI-04-I618 (08-06)      COMMON POLICY CONDITIONS
GSI-04-I600 (03-10)      SERVICE OF SUIT CLAUSE
GSI-04-I604 (01-01)      MINIMUM EARNED PREM
IL0985 (01-15)           DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT
IL0262 (09-08)           GA CHANGES - CANCELLATION/NON-RENE
```

**Forms Applicable – GENERAL LIABILITY**

```
GSI-04-CGLDEC(05-04)     GENERAL LIABILITY DECL
CG0001 (12-07)           GL COVERAGE FORM-OCC
GSI-04-C600 (02-16)      COMBINED PROVISIONS ENDT
GSI-04-C820 (05-09)      EXCL-PUNITIVE OR EXEMP DMGS
GSI-04-C022 (01-01)      TOTAL LIQUOR EXCL
IL0021 (09-08)           NUCLEAR ENERGY LIAB EXCL
CG2132 (05-09)           COMMUNICABLE DISEASE EXCLUSION
CG2144 (07-98)           LIMITATION OF COVERAGE
CG2173 (01-15)           EXCL OF CERTIFIED ACTS OF TERRORISM
CG2245 (07-98)           EXCL-SPECIFIED THERAPEUTIC
CLF 04 0001 (06-11)      ABUSE OR MOLESTATION COVERAGE AND SUBLIMIT
CLF 04 0002 (06-11)      ASSAULT OR BATTERY COVERAGE AND SUBLIMIT
CLF 11 0018 (06-15)      DESIGNATED ANIMAL LIABILITY LIMITATION
```

# ADDITIONAL FORMS

GSI-04-FORMSCH (01-01)                                                     Page 1 of 2

# SCHEDULE OF FORMS AND ENDORSEMENTS (Continued)

Endorsement No./ Edition Date/ Form Description

# GENERAL STAR INDEMNITY COMPANY

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium or for the failure to provide to the Company any audit related documentation, for either this insurance policy or any other insurance policy issued to a Named Insured in the past; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums. Failure to pay any premium or to provide to the Company any audit-related documentation, for either this insurance policy or any other insurance policy issued to a Named Insured in the past, will result in a cancellation of this policy; and

2. Will be the payee for any return premiums we pay.

## F. Representations On Application Warranty.

The following representations on application warranty applies to all Coverage Parts attached to this policy.

© Copyright, General Star Management Company, Stamford, CT1999-2000.
Includes copyrighted material of Insurance Services Office, Inc., with its permission

By accepting this policy, you agree, represent and warrant that:

1. The statements and information contained in the application for insurance, including all statements, information and documents accompanying or relating to the application are:

   (a) Accurate and complete and no facts have been suppressed, omitted or misstated; and

   (b) Material to us, and we have issued this policy in reliance upon them;

2. Any failure to fully disclose the information requested in the application for insurance, whether by omission or suppression, or any misrepresentation in the statements and information contained in the application for insurance, including all statements, information and documents accompanying or relating to the application, renders coverage for any claim(s) null and void and entitles us to rescind the policy from its inception; and

3. The application for this policy is incorporated and made part of the policy by reference.

**G. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

---

IN WITNESS WHEREOF The **General Star Indemnity Company** has caused this Policy to be signed by its President and Secretary at Stamford, Connecticut, but the same shall not be binding upon the Company unless countersigned on the Declarations Page by an authorized representative of the Company.

**GENERAL STAR INDEMNITY COMPANY**

_____
Secretary

_____
President

© Copyright, General Star Management Company, Stamford, CT1999-2000.
Includes copyrighted material of Insurance Services Office, Inc., with its permission

# GENERAL STAR INDEMNITY COMPANY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# SERVICE OF SUIT CLAUSE

It is agreed that in the event of the failure of General Star Indemnity Company (the "Insurer") to pay any amount claimed to be due hereunder, the Insurer, at the request of the insured, will submit to the jurisdiction of any Court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such Court jurisdiction.  All matters arising hereunder shall be determined in accordance with the law and practice of such Court.  However, nothing in this provision constitutes a waiver of the Insurer's rights to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States of America or of any State in the United States.

It is further agreed that service of process in such suit may be made upon the Insurer by certified mail, return receipt requested, addressed to the Insurer in care of it's **Corporate Secretary**, Attention: Legal Department, General Star Indemnity Company, 120 Long Ridge Road, Stamford, CT  06902-1843.  In any suit instituted under this contract, Insurer will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-referenced Corporate Secretary, or his designee, is authorized and directed to accept service of process on behalf of the Insurer in any such suit or upon the request of the insured to give a written undertaking to the insured that it will enter a general appearance upon the Insurer's behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States of America, which makes provision therefor, the Insurer hereby designates the Superintendent, Commissioner or Director of Insurance, or such other insurance department representative, or such other governmental officer, such as the Secretary of State, specified for that purpose in the statute, or his successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the Insurer's Corporate Secretary as the person to whom the said insurance department representative is authorized to mail such process or a true copy thereof.

© Copyright, General Star Management Company, Stamford, CT 2010.
Includes copyrighted material of Insurance Services Office, Inc., with its permission

# GENERAL STAR INDEMNITY COMPANY

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# MINIMUM EARNED PREMIUM

Item 5. of Condition A Cancellation of the COMMON POLICY CONDITIONS is deleted and replaced by the following:

5.      If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata and such refund will be subject to minimum earned premium of _____25% of the TOTAL PREMIUM shown under item 3. of the COMMON POLICY DECLARATIONS. The cancellation will be effective even if we have not made or offered a refund.

GSI-04-I604 (1/01)                     ©Copyright, General Star Management Company, Stamford, CT1999-2000.
Includes copyrighted material of Insurance Services Office, Inc., with its permission

POLICY NUMBER: IMA-335234

IL 09 85 01 15

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

**SCHEDULE**

| SCHEDULE – PART I |
| --- |
| **Terrorism Premium (Certified Acts)**    **$** REJECTED |
| **This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(ies):** |
| **Additional information, if any, concerning the terrorism premium:** |

| SCHEDULE – PART II |
| --- |
| **Federal share of terrorism losses**    ____    **% Year: 20** ____ |
| (Refer to Paragraph **B.** in this endorsement.) |
| **Federal share of terrorism losses**    ____    **% Year: 20** ____ |
| (Refer to Paragraph **B.** in this endorsement.) |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

      © Insurance Services Office, Inc., 2015

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage (as shown in Part **II** of the Schedule of this endorsement or in the policy Declarations) of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

IL 02 62 02 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# GEORGIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **A.1.** of the **Cancellation** Common Policy Condition is replaced by the following:

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation stating a future date on which the policy is to be cancelled, subject to the following:

**a.** If only the interest of the first Named Insured is affected, the effective date of cancellation will be either the date we receive notice from the first Named Insured or the date specified in the notice, whichever is later. However, upon receiving a written notice of cancellation from the first Named Insured, we may waive the requirement that the notice state the future date of cancellation, by confirming the date and time of cancellation in writing to the first Named Insured.

**b.** If by statute, regulation or contract this policy may not be cancelled unless notice is given to a governmental agency, mortgagee or other third party, we will mail or deliver at least 10 days' notice to the first Named Insured and the third party as soon as practicable after receiving the first Named Insured's request for cancellation.

Our notice will state the effective date of cancellation, which will be the later of the following:

**(1)** 10 days from the date of mailing or delivering our notice; or

**(2)** The effective date of cancellation stated in the first Named Insured's notice to us.

**B.** Paragraph **A.5.** of the **Cancellation** Common Policy Condition is replaced by the following:

**5. Premium Refund**

**a.** If this policy is cancelled, we will send the first Named Insured any premium refund due.

**b.** If we cancel, the refund will be pro rata, except as provided in **c.** below.

**c.** If the cancellation results from failure of the first Named Insured to pay, when due, any premium to us or any amount, when due, under a premium finance agreement, then the refund may be less than pro rata. Calculation of the return premium at less than pro rata represents a penalty charged on unearned premium.

**d.** If the first Named Insured cancels, the refund may be less than pro rata.

**e.** The cancellation will be effective even if we have not made or offered a refund.

 © Insurance Services Office, Inc., 2014

**C.** The following is added to the **Cancellation** Common Policy Condition and supersedes any other provisions to the contrary:

If we decide to:

**1.** Cancel or nonrenew this policy; or

**2.** Increase current policy premium by more than 15% (other than any increase due to change in risk, exposure or experience modification or resulting from an audit of auditable coverages); or

**3.** Change any policy provision which would limit or restrict coverage;

then:

We will mail or deliver notice of our action (including the dollar amount of any increase in renewal premium of more than 15%) to the first Named Insured and lienholder, if any, at the last mailing address known to us. Except as applicable as described in Paragraph **D.** or **E.** below, we will mail or deliver notice at least:

    **a.** 10 days before the effective date of cancellation if this policy has been in effect less than 60 days or if we cancel for nonpayment of premium; or

    **b.** 45 days before the effective date of cancellation if this policy has been in effect 60 or more days and we cancel for a reason other than nonpayment of premium; or

    **c.** 45 days before the expiration date of this policy if we decide to nonrenew, increase the premium or limit or restrict coverage.

