IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| HUDSON EXCESS INSURANCE COMPANY, | |
| Plaintiff, | CIVIL ACTION |
| v. | FILE NO. |
| SUDO BAR & GRILL, LLC,  DARIUS COLLIER, and JERROLD GIBBS, | |
| Defendants. | |

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW Hudson Excess Insurance Company ("Hudson"), by and through its attorneys, and brings this action seeking declaratory relief against the named defendant as follows:

### PARTIES, JURISDICTION, AND VENUE

1.

This is a diversity action for declaratory relief.  This Court has authority to enter a declaratory judgment through the remedy created pursuant to 28 U.S.C. § 2201.

2.

Hudson is a corporation organized and existing under the laws of the state of Delaware.  Hudson maintains its principal place of business in the State of New York.

3.

Sudo Bar & Grill, LLC ("Sudo"), is a Georgia domestic limited liability company, where all of its members are citizens.  None of Sudo's members are citizens of the State of New York.  Sudo's principal place of business is in Rockdale County, Georgia.  Sudo maintains its registered agent, Brandt Bester, at 2198 Salem Road SE, Suite A, Conyers, Georgia 30013.

4.

Sudo owns and/or operates a bar and grill located at 2270 Salem Road, Conyers, Georgia 30013.

5.

Darius Collier ("Collier") is a citizen and resident of the State of Georgia. Collier may be served with process at his address located at 3371 Bartlett Avenue, Conyers, Georgia 30013.

6.

Jerrold Gibbs ("Gibbs") is a citizen and resident of the State of Georgia. Gibbs may be served with process at his address located at 152 Spring Street, Jonesboro, Georgia 30236.   (Sudo, Collier, and Gibbs are collectively referred to as "Defendants.")

7.

This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a).   There is complete diversity of citizenship between Hudson and the Defendants.  The amount in controversy, exclusive of interest and costs, exceeds the sum required by 28 U.S.C. § 1332.

8.

This Court has personal jurisdiction over Defendants, and venue is proper in this District under 28 U.S.C. § 1391.

9.

This action is brought pursuant to 28 U.S.C. § 2201, which provides the remedy of the Court's declaration of the rights of the parties under certain contracts between them. Hudson seeks a declaration of rights, status, and legal relations between it and Defendants under the contracts of insurance described below.

- 3 -

10.

More specifically, Hudson seeks a judgment declaring that it has no duty to defend or indemnify Sudo under a commercial general liability policy and liquor liability policy issued by Hudson to Sudo, for any claims, losses, or other damages or liabilities asserted by Collier in the case styled *Darius Collier v. Sudo Bar and Grill LLC*, Case No. 2022-SV-1461, pending in the State Court of Rockdale County, Georgia (the "Collier Action"), and asserted by Gibbs in the case styled *Jerrold Gibbs v. Sudo Bar and Grill LLC, et al.*, Case No. 2022-SV-2014, pending in the State Court of Rockdale County, Georgia (the "Gibbs Action").

## BACKGROUND FACTS

### The Commercial General Liability Policy

11.

Hudson issued Commercial General Liability Policy number HSGM-07353 to Sudo Bar & Grill, LLC, as the Named Insured, for a policy period of May 20, 2021 to May 20, 2022, that provided certain commercial general liability coverage to Defendant pursuant to the policy's terms, conditions and exclusions (the "CGL Policy"). (A true and correct copy of the CGL Policy is attached hereto as Exhibit "A," and is incorporated herein by reference.)

12.

"SUDO BAR & GRILL, LLC DBA SUDO BAR & GRILL" is the sole Named

Insured for the CGL Policy.

13.

Coverage A of the CGL Policy, entitled "Bodily Injury and Property Damage

Liability," states, in pertinent part:

1.    Insuring Agreement

    a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury"[1] or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

          ***

    b.    This insurance applies to "bodily injury" and "property damage" only if:

        (1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory" [and]

        (2)    The "bodily injury" or "property damage" occurs during the policy period;

---

[1] Words enclosed in "quotation marks" are defined terms under the insurance policy identified herein.

