# EXHIBIT J



**ATTORNEYS AT LAW**
**One Atlantic Center**
1201 West Peachtree Street | Suite 3000
Atlanta, Georgia 30309-3455
404.815.3400 | fax 404.815.3415
www.carltonfields.com

**Atlanta**
Florham Park
Hartford
Los Angeles
Miami
New York
Orlando
Tallahassee
Tampa
Washington, DC
West Palm Beach

Christopher B. Freeman
Shareholder
404.815.2710 Direct Dial
cfreeman@carltonfields.com

Deember 21, 2022

**Via E-Mail Only**

Sudo Bar and Grill, LLC
c/o Jonathan M. Adelman, Esq.
Waldon Adelman Castilla
Hiestand & Prout, LLP
900 Circle 75 Parkway
Suite 1040
Atlanta, Georgia 30339
jadelman@wachp.com

Re: Insured: Sudo Bar and Grill, LLC
Claimants: Darius Collier and Jerrold Gibbs
Policy Nos: HSGM-07353 (the "CGL Policy")
HSLL-46180 (the "LL Policy")
Claim No: CNT-0001983
Date of Loss: September 5, 2021

Dear Mr. Adelman:

As you are aware, we represent Hudson Excess Insurance Company ("Hudson") in connection with a request for coverage under the policies identified above. Hudson is in receipt of your December 5, 2022 correspondence, in which Sudo Bar and Grill, LLC ("Sudo") requests that Hudson reconsider its coverage position with respect to the Gibbs Suit and, further, that Hudson accept Plaintiffs Collier and Gibbs' joint $1,000,000 settlement demand. For the reasons explained below, although Hudson disagrees with both the facts and legal conclusions stated in the December 5, 2022 letter, it is willing at this time to assume the defense of Sudo in connection with the Gibbs Suit, subject to a full reservation of rights to disclaim coverage under the CGL and LL Policies and subject to all defenses available to Hudson whether pursuant to the policies or available under applicable law. By providing a defense, Hudson is not waiving any of its rights to assert positions under the CGL or LL Policies or applicable law, including, without limitation, its right to seek a determination that no coverage is available under the CGL and LL Policies for the September 5, 2021 shooting.[1]

[1] Hudson understands from your December 5, 2022 correspondence that Sudo concedes that there is no coverage for the Gibbs Suit under the CGL Policy, given the express allegations of bodily injury arising out of the use of a weapon. Please advise us immediately if this is incorrect.



Carlton Fields, P.A.
Carlton Fields, P.A. practices law in California through Carlton Fields, LLP.

The facts as presently known have been previously set forth in Hudson's coverage position letters dated September 23, 2022 and November 8, 2022, which are incorporated herein by reference, and will not be restated here. If there are any additional facts or materials you wish for Hudson to consider now or in the future, please provide us with the same as soon as possible.

As a preliminary matter, although your December 5, 2022 correspondence references a request for coverage under the LL Policy, please be advised that Sudo had not previously noticed the above-referenced claim for coverage under that policy. Rather, Sudo's notice of occurrence dated October 29, 2021 was solely as to the CGL Policy, which is the policy under which the Collier Suit is being defended presently under a reservation of rights. Regardless, Hudson will deem your December 5, 2022 correspondence as a request for coverage for the Collier and Gibbs Suits under the LL Policy and respond accordingly.

We expect that you may have questions after reading this letter regarding Hudson's coverage position and the practical impact of the reservation of rights detailed more fully below. Please feel free to contact me directly regarding any questions about Hudson's coverage position.

**HUDSON'S COVERAGE POSITION**

In considering Sudo's request for coverage under the LL Policy, Hudson has reviewed the LL Policy and the Complaints in the Collier and Gibbs Suits, which, aside from the October 29, 2021 first notice of loss, are the only materials presently available to Hudson.

Hudson issued Liquor Liability policy HSLL-46180 to Sudo Bar and Grill, LLC for a policy period of May 20, 2021 to May 20, 2022. The LL Policy contains a $1,000,000 limit of insurance, both as to "each common cause" and in the aggregate. This letter does not modify any of the terms and conditions of the LL Policy. To assist you in understanding this letter, we suggest that the LL Policy be reviewed together herewith.

