IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ALANA WALKER ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| vs. ) | |
| ) | FILE NO. |
| LIFE INSURANCE COMPANY ) | |
| OF NORTH AMERICA ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

### I. JURISDICTION AND PARTIES

1.

This suit is brought and jurisdiction lies under the Employee Retirement Income Security Act (hereinafter "ERISA"), 29 U.S.C. §1001, *et. seq.*

2.

Jurisdiction and venue are proper pursuant to 29 U.S.C. §1132.

3.

Plaintiff, Alana Walker (hereinafter "Plaintiff"), is a citizen of the United States and of the State of Georgia.

4.

Defendant, Life Insurance Company of North America (hereinafter "Defendant"), is a foreign corporation doing business for profit in Georgia.

5.

Defendant may be served with process, pursuant to Rule 4 of the Federal Rules of Civil Procedure, by and through its registered agent, CT Corporation System, 289 S. Culver St., Lawrenceville, GA 30046.

6.

Defendant negotiated, maintained and administered the disability policy at issue in this Complaint.

## II.  STATEMENT OF FACTS

7.

Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 6 stated above.

8.

Plaintiff's employer, D.R. Horton, Inc., contracted with Defendant to provide long term disability benefits to its employees.

9.

At all times material to this action, an insurance policy for long term disability was in full force and effect, constituting a binding contract between Defendant D.R. Horton, Inc.

10.

Defendant pays long term disability insurance to covered employees of D.R. Horton, Inc. under the Policy from its own assets.

11.

D.R. Horton, Inc. offered long term disability coverage to its employees as part of an overall welfare benefit plan, as defined under ERISA.

12.

Plaintiff was an insured employee under Defendant's long term disability insurance policy.

13.

Defendant administered the long term disability plan and made all decisions as to benefits payable to eligible employees of D.R. Horton, Inc.

14.

Under Defendant's Policy, "The Employee is considered Disabled if, solely

because of Injury or Sickness, he or she is:

1. unable to perform the material duties of his or her Regular Occupation; and

2. unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation.

After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is:

1. unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; and

2. unable to earn 60% or more of his or her Indexed Earnings.

The Insurance Company will require proof of earnings and continued Disability."

15.

Plaintiff worked for D.R. Horton, Inc. as a Mortgage Supervisor.

16.

Plaintiff ceased working on or about August 17, 2020 due to multiple orthopedic problems including problems with the knee, cervical and thoracic spine, right shoulder, right foot, sleep apnea, shortness of breath, sciatica, bilateral knee

arthritis, degenerative joint disease, adhesive capulitis in right shoulder and lumbar radiculopathy.

17.

Defendant found Plaintiff disabled on or about November 30, 2018 and referred Plaintiff to Allsup, a Social Security advocate, to argue to the federal government that she was disabled from any substantial gainful activity.

18.

On May 19, 2020, the Social Security Administration awarded benefits finding Plaintiff disabled from any substantial gainful activity.

19.

Plaintiff promptly paid Defendant all monies owing for the resulting overpayment.

20.

Shortly thereafter on November 18, 2020, Defendant denied ongoing benefits stating that Plaintiff was not disabled from any occupation as of November 30, 2020.

21.

In that denial letter Defendant relied upon a one time Independent Medical Evaluation which found that Plaintiff was capable of sedentary work.

22.

Defendant also relied upon a transferrable skills analysis which stated that Plaintiff would be able to perform the occupation of Manager Financial Institution.

23.

Defendant also acknowledged the Social Security award but claimed that it had more recent information than the Social Security Administration and thus it disregarded the Social Security Administration's findings.

24.

On March 18, 2021, Plaintiff attended a Functional Capacity Evaluation which found her to be at the below sedentary physical demand characteristic level.

25.

On March 29, 2021, Plaintiff's doctor, Dr. Adil Ansari, reviewed the Functional Capacity Evaluation and stated that is was consistent with his evaluation, treatment, observations and objective findings of Plaintiff's condition.

26.

On March 30, 2021, Plaintiff appealed the denial noting that the Independent Medical Evaluation did little to no formal testing.

27.

Plaintiff also included all of Plaintiff's updated medical records.

28.

On April 27, 2021, Plaintiff contacted Defendant and told them that she was having a hard time obtaining the entire Social Security file but since Defendant referred Plaintiff to the advocate it should be able to obtain the entire Social Security file from Allsup.

29.

On June 21, 2021, Defendant wrote Plaintiff a letter enclosing two Peer Reviews by a physician and a transferable skills analysis by a vocational rehabilitation counselor.

30.

On July 21, 2021, Dr. Scott Perlman reviewed the Functional Capacity Evaluation and stated that it was consistent with his evaluation, treatment, observation and objective findings of Plaintiff's condition and that he agreed with the restrictions and limitations contained in the Functional Capacity Evaluation.

