# EXHIBIT B

## Case Information

### WILLIAMS VS CARRINGTON MORTGAGE SERVICES LLC et al

22-A-09727-6

| Location | Case Category | Case Type | Case Filed Date |
|---|---|---|---|
| Gwinnett - Superior Court | Civil | Other General Civil* | 11/10/2022 |

| Judge | Case Status | | |
|---|---|---|---|
| Batchelor, Ronnie K | Open (Pending) | | |

## Parties ③

| Type | Name | Nickname/Alias | Attorneys |
|---|---|---|---|
| Plaintiff | TERRENCE WILLIAMS | | Pro Se |
| Defendant | CARRINGTON MORTGAGE SERVICES LLC | | Pro Se |
| Defendant | JP MORGAN BANK NA | | Pro Se |

## Hearings ②

| Date/Time | Hearing Type | Judge | Location | Result |
|---|---|---|---|---|
| 1/13/2023 01:30 PM | No Service Calendar | Matthews, Regina | | *Canceled - Other* |
| 2/2/2023 09:30 AM | Temporary Restraining Hearing | Tate, Laura | | |

## Events ⑨

| Date | Event | Type | Comments | Documents |
|---|---|---|---|---|
| 11/10/2022 | Filing | Complaint with Jury Demand | Complaint to Enjoin Foreclosure | Williams Complaint.pdf |
| 11/10/2022 | Filing | Summons | Summons | sc-1.pdf |
| 11/10/2022 | Filing | General Civil/Domestic Relations Case Filing Info | Gwinnett County Case Information Sheet | General Civil/Dom Relations Case Filing Form.pdf |
| 12/19/2022 | Filing | Affidavit of Process Server | CARRINGTON MORTGAGE SERVICES LLC | Affidavit on Carrington.pdf |
| 12/19/2022 | Filing | Affidavit of Process Server | JP MORGAN CHASE BANK NA | Affidavit on Chase.pdf |
| 12/19/2022 | Filing | Motion for Default | Motion for Default | Williams Motion for Entry of Default.pdf |
| 12/19/2022 | Filing | Affidavit for Default Judgment | Affidavit for Default Judgment | Williams Request for Entry of Default.pdf |
| 12/29/2022 | Filing | Motion for Injuctive Relief | Motion Temporary Restraining Order | TRO.pdf |
| 1/3/2023 | Filing | NOTICE OF HEARING | Notice of Hearing | williams.noh.pdf |

© 2023 Tyler Technologies, Inc. | All Rights Reserved
Version: 2022.12.0.3422



E-FILED IN OFFICE - NL
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA

22-A-09727-6
11/10/2022 3:39 PM
TIANA P. GARNER, CLERK

# IN THE SUPERIOR COURT OF GWINNETT COUNTY

## STATE OF GEORGIA

|  |  |
|---|---|
| TERRENCE WILLIAMS,<br>Plaintiff<br><br>v<br><br>CARRINGTON HOME MORTGAGE, LLC;<br>JP MORGAN CHASE BANK, N.A.<br>Defendants | CIVIL ACTION<br><br>FILE NO: 22-A-09727-6 _____<br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR STATE LAW CLAIMS AND TO ENJOIN ILLEGAL FORECLOSURE

COMES NOW, Plaintiff, TERRENCE WILLIAMS, proceeding *in propria persona*, and who files his ***Complaint for State Law Claims and to enjoin illegal foreclosure.***

For the purpose of enabling all persons owning real estate within this state to have the title thereto settled and registered as prescribed by this article, the superior court of the county in which the land is located shall have exclusive original jurisdiction of all petitions and proceedings had thereupon. O.C.G.A. 44-2-60 (2010)

## INTRODUCTION

1.     In this action, Plaintiff seeks ***inter alia***, an injunction against foreclosure, based upon Defendant's failure to comply with statutory prerequisites to foreclosure, together with other state law claims for injuries and damages therefrom, and for other relief.

2.     Georgia has longstanding, statutorily prescribed non-judicial procedures for pursuing and conducting a Power of Sale, with only minimal consumer protections for homeowners. O.C.G.A.

§44-14-162 et. seq

3.      The law is clear, however, that entities foreclosing upon homeowners **<u>must</u>**[1] *strictly* comply with Georgia's statutory prerequisites to foreclosure. <u>O.C.G.A. §23-2-114</u>.  Among other things, it is black-letter law that the entity seeking to foreclose must have actual legal authority to exercise the Power of Sale.

4.      Many foreclosing entities, including Defendants, have dispensed with the fundamental requirements; pursuing foreclosure through their legal Counsel, without having first obtained proper and legally valid assignment of the mortgage, just as in this case.

5.      Georgia's foreclosure process has become undisciplined, and lawless.  Many foreclosures are plainly void under statute and Georgia case law, many borrowers never obtain accurate statutorily required notices.

6.      The foreclosing entities have flawed, and fraudulently created assignments of title, and/or that have been obtained by third party default specialists who get paid for the service of

---

[1] **Will, shall**, and **must** are mandatory words, there is no discretion when there is used a mandatory words; As pointed out by the Court of Appeals, the plain meaning of "**<u>must</u>**" is a command, synonymous with "**<u>shall</u>**." *Henderson v. State*, supra. See also *Allmond v. State*, 202 Ga. App. 902, 903 (415 SE2d 924) (1992); *Hubbard v. State*, 201 Ga. 213, 214 (1) (411 SE2d 44) (1991). See *Ga., Fla. &c. R. Co. v. Sasser*, 130 Ga. 394, 395 (60 SE 997) (1908); *Birdsong & Sledge v. Brooks*, 7 Ga. 88, 89 (1849); *Alewine v. State*, 103 Ga. App. 120, 122 (118 SE2d 499) (1961); *Bass v. Doughty*, 5 Ga. App. 458, 460 (63 SE 516) (1908).[ Whenever in a rule, or statute, there has been used, an unmistakably mandatory character, it is required that certain procedures "**<u>shall</u>**," "**<u>will</u>**," or "**<u>must</u>**" be employed; the court has no discretion to act in a different manner, and often the mandatory character creates a liberty interest. *Hewitt v Helms*, 459 US 460 - Supreme Court 1983 @ 871; see also *Russ v. Young*, 895 F.2d 1149, 1153 (7th Cir.1990), See also *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979).; "use of explicitly mandatory language in connection with requiring specific substantive predicates demands a conclusion that the State has created a protected liberty interest." *Verrett v. Stempson*, 623 A. 2d 120 - DC: Court of Appeals 1993

manufacturing/fabricating the documents needed to foreclose upon unsuspecting homeowners.

7.      The Notes and Security Deeds have been separated, and each has been sold to different groups of investors and are sometimes then resold without a proper chain of title, and thereby creating a cloud upon the title, and resulting in property that will never be marketable again.

8.      Foreclosing entities have not stopped there, they have even foreclosed on homes that had no mortgage, or whose mortgages have been satisfied, or eliminated/ discharged by The United States Bankruptcy Court.

9.      This loan in particular was named in multiple consent judgments by Defendant JP Morgan Chase Bank, under those consent judgments, Plaintiff was entitled to certain remedies which Defendants (both) failed to provide.

10.     Plaintiff seeks relief for the injuries bestowed upon the Plaintiff from Defendants' actions, and for the attempted illegal and wrongful foreclosure of his residence, his home.

11.     Plaintiff seeks declaratory and injunctive relief concerning a foreclosure and Sale Under Power being scheduled by entities that were not the holder in due course, and/or that lacked standing/capacity to pursue and perform such Sale Under Power.

12.     Plaintiff seeks relief in the form of declaratory and injunctive relief for the deficient notices of default, and notices of sale under power.

13.     Plaintiff seeks relief in the form of an injunction preventing imminent foreclosure sale of his home.

14.     Plaintiff seeks relief in the form of procedures to void and/or verify the validity of the underlying Sale Under Power.

15.     Plaintiff further seeks injunctive relief to prevent defendants from continuing their harmful behavior toward Plaintiff and Georgia homeowners as a whole.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction over this matter, because the subject involves Georgia Real Property, title thereto, and Georgia foreclosure Codes and Rules, and for which Georgia's Constitution, gives the Superior Courts exclusive, original jurisdiction.

17.     Superior Courts have jurisdiction to grant equitable relief, and have right to direct review of lower courts, and to correct errors made by lower courts on appeal.

18.     Venue is also proper in this Court, over the out of state defendants, under Georgia's Long Arm Statute.

## PARTIES TO THE ACTION

19.     **Plaintiff**, **Terrence Williams**, ("Plaintiff", or "Mr. Williams") at all times relevant, resided at **1455 Highland Lake Drive Lawrenceville, GA 30045**, **Gwinnett County**.

20.     Defendant **Carrington Home Mortgage, LLC** (hereinafter "**Carrington**"), is a Foreign For-Profit Corporation, whose principal office address is **1600 South Douglass Road, Suite 200-A Anaheim, CA 92806**; they can served through their Registered Agent **CT Corporation System**, whose address is: **289 S. Culver Street, Lawrenceville, GA 30046.**

21.     Defendants **JP Morgan Chase Bank, N.A.** ("Chase") is a Foreign For-Profit Corporation, whose principal office address is **1111 Polaris Parkway Columbus, OH 43240;** they can served through their Registered Agent **CT Corporation System**, whose address is: **289 S. Culver Street, Lawrenceville, GA 30046.**

## STATEMENT OF FACTS

22.     Plaintiff incorporates paragraphs one (1) through twenty-one (21), all general, and all unnumbered paragraphs, as if fully restated herein.

23.     On or around June 17, 2010, Mr. Williams purchased the subject property known as 1455 Highland Lake Drive, Lawrenceville, Georgia in Gwinnett County.

24.     Plaintiff executed a Security Deed in favor of Fairway Independent Mortgage Corporation and recorded as:  ALL that tract or parcel of land lying and being in Land Lot 106 of the 5th District Gwinnett County, Georgia being Lot 35, Block "A", The Downs Subdivision, Phase II, according to a Plat of Survey recorded in Plat Book 77, page 13, GWINNETT County, Georgia Records, which plat and the record thereof are incorporated herein by reference thereto. ***See Exhibit A, Security Deed.***

29.     In or around September of 2012, the subject Security Deed was sold to Chase and recorded within Gwinnett County on October 3, 2012.  ***See Exhibit B, Assignment.***

30.     In or around September of 2013, the subject Security Deed was modified by Chase.  The modification reduced the interest rate to 3.5% and added three years to the maturity date, changing it to 07/01/2043.  The FHA Home Affordable Modification included the following language:

> a.  "The current principal balance of $285,964.86 remains unchanged as a result of this modification. The unpaid principal balance of the loan, as modified is $285,964.86. The original principal balance of the loan on which mortgage/recording taxes were previously paid was $354,040.00."

