Matthew H. Schwartz, Esq., GA Bar #307111
SCHWARTZ LAW CENTER, LLC
2985 Gordy Parkway, Suite 550
Marietta, Georgia 30066
Telephone: 678-401-2600
Email: matt@schwartzlawcenter.com

**Attorneys for Plaintiff,**
Angela Newsom, an individual;

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| ANGELA NEWSOM, an individual, ) | |
| ) | **Case No**.: |
| Plaintiff, ) | |
| vs. ) | |
| ) | |
| ) | **COMPLAINT FOR DAMAGES;** |
| 4H Construction Services, LLC, a ) | **JURY TRIAL DEMANDED** |
| Georgia limited liability company, Keith ) | |
| Porter Home Insulating, Inc., a Georgia ) | |
| corporation; SWD Urethane, an Arizona ) | |
| corporation, and DOES 1 through 25, ) | |
| inclusive, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |
| ) | |
| ) | |

Plaintiff Angela Newsom hereby complains and alleges as follows:

## I.

## THE PARTIES

1. Plaintiff Angela Newsom ("Plaintiff") is an adult who owns and resided in the real property located at 219 Lovelace Way, Washington, Georgia 30673

(hereinafter, "PROPERTY") until approximately March 3, 2021.  Plaintiff presently resides and is domiciled in Destin, Florida.

2. Defendant 4H Construction, LLC ("4H") is a general contractor who Plaintiff hired for a renovation of the PROPERTY in 2020.  Defendant 4H Construction, LLC was formed in the state of Georgia and maintains its principal place of business in Newton County, Georgia.

3. Defendant 4H hired Defendant Keith Porter Home Insulating, Inc. ("KPHI") as a subcontractor on the renovation project.  Specifically, Defendant KPHI was hired to install and apply insulation at the PROPERTY using polyurethane spray foam material.  Defendant KPHI was formed in the state of Georgia and maintains its principal place of business in Jackson County, Georgia.

4. Defendant SWD Urethane ("SWD") is a manufacturer, supplier, seller, and/or distributor of the polyurethane spray foam at issue in this lawsuit.  Upon information and belief, Defendant KPHI purchased the defective product at issue from Defendant SWD.  Defendant SWD was formed in the state of Arizona and has its principal place of business in Arizona.  Upon information and belief, Defendant SWD manufactures, formulates, markets, sells, and distributes the spray polyurethan foam across the United States.

5. The true names, identities, or capacities, whether individual, associate, corporate or otherwise, of Defendants DOES 1 through 25 are unknown to Plaintiff at this time, who therefore sues said Defendants by such fictitious names.  When the true names, identities or capacities of such fictitiously designated Defendants are ascertained, Plaintiff will ask leave of Court to amend the Complaint to assert the true names, identities and capacities, together with the proper charging allegations.

6. Each of the Defendants designated herein as a DOE is responsible in some manner for the events and happenings herein referred to, thereby legally causing the injuries and damages to Plaintiff as hereinafter alleged.

7. At all times herein mentioned, Defendants were the agents, servants, employees and joint venturers of each other and of their co-defendants and were acting within the course and scope of their employment, agency or joint venture.

8. Wherever appearing in this Complaint, each and every reference to "Defendants", or any of them, is intended to include, and shall be deemed to include, all fictitiously named defendants.

## II.

## JURISDICTION AND VENUE

9. This is a civil action over which this Court has original jurisdiction under 28 U.S.C. Section 1332. Complete diversity of citizenship exists because Plaintiff Angela Newsom is a citizen of the state of Florida and all of the Defendants are citizens of either Georgia or Arizona.

10. The matter in controversy exceeds the sum or value of $75,000.00.

11. This Court also has original jurisdiction over this action because it involves questions of federal law. Specifically, Plaintiff claims that one or more Defendants violated various statutory duties of care imposed upon them by federal laws including but not limited to, 15 U.S.C. §§ 2607 and 2614, 33 U.S.C. §§ 1311(a) and 1342, and 42 U.S.C. §§ 6921-6939e.

12. Venue is proper in this district because one of the Georgia-based defendants (i.e., 4H) is situated in Newton County, and the other Georgia-based defendant (i.e., KPHI) is situated in Jackson, County. Both Newton and Jackson counties are within the venue of the United States District Court for the Northern District of Georgia. The Atlanta Division is a proper division for this matter pursuant to Local Rule 3.1(B)(1)(a) because Defendant 4H is situated in Newton County.

