# Exhibit A



**SOCIAL SECURITY ADMINISTRATION**

Office of Hearings Operations
2nd Floor
10155 Eagle Drive
Covington, GA 30014-3804

Date: March 23, 2022

Casey Denise Smith
150 Mills Creek Lane
Covington, GA 30016

## Notice of Decision – Unfavorable

I carefully reviewed the facts of your case and made the enclosed decision. Please read this notice and my decision.

**If You Disagree With My Decision**

If you disagree with my decision, you may file an appeal with the Appeals Council.

**How To File An Appeal**

To file an appeal you or your representative must ask in writing that the Appeals Council review my decision. The preferred method for filing your appeal is by using our secure online process available at https://www.ssa.gov/benefits/disability/appeal.html.

You may also use our Request for Review form (HA-520) or write a letter. The form is available at https://www.ssa.gov/forms/ha-520.html. Please write the Social Security number associated with this case on any appeal you file. You may call (800) 772-1213 with questions.

Please send your request to:

        **Appeals Council**
        **5107 Leesburg Pike**
        **Falls Church, VA 22041-3255**

**Time Limit To File An Appeal**

You must file your written appeal **within 60 days** of the date you get this notice. The Appeals Council assumes you got this notice 5 days after the date of the notice unless you show you did not get it within the 5-day period.

Form HA-L76-OP2 (03-2010)

**Suspect Social Security Fraud?**
**Please visit http://oig.ssa.gov/r or call the Inspector General's Fraud Hotline**
**at 1-800-269-0271 (TTY 1-866-501-2101).**

See Next Page

Casey Denise Smith (BNC#: 21K4649D07574)                               Page 2 of 3

The Appeals Council will dismiss a late request unless you show you had a good reason for not filing it on time.

**What Else You May Send Us**

You or your representative may send us a written statement about your case. You may also send us new evidence. You should send your written statement and any new evidence **with your appeal**. Sending your written statement and any new evidence with your appeal may help us review your case sooner.

**How An Appeal Works**

The Appeals Council will consider your entire case. It will consider all of my decision, even the parts with which you agree. Review can make any part of my decision more or less favorable or unfavorable to you. The rules the Appeals Council uses are in the Code of Federal Regulations, Title 20, Chapter III, Part 416 (Subpart N).

The Appeals Council may:

- Deny your appeal,
- Return your case to me or another administrative law judge for a new decision,
- Issue its own decision, or
- Dismiss your case.

The Appeals Council will send you a notice telling you what it decides to do. If the Appeals Council denies your appeal, my decision will become the final decision.

**The Appeals Council May Review My Decision On Its Own**

The Appeals Council may review my decision even if you do not appeal. If the Appeals Council reviews your case on its own, it will send you a notice within 60 days of the date of this notice.

**When There Is No Appeals Council Review**

If you do not appeal and the Appeals Council does not review my decision on its own, my decision will become final. A final decision can be changed only under special circumstances. You will not have the right to Federal court review.

**New Application**

You have the right to file a new application at any time, but filing a new application is not the same as appealing this decision. If you disagree with my decision and you file a new application instead of appealing, you might lose some benefits or not qualify for benefits at all. If you disagree with my decision, you should file an appeal within 60 days.

Form HA-L76-OP2 (03-2010)

See Next Page

Casey Denise Smith (BNC#: 21K4649D07574)                                Page 3 of 3

**If You Have Any Questions**

We invite you to visit our website located at www.socialsecurity.gov to find answers to general questions about social security. You may also call (800) 772-1213 with questions. If you are deaf or hard of hearing, please use our TTY number (800) 325-0778.

