IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| FATIMATOU GAI, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. _____ |
| | ) |
| v. | ) |
| | ) JURY TRIAL DEMANDED |
| WAL-MART ASSOCIATES, INC., | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

COMES NOW Fatimatou Gai ("Gai" or "Plaintiff") by and through the undersigned counsel, and files this Complaint against Wal-Mart Associates Inc. ("Defendant") for interference with the exercise of her rights granted by the Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.* ("FMLA"), showing the Court the following:

INTRODUCTION

1.

Plaintiff was employed by Defendant as manager of the nursing (garden) center at Walmart Supercenter #1047. Plaintiff developed a severe respiratory condition that either arose from or was aggravated by Plaintiff's proximity to and

1

engagement of activities involving the sanitation of rodent feces left by an infestation of rats in Defendant's Walmart Supercenter #1047 facility. Plaintiff requested and was granted leave under the FMLA starting July 23, 2022, and scheduled to conclude September 23, 2022. Defendant terminated Plaintiff's employment on August 11, 2022 while Plaintiff was on an approved FMLA leave.

## JURISDICTION

2.

This action arises under the Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.* The jurisdiction of this court is founded upon 28 U.S.C. § 1331.

## VENUE

3.

The facts and omissions giving rise to this Complaint occurred in this District. Venue is proper in this Court.

## PARTIES

4.

Plaintiff is a citizen of the State of Georgia.

5.

Plaintiff consents to the jurisdiction of this Court.

6.

Defendant is a foreign for-profit corporation authorized to conduct business in the State of Georgia.

FACTS

7.

On or about July 7, 2015, Defendant hired Plaintiff to work as an Associate.

8.

On or about June 6, 2022, Defendant reassigned Plaintiff to work at Walmart Supercenter #1047 which is located at 6065 Jonesboro Road, Morrow, GA 30260.

9.

Defendant assigned Plaintiff to manage its Garden Center at Walmart Supercenter #1047.

10.

On her first day working at Walmart Supercenter #1047, Plaintiff saw four rodents in the store that she subsequently identified as rats.

11.

By Plaintiff's fourth week working at Walmart Supercenter #1047, she had filed several requests with Defendant's management to take the appropriate steps to eliminate the rat infestation and to sanitize areas of the store littered with rat feces.

12.

On or about June 24, 2022, Plaintiff filed a complaint with the United States Department of Labor, Occupational Safety and Health Administration ("OSHA") alleging that Defendant maintained unsafe working conditions due to its failure to take adequate steps to address the rodent infestation in Walmart Supercenter #1047.

13.

At or around the end of June 2022, Plaintiff noticed that she had begun developing issues with her sinuses causing her to purchase and use over-the-counter remedies in addition to her rescue inhaler.

14.

On or about June 30, 2022, Plaintiff contacted Defendant's Market Manager to advise her of the severity of the rat infestation in Walmart Supercenter #1047.

15.

On or about June 30, 2022, Defendant's Market Manager responded to Plaintiff's outreach with notice that she planned to visit Walmart Supercenter #1047 the following day.

16.

On or about July 1, 2022, Plaintiff toured Walmart Supercenter #1047 with the Market Manager to point out evidence of the severity of the rat infestation the store was facing.

17.

On or about July 1, 2022, after the visit by Defendant's Market Manager, Plaintiff contacted Defendant's pest management division at Defendant's home office in Arkansas to determine if they had additional resources to address Walmart Supercenter #1047's rat infestation.

18.

On or about July 2, 2022, after experiencing worsening symptoms and pain in her sinuses, Plaintiff went to Kaiser Advanced and Urgent Care Unit to seek treatment and relief.

19.

While admitted to Kaiser Advanced and Urgent Care on July 2, 2022, Plaintiff was given an injection to relieve the tremendous pain she was enduring in her sinuses.

20.

Plaintiff was diagnosed with an upper respiratory infection by physicians at Kaiser Advanced and Urgent Care on July 2, 2022.

21.

On July 2, 2022, Plaintiff was discharged Kaiser Advanced and Urgent Care with instructions from her physician to take time off of work to rest.

22.

From July 2, 2022, to July 6, 2022, Plaintiff took time off of work at the request of her doctors.

23.

Plaintiff returned to working for Defendant on July 6, 2022.

24.

While at work on July 6, 2022, Plaintiff felt ill and notified Defendant's management that she was returning home due her ongoing illness.

25.

Upon receiving notice that Plaintiff was returning home due to illness, Defendant's management instructed Plaintiff to contact Sedgwick if she anticipated having to miss more three days of work.

26.

On or about July 6, 2022, Plaintiff contacted Sedgwick to notify them of her need for leave.

27.

On or about July 8, 2022, Sedgwick sent Plaintiff a packet of forms to request short term disability and to request a medical leave under the FMLA.

28.

On or about July 12, 2022, Plaintiff received correspondence from Sedgwick stating that her leave under the FMLA had been approved.

29.

On or about July 25, 2022, after her symptoms returned, Plaintiff returned to Kaiser for additional treatment.

30.

During Plaintiff's July 25, 2022, visit to Kaiser, Plaintiff was diagnosed with having a sinus infection.

31.

Doctors at Kaiser prescribed Plaintiff with antibiotic medication to treat her sinus infection.

32.

On or about July 28, 2022, Plaintiff worked a couple of hours and then notified Defendant's management that she was feeling dizzy and nauseated from the antibiotics that she had taken and that she would be taking an extended lunch to go home and rest and then planned to return to work thereafter.

33.

On or about July 29, 2022, Plaintiff attempted to returned to work but due to ongoing symptoms of illness, she returned home.

34.

On July 29, 2022, Plaintiff notified Defendant's management that she was returning home due to illness.

35.

