Fulton County Superior Cou
***EFILED***LV
Date: 1/11/2023 4:48 PI
Cathelene Robinson, Cler

## General Civil and Domestic Relations Case Filing Information Form

☑ Superior or ☐ State Court of Fulton _____ County

| For Clerk Use Only | | |
|---|---|---|
| Date Filed __1/11/2023__ | Case Number | 2023CV374797 |
| **MM-DD-YYYY** | | |

**Plaintiff(s)**

DIXON          DONALD

Last    First          Middle I.    Suffix    Prefix

DONALD DIXON, as Assignee of Girls Galore, Inc. d/b/a Allure
Gentlemen's Club
Last          First          Middle I.    Suffix    Prefix

Last    First          Middle I.    Suffix    Prefix

Last    First          Middle I.    Suffix    Prefix

**Defendant(s)**

UNITED SPECIALTY INSURANCE COMPANY

Last    First    Middle I.    Suffix    Prefix

Last    First    Middle I.    Suffix    Prefix

Last    First    Middle I.    Suffix    Prefix

Last    First    Middle I.    Suffix    Prefix

**Plaintiff's Attorney** Richard E. Dolder, Jr.     **State Bar Number** 220237     **Self-Represented** ☐

**Check one case type and one sub-type in the same box (if a sub-type applies):**

**General Civil Cases**
- ☐ **Automobile Tort**
- ☐ **Civil Appeal**
- ☐ **Contempt/Modification/Other Post-Judgment**
- ☐ **Contract**
- ☐ **Garnishment**
- ☑ **General Tort**
- ☐ **Habeas Corpus**
- ☐ **Injunction/Mandamus/Other Writ**
- ☐ **Landlord/Tenant**
- ☐ **Medical Malpractice Tort**
- ☐ **Product Liability Tort**
- ☐ **Real Property**
- ☐ **Restraining Petition**
- ☐ **Other General Civil**

**Domestic Relations Cases**
- ☐ **Adoption**
- ☐ **Contempt**
  - ☐ **Non-payment of child support, medical support, or alimony**
- ☐ **Dissolution/Divorce/Separate Maintenance/Alimony**
- ☐ **Family Violence Petition**
- ☐ **Modification**
  - ☐ **Custody/Parenting Time/Visitation**
- ☐ **Paternity/Legitimation**
- ☐ **Support – IV-D**
- ☐ **Support – Private (non-IV-D)**
- ☐ **Other Domestic Relations**

☐ Check if the action is related to another action pending or previously pending in this court involving some or all of the same: parties, subject matter, or factual issues. If so, provide a case number for each.

_____          _____
**Case Number**          **Case Number**

☑ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in OCGA § 9-11-7.1.

☐ Is a foreign language or sign-language interpreter needed in this case? If so, provide the language(s) required.

_____ **Language(s) Required**

☐ Do you or your client need any disability accommodations? If so, please desc[...] [...]equest.

**EXHIBIT**

**D-1**

Version 1.1.20

Fulton County Superior Cou
***EFILED***L\
Date: 1/11/2023 4:48 PI
Cathelene Robinson, Cler

# IN THE SUPERIOR COURT OF FULTON COUNTY, GEORGIA
### 136 PRYOR STREET, ROOM C-103, ATLANTA, GEORGIA 30303
## SUMMONS

| | |
|---|---|
| DONALD DIXON, individually and as Assignee of | ) Case    2023CV374797 |
| | ) No.: |
| Girls Galore, Inc. d/b/a Allure Gentlemen's Club | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) |
| UNITED SPECIALTY INSURANCE COMPANY | ) |
| | ) |
| | ) |
| **Defendant** | ) |
| | ) |
| | ) |
| | ) |

TO THE ABOVE NAMED DEFENDANT(S):

You are hereby summoned and required to file electronically with the Clerk of said Court at https://efilega.tylerhost.net/ofsweb (unless you are exempt from filing electronically) and serve upon plaintiff's attorney, whose name and address is:

Richard E. Dolder, Jr.
352 Sandy Springs Circle
Atlanta, GA 30328

An answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service; unless proof of service of this complaint is not filed within five (5) business days of such service. Then time to answer shall not commence until such proof of service has been filed. **IF YOU FAIL TO DO SO, JUDGMENT BY DEFAULT WILL BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

This_____1/11/2023_____day of_____, 20 _____

Honorable Cathelene "Tina" Robinson
Clerk of Superior Court
By_____
                Deputy Clerk

To defendant upon whom this petition is served:
This copy of complaint and summons was served upon you _____, 20_____

                Deputy Sherriff

Instructions: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum is used

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| **DONALD DIXON, individually and as** | ) | |
| **Assignee of Girls Galore, Inc. d/b/a** | ) | |
| **Allure Gentlemen's Club,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action File** |
| **v.** | ) | **No. _____** |
| | ) | |
| **UNITED SPECIALTY INSURANCE** | ) | |
| **COMPANY,** | ) | **DEMAND FOR JURY TRIAL** |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

Donald Dixon, individually and as assignee of Girls Galore, Inc. d/b/a Allure

Gentlemen's Club files his Complaint as follows:

## PARTIES, VENUE AND JURISDICTION

1.

Donald Dixon is a natural person and a Georgia resident.

2.

United Specialty Insurance Company ("USIC") is a property and casualty

insurance company doing business in Fulton County.

3.

USIC's agent for service of process is C T Corporation System, 289 S.

Culver St., Lawrenceville, GA 30046.

4.

USIC was properly served with process in this action.

5.

One or more of the causes of action alleged below arose in Fulton County. Venue in this Court is proper.

## FACTUAL ALLEGATIONS

6.

On September 19, 2020, Donald Dixon ("Mr. Dixon") was a business invitee at Allure Gentlemen's Club located at 2284 Cheshire Bridge Road, NE, Atlanta, GA 30324.  The establishment was owned and operated by Girls Galore, Inc., d/b/a Allure Gentlemen's Club ("GGI").

7.

GGI negligently allowed Mr. Dixon to be the victim of assault and battery with a firearm on its premises, resulting in a bullet being lodged in Mr. Dixon's back near his spine.

8.

Mr. Dixon underwent surgery and experienced pain and suffering because of the assault and battery.  Following surgery, Mr. Dixon was not able to go to work or perform normal hygiene functions or daily chores around his home.

9.

GGI was insured by United Specialty Insurance Company ("USIC") under Policy No. LMH00001144-00, with an effective date of August 31, 2020, to August 31, 2021.  A true and correct copy of the policy (with redactions) is attached as Exhibit A.

10.

Counsel for Mr. Dixon advised USIC of the representation and attempted to settle Mr. Dixon claims prior to filing a lawsuit, but USIC did not engage in settlement negotiations.

11.

His attempts to negotiate with USIC having failed, Mr. Dixon filed on January 21, 2022, *Donald Dixon v. Girls Galore, Inc. d/b/a Allure Gentlemen's Club.,* State Court of Fulton County, Georgia, Civil Action No. 22EV000458 ("Underlying Lawsuit").  A true and correct copy of the complaint filed in the Underlying Lawsuit is attached as Exhibit B.

12.

GGI tendered the defense of the Underlying Lawsuit to USIC.

13.

USIC received timely notice of the Underlying Lawsuit.

14.

The allegations in the Underlying Lawsuit triggered potential or arguable coverage under the Policy, triggering USIC's duty to defend.

15.

On February 23, 2022, USIC unequivocally denied coverage and refused to defend the Underlying Lawsuit. A true and correct copy of the denial letter is attached as Exhibit C.

16.

USIC waived or is otherwise estopped from asserting any reason to deny coverage other than those reasons stated in the denial letter attached as Exhibit C.

17.

USIC breached its duty to defend GGI, causing GGI to go into default.

18.

On June 9, 2022, following a damages hearing, a default judgment against GGI for $1,150,264 was entered in the Underlying Lawsuit ("Judgment"). A true and correct copy of the Judgment is attached as Exhibit D.

19.

The Judgment is subject to post-judgment interest of seven percent (7%).

20.

On October 20, 2022, counsel for Mr. Dixon sent to USIC a time-limited offer to settle all claims against GGI and to satisfy the Judgment in full for payment of the applicable policy limits ("Offer"). A true and correct copy of the Offer is attached as Exhibit E.

21.

The Offer was capable of acceptance by USIC.

22.

The Offer was a reasonable opportunity to settle the claims against GGI for an amount within the applicable policy limits.

23.

USIC did not respond to the Offer within the time limit.

24.

USIC rejected the Offer.

25.

GGI assigned to Mr. Dixon its claims against USIC. A true and correct copy of the assignment is attached as Exhibit F.

26.

GGI complied with all conditions precedent to coverage under the Policy with respect to the claim that was the subject of the Underlying Lawsuit.

## COUNT 1
## BREACH OF DUTY TO DEFEND

### 27.

Mr. Dixon incorporates and realleges the allegation in paragraphs 1-26 of this complaint as if fully set forth herein.

### 28.

Under the Policy, USIC had a contractual duty to defend GGI in the Underlying Lawsuit.

### 29.

GGI's default and the resulting Judgment against it arise naturally and according to the usual course of things from an insurer's breach of the duty to defend its insured.  The parties to an insurance contract would contemplate a default judgment and resulting money judgment to be probable results of the breach of the duty to defend.

### 30.

But for USIC's failure to defend, there would have been no judgment against GGI.  In the alternative, but for USIC's failure to defend, the Judgment against GGI would have been for a smaller amount. In addition or in the alternative, but for USIC's failure to defend, less than 100 percent of liability would have been apportioned to GGI in the Underlying Lawsuit.

31.

Because of its breaches, USIC is liable for the full amount of the Judgment and all post-judgment interest and other damages, including nominal damages.

## COUNT 2
## BREACH OF DUTY TO PAY

32.

Mr. Dixon incorporates and realleges paragraphs 1-26 as if fully set forth herein.

33.

The Policy provides for a duty to indemnify judgments within certain limits.

34.

Upon entry of the Judgment, USIC's contractual duty to indemnify was triggered for an amount within the applicable limits.

35.

USIC has failed to pay its applicable Policy limits toward a partial satisfaction of Judgment, breaching the insurance contract.

## COUNT 3
## NEGLIGENT OR BAD-FAITH FAILURE TO SETTLE
## UNDER THE COMMON LAW

36.

Mr. Dixon incorporates and realleges the allegations in paragraphs 1-26 of this complaint as if fully set forth herein.

7

37.

Upon receiving notice of the claim, USIC had a duty to investigate whether there was liability coverage for GGI and the extent of potential legal liability for damages to which GGI was exposed because of Mr. Dixon's claims.

38.

USIC had reasonable opportunities to settle the claims against GGI within the applicable policy limits.

39.

At least one opportunity to settle was after the Judgment had been entered, at which time insurers have a heightened duty to accept reasonable opportunities to settle within policy limits.

40.

USIC unreasonably refused to settle the claims against GGI within the applicable policy limits.

41.

USIC breached its duties by failing to adequately investigate and evaluate the claims against GGI, which failure to investigate and evaluate contributed to USIC's failure to accept reasonable opportunities to settle the claims against GGI within policy limits.

42.

USIC failed to treat GGI's interests equal to its own interests by gambling with GGI's financial interests, by failing to adequately investigate and by choosing to not settle a claim where its insured was at fault and exposed to damages.

43.

USIC breached duties to its insured, failed to act as a reasonably prudent liability insurer, and negligently and/or in bad faith and with a specific intent to injure failed to settle the claims.

44.

In addition, or in the alternative, USIC's negligent or bad faith failure to settle was caused by its failure to hire and retain competent claims professionals and by its failure to train, supervise, provide time and resources to, or otherwise manage its claims professionals as would a reasonably prudent insurer that was attempting to or desired to treat its insured's interests equal to its own interests. All of these actions were taken with the specific intent to save money for itself while exposing its insureds to legal liability in excess of policy limits.

45.

As a proximate result of these breaches by USIC, the Judgment was ultimately entered against GGI.  USIC is liable for the full amount of the unpaid judgment, plus post-judgment interest and other damages.

## COUNT 4
## JUDGMENT CREDITORS' DIRECT ACTION
## AGAINST JUDGMENT DEBTOR'S INSURANCE COMPANY

46.

Mr. Dixon incorporates and realleges the allegations in paragraphs 1-26 of this complaint as if fully set forth herein.

47.

The Judgment fixes the liability of USIC's insured, allowing Mr. Dixon to maintain an action directly against USIC for the proceeds of the Policy. *Smith v. GEICO*, 179 Ga. App. 654 (1986).

48.

Under Georgia law, "where an injured party obtains an unsatisfied judgment against a party who has insurance covering the injuries – so that the judgment fixes the liability of the insured party to the injured party – the injured party may bring an action directly against the insurer to satisfy the judgment from the available insurance proceeds." *State Farm v. Bauman*, 313 Ga. App. 771, 771 (2012).

49.

USIC is required to pay to Mr. Dixon all amounts due and owing under the terms of the Policy in partial satisfaction of the Judgment.

10

## COUNT 5
## CLAIM FOR ATTORNEYS' FEES AND EXPENSES OF LITIGATION
## UNDER O.C.G.A. § 13-6-11

50.

Mr. Dixon incorporates and realleges the allegations in paragraphs 1-49 of this complaint as if fully set forth herein.

51.

USIC's actions and omissions constitute bad faith, stubborn litigiousness, and have caused Mr. Dixon unnecessary trouble and expense within the meaning of O.C.G.A. § 13-6-11, entitling Mr. Dixon to attorneys' fees and other expenses of litigation in this lawsuit.

## DEMAND FOR JURY TRIAL

Mr. Dixon hereby demands a trial by jury for each and every claim and defense for which there is a right to a jury.

**WHEREFORE**, Mr. Dixon prays for judgment in his favor and against USIC for the following:

A. That he have a trial by jury;

B. That he have and recover the following:

    1. Special damages in the principal amount of the Judgment;

    2. All post-judgment interest accruing on the Judgment;

    3. Further special damages;

11

4.  General damages in an amount to be determined by the enlightened

conscious of a fair and impartial jury;

5.  Nominal damages for each and every count of this complaint;

6.  Pre-judgment interest; and

7.  Other and further relief as the Court may deem just and proper.

Respectfully submitted on January 10, 2023.

*/s/ Richard E. Dolder*
James (Jay) Sadd
Georgia Bar No. 622010
Richard E. Dolder, Jr.
Georgia Bar No. 220237
**SLAPPEY & SADD**
352 Sandy Springs Circle
Atlanta, Georgia 30328
(404) 255-6677 (telephone).
jay@lawyersatlanta.com
rich@lawyersatlanta.com
*Attorneys for Mr. Dixon*



United Specialty Insurance Company

PROGRAM ADMINISTRATOR

Entertainment Risk
6300 N Sagewood Drive
Suite H-251
Park City, UT 84098

General Inquiry: info@entertainmentrisk.com
Claim Reporting: claims@entertainmentrisk.com
844-368-7475

**THIS CONTRACT IS REGISTERED AND DELIVERED AS A SURPLUS LINE COVERAGE UNDER THE SURPLUS LINE INSURANCE LAW, O.C.G.A CHAPTER 33-5.**

In the event you need additional information, claim handling or a general inquiry, please call your local independent agent or the Program Administrator listed above.

