UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| MICHAEL HANDY,<br><br>    Plaintiff,<br><br>vs.<br><br>SAFERENT SOLUTIONS, LLC,<br><br>    Defendant. | Case No.:<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>**FCRA, 15 U.S.C. §§1681** *et seq.* |

Michael Leon Handy ("Plaintiff" or "Mr. Handy") by and through his counsel brings the following Complaint against SafeRent Solutions, LLC ("Defendant" or "SafeRent") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of a tenant screening report that Defendant published to Plaintiff's potential landlord, which falsely asserted that Plaintiff was a felon.

## INTRODUCTION

1. This is an individual action for damages costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

1

2. Defendant is a consumer reporting agency ("CRA") that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports, also known as tenant screening reports, generated from its database and furnishes these tenant screening reports to mortgage brokers, landlords, and property management companies who use the reports to make decisions regarding prospective borrowers and tenants.

3. Defendant assembled and published an inaccurate tenant screening report to Plaintiff's prospective landlord, which included multiple felony convictions related to illicit drug possession and physical assault, none of which belonged to Plaintiff.

4. In fact, Plaintiff has never been convicted of a felony.

5. The felonies reported by Defendant *do not* belong to Plaintiff, rather, upon information and belief, they belong to a Michael Steven Handy who is currently incarcerated for the felony assault convictions listed by Defendant as being on Plaintiff's record..

6. Plaintiff's prospective landlord denied Plaintiff's housing application after receiving the tenant screening report from Defendant, in which Defendant published the inaccurate criminal record.

7. Defendant's inaccurate reporting could have easily been avoided had Defendant performed a cursory review of the widely available underlying public court records pertaining to the felony convictions prior to publishing the information to Plaintiff's prospective landlord.

8. Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

9. Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking housing by prejudicing their prospective landlords with inaccurate information.

10. Defendant's inaccurate report cost Plaintiff the ability to rent the apartment unit that was suitably accommodating of his needs, causing him physical injury as a result of emotional distress, embarrassment, inconvenience, anxiety, fear of homelessness, and financial loss.

11. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; loss of time and money trying to correct the tenant screening report; damage to his reputation; loss of sleep; lasting psychological damage; loss of

capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

12. As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA.

## PARTIES

13. Michael Leon Handy ("Plaintiff" or "Mr. Handy") is a natural person residing in Norcross, Georgia, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

14. Defendant SafeRent Solutions, LLC ("Defendant" or "SafeRent") is a limited liability company doing business throughout the United States, including the State of Georgia and in this District, and has a principal place of business located at 4600 Regent Blvd., STE 150, Irving, TX 75063-2443.

15. Among other things, Defendant sells consumer reports, often called tenant screening reports, to mortgage brokers, property management companies, and landlords for their use in deciding whether to rent or otherwise offer housing to a prospective tenant. These reports are provided in connection with a business transaction initiated by the consumer.

16. Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because, for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for tenant screening purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

17. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

19. Enacted in 1970, the FCRA's passage was driven in party by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing.  Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

5

20. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

21. Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

22. Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

## THE FCRA'S PROTECTIONS FOR HOUSING APPLICANTS

23. Despite its name, the Fair Credit Reporting Act covers more than just credit reporting; it also regulates tenant screening reports like the one Defendant prepared in Plaintiff's name.

24. The FCRA provides a number of protections for housing applicants who are the subject of tenant screening reports for the purpose of securing housing and credit.

25. In the parlance of the FCRA, tenant screening reports are "consumer reports," and providers of tenant screening reports, like Defendant, are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

26. The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

27. Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

28. Defendant disregarded its duties under the FCRA with respect to Plaintiff's tenant screening report.

**DEFENDANT'S ILLEGAL BUSINESS PRACTICES**

29. Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records. As a result of the increasing availability of this data, there has been a boom in the tenant screening industry.

