IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNIQUE SPORTS PRODUCTS, INC. | ) ) ) | |
| Plaintiff, | ) ) | |
| | ) ) | CIVIL ACTION FILE NO. |
| v. | ) ) ) | |
| YONEX CORPORATION | ) ) | **JURY DEMAND** |
| Defendant. | ) ) ) | |

# COMPLAINT

Plaintiff Unique Sports Products, Inc., ("Unique" or "Plaintiff"), for its Complaint against Yonex Corporation ("Yonex" or "Defendant") states as follows:

1.

This is an action for damages, injunctive relief, attorney's fees, costs, and interest under the Lanham Act - 15 U.S.C. §§ 1051-1127, and O.C.G.A. § 10-1-372.

# PARTIES

2.

Unique is a sports-products and sports accessories corporation duly organized and existing under the laws of Georgia. Unique operates their

headquarters and principal place of business in this judicial district with an address of 840 McFarland Parkway, Alpharetta, GA 30004-3364, (with other facilities regionally).

3.

Upon information and belief, Defendant Yonex is a corporation formed under the laws of California with a principal place of business at 19601 Western Ave, Torrance, CA 90501, and registered to do business in Georgia with the Georgia Corporations Division as a "Foreign Profit Corporation."  Defendant Yonex can be served in Georgia via its registered agent, CT Corporation System, at 289 South Culver Street, Lawrenceville, GA 30046.

## JURISDICTION AND VENUE

4.

Upon information and belief, Defendant markets and sells products in the State of Georgia and to Georgia residents, and actively conducts business in the State of Georgia and within this judicial district.

5.

This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. §§ 1114, 1116(a), 1121, and 1125(a) and 28 U.S.C. §§ 1331, 1338, and 1367.

6.

Jurisdiction and venue are proper in this district pursuant to 28 U.S.C. § 1391(b), (c), and (d), and O.C.G.A. § 9-10-91.

7.

By way of example, Yonex provides an interactive website that is accessible in Georgia and in this judicial district at: https://www.yonex.com/.

8.

Yonex's website displays for sale hundreds of various products, including various grips for sporting equipment and tape wraps, specifically various grips labeled "TOUR GRIP."  Yonex also sells their goods through dozens of other retailers, including Tennis Express, Tennis Warehouse, and Walmart, among others.

9.

Yonex uses this website to target customers and conduct business in Georgia and this judicial district.  Among other things, this website allows customers to order goods bearing Unique's registered marks (the "Infringing Goods").

## FACTUAL BACKGROUND

10.

Unique is a small corporation local to Georgia who ensures over 75% of their sports products and accessories are made in the USA.

11.

The few imported products that Unique has are crafted with their own molds, inspected, and packaged in their U.S. plant.

12.

Unique was founded in 1972 just as the tennis market was beginning to explode.

13.

Unique has used TOURNA GRIP® as its trademark continuously and substantially exclusively since as early as 1978, with a U.S. Reg. No. 1,117,774 and German trademark registration Reg. No. 1,029,927.  *See* Exhibit A.

14.

Unique continues to use and sell its TOURNA GRIP® products through its own store as well as through its online retail partners.

15.

Unique has used PRO TOUR GRIP® as its trademark continuously and

substantially exclusively since as early as 2012, with a U.S. Reg. No. 4,758,145. *See* Exhibit B.

16.

Unique continues to use and sell its PRO TOUR GRIP® products through its own store as well as through other online retailers, such as at Holabird Sports. *See* Exhibit C.

17.

Yonex is uniquely aware of Unique's trademarks and rights, having been sued by Unique in 1998 over the use of "Tour Grap" being confusingly similar to Unique's TOURNA GRIP® Mark.

18.

Unique is the owner of all rights, title, and interest in U.S. Trademark Registration No. 1,117,774, for the mark TOURNA GRIP®, as described above and shown in Exhibit A.  This mark was first used in commerce as early as 1978.

19.

