## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

ANTHONY DEVON
WEATHERSPOON and ANTONIO
DUSHAWN WEATHERSPOON,

                              Plaintiffs,

vs.

EQUIFAX INFORMATION
SERVICES LLC, EXPERIAN
INFORMATION SOLUTIONS, INC.,
and TRANS UNION, LLC,

                    Defendants.

CASE NO.:

**<u>JURY TRIAL
DEMANDED</u>**

## <u>COMPLAINT</u>

Anthony Devon Weatherspoon ("Plaintiff Anthony Weatherspoon") and

Antonio Dushawn Weatherspoon ("Plaintiff Antonio Weatherspoon") (collectively

"Plaintiffis") bring this Complaint against Equifax Information Services LLC

("Equifax"), Experian Information Solutions, Inc. ("Experian"), and Trans Union,

LLC ("Trans Union") (collectively "Defendants") for actual, statutory, and punitive

damages, costs, and attorney's fees, for violations of the Fair Credit Reporting Act

("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of the credit bureau defendants' mixing of Plaintiff's credit files with another consumer's credit file, despite the fact that the other consumer has an entirely different name and Social Security number than Plaintiff.

## PRELIMINARY STATEMENT

1.     The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual citizens. Data technology, whether it be used by businesses, banks, the Internal Revenue Service or other institutions, allows information concerning individuals to flow immediately to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients, and all of society should benefit from the resulting convenience and efficiency.

2.     Unfortunately, however, this information has also become readily available for and subject to mishandling and misuse. Individuals can sustain substantial damage, both emotionally and economically, whenever inaccurate information or fraudulent information is disseminated about them.

3.     The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning

individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

4.     Theses CRAs sell to readily paying subscribers (i.e., retailers, landlords, lenders, automobile dealers, potential employers, and other similar interested parties) information commonly called "consumer reports," concerning individuals who may be applying for retail credit, to lease an apartment, to obtain a mortgage, auto loan, employment, or the like.

5.     "Credit is the lifeblood of the modern American economy, and for the American consumer access to credit has become inextricably tied to consumer credit scores as reported by credit reporting agencies." *Burke v. Experian Info. Sols., Inc.*, 2011 WL 1085874, at *1 (E.D. Va. Mar. 18, 2011).

6.     Congress made the following findings when it enacted the FCRA in 1970:

1) The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

2) An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers.

3) Consumer reporting agencies have assumed a vital role in assembling and evaluation consumer credit and other information on consumers.

4) There is a need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.

15 U.S.C. § 1681(a)(1-4). Thus, one of the fundamental purposes of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter." 15 U.S.C. § 1681(b). Accordingly, "[t]he FCRA evinces Congress' intent that consumer reporting agencies, having the opportunity to reap profits through the collection and dissemination of credit information, bear 'grave responsibilities'". *Cushman v. Trans Union*, 115 F.3d 220, 225 (3d Cir. 1997).

7.    Since 1970, when Congress enacted the Fair Credit Reporting Act, as amended, 15 U.S.C. § 1681 *et seq.* ("FCRA"), federal law has required CRAs to have in place and to utilize reasonable procedures "to assure the maximum possible accuracy" of the personal and financial information that they compile and sell about individual consumers.

8.    "Mixed files" create a false description and representation of a consumer's credit history.

4

9.     A "mixed file" occurs when personal and credit information belonging to Consumer B appears in one or more of Consumer A's credit files.

10.     The Federal Trade Commission defined a mixed credit file as a file that "refers to a Consumer Report in which some or all of the information pertains to Persons other than the Person who is the subject of that Consumer Report." *F.T.C. v. TRW, Inc.*, 784 F. Supp. 361, 362 (N.D. Tex. 1991).

11.     Mixed files are not a new phenomenon. Equifax, Experian, and Trans Union have been on notice of the existence of mixed files, and the fact that their procedures for creating credit files, including their matching algorithms, are prone to frequently cause mixed files, for over thirty (30) years. *See Thompson v. San Antonia Retail Merchants Ass'n*, 682 F.2d 509, 511 (5th Cir. 1982).

12.     More recently, Equifax, Experian, and Trans Union have been the subject of numerous state attorney general actions relating to its mixed file problem.

13.     For example, in 2015, the New York Attorney General filed charges and settled claims with Equifax, Experian, and Trans Union over mixed files.[1] *See In the Matter of Eric T. Schneiderman, Attorney General of the State of New York v.*

---

[1] https://ag.ny.gov/press-release/2015/ag-schneiderman-announces-groundbreaking-consumer-protection-settlement-three Last visited January 24, 2021; *see also* https://ag.ny.gov/pdfs/CRA%20Agreement%20Fully%20Executed%203.8.15.pdf Last visited January 24, 2021.

