# EXHIBIT A

## INDEPENDENT CONTRACTOR AGREEMENT
## REAL ESTATE AGENT

### NYJ Holdings, LLC

THIS AGREEMENT ("Agreement") is made and is to be effective as of the _____ day of August, 2018, by and between **Cecil & Campbell Advisors, LLC** located at 1770 The Exchange, S.E., Suite 280, Atlanta, Georgia 30339 (hereinafter "CCA"), and **NYJ Holdings, LLC**, (hereinafter "Contractor"), licensed under the laws of the State of Georgia to engage in real estate sales as a salesperson, and whose address of record is 605 Spalding Drive, Atlanta, Georgia 30328.

WHEREAS, CCA is operating as a real estate brokerage business in Georgia at the above address; and

WHEREAS, Contractor has been issued a real estate (salesman's/broker's) license by Georgia and is availing himself of the services, facilities, programs, and opportunities offered by CCA;

NOW, THEREFORE, in consideration of the promises and mutual covenants herein contained, it is hereby agreed as follows:

1. **Term.** Except as otherwise provided in Section 10 below, the term of this Agreement is one (1) year from the effective date written above. The independent contractual relationship may be renewed for an additional one (1) year period by mutual agreement, provided, however, that the then-current Agreement is signed by Contractor and that fees and dues required to be paid by Contractor under this Agreement shall have been paid in full as of the date of such renewal. If Contractor does not wish to renew the independent contractual relationship, he must so notify CCA in writing at least sixty (60) days prior to expiration of this Agreement. In the event no renewal agreement is executed, and Contractor continues to work as a Sales Person for CCA, the term of this relationship shall be deemed to be automatically extended for a consecutive one (1) year period in accordance with the terms and conditions of the Agreement used by CCA at the time of any such automatic extension.

2. **CCA Responsibilities.**
   a. **Supervision.** CCA is responsible for the supervision of all work performed by Contractor as required by law and this Agreement, directly related to CCA's real estate business including, but not limited to, the management of time, efforts, expenses, etc.
   b. **Office Support.** CCA offices have limited furniture and equipment. Contractor is responsible for providing his own laptop.
   c. **Commissions.** All commissions and other monies must be paid directly to CCA. State law prohibits Contractor from receiving commissions other than from CCA, which holds Contractor's license.
      ☑ - Contractor is not entitled to any salary or compensation of any nature other than the commission share set forth herein.
      ☑ - Contractor shall have no claim to any commission or fee except from money actually received by CCA. *except those owed from Southern Realty Company, LLC* [initialed]
   d. **Insurance.** CCA maintains commercial Errors and Omissions and General Liability insurance, specific to CCA's business. Said insurance applies to Contractor during the conduct of official CCA business.

[signature initials]

3. **Contractor, Responsibilities.** The Contractor is a licensed real estate agent in the State of Georgia, and pursuant thereto, is duly qualified to solicit and sell real estate as a service to the general public.
   a. **Status**. The Parties agree that the services provided by the Contractor are as an Independent Contractor, and no other legal relationship exists or is implied. Nothing in this Agreement shall constitute an offer of employment, a partnership, a joint venture, or any other form of relationship other than CCA's relationship with the Contractor.
   b. **Licensing**. At the Contractor's own expense, he will be required to maintain and remain in "good standing," through the term of this Agreement. In the event Contractor's license is revoked suspended, or not renewed for any reason, CCA shall automatically terminate Contractor, effective as of the date of termination provided. The Contractor agrees to hold CCA harmless in any case related to licensing.
   c. **Atlanta Commercial Board of Realtors**. Under this Agreement, the Contractor is: (check one)
      ☑ - **Required** to apply and become a dues paying member to the Atlanta Commercial Board of Realtors.
      ☐ - **Not Required** to apply and become a paying dues member to the local Association of Realtors board.
   d. **Fines**. The Contractor is wholly responsible for any fines or judgments made against him, including payment, if any, as to the Georgia Real Estate Commission, the National Association of Realtors, or any other regulatory institution.
   e. **Best Efforts**. Contractor shall exert his best efforts in all activities related to the listing, selling, leasing, or exchanging of real property, and will at all times conduct himself in full compliance with local, state, and federal statutes, rules and guidelines, and in accordance with the high standards of CCA.
   f. **Automobile Insurance**. Contractor agrees to at all times maintain, at Contractor's sole expense, automobile liability and property damage insurance covering Contractor's automobile which is or may be used in the conduct of Contractor's services to CCA.
   g. **Withholdings**. Contractor understands he is personally responsible for all Local, State, and Federal Taxes. In addition, the Contractor agrees to indemnify CCA for any and all liabilities or costs related to withholdings.

