# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA

## ATLANTA DIVISION

| | | |
|---|---|---|
| MICHAEL J. DAUGHERTY, in his personal capacity, and in his capacity as CEO of LabMD, Inc., 425 Broadland Road Atlanta, GA  30342 | : : : : : | |
| and | : : | |
| LabMD, Inc., a Georgia corporation, 425 Broadland Road Atlanta, GA  30342 | : : : : | |
| *Plaintiffs* | : : | Civil Action No.: |
| v. | : : | |
| CAUSE OF ACTION INSTITUTE, a Virginia Corporation, Cause of Action Institute 1310 North Courthouse Road, Suite 700 Arlington, VA 22201 | : : : : : : | **JURY TRIAL DEMANDED** |
| and | : : | |
| DINSMORE AND SHOHL, LLP, an Ohio Corporation, Dinsmore and Shohl LLP 100 Peachtree Street N.E. Suite 950 Atlanta, GA 30309 | : : : : : : | |
| and | : : | |
| KOCH INDUSTRIES, INC., a Kansas Corporation, Koch Industries, Inc. 4111 E 37th Street N. Wichita, KS  67220 | : : : : : : : : | |
| And | : : | |
| JAMES VALVO, ESQ., Individually and Professionally Cause of Action Institute 1310 North Courthouse Road, Suite 700 Arlington, VA 22201 | : : : : : : | |

1

and                                              :
                                                 :
BRIAN MENKES, ESQ. Individually and              :
Professionally                                   :
Koch Industries, Inc.                            :
4111 E 37th Street N.                            :
Wichita, KS  67220                               :
                                                 :
and                                              :
                                                 :
JOHN VECCHIONE, ESQ., Individually and           :
Professionally,                                  :
New Civil Liberties Alliance                     :
1225 19th Street NW, Suite 450                   :
Washington, DC 20036                             :
                                                 :
and                                              :
                                                 :
REED RUBENSTEIN, ESQ., Individually and          :
Professionally,                                  :
America's First Legal                            :
611 PENNSYLVANIA AVE SE #231                     :
WASHINGTON, DC 20003                             :
                                                 :
and                                              :
                                                 :
ALFRED LECHNER, ESQ., Individually and           :
Professionally                                   :
132 Bidwell Hill Road                            :
Lake Ariel, PA  18436                            :                :
                                                 :
                                                 :
                                                 :
            *Defendants*                         :

## **COMPLAINT**[1]

Plaintiffs, Michael J. Daugherty and LabMD Inc. (collectively "the Plaintiffs") by and

through the undersigned counsel, hereby file this Complaint against Defendants Cause of Action

Institute ("COA"), Dinsmore and Shohl LLP ("Dinsmore"), James Valvo, Esq., Brian Menkes,

Esq., John Vecchione, Esq., Alfred Lechner, Esq. and Reed Rubenstein, Esq. (collectively "the

Defendants") and further allege as follows:

---

[1] The affidavit required by Georgia law to be filed in this action is attached as **Exhibit A**.

## **INTRODUCTION**

The duties of loyalty and confidentiality are perhaps the most important and fundamental ones owed by an attorney to her client.  This case is about Cause of Action's ("COA") betrayal of these most fundamental professional and legal obligations and their inexplicable and indefensible decision to further compromise their legal representation of Plaintiffs by actively concealing these breaches to evade responsibility for them.  Here, COA, which is a 501(c)(3) organization that, among other things, provides legal representation to small businesses subject to government abuse and overreach, agreed to represent LabMD, an Atlanta-based, specialized cancer detection laboratory that was, as it turns out, abusively and maliciously targeted by the Federal Trade Commission ("FTC") without any legitimate factual basis for non-existent data security breaches.

Indeed, the  Eleventh Circuit itself ultimately vacated the FTC's enforcement award against LabMD in full and determined that the FTC's case so lacked any substantial basis that it awarded LabMD its fees and costs in defending the action under the Equal Access to Justice Act ("EAJA").[2] Unfortunately, by the time the Eleventh Circuit was allowed to weigh in and stop the madness, the FTC's baseless enforcement action had driven LabMD essentially out of business.

As though LabMD had not been wronged enough, it discovered in February 2019 from COA  whistleblowers  that  COA's  representation  of  LabMD  in  the  FTC  action  had  been compromised, that COA learned that its representation had been compromised in or around 2014,

---

[2] *See LabMD, Inc. v. FTC*, Case 1:19-mi-00071-WEJ (Document 20), 2019 WL 11502795 (N.D. Ga. Oct. 1, 2019), *adopted in full by LabMD, Inc. v. FTC*, No. 16-16270 (11th Cir. Dec. 23, 2019 (Dkt. 43-6 at 13).

and that it deliberately took steps prejudicial to Plaintiffs and its legal representation to cover up and conceal the compromised nature of its legal representation.   Specifically, the COA whistleblowers disclosed that a member of the COA legal team for Plaintiffs had disclosed Plaintiffs' confidential, attorney-client privileged information to an attorney for Tiversa Holding Company ("Tiversa") and its CEO, Robert Boback ("Boback"), who were the ones who had conspired with the FTC to wrongfully frame LabMD and who were the FTC's supposed star witnesses in its enforcement action against LabMD.   When COA learned of these egregious breaches of confidentiality by an attorney on Plaintiffs' legal team, it notified its malpractice carrier -- but it made the intentional and conscious decision to actively conceal this fundamental breach from its clients while purporting to continue to represent them.   In its zeal to cover up its betrayal of Plaintiffs' privileged information, including LabMD's litigation position and strategy and the identity of the Tiversa whistleblower who exposed the FTC's investigation as based entirely on fabricated evidence, COA further compromised its representation of Plaintiffs and their position in the FTC enforcement action in numerous material ways.

