# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE NOTHERN DISTRICT OF GEORGIA

MICHAEL J. DAUGHERTY, in his personal :
capacity, and in his capacity as CEO of :
LabMD, Inc., and LabMD, Inc., :
a Georgia corporation, :
    *Plaintiffs*, :
     :
v. : Civil Action No.
     :
CAUSE OF ACTION INSTITUTE, a :
Virginia Corporation, :
and :
DINSMORE AND SHOHL, LLP, an Ohio : JURY TRIAL DEMANDED
Corporation, :
and :
KOCH INDUSTRIES, INC., a Kansas :
Corporation, :
and :
JAMES VALVO, ESQ., Individually :
And :
BRIAN MENKES, ESQ. Individually :
and :
JOHN VECCHIONE, ESQ., Individually :
and :
REED RUBENSTEIN, ESQ., Individually :
and :
ALFRED LECHNER, ESQ., Individually :
    *Defendants*. :
     :

**AFFIDAVIT OF MYLEE MCKINNEY**

STATE OF <u>GEORGIA</u>
COUNTY OF <u>CHATHAM</u>

    Personally appeared before me the undersigned officer, duly authorized to administer oaths, [name of affiant], who, having been sworn, does depose and state as follows:

1. My name is Mylee McKinney. I am over the age of 21 and suffer from no legal disabilities.

2. I make this Affidavit based upon my personal knowledge derived from my review of documents related to the above-referenced matter, and from my education, training and experience as an attorney. This Affidavit is given for the purpose of being attached to the complaint in the above-stated case as required by Georgia law.

3. I am an attorney licensed to practice law in the State of Georgia and have been licensed to practice law in the State of Georgia at all times from 2020 through the present. In 2016, I graduated from Armstrong State University where I obtained my Bachelor of Arts in Law & Society. In 2019, I obtained a Juris Doctor degree from the Mercer University School of Law. I specialize in civil litigation and have extensive experience in the preparation and trial of cases involving negligence and personal injuries. I am familiar with the standard of skill, care and diligence normally possessed and utilized by attorneys in Georgia and elsewhere who represent clients in Georgia in personal injury and professional malpractice matters similar to those in which above-named Defendants represented Plaintiff Michael Daugherty, individually and in his capacity as the Chief Executive Officer ("CEO") of LabMD, Inc.

4. I have reviewed the complaint in the above-styled case and have reviewed materials provided to me by Plaintiffs' counsel relating to the claims stated by Plaintiff Michael Daugherty, individually and in his capacity as the Chief Executive Officer ("CEO") of LabMD, Inc (collectively referred to hereafter as "Plaintiffs").

5. For purposes of this Affidavit, I have assumed the following allegations of the complaint to be true:

    (a) On August 29, 2013, Plaintiffs entered into an attorney-client relationship via written contract (hereafter the "Agreement") with the above-named Defendants (collectively referred to hereafter as "COA") whereby COA was to provide legal representation to Plaintiffs in connection with an action brought against Plaintiffs by the Federal Trade Commission ("FTC")[1] in which the FTC alleged that Plaintiffs had committed an "unfair act or practice" prohibited by Section 5(a) of the Federal Trade Commission Act (the "FTC Act" or the "Act"), 15 U.S.C. § 45(a) by "engag[ing] in a number of practices that, taken

---

[1] <u>In the Matter of Labmd, Inc., A Corp.</u>, No. 102-3099, 2013 WL 5232775 (MSNET Aug. 29, 2013)

(a) together, failed to provide reasonable and appropriate security for personal information on its computer networks."[2]

(b) Pursuant to the terms of the Agreement, COA would appoint attorneys to serve as legal counsel to Plaintiffs in furtherance of their interests in the above-referenced action filed by the FTC.

(c) At all times material hereto, Defendants James Valvo ("Valvo"), Brian Menkes ("Menkes"), John Vecchione ("Vecchione"), Reed Rubenstein ("Rubenstein"), and Alfred Lechner ("Lechner") were employed as attorneys by and/or affiliated with COA in its representation of Plaintiffs in the FTC litigation that is the subject of Plaintiffs' Complaint.

(d) On April 21, 2014, Plaintiffs filed a motion for summary judgment which the FTC denied thereby necessitating an evidentiary hearing which was held before an administrative law judge ("ALJ") in July 2016. After evidence was presented, the ALJ dismissed the FTC's complaint against Plaintiffs. The FTC appealed the ALJ's decision thereby bringing the case back before the FTC pursuant to 16 C.F.R. § 3.52.

