**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **JAMES MOONEY, MD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION FILE NO.** |
| | ) | _____ |
| **v.** | ) | |
| | ) | |
| **EMORY UNIVERSITY** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

## COMPLAINT

COMES NOW Plaintiff James Mooney, MD ("Plaintiff" or "Dr. Mooney")

and files this Complaint against Emory University pursuant to Title VII of the

Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq* ("Title VII"), Title IX of the

Education Amendments of 1972, 20 U.S.C. § 1681, et seq. ("Title IX"), and

Georgia state law for negligence and breach of contract.

## INTRODUCTION

There is perhaps no more expedient path to the ruin of one's career and

reputation than to be accused of sexual misconduct.  While the visibility and

attention afforded victims of such conduct has, thankfully, increased in recent

years, it came with the unfortunate side-effects that some people would

weaponize this change against innocent people, and that many times, people

accused of such conduct are often considered guilty at the moment of the

accusation.   For these reasons, those who are directly involved with the investigation, adjudication, and resolution of claims of sexual misconduct, like Department of Title IX employees at educational institutions, wield *immense* power over the accused.  Anything less than the utmost diligence, discretion, and delicacy could result in undeserved injury to an accused person.

The consequences, then, when such employees carry out their duties in a biased manner can be devastating, as they were in the case of Dr. James Mooney, a pediatric anesthesiologist and pain doctor employed by Children's Healthcare of Atlanta ("CHOA") and Emory University.  Because of the anti-male bias that Emory's Department of Title IX ("DTIX") harbored, two sets of largely false accusations against him by other CHOA employees that, even if believed, fell well short of Title IX violations, and that should have been dismissed at an early stage, were provided fertile ground to flourish for **22 agonizing months**.  This was enabled by Emory's blatant and intentional disregard for Title IX provisions and its own policy designed to safeguard against exactly the type of injuries that Dr. Mooney suffered.

Dr. Lucia Lopez's and Joanna Jardina's reckless accusations engendered almost immediate rebuke against Dr. Mooney because Emory decided his guilt at the moment that he was accused.  Indeed, Dr. Mooney was from his position as Director of Pain Service merely because allegations of Title IX misconduct had been filed against him with Emory's Title IX department.  Afterwards, for

no other explicable reason than because he is a man, Emory DTIX employees and agents made every effort in their power to discriminatorily skew their investigation and adjudication of the claims against him in the favor of the female accusers, posing to him investigative questions that it did not pose to his accusers, not permitting him to respond to accusations that had been leveled against him, framing the findings of the investigation in a lopsided manner, and not permitting him to cross-examine witnesses at his hearing on Dr. Lopez's claims in the same manner that she was permitted, and perhaps most damagingly, permitting the process to drag on for **678 days**, 558 days longer than the 120 days in which Title IX and Emory's own policy calls for their conclusion, among many other things. Furthermore, throughout the over two and a half years that this matter dragged on, Dr. Mooney alerted Emory management to DTIX's noncompliance with Title IX, but to absolutely no avail. Emory also **utterly ignored** Dr. Mooney's own complaints of retaliation and harassment against Dr. Lopez, Jardina, and others, including a formal Title IX complaint.

Nearly all of DTIX's practices constituted violations of not only Title VII, but Title IX, on which Emory was required to conform its own policy, which itself constituted violations of sex discrimination under Title IX.

Dr. Mooney was eventually cleared of any Title IX violations, and in the end, all that DTIX managed to accomplish in its anti-male campaign to destroy

Dr. Mooney was bringing about 22 months of nerve-shattering apprehension and pain that put Dr. Mooney in therapy and ruined his ability to sleep, inflicting permanent damage to his professional and personal reputation.

## JURISDICTION AND VENUE

### 1.

This Court has jurisdiction of Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 & 1367.

### 2.

This Court has personal jurisdiction over Defendant.

### 3.

Venue is proper in this district and division pursuant to 28 U.S.C. § 1391 because Defendant resides in this district and furthermore, a substantial part of the events and/or omissions giving rise to the claims at issue occurred in this district.

## ADMINISTRATIVE PREREQUISITES

### 4.

Plaintiff has exhausted all administrative requirements necessary to bring his Title VII claims.  Plaintiff filed an EEOC charge describing his Title

VII claims in this case on November 3, 2022.  The EEOC issued its Notice of Right to Sue on November 14, 2022.

**5.**

This action is timely filed with respect to Plaintiff's Title VII claims as fewer than 90 days have passed since Plaintiff's receipt of the Notice of Right to Sue for the same.

## **PARTIES**

**6.**

Defendant Emory University ("Defendant" or "Emory") is a domestic corporation with over 500 employees, which is authorized to and does transact business in Georgia.  It is a private research university based in Atlanta, GA. Along with Children's Pediatric Institute, Inc. d/b/a Children's Healthcare of Atlanta ("CHOA"), which is affiliated with Emory University Hospital, Defendant is Dr. Mooney's employer.

