## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| ERICKA BLOUNT,<br><br>     Plaintiff,<br><br>v.<br><br>NIKKI SMITH, MULANTA CLARK-WILKINS, NATASHA WOODY, ATLANTA BOARD OF EDUCATION, and ATLANTA PUBLIC SCHOOLS,<br><br>     Defendants. | CIVIL ACTION FILE NO: |

## COMPLAINT

Plaintiff Ericka Blount ("Plaintiff" or "Blount") respectfully submits the following Complaint:

## INTRODUCTION

At all times relevant to this dispute, Defendant Nikki Smith (hereinafter referred to as "Smith") was a counselor at Benjamin E. Mays High School and continues to serve in his capacity.  Dr. Mulanta Clark-Wilkins (hereinafter referred to as "Wilkins") is the principal at Benjamin E. Mays High School and is one of Plaintiff's direct supervisors. Dr. Natasha Woody (hereinafter referred to as "Woody") is the assistant principal at Benjamin E. Mays High School and is one of Plaintiff's direct supervisors.  All named Defendants were employed by the Atlanta

Board of Education and Atlanta Public Schools (hereinafter referred to as "APS"). Smith used her position and the authority of her office to engage in a pattern and practice of sexually harassing the Plaintiff and retaliating against the Plaintiff when she rejected her sexual advances and reported the behavior to her supervisors. Smith subjected Plaintiff to repeated unwanted sexual advances, comments, and touching. Plaintiff rejected these advances.

Plaintiff not only rejected the advances, but she also opposed Smith's comments and conduct by reporting her to her supervisors, Woody and Wilkins. Defendants Woody and Wilkins were dismissive of Plaintiff's complaints about Defendant Smith's aggressive sexual harassment. After these complaints were made, Smith continued to discriminate against Plaintiff based on her gender and to retaliate against her based upon her complaints of such discrimination. Defendants Wilkins and Woody failed to adequately address Plaintiff's complaints and emboldened Defendant Smith to retaliate against the Plaintiff for lodging said complaints.

Consequently, Plaintiff brings claims of sexual harassment, both hostile work environment and tangible employment action, and retaliation against both APS and the individual Defendants under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. APS is also liable for identical claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as

amended ("Title VII").  Plaintiff seeks declaratory and injunctive relief, damages, and attorneys' fees and costs.

## JURISDICTION AND VENUE

1.

Plaintiff's claims under the Fourteenth Amendment, which are actionable under 42 U.S.C. § 1983, and her claims under Title VII present a federal question over which this Court has subject matter jurisdiction under 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

2.

This Court is a proper venue for Plaintiff's claims under 28 U.S.C. § 1391(b) because the Defendants reside in the Northern District of Georgia and because the unlawful conduct giving rise to the claims occurred in this District.

3.

Plaintiff filed a timely charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") which issued her a Notice of Right to Sue on November 14, 2022.

## THE PARTIES

4.

Plaintiff is a resident of the Northern District of Georgia and is subject to this Court's jurisdiction. Plaintiff is a current employee of the Atlanta Board of Education and Atlanta Public Schools.

5.

Defendant Smith is a resident of the Northern District of Georgia and is subject to this Court's jurisdiction. She may be served with process via personal service at her place of business at 3450 Benjamin E. Mays Drive SW, Atlanta, Georgia 30331.

6.

Defendant Wilkins is a resident of the Northern District of Georgia and is subject to this Court's jurisdiction. She may be served with process via personal service at her place of business at 3450 Benjamin E. Mays Drive SW, Atlanta, Georgia 30331.

7.

Defendant Woody is a resident of the Northern District of Georgia and is subject to this Court's jurisdiction. She may be served with process via personal service at her place of business at 3450 Benjamin E. Mays Drive SW, Atlanta, Georgia 30331.

8.

The Atlanta Board of Education and Atlanta Public Schools ("APS") is a municipal corporation doing business in the State of Georgia and is, therefore, subject to personal jurisdiction in Georgia.  APS may be served with process by serving Superintendent Lisa Herring at the Office of Atlanta Public Schools located at 130 Trinity Avenue, Atlanta, Georgia 30303.

9.

APS is a covered employer under Title VII.

## FACTUAL ALLEGATIONS

10.

Plaintiff has been an educator for over 23 years.  Plaintiff was hired as an 11th grade school counselor with APS on or about August 8, 2021.

11.

Almost immediately after she started her full-time position in August 2021, Defendant Smith began sexually harassing Plaintiff.  The sexual harassment was both verbal and physical and included, but was not limited to, the comments and actions described in the following paragraphs.

12.

Plaintiff's direct supervisors were Dr. Natasha Woody, Assistant Principal at Benjamin E. Mays High School (hereinafter "Mays") and Dr. Mulanta Clark-Wilkins, Principal at Benjamin E. Mays High School.

