# Exhibit A


**SOCIAL SECURITY ADMINISTRATION**

Office of Hearings Operations
Suite 500, Marquis 1
245 Peachtree Ctr. Ave.
Atlanta, GA 30303-9913

Date: September 30, 2022

MyHoney Strickland on behalf of

# Notice of Decision – Unfavorable

I carefully reviewed the facts of your case and made the enclosed decision.  Please read this notice and my decision.

**If You Disagree With My Decision**

If you disagree with my decision, you may file an appeal with the Appeals Council.

**How To File An Appeal**

To file an appeal you must ask in writing that the Appeals Council review my decision.  The preferred method for filing your appeal is by using our secure online process available at https://www.ssa.gov/benefits/disability/appeal.html.

You may also use our Request for Review form (HA-520) or write a letter.  The form is available at https://www.ssa.gov/forms/ha-520.html.  Please write the Social Security number associated with this case on any appeal you file.  You may call (800) 772-1213 with questions.

Please send your request to:

      **Appeals Council**
      **5107 Leesburg Pike**
      **Falls Church, VA 22041-3255**

**Time Limit To File An Appeal**

You must file your written appeal **within 60 days** of the date you get this notice.  The Appeals Council assumes you got this notice 5 days after the date of the notice unless you show you did not get it within the 5-day period.

Form HA-L76-OP2 (03-2010)

**Suspect Social Security Fraud?**
Please visit http://oig.ssa.gov/r or call the Inspector General's Fraud Hotline
at 1-800-269-0271 (TTY 1-866-501-2101).

See Next Page

(BNC#: 21QW091F61003)    Page 2 of 3

The Appeals Council will dismiss a late request unless you show you had a good reason for not filing it on time.

**What Else You May Send Us**

You may send us a written statement about your case.  You may also send us new evidence.  You should send your written statement and any new evidence **with your appeal**.  Sending your written statement and any new evidence with your appeal may help us review your case sooner.

**How An Appeal Works**

The Appeals Council will consider your entire case.  It will consider all of my decision, even the parts with which you agree.  Review can make any part of my decision more or less favorable or unfavorable to you.  The rules the Appeals Council uses are in the Code of Federal Regulations, Title 20, Chapter III, Part 416 (Subpart N).

The Appeals Council may:

- Deny your appeal,
- Return your case to me or another administrative law judge for a new decision,
- Issue its own decision, or
- Dismiss your case.

The Appeals Council will send you a notice telling you what it decides to do.  If the Appeals Council denies your appeal, my decision will become the final decision.

**The Appeals Council May Review My Decision On Its Own**

The Appeals Council may review my decision even if you do not appeal.  If the Appeals Council reviews your case on its own, it will send you a notice within 60 days of the date of this notice.

**When There Is No Appeals Council Review**

If you do not appeal and the Appeals Council does not review my decision on its own, my decision will become final.  A final decision can be changed only under special circumstances.  You will not have the right to Federal court review.

**Your Right To Representation In An Appeal**

If you appeal, you may choose to have an attorney or other person help you.  Many representatives do not charge a fee unless you win your appeal.  Groups are available to help you find a representative or, if you qualify, to give you free legal services.  Your local Social Security office has a list of groups that can help you in this process.

If you get someone to help you with your appeal, you or that person must let the Appeals Council know.  If you hire someone, we must approve the fee before he or she is allowed to

Form HA-L76-OP2 (03-2010)

See Next Page

collect it.

**New Application**

You have the right to file a new application at any time, but filing a new application is not the same as appealing this decision.  If you disagree with my decision and you file a new application instead of appealing, you might lose some benefits or not qualify for benefits at all.  If you disagree with my decision, you should file an appeal within 60 days.

**If You Have Any Questions**

1. Visit www.ssa.gov for fast, simple, and secure online service.
2. Call us at **1-800-772-1213**, weekdays from 8:00 am to 7:00 pm. If you are deaf or hard of hearing, call TTY **1-800-325-0778**. Please mention this notice and decision when you call.
3. You may also call your local office at (877) 828-1694.

