# EXHIBIT A

FILED 1/3/2023 4:17 PM CLERK OF SUPERIOR COURT DEKALB COUNTY GEORGIA

## IN THE SUPERIOR COURT OF DEKALB COUNTY
## STATE OF GEORGIA

Westlyan Neshundra Lee

1011 Gables Lane

Sandy Springs, GA 30350

Plaintiff

Case No.: 23CV1031

VS

Cafe Intermezzo, Inc. d/b/a Cafe Intermezzo

2175 Royal Palm Court

Norcross, GA 30071

Defendant

# SUMMONS

## TO THE ABOVE NAMED DEFENDANT(S):

You are hereby summoned and required to file electronically with the Clerk of said court at https://efilega.tylerhost.net/ofsweb and serve upon the Plaintiff's attorney, whose name, address and email is:

A. Bradley Dozier, Jr. / Dozier Law Group LLC<br/>1050 Crown Pointe Parkway, Suite 500<br/>Atlanta, GA 30338

An answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This ____3rd____ day of ____January____, 20_23____.

Honorable Debra DeBerry<br/>Clerk of Superior Court<br/>/s/ Selena Anderson<br/>By_____<br/>Deputy Clerk

E-Filing and E-Service

Pursuant to the Superior Court of DeKalb County's E-File Order, dated December 27, 2016, and available at www.dksuperiorclerk.com/civil, the parties must file all documents electronically through eFileGA unless expressly exempted under the Rule. All orders and notices from the Court will be electronically filed and served through eFileGA. The parties must register for an eFileGA account, link their service contact information with the case and the party represent, and take whatever steps are necessary to ensure that correspondence from eFileGA reaches the parties' inboxes. To access eFileGA, please go to http://www.odysseyefilega.com/

Instructions: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.

FILED 1/3/2023 4:17 PM CLERK OF SUPERIOR COURT DEKALB COUNTY GEORGIA

IN THE SUPERIOR COURT OF DEKALB COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| WESTLYAN NESHUNDRA LEE | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE NO. ___ |
| | ) | |
| v. | ) | 23CV1031 |
| | ) | |
| CAFÉ INTERMEZZO, INC. | ) | JURY TRIAL DEMANDED |
| d/b/a CAFÉ INTERMEZZO | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff, Westlyan Neshundra Lee, by and though the undersigned

counsel of record, and files her Complaint for Damages against the above-named

Defendant showing the Court as follows:

### JURISDICTION AND VENUE

1.    Plaintiff Westlyan Neshundra Lee ("Plaintiff") is a resident of the State of

Georgia.

2.    Defendant Café Intermezzo, Inc. d/b/a Café Intermezzo ("Defendant" or "Café

Intermezzo") is a domestic corporation with its principal office address at 2175

Royal Palm Court, Norcross, Georgia 30071. The Registered Agent for Defendant

is Brian J. Olson, who may be served at 4505 Ashford Dunwoody Road,

Dunwoody, GA 30346.

3.    Defendant owns and operates the Café Intermezzo location at which Plaintiff was

1

employed, 4505 Ashford Dunwoody Road, Dunwoody, Georgia 30346 (Dekalb County).

4.    This Court has subject matter jurisdiction over the matters at issue.

5.    This Court has personal jurisdiction over Defendant.

6.    Venue for this action is proper.

7.    Plaintiff has complied with all prerequisites to the filing of this action. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") for gender discrimination/sexual harassment and retaliation on December 7, 2022 (Charge No. 410-2023-02199). Plaintiff received a "Notice of Right to Sue" on or about December 23, 2022. This action is filed within ninety (90) days of Plaintiff receiving the "Notice of Right to Sue," which is dated December 23, 2022.

## BACKGROUND FACTS

8.    Defendant owns and operates the Café Intermezzo location at which Plaintiff was employed, 4505 Ashford Dunwoody Road, Dunwoody, Georgia 30346.

9.    Defendant owns and operates several other Café Intermezzo locations, including locations in Midtown (Atlanta), Alpharetta (Avalon), and Nashville, Tennessee.

10.   Upon information and belief, the Café Intermezzo cafés in Dunwoody, Midtown, Alpharetta (Avalon) and Nashville, Tennessee operate under the same or substantially similar company policies, procedures and practices.

11.   Upon information and belief, the Café Intermezzo cafés in Dunwoody, Midtown,

2

Alpharetta (Avalon) and Nashville, Tennessee have common ownership and management.

