IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| WILLIE LATIMORE, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Case No. |
| | ) |
| TREEHOUSE FOODS, INC. and | ) |
| BAY VALLEY FOODS, LLC, | ) |
| | ) |
|     Defendants. | ) |

## COMPLAINT

The Plaintiff Willie Latimore complains against the Defendants Treehouse Foods Inc. and Bay Valley Foods LLC as follows:

## JURISDICTION & PARTIES

1. Plaintiff Latimore complains that the Defendants (as joint employers) violated Title VII of the 1964 Civil Rights Act (as amended) and/or Section 1981. Accordingly, this court has subject matter jurisdiction pursuant to 42 U.S.C. § 2000e-5, 42 U.S.C. § 1981, 42 U.S.C. § 1988 and 28 U.S.C. § 1331 (federal question).

2. Plaintiff Willie Latimore is a former employee of the Defendants Treehouse Foods, Inc. and Bay Valley Foods, LLC. The Defendants employed Mr. Latimore as a maintenance mechanic at its Atlanta, Georgia facility. The conduct alleged in this complaint occurred at the Defendants' Atlanta, Georgia facility.

3. The Defendant Treehouse Foods Inc. jointly employed Mr. Latimore from February 2017 until January 2022 at its Atlanta Georgia facility.

4. The Defendant Bay Valley Foods, LLC is wholly owned by the Defendant Treehouse Foods. Bay Valley Foods jointly employed Mr. Latimore from February 2017 until February 2022 at the Atlanta Georgia facility.

5. The Plaintiff Latimore filed a charge of discrimination with the Equal Employment Opportunity Commission and received a notice of right to use on November 19, 2022.

## FACTUAL ALLEGATIONS

6. The Defendants' Atlanta facility specializes in the manufacture of private label "meal preparation" goods such as salad dressing and condiments.

7. The Defendants' have a centralized human resources department. Treehouse promulgates employee policies which are administered jointly by Treehouse and Bay Valley's human resources departments.

8. Mr. Latimore is an African American male. Mr. Latimore worked as maintenance employee at the Defendants' Atlanta Georgia facility. His supervisor oversaw a crew of approximately 13 maintenance employees. At the time of Mr. Latimore's employment, the Defendants employed approximately 21 maintenance employees. Though African Americans comprise approximately 70 percent of production employees, African Americans comprise less than 20 percent of the maintenance workers at the Atlanta facility.

9. While employed in the maintenance department, Mr. Latimore (as a black employee) was subjected to less favorable treatment than his white co-workers. For example, when a maintenance employee was needed during night and early morning hours, Mr. Latimore's supervisor (a white employee) called Mr. Latimore to come in and not his white co-workers at a disproportionate rate. Mr. Latimore's supervisor assigned Mr. Latimore the more difficult and

dirty work than this white co-workers.  Mr. Latimore's supervisor would grant white co-worker's request for time off on short notice but denied such request to Mr. Latimore.

10. Mr. Latimore's white supervisor treated Mr. Latimore and other black employees with less respect than he treated Latimore's white co-workers.  Latimore's supervisor would yell at Mr. Latimore and openly complain to other white co-workers about Mr. Latimore. He did not do this to the white co-workers.

11. Mr. Latimore's white supervisor texted Mr. Latimore a caricature of a black person while Mr. Latimore was at home.



Under the text his supervisor said "Tim" says "good night also."  Mr. Tim Payne was a black employee who had quit employment with the Defendants after complaining about working conditions.

12. Mr. Latimore's white supervisor locked Mr. Latimore in a cooler during the summer of 2021. Mr. Latimore was very upset about being locked in the cooler and his white

supervisor told him it was simply a "joke." Mr. Latimore's supervisor did not play such a "joke" on Latimore's white co-workers.

13. In December 2021, Mr. Latimore informed his supervisor in advance that he needed to be absent from work to attend a family event. He made the request approximately one week prior to the event. His supervisor cursed and yelled at Mr. Latimore in front of other white co-workers and told him he would not allow him to take the weekend off. Mr. Latimore had witnessed other white co-workers ask for time off with less advance notice and the leave was granted without any yelling or abusive conduct.

14. The incident in December 2021 was the last straw. In late December 2021, Mr. Latimore complained to the human resources department about his supervisor's abusive conduct, his preferential treatment of white co-workers and the incident involving the cooler which he believed happened to him because of his race. The human resources manager indicated that she would investigate.

15. A few days later, Mr. Latimore's supervisor told his crew members during a meeting that if anyone had a problem with him, they should come directly to him and not go to the human resources department.

