IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN  DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| LIKESHA HILL-HANNAH | |
| Plaintiff, | Civil Action No.: |
| v. | <u>Jury Trial Demanded</u> |
| ESO MANAGEMENT LLC and ORTHO SPORT AND SPINE PHYSICIANS, LLC, and AVO REAL ESTATE HOLDINGS, LLC. | |
| Defendant. | |

## **COMPLAINT**

COMES NOW Plaintiff Likesha Hill-Hannah, by and through her undersigned counsel, and files this lawsuit against Defendants  ESO Management LLC, Ortho Sport & Spine Physicians, LLC,  and AVO Real Estate Holdings, LLC, (collectively "ESO"), which are affiliated companies owned and managed by Dr. Armin Oskoei.

## I.   INTRODUCTION

Plaintiff Likesha Hill-Hannah ("Plaintiff") is an African-American female who is an experienced, highly educated and accomplished Human Resources

1

professional. Plaintiff brings various claims to hold her former employer ESO accountable for violating her statutory rights under Title VII and the Fair Labor Standards Act, as well as supplemental claims under the laws of the State of Georgia, including breach of contract.  Plaintiff provided exceptional service to Defendants and challenged them to address various ongoing violations of anti-discrimination law, as well as wage and hour, immigration and taxation law violations.  In response, Defendants rescinded a promotion Plaintiff had already accepted, and subjected her to egregious harassment and retaliation.  Defendants' discriminatory, harassing and retaliatory conduct resulted in Plaintiff's termination, within minutes of her submission of a formal complaint.

## II.  JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over the federal claims asserted in this action under 28 U.S.C. §§1331, 1343, and 1367.

2.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b), as Defendants conduct business in this District and division, and the events or omissions giving rise to the claims occurred in this District and division.

3.     Plaintiff asserts state based claims under the supplemental jurisdiction of this court, pursuant to 28 U.S.C. §1367.

## III.  PARTIES

4.     Plaintiff Likesha Hill-Hannah (hereinafter, "Ms. Hill") is a resident of Stone Mountain, Georgia, and at all times relevant to this complaint, was employed by Defendants.

5.     Plaintiff is an eligible employee under §§ 203(e)(1), 206 and 207 of the FLSA during the period in which she was employed by Defendants.

6.     Defendants are employers as defined by § 203(d) of the FLSA and are therefore subject to the provisions of the FLSA, as amended.

7.     Defendant, ESO Management LLC, is a for-profit corporation subject to service at its principal place of business at 5755 Dupree Drive NW, Suite 200, Atlanta, GA, 30327.  ESO Management LLC can also be served via its registered agent URS Agents, LLC at 3675 Crestwood Pkwy NW, Suite 350, Duluth, GA, 30096.

8.     Defendant, Ortho Sport & Spine Physicians, LLC is a for-profit corporation subject to service at its principal place of business at 5788 Roswell Road NE, Atlanta, GA, 30328, and can also be served via its registered agent at Yasha Heidari at Heidari Power Law Group LLC, 600 Pinnacle Ct # 685, Norcross, GA 30071.

9.     Defendant, AVO Real Estate Holdings, is a for-profit corporation subject to service at its principal place of business at 2436 N Federal Highway Lighthouse Point, FL 33064.  AVO Real Estate Holdings can also be served via its

registered agent CT Corporation at 1200 South Pine Island Road Plantation, FL 33324.

## IV.  GENERAL ALLEGATIONS

10.    Plaintiff was employed by ESO Management LLC, Ortho Sport & Spine Physicians and AVO Real Estate Holdings ("collectively ESO") through a staffing agency to perform Human Resource services for ESO's integrated enterprise of businesses including but not limited to: ESO Management LLC, Ortho Sport & Spine Physicians and AVO Real Estate Holdings.

11.    Additionally, Plaintiff provided HR services for two of ESO's affiliated companies in conjunction with HR Administrator, Gabriela Koeplin.

