

Kennesaw Claims Branch
PO Box 3030 | Kennesaw GA 30156-3030
3550 George Busbee Pkwy Suite 149 | Kennesaw GA 30144-6608
p. 855.240.7255 | f. 517.327.2387 | auto-owners.com
Kennesaw.clm@aoins.com

January 25th, 2023

Georgia Contractors Group LLC
c/o Mr. Ronald L. Lester, Registered Agent
2980 Fallwood Drive NW
Marietta, Georgia 30064-6223

Lester Custom Homes LLC
c/o Ms. Ann. L. Campbell, Registered Agent
2980 Fallwood Drive NW
Marietta, Georgia 30064-6223

Mr. Ronald L. Lester
2980 Fallwood Drive NW
Marietta, Georgia 30064-6223

Ms. Ann L. Campbell
2980 Fallwood Drive NW
Marietta, Georgia 30064-6223

RE: Claim Number:       300-0753908-2022
    Insured:            Lester Custom Homes LLC and Georgia Contractors Group LLC
    Reported Date of Loss: 07/01/2022
    Policy Number:      80378862
    Subject:            **Reservation of Rights**
    Loss Location:      2132 Shillings Chase Dr NW
                        Kennesaw, GA 30152-4174

Dear Sir or Madam,

    I am a field claims representative for Auto-Owners Insurance Company ("**Auto-Owners**"), which issued the above-referenced tailored protection insurance policy (the "**Policy**") to Lester Custom Homes LLC and Georgia Contractors Group LLC for the effective period of March 29, 2022 through March 29, 2023.

Serving our policyholders and agents since 1916

**EXHIBIT 3**

*Auto-Owners*
INSURANCE

This letter is a supplement to Auto-Owners' initial written reservation of rights dated December 23, 2022 with respect to the above-referenced claim. Auto-Owners has now completed a review of the complaint ("**Complaint**") filed on or about November 30, 2022 in the Superior Court of Cobb County, Georgia, and captioned *Rental Asset Management, LLC v. Ronald L. Lester, Ann L. Campbell a/k/a Ann L. Campbell-Lester, Georgia Contractor Group, LLC, Capital City Home Loans, LLC, and John Doe #1*, Civil Action No.: 2022-0153214-CV (the "**Lawsuit**"). Having done so, this letter is intended to advise you of Auto-Owners' coverage position in this matter as it now stands and to inform you of certain aspects of the Policy that may apply to the facts and legal claims alleged in the Complaint provided to Auto-Owners.

Please be advised that since litigation is just beginning, our investigation of the above-referenced claim will continue, and Auto-Owners reserves the right to amend or supplement its reservation of rights at any time.

## Factual Background

The following is a recitation of the relevant allegations set forth in the Complaint. These allegations are assumed to be true solely for the purposes of this coverage position letter and Auto-Owners' reservation of rights, and Auto-Owners makes no admission regarding the truth of these allegations by reciting them here.

Rental Asset Management, LLC ("**Plaintiff**") owns residential real property located at 2132 Shillings Chase Drive, Kennesaw, Georgia (the "**RAM Property**"). [¶ 1]. The RAM Property includes a two-story home that Plaintiff rented to tenants. [¶ 8]. Ronald L. Lester and Ann L. Campbell a/k/a Ann L. Campbell-Lester (the "**Lesters**") own real property located at 2010 – 2030 Shillings Road NW, Kennesaw, Georgia (the "**Lester Property**") that adjoins the RAM Property by a common border on the north side of the RAM Property. [¶ 10].

Plaintiff claims the Lesters, through Georgia Contractor Group, LLC ("**GCG**") (together with the Lesters, the "**Defendants**"), "cleared much of their land and removed virtually all grass and growth area" from the Lester Property, and constructed a garage "at an enhanced elevation near the rear line." [¶¶ 11 –12]. The Defendants also failed to maintain silt fences as required during the construction process, and "[t]hese events concentrated the flow of water and mud and directed it toward" the RAM Property. [¶¶ 13 – 14]. Despite written notice from the Plaintiff to Ronald L. Lester and GCG dated July 1, 2022, the Defendants "refused to take action to remedy or alleviate the flooding condition" on the RAM Property. [¶¶ 15 – 16].

Plaintiff further alleges that Defendants also "added fill dirt and merged fill dirt so as to increase the slope" of the Lester Property along its rear border. [¶ 19]. In sum, Plaintiff asserts that the "Defendants' failure to contain silt and dirt on [the Lester] Property during construction activity led to severe and concentrated sheet flow of mud onto and through" the RAM Property. [¶ 25]. The mud flow and flooding conditions caused the Plaintiff's tenant to leave the RAM Property, causing Plaintiff to lose monthly rental income from August through December of

2022. [¶ 27]. The same conditions further caused damage to, and washed-out stones and pipes from, a French drain Plaintiff had constructed on the RAM Property, as well as damage to the finished basement area "due to the pooling and flow of muddy water at the basement door." [¶ 28]. In sum, the Complaint asserts that these damages occurred because the Defendants "knowingly, willfully and intentionally collected and diverted excess storm water and mud onto" the RAM Property. [¶ 29].

