

**CT Corporation**
**Service of Process Notification**
01/18/2023
CT Log Number 543038346

## Service of Process Transmittal Summary

**TO:**  Dania Arnodo
Universal Property & Casualty Insurance Company
1110 W COMMERCIAL BLVD
FORT LAUDERDALE, FL 33309-3747

**RE:**  **Process Served in Georgia**

**FOR:**  Universal Property & Casualty Insurance Company  (Domestic State: FL)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | RHONDA A. JACKSON, as ADMINISTRATRIX of the ESTATE of JAMES JACKSON vs. UNIVERSAL PROPERTY & CASUALTY INSURANCE COMPANY |
| **CASE #:** | 23A00192 |
| **NATURE OF ACTION:** | Insurance Litigation |
| **PROCESS SERVED ON:** | C T Corporation System, Lawrenceville, GA |
| **DATE/METHOD OF SERVICE:** | By Process Server on 01/18/2023 at 13:56 |
| **JURISDICTION SERVED:** | Georgia |
| **ACTION ITEMS:** | CT will retain the current log |
| | Image SOP |
| | Email Notification,  Dania Arnodo  da4017@universalproperty.com |
| | Email Notification,  Keith Peer  imua2015@universalproperty.com |
| | Email Notification,  Darryl Lewis  dl0801@universalproperty.com |
| | Email Notification,  Todd Brant  teb1111@universalproperty.com |
| | Email Notification,  Don Weiss  dw0819@universalproperty.com |
| | Email Notification,  Rafael Ferrans  rf1017@universalproperty.com |
| | Email Notification,  Asiah Waite  ak0424@universalproperty.com |
| | Email Notification,  Lidia Gonzalez  lg0217@universalproperty.com |
| | Email Notification,  GABRIELLE WALLICK  gd0619@universalproperty.com |
| | Email Notification,  Pamela Jackson  pkj0211@universalproperty.com |
| | Email Notification,  Lucretia Barrett  lb0315@universalproperty.com |
| **REGISTERED AGENT CONTACT:** | C T Corporation System
289 S. Culver St.
Lawrenceville, GA 30046
866-539-8692
CorporationTeam@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other



**CT Corporation**
**Service of Process Notification**
01/18/2023
CT Log Number 543038346

information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.



# PROCESS SERVER DELIVERY DETAILS

**Date:**                              Wed, Jan 18, 2023
**Server Name:**                       Drop Service

| | |
|---|---|
| Entity Served | UNIVERSAL PROPERTY & CASUALTY INSURANCE COMPANY |
| Case Number | 23A00192 |
| Jurisdiction | GA |

| Inserts | | |
|---|---|---|
| | | |



23A00192

No. _____

Date Summons Issued and Filed
1/13/2023

/s/ Monica Gay
_____
Deputy Clerk

Deposit Paid $ _____

**STATE COURT OF DEKALB COUNTY**
GEORGIA, DEKALB COUNTY

**SUMMONS**

Rhonda A. Jackson, as Administratrix of the
Estate of James Jackson
C/o Carson Jeffries, Carter Jeffries LLC
47 Perimeter Center East, Suite 530
Atlanta, GA 30346
(Plaintiff's name and address)

[ ]  **ANSWER**

[X]  **JURY**

**vs.**

Universal Property & Casualty Insurance Company

C/o CT Corporation System

289 S Culver St., Lawrenceville, Georgia 30046
(Defendant's name and address)

**TO THE ABOVE-NAMED DEFENDANT:**

You are hereby summoned and required to file with the Clerk of State Court, Suite 230, 2nd Floor, Administrative Tower, DeKalb County Courthouse, 556 N. McDonough Street, Decatur, Georgia 30030 and serve upon the plaintiff's attorney, to wit:

Carson Jeffries
Carter Jeffries LLC          (Name)
47 Perimeter Center East, Suite 530, Atlanta, GA 30346
(Address)
404-341-6653                    100139
(Phone Number)              (Georgia Bar No.)

an **ANSWER** to the complaint which is herewith served upon you, within thirty (30) days after service upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. (Plus cost of this action.)

Defendant's Attorney
_____

Third Party Attorney
_____

Address
_____

Address
_____

Phone No.          Georgia Bar No.

Phone No.          Georgia Bar No.

**TYPE OF SUIT**

☐ Account            ☐ Personal Injury
☒ Contract           ☐ Medical Malpractice
☐ Note               ☐ Legal Malpractice
☐ Trover             ☐ Product Liability
                     ☐ Other

☐ Transferred From _____

Principal    $ TBD

Interest     $ TBD

Atty Fees    $ TBD

**(Attach BLUE to Original and WHITE to Service Copy of complaint)**

summons1-2008rev

**IN THE STATE COURT OF DEKALB COUNTY**
**STATE OF GEORGIA**

| | |
|---|---|
| RHONDA A. JACKSON, as ADMINISTRATRIX of the ESTATE of JAMES JACKSON, | |
| Plaintiffs, | CIVIL ACTION NO. 23A00192 |
| vs. | |
| UNIVERSAL PROPERTY & CASUALTY INSURANCE COMPANY, | JURY TRIAL REQUESTED |
| Defendants. | |

### PLAINTIFF'S COMPLAINT

**COMES NOW Rhonda A. Jackson,** as Administratrix of the Estate of James Jackson, Plaintiff herein, by and through her undersigned counsel of record, and submits this, her Complaint for damages, hereby stating as follows:

### JURISDICTION AND VENUE

1. Plaintiff Rhonda A. Jackson, as administratrix of the Estate of James Jackson, is a Georgia Resident.

2. Defendant Universal Property & Casualty Insurance Company ("Universal") is a foreign insurance company registered to transact business in, and does transact business, in the state of Georgia. Defendant Universal maintains a registered agent in the state of Georgia and may be served through its registered agent, CT Corporation System, at 289 S Culver St., Lawrenceville, Georgia 30046. Venue is proper in this county pursuant to O.C.G.A. § 33-4-1(2) and/or (3), because Defendant maintained at the time of the events alleged herein and also currently maintains at least one or more place(s) of doing business or agent(s) in Dekalb County.

3. This Court has subject matter jurisdiction pursuant to the Georgia Constitution of 1983, Article VI, Section IV, Paragraph I.

## STATEMENT OF FACTS

4. In consideration for the premiums paid to Defendant Universal, Defendant Universal issued its Policy No. 1701-1700-9156 to James Jackson (the "Policy"). Exhibit A, the Policy.

5. The Policy insures against property damage to Plaintiff's home located at 20 Gibson Drive, Carrollton, Georgia 30117 ("Subject Property").

6. On or about January 13, 2021, the Subject Property experienced a direct sewage and water loss due to significant sewage overflow from the toilets in the Subject Property.

7. Plaintiff took immediate action that same day to address the sewage and water overflow loss and engaged the services of Premium Plumbing to both determine the cause of the overflow and mitigate any further damages to the structure of the Subject Property.

8. The cause of the overflow was determined to be a plumbing back up due to a soft tissue clog in the Subject Property's main sewage line within the Subject Property and on the residence premises.

9. On or about January 13, 2021, Client reported the loss to Universal.

10. Within two days of reporting the loss, Universal sent a representative field adjuster to evaluate Plaintiff's claim.

11. Despite Premier Plumbing being on site, the field adjuster refused to speak with Premier Plumbing to inquire as to the source of the overflow.

12. The field adjuster failed to conduct a reasonable inspection of the loss and did not exercise reasonable care or due diligence to investigate the loss, failing to collect photographs, moisture readings, or perform other standard insurance industry investigatory procedures or practices with respect to water or sewage loss claims.

13. On February 4, 2021, Universal's agent, Alder Adjusting, issued a denial letter to Plaintiff stating there was no coverage for the claim because Universal determined that the sewage backup and water overflow was "due to a clog in the main drain-line found in the front yard." Exhibit B, First Denial Letter.

14. The main sewage drain-line for the Subject Property is located in the rear, and not the front of the home.

15. As such, Universal's initial basis for denying the claim constituted a knowing misrepresentation to insureds of relevant facts related to their loss claim and a bad faith basis for issuing a denial.

16. Premium Plumbing, in response to Universal's denial of the claim, sent correspondence to Universal explaining that the clog was located in the main sewer line under the home due to a soft tissue clog and, further, that the Subject Property's main drain line exits the rear and not the front of the Subject Property.

17. On or about May 7, 2021 and in response to Premium Plumbing's letter, Universal's agent, Alder Adjusting, issued a supplemental denial letter with the contractually inaccurate statement that the Policy does not cover "a sewage backup that does not originate from within the dwelling." Exhibit C, Supplemental Denial Letter.

18. The Policy defines the "residence premises" as including not only the dwelling but also other "structures and grounds at the location" as well as that which is shown as the "residence premises" in the declarations:

> 11. "Residence premises" means:
>    a. The one family dwelling where you reside;
>    b. The two, three or four family dwelling where you reside in at least one of the family units; or
>    c. That part of any other building where you reside;
>    and which is shown as the "residence premises" in the Declarations.
>    "Residence premises" also includes other structures and grounds at that location.

19. The Policy provides coverage for *damage to* the Dwelling as caused by covered losses:

> SECTION I – PROPERTY COVERAGES
> A. Coverage A – Dwelling
>    1. We cover:
>       a. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and
>       b. Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises".

20. The Policy provides that direct physical loss to the dwelling is covered by:

> SECTION I – PERILS INSURED AGAINST
> A. Coverage A – Dwelling And Coverage B – Other Structures
>    1. We insure against risk of direct physical loss to property described in Coverages A and B.

21. The Policy provides that the discharge of pollutants is not covered under the terms of the Policy unless it is due to accidental discharge or overflow of water or steam from a storm drain, water, steam or sewer pipe off the residence premises or plumbing **on the residence premises**.

> SECTION I – PERILS INSURED AGAINST
> A. Coverage A – Dwelling And Coverage B – Other Structures
>
>    2. We do not insure, however, for loss:
>
>       c. Caused by:

(6) Any of the following:

(e) Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against named under Coverage C.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

**Exception To c.(6)**
Unless the loss is otherwise excluded, we cover loss to property covered under Coverage A or B resulting from an accidental discharge or overflow of water or steam from within a:

(i) Storm drain, or water, steam or sewer pipe, off the "residence premises"; or

(ii) Plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the "residence premises". This includes the cost to tear out and replace any part of a building, or other structure, on the "residence premises", but only when necessary to repair the system or appliance. However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the "residence premises".

Section I – Exclusion A.3. Water Damage, Paragraphs a. and c. that apply to surface water and water below the surface of the ground do not apply to loss by water covered under c.(5) and (6) above.

22. The facts show that the plumbing back-up occurred within the dwelling.

23. Even if it had not, however, nothing in the Policy dictates that the source of the plumbing back-up must be within the dwelling; rather, the Policy states that the back-up must occur in plumbing on the "residence premises," which includes the grounds around the dwelling.

24. As such, Universal has knowingly misrepresented to Plaintiff relevant policy provisions relating to the coverage at issue.

25. The plain construction of the foregoing Policy provisions is that the Subject Property is covered under the terms of the Policy.

26. Plaintiff affirmatively discharged her duties under the Policy after the loss.

27. On November 10, 2022, Plaintiff sent via statutory overnight delivery a bad faith demand letter pursuant to O.C.G.A. § 33-4-6 to Universal demanding payment within 60 days and a prompt, reasonable and accurate explanation of the grounds for any denial of coverage.

28. Plaintiff received no response to the bad faith demand letter.

29. The water loss caused structural, water, and mold damage to the Subject Property as well as its contents.

30. Universal has continued to fail to pay according to the terms of the Policy.

31. Universal's failure has prevented the timely remediation and restoration of the Subject Property, allowing the structure to continue to suffer the effects of the water damage and allowing the growth of toxic mold within the Subject Property.

32. Universal's failure has deprived Plaintiff of the use of the home, decreased the value of the home, and has further damaged Plaintiff who has incurred ongoing costs related to maintaining the damaged Subject Property.

33. Plaintiff, as a result of Universal's conduct, has incurred and continues to incur litigation costs, attorneys' fees, and consultant/expert fees associated with this matter.

<strong>COUNT ONE – BREACH OF CONTRACT</strong>

34. Plaintiff reincorporates the foregoing allegations contained in this Complaint as if fully set forth herein.

35. Plaintiff has performed all conditions, duties, and obligations pursuant to the Policy, including without limitation, the timely payment of premiums, timely notice of the claim, mitigation of damages, and/or Universal has waived any and all other conditions.

36. Universal is required to compensate Plaintiff for all direct physical losses under the terms of the Policy.

37. Despite Plaintiff's OCGA § 33-4-6 timely demand that Universal pay the covered losses, Universal has frivolously and baselessly failed and refused to pay Plaintiff's claim under the terms of the Policy, causing further delay and damage to Plaintiff's property.

38. Universal has failed to act in good faith and fair dealing under the terms of the Policy by refusing to properly investigate and pay Plaintiff's claim according to the terms of the Policy.

39. As a result of Universal's delay and denial of Plaintiff's claim, Plaintiff has sustained covered losses from direct physical damage to the insured Subject Property in an amount to be determined at trial.

40. Universal's breach of the Policy has resulted in damages to Plaintiff, and Plaintiff is entitled to the benefit of the bargain with Universal - full compensation of the covered losses under the Policy.

41. As a result of Universal's breach of the Agreement, Plaintiff is also entitled to compensation for the foreseeable damages arising from the breach of the contract, including without limitation damages from further structural deterioration and contamination of the dwelling and ongoing deterioration, contamination and damage to their personal property.

## COUNT TWO – O.C.G.A. § 33-4-6: BAD FAITH, ATTORNEY'S FEES AND LITIGATION COSTS

42. Plaintiff reincorporates the foregoing allegations contained in this Complaint as if fully set forth herein.

43. Universal has acted frivolously and without a reasonable basis or justification in contravention of its duty of good faith and fair dealing to achieve a proper disposition of the Plaintiff's claim.

44. Universal has not attempted in good faith to settle Plaintiff's claim when, under all of the circumstances, it could and should have done so had it acted fairly and honestly toward the Plaintiff and with due regard for their interests, namely, but not limited to, not attempting in good faith to effectuate prompt, fair, and equitable settlement of claims submitted in which liability has become reasonably clear (O.C.G.A. § 33-6-34(4)), knowingly misrepresenting to claimant **both** relevant facts **and** policy provisions relating to coverages at issue (O.C.G.A. § 33-6-34(1)), failing to adopt and implement procedures for the prompt investigation and settlement of Plaintiff's claims (O.C.G.A. § 33-6-34(3)), refusing to pay Plaintiff's claim without conducting a reasonable investigation (O.C.G.A. § 33-6-34(6)), and failing to provide a reasonable and accurate explanation of the basis for the denial when requested by Plaintiff in writing (O.C.G.A. § 33-6-34(10)).

45. The above and foregoing actions of Universal give rise to a cause of action for bad faith as Universal has frivolously and without a reasonable basis refused to pay Plaintiff's covered loss within sixty (60) days after Plaintiff's timely written demand for payment according to O.C.G.A. §33-4-6.

46. As a result of Universal's bad faith conduct and pursuant to OCGA § 33-4-6, Plaintiff is entitled to additional exemplary damages as well as reimbursement of all attorney's fees and litigation costs incurred in pursuing this matter.

WHEREFORE, Plaintiff requests the following relief:

A) Plaintiff requests that this case be tried with a jury;

B) Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Universal in an amount to be determined at trial for breach of the insurance contract, including both the benefit of the bargain (full value of their covered losses) as well as compensation for damages naturally arising from the breach of the contract including (i)

the costs to repair, remediate and restore Plaintiff's home, (ii) the costs to repair, remediate or replace Plaintiff's water or mold damaged personal property, and (iii) the diminished value of the Subject Property as a result of the mold and water damage;

C) Plaintiff requests that this Court enter Judgment in favor of Plaintiff and against Universal and award Plaintiff bad faith damages in an amount of fifty percent (50%) of the total compensatory damages awarded or $5,000, whichever is greater, for Universal's bad faith refusal to pay Plaintiff's covered loss;

D) Pursuant to O.C.G.A. §33-4-6, Plaintiff requests that this Court enter Judgment in favor of Plaintiff and against Universal and award Plaintiff her attorneys' fees and court costs;

E) Plaintiff requests that this Court enter Judgment in favor of Plaintiff and against Universal and award Plaintiff any and all other relief that this Court may deem just and proper, whether such relief sounds in law or equity.

Respectfully submitted this 13th day of January, 2023.

CARTER JEFFRIES LLC

/s/Carson Jeffries
CARSON L. JEFFRIES, ESQ.
Georgia Bar Number 100139
cjeffries@moldfirm.com
**ATTORNEY FOR PLAINTIFF**

47 Perimeter Center East, Suite 530
Atlanta, GA 30346
ph: (404) 341-6653

STATE COURT OF
DEKALB COUNTY, GA.
1/13/2023 2:04 PM
E-FILED
BY: Monica Gay

## EXHIBIT A

HOMEOWNERS POLICY JACKET

JAMES JACKSON
20 GIBSON DRIVE
CARROLLTON, GA 30117



# UNIVERSAL PROPERTY

& CASUALTY INSURANCE COMPANY

## HOMEOWNERS POLICY

### READ YOUR POLICY CAREFULLY

**1110 W. Commercial Blvd**
**Fort Lauderdale, FL 33309**
**Customer Service/Claims: 800-425-9113**

### NOTICE: THIS POLICY DOES NOT COVER FLOOD LOSS

### THIS IS A LEGAL CONTRACT BETWEEN THE POLICYHOLDER AND THE COMPANY.

This policy jacket with the Policy Provisions, Declarations, and Endorsements, if any, issued to form a part
thereof, complete the policy.

