# THE MOLD FIRM
## CARTER JEFFRIES, LLC
### Atlanta's Premier Dedicated Mold Law Practice

47 Perimeter Center East, SUITE 530
ATLANTA, GEORGIA 30346
PHONE 404-341-6653
www.moldfirm.com

DAVID G. CARTER
ATTORNEY AT LAW
dcarter@moldfirm.com

CARSON JEFFRIES
ATTORNEY AT LAW
cjeffries@moldfirm.com

November 10, 2022

**VIA STATUTORY USPS OVERNIGHT DELIVERY**

Universal Property & Casualty Insurance Company
c/o CT Corporation System R/A/F
289 S. Culver Street
Lawrenceville, Georgia 30046

Universal Property & Casualty Insurance Company
c/o Gary Ropiecki, Secretary
1110 W Commercial Blvd
Fort Lauderdale, FL 33309

Gamaliel Lozano
Claims Adjuster
Universal Property & Casualty Insurance Company
1110 W Commercial Blvd, Suite 305
Fort Lauderdale, FL 33309

Sandraly Aponte
National Claims Adjuster
Alder Adjusting Company
1110 W Commercial Blvd, Suite 305
Fort Lauderdale, FL 33309

| | |
|---|---|
| Insurer's DOL[1]: | January 13, 2021 |
| Insurer: | Universal Property & Casualty Insurance Company |
| Your Insured: | James Jackson |
| Policy No.: | 1701-1700-9156 |
| Claim No: | GA21-0100171 |
| Subject Property: | 20 Gibson Drive, Carrollton, Georgia 30117 |

**RE: BAD-FAITH DEMAND FOR IMMEDIATE PAYMENT UNDER O.C.G.A. § 33-4-6**

---

[1] This "date of loss" indicated herein is provided to ensure consistency with Insurer's internal identification and records as to this Claim and is not intended to reflect or otherwise limit Insured's position or right to contest the date of loss in any subsequent legal or administrative proceeding.

1

Dear Mr. Lozano, Ropiecki, and Ms. Aponte:

My firm, Carter Jeffries LLC, has the pleasure of representing the Estate of your insured James Jackson and its Administratrix Rhonda Jackson ("Insured" or "Client") with respect to the water losses and damages affecting Insured's home located at 20 Gibson Drive, Carrollton, Georgia 30117 as well as their claims against Universal Property & Casualty Insurance Company ("Universal" or "Insurer") for its bad faith failure and refusal to promptly adjust and make payment to them for their covered losses. Accordingly, please forward all future communications to my attention.

Pursuant to O.C.G.A. § 24-3-37, statements made with a view toward compromise are inadmissible at trial. This Georgia law was enacted to encourage the settlement of controversies by permitting parties to discuss their cases candidly with the assurance that admissions and proposals for compromise made in the course of the good-faith settlement negotiations may not be used against them and any subsequent lawsuit. *Benn v. McBride*, 140 Ga.App. 698 (1976). This entire letter is being submitted with a view toward compromise of this claim. If you do not agree that everything that follows is inadmissible during the litigation of this matter, please stop reading and immediately destroy this letter and its attachments and immediately notify us of your refusal to review our attempt to compromise this claim.

## DEMAND

This notice and demand is directed to Universal as the insurer for my Client's home located at 20 Gibson Drive, Carrollton, Georgia 30117 ("Subject Property"). Pursuant to O.C.G.A. § 33-4-6, this letter is written to submit my Client's demand that Universal comply with its obligations as set forth in its Insurance agreement with Insurer: Policy # 1701-1700-9156 (the "Policy") to pay for the covered loss to Insured's home. In the event that Universal does not timely comply with Insurer's demand by curing Insurer's breach of the policy and compensating Insured for the loss, Insured shall initiate formal litigation against Insurer for Insurer's damages arising as a result of Insurer's breach of contract, bad faith failure to pay a covered claim, and all other remedies available at law, including attorney's fees and litigation expenses. A brief summary of the facts and dispute are as follows:

On or about January 13, 2021, Insured experienced a direct water loss to the Subject Property covered by the Policy when water overflowed from the toilets in the home due to a plumbing back up. Client took immediate action to address the water loss and engaged the services of Premium Plumbing to address the source of the plumbing back up causing the water to back up into the toilets and mitigate any damages to the Subject Property.

