IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| Jason Rauen, | ) |
|     Plaintiff, | ) ) ) |
| v. | ) ) |
| RELX Inc., and | ) ) CIVIL ACTION |
| RELX US SEVERANCE PLAN (a component plan of the RELX Inc. Welfare Benefit Plan) | ) ) FILE NO. _____ ) ) |
|     Defendants. | ) |

## **COMPLAINT**

COMES NOW plaintiff Jason Rauen ("Mr. Rauen"), and hereby files his complaint against RELX Inc. ("RELX") and the RELX US SEVERANCE PLAN (a component plan of the RELX Inc. Welfare Benefit Plan (the "Plan"), respectfully showing to the Court as follows:

### **The Parties**

1.

Mr. Rauen is currently a citizen and resident of Georgia, who was employed by Lexis Risk Solutions (the "Employer") from December 31, 2007 until Mary 14, 2021.

2.

RELX is a foreign corporation registered to do business in Georgia and who may be served through its registered agent, C T Corporation System at 289 S. Culver St. Lawrenceville, GA, 30046.

3.

RELX is the sponsor and administrator of the Plan, which provides severance and other benefits to certain employees of the Employer who suffer a loss of employment under the terms and conditions set forth in the Plan.

4.

The Plan is an employee welfare benefit plan organized and subject to the Employee Retirement Income Security Act, 29 U.S.C. §§1001, et. seq. and the regulations promulgated thereunder("ERISA").

5.

Pursuant to 29 U.S.C. §1132, the Plan may be served via the Plan Administrator identified in the summary plan description, RELX Inc. Employee Benefits Committee c/o Benefits Department  230 Park Ave., 7th Fl., New York, NY 10069.

## **Jurisdiction & Venue**

6.

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, because Plaintiff is asserting claims under ERISA.

7.

Venue is proper pursuant to 28 U.S.C. § 1391 because Mr. Rauen's employment, which gives rise to the claims, occurred in this District.

**The Plan**

8.

Section 2(a) of the Plan provides that the Employer may pay severance to Eligible Employees.

9.

The Plan provides that Eligible Employees whose Annualized Base Wages are between $100,000.00 and $199,999.99 are entitled to the greater of 12 weeks of salary continuation or the number of weeks that is equal to the Eligible Employees Years of Service multiplied by two, up to a maximum of 26 weeks.

10.

Section 1(f) of the Plan generally provides that an Eligible Employee is an employee of Employer whose employment is involuntarily terminated for any reason other than Cause.

11.

Section 2(a)(vii)(A) of the Plan provides that if an Eligible Employee is terminated for poor job performance, that does not constitute Cause, the Eligible Employee's employer may determine that the Eligible Employee is not eligible for severance.

12.

Section 2(a)(viii)(B) of the Plan provides that termination for poor job performance does not include termination for performance that arise as a result of a "skills mismatch," which occurs when, *inter alia*, the requirements of the Eligible Employee's position change and within twelve months of such change, the Eligible Employee's Employer determines he is no longer able to perform the position successfully.

13.

At all times prior to his termination, Mr. Rauen was an "Eligible Employee" as defined by the Plan.

14.

The Plan qualifies as an employee welfare benefit plan under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, et seq., as defined by 29 U.S.C. § 1002(a).

15.

RELX is the claims fiduciary for the Plan, with the responsibility for making all claims decisions. In addition, RELX is responsible for the payment of claims under the Plan.

16.

An Employee Benefits Committee and Benefits Advisory Committee

(collectively the "Committee") are tasked with considering Claims for Benefits submitted under the Plan.

## Mr. Rauen's Employment

17.

Mr. Rauen is quality assurance engineer, who has worked for the past thirteen years as a data scientist.

18.

On December 31, 2007, Mr. Rauen was hired by the Employer to work as a Quality Assurance Lead, leading a group that ensured that code written by software and application developers is bug free and meets the needs of the client.

