# EXHIBIT A



**ASCOT. BECAUSE INSURANCE DOESN'T HAVE TO BE BLACK & WHITE**

## Ascot Lawyers Professional Liability Insurance Policy



FEIN: Ascot Insurance Company 84-0583213   |   Ascot Specialty Insurance Company 05-0420799

Both companies are Rated A (Excellent) by A.M. Best with a XIV Financial Size Category



# *Legalis Consilium*
## Lawyers Professional Liability
## Primary Declarations

| | | | |
|---|---|---|---|
| **PRODUCER:** | RSG Specialty, LLC, operated by the R-T Specialty division | **POLICY NUMBER:** | LPPL2110000070-03 |
| **CARRIER:** | Ascot Specialty Insurance Company | **POLICY TYPE:** | Renewal |

**Item 1.** **NAMED INSURED**  Foy & Associates, P.C.

**Item 2.** **ADDRESS**
3343 Peachtree Road
#350
Atlanta, GA 30326

**Item 3.** **POLICY PERIOD**
**FROM:** 9/15/2021   **TO:** 9/15/2022
12:01 A.M. Standard Time at the address of the **Named Insured** as Stated herein.

**Item 4.** **LIMITS OF LIABILITY (Inclusive of Claim Expenses)**
| | |
|---|---|
| **Per Claim Limit** | $5,000,000 |
| **Aggregate Limit** | $5,000,000 |

**Item 5.** **RETENTION**
| | |
|---|---|
| **Per Claim Retention** | $100,000 |
| **Aggregate Retention** | N/A |

**Item 7.** **LEGAL SERVICES**   Per Policy Form

**Item 8.** **RETROACTIVE DATE**   9/3/2003

**Item 9.** **ENDORSEMENTS**
| | |
|---|---|
| SRA 071 02 19 | Service of Suit |
| SRA 050 02 19 | Lawyers Professional Liability Primary Policy Form |
| SRA 004 02 19 | Additional Exclusions (Terrorism-Nuclear-EPL-Pollution - Mold) |
| SRA 026 02 19 | Minimum Earned Premium |
| SRA 029 02 19 | Non-Profit Director & Officer Coverage |
| SRA 107 03 20 | Notary Services with Carveback |

# *Legalis Consilium*

## Lawyers Professional Liability
## Primary Declarations

| Item 10. | **IN THE EVENT OF A CLAIM, PLEASE NOTIFY THE FOLLOWING** |
|---|---|

Ascot Specialty Insurance Company
55 W. 46th Street
New York, NY 10036
USclaims@ascotgroup.com
1-833-454-3023



# Ascot Specialty Insurance Company

## Lawyers Professional Liability Policy Claim Notification

At Ascot U.S. Claims, our mission is to provide superior claims service to our clients by handling claims quickly and expertly to achieve the best resolution.  Experienced claim adjusters will guide Insureds through the claims process, including the retention of legal counsel when appropriate.

Should a claim arise, please provide prompt notification to Ascot U.S. Claims, including all necessary loss information and documents, as known.  Once received, a claims adjuster will be quickly assigned and start working with you to assess the claim and initiate an efficient action plan.

---

**Send First Notice of Loss, with any attachments, via E-mail to:**

## USclaims@ascotgroup.com

If you have any questions, concerns, or need for further

information about your claim or policy, please call toll-free at:

### 1-833-454-3023

Claims may be reported 24 hours a day, 7 days a week.

---

# SERVICE OF SUIT

It is hereby understood and agreed that *Ascot Specialty Insurance Company* may be sued upon any cause of action arising under any insurance contract made by *Ascot Specialty Insurance Company* or evidence of insurance issued or delivered by the producer, in the courts for the county(s) where the insurance provides coverage or in the courts of New York, New York where the insurer maintains its home office.

It is further agreed that service of process in such suit may be made upon the appropriate person at the state Department of Insurance, Secretary of State or other designee as provided for in specific state laws and/or regulations.

When service of process is made upon a statutory designee according to state law, such process should be provided via certified mail to:

**Jeff A. Sipos, Corporate Secretary**
**Ascot Specialty Insurance Company**
**55 W. 46th Street**
**New York, NY 10036**

The above-named individual is authorized and directed to accept service of process on our behalf in any suit. It is further agreed that in any suit instituted against any Insured under this policy or otherwise upon this policy, we will abide by the final decision of such court or of any appellate court in the event of an appeal.

# Surplus Lines Policyholder Notice Requirements

**ALABAMA:**  This contract is registered and delivered as a surplus line coverage under the Alabama Surplus Line Insurance Law.

**ALASKA:** (1) This is evidence of insurance procured and developed under the Alaska Surplus Lines Law, AS 21.34. It is not covered by the Alaska Insurance Guaranty Association Act, AS 21.80.

(2) ALASKA POLICYHOLDER NOTICE 3 AAC 25.050 This policy is issued by a nonadmitted or surplus lines insurer. Insurance may only be purchased from nonadmitted insurers if the full amount, kind, or class of insurance cannot be obtained from insurers who are admitted to do business in the State of Alaska. Your broker or the surplus lines broker has determined that this was true on the date the policy was placed. Before issuing a renewal policy or extending this policy, remarketing is required. To avoid intentional or unintentional extension of coverage in the surplus lines market when an admitted market for that coverage exists, a nonadmitted insurer is prohibited from the automatic renewal or extension of a policy without remarketing by your broker or the surplus lines broker.

(3) You are hereby notified that, under 3 AAC 25.050, your policy will terminate effective no later than the date and time of its expiration. We reserve the right to cancel this policy sooner than the expiration date by giving you notice of cancellation as required in AS 21.36.220. You may request through your broker that a new policy from the surplus lines broker be concurrent with the effective date of the termination of this policy. You are also notified that a new policy, if issued by us, is subject to rerating, which may result in a premium increase of more than ten percent (10%). As required by 3 AAC 25.050, you are hereby notified that any subsequent policy issued by us may be subject to a ten percent (10%) or more increase in premium. The actual premium will be based upon rates that apply at the time a subsequent policy, if any, is issued and will be made available to you before the effective date of the new policy, or the date subsequent coverage is bound, whichever occurs first.

**ARIZONA: Pursuant to section 20401.01, subsection B, paragraph 1, Arizona Revised Statutes, this policy is issued by an insurer that does not possess a certificate of authority from the director of the Arizona Department of Insurance. If the insurer that issued this policy becomes insolvent, insureds or claimants will not be eligible for insurance guaranty fund protection pursuant to title 20, Arizona Revised Statutes.**

**ARKANSAS:** This contract is registered and delivered as a surplus line coverage under the Surplus Lines Insurance Law, and it may in some respects be different from contracts issued by insurers in the admitted markets, and, accordingly, it may, depending upon the circumstances,

be more or less favorable to an insured than a contract from an admitted carrier might be. The protection of the Arkansas Property and Casualty Guaranty Act does not apply to this contract. A tax of four percent (4%) is required to be collected from the insured on all surplus lines premiums.

**COLORADO:** This contract is delivered as a surplus line coverage under the Nonadmitted Insurance Act. The insurer issuing this contract is not licensed in Colorado but is an eligible nonadmitted insurer. There is no protection under the provisions of the Colorado Insurance Guaranty Association Act. Disclosures.

This policy is a claims-made policy which provides liability coverage only if a claim is made during the policy period or any applicable extended reporting period.

**CONNECTICUT: NOTICE THIS IS A SURPLUS LINES POLICY AND IS NOT PROTECTED BY THE CONNECTICUT INSURANCE GUARANTY ASSOCIATION OR SUBJECT TO REVIEW BY THE CONNECTICUT INSURANCE DEPARTMENT. IT IS IMPORTANT THAT YOU READ AND UNDERSTAND THIS POLICY.**

**DELAWARE:** "This insurance contract is issued pursuant to the Delaware Insurance Laws by an insurer neither licensed by nor under the jurisdiction of the Delaware Insurance Department. This insurer does not participate in insurance guaranty funds created by state law. In the event of the insolvency of the surplus lines insurer, losses will not be paid by the state insurance guaranty fund.

**FLORIDA: (1) "THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW. PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENS INSURER."**

**(2) "SURPLUS LINES INSURERS'' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.**

**GEORGIA:** "This contract is registered and delivered as a surplus line coverage under the Surplus Line Insurance Law, O.C.G.A. Chapter 33-5."

\* Note - Additional disclosure required if premium less than $5,000

**HAWAII:** "This insurance contract is issued by an insurer which is not licensed by the State of Hawaii and is not subject to its regulation or examination. If the insurer is found insolvent, claims under this contract are not covered by any guaranty fund of the State of Hawaii."

**IDAHO:** "This surplus line contract is issued pursuant to the Idaho insurance laws by an insurer not licensed by the Idaho Department of Insurance. There is no coverage provided for surplus line insurance by either the Idaho Insurance Guaranty Association or by the Idaho Life and Health Insurance Guaranty Association."

**ILLINOIS:** "Notice to Policyholder" "This contract is issued, pursuant to Section 445 of the Illinois Insurance Code, by a company not authorized and licensed to transact business in Illinois and as such is not covered by the Illinois Insurance Guaranty Fund."

**IOWA:** "This policy is issued, pursuant to Iowa Code chapter 515I, by a nonadmitted company in Iowa and as such is not covered by the Iowa Insurance Guaranty Association."

