# EXHIBIT B



Ascot Specialty Insurance Company
55 West 46th Street, 26th Floor
New York, NY 10036
T: +1 646 356 8101
ascotgroup.com

May 25, 2022

John Foy, Esq.
Foy & Associates, PC
3343 Peachtree Road
#350
Atlanta, GA 30326
John@johnfoy.com

| | | |
|---|---|---|
| | Re: | Lawyers Professional Liability Policy |
| | Named Insured: | Foy & Associates, P.C. |
| | Policy Period: | September 15, 2021 to September 15, 2022 |
| | Policy Number: | LPPL2110000070-03 |
| | Matter: | Tammy Ouderkirk & |
| | | Winfred Mathis |
| | Ascot File No.: | CLPPL2110000070-03-010 |

Dear Mr. Foy:

We have received Law Firm GC's April 13, 2022 email notice regarding a Claim that has been or could be made against Foy & Associates, PC, which has been submitted for coverage under the referenced Lawyers Professional Liability Policy (the "Policy") issued to Foy & Associates, PC (the "Named Insured" or "Foy") by Ascot Specialty Insurance Company ("Ascot" or the "Company"). We are directing this letter to you as the authorized representative of the Insureds under the Policy for insurance matters. If you are not acting on behalf of all Insureds, we ask that you please forward a copy of this letter to the appropriate Insureds and/or their authorized representative, and forward to us their contact information. The undersigned will be handling this matter on behalf of Ascot. Our preliminary coverage analysis for the matter is summarized below.

We have now carefully reviewed the April 13, 2022 Letter, as well as the terms of the Policy and have made every effort to fairly evaluate coverage. While we are unable to make a final determination that coverage is afforded by the Policy, inasmuch as the matter is in the early stages and has not been fully investigated, we write to provide you with Ascot's current assessment of coverage subject to our ongoing

1

investigation and full reservation of rights.  Please note that this letter does not change the terms and conditions of the Policy and we refer you to Section XII for the definitions of all actual terms and conditions, which control.  The terms in bold in this letter correspond to their definitions in the Policy.

The Potential Claim

On or about September 7, 2016, Tammy Ouderkirk was a passenger involved in a motor vehicle accident being operated by Winfred Mathis. Both Ouderkirk and Mathis sustained injuries and retained the Firm. Mr. Webb was assigned the case.

Mr. Webb filed suit in state court and the case was removed to federal court on July 2, 2018. Mr. Webb filed a motion to amend the complaint to add the driver of the vehicle, Winfred Mathis, which the Court granted on July 20, 2018. On December 4, 2018, the defendants filed a motion to compel certain discovery. On January 3, 2019, before the Court entered an Order on the pending motion to compel, the Firm produced the requested discovery. On February 13, 2019, the Court entered an Order holding the motion to compel discovery was now moot. Nonetheless, on February 27, 2019, the defendants filed a motion for attorney's fees seeking attorneys' fees incurred in connection with preparing the motion to compel discovery. The Court entered a written Order requiring the plaintiffs to pay the defendants' attorneys' fees in the amount of $5,000.00 within thirty days of the Order. Mr. Webb, however, did not pay the attorneys' fees, and on May 17, 2019, the defendants filed a motion for contempt. On June 18, 2019, the Court held a hearing on the defendants' motion for contempt. During the hearing, the Court questioned Mr. Webb about his failure to provide the plaintiffs' portion of the pretrial Order. On June 24, 2019, the Court entered an Order granting the defendants' motion for contempt and dismissed the case with prejudice. It is unknown if Ms. Ouderkirk and Mr. Mathis were informed of the dismissal.  Mr. Martin had medical bills totaling approximately $166,693.49.  Ms. Ouderkirk's medical expenses total $205,080.00.

The **Insured**  has since terminated Mr. Webb.  We understand Ms. Ouderkirk has contacted the firm to discuss her potential **Claim**.  We also understand that there has been no contact from Mr. Mathis.

The Policy

Ascot issued the Policy to Foy & Associates, PC for the Policy Period of September 15, 2021 through September 15, 2022, with Limits of Liability of $5,000,000 per Claim/Aggregate Limit and a Retention of $100,000 per **Claim**. Consistent with its terms and conditions, the Policy provides claims-made and reported liability coverage to the Insureds for **Damages** and **Claim** Expenses in excess of the Retention that an **Insured** becomes legally obligated to pay as a result of a **Claim** first made during the **Policy Period** or **Extended Reporting Period** arising out of a **Wrongful Act**. As a condition precedent to coverage, the **Named Insured** agrees to pay **Claims Expenses** and **Damages** otherwise payable under the Policy up to the amount of the Retention. See Section III, Retention.

