IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| JANE DOE I AND JOHN DOE, | ) | |
| Individually and as Next Friends of | ) | |
| JANE DOE II, a Minor, | ) | |
| | ) | CIVIL ACTION |
| Plaintiffs, | ) | FILE NO. _____ |
| | ) | |
| v. | ) | |
| | ) | |
| FULTON COUNTY SCHOOLS; | ) | |
| FULTON ACADEMY OF SCIENCE | ) | |
| AND TECHNOLOGY; | ) | |
| FOUNDING FOURTEEN, INC; | ) | |
| DR. MIKE LOONEY, | ) | |
| In His Individual Capacity; | ) | |
| DR. CINDY LOE, In Her Individual | ) | |
| Capacity; DR. JEFF ROSE, In His | ) | |
| Individual CapacityANDREA COOPER | ) | |
| GATEWOOD, In Her Individual Capacity; | ) | |
| ANNETTE HIGGINS, In Her Individual | ) | |
| Capacity; CHRISTOPHER | ) | |
| MAHONEY, In His Individual | ) | |
| Capacity; ASHLEY STINGER, In Her | ) | |
| Individual Capacity; STAN J. | ) | |
| BEINER, In His Individual Capacity; | ) | |
| PETER EPSTEIN, In His Individual | ) | |
| Capacity; JUNE ERICKSON, In Her | ) | |
| Individual Capacity; and JOSEPH AKPAN, | ) | |
| In His Individual Capacity | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

COME NOW Plaintiffs in the above-styled action and file this Complaint, as follows:

## INTRODUCTION

1.

Robert Allen Vandel ("Vandel") was hired as a teacher at the Fulton Academy of Science and Technology ("FAST") charter school despite a documented record of sexually harassing and assaulting minor female students in his care. According to Vandel's file with the Georgia Professional Standards Commission ("GPSC"), at least seven (7) students and fourteen (14) teachers presented written complaints against Vandel for grooming, sexual harassment, and sexual assault prior to his hiring at FAST.[1]   While employed at FAST, Vandel's misconduct continued, and he was reported on at least six (6) different occasions by teachers, students, and a parent for his continuing practice of grooming, sexual harassment, and sexual assault. Vandel's ongoing misconduct at FAST was remarkable in its similarity to and continuity with his well-documented prior misconduct at other schools. Even

---

[1] In addition, the GPSC had disciplined Vandel for "misrepresentation or falsification" for failing to disclose that he had been convicted for writing bad checks, and been charged with sexual battery and simple battery. Moreover, GPSC had suspended his teacher's certification more than once (for violation of Code of Ethics of Educators Standard 2 ("Abuse of Students") for sexually harassing behavior and Standard 10 for conduct impairing his ability to function professionally and conduct detrimental to the health, welfare, discipline, and morals of his students.

though FAST and Defendants were aware of these reports, they refused to take action to appropriately investigate Vandel's behavior, separate him from minor female students, or terminate his employment.   Because of the Defendants' deliberate indifference to Vandel's misconduct, the misconduct continued.   As a direct result of Defendants' indifference and these reckless breakdowns of supervision, Vandel was able to isolate Jane Doe II, then a 13-year-old 7th grade student at FAST, groom her, sexually harass her, sexually assault her, and rape her.

2.

Defendants failed to supervise Vandel, a sexual predator of minors, and consequently Minor Jane Doe II, formerly a 7th grader at Fulton Academy of Science and Technology ("FAST") charter school, was groomed, sexually harassed, sexually assaulted, and raped during the Second Semester of the 2019-2020 school year by Vandel, a teacher employed by Fulton County Schools at FAST.

3.

Fulton County Schools ("FCS"), FCS Superintendent Mike Looney, FCS Superintendent Cindy Loe, FCS Superintendent Jeff Rose, Charter Schools Coordinator Andrea Gatewood, FAST Principal Annette Higgins, FAST Principal Christopher Mahoney, FAST Principal Ashley Stinger, FAST Principal Stan J. Beiner, Assistant Principal for FAST Middle School Peter Epstein, Founding Fourteen, Inc. ("Founding Fourteen" or "FFI"), Chair of Founding Fourteen, Inc.

and Chair of the Board of FAST Middle School Joseph Akpan, and board member of Founding Fourteen Inc. and board member of FAST Middle School June Erickson, knew or should have known that Vandel had history of inappropriate behavior and inappropriate physical contact with students and staff members both before and during his tenure at FAST, and they failed to take appropriate steps to protect students like Jane Doe II.

<p style="text-align:center">4.</p>

The sexual assault of Jane Doe II by Vandel was the direct consequence of the willful refusal to act to protect students like Jane Doe II by the school system and school, its leaders, and its employees and by the Georgia corporation Founding Fourteen, Inc. (collectively, the Defendants) as demonstrated by the following.  First, upon information and belief, sexual harassment, assault, and rape are a systemic problem in this school district.  Second, Vandel had an established history, known to Defendants, of inappropriate behavior, inappropriate physical contact, and sexual harassment and assault of students and staff at FAST.  Third, Principal Higgins hired Vandel despite the numerous complaints made against Vandel at previous institutions, other criminal, dangerous, and/or dishonest conduct by Vandel, and the clear threat that he posed to students.  Fourth, Principals Higgins, Mahoney, Stinger and Beiner allowed Vandel to continue in his employment with full access to students after being made aware of complaints of inappropriate sexual conduct

involving Vandel up to and including January 2020, in violation of clear and unambiguous policies, and state law.

5.

Plaintiffs hereby bring claims under Georgia state law and Federal law, and each and every permissible, proper, and authorized claim for damages and attorney fees, including claims under 20 U.S.C. § 1681, *et. seq.*, and 42 U.S.C. § 1983 ("Section 1983 claim"), Title IX of the Education Amendments Act of 1972 ("Title IX claim"), and state law claims against the above-named Defendants for the injuries Jane Doe II suffered as a result of Defendants' deliberate indifference leading to her sexual harassment and assault.

## **PARTIES**

6.

Jane Doe I, John Doe and Jane Doe II are pseudonyms for the real parties in interest in this action.  Plaintiffs are entitled to use these pseudonyms to prosecute this action because the matters involved in this action are of a highly sensitive and personal nature and the right of Plaintiffs, including their minor daughter, to privacy with respect to those matters outweigh any other interest that may exist.

7.

Plaintiffs Jane Doe I, Jane Doe II, and John Doe are citizens of the United States and are residents of Fulton County, Georgia.

8.

Plaintiffs Jane Doe I and John Doe are the parents and natural guardians of Jane Doe II.

9.

Plaintiffs Jane Doe I and John Doe are bringing this action in their individual capacity and on behalf of their daughter Jane Doe II.

10.

Jane Doe II resided in Fulton County, Georgia at all relevant times.

11.

Defendant Fulton County Schools ("FCS") is a subdivision of the State of Georgia having its principal place of business in Fulton County, Georgia.

12.

Defendant FCS may be served with process by personal service on Superintendent Dr. Mike Looney at 6201 Powers Ferry Road NW, Atlanta, GA 30339.

13.

Defendant Fulton Academy of Science and Technology ("FAST") is a charter school within the Fulton County School System having its principal place of business in Fulton County, Georgia.

14.

Defendant FAST can be served with process by personal service on Principal Mary Miller at 11365 Crabapple Road, Roswell, Georgia 30075.

15.

Defendant Founding Fourteen, Inc. ("Founding Fourteen" or "FFI") is a Georgia Nonprofit Corporation that contracted with Fulton County Schools to operate FAST.  FFI was formed for the purpose of creating and operating FAST as a charter school.  FFI is liable for the actions of its agents, employees, and board members through the doctrine of respondeat superior.

16.

Defendant FFI can be served through its registered agent, June Erickson, at 2265 Azalea Drive, Roswell, Georgia 30075.

17.

Defendant Dr. Mike Looney ("Looney") is the Superintendent of FCS, including FAST, and has held the position since June 2019. He is being sued in his individual capacity.  Looney was responsible for instituting reasonable policies and measures designed to address sexual harassment, abuse and inappropriate contact between adult FCS employees and students.  Looney failed to institute reasonable policies and measures designed to prevent sexual harassment, assault and inappropriate contact between adult FCS employees and students.  Looney failed to

supervise subordinates to ensure that they were following FCS policies and procedures and executing their job duties in accordance with federal and state law. Looney also failed to provide sufficient training to school officials and employees on how to handle complaints of sexual harassment, assault and inappropriate contact between adult FCS employees and students.

18.

Defendant Looney can be served via personal service at 6201 Powers Ferry Road NW, Atlanta, Georgia 30339.

19.

Defendant Dr. Cindy Loe ("Loe") was the Interim Superintendent of FCS, including FAST, from January 1, 2018 until Looney became superintendent in June, 2018. Loe is being sued in his individual capacity.  Loe was responsible for instituting reasonable policies and measures designed to address sexual harassment, abuse and inappropriate contact between adult FCS employees and students.  Loe failed to institute reasonable policies and measures designed to prevent sexual harassment, assault and inappropriate contact between adult FCS employees and students.  Loe failed to supervise subordinates to ensure that they were following FCS policies and procedures and executing their job duties in accordance with federal and state law.  Loe also failed to provide sufficient training to school officials and employees on how to handle complaints of sexual harassment, assault and

inappropriate contact between adult FCS employees and students.

20.

Defendant Loe can be served via personal service 9200 Seasons Terrace, Vero Beach, FL 32963.

21.

Defendant Dr. Jeff Rose ("Rose") was the Superintendent of FCS, including FAST, from June 2016 until December 2018. He is being sued in his individual capacity.  Rose was responsible for instituting reasonable policies and measures designed to address sexual harassment, abuse and inappropriate contact between adult FCS employees and students.  Rose failed to institute reasonable policies and measures designed to prevent sexual harassment, assault and inappropriate contact between adult FCS employees and students.  Rose failed to supervise subordinates to ensure that they were following FCS policies and procedures and executing their job duties in accordance with federal and state law.  Rose also failed to provide sufficient training to school officials and employees on how to handle complaints of sexual harassment, assault and inappropriate contact between adult FCS employees and students.

22.

Defendant Rose can be served via personal service at 605 Tatum Court, # 13C, Alpharetta, GA 30022.

23.

Defendant Andrea Cooper Gatewood ("Gatewood") was the Charter Schools Coordinator for FCS, including FAST, at all times relevant in this Complaint. She is being sued in her individual capacity.  Gatewood was responsible for instituting reasonable policies and measures designed to address sexual harassment, abuse and inappropriate contact between adult FCS employees and students.  Gatewood failed to institute reasonable policies and measures designed to prevent sexual harassment, assault and inappropriate contact between adult FCS employees and students. Gatewood failed to supervise subordinates to ensure that they were following FCS policies and procedures and executing their job duties in accordance with federal and state law.  Gatewood also failed to provide sufficient training to school officials and employees on how to handle complaints of sexual harassment, assault and inappropriate contact between adult FCS employees and students.

24.

Defendant Gatewood can be served via personal service at 6201 Powers Ferry Road NW, Atlanta, Georgia 30339.

25.

Defendant Annette Higgins ("Higgins") was principal of FAST from the school's opening in 2016 until the end of the 2017-2018 school year.  At the start of the 2017 school year Higgins hired Vandel as a science teacher at the school.

Higgins ignored, and failed to properly investigate, Vandel's teaching history, including the multiple instances and allegations of sexual harassment and violence that tracked his entire teaching career. Higgins created and maintained a culture at FAST which discouraged teachers and students from making reports or complaints to the administration. Higgins allowed Vandel to remain at FAST, unsupervised and with no restrictions around the students of FAST. As principal of FAST, Higgins had the authority to fire, suspend, reprimand, report, and issue corrective measures to protect students.

26.

Defendant Higgins may be served via personal service at 14550 Freemanville Road, Milton, GA 30004.

27.

Defendant Christopher Mahoney ("Mahoney") was principal of FAST for the fall semester of the 2018-2019 school year. Mahoney created and maintained a culture at FAST which discouraged teachers and students from making reports or complaints to the administration. Mahoney allowed Vandel to remain at FAST, unsupervised and with no restrictions around the students of FAST. As principal of FAST, Mahoney had the authority to fire, suspend, reprimand, report, and issue corrective measures to protect students.