**D.** The following provisions apply to insurance covering residential real property only provided under the:

Capital Assets Program (Output Policy) Coverage Part;

Commercial Property Coverage Part;

Farm Coverage Part;

if the named insured is a natural person.

With respect to such insurance, the following is added to the **Cancellation** Common Policy Condition and supersedes any provisions to the contrary except as applicable as described in Paragraph **E.:**

**1.** When this policy has been in effect for 60 days or less and is not a renewal with us, we may cancel for any reason by notifying the first Named Insured at least 10 days before the date cancellation takes effect.

**2.** When this policy has been in effect for more than 60 days, or at any time if it is a renewal with us, we may cancel for one or more of the following reasons:

    **a.** Nonpayment of premium, whether payable to us or to our agent;

    **b.** Upon discovery of fraud, concealment of a material fact, or material misrepresentation made by or with the knowledge of any person insured under this policy in obtaining this policy, continuing this policy or presenting a claim under this policy;

    **c.** Upon the occurrence of a change in the risk which substantially increases any hazard insured against; or

    **d.** Upon the violation of any of the material terms or conditions of this policy by any person insured under this policy.

We may cancel by providing notice to the first Named Insured at least:

    **(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

    **(2)** 45 days before the effective date of cancellation if we cancel for any of the reasons listed in **b.**, **c.** or **d.** above.

**E.** With respect to a policy that is written to permit an audit, the following is added to the **Cancellation** Common Policy Condition:

If you fail to submit to or allow an audit for the current or most recently expired term, we may cancel this policy subject to the following:

**1.** We will make two documented efforts to send you and your agent notification of potential cancellation. After the second notice has been sent, we have the right to cancel this policy by mailing or delivering a written notice of cancellation to the first Named Insured at least 10 days before the effective date of cancellation, but not within 20 days of the first documented effort.

**2.** If we cancel this policy based on your failure to submit to or allow an audit, we will send the written notice of cancellation to the first Named Insured at the last known mailing address by certified mail or statutory overnight delivery with return receipt requested.

# COMMERCIAL GENERAL LIABILITY DECLARATIONS

**POLICY #** IMA-335234

### 1.   LIMITS OF INSURANCE

| | | |
|---|---|---|
| EACH OCCURENCE LIMIT | $ 1,000,000 | |
| DAMAGE TO PREMISES RENTED TO YOU LIMIT | $ 100,000 | Any one premises |
| MEDICAL EXPENSE LIMIT | $ 5,000 | Any one person |
| PERSONAL & ADVERTISING INJURY LIMIT | $ 1,000,000 | Any one person or organization |
| GENERAL AGGREGATE LIMIT | | $ 2,000,000 |
| PRODUCTS/ COMPLETED OPERATIONS AGGREGATE LIMIT | | $ 1,000,000 |

### 2.   LOCATION(S) OF ALL PREMISES YOU OWN, RENT OR OCCUPY:

| Loc# | Address | City | State Zip | Territory Code |
|---|---|---|---|---|
| 1 | 4649 MEMORIAL DRIVE | DECATUR | GA 30032 | 2 |

### 3.

| LOC # | CLASSIFICATION | CODE NO. | KEY LTR | PREMIUM BASIS | RATES Prem/Ops | Prod/Comp Ops | ADVANCE PREMIUM Prem/Ops | Prod/Comp Ops |
|---|---|---|---|---|---|---|---|---|
| 1 | HOTELS AND MOTELS | 45193 | S | 1,000,000 | 4.78 | INCL | 4,783 | INCL |

| | | |
|---|---|---|
| **SUBTOTAL** | 4,783 | |
| **TERRORISM RISK INSURANCE ACT (TRIA) PREMIUM:** | REJECTED | |
| **(TRIA COVERAGE NOT APPLICABLE UNLESS PREMIUM SHOWN ABOVE)** | | |
| **TOTAL ADVANCE PREMIUM** | 4,783 | |

Audit period annual unless otherwise stated

**4.**   FORMS AND ENDORSEMENTS FORMING A PART OF THIS COVERAGE PART AND MADE PART OF THIS POLICY **ON ITS EFFECTIVE DATE:**

See Schedule of Forms & Endorsements GSI-04-FORMSCH (1-01)

5.   **RETROACTIVE DATE:_____(Applies only to CG 00 02 - Claims Made Commercial General Liability Coverage Form. If blank, Retroactive Date is the inception date of this policy shown under Item 2 POLICY PERIOD of the COMMON POLICY DECLARATIONS)**

   a.   Coverage A of this insurance  does not apply to "bodily injury" or "property damage" which occurs before the Retroactive Date shown above and Coverage B of this insurance does not apply to "personal and advertising injury" caused by an offense committed before  the Retroactive Date shown above.

   b.   If applicable, the Retroactive Date for the insurance provided by some endorsements that are attached to and form a part of this Coverage Part may be different from the Retroactive Date shown above. In that case, the Retroactive Date applicable to the insurance provided by such endorsements will be shown in those endorsements.

**THESE DECLARATIONS ARE PART OF THE COMMON POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.**

COMPANY

COMMERCIAL GENERAL LIABILITY
CG 00 01 12 07

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

  **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

    **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

  No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

  **b.** This insurance applies to "bodily injury" and "property damage" only if:

    **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

    **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

  **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

  **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

    **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

    **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

    **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## 2. Exclusions

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© ISO Properties, Inc., 2006

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

© ISO Properties, Inc., 2006

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

**(b)** the operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

© ISO Properties, Inc., 2006

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Distribution Of Material In Violation Of Statutes**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

 **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

  **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

  **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

 No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

 **b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

 This insurance does not apply to:

 **a. Knowing Violation Of Rights Of Another**

  "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

 **b. Material Published With Knowledge Of Falsity**

  "Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

 **c. Material Published Prior To Policy Period**

  "Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

 **d. Criminal Acts**

  "Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

 **e. Contractual Liability**

  "Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

 **f. Breach Of Contract**

  "Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

 **g. Quality Or Performance Of Goods – Failure To Conform To Statements**

  "Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

 **h. Wrong Description Of Prices**

  "Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

 **i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

  "Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

  However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

 **j. Insureds In Media And Internet Type Businesses**

  "Personal and advertising injury" committed by an insured whose business is:

  **(1)** Advertising, broadcasting, publishing or telecasting;

  **(2)** Designing or determining content of websites for others; or

© ISO Properties, Inc., 2006

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Distribution Of Material In Violation Of Statutes**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**COVERAGE C MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

© ISO Properties, Inc., 2006

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A.**

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by,

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

© ISO Properties, Inc., 2006

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

  **(1)** With respect to liability arising out of the maintenance or use of that property; and

  **(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage **C**;

**b.** Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**c.** Damages under Coverage **B**.

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to Paragraph **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

**a.** Damages under Coverage **A**; and

**b.** Medical expenses under Coverage **C**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

  **(1)** How, when and where the "occurrence" or offense took place;

  **(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

© ISO Properties, Inc., 2006

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

    © ISO Properties, Inc., 2006

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   b. While it is in or on an aircraft, watercraft or "auto"; or

   c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   b. Vehicles maintained for use solely on or next to premises you own or rent;

   c. Vehicles that travel on crawler treads;

   d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      (1) Power cranes, shovels, loaders, diggers or drills; or

      (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

   e. Vehicles not described in Paragraph **a.**, **b.**, **c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      (2) Cherry pickers and similar devices used to raise or lower workers;

   f. Vehicles not described in Paragraph **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   (1) Equipment designed primarily for:

      (a) Snow removal;

      (b) Road maintenance, but not construction or resurfacing; or

      (c) Street cleaning;

   (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

   f. The use of another's advertising idea in your "advertisement"; or

   g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warn-ings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of oth-ers but not sold.