(Exhibit A, at p. 7 of 45.)

14.

As used in Coverage A of the CGL Policy, the terms below are defined as follows:

> 3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.
>
> \*\*\*
>
> 13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

(*Id.* at pp. 18 and 20 of 45.)

15.

Thus, the CGL Policy provides liability coverage to the insured for third party claims for damages because of "bodily injury" or "property damage" occurring during the policy period, if caused by an "occurrence," and if no exclusions or conditions preclude coverage.

16.

Coverage A for "bodily injury" and "property damage" under the CGL Policy, however, is subject to certain terms and exclusions.

131560581.4

17.

Specifically, an endorsement to the CGL Policy provides as follows:

### EXCLUSION –WEAPONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following is added as an item to the Section I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions; COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions; of the Commercial General Liability Coverage Form:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, related to, based upon or attributable to the possession or use of a "weapon" by any person, including the failure by any insured to (1) suppress or prevent, by any means, the possession or use of a "weapon"; or (2) render assistance to or seek first aid for any person who suffers "bodily injury".

B. The following is added as an item to SECTION V – DEFINITIONS:

"Weapons" means a firearm, knife or any other device used to injure, including if done for purposes of self-defense.

All other terms and conditions of this policy remain unchanged.

(*Id.* at p. 40 of 45.) (the "Weapons Exclusion Endorsement")

131560581.4

18.

Furthermore, Section 2. of Coverage A provides as follows:

> This insurance does not apply to:
>
> **a. Expected Or Intended Injury**
>
> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.
>
> \*\*\*

(*Id.* at p. 8 of 45.) (the "Expected or Intended Injury Exclusion")

19.

Additionally, by endorsement, the CGL Policy excludes the following from coverage:

> ## <u>EXCLUSION - FINES, PENALTIES, AND PUNITIVE OR EXEMPLARY DAMAGES</u>
>
> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> Fines, penalties, and punitive or exemplary damages are not covered under this policy nor any expense or obligation to share or repay such fines, penalties or damages with, or to, others.
>
> All other terms and conditions of this policy remain unchanged.

(*Id.* at p. 39 of 45.) (the "CGL Punitive Damages Exclusion Endorsement")

- 8 -

20.

Finally, the CGL Policy, by endorsement, contains an "Amendment of Liquor Liability Exclusion," which provides:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion c. of COVERAGE A (Section I) is replaced by the following:

c. "Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you:

(1) Manufacture, sell or distribute alcoholic beverages;

(2) Serve or furnish alcoholic beverages for a charge whether or not such activity:

(a) Requires a license;

(b) Is for the purpose of financial gain or livelihood; or

(3) Serve or furnish alcoholic beverages without a charge, if a license is required for such activity.

(*Id.* at p. 35 of 45.) (the "Liquor Liability Exclusion")

131560581.4

21.

Section IV of the CGL Policy, entitled "**COMMERCIAL GENERAL LIABILITY CONDITIONS**," states, in pertinent part:

**2.**     **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

a.     You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1)     How, when and where the "occurrence" or offense took place;

(2)     The names and addresses of any injured persons and witnesses; and

(3)     The nature and location of any injury or damage arising out of the "occurrence" or offense.

b.     If a claim is made or "suit" is brought against any insured, you must:

(1)     Immediately record the specifics of the claim or "suit" and the date received; and

(2)     Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c.     You and any other involved insured must:

(1)     Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2)     Authorize us to obtain records and other information;

- 10 -

131560581.4

     (3)     Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

     (4)     Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

(*Id.* at p. 16 of 45.) (the "CGL Notice Condition")

## **The Liquor Liability Policy**

### 22.

Hudson issued Liquor Liability Policy number HSLL-46180 to Sudo Bar & Grill, LLC DBA Sudo Bar & Grill, as the Named Insured, for a policy period of May 20, 2021 to May 20, 2022, that provided certain liquor liability coverage to Sudo pursuant to the policy's terms, conditions and exclusions (the "LL Policy"). (The LL Policy is attached hereto as Exhibit "B," and is incorporated herein by reference.) Specifically, Section I of the LL Policy states, in pertinent part that:

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to which this insurance applies, sustained by any person *if such liability is imposed upon the insured by reason of the selling, serving or giving of any alcoholic beverage* at or from the insured premises, and the company shall have the right and duty to defend any suit against the insured seeking such damages.