The insuring agreement under the LL Policy provides:

> I. LIQUOR LIABILITY INSURANCE COVERAGE
> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to which this insurance applies, sustained by any person *if such liability is imposed upon the insured by reason of the selling, serving or giving of any alcoholic beverage at or from the insured premises*, and the company shall have the right and duty to defend any suit against the insured seeking such damages, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

As such, by its plain language, in order for the LL Policy to potentially provide coverage in the first instance, the insured's liability must be "by reason of," or, because of, the "selling, serving

or giving of any alcoholic beverage." The mere presence of allegations involving or mentioning alcohol is not the determinative factor for whether allegations trigger coverage under the LL Policy. Instead, the theories of liability must be based on the insured's "selling, serving or giving of any alcoholic beverage."

Based on the allegations contained in the Collier and Gibbs Suits, it does not appear Plaintiffs seek to hold Sudo liable because of its sale, service, or giving of alcohol. Rather, Plaintiffs generally allege Sudo was negligent by breaching its duty to exercise ordinary care to keep its premises and approaches safe, and by negligently failing to provide adequate security, management, and control of the premises and approaches. As Plaintiffs' theories of liability are not based on Sudo's status as a dram shop owner (i.e., they do not seek to hold Sudo liable for bodily injury *because of* the sale, service, or giving of alcoholic beverages)[2], neither the Collier Suit nor the Gibbs Suit appear to trigger the LL Policy's insuring agreement in the first instance, and Hudson must reserve the right to disclaim coverage for both suits on this basis.

Further, any available insurance coverage under the LL Policy is subject to all conditions, provisions, and exclusions that may serve to limit or bar coverage entirely. By endorsement, the LL Policy excludes all coverage for "punitive or exemplary damages." Because the Collier and Gibbs Suits pray for punitive damages, please be advised that Hudson disclaims coverage for such damages on this ground.

We also note that the LL Policy contains certain conditions that outline several duties to cooperate that Sudo was required to abide by in the event of an occurrence or claim. For instance, the LL Policy requires that Sudo notify Hudson "as soon as practicable" when an injury occurs and, further, to "immediately forward to [Hudson] every demand, notice, summons or other process received by him or his representative." Likewise, the LL Policy prohibits Sudo from taking legal action against Hudson unless there has been full compliance with all of the terms of the policy.

Here, it appears that although a shooting is alleged to have occurred on Sudo's premises on September 5, 2021, Hudson was not notified of the incident until almost two months later, on October 29, 2021. Given the severity of the incident and the alleged injuries to numerous claimants, Hudson reserves its rights to deny or limit coverage to the extent Sudo's notice of the incident was not as soon as practicable, as required by the LL Policy.

Finally, Hudson wishes to advise you that pursuant to Section III – Limits of Liability – the $1,000,000 "Each Common Cause" Limit of Insurance is "the total liability of the company for all damages sustained by one or more persons as the result of the selling, serving or giving of any alcoholic beverage to any one person." Thus, in all events, coverage, if any, for the September 5, 2021 incident – regardless of the number of claimants or suits filed – is expressly limited under the LL Policy to the $1,000,000 Limit of Insurance, and Hudson reserves the right to deny or limit coverage for the Gibbs and/or Collier Suits on this basis as well.

---

[2] Presumably, this is because the facts alleged do not fall within a statutorily recognized exception to the general bar against dram shop liability, under which "[a] person who sells, furnishes, or serves alcoholic beverages to a person of lawful drinking age shall not thereby become liable for injury, death, or damage caused by or resulting from the intoxication of such person, including injury or death to other persons[.]" O.C.G.A. § 51-1-40(b).

Subject to the reservation of rights detailed above, Hudson will agree to defend Sudo in connection with the Gibbs Suit, as it is presently doing in connection with the Collier Suit. Please advise whether Sudo consents to the continued use of Stites & Harbison as defense counsel, as Sudo requested with respect to the related Collier Suit.