31.

This statement was sent to Defendant on or about that date.

32.

On July 23, 2021, Plaintiff also responded with a vocational expert report who stated that in reviewing the medical and vocational materials provided as well as interviewing Plaintiff there were no occupations in the national economy that would comply with the restrictions by Dr. Perlman, Dr. Ansari, Dr. Belcourt, Dr. Getz or the Functional Capacity Evaluation and the salary requirements of the LTD policy.

33.

Essentially, the vocational expert believed that Defendant analyzed Plaintiff's previous job incorrectly and did not truly utilize the salary requirements in the policy.

34.

On August 12, 2021, Plaintiff submitted the job description and Dictionary of Occupational Titles pages utilized by her the vocational expert.

35.

On August 17, 2021, Defendant sent more medical reviews to Plaintiff.

36.

On September 8, 2021, Plaintiff's vocational expert submitted an addendum stating again that Plaintiff cannot perform the job identified by Defendant in its vocational review and cannot perform any occupation in the national economy that

would meet the requirements of the LTD policy.

37.

On September 13, 2021, Plaintiff submitted this addendum to Defendant.

38.

On September 16, 2021, Plaintiff submitted a letter from Dr. Jyoti Gundavarapu who stated that Plaintiff was currently under her care and it is her opinion that she is unable to perform sedentary work due to chronic arthritis.

39.

On September 28, 2021, Defendant submitted to Plaintiff additional medical reviews and vocational reviews.

40.

On October 18, 2021, Plaintiff responded with an additional addendum from the vocational expert again stating that Plaintiff's former job required her to lift up to twenty-five pounds placing it in the medium exertion level and further stated that Plaintiff cannot perform the Manager Financial Institution job that Defendant identified as she never acquired the skills to perform such a high level job.

41.

On October 29, 2021, Defendant upheld its decision on the Independent

Medical Evaluation and the additional medical reviewers and continued to claim that the Transferrable Skills Analysis and vocational report utilized by Defendant was valid.

42.

On November 12, 2021, Plaintiff sent in a second addendum from her vocational expert which maintained that Defendant continued to make most of the same errors that it had made before in its vocational analysis.

43.

Plaintiff alleges that she cannot perform this high level occupation and that Defendant chose it only because it met the earning requirements.

44.

Plaintiff received no response to this letter.

45.

Administrative remedies have been exhausted.

46.

Defendant's denial of Plaintiff's claim for long term disability benefits is a breach of the terms of the policy issued by Defendant.

## III.  CLAIM FOR RELIEF

## ENTITLEMENT TO LONG TERM DISABILITY BENEFITS

47.

Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 46 stated above.

48.

Plaintiff is entitled to long term disability benefits under Defendant's Policy for the following reasons:

a. These benefits are permitted under the plans;

b. Plaintiff has satisfied all conditions for eligibility for receipt of these benefits;

c. Plaintiff has not waived or otherwise relinquished her entitlement to these benefits.

49.

Defendant has refused to pay disability benefits despite substantial medical and vocational documentation.  As a result of Defendant's failure to pay benefits to Plaintiff, she is entitled to relief as outlined below.

## IV.  RELIEF REQUESTED

WHEREFORE, Plaintiff requests judgment of this honorable Court against Defendant as follows:

(1) Find and hold Defendant owes Plaintiff disability benefits in the proper amount from on or about November 30, 2020 and continuing, plus the maximum allowable interest on all back benefits;

(2) Enjoin Defendant from any further prohibited acts against Plaintiff;

(3) Award Plaintiff attorneys' fees, including litigation expenses, and the cost of this action; and

(4) Grant other and further relief as may be just and proper.

This the  1st  day of February, 2023.

       /s/Heather K. Karrh
       HEATHER K. KARRH
       Georgia State Bar No. 408379
       MICHAEL J. HOFRICHTER
       Ga. State Bar No. 359841
       Attorneys for Plaintiff

       ROGERS, HOFRICHTER & KARRH, LLC
       225 S. Glynn Street, Suite A
       Fayetteville, GA 30214
       (770)460-1118 (telephone)
       (770)460-1920 (facsimile)
       Hkarrh@RHKPC.com

*/s/Paulette Adams Bradham*
PAULETTE ADAMS BRADHAM
Georgia State Bar No. 004723

ADAMS BRADHAM LAW OFFICES
2410 Old Milton Pkwy., Suite B
Alpharetta, GA 30009
(770)650-4145 (telephone)
(770)234-5206 (facsimile)
Paulette.adams@gmail.com

ATTORNEYS FOR PLAINTIFF