31.     Unfortunately, those statements proved to be false as Chase added $103,148.31 to the balance of the loan without explanation.  ***See Exhibit C, FHA Loan Modification.***

32.     Plaintiff did not make this realization until July of 2022 as he trusted the lender to act fairly.  Plaintiff made the mortgage payments and did not question the validity of the documents.

33.     Much like most Americans, the COVID-19 Pandemic caused incredible financial burdens on Plaintiff and his family.  Being a disable Navy veteran, his ability to earn income was already decreased.  Plaintiff had increased expenses and his business (a non-emergency transportation company) had come to a complete halt.  Plaintiff contacted Defendant Carrington seeking a mortgage forbearance.  Plaintiff received a one-year forbearance from July 2021 until July 2022. At the expiration of that forbearance, Plaintiff contacted Defendant Carrington to request either an extension or a modification.

34.     In or around July of 2022, Plaintiff received a modification agreement from Carrington. The terms of that agreement were a 5.75% interest rate for 30 years.  The balance ballooned to $460,335.05 without explanation resulting in monthly mortgage payments of $3,479.55. Plaintiff being on a fixed income of $5,500.00, and with inflation at nearly double digits, there was no way that Plaintiff could afford a mortgage payment of nearly 60% of his monthly income.  Plaintiff requested other options and received a "Home Liquidation Assistance" letter. ***See attached Exhibit D, Loan Modification Offer & Exhibit E, Home Liquidation Letter.***

35.     With the subject loan classified as an FHA product, not only does the loan modification not meet those requirements, but Carrington has added amounts to the loan with no explanation or accounting.

- 6 -

36.    The following shows that there is in fact a case and controversy, and Plaintiff has been injured and will continue to be injured and will continue to suffer from defendants' action; the following shows only some of the Critical Facts brought to light by the forensic Loan Audit:

      **a)**    No Mortgage Loan Origination Agreement on file

      **b)**    No apparent Underwriting

      **c)**    Gross lack of due diligence by the lender/broker in approving the loan and the appearance of unconscionability in conducting the loan

      **d)**    Borrower did not pay a yield spread premium to obtain the loan

      **e)**    No prepayment penalty

      **f)**    Placing the borrower in a loan LTV over 100%

      **g)**    Predatory lending practices such as failing to disclose all material terms to borrower

      **h)**    Inappropriate loan programs

      **i)**    Noticeable assignee liabilities and the potential difficulties in determining the Holder in Due Course and multiple layers of risk

37.    The specific allegations stem from the apparent absence of anything resembling the loan to Plaintiff, and is a clear implication of fraudulent loan inducement.

<u>COUNT ONE</u>
<u>LACK OF STANDING/NOT HOLDER IN DUE COURSE</u>
<u>(Against All Defendants)</u>

38.    Plaintiff incorporates paragraphs one (1) through thirty-seven (37), all general, and all unnumbered paragraphs, as if fully restated herein.

39.    Prior to closing, it was never disclosed to Plaintiff who or what MERS was, or that MERS would be named in the security instrument, and/or involved with Plaintiff and/or Plaintiff's Security Deed in any way..

40.    Plaintiff executed a **Promissory Note and Security Deed** on June 17, 2010 in favor of

**Fairway Independent Mortgage Corporation.**

41.   At closing, Plaintiff was only of the knowledge that Fairway Independent Mortgage Corporation, was alleged to have been the lender.

42.   Plaintiff was hurried through the closing documents, Plaintiff does not recall ever reviewing or signing any documents that mentioned MERS.

43.   MERS was also a part of the Security instrument, but not part of the Note.

44.   To the best of Plaintiff's knowledge and belief, at some time unknown to Plaintiff, the Note and security deed were bifurcated where the deed and Note were separated for the purposes of selling/pledging each document to separate investors.

45.   Plaintiff is informed, believes, and therefore alleges; after the origination of his loan, it was funded, bundled into a group of Trust Deeds and subsequently sold to investors as a Derivative, "Mortgage-Backed Securities"

46.   Undisputable Fact:  Plaintiff has been presented with two (2) different Notes.

47.   A review of the MERS system using the MIN provided on the Security Deed clearly indicates that the loan is inactive.  An "inactive" status means that the debt has been paid in full. Mortgages are deactivated when you make all the payments but also when you refinance. Plaintiff hasn't refinanced.  Yet, Defendants are attempting to foreclose on a loan that is paid in full according to the records.  ***See Exhibit F, MERS MIN search results.***

48.   No other signatures, other than the Plaintiff's are on the Promissory Note's signature blocks. The **"Pay to the Order of"** information was on the copy provided by Fairway, but not on the copy sent to the Plaintiff by the agent representatives.

49.   <u>Black's Law Dictionary</u>, 7th Ed. WestGroup, (1999) pp. 737 defines "holder in due course" as:

> "A person who in good faith has given value for a negotiable instrument that is complete and regular on its face, is not overdue, and, to the possessor's knowledge, has not been dishonored. *".

50.      Further, a "[h]older [is defined as] a person who is in possession of a document of title or an instrument. . . ." O.C.G.A. 11-1-201(20).

51.      A holder takes an instrument for value "[t]o the extent that the agreed consideration has been performed or that he acquires a security interest in or a lien on the instrument otherwise than by legal process. . . ." O.C.G.A. § 11-3-303(a).

52.      A holder must also take the instrument in good faith. O.C.G.A. § 11-3-302(1)(b).

53.      Good faith is defined as "honesty in fact in the conduct or transaction concerned." O.C.G.A. § 11-1-201(19).

54.      To constitute bad faith, it must be as in the case at bar, a purchaser must have acquired the instrument "with actual knowledge of its infirmity or with a belief based on the facts or circumstances as known to [the purchaser] that there was a defense or [the purchaser] must have acted dishonestly." ***Citizens & Southern Nat'l Bank v. Johnson***, 214 Ga. 229, 231, 104 S.E.2d 123, 126 (1958); ***Commercial Credit Equipment Corp. v. Reeves***, 110 Ga.App. 701, 704, 139 S.E.2d 784, 787 (1964).

55.      Lastly, a holder must take the instrument without notice of default or defense. O.C.G.A. § 11-3-302(1)(c).[2]

---

[2] A person has "notice" of a fact when:  a) He has actual notice of it; or (b) He has received a notice or notification of it; or (c) From all the facts and circumstances known to him at the time in question he has reason to know that it exists. O.C.G.A. § 11-1-201(25). See also Hopkins v. Kemp Motor Sales, Inc., 139 Ga.App. 471, 473, 228 S.E.2d 607, 609 (1976) (holding that knowledge of a fact as defined in the UCC is actual knowledge).

56.     Based upon information and belief, it appears that the Plaintiff's loan, was one where, prior to closing, investors provided the funds loaned, and immediately after closing, the loan was sold to yet another entity.

57.     Based upon information and belief, immediately after the closing the lender,  dumped the Note and Deed, much like the investors cheated into a Ponzi scheme ten years ago, as shown *In re SGE Mortgage Funding Corp.,* 278 BR 653 - Bankr. Court, MD Georgia 2001278 B.R. 653 (2001).

58.     Upon information and belief, the true lender in the case at bar, had entered into agreements with one or more parties, including the loan seller, prior to the closing.

59.     The security for the loan, secured an obligation that had been paid in full by a third party, who was acting as a financial institution or lender without being registered to do so in violation of regulations and contrary to state and federal laws, rules, authorities, and/or agencies.

60.     Plaintiff's Note was then allocated into a special purpose vehicle formed only for the purpose of holding pooled assets under certain terms; the terms included the allocation of payments from one note to pay any deficiency in payment of another note in unrelated loan transactions, and contrary to the terms of each such note.

61.     Based upon knowledge and belief, the promissory note had been pledged, hypothecated, and/or assigned as collateral security to an unknown entity, foreign trust, or to an agency of the United States government or Federal Reserve

62.     What inevitably happens in the end, is the borrowers, never pay off their loan, which loan, was created with the intention, that it can never be paid back.

63.     Further, not only will the loan never be paid back, but ends up with the borrower having to pay twice as long, or twice as much, or twice as much for twice as long, just to try to keep

their home; see *In re SGE Mortgage Funding Corp*., 278 BR 653 - Bankr. Court, MD Georgia

2001278 B.R. 653 (2001) "White and Summers also criticize *Maryville*. See *White & Summers,*

*supra*, § 30-7 at 49.

64.     It has been proposed that splitting the perfection of the note and mortgage would

effectively require the mortgagor to pay twice to get free and clear title to his real property." *Id*.

65.     However, as clearly identified in Exhibit F, MERS MIN Search Results, there's no debt

to collect and therefore no debt to foreclose.


## COUNT TWO
## RECORDATION OF FORGED/FRAUDULENT DOCUMENTS
### (Against All Defendants)

66.     Plaintiff incorporates paragraphs one (1) through ninety-three (93), all general, and all

unnumbered paragraphs, as if fully restated herein.

67.     The Georgia Court of Appeals has repeatedly held that the "right of the humblest

individual in the enjoyment of his property must be protected."[3]

68.     An individual's property right is of such paramount importance that the Georgia

Constitution is dedicated to the protection of private property.

69.     No fewer than eleven (11) separate paragraphs of the Georgia Constitution[4]  expressly

address individual property rights.

70.     Particularly, the Georgia Constitution emphasizes that protection of property is "the

paramount duty of government[,]".[5]

---

[3] *Williams v. LaGrange*, 213 Ga. 241 (1957); *Ammons v. Central of Georgia Railway Co*., 215 Ga. 758 (1960).

[4] See, e.g., Georgia Constitution, Art. I, § I,  I, II, IV, XXVI, and XXVII; Art. III, § III,  I; Art. VII, § I,  II and III; Art. VII, § II,  II and IV; and Art. IX, § VII,  III.

71.     So important are property rights that the Georgia Legislature has codified property-related torts, thereby providing statutory causes of action for any interference with an individual's property rights.[6]

### A.  *Supreme Court of Georgia's March 25, 2011 Ruling*

72.     Defendants in this case at bar, failed to adhere to strict Georgia statute concerning the recording of real property into the County/State Records, and "constructive notice to subsequent bona fide purchasers".