///

///

///

///

## III.

## **FACTS COMMON TO ALL CAUSES OF ACTION**

13. In 2020, Plaintiff hired Defendant 4H for the renovation of the PROPERTY. For part of the renovation, Defendant 4H hired KPHI as a subcontractor to install insulation within specific areas of the PROPERTY.

14. Both Defendants 4H and KPHI represented and warranted to Plaintiff that the insulation would be applied in a safe and reasonable manner with the utmost quality and workmanship.

15. Defendants 4H and KPHI represented to Plaintiff that specific types of spray polyurethane foam ("SPF") insulation, either open-cell or closed-cell, would be applied to specific regions of the home as necessary.

16. On November 6, 2020, Plaintiff, KPHI and 4H did a walk-through of the PROPERTY to confirm how and where KPHI would apply spray foam insulation in the PROPERTY. Specifically, David Huff of 4H and Peter Adams of KPHI advised Plaintiff that KPHI would apply closed-cell spray foam on the below grade exterior walls of the basement and open-cell spray foam in basement's ceiling.

17. On or about November 25, 2020, KPHI commenced and completed its spray foam application work in the Property. For safety reasons, Plaintiff had vacated the PROPERTY while KPHI applied the spray foam insulation in the PROPERTY. Contrary to what Defendants had explicitly advised Plaintiff, KPHI applied an open-cell SPF in the below grade, mortared concrete block exterior walls of the basement of the PROPERTY, and open-cell SPF in the ceiling of the basement. Furthermore, Defendant KPHI knowingly misapplied the wrong spray foam product to the basement's below grade exterior walls. Furthermore, KPHI not only knowingly applied a bad batch of the open-cell SPF product to the PROPERTY, it did so unevenly throughout the project.

18. After the application of the spray foam, Defendants 4H and KPHI advised Plaintiff that she could safely re-enter the home within 24 hours. None of the Defendants warned Plaintiff that open-cell SPF was applied to the basement exterior walls, nor about

the dire health consequence that could result from prolonged exposure to this particular type of spray foam if it was applied improperly and/or to below grade exterior walls.

19. Plaintiff re-entered the PROPERTY on December 5, 2020. Shortly after Plaintiff re-entered the PROPERTY, Plaintiff observed a strong moldy and musty odor within the PROPERTY. Within one day of re-entering the PROPERTY, Plaintiff's body temperature dropped and she suffered from being extremely cold. A few days later, Plaintiff began suffering from a variety of other symptoms, including but not limited to, headaches, eye pressure, excessive mucous production, gastrointestinal pain, itchiness, rashes, hoarse voice, chest tightness and breathing difficulties. At the time, Plaintiff believed that she had developed a bad sinus infection.

20. Shortly after re-entering the PROPERTY on December 5, 2020, Plaintiff noticed that there was an unusually strong draft occurring in the basement and also exuding from the upstairs electrical outlets. At this time, she also noticed an unusual amount of condensation accumulating on the stove, windows and metal piping in the basement. She therefore contacted 4H and complained about a "wind tunnel effect" as well as the persisting condensation.

21. On or about February 27, 2021, and upon Plaintiff's multiple requests, David Huff visited the PROPERTY to determine what might be causing the draft and condensation issues. Mr. Huff agreed that there was a "wind tunnel effect" and concluded that it was the result of a bad mix of the SPF product. Mr. Huff also determined that the SPF was misapplied, and that this misapplication caused the SPF to separate from the studs in the walls. 4H then arranged for KPHI to return to the property on March 2, 2021 to remediate the SPF issues he identified during his February 27, 2021 inspection.

22. On March 2, 2021, 4H (by and through David Huff) and KPHI (by and through its sales representative Peter Adams) inspected the PROPERTY for the purpose of addressing the SPF issues previously identified by Mr. Huff. During this inspection, KPHI revealed to 4H and Plaintiff that open-cell SPF had been installed in the basement instead of closed-cell SPF. It was at this moment that David Huff advised Plaintiff to

vacate the PROPERTY as soon as possible because he discerned a possible connection between Plaintiff's deteriorating health and the misapplication of the SPF within the PROPERTY. Plaintiff could not have known prior to this date that the spray foam product was causing her to become ill.  Within a day or two of March 2, 2021, Plaintiff vacated the PROPERTY and never moved back into it.