If you have any other questions, please call, write, or visit any Social Security office. Please have this notice and decision with you. The telephone number of the local office that serves your area is (877) 873-9106. Its address is:

                Social Security
                9180 Covington Bypass
                Covington, GA 30014-8710


                Kristen Glover
                Administrative Law Judge

Enclosures:
Decision Rationale


cc:    Harry Brenner
       Affleck & Gordon, P C
       211 Perimeter Ctr Pkwy
       Suite 1050
       Atlanta, GA 30346

Form HA-L76-OP2 (03-2010)

# SOCIAL SECURITY ADMINISTRATION
## Office of Hearings Operations

## DECISION

| **IN THE CASE OF** | **CLAIM FOR** |
|---|---|
| Casey Denise Smith | Supplemental Security Income |
| (Claimant) | |
| | |
| (Wage Earner) | (Social Security Number) |

## JURISDICTION AND PROCEDURAL HISTORY

On July 31, 2020, the claimant filed an application for supplemental security income, alleging disability beginning July 20, 2020. The claim was denied initially on January 13, 2021, and upon reconsideration on July 16, 2021. Thereafter, the claimant filed a written request for hearing received on August 6, 2021 (20 CFR 416.1429 *et seq.*). On December 1, 2021, the undersigned held a telephone hearing due to the extraordinary circumstance presented by the Coronavirus Disease 2019 (COVID-19) Pandemic. All participants attended the hearing by telephone. The claimant agreed to appear by telephone before the hearing, and confirmed such agreement at the start of the hearing (Ex. C10B). The claimant is represented by Harry Brenner, an attorney. Tina Baker-Ivey, an impartial vocational expert, also appeared at the hearing.

The claimant submitted or informed the Administrative Law Judge about all written evidence at least five business days before the date of the claimant's scheduled hearing (20 CFR 416.1435(a)).

## ISSUES

The issue is whether the claimant is disabled under section 1614(a)(3)(A) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

Although supplemental security income is not payable prior to the month following the month in which the application was filed (20 CFR 416.335), the undersigned has considered the complete medical history consistent with 20 CFR 416.912.

After careful consideration of all the evidence, the undersigned concludes the claimant has not been under a disability within the meaning of the Social Security Act since July 31, 2020, the date the application was filed.

## APPLICABLE LAW

See Next Page

02.01.2023 13:35:37 Social Security Admin    HelpDesk#:8776974889    Page 5/18
Case 1:23-mi-99999-UNA   Document 382-1   Filed 02/07/23   Page 6 of 19

Casey Denise Smith (BNC#: 21K4649D07574)                    Page 2 of 11

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 416.920(a)). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the undersigned must determine whether the claimant is engaging in substantial gainful activity (20 CFR 416.920(b)). Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 416.972(a)). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 416.972(b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that she has demonstrated the ability to engage in SGA (20 CFR 416.974 and 416.975). If an individual engages in SGA, she is not disabled regardless of how severe her physical or mental impairments are and regardless of her age, education, and work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the undersigned must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 416.920(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 416.922, Social Security Rulings (SSRs) 85-28 and 16-3p). If the claimant does not have a severe medically determinable impairment or combination of impairments, she is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, the undersigned must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926). If the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listing and meets the duration requirement (20 CFR 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the undersigned must first determine the claimant's residual functional capacity (20 CFR 416.920(e)). An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. In making this finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 416.920(e) and 416.945; SSR 96-8p).

Next, the undersigned must determine at step four whether the claimant has the residual functional capacity to perform the requirements of her past relevant work (20 CFR 416.920(f)).

See Next Page

02.01.2023 13:36:23 Social Security Admin          HelpDesk#:8776974889    Page 6/18
Case 1:23-mi-99999-UNA   Document 382-1   Filed 02/07/23   Page 7 of 19

Casey Denise Smith (BNC#: 21K4649D07574)                    Page 3 of 11

The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 416.960(b) and 416.965). If the claimant has the residual functional capacity to do her past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 416.920(g)), the undersigned must determine whether the claimant is able to do any other work considering her residual functional capacity, age, education, and work experience. If the claimant is able to do other work, she is not disabled. If the claimant is not able to do other work and meets the duration requirement, she is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 416.912 and 416.960(c)).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, the undersigned makes the following findings:

**1. The claimant has not engaged in substantial gainful activity since July 31, 2020, the application date (20 CFR 416.971 *et seq.*).**

**2. The claimant has the following severe impairments: degenerative joint disease of the lumbar spine with history of laminotomies and microdiscectomy; depression; and generalized anxiety disorder (20 CFR 416.920(c)).**

The above medically determinable impairments significantly limit the ability to perform basic work activities as required by SSR 85-28.