On or about July 29, 2022, Plaintiff contacted Sedgwick to request leave under the FMLA from July 29, 2022 – August 29, 2022 due to her ongoing serious medical issues.

36.

On or about August 3-4, 2022, Plaintiff received a notice from a Sedgwick that her latest request for leave had been denied because Sedgwick was combining

Plaintiff's most recent request for leave to her July 2, 2022 request for leave and requested an updated physician's statement from Plaintiff.

37.

On or about August 4, 2022, Plaintiff was seen by a physician and diagnoses with Allergic Rhinitis, a disorder caused by allergens.

38.

On or about August 5, 2022, Plaintiff received another notification from Sedgwick that her leave is a continuation of my first leave due to serious medical issues being of the same nature. The notification stated that Plaintiff had to submit medical documentation substantiating the existence of her qualifying illness within 20 days of her initial absence. The notification further stated that Plaintiff was required to maintain normal call out notification procedures until she received notification that her request for leave had been approved.

39.

Plaintiff notified Defendant of her absences each day by calling Defendant's telephone number designated for employees to notify Defendant of an associate's need to be absent from work.

40.

On or about August 9, 2022, Plaintiff submitted her FMLA forms to substantiate her serious medical issues to her doctors at Kaiser.

41.

On or about August 12, 2022, Plaintiff noticed that Defendant's applications had been removed from her phone. She called Defendant's management to ask if she was been terminated from her employment. Defendant's management informed Plaintiff that her employment had been terminated.

42.

Plaintiff contacted Sedgwick to advise them that Defendant terminated her employment.

43.

In response to Plaintiff's disclosure regarding the termination of her employment, the Sedgwick representative instructed Plaintiff to contact Defendant's management to reinstate her employment because her leave request was still active.

44.

On or about August 18, 2022, Plaintiff received a notice from Sedgwick reminding her to submit her medical documentation in support of her FMLA claim to Sedgwick before August 25, 2022.

45.

On or about August 19, 2022, Plaintiff contacted Kaiser and verified that the medical documents substantiating Plaintiff's serious medical issue had been returned to Sedgwick.

46.

On August 23, 2022, Plaintiff received notification from Sedgwick that her leave of absence and short term disability had been approved and that she could return to work on August 30, 2022 or extend my leave of absence, if needed. I then continued to reach out to the facility store management, but I had no luck as no one answered or returned my calls. *See* Plaintiff's Exhibit A.

47.

Plaintiff was an eligible employee under the FMLA.

48.

Plaintiff worked at least 12 months for Defendant.

49.

Plaintiff worked at least 1250 hours for Defendant during the previous 12-month period.

50.

Defendant is a covered employer under the FMLA.

51.

Defendant employs at least 50 employees within 75 miles of Walmart Supercenter #1047.

52.

At all times relevant to this Complaint, Defendant engaged in commerce.

53.

Defendant employed 50 or more employees for 20 weeks in calendar year 2022.

54.

Plaintiff's qualified for leave under the FMLA due to her physician diagnosing her with an upper respiratory infection, a serious medical issue.

55.

Plaintiff was unable to perform the essential functions of her position due to her upper respiratory infection and her physician directing Plaintiff to take him off from work for rest and recuperation.

56.

Plaintiff's upper respiratory infection required that Plaintiff receive continuing course of treatment that required multiple visits to her health care provider.

57.

On August 30, 2022, Plaintiff returned to work. Upon her arrival she attempted to speak with a member of Defendant's management. After waiting an hour, the store manager had another associate tell Plaintiff that he was busy and was not available to speak with her.

58.

Plaintiff sent a text message to Defendant's store manager to request a notice of termination. The store manager did not response to Plaintiff's request.

59.

Plaintiff made numerous attempts to contact Defendant's management to attempt to get her termination rescinded. None of Plaintiff's calls to Defendant's management were returned.

60.

Defendant terminated Plaintiff's employment while Plaintiff was on an approved FMLA leave.

**COUNT I – Interference with the Exercise of Rights Under the FMLA**

61.

Plaintiff incorporates paragraphs 1 – 60 herein as if fully set forth.

62.

Plaintiff was entitled to be restored to her position and employment with Defendant that she held prior to taking leave under the FMLA.

63.

Defendant denied Plaintiff the benefit of restoration of employment after taking leave under the FMLA.

64.

Defendant terminated Plaintiff's employment in violation of the FMLA.

65.

Defendant's termination of Plaintiff's employment was not in good faith.

66.

Defendant's denial of Plaintiff's right to restoration to her previous employment and position was not in good faith.

67.

Defendant did not have a reasonable basis for terminating Plaintiff's employment.

68.

Defendant interfered with Plaintiff's exercise of her rights under the FMLA.

WHEREFORE, Plaintiff prays that the Honorable Court enters judgement in her favor and grant her the following relief:

a. Declaratory judgment that Defendant engaged in unlawful employment practice in violation of the FMLA;

b. Injunctive relief of reinstatement or front pay in lieu thereof and prohibiting Defendant from further unlawful conduct of the type described herein;

c. Compensatory damages for mental and emotional suffering cause by Defendant's misconduct;

d. Special damagers and/or liquidated damages for lost wages and benefits;

e. Prejudgment interest;

f. Reasonable attorney's fees and expenses of litigation with any and all other costs associated with this action as provided by the FMLA.

g. Trial by jury as to all issues; and

h. All other relief to which she may be entitled.

Respectfully submitted with 7th day of February, 2023.

**BARRETT & FARAHANY**

*s/ F. Anthony Dawkins*
F. Anthony Dawkins
Georgia Bar No. 157904

*Attorney for Plaintiff*

P.O. BOX 530092
Atlanta, GA 30353
Telephone: (470) 747-8329
Facsimile: (404) 214-0125
anthony@justiceatwork.com