> **EXHIBIT**
> **A**

www.entertainmentrisk.com
6300 N. Sagewood Dr · Suite H-251 · Park City UT 84098

ER PC GA 03 20

POLICY NUMBER: LMH00001144-00            **Form: ER CPD 07 17**

# COMMON POLICY DECLARATIONS

United Specialty Insurance Company
C/O Entertainment Risk
6300 N. Sagewood Dr, Suite H-251
Park City UT 84098
844-368-7475

Fallaize Insurance Agency, Inc.
754 Holcomb Bridge Rd
Norcross, GA 30071
770-242-8842

NAMED INSURED:    Girls Galore, Inc. DBA Allure Gentlemen's Club

MAILING ADDRESS:    2284 Cheshire Bridge Rd. NE, Atlanta, GA 30324

POLICY PERIOD:   FROM 08-31-2020          TO 08-31-2021          AT 12:01 A.M. STANDARD

| LOCATION OF BUSINESS: | SEE FORM: ER 10 34 04 14 |
|---|---|
| BUSINESS DESCRIPTION: | Exotic Club |

THE NAMED INSURED IS A: Other

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

**THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.**

| | PREMIUM |
|---|---|
| COMMERCIAL GENERAL LIABILITY COVERAGE PART | $ |
| LIQUOR LIABILITY COVERAGE PART | $ |
| COMMERCIAL PROPERTY COVERAGE PART | $ |
| TERRORISM RISK INSURANCE ACT COVERAGE | $ |
| POLICY FEE | $ |
| INSPECTION FEE | $ |
| SURPLUS LINES TAX | $ |
| SURPLUS LINES ASSOCIATION FEE | $ |
| **TOTAL ADVANCE PREMIUM:** | $ |

Premium shown is payable: AT INCEPTION

| FORMS APPLICABLE TO ALL COVERAGE PARTS: | |
|---|---|
| **REFER TO FORM: ER SCF 04 14** | |

THESE DECLARATIONS TOGETHER WITH THE COVERAGE PART DECLARATIONS, THE COMMON POLICY CONDITIONS, COVERAGE FORMS AND ANY ENDORSEMENTS COMPLETE THE ABOVE NUMBERED POLICY.

| Countersigned: | By: |
|---|---|
| (Date) | (Authorized Representative) |

**NOTE**

OFFICERS' FACSIMILE SIGNATURES MAY BE INSERTED HERE, ON THE POLICY COVER OR ELSEWHERE AT THE COMPANY'S OPTION.

POLICY NUMBER: LMH00001144-00                                      **ER SCF 04 14**

## Common Policy Forms

| ER PC GA 03 20 | Policy Cover Page-GA |
|---|---|
| ER CPD 07 17 | Common Policy Declarations |
| ER SCF 04 14 | Schedule of Common Forms |
| ER IL 01 05 20 | Common Policy Conditions |
| CG 24 02 12 04 | Binding Arbitration |
| ER 10 03 04 14 | Amusement Devices Exclusion |
| ER 10 05 10 15 | Assault or Battery Exclusion |
| ER 10 06 04 14 | Athletic Participants Exclusion |
| ER 10 19 04 14 | Punitive Damages Exclusion |
| ER 10 34 04 14 | Limitation of Coverage-Designated Premises or Project |
| ER 10 35 04 14 | Classification Limitation |
| ER IL 04 03 20 | In Witness Clause |
| ER IL 06 07 14 | Non-Stacking of Limits Endorsement |
| IL 00 21 09 08 | Nuclear Energy Liability Exclusion Endorsement (Broad Form) |
| SNC IL TOES E 07 19 | Trade or Economic Sanctions |
| SNC IL OFAC N 07 19 | U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS |
| ER IL 02 03 20 | Claims Reporting |
| CG 21 73 01 15 | Exclusion of Certified Acts of Terrorism |
| ER 10 02 04 14 | Injury to Performers Exclusion |
| ER 10 14 04 14 | Designated Promotions Exclusion |
| ER 10 17 04 14 | Projectiles Exclusion |
| ER 10 20 04 16 | Absolute Weapons Exclusion |
| ER 10 22 08 18 | Cyber Liability Exclusion |
| ER 10 29 04 14 | Third Party or Contracted Security Exclusion |
| ER 10 31 04 14 | Stunt Activity Exclusion |
| ER 10 33 12 18 | Deductible Liability Insurance |
| ER AI 02 04 14 | Additional Insured-Blanket Endorsement |

Form: ER IL 01 05 20

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# COMMON POLICY CONDITIONS

**All Coverage Parts included in this policy are subject to the following conditions:**

**A. Cancellation and Non-Renewal**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel or non-renew this policy by issuing written notice of cancellation or non-renewal in accordance with the excess or surplus lines laws of the state in which this policy is delivered.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded.  The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification under state or municipal statutes, ordinances or regulation of boilers, pressure vessels or elevators.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

5. You are required to comply with any written recommendations for any "discrepancy" described and detailed in a Compliance Safety Accountability Letter ("CSA") that is delivered to you, within the requested timespan.

    **a.** For the purpose of this insurance, "discrepancy" shall mean any on premises conflict, variation or disparity between law, regulation, standard, ordinance, rule, guideline, code or otherwise, governing or adopted for the designated premises and the design, construction, maintenance, operation or use of the designated premises of the insured which creates a material change in risk.

6. We have the right to suspend coverage afforded to you under this Policy specifically for a designated "discrepancy" on the CSA delivered to you, for your failure to comply within the requested timespan.

    **a.** A notice of suspension, accompanied with the exclusion that has been endorsed onto the Policy, will be mailed to the address found on the Declarations page of the Policy.

    **b.** The notice of suspension will include:

        i. The date suspension began;

        ii. A description of "discrepancy" coverage has been suspended for; and

        iii. Copies of all CSA's delivered to you.

7. Suspended coverage for a "discrepancy", may be reinstated upon compliance verification by us. A reinstatement notice, accompanied with the applicable endorsement removing the exclusion from the Policy, will be delivered to you.

## E. Premiums

The first Named Insured shown in the Declarations:

**1.** Is responsible for the payment of all premiums; and

**2.** Will be the payee for any return premiums we pay; and

**3.** Is responsible for all deductibles or self-insured retention amounts.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

## G. Premium Basis

One or more of the following symbols may be entered under the Premium Basis/Base column of the Coverage Part Declarations. These symbols designate the basis used for determining your premium. The following is a definition of these symbols when used as a premium basis.

Symbol   Definition

a    "Admissions" means:

    The total number of persons, other than employees of the Named Insured, admitted to the event insured or to events conducted on the premises whether on paid admissions, tickets, complimentary tickets or passes. The rates apply per 1,000 admissions.

b    "Area" means:

    The total number of square feet of floor space at the insured premises, computed as follows:

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

1. For entire buildings, by multiplying the product of the horizontal dimensions of the outside of the outer building walls by the number of floors, including basements but do not use the area of the following:
   a. Courts and mezzanine types of floor openings.
   b. Portions of basements or floors where 50% or more of the area is used for shop or storage for building maintenance, dwelling by building maintenance employees, heating units, power plants or air-conditioning equipment.

2. For tenants, determine the area they occupy in the same manner as for the entire buildings.

3. The rates apply per 1,000 square feet of area.

c    "Total Cost" means:
     The total cost of all work let or sublet in connection with each specific project including:
     1. The cost of all labor, materials and equipment furnished, used or delivered for use in the execution of the work; however, do not include the cost of finished equipment installed but not furnished by the subcontractor if the subcontractor does no other work on or in connection with such equipment; and

     2. All fees, bonuses or commissions made, paid or due.

     3. The rates apply per ▮▮▮▮ of total cost.

e    "Each" means:
     A quantity comprising one unit of exposure as described in the classification description.

p    "Payroll" means:
     1. Remuneration which including money or substitutes for money.

     2. Payroll includes:
     a. Commissions, bonuses, pay for holidays, vacations or periods of illness;
     b. Extra pay for overtime in accordance with the manuals in use by us;
     c. Payments by an employer of amounts otherwise required by law to be paid by employees to statutory insurance or pension plans, such as the Federal Social Security Act;
     d. Payments to employees on any basis other than time worked, such as piecework, profit sharing or incentive plans;
     e. Payment or allowance for hand tools or power tools used by hand provided by employees and used in their work or operations for the insured;
     f. The rental value of an apartment or a house provided for an employee based on comparable accommodations;
     g. Value of meals and lodging other than an apartment or house received by employees as part of their pay;
     h. The value of store certificates, merchandise, credits or any other substitute for money received by employees as part of their pay;
     i. The payroll of mobile equipment operators and their helpers, whether or not the operators are designated or licensed to operate automobiles. If the operators and their helpers are provided to the insured along with equipment hired under contract and their actual payroll is not known, use 1/3 of the total amount paid out by the insured for the hire of the equipment;
     j. The payroll of executive officers and individual insureds and co-partners in accordance with the manuals in use by us;

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

k. Fees paid to employment agencies for temporary personnel provided to the insured; and

l. 90% of fees to personnel leasing firms for workers provided to the insured.

3. Payroll does not include:
   a. Tips and other gratuities received by employees;
   b. Payments by an employer to group insurance or group pension plans for employees in accordance with the manuals in use by us;
   c. The value of special rewards for individual invention or discovery;
   d. Dismissal or severance payments except for time worked or accrued vacation;
   e. The payroll of clerical office employees;
   f. The payroll of salespersons, collectors or messengers who work principally away from the insured's premises. Salespersons, collectors or messengers are those employees engaged principally in any such duties away from the premises of the employer;

   This term does not apply to any employee whose duties include the delivery of any merchandise handled, treated or sold.
   g. The payroll of drivers and their helpers if their principal duties are to work on or in connection with automobiles; and
   h. The payroll of aircraft pilots or co-pilots if their principal duties are to work on or in connection with aircraft in either capacity.

4. The rates apply per ▮▮▮▮ of payroll.

s. "Gross Sales" means:
   1. The gross amount charged by the Named Insured, concessionaires of the Named Insured or by others trading under the insured's name for:
      a. All goods or products, sold or distributed;
      b. Operations performed during the policy period;
      c. Rentals; and
      d. Dues or fees.

   2. Inclusions

      The following items shall not be deducted from gross sales
      a. Foreign exchange discounts;
      b. Freight allowance to customers;
      c. Total sales of consigned goods and warehouse receipts;
      d. Trade or cash discounts;
      e. Bad debts; and
      f. Repossession of items sold on installments (amount actually collected).

   3. Exclusions

      The following items shall be deducted from gross sales:
      a. Sales or excise taxes which are collected and submitted to a governmental division;
      b. Credits for repossessed merchandise and products returned. Allowances for damages and spoiled goods;
      c. Finance charges for items sold on installments;
      d. Freight charges on sales if freight is charged as a separate item on customers invoice; and
      e. Royalty income from patent rights or copyrights which are not product sales.

   4. The rates apply per ▮▮▮▮ of gross sales.

## H. Calculation of Premium

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

### I. Minimum Earned Premium

This policy is subject to a "minimum earned premium". "Minimum earned premium" means the total policy premium.

Audits will not reduce the "minimum earned premium". The due date for audit premiums is the date shown as the due date on the bill. If after our request you fail to supply us with the necessary information to accurately complete an audit you will be charged an assumed audit rate of 25% of the "minimum earned premium". Additional premium developed by audit is deemed 100% earned.

If you fail to pay premium charged on a prior policy we issued and payment was due during the current renewal policy term, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least ten (10) days before the effective date of cancellation.

### J. Cancellation and Minimum Earned Premium

1. If you cancel this policy, the return premium will be 90% of the pro rata balance of any remaining unearned premium but no less than 25% of the "minimum earned premium".

2. If we cancel the policy for any reason, other than for non-payment of premium, the "minimum earned premium" shall not apply. We will return to you the pro rata amount of the unearned premium.

### K. Materiality of Representations Made

The information provided in the application, submission and underwriting process concerning the nature of the operation of your business is considered material to the process of underwriting, pricing and the offer of this policy. This policy would not be offered but for this information related to the nature of your business operations.

We may deny coverage for any liability arising out of a material change in the operation of your business from the information provided in the application and submission process, unless we are advised in writing, prior to any planned change in the nature of the operation of your business. Coverage shall only apply if we agree to provide coverage for such change in operations and we endorse your policy with the requested changes.

Any and all changes must be reported to us, in writing, no later than 14 (fourteen) calendar days prior to the start date of said changes. Based upon your provision of notice to us with regard to a planned change in the nature of the operation of your business, it may be necessary for us to charge an additional premium in order to provide coverage. If we agree to provide coverage based upon the payment of additional premium, said coverage will not be provided until receipt of the premium by us.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**COMMERCIAL GENERAL LIABILITY**
**CG 24 02 12 04**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# BINDING ARBITRATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

If we and the insured do not agree whether coverage is provided under this Coverage Part for a claim made against the insured, then either party may make a written demand for arbitration.

When this demand is made, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will:

1. Pay the expenses it incurs; and

2. Bear the expenses of the third arbitrator equally.

Unless both parties agree otherwise, arbitration will take place in the county or parish in which the address shown in the Declarations is located. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

 © ISO Properties, Inc., 2003

Form: ER 10 03 04 14

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMUSEMENT DEVICES EXCLUSION

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**LIQUOR LIABILITY COVERAGE PART**

This insurance does not apply to any loss, claim, "suit", "bodily injury", "property damage", "injury" or "personal injury and advertising injury", actually or allegedly resulting directly or indirectly from the ownership, maintenance, instruction, supervision or use of "amusement devices".

For the purpose of this insurance, "amusement devices" shall include, but not be limited to:

(a) Any device or apparatus which jostles, bucks or in any similar fashion, moves, or is intended to move, or;

(b) Any mechanical riding devices, including but not limited to, a mechanical bull, steer, shark, surf board, skate board or horse, or;

(c) Any device which requires the user to punch, kick, or strike the device, or;

(d) Dunk tanks, Climbing walls, Trampolines, Inflatables, Playground equipment.

All other terms and conditions shall remain unchanged.

Form: ER 10 05 10 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ASSAULT OR BATTERY EXCLUSION

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**LIQUOR LIABILITY COVERAGE PART**

This insurance does not apply to, and we have no duty to defend or indemnify any insured or any other person against, any loss, claim or "suit" for "bodily injury", "property damage", "injury" or "personal and advertising injury", including claims or "suits" for negligence, directly or indirectly, actually or allegedly, arising out of or related to any: assault, battery, molestation, abuse, harmful or offensive contact, false arrest, wrongful detention, false imprisonment, malicious prosecution and/or threat, whether committed by any insured, patron, agent, employee, or any other individual.