30. Tenant Screening Reports are generally created by running automated searches through giant databases of aggregated criminal record data. The reports

are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating tenant screening reports.

31. Tenant Screening companies, like Defendant, collect millions of records from multiple repositories with data coming from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

32. Given that Defendant is in the business of selling tenant screening reports, Defendant should be well aware of the FCRA and the attendant harm to consumers caused by reporting inaccurate or outdated information.

33. Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

34. Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving

the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

35. Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

36. Appropriate quality control review of Plaintiff's report would have made clear that Defendant was reporting information belonging to another consumer.

## FACTS

### Plaintiff Applies for an Apartment with Sylvan Homes

37. In or about May 2022, Plaintiff was awarded fully physical custody of his four children (ages 4-17).

38. At that time, Plaintiff was living in a one-room apartment in Norcross, Georgia.

39. In or about November 2022, near the end of his lease, Plaintiff began searching for a new home in Norcross, Georgia.

40. Specifically, Plaintiff was searching for accommodations that were in a safe neighborhood, clean, within his budget, and close enough to his current apartment that his four children could remain in the same school.

41. Plaintiff located a three-bedroom home for rent by non-party Sylvan Homes located approximately two miles from his current address, within his budget, and in a safe neighborhood.

42. Plaintiff utilized a mobile app from Sylvan Homes, paying a fee, to tour the home, and decided that it fit his needs.

43. On or about November 16, 2022, Plaintiff submitted an online application to rent the home from Sylvan Homes, paying a non-refundable application fee in the process.

**Defendant Published an Inaccurate Tenant Screening Report to Sylvan Homes**

44. Sylvan Homes contracted with Defendant to conduct tenant screening reports on prospective tenants to determine whether the prospective tenant is eligible to rent an apartment.

45. On or about November 17, 2022, Defendant sold a tenant screening report about Plaintiff to Sylvan Homes, wherein Defendant published information including a compilation of Plaintiff's credit history, criminal history, and civil records history.

46. The tenant screening report, identified as a "CoreLogic SafeRent Consumer file from CoreLogic SafeRent, LLC" by Defendant, is a consumer report regulated by the FCRA.

47. On or about November 17, 2022, Sylvan Homes sent electronic communication to Plaintiff, stating that Plaintiff's application for rental housing had been denied based on information contained in a consumer reported obtained from Defendant.

48. Plaintiff called Sylvan Homes to ask the reason for the denial, and was given Defendant's number to call.

49. Plaintiff called Defendant and spoke to a representative of Defendant.

50. Defendant's representative, after confirming Plaintiff's identity, informed Plaintiff that the consumer report sent to Sylvan Homes included multiple Oregon felony convictions ascribed to a "Michael Handy."

51. These felonies included a drug distribution charge and three assaults.

52. Plaintiff has never lived in Oregon.

53. Plaintiff has never been convicted of a felony.

54. Defendant published inaccurate information about Plaintiff.  The above-referenced information should not have been included in any tenant screening report about Plaintiff.

55. Specifically, it is indisputable that prior to furnishing the report about Plaintiff to Sylvan Homes, Defendant failed to consult widely available public

court records in Oregon, which indicate that the aforementioned records do not belong to Plaintiff.

56. A cursory review of the widely available underlying public records confirms that the records belong to an individual named Michael Steven Handy ("Steven Handy").

57. Defendant's unreasonable or non-existent procedures allowed Defendant to publish a report about Plaintiff wherein Defendant mixed the criminal history of Steven Handy into that same report.

58. Had Defendant actually consulted or obtained the widely available records, it would have seen the obvious discrepancies between Steven Handy and Plaintiff.