Unique is the owner of all rights, title, and interest in U.S. Trademark Registration No. 4,758,145, for the mark PRO TOUR GRIP®, as described above and shown in Exhibit B.  This mark was first used in commerce as early as 2012.

20.

Additionally, in light of Unique's use of these marks, described above and shown in Exhibit A and Exhibit B (collectively the "Unique Marks"), on various sports products including tennis grips for many years, Unique has significant common law rights in these marks in connection with wraps and related goods.

21.

The Unique Marks have generated substantial good will as the public recognizes and understands that these marks distinguish and identify goods produced, sold, licensed, or sponsored by Unique.

22.

For many years, Unique has extensively and continuously used and promoted the Unique Marks in connection with its handle grips for sporting equipment and other goods.

23.

Unique has expended great effort and large sums of money in making its Unique Marks well-known to the public.  Unique has established a reputation for excellence, quality, and reliability in connection with the goods it provides in conjunction with the Unique Marks.

24.

As a result of Unique's efforts and substantial expenditures, and as a result of Unique's superior reputation, Unique enjoys virtually universal recognition of its Unique Marks in connection with its goods.

25.

The Unique Marks have become well-known and are instantly recognizable to the public as being associated with the goods provided by or affiliated with Unique.

26.

Registration Nos. 1,117,774, and 4,758,145 have achieved incontestable status.

27.

Without any sponsorship, approval, or permission from Unique, Yonex uses its website to target customers, and it offers to sell goods bearing the Unique Marks.

28.

Upon information and belief, Yonex is in the business of manufacturing handle grips for sporting equipment and goods related to various sports including badminton, tennis, golf, running, and snowboarding.

29.

Among the hundreds of sports accessories sold by Yonex are products bearing the Unique Marks standing alone or in conjunction with additional words or phrases.

30.

Goods for sale that use the Unique Marks and are sold by Yonex or its retailers include tennis racket wraps and grips.

**Yonex's Misappropriation of the Unique Marks**

31.

Unique has used the Unique Marks extensively and continuously for many years before Yonex began marketing, selling, distributing and offering for sale goods with confusingly similar imitations of the Unique Marks. For example, Unique has offered and continues to offer, via its online store or its retailers, various grips for sports equipment or handle grips for sporting equipment. A list of retailers selling Unique's products is provided on the right side of the website in Exhibit D. Examples of Yonex's infringing products sold through common retailers including Walmart, Tennis Express, and Tennis Warehouse are provided in Exhibit E.

32.

Yonex's use of confusingly similar imitations of the Unique Marks is likely to deceive, confuse, and mislead prospective purchasers and purchasers into

believing that the racket grip tape and wrap products marketed, sold, distributed, and offered for sale by Yonex are produced by, authorized by, or in some manner associated with or sponsored by Unique, which they are not. The likelihood of confusion, mistake, and deception engendered by this wholesale and brazen misappropriation of the Unique Marks has caused irreparable harm to the goodwill symbolized by the Unique Marks and the reputation for quality and excellence that they embody, and that harm is ongoing.

33.

Purchasers, prospective purchasers, and others viewing Yonex's confusingly similar imitations of the Unique Marks in connection with Yonex's goods are likely to mistakenly attribute the goods to Unique. These activities are therefore likely to cause confusion before, during, and after the time of purchase or use (or attempted purchase or use) of Yonex's goods.  This is particularly damaging with respect to those persons who may perceive a defect or lack of quality in Yonex's competing products, especially by those being manufactured abroad.  By causing such a likelihood of confusion, mistake, and deception, Yonex has inflicted irreparable harm to Unique's goodwill in the Unique Marks, and the reputation for quality and excellence that they embody, and that harm is ongoing.

34.

Yonex is using confusingly similar imitations of the Unique Marks in connection with goods that are directly competitive with or related to Unique's goods or within Unique's natural zone of expansion.

35.

Yonex's unauthorized use of the Unique Marks is commercial in nature and is intended to, and will, directly compete with the lawful publication, distribution and advertising commercial activities of Unique and its licensees to the detriment of Unique.