*Experian Information Solutions, Inc.; Equifax Information Services, LLC; and Trans Union LLC.*

14.     Notwithstanding Equifax, Experian, and Trans Union's notice and being subject to repeated enforcement actions, mixed files continue to occur dispute consumers' unique personal identifying information, such as Social Security numbers, date of birth, and addresses.

15.     Further, mixed files result in the disclosure of a consumers' most personal identifying and financial information absent the consumer's knowledge or consent, or both.

16.     Equifax, Experian, and Trans Union have each been sued thousands of times wherein an allegation was made that Equifax, Experian, and Trans Union violated the FCRA. Moreover, Equifax, Experian, and Trans Union are sued, at a minimum, hundreds of times each year wherein an allegation is made that they mixed a consumers' credit file with that of another person.

17.     Private FCRA lawsuits have resulted in multi-million-dollar verdicts for consumers who fall victim to a mixed credit file.

18.     For example, in 2002, the jury in *Judy Thomas v. Trans Union LLC*, District of Oregon, Case No. 00-1150-JE, found Trans Union had willfully violated the FCRA by mixing Judy Thomas's personal and credit information with another

consumer's and failing to unmix them dispute Ms. Thomas' numerous disputes. The jury awarded Ms. Thomas $300,000 in actual damages and $5 million in punitive damages. Despite the verdict, Equifax, Experian, and Trans Union continue to mix consumers' credit files with other consumers' credit files.

19.     In 2007, the jury in *Angela Williams v. Equifax Information Services, LLC*, Circuit Court for Orange County Florida, Case No. 48-2003-CA-9035-0, awarded Angela Williams $219,000 in actual damages and $2.7 million in punitive damages for willfully violating the FCRA by mixing Angela Williams with another consumer and failing to unmix them despite Ms.  Williams' disputes. Despite the verdict, Equifax, Experian, and Trans Union continue to mix consumers' credit files with other consumers' credit files.

20.     In 2013, the jury in *Julie Miller v. Equifax Information Services, LLC*, District of Oregon, Case No. 3:11-cv-01231-BR, awarded Julie Miller $180,000 in actual  damages and $18.4 million in punitive damages for willfully violating the FCRA by mixing Julie Miller with another consumer and failing to unmix them despite Ms. Millers' numerous disputes. Despite the verdict, Equifax, Experian, and Trans Union continue to mix consumers' credit files with other consumers' credit files.

21.     Most recently, a jury assessed a $60 million verdict against Trans Union for mixing innocent American citizens with terrorists and drug dealers by matching consumers with the Office of Foreign Asset Control's "terrorist alert" list based on first and last name alone. *See Ramirez v. Trans Union, LLC,* No. 12-CV-00632-JSC, 2017 WL 5153280, at *1 (N.D. Cal. Nov. 7, 2017), *aff'd in part, vacated in part, rev'd in part sub nom. Ramirez v. TransUnion LLC*, 951 F.3d 1008 (9th Cir. 2020). Despite the verdict, Equifax, Experian, and Trans Union continue to mix consumers' credit files with other consumers' credit files.

22.     "Evidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong medicine is required to cure the defendant's disrespect for the law." *Dalton v. CAI*, 257 F.3d 409, 418 (4th Cir. 2001) (noting that whether "other consumers have lodged complaints similar to Dalton's against CAI" is relevant to willfulness under the FCRA). Moreover, repeated noncompliance with statutory duties can establish that the defendants acted willfully. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 53 (2007) (punitive damages can be awarded based on "reckless disregard for a statutory duty").

23.     No less than three federal Courts of Appeal have held a consumer reporting agency violates 15 U.S.C. § 1681e(b) and may be found to have willfully violated the FCRA when it mixes a consumer's file with another consumer.

24.     Finally, the Federal Trade Commission has specifically warned consumer reporting agencies, including Equifax, Experian, and Trans Union, to review their procedures when a mixed file case occurs.

25.     Despite federal and state law, Congressional mandate, federal and state enforcement actions, and thousands of consumer lawsuits, mixed credit files remain a significant problem for innocent consumers, including Plaintiff.

## **THE PARTIES**

26.     Plaintiff Anthony Devon Weatherspoon ("Plaintiff") is a natural person who resides in the State of Illinois, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

27.     Plaintiff Antonio Dushawn Weatherspoon ("Plaintiff") is a natural person who resides in the State of Illinois, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

28.     Defendant Equifax Information Services, LLC ("Equifax") is a limited liability company and resides in the State of Georgia, including in this District.