4. **Insurance.** As an independent contractor relationship, CCA does not provide Worker's Compensation or Unemployment Insurance coverage of any kind. Contractor expressly waives such coverage and is hereby notified that if Workers Compensation Coverage is desired, Contractor must personally obtain coverage directly from a licensed insurance carrier at the Contractor's sole expense.

5. **Contractor's Authority.** Contractor is NOT an agent of CCA and shall have NO authority to bind CCA by any promise or representation unless such authority is expressly granted in writing which writing must include the specific time period and terms included in said agreement. Contractor indemnifies and agrees to hold CCA harmless for any acts or omissions made by Contractor contrary to this Agreement.

5. **Indemnification**. Contractor agrees to indemnify and hold harmless CCA, its agents, employees, officers, successors, assigns, and any other party deriving title under the term CCA from all fines, levies, suits, proceedings, claims, actions, or causes of actions of any kind whatsoever including, but not limited to, all costs, court costs, litigation expenses and attorney fees arising from, growing out of, in connection with or incidental to the Contractor's activities and operation of real estate business. CCA shall not be liable to Contractor for any expenses incurred by him, nor shall Contractor have authority to bind CCA by any promise or representation, unless specifically authorized in advance and in writing by CCA.

6. **Trademark Use Privilege**.

   a. CCA hereby authorizes Contractor to use on his business card, letterhead, yard signs, and other real estate business materials approved by CCA, the following marks of CCA.

   b. Contractor's privilege to use such marks, and the privilege to use CCA yard signs, "SOLD" signs, business cards, promotional material, letterhead and any other item which bears such marks or bears any other distinguishing characteristic of CCA organization is expressly made contingent upon:

   i. Contractor's observance of an adherence to the standards of proper use and guidelines promulgated and from time to time amended only by CCA.

   ii. Contractor's adherence to and satisfaction of professional performance standards and service quality controls promulgated and from time to time amended by CCA, including but not limited to those specified in Paragraph 4 and elsewhere in this Agreement; and

   iii. Contractor's continued affiliation with CCA under this Agreement or any successor to this Agreement.

   c. Contractor hereby acknowledges that CCA is the exclusive owner of all right, title, and interest in and to the marks identified above and further agrees that all use of such marks by Contractor shall insure exclusively to the benefit of CCA.

   d. Contractor agrees to notify CCA in the event he observes use of such marks by individuals not affiliated with CCA organization or any use that is inconsistent with the above-referenced standards of proper use and guidelines.

7. **Termination**.

   a. By CCA For Cause. In the event Contractor defaults or otherwise fails to conduct his business in accordance with the terms of this Agreement or engages in conduct which is disloyal or disrupts the office or its likely to bring discredit to CCA name, CCA may terminate this Agreement immediately and without notice.

   b. By Either Party Without Cause. Either party, without cause, may terminate this Agreement at any time upon the giving of thirty (30) days advance written notice to the other.

   c. Failure To Give Notice. In the event of any failure by Contractor to give the required notice specified under Paragraphs [1 or 10] of this Agreement, Contractor shall be obligated to pay, in lieu of such notice, all applicable fees and dues under Paragraph [5] for a period of thirty (30) days subsequent to the date of Contractor's actual notice to CCA.

   d. Effect On Commissions. Contractor's entitlement, if any, to all or part of commissions yet to be earned (on listings and contracts procured by Contractor but not closed as of the effective date of termination of this Agreement) shall be determined in accordance with the policy or practice of CCA pertaining to commissions.