In its actions and its active cover up, COA committed professional malpractice, breached and aided and abetted the breach of its fiduciary duties to Plaintiffs, breached its contract with Plaintiffs, and committed fraud.   Plaintiffs bring this action to hold the COA legal team accountable for these wrongs.

## JURISDICTION AND VENUE

1.  Jurisdiction is proper in this case pursuant to 28 U.S.C. § 1332 and US Const, Art III, Sec 2. because, as outlined below, the parties are citizens of different states and the matter in controversy exceeds $75,000.

2. Venue is proper in this District pursuant to 15 U.S.C. §§ 15(a), 22 and 28 U.S.C. §§ 1391(b), (c), and (d) because, during the relevant period, Defendants resided, transacted business, were found, or had agents in this District, and a substantial portion of the activity and asserted causes of action giving rise to this Complaint occurred in this District.

## THE PARTIES

3. Plaintiff Michael Daugherty is a Georgia resident and President & CEO of LabMD, an Atlanta-based clinical and anatomic medical laboratory.

4. Plaintiff LabMD is a company incorporated in 1996 under the laws of Georgia and is a resident in the State of Georgia. LabMD at all relevant times conducted it business in Georgia as a clinical cancer detection laboratory.

5. Defendant Cause of Action Institute, ("COA"), is a 501(c)(3) non-profit incorporated in Delaware with a principal place of business in Virginia. At all times relevant to this Complaint, COA had its principal place of business in the District of Columbia.

6. COA was created by, among others, Koch Industries, a business that was run by the Koch brothers, who also created/organized a Network of non-profit and for-profit organizations and affiliated entities (the "Network"), which closely control the operations at COA and affiliates within the Network. Brian Menkes, at all times relevant to the events described herein, was the General Counsel for Koch Industries, with responsibility for COA and affiliates within the Network.

7. According to COA, it uses "investigative, legal and communications tools to educate the public on how government transparency and accountability protect economic opportunity for American taxpayers." Over the past years, COA has provided legal

representation to companies and small businesses confronted with government enforcement actions including Plaintiffs LabMD and Michael Daugherty.

8. Defendant James Valvo, Esq. ("Valvo") is a licensed attorney and at all relevant times was part of the COA legal team that provided representation to Plaintiffs and who at all times was acting within the scope of his employment with and through COA.

9. Defendant Brian Menkes, Esq. ("Menkes") is a licensed attorney, the Director of COA, and at all relevant times was part of the legal team that provided representation to Plaintiffs. On information and belief, Defendant Menkes was also acting at all relevant times within the scope of his employment with Defendant Koch Industries

10. Defendant John Vecchione, Esq. ("Vecchione") is a licensed attorney who joined COA late in 2015 or early in 2016. Vecchione was part of the legal COA team that provided representation to Plaintiffs and who at all times was acting within the scope of his employment with and through COA.

11. Defendant Reed Rubenstein, Esq. ("Rubenstein"), on information and belief, is a licensed attorney who was at all relevant times was an employee of Dinsmore and COA.

12. Defendant Alfred Lechner, Jr., Esq. ("Lechner") is a licensed attorney and former United States District Judge for the District of New Jersey who joined COA in late 2015 and was part of the legal team that provided representation to Plaintiffs. At all relevant times, Lechner acted within the scope of his employment with and through COA.

13. Defendant Dinsmore is a national legal services firm. For the alleged benefit LabMD and Daugherty, COA contracted Dinsmore to perform the legal services for Plaintiffs which form the basis of this Complaint. At all relevant periods, Dinsmore performed the legal services for Plaintiffs through its attorneys, including Reed Rubenstein, who was

simultaneously a Dinsmore equity partner and contracted to perform services for LabMD and Daugherty through COA.

14. Defendant Koch Industries Inc. ("Koch") is a privately held multinational corporation based in Wichita, Kansas. At all relevant times,  on information and belief, Menkes worked as the Director of COA because of his role as the General Counsel at Koch Industries, and in those capacities was part of the COA legal team providing legal services for Plaintiffs.

## FACTUAL ALLEGATIONS

### A.    The Written Agreements for Legal Services

15. COA was engaged to represent LabMD in 2012 when the FTC informed LabMD and Daugherty that it was investigating LabMD for an alleged data security breach.  *See* Exhibit B (2012 COA Engagement Letter).

16. On August 29, 2013, the FTC formally announced that it was taking public enforcement action against LabMD.   On this same day, COA sent LabMD and Daugherty  and demanded they sign a second, more onerous engagement letter. (2013 COA Engagement Letter) or COA would not continue their representation of LabMD and Daugherty in the FTC action. See Exhibit C. Under the circumstances, LabMD and Daugherty had no recourse other than to sign the newly proffered engagement letter to secure representation in the FTC enforcement action.   Under duress and with no other options, LabMD and Daugherty signed the second engagement letter.

17. As part of its legal representation of LabMD, COA was to provide a legal defense to the enforcement action brought by the FTC (Case No 9357) based upon what were ultimately exposed as entirely falsified allegations of a data security breach.  The Agreement provided

that Defendant COA would select and pay for private attorneys to serve as appointed legal counsel to Plaintiffs in the FTC administrative investigation and enforcement action.

18. To discharge its legal duties to Plaintiffs, Defendant COA retained Defendant Dinsmore to represent Plaintiffs, and COA continued to participate in Plaintiffs' representation by working with and supervising the Dinsmore attorneys representing Plaintiffs.