(e) Not surprisingly, in July 2016, the FTC reversed the ALJ's decision finding Plaintiffs liable for unfair data security practices and as such, issued a cease-and-desist order requiring Plaintiffs to institute a number of compliance measures to address the allegations outlined in the FTC's original complaint.

(f) Shortly after the July 2016 decision by the FTC, COA withdrew as counsel for Plaintiffs.

(g) Upon information and belief of Plaintiffs, by this point in the litigation, COA had incurred in excess of $3,200,000 in internal fees and costs in its defense of Plaintiffs.

(h) After hiring new counsel, Plaintiffs appealed the FTC's July 2016 decision to the Eleventh Circuit Court of Appeals.

(i) In June 2018, the Eleventh Circuit vacated the FTC's July 2016 decision – holding that that the July 2016 FTC order was "devoid of any meaningful standard informing the court what constitutes a 'reasonably designed' data-security program."

(j) As a result of Plaintiffs' success before the Eleventh Circuit, Plaintiffs were entitled to seek payment from the government for the attorneys' fees and costs pursuant to the Equal Access to Justice Act ("EAJA").[3] Not surprisingly, the EAJA requires that Plaintiffs submit evidence supporting their claims for attorneys' fees and costs.

(k) In October 2019, a Special Master was appointed to hear and decide Plaintiffs' application for attorneys' fees and costs under the EAJA.

(l) The Special Master determined that Plaintiffs were entitled to payment under EAJA for attorneys' fees and costs[4] but only a fraction of what was actually incurred was awarded to Plaintiffs due to COA's failure to preserve and potentially destroyed the billing records associated with its representation of Plaintiffs as agreed upon by the parties.

(m) Plaintiffs were unable to apply for all EAJA reimbursements they were entitled to receive because of COA's failure to properly and accurately record its time as required by the Agreement. Thus, the attorneys' fees awarded by the Special Master were consequently calculated without the benefit of full and complete COA attorney billing records. Furthermore, COA destroyed relevant records and subsequently lied to the Court.

(n) Additionally, in February 2019, Plaintiffs learned that COA, through its attorneys, had divulged critical confidential client communications without Plaintiffs' consent to an attorney employed at Reed Smith LLP ("Reed Smith") which represented a party adverse to Plaintiffs' interested in the FTC's case against Plaintiffs.

---

[2] LabMD, Inc. v. Fed. Trade Comm'n, 894 F.3d 1221, 1225 (11th Cir. 2018)

[3] 5 U.S.C. § 504

[4] *LabMD, Inc. v. FTC*, Case 1:19-mi-00071-WEJ (Document 20) (N.D. Ga. Oct. 1, 2019).

(o) Specifically, Plaintiffs learned that Valvo, one of the attorneys employed by COA to assist in representing Plaintiffs, routinely divulged integral information to Plaintiffs' case to the Reed Smith attorney.

(p) At all times material to the allegations in Plaintiffs' complaint, COA knew of Valvo's misconduct and actively concealed this information during its representation of Plaintiffs.

(q) When Valvo's misconduct was discovered by a paralegal at COA, Defendants Rubenstein, Menkes, and other key individuals at COA were notified.

(r) At all times material to the allegations in Plaintiffs' complaint, Defendants Rubenstein and Menkes knew of Valvo's misconduct and failed to notify Plaintiffs of the same and actively concealed this information during the course of its representation from Plaintiffs.

(s) Plaintiffs ultimately discovered that COA had engaged a software/computer program to edit and destroy parts of the Plaintiffs' file including but not limited to billing records of COA and other documents related to COA's representation of Plaintiffs.

(t) By divulging of confidential information during its representation of Plaintiffs, COA essentially eviscerated Plaintiffs ability to adequately and effectively defend itself in the FTC litigation.

6. In my professional opinion, the acts and omissions of the Defendants as described above and more thoroughly in the Plaintiffs' Complaint demonstrate that the Defendants' performance of legal services on behalf of Plaintiffs fell below the degree of skill, care and diligence commonly possessed and exercised by reasonably skillful and prudent lawyers in Georgia similarly situated under the same or similar circumstances and constitute legal malpractice.

7. I hereby affirm that I have given this Affidavit under oath and the statements contained herein are true and accurate.

*Signature on following page.*

Further the Affiant sayeth not, this 29th day of September, 2022.

_____
Mylee McKinney
Georgia Bar No. 122143

Sworn to and subscribed before me this 29th day of September, 2022.

_____
Notary Public