**7.**

Plaintiff is a male citizen of the United States and a resident of the State of Georgia.  He currently serves as an Attending Pediatric Anesthesiologist and Pediatric Pain Specialist at Emory/ CHOA.   He has worked providing anesthesia to and treating children for chronic and acute pain for over 15 years. While treating children with chronic pain in clinic, Dr. Mooney also devotes a

large portion of his time speaking with the patients and their families to help find ways, whether physical, psychological, or medical, to improve or eliminate their pain.  In surgery, Dr. Mooney works to provide smooth anesthesia to his patients and explain often complex matters to their families so that they know what to expect and to help to allay their fears.  On patient wards, Dr. Mooney assists other teams in managing their patients with acute or chronic pain by offering guidance on medications and therapies, and by providing approaches that are out of the knowledge base or comfort zone of other providers.

## STATEMENT OF FACTS

### Dr. Mooney's Background and Career at Emory

**8.**

Emory hired Dr. Mooney as a Pediatric Anesthesiologist and Pediatric pain physician in May 2018.  From April 2019 to April 2021, he served as CHOA's Medical Director for Pain Medicine.

**9.**

Dr. Lucia Lopez is a Pediatric Chronic Pain and Anesthesia Attending who, like Dr. Mooney, is employed by Emory University Hospital by CHOA. She began in that role on or about September 14, 2020.  Since then, she has worked in many of the same settings as Dr. Mooney.

**10.**

Emory's Sex and Gender Based Harassment and Discrimination Policy is referred to internally as Emory Policy 8.2 ("Policy 8.2").  It is largely based on Title IX mandates for federally funded educational institutions.

**11.**

Emory disseminated Policy 8.2 to its employees, including Dr. Mooney.

**12.**

Dr. Mooney relied on Emory's equitable and proper enforcement of its own policies, including Policy 8.2, as a condition of his continued employment.

**Dr. Mooney is Removed from his Position as Director of CHOA's Pain Service Because of His Sex and In Retaliation for Merely Being Accused of Sexual Misconduct**

**13.**

On or about December 30, 2020, Dr. Lopez informed Dr. Miller that Dr. Mooney had made some comments that she felt were inappropriate for the workplace.

**14.**

Dr. Miller admitted that he never saw any evidence of inappropriate communications between Dr. Mooney and Dr. Lopez.

15.

Dr. Miller also admitted that he never observed a single instance in which Dr. Mooney made a comment that he considered concerning regarding Dr. Lopez.

16.

On March 2, 2021, Dr. Lopez filed an internal complaint with DTIX alleging that Dr. Mooney had violated Emory's Policy 8.2.

17.

On or about April 1, 2021, following the filing of Dr. Lopez's Title IX complaint and prior to the conclusion of the investigation, Dr. Miller removed Dr. Mooney from his position of Director of Pain Services.  As a result of this demotion, his pay was decreased.

18.

Dr. Miller decision to remove Dr. Mooney as Director of Pain Services was because of the complaint that Dr. Lopez had filed against Dr. Mooney.  By this decision, Dr. Miller effectively decided Dr. Mooney's guilt on the mere basis of Dr. Lopez's allegations and credited her version of events over Dr. Mooney's merely because he is a male, even though he did not observe any of these comments.  Moreover, Dr. Miller retaliated against Dr. Mooney in violation of Title IX.

**Emory's Refusal to Investigate Mooney's Claims of Retaliation and
Sexual Harassment While Addressing Those of His Female
Counterparts with Celerity**

**19.**

On November 26, 2021, in the midst of the investigation into Dr. Lopez's
accusations, Dr. Mooney emailed several individuals, including Supria
Kuppuswamny, the DTIX investigator assigned to the case, stating that Dr.
Lopez had violated the no contact order that Emory had instituted between
them by using his office to make calls when no one else was present.

**20.**

In the same email, Dr. Mooney recounted another retaliatory episode
wherein earlier that day, Dr. Lopez had attempted to enter his office for an
unknown purpose, not realizing that he was inside of it.   Dr. Mooney
specifically stated that "the workplace environment has become intolerable"
and that "[Dr. Lopez] has produced a hostile workplace."

**21.**

On December 17, 2021, Dr. Mooney filed a formal Title IX complaint that
alleged retaliation against both Lopez and Joanna Jardina, a CHOA nurse
practitioner who Lopez had encouraged to file frivolous Title IX claims against
Dr. Mooney.  In that complaint, he alleged that both Lopez and Jardina were
abusing the Title IX process to retaliate against him.

9

**22.**

Following his November 26, 2021 email regarding Dr. Lopez's attempt to gain unauthorized access to his office during the course of an ongoing Title IX investigation and his formal complaints of retaliation in December of that year against both Lopez and Jardina, Emory did **nothing** to investigate these claims, and Dr. Mooney has heard **nothing** further regarding them to this day.

**23.**

By contrast, when Dr. Lopez filed her own complaints of retaliation against Dr. Mooney some months later, that complaint was recorded within days of filing and fully investigated under Emory policy over a period of years.