13.

Part of the Plaintiff's job duties included reviewing student's academic records, data collection and analysis of student achievement, advising school schedules and academic requirements, and auditing student grades and course loads.

14.

To achieve the proposed goals for 11th grade students at Mays, counselors consult "audit books" which track student achievement and course objectives. "Audit books" are extremely important to the student as well as the counselor.

15.

Approximately one week after the Plaintiff began working at Mays, the lead counselor, Nikki Smith, began her campaign of harassment, sexual harassment and retaliation against the Plaintiff.

16.

Defendant Smith touched the Plaintiff in a sexually suggestive manner, including but not limited to rubbing Plaintiff's thighs, touching her arms and elbows, and placing her arms around Plaintiff's shoulders.

17.

Plaintiff rejected Defendant Smith's blatant sexual harassment and that is when other forms of harassment began to include bullying.

18.

Defendant Smith began telling students at Mays that the Plaintiff was "slow."

19.

Shortly thereafter, Defendant Smith disposed of some of Plaintiff's 11th grade students' transcripts and audit books in an effort to make it impossible for the Plaintiff to complete her job responsibilities.

20.

Defendant Smith also interfered with Plaintiff's job responsibilities by interfering with and altering students' schedules without first informing or consulting with the Plaintiff. These changes were made in an effort to make the Plaintiff appear incompetent.

21.

Plaintiff immediately informed Defendant Woody and Defendant Wilkins of the harassment, both sexual and otherwise.

22.

On or about September 23, 2021, the Plaintiff filed a complaint with the U.S. Department of Education, Office for Civil Rights (hereinafter "OCR") alleging harassment, sexual harassment and retaliation against APS and Defendants Smith, Woody and Wilkins.  Plaintiff filed the complaint with OCR after it became apparent that Defendants Woody and Wilkins would not address Smith's behavior.

23.

On or about March 21, 2022, OCR notified APS that Plaintiff's complaint would be referred to the EEOC for review.  OCR further advised that the EEOC would consider the Plaintiff's complaint received on the day it was received by OCR, which in this case was September 23, 2021.

24.

On or about September 29, 2021, Defendant Wilkins met with the Plaintiff and Defendant Smith to discuss the ongoing harassment.

25.

On or about October 4, 2021, Defendant Wilkins emailed Defendant Smith, informing her to respect the boundaries and space of the Plaintiff.  Unfortunately for the Plaintiff, Defendant Smith did not do as instructed by Defendant Wilkins.

26.

Defendant Smith began following the Plaintiff around the school, interrogating students as to Plaintiff's whereabouts and inferring that the Plaintiff was not doing her job.

27.

On one occasion, Defendant Smith began furiously banging on Plaintiff's office door. Plaintiff was not in her office at the time.

28.

Plaintiff informed Carla Aldridge (hereinafter "Aldridge"), counselor at Mays, of the ongoing harassment perpetrated by Defendant Smith.

29.

Aldridge also witnessed Defendant Smith's harassment of the Plaintiff on several occasions. The harassment levied upon the Plaintiff by Defendant Smith concerned her to the point that Aldridge felt compelled to intervene on the Plaintiff's behalf and speak to Defendant Wilkins. Aldridge begged Defendant Wilkins to intercede and stop the harassment. Aldridge further asked that she be allowed to mentor the Plaintiff to protect her from the ongoing harassment by Defendant Smith.

30.

In January 2022, Defendant Smith accosted the Plaintiff, which led to a verbal altercation between the Plaintiff and Defendant Smith.

31.

Plaintiff was so fearful of Defendant Smith that she worked almost exclusively in Aldridge's office for the remainder of the semester.

32.

Prior to her employment with APS, Plaintiff received stellar performance reviews from her previous school districts.

33.

However, after the Plaintiff levied multiple complaints of harassment against Defendant Smith, Defendants Woody and Wilkins began setting unrealistic deadlines and subjecting the Plaintiff to further interactions with Defendant Smith.

34.

Defendant Woody went so far as to advise the Plaintiff that she should transfer to another school and asked her on multiple occasions if she would transfer. Defendant Woody advised the Plaintiff that it was not in her best interest to stay. Multiple individuals witnessed Defendant Woody make these statements.

35.

On May 9, 2022, in a blatant act of retaliation for reporting the harassment by Defendant Smith, the Plaintiff was assigned to a security detail to monitor students. The Plaintiff was not provided training or an explanation as to why she was placed on a security detail.

36.

While working the security detail, the Plaintiff was expected to maintain and meet all existing deadlines as a counselor.

37.