Social Security  
Bldg. 2400, Suite 122  
3800 Camp Creek Pkwy.  
Atlanta, GA 30331-9819

**How are we doing?** Go to www.ssa.gov/feedback to tell us.

Christine Guard  
Administrative Law Judge

Enclosures:  
Decision Rationale

Form HA-L76-OP2 (03-2010)

**SOCIAL SECURITY ADMINISTRATION**
Office of Hearings Operations

**DECISION**

| **IN THE CASE OF** | **CLAIM FOR** |
|---|---|
| _____ | Supplemental Security Income |
| (Claimant) | |
| _____ | _____ |
| (Wage Earner) | (Social Security Number) |

**JURISDICTION AND PROCEDURAL HISTORY**

On October 19, 2020, an application for supplemental security income was filed on behalf of the claimant, an individual under age 18, with an alleged disability onset date of October 11, 2020. The claim was denied initially on December 22, 2020, and upon reconsideration on August 2, 2021. Thereafter, a written request for hearing was filed on August 12, 2021. On December 3, 2021, the undersigned held a telephone hearing due to the extraordinary circumstance presented by the Coronavirus Disease 2019 (COVID-19) Pandemic. All participants attended the hearing by telephone. MyHoney Strickland, the claimant's mother, appeared and testified. They agreed to appear by telephone before the hearing and confirmed such agreement at the start of the hearing (Exh. 14E). Although informed of the claimant's right to representation, they chose to appear and testify without the assistance of an attorney or other representative.

During the hearing, Ms. Strickland informed the ALJ that there might be additional records available from Babies Can't Wait, Princeton Lakes Pediatrics, and Children's Healthcare of Atlanta. The record was held open for an additional 10 days to obtain these records. The records were requested by the Hearing Office post-hearing, added as Exhibits 10F, 11F, 12F, 13F, 14F, and 15F, and proffered to Ms. Strickland (Exhs. 10E and 13E) without objection.

**ISSUE AND APPLICABLE LAW**

The issue is whether the claimant is disabled under section 1614(a)(3)(C) of the Social Security Act. To make this determination, the undersigned has considered all relevant evidence based on the requirements of 20 CFR 416.924.

A claimant under the age of 18 is considered disabled if they have a physical or mental impairment, or combination of impairments, that results in marked and severe functional limitations, and that have lasted, or can be expected to last for a continuous period of not less than 12 months, or can be expected to result in death. Additionally, an individual that is engaging in substantial gainful activity (SGA), is not considered disabled under our rules.

See Next Page

A three-step sequential evaluation process is used to determine whether a claimant under age 18 is disabled (20 CFR 416.924(a)). If it is determined that the claimant is not disabled at step 1 or 2 of the evaluation process, the evaluation ends at that step. The three steps are: (1) Is the claimant engaging in SGA? (2) Does the claimant have an impairment or combination of impairments that is severe? (3) Does the claimant's impairment or combination of impairments meet, medically equal, or functionally equal a listed impairment?

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

After careful consideration of the entire record, the undersigned makes the following findings:

**1.   The claimant was born on October 11, 2020.  Therefore, she was a newborn/young infant on October 19, 2020, the date application was filed, and is currently an older infant/toddler (20 CFR 416.926a(g)(2)).**

**2.   The claimant has not engaged in substantial gainful activity since October 19, 2020, the application date (20 CFR 416.924(b) and 416.971 *et seq*.).**

At step one, the undersigned must determine whether the claimant is engaging in SGA, defined as work that involves significant physical or mental activities and that is done for pay or profit (20 CFR 416.972).  There is no evidence of work activity on or after the application date.

**3.   The claimant has the following severe impairments: gastroesophageal reflux disease (GERD), chronic otitis media and developmental delays (20 CFR 416.924(c)).**

At step two, the undersigned must determine if the claimant has a severe impairment, defined as a medically determinable impairment that causes more than minimal functional limitations, or a combination of impairments that causes more than minimal functional limitations. The above impairments have been determined by medically acceptable evidence including signs, symptoms, and laboratory findings.  From the evidence discussed hereunder, the undersigned finds that these impairments constitute more than a slight abnormality and cause more than minimal functional limitations (20 CFR 416.924(c)).