12.   Plaintiff began working at Cafe Intermezzo in or around March, 2019.

13.   At all times relevant to this action, Plaintiff worked for Defendant at the Café Intermezzo location at 4505 Ashford Dunwoody Road.

14.   Plaintiff was hired as a Server.  Plaintiff occupied that position, along with that of hostess and barista at various times, throughout the entirety of her employment with Defendant.

15.   During her employment with Defendant, Plaintiff was required to interact with General Manager Blake Carter ("GM Carter").

16.   GM Carter had direct supervisory authority over Plaintiff.

17.   GM Carter had authority to oversee and manage Plaintiff's work.

18.   GM Carter had authority to issue Plaintiff disciplinary actions.

19.   At various times during Plaintiff's employment she was subjected to numerous lewd, graphic, unwanted, offensive sexual comments and conduct by GM Carter, including unwanted, inappropriate, unsolicited and/or offensive physical contact.

20.   Upon information and belief, at various times during their employment other employees were subjected to lewd, graphic, unwanted and/or offensive sexual comments and conduct by GM Carter, including unwanted, inappropriate, unsolicited and/or offensive physical contact.

21.   Upon information and belief, management at Defendant were aware of GM

3

Carter's propensity to make the type of lewd, graphic, unwanted and/or offensive
sexual comments to female employees which form the basis of this action.

22.     Upon information and belief, management at Defendant were aware of GM
Carter's propensity to make the type of unwanted, inappropriate, unsolicited
and/or offensive physical contact with female employees which form the basis of
this action.

23.     The hostile work environment sexual harassment to which Plaintiff was subjected
continued to occur up to and through November, 2022.

24.     Prior to her discharge Plaintiff verbally reported to Director of Management Joy
David she had been subjected to lewd, graphic, unwanted, offensive and/or
sexual comments and conduct by GM Carter, including unwanted, inappropriate,
unsolicited and/or offensive physical contact.

25.     Although Plaintiff was hopeful that her initial report to Ms. David would result in
the matter being expeditiously addressed, it did not appear that Defendant was
particularly motivated to address the situation.

26.     As such, Plaintiff reported GM Carter's concerning comments and conduct
to management at Cafe Intermezzo, namely to Director of Management Joy David,
in an e-mail dated November 19, 2022. Plaintiff's e-mail read as follows:

I'm writing this e-mail because I understand from Teddy [Director of
Baristas] that Café Intermezzo doesn't have a functioning HR department
right now, or at least there's currently no specific person who is directly
responsible for HR functions. After asking for HR's number or e-mail, I was
given Joy's e-mail.

4

I want to make sure we're on the same page about my previous reports of comments and conduct by Blake Carter that violate the company's sexual harassment policy. Having spoken with Joy to make her aware of the situation, I still haven't heard from anyone at Café Intermezzo indicating that the company is doing any kind of real investigation, and I haven't gotten any reassurances that the company is going to do anything specific to make sure that the harassing conduct stops and I won't be subjected to further harassment if I continue to work here. I've already started to experience what appear to be acts of retaliation. Specifically, writing me up for a "dirty section" when prior to me leaving my section was clean and transferred over to my replacement. Shunny even stated he was obviously nitpicking because she didn't know what Blake was talking about. Normally, I would pick up shifts requested by other coworkers. Since I've came forward, I have been getting denied from picking up shifts and swapping shifts.

I assume the company is considering or will do some kind of investigation, so I'm providing below a specific list of the comments and conduct I've experienced. I will cooperate in whatever way the company asks to properly investigate this situation so appropriate steps can be taken to make the harassment stop and prevent it from continuing. If that means an in-person interview with senior management or an outside investigator, let me know and I'll show up to answer any questions and provide any details to help the investigation. Here is a specific list of the comments and conduct by Blake Carter:

- "Capricorns have great pussy" After me telling him my sign.
- "My dick is big"
- "God didn't shorten me in any way"
- "Put your boobs away I'm trying to work"
- Looked me up and down and said "You looking thick today"
- "You've been mean to me lately, what happened? I thought you were my bottom bitch"
- "I bet you taste sweet"
- Told me he loves eating pussy.
- He said out loud in the kitchen "I found West's Instagram; I still got her picture saved." He showed me and it was a picture of me in a bikini. I then blocked him on Instagram.
- Constantly begging me to unblock him on Instagram
- He forced himself on me and wrapped his arms around without saying anything.
- Asked me to give him a massage because he was so tense.
- He was making a face as if he was drooling and was like "Oh sorry"