16. Mr. Latimore did not hear back from the human resources department regarding his complaint. Instead, Mr. Latimore's supervisor increased his hostility towards Mr. Latimore. Mr. Latimore resigned because he reasonably believed that human resources would not take any action to prevent further hostility and abusive conduct by his supervisor.

17. As a result of the discriminatory treatment Mr. Latimore experienced, Mr. Latimore suffered mental anguish and emotional distress. Mr. Latimore resigned his employment because

he could no longer tolerate working for a supervisor who treated him with hostility and showed preferential treatment to his whit co-workers.

18.  The Defendants refusal to take action and/or to notify Mr. Latimore of any actions they undertook to address his complaint made continued employment intolerable because it showed disregard for race discrimination. The Defendants failed to take adequate measures to prevent Mr. Latimore's supervisor from harassing Mr. Latimore on account of his race and creating a racially hostile work environment.

## COUNT I

### (Race Discrimination)

19.  <u>Title VII</u>. The conduct described in paragraphs 10, 11, 12 and 16 constituted an unlawful employment practice under 42 U.S.C. § 2000e-2(a)(1). The Defendants discriminated against Mr. Latimore with respect to the terms, conditions or privileges of employment with the Defendants because of his race. In addition, the Defendants' tolerated a racially hostile work environment. The Defendants' constructively discharged Mr. Latimore on account of his race.

21.  Mr. Latimore is not the only African American employee who was subjected to discriminatory treatment. Mr. Latimore spoke to several black or minority co-workers who also complained about being treated less favorably than white employees. Upon information and belief, the Defendants engaged in a pattern and practice of discrimination.

22.  <u>Section 1981</u>. The conduct described in paragraphs 10, 11, 12 and 16 also constituted a violation of 42 U.S.C. § 1981. The Defendants deprived Mr. Latimore of the right to the same benefits, privileges, terms and conditions of employment as enjoyed by Mr. Latimore's white co-workers. The Defendants' intentionally deprived Mr. Latimore the same benefits, privileges, terms and conditions of employment on account his race. The Defendants'

constructively discharged Mr. Latimore. Additionally, the Defendants' tolerated a racially hostile work environment. The Defendants' constructively discharged Mr. Latimore because of his race.

## COUNT II

### (Retaliation)

22. <u>Title VII</u>. The conduct described in paragraphs 13, 14, 15 and 16 constitutes retaliation under 42 U.S.C. § 2000e-3. Mr. Latimore complained to Defendants about his white supervisor's discriminatory treatment of him because of his race. Mr. Latimore's complaint opposed what he reasonably believed was unlawful race discrimination. The Defendants' constructively discharged Mr. Latimore because of his opposition to his supervisor's discriminatory conduct.

23. <u>Section 1981</u>. The conduct described in paragraphs 13, 14, 15 and 16 constitutes retaliation under 42 U.S.C. § 1981. Mr. Latimore's complaint involved racially discriminatory treatment by his supervisor. Mr. Latimore was singled out after he made the complaint and the hostility from his white supervisor increased after he made the complaint.

## RELIEF REQUESTED

24. Wherefore considering the above factual allegations and the alleged violations of Title VII and Section 1981, the Plaintiff Mr. Latimore respectfully requests the following relief:

(a) Compensatory damages for mental anguish and emotional distress caused by the Defendants' unlawful employment discrimination and/or retaliation;

(b) Back-pay and loss of benefits resulting from the Defendants' unlawful employment discrimination and/or retaliation;

(c) Punitive damages;

(d) A reasonable attorney's fee plus all recoverable costs of litigation and

(e) Any other legal, equitable or injunctive relief the Court deems appropriate to remedy any violations of Title VII or Section 1981 as determined by a jury.

## JURY TRIAL DEMAND

The Plaintiff Mr. Latimore demands a trial by jury as provided under 42 U.S.C. § 1981a and/or the Seventh Amendment to the United States Constitution.


/s/*Nicolas Stanojevich*
Nicolas Stanojevich
GA Bar No. 173544

Quinn, Connor, Weaver,
Davies & Rouco, LLP
4100 Perimeter Park South
Atlanta GA 30341
404-299-1211
nstanojevich@qcwdr.com

Richard P. Rouco
Quinn, Connor, Weaver
Davies & Rouco, LLP
2 – 20th Street North
Suite 930
Birmingham, AL 35203

Serve Defendants:
Treehouse Foods, Inc.
289 S. Culver Street
Lawrenceville, GA 30046

Bay Valley Foods, LLC
289 S. Culver Street
Lawrenceville, GA 30046