12.    Plaintiff was jointly employed by the ESO and its integrated enterprise of businesses from March 1, 2022 to November 14, 2022. She was retaliatorily discharged within minutes of  receiving Plaintiff's demand letter dated November 14, 2022.

13.     After one week on the job, Plaintiff's supervisor, Bill Pembroke, was impressed with her knowledge and experience in HR and offered to hire her as a full-time Human Resources Director after completing the requisite hours (720 hours) through the staffing agency.

14.    After completing the 720 hours in July 2022, Ms. Hill met with Mr. Pembroke and reached an agreement on essential terms including the scope of her

job duties, her office location, dedicated parking spot, a one year duration of contract, benefits, a salary of $100,000.00 and a start date of July 11, 2022.

15.     It was Ms. Hill's reasonable understanding that she had accepted the position and negotiated the essential terms of an employment agreement.

16.     In detrimental reliance on the agreement, Ms. Hill turned down other offers of employment and discontinued her enrollment in her PhD academic program in preparation to start the HR Director position on July 11, 2022.

17.     The week before Ms. Hill's start date, Bill Pembroke advised her that ESO's owner, Dr. Armin Oskouei, instructed him not to have her start until he returned from his trip to Africa.

18.     Mr. Pembroke apologized for the delay in her starting the position and informed Ms. Hill that she would have to wait approximately two weeks to officially come on board as a full-time employee.

19.     Mr. Pembroke informed Ms. Hill that he would increase her salary to $110,000.00 because he felt it was unfair, in light of their prior agreement on a start date, for her to have to wait to be hired.  Mr. Pembroke contacted the staffing agency, Execusource, and asked them to keep Ms. Hill on their payroll for two additional weeks.

20.     After approximately three weeks, Ms. Hill was called into a meeting with Mr. Pembroke where she was informed that Dr. Oskouei directed him to

rescind the offer of employment after she had already accepted the position.  Ms. Hill was surprised because Dr. Oskouei had not previously interjected in Mr. Pembroke's hiring decisions.

21.     In fact, Ms. Hill had recently hired a white female through Execusource and paid a 25% fee to avoid the 720 hours and bring her on directly as a full-time employee, without any input from Dr. Oskouei. Mr. Pembroke stated that Dr. Oskouei explained that he did not need an HR Director or a full HR department.

22.     Two black HR assistants were fired that day and Ms. Hill was told she could continue working through the staffing agency.

23.     Approximately a month later, Ms. Hill was surprised to learn that Dr. Oskouei had given permission for an HR Director to be hired.  Despite being the sole manager of HR functions, Ms. Hill was not made aware of the HR Director job opening.  It was not until Ms. Hill learned about and expressed her interest in the position that she was invited to apply for it.

24.     Ms. Hill did apply on Thursday, September 29, 2022 and interviewed with CEO Steve Youd and COO Mike Maselli.  The following morning, Steve Youd informed Ms. Hill that the company had decided to go with a white male candidate and that he would start the following Monday, and Ms. Hill was asked to meet with and train the white male.

25.    At this point, it became clear that Ms. Hill was never seriously considered for the position as an offer had already been extended and accepted by the white male candidate before she was invited to apply.

26.    After making significant improvements to ESO's Human Resource operations by identifying and rectifying numerous EEO, Immigration and FLSA violations occurring within the various business units, Ms. Hill was denied the HR Director position and it was given to a white male who was less qualified than her.

27.    Ms. Hill was clearly being subjected to race and sex-based discrimination when the position was given to a less qualified white male, after Ms. Hill was promised the position and then told that a full-time HR Director was not needed.

28.    The denial of the HR Director position was also a result of retaliation for Ms. Hill advocating to hold the ESO's business units accountable for complying with various laws regarding non-discrimination, wage and hour, immigration and taxation.

29.    While performing human resources functions for all Dr. Oskouei's businesses, Ms. Hill was repeatedly asked to perform tasks that were a violation of non-discrimination laws, immigration law and the Fair Labor Standards Act.