Based on these allegations, the Complaint asserts legal claims against the Defendants for trespass, private nuisance, negligence, and injunctive relief. [See ¶¶ 30, 37–38, 44, and 46]. Each of these claims is based on the central allegation of property damage resulting from the Defendants' collection, diversion, dumping, and / or concentration of excess stormwater and mud from the Lester Property onto the adjoining RAM Property. [See ¶¶ 29, 36–37, 40, and 46]. For these claims, Plaintiff seeks an injunction, actual damages, punitive damages under O.C.G.A. § 51-12-5.1, and an award of attorney fees under O.C.G.A. § 13-6-11. [¶¶ 33–34].

## The Policy and Coverage Issues

The Policy is a commercial general liability policy with an "each occurrence" limit of $1,000,000 and a general aggregate limit of $1,000,000. The allegations of the Complaint as summarized above implicate the following terms of the Policy.

Based on the allegations of the Complaint and the facts available to Auto-Owners at this time, it appears that some or all of the claims for damages asserted against the Defendants in the Lawsuit may not be covered under the Policy. Please note that the following evaluation and discussion of certain specific terms and provisions of the Policy is based on the incomplete information currently available to Auto-Owners at this stage of its investigation. Accordingly, the identification of specific terms or provisions of the Policy herein is not a waiver of any other term, provision, condition, limitation, or defense of such policies that may be applicable:

*SECTION I – COVERAGES*

*COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY*

1. *Insuring Agreement*

   a. *We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:*

      *(1) The amount we will pay for damages is limited as described in Section III – Limits of Insurance; and*

**Auto-Owners**
INSURANCE

    (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

  b. This insurance applies to "bodily injury" and "property damage" only if:

    (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    (2) The "bodily injury" or "property damage" occurs during the policy period; and

    (3) Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

  c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

  d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

    (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

    (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

    (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

*Auto-Owners*
INSURANCE

> ***e.*** *Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".*

***SECTION V – DEFINITIONS***

* * *

> ***13.*** *"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.*

* * *

> *17. "Property damage" means:*
>
> ***a.*** *Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or*
>
> ***b.*** *Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.*

* * *

Claims for "*property damage*" are covered only if such "*property damage*" is caused by an "*occurrence*" as that term is defined in the Policy. And under the Policy, the term "'*occurrence*' *means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.*" The damages alleged in the Complaint may not have been caused by an "*occurrence*" as defined in the Policy, but instead from intentional construction that resulted in the Defendants' alleged collection, diversion, dumping, and/or concentration of excess stormwater and mud from the Lester Property onto the adjoining RAM Property. Auto-Owners therefore reserves its right to deny coverage for this claim based on the Policy's definition of an "*occurrence*" to which coverage extends.

The Policy contains the following exclusions:

> *2.* ***Exclusions***
>
> *This insurance does not apply to:*
>
> ***a. Expected Or Intended Injury***
>
> *"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.*



<p style="text-align:center">* * *</p>

The Policy specifically excludes from coverage any claim for "'*property damage*' *expected or intended from the standpoint of the insured.*" As recited above, the Complaint alleges that the Defendants' "knowingly, willfully and intentionally collected and diverted excess storm water and mud onto" the RAM Property. Auto-Owners therefore reserves its right to deny coverage for this claim based on the Policy's expected or intended injury exclusion.

    *f.*  **Pollution**

        (1)  "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

            (a)  At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

                (i)  "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

                (ii)  "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

                (iii)  "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire"[.]

            (b)  At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

            (c)  Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

                (i)  Any insured; or



      (ii)   Any person or organization for whom you may be legally responsible; or

  (d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

      (i)   "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

      (ii)   "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

      (iii)   "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

  (e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

  (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or



 **(b)** *Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".*

 *However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.*

<p align="center">* * *</p>

**SECTION V – DEFINITIONS**

<p align="center">* * *</p>

**15.** *"Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.*

The Policy specifically excludes from coverage any claim for "'*property damage*' *arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants*[.]'" The term "*pollutants*" is defined to "*mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.*" It appears that the excess stormwater and mud allegedly collected, diverted, dumped, and/or concentrated from the Lester Property to the RAM property may constitute "*pollutants*" as defined in the Policy. Auto-Owners therefore reserves its right to deny coverage for this claim based on the Policy's pollution exclusion.