EXHIBIT A

| Universal Property & Casualty Insurance Company, A Stock Company c/o Evolution Risk Advisors, Inc. 1110 W. Commercial Blvd Fort Lauderdale, FL 33309 | EXHIBIT A Homeowners Declaration Effective 08/29/2020 Renewal Policy |  UNIVERSAL PROPERTY A CASUALTY INSURANCE COMPANY |
| --- | --- | --- |

### THIS IS NOT A BILL
For Policy or Claims Questions  Contact Your Agent Listed Below

| Policy Number | FROM   Policy Period   TO | MORTGAGEE BILLED | Agent Code |
| --- | --- | --- | --- |
| 1701-1700-9156 | 08/29/2020        08/29/2021 | 12:01 AM Standard Time | GA0532 |

**Named Insured and Address**
JAMES JACKSON
20 GIBSON DRIVE
Carrollton, GA 30117
(770) 249-2128

**Agent Name and Address**
Accuracy Agency, Inc.
438 Newnan Rd.
Carrollton, GA 30117
(770) 834-3326

**Insured Location**

20 GIBSON DR CARROLLTON, GA 30117   CARROLL COUNTY

### Premium Summary

| Basic Coverages Premium | Attached Endorsements Premium | Assessments / Surcharges | MGA Fees/Policy Fees | Total Policy Premium (Including Assessments & Surcharges) |
| --- | --- | --- | --- | --- |
| $1,060.60 | $126.98 | $118.76 | $25.00 | $1,331.34 |

### Rating Information

| Form | Construction | Year | Townhouse/ Rowhouse | Number of Families | Occupied | Protection Class | Territory | BCEG |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| HO3 | Masonry | 1971 | N | 1 | Y | 1 | 7 | 99 |

| County | Dwelling Replacement Cost | Personal Property Replacement Cost | Protective Device Credits: Burglar | Fire | Sprinkler | Shutter | Wind / Hail Exclusion |
| --- | --- | --- | --- | --- | --- | --- | --- |
| CARROLL | Y | Y | None | None | N | N | N |

We will provide the insurance described in this policy in  return for the premium and compliance with all applicable provisions of this policy. If we elect to continue this insurance, we will renew this policy if you pay the required renewal premium for each successive policy period subject to our premiums, rules and forms then in effect. You must pay us prior to the end of the current policy period or else this policy will expire.

Insurance is provided only with respect to the following coverages for which a limit of liability is specified, subject to all the conditions of this policy.

| COVERAGES - SECTION I | LIMITS | PREMIUMS | COVERAGES - SECTION II | LIMITS | PREMIUMS |
| --- | --- | --- | --- | --- | --- |
| Coverage A - Dwelling | $248,097 | $1,060.60 | Coverage E - Personal Liability | $100,000 | $0.00 |
| Coverage B - Other Structure | $24,812 | | Coverage F - Medical Payments | $1,000 | $0.00 |
| Coverage C - Personal Property | $124,049 | | | | |
| Coverage D - Loss of Use | $49,620 | | | | |

### Section I coverages subject to $1,000 all perils deductible per loss.

In Witness Whereof, the Company has executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by the duly authorized representative of this Company.

Secretary

Chief Executive Officer

| Universal Property & Casualty Insurance Company, A Stock Company<br>c/o Evolution Risk Advisors, Inc.<br>1110 W. Commercial Blvd<br>Fort Lauderdale, FL 33309 | EXHIBIT A<br>Declaration Effective<br>08/29/2020 |  UNIVERSAL PROPERTY<br>& CASUALTY INSURANCE COMPANY<br><br>Renewal Policy |
|---|---|---|

### THIS IS NOT A BILL

| Policy Number | FROM | Policy Period | TO | MORTGAGEE BILLED | Agent Code |
|---|---|---|---|---|---|
| 1701-1700-9156 | 08/29/2020 | | 08/29/2021 | 12:01 AM Standard Time | GA0532 |

**Additional Interest**

| Mortgagee/Additional Interest 01 | Mortgagee/Additional Interest 02 | Mortgagee/Additional Interest 03 |
|---|---|---|
| NEXBANK SSB ISAOA<br>P.O. Box 961292<br>Fort Worth, TX 76161<br>21895545 | | |

### Policy Forms and Endorsements Applicable to this Policy

| NUMBER EDITION | DESCRIPTION | LIMITS | PREMIUMS |
|---|---|---|---|
| HO 00 03 10 00 | Homeowners 3 Special Form | | $1,060.60 |
| UPCIC 01 10 07 11 | Special Provisions - Georgia | | |
| UPCIC SECE 201011 | Screened Enclosures And Carports Exclusion | | |
| HO 03 18 04 10 | Hurricane Deductible | | |
| HO 03 36 07 04 | Limited Fungi, Wet or Dry Rot, or Bacteria Section I - $10,000/$20,000; Section II - $50,000 | | |
| HO 04 86 09 93 | Windstorm Exterior Paint or Waterproofing Exclusion | | |
| HO 04 96 10 00 | No Coverage for Home Day Care Business | | |
| HO 04 90 10 00 | Personal Property Replacement Cost | $124,049 | $126.97 |
| HO 04 48 10 00 | Other Structures | $24,812 | $0.01 |
| UPCIC 10 01 98 (06-07) | Existing Damage Exclusion | | |
| | Dwelling over 36 years old Surcharge | | $118.76 |
| | MGA Fee | | $25.00 |

To report a claim please visit us at www.universalproperty.com or call us at 800-218-3206

**PLEASE VISIT UNIVERSALPROPERTY.COM TO VIEW YOUR APPLICABLE POLICY FORMS AND ENDORSEMENTS.  LOG IN AND CLICK MY POLICIES/POLICY DETAILS OR TYPE THIS URL INTO YOUR INTERNET BROWSER: HTTPS://UNIVERSALPROPERTY.COM/ACCOUNT/LOGIN. YOU HAVE THE RIGHT TO REQUEST AND OBTAIN WITHOUT CHARGE A PAPER OR ELECTRONIC COPY OF YOUR POLICY AND ENDORSEMENTS BY CONTACTING YOUR AGENT OR CALLING CUSTOMER SERVICE AT 1-800-425-9113.**

THIS POLICY DOES NOT INCLUDE COVERAGE FOR SINKHOLE, EARTHQUAKE OR FLOOD LOSSES. THESE COVERAGES ARE NOT PROVIDED BY UNIVERSAL PROPERTY & CASUALTY INSURANCE COMPANY AND ARE NOT PART OF THIS POLICY.

This replaces all previously issued policy declarations, if any and is subject to all forms and endorsements attached to this policy.

UPCIC 10 17 01 21      Printed Date:  9/13/2022 3:50:04 PM      2 of 2

EXHIBIT A

HOMEOWNERS
HO 00 03 10 00

# HOMEOWNERS 3 – SPECIAL FORM

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

**A.** In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance.

**B.** In addition, certain words and phrases are defined as follows:

**1.** "Aircraft Liability", "Hovercraft Liability", "Motor Vehicle Liability" and "Watercraft Liability", subject to the provisions in **b.** below, mean the following:

**a.** Liability for "bodily injury" or "property damage" arising out of the:

**(1)** Ownership of such vehicle or craft by an "insured";

**(2)** Maintenance, occupancy, operation, use, loading or unloading of such vehicle or craft by any person;

**(3)** Entrustment of such vehicle or craft by an "insured" to any person;

**(4)** Failure to supervise or negligent supervision of any person involving such vehicle or craft by an "insured"; or

**(5)** Vicarious liability, whether or not imposed by law, for the actions of a child or minor involving such vehicle or craft.

**b.** For the purpose of this definition:

**(1)** Aircraft means any contrivance used or designed for flight except model or hobby aircraft not used or designed to carry people or cargo;

**(2)** Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

**(3)** Watercraft means a craft principally designed to be propelled on or in water by wind, engine power or electric motor; and

**(4)** Motor vehicle means a "motor vehicle" as defined in **7.** below.

**2.** "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

**3.** "Business" means:

**a.** A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

**b.** Any other activity engaged in for money or other compensation, except the following:

**(1)** One or more activities, not described in **(2)** through **(4)** below, for which no "insured" receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period;

**(2)** Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

**(3)** Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

**(4)** The rendering of home day care services to a relative of an "insured".

**4.** "Employee" means an employee of an "insured", or an employee leased to an "insured" by a labor leasing firm under an agreement between an "insured" and the labor leasing firm, whose duties are other than those performed by a "residence employee".

**5.** "Insured" means:

**a.** You and residents of your household who are:

**(1)** Your relatives; or

**(2)** Other persons under the age of 21 and in the care of any person named above;

**b.** A student enrolled in school full time, as defined by the school, who was a resident of your household before moving out to attend school, provided the student is under the age of:

**(1)** 24 and your relative; or

**(2)** 21 and in your care or the care of a person described in **a.(1)** above; or

# EXHIBIT A

**c.** Under Section II:

   **(1)** With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in **a.** or **b.** above. "Insured" does not mean a person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner; or

   **(2)** With respect to a "motor vehicle" to which this policy applies:

   **(a)** Persons while engaged in your employ or that of any person included in **a.** or **b.** above; or

   **(b)** Other persons using the vehicle on an "insured location" with your consent.

Under both Sections I and II, when the word an immediately precedes the word "insured", the words an "insured" together mean one or more "insureds".

**6.** "Insured location" means:

   **a.** The "residence premises";

   **b.** The part of other premises, other structures and grounds used by you as a residence; and

   **(1)** Which is shown in the Declarations; or

   **(2)** Which is acquired by you during the policy period for your use as a residence;

   **c.** Any premises used by you in connection with a premises described in **a.** and **b.** above;

   **d.** Any part of a premises:

   **(1)** Not owned by an "insured"; and

   **(2)** Where an "insured" is temporarily residing;

   **e.** Vacant land, other than farm land, owned by or rented to an "insured";

   **f.** Land owned by or rented to an "insured" on which a one, two, three or four family dwelling is being built as a residence for an "insured";

   **g.** Individual or family cemetery plots or burial vaults of an "insured"; or

   **h.** Any part of a premises occasionally rented to an "insured" for other than "business" use.

**7.** "Motor vehicle" means:

   **a.** A self-propelled land or amphibious vehicle; or

   **b.** Any trailer or semitrailer which is being carried on, towed by or hitched for towing by a vehicle described in **a.** above.

**8.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

   **a.** "Bodily injury"; or

   **b.** "Property damage".

**9.** "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

**10.** "Residence employee" means:

   **a.** An employee of an "insured", or an employee leased to an "insured" by a labor leasing firm, under an agreement between an "insured" and the labor leasing firm, whose duties are related to the maintenance or use of the "residence premises", including household or domestic services; or

   **b.** One who performs similar duties elsewhere not related to the "business" of an "insured".

A "residence employee" does not include a temporary employee who is furnished to an "insured" to substitute for a permanent "residence employee" on leave or to meet seasonal or short-term workload conditions.

**11.** "Residence premises" means:

   **a.** The one family dwelling where you reside;

   **b.** The two, three or four family dwelling where you reside in at least one of the family units; or

   **c.** That part of any other building where you reside;

and which is shown as the "residence premises" in the Declarations.

"Residence premises" also includes other structures and grounds at that location.

   Copyright, Insurance Services Office, Inc., 1999   HO 00 03 10 00

# EXHIBIT A

## DEDUCTIBLE

Unless otherwise noted in this policy, the following deductible provision applies:

Subject to the policy limits that apply, we will pay only that part of the total of all loss payable under Section I that exceeds the deductible amount shown in the Declarations.

## SECTION I – PROPERTY COVERAGES

### A. Coverage A – Dwelling

1. We cover:
   a. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and
   b. Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises".
2. We do not cover land, including land on which the dwelling is located.

### B. Coverage B – Other Structures

1. We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.
2. We do not cover:
   a. Land, including land on which the other structures are located;
   b. Other structures rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage;
   c. Other structures from which any "business" is conducted; or
   d. Other structures used to store "business" property. However, we do cover a structure that contains "business" property solely owned by an "insured" or a tenant of the dwelling provided that "business" property does not include gaseous or liquid fuel, other than fuel in a permanently installed fuel tank of a vehicle or craft parked or stored in the structure.
3. The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage A. Use of this coverage does not reduce the Coverage A limit of liability.

### C. Coverage C – Personal Property

1. **Covered Property**

   We cover personal property owned or used by an "insured" while it is anywhere in the world. After a loss and at your request, we will cover personal property owned by:
   a. Others while the property is on the part of the "residence premises" occupied by an "insured"; or
   b. A guest or a "residence employee", while the property is in any residence occupied by an "insured".

2. **Limit For Property At Other Residences**

   Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises", is 10% of the limit of liability for Coverage **C**, or $1,000, whichever is greater. However, this limitation does not apply to personal property:
   a. Moved from the "residence premises" because it is being repaired, renovated or rebuilt and is not fit to live in or store property in; or
   b. In a newly acquired principal residence for 30 days from the time you begin to move the property there.

3. **Special Limits Of Liability**

   The special limit for each category shown below is the total limit for each loss for all property in that category. These special limits do not increase the Coverage C limit of liability.
   a. $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, coins, medals, scrip, stored value cards and smart cards.
   b. $1,500 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

      This limit includes the cost to research, replace or restore the information from the lost or damaged material.

# EXHIBIT A

c. $1,500 on watercraft of all types, including their trailers, furnishings, equipment and outboard engines or motors.

d. $1,500 on trailers or semitrailers not used with watercraft of all types.

e. $1,500 for loss by theft of jewelry, watches, furs, precious and semiprecious stones.

f. $2,500 for loss by theft of firearms and related equipment.

g. $2,500 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware, platinumware, platinum-plated ware and pewterware. This includes flatware, hollow-ware, tea sets, trays and trophies made of or including silver, gold or pewter.

h. $2,500 on property, on the "residence premises", used primarily for "business" purposes.

i. $500 on property, away from the "residence premises", used primarily for "business" purposes. However, this limit does not apply to loss to electronic apparatus and other property described in Categories **j.** and **k.** below.

j. $1,500 on electronic apparatus and accessories, while in or upon a "motor vehicle", but only if the apparatus is equipped to be operated by power from the "motor vehicle's" electrical system while still capable of being operated by other power sources.

Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described in this Category **j.**

k. $1,500 on electronic apparatus and accessories used primarily for "business" while away from the "residence premises" and not in or upon a "motor vehicle". The apparatus must be equipped to be operated by power from the "motor vehicle's" electrical system while still capable of being operated by other power sources.

Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described in this Category **k.**

### 4. Property Not Covered

We do not cover:

a. Articles separately described and specifically insured, regardless of the limit for which they are insured, in this or other insurance;

b. Animals, birds or fish;

c. "Motor vehicles".

(1) This includes:

(a) Their accessories, equipment and parts; or

(b) Electronic apparatus and accessories designed to be operated solely by power from the electrical system of the "motor vehicle". Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described above.

The exclusion of property described in **(a)** and **(b)** above applies only while such property is in or upon the "motor vehicle".

(2) We do cover "motor vehicles" not required to be registered for use on public roads or property which are:

(a) Used solely to service an "insured's" residence; or

(b) Designed to assist the handicapped;

d. Aircraft meaning any contrivance used or designed for flight including any parts whether or not attached to the aircraft.

We do cover model or hobby aircraft not used or designed to carry people or cargo;

e. Hovercraft and parts. Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

f. Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";

g. Property in an apartment regularly rented or held for rental to others by an "insured", except as provided in **E.10.** Landlord's Furnishings under Section I – Property Coverages;

h. Property rented or held for rental to others off the "residence premises";

i. "Business" data, including such data stored in:

(1) Books of account, drawings or other paper records; or

(2) Computers and related equipment.

We do cover the cost of blank recording or storage media, and of prerecorded computer programs available on the retail market;

    Copyright, Insurance Services Office, Inc., 1999

# EXHIBIT A

**j.** Credit cards, electronic fund transfer cards or access devices used solely for deposit, withdrawal or transfer of funds except as provided in **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I – Property Coverages; or

**k.** Water or steam.

## D. Coverage D – Loss Of Use

The limit of liability for Coverage **D** is the total limit for the coverages in **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use below.

### 1. Additional Living Expense

If a loss covered under Section I makes that part of the "residence premises" where you reside not fit to live in, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

### 2. Fair Rental Value

If a loss covered under Section I makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the fair rental value of such premises less any expenses that do not continue while it is not fit to live in.

Payment will be for the shortest time required to repair or replace such premises.

### 3. Civil Authority Prohibits Use

If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against, we cover the loss as provided in **1.** Additional Living Expense and **2.** Fair Rental Value above for no more than two weeks.

### 4. Loss Or Expense Not Covered

We do not cover loss or expense due to cancellation of a lease or agreement.

The periods of time under **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use above are not limited by expiration of this policy.

## E. Additional Coverages

### 1. Debris Removal

**a.** We will pay your reasonable expense for the removal of:

(1) Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

(2) Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit is available for such expense.

**b.** We will also pay your reasonable expense, up to $1,000, for the removal from the "residence premises" of:

(1) Your tree(s) felled by the peril of Windstorm or Hail or Weight of Ice, Snow or Sleet; or

(2) A neighbor's tree(s) felled by a Peril Insured Against under Coverage **C;**

provided the tree(s):

(3) Damage(s) a covered structure; or

(4) Does not damage a covered structure, but:

(a) Block(s) a driveway on the "residence premises" which prevent(s) a "motor vehicle", that is registered for use on public roads or property, from entering or leaving the "residence premises"; or

(b) Block(s) a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling building.