Client also reported the loss to Universal, who sent out a field adjuster to the Subject Property to investigate Client's claim on or about January 14 or 15, 2021. On this sole visit from Universal to inspect the Subject Property, the field adjuster was on site at the same time

as Premier Plumbing but did not speak to Premier Plumbing's representative. Further, the field adjuster appeared to forego the taking of photographic evidence, moisture readings where water damage occurred, or physical observation of the Subject Property's plumbing. The unreasonably cursory inspection of the Subject Property, cause of loss, and resulting damage indicates that either Universal "fail[ed] to adopt" or its claims adjuster failed to "implement procedures for the prompt investigation and settlement of claims."[2] On February 4, 2021, Sandraly Aponte, a National Claims Examiner with Universal, issued correspondence denying Client's claim in full concluding "that coverage does not apply to your loss" on the following basis:

> As per the adjuster's investigation, upon reviewing his report we could not find coverage for the type and nature of damage caused to your property. The damage in your home occurred as a result of sewage backing up into your bathtub due to a clog in the main drain-line found in the frond [sic] yard. A sewage backup that does not originate from within the dwelling or water below the surface of the ground, including water which exerts pressure on, or seeps, leaks or flows through a building, sidewalk, driveway, patio, foundation, swimming pool or toher structure are specifically excluded from coverage.

See, Attachment A. In response to this denial of coverage, the President of Premium Plumbing issued correspondence to Universal regarding Client's claim and correcting fundamental facts which the field adjuster would have known but for the field adjuster's failure to conduct a reasonable investigation[3] of the claim at the time of visiting the Subject Property. Most notably, the correspondence affirmatively states the following.

> - When we originally arrived to the Jackson home, the plumbers diagnosed the issue as a clog that had caused overflow in multiple areas of the home. They unclogged the line and removed a soft tissue clog. The clog was in the main sewer line under the home (the home is on a crawlspace). They then inspected the sewer line with a camera to ensure no further issues. The line under the home was fine, but there was an issue with a sag in the line outside the home. This is NOT what caused the clog, but was explained to the Jacksons that it could be an issue in the future...
>
> You denied coverage based on the sewer blockage being in the main line outside the home, in the front yard. The blockage was inside the home and the sewer line in fact exits the rear of the home, not the front....

---

[2] O.C.G.A. § 33-6-34(3)

[3] O.C.G.A. § 33-6-34(6) (prohibiting insurers from "refusing to pay claims without conducting a reasonable investigation.").

3

<u>See</u>, Attachment B. In response to this disinterested third party's clarification of salient facts, Universal issued yet another denial letter, stating:

> Our investigation was concluded and after our review we could not find coverage for the type and nature of damage caused to your property. The damage in your home occurred as a result of sewage backing up into your home. A sewage backup that does not originate from within the dwelling or water below the surface of the ground, including water which exerts pressure on, or seeps, leaks, or flows through a building, sidewalk, driveway, patio, foundation, swimming pool or other structure are specifically excluded from coverage.

<u>See</u>, Attachment C. Yet again, Universal has ignored the plain facts of this matter and inexplicably, frivolously, and groundlessly denied coverage to my Client. First and foremost and given Universal's brief inspection of the home, no basis exists for Universal's factually unsupported assertion that the loss was due to "sewage backing up into your bathtub due to a clog in the main drain-line found in the frond [sic] yard." Attachment A.

Even a cursory review of the Policy shows that Insured is entitled to coverage for the loss. The pertinent coverage and exclusion portions of the policy have been directly lifted from Client's Policy for purposes of this analysis. The definitions of "Insured location" and "Residence premises" show conclusively that the plumbing within the four corners of the Subject Property are covered under the policy as the "one family dwelling where you reside" and the "part of other premises, other structures and grounds used by you as a residence." As the clog occurred in the main sewer line under the home in the crawlspace.