19.

In 2013, Mr. Rauen's job title changed to Data Scientist, and his duties changed to include more coding, among other things.

20.

Prior to 2020, Mr. Rauen received positive performance reviews, and thrived under the job title Data Scientist .

21.

In fall 2020, Mr. Rauen was moved to a new team, led by Benjamin Karnatz.

22.

Although Mr. Rauen's formal job title did not change, he was transitioned to

a role which required him to perform more advanced coding and Excel skills than he had previously performed.

23.

On the new team, Mr. Rauen was also asked to audit analytic models, which he had never worked with before.

24.

To complete the new tasks being assigned to him, Mr. Rauen was required to work with file formats and types he had never worked with, and complete work in environments he was unfamiliar with.

25.

Despite the lack of skills or experience in performing the new role Mr. Rauen was asked to perform, Mr. Rauen was expected to "[e]nsure 100% accuracy throughout all stages of the audit process, including data collection and design."

26.

Mr. Rauen's new supervisor immediately noticed several areas in which Mr. Rauen needed to improve in the new role, and on March 11, 2021, Mr. Rauen was placed on a 60-day Performance Improvement Plan ("PIP").

27.

The PIP noted that in his new role, Mr. Rauen missed deadlines, performed inaccurate audits, and made inaccurate assessments of audit issues.

28.

On or about May 3, 2021, before the PIP expired, on a virtual team meeting a supervisor indicated that Mr. Rauen's last day with the Employer would be May 14, 2021.

29.

On May 14, 2021, Mr. Rauen was involuntarily terminated and was not offered or paid any severance.

**Claim for Benefits**

30.

On May 20, 2022, Mr. Rauen, through counsel submitted a written request for severance benefits totaling $58,468.80, specifically outlining facts supporting the position that his termination was due to a "Skills Mismatch" as defined by the Plan ("Claim for Benefits").

31.

Under the Plan, a response to the Claim for Benefits was due on August 18, 2021 (within 90 days), absent "special circumstances."

32.

On August 18, 2021, RELX, via the Committee, responded to the Request via email indicating that "relevant information has been collected" regarding the claim, and requesting a short extension on a substantive response.

33.

The response letter did not set forth what the special circumstances requiring the extension were, as required under ERISA regulations.

34.

On August 23, 2021, RELX, via the Committee sent a letter denying the claim, conclusively stating Mr. Rauen's "deficiencies were not the result of a skills mismatch" without discussion of what those deficiencies were.

35.

Mr. Rauen requested the Administrative Record for considered by the Committee in resolving his Claim for Benefits.

36.

The May 20, 2021 letter detailing the Claim for Benefits was not a part of the Administrative Record, and the Committee was only presented with memorandum from Brendan Peck and Julie Doss, Employer representatives, neither of which discussed the facts asserted in the Claim for Benefits (including, critically the history of good performance followed by a change in role to auditing and immediate PIP/termination).

37.

The memorandum submitted to the Committee are each dated August 13, 2021 just days prior to the initial 90 day deadline to consider Mr. Rauen's Claim for

Benefits.

38.

Mr. Rauen appealed the decision of the Committee denying him severance on October 22, 2021, enclosing the limited documents Mr. Rauen had access to supporting his position that his termination resulted from a skills mismatch.

39.

However, because he was no longer an employee, Mr. Rauen did not have access to Lexis Risk Solutions documents such as emails relating to his role change, or past performance review showing he had all the skills necessary to succeed in his position prior to the role change.

40.

Mr. Rauen requested Lexis Risk Solutions provide copies of and submit to the Committee for consideration, additional documentation, but that request was denied.

41.

Under the plan, the Committee was required to issue a decision on the appeal by December 21, 2021 (within 60 days) absent "special circumstances".

42.

On January 4, 2022, two weeks after a decision was due, Mr. Rauen received a request for an extension through February 21, 2022.  Not only was the request for

extension not issued within the initial 60-day period, once again, the request for an extension did not set forth what special circumstances supported the need for an extension.