**KANSAS:** "This policy is issued by an insurer not authorized to do business in Kansas and, as such, the form, financial condition, and rates are not subject to review by the commissioner of insurance and the insured is not protected by any guaranty fund."

**KENTUCKY:** "This insurance has been placed with an insurer not licensed to transact business in the Commonwealth of Kentucky but eligible as a surplus lines insurer. The insurer is not a member of the Kentucky Insurance Guaranty Association. Should the insurer become insolvent, the protection and benefits of the Kentucky Insurance Guaranty Association are not available."

**LOUISIANA:** NOTICE
This insurance policy is delivered as surplus line coverage under the Louisiana Insurance Code. In the event of insolvency of the company issuing this contract, the policyholder or claimant is not covered by the Louisiana Insurance Guaranty Association which guarantees only specific types of policies issued by insurance companies authorized to do business in Louisiana.

**MAINE:** "This insurance contract is issued pursuant to the Maine Insurance Laws by an insurer neither licensed by nor under the jurisdiction of the Maine Bureau of Insurance."

**MARYLAND:** (1) **"This insurance is issued by a nonadmitted insurer not under the jurisdiction of the Maryland Insurance Commissioner"**

**(2) DISCLOSURE REGARDING SURPLUS LINES INSURANCE.**
**Please Read the Following Carefully Before Purchasing Insurance From a Surplus Lines Insurer. This policy is issued by a surplus lines insurer that has been approved by the Maryland Insurance Administration to issue insurance policies in the surplus lines insurance market. Surplus lines insurers are not under the jurisdiction of the Maryland Insurance Administration and do not possess a certificate of authority to transact insurance business in the State of Maryland. Because surplus lines insurers are not under the jurisdiction of the Maryland Insurance Administration, your ability to seek assistance from the State if you have a problem with your insurance company is limited. Property and Casualty Insurance Guaranty Corporation and Maryland Life and Health Insurance Guaranty Corporation provide funds that permit certain claimants or policyholders to receive payment of covered claims if their insurance company becomes insolvent (i.e., bankrupt) and is unable to pay the claims. However, these funds do not apply to surplus lines insurers, as a surplus lines insurer is not a member insurer of the Property and Casualty Insurance Guaranty Corporation or the Maryland Life and Health Insurance Guaranty Corporation. If a surplus lines insurer becomes insolvent (i.e. bankrupt), any claim that you have against the surplus lines insurer will not be covered by the funds administered by Property and Casualty Insurance Guaranty Corporation and Maryland Life and Health Insurance Guaranty Corporation. If you have any questions regarding this disclosure or surplus lines insurance, please contact the Maryland Insurance Administration at 410-468-2340.**

**MASSACHUSETTS:**  This policy is insured by a company which is not admitted to transact insurance in the commonwealth, is not supervised by the commissioner of insurance and, in the event of an insolvency of such company, a loss shall not be paid by the Massachusetts Insurers Insolvency Fund under chapter 175D

**MICHIGAN:** "This insurance has been placed with an insurer that is not licensed by the state of Michigan. In case of insolvency, payment of claims may not be guaranteed."

**MINNESOTA:** "THIS INSURANCE IS ISSUED PURSUANTTO THE MINNESOTA SURPLUS LINES INSURANCE ACT. THE INSURER IS AN ELIGIBLESUR PLUS LINES INSURER BUTIS NOT OTHERWISELICENSED BY THE STATE OF MINNESOTA. IN CASE OF INSOLVENCY, PAYMENT OF CLAIMS IS NOT GUARANTEED."

**MISSISSIPPI: "NOTE: This insurance policy is issued pursuant to Mississippi law covering surplus lines insurance. The company issuing the policy is not licensed by the State of**

**Mississippi, but is authorized to do business in Mississippi as a nonadmitted company. The policy is not protected by the Mississippi Insurance Guaranty Association in the event of the insurer's insolvency."**

**MISSOURI:** "This is evidence of insurance procured and developed under the Missouri Surplus Lines Laws. It is NOT covered by the Missouri Insurance Guaranty Association. This insurer is not licensed by the state of Missouri and is not subject to its supervision."

**MONTANA:** NOTICE: This coverage is issued by an unauthorized insurer that is an eligible surplus lines insurer. If this insurer becomes insolvent, there is no coverage by the Montana Insurance Guaranty Association under the Montana Insurance Guaranty Association Act.

"The insured pays a stamping fee information for the review and processing of surplus lines insurance policy submissions that are filed in paper. This surplus lines insurance submission is being filed in paper (hard copy) format at a stamping fee of .25%. Surplus lines insurance submissions can be filed electronically with NO stamping fee, saving the insured .25%."

**NEBRASKA:** "This policy is issued by a nonadmitted insurer, and in the event of the insolvency of such insurer, this policy will not be covered by the Nebraska Property and Liability Insurance Guaranty Association."

**NEVADA:** "This insurance contract is issued pursuant to the Nevada insurance laws by an insurer neither licensed by nor under the supervision of the Division of Insurance of the Department of Business and Industry of the State of Nevada. If the insurer is found insolvent, a claim under this contract is not covered by the Nevada Insurance Guaranty Association Act."

**NEW HAMPSHIRE:** "The company issuing this policy is an eligible surplus lines insurer in the state of New Hampshire and the rates charged and policy forms used have not been approved by the commissioner of insurance. If the company issuing this policy becomes insolvent, the New Hampshire insurance guaranty fund shall not be liable for any claims made against the policy."

**NEW MEXICO: "This policy provides surplus lines insurance by an insurer not otherwise authorized to transact business in New Mexico. This policy is not subject to supervision, review or approval by the superintendent of insurance. The insurance so provided is not within the protection of any guaranty fund law of New Mexico designed to protect the public in the event of the insurer's insolvency.**

**NEW YORK: THE INSURER(S) NAMED HEREIN IS (ARE) NOTLICENSED BYTHESTATE OF NEW YORK, NOT SUBJECT TO ITS SUPERVISION, AND IN THEEVENT OF THEINSOLVENCY OF THEINSURER(S), NOT PROTECTED BYTHE NEW YORK STATESECURITYFUNDS.THE POLICY MAY NOT BE SUBJECT TO ALL OF THE REGULATIONS OF THE DEPARTMENT OF FINANCIAL SERVICES PERTAINING TO POLICY FORMS.**

**"THIS INSURER IS NOT LICENSED IN THESTATE OF NEW YORK AND IS NOT SUBJECT TO ITS SUPERVISION."**

**NORTH CAROLINA:** "The insurance company with which this coverage has been placed is not licensed by the State of North Carolina and is not subject to its supervision. In the event of the insolvency of the insurance company, losses under this policy will not be paid by any State insurance guaranty or solvency fund."

**OHIO:** "THE INSURANCE HEREBY EVIDENCED IS WRITTEN BY AN APPROVED NON-LICENSED INSURER IN THE STATE OF OHIO AND IS NOT COVERED IN CASE OF INSOLVENCY BY THE OHIO INSURANCE GUARANTY ASSOCIATION."

**OKLAHOMA: The contract is not subject to the protection of any guaranty association in the event of liquidation or receivership of the surplus lines insurer.**

**OREGON: "This insurance was procured and developed under the Oregon surplus lines laws. It is NOT covered by the provisions of ORS 734.510 to 734.710 relating to the Oregon Insurance Guaranty Association. If the insurer issuing this insurance becomes insolvent, the Oregon Insurance Guaranty Association has no obligation to pay claims under this insurance."**

**PENNSYLVANIA:** "The insurer which has issued this insurance is not licensed by the Pennsylvania Insurance Department and is subject to limited regulation. This insurance is NOT covered by the Pennsylvania Property and Casualty Insurance Guaranty Association."

"SERVICE OF PROCESS CLAUSE
It is agreed that in the event of the failure of the Insurer(s) or Underwriter(s) herein to pay any amount claimed to be due hereunder, the Insurer(s) or Underwriter(s) herein, at the request of the Insured (or reinsured), will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such court jurisdiction, and all matters arising hereunder shall be determined in accordance with the

law and practice of such court. It is further agreed that in any such action instituted against any one of them upon this contract, Insurer(s) or Underwriter(s) will abide by the final decision of such court or of any appellate court in the event of an appeal. Service of process shall be made pursuant to the procedures provided by 42 Pa. C.S. Ch. 53

Sub Ch. B (relating to interstate and international procedure). When making service of process by mail, such process shall be mailed to:

**Jeff A. Sipos, Corporate Secretary**
**Ascot Specialty Insurance Company**
**55 W. 46th Street**
**New York, NY 10036**

The above-named is authorized and directed to accept service of process on behalf of the Insured(s) or Underwriter(s) in any such action or upon the request of the insured (or reinsured) to give a written undertaking to the insured (or reinsured) that it or they will enter a general appearance for the Insurer(s) or Underwriter(s) in the event such an action shall be instituted." Further, pursuant to any statute of any state, territory or district of the United States of America, which makes provisions therefore, the Insured(s) or Underwriter(s) hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute or his successor or successors in office, as the true and lawful attorney upon whom any lawful process may be served in any action, suit or proceeding instituted by or on behalf of the insured (or reinsured) or any beneficiary hereunder arising out of his contract of insurance (or reinsurance),and hereby designates the above-named as the person on whom such process or a true copy thereof shall be served.