As a condition precedent to coverage, the **Wrongful Act** that is the basis of any **Claim** must have occurred:

> 1. during the **Policy Period**; or
>
> 2. on or after the **Retroactive Date** set forth in the Declarations (9/3/2003) and prior to the **Policy Period**, provided that all of the following conditions are met:

>a. the **Insured** did not notify any prior insurer of said **Wrongful Act** or **Related Circumstances**; and
>
>b. prior to the inception of the first Policy issued by the **Company**, if continuously renewed, no **Insured** has any basis (1) to believe that any **Insured** breached a professional duty; or (2) to foresee that any such **Wrongful Act** or **Related Circumstances** might reasonably be expected to be the basis of a **Claim** against any **Insured**; and
>
>c. there is no other policy or insurer that provides coverage to any **Insured** for said **Wrongful Act**.
>
>See Insuring Agreement A, General Coverage Grant.

Pursuant to Insuring Agreement B., Additional Coverages, the Policy also affords coverage for **Disciplinary & Regulatory Proceedings Coverage**, **Subpoena Coverage**, **Trial Attendance Expenses Coverage**, **Crisis Event Expense Coverage,** and **Pre-Claim Expense Assistance Coverage**.  These provisions do not appear applicable.

The Policy also requires that, as a condition precedent to coverage, the **Insured** shall give written notice to Ascot of a **Claim** made against the **Insured** during the **Policy Period** or **Extended Reporting Period**, but in no event later than sixty (60) days after the termination of the **Policy Period**.  In the event of a **Claim** against an **Insured**, the **Insured** shall immediately forward to Ascot every demand, notice, summons or other process or pleading received directly or by an **Insured's** representative.  See Section VI, Notice of Claims and Circumstances.

Ascot shall have the right and duty to defend any **Claim** against an **Insured** that is covered by this Policy, even if the allegations of the **Claim** are groundless, false or fraudulent.  Ascot's duty to defend shall terminate upon the exhaustion of the **Limits of Liability** by the payment of **Claim Expenses** and/or **Damages**.  See Section IV, Defense and Settlement.

The term **Claim** means a written demand received by any **Insured** for monetary **Damages** that alleges a **Wrongful Act**, including:

>1. the service of suit or any civil proceeding in a court of law or equity; or
>
>2. a request to toll or waive a statute of limitations; or
>
>3. the institution of arbitration, mediation or other alternative dispute resolution proceeding, other than a **Disciplinary & Regulatory Proceeding**;

A **Claim** does not include any criminal proceedings or any proceedings that seeks injunctive, declaratory, equitable or non-monetary relief and/or remedy.

**Wrongful Act** means any actual or alleged negligent act, error or omission committed by any **Insured** solely in the performance of or failure to perform **Legal Services** on behalf of the **Named Insured**, including, but not limited to, **Personal Injury**.  **Personal Injury** means in relevant part, defamation, libel, slander, abuse of process or malicious prosecution.

**Legal Services** includes services provided by a licensed lawyer in good standing and where such services are performed in the ordinary course of the **Insured's** activities as a lawyer.  We reserve rights with respect to this issue under the Policy as well.

**Claim Expenses** means reasonable fees, costs and expenses charged by an attorney approved by Ascot to defend a **Claim** brought against an **Insured** and reasonable fees costs and expenses resulting from the investigation, adjustment, defense and appeal of a **Claim**, if incurred by Ascot or by an **Insured** with the written consent of Ascot.  **Claim Expenses** shall not include salaries, loss of earnings or other remuneration of any **Insured** or salaries or expenses of any employee of the **Insured**.

**Damages** means any compensatory sum that an **Insured** becomes legally obligated to pay, including:

1. monetary judgments or settlements;

2. pre-judgment and post-judgement interest;

3. punitive or exemplary damages, to the extent insurable under the law of the most favorable applicable jurisdiction.