28.

Defendant Mahoney may be served via personal service at 124 S. Fields Circle, Chapel Hill, NC 27516.

29.

Defendant Ashley Stinger ("Stinger") was principal of FAST for the spring semester of the 2018-2019 school year. Stinger created and maintained a culture at FAST which discouraged teachers and students from making reports or complaints to the administration. Stinger received multiple reports of sexual harassment by Vandel upon female students and staff at FAST and failed to start an investigation, report the allegations to the GPSC, or reprimand Vandel in any manner. Stinger allowed Vandel to remain at FAST, unsupervised and with no restrictions around the students of FAST. As principal of FAST, Stinger had the authority to fire, suspend, reprimand, report, and issue corrective measures to protect students.

30.

Defendant Stinger may be served via personal service at 4115 Three Chimneys Lane, Cumming, GA 30041.

31.

Defendant Stan Beiner ("Beiner") was principal of FAST, a position he began with the 2019-2020 school year. Beiner created and maintained a culture at FAST which discouraged teachers and students from making reports or complaints to the

administration.  Beiner received multiple reports of sexual harassment by Vandel upon female students and staff at FAST and failed to start an investigation, report the allegations to the GPSC, or reprimand Vandel in any manner.  Beiner allowed Vandel to remain at FAST, unsupervised and with no restrictions around the students of FAST. As principal of FAST, Beiner had the authority to fire, suspend, reprimand, report, and issue corrective measures to protect students.

32.

Defendant Beiner may be served via personal service at 11365 Crabapple Road, Roswell, Georgia 30075.

33.

Defendant Peter Epstein ("Epstein") was assistant principal at FAST for the middle school.  Epstein maintained a culture at FAST which discouraged teachers and students from making reports or complaints to the administration.  Epstein received multiple reports of sexual harassment by Vandel upon female students and staff at FAST and failed to start an investigation, report the allegations to the GPSC, or reprimand Vandel in any manner.  Epstein allowed Vandel to remain at FAST, unsupervised and with no restrictions around the students of FAST.

34.

Defendant Epstein may be served via personal service at 11365 Crabapple Road, Roswell, Georgia 30075.

35.

Defendant Joseph Akpan is Chair/CEO of the Board of Founding Fourteen, Inc., and Chair of the Board of FAST. Akpan failed to institute reasonable policies and measures designed to prevent sexual harassment, assault and inappropriate contact between teachers and students. Akpan failed to supervise his subordinates, including Higgins, Mahoney, Stinger, Beiner, and Epstein to ensure that they were following FAST policies and procedures and executing their job duties in accordance with federal and state law.

36.

Defendant Akpan may be served via personal service at 11365 Crabapple Rd, Roswell, Georgia 30075.

37.

Defendant June Erickson ("Erickson") is formerly the Chair/CEO of Founding Fourteen, Inc. and Chair of the board of FAST, and after leaving that role continued as a board member of both Founding Fourteen, Inc. and FAST through all relevant time periods of this complaint. Erickson received multiple reports of sexual harassment by Vandel upon female students and staff at FAST and failed to take any actions to correct or prevent the abuse. Erickson declined to allow an appropriate investigation and discipline of Vandel. Erickson failed to supervise her subordinates, including Higgins, Mahoney, Stinger, Beiner, and Epstein to ensure

14

that they were following FAST policies and procedures and executing their job duties in accordance with federal and state law.

38.

Defendant Erickson may be served via personal service at 2265 Azalea Dr., Roswell, Georgia 30075.

## JURISDICTION AND VENUE

39.

This Court has original jurisdiction over Plaintiffs' Section 1983 claims because they arise under the Constitution and laws of the United States.  28 U.S.C. § 1331; U.S. Const., Amend. 14; 28 U.S.C. § 1331; U.S. Const., Amend. 14; 42 U.S.C. § 1983.

40.

This Court has original jurisdiction over Plaintiffs' Title IX claims because they arise under the Constitution and laws of the United States. 28 U.S.C. § 1331; U.S. Const., Amend. 14; 20 U.S.C. § 1681(a).

41.

This Court has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367.

42.

Venue is proper in the Atlanta Division of the United States District Court for

the Northern District of Georgia as a substantial part of the events and omissions giving rise to the claims in this action occurred in Fulton County, Georgia, which is encompassed within the Atlanta Division of the Northern District of Georgia.

## FACTS

### Defendants had a Duty to Maintain and Foster a Safe Educational Environment for Jane Doe II and All Students at FAST

43.

Fulton County School System is an "educational program or activity receiving federal financial assistance" within the meaning of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a).

44.

FCS, by and through the Fulton County Board of Education, operated and maintained, at all relevant times, the public-school system for school-age children in Fulton County, Georgia.

45.

FFI petitioned the Fulton County Board of Education to create FAST as a charter school within the FCS public-school system in 2014.

46.

FAST was created as a charter school within the FCS public-school system in 2015.

47.

FAST has been operated by Defendant FFI since its creation.

48.

The boards of FAST and FFI include the same personnel.  For example, in the spring of 2020, Defendant Joseph Akpan was Chair of both the board of FAST and the board of FFI and Defendant Erickson was a member of both the board of FAST and the board of FFI.

49.

FCS and FAST received, at all relevant times, federal funds to ensure that all students have equal educational opportunities and access to education.

50.

During the 2019-2020 school year, Jane Doe II was a student at FAST.

51.

In the Spring Semester of the 2019-2020 school year, Jane Doe II was 13 years old.

52.

Under Defendants' watch, Vandel engaged in criminal, sexual predatory acts against Jane Doe II and other students at FAST.  The Defendants failed to protect Jane Doe II and the other students at FAST.

53.

Defendants Looney, Loe, Rose, Gatewood, Higgins, Mahoney, Stinger, Beiner, and Epstein were, at all relevant times, "mandatory reporters" under Title IX, FCS policies, and Georgia law.

## Vandel's History of Sexual Violence and Harassment of Female Students at Previous Schools Was Known by FCS

54.

In 2003, while employed as a teacher at Midland Middle School in Columbus, Georgia, multiple students, teachers, and parents reported inappropriate sexual behavior by Vandel to another teacher at the school.  Multiple students accused Vandel of inappropriate contact by touching their shoulders, thighs, buttocks, and hitting them with a ruler.  Additionally, Vandel was accused of inappropriate communications by using pet names for, and making sexual comments to, female students.

55.

Vandel's pattern of grooming, sexual harassment, and sexual assault at Midland Middle School included, but was not limited to, the following:

a.  Grooming and creating relationships of intimacy and trust with minor female students (including using candy, favoritism, isolation, and inappropriately sexual and familiar interactions to groom young girls).

b.  Giving certain students flirtatious, sexually suggestive, and inappropriate

nicknames (such as "cutie pie," "flirt," "care bear," and "perv").

c.  Making overtly sexually suggestive and harassing comments to students and teachers.

d.  Touching minor female students inappropriately and sexually, including massaging their shoulders, touching their inner thighs, and touching their buttocks.

e.  Suggesting minor female students call him outside of school hours.

f.  Inviting minor female students to his home to pick up personal gifts, candy, etc., when his wife was not home.

56.

The GPSC investigated the allegations made against Vandel, and interviewed multiple students and teachers regarding their experiences with Vandel.

57.

Fourteen (14) teachers expressed concerns regarding Vandel's behavior at Midland Middle School and his interactions with female students.  These concerns included:

- Teacher 1 reported an interaction between a student and Vandel where Vandel had grabbed a student's thigh, and made sexually suggestive remarks.

- Teacher 2 reported that Vandal gave a student the nickname "Cutie Pie"

and gave her "back rubs."  Teacher 2 confirmed that Vandel gave or attempted to give similar "back rubs" to "a lot of the female staff members."

- Teacher 3 reported witnessing repeated problematic interactions between Vandel and female students, including preferential treatment, wrapping his arms around female students' waists, and making sexually suggestive remarks regarding female students.

- Teacher 4 reported that Vandel made them feel very uncomfortable by the remarks he made to female students.  The teacher also reported that she received unwanted back rubs from Vandel.  The teacher reported that many other female teachers reported similar levels of discomfort with Vandel.

- Teacher 5 reported that a female student complained that Vandel had rubbed the student's back and made her uncomfortable.

- Teacher 6 reported that she witnessed Vandel "hit a student on the behind with a ruler."

- Teacher 7 complained of "extensive sexual harassment" by Vandel.

- Teacher 8, Teacher 9, Teacher 10 and Teacher 11 reported Vandel for making them feel uncomfortable as a result of sexually inappropriate conduct, for isolating female students for extended periods of time, for

having inappropriate physical contact with female students, and for making sexually suggestive comments to students.

- Teacher 12 and Teacher 13 complained of sexually inappropriate conduct by Vandel, and Teacher 13 reported that students came to her with similar complaints about Vandel's sexually inappropriate behavior.

- Teacher 14 reported that a student told her that Vandel treated her differently than other female students, and that he would inappropriately get very physically close to her and make her feel uncomfortable.

<div align="center">58.</div>

Seven (7) students at Midland Middle School reported issues with Vandel. Their reports included, but were not limited to, the following:

- Student 1 reported that, "When [Vandel] talks to me he puts his hand on my behind," that Vandel showed her preferential treatment including that he invited her to his house to pick up a Christmas present, that "[o]ne time when I was talking to [Vandel] he put his hand on my inner thigh and rubbed my thigh up and down."

- Student 2 reported that, "When he talks to me he puts his hand on my behind and makes me mad," and "one time when me and [my friend

<div align="center">21</div>

were] talking to him, he put his hand on our inner thigh and rubbed my thigh up and down," and that Vandel showed her preferential treatment including inviting her to his house to pick up a Christmas present.

- Student 3 reported that "Mr. Vandel has touched my butt when I ask questions he will put his hand on my butt and still talk to me while holding my butt," and "[Another female student] was talking to him about her grade and he was sitting in his chair and [she] walked right up to him and he like grabbed her by her waist and pulled her to him and then he held her butt."

- Student 4 reported, "he touched my butt once," and "when I ask questions he comes over me and rubs my shoulder which makes me uncomfortable."

- Student 5 reported, "Before Christmas Mr. Vandel came by and hit me on the bottom with a ruler and my friend [and] we came back from Christmas break he smacked me on the bottom with a ruler again."

- Student 6 reported, that Mr. Vandel made explicit sexually suggestive comments to her while describing two gummy bears stuck together in a head-to-toe position, that "another time he walked around his desk and grabbed my thigh," "another day he walked behind me and grabbed me around my waist," and that "sometimes he would wink and stare at

me for a long time, and even this made me feel very, very weird, and uneasy."

- Student 7 reported that Vandel made repeated inappropriate comments towards her, including calling her 'cutie' on a daily basis, and suggesting that he would date her if he was 50 years younger.

59.

Vandel was subsequently arrested and charged with four counts of sexual battery and one count of simple battery against students.

60.

Vandel resigned from Midland Middle School in the wake of his arrest and the reports of sexual harassment and assault made against him.

61.

In 2006, the GPSC released the findings of their investigation, finding the student and teacher witnesses to be credible, and finding that Vandel's defenses were not credible.

62.

An Administrative Law Judge of the Office of State Administrative Hearings determined that Vandel "committed clear violations" of the Code of Ethics for Educators Standard 2, "Abuse of Students" by "failing to maintain a professional relationship with his students and by repeatedly engaging in sexually harassing

23

behavior through his words and actions," and Standard 10, "Professional Conduct," "by engaging in conduct that seriously impaired his ability to function professionally in his employment position" and finding that Vandel's conduct "was detrimental to the health, welfare, discipline and morals of his students."  Consequently, Vandel's teaching certificate was suspended for eighteen (18) months.

<div align="center">63.</div>

After a subsequent review of the case, the GPSC reviewed the initial decision of suspension for eighteen (18) months and increased the suspension to two (2) years.

<div align="center">64.</div>

These charges, investigations, orders, and suspensions were available to the Defendants, and listed on Vandel's teaching certificate record.

<div align="center">65.</div>

Additionally in 2006, Vandel was also investigated and reprimanded by the GPSC for "misrepresentation or falsification" by failing to disclose and report to the GPSC that he had written bad checks and been convicted of doing so, and that he had been charged with sexual battery and simple battery.