**22.** "Your work":

  **a.** Means:

    **(1)** Work or operations performed by you or on your behalf; and

    **(2)** Materials, parts or equipment furnished in connection with such work or operations.

  **b.** Includes:

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, du-rability, performance or use of "your work", and

    **(2)** The providing of or failure to provide warn-ings or instructions.

© ISO Properties, Inc., 2006
**CG 00 01 12 07**   ☐

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# COMMERCIAL GENERAL LIABILITY COMBINED PROVISIONS ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

---

**TABLE OF CONTENTS OF THIS ENDORSEMENT**

|  |  | Begins on Page |
|---|---|---|
| A. | Automatic Additional Insureds | 1 |
| B. | Deductible Liability | 2 |
| C. | Premium Basis Designation | 3 |
| D. | Exclusions | 3 |
| E. | Premium Audit | 11 |
| F. | No Duty or Responsibility to Send Notice When We Do Not Renew | 12 |
| G. | Definitions | 12 |

---

All of the following numbered paragraphs apply to this policy, unless stated here: _____

**1.   SECTION II – WHO IS AN INSURED**
The following provisions **4., 5.** and **6.** are added to **SECTION II – WHO IS AN INSURED**

**AUTOMATIC ADDITIONAL INSURED – VENDORS**

**4.   a**.  Any of your vendors located in the United States of America (including its territories and possessions), Puerto Rico and Canada with whom you have agreed in writing in a contract or agreement or received a written request or written insurance specifications, including email or fax requiring you to add as an additional insured on your policy, but only with respect to "bodily injury", "property damage" or "personal or advertising injury" arising out of "your products", which are distributed or sold in the regular course of the vendor's business, covered by this policy.

**b**.  With respect to the insurance afforded these additional insureds, the following exclusions apply:
   **(1)** "Bodily injury", "property damage" or "personal and advertising injury" for which the vendor is obligated to pay damages by reason of the assumption of liability in a written contract or written agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of written contract or written agreement;
   **(2)** Any express warranty unauthorized by you;
   **(3)** Any physical or chemical change in the product made intentionally by the vendor;
   **(4)** Repackaging, except when unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container.
   **(5)** Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;
   **(6)** Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;
   **(7)** Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor; or

© Copyright, General Star Management Company, Stamford, CT 2016.
Includes copyrighted material of Insurance Services Office, Inc., with its permission

**(8)** "Bodily injury", "property damage" or "personal and advertising injury" arising out of the sole negligence of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf.  However, this exclusion does not apply to:

    **i.**  The exception s contained in Sub-paragraphs **(4)** or **(6)**; or

    **ii.**  Such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

**c.** This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

## AUTOMATIC ADDITIONAL INSURED – TRADE EVENT

**5.**  **a.** Any person or organization acting as the Trade Sponsor or Organizer and for whom you are participating in a Trade Event or Show when you and such person or organization have agreed in writing in a contract or agreement or received a written request or written insurance specifications, including email or fax requiring that such person(s) or organization(s) be added as an additional insured on your policy.  Such person or organization is an insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your participation in a Trade Event or Show.

    **b.** With respect to the insurance afforded to these additional insureds, this insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" which takes place after your participation in the Trade Event or Show has ended.

## AUTOMATIC ADDITIONAL INSURED – MORTGAGEE, ASSIGNEE, OR RECEIVER

**6.**  **a.** Any mortgagee, assignee, or receiver whom you have agreed in writing in a contract or agreement to add as an additional insured on your policy, but only with respect to their liability as mortgagee, assignee, or receiver and arising out of the ownership, maintenance, or use by you of your premises which are covered by this policy.

    **b.** With respect to the insurance afforded to these additional insureds, this insurance does not apply to structural alterations, new construction or demolition operations performed by or on behalf of the mortgage, assignee or receiver.

## 2.  DEDUCTIBLE LIABILITY

| |
|---|
| $        Deductible applied on a Per Claim Basis<br>($0, unless an amount is shown) |

**a.** Our obligation, under **SECTION I – COVERAGES** (other than **COVERAGE C MEDICAL PAYMENTS**) to pay damages for which the insured is legally liable, and costs or expenses applies only to the sum of damages, costs or expenses which are in excess of any deductible amount stated above.

**b.** The deductible amount stated above applies on a per claim basis to all damages because of injury or damage sustained by any one person or organization, and costs or expenses, as the result of any one:

    **(1)** "Occurrence"; or

    **(2)** Offense

whichever is applicable to the claim under which coverage is being afforded.

**c.** The terms of this insurance, including those with respect to:

    **(1)** Our right and duty to defend any "suit" seeking those damages; and

    **(2)** Your duties in the event of an "occurrence", offense, claim or "suit"

apply irrespective of the application of the deductible amount.

**d.** We may pay any or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

**e.** The above deductible amount does not apply to salaries and expenses of our own "employee(s)".

**3. PREMIUM BASIS DESIGNATION**

The Premium Bases shown on the **Declarations Page** and identified by key letter in parentheses applies as follows:

| KEY LETTER | PREMIUM BASE | HOW RATES APPLY |
|---|---|---|
| (a) | Area | Per 1,000 square feet |
| (c) | Total Cost | Per $1,000 of total cost |
| (m) | Admissions | Per 1,000 admissions |
| (p) | Payroll | Per $1,000 of payroll |
| (s) | Gross Sales | Per $1,000 of gross sales |
| (t) | Other | Describe _____ |
| (u) | Units | Per unit (describe) _____ |

These premium bases are as outlined in the Insurance Services Office's Commercial Lines Manual Classification Table and Division Six General Liability Sections unless otherwise indicated in the policy. Nothing herein contained shall be held to vary, waive, alter or extend any of the terms, conditions, agreements or declarations of the policy other than herein stated.

**4. EXCLUSION - TOTAL POLLUTION**

Paragraph **f. Pollution** in Subsection **2. Exclusions** of **SECTION I - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and Paragraphs **m. Pollution** and **n. Pollution-Related** in Subsection **2. Exclusions** of **SECTION 1 – COVERAGE B PERSONAL AND ADVERSTISING INJURY LIABILITY** are deleted and replaced by the following:

This policy does not apply to any damages because of "bodily injury", "property damage" or "personal or advertising injury" for which the insured is legally liable, or costs or expenses arising out of, resulting from, caused or contributed to by:

**a.** The actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**b.** Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**(2)** Claim or "suit" by or on behalf of a governmental authority or others for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

**c.** Any actual or alleged; breach of duty, negligent act, error or omission, or any insured or of any person for whose acts any insured is legally liable which results in damages, loss, cost or expense as described in Paragraph **a.** or **b.** above.

This exclusion applies whether or not such damages, costs or expenses arise out of, result from are caused or contributed by any "bodily injury", "property damage" or "personal and advertising injury" which may be included within the "products-completed operations hazard".

**5. EXCLUSION – EMPLOYER'S LIABILITY – EMPLOYEE, VOLUNTEER WORKER, CASUAL WORKER AND TEMPORARY WORKER**

Paragraph **e. Employer's Liability** in Subsection **2. Exclusions** of **SECTION I - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** is deleted and replaced by the following:

**e. Employer's Liability**
"Bodily injury" to:

**(1) (a)** Any "employee", "volunteer worker", "casual worker" or "temporary worker" of any insured;
**(b)** Any contractor, hired or retained by or for any insured; or
**(c)** Any "employee", "volunteer worker", "casual worker" or "temporary worker" of such contractor,

arising out of and in the course of:

**(d)** Employment by any insured; or
**(e)** Performing duties related to the conduct of any insured's business; or

**(2)** The spouse, child, parent, brother or sister of that:

**(a)** "Employee", "volunteer worker", "casual worker" or "temporary worker" of any insured;
**(b)** Contractor, hired or retained by or for any insured; or
**(c)** "Employee", "volunteer worker", "casual worker" or "temporary worker" of such contractor,

as a consequence of Paragraph **e.(1)** above.

This exclusion applies:

**(3)** Whether any insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the "bodily injury";

**(4)** To all claims or "suits" by any person or organization for damages of "bodily injury" including damages for care and loss of services;

**(5)** To "bodily injury" to any worker whose activities are related to the job(s) or project(s) and the job or project location(s) at which they are performed; or

**(6)** To any liability assumed under any contract,

as a consequence of Paragraph **e.(1)** above.

For the purpose of this exclusion, the following definition is added:

**(1)** "Casual worker" means:

**(a)** A person, other than a person furnished to you by a labor union, who acts at the direction of and within the scope of duties determined by any insured, and is employed by any insured for a short time and for a limited and temporary purpose; or
**(b)** A person for whom any insured, or a labor leasing firm acting on behalf of any insured, does not withhold federal income taxes and pay federal unemployment tax.