(Exhibit B, at p. 5 of 24 (emphasis added).)

23.

An Additional Exclusions Endorsement to the LL Policy provides, in pertinent

part:

6. **Punitive or Exemplary Damage Exclusion**

This insurance does not apply to damages awarded as punitive or exemplary damages by a court of law or jury or agreed to in advance by the insured.

(*Id.* at p. 18 of 24.) (the "LL Punitive Damages Exclusion Endorsement")

24.

Section 4 of the LL Policy, entitled "**Insured's Duties in the Event of Injury,**

**Claim or Suit**," states, in pertinent part:

(5) When an injury occurs, written notice containing particulars sufficient to identify the **insured** and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the **insured** to the company or any of its authorized agents as soon as practicable.

(6) If claim is made or suit is brought against the **insured**, the **insured** shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.

\* \* \*

(*Id.* at p. 10 of 24.) (the "LL Notice Condition")

131560581.4

## The Shooting

### 25.

On September 5, 2021, while on Sudo's premises, non-party James Simpson allegedly engaged in an argument with a patron and discharged a firearm, resulting in alleged injury to several patrons of Sudo, including Collier and Gibbs (the "Shooting Incident").

## Hudson's First Notice of Loss and Initial Coverage Position

### 26.

On September 14, 2021, Sudo received a letter regarding Defendant Collier's retention of an attorney (the "Collier LOR"). The Collier LOR asserted that Collier "was shot" and the victim of a "shooting incident" on September 5, 2021 at Sudo's premises.  (A true and correct copy of the Collier LOR is attached hereto as Exhibit "C," and is incorporated herein by reference.)

### 27.

On September 15, 2021, Sudo received a letter regarding Defendant Gibbs' retention of an attorney (the "Gibbs LOR"). The Gibbs LOR asserted that Gibbs had a potential personal injury claim against Sudo "arising out of the shooting incident" on September 5, 2021 at Sudo's premises.  (A true and correct copy of the Gibbs LOR is attached hereto as Exhibit "D," and is incorporated herein by reference.)

131560581.4

28.

On October 29, 2021, Sudo, through its insurance agent, first placed Hudson on notice of the Shooting Incident that allegedly occurred on Sudo's premises by submitting a General Liability Notice of Occurrence/Claim form tendered under the CGL Policy and attaching the Collier LOR and Gibbs LOR (the "Notice of Claim"). (A true and correct copy of the Notice of Claim is attached hereto as Exhibit "E," and is incorporated herein by reference.)

29.

Following its receipt of the Notice of Claim, and its investigation and review, Hudson issued a disclaimer with respect to the Shooting Incident on November 17, 2021 (the "Initial Disclaimer"). (A true and correct copy of the Initial Disclaimer is attached hereto as Exhibit "F," and is incorporated herein by reference.) The Initial Disclaimer was based, in part, on Hudson's determination that several individuals (including, specifically, the designated "Claimants": Collier and Gibbs) had been injured as the result of a "shooting," and the application of an exclusion in the CGL

- 14 -

Policy barring coverage for "bodily injury", as that term is defined by the policy, arising out of the possession or use of a weapon.[2]

30.

Sudo did not dispute Hudson's coverage position as expressed in the Initial Disclaimer.

**The Collier Action**

31.

On May 8, 2022, Defendant Collier filed the Complaint in the Collier Action, naming Sudo as a defendant (the "Collier Complaint").  (A true and correct copy of the Collier Complaint is attached hereto as Exhibit "G," and is incorporated herein by reference.)

32.

Consistent with the Collier LOR, Collier alleges in the Collier Complaint that on or about September 5, 2021, he was a customer and invitee of Sudo.  (Exhibit G at ¶ 6.)