With respect to the November 22, 2022 joint settlement demand from Plaintiffs for $1,000,000, please be advised that Hudson cannot accept the demand at this time. Hudson understands that discovery is in its early stages and, further, that Sudo denies all liability. As such, liability is far from clear, and there remains a *bona fide* dispute as to Sudo's alleged liability, if any, and the extent of Plaintiffs' damages attributable thereto. As the alleged intentional acts of non-party James Simpson appear to be the proximate cause of Plaintiffs' injuries, the extent of any damages awarded against Sudo, if any, would likely be in proportion to the degree of fault assigned to it by a jury, in comparison to those which may be assigned to Simpson or the security company. In summary, this is a case of disputed liability in the early stages of discovery, and Hudson cannot accept Plaintiffs' demand under these circumstances. Should Sudo disagree with Hudson's understanding of the evidence developed to date and its conclusion that both liability and damages against Sudo remain unclear at this time, we ask that you please provide us with any additional information you deem relevant so Hudson may review the same.

Additionally, the Weapons Exclusion to the CGL Policy precludes any coverage for "bodily injury" arising out of the use of weapons, including firearms, by any person and the failure by the insured to prevent the possession or use of a firearm. The Collier and Gibbs Suits unquestionably involve alleged injuries suffered because of a shooting at Sudo's premises. Accordingly, such injuries would arise out of, relate to, be based upon, or be attributable to the possession or use of a weapon by any person, and any damages awarded in connection therewith would fall squarely within the plain terms of the Weapons Exclusion, for which no coverage would be afforded to Sudo under the CGL Policy and as to which Hudson would have no duty to indemnify Sudo. Moreover, as explained above, none of the claims asserted by Plaintiffs appear to fall within the coverage grant of the LL Policy. Further, Plaintiffs' claims do not fall within any statutorily recognized exception to the general bar against dram shop liability under O.C.G.A. § 51-1-40. Accordingly, under Georgia law, Plaintiffs have no legally cognizable claim against Sudo for bodily injury because of its sale, service or giving of alcohol, and there could be no judgment against Sudo for which coverage would be owed under the LL Policy.[3]

For the above reasons, Hudson cannot accept the settlement demand at this time, nor Sudo's request that it do so. To the extent Sudo wishes to accept the demand using its own funds, please advise us immediately.

[3] Further, in the event Sudo were held liable for Plaintiffs' injuries by reason of causing or contributing to the intoxication of any person, there would be no coverage under the CGL Policy because of the amended Liquor Liability Exclusion endorsement (CG 21 50 09 89). Hudson reserves the right to deny or limit coverage for the Collier and Gibbs Suits on this additional basis.

**CONCLUSION AND RESERVATION OF RIGHTS**

In closing, Hudson agrees at this time to defend Sudo in connection with the Gibbs Suit under a full and express reservation of rights, as detailed more fully above. In connection with its coverage position, Hudson has identified only those policy provisions and exclusions that appear to be the most applicable based on the current allegations in the Collier and Gibbs Suits. Please understand that by citing the specific grounds outlined in this letter, Hudson does not intend to waive its ability to rely on any other grounds for denying or limiting coverage. Thus, you should not rely, in any way, on the absence of other grounds from this letter as assurance that Hudson does not find those grounds applicable.

This letter is not, and should not be construed as, a waiver of any terms, conditions, exclusions, or other provisions of the CGL or LL Policies or any other policies of insurance issued by Hudson or any of its affiliates. Hudson expressly reserves all rights, at law or in equity, under the CGL and LL Policies, including the right to assert additional grounds for the denial or limitation of coverage, including grounds for the withdrawal of a defense. Furthermore, any actions taken by Hudson or its agents, representatives, or attorneys do not constitute and are not intended as waivers of any rights or defenses available to Hudson, whether or not stated herein, that may be available now or at any point in time. Hudson reserves the right to seek reimbursement of any expenses advanced to, or paid on behalf of, any Insured by Hudson should it be determined that there is no coverage under the Policy. Accordingly, all rights remain fully and mutually reserved.

We invite you to submit any additional information you wish Hudson to consider, and we will certainly take into consideration any information you choose to submit. In the interim, please do not hesitate to contact me should you have any questions or concerns.

Very truly yours,

CARLTON FIELDS, P.A.

Christopher B. Freeman

cc: Jennifer M. Guerra, Esq. (jguerra@stites.com)
Jamie Sonnier (jamie@tabakinsurance.com)
Michael Marinuzzi (mmarinuzzi@hudosninsgroup.com)