73.     March 25, 2011 the Supreme Court of Georgia Ruled in a Certification requested by Federal Court "that the 1995 Amendment is applicable to security deeds"; "See O.C.G.A. §44-2-14 ('Before any deed to realty or personalty or any mortgage, bond for title, or other recordable instrument executed in this state may be recorded, it must be attested or acknowledged as provided by law')." *"Exhibit 000"*

74.     The documents Defendants have repeatedly used concerning Plaintiff's real property and the recordation of same, show the documents recorded were not properly attested to, therefore did not provide notice to potential buyers, in violation of O.C.G.A. §§ 44-14-61, 44-14-33.[7]

---

[5] Georgia Constitution,  II

[6] OCGA §§ 51-9-1:  "[t]he right of enjoyment of private property being an absolute right of every citizen, every act of another which unlawfully interferes with such enjoyment is a tort for which an action shall lie."; 51-9-2, 51-9-3:  ("The bare possession of land shall authorize the possessor to recover damages from any person who wrongfully interferes with such possession in any manner", and 51-9-10

[7] To set the matter straight, and prevent any future arguments, the US District Court, Certified the question to the Georgia Supreme Court, who Ruled March 25, 2011 No.: S10Q1564 in *US Bank National Association v. Gordon*.  The question was whether the 1995 Amendment "means that, in the absence of fraud, a security deed that is actually filed and recorded, and accurately indexed, on the appropriate county land records provides constructive notice to subsequent bona fide purchasers, where the security deed

75.    O.C.G.A. §44-14-61 provides that "[i]n order to admit deeds to secure debt…to record, they shall be attested or proved in the manner prescribed by law for mortgages."

76.    O.C.G.A. §44-14-33 provides the law for attesting mortgages:

> "In order to admit a mortgage to record, it must be attested by or acknowledged before an officer as prescribed for the attestation or acknowledgment of deeds of bargain and sale; and, in the case of real property, a mortgage must also be attested or acknowledged by one additional witness. In the absence of fraud, if a mortgage is duly filed, recorded, and indexed on the appropriate county land records, such recordation shall be deemed constructive notice to subsequent bona fide purchasers."

### B.    *Georgia Land Registration Laws*

77.    It is apparent from the long, exhausting misadventure that Defendants have caused Plaintiff to endure, that they have knowingly, willingly, wantonly, fraudulently, and maliciously attempted to gain Plaintiff's property or an interest in Plaintiff's property, and filed fraudulent documents to aid themselves in gaining an interest in, or in the whole of Plaintiff's property, by forgery, fraud and general illegal means.

78.    O.C.G.A. 44-2-43 (2010)  Fraud, forgery, and theft in connection with registration of title to land; penalty

> *Any person who*:
> (1) fraudulently obtains or attempts to obtain a decree of registration of title to any land or interest therein;
> (2) knowingly offers in evidence any forged or fraudulent document in the course of any proceedings with regard to registered lands or any interest therein;
> (3) makes or utters any forged instrument of transfer or instrument of mortgage or any other paper, writing, or document used in connection with any of the proceedings required for the registration of lands or the notation of entries upon the register of titles;

---

contains the grantor's signature but lacks an official and unofficial attestation (i.e., lacks attestation by a notary public and also an unofficial witness)."  They answered "the certified question in the negative."

(4) steals or fraudulently conceals any owner's certificate, creditor's certificate, or other certificate of title provided for under this article; (5) fraudulently alters, changes, or mutilates any writing, instrument, document, record, registration, or register provided for under this article;
(6) makes any false oath or affidavit with respect to any matter or thing provided for in this article; or
(7) makes or knowingly uses any counterfeit of any certificate provided for by this article shall be guilty of a felony and shall be punished by imprisonment for not less than one nor more than ten years.

79.   O.C.G.A. §44-2-43 Does not exempt bankers, brokers, lenders, assignees, nominees, clerks, or any other person.

80.   O.C.G.A. §44-2-43 Does not provide that such individual needs to be indicted, arrested, charged, or tried; further, the statute uses the mandatory character "shall"[8], i.e.:  "shall be" guilty, and "shall be punished".

81.   Under Georgia law, no sale of real estate under Power of Sale, contained in security deeds are valid, unless the sale is advertised and conducted at the time and place and in the usual manner of the Sheriffs' Sales in the county in which such real estate or a part thereof is located, and unless Notice of the sale is given as required by O.C.G.A. §44-14-162.2.

---

[8] **"Shall", "will",** and **"must"** are mandatory words, there is no discretion when a mandatory words has been used; "**Shall**" is generally construed as a word of mandatory import. See *State v. Henderson*, 263 Ga. 508, 510, 436 S.E.2d 209 (1993); see also *Murphy v Bajjani*, Ga. Supreme Court 2007 No:  S06G1483  ("We agree with the Court of Appeals that, as a rule of statutory construction, "**'[s]hall' is generally construed as a word of mandatory import.**") *O'Donnell v. Durham*, 275 Ga. 860 (3) (573 SE2d 23) (2002).

Unmistakably mandatory character, requiring that certain procedures "shall", "will", or "must" be employed, *Hewitt v Helms*, 459 US 460 – Supreme Court 1983; mandatory language the words "shall", "must", or "will".  In sum the use of "explicitly mandatory language", …establishment of "specified substantive predicates" to limit discretion, … *Hewitt v Helms*, 459 U.S., at 472.  "[A] State creates a protected liberty interest by placing substantive limitations on official discretion." *Olim v. Wakinekona*, 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983).

82.     Citi had no right to proceed with a foreclosure and non-judicial sale of Plaintiff's property, as proper notice was not given as required by O.C.G.A. §44-14-162.2.

83.     Where a foreclosing creditor fails to comply with the notice requirements of section O.C.G.A. §44-14-162.2, the residential debtor may pursue a claim for wrongful foreclosure. *Roylston v. Bank of America, N.A*., 290 Ga. App. 556, 660 S.E.2d 412, Ga. App. 2008.

45.     The purported assignment does not comply with O.C.G.A. §44-5-64 because the assignment of the security deed did not satisfy the attestation formalities prescribed by O.C.G.A.§44-5-33, the purported assignment is not a valid assignment under Georgia law; thus, any foreclosure of the security interest covered by the assignment is null and void.

84.     At closing of the loan, Plaintiff executed a promissory Note in favor of the Lender, who was identified as the Note Holder.

85.     The mere fact that the foreclosing party was not the secured creditor, and did not have a legal interest in the property and thus did not have a valid power to sell the property is a cognizable to a wrongful foreclosure claim. *Id*.

86.     "A claim for wrongful exercise of power of sale under O.C.G.A. §23-2-114 can arise when the creditor has no legal right to foreclose." (reversing trial court ruling that creditor's lack of a legal interest in the foreclosed property barred a wrongful foreclosure claim); see *Rapps v. PHH US Mtg. corp*, (allowing appellant to maintain wrongful foreclosure claim based on allegations that appellee altered deed so that it could foreclose on property that was never subject to the deed);  the debtor may seek both cancellation of the foreclosure sale and recovery of damages "not associated with the value of the property for other wrongful conduct by a mortgagor." *Calhoun*, 443 S.E.2d at 838; *Clark*, 395 S.E.2d at 885-86 (explaining that damages "for other breaches of duty and other losses" are allowed in action to cancel foreclosure sale).

87.     Where a creditor does not comply with the statutory duty to exercise fairly the power of

sale in a deed to secure debt, the debtor may pursue a cause of action for wrongful foreclosure under O.C.G.A. §23-2-114. *DeGloyer v. Green Tree Servicing, LLC,* 662 S.E.2d 141 (Ga. Ct. App. 2008).

88.    The "Waiver of Borrower's Rights" purported to give Defendants rights to act as attorney in fact, is a fraudulent document manufactured by Defendants, and with Plaintiff's signature forged upon the document.

89.    Plaintiff maintains that there was not a Notary present at the closing, and the closing attorney's signature was not the attorney at closing.

90.    Furthermore, the fact that the signature of the witness, being the same signature as that of the closing attorney, created, a conflict of interest upon the face of the document.

91.    Moreover, besides the conflict of interest on the face of the document, the fabricated/manufactured document shows that Plaintiff unlawfully was forced to waive his rights covered by the Fifth and Fourteenth Amendments, which has been held, is to be of no effect, one cannot Waive Fifth and Fourteenth Amendment Rights, especially for real property deeds.

92.    Defendants knowingly, willingly, wantonly, and with malicious intent caused forged documents to be used to unlawfully and wrongfully foreclose and conduct a Sale Under Power, thereby unjustly enriching and converting Plaintiff's property through deceit.

93.    Defendants knowingly, willingly, wantonly, and with the intent to deceive, committed fraudulent acts as joint venturers in order to foreclose upon Plaintiff and his property, and knowing that Plaintiff would believe the false representations made to him, have acted in bad faith, with unclean hands, and were not, and can never be a holder in due course.

94.    It is well known fact that an improperly attested deed does not provide constructive notice of the assignee's security interest, the bona fide purchaser has priority of title to the

disputed property as against the assignee, and thus, the assignee's deed should be canceled as a cloud upon the superior title of the purchaser. See ***Higdon v. Gates***, 238 Ga. 105, 231 S.E.2d 345 (Ga. 1976) (affirming trial court's cancellation of bank's security deed as a cloud upon title of subsequent purchaser where the deed was not properly attested because it showed on its face that the tax had not been paid to entitle it to be recorded).

95.     As a result of Defendant's illegal and tortuous conduct in conducting wrongful foreclosures, Plaintiff requests, actual, compensatory, intentional infliction of emotional distress and punitive damages. ***Clark v. West***, 196 Ga. App. 456, 457, 395 S.E.2d 884, 886 (Ga. Ct. App. 1990); see, e.g., ***Curl v. First Federal Savings & Loan Assn***., 243 Ga. 842, 843-844(2), 257 S.E.2d 264 (1979) (affirming award of actual and punitive damages in an action for wrongful foreclosure); ***Decatur Investments Co. v. McWilliams,*** 162 Ga. App. 181, 181, 290 S.E.2d 526, 527 (1982) (affirming award of punitive damages in a wrongful foreclosure action where debtor provided sufficient evidence of creditor's bad faith).

96.     In a wrongful foreclosure action, the injured party may seek damages for mental anguish in addition to the cancellation of the foreclosure. ***DeGolyer v. Green Tree Servicing, LLC,*** 291 Ga. App. 444, 662 S.E.2d 141,147 9 Ga. Ct. App. (2008). "As a general precept, damages for mental distress are not recoverable in the absence of physical injury where the claim is premised upon ordinary negligence. However, when the claim is for intentional misconduct, damages for mental distress may be recovered without proof of physical injury." **Clark**, 196 Ga. App at 457-58; 395 S.E.2d at 886 (quoting ***Hamilton v. Powell, Goldstein, Frazer & Murphy***, 252 Ga. 149, 150, 311 S.E.2d 818 (Ga. 1984)).