23.     The misapplication and bad mix of the SPF product caused the chemicals in the SPF to begin "off-gassing" throughout the PROPERTY. Plaintiff unknowingly lived in these extremely hazardous conditions for approximately two months.

24.     It was determined from follow-up testing in Plaintiff's PROPERTY that the SPF had begun to off-gas dangerous chemicals, carcinogens, and certain volatile organic compounds into the air inside the PROPERTY, Among those detected was a substance called trichlorofluoromethane (a.k.a.  CFC-11) which is a chemical banned by the Montreal Protocol, an international treaty signed by all member states of the United Nations.

25.     The CFC-11, along with other volatile organic compounds, were present at dangerous levels for anyone coming into contact with the chemicals.  Plaintiff had been inhaling these harmful substances for the entire time that she had re-entered the PROPERTY after the installation of the SPF.  The chemicals that Plaintiff inhaled remain persistent in the body.  A short-term exposure can result in a bodily burden that persists for years and can increase with additional exposures.

26.     In addition to the presence of harmful chemicals, the testing of the PROPERTY revealed that that the SPF itself was defective and improperly manufactured. Specifically, certain chemicals were detected in the SPF product indicating that it was a bad batch, including but not limited to, Trans 1,2-Dichloroethene and 1,1,1-Trichloroethane.

27.     Further renovation work at the PROPERTY was stopped because of these harmful conditions and Plaintiff's deteriorating health.  The PROPERTY is now a biohazard because of the reckless work performed by KPHI. Plaintiff is informed and

believes that the PROPERTY must consequently be demolished, *in toto*, and that the remaining toxic waste must be disposed of according to strict regulations and protocols mandated by the Environmental Protection Agency.

28. Plaintiff continues to suffer from severe health consequences because of the exposure to the off-gassed chemicals, including but not limited to, overwhelming fatigue, coughing, burning in her chest, difficulty breathing, gastrointestinal issues, vision problems, and serial sinus infections. Furthermore, Plaintiff is informed and believes and fears that there is a high probability that she will develop cancer within the next two to five years as a result of her prolonged exposure to the hazardous off-gassing that occurred within the PROPERTY.

## IV.
## FIRST CAUSE OF ACTION
### NEGLIGENT CONSTRUCTION
### (Against Defendants 4H and KPHI)

29. Plaintiff reasserts, re-alleges, and incorporates by reference, as if fully stated herein, each and every allegation contained above in this complaint.

30. Defendants 4H and KPHI had a duty of care to Plaintiff stemming from Defendants' agreement to renovate Plaintiff's PROPERTY and to install spray polyurethane foam insulation at specific locations in the PROPERTY. As such, Defendants 4H and KPHI had the responsibility and mandatory duty to perform their work reasonably and with the workmanship necessary to protect Plaintiff's interests.

31. Defendants 4H and KPHI failed monumentally in that regard. Defendants 4H and KPHI breached their duty of care to Plaintiff by applying a dangerous SPF to Plaintiff's property, causing the SFP to off-gas and release carcinogens and other harmful chemicals inside the PROPERTY. Specifically, applied open-cell spray foam in areas where it should have applied closed-cell spray foam instead. The application of open-cell spray foam below grade on exterior walls falls below the standard of care for contractors who install SPF. Additionally, KPHI should have detected that it was

applying a bad batch of spray foam product to the PROPERTY, and KPHI should have immediately stopped applying this batch as soon as it should have realized that it was a bad batch.  Furthermore, KPHI misapplied the spray foam product by applying it unevenly throughout the project.

32. Defendants also breached their duty of care to Plaintiff by misapplying the SFP to specific portions of Plaintiff's PROPERTY.  More particularly, Defendants 4H and KPHI applied open-cell SPF in areas of the PROPERTY where closed-cell SPF was instructed and/or safer.  The misapplication of the open-cell SPF alone caused substantial damage to Plaintiff and the PROPERTY and has rendered the PROPERTY uninhabitable.

33. As a direct result of Defendants 4H's and KPHI's negligence, the PROPERTY is uninhabitable and beyond remediation.  Defendants' negligence will necessitate a complete demolition of the PROPERTY.  Plaintiff will also have to incur significant costs to dispose of the hazardous waste created by Defendants.  The costs of demolishing the home and environmentally remediating the PROPERTY will be proven at trial, but will in any event exceed the minimum amount for jurisdiction to lie in this Court.