The claimant's hypertension is not a severe impairment. The claimant has denied experiencing chest pain with exertion or at rest, dizziness, dyspnea on exertion, leg swelling, orthopnea, or palpitations (Ex. C2F at 4; C3F at 30; C8F). Cardiovascular physical examinations have been unremarkable (Ex. C2F at 7; C8F at 6, 10). The evidence of record does not support a finding that this condition causes more than minimal limitation on her ability to perform basic work-related activities.

The undersigned considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity.

02.01.2023 13:37:02 Social Security Admin          HelpDesk#:8776974889   Page 7/18
Case 1:23-mi-99999-UNA   Document 382-1   Filed 02/07/23   Page 8 of 19

Casey Denise Smith (BNC#: 21K4649D07574)                          Page 4 of 11

**3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).**

Despite the claimant's combined impairments, the medical evidence does not document listing-level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination.

The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning. An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.

In understanding, remembering or applying information, the claimant has a moderate limitation. Mental status examinations from the claimant's treating providers showed alert and oriented cognition and intact recall (Ex. C4F at 2; C6E at 7, 8; C9F at 2; B9F at 1).

In interacting with others, the claimant has a moderate limitation. In a function report, the claimant denied having any problems getting along with family, friends, neighbors, or others (Ex. C5E at 6). She wrote that she got along well with authority figures and had never lost a job due to problems getting along with others (Ex. B5E at 7). Mental status examinations from the claimant's treating providers showed cooperative attitude and normal speech (Ex. C4F at 2; C6E at 7, 8; C9F at 2; B9F at 1).

With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. Mental status examinations from the claimant's treating providers showed alert and oriented cognition, intact recall, and normal attention (Ex. C4F at 2; C6E at 7, 8; C9F at 2; B9F at 1; C12F at 4-5).

As for adapting or managing oneself, the claimant has experienced a moderate limitation. Mental status examinations from the claimant's treating providers showed depressed mood; fair to good judgment; and no suicidal or homicidal ideations (Ex. C4F at 2; C6E at 7, 8; C9F at 2; B9F at 1; C12F at 4-5).

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.

The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. The record does not establish that

See Next Page

02.01.2023 13:37:43 Social Security Admin            HelpDesk#:8776974889   Page 8/18
Case 1:23-mi-99999-UNA   Document 382-1   Filed 02/07/23   Page 9 of 19

Casey Denise Smith (BNC#: 21K4649D07574)                            Page 5 of 11

the claimant has only marginal adjustment, that is, a minimal capacity to adapt to changes in the claimant's environment or to demands that are not already part of the claimant's daily life.

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

**4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work, as defined in 20 CFR 416.967(b), except she can stand and/or walk 4 hours over the course of the workday, with no limitation on sitting; can perform no climbing of ropes, ladders, or scaffolds; can occasionally climb ramps or stairs; can occasionally balance, stoop, crouch, crawl, or kneel; can occasionally push or pull with the lower extremities; can have no more than frequent exposure to vibration and to workplace hazards, such as moving machinery and unprotected heights; is limited to simple and routine tasks, with simple work-related decisions, occasional interaction with the public, coworkers, and supervisors, and gradual and infrequent workplace changes.**

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSR 16-3p. The undersigned also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 416.920c.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities.