This exclusion applies regardless of fault or intent.

For purposes of this exclusion, negligence includes but is not limited to allegations or claims for: negligent hiring, negligent employment, negligent training, negligent supervision, the failure to intervene, the failure to render aid, the failure to contact law enforcement, the failure to contact emergency medical services or the failure to detain potentially responsible parties.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Page 1 of 1

Form: ER 10 06 04 14

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ATHLETICS OR SPORTS PARTICIPANTS EXCLUSION

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**LIQUOR LIABILITY COVERAGE PART**

This insurance does not apply to "bodily injury", "property damage", "injury" or "personal injury and advertising injury" to any person practicing for or participating in any sports or athletic contest or exhibition.

**Form: ER 10 19 04 14**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# PUNITIVE DAMAGES EXCLUSION

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**LIQUOR LIABILITY COVERAGE PART**

This insurance does not apply to:

1. Punitive or exemplary damages;

2. Fines;

3. Penalties;

4. Treble damages; or

5. Multiplied or multiple damages;

imposed upon any "insured" including any defense or legal expenses incurred as a result of items 1., 2., 3., 4. or 5., above.

Form: ER 10 34 04 14

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIMITATION OF COVERAGE-DESIGNATED PREMISES OR PROJECT

**This endorsement modifies insurance provided under the following:**
  **GENERAL LIABILITY COVERAGE PART**
  **LIQUOR LIABILITY COVERAGE PART**

**SCHEDULE**

| |
|---|
| **Premises:** |
| 1. 2284 Cheshire Bridge Rd. NE., Atlanta, GA 30324 |
| |
| **Project:** |
| |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance applies only to "bodily injury", "property damage", "personal and advertising injury" and "injury" arising out of:

1. The ownership, maintenance or use of the premises shown in the SCHEDULE and operations necessary or incidental to those premises; or

2. The project shown in the SCHEDULE.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Page 1 of 1

**Form: ER 10 35 04 14**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CLASSIFICATION LIMITATION

**This endorsement modifies insurance provided under all coverage parts.**

This insurance is specifically limited to those classification codes listed in the policy. No coverage is provided for, and this insurance does not apply to, any classification code or operation performed by any Named Insured not specifically listed in the Declarations of this policy.

**Form: ER IL 04 03 20**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# IN WITNESS CLAUSE

It is hereby agreed and understood that the following in Witness Clause supersedes any and all other in Witness clauses in this policy.

In Witness Whereof, the Company issuing this policy has caused this policy to be signed by its authorized officers, but this policy shall not be valid unless countersigned by an authorized representative of the Company, where required.

For:
**United Specialty Insurance Company**

President

Secretary

**FORM: ER IL 06 07 14**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# NON-STACKING OF LIMITS ENDORSEMENT
## TWO OR MORE COVERAGE FORMS, COVERAGE PARTS OR POLICIES ISSUED BY US

**This endorsement modifies insurance provided under all coverage forms or coverage parts.**

If any Coverage Form, Coverage Part or policy issued to you by us or any company affiliated with us apply to the same claim for damages, the maximum Limit of Insurance for Liability Coverage under all of the Coverage Forms, Coverage Parts or policies shall not exceed the highest applicable per occurrence or per claim Limit of Insurance available under any one Coverage Form, Coverage Part or policy.

This endorsement does not apply to any Coverage Form, Coverage Part, or policy issued by us or an affiliated company specifically to apply as excess insurance over this policy.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**Page 1 of 1**

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
**(Broad Form)**

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   **A.** Under any Liability Coverage, to "bodily injury" or "property damage":

   (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   **B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   **C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

   (1) The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

   (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

   (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "special nuclear material" or "by-product material".

© ISO Properties, Inc., 2007 **Page 1 of 2**  ☐

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

**INTERLINE**

# UNITED SPECIALTY INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## TRADE OR ECONOMIC SANCTIONS

The following is added to this policy:

**Trade Or Economic Sanctions**

This insurance does not provide any coverage, and we (the Company) shall not make payment of any claim or provide any benefit hereunder, to the extent that the provision of such coverage, payment of such claim or provision of such benefit would expose us (the Company) to a violation of any applicable trade or economic sanctions, laws or regulations, including but not limited, to those administered and enforced by the United States Treasury Department's Office of Foreign Assets Control (OFAC).

All other terms and conditions remain unchanged.

SNC-IL-0719-TOES-E

**INTERLINE**

# UNITED SPECIALTY INSURANCE COMPANY

## U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

SNC IL 0719 OFAC N

**Form: ER IL 02 03 20**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CLAIMS REPORTING

All claims are to be reported to:

**Entertainment Risk**
6300 N Sagewood Dr, Suite H-251
Park City UT 84098
(844) 368-7475
claims@entertainmentrisk.com

COMMERCIAL GENERAL LIABILITY
CG 21 73 01 15

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism".

**B.** The following definitions are added:

1. For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

2. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

   **a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

   **b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

 © Insurance Services Office, Inc., 2014

Form: ER 10 02 04 14

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# INJURY TO PERFORMERS EXCLUSION

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**LIQUOR LIABILITY COVERAGE PART**

This insurance does not apply to any loss, claim, "suit", "bodily injury", "property damage", "injury" or "personal and advertising injury" arising directly or indirectly to "performers".

This exclusion applies to "bodily injury", "property damage", "injury" or "personal and advertising injury" which occurs during or out of the preparation, rehearsal, performance or breakdown activities or as a result thereof.  This exclusion applies whether or not the performer receives any form of compensation.

"Performers" means: persons or organizations who are entertainers or talent participating or performing in any concert, dance, show, exhibition, adult entertainment or adult performance of any nature and any staff, employees, agents, family, security or guests of the entertainer or talent.

Form: ER 10 14 04 14

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DESIGNATED PROMOTIONS EXCLUSION

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**LIQUOR LIABILITY COVERAGE PART**

This insurance does not apply to any claim, loss, "suit", "bodily injury", "property damage", "injury" or "personal injury and advertising injury" actually or allegedly arising directly or indirectly from, or resulting in whole or in part out of, or resulting in whole or in part from the use of, failure to use, or is based upon or attributable to:

1. Drinking games, including, but not limited to, beer pong, flip cup, funneling, or any game which may lead to the over consumption of alcohol; or
2. Any event where your employees, agents or patrons voluntarily spray large quantities of liquids into or onto crowds and/or groups of patrons including, but not limited to, champagne wars; or
3. Foam parties, including, but not limited to, the manufacturing and delivering of foam or similar substance into or onto all or a portion of the premises while patrons are present; or
4. The use of liquid nitrogen; or
5. Any beverage which has been ignited prior to consumption.

Form: ER 10 17 04 14

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PROJECTILES EXCLUSION

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**LIQUOR LIABILITY COVERAGE PART**

This insurance does not apply to any claim, loss, "suit", "bodily injury", "property damage", "injury" or "personal and advertising injury", actually or allegedly resulting directly or indirectly from any person, projectile or object propelled into or onto a crowd by any insured, an agent of any insured, or a contractor of any insured.

**Form: ER 10 20 04 16**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ABSOLUTE WEAPONS EXCLUSION

**This endorsement modifies insurance provided under the following:**

> **COMMERCIAL GENERAL LIABILITY COVERAGE PART**
> **LIQUOR LIABILITY COVERAGE PART**

This insurance does not apply to any claim, loss, "suit", "bodily injury", "property damage", "injury" or "personal injury and advertising injury", actually or allegedly arising directly or indirectly from, or resulting in whole or in part out of, or resulting in whole or in part from the use of, failure to use, or  based upon or attributable to "weapons".

"Weapons" are: instruments of an offensive or defensive nature which include but are not limited to: firearms, knives, batons, stun guns, mace or pepper spray.

Form: ER 10 22 08 18

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – CYBER LIABILITY

This endorsement modifies and amends insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART

A. This insurance does not apply to any liability arising out of:

> 1. any "bodily injury", "property damage", "personal and advertising injury" or liability arising out of "cyber injury;" or
>
> 2. any loss, cost or expense arising out of any:
>
> > a. request, demand, order or statutory or regulatory requirement that any insured or others; monitor, notify or in any way respond to an actual or alleged "cyber injury;"
> >
> > b. claim or suit by or on behalf of a governmental authority for damages because of monitoring, notifying or in any way responding to a "cyber injury;"
>
> incurred by you or others.

B. The following are added to SECTION V – DEFINITIONS:

> 1. "Cyber injury" means any actual or suspected, intentional or unintentional breach of any data, software or hardware, wherever located, that results in:
>
> > a. loss; destruction; disclosure; disruption; inspection; modification; recording; release; review; or use of "personal information;"
> >
> > b. inability to access any website or any electronic system;
> >
> > c. release, introduction or facilitation of any "malicious code;"
> >
> > d. forensic or investigative expenses;
> >
> > e. extortion or terrorism acts or threats;
> >
> > f. monitoring or notification costs or expenses;
> >
> > g. crisis management or public relations expenses;
> >
> > h. data or system recovery, repair, replacement or restoration expenses; or
> >
> > i. business interruption expenses.
>
> 2. "Malicious code" includes, but is not limited to any virus, Trojan horse, worm, spyware, logic bomb, adware, malware or other similar software program.
>
> 3. "Personal information" means any personal, or personally identifiable, or identifying, information, as defined by federal, state or local laws, statutes or regulations.  "Personal information" includes, but is not limited to, a person or entity's likeness, patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information, birth dates, addresses, social security number, or any other type of non-public information.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

**Form: ER 10 29 04 14**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# THIRD PARTY OR CONTRACTED SECURITY EXCLUSION

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**LIQUOR LIABILITY COVERAGE PART**

A.  This insurance does not apply to any claim, loss, "suit", "bodily injury", "property damage", "injury" or "personal and advertising injury", arising out of or in any way actually or allegedly resulting directly or indirectly from the actions, inactions, operations, errors or omissions of contracted or third party "security", its employees, agents or authorized representatives.

B.  This insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury", arising out of or in any way actually or allegedly resulting directly or indirectly from the hiring, contracting of, supervision, management, training or retention of any contracted or third party "security", its employees, agents or authorized representatives.

C.  As used in this endorsement "security" means anyone responsible for:
    a.  Protection of individuals and/or property from harm, theft or other unlawful activity; or,
    b.  Patron pat down, crowd control, door supervision, removal of patrons for any reason; or,
    c.  Deterrence, observation, and/or detection in order to prevent any unlawful or unauthorized activity.

    "Security" includes but is not limited to: security guards, bouncers, doormen, ID checkers, merchant guards, or hosts.

Form: ER 10 31 04 14

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# STUNT ACTIVITY EXCLUSION

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**LIQUOR LIABILITY COVERAGE PART**

This insurance does not apply to any loss, claim, "suit", "bodily injury", "property damage", "injury" or "personal and advertising injury" arising directly or indirectly or in any way related to "stunt activity".

"Stunt activity" means: any activity, feat or trick requiring special skills, expertise, device or daring.

FORM: ER 10 33 12 18

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DEDUCTIBLE LIABILITY INSURANCE

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART**

### SCHEDULE

| Coverage | Amount of Deductible | |
|---|---|---|
| | Per Claim | Per Occurrence |
| Bodily Injury Liability Deductible | $ | $ |
| Property Damage Liability Deductible | $ | $ |
| Assault or Battery Deductible | $ | $ |
| Liquor Liability Deductible | $ | $ |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

A.  Our obligation under the Bodily Injury Liability, Property Damage Liability, Assault or Battery and Liquor Liability Coverages to pay damages and medical expenses on your behalf applies only to the amount of damages, medical expenses, defense costs, loss adjustment expense or costs in excess of any deductible amounts stated in the SCHEDULE above as applicable to such coverages.

B.  You may select a deductible amount on either a per claim or a per "occurrence" basis. Your selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the SCHEDULE above. The deductible amount stated in the SCHEDULE above applies as follows:

   1.  PER CLAIM BASIS. If the deductible amount indicated in the SCHEDULE above is on a per claim basis, that deductible applies as follows:

      a.  Under Bodily Injury Liability Coverage, including any Assault or Battery Sublimit, to all costs, loss adjustment expenses, defense costs, medical expenses or damages incurred as a result of "bodily injury" to any one person;

      b.  Under Property Damage Liability Coverage, to all costs, loss adjustment expenses, defense costs, or damages incurred as a result of "property damage" to any one person or organization;

      c.  Under Liquor Liability Injury Coverage, to all costs, loss adjustment expenses, defense costs, medical expenses or damages incurred as a result of "injury" to any one person;

If more than one coverage part of this policy applies to any claim, loss or "suit" we will only apply one deductible per person or organization.

If damages and medical expenses are claimed for care, loss of services or death resulting at any time from "bodily injury", a separate deductible amount will be applied to each person making a claim for such damages and medical expenses.

Page 1 of 2

**FORM: ER 10 33 12 18**

    2. PER OCCURRENCE BASIS. If the deductible amount indicated in the Schedule above is on a "per occurrence" basis, that deductible amount applies as follows:

        a. Under Bodily Injury Liability Coverage, including any Assault or Battery Sublimit, to all costs, loss adjustment expenses, defense costs, medical expenses or damages incurred as a result of "bodily injury";

        b. Under Property Damage Liability Coverage, to all costs, loss adjustment expenses, defense costs, or damages incurred as a result of "property damage";

        c. Under Liquor Liability Injury Coverage, to all costs, loss adjustment expenses, defense costs, medical expenses or damages incurred as a result of "injury".

If more than one coverage part of this policy applies to any claim, loss or "suit" we will only apply one deductible per "occurrence".

C. The terms of this insurance, including all conditions, apply irrespective of the application of the deductible amount.

D. We may, at our discretion, pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount that has been paid by us.

Your failure to reimburse us any or all of the deductible within 30 days may result in collection activities. If we initiate collection activities in order to collect the deductible, including litigation, then in addition to the deductible you shall be responsible for a collection fee of 25% of the unpaid deductible, and 100% of any and all other collection expenses, fees, attorney's fees and costs that we incur, plus interest as provided by law.

FORM: ER AI 02 07 20

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – BLANKET ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**LIQUOR LIABILITY COVERAGE PART**

## SCHEDULE

**Name of Person(s) or Organization(s):**

1. Any landlord, owner and manager of premises leased to you and shown in the SCHEDULE on form ER 10 34 04 14, as required by written contract, with respect to its ownership or management of the part of premises leased to you. The foregoing shall not extend to any "occurrence" which takes place after you cease to be a tenant in that premises, or structural alterations, new construction or demolition operations performed by or on behalf of any owner, landlord or manager of the leased premises.

This endorsement only applies to the Person(s) or Organization(s) specifically described in this schedule.