59. The discrepancies that should have caused Defendant to realize Plaintiff is not the same person as Steven Handy include the following:

    (a) Plaintiff's legal name is "Michael Leon Handy" (no middle name) but the name of the individual subject to criminal record is identified in widely available records as "Michael Steven Handy";

    (b) Plaintiff's date of birth, which was provided to Defendant prior to publishing the tenant screening report, is different than the

    date of birth of Steven Handy, information that is available through a simple search of widely available information;

(c) Plaintiff's address history confirms that he has never lived in Oregon, wherein the felony criminal convictions were entered;

(d) Steven Handy is currently incarcerated in for the felony assault convictions included in Defendant's tenant screening report on Plaintiff; and,

(e) Plaintiff's Social Security number, which was provided to Defendant is contained on the face of the tenant screening report is entirely different than that of Steven Handy as confirmed by widely available records.

60. The sole reason the inaccurate felony convictions were reported as belonging to Plaintiff was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the tenant screening report it sold about Plaintiff to Plaintiff's prospective landlord.

61. Had Defendant followed reasonable procedures, it would have discovered that the inaccurate, stigmatizing felony conviction record belongs to an individual with a different middle name than Plaintiff, a different date of birth, and a different Social Security Number, and who is currently incarcerated for crimes

13

committed in Oregon and thus could not have been applying for a rental property in Georgia.

62. In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's prospective landlord inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

**Plaintiff Disputed the Misinformation in Defendant's Tenant Screening Report**

63. Desperate to secure housing with Sylvan Homes and riddled with worry over the far-reaching impacts of the inaccurate information, Plaintiff disputed the inaccurate information via telephone with Defendant.

64. Plaintiff identified himself and provided information to Defendant to support his dispute.

65. Plaintiff specifically disputed the criminal record which did not belong to him.

66. Plaintiff specifically asked Defendant to investigate and delete the criminal record from any tenant screening report about Plaintiff.

67. On November 17, 2022, Plaintiff received Defendant's correspondence confirming that it had reinvestigated Plaintiff's dispute and removed Steven Handy's criminal records from the tenant screening report.

68. Plaintiff continued to follow up with Sylvan Homes in hopes that the application for housing would be approved, however, Sylvan Homes ultimately denied Plaintiff's housing application.

69. Plaintiff reasonably believes that due to Defendant's inaccurate reporting in the first instance, Sylvan Homes formed a negative opinion about Plaintiff and/or moved on to other candidates.

70. Defendant's false report cost Plaintiff a housing opportunity that met his needs, including those attendant to affordability, safety, size, and proximity to his children's school.

71. Due to Defendant's unreasonable procedures in the first place and despite Plaintiff's continued efforts to seek housing, Plaintiff unable to locate another property within his budget that was close enough to keep his children in the same school.

72. Ultimately, out of fear of homelessness, Plaintiff was forced to renew his lease for the one-bedroom apartment, wherein he and his four minor children are currently living.

73. Had Defendant followed reasonable procedures in the first place, Plaintiff would have been able to lease the home from Sylvan Homes, which was unique in the area as being large enough to accommodate his family while also

being both within his budget and close enough to his current location to allow his children to stay in the same school.

74. The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

75. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; loss of time and money trying to correct the tenant screening report; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

76. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

77. Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

78. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

79. At all times pertinent hereto, the above-mentioned tenant screening report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

80. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the tenant screening report it sold about Plaintiff as well as the information it published within the same.

81. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; loss of time and money trying to correct the tenant screening report; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

82. Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

83. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i. Determining that Defendant negligently and/or willfully violated the FCRA;

ii. Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii. Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv. Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Dated: February 8, 2023,	By:	*/s/ Jenna Dakroub*
Jenna Dakroub, No. 385021
**CONSUMER ATTORNEYS PLC**
8245 N. 85th Way
Scottsdale, AZ 85258
T: (602) 807-1525
F: (718) 715-1750
E: jdakroub@consumerattorneys.com

*Attorneys for Plaintiff*
*Michael Handy*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 8, 2023, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notice of such filing to all attorneys of record in this matter. Since none of the attorneys of record are non-ECF participants, hard copies of the foregoing have not been provided via personal delivery or by postal mail.

*/s/ Susan Allsopp*