36.

Upon information and belief, Yonex knowingly, willfully, and intentionally adopted and used confusingly similar imitations of the Unique Marks to trade on the goodwill symbolized by the Unique Marks and the reputation for quality and excellence that they embody.

37.

Upon information and belief, Yonex deliberately employs the Unique Marks to mislead and confuse consumers that Unique's goods are provided, sponsored, affiliated with, licensed, or approved by Unique. Yonex thus unfairly benefits from the goodwill and excellent reputation of the Unique Marks established by Unique throughout the United States and internationally at great effort and expense.

38.

Yonex has not now, and has never been, authorized by Unique to use the Unique Marks or any other colorable imitations of the Unique Marks in connection with any goods, nor has Unique consented to any such use.

39.

Through Yonex's use of colorable imitations of the Unique Marks, Unique's goodwill has suffered irreparable harm, which harm will continue as long as Yonex's unauthorized uses continue.

40.

The relatedness, or similarity, between Unique's products and Yonex's infringing products point to a high likelihood of confusion. Consumers interested in purchasing Unique's grips are likely to believe, mistakenly, that Yonex's merchandise comes from the same source, or is somehow connected with or licensed by Unique.

41.

Given the nearly identical nature of the goods provided under Unique's Marks, the above-described conduct constitutes trading off of the extensive goodwill Unique has developed in its famous Unique Marks.

**Yonex's Ongoing Pattern of Willful Infringement**

42.

Yonex's website contains the statement "Trade name rights belong to the Company or the respective owner" which is an admission that Defendant knows it must obtain permission to sell merchandise that contains another's trademarks. (*see* https://www.yonex.com/terms-and-conditions).

43.

Unique enforced its trademark rights against Yonex in 1998. Yonex has actual knowledge of Unique's Marks.

44.

Upon learning of Yonex's infringing conduct, Unique, through its counsel, notified Yonex of the Unique Marks and requested (among other things) that Yonex cease and desist from any further production, and provide a commercially reasonable sell-off phase and phase out period for offers to sell, sale, or distribution of the infringing products that use the Unique Marks. A copy of Unique's April 6, 2022, letter to Yonex is attached as Exhibit F. (Attachment 3 excluded).

45.

April 28, 2022, Yonex replied to Unique's first letter and refused to comply with Unique's demands. A copy of Yonex's April 28, 2022, reply letter to Unique is attached as Exhibit G.

46.

Upon information and belief, Yonex's reply letter asserted various insufficient or inapplicable defenses. For example, Yonex asserts that Unique's Marks are unprotectable.

### FIRST CLAIM FOR RELIEF
### Trademark Infringement of the Unique Marks under Section 32 of the Lanham Act

47.

Unique hereby incorporates and re-alleges the assertions in paragraphs 1 to 46 above as if fully set forth herein.

48.

Unique owns the valid and enforceable federal trademark registrations for the Unique Marks. *See* Exhibit A and Exhibit B.

49.

Yonex's use of marks confusingly similar to the Unique Marks with the same goods is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Yonex's goods are produced or distributed by Unique, or are associated or connected with Unique, or have the sponsorship, endorsement, or approval of Unique, and as such constitutes infringement of the Unique Marks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

50.

Unless enjoined, Yonex will continue to cause a likelihood of confusion and deception of members of the public and, additionally, injury to Unique's goodwill and reputation as embodied in the Unique Marks, for which Unique has no adequate remedy at law.

51.

Yonex's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Unique's federally registered Unique Marks to Unique's great and irreparable injury.

52.

Yonex has caused and is likely to continue causing substantial injury to the public and to Unique, and Unique is entitled to injunctive relief and to recover Yonex's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116 and 1117.

### SECOND CLAIM FOR RELIEF
**Unfair Competition and False Designation of Origin as to the Unique Marks under Section 43(a) of the Lanham Act
(15 U.S.C. § 1125(a)(1)(A))**

53.