29.     Equifax is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Equifax is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

30.     Defendant Experian Information Solutions, Inc. ("Experian") is a limited liability company that is authorized to do business in the State of Georgia, including in this District.

31.     Experian is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Experian is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

32.     Defendant Trans Union, LLC ("Trans Union") is a limited liability company that is authorized to do business in the State of Georgia, including in this District.

33.     Trans Union is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Experian is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

## **JURISDICTION AND VENUE**

34.     This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

35.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

36.     Plaintiffs mailed multiple written disputes regarding inaccurate information in her Equifax credit report to Equifax located in Fulton County; Atlanta, Georgia.

37.     Defendant Equifax received Plaintiffs' multiple written disputes in Fulton County; Atlanta, Georgia.

38.     Upon receipt of Plaintiffs' disputes, Defendant Equifax forwarded such disputes to furnishers via Automated Consumer Dispute Verification electronic forms. Upon completion of its investigations pursuant to 15 U.S.C. § 1681s-2(b), the furnishers responded to Defendant Equifax's electronic communications, which originated from Atlanta, Georgia, by sending its results electronically to Defendant Equifax in Fulton County; Atlanta, Georgia

39.     Defendant Equifax then processed the dispute results at its National Consumer Assistance Center in Atlanta, Georgia, and mailed Plaintiffs its final dispute results from Atlanta, Georgia.

## FACTS

### Summary of the Fair Credit Reporting Act

40.     The FCRA governs the conduct of consumer reporting agencies in an effort to preserve the integrity of the consumer banking system and to protect the rights of consumers to fairness and accuracy in the reporting of their credit information.

41.     The purpose of the FCRA is to require consumer reporting agencies to "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personal, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information…." 15 U.S.C. § 1681(b).

42.     The FCRA further requires that when preparing consumer reports a consumer reporting agency must follow "reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

### The Credit Bureau's Processing of Credit Information

43.     Defendants Equifax, Experian, and Trans Union regularly receive information from various sources around the country including banks, credit unions, automobile dealers, student loan providers, public information vendors, and others.

44.     These sources are known as "furnishers" within the credit reporting industry and under the FCRA.

45.     Defendants collect information from thousands of furnishers.

46.     The process by which Defendants receive, sort, and store information is largely electronic.

47.     Furnishers report credit information to Defendants through the use of coded tapes that are transmitted on a monthly basis through software known as Metro 2.

48.     Defendants take the credit information reported by furnishers and create consumer credit files.

49.     Defendants maintain credit files on more than 200 million consumers.

50.     Credit files are updated electronically by the furnishers to reflect new information regarding the reported accounts (sometimes referred to within the industry as "tradelines").

## Equifax, Experian, and Trans Union's Mixed File Problem

51.     Defendants know that different consumers can have similar names.

52.    Defendants know that different consumers can have similar Social Security numbers.

53.    Defendants know that different consumers with similar names can also have similar Social Security numbers.

54.    Defendants know that public records often do not contain identifying information such as Social Security numbers or dates of birth.

55.    Defendants match tradelines and public records to a consumer credit file by comparing the information about the consumer associated with the tradeline or public record to the information they maintain about the consumer in the consumer's credit file or files.

56.    Defendants accomplish this matching of credit information to consumer credit files through the use of certain matching algorithms or database rules.

57.    Sometimes Defendants' matching algorithms match information belonging to one consumer to the credit file of another consumer; resulting in what is commonly known in the industry as a mixed or merged credit file.

58.    Mixed files are not a new phenomenon. In fact, as long ago as the early 1990s, the Federal Trade Commission ("FTC") (the government agency charged with enforcement of the FCRA), entered into individual Consent Decrees with each

of the three major CRAs, Equifax, Experian, and Trans Union, regarding their significant failures and deficiencies with respect to mixed files.

59.     Despite Defendants' long-standing and specific knowledge of the mixed file problem, Plaintiffs' credit reports were still generated by Defendants containing information belonging to another consumer.

60.     A mixed or merged credit file is the result of Defendants inaccurately mixing personal identifying information and credit information and/or an entire credit file belonging to one consumer into the credit file of another consumer.

61.     There are many different possible causes for the mixing of credit files but all of them relate in one way or another to the algorithms (the database rules) used by Defendants to match personal identifying information and credit information, including public record information, to a particular consumer's credit file.

62.     The success or failure of these algorithms and rules is both a function of the rules themselves and of the information provided by the furnishers of the tradeline information to Defendants.

63.     A mixed consumer report could be caused by an improper algorithm just as it could be caused by the inaccurate reporting of a consumer's personal

"indicative" information (e.g., name, Social Security number, address, date of birth, etc.) by the furnishers to Defendants.