8. **Restrictions On Subsequent Business Activity**.

   a. Contractor shall not, after the termination or expiration of this Agreement, for any reason use, permit, suffer or tolerate the use, to his advantage or the advantage of others, of any information gained from the files or business of CCA. Contractor further agrees that the sales plans, programs, materials, manuals, rosters, forms, contracts, agreements, brochures, and other training, listing, and sales materials provided hereunder by CCA, irrespective of the origin or ultimate source, are and shall remain the exclusive property of CCA. Contractor shall not utilize or divulge such materials in connection with any business hereafter carried on by Contractor, whether alone or in conjunction with others. All such materials shall be returned promptly to CCA upon termination or expiration of this Agreement. Following termination or expiration of this Agreement, subject to subparagraph D hereof, Contractor shall be free to continue his real estate business with competing real estate operations or to establish his own brokerage operation alone or in concert with others. Contractor hereby agrees to refrain, however, from all representations, advertisements, actions, and business activities that may mislead others in the real estate business and/or the public to believe he is still a part of, affiliated with or sponsored in some way by CCA organization if such is not the case.

3

b. Contractor acknowledges that he has obtained knowledge of confidential matters, trade secrets, techniques, accounting procedures, and other methods developed by, through, and in CCA System which are owned by CCA, as part of CCA System, without which information Contractor could not efficiently, effectively, and profitably operate or conduct his business ("Confidential Information"). Contractor further acknowledges that such Confidential Information was unknown to him prior to his affiliation with CCA organization and that the methods developed for CCA System are unique and novel. Contractor agrees that he will take all necessary steps, at his own expense, to protect such Confidential Information and that he will not divulge same, either during the term or following termination or expiration of this Agreement, without the prior written consent of CCA. Contractor hereby acknowledges the exclusive rights of CCA to its real estate system, its method of operation and its distinguishing characteristics, including but not limited to its service marks, trademarks, trade names, membership marks, certification marks, copyrights, designs, slogans, logos, names or other advertising copy now or hereafter displayed, used or becoming a part of CCA System.

c. Contractor hereby acknowledges the difficulty of measuring economic loss which would occur as a result of the breach of any of the covenants of this Paragraph 8, the immediate and irreparable harm that such a breach would cause, and that there would be no adequate remedy at law. Contractor agrees that any of the covenants contained herein may be enforced by injunction and/or restraining order. Contractor further agrees that CCA, as the owner of federal and state registrations for CCA marks referenced herein, shall have a direct right to enforce any of the covenants contained in this Paragraph 8 through appropriate legal proceedings, if necessary. In the event CCA and/or CCA is required to retain an attorney to enforce any of the covenants of this Paragraph 8 or to institute legal proceedings incident to such enforcement, Contractor agrees to pay, in addition to all other sums for which Contractor may be found liable, reasonable attorneys' fees, court costs, and litigation expenses incurred by CCA.

d. During the term of the Agreement and for twenty-four (24) months following the termination the Agreement for any reason (the "Non-Solicitation Period"), in order to protect CCA's Confidential Information, Contractor agrees that he shall not directly or indirectly, individually or on behalf of any person other than CCA, aid or endeavor to solicit or induce any of CCA's known clients and/or such clients' affiliates in order to, directly or indirectly, solicit, sell or assist anyone in the sale of or provide services relating to any of CCA's services or services similar to those sold by CCA to any person, company, firm, or corporation who is or was a customer of CCA with whom Contractor or those employees reporting to Contractor, had Material Contact during the last year of the Agreement. For the purposes of this Agreement, and this Non-Solicitation Period, Material Contact shall be defined as personal contact or the supervision of those who have direct personal contact with a customer or potential customer.