19. Defendant Dinsmore and COA's joint legal representation (collectively referred to herein as the "COA legal team") for the case was supposed to be comprehensive, including but not limited to case management, strategy, investigation, representing Plaintiffs in the FTC proceedings, preparing proposed findings of fact and conclusions of law, post-trial briefs, replies to proposed findings of fact and conclusions of law, reply briefs, and appeal to the Eleventh Circuit if necessary.

20. On information and belief, as of mid-October 2015, the COA legal team had incurred over $3,200,000 in internal fees and costs defending LabMD and pursuing its rights.

21. The COA legal team, however, failed to maintain and/or, on information and belief, destroyed records sufficient to prove and/or justify such fees, which failure fell below the professional standard of care, was a breach of contract, and, as discussed herein, severely prejudiced Plaintiffs.

22. As described more fully herein, the COA legal team violated numerous of their ethical, professional, fiduciary, and contractual obligations in their representation of Plaintiffs, including but not limited to their duty of confidentiality, their duty of loyalty, their duty of candor to their client and to the courts, their duty to investigate and zealously represent their clients, and their duty of diligence and due care.

**B.**   **The FTC Investigation and Enforcement Action**

23. The FTC investigation and enforcement action involved false claims by Tiversa and Boback that LabMD had inadvertently leaked a file containing over 9,000 records of personal patient information onto the Internet.

24. These fabricated allegations of a data security breach or "leak" at LabMD  were first brought to Daugherty's attention by Tiversa and its CEO, Boback, in May 2008. At that time, Tiversa and Boback alleged that LabMD files had leaked out into the public through peer-to-peer (P2P) software like LimeWire on a LabMD computer.

25. In reality, Boback and Tiversa had misappropriated proprietary, enhanced FBI software (EP2P) that they had been given in their capacity as contractors for the US Attorney's Office in the Western District of Pennsylvania to hack into LabMD's system and steal LabMD's field.  Tiversa then fabricated evidence that the LabMD file containing protected personal and healthcare information had "spread" on the public internet. Tiversa and Boback then attempted to leverage the fabricated leak to induce LabMD to purchase Tiversa's so-called remediation services to mitigate the (nonexistent) leak and prevent future "breaches," but Daugherty and LabMD declined to hire Tiversa.

26. In retaliation for Daugherty's rejecting the shakedown scheme, Boback and Tiversa reported LabMD's fabricated data security breach (and those of nearly 100 companies who had also refused Tiversa's services) to the FTC to subject LabMD and Daugherty to investigation and enforcement.

27. The FTC began to pursue LabMD and worked closely, but secretly, with Boback and Tiversa employees in pursuing its investigations of nearly 100 companies. Until October 2018, LabMD did not know and could not have known that as part of its investigation and enforcement actions, the FTC instructed Tiversa tamper with "evidence" by extracting and changing the metadata in the files to disguise that its only source was LabMD and that it had never spread on the internet. The FTC knew that it needed to show that the allegedly leaked confidential information was actually available on and had spread to the internet to pursue their data breach investigation and enforcement action against LabMD.

28. LabMD cooperated with the FTC but consistently denied the allegations that LabMD's patient records were "publicly" available and had in fact spread over the Internet.

29. As noted, the FTC filed a formal enforcement action against LabMD on August 29, 2013, which LabMD and Daugherty immediately contested through its counsel.

30. Six days after the FTC brought its enforcement action against LabMD, Tiversa and Boback sued LabMD for allegedly defaming Tiversa and Boback regarding their actions as described herein.

31. As has now been publicly documented by the Eleventh Circuit and the House Oversight Committee of the U.S. Congress, not only did LabMD not defame Tiversa and Boback, but it did also not and could not even yet know the full extent of Tiversa and LabMD's fraud, deceit, and crimes.

32. In April 2014, while the FTC enforcement action was ongoing, Daugherty became aware of a former Tiversa employee named Rick Wallace ("Wallace"). Wallace became a whistleblower against Boback and Tiversa and disclosed Tiversa's illegal activities in stealing records from companies' computers, manipulating, and fabricating the data to

make the files look like they were stolen by child pornographers and other known bad actors, and otherwise spread on the internet. Wallace also disclosed that Tiversa would then claim that the records were "found" on the internet and would attempt to shakedown companies like LabMD with these fabricated "data breaches" by offering their IT remediation services to address the "leak" and to avoid future "leaks" of corporate information. Companies that did not agree to purchase Tiversa's services were then reported by Tiversa and Boback to the FTC for investigation and enforcement.

33. Not until July 2019, well after the FTC enforcement action was concluded and the Eleventh Circuit had vacated the FTC's enforcement finding against LabMD, did Wallace further reveal that Tiversa's ability to steal corporate records from internal corporate computers was due to their misappropriation and abuse of proprietary law enforcement software provided to Tiversa as contractors to the United States Attorney for the Western District of Pennsylvania, Mary Beth Buchanan, Esq. ("Buchanan"), and the FBI in those offices' investigation of child pornography matters.

34. Defendants' breach of their duties of confidentiality, loyalty, and diligence and their breach of their fiduciary duties to Plaintiffs caused, in pertinent part, the material delay in the disclosure of this critical information to Plaintiffs by Wallace.

35. Specifically, and as discussed more fully herein, the COA legal team divulged Plaintiffs' confidential information about the existence of a Tiversa whistleblower and that whistleblower's identity (Wallace) to counsel for Tiversa and Boback (who were coordinating with and testifying for the FTC). Tiversa and Boback took this privileged information and used it to engage in an effective and chilling campaign of witness intimidation and harassment against Wallace in advance of his FTC testimony.