**24.**

In another similar instance in which Dr. Mooney complained of retaliation, on August 10, 2022, Dr. Mooney emailed Monica Agoston, a CHOA psychologist and witness against him in Dr. Lopez's Title IX proceedings, informing her that she had acted inappropriately towards him by telling him that he appeared "hungover" the previous day and asking her to refrain from non-work-related discussion with him. Dr. Mooney then forwarded this email to Katherine Silcox in CHOA's Title IX office to inform her of Dr. Agoston's retaliatory behavior.

**25.**

DTIX did not open any sort of formal proceeding based on Dr. Mooney's complaint, and Silcox instead chastised him for even bringing the incident to their attention.

**26.**

Dr. Agoston then complained to DTIX, characterizing the very same email referenced above in which Dr. Mooney asked her to minimize non-work-related communications with him as retaliation *against her*. In response, Emory instituted a formal complaint based on her allegations and referred it to the Department of Equity and Inclusion for investigation.

**27.**

In the same manner, when Jardina complained that Dr. Mooney had retaliated against her by giving her a performance evaluation that was below what she felt she deserved after she complained to the practice manager about some interactions that she had with Dr. Mooney, Emory instituted a formal proceeding against him and investigated the claims fully.

**28.**

As early as June 2021, Dr. Mooney stated in response to Emory's investigative questions in the Jardina matter that he believed that "the

complaint by Joanna Jardina is, in fact, retaliatory for perceived poor evaluations" and that her false allegations were encouraged by Dr. Lopez.

**29.**

In his response to the Title IX investigator's follow-up questions in the Jardina matter, Dr. Mooney again stated, this time in response to a question about whether he believed Jardina was retaliating against him, that he believed that to be the case: "[t]he complainant is making intentionally and obviously false allegations regarding my behavior, which I believe were prompted by dissatisfaction with her work evaluations."

**30.**

These allegations were never investigated or addressed.

**31.**

Emory also treated Dr. Mooney less favorably than other female employees with respect to his complaints of sexual harassment.

**32.**

For example, in his written responses to the Title IX investigator's follow up questions in the Jardina matter, Dr. Mooney specifically said that Jardina was "harassing" and "intimidat[ing]" him.

**33.**

Additionally, in his December 21, 2017 formal Title IX complaint, Dr. Mooney alleged that Lopez had harassed him, imploring Emory to investigate the allegations under Title IX.

**34.**

In that same formal Title IX complaint, Dr. Mooney alleged that Jardina began her campaign against him after discovering that he was polyamorous, which is plainly an allegation of sexual harassment under both federal law and Emory's Policy 8.2

**35.**

In a January 13, 2022 email that included Marti McCaleb, Emory's Title IX coordinator, Danica Myers, an Emory Title IX consultant, and Silcox, Dr. Mooney stated that Dr. Lopez had carried out a "campaign of harassment" against him that included misrepresentations about his sexual behaviors.

**36.**

Additionally, the records of both Jardina's and Lopez's Title IX investigations are replete with Dr. Mooney's denials that he had engaged in the sexually charged actions of which both women accused him, effectively accusing *them* of sexual harassment, as spreading false information of a sexual

nature about another employee constitutes sexual harassment under Title IX and Policy 8.2.

**37.**

None of these complaints was ever formally charged or investigated.

**38.**

By contrast, Emory investigated Dr. Lopez's claims of sexual harassment vigorously, instituting formal Title IX proceedings against Dr. Mooney and investigating and adjudicating them fully, as described in greater detail below.

**39.**

Emory also instituted a formal Title IX proceeding and fully investigated the sexual harassment claims of Joanna Jardina, despite their obvious frivolity, especially compared with Dr. Mooney's own allegations.

**40.**

In sum, Emory did not institute formal Title IX proceedings or investigate **any** of Dr. Mooney's claims of retaliation against Dr. Lopez nor Dr. Agoston while doing so for the retaliation claims of Agoston, Lopez, and Jardina—all of whom were women.

**41.**

Nor did Emory institute formal Title IX proceedings or investigate **any** of Dr. Mooney's claims of sexual harassment against Lopez or Jardina—both of whom are women.

**Emory's Discriminatory, Anti-Male Bias Demonstrated in Investigating and Adjudicating Dr. Lopez's Complaint**

**42.**

Throughout the investigation, Dr. Mooney vigorously challenged the veracity of the allegations that Dr. Lopez and Jardina had leveled at him.

**43.**

A Hearing Office appointed by Emory ultimately found that Dr. Mooney did not violate Title IX because his action did not have the effect of denying Dr. Lopez equal access to Emory's educational opportunities.  Dr. Lopez appealed the decision, and the appeal officer appointed to decide it denied the appeal.

**44.**

Throughout the investigation and subsequent adjudicative process, however, Emory demonstrated a clear bias against Dr. Mooney on the basis of his gender by treating Dr. Lopez more favorably at each stage of the process, in violation of federal Title IX regulations as well as Policy 8.2.