Other counselors at Mays were permitted to do their "regular" work as counselors and were not assigned to security detail.  Those counselors were also permitted to continue to work in their offices while the Plaintiff was required to continue her security detail before she could go back to her office.

38.

Plaintiff learned from Defendant Wilkins that it was Defendant Woody that placed her on the security detail.

39.

Each of these blatant acts of harassment and retaliation occurred after OCR commenced an investigation into the Plaintiff's claims.

40.

APS' Office of Employee Relations (hereinafter "OER") also commenced an investigation into the Plaintiff's claims.

41.

OER concluded their investigation on or about September 9, 2022.  OER determined that Defendant Smith violated multiple board policies "in her negative

interactions with [Plaintiff] and the continuous and consistent hostility demonstrated by [Defendant] Smith."

42.

OER also concluded that Aldridge corroborated many of the allegations levied by the Plaintiff against the Defendants, including that Defendant Smith referred to the Plaintiff as "slow," that Defendant Wilkins was aware of Defendant Smith's harassment of Plaintiff and that Defendant Smith was "beating" on Plaintiff's door. In addition, Aldridge verified that the Plaintiff was terrified of Defendant Smith and worked in Aldridge's office in an effort to protect herself from the constant harassment.

43.

Beginning in September 2021, Plaintiff's mental condition from the stress of working for Defendants became so unbearable that she began to seek treatment from a medical professional.

44.

The emotional distress suffered by the Plaintiff at the hands of the Defendants was so extreme that it led to the dissolution of the Plaintiff's marriage.

45.

The emotional stress also led the Plaintiff to seek FMLA leave due to the extreme harassment and retaliation of the Defendants.

46.

Defendants have not been terminated or otherwise disciplined for their blatant misconduct towards Plaintiff.

47.

Upon information and belief, Plaintiff was neither the first employee to be abused by Defendant Smith nor the first to report such abuse to the Defendants.

48.

Although Defendants APS, Woody and Wilkins had previous knowledge of Defendant Smith's propensity to sexually harass and retaliate against the Plaintiff and other employees, Defendants APS, Woody and Wilkins undertook little to no effort to bring Defendant Smith's reign of terror over the Plaintiff to an end.

49.

Defendants APS, Woody and Wilkins failed to undertake efforts to properly supervise Defendant Smith which led to the constant harassment levied upon the Plaintiff.

50.

The individual Defendants undertook all of the unlawful conduct giving rise to the Plaintiff's claims while acting under color of state and local law.

51.

At all times material to this Complaint, it was clearly established law that subjecting a subordinate to sexual harassment, or a sexually hostile working environment based upon gender, violates the Equal Protection Clause and Title VII. At all times material to this Complaint, it was clearly established law that a supervisor may not take an adverse employment action against a subordinate because she rejects or complains about sexual advances.

52.

Defendants Smith, Wilkins and Woody undertook all of the above-pled unlawful conduct intentionally, willfully and maliciously with respect to the Plaintiff and her federally protected rights.

53.

Additionally, and in the alternative, Defendants Smith, Wilkins and Woody undertook all of the above-pled conduct with reckless disregard for the Plaintiff and her federally protected rights.

54.

The foregoing acts of Defendants were intentional and humiliating and evidence a conscious disregard for the circumstances and rights of others as well as a specific intent to cause harm.  Plaintiff is entitled to recover from Defendants, in

addition to compensatory damages, an award of punitive damages under the law of Georgia to punish Defendants, or to deter them from repeating such wrongful acts.

55.

The EEOC did not make a determination as to the complaints made by the Plaintiff.  On November 14, 2022, the EEOC issued a "right to sue" letter to the Plaintiff.

**COUNT I**
**Sexual Harassment and Retaliation**
**(42 U.S.C. § 1983 Against Defendants APS and**
**Defendants Smith, Woody and Wilkins in their Individual Capacities)**

56.

Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-54 above with the same force and effect as if fully set forth herein.

57.

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution entitles Plaintiff to equal protection under the law regardless of her gender.

58.

Defendant Smith violated Plaintiff's right to equal protection by, among other things, subjecting her to a sexually harassing and hostile working environment. Defendants Woody and Wilkins violated her right to equal protection by taking adverse employment actions against the Plaintiff for her refusal to acquiesce to

sexual advances and for reporting such harassment.  Defendants Smith, Wilkins, Woody and APS violated Plaintiff's right to equal protection by failing to take reasonable preventative or corrective measures with respect to the unlawful harassing conduct.

59.

The conduct of Defendants constitutes unlawful sexual harassment, based upon gender, in violation of the Equal Protection Clause.  Additionally, and in the alternative, Defendants' unlawful conduct constitutes sexual harassment culminating in an ultimate employment action against the Plaintiff.

60.