The claimant also has non-severe impairments. history of jaundice, low birth weight and diaper rash.   Progress notes show the claimant was under bili lights from October 12, 2020 to October 14, 2020 (Exh. 8F, p. 7).  A medical statement dated October 20, 2020 shows the claimant was 9 days old.  She history of nonhemolytic hyperbilirubinemia (Exh. 1F).  Progress notes on October 27, 2020 show no rashes or jaundice (Exh. 2F, p. 9).  On November 5, 2020, examination findings show no rashes or jaundice (Exh. 2F, p. 9).  On November 10, 2020, the claimant was assessed with history of jaundice (Exh. 2F, p. 12).

Progress notes show the claimant has been assessed with rash; however, the condition has been treated conservatively with ointment.  An emergency room visit on June 24, 2021 shows evaluation of nasal congestion, cough, fever and ear complaints, along with diaper rash, attributed to diarrhea (Exh. 7F, p. 4).  The report shows history of jaundice (Exh. 7F, p. 5).  There was no diagnosis of diaper rash (Exh. 7F, p. 6).  On June 28, 2021, the claimant was

See Next Page

evaluated for diarrhea, with accompanying redness and rash (Exh. 8F, p. 1). There were no reports of difficulty swallowing, abdominal pain, nausea, vomiting or constipation. Examination of the skin was consistent with a red, macular rash in the diaper area, with no lesions. There was assessment of diarrhea and diaper candidiasis. Nystatin topical cream was prescribed for the rash (Exh. 8F, pp. 3 to 4).

A medical statement dated October 20, 2020 shows the claimant was 9 days old. She was 45 centimeters long and weighed 2,190 grams. She was described as an immature feeder and had history of nonhemolytic hyperbilirubinemia. The statement indicates that she had not yet regained her birthweight (Exh. 1F). When seen in the emergency room in December 2020 show the claimant was 10 weeks old and had been gaining weight properly. She weighed ten pounds, six and one-half ounces (Exh. 3F, p. 13). Treatment notes show the claimant had been growing very well and her weight was described as "great" (Exh. 3F, p. 14). An emergency room report in January 2021 shows the claimant was evaluated for complaints of choking and irritability. Her mother reported that spitting up was minimal but constant, not associated with feeding. She indicated that symptoms were improved with Nutramigen. The claimant's growth curve was in the 25th percentile and on the normal curve. Her length was increasing toward the 3rd percentile and her weight for length was in the 50th percentile. The report indicates that the claimant had been growing without a problem (Exh. 3F, p. 7). Accordingly, the claimant's history of jaundice, low birth weight and diaper rash do not result in more than minimal functional limitations and are therefore non-severe impairments.

**4.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).**

At step three, the undersigned must first determine whether the claimant has an impairment or combination of impairments that meets or medically equals the severity of one of our medical listings. These listings describe impairments that cause marked and severe functional limitations. In making this determination, the undersigned must consider the combined effect of all medically determinable impairments, even those that are not severe. If the severity of the impairment(s) meets or medically equals the medical criteria in a listing, the claimant is disabled under our rules.

The undersigned has considered the Listing of Impairments but the medical evidence does not establish that the claimant's impairment(s), individually or in combination, meet or equal in severity the criteria of a listed impairment. No treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment of the Listing of Impairments. In particular, the undersigned considered Medical Listings 100.04 (Low birth weight in infants from birth to attainment of age 1), 100.05 (Failure to thrive in children from birth to attainment of age 3), 102 (Special Senses and Speech – Childhood) and 112 (Mental Disorders – Childhood).

**5.   The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a).**

See Next Page

If the claimant has a severe impairment or combination of impairments that does not meet or medically equal any listing, the undersigned must determine whether the claimant has an impairment or combination of impairments that functionally equals the listings. When determining functional equivalence, the undersigned evaluates the "whole child" (see Social Security Ruling 09-1p), by considering how the claimant functions at home, at school, and in the community; the interactive and cumulative effects of all of the claimant's medically determinable impairments on the claimant's activities; and the type, extent, and frequency of help the claimant needs.

The undersigned must consider how the claimant functions in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being.  To functionally equal the listings, the claimant's impairment or combination of impairments must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain.  Our rules explain that a claimant has a "marked" limitation in a domain when her impairment(s) "interferes seriously" with the ability to independently initiate, sustain, or complete activities, and a claimant has an "extreme" limitation" in a domain when her impairment(s) "interferes very seriously" with these same abilities.  In making this assessment, the undersigned must compare how appropriately, effectively and independently the claimant performs activities compared to the performance of other children of the same age who do not have impairments (20 CFR 416.926a).