5

- He cornered me into the back POS station and kept blocking me in, wouldn't let me clock out until I talked to him and made eye contact. Afterwards told me I'm starting to be mean to him and then hugged me.
- Spoke on me having "allegations" against him broadly to the other staff.
- Proceeded to give me a massage by rubbing my shoulders.
- Has said "your fine ass"
- Has said "your sexy ass"
- Has told me my lips were sexy and full.
- "Everyone thinks me and her are fucking" speaking about Lauren (the host)
- Constantly insisting on hugs for no reason.
- Told me I needed a man to put me in my place, then put his leg up in front of me
- Called me an hour before my shift every morning shift, we had together.
- Has said "I love you"
- Has said "I think I'm in love with you"
- Has told me I was getting thicker
- Has said to me "AJ's big ass"
- Has said "you can get whatever you want from me"
- Has said "Just let me and I'll buy you a Benz"
- Told him I was from the Caribbean and he said "I know you got good pussy"
- Eye gazing a new hire and said to me "She's thick for a white girl"
- Grabbing my waist to move me out of his way.

Several people have seen and heard things which are relevant and which the company should know about. If the company is going to investigate these incidents, I see no reason why they shouldn't be interviewed.

Shuntreana Wilson
Alexandria Earthly
Liliana
Jaylah Hawkins
Victoria Dore
Vanessa
Jenna
Keya Tolosa

27.     Not long after Plaintiff submitted this written sexual harassment report detailing

the numerous harassing conduct and comments by GM Carter to Joy David,

members of the kitchen staff began making statements in Plaintiff's presence to

the effect that woman are making bogus sexual harassment claims against men, women are getting men fired for no good reason, men are now in difficult situations because women are making such claims, men have to watch what they say and do or else woman will report them for sexual harassment and get them in serious trouble, and similar comments suggesting that women are making life difficult for men in the workplace.

28.   It was apparent to Plaintiff that members of the kitchen staff were directing their comments at her and were suggesting that she may have made similar types of false claims of sexual harassment. Basically, Plaintiff felt that members of the kitchen staff were suggesting that she had lied about or embellished what she had experienced at Café Intermezzo.

29.   Understandably, Plaintiff found these comments disconcerting. However, Plaintiff did not confront members of the kitchen staff about their comments in a manner that was aggressive, hostile, combative or threatening. Plaintiff did not say or do anything which could be reasonably construed as creating a hostile work environment for members of the kitchen staff.

30.   On December 4, 2022 Assistant Manager Alexa Moody ("AM Moody") passed by Plaintiff and asked her if she was okay. In response, Plaintiff stated that she wasn't really okay. AM Moody suggested that she and Plaintiff speak if something was bothering her. AM Moody instructed Plaintiff to follow her to the cake display area so they could talk, and Plaintiff complied. Notably, Plaintiff did not ask to

speak with AM Moody or consult with her about any problem or issue she was
having at work. Rather, AM Moody suggested that Plaintiff speak with her if
something was bothering her.

31.    At her suggestion, Plaintiff then described to AM Moody some of the comments
that members of the kitchen staff had been making and how it made her feel.
Plaintiff was bothered by the comments in general and how they reflected on her,
and she shared how she felt about them with AM Moody.

32.    In her conversation with AM Moody Plaintiff did not yell, shout, scream or raise
her voice in a way that could reasonably be construed or described as someone
yelling, shouting or screaming. Likewise, Plaintiff did not make any comments
which could reasonably be construed as aggressive, hostile, combative,
argumentative or threatening towards anyone at Defendant, nor was Plaintiff in
any way insubordinate toward AM Moody. AM Moody asked Plaintiff what was
bothering her, and Plaintiff explained the situation to her.

33.    After hearing from Plaintiff, AM Moody offered to speak with the members of the
kitchen staff for her, but Plaintiff told her that she didn't need to do that, because
Plaintiff didn't want to escalate the situation and she didn't want to cause any
unnecessary drama or tension with the kitchen staff.

34.    After Plaintiff spoke with AM Moody, one of the members of the kitchen staff,
Jasmine (last name unknown), came up to Plaintiff and spoke with her. Jasmine
was concerned that she might have said something that Plaintiff found upsetting.