30.    For example on or about July 7, 2022, Ms. Hill informed Chief Operating Officer of Ortho Sport and Spine Physicians, LLC, Mike Maselli and

Intake Director of Ortho Sport and Spine Physicians, LLC, Yanci Galan that a female Intake Specialist, had allowed her United States work authorization to expire and was therefore no longer eligible to work in the United States.

31.    Ms. Hill began drafting a termination letter for the female Intake Specialist.  Mike Maselli and Yanci Galan asked her to "have a heart" and find a way to keep the Intake Specialist employed.  Ms. Hill's professional advice was to follow the law and terminate her with the expectation to re-hire her after she secured a new work authorization.  Her advice was overridden and she was told to hire the Intake Specialist as an independent contractor, even though she did not fit the definition of such under the Fair Labor Standards Act.

32.    Against Ms. Hill's advice, the Intake Specialist was terminated on Friday, July 8, 2022 and re-hired as an independent contractor on Monday, July 11, 2022.  Again, Ms. Hill advised her supervisor, Mr. Pembroke that she did not agree with the decision and had serious concerns about violating employment immigration and wage and hour laws.  Mr. Pembroke agreed with her professional opinion and assured her "we'll work on these blatant violations once you are hired on as the HR Director."

33.    ESO's refusal to hire Ms. Hill as the permanent HR Director was also the result of her persistent advocacy for compliance with the Fair Labor Standards Act.  She was repeatedly asked to hire hourly employees on a salaried status to

avoid paying overtime.  Ms. Hill raised concerns that if scrutinized by the DOL, the positions would not qualify as salaried positions.

34.    Nevertheless, Defendants proceeded with misclassifying hourly employees as salaried, and Ms. Hill was accused of not being a "team player" for persistently advising against misclassifying employees.

35.    On several occasions Ms. Hill was asked to terminate minority employees who complained about the hostile work environment created by the physicians.   White physicians with a history of having violent, demeaning outbursts were allowed to remain employed while the minority complainants were terminated for little to no reason at all.

36.    For example, Ms. Hill was often told that employees who had filed discrimination complaints were terminated because they had performance issues, but after investigating their claims, she learned that there were often no record of previous disciplinary actions to justify the termination.

37.    Ms. Hill repeatedly raised concerns regarding various discriminatory terminations conducted, without any documented justification for the termination. Again, her concerns were discarded and she was accused of not being a team player.  Due to Ms. Hill's reluctance to break state and federal laws and/or violate the company's written policies, she was retaliated against and denied the HR Director position.

38.    Ms. Hill engaged in protected activity by opposing and advising ESO against misclassifying employees and violating employee rights to work in an environment free of discrimination and retaliation.  While she did her best to help the company navigate important legal compliance standards, her efforts only earned her the reputation with senior management of not being a "team player" and the denial of a promotion to the permanent HR Director position, which she had already accepted.

39.    Defendant companies' owner, Dr. Oskouei, viewed a black female who was committed to lawful human resource management practices as a hindrance to ESO's normal business practices and denied Ms. Hill the HR Director position by supposedly eliminating it, only to repost it weeks later and offer it to a less qualified white male at $30,000 more that was offered to Ms. Hill.

40.    Ms. Hill also observed that ethnic minorities were routinely terminated without good cause and replaced by white employees at a higher salary. For example, a Director of Clinical Operations was unjustly terminated without any due process.  The Director had never been formally disciplined and Ms. Hill had never received any complaints against him in the HR department.  In fact, the feedback Ms. Hill received about The Director from employees, had been overwhelmingly positive.   The Director and Ms. Hill frequently drafted and implemented policies to bring the company into legal compliance.

41.     Without Ms. Hill's knowledge, the Director, who is of Mexican descent, was secretly terminated without following the company's progressive disciplinary process, and was replaced by two less qualified white females.  Ms. Hill raised concerns about the impropriety of the Directors discriminatory termination.

42.     During the course of Ms. Hill's employment, she investigated one and was made aware of multiple sexual harassment allegations.   Ms. Hill's investigation revealed that improper leader - subordinate relationships were alleged and substantiated.