The Policy defines who is an insured under the Policy as follows:

**SECTION II – WHO IS AN INSURED**

1. *If you are designated in the Declarations as:*

 **a.** *An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.*

 **b.** *A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.*

 **c.** *A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.*



    **d.** *An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.*

    **e.** *A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.*

2. Each of the following is also an insured:

    **a.** *Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business....*

<div align="center">* * *</div>

**SECTION V – DEFINITIONS**

<div align="center">* * *</div>

20. *"Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.*

As an initial matter, it appears that although GCG, as a named insured, is an "insured" under the Policy, one or both of the Lester Defendants may not be an "insured" to whom coverage is extended under the Policy. The terms of the Policy provide that members of GCG "*are also insureds, but only with respect to the conduct of [GCG's] business.*" Managers of GCG are also insureds, "*but only with respect to their duties as GCG managers.*" Employees of GCG are insureds under the Policy, "*but only for acts within the scope of their employment by you or while performing duties related to the conduct of [GCG's] business.*" Any "*volunteer workers*" of GCG are insureds under the Policy "*only while performing duties related to the conduct of [GCG's] business.*" Based on these applicable definitions of an "insured" under the Policy, and to the extent either or both of the Lester Defendants are not members, managers, employees, or volunteer workers of GCG, Auto-Owners reserves the right to deny coverage. Moreover, Auto-Owners also reserves the right to deny coverage to either or both of the Lester Defendants to the extent the Complaint seeks to impose liability on the basis of their individual ownership of the Lester Property, and not on the basis of their acts and/or duties as a member, manager, employee, or volunteer worker of GCG.

*Auto-Owners*
INSURANCE

The Policy contains the following limits of insurance provisions:

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

    a. Insureds;

    b. Claims made or "suits" brought; or

    c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

    a. Medical expenses under Coverage **C**;

    b. Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

    c. Damages under Coverage **B**.

\* \* \*

Auto-Owners reserves the right to enforce a proper limit of insurance regardless of damages alleged by Plaintiff. Auto-Owners further reserves the right to a proper priority of coverage or sharing of coverage, should other coverage be available to cover Plaintiff's claims.

The Policy contains the following conditions precedent to coverage:

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

\* \* \*

2. **Duties In The Event of Occurrence, Offense, Claim Or Suit**

    a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

        (1) How, when and where the "occurrence" or offense took place;

        (2) The names and addresses of any injured persons and witnesses; and



(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If any claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of any claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of any claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any correspondence, demands, notices, summonses or papers in connection with any claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of any claim or defense of any "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us**

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable

*Auto-Owners*
INSURANCE

*under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.*

\* \* \*

Auto-Owners reserves the right to limit or deny coverage should it be found that any of the Defendants have failed to satisfy the conditions precedent to coverage set forth in the Policy.

**Reservation of Rights**

Auto-Owners' investigation of this matter and analysis of the Complaint indicates that coverage under the Policy for the damages sought in the Lawsuit may be limited or precluded pursuant to the above-referenced terms and conditions of the Policy. Accordingly, Auto-Owners reserves its rights, to the fullest extent permitted by Georgia or other applicable law, to limit or deny coverage. This letter is not intended to be exhaustive of all coverage defenses. There could be other reasons why the damages sought in the Lawsuit are not covered under the Policy, and by quoting and referring to specific Policy provisions, Auto-Owners is not waiving its right to deny coverage based on any non-referenced provisions. Auto-Owners is reserving all of its rights, including but not limited to the right to deny coverage based on any applicable provision in the Policy or any reason under the law.

Auto-Owners further reserves the right to litigate all coverage issues through a declaratory judgment action, either in an independent action or by intervention in the Lawsuit, to seek an allocation of covered damages, or to deny coverage in whole or in part to one or more potential claim or insured. To the extent any judgment is entered which fails to differentiate between covered and uncovered categories of damages, Auto-Owners reserves the right to deny indemnity coverage for the entire unallocated award. This reservation includes the right to enforce its reimbursement rights by litigation following any payment, settlement, indemnity, judgment, or appeal.

Auto-Owners advises you that no action heretofore or hereafter taken by or on behalf of Auto-Owners shall be construed as a waiver of any rights it may have with respect to the Policy. Auto-Owners specifically reserves the right to rely upon any and all policy defenses, and further advises you that any action taken by or on behalf of Auto-Owners shall in no way change, waive, invalidate, or forfeit any of the terms, conditions, limitations, and requirements of the Policy ,or any of the rights that Auto-Owners has to deny or limit coverage pursuant to the Policy, in whole or part.

Auto-Owners has retained attorney M. Boyd Jones of the firm Bush, Reed, Jones & Leeper, P.C. to defend each of you in the Lawsuit. If you object to Auto-Owners appointment of Mr. Jones for any reason, please let me know as soon as possible in writing.

**Auto-Owners**
INSURANCE

    We trust your understanding of the above-stated coverage position is clear. Should you disagree with our position, however, please promptly communicate your notice of disagreement to the undersigned in writing. Having adequately considered the detailed reasoning for our coverage position, we request that you describe the basis for your disagreement so that we can provide to you an adequate reply and/or re-evaluation of that position.

    Should you have any questions regarding the above, please do not hesitate to contact me.

    Sincerely,

Beau Watkins
Field Claims Representative
Auto-Owners Insurance
(770) 424-6582 X 55880