The $1,000 limit is the most we will pay in any one loss regardless of the number of fallen trees. No more than $500 of this limit will be paid for the removal of any one tree.

This coverage is additional insurance.

### 2. Reasonable Repairs

**a.** We will pay the reasonable cost incurred by you for the necessary measures taken solely to protect covered property that is damaged by a Peril Insured Against from further damage.

# EXHIBIT A

**b.** If the measures taken involve repair to other damaged property, we will only pay if that property is covered under this policy and the damage is caused by a Peril Insured Against. This coverage does not:

  **(1)** Increase the limit of liability that applies to the covered property; or

  **(2)** Relieve you of your duties, in case of a loss to covered property, described in **B.4.** under Section I – Conditions.

**3. Trees, Shrubs And Other Plants**

We cover trees, shrubs, plants or lawns, on the "residence premises", for loss caused by the following Perils Insured Against:

  **a.** Fire or Lightning;

  **b.** Explosion;

  **c.** Riot or Civil Commotion;

  **d.** Aircraft;

  **e.** Vehicles not owned or operated by a resident of the "residence premises";

  **f.** Vandalism or Malicious Mischief; or

  **g.** Theft.

We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns. No more than $500 of this limit will be paid for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

This coverage is additional insurance.

**4. Fire Department Service Charge**

We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

This coverage is additional insurance. No deductible applies to this coverage.

**5. Property Removed**

We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed.

This coverage does not change the limit of liability that applies to the property being removed.

**6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money**

  **a.** We will pay up to $500 for:

  **(1)** The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

  **(2)** Loss resulting from theft or unauthorized use of an electronic fund transfer card or access device used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

  **(3)** Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

  **(4)** Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

  All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

  This coverage is additional insurance. No deductible applies to this coverage.

  **b.** We do not cover:

  **(1)** Use of a credit card, electronic fund transfer card or access device:

  **(a)** By a resident of your household;

  **(b)** By a person who has been entrusted with either type of card or access device; or

  **(c)** If an "insured" has not complied with all terms and conditions under which the cards are issued or the devices accessed; or

  **(2)** Loss arising out of "business" use or dishonesty of an "insured".

  **c.** If the coverage in **a.** above applies, the following defense provisions also apply:

  **(1)** We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

  **(2)** If a suit is brought against an "insured" for liability under **a.(1)** or **(2)** above, we will provide a defense at our expense by counsel of our choice.

  **(3)** We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under **a.(3)** above.

   Copyright, Insurance Services Office, Inc., 1999   HO 00 03 10 00

## EXHIBIT A

**7. Loss Assessment**

**a.** We will pay up to $1,000 for your share of loss assessment charged during the policy period against you, as owner or tenant of the "residence premises", by a corporation or association of property owners. The assessment must be made as a result of direct loss to property, owned by all members collectively, of the type that would be covered by this policy if owned by you, caused by a Peril Insured Against under Coverage **A,** other than:

**(1)** Earthquake; or

**(2)** Land shock waves or tremors before, during or after a volcanic eruption.

The limit of $1,000 is the most we will pay with respect to any one loss, regardless of the number of assessments. We will only apply one deductible, per unit, to the total amount of any one loss to the property described above, regardless of the number of assessments.

**b.** We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

**c.** Paragraph **P.** Policy Period under Section **I** – Conditions does not apply to this coverage.

This coverage is additional insurance.

**8. Collapse**

**a.** With respect to this Additional Coverage:

**(1)** Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose.

**(2)** A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

**(3)** A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

**(4)** A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**b.** We insure for direct physical loss to covered property involving collapse of a building or any part of a building if the collapse was caused by one or more of the following:

**(1)** The Perils Insured Against named under Coverage **C;**

**(2)** Decay that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse;

**(3)** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an "insured" prior to collapse;

**(4)** Weight of contents, equipment, animals or people;

**(5)** Weight of rain which collects on a roof; or

**(6)** Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

**c.** Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under **b.(2)** through **(6)** above, unless the loss is a direct result of the collapse of a building or any part of a building.

**d.** This coverage does not increase the limit of liability that applies to the damaged covered property.

**9. Glass Or Safety Glazing Material**

**a.** We cover:

**(1)** The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window;

**(2)** The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window when caused directly by earth movement; and

**(3)** The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

 Copyright, Insurance Services Office, Inc., 1999

# EXHIBIT A

**b.** This coverage does not include loss:

   **(1)** To covered property which results because the glass or safety glazing material has been broken, except as provided in **a.(3)** above; or

   **(2)** On the "residence premises" if the dwelling has been vacant for more than 60 consecutive days immediately before the loss, except when the breakage results directly from earth movement as provided in **a.(2)** above. A dwelling being constructed is not considered vacant.

**c.** This coverage does not increase the limit of liability that applies to the damaged property.

**10. Landlord's Furnishings**

We will pay up to $2,500 for your appliances, carpeting and other household furnishings, in each apartment on the "residence premises" regularly rented or held for rental to others by an "insured", for loss caused by a Peril Insured Against in Coverage **C**, other than Theft.

This limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss.

This coverage does not increase the limit of liability applying to the damaged property.

**11. Ordinance Or Law**

**a.** You may use up to 10% of the limit of liability that applies to Coverage **A** for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

   **(1)** The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

   **(2)** The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

   **(3)** The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

**b.** You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in **a.** above.

**c.** We do not cover:

   **(1)** The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

   **(2)** The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants in or on any covered building or other structure.

    Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

**12. Grave Markers**

We will pay up to $5,000 for grave markers, including mausoleums, on or away from the "residence premises" for loss caused by a Peril Insured Against under Coverage **C.**

This coverage does not increase the limits of liability that apply to the damaged covered property.

## SECTION I – PERILS INSURED AGAINST

**A. Coverage A – Dwelling And Coverage B – Other Structures**

**1.** We insure against risk of direct physical loss to property described in Coverages **A** and **B.**

**2.** We do not insure, however, for loss:

   **a.** Excluded under Section **I** – Exclusions;

   **b.** Involving collapse, except as provided in **E.8.** Collapse under Section **I** – Property Coverages; or

   **c.** Caused by:

     **(1)** Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This provision does not apply if you have used reasonable care to:

       **(a)** Maintain heat in the building; or

Copyright, Insurance Services Office, Inc., 1999

# EXHIBIT A

**(b)** Shut off the water supply and drain all systems and appliances of water.

However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

For purposes of this provision a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment;

**(2)** Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

  **(a)** Fence, pavement, patio or swimming pool;

  **(b)** Footing, foundation, bulkhead, wall, or any other structure or device that supports all or part of a building, or other structure;

  **(c)** Retaining wall or bulkhead that does not support all or part of a building or other structure; or

  **(d)** Pier, wharf or dock;

**(3)** Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

**(4)** Vandalism and malicious mischief, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 60 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

**(5)** Mold, fungus or wet rot. However, we do insure for loss caused by mold, fungus or wet rot that is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure if such loss results from the accidental discharge or overflow of water or steam from within:

  **(a)** A plumbing, heating, air conditioning or automatic fire protective sprinkler system, or a household appliance, on the "residence premises"; or

  **(b)** A storm drain, or water, steam or sewer pipes, off the "residence premises".

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment; or

**(6)** Any of the following:

  **(a)** Wear and tear, marring, deterioration;

  **(b)** Mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

  **(c)** Smog, rust or other corrosion, or dry rot;

  **(d)** Smoke from agricultural smudging or industrial operations;

  **(e)** Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against named under Coverage **C.**

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

  **(f)** Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings;

  **(g)** Birds, vermin, rodents, or insects; or

  **(h)** Animals owned or kept by an "insured".

**Exception To c.(6)**

Unless the loss is otherwise excluded, we cover loss to property covered under Coverage **A** or **B** resulting from an accidental discharge or overflow of water or steam from within a:

**(i)** Storm drain, or water, steam or sewer pipe, off the "residence premises"; or

# EXHIBIT A

(ii) Plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the "residence premises". This includes the cost to tear out and replace any part of a building, or other structure, on the "residence premises", but only when necessary to repair the system or appliance. However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the "residence premises".

We do not cover loss to the system or appliance from which this water or steam escaped.

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, down spout or similar fixtures or equipment.

Section I – Exclusion A.3. Water Damage, Paragraphs a. and c. that apply to surface water and water below the surface of the ground do not apply to loss by water covered under c.(5) and (6) above.

Under 2.b. and c. above, any ensuing loss to property described in Coverages A and B not precluded by any other provision in this policy is covered.

## B. Coverage C – Personal Property

We insure for direct physical loss to the property described in Coverage C caused by any of the following perils unless the loss is excluded in Section I – Exclusions.

### 1. Fire Or Lightning

### 2. Windstorm Or Hail

This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

### 3. Explosion

### 4. Riot Or Civil Commotion

### 5. Aircraft

This peril includes self-propelled missiles and spacecraft.

### 6. Vehicles

### 7. Smoke

This peril means sudden and accidental damage from smoke, including the emission or puffback of smoke, soot, fumes or vapors from a boiler, furnace or related equipment.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

### 8. Vandalism Or Malicious Mischief

### 9. Theft

a. This peril includes attempted theft and loss of property from a known place when it is likely that the property has been stolen.

b. This peril does not include loss caused by theft:

(1) Committed by an "insured";

(2) In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

(3) From that part of a "residence premises" rented by an "insured" to someone other than another "insured"; or

(4) That occurs off the "residence premises" of:

(a) Trailers, semitrailers and campers;

(b) Watercraft of all types, and their furnishings, equipment and outboard engines or motors; or

(c) Property while at any other residence owned by, rented to, or occupied by an "insured", except while an "insured" is temporarily living there. Property of an "insured" who is a student is covered while at the residence the student occupies to attend school as long as the student has been there at any time during the 60 days immediately before the loss.

### 10. Falling Objects

This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

### 11. Weight Of Ice, Snow Or Sleet

This peril means weight of ice, snow or sleet which causes damage to property contained in a building.

 Copyright, Insurance Services Office, Inc., 1999   HO 00 03 10 00

## EXHIBIT A

12. **Accidental Discharge Or Overflow Of Water Or Steam**

   a. This peril means accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

   b. This peril does not include loss:

   (1) To the system or appliance from which the water or steam escaped;

   (2) Caused by or resulting from freezing except as provided in Peril Insured Against **14.** Freezing;

   (3) On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises"; or

   (4) Caused by mold, fungus or wet rot unless hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

   c. In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

   d. Section I – Exclusion **A.3.** Water Damage, Paragraphs **a.** and **c.** that apply to surface water and water below the surface of the ground do not apply to loss by water covered under this peril.

13. **Sudden And Accidental Tearing Apart, Cracking, Burning Or Bulging**

   This peril means sudden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

   We do not cover loss caused by or resulting from freezing under this peril.

14. **Freezing**

   a. This peril means freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance but only if you have used reasonable care to:

   (1) Maintain heat in the building; or

   (2) Shut off the water supply and drain all systems and appliances of water.

   However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

   b. In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

15. **Sudden And Accidental Damage From Artificially Generated Electrical Current**

   This peril does not include loss to tubes, transistors, electronic components or circuitry that are a part of appliances, fixtures, computers, home entertainment units or other types of electronic apparatus.

16. **Volcanic Eruption**

   This peril does not include loss caused by earthquake, land shock waves or tremors.

## SECTION I – EXCLUSIONS

A. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

   1. **Ordinance Or Law**

   Ordinance Or Law means any ordinance or law:

   a. Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This Exclusion **A.1.a.** does not apply to the amount of coverage that may be provided for in **E.11.** Ordinance Or Law under Section I – Property Coverages;

   b. The requirements of which result in a loss in value to property; or

   c. Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

   Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

   This Exclusion **A.1.** applies whether or not the property has been physically damaged.

   2. **Earth Movement**

   Earth Movement means:

   a. Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

## EXHIBIT A

**b.** Landslide, mudslide or mudflow;

**c.** Subsidence or sinkhole; or

**d.** Any other earth movement including earth sinking, rising or shifting;

caused by or resulting from human or animal forces or any act of nature unless direct loss by fire or explosion ensues and then we will pay only for the ensuing loss.

This Exclusion **A.2.** does not apply to loss by theft.

**3. Water Damage**

Water Damage means:

**a.** Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

**b.** Water or water-borne material which backs up through sewers or drains or which overflows or is discharged from a sump, sump pump or related equipment; or

**c.** Water or water-borne material below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure;

caused by or resulting from human or animal forces or any act of nature.

Direct loss by fire, explosion or theft resulting from water damage is covered.

**4. Power Failure**

Power Failure means the failure of power or other utility service if the failure takes place off the "residence premises". But if the failure results in a loss, from a Peril Insured Against on the "residence premises", we will pay for the loss caused by that peril.

**5. Neglect**

Neglect means neglect of an "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

**6. War**

War includes the following and any consequence of any of the following:

**a.** Undeclared war, civil war, insurrection, rebellion or revolution;

**b.** Warlike act by a military force or military personnel; or

**c.** Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

**7. Nuclear Hazard**

This Exclusion **A.7.** pertains to Nuclear Hazard to the extent set forth in **M.** Nuclear Hazard Clause under Section **I – Conditions.**

**8. Intentional Loss**

Intentional Loss means any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

In the event of such loss, no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss.

**9. Governmental Action**

Governmental Action means the destruction, confiscation or seizure of property described in Coverage **A, B** or **C** by order of any governmental or public authority.

This exclusion does not apply to such acts ordered by any governmental or public authority that are taken at the time of a fire to prevent its spread, if the loss caused by fire would be covered under this policy.

**B.** We do not insure for loss to property described in Coverages **A** and **B** caused by any of the following. However, any ensuing loss to property described in Coverages **A** and **B** not precluded by any other provision in this policy is covered.

**1.** Weather conditions. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in **A.** above to produce the loss.

**2.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**3.** Faulty, inadequate or defective:

**a.** Planning, zoning, development, surveying, siting;

**b.** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

**c.** Materials used in repair, construction, renovation or remodeling; or

**d.** Maintenance;

of part or all of any property whether on or off the "residence premises".

          Copyright, Insurance Services Office, Inc., 1999          HO 00 03 10 00

# EXHIBIT A

## SECTION I – CONDITIONS

### A. Insurable Interest And Limit Of Liability

Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

1. To an "insured" for more than the amount of such "insured's" interest at the time of loss; or

2. For more than the applicable limit of liability.

### B. Duties After Loss

In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:

1. Give prompt notice to us or our agent;

2. Notify the police in case of loss by theft;

3. Notify the credit card or electronic fund transfer card or access device company in case of loss as provided for in **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I – Property Coverages;

4. Protect the property from further damage. If repairs to the property are required, you must:

   a. Make reasonable and necessary repairs to protect the property; and

   b. Keep an accurate record of repair expenses;

5. Cooperate with us in the investigation of a claim;

6. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

7. As often as we reasonably require:

   a. Show the damaged property;

   b. Provide us with records and documents we request and permit us to make copies; and

   c. Submit to examination under oath, while not in the presence of another "insured", and sign the same;

8. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

   a. The time and cause of loss;

   b. The interests of all "insureds" and all others in the property involved and all liens on the property;

   c. Other insurance which may cover the loss;

   d. Changes in title or occupancy of the property during the term of the policy;

   e. Specifications of damaged buildings and detailed repair estimates;

   f. The inventory of damaged personal property described in **6.** above;

   g. Receipts for additional living expenses incurred and records that support the fair rental value loss; and

   h. Evidence or affidavit that supports a claim under **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I – Property Coverages, stating the amount and cause of loss.

### C. Loss Settlement

In this Condition **C.**, the terms "cost to repair or replace" and "replacement cost" do not include the increased costs incurred to comply with the enforcement of any ordinance or law, except to the extent that coverage for these increased costs is provided in **E.11.** Ordinance Or Law under Section I – Property Coverages. Covered property losses are settled as follows:

1. Property of the following types:

   a. Personal property;

   b. Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings;

   c. Structures that are not buildings; and

   d. Grave markers, including mausoleums;

   at actual cash value at the time of loss but not more than the amount required to repair or replace.

2. Buildings covered under Coverage **A** or **B** at replacement cost without deduction for depreciation, subject to the following:

   a. If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of any deductible and without deduction for depreciation, but not more than the least of the following amounts:

      (1) The limit of liability under this policy that applies to the building;

      (2) The replacement cost of that part of the building damaged with material of like kind and quality and for like use; or

      (3) The necessary amount actually spent to repair or replace the damaged building.

# EXHIBIT A

If the building is rebuilt at a new premises, the cost described in **(2)** above is limited to the cost which would have been incurred if the building had been built at the original premises.

**b.** If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

  **(1)** The actual cash value of that part of the building damaged; or

  **(2)** That proportion of the cost to repair or replace, after application of any deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

**c.** To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

  **(1)** Excavations, footings, foundations, piers, or any other structures or devices that support all or part of the building, which are below the undersurface of the lowest basement floor;

  **(2)** Those supports described in **(1)** above which are below the surface of the ground inside the foundation walls, if there is no basement; and

  **(3)** Underground flues, pipes, wiring and drains.

**d.** We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss as noted in **2.a.** and **b.** above.

However, if the cost to repair or replace the damage is both:

  **(1)** Less than 5% of the amount of insurance in this policy on the building; and

  **(2)** Less than $2,500;

  we will settle the loss as noted in **2.a.** and **b.** above whether or not actual repair or replacement is complete.

**e.** You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss to buildings on an actual cash value basis. You may then make claim for any additional liability according to the provisions of this Condition **C. Loss Settlement**, provided you notify us of your intent to do so within 180 days after the date of loss.