> 6. "Insured location" means:
>    a. The "residence premises";
>    b. The part of other premises, other structures and grounds used by you as a residence; and
>       (1) Which is shown in the Declarations; or
>       (2) Which is acquired by you during the policy period for your use as a residence;
> 11. "Residence premises" means:
>     a. The one family dwelling where you reside;
>     b. The two, three or four family dwelling where you reside in at least one of the family units; or
>     c. That part of any other building where you reside;
>     and which is shown as the "residence premises" in the Declarations.
>     "Residence premises" also includes other structures and grounds at that location.

4

The "dwelling" on the "residence premises," including structures attached to the dwelling, are covered property under the Policy.

> **SECTION I – PROPERTY COVERAGES**
> **A. Coverage A – Dwelling**
>   1. We cover:
>      a. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and
>      b. Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises".

The Policy describes the perils insured against. Of those perils, Universal has relied upon the exclusions outlined therein for denying coverage.

> **SECTION I – PERILS INSURED AGAINST**
> **A. Coverage A – Dwelling And Coverage B – Other Structures**
>   1. We insure against risk of direct physical loss to property described in Coverages A and B.
>   2. We do not insure, however, for loss:
>      a. Excluded under Section I – Exclusions;
>      b. Involving collapse, except as provided in E.8. Collapse under Section I – Property Coverages; or
>      c. Caused by:

> (6) Any of the following:
>
> (a) Wear and tear, marring, deterioration;
>
> (b) Mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;
>
> (c) Smog, rust or other corrosion, or dry rot;
>
> (d) Smoke from agricultural smudging or industrial operations;
>
> (e) Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against named under Coverage C.
>
> Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;
>
> (f) Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings;
>
> (g) Birds, vermin, rodents, or insects; or
>
> (h) Animals owned or kept by an "insured".

Presumably and due to this loss being a sudden and accidental overflow of sewage, Universal is implying that coverage is excluded by 6(e) above, which generally excludes coverage for: "discharge, dispersal, seepage, migration, release or escape of pollutants." However, the analysis does not end with that exclusion, because the exclusion itself has an exception. The loss is specifically covered, even if a pollutant, if the loss "is itself caused by a Peril Insured Against named under Coverage C" or the loss resulted from an accidental discharge or overflow of water or steam from within a "storm drain, water, steam or sewer pipe, **off the residence premises; or** plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance **on the resident premises**."

> **Exception To c.(6)**
>
> Unless the loss is otherwise excluded, we cover loss to property covered under Coverage **A** or **B** resulting from an accidental discharge or overflow of water or steam from within a:
>
> (I) Storm drain, or water, steam or sewer pipe, off the "residence premises"; or

6

    (ii) Plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the "residence premises". This includes the cost to tear out and replace any part of a building, or other structure, on the "residence premises", but only when necessary to repair the system or appliance. However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the "residence premises".

    We do not cover loss to the system or appliance from which this water or steam escaped.

    For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, down spout or similar fixtures or equipment.

    Section I – Exclusion A.3. Water Damage, Paragraphs a. and c. that apply to surface water and water below the surface of the ground do not apply to loss by water covered under c.(5) and (6) above.

**B. Coverage C – Personal Property**

We insure for direct physical loss to the property described in Coverage C caused by any of the following perils unless the loss is excluded in Section I – Exclusions.

**12. Accidental Discharge Or Overflow Of Water Or Steam**

    a. This peril means accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

    b. This peril does not include loss:

        (1) To the system or appliance from which the water or steam escaped;

        (2) Caused by or resulting from freezing except as provided in Peril Insured Against 14. Freezing;

        (3) On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises"; or

        (4) Caused by mold, fungus or wet rot unless hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

    c. In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

    d. Section I – Exclusion A.3. Water Damage, Paragraphs a. and c. that apply to surface water and water below the surface of the ground do not apply to loss by water covered under this peril.