43.

Mr. Rauen did not receive a response to his appeal by the requested extended deadline of February 21, 2022 either.

44.

On February 22, 2022 the Committee denied Mr. Rauen's appeal of their prior decision, noting that "the Committee found that the termination was not due to a skills mismatch. Specifically, the Committee found that this provision did not apply because Mr. Rauen had been in his data scientist role, albeit in different departments, for more than twelve months, and the skills against which Mr. Rauen's performance was assessed were already skills critical to Mr. Rauen's role and thus do not represent changed job requirements."

45.

The basis for the Committee's findings on appeal are contradicted by the evidence: Mr. Rauen's PIP identified issues in performing tasks that were new to Mr. Rauen, and distinct from the ones he had successfully completed for the previous seven years as a "Data Scientist."

46.

Mr. Rauen has exhausted the procedural requirements set forth in the Plan prior to bringing this action.

## FIRST CLAIM FOR RELIEF: WRONGFUL DENIAL OF BENEFITS UNDER ERISA §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B)

47.

Plaintiff reincorporates and realleges the allegations contained at paragraphs 1-46.

48.

Defendants have wrongfully denied benefits to Plaintiff in violation of the Plan provisions and ERISA for the following reasons:

a. The Plan failed to provide Plaintiff adequate written notice with "specific reasons" as to why his claim for severance had been denied, in violation of 29 C.F.R. § 2560.503-1(f);

b. The Committee failed to permit Plaintiff to review pertinent documents requested by Plaintiff in his Claim for Benefits in violation of 29 C.F.R. § 2560.503-1(h)(2);

c. The Committee failed to respond to the Claim for Benefits timely, and improperly sought an extension despite the lack of identified

"special circumstances" in violation of 29 C.F.R. § 2560.503-1(f)(1);

d. The Committee failed to consider Plaintiff's appeal timely, and improperly sought an extension despite the lack of identified "special circumstances", and even then did not respond to the appeal by the requested extended deadline in violation of 29 C.F.R. § 2560.503-1(i)(1)(i);

e. the Committee failed to consider Plaintiff's Claim for Benefits or supporting information requested by Plaintiff in good faith;

f. the Committee erred in finding Plaintiff's termination did not meet the unambiguous definition of a "skills mismatch."

g. Alternatively, in the event the Court finds the Plan's terms with regard to the denial of severance to Plaintiff are ambiguous, the Committee's determination that Plaintiff is not entitled to severance under the Plan was arbitrary and capricious, as the administrative record reveals the Committee failed to consider any submissions by Plaintiff in considering whether his termination was the result of a "skills mismatch".

49.

Plaintiff brings this action to recover benefits due to him under the terms of the Plan, including severance benefits totaling no less than $58,468.80 and

attorneys' fees.

    **WHEREFORE,** Plaintiff prays that the Court grant him the following relief: 1

i. . Grant Plaintiff declaratory relief, finding that he is entitled to severance and other benefits under the terms of the Plan, and that Defendants be ordered to pay severance benefits according to the terms of the Plan;

ii. Enter an order awarding Plaintiff pre-judgment interest and, to the extent applicable, post-judgment interest;

iii. Award Plaintiff all reasonable attorney's fees and expenses incurred herein pursuant to ERISA §502(g);

iv. Award Plaintiff the costs of this action; and

v. Award Plaintiff such other and further relief as may be just and proper.

    Respectfully submitted this 10th day of October 2022.

                                                  BRISKIN, CROSS & SANFORD, LLC

                                                /s/ R. Kyle Paske, Esq.
                                                Georgia Bar No. 922482
                                                kpaske@briskinlaw.com
                                                Counsel for Plaintiff

33 South Main Street, Suite 300
Alpharetta, Georgia 30009
Telephone: (770) 410-1555

Facsimile: (770) 410-3281