**RHODE ISLAND:** NOTICE
THIS INSURANCE CONTRACT HAS BEEN PLACED WITH AN INSURER NOT LICENSED TO DO BUSINESS IN THE STATE OF RHODE ISLAND BUT APPROVED AS A SURPLUS LINES INSURER. THE INSURER IS NOT A MEMBER OF THE RHODE ISLAND INSURERS INSOLVENCY FUND. SHOULD THE INSURER BECOME INSOLVENT, THE PROTECTION AND BENEFITS OF THE RHODE ISLAND INSURERS INSOLVENCY FUND ARE NOT AVAILABLE.

**SOUTH CAROLINA:** "This company has been approved by the director or his designee of the South Carolina Department of Insurance to write business in this State as an eligible surplus lines insurer, but it is not afforded guaranty fund protection."

"This Company is Not Licensed to do Business in this State, and the S.C. Guaranty Act Does Not Apply to This Policy."


**SOUTH DAKOTA: "THIS INSURANCE CONTRACTIS ISSUED BY A NONADMITTED INSURER WHICH IS NOT LICENSED BY NOR UNDER THE JURISDICTION OF THE SOUTH DAKOTA INSURANCE DIRECTOR."**

**TENNESSEE:** This insurance contract is with an insurer not licensed to transact insurance in this state and is issued and delivered as a surplus lines coverage pursuant to the Tennessee insurance statutes

**TEXAS:** This insurance contract is with an insurer not licensed to transact insurance in this state and is issued and delivered as surplus line coverage under the Texas insurance statutes. The Texas Department of Insurance does not audit the finances or review the solvency of the surplus lines insurer providing this coverage, and the insurer is not a member of the property and casualty insurance guaranty association created under Chapter 462, Insurance Code. Chapter 225, Insurance Code, requires payment of a 4.85% percent tax on gross premium.

**UTAH:** "The insurer issuing this policy does not hold a certificate of authority to do business in this state and thus is not fully subject to regulation by the Utah insurance commissioner. This policy receives no protection from any of the guaranty associations created under Title 31A, Chapter 28."

**VERMONT: "The company issuing this policy has not been licensed by the state of Vermont, and the rates charged have not been approved by the commissioner of insurance. Any default on the part of the insurer is not covered by the Vermont Insurance Guaranty Association."**

**VIRGINIA:** The policy is being procured from or has been placed with an insurer approved by the Commission for issuance of surplus lines insurance in this Commonwealth, but not licensed or regulated by the Commission and that there is no protection under the Virginia Property and Casualty Insurance Guaranty Association, established under Chapter 16 (s 38.2-1600 et seq.) of this title, against financial loss to claimants or policyholders because of the insolvency of an unlicensed insurer.

**WASHINGTON:**  "This contract is registered and delivered as a surplus lines coverage under the insurance code of the state of Washington, Title 48 RCW."

"This contract is registered and delivered as a surplus lines coverage under the insurance code of the state of Washington, Title 48 RCW. It is not protected by any Washington state guaranty association law."

"This contract is registered and delivered as a surplus line coverage under the insurance code of the state of Washington, enacted in 1947. It is not issued by a company regulated by the

Washington state insurance commissioner and is not protected by any Washington state guaranty fund law."

**WISCONSIN:** "This insurance contract is with an insurer which has not obtained a certificate of authority to transact a regular insurance business in the state of Wisconsin, and is issued and delivered as a surplus line coverage pursuant to s. 618.41 of the Wisconsin Statutes Section 618.43(1), Wisconsin Statutes, requires payment by the policyholder of 3 percent tax on gross premium."

**WYOMING: "This insurance contract is issued pursuant to the Wyoming Insurance Laws by an insurer neither licensed by nor under the jurisdiction of the Wyoming Insurance Department. In the event of insolvency of the surplus lines insurer, losses will not be paid by the Wyoming Insurance Guaranty Association."**



# *Legalis Consilium*
## Lawyers Professional Liability Policy
## Table of Contents

**I.   INSURING AGREEMENTS**                                         **Pages 3 – 5**
  A.   GENERAL COVERAGE GRANT
  B.   ADDITIONAL COVERAGES
       1.   Disciplinary & Regulatory Proceedings Coverage
       2.   Subpoena Coverage
       3.   Trial Attendance Expense Coverage
       4.   Crisis Event Expense Coverage
       5.   Pre-Claim Expense Assistance Coverage

**II.  LIMITS OF LIABILITY**                                          **Page 6**

**III. RETENTION**                                                    **Page 6**

**IV.  DEFENSE & SETTLEMENT**                                        **Pages 6 – 7**
  A.   DUTY TO DEFEND
  B.   SELECTION OF DEFENSE COUNSEL
  C.   CONSENT TO SETTLE

**V.   TERRITORY**                                                    **Page 7**

**VI.  NOTICE OF CLAIMS AND CIRCUMSTANCES**                          **Pages 7 – 8**
  A.   ACTUAL CLAIMS
  B.   POTENTIAL CLAIMS
  C.   FALSE OR FRAUDULENT CLAIMS
  D.   RELATED CIRCUMSTANCES
  E.   ASSISTANCE AND COOPERATION OF THE INSURED

**VII. EXTENDED REPORTING PERIODS**                                  **Pages 8 — 11**
  A.   AUTOMATIC EXTENDED REPORTING PERIOD
  B.   NAMED INSURED EXTENDED REPORTING PERIOD
  C.   INDIVIDUAL LAWYER EXTENDED REPORTING PERIODS
       1.   Firm Departure
       2.   Nonpracticing
  D.   CONDITIONS APPLICABLE TO ALL EXTENDED REPORTING PERIODS

**VIII. CANCELLATION**                                               **Pages 11 – 12**

**IX.  GENERAL CONDITIONS**                                          **Pages 12 – 14**
  A.   APPLICATION
  B.   NAMED INSURED AUTHORIZATION
  C.   SUBROGATION
  D.   LEGAL ACTION AGAINST THE COMPANY
  E.   WAIVER

| | | | |
|---|---|---|---|
| | F. | OTHER INSURANCE | |
| | G. | ASSIGNMENT | |
| | H. | HEADINGS | |
| | I. | POLICY MODIFICATION | |
| | J. | BANKRUPTCY | |
| | K. | ENTIRE AGREEMENT | |

| | | | |
|---|---|---|---|
| **X.** | **CHANGES IN EXPOSURE** | | **Page 14** |
| | A. | ADDITIONAL LAWYERS | |
| | B. | MERGER OR ACQUISITION | |

| | | | |
|---|---|---|---|
| **XI.** | **EXCLUSIONS** | | **Pages 14 – 16** |
| | 1. | INTENTIONAL ACTS | |
| | 2. | INSURED V. INSURED | |
| | 3. | PRIOR REPORTING | |
| | 4. | ERISA | |
| | 5. | MATERIAL INTEREST | |
| | 6. | BODILY INJURY & PROPERTY DAMAGE | |
| | 7. | INVESTMENT ADVICE | |
| | 8. | NOTARY SERVICES | |
| | 9. | BENEFICIARY STATUS | |
| | 10. | CAPACITY AS A PUBLIC OFFICIAL | |
| | 11. | PERSONAL PROFIT | |
| | 12. | CONTRACT | |
| | 13. | CLIENT ASSETS & FUNDS | |

| | | | |
|---|---|---|---|
| **XII.** | **DEFINITIONS** | | **Pages 16 – 20** |
| | A. | APPLICATION | |
| | B. | BODILY INJURY | |
| | C. | CLAIM | |
| | D. | CLAIM EXPENSES | |
| | E. | COMPANY | |
| | F. | CRISIS EVENT | |
| | G. | DAMAGES | |
| | H. | DISCIPLINARY & REGULATORY PROCEEDING | |
| | I. | EXTENDED REPORTING PERIOD | |
| | J. | INSURED | |
| | K. | INSURED'S IMMEDIATE FAMILY | |
| | L. | LEGAL SERVICES | |
| | M. | NAMED INSURED | |
| | N. | PERSONAL INJURY | |
| | O. | POLICY PERIOD | |
| | P. | PREDECESSOR FIRM | |
| | Q. | RELATED CIRCUMSTANCES | |
| | R. | RETENTION | |
| | S. | RETROACTIVE DATE | |
| | T. | WRONGFUL ACT | |
| | U. | TOTALLY & PERMANENTLY DISABLED | |



# *Legalis Consilium*

## LAWYERS PROFESSIONAL LIABILITY POLICY

**THIS IS A CLAIMS MADE AND REPORTED POLICY.**
**PLEASE READ THE ENTIRE POLICY CAREFULLY AND DISCUSS THE**
**COVERAGE PROVIDED WITH YOUR INSURANCE AGENT OR BROKER.**

In consideration of the payment of premium, and in reliance upon the **Application** that is made part of this Policy, and subject to the Declarations, limitations, conditions, exclusions and all terms of this Policy, the **Company** and all **Insureds** agree as follows:

**I.      INSURING AGREEMENTS**

**A.      GENERAL COVERAGE GRANT**

The **Company** shall pay **Damages** and **Claim Expenses** in excess of the **Retention** and subject to the Limits of Liability set forth in the Declarations, that an **Insured** becomes legally obligated to pay as a result of a **Claim** made against an **Insured** arising out of a **Wrongful Act** that is first made during the **Policy Period** or any **Extended Reporting Period**.