**Damages** shall not include:

1. criminal or civil fines, taxes, fees, sanctions or penalties, whether imposed by statute or otherwise, except for any punitive or exemplary damages noted above;

2. the return, reduction or restitution of fees (including opposing counsel fees), expenses or costs for **Legal Services**;

3. fees, expenses or costs for correcting or completing **Legal Services**;

4. any form of injunctive, declaratory, equitable or non-monetary relief and/or remedy;

5. matters deemed uninsurable by law.

**Insured** means the **Named Insured** or **Predecessor Firm** or any lawyer listed in the Application. In addition, the term **Insured** includes a lawyer with the firm.

Ascot shall have the right to investigate, negotiate or settle any **Claim** but may only settle a **Claim** with the **Insured's** consent, which shall not be unreasonably withheld.  If Ascot recommends a settlement, and the **Insured** refuses its consent, Ascot's liability will not exceed the amount that the matter could have settled for, plus **Claims Expenses** at the time.  No **Insured** shall admit or assume any liability, negotiate or settle any **Claim** or incur any **Claims Expenses** without the written consent of Ascot.  See Section IV, C, Consent to Settle.  As this matter is not yet a **Claim**, Ascot has no obligation to appoint counsel at this time; however, we have asked FMG to respond in the event the claimant reaches out the Insured to discuss the case.

Coverage Analysis

Ascot recognizes that the potential allegations that may result from this matter have not been established nor proven at this time and nothing in this letter should be construed as a suggestion that we consider any of the allegations to have any legal or factual merit.  Nevertheless, it appears that this matter may involve a **Claim** made against the **Insured** seeking **Damages** as a result of a **Wrongful Act** in the

4

performance of **Legal Services** which potentially implicates coverage under the Policy. We have also, however, identified certain potentially applicable exclusions or other provisions which may operate to limit or preclude coverage for the matter and we reserve the right to limit or deny coverage based upon the provisions discussed below. This analysis is not intended to be exhaustive or exclusive at this time. We also reserve the right to amend or revise our coverage position as further developments may warrant.

Under this Policy, it is a condition precedent to coverage set forth in the Insuring Agreement, that prior to the inception of the first Policy issued by Ascot if continuously renewed, that no **Insured** is aware of any **Wrongful Act** and/or they have no basis to believe that an **Insured** may have breached a professional duty or could foresee that a **Wrongful Act** might reasonably be expected to be the basis of a **Claim** against any **Insured** prior to inception of the initial Policy. As such, Ascot reserves its rights to the extent that an **Insured** had prior knowledge of the potential negligence or malpractice before the initial Ascot Policy incepted. Please provide all relevant communications with the client and other internal emails or communications for our review.

Also, pursuant Exclusion 1, Intentional Acts, eliminates coverage for any **Claim** based on or arising out of, or in any way involving, any dishonest, fraudulent, criminal, malicious act or omission, willful violation of any statute or regulation, or intentional wrongdoing by an **Insured**, if a final adjudication adverse to said Insured establishes such dishonest, fraudulent, criminal, malicious act or omission, willful violation or intentional wrongdoing. Exclusion 11 eliminates coverage for any **Claim** based upon or arising out of, or in any way involving, any **Insured** having gained any personal profit, remuneration or advantage to which the **Insured** was not legally entitled. We reserve the right to limit or deny coverage to the extent that these provisions are determined applicable in this matter.

We ask that the **Insured** keep the undersigned closely apprised of all developments in the matter and advise of the assertion of a **Claim** against an **Insured** or other party or any other communications from the client and that defense counsel provide a detailed liability and damages assessment as soon as possible, a budget and litigation plan, monthly invoices and frequent updates.

<u>Reservation of Rights</u>

Ascot also continues to fully and expressly reserve all rights under the Policy and at law and equity in connection with this matter. Our analysis set forth in this letter is based upon the information provided to date and is subject to change based upon the submission of further information and other developments associated with the investigation of this notice. We invite you to supplement the information provided to date and/or to respond to any statements made in this letter should you disagree with our analysis. We reserve the right to supplement our coverage position based upon the further submission of documentation in connection with this matter.

Please feel free to contact the undersigned with any questions or comments regarding the foregoing at your convenience.

                Very truly yours,

                Anne Catapano
                Financial Lines Claims
                Ascot Specialty Insurance Company

        Anne.Catapano@ascotgroup.com

cc:    Todd Cusano
        Todd.Cusano@ascotgroup.com

        Jonathan Hawkins
        jhawkins@yourlawfirmgc.com

        Danny Hughes
        dhughes@thompsonflanagan.com