<div align="center">66.</div>

In 2019, Vandel's teacher's Certification was again suspended by GPSC for showing up at school after drinking and smelling heavily of alcohol.  Several female

teachers reported Vandel for this incident, which Vandel admitted.

<div align="center">67.</div>

FCS and FAST policies require fingerprinting all staff, background checks, and a pay-for-service investigation search engine for all their hires.  Defendants knew and/or should have known of Vandel's history of misconduct and discipline.

<div align="center">68.</div>

Despite Vandel's documented history of grooming, sexually harassing and sexually assaulting middle school students and female teachers, prior criminal charges for crimes of dishonesty (writing bad checks, for which he was convicted and which he failed to report to GPSC as required), prior discipline for showing up at school under the influence of alcohol, findings of violations of the Code of Ethics, and multiple teaching Certificate suspensions, Defendants FCS, FAST, FFI, and Higgins hired Vandel to work as a teacher at FAST.

**<div align="center">Vandel's Predatory Behavior Towards Female Students and Staff Continued at FAST and was Known by Teachers, Administrators, and Members of the Founding Fourteen Board</div>**

<div align="center">69.</div>

Before Vandel's attack on Jane Doe II, FAST school officials and board members, and FFI board members had actual knowledge of multiple prior incidents involving Vandel and female students and staff at FAST.

70.

Vandel's pattern of grooming, sexual harassment, and sexual assault at FAST was almost identical to his behavior at Midland that was investigated by the GPSC and was contained within public records, including his teaching records.  Vandel's continued pattern of abuse and grooming at FAST included the following:

a.  Grooming and creating relationships of intimacy and trust with minor female students (including using candy, favoritism, isolation, and inappropriately sexual and familiar interactions to groom young girls).

b.  Giving certain students flirtatious, sexually suggestive, and inappropriate nicknames.

c.  Making overtly sexually suggestive and harassing comments to students and teachers.

d.  Touching minor female students inappropriately and sexually including massaging their shoulders, touching their inner thighs, and touching their buttocks.

e.  Suggesting minor female students call him outside of school hours.

f.  Inviting minor female students to his home to pick up personal gifts, candy, etc., when his wife was not home.

71.

It was widely known among the teachers, administrators and staff working at

FAST, that Vandel would routinely invite individual and small groups of female students to his room during lunch breaks.  This was prohibited by school policy.

72.

Multiple female students at FAST were subjected to grooming and sexual harassment by Vandel, through Vandel showing favoritism, providing female students with additional candy, making up nicknames for female students, and through touching female students' shoulders, breasts, buttocks, and thighs.

73.

On March 24, 2019 Teacher 15, a teacher at FAST, emailed Defendant Stinger and two members of the FFI board/FAST governing board, including Defendant Erickson, and reported:

a. "They [the Principal and administration] were aware of this man's behavior towards children and other teachers before. . . a long, long time ago."

b. Was deeply concerned that Vandel was creating situations to be alone with girls.  She pulled her own daughter out of school, and Vandel was one of the main reasons why.

c. Reported that Vandel would make sexualized comments about younger teachers and how they looked in their tight jeans, etc.

d. Vandel was sexually suggestive and inappropriate with several young female students.

e. "I have to say something."

f. "When I went to Principal Stinger, she got mad at me.  She said she couldn't believe I'd say something like that about Vandel."  She [Stinger] shamed the teacher because her daughter has special needs and is in the hospital, and Vandel took her a Thanksgiving meal, and despite that she reported him for sexually harassing female students.  The teacher said she was telling Principal Stinger so she "could keep an eye on him".  Principal Stinger replied that she was disgusted with her.

g. Apparently, Principal Stinger told Vandel about the teacher's report about him.

h. According to the teacher, it kept happening.  She would see Vandel talking to and interacting with young female students in totally inappropriate ways.

i. In another incident, this teacher encountered a female student who said that she would kill people.  She told the girl's mother because she is a certified teacher and worried she would get in trouble if she did not report her.  She has to take such things seriously.  Principal Stinger and the administration became upset with her because she told the mother.  They called the teacher

and told her not to come back.  The teacher wanted to say goodbye.
Principal Stinger said no, she could not, and in fact she owed the school
money because she broke her contract.  This incident further reflected
FAST's unofficial custom or policy regarding reports of misconduct, and
meeting those reports with disbelief, ridicule, and punishment.

j.  This teacher emailed the only school Board member with an educational
background about her concerns, who the teacher was, communicated her
awareness of the law and her obligation to report, and copied Principal
Stinger and another Board member.  Months went by.  Ultimately,
Principal Mahoney called her and admitted that he had maintained a record
of Vandel doing things to students.

k.  Principal Mahoney admitted to this teacher that Vandel "should never have
been hired."  Principal Mahoney admitted that he knew about Vandel
previously losing his certification over having inappropriate relations with
students.  Yet, Mahoney did not terminate Vandel as a teacher, even after
virtually identical complaints about his grooming, sexual harassment, and
sexual assault continued to come in at FAST.

l.  This teacher has wondered, if they knew about Vandel's prior incidents,
why didn't the administration believe her complaints regarding strikingly
similar misconduct?  She explained that, even if they doubt her, there

should have been a thorough, formal investigation.

m. According to this teacher, the administration said she was "being dramatic" for bringing these concerns to light. They were very tough on her from that point forward.

n. She reported that the administration told her that her perspective was her fault. They said she came from a good school district, and she did not understand the challenges of being a start-up Charter School. She replied that she thought a problem was not knowing how to do carpool, not allowing a child to be at risk.

o. Vandel treated one female student who was overweight very badly, telling her to shut up, telling her she was stupid, and mocking her weight. The teacher thought it was overly familiar and inappropriate, but Asst. Principal Epstein thought it was funny. This reflects the unofficial custom developing around Vandel at FAST. Another teacher was reported when she told a student to shut up, and she was written up. But Vandel received no similar rebuke for almost identical behavior.

p. Vandel told this teacher she looked just as good as an attractive young kindergarten teacher when this teacher wore her tight jeans. This made her very uncomfortable, and she started wearing long shirts because of Vandel's comments about her and others' bottoms looking good.

q. She was concerned about Vandel's flirting and sexualized interactions with two female students in particular.  He seemed to flirt with young fit girls with long hair.  He seemed to have a type.

r. Rarely has this teacher had these kinds of feelings and concerns about someone's behavior.  She was alarmed.  She reported it.  And, according to this teacher, "then everyone saw what happened to me."  "There's no way anyone would go and say anything about Robert [Vandel] after they saw what happened to me."

s. This teacher reported there was a custom and practice of not following the ethics training because they viewed a Charter School as a start-up environment in which such things were not necessary.  She had to explain what a mandatory reporter was.

t. She reported that the administration "would get so, so angry with anyone who tried to improve" on this situation."  "It was one of those situations where it was acceptable behavior to not be doing the right thing."

u. Another staff member told this teacher that the administration had asked her to keep an eye on Vandel because they were aware of the accusations against him.  This reflected the failure of the school to follow actual sexual harassment policy in favor of unofficial custom and policy of not conducting any formal investigation, not conducting any formal review,

avoiding creating written records, and being deliberately indifferent to the very real risks posed to young female students.

v.  This teacher believed that Fulton County hated any bad press brought on by teacher conduct, and tried to avoid creating records allowing it. This created a "breeding ground" for bad things to happen because human resources would come after reporters. "I've seen this happen over and over again."

w.  Another teacher asked her if she thought "I'll be ok if I do" report Vandel. Teacher 15 said she must take her commitment to the kids more seriously than the worry about what human resources will do.

x.  Regarding younger teachers making complaints, "They were young and scared and they didn't want to do anything."

y.  Vandel would give girls candy and ice cream regularly. This was against official school policy but unofficial school custom and policy knowingly allowed Vandel to do this regularly anyway.

74.

Teacher 16, a teacher at FAST, also reported Vandel for similar behavior:

a.  Teacher 16 reported Vandel to the administration, after having conversations with several young female students who expressed their concerns about sexualized interactions. For example, Vandel went behind

these girls and touched their hair and tucked it behind the ear.  He would compliment and insult the girls in very personal, age-inappropriate ways to manipulate them.

b.  Epstein would not respond and formally address the complaint.

c.  Teacher 16 made at least four (4) separate reports to the administration about her concerns about his interactions with young female students (Student 8 and Student 9) and a young female teacher (Teacher 17).  She was worried that she would get in trouble for her reporting.

d.  Two (2) of Teacher 16's reports were about what she described as "sexual misconduct."

e.  Teacher 16 reported that Teacher 17 sort her out and told her that Vandel would touch and rub her shoulders and neck a lot in a way that felt very inappropriate.  She asked him to stop.  He never stopped.  When he talked to her, he would lean in too close and violated the younger teacher's space in an obvious and sexualized way.

f.  Teacher 16 took these concerns to Principal Stinger.  Principal Stinger refused to believe this actually happened.  Stinger said she cannot and will not do anything about it.  There would be no investigation.

g.  After saying inappropriate things to this teacher, Vandel stopped her in the hallway and told Teacher 16, "I know you won't tell anyone sweetie."

h.  Teacher 16 also reported Vandel for animal abuse.

75.

Another FAST teacher, Teacher 18, reported that Vandel would let female students in his room with no other adults present during recess.  Teacher 18 reported this to the FAST Principal and the FAST Principal reacted as though Teacher 18 was in the wrong.

76.

An additional teacher, Teacher 19, reported to Principal Stinger that a co-worker, Teacher 20, became uncomfortable when Vandel called Teacher 20 "cutie."

77.

In late November or early December of 2019, two male students (Student 10 and Student 11) approached Teacher 21, a teacher at FAST, on three separate occasions to report inappropriate sexual behavior by Vandel to another female student, Student 12.

78.

Teacher 21 reached out to Student 12 and confirmed the allegations the male students made regarding Vandel's inappropriate conduct to Student 12.

79.

Vandel massaged Student 12's shoulders, had pet names for Student 12, put his hand on Student 12's back for extended periods of time, and smacked Student

12's butt with a ruler.  Student 12 described Vandal as a "touchy old man."

80.

Teacher 21 emailed Principal Beiner regarding the issues raised by Students 10, 11, and 12 and requested a meeting with Principal Beiner to discuss the complaints and issues regarding Vandel.

81.

Teacher 21 met with Principal Beiner to inform him of the sexual harassment committed by Vandel.

82.

Following this meeting, Beiner requested a meeting with Teacher 21 and Student 12, to hear directly from the student as to what she was experiencing.

83.

On or about December 2, 2019, Beiner and Epstein met with Teacher 21 and Student 12, without the knowledge or consent of Student 12's parents, to discuss Vandel's sexual harassment of Student 12.  During the meeting Beiner claimed to believe Student 12 but also stated "Mr. Vandel wouldn't do that."

84.

In an attempt to support Student 12 and compel Beiner and Epstein to believe that Vandel was a problem, Teacher 21 shared her own story of being sexually harassed by Vandel.  She told Beiner and Epstein that when she was bending over

the copier to fix it, Vandel told her "if she kept bending over like that he was going to have to do something about it."  This comment was made in front of students and caused Teacher 21 considerable embarrassment.

<p style="text-align:center">85.</p>

Beiner claimed he would take steps, but he did not.  He did no investigation, and nothing was done.  The behavior continued.

<p style="text-align:center">86.</p>

Following the meetings with Beiner, Teacher 21 and Student 12 did not believe that Beiner had taken the report seriously, or that Vandel would receive anything more than a slap on the wrist.

<p style="text-align:center">87.</p>

Teacher 21 felt that Beiner and Epstein intended to sweep the allegations against Vandel under the rug.

<p style="text-align:center">88.</p>

Teacher 21 also knew that a female student, Student 13, had told Teacher 21 than Vandel had been messaging her late at night.

<p style="text-align:center">89.</p>

After finding out about Vandel's harassment of Student 12, and learning of, Beiner and Epstein's interview of Student 12, Student 12's parents withdrew her from FAST.

90.

On January 17, 2020 the parents of Student 12 sent an email to the FAST Governing Board/FFI Board regarding their daughter and the reasons that they were withdrawing her from the school.  They stated that they were dissatisfied with FAST's response to the allegations of sexual misconduct, and that "the two pieces of information that [Student 12] shared with us . . . are indeed things that [Vandel] should not have done, and did, in fact make [Student 12] uncomfortable."