**6. EXCLUSION – RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION OF LAW**

Exclusion **q. Distribution Of Material In Violation Of Statutes** in Subsection **2. Exclusions** of **SECTION I – COVERAGE A BODILY INJURY AND PROPERTY DAMAGES LIABILITY** and Exclusion **p. Distribution Of Material In Violation Of Statutes** in Subsection **2. Exclusions** of **SECTION I – COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY** are deleted and replaced by the following:

**Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury", "property damage" or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**7. EXCLUSIONS - INFRINGEMENT OR DILUTION OF INTELLECTUAL PROPERTY RIGHTS OR MISAPPROPRIATION, USE OR DISCLOSURE OF TRADE SECRETS; BREACH OF CONTRACT**

**a.** The following exclusion is added to Subsection **2. Exclusions** of **SECTION I – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**:

This policy does not apply to any damages because of "bodily injury" or "property damage" for which any insured is legally liable, or costs or expenses, arising out of, resulting from, caused or contributed to by:

**(1)** Any alleged or actual infringement or dilution of intellectual property rights, including, but not limited to, copyright, title, slogan, patent, service name, service mark, trade name, trademark, trade dress;

**(2)** Any alleged or actual misappropriation, use or disclosure of trade secrets;

**(3)** Any alleged or actual unfair competition, plagiarism, piracy, or wrongful appropriation of ideas;

**(4)** Any alleged or actual unfair or otherwise wrongful use of another's written, filmed, broadcast, photographed, taped or recorded material;

**(5)** Any alleged or actual unfair or deceptive trade practice(s); or

**(6)** Any alleged or actual violation of the right of publicity, or wrongful appropriation of name, likeness or persona.

**b.** Paragraph **f. Breach Of Contract** and Paragraph **i. Infringement of Copyright, Patent, Trademark Or Trade Secret** of Subsection **2. Exclusions** in **SECTION I - COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY** are deleted and replaced by the following:

**f. Breach of Contract**
"Personal and advertising injury" arising out of, resulting from, caused by, contributed to by, or also constituting a breach of contract.

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**
"Personal and advertising injury" arising out of, resulting from, caused by, contributed to by, or otherwise constituting:

**(1)** Any alleged or actual infringement or dilution of intellectual property rights, including, but not limited to, copyright, title, slogan, patent, service name, service mark, trade name, trademark, trade dress;

**(2)** Any alleged or actual misappropriation, use or disclosure of trade secrets;

**(3)** Any alleged or actual unfair competition, plagiarism, piracy, or wrongful appropriation of ideas;

**(4)** Any alleged or actual unfair or otherwise wrongful use of another's written, filmed, broadcast, photographed, taped or recorded material;

**(5)** Any alleged or actual unfair or deceptive trade practice(s); or

**(6)** Any alleged or actual violation of the right of publicity, or wrongful appropriation of name, likeness or persona.

**c.** With respect to Items **7.a.** and **7.b.** above, this policy does not apply to intellectual property rights violation, as described in Subparagraphs **(1)** through **(6)** of Item **7**.**a**. or Paragraph **i. Infringement Of Copyright, Patent, Trademark Or Trade Secret** of Item **7.b.**, for which any insured is legally liable, or costs or expenses, arising out of, resulting from, caused by, contributed to by, or otherwise constituting any "suit", demand, order, decree, judgment or proceeding entered against any insured, on or prior to the

© Copyright, General Star Management Company, Stamford, CT 2016.
Includes copyrighted material of Insurance Services Office, Inc., with its permission

effective date of this policy, based upon or arising the same or substantially similar fact, circumstance or situation underlying or alleged therein.

## 8.  EXCLUSION - ASBESTOS LIABILITY

The following exclusion is added to Subsection **2. Exclusions** of **SECTION I – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and to Subsection **2. Exclusions** of **SECTION I – COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY:**

This policy does not apply to damages because of "bodily injury", "property damage" or "personal or advertising injury" for which the insured is legally liable, or costs or expenses, arising directly or indirectly out of, resulting from, cause or contributed to by:

**a.** The use of, sale of, installation of, removal of, abatement of, distribution of, containment of, or exposure to asbestos, asbestos products, asbestos-containing material, asbestos fibers, or asbestos dust;

**b.** The actual or threatened abatement, mitigation, removal or disposal of asbestos, asbestos products, asbestos-containing material, asbestos fibers, or asbestos dust;

**c.** Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with Paragraph a. or b. above; or

**d.** Any obligation of the insured to indemnify or contribute with any party in connection with Paragraph a., b. or c. above.

## 9.  EXCLUSION - EMPLOYMENT-RELATED PRACTICES LIABILITY

The following exclusion is added to Subsection **2. Exclusions** of **SECTION I – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and to Subsection **2. Exclusions** of **SECTION I – COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY:**

This insurance does not apply to any damages because of "bodily injury" or "personal and advertising injury" to:

**a.** A person arising out of any:
   **(1)** Refusal to employ that person;
   **(2)** Termination of that person's employment; or
   **(3)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**b.** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Subparagraph a. **(1)**, **(2)**, or **(3)** above is directed.

This exclusion applies:

**(a)** Whether the injury-causing event described in Subparagraph **a. (1)**, **(2)** or **(3)** above occurs before employment, during employment or after employment of that person;

**(b)** Whether the insured may be liable as an employer or in any other capacity; and

**(c)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**10. EXCLUSION - LEAD**

The following exclusion is added to Subsection **2. Exclusions** of **SECTION I – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and to Subsection **2. Exclusions** of **SECTION I – COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY:**

This policy does not apply to damages because of "bodily injury", "property damage" or "personal and advertising injury" for which the insured is legally liable, or costs or expenses, arising out of, resulting from, caused or contributed to by:

**a.** The toxic or pathological properties of lead, lead compounds or lead contained in any materials;

**b.** The abatement, mitigation, removal or disposal of lead, lead compounds or materials containing lead;

**c.** Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with Paragraph **a.** or **b.** above; or

**d.** Any obligation to share damages with or repay anyone else who must pay damages in connection with Paragraph **a.**, **b.** or **c.** above.


**11. EXCLUSION – SILICA**

The following exclusion is added to Subsection **2. Exclusions** of **SECTION I – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and to Subsection **2. Exclusions** of **SECTION I – COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

This policy does not apply to damages because of "bodily injury", "property damage" or "personal and advertising injury" for which the insured is legally liable, or costs or expenses, arising out of, resulting from, caused by or contributed to by, in whole or in part, the actual, alleged, threatened or suspected inhalation of, congestion of, contact with, exposure to existence of, or presence of:

**a.** "Silica", "silica-related dust", exposure to silica or the use of silica;

**b.** Any claim or "suit" by or on behalf of any governmental authority or any other party involving a request, demand, order or statutory or regulatory requirement regarding:
   **(1)** Assessing the presence, absence or amount or effects of "silica" or "silica-related dust";
   **(2)** Identifying, sampling or testing for, detecting, monitoring, cleaning up, removing, containing, neutralizing, treating, detoxifying, remediating, neutralizing, abating, disposing of or mitigating silica; or
   **(3)** Responding to "silica" or "silica-related dust" in any way other than as described in Subparagraphs **b.(1)** and **b.(2)** above;

**c.** Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with Paragraph **a.** or **b.** above; or

**d.** Any obligation of the insured to indemnify or contribute with any party in connection with Paragraph **a.**, **b.** or **c.** above.

For the purpose of this exclusion, the following definitions are added:

**(a)** "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

**(b)** "Silica-related dust" means a mixture or combination or silica and other dust or particles.

## 12. EXCLUSION - FUNGUS(ES) AND SPORE(S)

The following exclusion is added to Subsection **2. Exclusions** of **SECTION I – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and to Subsection **2. Exclusions** of **SECTION I – COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILTY:**

This policy does not apply to damages because of "bodily injury", "property damage" or "personal and advertising injury" for which the insured is legally liable, or costs or expenses, arising out of, resulting from, caused or contributed to by:

**a.** Any "fungus(es)" or "spore(s)";

**b.** Any solid, liquid, vapor, or gas produced by or arising out of any "fungus(es)" or "spore(s)";

**c.** Any material, product, building component, or building structure that contains, harbors, nurtures or acts as a medium for any "fungus(es)" or "spore(s)";

**d.** Any intrusion, leakage, or accumulation of water or any other liquid that contains, harbors, nurtures or acts as a medium for "fungus(es)" or "spore(s)";

**e.** The actual or threatened abatement, mitigation, removal or disposal of "fungus(es)" or "spore(s)" or any material, product, building component, or building structure that contains, harbors, nurtures or acts as a medium for any "fungus(es)" or "spore(s)";

**f.** Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with Paragraph **a., b., c., d.** or **e.** above; or

**g.** Any obligation of the insured to indemnify or contribute with any party in connection with Paragraph **a., b., c., d., e.** or **f.** above.