---

[2] Although the Notice of Claim was tendered solely under the CGL Policy, Hudson's Initial Disclaimer also addressed the fact that the claim as presented did not fall within the insuring agreement of the LL Policy.

33.

Collier alleges further that, while on Sudo's premises, he was "seriously injur[ed]" when an allegedly "intoxicated" bar patron, James Simpson, started an argument with him.  (*Id.* ¶ 7.)

34.

Collier alleges that Sudo failed to screen Simpson when he entered the premises, failed to intervene, and failed to remove Simpson from the premises.  (*Id.* ¶ 8.)  He further contends Sudo's alleged "fail[ure] to maintain adequate security devices" caused an unreasonable risk of injury to its invitees, including Collier.  (*Id.* ¶ 14.)

35.

In the Collier Complaint, Collier also contends that prior to the Shooting Incident, there had been prior criminal activity associated with Sudo. (*Id.* ¶12.)  He alleges that Sudo had "actual knowledge of crime and criminal activity on the premises" and that Sudo "negligently maintained, inspected, secured, patrolled, and managed the premises and approaches."  (*Id.* ¶¶ 12-13.)

131560581.4

36.

In the Collier Action, Collier seeks to impose premises liability against Sudo, alleging that "Sudo Bar was negligent, and that negligence caused [his] injuries" in violation of O.C.G.A. § 51-3-1. (*Id.* ¶ 19.)

37.

There is no allegation that Collier's injuries were sustained because of the selling, serving or giving of an alcoholic beverage, nor does Collier seek to impose dram shop liability on Sudo pursuant to O.C.G.A. § 51-1-40.

38.

As a result of Sudo's alleged acts and omissions, Collier seeks to recover compensatory, special, economic, consequential, general, punitive and all other damages permissible under Georgia law for his alleged pain and suffering (which Collier contends "likely exceed[s] $600,000.00"), personal expenses, medical expenses, disability, economic loss, incidental expenses, loss of earning capacity, permanent injuries, and consequential damages.  (*Id.* ¶ 24.)

**The Gibbs Action**

39.

On October 4, 2022, Defendant Gibbs filed his Complaint in the Gibbs Action, naming Sudo, BMFP LLC Personal Protection Agency, and various John Doe

131560581.4

owners and security providers as defendants (the "Gibbs Complaint").  (A true and correct copy of the Gibbs Complaint is attached hereto as Exhibit "H," and is incorporated herein by reference.)

40.

Gibbs alleges in his Complaint that on or about September 5, 2021, he was a customer and business invitee of Sudo.  (Exhibit H, at ¶ 17.)

41.

Gibbs further alleges that, while on Sudo's premises, an "intoxicated" bar patron, James Simpson, started an argument with another patron which resulted in Simpson "discharging his firearm in the establishment, seriously injuring [Gibbs] and other patrons." (*Id.* ¶ 18.)

42.

Gibbs contends in the Gibbs Complaint that he "received bullet wounds to his lower back" as a result, causing him to sustain severe physical injuries.  (*Id.* ¶ 38.)

43.

In the Gibbs Complaint, Gibbs also alleges that Sudo had knowledge of crime and criminal activity on the premises prior to the Shooting Incident "as a result of prior criminal activity associated with the property." (*Id.* ¶12.)  He contends Sudo

"negligently failed to screen Simpson when he entered the bar/restaurant, failed to intervene, and failed to remove Simpson from the bar." (*Id.* ¶ 19.) Further, he alleges that Sudo "failed to maintain adequate security measures" and, thus, "caus[ed] an unreasonable risk of injury to its invitees." (*Id.* ¶ 26.)

44.

Gibbs alleges "Sudo Bar was negligent, and that negligence caused [his] injuries" in violation of O.C.G.A. § 51-3-1. (*Id.* ¶ 32.)

45.

There is no allegation that Gibbs' injuries were sustained because of the selling, serving or giving of an alcoholic beverage, nor does Gibbs seek to impose dram shop liability on Sudo pursuant to O.C.G.A. § 51-1-40.

46.