97.     Defendants are banking institutions, and mortgage servicers who are held to a high standard of honesty.

98.     Defendants' frauds and other misconduct upon the public and the judiciary for their financial benefit is reprehensible, unconscionable, outrageous and demands serious punitive damages to deter Defendants from further harming the public and deceiving the judiciary.

99.     Plaintiff is entitled to punitive damages and attorney's fee as a result of Defendants' wrongful and fraudulent actions against him

100.    By reason of the foregoing and as a direct, proximate, and foreseeable result of Defendants' wrongful and fraudulent actions, Plaintiff have suffered loss and damages in the amount of $2,000,000.00.

101.    WHEREFORE the further requests for Relief, will appear in Plaintiff's Conclusion and Prayer for Relief, below.

**COUNT THREE**
**ATTEMPTED WRONGFUL FORECLOSURE**
**(Against All Defendants)**

102.    Plaintiff incorporates paragraphs one (1) through one hundred-thirty (101), all general paragraphs and all unnumbered paragraphs as if fully restated herein.

103.    In Georgia, there exists a statutory duty upon the entity pursuing and causing the Sale Under Power, to exercise fairly and in good faith, the power of sale.  Although arising from a contractual right, breach of this duty is a tort, compensable at law.  ***Clark v West***, 196 Ga. App. 456, 395 S.E.2d 884 (1990).

104.    The statutory requirements of O.C.G.A. §44-14-162.2 were violated by defendants, as there was no Notice sent to Plaintiff by the Secured Creditor, clearly Citi was not the secured creditor, holder in due course, of the promissory Note

105.    The fact that the Security instrument and the Note had been separated causes the loan to become unsecured; there is a break in the chain of title; the sale was not conducted fairly and in

good-faith as required by O.C.G.A. §23-2-114, all constitute a tort for wrongful foreclosure.

106.    Defendants' actions were willful, wanton and knowingly performed with a complete disregard of Georgia's Codes, Plaintiff's Rights, and the consequences of doing so; Plaintiff is thereby entitled to an award of punitive damages.

107.    Defendants' above described actions constitute a tort of wrongful foreclosure under Georgia Law entitling Plaintiff to recover from defendants all damages caused by their tortuous conduct, including damages for severe emotional distress and punitive damages, as well as attorney's fees (at such time Plaintiff is still attempting to locate and retain competent legal counsel).

108.    WHEREFORE, Plaintiff seeks the Relief as set out in the Conclusion and Prayer for Relief, below.

## COUNT FOUR
## EQUITABLE RELIEF
### (Defendants Have Unclean Hands)

109.    Plaintiff incorporates all preceding paragraphs, as if fully restated herein.

110.    Plaintiff has no other adequate remedy at law or the violations, and injuries bestowed upon the Plaintiff by these defendants.

111.    Due to fictional documents having been recorded into the real property records by defendants, or their agents, and masquerading as if they had legal authority to perform the acts they have, resulting in violations of the rules, Georgia Code, and the penal code, Plaintiff has been injured and suffered.

112.    Defendants have unclean hands; they have had unclean hands, ever since they took the first step to pursue foreclosure and Sale Under Power.

113.    When defendants began seeking to foreclose and preparing for a Sale Under Power of Plaintiff's property, and they wrongfully took equitable rights when taking Plaintiff's property.

114.    As most every defendant will claim during wrongful foreclosure complaints against them, "[h]e who would have equity must first do equity and give effect to all equitable rights in the other party respecting the subject matter of the action." O.C.G.A. §23-1-10 (2010).

115.    Forging documents and entering them into County real property records, is not giving effect to all of Plaintiff's equitable rights.

116.    "The unclean-hands maxim [refers] to inequity in which infects the cause of action so that to entertain it would be a violation of conscious." *Partain v. Maddox*, 227 Ga. 623, 637(4)(a) (182 SE2d 450)(1971).

117.    To assert the doctrine successfully, a party must demonstrate that the wrongdoing is directly related to the claim against which unclean hands is asserted.  *Adams v. Crowell*, 157 Ga. App. 576, 577 92) (278 SE2d 151)(1981); see also *Keystone Co. v. Excavator Co*. 290 U.S. 240, 245 (54 SC 146, 78Led 293)(1933).

118.    Defendants would have foreclosed and pursued Sale Under power, even had Plaintiff made a tender, that was obvious by their refusal to provide the proper payoff to Plaintiff, and refusal to convey the information he sought about the loan.

119.    A tender is not required where the party to whom the offer is made states that it will be refused if made. *Nickelson v. Owenby*, 208 Ga. 352 (66 SE2d 828); *G. V. Corp. v. Bob Todd Realty Co*., 102 Ga. App. 190 (115 SE2d 611).

120.    "Where the tender is rejected without specifying the basis of the rejection, the right to

object is waived." ***Murry v. Lett***, 219 Ga. 809 (136 SE2d 348).

121.    WHEREFORE, Plaintiff seeks Relief as set forth below in the Conclusion and Prayer for Relief.

## CONCLUSION AND PRAYER FOR RELIEF

An actual case and controversy exist in that some or all of the Defendants, or their successors and assigns are attempting to deprive Plaintiff of his valuable right to own and use the subject real estate to which TERRENCE WILLIAMS, had legal, rightful title and ownership.

1.    There are only a few issues in this Case;

a)    Defendants are attempting to foreclose on Plaintiff wrongfully, and he seeks to enjoin the illegal Foreclosure;

b)    Defendants were not Holders in Due Course;

c)    Defendants owed Plaintiff the Duty of Good Faith and Fair Dealing

d)    Defendants Had Unclean Hands;

e)    Plaintiff suffered mentally and emotionally from defendants' actions in which they knowingly, willingly, wantonly, and intentionally performed acts to humiliate, and mentally harm Plaintiff, and cause him insecurity and nervousness.

## WHEREFORE PLAINTIFF PRAYS FOR THE FOLLOWING:

1.  Plaintiff Prays that this Honorable Court will call a Jury of Plaintiff's peers.

2.  Plaintiff Prays that this Honorable Court will find that defendants were not Holder in Due Course.

3.   Plaintiff Prays that this Honorable Court will find that defendants violated fair faith in good dealing when they auctioned Plaintiff's property at much less than it should have gone for, and that they themselves bought it, therefore purposeful that they did not try to get the best possible price for the property.

4.   Plaintiff further Prays that this Honorable Court will find the defendants have unclean

hands; and that they intentionally inflicted emotional distress upon the Plaintiff, making available damages to Plaintiff on that count as well.

5.    Plaintiff Prays this Honorable Court will enjoin the illegal and wrongful Foreclosure Sale, and Cancel the warranty deed under power.

6.    Plaintiff Prays this Honorable Court sign an order granting continual injunction against the defendants, their successors, nominees, and/or assigns, and all others from further dispersing and damaging private property that legally should be titled to the Plaintiff;

7.    As a result of some or all of the Defendant(s), and/or their successors, nominees, and/or assigns aforesaid violations, Plaintiff Prays this Honorable Court will find that defendants are liable to Plaintiff in an amount not less than $500,000.00 and up to $2,000,000.00, for each and every violation, in an amount for the violations after proven;

8.    Plaintiff further Prays that this Honorable Court will Grant the relief set out in any and all above paragraphs, including punitive damages and possible attorney's fees, should Plaintiff locate and retain competent legal counsel, and any further Relief this court see just and fair under the circumstances of this action.

9.    Further, Plaintiff Prays this Honorable Court will GRANT any further relief, that this Honorable Court sees as fair and just.

Respectfully submitted, this 28th day of September 2022

By:  */s/ Terrence Williams*
TERRENCE WILLIAMS
1455 Highland Drive
Lawrenceville, GA 30045
(770) 374-5956

- 22 -

**EXHIBIT A**

50182
00431

GEORGIA INTANGIBLE TAX PAID
$ 1063.50

TOM LAWLER
SUPERIOR COURT GWINNETT
COUNTY, GEORGIA

BK 50182 PG 0431

FILED AND RECORDED
CLERK SUPERIOR COURT
GWINNETT COUNTY GA

2010 JUL 27 PM 2:00

TOM LAWLER, CLERK

Return To:
FAIRWAY INDEPENDENT MORTGAGE CORPORATION

5850 TOWN & COUNTRY BOULEVARD, SUITE 601
FRISCO, TX 75034

Prepared By:
DENNIS P. SCHWARTZ
SCHWARTZ & ASSOCIATES
1446 HERITAGE DRIVE
MCKINNEY, TEXAS 75069
972-562-1966

O'KELLEY & SOROHAN
ATTORNEYS AT LAW, LLC
2336 WISTERIA DR. SUITE 210
SNELLVILLE, GA 30078
770-982-8202

45065

——————————————————— [Space Above This Line For Recording Data] ———————————————————

**ALL OR PART OF THE PURCHASE PRICE OF THE PROPERTY IS PAID FOR
WITH THE MONEY LOANED.**

**PURCHASE MONEY**

State of Georgia

# SECURITY DEED

FHA Case No.

**105-5785831-703**

MIN 100392497250006055

THIS SECURITY DEED ("Security Instrument") is given on JUNE 17, 2010
The Grantor is
TERRENCE E. WILLIAMS, A MARRIED MAN

NOT JOINED HEREIN BY HIS SPOUSE AS THE HEREIN DESCRIBED PROPERTY CONSTITUTES NO
PART OF THEIR BUSINESS OR RESIDENTIAL HOMESTEAD

and whose address is

1455 HIGHLAND LAKE DRIVE, LAWRENCEVILLE, GEORGIA 30045
("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc., ("MERS"),
(solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as grantee. MERS is
organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026,
Flint, MI 48501-2026, tel. (888) 679-MERS.
FAIRWAY INDEPENDENT MORTGAGE CORPORATION

("Lender") is organized and existing under the laws of THE STATE OF TEXAS                          , and
has an address of 5850 TOWN & COUNTRY BOULEVARD, SUITE 601, FRISCO, TX 75034          .