34. As a direct and legal result of the acts and omissions of Defendants 4H and KPHI, Plaintiff also suffered physical and emotional injuries and other harm, including economic and non-economic damages in amounts to be determined by the enlightened conscience of the jury at the time of trial, but which exceed the minimum amount for jurisdiction to lie in this Court.

**V.**

**SECOND CAUSE OF ACTION**

**BREACH OF CONTRACT**

**(Against Defendants 4H and KPHI)**

35. Plaintiff reasserts, re-alleges, and incorporates by reference, as if fully stated herein, each and every allegation contained above in this complaint.

36. Plaintiff and Defendant 4H entered into an oral agreement for the renovation of the PROPERTY. Plaintiff is informed and believes and thereupon alleges that Defendants 4H and KPHI entered into a separate agreement whereby Defendant KPHI agreed to perform work on the PROPERTY on behalf of Defendant 4H. Plaintiff is therefore a third-party beneficiary of the agreement between Defendants 4H and KPHI.

37. As contractors responsible for the renovation of the PROPERTY, Defendants 4H and KPHI promised Plaintiff and had a legal duty to perform their work in a fit and workmanlike manner. Specifically, Defendants 4H and KPHI owed a duty to Plaintiff to exercise a reasonable degree of care, skill, and ability under similar conditions and like surrounding circumstances as is ordinarily employed by others in the same profession.

38. Defendants 4H and KPHI breached that contractual duty by applying a dangerous SPF to Plaintiff's property, causing the SFP to off-gas and release carcinogens and other harmful chemicals inside the PROPERTY.

39. Defendants also breached their contractual duty to Plaintiff by misapplying the SFP throughout the PROPERTY. More particularly, Defendants 4H and KPHI applied open-cell SPF in areas of the PROPERTY where closed-cell SPF was recommended, more appropriate, and/or safer. The misapplication of the open-cell SPF alone caused substantial damage to both Plaintiff and the PROPERTY, and has rendered the PROPERTY uninhabitable.

40. As a direct and legal result of the acts of Defendants 4H and KPHI, Plaintiff sustained economic damages, including injuries to her person and property, in amounts to be determined at the time of trial, but which exceed the jurisdictional minimum for venue to lie in this Court.

## VI.

## THIRD CAUSE OF ACTION

## BREACH OF WARRANTY

**(Against Defendant 4H)**

41. Plaintiff reasserts, re-alleges, and incorporates by reference, as if fully stated herein, each and every allegation contained above in this complaint.

42. Pursuant to Georgia law, and specifically O.C.G.A. Section 43-41-7, a licensed residential contractor must offer a written warranty in connection with each contract to construct any single family residence where the total value of the work exceeds $2,500.

43. Defendant 4H and Plaintiff entered into a building agreement whereby Defendant 4H agreed to renovate Plaintiff's PROPERTY for a cost well beyond $2,500. By law, Defendant 4H therefore owed Plaintiff a warranty for the work that was performed at the PROPERTY.

44. Defendant 4H breached that warranty with Plaintiff by failing to perform the renovation in a reasonable and workmanlike manner. Indeed, Defendant 4H's work was not only unreasonable, it created an unsafe and dangerous condition for Plaintiff.

45. Defendant 4H's breach of its warranty to Plaintiff proximately caused significant economic damages to Plaintiff, including for personal injuries and property damage beyond jurisdictional limits.

## VII.

## FOURTH CAUSE OF ACTION

### FRAUD

**(Against Defendant KPHI)**

46. Plaintiff reasserts, re-alleges, and incorporates by reference, as if fully stated herein, each and every allegation contained above in this complaint.

47. On or before November 25, 2020, Plaintiff met with Peter Adams of KPHI and David Huff, to conduct a walk-through of the PROPERTY. During this meeting, Peter Adams explicitly advised Plaintiff that KPHI would apply closed-cell spray foam to the exterior walls of the basement.

48. After KPHI applied the spray foam to the PROPERTY, Defendant Peter Adams falsely represented to Plaintiff that KPHI had applied closed cell SPF to the exterior basement walls. In truth, Defendant KPHI had applied open cell SPF to areas where it was improper and/or unsafe to do so. Adams further advised Plaintiff that it would be safe to re-enter the PROPERTY after 24 hours. Adams knew that this information was false at the time he stated it to Plaintiff.