In her initial disability report, the claimant wrote that she was limited in her ability to work due to herniated disc in the lower back, kidney stones, depression, and radiculopathy of the bilateral lower extremities (Ex. C2E at 2). In a pain questionnaire, the claimant wrote that her pain occurred every day, all day long and was brought on by standing, sitting, lying down, or walking

02.01.2023 13:38:29 Social Security Admin    HelpDesk#:8776974889    Page 9/18
Case 1:23-mi-99999-UNA   Document 382-1   Filed 02/07/23   Page 10 of 19

Casey Denise Smith (BNC#: 21K4649D07574)                    Page 6 of 11

(Ex. C4E at 2). In a function report, the claimant wrote that her conditions affected her abilities to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, remember, complete tasks, and understand (Ex. C5E). In a later disability report, the claimant reported that she continued to have ongoing difficulties with activities of daily living due to her medical conditions (Ex. C9E at 4).

At the hearing, the claimant testified that she is unable to work due to back pain. She stated that she had surgery in August 2016. She said that she cannot sit for more than 30 minutes due to sciatic nerve pain. The claimant testified that she sometimes cannot get out of bed. She said that, after her July 2021 accident, her pain management provider discussed an additional surgery. She said that her pain medication puts her to sleep for a couple of hours and does not fully relieve her pain. The claimant testified that she cannot clean her home and spends her days in bed watching television. She said that she has a lot of anxiety. She said that she sometimes will shake and scream. She said that she does exercises for her back pain but that they are not helpful.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

The medical evidence of record shows that, in 2017, the claimant underwent a bilateral L5 laminotomy and microdiscectomy at L5-S1 (Ex. C1F at 13).

In September 2020, the claimant told Geetha Manchireddy, M.D., her pain management provider, that walking, standing, and sitting made her pain worse (Ex. C3F at 29). She described her pain as aching, shooting, throbbing, sharp, and stabbing (Ex. C3F at 29). She rated her pain as 9 out of 10 on the pain scale (Ex. C3F at 29). A physical examination showed normal gait; no use of an assistive device; tenderness to palpation of the lumbar spine; pain with all lumbar movements; no pain on palpation to the bilateral SI joints; no lower extremity edema; negative straight leg raise; and decreased muscle strength to the left lower extremity (Ex. C3F at 31).

In September 2020, the claimant told a mental health provider that she was doing a little better (Ex. C4F at 2). She reported ongoing depression but denied panic attacks (Ex. C4F at 2). A mental status examination showed cooperative attitude; depressed mood; logical and goal-directed thought process; normal thought content; good judgment; fair insight; alert cognition; and intact recall (Ex. C4F at 2).

In October 2020 Anil Desai, M.D., a primary care provider, noted normal back and musculoskeletal findings on examination, as well as no focal neurologic deficits, normal motor strength in the upper and lower extremities, and intact sensation (Ex. C8F at 15).

In January 2021, the claimant told her mental health provider that she had been doing okay (Ex. C6F at 8). A mental status examination showed cooperative attitude; depressed mood; logical and goal-directed thought process; normal thought content; good judgment and insight; and intact recall (Ex. C6E at 8).

See Next Page

02.01.2023 13:39:12 Social Security Admin    HelpDesk#:8776974889    Page 10/18
Case 1:23-mi-99999-UNA   Document 382-1   Filed 02/07/23   Page 11 of 19

Casey Denise Smith (BNC#: 21K4649D07574)                Page 7 of 11

In a March 2021 pain questionnaire, Heretta Pickens, NP-C, a nurse practitioner, wrote that the claimant experienced pain even when she was non-weight bearing; was credible regarding the severity, duration, frequency, and other factors regarding her pain; needed to elevate her legs on a daily basis; would need 4 to 6 breaks in an 8-hour day, lasting for 15 minutes or more; would be off task from job duties at least 15% of the work day because of pain; would need to lie down for at least 2 hours during the daytime; and would miss two or more days of work per month due to pain (Ex. C5F at 2).