**A. Section II – Who Is An Insured** is amended to include as an insured any person or organization shown in the schedule, whom you are required to add as an additional insured on this policy under a written contract or written agreement;  but  the written contract or written agreement must be:

1. Currently in effect or becoming effective during the term of this policy; and

2. Executed prior to the "bodily injury," "property damage," or "personal and advertising injury".

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and

2. The insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

3. The person or organization is an additional insured solely with respect to liability imposed or sought to be imposed on the person or organization due to the actual or alleged acts or omissions of a Named Insured.  This insurance does not apply to any liability or damages imposed or sought to be imposed on any additional insured due to the actual or alleged acts or omissions of the additional insured, their employee's, agent's or contractor's.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

The most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or

2. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**COMMERCIAL GENERAL LIABILITY**
**ER GLD 07 17**

POLICY NUMBER: LMH00001144-00

# COMMERCIAL GENERAL LIABILITY DECLARATIONS

United Specialty Insurance Company
C/O Entertainment Risk
6300 N. Sagewood Dr, Suite H-251
Park City UT 84098

754 Holcomb Bridge Rd
Norcross, GA 30071
770-242-8842

| NAMED INSURED: | Girls Galore, Inc. DBA Allure Gentlemen's Club |
| MAILING ADDRESS: | 2284 Cheshire Bridge Rd. NE, Atlanta, GA 30324 |

POLICY PERIOD:   FROM 08-31-2020        TO    08-31-2021         AT 12:01 A.M.

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

## LIMITS OF INSURANCE

| | | |
|---|---|---|
| EACH OCCURRENCE LIMIT | $ | |
| DAMAGE TO PREMISES RENTED TO YOU LIMIT | $ | Any one premises |
| MEDICAL EXPENSE LIMIT | $ | Any one person |
| PERSONAL & ADVERTISING INJURY LIMIT | $ | Any one person or organization |
| GENERAL AGGREGATE LIMIT | | $ |
| PRODUCTS/COMPLETED OPERATIONS AGGREGATE LIMIT | | $ |

| LOCATION OF BUSINESS: | SEE FORM: ER 10 34 04 14 |
| BUSINESS DESCRIPTION: | Exotic Club |
| THE NAMED INSURED IS A: Other |

ER GLD 07 17          Includes copyrighted material of Insurance Services Office, Inc.          **Page 1 of 2**
with its permission

| CLASSIFICATION AND PREMIUM | | | | | | | |
|---|---|---|---|---|---|---|---|
| LOC # | CLASSIFICATION | CODE NO. | PREMIUM BASE | RATE | | ADVANCE PREMIUM | |
| | | | | Prem/ Ops | Prod/Comp Ops | Prem/ Ops | Prod/Comp Ops |
| 1 | Nightclubs, Cabarets and Comedy Clubs | 15656 | ▇ | ▇ | ▇ | ▇ | ▇ |
| 1 | Blanket Additional Insured | AI- BLNK | ▍ | ▇ | ▇ | ▇ | ▇ |
| 1 | Private Parking | 46622 | ▇ | ▇ | ▇ | ▇ | ▇ |
| | | | | | | | |
| | | | | | | | |

| | | |
|---|---|---|
| | TOTAL PREMIUM (SUBJECT TO AUDIT) | $ ▇ |
| PREMIUM SHOWN IS PAYABLE: | AT INCEPTION | $ ▇ |

| AUDIT PERIOD (IF APPLICABLE) | ☒ ANNUALLY | ☐ SEMI-AN-NUALLY | ☐ QUARTERLY | ☐ MONTHLY |
|---|---|---|---|---|

---

**FORMS APPLICABLE TO COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**SEE FORM: ER SGLF 04 14**

---

**THESE DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE FORM(S) AND ANY ENDORSEMENT(S) COMPLETE THE ABOVE NUMBERED POLICY.**

| Countersigned: | By: |
|---|---|
| (Date) | (Authorized Representative) |

**NOTE**

OFFICERS' FACSIMILE SIGNATURES MAY BE INSERTED HERE, ON THE POLICY COVER OR ELSEWHERE AT THE COMPANY'S OPTION.

POLICY NUMBER: LMH00001144-00                                      **ER SGLF 04 14**

## General Liability Policy Forms

| | |
|---|---|
| ER GLD 07 17 | Commercial General Liability Declarations |
| ER SGLF 04 14 | Schedule of General Liability Forms |
| ER 01 03 20 | Commercial General Liability Coverage Form |
| CG 21 65 12 04 | Total Pollution Exclusion With A Building Heating, Cooling And Dehumidifying Equipment Exception And A Hostile Fire Exception |
| ER 10 11 04 14 | Cross Suits Exclusion |
| ER 10 18 04 14 | Pyrotechnics and Fireworks Exclusion |
| ER 10 23 04 14 | Injury to Contractors Exclusion |
| ER 10 26 06 16 | Exclusion of Nuclear, Biological, Chemical or Radiological Acts |
| ER 20 05 10 15 | Sublimit Assault or Battery |

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

### COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

  **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    **(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

    **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B.**.

  No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

  If we initially defend an insured ("insured") or pay for an insured's ("insured's") defense but later determine that the claim(s) is (are) not covered under this insurance, we will have the right to reimbursement for the defense costs we have incurred.

The right to reimbursement for the defense costs under this provision will only apply to defense costs we have incurred after we notify you in writing that there may not be coverage, and that we are reserving our rights to terminate the defense and seek reimbursement for defense costs.

  **b.** This insurance applies to "bodily injury" and "property damage" only if:

    **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

    **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

  **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

  **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

    **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

    **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## 2. Exclusions

This insurance does not apply to:

### a. Expected Or Intended Injury

"Bodily injury", "property damage", or "personal and advertising injury" expected or intended from the standpoint of any insured, or any insured's "employees", contractors, or agents.

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol; or

**(c)** Failing to prevent any person who may be under the influence of alcohol from driving;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1)**, **(2)** or **(3)** above.

An insured who permits any person to bring any alcoholic beverage on to their premises, for consumption on the premises, whether or not a fee is charged for such activity, will also be considered selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

Includes copyrighted material of Insurance Services Office, Inc. with its permission. **ER 01 03 20**

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

  (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

    (i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

    (ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

    (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

  (b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

  (c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

    (i) Any insured; or

    (ii) Any person or organization for whom you may be legally responsible; or

  (d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

    (i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

    (ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

    (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

  (e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

  **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

  **(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

Any claim, loss, "suit", "bodily injury" or "property damage" arising directly or indirectly out of the ownership, operation, maintenance, or use of an "auto", aircraft or watercraft.

**h. Mobile Equipment**

Any claim, loss, "suit", "bodily injury" or "property damage" arising directly or indirectly out of the ownership, operation, maintenance, or use of "mobile equipment".

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**r. Discrimination**

Any claim, loss, "suit", "bodily injury", or "property damage", arising directly or indirectly from:

**(1)** the actual or alleged discrimination of any person or persons based upon, but not limited to, color, creed, gender, race, natural origin, age, disability, handicap, illness, religion, or sexual preference; or

**(2)** the actual or alleged failure to comply with the Americans with Disabilities Act or any other similar federal, state or municipal laws.

**s. Employment Related Practices**

"Bodily injury" to:

**(1)** A person arising out of any:

(a)Refusal to employ that person;

(b)Termination of that person's employment; or

(c)Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; or

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**t. Lead**

Any loss, claim, "suit", "bodily injury", or "property damage" arising directly or indirectly out of lead.

This exclusion applies to past, present or future claims arising in whole or in part, either directly or indirectly, out of the manufacture, distribution, sale, resale, re-branding, installation, inhalation of, repair, removal, encapsulation, abatement, replacement or handling of, exposure to, ingestion of, or testing for, lead whether or not the lead is or was at any time airborne as a particle, contained in a product, carried on clothing, transmitted in any fashion or found in any form whatsoever.

**u. Asbestos**

Any loss, claim or "suit" for "bodily injury", or "property damage", directly or indirectly out of asbestos in any manner or form, including without limitation:

**(1)** any cost or expense relating to investigation and/or defense of any loss, claim, "suit" or other proceeding; or

**(2)** any cost or expense relating to request, demand or order that any insured or others test for, monitor, remediate, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to or assess the presence of or the effects of asbestos; and/or

**(3)** any fine, penalty or assessment.

**v. Fungi or Bacteria**

Any loss, claim or "suit" for "bodily injury" or "property damage", which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

We have no obligation to defend or indemnify any insured for any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**w. Silica or Silica Related Dust**

**(1)** "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

**(2)** "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**(3)** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**x. Securities**

Any claim, loss, "suit", "bodily injury" or "property damage" based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged violation of:

**(1)** The Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Company Act of 1940, any other federal law, rule or regulation with respect to the regulation of securities, any rules or regulations of the United States Securities and Exchange Commission, or any amendment of such laws, rules or regulations; or

**(2)** Any state securities or "Blue Sky" laws or rules or regulations or any amendment of such laws, rules or regulations; or

**(3)** Any provision of the common law imposing liability in connection with the offer, sale or purchase of securities.

 Includes copyrighted material of Insurance Services Office, Inc. with its permission.   **ER 01 03 20**

**y. Professional Services**

Any claim, loss, "suit", "bodily injury" or "property damage" arising out of the rendering of, or failure to render, any service or advice relating to "professional services".

**z. Communicable Disease**

Any loss, claim, "suit", "bodily injury" or "property damage" arising directly or indirectly out of actual or alleged transmission of a communicable disease.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

(1) Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

(2) Testing for a communicable disease;

(3) Failure to prevent the spread of the disease; or

(4) Failure to report the disease to authorities.

**aa. Chromated Copper Arsenate**

"Bodily injury", "property damage", "personal injury" or "advertising injury" arising out of or caused directly or indirectly, in whole or in part, by the use or existence of:

(1) Chromated copper arsenate; or

(2) Any product or material which contains chromated copper arsenate; or

(3) Any product or material to which chromated copper arsenate has been applied by any party (including, but not limited to, any manufacturer, processor or distributor of such products or materials).

**COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

If we initially defend an insured ("insured") or pay for an insured's ("insured's") defense but later determine that the claim(s) is (are) not covered under this insurance, we will have the right to reimbursement for the defense costs we have incurred.

The right to reimbursement for the defense costs under this provision will only apply to defense costs we have incurred after we notify you in writing that there may not be coverage, and that we are reserving our rights to terminate the defense and seek reimbursement for defense costs.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" actually or allegedly caused by or at the direction of the insured, any insured's "employees", contractors, or agents with the actual or alleged knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

(1) "Personal and advertising injury" arising out of the actual or alleged infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

(2) "Personal and advertising injury" arising out of the actual or alleged use of another's images, photographs, likenesses or personal attributes whether altered or unaltered.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of web sites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **15.a., b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**q. Employment Related Practices**

"Personal and advertising injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**r. Lead**

"Personal and advertising injury" arising directly or indirectly out of lead.

This exclusion applies to past, present or future claims arising in whole or in part, either directly or indirectly, out of the manufacture, distribution, sale, resale, re-branding, installation, inhalation of, repair, removal, encapsulation, abatement, replacement or handling of, exposure to, ingestion of, or testing for, lead whether or not the lead is or was at any time airborne as a particle, contained in a product, carried on clothing, transmitted in any fashion or found in any form whatsoever.

**s. Asbestos**

"Personal and advertising injury" directly or indirectly out of asbestos in any manner or form, including without limitation:

**(1)** Any cost or expense relating to investigation and/or defense of any loss, claim, "suit" or other proceeding; or

**(2)** Any cost or expense relating to request, demand or order that any insured or others test for, monitor, remediate, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to or assess the presence of or the effects of asbestos; and/or

**(3)** Any fine, penalty or assessment.

**t. Fungi or Bacteria**

"Personal and advertising injury" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

We have no obligation to defend or indemnify any insured for any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**u. Silica or Silica Related Dust**

(1) "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

(2) Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

### v. Professional Services

Any claim, loss, "suit", "bodily injury" or "property damage" arising out of the rendering of, or failure to render, any service or advice relating to "professional services".

### w. Communicable Disease

"Personal and advertising injury" arising directly or indirectly out of actual or alleged transmission of a communicable disease.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

(1) Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

(2) Testing for a communicable disease;

(3) Failure to prevent the spread of the disease; or

(4) Failure to report the disease to authorities.

### x. Chromated Copper Arsenate

"Bodily injury", "property damage", "personal injury" or "advertising injury" arising out of or caused directly or indirectly, in whole or in part, by the use or existence of:

(1) Chromated copper arsenate; or

(2) Any product or material which contains chromated copper arsenate; or

(3) Any product or material to which chromated copper arsenate has been applied by any party (including, but not limited to, any manufacturer, processor or distributor of such products or materials).

### SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

  **(1)** Agrees in writing to:

   **(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

   **(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

   **(c)** Notify any other insurer whose coverage is available to the indemnitee; and

   **(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

  **(2)** Provides us with written authorization to:

   **(a)** Obtain records and other information related to the "suit"; and

   **(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

 **a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

 **b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

 **c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

 **d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

 **e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

 **a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

  However, none of these "employees" or "volunteer workers" are insureds for:

  **(1)** "Bodily injury" or "personal and advertising injury":

   **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

   **(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

   **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** or **(b)** above; or

   **(d)** Arising out of his or her providing or failing to provide professional health care services.

  **(2)** "Property damage" to property:

   **(a)** Owned, occupied or used by;

   **(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

  **(1)** With respect to liability arising out of the maintenance or use of that property; and

  **(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

  **a.** Insureds;

  **b.** Claims made or "suits" brought; or

  **c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

  **a.** Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

  **b.** Damages under Coverage **B**.

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of damages under Coverage **A** because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

**1. Bankruptcy**

  Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

  **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   **(1)** How, when and where the "occurrence" or offense took place;

   **(2)** The names and addresses of any injured persons and witnesses; and

   **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

  **b.** If a claim is made or "suit" is brought against any insured, you must:

   **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

   **(2)** Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

  **c.** You and any other involved insured must:

   **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

### 3. Legal Action Against Us

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

### 4.Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section I – Coverage **A** – Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5.** **Premium Audit**

    **a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

    **b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill.

    **c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6.** **Representations**

By accepting this policy, you agree:

    **a.** The statements in the Declarations are accurate and complete;

    **b.** Those statements are based upon representations you made to us; and

    **c.** We have issued this policy in reliance upon your representations.

**7.** **Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

    **a.** As if each Named Insured were the only Named Insured; and

    **b.** Separately to each insured against whom claim is made or "suit" is brought.

**8.** **Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

    **a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

    **b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

    **a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

    **b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

    However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

    **a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

    **b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

    **c.** All other parts of the world if the injury or damage arises out of:

        **(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

        **(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

        **(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

    provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

**8.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

    Includes copyrighted material of Insurance Services Office, Inc. with its permission.     **ER 01 03 20**

9. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   **a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   **b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

10. "Insured contract" means:

   **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   **b.** A sidetrack agreement;

   **c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   **e.** An elevator maintenance agreement;

   **f.** A contract specifically endorsed to this policy as an "insured contract".

11. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

12. "Loading or unloading" means the handling of property:

   **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   **b.** While it is in or on an aircraft, watercraft or "auto"; or

   **c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

13. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   **b.** Vehicles maintained for use solely on or next to premises you own or rent;

   **c.** Vehicles that travel on crawler treads;

   **d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

     **(1)** Power cranes, shovels, loaders, diggers or drills; or

     **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

   **e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

     **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

     **(2)** Cherry pickers and similar devices used to raise or lower workers;

   **f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   **(1)** Equipment designed primarily for:

     **(a)** Snow removal;

     **(b)** Road maintenance, but not construction or resurfacing; or

     **(c)** Street cleaning;

   **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**14.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**15.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   **a.** False arrest, detention or imprisonment;

   **b.** Malicious prosecution;

   **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services;

   **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

   **f.** Oral or written publication, in any manner, of another's images, photographs, likenesses or personal attributes.

**16.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**17.** "Products-completed operations hazard":

   **a.** Includes all "bodily injury" and "property damage" that arises out of "your products" if the "bodily injury" or "property damage" occurs after you have relinquished possession of those products.