Unique hereby incorporates and re-alleges the assertions in paragraphs 1 to 52

above as if fully set forth herein.

54.

Through extensive use of the Unique Marks, in the case of TOURNA GRIP® for over 40 years, Unique has developed extensive goodwill rights in said marks, which goodwill is protected by, *inter alia,* Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

55.

Yonex's use of confusingly similar imitations of the Unique Marks has caused and/or is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Yonex's goods are produced or distributed by Unique, or are associated or connected with Unique, or have the sponsorship, endorsement, or approval of Unique.

56.

Yonex's actions constitute false representations, false descriptions, and false designations of origin of their goods in violation of 15 U.S.C. § 1125(a), and Yonex's activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the public and, additionally, injury to Unique's goodwill and reputation as embodied in the Unique Marks, for which Unique has no adequate remedy at law.

57.

Yonex's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the Unique Marks to the great and irreparable injury to Unique.

58.

Yonex's conduct has caused, and is likely to continue causing, substantial injury to the public and to Unique, and Unique is entitled to injunctive relief and to recover Yonex's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1116 and 1117.

### THIRD CAUSE OF ACTION
**Common Law Unfair Competition and Trademark Infringement under O.C.G.A. § 10-1-372**

59.

Unique hereby incorporates and re-alleges the assertions in paragraphs 1 to 58 above as if fully set forth herein.

60.

For many years, Unique has made exclusive use of the Unique Marks on its racket grip tape and wrap products.

61.

Yonex's use of confusingly similar imitations of the Unique Marks has

caused and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Yonex's competing grip and wrap products are manufactured or distributed by Unique, or are associated or connected with Unique, or have the sponsorship, endorsement, or approval of Unique. The Unique Marks are unique, distinctive, and have acquired secondary meaning.

62.

Yonex, by virtue of its acts as alleged above, has willfully, knowingly, maliciously and intentionally engaged in acts of unfair competition in violation of O.C.G.A. § 10-1-372.

63.

Yonex's conduct has caused, and if not enjoined, will continue to cause irreparable damage to Unique in a manner that cannot be calculated or compensated in monetary damages. Unique has no adequate remedy at law.

64.

Pursuant to O.C.G.A. § 10-1-373, Unique is entitled to preliminary and permanent injunctive relief as well as attorneys' fees and costs of this action.

**PRAYER FOR RELIEF**

WHEREFORE, Unique demands a jury trial on all claims so triable and prays

for judgment as follows:

(a) The Court enter judgment that Defendant has engaged in trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114, has engaged in false designation of origin in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a), and has engaged in deceptive trade practices in violation of the Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-372;

(b) On Plaintiff's First and Third Claims for Relief, damages, disgorgement of Defendant's profits, enhanced damages (including treble damages for willfulness), attorneys' fees, costs, prejudgment interest, preliminary and permanent injunctive relief prohibiting Defendant from further violations of the Lanham Act, and a destruction order requiring that Defendant deliver up and destroy all goods, merchandise, products, labels, signs, prints, packaging, wrappers, containers, advertising materials, internet images, and other materials that constitute or reproduce the Unique Marks or any other marks confusingly similar to the Unique Marks;

(c) On Plaintiff's Third Claim for Relief, preliminary and permanent injunctive relief prohibiting further violations of Georgia's Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-372, attorneys' fees and costs;

(d) An award of Plaintiff's costs associated with this action;

(e) An award of prejudgment interest; and

(f) On each of Plaintiff's claims for relief, such further and other relief as the Court deems just and proper.

## Demand for Jury Trial

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted, February 8, 2023.

s/ *W. Scott Creasman*
W. Scott Creasman
screasman@taylorenglish.com
Georgia Bar No. 194860
Falkner N. Werkhaven
Fwerkhaven@taylorenglish.com
Georgia Bar No. 835676

TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle – Suite 200
Atlanta, Georgia 30339
Telephone: (770) 434-6868
Facsimile: (404) 434-7376

Attorneys for Plaintiff
Unique Sports Products, Inc.