64.    These rules also determine which credit files are selected by the algorithm and merged to create a complete consumer report.

65.    Therefore, a mixed consumer report is sometimes the result of the mixing of two or more consumer credit files belonging to different consumers into one consumer report.

## FACTS AS TO PLAINTIFF ANTHONY DEVON WEATHERSPOON

### Plaintiff's Mixed Trans Union Credit File as of May 24, 2021

66.    Upon information and belief, as of May 24, 2021, Plaintiff Anthony Weatherspoon's Trans Union credit report contained the following account, which belongs to another consumer:

Account Name     Chicago Finance Center
Balance          $10, 646.00

67.    Plaintiff's Trans Union credit report contained the following name, which belongs to his brother:

Antonio Dush Weatherspoon

68.    Defendants mixed another consumer's personal and account information into Plaintiff's credit reports despite the fact that numerous

discrepancies exist between their personal identification information. The discrepancies that should have caused Defendants to realize Plaintiff is not the same person as this other consumer include the following:

a) Plaintiff's legal name is Anthony Devon Weatherspoon and the personal and account information Defendants mixed into Plaintiff's credit reports belongs to another consumer, Antonio Dushawn Weatherspoon; and

b) Plaintiff's Social Security number is different than the other consumer's Social Security number.

**Plaintiff's July 16, 2021 Dispute with Equifax**

69.     In July 16, 2021, Plaintiff Anthony Weatherspoon filed a written dispute regarding the information that does not belong to him with Defendant because they were reporting another consumer's information.

70.     Plaintiff's July 16, 2021 dispute specifically included Plaintiff's full name, date of birth, Social Security number, and current address, so that the credit bureaus would be able to properly identify Plaintiff's and locate Plaintiff's credit file.

71.    Plaintiff also attached a copy of Plaintiff's driver's license, copy of Plaintiff's Social Security card, and a written explanation to Plaintiff's July 16, 2021 dispute.

### The Credit Bureaus' Method for Considering Consumer Credit Report Disputes

72.    The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes. *See* 15 U.S.C. § 1681i(a)(5)(D).

73.    Consumer reporting agencies Equifax, Experian, Trans Union, and Innovis have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of performance. e-OSCAR allows data furnishers to create and respond to disputes initiated by consumers by routing credit reporting agency-created prompts for automated consumer dispute verifications to the appropriate data furnishers. e-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

74.    That lexicon or unique language is commonly referred to in the credit reporting industry as "Metro II."  It is also known industry wide as the CDIA's "Credit Reporting Resource Guide."

75.    Metro II is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately

appear on credit reports issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

76.     Metro II codes are used on an industry wide form known within the credit industry as an Automated Consumer Dispute Verification ("ACDV") electronic form.

77.     The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and the credit reporting agencies.

78.     These ACDV "fields" have various titles for the many substantive areas into which the Metro II codes can be entered.

79.     Upon receiving a dispute from a consumer, the credit bureaus have an automated system that prepares ACDVs that are sent to each of the data furnishers that are reporting the credit accounts disputed by a consumer.

80.     The data furnishers then have an obligation under the FCRA to conduct a reasonable reinvestigation with respect to the disputed credit account and review all relevant information provided by the consumer with the dispute to determine whether the disputed credit account information is accurate and/or belongs to the disputing consumer. *See* 15 U.S.C. § 1681s-2(b).

81.     Once the data furnisher completes its reinvestigation, it will code the ACDV accordingly, representing either that the disputed account was verified as accurate and belonging to the disputing consumer, updating information related to the account, or deleting the account entirely, and return the ACDV to the respective credit bureau(s) via eOSCAR.

### Equifax's Response to Plaintiff's July 16, 2021 Dispute

82.     Defendant Equifax did not respond to Plaintiff's July 16, 2021 dispute.

83.     Defendant Equifax did not indicate that Plaintiff's July 16, 2021 dispute was found to be frivolous or irrelevant.

84.     Defendant Equifax failed to conduct a reinvestigation of Plaintiff's dispute, in violation of 15 U.S.C. § 1681i.

85.     Defendant also failed to provide the requested credit disclosure in violation of 1681g.

86.     Thereafter, Equifax continued to report personal and credit account information belonging to another consumer in Plaintiff's credit file.

### Plaintiff's August 23, 2021 Dispute with Equifax and TransUnion

87.     On or about August 23, 2021, Plaintiff Anthony Weatherspoon filed written disputes regarding the information that do not belong to Plaintiff with Defendants because each were reporting another consumer's information.