If the restrictions set forth in this subparagraph "D" would otherwise be determined to be invalid or unenforceable by a court of competent jurisdiction, the Parties intend and agree that such court shall exercise its discretion in reforming the provisions of this Agreement to the end that Contractor will be subject to a non-solicitation covenant which is reasonable under the circumstances and enforceable by CCA. It is agreed that no adequate remedy at law exists for the Parties for violation of this subparagraph, and that this subparagraph may be enforced by any equitable remedy, including specific performance and injunction, without limiting the right of CCA to proceed at law to obtain such relief as may be available to it. The running of the Non-solicitation Period shall be tolled for any period of time during which Contractor is in violation of any covenant contained herein, for any reason whatsoever.

e. Contractor agrees not to solicit, sell or assist in the sale or provide service to any such customers on behalf of Contractor or any other person, firm, company, or corporation.

4

9. **Miscellaneous Provisions.**

a. Any notice required to be given pursuant to this Agreement shall be given in writing and delivered in person or by certified mail, return receipt requested, postage prepaid, to the party entitled to receive notice at the address given above unless either party notifies the other of any change of address in writing, after which each such notice shall be directed to the most current address. Notices so mailed shall be deemed to have been given as of the time of deposit in the United States mail. Notices of change of address shall be given promptly in the same manner as other notices.

| | |
|---|---|
| As to CCA: | Anthony K. Cecil<br>Cecil & Campbell Advisors, LLC<br>1770 The Exchange, S.E., Suite 280<br>Atlanta, Georgia 30339 |
| With a copy to: | J. Christopher Campbell<br>Cecil & Campbell Advisors, LLC<br>1770 The Exchange, S.E., Suite 280<br>Atlanta, Georgia 30339 |
| As to Contractor: | NYJ Holdings, LLC<br>605 Spalding Drive<br>Atlanta, Georgia 30328 |
| With a copy to: | _____<br>_____<br>_____ |

b. The parties acknowledge that this is the complete and final expression of their Agreement and of their mutual intent, and no change or modification of this Agreement shall be valid unless the same is in writing and signed by all parties hereto.

c. No waiver of any breach of any provision or condition of this Agreement shall constitute a waiver of any subsequent breach of the same or any other provision or condition of this Agreement.

d. This Agreement shall be governed and construed in accordance with the laws of Georgia. In the event any clause or provision of this Agreement shall be deemed invalid or unenforceable, such provision shall be "blue-lined" as necessary to make such clause or provision valid and enforceable and to carry forth its intended purpose. To the extent any clause or provision cannot be saved or so amended, the same shall be deleted in its entirety from this Agreement and the balance of this Agreement shall remain in force and be construed as if such stricken clause or provision had never existed.

e. This Agreement shall become binding upon and inure to the benefit of the parties hereto, their heirs, executors, administrators, successors and assigns, but shall not be assignable by Contractor without the prior written approval of CCA.

f. CCA reserves the right to assign, pledge, hypothecate or transfer this Agreement or its interest herein, provided, however, that no assignment shall be approved or tolerated if its net effect is to adversely affect Contractor's rights and privileges granted herein.

10. **Taxes.** Contractor hereby acknowledges that he has been advised by CCA that as an independent contractor (non-employee) affiliated with CCA, he is responsible for the payment of all his own federal income taxes and his own self-employment taxes (FICA), together with any and all corresponding state, county and local taxes, if any, and Contractor hereby agrees to meet such responsibilities. Contractor hereby waives any claims he has or may have against CCA now or in the future respecting such taxes of the right of CCA not to withhold, not to pay or not to contribute to such taxes on behalf of Contractor.

**11.     Disclaimer.**  The success of Contractor is speculative and will depend on many factors including, to a large extent, Contractor's independent business ability. Contractor has not relied on any warranty or representation, written, printed, or oral, express or implied, as to his potential success in the business venture contemplated hereby and no one has promised, guaranteed or assured him of any level of success or income.

**In Witness Whereof,** the Parties hereto, by their signatures below, acknowledge their understanding of and commitment to the terms of this Agreement as of the day and year first above written.

| Contractor | CCA |
|---|---|
| **NYJ Holdings, LLC** | **Cecil & Campbell Advisors, LLC** |
| By: _[signature]_<br>Jared Young<br>Managing Member | By: _[signature]_<br>Anthony K. Cecil, II<br>Managing Member |
| Date: 2/1/19 | Date: 1 FEB 2019 |