11

36. During (and after) the course of the FTC proceedings, this intense harassment and intimidation by Tiversa and its agents terrified  Wallace and caused him to curtail the amount of information the amount of critical information Wallace was willing to share with LabMD and in his testimony before the FTC, including the crucial information regarding Tiversa's weaponization of the FBI's eP2P software against private corporations in its shake down scheme.

37. Additionally, because Defendants concealed and continued to conceal its disclosure of Plaintiffs' confidential information and litigation strategy to Tiversa and Boback's counsel, Plaintiffs were unable to address or expose Tiversa and Boback's intimidation and harassment of Wallace in the context of the FTC proceeding or for a long time afterward.

38. In the FTC enforcement action, Wallace sought protection of his whistleblower status and sought immunity in return for testimony before the FTC. Because he knew her from her time as a U.S. Attorney and the work Tiversa performed for that office, Wallace hired Buchanan, who had since left  the U.S. Attorney's office and joined the New York office of law firm Bryan Cave, LLP, to represent him in those proceedings.

39. Based on her involvement with Tiversa and Wallace during her tenure as U.S. Attorney, Buchanan should have been declined from accepting this representation because her involvement was a clear conflict of interest and a potential violation of 18 U.S.C. 207.

40. On information and belief, Buchanan learned, at the latest, during her representation of Wallace that Tiversa had illegally misappropriated the proprietary FBI software provided by Buchanan's office and the FBI to illegally shake down innocent companies like LabMD, thereby creating a clear ethical and professional conflict for Buchanan in accepting and continuing her representation of Wallace. Although the facts demonstrating Buchanan's

conflict of interest in this case were not known by LabMD or Daugherty at the time and would not be (and could not have been)discovered by LabMD and Daugherty until much later, Buchanan herself knew the relevant facts underlying her conflict.

41. Instead of disclosing the conflict and/or recusing herself from Wallace's representation, however, Buchanan maintained the representation. On information and belief, part of her motive in doing so was to try to keep her former office's role in Tiversa and Boback's shakedown scheme concealed.

42. Wallace received immunity that would cover all matters about which he would testify in the FTC administrative proceeding; as a result, his incentive and that of his counsel should have been for Wallace to testify broadly to all matters within his knowledge so that the immunity provided would cover all of that testimony. Buchanan, however, had other plans, and she sacrificed Wallace's best interests in order to continue to keep her former office's role in these matters concealed. Specifically, although she did not represent either party, Buchanan insisted that she was the best person to solicit Wallace's testimony in the FTC proceedings and represented to the Wallace, the administrative tribunal, LabMD, and Daugherty's attorneys, that she would thoroughly lay out all matters, giving Wallace the broadest immunity protection.

43. Contrary to her pre-testimony assurances, the testimony Buchanan solicited from Wallace was severely limited and omitted important elements of Tiversa's illegal activities, including the critical fact that the software used by Tiversa to steal companies' confidential information was a weaponized, proprietary law enforcement software that the FBI and Buchanan, as U.S. Attorney, who had provided to Tiversa, enabling its shakedown scheme.

44. Defendants recognized at the time that Buchanan had botched the Wallace testimony by, inter alia, limiting it too severely and failing to fully disclose numerous material matters. Defendants, however, took no action to address or rectify the mishandling of this critical whistleblower testimony in the FTC proceedings.

45. LabMD presented its defense in the FTC administrative action based upon the information available to it at the time, but without the full disclosure of critical facts from Wallace, it was not able to determine or prove the manner in which Tiversa and Boback had obtained the LabMD files or the steps Tiversa and Boback had taken to manufacture evidence presented by the FTC in its administrative proceeding.

46. In July of 2016, the FTC found LabMD liable for unfair data security practices (a decision that was ultimately vacated in full by the Eleventh Circuit Court of Appeals as discussed herein). After this loss, on September 5, 2016, COA filed a motion to withdraw as counsel of record for LabMD in the FTC Action.

47. COA's withdrawal at this juncture forced LabMD to find and engage new counsel to appeal FTC Commissioners' ruling to the United States Court of Appeals for the Eleventh Circuit. LabMD hired Ropes and Gray for this purpose.

48. On June 6, 2018, the United States Court of Appeals for the Eleventh Circuit vacated the decision of the FTC Commissioners.

49. The FTC did not appeal the LabMD win.


C.      **Equal Access to Justice Act Proceedings**

50. After its win before the Eleventh Circuit, LabMD timely filed an application under the Equal Access to Justice Act, 5 U.S.C. § 504 ("EAJA") for collection of its attorneys' fees

and costs. Due to the COA legal team ostracizing LabMD and Daugherty from his attorneys and case, he was left with no choice but to seek more competent counsel to pursue the EAJA, accruing more costs for the Plaintiff given his legal team refused to file in the Eleventh Circuit.

51. In spite of the known potential for an award of attorneys' fees and expenses under the EAJA, COA, on information and belief, failed to preserve and/or destroyed its contemporaneous billing records to support the application for fees and costs for their representation of LabMD.

52. On information and belief, at least one reason that COA did not preserve or destroyed its billing records was its desire and effort to conceal, cover up, and destroy evidence relevant to COA's breach of LabMD and Daugherty's attorney-client privilege and its duties of confidentiality, loyalty, zealous representation, and other ethical duties that occurred as described herein.

53. On information and belief, COA also instructed its employees to not speak with Daugherty of LabMD regarding its billing records after COA discovered its violation of its ethical and professional duties to LabMD and Daugherty.

54. On information and belief, as part of LabMD's attempt to apply for attorneys' fees and costs, COA made false representations to the court about its billing practices and record retention policies, including representations that they had not maintained or retained records sufficient to submit full and adequate invoices for all of the fees and costs expended on the LabMD matter.