**45.**

Emory was also remarkably reckless about its own adherence to Title IX's mandates and its own internal sex-based harassment policy.

**46.**

For example, upon receipt of a formal complaint, Emory's Title IX coordinators were required by federal law (which requirements are accordingly adopted into Emory's own Title IX policy) to provide a written notice to the concerned parties that conforms to a number of criteria, including information about an informal resolution process, which the notice provided to Dr. Mooney did not.  *See* 34 C.F.R. 106.45 (b)(2).

**47.**

The original notice Emory sent to Dr. Mooney on March 5, 2021 also failed to include a statement that the respondent is presumed not responsible for the alleged conduct and that he could select an advisor of his choice to represent him in the matter.  Both of these are similarly required both by Emory policy and federal law.  *Id.*

**48.**

Additionally, Emory's Title IX policy requires that "[t]he University will send the parties and their advisors prior written notice of any investigative interviews, meetings, or hearings with sufficient time for the individual to

prepare." However, on February 11, 2022, after counsel for Dr. Mooney sent a letter on his behalf on the previous day highlighting several areas of noncompliance with federal law and Emory's own policies, Emory's Title IX interim Title IX coordinator, Danica Myers, sent Dr. Mooney an email stating "[e]ffective February 11, 2022, Department of Title IX will be only communicating separately and directly with each party….This means that going forward we will no longer include advisors… on DTIX communications."

### 49.

Federal law and Emory policy both require that the Title IX Coordinator and investigator be free from bias. *See* 34 C.F.R. 106.45(b)(3). But the written questions that Emory posed to Dr. Mooney in the course of its investigation demonstrated anti-male bias. The Investigator persistently posed pedantic follow-up questions to Dr. Mooney's written responses asking him to state the relevance of his responses, while never doing in response to Dr. Lopez's responses.

### 50.

The way that the Final Investigative Report was drafted also demonstrated anti-male bias. It contained purported evidence of Dr. Mooney's misconduct that was not included in prior investigative reports and which Dr. Mooney had no opportunity to confront or rebut, including that Dr. Mooney

had purportedly retaliated against Dr. Lopez for overriding her decision to administer a certain pain block treatment than the one that she selected, and Dr. Lopez's allusion to "facts and circumstances" that she could "not remember."

## 51.

The Final Investigative Report also includes accusations by others that were gathered during the investigation, namely from Monica Agoston, that have absolutely no connection to Dr. Lopez's complaints and are rather the results of a fishing expedition that Emory carried out in an attempt to gather any demeaning information about Dr. Mooney that it could.

## 52.

Conversely, the Final Investigative Report did not include testimony by Dr. Mooney that exculpated him from certain of Dr. Lopez's claims, such as her claim that Dr. Mooney retaliated against her by not showing her how to use certain scheduling software, while Dr. Mooney answered in the course of the investigation that he and another doctor did so personally.

## 53.

The Final Investigative Report also shows consistent editorialization of Dr. Lopez's account through the use of brackets and footnotes to refer to

corroborating facts in the record, while declining to do so **even once** for Dr.
Mooney's account.

### 54.

The federal regulations that accompany Title IX and set out minimum
procedural requirements for the resolution of Title IX issues address only
sexual harassment, so Emory's Title IX office's investigation of Dr. Lopez's
claims of reported retaliation were inappropriate from the outset.  *See* 34
C.F.R. 106.45 (a)(2)-(b).

### 55.

Additionally, Emory's own policy recognizes this distinction and sets out
an entirely separate basis for adjudicating claims of "Prohibited Conduct"
(which covers claims of retaliation) as opposed to "Title IX Misconduct."  But
DTIX investigated and adjudicated all claims together as a collective Title IX
proceeding.

### 56.

Emory's policy states that "[w]ithin 5 business days of the Final Report
of the Investigation, the Title IX Coordinator will select the date, time, and
location of the hearing… and will provide notice to both parties."  But Emory
released the Final Investigative Report on May 17, 2022, and did not attempt

to begin scheduling the hearing until June 17, 2022.  The hearing was not finally scheduled until August 26, 2022.

**57.**

The hearing itself was also conducted in a biased manner.  In particular, the Hearing Officer did not permit Dr. Mooney's advisor at the hearing to pose questions either to Dr. Lopez or the witnesses that were crucial to his case, while permitting Dr. Lopez's advisor to pose questions whose relevance was far more remote.

**58.**

The Hearing Officer also disallowed questioning about one witness's statement that Lopez once **laughed** after mentioning her complaints against Mooney and that co-workers had testified that Lopez had a tendency to "jump and react" to things.

**59.**

The Hearing Officer also disallowed questioning about instances in which Dr. Mooney had placed other witnesses on call for a consecutive week, something that Lopez claimed Dr. Mooney did to her in an act of retaliation.