Defendants Smith, Wilkins, Woody and APS undertook all of the unlawful conduct giving rise to the Plaintiff's claims while acting under color of state and local law.

61.

Defendants Smith, Wilkins, Woody and APS' unlawful conduct violated the above-pled clearly established law.

62.

As a direct and proximate result of all of the Defendants' actions, Plaintiff has suffered damages including emotional distress, inconvenience, loss of income and benefits, humiliation and other indignities.

63.

Defendants Smith, Wilkins, Woody and APS undertook their unlawful conduct intentionally and maliciously with respect to Plaintiff and her federally protected rights, entitling Plaintiff to recover punitive damages against them.

64.

Alternatively, Defendants Smith, Wilkins, Woody and APS undertook their unlawful conduct recklessly with respect to the Plaintiff and her federally protected rights, entitling Plaintiff to recover punitive damages against them.

## COUNT II
### Sexual Harassment
### (Title VII Against Defendants Smith and APS)

65.

Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-54 above with the same force and effect as if fully set forth herein.

66.

Defendant APS violated Plaintiff's rights under Title VII by, among other things, subjecting her to a sexually harassing and hostile working environment, taking adverse employment actions against her for her refusal to acquiesce to sexual advances, and by failing to take reasonable preventative or corrective measures with respect to the unlawful harassment conduct.

67.

Defendant APS' conduct constitutes unlawful sexual harassment by creating an unlawful hostile working environment, based upon gender, in violation of Title VII.

68.

Additionally, Defendant APS' unlawful conduct constitutes sexual harassment culminating in tangible employment actions against Plaintiff.

69.

As a direct and proximate result of Defendant APS' actions, Plaintiff has suffered damages including emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

**COUNT III**
**Retaliation**
**(Title VII Against All Defendants)**

70.

Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-54 above with the same force and effect as if fully set forth herein.

71.

Title VII prohibits employers from retaliating against employees who report or oppose sexual harassment.

72.

APS unlawfully retaliated against Plaintiff, in violation of her rights under Title VII by, among other things, taking adverse employment actions against her because she opposed and/or reported Defendant Smith's sexually harassing behavior.

73.

The APS' conduct constitutes unlawful retaliation in violation of Title VII.

74.

As a direct and proximate result of APS' actions, Plaintiff has suffered damages including emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

**COUNT IV**
**Negligent and Wrongful Hiring, Retention and Supervision**
**(As to Defendants APS, Wilkins and Woody)**

75.

Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-54 above with the same force and effect as if fully set forth herein.

76.

Defendants knew, or in the exercise of ordinary diligence, should have known of the propensity of its employees, including Defendant Smith, to engage in sexually

offensive conduct and harassment toward other employees, and the Plaintiff in particular.

77.

Defendant Smith's actions were not wholly unrelated to her employment.

78.

Defendants nevertheless failed and refused to act to protect the Plaintiff from sexual harassment and retaliation.

79.

Defendant is thus liable to Plaintiff for all damages sustained as a result.

**Count V**
**Intentional Infliction of Emotional Distress**
**(As to All Defendants)**

80.

Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-54 above with the same force and effect as if herein fully set forth herein.

81.

Defendants conduct was extreme and outrageous.

82.

Defendants APS, Woody and Wilkins allowed Plaintiff to be subjected to sexual harassment and retaliation by Defendant Smith and failed to take any corrective action.

83.

Defendant APS allowed Plaintiff to be subjected to retaliation by Defendants Woody, Wilkins and Smith and failed to take any corrective action.

84.

Defendants intended to inflict severe emotional distress or knew that it was a high probability that the conduct would do so.

85.

Defendants' conduct actually caused severe emotional distress to Plaintiff.

86.

Defendants are liable for all general and special damages proximately resulting from the intentional infliction of emotional distress.

**WHEREFORE,** Plaintiff prays for the following relief:

(a) General damages for mental and emotional suffering caused by Defendants' misconduct;

(b) Punitive damages based on Defendants' willful, malicious, intentional, and deliberate acts;

(c) Special damages and/or liquidated damages for lost wages and benefits and

prejudgment interest thereon;

(d) Reasonable attorney's fees and expenses of litigation;

(e) Trial by jury as to all issues;

(f) Prejudgment interest at the rate allowed by law;

(g) Declaratory relief to the effect that Defendants have violated Plaintiff's

statutory rights;

(h) All other relief to which Plaintiff may be entitled.

Respectfully submitted,

**THE RICHARDS LAW GROUP**

/s/ Mutepe Akemon
Mutepe Akemon
Georgia Bar No. 434260
The Richards Law Group, LLC
P.O. Box 360295
Decatur, GA 30036
Phone: (404) 289-6816
Fax: (404) 795-0727
mutepe.akemon@richardslegal.com
Attorney for Plaintiff