Based on the requirements of 20 CFR 416.924a(a) and SSR 09-2p, the undersigned has considered all of the relevant evidence in the case record.  "All of the relevant evidence" includes objective medical evidence and other relevant evidence from medical sources; information from other sources, such as schoolteachers, family members, or friends; the claimant's statements (including statements from the claimant's parent(s) or other caregivers); and any other relevant evidence in the case record, including how the claimant functions over time and in all settings (i.e., at home, at school, and in the community).

> The undersigned finds that the claimant has:
> - <u>less than a marked</u> limitation in acquiring and using information;
> - <u>no</u> limitation in attending and completing tasks;
> - <u>a marked</u> limitation in interacting and relating with others;
> - <u>less than a marked</u> limitation in moving about and manipulating objects;
> - <u>less than a marked</u> limitation in the ability to care for herself; and
> - <u>less than a marked</u> limitation in health and physical well-being.

In determining the degree of limitation in each of the six domains of functioning, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSR 09-2p through 8p, and 16-3p.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical

or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations.  For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine the claimant's functional limitations.

In the initial disability report, Ms. Strickland noted that the claimant suffered from pre-term birth, at 33 weeks and three days, with a birthweight of four pounds, 12 ounces.  She noted that the claimant required PPV at delivery and was admitted on CPAP.  She indicated that the claimant was an immature feeder and still required a feeding tube to assist with feeding.  The claimant was noted to have history of non-hemolytic hyperbilirubinemias.  Ms. Strickland noted that the claimant became disabled on October 11, 2020 (Exh. 3E, p. 2).  At reconsideration, the Ms. Strickland noted that there had been changes in the claimant's conditions, described as excessive vomiting and choking, crying out of pain and an emergency room visit, at which time she was prescribed medication for acid reflux.  Since the last report, Ms. Strickland added that the claimant had a milk allergy and extreme acid reflux.  She noted that the claimant had a urine catheter.  It was reported that the claimant was hitting her face with her fist, experienced extreme crying episodes and digestive issues, and failed to meet milestones regarding sitting up and crawling.  Ms. Strickland indicated that the claimant had a respiratory infection and virus due to low immune system and a breathing machine.  The claimant was noted to use special dietary formula and food (Exhs. 5E, p. 2 and 6E, p. 2).  Ms. Strickland essentially testified that the claimant suffered from GERD and was on medication.  She stated that the claimant had allergic reactions and broke out in rashes frequently.  The mother replied that the claimant started crawling at 10 months and did not currently walk.  Ms. Strickland indicated that the claimant had been sitting alone since about 11 months of age.  She remarked that the claimant would get upset, cry easily and was aggravated by certain noises and movement.  She stated that the Prilosec helped to relieve symptoms and was taken daily.  As to side effects, she replied that some medications caused jerking, changed her mood and affected her ability to sleep at night.  She stated that the claimant started classes at Babies Can't Wait to help with communication and other delays.  She indicated that she had to call the claimant's name multiple times, at times, before she would respond.  She stated that the child did laugh.  She stated that the claimant was able to hold her bottle, but would not transfer toys in her hand (Witness Testimony).

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the allegations concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record.

**In Acquiring and Using Information, the claimant has less than marked limitation.**

See Next Page

The claimant was evaluated in the home by telehealth, due to the COVID 19 pandemic, using the Battelle Developmental Inventory-2 in September 2021. Based on the assessment, clinical observation and parent report, the claimant presented with mild delays in adaptive, personal-social and motor, a moderate delay in cognition and a significant delay in communication. The claimant was found to be eligible for Babies Can't Wait due to a significant delay in communication (Exh. 12F, p. 10). In the Communication domain, she obtain a score of 5, which was interpreted as a significant delay (Exh. 12F, p. 8). In Receptive Communication, she responded to a non-speech sound outside of her field of vision and turned her head toward the source of the sound. However, she did not respond to a voice outside of the field of her vision and was not soothed by a familiar voice. In Expressive Communication, she babbled, produced one or more single-syllable consonant-vowel sound. She did not wave bye-bye or imitate speech sounds. She was assessed with moderate cognitive delay (Exh. 12F, p. 9).