8

Plaintiff told her that it was somewhat frustrating that some of the kitchen staff seemed to be implying that she had falsely accused Blake Carter of sexual harassment. Jasmine apologized to Plaintiff if she had said anything that offended or upset her. Plaintiff told Jasmine it was okay and she didn't have an issue with her.

35.   Shortly thereafter, Plaintiff's employment was terminated.

36.   Defendant did not engage in legitimate progressive discipline with Plaintiff prior to firing her.

37.   Before Plaintiff was discharged, GM Carter had attempted to write her up for some dubious and demonstrably spurious contentions in a rather transparent attempt to gin up a basis to terminate her employment, presumably as a way of pushing her out before he might suffer the adverse consequences of his reported harassing comments and conduct.

38.   By and through Plaintiff's reports of sexual harassment, both verbal and in writing, Defendant was expressly notified and had actual knowledge of GM's Carter harassing conduct.

39.   Plaintiff's termination was effective December 4, 2022.

40.   Plaintiff's employment was terminated for pretextual reasons.

41.   The proffered reason for Plaintiff's termination was a pretext to conceal that Defendant discharged Plaintiff, in whole or in part, for engaging in the protected activity of reporting that she had been subjected to sexually harassing comments

9

and conduct over the course of several months of her employment, which

effectively put a target on her back and made her an undesirable prospect for

continued employment.

42.   Plaintiff filed a Charge of Discrimination with the EEOC on or about December 7,

2022 for gender discrimination/hostile work environment sexual harassment and

retaliation (Charge No. 410-2023-01299).

## CAUSES OF ACTION

### COUNT I - HOSTILE WORK ENVIRONMENT
### SEXUAL HARASSMENT UNDER TITLE VII

43.   Paragraphs 1 through 42 are incorporated herein by this specific reference.

44.   The sexual harassment to which Plaintiff was subjected, which included numerous

lewd, graphic, offensive sexual comments and unwanted, inappropriate,

unsolicited, offensive physical contact, was severe and pervasive to the extent that

it materially changed the terms and conditions of Plaintiff's employment.

45.   The sexual harassment to which Plaintiff was subjected created a subjectively and

objectively hostile working environment based on Plaintiff's sex, in violation of

42 U.S.C. § 2000 et seq. ("Title VII"), thereby entitling Plaintiff to all appropriate

relief provided under the statute.

### COUNT II – FALSE IMPRISONMENT

46.   Paragraphs 1 through 45 are incorporated herein by this specific reference.

47.   At various times throughout Plaintiff's employment GM Carter he made unwanted

and unsolicited physical contact with Plaintiff in such a way that she was restrained from free and unimpeded physical movement, restraining her against her will.

48. These instances included GM Carter wrapping his arms around Plaintiff and hugging her without her desire or consent, massaging or rubbing her shoulders without her desire or consent, cornering Plaintiff into the back POS station and blocking her movement, and refusing to let Plaintiff clock out until she spoke with him about matters unrelated to her work and her job duties.

49. On those occasions GM Carter's actions restricted Plaintiff's ability to move freely about Café Intermezzo and deprived of her physical liberty.

50. The manner of Plaintiff's restraint and deprivation of her liberty is actionable as false imprisonment under the provisions of O.C.G.A. § 51-7-20.

51. Plaintiff seeks all damages available to her under the law for her false imprisonment.

## COUNT III – INVASION OF PRIVACY

52. Paragraphs 1 through 51 are incorporated herein by this specific reference.

53. Plaintiff's right of privacy includes her right to be free from unwanted physical contact and physical restraint.

11

54. The several instances of GM Carter's unwanted, unsolicited physical contact with Plaintiff resulted in her being restrained from free and unimpeded physical movement at Café Intermezzo.

55. The several instances of GM Carter's unwanted, unsolicited physical contact with Plaintiff constitutes an invasion of her physical space and her right to privacy.

<u>COUNT IV – NEGLIGENCE / NEGLIGENT TRAINING & SUPERVISION</u>

56. Paragraphs 1 through 55 are incorporated herein by this specific reference.

57. During Plaintiff's employment with Defendant, Defendant was in a position to exercise reasonable and ordinary care and diligence to prevent Plaintiff from being subjected to tortious and harmful conduct by supervisory personnel, and Defendant failed to do so.