43.     For example, she investigated a claim that the CEO of one of ESO's affiliated companies, was having an affair with his HR Administrator.  When this was brought to Dr. Oskouei's attention, rather than addressing the issue, he immediately spun off the company division to avoid bringing all his company's under scrutiny should the sexual harassment claim result in litigation.

44.     In addition to the above mentioned CEO's inappropriate relationship with the HR Administrator, it is noted that the CEO made inappropriate comments to a female employee in the Intake department.  The CEO lustfully stared at the employee and asked her for "a bite of her meal."  The employee interpreted the comment as a thinly veiled reference to oral sex.

45.    The staring and sexual innuendo made the employee extremely uncomfortable but she did not want to report the incident out of fear of retaliation. She specifically expressed that she had witnessed other minorities who complained be terminated and was fearful that she would experience the same fate if ESO learned of her complaint.

46.    As requested by the employee, Ms. Hill documented the incident in confidence to create a record should it occur again, but Ms. Hill did express her concerns with management that more needed to be done to ensure that employees felt comfortable complaining about sexual harassment. Her concerns were ignored.

47.    Ms. Hill also noticed that Dr. Oskouei has a strange pattern of promoting men who sexually harass women in his company.  The CEO of AVO Real Estate Holdings was accused several times of sexual harassment, yet he was promoted to CEO of AVO Real Estate Holdings.

48.    A female Clinic Manager sincerely expressed her concern to Ms. Hill during her exit interview and asked that Ms. Hill look further into allegations made against the CEO to protect female employees from experiencing sexual harassment in the future.

49.    Based on Ms. Hill's own personal experience with sexual harassment at the company, she was inclined to believe the allegations made against the AVO CEO.  For example, during the July 4th 2022 celebration Ms. Hill planned for

employees, the CEO approached Ms. Hill and told her that she had accidentally dialed his phone over the weekend.  The CEO told her the call was placed around 2am and it went to his voicemail.  He insinuated that the voicemail had captured Ms. Hill having sex and laughed that he had listened for several minutes.

50.    Ms. Hill was horrified by the comment and asked him to let her hear the recording, at which point he claimed he had deleted it.

51.    For approximately a week, Ms. Hill endured extreme fear, anxiety, depression and emotional distress at the thought that the CEO had a sexual recording of her in his possession that he could share with her superiors and colleagues, or use as leverage against her.  She obsessed on how the revelation of a sexual recording would negatively impact her family and professional career.  She cried and suffered from loss of sleep and appetite.

52.    A week later, Ms. Hill asked the CEO to check his phone and saw that the voicemail was still on his phone.  She then listened to the recording which only sounded like a television playing on a news station and afterwards she deleted the message.

53.    Ms. Hill was very offended that the CEO falsely implied that the recording was of a sexual nature, knowing that it would likely cause her severe emotional distress.  This experience gave credence to the harassment allegations Ms. Hill had received about the CEO in the past.  Ms. Hill also calculated that

complaining about the CEO's conduct would likely result in her termination, so she did not report him at the time.

54.    ESO and its integrated enterprise of affiliates list themselves as equal opportunity employers but do not follow practices to meet those requirements. Positions are not posted and everyone is not given an equal opportunity to apply.

55.    Hiring decisions were often based on age, race, sex, nepotism, and inappropriate relationships.

56.    For example, on the same day Ms. Hill was hired as an agency worker, a younger white female Recruiter (under 40 years of age) was also hired but was brought on as a direct hire with a higher salary than Ms. Hill's (the HR Director).   The Recruiter had no experience as she had never recruited before in her professional career.

57.    After several months, it became obvious that the Recruiter could not meet the demands of the recruiting position.  She was removed from the recruiting position and given a position as a Marketing Manager with the Marketing division by Dr. Oskouei.  The Recruiter had no experience in marketing either but she was allowed to remain employed.