**D. Loss To A Pair Or Set**

In case of loss to a pair or set we may elect to:

**1.** Repair or replace any part to restore the pair or set to its value before the loss; or

**2.** Pay the difference between actual cash value of the property before and after the loss.

**E. Appraisal**

If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

**1.** Pay its own appraiser; and

**2.** Bear the other expenses of the appraisal and umpire equally.

**F. Other Insurance And Service Agreement**

If a loss covered by this policy is also covered by:

**1.** Other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss; or

**2.** A service agreement, this insurance is excess over any amounts payable under any such agreement. Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

**G. Suit Against Us**

No action can be brought against us unless there has been full compliance with all of the terms under Section I of this policy and the action is started within two years after the date of loss.

Copyright, Insurance Services Office, Inc., 1999
HO 00 03 10 00

# EXHIBIT A

### H. Our Option

If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with material or property of like kind and quality.

### I. Loss Payment

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

1. Reach an agreement with you;

2. There is an entry of a final judgment; or

3. There is a filing of an appraisal award with us.

### J. Abandonment Of Property

We need not accept any property abandoned by an "insured".

### K. Mortgage Clause

1. If a mortgagee is named in this policy, any loss payable under Coverage **A** or **B** will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

2. If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

   a. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

   b. Pays any premium due under this policy on demand if you have neglected to pay the premium; and

   c. Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Paragraphs **E.** Appraisal, **G.** Suit Against Us and **I.** Loss Payment under Section I – Conditions also apply to the mortgagee.

3. If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

4. If we pay the mortgagee for any loss and deny payment to you:

   a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

   b. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

5. Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

### L. No Benefit To Bailee

We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

### M. Nuclear Hazard Clause

1. "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

2. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against.

3. This policy does not apply under Section I to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

### N. Recovered Property

If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

### O. Volcanic Eruption Period

One or more volcanic eruptions that occur within a 72 hour period will be considered as one volcanic eruption.

### P. Policy Period

This policy applies only to loss which occurs during the policy period.

### Q. Concealment Or Fraud

We provide coverage to no "insureds" under this policy if, whether before or after a loss, an "insured" has:

1. Intentionally concealed or misrepresented any material fact or circumstance;

# EXHIBIT A

**2.** Engaged in fraudulent conduct; or

**3.** Made false statements;

relating to this insurance.

**R. Loss Payable Clause**

If the Declarations show a loss payee for certain listed insured personal property, the definition of "insured" is changed to include that loss payee with respect to that property.

If we decide to cancel or not renew this policy, that loss payee will be notified in writing.

## SECTION II – LIABILITY COVERAGES

**A. Coverage E – Personal Liability**

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

**1.** Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

**2.** Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

**B. Coverage F – Medical Payments To Others**

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury". Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees". As to others, this coverage applies only:

**1.** To a person on the "insured location" with the permission of an "insured"; or

**2.** To a person off the "insured location", if the "bodily injury":

**a.** Arises out of a condition on the "insured location" or the ways immediately adjoining;

**b.** Is caused by the activities of an "insured";

**c.** Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or

**d.** Is caused by an animal owned by or in the care of an "insured".

## SECTION II – EXCLUSIONS

**A. "Motor Vehicle Liability"**

**1.** Coverages E and F do not apply to any "motor vehicle liability" if, at the time and place of an "occurrence", the involved "motor vehicle":

**a.** Is registered for use on public roads or property;

**b.** Is not registered for use on public roads or property, but such registration is required by a law, or regulation issued by a government agency, for it to be used at the place of the "occurrence"; or

**c.** Is being:

**(1)** Operated in, or practicing for, any prearranged or organized race, speed contest or other competition;

**(2)** Rented to others;

**(3)** Used to carry persons or cargo for a charge; or

**(4)** Used for any "business" purpose except for a motorized golf cart while on a golfing facility.

**2.** If Exclusion **A.1.** does not apply, there is still no coverage for "motor vehicle liability" unless the "motor vehicle" is:

**a.** In dead storage on an "insured location";

**b.** Used solely to service an "insured's" residence;

**c.** Designed to assist the handicapped and, at the time of an "occurrence", it is:

**(1)** Being used to assist a handicapped person; or

**(2)** Parked on an "insured location";

**d.** Designed for recreational use off public roads and:

**(1)** Not owned by an "insured"; or

**(2)** Owned by an "insured" provided the "occurrence" takes place on an "insured location" as defined in Definitions **B. 6.a., b., d., e.** or **h.;** or

**e.** A motorized golf cart that is owned by an "insured", designed to carry up to 4 persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and, at the time of an "occurrence", is within the legal boundaries of:

**(1)** A golfing facility and is parked or stored there, or being used by an "insured" to:

**(a)** Play the game of golf or for other recreational or leisure activity allowed by the facility;

# EXHIBIT A

(b) Travel to or from an area where "motor vehicles" or golf carts are parked or stored; or

(c) Cross public roads at designated points to access other parts of the golfing facility; or

(2) A private residential community, including its public roads upon which a motorized golf cart can legally travel, which is subject to the authority of a property owners association and contains an "insured's" residence.

## B. "Watercraft Liability"

1. Coverages E and F do not apply to any "watercraft liability" if, at the time of an "occurrence", the involved watercraft is being:

   a. Operated in, or practicing for, any prearranged or organized race, speed contest or other competition. This exclusion does not apply to a sailing vessel or a predicted log cruise;

   b. Rented to others;

   c. Used to carry persons or cargo for a charge; or

   d. Used for any "business" purpose.

2. If Exclusion **B.1.** does not apply, there is still no coverage for "watercraft liability" unless, at the time of the "occurrence", the watercraft:

   a. Is stored;

   b. Is a sailing vessel, with or without auxiliary power, that is:

      (1) Less than 26 feet in overall length; or

      (2) 26 feet or more in overall length and not owned by or rented to an "insured"; or

   c. Is not a sailing vessel and is powered by:

      (1) An inboard or inboard-outdrive engine or motor, including those that power a water jet pump, of:

         (a) 50 horsepower or less and not owned by an "insured"; or

         (b) More than 50 horsepower and not owned by or rented to an "insured"; or

      (2) One or more outboard engines or motors with:

         (a) 25 total horsepower or less;

         (b) More than 25 horsepower if the outboard engine or motor is not owned by an "insured";

         (c) More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it during the policy period; or

         (d) More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it before the policy period, but only if:

            (i) You declare them at policy inception; or

            (ii) Your intent to insure them is reported to us in writing within 45 days after you acquire them.

         The coverages in **(c)** and **(d)** above apply for the policy period.

         Horsepower means the maximum power rating assigned to the engine or motor by the manufacturer.

## C. "Aircraft Liability"

This policy does not cover "aircraft liability".

## D. "Hovercraft Liability"

This policy does not cover "hovercraft liability".

## E. Coverage E – Personal Liability And Coverage F – Medical Payments To Others

Coverages E and F do not apply to the following:

1. **Expected Or Intended Injury**

   "Bodily injury" or "property damage" which is expected or intended by an "insured" even if the resulting "bodily injury" or "property damage":

   a. Is of a different kind, quality or degree than initially expected or intended; or

   b. Is sustained by a different person, entity, real or personal property, than initially expected or intended.

   However, this Exclusion **E.1.** does not apply to "bodily injury" resulting from the use of reasonable force by an "insured" to protect persons or property;

2. **"Business"**

   a. "Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured".

      This Exclusion **E.2.** applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

   b. This Exclusion **E.2.** does not apply to:

      (1) The rental or holding for rental of an "insured location";

# EXHIBIT A

(a) On an occasional basis if used only as a residence;

(b) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

(c) In part, as an office, school, studio or private garage; and

(2) An "insured" under the age of 21 years involved in a part-time or occasional, self-employed "business" with no employees;

**3. Professional Services**

"Bodily injury" or "property damage" arising out of the rendering of or failure to render professional services;

**4. "Insured's" Premises Not An "Insured Location"**

"Bodily injury" or "property damage" arising out of a premises:

a. Owned by an "insured";

b. Rented to an "insured"; or

c. Rented to others by an "insured";

that is not an "insured location";

**5. War**

"Bodily injury" or "property damage" caused directly or indirectly by war, including the following and any consequence of any of the following:

a. Undeclared war, civil war, insurrection, rebellion or revolution;

b. Warlike act by a military force or military personnel; or

c. Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

**6. Communicable Disease**

"Bodily injury" or "property damage" which arises out of the transmission of a communicable disease by an "insured";

**7. Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse**

"Bodily injury" or "property damage" arising out of sexual molestation, corporal punishment or physical or mental abuse; or

**8. Controlled Substance**

"Bodily injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

Exclusions **A.** "Motor Vehicle Liability", **B.** "Watercraft Liability", **C.** "Aircraft Liability", **D.** "Hovercraft Liability" and **E.4.** "Insured's" Premises Not An "Insured Location" do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured".

**F. Coverage E – Personal Liability**

Coverage **E** does not apply to:

**1. Liability:**

a. For any loss assessment charged against you as a member of an association, corporation or community of property owners, except as provided in **D.** Loss Assessment under Section II – Additional Coverages;

b. Under any contract or agreement entered into by an "insured". However, this exclusion does not apply to written contracts:

(1) That directly relate to the ownership, maintenance or use of an "insured location"; or

(2) Where the liability of others is assumed by you prior to an "occurrence";

unless excluded in **a.** above or elsewhere in this policy;

**2.** "Property damage" to property owned by an "insured". This includes costs or expenses incurred by an "insured" or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an "insured location";

**3.** "Property damage" to property rented to, occupied or used by or in the care of an "insured". This exclusion does not apply to "property damage" caused by fire, smoke or explosion;

**4.** "Bodily injury" to any person eligible to receive any benefits voluntarily provided or required to be provided by an "insured" under any:

a. Workers' compensation law;

# EXHIBIT A

**b.** Non-occupational disability law; or

**c.** Occupational disease law;

**5.** "Bodily injury" or "property damage" for which an "insured" under this policy:

**a.** Is also an insured under a nuclear energy liability policy issued by the:

(1) Nuclear Energy Liability Insurance Association;

(2) Mutual Atomic Energy Liability Underwriters;

(3) Nuclear Insurance Association of Canada;

or any of their successors; or

**b.** Would be an insured under such a policy but for the exhaustion of its limit of liability; or

**6.** "Bodily injury" to you or an "insured" as defined under Definitions **5.a.** or **b.**

This exclusion also applies to any claim made or suit brought against you or an "insured":

**a.** To repay; or

**b.** Share damages with;

another person who may be obligated to pay damages because of "bodily injury" to an "insured".

## G. Coverage F – Medical Payments To Others

Coverage **F** does not apply to "bodily injury":

**1.** To a "residence employee" if the "bodily injury":

**a.** Occurs off the "insured location"; and

**b.** Does not arise out of or in the course of the "residence employee's" employment by an "insured";

**2.** To any person eligible to receive benefits voluntarily provided or required to be provided under any:

**a.** Workers' compensation law;

**b.** Non-occupational disability law; or

**c.** Occupational disease law;

**3.** From any:

**a.** Nuclear reaction;

**b.** Nuclear radiation; or

**c.** Radioactive contamination;

all whether controlled or uncontrolled or however caused; or

**d.** Any consequence of any of these; or

**4.** To any person, other than a "residence employee" of an "insured", regularly residing on any part of the "insured location".

## SECTION II – ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

## A. Claim Expenses

We pay:

**1.** Expenses we incur and costs taxed against an "insured" in any suit we defend;

**2.** Premiums on bonds required in a suit we defend, but not for bond amounts more than the Coverage **E** limit of liability. We need not apply for or furnish any bond;

**3.** Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit; and

**4.** Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

## B. First Aid Expenses

We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to an "insured".

## C. Damage To Property Of Others

**1.** We will pay, at replacement cost, up to $1,000 per "occurrence" for "property damage" to property of others caused by an "insured".

**2.** We will not pay for "property damage":

**a.** To the extent of any amount recoverable under Section I;

**b.** Caused intentionally by an "insured" who is 13 years of age or older;

**c.** To property owned by an "insured";

**d.** To property owned by or rented to a tenant of an "insured" or a resident in your household; or

**e.** Arising out of:

(1) A "business" engaged in by an "insured";

(2) Any act or omission in connection with a premises owned, rented or controlled by an "insured", other than the "insured location"; or

(3) The ownership, maintenance, occupancy, operation, use, loading or unloading of aircraft, hovercraft, watercraft or "motor vehicles".

# EXHIBIT A

This exclusion **e.(3)** does not apply to a "motor vehicle" that:

    **(a)** Is designed for recreational use off public roads;

    **(b)** Is not owned by an "insured"; and

    **(c)** At the time of the "occurrence", is not required by law, or regulation issued by a government agency, to have been registered for it to be used on public roads or property.

## D. Loss Assessment

**1.** We will pay up to $1,000 for your share of loss assessment charged against you, as owner or tenant of the "residence premises", during the policy period by a corporation or association of property owners, when the assessment is made as a result of:

    **a.** "Bodily injury" or "property damage" not excluded from coverage under Section II – Exclusions; or

    **b.** Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided such person:

        **(1)** Is elected by the members of a corporation or association of property owners; and

        **(2)** Serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

**2.** Paragraph **I.** Policy Period under Section II – Conditions does not apply to this Loss Assessment Coverage.

**3.** Regardless of the number of assessments, the limit of $1,000 is the most we will pay for loss arising out of:

    **a.** One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

    **b.** A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

**4.** We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

## SECTION II – CONDITIONS

## A. Limit Of Liability

Our total liability under Coverage **E** for all damages resulting from any one "occurrence" will not be more than the Coverage **E** limit of liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence".

Our total liability under Coverage **F** for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage **F** limit of liability shown in the Declarations.

## B. Severability Of Insurance

This insurance applies separately to each "insured". This condition will not increase our limit of liability for any one "occurrence".

## C. Duties After "Occurrence"

In case of an "occurrence", you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed:

**1.** Give written notice to us or our agent as soon as is practical, which sets forth:

    **a.** The identity of the policy and the "named insured" shown in the Declarations;

    **b.** Reasonably available information on the time, place and circumstances of the "occurrence"; and

    **c.** Names and addresses of any claimants and witnesses;

**2.** Cooperate with us in the investigation, settlement or defense of any claim or suit;

**3.** Promptly forward to us every notice, demand, summons or other process relating to the "occurrence";

**4.** At our request, help us:

    **a.** To make settlement;

    **b.** To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

Copyright, Insurance Services Office, Inc., 1999

# EXHIBIT A

    **c.** With the conduct of suits and attend hearings and trials; and

    **d.** To secure and give evidence and obtain the attendance of witnesses;

**5.** With respect to **C.** Damage To Property Of Others under Section **II** – Additional Coverages, submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in an "insured's" control;

**6.** No "insured" shall, except at such "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury".

**D. Duties Of An Injured Person – Coverage F – Medical Payments To Others**

**1.** The injured person or someone acting for the injured person will:

    **a.** Give us written proof of claim, under oath if required, as soon as is practical; and

    **b.** Authorize us to obtain copies of medical reports and records.

**2.** The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

**E. Payment Of Claim – Coverage F – Medical Payments To Others**

Payment under this coverage is not an admission of liability by an "insured" or us.

**F. Suit Against Us**

**1.** No action can be brought against us unless there has been full compliance with all of the terms under this Section **II**.

**2.** No one will have the right to join us as a party to any action against an "insured".

**3.** Also, no action with respect to Coverage **E** can be brought against us until the obligation of such "insured" has been determined by final judgment or agreement signed by us.

**G. Bankruptcy Of An "Insured"**

Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

**H. Other Insurance**

This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

**I. Policy Period**

This policy applies only to "bodily injury" or "property damage" which occurs during the policy period.

**J. Concealment Or Fraud**

We do not provide coverage to an "insured" who, whether before or after a loss, has:

**1.** Intentionally concealed or misrepresented any material fact or circumstance;

**2.** Engaged in fraudulent conduct; or

**3.** Made false statements;

relating to this insurance.

## SECTIONS I AND II – CONDITIONS

**A. Liberalization Clause**

If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

**1.** A subsequent edition of this policy; or

**2.** An amendatory endorsement.

**B. Waiver Or Change Of Policy Provisions**

A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

**C. Cancellation**

**1.** You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

**2.** We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice.

    **a.** When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

    **b.** When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

# EXHIBIT A

c. When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

   **(1)** If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

   **(2)** If the risk has changed substantially since the policy was issued.

   This can be done by letting you know at least 30 days before the date cancellation takes effect.

d. When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

**3.** When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

**4.** If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

## D. Nonrenewal

We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

## E. Assignment

Assignment of this policy will not be valid unless we give our written consent.

## F. Subrogation

An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

Subrogation does not apply to Coverage **F** or Paragraph **C.** Damage To Property Of Others under Section **II** – Additional Coverages.

## G. Death

If any person named in the Declarations or the spouse, if a resident of the same household, dies, the following apply:

**1.** We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death; and

**2.** "Insured" includes:

   **a.** An "insured" who is a member of your household at the time of your death, but only while a resident of the "residence premises"; and

   **b.** With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

       Copyright, Insurance Services Office, Inc., 1999       HO 00 03 10 00

# EXHIBIT A

**HOMEOWNERS**
**UPCIC 01 10 07 11**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### SPECIAL PROVISIONS – GEORGIA

**DEFINITIONS**

The following definition is added:

**"Personal Watercraft"**

a.   "Personal Watercraft" means watercraft designed to carry one to three people, propelled by a water jet pump powered by an internal combustion engine and capable of speeds greater than 25 mph.

b.   "Personal Watercraft" includes but are not limited to watercraft often referred to as jet skis, wave runners and similar watercraft

**SECTION I – PROPERTY COVERAGES**

**E.  Additional Coverages**

   **8.  Collapse**

   Paragraph **a.(3)** is deleted and replaced by the following:

   **(3)** A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building. However, if any part of the interior dwelling building separates from another part of the interior of the dwelling building, with the result that any part of the interior dwelling building cannot be occupied for its intended purpose, it would be considered to be in a state of collapse.