7

**SECTION I – EXCLUSIONS**

A. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

**3. Water Damage**

Water Damage means:

a. Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

b. Water or water-borne material which backs up through sewers or drains or which overflows or is discharged from a sump, sump pump or related equipment; or

c. Water or water-borne material below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure;

caused by or resulting from human or animal forces or any act of nature.

Direct loss by fire, explosion or theft resulting from water damage is covered.

Accordingly, whether the accidental discharge resulted from, as Universal contends, a sewage back up in the line in the front yard that is not part of the dwelling or the plumbing in the dwelling (as Insured's plumber contends), the Policy provides coverage for the loss. Policy p.9, Exception to c(6)(ii),(ii). Finally, the exclusions to this coverage do not exclude the loss event here, because a sump, sump pump, or other related equipment were not the cause of the overflow, nor flood, surface water, waves, tidal water, overflow of a body of water, spray, or water below the surface.

Consequently, by the plain and natural interpretation of the Policy language itself, the water loss and back up experienced by my Client is a covered loss under the Policy. Indeed, the very language used by Sandraly Aponte in her denial of coverage letter affirmatively attests that coverage is to be found. See, Attachment C ("A sewage backup that does not originate from within the dwelling...are specifically excluded from coverage."). Premier Plumbing has specifically confirmed that the back up originated within the dwelling in the main sewer line within the crawlspace within the four corners of the Subject Property. Therefore, the denial of coverage is frivolous, baseless, and in bad faith, which denial constitutes a statutorily defined Unfair Claims Settlement Practice. See O.C.G.A. § 33-6-34(1) ("Knowingly misrepresenting to claimants and insureds relevant facts or policy provisions relating to coverages at issue."

It bears noting, as Universal has seen fit to place Client on notice of her "Duties After Loss," to affirmatively set forth that Client has complied with all of her duties under the Policy as applicable to her particular situation. Client gave prompt notice of the claim to Universal. Client immediately engaged the services of Premier Plumbing to diagnose and repair the

plumbing issue and perform mitigation of the resulting water damage, thereby protecting the property from further damage. Client has maintained records of these efforts and expenses. Client has cooperated in the investigation of the claim, showed the damaged property, and provided all requested items. Indeed, per Universal's own assertion, "Our investigation was concluded and after our review we could not find coverage for the type and nature of damage caused to your property." Hence, my Client considers her duties to have been discharged faithfully and completely as the investigation has been concluded.

Accordingly, Insured asserts Universal has acted in bad faith in refusing to provide coverage for the loss and that payment for said loss is immediately due. As such, Client expressly demands payment pursuant to O.C.G.A. § 33-4-6 for Client's claim. Failure to pay Client's claim within the sixty (60) days provided for by statute will result in the institution of legal proceedings for breach of contract, bad faith, and all available claims and remedies available under Georgia law including bad faith penalties and attorneys' fees.

Further and pursuant to O.C.G.A. § 33-6-34(10) and upon written request by the insured, Insurers must provide a prompt, "reasonable and accurate explanation" of the grounds for any denial of coverage. On behalf of Insured, **please let this writing serve as formal, written demand by insured for a "reasonable and accurate explanation" of the factual basis and evidentiary grounds upon which Insurer based its opinion that "the loss was due to sewage backing up into your bathtub due to a clog in the main drain-line found in the frond [sic] yard." Attachment A.**

Should you have any questions regarding this demand, please do not hesitate to contact me at (404) 341-6653. Of course, this letter is written in furtherance of settlement, and nothing contained herein shall be deemed admissible except to enforce a claim for bad-faith failure to settle this claim.

Yours very truly,<br>
CARTER JEFFRIES LLC<br>
<br>
Carson Jeffries, Esq.

Encl:
-Attachments A, B and C

ATTACHMENT A



**ALDER**
ADJUSTING

02/04/2021

Mr. JAMES JACKSON
20 GIBSON DRIVE
Carrollton, GA 30117
GA21-0100171

RE: Policy Number: 1701-1700-9156
Claim Number: GA21-0100171
Date of Loss: 01/13/2021
First Notice of Loss: 01/13/2021
Insured: JAMES JACKSON

Dear JAMES JACKSON:

We have completed our investigation of the above referenced claim. After careful consideration we have concluded that coverage does not apply to your loss. Therefore, we must respectfully deny your claim.