It is a condition precedent to coverage under this Policy that the **Wrongful Act** that is the basis of any **Claim** must have occurred:

**1.**      during the **Policy Period**; or

**2.**      on or after the **Retroactive Date** set forth in the Declarations and prior to the **Policy Period**, provided that all of the following conditions are met:

**a.**      the **Insured** did not notify any prior insurer of said **Wrongful Act** or **Related Circumstances**; and

**b.**      prior to the inception of the first Policy issued by the **Company**, if continuously renewed, no **Insured** has any basis (1) to believe that any **Insured** breached a professional duty; or (2) to foresee that any such **Wrongful Act** or **Related Circumstances** might reasonably be expected to be the basis of a **Claim** against any **Insured**; and

**c.**      there is no other policy or insurer that provides coverage to any **Insured** for said **Wrongful Act**.

**B.      ADDITIONAL COVERAGES**

**1.      Disciplinary & Regulatory Proceedings Coverage**

The **Company** will reimburse the **Insured** for reasonable lawyer fees, costs and expenses resulting from the investigation and/or defense of each **Disciplinary & Regulatory Proceeding** incurred, provided that such proceeding must:

**1.**      be initiated against an **Insured** during the **Policy Period** or **Extended Reporting Period**; and

2. be reported in writing to the **Company** during the **Policy Period** or **Extended Reporting Period**; and

3. arise from a covered **Wrongful Act**.

As a condition precedent to this coverage, no **Insured** had any reasonable basis to believe that a professional duty had been breached prior to the inception of the Policy.

The maximum amount payable for this coverage by the **Company** shall not exceed $25,000 for each **Disciplinary & Regulatory Proceeding**, subject to a maximum aggregate of $125,000, regardless of the number of **Insureds** or number of **Disciplinary & Regulatory Proceedings**

Any amounts paid under this coverage are in addition to the Limits of Liability set forth in the Declarations.

The **Retention** shall not apply to this coverage.

2. **Subpoena Coverage**

If, during the **Policy Period**, an **Insured** receives a subpoena for documents and/or testimony arising out of **Legal Services** performed on behalf of the **Named Insured**, the **Insured** may obtain assistance in responding to the subpoena by providing a copy of the subpoena to the **Company**.  The **Company** will retain a lawyer to provide advice regarding document production and/or guidance in providing sworn testimony, including representation of the **Insured** at depositions, provided that:

1. the subpoena arises out of a civil proceeding to which the **Insured** is not a party; and

2. the **Insured** has neither been engaged to provide advice or testimony in connection with the civil proceeding, nor has the **Insured** previously provided any said advice or testimony.

The maximum amount payable for this coverage by the **Company** shall not exceed $25,000 for each subpoena, subject to a maximum aggregate of $125,000, regardless of the number of **Insureds** or number of subpoenas.

Any amounts paid under this coverage shall erode the Limits of Liability set forth in the Declarations.

The **Retention** shall not apply to this coverage.

All notices an **Insured** gives the **Company** for subpoena coverage shall be deemed notice of a Potential Claim under Section **IV., B.**

3. **Trial Attendance Expense Coverage**

If, during the **Policy Period**, the **Company** requests an **Insured's** attendance at a civil proceeding, hearing or other alternative dispute resolution proceeding in connection with a **Claim** against an **Insured**, then the **Company** shall reimburse the **Insured** for actual loss of earnings and reasonable costs incurred.  The determination by the **Company** as to the reasonableness of actual loss of earning and reasonable costs shall be conclusive on all **Insureds**.

The maximum amount payable for this coverage by the **Company** shall not exceed $1,000 per day and $25,000 in the aggregate, regardless of the number of days an **Insured** is in attendance or the number of proceedings.

This coverage does not apply to **Disciplinary & Regulatory Proceedings.**

Any amounts paid under this coverage shall erode the Limits of Liability set forth in the Declarations.

The **Retention** shall not apply to this coverage.

4. **Crisis Event Expense Coverage**

If, during the **Policy Period**, the **Named Insured** experiences a **Crisis Event**, the **Company** will retain a public relations firm, crisis management firm or law firm to perform services to minimize potential harm to the **Named Insured** arising from a **Crisis Event**, including restoring public confidence in the **Named Insured**. The **Company** shall pay for all reasonable expenses incurred by the public relations firm, crisis management firm or law firm, including professional service fees and costs, which may include reasonable print and marketing materials, advertisements and/or mailing costs.  The **Company** shall not pay salaries, fees, overhead costs, travel or expenses of any **Insured**.

The maximum amount payable for this coverage by the **Company** shall not exceed $25,000 for each **Crisis Event**, subject to a maximum aggregate of $125,000, regardless of the number of **Crisis Events**.

Any amounts paid under this coverage shall erode the Limits of Liability set forth in the Declarations.

The **Retention** shall not apply to this coverage.

The **Company** shall not pay **Damages** pursuant to this coverage.

5. **Pre-Claim Expense Assistance Coverage**

If, during the **Policy Period**, the **Insured** gives notice to the **Company** under Section **VI., B.**, the **Company** shall reimburse the **Insured** for expenses incurred from the investigation of such **Wrongful Act(s)** alleged in the notice.  The **Company** shall only reimburse expenses that were incurred with the **Company's** written consent.  The **Company** shall reimburse expenses under this provision only until a **Claim** is made against the **Insured** arising out of such **Wrongful Act(s).**

The maximum amount payable for this coverage by the **Company** shall not exceed $25,000 for each notice, subject to a maximum aggregate of $125,000, regardless of the number of **Insureds** or number of notices.

Any amounts paid under this coverage shall erode the Limits of Liability set forth in the Declarations.

The **Retention** shall not apply to this coverage.

The **Company** shall not pay **Damages** pursuant to this coverage.

## II.    LIMITS OF LIABILITY

Except for any amounts paid as a **Disciplinary & Regulatory Proceeding**, and regardless of the number of **Claims**, the **Company's** liability for all **Claim Expenses** and **Damages** first made against any **Insured** and reported to the **Company** during the **Policy Period** or applicable **Extended Reporting Periods** shall not exceed the Limits of Liability set forth in the Declarations.

**Claims Expenses** are part of, and not in addition to, the Limits of Liability set forth in the Declarations and shall reduce and may exhaust the Limits of Liability.  The Limits of Liability shall first be applied to **Claim Expenses** with the remainder, if any, available to pay **Damages**.

The number of **Insureds** covered by this Policy shall not operate to increase the Limits of Liability set forth in the Declarations.

The **Company** shall not be obligated to pay any **Claim Expenses** or **Damages** or to defend any **Claim** after the Limits of Liability set forth in the Declarations has been exhausted.  Upon exhaustion of the Limits of Liability, the **Company** shall have the right to withdraw from further investigation or defense of any **Claim** by tendering control of such investigation or defense, in writing, to the **Named Insured**.  The **Named Insured** agrees, as a condition to the issuance of this Policy, to accept such tender and proceed solely at its own expense.

## III.    RETENTION

The **Company's** obligation to pay **Claims Expenses** and **Damages** shall be excess of the **Retention** set forth in the Declarations for each and every **Claim**.  As a condition precedent to coverage under this Policy, the **Named Insured** agrees to pay **Claims Expenses** and **Damages** otherwise payable under this Policy up to the amount of the **Retention**.

The **Retention** shall not apply to any of the Additional Coverages in Section **I. INSURING AGREEMENTS, B. ADDITIONAL COVERAGES.**

## IV.    DEFENSE & SETTLEMENT

### A.    DUTY TO DEFEND

Subject to the Limits of Liability set forth in the Declarations, the **Company** shall have the right and duty to defend any **Claim** against an **Insured** that is covered by this Policy, subject to all terms and conditions, even if the allegations of the **Claim** are groundless, false or fraudulent.  The **Company's** duty to defend shall terminate upon the exhaustion of the Limits of Liability by the payment of **Claim Expenses** and/or **Damages**.

### B.    SELECTION OF DEFENSE COUNSEL

The **Company** shall have the right and duty to defend any **Claim** under this Policy, which shall be subject to the **Retention** and Limits of Liability set forth in the Declarations.  The **Company** shall select defense counsel for the investigation, defense or settlement of any such **Claim**.

### C.    CONSENT TO SETTLE

The **Company** shall have the right to an investigation, negotiation or settlement of any **Claim** covered by this Policy.  The **Company**, however, shall not settle any **Claim** without the **Insured's** consent, which shall not be unreasonably withheld.  If the **Company** recommends a settlement and the **Insured** refuses to give written consent to such

settlement, then the **Company's** liability shall not exceed the amount which the **Company** would have paid for **Claims Expenses** and **Damages** at the time the **Claim** could have been settled.

If the **Named Insured** has not fully paid any premiums due or satisfied any applicable **Retentions**, the **Company** has the right, at its sole discretion, to settle any **Claim** without the consent of the **Insured**.

As a condition precedent to coverage under this Policy, no **Insured** shall admit or assume liability, negotiate or settle any **Claim**, or incur any **Claim Expenses** without the **Company's** written consent.

## V.    TERRITORY

The coverage provided by this Policy applies to any **Wrongful Acts** that occur anywhere in the world, and **Claims** brought in any country in the world not on *The Office of Foreign Assets Control* list of sanctioned countries at the time the **Claim** is reported to the **Company**.

## VI.    NOTICE OF CLAIMS AND CIRCUMSTANCES

### A.    ACTUAL CLAIMS

As a condition precedent to coverage under this Policy, the **Insured** shall give written notice to the **Company** of a **Claim** made against the **Insured** during the **Policy Period** or **Extended Reporting Period**, but in no event later than sixty (60) days after the termination of the **Policy Period**.