91.

 In response, the chair of the FAST/FFI boards, Defendant Akpan, confirmed that there would be an investigation, and that he would follow up at the conclusion of the investigation.

92.

The family of Student 12 never received any follow-up regarding the conclusion of any investigation.  Upon information and belief, no investigation was conducted.

93.

Defendants FCS, FAST, FFI, Beiner, Epstein, Akpan, and Erickson failed to adequately investigate the allegations against Vandel, and failed to institute reasonable measures to prevent Vandel from grooming, sexually harassing, sexually assaulting or raping other female students in the future.  Consequently, Defendants

FCS, FAST, FFI, Beiner, Epstein, Akpan and Erickson put Jane Doe II and other students at substantial risk of being victims of future assaults and harassment by Vandel.

<center>94.</center>

Prior to the attack on Jane Doe II by Vandel, FAST engaged in continued and unofficial customs, policies, and practices of deliberate indifference to the risk of harassment and assault of young female students. These unofficial customs, policies, and practices included:

a. Placing Vandel in a room separated from the remainder of the teaching and administrative staff, which allowed him to engage in the exact same inappropriate behavior towards young female students at FAST that he did at Midland Middle School;

b. Ignoring an official policy that prohibited teachers from giving candy or ice cream to students, and allowing Vandel to openly and brazenly give students candy and ice cream to facilitate his grooming efforts;

c. Ignoring an official policy that prohibited teachers from using the intruder blinds in their classrooms unless there was an active shooter drill and instead allowing teachers to use the blinds for privacy, which permitted Vandel to use the blinds when isolating, grooming and ultimately raping Jane Doe II;

<center>38</center>

d. Ignoring official policies to create written reports for reports of sexual harassment, abuse and molestation, and instead encouraging only verbal reports to avoid creating documented actionable incidents that would reflect badly on the school;

e. Deleting emails, messages, and other compromising information regarding complaints at the school;

f. Sweeping serious concerns and reports under the rug to avoid bad publicity;

g. Refusing to follow the Fulton County sexual harassment policies and training, and the State and Federal requirements of mandatory reporting of sexual harassment and assault, including harassment and assault of students and teachers by Vandel;

h. Refusing to report accusations of Vandel's inappropriate behavior with young female students or sexual misconduct by Vandel; and

i. Downplaying and victim-blaming credible concerns about sexual harassment and assault by Vandel.

95.

Prior to the attack on Jane Doe II, despite having actual knowledge of the reports regarding Vandel's inappropriate student contact at FAST, Defendants FCS, FAST, FFI, Looney, Loe, Rose, Gatewood, Stinger, Beiner, Epstein, Akpan and

Erickson failed to:

    a.  Investigate the multiple complaints regarding Vandel's inappropriate contact and harassment of students;

    b.  Adequately supervise Vandel to prevent him from physically and sexually harassing other students, including victims like Jane Doe II;

    c.  Conduct a formal or informal disciplinary hearing for Vandel;

    d.  Remove Vandel from his position at FAST;

    e.  Institute reasonable corrective measures aimed at ferreting out the possibility of employees like Vandel harassing and assaulting students like Jane Doe II again;

    f.  Warn school employees and students of Vandel's inappropriate behavior;

    g.  Protect Jane Doe II and other students from physical abuse and sexual harassment;

    h.  Adequately train school employees on how to handle complaints of inappropriate contact;

    i.  Record incidents involving physical and sexual harassment against Jane Doe II and others;

    j.  Maintain records of physical and sexual harassment complaints and student disciplinary records; and

k.  Enforce FCS rules, policies and regulations.

96.

Prior to the sexual assault and rape of Jane Doe II, Defendants FCS, FAST, FFI, Higgins, Mahoney, Stinger, Beiner, Epstein, Akpan, and Erickson had actual knowledge of Vandel's history of inappropriate contact and harassment of students.

97.

Defendants FCS, FAST, FFI, Higgins, Mahoney, Stinger, Beiner, Epstein, Akpan, and Erickson's actual knowledge of the threat presented by Vandel posed a substantial risk that Vandel would commit future acts of sexual harassment and abuse that were severe, pervasive and objectively offensive.

98.

Despite Defendants receiving multiple reports of inappropriate conduct and harassment on the part of Vandel, no Defendant decided to intervene appropriately.

99.

Defendants willfully created an environment at FAST where teachers refused to come forward and make formal reports regarding misconduct.

100.

Consistent with FCS, FAST and FFI's policy, practice and unofficial custom of failing to appropriately discipline employees, Defendants failed to take appropriate disciplinary action against Vandel as a result of any of the reports of

harassment and inappropriate contact with students.

<div align="center">101.</div>

FCS, FAST and FFI were willfully and deliberately indifferent to Vandel's history of inappropriate contact with students at FAST and other schools and the threat posed by Vandel to the students of FAST in at least one of the following ways:

a.  Failing to appropriately discipline employees, including Vandel;

b.  Failing to investigate complaints raised by students and employees regarding sexual harassment, physical abuse, or inappropriate contact by Vandel;

c.  Failing to protect students like Jane Doe II from sexual harassment, physical abuse or inappropriate contact;

d.  Failing to adequately supervise employees like Vandel that posed a substantial risk of harm to students at FAST;

e.  Failing to adequately supervise and monitor students like Jane Doe II;

f.  Failing to know of the whereabouts of all employees and students;

g.  Failing to monitor and employ effective key control measures;

h.  Failing to suspend, discipline, remove, or report employees like Vandel who had a history of inappropriate contact with students;

i.  Failing to properly notify parents/legal guardians whenever an employee engages in inappropriate conduct with a student;

j.  Failing to institute reasonable corrective measures aimed at preventing known aggressors and harassers like Vandel from assaulting students;

k.  Failing to warn students, parents/legal guardians, and other employees of employees like Vandel that have a history of inappropriate contact with students;

l.  Failing to adequately train school employees on how to handle complaints of sexual harassment, physical abuse or inappropriate contact;

m.  Failing to make a record of incidents involving harassment, abuse or inappropriate contact involving employees like Vandel; and

n.  Failing to remove violent and dangerous employees from their positions.

102.

Defendant's response or lack thereof was clearly unreasonable in light of the known circumstances.

**Vandel Grooms, Harasses, and Rapes Jane Doe II**

103.

Vandel targeted Jane Doe II during the course of her time at FAST.  Vandel groomed Jane Doe II by showing her favoritism in class and providing her with candy. Jane Doe II was repeatedly invited to spend lunch breaks in Vandel's room,

along with a small selection of other female students, many of whom were also subjected to similar sexual harassment.  Vandel subjected Jane Doe II to sexual harassment and inappropriate touching, with Vandel rubbing her shoulders and groping her breasts.

<div align="center">104.</div>

In the early months of 2020, Vandel created an opportunity to drastically escalate the sexual violence towards Jane Doe II by using his position of authority at FAST to coerce Jane Doe II to come to his classroom by sending another student to get Jane Doe II while she was lined up in the hall for recess.

<div align="center">105.</div>

Once Vandel isolated Jane Doe II in his classroom, with the blinds down, Vandel locked the door to the room, and further bolted the door (with a device designed for use only during intruder drills) to ensure that nobody could enter the classroom.

<div align="center">106.</div>

Vandel removed his pants, exposing his penis to Jane Doe II, and then manhandled her on a table.  Vandel pulled down her skort.  Jane Doe II squirmed, resisted, and told Vandel to stop.

<div align="center">107.</div>

Vandel forcibly raped Jane Doe II by inserting his penis in Jane Doe II's

vagina, causing her to bleed.

108.

After completing the rape, Vandel took a towel from his desk, cleaned himself and then used it to clean the blood off of Jane Doe II and kissed her on the forehead.

109.

Throughout the rape, Vandel told Jane Doe II that she was a "good girl."

110.

After cleaning up, Vandel gave Jane Doe II some ice cream, and told her that he wouldn't tell anyone what Jane Doe II had done.

111.

Vandel admitted to and pleaded guilty to the sexual assault, rape, and imprisonment of Jane Doe II.  Vandel was criminally convicted of these crimes.

## Robert Vandel Leaves FAST and Voluntarily Surrenders his Teaching License

112.

After moving to online educational instruction in the face of the Covid-19 Pandemic, IT Director for FAST, Jenny Steele, found multiple inappropriate messages that Vandel initiated with female students using the new virtual technology.

113.

Ms. Steele immediately alerted Principal Beiner to the messages.

114.

On June 9, 2020 Vandel left FAST.

115.

The messages Vandel sent students using the virtual technology were of the same or similar nature to the verbal and physical inappropriate comments and conduct he had directed towards students at at least one school prior to FAST, and towards students while at FAST.

116.

On October 8, 2020, Vandel voluntarily surrendered his Georgia teaching certification.

117.

Vandel became a teacher at another school, Lyndon Academy.  Defendants did nothing to inform or warn Lyndon Academy of Vandel's history of sexually inappropriate, harassing, and assaulting conduct towards students and teachers.

**Defendants Failed Jane Doe II in Their Response to the Arrest of Robert Vandel for Raping and Sexually Assaulting Jane Doe II**

118.

On August 31, 2021, Jane Doe II reported Vandel's rape and sexual assault to her mother, Jane Doe.

119.

On August 31, 2021, Jane Doe II's parents, John Doe and Jane Doe, reported

Vandel's rape and sexual assault to the police.

<div align="center">120.</div>

On September 1, 2021, police requested a forensic interview, and Jane Doe II gave that interview on September 2, 2021.

<div align="center">121.</div>

On the afternoon of September 2, 2021, Robert Vandel was arrested at his new teaching position at Lyndon Academy.

<div align="center">122.</div>

On September 3, 2021, Beiner sent an email to all parents of FAST, and posted the email online, regarding the arrest of Vandel.  In the email, Beiner implies that the child (Jane Doe II) was not telling the truth about the encounter with Vandel ("We must remember there is a child to be protected and a man's life that's balancing on the truth being told.").

### Jane Doe II Has Suffered and Continues to Suffer as a Result of Defendants' Deliberate Indifference Resulting in Her Sexual Harassment, Sexual Assault, and Rape

<div align="center">123.</div>

The sexual violence that Jane Doe II was subjected to in the early months of 2020 and subsequent harassment barred her from accessing an educational opportunity and benefit.  Jane Doe II lost all confidence in her safety at FAST. As a result of this horrific attack and instances of harassment, Jane Doe II requires

professional counseling, suffers from depression, suffers from Post-Traumatic Stress Disorder, and has lost her self-confidence and sense of identity.

124.

The rape and sexual violence that Jane Doe II was subjected to in the early months of 2020 created an intimidating, hostile, and offensive educational environment that seriously affected the psychological well-being of Jane Doe II.

125.

On March 24, 2021, Jane Doe II was admitted into the Ridgeview Institute following an attempt to commit suicide.

126.

Later in the Spring of 2021, while taking a test in the same classroom where Vandel raped and sexually assaulted Jane Doe II, Jane Doe II suffered severe emotional distress, and as a result went to the bathroom and engaged in self-harm by cutting herself.

127.

As a direct and proximate result of the Defendants' wrongful conduct, Jane Doe II suffered serious injuries including physical injuries, extreme indignities and humiliation, severe emotional distress, mental anguish, loss of liberty, and a complete violation of that what she considers most sacred and personal.

128.

Jane Doe II has received treatment from medical doctors and other health care professionals for the serious physical, emotional, and mental injuries she sustained and will continue to require such treatment in the future.  Jane Doe I and John Doe have incurred and will continue to incur medical expenses and consequential damages in connection with the violations Jane Doe II has suffered as a direct and proximate result of the Defendants' wrongful conduct.

129.

The Defendants are responsible for the injuries Jane Doe II has suffered and will suffer in the future as a result of the incident at issue as well as the medical expenses and other consequential damages Jane Doe I and John Doe have incurred and will incur in the future as a result of Jane Doe II's injuries and Defendants' wrongful conduct.

## CAUSES OF ACTION

### Count I: Negligent Hiring
### (Defendants FFI, Higgins, Erickson)

130.

Plaintiffs adopt and incorporate herein by reference each and every allegation made in paragraphs 1 – 129 above as if fully set forth herein.