The above applies regardless of any other cause, event, material, product or building component that contributed concurrently or in any sequence to such damages for which the insured is legally liable, or costs or expenses.

This exclusion does not apply to "bodily injury" as the result of the ingestion of goods intended for human consumption.

For the purpose of this exclusion, the following definitions are added:

**(a)** "Fungus(es)" includes, but is not limited to, any form or type of mildew, mold, mushroom, rust, smuts, or yeast, including any allergens, irritants, mycotoxins, or scents, byproducts, microbial volatile organic compounds produced by or associated therewith.

**(b)** "Spore(s)" means any reproductive body produced by or arising out of any "fungus(es)".


## 13. EXCLUSION – BISPHENOL A

The following exclusion is added to Subsection **2. Exclusions** of **SECTION I – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and to Subsection **2. Exclusions** of **SECTION I – COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILTY:**

This policy does not apply to:
**a.** Any damages because of "bodily injury", "property damage" or "personal and advertising injury" for which any insured is legally liable, or costs or expenses, actually or allegedly arising out of, resulting from, caused by or contributed to by bisphenol A or exposure to bisphenol A or the use of bisphenol A;

**b.** Any damages because of "bodily injury", "property damage" or "personal and advertising injury" or any loss, cost or expense arising out of any **(i)** claim or "suit" by or on behalf of any governmental authority or

© Copyright, General Star Management Company, Stamford, CT 2016.
Includes copyrighted material of Insurance Services Office, Inc., with its permission

any other alleged responsible party because of, or **(ii)** request, demand, order or statutory or regulatory requirement that any insured or any other person or entity should be, or should be responsible for:

**(1)** Assessing the presence, absence, or amount or effects of bisphenol A;

**(2)** Identifying, sampling or testing for, detecting, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, abating, disposing of or mitigating bisphenol A; or

**(3)** Responding to bisphenol A in any way other than as described in Subparagraphs **b.(1)** and **(2)** above;

**c.** Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with any of the subsections above; or

**d.** Any obligation to share damages with or repay someone else who must pay damages as described in any of the subsections above.

## 14. EXCLUSION – AIRCRAFT PRODUCTS/GROUNDING

The following exclusion is added to Subsection **2. Exclusions of SECTION I – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

This policy does not apply to any damages because of "bodily injury" or "property damage" for which any insured is legally liable, or loss, costs or expenses, included in the "products-completed operations hazard" and arising out of, resulting from, caused by or contributed to by any "aircraft product" or the "grounding" of any aircraft.

The following definitions are added to the policy:
**(1)** "Aircraft product" means:
**(a)** Aircraft (including missile or spacecraft, and any ground support or control equipment used therewith);
**(b)** Any article furnished by you or on your behalf and installed in an aircraft or used in connection with an aircraft, or for spare parts for an aircraft, including ground handling tools and equipment;
**(c)** Any of "your product" used at an airport for the purpose of guidance, navigation or direction of aircraft; or
**(d)** Training aids, instructions, manuals, blueprints, engineering or other data or advice, and services and labor relating to such aircraft, articles or products.
**(2)** "Grounding" means:
The withdrawal of one or more aircraft from flight operations or the imposition of speed, passenger or load restrictions on such aircraft, by reason of the existence of or alleged or suspected existence of any defect, fault or condition in such aircraft or any part thereof sold, handled or distributed by you or on your behalf, or manufactured, assembled or processed by any other person or organization:
**(a)** According to specifications, plans, suggestions, orders, or drawings provided by you or on your behalf; or
**(b)** With tools, machinery or other equipment furnished to such persons or organizations by you or on your behalf, whether such aircraft so withdrawn are owned or operated by the same or different persons, organizations or corporations.

## 15. EXCLUSION – BENZENE AND BENZENE RELATED SUBSTANCES

The following exclusion is added to Subsection **2. Exclusions** of **SECTION I – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and to Subsection **2. Exclusions** of **SECTION I – COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILTY:**

This policy does not apply to any damages because of "bodily injury", "property damage" or "personal and advertising injury" for which any insured is legally liable, or loss, costs or expenses, arising out of, resulting from caused by or contributed to by:
**(1)** Benzene or benzene related substances;
**(2)** Any **(i)** claim or suit by or on behalf of any governmental authority or any other alleged responsible party because of, or **(ii)** request, demand, order or statutory or regulatory requirement that any insured or any other person or entity is responsible for, or should be responsible for:

**(a)** Assessing the presence, absence or amount or effects of benzene or benzene related substances;

**(b)** Identifying, sampling or testing for, detecting, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, abating, disposing of or mitigating benzene or benzene related substances; or

**(c)** Responding to benzene or benzene related substances in any way other than as described in **(2)(a)** and **(2)(b)** above;

**(3)** Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with any of the subsections above; or

**(4)** Any obligation to share damages, or loss, costs or expenses, with or repay someone else in connection with any of the subsections above.

As used in this exclusion benzene or benzene related substances means:

**(1)** Benzene;

**(2)** Any derivative of benzene including but not limited to toluene; or

**(3)** Any compound containing benzene including but not limited to xylene.

## 16. EXCLUSION – PHTHALATES

The following exclusion is added to Subsection **2. Exclusions** of **SECTION I – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and to Subsection **2. Exclusions** of **SECTION I – COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILTY:**

This policy does not apply to any damages because of "bodily injury", "property damage" or "personal and advertising injury" for which any insured is legally liable, or loss, costs or expenses, arising out of, resulting from caused by or contributed to by:

**(1)** Phthalates, exposure to phthalates or the use phthalates;

**(2)** Any **(i)** claim or suit by or on behalf of any governmental authority or any other alleged responsible party because of, or **(ii)** request, demand, order or statutory or regulatory requirement that any insured or any other person or entity is responsible for, or should be responsible for:

**(a)** Assessing the presence, absence or amount or effects of phthalates, exposure to phthalates or the use of phthalates;

**(b)** Identifying, sampling or testing for, detecting, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, abating, disposing of or mitigating phthalates in any way other than as described in **(2)(a)** and **(2)(b)** above;

**(3)** Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with any of the subsections above; or

**(4)** Any obligation to share damages, or loss, costs or expenses, with or repay someone else in connection with any of the subsections above.

## 17. EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY

**A.** Exclusion **2.p.** of **Section I – Coverage A Bodily Injury And Property Damage Liability** is replaced by the following:

### 1. Exclusions
This insurance does not apply to:

**p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**
Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

© Copyright, General Star Management Company, Stamford, CT 2016.
Includes copyrighted material of Insurance Services Office, Inc., with its permission

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I – Coverage B Personal And Advertising Injury Liability:**

**2. Exclusions**
This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

## 18. EXCLUSION - CROSS SUITS

The following exclusion is added to the policy:

This policy does not apply to any damages or costs or expenses, arising out of, resulting from, caused or contributed to by a claim or "suit" for damages by any named insured against any other named insured.

## 19. PREMIUM AUDIT

Paragraph **5. Premium Audit** in **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS** is deleted and replaced by the following:

**5. Premium Audit**

   **a.** We will compute all premiums for the Coverage Part in accordance with our rules and rates.

   **b.** The premium stated in the **Declarations Page** for the Coverage Part as advance premium is both a minimum and deposit premium.   At the close of each policy period, we will compute the final earned premium for that period, which will include any interim audit adjustments performed.

   **(1)** If the computed earned premium exceeds the estimated advance premium paid, the First Named Insured will pay the excess to us.  Audit premium is due and payable upon receipt of our notice by the First Named Insured.
   **(2)** If the computed earned premium is less than the paid estimated advance premium, then the estimated advance premium will be the minimum premium and final earned premium for the policy period.

   **c.** The First Named Insured must keep record of the information we need for premium computation, and send us copies at such times as we may request.  We reserve the right to examine your books and

**a.** records relating to the computation of audit premium in accordance with Paragraph **C. Examination Of Your Books And Records** in the **COMMON POLICY CONDITIONS**.

**b.** If the policy is written on a flat premium basis, it is not subject to premium audit.

**c.** If we verify that operations were performed by contractors or subcontractors you hired, but were not insured or were not adequately insured, we will use the "total cost" of work performed for you by such contractors or subcontractors as if it were payroll to calculate the appropriate premium for the specific classification(s) based on our rates and rules in effect as of the inception date of the policy. It is your responsibility to pay any additional premium due.

You will obtain and maintain Certificates of Insurance from all contractors or subcontractors you hire providing evidence of Commercial General Liability insurance, including products/completed operations insurance. If you fail to obtain the Certificates of Insurance, then the contractor(s) and/or subcontractor(s) will be considered inadequately insured and an additional premium will become due.