As a result of the Sudo's alleged acts and omissions, Gibbs seeks to recover compensatory, special, punitive damages, and expenses of litigation permissible under Georgia law for his alleged pain and suffering, medical expenses, disability, diminution of earning capacity, and loss of earnings. (*Id.* ¶ 62.)

**Hudson's Coverage Position for the Collier Action**

47.

On August 17, 2022, Sudo first provided Hudson with notice of the Collier Action, which had been filed over three months prior.

48.

On September 23, 2022, Hudson, through counsel, acknowledged notice of the potential loss by a letter to Sudo outlining Hudson's coverage position with respect to the Collier Action (the "Collier CPL"). (A true and correct copy of the Collier CPL is attached hereto as Exhibit "I," and is incorporated herein by reference.) The Collier CPL indicated that, although the Collier Complaint was silent as to the nature of what caused Collier's alleged injuries, the Collier LOR asserted that Collier had been "shot" and sustained injuries as a result of a "shooting incident." Further, Hudson noted that the Collier Complaint "alleges that Sudo 'negligently failed to screen Simpson when he entered the bar/restaurant' and 'negligently failed to maintain adequate security devices to permit proper use of the property[.]' Both allegations imply Simpson's use of a weapon."

49.

Accordingly, Hudson indicated it had "substantial concerns" regarding coverage under the CGL Policy due to these allegations and the prior indication that

- 20 -

Collier's alleged injuries arose out of a shooting.  However, Hudson advised Sudo that it would agree at that time to defend Sudo subject to a full reservation of rights to disclaim coverage under the CGL Policy and subject to all defenses available to Hudson whether pursuant to the CGL Policy or available under applicable law.

50.

Further, the Collier CPL highlighted several policy provisions "that may serve to bar or limit coverage for this claim[,]" including the definition of "occurrence" in the insuring agreement, the Expected or Intended Injury Exclusion, the Weapons Exclusion Endorsement, the CGL Punitive Damages Exclusion Endorsement, and the CGL Notice Condition.

51.

Subsequently, following Sudo's request that Hudson also address coverage under the LL Policy, Hudson sent Sudo a supplemental coverage position letter on December 21, 2022 (the "Supplemental CPL").  (A true and correct copy of the Supplemental ROR is attached hereto as Exhibit "J," and is incorporated herein by reference.)

52.

The Supplemental CPL stated Hudson's position that Collier Complaint did not appear to trigger coverage under the insuring agreement of the LL Policy because

- 21 -

Collier did not "seek to hold Sudo liable because of its sale, service, or giving of alcohol," but rather asserted claims sounding in premises liability. Accordingly, Hudson reserved the right to disclaim coverage for the Collier Action on this basis. (Exhibit J, at pp. 2-3.)

53.

The Supplemental CPL also highlighted that, by failing to notify Hudson of the Shooting Incident "as soon as practicable," coverage under the LL Policy may also be barred by noncompliance with the LL Notice Condition. (*Id.* at p. 3.)

54.

Sudo disputes Hudson's coverage positions under the CGL Policy and LL Policy with respect to the Collier Action.

55.

Thus, there is a bona fide present dispute between Hudson and Sudo regarding whether the CGL Policy and/or LL Policy provides coverage to Sudo for the Collier Action.

56.

Hudson is entitled to a final judgment construing the CGL Policy and LL Policy, resolving the dispute between the parties, and declaring that Hudson has no duty to defend or indemnify Sudo with respect to any claims, losses, or other

- 22 -

damages or liabilities asserted by Collier in the Collier Action and/or arising out of the Shooting Incident.

## Hudson's Coverage Position for the Gibbs Action

### 57.

On October 26, 2022, Hudson first received notice of the filing of the Gibbs Action through Sudo's counsel.

### 58.

On November 8, 2022, Hudson disclaimed the duty to defend and/or indemnify Sudo in connection with the Gibbs Action under the CGL Policy, including on the basis that the Shooting Incident did not constitute a covered "occurrence" and that coverage was barred by the Weapons Exclusion (the "Gibbs CPL"). (A true and correct copy of the Gibbs CPL is attached hereto as Exhibit "K," and is incorporated herein by reference.)