105-5785831-703                                                               72736750

FHA Georgia Security Deed with MERS - 4/96          Page 1 of 8                Amended 2/01
VMP-4N(GA) (0509)          VMP Mortgage Solutions, Inc.          **0058661**   Initials: _TW_

WWW.DOCSDIRECT.COM          06/16/2010 03:03 PM          NEW LOAN

36

BK50182PG0432

Borrower owes Lender the principal sum of
**THREE HUNDRED FIFTY FOUR THOUSAND FORTY & NO/100**

Dollars (U.S. $**354,040.00**              ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **JULY 01, 2040**              . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS, (solely as nominee for Lender and Lender's successors and assigns), and the successors and assigns of MERS, with power of sale, the following described property located in **GWINNETT**              County, Georgia:
**ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 106 OF THE 5TH DISTRICT, GWINNETT COUNTY, GEORGIA, BEING LOT 35, BLOCK A, THE DOWNS SUBDIVISION PHASE II, ACCORDING TO A PLAT OF SURVEY RECORDED IN PLAT BOOK 77, PAGE 13, GWINNETT COUNTY, GEORGIA RECORDS, WHICH PLAT AND THE RECORD THEREOF ARE INCORPORATED HEREIN BY REFENCE THERETO.**

Parcel ID Number: R5106-194
5-106-194
which has the address of **1455 HIGHLAND LAKE DRIVE**                    [Street]
**LAWRENCEVILLE**                    [City], Georgia **30045**       [Zip Code] ("Property Address");
TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.
BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.
Borrower and Lender covenant and agree as follows:
UNIFORM COVENANTS.
**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.
**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary,

105-5785831-703                                                                72736750

VMP-4N(GA) (0509)                    Page 2 of 8                    Initials: _____

BK50182PG0433

in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

<u>First</u>, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

<u>Second</u>, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

<u>Third</u>, to interest due under the Note;

<u>Fourth</u>, to amortization of the principal of the Note; and

<u>Fifth</u>, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or

105-5785831-703                                                                                                           72736750

VMP®-4N(GA) (0509)                          Page 3 of 8                          Initials: _____

50182
00434

BK50182PG0434

abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

    **(a) Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

        (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

        (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

    **(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

105-5785831-703                                                                                                72736750

 -4N(GA) (0509)                    Page 4 of 8                    Initials: _____

WWW.DOCSDIRECT.COM          06/16/2010  03:03 PM          NEW LOAN

BK50182PG0435

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

105-5785831-703                                                                                                72736750

 -4N(GA) (0509)                          Page 5 of 8                          Initials: _____

50182
00436

BK50182PG0436

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

105-5785831-703                                                                                                   72736750

VMP®-4N(GA) (0509)                               Page 6 of 8                               Initials: _____

BK50182PG0437

**18. Foreclosure Procedure.** If Lender requires immediate payment in full of all sums under paragraph 9, Lender may invoke the power of sale granted by Borrower and any other remedies permitted by applicable law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale to Borrower in the manner provided in paragraph 13 and shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by law.

If the Property is sold pursuant to this paragraph 18, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

**21. Assumption not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

**22. Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

**23. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider  ☐ Graduated Payment Rider  ☒ Other [Specify] *
☒ Planned Unit Development Rider  ☐ Growing Equity Rider

* WAIVER OF BORROWER'S RIGHTS/CLOSING ATTORNEY'S AFFIDAVIT

105-5785831-703                                                72736750

VMP-4N(GA) (0509)            Page 7 of 8            Initials: _____

WWW.DOCSDIRECT.COM        06/16/2010  03:03 PM        NEW LOAN

BK 5 0 1 8 2 PG 0 4 3 8

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

_____      _____ (Seal)
                           **TERRENCE E. WILLIAMS**      -Borrower

_____      _____ (Seal)
                                                   -Borrower

_____ (Seal)      _____ (Seal)
                     -Borrower                                    -Borrower

_____ (Seal)      _____ (Seal)
                     -Borrower                                    -Borrower

_____ (Seal)      _____ (Seal)
                     -Borrower                                    -Borrower

STATE OF GEORGIA, _____ Gwinnett _____ County ss:
     Signed, sealed and delivered in the presence of:

_____
Unofficial Witness

_____
Notary Public, _____ County
State of Georgia

*(Notary seal: DAVID MARTIN / NOTARY / GEORGIA / EXPIRES FEB. 16, 2014 / PUBLIC / WALTON COUNTY)*

105-5785831-703                                                        72736750

VMP®-4N(GA) (0509)                      Page 8 of 8

50182
00439

BK 5 0 1 8 2 PG 0 4 3 9

EXHIBIT "A"
LEGAL DESCRIPTION

ALL that tract or parcel of land lying and being in Land Lot 106 of the 5th District,
Gwinnett County, Georgia, being Lot 35, Block "A", The Downs Subdivision,
Phase II, according to a Plat of Survey recorded in Plat Book 77, page 13,
Gwinnett County, Georgia Records, which plat and the record thereof are
incorporated herein by reference thereto.

**EXHIBIT B**

51690
00470

BK51690 PG0470

FILED & RECORDED
CLERK SUPERIOR COURT
GWINNETT COUNTY, GA.

12 OCT -3 PM 2:00

RICHARD ALEXANDER, CLERK

When Recorded Return To:
JPMorgan Chase Bank, NA
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683

Loan #: 1076358547



## ASSIGNMENT OF SECURITY DEED

**Contact JPMORGAN CHASE BANK, N.A. for this instrument 780 Kansas Lane, Suite A, Monroe, LA 71203, telephone # (866) 756-8747, which is responsible for receiving payments.**

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR FAIRWAY INDEPENDENT MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS PO BOX 2026, FLINT, MI, 48501** by these presents does convey, grant, assign, transfer and set over the described Security Deed with all interest secured thereby, all liens and any rights due or to become due thereon to **JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, WHOSE ADDRESS IS 700 KANSAS LANE, MC 8000, MONROE, LA 71203 (866)756-8747, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).**

Said Security Deed is executed by **TERRENCE E. WILLIAMS** to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC** and recorded in Deed Book 50182, Page 0431, and/or as Instrument # n/a in the office of the Clerk of the Superior Court of GWINNETT County, Georgia

**IN WITNESS WHEREOF,** the undersigned has hereunto set its hand on ___09 , 21___ /2012 (MM/DD/YYYY).
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR FAIRWAY INDEPENDENT MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS**

By: _Erin Auger_
    _Erin Auger_ .   **ASST. SECRETARY**

And: _____
    _Tauisha J Cott_   **ASST. SECRETARY**

_Vernita L Causey_
_Vernita L Causey_   Witness

_Vanay D Ashford_
_Vanay D Ashford_   Witness

STATE OF LOUISIANA   PARISH OF OUACHITA
On ___09 , 21___ /2012 (MM/DD/YYYY), before me appeared _Erin Auger_
and ___Tauisha J Cott___ , to me personally known, who did say that he/she/they is/are the ASST. SECRETARY and ASST. SECRETARY, respectively of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC AS NOMINEE FOR FAIRWAY INDEPENDENT MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS and that the instrument was signed on behalf of the corporation (or association), by authority from its board of directors, and that he/she/they acknowledged the instrument to be the free act and deed of the corporation (or association)

_Helen P Tubbs_
_Helen P Tubbs_
Notary Public - State of LOUISIANA
Commission expires Upon My Death

**Document Prepared By:** E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152
JPCAS 17739673 -5 CHASE CJ4196038  MIN 100392497250006055 MERS PHONE 1-888-679-6377   [C]
FRMGA1

*17739673*

0102100

**EXHIBIT C**

BK52519 PG0838

Recording Requested By/Return To

**Tonya Hawkins**
Vice President

**JPMORGAN CHASE BANK, N.A.**
**MHA DEPARTMENT**
**780 KANSAS LANE**
**2ND FLOOR, LA4-3125**
**MONROE, LA 71203**

This Instrument Prepared By
**JPMORGAN CHASE BANK, N.A.**
**3415 VISION DRIVE**
**COLUMBUS, OHIO 43219-6009**

———————————— [Space Above This Line For Recording Data] ————————————

# FHA HOME AFFORDABLE MODIFICATION AGREEMENT
## (Step Two of Two-Step Documentation Process)

**FHA Case Number 703 105-5785831**

The current principal balance of $285,964.86 remains unchanged as a result of this modification. The unpaid principal balance of the loan, as modified, is $285,964.86. The original principal balance of the loan on which mortgage/recording taxes were previously paid was $354,040.00.

**Loan Number    1076358547**

Borrower ("I") [1] **TERRENCE E WILLIAMS**
Lender or Servicer ("Lender"/"Mortgagee"): **JPMORGAN CHASE BANK, N.A.**
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note") **JUNE 17, 2010**
Loan Number: **1076358547**
Property Address ("Property"): **1455 HIGHLAND LAKE DR, LAWRENCEVILLE, GEORGIA 30045**
**LEGAL DESCRIPTION:**

———————————————

[1] If more than one Borrower or Mortgagor is executing this document, each is referred to as "I". For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

FHA/HOME AFFORDABLE MODIFICATION AGREEMENT with PRA 09-15-2011 ver. 06_24_2013_11_45_54   WF466
(page 1 of 10 pages)



BK52519 PG0839

Loan Number    1076358547

**THE LAND IS SITUATED IN THE STATE OF GEORGIA, COUNTY OF GWINNETT, CITY OF LAWRENCEVILLE, AND DESCRIBED AS FOLLOWS: ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 106 OF THE 5TH DISTRICT, GWINNETT COUNTY, GEORGIA, BEING LOT 35, BLOCK "A", THE DOWNS SUBDIVISION, PHASE II, ACCORDING TO A PLAT OF SURVEY RECORDED IN PLAT BOOK 77, PAGE 13, GWINNETT COUNTY, GEORGIA RECORDS, WHICH PLAT AND THE RECORD THEREOF ARE INCORPORATED HEREIN BY REFERENCE THERETO. APN: R5106 194**

**REFERENCE NUMBERS OF DOCUMENTS MODIFIED:**
**RECORDED JULY 27, 2010 BOOK 50182 PAGE 431**

**Tax Parcel No: R5106 194**

If my representations in Section 1 continue to be true in all material respects, then this FHA Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that my Mortgage and Note are governed under the applicable laws and regulations of the Federal Housing Administration ("FHA"), and this Modification Agreement is further subject to my compliance with the requirements of FHA under this modification program (the "Program") as announced from time to time.

I understand that after I sign and return two copies of this Agreement to the Lender/Mortgagee, the Lender/Mortgagee will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied and the Lender/Mortgagee has executed a counterpart of this Agreement.

1.    **My Representations**. I certify, represent to Lender/Mortgagee and agree

 A.    I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

 B.    I live in the Property as my principal residence, and the Property has not been condemned;

 C There has been no change in the ownership of the Property since I signed the Loan Documents,

 D I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Program);

 E. Under penalty of perjury, all documents and information I have provided to Lender/Mortgagee in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

 F. If Lender/Mortgagee requires me to obtain credit counseling in connection with the Program, I will do so; and

FHA/HOME AFFORDABLE MODIFICATION AGREEMENT with PRA 09-15-2011 ver. 06_24_2013_11_45_54    WF466
*(page 2 of 10 pages)*



BK52519 PG0840

Loan Number    1076358547

G.    I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan.

2    **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

A    TIME IS OF THE ESSENCE under this Agreement. This means I must make all payments on or before the days that they are due;

B.    If prior to the Modification Effective Date as set forth in Section 3 the Lender/Mortgagee determines that any of my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender/Mortgagee will have all of the rights and remedies provided by the Loan Documents; and

C.    I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender/Mortgagee a copy of this Agreement signed by the Lender/Mortgagee, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender/Mortgagee will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

D    I understand and agree that if I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the Loan Documents, I am voluntarily entering into this modification for the benefits to be obtained thereby and not as a reaffirmation of the debt evidenced by the Note, and I further understand and agree, and the Lender/Mortgagee, by its execution of this Agreement also agrees, that nothing contained herein is intended to impose personal liability for the Loan in violation of such discharge.