49. Defendant KPHI made these misrepresentations deliberately and knowing of their falsity with the intent to deceive Plaintiff and to hide their wrongdoing.

50. Plaintiff justifiably relied on KPHI's misrepresentation that the proper SPF was applied to the basement exterior walls and re-entered the PROPERTY to reside in same for approximately two months, all the while inhaling harmful chemicals and continuing her exposure to the dangerous toxins that were off-gassing within her home. Defendant KPHI knowingly, intentionally, maliciously, willfully, wantonly, recklessly and/or negligently failed to advise Plaintiff of the dangers and health risks posed by its concealed transgressions.

51. Had Plaintiff known that the wrong spray foam product was applied to the basement exterior walls, she would have never re-entered the PROPERTY. Furthermore, Defendant KPHI's concealment of the truth delayed Plaintiff's ability to mitigate her harm and unnecessarily prolonged her exposure to the extremely hazardous chemicals that contaminated her home.

52. Plaintiff was damaged and physically harmed as a direct and proximate result of her justified reliance on Defendants' affirmative, fraudulent representations and, as a direct and proximate result of such justified reliance, Plaintiff continued to be exposed to harmful chemicals.

## VIII.

## FIFTH CAUSE OF ACTION

### STRICT PRODUCTS LIABILITY – DESIGN DEFECT

**(Against Defendants SWD and DOES 1 through 25)**

53. Plaintiff reasserts, re-alleges, and incorporates by reference, as if fully stated herein, each and every allegation contained above in this complaint.

54. Upon information and belief, Defendants SWD and DOES 1 through 25 designed, formulated, produced, manufactured, distributed and sold the SPF at issue to Defendants 4H and/or KPHI.

55. At all times pertinent to this Complaint, Defendants SWD and DOES 1 through 25 regularly participated in placing the SPF into the American stream of commerce.

56. As manufacturers, designers, refiners, formulators, distributors, suppliers, sellers, and marketers of the SPF, Defendants owed a duty to all persons whom Defendants' products might foreseeably harm, including Plaintiff, not to manufacture, sell, or market any product which is unreasonably dangerous for its intended and foreseeable uses.

57. Defendants' SPF was defectively designed and manufactured from the time the product left the hands of Defendants, such that the foreseeable risks associated with the use, storage, and disposal of the SPF exceeded the alleged benefits associated with its design and formulation.

58. At all times relevant to this litigation, and upon information and belief, Defendants' product reached Defendants' intended consumers and users without substantial change in their condition as designed, manufactured, sold, distributed, labeled, and marketed by Defendants.

59. The SPF designed, manufactured, and distributed by Defendants SWD and DOES 1 through 25 failed to perform safely and was a substantial factor in causing Plaintiff's harm.

60. Defendants could have manufactured, marketed, and sold alternative designs or formulations of products that did not contain harmful and illicit substances.

61. These alternative designs and/or formulations were available, practical, and technologically feasible.

62. The use of these alternative designs would have reduced or prevented the reasonably foreseeable harm to human health that was caused by the Defendants' manufacture, marketing, and sale of the SPF.

63. The SPF manufactured, sold, or distributed by the Defendants were defective in design because the foreseeable risk of harm posed by the product could have been reduced or eliminated by the adoption of a reasonable alternative design, including designs and/or formulations that did not include chlorofluorocarbons and other toxins.

64. Thus, the condition of the SFP when sold was the proximate cause of Plaintiff's injuries and the damage to her PROPERTY.

65. As a direct and legal result of the acts and omissions of all of the Defendants, Plaintiff has incurred severe emotional and physical damage, and other damage, in amounts to be proven at the time of trial, but which exceed the jurisdictional limits of this Court.

## IX.

## SIXTH CAUSE OF ACTION

## NEGLIGENCE PRODUCT LIABILITY – DESIGN DEFECT

**(Against Defendants SWD and DOES 1 through 25)**

66. Plaintiff reasserts, re-alleges, and incorporates by reference, as if fully stated herein, each and every allegation contained above in this complaint.

67. Upon information and belief, Defendants SWD and DOES 1 through 25 negligently designed, formulated, produced, manufactured, distributed and sold the SPF at issue to Defendants 4H and/or KPHI.