In April 2021, the claimant told her mental health provider that she had been depressed more due to recent deaths due to COVID (Ex. C6F at 7). She reported having difficulty sleeping due to mood changes and grief (Ex. C6F at 7). A mental status examination showed cooperative attitude; normal speech; depressed mood; circumstantial thought process; denial of suicidal or homicidal ideation; good judgment; fair insight; alertness and orientation; and intact recall (Ex. C6F at 7).

In April 2021, the claimant's psychiatrist, Annamarie Paulsen, M.D., completed a mental residual functional capacity assessment questionnaire (Ex. C7F). Dr. Paulsen wrote that the claimant had moderate and marked limitations in numerous areas of functioning (Ex. C7F). She wrote that the claimant had a very constricted home life and only went to her mother's house rarely (Ex. C7F at 2). She wrote that the claimant could not handle stress, focus, or concentrate (Ex. C7F at 2). Dr. Paulsen wrote that the claimant was only partially responsive to multiple medication trials (Ex. C7F at 3). She wrote, "We have declared her disabled totally" (Ex. C7F at 3).

In May 2021, Dr. Desai's physical examination showed normal back and musculoskeletal findings; no focal neurologic deficits; normal motor strength of the upper and lower extremities; and intact sensation (Ex. C8F at 6).

In July 2021, the claimant told her mental health provider that depression was still an issue (Ex. C9F at 2). She reported experiencing some days with increased irritability, mood, and fatigue (Ex. C9F at 2). A mental status examination showed fair eye contact; fidgety psychomotor activity; cooperative attitude; normal speech; stable affect; depressed and anxious mood; fair judgment; denial of suicidal and homicidal ideation; alert and oriented cognition; and intact recall (Ex. C9F at 2).

In July 2021, the claimant presented to Piedmont Newton Hospital with complaints of lower back pain with radiation to the left leg after a motor vehicle collision (Ex. C12F at 2). A physical examination showed lumbar tenderness; normal range of motion in the lumbar spine; no motor weakness; no focal neurological deficit; intact sensation; normal attention; normal mood; normal speech; normal behavior; normal thought content; normal cognition; and normal judgment (ex. C12F at 4-5).

In August 2021, the claimant told her mental provider that anxiety was still an issue (Ex. C9F at 1). She reported being busy and stressed out (Ex. C9F at 1). A mental status examination showed good fair eye contact; good posture; fidgety psychomotor activity; cooperative attitude; normal

See Next Page

02.01.2023 13:39:55 Social Security Admin  HelpDesk#:8776974889  Page 11/18
Case 1:23-mi-99999-UNA Document 382-1 Filed 02/07/23 Page 12 of 19

Casey Denise Smith (BNC#: 21K4649D07574)                    Page 8 of 11

speech; appropriate affect; anxious mood; logical thought process; no suicidal or homicidal ideation; good judgment; good insight; alert and oriented cognition; and intact recall (Ex. B9F at 1).

An August 2021 MRI of the lumbar spine showed congenital shortening of the pedicles; no acute or chronic fracture; moderate degenerative disc and facet disease at L5-S1 with postoperative laminotomy changes; broad-based posterior disc herniation at L5-S1 creating severe left subarticular recess stenosis compressing the left S1 nerve root; and moderate bilateral neural foraminal stenosis without nerve compression (Ex. C10F at 20).

In August 2021, the claimant told Tiffany Ture, M.D., a pain specialist, that she was experiencing shooting pain to the posterior aspect of her left lower extremity (Ex. C11F at 4). Dr. Ture's examination showed decreased range of motion in all planes; tenderness along the left lumbar paraspinal region; and positive straight leg raise on the left (Ex. C11F at 4). "Based on her MRI findings and radicular features," Dr. Ture wrote, "I suspect that her pain is largely discogenic. I will proceed with a left L5, S1 transforaminal epidural steroid injection" (Ex. C11F at 4).