   **b.** Does not include "bodily injury" or "property damage" arising out of:

     **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

     **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

     **(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**18.** "Professional Services" means an act or service arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual.

**19.** "Property damage" means:

   **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property. As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**20.** "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

**21.** "Silica-related dust" means a mixture or combination of silica and other dust or particles.

**22.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

   **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**23.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**24.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**25.** "Your product":

   **a.** Means:

     **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

       **(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**26.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

COMMERCIAL GENERAL LIABILITY
CG 21 65 12 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION WITH A BUILDING HEATING, COOLING AND DEHUMIDIFYING EQUIPMENT EXCEPTION AND A HOSTILE FIRE EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to:

(a) "Bodily injury" if sustained within a building which is or was at any time owned or occupied by, or rented or loaned to, any insured and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests; or

(b) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

(i) At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

(ii) At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

© ISO Properties, Inc., 2003

Form: ER 10 11 04 14

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CROSS SUITS EXCLUSION

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

This insurance does not apply to any loss, claim or "suit" for "bodily injury", "property damage" or "personal and advertising injury" sustained by any insured whether or not such "bodily injury", "property damage" or "personal and advertising injury" arising out of the activities or operations of any other insured.

This exclusion does not apply if:

1. Any named insured has assumed liability for such claims or "suits" in a contract or agreement that is an "insured contract"; and
2. The person or entity bringing the claim or "suit" is not an entity, under any common ownership with or control by any person or entity qualifying as an insured under this policy.

All other terms and conditions of the policy remain the same.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Form: ER 10 18  04 14

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PYROTECHNICS OR FIREWORKS EXCLUSION

**This endorsement modifies insurance provided under the following:**

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to "bodily injury", "property damage", "injury" or "personal injury and advertising injury", actually or allegedly resulting directly or indirectly from the use, transportation, or storage of "pyrotechnics".

As used in this endorsement "pyrotechnics" includes, but is not limited to, airbursts, binary powders, comets, mines, preloaded smoke pots, concussions, falls, fire balls, mortar hits, flame projectors, torches, flash cotton, flash paper, flash trays, gerbs, lances, line rockets, multi-tube articles, pre-mixed powders, squibs, Saxons, or any item which contains gun powder or other chemical(s) that react(s) creating heat, combustion or explosion.

This endorsement does not apply to flash pots or sparklers.

Form: ER 10 23 04 14

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# INJURY TO CONTRACTORS EXCLUSION

**This endorsement modifies insurance provided under the following:**

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to any loss, claim, "suit", "bodily injury", "property damage", or "personal injury and advertising injury", actually or allegedly resulting directly or indirectly:

(1) to any contactor hired or retained if the injury arises out of or in the course of  the contractor's employment or retention; or

(2) to an employee of any contractor, if the injury arises out of or in the course of the employment or retention of such contractor for which any insured may become liable in any capacity; or

(3) to the spouse, child, parent, brother or sister of any contractor or employee of any contractor for injury arising out of or in the course of the employment or retention of such contractor for which any insured may become liable in any capacity; or

(4) for any obligation as an employer or in any other capacity to indemnify or contribute with or repay anyone who must pay damages because of an injury to any contractor or employee of any contractor.

This exclusion applies whether the contractor was retained or hired by you, your employees, your representatives, your tenants or any contractor.

Page 1 of 1

**Form: ER 10 26 06 16**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF NUCLEAR, BIOLOGICAL, CHEMICAL OR RADIOLOGICAL ACTS

This endorsement modifies and amends insurance provided under the following:

GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART

This insurance does not apply to:

Any loss, claim, "suit", "bodily injury" or "property damage" arising directly or indirectly, out of:

1. The release or escape of nuclear materials, or
2. A nuclear reaction, or
3. Radiation or radioactive contamination; or
4. The dispersal or application of pathogenic or poisonous biological or chemical materials; or
5. The release of pathogenic or poisonous biological or chemical materials.

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

Form: ER 20 05 10 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIMITED COVERAGE ASSAULT OR BATTERY RELATED CLAIMS

**This endorsement modifies insurance provided under the following:**

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

In consideration of premiums paid, it is agreed that the specific coverage excluded by Form ER 10 05 10 15, Assault or Battery Exclusion is reinstated on a limited basis in accordance with the following additional terms and conditions:

Subject to the limits set forth below this insurance applies to any loss, claim, "suit" or expense for "bodily injury", "property damage", or "personal and advertising injury" including claims or "suits" for negligence, directly or indirectly arising out of, actually or allegedly arising out of, or related to any: assault, battery, molestation, abuse, harmful or offensive contact, false arrest, wrongful detention, false imprisonment, malicious prosecution or threat; whether committed by a patron, employee, or any other individual.

This endorsement applies regardless of fault or intent.

For purposes of this endorsement, negligence includes but is not limited to allegations or claims for: negligent hiring, negligent employment, negligent training, negligent supervision, failure to intervene, failure to render aid, failure to contact law enforcement, failure to contact emergency medical services or failure to detain potentially responsible parties.

Solely as to the coverage provided by this endorsement the phrase "These payments will not reduce the limits of insurance" is deleted in its entirety from "SUPPLEMENTARY PAYMENTS-COVERAGES A AND B".

Payment of judgments, settlements, defense costs, loss adjustment expenses, claim(s) or "suit(s)" to which this endorsement applies shall not exceed the limits of liability set forth below:

       Per Occurrence: ▬▬▬

       Aggregate Limit ▬▬▬

       Deductible: ▬▬▬

NOTICE: The limit of liability available to pay judgments and settlements is reduced by the payment of judgments, settlements, defense costs, loss adjustment expenses, claim(s) or "suit(s)".  We will not be obligated to pay any judgments, settlements, defense costs, loss adjustment expenses, claim(s) or "suit(s)" or to defend or continue to defend any loss, claim or "suit" after the applicable limit of our liability has been exhausted by payment of judgments, settlements, defense costs or loss adjustment expenses.

The Per Occurrence Limit is the most we will pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" sustained in any one claim and/or "suit". All claims for damages made by one or more persons because of any one act or series of acts to which this endorsement applies shall be deemed to be one claim.

The Aggregate Limit is the most, subject to the Each Occurrence Limit, we will pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" sustained in a claim and/or "suit" regardless of how many persons assert claims and/or "suits" against you, any insured or any person.

FORM: 20 05 10 15

The Each Occurrence and Aggregate Limits described above are the most we will pay regardless of the number of insureds. These Limits of Insurance are subject to and not in addition to the General Aggregate Limit shown in the Declarations of the policy. Payments under these Limits of Insurance are part of and decrease the policy General Aggregate Limit of Insurance shown in the Declarations.

**Liquor Liability Assault and Battery Coverage**

If, on the date of an "occurrence" to which this endorsement applies, you had a policy of insurance providing Liquor Liability Coverage with us in full force and effect, **Exclusion C. Liquor Liability** does not apply, solely with regard to the coverage provided by this endorsement.

**Two or More Coverage Forms**

If this Coverage Form and any other Coverage Form or policy under which you are an insured, issued by us or companies affiliated with us, apply to the same "occurrence", the Per Occurrence and Aggregate Limit shown on this form is the applicable limit for the "occurrence" and SUPPLEMENTARY PAYMENTS-COVERAGES A AND B does not apply.

POLICY NUMBER: LMH00001144-00

**COMMERCIAL GENERAL LIABILITY**
**ER LLD 07 17**

# LIQUOR LIABILITY DECLARATIONS

| | |
|---|---|
| United Specialty Insurance Company<br>C/O Entertainment Risk<br>6300 N. Sagewood Dr, Suite H-251<br>Park City UT 84098<br>844-368-7475 | Fallaize Insurance Agency, Inc.<br>754 Holcomb Bridge Rd<br>Norcross, GA 30071<br>770-242-8842 |

| | |
|---|---|
| NAMED INSURED | Girls Galore, Inc. DBA Allure Gentlemen's Club |
| MAILING ADDRESS | 2284 Cheshire Bridge Rd. NE, Atlanta, GA 30324 |

POLICY PERIOD:   FROM 08-31-2020          TO 08-31-2021          AT 12:01 A.M.

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

| LIMITS OF INSURANCE | |
|---|---|
| EACH COMMON CAUSE  LIMIT | $ |
| AGGREGATE LIMIT | $ |

| | |
|---|---|
| LOCATION OF BUSINESS: | **SEE FORM: ER 10 34 04 14** |
| BUSINESS DESCRIPTION: | Exotic Club |
| THE NAMED INSURED IS A: | Other |

| CLASSIFICATION AND PREMIUM | | | | |
|---|---|---|---|---|
| **CLASSIFICATION** | **CODE NO.** | **PREMIUM BASE** | **RATE** | **ADVANCE PREMIUM** |
| Restaurants, Taverns, Hotels, Motels Including Package Sales | 58161 | $ | | $ |
| | | $ | | $ |
| STATE TAX OR OTHER (if applicable) | | | | $ |
| TOTAL PREMIUM (SUBJECT TO AUDIT) | | | | $ |
| PREMIUM SHOWN IS PAYABLE: | AT INCEPTION | | | $ |

| AUDIT PERIOD (IF APPLICABLE) | ☒ ANNU-ALLY | ☐ SEMI-AN-NUALLY | ☐ QUARTERLY | ☐ MONTHLY |
|---|---|---|---|---|

| FORMS APPLICABLE TO ALL COVERAGE PARTS: |
|---|
| **REFER TO FORM: ER SLLF 04 14** |

**THESE DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE FORM(S) AND ANY ENDORSEMENT(S) COMPLETE THE ABOVE NUMBERED POLICY.**

| Countersigned: | By: |
|---|---|
| (Date) | (Authorized Representative) |

**NOTE**

OFFICERS' FACSIMILE SIGNATURES MAY BE INSERTED HERE, ON THE POLICY COVER OR ELSEWHERE AT THE COMPANY'S OPTION.

POLICY NUMBER: LMH00001144-00                                      **ER SLLF 04 14**

## <u>Liquor Liability Policy Forms</u>

| ER LLD 07 17 | Liquor Liability Declarations |
| ER SLLF 04 14 | Schedule of Liquor Liability Forms |
| ER 02 03 20 | Liquor Liability Coverage Form |

# LIQUOR LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – LIQUOR LIABILITY COVERAGE

### 1. Insuring Agreement

  **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "injury" to which this insurance applies if liability for such "injury" is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "injury" to which this insurance does not apply. We may, at our discretion, investigate any "injury" and settle any claim or "suit" that may result. But:

    **(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

    **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

  No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

  If we initially defend an "insured" or pay for an "insured's" defense but later determine that the claim(s) is (are) not covered under this insurance, we will have the right to reimbursement for the defense costs we have incurred.

The right to reimbursement for the defense costs under this provision will only apply to defense costs we have incurred after we notify you in writing that there may not be coverage, and that we are reserving our rights to terminate the defense and seek reimbursement for defense costs.

  **b.** This insurance applies to "injury" only if:

    **(1)** The "injury" occurs during the policy period in the "coverage territory"; and

    **(2)** Prior to the policy period, no insured listed under Paragraph **1.** of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "injury" or claim, knew that the "injury" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "injury" occurred, then any continuation, change or resumption of such "injury" during or after the policy period will be deemed to have been known prior to the policy period.

  **c.** "Injury" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "injury" or claim, includes any continuation, change or resumption of that "injury" after the end of the policy period.

  **d.** "Injury" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "injury" or claim:

    **(1)** Reports all, or any part, of the "injury" to us or any other insurer;

    **(2)** Receives a written or verbal demand or claim for damages because of the "injury"; or

    **(3)** Becomes aware by any other means that "injury" has occurred or has begun to occur.

An insured who permits any person to bring any alcoholic beverage on their premises, for consumption on the premises, whether or not a fee is charged for such activity, will also be considered selling, serving or furnishing alcoholic beverages.

 Includes copyrighted material of Insurance Services Office, Inc. with its permission.

## 2. Exclusions

This insurance does not apply to:

### a. Expected Or Intended Injury

"Injury" expected or intended from the standpoint of the insured or any insured's "employees", contractors, or agents.

### b. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### c. Employer's Liability

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

   (a) Employment by the insured; or

   (b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the "injury".

### d. Liquor License Not In Effect

"Injury" arising out of any alcoholic beverage sold, served or furnished while any required license is not in effect.

### e. Your Product

"Injury" arising out of "your product". This exclusion does not apply to "injury" for which the insured or the insured's indemnitees may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

### f. Other Insurance

Any "injury" with respect to which other insurance is afforded, or would be afforded but for the exhaustion of the limits of insurance.

This exclusion does not apply if the other insurance responds to liability for "injury" imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage.

### g. War

"Injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

### h. Professional Services

Any claim, loss, "suit", "bodily injury," "property damage," "injury" or "personal and advertising injury" arising out of the rendering of, or failure to render, any service or advice relating to "professional services".

### i. Communicable Disease

This insurance does not apply to any loss, claim, "suit", "bodily injury", "property damage", "injury" or "personal or advertising injury" arising directly or indirectly out of actual or alleged transmission of a communicable disease.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

(1) Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

(2) Testing for a communicable disease;

(3) Failure to prevent the spread of the disease; or

(4) Failure to report the disease to authorities.

### j. Contractual Liability

"Injury" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

ER 02 03 20

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "injury" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "injury", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

## SUPPLEMENTARY PAYMENTS

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**c.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**d.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**e.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**f.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

**g.** Expenses incurred by the insured for first aid administered to others at the time of an event to which this insurance applies.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments " and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

**SECTION II – WHO IS AN INSURED**

1. If you are designated in the Declarations as:

   **a.** An individual, you and your spouse are insureds.

   **b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   **c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   **d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   **e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

   **a.** Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

      **(1)** "Injury":

         **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

         **(b)** To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph **(a)** above; or

         **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(a)** or **(b)** above.

      **(2)** "Property damage" to property:

         **(a)** Owned or occupied by; or

         **(b)** Rented or loaned;

to that "employee", any of your other "employees", by any of your partners or members (if you are a partnership or joint venture), or by any of your members (if you are a limited liability company).