88.     Plaintiff's August 23, 2021 dispute specifically included Plaintiff's full name, date of birth, Social Security number, and current address, so that the credit bureaus would be able to properly identify Plaintiff and locate Plaintiff's credit file.

89.     Plaintiff also attached a copy of Plaintiff's driver's license, copy of Plaintiff's Social Security card, and a written explanation to Plaintiff August 23, 2021 dispute.

**Equifax's Response to Plaintiff's August 23, 2021 Dispute**

90.     Defendant Equifax did not respond to Plaintiff's August 23, 2021 dispute.

91.     Defendant Equifax did not indicate that Plaintiff's August 23, 2021 dispute was found to be frivolous or irrelevant.

92.     Defendant Equifax failed to conduct a reinvestigation of Plaintiff's dispute, in violation of 15 U.S.C. § 1681i.

93.     Defendant also failed to provide the requested credit disclosure in violation of 1681g.

**Trans Union's Response to Plaintiff's August 23, 2021 Dispute**

94.     Defendant Trans Union did not respond to Plaintiff's August 23, 2021 dispute.

95.     Defendant Trans Union did not indicate that Plaintiff's August 23, 2021 dispute was found to be frivolous or irrelevant.

96.     Defendant Trans Union failed to conduct a reinvestigation of Plaintiff's dispute, in violation of 15 U.S.C. § 1681i.

97.     Defendant also failed to provide the requested credit disclosure in violation of 1681g.

**Plaintiff's March 6, 2022 Dispute with Trans Union**

98.     On or about March 6, 2022, Plaintiff Anthony Weatherspoon filed a written dispute regarding the accounts that do not belong to Plaintiff with Defendant because each were reporting another consumer's accounts.

99.     Plaintiff's March 6, 2022 dispute specifically included Plaintiff's full name, date of birth, Social Security number, and current address, so that the credit bureaus would be able to properly identify Plaintiff and locate Plaintiff's credit file.

100.   Plaintiff also attached a copy of Plaintiff's driver's license, copy of Plaintiff's Social Security card, and a written explanation to Plaintiff's March 6, 2022 dispute.

### Trans Union's Response to Plaintiff's March 6, 2022 Dispute

101.   Defendant Trans Union did not respond to Plaintiff's March 6, 2022 dispute.

102.   Defendant Trans Union did not indicate that Plaintiff's March 6, 2022 dispute was found to be frivolous or irrelevant.

103.   Defendant Trans Union failed to conduct a reinvestigation of Plaintiff's dispute, in violation of 15 U.S.C. § 1681i.

104.   Defendant also failed to provide the requested credit disclosure in violation of 1681g.

### Defendants Experian and Trans Union Fail to Provide Credit Disclosure in May 2022

105.   On or about May 4, 2022, Plaintiff Anthony Weatherspoon requested a credit disclosure from Defendants Experian and Trans Union.

106.   Defendants failed to provide the requested credit disclosure in violation of 1681g.

**Defendants Experian and Trans Union Fail to Provide Credit Disclosure**

107.   On or about May 20, 2022, Plaintiff Anthony Weatherspoon f requested a credit disclosure from Defendants Experian and Trans Union.

108.   Defendants failed to provide the requested credit disclosure in violation of 1681g.

**Defendants Experian and Trans Union Fail to Provide Credit Disclosure June 2022**

109.   On or about June 13, 2022, Plaintiff Anthony Weatherspoon requested a credit disclosure from Defendants Experian and Trans Union.

110.   Defendants failed to provide the requested credit disclosure in violation of 1681g.

**Defendants Experian and Trans Union Fail to Provide Credit Disclosure**

111.   On or about July 1, 2022, Plaintiff Anthony Weatherspoon requested a credit disclosure from Defendants Experian and Trans Union.

112.   Defendants failed to provide the requested credit disclosure in violation of 1681g.

**Defendants Experian and Trans Union Fail to Provide Credit Disclosure**

113.   On or about October 20, 2022, Plaintiff Anthony Weatherspoon requested a credit disclosure from Defendants.

**FACTS AS TO PLAINTIFF ANTONIO DUSHAWN WEATHERSPOON**

**Plaintiff's Mixed Experian Credit File as of March 4, 2021**

114.   Upon information and belief, as of March 4, 2021, Plaintiff Antonio Weatherspoon's Experian credit report contained the following social security numbers, which do not belong to Plaintiff:

> XXX-XX-1190
> XXX-XX-1181

115. Defendants mixed another consumer's personal and account information into Plaintiff's credit reports despite the fact that numerous discrepancies exist between their personal identification information. The discrepancies that should have caused Defendants to realize Plaintiff is not the same person as this other consumer include the following:

> c)   Plaintiff's legal name is Antonio Dushawn Weatherspoon and the personal and account information Defendants mixed into Plaintiff's credit reports belongs to another consumer, Anthony Devon Weatherspoon; and

d) Plaintiff's Social Security number is different than the other consumer's Social Security number.