55. From the inception of the case to the end of the action before the FTC, the COA legal team worked many hours on this matter that, on information and belief,  were intentionally

destroyed or concealed to cover up Defendant's malfeasance and ethical and fiduciary breaches.

56. Under the EAJA, it is the prevailing party litigant – here, LabMD – and *not* the attorneys for the prevailing party, who is legally entitled to receive any award of attorney's fees and costs incurred in the litigation.

57. As such,  any actions by Defendants that negatively impacted LabMD's ability to recover fees and costs under the EAJA injured LabMD and Daugherty directly.

58. On October 1, 2019, a Special Master appointed to hear and decide LabMD's application under the EAJA for attorneys' fees and expenses found that LabMD, as the prevailing party in the FTC Action, was entitled to payment its attorneys' fees and costs. *LabMD, Inc. v. FTC*, Case 1:19-mi-00071-WEJ (Document 20), 2019 WL 11502795 (N.D. Ga. Oct. 1, 2019).  The Eleventh Circuit affirmed the Special Master's Report and adopted it as its own in *LabMD, Inc. v. FTC*, No. 16-16270 (11th Cir. Dec. 23, 2019) (Report & Recommendation adopted in full) (Dkt. 43-6 at 13).

59. LabMD, however, was thwarted in their ability apply for significant portions of the EAJA reimbursements it was otherwise due because of the COA legal team's failure to keep and/or preserve accurate records of its time and costs, and the amount of recoverable attorney fees were consequently calculated by the court without the benefit of full and complete COA attorney billing records, resulting in an award to LabMD that was materially lower than the award to which it should have been entitled had the COA legal team properly performed these duties.

60. On information and belief, the COA legal team actually destroyed relevant records and subsequently lied to the Court about its records at least in part to conceal its malfeasance

and breach of its ethical duties to LabMD, including but not limited to the disclosure of LabMD and Daugherty's confidential and privileged information to agents of the opposing side.

**D.     The COA Legal Team's Unauthorized Disclosure of LabMD's Confidential and Privileged Information And Active Concealment from LabMD and Daugherty.**

61. On or around February 11, 2019, LabMD discovered that the COA legal team had divulged critical confidential and privileged information to an attorney at Reed Smith LLP, who was at that time counsel to Boback and Tiversa, FTC's complaining witnesses who were working with and scheduled to testify for the FTC against LabMD.

62. Attorney Valvo, an active member of the Virginia State Bar and a member of the COA legal team representing Plaintiff, was roommates with an attorney from the same Reed Smith law office representing Boback and Tiversa and that he routinely disclosed LabMD's confidential client information to that attorney.  The privileged information included but is not limited to the following:

    A.     the fact that LabMD had found a Tiversa whistleblower,

    B.     the fact that the whistle blower was Richard Wallace,

    C.     COA's legal representation tactics vis-à-vis LabMD;

    D.     personal and confidential information about Wallace and Wallace's family that Valvo only knew from his representation of Plaintiffs;

    E.     information about Wallace's disclosures to Plaintiffs; and

    F.     information about Wallace's location and personal movements in general and in conjunction with his cooperation with LabMD and testimony in the FTC proceedings.

63. On information and belief, COA first learned of Valvo's disclosure of LabMD and Daugherty's privileged information when Catherine Chae ("Chae"), a paralegal for COA, through routine monitoring of COA employee emails or text messages, discovered communications between Valvo and the attorney at Reed Smith.[3]

64. Ms. Chae alerted Rubenstein, a member of the COA legal team, who then brought the matter to the attention of former COA executive director, Daniel Z. Epstein ("Epstein"). Epstein then informed Menkes.

65. While the COA legal team knew of these privileged disclosures by Valvo, in information and belief, around May or June of 2014, they intentionally chose not to reveal these compromising disclosures to LabMD or Daugherty, Instead, the COA legal team conspired to conceal these breaches from LabMD and Daugherty, even at the expense of their ethical and professional duties to LabMD and Daugherty, including but not limited to their duties of confidentiality, loyalty, zealous representation, client communication and candor, and, ultimately, candor to the court.

66. Valvo's unauthorized disclosures of confidential and privileged information to Reed Smith were such significant professional and ethical breached that, on information and belief, COA contemporaneously notified its malpractice carrier, but *not* LabMD or Daugherty. Instead, the COA legal team took actions to conceal this important information from

---

[3] The allegations in the Complaint regarding Valvo's breaches of privilege and confidentiality and the COA legal team's concealment and cover up of the same are based upon information shared with LabMD in February 2019 and October 2019 by COA insiders. The specific information regarding the COA legal team's discovery of these breaches, the breadth and details of the information disclosed, and the lengths to which the COA legal team went to actively conceal these breaches from its clients are uniquely in the possession of Defendants but will be further fleshed out in discovery.

LabMD and Daugherty and successfully did many years – from 2014 until the COA whistleblowers came forward in 2019.

67. Despite the corroborated testimony of the COA whistleblowers, COA continues to deny and try to continue to cover up these breaches and its cover up of them even through the present.

68. Indeed, neither Defendant Valvo nor any member of the COA legal team other than the COA whistleblowers, Kent Huntington, and Dan Epstein, ever revealed Valvo's violation of privilege to LabMD or Daugherty. And even then, Mr. Huntington and Mr. Epstein did not reveal this concealed information to LabMD or Daugherty until February and October 2019, respectively, which was years after COA's legal representation of Plaintiffs had terminated.

69. Because Plaintiffs were unaware of this information, it was unaware that it was being represented by conflicted and compromised counsel in the form of the COA legal team. It was also unaware that the COA legal team, in its efforts to actively conceal these ethical and professional violations and breach of fiduciary duty, would compromise its representation of LabMD and Daugherty in the FTC proceedings and in ultimately terminating its pro bono representation of LabMD and Daugherty before the FTC's Enforcement Judgment against them could be (successfully) appealed to the Eleventh Circuit and would destroy or conceal the COA legal teams' records in the EAJA process for the same purposes of concealment.