**60.**

The Hearing Officer also disallowed cross-examination of Dr. Vipin Bansal, one of Dr. Lopez's most forceful witnesses at the hearing, save for one question about the strength of Dr. Lopez's memory.  She did not permit questioning about his own account of a conversation that formed the bulk of Dr. Lopez's claims.

**61.**

Dr. Lopez's advisor, however, was permitted to ask Dr. Miller whether, as for each of Dr. Mooney's purported actions as detailed in her complaints, he felt that Dr. Mooney's actions were "appropriate" or "professional" -- plainly irrelevant inquiries.

**62.**

The Hearing Officer also permitted Dr. Lopez's advisor to elicit testimony from witnesses concerning matters that necessarily had nothing to do with her complaint, specifically if there were "other instances where you have seen or heard Dr. Mooney engage in offensive behavior around Dr. Lopez?" despite Emory's policy requires that "[a]ll statements, testimony, and evidence… be restricted to matters directly relevant to the case, as determined by the Hearing Officer."

63.

The Hearing Officer's decision in the Lopez matter was erroneous and biased in her finding that Dr. Mooney displayed an artistic image of a nude woman on his laptop in such a way that it was visible for all to see and that a conversation he had with Lopez and several others about the academic study of sadomasochism and marijuana-based lubricant was officious and not related to research of pain responses in atypical populations was not related to research and study.

64.

The Hearing Officer's decision was also erroneous and biased in her determination that even had the laptop incident, the conversation about research into atypical pain responses, and a comment about girls, occurred according to Lopez's testimony, they were objectively severe and pervasive harassment under applicable Title IX standards.

## Emory's Title IX Process Drags on for 558 Days Longer than Legally Permitted Without any Explanation

65.

Emory's Policy states, "[t]he University will seek to resolve every investigation and any subsequent adjudication within 120 business days from the receipt of a Formal Complaint."  It also requires that all extensions be

communicated to the parties in writing along with an explanation for any extension.

**66.**

Title IX also requires that the institutions that it covers adhere to "reasonably prompt time frames for the conclusion of the grievance process" and that delays of the process be "limited," only for "good cause" and be accompanied by written notices to the parties explaining the reasons for the extensions.

**67.**

Emory repeatedly violated Title IX and its own policy throughout the investigation by permitting extreme delays without providing good cause or written explanations.

**68.**

Over 22 months after Dr. Lopez's made her original complaint, Emory finally held a hearing of the matter on October 18, 2022, even though the allegations, even if accepted as true, did not establish a violation of Title IX as a matter of law – in fact, it was not even close to the standard of law for purported Title IX misconduct.  The Hearing Officer submitted her Determination and Rationale to the parties on November 17, 2022.  That

decision determined that none of Dr. Mooney's conduct constituted Title IX misconduct or retaliation.

**Dr. Mooney Repeatedly Alerts Emory Leadership to DTIX's Failures to Handle the Accusations Against Him in Accordance with the Law**

**69.**

On many occasions from the beginning of the Title IX process, Dr. Mooney communicated to management-level employees both at CHOA and Emory that the DTIX employees handling both Lopez's and Jardina's complaints were doing so in a manner that was woefully inadequate.

**70.**

On November 26, 2021, Dr. Mooney sent an email to Katherine Silcox, CHOA's Senior Director of Human Resources, Supria Kuppuswamy the Title IX investigator assigned to both Lopez's and Jardina's claims, and Bruce Miller, complaining that the Title IX process had "become unacceptable." He referenced several policies imposed by Title IX and Emory Policy 8.2 that DTIX had violated to that point.

**71.**

With respect to the provision regarding violations of protective measures, he wrote "Dr. Lopez continues to disregard the no contact order

when convenient for herself, and this latest episode has me concerned why she

would actually be entering my office when she believes no one is present."

### 72.

With respect to the Policy 8.2 provision related to time frames, he wrote:

Given a complaint date of March 4th, the 120 business days to
"resolve every investigation and any subsequent adjudication" was
at the end of August. While one may claim this is a complex issue,
each of these cases are being treated a separate complaints. The
120 day time frame therefore applies to both, and it has been
approximately 60 additional business days since that time.  At the
same time, turnaround time for my responsibilities have not been
extended.  I was recently given 10 business days (until November
5th) to respond to almost 300 pages of 'evidence', which I had to do
in addition to my regular work responsibilities. This is in spite of
the fact that the policy calls for at least 10 days' time.  If I am to
be asked for such respect of time, it is reasonable to expect the Title
IX team to do the same. It is now the 14th business day since those
responses were submitted, I think it reasonable the investigator
will have had time as part of their duties to process such response
documents, initiate the next steps of the process, and communicate
those next steps.

### 73.

Kuppusway forwarded that email to Marti McCaleb, Emory's then Title

IX Coordinator, and Danica Myers, another Emory Title IX coordinator at the

time.