**In Attending and Completing Tasks, the claimant has no limitation**.

Progress notes show the claimant has been assessed as attentive during numerous examinations (Exh. 8F, pp. 3, 7, 11, 19 and 27).

On the Battelle Developmental Inventory-2, the claimant followed auditory and visual stimulus and occupied herself for five minutes. The report shows the claimant visually explored her environment, showed awareness of new situations, felt and explored objects (Exh. 12F, p. 10).

**The claimant has marked limitation in Interacting and Relating with Others.**

Ms. Strickland completed a function report in October 2020 and noted that the claimant could make various cooing and babbling sounds, but she could not say words other than "mama" and dada." She noted that the claimant would stop crying when picked up and held, smile at faces that she knew and cuddle in arms when held by parent or caregiver. Ms. Strickland noted that the claimant did not play games such as "peek-a-boo," understand simple statements, point to something she wanted or turn her head when her name was called (Exh. 1E, p. 3).

Ms. Strickland testified that she sometimes had to call the claimant's name multiple times before she responds. She stated that the claimant did laugh (Witness Testimony).

The claimant was evaluated in the home by telehealth in September 2021. She presented with mild delays in adaptive, personal-social and motor, with moderate delay in cognition and significant delay in communication. It was determined that the claimant was eligible for Babies Can't Wait due to significant delay in communication (Exh. 12F, p. 10).

According to the Battelle Developmental Inventory-2 in September 2021, it was reported that the claimant did not desire social attention and expressed displeasure or preference for certain activities, with discrimination between familiar and unfamiliar people. It was reported that she did not play peekaboo. However, she said "hi," "ma-ma," and "da-da." She had significant delay in communication and mild delay in personal-social. The report shows that she babbled and produced one or more single-syllable constant-vowel sounds (Exhs. 9F, p. 2 and 12F, pp. 8 to 9).

See Next Page

By October 2021, the claimant's mother reported that the claimant pointed to indicate what she wanted. She was able to say mama/dada, speak single words and jabbered (Exh. 11F, p. 20).

**In Moving About and Manipulating Objects, the claimant has less than marked limitation**.

An examination in June 2021 shows the claimant would sit up with support, brought objects to center and held her bottle. She was also noted to roll both ways (Exh. 7F, p. 8). She was not sitting without support yet (Exh. 7F, p. 9). Her delay with sitting was described as mild (Exh. 7F, p. 10). By October 2021, she was not walking, but was making good progress at Babies Can't Wait. Her mother reported that she had pincer grasp, pulled to stand, stood well alone, crawled and creeped. On examination, there was normal, active motion of the extremities. She moved all extremities well and had good tone (Exh. 11F, pp. 19 to 20).

The claimant was assessed with mild delay in motor when evaluated using the Battelle Developmental Inventory-2 (Exh. 12F, p. 8). The report shows that she secured a nearby object while in the prone position (Exh. 12F, p. 9).

Ms. Strickland testified that the claimant had been sitting alone since about 11 months of age, but was not yet walking, but was able to pull up on furniture. She stated that the claimant was able to hold her bottle, but she would not transfer toys in her hand. She replied that the claimant started crawling at 10 months.

**The claimant has less than marked limitation in the domain of Caring for Self.**

The claimant's mother testified that the child was frustrated and cried a lot. She stated that the claimant had separation anxiety and was easily upset. She stated that the crying was aggravated by sensitivity to loud noises and sudden movement. The claimant's mother testified that medication side effects caused sleep interruption. However, she stated that the claimant would laugh, reach for her bottle and could hold her bottle.

The claimant is an infant, age one year and seven months old. She has been evaluated regarding fussiness and irritability. In December 2020 she presented as fussy and irritable (Exh. 3F, p. 12). She appeared irritable, but quickly calmed down when she started eating (Exh. 3F, pp. 13 to 14).

The evaluation by Babies Can't Wait in September 2021 shows the claimant ate semi-solid food, held a bottle to feed herself and drank from a cup with assistance. The report indicates that the claimant did not feed herself bite-sized pieces of food. The report shows she turned from a prone to a supine position unassisted. She stat without assistance for a least five seconds and made stepping movements when in an upright position. She was beginning to crawl,but was not pulling herself to a standing position (Exh. 12F, p. 9).