58. At various times during Plaintiff's employment she was subjected to numerous lewd, graphic, unwanted, offensive sexual comments and conduct by GM Carter, including unwanted, inappropriate, unsolicited, offensive physical contact.

59. Plaintiff expressly reported the concerning actions and sexual harassment to which she was being subjected to Defendant's management.

60. Upon information and belief, Defendant was aware of GM Carter's propensity to engage in inappropriate sexually harassing conduct by and through prior known and observable interactions with Defendant's personnel and reports of same from Defendant's personnel.

61. Upon information and belief, Defendant was grossly negligent in failing to

12

properly train, monitor and supervise GM Carter despite his known and observable interactions with Defendant's personnel and reports of same from Defendant's personnel.

62. Defendant's gross negligence directly and proximately resulted in injury to Plaintiff.

63. Defendant acted with such an entire want of care as to raise the presumption of conscious or reckless indifference to Plaintiff's protected rights, and/or that Defendant acted with actual or imputed knowledge that the inevitable or probable consequences of its actions or omissions would result in injury to Plaintiff and a violation of her rights under state and federal law.

## COUNT V – NEGLIGENT RETENTION

64. Paragraphs 1 through 63 are incorporated herein by this specific reference.

65. During Plaintiff's employment with Defendant, Defendant was in a position to exercise reasonable and ordinary care and diligence to prevent Plaintiff from being subjected to tortious and harmful conduct by supervisory personnel and failed to do so.

66. During Plaintiff's employment with Defendant, Plaintiff was subjected to unwanted, offensive, lewd, salacious, demeaning, degrading, humiliating, sexually graphic comments and conduct.

67. Upon information and belief, Defendant was aware of GM Carter's propensity to engage in inappropriate sexually harassing conduct by and through prior known

and observable interactions with Defendant's personnel and reports of same from Defendant's personnel.

68.   Upon information and belief, Defendant was grossly negligent in retaining GM Carter in a managerial and supervisory role despite his known and observable interactions with Defendant's personnel and reports of same from Defendant's personnel.

69.   Defendant's gross negligence directly and proximately resulted in injury to Plaintiff.

70.   Defendant acted with such an entire want of care as to raise the presumption of conscious or reckless indifference to Plaintiff's protected rights, and/or that Defendant acted with actual or imputed knowledge that the inevitable or probable consequences of its actions or omissions would result in injury to Plaintiff and a violation of her rights under state and federal law.

## COUNT VI – RETALIATION

71.   Paragraphs 1 through 70 are incorporated herein by this specific reference.

72.   In accordance with Defendant's policies and procedures, Plaintiff reported the harassing and concerning comments and conduct to Defendant's management.

73.   Plaintiff did not confront co-workers or supervisory personnel in a manner that was aggressive, hostile, combative or threatening.  Plaintiff did not engage in conduct which could reasonably be characterized or construed as creating a hostile work environment for her co-workers or supervisory personnel.

14

74.  Plaintiff was not insubordinate to supervisory personnel or management, nor did she engage in conduct which could reasonably be characterized or construed as insubordinate.

75.  Not long after Plaintiff reported GM Carter's sexually harassing conduct and comments to Defendant she was terminated for pretextual reasons.

76.  Plaintiff was terminated effective December 4, 2022.

77.  The sexual harassment to which Plaintiff was subjected and the reporting of same to Defendant culminated in Plaintiff's discharge on December 4, 2022.

78.  The proffered reason for Plaintiff's termination was a pretext to conceal that Defendant discharged Plaintiff, in whole or in part, for engaging in the protected activity of reporting that she had been subjected to harassing comments and conduct over the course of several months of her employment.

## COUNT VII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

79.  Paragraphs 1 through 78 are incorporated herein by this specific reference.

80.  During Plaintiff's employment with Defendant, Defendant was in a position to exercise reasonable and ordinary care and diligence to prevent Plaintiff from being subjected to tortious and harmful conduct by supervisory personnel and failed to do so.

81.  The proffered reason for Plaintiff's termination was a pretext to conceal that Defendant discharged Plaintiff, in whole or in part, for engaging in the protected activity of reporting that she had been subjected to harassing comments and

15

conduct over the course of several months of her employment.

82.   The sexually harassing conduct to which Plaintiff was subjected and Defendant's terminating Plaintiff, in whole or in part, for engaging in the protected activity of reporting sexual harassment to management was inexcusable, unreasonable, unconscionable, extreme and outrageous.