58.    In stark contrast, Ms. Hill observed that the qualifications of ethnic minorities were excessively scrutinized. Ms. Hill assumed the recruiting functions, built and launched an applicant tracking system that the recruiter was unable to

14

complete. Ms. Hill performed the additional recruiting functions until the job was stripped away from her without being offered any additional compensation for performing duties outside of her job description.

59.     This is clearly an example of a younger white female recruiter being given a position to keep her employed under Dr. Oskouei's companies due to her race and youth because she did not have experience to otherwise justify her employment.  With Ms. Hill's 12 years in human resources, 15 years in business, a bachelor degree in Business Administration, a master's degree in Human Resources, and as a doctoral student with a proven track record, she was not offered a position within any of Dr. Oskouei's businesses that she supported over the past 7 months.

60.     During her time at Dr. Oskouei's company, Ms. Hill has been subjected to age, race, and gender discrimination, as well as sexual harassment and retaliation.

## V.   CAUSES OF ACTION

### COUNT ONE
### (TITLE VII VIOLATION-SEXUAL HARASSMENT)

61.     Plaintiff re-alleges the foregoing allegations as if set forth herein.

62.     Plaintiff filed a timely complaint with the U.S. Equal Employment Commission alleging violations of Title VII of the Civil Rights Act of 1964 (42 U.S.C. 2000e2(a) and 42 U.S.C. 2000e-3(a)), which holds employers strictly liable

for the harassing conduct of their supervisors resulting in tangible employment actions.  See attached a right to sue letter received from the EEOC. (Exhibit A)

63.    Plaintiff and Defendants have entered a tolling agreement, extending Plaintiff's Title VII claim filing period to February 16, 2023.

64.    Defendants' CEO of AVO Real Estate Holdings LLC, willfully and deliberately informed Ms. Hill that he had a recording of her engaging in sexual intercourse, with the intent to cause her emotional distress and or should have reasonably anticipated that the assertion would cause her emotional distress.  This constitutes severe conduct that is also sufficient to contribute to a hostile work environment, as defined by Title VII of the Civil Rights Act of 1964.

65.    Rescinding and or failing to honor an employment agreement to hire Ms. Hill as an HR Director also constitutes a tangible employment action.

66.    The above referenced evidence that Ms. Hill was harassed, and terminated within minutes of submitting her demand letter articulating her legal claims, all of which constitute additional adverse actions.

67.    Accordingly, ESO is strictly liable for its supervisor's conduct of sexually harassing Ms. Hill

**COUNT TWO**
**(TITLE VII VIOLATION-RACE, SEX AND AGE DISCRIMINATION )**

68.    Plaintiff re-alleges the foregoing allegations as if set forth herein.

69.    Plaintiff was subjected to race and sex-based discrimination when the position she was promised was given to a less qualified white male, after Ms. Hill was told that a full-time HR Director was no longer needed.  Having already successfully performed the duties of the position that the white male was hired for, Defendants have no legitimate non-discriminatory reason to deny Plaintiff the position.

70.    Plaintiff was subjected to age and race discrimination when, on the same day Ms. Hill was hired as an agency worker, a younger white female recruiter (under 40 years of age) was also hired but was brought on as a direct hire with a higher salary than Ms. Hill (the HR Director).  The recruiter had no experience as she had never recruited before in her professional career.

71.     When the white recruiter was unable to perform the duties, the duties were transferred to Ms. Hill without any additional compensation to her.

## COUNT THREE
## (FLSA RETALIATION)

72.    Plaintiff re-alleges the foregoing allegations as if set forth herein.

73.    Defendants violated the anti-retaliation provisions of the Fair Labor Standards Act of 1938, which protects employees from being treated adversely because they opposed practices deemed to be unlawful under the Act.

74.    Defendants subjected Plaintiff to adverse actions that could reasonably dissuade employees from complaining about unlawful wage and hour practices.

75.    Defendants willfully, knowingly and recklessly violated employees rights under §§ 203 and 207 of the FLSA by misclassifying them to avoid payment of overtime compensation.  Plaintiff's offer to become HR Director was rescinded because she repeatedly and persistently voiced her opposition to Defendants' FLSA violations.