**SECTION I – EXCLUSIONS**

**8.  Intentional Loss** is deleted and replaced by the following:

**8.  Intentional Loss**

   a.  Intentional Loss means any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

   In the event of such loss, no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss.

   b.  However, this exclusion will not apply to deny payment to an innocent co-"insured" if the loss:

   **(1)** Arose out of family violence; and

   **(2)** Is caused by the intentional act of an "insured" against whom a family violence complaint is brought for the act causing the loss.

   c.  If we pay a claim pursuant to Paragraph **8.b.,** our payment to the innocent co-"insured" is limited to that "insured's" insurable interest in the property. In no event will we pay more than the Limit of Liability.

(This is Exclusion **A.8.** in Forms **HO 00 03** and **HO 00 05.**)

**SECTION I – CONDITIONS**

**K.  Mortgage Clause**

   Paragraph **K.3.** is deleted and replaced by the following:

   **3.** If we decide to cancel or not renew this policy, the mortgagee will be notified at least 30 days before the date cancellation or nonrenewal takes effect. If the policy has been in effect for less than 60 days or is cancelled for nonpayment of premium, the mortgagee will be notified at least 10 days before the date cancellation takes effect.

**SECTION II – EXCLUSIONS**

**B.  "Watercraft Liability"**

   Paragraph **2.** is amended to read:

   **2.** If Exclusion **B.1.** does not apply, there is still no coverage for **"personal watercraft"** and only for other watercraft if at the time of the occurrence, the watercraft:

   Paragraph **2.c.(1)** is amended to read:

   **(1)** An inboard or inboard-outdrive engine motor of:

**E.  Coverage E – Personal Liability And Coverage F – Medical Payments To Others**

   Paragraph **8.** is deleted in all forms and Endorsement **HO 24 73** and replaced by the following:

   **8.  Controlled Substance**

   "Bodily Injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs.

   However, this exclusion does not apply:

# EXHIBIT A

(1) To the legitimate use of prescription drugs by a person following the orders of a licensed physician; or

(2) Where the involvement with controlled substance(s) is not within the knowledge of any "insured".

(This is Exclusion **9.** in **HO 24 73.**)

The following paragraphs are added:

**9. "Animal Liability"**

"Bodily Injury" or "property damage" caused directly or indirectly by non-domesticated or exotic animals, or any partial breeds thereof, you own or are kept at the "insured location". Such loss is excluded for all activity or conduct of the insured when a non-domesticated or exotic animal, or any partial breeds thereof, owned or kept at the "insured location" is involved in any way with the loss either directly or indirectly. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

**10. "Swimming pool slides, diving boards, trampolines; and skate board ramps"**

"Bodily Injury" or "property damage" caused directly or indirectly by the ownership, maintenance or use by anyone of any of the aforementioned equipment or accessory:

## SECTIONS I AND II – CONDITIONS

## C. Cancellation

Paragraphs **1.**, **2.**, **2.a.**, **2.b.**, **2.c.** and **4.** are deleted and replaced by the following:

**1.** You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect, subject to the following:

**a.** If only your interest is affected, the effective date of cancellation will be the later of the following:

(1) The date we receive your notice of cancellation; or

(2) The date specified in the notice.

However, upon our receipt of your notice of cancellation, we may waive the requirement that the notice state the future effective date of cancellation, as provided in either **1.a.(1)** or **1.a.(2)** above, by confirming to you in writing the date and time of cancellation.

**b.** If by statute, regulation or contract, this policy may not be cancelled unless notice is given to a governmental agency, mortgagee or other third party, we will mail or deliver at least 10 days notice to you and the third party as soon as practicable after receiving your request for cancellation.

Our notice will state the effective date of cancellation, which will be the later of the following:

(1) 10 days from the date of mailing or delivering our notice; or

(2) The effective date of cancellation stated in your notice to us.

**2.** We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice, together with our reasons for cancellation, may be delivered to you, or mailed to you at your last known mailing address. A receipt provided by, or such other evidence of mailing as prescribed or accepted by the U.S. Postal Service will be sufficient proof of notice.

**a.** When you have not paid the premium, whether payable to us or to our agent, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

**b.** When this policy has been in effect for 60 days or less and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the cancellation effective date takes effect.

**c.** When this policy has been in effect for more than 60 days, or at any time if it is a renewal with us, we may cancel only for one or more of the following reasons:

(1) Upon discovery of fraud, concealment of a material fact, or material misrepresentation made by, or with the knowledge of, any "insured" in obtaining this policy, continuing the policy, or presenting a claim under this policy;

(2) Upon the occurrence of a change in the risk which substantially increases any hazard insured against; or

(3) Upon the violation, by the "insured", of any of the material terms or conditions of the policy.

This can be done by letting you know at least 30 days before the date cancellation takes effect.

**4.** If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it no later than the date cancellation takes effect.

 © ISO Properties, Inc., 2000 UPCIC 01 10 07 11

# EXHIBIT A

**D. Nonrenewal** is deleted and replaced by the following:

**D. Nonrenewal**

We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your last known mailing address, and to any lienholder named in the policy, written notice, together with our reasons for nonrenewal, at least 30 days before the expiration date of this policy.

A receipt provided by, or such other evidence of mailing as prescribed or accepted by the U.S. Postal Service will be sufficient proof of notice.

The following provision is added:

**H. Our Right To Recompute Premium**

We established the premium for this policy based on the statements you made in the application for insurance. We have the right to recompute the premium if we later obtain information which affects the premium we charged.

All other provisions of this policy apply.

© ISO Properties, Inc.,  2000

EXHIBIT A

# EXHIBIT A

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

SCREENED ENCLOSURES AND CARPORTS EXCLUSION FOR WINDSTORM OR HAIL LOSS (UPCIC SECE 201011)

Coverage for Windstorm or Hail Loss is excluded for the following items:
1.  Aluminum framed screened enclosures
2.  Aluminum framed carports

EXHIBIT A

EXHIBIT A

POLICY NUMBER:                                                                    HOMEOWNERS
                                                                                  HO 03 18 04 10

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# HURRICANE DEDUCTIBLE

### SCHEDULE

| Hurricane Deductible: |
| --- |
| |
| Entry may be left blank if shown elsewhere in this policy for this coverage. |

**A. Definitions**

The following definition is added with respect to the deductible provided by this endorsement:

"State" means:

**1.** The state in the United States of America in which your "residence premises" is located; or

**2.** If your "residence premises" is located in one of the following, the one in which your "residence premises" is located:

   **a.** The District of Columbia;

   **b.** Puerto Rico;

   **c.** Guam; or

   **d.** The U.S. Virgin Islands.

**B. Hurricane Deductible**

The following special deductible is added to the policy:

**1.** With respect to the peril of windstorm or hail, we will pay only that part of the total of all loss payable under Section **I** that exceeds the applicable hurricane deductible described in Paragraph **B.2.** of this endorsement.

**2.** The applicable hurricane deductible:

   **a.** Is either:

     **(1)** The dollar amount shown in the Schedule as the Hurricane Deductible; or

     **(2)** If a percentage is shown in the Schedule, the dollar amount determined by multiplying the Coverage **A** Limit Of Liability shown in the Declarations by the percentage shown as the Hurricane Deductible in the Schedule.

   **b.** Only applies to loss caused by the peril of windstorm or hail during the period:

     **(1)** Beginning at the time a hurricane watch or hurricane warning is issued or declared for any part of the "state" by the National Hurricane Center of the National Weather Service; and

     **(2)** Ending 24 hours following the termination of the last hurricane watch or hurricane warning for any part of the "state" by the National Hurricane Center of the National Weather Service.

**3.** No other deductible applies to loss caused by the peril of windstorm or hail during the period described in Paragraph **B.2.b.** of this endorsement.

**4.** Refer to the policy declarations for the deductible that applies to loss caused by the peril of windstorm or hail other than during the period described in Paragraph **B.2.b.** of this endorsement.

All other provisions of this policy apply.

EXHIBIT A

## EXHIBIT A

POLICY NUMBER:  

**HOMEOWNERS**
**HO 03 36 07 04**

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LIMITED FUNGI, WET OR DRY ROT, OR BACTERIA COVERAGE – GEORGIA
### FOR USE WITH FORMS HO 00 03 AND HO 00 05

### SCHEDULE

| | These limits of liability apply to the total of all loss or costs payable under this endorsement, regardless of the number of "occurrences", the number of claims-made, or the number of locations insured under this endorsement and listed in this Schedule. | |
|---|---|---|
| 1. | Section I – Property Coverage Limit Of Liability for the Additional Coverage "Fungi", Wet Or Dry Rot, Or Bacteria | $ |
| 2. | Section II – Coverage **E** Aggregate Sublimit of Liability for "Fungi", Wet Or Dry Rot, Or Bacteria | $ |
| | Entries may be left blank if shown elsewhere in this policy for this coverage. | |

**DEFINITIONS**

The following definition is added:

**"Fungi"**

   **a.** "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

   **b.** Under Section **II**, this does not include any fungi that are, are on, or are contained in, a good or product intended for consumption.

**SECTION I – PROPERTY COVERAGES**

**E. Additional Coverages**

   Paragraph **10.k.(2)(d)** is deleted in Form **HO 00 05** only.

The following Additional Coverage is added:

   **13. "Fungi", Wet Or Dry Rot, Or Bacteria**

   **a.** The amount shown in the Schedule above is the most we will pay for:

   **(1)** The total of all loss payable under Section I – Property Coverages caused by "fungi", wet or dry rot, or bacteria;

   **(2)** The cost to remove "fungi", wet or dry rot, or bacteria from property covered under Section I – Property Coverages;

   **(3)** The cost to tear out and replace any part of the building or other covered property as needed to gain access to the "fungi", wet or dry rot, or bacteria; and

   **(4)** The cost of testing of air or property to confirm the absence, presence or level of "fungi", wet or dry rot, or bacteria whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reason to believe that there is the presence of "fungi", wet or dry rot, or bacteria.

   **b.** The coverage described in **13.a.** only applies when such loss or costs are a result of a Peril Insured Against that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at and after the time the Peril Insured Against occurred.

© ISO Properties, Inc., 2003

# EXHIBIT A

c. The amount shown in the Schedule for this coverage is the most we will pay for the total of all loss or costs payable under this Additional Coverage regardless of the:

(1) Number of locations insured under this endorsement; or

(2) Number of claims-made.

This coverage does not increase the limit of liability applying to the damaged covered property.

## SECTION I – PERILS INSURED AGAINST

In Form **HO 00 03:**

**A. Coverage A – Dwelling And Coverage B – Other Structures**.

Paragraph **2.c.(5)** is deleted and replaced by the following:

(5) Caused by constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

Paragraph **2.c.(6)(c)** is deleted and replaced by the following:

(c) Smog, rust or other corrosion;

**B. Coverage C – Personal Property**

**12. Accidental Discharge Or Overflow Of Water Or Steam**

Paragraph **b.(4)** is deleted and replaced by the following:

(4) Caused by constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

In Form **HO 00 05:**

**A.** Under Coverages **A,** B and **C:**

Paragraph **2.d.** is deleted and replaced by the following:

d. Caused by constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

Paragraph **2.e.(3)** is deleted and replaced by the following:

(3) Smog, rust or other corrosion;

## SECTION I – EXCLUSIONS

Exclusion **A.10.** is added.

**10. "Fungi", Wet Or Dry Rot, Or Bacteria**

"Fungi", Wet Or Dry Rot, Or Bacteria meaning the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot, or bacteria.

This exclusion does not apply:

a. When "fungi", wet or dry rot, or bacteria results from fire or lightning;

b. To the extent coverage is provided for in the "Fungi", Wet Or Dry Rot, Or Bacteria Additional Coverage under Section **I** – Property Coverages with respect to loss caused by a Peril Insured Against other than fire or lightning; or

c. With respect to "fungi", wet or dry rot, or bacteria that is located on the portion of the covered property that must be repaired or replaced because of direct physical damage caused by a Peril Insured Against.

However, the exclusion shall continue to apply to:

(1) The cost to treat, contain, remove or dispose of "Fungi", Wet Or Dry Rot, Or Bacteria beyond that which is required to repair or replace the covered property physically damaged by a Peril Insured Against;

(2) The cost of any testing of air or property to confirm the absence, presence or level of "Fungi", Wet Or Dry Rot Or Bacteria whether performed prior to, during or after removal, repair, restoration or replacement; and

© ISO Properties, Inc., 2003
HO 03 36 07 04

# EXHIBIT A

(3) Any increase in loss under Coverage **D** – Loss of Use and Additional Coverage **1.** Debris Removal resulting from **c. (1)** and **(2).**

Direct loss by a Peril Insured Against resulting from "fungi", wet or dry rot, or bacteria is covered.

## SECTION I – CONDITIONS

Condition **P. Policy Period** is deleted and replaced by the following:

### P. Policy Period

This policy applies to loss or costs which occur during the policy period.

## SECTION II – CONDITIONS

Condition **A. Limit Of Liability** is deleted and replaced by the following:

### A. Limit Of Liability

Our total liability under Coverage **E** for all damages resulting from any one "occurrence" will not be more than the Coverage **E** limit of liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims-made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions will be considered to be the result of one "occurrence".

Our total liability under Coverage **F** for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage **F** limit of liability shown in the Declarations.

However, our total liability under Coverage **E** for the total of all damages arising directly or indirectly, in whole or in part, out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi", wet or dry rot, or bacteria will not be more than the Section **II** – Coverage **E** Aggregate Sublimit of Liability for "Fungi", Wet Or Dry Rot, Or Bacteria. That sublimit is the amount shown in the Schedule. This is the most we will pay regardless of the:

1. Number of locations insured under the policy to which this endorsement is attached;

2. Number of persons injured;

3. Number of persons whose property is damaged;

4. Number of "insureds"; or

5. Number of "occurrences" or claims-made.

This sublimit is within, but does not increase, the Coverage **E** limit of liability. It applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations.

With respect to damages arising out of "fungi", wet or dry rot, or bacteria described in **A.** Limit Of Liability of this endorsement, Condition **B. Severability Of Insurance** is deleted and replaced by the following:

### B. Severability Of Insurance

This insurance applies separately to each "insured" except with respect to the Aggregate Sublimit of Liability described in this endorsement under Section **II** – Conditions, **A.** Limit Of Liability. This condition will not increase the limit of liability for this coverage.

All other provisions of the policy apply.

EXHIBIT A

EXHIBIT A

**HOMEOWNERS**
**HO 04 86 09 93**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**WINDSTORM EXTERIOR PAINT AND WATERPROOFING EXCLUSION**

Coverage to any building or structure under this policy excludes loss caused by windstorm or hail to paint or waterproofing material applied to the exterior of the building or structure.

EXHIBIT A

EXHIBIT A

HOMEOWNERS
HO 04 96 10 00

THIS ENDORSEMENT DOES **NOT** CONSTITUTE A REDUCTION OF COVERAGE.

# <u>NO</u> SECTION II – LIABILITY COVERAGES FOR HOME DAY CARE BUSINESS
# <u>LIMITED</u> SECTION I – PROPERTY COVERAGES FOR HOME DAY CARE BUSINESS

**A.** "Business", as defined in the policy, means:

  **1.** A trade, profession or occupation engaged in on a full-time, part-time, or occasional basis; or

  **2.** Any other activity engaged in for money or other compensation, except the following:

    **a.** One or more activities:

      **(1)** Not described in **b.** through **d.** below; and

      **(2)** For which no "insured" receives more than $2000 in total compensation for the 12 months before the beginning of the policy period;

    **b.** Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

    **c.** Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

    **d.** The rendering of home day care services to a relative of an "insured".

**B.** If an "insured" regularly provides home day care services to a person or persons other than "insureds" as their trade, profession or occupation, that service is a "business".

**C.** If home day care service is not a given "insured's" trade, profession or occupation but is an activity:

  **1.** That an "insured" engages in for money or other compensation; and

  **2.** From which an "insured" receives more than $2,000 in total/combined compensation from it and any other activity for the 12 months before the beginning of the policy period;

the home day care service and other activity will be considered a "business".

**D.** With respect to **C.** above, home day care service is only an example of an activity engaged in for money that may be a "business". Any single activity or combination of activities:

  **1.** Described in **A.2.** above, and

  **2.** Engaged in for money by a single "insured";

may be considered a "business" if the $2000 threshold is exceeded.

**E.** With respect to **A.** through **D.** above, coverage does not apply to or is limited with respect to home day care service which is a "business". For example, this policy:

  **1.** Does not provide:

    **a.** Section **II** coverages. This is because a "business" of an "insured" is excluded under **E.2.** of Section II – Exclusions;

    **b.** Coverage, under Section **I,** for other structures from which any "business" is conducted; and

  **2.** Limits Section I coverage, under Coverage C – Special Limits of Liability, for "business" property:

    **a.** On the "residence premises" for the home day care "business" to $2,500. This is because Category **h. (e.** in Form **HO 00 08)** imposes that limit on "business" property on the "residence premises";

    **b.** Away from the "residence premises" for the home day care "business" to $500. This is because Category **i. (f.** in Form **HO 00 08)** imposes that limit on "business" property away from the "residence premises". Category **i.** does not apply to property described in Categories **j.** and **k. (g.** and **h.** respectively in Form **HO 00 08)**.