As per the adjuster's investigation, upon reviewing his report we could not find coverage for the type and nature of damage caused to your property. The damage in your home occurred as a result of sewage backing up into your bathtub due to a clog in the main drain-line found in the frond yard. A sewage backup that does not originate from within the dwelling or water below the surface of the ground, including water which exerts pressure on, or seeps, leaks or flows through a building, sidewalk, driveway, patio, foundation, swimming pool or other structure are specifically excluded from coverage.

Based on the above, we are hereby denying coverage in connection with this claim.

Please refer to your policy form **HO 00 03 10 00**. We have cited the pertinent language below for your ease of reference:

**SECTION I – PERILS INSURED AGAINST, WEAR & TEAR, page 9 of 22**
**SECTION I – CONDITIONS, B. Duties After Loss, Page 12 of 22**
**SECTION I – EXCLUSIONS, WATER, Backup 12 of 22**

**SECTION I - PERILS INSURED AGAINST, page 9 of 22**
1. We insure against risk of direct physical loss to property described in Coverages A and B.
2. We do not insure, however, for loss:
a. Excluded under Section I – Exclusions;
b. Involving collapse, except as provided in E.8. Collapse under Section I – Property Coverages; or
c. Caused by:
(6) Any of the following:

1110 W. Commercial Blvd. Suite 305  Fort Lauderdale, FL 33309
Ph. 954-958-1205  1-800-470-0599  Fax. 954-958-1206

(a) Wear and tear, marring, deterioration;
(b) Mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;
(c) Smog, rust or other corrosion, or dry rot;
(d) Smoke from agricultural smudging or industrial operations;
(e) Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against named under Coverage C. Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, recônditioned or reclaimed;
(f) Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings;
(g) Birds, vermin, rodents, or insects; or
(h) Animals owned or kept by an "insured".

**ADDITIONALLY:**
**SECTION I – CONDITIONS Page 12 of 22**

**B. Duties After Loss**
In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:

1. Give prompt notice to us or our agent;
2. Notify the police in case of loss by theft;
3. Notify the credit card or electronic fund transfer card or access device company in case of loss as provided for in E.6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I – Property Coverages;
4. Protect the property from further damage. If repairs to the property are required, you must:
a. Make reasonable and necessary repairs to protect the property; and
b. Keep an accurate record of repair expenses;
5. Cooperate with us in the investigation of a claim;
6. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;
7. As often as we reasonably require:
a. Show the damaged property;
b. Provide us with records and documents we request and permit us to make copies; and
c. Submit to examination under oath, while not in the presence of another "insured", and sign the same;
8. Send to us, within

**ADDITIONALLY:**
**EXCLUSIONS, WATER, Page 12 of 22**

**A.** We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

**3. Water**
This means:
**a.** Flood, surface water, waves, including tidal wave and tsunami, tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind, including storm surge;
**b.** Water which:
**(1)** Backs up through sewers or drains; or
**(2)** Overflows or is otherwise discharged from a sump, sump pump or related equipment;

# ATTACHMENT A

**c.** Water below the surface of the ground, including water which exerts pressure on, or seeps, leaks or flows through a building, sidewalk, driveway, patio, foundation, swimming pool or other structure; or

**d.** Waterborne material carried or otherwise moved by any of the water referred to in **A.3.a.** through **A.3.c.** of this exclusion. This Exclusion **A.3.** applies regardless of whether any of the above, in **A.3.a.** through **A.3.d.**, is caused by an act of nature or is otherwise caused. This Exclusion **A.3.** applies to, but is not limited to, escape, overflow or discharge, for any reason, of water or waterborne material from a dam, levee, seawall or any other boundary or containment system.

However, direct loss by fire, explosion or theft resulting from any of the above, in **A.3.a.** through **A.3.d.**, is covered.