In the event of a **Claim** against an **Insured**, the **Insured** shall immediately forward to the **Company** every demand, notice, summons or other process or pleading received directly or by an **Insured's** representative.

### B.    POTENTIAL CLAIMS

If, during the **Policy Period**, the **Insured** first becomes aware of a **Wrongful Act** that may reasonably be expected to be the basis of a **Claim** against the **Insured**, and the **Insured**, as soon as practicable, but in no event later than the termination of the **Policy Period**, provides the **Company** written notice of such **Wrongful Act** and the reason(s) for anticipating a **Claim**, then the **Company** shall treat any subsequently resulting **Claim** as if it had first been made during the **Policy Period**.

For the **Insured's** notice to be sufficient, the **Insured** must provide:

1.    specific allegations anticipated that give rise to the **Wrongful Act**;
2.    any known **Damages** that have or may result from the **Wrongful Act**;
3.    circumstances that led to the **Insured** becoming aware of such **Wrongful Act**;
4.    dates, persons or entities, or any similar facts to assist in investigating the **Wrongful Act**.

### C.    FALSE OR FRAUDULENT CLAIMS

If an **Insured** shall commit fraud in proffering any **Claim** with regard to the amount of the **Claim** or otherwise, this Policy shall become *void ab initio* as to such **Insured**.

D.     **RELATED CIRCUMSTANCES**

All **Claims** based upon or arising out of the same **Wrongful Act** or **Related Circumstances** shall be considered a single **Claim**, and shall be considered first made at the time the earliest **Claim** arising out of such **Related Circumstances** was first made.  In any such event, only one (1) per claim Limit of Liability and one (1) **Retention** as set forth in the Declarations shall apply.

E.     **ASSISTANCE AND COOPERATION OF THE INSURED**

All **Insureds** shall cooperate with the **Company**, with such cooperation including, but not limited to:

1.     providing the **Company** copies of documents and related materials held by or available to the **Insured** that related to any **Claim** or to any alleged **Wrongful Act**;

2.     submitting to an examination, whether written or verbal, by a representative of the **Company**, under oath if required;

3.     attendance at hearings depositions, mediations, settlement conferences, arbitrations and trials; and

4.     assistance in effectuating settlement, securing and giving evidence, obtaining the attendance of witnesses, and in the conduct of legal or related proceedings.

All such cooperation shall be without charge to the **Company**.

All **Insureds** shall follow the **Company's** written instruction regarding whether to accept or reject a demand for arbitration or binding mediation of any **Claim**.

No **Insured** shall voluntarily agree to arbitration or binding mediation without the **Company's** written consent.

No **Insured** shall, except at the **Insured's** own expense, make any payment, admit any liability, waive any right, settle any **Claim**, assume any obligation or incur any expense without the prior written consent of the **Company**.

VII.    **EXTENDED REPORTING PERIODS**

A.     **AUTOMATIC EXTENDED REPORTING PERIOD**

If this Policy is cancelled or non-renewed by either the **Company** or the **Named Insured**, and the Policy has been in force for at least one hundred twenty (120) days, the **Company** shall provide the **Named Insured** an automatic, non-cancellable sixty (60) day **Extended Reporting Period** starting at the termination of the of the **Policy Period**.

B.     **NAMED INSURED EXTENDED REPORTING PERIOD**

If this Policy is cancelled or non-renewed by either the **Company** or the **Named Insured**, and the Policy has been in force for at least one hundred twenty (120) days, the **Named Insured** has the right to purchase a **Named Insured Extended Reporting Period**. The **Named Insured** must exercise this right within sixty (60) days of the cancellation or non-renewal of this Policy by providing written notification and payment to the **Company** of the additional premium for one of the following options:

| | | | |
|---|---|---|---|
| **1.** | One Year (12 months) | @: | 100% of the Annual Premium |
| **2.** | Two Years (24 months) | @: | 150% of the Annual Premium |
| **3.** | Three Years (36 months) | @: | 185% of the Annual Premium |
| **4.** | Five Years (60 months) | @: | 200% of the Annual Premium |
| **5.** | Seven Years (84 months) | @: | 250% of the Annual Premium |

The first sixty (60) days of any **Named Insured Extended Reporting Period**, if purchased, shall run concurrently with the Automatic **Extended Reporting Period**.

**C.      INDIVIDUAL LAWYER EXTENDED REPORTING PERIODS**

**1.      Firm Departure**

If an individual **Insured** lawyer, except any contract or per diem lawyer, that is listed on the **Application** for this Policy, and insured as of the inception date of this Policy, departs from the **Named Insured**, yet continues to provide **Legal Services**, the **Named Insured** may request an Individual Lawyer **Extended Reporting Period** for such individual **Insured** lawyer.

Coverage for any **Claim** first made during said Individual Lawyer **Extended Reporting Period** shall be excess over and shall not contribute to any other insurance that covers the individual **Insured** lawyer for such **Claim**.

As a condition precedent to the issuance of an Individual Lawyer **Extended Reporting Period** endorsement, all of the following conditions must be satisfied:

**a.**      the **Named Insured** must provide written notification not later than sixty (60) days after the expiration or cancellation of the Policy requesting an Individual Lawyer **Extended Reporting Period** that specifies the name of the individual **Insured** lawyer;

**b.**      the **Named Insured** must provide a written Warranty Statement that it is not aware of any **Claims** or circumstances that could give rise to a **Claim**;

**c.**      the individual **Insured** lawyer must provide a written Warranty Statement that said lawyer is not aware of any **Claims** or circumstances that could give rise to a **Claim**;

**d.**      the **Named Insured** must provide payment to the **Company** of the additional premium that is calculated by the *per lawyer rate* of the annual premium as of the inception of the Policy for one of the following options:

| | | | |
|---|---|---|---|
| **1.** | One Year (12 months) | @: | 100% of the Annual Premium |
| **2.** | Two Years (24 months) | @: | 150% of the Annual Premium |
| **3.** | Three Years (36 months) | @: | 185% of the Annual Premium |
| **4.** | Five Years (60 months) | @: | 200% of the Annual Premium |
| **5.** | Seven Years (84 months) | @: | 250% of the Annual Premium |

**2.      Nonpracticing**

If an individual **Insured** lawyer, except for any contract or per diem lawyer, that is listed on the **Application** for this Policy, and insured as of the inception date of this Policy, retires or otherwise ceases the private practice of law during the

**Policy Period**, then the **Named Insured** may request an Individual Lawyer **Extended Reporting Period** for such individual **Insured** lawyer.  The Individual Lawyer **Extended Reporting Period** shall extend the period for reporting **Claims** first made against the **Insured** after the termination of the **Policy Period** for any actual or alleged **Wrongful Act** occurring prior to the **Insured's** date of retirement or cessation of the private practice of law.  If the individual **Insured** lawyer shall resume the private practice of law at any time, for any reason, the Individual Lawyer **Extended Reporting Period** shall be void.

Coverage for any Claim first made during the Nonpracticing Individual Lawyer **Extended Reporting Period** shall be excess over and shall not contribute to any other insurance that covers the individual **Insured** lawyer for such **Claim**.

As a condition precedent to the issuance of an Individual Lawyer **Extended Reporting Period** endorsement, each of the following conditions must be satisfied:

a.    the **Named Insured** must provide written notification not later than sixty (60) days after the expiration or cancellation of the Policy requesting an **Extended Reporting Period** that specifies the name of the individual **Insured** lawyer and date of cessation of the private practice of law;

b.    unless the individual **Insured** lawyer qualifies for a waiver of premium set forth below, the **Named Insured** must provide payment to the **Company** of the additional premium that is calculated by the *per lawyer rate* of the annual premium as of the inception of the Policy, for one of the following options:

| | | | |
|---|---|---|---|
| **1.** | One Year (12 months) | @: | 100% of the Annual Premium |
| **2.** | Two Years (24 months) | @: | 150% of the Annual Premium |
| **3.** | Three Years (36 months) | @: | 185% of the Annual Premium |
| **4.** | Five Years (50 months) | @: | 200% of the Annual Premium |
| **5.** | Seven Years (84 months) | @: | 250% of the Annual Premium |

The individual **Insured** lawyer is entitled to a premium waiver if:

i.    **3 Years Continuous Coverage**

The **Named Insured** has maintained thirty-six (36) months of consecutive coverage with the **Company**.

As a condition precedent to the issuance of this Individual Lawyer **Extended Reporting Period**, the **Named Insured** must provide written notification requesting an Individual Lawyer **Extended Reporting Period** that specifies the name of the individual **Insured** lawyer.

ii.    **Death**

The individual **Insured** lawyer dies during the **Policy Period**, provided that the death did not result from an intentionally self-inflicted injury, suicide, alcohol or drug abuse.

As a condition precedent to the issuance of this Individual Lawyer **Extended Reporting Period**, the **Named Insured** must provide written notification requesting an Individual Lawyer **Extended Reporting Period** that specifies the name of the individual **Insured** lawyer and proof of death prior to the termination of the **Policy Period** and no later than ninety (90) days following the death.

    **iii.**    **Disability**

The individual **Insured** lawyer was employed by the **Named Insured** during the **Policy Period** and became **Totally & Permanently Disabled** during the **Policy Period**, and the individual **Insured** lawyer was totally and continuously disabled from practicing law for a minimum of four (4) months prior to the request for an Individual Lawyer **Extended Reporting Period**.