131.

FFI, as a Georgia Registered Nonprofit corporation, is subject to state law

claims.

<div align="center">132.</div>

Defendant Erickson is not a state employee or agent and is not entitled to immunity.

<div align="center">133.</div>

Pursuant to the Hidden Predator Act, O.C.G.A. § 9-3-33.1, the State has waived sovereign immunity for childhood sexual abuse cases brought against government entities and employees.

<div align="center">134.</div>

Vandel submitted an application for employment as a teacher at FAST on June 20, 2017.

<div align="center">135.</div>

Vandel was hired as a teacher at FAST prior to the start of the 2017-2018 school year.

<div align="center">136.</div>

Defendants FFI, Higgins, Erickson, and the other FFI Board Members had a duty to exercise ordinary care and diligence and not to hire a person that they knew or should know poses a risk of harm.

<div align="center">137.</div>

Defendants FFI, Higgins, and Erickson, and the other FFI Board Members

<div align="center">50</div>

knew or should have known that Vandel was not suited for employment as a teacher and posed a risk to the female students at FAST.

<div align="center">138.</div>

Despite knowing that Vandel posed a risk to female students, FFI, Higgins, and Erickson hired Vandel to work at FAST.

<div align="center">139.</div>

Defendants FFI, Higgins, and Erickson, and the other FFI Board Members' hiring of Vandel despite knowing Vandel posed a risk to female students enabled Vandel to sexually harass, sexually assault, and rape Jane Doe II, causing her to endure extreme mental and physical injuries and damages.

<div align="center">

**Count II: Negligent Hiring**
**(Defendants FAST and Higgins)**

</div>

<div align="center">140.</div>

Plaintiffs adopt and incorporate herein by reference each and every allegation made in paragraphs 1 – 129 above as if fully set forth herein.

<div align="center">141.</div>

In addition to, or in the alternative to, Count I, Defendants FAST and Higgins, were negligent in the ways set forth here, in Count II.

<div align="center">142.</div>

Pursuant to the Hidden Predator Act, O.C.G.A. § 9-3-33.1, the State has waived sovereign immunity for childhood sexual abuse cases brought against

government entities and employees.

143.

Vandel submitted an application for employment as a teacher at FAST on June 20, 2017.

144.

Vandel was hired as a teacher at FAST prior to the start of the 2017-2018 school year.

145.

Defendants FAST and Higgins had a duty to exercise ordinary care and diligence and not to hire a person that they knew or should know poses a risk of harm.

146.

Defendants FAST and Higgins knew or should have known that Vandel was not suited for employment as a teacher and posed a risk to the female students at FAST.

147.

Despite knowing that Vandel posed a risk to female students, FAST and Higgins hired Vandel to work at FAST.

148.

Defendants FAST, and Higgins hiring of Vandel despite knowing Vandel

posed a risk to female students enabled Vandel to sexually harass, sexually assault, and rape Jane Doe II, causing her to endure extreme mental and physical injuries and damages.

### Count III: Negligent Supervision, Retention, Undertaking
### (Defendants FFI, Higgins, Mahoney, Stinger, Beiner, Epstein, Akpan, and Erickson)

149.

Plaintiffs adopt and incorporate herein by reference each and every allegation made in paragraphs 1 – 129 above as if fully set forth herein.

150.

FFI, as a Georgia Registered Nonprofit corporation, is subject to state law claims.

151.

Defendants Akpan and Erickson are not state employees or agents and are not entitled to immunity.

152.

Pursuant to the Hidden Predator Act, O.C.G.A. § 9-3-33.1, the State has waived sovereign immunity for childhood sexual abuse cases brought against government entities and employees.

153.

Defendants FFI, Higgins, Mahoney, Stinger, Beiner, Epstein, Akpan, and

Erickson undertook the duty of providing educational services and protection for FAST students, including Jane Doe II.

154.

Defendants FFI, Higgins, Mahoney, Stinger, Beiner, Epstein, Akpan, and Erickson owed a duty of care to the students of FAST, including Jane Doe II, to ensure that they properly supervised all teachers at FAST, to make sure that the teachers of FAST followed all policies and procedures, and to appropriately respond to improper conduct by teachers of FAST towards students at FAST.

155.

Between the start of the 2017-2018 school year and his termination on June 9, 2020, Vandel worked as a teacher at FAST under the supervision of Defendants FFI, Higgins, Mahoney, Stinger, Beiner, Epstein, Akpan, and Erickson.

156.

Defendants FFI, Higgins, Mahoney, Stinger, Beiner, Epstein, Akpan, and Erickson had a duty to exercise due care and diligence in supervising and controlling Vandel as a teacher.

157.

Defendants FFI, Higgins, Mahoney, Stinger, Beiner, Epstein, Akpan, and Erickson breached the duty owed to Jane Doe II to ensure that she, as a student of FAST, was safe by ignoring reports from people within the FAST community

including teachers, students, and parents regarding Vandel's grooming, sexual harassment, and sexual assault of female students and staff.

158.

Defendants FFI, Higgins, Mahoney, Stinger, Beiner, Epstein, Akpan, and Erickson breached their duty by failing to properly supervise Vandel, allowing him to violate multiple FAST policies and procedures including, but not limited to: giving candy to students, closing his door, and lowering the blinds in his classroom which allowed him to isolate Jane Doe II in his locked classroom, with no other students, teachers or administrators present or able to see what occurred.

159.

Defendants FFI, Higgins, Mahoney, Stinger, Beiner, Epstein, Akpan, and Erickson breached their duty to Jane Doe II by failing to adopt and enforce adequate rules, policies, and procedures for teachers and staff.

160.

Defendants FFI, Higgins, Mahoney, Stinger, Beiner, Epstein, Akpan, and Erickson breached their duty to Jane Doe II by failing to supervise, manage, monitor, and oversee the safety of students while on FAST's campus, allowing for Jane Doe II to be isolated by herself in a room with Vandel.

161.

Defendants FFI, Higgins, Mahoney, Stinger, Beiner, Epstein, Akpan, and

Erickson failed to exercise due care and diligence in their supervision and retention of Vandel by not having policies and procedures in place to prevent Vandel's grooming, sexual harassment, and sexual assault of female students, including Jane Doe II, and/or failing to enforce the existing policies.

162.

Defendants FFI, Higgins, Mahoney, Stinger, Beiner, Epstein, Akpan, and Erickson breached their duty by improperly retaining Vandel as an employee of FAST despite receiving reports of improper conduct, and their knowledge that Vandel was violating FAST policies and procedures.

163.

As a direct and proximate result of the acts and omissions of Defendants FFI, Higgins, Mahoney, Stinger, Beiner, Epstein, Akpan, and Erickson Jane Doe II suffered severe physical and emotional damages, which will continue into the future. Plaintiffs have incurred substantial and significant medical expenses for care and treatment relating to the injuries and damages Jane Doe II suffered as a result of Defendant's negligence.

**Count IV: Negligent Supervision, Retention, Undertaking**
**(Defendants FAST, Higgins, Mahoney, Stinger, Beiner, Epstein, Akpan, and Erickson)**

164.

Plaintiffs adopt and incorporate herein by reference each and every allegation

made in paragraphs 1 – 129 above as if fully set forth herein.

165.

In addition to, or in the alternative to, Count III, Defendants FAST, Higgins, Mahoney, Stinger, Briner, Epstein, Akpan and Erickson were negligent in the ways set forth in Count IV.

166.

Pursuant to the Hidden Predator Act, O.C.G.A. § 9-3-33.1, the State has waived sovereign immunity for childhood sexual abuse cases brought against government entities and employees.

167.

Defendants Akpan and Erickson are not state employees or agents and are not entitled to immunity.

168.

Defendants FAST, Higgins, Mahoney, Stinger, Beiner, Epstein, Akpan, and Erickson undertook the duty of providing educational services and protection for FAST students, including Jane Doe II.

169.

Defendants FAST, Higgins, Mahoney, Stinger, Beiner, Epstein, Akpan, and Erickson owed a duty of care to the students of FAST, including Jane Doe II, to ensure that they properly supervised all teachers at FAST, to make sure that the

teachers of FAST followed all policies and procedures, and to appropriately respond to improper conduct by teachers of FAST towards students at FAST.

170.

Between the start of the 2017-2018 school year and his termination on June 9, 2020, Vandel worked as a teacher at FAST under the supervision of Defendants FFI, Higgins, Mahoney, Stinger, Beiner, Epstein, Akpan, and Erickson.

171.

Defendants FAST, Higgins, Mahoney, Stinger, Beiner, Epstein, Akpan, and Erickson had a duty to exercise due care and diligence in supervising and controlling Vandel as a teacher.

172.

Defendants FAST, Higgins, Mahoney, Stinger, Beiner, Epstein, Akpan, and Erickson breached the duty owed to Jane Doe II to ensure that she, as a student of FAST, was safe by ignoring reports from people within the FAST community including teachers, students, and parents regarding Vandel's grooming, sexual harassment, and sexual assault of female students and staff.

173.

Defendants FAST, Higgins, Mahoney, Stinger, Beiner, Epstein, Akpan, and Erickson breached their duty by failing to properly supervise Vandel, allowing him to violate multiple FAST policies and procedures including: giving candy to

students, closing his door, and lowering the blinds in his classroom, which allowed him to isolate Jane Doe II in his locked classroom, with no other students, teachers or administrators present or able to see what occurred.

174.

Defendants FAST, Higgins, Mahoney, Stinger, Beiner, Epstein, Akpan, and Erickson breached their duty to Jane Doe II by failing to adopt and enforce adequate rules, policies, and procedures for teachers and staff.

175.

Defendants FAST, Higgins, Mahoney, Stinger, Beiner, Epstein, Akpan, and Erickson breached their duty to Jane Doe II by failing to supervise, manage, monitor and oversee the safety of students while on FAST's campus, allowing for Jane Doe II to be isolated by herself in a room with Vandel.

176.

Defendants FAST, Higgins, Mahoney, Stinger, Beiner, Epstein, Akpan, and Erickson failed to exercise due care and diligence in their supervision and retention of Vandel by not having policies and procedures in place to prevent Vandel's grooming, sexual harassment, and sexual assault of female students, including Jane Doe II, and/or failing to enforce the existing policies.

177.

Defendants FAST, Higgins, Mahoney, Stinger, Beiner, Epstein, Akpan, and

Erickson breached their duty by improperly retaining Vandel as an employee of FAST despite receiving reports of improper conduct, and their knowledge that Vandel was violating FAST policies and procedures.

178.

As a direct and proximate result of the acts and omissions of Defendants FAST, Higgins, Mahoney, Stinger, Beiner, Epstein, Akpan, and Erickson Jane Doe II suffered severe physical and emotional damages, which will continue into the future.  Plaintiffs have incurred substantial and significant medical expenses for care and treatment relating to the injuries and damages Jane Doe II suffered as a result of Defendant's negligence.

**Count V:   Negligent Undertaking**
**(FCS, Looney, Loe, Rose, and Gatewood)**

179.

Plaintiffs adopt and incorporate herein by reference each and every allegation made in paragraphs 1 – 129 above as if fully set forth herein.

180.

Pursuant to the Hidden Predator Act, O.C.G.A. § 9-3-33.1, the State has waived sovereign immunity for childhood sexual abuse cases brought against government entities.

181.

In addition to, or in the alternative to Counts III and IV, Defendants FCS,

Looney, Loe, Rose, and Gatewood were negligent in the ways set forth in Count V.

182.

FCS, Looney, Loe, Rose, and Gatewood undertook, for consideration, the duty of providing educational services and protection for its students, including Jane Doe II.

183.

FCS, Looney, Loe, Rose, and Gatewood should have recognized as necessary the protection of Jane Doe II's person and promulgated policies and procedures to protect minor students from inappropriate misconduct by teachers.

184.

FCS, Looney, Loe, Rose, and Gatewood were negligent in failing to protect Jane Doe II from being sexually harassed, sexually assaulted, and raped by Robert Vandel.

185.

FCS, Looney, Loe, Rose, and Gatewood failed to ensure that FAST, Higgins, Mahoney, Stinger, Beiner, Epstein adopted and implemented policies and procedures consistent with FCS policies and procedures, and in doing so allowed FAST to adopt and promulgate policies and procedures that were inconsistent with FCS policies and procedures.