A contractor or subcontractor will be considered to be inadequately insured if they maintain Commercial General Liability insurance less than the limits of insurance shown in the Declarations of this policy.

The "total cost" of work performed means the total cost of all work incurred by the contractor or subcontractor in connection with each specific project, including:

**(1)** The cost of all labor, materials and equipment furnished, used or delivered for use in the execution of the work including the cost of finished equipment installed whether or not furnished by the contractor, subcontractor, or by you; and

**(2)** All fees, bonuses or commissions made, paid or due.

## 20. NO DUTY OR RESPONSIBILITY TO SEND NOTICE WHEN WE DO NOT RENEW

Paragraph **9. When We Do Not Renew** of **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS** is deleted and replaced by the following:

**9. When We Do Not Renew**

If we decide not to renew this policy, we have no duty or responsibility to mail or deliver written notice of the non-renewal to any insured.

## 21. AMENDMENT OF INSURED CONTRACT DEFINITION

Paragraph **9.** "Insured contract" of **SECTION V - DEFINITIONS** is deleted and replaced by the following:

**9.** "Insured contract" means:
  **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";
  **b.** A sidetrack agreement;
  **c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;
  **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;
  **e.** An elevator maintenance agreement; or

© Copyright, General Star Management Company, Stamford, CT 2016.
Includes copyrighted material of Insurance Services Office, Inc., with its permission

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or your agents and subcontractors. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    **(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

## 22. AMENDMENT OF PERSONAL AND ADVERTISING INJURY DEFINITION

Paragraph **14.** "Personal and advertising injury" of **SECTION V - DEFINITIONS** is deleted and replaced by the following:

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy.

Nothing herein contained shall be held to vary, waive, alter or extend any of the terms, conditions, agreements or declarations of the policy other than herein stated.

© Copyright, General Star Management Company, Stamford, CT 2016.
Includes copyrighted material of Insurance Services Office, Inc., with its permission

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - PUNITIVE OR EXEMPLARY DAMAGES

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**LIQUOR LIABILITY COVERAGE PART**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**

This policy does not apply to any damages for which the insured is legally liable, or costs or expenses, arising out of, resulting from, caused or contributed to by punitive or exemplary damages, treble damages, any sum awarded in excess of compensatory damages or any multiple of compensatory damages.

© Copyright, General Star Management Company, Stamford, CT 2009.
Includes copyrighted material of Insurance Services Office, Inc., with its permission

# GENERAL STAR INDEMNITY COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - TOTAL LIQUOR

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

A.  This policy does not apply to any damages for which the insured is legally liable, or costs or expenses, arising out of, resulting from, caused or contributed to by:

   a.  The insured's manufacturing, selling or distributing alcoholic beverages;

   b.  The insured causing or contributing to the intoxication of any person;

   c.  The insured furnishing alcoholic beverages to any person. This includes a person under the legal drinking age or under the influence of alcohol;

   d.  Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages; or

   e.  The use of alcoholic beverages.

B.  Exclusion c. – Liquor Liability of paragraph 2. Of SECTION I – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY is deleted.

© Copyright, General Star Management Company, Stamford, CT1999-2000.
Includes copyrighted material of Insurance Services Office, Inc., with its permission

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "special nuclear material" or "by-product material".

© ISO Properties, Inc., 2007

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

- **(a)** Any "nuclear reactor";
- **(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";
- **(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;
- **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2007

COMMERCIAL GENERAL LIABILITY
CG 21 32 05 09

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# COMMUNICABLE DISEASE EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Communicable Disease**

"Bodily injury" or "property damage" arising out of the actual or alleged transmission of a communicable disease.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

**a.** Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

**b.** Testing for a communicable disease;

**c.** Failure to prevent the spread of the disease; or

**d.** Failure to report the disease to authorities.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Communicable Disease**

"Personal and advertising injury" arising out of the actual or alleged transmission of a communicable disease.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

**a.** Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

**b.** Testing for a communicable disease;

**c.** Failure to prevent the spread of the disease; or

**d.** Failure to report the disease to authorities.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

CG 21 44 07 98

# LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement effective    06/26/2017 12:01 A.M. standard time | Policy No.    IMA-335234 |
|---|---|
| Named Insured NORTHBROOK INDUSTRIES, INC DBA: UNITED INN | Countersigned by |

(Authorized Representative)

## SCHEDULE

| Premises: 4649 MEMORIAL DRIVE, DECATUR, GA 30032 |
|---|
| Project: |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance applies only to "bodily injury", "property damage", "personal and advertising injury" and medical expenses arising out of:

1. The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or
2. The project shown in the Schedule.

Copyright, Insurance Services Office, Inc., 1997

COMMERCIAL GENERAL LIABILITY
CG 21 73 01 15

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism".

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

**2.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

CG 21 73 01 15 © Insurance Services Office, Inc., 2014 Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

CG 22 45 07 98

# EXCLUSION - SPECIFIED THERAPEUTIC OR COSMETIC SERVICES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement effective   06/26/2017<br>                     12:01 A.M. standard time | Policy No. IMA-335234 |
|---|---|
| Named Insured   NORTHBROOK INDUSTRIES, INC<br>                     DBA: UNITED INN | Countersigned by |

(Authorized Representative)

SCHEDULE

**Description Of Operations:**

HOTEL

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The following exclusion is added to paragraph **2.**, Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability and paragraph **2.**, Exclusions of Section I - Coverage B - Personal And Advertising Injury Liability:

With respect to any operation shown in the Schedule, this insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement, or personal grooming or therapy.

Copyright, Insurance Services Office, Inc., 1997

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ABUSE OR MOLESTATION COVERAGE AND SUBLIMIT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**LIQUOR LIABLITY COVERAGE PART**

### SCHEDULE

| <u>COVERAGE</u> | <u>AGGREGATE SUBLIMIT OF INSURANCE</u> |
|---|---|
| Abuse Or Molestation Coverage | $ 25,000/50,000  Policy Period Aggregate |

(Supplementary Payments serve to erode the above Abuse Or Molestation Coverage Aggregate Sublimit Of Insurance)

**A.  INSURING AGREEMENT**

   **1.**   We will pay those sums that the insured becomes legally obligated to pay as damages because of:

   **a.**   "Bodily injury" arising out of, resulting from, caused or contributed to or by, or in connection with, an "occurrence" of "abuse or molestation" under the **COMMERCIAL GENERAL LIABILITY COVERAGE PART**; or

   **b.**   "Bodily injury" arising out of, resulting from, caused or contributed to or by, or in connection with, a common cause of "abuse or molestation" by reason of the selling, serving or furnishing of alcoholic beverages under the **LIQUOR LIABILITY COVERAGE PART**.

   **2.**   All "bodily injury" arising out of, resulting from, caused or contributed to or by, or in connection with, any act of "abuse or molestation" shall be deemed:

   **a.**   To be a covered "occurrence", or a covered common cause by reason of the selling, serving or furnishing of alcoholic beverages, under this endorsement if the act of "abuse or molestation" takes place during the policy period.

   **b.**   To be a single covered "occurrence', or a covered common cause by reason of the selling, serving or furnishing of alcoholic beverages :

   **(1)**   Whether committed by the same person or two or more persons acting in concert with each other and without regard to the number of:

   **(a)**   Persons abused or molested.

   **(b)**   Incidents of "abuse or molestation" taking place after the first act of "abuse or molestation" while insured by General Star Indemnity Company or General Star National Insurance Company; provided such subsequent incidents of "abuse or molestation" result in "bodily injury" from an "occurrence", or a common cause by reason of the selling, serving or furnishing of alcoholic beverages , that takes place during a policy period where such "abuse or molestation" coverage is provided by General Star Indemnity Company or General Star National Insurance Company.

   **(2)**   With respect to all damages and Supplementary Payments related to such "bodily injury", including any subsequent related "bodily injury".

   **3.**   For each single "occurrence", or covered common cause by reason of the selling, serving or furnishing of alcoholic beverages , only a single Abuse Or Molestation Coverage Aggregate Sublimit Of Insurance will apply.  The coverage period in which the first act of "abuse or molestation" while insured by General Star Indemnity Company or General Star National Insurance Company takes place will determine the applicable Abuse Or Molestation Coverage Aggregate Sublimit Of Insurance .

4. "Bodily injury" arising out of, resulting from, caused or contributed to or by, or in connection with, an act of "abuse or molestation" as covered by this endorsement does not include "bodily injury" arising out of, resulting from, caused or contributed to or by, or in connection with, an act of assault or battery.