### 59.

Further, the Gibbs CPL highlighted several additional policy provisions "that may serve to bar or limit coverage for this claim[,]" including the Expected or Intended Injury Exclusion, the CGL Punitive Damages Exclusion Endorsement, and the CGL Notice Condition.

131560581.4

60.

Subsequently, following Sudo's request that Hudson also address coverage under the LL Policy, Hudson sent Sudo the Supplemental CPL on December 21, 2022.  (*See* Exhibit J.)

61.

The Supplemental CPL stated Hudson's position that Gibbs Complaint did not appear to trigger coverage under the insuring agreement of the LL Policy because Gibbs did not "seek to hold Sudo liable because of its sale, service, or giving of alcohol," but rather asserted claims sounding in premises liability.  Accordingly, Hudson reserved the right to disclaim coverage for the Gibbs Action on this basis. (Exhibit J, at pp. 2-3.)

62.

The Supplemental CPL also highlighted that, by failing to notify Hudson of the Shooting Incident "as soon as practicable," coverage under the LL Policy may also be barred by noncompliance with the LL Notice Condition.  (*Id.* at p. 3.)

63.

Sudo disputes Hudson's coverage positions under the CGL Policy and LL Policy with respect to the Gibbs Action.

64.

Thus, there is a bona fide present dispute between Hudson and Sudo regarding whether the CGL Policy and/or LL Policy provides coverage to Sudo for the Gibbs Action.

65.

Hudson is entitled to a final judgment construing the CGL Policy and LL Policy, resolving the dispute between the parties, and declaring that Hudson has no duty to defend or indemnify Sudo with respect to any claims, losses, or other damages or liabilities asserted by Gibbs in the Gibbs Action and/or arising out of the Shooting Incident.

**COUNT I**
**(Declaration of No Coverage under the CGL Policy)**
**(Darius Collier)**

66.

Hudson hereby incorporates by reference and realleges in Count I, as if fully stated herein, each and every allegation of Paragraphs 1 through 65.

67.

The Collier Action alleges a "bodily injury."

- 25 -

131560581.4

68.

The Complaint in Collier Action alleges that such "bodily injury" arose from intentional conduct that resulted from an "argument with a patron over a spilt drink". (Exhibit G, at ¶ 7.)

69.

Therefore, the CGL Policy does not cover the claims asserted in the Collier Action because the "bodily injury" was not caused by an "occurrence," which is defined, in relevant part, as an "accident" in the CGL Policy.  Alternatively, coverage for the claims against Sudo is barred by the Expected or Intended Injury Exclusion of the CGL Policy.

70.

The Collier LOR asserted that Collier "was shot" and the victim of a "shooting incident" on September 5, 2021 at Sudo's premises.  (*See* Exhibit C.)

71.

The Complaint in the Collier Action further alleged that Collier's bodily injury occurred because Sudo "failed to screen" James Simpson and "fail[ed] to maintain adequate security devices." (*Id*. ¶¶ 8, 12.)

72.

There is no dispute Collier contends his bodily injuries are the result of gunshot wounds arising out of the Shooting Incident.

73.

Therefore, the CGL Policy does not cover the claims against Sudo in the Collier Action because coverage is barred by the Weapons Exclusion Endorsement.

74.

Collier seeks to recover punitive damages in the Collier Action.

75.

There is no coverage under the CGL Policy for punitive damages by virtue of the CGL Punitive Damages Exclusion Endorsement.

76.

Sudo failed to provide notice of the Shooting Incident to Hudson until over three months after the alleged loss and failed to notify Hudson of the filing of the Collier Action against it until almost two-and-a-half months after Sudo was first served with process. Thus, Sudo failed to provide Hudson with timely notice "as soon as practicable[,]" as required by the CGL Policy, of "an 'occurrence' or an offense which may result in a claim" and, subsequently, of a "suit" against it. Sudo

- 27 -

also failed to "immediately" provide Hudson with a copy of the summons and complaint, as required by the CGL Notice Provision.