3.    **The Modification.** If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on **AUGUST 01, 2013** (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a workout plan or trial period plan, this modification will not take effect. The first modified payment will be due on **AUGUST 01, 2013**.

A    The new Maturity Date will be: **JULY 01, 2043**

B.    The modified principal balance of my Note will include amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender/Mortgagee but not previously credited to my Loan. The new principal balance of my Note will be **$285,964.86** (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

FHA/HOME AFFORDABLE MODIFICATION AGREEMENT with PRA 09-15-2011 ver. 06_24_2013_11_45_54    WF466



BK52519 PG0841

Loan Number    1076358547

C.  Interest at the rate of **3.500%** will begin to accrue on the New Principal Balance as of **JULY 01, 2013** and the first new monthly payment on the New Principal Balance will be due on **AUGUST 01, 2013**  My payment schedule for the modified loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins on | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1 ~ 30 | 3.500% | 07/01/2013 | $1,284 11 | $730 46 May adjust periodically | $2,014.57 May adjust periodically | 08/01/2013 | 360 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3 C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified loan will be the minimum payment that will be due each month for the remaining term of the loan.  My modified loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance

D.  I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement

E   If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C

4    **Additional Agreements**  I agree to the following:

A   That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased, (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held

FHA/HOME AFFORDABLE MODIFICATION AGREEMENT with PRA 09-15-2011 ver. 06_24_2013_11_45_54    WF466
*(page 4 of 10 pages)*



BK52519 PG0842

**Loan Number   1076358547**

*liable for the obligation under the Loan Documents); or (iii) the Lender/Mortgagee has waived this requirement in writing.*

B. That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Lender/Mortgagee.

C. To comply, except to the extent that they are modified by this Agreement, or by the U.S. Bankruptcy Code, with all covenants, agreements, and requirements of FHA in connection with the Program, and the Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. If under applicable law, a servicer may not establish an escrow account for the subject mortgage loan.

E. That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms.

F. That all terms and provisions of the Loan Documents, *except as expressly modified by this Agreement, or by the U S Bankruptcy Code*, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, or by the U S Bankruptcy Code, the Lender/Mortgagee and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows If all or any part of the Property or any interest in it is sold or transferred without Lender's/Mortgagee's prior written consent, Lender/Mortgagee may, at its option, require immediate payment in full of all sums secured by the Mortgage However, Lender/Mortgagee shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender/Mortgagee exercises this option, Lender/Mortgagee shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage If I fail to pay these sums prior to the expiration of this period, Lender/Mortgagee may invoke any remedies permitted by the Mortgage without further notice or demand on me

H. That, as of the Modification Effective Date, I understand that the Lender/Mortgagee will only allow the transfer and assumption of the Loan, including this Agreement, *to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3* A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan.  Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property

I. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment *to the Note* allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void

J. That, I will cooperate fully with Lender/Mortgagee in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's/Mortgagee's procedures to ensure that the modified mortgage loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender/Mortgagee does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not



BK52519 PG0843

Loan Number    1076358547

become effective on the Modification Effective Date and the Agreement will be null and void.

K. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement, or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification program.

L. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender/Mortgagee and Lender's/Mortgagee's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender/Mortgagee including, but not limited to, releasing and canceling the mortgage loan.

M. That Lender/Mortgagee will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the Trial Period Plan and this Modification Agreement by Lender/Mortgagee to (a) the U.S. Department of the Treasury, (b) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (c) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (d) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program, and (e) any HUD certified housing counselor.

N. I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's/Mortgagee's request to execute, acknowledge, initial and deliver to the Lender/Mortgagee any documentation the Lender/Mortgagee deems necessary. If the original promissory note is replaced, the Lender/Mortgagee hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender/Mortgagee requests of me under this Section 4. N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's/Mortgagee's written request for such replacement. This Agreement may be executed in multiple counterparts

O. That, if I am in bankruptcy upon execution of this document, I will cooperate fully with Lender in obtaining any required bankruptcy court and trustee approvals in accordance with local court rules and procedures. I understand that if such approvals are not received, then the terms of this Agreement will be null and void. If this Agreement becomes null and void, the terms of the original Loan Documents shall continue in full force and effect and such terms shall not be modified by this Agreement

FHA/HOME AFFORDABLE MODIFICATION AGREEMENT with PRA 09-15-2011 ver. 06_24_2013_11_45_54    WF466
(page 6 of 10 pages)



BK52519 PG0844

**Loan Number    1076358547**

P.  If I receive a separate notice from Lender/Mortgagee that I am required to attend additional debt management counseling, I agree to promptly attend such counseling and provide evidence of attendance to Lender/Mortgagee upon request.

Q.  I acknowledge and agree that if the Lender/Mortgagee executing this Agreement is not the current holder or owner of the Note and Mortgage, that such party is the authorized servicing agent for such holder or owner, or its successor in interest, and has full power and authority to bind itself and such holder and owner to the terms of this modification.

(SIGNATURES CONTINUE ON FOLLOWING PAGES)

**FHA/HOME AFFORDABLE MODIFICATION AGREEMENT with PRA 09-15-2011 ver. 06_24_2013_11_45_54    WF466**
*(page 7 of 10 pages)*

BK52519 PG0845

Loan Number    1076358547

**TO BE SIGNED BY BORROWER ONLY**

**BORROWER** SIGNATURE PAGE TO HOME AFFORDABLE MODIFICATION AGREEMENT BETWEEN JPMORGAN CHASE BANK, N.A. And TERRENCE E WILLIAMS, LOAN NUMBER 1076358547 WITH A MODIFICATION EFFECTIVE DATE OF August 01, 2013

In Witness Whereof, the Borrower(s) have executed this agreement.

Date: 7 , 19 , 13

Borrower - **TERRENCE E WILLIAMS**

Witness -
(signature & printed name required)    M. Sierra

Witness -    CynTHiA Newmann
(signature & printed name required)

State of **GEORGIA** Newton    )
County of _____    )

This instrument was acknowledged before me this 19th day of July , 2013 by **TERRENCE E WILLIAMS**.

_____ Personally Known

_____ Produced Identification ✓

Type and # of ID Georgia DL 028422796

Signature of Notary    Angelo David Alvear

Name of Notary Typed, Stamped, or Printed    Angelo David Alvear
Notary Public, State of GEORGIA

(Seal)

My Commission Expires:

**Angelo David Alvear**
NOTARY PUBLIC
Newton County, GEORGIA
My Comm. Exp.
April 17, 2017

FHA/HOME AFFORDABLE MODIFICATION AGREEMENT with PRA 09-15-2011 ver. 06_24_2013_11_45_54    WF466
*(page 8 of 10 pages)*



**EXHIBIT D**

This Document Prepared By:
**MONICA VELA**
**CARRINGTON MORTGAGE SERVICES, LLC**
**CARRINGTON DOCUMENT SERVICES**
**ANAHEIM, CA 92806**
**1-866-874-5860**

When Recorded Mail To:
**CARRINGTON MORTGAGE SERVICES, LLC**
**C/O LOSS MITIGATION POST CLOSING DEPARTMENT**
**1600 SOUTH DOUGLASS ROAD, SUITES 110 & 200-A**
**ANAHEIM, CA  92806**

Tax/Parcel #:  **R5106 194**
_____ [Space Above This Line for Recording Data] _____
**Original Principal Amount: $354,040.00**          **FHA/VA/RHS Case No: 1055785831703**
**Unpaid Principal Amount: $283,701.46**           **Loan No: 7000270351**
**New Principal Amount: $460,335.05**
**New Money (Cap): $176,633.59**

## LOAN MODIFICATION AGREEMENT

THIS IS A MODIFICATION OF AN EXISTING INDEBTEDNESS WITH THE SAME LENDER IN THE
ORIGINAL PRINCIPAL BALANCE OF $354,040.00, RECORDED IN BOOK 50182, PAGE 0431,
GWINNETT COUNTY GA ON WHICH THE GA INTANGIBLE RECORDING TAX WAS PAID. THE
UNPAID PRINCIPAL BALANCE OF THE ORIGINAL NOTE IS $283,701.46. NEW MONEY IS THE
AMOUNT $176,633.59, IS BEING ADVANCED ON WHICH THE INTANGIBLE TAX IS BEING PAID

This Loan Modification Agreement ("Agreement"), made this **27TH** day of **JUNE, 2022**, between
**TERRENCE E. WILLIAMS** ("Borrower"), whose address is **1455 HIGHLAND LAKE DR,
LAWRENCEVILLE, GEORGIA 30045** and **CARRINGTON MORTGAGE SERVICES, LLC
SERVICER AND AUTHORIZED AGENT OF JP MORGAN CHASE BANK, NATIONAL
ASSOCIATION** ("Lender"), whose address is **1600 SOUTH DOUGLASS ROAD, SUITES 110 & 200-A,**

**ANAHEIM, CA 92806** amends and supplements (1) the Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated **JUNE 17, 2010** and recorded on **JULY 27, 2010** in **INSTRUMENT NO. 0058661 BOOK 50182 PAGE 0431, GWINNETT COUNTY, GEORGIA**, and (2) the Note, in the original principal amount of U.S. **$354,040.00, bearing the same date as**, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property," located at

**1455 HIGHLAND LAKE DR, LAWRENCEVILLE, GEORGIA 30045**

the real property described is located in **GWINNETT County, GEORGIA** and being set forth as follows:

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of, **JULY 1, 2022** the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$460,335.05**, consisting of the amount(s) loaned to Borrower by Lender, plus capitalized interest in the amount of U.S. **$176,633.59** and other amounts capitalized, which is limited to escrows and any legal fees and related foreclosure costs that may have been accrued for work completed.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of **5.7500%**, from **JULY 1, 2022**. The yearly rate of **5.7500%** will remain in effect until principal and interest are paid in full.