68. At all times pertinent to this Complaint, Defendants SWD and DOES 1 through 25 regularly participated in placing the SPF into the American stream of commerce.

69. As manufacturers, designers, refiners, formulators, distributors, suppliers, sellers, and marketers of the SPF, Defendants owed a duty to all persons whom Defendants' products might foreseeably harm, including Plaintiff, not to design,

manufacture, sell, or market any product which is unreasonably dangerous for its intended and foreseeable uses.

70. Defendants' SPF was negligently and defectively designed and manufactured from the time the product left the hands of Defendants, such that the foreseeable risks associated with the use, storage, and disposal of the SPF exceeded the alleged benefits associated with its design and formulation.

71. At all times relevant to this litigation, and upon information and belief, Defendants' product reached Defendants' intended consumers and users, including Plaintiff, without substantial change in their condition as designed, manufactured, sold, distributed, labeled, and marketed by Defendants.

72. The SPF negligently designed, manufactured, and distributed by Defendants SWD and DOES 1 through 25 failed to perform safely and was a substantial factor in causing Plaintiff's harm.

73. Defendants could have manufactured, marketed, and sold alternative designs or formulations of products that did not contain harmful and illicit substances.

74. These alternative designs and/or formulations were available, practical, and technologically feasible.

75. The use of these alternative designs would have reduced or prevented the reasonably foreseeable harm to human health that was caused by the Defendants' manufacture, marketing, and sale of the SPF.

76. The SPF manufactured, sold, or distributed by the Defendants were defective in design because the foreseeable risk of harm posed by the product could have been reduced or eliminated by the adoption of a reasonable alternative design, including designs and/or formulations that did not include chlorofluorocarbons and other toxins.

77. Thus, the condition of the SFP when sold was the proximate cause of Plaintiff's injuries and the damage to her PROPERTY.

78. As a direct and legal result of the acts and omissions of all of the Defendants, Plaintiff has incurred severe emotional and physical damage, and other

damage, in amounts to be proven at the time of trial, but which exceed the jurisdictional limits of this Court.

79. As a direct and legal result of Defendants' negligence, Plaintiff has been severely damaged emotionally and physically, and otherwise, in amounts to be proven at the time of trial, but which exceed the jurisdictional limits of the Superior Court.

## X.

## SEVENTH CAUSE OF ACTION

## FAILURE TO WARN

### (Against Defendants SWD and DOES 1-25)

80. Plaintiff reasserts, re-alleges, and incorporates by reference, as if fully stated herein, each and every allegation contained above in this complaint.

81. Defendants SWD and DOES 1 through 25 were manufacturers, sellers, and distributors of the defective SPF at issue.

82. Defendants SWD and DOES 1 through 25 knew, or had reason to know, that the SPF was likely to be dangerous for the intended use because it contained dangerous and illicit substances, including chlorofluorocarbons and other toxins.

83. Defendants SWD and DOES 1 through 25 had no reason to believe that Plaintiff or any consumer of the SPF would realize the danger since the defects were latent to Plaintiff and other reasonable consumers.

84. Despite Defendants' knowledge of the risks and harm that the SPF would cause, Defendants SWD and DOES 1 through 25 failed to exercise reasonable care to inform Plaintiff and other consumers about the danger. Indeed, no warnings were provided to Plaintiff at all. Plaintiff was advised that the SPF was safe and that she could re-enter her PROPERTY within 24 hours of application, which was plainly false.

85. As a direct and legal result of Defendants' failure to warn, Plaintiff has been severely damaged emotionally and physically, and otherwise, in amounts to be

proven at the time of trial, but which exceed the jurisdictional limits of the Superior Court.

## XI.
## EIGHTH CAUSE OF ACTION
## NEGLIGENCE *PER SE*
## (Against All Defendants)

86. Plaintiff incorporates herein by reference each and every paragraph of this Complaint as though set forth in full in this cause of action.

87. One or more federal statutes—including, but not limited to, 15 U.S.C. §§ 2607 and 2614, 33 U.S.C. §§ 1311(a) and 1342, and 42 U.S.C. §§ 6921-6939e—impose duties of care on Defendants with regard to Defendants' actions and/or omissions toward Plaintiff and/or Plaintiff's safety.