In August 2021, the claimant told Dr. Manchireddy that she continued to experience intermittently sharp and shooting pain at the lumbosacral area shooting down her legs (Ex. C13F at 1). A physical examination showed normal gait; pain with all lumbar movements bilaterally; lumbar tenderness; normal muscle strength in the upper and lower extremity; and non-tender straight leg raise (Ex. C13F at 3).

In September 2021, the claimant followed up with Dr. Manchireddy (Ex. C13F at 5). She rated her pain as 5 out of 10 (Ex. C13F at 5). A physical examination showed normal gait; no use of an assistive device; pain with all lumbar movements; tenderness to palpation; positive facet loading bilaterally; negative straight leg raise; and normal muscle strength in the upper and lower extremities (Ex. C13F at 7).

As for medical opinion(s) and prior administrative medical finding(s), the undersigned cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources. The undersigned has fully considered the medical opinions and prior administrative medical findings as follows:

The questionnaire response by Dr. Paulsen is found not persuasive, as it is not supported by the treatment notes from the claimant's treating mental health providers, which generally showed depressed mood as the only abnormal finding on examination (Ex. C7F). Furthermore, her statement is not consistent with the largely normal examination findings of the claimant's primary care providers.

The assessment of Ms. Pickens is found not persuasive, as it is not supported by clinical findings (notably, she listed symptoms and not objective findings when prompted to do so by the questionnaire) and is inconsistent with the physical examination findings of the claimant's primary care providers and the pain management treatment records (Ex. C5F).

See Next Page

02.01.2023 13:40:36 Social Security Admin          HelpDesk#:8776974889    Page 12/18
Case 1:23-mi-99999-UNA   Document 382-1   Filed 02/07/23   Page 13 of 19

Casey Denise Smith (BNC#: 21K4649D07574)                          Page 9 of 11

The state agency consultants' assessments are found moderately persuasive overall. The assessments of no severe mental impairment by the state agency mental consultants are found not persuasive, as the treatment records from the claimant's mental health providers are consistent with more than minimal limitations (Ex. C5A; C7A). The assessment of state agency medical consultants at the reconsideration level, who found more significant exertional limitations, is found more persuasive than the consultants' assessment at the initial level, as it is consistent with the objective physical examination and imaging findings (Ex. C5A; C7A).

Based on the foregoing, the undersigned finds the claimant has the above residual functional capacity assessment, which is supported by physical examination findings (tenderness and reduced range of motion but normal gait and motor strength); imaging findings; largely normal mental status examination findings; and the overall treatment evidence of record.

**5. The claimant is unable to perform any past relevant work (20 CFR 416.965).**

The claimant has the following past relevant work:

- Hand Packager (DOT 920.687-134): Medium; Unskilled (SVP 2)

As required by SSR 82-62, this work was substantial gainful activity, was performed long enough for the claimant to achieve average performance, and was performed within the relevant period. The vocational expert testified that, given the residual functional capacity set forth above, the claimant could not perform any of her past work. The undersigned accepts the expert's testimony and so finds. Accordingly, the claimant is unable to perform past relevant work as actually or generally performed.

**6. The claimant was born on September 20, 1979 and was 40 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).**

**7. The claimant has at least a high school education (20 CFR 416.964).**

**8. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 416.968).**

**9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).**

In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion

02.01.2023 13:41:16 Social Security Admin          HelpDesk#:8776974889       Page 13/18
Case 1:23-mi-99999-UNA   Document 382-1   Filed 02/07/23   Page 14 of 19

Casey Denise Smith (BNC#: 21K4649D07574)                        Page 10 of 11

and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).

If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.20. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as the following:

- Assembler (DOT 734.687-018): Sedentary; Unskilled (SVP 2); 45,000 positions in the national economy.
- Final Parts Assembler (DOT 713.687-018): Sedentary; Unskilled (SVP 2); 45,000 positions in the national economy.
- Bolt and Nut Sorter (DOT 521.687-086): Sedentary; Unskilled (SVP 2); 30,000 positions in the national economy.

Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles. The expert stated that her testimony regarding issues not addressed by the DOT is based on her professional study and observations.

Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

**10. The claimant has not been under a disability, as defined in the Social Security Act, since July 31, 2020, the date the application was filed (20 CFR 416.920(g)).**

## DECISION

See Next Page

Casey Denise Smith (BNC#: 21K4649D07574)                    Page 11 of 11

Based on the application for supplemental security income filed on July 31, 2020, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

/s/ *Kristen Glover*
Kristen Glover
Administrative Law Judge

March 23, 2022
Date

## LIST OF EXHIBITS

### Payment Documents/Decisions

| Component | No. | Description | Received | Dates | Pages |
|---|---|---|---|---|---|
| TH | C1A | ALJ Hearing Decision | | 2016-05-16 | 16 |
| TH | C2A | AC Denial | | 2017-05-16 | 6 |
| TH | C3A | ALJ Hearing Decision | | 2019-10-10 | 23 |
| TH | C4A | AC Denial | | 2020-07-20 | 8 |
| TH | C5A | Disability Determination Explanation-DDE - T16 (IN) PRT by DDS MD J Zhang MD | | 2021-01-12 | 15 |
| TH | C6A | Initial Disability Determination by State Agency, Title XVI | | 2021-01-13 | 1 |
| TH | C7A | Disability Determination Explanation-DDE- T16 (RC) PRT by DDS MD R Titanji MD | | 2021-07-06 | 16 |
| TH | C8A | Reconsideration Disability Determination by State Agency, Title XVI | | 2021-07-13 | 1 |

### Jurisdictional Documents/Notices

| Component | No. | Description | Received | Dates | Pages |
|---|---|---|---|---|---|
| TH | C1B | Fee Agreement for Representation before SSA-25%/$6000.00- Harry Brenner | | 2020-09-21 | 1 |
| TH | C2B | SSA-1696 - Claimant's Appointment of a Representative-Harry Brenner Atty | | 2020-09-21 | 7 |
| TH | C3B | T16 Notice of Disapproved Claim | | 2021-01-16 | 4 |
| TH | C4B | Request for Reconsideration | | 2021-02-01 | 3 |
| TH | C5B | T16 Disability Reconsideration Notice | | 2021-07-16 | 6 |

| Component | No. | Description | | | Dates | Pages |
|---|---|---|---|---|---|---|
| TH | C6B | Request for Hearing by ALJ | | | 2021-08-09 | 3 |
| TH | C7B | Outgoing ODAR Correspondence | | | 2021-08-10 | 14 |
| TH | C8B | Request for Hearing Acknowledgement Letter | | | 2021-08-13 | 15 |
| TH | C10B | COVID Hearing Agreement Form | | | 2021-08-26 | 2 |
| TH | C11B | Hearing Notice | | | 2021-09-13 | 25 |
| TH | C9B | Objection to Video Hearing | | | 2021-08-20 | 2 |
| TH | C12B | Notice Of Hearing Reminder | | | 2021-11-10 | 6 |

## Non-Disability Development

| Component | No. | Description | Received | | Dates | Pages |
|---|---|---|---|---|---|---|
| TH | C1D | Application for Supplemental Security Income Benefits | | | 2020-07-31 | 3 |
| TH | C2D | New Hire, Quarter Wage, Unemployment Query (NDNH) | | | 2021-10-25 | 1 |
| TH | C3D | Detailed Earnings Query | | | 2021-10-25 | 2 |
| TH | C4D | Summary Earnings Query | | | 2021-10-25 | 1 |
| TH | C5D | Certified Earnings Records | | | 2021-10-25 | 2 |
| TH | C6D | Detailed Earnings Query | | | 2021-11-17 | 2 |
| TH | C7D | New Hire, Quarter Wage, Unemployment Query (NDNH) | | | 2021-11-17 | 1 |
| TH | C8D | Summary Earnings Query | | | 2021-11-17 | 1 |
| TH | C9D | Certified Earnings Records | | | 2021-11-17 | 2 |