   **b.** Any person or organization having proper temporary custody of your property if you die, but only:

      **(1)** With respect to liability arising out of the maintenance or use of that property; and

      **(2)** Until your legal representative has been appointed.

   **c.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   **a.** Insureds;

   **b.** Claims made or "suits" brought; or

   **c.** Persons or organizations making claims or bringing "suits".

2. The Aggregate Limit is the most we will pay for all "injury" as the result of the selling, serving or furnishing of alcoholic beverages.

3. Subject to the Aggregate Limit, the Each Common Cause Limit is the most we will pay for all "injury" sustained by one or more persons or organizations as the result of the selling, serving or furnishing of any alcoholic beverage to any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – LIQUOR LIABILITY CONDITIONS**

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.    ER 02 03 20

**2. Duties In The Event Of Injury, Claim Or Suit**

   **a.** You must see to it that we are notified as soon as practicable of an "injury" which may result in a claim. To the extent possible, notice should include:

     **(1)** How, when and where the "injury" took place;

     **(2)** The names and addresses of any injured persons and witnesses; and

     **(3)** The nature and location of any "injury".

   **b.** If a claim is made or "suit" is brought against any insured, you must:

     **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

     **(2)** Notify us as soon as practicable.

    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   **c.** You and any other involved insured must:

     **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

     **(2)** Authorize us to obtain records and other information;

     **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

     **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of "injury" to which this insurance may also apply.

   **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

   No person or organization has a right under this Coverage Part:

   **a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   **b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

   A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

   If other valid and collectible insurance is available to the insured for a loss we cover under this Coverage Part, our obligations are limited as follows:

   **a. Primary Insurance**

     This insurance is primary. Our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **b.** below.

   **b. Method Of Sharing**

     If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

     If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

   **a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

   **b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill.

   **c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

   By accepting this policy, you agree:

   **a.** The statements in the Declarations are accurate and complete;

   **b.** Those statements are based upon representations you made to us; and

   **c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

   Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

   **a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**SECTION V – DEFINITIONS**

**1.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**2.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the "injury" occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the "injury" arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above; or

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**3.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**4.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**5.** "Injury" means damages because of "bodily injury" and "property damage", including damages for care, loss of services or loss of support.

**6.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** A contract specifically endorsed to this policy as an "insured contract".

**6.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**7.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the occurrence that caused it.

**8.** "Suit" means a civil proceeding in which damages because of "injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**9.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**10.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    **(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

State Court of Fulton County
\*\*\*EFILED\*\*\*
File & ServeXpress
Transaction ID: 67254833
Date: Jan 21 2022 12:00AM
Christopher G. Scott, Chief Clerk
Civil Division

**IN THE STATE COURT OF FULTON COUNTY
STATE OF GEORGIA**

| | |
|---|---|
| DONALD DIXON, )<br><br>Plaintiff, )<br><br>v. )<br><br>GIRLS GALORE, INC. d/b/a ALLURE )<br>GENTLEMEN'S CLUB, )<br><br>Defendant. ) | Civil Action No. _____ |

## COMPLAINT

COMES NOW Plaintiff in the above-styled action, and files this Complaint showing as follows:

### PARTIES, JURISDICTION, AND VENUE

1.   Plaintiff at all times relevant was and is a resident and citizen of the State of Georgia.

2.   Defendant Girls Galore, Inc. is a Georgia corporation that is principally located in Fulton County, Georgia.  Defendant Girls Galore, Inc. may be served with process through its registered agent, Nicholas A. Stergion, whose address for service is 3520 Waters Cove Way, Alpharetta, Georgia 30022.

3.   The events that form the basis of this Complaint occurred within the confines of Fulton County, Georgia.

4.   Jurisdiction and Venue are therefore proper in this Honorable Court.

### FACTUAL ALLEGATIONS

5.   Plaintiff realleges and incorporates by reference all foregoing Paragraphs of this Complaint as if fully stated herein.

**EXHIBIT
B**

6.      On September 19, 2020, Plaintiff was a business invitee at Allure Gentlemen's Club located at 2284 Cheshire Bridge Road, NE, Atlanta, Georgia 30324.

7.      At approximately 3:00 a.m. that same day, a fight broke out near the bar area inside the club between Kevin Bryant and an unknown individual.

8.      The unknown individual brandished a gun and fired.

9.      Plaintiff was shot in the stomach by a stray bullet.

10.     Fearing that the EMS would not arrive in time to save Plaintiff's life, his friends transported him to the hospital.

11.     The stray bullet was lodged in Plaintiff's back near his spine, and he underwent surgery the next day to remove the bullet.

## COUNT ONE

### *Negligence – Premises Liability*

12.     Plaintiff realleges and incorporates by reference all foregoing Paragraphs of this Complaint as if fully stated herein.

13.     At all times relevant to this Complaint, Defendant owed a duty under O.C.G.A. § 51-3-1 to keep the premises at issue reasonably safe.

14.     Defendant breached this duty when they negligently failed to provide adequate security measures to deter and prevent the shooting of Plaintiff on September 19, 2020.

15.     An injury such as the one suffered by Plaintiff was reasonably foreseeable to Defendant.

16.     Substantial prior criminal incidents inside Club Allure and in the immediately surrounding areas put Defendant on direct notice that the premises at issue was unsafe.

2

17.     Defendant failed to warn their visitors, such as Plaintiff, of the increased risk of criminal activity on and around its premises.

18.     Defendant failed to provide adequate security personnel or other adequate security measures to render their premises reasonably safe.

19.     As the proximate result of Defendant's negligence in failing to provide adequate security measures, Plaintiff suffered serious injuries.

## COUNT TWO

### *Negligent Performance of Security*

20.     Plaintiff realleges and incorporates by reference all foregoing Paragraphs of this Complaint as if fully stated herein.

21.     At the time of the shooting, Defendant undertook to provide security for the premises where Plaintiff was shot on September 19, 2020.

22.     At the time of the shooting, Defendant failed to exercise ordinary care in providing and ensuring proper security was in place to detour and prevent the shooting of Plaintiff.

23.     As a proximate result of Defendant's negligence, Plaintiff suffered serious injuries.

## COUNT THREE

### *Nuisance*

24.     Plaintiff realleges and incorporates by reference all foregoing Paragraphs of this Complaint as if fully stated herein.

25.     At all times relevant hereto, Defendant created and maintained a nuisance at 2284 Cheshire Bridge Road, NE, Atlanta, Georgia 30324, which was dangerous to life and health, for an unreasonable duration of time prior to and on September 19, 2020 when Plaintiff was assaulted and shot.

3

26.     As a proximate result of Defendant's negligence, Plaintiff suffered serious injuries.

## COUNT FOUR

### *Punitive Damages*

27.     Plaintiff realleges and incorporates by reference all foregoing Paragraphs of this Complaint as if fully stated herein.

28.     The acts of the Defendant in creating and maintaining a nuisance, as set forth in this Complaint, were willful, wanton, and demonstrated an entire want of care, which raises the presumption of a conscious indifference to consequences.

29.     The misconduct of the Defendant was so aggravating it authorizes, warrants, and demands the imposition of substantial punitive damages against the Defendant, pursuant to O.C.G.A. § 51-12-5.1.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

(a)     That summons and process issue and be served upon Defendant;

(b)     For a trial by a jury comprised of twelve persons;

(c)     For judgment in favor of Plaintiff and against Defendant;

(d)     That Plaintiff be awarded all general and special damages allowed by law in an amount to be determined by the enlightened conscience of a fair and impartial jury;

(e)     That Plaintiff be awarded punitive damages in an amount to be determined by the enlightened conscious of a fair and impartial jury at trial;

(f)     Any other relief as the Court deems just and proper.

This 21st day of January, 2022.

MANLY SHIPLEY, LLP

/s/ John B. Manly
JOHN B. MANLY
Georgia Bar No. 194011
JAMES E. SHIPLEY, JR.
Georgia Bar No. 116508
*Attorneys for Plaintiff*

Post Office Box 10840
Savannah, Georgia 31412
T: (912) 495-5360
F: (844) 362-4952
john@manlyshipley.com
jim@manlyshipley.com



CENTRALIZED MAIL ADDRESS:
P.O. Box 527
Alpharetta, Georgia 30009-0527

**VIA: EMAIL TO: nicksr24@gmail.com**
**VIA: FIRST CLASS MAIL**
**VIA: USPS PRIORITY MAIL WITH TRACKING #**

CENTRALIZED EMAIL:
claims@tritonclaims.com

February 23, 2022

Girls Galore, Inc.                                           **\*DECLINATION OF COVERAGE\***
D/B/A "Allure Gentlemen's Club"
2284 Cheshire Bridge Rd. NE
Atlanta, GA 30324

> **RE:**   Company        : United Specialty Insurance Company
>           Policy number : LMH00001144-00
>           Insured        : Girls Galore, Inc., D/B/A "Allure Gentlemen's Club"
>           Claimant       : Donald Dixon
>           Date of Loss  : 09/19/2020
>           Location       : 2284 Cheshire Bridge Rd. NE., Atlanta, GA 30324
>           Claim Number : ERKS10107

To Whom It May Concern:

Please be advised Triton Claim Management, LLC ("Triton") is the authorized claims representative for United Specialty Insurance Company ("United") who issued a Commercial General Liability Policy to Girls Galore, Inc., D/B/A "Allure Gentlemen's Club" ("Allure") under policy LMH00001144-00. The Policy's effective dates are August 31, 2020 to August 31, 2021 (the "Policy").

## \*FACTS\*

Triton, on behalf of United, received a Complaint titled *Donald Dixon v. Girls Galore, Inc. dba Allure Gentlemen's Club*, filed on January 21, 2022 in the State Court of Fulton County (the "Complaint"). The Complaint alleges that on September 19, 2020 Plaintiff visited Allure. While at Allure, a fight broke out inside the club between Kevin Bryant and an unknown individual. The unknown individual brandished a gun and fired. Plaintiff was shot in the stomach by a stray bullet.

As a result of the gun incident, Plaintiff alleges the following counts against Allure: Negligence – Premises Liability; Negligent Performance of Security; Nuisance; and Punitive Damages.

As a result of the Complaint, coverage was requested under the Policy. Investigation into this matter has confirmed there is no coverage for this claim as it arises from the use of a weapon which is excluded for coverage under the Policy. As such, Triton, on behalf of United, is unable to provide coverage, or make any settlement in respect of the claim, due to the Policy's **"ABSOLUTE WEAPONS EXCLUSION"**.

> **EXHIBIT**
> **C**

The pertinent Policy language and full exclusion wording is listed below.

## POLICY

### "1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    **(1)** The amount we will pay for damages is limited as described in Section III – Limits of Insurance; and
    **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverage A and B.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

    (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
    (2) The "bodily injury" or "property damage" occurs during the policy period.

**Form: ER 10 20 04 16**
**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**
**ABSOLUTE WEAPONS EXCLUSION**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**LIQUOR LIABILITY COVERAGE PART**

This insurance does not apply to any claim, loss, "suit", "bodily injury", "property damage", "injury" or "personal injury and advertising injury", actually or allegedly arising directly or indirectly from, or resulting in whole or in part out of, or resulting in whole or in part from the use of, failure to use, or based upon or attributable to "weapons".

"Weapons" are: instruments of an offensive or defensive nature which include but are not limited to: firearms, knives, batons, stun guns, mace or pepper spray; . ."

### ANALYSIS

As mentioned, the claim is excluded due to the Policy's Absolute Weapons Exclusion. The claim arises from the use of a weapon during a shooting incident, and as such this claim is precluded from coverage under the exclusionary endorsement related to weapons.

United reserves the right to withdraw, amend or supplement this declination of coverage at any time in the future, upon the development of additional information regarding this claim. Should you have any information that would alter the application of the policy exclusion to this loss, please submit to us for reconsideration. This letter does not, nor is it intended to, waive any rights United, or their affiliates, may have under the terms of your insurance policy or at law. This letter is not intended to be an exhaustive statement of all exclusions or conditions which may be applicable. All rights which United may have under the terms of your insurance policy and at law are specifically reserved. We expressly do not waive our right to deny coverage for any other valid reason. No action heretofore or hereinafter taken by United in connection with the claim referred to above is to be considered a waiver of its rights under the policy set forth above and, specifically, reserves the right to seek judicial resolution of all issues arising out of this policy by way of declaratory judgment or other legal proceedings.

We hereby return the Summons and Complaint for you to protect your own interest at your own cost.

In this letter, we have set out those coverage issues that are currently known to exist, although we rely on all the terms, conditions, definitions and exclusions in the applicable policies. By not mentioning other provisions and conditions of the polices, we do not waive them, and the entire insurance policy is referenced as if set forth in full herein.

If you feel there are any additional facts, documents or circumstances which should be brought to our attention concerning the coverage issues, please advise of those facts in writing at your earliest convenience.

Very truly yours,
For and on behalf of:
United Specialty Insurance Company
By: **Triton Claim Management, LLC**

*Karina Alvarado*

As Authorized Claim Representative
Georgia Adjuster's License #: 3478276
Phone #: (678) 728-6885
E-mail: kalvarado@tritonclaims.com

cc:     Fallaize Insurance Agency, Inc.
        Attention:  Cary Wise
        Via Email Only: cary@fallaize.com

Encl:   Summons and Complaint

State Court of Fulton County
**E-FILED**
22EV000458
6/9/2022 9:05 AM
Christopher G. Scott, Clerk
Civil Division

IN THE STATE COURT OF FULTON COUNTY
STATE OF GEORGIA

DONALD DIXON,                      )
                                   )
            Plaintiff,             )
                                   )      CIVIL ACTION FILE
v.                                 )      NO. 22EV000458H
                                   )
GIRLS GALORE, INC.,                )
d/b/a Allure Gentlemen's Club,     )
                                   )
            Defendant.             )

## FINAL ORDER AND JUDGMENT

This matter came before the court for a duly noticed non-jury trial on June 2, 2022. Notice of the calendar was served on all parties via the Clerk of Court's e-file system. Plaintiff appeared at trial; Defendant failed to appear, failed to contact the court, and had not been excused from appearing. Having considered the entire record and the testimony and other evidence adduced at trial, the court finds that Plaintiff is entitled to a final judgment against Defendant in the following amounts: $1,150,000.00 in compensatory damages and costs in the amount of $264.00, for a total judgment amount of $1,150,264.00. Plaintiff shall be entitled to post-judgment interest as allowed by law.

This constitutes a final entry of judgment, and the Clerk is authorized to close the case pursuant to O.C.G.A. § 9-11-58(b).