**Plaintiff's Mixed Experian Credit File as of March 10, 2021**

116.   Upon information and belief, as of March 10, 2021, Plaintiff Antonio Weatherspoon's Experian credit report contained the following credit inquiry, which does not belong to Plaintiff:

Credit One inquired 7-22-2019

117.   Plaintiff's Experian credit report also contained the following name, which does not belong to Plaintiff:

Anthony D. Weatherspoon

Anthony Devon Weathers

Defendants mixed another consumer's personal and account information into Plaintiff's credit reports despite the fact that numerous discrepancies exist between their personal identification information. The discrepancies that should have caused Defendants to realize Plaintiff is not the same person as this other consumer include the following:

e) Plaintiff's legal name is Antonio Dushawn Weatherspoon and the personal and account information Defendants mixed into Plaintiff's

26

credit reports belongs to another consumer, Anthony Devon Weatherspoon;

f) Plaintiff's Social Security number is different than the other consumer's Social Security number; and

**Plaintiff's July 16, 2021 Dispute with Experian**

118.   On or about July 16, 2021, Plaintiff Antonio Weatherspoon filed a written dispute regarding the information that does not belong to them with Defendant because each were reporting another consumer's information.

119.   Plaintiff's July 16, 2021dispute specifically included their full name, date of birth, Social Security number, and current address, so that the credit bureaus would be able to properly identify them and locate their credit file.

120.   Plaintiff also attached a copy of their driver's license, copy of their Social Security card, and a written explanation to their July 16, 2021 dispute.

**The Credit Bureaus' Method for Considering Consumer Credit Report Disputes**

121.   The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes. *See* 15 U.S.C. § 1681i(a)(5)(D).

122.   Consumer reporting agencies Equifax, Experian, Trans Union, and Innovis have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of performance. e-OSCAR allows data furnishers to create and respond to disputes initiated by consumers by routing credit reporting agency-created prompts for automated consumer dispute verifications to the appropriate data furnishers. e-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

123.   That lexicon or unique language is commonly referred to in the credit reporting industry as "Metro II." It is also known industry wide as the CDIA's "Credit Reporting Resource Guide."

124.   Metro II is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately appear on credit reports issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

125.   Metro II codes are used on an industry wide form known within the credit industry as an Automated Consumer Dispute Verification ("ACDV") electronic form.

126.   The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and the credit reporting agencies.

127.   These ACDV "fields" have various titles for the many substantive areas into which the Metro II codes can be entered.

128.   Upon receiving a dispute from a consumer, the credit bureaus have an automated system that prepares ACDVs that are sent to each of the data furnishers that are reporting the credit accounts disputed by a consumer.

129.   The data furnishers then have an obligation under the FCRA to conduct a reasonable reinvestigation with respect to the disputed credit account and review all relevant information provided by the consumer with the dispute to determine whether the disputed credit account information is accurate and/or belongs to the disputing consumer. *See* 15 U.S.C. § 1681s-2(b).

130.   Once the data furnisher completes its reinvestigation, it will code the ACDV accordingly, representing either that the disputed account was verified as accurate and belonging to the disputing consumer, updating information related to the account, or deleting the account entirely, and return the ACDV to the respective credit bureau(s) via eOSCAR.

**Experian's Response to Plaintiff's July 16, 2021 Dispute**

131.   Defendant Experian did not respond to Plaintiff's July 16, 2021 dispute.

132.   Defendant Experian did not indicate that Plaintiff's dispute was found to be frivolous or irrelevant.

133.   Defendant Experian failed to conduct a reinvestigation of Plaintiff's dispute, in violation of 15 U.S.C. § 1681i.

134.   Defendant also failed to provide the requested credit disclosure in violation of 1681g.

135.   Thereafter, Experian continued to report personal and credit account information belonging to another consumer in Plaintiff's credit file.

**Plaintiff's August 24, 2021 Dispute with Experian**

136.   In August 24, 2021, Plaintiff Antonio Weatherspoon filed a written dispute regarding the information that does not belong to them with Defendant because each were reporting another consumer's information.

137.   Plaintiff's August 24, 2021 dispute specifically included their full name, date of birth, Social Security number, and current address, so that the credit bureaus would be able to properly identify them and locate their credit file.

138.   Plaintiff also attached a copy of their driver's license, copy of their Social Security card, and a written explanation to their August 24, 2021 dispute.