70. In its efforts to conceal its wrongdoing from LabMD and Daugherty, COA began distancing itself from and severely limiting all communications with LabMD and Daugherty after the FTC enforcement hearings were complete but before the FTC ALJ had

rendered its decision.   COA's disengagement and truncated communication were so extreme that LabMD was compelled to hire additional counsel, James Hawkins, at its own expense to, among other things, assist in trying to ensure that the FTC litigation was properly completed.

71. In addition to the above, LabMD and Daugherty were further damaged and injured in at least the following ways by the COA legal team's ethical and professional breaches and active concealment of the same:

   A.   the opportunity to find new, conflict-free, uncompromised counsel who would diligently and zealously pursue LabMD's defense in the FTC action and the Eleventh Circuit and who would keep the necessary records to preserve LabMD's EAJA challenge and award was foreclosed;

   B.   prevented from adjusting its litigation strategy in light of the privileged information disclosed by the COA legal team;

   C.   prevented from obtaining full disclosure of all material facts from Wallace or the knowledge that he was withholding certain material information out of fear from Tiversa and Boback's intimidation and threats, including the fact that Tiversa used the proprietary FBI software and that Tiversa had fabricated and tampered with the evidence being used by the FTC in the enforcement action;

   D.   the opportunity to have conflict-free, uncompromised counsel who would expose and address the prejudicial missteps and mistakes made by Buchanan in her direct examination of Wallace, the crucial whistleblower, in the FTC proceedings was foreclosed;

    E.    the opportunity to expose the privileged disclosures to the FTC and other tribunals to explain various material matters, including Buchanan's mishandling of the Wallace testimony and strict limitations on Wallace's testimony and to expose and prove Tiversa and Boback's witness intimidation and harassment of Wallace was foreclosed;

    F.    the opportunity to expose the FTC investigation and enforcement action as fraudulent and, as a result, being able to terminate the enforcement action early and in LabMD's favor (as it ultimately was by the Eleventh Circuit) was foreclosed;

    G.    the costs associated with hiring private counsel at LabMD/Daugherty's own expense;

    H.    the opportunity to recover the full fee award to which it was entitled under the EAJA was foreclosed.

72. Once the COA legal team became aware of these unethical breaches by Valvo, they prioritized their efforts to conceal this information from LabMD and Daugherty over their ethical and professional duties to LabMD and Daugherty, including but not limited to their duty of loyalty, duty of candor, duty of diligence and to provide zealous representation to LabMD and Daugherty, and duty to communicate with their clients.

73. Additionally, on information and belief, the COA legal team and others actively took specific actions to conceal the professional and ethical breaches that prevented LabMD and Daugherty from discovering the breaches and prejudiced LabMD and Daugherty's representation, including but not limited to the following:

    A.    editing, not maintaining, and/or destroying parts of the LabMD file and billings,

     B.     cutting off and/or severely limiting communication between the COA legal team and LabMD/Daugherty.

74. In short, once the COA legal team became aware of the series of serious breaches that occurred against LabMD and Daugherty, it prioritized its concealment of these violations over their representation and professional and ethical duties to LabMD and Daugherty, and they did so in a manner that injured and prejudiced LabMD and Daugherty and caused LabMD and Daugherty damage.

75. Defendants' actions as described herein damaged Plaintiffs in other material ways, including but not limited to compromising Plaintiffs' ability to timely and properly pursue and/or defend themselves against related litigation involving Tiversa, Boback, and the FTC. These damages include, but are not limited to, lost opportunities in these lawsuits and the costs and fees that otherwise would not have been necessary to incur in those matters.

## COUNT ONE
### PROFESSIONAL MALPRACTICE
### (All Defendants)

76. Plaintiffs restate the facts and allegations in paragraphs 1 through 75 and incorporate them herein by reference.

77. As attorneys hired and employed to represent Plaintiffs, Defendants, individually and collectively, owed Plaintiffs a professional duty to exercise the care of those ordinarily skilled in the business, and to exercise a reasonable degree of care, skill, and diligence in carrying out the business for which they were employed.

78. Defendants, individually and collectively, owed Plaintiffs a duty to disclose any and all facts that might affect the Plaintiffs' decisions regarding their case. Defendants,

individually and collectively, further owed Plaintiffs a duty to act in utmost good faith, with integrity, fairness and fidelity, and with due regard for Plaintiffs' rights and interests.

79. Defendants, individually and collectively, failed to exercise the level of ordinary care, skill, and diligence required and breached their professional and ethical duties to Plaintiffs as set forth in greater detail herein, including but not limited to the following:

    A.    disclosing Plaintiffs' confidential and privileged information to litigation opponents;

    B.    concealing and covering up these disclosures from Plaintiffs;

    C.    refusing to communicate with Plaintiffs in general or in candor about such disclosures;

    D.    failing to exercise the required diligence and zealous representation in the representation as part of an effort to conceal these disclosures from Plaintiffs;

    E.    withdrawing from representing Plaintiffs after losing the case before the FTC as part of an effort to continue to conceal these disclosure from Plaintiffs; and

    F.    failing to create and maintain, or alternatively by editing and destroying, time and billing records for Plaintiffs' representation.

80. But for Defendants' professional negligence and malpractice, the FTC action would have terminated early and in LabMD's favor.

81. But for Defendants' professional negligence and malpractice, Plaintiffs would have recovered substantial additional attorneys' fees and expenses under the EAJA as the prevailing party in the FTC Action.