### 74.

On January 13, 2022, Dr. Mooney sent another email complaining about

DTIX's employees' failures to comply with Policy 8.2.  This email was sent to

Carole Henderson, Emory's Vice Provost for Diversity and Inclusion, McCaleb, Myers, Silcox, and Dr. Miller.  Again, he complained that Emory had not properly investigated his Title IX claims, that the Title IX office planned to have the Dean of the School of Medicine decide the matter without a hearing in violation of Title IX, and that at that point in time, the investigation had dragged on for "over 200 days with no end in sight," and that no one had ever communicated the reasons for these delays, or that there would be delays at all.

**75.**

Also in this email, Dr. Mooney related that:

> The personal and professional consequences of this prolonged process are extensive. Since the initiation of these investigations, I have experienced a tremendous increase in stress and anxiety and have had to pull back from non-clinical activities to attempt to manage this. Even if these allegations were dismissed tomorrow, this will have significant repercussions on my career for several years, which also results in a substantial financial impact to myself and my family.

**76.**

On February 10, 2022, counsel for Dr. Mooney sent a letter to McCaleb outlining DTIX's noncompliance with applicable law and Policy 8.2, and how that noncompliance was affecting Dr. Mooney.  This letter referenced Dr. Mooney's previous complaints to this effect, including the decision to allow the Dean of the School of Medicine to decide the matter, DTIX's failure to respond

26

to his own complaints, and the extreme delays in the handling of both Lopez's and Jardina's complaint.  Henderson was copied on the email containing the letter.

**77.**

Rather than correct or attempt to explain DTIX's gross failures, the next day Myers sent counsel for Dr. Mooney an email stating that it would no longer be communicating with counsel.  It made no attempt to explain its failures.

**78.**

On February 16, 2022, Dr. Mooney replied to Myers' email, copying McCaleb, informing them of the impropriety of their attempts to restrict attorney communications and once again complaining of DITX's noncompliance with law and policy as he had described previously.

**79.**

In another email to Myers and McCaleb on that same day, Mooney wrote:

For reference:

It has been approximately 349 calendar days, or 249 business days since the original allegations were made.  It has been approximately 121 calendar days, or 86 business days since the investigation results were complete.  It has been approximately 61 calendar days, or 43 business days since the retaliation allegations were made. It has been approximately 229 calendar days, or 163 business days since the policy stated 120 days passed.

**80.**

Dr. Mooney included a section in his Response to the Final Investigative Report in the Lopez matter entitled "Improprieties in the Investigative Process."  In that section, he detailed the numerous ways in which DTIX had violated Policy 8.2 and Title IX throughout the investigative process such as its inclusion of evidence to which Dr. Mooney had no prior opportunity to respond or to rebut and instances in which the report demonstrated anti-male bias.

**81.**

On August 26, 2022, Dr. Mooney emailed Nicole Babcock, Emory's Director and University Title IX Coordinator stating that Emory had violated Policy 8.2 by failing to dismiss Jardina's complaint, which no reasonable person could have found to have violated Title IX, prior to investigating it.

**82.**

The bulk of the areas of noncompliance to which Dr. Mooney alerted Emory also constituted violations of Title IX.

**Dr. Mooney Has Suffered Severe Emotional Distress as a Result of Emory's Clear Anti-Male Bias in Handling Lopez's and Jardina's Title IX Complaints**

**83.**

Prior to the events that form the basis for this lawsuit, Dr. Mooney had never been accused of sexual misconduct or discrimination of any kind.

**84.**

For nearly two years, Dr. Mooney had to navigate each day under the weight of the fear that he might lose his job and that his professional reputation be permanently damaged to the point that he may no longer be permitted to practice medicine.

**85.**

During that entire span of time, Dr. Mooney was under an order to have no contact with Dr. Lopez, a physician who he would otherwise have to work with regularly, making for a highly awkward arrangement that signaled to all those around him that he was dangerous and to be avoided.

**86.**

This not only made it considerably more difficult to complete his job duties and improve as a physician, but permanently marked him as a deviant, as someone with whom associating could lead to harm, which did and will continue to inflict psychic injury upon Dr. Mooney.

### 87.

The net effects of the anti-male bias that drove DTIX's disastrous handling of Lopez's and Jardina's complaints are severe damage to Dr. Mooney' reputation and psyche, and a work environment in which it will be stridently more difficult for him to thrive.

### 88.

The immense stress brought on by Emory's actions also affected Dr. Mooney's personal relationships outside of work.

### 89.

As a direct result of Emory's actions, Dr. Mooney sought treatment from a therapist and started on medications for insomnia, both of which caused him economic loss.

### 90.

Dr. Mooney has suffered greatly, not least because of his removal from his position as Director of the Pain Service. To this point, Dr. Mooney has endured nearly two years of hardship due to Dr. Lopez's and Jardina's accusations against him, which absent DTIX's blatant anti-male bias fostered to a life far longer and more prolific than they merited and in violation of Title IX and Emory's own policies.

## COUNT I
## VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

### 91.

Plaintiff incorporates by reference all previous paragraphs of this Compliant as if fully set forth herein.