**The claimant has less than marked limitation in the domain of Health and Physical Well-Being.**

See Next Page

The claimant has history of jaundice.  However, the condition improved (Exh. 2F, p. 9).  She has also been assessed with rash, which has been treated with ointment (Exh. 8F, pp. 3 to 4).  Progress notes indicate that the claimant was born underweight.  However, in January 2021, her growth curve was in the 25th percentile and on the normal curve.  The report indicates that the claimant had been growing without a problem (Exh. 3F, p. 7).  Medical records show treatment for GERD, improved with treatment (Exh. 7F, p. 10).   The claimant has been treated for chronic otitis media and was scheduled to have surgery for Bilateral Myringotomy with Tubes on April 25, 2022 (Exh. 14).

In determining the degree of limitation in the claimant's functioning, the undersigned has also considered the medical opinions in accordance with the applicable regulations.  Turning to evaluation of this evidence, the statements about the intensity, persistence, and limiting effects of the claimant's symptoms are inconsistent because the objective evidence found in treatment notes do not support the level of severity of limitations alleged.

An emergency room report dated December 26, 2020 shows presentation with vomiting, spitting up and congestion.  The claimant was noted to be 10 weeks old.  Her mother reported that she had been vomiting 10 to 20 minutes after eating and was fussier and more irritable (Exh. 3F, p. 12).  The claimant was noted to have history of GERD.  She appeared irritable, but in no acute distress.  Treatment notes indicate that she quickly calmed down when she started eating.  Abdominal examination was consistent with normal bowel sounds, with no distension.  The abdomen was soft, with no tenderness.  The claimant appeared alert.  Progress notes show that the claimant was afebrile and had normal vital signs for her age, with normal physical examination.   She was monitored to find out whether she had any vomiting after she was fed.  She was discharged after there was no vomiting and she tolerated her feeds.  The claimant was described as non-fussy, active and playful (Exh. 3F, pp. 13 to 14).  There was final diagnosis of vomiting in 10-week-old, with no vomiting in the emergency room (Exh. 3F, p. 12).

A progress note in January 2021 shows the claimant presented for a gastrointestinal evaluation.  The report shows history of the claimant being born at 33 weeks, with a two-week stay in the NICU mostly due to feeding and growth.  Her mother reported that she had been irritable and choking since birth, which could occur hours after eating.   The report shows the claimant took Pepcid for six weeks with no improvement and there was no different with increased medication.  (Exh. 3F, p. 7).  There was consideration of ongoing reflux, unlikely mild protein allergy due to normal weight gain and no eczema.  Physiologic infant reflux was suspected, not typically improved with medication (Exh. 3F, p. 8).  The claimant's mother was advised to try Prilosec instead of Pepcid (Exh. 3F, p. 9).

The claimant was seen on June 8, 2021 with complaints of pulling at the ears, tactile fever, cough and congestion.  She completed a course of Amoxicillin and was doing breathing treatments.  On examination there was tympanic membrane erythematous of the ears, with cloudy fluid.  Lung evaluation was consistent with rales and crackles bilaterally.  There was assessed of chronic otitis media, with prescription of Amoxicillin.  She was also assessed with persistent cough and continued on nebulizer treatments (Exh. 8F, p. 7).

See Next Page

On follow-up on June 10, 2021, the claimant was seen for eight-month recheck fussiness. Her mother reported that she was better on Omeprazole. The claimant was on antibiotics for an ear infection. Examination was within normal limits (Exh. 7F, pp. 7 to 9). The claimant was described as improving with history of spitting up, fussiness, gagging and feeding difficulties. Prilosec was increased to match the claimant's new weight. There was discussion to wean at the next visit if she continued to improve (Exh. 7F, p. 10).

In October 2021, the claimant was seen for a well child 12 month checkup (Exh. 11F, p. 17). She was reportedly still pulling on her ear and had mild nasal congestion, but no cough, fever or respiratory distress (Exh. 11F, p. 19). On examination, there was scant yellow fluid behind the left TM, with no bulging. Lung examination was within normal limits. She was assessed with acute suppurative otitis media, without spontaneous rupture of ear drum, on the left. She was prescribed Amoxicillin (Exh. 11F, p. 20).