83.   Plaintiff is entitled to an award of damages for intentional infliction of emotional distress including, but not limited to, pain and suffering, mental distress and anguish, humiliation, embarrassment, degradation, diminished enjoyment of life, and other damages incurred as a result of Defendant's tortious actions, failures and omissions, and Defendant's decision to terminate Plaintiff, in whole or in part, for engaging in the protected activity of reporting sexual harassment.

## COUNT VIII – PUNITIVE DAMAGES

84.   Paragraphs 1 through 83 are incorporated herein by this specific reference.

85.   During Plaintiff's employment with Defendant, Defendant was in a position to exercise reasonable and ordinary care and diligence to prevent Plaintiff from being subjected to tortious and harmful conduct by Plaintiff's co-workers and supervisors, and Defendant failed to do so.

86.   The proffered reason for Plaintiff's termination was a pretext to conceal that Defendant discharged Plaintiff, in whole or in part, for engaging in the protected activity of reporting that she had been subjected to harassing comments and conduct over the course of several months of her employment.

87.    The sexually harassing conduct to which Plaintiff was subjected and Defendant's terminating Plaintiff, in whole or in part, for engaging in the protected activity of reporting sexual harassment to management was inexcusable, unreasonable, unconscionable, extreme and outrageous.

88.    The sexually harassing conduct to which Plaintiff was subjected and Defendant's terminating Plaintiff, in whole or in part, for engaging in protected activity of reporting hostile work environment sexual harassment showed willful misconduct, malice, fraud, wantonness, oppression, or such an entire want of care which raises the presumption of conscious indifference to the consequences for Plaintiff justifying an award of punitive damages.

89.    Under these circumstances, an award of punitive damages is authorized pursuant to Title VII and O.C.G.A. § 51-12-5.1.

<u>COUNT IX – EXPENSES OF LITIGATION</u>

90.    Paragraphs 1 through 89 are incorporated herein by this specific reference.

91.    The sexually harassing conduct to which Plaintiff was subjected and Defendant's terminating Plaintiff, in whole or in part, for engaging in protected activity of reporting hostile work environment sexual harassment was perpetrated in bad faith and has caused Plaintiff unnecessary trouble and expense.

92.    Under the facts and circumstances of this case, Plaintiff is entitled to recovery of her expenses of litigation, including reasonable attorney's fees, pursuant to Title VII and O.C.G.A. § 13-6-11.

WHEREFORE, Plaintiff demands:

1.   That this Complaint be filed and served as provided by law;

2.   That Plaintiff be awarded back pay and front pay;

3.   That Plaintiff be awarded compensatory damages for the injuries, indignities and affront she sustained and experienced as a direct and proximate result of the sexual harassment, negligence, invasion of privacy, false imprisonment, retaliatory discharge and other tortious conduct to which she was subjected during her employment with Defendant, her pain and suffering, severe emotional distress and anguish, embarrassment, humiliation, degradation, diminished enjoyment of life, and the violation of her rights under state and federal law, in an amount to be determined by the enlightened conscience of an impartial jury;

4.   That Plaintiff be awarded a judgment against Defendant for punitive damages under Title VII and/or in accordance with O.C.G.A. § 51-12-5.1 in an amount to be determined at trial;

5.   That attorney's fees and all costs of this action be cast upon Defendant;

6.   That Plaintiff receive such other and further relief as the Court deems just and proper; and

7.   That trial by jury be allowed as to all issues alleged in this Complaint.

Respectfully submitted this 3rd day of January, 2023.

/s/ *A. Bradley Dozier, Jr.*
A. Bradley Dozier, Jr.
Georgia Bar No. 228701

Dozier Law Group LLC
1050 Crown Pointe Parkway, Suite 2525
Atlanta, Georgia 30326
(404) 949-5600
*bdozier@dozierlawgroup.com*

19

FILED 1/3/2023 4:17 PM CLERK OF SUPERIOR COURT DEKALB COUNTY GEORGIA

## General Civil and Domestic Relations Case Filing Information Form

☒ Superior or ☐ State Court of _____DEKALB_____ County

| For Clerk Use Only | |
|---|---|
| 1/3/2023 | 23CV1031 |
| Date Filed _____ | Case Number _____ |
| MM-DD-YYYY | |

**Plaintiff(s)**

Lee     Westlyan     N

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

**Defendant(s)**

Cafe Intermezzo, Inc.