## COUNT FOUR
## (TITLE VII RETALIATION)

76.    Plaintiff re-alleges the foregoing allegations as if set forth herein.

77.    Defendants also violated the anti-retaliation provisions of Title VII of the Civil Rights Act of 1964, which protects employees from adverse treatment resulting from their opposition to harassing, discriminatory and retaliatory conduct.

78.    Defendants willfully, knowingly and recklessly violated Title VII by subjecting minority employees to discriminatory practices, in hiring, promotions, discipline and compensation. Plaintiff's offer to become HR Director was rescinded because she repeatedly and persistently voiced her opposition to Defendants' discriminatory conduct.

## COUNT FIVE
## (BREACH OF CONTRACT)

18

79.   Plaintiff re-alleges the foregoing allegations as if set forth herein.

80.   Plaintiff was promised a promotion to HR Director after negotiating the essential terms of her promotion, including the scope of her job duties, her office location, dedicated parking spot, a one year duration of contract, benefits, a salary of $100,000.00 and a start date of July 11, 2022.   The terms were memorialized in a written offer letter, and those terms were accepted by Ms. Hill. This constitutes an enforceable agreement under Georgia Law, and Defendant's breached the agreement when it rescinded the promotion for discriminatory reasons referenced above.

81.   To her detriment, Plaintiff relied on the agreement she reached with Defendants to become their HR Director, and has incurred damages as result. *See Towns v. Directors Guild of Am., Inc*., 1:19-CV-03248, 2020 WL 4001131, at *5 (N.D. Ga. July 15, 2020), reconsideration denied sub nom. *Towns v. And Action*, LLC, 1:19-CV-3248-MLB, 2021 WL 2607042 (N.D. Ga. Feb. 1, 2021), and aff'd, 21-12044, 2022 WL 169017 (11th Cir. Jan. 19, 2022) (under Georgia law, employees' detrimental reliance on promise of employment for specific duration and rate of pay were sufficient to permit a jury to award recovery under promissory estoppel theory).

## COUNT SIX
## (NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)

82.     Plaintiff re-alleges the foregoing allegations as if set forth herein.

83.     Defendants caused Ms. Hill to experience mental suffering and emotional anguish caused by Defendant's CEO of AVO Real Estate Holdings LLC when he informed Ms. Hill that he had an audio recording of her having sexual intercourse on his cell phone.

84.     Defendants' CEO caused Ms. Hill to believe that he had a sexual recording for approximately a week, and he reasonably should have known that he was causing her mental anguish and emotional distress.

85.     His conduct caused her to experience severe anxiety, humiliation, depression, sleeplessness, nightmares and loss of appetite.

## PRAYER FOR RELIEF

1.  Wherefore, Plaintiff prays that process is issued according to law and demands judgment against Defendants as follows:

    a.  All damages that may be awarded under the Title VII and FLSA, including lost wages and back pay; general compensatory damages for retaliation including but not limited to damages for mental anguish and emotional distress; and liquidated damages;

    b.  All damages for breach of contract provided for under Georgia law;;

    c.  Special damages to the extent allowed by law;

d.  Injunctive relief under Title VII  and FLSA preventing and prohibiting Defendants from engaging in its present practices in violation of the laws cited herein; as well as damages under Title VII for lost wages based on retaliatory conduct;

e.  Reasonable attorney's fees and expenses and costs pursuant to 42 U.S.C. §1988;

f.  Such other and further and different relief as this court deems just and appropriate.

Respectfully submitted, the 16th day of February 2022.


/S/ Arnold J. Lizana
Law Offices of Arnold J. Lizana III
GA Bar No.: 698758
1175 Peachtree Street NE, 10th Floor
Atlanta, GA 30361
T: (404) 207-1559
F: (470) 231-0672
alizana@attorneylizana.com

**ATTORNEY FOR PLAINTIFF**