EXHIBIT A

EXHIBIT A

**HOMEOWNERS**
**HO 04 90 10 00**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PERSONAL PROPERTY REPLACEMENT COST LOSS SETTLEMENT

**A. Eligible Property**

1. Covered losses to the following property are settled at replacement cost at the time of the loss:

   **a.** Coverage **C**; and

   **b.** If covered in this policy:

      **(1)** Awnings, outdoor antennas and outdoor equipment; and

      **(2)** Carpeting and household appliances;

      whether or not attached to buildings.

2. This method of loss settlement will also apply to the following articles or classes of property if they are separately described and specifically insured in this policy and not subject to agreed value loss settlement:

   **a.** Jewelry;

   **b.** Furs and garments:

      **(1)** Trimmed with fur; or

      **(2)** Consisting principally of fur;

   **c.** Cameras, projection machines, films and related articles of equipment;

   **d.** Musical equipment and related articles of equipment;

   **e.** Silverware, silver-plated ware, goldware, gold-plated ware and pewterware, but excluding:

      **(1)** Pens or pencils;

      **(2)** Flasks;

      **(2)** Smoking implements; or

      **(3)** Jewelry; and

   **f.** Golfer's equipment meaning golf clubs, golf clothing and golf equipment.

Personal Property Replacement Cost loss settlement will not apply to other classes of property separately described and specifically insured.

**B. Ineligible Property**

Property listed below is not eligible for replacement cost loss settlement. Any loss will be settled at actual cash value at the time of loss but not more than the amount required to repair or replace.

1. Antiques, fine arts, paintings and similar articles of rarity or antiquity which cannot be replaced.

2. Memorabilia, souvenirs, collectors items and similar articles whose age or history contribute to their value.

3. Articles not maintained in good or workable condition.

4. Articles that are outdated or obsolete and are stored or not being used.

**C. Replacement Cost Loss Settlement Condition**

The following loss settlement condition applies to all property described in **A.** above:

1. We will pay no more than the least of the following amounts:

   **a.** Replacement cost at the time of loss without deduction for depreciation;

   **b.** The full cost of repair at the time of loss;

   **c.** The limit of liability that applies to Coverage **C**, if applicable;

   **d.** Any applicable special limits of liability stated in this policy; or

   **e.** For loss to any item described in **A.2.a. - f.** above, the limit of liability that applies to the item.

2. If the cost to repair or replace the property described in **A.** above is more than $500, we will pay no more than the actual cash value for the loss until the actual repair or replacement is complete.

3. You may make a claim for loss on an actual cash value basis and then make claim for any additional liability in accordance with this endorsement provided you notify us of your intent to do so within 180 days after the date of loss.

All other provisions of this policy apply.

EXHIBIT A

EXHIBIT A

POLICY NUMBER:

**HOMEOWNERS**
**HO 04 48 10 00**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# OTHER STRUCTURES ON THE RESIDENCE PREMISES
**INCREASED LIMITS**

**SCHEDULE\***

| Description Of Structure And Additional Limit Of Liability |
| --- |
| |

\*Entries may be left blank if shown elsewhere in this policy for this coverage.

**SECTION I – PROPERTY COVERAGES**
**COVERAGE B – OTHER STRUCTURES**

We cover each structure that is:

1. On the "residence premises"; and
2. Described in the Schedule above;

for the additional limit of liability shown in the Schedule for that structure.

The limit shown is in addition to the Coverage **B** limit of liability.

Each additional limit of liability shown applies only to that described structure.

All other provisions of this policy apply.

EXHIBIT A

## EXHIBIT A

| **NOTICE OF PRIVACY POLICY** <br> **Federal and state law requires us to tell you how we collect, share, and protect your personal information.** | | |
|---|---|---|
| **FACTS** | **WHAT DOES UNIVERSAL INSURANCE HOLDINGS, INC. DO WITH YOUR PERSONAL INFORMATION?** | |
| **Why?** | Financial companies choose how they share your personal information. Applicable law gives consumers the right to limit some but not all sharing. Applicable law also requires us to tell you how we collect, share, and protect your personal information. This notice applies to current and former customers. Please read this notice carefully to understand what we do. | |
| **What?** | The types of personal information we collect and share depend on the product or service you have with us. This information can include: <br> • Information you provide on your application for insurance coverage, such as your name, address, telephone number, and date of birth <br> • Information gathered from you as our insured, your payment history, type of coverage you have, underwriting information, and claims information <br> • Insurance claim history <br> • Bank account information <br> • Mortgage information <br> • Information from your visits to our websites | |
| **How?** | All financial companies need to share customers' personal information to run their everyday business. We use your personal information only as authorized or required by law and as necessary to provide our products and services to you. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons we choose to share; and whether you can limit this sharing. | |

| Reasons we can share your personal information | Do we share? | Can you limit this sharing? |
|---|---|---|
| For our everyday business purposes-We share with non affiliates to assist us to process your transactions, underwrite and/or rate your policy, service your policy, administer claims, respond to court orders and legal investigations, and as permitted by applicable law. | Yes | No |
| For our marketing purposes- <br> to offer our products and services to you | Yes | No |
| For joint marketing with other financial companies | Yes | No |
| For our affiliates' everyday business purposes- information about your transactions and experiences | Yes | No |
| For our affiliates' everyday business purposes- information about your creditworthiness | No | We do not share |
| For non affiliates to market to you | No | We do not share |
| From time to time, we may also share your information with your prior consent | | |
| **Questions?** | Call (800) 425-9113 | |

## EXHIBIT A

| Who we are | |
|---|---|
| Who is providing this notice? | Universal Insurance Holdings, Inc. on behalf of itself and our affiliates listed in this notice. |

| What we do | |
|---|---|
| How do we protect your personal information? | To protect your personal information from unauthorized access and use, we use security measures that comply with applicable law. These measures include computer safeguards and secured files and buildings. Our employees are authorized to access information only for valid business reasons. Our vendors must agree in writing to maintain the confidentiality of non public personal information. When applicable, we do not share medical information unless authorized by you or as allowed or required by law. |
| How do we collect your personal information? | We collect your personal information, for example, when:<br>• you apply for insurance<br>• we process your application<br>• you pay insurance premiums<br>• you give us your contact information<br>• you give information to your agent or property inspector<br>• we obtain information from third party vendors such as claims reporting services, and when applicable, consumer reporting agencies<br>• you file an insurance claim (or if a claim is made against you)<br>• you show us your government-issued ID or driver's license<br>• you visit our website if you voluntarily provide the information<br><br>We also collect information from other companies, such as your loss history. |
| Why can't I limit all sharing? | Applicable law recognizes that sharing some information is necessary and appropriate for us to carry out our business and evaluate, maintain, and service your customer relationship with us. |

| Definitions | |
|---|---|
| Affiliates | Companies related by common ownership or control. They can be financial and nonfinancial companies. This notice applies to our affiliates listed below:<br>Universal Property & Casualty Insurance Company<br>American Platinum Property and Casualty Insurance Company<br>Evolution Risk Advisors, Inc.<br>Atlas Premium Finance Company<br>Alder Adjusting Corporation<br>Wicklow Inspection Corporation<br>Clovered, Inc.<br>Blue Atlantic Reinsurance Corporation<br>Assurance Systems, Inc.<br>Coastal Homeowners Insurance Specialists, Inc. |

## EXHIBIT A

| | |
|---|---|
| Non affiliates | Companies not related by common ownership or control. They can be financial or nonfinancial companies. Non affiliates we share with can include:<br>• Independent insurance agents and agencies<br>• Independent adjusters or claims representatives<br>• Inspection companies<br>• Auditors<br>• Insurance support organizations<br>• Attorneys, courts, and government agencies<br>• Electronic payment processing vendors |
| Joint Marketing | A formal agreement between nonaffiliated financial companies that together market financial products or services to you. |

| Other important information |
|---|
| If you have questions about what information we may have on file and/or our privacy policy, or to request a paper copy of this notice please contact us:<br><br>**Underwriting Department**<br>1110 W Commercial Blvd.<br>Fort Lauderdale, FL 33309<br>(800) 425-9113 |

EXHIBIT A

EXHIBIT A
## EXISTING DAMAGE EXCLUSION

The following is excluded:

1. Damages which occurred prior to policy inception regardless of whether such damages were apparent at the time of the inception of this policy or discovered at a later date; or

2. Claims or damages arising out of workmanship, repairs or lack of repairs arising from damage which occurred prior to policy inception.

**This exclusion does not apply in the event of a total loss caused by a Peril Insured Against.**

EXHIBIT A

EXHIBIT B



**ALDER**
ADJUSTING

02/04/2021

Mr. JAMES JACKSON
20 GIBSON DRIVE
Carrollton, GA 30117
GA21-0100171

RE: Policy Number: 1701-1700-9156
Claim Number: GA21-0100171
Date of Loss: 01/13/2021
First Notice of Loss: 01/13/2021
Insured:   JAMES JACKSON

Dear JAMES JACKSON:

We have completed our investigation of the above referenced claim. After careful consideration we have concluded that coverage does not apply to your loss. Therefore, we must respectfully deny your claim.

As per the adjuster's investigation, upon reviewing his report we could not find coverage for the type and nature of damage caused to your property. The damage in your home occurred as a result of sewage backing up into your bathtub due to a clog in the main drain-line found in the frond yard. A sewage backup that does not originate from within the dwelling or water below the surface of the ground, including water which exerts pressure on, or seeps, leaks or flows through a building, sidewalk, driveway, patio, foundation, swimming pool or other structure are specifically excluded from coverage.

Based on the above, we are hereby denying coverage in connection with this claim.

Please refer to your policy form **HO 00 03 10 00**. We have cited the pertinent language below for your ease of reference:

**SECTION I – PERILS INSURED AGAINST, WEAR & TEAR, page 9 of 22**
**SECTION I – CONDITIONS, B. Duties After Loss, Page 12 of 22**
**SECTION I – EXCLUSIONS, WATER, Backup 12 of 22**

**SECTION I - PERILS INSURED AGAINST, page 9 of 22**
1. We insure against risk of direct physical loss to property described in Coverages A and B.
2. We do not insure, however, for loss:
a. Excluded under Section I – Exclusions;
b. Involving collapse, except as provided in E.8. Collapse under Section I – Property Coverages; or
c. Caused by:
(6) Any of the following:

# EXHIBIT B

(a) Wear and tear, marring, deterioration;
(b) Mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;
(c) Smog, rust or other corrosion, or dry rot;
(d) Smoke from agricultural smudging or industrial operations;
(e) Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against named under Coverage C. Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;
(f) Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings;
(g) Birds, vermin, rodents, or insects; or
(h) Animals owned or kept by an "insured".

**ADDITIONALLY:**
**SECTION I – CONDITIONS Page 12 of 22**

**B. Duties After Loss**
In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:

1. Give prompt notice to us or our agent;
2. Notify the police in case of loss by theft;
3. Notify the credit card or electronic fund transfer card or access device company in case of loss as provided for in E.6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I – Property Coverages;
4. Protect the property from further damage. If repairs to the property are required, you must:
a. Make reasonable and necessary repairs to protect the property; and
b. Keep an accurate record of repair expenses;
5. Cooperate with us in the investigation of a claim;
6. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;
7. As often as we reasonably require:
a. Show the damaged property;
b. Provide us with records and documents we request and permit us to make copies; and
c. Submit to examination under oath, while not in the presence of another "insured", and sign the same;
8. Send to us, within

**ADDITIONALLY:**
**EXCLUSIONS, WATER, Page 12 of 22**

**A.** We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

**3. Water**
This means:
a. Flood, surface water, waves, including tidal wave and tsunami, tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind, including storm surge;
b. Water which:
(1) Backs up through sewers or drains; or
(2) Overflows or is otherwise discharged from a sump, sump pump or related equipment;

# EXHIBIT B

**c.** Water below the surface of the ground, including water which exerts pressure on, or seeps, leaks or flows through a building, sidewalk, driveway, patio, foundation, swimming pool or other structure; or

**d.** Waterborne material carried or otherwise moved by any of the water referred to in **A.3.a.** through **A.3.c.** of this exclusion. This Exclusion **A.3.** applies regardless of whether any of the above, in **A.3.a.** through **A.3.d.,** is caused by an act of nature or is otherwise caused. This Exclusion **A.3.** applies to, but is not limited to, escape, overflow or discharge, for any reason, of water or waterborne material from a dam, levee, seawall or any other boundary or containment system.

However, direct loss by fire, explosion or theft resulting from any of the above, in **A.3.a.** through **A.3.d.,** is covered.


Universal Property and Casualty Insurance Company reserves all rights under the policy provisions to raise additional coverage defenses as they become known to us in the future.

Please let us know at the earliest opportunity, if you have further documentation or other information you wish to submit for our further review and consideration of your claim. Documentation can be uploaded to your claim via your online account at https://universalproperty.com/account/login.

Additionally, you may download the UPCIC Mobile Application, wherein you can upload any and all documents directly to your claim. Please do not hesitate to contact us with any questions regarding this correspondence or any aspect of your claim directly at 1-800-470-0599.

We are committed to our effort of providing superior customer service to our policyholders throughout the claim process.

If this document contains an excerpt from a Universal Property and Casualty Insurance Policy (" the Policy ") it is provided here for informational purposes only.  This excerpt is not the official version of the Policy.  The official version of the Policy is the policy issued to the insured on the policy effective date.  In the event there is inconsistency between this document and the Policy, the Policy shall serve as the official version.

Thank you.


Sincerely,
/s/ Sandraly Aponte
National Claims Examiner

EXHIBIT C



**ALDER**
ADJUSTING

05/07/2021

Mr. JAMES JACKSON
20 GIBSON DRIVE
Carrollton, GA 30117
GA21-0100171

RE: Policy Number: 1701-1700-9156
Claim Number: GA21-0100171
Date of Loss: 01/13/2021
First Notice of Loss: 01/13/2021
Insured:   JAMES JACKSON

Dear JAMES JACKSON:

We have received your recent correspondence and have re-evaluated your claim. We have reviewed the merits of your claim, and unfortunately, we are standing by our original recommendation and denial of your loss.

Our investigation was concluded and after our review we could not find coverage for the type and nature of damage caused to your property. The damage in your home occurred as a result of sewage backing up into your home. A sewage backup that does not originate from within the dwelling or water below the surface of the ground, including water which exerts pressure on, or seeps, leaks or flows through a building, sidewalk, driveway, patio, foundation, swimming pool or other structure are specifically excluded from coverage.

Based on the above, we are standing by the original position that this claim. We have enclosed a copy of the original denial letter which clarifies our coverage position further.

Please refer to your policy form **HO 00 03 10 00**. We have cited the pertinent language below for your ease of reference:

**SECTION I – PERILS INSURED AGAINST, WEAR & TEAR, page 9 of 22**
**SECTION I – CONDITIONS, B. Duties After Loss, Page 12 of 22**
**SECTION I – EXCLUSIONS, WATER, Backup 12 of 22**

**SECTION I - PERILS INSURED AGAINST, page 9 of 22**
1. We insure against risk of direct physical loss to property described in Coverages A and B.
2. We do not insure, however, for loss:
a. Excluded under Section I – Exclusions;
b. Involving collapse, except as provided in E.8. Collapse under Section I – Property Coverages; or
c. Caused by:

1110 W. Commercial Blvd. Suite 305  Fort Lauderdale, FL 33309
Ph. 954-958-1205  1-800-470-0599  Fax. 954-958-1206

# EXHIBIT C

(6) Any of the following:
(a) Wear and tear, marring, deterioration;
(b) Mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;
(c) Smog, rust or other corrosion, or dry rot;
(d) Smoke from agricultural smudging or industrial operations;
(e) Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against named under Coverage C. Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;
(f) Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings;
(g) Birds, vermin, rodents, or insects; or
(h) Animals owned or kept by an "insured".


**ADDITIONALLY:**


**SECTION I – CONDITIONS Page 12 of 22**


**B. Duties After Loss**
In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:

1. Give prompt notice to us or our agent;
2. Notify the police in case of loss by theft;
3. Notify the credit card or electronic fund transfer card or access device company in case of loss as provided for in E.6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I – Property Coverages;
4. Protect the property from further damage. If repairs to the property are required, you must:
a. Make reasonable and necessary repairs to protect the property; and
b. Keep an accurate record of repair expenses;
5. Cooperate with us in the investigation of a claim;
6. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;
7. As often as we reasonably require:
a. Show the damaged property;
b. Provide us with records and documents we request and permit us to make copies; and
c. Submit to examination under oath, while not in the presence of another "insured", and sign the same;
8. Send to us, within


**ADDITIONALLY:**


**EXCLUSIONS, WATER, Page 12 of 22**


**A.** We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.


**3. Water**
This means:
**a.** Flood, surface water, waves, including tidal wave and tsunami, tides, tidal water, overflow of any body of

## EXHIBIT C

water, or spray from any of these, all whether or not driven by wind, including storm surge;

**b.** Water which:

 **(1)** Backs up through sewers or drains; or

 **(2)** Overflows or is otherwise discharged from a sump, sump pump or related equipment;

**c.** Water below the surface of the ground, including water which exerts pressure on, or seeps, leaks or flows through a building, sidewalk, driveway, patio, foundation, swimming pool or other structure; or

**d.** Waterborne material carried or otherwise moved by any of the water referred to in **A.3.a.** through **A.3.c.** of this exclusion. This Exclusion **A.3.** applies regardless of whether any of the above, in **A.3.a.** through **A.3.d.,** is caused by an act of nature or is otherwise caused. This Exclusion **A.3.** applies to, but is not limited to, escape, overflow or discharge, for any reason, of water or waterborne material from a dam, levee, seawall or any other boundary or containment
system.