Universal Property and Casualty Insurance Company reserves all rights under the policy provisions to raise additional coverage defenses as they become known to us in the future.

Please let us know at the earliest opportunity, if you have further documentation or other information you wish to submit for our further review and consideration of your claim. Documentation can be uploaded to your claim via your online account at https://universalproperty.com/account/login.

Additionally, you may download the UPCIC Mobile Application, wherein you can upload any and all documents directly to your claim. Please do not hesitate to contact us with any questions regarding this correspondence or any aspect of your claim directly at 1-800-470-0599.

We are committed to our effort of providing superior customer service to our policyholders throughout the claim process.

If this document contains an excerpt from a Universal Property and Casualty Insurance Policy (" the Policy ") it is provided here for informational purposes only. This excerpt is not the official version of the Policy. The official version of the Policy is the policy issued to the insured on the policy effective date. In the event there is inconsistency between this document and the Policy, the Policy shall serve as the official version.

Thank you.


Sincerely,
/s/ Sandraly Aponte
National Claims Examiner

## ATTACHMENT B

**Subject: Claim number: GA21-0100171**

To whom it may concern:

I am writing in regards to a loss that occurred at a mutual customer of ours. The claim number is GA21-0100171, and the property is located at 20 Gibson Dr. in Carrollton, GA 30117. The insured recently received correspondence that their claim was being denied. There were a couple of explanations as to why the denial happened but they are inaccurate. I will address a couple of the issues to help clarify exactly what caused the loss at the property. First the field adjuster that arrived on site was rude to my mitigation specialist and to the Jacksons themselves, according to the Jacksons themselves. My specialist attempted to explain and discuss the loss but was informed that this was none of his business. This is obviously an important part of the process so that the adjuster can make appropriate determination if coverage applies, this never happened. When we originally arrived to the Jackson home, the plumbers diagnosed the issue as a clog that had caused overflow in multiple areas of the home. They unclogged the line and removed a soft tissue clog. The clog was in the main sewer line under the home( the home is on a crawlspace). They then inspected the sewer line with a camera to ensure no further issues. The line under the home was fine, but there was an issue with a sag in the line outside the home. This is NOT what caused the clog, but was explained to the Jacksons that it could be an issue in the future. An estimate was given to repair this issue and the Jacksons had us complete that work as well. Our mitigation specialist was called out to inspect the damage to the home from the overflow, and after speaking with the Jacksons executed a contract to perform mitigation services. A claimed was filed, and the work commenced. The affected areas were removed and the home was then dried to normal conditions.

1. You denied coverage based on the sewer blockage being in the main line outside the home, in the front yard. The blockage was inside the home and the sewer line in fact exits the rear of the home, not the front. In addition based on your policy the definition of the residence premises is as follows:

11. "Residence premises" means: a. The one family dwelling where you reside; b. The two, three or four family dwelling where you reside in at least one of the family units; or c. That part of any other building where you reside; and which is shown as the "residence premises" in the Declarations. "Residence premises" also includes other structures and grounds at that location.

The key wording is grounds at that location, so the residence premises is not only the home but the entire property that the dwelling is located on, according to your policy definition. Keep in mind the clog was under the home, but even if it had been outside the structure, it would still be considered on the resident premises by definition, as long as it wasnt past the property lines.

2. There is another section of the policy that appears to show covererage:

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment; or (6) Any of the following: (a) Wear and tear, marring, deterioration; (b) Mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself; (c) Smog, rust or other corrosion, or dry rot; (d) Smoke from agricultural smudging or industrial operations; (e) Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against named under Coverage C. Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed; (f) Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings; (g) Birds, vermin, rodents, or insects; or (h) Animals owned or kept by an "insured". Exception To c.(6) Unless the loss is otherwise excluded, we cover loss to property covered under Coverage A or B resulting from an accidental discharge or overflow of water or steam from within a: (i) Storm drain, or water, steam or sewer pipe, off the "residence premises"; or Page 10 of 22 Copyright, Insur-

ance Services Office, Inc., 1999 HO 00 03 10 00 (ii) Plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the "residence premises". This includes the cost to tear out and replace any part of a building, or other structure, on the "residence premises", but only when necessary to repair the system or appliance. However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the "residence premises". We do not cover loss to the system or appliance from which this water or steam escaped. For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, down spout or similar fixtures or equipment. Section I – Exclusion A.3. Water Damage, Paragraphs a. and c. that apply to surface water and water below the surface of the ground do not apply to loss by water covered under c.(5) and (6) above.