As a condition precedent to the issuance of this Individual Lawyer **Extended Reporting Period**, the **Named Insured** must provide written notification requesting an Individual Lawyer **Extended Reporting Period** that specifies the name of the individual **Insured** lawyer and written evidence from a licensed medical professional confirming the total and permanent disability.

**D.**    **CONDITIONS APPLICABLE TO ALL EXTENDED REPORTING PERIODS**

    **1.**    The **Company's** liability for all **Claims** reported during any **Extended Reporting Period** shall be part of, and not in addition to, the Limits of Liability set forth in the Declarations and Section **II, LIMITS OF LIABILITY**;

    **2.**    For calculating the amounts payable under this Section, the Annual Premium includes the amount set forth in the Declarations and all additional premium collected by the **Company** during the **Policy Period**;

    **3.**    None of the **Extended Reporting Period** options are cancelable or renewable;

    **4.**    Any additional premium, if applicable, for any **Extended Reporting Period** must be paid in full, and is deemed fully earned, on the inception of the **Extended Reporting Period**;

    **5.**    The right to any **Extended Reporting Period** is not available to any **Insured** if:

        **a.**    this Policy is cancelled or non-renewed by the **Company** for nonpayment of premium, nonpayment of any **Retentions** or any other money due to the **Company**; and/or

        **b.**    the **Insured's** right or license to practice law is suspended, surrendered or revoked.

**VIII.**    **CANCELLATION**

    **1.**    This Policy shall terminate on the Expiration Date set forth in the Declarations, or upon any earlier cancellation by either the **Named Insured** or the **Company**.

**2.** The **Named Insured** may cancel this Policy with written notice to the **Company** stating the date of the cancellation.  When cancelled by the **Named Insured**, the **Company** shall retain the earned premium, which shall be calculated with the customary short rate proportion of the premium.

**3.** The **Company** may cancel or non-renew this Policy by written notice to the **Named Insured** at the last address known to the **Company**.  The **Company** must provide written notice at least sixty (60) days before cancellation or non-renewal, if for reasons other than nonpayment of premium.  The notice shall state the reason for and effective date of the cancellation.  The proof of delivery of such notice shall constitute sufficient proof of notice.  When cancelled by the **Company**, the **Company** shall retain the earned premium, which shall be calculated on a *pro rata* basis.

**4.** The **Company** may cancel this Policy for nonpayment premium by written notice mailed to the **Named Insured** at the last address known to the **Company** at least ten (10) days before the effective date of the cancellation.  The notice shall state the reason for and effective date of the cancellation.  The proof of delivery of such notice shall constitute sufficient proof of notice.  When cancelled for nonpayment of premium, the Policy is *void ab initio*.

**5.** The **Company** will be not required to renew this Policy upon its expiration.  The offer of terms and conditions different from expiring terms and conditions shall not constitute a refusal to renew.

**IX.   GENERAL CONDITIONS**

**A.   APPLICATION**

By issuing this Policy, the **Company** has relied upon the statements and information contained in the **Application**.

By accepting this Policy, every **Insured** acknowledges and agrees:

**1.** that the statements and information contained in the **Application** are true and accurate as of the Inception Date of the Policy; and

**2.** that the **Application** provided by the **Insured** was material to the Company's issuance of the Policy; and

**3.** that the Policy was issued in reliance upon the truth and accuracy of the **Application**.

If any material statements and/or information contained in the **Application** is false or misleading as of the Inception Date of the Policy, this Policy shall be *void ab initio*.

**B.   NAMED INSURED AUTHORIZATION**

The **Named Insured** shall act on behalf of every **Insured** regarding the payment or return of premium, the receipt and acceptance of all policy modifications and endorsements, cancellation of the Policy, the exercise of any **Extended Reporting Periods**, renewal negotiations, and notice requirements of this Policy.

**C.   SUBROGATION**

In the event of any payment under this Policy, the **Company** shall be subrogated to all of the **Insured's** right of recovery against any person or organization.  Upon written request by the **Company**, the **Insured** shall execute and deliver instruments, papers and whatever else is necessary to secure such rights.  The **Insured** shall do nothing to

prejudice such rights.

Any recoveries from the exercise of such rights of subrogation shall be applied as the following order:

1. Repayment of subrogation expenses, including lawyer's fees;
2. **Damages** and/or **Claim Expenses** paid by the **Company** in excess of the Limits of Liability;
3. **Damages** and/or **Claim Expenses** paid by the **Company**;
4. **Damages** and/or **Claim Expenses** paid by the **Insured**;
5. Repayment of the **Retention**.

**D.    LEGAL ACTION AGAINST THE COMPANY**

No action shall lie against the **Company** by any third party, unless as a condition precedent:

1. there has been full compliance with all the terms of this Policy, including payment of all premium and **Retention** amounts; and
2. the **Insured's** obligation to pay shall have been finally determined either by judgment against the **Insured** after actual trial or by written agreement of the **Insured**, the claimant and the **Company**.

Any person or entity, or the legal representative thereof, who has secured such judgment or written agreement shall thereafter be entitled to recover under this Policy to the extent of the insurance afforded by this Policy.  No person or entity shall have any right under this Policy to join the **Company** as a party to any action against any **Insured** to determine such **Insured's** liability, nor shall the **Company** be impleaded by such **Insured** or legal representatives of such **Insured**.

**E.    WAIVER**

The **Company's** failure to insist on strict compliance with any terms, provisions, exclusions or conditions of this Policy, or the failure to exercise any right or privilege of this Policy, shall not operate or be construed as a waiver thereof or of any subsequent breach or a waiver of any other terms, provisions, exclusions, conditions, rights or privileges.

**F.    OTHER INSURANCE**

The coverage provided by this Policy shall be excess over any other valid and collectible insurance available to the **Insured**, whether such insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written specifically as excess insurance over the applicable Limit of Liability stated in the Declarations.

**G.    ASSIGNMENT**

This Policy, including any rights thereunder, shall not be assigned by any **Insured**.

**H.    HEADINGS**

The descriptions in the headings and sub-headings of this Policy are solely for convenience, and do not alter the terms and conditions of coverage.

**I.      POLICY MODIFICATION**

Any modification of this Policy must be done by written endorsement, effective on the date written into said endorsement.  No representations by an individual or entity shall have any force or effect except as included in any issued endorsement.

**J.      BANKRUPTCY**

The bankruptcy or insolvency of the **Insured** shall not relieve the **Company** of its obligations nor deprive the **Company** of its rights or defenses under this Policy.

**K.      ENTIRE AGREEMENT**

All **Insureds** agree that this Policy, the **Application** and any endorsements constitute the entire agreement between all **Insureds** and the **Company**.

**X.      CHANGES IN EXPOSURE**

**A.      ADDITIONAL LAWYERS**

If, during the **Policy Period**, the number of individual lawyers performing **Legal Services** on behalf of the **Named Insured** that are covered by this Policy, as determined by the roster of lawyers at the inception of the **Policy Period**, increases by 34% or more, the **Named Insured** shall immediately notify the **Company**, in writing.  At its sole discretion, the **Company** shall have the right to charge additional premium or modify terms and conditions of this Policy upon such notification.

**B.      MERGER OR ACQUISITION**

If, during the **Policy Period**, any of the following events occur:

**1.**      the merger or acquisition of the **Named Insured** such that the **Named Insured** is not the surviving entity, or a majority of the assets of the **Named Insured** are acquired; or

**2.**      the dissolution of, or appointment of a receiver, trustee, liquidator or rehabilitator or similar official for the **Named Insured**;

the **Named Insured** shall report such event to the **Company** within thirty (30) days of such event occurring.  If such an event is reported, coverage under this Policy will continue with respect to **Claims** for **Wrongful Acts** committed before such event took place, but will cease with respect to **Claims** for **Wrongful Acts** committed on or after such event took place.  After reporting any such event, this **Policy Period** is deemed fully earned and the Policy may not be cancelled.

**XI.     EXCLUSIONS**

This Policy shall not apply to any **Claim Expenses** or **Damages** incurred with respect to any **Claim**:

1.      **INTENTIONAL ACTS**

based on or arising out of, or in any way involving, any dishonest, fraudulent, criminal, malicious act or omission, willful violation of any statute or regulation, or intentional wrongdoing by an **Insured**, if a final adjudication adverse to said **Insured** establishes such dishonest, fraudulent, criminal, malicious act or omission, willful violation or intentional wrongdoing.  Criminal proceedings shall not be covered by this Policy regardless of the allegations made against any **Insured**.

2.      **INSURED V. INSURED**

by or on behalf of an **Insured** against any other **Insured** under this Policy; however, this exclusion shall not apply if such **Claim** arises out of **Legal Services** by an **Insured** rendered to a separate **Insured** as a client for a fee, and subject to a retainer or engagement agreement that was executed prior to the provision of **Legal Services**.

3.      **PRIOR REPORTING**

based on or arising out of, or in any way involving, any circumstance reported to an insurer under a policy of which this Policy is a direct or indirect renewal or replacement.

4.      **ERISA**

based on or arising out of, or in any way involving, any actual or alleged violations of the *Employee Retirement Income Security Act of 1974*, and amendments thereto, by any **Insured** while acting as a fiduciary within the meaning of said Act; however, this exclusion shall not apply if an **Insured** is deemed a fiduciary solely in the performance of **Legal Services** for a client, for a fee, with respect to an employee benefit plan.