186.

As a direct and proximate result of FCS, Looney, Loe, Rose, and Gatewood's acts and omissions Vandel was able to isolate Jane Doe II and was able to sexually harass, sexually assault and rape Jane Doe II.

187.

As a direct and proximate result of the acts and omissions of Defendants FCS, Looney, Loe, Rose, and Gatewood, Jane Doe II suffered severe physical and emotional damages, which will continue into the future.  Plaintiffs have incurred substantial and significant medical expenses for care and treatment relating to the injuries and damages Jane Doe II suffered as a result of Defendant's negligence.

**Count VI:    Violation of Substantive Due Process (42 U.S.C. § 1983): Fourteenth Amendment Due to a Willful Failure by Defendants to Follow Their own Policies and Procedures and an Unofficial Custom, Policy, or Practice of Allowing Misconduct by Vandel.**
(Defendants FFI, FCS, FAST, Looney, Loe, Rose, and Gatewood Higgins, Mahoney, Stinger, Beiner, Akpan, and Erickson)

188.

Plaintiffs adopt and incorporate herein by reference each and every allegation made in paragraphs 1 – 129 above as if fully set forth herein.

189.

Plaintiffs bring this action under 42 U.S.C. § 1983, which allows for claims against defendants acting under the color of law for the deprivation of rights that are afforded under the constitution, specifically for the deprivation of the substantive

due process rights to Jane Doe II, which are provided by the 14th amendment.

190.

At all relevant times, FCS, FAST, Higgins, Mahoney, Stinger, Beiner, Looney, Loe, Rose, and Gatewood acted under color of state law.

191.

In addition to, or in the alternative to, the allegations of paragraphs 131,132, 150, 151, and 167 FFI, Akpan and Erickson were acting under color of state law.

192.

At all relevant times, Jane Doe II was a US citizen afforded the protections of the constitution of the United States of America.

193.

Jane Doe II had a constitutional right to liberty and bodily security which Defendants violated through both the adoption of unofficial customs and policies, and decisions made by the final decisionmakers which led to Jane Doe II being sexually harassed, sexually assaulted, and raped while in the care and supervision of Defendants.

194.

Defendant Higgins was the final decisionmaker and policy maker regarding the employment of Vandel.  Defendant Higgins, Mahoney, Stinger and Beiner, as Principals of FAST were the final decisionmakers and policy makers on policies

regarding: (1) the selection, retention, transfer, promotion, termination, and disciplining of faculty; (2) how to investigate, respond to, and manage reports of sexual violence against students by employees, including teachers; and (3) reporting to parents the dangers posed by employees of FAST between the start of the 2017-18 school year and the sexual harassment, sexual assault, and rape of Jane Doe II.

195.

In addition to, or in the alternative to the allegations of paragraph 194, the board of FAST, including Defendant Erickson was the final decisionmaker and policy maker regarding the employment of Vandel.  The board of FAST, including Defendants Akpan and Erickson were the final decisionmakers and policy makers for policies regarding: (1) the selection, retention, transfer, promotion, termination, and disciplining of faculty; (2) how to investigate, respond to, and manage reports of sexual violence against students by employees, including teachers; and (3) reporting to parents the dangers posed by employees of FAST between the start of the 2017-18 school year and the sexual harassment, sexual assault, and rape of Jane Doe II.

196.

In addition to, or in the alternative to the allegations of paragraphs 194, and 195, Defendants Looney, Loe, Rose, and Gatewood were the final decisionmakers and policy makers regarding the employment of Vandel.  Defendants Looney, Loe,

Rose, and Gatewood were also the final decisionmakers and policy makers for policies regarding: (1) the selection, retention, transfer, promotion, termination, and disciplining of faculty; (2) how to investigate, respond to, and manage reports of sexual violence against students by employees, including teachers; and (3) reporting to parents the dangers posed by employees of FAST between the start of the 2017-18 school year and the sexual harassment, sexual assault, and rape of Jane Doe II.

197.

The final policy maker(s) deliberately and willfully hired Vandel as a faculty member at the school despite his history of grooming, sexual harassment, and sexual assault of female middle school students.

198.

The final policy maker(s) failed to conduct an adequate background check for Vandel and/or were deliberately indifferent to information in the background check for Vandel that should have prevented his hiring. Vandel's public record contained within the GPSC reveals that he had previously been accused and found responsible for the repeated grooming, sexual harassment, and sexual assault of female middle school students.  Yet, Vandel was hired to take a position at FAST.

199.

Had an adequate background check been conducted it was plainly obvious given Vandel's record of repeated grooming, sexual harassment, and sexual assault,

that hiring him at FAST would result in the deprivation of a student's federally protected rights to liberty and bodily security.

200.

The final decision maker(s) at all relevant times, had authority to decide and/or adopt a course of action in response to each of the complaints of grooming, sexual harassment, sexual assault, and bullying raised by students, teachers, and parents against Vandel.

201.

At the time of and prior to the rape and attack of Jane Doe II, Defendants had actual knowledge of prior complaints regarding Vandel's inappropriate contact and sexual harassment with students at FAST, and with students at other institutions prior to his employment with FAST.  This prior information included:

a. Reports from fourteen (14) teachers and staff at Midland Middle School, which were contained within the GPSC for Robert Vandel;

b. Reports from six (6) students at Midland Middle School, which were contained within the GPSC file for Robert Vandel;

c. Reports from/about at least six (6) teachers at FAST academy;

d. Reports from/about at least six (6) students at FAST academy; and

e. At least one (1) report from a parent at FAST academy.

202.

FCS and FAST's express policies required the Defendants to:

a.  Conduct a background check on all new hires, prior to hiring them;

b.  Appropriately discipline employees for misconduct, including sexual misconduct;

c.  Investigate complaints raised by students and employees regarding sexual harassment, physical abuse, or inappropriate contact by a teacher;

d.  Protect students, like Jane Doe II, from sexual harassment, physical abuse or inappropriate contact;

e.  Adequately supervise employees that posed a substantial risk of harm to others;

f.  Adequately supervise and monitor students like Jane Doe II;

g.  Know of the whereabouts of all employees and students;

h.  Suspend, discipline, remove, or report employees who were having inappropriate contact, including sexual contact, with students;

i.  Properly notify parents/legal guardians whenever an employee engages in inappropriate conduct and/or sexually harasses a student;

j.  Institute reasonable corrective measures aimed at preventing known aggressors and harassers from assaulting students;

k.  Warn students, parents/legal guardians, and other employees of employees that have a history of inappropriate contact with students;

l.  Adequately train school employees on how to respond to complaints of sexual harassment, physical abuse or inappropriate contact;

m. Adequately train school employees on how to make complaints of sexual harassment, physical abuse or inappropriate contact;

n.  Record incidents involving harassment, abuse or inappropriate contact involving employees;

o.  Prevent violent and dangerous employees from remaining in their positions; and

p.  Report cases of sexual harassment and inappropriate contact between teachers and students to the GPSC.

203.

Notwithstanding their own express policies, Defendants willfully had an unofficial policy, practice or custom of failing to:

a.  Properly investigate the background of Vandel, prior to hiring him;

b.  Review the public records for Vandel that are contained within the GPSC;

c.  Appropriately discipline Vandel;

d.  Investigate complaints raised by students, employees, and parents

regarding sexual harassment, physical abuse, or inappropriate contact of students by Vandel;

e.  Protect Jane Doe II and other female students from sexual harassment, sexual assault, or rape or inappropriate contact by Vandel;

f.  Adequately supervise Vandel, despite knowledge that he posed a substantial risk of harm to others;

g.  Adequately supervise and monitor students including Jane Doe II;

h.  Know of the whereabouts of all employees and students, including Vandel and Jane Doe II;

i.  Suspend, discipline, remove, or report Vandel, who had a history of inappropriate contact with students, despite having final authority to do so;

j.  Properly notify parents/legal guardians when Vandel engaged in inappropriate conduct with a student;

k.  Institute reasonable corrective measures aimed at preventing Vandel, a known aggressor and harasser, from assaulting students, despite having final authority to do so;

l.  Warn students, parents/legal guardians, and other employees of Vandel's history of grooming, sexual harassment and sexual assault of female students;

m. Adequately train school employees on how to respond to complaints of sexual harassment, physical abuse or inappropriate contact;

n. Adequately train school employees on how to make complaints of sexual harassment, physical abuse or inappropriate contact;

o. Make a record of incidents involving harassment, abuse or inappropriate contact involving Vandel;

p. Remove Vandel from his position, despite having the final authority to do so; and

q. Report cases of sexual harassment and inappropriate contact between Vandel and students to the GPSC.

<div align="center">204.</div>

Prior to the attack on Jane Doe II by Vandel, FAST engaged in continued and unofficial customs, policies, and practices of deliberate indifference to the risk of harassment and assault of young female students. These customs, policies, and practices included:

a. Placing Vandel in a room separated from the remainder of the teaching and administrative staff, which allowed him to engage in the exact same inappropriate behavior towards young female students at FAST that he did at Midland Middle School;

b. Ignoring an official policy that prohibited teachers from giving candy

or ice cream to students, and instead adopting an unofficial custom and policy of allowing Vandel to openly and brazenly give students candy and ice cream to facilitate his grooming efforts;

c. Ignoring an official policy that prohibited teachers from using the intruder blinds in their classrooms unless there was an active shooter drill and instead adopting an unofficial custom and policy of allowing teachers to use the blinds for privacy, which permitted Vandel to use the blinds when isolating, grooming and ultimately raping Jane Doe II;

d. Ignoring official policies to create written reports for reports of sexual harassment, abuse and molestation, and instead adopting an unofficial custom and policy of encouraging only verbal reports to avoid creating documented actionable incidents that would reflect badly on the school;

e. Deleting emails, messages, and other compromising information regarding complaints at the school;

f. Sweeping serious concerns and reports under the rug to avoid bad publicity;

g. Refusing to follow the Fulton County sexual harassment policies and training, and the State and Federal requirements of mandatory reporting of sexual harassment and assault, including harassment and assault of students and teachers by Vandel;

h.  Refusing to report accusations of Vandel's inappropriate behavior with young female students or sexual misconduct by Vandel; and

i.  Downplaying and victim-blaming credible concerns about sexual harassment and assault by Vandel.

205.

In spite of Defendants' knowledge of Vandel's grooming, sexual harassment, and sexual assault of other female students and faculty members, both at FAST and previous institutions, Defendants failed to take any actions to protect students from Vandel. No formal investigation into Vandel was conducted.  Defendants repeatedly protected Vandel from investigation, and provided him with no reprimands, sanctions, or suspensions prior to the sexual assault and rape of Jane Doe II.

206.

Defendants acted willfully and with deliberate indifference in ignoring the actions of Vandel and in doing so failed to protect Jane Doe II, and deprived Jane Doe II of her liberty and interest in being free from psychological and bodily abuse.

207.

Defendants' willful actions and deliberate indifference led to the deprivation of rights afforded to Jane Doe II under the 14th amendment of the United States Constitution.

208.

As a direct and proximate result of Defendants' willful failure to enforce their policies and procedures Jane Doe II suffered physical, emotion and psychological injury.

209.

Plaintiffs are entitled to recover from Defendants all compensatory, special, economic, consequential, general, and all other damages permissible under federal law.

**Count VII:  Violation of Substantive Due Process (42 U.S.C. § 1983):
Fourteenth Amendment due to a Failure to Take Corrective Action.**
(Defendants FCS, FAST, FFI, Higgins, Mahoney, Stinger, Beiner, Akpan, and Erickson)

210.

Plaintiffs adopt and incorporate herein by reference each and every allegation made in paragraphs 1 – 129 above as is fully set forth herein.

211.

Plaintiffs bring this action under 42 U.S.C. § 1983, which allows for claims against defendants acting under the color of law for the deprivation of rights that are afforded under the constitution, for the invasion of the bodily integrity of Jane Doe II by Vandel as protected by the 14th amendment.

212.

At all relevant times, FCS, FAST, Higgins, Mahoney, Stinger, Beiner acted

under color of state law.

213.

In addition to, or in the alternative to, the allegations of paragraphs 131, 132, `150, 151, and 167, FFI, Akpan and Erickson were acting under color of state law.

214.