5. Our payment obligation for damages together with Supplementary Payments shall not exceed the Abuse Or Molestation Coverage Aggregate Sublimit Of Insurance shown in the Schedule of this endorsement.

**B.   SUPPLEMENTARY PAYMENTS**
The payments we make in investigating or settling any claim or in defending any "suit" against an insured that is covered by this endorsement's insurance serve to erode, individually or together with any damages paid by us, the Abuse Or Molestation Coverage Aggregate Sublimit Of Insurance shown in the Schedule of this endorsement.

With respect to this endorsement:

1. The last subparagraph of paragraph **1.** In the **SUPPLEMENTARY PAYMENTS – COVERAGES A AND B** section of the **COMMERCIAL GENERAL LIABILITY COVERAGE FORM** does not apply.

2. The last paragraph in the **SUPPLEMENTARY PAYMENTS** section of the **LIQUOR LIABILITY COVERAGE FORM** does not apply.

**C.   EXCLUSIONS**
The following exclusions apply to this endorsement and are in addition to those exclusions stated in the **COMMERCIAL GENERAL LIABILITY COVERAGE FORM** and in the **LIQUOR LIABILITY COVERAGE FORM**.

This insurance does not apply to:

1. Any insured or other person(s) who:

   a. Committed or participated in any act of "abuse or molestation".

      We will provide a defense and pay associated defense costs and expenses (as stated in the Supplementary Payments section) of an insured who is alleged in a "suit" to have committed or participated in an act of "abuse or molestation".  Our defense ends when:

      **(1)** The insured is found by a court of law to be innocent or guilty of the charges;
      **(2)** The insured pleads no contest to the charges; or
      **(3)** The Abuse Or Molestation Coverage Aggregate Sublimit Of Insurance is exhausted,

      whichever occurs first.

   b. Failed to follow established written company policy in taking action to prevent an initial act of "abuse or molestation" or to prevent a recurrence of any act of "abuse or molestation".

2. Punitive or exemplary damages or that part of any award not attributable to actual or compensatory damages.

**D.   SUBLIMIT OF INSURANCE**

1. With respect to this endorsement, the following is added to **SECTION III - LIMITS OF INSURANCE** of the **COMMERCIAL GENERAL LIABILITY COVERAGE FORM**:

   a. The Abuse Or Molestation Coverage Aggregate Sublimit Of Insurance shown in the Schedule of this endorsement is the most we will pay for the sum of all damages and Supplementary Payments during the policy period because of "bodily injury" arising out of, resulting from, caused or contributed to or by, or in connection with all covered "occurrences" of "abuse or molestation" regardless of the number of claimants or injuries.

The Abuse Or Molestation Coverage Aggregate Sublimit Of Insurance is part of and not in addition to the General Aggregate Limit shown in the **COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS**.

**2.** With respect to this endorsement, the following is added to **SECTION III - LIMITS OF INSURANCE** of the **LIQUOR LIABILITY COVERAGE FORM**:

**a.** The Abuse Or Molestation Coverage Aggregate Sublimit Of Insurance shown in the Schedule of this endorsement is the most we will pay for the sum of all damages and Supplementary Payments during the policy period because of "bodily injury" arising out of, resulting from, caused or contributed to or by, or in connection with all covered common causes of "abuse or molestation" by reason of the selling, serving or furnishing of alcoholic beverages irrespective of the number of claimants or "injuries".

The Abuse Or Molestation Coverage Aggregate Sublimit Of Insurance is part of and not in addition to the Aggregate Limit shown in the **LIQUOR LIABILITY COVERAGE PART DECLARATIONS**.

**3.** With respect to paragraphs **1.** and **2.** above, the maximum amount we will pay for the sum of all damages and Supplementary Payments during the policy period because of "bodily injury" arising out of, resulting from, caused or contributed to or by, or in connection with:

**a.** All covered "occurrences" of "abuse or molestation" under the **COMMERCIAL GENERAL LIABILITY COVERAGE PART** and;

**b.** All covered common causes of "abuse or molestation" as a result of the selling, serving or furnishing of alcoholic beverages to persons under the **LIQUOR LIABILITY COVERAGE PART**,

regardless of the number of claimants or injuries, is the Abuse Or Molestation Coverage Aggregate Sublimit Of Insurance shown in the Schedule of this endorsement.

**E. DEFINITIONS**

The following definition applies to this endorsement only and is in addition to those definitions stated in the **COMMERCIAL GENERAL LIABILITY COVERAGE FORM** and in **LIQUOR LIABILITY COVERAGE FORM**:

**1.** The term "abuse or molestation" means:

**a.** The alleged, actual or threatened act of abuse or molestation by anyone of any person while in the care, custody or control of any insured; or

**b.** The negligent:
**(1)** Employment;
**(2)** Investigation;
**(3)** Supervision;
**(4)** Reporting to proper authorities, or failure to so report; or
**(5)** Retention;

of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by paragraph **1.a.** above.

Copyright, General Star Management Company, Stamford, CT, 2011
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ASSAULT OR BATTERY COVERAGE AND SUBLIMIT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**LIQUOR LIABLITY COVERAGE PART**

### SCHEDULE

| <u>COVERAGE</u> | <u>AGGREGATE SUBLIMIT OF INSURANCE</u> |
|---|---|
| Assault Or Battery Coverage | $ 25,000/50,000   Policy Period Aggregate |

(Supplementary Payments serve to erode the above Assault Or Battery Coverage Aggregate Sublimit Of Insurance)

**A.   INSURING AGREEMENT**

We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" arising out of, resulting from, caused or contributed to or by, or in connection with:

**1.**   An act of assault or battery; or

**2.**   Any act or omission in connection with the prevention or suppression of such acts; or

**3.**   Any actual or alleged adequate security,

that is caused by an "occurrence" under the **COMMERCIAL GENERAL LIABILITY COVERAGE PART**, or a common cause by reason of the selling, serving or furnishing of alcoholic beverages under the **LIQUOR LIABILITY COVERAGE PART**, whether instigated by or at the direction of the insured, the insured's "employees" or agents, independent contractors, patrons or any other person, including but not limited to claims of:

**a.**   The negligent:
   **(1)**   Employment;
   **(2)**   Training;
   **(3)**   Investigation;
   **(4)**   Supervision; or
   **(5)**   Retention,

   of a person who assaulted or battered, or threatened to assault or batter, any other person; or

**b.**   The negligent reporting of or failure to report:
   **(1)**   Any assault or battery;
   **(2)**   Any suspected or threatened assault or battery;
   **(3)**   Any person who assaulted or battered, or threatened to assault or batter, any other person; or
   **(4)**   Any person who was assaulted or battered; or

**c.**   The breach of any legal obligation or any duty:
   **(1)**   To provide adequate security;
   **(2)**   Arising out of any assault or battery;
   **(3)**   That resulted in an assault or battery;
   **(4)**   Arising out of any suspected or threatened assault or battery; or
   **(5)**   To any person who was assaulted or battered.

"Bodily injury" arising out of, resulting from, caused or contributed to or by, or in connection with, an act of assault or battery as covered by this endorsement does not include "bodily injury" arising out of, resulting from, caused or contributed to or by, or in connection with, an act of "abuse or molestation".

Copyright, General Star Management Company, Stamford, CT, 2011
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

All "bodily injury" claims or "suits" arising out of, resulting from, caused or contributed to or by, or in connection with, the same act of assault or battery, or a series of related acts of assault or battery, regardless if committed by the same perpetrator or two or more perpetrators acting in concert and without regard to the number of incidents or victims involved, shall be considered as a:

**1.** Single covered "occurrence" of assault or battery under the **COMMERCIAL GENERAL LIABILITY COVERAGE PART**; or

**2.** Single covered common cause of assault or battery as a result of the selling, serving or furnishing of alcoholic beverages under the **LIQUOR LIABILITY COVERAGE PART**,

taking place during this policy period if the initial assault or battery "bodily injury" occurred during this policy period.

Our obligation to pay damages together with Supplementary Payments for any single covered "occurrence", or single covered common cause as a result of the selling, serving or furnishing of alcoholic beverages, of assault or battery shall not exceed the Assault Or Battery Coverage Aggregate Sublimit Of Insurance shown in the Schedule of this endorsement.

**B.   SUPPLEMENTARY PAYMENTS**

The payments we make in investigating or settling any claim or in defending any "suit" against an insured that is covered by this endorsement's insurance serve to erode, individually or together with any damages paid by us, the Assault Or Battery Coverage Aggregate Sublimit Of Insurance shown in the Schedule of this endorsement.

With respect to this endorsement:

**1.** The last subparagraph of paragraph **1.** In the **SUPPLEMENTARY PAYMENTS – COVERAGES A AND B** section of the **COMMERCIAL GENERAL LIABILITY COVERAGE FORM** does not apply.