77.

Sudo's failure to provide timely notice of the Shooting Incident and Collier Action constitutes a breach of the CGL Notice Provision and, therefore, there is no coverage under the CGL Policy because Sudo failed to fulfill a condition precedent to coverage.

78.

Hudson is entitled to a declaratory judgment in its favor stating that it has no obligation to defend Sudo in the Collier Action and has no indemnity obligation to Sudo or Collier under the CGL Policy for any loss or other damages allegedly attributable to Sudo stemming from the Collier Action and/or arising out of the Shooting Incident.

<strong>COUNT II<br>(Declaration of No Coverage under the CGL Policy)<br>(Jerrold Gibbs)</strong>

79.

Hudson hereby incorporates by reference and realleges in Count II, as if fully stated herein, each and every allegation of Paragraphs 1 through 65.

- 28 -

80.

The Gibbs Action alleges a "bodily injury."

81.

The Complaint in the Gibbs Action alleges that "bodily injury" arose from intentional conduct, namely James Simpson "discharging his firearm in the establishment" due to an "argument with a patron over a spilt drink," which Gibbs alleges was an "assault." (Exhibit H, at ¶¶ 18, 39.)

82.

Therefore, the CGL Policy does not cover the claims asserted in the Gibbs Action because the "bodily injury" was not caused by an "occurrence," which is defined, in relevant part, as an "accident" in the CGL Policy. Alternatively, coverage for the claims against Sudo is barred by the Expected or Intended Injury Exclusion of the CGL Policy.

83.

The Complaint in the Gibbs Action alleges "bodily injury . . . arising out of . . . the use of weapons." Specifically, the Complaint alleges Gibbs "received bullet wounds to his lower back" from Simpson discharging his firearm, causing Gibbs to sustain severe physical injuries. (*Id.* ¶ 38.)

131560581.4

84.

Therefore, the CGL Policy does not cover the claims against Sudo in the Gibbs Action because coverage is barred by the Weapons Exclusion Endorsement.

85.

Gibbs seeks to recover punitive damages in the Gibbs Action.

86.

There is no coverage under the CGL Policy for punitive damages by virtue of the CGL Punitive Damages Exclusion Endorsement.

87.

Sudo failed to provide notice of the Shooting Incident to Hudson until over three months after the alleged loss. Thus, Sudo failed to provide Hudson with timely notice "as soon as practicable of an 'occurrence' or an offense which may result in a claim," as required by the CGL Policy.

88.

Sudo's failure to provide timely notice of the Shooting Incident constitutes a breach of the CGL Notice Provision and, therefore, there is no coverage under the CGL Policy because Sudo failed to fulfill a condition precedent to coverage.

131560581.4

89.

Hudson is entitled to a declaratory judgment in its favor stating that it has no obligation to defend Sudo in the Gibbs Action and has no indemnity obligation to Sudo or Gibbs under the CGL Policy for any loss or other damages allegedly attributable to Sudo stemming from the Gibbs Action and/or arising out of the Shooting Incident.

## COUNT III
### (Declaration of No Coverage under the Liquor Liability Policy)
### (Darius Collier)

90.

Hudson hereby incorporates by reference and realleges in Count III, as if fully stated herein, each and every allegation of Paragraphs 1 through 65.

91.

The Collier Action alleges a "bodily injury."

92.

The Collier Action does not allege that "bodily injury" arose "by reason of the selling, serving or giving of any alcoholic beverage" at or from Sudo's premises, nor does Collier seek to impose dram shop liability upon Sudo under O.C.G.A. § 51-1-40.

131560581.4

93.

The plain language of the LL Policy limits any coverage to that for liability imposed on the insured is *by reason of* the insured's selling, serving, or giving of any alcoholic beverage at the insured premises. Thus, there is no coverage for the Collier Action under the LL Policy.

94.

Collier seeks to recover punitive damages in the Collier Action.

95.

There is no coverage under the LL Policy for punitive damages by virtue of the LL Punitive Damages Exclusion Endorsement.

96.