   Borrower promises to make the total modified monthly mortgage payment of U.S. **$3,479.55**, beginning on the **1ST** day of **AUGUST, 2022**, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. Borrower's payment consists of payments for principal and interest of U.S. **$2,686.40**, plus payments for property taxes, hazard insurance, and any other permissible escrow items of US **$793.15**. Borrower understands that the modified monthly mortgage payment is subject to change if there is an increase or decrease in property taxes, insurance, or any other permissible escrow items. The escrow payments may be adjusted periodically in accordance with applicable law and therefore the total monthly payment may change accordingly. If on **JULY 1, 2052** (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in the Borrower is sold or transferred and the Borrower is not a natural person) without the Lender's prior written consent, the Lender may require immediate payment in full of all sums secured by this Security Instrument.

   If the Lender exercises this option, the Lender shall give the Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If the Borrower fails to pay these sums prior to the expiration of this period, the Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on the Borrower.

4. The Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that the Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever

7000270351

cancelled, null and void, as of the date specified in Paragraph No. 1 above:

   (a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

   (b) all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5. **If the Borrower is currently subject to the protections of any automatic stay in bankruptcy, or have obtained a discharge in bankruptcy proceeding without reaffirming the mortgage loan debt, nothing in this Agreement or any other document executed in connection with this Agreement shall be construed as an attempt by Lender to impose personal liability under the Note and Deed of Trust/Mortgage. In such case, this Agreement is entered into in the ordinary course of business between the Lender and the Borrower in lieu of pursuit of in rem relief to enforce the lien. This Agreement does not revive the Borrower's personal liability under the Note and Deed of Trust/Mortgage, nor is it an attempt to collect, recover or offset any such debt as a personal liability of Borrower under the Note and Deed of Trust/Mortgage.**

6. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.

7. Borrower agrees to make and execute other documents or papers as may be necessary to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

8. Borrower agrees that any costs, fees and/or expenses incurred in connection with servicing the loan that may be legally charged to the account, but have not been charged to the account as of the Modification Effective Date, may be charged to the account at a later date and shall be the Borrower's responsibility to pay in full. For example, if the loan is in foreclosure there may be foreclosure fees and costs that have been incurred but not yet assessed to the account as of the date the Modification Effective Date; Borrower will remain liable for any such costs, fees and/or expenses.

9. **This Agreement modifies an obligation secured by an existing security instrument recorded in GWINNETT County, GEORGIA, upon which all recordation taxes have been paid. As of the date of this Agreement, the unpaid principal balance of the original obligation secured by the existing security instrument is $283,701.46. The principal balance secured by the existing security instrument as a result of this Agreement is $460,335.05, which amount represents the excess of the unpaid principal balance of this original obligation.**

In Witness Whereof, I have executed this Agreement.

_____     _____

**Borrower: TERRENCE E WILLIAMS**                     **Date**

_____[Space Below This Line for Acknowledgments]_____

State of **GEORGIA**
County of _____ ss.

Signed, sealed and delivered on this _____ day of _____,
_____ in the presence of:


_____         _____

Unofficial Witness                            Notary Public, state of Georgia


                                              _____

                                              Printed Name

Document Prepared By                          _____
**MONICA VELA**
**CARRINGTON MORTGAGE SERVICES,**             My Commission Expires
**LLC**
**CARRINGTON DOCUMENT SERVICES**
**1600 SOUTH DOUGLASS ROAD, SUITES**
**110 & 200-A**
**ANAHEIM, CA 92806**

‖‖‖‖‖‖‖‖‖‖‖‖‖7000270351

In Witness Whereof, the Lender has executed this Agreement.

**CARRINGTON MORTGAGE SERVICES, LLC SERVICER AND AUTHORIZED AGENT OF JP MORGAN CHASE BANK, NATIONAL ASSOCIATION**

By _____      (print name)                    Date _____
                                   (title)

_____                    _____
        Witness                                      Witness

_____                    _____
  Witness – Printed Name                        Witness – Printed Name

_____  [Space Below This Line for Acknowledgments] _____

## LENDER ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of _____ )
County of _____ )

On _____ before me _____ Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature_____                                     (Seal)
          Signature of Notary Public

Carrington Custom Loan Modification Agreement 02232022_307                    ‖‖‖‖‖‖‖‖‖‖‖‖‖7000270351

## EXHIBIT A

**BORROWER(S):  TERRENCE E. WILLIAMS**

**LOAN NUMBER:  7000270351**

**LEGAL DESCRIPTION:**

**The land referred to in this document is situated in the CITY OF LAWRENCEVILLE, COUNTY OF GWINNETT, STATE OF GEORGIA, and described as follows:**

**ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 106 OF THE 5TH DISTRICT, GWINNETT COUNTY, GEORGIA, BEING LOT 33, BLOCK "A", THE DOWNS SUBDIVISION, PHASE II, ACCORDING TO A PLAT OF SURVEY RECORDED IN PLAT BOOK 77, PAGE 13, GWINNETT COUNTY, GEORGIA RECORDS, WHICH PLAT AND THE RECORD THEREOF ARE INCORPORATED HEREIN BY REFERENCE THERETO.**

**ALSO KNOWN AS: 1455 HIGHLAND LAKE DR, LAWRENCEVILLE, GEORGIA 30045**

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖7000270351

Date: **JUNE 27, 2022**
Loan Number: **7000270351**
Lender: **CARRINGTON MORTGAGE SERVICES, LLC SERVICER AND AUTHORIZED AGENT OF JP MORGAN CHASE BANK, NATIONAL ASSOCIATION**

Borrower: **TERRENCE E WILLIAMS**

Property Address: **1455 HIGHLAND LAKE DR, LAWRENCEVILLE, GEORGIA  30045**

## NOTICE OF NO ORAL AGREEMENTS

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO ORAL AGREEMENTS BETWEEN THE PARTIES.**

**Receipt of Notice.** The undersigned hereby admit to having each received and read a copy of this Notice on or before execution of the Loan Agreement. "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods or any other thing of value or to otherwise extend credit or make a financial accommodation.

_____         _____
Borrower: **TERRENCE E WILLIAMS**                                                    **Date**

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖ 7000270351

Date: **JUNE 27, 2022**
Loan Number: **7000270351**
Lender: **CARRINGTON MORTGAGE SERVICES, LLC SERVICER AND AUTHORIZED AGENT OF JP MORGAN CHASE BANK, NATIONAL ASSOCIATION**

Borrower: **TERRENCE E WILLIAMS**

Property Address: **1455 HIGHLAND LAKE DR, LAWRENCEVILLE, GEORGIA  30045**

## ERRORS AND OMISSIONS COMPLIANCE AGREEMENT

In consideration of **CARRINGTON MORTGAGE SERVICES, LLC SERVICER AND AUTHORIZED AGENT OF JP MORGAN CHASE BANK, NATIONAL ASSOCIATION**

(the "Lender") agreeing to modify the referenced loan (the "Loan") to the Borrower, the Borrower agrees that if requested by the Lender, the Borrower will correct, or cooperate in the correction of, any clerical errors made in any document or agreement entered into in connection with the modification of the Loan, if deemed necessary or desirable in the reasonable discretion of the Lender, to enable Lender to sell, convey, seek guaranty or market the Loan to any entity, including without limitation, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, the Federal Housing Authority, the Department of Veterans Affairs or any municipal bond authority.

The Borrower agrees to comply with all such requests made by the Lender within 30 days of receipt of written request from the Lender. Borrower agrees to assume all costs that may be incurred by the Lender, including without limitation, actual expenses, legal fees and marketing losses, as a result of the Borrower's failure to comply with all such requests within such 30 day time period .

The Borrower makes this agreement in order to assure that the documents and agreements executed in connection with the modification of the Loan will conform to and be acceptable in the marketplace in the event the Loan is transferred, conveyed, guaranteed or marketed by the Lender.

Borrower: **TERRENCE E WILLIAMS**                                        Date

Carrington Custom Loan Modification Agreement 02232022_307

Page 8

7000270351

**EXHIBIT E**

**CARRINGTON**
MORTGAGE SERVICES, LLC
NMLS ID #2600

P.O. Box 3010 | Anaheim, CA  92803

**Loan Number:** 7000270351
**Notice Date:** 09/09/2022

**Home Liquidation Assistance Notice**

TERRENCE E WILLIAMS
1455 HIGHLAND LAKE DR
LAWRENCEVILLE      GA 30045

**Property Address:**
1455 HIGHLAND LAKE DR
LAWRENCEVILLE      GA 30045

# Home Liquidation Assistance

Dear TERRENCE E WILLIAMS:

Carrington Mortgage Services, LLC ("CMS") recently cancelled the home retention workout you were offered because you either failed to meet the program requirements or voluntarily opted out.  You are receiving this notification because you may be eligible to participate in other foreclosure prevention options such as a short sale or deed-in-lieu of foreclosure (herein referred to as "Home Liquidation").

If you are interested in pursuing a Home Liquidation option, please contact us by no later than **09/22/2022.** Please note there will be additional documentation that you will be required to provide us in order to be considered.

**IMPORTANT:** Our goal is to provide you with the assistance you need; however the investor and/or owner of your loan may have certain credit requirements that can impact your eligibility for Home Liquidation.

Please contact us during normal business hours.  To speed the process, it is important that you have your account number when you call.

**Short Sale Department**
**(Phone):** 1.800.561.4567
**(Hours):** Monday through Friday from 8:00AM to 8:00PM (Eastern Standard Time).

**Sincerely,**

Carrington Mortgage Services, LLC

**EXHIBIT F**

## 1 Record Matched Your Search

---

MIN:  1003924-9725000605-5  Note Date:  06/17/2010        MIN Status:  Inactive

Servicer:   JPMorgan Chase Bank, N.A.                    Phone:  (800) 848-9136

Monroe, LA

If you are a borrower on this loan, you can click here to enter additional information and display the Investor name.

Return to Search

For more information about Mortgage Electronic Registration Systems, Inc. (MERS) please go to www.mersinc.org

© 2022 MERSCORP Holdings, Inc. All rights reserved.