88. By Defendants' acts and/or omissions resulting in harm to Plaintiff, Defendants violated and/or continue to violate and/or breach one or more federal statutes and/or duties—including, but not limited to, 15 U.S.C. §§ 2607 and 2614, 33 U.S.C. §§ 1311(a) and 1342, and 42 U.S.C. §§ 6921-6939e—constituting negligence *per se*, including liability for all injuries to Plaintiff associated with the harmful chemicals

89. Defendants' violation of law and breach of its statutory duties directly and proximately caused, and continue to directly and proximately cause, damage to Plaintiff in the forms of economic damage and bodily injury for which Defendants are liable.

## XII.
## CLAIM FOR PUNITIVE DAMAGES

90. Plaintiff incorporates herein by reference each and every paragraph of this Complaint as though set forth in full in this cause of action.

91. At all times relevant to the present cause of action, Defendants designed, manufactured, marketed, sold and applied the harmful SPF that was used by Plaintiff and that resulted in the physical bodily injuries that Plaintiff has suffered and will continue to suffer.

92. At the time the above-described affirmative and intentional acts were performed by Defendants, Defendants had good reason to know or expect that their product was comprised of toxic and illicit chemicals capable of causing harm to human health.

93. Defendants' negligent, reckless, willful, and/or wanton actions and/or intentional failures to act caused Plaintiff to be exposed to harmful chlorofluorocarbons and other toxins.

94. The willful, wanton, malicious, and/or reckless conduct of Defendants, includes, but is not limited to:

   a. Intentionally misrepresenting the nature and identity of the SPF product installed in the PROPERTY;
   b. Issuing no warnings and failing to divulge material information concerning the potential off-gassing of hazardous chemicals;
   c. Failing to take all reasonable measures to ensure hazardous chemicals would be used effectively and properly disposed of;
   d. Failing to adhere to safety standards with respect to the installation of SPF products;
   e. Prematurely exposing Plaintiff to the hazardous chemicals following application of same;
   f. Concealing from Plaintiff that illicit and harmful chemicals were applied to her home; and
   g. Failing to prevent the foreseeable impacts of hazardous exposure upon Plaintiff.

95. As a result of Defendants' conduct, Plaintiff has been forced to incur and will continue to incur significant costs related to the harm caused by Defendants' product and will continue to suffer serious, debilitating, and severe physical, mental, and emotional distress caused by Defendants' SPF.

96. Defendants' actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to foreseeable consequences.

97. Based on Defendants' malicious, fraudulent and wanton misconduct, the Court should award Plaintiff punitive damages in an amount sufficient to deter and punish such conduct.

## XIII.
## CLAIM FOR ATTORNEYS' FEES

98. Plaintiff incorporates herein by reference each and every paragraph of this Complaint as though set forth in full in this cause of action.

99. Defendants engaged in stunning misconduct with respect to the installation of the SPF. Specifically, Defendants misrepresented to Plaintiff the nature and identity of the SPF product installed in the PROPERTY, knowingly failed to adhere to safety standards with respect to the installation of SPF product, knowingly failed to warn Plaintiff about the dangerous conditions created by the installation of the SPF product in the PROPERTY and intentionally concealed facts from Plaintiff that would have otherwise enabled her to realize that she was living in a hazardous and toxic environment created by Defendants' misconduct.

100. Defendants' aforementioned misconduct constitutes bad faith as contemplated by O.C.G.A. §13-6-11.

101. Accordingly, Plaintiff petitions this Court for an award of attorneys' fees and legal expenses reasonably incurred in connection with the prosecution of her claims pursuant to O.C.G.A. §13-6-11.

## XIV.
## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1. For an award of special (economic) and general (non-economic) damages according to proof;
2. For punitive damages against all Defendants;
3. For interest as allowed by law;
4. For an award of attorneys' fees and legal expenses pursuant to O.C.G.A. §13-6-11; and
5. For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims asserted in this Complaint.

Respectfully submitted this 30th day of January, 2023.

SCHWARTZ LAW CENTER, LLC

By: /s/ *Matthew Howard Schwartz*
Matthew Howard Schwartz
Georgia Bar #307111
Attorney for Angela Newsom
Schwartz Law Center, LLC
2985 Gordy Parkway, Suite 550
Marietta, Georgia 30066
Tel: (678) 401-2400
Email: matt@schwartzlawcenter.com