## Disability Related Development

| Component | No. | Description | Received | Source | Dates | Pages |
|---|---|---|---|---|---|---|
| TH | C1E | Disability Report - Field Office | | FO | to 2020-09-15 | 4 |

| Component | No. | Description | Source | Dates | Pages |
|---|---|---|---|---|---|
| T11 | C2E | Disability Report - Adult | Smith, Casey Denise | to 2020-09-15 | 12 |
| T11 | C3E | Work History Report | Smith, Casey Denise | to 2020-10-14 | 13 |
| T11 | C4E | Pain Questionnaire / Report | Smith, Casey Denise | to 2020-10-14 | 4 |
| T11 | C5E | Function Report - Adult | Smith, Casey Denise | to 2020-10-14 | 9 |
| T11 | C6E | Disability Report - Field Office | FO | to 2021-02-01 | 2 |
| T11 | C7E | Disability Report - Appeals | Brenner, Harry | to 2021-02-01 | 7 |
| T11 | C8E | Disability Report - Field Office | FO | to 2021-08-09 | 2 |
| T11 | C9E | Disability Report - Appeals | Affleck, Allison | to 2021-08-09 | 6 |
| T11 | C10E | Exhibit List to Rep PH2E | Oho | to 2021-10-25 | 11 |
| T11 | C11E | Resume of Vocational Expert | Tina Baker-Ivey | 2021-11-16 to | 1 |
| T11 | C12E | Correspondence regarding efforts to obtain evidence | | 2021-11-23 to | 1 |
| T11 | C13E | Proffer Correspondence | Oho | to 2022-02-08 | 3 |

## Medical Records

| Component | No. | Description | Received | Source | Dates | Pages |
|---|---|---|---|---|---|---|
| T11 | C1F | Office Treatment Records | | Emory Ortho & Spine Ctr | 2017-02-20 to 2018-03-29 | 21 |
| T11 | C2F | Progress Notes | | Desai, Ropal Md | 2020-07-30 to 2020-08-20 | 13 |
| T11 | C3F | Office Treatment Records | | Advance Pain Management | 2020-01-24 to 2020-09-23 | 31 |
| T11 | C4F | Office Treatment Records | | Rockdale Psychiatric Associate | 2018-09-11 to 2020-09-25 | 23 |
| T11 | C5F | Pain Questionnaire | | Pickens, Horetta Np-C | to 2021-03-18 | 2 |

| | | | | | | |
|---|---|---|---|---|---|---|
| T11 | C6F | Office Treatment Records | | Rockdale Psychiatric Associate | 2019-07-18 to 2021-04-09 | 18 |
| T11 | C7F | Mental RFC Assessment | | Paulsen, A S, Md | to 2021-04-13 | 3 |
| T11 | C8F | Progress Notes | | Desai, Ropal Md | 2020-10-22 to 2021-05-04 | 16 |
| T11 | C9F | Office Treatment Records | | Rockdale Psychiatric Associates | 2021-07-27 to 2021-08-10 | 2 |
| T11 | C10F | Office Treatment Records | | Back To Health | 2021-08-02 to 2021-08-24 | 42 |
| T11 | C11F | Progress Notes | | Peachtree Spine Physicians | 2021-08-26 to 2021-08-30 | 9 |
| T11 | C12F | Emergency Department Records | | Piedmont Newton Hospital | 2021-07-30 to 2021-07-30 | 12 |
| T11 | C13F | Office Treatment Records | Subsequent to hearing | Dr. Geeth Manchireddy, Md (Advance Pain) | 2021-08-18 to 2021-11-17 | 15 |
| T11 | C14F | Progress Notes | Subsequent to hearing | Anil Desi, Md (East Metro Internal Medicine) | 2020-10-22 to 2021-05-04 | 17 |
| T11 | C15F | Progress Notes | Subsequent to hearing | East Metro Internal Medicine | 2015-12-08 to 2020-08-20 | 38 |