**SO ORDERED**, this 9th day of June, 2022.

/s/ Wesley B. Tailor
Wesley B. Tailor, Judge
State Court of Fulton County

**EXHIBIT
D**

**John Manly**

| | |
|---|---|
| **From:** | John Manly |
| **Sent:** | Thursday, October 20, 2022 2:20 PM |
| **To:** | Jason Wyrick; Jim Shipley |
| **Cc:** | Ted S. Huggins; Lauri A. Bates |
| **Subject:** | RE: Donald Dixon v. Girls Galore, Inc., d/b/a Allure Gentlemen's Club |

Jason and Ted,

I wanted to give your client one final opportunity to settle. My client will settle all his claims and consider the judgment he obtained fully satisfied in exchange for payment of the applicable policy limits within 14 days of the date of this offer.

Thanks,
John

**From:** Jason Wyrick <jwyrick@cmlawfirm.com>
**Sent:** Wednesday, July 27, 2022 12:54 PM
**To:** Jim Shipley <jim@manlyshipley.com>; John Manly <john@manlyshipley.com>
**Cc:** Ted S. Huggins <thuggins@cmlawfirm.com>; Lauri A. Bates <lauribates@cmlawfirm.com>
**Subject:** Donald Dixon v. Girls Galore, Inc., d/b/a Allure Gentlemen's Club

Please see attached.

J

**Jason Wyrick**
Partner
Cruser, Mitchell, Novitz, Sanchez, Gaston & Zimet, LLP
Atlanta Office
Meridian II, Suite 2000 | 275 Scientific Drive | Peachtree Corners, Georgia 30092
(678) 684-2149 direct
(404) 881-2622 main line
jwyrick@cmlawfirm.com
www.cmlawfirm.com



California | Florida | Georgia | Indiana | New Jersey | New York | Pennsylvania | Washington

This message and any attachments may contain information that is CONFIDENTIAL and/or legally protected under attorney work product, attorney-client communication, joint defense or another recognized privilege. If you are not one of the above-named recipients, your receipt of this message was inadvertent and you are not to read, copy, disseminate or otherwise use this message and attachments. If you have received this message in error, please immediately delete the message, attachments and any hard drive copies, and notify sender so that the error may be corrected.
View our firm's COVID-19 policy



## ASSIGNMENT AGREEMENT
## AND COVENANT NOT TO EXECUTE

This Assignment Agreement and Covenant Not to Execute ("Agreement") is entered into as of November 8, 2022, between Donald Dixon ("Claimant") and Girl's Galore, Inc., d/b/a Allure Gentlemen's Club ("Insured").

On September 19, 2020, Claimant was injured on the Insured's premises ("Occurrence"). The Occurrence gave rise to claims against Insured. Prior to the Occurrence, Insured had purchased a liability insurance policy from United Specialty Insurance Company ("USIC") with effective dates of August 31, 2020, to August 31, 2021, policy no. LMH00001144-00 ("Policy"). The Insured believes that the Occurrence may trigger liability coverage under the Policy for Insured's legal liability to Claimant for injury and loss arising out of the Occurrence.

To recover for his injuries arising out of the Occurrence, Claimant filed on January 21, 2022, a lawsuit against Insured, styled *Donald Dixon v. Girl's Galore, Inc., d/b/a* Allure Gentlemen's Club, State Court of Fulton County, Georgia, No. 22EV-000458 ("Underlying Lawsuit").

Insured believes that USIC should have defended Insured in the Underlying Lawsuit but failed to do so as required under the Policy. Abandoned by its insurer, Insured did not have the economic resources to defend itself in the Underlying Lawsuit and went into default. The Underlying Lawsuit ended on June 9, 2022, with a Final Order and Judgment against Insured and in favor of Claimant in the amount of $1,150,264.00 ("Judgment"). The Judgment is subject to post-judgment interest of 8.5 percent annually.

Following entry of the Judgment, Claimant provided USIC a valid and reasonable opportunity to settle the Judgment and all claims against the Insured for an amount within the Policy limits. USIC negligently, or in bad faith, rejected the opportunity to settle, leaving its Insured exposed to ruinous financial liability.

Insured is financially responsible for the Judgment and all post-judgment interest. Claimant has threated to initiate collection efforts against Insured. Insured wishes to avoid substantial financial exposure and the trouble and expense of defending itself from collection efforts.

Page 1 of 4

EXHIBIT
F

In light of the facts set forth above, which the parties agree to be true and correct, to the best of their belief, and not mere recitals, and in consideration of the mutual promises set forth below, the parties agree as follows:

1. **Covenant Not to Execute:** Claimant shall not attempt to execute on the Judgment directly or indirectly from Insured, or from its affiliates, subsidiaries, officers, directors, owners, employees, managers, contractors, stockholders, principals, or business partners; rather Claimant shall look only to sums recoverable under the Policy or from USIC to satisfy the Judgment, all post-judgment interest, attorney's fees, and costs.

2. **Assignment:** Insured assigns to Claimant any and all rights, privileges, entitlements, causes of action, whether in contract, tort, under statutory law, under common law or otherwise and whether existing now or in the future, that Insured has or may have against USIC for coverage or benefits under the Policy in relation to the Occurrence, the Underlying Lawsuit, the Judgment, USIC's failure to defend, USIC's failure to settle and USIC's other actions and inactions with regard to handling the claim arising out of the Occurrence. Without limiting the foregoing, this assignment includes all claims for negligent or bad-faith failure to settle under the common law as described in *S. Gen. Ins. Co. v. Holt*, 262 Ga. 267 (1992), and its progeny and breach of contract claims for USIC's failure to defend and failure to pay. Insured warrants and represents that it possesses all claims assigned herein and has not assigned or otherwise conveyed to others any claims assigned herein.

3. **Anticipated Lawsuit:** The purpose of this agreement is to allow Claimant, as assignee of Insured, to bring a lawsuit against USIC asserting the claims assigned ("Insurance Lawsuit").

4. **Duty to Cooperate:** The Insured, at Claimant's sole cost and expense, shall reasonably cooperate with Claimant in prosecution of the Insurance Lawsuit and any other claims related to coverage, such cooperation to include, without limitation, submitting to interviews with Claimant's attorneys; providing to Claimant's attorneys any communications, books, records or other documentation regarding the purchase of the Policy, the Occurrence, the resulting insurance claim, or the Underlying Lawsuit; and reasonably appearing for testimony during discovery and at trial. Insured hereby waives any protections afforded by the attorney-client privilege or work-product doctrine with respect to any documents or information possessed by USIC and generated in its handling, adjusting or consideration of the claim arising out of

Page 2 of 4

the Occurrence, the Underlying Lawsuit or any settlement offer.

5. **Satisfaction of Judgment in the Future:** Following the conclusion of the Insurance Lawsuit and all appeals, Claimant shall file a Satisfaction of Judgment with respect to the Consent Judgment regardless of outcome.

6. **No Representation:** The Insured has not made any representations to induce the Claimant to enter into this Agreement. The Claimant agrees and acknowledges that in executing this Agreement he does not rely and has not relied on any representation or statement by Insured or by any of the Insured's agents, representatives or attorneys with regard to the subject matter, basis or effect of this Agreement. The Claimant is not entitled to rely on any representation, express or implied, allegedly made by the Insured concerning this Agreement, including the Insured's belief that that USIC should have defended Insured in the Underlying Lawsuit but failed to do so as required under the Policy.

7. **Authority and Binding Nature:** Each signatory to this Agreement warrants and represents that he or she has full authority and all consent and authorization needed to sign this Agreement and bind the party on behalf of whom each signatory signs. This Agreement is binding on the parties, their guardians, wards, heirs, executors, administrators, estates, personal representatives, trustees in bankruptcy, and successors in interest.

8. **Choice of Law:** This Agreement shall be governed and construed by the laws of the State of Georgia without regard to any choice-of-law principles.

9. **Merger Agreement:** This Agreement is the entire agreement between the parties. No representations have been made, oral or written, other than those set forth herein. This Agreement may not be modified except by the express written agreement of all parties to this Agreement.

10. **Counterparts:** This Agreement may be executed in multiple counterparts, and such counterparts may be signed electronically and exchanged via e-mail to create a single, binding agreement.

[signatures appear on next page]

Entered into and agreed to on the date set forth above by:

CLAIMANT

Donald Dixon

INSURED
Girl's Galore, Inc., d/b/a Allure
Gentlemen's Club

By: NICHOLAS STERGION
(print name)

Its: PRESIDENT
(title)

Fulton County Superior Court
***EFILED***JH
Date: 1/20/2023 7:54 AM
Cathelene Robinson, Clerk

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

**DONALD DIXON, individually and as Assignee of Girls Galore, Inc. d/b/a Allure Gentlemen's Club**
Plaintiff/Petitioner

vs.

**UNITED SPECIALTY INSURANCE COMPANY**
Defendant/Respondent

Case No.:   **2023CV374797**

AFFIDAVIT OF SERVICE OF
**SUMMONS; COMPLAINT; EXHIBITS**

Received by **Donnie Briley**, on the **14th day of January, 2023 at 10:19 PM** to be served upon **United Specialty Insurance Company c/o CT CORPORATION SYSTEM** at 289 Culver Street South, Lawrenceville, Gwinnett County, GA 30046.
On the **17th day of January, 2023 at 10:49 AM**, I, **Donnie Briley**, SERVED United Specialty Insurance Company c/o CT CORPORATION SYSTEM at 289 Culver Street South, Lawrenceville, Gwinnett County, GA 30046 in the manner indicated below:

**CORPORATE SERVICE**, by personally delivering **1** copy(ies) of the above listed documents to the named Corporation, by serving **Linda Banks** , on behalf of said Corporation.
THE DESCRIPTION OF THE PERSON WITH WHOM THE COPY OF THIS PROCESS WAS LEFT IS AS FOLLOWS:
**I delivered the documents to Linda Banks who indicated they were the process specialist with identity confirmed by subject saying yes when named. The individual accepted service with direct delivery. The individual appeared to be a gray-haired white female contact over 65 years of age, 5'-5'4" tall and weighing 120-140 lbs with glasses.**

Per U.S. Code § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

NAME: _____   2023   _1-19-2023_
Donnie Briley                        Server ID #              Date

Notary Public: Subscribed and sworn before me on this _19__ day of _January_ in the year of 20_23_
Personally known to me _✓_ or _____ identified by the following document:

_____
Notary Public (Legal Signature)

*[Notary seal: JULIE A MASON, NOTARY PUBLIC, GWINNETT COUNTY GEORGIA, MY COMMISSION EXPIRES JULY 24, 20__]*

REF: **Dixon, Donald**

**IN THE SUPERIOR COURT OF FULTON COUNTY**
**STATE OF GEORGIA**

| | | |
|---|---|---|
| DONALD DIXON, Individually and as Assignee of Girls Galore, Inc. d/b/a Allure Gentlemen's Club, | § § § § | |
| Plaintiff, | § § | CIVIL ACTION |
| vs. | § § | FILE NO.: 2023CV374797 |
| UNITED SPECIALTY INSURANCE COMPANY, | § § § | |
| Defendant. | § § | |

## DEFENDANT UNITED SPECIALTY INSURANCE COMPANY'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

COMES NOW, **UNITED SPECIALTY INSURANCE COMPANY**, Defendant in the above-styled civil action, and files its Answer and Affirmative Defenses to Plaintiff's Complaint, showing the Court the following:

### FIRST DEFENSE

Plaintiff's claims are, or may be barred, in whole or in part, for failure to state a claim upon which relief can be granted pursuant to O.C.G.A. § 9-11-12(b)(6) and applicable Georgia law.

### SECOND DEFENSE

Defendant asserts the venue is improper in this Court pursuant to Ga. Const. Art. 6, § 2, ¶ VI, O.C.G.A. § 9-11-12(b)(3) and applicable Georgia law.

### THIRD DEFENSE

Plaintiff's claims are barred, in whole or in part, by the terms, limitations, conditions, definitions and exclusions of the subject United Specialty Insurance Company policy.

## FOURTH DEFENSE

Plaintiff's claims, which arise out of a shooting incident, are barred by the Absolute Weapons Exclusion, Form ER 10 20 04 16, contained within the subject United Specialty Insurance Company policy. *See Great Lakes Insurance SE v. Habif Properties, LLC*, Civil Action File No. 5:20-cv-343 (MTT), 2021 WL 2417156 (2021); *see also Hudson Specialty Insurance Company v. Snappy Slappy LLC*, Civil Action File No. 5:18-cv-00104-TES, 2019 WL 1938801 (2019); *see further Powe v. Chartis Specialty Insurance Co.*, Civil Action File No. 1:16-cv-1336-SCJ, 2017 WL 3525441 (2017).

Plaintiff's claims, which arise out of a shooting incident, are further barred or limited by the Assault and Battery Exclusion Form ER 10 05 10 15 and the Limited Coverage Assault or Battery Related Claims endorsement, Form ER 20 05 10 15.

## FIFTH DEFENSE

As Plaintiff's claims are not covered under the subject United Specialty Insurance Company policy, Plaintiff's claims for negligent and bad-faith failure to settle are barred by operation of law.

## SIXTH DEFENSE

This Defendant breached no duty to Plaintiff; therefore, Plaintiff may not recover from this Defendant in any sum or manner whatsoever.

## SEVENTH DEFENSE

No act or omission of Defendant caused or contributed to cause any damage alleged to have been sustained by Plaintiff; therefore, Plaintiff may not recover from Defendant in any sum or manner whatsoever.

## EIGHTH DEFENSE

The sole proximate cause of Plaintiff's alleged damages, if any were sustained, was

Plaintiff's own negligence, with the result that Plaintiff is not entitled to recover in this case.

## NINTH DEFENSE

Defendant asserts the affirmative defenses of legal and equitable estoppel pursuant to

O.C.G.A. § 9-11-8(c), O.C.G.A. § 23-1, et seq., and applicable Georgia law.

## TENTH DEFENSE

Plaintiff's claims for attorney's fees and expenses of litigation, to the extent they arise

under O.C.G.A. § 13-6-11, are barred by the existence of a *bona fide* dispute as to liability and

damages, among other things.

## ELEVENTH DEFENSE

Plaintiff's claims for attorney's fees and expenses of litigation pursuant to O.C.G.A. §

13-6-11 or otherwise are unwarranted and unsupported by any construction of the law to the

facts of this case.  As such, Plaintiff's claims for attorney's fees and expenses of litigation should

be dismissed.

## TWELFTH DEFENSE

Upon information and belief, the purported assignment herein may be contrary to

Georgia law due to lack of consideration or otherwise.

## THIRTEENTH DEFENSE

As a Thirteenth Defense, Defendant answers the numbered paragraphs of Plaintiff's

Complaint as follows:

{SECURE Firm/2035/00009/DRAFTS/03892006.DOCX }

## PARTIES, VENUE AND JURISDICTION

1.

Defendant can neither admit nor deny the allegations contained within Paragraph 1 of Plaintiff's Complaint for want of knowledge or information sufficient to form a belief as to the truth thereof and put Plaintiffs upon strict proof of the same.