**Experian's Response to Plaintiff's August 24, 2021 Dispute**

139.   Defendant Experian did not respond to Plaintiff's August 24, 2021 dispute.

140.   Defendant Experian did not indicate that Plaintiff's dispute was found to be frivolous or irrelevant.

141.   Defendant Experian failed to conduct a reinvestigation of Plaintiff's dispute, in violation of 15 U.S.C. § 1681i.

142.   Defendant also failed to provide the requested credit disclosure in violation of 1681g.

143.   Thereafter, Experian continued to report personal and credit account information belonging to another consumer in Plaintiff's credit file.

**Plaintiff's March 6, 2022 Dispute with Experian**

144.   In March 6, 2022, Plaintiff Antonio Weatherspoon filed a written dispute regarding the information that does not belong to them with Defendant because each were reporting another consumer's information.

145.   Plaintiff's March 6, 2022 dispute specifically included their full name, date of birth, Social Security number, and current address, so that the credit bureaus would be able to properly identify them and locate their credit file.

146.   Plaintiff also attached a copy of their driver's license, copy of their Social Security card, and a written explanation to their March 6, 2022 dispute.

**Experian's Response to Plaintiff's March 6, 2022 Dispute**

147.   Defendant Experian did not respond to Plaintiff's March 6, 2022 dispute.

148.   Defendant Experian did not indicate that Plaintiff's March 6, 2022 dispute was found to be frivolous or irrelevant.

149.   Defendant Experian failed to conduct a reinvestigation of Plaintiff's dispute, in violation of 15 U.S.C. § 1681i.

150.   Defendant also failed to provide the requested credit disclosure in violation of 1681g.

151.   Thereafter, Experian continued to report personal and credit account information belonging to another consumer in Plaintiff's credit file.

**Defendants Equifax and Trans Union Fail to Provide Credit Disclosure May 2022**

152.   On or about May 4, 2022, Plaintiff Antonio Weatherspoon requested a credit disclosure from Defendants Equifax and Trans Union.

153.   Defendants failed to provide the requested credit disclosure in violation of 1681g.

**Defendants Equifax and Trans Union Fail to Provide Credit Disclosure**

154.   On or about May 20, 2022, Plaintiff Antonio Weatherspoon requested a credit disclosure from Defendants Equifax and Trans Union.

155.   Defendants failed to provide the requested credit disclosure in violation of 1681g.

**Defendants Equifax and Trans Union Fail to Provide Credit Disclosure**

156.   On or about Jun 13, 2022, Plaintiff Antonio Weatherspoon requested a credit disclosure from Defendants Equifax and Trans Union.

157.   Defendants failed to provide the requested credit disclosure in violation of 1681g.

**Defendants Equifax and Trans Union Fail to Provide Credit Disclosure**

158.   On or about October 20, 2022, Plaintiff Antonio Weatherspoon requested a credit disclosure from Defendants.

159. Defendants Equifax and Trans Union failed to provide the requested credit disclosure in violation of 1681g.

160. As a result of the Defendants' conduct, action, and inaction, Plaintiffs suffered damage by loss of credit; loss of the ability to purchase and benefit from their credit; detriment to their credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumers' personal and credit account information mixed in their credit files.

161. Equifax, Experian, and Trans Union maintain/maintained multiple credit files for Plaintiff.

162. At least one of Plaintiffs' Equifax, Experian, and Trans Union credit files contain or have contained personal information and credit account information, including derogatory collection accounts and charge offs, which do not belong or pertain to her.

163. Equifax, Experian, and Trans Union's merging and matching algorithms have caused Plaintiffs' credit files to become mixed with personal and credit account information belonging to a different consumer.

164.   Within the two (2) years previous to the filing of this Complaint, Equifax, Experian, and Trans Union prepared and distributed one or more consumer reports, as that term is defined by 15 U.S.C. § 1681a(d), pertaining to Plaintiffs that contained misleading and inaccurate information which belongs to another consumer, including without limitation, personal information and credit accounts, which actually belong to a different consumer.

165.   Equifax, Experian, and Trans Union failed to maintain and follow reasonable procedures to assure the maximum possible accuracy of the personal and credit account information contained within at least one of the credit files they maintain for Plaintiffs.

166.   Equifax and Experian know that their matching algorithms are flawed and frequently result in mixed information and credit files belonging to two different consumers.

167.   Equifax, Experian, and Trans Union have been sued thousands of times by consumers and suffered judgments as a result of mixing consumer credit information and credit files.

168.   When Equifax, Experian, and Trans Union assemble consumer reports for their subscribers, they allow such subscribers to use only a partial list of personal identifiers to match data to the target consumer resulting in the inclusion of a broad

range of credit information; information which may in some cases, like the instant matter, belong to another consumer.