82. But for Defendants' professional negligence and malpractice, Plaintiffs would not have incurred other damages and costs, including but not limited to the hiring of additional counsel at LabMD/Daugherty's expense.

83. As a direct and proximate result of Defendants' professional negligence/legal malpractice, Plaintiffs suffered damage and incurred loss, including actual damages and special damages, in an amount to be determined at trial.

84. Defendants' actions as described herein damaged Plaintiffs in other material ways, including but not limited to compromising Plaintiffs' ability to timely and properly pursue and/or defend themselves against related litigation involving Tiversa, Boback, and the FTC.  These damages include, but are not limited to, lost opportunities in these lawsuits and the costs and fees that otherwise would not have been necessary to incur in those matters.

## COUNT TWO

### BREACH OF FIDUCIARY DUTY
**(All Defendants)**

85. Plaintiffs restate the facts and allegations in paragraphs 1 through 84 and incorporate them herein by reference.

86. As attorneys hired and employed to represent Plaintiffs, Defendants, individually and collectively, were fiduciaries with regard to the information shared by Plaintiffs and owed Plaintiffs the utmost good faith and loyalty with regard to that confidential and privileged information.

87. By disclosing that privileged information, actively concealing those disclosures, and allowing that disclosed information to be used to Plaintiffs' detriment as described more fully herein, Defendants breached their fiduciary duties to Plaintiffs.

88. But for Defendants' breaches of fiduciary duty, the FTC action would have terminated early and in LabMD's favor.

89. But for Defendants' breaches of fiduciary duty, Plaintiffs would have recovered substantial additional attorneys' fees and expenses under the EAJA as the prevailing party in the FTC Action.

90. But for Defendants' breaches of fiduciary duty, Plaintiffs would not have suffered other financial damages caused by Defendants' breaches, including but not limited to hiring additional counsel at their own expense.

91. As a direct and proximate result of Defendants' breaches of fiduciary duty, Plaintiffs suffered damage and incurred loss, including but not limited to actual damages and special damages, in an amount to be determined at trial.

92. Defendants' actions as described herein damaged Plaintiffs in other material ways, including but not limited to compromising Plaintiffs' ability to timely and properly pursue and/or defend themselves against related litigation involving Tiversa, Boback, and the FTC. These damages include, but are not limited to, lost opportunities in these lawsuits and the costs and fees that otherwise would not have been necessary to incur in those matters.

## COUNT THREE

### AIDING AND ABETTING A BREACH OF FIDUCIARY DUTY
### (All Defendants)

93. Plaintiffs restate the facts and allegations in paragraphs 1 through 92 and incorporate them herein by reference.

94. As attorneys for Plaintiffs, Defendants, both individually and collectively, aided and abetted the breach of fiduciary duties to Plaintiffs as describer more fully herein, including

but not limited to failing to properly safeguard Plaintiffs' confidential and privileged information, permitting the disclosure of Plaintiffs' confidential and privileged information, and actively concealing the disclosure of Plaintiffs' confidential and privileged information.

95. But for Defendants' aiding and abetting of the breaches of fiduciary duty, Plaintiffs would have recovered substantial additional attorneys' fees and expenses under the EAJA as the prevailing party in the FTC Action.

96. But for Defendants' aiding and abetting of the breaches of fiduciary duty, Plaintiffs would not have suffered other financial damages caused by Defendants' breaches, including but not limited to hiring additional counsel at their own expense.

97. As a direct and proximate result of Defendants' aiding and abetting of the breaches of fiduciary duty, Plaintiffs suffered damage and incurred loss, including but not limited to actual damages and special damages, in an amount to be determined at trial.

98. Defendants' actions as described herein damaged Plaintiffs in other material ways, including but not limited to compromising Plaintiffs' ability to timely and properly pursue and/or defend themselves against related litigation involving Tiversa, Boback, and the FTC. These damages include, but are not limited to, lost opportunities in these lawsuits and the costs and fees that otherwise would not have been necessary to incur in those matters.

## COUNT FOUR
## BREACH OF CONTRACT
### (All Defendants)

99. Plaintiffs restate the facts and allegations in the preceding paragraphs 1 through 98 and further state as follows:

100.     As described more fully herein, Plaintiffs and Defendants entered into a written contract for professional services.  *See* Exhibit A.

101.     The written contract between the Parties required Defendants to perform at least the following functions:

    A.     represent LabMD in any appeal from the FTC in front of the Eleventh Circuit;

    B.     notify LabMD if any conflicts of interest arise during the scope of COA's representation of LabMD; and

    C.     to preserve documents and communications relevant to COA's representation of LabMD.

102.     Additionally, every contract includes the implied duty of good faith and fair dealing between the Parties.

103.     As described more fully herein, Defendants breached the terms of their written agreement with Plaintiffs.

104.     Specifically, Defendants failed to represent LabMD in its appeal to the Eleventh Circuit.  Additionally, Defendants intentionally decided not to disclose conflicts of interest that arose during the COA legal team's representations of LabMD and instead actively concealed these matters from LabMD.  And COA failed to maintain LabMD's file and preserve the necessary records to enable LabMD to recover the full award to which it was entitled under the EAJA.

105.     As described more fully herein, Defendants also breached the implied duty of good faith and fair dealing in the contract.

106.     Plaintiffs were damaged by Defendants' breach of contract in an amount to be determined at trial.

107.     Defendants' actions as described herein damaged Plaintiffs in other material ways, including but not limited to compromising Plaintiffs' ability to timely and properly pursue and/or defend themselves against related litigation involving Tiversa, Boback, and the FTC.  These damages include, but are not limited to, lost opportunities in these lawsuits and the costs and fees that otherwise would not have been necessary to incur in those matters.