### 92.

As a male, Plaintiff is a member of protected class for purposes of Title VII.

### 93.

Defendant Emory treated Plaintiff disparately on the basis of his sex/gender in violation of Title VII, as evidenced by his disparate treatment in his removal from the position of Director of the Pain Service by Dr. Miller, where Dr. Miller essentially credited Dr. Lopez's version of the events at issue over his with no basis for doing so and being passed over for promotion to the position of assistant professor in a discriminatory manner.

### 94.

This demotion was also improperly retaliatory for Dr. Mooney's defense of himself against Dr. Lopez's accusations.

**95.**

Defendant Emory treated Plaintiff disparately on the basis of his sex/gender, as evidenced by his disparate treatment as compared with Dr. Lopez throughout the adjudicative/investigative process that DTIX conducted, many examples of which are provided in the factual section above, but of which other instances are believed to have occurred.

**96.**

Emory also discriminated against Dr. Mooney on the basis of sex in its refusal to investigate or even acknowledge his claims of retaliation against Dr. Lopez, Dr. Agoston, and Jardina, while addressing their claims of retaliation against him with haste, instituting formal Title IX proceedings based thereon, investigating them, and in the case of Dr. Lopez, submitting them to a Hearing Officer for adjudication.

**97.**

Moreover, no adverse employment action was taken against Dr. Lopez because a complaint had been filed against her.

**98.**

Emory's discrimination against Dr. Mooney on the basis of his gender also revealed itself in its disparate treatment of him in the investigative

process, through the questions that it posed to him, in the rendition of the final

investigative report, and in its conduct at the hearing, vis a vis Dr. Lopez.

**99.**

These and other facts entitle Plaintiff to all damages permitted by law,

including but not limited to, compensatory damages, emotional distress

damages, punitive damages, pre- and post-judgment interest, and attorneys'

fees and costs stemming from Defendant Emory's violations of Title VII.

## COUNT II
## VIOLATIONS OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972

**100.**

Plaintiff incorporates by reference all previous paragraphs of this

Compliant as if fully set forth herein.

**101.**

In the same way as Title VII, Title IX prohibits discrimination on the

basis of gender but specifically in any education program or activity receiving

federal financial assistance.  Title IX also prohibits retaliation for participation

in a Title IX proceeding and/or protected opposition.

**102.**

Emory is a covered institution under Title IX.

**103.**

Emory also discriminated against Dr. Mooney on the basis of sex in its selective enforcement of Title IX by its refusal to investigate or even acknowledge his claims of retaliation against Dr. Lopez, Dr. Agoston, nor Jardina while addressing their claims of retaliation against him with haste, instituting formal Title IX proceedings based thereon, investigating them, and in the case of Dr. Lopez, submitting them to a Hearing Officer for adjudication.

**104.**

Moreover, no adverse employment action was taken against Lopez because a complaint had been filed against her.

**105.**

Furthermore, under Title IX, "[a] recipient's treatment of a complainant or a respondent in response to a formal complaint of sexual harassment may constitute discrimination on the basis of sex under title IX." 34 C.F.R. § 106.45.

**106.**

Emory's numerous failures to comply with Title IX's requirements in conducting the investigation of the complaints against Plaintiff and the subsequent adjudicative process constituted discrimination on the basis of sex under Title IX.

**107.**

As a male, Plaintiff is a member of protected class for purposes of Title IX.

**108.**

Emory treated Plaintiff disparately on the basis of his sex/gender in violation of Title IX, as evidenced by his disparate treatment in his removal from his position as Director of the Pain Service and being passed over for promotion to the position of assistant professor merely because he was named in a Title IX complaint.

**109.**

This demotion was also improperly retaliatory for Dr. Mooney's defense of himself against Dr. Lopez's Title IX accusations and/or for his participation as a subject in a Title IX proceeding, where Dr. Miller admitted that he removed him because of Dr. Lopez's complaint that she filed against him.

**110.**

Defendant Emory treated Plaintiff disparately on the basis of his sex/gender in violation of Title IX as evidenced by his disparate treatment as compared with Dr. Lopez throughout the adjudicative/investigative process that Emory's Title IX office conducted.

### 111.

These and other facts entitle Plaintiff to all damages permitted by law, including but not limited to, compensatory damages, emotional distress damages, punitive damages, pre- and post-judgment interest, and attorneys' fees and costs stemming from Defendant Emory's violations of Title IX.

### 112.

Emory's anti-male bias was a motivating factor behind these erroneous findings.

## COUNT III
## NEGLIGENCE UNDER GEORGIA LAW

### 113.

Plaintiff incorporates by reference all previous paragraphs of this Compliant as if fully set forth herein.

### 114.

Emory owed a duty to foreseeable plaintiffs to train its employees such that they would conform to a standard of conduct established by Title IX and its own policy that would avoid the infliction of unreasonable harm to others.