A medical statement from CHOA indicates that the claimant was scheduled to have surgery for Bilateral Myringotomy with Tubes on April 25, 2022 (Exh. 14). However, medical records show GERD improvement. Her height and weight have improved.

As for medical opinions and prior administrative medical findings, we will not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical findings or medical opinions, including those from your medical sources. We fully considered the medical opinions and prior administrative medical findings in your case. The undersigned has considered the opinions of the State agency consultants who determined that the claimant's impairments do not meet or equal a listing. Dr. McQuitty reviewed the claimant's evidence of record in December 2020 and determined that impairments were not severe. The consultant offered no functional assessment (Exh. 1A). At reconsideration, Dr. Harris determined severe impairment, with low birth weight determined to be non-severe. Dr. Harris concluded that the claimant had less than marked limitation in Health and Physical Well-Being, but determined no limitation in the remaining domains (Exh. 4A). The undersigned finds these opinions are not persuasive, as they are not consistent with the totality of the evidence of record. The undersigned agrees with the opinion regarding no limitation in attending and completing tasks, however, the remaining limitations are not supported by the overall evidence of record. While the consultants had opportunity to review a large portion of the evidence of record, they did not have the benefit of examining evidence received at the hearing level. Progress notes from Babies Can't Wait shows worsening in all domains, with exception of Attending and Completing Tasks (Exhs. 9F, 12F and 13F). Those treatment notes show mild delay to significant delay. Viewing the evidence in a light that is both favorable to the claimant and also reasonable, the undersigned finds the claimant has no limitation in domain two, less than marked limitation in domains one, four, five and six and marked limitation in domain three.

Accordingly, the claimant does not have an impairment or combination of impairments that functionally equals a listing, because the claimant does not have either "marked" limitations in two domains of functioning or "extreme" limitation in one domain of functioning.

(BNC#: 21QW091F61003) Page 10 of 10

**6.  The undersigned finds that the claimant has not been disabled, as defined in the Social Security Act, since October 19, 2020, the date the application was filed (20 CFR 416.924(a)).**

## DECISION

Based on the application for supplemental security income filed on October 19, 2020, the claimant is not disabled under section 1614(a)(3)(C) of the Social Security Act.

/s/ *Christine Guard*

Christine Guard
Administrative Law Judge

September 30, 2022
Date

## LIST OF EXHIBITS

### Payment Documents/Decisions

| Component | No. | Description | Received | Dates | Pages |
|---|---|---|---|---|---|
| Y13 | 1A | Initial Disability Determination by State Agency, Title XVI | | 2020-12-22 | 8 |
| Y13 | 2A | Disability Determination Transmittal | | 2020-12-22 | 1 |
| Y13 | 3A | Disability Determination Transmittal | | 2021-08-02 | 1 |
| Y13 | 4A | Reconsideration Disability Determination by State Agency, Title XVI | | 2021-08-02 | 6 |

### Jurisdictional Documents/Notices

| Component | No. | Description | Received | Dates | Pages |
|---|---|---|---|---|---|
| Y13 | 1B | T16 Notice of Disapproved Claim | | 2020-12-22 | 5 |
| Y13 | 2B | Request for Reconsideration | | 2021-01-15 | 4 |
| Y13 | 3B | Request for Reconsideration | | 2021-02-04 | 3 |
| Y13 | 4B | T16 Disability Reconsideration Notice | | 2021-08-02 | 3 |
| Y13 | 5B | Request for Hearing by ALJ | | 2021-08-12 | 1 |
| Y13 | 6B | Request for Hearing Acknowledgement Letter | | 2021-09-03 | 13 |
| Y13 | 7B | Hearing Notice | | 2021-09-07 | 15 |
| Y13 | 8B | Notice Of Hearing Reminder | | 2021-11-05 | 1 |

### Non-Disability Development

| Component | No. | Description | Received | Dates | Pages |
|---|---|---|---|---|---|

| Component | No. | Description | | Source | Dates | Pages |
|---|---|---|---|---|---|---|
| Y13 | 1D | Application for Supplemental Security Income Benefits | | | 2020-10-28 | 10 |
| Y13 | 2D | WHAT - Work History Assistant Tool | | | 2021-10-24 | 2 |
| Y13 | 3D | New Hire, Quarter Wage, Unemployment Query (NDNH) | | | 2021-10-24 | 1 |
| Y13 | 4D | Summary Earnings Query | | | 2021-10-24 | 1 |
| Y13 | 5D | Detailed Earnings Query | | | 2021-10-24 | 1 |
| Y13 | 6D | Certified Earnings Records | | | 2021-10-24 | 1 |