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

**Plaintiff's Attorney** A. Bradley Dozier, Jr.     **State Bar Number** 228701     **Self-Represented** ☐

### Check one case type and one sub-type in the same box (if a sub-type applies):

**General Civil Cases**
- ☐ Automobile Tort
- ☐ Civil Appeal
- ☐ Contempt/Modification/Other Post-Judgment
- ☐ Contract
- ☐ Garnishment
- ☒ General Tort
- ☐ Habeas Corpus
- ☐ Injunction/Mandamus/Other Writ
- ☐ Landlord/Tenant
- ☐ Medical Malpractice Tort
- ☐ Product Liability Tort
- ☐ Real Property
- ☐ Restraining Petition
- ☐ Other General Civil

**Domestic Relations Cases**
- ☐ Adoption
- ☐ Contempt
  - ☐ Non-payment of child support, medical support, or alimony
- ☐ Dissolution/Divorce/Separate Maintenance/Alimony
- ☐ Family Violence Petition
- ☐ Modification
  - ☐ Custody/Parenting Time/Visitation
- ☐ Paternity/Legitimation
- ☐ Support – IV-D
- ☐ Support – Private (non-IV-D)
- ☐ Other Domestic Relations

☐ Check if the action is related to another action pending or previously pending in this court involving some or all of the same: parties, subject matter, or factual issues. If so, provide a case number for each.

_____     _____
**Case Number**               **Case Number**

☒ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in OCGA § 9-11-7.1.

☐ Is a foreign language or sign-language interpreter needed in this case? If so, provide the language(s) required.

_____ **Language(s) Required**

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

Version 1.1.20

JAB

### AFFIDAVIT OF SERVICE

| Case: 23CV1031 | Court: IN THE SUPERIOR COURT OF DEKALB COUNTY STATE OF GEORGIA | County: DEKALB | Job: 8186181 | 23CV1031 |
|---|---|---|---|---|
| Plaintiff / Petitioner: WESTLYAN NESHUNDRA LEE | | Defendant / Respondent: CAFE INTERMEZZO, INC. d/b/a CAFE INTERMEZZO | | |
| Received by: Lorenzo Kenerson | | For: Dozier Law Group, LLC | | |
| To be served upon: CAFE INTERMEZZO, INC. d/b/a CAFE INTERMEZZO | | | | |

I, Lorenzo Kenerson, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

Recipient Name / Address:  CAFE INTERMEZZO, INC. d/b/a CAFE INTERMEZZO, 2175 Royal Palm Ct NW, Norcross, GA 30071

Manner of Service:  Registered Agent, Jan 16, 2023, 6:09 pm EST

Documents:  Summons and Complaint for Damages

Additional Comments:
1) Successful Attempt: Jan 16, 2023, 6:09 pm EST at 2175 Royal Palm Ct NW, Norcross, GA 30071 received by BRIAN J OLSON for CAFE INTERMEZZO, INC. d/b/a CAFE INTERMEZZO.

Lorenzo Kenerson                    Date  1/18/23

Lorenzo Kenerson
3301 Buckeye Rd Suite 303
Atlanta, GA 30341
404-876-8098

Subscribed and sworn to before me by the affiant who is personally known to me.

Notary Public

Date  1/18/23

MARTIN CARD
NOTARY
EXPIRES
NOV 7, 2023
PUBLIC
GWINNETT COUNTY, GA
Commission Expires

## IN THE SUPERIOR COURT OF DEKALB COUNTY
## STATE OF GEORGIA

IN RE:

MOTION FOR APPOINTMENT AS
PERMANENT PROCESS SERVER

PURSUANT TO O.C.G.A. §9-11-4(c)

:
:
:
:
:

CIVIL ACTION FILE NUMBER:

23MPR1022

### ORDER APPOINTING PERMANENT PROCESS SERVER
### FOR CALENDAR YEAR 2023

    The foregoing motion having been read and considered; it is HEREBY ORDERED that the following individual(s) is/are appointed as a permanent process server pursuant to O.C.G.A. §9-11-4(c):

LORENZO KENERSON

This appointment shall be effective until midnight December 31, 2023.

**IT IS SO ORDERED** this 3rd day of January, 2023.

Honorable LaTisha Dear Jackson
Chief and Administrative Judge
DeKalb County Superior Court
Stone Mountain Judicial Circuit