However, direct loss by fire, explosion or theft resulting from any of the above, in **A.3.a.** through **A.3.d.,** is covered.

Universal Property and Casualty Insurance Company reserves all rights under the policy provisions to raise additional coverage defenses as they become known to us in the future.

Please let us know at the earliest opportunity, if you have further documentation or other information you wish to submit for our further review and consideration of your claim. Documentation can be uploaded to your claim via your online account at https://universalproperty.com/account/login.

Additionally, you may download the UPCIC Mobile Application, wherein you can upload any and all documents directly to your claim. Please do not hesitate to contact us with any questions regarding this correspondence or any aspect of your claim directly at 1-800-470-0599.

We are committed to our effort of providing superior customer service to our policyholders throughout the claim process.

If this document contains an excerpt from a Universal Property and Casualty Insurance Policy (" the Policy ") it is provided here for informational purposes only.  This excerpt is not the official version of the Policy.  The official version of the Policy is the policy issued to the insured on the policy effective date.  In the event there is inconsistency between this document and the Policy, the Policy shall serve as the official version.

Thank you.

Sincerely,
/s/ Sandraly Aponte
National Claims Examiner

**IN THE STATE COURT OF DEKALB COUNTY**
**STATE OF GEORGIA**

| | |
|---|---|
| RHONDA A. JACKSON, as ADMINISTRATRIX of the ESTATE of JAMES JACKSON, | CIVIL ACTION NO. 23A00192 |
| **Plaintiffs,** | |
| **vs.** | **JURY TRIAL REQUESTED** |
| UNIVERSAL PROPERTY & CASUALTY INSURANCE COMPANY, | |
| **Defendants.** | |

## PLAINTIFF'S LR 5.2 Certificate of Service of Discovery Material

COMES NOW Plaintiff in the above-styled matter, by and through her undersigned counsel of record, and, pursuant to Uniform State Court Rule 5.2, hereby certifies that true and correct copies of the following documents:

• **Plaintiff's First Continuing Interrogatories, Requests for the Production of Documents, and Requests for Admission to Defendant Universal Property & Casualty Insurance Company**

have been delivered for service upon the above-specified Party along with the Complaint and Summons in the above-styled matter in the same manner and by the same method as the Complaint and Summons. Further proof shall be shown by filing of the Sheriff's Entry of Service, a Process Server's Affidavit of Service, or such other proof of service as may be lawfully required and appropriate given the exigencies of the above-styled matter.

Respectfully Submitted, this 13th day of January, 2023.

CARTER JEFFRIES, LLC

/s/Carson Jeffries                              47 Perimeter Center East, Suite 530
CARSON L. JEFFRIES, ESQ.              Atlanta, GA 30346
Georgia Bar Number 100139               ph: (404) 341-6653
cjeffries@moldfirm.com
**ATTORNEY FOR PLAINTIFF**

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the within and foregoing 5.2 Certificate of Service of Discovery Material has been delivered for service upon all Parties along with the Complaint, Summons, and Discovery Requests as set forth in the foregoing 5.2 Certificate of Service Discovery in the above-styled matter in the same manner and by the same method as the Complaint and Summons. Further proof shall be shown by filing of the Sheriff's Entry of Service, a Process Server's Affidavit of Service, or such other proof of service as may be lawfully required and appropriate given the exigencies of the above-styled matter.

Respectfully Submitted, this 13th day of January, 2023.

CARTER JEFFRIES, LLC

/s/Carson Jeffries                               47 Perimeter Center East, Suite 530
CARSON L. JEFFRIES, ESQ.               Atlanta, GA 30346
Georgia Bar Number 100139              ph: (404) 341-6653
cjeffries@moldfirm.com
**ATTORNEY FOR PLAINTIFF**

## IN THE STATE COURT OF DEKALB COUNTY
### STATE OF GEORGIA

| | |
|---|---|
| RHONDA A. JACKSON, as ADMINISTRATRIX of the ESTATE of JAMES JACKSON, | CIVIL ACTION NO. |
| **Plaintiffs,** | **23-A-00192** |
| **vs.** | **JURY TRIAL REQUESTED** |
| UNIVERSAL PROPERTY & CASUALTY INSURANCE COMPANY, | |
| **Defendants.** | |

## PLAINTIFF'S FIRST CONTINUING INTERROGATORIES, REQUESTS TO PRODUCE DOCUMENTS, AND REQUESTS FOR ADMISSION TO DEFENDANT UNIVERSAL PROPERTY & CASUALTY INSURANCE COMPANY

**COMES NOW, Rhonda A. Jackson, as administratrix of the Estate of James Jackson,** Plaintiff herein, by and through her undersigned counsel, and pursuant to OCGA §§ 9-11-33, 9-11-36 and 9-11-34, submits this, her Plaintiff's First Continuing Interrogatories, Requests to Produce Documents, and Requests for Admissions to Defendant Universal Property & Casualty Insurance Company for purposes of discovery and all other purposes authorized by law.

Pursuant to the Georgia Civil Practice Act, if you fail to properly and timely serve your written responses or objections Plaintiff's Requests for Admission within forty-five (45) days after service of the Summons and Complaint in the above-styled matter, then the matters shall be deemed admitted. If you do object to any request, you must state your reasons for asserting the objection. If you answer to a specific request to admit is anything other than an unequivocal admission, then your answer should specifically deny the matter or set forth in detail the reasons why you cannot truthfully admit or deny the matter. Any denial should fairly meet the substance of the requested admission; and, when good faith requires that you qualify your answer or deny only a part of the matter of which an admission is requested, you must specify so much of it as is true and qualify or deny the remainder. You may not give lack of information or knowledge as a reason for failure to admit or deny unless you state that you have made reasonable inquiry and that the information known or readily obtainable by you is insufficient to enable you to admit or deny.

You are also instructed to answer the following Interrogatories, separately and fully in writing under oath, and to serve said answers upon counsel for Plaintiff within forty-five (45) days after service of these requests along with the Summons and Complaint in the above-styled matter. If you object to any portion of any interrogatory, answer such interrogatory fully to the extent that such objection does not apply.  If you are unable to give an exact date or amount, please give the best approximate date or amount which can be provided. If you are unable to answer any part of

any Interrogatory, answer the remaining parts as fully as possible and specify which part or parts you are unable to answer and why.

You are also instructed to answer the following Requests to Produce, separately and fully in writing, and to serve said responses upon counsel for Plaintiffs within forty-five (45) days after service of these requests along with the Summons and Complaint in the above-styled matter. Defendant must also produce a copy of each document responsive to the Requests to Produce Plaintiff's attorneys of Record-Carter Jeffries, LLC, 47 Perimeter Center East, Suite 530, Atlanta, GA 30346 (reasonable copying charges will be paid).

If any requested document is withheld because you claim it is privileged, you should include a statement of the basis for the privilege. You must describe the allegedly privileged material in a manner that, without revealing information itself privileged, will enable counsel to assess the applicability of the privilege.

Each of the following Interrogatories and Requests to Produce shall be deemed continuing and must be supplemented to the extent required by OCGA § 9-11-26.

## I. DEFINITIONS

1.     When used herein, **"Defendant"** or **"you"** or **"yours"** each refer to Defendant Universal Property & Casualty Insurance Company as identified in the style of this case and/or any affiliates, subsidiaries, predecessors-in-interest, and/or successors-in-interest of Defendant, and to any and all parties or persons acting on behalf of one or more of these entities, including, but not limited to, employees, officers, managers, directors, associates, consultants, investigators, secretaries, assistants, agents, brokers, claims adjusters, or attorneys.

2.     When used herein, **"Communication"**: shall refer to all communication, whether written or oral or by electronic means, including, but not limited to, telephone conversations, letters, memoranda, e-mails, facsimiles, reports, interviews, statements, contracts, agreements and consultations. Whenever a request refers to conversations with others, such request also refers to communications with all persons acting on behalf of that other, including, but not limited to, employees, officers, managers, directors, parent corporations, subsidiaries, associates, consultants, investigators, secretaries, assistants, agents, brokers, claims adjusters, or attorneys.

3.     When used herein, **"Plaintiff"** refers to the Plaintiff as identified in the style of this action, unless specifically designated otherwise by the language of the Interrogatory.

4.     When used herein, **"Subject Property"** shall mean the structure and lot located at **20 Gibson Drive, Carrollton, Georgia 30117.**

5.     When used herein, "**Claim**" shall reference Claim # **GA21-0100171**, filed under **Universal Property & Casualty Insurance Company Policy # 1701-1700-9156**, as held by insured James Jackson, with a date of loss of **January 13, 2021**.

6.     When used herein, "**Insurer**" shall refer to **Universal Property & Casualty Insurance Company**, and/or all related entities, such as parent corporations, sister corporations, predecessors-in interest, successors-in-interest, affiliates, and/or subsidiaries, and to any and all parties or persons acting on behalf of one or more of these entities, including, but not limited to, employees, officers, managers, directors, associates, consultants, investigators, secretaries, assistants, agents, brokers, claims adjusters, or attorneys.

7.     As used herein, "**document**" shall be construed broadly and expansively to include any medium upon which information is recorded, including, but not limited to, contracts, agreements, applications, forms, policies, claims, files, records, letters, correspondence, minutes, logs, memoranda, notes, electronic evidence (as defined herein, photocopies, facsimiles, transcripts, pleadings, claims, sketches, drawings, designs, blueprints, graphs, photographs, videotapes, audiotapes, microfilm, charts, studies, tables, calculations, analyses, summaries, pricing data, other data, compilations, advertisements, fliers, mailings, brochures, notices, acknowledgements, and any draft of the foregoing, which is, or has been, at any time, in the control, custody or possession of insurer.

8.     As used herein, "**electronic evidence**" shall be construed broadly and expansively to include any electronic medium upon which information is recorded, including, but not limited to, computer tapes, computer disks, computer cards, computer files, computer systemts, computer databases, e-mails, floppy discs, zip discs, backup tapes, mainframes, hard drives, computer presentations, PowerPoint slides, calendars, directories, diaries, application programs, data files and file fragments, word processing files and file fragments.

9.     As used herein, "**pricing information**" shall mean any document and/or electronic evidence and/or communication obtained, collected, compiled, created, modified, purchased, sold, and/or used by defendant and/or insurer, relating or in any way pertaining to the price and/or cost and/or estimated price and/or cost of any repair, restoration, replacement and/or construction of any movable or immovable property, including, but not limited to, material, labor, tax, overhead and profit, minimum price, base service charge, and/or other element(s) of a price and/or cost.

10.    The terms "**and**" and "**or**" and "**and/or**" shall be construed broadly and expansively as "and/or", and shall not be construed to limit the documents or information sought in any manner.

11.     The term "**relate**" (including "relating", "related" and/or "relates") shall be construed broadly and expansively to mean consisting of, referring to, reflecting, ro in any way referring to, reflecting, or being in any way legally, logically, or factually connected with the matters discussed.

12.     As used herein, **"date"** shall mean the exact date, month, and year, if ascertainable, or if not, the best available approximation (including relationship to other events).

13.     As used herein, **"identify"** or **"specify,"** when used in reference to:

        a.  a person who is an **individual**, means to state his full name, present or last known residence address (designating which), and present and last known business or government affiliation (designating which) job title, employment address, business, and residence telephone numbers (designating which);

        b.  in the case of a **document**, the title (if any), the date, author, sender, recipient, the identity of the person signing it, type of document (i.e., a letter, memorandum, book, telegram, chart, etc.) or some other means of identifying it, and its present location;

        c.  in the case of a **communication**, the date, subject matter, communicator, communicatee, nature of the communication, whether it was recorded or otherwise memorialized, and the identity of any witnesses thereto; in the case of a document within the possession, custody, control, or access of Defendant, whether Defendant will make it available to Plaintiffs' attorneys for inspection and/or copying; and in the case of a document that was, but is no longer, in the possession, custody, or control of Defendant, any disposition made of such document, and why such disposition occurred.

14.     <u>**Scope of Time**</u>. Unless otherwise indicated, each Interrogatory is limited, in scope of time, to the period from **January 1, 2020** through and including the date of Defendant's answer hereto.

15.     <u>**Method of Response**</u>.  When the identification of documents is requested by these Interrogatories, Defendant may, in lieu of identification, attach legible copies of the documents to its answer to the Interrogatories, provided Defendant marks each document to designate the specific Interrogatory to which the document is responsive.

## II. INTERROGATORIES

**Please provide verified responses to the following interrogatories:**

1.     Please identify any persons that contributed to, participated in or assisted with the preparation these interrogatory responses.

2.      With respect to Plaintiff's requests for admissions being served with these interrogatories, please provide the factual basis and your reasoning for any responses other than unequivocal admissions.

3.      Describe with particularity the investigation undertaken, and documents reviewed, in relation to formulating your responses to these discovery requests.  Identify all persons and all documents relating to your answer.

4.      If you have received assistance from, or made inquiry of, any person in responding to these discovery requests, identify fully each such person and state which discovery request(s) each such person assisted with, or was inquired with respect to.  Identify all documents relating to your answer.

5.      Please identify any person or entity not named to this action which Defendant believes is partially or wholly liable for Plaintiffs' injuries in this matter and briefly summarize the facts and reasoning for including said parties.

6.      Describe in complete detail all statements made by you regarding Plaintiff's Claim, whether oral, written, emailed or recorded in any other way, including but not limited to, a stenographic, mechanical, electrical, audio, video, motion picture, photograph, or other recording, or transcription thereof, and include:

      a.      Date, place, and time taken;
      b.      Name and address of the person or persons connected with taking it;
      c.      Names and addresses of all persons present at the time it was taken;
      d.      Whether the statement was oral, written, shorthand, recorded, taped, etc.
      e.      Whether it was signed;
      f.      Names and addresses of the persons or organizations under whose direction and upon whose behalf it was taken or made; and,
      g.      Please attach an exact copy of the original of said statement, interview, report, film, email or tape to your answers to these interrogatories; if oral, please state verbatim the contents thereof.

7.      Identify each and every communication and documentation of any medium exchanged between any of Defendant's employees, their supervisors, contractors, or agents concerning or relating in any way to your investigation or handling of the Claim or the Instant Dispute.

**\*Your response should also include interoffice communications and any documents and/or attachments.\***

8.      Identify each and every communication or documents of any medium exchanged between you and **Alder Adjusting** and any **other claims adjusters, remediators, environmental inspectors, other contractors** concerning or relating in any way to your investigation or handling of the Claim or the Instant Dispute.

9.      Identify all experts who, on your behalf and/or at your direction, or on behalf of or at the direction of any of your agents, employees, or representatives, participated in the investigation of

the claim involved in this action, specifying: a summary of all opinions expressed by such expert and the basis and reasons therefore; the data or information considered by the expert in forming his or her opinion; and, identifying any report, evaluation, estimate or other document produced or used by said expert.

      a.    For each expert identified in your response, please identify the total number of other claims in which you have been involved for which you also retained said expert.

10.     Identify all persons or entities with knowledge of the Claim of whom you are aware, and state whether any investigator, to your knowledge, (whether retained or hired by you, your attorney or otherwise) has contacted any of the persons or parties in person or by telephone, and if so whether a statement was taken. Identify all persons and documents relating to your answer.

11.     If you assert that any information, documents, or materials requested herein by any interrogatory or request for production is privileged, please identify each item as to which a claim of privilege is made, stating as to each:

      a.    The nature of the item;
      b.    The author of the item;
      c.    The name and address of the present custodian; and
      d.    The privilege claimed.

12.     Identify by name and category all documents reviewed in relation to making your determination as to Plaintiff's Claim for payment related to dwelling, alternative living expenses, loss of use, or personal property Claims. Your response should include any and all documents exchanged with Alder Consulting.

13.     State whether Plaintiff complied with any and all conditions precedent entitling it to the benefits of their policy of insurance with the Defendant as a result of their loss, and if your answer is "no" specify each condition precedent which has not been performed by Plaintiff; any notice, communication, correspondence or document given by the Defendant to Plaintiff relating to any such condition precedent; identify any other document, correspondence or communication relating to any such condition precedent and the Plaintiff's alleged failure to comply therewith; and, whether Defendant claims to have been prejudiced by any alleged failure of Plaintiff to perform any condition precedent, and if so, a detailed explanation and list of each way the Defendant has been prejudiced.

14.     List and explain each and every reason Defendant denied Plaintiff's Claim under the policy and identify any and all documents which support or form the basis of your refusal to pay the policy limits. Your response should include the factual basis, supporting physical evidence, and relevant policy portions supporting your denial of the claim as set forth in the May 7, 2021 and February 4, 2021 denial letters sent to Plaintiff and attached to Plaintiff's complaint as Exhibits B and C.

15.     Identify all documentation reviewed by Defendant in determining the undisputed figure related to Plaintiff's dwelling, alternative living expenses, loss of use, and personal property Claims.

16.     In relation to Defendant's initial February 4, 2021 denial and second May 7, 2021 denial of Plaintiff's Claims for Loss to Plaintiff's dwelling, alternative living expenses, loss of use, and personal property that are the subject of the matter at bar, how did Defendant determine it possessed enough information to conclude that Plaintiff was not owed any amount of money for dwelling, alternative living expenses, loss of use, and personal property losses or claims?

     a.     Please identify each and every person or entity who made or assisted in making this decision.
     b.     List every piece of information available and relied upon to make this decision by the person(s) listed above in subsection a.
     c.     On what date did defendant receive the items listed above in subsection b, utilized for making any coverage or payment decisions with respect to Plaintiff's Claim.
     d.     How did this defendant determine to the amount tendered to plaintiff in its undisputed figure.