3. This is another example of what appears to be coverage:

12. Accidental Discharge Or Overflow Of Water Or Steam a. This peril means accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance. b. This peril does not include loss: (1) To the system or appliance from which the water or steam escaped; (2) Caused by or resulting from freezing except as provided in Peril Insured Against 14. Freezing; (3) On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises"; or (4) Caused by mold, fungus or wet rot unless hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure. c. In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment. d. Section I – Exclusion A.3. Water Damage, Paragraphs a. and c. that apply to surface water and water below the surface of the ground do not apply to loss by water covered under this peril.

This appears to show that coverage applies to the residence premises if there is an overflow that is a result from an issue on the residence premises, which keep in mind would be their entire grounds. Off the residence premises would be outside their property lines according to your definition. Again, the clog was inside the home but just putting this out for clarification for future references.

4. The next portion of the policy discusses about water damage that results from water backing up through drains and entering the home. This in my understanding is, for example, if the city sewer off the residence premises clogs and backs up through the home on the residence premises. This is not the case in this situation.

3. Water Damage Water Damage means: a. Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind; b. Water or water-borne material which backs up through sewers or drains or which overflows or is discharged from a sump, sump pump or related equipment; or c. Water or water-borne material below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure; caused by or resulting from human or animal forces or any act of nature. Direct loss by fire, explosion or theft resulting from water damage is covered.

5. You also noted the responsibilities of the insured portion of the policy. Im not sure if this was by mistake, but the Jacksons done exactly what the policy says to do in the event of a loss. They remedied the cause of loss, prevented further damage from happening to the home, and they filed a claim making you aware.

I hope this gives you a better understanding of what caused this loss, and why according to your policy coverages should apply in my opinion. I am not an adjuster and I am not determining coverage, but these are my understand-

## ATTACHMENT B

ings of the policy. I do have a public adjuster if needed, however once understanding the actual cause of loss I think you will agree that coverage should apply. In the email the insured received it states that coverage would apply if the overflow resulted from a blockage inside the dwelling, which it did. If you have any questions or concerns please do not hesitate to let me know. I have ccd the insured in this correspondence.

**Josh Pesnell**
*President/Estimator*
Josh@PremiumPlumbingSeptic.Com
770-783-9051
*Experience the Difference*

ATTACHMENT C



**ALDER**
ADJUSTING

05/07/2021

Mr. JAMES JACKSON
20 GIBSON DRIVE
Carrollton, GA 30117
GA21-0100171

RE: Policy Number: 1701-1700-9156
Claim Number: GA21-0100171
Date of Loss: 01/13/2021
First Notice of Loss: 01/13/2021
Insured: JAMES JACKSON

Dear JAMES JACKSON:

We have received your recent correspondence and have re-evaluated your claim. We have reviewed the merits of your claim, and unfortunately, we are standing by our original recommendation and denial of your loss.

Our investigation was concluded and after our review we could not find coverage for the type and nature of damage caused to your property. The damage in your home occurred as a result of sewage backing up into your home. A sewage backup that does not originate from within the dwelling or water below the surface of the ground, including water which exerts pressure on, or seeps, leaks or flows through a building, sidewalk, driveway, patio, foundation, swimming pool or other structure are specifically excluded from coverage.

Based on the above, we are standing by the original position that this claim. We have enclosed a copy of the original denial letter which clarifies our coverage position further.