5.      **MATERIAL INTEREST**

based on or arising out of, or in any way involving, an **Insured's** rendering of **Legal Services**, directly or indirectly, for an entity not named in the Declarations, if at the time of the act or omission giving rise to the **Claim**, the percentage of ownership interest in such entity by any **Insured** or **Insured's Immediate Family**, or accumulation of **Insured's**, exceeded ten percent (10%).

6.      **BODILY INJURY & PROPERTY DAMAGE**

for **Bodily Injury**, or injury to, or destruction of, any tangible property, including the loss of uses resulting therefrom; however, this exclusion for **Bodily Injury** does not apply to mental injury, mental anguish, mental stress, or emotional distress caused by **Legal Services**.

7.      **INVESTMENT ADVICE**

based on or arising out of, or in any way involving, the alleged rendering of investment advice, including advice given by any **Insured** to make any investment or to refrain from doing so.

8.  **NOTARY SERVICES**

based on or arising out of, or in any way involving, any actual or alleged certification or acknowledgment by any **Insured** in the capacity as a notary public of a signature on a document said **Insured** did not personally witness being placed on the document.

9.  **BENEFICIARY STATUS**

made against any **Insured** as the beneficiary or distributee of any trust or estate

10. **CAPACITY AS A PUBLIC OFFICIAL**

based on or arising out of, or in any way involving, any Insured's capacity as a public official or an employee or representative of a governmental body, subdivision or agency, unless said **Insured** is privately retained solely to render **Legal Services** to said governmental body, subdivision or agency and the renumeration for such **Legal Services** inures to the benefit of the **Named Insured**.

11. **PERSONAL PROFIT**

based on or arising out of, or in any way involving any **Insured** having gained any personal profit, renumeration or advantage to which said **Insured** was not legally entitled.

12. **CONTRACT**

based on or arising out of, or in any way involving any actual or alleged liability assumed by any **Insured** if any express, implied, actual, constructive, oral or written contract, warranty, guarantee or promise, including liquidated damages or penalties of any nature pursuant to a contract or agreement; however, this exclusion does not apply if such liability would have attached to said **Insured** in the absence of such contract or agreement.

13. **CLIENT ASSETS & FUNDS**

based on or arising out of, or in any way involving, the actual or alleged loss or value of any asset in any **Insured's** care, custody or control, misappropriation, conversion, embezzlement, failure to provide an accounting, or commingling of client funds.

XII.  **DEFINITIONS**

A.  **APPLICATION** means:

1.  the application, including any competitor's application, including attachments and other materials submitted therein, submitted to the **Company** for coverage under this Policy; and
2.  all materials and information submitted to the **Company** for consideration of coverage under this Policy, including all information publicly available prior to the inception of this Policy.

All such applications, attachments and materials are deemed attached to, and form part of, this Policy.

**B.** **BODILY INJURY** means physical injury, sickness or disease sustained by a person, including death resulting from any of these at any time. **Bodily Injury** includes emotional distress or mental anguish, whether or not accompanied by physical injury, sickness or disease.

**C.** **CLAIM** means a written demand received by any **Insured** for monetary **Damages** that alleges a **Wrongful Act**, including:

**1.** the service of suit or any civil proceeding in a court of law or equity; or

**2.** a request to toll or waive a statute of limitations; or

**3.** the institution of arbitration, mediation or other alternative dispute resolution proceeding, other than a **Disciplinary & Regulatory Proceeding**;

A **Claim** does not include any criminal proceedings or any proceedings that seeks injunctive, declaratory, equitable or non-monetary relief and/or remedy.

**D.** **CLAIM EXPENSES** means:

**1.** reasonable fees, costs and expenses charged by a lawyer approved by the **Company** to defend a **Claim** brought against an **Insured**;

**2.** reasonable fees costs and expenses resulting from the investigation, adjustment, defense and appeal of a **Claim**, if incurred by the **Company** or by an **Insured** with the written consent of the **Company**.

**Claim Expenses** shall not include:

**1.** salaries, loss of earnings or other renumeration of any **Insured**;

**2.** salaries or expenses of any employee of the **Company**.

The determination by the **Company** as to the reasonableness of **Claim Expenses** shall be conclusive on all **Insureds**.

**E.** **COMPANY** means the insurer set forth in the Declarations.

**F.** **CRISIS EVENT** means the publication, in media of widespread distribution, of unfavorable information about the **Named Insured** that can reasonably be considered to lessen public confidence in the competence, integrity or viability of the **Named Insured** as a provider of **Legal Services**.

**G.** **DAMAGES** means any compensatory sum that an **Insured** becomes legally obligated to pay, including:

**1.** monetary judgments or settlements;

**2.** pre-judgment and post-judgement interest;

**3.** punitive or exemplary damages, to the extent insurable under the law of the most favorable applicable jurisdiction.

**Damages** shall not include:

**1.** criminal or civil fines, taxes, fees, sanctions or penalties, whether imposed by statute or otherwise, except for any punitive or exemplary damages noted above;

**2.** the return, reduction or restitution of fees, expenses or costs for **Legal Services**;

     **3.**    fees, expenses or costs for correcting or completing **Legal Services**;

     **4.**    any form of injunctive, declaratory, equitable or non-monetary relief and/or remedy;

     **5.**    matters deemed uninsurable by law.

**H.**    **DISCIPLINARY & REGULATORY PROCEEDING** means any proceeding initiated by a disciplinary or regulatory official or agency to investigate an alleged violation of any disciplinary rule or other professional misconduct by an **Insured** in rendering or failing to render **Legal Services**.  **Disciplinary & Regulatory Proceeding** shall not include any criminal proceeding or peer review.

**I.**    **EXTENDED REPORTING PERIOD** means the period of time after the end of the **Policy Period** for reporting **Claims** that are first made against the **Insured** during the applicable **Extended Reporting Period** for a **Wrongful Act** that occurred prior to the end of the **Policy Period**, subject to all terms, conditions, exclusions and Limits of Liability of this Policy.

**J.**    **INSURED** means:

     **1.**    the **Named Insured** or **Predecessor Firm**;

     **2.**    any lawyer or professional corporation listed in the **Application** on the day the **Policy Period** incepts until such time the lawyer or professional corporation ceases to be a member of the **Named Insured**, but only in the performance or failure to perform **Legal Services** on behalf of the **Named Insured**;

     **3.**    any lawyer or professional corporation that is a former partner, officer, shareholder or employee of the **Named Insured** or **Predecessor Firm**, but only in the performance or failure to perform **Legal Services** on behalf of the **Named Insured**;

     **4.**    any lawyer or professional corporation that becomes a partner, officer, shareholder or employee of the **Named Insured** or **Predecessor Firm**, but only in the performance or failure to perform **Legal Services** on behalf of the **Named Insured**;

     **5.**    any lawyer designated by the **Named Insured** as "Counsel" or "Of Counsel" if such lawyer is listed in the **Application** or written notice is provided to the **Company** that includes the name, scope of services and number of hours of service to the **Insured**, but only in the performance or failure to perform **Legal Services** on behalf of the **Named Insured**;

     **6.**    any lawyer who is employed and/or retained by the **Named Insured** as a contract lawyer or *per diem* lawyer if such lawyer is listed in the **Application** or written notice is provided to the **Company** that includes the name, scope of services and number of hours of service to the **Insured**, but only in the performance or failure to perform **Legal Services** on behalf of the **Named Insured**;

     **7.**    any person who is employed or retained by the **Named Insured** as a legal assistant, paralegal or other legal office staff member, but only in support of the performance or failure to perform **Legal Services** on behalf of the **Named Insured**;

     **8.**    the estate, heirs, executors, administrators, assigns and legal representatives of the **Insured** in the event of such **Insured's** death, incapacity, insolvency or bankruptcy, but only to the extent that such **Insured** would have been provided coverage under this Policy.

**K.** **INSURED'S IMMEDIATE FAMILY** means:

1. the **Insured**; or
2. the **Insured's** lawful spouse or legally recognized partner; or
3. the **Insured's** parents, including adoptive and/or step-parents; or
4. the **Insured's** siblings or step-siblings; or
5. the **Insured's** children, including adoptive and/or step-children.

**L.** **LEGAL SERVICES** means those services provided on behalf of the **Named Insured** or **Predecessor Firm** by any **Insured** for others as a licensed lawyer in good standing, including services as:

1. an arbitrator or mediator;
2. a notary public;
3. a title agent;
4. a lobbyist;
5. administrator, conservator, receiver, executor, guardian, trustee, escrow agent or in any other fiduciary capacity;
6. expert witness services that are related directly to the practice of law;

but only where such services were performed in the ordinary course of the **Insured's** activities as a lawyer.

**Legal Services** includes *pro bono* services, but only when the **Insured** and the *pro bono* client execute a retainer or engagement agreement detailing the scope of services prior to the provision of any services, or there is no coverage under this Policy.

**Legal Services** also includes services provided on behalf of the **Named Insured** or **Predecessor firm** by any **Insured** (1) in service of a bar association or similar professional association related to the legal profession; or (2) as an author, publisher or presenter of legal research, articles or papers, but only if the compensation generated from each individual work is not greater than $5,000.

**Legal Services** does not include services rendered as an accountant, investment advisor, insurance agent or broker, or real estate agent or broker.