At all relevant times Jane Doe II was a citizen of the United States of America and protected by the rights afforded to her under the constitution of the United States of America.

215.

Under the 14th amendment of the Constitution, Jane Doe II had a constitutional right to liberty and bodily security which Defendants violated through both the adoption of unofficial customs and policies, and decisions made by the final decisionmakers which led to Jane Doe II being sexually harassed, sexually assaulted, and raped while in the care and supervision of Defendants.

216.

Defendants Higgins, Mahoney, Stinger and Beiner, as Principals of FAST were the final decisionmakers and policy makers on the retention, transfer, promotion, termination, and disciplining of faculty, including Vandel, at the time they held the position of Principal of FAST between the start of the 2017-18 school year and the sexual harassment, sexual assault, and rape of Jane Doe II.

217.

In addition to, or in the alternative to the allegations of paragraph 216, the board of FAST, including Defendants Akpan and Erickson, were the final decisionmakers and policy makers on the retention, transfer, promotion, termination, and disciplining of faculty, including Vandel, between the start of the 2017-18 school year and the sexual harassment, sexual assault, and rape of Jane Doe II.

218.

Jane Doe II was deprived of the protections afforded to her by the Constitution when Defendants allowed Vandel to continue to groom, sexually assault and harass female students at FAST culminating in Jane Doe II's rape and sexually assault.

219.

During his time employed at FAST Robert Vandel engaged in a persistent pattern of abuse of young female students by grooming, sexually harassing, and sexually assaulting them.

220.

Prior to the rape of Jane Doe II, Defendants were aware of the persistent pattern of abuse by Robert Vandel of young female students, through multiple reports from within the FAST community including reports from at least six teachers, three students, and one parent.

221.

Prior to Jane Doe II's rape Defendants deliberately and willfully ignored the reported abuse by failing to:

a. Report the abuse to the appropriate individuals and entities;

b. Appropriately investigate the allegations of abuse;

c. Reprimand Vandel or in anyway limit his ability to isolate and be alone with female students;

d. Suspend Vandel; and

e. Remove Vandel from his position as a teacher at FAST.

222.

As a direct and proximate cause of the willful actions and deliberate indifference of Defendants, Jane Doe II was deprived of liberty and bodily integrity.

223.

Plaintiffs are entitled to recover from Defendants all compensatory, special, economic, consequential, general, and all other damages permissible under federal law.

**Count VIII: Violation of Substantive Due Process (42 U.S.C. § 1983): Fourteenth Amendment Due to a Willful Failure by Defendants to Follow Their own Policies and Procedures and an Unofficial Custom, Policy, or Practice of Allowing Misconduct by Vandel.**
**(Defendants FCS, Looney, Loe, Rose, and Gatewood)**

224.

Plaintiffs adopt and incorporate herein by reference each and every allegation made in paragraphs 1 – 129 above as if fully set forth herein.

225.

Plaintiffs bring this action under 42 U.S.C. § 1983, which allows for claims against defendants acting under the color of law for the deprivation of rights that are afforded under the constitution, specifically for the deprivation of the substantive due process rights to Jane Doe II, which are provided by the 14th amendment.

226.

At all relevant times, Defendants acted under color of state law in their administration of and obligation to monitor and protect students at FAST.

227.

At all relevant times, Jane Doe II was a US citizen afforded the protections of the constitution of the United States of America.

228.

Jane Doe II had a constitutional right to liberty and bodily security which was violated by being sexually harassed and assaulted while in the care of Defendants and the staff and employees at FAST.

229.

Defendants Looney, Loe, and Rose as superintendents of the Fulton County

School system, and Defendant Gatewood, as assistant superintendent for charter schools in the Fulton County School System, were the final policymakers for policies and procedures for responding to reports of sexual violence in Fulton County School System's charter schools, including at FAST.

230.

Defendant Looney, Loe, Rose, and Gatewood adopted improper customs, practices and policies for the Fulton County School System that demonstrated deliberate indifference to the sexual assault of students by teachers in the school system. This deliberate indifference is demonstrated through:

a. Failure to provide sufficient training to administrators, teachers and staff in the Fulton County School System regarding response to reports of sexual harassment and violence against students;

b. Failure to properly implement the Fulton County School System sexual assault policy and investigative process; and

c. Failure to require charter schools and administrators who hear of sexual harassment and molestation committed by teachers to put in place interim measures to protect students while the complaints are fully investigated.

231.

FCS official policies required FCS, Looney, Loe, Rose, and Gatewood to

require all schools to:

    a.  Investigate all personnel accused of violations of the Fulton County School's sexual assault policy;

    b.  Appoint an investigator to evaluate reports of sexual harassment and molestation;

    c.  Impose interim measures on teachers accused of violating the sexual assault policy; and

    d.  Sanction teachers found to have violated the sexual assault policy.

232.

FCS, Looney, Loe, Rose, and Gatewood engaged in continued and unofficial customs, policies, and practices of deliberate indifference to the risk of harassment and assault of young female students. These customs, policies, and practices included:

    a.  Failure to require Robert Vandel to be investigated for violations of the Fulton County Schools' sexual assault policy;

    b.  Failure of Fulton County School System to appoint an investigator to evaluate the reports of sexual harassment and molestation made against Robert Vandel;

    c.  Failure to require Robert Vandel to be subject to interim measures while he was investigated for sexual harassment and molestation of female

students and teachers at FAST; and

    d.  Failure to require Robert Vandel to be sanctioned for violations of the sexual assault policy.

<div align="center">233.</div>

Due to the violations of Fulton County Schools' policies, Jane Doe II came into contact with Vandel and was sexually harassed, sexually assaulted, and raped.

<div align="center">234.</div>

As a direct and proximate result of Defendants FCS, Looney, Loe, Rose, and Gatewood's willful failure to enforce Fulton County Schools' policies and procedures Jane Doe II suffered physical, emotional and psychological injury.

<div align="center">235.</div>

Plaintiffs are entitled to recover from Defendants all compensatory, special, economic, consequential, general, and all other damages permissible under federal law.

<div align="center">

**Count IX:   Violation of Equal Protection (42 U.S.C. § 1983): Fourteenth Amendment Due to Defendant's Discrimination Against Jane Doe II Due to Her Sex and Gender**
(Defendants FAST, FCS, FFI Looney, Loe, Rose, Gatewood, Higgins, Mahoney, Stinger, Beiner, Akpan and Erickson)

</div>

<div align="center">236.</div>

Plaintiffs adopt and incorporate herein by reference each and every allegation made in paragraphs 1 – 129 above as if fully set forth herein.

<div align="center">80</div>

237.

Plaintiffs bring this action under 42 U.S.C. § 1983, which allows for claims against defendants acting under the color of law depriving an individual of their constitutionally protected rights, for treating reports made of sexual harassment against females differently than other genders thereby violating the 14th Amendment, and that this violation was the direct and proximate cause of the injuries suffered by Jane Doe II.

238.

Gender and sex are constitutionally protected interests that give rise to a cause of action under 42 U.S.C. § 1983.

239.

As a female, Jane Doe II was a member of a constitutionally protected class.

240.

Upon information and belief, Defendants have treated reports of sexual harassment and sexual violence against female students differently than they treated other reports.

241.

Upon information and belief, Defendants' express policies required them to adequately train or supervise school employees to:

a. Appropriately discipline employees, including Vandel;

b.  Investigate complaints raised by students, employees, and parents regarding sexual harassment, physical abuse, or inappropriate contact of students by Vandel;

c.  Protect students like Jane Doe II from sexual harassment, physical abuse or inappropriate contact;

d.  Adequately supervise employees like Vandel that posed a substantial risk of harm to others;

e.  Adequately supervise and monitor students like Jane Doe II;

f.  Know of the whereabouts of all employees and students;

g.  Suspend, discipline, remove, or report employees like Vandel who had a history of inappropriate contact with students;

h.  Properly notify parents/legal guardians whenever an employee engages in inappropriate conduct with a student;

i.  Institute reasonable corrective measures aimed at preventing known aggressors and harassers like Vandel from assaulting students;

j.  Warn students, parents/legal guardians, and other employees of employees like Vandel that have a history of inappropriate contact with students;

k.  Make a record of incidents involving harassment, abuse or inappropriate contact involving employees like Vandel;

l.  Remove violent and dangerous employees from their positions; and

m. Report cases of sexual harassment and inappropriate contact between teachers and students to the GPSC.

242.

Defendants violated their own policies by failing to adequately train or supervise school employees to:

a. Appropriately discipline Vandel;

b. Investigate complaints raised by students, employees, and parents regarding sexual harassment, physical abuse, or inappropriate contact of students by Vandel;

c. Protect female students at FAST including Jane Doe II from sexual harassment, physical abuse or inappropriate contact by Vandel;

d. Adequately supervise Vandel despite knowing he posed substantial risk of harm to female students;

e. Adequately supervise and monitor female students, including Jane Doe II;

f. Know of the whereabouts of all employees and students;

g. Suspend, discipline, remove, or report Vandel, who had a history of inappropriate contact with female students;

h. Properly notify parents/legal guardians of the inappropriate conduct by Vandel towards female students;

i. Institute reasonable corrective measures to prevent Vandel as a known

aggressor and harasser from grooming, sexually harassing, and sexually assaulting female students, including Jane Doe II;

j.  Warn students, parents/legal guardians, and other employees of Vandel's history of inappropriate contact with students;

k.  Make a record of incidents involving harassment, abuse or inappropriate contact by Vandel;

l.  Remove Vandel from his position; and

m. Report cases of sexual harassment and inappropriate contact between Vandel and female students to the GPSC.

<div align="center">243.</div>

Defendants' failure and refusal to act in accordance with their policy, training and procedures were because the reports made against Vandel were for his sexual harassment of female students.

<div align="center">244.</div>

Upon information and belief Defendants have/would have acted differently and followed their training, policy and procedures when allegations of grooming, sexual harassment, sexual assault, and rape have been made for sexual harassment of male students within FAST and FCS.

<div align="center">245.</div>

Upon information and belief Defendants have/would conduct investigations,

file reports, and terminate employees accused of grooming, sexual harassment, sexual assault, and rape of male students.

<div align="center">246.</div>

Defendants' actions in treating reports about female students being groomed, sexually harassed, sexually assaulted differently is a violation of Equal Protection.

<div align="center">247.</div>

Defendants' violation of equal protection meant that Vandel was not investigated despite multiple complaints, he was not reported to the GPSC, and he was not terminated and remained employed in a position of power which he used to sexually harass, sexually assault, and rape Jane Doe II.

<div align="center">248.</div>

As the direct and proximate cause of Defendants' violation of equal protection, Jane Doe II suffered physical, emotional and psychological injury.

<div align="center">249.</div>

Plaintiffs are entitled to recover from Defendants all compensatory, special, economic, consequential, general, and all other damages permissible under federal law.

**Count X: Title IX Claim (20 U.S.C. § 1681(a)) – Deliberate Indifference to Vandel's History of Sexual Harassment.**
(Defendants FCS and FAST)

250.

Plaintiffs adopt and incorporate herein by reference each and every allegation made in paragraphs 1 – 129 above as if fully set forth herein.

251.

Defendants FCS and FAST are Title IX funding recipients.

252.

Jane Doe II was subjected to sexual harassment, sexual assault, and rape while enrolled in an education program or activity that receives federal financial assistance.

253.

The violence that Jane Doe II was subjected to at FAST by Vandel constituted "sexual harassment" within the meaning of Title IX.

254.

Vandel's attack on Jane Doe II was motivated by Vandel's sexual desire for Jane Doe II.

255.

Prior to the attack on Jane Doe II, Defendants FCS, FAST, Higgins, Mahoney, Stinger, Beiner, Akpan, and Erickson along with other teachers and staff at FAST, had actual knowledge of Vandel having inappropriate contact and sexually harassing minor students at other schools prior to his employment at with FCS.

256.

Defendants FCS and FAST had actual knowledge of the threat that Vandel posed to students, including Jane Doe II, at FAST through:

   a.  The certification status for Robert Vandel held with the GPSC;

   b.  The final decision, findings of facts, case summary, and investigations performed by the GPSC into reports of sexual harassment by Vandel against other minor female students; and

   c.  The work history of Vandel, which demonstrates repeated firings and removal from the schools.

257.