**2.** The last paragraph in the **SUPPLEMENTARY PAYMENTS** section of the **LIQUOR LIABILITY COVERAGE FORM** does not apply.

**C.   EXCLUSIONS**

With respect to the insurance provided by this endorsement:

**1.** Paragraph **a.** of subsection **2. Exclusions** in **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY (SECTION I)** of the **COMMERCIAL GENERAL LIABILITY COVERAGE FORM** is deleted and replaced by the following:

This insurance does not apply to:

**a.   Expected Or Intended Injury**
"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.   This exclusion does not apply to "bodily injury" arising out of, resulting from, caused or contributed to or by, or in connection with a covered "occurrence" of assault or battery.

**2.** Paragraph **a.** of subsection **2. Exclusions** in **SECTION I – LIQUOR LIABILITY COVERAGE** in the **LIQUOR LIABILITY COVERAGE FORM** is deleted and replaced by the following:

This insurance does not apply to:

**a.   Expected Or Intended Injury**
"Injury" expected or intended from the standpoint of the insured.   This exclusion does not apply to "bodily injury" arising out of, resulting from, caused or contributed to or by, or in connection with a covered common cause of assault or battery as a result of the selling, serving or furnishing of alcoholic beverages.

**D.**   **SUBLIMITS OF INSURANCE**

**1.**   With respect to this endorsement, the following is added to **SECTION III - LIMITS OF INSURANCE** of the **COMMERCIAL GENERAL LIABILITY COVERAGE FORM**:

**a.**   The Assault Or Battery Coverage Aggregate Sublimit Of Insurance shown in the Schedule of this endorsement is the most we will pay for the sum of all damages and Supplementary Payments during the policy period because of "bodily injury" arising out of, resulting from, caused or contributed to or by, or in connection with all covered "occurrences" of assault or battery regardless of the number of claimants or injuries.

The Assault Or Battery Coverage Aggregate Sublimit Of Insurance is part of and not in addition to the General Aggregate Limit shown in the **COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS** .

**2.**   With respect to this endorsement, the following is added to **SECTION III – LIMITS OF INSURANCE** of the **LIQUOR LIABILITY COVERAGE FORM**:

**a.**   The Assault Or Battery Coverage Aggregate Sublimit Of Insurance shown in the Schedule of this endorsement is the most we will pay for the sum of all damages and Supplementary Payments during the policy period because of "bodily injury" arising out of, resulting from, caused or contributed to or by, or in connection with all covered common causes of assault or battery by reason of the selling, serving or furnishing of alcoholic beverages, regardless of the number of claimants or "injuries".

The Assault Or Battery Coverage Aggregate Sublimit Of Insurance is part of and not in addition to the Aggregate Limit shown in the **LIQUOR LIABILITY COVERAGE PART DECLARATIONS** .

**3.**   With respect to paragraphs **1.** and **2.** above, the maximum amount we will pay for the sum of all damages and Supplementary Payments during the policy period because of "bodily injury" arising out of, resulting from, caused or contributed to or by, or in connection with:

**a.**   All covered "occurrences" of assault or battery under the **COMMERCIAL GENERAL LIABILITY COVERAGE PART** and;

**b.**   All covered common causes of assault or battery as a result of the selling, serving or furnishing of alcoholic beverages to persons under the **LIQUOR LIABILITY COVERAGE PART**,

regardless of the number of claimants or injuries, is the Assault Or Battery Coverage Aggregate Sublimit Of Insurance shown in the Schedule of this endorsement.

**E.**   **DEFINITIIONS**

The following definition applies to this endorsement only and is in addition to those definitions stated in the **COMMERCIAL GENERAL LIABILITY COVERAGE FORM** and **LIQUOR LIABILITY COVERAGE FORM**:

**1.**   The term "abuse or molestation" means:

**a.**   The alleged, actual or threatened act of abuse or molestation by anyone of any person while in the care, custody or control of any insured; or

**b.**   The negligent:
   **(1)**   Employment;
   **(2)**   Investigation;
   **(3)**   Supervision;
   **(4)**   Reporting to proper authorities, or failure to so report; or
   **(5)**   Retention;

of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by paragraph **1.a.** above.

Copyright, General Star Management Company, Stamford, CT, 2011
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DESIGNATED ANIMAL LIABILITY LIMITATION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**


This policy does not apply to any damages for which the insured is legally liable, or costs or expenses, arising out of, resulting from, caused or contributed to by any excluded animal.  With respect to liability arising from an animal that is not an excluded animal, the most we will pay is $25,000 for each incident involving one or more such animals regardless of the number of claims made or "suits" brought or persons or organizations making claims or bringing "suits".

The following animals are excluded:

1.  Any animal with a prior history of biting or attacking persons, property or other animals as established through insurance claims records, or through the records of local public safety, law enforcement or other similar regulatory agency;

2.  Any exotic animal.  For purposes of this endorsement, exotic animal means a:  (1)non-domesticated feline; (2)non-human primate; (3)venomous or poisonous animal; (4)caiman, alligator, or crocodile; (5)bear; (6)wolf; (7)jackal; (8)fox; or (9) coyote; including any hybrid of these animals.

3.  Any pure or mixed breed of any of the following:

| | |
|---|---|
| Akita | Husky |
| Alaskan Malamute | Pit Bull Terrier |
| Bull Mastiff | Rhodesian Ridgeback |
| Chow | Rottweiler |
| Doberman Pinscher | St. Bernard |
| German Shepherd | Staffordshire Terrier |
| Great Dane | Wolf Hybrids |
| Belgian Malinois | |

All other terms and conditions remain unchanged.

## GENERAL STAR INDEMNITY COMPANY

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement #  __1__ , effective  __06/26/2018__  forms a part of Policy #  __IMA-335234__

issued to  __NORTHBROOK INDUSTRIES, INC__  by GENERAL STAR INDEMNITY COMPANY.

# GENERAL CHANGES ENDORSEMENT

This policy is amended where indicated by an ☒ below.  Describe changes in detail and any applicable change in premium within the appropriate box and/ or the Details Section below.  All other terms, exclusions and conditions remain unchanged:

| | | |
|---|---|---|
| ☐ | **Additional Insured:** | An additional insured is **added** per the attached form _____. |
| | | The following additional insured is **deleted**: |
| ☐ | **Audit:** | The audit term is amended to read _____ (adjustable or non-adjustable). |
| ☐ | **Classification:** | The following classification is _____ (amended, added or deleted) as follows: |
| ☐ | **Deductible:** | The deductible shown on _____ is amended to read _____. |
| ☐ | **Effective Date:** | The policy effective date is amended to read _____. |
| ☒ | **Expiration Date:** | The policy expiration date is amended to read __07/03/2018__. |
| ☐ | **Forms:** | The following form(s) are **added** to the policy: |
| | | The following form(s) are **deleted** from the policy: |
| ☐ | **Location Address:** | The location address is _____ (amended, added or deleted) as follows: |
| ☐ | **Loss Payee:** | Loss Payee is added per the attached form CP1218. |
| ☐ | **Mailing Address:** | The mailing address is amended to read as follows: |

PRODUCER CODE: __10348__

PRODUCER NAME: __SCU__

© Copyright, General Star Management Company, Stamford, CT 2002-2003.
Includes copyrighted material of Insurance Services Office, Inc., with its permission

| ☐ **Mortgage Holder:** | The Mortgage Holder is _____ (amended, added or deleted) as follows: |
|---|---|
| ☐ **Name of Insured:** | The Named Insured is amended as follows: |
| ☐ **Premium:** | The premium shown on _____ (form number) is amended as follows: |
| ☐ **Premium Basis:** | The premium basis is amended as follows: |
| ☐ **Property Description of Premises:** | The Commercial Property Coverage Part Declarations is amended as follows: |
| ☐ **Property Coverages:** | The Commercial Property Coverage Part Declarations is amended as follows: |
| ☐ **Property Optional Coverages:** | The Commercial Property Coverage Part Declarations is amended as follows: |
| ☐ **Rate:** | The rate(s) shown on _____ is amended as follows: |

**Details Section: (Use this section to also describe changes that are applicable to the boxes above)**

POLICY IS EXTENDED TO 07/03/2018.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

**TERRORISM RISK INSURANCE ACT (TRIA) Premium:** $_____
**(TRIA COVERAGE NOT APPLICABLE UNLESS PREMIUM SHOWN ABOVE)**
**Total Additional Premium:** $_____NA_____
**Total Return Premium:** $_____NA_____
$_____
$_____
$_____
$_____
$_____
$_____

_05/15/18_____
Issue Date

_Douglas E. Marshall_____
Authorized Representative