Sudo failed to provide notice of the Shooting Incident to Hudson until over three months after the alleged loss and failed to notify Hudson of the filing of the Collier Action against it until almost two-and-a-half months after Sudo was first served with process.  Thus, Sudo failed to provide Hudson with timely notice of an injury "as soon as practicable," as required by the LL Policy, and failed to "immediately" forward to Hudson the summons and complaint in the Collier Action, as also required by the LL Notice Provision.

97.

Sudo's failure to provide timely notice of the Shooting Incident and the Collier Action constitutes a breach of the LL Notice Provision and, therefore, there is no coverage under the LL Policy because Sudo failed to fulfill a condition precedent to coverage.

98.

Hudson is entitled to a declaratory judgment in its favor stating that it has no obligation to defend Sudo in the Collier Action and has no indemnity obligation to Sudo or Collier under the LL Policy for any loss or other damages allegedly attributable to Sudo stemming from the Collier Action and/or arising out of the Shooting Incident.

## COUNT IV
### (Declaration of No Coverage under the Liquor Liability Policy)
### (Jerrold Gibbs)

99.

Hudson hereby incorporates by reference and realleges in Count IV, as if fully stated herein, each and every allegation of Paragraphs 1 through 65.

100.

The Gibbs Action alleges a "bodily injury."

101.

The Gibbs Action does not allege that "bodily injury" arose "by reason of the selling, serving or giving of any alcoholic beverage" at or from Sudo's premises, nor does Gibbs seek to impose dram shop liability upon Sudo under O.C.G.A. § 51-1-40.

102.

The plain language of the LL Policy limits any coverage to that for liability imposed on the insured is *by reason of* the insured's selling, serving, or giving of any alcoholic beverage at the insured premises. Thus, there is no coverage for the Gibbs Action under the LL Policy.

103.

Gibbs seeks to recover punitive damages in the Gibbs Action.

104.

There is no coverage under the LL Policy for punitive damages by virtue of the LL Punitive Damages Exclusion Endorsement.

105.

Sudo failed to provide notice of the Shooting Incident to Hudson until over three months after the alleged loss.  Thus, Sudo failed to provide Hudson with timely notice of an injury "as soon as practicable," as required by the LL Policy.

106.

Sudo's failure to provide timely notice of the Shooting Incident constitutes a breach of the LL Notice Provision and, therefore, there is no coverage under the LL Policy because Sudo failed to fulfill a condition precedent to coverage.

107.

Hudson is entitled to a declaratory judgment in its favor stating that it has no obligation to defend Sudo in the Gibbs Action and has no indemnity obligation to Sudo or Gibbs under the LL Policy for any loss or other damages allegedly attributable to Sudo stemming from the Gibbs Action and/or arising out of the Shooting Incident.

WHEREFORE, Hudson prays that the Court render a declaration in its favor and declare that:

1)     Hudson has no obligation to defend Sudo in the Collier Action and has no indemnity obligation to Sudo or Collier under the CGL Policy or the LL Policy for any loss or other damages allegedly attributable to Sudo stemming from the Collier Action and/or arising out of the Shooting Incident;

2)     Hudson has no obligation to defend Sudo in the Gibbs Action and has no indemnity obligation to Sudo or Gibbs under the CGL Policy or the LL Policy

for any loss or other damages allegedly attributable to Sudo stemming from the Gibbs Action and/or arising out of the Shooting Incident; and

3)      For such other and further relief as the Court may deem just and proper.

Respectfully submitted this 31st day of January, 2023.

**CARLTON FIELDS, P.A.**

*/s/ Christopher B. Freeman*
Christopher B. Freeman
Georgia Bar No. 140867
Nicole A. Stone
Georgia Bar. No. 385226
1201 West Peachtree Street, Suite 3000
Atlanta, Georgia 30309-3455
(404) 815-3400
(404) 815-3415 (fax)
Email: cfreeman@carltonfields.com
Email: nstone@carltonfields.com

***Attorneys for Plaintiff Hudson Excess Insurance Company***

- 36 -

131560581.4