E-FILED IN OFFICE - NV
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
22-A-09727-6
12/19/2022 3:39 PM
TIANA P. GARNER, CLERK

**AFFIDAVIT OF SERVICE**

| Case: | Court: | County: | Job: |
|---|---|---|---|
| 22A09727-6 | SUPERIOR COURT OF GWINNETT COUNTY GA | GWINNETT, GA | 3974091 |

| Plaintiff/ Petitioner: | Defendant / Respondent: |
|---|---|
| Terrence Williams | Carrington Mortgage Services, LLC; JP Morgan Chase Bank, N.A. |

| Received by: | For: Terrence Williams |
|---|---|
| Barnards Civil Process Service | PERSONAL |

| To be served upon: |
|---|
| Carrington; |

I, Steve Barnard, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

Recipient Name/ Address: Carrington Mortgage Services, LLC c/o 289 S. Culver Street: Lawrenceville, GA 30046

| Manner of Service: | Personal/Individual, Nov 11, 2022, 2:10 pm EST |
|---|---|
| Documents: | Summons and Complaint: (Received Nov 9, 2022 at 11 :40am EST) |

**Additional Comments:**

1)Successful Attempt: Nov 11, 2022 2:10 pm EST at Company: 289 S. Culver Street: Lawrenceville, GA 30046 Ethnicity: Caucasian; Gender: Male; Served

**11/12/2022**

Steve Barnard                          Date

Barnards Civil Process Service
3430 Fulford Rd
Wayross, Ga 31503
912-286-0903

*Subscribed and sworn to before me by the affiant who is personally known to me.*

Notary Public

11/12/2022

Date                          Commission Expires

AMY D. BENNETT
NOTARY
PUBLIC
EXP. Apr. 10, 2024
WARE COUNTY, GA

E-FILED IN OFFICE - NV
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
22-A-09727-6
12/19/2022 3:39 PM
TIANA P. GARNER, CLERK

**AFFIDAVIT OF SERVICE**

| Case: 22A09727-6 | Court: SUPERIOR COURT OF GWINNETT COUNTY | County: GWINNETT | Job: 3974057 |
|---|---|---|---|

**Plaintiff / Petitioner:**
TERRENCE WILLIAMS

**Defendant / Respondent:**
CARRINGTON MORTGAGE SERVICES, LLC; J.P. MORGAN CHASE BANK, N.A.

**For: TERRENCE WILLIAMS**
PERSONAL

**Received by:**
Barnards Civil Process Service

To be served upon: J.P. MORGAN CHASE BANK, N.A.

I, Steve Barnard, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

Recipient Name / Address:   J.P. MORGAN CHASE BANK, N.A. C/O CT CORP 289 S. CULVER STREET LAWRENCEVILLE, GA 30046

**Manner of Service:**   Personal/Individual, Nov 11, 2022. 2:10 pm EST

**Documents:**   SUMMONS AND COMPLAINT

**Additional Comments:**
1) Successful Attempt: Nov 11, 2022, 2:10 pm EST at 289 S. Culver Street Lawrenceville, GA 30046 Ethnicity: Caucasian; Gender: Male; served.

_____         **11/12/2022**
Steve Barnard                          Date

Barnards Civil Process Service
3430 Fulford Rd
Wayross, Ga 31503
912-286-0903

*Subscribed and sworn to before me by the affiant who is personally known to me.*

_____
Notary Public

_11/12/2022_
Date                    Commission Expires

E-FILED IN OFFICE - NV
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
**22-A-09727-6**
**12/19/2022 4:03 PM**
TIANA P. GARNER, CLERK

IN THE SUPERIOR COURT OF GWINNETT COUNTY

STATE OF GEORGIA

| | |
|---|---|
| TERRENCE WILLIAMS,<br>Plaintiff<br><br>v<br><br>CARRINGTON HOME MORTGAGE, LLC;<br>JP MORGAN CHASE BANK, N.A.<br>Defendants | CIVIL ACTION<br><br>FILE NO: 22A09727-6 |

---

## APPLICATION FOR ENTRY OF
## DEFAULT AND SUPPORTING AFFIDAVIT

---

COMES NOW, Plaintiff, TERRENCE WILLIAMS, proceeding *in propria persona*, and hereby requests the Clerk, pursuant to Rule 15, Georgia Rules of Civil Procedure, to enter default against the Defendants, Carrington Home Mortgage, LLC and JP Morgan Chase Bank, N.A., in the above-entitled action for failure to plead, answer or otherwise defend as set forth in the Declaration attached hereto.

Respectfully submitted,

/s/ Terrence Williams

_____

TERRENCE WILLIAMS
1455 Highland Drive
Lawrenceville, GA 30045
(770) 374-5956

## DECLARATION IN SUPPORT OF ENTRY OF DEFAULT

I, Terrence Williams, Plaintiff herein have personal knowledge of the facts set forth in this Declaration.

1. A copy of the summons, together with a copy of the Complaint, was served upon the Defendants by process server as indicated in the affidavits of service filed herewith and on record with the Clerks office.

2. Service was deemed completed on November 11, 2022. As stated in Ga.R.S.Ct. 15, Plaintiff now requests this Court enter default judgment as a result of non-response from Defendants.

3. More than thirty days have elapsed since the date which the Defendants were served with Summons and a copy of the Complaint, inclusive of all exhibits.

4. Defendants have therefore failed to answer or otherwise defend as to Plaintiff's Complaint or serve a copy of any answer or other defense.

I, declare under the penalty of perjury that the facts contained herein and true and correct to the best of my knowledge.

Dated: December 15, 2022

/s/ Terrence Williams
1455 Highland Drive
Lawrenceville, GA 30045
(770) 374-5956

- 2 -

E-FILED IN OFFICE - NV
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA

**22-A-09727-6**

**12/19/2022 4:03 PM**

TIANA P. GARNER, CLERK

IN THE SUPERIOR COURT OF GWINNETT COUNTY

STATE OF GEORGIA

| | |
|---|---|
| TERRENCE WILLIAMS, <br> Plaintiff <br><br> v <br><br> CARRINGTON HOME MORTGAGE, LLC; <br> JP MORGAN CHASE BANK, N.A. <br> Defendants | CIVIL ACTION <br><br> FILE NO: 22A09727-6 |

---

## MOTION FOR DEFAULT JUDGMENT

---

COMES NOW, Plaintiff, TERRENCE WILLIAMS, proceeding ***in propria persona***, and hereby files this Motion with the Clerk, pursuant to Rule 15,  Georgia Rules of Civil Procedure, to enter default against the  Defendants, Carrington Home Mortgage, LLC and JP Morgan Chase Bank, N.A., in the above entitled action for failure to plead,  answer or otherwise defend.

1.  A Summons, together with a copy of the Complaint was served upon Defendants, Carrington Home Mortgage, LLC and JP Morgan Chase Bank, N.A. on November 11, 2022.  Defendant has completely failed or refused to file a responsive pleadings, answer or ortherwise defend.

2.  That on the 16th day of December 2022, the clerk of this Court after the Application for Default and supporting Declarations, docketed entry of default against the named Defendants.

3.  That the claims in the Complaint are unopposed and thus judgment should be entered without the necessity of a further hearing.

WHEREFORE, PREMISES CONSIDERED, Plaintiff moves the Court to enter a default judgment against the Defendant in the amount prayed for in the Complaint, plus interest, and for such other relief as the Court may deem necessary and appropriate.

Respectfully submitted,

/s/ Terrence Williams

TERRENCE WILLIAMS
1455 Highland Drive
Lawrenceville, GA 30045
(770) 374-5956

E-FILED IN OFFICE - NV
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
22-A-09727-6
12/29/2022 4:01 AM
TIANA P. GARNER, CLERK

IN THE SUPERIOR COURT OF GWINNETT COUNTY

STATE OF GEORGIA

|  |  |
|---|---|
| TERRENCE WILLIAMS,<br>Plaintiff<br><br>v<br><br>CARRINGTON HOME MORTGAGE, LLC;<br>JP MORGAN CHASE BANK, N.A.<br>Defendants | CIVIL ACTION<br><br>FILE NO: 22A09727-6<br><br>JURY TRIAL DEMANDED |

---

## MOTION FOR TEMPORARY RESTRAINING ORDER

---

NOW COMES PLAINTIFF TERRENCE WILLIAMS and moves pursuant to O.C.G.A. § 9-11- 65(b) for an order temporarily restraining and enjoining Defendants CARRINGTON HOME MORTGAGE, LLC and JP MORGAN CHASE BANK, N.A. from proceeding in the foreclosure sale that is presently noticed and scheduled for January 3, 2023, for the property known as:

**1455 Highland Drive
Lawrenceville, GA 30045**

As grounds for this Motion, plaintiff shows that unless defendant is temporarily restrained, immediate and irreparable injury and damage will result to him before notice can be given to defendant and a hearing held, all as more fully shown by plaintiff's Complaint filed in this action. Notice has been given to defendant of this Motion and of plaintiff's intent to apply to the Court for a temporary restraining order. The certificate of Plaintiff certifying his efforts giving notice is presented with this Motion as required by O.C.G.A. § 9-11-65(b)(2).

WHEREFORE, Plaintiff prays this his Motion be granted and that defendant be temporarily restrained and enjoined from proceeding in the foreclosure sale that is presently noticed and scheduled for January 3, 2023, against 1455 Highland Drive Lawrenceville, GA 30045, and that Plaintiff have such other and further relief as is just and proper.

Respectfully submitted,

/s/ Terrence Williams

_____
TERRENCE WILLIAMS
1455 Highland Drive
Lawrenceville, GA 30045
(770) 374-5956

## <u>CERTIFICATION</u>

I, Terrence Williams, Plaintiff herein, certify the following efforts with regards to notice were given as required by O.C.G.A. § 9-11-65(b)(2) as follows:

1. On or about December 29, 2022 at 9:16 am, I contacted Carrington Home Mortgage at (866) 874-5017, which is the legal department and advised them of my intent to seek a temporary restraining order against the scheduled foreclosure sale of my home, currently scheduled for January 3, 2023. I spoke with a gentleman who identified himself as Darrel. Darrel requested that I confirm some personal information before noting the account with regard to my TRO. I provided Darrel with the account number of 7000270351 and the last four digits of my social of 4536. Thereafter, Darrel asked me to confirm the property address, asked if it was my primary residence and asked what my intentions with the property were. Once all those questions were answered, Darrel took down the notice regarding the TRO in the customer notes section of my account. Darrel then asked for my call back number in case someone needed to reach me, and I provided it.

2. On or about December 29, 2022, at 9:47 am, I contacted JP Morgan Chase Bank, N.A. at (800) 935-9935, which is the customer service number for all issues. I was prompted to enter an account number, loan number or social. I entered my social security number and the system stated it could not find my account and transferred me to a representative. A representative by the name of Sonny Nguyen answered the call and again tried to locate an account. Mr. Nguyen was unable to find the account and stated he could not take notice for the TRO as there was no way for him to associate it with the file. Mr. Nguyen provided me a fax number and asked me to send the notice to the legal department for

further handling.  The fax number provided was (847) 787-5125.  I sent a copy of the

Motion along with a cover letter outlining my request for a TRO.  The fax was

successfully sent.

I declare under the penalty of perjury that the information contained in this certification is true

and correct to the best of my knowledge.


Respectfully submitted,

 /s/ Terrence Williams
_____
TERRENCE WILLIAMS
1455 Highland Drive
Lawrenceville, GA 30045
(770) 374-5956