2.

Defendant denies the allegations contained within Paragraph 2 of Plaintiff's Complaint.

3.

Defendant admits the allegations contained within Paragraph 3 of Plaintiff's Complaint.

4.

Defendant admits the allegations contained within Paragraph 4 of Plaintiff's Complaint.

5.

Defendant denies the allegations contained within Paragraph 5 of Plaintiff's Complaint.

## FACTUAL ALLEGATIONS

6.

Defendant can neither admit nor deny the allegations contained within Paragraph 6 of Plaintiff's Complaint for want of knowledge or information sufficient to form a belief as to the truth thereof and puts Plaintiff upon strict proof of the same.

7.

Defendant denies the allegations contained within Paragraph 7 of Plaintiff's Complaint.

{SECURE Firm/2035/00009/DRAFTS/03892006.DOCX }

8.

Defendant can neither admit nor deny the allegations contained within Paragraph 8 of Plaintiff's Complaint for want of knowledge or information sufficient to form a belief as to the truth thereof and puts Plaintiff upon strict proof of the same.

9.

Defendant denies as pled the allegations contained within Paragraph 9 of Plaintiff's Complaint. Defendant admits, however, that it issued a policy of insurance, United Specialty Insurance Company policy no. LMH00001144-00, to Girls Galore, Inc. DBA Allure Gentlemen's Club for policy period August 31, 2020 to August 31, 2021. Defendant further states that there is no coverage for Plaintiff's claim under United Specialty Insurance Company policy no. LMH00001144-00 and therefore denies that GGI was "insured" as alleged within this paragraph.

10.

Defendant denies as pled the allegations contained within Paragraph 10 of Plaintiff's Complaint.

11.

Defendant admits that Donald Dixon filed on January 21, 2022, an action in the State Court of Fulton County entitled *Donald Dixon v. Girls Galore, Inc. d/b/a Allure Gentlemen's Club*, CAFN 22EV000458.

12.

Defendant can neither admit nor deny the allegations contained within Paragraph 12 of Plaintiff's Complaint for want of knowledge or information sufficient to form a belief as to the truth thereof and puts Plaintiff upon strict proof of the same.

- 5 -

13.

Defendant can neither admit nor deny the allegations contained within Paragraph 13 of Plaintiff's Complaint for want of knowledge or information sufficient to form a belief as to the truth thereof and puts Plaintiff upon strict proof of the same.

14.

Defendant denies the allegations contained within Paragraph 14 of Plaintiff's Complaint.

15.

Admitted with explanation.  As Plaintiff's claim is not covered United Specialty Insurance Company policy no. LMH00001144-00, Defendant was not obligated to defend Girls Galore, Inc. DBA Allure Gentlemen's Club in the underlying action.

16.

Defendant denies the allegations contained within Paragraph 16 of Plaintiff's Complaint.

17.

Defendant denies the allegations contained within Paragraph 17 of Plaintiff's Complaint.

18.

Defendant denies as pled the allegation that the default judgment was entered after the damages hearing.  Defendant admits the remaining allegations contained within Paragraph 18 of Plaintiff's Complaint.

19.

Defendant can neither admit nor deny the allegations contained within Paragraph 19 of Plaintiff's Complaint for want of knowledge or information sufficient to form a belief as to the truth thereof and puts Plaintiff upon strict proof of the same.

{SECURE Firm/2035/00009/DRAFTS/03892006.DOCX }

20.

Defendant admits the allegations contained within Paragraph 20 of Plaintiffs Complaint.

21.

Defendant denies the allegations contained within Paragraph 21 of Plaintiff's Complaint.

22.

Defendant denies the allegations contained within Paragraph 22 of Plaintiff's Complaint.

23.

Admitted with explanation.  Prior to the referenced October 20, 2022 Offer, Defendant sent multiple correspondence to Plaintiff's counsel advising there was no coverage for Plaintiff's claim.

24,

Admitted with explanation.  Defendant did not respond and did not accept the referenced Offer because there was no coverage for Plaintiff's claim pursuant to United Specialty Insurance Company policy no. LMH00001144-00,

25.

Defendant can neither admit nor deny the allegations contained within Paragraph 25 of Plaintiff's Complaint for want of knowledge or information sufficient to form a belief as to the truth thereof and puts Plaintiff upon strict proof of the same.

26.

Defendant can neither admit nor deny the allegations contained within Paragraph 26 of Plaintiff's Complaint for want of knowledge or information sufficient to form a belief as to the truth thereof and puts Plaintiff upon strict proof of the same.

{SECURE Firm/2035/00009/DRAFTS/03892006.DOCX }

## COUNT 1
## BREACH OF DUTY TO DEFEND

27.

Defendant hereby reasserts and incorporates by reference the responses made previously

to Paragraphs 1 through 26 of Plaintiff's Complaint as if those responses were set forth herein.

28.

Defendant denies the allegations contained within Paragraph 28 of Plaintiff's Complaint.

29.

Defendant denies the allegations contained within Paragraph 29 of Plaintiff's Complaint.

30.

Defendant denies the allegations contained within Paragraph 30 of Plaintiff's Complaint.

31.

Defendant denies the allegations contained within Paragraph 31 of Plaintiff's Complaint.

## COUNT 2
## BREACH OF DUTY TO PAY

32.

Defendant hereby reasserts and incorporates by reference the responses made previously

to Paragraphs 1 through 31 of Plaintiff's Complaint as if those responses were set forth herein.

33.

Defendant denies that it had a duty to indemnify for the at-issue judgment and denies as

pled the allegations contained within Paragraph 33 of Plaintiff's Complaint.

34.

Defendant denies the allegations contained within Paragraph 34 of Plaintiff's Complaint.

{SECURE Firm/2035/00009/DRAFTS/03892006.DOCX }

35.

Defendant denies the allegations contained within Paragraph 35 of Plaintiff's Complaint.

## COUNT 3
## NEGLIGENT OR BAD-FAITH FAILURE TO SETTLE
## UNDER THE COMMON LAW

36.

Defendant hereby reasserts and incorporates by reference the responses made previously

to Paragraphs 1 through 35 of Plaintiff's Complaint as if those responses were set forth herein.

37.

Defendant denies the allegations contained within Paragraph 37 of Plaintiff's Complaint.

38.

Defendant denies that Plaintiff's claim was covered under United Specialty Insurance

Company policy no. LMH00001144-00 and denies the allegations contained within Paragraph 38

of Plaintiff's Complaint.

39.

Defendant denies the allegations contained within Paragraph 39 of Plaintiff's Complaint.

40.

Defendant denies the allegations contained within Paragraph 40 of Plaintiff's Complaint.

41.

Defendant denies the allegations contained within Paragraph 41 of Plaintiff's Complaint.

42.

Defendant denies the allegations contained within Paragraph 42 of Plaintiff's Complaint.

43.

Defendant denies the allegations contained within Paragraph 43 of Plaintiff's Complaint.

{SECURE Firm/2035/00009/DRAFTS/03892006.DOCX }

44.

Defendant denies the allegations contained within Paragraph 44 of Plaintiff's Complaint.

45.

Defendant denies the allegations contained within Paragraph 45 of Plaintiff's Complaint.

## COUNT 4
## JUDGMENT CREDITORS' DIRECT ACTION
## AGAINST JUDGMENT DEBTOR'S INSURANCE COMPANY

46.

Defendant hereby reasserts and incorporates by reference the responses made previously to Paragraphs 1 through 45 of Plaintiff's Complaint as if those responses were set forth herein.

47.

Defendant denies the allegations contained within Paragraph 47 of Plaintiff's Complaint.

48.

Defendant admits the accuracy of the statement of law contained within Paragraph 48 of Plaintiff's Complaint but denies its applicability since Plaintiff's claim was not covered under United Specialty Insurance Company policy no. LMH00001144-00; therefore, the allegations contained within Paragraph 48 of Plaintiff's Complaint are denied as pled.

49.

Defendant denies the allegations contained within Paragraph 49 of Plaintiff's Complaint.

## COUNT 5
## CLAIM FOR ATTORNEYS' FEES AND EXPENSES OF LITIGATION
## UNDER O.C.G.A. § 13-6-11

50.

Defendant hereby reasserts and incorporates by reference the responses made previously to Paragraphs 1 through 49 of Plaintiff's Complaint as if those responses were set forth herein.

{SECURE Firm/2035/00009/DRAFTS/03892006.DOCX }

51.

Defendant denies the allegations contained within Paragraph 51 of Plaintiff's Complaint.

52.

Defendant denies that Plaintiff is entitled to the relief sought in the "WHEREFORE"

Paragraph of Plaintiff's Complaint.

### FOURTEENTH DEFENSE

Any paragraph or part thereof not specifically responded to is hereby denied.

WHEREFORE, having fully answered, Defendant **UNITED SPECIALTY**

**INSURANCE COMPANY** prays that it be discharged from this action without costs.

**A TRIAL BY JURY OF TWELVE IS DEMANDED.**

This 7th day of February, 2023.

> **CRUSER, MITCHELL, NOVITZ,**
> **SANCHEZ, GASTON & ZIMET, LLP**
>
> **JASON G. WYRICK**
> Georgia Bar No. 143112
> **TED S. HUGGINS**
> Georgia Bar No. 964381
> **J. ROBB CRUSER**
> Georgia Bar No. 199480
> *Attorneys for Defendant*

Meridian II, Suite 2000
275 Scientific Drive
Peachtree Corners, GA  30092
(404) 881-2622
(404) 881-2630 (Fax)
jwyrick@cmlawfirm.com
thuggins@cmlawfirm.com
rcruser@cmlawfirm.com

- 11 -

**IN THE SUPERIOR COURT OF FULTON COUNTY**
**STATE OF GEORGIA**

| | | |
|---|---|---|
| **DONALD DIXON, Individually and as Assignee of Girls Galore, Inc. d/b/a Allure Gentlemen's Club,** | § § § § | |
| **Plaintiff,** | § § | **CIVIL ACTION** |
| **vs.** | § § | **FILE NO.: 2023CV374797** |
| **UNITED SPECIALTY INSURANCE COMPANY,** | § § § | |
| **Defendant.** | § § | |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have this day electronically filed the within and foregoing **DEFENDANT UNITED SPECIALTY INSURANCE COMPANY'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT** with the Clerk of Court using the Odyssey eFileGA system which will send e-mail notification of such filing to the following counsel of record or served a copy of the within and foregoing by STATUTORY ELECTRONIC SERVICE to the e-mail addresses below:

James (Jay) Sadd, Esq.
Richard E. Dolder, Jr., Esq.
Slappey & Sadd
352 Sandy Springs Circle
Atlanta, GA  30328
jay@lawyersatlanta.com
rich@lawyersatlanta.com
*Counsel for Plaintiff*

This 7th day of February, 2023.

CRUSER, MITCHELL, NOVITZ,
SANCHEZ, GASTON & ZIMET, LLP

**JASON G. WYRICK**
Georgia Bar No. 143112
**TED S. HUGGINS**
Georgia Bar No. 964381
**J. ROBB CRUSER**
Georgia Bar No. 199480
*Attorneys for Defendant*

Meridian II, Suite 2000
275 Scientific Drive
Peachtree Corners, GA  30092
(404) 881-2622
(404) 881-2630 (Fax)

{SECURE Firm/2035/00009/DRAFTS/03892006.DOCX }

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| **DONALD DIXON, Individually and as** | § | |
| **Assignee of Girls Galore, Inc. d/b/a Allure** | § | |
| **Gentlemen's Club,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION** |
| **vs.** | § | |
| | § | **FILE NO.: 2023CV374797** |
| **UNITED SPECIALTY INSURANCE** | § | |
| **COMPANY,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

## DEFENDANT'S DEMAND FOR TRIAL BY JURY

COMES NOW **UNITED SPECIALTY INSURANCE COMPANY**, Defendant in the

above-styled civil action, and files this Demand for Trial by Jury pursuant to O.C.G.A. § 15-12-

122(b), which states as follows:

> In all civil actions in the superior courts, each party may demand a full panel of
> 24 competent and impartial jurors from which to select a jury. When one or more
> of the regular panel of trial jurors is absent or for any reason disqualified, the
> judge, at the request of counsel for either party, shall cause the panel to be filled
> by additional competent and impartial jurors to the number of 24 before requiring
> the parties or their counsel to strike a jury. In all cases the parties or their
> attorneys may strike alternately, with the plaintiff exercising the first strike, until a
> jury of 12 persons is impaneled to try the case.

WHEREFORE, demand is made for trial of this case by a jury as provided by law.

*[Signature contained on next page.]*

This 7th day of February, 2023.

CRUSER, MITCHELL, NOVITZ,
SANCHEZ, GASTON & ZIMET, LLP

Meridian II, Suite 2000
275 Scientific Drive
Peachtree Corners, GA  30092
(404) 881-2622
(404) 881-2630 (Fax)
jwyrick@cmlawfirm.com
thuggins@cmlawfirm.com
rcruser@cmlawfirm.com

**JASON G. WYRICK**
Georgia Bar No. 143112
**TED S. HUGGINS**
Georgia Bar No. 964381
**J. ROBB CRUSER**
Georgia Bar No. 199480
*Attorneys for Defendant*

**IN THE SUPERIOR COURT OF FULTON COUNTY**
**STATE OF GEORGIA**

| | | |
|---|---|---|
| **DONALD DIXON, Individually and as** | § | |
| **Assignee of Girls Galore, Inc. d/b/a Allure** | § | |
| **Gentlemen's Club,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION** |
| **vs.** | § | |
| | § | **FILE NO.: 2023CV374797** |
| **UNITED SPECIALTY INSURANCE** | § | |
| **COMPANY,** | § | |
| | § | |
| **Defendant.** | § | |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I have this day electronically filed the within and foregoing **DEFENDANT'S DEMAND FOR TRIAL BY JURY** with the Clerk of Court using the Odyssey eFileGA system which will send e-mail notification of such filing to the following counsel of record or served a copy of the within and foregoing by STATUTORY ELECTRONIC SERVICE to the e-mail addresses below:

James (Jay) Sadd, Esq.
Richard E. Dolder, Jr., Esq.
Slappey & Sadd
352 Sandy Springs Circle
Atlanta, GA  30328
jay@lawyersatlanta.com
rich@lawyersatlanta.com
*Counsel for Plaintiff*

This 7th day of February, 2023.

CRUSER, MITCHELL, NOVITZ,
SANCHEZ, GASTON & ZIMET, LLP

**JASON G. WYRICK**
Georgia Bar No. 143112
**TED S. HUGGINS**
Georgia Bar No. 964381
**J. ROBB CRUSER**
Georgia Bar No. 199480
*Attorneys for Defendant*

Meridian II, Suite 2000
275 Scientific Drive
Peachtree Corners, GA  30092
(404) 881-2622
(404) 881-2630 (Fax)

{SECURE Firm/2035/00009/DRAFTS/03887708.DOCX }