169.   Equifax, Experian, and Trans Union also fail to require an exact match of all digits of a consumer's Social Security number, which may in some cases result in the inclusion of credit information which belongs to another consumer.

170.   However, when consumers like Plaintiffs request copies of their credit files, Equifax, Experian, and Trans Union require a complete match of all personal identifiers, resulting in a narrower match of data for the consumer.

171.   Consequently, Equifax, Experian, and Trans Union's own procedures for disclosing information to consumers, as they are required to do by the FCRA, tend to mask or conceal the problem of mixed files.

172.   By concealing this information, Equifax, Experian, and Trans Union impair the ability of consumers, like Plaintiffs, to identify and dispute errors resulting from mixed credit information or credit files.

173.   Equifax, Experian, and Trans Union have failed to follow reasonable procedures to assure the maximum possible accuracy of Plaintiffs' credit files and of their consumer reports, in violation of 15 U.S.C. § 1681e(b).

174.   Equifax, Experian, and Trans Union's failures to follow reasonable procedures to assure the maximum possible accuracy of Plaintiffs' credit files and of their consumer reports was negligent and/or willful.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy
### (First Claim For Relief Against Defendants)

175.   Plaintiffs re-alleges and incorporates the allegations set forth in Paragraphs 1-174 as if fully stated herein.

176.   Defendants violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit file they published and maintain concerning Plaintiff.

177.   As a result of Defendants' conduct, action, and inaction, Plaintiffs suffered damage by loss of credit; loss of the ability to purchase and benefit from their credit; detriment to their credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment

of credit denials and having another consumers' personal and credit account information mixed in her credit file.

178.   Defendants' conduct, action, and inaction was willful, rendering them each separately liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiffs to recover under 15 U.S.C. § 1681o.

179.   Plaintiffs are entitled to recover attorney's fees and costs from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT II**
**15 U.S.C. § 1681i**
**Failure to Perform a Reasonable Reinvestigation**
**(Second Claim For Relief Against Defendants Equifax, Experian, and Trans Union)**

180.   Plaintiffs re-allege and incorporate the allegations set forth in Paragraphs 1-174 as if fully stated herein.

181.   Defendants violated 15 U.S.C. § 1681i by failing to delete inaccurate information in Plaintiffs' credit files after they received multiple notices of such inaccuracies; by failing to conduct a lawful reinvestigation on numerous occasions of both disputed credit accounts and hard inquiries; and by failing to maintain

reasonable procedures with which to filter and verify disputed information in Plaintiffs' credit files.

182. As a result of Defendants' conduct, action, and inaction, Plaintiffs suffered damage by loss of credit; loss of the ability to purchase and benefit from her credit; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumers' personal and credit account information mixed in her credit file.

183. Defendants' conduct, action, and inaction was willful, rendering them each separately liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiffs to recover under 15 U.S.C. § 1681o.

184. Plaintiffs are entitled to recover attorney's fees and costs from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT III**
**15 U.S.C. § 1681g**
**Failure to Provide Disclosures to Plaintiffs**

185.   Plaintiffs re-allege and incorporate the allegations set forth in Paragraphs 1-174 as if fully stated herein.

186.   Defendants violated 15 U.S.C. § 1681g by failing to provide Plaintiffs' credit disclosures after each request.

187.   As a result of Defendants' conduct, action, and inaction, Plaintiffs suffered damage by loss of credit; loss of the ability to purchase and benefit from Plaintiffs' credit; detriment to Plaintiffs' credit ratings; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment.

188.   Defendants' conduct, action, and inaction was willful, rendering them each separately liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiffs to recover under 15 U.S.C. § 1681o.

189.   Plaintiffs are entitled to recover attorney's fees and costs from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief as follows:

a)   Determining that each Defendant negligently and/or willfully violated the FCRA;

b)   Awarding Plaintiffs actual damages, statutory, and punitive damages as provided by the FCRA;

c)   Awarding Plaintiffs reasonable attorney's fees and costs from each Defendant as provided by the FCRA; and

d)   Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

190.   Plaintiffs demand a trial by jury.

Dated:        February 8, 2023

*/s/ Joseph P. McClelland*
Joseph P. McClelland
LAW FIRM OF JOSEPH P. MCCLELLAND, LLC
Georgia Bar No: 483407
235 East Ponce de Leon Avenue, Suite 215
Decatur, GA 30030
Telephone: (770) 775-0938
Fax: (470) 468-0070
Email: joseph@jacksonlaws.com

*ATTORNEY FOR PLAINTIFF*