**COUNT FIVE**
**RESPONDEAT SUPERIOR**
**(Defendants COA, Dinsmore, and Koch)**

108.     Plaintiffs restate the facts and allegations in paragraphs 1 through 107 and further state as follows:

109.     Defendant Valvo, during the time he represented Plaintiffs, worked for Defendant COA and at all times of his representation of Plaintiffs was acting in the scope of his employment and at the direction of and behest of Defendant COA and the COA legal team.

110.     Defendant Menkes, during the time he represented Plaintiffs as part of the COA legal team, worked for Defendant Koch and, on information and belief, at all times of his representation of Plaintiffs was acting in the scope of his employment of Defendant Koch.

111.     Defendant Vecchione, during the time he represented Plaintiffs as part of the COA legal team, worked for Defendant COA and at all times of his representation of Plaintiffs was acting in the scope of his employment and at the direction of and behest of Defendant COA.

112.     Defendant Rubenstein, during the time he represented Plaintiffs as part of the COA legal team, worked for Defendant Dinsmore and at all times of his representation of

Plaintiffs was acting in the scope of his employment and at the direction of and behest of Defendants COA and Dinsmore.

113.     Defendant Lechner, during the time he represented Plaintiffs as part of the COA legal team, worked for Defendant COA and at all times of his representation of Plaintiffs was acting in the scope of his employment at the direction of and behest of COA.

114.     Defendants COA, Dinsmore, and Koch had an ongoing duty to supervise the actions of their respective employees, during the time their respective employees represented the Plaintiffs.

115.     Defendants COA, Dinsmore, and Koch were negligent in their duty to train, supervise, and/or retain their respective employees Defendants Valvo, Menkes, Vecchione, Rubenstein, and Lechner.

116.     As a direct and proximate result of the negligence of Defendants COA, Dinsmore, and Koch, Plaintiffs were injured and suffered significant economic and other injuries, as set forth in greater detail herein.

117.     As a direct and proximate result of Defendants COA, Dinsmore and Koch's negligence in their training, supervision, and/or retention of their employees, Plaintiffs were damaged in an amount to be determined at trial.

118.     Defendants' actions as described herein damaged Plaintiffs in other material ways, including but not limited to compromising Plaintiffs' ability to timely and properly pursue and/or defend themselves against related litigation involving Tiversa, Boback, and the FTC.  These damages include, but are not limited to, lost opportunities in these lawsuits and the costs and fees that otherwise would not have been necessary to incur in those matters.

## COUNT SIX
### FRAUD
### (Defendants COA, Koch, Dinsmore, Vecchione, Valvo, Rubenstein, Menkes, and Lechner)

119.     Plaintiffs restate the facts and allegations in paragraphs 1 through 118 and further state as follows:

120.     As described more fully herein, Defendants Vecchione, Valvo, Rubenstein, Menkes, and Lechner made false statements and material omissions to Plaintiffs in violation of their professional, ethical, fiduciary, and contractual duties to do otherwise.

121.     At the time of these false statements and material omissions, Defendants Vecchione, Valvo, Rubenstein, Menkes, and Lechner knew that such misrepresentations and omissions were untrue and material.

122.     At the time of these false statements and material omissions, Defendants Vecchione, Valvo, Rubenstein, Menkes and Lechner knew that they were concealing material facts from Plaintiffs, the administrative tribunal, and the courts.

123.     Defendants Vecchione, Valvo, Rubenstein, Menkes and Lechner acted with the intent to deceive and mislead Plaintiffs to fraudulently induce Plaintiffs to continue COA's representation of LabMD which, among other things, allowed COA to utilize LabMD's insurance and induced Plaintiffs to refrain from taking actions that would have enabled LabMD to discover Defendants' professional negligence, breach of fiduciary duty, breach of contract, and fraud.

124.     Plaintiffs acted in reasonable reliance upon Defendant's false representations and material omissions to their detriment.

125.      At the time Defendants made these knowingly false statements and material omissions, they intended to mislead and had knowledge that they were deliberately misleading the Plaintiffs.

126.      Defendant's actions in making these and other knowingly false statements and material omissions to Plaintiffs were willful, wanton, outrageous, and in conscious disregard of Plaintiffs' rights under the law.

127.      By direct and proximate reason of the aforementioned conduct, Defendants are liable, jointly and severally, for the injuries Plaintiffs have suffered, including but not limited to money damages in amounts to be proven at trial.

128.      Defendants' actions as described herein damaged Plaintiffs in other material ways, including but not limited to compromising Plaintiffs' ability to timely and properly pursue and/or defend themselves against related litigation involving Tiversa, Boback, and the FTC.  These damages include, but are not limited to, lost opportunities in these lawsuits and the costs and fees that otherwise would not have been necessary to incur in those matters.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief and judgment as follows:

(1)   for a trial by jury on all issues so triable;

(2)  that judgment be entered against Defendants and in favor of Plaintiffs on all counts in an amount to be determined at trial;

(3)  for all damages and relief allowed by law and in equity, including but not limited to actual, consequential, compensatory, nominal, special, and punitive damages;

(4)   for an award of Plaintiffs' litigation expenses and costs against Defendants; and

31

(5)   for such other and further relief as the Court deems just and proper under the circumstances.

/s/Marc A. Pilgrim
MARC A. PILGRIM
Attorney for Plaintiffs
State Bar Number:  580160

The Pilgrim Law Firm, PC
3715 Northside Pkwy
Bldg. 100 – Suite 500
Atlanta, Georgia 30327
404-400-3831 (Office)
marc@pilgrimlawfirm.com
www.pilgrimlawfirm.com