### 115.

The need for Emory to adequately train its DTIX employees is made evident by the significant capacity that those employees possessed to cause

harm to others by Emory students or employees, by, for example, determining their disciple for alleged violations, and by causing harm to their reputations independent of their final findings, and by the emotional harm of conducting an unfair or unnecessarily protracted investigation of claims.

**116.**

This duty extended to supervisors of Emory's DTIX employees.

**117.**

Supervisors of Emory's DTIX employees breached their duty to Dr. Mooney through their failure to properly train and supervise those employees in accordance with Title IX mandates and related Emory policy, resulting in gross and biased mishandling of their investigation and adjudication of Dr. Lopez's and Jardina's Title IX complaints, which mishandling violated both Emory's own Title IX standards and Title IX itself.

**118.**

Emory's breach of its failure to adequately train its employees was a cause in fact and proximate cause of injury to Dr. Mooney.

**119.**

Dr. Mooney's injuries as a result of Emory's breach of its duty to adequately train its DTIX employees include damage to his reputation, severe emotional distress, and pecuniary loss.

**120.**

Emory also had a duty to supervise its employees in such a way to avoid their infliction of foreseeable harm to others of which it knew or should have known, particularly harms of a type that had already occurred and which were ongoing.

**121.**

This duty extended to supervisors of Emory's DTIX employees.

**122.**

Supervisors of Emory's DTIX employees breached that duty to Dr. Mooney through their failure to supervise those employees in such a way that avoided gross and biased mishandling of their investigation and adjudication of Dr. Lopez's and Jardina's Title IX complaints which violated both Emory's own Title IX standards and Title IX itself, particularly given Dr. Mooney and his counsel's myriad complaints to Emory management level employees in DTIX that put them on notice of the harm that its DITX employees were causing.

**123.**

Emory's breach of its failure to adequately supervise its employees was a cause in fact and proximate cause of injury to Dr. Mooney.

**124.**

Dr. Mooney's injuries as a result of Emory's breach of its duty to adequately supervise its DTIX employees include damage to his reputation, severe emotional distress, and pecuniary loss.

**125.**

Emory also had a duty to terminate the employment of employees who it knew or should have known were not suited for their particular employment, such as where an employee could foreseeably inflict harm to others, particularly those employees who had already inflicted harm.

**126.**

This duty extended to supervisors of Emory's DTIX employees.

**127.**

Supervisors of Emory's DTIX employees breached that duty to Dr. Mooney through their failure to terminate its DTIX employees who could foreseeably cause harm, particularly since Dr. Mooney and his counsel repeatedly put them on notice of the DITX's employees gross and biased

mishandling of their investigation and adjudication of Dr. Lopez's and Jardina's Title IX complaints which violated both Emory's own Title IX standards and Title IX itself.

**128.**

Emory's breach of its failure to dismiss unfit employees was a cause in fact and proximate cause of injury to Dr. Mooney.

**129.**

Dr. Mooney's injuries as a result of Emory's breach of its duty to adequately supervise its DTIX employees include damage to his reputation, severe emotional distress, and pecuniary loss.  Dr. Mooney seeks all other damages permitted by law arising out of Emory's negligence.

**COUNT IV**
**BREACH OF CONTRACT UNDER GEORGIA LAW**

**130.**

Plaintiff incorporates by reference all previous paragraphs of this Compliant as if fully set forth herein.

**131.**

Emory's sex and gender-based harassment and discrimination policy constituted a binding agreement between itself and its employees.

**132.**

Emory breached that agreement with Plaintiff by failing to abide by this policy with respect to its investigation and adjudication of Lopez's claims.

**133.**

Plaintiff suffered damages as a result of this breach that included damage to his reputation and being passed over for promotion and emotional distress, among other things.  Plaintiff seeks all damages permitted by law.

## **PRAYER FOR RELIEF**

**WHEREFORE** Plaintiff respectfully requests judgment in its favor on each count in this Complaint and demands:

(a)   That judgment be awarded for and in favor of Plaintiff James Mooney, and against Defendant Emory University on Count I for all relief allowable under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.;

(b)   That judgment be awarded for and in favor of Plaintiff James Mooney, and against Defendant Emory University on Count II for all relief allowable under Title IX of the Education Amendments Act of 1972, Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, et seq.;

(c)   That judgment be awarded for and in favor of Plaintiff James Mooney, and against Defendant Emory University on Count III for all relief

allowable under Georgia law for negligence;

(d)     That judgment be awarded for and in favor of Plaintiff James Mooney, and against Defendant Emory University on Count IV for all relief allowable under Georgia law for breach of contract;

(e)     Any and all other relief as the Court deems just and proper.

This 11th day of February 2023,

_/s/ James M. McCabe_
James M. McCabe
Georgia Bar No. 724618
S. Graham White
Georgia Bar No. 535538
The McCabe Law Firm, LLC
3355 Lenox Road
Suite 750
Atlanta, GA  30326
Office: (404) 250-3233
Fax: (404) 400-1724
jim@mccabe-lawfirm.com

Attorneys for Plaintiff