## Disability Related Development

| Component | No. | Description | Received | Source | Dates | Pages |
|---|---|---|---|---|---|---|
| Y13 | 1E | Function Report - Child to Age 1 | | Claimant | to 2020-10-28 | 7 |
| Y13 | 2E | Disability Report - Field Office | | Claimant | to 2020-11-04 | 2 |
| Y13 | 3E | Disability Report - Child | | Claimant | to 2020-11-04 | 6 |
| Y13 | 4E | Disability Report - Field Office | | Claimant | to 2021-02-04 | 2 |
| Y13 | 5E | Disability Report - Appeals | | Claimant | to 2021-02-04 | 8 |
| Y13 | 6E | Disability Report - Appeals | | Claimant | to 2021-02-04 | 10 |
| Y13 | 7E | Disability Report - Appeals | | Claimant | to 2021-06-18 | 7 |
| Y13 | 8E | Disability Report - Field Office | | Claimant | to 2021-08-18 | 2 |
| Y13 | 9E | Exhibit List to Rep PH2E | | Y13 | to 2021-10-24 | 12 |
| Y13 | 10E | Proffer Correspondence | Subsequent to hearing | Y13 | to 2022-04-07 | 2 |
| Y13 | 11E | Report of Contact | Subsequent to hearing | Y13 | to 2022-04-08 | 1 |
| Y13 | 12E | Report of Contact | Subsequent to hearing | Y13 | to 2022-04-11 | 1 |
| Y13 | 13E | Proffer Correspondence | Subsequent to hearing | Y13 | to 2022-04-11 | 2 |

| X83 | 14E | Report of Contact | | | | 1 |

## Medical Records

| Component | No. | Description | Received | Source | Dates | Pages |
|---|---|---|---|---|---|---|
| Y13 | 1F | Misc Medical Records | | Grady Health System | to 2020-10-20 | 1 |
| Y13 | 2F | Progress Notes | | Childrens Healthcare Of Atlant | 2020-10-27 to 2020-11-23 | 19 |
| Y13 | 3F | Emergency Department Records | | Children's Healthcare Of Atlanta | 2020-12-26 to 2021-01-07 | 21 |
| Y13 | 4F | Emergency Department Records | | Children's Healthcare Of Atlanta | 2021-03-20 to 2021-04-10 | 25 |
| Y13 | 5F | Emergency Department Records | | Children's Healthcare Of Atlanta | to 2021-04-10 | 12 |
| Y13 | 6F | Emergency Department Records | | Children's Healthcare Of Atlanta | to 2021-05-07 | 12 |
| Y13 | 7F | Office Treatment Records | | Children's Healthcare Of Atlanta | 2021-06-10 to 2021-06-24 | 12 |
| Y13 | 8F | Office Treatment Records | | Princeton Lakes Pediatrics | 2020-11-11 to 2021-06-28 | 38 |
| Y13 | 9F | Medical Records covering the period | | Babies Can't Wait | 2020-10-11 to 2021-09-15 | 12 |
| Y13 | 10F | HIT MER | Subsequent to hearing | Children's Healthcare Of Atlanta #5 | 2021-06-24 to 2021-12-29 | 29 |
| Y13 | 11F | Office Treatment Records | Subsequent to hearing | Princeton Lakes Pediatrics | 2021-03-21 to 2022-02-10 | 31 |
| Y13 | 12F | Office Treatment Records | Subsequent to hearing | Babies Can't Wait | 2021-09-15 to 2022-02-10 | 30 |
| Y13 | 13F | Office Treatment Records | Subsequent to hearing | Babies Can't Wait | 2021-09-15 to 2022-03-30 | 13 |

| | | | | | |
|---|---|---|---|---|---|
| Y13 | 14F | Office Treatment Records | Subsequent to hearing | Choa | to 2022-04-11 | 1 |
| Y13 | 15F | Office Treatment Records | Subsequent to hearing | Choa | to 2022-04-01 | 2 |