17.     Please describe and itemize every fact and piece of evidence supporting Defendant's position as to the **cause and location** of the sewage blockage that caused the claimed loss. Your response should clearly set forth the justification for Defendant's claim that "the damage in [the Subject Property] occurred as a result of sewage backing up into your bathtub due to a **clog in the main drain-line found in the front yard."** February 4, 2021 denial letter, Exhibit B to Plaintiff's Complaint; and also Exhibit C to Plaintiff's Complaint, May 7, 2021 supplemental denial letter ("The damage in your home occurred as a result of sewage backing up into your home. A sewage backup that does not originate from within the dwelling…").

18.     Please provide the basis, including reference to relevant policy provisions, for Defendant's position pursuant to the February 4, 2021 and May 7, 2021 denial letters (Plaintiff's Complaint, Exhibits B & C) that sewage backups due to plumbing blockages on the residence premises are excluded if they "[do not] originate from within the dwelling."

19.     Please explain why Defendant sent proof of loss forms to Plaintiff on January 13, 2023 when Defendant had already denied that Plaintiff's loss claims were not covered under the policy? Your response should include why you failed to send this request until January 13, 2023.

20.     List any additional information or documentation this Defendant needs, requires, or otherwise lacks in order to make its determination that additional payment(s) are due to Plaintiff on the dwelling, alternative living expenses, loss of use, and personal property Claims that form the subject matter of this litigation.

21.     Please describe any policies and/or procedures that you had in effect at the time of the events alleged in the instant dispute for investigating, handling and/or addressing any loss claims that involve water, sewage and/or mold loss or damage.

a.  Please identify any water, sewage or mold remediation guidelines that you considered to be authoritative at the time of the events alleged herein and/or which such guidelines you relied upon in developing your policies and procedures investigating, handling and/or addressing loss claims involving water, sewage and/or mold loss or damage.

b.  For each procedural step or policy identified herein, please indicate whether each step was followed and the factual support for your response.

c.  Please identify any documents that you relied upon with respect to your response herein, including any written policies or procedures as well as any documents memorializing, proving or demonstrating your steps in investigating or handling this Claim or complying with the policies and procedures identified herein. Your response should include any documents or evidence received from Alder Adjusting.

22.     Including but not limited to Alder Adjusting, for any contractors, remediators, vendors or other person(s) or parties with whom you contracted, communicated, or made payments to for work they performed in any way relating to the repair, investigation or handling of this claim, please identify each any every document, including proof of payments, estimates, and reports, as well as communication with each said person or entity.

23.     Please describe the procedures used by Defendant in existence at the time Plaintiff's claim was filed to determine property insurance benefits to be paid to claimants generally in the State of Georgia from the moment Defendant receives notice of the claim until the file is closed, including, but not limited to, the steps, the timetable, the company departments and individual positions involved, and the all the documents, forms, authorizations, and other required paperwork involved in applying for and securing approval for payment of the claim, including the application and approval process, the method for calculating claim value, the procedure for closing the claim file, etc. and indicate whether or not there have been any changes or alterations to those manuals or documents since January 1, 2020.

24.     What procedures, if any, were in effect from January 1, 2020 to the present by which Defendant sought to have its employees and agents, including Alder Adjustments, implement the standards set forth in the Goergia Insurance Code, Georgia Uniform Deceptive Trade Practices Act (O.C.G.A. §10-1-370, et seq. and applicable consumer protection laws), Georgia Fair Business Practices Act (O.C.G.A. §10-1-390, et seq.), Georgia Unfair Claims Settlement Practices Act (O.C.G.A. §33-6-30, et seq.) and the Georgia bad faith statute (O.C.G.A. § 33-4-6)?

25.     Identify all written policies, claim manuals, or other written communications setting forth Defendant's practices, procedures, or policies regarding the handling of dwelling, alternative living expenses, loss of use, and personal property insurance claims in Georgia in effect as of the date of receiving notice of Plaintiff's Claim.

26.     For each and every interrogatory response or written response to a Request to Produce containing an objection, please indicate whether your answer is complete or, conversely, if

additional information, documentation, or evidence exists that you are not providing on the basis of your objection, please provide a general description of the withheld information or documentation and the basis for the withholding.

27.     Please identify *any and all* documents, correspondence, or other tangible evidence of any format whatsoever that either (i) relates or pertains to, or (2)  could reasonably lead to the discovery of any admissible evidence or knowledge relating or pertaining to any of the following: the facts, claims, allegations, denials, causes of action, defenses, affirmative defenses, pleadings, counterclaims or other matters that have been asserted or *could be asserted* by *any parties* to the above-styled Matter. Your response should include a brief summary of the evidentiary item's relevance or probative value as well as its location and/or the contact information for the person in possession, custody or control of the evidence.

28.     Please provide the factual basis and your legal reasoning for each and every affirmative defense, denial, counterclaim, either contained in your responsive pleadings or which you may plead in this Matter.

29.     Please identify *any and all* witnesses that you may call to support any of the facts, claims, defenses, affirmative defenses, denials of allegations, counterclaims, Answers, or responsive pleadings that you have plead or may plead in this Matter, being sure to include their contact information and a brief summary of the relevance or probative value of the information, knowledge or evidence that they possess.

30.     Please identify *any and all* persons or parties possessing knowledge or information that is reasonably related to the discovery of any admissible evidence or knowledge relating or pertaining to any of the following: the facts, claims, allegations, causes of action, defenses, affirmative defenses, denials of allegations, pleadings, counterclaims, or other matters that have been asserted or *could be asserted* by *any of the parties* to the above-styled Matter. Your response should include their contact information and a brief summary of the relevance or probative value of the information, knowledge or evidence that they possess.

31.     Please identify *any and all* documents, correspondence, or other tangible evidence of any format whatsoever that you may introduce or rely upon to support any of the defenses, affirmative defenses, counterclaims, denials of allegations, Answers, or responsive pleadings that you have plead or may plead in this Matter. Your response should include a brief summary of the evidentiary item's relevance or probative value as well as its location and/or the contact information for the person in possession, custody or control of the evidence.

### III. Requests for Production

1.     Produce copies of all documents identified in your responses to the foregoing Interrogatories, all documents that should have been identified in your responses to the foregoing Interrogatories, and all documents of which identification was requested in the foregoing

Interrogatories.

2.      Produce copies of all documents relating to the Claim.

3.      Produce all documents and evidence exchanged with or received from Alder Adjusting.

4.      Please produce every communication between Defendant and Alder Adjusting relating to the adjustment of this Claim.

5.      Produce copies of all documents, communications, inter-office memos, reports, chronicles, letters, correspondence, emails, computerized records or writings that mention, concern, discuss or pertain to the Plaintiff, the Claim and/or the incident.

6.      Produce copies of all written or recorded statements made by you or any other person, that are within your custody or control regarding any element or issue presented in this lawsuit.

7.      Produce a certified copy of the insurance policy, including policy jacket and declarations page, in place at the time of the Claim.

8.      Produce a copy of the claim file regarding plaintiff's Claim including any data maintained by a web-based claim management system.

9.      Produce a copy of any file related to this claim including any files exchanged with any in-house or out of house counsel.

10.     Produce copies of each and every communication or documentation of any medium exchanged between any of Defendant's employees or contractors concerning or relating in any way to your investigation or handling of the Claim or the Instant Dispute. Your response should include **interoffice communications between your employees or with their supervisors or managers** as well as any attachments.

11.     Produce copies of each and every communication or documentation of any medium exchanged between you and any of the other named Parties to **this action or any other claims adjusters, remediators, environmental inspectors, other contractors** concerning or relating in any way to your investigation or handling of the Claim or the Instant Dispute.

12.     Produce a copy of your agent's file including any supporting documentation. Your production should include but not be limited to all of the following:

   a) photographs;
   b) acknowledgment of claims letters;
   c) denial letters;
   d) acceptance of coverage letters;
   e) Proofs of loss;
   f) explanations of benefits;
   g) any checks or payments to Plaintiff;

h) any checks payments to any third parties, vendors, or creditors;
i) e-mails;
j) facsimiles;
k) letters;
l) reports;
m) digital or audio recorded statements or records;
n) Any social networking statements, messages or postings;
o) customer notices or complaints;
p) claims notices;
q) field notes;
r) journals;
s) environmental inspection reports or opinions;
t) engineering notes or reports or opinions;
u) medical reports or opinions;
v) logs;
w) draft proposals or scopes of work;
x) work notes;
y) estimates or calculations;
z) moisture log readings;
aa) moisture mapping;
bb) equipment readings or records of equipment readings;
cc) work orders;
dd) internal memoranda discussing or in any way relating to your investigation or handling of Plaintiff's Claims;
ee) conversation records or logs,
ff) incident reports;
gg) fire incident reports;
hh) complaints, reports, warnings, citations, or fines from any governmental authority;
ii) demand letters;
jj) videos;
kk) Photos; or
ll) other tangible evidence or samples.

13. Produce copies of any claims handling manuals, memoranda, procedures, and policies in place at the time the claim was made.

14. A copy (including Excel version) of this dwelling, alternative living expenses, loss of use, and personal property Claim indicating all methodologies and assumptions and providing all supporting documentation reviewed pertaining to this Claim.

15. As to each expert witness whom you expect to call at trial, provide:

      a.      all documents provided to any expert witness whom you expect to call at trial, including correspondence, videos, photographs, manuals, measurements, notes, physical evidence, statements, summaries, records, reports, literature, memoranda, or any other documents prepared by you, your attorney, or agents.

      b.      any records, reports, notes, memoranda, bills, correspondence, or other documents prepared by any expert in connection with this case;

      c.      copies of any manuscripts, drafts, galleys, outlines, slides, and the like, concerning any oral or written presentations made by the expert on any subject relevant to this case which are not in the public domain;

      d.      transcripts of any deposition or trial testimony in the expert's possession or control on any subject relevant to this case;

      e.      a current curriculum vitae for each such expert

      f.      any exhibits prepared by or with the assistance of the expert which are intended to illustrate aspects of the expert's testimony.

16.     A complete copy of all claims files relating in any way to any claims filed under Plaintiff's **Policy # 1701-1700-9156.**

17.     Please produce a copy of any and all claims in which a lawsuit was filed against Defendant for bad faith refusal to settle a claim pursuant to O.C.G.A. §33-4-6 or 33-4-7. If you contend that this request is unduly burdensome, then please provide a list, including the date, policyholder/plaintiff's name, and the basis of the complaint, for each such lawsuit.

18.     Please produce a copy of all correspondence sent to and received from the Office of the Insurance Commissioner for the State of Georgia regarding any claims that were made against Defendant for bad faith pursuant to O.C.G.A. §33-4-6 or 33-4-7.

19.     All claims manuals, memoranda, directives, letters, and other forms of written communication directed to claims personnel, claims managers, claims supervisors, or any other person acting on behalf of Defendant in the handling of claims that refer or relate in any way to the handling of claims generally or to the handling of claims of like character to the claim at issue in this action, including without limitation:

      a.      The documents reflecting Defendant's claim settlement policies as they existed at the time the settlement demand was received by Defendant in the instant action; and

      b.      The documents reflecting any subsequent changes of the policy.

20.     All claims manuals, memoranda, directives, letters, and other forms of written communication directed to claims personnel, claims managers, claims supervisors, or any other person acting on behalf of Defendant in the handling of claims that refer or relate in any way to the handling of Plaintiff's claim generally or to the handling of claims of like character to the claim at issue in this action, including, without limitation:

      a.      The documents reflecting Defendant's claim settlement policies as they existed at the time the settlement demand was received by Defendant in this instant action; and

      b.      The documents reflecting any subsequent changes of the policy.

21.     Please produce any and all documents in your possession dealing with Defendant's philosophy on "good faith" claims practices, "bad faith" claims practices, and your company's policy on "unfair or deceptive claims practices."

22.     Please produce each and every document, report, test result, communication or piece of evidence that you or your agent relied upon in forming your opinion as to the cause of the loss, sewage backup and location of the obstruction/blockage as set forth in your February 4, 2021 and May 7, 2021 denial letters. See Exhibits B&C of Plaintiff's Complaint.

23.     Copies of any policies and/or procedures that you had in effect at the time of the events alleged in the instant dispute for investigating, handling and/or addressing claims involving in any way water, sewage and/or mold loss or damage.

24.     Copies of any water, sewage or mold remediation guidelines that you considered to be authoritative at the time of the events alleged herein and/or which such guidelines you relied upon in developing your policies and procedures investigating, handling and/or addressing loss claims involving water, sewage and/or mold loss or damage.

25.     Copies of any documents or communications that you relied upon or which memorialize any actions taken by your employees, independent contractors, including Alder Adjusting, or adjusters demonstrating your steps in investigating or handling this Claim or complying with any applicable policies and procedures applicable to the handling of any claims involving water, sewage, or mold loss.

26.     Including but not limited to Alder Adjusting, for any contractors, remediators, vendors or other person(s) or parties with whom you contracted, communicated, or made payments to for work they performed in any way relating to the repair, investigation or handling of this claim, please provide copies of each any every document, including proof of payments, estimates, and reports, as well as communication exchanged or shared with each said person or entity.

27.     Including but not limited to Alder Adjusting, copies of each and every communication of any medium between any of Defendant's employees, contractors, or agents concerning or relating in any way to your investigation or handling of the Claim or the Instant Dispute, including but not limited to interoffice emails, DMs, memoranda, letters, text messages, etc.

28.     Copies of any mold reports, environmental inspections, engineering reports, or other reports obtained by Defendant concerning this matter.

29.     Copies of *any and all* documents, correspondence, or other tangible evidence of any format whatsoever that you may introduce or rely upon to support any of the defenses, affirmative defenses, counterclaims, denials of allegations, Answers, or responsive pleadings that you have plead or may plead in this Matter. If the evidence is not in your possession, please provide a brief summary of the evidentiary item's relevance or probative value as well as its location and/or the contact information for the person in possession, custody or control of the evidence.

30.     Copies of *any and all* documents, correspondence, or other tangible evidence of any format whatsoever that either (i) relates or pertains to, or (2)  could reasonably lead to the discovery of any admissible evidence or knowledge relating or pertaining to any of the following: the facts, claims, allegations, denials, causes of action, defenses, affirmative defenses, pleadings, counterclaims or other matters that have been asserted or *could be asserted* by *any parties* to the above-styled Matter. If the evidence is not in your possession, please provide a brief summary of the evidentiary item's relevance or probative value as well as its location and/or the contact information for the person in possession, custody or control of the evidence.

31.     Copies of any documents and/or evidence that you have received in response to any open records requests, informal requests, non-party requests to produce documents, subpoenas, and/or discovery requests to any other named  parties to this matter that relates to or concerns any of the allegations contained in Plaintiff's complaint, your answer, or any of your responsive pleadings, or which you may rely upon to prove any of your answers, affirmative defenses, counterclaims, or allegations.

32.     Including but not limited to Alder Adjusting, copies of all communications, of any medium, that you have exchanged, shared, or referenced with any environmental inspectors, engineers, medical experts or any other experts or consultants concerning this matter or any of the facts or allegations contained herein, even if you do not intent to rely upon said inspector, environmentalist, engineer, consultant, expert or party at trial.

33.     Including but not limited to Alder Adjusting, copies of all documents and/or evidence, of any medium, that you have exchanged, shared, or referenced with any environmental inspectors, engineers, medical experts or any other experts or consultants concerning this matter or any of the facts or allegations contained herein, even if you do not intent to rely upon said person or party at trial.

34.     A copy of any statement previously made by Plaintiff or any persons/parties concerning this lawsuit, its subject matter, the Claim, or the underlying loss incident. A "statement previously made" is (A) a written statement signed or otherwise adopted or approved by the person making it, or (B) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement by the person making it and contemporaneously recorded. See OCGA § 9-11-26(b)(3) (" A party may obtain, without the required showing, a statement concerning the action or its subject matter previously made by that party.")

35.     Copies of all communications, including e-mails or other electronic communications, text messages, instant messages, letters, memoranda, bulletins, and all other communications of any medium produced concerning or discussing any of the facts, claims, allegations, causes of action, defenses, affirmative defenses, denials of allegations, pleadings, counterclaims, or other matters

that have been asserted or *could be asserted* by *any of the parties* to the above-styled Matter with any of the **named parties** or their **representatives**.

## IV. Requests for Admission

1.      Admit that pipes and other plumbing structures contained in a crawlspace of a dwelling are within the dwelling.

2.      Admit that Defendant has no evidence showing a clog in the main drain-line in the front yard of the Subject Property was the cause of the damage to the Subject Property.

3.      Admit that the sewage backup was caused by a soft tissue clog in the Subject Property's crawlspace plumbing line.

4.      Admit that Plaintiff performed all duties required under the Policy after the loss arose.

5.      Admit that Defendant did not provide a reasonable and accurate explanation of the basis for the denial of Plaintiff's claim when requested by Plaintiff in writing.

6.      Admit that Defendant's field representative was the only individual that Defendant had physically inspect the Subject Property with respect to Loss Claim # GA21-0100171.


Respectfully submitted,

CARTER JEFFRIES, LLC

/s/Carson Jeffries                                                    47 Perimeter Center East, Suite 530
CARSON L. JEFFRIES, ESQ.                              Atlanta, GA 30346
Georgia Bar Number 100139                               ph: (404) 341-6653
cjeffries@moldfirm.com
**ATTORNEY FOR PLAINTIFF**