Please refer to your policy form **HO 00 03 10 00**. We have cited the pertinent language below for your ease of reference:

**SECTION I – PERILS INSURED AGAINST, WEAR & TEAR, page 9 of 22**
**SECTION I – CONDITIONS, B. Duties After Loss, Page 12 of 22**
**SECTION I – EXCLUSIONS, WATER, Backup 12 of 22**

**SECTION I - PERILS INSURED AGAINST, page 9 of 22**
1. We insure against risk of direct physical loss to property described in Coverages A and B.
2. We do not insure, however, for loss:
a. Excluded under Section I – Exclusions;
b. Involving collapse, except as provided in E.8. Collapse under Section I – Property Coverages; or
c. Caused by:

(6) Any of the following:
(a) Wear and tear, marring, deterioration;
(b) Mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;
(c) Smog, rust or other corrosion, or dry rot;
(d) Smoke from agricultural smudging or industrial operations;
(e) Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against named under Coverage C. Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;
(f) Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings;
(g) Birds, vermin, rodents, or insects; or
(h) Animals owned or kept by an "insured".

**ADDITIONALLY:**

**SECTION I – CONDITIONS Page 12 of 22**

**B. Duties After Loss**
In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:

1. Give prompt notice to us or our agent;
2. Notify the police in case of loss by theft;
3. Notify the credit card or electronic fund transfer card or access device company in case of loss as provided for in E.6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I – Property Coverages;
4. Protect the property from further damage. If repairs to the property are required, you must:
a. Make reasonable and necessary repairs to protect the property; and
b. Keep an accurate record of repair expenses;
5. Cooperate with us in the investigation of a claim;
6. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;
7. As often as we reasonably require:
a. Show the damaged property;
b. Provide us with records and documents we request and permit us to make copies; and
c. Submit to examination under oath, while not in the presence of another "insured", and sign the same;
8. Send to us, within

**ADDITIONALLY:**

**EXCLUSIONS, WATER, Page 12 of 22**

**A.** We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

**3. Water**
This means:
a. Flood, surface water, waves, including tidal wave and tsunami, tides, tidal water, overflow of any body of

## ATTACHMENT C

water, or spray from any of these, all whether or not driven by wind, including storm surge;
**b.** Water which:
**(1)** Backs up through sewers or drains; or
**(2)** Overflows or is otherwise discharged from a sump, sump pump or related equipment;
**c.** Water below the surface of the ground, including water which exerts pressure on, or seeps, leaks or flows through a building, sidewalk, driveway, patio, foundation, swimming pool or other structure; or
**d.** Waterborne material carried or otherwise moved by any of the water referred to in **A.3.a.** through **A.3.c.** of this exclusion. This Exclusion **A.3.** applies regardless of whether any of the above, in **A.3.a.** through **A.3.d.**, is caused by an act of nature or is otherwise caused. This Exclusion **A.3.** applies to, but is not limited to, escape, overflow or discharge, for any reason, of water or waterborne material from a dam, levee, seawall or any other boundary or containment
system.
However, direct loss by fire, explosion or theft resulting from any of the above, in **A.3.a.** through **A.3.d.**, is covered.

Universal Property and Casualty Insurance Company reserves all rights under the policy provisions to raise additional coverage defenses as they become known to us in the future.

Please let us know at the earliest opportunity, if you have further documentation or other information you wish to submit for our further review and consideration of your claim. Documentation can be uploaded to your claim via your online account at https://universalproperty.com/account/login.

Additionally, you may download the UPCIC Mobile Application, wherein you can upload any and all documents directly to your claim. Please do not hesitate to contact us with any questions regarding this correspondence or any aspect of your claim directly at 1-800-470-0599.

We are committed to our effort of providing superior customer service to our policyholders throughout the claim process.

If this document contains an excerpt from a Universal Property and Casualty Insurance Policy (" the Policy ") it is provided here for informational purposes only.  This excerpt is not the official version of the Policy.  The official version of the Policy is the policy issued to the insured on the policy effective date.  In the event there is inconsistency between this document and the Policy, the Policy shall serve as the official version.

Thank you.

Sincerely,
/s/ Sandraly Aponte
National Claims Examiner