**M.** **NAMED INSURED** means the entity set forth in the Declarations.

**N.** **PERSONAL INJURY** means injury other than **Bodily Injury** arising out of one or more of the following:

1. defamation, libel or slander;
2. violation of a right of privacy;
3. wrongful entry or eviction, false arrest or detention;
4. abuse of process or malicious prosecution;

but only where insurable by law.

**O.** **POLICY PERIOD** means the period set forth in the Declarations or, if earlier, the date upon with the cancellation of this Policy takes effect.  The **Policy Period** does not include any **Extended Reporting Period**.

**P.**     **PREDECESSOR FIRM** means any individual or entity engaged in **Legal Services** whose financial assets and liabilities the **Named Insured** is the majority successor-in-interest.

**Q.**     **RELATED CIRCUMSTANCES** means any act or omission based on, arising out of, directly or indirectly resulting from, or in any way involving the same or related facts, circumstances, transactions or events.

**R.**     **RETENTION** means the **Retention** set forth in the Declarations and is the amount an **Insured** must pay for **Claim Expenses** and/or **Damages** before the obligations of the **Company** incept.

**S.**     **RETROACTIVE DATE** means the **Retroactive Date** set forth in the Declarations, or as amended by any endorsement attached to this Policy.  There is no coverage for any **Claim**, **Crisis Event** or **Disciplinary & Regulatory Proceeding** arising from any alleged **Wrongful Act** taking place before the **Retroactive Date** set forth in the Declarations of this Policy.

**T.**     **WRONGFUL ACT** means any actual or alleged negligent act, error or omission committed by any **Insured** solely in the performance of or failure to perform **Legal Services** on behalf of the **Named Insured**, including, but not limited to, **Personal Injury**.

**U.**     **TOTALLY & PERMANENTLY DISABLED** means

1.     an individual cannot engage or provide any **Legal Services** because of the physical and/or mental impairment; and
2.     a licensed medical professional has determined said impairment is reasonably certain to continue throughout the lifetime of the **Insured**.

**THIS ENDORSEMENT CHANGES THE POLICY.**
**PLEASE READ IT CAREFULLY AND CONSULT WITH YOUR INSURANCE AGENT OR BROKER**

This Endorsement is effective and forms part of:

| | |
|---|---|
| Effective Date (as of 12:01 a.m.): | 9/15/2021 |
| Policy Number: | LPPL2110000070-03 |
| Named Insured: | Foy & Associates, P.C. |
| Additional Premium: | N/A |

# Additional Exclusions –
# Terrorism-Nuclear-EPL-Pollution-Mold

It is hereby understood and agreed that this Policy shall not apply to any **Claim Expenses** or **Damages** incurred with respect to any **Claim**

### 1. TERRORISM

based on or arising out of, or in any way involving "an act of terrorism" as defined in the *Terrorism Risk Insurance Act of 2002,* the *Terrorism Risk Insurance Program Reauthorization Act of 2007* and the *Terrorism Risk Insurance Program Reauthorization Act of 2015.*

### 2. NUCLEAR

based on or arising out of, or in any way involving any nuclear reaction, radiation, seepage, pollution or contamination of any kind.

### 3. EMPLOYMENT PRACTICES

based on or arising out of, or in any way involving employment related practices or policies of an **Insured** and/or any actual or alleged discrimination, humiliation or harassment based upon race, creed, color, religion, national origin, age, disability, sex, marital status, gender or sexual preference/orientation.

### 4. POLLUTION

based upon or arising out of the actual, alleged or threatened discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon the land, the atmosphere or any watercourse or body of water, including an aquifer or groundwater.

### 5. MOLD

based upon or arising out of any actual or alleged species of fungi, including mold, mildew and any mycotoxins, mold allergens, spores, scents or byproducts produced or released by fungi.

All other terms and conditions remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY.**
**PLEASE READ IT CAREFULLY AND CONSULT WITH YOUR INSURANCE AGENT OR BROKER**

This Endorsement is effective and forms part of:

| | |
|---|---|
| Effective Date (as of 12:01 a.m.): | 9/15/2021 |
| Policy Number: | LPPL2110000070-03 |
| Named Insured: | Foy & Associates, P.C. |
| Additional Premium: | N/A |

## Minimum Earned Premium

It is hereby understood and agreed that Section **VIII., CANCELLATION, 2.** is deleted in its entirety and replaced with the following:

> This Policy may be canceled by the **Named Insured** by mailing or delivering prior written notice to the **Company** or by surrender of this Policy to the **Company**.  If this Policy is canceled by the **Named Insured**, the **Company** shall retain the greater of the customary short rate proportion of the premium or 25% of the annual premium.

All other terms and conditions remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY.**
**PLEASE READ IT CAREFULLY AND CONSULT WITH YOUR INSURANCE AGENT OR BROKER**

This Endorsement is effective and forms part of:

| | |
|---|---|
| Effective Date (as of 12:01 a.m.): | 9/15/2021 |
| Policy Number: | LPPL2110000070-03 |
| Named Insured: | Foy & Associates, P.C. |
| Additional Premium: | N/A |

# Non-Profit Director & Officer Coverage

It is hereby understood and agreed that Section **I. INSURING AGREEMENTS, B.  ADDITIONAL COVERAGES** is amended to include the following:

5.   **Non-Profit Director & Officer Coverage**

With written notification from the **Named Insured**, the **Company** will reimburse an individual **Insured** lawyer for amounts such **Insured** lawyer becomes legally obligated to pay as **Claim Expenses** and/or **Damages** for a **Claim** arising out of a **Non-Profit Director & Officer Wrongful Act** that is initiated during the **Policy Period** or **Extended Reporting Period**, subject to the following:

*Retention*:
   Per Claim:      $25,000
   Aggregate:      n/a

*Limit of Liability*:
   Per Claim:      $500,000
   Aggregate:      $500,000

***Retroactive Date***:      Full Prior Acts

This coverage is excess of, and shall not contribute with, any other available insurance or self-insurance program carried by the **Non-Profit Organization** and/or any contribution and indemnification that the individual **Insured** lawyer is entitled to from such **Non-Profit Organization**.

The most the **Company** shall pay for **Claims** pursuant to this coverage shall be an amount equal to the lessor of:

a.   the per **Claim** Limit of Liability under the **Non-Profit Organization's** Director & Officers insurance program; or
b.   the Limit of Liability set forth in this section.

SRA 029 02 19

As a condition precedent to coverage under this section:

1. the individual Insured lawyer was serving as a director, officer or committee member of the **Non-Profit Organization** as of the inception of this Policy with the express written consent or at the request of the **Named Insured**;

2. the subject **Non-Profit Organization** had at the time of any **Claim** noticed to the **Company** a Director & Officers insurance program with Limits of Liability of at least $500,000 per claim and in the aggregate; and

3. the maximum amount of the **Named Insured's** gross revenues for the prior twelve (12) months derived directly or indirectly from **Legal Services** performed by any **Insured** for the Non-Profit Organization shall not exceed 10 (ten) percent.

In the event that a **Claim** or **Related Circumstances** gives rise to a single **Claim** or multiple **Claims** under both this section and Section **I. INSURING AGREEMENTS, A. GENERAL COVERAGE GRANT** of this Policy, then only one per **Claim** Limit of Liability and one **Retention**, as set forth in the Declarations (and not this section) shall apply to all such **Claims**.

For purposes of this section, the following DEFINITIONS apply:

i. **Non-Profit Director & Officer Wrongful Act** means an actual or alleged act, error or omission by an individual **Insured** lawyer while serving in the capacity of a director, officer or committee member of a **Non-Profit Organization**.

ii. **Non-Profit Organization** means a corporation or business organization, other than an **Insured** entity, that is exempt from taxation under Section 501(c)(3) of the U.S. Internal Revenue Code.

Any amounts paid under this coverage shall erode the Limits of Liability set forth in the Declarations.

The **Retention** set forth in this endorsement shall apply to this coverage.

All other terms and conditions remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY.**
**PLEASE READ IT CAREFULLY AND CONSULT WITH YOUR INSURANCE AGENT OR BROKER**

This Endorsement is effective and forms part of:

| | |
|---|---|
| Effective Date (as of 12:01 a.m.): | 9/15/2021 |
| Policy Number: | LPPL2110000070-03 |
| Named Insured: | Foy & Associates, P.C. |
| Additional Premium: | N/A |

## Notary Services Exclusion with Carveback

It is hereby understood and agreed that Section **XI. EXCLUSIONS, 8. NOTARY SERVICES** is deleted in its entirety and replaced with the following:

**NOTARY SERVICES**

based on or arising out of, or in any way involving, any actual or alleged certification or acknowledgment by any **Insured** in the capacity as a notary public of a signature on a document said **Insured** did not personally witness being placed on the document; however, this exclusion shall not apply to any notarization services performed during a governmental directive that prevents said **Insured** from witnessing a signature (such as during a quarantine), provided that said **Insured** adheres to any applicable remote notarization requirements.

All other terms and conditions remain unchanged.



Underwritten by: **Ascot Specialty Insurance Company**

Administrative Office: 55 West 46th Street, 26th Floor • New York, New York • 10036
1-646-356-8101 • A Stock Company

In Witness Whereof, the Company has caused this policy to be executed and attested.

Jeff A. Sipos
Corporate Secretary

Matthew Kramer
Chief Executive Officer