The pervasive sexual harassment, physical abuse and inappropriate contact perpetrated by Vandel against Jane Doe II had the effect of damaging equal access to education.

258.

Defendants FCS and FAST's employees, Defendants Looney, Loe, Rose, Gatewood, Higgins, Mahoney, Stinger, Beiner, Akpan, and Erickson were appropriate people to address or remedy the threat posed by Vandel to students at FAST.

259.

FCS and FAST acted with deliberate indifference to the threat posed by

Robert Vandel to the students at FAST including Jane Doe II, by:

a. Hiring Vandel, despite his history of sexual harassment of female middle school students, to teach female middle school students;

b. Failing to protect students like Jane Doe II from sexual harassment, physical abuse or inappropriate contact;

c. Failing to adequately supervise Vandel who they knew posed a substantial risk of harm to others;

d. Failing to adequately supervise and monitor students who had close contact with Vandel;

e. Failing to monitor and employ effective key control measures;

f. Failing to suspend, discipline, remove, or report employees like Vandel who had a history of inappropriate contact with students;

g. Failing to institute reasonable corrective measures aimed at preventing known aggressors and harassers like Vandel from assaulting students;

h. Failing to warn students, parents/legal guardians, and other employees of Vandel's history of inappropriate contact with students; and

i. Failing to adequately train school employees on how to handle complaints of sexual harassment, physical abuse or inappropriate contact.

These actions and inactions of FCS and FAST were clearly unreasonable.

260.

Jane Doe II was subjected to this sexual harassment due to Defendants FCS and FAST's deliberate indifference to the history of sexual violence perpetrated by Vandel.

261.

The sexual harassment, sexual assault, and rape to which Jane Doe II was subjected was so severe, pervasive, and objectively offensive that it barred Jane Doe II's access to educational opportunities and benefits.

262.

As a direct result of Defendant FCS and FAST's deliberate indifference Jane Doe II has been excluded from participation in and has been denied the benefit of her education due to her sex.

263.

FCS and FAST are liable to Plaintiffs under the implied right of action to enforce Title IX for damages in such amount as will compensate Jane Doe II for the educational opportunities and benefits Jane Doe II has lost and will lose; the physical, and mental injuries Jane Doe II has suffered and will suffer; and the medical and rehabilitation expenses for Jane Doe II's care that Jane Doe I, John Doe and Jane Doe II or any one of them have incurred or will incur as a result of FCS and FAST's violation of Jane Doe II's rights under Title IX.

264.

FCS and FAST are liable to Plaintiffs under the implied right of action to enforce Title IX for reasonable attorney's fee, including experts' fees, as part of the costs in this action.

**Count XI:   Title IX Claim (20 U.S.C. § 1681(a)) – Deliberate Indifference to Vandel's Sexual Harassment at FAST.**
(Defendants FCS and FAST)

265.

Plaintiffs adopt and incorporate herein by reference each and every allegation made in paragraphs 1 – 129 above as if fully set forth herein.

266.

Defendants FCS and FAST are Title IX funding recipients.

267.

Jane Doe II was subjected to harassment while enrolled in an education program or activity that receives Federal financial assistance.

268.

The violence that Jane Doe II was subjected to at FAST by Vandel constituted "sexual harassment" within the meaning of Title IX.

269.

Vandel's attack on Jane Doe II was motivated by Vandel's sexual desire for Jane Doe II.

270.

Prior to the attack on Jane Doe II, Defendants FCS, FAST, Higgins, Mahoney, Stinger, and Beiner along with other teachers and staff at FAST, had actual knowledge of Vandel having inappropriate contact and sexually assaulting other students at FAST.

271.

Defendants FCS and FAST had actual knowledge of the threat that Vandel posed to students, including Jane Doe II, at FAST through:

    a.  Reports from at least five (5) teachers at FAST academy;

    b.  Reports from at least three (3) students at FAST academy; and

    c.  At least one report from a parent at FAST academy.

The reports regarded Vandel's grooming, sexual harassment, and sexual assault of female students and staff at FAST.

272.

The pervasive sexual harassment, physical abuse and inappropriate contact perpetrated by Vandel against Jane Doe II had the effect of damaging equal access to education.

273.

Defendant FCS and FAST's employees, Defendants Looney, Loe, Rose, Gatewood, Higgins, Mahoney, Stinger, Beiner, and Epstein were appropriate people

to address or remedy the ongoing inappropriate contact and sexual harassment by Vandel towards students at FAST.

274.

FCS and FAST acted with deliberate indifference to multiple reports regarding sexual harassment, physical abuse and inappropriate contact in its programs and activities by failing to:

a.  Appropriately discipline employees, including Vandel;

b.  Investigate complaints raised by students and employees regarding sexual harassment, physical abuse, or inappropriate contact by Vandel;

c.  Protect students like Jane Doe II from sexual harassment, physical abuse or inappropriate contact;

d.  Adequately supervise employees like Vandel that posed a substantial risk of harm to others;

e.  Adequately supervise and monitor students like Jane Doe II;

f.  Know of the whereabouts of all employees and students;

g.  Monitor and employ effective key control measures;

h.  Suspend, discipline, remove, or report employees like Vandel who had a history of inappropriate contact with students;

i.  Properly notify parents/legal guardians whenever an employee engaged in inappropriate conduct with a student;

j.   Institute reasonable corrective measures aimed at preventing known aggressors and harassers like Vandel from assaulting students;

k.   Warn students, parents/legal guardians, and other employees of employees like Vandel that have a history of inappropriate contact with students;

l.   Adequately train school employees on how to handle complaints of sexual harassment, physical abuse or inappropriate contact;

m.   Make a record of incidents involving harassment, abuse or inappropriate contact involving employees like Vandel; and

n.   Remove violent and dangerous employees, like Vandel, from their positions.

These actions and inactions of FCS and FAST were clearly unreasonable.

### 275.

Jane Doe II was subjected to this sexual harassment due to Defendant FCS and FAST's deliberate indifference to the previous reports of sexual violence made against Vandel.

### 276.

As a direct result of Defendant FCS and FAST's deliberate indifference Jane Doe II lost all confidence with regard to her safety at FAST, suffered depression and a loss of self-confidence all of which have and will continue to require professional

counseling.

277.

The sexual harassment, sexual assault, and rape to which Jane Doe II was subjected was so severe, pervasive, and objectively offensive that it barred Jane Doe II's access to educational opportunities and benefits.

278.

As a direct result of Defendant FCS and FAST's deliberate indifference Jane Doe II has been excluded from participation in, and has been denied the benefit of her education due to her sex.

279.

FCS and FAST are liable to Plaintiffs under the implied right of action to enforce Title IX for damages in such amount as will compensate Jane Doe II for the educational opportunities and benefits Jane Doe II has lost and will lose; the physical, and mental injuries Jane Doe II has suffered and will suffer; and the medical and rehabilitation expenses for Jane Doe II's care that Jane Doe I, John Doe and Jane Doe II or any one of them have incurred or will incur as a result of FCS's violation of Jane Doe II's rights under Title IX.

280.

FCS and FAST are liable to Plaintiffs under the implied right of action to enforce Title IX for reasonable attorney's fee, including experts' fees, as part of the

costs in this action.

### Count XIII: Title IX Claim (20 U.S.C. § 1681(a)) – Deliberate Indifference to the Sexual Harassment, Sexual Assault, and Rape of Jane Doe II.
(Defendants FCS and FAST)

281.

Plaintiffs adopt and incorporate herein by reference each and every allegation made in paragraphs 1 – 129 above as if fully set forth herein.

282.

Defendants FCS and FAST are Title IX funding recipients.

283.

Jane Doe II was subjected to harassment while enrolled in an education program or activity that receives Federal financial assistance.

284.

The violence that Jane Doe II was subjected to at FAST by Vandel constituted "sexual harassment" within the meaning of Title IX.

285.

Vandel's attack on Jane Doe II was motivated by Vandel's sexual desire for Jane Doe II.

286.

Defendants FCS, FAST, Beiner, and Epstein obtained actual knowledge of the sexual harassment, sexual assault, and rape of Jane Doe II after Vandel was

arrested and the police contacted the school.

287.

The pervasive sexual harassment and inappropriate contact perpetrated by Vandel against Jane Doe II had the effect of damaging equal access to education.

288.

FCS and FAST acted with deliberate indifference to the knowledge that Vandel had sexual harassed, sexual assaulted, and raped Jane Doe II when Defendant Beiner sent an email to all parents of FAST regarding Vandel, and implied that Jane Doe II was not to believed.

289.

As a direct result of Defendant FCS and FAST's deliberate indifference Jane Doe II and her parents were re-traumatized and forced to once again feel that they were not supported or protected by FCS.

290.

The email sent by Beiner was so severe, pervasive, and objectively offensive that it barred Jane Doe II's access to educational opportunities and benefits.

291.

As a direct result of Defendant FCS and FAST's deliberate indifference Jane Doe II has been excluded from participation in, and has been denied the benefit of her education due to her sex.

292.

FCS and FAST are liable to Plaintiffs under the implied right of action to enforce Title IX for damages in such amount as will compensate Jane Doe II for the educational opportunities and benefits Jane Doe II has lost and will lose; the physical, and mental injuries Jane Doe II has suffered and will suffer; and the medical and rehabilitation expenses for Jane Doe II's care that Jane Doe I, John Doe and Jane Doe II or any one of them have incurred or will incur as a result of FCS's violation of Jane Doe II's rights under Title IX.

293.

FCS and FAST are liable to Plaintiffs under the implied right of action to enforce Title IX for reasonable attorney's fee, including experts' fees, as part of the costs in this action.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a jury trial with respect to all issues so triable as a matter of right.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Jane Doe II, and Jane Doe I and John Doe, as Parents, Natural Guardians and Next Friends of Jane Doe II, respectfully pray for the following relief:

(a) A permanent mandatory injunction requiring Defendants to take specific

measures to safeguard the bodily integrity of their students from invasion by sexual predators, including other students, on school premises and in school facilities and programs;

(b) That the Court declare Defendants' actions, policies, and practices complained herein violated the rights of Jane Doe II as secured by 42 U.S.C. § 1983 and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a);

(c) Judgment in Plaintiffs' favor against Defendants that includes all damages allowed by law, including but not limited to the following:

(i) Damages in such amount as will fully compensate Jane Doe II for the educational opportunities and benefits she has lost and will continue to lose, for injury, for pain and suffering, and for the medical and rehabilitation costs she has incurred and may incur as a direct and proximate result of Defendants' violations of her constitutionally-protected rights and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a);

(ii) Damages in such amount as will fully compensate Jane Doe I and John Doe I for the medical and rehabilitation expenses they have incurred and will incur on behalf of and for the care of Jane Doe II as a direct and proximate result of Defendant's violations of Jane Doe II's constitutionally-protected rights and Title IX of the Education Amendments of 1972, 20 U.S.C. §

1681(a); and

      (iii) Damages in such amount as will fully compensate Jane Doe II for the injuries she has suffered as a direct and proximate result of Defendants' violations of her constitutionally-protected rights under Title IX, including but not limited to damages for personal injuries; past, present and future pain and suffering; past, present and future medical expenses; mental anguish; lost wages and future loss of wages; loss of the capacity for the enjoyment of life; incidental expenses and consequential damages to be proven at trial;

(d) All costs of this action, including reasonable attorneys' fees and experts' fees; and

      (e) Such other relief as this Honorable Court may deem just and proper.

**BAYUK PRATT, LLC**

*/s/ Bradley W. Pratt*
Frank T. Bayuk
Georgia Bar No.: 142596
Bradley W. Pratt,
Georgia Bar No. 586672
Christopher D. M. Lambden,
Georgia Bar No. 334003
*Attorneys for Plaintiffs*

4401 Northside Parkway, Suite 390
Atlanta, Georgia 30327
(404) 500-2669
bradley@bayukpratt.com
frank@bayukpratt.com
christopher@bayukpratt.com

## <u>CERTIFICATE OF COMPLIANCE WITH L.R. 5.1 C</u>

I HEREBY CERTIFY that the foregoing document was prepared in Times New Roman, 14-point font, as approved by Local Rule 5.1 C.

<div align="right">

*/s/ Bradley W. Pratt*
Bradley W. Pratt
*Attorney for Plaintiffs*

</div>