# EXHIBIT "A"

Fulton County Superior Court
***EFILED***TV
Date: 1/23/2023 5:05 PM
Cathelene Robinson, Clerk

**IN THE SUPERIOR COURT OF FULTON COUNTY**
**STATE OF GEORGIA**

| | |
|---|---|
| HERITAGE PARK CONDOMINIUM ASSOCIATION, INC., | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| AMERICAN ALTERNATIVE INSURANCE CORPORATION, | ) |
| a foreign corporation, | ) |
| | ) |
| Defendant. | ) |

CIVIL ACTION FILE NO.:
2023CV375304
_____

## COMPLAINT

**COMES NOW** Plaintiff **Heritage Park Condominium Association, Inc.,** by and through the undersigned counsel, and files this Complaint for breach of first party property insurance contract and bad faith denial of insurance coverage against Defendant, **American Alternative Insurance Corporation** and in support hereof, states as follows:

## PARTIES

1.

Plaintiff is a business located in Cobb County, Georgia.

2.

Upon information and belief, Defendant is a foreign insurance company, registered to transact business in, and in fact transacts business in, the State of Georgia. Defendant is in the business of insuring risks and properties located throughout the United States, including Georgia. Defendant maintains an office at 900 Old Roswell Lakes Parkway, Suite 310, Roswell, GA 30076 where it may be served with process through its registered agent, Registered Agent Solutions, Inc., as identified by the state of Georgia Secretary of State registry.

## JURISDICTION AND VENUE

### 3.

This Court has subject matter jurisdiction over this action for breach of contract and bad faith denial of an insurance claim because the breached contract was entered into, and concerned property in, the state of Georgia and the amount in controversy exceeds $15,000.00. This Court has personal jurisdiction over Defendant because Defendant is transacting business and insuring properties in the state of Georgia and has appointed a registered agent for service of process in Georgia pursuant to O.C.G.A. § 33-4-1 and O.C.G.A. § 33-4-4.

### 4.

Venue is proper in this Court because Defendant has a registered agent doing business in Fulton County pursuant to O.C.G.A. § 33-4-1, O.C.G.A. § 33-4-4.

### 5.

In addition, by virtue of the express terms of the insurance policy at issue, Defendant has consented to jurisdiction and venue of this Court.

## THE POLICY

### 6.

Prior to March 25, 2021, and in consideration of the premiums paid to Defendant by the Plaintiff, Defendant issued a policy with Policy No. CAU508389-4 (the "Policy"). A true and accurate copy of the Policy is attached hereto as Exhibit "A."

### 7.

The Policy provides numerous coverages for the real and personal property located at 2350 Heritage Park Circle, Kennesaw, GA 30144 (the "Insured Property," "Property," or the "home").

The Policy likewise insures against loss due to Hail and Wind, subject to a deductible of $2,500 per occurrence. (*See* Ex. A).

8.

The Policy is an all-perils policy providing coverage for sudden and accidental direct physical loss to the dwelling, other structures, and personal property. The Policy covers property repairs and personal property on a full replacement cost basis. (*See* Ex. A).

9.

The Policy covers various types of expenses, including reasonable and necessary costs incurred for temporary repairs to protect covered property from further imminent covered loss and additional living expenses. (*See* Ex. A).

## SUDDEN AND ACCIDENTAL DAMAGE TO THE INSURED PROPERTY

10.

During the applicable policy period, the above-referenced property suffered damage from a sudden and accidental direct physical loss resulting from Hail / Wind (the "Loss"). The Policy was in effect at the time of the Loss.

11.

Plaintiff promptly and timely notified Defendant of the damage to the Property resulting from the Loss and made a claim pursuant to the Policy. As a result, Defendant assigned an adjuster ("Adjuster") to investigate Plaintiff's claim for sudden and accidental direct physical loss. The Adjuster was authorized as Defendant's representative and agent for purposes of the claim.

12.

At all times, Plaintiff made themselves and the Property available to, and fully cooperated with, the Defendant and its representative and agent to inspect and investigate the damages caused by the loss.

13.

Defendant, through its authorized representative and agent, Adjuster, performed a site inspection of the Property.

14.

Defendant's authorized representative and agent, Adjuster, incurred the duty of acting with due diligence in achieving a proper disposition of the Plaintiff's claim when Adjuster undertook the handling of the claim.

15.

Defendant, through its authorized representative and agent, Adjuster, grossly underestimated the scope of loss suffered by the Plaintiff as a result of the Hail / Wind event. Defendant failed to properly indemnify the Plaintiff and estimated Plaintiff's total loss to be $2,118.24. Plaintiff's deductible is $2,500 per occurrence, and Defendant withheld in recoverable depreciation; thus, after deductions for depreciation and Plaintiff's deductible, Defendant claims Plaintiff was due as indemnification under the Policy. A true and accurate copy of the Defendant's estimate is attached hereto as Exhibit "B."

16.

As a result of Defendant's gross underestimation, Plaintiff requested multiple times that Defendant reconsider its position regarding Defendant's estimate. Defendant refused to comply with the Plaintiff's requests and continued to frivolously and baselessly deny any additional

payment on Plaintiff's claim. Furthermore, the Defendant continued to ignore the opinions of the Plaintiff's experts as to the extent of damage and the amount it will cost the Plaintiff to be properly indemnified for the Loss.

17.

Plaintiff made repeated requests for payment of the claim, including a written demand sent to Defendant on September 19, 2022. A true and accurate copy of the written demand is attached hereto as Exhibit "C."  Despite this demand for $1,710,716.12 less previous payments and the applicable deductible, Defendant continued to frivolously deny Plaintiff's claim without just cause when, under one or more portions of the Policy, the obligation to settle the claim became reasonably clear.

18.

The Plaintiff's September 19, 2022, correspondence (Ex. C) to Defendant was a letter of representation from Plaintiff's counsel and a formal 60-Day demand, pursuant to the guidelines set forth in O.C.G.A. §33-4-6. After putting Defendant on notice of a potential lawsuit through the formal 60-Day demand, the Defendant continued to deny Plaintiff's claim without just cause.

19.

Defendant did not act fairly or honestly toward the Plaintiff, or with due regard to the Plaintiff's claim and interests, when Defendant, under all circumstances articulated herein, failed to indemnify the Plaintiff for their damages in direct breach of the terms and conditions of the Policy.

20.

Plaintiff has fulfilled all conditions precedent and contractual obligations under the Policy prior to this lawsuit, or the same were waived.

21.

There exists a genuine, justifiable controversy between the Plaintiff and the Defendant as to whether Defendant is responsible for further indemnification owed to the Plaintiff as a result of the Loss. Plaintiff has exhausted every reasonable means possible to resolve this dispute with the Defendant. With no other option, Plaintiff was constrained to hire legal counsel, incur additional expenses, and file this lawsuit.

22.

Plaintiff has suffered loss under the Policy in an amount to be determined at trial.

## COUNT I: BREACH OF CONTRACT

23.

Plaintiff hereby adopts, re-alleges, and incorporates their allegations set forth in Paragraphs 1-22 of this Complaint as if fully set forth herein.

24.

Plaintiff has performed all conditions precedent to the Defendant's obligation to perform under the Policy including, without limitation, the timely payment of premiums, timely notice of the claim, and post loss obligations, or the Defendant has waived any and all other conditions.

25.

Under the terms of the Policy, Defendant is required to fully indemnify the Plaintiff for the damages sustained from the Loss.

26.

Despite Plaintiff's timely written demand, Defendant failed to provide full indemnification to the Plaintiff under the terms of the Policy.

27.

Defendant failed to act in good faith and fair dealing under the terms of the Policy by refusing to properly investigate and fully indemnify the Plaintiff according to the terms of the Policy.

28.

As a result of the Defendant's denying and delaying payment in Plaintiff's claim, Plaintiff sustained additional covered losses from mitigation and temporary repairs of the direct physical damage to the Property in an amount to be determined at trial.

29.

The Plaintiff suffered damages as a direct result of Defendant's failure to indemnify the Plaintiff for their loss.

30.

All foregoing conduct constitutes a breach of contract that has resulted in damages to the Plaintiff.

31.

**WHEREFORE,** Plaintiff prays for this Court to enter an award in Plaintiff's favor of compensatory damages, attorneys' fees, pre- and post-judgment interest, and such other and further relief as the Court may deem just and proper.

## COUNT II: BAD FAITH PURSUANT TO O.C.G.A. § 33-4-6

32.

Plaintiff hereby adopts, re-alleges, and incorporates their allegations set forth in Paragraphs 1-31 of this Complaint as if fully set forth herein.

33.

By failing to achieve a proper disposition of Plaintiff's claim, Defendant acted frivolously, and without a reasonable basis or justification, in contravention of its duty of good faith and fair dealing.

34.

Defendant did not attempt in good faith to settle the Plaintiff's claim when it could have, and should have, done so under all attendant circumstances had it acted fairly and honestly toward the Plaintiff and with due regard for the Plaintiff's interests.

35.

Defendant's failures to adjust Plaintiff's claim in good faith include, but are not limited to:

(1) Knowingly misrepresenting to claimants, and insureds, relevant facts or policy provisions relating to coverages at issue (*see* O.C.G.A. § 33-6-34(1));

(2) Failing to acknowledge with reasonable promptness pertinent communications with respect to claims arising under its policies (*see* O.C.G.A. § 33-6-34(2));

(3) Failing to adopt and implement procedures for the prompt investigation and settlement of claims arising under its policies (*see* O.C.G.A. § 33-6-34(3));

(4) Not attempting in good faith to effectuate prompt, fair, and equitable settlement of claims submitted in which liability has become reasonable clear (*see* O.C.G.A. § 33-6-34(4));

(5) Compelling insureds or beneficiaries to institute suits to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in suits brought by them (*see* O.C.G.A. § 33-6-34(5));

(6) Refusing to pay claims without conducting a reasonable investigation (*see* O.C.G.A. § 33-6-34(6));

(7) When requested by the insured in writing, failing to affirm or deny coverage of claims within a reasonable time after having completed its investigation related to such claim or claims (*see* O.C.G.A. § 33-6-34(7)); and

(8) When requested by the insured in writing, failing in the case of payments or offers of compromise to provide promptly a reasonable and accurate explanation of the basis for such action (or, in the case of claims denials, providing said denial to the insured in writing) (*see* O.C.G.A. § 33-6-34(10)).

36.

The above and foregoing actions of Defendant constitute bad faith pursuant to O.C.G.A. § 33-4-6, as the Defendant refused to pay Plaintiff's covered loss within sixty (60) days after Plaintiff's timely written demand (Ex. C) for payment without a reasonable basis for doing so.

37.

Defendant frivolously, and without a reasonable basis, denied proper indemnification to the Plaintiff for their covered loss.

38.

Defendant's refusal to indemnify the Plaintiff was done frivolously, without a reasonable basis, and in bad faith.

39.

As a result of Defendant's above-referenced bad faith breach of the Policy issued to the Plaintiff, and pursuant to O.C.G.A. § 33-4-6(a), Defendant is liable for penalties in the amount of "not more than fifty percent (50%) of the liability of the insurer for the loss, or $5,000.00, whichever is greater, and all reasonable attorneys' fees for the prosecution of the action against the Insurer."

40.

**WHEREFORE,** Plaintiff prays for this Court to enter an award, in Plaintiff's favor, of the statutory award in an amount of fifty percent (50%) of the total compensatory damages awarded or $5,000.00, whichever is greater, along with a statutory allowance for reasonable attorneys' fees in prosecuting this action, pursuant to O.C.G.A. § 33-4-6, for Defendant's unfair claims settlement practices and bad faith refusal to pay Plaintiff's loss claim when it could and should have done so, had it acted fairly and reasonably toward the insured.

## DEMAND FOR JURY TRIAL

41.

Plaintiff requests a trial by Jury on all counts of the Complaint.

## PRAYER FOR RELIEF

42.

**WHEREFORE**, Plaintiff requests that after due proceedings are had, all appropriate penalties be assessed against the Defendant and that the Plaintiff receive any and all damages at law to which they are justly entitled, and thus prays for judgment against the Defendant, as follows:

a. That this Court grant judgment in favor of the Plaintiff and against Defendant in an amount to be determined at trial for breach of insurance contract.

b. Compensatory damages, including all damages to the Plaintiff by the Defendant and any resulting expenses.

c. Bad faith damages in an amount of fifty percent (50%) of the total compensatory damages awarded or $5,000.00, whichever is greater, for Defendant's bad faith delay, denial, and its

intentional, frivolous failure to conduct a reasonable investigation of the Plaintiff's claim

without a reasonable basis;

d.   Plaintiff's attorneys' fees and costs of suit in this action;

e.   Plaintiff's consultant and expert fees;

f.   Pre- and post-judgment interest in the maximum amount allowed by law;

g.   All statutory penalties;

h.   Any and all applicable multipliers; and,

i.   Any and all other relief that the Court may deem just and proper, whether such relief sounds

in law or equity.

Dated, this 23rd day of January, 2023.

RESPECTFULLY SUBMITTED,

**The Huggins Law Firm, LLC**                      J. Remington Huggins, Esq.
110 Norcross Street                                         Georgia Bar No.: 348736
Roswell, GA 30075                                          Michael D. Turner, Esq.
(o) (770) 913-6229                                          Georgia Bar No.: 216414
(e) remington@lawhuggins.com                     Foster L. Peebles, Esq.
(e) mdturner@lawhuggins.com                      Georgia Bar No.: 410852
(e) fpeebles@lawhuggins.com                        *Attorneys for the Plaintiff*

# **EXHIBIT A**



**COMMUNITY ASSOCIATION UNDERWRITERS**

**Let Us Introduce Ourselves**

We wanted to take a moment to introduce ourselves and provide some key information and contacts in case you have any immediate questions or need any help going forward.

Your Community Association Underwriters policy includes equipment breakdown as part of your total insurance program. The Hartford Steam Boiler Inspection and Insurance Company (HSB) in partnership with Community Association Underwriters of America, Inc. (CAU) provides inspection services under their insurance program.

**In most States, the law requires that Boilers and Pressure Vessels of certain sizes must be inspected. HSB performs these inspections for CAU customers at no charge. If your Boiler or Pressure Vessel needs an inspection, call our Inspection Hotline to schedule a free inspection. If you are not sure if your equipment needs an inspection, call the Hotline and they will be able to assist you in the determination.**

We are very excited for the opportunity to provide you with this important service and look forward to working closely with you.

**Inspection Scheduling**

There are two ways to contact HSB to schedule an inspection or ask questions. They are:

**Telephone:** Inspection Hotline: (800) 333-4677

**Email:** NSCINSP_HOTLINE@hsb.com

Please provide the following:
- Identify that you are with the CAU Insurance Program
- Provide Insurance Policy Number
- Your Contact information
- Location address of the equipment
- Type of equipment

# Your Equipment Inspections Provider

© 2018 The Hartford Steam Boiler Inspection and Insurance Company. All rights reserved. This document is intended for information purposes and does not modify or invalidate any of the provisions, exclusions, terms or conditions of the policy and endorsements. For specific terms and conditions, please refer to the coverage form.

AMERICAN ALTERNATIVE INSURANCE CORPORATION
Administration Office: 555 College Road East, Princeton, NJ 08543-5241
800.305.4954
Statutory Office: 2711 Centerville Road, Suite 400 - Wilmington, DE 19805
(a stock insurance company)

**Condominium Association Insurance Policy**

## DECLARATIONS A: GENERAL POLICY INFORMATION

- Coverage applies only when a limit of insurance is shown in these declarations. These declarations are summaries, only. Please refer to the coverage forms and applicable endorsements for complete information.
- In return for the payment of the premium and subject to all the terms of this policy, we agree with you to provide the insurance stated in this policy.

**Named Insured Name and Mailing Address**
Heritage Park Condominium Association, Inc.
C/O Sage PMI Corp
1830 Water Place Ste 110
Atlanta, GA 30339

| Policy Number | Annual Premium | | Fee |
|---|---|---|---|
| CAU508389-4 | Year 1 | $47,800.00 | $0.00 |
| | Year 2 | $47,800.00 | $0.00 |
| **Policy Period** | **Effective Date*** | | **Expiration Date*** |
| | Year 1  03/25/2021 | | 03/25/2022 |
| | Year 2  03/25/2022 | | 03/25/2023 |

*12:01 AM Standard Time at your premises address

## DIRECTORY OF DECLARATIONS

| Declarations | | Page |
|---|---|---|
| A | General Policy Information | 1 |
| B | Directory of Applicable Forms | 2 |
| C | 1. Addresses and Description of Buildings and "Units" | 2 |
| D | 1. Community Property | 3 |
| | 2. "Units" | 3 |
| | 3. Additional Community Property | 4 |
| | 4. Natural Outdoor Property | 4 |
| E | Property Consequential Loss Coverages | 5 |
| F | Crime Coverages | 5 |
| G | 1. Liability Coverages | 6 |
| H | 1. Directors and Officers Liability | 6 |
| | 2. Environmental Impairment Liability | 7 |

**DREHER INSURANCE**
— ASSOCIATION SPECIALISTS —
**Dreher Insurance Agency
1805 Herrington Road
Bldg 1, Suite C
Lawrenceville, GA 30043**

**CAU**
COMMUNITY ASSOCIATION
UNDERWRITERS

Countersigned (Date)
03/11/2021

By (Authorized Representative)


## Condominium Association Insurance Policy

### DECLARATIONS B: DIRECTORY OF APPLICABLE FORMS

| Form Number and Edition Date | Form Title |
| --- | --- |
| CAU 3000 07/17 | Condominium Association Insurance Policy |
| CAU 3040 07/17 | Directors and Officers Liability Coverage Part |
| CAU 3041 07/17 | Community Manager - Directors and Officers |
| CAU 3070 07/17 | Environmental Impairment Liability Coverage Part |
| CAU 3103 12/20 | Disclosure Pursuant to Terrorism Risk Insurance Act |
| CAU 3106 06/19 | Cap on Losses from "Certified Acts of Terrorism" |
| CAU 3110 07/17 | Amended Water Exclusion |
| CAU 3111 06/19 | Two-Year Policy Term |
| CAU 3401 07/17 | Employee Dishonesty - Community Manager |
| CAU 3511 07/17 | Georgia Changes - Amendatory Endorsement |
| CAU 3600 GA 07/17 | "Fungus", Wet Rot and Dry Rot Coverage |
| CAU 3601 07/17 | Disclosure Notice to Policyholders - Georgia |

### DECLARATIONS C:   1.  ADDRESSES AND DESCRIPTION OF BUILDINGS AND "UNITS"

### 1. ADDRESSES AND DESCRIPTION OF BUILDINGS AND "UNITS"

Coverage is provided for twenty four three-story frame condominium buildings containing one hundred fifty three residential units. The premises is located at 301-311 (odd), 315-325 (odd), 329-335 (odd), 339-347 (odd), 351-357 (odd), 361-369 (odd), 373-387, 390-403, 406-421, 424-435 Heritage Park Trace, 2321-2333 (odd), 2324-2338 (even), 2337-2351 (odd), 2346-2360 (even), 2373-2383 (odd), 2387-2397 (odd), 2401-2416, 2419-2425 (odd), 2429-2435 (odd) Heritage Park Circle, Kennesaw, Cobb County, GA 30144.

Condominium Association Insurance Policy

## DECLARATIONS D: PROPERTY DIRECT COVERAGES

- Unless otherwise indicated, all Limits apply on a per occurrence basis.
  1. **COMMUNITY PROPERTY**
  2. **"UNITS"**
  3. **ADDITIONAL COMMUNITY PROPERTY**
  4. **NATURAL OUTDOOR PROPERTY**

### 1. COMMUNITY PROPERTY

| Causes of Loss | Limit of Insurance | * Deductible |
| --- | --- | --- |
| Special including "Equipment Breakdown", excluding Water Damage, Sewer Backup, Sprinkler Leakage, Ice Damming | Guaranteed Replacement Cost | $5,000  Per Occurrence |
| Water Damage, Sewer Backup, Sprinkler Leakage, Ice Damming | Guaranteed Replacement Cost | $10,000  Per Occurrence |

* In addition to the deductible which may result under D.2.

| Community Buildings | Community Structures | Community Personal Property |
| --- | --- | --- |
| All buildings described in Declarations C.1. including:<br>• Residences | All of the items listed below are covered when not forming part of, or located within, or on a building.<br>• "Swimming Pools"<br>• Statues<br>• Outdoor fixtures<br>• Pool and Pump Houses<br>• Signs<br>• Roads, drives, walkways and other paved surfaces<br>• Recreation fixtures and courts<br>• Antennas and satellite dishes<br>• Sheds<br>• Temporary seasonal structures<br>• Shelters<br>• Cabanas<br>• Freestanding walls (excluding retaining walls)<br>• Fountains<br>• Fences and gates<br>• Gazebos<br>• Gate houses<br>• Mailboxes<br>• Light and flag poles<br>• Benches | • Equipment<br>• Tools<br>• Supplies and furnishings<br>• "Money" and "Securities"<br>• Non-motorized watercraft<br>• "Computer equipment", and "Media"<br>• "Valuable papers and records"<br>• Accounts receivables |

### 2. "UNITS": All real property comprising the "unit" as initially installed in accordance with your association's original plans and specifications, or like kind and quality of such property.

| Causes of Loss | Limit of Insurance | * Deductible |
| --- | --- | --- |
| Water Damage, Sewer Backup, Sprinkler Leakage, Ice Damming | Guaranteed Replacement Cost | $10,000  Per "Unit" |

* In addition to the deductible which may result under D.1.

Condominium Association Insurance Policy

## 3. ADDITIONAL COMMUNITY PROPERTY

| Causes of Loss | Valuation | Deductible |
|---|---|---|
| Special including "Equipment Breakdown" | Replacement Cost | None |

| Covered Property | Limit of Insurance |
|---|---|
| **Additional Structures:** Bridges, Docks, Retaining Walls, Piers, Bulkheads and Wharves | $10,000 |
| **Newly Acquired Buildings and Structures** Buildings and Structures as described in D.1. above that you acquire at locations other than the location described in C.1. | $250,000 |
| **Newly Acquired Community Personal Property** Community personal property while at locations other than the "premises" | $250,000 |
| **Newly Conveyed Buildings and Structures** New buildings and structures built at the location described in C.1. | $250,000 |
| **"Personal Effects"** Personal Property of your directors and "officers" or "employees" while acting in the scope of their duties as such. | $5,000  Per Person $15,000  Per Occurrence |
| **Personal Property of Others** Personal property of others temporarily in your care, custody or control. | $5,000  Per Person $15,000  Per Occurrence |
| **Off "Premises" Community Personal Property** Community personal property while temporarily at other locations within the "coverage territory". | $50,000 |
| **Community Personal Property In Transit** Community personal property while on conveyances being operated between points in the "coverage territory". | $50,000 |
| **"Fine Arts"** Paintings, Pictures, Prints, Etchings, Sculptures, Art Glass, "Jewelry", "Furs", and other bona fide works of art of rarity, historical value or artistic merit. | $15,000  Per Item $50,000  Per Occurrence |

## 4. NATURAL OUTDOOR PROPERTY

| Causes of Loss | Valuation | Deductible |
|---|---|---|
| "Specified Causes of Loss" | Replacement Cost | None |

| Covered Property | Limit of Insurance | |
|---|---|---|
| **Trees, Lawns, Shrubs, Plants** | $1,000 | Maximum Per Tree, Plant, Lawn or Shrub |
| | $20,000 | Per Occurrence |

Condominium Association Insurance Policy

## DECLARATIONS E: PROPERTY CONSEQUENTIAL LOSS COVERAGES

Coverages apply only as a consequence of direct physical loss or damage to "covered property" caused by or resulting from a covered Cause of Loss.
- Unless otherwise indicated, all Limits apply on a per occurrence basis
- No Deductible applies to Property Consequential Loss Coverages
  1. **ORDINANCE OR LAW**
  2. **LOSS OF INCOME**
  3. **SUPPLEMENTARY PAYMENTS**

### 1. ORDINANCE OR LAW

| Covered Property | Consequential Loss Coverage | Limit of Insurance | Valuation |
|---|---|---|---|
| Community Buildings, "Units" | Undamaged Portion | Guaranteed Replacement Cost | Guaranteed Replacement Cost |
| Community Buildings, "Units" | Demolition Costs | $300,000 | Actual Loss Sustained |
| Community Buildings, "Units" | Increased Cost of Construction | $300,000 | Increased Replacement Cost |

### 2. LOSS OF INCOME

| Community Income and Maintenance Fees and Assessments; Extra Expense; Rents; Community Income; Increased Period of Restoration; other temporary operation expenses. | Limit of Insurance | Valuation |
|---|---|---|
| | Actual Loss Sustained | Actual Loss Sustained |

### 3. SUPPLEMENTARY PAYMENTS

| | | Limit of Insurance | Valuation |
|---|---|---|---|
| • Removal of Fallen Trees | $10,000 | | Actual Loss Sustained |
| | $1,000 | Maximum per Tree | Actual Loss Sustained |
| • "Pollutant" Cleanup and Removal | $25,000 | per continuous 12 month period | Actual Loss Sustained |
| • Property Removal | $300,000 | | Actual Loss Sustained |
| • Monetary Reward | $5,000 | | 10% of Paid Claim |
| • Debris Removal | $300,000 | | Actual Loss Sustained |
| • Fire Department Service Charges | $10,000 | | Actual Loss Sustained |
| • Fire Extinguisher Recharge | $1,000 | | Actual Loss Sustained |

## DECLARATIONS F: CRIME COVERAGES

- Unless otherwise indicated, all Limits apply on a per occurrence basis

| Valuation | Deductible |
|---|---|
| Actual Loss Sustained | None |

| Covered Property | Causes of Loss | Limit of Insurance |
|---|---|---|
| All "Covered Property" | "Employee Dishonesty" | $150,000 Combined Limit |
| All "Covered Property" | "Computer Fraud" | |
| "Covered Instruments" | "Depositors Forgery" | |

Condominium Association Insurance Policy

| DECLARATIONS G:    1.  LIABILITY COVERAGES - PRIMARY AND EXCESS |
|---|

**1. Liability - Primary and Excess**    Limits of Insurance apply as:
- Indemnity payments for claims or "suits" seeking damages
- Both primary and excess unless otherwise indicated

| Coverage | Limit of Insurance | Type of Limit |
|---|---|---|
| "Bodily Injury" And "Property Damage" | $1,000,000 | Per "Occurrence" |
| Products / Completed Operations | $1,000,000<br>$1,000,000 | Per "Occurrence"<br>Annual Aggregate |
| "Personal Injury" & "Advertising Injury" | $1,000,000 | Per "Offense" |
| Property Damage Legal Liability–Real Property | $1,000,000 | Per "Occurrence" |
| "Hired Auto" and "Nonowned Auto" | $1,000,000 | Per "Occurrence" |
| Medical Payments | $5,000 | Per Accident |
| Garage and Parking Areas Legal Liability | | |
| Comprehensive Coverage | $500 Deductible Applies<br>Per "Occurrence" | |
| | $25,000 | Per "Occurrence" Limit |
| Collision Coverage | $500 Deductible Applies<br>Per "Occurrence" | |
| | $25,000 | Per "Occurrence" Limit |

| DECLARATIONS H: CLAIMS MADE LIABILITY COVERAGES |
|---|

   **1.  DIRECTORS AND OFFICERS LIABILITY COVERAGE**
   **2.  ENVIRONMENTAL IMPAIRMENT LIABILITY COVERAGE**

| **1. DIRECTORS AND OFFICERS LIABILITY - CLAIMS MADE** |
|---|

  Limits of Insurance apply as:   •  Indemnity payments for "claims" or "suits" seeking pecuniary relief.
                        •  "Defense costs" for "claims" or "suits" seeking non-pecuniary relief.

| Coverage | Limit of Insurance |
|---|---|
| **Directors and Officers Liability** | $1,000,000  Each "Wrongful Act" |
| | $1,000,000  Aggregate |

Retroactive Date:  _____NONE_____

**This insurance does not apply to "loss" because of "wrongful acts" which took place before the Retroactive Date.**

Optional Extended Reporting Period:  _____3 years_____

The premium for the Optional Extended Reporting Period is:  _____$1,418_____

Condominium Association Insurance Policy

## 2. ENVIRONMENTAL IMPAIRMENT LIABILITY - CLAIMS MADE AND REPORTED

Limits of Insurance apply as:   •   Indemnity payments and "defense costs" for "claims" seeking damages arising out of "pollution conditions".

| Coverage | Limit of Insurance | |
|---|---|---|
| **Environmental Impairment Liability** | $500,000 | Each "Loss" |
| | $500,000 | Aggregate |
| | $5,000 | Retained Limit Each "Loss" |

Retroactive Date: _____NONE_____

**This insurance does not apply to "loss" from "pollution conditions" which took place before the Retroactive Date.**

Optional Extended Reporting Period: _____1 year_____

The premium for the Optional Extended Reporting Period is: _____$682_____

*NOTICE*
*Any emergency arising out of "pollution conditions" covered by Environmental Impairment Liability Coverage should be reported immediately to the on call 24 hour hotline at 1-800-432-2481, administered by XL Specialty Claims, a division of the XL Insurance Companies.*

Condominium Association Insurance Policy

In Witness Whereof, American Alternative Insurance Corporation has caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our duly authorized representative.

*Michael Kerner*

Michael G. Kerner
President and Chief Executive Officer

Ignacio Rivera
Deputy General Counsel and Assistant Secretary

## Directors and Officers Liability Coverage Part

# This Coverage Part Provides Claims Made Coverage.
# Coverage Applies only when a Limit is shown in the "Declarations".

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the "Declarations". "We", "us" and "our" refer to the company providing this insurance. Words and phrases that appear in quotation marks have special meaning. Refer to XXII DEFINITIONS SECTION and VII. DIRECTORS AND OFFICERS ADDITIONAL CHANGES.

**THE WORD INSURED MEANS ANY PERSON OR ORGANIZATION QUALIFYING AS SUCH UNDER III. DIRECTORS AND OFFICERS LIABILITY WHO IS AN INSURED SECTION.**

## I. DIRECTORS AND OFFICERS LIABILITY COVERAGE SECTION

### A. INSURING AGREEMENT

We will pay on behalf of the insured all sums the insured becomes legally obligated to pay as "loss" because of a "wrongful act" committed in the "coverage territory", to which this insurance applies. Insurance provided by this Directors and Officers Liability Coverage Part applies to "loss" only if:

1. The "wrongful act" is committed on or after the Retroactive Date, if any, shown in the "Declarations" and before the end of the "policy period"; and

2. A "claim" for "loss" because of a "wrongful act" is first made against any insured and reported to us in accordance with VI.C. REPORTING AND NOTICE and VI.D. OTHER DUTIES IN THE EVENT OF "WRONGFUL ACT", "CLAIM", OR "SUIT" during the "policy period" or an Extended Reporting Period we provide under V. DIRECTORS AND OFFICERS LIABILITY EXTENDED REPORTING PERIOD SECTION.

We may investigate any "claim" or "suit" at our discretion. We have certain rights and obligations for defense and settlement of "claims" and "suits" as described in Paragraphs B. and C. below.

No other obligation or liability to pay "loss" or perform acts or services is covered unless specifically provided for under IV. DIRECTORS AND OFFICERS LIABILITY LIMITS OF INSURANCE SECTION, V. DIRECTORS AND OFFICERS LIABILITY EXTENDED REPORTING PERIODS SECTION, or VI. DIRECTORS AND OFFICERS CONDITIONS SECTION.

### B. DEFENSE AND PAYMENT

Our rights and obligations with regard to defense and payment are as follows:

1. Pecuniary Relief - Defense and Payment

   a. Even if the allegations are groundless, false or fraudulent, we will have the right and duty to defend against any "claim" or "suit" seeking "loss" to which the Insuring Agreement applies.

   b. Our duty to defend against any "claim" or "suit" seeking "loss" ends when we have exhausted the applicable limit of insurance paying "loss".

   c. In any "claim" or "suit" for "loss", no "defense costs" may be incurred without our consent which will not be unreasonably withheld. We will not be liable for any "defense costs" to which we have not consented.

   d. We may settle such "claim" or "suit" within the limit of insurance available at the time of settlement.

   e. No payment for "loss" may be made without our consent which will not be unreasonably withheld. We will not be liable for any settlement for "loss" to which we have not consented.

2. Nonpecuniary Relief - Defense

   a. Even if the allegations are groundless, false or fraudulent, we will have the right and duty to defend against any "claim" or "suit" seeking nonpecuniary relief.

   b. The most we will pay for "defense costs" for any "claim" or "suit" seeking nonpecuniary relief is the dollar amount indicated as the Each Wrongful Act Limit shown on the Declarations. The insured shall not unreasonably withhold consent to any reasonable settlement offer.

### C. DEFENSE OF "CLAIM" OR "SUIT" SECTION

1. At our option, we may consent to the defense of any such "claim" or "suit" by the insured. With regard to any "claim" or "suit" we allow an insured to defend, we have the right to associate with such insured's defense counsel and to monitor and be advised of defense strategies and activities and expenses for defense as they are incurred.

2. Even if we initially defend or initially pay to defend any "claim" or "suit", we may later determine that there is no coverage for such "claim" or "suit". In that event, we have the right to reimbursement from you for the

Includes copyrighted material of Insurance Services Office, Inc. with its permission

## Directors and Officers Liability Coverage Part

# This Coverage Part Provides Claims Made Coverage.

"defense costs" we incur from the date we notify you in writing of our:

a. Determination that coverage does not apply; or

b. Reservation of our rights to terminate the defense or payment for the defense; and

c. Intention to seek reimbursement of our "defense costs".

## II. DIRECTORS AND OFFICERS LIABILITY EXCLUSIONS SECTION

**This insurance does not apply to any "claim" or "suit" seeking "loss" or nonpecuniary relief:**

## A. PRIOR WRITTEN NOTICE

Arising out of the same facts or circumstance if written notice of such facts or circumstance has been received by you under any policy the term of which has expired prior to or upon the inception of the current "policy period".

## B. PRIOR LITIGATION

Arising out of:

1. Any litigation commencing prior to or pending as of the policy effective date of the current "policy period" including, but not limited to "claims", demands, causes of action, legal or quasi-legal proceedings, decrees or judgments against any insured of which any other insured had received notice or otherwise had knowledge as of such date;

2. Any subsequent litigation arising from or based on substantially the same matters as alleged in the pleadings of such prior or pending litigation; or

3. Any act of any insured which gave rise to such prior or pending litigation.

## C. EMPLOYMENT-RELATED PRACTICES

Arising out of or in any way related to:

1. Refusal to employ;

2. Termination of employment; or

3. Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, or discrimination in the employment, or other employment related practices, policies, acts or omissions.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages.

## D. DISCRIMINATION

Arising out of any violation of any civil rights laws whether federal, state, or local ordinance.

This includes, but is not limited to, discrimination on account of race, religion, sex, age, familial status, or handicap. This does not include any act of discrimination excluded under II.C. EMPLOYMENT RELATED PRACTICES.

However, this exclusion does not apply to our duty to defend provided under I.B. DEFENSE AND PAYMENT, 1. and 2. Your consent to settlement shall not be unreasonably withheld.

## E. EMPLOYEE BENEFITS AND E.R.I.S.A.

1. Based upon any actual or alleged violation of the responsibilities, obligations or duties imposed upon fiduciaries by:

   a. The Employee Retirement Income Security Act, ERISA, of 1974, Public Law 93-406, any amendment of it or similar provisions of federal, state or local statutory or common law; or

   b. Any "private employee benefits" or "public employee benefits".

2. Based upon any other error or omission with regard to any "private employee benefits" or "public employee benefits".

## F. "MONEY" AND "SECURITIES"

1. For profit or "loss", or any accounting of it, resulting from the purchase, sale, or disposition of "securities".

2. Where all or part of such "claim" is directly or indirectly, based on, attributable to, caused by, arising out of, resulting in, or relating in any way to loss of "money" and "securities".

## G. REMUNERATION AND PERSONAL PROFITS

Any personal profit, remuneration, or advantage gained by any insured to which they were not legally entitled.

A "wrongful act" committed by any insured shall not be imputed to any other insured for the purposes of applying this exclusion.

## H. BREACH OF CONTRACT

For breach of contract or agreement.

However, this exclusion does not apply to our duty to defend provided under I.B. DEFENSE AND PAYMENT, 1. and 2.

## I. DISHONEST ACTS

Arising out of any dishonest, fraudulent, criminal, or malicious act, including fines and penalties resulting from these acts.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

## Directors and Officers Liability Coverage Part

## This Coverage Part Provides Claims Made Coverage.

A "wrongful act" committed by any insured shall not be imputed to any other insured for the purposes of applying this exclusion.

### J.  FAILURE TO TAKE LEGAL ACTION

Arising out of or related to the failure of the insured to institute any legal action against the developer or any other person for "claims" related to any damage, destruction, or deterioration of any tangible property including without limitation construction defects, whether or not as a result of faulty or incorrect design or architectural plans, improper soil testing, inadequate or insufficient protection from soil and/or ground water movement, soil subsidence, or as a result of the supervision or actual construction, manufacturing, or assembly of any tangible property.

However, this exclusion does not apply to our duty to defend provided under I.B. DEFENSE AND PAYMENT, 1. and 2.

### K.  INJURY AND DAMAGE

Where all or part of such "claim" or "suit" is directly or indirectly, based on, attributable to, caused by, arising out of, resulting in, or relating in any way to "bodily injury", "property damage", "personal injury" or "advertising injury".

### L.  INSURANCE

Arising from, based upon or attributable to any failure or omission on the part of the insured to use, effect, or maintain adequate insurance or bonds of any kind.

### M.  ASBESTOS

Based on, caused by, attributable to, related to, or in any manner and at any time arising out of:

1.  The use, installation, storage, withdrawal, removal, encapsulation, destruction, containment, testing, distribution, ownership, sale, or disposal of asbestos, asbestos dust, asbestos fibers or material containing asbestos;

2.  Exposure to asbestos, asbestos dust, asbestos fibers, or material containing asbestos; or

3.  Any error or omission in supervision, instructions, recommendations, notices, warnings, or advice given, or which should have been given, in connection with asbestos, asbestos dust, asbestos fibers, or material containing asbestos.

### N.  POLLUTION

Based upon, attributable to, or arising out of:

1.  The actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time;

2.  Any request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

3.  A "claim" or "suit" brought by or on behalf of any governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

### O.  NUCLEAR ENERGY

1.  With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Energy Insurance Association of Canada, or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

2.  Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

    a.  Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law that amends it; or

    b.  The insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America or any of its agencies, under any agreement entered into by the United States of America, or any of its agencies, with any person or organization.

3.  Resulting from the "hazardous properties" of "nuclear material" if:

    a.  The "nuclear material" is at any "nuclear facility" owned by, or operated by or on behalf of an insured or has been discharged or dispersed therefrom;

    b.  The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported, or disposed of by or on behalf of an insured; or

    c.  The "loss", including all forms of radioactive contamination of property, arising out of the furnishing by an insured of services, materials, parts, or equipment in connection with the planning, construction, maintenance, operation, or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this

## Directors and Officers Liability Coverage Part

## This Coverage Part Provides Claims Made Coverage.

exclusion c. applies only to "property damage" to such "nuclear facility" and any property thereat.

### P. ROT, MOLD, AND MILDEW OR OTHER FUNGI

Based upon or arising out of the exposure to, required removal or abatement of rot, mold or mildew, or other fungi, regardless of whether such rot, mold, or mildew, or other fungi, ensues from any cause or condition on, at, under or emanating from or to the premises, including but not limited to any such cause or condition involving the presence, discharge, or infiltration of moisture, vapor, water, or any other liquid, or any damage related to any of these.

### Q. "CYBER LIABILITY"

Based upon or arising out of:

1. The unauthorized use of, or unauthorized access to, electronic "data" or software within your network or business;

2. The functioning, nonfunctioning, improperly functioning, availability, or unavailability of:

   a. The internet or similar facility;

   b. Any intranet or private network or similar facility; or

   c. Any website, bulletin board, chat room, search engine, portal or similar third party application service.

3. Any alteration, corruption, destruction, distortion, erasure, "theft" or other loss of or damage to "data", software, information repository, microchip, integrated system or similar device in any computer equipment or non-computer equipment or any kind of programming or instruction set; or

4. Any loss of use or functionality, whether partial or entire, of "data", coding, program, software, any computer or computer system or other device dependent upon any microchip or embedded logic and any ensuing inability or failure of any insured to conduct business.

5. Unauthorized use of, or unauthorized access to electronic "data" or software within your network or business.

6. Unauthorized access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of non-public information.

7. Any requirement to incur expenses for the notification or credit monitoring of affected parties whose confidential or personal information was compromised or any other related cost or expense.

### R. PROFESSIONAL SERVICE

Based upon or arising out of the rendering or failure to render any professional service by an insured, including but not limited to:

   a. Legal, accounting, or advertising services;

   b. Engineering or Architectural services;

   c. Medical, surgical, dental, x-ray, or nursing services or treatment;

   d. Any health service or treatment;

   e. Any cosmetic or tonsorial service or treatment;

   f. Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

   g. Ear or body piercing services; and

   h. Services in the practice of pharmacy.

However, this exclusion does not apply to any services required to be performed by you as established by your governing documents.

### S. WAR

Based upon or arising out of "war" or any act or condition incidental to "war".

### T. COMPLIANCE WITH ADA REQUIREMENTS

Based upon or arising out of your failure to comply with any of the accommodations for persons with disabilities as required by, or as the result of physical modifications made to accommodate any person pursuant to, the Americans With Disabilities Act, including any amendments to, or rules or regulations promulgated pursuant to this law, or similar provisions of any federal, state or local law to the extent that they prescribe responsibilities or duties concerning the same acts or omissions.

However, this exclusion does not apply to our duty to defend provided under I.B. DEFENSE AND PAYMENT, 1. and 2.

### III. DIRECTORS AND OFFICERS LIABILITY WHO IS AN INSURED SECTION

### A. EACH OF THE FOLLOWING IS AN INSURED:

1. You and any "subsidiary" named in the "Declarations";

2. Any person who has been, now is, or shall become a duly elected or appointed director or trustee, a duly elected or appointed officer, a "covered employee", or "committee member", whether or not salaried, and any

Includes copyrighted material of Insurance Services Office, Inc. with its permission

## Directors and Officers Liability Coverage Part

# This Coverage Part Provides Claims Made Coverage.

of your members acting at the direction of your board of directors on your behalf in a voluntary capacity;

3. Legal representatives or assigns of any insured in 1. or 2. above who is insolvent, incompetent or bankrupt.

4. Estates, heirs and legal representatives

In the event of the death, incapacity or bankruptcy of any natural person insured in 2. or 3. above, any "claim" or "suit" against his or her estate, heirs, legal representatives, or assigns based on actual or alleged "wrongful acts" of such insureds shall be deemed to be a "claim" or "suit" against such insured for the purposes of this Directors and Officers Liability Coverage Part.

5. Marital Estate

We shall cover "loss" arising from any "claim" made against the lawful (as determined by the applicable jurisdiction) spouse of any natural person insured or partner in a civil union in 2. or 3. above if such "claim" arises solely out of the spousal relationship to the insured person. This coverage includes "claims" that seek damages recoverable from marital community property, property jointly held by the insured person and spouse or partner in a civil union, and property transferred from the insured person to spouse or partner in a civil union. However, we shall not cover any "claim" for any actual or alleged "wrongful act" committed by the spouse, himself or herself, or partner in a civil union of any such insured person. All provisions of this Directors and Officers Liability Coverage Part, including the application of any retention, which apply to the insured person, also apply to the spouse or partner in a civil union.

### B. NONE OF THE FOLLOWING IS AN INSURED:

1. Your builder, developer or sponsor, or any person or organization affiliated with your builder, developer, or sponsor in any capacity.

2. Other than your employee, any person or organization performing community management duties for you.

### IV. DIRECTORS AND OFFICERS LIABILITY LIMITS OF INSURANCE SECTION

The limits of insurance shown in the "Declarations" and the provisions of this section determine the most we will pay for "loss" regardless of the number of:

1. Insureds and additional insureds;

2. "Claims" made or "suits" brought; or

3. Persons or organizations making "claims" or bringing "suit".

### A. LIMITS OF INSURANCE ARE SUBJECT TO THE FOLLOWING:

1. The Aggregate Limit shown in the "Declarations" is the most we will pay for "loss" covered by this Coverage Part.

   If the Aggregate Limit is exhausted by the payment of "loss", we will have no further obligations or liability of any kind under this Coverage Part.

2. Subject to 1. above, the Each Wrongful Act Limit shown in the "Declarations" is the most we will pay because of all "loss" arising out of any one "wrongful act".

3. The limits of this Directors and Officers Liability Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the "policy period" shown in the "Declarations", unless the "policy period" is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the limit of insurance.

4. All "claims" arising out of all interrelated "wrongful acts" of insureds will be deemed one "claim", and such "claim" will be deemed to have originated in the earliest "policy period" in which any of such "claims" is first made against an insured.

### V. DIRECTORS AND OFFICERS LIABILITY EXTENDED REPORTING PERIOD SECTION

We will provide an Automatic Extended Reporting Period as described in A. below and, if you purchase it, an Optional Extended Reporting Period Endorsement as described in B. in the event of any "termination of coverage".

### A. AUTOMATIC EXTENDED REPORTING PERIOD

1. The Automatic Extended Reporting Period starts with the end of the "policy period" and lasts for 90 days.

2. The Automatic Extended Reporting Period applies only if no subsequent insurance you purchase applies to the "claim", or would apply but for the exhaustion of its limit of insurance.

3. The Automatic Extended Reporting Period may not be canceled.

4. The Automatic Extended Reporting Period is provided without additional charge.

### B. OPTIONAL EXTENDED REPORTING PERIOD ENDORSEMENT

1. If you purchase the Optional Extended Reporting Period Endorsement, the Optional Extended Reporting

## Directors and Officers Liability Coverage Part

# This Coverage Part Provides Claims Made Coverage.

Period will start upon the expiration of the Automatic Extended Reporting Period and will last for three years.

2. The cost for the Optional Extended Reporting Period is shown in the "Declarations".

3. We will offer the Optional Extended Reporting Period upon a "termination of coverage", unless the policy is canceled for nonpayment of premium, or fraudulent activities of an insured.

4. We will issue that Endorsement if the first Named Insured shown in the "Declarations" makes a written request to us for it which we receive within 60 days after the date of "termination of coverage".

5. The Optional Extended Reporting Period Endorsement will not take effect unless the additional premium is paid when due. If that premium is paid when due, the Endorsement may not be canceled.

### C. EXTENDED REPORTING PERIOD CONDITIONS

Extended Reporting Periods are subject to the following conditions:

1. A "claim" first made during the Extended Reporting Period will be deemed to have been made on the last day of the "policy period", provided that the "claim" is for "loss" from "wrongful acts" which took place before the end of the "policy period" but not before any applicable Retroactive Date.

   Extended Reporting Periods do not extend the "policy period" or change the scope of coverage provided.Extended Reporting Periods apply only to the coverage terminated or reduced.

2. Extended Reporting Periods do not reinstate or increase the limits of liability applicable to this Directors and Officers Liability Coverage Part.

3. If this Directors and Officers Liability Coverage Part is canceled and you elect to purchase the Optional Extended Reporting Period Endorsement:

   a. Any return premium due to you for the cancellation will be credited to the premium due for the Optional Extended Reporting Period Endorsement; and

   b. Any additional premium due to us for the period the policy was in force must be fully paid before any payments can be applied to the premium due for the Optional Extended Reporting Period Endorsement.

### VI. DIRECTORS AND OFFICERS LIABILITY CONDITIONS SECTION

**The Directors and Officers Liability Coverage Part is subject to the following conditions:**

### A. LEGAL ACTION AGAINST US

1. No person or organization has a right under this Directors and Officers Liability Coverage Part:

   a. To join us as a party or otherwise bring us into a "suit" against any insured; or

   b. To sue us on this Directors and Officers Liability Coverage Part unless all of its terms have been fully complied with.

2. A person or organization may sue us to recover on an "agreed settlement" or on a final judgment against an insured obtained after an actual trial; but we will not be liable for "loss" or "defense costs" that are not payable under the terms of this Directors and Officers Liability Coverage Part or that are in excess of the applicable limit of insurance.

### B. BANKRUPTCY

Bankruptcy or insolvency of the insured, or of the insured's estate will not relieve us of our obligation under this Directors and Officers Liability Coverage Part.

### C. REPORTING AND NOTICE

1. A "claim" shall be considered to have been first reported to us either:

   a. At the time that any insured first gives written notice to us that a "claim" has been made against the insured for such "wrongful act"; or

   b. At the time that any insured first gives written notice to us of:

      (1) The material facts or circumstances relating to such "wrongful act" as facts or circumstances having the potential of giving rise to a "claim" being made against the insured; or

      (2) The receipt of written or verbal notice from any party that is the intention of such party to hold the insured responsible for such "wrongful act".

2. The insured shall, as a condition precedent to their rights under this policy, give to us written notice as soon as practicable of any "claim" made against any of them for a "wrongful act" and shall give us such information and cooperation as we may reasonably require.

### D. OTHER DUTIES IN THE EVENT OF "WRONGFUL ACT", "CLAIM", OR "SUIT"

Failure to perform these duties will impair your rights under this Directors and Officers Liability Coverage Part.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

## Directors and Officers Liability Coverage Part

## This Coverage Part Provides Claims Made Coverage.

1. You must see to it that we are notified as soon as practicable of any "wrongful act" which may result in a "claim". To the extent possible, notice should include:

   a. How, when, and where the "wrongful act" took place;

   b. The names and addresses of any persons involved in the "wrongful act" and witnesses; and

   c. The nature of the harm resulting from the "wrongful act".

2. Notice of a "wrongful act" is not notice of a "claim".

3. If a "claim" is made against or received by an insured, you must:

   a. Immediately record the specifics of the "claim" and the date received; and

   b. Notify us in writing as soon as practicable.

4. You and any other involved insured must:

   a. Immediately send us copies of any demands, notices, summonses, or legal papers received in connection with the "claim" or "suit";

   b. Authorize us to obtain records and other information;

   c. Cooperate with us in the investigation, settlement, or defense of the "claim" or "suit"; and

   d. Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of "loss" to which this insurance may apply.

5. No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

### E. REPRESENTATIONS AND SEVERABILITY

1. In granting coverage under this Directors and Officers Liability Coverage Part to any one of the insureds, we have relied upon the declarations and statements in the application, including submitted materials and, if this is a renewal application, all such previous applications for which this coverage is a renewal. Declarations and statements are the basis of coverage and will be considered as incorporated in and constituting part of the Directors and Officers Liability Coverage Part.

2. The application for coverage will be construed as a separate application for coverage by each of the insureds. With respect to the declarations and statements contained in such written application for coverage, no statement in the application or knowledge

possessed by an insured will be imputed to any other insured for the purpose of determining the availability of coverage with respect to "claims" made against the insured whether or not your Association grants indemnification.

3. Except with respect to the limit of insurance, and any rights or duties specifically assigned to the first Named Insured, this insurance applies:

   a. As if each Named Insured were the only Named Insured; and

   b. Separately to each insured against whom "claim" is made or "suit" is brought.

### F. OTHER INSURANCE

This insurance is excess of any other valid and collectible insurance whether primary, excess, contingent, or any other basis, except such other insurance as is written specifically to be excess over this insurance.

The other insurance will be deemed valid and collectible regardless of:

1. Any defense asserted by any other insurer because of the insured's failure to comply with the terms of that insurance; or,

2. The inability of any other insurer to pay because bankruptcy or insolvency.

### G. NEWLY CREATED OR ACQUIRED "SUBSIDIARIES"

1. If any "subsidiary", created or acquired by the Named Insured after the inception of this Directors and Officers Liability Coverage Part, qualifies as a not-for-profit organization under the provision of Internal Revenue Code and would have been included as an insured under III. DIRECTORS AND OFFICERS LIABILITY WHO IS AN INSURED SECTION, such "subsidiary" will be included subject to:

   a. The giving of written notice of such creation or acquisition to us as soon as practical, but in no event more than 120 days following such creation or acquisition; and

   b. The giving of any underwriting information and the payment of any additional premium required by us.

2. If any "subsidiary" created or acquired by the Named Insured after the inception of this policy, does not qualify as a not-for-profit organization under the provisions of the Internal Revenue Code, such "subsidiary" will not be included until the insured has:

Includes copyrighted material of Insurance Services Office, Inc. with its permission

## Directors and Officers Liability Coverage Part

## This Coverage Part Provides Claims Made Coverage.

a. Given written notice of such creation or acquisition together with any underwriting information which may be required; and

b. Received written approval from us and paid any additional premium required.

### H. CONSOLIDATION OR MERGER

In the event that the Named Insured acquires by merger, or consolidates with, or is merged into, or acquired by any other organization after the inception of this policy, immediate written notice thereof will be given to us together with such information as we may require. You will pay any additional premium required by us.

### I. TRANSFER OF RIGHTS OF RECOVERY

In the event of any payment under this Directors and Officers Liability Coverage Part, we will be subrogated to the extent of such payment to all the insured's rights of recovery. In such case the insured will execute all papers required and will do everything necessary to secure and preserve such right including the execution of such documents necessary to enable us effectively to bring "suit" in the name of the insured.

### VII. DIRECTORS AND OFFICERS LIABILITY ADDITIONAL CHANGES

The following definitions are added to **XXII. DEFINITIONS SECTION** of the policy to which this Directors and Officers Liability Coverage Part is attached:

1. **"Claim(s)"** (DIRECTORS AND OFFICERS LIABILITY) means:

   a. A written demand, sent by a person or organization, demanding either damages or the performance of a specific act, or both; or

   b. "Suit".

2. **"Covered employee"** (DIRECTORS AND OFFICERS LIABILITY) means:

   a. Any natural person:

   (1) While in your service (and for 30 days after termination of service);

   (2) Whom you compensate directly by salary, wages or commissions; and

   (3) Whom you have the right to direct and control while performing services for you.

   b. Any natural person employed by an employment contractor while that person is subject to your direction and control and performing services for you. However, any such person is excluded while

having care and custody of property outside the "premises".

   c. Other than your employee, any person or any organization while acting as your community manager.

3. **"Defense costs"** (DIRECTORS AND OFFICERS LIABILITY) means:

   a. All expenses we incur;

   b. Costs, charges and expenses (other than regular or overtime wages, salaries or fees of your trustees, directors, officers, community managers, or employees) incurred at our request or with our written consent in the defense of legal actions, "suits", "claims", or proceedings and appeals therefrom and the cost of appeal, attachment or similar bonds. We do not have to furnish these bonds.

   c. All reasonable expenses incurred by an insured at our request to assist us in the investigation or defense of the "claim" or "suit" including actual loss of earnings up to $250 a day, per person, because of time off from work. "Defense costs" does not include salaries, wages, fees, hourly charges, or overhead of, or paid to, an insured.

   d. The cost of bonds to appeal a judgment or award in any "suit" we defend.

4. **"Loss"** (DIRECTORS AND OFFICERS LIABILITY) means the damages the insured is legally obligated to pay because of judgments or settlements arising out of "claims" or "suits" alleging "wrongful acts".

   "Loss" does not include civil or criminal fines, sanctions, or penalties imposed by law, taxes, or any other matter deemed uninsurable pursuant to applicable law.

   "Loss" does not include "defense costs".

5. **"Private employee benefits"** (DIRECTORS AND OFFICERS LIABILITY) means:

   a. Group Life Insurance;

   b. Group Accident, Health, Disability, and Dental Insurance;

   c. Profit-Sharing Plans;

   d. Pension Plans;

   e. Employee Stock Subscription Plans;

   f. Employee Travel, Vacation, or Savings Plans; or

   g. Accident, Health, Disability, and Dental Insurance.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

## Directors and Officers Liability Coverage Part

## This Coverage Part Provides Claims Made Coverage.

6.  **"Public employee benefits"** (DIRECTORS AND OFFICERS LIABILITY) means:

    a.  Workers Compensation;

    b.  Unemployment Insurance;

    c.  Social Security;

    d.  Any other disability income program required or provided by statute or other law; or

    e.  Accident, Health, Disability, and Dental Insurance.

7.  **"Suit(s)"** (DIRECTORS AND OFFICERS LIABILITY) means a civil proceeding in which damages or nonpecuniary relief to which this insurance applies are alleged.

    "Suit" includes:

    a.  An arbitration proceeding in which such damages or nonpecuniary relief are claimed and to which you must submit or do submit with our consent; or

    b.  Any other alternative dispute resolution proceeding in which such damages or nonpecuniary relief are claimed and to which you submit with our consent.

    c.  A civil proceeding commenced by the service of a complaint or similar pleading.

    d.  A formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order, or similar document.

8.  **"Termination of coverage"** (DIRECTORS AND OFFICERS LIABILITY) means any cancellation or nonrenewal of the Directors And Officers Coverage Part.

9.  **"Wrongful act(s)"** (DIRECTORS AND OFFICERS LIABILITY) means any negligent error, misstatement or misleading statement, act or omission, or neglect or breach of duty committed, attempted, or allegedly committed or attempted, by any insured in the discharge of duties to you, or any matter claimed solely by reason of service in such capacity.

    All errors, statements, acts, omissions, neglects or breaches of duty or matters claimed solely by reason of service in the discharge of duties to you which are causally connected, whether involving one or more of the insureds shall be deemed interrelated "wrongful acts".

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## ■   Community Manager - Directors and Officers

This endorsement modifies insurance provided by the Directors and Officers Liability Coverage Part under the following:

CONDOMINIUM ASSOCIATION INSURANCE POLICY
COOPERATIVE APARTMENT INSURANCE POLICY
HOMEOWNERS ASSOCIATION INSURANCE POLICY
OFFICE CONDOMINIUM ASSOCIATION INSURANCE POLICY

1.  Paragraph A. of III. DIRECTORS AND OFFICERS LIABILITY WHO IS AN INSURED SECTION is amended by the addition of the following:

   Any person or organization acting as community manager for the Named Insured while performing community management duties for the Named Insured, but only with respect to liability for "wrongful acts" committed at the express direction of the Named Insured. However, your community manager is not an insured for "claims" or "suits" brought against them by you.

2.  Paragraph B.2 of III. DIRECTORS AND OFFICERS LIABILITY WHO IS AN INSURED SECTION is deleted in its entirety.


All other terms and conditions of this policy remain unchanged by this endorsement.

## Environmental Impairment Liability Coverage Part

## This Coverage Part Provides Claims Made Coverage.

Throughout this policy, the words, "you" and "your" refer to the named insured shown in the "Declarations". "We", "us" and "our" refer to the company providing this insurance. Other words and phrases that appear in quotation marks have special meanings. Refer to XXII. DEFINITIONS SECTION of the policy and VII. ENVIRONMENTAL IMPAIRMENT LIABILITY ADDITIONAL CHANGES.

The word insured means any person or organization qualifying as such under III. ENVIRONMENTAL IMPAIRMENT LIABILITY WHO IS AN INSURED SECTION.

**This Environmental Impairment Liability Coverage Part along with XXI. COMMON POLICY CONDITIONS SECTION and XXII. DEFINITIONS SECTION of the policy contain all our obligations regarding this coverage. We have no other obligation unless the policy, that this Environmental Impairment Liability Coverage Part is part of, is amended accordingly.**

**I.   ENVIRONMENTAL IMPAIRMENT LIABILITY COVERAGE SECTION**

**A.   ENVIRONMENTAL IMPAIRMENT LIABILITY**

We shall pay "loss" the insured becomes legally obligated to pay as the result of "claim(s)" first made against the insured during the "policy period". Insurance is provided by this Environmental Impairment Liability Coverage Part for any "claim(s)" or "suit(s)" made or brought in the "coverage territory" and:

1.   Arising out of "pollution conditions" on, at, under or emanating from the locations(s) stated in the "Declarations"; and,

2.   Reported to us in accordance with VI.C. ENVIRONMENTAL IMPAIRMENT LIABILITY CONDITIONS SECTION; and,

3.   Reported to us during the "policy period" or where applicable, the extended reporting period in accordance with V. ENVIRONMENTAL IMPAIRMENT LIABILITY EXTENDED REPORTING PERIOD SECTION.

**B.   DEFENSE AND PAYMENT**

1.   Even if the allegations are groundless, false or fraudulent, we will have the right and duty to defend against any "claim(s)" or "suit(s)".

2.   "Defense costs" are subject to the following:

a.   We may investigate any "claim(s)" or "suit(s)" at our discretion.

b.   Our right and duty to defend ends when we have exhausted the limit of insurance in the payment of "loss".

c.   Subject to I.B.3., we may, at our option, give you our consent to defend any "claim(s)" or "suit(s)"

d.   Subject to I.B.3., no "defense costs" will be incurred or settlements made without our consent, which will not be unreasonably withheld. We will not be liable for any settlements or "defense costs" to which we have not consented in writing.

3.   Subject to the following, if the limits of insurance stated in the "Declarations" has been or soon will be exhausted, we will transfer to you control of any existing defense:

a.   We will notify you in writing as soon as reasonably possible. We will advise you that our duty to defend either has terminated or is about to terminate subject to the payment of the limit of insurance. We will advise you that we will no longer handle the defense of any "claim(s)" or "suit(s)" reported to us after the date we provide this notice.

b.   We will take immediate and appropriate steps to transfer control to you of any existing defense at the time of or prior to exhaustion of the limit of insurance. You will agree to reimburse us for any reasonable costs we incur in connection with the transfer of the defense.

c.   We will take appropriate steps necessary to defend the "claim(s)" or "suit(s)" during the transfer of the defense and to attempt to avoid any unfavorable legal action provided that the insured cooperates with the transfer.

d.   The exhaustion of the limit of insurance by the payment of "loss" will not be affected by our failure to comply with any of the provisions of this section.

4.   Even if we initially defend or initially pay to defend any "claim(s)" or "suit(s)", we may later determine that there is no coverage for "claim(s)" or "suit(s)".

## Environmental Impairment Liability Coverage Part

# This Coverage Part Provides Claims Made Coverage.

In that event, we have the right to reimbursement for the "defense costs" we incur from the date we notify you, in writing, of our:

a.  Determination that coverage does not apply;

b.  Reservation of our rights to terminate the defense or payment for the defense; and

c.  Intention to seek reimbursement of our "defense costs".

## II.   ENVIRONMENTAL IMPAIRMENT LIABILITY EXCLUSIONS SECTION

This insurance does not apply to "loss" based upon or arising out of any of the following:

### A.   KNOWN CONDITIONS

"Pollution conditions" existing prior to the inception of this policy that are known to any insured and that were not disclosed to us in writing in the application or related materials prior to the inception of this policy.

### B.   MULTIPLE DAMAGES/FINES/PENALTIES

Civil, administrative or criminal fines or penalties, assessments, punitive, exemplary or multiplied damages. However, this exclusion does not apply to punitive, exemplary or multiplied damages where insurance coverage is allowable by law.

### C.   "EMPLOYERS LIABILITY"

"Bodily injury" to:

1.  An "employee" of an insured arising out of and in the course of:

    a.  Employment by the insured; or

    b.  Performing duties related to the conduct of the insured's business; or

2.  The spouse, child, parent, brother or sister of that "employee" as a consequence of subparagraph 1. above.

This exclusion applies:

1.  Whether an insured may be liable as an employer or in any other capacity; and,

2.  To any obligation to share damages with or repay someone else who must pay damages because of the injury.

### D.   WORKERS' COMPENSATION AND SIMILAR LAWS

Any obligation of any insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

### E.   CONTRACTUAL LIABILITY

Liability of others assumed by any insured under any contract or agreement unless the liability would exist in the absence of a contract or agreement.

### F.   INSURED'S PROPERTY/BAILEE LIABILITY

"Property damage" to property owned, leased or operated by or in the care, custody or control of any insured, even if such "property damage" is incurred to avoid or mitigate "loss" which may be covered under this policy.

### G.   VEHICLES

The ownership, maintenance, use, operation, "loading or unloading", or entrustment to others of any automobile, aircraft, watercraft, rolling stock or all transportation, including any cargo carried thereby, beyond the legal boundaries of locations shown in the "Declarations".

### H.   DIVESTED PROPERTY

"Pollution conditions" on, at, under or emanating from the locations shown in the "Declarations" where the actual discharge, dispersal, release, seepage, migration or escape of "pollution conditions" begins subsequent to the time such locations are sold, given away or abandoned by the first named insured or condemned.

### I.   NUCLEAR HAZARD

Under any liability coverage, to "bodily injury", "property damage" or "remediation expense" based upon or arising out of:

1.  Ionizing radiations or contamination by radioactivity from any nuclear fuel or from any nuclear "waste" from the processing or reaction of nuclear fuel;

2.  The radioactive, toxic, explosive or other "hazardous properties" of any explosive nuclear assembly or nuclear component thereof;

3.  The existence, required removal or abatement of Naturally Occurring Radioactive Material, including but not limited to radon;

4.  High-level radioactive "waste" (spent nuclear fuel or the highly radioactive "waste" produced if "spent fuel" is reprocessed), uranium milling residues and "waste" with greater than specified quantities of elements heavier than uranium;

5.  Mixed Waste as defined in Title 40 Code of Federal Regulations, Part 266.210; however, this clause 7. does not apply to Mixed Waste that

## Environmental Impairment Liability Coverage Part

## This Coverage Part Provides Claims Made Coverage.

contains Waste as defined in Title 10 Code of Federal Regulations, Part 61.2,

6. Waste as defined in Title 10 Code of Federal Regulations, Part 61.2; and/or

7. material regulated by the United States Nuclear Regulatory Commission or an Agreement State under a Type A, B or C Specific License of Broad Scope as defined in Title 10 Code of Federal Regulations, Part 33.11.

   a. Including, but not limited to the actual, alleged or threatened exposure of any person(s) or property to any such matter.

### J. PRODUCTS LIABILITY

Goods or products manufactured, sold, handled, distributed, altered or repaired by the insured or by others trading under the insured's name including, with regard to such goods or products, any container, any failure to warn and any reliance on a representation or warranty made at any time. However, this exclusion applies only if the "pollution conditions" occur away from the locations owned, operated or leased by the insured and after physical possession of such has been relinquished to others.

### K. INTENTIONAL ACTS

"Pollution conditions" that result from intentional disregard of, or the deliberate, willful or dishonest noncompliance by any insured with any statute, regulation, ordinance, order, administrative complaint, notice letter or instruction from, by or on behalf of any governmental agency or representative.

### L. HOSTILE ACTS

Any consequence, whether direct or indirect, of war, invasion, act of foreign enemy, hostilities (whether or not war be declared), civil war, rebellion, revolution insurrection or military or usurped power.

### M. ROT, MOLD, MILDEW OR OTHER FUNGI

Based upon or arising out of the exposure to, required removal or abatement of rot, mold, or mildew or other fungi, regardless of whether such rot, mold, or mildew or other fungi, ensues from any cause or condition on, at, under or emanating from or to the "premises", including but not limited to any such cause or condition involving the presence, discharge or infiltration of moisture, vapor, water or any other liquid, or any damage related to any of these.

### N. "UNDERGROUND STORAGE TANKS"

The past or current existence of any "underground storage tank (USTs)" on, at or under any location listed in the "Declarations", but only if the existence of the "UST" is known to any insured.

This exclusion does not apply to any "UST" described in the "Underground storage tanks" and Associated Piping Schedule or storage tank(s) situated in an underground area (such as a basement or cellar) if the storage tank is situated upon or above the surface of the floor.

### O. "UNITS" AND PRIVATE STORAGE AREAS

"Pollution conditions" in, at or emanating from "units" or private storage areas regardless of where the "bodily injury" or "property damage" occurs.

However, this exclusion does not apply to the "defense costs" provided under I.B.2. DEFENSE AND PAYMENT.

### P. LEAD BASED PAINT AND ASBESTOS

Based upon or arising out of the existence, required removal or abatement of lead based paint or asbestos in any form, in any building or structure, including but not limited to products containing asbestos, asbestos fibers, asbestos dust, and asbestos containing materials.

However, this exclusion does not apply to a "claim(s)" for "bodily injury" and related "defense costs" resulting from lead-based paint or asbestos in any form, including but not limited to products containing asbestos, asbestos fibers, asbestos dust, and asbestos containing materials on, at under or emanating from the locations(s) stated in the "Declarations".

### Q. RETROACTIVE DATE

Based upon or arising out of any "pollution conditions" that commenced prior to the Retroactive Date, if any, shown in the "Declarations" which includes any dispersal, migration or further movement of the "pollution conditions" on or after the Retroactive Date stated in the "Declarations".

### R. COMMUNICABLE DISEASES

Based upon or arising out of the exposure to infected individuals or animals, or contact with bodily fluids of infected individuals or animals.

### III. ENVIRONMENTAL IMPAIRMENT LIABILITY WHO IS AN INSURED SECTION

### A. Each of the following is an insured:

1. You and any "subsidiary" named in the "Declarations";

2. Any person who has been, now is, or shall become a duly elected or appointed director or trustee, a

## This Coverage Part Provides Claims Made Coverage.

duly elected or appointed officer, an "employee", or "committee member", whether or not salaried, and any of your members acting at the direction of your board of directors on your behalf in a voluntary capacity;

3. The estate of any insured in 2. above who is deceased; and

4. Legal representatives or assigns of any insured in 1. or 2. above who is insolvent, incompetent, or bankrupt.

5. Any person, other than your "employee", or any organization, while acting as your community manager.

**B. None of the following is an insured:**

Any community manager, director, "officer", "employee", "committee member", or unit owner who is or was affiliated in any capacity with your builder, developer or sponsor, is not an insured for any "claim(s)" or "suit(s)" however alleged or pleaded, seeking damages for "bodily injury" or "property damage" arising from, related to or caused, in whole or in part, by faulty, inadequate, defective or negligent design or construction of any property, including any allegation in such "claim(s)" or "suit(s)" of failure to maintain, repair or replace such property.

## IV. ENVIRONMENTAL IMPAIRMENT LIABILITY LIMITS OF INSURANCE SECTION

**A. The limits of insurance shown in the "Declarations" and the provisions of this section determine the most we will pay for "loss" regardless of the number of:**

1. insureds and additional insureds;

2. "claim(s)" made or "suit(s)" brought; or

3. persons or organizations making "claim(s)" or bringing "suit(s)".

**B. LIMITS OF INSURANCE ARE SUBJECT TO THE FOLLOWING:**

1. The each Aggregate limit is the most we will pay for "loss" covered by this Environmental Impairment Liability Coverage Part.

2. Subject to 1. above:

   a. the each "loss" limit is the most we will pay for damages because of all "loss" arising out of the same or related "pollution conditions" at any one location; and,

   b. all "loss" from one or more "claim(s)" arising out of the same or related "pollution

conditions" and reported to us, in writing, over more than one "policy period" shall be considered a single "loss". Such "loss" will be subject to the limits of insurance in effect at the time of the first reported "pollution conditions" will apply.

3. The insured's retained limit in effect at the time the "claim(s)" is first reported shall be deducted from the amount of each "loss". You must bear the retained limit and you are not permitted to insure it without our written consent.

4. We shall pay for a "loss" only in excess of such retained limit up to the applicable limits of insurance. We may pay any part or all of the insured's retained limit to settle a "claim(s)" or "suit(s)" and you agree to promptly reimburse us for the part of the retained limit paid by us.

## V. ENVIRONMENTAL IMPAIRMENT LIABILITY EXTENDED REPORTING PERIOD SECTION

We will provide an Automatic Extended Reporting Period as described in V.A. below and, if you purchase it, an Optional Extended Reporting Period described in V.B. in the event of any "termination of coverage".

Notwithstanding anything to the contrary above, the Automatic Extended Reporting Period and Optional Extended Reporting Period do not apply when this policy is terminated for fraud, misrepresentation, or non-payment of premium or where the insured has purchased other insurance to replace this policy.

## A. AUTOMATIC EXTENDED REPORTING PERIOD

1. The Automatic Extended Reporting Period starts at the end of the "policy period" and lasts for 90 days. This extension is subject to the other provisions of this policy and applies to "claim(s)" first made against the insured during the 90 days immediately following the end of the "policy period".

2. The Automatic Extended Reporting Period is provided without additional charge.

3. The Automatic Extended Reporting Period applies only if no subsequent insurance you purchase applies to the "claim(s)", or would apply but for the exhaustion of its limit of insurance.

4. The Automatic Extended Reporting Period may not be canceled.

## B. OPTIONAL EXTENDED REPORTING PERIOD

1. If you purchase the Optional Extended Reporting Period, it will start immediately at the end of the

Includes copyrighted material of Insurance Services Office, Inc. with its permission

## Environmental Impairment Liability Coverage Part

## This Coverage Part Provides Claims Made Coverage.

"policy period", whether the policy is canceled or nonrenewed by either you or us, and will last for one year. The Automatic Extended Reporting Period is merged into the Optional Extended Reporting Period and is not in addition to this period.

2. The cost for the Optional Extended Reporting Period is shown in the "Declarations".

3. We will provide the Optional Extended Reporting Period if the first Named Insured makes a written request to us for it which we receive within 30 days after the end of the "policy period".

4. The Optional Extended Reporting Period will not take effect unless the additional premium is paid when due. If that premium is paid when due, the Optional Extended Reporting Period may not be canceled.

5. You may not construe our quotation of different terms and conditions as a nonrenewal.

### C. Extended Reporting Periods are subject to the following conditions:

1. A "claim(s)" first made against the insured during the Extended Reporting Period will be deemed to have been made against the insured on the last day of the "policy period", provided that the "claim(s)" is for "loss" from "pollution conditions" which took place before the end of the "policy period" but not before any applicable retroactive date.

2. Extended Reporting Periods do not extend the "policy period" or change the scope of coverage provided.

3. Extended Reporting Periods do not reinstate or increase the limits of liability applicable to any "claim(s)" to which this Environmental Impairment Liability Coverage Part applies.

4. If this Environmental Impairment Liability Coverage Part is canceled and you elect to purchase the Optional Extended Reporting Period Endorsement:

   a. Any return premium due you for the cancellation will be credited to the premium due for the Optional Extended Reporting Period Endorsement; and

   b. Any additional premium due to us for the period the policy was in force must be fully paid before any payments can be applied to the premium due for the Optional Extended Reporting Period Endorsement.

### VI. ENVIRONMENTAL IMPAIRMENT LIABILITY CONDITIONS SECTION

The Environmental Impairment Liability Coverage Part is subject to the following conditions.

### A. LEGAL ACTION AGAINST US

1. No person or organization has a right under this Environmental Impairment Liability Coverage Part:

   a. To join us as a party or otherwise bring us into a "suit(s)" against any insured; or

   b. To sue us on this Environmental Impairment Liability Coverage Part unless all of its terms have been fully complied with.

2. A person or organization may sue us to recover on an "agreed settlement" or on a final judgment against an insured obtained after an actual trial; but we will not be liable for "loss" or "defense costs" that are not payable under the terms of this Environmental Impairment Liability Coverage Part or that are in excess of the applicable limit of insurance.

### B. BANKRUPTCY

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligation under this Environmental Impairment Liability Coverage Part.

### C. DUTIES IN THE EVENT OF "CLAIM(S)" OR "SUIT(S)"

Notwithstanding anything to contrary herein, the failure to perform these duties will impair your rights under this Environmental Impairment Liability Coverage Part.

1. You must see to it that we are notified as soon as practicable of any "loss", "claim(s)" or "suit(s)". To the extent possible, notice should include:

   a. How, when and where the "loss", "claim(s)" or "suit(s)" came about;

   b. The names and addresses of any persons involved; and

   c. The nature of any resulting harm or damages.

2. In the event of oral notification, you agree to furnish a written report as soon as practicable.

3. If a "claim(s)" or "suit(s)" is made against or received by an insured, you must:

   a. Immediately record the specifics of the "claim(s)" or "suit(s)" and the date received;

   b. Notify us as soon as practicable; and

## Environmental Impairment Liability Coverage Part

# This Coverage Part Provides Claims Made Coverage.

c. Provide written notice of the "claim(s)" or "suit(s)".

4. You and any other involved insured must:

a. Immediately send us copies of any demands, notices, summonses, or legal papers received in connection with the "claim(s)" or "suit(s)";

b. Authorize us to obtain records and other information;

c. Cooperate with us in the investigation, settlement, or defense of the "claim(s)" or "suit(s)"; and

d. Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of "loss" to which this insurance may apply.

5. No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, admit liability, or incur any expense without our consent. This provision does not apply to emergency response costs. Emergency response costs are any reasonable costs that need to be incurred immediately where any delay in response would cause significant harm to human health or the environment. If such emergency occurs, the insured will notify us immediately.

### D. REPRESENTATIONS AND SEVERABILITY

1. In granting coverage under this Environmental Impairment Liability Coverage Part to any one of the insureds, we have relied upon the declarations and statements in the application, including submitted materials and, if this is a renewal application, all such previous applications for which this coverage is a renewal. Declarations and statements are the basis of coverage and will be considered as incorporated in and constituting part of the Environmental Impairment Liability Coverage Part.

2. The application for coverage will be construed as a separate application for coverage by each of the insureds.

3. Except with respect to the limits of insurance, and any rights or duties specifically assigned to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom "claim(s)" is made or "suit(s)" is brought.

### E. NEWLY CREATED OR ACQUIRED "SUBSIDIARIES"

1. If any "subsidiary", created or acquired by the Named Insured after the inception of this Environmental Impairment Liability Coverage Part, qualifies as a not-for-profit organization under the provision of the Internal Revenue Code and would have been included as an insured under III.A. ENVIRONMENTAL IMPAIRMENT LIABILITY WHO IS AN INSURED SECTION, such "subsidiary" will be included subject to:

a. The giving of written notice of such creation or acquisition to us as soon as practical, but in no event more than 120 days following such creation or acquisition; and

b. The giving of any underwriting information and the payment of any additional premium required by us.

2. If any "subsidiary", created or acquired by the Named Insured after the inception of this policy, does not qualify as a not-for-profit organization under the provisions of the Internal Revenue Code, such "subsidiary" will not be included until the insured has:

a. Given written notice of such creation or acquisition together with any underwriting information which may be required; and

b. Received written approval from us and paid any additional premium required.

### F. CONSOLIDATION OR MERGER

In the event that the Named Insured acquires by merger, or consolidates with, or is merged into or acquired by any other organization after the inception of this policy, immediate written notice thereof will be given to us together with such information as we may require. You will pay any additional premium required by us.

### G. OTHER INSURANCE

Subject to IV. ENVIRONMENTAL IMPAIRMENT LIABILITY LIMITS OF INSURANCE SECTION, this insurance will be in excess of the retained limit stated in the "Declarations" and any other valid and collectible insurance available to the insured whether such other insurance is stated to be primary, pro-rata, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the limits of insurance.

## This Coverage Part Provides Claims Made Coverage.

**VII. ENVIRONMENTAL IMPAIRMENT LIABILITY ADDITIONAL CHANGES**

The policy this Environmental Impairment Liability Coverage Part is attached to is changed as follows:

**A. The following defined terms of XXII. DEFINITIONS SECTION of the policy are amended to also apply to the Environmental Impairment Liability Coverage Part:**

3.  **"Agreed settlement";**

9.  **"By-product material";**

12. **"Committee member";**

23. **"Declarations";**

28. **"Employers Liability";**

34. **"Hazardous properties";**

41. **"Leased workers";**

52. **"Nuclear facility";**

53. **"Nuclear material";**

54. **"Nuclear reactor";**

61. **"Policy period" (LIABILITY);**

62. **"Pollutants" (LIABILITY);**

74. **"Source material";**

75. **"Special nuclear material";**

77. **"Spent fuel";**

78. **"Subsidiary(ies)";**

79. **"Suit(s)";**

81. **"Temporary workers";**

88. **"Unit"; and**

94. **"Waste";**

**B. The following defined terms are added to XXII. DEFINITIONS SECTION of the policy:**

1.  **"Bodily injury"** (ENVIRONMENTAL IMPAIRMENT LIABILITY) means bodily injury, sickness, disease or building related illness, mental anguish, emotional distress, or shock sustained by any person, including death resulting therefrom, caused by "pollution conditions".

2.  **"Claim(s)"** (ENVIRONMENTAL IMPAIRMENT LIABILITY)

    a.  means the assertion of a legal right alleging liability or responsibility on the part of the insured, arising out of "pollution conditions", and shall include but not be limited to a lawsuit, petition, order, or government and/or regulatory action, filed against the insured; and,

    b.  includes "remediation expense" resulting from "pollution conditions" which are:

        (1) first discovered by any insured; and,

        (2) reported to us, during the "policy period" or applicable extended reporting period.

3.  **"Coverage territory"** (ENVIRONMENTAL IMPAIRMENT LIABILITY) means the United States and its territories and possessions.

4.  **"Defense costs"** (ENVIRONMENTAL IMPAIRMENT LIABILITY) means legal costs, charges and expenses, including expert fees, incurred in the investigation, adjustment, settlement and defense of "claim(s)" and "suit(s)". "Defense Costs" do not include the time and expenses incurred by the insured in assisting in the investigation or resolution of "claim(s)" and "suit(s)" including but not limited to the costs of the insured's in-house counsel, salary charges of regular employees or officials of the insured and fees and expenses of supervisory counsel retained by the insured.

5.  **"Employee"** (ENVIRONMENTAL IMPAIRMENT LIABILITY) includes "leased worker", "temporary worker", director, officer, "committee member", or community manager.

6.  **"Extended reporting period"** means the Automatic Extended Reporting or, where applicable, the Optional Extended Reporting Period, described in V. ENVIRONMENTAL IMPAIRMENT LIABILITY EXTENDED REPORTING PERIOD SECTION.

7.  **"Loss"** (ENVIRONMENTAL IMPAIRMENT LIABILITY) means monetary judgment, award or settlement of compensatory damages arising from:

    a.  "bodily injury";

    b.  "property damage";

    c.  "remediation expense"; and,

    d.  "defense costs".

8.  **"Pollution conditions"** (ENVIRONMENTAL IMPAIRMENT LIABILITY) means the discharge, dispersal, release, seepage, migration or escape of smoke, vapors, soot, fumes, acids, alkalis, electromagnetic fields, toxic chemicals, hazardous substances, liquids or gases, waste materials, including medical, infectious and pathological

Includes copyrighted material of Insurance Services Office, Inc. with its permission

## Environmental Impairment Liability Coverage Part

# This Coverage Part Provides Claims Made Coverage.

wastes, or other irritants, contaminants or "pollutants" into or upon land or structures thereupon, the atmosphere or any watercourse or body of water including groundwater.

9. **"Property damage"** (ENVIRONMENTAL IMPAIRMENT LIABILITY) means:

   a. Physical injury to or destruction of tangible property, including the personal property of third parties, including the loss of use thereof; or,

   b. Loss of use of such property that has not been physically injured or destroyed; or,

   c. Diminished third party property value; or,

   d. "Natural Resource Damage", caused by any "pollution conditions"

   "Property damage" does not include "Remediation expense".

10. **"Remediation expense"** (ENVIRONMENTAL IMPAIRMENT LIABILITY) means expenses incurred for or in connection with the investigation, monitoring, removal, disposal, treatment or neutralization of "pollution conditions" to the extent required by any Federal, State or Local Laws, Regulations or Statutes enacted to address "pollution conditions".

    "Remediation Expense" also includes punitive, exemplary, or multiplied damages, where insurable by law.

11. **"Termination of coverage"** (ENVIRONMENTAL IMPAIRMENT LIABILITY) means cancellation or nonrenewal of the Environmental Impairment Liability Coverage Part by either party.

12. **"Natural resource damage"** (ENVIRONMENTAL IMPAIRMENT LIABILITY) means physical injury to or destruction of, as well as the assessment of such injury or destruction, including the resulting loss of value of land, fish, wildlife, biota, air, water, groundwater, drinking water supplies, and other such resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States (including the resources of the fishery conservation zone established by the Magnuson-Stevens Fishery Conservation and Management Act 16 U.S.C. 1801 et. seq.), any State, Local or Provincial government, any foreign government, any Native American tribe or, if such resources are subject to a trust restriction on alienation, any member of a Native American tribe.

13. **"Underground storage tank"** (ENVIRONMENTAL IMPAIRMENT LIABILITY) means any stationary container or vessel, including the associated piping connected thereto, which is ten percent (10%) or more beneath the surface of the ground and is:

    (i) constructed primarily of non-earthen materials; and

    (ii) designed to contain any substance.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# ■ Disclosure Pursuant to Terrorism Risk Insurance Act

This endorsement modifies insurance provided by the following policies:

CONDOMINIUM ASSOCIATION INSURANCE POLICY
COOPERATIVE APARTMENT INSURANCE POLICY
HOMEOWNERS ASSOCIATION INSURANCE POLICY
OFFICE CONDOMINIUM ASSOCIATION INSURANCE POLICY

**This policy includes coverage for Certified Acts of Terrorism. Please refer to the applicable charge below.**

| SCHEDULE | |
|---|---|
| | **PREMIUM** |
| **Terrorism  (Certified Acts)** | **$1,392** |

### A. DISCLOSURE OF PREMIUM

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under that Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

### B. DISCLOSURE OF FEDERAL PARTICIPATION IN PAYMENT OF TERRORISM LOSSES

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage, as shown in the Schedule above, of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

### C. CAP ON INSURER PARTICIPATION IN PAYMENT OF TERRORISM LOSSES

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

### D. ADDITIONAL OR RETURN PREMIUM

The premium for "certified acts of terrorism" coverage is calculated based in part on the federal participation in payment of terrorism losses as set forth in the Terrorism Risk Insurance Act. The federal program established by the Act is scheduled to terminate December 31, 2027, unless extended by the federal government. If the federal program terminates or if the level or terms of federal participation change, the estimated premium shown in the Schedule may not be appropriate.

If this policy contains a Conditional Exclusion, continuation of coverage for "certified acts of terrorism", or termination of such coverage, will be determined upon disposition of the federal program, subject to the terms and conditions of the Conditional Exclusion. If this policy does not contain a Conditional Exclusion, coverage for "certified acts of terrorism" will continue. In either case, when disposition of the federal program is determined, we will recalculate the premium shown in the Schedule and will charge additional premium or refund excess premium, if indicated.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

If we notify you of an additional premium charge, the additional premium will be due as specified in such notice.

All other terms and conditions of this Policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ■   Cap on Losses from "Certified Acts of Terrorism"

This endorsement modifies insurance provided by the following policies:

CONDOMINIUM ASSOCIATION INSURANCE POLICY
COOPERATIVE APARTMENT INSURANCE POLICY
HOMEOWNERS ASSOCIATION INSURANCE POLICY
OFFICE CONDOMINIUM ASSOCIATION INSURANCE POLICY

**A.  The following is applicable to the Property Coverage Part:**

    **1.  CAP ON CERTIFIED TERRORISM LOSSES**

        With respect to any one or more "certified acts of terrorism" under the federal Terrorism Risk Insurance Act we will not pay any amounts for which we are not responsible under the terms of that Act (including subsequent action of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

    **2.  APPLICATION OF OTHER EXCLUSIONS**

        The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Property Coverage Part, such as losses excluded by the III.B.1.d. NUCLEAR, BIOLOGICAL, CHEMICAL AND RADIOLOGICAL HAZARDS exclusions, III.B.1.e. "WAR" AND MILITARY ACTION exclusion or III.B.2.e. POLLUTION exclusion.

**B.  The following is applicable to the Liability Coverage Part, Directors & Officers Liability Coverage Part, Employee Benefits Liability Coverage Part, Environmental Impairment Liability Coverage Part, and Cyber Suite Coverage Part:**

    **1.  CAP ON CERTIFIED TERRORISM LOSSES**

        With respect to any one or more "certified acts of terrorism" under the federal Terrorism Risk Insurance Act, we will not pay any amounts for which we are not responsible under the terms of that Act (including subsequent action of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

    **2.  APPLICATION OF OTHER EXCLUSIONS**

        The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under these Coverage Parts, such as losses excluded by the "WAR" exclusion, HOSTILE ACTS exclusion, NUCLEAR ENERGY exclusion, NUCLEAR, BIOLOGICAL, CHEMICAL AND RADIOLOGICAL HAZARDS exclusions or the POLLUTION exclusion.

**C.  The following definition is added to XXII. DEFINITIONS SECTION and VII. CYBER SUITE DEFINITIONS:**

**"Certified act of terrorism"**  (PROPERTY, LIABILITY, DIRECTORS AND OFFICERS LIABILITY, EMPLOYEE BENEFITS LIABILITY, ENVIRONMENTAL IMPAIRMENT LIABILITY, and CYBER SUITE) means an act that is certified by the Secretary of the Treasury in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in that Act for a "certified act of terrorism" include the following:

    **1.**  The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

    **2.**  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**D.**  If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

All other terms and conditions of this Policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ■   Amended Water Exclusion

This endorsement modifies insurance provided by the Property Coverage Part of the following:

CONDOMINIUM ASSOCIATION INSURANCE POLICY
COOPERATIVE APARTMENT INSURANCE POLICY
HOMEOWNERS ASSOCIATION INSURANCE POLICY
OFFICE CONDOMINIUM ASSOCIATION INSURANCE POLICY

III.   PROPERTY CAUSES OF LOSS, EXCLUSIONS, AND LIMITATIONS SECTION is amended as follows:

Paragraph (3) of exclusion f. WATER under Section B. EXCLUSIONS is deleted and replaced by the following:

(3)   Continuous or repeated seepage, leakage, or inundation of water, or the presence of condensation, humidity, moisture, or vapor, that occurs over 14 days or more.

All other terms and conditions of this policy remain unchanged by this endorsement.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ■   Two-Year Policy Term

This endorsement modifies the insurance provided under the following:

CONDOMINIUM ASSOCIATION INSURANCE POLICY
COOPERATIVE APARTMENT INSURANCE POLICY
HOMEOWNERS ASSOCIATION INSURANCE POLICY
OFFICE CONDOMINIUM ASSOCIATION INSURANCE POLICY


**A. XXI.** COMMON POLICY CONDITIONS SECTION is amended to include:

**M.** POLICY RATES

Subject to all of the provisions below, we will maintain the rates in force as of the effective date of the policy shown in the "Declarations" for the duration of such policy period:

1. Each "policy year" your premium will adjust at an operation of a 3% annual increase in the "ratable limit". This adjustment will be applied in 1.5% increments in each of the two annual periods during a two-year policy term.

   <u>EXAMPLE</u>

   The "ratable limit" is determined as follows for a policy with this two-year policy term endorsement attached:

   | Average of two year ratable limit: | | $10,150,000 |
   |---|---|---|
   | Arrived at by averaging: | Year 1 | $10,000,000 |
   | | Year 2 | $10,300,000 |
   | | Total | $20,300,000 |
   | | Divided by 2 | $10,150,000 |

2. Your "loss ratio" with us does not exceed 50 percent.

   If your "loss ratio" exceeds 50 percent during "policy year" one, we may amend your rate on the annual anniversary date of "policy year" two of this two-year policy term.

3. Any additional amounts of insurance, locations or coverages will be rated according to the applicable rates in force as of the effective date shown in the "Declarations" of this two-year policy term.

4. All "aggregate limits" or annual aggregate limits of insurance applicable to coverages that forms part of this policy will apply separately to each "policy year".

5. We and the first Named Insured retain our respective rights of Cancellation and Nonrenewal, as set forth in the Common Policy Conditions of the policy and any applicable amendatory endorsements.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

**B.** Solely for the purpose of this endorsement, the following definitions are added to **XXII.** DEFINITIONS SECTION of the policy, **VII.** EMPLOYEE BENEFITS LIABILITY ADDITIONAL CHANGES of the EMPLOYEE BENEFITS COVERAGE PART (if covered), **VII.** ENVIRONMENTAL IMPAIRMENT LIABILITY ADDITIONAL CHANGES of the ENVIRONMENTAL IMPAIRMENT LIABILITY COVERAGE PART (if covered), **VII.** EMPLOYERS LIABILITY ADDITIONAL CHANGES of the EMPLOYERS LIABILITY COVERAGE PART (if covered), and **VII.** CYBER SUITE DEFINITIONS section of the CYBER SUITE COVERAGE PART (if covered):

**1.** "Loss ratio" means the "total incurred losses" divided by the annual policy premium.

**2.** "Total incurred losses" means losses and all allocated loss adjustment expenses paid or reserved beginning with the effective date of the policy shown in the "Declarations" and ending 60 days prior to the anniversary date of "policy year" one.

**3.** "Policy Year" means the period of one year following the effective date of the policy shown in the "Declarations" and ending on the anniversary date, or the one year period between the anniversary date and the expiration date of the policy.

       **EXAMPLE:** Policy Period January 1, 2017 to January 1, 2019

       Policy Year 1:  Effective date January 1, 2017 to Anniversary date January 1, 2018

       Policy Year 2:  Anniversary date January 1, 2018 to Expiration date January 1, 2019

All other terms and conditions of the Policy remain unchanged by this endorsement.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

■   **Employee Dishonesty - Community Manager**

This endorsement modifies insurance provided by the Property Coverage Part of the following:

CONDOMINIUM ASSOCIATION INSURANCE POLICY
COOPERATIVE APARTMENT INSURANCE POLICY
HOMEOWNERS ASSOCIATION INSURANCE POLICY
OFFICE CONDOMINIUM ASSOCIATION INSURANCE POLICY

Definition 18. "Covered employee" (PROPERTY) of **XXII. DEFINITIONS SECTION**  is deleted and replaced by the following:

18.   **"Covered employee"**  (PROPERTY) means:

a.   Any natural person:

(1)   While in your service (and for 30 days after termination of service);

(2)   Whom you compensate directly by salary, wages or commissions; and

(3)   Whom you have the right to direct and control while performing services for you.

b.   Any natural person employed by an employment contractor while that person is subject to your direction and control and performing services for you. However, any such person is excluded while having care and custody of property outside the "premises".

c.   Any natural person who is a duly elected or appointed director, trustee, "officer", "committee" volunteer or "committee member", whether salaried or not, and any other person acting on behalf or at the direction of an "officer" or board of directors of your Association with the exception of the developer when acting in a capacity as the developer.

d.   Other than your "employee", any person or any organization while acting as your community manager.

But covered employee does not include

a.   Any "employee" immediately upon discovery by:

(1)   You; or

(2)   Any of your "officers" and directors not in collusion with the employee, director, "officer" or board member; of any dishonest act committed by that employee, director, "officer" or board member whether before or after being hired or appointed by you.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

■  **Georgia Changes - Amendatory Endorsement**

This endorsement modifies insurance provided under the following:

CONDOMINIUM ASSOCIATION INSURANCE POLICY
COOPERATIVE APARTMENT INSURANCE POLICY
HOMEOWNERS ASSOCIATION INSURANCE POLICY
OFFICE CONDOMINIUM ASSOCIATION INSURANCE POLICY

**A.**  The following is added to the **Property Coverage Part:**

1.  We will not pay for loss or damage arising out of any act committed:

  a.  By or at the direction of any insured; and

  b.  With the intent to cause a loss.

2.  However, this exclusion will not apply to deny coverage to an innocent co-insured, provided the loss:

  a.  Is otherwise covered under this Coverage Part; and

  b.  Arose out of an act of family violence by an insured against whom a family violence complaint is brought for such act.

3.  If we pay a claim pursuant to Paragraph 2. above, our payment to the insured is limited to that insured's legal interest in the property less any payments we first made to a mortgage holder or other party with a legal secured interest in the property. In no event will we pay more than the Limit of Insurance.

**B.  VI. PROPERTY CONDITIONS SECTION, O. LOSS PAYMENT,** Paragraph 1. is replaced by the following:

1.  In the event of loss or damage covered by this Coverage Part, at our option we will either:

  a.  Repair, rebuild or replace the property with other property of like kind and quality, or pay the cost of such repair, rebuilding or replacement, subject to Paragraph 2. immediately below and any other applicable policy provisions such as any applicable Valuation provision; or

  b.  Take all or any part of the property at an agreed or appraised value.

  With respect to Paragraph 1.a. immediately above, this policy covers only the cost of repair, rebuilding or replacement. Such cost does not include recovery of, and therefore this policy does not pay any compensation for, an actual or perceived reduction in the market value of any property. But if the property that has sustained loss or damage is subject to an endorsement which explicitly addresses market value, then that endorsement will apply to such property in accordance with its terms.

**C.  XII. GENERAL LIABILITY WHO IS AN INSURED SECTION,** Paragraphs:

  **i.  A. WHO IS AN INSURED – "BODILY INJURY", "PROPERTY DAMAGE", "PERSONAL INJURY", "ADVERTISING INJURY", AND MEDICAL PAYMENTS;**

  **ii.  B. WHO IS AN INSURED – "HIRED AUTO" AND "NONOWNED AUTO";** and

  **iii.  C. WHO IS AN INSURED – GARAGE AND PARKING AREA LEGAL LIABILITY;**

are amended by the addition of the following:

All agents of the Association.

**D.  XVIII. EXCESS LIABILITY CONDITIONS SECTION, B. YOUR DUTIES IN THE EVENT OF "OCCURRENCE", "OFFENSE", CLAIM, OR "SUIT",** Paragraph 1. is replaced by the following:

You must see to it that we are notified promptly of an "occurrence" or an "offense" which may result in a claim to which this insurance applies. To the extent possible, notice should include:

a.  How, when and where the "occurrence" or an "offense" took place;

b.  The insured's name and address and the names and addresses of any injured persons and witnesses; and

c.  The nature and location of any injury or damage arising out of the "occurrence" or an "offense".

Includes copyrighted material of Insurance Services Office, Inc. with its permission

The requirement for giving notice of a claim, if not satisfied by the insured within 30 days of the date of the "occurrence" or "offense", may be satisfied by an injured third party who, as the result of such "occurrence" or "offense", has a claim against the insured. However, in this event, notice of a claim given by an injured third party must be mailed to us.

**E. XXI. COMMON POLICY CONDITIONS SECTION, A. CANCELLATION,** Paragraph 1. is replaced by the following:

1.  The first Named Insured shown in the "Declarations" may cancel this policy by mailing or delivering to us advance written notice of cancellation stating a future date on which the policy is to be cancelled, subject to the following:

    a.  If only the interest of the first Named Insured is affected, the effective date of cancellation will be either the date we receive notice from the first Named Insured or the date specified in the notice, whichever is later. However, upon receiving a written notice of cancellation from the first Named Insured, we may waive the requirement that the notice state the future date of cancellation, by confirming the date and time of cancellation in writing to the first Named Insured.

    b.  If by statute, regulation or contract this policy may not be cancelled unless notice is given to a governmental agency, mortgagee or other third party, we will mail or deliver at least 10 days notice to the first Named Insured and the third party as soon as practicable after receiving the first Named Insured's request for cancellation.

    Our notice will state the effective date of cancellation, which will be the later of the following:

    a.  10 days from the date of mailing or delivering our notice; or

    b.  The effective date of cancellation stated in the first Named Insured's notice to us.

**F. A. CANCELLATION,** Paragraph 2. is replaced by the following:

2.  We may cancel this policy in its entirety, or any Coverage Part or coverage within a Coverage Part that is part of this policy, by mailing or delivering to the first Named Insured shown in the "Declarations" and lienholder, if any, at the last mailing address known to us, written notice of cancellation as follows:

    a.  **CANCELLATION OF POLICIES IN EFFECT LESS THAN 60 DAYS**

    If this policy has been in effect for less than 60 days and is not a renewal of an existing policy, we may cancel for any reason by mailing notice of cancellation at least 10 days before the effective date of cancellation.

    b.  **CANCELLATION OF POLICIES IN EFFECT FOR 60 DAYS OR MORE**

    If this policy has been in effect for 60 days or more or is a renewal of an existing policy, we may cancel by mailing notice of cancellation:

    (1)  At least 10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

    (2)  At least 45 days before the effective date of cancellation, if we cancel for any other reason.

**G. A. CANCELLATION,** Paragraph 5. is replaced by the following:

5.  If this policy is cancelled, we will send the first Named Insured any premium refund due.

    a.  If we cancel, the refund will be pro rata, except as provided in Paragraph b. immediately below.

    b.  If the cancellation results from a failure of the first Named Insured to pay, when due, any premium to us or any amount, when due, under a premium finance agreement, than the refund will be 90% of pro rata. This calculation of the return premium at less than pro rata represents a penalty charged on unearned premium.

    c.  If the first named Insured cancels, the refund will be 90% of pro rata.

    d.  The cancellation will be effective even if we have not made or offered a refund.

**H. A. CANCELLATION,** Paragraph 6. is replaced by the following:

6.  If notice of cancellation is mailed, it will be mailed by first class mail and a receipt provided by, or such other evidence of mailing as prescribed or accepted by, the U.S. Postal Service will be sufficient proof of notice.

**I. A. CANCELLATION** is amended by the addition of the following:

With respect to any Coverage Part that is written to permit an audit, the following is added:

If you fail to submit to or allow an audit for the current or most recently expired term, we may cancel this policy subject to the following:

1.  We will make two documented efforts to send you and your agent notification of potential cancellation. After the second notice has been sent, we have the right to cancel this policy by mailing or delivering a written notice of cancellation to the

Includes copyrighted material of Insurance Services Office, Inc. with its permission

first Named Insured at least 10 days before the effective date of cancellation, but not within 20 days of the first documented effort.

2. If we cancel this policy based on your failure to submit to or allow an audit, we will send the written notice of cancellation to the first Named Insured at the last known mailing address by certified mail or statutory overnight delivery with return receipt requested.

**J.** **B. NONRENEWAL** is replaced by the following:

   **B.** **NONRENEWAL AND CONDITIONAL RENEWAL**

     1. NONRENEWAL

      The first Named Insured may nonrenew this policy by mailing or delivering to us advance written notice of nonrenewal.

      If we decide not to renew this policy in its entirety, or any Coverage Part or coverage within a Coverage Part that is part of this policy, we will send notice as provided in Paragraph 3. below.

     2. CONDITIONAL RENEWAL

      If we decide to condition the renewal of this policy upon:

       a. An increase in premium in excess of 15% (other than any increase due to change in risk, exposure or experience modification or resulting from an audit of auditable coverages); or

       b. A change in any policy provision which would limit or restrict coverage;

      we will send notice as provided in Paragraph 3. below.

     3. NOTICES OF NONRENEWAL AND CONDITIONAL RENEWAL

       a. If we decide not to renew this policy in its entirety, or any Coverage Part or coverage within a Coverage Part that is part of this policy, or in some other manner to conditionally renew it, as provided in Paragraphs 1. and 2. immediately above, we will mail or deliver written notice to the first Named Insured shown in the "Declarations" and lienholder, if any, at least 45 days before the expiration date of this policy.

       b. We will mail our notice or deliver it to the first Named Insured at the last mailing address known to us.

       c. If notice of cancellation is mailed, it will be mailed by first class mail and a receipt provided by, or such other evidence of mailing as prescribed or accepted by, the U.S. Postal Service will be sufficient proof of notice.

**K.** **VII. DIRECTORS AND OFFICERS LIABILITY COVERAGE PART, EMPLOYEE BENEFITS LIABILITY COVERAGE PART,** and **ENVIRONMENTAL IMPAIRMENT LIABILITY COVERAGE PART** are amended as follows:

The definition of "Loss" is amended by the addition of the following:

"Loss" does not include civil or criminal fines or penalties imposed by law, punitive damages and/or the multiplied portion of multiplied damages, taxes, or matters that are uninsurable pursuant to applicable law.

All other terms and conditions of the Policy remain unchanged by this endorsement.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ■   "Fungus", Wet Rot and Dry Rot Coverage

This endorsement modifies insurance provided by the Property Coverage Part of the following:

CONDOMINIUM ASSOCIATION INSURANCE POLICY
COOPERATIVE APARTMENT INSURANCE POLICY
HOMEOWNERS ASSOCIATION INSURANCE POLICY
OFFICE CONDOMINIUM ASSOCIATION INSURANCE POLICY

**A.**   The following exclusion is added to **III.B. EXCLUSIONS, 1.:**

**"FUNGUS", WET ROT AND DRY ROT**

Presence, growth, proliferation, spread, or any activity of "fungus" or wet or dry rot.

But, if "fungus" or wet or dry rot results in a "specified causes of loss", we will pay for the loss or damage caused by that "specified cause of loss".

However, this exclusion does not apply when "fungus" or wet or dry rot results from fire or lightning.

Except as provided under Paragraph **D. "FUNGUS", WET ROT AND DRY ROT COVERAGE** of this endorsement.

**B.**   The following explanation is added with respect to the application of the Exclusion of "FUNGUS", WET ROT AND DRY ROT:

With respect to the portion of "covered property" that would still have required repair or replacement had there been no "fungus", wet rot or dry rot, this exclusion will not serve to limit the amount of recovery for such repair or replacement. However, this exclusion will continue to apply to the cost to treat, contain, remove or dispose of "fungus", wet rot or dry rot beyond that which is required to repair or replace "covered property".

**C.**   **III.B. EXCLUSIONS, 2.** is amended as follows:

**1.**   Exclusion **b.(5)** is deleted.

**2.**   The following exclusion is added:

**NEGLECT OF AN INSURED**

Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

**D.**   The following exclusion is added to **IV. PROPERTY ADDITIONAL COVERED CAUSES OF LOSS SECTION:**

**"FUNGUS", WET ROT AND DRY ROT COVERAGE**

**1.**   We will pay for loss or damage by "fungus" or wet or dry rot. As used in this endorsement, the term loss or damage means:

**a.**   Direct physical loss or damage to "covered property" caused by "fungus" or wet or dry rot, including the cost of removal of the "fungus" or wet or dry rot;

**b.**   The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungus" or wet or dry rot; and

**c.**   The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungus" or wet or dry rot are present.

The coverage described above is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of COVERED CAUSE OF LOSS, other than fire or lightning, which take place in a 12 month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungus" or wet or dry rot, we will not pay more than a total of $15,000 even if the "fungus" or wet or dry rot continues to be present or active, or recurs in a later policy period.

**2.**   The following provisions a. or b. applies only if II.A. MAINTENANCE FEES, B. COMMUNITY INCOME or C. EXTRA EXPENSE coverage applies to the "premises" and only if the suspension of operations satisfies all terms and conditions of the applicable II.A. MAINTENANCE FEES, B. COMMUNITY INCOME or C. EXTRA EXPENSE coverage.

**a.**   If the loss which resulted in "fungus" or wet or dry rot does not in itself necessitate a suspension of operations, but such suspension is necessary due to loss or damage to property caused by "fungus" or wet or dry rot, then our payment

Includes copyrighted material of Insurance Services Office, Inc. with its permission

under II.A. MAINTENANCE FEES, B. COMMUNITY INCOME or C. EXTRA EXPENSE is limited to the amount of loss and expense sustained in a period of not more than 30 days. The days do not be consecutive.

    b.    If a covered suspension of operations was caused by loss or damage other than "fungus" or wet or dry rot but remediation of "fungus" or wet or dry rot prolongs the "period of restoration", we will pay for loss and expense sustained during the delay, regardless of when such a delay occurs during the "period of restoration", but such coverage is limited to 30 days. The days do not be consecutive.

3.    The coverage described in provisions 1. and 2. above only applies when the "fungus" or wet or dry rot is the result of one or more COVERED CAUSE OF LOSS other than fire or lightning that occurs during the "policy period" and only if all reasonable means were used to save and preserve the property from further reasonably foreseeable damage at the time of and after that occurrence.

We will pay only for such loss or damage which, with respect to the occurrence described in provision 1.a. above which:

    a.    Results within 96 consecutive hours of one or more COVERED CAUSE OF LOSS other than fire or lightning that occurs during the "policy period" and

    b.    Is reported to us within seven consecutive days of one or more COVERED CAUSE OF LOSS other than fire or lightning that occurs during the "policy period".

4.    The coverage provided under this endorsement does not increase the applicable limit of insurance on any "covered property". If a particular occurrence results in loss or damage by "fungus" or wet or dry rot, and other loss or damage, we will not pay more for the total of all loss or damage, than the applicable limit of insurance on the affected "covered property".

If there is covered loss or damage to "covered property", not caused by "fungus" or wet or dry rot, loss payment will not be limited by the terms of this endorsement except to the extent that "fungus" or wet or dry rot causes an increase in the loss. Any such increase in loss will be subject to the terms of this endorsement.

E.    The following exclusion is added to **XXII. DEFINITIONS SECTION:**

**"Fungus"** (PROPERTY) means any type or form of fungus or bacteria, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi or bacteria.

All other terms and conditions of the Policy remain unchanged by this endorsement.

**IMPORTANT NOTICE. PLEASE READ IT CAREFULLY.**

# ■  Disclosure Notice to Policyholders - Georgia

You should read your policy exclusions including the endorsements referenced below and review your declaration pages for complete information on the coverages you are provided. If there is any conflict between the policy and this notification, THE PROVISIONS OF THE POLICY SHALL PREVAIL.

The policy contains rot, mold and mildew or other "fungi" exclusions. These exclusions are applicable to the LIABILITY COVERAGE PART, DIRECTORS AND OFFICERS LIABILITY COVERAGE PART, EMPLOYEE BENEFITS LIABILITY COVERAGE PART and ENVIRONMENTAL IMPAIRMENT LIABILITY COVERAGE PART.

**"Fungus", Wet Rot and Dry Rot Coverage, CAU 3600 GA.**

This endorsement contains limited coverage and exclusions for "fungus", wet rot and dry rot applicable to the PROPERTY COVERAGE PART.

I understand that the policy includes the exclusions referenced above:

Signed  _____

Title  _____

Date  _____

# COMMUNITY ASSOCIATION UNDERWRITERS
## RENEWAL INVOICE

| PRODUCER NAME & ADDRESS | INSURED NAME AND MAILING ADDRESS |
|---|---|
| Dreher Insurance Agency<br>1805 Herrington Road<br>Bldg 1, Suite C<br>Lawrenceville, GA 30043<br><br>S120 | Heritage Park Condominium Association, Inc.<br>C/O Sage PMI Corp<br>1830 Water Place Ste 110<br>Atlanta, GA 30339 |

| ACCOUNT # | POLICY # | INSURANCE COMPANY | LINE OF BUSINESS | INVOICE DATE |
|---|---|---|---|---|
| 26878 | CAU508389-4 | AAICO | CPKGE | 03/11/2021 |

THE INSURED HAS THE OPTION OF PAYING THE YEAR ONE POLICY PREMIUM OF $47,800.00 BY 04/25/2021 OR CHOOSING OUR INSTALLMENT PLAN. IF THE INSURED CHOOSES TO BE BILLED IN INSTALLMENTS, A FIRST PAYMENT OF $15,936.00 IS DUE BY 04/25/2021. THERE WILL BE AN INSTALLMENT CHARGE OF $8.00 PER INSTALLMENT.

### INSTALLMENT SCHEDULE

| INSTALLMENT | DUE DATE | INSTALLMENT AMOUNT | INSTALLMENT CHARGE | TOTAL INSTALLMENT |
|---|---|---|---|---|
| DOWN PAYMENT | 04/25/2021 | $15,936.00 | $0.00 | $15,936.00 |
| 1. | 05/25/2021 | $3,983.00 | $8.00 | $3,991.00 |
| 2. | 06/25/2021 | $3,983.00 | $8.00 | $3,991.00 |
| 3. | 07/25/2021 | $3,983.00 | $8.00 | $3,991.00 |
| 4. | 08/25/2021 | $3,983.00 | $8.00 | $3,991.00 |
| 5. | 09/25/2021 | $3,983.00 | $8.00 | $3,991.00 |
| 6. | 10/25/2021 | $3,983.00 | $8.00 | $3,991.00 |
| 7. | 11/25/2021 | $3,983.00 | $8.00 | $3,991.00 |
| 8. | 12/25/2021 | $3,983.00 | $8.00 | $3,991.00 |
| | | $47,800.00 | $64.00 | $47,864.00 |

**NOTE: THIS INVOICE DOES NOT REFLECT ANY PAYMENTS ALREADY MADE. THIS INSTALLMENT SCHEDULE IS SUBJECT TO CHANGE IN THE EVENT OF AN ENDORSEMENT OR REVISION TO THE POLICY.**

> **REMINDER:  PAYMENT IS DUE WITHIN 30 DAYS OF THE POLICY EFFECTIVE DATE.**
>
> PLEASE MAKE CHECKS PAYABLE TO COMMUNITY ASSOCIATION UNDERWRITERS. REMIT THE TOTAL PREMIUM AMOUNT.
>
> If you have any questions, please call (800) 228-1930.

| ACCOUNT #<br>26878 | AAICO POLICY #<br>CAU508389-4 | EFFECTIVE DATE<br>03/25/2021 | EXPIRATION DATE<br>03/25/2023 | YEAR 1 PREMIUM<br>$47,800.00 | STATE FEE<br>$0.00 | YEAR 1 TOTAL PREMIUM<br>$47,800.00 |
|---|---|---|---|---|---|---|

INSURED NAME AND MAILING ADDRESS

**Heritage Park Condominium Association, Inc.**
**C/O Sage PMI Corp**
**1830 Water Place Ste 110**
**Atlanta, GA 30339**

**PLEASE MAKE CHECK PAYABLE TO:**
Community Association Underwriters

**PLEASE MAIL CHECK TO:**
Community Association Underwriters
P.O. Box 1100
Newtown, PA 18940

# CONDOMINIUM

# ASSOCIATION

# INSURANCE

# POLICY



Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the "Declarations". "We", "Us", and "Our" refer to the company providing this insurance. Other words and phrases that appear in quotation marks have special meaning. Refer to XXII. DEFINITIONS SECTION.

©Copyright 2017 by Community Association Underwriters of America, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

YOUR COMPLETE POLICY CONSISTS OF THE POLICY JACKET WITH THE COVERAGE FORM,
DECLARATIONS AND ENDORSEMENTS, IF ANY.

## Table of Contents

**PROPERTY COVERAGE PART**                                                    Page Number

I.      PROPERTY DIRECT COVERAGES SECTION  ...................................................1
II.     PROPERTY CONSEQUENTIAL COVERAGES SECTION  .........................................3
III.    PROPERTY CAUSES OF LOSS, EXCLUSIONS, AND LIMITATIONS SECTION .................5
IV.     PROPERTY ADDITIONAL COVERED CAUSES OF LOSS SECTION...................................12
V.      PROPERTY SUPPLEMENTARY PAYMENTS SECTION  .........................................14
VI.     PROPERTY CONDITIONS SECTION  ........................................................15

**LIABILITY COVERAGE PART**

**GENERAL LIABILITY**

VII.    GENERAL LIABILITY COVERAGES SECTION  ..................................................25
VIII.   GENERAL LIABILITY GARAGE AND PARKING AREA LEGAL LIABILITY SECTION....26
IX.     GENERAL LIABILITY MEDICAL PAYMENTS SECTION  .....................................27
X.      GENERAL LIABILITY DEFENSE OF "SUIT" SECTION ...........................................27
XI.     GENERAL LIABILITY EXCLUSIONS SECTION  ................................................27
XII.    GENERAL LIABILITY WHO IS AN INSURED SECTION  ......................................35
XIII.   GENERAL LIABILITY CONDITIONS SECTION  ................................................37

**EXCESS LIABILITY**

XIV.    EXCESS LIABILITY COVERAGE SECTION  ...................................................40
XV.     EXCESS LIABILITY DEFENSE OF "SUIT" SECTION ...........................................40
XVI.    EXCESS LIABILITY EXCLUSIONS SECTION  .................................................41
XVII.   EXCESS LIABILITY WHO IS AN INSURED SECTION  ........................................45
XVIII.  EXCESS LIABILITY CONDITIONS SECTION  .................................................45

**GENERAL LIABILITY AND EXCESS LIABILITY**

XIX.    LIABILITY LIMITS OF INSURANCE SECTION  ...............................................47
XX.     LIABILITY CONDITIONS SECTION  .........................................................48

**COMMON POLICY CONDITIONS**

XXI.    COMMON POLICY CONDITIONS SECTION  ..................................................50

**DEFINITIONS**

XXII.   DEFINITIONS SECTION...................................................................52

**Includes copyrighted material of Insurance Services Office, Inc. with its permission**

# Property Coverage Part

**Throughout this policy the words "you" and "your" refer to the Named Insured shown in the "Declarations". "We", "us", and "our" refer to the company providing this insurance. Other words and phrases that appear in quotation marks have special meaning. Refer to XXII. DEFINITIONS.**

## I. PROPERTY DIRECT COVERAGES SECTION

**We will pay for direct physical loss of or damage to "covered property" caused by or resulting from any COVERED CAUSE OF LOSS under III.A. COVERED CAUSES OF LOSS. Coverage is provided only when a limit of insurance is shown in the "Declarations".**

**Unless otherwise specified, "covered property" must be located within the "coverage territory".**

**Unless otherwise specified in this section, all EXCLUSIONS under III.B. EXCLUSIONS apply.**

**Coverage is also provided for "covered property" which is not damaged but which must be removed and replaced in order to repair "covered property" which is damaged by a COVERED CAUSE OF LOSS under III.A. COVERED CAUSES OF LOSS.**

### A. COMMUNITY PROPERTY

Unless otherwise specified, coverage is provided for the following property if it is on or within 1,000 feet of the "premises". However, the following property does not include any property which is covered, or would be covered except for the exhaustion of the applicable limits of insurance, under I.B ADDITIONAL COMMUNITY PROPERTY.

#### 1. COMMUNITY BUILDINGS AND STRUCTURES

Coverage is provided for:

##### a. COMMUNITY BUILDINGS

Buildings that are described as such in the "Declarations" and used in whole or in part as:

Residences, clubhouses, meeting centers, boat houses, attached garages and carports, detached garages and carports, buildings housing sewage treatment facilities, and buildings housing heating and air conditioning plants.

##### b. COMMUNITY STRUCTURES

Structures not described in the "Declarations" and used in whole as:

Cabanas, recreation courts and fixtures, pool houses, gates, gate houses, storage sheds, shelters, mailboxes, gazebos, pump houses, fences, walkways, roadways, other paved surfaces, outdoor fixtures, outdoor "swimming pools", flagpoles, light poles, fountains, outside statues, detached signs, temporary seasonal structures, and freestanding walls, other than retaining walls.

Buildings and structures not specified in **a.** and **b.** above are covered only when specifically described in the "Declarations".

Buildings and structures include: structural glass, pipes, wires, conduits, ducts, chutes, flues, and utilities; heating, ventilating and cooling systems; sprinkler, fire protection and security systems; permanently installed machinery and equipment and other mechanical elements, all whether above or below ground; balconies; indoor or rooftop "swimming pools"; porches; decks; patios; attached signs; outdoor: satellite dishes, radio, television and other antennas including their wiring, masts, footings, foundations, moorings and towers; and other property not within "units".

Coverage includes the following property not within "units": additions, alterations and structural repairs, whether or not complete; finishes, coatings, and coverings of walls, floors, and ceilings; and permanently installed appliances and fixtures.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

## Property Coverage Part

### 2. "UNITS"

"Units" are covered only when a limit of insurance is shown in the "Declarations" for either one or both of the following:

#### a. ORIGINAL SPECIFICATIONS

Any property included in "units" which was initially installed in accordance with your condominium's original plans and specifications, or a replacement of like kind and quality of such property.

#### b. ADDITIONAL INSTALLATIONS

Improvements and betterments made to "units". This coverage is in addition to the coverage provided in I.A.2.a. ORIGINAL SPECIFICATIONS, above.

### 3. COMMUNITY PERSONAL PROPERTY

Coverage is provided for property which satisfies all of the following:

a. Owned by you or leased by you for which you have a contractual responsibility to insure.

b. Used in connection with the "premises".

c. Not permanently attached to or installed in any building or structure.

d. Comprised of:

(1) Tools, construction materials, building supplies, indoor and outdoor furnishings, decorations, fixtures, equipment, appliances, machinery, window treatments, and other community personal property.

(2) Materials, equipment, supplies and temporary structures used for making additions, alterations, or structural repairs to any building or structure.

(3) Your interest in the labor, materials, or services furnished or arranged by you on personal property of others.

(4) "Computer equipment" and "media".

(5) "Valuable papers and records".

(6) Accounts receivables.

(7) "Money" and "securities".

### B. ADDITIONAL COMMUNITY PROPERTY

Unless otherwise specified, coverage is provided for the following property if it is on or within 1,000 feet of the "premises".

### 1. BRIDGES, BULKHEADS, DOCKS, PIERS, RETAINING WALLS, AND WHARVES

Coverage is provided for your bridges, bulkheads, docks, piers, retaining walls, and wharves.

### 2. NATURAL OUTDOOR PROPERTY

Coverage is provided for your live trees, plants, shrubs and lawns.

Coverage is specifically limited to only the following Causes of Loss:

a. Fire;

b. Lightning;

c. Explosion;

d. Vehicle;

e. Aircraft;

f. Riot;

g. Civil commotion;

h. Vandalism; and

i. "Theft".

### 3. NEWLY ACQUIRED, CONVEYED, OR TRANSFERRED PROPERTY

Your Newly Acquired, Conveyed, or Transferred Property is covered for up to 90 days during the reporting period specified in VI.M. REPORTING REQUIREMENTS. Coverage is provided as follows:

#### a. NEWLY ACQUIRED BUILDINGS AND STRUCTURES

Buildings and structures you acquire at locations other than the "premises". These buildings and structures must be

---

Includes copyrighted material of Insurance Services Office, Inc. with its permission

## Property Coverage Part

used for purposes similar to those described in the "Declarations".

**b. NEWLY CONVEYED OR TRANSFERRED BUILDINGS AND STRUCTURES**

Your separate, new buildings and structures built on the "premises".

**c. NEWLY ACQUIRED COMMUNITY PERSONAL PROPERTY**

Your newly acquired community personal property while at locations owned, leased, or operated by you other than the "premises".

**4. "FINE ARTS"**

Coverage is provided for your "fine arts".

**5. "PERSONAL EFFECTS"**

Coverage is provided for "personal effects" owned by your directors, "officers", or "employees" while acting in the scope of their duties as such.

**6. PERSONAL PROPERTY OF OTHERS**

Coverage is provided for personal property of others in your care, custody, or control.

Limitation 3. of III.C. LIMITATIONS does not apply to this coverage.

**C. SPECIFIED PROPERTY OFF "PREMISES" AND IN TRANSIT**

Coverage under I.A. COMMUNITY PROPERTY, and I.B. ADDITIONAL COMMUNITY PROPERTY, is extended to losses occurring while not on or within 1,000 feet of the "premises" as follows:

**1. OFF "PREMISES"**

Coverage is provided while the property is temporarily at other locations within the "coverage territory".

**2. IN TRANSIT**

Coverage is provided while the property is on conveyances being operated between points in the "coverage territory".

**D. PROPERTY NOT COVERED**

"Covered property" does not include:

1. Animals.

2. Contraband or property in the course of illegal transportation or trade.

3. Land, including land on which property is located, and growing crops.

4. Water.

5. Self-propelled vehicles and machines including aircraft, "autos", and watercraft, that satisfy any of the following:

   a. Are licensed or registered for use on public roads; or,

   b. Are operated principally away from the "premises"; or,

   c. Are held for sale.

   Except rowboats or canoes out of water at the "premises".

6. Dams.

7. Tunnels.

8. Unit owners', guests', or tenants' personal property.

**II. PROPERTY CONSEQUENTIAL COVERAGES SECTION**

**Unless otherwise specified, coverages apply as a consequence of direct physical loss or damage to "covered property" caused by or resulting from a COVERED CAUSE OF LOSS for which a limit of insurance is shown for such "covered property" in the "Declarations". The coverages in this section are only provided when limits of insurance are shown in the "Declarations".**

**A. MAINTENANCE FEES AND ASSESSMENTS**

We will pay for all maintenance fees and assessments due to you from unit owners which you have been unable to collect during the "period of restoration".

Includes copyrighted material of Insurance Services Office, Inc. with its permission

## Property Coverage Part

### B. COMMUNITY INCOME

We will pay for the loss of community income, including loss of rents or loss of lease payments, due to the suspension of your operations during the "period of restoration". Community income does not include maintenance fees and assessments.

### C. EXTRA EXPENSE

We will pay for the extra expense, specified below, you incur to continue normal community operations during the "period of restoration".

Extra expense includes:

1.  Any extra expense to avoid or minimize the suspension of business and to continue normal community operations:

    a.  At the "premises"; or

    b.  At replacement premises or at temporary locations, including:

        (1) Relocation expenses; and

        (2) Costs to equip and operate the replacement or temporary locations.

2.  All reasonable expenses for transportation and storage with regard to II.E.2. PROPERTY REMOVAL.

3.  Reasonable costs to repair or replace any property to the extent it reduces the amount of loss that would have been payable under II.C. EXTRA EXPENSE.

This coverage does not apply to any additional expenses of individual unit owners, tenants, and community managers.

### D. ORDINANCE OR LAW COVERAGE

With respect to property described under I.A.1. COMMUNITY BUILDINGS AND STRUCTURES and I.A.2. "UNITS" that has sustained covered direct physical damage, coverage is provided for the following:

### 1. COVERAGE FOR LOSS TO THE UNDAMAGED PORTION OF THE BUILDING

We will pay for the loss in value of the undamaged portions of the same building as a consequence of enforcement of, or compliance with, an ordinance or law that requires demolition of undamaged parts of the same building.

### 2. DEMOLITION COST COVERAGE

We will pay the cost to demolish and clear the site of undamaged parts of the same building as a consequence of a requirement to comply with an ordinance or law that requires demolition of such undamaged building.

### 3. INCREASED COST OF CONSTRUCTION COVERAGE

We will pay the increased cost to:

a.  Repair or reconstruct damaged portions of the same building; and/or

b.  Reconstruct or remodel undamaged portions of the same building whether or not demolition is required;

when the increased cost is a consequence of a requirement to comply with the minimum standards of the ordinance or law.

### 4. INCREASED PERIOD OF RESTORATION COVERAGE

When coverage provided by 1., 2., or 3. above applies, we will extend the coverage provided under II.A. MAINTENANCE FEES AND ASSESSMENTS, II.B. COMMUNITY INCOME and II.C. EXTRA EXPENSE to include the amount of actual and necessary loss you sustain during the increased period of restoration of normal community operations.

These coverages under II.D. are only provided if the ordinance or law:

a.  Regulates the demolition, construction, or repair of buildings or structures, or establishes zoning or land use

Includes copyrighted material of Insurance Services Office, Inc. with its permission

requirements at the described "premises"; and

b.  Is in force at the time of loss.

These coverages under II.D. will apply only in response to the minimum requirements of the ordinance or law. Losses or costs incurred in complying with recommended actions or standards that exceed actual requirements are not covered. Loss or costs incurred to repair pre-existing code violations, whether or not you were given or had actual or constructive notice of your non-compliance, are not covered.

## E.  REMOVAL COVERAGES

### 1.  DEBRIS REMOVAL

We will pay your expenses to remove debris except for expenses to extract "pollutants" from land or water; or remove, **dispose of**, restore, or replace polluted land or water.

Coverage does not apply to removal of trees, shrubs and plants.

### 2.  PROPERTY REMOVAL

If it is necessary to temporarily move "covered property" from any site to preserve it from a COVERED CAUSE OF LOSS, we will pay for any direct physical loss or damage to that property:

a.  While it is being moved or while temporarily stored at any other site or location; but

b.  Only if the loss or damage to the removed property occurs within 120 days after it is first moved.

Coverage does not apply beyond the termination or expiration date of this policy.

### 3.  REMOVAL OF FALLEN TREES

We will pay the reasonable expense you incur removing any fallen tree from your "premises", provided that, in falling, the tree damaged "covered property" and provided further:

a.  That the tree is not "covered property", but the cause of its falling was a COVERED CAUSE OF LOSS, except "collapse"; or

b.  That the tree is "covered property", but the cause of its falling was a COVERED CAUSE OF LOSS other than fire, lightning, explosion, vehicle, aircraft, riot, civil commotion, collapse, vandalism, and "theft".

## III.  PROPERTY CAUSES OF LOSS, EXCLUSIONS, AND LIMITATIONS SECTION

## A.  COVERED CAUSES OF LOSS

Covered Causes of Loss includes IV. PROPERTY ADDITIONAL COVERED CAUSES OF LOSS SECTION and means immediate and direct physical loss or damage to "covered property" unless the loss is excluded under III.B. EXCLUSIONS, or limited under III.C. LIMITATIONS. When Special is shown on the "Declarations", COVERED CAUSES OF LOSS means direct physical loss unless the loss is excluded or limited in this policy.

## B.  EXCLUSIONS

**1**  Except as otherwise specified, we will not pay for loss or damage which would not have occurred in the absence of one or more of the following excluded events regardless of: (i) the cause of the excluded event; (ii) other causes of the loss; or (iii) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss:

### a.  ORDINANCE OR LAW

The enforcement of or compliance with any ordinance or law which:

(1)  Regulates the construction, use, or repair of any property; or

(2)  Requires the tearing down of any property, including the cost of removing its debris.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

This exclusion, Ordinance or Law, applies whether the loss results from:

(a) An ordinance or law that is enforced even if the property has not been damaged; or

(b) The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling, or demolition of property, or removal of debris, following a physical loss to that property.

Except as provided under II.D. ORDINANCE OR LAW COVERAGE.

**b. EARTH MOVEMENT**

(1) Earthquake, including any earth sinking, rising, or shifting related to such event, tremors, aftershocks;

(2) Landslide, including any earth sinking, rising, or shifting related to such event;

(3) Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

(4) Earth sinking (other than "sinkhole collapse"), rising or shifting including soil conditions which cause settling, cracking, or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil, and the action of water under the ground surface;

(5) Slope failure;

(6) "Mudslide" or "mudflow";

(7) "Volcanic eruption". However, if "volcanic eruption" results in fire, building glass breakage, or "volcanic action", we will pay for the loss or damage caused by that fire, building glass breakage, or "volcanic action".  All "volcanic

eruptions" that occur within any 168 hour period will constitute a single occurrence.

All of the above exclusions under III.B.1.b. apply whether earth movement is caused by natural or man-made conditions.

However, if earth movement, as described in b.(1) through b.( 7) above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

**c. GOVERNMENTAL ACTION**

Seizure or destruction of property by order of governmental authority.

However, we will pay for acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would otherwise be covered.

**d. NUCLEAR, BIOLOGICAL, CHEMICAL, AND RADIOLOGICAL HAZARDS EXCLUSION**

( 1 ) We will not pay for any loss, damage, cost or expense, whether real or alleged, that is caused, results from, is exacerbated by or otherwise impacted by, either directly or indirectly, any of the following:

(a) Nuclear Hazard – including, but not limited to, nuclear reaction, nuclear detonation, nuclear radiation, radioactive contamination and all agents, materials, products, or substances, whether engineered or naturally occurring, involved therein or released thereby;

(b) Biological Hazard – including, but not limited to, any biological and/or poisonous or pathogenic agent, material, product or substance, whether

Includes copyrighted material of Insurance Services Office, Inc. with its permission

## Property Coverage Part

engineered or naturally occurring, that induces or is capable of inducing physical distress, illness, or disease;

(c) Chemical Hazard – including, but not limited to, any chemical agent, material, product, or substance; or

(d) Radioactive Hazard – including, but not limited to, any electromagnetic, optical, or ionizing radiation or energy, including all generators and emitters thereof, whether engineered or naturally occurring.

(2) The provisions of subparagraphs (1)(b) and (1)(c) will not apply where the agent, material, product or substance at issue is utilized in the course of business by the insured.

(3) Only if and to the extent required by state law, the following exception to the exclusion in paragraph (1) applies:

If a hazard excluded under paragraph (1) results in fire, we will pay for the loss, damage, cost or expense caused by that fire, subject to all applicable policy provisions including the Limit of Insurance on the affected property. Such coverage for fire applies only to direct loss or damage by fire to "covered property". This coverage does not apply to insurance provided under Maintenance Fees and Assessments, Community Income, and Extra Expense coverages or endorsements that apply to those coverages.

**e. "WAR" AND MILITARY ACTION**

(1) "War";

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**f. WATER**

(1) "Flood" and surface water comprised of any of the following:

(a) "Flood";

(b) Waves, wave wash, spray, tides, tidal waves, storm surge, or tsunamis;

(c) Surface water, or any body or other collection of water, regardless of its source, and the overflow, whether or not wind driven, of any such water. This exclusion applies regardless of whether any such water or its overflow is:

(i) A natural or otherwise occurring phenomenon; and

(ii) A temporary or permanent phenomenon; or

(d) "Mudslide" and "mudflow".

Paragraphs (1) (a), (b), and (c) above apply whether or not driven by wind.

(2) Water under the surface of the ground, from any source, whether man-made or naturally occurring, whether or not it is pressing on or flowing or seeping through:

(a) Foundations, basements, walls, or floors;

Includes copyrighted material of Insurance Services Office, Inc. with its permission

(b) Any paved surfaces;

(c) Doors, windows; or

(d) Sump pumps, sump wells, and other openings in (a) and (b) above other than sewer and drain openings inside buildings.

Paragraphs (1) (a), (b), and (c) above apply to sewer and drain openings inside buildings.

(3) Continuous or repeated seepage or inundation of water, or the presence of condensation, humidity, moisture, or vapor, that occurs over 14 days or more.

(4) Overflow, leakage or seepage of water, other liquids, gases, powder, or molten material from any source except fire protective systems, unless reasonable maintenance operations have been practiced.

(5) Water, other liquids, powder, or molten material that leaks or flows from plumbing, heating, air conditioning, or other equipment, except fire protective systems, caused by or resulting from freezing, unless:

(a) Heat is maintained in the building, structure, and "unit"; or

(b) All the equipment is drained and the supply is shut off if the heat is not maintained; or

(c) If the plumbing and related equipment cannot be completely drained and shut off, heat must be maintained in the building, structure, and unit.

However, with respect to the above exclusions 1.a. through 1.f., if loss or damage by fire, explosion, or sprinkler leakage results we will pay for that resulting loss or damage.

g. **CERTAIN COMPUTER-RELATED LOSSES**

(1) The failure, malfunction, or inadequacy of:

(a) Any of the following, whether belonging to any insured or to others:

(i) Computer hardware, including microprocessors;

(ii) Computer application software;

(iii) Computer operating systems and related software;

(iv) Computer networks;

(v) Microprocessors (computer chips) not part of any computer system; or

(vi) Any other computerized or electronic equipment or components; or

(b) Any other products, and any services, data functions, that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph (a) above;

due to the inability to correctly recognize, process, distinguish, interpret or accept one or more dates or times.

(2) Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph g.(1) above.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

If an excluded Cause of Loss as described in Paragraphs g.(1) and g.(2) above results in a "specified causes of loss", we will pay only for the loss or damage caused by such "specified causes of loss".

We will not pay for repair, replacement, or modification of any items in Paragraphs g.(1) and g.(2) above to correct any deficiencies or change any features.

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

**a. ATMOSPHERE AND ENVIRONMENT**

(1) The following causes of loss to personal property, exterior structural glass, attached signs and detached signs caused by:

(a) Dampness or dryness of the atmosphere;

(b) Changes in or extremes of temperature; or

(c) Marring or scratching, unless caused by the application of chemicals to glass.

However, if there is loss or damage by a "specified causes of loss" we will pay for that resulting loss or damage.

(2) Smog;

(3) Nesting or infestation, or discharge or release of waste products or secretions, by insects, spiders, birds, reptiles, rodents, or other animals;

(4) Falling objects, rain, snow, ice, or sleet to personal property in the open;

(5) Smoke, vapor, or gas from agricultural smudging or industrial operations;

(6) Weather conditions. Except that this exclusion applies only if weather conditions contribute in any way with a cause or event excluded in III.B.1. to produce loss or damage. However, if a COVERED CAUSE OF LOSS results, we will pay for the loss or damage caused by that COVERED CAUSE OF LOSS.

**b. MATERIAL FACTORS**

(1) Wear and tear.

(2) Rust, corrosion, decay, contamination, or deterioration.

(3) Latent defect, innate or inherent vice, or any quality in the property that causes it to damage or destroy itself.

(4) Settling, cracking, bulging, shrinking, or expanding.

(5) Based upon or arising out of the existence of, exposure to or required removal or abatement of rot, mold, mildew, or other fungi, regardless of whether such rot, mold, mildew, or other fungi ensues from any cause or condition including, but not limited to, any such cause or condition involving the presence, discharge, or infiltration of moisture, vapor, water, or any other liquid or any damage related thereto.

**c. MORAL FACTORS**

(1) "Theft" of property from the inside of an unattended vehicle or trailer unless:

(a) Contained in a securely locked body or compartment of the vehicle; and

(b) There are visible marks of forced entry.

(2) Forgery, or counterfeiting of "money", "securities", or "fine arts".

Except as provided under IV.B. WORLD WIDE CRIME COVERAGES.

(3) Dishonest or criminal acts by you, any of your "employees", directors, "officers", "committee members", trustees, authorized representatives, or anyone to whom you entrust the property for any purpose:

(a) Acting alone or in collusion with others; or

(b) Whether or not occurring during the hours of employment.

---

Includes copyrighted material of Insurance Services Office, Inc. with its permission

This exclusion does not apply to acts of destruction by your "employees". However, "theft" by your "employees" is not covered.

Except as provided under IV.B. WORLD WIDE CRIME COVERAGES.

(4) Property contained in any money operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

(5) Property that has been voluntarily parted with by you or by anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device, or false pretense. This includes wrongful conversion.

(6) Loss resulting from the disclosure of your or another person's or organization's confidential or personal information including, but not limited to, patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information, or any other type of nonpublic information; or

(7) Loss resulting from the use of another person's or organization's confidential or personal information including, but not limited to, patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information, or any other type of nonpublic information.

**d. "COLLAPSE"**

"Collapse".

However, if loss or damage by another COVERED CAUSE OF LOSS results at the "premises", we will pay for the resulting loss or damage.

Except as provided under IV.A. "COLLAPSE" COVERAGE.

**e. POLLUTION**

Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release, or escape is itself caused by any of the "specified causes of loss".

However, if loss or damage by "specified causes of loss" results, we will pay for the resulting damage caused by "specified causes of loss".

**f. ASBESTOS**

Caused by, based on, attributable to, related to or in any manner and at any time arising out of:

(1) The use, installation, storage, withdrawal, removal, encapsulation, destruction, containment, testing, distribution, exposure, ownership, sale or disposal of asbestos, asbestos fibers, asbestos dust, or material containing asbestos.

(2) Any error or omission in supervision, instructions, recommendations, notices, warnings, or advice given, or which should have been given, in connection with asbestos, asbestos dust, asbestos fibers, or material containing asbestos.

**3. ACTS OR OMISSIONS**

We will not pay for loss or damage caused by or resulting from any of the following:

a. Acts, decisions, errors, or omissions, including the failure to act or decide, of any person, group, organization, or governmental body;

b. Faulty, inadequate, defective, or negligent:

(1) Planning, zoning, development, surveying, siting;

(2) Design, testing, specifications, workmanship, repair, construction, renovation, remodeling, grading, earth compaction;

(3) Materials used in repair, construction, renovation or remodeling; or

(4) Maintenance. However, if loss or damage by "equipment breakdown" results, we will pay for that resulting loss or damage.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

c. Giving or surrendering of property in any exchange or purchase for which the only proof of which, as to its existence or amount, is an inventory computation; or a profit and loss computation.

d. Programming, coding, data entry, or data manipulation errors including accidental erasure; or

e. Accounting or arithmetical errors or omissions.

However, if a COVERED CAUSE OF LOSS results, we will pay for the loss or damage caused by that COVERED CAUSE OF LOSS.

## C. LIMITATIONS

We will not pay for loss of or damage to property, as described and limited below. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited below.

1. To a "unit" caused by or resulting from vandalism, except if committed by your tenant.

2. To the interior of any building or structure caused by or resulting from ice, rain, snow, sleet, water; thawing or melting of snow, sleet, or ice; sand or dust, all whether wind driven or not, unless:

   a. The loss or damage is caused by or results from thawing or melting of snow, sleet, or ice on the roof of the building or structure; or

   b. The building or structure first sustains damage by a COVERED CAUSE OF LOSS to an exterior surface through which the ice, rain, snow, sleet, water, sand, or dust enters.

3. Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property. However, this provision does not apply to coverage provided under "money" and "securities".

4. Property that has been transferred to a person or to a place outside the premises on the basis of unauthorized instructions.

5. Breakage of fragile articles such as "fine arts", glassware, statuary, marble, chinaware, and porcelains unless caused by "specified causes of loss".

6. To all delinquent and prospective maintenance fees and assessments owed by any person or organization whose payments of such amounts are not current as of the date of loss. This limitation applies to all such fees and assessments, whether they are due as of or after the date the "period of restoration" commences.

7. With regard to II.D. ORDINANCE OR LAW COVERAGE, we will not pay for the costs associated with the enforcement of any ordinance or law which:

   a. Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of "pollutants".

   b. Relates in any way to asbestos or lead or any product or material containing asbestos or lead. This includes the use, installation, storage, withdrawal, removal, encapsulation, destruction, containment, or disposal of any such product or material.

   c. Is based upon or arising out of the existence, exposure to, required removal or abatement of rot, mold, mildew, or other fungi, regardless of whether such rot, mold, mildew, or other fungi ensues from any cause or condition including, but not limited to, any such cause or condition involving the presence, discharge or infiltration of moisture, vapor, water, or any other liquid or any damage related thereto.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

## IV. PROPERTY ADDITIONAL COVERED CAUSES OF LOSS SECTION

### A. "COLLAPSE" COVERAGE

1. We will pay for direct physical loss or damage to "covered property" if the "collapse" is caused by one or more of the following:

   a. The "specified causes of loss" or breakage of structural glass, all only as insured against in this Property Coverage Part;

   b. Decay that is hidden from view, unless the presence of such decay is known to you or anyone acting on your behalf prior to collapse;

   c. Insect or vermin damage that is hidden from view, unless the presence of such decay is known to you or anyone acting on your behalf prior to collapse;

   d. Weight of people or personal property;

   e. Weight of rain or snow that collects on a roof;

   f. Use of defective material or methods in construction, remodeling, or renovation if the "collapse" occurs during the course of the construction, remodeling or renovation. However, if the "collapse" occurs after construction, remodeling or renovation is complete and is caused in part by a cause of loss listed in A.1.a. through A.1.e. above, we will pay for the loss or damage even if use of defective material or methods in construction, remodeling, or renovation contributes to the collapse.

   The criteria set forth in the definition of "collapse" does not limit the coverage otherwise provided under paragraph III.A. COVERED CAUSES OF LOSS for the causes of loss listed in 1.a., 1.d., and 1.e. above.

2. PROPERTY NOT COVERED - "COLLAPSE"

   a. The following types of property are not covered:

   (1) Outdoor: satellite dishes, radio, television, and other antennas, including wiring;

   (2) Masts or towers;

   (3) Awnings or temporary structures;

   (4) Gutters and downspouts;

   (5) Yard fixtures;

   (6) Outdoor "swimming pools";

   (7) Fences;

   (8) Piers, wharves, or docks;

   (9) Beach or diving platforms, or appurtenances;

   (10) Retaining or freestanding walls; or

   (11) Walkways, roadways, or other paved surfaces.

   b. Unless the loss or damage is:

   (1) Caused by "specified causes of loss"; or

   (2) A direct result of the "collapse" of a building or structure caused by a COVERED CAUSE OF LOSS.

3. If personal property abruptly falls down or caves in and such event is not the result of "collapse" of a building or structure, we will pay for loss or damage to "covered property" caused by such falling down or caving in of personal property only if the falling down or caving in:

   a. Was caused by a cause of loss listed in IV.A.1.a. through A.1.f.;

   b. Is of personal property inside a building or structure; and

   c. Is of property not of a kind listed in IV.A.2.regardless of whether that kind of property is considered to be personal property or real property.

   The coverage stated in this paragraph 3. does not apply to personal property if marring and scratching, or both, is the only damage to that personal property caused by the falling down or caving in.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

## B. WORLD WIDE CRIME COVERAGES

Coverage is provided only when a limit of insurance is shown in the "Declarations".

### 1. "EMPLOYEE DISHONESTY"

We will cover "employee dishonesty" that directly results in loss of, or loss from damage to all tangible property and "money" and "securities" anywhere in the world.

### 2. "COMPUTER FRAUD"

We will cover "computer fraud" that directly results in loss of, or loss from damage to all tangible property and "money" and "securities" anywhere in the world.

### 3. "DEPOSITORS FORGERY"

We will cover "depositors forgery" that directly results in loss of any "covered instrument" anywhere in the world.

However with respect to World Wide Crime Coverages, coverage does not apply to any "covered employee" or "committee member" immediately upon discovery by:

(1) You; or

(2) Any of your "officers", trustees, and directors not in collusion with the "covered employee", "committee member", trustee, director, "officer", or board member;

of any dishonest act committed by that "covered employee", "committee member", trustee, director, "officer", or board member whether before or after being hired or appointed by you.

## C. "EQUIPMENT BREAKDOWN"

We will pay for direct physical loss of or damage to "covered property" caused by or resulting from "equipment breakdown" at the "premises" described in the "Declarations".

### 1. Additional Coverages

The following additional coverages apply to "equipment breakdown" and are added as a part of and not in addition to the limit per loss:

#### a. "Reasonable Extra Cost"

We will pay for the "reasonable extra cost" resulting from "equipment breakdown" with respect to your damaged "covered property". We will pay the "reasonable extra cost" to:

(1) Make temporary repairs;

(2) Expedite permanent repairs; and

(3) Expedite permanent replacement.

#### b. "Computer Equipment"

We will pay for loss or damage to your "computer equipment" caused by "equipment breakdown".

#### c. Service Interruption

Any insurance provided for Maintenance Fees and Assessments, Community Income or Extra Expense is extended to apply to your loss, damage or expense caused by "equipment breakdown" to equipment that is owned by a utility, landlord or other supplier with whom you have a contract to supply you with any of the following services: electrical power, waste disposal, air conditioning, refrigeration, heating, natural gas, compressed air, water, steam, internet access, telecommunications services, wide area networks, or data transmission. The equipment must meet the definition of "equipment breakdown" except that it is not "covered property".

#### d. Environmental, Safety, and Efficiency Improvements

If "covered property" requires replacement due to "equipment breakdown", we will pay your additional cost to replace with equipment that is better for the environment, safer, or more efficient than the equipment being replaced.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

However, we will pay up to 150% of what the cost would have been to repair or replace with like kind and quality. This condition does not apply to any property to which Actual Cash Value applies.

### e. Risk Improvement

(1) If "covered property" suffers direct physical loss or damage due to "equipment breakdown", we will pay for the insured to improve the "power quality" of the electrical system or equipment at the loss location where the "equipment breakdown" occurred.

(2) We will pay the reasonable extra cost to improve "power quality" for the following electrical systems and/or equipment improvements:

(a) Installation of surge protection devices (SPD's) which are installed at the loss location's line disconnect, load disconnect, or on specific pieces of equipment and that are certified by Underwriter Laboratories (UL) or has an equivalent certification.

However, SPD's do not include any SPD's which are cord-connected surge strips, direct plug-in SPD's or receptacle SPD's;

(b) An upgrade and/or replacement of electrical panels, switchgear and/or circuit breakers; or

(c) Electrical wire and wiring improvements which include installation of: flexible conduit, junction boxes and/or ground wiring.

(3) We will not pay more than 10%, to a maximum limit of $10,000, of the loss amount paid. An invoice for implementation of this additional coverage must be sent to us within 180 days after the payment of the loss is received.

### D. COMPUTER VIRUS

With respect to the COVERED CAUSES OF LOSS applicable to "computer equipment" and "media" coverage under COMMUNITY PERSONAL PROPERTY, the COVERED CAUSES OF LOSS include a virus, harmful code or similar instruction introduced into or enacted on "computer equipment" and "media", designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system by any "employee", including a "temporary worker" or a "leased worker", or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system. However, the most we will pay under this Computer Virus Additional Covered Cause of Loss is $5,000 for all loss or damage sustained in any policy year regardless of the number of occurrences, number of premises, locations or "computer equipment" and "media" involved.

## V. PROPERTY SUPPLEMENTARY PAYMENTS SECTION

**Coverage is provided only when a limit of insurance is shown in the "Declarations".**

### A. MONETARY REWARD

A reward for "new information" leading to a conviction in connection with a COVERED CAUSE OF LOSS resulting from arson, vandalism, or deliberate and malicious acts.

### B. FIRE DEPARTMENT SERVICE CHARGES

We will pay for your liability for fire department service charges, when the fire department is called to save or protect "covered property" from a COVERED CAUSE OF LOSS if:

1. Assumed by contract prior to a loss; or

---

Includes copyrighted material of Insurance Services Office, Inc. with its permission

2. Required by local ordinance.

The limit shown in the "Declarations" is the most we will pay regardless of the number of responding fire departments or fire units.

## C. FIRE EXTINGUISHER RECHARGE

The cost to recharge fire extinguishers used in combating an actual or suspected COVERED CAUSE OF LOSS.

## D. "POLLUTANT" CLEAN UP AND REMOVAL

We will pay your expense to extract "pollutants" from land or water at the "premises" if the discharge, dispersal, seepage, migration, release, or escape of the "pollutants" is caused by or results from a COVERED CAUSE OF LOSS that occurs during the "policy period".

This coverage does not apply to costs to test for, monitor, or assess the existence, concentration, or effects of "pollutants". However, we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

## VI. PROPERTY CONDITIONS SECTION

The Property Coverage Part is subject to the following conditions.

## A. CONCEALMENT, MISREPRESENTATION, OR FRAUD

This Property Coverage Part is void in any case of fraud by you as it relates to this Property Coverage Part at any time. Also, this Property Coverage Part is void if you, or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. The Property Coverage Part;

2. The "covered property";

3. Your interest in the "covered property"; or

4. A claim under this Property Coverage Part.

Under this condition you also means any "officer", director, or trustee when acting on your behalf.

## B. CONTROL OF PROPERTY

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

## C. BREACH OF CONDITIONS

The breach of any condition of this Property Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss, the breach of condition does not exist.

## D. LEGAL ACTION AGAINST US

No one may bring a legal action against us under this Property Coverage Part unless:

1. There has been full compliance with all of the terms of this Property Coverage Part; and

2. The action is brought within two years after the date on which the direct physical loss or damage occurred.

## E. NO BENEFIT TO BAILEE

No person or organization, other than you, having custody of "covered property" will benefit from this insurance.

## F. OTHER INSURANCE AND RECOVERY

1. This insurance is primary with regard to any other insurance in the name of any unit owner which covers the same property.

2. You may have other insurance subject to the same plan, terms, conditions, and provisions as the insurance under this Property Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable limit of insurance under this Property Coverage Part bears to the sum of the limits of all insurance covering on the same basis; and

3. If there is other insurance covering the same loss or damage, other than described in 1. or 2. above, we will pay only for the

## Property Coverage Part

amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable limit of insurance.

However, with respect to any property described in provision I.B.3. NEWLY ACQUIRED, CONVEYED, OR TRANSFERRED PROPERTY, if loss or damage is also covered by insurance available to the developer, contractor, or builder which is performing or which has performed construction or renovation to any such property, this insurance does not apply at all.

4. With respect to property in the care and custody of an armored motor vehicle company, we will pay only for the amount of loss that you cannot recover:

   a. Under your contract with the armored motor vehicle company; and

   b. From any insurance or indemnity carried by, or for the benefit of customers of, the armored motor vehicle company.

## G. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

1. If any person or organization to or for whom we make payment under this Property Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them.

2. Other than the builder, developer, or sponsor, for acts or omissions performed as the builder, developer, or sponsor, you may waive your rights against another party in writing:

   a. Prior to a covered loss; or

   b. After a covered loss, only if, at the time of the loss, that party is one of the following:

      (1) An insured on this policy; or

      (2) A tenant of yours.

      Unless the payment is a result of any uncollected amounts for maintenance fees and assessments under II.A. MAINTENANCE FEES AND ASSESSMENTS or any dishonest or criminal act covered under IV.B. WORLD WIDE CRIME COVERAGES.

3. Unless the payment is a result of any uncollected amounts for maintenance fees and assessments under II.A. MAINTENANCE FEES AND ASSESSMENTS, or any dishonest or criminal act covered under IV.B. WORLD WIDE CRIME COVERAGES, we waive any rights which this condition may give us against all of the following:

   a. You.

   b. Members of the board of directors for acts or omissions within the scope of their duties for you.

   c. Any unit owner and residing household members.

We reserve our right, however, to recover against the builder, developer, or sponsor for acts or omissions that the builder, developer, or sponsor may be liable for in the capacity as a builder, developer, or sponsor.

## H. MORTGAGE HOLDER RIGHTS

1. The term mortgage holder includes trustee.

2. If the condominium is terminated, we will pay for covered loss of, or damage to, buildings or structures to each mortgage holder shown on the "Declarations" in order of their precedence, as interests may appear.

   In all other respects, we will pay for loss to buildings or structures to you or the designated insurance trustee in accordance with VI.O. LOSS PAYMENT.

3. The mortgage holder has the right to receive loss payment even if the mortgage

Includes copyrighted material of Insurance Services Office, Inc. with its permission

## Property Coverage Part

holder has started foreclosure or similar action on the building or structure.

4. If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgage holder will still have the right to receive loss payment if the mortgage holder:

   a. Pays any premium due under this policy at our request if you have failed to do so; and

   b. Submits a signed sworn statement of loss within 60 days after receiving notice from us of your failure to do so; and

   c. Has notified us of any change in ownership, occupancy, or substantial change in risk known to the mortgage holder.

   All of the terms of this policy will then apply directly to the mortgage holder.

5. If we pay the mortgage holder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

   a. The mortgage holder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

   b. The mortgage holder's right to recover the full amount of the mortgage holder's claim will not be impaired.

   At our option, we may pay to the mortgage holder the whole principal of the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

6. If we cancel this policy, we will give written notice to the mortgage holder at least 30 days before the effective date of cancellation.

7. If we elect not to renew this policy, we will give written notice to the mortgage holder at least 30 days before the expiration date of this policy.

## I. INSURED'S DUTIES IN THE EVENT OF LOSS OR DAMAGE

Failure to perform these duties will impair your rights under this Property Coverage Part or could result in denial of coverage.

1. Notify us in writing of any clean up or removal expenses for debris and "pollutants" within 180 days of the earlier of the following:

   a. The date of the direct physical loss or damage which creates the debris or pollution; or

   b. The expiration date of this policy.

2. With regard to unpaid maintenance fees and assessments, community income and accounts receivable under I.A.3. COMMUNITY PERSONAL PROPERTY, II.A. MAINTENANCE FEES AND ASSESSMENTS, and II.B. COMMUNITY INCOME you must:

   a. Make a reasonable effort to collect them;

   b. Not waive your right to collect them; and

   c. Cooperate with us in taking action to collect any such amounts you have been unable to collect after reasonable effort. The taking of any such action shall be at our sole election.

3. Notify the police if a law may have been broken.

4. Give us prompt notice of the loss or damage and include a description of the property involved.

5. With regard to "money" and "securities", you must keep adequate records of the covered property to substantiate the amount of your claim.

6. With regard to the "depositors forgery" of any "covered instrument", you must include with your proof of loss any instrument involved in that loss, or, if that is not possible, an affidavit setting forth the amount and cause of loss.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

## Property Coverage Part

7. As soon as possible, give us a description of how, when and where the loss or damage occurred.

8. Take all reasonable steps to protect the "covered property" from further damage. If feasible, set the damaged property aside and in the best possible order for examination. Also keep a record of your expenses for emergency and temporary repairs for consideration in the settlement of the claim.

9. At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values, and amount of loss claimed.

10. As often as may reasonably be required, permit us to inspect the property and records proving the loss or damage. Also permit us to take samples of damaged and undamaged property for inspection, testing, and analysis. Permit us to make copies from your books and records.

11. Permit us to question you under oath at such times as may be reasonably required about any matter relating to this insurance or your claim, including your books and records. In such event, your answers must be signed.

12. Send us a signed, sworn statement of loss containing the information we request to investigate or settle the claim. You must do this within 60 days.

13. Cooperate with us in the investigation or settlement of the claim.

### J. LIMITS OF INSURANCE

1. Regardless of the number of years this insurance remains in force or the number of premiums paid, no limit of insurance accumulates from annual policy term to annual policy term.

2. Unless otherwise specified, the most we will pay for loss or damage is the applicable limit of insurance shown in the "Declarations". With regard to property you rent or lease from others, we shall pay the amount any

lease or rental agreement specifies as the least you owe if that amount is greater than the property's replacement cost. However, we will not pay the owners more than their financial interest in the "covered property".

3. Unless otherwise specified in the "Declarations", the applicable limits of insurance apply on a per occurrence basis.

4. With regard to IV.B. WORLD WIDE CRIME COVERAGES provided under this policy, loss is covered only if:

   a. Discovered not later than one year from the termination of this coverage; and

   b. Subject to 5. below, the loss is sustained during the effective period of this coverage.

5. With regard to IV.B.1. "EMPLOYEE DISHONESTY" coverage provided under this policy:

   a. If you or your predecessor in interest sustained loss during the period of any prior insurance for which you or your predecessor in interest could have recovered under such prior insurance but for the failure of you or your predecessor in interest to discover such loss within the time period allowed by such prior insurance, we will pay such loss under this insurance, provided:

      (1) This insurance became effective at the time of cancellation or termination of the prior insurance; and

      (2) The loss would have been covered by this insurance had it been in effect when the acts or events causing the loss were committed or occurred.

   b. The most we will pay is the larger of the amount recoverable under this insurance or prior insurance for any loss covered:

      (1) Partly by this insurance; and

Includes copyrighted material of Insurance Services Office, Inc. with its permission

## Property Coverage Part

(2) Partly by any prior canceled or terminated insurance that we or any affiliate had issued to you or any predecessor in interest.

## K. DEDUCTIBLE

### 1. PER OCCURRENCE DEDUCTIBLE

We will not pay for loss, damage, or expense in any one occurrence until the amount of loss, damage, or expense exceeds the deductible shown in the "Declarations". We will then pay the amount of loss, damage, or expense in excess of such deductible up to the applicable limit of insurance. Except for Paragraphs 2. and 3. below, when any occurrence is subject to more than one deductible, we will apply only the highest deductible.

### 2. PER "UNIT" DEDUCTIBLE

With regard to loss or damage to I.A.2. "UNITS", we will not pay for loss, damage, or expense in any one occurrence until the amount of loss, damage, or expense exceeds the deductible shown in the "Declarations". We will then pay the amount of loss, damage, or expense in excess of such deductible up to the applicable limit of insurance. Any resulting deductible or deductibles will apply in addition to the deductible which may result from Paragraph 1. above.

### 3. PER "UNIT" DEDUCTIBLE – ICE DAMMING

With regard to loss or damage to I.A.2. "UNITS" as provided under III.C.LIMITATIONS, 2. we will apply the deductible shown in the "Declarations" separately to each "unit" that actually sustains resulting water damage. Any resulting deductible or deductibles will apply in addition to the deductible which may result from Paragraph 1. above.

## L. VALUATION

The value of all property will be determined at the time of loss, unless otherwise specified in this section.

### 1. REPLACEMENT COST

a. When the "Declarations" indicate that coverage is provided on a replacement cost basis, we will pay no more than the least of the following:

(1) The cost to repair or replace the property at the same site, regardless if repaired or replaced at the same site or another, without deduction for depreciation:

(a) With comparable material;

(b) With property of the same height, floor area, and style; and

(c) With property intended for the same purpose;

(2) The amount actually and necessarily expended in repairing or replacing the property at the same site; or,

(3) The limit of insurance.

b. However, we will not pay more than:

(1) Actual cash value of the damage until the repair or replacement is completed. After the actual cash value of the damage has been paid, you may still make a claim on a replacement cost basis if you notify us that repair or replacement has commenced within 200 days after the loss or damage.

(2) Local builder's grade costs under I.A.2.a. ORIGINAL SPECIFICATIONS if the original plans and specifications cannot be documented or determined.

(3) With respect to "computer equipment" the cost to replace the equipment with the most functionally equivalent to the

Includes copyrighted material of Insurance Services Office, Inc. with its permission

damaged equipment even if such equipment has technological advantages and represents an improvement in function, or forms part of a program enhancement.

(4) With respect to "data" and "media" your cost to research, replace, and/or restore all forms of electronic and magnetic tapes and disks and "data" and the costs to reprogram instructions for use in any covered "computer equipment".

We will not pay to reproduce:

(a) Software programs or operating systems that are not commercially available; or

(b) "Data" that is obsolete, unnecessary, or useless to you.

(5) With respect to "valuable papers and records" the cost to research and restore the information on lost or damaged "valuable papers and records".

(6) With respect to accounts receivables the following costs for lost or damaged accounts receivable:

(a) All amounts due you, that you are unable to collect;

(b) Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;

(c) Collection expenses in excess of your normal collection expenses that are made necessary by the loss or damage; and

(d) Other reasonable expenses that you incur to reestablish your records of accounts receivable.

(7) With respect to "fine arts":

(a) The amount for which the article or item could reasonably be expected to be repaired to its condition immediately prior to loss; or

(b) The amount for which the article or item could reasonably be expected to be replaced with one substantially identical to it; or

(c) The amount of insurance.

## 2. INCREASED REPLACEMENT COST

a. When the "Declarations" indicate that coverage is provided on an increased replacement cost basis, we will pay:

(1) If the building is repaired or replaced at the same "premises", or if you elect to rebuild at another premises, the least of the following:

(a) The increased cost of construction at the same "premises"; or

(b) The limit of insurance.

(2) If the ordinance or law requires relocation to another premises, the least of the following:

(a) The increased cost of construction at the new premises; or

(b) The limit of insurance.

b. We will not pay:

(1) Unless and until the property is actually repaired or replaced;

(2) Unless the repairs or replacement are made as soon as reasonably possible, but within two years of the loss or damage. We may extend this period in writing during the two year period; and,

(3) Unless the restored or remodeled property is intended for similar

Includes copyrighted material of Insurance Services Office, Inc. with its permission

## Property Coverage Part

occupancy as the current property except when such occupancy is not permitted by zoning or land use ordinance or law.

This applies only to Increased Cost of Construction coverage.

### 3. GUARANTEED REPLACEMENT COST

When the "Declarations" indicate that coverage is provided on a guaranteed replacement cost basis, subject to VI.M. REPORTING REQUIREMENTS, we will waive VI.L.1.a.(3) above. All other conditions of VI.L.1. REPLACEMENT COST apply.

### 4. ACTUAL CASH VALUE

When the "Declarations" indicate that coverage is provided on an actual cash value basis, we will pay no more than the least of the following:

a.  The replacement cost less the depreciation of the property at the time of the loss; or

b.  The limit of insurance.

### 5. ACTUAL LOSS SUSTAINED

When the "Declarations" indicate that coverage is provided on an actual loss sustained basis, we will pay no more than the least of the following:

a.  Actual dollar amount of your loss; or

b.  Amount you actually and necessarily spend; or

c.  The limit of insurance.

### M. REPORTING REQUIREMENTS

### 1. NEWLY ACQUIRED, CONVEYED, OR TRANSFERRED PROPERTY

Insurance under I.B.3. NEWLY ACQUIRED, CONVEYED, OR TRANSFERRED PROPERTY will terminate when any of the following first occurs:

a.  This policy ends; or

b.  90 days expire after you acquire or begin to construct the property; or

c.  You request coverage on such property.

We will charge you additional premium for values reported from the date construction begins or you acquire the property.

### 2. GUARANTEED REPLACEMENT COST

When VI.L.3. GUARANTEED REPLACEMENT COST coverage is provided you must report to us within 30 days following the completion of:

a.  Any addition, improvement, or alteration to property covered under I.A.1. COMMUNITY BUILDINGS AND STRUCTURES and I.A.2. "UNITS" which increases the value by $25,000 or more.

b.  Any addition, improvement, alteration, or acquisition to property covered under I.A.3. COMMUNITY PERSONAL PROPERTY which increases the value by $25,000 or more.

Your failure to comply with this condition will void any recovery under VI.L.3. GUARANTEED REPLACEMENT COST for additions, improvements, alterations, or acquisitions to property described in a. and b. above. We will charge you additional premium for values reported from the date construction begins or you acquire the property.

### N. APPRAISAL

1.  If you and we disagree on the amount of loss or value of property, either may make written demand for an appraisal of the loss. In this event, each party will do the following:

a.  Select a competent and impartial appraiser. You and we must notify the other of the appraiser selected within 20 days of the written demand for appraisal.

---

Includes copyrighted material of Insurance Services Office, Inc. with its permission

(1) The appraisers will state separately and independently the amount of the loss or damage.

(2) If the two appraisers fail to agree they will select an umpire. If the appraisers do not agree on the selection of an umpire within 15 days, they must request selection of an umpire by a judge of a court having jurisdiction.

(3) An agreement by any two will be binding as to the amount of the loss.

b. Pay the costs of its own appraiser.

c. Bear the other expenses of the appraisal and umpire equally.

2. If there is an appraisal, we will still retain our right to deny the claim.

## O. LOSS PAYMENT

1. In accordance with VI.L. VALUATION, in the event of loss or damage covered by this Property Coverage Part, at our option, we will either:

a. Pay the value of lost or damaged property;

b. Pay the cost of repairing or replacing the lost or damaged property;

c. Take all or any part of the property at an agreed or appraised value; or

d. Repair, rebuild, or replace the property with other property of comparable quality.

Except for coverage provided under II.D ORDINANCE OR LAW COVERAGE.

2. With regard to II.D. ORDINANCE OR LAW COVERAGE provided under this policy, coverage is subject to the qualifications shown below. The property must sustain:

a. Direct physical damage that is covered under this policy and as a result of such damage you are required to comply with the ordinance or law; or

b. Both direct physical damage that is covered under this policy; and direct physical damage that is not covered under this policy, and as a result of the building damage in its entirety you are required to comply with the ordinance or law.

In this situation, we will not pay the full amount of loss otherwise payable under II.D. ORDINANCE OR LAW COVERAGE. Instead, we will pay a proportion of such loss; meaning the proportion that the covered direct physical damage bears to the total direct physical damage.

However, if the covered direct physical damage, alone, would have resulted in the enforcement of or compliance with the ordinance or law, then we will pay the amount of loss otherwise payable under the terms of II.D. ORDINANCE OR LAW COVERAGE.

However, if the property sustains direct physical damage that is not covered under this policy, and such damage is subject to ordinance or law, then no coverage under II.D. ORDINANCE OR LAW COVERAGE will be provided even if the property has also sustained direct physical damage.

3. We will notify you of our intentions within 30 days after we receive the sworn statement of loss.

4. We will not pay for more than your financial interest in the "covered property".

5. We may adjust losses with the owners of lost or damaged property, if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the "covered property".

6. We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

## Property Coverage Part

7. We will pay within 30 days after we receive the sworn statement of loss, if you have complied with all of the terms of this Property Coverage Part and:

   a. We have reached agreement with you on the amount of loss; or

   b. An appraisal award has been made.

8. If an insurance trustee is shown in the "Declarations", we will adjust losses with you, but we will pay the insurance trustee. If we pay the trustee, the payments will satisfy your claims against us.

### P. RECOVERIES AND SUBROGATION

Except with regard to "money" and "securities", "employee dishonesty", "computer fraud", and "depositors forgery", or any loss subject to multiple deductibles:

1. If you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property.

   We will pay recovery expenses and the expenses to repair the recovered property, subject to the amount we paid you.

2. If we issued payment and are successful in pursuing subrogation for all or a portion of the total covered loss, and that loss payment was subject to a deductible, we may first reimburse you your deductible up to the limit of your covered exposure or the maximum amount we have recovered, whichever is less, without deduction for the cost to pursue the funds.

3. With regard to "money" and "securities" and IV.B. WORLD WIDE CRIME COVERAGES:

   a. Any recoveries, less the cost of obtaining them, made after settlement of loss covered by this insurance will be distributed as follows:

      (1) To you, until you are reimbursed for any loss that you sustain that

exceeds the limit of insurance and the deductible amount, if any;

      (2) Then to us, until we are reimbursed for the settlement made;

      (3) Then to you, until you are reimbursed for that part of the loss equal to the deductible amount, if any.

   b. Recoveries do not include any recovery:

      (1) From insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or

      (2) Of original "securities" after duplicates of them have been issued.

### Q. ABANDONMENT

You cannot abandon any property to us.

### R. REIMBURSEMENT

In the event we pay you more than you are entitled to under the provisions of this contract, you must reimburse us in the amount of any such overpayment.

### S. UNIT OWNER ACTS OR OMISSIONS

No act or omission by any unit owner will void the policy or be a condition to recovery under this policy. However, this does not apply to unit owners acting within the scope of their authority on behalf of your Association.

This does not supersede any exclusions contained in this policy.

### T. SUSPENSION

Upon discovery of a dangerous condition with respect to any boiler, fired or unfired pressure vessel, refrigerating or air conditioning system, piping and its accessory equipment, and any mechanical or electrical machine or apparatus used for the generation, transmission, or utilization of mechanical or electrical power, any of our representatives may immediately suspend the insurance with respect to loss or damage to said object by written notice mailed or delivered to you at your address, or at the location of the object, as specified for it in the "Declarations". Insurance so suspended may be reinstated by us, but only by an endorsement

Includes copyrighted material of Insurance Services Office, Inc. with its permission

## Property Coverage Part

issued to form a part hereof. You shall be allowed the unearned portion of the premium paid for such suspended insurance, pro rata, for the period of suspension.

### U. POLICY PERIOD

Under this Property Coverage Part we provide coverage for loss or damage during the "policy period".

**Includes copyrighted material of Insurance Services Office, Inc. with its permission**

## Liability Coverage Part

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the "Declarations". "We", "us", and "our" refer to the company providing this insurance. Other words and phrases that appear in quotation marks have special meaning. Refer to XXII. DEFINITIONS SECTION.

**THE AMOUNT WE WILL PAY FOR DAMAGES IS LIMITED AS DESCRIBED IN XIX. LIABILITY LIMITS OF INSURANCE SECTION.**

### GENERAL LIABILITY

**The word insured means any person or organization qualifying as such under XII. GENERAL LIABILITY WHO IS AN INSURED SECTION.**

### VII. GENERAL LIABILITY COVERAGES SECTION

We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", "personal injury", or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. We will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage", "personal injury", or "advertising injury" to which this insurance does not apply.

With respect to "bodily injury" or "property damage", this insurance applies to "bodily injury" or "property damage" only if:

a. The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

b. The "bodily injury" or "property damage" occurs during the "policy period";

c. Prior to the "policy period", no insured knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If any insured knew, prior to the "policy period", that the "bodily injury" or "property damage" occurred, in whole or in any part, then any continuation, change, or resumption of such "bodily injury" or "property damage" during or after the "policy period" will be deemed to have occurred prior to the "policy period".

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or begun to occur.

With respect to "personal injury" or "advertising injury", this insurance applies only to "personal injury" or "advertising injury" caused by an "offense" arising out of the insured's operations which was committed during the "policy period" in the "coverage territory".

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under IX. GENERAL LIABILITY MEDICAL PAYMENTS SECTION or X. GENERAL LIABILITY DEFENSE OF "SUIT" SECTION.

Below are specific descriptions of coverage and specific applicable exclusions, designated by capitalized letter, from XI. GENERAL LIABILITY EXCLUSIONS SECTION.

This insurance applies only to:

### A. "BODILY INJURY" AND "PROPERTY DAMAGE"

#### 1. BODILY INJURY"

"Bodily injury" caused by an "occurrence". Only exclusions A., B., C., D., E., F., G., H., I., J., K., L., M., N., O., S., AA., BB., CC., and DD., and those added by endorsement, apply to "bodily injury".

#### 2. "PROPERTY DAMAGE"

"Property damage" caused by an "occurrence."

Only exclusions A., B., C., D., E., F., G., H., I., J., K., L., M., N., P., Q., R. S., AA., BB., CC.,

---

Includes copyrighted material of Insurance Services Office, Inc. with its permission

and DD., and those added by endorsement, apply to "property damage".

## B. "PERSONAL INJURY" AND "ADVERTISING INJURY"

### 1. "PERSONAL INJURY"

"Personal injury" caused by an "offense" arising out of your operations, excluding advertising, publishing, broadcasting, or telecasting done by or for you.

Only exclusions A., B., C., D., G., H., I., N., T., U., AA., BB., and CC., and those added by endorsement, apply to "personal injury".

### 2. "ADVERTISING INJURY"

"Advertising injury" caused by an "offense" committed in the course of advertising your goods, products or services.

Only exclusions A., B., C., D., G., H., I., T., V., AA., BB., and CC., and those added by endorsement, apply to "advertising injury".

## C. "HIRED AUTO" AND "NONOWNED AUTO"

### 1. "HIRED AUTO"

"Bodily injury" or "property damage" caused by an "occurrence" arising out of the maintenance or use of a "hired auto" by you, your directors or "officers", or your "employees" in the course of your operations.

### 2. "NONOWNED AUTO"

"Bodily injury" or "property damage" caused by an "occurrence" arising out of the use of any "nonowned auto" in your operations by any person other than you.

Only exclusions B., D., E., G., H., I., M., N., O., X. and Y., and those added by endorsement apply to "hired auto" and "nonowned auto".

## D. PROPERTY DAMAGE LEGAL LIABILITY - REAL PROPERTY

"Property damage" caused by an "occurrence" to real property of others, including permanently attached fixtures, rented to or occupied by you. This insurance applies only if such "property damage" is caused by a COVERED CAUSE OF LOSS described in III.A. COVERED CAUSE OF LOSS.

Only exclusions A., D., E., G., H., I., M., N., Q., BB., and DD., and those added by endorsement, apply to this coverage.

## VIII. GENERAL LIABILITY GARAGE AND PARKING AREA LEGAL LIABILITY SECTION

**Exclusions under the XI. GENERAL LIABILITY EXCLUSIONS SECTION applicable to garage and parking area legal liability coverage are designated by letter in this section.**

We will pay all sums the insured legally must pay as damages for "property damage", which are direct, to an "auto", "auto equipment" or "mobile equipment" left in the insured's care while the insured is attending, servicing, repairing, parking, or storing it in your "garage operations" provided that the loss is covered by either A. or B. below:

## A. COMPREHENSIVE COVERAGE

From any cause except:

1. The "auto's" collision with another object; or
2. The "auto's" overturn.

## B. COLLISION COVERAGE

Caused by:

1. The "auto's" collision with another object; or
2. The "auto's" overturn.

Only exclusions D., E., G., H., I., M. and W., and those added by endorsement, apply to Comprehensive and Collision coverages.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

## IX. GENERAL LIABILITY MEDICAL PAYMENTS SECTION

**Exclusions under the XI. GENERAL LIABILITY EXCLUSIONS SECTION applicable to medical payments coverage are designated by letter in this section.**

We will pay reasonable "medical expenses" for "bodily injury", without regard to fault, caused by an accident occurring: on premises you own or rent; on ways adjoining premises you own or rent; or because of your operations. Payments will not exceed the limit of insurance. We will pay provided that:

A.  The accident takes place in the "coverage territory" and during the "policy period";

B.  The expenses are incurred and reported to us within one year of the date of the accident; and

C.  The injured person submits to, at our expense, an examination under oath and/or an examination by physicians of our choice, as often as we reasonably require.

Only exclusions A., B., C., D., E., F., G., H., I., J., K., L., M., N., O., Z., BB., and DD., and those added by endorsement, apply to this coverage.

## X. GENERAL LIABILITY DEFENSE OF "SUIT" SECTION

We will have the right and duty to defend the insured against any "suit" seeking damages payable under VII. GENERAL LIABILITY COVERAGES SECTION or VIII. GENERAL LIABILITY GARAGE AND PARKING AREA LEGAL LIABILITY SECTION. We may, at our discretion, investigate any "occurrence" or "offense", and settle any claim or "suit" that may result. Our right and duty to defend ends when we have exhausted the applicable limit of insurance in the payment of judgments or settlements under VII. GENERAL LIABILITY COVERAGES SECTION, or VIII. GENERAL LIABILITY GARAGE AND PARKING AREA LEGAL LIABILITY SECTION. We will pay "defense costs", with respect to any "suit" we defend, in addition to the limit of insurance. We will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage", "personal injury", or "advertising injury" to which this insurance does not apply.

Even if we initially defend or initially pay to defend any "suit", we may later determine that there is no coverage for such "suits". In that event, we have the right to reimbursement for the "defense costs" we incur from the date we notify you, in writing, of our:

1.  Determination that coverage does not apply;

2.  Reservation of our rights to terminate the defense or payment for the defense; and

3.  Intention to seek reimbursement of our "defense costs".

## XI. GENERAL LIABILITY EXCLUSIONS SECTION

**As specifically indicated in VII. GENERAL LIABILITY COVERAGES SECTION, VIII. GENERAL LIABILITY GARAGE AND PARKING AREA LEGAL LIABILITY SECTION and IX. GENERAL LIABILITY MEDICAL PAYMENTS SECTION, this insurance does not apply to:**

### A.  "PROFESSIONAL SERVICE"

"Bodily injury", "property damage", "personal injury", or "advertising injury" arising out of the rendering or failure to render "professional service".

This exclusion does not apply to "bodily injury" arising from "incidental medical malpractice" provided for under VII.A.1."BODILY INJURY".

### B.  WORKERS COMPENSATION AND SIMILAR LAWS

Any obligation of the insured under workers compensation, disability benefits, or unemployment compensation law, or any similar law.

### C.  EMPLOYMENT RELATED PRACTICES

"Bodily injury", "property damage", "personal injury", or "advertising injury" sustained by any person or organization arising out of or in any way related to any:

1.  Refusal to employ;

2.  Termination of employment;

3.  Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination, or other

Includes copyrighted material of Insurance Services Office, Inc. with its permission

# Liability Coverage Part

employment related practices, policies, acts, or omissions; or

4. Consequential "bodily injury", "property damage", "personal injury", or "advertising injury" as a result of subparagraphs 1., 2., and 3. above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

## D. CERTAIN CONTRACTS

"Bodily injury", "property damage", "personal injury", or "advertising injury" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

1. That the insured would have in the absence of the contract or agreement; or

2. Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury", "property damage", "personal injury", or "advertising injury" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury", "property damage", "advertising injury", or "personal injury" provided:

   a. Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

   b. Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

## E. EXPECTED OR INTENDED "BODILY INJURY" AND "PROPERTY DAMAGE"

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

## F. ALCOHOLIC BEVERAGES

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

1. Causing or contributing to the intoxication of any person;

2. The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

3. Any statute, ordinance, or regulation relating to the sale, gift, distribution, or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

(1) The supervision, hiring, employment, training, or monitoring of others by that insured; or

(2) Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph 1., 2., or 3. above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving, or furnishing alcoholic beverages.

## G. POLLUTION

1. "Bodily injury", "property damage", "advertising injury", or "personal injury" which would not have occurred in whole or part but for the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of "pollutants" at any time.

   This exclusion does not apply to "bodily injury", "property damage", "advertising injury", or "personal injury" arising out of heat, smoke, or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

   a. At any premises, site, or location which is or was at any time used by or for any

Includes copyrighted material of Insurance Services Office, Inc. with its permission

insured or others for the handling, storage, disposal, processing, or treatment of waste; or

b. At any premises, site, or location on which any insured or any contractors or subcontractors, working directly or indirectly, on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to, or assess the effects of, "pollutants".

This exclusion does not apply to "bodily injury", "property damage", "advertising injury", or "personal injury" arising out of the escape of fuels, lubricants, or other operating fluids which are needed to perform the normal electrical, hydraulic, or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants, or other operating fluids escape from a vehicle part designed to hold, store, or receive them. This exception does not apply if the "bodily injury", "property damage", "advertising injury", or "personal injury" arises out of the intentional discharge, dispersal or release of fuels, lubricants, or other operating fluids, or if such fuels, lubricants, or other operating fluids are brought on or to the premises, site, or location with the intent that they be discharged, dispersed, or released as part of the operations being performed by such insured, contractor, or subcontractor.

2. Any loss, cost, or expense arising out of any:

a. Request, demand, order, or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

b. Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

## H. ASBESTOS

"Bodily injury", "property damage", "personal injury", or "advertising injury" of any nature whatsoever, based on, caused by, attributable to, related to, or in any manner and at any time arising out of:

1. The use, installation, storage, withdrawal, removal, encapsulation, destruction, containment, testing, distribution, ownership, sale, or disposal of asbestos, asbestos dust, asbestos fibers, or material containing asbestos; or

2. Exposure to asbestos, asbestos dust, asbestos fibers, or material containing asbestos; or

3. Any error or omission in supervision, instructions, recommendations, notices, warnings, or advice given, or which should have been given, in connection with asbestos, asbestos dust, asbestos fibers, or material containing asbestos; or

4. Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to, or assessing the effects of asbestos.

## I. ROT, MOLD AND MILDEW OR OTHER FUNGI

"Bodily injury", "property damage ", "personal injury", or "advertising injury" based upon or arising out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, presence of, or required removal or abatement of fungi, rot, mold, or mildew regardless of whether such rot, mold, mildew, or other fungi, ensues from any cause or condition concurrently or in any sequence on, at, under, or emanating from or to the "premises", including but not limited to any such cause or condition involving the presence, discharge, or infiltration of moisture, vapor, water, or any other liquid, or any damage related to any of these.

Any loss, cost or expenses arising out of the testing for, monitoring, disposing of, or in any way responding to, or assessing the effects of

Includes copyrighted material of Insurance Services Office, Inc. with its permission

## Liability Coverage Part

fungi, rot, mold, or mildew by any insured or by any other person or entity.

### J. "AUTO"

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use, or entrustment to others of any "auto" owned, or operated by, or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

1. Parking an "auto" on, or on the ways next to, property you own or rent, provided the "auto" is not owned by, or rented, or loaned to you or the insured; or

2. "Bodily injury" or "property damage" arising out of the operation of "mobile equipment".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training, or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use, or entrustment to others of any "auto" that is owned or operated by or rented or loaned to any insured.

### K. AIRCRAFT AND WATERCRAFT LIABILITY

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use, or entrustment to others of any aircraft, "unmanned aircraft", or watercraft owned, chartered, or operated by, or rented, or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training, or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use, or entrustment to others of any aircraft, "unmanned aircraft", or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

1. Any watercraft while ashore on premises you own or rent;

2. A watercraft you do not own that is:

   a. Less than 50 feet long; and

   b. Not being used to carry persons or property for a charge.

3. Liability assumed under any "insured contract" for the ownership, maintenance, or use of aircraft, "unmanned aircraft", or watercraft.

### L. "MOBILE EQUIPMENT"

"Bodily injury" or "property damage" arising out of:

1. The transportation of "mobile equipment" by an "auto" owned, or operated by, or rented or loaned to any insured; or

2. The use of "mobile equipment" in, or while in practice for or while being prepared for, any prearranged racing, speed, demolition contest, or stunting activity.

### M. "WAR"

"Bodily injury" or "property damage" due to "war" or any act or condition incidental to "war".

### N. NUCLEAR ENERGY

Under any Liability Coverage, "bodily injury", "property damage", "advertising injury", or "personal injury":

1. With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Energy Insurance Association of Canada, or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

2. Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

   a. Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law that amends it; or

Includes copyrighted material of Insurance Services Office, Inc. with its permission

b. The insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America or any of its agencies, under any agreement entered into by the United States of America, or any of its agencies, with any person or organization.

3. Resulting from the "hazardous properties" of "nuclear material" if:

a. The "nuclear material" is at any "nuclear facility" owned by, or operated by, or on behalf of an insured or has been discharged or dispersed therefrom;

b. The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported, or disposed of, by or on behalf of, an insured; or

c. The loss, including all forms of radioactive contamination of property, arises out of "bodily injury", "property damage", "advertising injury", or "personal injury" arises out of the furnishing by an insured of services, materials, parts, or equipment in connection with the planning, construction, maintenance, operation, or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion c. applies only to "property damage" to such "nuclear facility" and any property threat.

## O. "EMPLOYERS LIABILITY"

"Bodily injury" to:

1. An "employee" of the insured arising out of and in the course of:

a. Employment by the insured; or

b. Performing duties related to the conduct of the insured's business; or

2. The spouse, child, parent, brother, or sister of that "employee" as a consequence of subparagraph 1. above.

This exclusion applies:

1. Whether the insured may be liable as an employer or in any other capacity; and

2. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

## P. DAMAGE TO PROPERTY

1. "Property damage" to:

a. Property which:

(1) you own, rent, or occupy;

(2) you or your community manager acting on your behalf are legally responsible to monitor or maintain; or

(3) is "covered property" under the Property Coverage Part of this policy;

b. Premises you sell, give away, or abandon, if the "property damage" arises out of any part of those premises;

c. Property loaned to you;

d. Personal property in the care, custody, or control of the insured;

e. That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

f. That particular part of any property that must be restored, repaired, or replaced because "your work" was incorrectly performed on it.

2. Paragraph 1.b. of this exclusion does not apply if the premises are "your work" and were never occupied, rented, or held for rental by you.

3. Paragraphs 1.c., 1.d., 1.e., and 1.f. of this exclusion do not apply to liability assumed under a "sidetrack agreement".

4. Paragraph 1.f. of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

Includes copyrighted material of Insurance Services Office, Inc. with its permission

## Q. DAMAGE TO "YOUR PRODUCT" OR "YOUR WORK"

1. "Property damage" to "your product" arising out of it or any part of it.

2. "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply to 2. above if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

## R. DAMAGE TO "IMPAIRED PROPERTY" OR PROPERTY NOT PHYSICALLY INJURED

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

1. A defect, deficiency, inadequacy, or dangerous condition in "your product" or "your work"; or

2. A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

## S. RECALL OF PRODUCTS, WORK OR IMPAIRED PROPERTY

Damages claimed for any loss, cost, or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal, or disposal of:

1. "Your product";

2. "Your work"; or

3. "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy, or dangerous condition in it.

## T. CERTAIN ACTS CAUSING "PERSONAL INJURY" AND "ADVERTISING INJURY"

"Personal injury" or "advertising injury":

1. Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

2. Arising out of oral or written publication of material whose first publication took place before the beginning of the "policy period";

3. Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured;

4. For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in absence of the contract or agreement; or

5. Arising out of the knowing violation of the rights of another caused by or at the direction of the insured with the knowledge that the act would inflict "personal injury" or "advertising injury".

6. Arising out of discrimination that first took place before the beginning of the "policy period".

## U. CERTAIN ACTS CAUSING "PERSONAL INJURY"

"Personal injury" arising out of:

1. Any advertising, publishing, broadcasting, or telecasting done by or for you;

2. Humiliation or discrimination when arising out of the willful violation of any civil rights law whether federal, state, or local ordinance. This includes but is not limited to discrimination on account of race, religion, sex, age, familial status, or handicap; or

3. Humiliation or discrimination when committed by or with knowledge or consent of the insured.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

## V.  CERTAIN ACTS CAUSING "ADVERTISING INJURY"

"Advertising injury" arising out of:

1.  Breach of contract, other than misappropriation of advertising ideas under an implied contract;

2.  The failure of goods, products, or services to conform with advertised quality or performance;

3.  The wrong description of the price of goods, products, or services; or

4.  An "offense" committed by any insured whose business is advertising, broadcasting, publishing, or telecasting.

## W. DAMAGES RELATING TO GARAGE AND PARKING AREA LEGAL LIABILITY

1.  "Property damage" arising out of:

    a.  Liability resulting from any agreement by which the insured accepts responsibility for "property damage";

    b.  Theft or conversion caused in any way by the insured;

    c.  Defective parts or materials; or

    d.  Faulty work you performed. This includes work someone performed for you.

2.  "Property damage" to any of the following:

    a.  "Auto equipment" which is not permanently installed in the:

        (1)  "Auto" by the manufacturer of the "auto" or by an authorized representative of the manufacturer; or

        (2)  Dash or console opening designed by the "auto" manufacturer for the installation of such equipment;

    b.  "Media".

## X.  INJURY RELATING TO "NONOWNED AUTO" AND "HIRED AUTO"

"Bodily injury":

1.  To an "employee" of the insured arising out of and in the course of employment by the insured; or

2.  To the spouse, child, parent, brother, or sister of that "employee" as a consequence of subparagraph 1. above.

This exclusion applies:

1.  Whether the insured may be liable as an employer or in any other capacity; and

2.  To any obligation to share damages with or repay someone else who must pay damages because of injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

## Y.  DAMAGE RELATING TO "NONOWNED AUTO" AND "HIRED AUTO"

"Property damage" to:

1.  Property owned or being transported by, or rented or loaned to the insured; or

2.  Property in the care, custody, or control of the insured.

## Z.  EXPENSES RELATING TO MEDICAL PAYMENTS

"Bodily injury":

1.  To any insured other than a unit owner or a member of the unit owner's family residing in the unit;

2.  To any unit owner or a member of the unit owner's family residing in the unit for injuries occurring on that portion of the premises which is owned or maintained solely by the unit owner;

3.  To a person hired to do work for or on behalf of any insured or a tenant of any insured;

4.  To a person injured on that part of property you own or rent that the person normally occupies;

5.  To a person while taking part in athletics;

6.  To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers compensation, or disability benefits law, or a similar law;

7.  Included within the "products-completed operations hazard"; or,

Includes copyrighted material of Insurance Services Office, Inc. with its permission

8. Due to "war" or any act or condition incidental to "war".

## AA. "CYBER LIABILITY"

1. "Bodily injury", "property damage", "personal injury", or "advertising injury", directly or indirectly, arising out of, caused by, contributed to, or resulting from any:

   a. Functioning, nonfunctioning, improperly functioning, availability, or unavailability of:

      (1) The internet or similar facility;

      (2) Any intranet, private network, or similar facility; or

      (3) Any website, bulletin board, chat room, search engine, portal, or similar third party application service.

   b. Alteration, corruption, destruction, distortion, erasure, "theft", or other loss of or damage to "data", software, information repository, microchip, integrated system, or similar device in any computer equipment or non-computer equipment or any kind of programming or instruction set; or

   c. Loss of use or functionality, whether partial or entire, of "data", coding, program, software, any computer, or computer system or other device dependent upon any microchip or embedded logic and any ensuing inability or failure of any insured to conduct business.

   d. Unauthorized use of, or unauthorized access to electronic "data" or software within your network or business.

   e. Unauthorized access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of non public information.

   f. Any requirement to incur expenses for the notification or credit monitoring of affected parties whose confidential or personal information was compromised or any other related cost or expense.

2. "Bodily injury" directly or indirectly arising out of, caused by, contributed to, or resulting from any electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

## BB. NUCLEAR, BIOLOGICAL, CHEMICAL, AND RADIOLOGICAL HAZARDS

"Bodily injury", "property damage ", "personal injury", or "advertising injury" that is caused, results from, is exacerbated by or otherwise impacted by, either directly or indirectly, any of the following:

1. Nuclear Hazard – including, but not limited to, nuclear reaction, nuclear detonation, nuclear radiation, radioactive contamination and all agents, materials, products, or substances, whether engineered or naturally occurring, involved therein or released thereby;

2. Biological Hazard – including, but not limited to, any biological and/or poisonous or pathogenic agent, material, product, or substance, whether engineered or naturally occurring, that induces or is capable of inducing physical distress, illness, or disease;

3. Chemical Hazard – including, but not limited to, any chemical agent, material, product, or substance;

4. Radioactive Hazard – including, but not limited to, any electromagnetic, optical, or ionizing radiation or energy, including all generators and emitters thereof, whether engineered or naturally occurring.

The provisions of subparagraphs 2 and 3 will not apply where the agent, material, product, or substance at issue is utilized in the course of business by an insured.

**Includes copyrighted material of Insurance Services Office, Inc. with its permission**

## CC. RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION OF LAW

"Bodily injury", "property damage", "advertising injury", or "personal injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

1. The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

2. The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

3. The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

4. Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

## DD. EARTH MOVEMENT

"Bodily injury" or "property damage" arising out of or in any way related to:

1. Earthquake, including any earth sinking, rising, or shifting related to such event; tremors; aftershocks;

2. Landslide, including any earth sinking, rising, or shifting related to such event;

3. Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

4. Earth sinking, rising or shifting including soil conditions which cause settling, cracking, or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil, and the action of water under the ground surface;

5. Slope failure;

6. "Mudslide" or "Mudflow";

7. "Volcanic Eruption".

This exclusion applies whether earth movement is caused by natural or man-made conditions.

## XII. GENERAL LIABILITY WHO IS AN INSURED SECTION

**No person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the "Declarations".**

## A. WHO IS AN INSURED - "BODILY INJURY", "PROPERTY DAMAGE", "PERSONAL INJURY", "ADVERTISING INJURY", AND MEDICAL PAYMENTS

1. With respect to VII.A."BODILY INJURY AND "PROPERTY DAMAGE", VII.B."PERSONAL INJURY" AND "ADVERTISING INJURY", and IX.GENERAL LIABILITY MEDICAL PAYMENTS SECTION each of the following is an insured:

   a. You.

   b. Your directors and "officers", and "committee members", but only with respect to their duties as such.

   c. Your legal representative, if you cease to exist as a legal entity, but only with respect to their duties as such. That representative will have all your rights and duties under GENERAL LIABILITY.

   d. Any person, other than your "employee", or any organization while acting as your community manager.

   e. Your individual unit owners, but only for liability arising out of the ownership, maintenance, or repair of that portion of the premises which is not reserved for that unit owner's exclusive use or occupancy.

   f. Your "employees", other than your directors and "officers", but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

Includes copyrighted material of Insurance Services Office, Inc. with its permission

## Liability Coverage Part

(1) "Bodily injury" or "personal injury" to you or to a "coemployee" while in the course of their employment, or the spouse or partner in a civil union, child, parent, brother, or sister of that "coemployee" as a consequence of such "bodily injury" or "personal injury", or for any obligation to share damages with or repay someone else who must pay damages because of injury; or

(2) Any obligation to share damages with or repay someone else who must pay damages because of the injury described in (1) above; or

(3) "Property damage" to property:

    (a) Owned, occupied or used by;

    (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by you or any of your "employees".

g. Any person or organization, having proper temporary custody of your property if you cease to exist as a legal entity, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

h. Any organization you newly acquire or form, other than a partnership, joint venture, or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

(1) Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the "policy period", whichever is earlier;

(2) Coverage does not apply to "bodily injury" or "property damage" that

occurred before you acquired or formed the organization; and

(3) Coverage does not apply to "personal injury" or "advertising injury" arising out of any "offense" committed before you acquired or formed the organization.

i. Any person is an insured while driving "mobile equipment" along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability.

However, no person or organization is an insured with respect to:

(1) "Bodily injury" to a "coemployee" of the person driving the equipment; or

(2) "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

j. Any person or organization, from whom you lease or rent equipment or personal property, other than "autos", when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an insured only with respect to their liability arising out of the maintenance, operation, or use by you of equipment leased or rented to you by such person or organization. Except for coverage for the "products-completed operations hazard", such person's or organization's status as an insured ends when their contract or agreement with you for such leased equipment ends.

This insurance does not apply:

(1) To any "occurrence" which takes place after the lease or rental period expires;

**Includes copyrighted material of Insurance Services Office, Inc. with its permission**

## Liability Coverage Part

(2) To "bodily injury" or "property damage" arising out of the sole negligence of such person or organization.

2. However, any community manager, director, "officer", "committee member", "employee", or unit owner who is or was affiliated in any capacity with your builder, developer, or sponsor, is not an insured for any claim or "suit" however alleged or pleaded, seeking damages for "bodily injury" or "property damage" arising from, related to, or caused, in whole or in part, by faulty, inadequate, defective, or negligent design or construction of any property, including any allegation in such claim or "suit" of failure to maintain, repair, or replace such property.

### B. WHO IS AN INSURED - "HIRED AUTO" AND "NONOWNED AUTO"

1. With respect to VII.C. "HIRED AUTO" AND "NONOWNED AUTO" each of the following is an insured:

   a. You.

   b. Any other person using a "hired auto" with your permission, but only while such "hired auto" is being used in your operations.

   c. Your directors and "officers", for a "nonowned auto", but only while such "nonowned auto" is being used in your operations.

   d. Your "employees", for a "nonowned auto", but only while such "nonowned auto" is being used in your operations.

   e. Any other person or organization, but only for their liability because of acts or omissions of an insured under a., b., c., or d. above.

2. With respect to VII.C. "HIRED AUTO" AND "NONOWNED AUTO" none of the following is an insured:

   a. Any person engaged in the business of their employer for "bodily injury" to any "coemployee" of such person injured in the course of employment.

   b. Any person while employed in or otherwise engaged in duties in connection with an "auto business", other than an "auto business" you operate.

   c. The owner or lessee (of whom you are a sub lessee) of a "hired auto" or the owner, other than your directors, "officers", or "employees", of a "nonowned auto" or any agent or "employee" of any such owner or lessee.

   d. Your builder, developer, or sponsor or any person or organization affiliated with your builder, developer, or sponsor in any capacity.

### C. WHO IS AN INSURED - GARAGE AND PARKING AREA LEGAL LIABILITY

1. With respect to VIII. GENERAL LIABILITY GARAGE AND PARKING AREA LEGAL LIABILITY each of the following is an insured

   a. You.

   b. Your directors and "officers" and "employees", but only with respect to their duties as such.

   c. Your legal representative, if you cease to exist as a legal entity, but only with respect to their duties as such. That representative will have all your rights and duties under GENERAL LIABILITY.

   d. Any other person, other than your "employee", or organization, while acting as your community manager.

   e. Your "employees", other than your directors and "officers", but only for acts within the scope of their employment by you.

2. With respect to VIII. GENERAL LIABILITY GARAGE AND PARKING AREA LEGAL LIABILITY none of the following is an insured:

   Your builder, developer, or sponsor or any person or organization affiliated with your builder, developer, or sponsor in any capacity.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

## XIII. GENERAL LIABILITY CONDITIONS SECTION

**GENERAL LIABILITY coverage is subject to the following conditions.**

### A. BANKRUPTCY

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under GENERAL LIABILITY.

### B. YOUR DUTIES IN THE EVENT OF "OCCURRENCE", "OFFENSE", CLAIM, OR "SUIT"

Failure to perform these duties will impair your rights under GENERAL LIABILITY or could result in the denial of coverage and defense.

1. You must see to it that we are notified promptly of an "occurrence" or an "offense" which may result in a claim to which this insurance applies. To the extent possible notice should include:

   a. How, when, and where the "occurrence" or "offense" took place;

   b. The names and addresses of any injured persons and witnesses; and

   c. The nature and location of any injury or damage arising out of the "occurrence" or "offense".

2. If a claim is made or "suit" is brought against any insured, you must:

   a. Immediately record the specifics of the claim or "suit" and the date received; and

   b. Notify us as soon as practicable. You must see to it that we receive prompt written notice of the claim or "suit".

3. You and any other involved insured must:

   a. Immediately send us copies of any demands, notices, summonses, or legal papers received in connection with the claim or "suit";

   b. Authorize us to obtain records and other information;

   c. Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and

d. Assist us, upon request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

4. No insureds will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our **prior** written consent.

### C. LEGAL ACTION AGAINST US

No person or organization has a right under GENERAL LIABILITY:

1. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

2. To bring "suit" against us on GENERAL LIABILITY unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an "agreed settlement" or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of GENERAL LIABILITY or that are in excess of the applicable limit of insurance.

### D. SEPARATION OF INSUREDS - CROSS LIABILITY

Except with respect to the limit of insurance, and any rights or duties specifically assigned in GENERAL LIABILITY to the first Named Insured, this insurance applies:

1. As if each Named Insured were the only Named Insured; and

2. Separately to each insured against whom a claim is made or a "suit" is brought.

### E. OTHER INSURANCE

This insurance is excess over any valid insurance whether primary, excess, contingent, or any other basis. However, this provision does not apply to any other insurance that is written specifically as excess over this insurance.

1. This insurance is also excess over:

   a. Fire, Extended Coverage, Builder's Risk, Installation Risk, or similar coverage for "your work";

Includes copyrighted material of Insurance Services Office, Inc. with its permission

# Liability Coverage Part

b. Coverage for "property damage" to real property of others rented to you or temporarily occupied by you with the permission of the owner, including permanently attached fixtures, caused by a COVERED CAUSE OF LOSS as described in III. PROPERTY CAUSES OF LOSS, EXCLUSIONS, AND LIMITATIONS SECTION;

c. Insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with the permission of the owner;

d. Insurance that is not subject to exclusions XI.J. "AUTO" and XI.K. AIRCRAFT AND WATERCRAFT LIABILITY of this Liability Coverage Part, but only if the loss arises out of the maintenance or use of aircraft, "autos", or watercraft.

e. Any other primary insurance available to you covering liability for damages arising out of any premises or operations for which you have been added as an additional insured.

2. Other insurance will be deemed valid regardless of:

a. Any defense asserted by any other insurer based upon the insured's failure to comply with the terms of that insurance; or,

b. The inability of any other insurer to pay because of bankruptcy or insolvency.

3. With respect to IX. GENERAL LIABILITY MEDICAL PAYMENTS SECTION, this insurance is also excess over any other health care benefits or services that are directly or indirectly available to the injured person.

4. With respect to VIII. GENERAL LIABILITY GARAGE AND PARKING AREA LEGAL LIABILITY SECTION, this insurance is excess only when such operations are conducted as a separate business operation by any person or organization not described in XII.C. WHO IS AN INSURED - GARAGE AND PARKING AREA LEGAL LIABILITY.

5. When this insurance is excess:

a. We will pay only our share of the amount of any judgment or settlement that exceeds the sum of:

(1) the total amount that all such other insurance would pay for the judgment or settlement in the absence of this insurance; and

(2) the total of all deductibles and self insured amounts under all such other insurance.

b. We will have no obligation to defend or to provide for any defense; and,

c. We will not pay any amount for "defense costs" or any similar costs. This provision applies whether or not any other insurance would pay "defense costs", or any similar costs, under any circumstances.

d. We will share the remaining amount of any judgment or settlement, if any, that is within the Limit of Liability for this Coverage Part with any other insurance that is not described herein and was not purchased specifically to apply in excess of the Limits of Insurance shown in the Declarations for this Coverage Part.

6. Method of Sharing

If all of the other insurance permits contribution by equal shares, or is silent as to its method of sharing, we agree to follow the contribution of equal shares method. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance expressly does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

## EXCESS LIABILITY

**The word insured means any person or organization qualifying as such under XVII. EXCESS LIABILITY WHO IS AN INSURED SECTION.**

This insurance is subject to the same terms, conditions, agreements, exclusions, and definitions as the "underlying insurance", except with respect to any provisions to the contrary contained in this insurance

We will have no obligation under this insurance with respect to any claim or "suit" that is settled without our consent.

## XIV. EXCESS LIABILITY COVERAGE SECTION

A.  We will pay those sums, in excess of the limits of liability under the terms of any "underlying insurance", that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies, provided that the "underlying insurance" also applies, or would apply but for the exhaustion of its applicable limits of insurance. However, if any limit, such as a sublimit, is specified in the "underlying insurance", this insurance does not apply to "bodily injury" , "property damage" , "personal injury", or "advertising injury" arising out of that exposure unless that limit is specified in the "Declarations" of this policy under the schedule of "underlying insurance".

B.  With respect to "bodily injury" or "property damage", this insurance applies only if:

1.  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

2.  The "bodily injury" or "property damage" takes place during the "policy period"; and

3.  Prior to the "policy period", no insured knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If an insured knew, prior to the "policy period", that the "bodily injury" or "property damage" occurred, then any continuation, change, or resumption of such "bodily injury" or "property damage" during or after the "policy

period" will be deemed to have been known prior to the "policy period".

4.  "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured:

(a)  Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(b)  Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(c)  Becomes aware by any other means that "bodily injury" or "property damage" has occurred or begun to occur.

However, when this insurance is excess of "Employers Liability" it applies to "bodily injury" by disease to your "employees" only if the following conditions are met:

1.  The "bodily injury" by disease must be caused or aggravated by the conditions of your employment; and

2.  The "employee's" last day of last exposure to the conditions causing or aggravating such "bodily injury" by disease must occur during the "policy period" and take place in the "coverage territory".

With respect to "personal injury" or "advertising injury", this insurance applies only to "personal injury" or "advertising injury" caused by an "offense" arising out of your operations which was committed during the "policy period" in the "coverage territory".

C.  No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under XV. EXCESS LIABILITY DEFENSE OF "SUIT" SECTION.

## XV. EXCESS LIABILITY DEFENSE OF "SUIT" SECTION

A.  We will have the right to participate in the defense of "suits" against the insured seeking damages because of "bodily injury", "property damage", "personal injury", or "advertising injury" to which

Includes copyrighted material of Insurance Services Office, Inc. with its permission

this insurance may apply. We will have a duty to defend such "suits" when the applicable limit of insurance of the "underlying insurance" has been used up by payments for judgments or settlements.

B. We may investigate any claim or "suit" we deem appropriate.

C. When we have the duty to defend, we will pay for all "defense costs" once our duty to defend begins.

D. If we exercise our right to defend when there is no duty, we will pay only the "defense costs" we incur.

E. If we provide a defense, we may investigate any "suit" at our discretion. We may settle such claim or "suit" within the limit of insurance available at the time of settlement.

F. Our payment of "defense costs" will not reduce the limits of insurance.

G. Our right or duty to defend ends when we have exhausted the limit of insurance available in the payment of judgments or settlements under XIV. EXCESS LIABILITY COVERAGE SECTION.

H. Even if we initially defend or initially pay to defend any "suit", we may later determine that there is no coverage for such "suit". In that event, we have the right to reimbursement for the "defense costs" we incur from the date we notify you, in writing, of our:

1. Determination that coverage does not apply;

2. Reservation of our rights to terminate the defense or payment for the defense; and

3. Intention to seek reimbursement of our "defense costs".

## XVI. EXCESS LIABILITY EXCLUSIONS SECTION

**The exclusions applicable to the "underlying insurance" also apply to this insurance. Additionally, this insurance does not apply to:**

### A. MEDICAL PAYMENTS

Any obligation to pay expenses under any medical payments coverage.

### B. EMPLOYMENT RELATED PRACTICES

"Bodily injury", "property damage", "personal injury", or "advertising injury" arising out of or in any way related to:

1. Refusal to employ;

2. Termination of employment;

3. Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination, or other employment related practices, policies, acts or omissions; or

4. Consequential "bodily injury", "property damage", "personal injury", or "advertising injury" as a result of subparagraphs 1., 2., and 3. above.

This exclusion applies whether an insured may be liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

### C. WORKERS COMPENSATION AND SIMILAR LAWS

Any obligation of the insured under workers compensation, disability benefits, or unemployment compensation law, or any similar law.

### D. ERISA

Any obligation imposed under Employee Retirement Income Security Act (ERISA) of 1974 as of now or hereafter amended.

### E. "AUTO" FIRST PARTY

1. "Bodily injury" or "property damage" arising out of the ownership, maintenance, or use of any "auto" which is not a "covered auto" or

2. Any loss, cost, or expense payable under or resulting from any first party physical damage coverage, no-fault law, personal injury protection, or auto medical payments coverage, or uninsured or underinsured motorist law.

### F. POLLUTION

1. "Bodily injury", "property damage", "advertising injury", or "personal injury"

Includes copyrighted material of Insurance Services Office, Inc. with its permission

## Liability Coverage Part

which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release, or escape of "pollutants" at any time.

This exclusion does not apply to "bodily injury", "property damage", "advertising injury", or "personal injury" arising out of heat, smoke, or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

a. At any premises, site, or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing, or treatment of waste; or

b. At any premises, site, or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to, or assess the effects of, "pollutants".

This exclusion does not apply to "bodily injury", "property damage", "advertising injury", or "personal injury" arising out of the escape of fuels, lubricants, or other operating fluids which are needed to perform the normal electrical, hydraulic, or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants, or other operating fluids escape from a vehicle part designed to hold, store, or receive them. This exception does not apply if the "bodily injury", "property damage", "advertising injury", or "personal injury" arises out of the intentional discharge, dispersal or release of fuels, lubricants, or other operating fluids, or if such fuels, lubricants, or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed, or released as part of the operations being performed by such insured, contractor, or subcontractor.

2. Any loss, cost, or expense arising out of any:

a. Request, demand, order, or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, or

neutralize, or in any way respond to, or assess the effects of "pollutants"; or

b. Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

## G. ASBESTOS

"Bodily injury", "property damage", "personal injury", or "advertising injury" of any nature whatsoever, based on, caused by, attributable to, related to, or in any manner and at any time arising out of:

1. The use, installation, storage, withdrawal, removal, encapsulation, destruction, containment, testing, distribution, ownership, sale, or disposal of asbestos, asbestos dust, asbestos fibers or material containing asbestos; or

2. Exposure to asbestos, asbestos dust, asbestos fibers, or material containing asbestos; or

3. Any error or omission in supervision, instructions, recommendations, notices, warnings, or advice given, or which should have been given, in connection with asbestos, asbestos dust, asbestos fibers, or material containing asbestos; or

4. Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to, or assessing the effects of asbestos.

## H. NUCLEAR ENERGY

Under any Liability Coverage, "bodily injury", "property damage", "advertising injury", or "personal injury":

1. With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability

Includes copyrighted material of Insurance Services Office, Inc. with its permission

## Liability Coverage Part

Underwriters, Nuclear Energy Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

2. Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

   a. Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law that amends it; or

   b. The insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America or any of its agencies, under any agreement entered into by the United States of America, or any of its agencies, with any person or organization.

3. Resulting from the "hazardous properties" of "nuclear material" if:

   a. The "nuclear material" is at any "nuclear facility" owned by, or operated by or on behalf of an insured or has been discharged or dispersed therefrom;

   b. The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported, or disposed of by or on behalf of an insured; or

   c. The loss, including all forms of radioactive contamination of property, arises out of "bodily injury" or "property damage", arises out of the furnishing by an insured of services, materials, parts, or equipment in connection with the planning, construction, maintenance, operation, or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion c. applies only to "property damage" to such "nuclear facility" and any property thereat.

### I. ROT, MOLD AND MILDEW OR OTHER FUNGI

"Bodily injury", "property damage ", "personal injury", or "advertising injury" based upon or arising out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, presence of, or required removal or abatement of fungi, rot, mold, or mildew regardless of whether such rot, mold, mildew, or other fungi, ensues from any cause or condition concurrently or in any sequence on, at, under, or emanating from or to the "premises", including but not limited to any such cause or condition involving the presence, discharge, or infiltration of moisture, vapor, water, or any other liquid, or any damage related to any of these.

Any loss, cost or expenses arising out of the testing for, monitoring, disposing of, or in any way responding to, or assessing the effects of fungi, rot, mold, or mildew by any insured or by any other person or entity.

### J. NUCLEAR, BIOLOGICAL, CHEMICAL AND RADIOLOGICAL HAZARDS

"Bodily injury", "property damage ", "personal injury", or "advertising injury" that is caused, results from, is exacerbated by or otherwise impacted by, either directly or indirectly, any of the following:

1. Nuclear Hazard – including, but not limited to, nuclear reaction, nuclear detonation, nuclear radiation, radioactive contamination and all agents, materials, products or substances, whether engineered or naturally occurring, involved therein or released thereby;

2. Biological Hazard – including, but not limited to, any biological and/or poisonous or pathogenic agent, material, product or substance, whether engineered or naturally occurring, that induces or is capable of inducing physical distress, illness, or disease;

3. Chemical Hazard – including, but not limited to, any chemical agent, material, product, or substance;

4. Radioactive Hazard – including, but not limited to, any electromagnetic, optical, or

Includes copyrighted material of Insurance Services Office, Inc. with its permission

ionizing radiation or energy, including all generators and emitters thereof, whether engineered or naturally occurring.

The provisions of subparagraphs 2. and 3. will not apply where the agent, material, product or substance at issue is utilized in the course of business by an insured.

## K. "CYBER LIABILITY"

1. "Bodily injury", "property damage", "personal injury", or "advertising injury", directly or indirectly, arising out of, caused by, contributed to, or resulting from any:

   a. Functioning, nonfunctioning, improperly functioning, availability, or unavailability of:

      (1) The internet or similar facility;

      (2) Any intranet, or private network, or similar facility; or

      (3) Any website, bulletin board, chat room, search engine, portal, or similar third party application service.

   b. Alteration, corruption, destruction, distortion, erasure, "theft", or other loss of or damage to "data", software, information repository, microchip, integrated system, or similar device in any computer equipment or non-computer equipment or any kind of programming or instruction set; or

   c. Loss of use or functionality, whether partial or entire, of "data", coding, program, software, any computer, or computer system or other device dependent upon any microchip or embedded logic and any ensuing inability or failure of any insured to conduct business.

   d. Unauthorized use of, or unauthorized access to electronic "data" or software within your network or business.

   e. Unauthorized access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets,

processing methods, customer lists, financial information, credit card information, health information or any other type of non- public information.

   f. Any requirement to incur expenses for the notification or credit monitoring of affected parties whose confidential or personal information was compromised or any other related cost or expense.

2. "Bodily injury" directly or indirectly arising out of, caused by, contributed to, or resulting from any electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

## L. RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION OF LAW

"Bodily injury", "property damage", advertising injury", or "personal injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

1. The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

2. The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

3. The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

4. Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

## M. EARTH MOVEMENT

"Bodily injury" or "property damage" arising out of or in any way related to:

1. Earthquake, including any earth sinking, rising, or shifting related to such event; tremors; aftershocks;

Includes copyrighted material of Insurance Services Office, Inc. with its permission

2. Landslide, including any earth sinking, rising, or shifting related to such event;

3. Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

4. Earth sinking, rising or shifting including soil conditions which cause settling, cracking, or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil, and the action of water under the ground surface;

5. Slope failure;

6. "Mudslide" or "mudflow";

7. "Volcanic eruption".

This exclusion applies whether earth movement is caused by natural or man-made conditions.

## XVII. EXCESS LIABILITY WHO IS AN INSURED SECTION

With respect to XIV. EXCESS LIABILITY COVERAGE SECTION, an insured is the Named Insured as shown in the "Declarations" and any other person or organization qualifying as an insured under this policy.

## XVIII. EXCESS LIABILITY CONDITIONS SECTION

If any of the following conditions are contrary to conditions contained in the "underlying insurance" the provisions contained in this section apply.

### A. APPEALS

In the event the "underlying insurer" elects not to appeal a judgment in excess of the limits of the "underlying insurance", we may elect to make such appeal. If we so elect, we shall be liable, in addition to the limit of insurance, for all "defense costs" we incur. In no event will this provision increase our liability beyond the applicable Limits of Insurance described in Section XIX. Liability Limits Of Insurance.

### B. YOUR DUTIES IN THE EVENT OF "OCCURRENCE", "OFFENSE", CLAIM, OR "SUIT"

Failure to perform these duties will impair your rights under EXCESS LIABILITY.

1. You must see to it that we are notified promptly of an "occurrence" or an "offense" which may result in a claim to which this insurance applies. To the extent possible notice should include:

   a. How, when and where the "occurrence" or an "offense" took place;

   b. The names and addresses of any injured persons and witnesses; and

   c. The nature and location of any injury or damage arising out of the "occurrence" or an "offense".

2. If a claim is made or "suit" is brought against any insured, you must see to it that we receive prompt written notice of the claim or "suit".

3. You and any other involved insured must:

   a. Immediately send us copies of any demands, notices, summonses, or legal papers received in connection with the claim or "suit";

   b. Authorize us to obtain records and other information;

   c. Cooperate with us or the "underlying insurer" in the investigation, settlement or defense of the claim or "suit";

   d. Assist us, or the "underlying insurer", upon request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply; and

   e. Notify us immediately of any judgment or settlement of any claim or "suit" brought against any insured.

4. No insureds will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any

Includes copyrighted material of Insurance Services Office, Inc. with its permission

expense, other than for first aid, without our prior written consent.

## C. BANKRUPTCY OF UNDERLYING INSURER

In the event of bankruptcy or insolvency of any "underlying insurer", the insurance afforded by this policy shall not replace such "underlying insurance", but shall apply as if the "underlying insurance" was valid and collectible.

## D. MAINTENANCE OF "UNDERLYING INSURANCE"

**In the event of failure to comply with this condition, we will only be liable to the same extent as if there had been compliance with this condition.**

1. You agree to maintain all "underlying insurance" in full force and effect during the term of this policy, and to inform us within 30 days of any replacement or renewal of that "underlying insurance" by the same or another insurer.

   Reduction or exhaustion of the "aggregate limit" of any "underlying insurance" by payments for judgments or settlements will not be a failure to maintain "underlying insurance" in full force and effect.

2. If such "underlying insurance" is not maintained in full force and effect, or if any limits of insurance of an "underlying policy" are less than those stated in the Schedule of "Underlying Insurance" shown in the "Declarations", or if "underlying insurance" is unavailable to any insured due to bankruptcy or insolvency of the "underlying insurer", or if there is any material change in the coverages, terms and conditions under any "underlying insurance", the insurance afforded by this policy shall apply in the same manner as though such "underlying policies" and limits of insurance had been in effect, so maintained and unchanged.

3. You must notify us immediately:

   a. Of any changes to the "underlying insurance". We may adjust our premium accordingly from the effective date of the change to the "underlying insurance"; or

   b. If any "underlying insurance" is canceled or not renewed and you do not replace it.

4. No statement contained in this condition limits our right to cancel or not renew this policy.

## E. OTHER INSURANCE

1. This insurance is excess over any other valid and collectible insurance whether primary, excess, contingent, or any other basis, except such other insurance as is written specifically to be excess over this insurance.

   The other insurance will be deemed valid and collectible regardless of:

   a. Any defense asserted by any other insurer because of the insured's failure to comply with the terms of that insurance; or

   b. The inability of any other insurer to pay for a loss due to bankruptcy or insolvency.

2. When this insurance is excess over other insurance, we will pay only our share of the "ultimate net loss" that exceeds the sum of:

   a. The total amount that all such other insurance would pay for the loss in the absence of the insurance provided under this Coverage Part; and

   b. The total of all deductible and self-insured amounts under all that other insurance.

## F. BANKRUPTCY

Bankruptcy or insolvency of the insured will not relieve us of our obligations under this Coverage Part.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

# XIX. LIABILITY LIMITS OF INSURANCE SECTION

This section applies to VII. GENERAL LIABILITY COVERAGES SECTION, VIII. GENERAL LIABILITY GARAGE AND PARKING AREA LEGAL LIABILITY, IX. GENERAL LIABILITY MEDICAL PAYMENTS SECTION and XIV. EXCESS LIABILITY COVERAGE SECTION.

The limits of insurance shown in the "Declarations" and the provisions of this section determine the most we will pay for damages regardless of the number of insureds and additional insureds, claims made or "suits" brought, or persons or organizations making claims or bringing "suit".

A. The PRODUCTS/COMPLETED OPERATIONS "aggregate limit" of insurance shown in the "Declarations" is the most we will pay under VII.A. "BODILY INJURY" AND "PROPERTY DAMAGE" and XIV. EXCESS LIABILITY COVERAGE SECTION for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard" arising from all "occurrences" during the "policy period".

Each payment we make for such damages reduces the PRODUCTS/COMPLETED OPERATIONS "aggregate limit" of insurance by the amount of the payment. This reduced limit will then be the limit of insurance available for further damages of this type during the "policy period".

B. The "EMPLOYERS LIABILITY" "aggregate limit" of insurance shown in the "Declarations" is the most we will pay under XIV. EXCESS LIABILITY COVERAGE SECTION for the sum of all damages because of "employers liability" during the "policy period".

Each payment we make for such damages reduces the "EMPLOYERS LIABILITY" "aggregate limit" of insurance by the amount of payment. This reduced limit will then be the limit of insurance available for further damages of this type during the "policy period".

The "EMPLOYERS LIABILITY" "per accident" limit of insurance shown in the "Declarations" is the most we will pay under XIV. EXCESS LIABILITY COVERAGE SECTION for the sum of all damages because of "employers liability" due to "bodily injury" to one or more "employees" in any one accident unless it results directly from "bodily injury" by accident.

The "EMPLOYERS LIABILITY" by Disease "per employee" limit of insurance shown in the "Declarations" is the most we will pay under XIV. EXCESS LIABILITY COVERAGE SECTION for the sum of all damages because of "employers liability" due to "bodily injury" by disease to any one "employee" during the "policy period". "Bodily injury" by disease does not include disease that results directly from a "bodily injury" by accident.

The "EMPLOYERS LIABILITY" "by Disease Aggregate limit of insurance shown in the "Declarations" is the most we will pay under XIV. EXCESS LIABILITY COVERAGE SECTION for the sum of all damages because of "employers liability" because of "bodily injury" by disease during the "policy period". "Bodily injury" by disease does not include disease that results directly from a "bodily injury" by accident.

C. The "PERSONAL INJURY" AND "ADVERTISING INJURY" limit of insurance shown in the "Declarations" is the most we will pay for the sum of all damages under VII.B. "PERSONAL INJURY" AND "ADVERTISING INJURY" and "personal injury" and "advertising injury" under XIV. EXCESS LIABILITY COVERAGE SECTION because of all "personal injury" and all "advertising injury" sustained by any one person or organization arising out of any one "offense".

D. Subject to A. or B. above, when applicable, the "BODILY INJURY" AND "PROPERTY DAMAGE" Per "Occurrence" limit of insurance shown in the "Declarations" is the most we will pay for:

1. Damages under VII.A. "BODILY INJURY" AND "PROPERTY DAMAGE" and "bodily injury" and "property damage" under XIV. EXCESS LIABILITY COVERAGE SECTION arising out of any one "occurrence"; and

2. "Medical expenses" under IX. GENERAL LIABILITY MEDICAL PAYMENTS

Includes copyrighted material of Insurance Services Office, Inc. with its permission

SECTION because of all "bodily injury", "property damage", and "medical expenses" arising out of any one "occurrence".

The "BODILY INJURY" AND "PROPERTY DAMAGE" Per "Occurrence" limit does not apply to damages subject to a separate EXCESS LIABILITY "EMPLOYERS LIABILITY" limit and any payments under such limits will not reduce the "BODILY INJURY" AND "PROPERTY DAMAGE" Per "Occurrence" limit.

E.  Subject to D. above, the "HIRED AUTO" AND "NONOWNED AUTO" Per "Occurrence" limit of insurance shown in the "Declarations" is the most we will pay for the sum of damages because of all "bodily injury" or "property damage" arising out of any one "occurrence" covered under VII.C. "HIRED AUTO" AND "NONOWNED AUTO".

F.  Subject to D. above, the PROPERTY DAMAGE LEGAL LIABILITY - REAL PROPERTY Per "Occurrence" limit of insurance shown in the "Declarations" is the most we will pay for "property damage" arising out of any one "occurrence" covered under VII.D. PROPERTY DAMAGE LEGAL LIABILITY - REAL PROPERTY.

G.  Subject to D. above, the GARAGE AND PARKING AREAS LEGAL LIABILITY Per "Occurrence" limits of insurance shown in the "Declarations" is the most we will pay for "property damage" covered under VIII. GARAGE AND PARKING AREA LEGAL LIABILITY for:

1.  Comprehensive Coverage in excess of the applicable deductible; or,

2.  Collision Coverage in excess of the applicable deductible;

arising out of any one "occurrence".

H.  Subject to D. above, the MEDICAL PAYMENTS per person limit of insurance shown in the "Declarations" is the most we will pay under IX. GENERAL LIABILITY MEDICAL PAYMENTS SECTION for all "medical expenses" because of "bodily injury" arising out of any one "occurrence" sustained by any one person.

The limits of insurance of this LIABILITY COVERAGE PART apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the "policy period" shown in the "Declarations", unless the "policy period" is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the limits of insurance.

## XX. LIABILITY CONDITIONS SECTION

**This section applies to GENERAL LIABILITY and EXCESS LIABILITY. GENERAL LIABILITY and EXCESS LIABILITY coverages are subject to the following conditions. If any of the following conditions are contrary to conditions contained in the "underlying insurance" the provisions contained in this section apply.**

### A. PREMIUM AUDIT

1.  We will compute all premiums for this Liability Coverage Part in accordance with our rules and rates.

2.  If the premium for this Liability Coverage Part is subject to audit, at the close of each audit period, we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the "policy period" is greater than the earned premium, we will return the excess to the first Named Insured.

3.  The first Named Insured must keep records of the information we need for premium computation and send us copies at such times as we may request.

### B. REPRESENTATIONS

By accepting this policy, you agree:

1.  The statements in the "Declarations" are accurate and complete;

2.  Those statements are based upon representations you made to us; and

3.  We have issued this policy in reliance upon your representations.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

## C. ACTS OR OMISSIONS BY UNIT OWNERS

No act or omission by any unit owner will void the policy or be a condition to recovery under this policy. However, this does not apply to unit owners acting within the scope of their authority on your behalf.

This does not supersede any exclusions contained in this policy.

## D. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

1.  If the insured has rights to recover all or part of any payment we have made under this Liability Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request the insured will bring "suit" or transfer those rights to us and help us enforce them.

2.  We waive any rights which this condition may give us against all of the following:

    a.  Any unit owner and residing household members.

    b.  You.

    c.  Your directors, "officers", or "committee members" for acts or omissions within the scope of their duties for you.

We reserve our right, however, to recover against the developer, sponsor, or builder for acts or omissions that the developer, sponsor, or builder may be liable for in the capacity as a developer, sponsor, or builder.

## E. LEGAL ACTION AGAINST US

No person or organization has a right under GENERAL LIABILITY and EXCESS LIABILITY:

1.  To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

2.  To bring "suit" against us on GENERAL LIABILITY and EXCESS LIABILITY unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an "agreed settlement" or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of GENERAL LIABILITY and EXCESS LIABILITY or that are in excess of the applicable limit of insurance.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

**Throughout this policy the words "you" and "your" refer to the Named Insured shown in the "Declarations". "We", "us", and "our" refer to the company providing this insurance. Other words and phrases that appear in quotation marks have special meaning. Refer to XXII. DEFINITIONS SECTION.**

## XXI. COMMON POLICY CONDITIONS SECTION

**All Coverage Parts are subject to the following conditions.**

### A. CANCELLATION

1. The first Named Insured shown in the "Declarations" may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice of cancellation to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The "policy period" will end on that date.

5. If this policy is canceled, we will send the first Named Insured any premium refund due.

   a. If we cancel, or if cancellation is at our request, the refund will be pro rata.

   b. Otherwise, the refund will be 90% of pro rata.

6. If notice of cancellation is mailed, proof of mailing will be sufficient proof of notice.

### B. NONRENEWAL

1. The first Named Insured may nonrenew this policy by mailing or delivering to us advance written notice of nonrenewal.

2. We may nonrenew this policy by mailing or delivering to the first Named Insured written notice of nonrenewal at least 30 days before the policy expiration date.

3. We will mail or deliver our notice of nonrenewal to the first Named Insured's last mailing address known to us.

4. If notice of nonrenewal is mailed, proof of mailing will be sufficient proof of notice.

### C. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

### D. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the "policy period" and up to three years afterward.

### E. INSPECTIONS AND SURVEYS

1. We have the right but are not obligated to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. Any inspections, surveys, reports, or recommendations relate only to insurability and the premiums to be charged.

**Includes copyrighted material of Insurance Services Office, Inc. with its permission**

## Common Policy Conditions

We do not:

a. Make safety inspections;

b. Undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public; or

c. Warrant that conditions are safe or healthful, or comply with laws, regulations, codes, or standards.

This condition applies not only to us, but also to any rating advisory, rate service, or any organization which makes insurance inspections, surveys, reports, or recommendations on our behalf.

### F. PREMIUMS

The first Named Insured:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums.

### G. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent.

If you cease to exist, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

### H. COVERAGE UNDER TWO OR MORE COVERAGE PARTS

If a loss is covered under two or more of this policy's Coverage Parts, only the Coverage Part affording the most favorable coverage from the standpoint of the claimant will apply.

### I. NOTICE OF CLAIM

The first Named Insured is responsible to act on behalf of all insureds with respect to the giving and receiving of notice of claim.

### J. TITLES OF PARAGRAPHS

The titles of the varied paragraphs of this policy and endorsements, if any, attached to this policy, are inserted solely for convenience or reference and are not to be deemed in any way to limit or affect provisions to which they relate.

### K. LIBERALIZATION

If we adopt any filed and approved revision that would broaden the coverage under any part of this policy form without additional premium within 60 days prior to or during the "policy period", the broadened coverage will immediately apply to any version of this policy issued to you.

### L. VOLUNTARY PAYMENTS

No insured nor anyone acting on the behalf of any insured may, except at their own cost, voluntarily make a payment, assume any obligation or incur any expense, other than for first aid and any other expenses specifically allowed in this policy, without our prior written consent.

**Includes copyrighted material of Insurance Services Office, Inc. with its permission**

## Definitions

**Throughout this policy the words "you" and "your" refer to the named insured shown in the "Declarations". "We", "us" and "our" refer to the company providing this insurance. Words and phrases that appear in quotation marks have special meaning.**

### XXII.  DEFINITIONS SECTION

Entries in parentheses indicate Policy Coverage Parts to which defined terms apply.

1. **"Advertising injury"** (GENERAL LIABILITY, DIRECTORS AND OFFICERS LIABILITY) means injury arising out of one or more of the following "offenses":

   a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services;

   b. Oral or written publication of material that violates a person's right of privacy;

   c. Misappropriation of advertising ideas or style of doing business; or

   d. Infringement of copyright, title or slogan.

   However, "advertising injury" does not include liability arising out of "cyber liability".

2. **"Aggregate limit(s)"** (GENERAL LIABILITY) means the maximum amount stated in the policy for which the insurer will be liable regardless of the number of covered claims.

3. **"Agreed settlement"** (GENERAL LIABILITY, DIRECTORS AND OFFICERS LIABILITY) means a settlement and release of liability signed by us, the insured, and the claimant or the claimant's legal representative.

4. **"Auto(s)"** (PROPERTY, GENERAL LIABILITY) means a land motor vehicle, trailer, or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

5. **"Auto business"** (GENERAL LIABILITY) means the business or occupation of selling, repairing, servicing, storing, or parking of "autos".

6. **"Auto equipment"** (GENERAL LIABILITY) means any equipment used in connection with the "auto", in or on the "auto", including audio, visual, and informational transmitting, receiving and reproducing equipment such as:

   a. Tape decks, disc players or other sound and picture reproducing equipment,

   b. Sound transmitting and receiving equipment designed for use as a citizens band radio, two- way mobile radio, or telephone or scanning monitor receiver, including its antennas and other accessories,

   c. Electronic data processing equipment and facsimile and document transmitting and receiving equipment.

7. **"Banking premises"** (PROPERTY) means a bank, savings institution, or similar depository.

8. **"Bodily injury"** (GENERAL LIABILITY, DIRECTORS AND OFFICERS LIABILITY) means:

   a. Injury to the body, sickness or disease, disability or shock, mental anguish, humiliation or mental injury sustained by any person, including death resulting from any of these at any time.

   b. Injury resulting from assault and battery solely from the use of reasonable force when committed by you or at your direction for the purpose of protecting persons or property.

   c. Bodily injury includes damages claimed by any person or organization for care, loss of service, or death resulting at any time from the "bodily injury".

   But "bodily injury" does not mean "bodily injury" arising out of any "personal injury" caused by an "offense".

---

**Includes copyrighted material of Insurance Services Office, Inc. with its permission**

## Definitions

9. **"By-product material"** (GENERAL LIABILITY, DIRECTORS AND OFFICERS LIABILITY) means the meaning given to it in the Atomic Energy Act of 1954 or in any amendatory law.

10. **"Collapse"** (PROPERTY) means an abrupt falling down, caving in, or flattening of a building, structure, or of any part of a building or structure with the result that the building, structure or the collapsed part of either cannot be occupied for its intended purpose. However:

    a. A building, structure or any part of either that is in danger of falling down or caving in is not considered to be in a state of collapse. This provision applies even if the building has been:

       (1) Declared by civil authority or by a person technically qualified to do so to be in an imminent state of collapse;

       (2) Condemned for occupancy for its intended purpose; or,

       (3) Ordered evacuated in anticipation of imminent collapse.

    b. A part of a building or structure that is standing is not considered to be in a state of collapse even if it has separated from another part of the building or structure.

    c. None of the following is considered to be in a state of "collapse" even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage, or expansion:

       (1) A building, structure or part of either that is standing; or

       (2) Personal property.

11. **"Committee" (**PROPERTY, GENERAL LIABILITY, DIRECTORS AND OFFICERS LIABILITY) means a body of persons duly delegated by the named insured's board of directors or functional equivalent thereof, to consider, investigate, take action on, or report on a matter; or established by the named insured's governing documents.

12. **"Committee member"** (PROPERTY, GENERAL LIABILITY, DIRECTORS AND OFFICERS LIABILITY) means a duly elected or appointed member of a "committee".

13. **"Computer equipment"** (PROPERTY, GENERAL LIABILITY) means "Covered Property" that is an electronic computer or other data processing equipment, including peripherals used in conjunction with such equipment, and electronic media and records.

14. **"Computer fraud"** (PROPERTY) means "theft" of property following and directly related to the use of any computer to fraudulently cause a transfer of that property from inside the "premises" or "banking premises" to a person, other than a "messenger", outside those "premises" or to a place outside those "premises".

    With regard to "computer fraud", occurrence means an:

    a. Act or series of related acts involving one or more persons; or

    b. Act or event, or a series of related acts, or a series of related acts or events not involving any person.

15. **"Coverage territory"** (PROPERTY) means, unless otherwise specified, the following:

    a. The United States of America (including its territories and possessions);

    b. Puerto Rico; and

    c. Canada.

16. **"Coverage territory"** (GENERAL LIABILITY, DIRECTORS AND OFFICERS LIABILITY) means anywhere in the world if the insured's responsibility to pay damages is determined:

    a. In a "suit" on the merits brought in a forum in the United States of America (including its territories and possessions), Puerto Rico or Canada; or

    b. In a settlement we agree to.

17. **"Covered auto"** (GENERAL LIABILITY) means an auto to which underlying insurance applies.

18. **"Covered employee"** (PROPERTY) means:

    a. Any natural person:

       (1) While in your service (and for 30 days after termination of service);

       (2) Whom you compensate directly by salary, wages, or commissions; and

**Includes copyrighted material of Insurance Services Office, Inc. with its permission**

## Definitions

(3) Whom you have the right to direct and control while performing services for you.

b. Any natural person employed by an employment contractor while that person is subject to your direction and control and performing services for you. However, any such person is excluded while having care and custody of property outside the "premises".

c. Any natural person who is a duly elected or appointed director, trustee, "officer", "committee" volunteer, or "committee member", whether salaried or not, and any other person acting on behalf or at the direction of an "officer" or board of directors of your Association with the exception of the developer when acting in a capacity as the developer.

But "covered employee" does not include:

a. Other than your "employee" any person or any organization while acting as your community manager.

b. Any "employee" immediately upon discovery by:

(1) You; or

(2) Any of your "officers" and directors not in collusion with the "employee", director, "officer" or board member;

of any dishonest act committed by that "employee", "officer", director or board member whether before or after being hired or appointed by you.

19. **"Covered instrument(s)"** (PROPERTY) means checks, drafts, promissory notes, or similar written promises, orders or directions to pay a certain sum in "money" and written instruments required in conjunction with any credit, debit, or charge card issued to you or any "employee" for business purposes that are:

a. Made or drawn by or drawn upon you;

b. Made or drawn by one acting as your agent;

or that are purported to have been so made or drawn.

20. **"Covered property"** (PROPERTY, GENERAL LIABILITY) means property described in I. PROPERTY DIRECT COVERAGES SECTION for which a limit of insurance is shown in the "Declarations".

21. **"Cyber liability"** (GENERAL LIABILITY, DIRECTORS AND OFFICERS LIABILITY) means liability that arises out of:

a. The unauthorized use of, or unauthorized access to electronic "data" or software within your network or business;

b. Functioning, nonfunctioning, improperly functioning, availability, or unavailability of:

(1) The internet or similar facility;

(2) Any intranet or private network or similar facility; or

(3) Any website, bulletin board, chat room, search engine, portal or similar third party application service.

c. Alteration, corruption, destruction, distortion, erasure, "theft", or other loss of or damage to "data", software, information repository, microchip, integrated system, or similar device in any computer equipment or non-computer equipment or any kind of programming or instruction set; or

d. Loss of use or functionality, whether partial or entire, of "data", coding, program, software, any computer, or computer system or other device dependent upon any microchip or embedded logic and any ensuing inability or failure of any insured to conduct business.

22. **"Data"** (PROPERTY, GENERAL LIABILITY) means information or instructions used by computers or computerized equipment.

23. **"Declarations"** (PROPERTY, GENERAL LIABILITY, DIRECTORS AND OFFICERS LIABILITY) means any declarations comprising part of the policy.

24. **"Defense costs"** (GENERAL LIABILITY) means:

a. All expenses we incur;

b. The cost of bonds to appeal a judgment or award in any "suit" we defend;

---

Includes copyrighted material of Insurance Services Office, Inc. with its permission

c.   The cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which "bodily injury" liability coverage under this insurance applies. We do not have to furnish these bonds;

d.   The cost of bonds to release attachments, but only for bond amounts within the limit of insurance available under XIX. LIABILITY LIMITS OF INSURANCE SECTION. We do not have to furnish these bonds;

e.   Reasonable expenses incurred by an insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work. "Defense costs" does not include salaries, wages, fees, hourly charges, or overhead of, or paid to, an insured.

If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a.   The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b.   This insurance applies to such liability assumed by the insured;

c.   The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d.   The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e.   The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f.   The indemnitee:

(1)   Agrees in writing to:

(a)   Cooperate with us in the investigation, settlement or defense of the "suit";

(b)   Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c)   Notify any other insurer whose coverage is available to the indemnitee; and

(d)   Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2)   Provide us with written authorization to:

(a)   Obtain records and other information related to the "suit"; and

(b)   Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorney's fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid. Notwithstanding the provisions of 2. of XI.D. CERTAIN CONTRACTS, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorney's fees and necessary litigation expenses ends when:

a.   We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b.   The conditions set forth above, or the terms of the agreement described in paragraphs f. (1) and f. (2) above, are no longer met.

25.   **"Depositors forgery"** (PROPERTY) means loss resulting directly from forgery or alteration to a "covered instrument" including the use of electronic or facsimile signatures. It includes any reasonable legal expenses that you incur and pay if you are sued for refusing to pay any "covered instrument" on the basis that it has been forged or altered and you have our prior

Includes copyrighted material of Insurance Services Office, Inc. with its permission

written consent to defend against the suit involving "depositors forgery".

There is no coverage for loss caused by legal proceedings including judgments, settlements and any related expenses.

With regard to "depositors forgery", occurrence means all loss caused by any person or in which that person is involved, whether the loss involves one or more instruments.

26. **"Employees"** also **"Coemployees"** (PROPERTY, GENERAL LIABILITY) includes a "leased worker". "Employee" does not include a "temporary worker".

27. **"Employee dishonesty"** (PROPERTY) means only dishonest or criminal acts committed by a "covered employee", whether identified or not, acting alone or in collusion with other persons, with the manifest intent to:

a. Cause you to sustain loss; and also

b. Obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions, or other employee benefits earned in the normal course of employment) for:

   (1) The "covered employee"; or

   (2) Any person or organization intended by the "covered employee" to receive that benefit.

With regard to "employee dishonesty", occurrence means all loss caused by each "covered employee", whether the result of a single act or series of acts.

28. **"Employers liability"** (GENERAL LIABILITY) means liability arising out of any and all "bodily injury" by accident or "bodily injury" by disease to your "employees". "Bodily injury" includes resulting death.

a. The "bodily injury" must arise out of and in the course of the injured employee's employment by you.

b. "Bodily injury" by disease must be caused or aggravated by the conditions of your employment. The "employee's" last day of last exposure to the conditions causing or

aggravating such "bodily injury" by disease must occur during the "policy period".

29. **"Equipment breakdown"** (PROPERTY) means the following:

a. Physical loss or damage, caused by, resulting from, or consisting of:

   (1) Mechanical breakdown;

   (2) Electrical or electronic breakdown;

   (3) Rupture, bursting, bulging, implosion, or steam explosion.

   originating within:

   (a) Boilers, fired or unfired pressure vessels, vacuum vessels, and pressure piping, all normally subject to vacuum or internal pressure other than static pressure of contents, excluding:

   (i) Waste disposal piping;

   (ii) Any piping forming part of a fire protective system; and

   (iii) Any water piping other than: boiler feed water piping between the feed pump, and the boiler, boiler condensate return piping, and, water piping forming part of a refrigerating or air conditioning system used for cooling, humidifying or space heating purposes.

   (b) All mechanical, electrical, electronic or fiber optic equipment.

However, "Equipment Breakdown" does not mean:

a. Physical loss or damage caused by or resulting from any of the following:

   (1) Wear and tear; or

   (2) Rust or other corrosion, decay, deterioration, hidden or latent defect, mold, or any other quality in property that causes it to damage or destroy itself; or

   (3) Smog; or

---

**Includes copyrighted material of Insurance Services Office, Inc. with its permission**

(4) Settling, cracking, shrinking, or expansion; or

(5) Nestling or infestation, or discharge or release of waste products or secretions, by birds, rodents, or other animals; or

(6) Any accident, loss, damage, cost, claim, or expense, whether preventative, remedial, or otherwise, directly or indirectly arising out of or relating to the recognition, interpretation, calculation, comparison, differentiation, sequencing, or processing of "data" by any computer system including any hardware, programs or software; or

(7) Scratching and marring.

However if loss or damage not otherwise excluded results, then we will pay for such resulting damage.

b. Any loss, damage, cost or expense directly caused by, contributed to by, resulting from or arising out of the following Causes of Loss:

Fire, lightning, combustion, explosion, wind or hail, weight of snow, ice or sleet, falling objects, smoke, aircraft or vehicles, riot or civil commotion, vandalism, sinkhole collapse, volcanic action, leakage from fire extinguishing equipment, water damage, earth movement, and "flood".

30. **"Fine arts"** (PROPERTY) means paintings, etchings, pictures, sculptures, tapestries, art glass windows, valuable rugs, statuary, antique furniture, and other bona fide works of art of rarity, historical value or artistic merit. Fine arts also include "furs" and "jewelry".

31. **"Flood"** (PROPERTY) means:

a. A general and temporary condition of partial or complete inundation of two or more acres of normally dry land area or of two or more properties (at least one of which is your property) from:

(1) Overflow of inland or tidal waters;

(2) Unusual and rapid accumulation or run off of surface waters from any source; or

(3) "Mudflow" or "mudslide".

b. Collapse or subsidence of land along the shore of a lake or similar body of water as a result of erosion or undermining caused by waves or currents of water exceeding anticipated cyclical levels that result in a "flood" as defined in a. immediately above.

32. **"Furs"** (PROPERTY) means furs, fur garments and garments trimmed with fur.

33. **"Garage operations"** (GENERAL LIABILITY) means the ownership, maintenance or use of locations for garage business and that portion of the roads or other accesses that adjoin these locations. Garage operations includes the ownership, maintenance, or use of "autos", "auto equipment", or "mobile equipment" left with you for service, repair, attending, storage, safekeeping, or parking. Garage operations also include all operations necessary or incidental to a garage business.

34. **"Hazardous properties"** (GENERAL LIABILITY, DIRECTORS AND OFFICERS LIABILITY) means hazardous properties including radioactive, toxic, or explosive properties.

35. **"Hired auto"** (GENERAL LIABILITY) means any "auto" you lease, hire, or borrow. This does not include any "auto" you lease, hire or borrow from any of your employees or members of their households, or from any director or "officer" of yours.

36. **"Hostile fire"** (PROPERTY, GENERAL LIABILITY) means a fire which becomes uncontrollable or breaks out from where it was intended to be.

37. **"Impaired property"** (GENERAL LIABILITY) means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate, or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

Includes copyrighted material of Insurance Services Office, Inc. with its permission

a. The repair, replacement, adjustment, or removal of "your product" or "your work"; or

b. Your fulfilling the terms of the contract or agreement.

**38. "Incidental medical malpractice"** (GENERAL LIABILITY) means "bodily injury" arising out of the rendering of or failure to render the following services:

a. Furnishing food, beverages, office space or building facilities in connection with any medical, surgical, dental, x-ray, pharmaceutical or nursing service, or treatment; or

b. The furnishing or dispensing of drugs, medical, dental, or surgical supplies or appliances.

Incidental medical malpractice does not cover any insured engaged in the business, profession or occupation of providing any of the services described under a. and b. above.

**39. "Insured contract"** (GENERAL LIABILITY) means:

a. A lease of premises;

b. A "sidetrack agreement";

c. An easement or license agreement in connection with vehicle or pedestrian private railroad crossings at grade;

d. Any other easement agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

e. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

f. An elevator maintenance agreement;

g. That part of any contract or agreement entered into, as part of your operations, by you, your directors, "officers", or "employees" pertaining to the rental or lease of any "auto"; or

h. That part of any other contract or agreement pertaining to your operations, including an indemnification of a municipality in connection with work performed for a municipality, under which you assume the "tort liability" of another to pay damages because of "bodily injury", "property damage", "personal injury", or "advertising injury" to a third person or organization, if the contract or agreement is made prior to the "bodily injury" , "property damage", "personal injury", or "advertising injury".

An "insured contract" does not include that part of any contract or agreement:

a. That indemnifies an architect, engineer, or surveyor for injury or damage arising out of:

(1) Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs, or specifications; or

(2) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

b. Under which the insured, if an architect, engineer, or surveyor, assumes liability for injury or damage arising out of the insured's rendering or failing to render professional services, including those listed in a. above and supervisory, inspection, architectural, or engineering services; or

c. That indemnifies any person or organization for damage to premises rented to or occupied by you caused by II.D. ORDINANCE OR LAW COVERAGE or a COVERED CAUSE OF LOSS as described in III. PROPERTY CAUSES OF LOSS, EXCLUSIONS AND LIMITATIONS SECTION;

d. That pertains to the loan, lease or rental of an "auto" to you, your directors, "officers", or "employees", if the "auto" is loaned, leased, or rented with a driver; or

e. That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of an "auto" over a route or territory that person or organization is authorized to serve by public authority;or

f. That provides indemnification for any "bodily injury", "property damage", "personal injury", and "advertising injury"

Includes copyrighted material of Insurance Services Office, Inc. with its permission

caused by an "occurrence" or by an "offense" committed by any person or organization that is not an insured person under XII. GENERAL LIABILITY – WHO IS AN INSURED and XVII. EXCESS LIABILITY – WHO IS AN INSURED.

**40.** **"Jewelry"** (PROPERTY) means jewelry, watches, watch movements, jewels, pearls, precious and semiprecious stones, bullion, gold, silver, platinum, and other precious alloys or metals. However, jewelry does not include watches costing $100 or less to replace per item.

**41.** **"Leased workers"** (PROPERTY, GENERAL LIABILITY) means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**42.** **"Loading or unloading"** (GENERAL LIABILITY) means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, "unmanned aircraft", watercraft, or "auto";

b. While it is in or on an aircraft, "unmanned aircraft", watercraft or "auto"; or

c. While it is being moved from an aircraft, "unmanned aircraft", watercraft or "auto" to the place where it is finally delivered;

But does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, "unmanned aircraft", watercraft, or "auto".

**43.** **"Media"** (PROPERTY, GENERAL LIABILITY) means material on which "Data" is recorded, such as magnetic tapes, hard disks, optical disks, CD-ROMS, drives, cells, floppy disks or other data processing devices.

**44.** **"Medical expenses"** (GENERAL LIABILITY) means:

a. First aid at the time of an accident;

b. Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

c. Necessary ambulance, hospital, professional nursing, and funeral services.

**45.** **"Messenger"** (PROPERTY) means you or any "employee" while having care and custody of the property outside the "premises".

**46.** **"Mobile equipment"** (GENERAL LIABILITY) means a land vehicle (including any machinery or apparatus attached to it), whether or not it is self-propelled, which is:

a. Not subject to motor vehicle registration; or

b. Maintained for use exclusively on "premises" owned by or rented to you; or,

c. Designed for use principally off public roads; or

d. Designed or maintained for the sole purpose of affording mobility to equipment of the following types which form an integral part of or are permanently attached to such vehicle: power cranes, shovels, loaders, diggers, drills, concrete mixers, (other than the mix-in-transit type), graders, scrapers, rollers and other road construction or repair equipment, air-compressors, pumps, generators, including spraying, welding and building cleaning equipment, and geophysical exploration and well servicing equipment.

**47.** **"Money"** (PROPERTY, GENERAL LIABILITY, DIRECTORS AND OFFICERS LIABILITY) means:

a. Currency, coins, and bank notes in current use and having a face value; and

b. Travelers checks, registered checks, and money orders held for sale to the public.

With regard to "money", occurrence means an:

a. Act or series of related acts involving one or more persons; or

b. Act or event, or a series of related acts or a series of related acts or events not involving any person.

**48.** **"Mudflow"** (PROPERTY, GENERAL LIABLITY) means a river of liquid and flowing mud on the surface of normally dry land areas, as when earth is carried by a current of water and deposited along the path of the current.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

49. **"Mudslide"** (PROPERTY, GENERAL LIABILITY) means the movement of a volume of mud and all other matter carried along with the mud.

50. **"New information"** (PROPERTY) means information which is received by us for the first time from anyone.

51. **"Nonowned auto"** (GENERAL LIABILITY) means any "auto" you do not own, lease, hire, or borrow which is used in connection with your operations.

52. **"Nuclear facility"** (GENERAL LIABILITY, DIRECTORS AND OFFICERS LIABILITY) means:

    a. Any "nuclear reactor";

    b. Any equipment or device designed or used for:

       (1) Separating the isotopes of uranium or plutonium;

       (2) Processing or utilizing "spent fuel"; or

       (3) Handling, processing or packaging "waste";

    c. Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

    d. Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste"; "Nuclear facility" includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

53. **"Nuclear material"** (GENERAL LIABILITY, DIRECTORS AND OFFICERS LIABILITY) means "source material", "special nuclear material", or "by-product material".

54. **"Nuclear reactor"** (GENERAL LIABILITY, DIRECTORS AND OFFICERS LIABILITY) means any apparatus designed or used to

sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

55. **"Occurrence(s)"** (GENERAL LIABILITY) means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

56. **"Offense(s)"** (GENERAL LIABILITY, DIRECTORS AND OFFICERS LIABILITY) means an act, utterance, or publication, including the continuation or repetition of the same act, utterance, or publication.

57. **"Officer(s)"** (PROPERTY, GENERAL LIABILITY) means a person holding any of the officer positions created by your charter, constitution, bylaws, or any similar governing document.

58. **"Period of restoration"** (PROPERTY) means the period of time that:

    a. Begins with the date of direct physical loss or damage caused by or resulting from any COVERED CAUSE OF LOSS at the described "premises"; and

    b. Ends on the date when the property at the described "premises" should be repaired, rebuilt, or replaced with reasonable speed and similar quality.

    "Period of restoration" does not include any increased period required due to the enforcement of or compliance to any ordinance or law that:

    a. Regulates the construction, use or repair, or requires the tearing down of any property; or

    b. Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of "pollutants".

    The expiration date of this policy will not shorten the "period of restoration".

59. **"Personal effects"** (PROPERTY) means items usually worn or carried on the person.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

60. **"Personal injury"** (GENERAL LIABILITY, DIRECTORS AND OFFICERS LIABILITY) means injury, other than "bodily injury", arising out of one or more of the following "offenses":

   a. False arrest, detention, or imprisonment;

   b. Malicious prosecution;

   c. The wrongful eviction from, wrongful entry into, or invasion of the right of privacy of a room, "unit", dwelling, storage area, or premises that the person occupies by or on behalf of its owner, landlord, or lessor;

   d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services; or

   e. Oral or written publication of material that violates a person's right of privacy.

   f. Humiliation or discrimination.

   However, "personal injury" does not mean "personal injury" arising out of "cyber liability".

61. **"Policy period"** (PROPERTY, GENERAL LIABILITY, DIRECTORS AND OFFICERS LIABILITY, COMMON POLICY) means the period from the inception to the expiration date of this policy, shown in the "Declarations" or until its termination in accordance with XXI.A. CANCELLATION.

62. **"Pollutant(s)"** (GENERAL LIABILITY, DIRECTORS AND OFFICERS LIABILITY) means any solid, liquid, gaseous, thermal or radioactive irritant or contaminant, including asbestos, radon, smoke, vapor, soot, fumes, carbon monoxide, acids, alkalis, chemicals, pathogens, poisons, and waste, all whether man-made or naturally occurring. Waste includes materials to be recycled, reconditioned, or reclaimed, and wastewater runoff from fracking activities conducted on or adjacent to your "premises".

63. **"Pollutant(s)"** (PROPERTY) means any solid, liquid, gaseous, or thermal irritant or contaminant, including radon, smoke, vapor, soot, fumes, acids, alkalis, chemicals, pathogens, poisons, and waste. Waste includes materials to be recycled, reconditioned or reclaimed, and wastewater runoff from fracking activities conducted on or adjacent to your "premises".

64. **"Power quality"** (PROPERTY) means the conditions that allow electrical systems or equipment to operate as intended by limiting voltage fluctuations and other power influences that would adversely affect the operational performance and/or reduce the reliability, or the life-span of the electrical system.

65. **"Premises"** (PROPERTY, GENERAL LIABILITY) means the premises shown in Description of Premises on the "Declarations".

66. **"Products-completed operations hazard"** (GENERAL LIABILITY) means:

   a. "Products-completed operations hazard" includes all "bodily injury" and "property damage" arising out of "your product" or "your work" except:

      (1) Products that are still in your physical possession; or

      (2) Work that has not yet been completed or abandoned.

   The "bodily injury" or "property damage" must occur away from property you own or rent, or after you have relinquished possession of "your product" if your operation includes the selling, handling, or distribution of "your product" for consumption on property you own or rent.

   b. "Your work" will be deemed completed at the earliest of the following times:

      (1) When all of the work called for in your contract has been completed;

      (2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site;

      (3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

   Work that may need service, maintenance, correction, repair, or replacement, but which is otherwise complete, will be treated as completed.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

c. This hazard does not include "bodily injury" or "property damage" arising out of:

  (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the "loading or unloading" of it;

  (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

  (3) Products or operations for residential condominiums and any other classification in this coverage part or in our manual of rules that includes products or completed operations.

67. **"Professional service"** (GENERAL LIABILITY,) means:

a. Legal, accounting, or advertising services;

b. Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs, or specifications;

c. Supervisory, inspection, or engineering services;

d. Medical, surgical, dental, x-ray, or nursing services or treatment;

e. Any health service or treatment;

f. Any cosmetic or tonsorial service or treatment;

g. Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

h. Ear or body piercing services; and

i. Services in the practice of pharmacy.

68. **"Property damage"** (GENERAL LIABILITY, DIRECTORS AND OFFICERS LIABILITY) means:

a. Physical injury to tangible property, including all resulting loss of use of that property; or

b. Loss of use of tangible property that is not physically injured.

With regard to "property damage", loss of use of tangible property not physically injured shall be deemed to occur at the time of the "occurrence" that caused it.

69. **"Ratable limit"** (PROPERTY) means that portion of the replacement cost of "covered property" on which a premium charge is based.

70. **"Reasonable extra cost"** (PROPERTY) shall mean the extra cost of temporary repair and of expediting the repair of such damaged equipment of the insured, including overtime and the extra cost of express or other rapid means of transportation.

71. **"Securities"** (PROPERTY, GENERAL LIABILITY, DIRECTORS AND OFFICERS LIABILITY) means negotiable and nonnegotiable instruments or contracts representing but not including either "money" or other property and includes:

a. Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

b. Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you.

With regard to "securities", occurrence means an:

a. Act or series of related acts involving one or more persons; or

b. Act or event, or a series of related acts or a series of related acts or events not involving any person.

72. **"Sidetrack agreement"** (GENERAL LIABILITY) means an agreement between a railroad and a second party under which the railroad furnishes sidetrack facilities on the latter's premises, the second party releasing the railroad from liability for damages or assuming the railroad's liability for damages to others on account of the maintenance or operation of the sidetrack.

73. **"Sinkhole collapse"** (PROPERTY) means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone, dolomite or similar rock formations. It does not include:

a. The cost of filling sinkholes; or

Includes copyrighted material of Insurance Services Office, Inc. with its permission

b. Sinking or collapse of land into man-made underground cavities or landfill.

**74. "Source material"** (GENERAL LIABILITY, DIRECTORS AND OFFICERS LIABILITY) means the meaning given to it in the Atomic Energy Act of 1954 or in any amendatory law.

**75. "Special nuclear material"** (GENERAL LIABILITY, DIRECTORS AND OFFICERS LIABILITY) means the description given to it in the Atomic Energy Act of 1954 or in any amendatory law.

**76. "Specified causes of loss"** (PROPERTY) means the following: fire; lightning; explosion; wind or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; "sinkhole collapse"; "volcanic action"; falling objects; weight of snow, ice or sleet; "water damage".

**77. "Spent fuel"** (GENERAL LIABILITY, DIRECTORS AND OFFICERS LIABILITY) means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in "nuclear reactor".

**78. "Subsidiary(ies)"** (GENERAL LIABILITY, DIRECTORS AND OFFICERS LIABILITY) means any organization that is controlled by any entity of yours through ownership of more than 50% of the outstanding voting stock.

**79. "Suit(s)"** (GENERAL LIABILITY) means a civil proceeding in which damages because of "bodily injury", "property damage", "personal injury", or "advertising injury" to which this insurance applies are alleged.

"Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

**80. "Swimming pools"** (PROPERTY) means swimming pools and the water they contain.

**81. "Temporary worker(s)"** (PROPERTY, GENERAL LIABILITY) means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short term workload condition.

**82. "Theft"** (PROPERTY, GENERAL LIABILITY, DIRECTORS AND OFFICERS LIABILITY) means any act of stealing.

**83. "Tort liability"** (GENERAL LIABILITY) means a liability that would be imposed by law in the absence of any contract or agreement.

**84. "Ultimate net loss"** (GENERAL LIABILITY) means the total sum, after reduction for recoveries or salvages collectible, that the insured becomes legally obligated to pay by reason of settlement or judgments or any arbitration or other alternate dispute method entered into with our consent or the "underlying insurer's" consent.

**85. "Underlying insurance"** (GENERAL LIABILITY) means the liability insurance coverage provided under policies shown in the Schedule of "Underlying Insurance" contained in the "Declarations", for the limits and periods indicated. It includes any policies issued to replace those policies during the term of this insurance that provide:

a. At least the same policy limits; and

b. Liability insurance coverage for the same hazards insured against, except those changes we agree to in writing.

**86. "Underlying insurer"** (GENERAL LIABILITY) means any insurer who issues a policy of "underlying insurance".

**87. "Underlying policy"** (GENERAL LIABILITY) means a policy providing "underlying insurance".

**88. "Unit(s)"** (PROPERTY, GENERAL LIABILITY) means each portion of the real property, designed for separate ownership and occupancy, which is enclosed by the boundaries described in a. below and which contains the property described in b. below:

a. Boundaries:

(1) Each plane formed by the innermost surfaces of the studs in each wall which is also a demising wall of the building or a wall between other similarly enclosed portions;

Includes copyrighted material of Insurance Services Office, Inc. with its permission

(2) Each plane formed by the innermost surface of each door and window and of its respective frames, sills and hardware all which connect the enclosed portion to adjacent common elements, limited common elements or the exterior of the building; and

(3) Each plane formed by the innermost surface of each grill or register covering exhaust fans or ventilation ducts;

(4) Each plane formed by the surfaces of any furring which, with regard to each furring strip, is that surface facing the enclosed portion, as extended around utility shafts and columns containing pipes, ducts, wires, conduits, chutes, mechanical chases, structural elements and flues that are either common element or limited common elements; and,

(5) Each plane formed by the innermost surfaces of the beams or joists of the ceilings and floors of such enclosed portions which are also ceilings and floors of the building or of other, similar enclosed portions.

b. The following property, wholly enclosed by or contained inside the boundaries described in a. above, which is both permanently installed and dedicated to the exclusive service of the enclosed portion:

(1) All machinery, equipment, appliances, fixtures, and similar property such as:

(a) Kitchen equipment, exhaust fans, lighting devices, outlets, and wiring systems;

(b) Plumbing fixtures, and fixtures and other exposed parts of systems that provide heating, ventilation, and air conditioning; and,

(c) Fixtures and other exposed parts of protective safeguards systems including, without limitation, fire, intrusion, smoke and heat protection, and detection systems; and

(2) All walls, floors, ceilings, partitions, columns, and dividers, lath, wallboard, plasterboard, plaster, paneling, molding, tiles, wallpaper, paint, finished flooring and their finished surfaces; and,

(3) Pipes, ducts, wires, cables, conduits and similar property.

89. **"Unmanned aircraft"** (GENERAL LIABILITY) means an aircraft that is not:

a. Designed;

b. Manufactured; or

c. Modified after manufacture;

to be controlled directly by a person from within or on the aircraft.

90. **"Valuable papers and records"** (PROPERTY) means inscribed, printed or written documents, manuscripts or records, including abstracts, books, deeds, drawings, films, maps, or mortgages.

However, "valuable papers and records" does not mean records of accounts receivable, "media", "money" or "securities", converted "data", programs or instructions used in your data processing operations, including the materials on which the "data" is recorded.

91. **"Volcanic action"** (PROPERTY) means:

Direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

a. Airborne volcanic blast or airborne shock waves;

b. Ash, dust, or particulate matter; or

c. Lava flow.

However, "volcanic action" does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to "covered property".

92. **"Volcanic eruption(s)"** (PROPERTY, GENERAL LIABILITY) means volcanic eruption, effusion and explosion.

93. **"War"** (PROPERTY, GENERAL LIABILITY) means war, whether or not declared, including civil war, insurrection, rebellion, or revolution.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

94. **"Waste"** (GENERAL LIABILITY, DIRECTORS AND OFFICERS LIABILITY) means any waste material:

   a. Containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content; and

   b. Resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

95. **"Water damage"** (PROPERTY) means accidental discharge or leakage of water or steam as the direct result of the breaking or cracking of any part of a system or appliance containing water or steam.

96. **"Your product"** (GENERAL LIABILITY) means:

   a. Any goods or products, other than real property, manufactured, sold, handled, distributed, or disposed of by:

      (1) You;

      (2) Others trading under your name; or

      (3) A person or organization whose business or assets you have acquired; and

   b. Containers (other than vehicles), materials, parts, or equipment furnished in connection with such goods or products.

   "Your product" includes:

   a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

   b. The providing of or failure to provide warnings or instructions.

   "Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

97. **"Your work"** (GENERAL LIABILITY) means:

   a. Work or operations performed by you or on your behalf; and

   b. Materials, parts, or equipment furnished in connection with such work or operations.

"Your work" includes:

   a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance, or use of "your work"; and

   b. The providing of or failure to provide warnings or instructions.

"Your work" will be deemed completed at the earliest of the following times:

   a. When all of the work called for in your contract has been completed;

   b. When all of the work to be done at the site has been completed if your contract calls for work at more than one site; or

   c. When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair, or replacement, but which is otherwise complete, will be treated as completed.

**Includes copyrighted material of Insurance Services Office, Inc. with its permission**

# EXHIBIT B



Seth I. Weinstein
77 Water Street, Suite 2100
New York, New York 10005
Seth.Weinstein@lewisbrisbois.com
Direct: 212.232.1321

August 26, 2022

File No. 33349.631

***Via Cert Mail – Return Receipt Requested***
***Tracking No.: 7020 0090 1529 8824***
***and E-mail: charles@sagepmicorp.com***
Heritage Park Condominium Association, Inc.
c/o Sage PMI Corp.
1830 Water Place, Suite 110
Atlanta, GA 30339
**Attn**: Charles Bruce

***Via Email: tonim@accurateadjustingpc.com and davidt@accurateadjustingpc.com***
Heritage Park Condominium Association, Inc.
c/o Accurate Adjusting & Appraisals P.C.
3095 Black Cloud Circle
P.O. Box 552
Westcliffe, CO 81252
**Attn**: Toni Marie Morrow and David Tolar

|       |                  |   |                                              |
|-------|------------------|---|----------------------------------------------|
| Re:   | **Insured**      | : | **Heritage Park Condominium Association, Inc.** |
|       | **Claim No.**    | : | **112767**                                   |
|       | **Policy No.**   | : | **CAU508389-4**                              |
|       | **Policy Periods** | : | **March 25, 2021, to March 25, 2022, and** |
|       |                  |   | **March 25, 2022, to March 25, 2023**        |
|       | **Date of Loss** | : | **March 25, 2021 (reported)**                |
|       | **Our File No.** | : | **33349.631**                                |

## REITERATION OF DENIAL OF COVERAGE AND REJECTION OF PROOF OF LOSS

Dear Insured:

We are coverage counsel for American Alternative Insurance Company ("AAIC"). Community Association Underwriters of America, Inc. ("CAU") serves as a general agent of AAIC. AAIC issued a Condominium Association Insurance Policy, Policy No. CAU508389-4 to its named insured, Heritage Park Condominium Association, Inc. ("Association"), in effect from March 25, 2021, to March 25, 2022, and March 25, 2022, to March 23, 2023 (the "Policy"). You were previously supplied with a copy of the Policy. Annexed hereto is another copy of the Policy.

August 26, 2022
Page 2

CAU received first notice of the reported loss claim on November 17, 2021. As indicated in a Property Loss Notice, dated November 17, 2021, the reported loss was reported as follows: "Roof damage claim." The date of loss was reported to be March 25, 2021. The reportedly damaged property is located at 2350 Heritage Park Circle, Kennesaw, GA 30144. It was reported that on March 25, 2021, the insured property sustained wind and hail damage to the roofs of twenty-four (24) three-story buildings due to storms in the area.

As detailed below, a thorough investigation was performed and, thereafter, on December 29, 2021, CAU forwarded a declination of coverage letter on behalf of AAIC, to the Association. A copy of the extensive and detailed report of Haag Engineering was also supplied.

**Background**

CAU promptly acknowledged receipt of the loss on November 17, 2021, and advised the Association that Guardian Adjusters & Appraisers was the assigned Independent Adjuster. CAU also retained Haag Engineering and J.S. Held's building consulting and roofing division on behalf of AAIC to inspect the property, which was completed on December 6th and December 7th, 2021.

On December 29, 2021, CAU forwarded a declination of coverage letter on behalf of AAIC, to the Association ("Denial Letter"). The purpose of this letter is not to repeat the contents of the Denial Letter, which are incorporated herein as if set forth at length.

The Denial Letter details my client's investigation of the reported loss and claim. The Association was supplied with a copy of the detailed report of Haag Engineering. Haag Engineering and J.S. Held found no wind or hail damage as a result of any reported storm which took place on March 25, 2021.

The Association retained a Public Adjuster and requested a reinspection because they felt Haag may have "missed damages that occurred more recently". A Letter of Representation was supplied by Accurate Adjusting & Appraisals P.C., dated April 28, 2022.

On June 16, 2022, your Public Adjuster supplied a Core Forensics Laboratory Analysis report addressed to Toni Morrow of Starling Adjuster Group. The Laboratory Report states that on May 6, 2022, Core received "one (1) three-tab asphalt shingle sample, which was roughly 12 inches by 12 inches in dimension when unpackaged". Further, the sample "was taken from Heritage Park Circle NW, Kennesaw, GA 30144 (as labeled)."

On August 15, 2022, the Association's Public Adjuster provided a "Heritage Park Photo Report for August 2022 inspections." It is alleged that "the photo report details spatter location on site." Further, it is alleged that "our photo report details wind damaged shingles onsite far more

August 26, 2022
Page 3

than 31 shingles."  In addition, on August 15, 2022, the Association's Public Adjuster submitted a Proof of Loss and demand for payment in the amount of $1,927,603.75. AAIC hereby rejects the proof of loss and demand for payment for the reasons stated herein.

The Proof of Loss does not accurately set forth the replacement cost value or actual cash value so far as any damage to "covered property" as a result of the reported loss on March 25, 2021, or any "covered cause of loss."  Coverage for the reported loss was previously denied on December 29, 2021, and reiterated herein.  In addition, CAU previously issued emails to you Public Adjuster reiterating the coverage position.  In addition, the Proof of Loss is also rejected as no deductible is listed and the section with regard to the replacement cost holdback requirements is contrary to the valuation provisions of the Policy.  Please also note that the Ordinance or Law Coverage under the Policy has not been triggered.  Furthermore, this coverage is provided on an incurred basis pursuant to the valuation provisions of the Policy. The values set forth in the Proof of Loss are also not supported by a submitted estimate based upon valuation at the purported time of loss.

CAU/AAIC and its consultants/experts have considered the "photo reports," Core Forensics Report and communications provided by your Public Adjuster, including the August 15, 2022 submission noted above. The inspection noted therein occurred eight months after Haag Engineering and J.S. Held's inspection, however, Haag Engineering noted the conditions observed in the photographs were similar to what they observed at the time of their inspection.  Haag Engineering noted the following:

- The dents observed in the photographs throughout the documents in the metal panel roof coverings, downspouts, gutters, HVAC equipment, and in vent caps are mechanical in nature and are not consistent with hail impacts;

- The photographs of roof and ground level surfaces that claim to show spatter marks, do not show any spatter marks consistent with hail. Many of these photographs were blurry and any potential splay was indiscernible;

- There were multiple photographs of shingles that were marked as creased that did not show any apparent creases. These shingle tabs appeared to be not bonded;

- Photographs of shingle tabs that were creased were similar in nature to the creases observed at the time of our inspection; and

- Missing and detached shingle tabs at roof to wall flashing details were present at the time of our inspection.

August 26, 2022
Page 4

After careful review of the provided inspection photographs, no new information has been provided. Haag Engineering conclusions set forth in their first report remain unchanged.

It appears that your Public Adjuster, based out of Colorado, believes that including salacious and disparaging allegations in communications about Haag and others, calling people "liars" and allegedly recording phone calls without the knowledge of the parties, somehow serves to support that hail and wind damage occurred at the property on March 25, 2021, which is inaccurate.  Haag Engineering and J.S. Held's building consultant and roofing division not only have significant industry leading credentials and experience, but they also are local to Georgia. Furthermore, the individuals involved from  Haag Engineering and J.S Held have vast experience with regard to hail and wind claims.

While your Public Adjuster has critiqued portions of Haag's previously supplied report, they are not engineers and/or known to be qualified as experts so far as rendering an opinion as to causation so far as wind and/or hail damage.

As you are aware, AAIC had requested that a property inspection take place on August 25, 2022 and August 26, 2022 to the extent your Public Adjuster previously requested same. The inspection was not cancelled by CAU as alleged by your Public Adjuster. The Association's Public Adjuster offered October 5, 2022 as an inspection date. Please note that this date does not work for AAIC's consultants. <u>Request is made that the Association provide at least five (5) proposed dates in September and October that you advise us of another available inspection date at your earliest possible convenience.</u>  However, please note that while my client is willing to proceed with a further inspection it is adhering to the denial of coverage based upon the information provided.

Further, AAIC/CAU are not responsible for any travel costs of your Public Adjuster, to fly from Colorado for any inspections.  While the Association was certainly free to retain a licensed Georgia Public Adjuster out of Colorado, this does not serve as a valid excuse to not comply with the Policy Conditions or require CAU/AAIC to pay travels costs.

**<u>The AAIC Policy</u>**

The Policy states in relevant part, as follows:

> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the "Declarations." "We", "us", and "our" refer to the company providing this insurance. Other words and phrases that appear in quotation marks have special meaning. Refer to XXII. DEFINITIONS SECTION.

August 26, 2022
Page 5

### I.   PROPERTY DIRECT COVERAGES SECTION

**We will pay for direct physical loss of or damage to "covered property" caused by or resulting from any COVERED CAUSE OF LOSS under III.A. COVERED CAUSES OF LOSS. Coverage is provided only when a limit of insurance is shown in the "Declarations".**

**Unless otherwise specified, "covered property" must be located within the "coverage territory".**

**Unless otherwise specified in this section, all EXCLUSIONS under III.B. EXCLUSIONS apply.**

**Coverage is also provided for "covered property" which is not damaged but which must be removed and replaced in order to repair "covered property" which is damaged by a COVERED CAUSE OF LOSS under III.A. COVERED CAUSES OF LOSS.**

### III.   PROPERTY CAUSES OF LOSS, EXCLUSIONS, AND LIMITATIONS SECTION

### B.   EXCLUSIONS

1.   Except as otherwise specified, we will not pay for loss or damage which would not have occurred in the absence of one or more of the following excluded events regardless of: (i) the cause of the excluded event; (ii) other causes of the loss; or (iii) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss:

2.   We will not pay for loss or damage caused by or resulting from any of the following:

    **a.   ATMOSPHERE AND ENVIRONMENT**

        (3)   Nesting or infestation, or discharge or release of waste products or secretions, by inspects, spiders, birds,  reptiles, rodents, or other animals;

August 26, 2022
Page 6

**b.    MATERIAL FACTORS**

(1)    Wear and tear.

(2)    Rust, corrosion, decay, contamination or deterioration.

(3)    Latent defect, innate or inherent vice, or any quality in the property that causes it to damage or destroy itself.

(4)    Settling, cracking, bulging shrinking, or expanding.

**3.    ACTS OR OMISSIONS**

We will not pay for loss or damage caused by or resulting from any of the following:

a.    Acts, decisions, errors, or omissions, including the failure to act or decide, of any person, group, organization, or governmental body;

b.    Faulty, inadequate, defective, or negligent:

(2)    Design, testing, specifications, workmanship, repair, construction, renovation, remodeling, grading, earth compaction;

(3)    Materials used in repair, construction, renovation or remodeling; or

**VI.    PROPERTY CONDITIONS SECTION**

The Property Coverage Part is subject to the following conditions.

**I.    INSURED'S DUTIES IN THE EVENT OF LOSS OR DAMAGE**

Failure to perform these duties will impair your rights under this Property Coverage Part or could result in denial of coverage.

August 26, 2022
Page 7

> 4. Give us prompt notice of the loss or damage and include a description of the property involved.
>
> 7. As soon as possible, give us a description of how, when and where the loss or damage occurred.
>
> 10. As often as may reasonably be required, permit us to inspect the property and records proving the loss or damage. Also, permit us to take samples of damaged and undamaged property for inspection, testing, and analysis. Permit us to make copies from your books and records.
>
> 13. Cooperate with us in the investigation or settlement of the claim.

**U.** **"POLICY PERIOD"**

> Under this Property Coverage Part we provide coverage for this loss or damage during the "policy period."

## COVERAGE POSITION

Section VI.I of the Policy, Property Conditions, states that as a condition of the Policy, the Association is required to do the following: "4. Give us prompt notice of the loss or damage and include a description of the property involved … 7. As soon as possible, give us a description of how, when and where the loss or damage occurred."  Both of these conditions state that "Failure to perform these duties will impair your rights under this Property Coverage Part or could result in denial of coverage."  In that regard, we note that the Association reported the claim to AAIC on November 17, 2021, approximately eight months after the loss allegedly took place on March 25, 2021. As such, AAIC denies coverage in its entirety on the basis that the Association did not provide AAIC "prompt notice of the loss or damage," as required under Section VI.I.4 of the Policy. Furthermore, coverage is denied in its entirety on the basis that the Association did not "As soon as possible, give us a description of how, when and where the loss or damage occurred," as required under Section VI.I.7 of the Policy.

AAIC additionally notes that the Association has the duty, pursuant to Section VI.I.13 of the Policy, as a condition of the Policy, to "Cooperate with [AAIC] in the investigation or settlement of the claim." The Association also as the duty, pursuant to Section VI.I.10, as a

August 26, 2022
Page 8

condition of the Policy, to "As often as may reasonably be required, permit [AAIC] to inspect the property and records proving the loss or damage."

AAIC also notes the following:

- The Policy, in general, pertains to "direct physical loss of or damage to "covered property" caused by or resulting from any COVERED CAUSE OF LOSS …";

- AAIC notes that the Property Coverages Part of the Policy, Section III.B.2.b, Material Factors, precludes coverage for: "(1) Wear and tear. (2) Rust, corrosion, decay, contamination, or deterioration. (3) Latent defect, innate or inherent vice, or any quality in the property that causes it to damage or destroy itself. (4) Settling, cracking, bulging, shrinking, or expanding."

- AAIC additionally notes that the Property Coverages Part of the Policy, Section III.B.3, Acts or Omissions, states as follows: "We will not pay for loss or damage caused by or resulting from any of the following: a. Acts, decisions, errors or omissions, including the failure to act or decide, or any person, group, organization or governmental body; b. Faulty, inadequate, defective, or negligent: (1) Planning, zoning, development, surveying, siting; (2) Design, testing, specifications, workmanship, repair, construction, renovation, remodeling, grading, earth compaction; (3) Materials used in repair, construction, renovation, or remodeling; or (4) Maintenance.

- AAIC also notes that, under Section III.B.2.a.(3), Atmosphere and Environment, precludes coverage for the following: "Nesting or infestation, or discharge or release of waste products or secretions, by inspects, spiders, birds, reptiles, rodents, or other animals." We refer you the damage caused by bird droppings, as noted in the above-referenced Haag report; and

- We refer you to Policy Condition VI.U., "Policy Period," which states that "Under this Property Coverage Part we provide coverage for loss or damage during the 'policy period.'"

Please note that the Policy contains the following provision:

## VI.    PROPERTY CONDITIONS SECTION

The Property Coverage Part is subject to the following conditions.

August 26, 2022
Page 9

     **D.**    **LEGAL ACTION AGAINST US**

No one may bring a legal action against us under this Property Coverage Part unless:

1.    There has been full compliance with all of the terms of this Property Coverage Part; and

2.    The action is brought within two years after the date on which the direct physical loss or damage occurred.

As noted above, the contents of the Denial Letter are incorporated herein as if set forth at length and need not be repeated herein. Any alleged violation of O.C.G.A. Sections 33-6-34 and 33-4-6 or otherwise are denied as without merit.

The issuance of this letter should not be construed as a waiver of any rights afforded to AAIC by the Policy. All rights and defenses are hereby reserved. AAIC reserves the right to supplement its position on coverage, including any of its rights pursuant to the terms, conditions, exclusions, definitions and provisions of its Policy. The specific delineation of any policy defenses or provisions detailed above or in prior correspondence is not intended to constitute a waiver of any other available policy defenses, and shall not estop AAIC from asserting such defenses as may be applicable.

Thank you for your attention to this matter. Should you have any further questions or comments, please do not hesitate to contact the undersigned.

Very truly yours,

*Seth I. Weinstein*

Seth I. Weinstein of
LEWIS BRISBOIS BISGAARD & SMITH LLP

SIW/jm

Annexed: **Enclosure** – Policy

cc:    ***Via Email:*** **mcericola@cauinsure.com**
       Matthew Cericola
       Claims Adjuster
       Community Association Underwriters of America, Inc.

4880-2092-1904.1

August 26, 2022
Page 10

*Via Email:* **[guardianadjustersandappraisers@gmail.com](mailto:guardianadjustersandappraisers@gmail.com)**
William Hyde
Guardian Adjusters and Appraisers

*Via Regular Mail*
Judy Dreher
Dreher Insurance Agency
1805 Herrington Road
Building 1, Suite C
Lawrenceville, GA 30043

# EXHIBIT C



**J. Remington Huggins, Esq.**
110 Norcross Street
Roswell, GA 30075
remington@lawhuggins.com
(770) 913-6229

September 19, 2022

American Alternative Insurance Company          **Sent Via email:**
Community Association Underwriters of America,   mcericola@cauinsure.com
Inc.
555 College Road East
Princeton, NJ 08543

Re:   Named Insured(s):   Heritage Park Condominium Association, Inc.
      Policy Number:      CAU508389-4
      Claim Number:       112767
      Date of Loss:       March 25, 2021

To Whom it May Concern:

I have been retained by Heritage Park Condominium Association, Inc. ("Your Insured") to represent them regarding the above referenced property insurance claim. All further communication regarding this claim should be directed to my office.

Please also accept this letter as a formal demand for a **certified copy of the relevant insurance policy, to include the original policy, any renewals, and any endorsements.** We also request a copy of any and all repair estimates drafted to date, **as well as a payment sheet or payment log detailing all insurance proceeds issued to date for this claim.**

My client has complied with all conditions contained in the insurance policy. My client ask American Alternative Insurance Company ("AAIC") to afford the appropriate coverage under the applicable insurance policy.

Bad faith claims handling triggers additional liability on your part under O.C.G.A. § 33-4-6 that includes the amount of the claim, plus a penalty of an additional fifty percent (50%) of the value of the claim and reasonable attorneys' fees and costs.

Therefore, per the enclosed spreadsheets of damages to Your Insured's property, we are hereby making formal demand that you settle the above claim for the sum of **$1,927,603.75, less previous payments, depreciation, and the applicable deductible.** The invoice & estimate of damages is attached for your review. This demand is being made pursuant to O.C.G.A. § 33-4-6, and you have sixty (60) days in which to make payment on this claim or be subject to a lawsuit containing a claim for breach of contract and bad faith seeking all compensation allowed by law, including attorneys' fees and a penalty of fifty percent (50%) of the loss amount.

To:  American Alternative Insurance Company
Client: Heritage Park Condominium Association, Inc.
September 19, 2022
Page **2** of **2**

This letter constitutes a "proper demand" for payment under O.C.G.A. § 33-4-6. If you contend that a proper demand has not been made, you must immediately notify us of the reasons for such allegation. Otherwise, it will be assumed you agree this letter constitutes a proper demand.

The purpose of this correspondence is to encourage AAIC to resolve Your Insured's claim in a fair and equitable manner in hopes of avoiding litigation. If you fail to respond to this letter with an offer of settlement that is acceptable to Your Insured, we will have no alternative other than recommending to Your Insured that a lawsuit be filed against you.

Payment must be received in my office within sixty (60) days of your receipt of this letter in order to avoid a suit for bad faith penalties and attorney's fees. Any check issued should list Huggins Law Firm, LLC as sole payee. Any objection to these payment terms shall be submitted in writing to Huggins Law Firm, LLC within 10 days of receipt of this letter.

I look forward to working with you to resolve this matter quickly and amicably. Please feel free to contact me should you have any questions regarding this formal 60-day demand. Should you have any questions or concerns, please reach out to me at remington@lawhuggins.com or by phone at (770) 913-6229.

Sincerely,

J. Remington Huggins, Esq.
Attorney at Law

JRH/aak
Encl.

## Accurate Adjusting & Appraisals PC

Accurate Adjusting & Appraisals PC
PO BOX 552
Westcliffe, CO 81252
678-943-3169

| | | | |
|---|---|---|---|
| Insured: | Heritage Place Circle | | |
| Property: | 2350 Heritage Park Circle | | |
| | Kennesaw, GA 30144 | | |

| | | | |
|---|---|---|---|
| Claim Rep.: | David Tolar | Business: | (678) 943-3169 |
| Position: | President | E-mail: | Davidt@accurateadjustingPC.com |
| Company: | Accurate Adjusting & Appraisals PC | | |
| Business: | PO BOX 552 | | |
| | Westcliffe, CO 81252 | | |

| | | | |
|---|---|---|---|
| Estimator: | David Tolar | Business: | (678) 943-3169 |
| Position: | President | E-mail: | Davidt@accurateadjustingPC. com |
| Company: | Accurate Adjusting & Appraisals PC | | |
| Business: | PO BOX 552 | | |
| | Westcliffe, CO 81252 | | |

**Claim Number:** 112767          **Policy Number:** CAU508389-4          **Type of Loss:** Hail

| | | | |
|---|---|---|---|
| Date of Loss: | 3/25/2021 12:00 AM | Date Received: | |
| Date Inspected: | | Date Entered: | 6/17/2022 4:29 PM |

| | |
|---|---|
| Price List: | GAAT8X_AUG22 |
| | Restoration/Service/Remodel |
| Estimate: | HERITAGE_PARK_CIRCL1 |

**This estimate is a preliminary estimate of damages. We reserve the right to supplement our estimate as more damages are discovered during the course of investigation into the loss. This is not a final draft.**

## Accurate Adjusting & Appraisals PC

Accurate Adjusting & Appraisals PC
PO BOX 552
Westcliffe, CO 81252
678-943-3169

### HERITAGE_PARK_CIRCL1

#### Building 1 -Clubhouse

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 1.  Tear off, haul and dispose of comp. shingles - 3 tab | 17.13 SQ | 60.06 | 0.00 | 205.76 | 1,234.59 | (0.00) | 1,234.59 |
| 2.  Laminated - comp. shingle rfg. - w/out felt | 19.00 SQ | 250.55 | 132.34 | 978.56 | 5,871.35 | (1,102.86) | 4,768.49 |
| 3.  R&R Hip / Ridge cap - Standard profile - composition shingles | 30.00 LF | 8.71 | 4.32 | 53.12 | 318.74 | (36.00) | 282.74 |
| 4.  R&R Hip / Ridge cap - Standard profile - composition shingles | 22.00 LF | 8.71 | 3.17 | 38.96 | 233.75 | (26.40) | 207.35 |
| 5.  R&R Continuous ridge vent - shingle-over style | 22.00 LF | 11.88 | 4.44 | 53.16 | 318.96 | (31.68) | 287.28 |
| 6.  Roofing felt - 30 lb. | 17.13 SQ | 40.39 | 12.50 | 140.88 | 845.26 | (156.23) | 689.03 |
| 7.  Asphalt starter - peel and stick | 132.00 LF | 2.13 | 4.67 | 57.18 | 343.01 | (58.41) | 284.60 |
| 8.  R&R Drip edge | 206.00 LF | 3.95 | 14.34 | 165.60 | 993.64 | (102.41) | 891.23 |
| 9.  R&R Flashing - L flashing - galvanized | 20.00 LF | 6.86 | 2.65 | 27.98 | 167.83 | (18.94) | 148.89 |
| 10.  Remove Additional charge for steep roof - 7/12 to 9/12 slope | 11.53 SQ | 43.19 | 0.00 | 99.60 | 597.58 | (0.00) | 597.58 |
| 11.  Additional charge for steep roof - 7/12 to 9/12 slope | 11.53 SQ | 49.73 | 0.00 | 114.68 | 688.07 | (0.00) | 688.07 |
| 12.  Remove Additional charge for steep roof - 10/12 - 12/12 slope | 5.59 SQ | 67.86 | 0.00 | 75.86 | 455.20 | (0.00) | 455.20 |
| 13.  Additional charge for steep roof - 10/12 - 12/12 slope | 5.59 SQ | 78.16 | 0.00 | 87.38 | 524.29 | (0.00) | 524.29 |
| 14.  Remove Standing seam metal roofing | 44.00 SF | 0.53 | 0.00 | 4.66 | 27.98 | (0.00) | 27.98 |
| 15.  Standing seam metal roofing | 50.00 SF | 7.79 | 11.43 | 80.18 | 481.11 | (38.10) | 443.01 |
| **Totals:  Building 1 -Clubhouse** | | | **189.86** | **2,183.56** | **13,101.36** | **1,571.03** | **11,530.33** |

#### Building 2-Six Plex (374-384)

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 16.  Tear off, haul and dispose of comp. shingles - 3 tab | 60.85 SQ | 60.06 | 0.00 | 730.94 | 4,385.59 | (0.00) | 4,385.59 |
| 17.  Laminated - comp. shingle rfg. - w/out felt | 70.00 SQ | 250.55 | 487.58 | 3,605.22 | 21,631.30 | (4,063.15) | 17,568.15 |
| 18.  R&R Hip / Ridge cap - Standard profile - composition shingles | 953.00 LF | 8.71 | 137.23 | 1,687.56 | 10,125.42 | (1,143.60) | 8,981.82 |
| 19.  R&R Continuous ridge vent - shingle-over style | 953.00 LF | 10.16 | 192.12 | 1,974.90 | 11,849.50 | (1,372.32) | 10,477.18 |
| 20.  Roofing felt - 30 lb. | 60.85 SQ | 40.39 | 44.40 | 500.42 | 3,002.55 | (554.95) | 2,447.60 |
| 21.  Asphalt starter - peel and stick | 485.00 LF | 2.13 | 17.17 | 210.06 | 1,260.28 | (214.61) | 1,045.67 |
| 22.  R&R Drip edge | 953.00 LF | 3.28 | 66.33 | 638.42 | 3,830.59 | (473.78) | 3,356.81 |
| 23.  Step flashing | 358.00 LF | 10.60 | 34.80 | 765.92 | 4,595.52 | (248.55) | 4,346.97 |

## Accurate Adjusting & Appraisals PC

Accurate Adjusting & Appraisals PC
PO BOX 552
Westcliffe, CO 81252
678-943-3169

### CONTINUED - Building 2-Six Plex (374-384)

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 24.  R&R Flashing - L flashing - galvanized | 154.00 LF | 5.66 | 20.42 | 178.40 | 1,070.46 | (145.86) | 924.60 |
| 25.  Remove Additional charge for high roof (2 stories or greater) | 60.85 SQ | 5.50 | 0.00 | 66.94 | 401.62 | (0.00) | 401.62 |
| 26.  Additional charge for high roof (2 stories or greater) | 60.85 SQ | 21.97 | 0.00 | 267.38 | 1,604.25 | (0.00) | 1,604.25 |
| 27.  Remove Additional charge for steep roof - 7/12 to 9/12 slope | 7.94 SQ | 14.57 | 0.00 | 23.14 | 138.83 | (0.00) | 138.83 |
| 28.  Additional charge for steep roof - 7/12 to 9/12 slope | 7.94 SQ | 49.73 | 0.00 | 78.98 | 473.84 | (0.00) | 473.84 |
| 29.  R&R Downspout - galvanized - up to 5"* | 420.00 LF | 8.55 | 84.42 | 735.08 | 4,410.50 | (0.00) | 4,410.50 |
| 30.  Prime & paint downspout* | 420.00 LF | 1.68 | 6.55 | 142.44 | 854.59 | (0.00) | 854.59 |
| 31.  R&R Central air conditioning system - 2 ton - 14-15 SEER | 6.00 EA | 3,077.56 | 711.75 | 3,835.44 | 23,012.55 | (0.00) | 23,012.55 |
| 32.  R&R Window AC unit - mobile home | 1.00 EA | 411.62 | 14.41 | 85.22 | 511.25 | (0.00) | 511.25 |
| **Totals:  Building 2-Six Plex (374-384)** | | | 1,817.18 | 15,526.46 | 93,158.64 | 8,216.82 | 84,941.82 |

### Building 3 Seven Plex (390-402)

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 33.  Tear off, haul and dispose of comp. shingles - 3 tab | 69.57 SQ | 60.06 | 0.00 | 835.68 | 5,014.05 | (0.00) | 5,014.05 |
| 34.  Laminated - comp. shingle rfg. - w/out felt | 76.67 SQ | 250.55 | 534.04 | 3,948.74 | 23,692.45 | (4,450.31) | 19,242.14 |
| 35.  R&R Hip / Ridge cap - Standard profile - composition shingles | 231.00 LF | 8.71 | 33.26 | 409.06 | 2,454.33 | (277.20) | 2,177.13 |
| 36.  R&R Continuous ridge vent - shingle-over style | 231.00 LF | 10.16 | 46.57 | 478.72 | 2,872.25 | (332.64) | 2,539.61 |
| 37.  Roofing felt - 30 lb. | 69.57 SQ | 40.39 | 50.76 | 572.14 | 3,432.83 | (634.48) | 2,798.35 |
| 38.  Asphalt starter - peel and stick | 542.00 LF | 2.13 | 19.19 | 234.74 | 1,408.39 | (239.84) | 1,168.55 |
| 39.  R&R Drip edge | 1,055.00 LF | 3.28 | 73.43 | 706.76 | 4,240.59 | (524.49) | 3,716.10 |
| 40.  R&R Flashing - L flashing - galvanized | 121.00 LF | 5.66 | 16.04 | 140.18 | 841.08 | (114.60) | 726.48 |
| 41.  Step flashing | 481.00 LF | 10.60 | 46.75 | 1,029.08 | 6,174.43 | (333.95) | 5,840.48 |
| 42.  Remove Additional charge for high roof (2 stories or greater) | 69.57 SQ | 5.50 | 0.00 | 76.52 | 459.16 | (0.00) | 459.16 |
| 43.  Additional charge for high roof (2 stories or greater) | 76.57 SQ | 21.97 | 0.00 | 336.44 | 2,018.68 | (0.00) | 2,018.68 |

## Accurate Adjusting & Appraisals PC

Accurate Adjusting & Appraisals PC
PO BOX 552
Westcliffe, CO 81252
678-943-3169

### CONTINUED - Building 3 Seven Plex (390-402)

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 44.  Remove Additional charge for steep roof - 7/12 to 9/12 slope | 10.64 SQ | 14.57 | 0.00 | 31.00 | 186.02 | (0.00) | 186.02 |
| 45.  Additional charge for steep roof - 7/12 to 9/12 slope | 10.64 SQ | 49.73 | 0.00 | 105.82 | 634.95 | (0.00) | 634.95 |
| 46.  R&R Downspout - aluminum - up to 5"* | 210.00 LF | 9.69 | 56.57 | 418.30 | 2,509.77 | (0.00) | 2,509.77 |
| 47.  Prime & paint gutter / downspout | 210.00 LF | 1.68 | 3.28 | 71.22 | 427.30 | (0.00) | 427.30 |
| 48.  R&R Central air conditioning system - 2 ton - 14-15 SEER | 5.00 EA | 3,077.56 | 593.13 | 3,196.20 | 19,177.13 | (0.00) | 19,177.13 |
| **Totals:  Building 3 Seven Plex (390-402)** | | | **1,473.02** | **12,590.60** | **75,543.41** | **6,907.51** | **68,635.90** |

### Building 4- Eight Plex (408-424)

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 49.  Tear off, haul and dispose of comp. shingles - 3 tab | 78.89 SQ | 60.06 | 0.00 | 947.62 | 5,685.75 | (0.00) | 5,685.75 |
| 50.  Laminated - comp. shingle rfg. - w/out felt | 87.00 SQ | 250.55 | 605.99 | 4,480.78 | 26,884.62 | (5,049.92) | 21,834.70 |
| 51.  Roofing felt - 30 lb. | 78.89 SQ | 40.39 | 57.56 | 648.80 | 3,892.73 | (719.48) | 3,173.25 |
| 52.  Asphalt starter - peel and stick | 591.00 LF | 2.13 | 20.92 | 255.94 | 1,535.69 | (261.52) | 1,274.17 |
| 53.  R&R Hip / Ridge cap - Standard profile - composition shingles | 253.00 LF | 8.71 | 36.43 | 448.00 | 2,688.06 | (0.00) | 2,688.06 |
| 54.  R&R Drip edge | 1,157.00 LF | 3.28 | 80.53 | 775.10 | 4,650.59 | (575.19) | 4,075.40 |
| 55.  R&R Continuous ridge vent - shingle-over style | 253.00 LF | 10.16 | 51.00 | 524.28 | 3,145.76 | (364.32) | 2,781.44 |
| 56.  Step flashing | 508.00 LF | 10.60 | 49.38 | 1,086.84 | 6,521.02 | (352.70) | 6,168.32 |
| 57.  R&R Flashing, 14" wide | 175.00 LF | 5.11 | 17.43 | 182.34 | 1,094.02 | (124.50) | 969.52 |
| 58.  Remove Additional charge for high roof (2 stories or greater) | 86.77 SQ | 5.50 | 0.00 | 95.44 | 572.68 | (0.00) | 572.68 |
| 59.  Additional charge for high roof (2 stories or greater) | 78.89 SQ | 21.97 | 0.00 | 346.64 | 2,079.85 | (0.00) | 2,079.85 |
| 60.  Remove Additional charge for steep roof - 7/12 to 9/12 slope | 9.93 SQ | 14.57 | 0.00 | 28.94 | 173.62 | (0.00) | 173.62 |
| 61.  Additional charge for steep roof - 7/12 to 9/12 slope | 9.93 SQ | 49.73 | 0.00 | 98.76 | 592.58 | (0.00) | 592.58 |
| 62.  Remove Additional charge for steep roof - 10/12 - 12/12 slope | 1.69 SQ | 22.90 | 0.00 | 7.74 | 46.44 | (0.00) | 46.44 |
| 63.  Additional charge for steep roof - 7/12 to 9/12 slope | 1.69 SQ | 49.73 | 0.00 | 16.80 | 100.84 | (0.00) | 100.84 |

## Accurate Adjusting & Appraisals PC

Accurate Adjusting & Appraisals PC
PO BOX 552
Westcliffe, CO 81252
678-943-3169

### CONTINUED - Building 4- Eight Plex (408-424)

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 64. R&R Downspout - aluminum - up to 5"* | 240.00 LF | 9.69 | 64.66 | 478.06 | 2,868.32 | (0.00) | 2,868.32 |
| 65. Gutter / downspout - aluminum - up to 5" | 240.00 EA | 9.69 | 57.17 | 476.56 | 2,859.33 | (0.00) | 2,859.33 |
| 66. R&R Central air conditioning system - 2 ton - 14-15 SEER | 6.00 EA | 3,077.56 | 711.75 | 3,835.44 | 23,012.55 | (0.00) | 23,012.55 |
| **Totals:  Building 4- Eight Plex (408-424)** | | | **1,752.82** | **14,734.08** | **88,404.45** | **7,447.63** | **80,956.82** |

### Building 5 -Six Plex (424-434)

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 67. Tear off, haul and dispose of comp. shingles - 3 tab | 60.85 SQ | 60.06 | 0.00 | 730.94 | 4,385.59 | (0.00) | 4,385.59 |
| 68. Laminated - comp. shingle rfg. - w/out felt | 70.00 SQ | 250.55 | 487.58 | 3,605.22 | 21,631.30 | (4,063.15) | 17,568.15 |
| 69. R&R Hip / Ridge cap - Standard profile - composition shingles | 953.00 LF | 8.71 | 137.23 | 1,687.56 | 10,125.42 | (1,143.60) | 8,981.82 |
| 70. R&R Continuous ridge vent - shingle-over style | 953.00 LF | 10.16 | 192.12 | 1,974.90 | 11,849.50 | (1,372.32) | 10,477.18 |
| 71. Roofing felt - 30 lb. | 60.85 SQ | 40.39 | 44.40 | 500.42 | 3,002.55 | (554.95) | 2,447.60 |
| 72. Asphalt starter - peel and stick | 485.00 LF | 2.13 | 17.17 | 210.06 | 1,260.28 | (214.61) | 1,045.67 |
| 73. R&R Drip edge | 953.00 LF | 3.28 | 66.33 | 638.42 | 3,830.59 | (473.78) | 3,356.81 |
| 74. Step flashing | 358.00 LF | 10.60 | 34.80 | 765.92 | 4,595.52 | (248.55) | 4,346.97 |
| 75. R&R Flashing - L flashing - galvanized | 154.00 LF | 5.66 | 20.42 | 178.40 | 1,070.46 | (145.86) | 924.60 |
| 76. Remove Additional charge for high roof (2 stories or greater) | 60.85 SQ | 5.50 | 0.00 | 66.94 | 401.62 | (0.00) | 401.62 |
| 77. Additional charge for high roof (2 stories or greater) | 60.85 SQ | 21.97 | 0.00 | 267.38 | 1,604.25 | (0.00) | 1,604.25 |
| 78. Remove Additional charge for steep roof - 7/12 to 9/12 slope | 7.94 SQ | 14.57 | 0.00 | 23.14 | 138.83 | (0.00) | 138.83 |
| 79. Additional charge for steep roof - 7/12 to 9/12 slope | 7.94 SQ | 49.73 | 0.00 | 78.98 | 473.84 | (0.00) | 473.84 |
| 80. R&R Gutter / downspout - galvanized - up to 5" | 180.00 LF | 8.55 | 36.18 | 315.04 | 1,890.22 | (0.00) | 1,890.22 |
| 81. Prime & paint gutter / downspout | 180.00 LF | 1.68 | 2.81 | 61.04 | 366.25 | (0.00) | 366.25 |
| 82. R&R Window screen, 26 - 32 SF | 2.00 EA | 94.46 | 10.16 | 39.82 | 238.90 | (0.00) | 238.90 |
| 83. R&R Central air conditioning system - 2 ton - 14-15 SEER | 8.00 EA | 3,077.56 | 949.00 | 5,113.88 | 30,683.36 | (0.00) | 30,683.36 |

## Accurate Adjusting & Appraisals PC

Accurate Adjusting & Appraisals PC
PO BOX 552
Westcliffe, CO 81252
678-943-3169

### CONTINUED - Building 5 -Six Plex (424-434)

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| Totals:  Building 5 -Six Plex (424-434) | | | 1,998.20 | 16,258.06 | 97,548.48 | 8,216.82 | 89,331.66 |

### Building 6 -Six Plex (425-435)

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 84.  Tear off, haul and dispose of comp. shingles - 3 tab | 60.85 SQ | 60.06 | 0.00 | 730.94 | 4,385.59 | (0.00) | 4,385.59 |
| 85.  Laminated - comp. shingle rfg. - w/out felt | 70.00 SQ | 250.55 | 487.58 | 3,605.22 | 21,631.30 | (4,063.15) | 17,568.15 |
| 86.  R&R Continuous ridge vent - shingle-over style | 953.00 LF | 10.16 | 192.12 | 1,974.90 | 11,849.50 | (1,372.32) | 10,477.18 |
| 87.  R&R Hip / Ridge cap - Standard profile - composition shingles | 953.00 LF | 8.71 | 137.23 | 1,687.56 | 10,125.42 | (1,143.60) | 8,981.82 |
| 88.  Roofing felt - 30 lb. | 60.85 SQ | 40.39 | 44.40 | 500.42 | 3,002.55 | (554.95) | 2,447.60 |
| 89.  Asphalt starter - peel and stick | 485.00 LF | 2.13 | 17.17 | 210.06 | 1,260.28 | (214.61) | 1,045.67 |
| 90.  R&R Drip edge | 953.00 LF | 3.28 | 66.33 | 638.42 | 3,830.59 | (473.78) | 3,356.81 |
| 91.  Step flashing | 358.00 LF | 10.60 | 34.80 | 765.92 | 4,595.52 | (248.55) | 4,346.97 |
| 92.  R&R Flashing - L flashing - galvanized | 154.00 LF | 5.66 | 20.42 | 178.40 | 1,070.46 | (145.86) | 924.60 |
| 93.  Remove Additional charge for high roof (2 stories or greater) | 60.85 SQ | 5.50 | 0.00 | 66.94 | 401.62 | (0.00) | 401.62 |
| 94.  Additional charge for high roof (2 stories or greater) | 60.85 SQ | 21.97 | 0.00 | 267.38 | 1,604.25 | (0.00) | 1,604.25 |
| 95.  Remove Additional charge for steep roof - 7/12 to 9/12 slope | 7.94 SQ | 14.57 | 0.00 | 23.14 | 138.83 | (0.00) | 138.83 |
| 96.  Additional charge for steep roof - 7/12 to 9/12 slope | 7.94 SQ | 49.73 | 0.00 | 78.98 | 473.84 | (0.00) | 473.84 |
| 97.  R&R Gutter / downspout - aluminum - up to 5" | 108.00 LF | 9.69 | 29.10 | 215.12 | 1,290.74 | (0.00) | 1,290.74 |
| 98.  R&R Downspout - aluminum - up to 5"* | 240.00 LF | 9.69 | 64.66 | 478.06 | 2,868.32 | (0.00) | 2,868.32 |
| 99.  Prime & paint gutter / downspout | 348.00 LF | 1.68 | 5.43 | 118.00 | 708.07 | (0.00) | 708.07 |
| 100.  R&R Window screen, 10 - 16 SF | 1.00 EA | 54.22 | 2.67 | 11.38 | 68.27 | (0.00) | 68.27 |
| 101.  R&R Vinyl window - double hung, 20-28 sf | 3.00 EA | 566.51 | 76.72 | 355.24 | 2,131.49 | (0.00) | 2,131.49 |
| 102.  Add. charge for a retrofit window, 24-40 sf - difficult | 3.00 EA | 356.27 | 6.34 | 215.02 | 1,290.17 | (0.00) | 1,290.17 |
| Totals:  Building 6 -Six Plex (425-435) | | | 1,184.97 | 12,121.10 | 72,726.81 | 8,216.82 | 64,509.99 |

## Accurate Adjusting & Appraisals PC

Accurate Adjusting & Appraisals PC
PO BOX 552
Westcliffe, CO 81252
678-943-3169

### Building 7-Eight Plex(#409-421)

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 103.  Tear off, haul and dispose of comp. shingles - 3 tab | 78.89 SQ | 60.06 | 0.00 | 947.62 | 5,685.75 | (0.00) | 5,685.75 |
| 104.  Laminated - comp. shingle rfg. - w/out felt | 87.00 SQ | 250.55 | 605.99 | 4,480.78 | 26,884.62 | (5,049.92) | 21,834.70 |
| 105.  Roofing felt - 30 lb. | 78.89 SQ | 40.39 | 57.56 | 648.80 | 3,892.73 | (719.48) | 3,173.25 |
| 106.  Asphalt starter - peel and stick | 591.00 LF | 2.13 | 20.92 | 255.94 | 1,535.69 | (261.52) | 1,274.17 |
| 107.  R&R Hip / Ridge cap - Standard profile - composition shingles | 253.00 LF | 8.71 | 36.43 | 448.00 | 2,688.06 | (303.60) | 2,384.46 |
| 108.  R&R Drip edge | 1,157.00 LF | 3.28 | 80.53 | 775.10 | 4,650.59 | (575.19) | 4,075.40 |
| 109.  R&R Continuous ridge vent - shingle-over style | 253.00 LF | 10.16 | 51.00 | 524.28 | 3,145.76 | (364.32) | 2,781.44 |
| 110.  Step flashing | 508.00 LF | 10.60 | 49.38 | 1,086.84 | 6,521.02 | (352.70) | 6,168.32 |
| 111.  R&R Flashing, 14" wide | 175.00 LF | 5.11 | 17.43 | 182.34 | 1,094.02 | (124.50) | 969.52 |
| 112.  Remove Additional charge for high roof (2 stories or greater) | 86.77 SQ | 5.50 | 0.00 | 95.44 | 572.68 | (0.00) | 572.68 |
| 113.  Additional charge for high roof (2 stories or greater) | 78.89 SQ | 21.97 | 0.00 | 346.64 | 2,079.85 | (0.00) | 2,079.85 |
| 114.  Remove Additional charge for steep roof - 7/12 to 9/12 slope | 9.93 SQ | 14.57 | 0.00 | 28.94 | 173.62 | (0.00) | 173.62 |
| 115.  Additional charge for steep roof - 7/12 to 9/12 slope | 9.93 SQ | 49.73 | 0.00 | 98.76 | 592.58 | (0.00) | 592.58 |
| 116.  Remove Additional charge for steep roof - 10/12 - 12/12 slope | 1.69 SQ | 22.90 | 0.00 | 7.74 | 46.44 | (0.00) | 46.44 |
| 117.  Additional charge for steep roof - 7/12 to 9/12 slope | 1.69 SQ | 49.73 | 0.00 | 16.80 | 100.84 | (0.00) | 100.84 |
| 118.  R&R Downspout - aluminum - up to 5"* | 150.00 LF | 9.69 | 40.41 | 298.78 | 1,792.69 | (0.00) | 1,792.69 |
| 119.  Prime & paint gutter / downspout | 150.00 LF | 1.68 | 2.34 | 50.86 | 305.20 | (0.00) | 305.20 |
| 120.  R&R Gutter- galvanized - up to 5"* | 84.00 LF | 8.55 | 16.88 | 147.02 | 882.10 | (0.00) | 882.10 |
| 121.  Prime & paint gutter / downspout | 84.00 LF | 1.68 | 1.31 | 28.48 | 170.91 | (0.00) | 170.91 |
| 122.  R&R Central air conditioning system - 2 ton - 14-15 SEER | 5.00 EA | 3,077.56 | 593.13 | 3,196.20 | 19,177.13 | (0.00) | 19,177.13 |
| **Totals:  Building 7-Eight Plex(#409-421)** | | | **1,573.31** | **13,665.36** | **81,992.28** | **7,751.23** | **74,241.05** |

### Building 8-Seven Plex (391-407)

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 123.  Tear off, haul and dispose of comp. shingles - 3 tab | 69.57 SQ | 60.06 | 0.00 | 835.68 | 5,014.05 | (0.00) | 5,014.05 |
| 124.  Laminated - comp. shingle rfg. - w/out felt | 76.67 SQ | 250.55 | 534.04 | 3,948.74 | 23,692.45 | (4,450.31) | 19,242.14 |
| 125.  Roofing felt - 30 lb. | 69.57 SQ | 40.39 | 50.76 | 572.14 | 3,432.83 | (634.48) | 2,798.35 |
| 126.  Asphalt starter - peel and stick | 542.00 LF | 2.13 | 19.19 | 234.74 | 1,408.39 | (239.84) | 1,168.55 |

## Accurate Adjusting & Appraisals PC

Accurate Adjusting & Appraisals PC
PO BOX 552
Westcliffe, CO 81252
678-943-3169

### CONTINUED - Building 8-Seven Plex (391-407)

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 127.  R&R Drip edge | 1,055.00 LF | 3.28 | 73.43 | 706.76 | 4,240.59 | (524.49) | 3,716.10 |
| 128.  R&R Flashing - L flashing - galvanized | 121.00 LF | 5.66 | 16.04 | 140.18 | 841.08 | (114.60) | 726.48 |
| 129.  R&R Hip / Ridge cap - Standard profile - composition shingles | 231.00 LF | 8.71 | 33.26 | 409.06 | 2,454.33 | (277.20) | 2,177.13 |
| 130.  Step flashing | 481.00 LF | 10.60 | 46.75 | 1,029.08 | 6,174.43 | (333.95) | 5,840.48 |
| 131.  R&R Continuous ridge vent - shingle-over style | 231.00 LF | 10.16 | 46.57 | 478.72 | 2,872.25 | (332.64) | 2,539.61 |
| 132.  Remove Additional charge for high roof (2 stories or greater) | 69.57 SQ | 5.50 | 0.00 | 76.52 | 459.16 | (0.00) | 459.16 |
| 133.  Additional charge for high roof (2 stories or greater) | 76.57 SQ | 21.97 | 0.00 | 336.44 | 2,018.68 | (0.00) | 2,018.68 |
| 134.  Remove Additional charge for steep roof - 7/12 to 9/12 slope | 10.64 SQ | 14.57 | 0.00 | 31.00 | 186.02 | (0.00) | 186.02 |
| 135.  Additional charge for steep roof - 7/12 to 9/12 slope | 10.64 SQ | 49.73 | 0.00 | 105.82 | 634.95 | (0.00) | 634.95 |
| **Totals:  Building 8-Seven Plex (391-407)** | | | **820.04** | **8,904.88** | **53,429.21** | **6,907.51** | **46,521.70** |

### Building 9- (373-387)

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 136.  Tear off, haul and dispose of comp. shingles - 3 tab | 78.89 SQ | 60.06 | 0.00 | 947.62 | 5,685.75 | (0.00) | 5,685.75 |
| 137.  Laminated - comp. shingle rfg. - w/out felt | 87.00 SQ | 250.55 | 605.99 | 4,480.78 | 26,884.62 | (5,049.92) | 21,834.70 |
| 138.  Roofing felt - 30 lb. | 78.89 SQ | 40.39 | 57.56 | 648.80 | 3,892.73 | (719.48) | 3,173.25 |
| 139.  Asphalt starter - peel and stick | 591.00 LF | 2.13 | 20.92 | 255.94 | 1,535.69 | (261.52) | 1,274.17 |
| 140.  R&R Drip edge | 1,157.00 LF | 3.28 | 80.53 | 775.10 | 4,650.59 | (575.19) | 4,075.40 |
| 141.  R&R Hip / Ridge cap - Standard profile - composition shingles | 253.00 LF | 8.71 | 36.43 | 448.00 | 2,688.06 | (303.60) | 2,384.46 |
| 142.  R&R Continuous ridge vent - shingle-over style | 253.00 LF | 10.16 | 51.00 | 524.28 | 3,145.76 | (364.32) | 2,781.44 |
| 143.  Step flashing | 508.00 LF | 10.60 | 49.38 | 1,086.84 | 6,521.02 | (352.70) | 6,168.32 |
| 144.  R&R Flashing, 14" wide | 175.00 LF | 5.11 | 17.43 | 182.34 | 1,094.02 | (124.50) | 969.52 |
| 145.  Remove Additional charge for high roof (2 stories or greater) | 86.77 SQ | 5.50 | 0.00 | 95.44 | 572.68 | (0.00) | 572.68 |
| 146.  Additional charge for high roof (2 stories or greater) | 78.89 SQ | 21.97 | 0.00 | 346.64 | 2,079.85 | (0.00) | 2,079.85 |
| 147.  Remove Additional charge for steep roof - 7/12 to 9/12 slope | 9.93 SQ | 14.57 | 0.00 | 28.94 | 173.62 | (0.00) | 173.62 |

## Accurate Adjusting & Appraisals PC

Accurate Adjusting & Appraisals PC
PO BOX 552
Westcliffe, CO 81252
678-943-3169

### CONTINUED - Building 9- (373-387)

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 148. Tear off, haul and dispose of comp. shingles - 3 tab | 9.93 SQ | 49.73 | 0.00 | 98.76 | 592.58 | (0.00) | 592.58 |
| 149. Remove Additional charge for steep roof - 10/12 - 12/12 slope | 1.69 SQ | 22.90 | 0.00 | 7.74 | 46.44 | (0.00) | 46.44 |
| 150. Additional charge for steep roof - 7/12 to 9/12 slope | 1.69 SQ | 49.73 | 0.00 | 16.80 | 100.84 | (0.00) | 100.84 |
| **Totals: Building 9- (373-387)** | | | **919.24** | **9,944.02** | **59,664.25** | **7,751.23** | **51,913.02** |

### Building 10- Five Plex (363-369)

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 151. Tear off, haul and dispose of comp. shingles - 3 tab | 55.38 SQ | 60.06 | 0.00 | 665.22 | 3,991.34 | (0.00) | 3,991.34 |
| 152. Laminated - comp. shingle rfg. - w/out felt | 64.00 SQ | 250.55 | 445.79 | 3,296.20 | 19,777.19 | (3,714.88) | 16,062.31 |
| 153. R&R Hip / Ridge cap - Standard profile - composition shingles | 173.00 LF | 8.71 | 24.91 | 306.34 | 1,838.08 | (207.60) | 1,630.48 |
| 154. R&R Continuous ridge vent - shingle-over style | 173.00 LF | 10.16 | 34.88 | 358.50 | 2,151.06 | (249.12) | 1,901.94 |
| 155. Roofing felt - 30 lb. | 55.40 SQ | 40.39 | 40.42 | 455.60 | 2,733.63 | (505.25) | 2,228.38 |
| 156. Asphalt starter - peel and stick | 477.00 LF | 2.13 | 16.89 | 206.58 | 1,239.48 | (211.07) | 1,028.41 |
| 157. R&R Drip edge | 904.00 LF | 3.28 | 62.92 | 605.62 | 3,633.66 | (449.42) | 3,184.24 |
| 158. Step flashing | 338.00 LF | 10.60 | 32.85 | 723.14 | 4,338.79 | (234.67) | 4,104.12 |
| 159. R&R Flashing - L flashing - galvanized | 179.00 LF | 5.66 | 23.74 | 207.38 | 1,244.26 | (169.54) | 1,074.72 |
| 160. Remove Additional charge for high roof (2 stories or greater) | 55.40 SQ | 5.50 | 0.00 | 60.94 | 365.64 | (0.00) | 365.64 |
| 161. Additional charge for high roof (2 stories or greater) | 55.40 SQ | 21.97 | 0.00 | 243.42 | 1,460.56 | (0.00) | 1,460.56 |
| 162. Remove Additional charge for steep roof - 7/12 to 9/12 slope | 6.04 SQ | 14.57 | 0.00 | 17.60 | 105.60 | (0.00) | 105.60 |
| 163. Additional charge for steep roof - 7/12 to 9/12 slope | 6.04 SQ | 49.73 | 0.00 | 60.08 | 360.45 | (0.00) | 360.45 |
| 164. Remove Additional charge for steep roof - 10/12 - 12/12 slope | 0.10 SQ | 22.90 | 0.00 | 0.46 | 2.75 | (0.00) | 2.75 |
| 165. Additional charge for steep roof - 10/12 - 12/12 slope | 0.10 SQ | 78.16 | 0.00 | 1.56 | 9.38 | (0.00) | 9.38 |
| **Totals: Building 10- Five Plex (363-369)** | | | **682.40** | **7,208.64** | **43,251.87** | **5,741.55** | **37,510.32** |

## Accurate Adjusting & Appraisals PC

Accurate Adjusting & Appraisals PC
PO BOX 552
Westcliffe, CO 81252
678-943-3169

### Building 11- Four Plex (351-357)

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 166. Tear off, haul and dispose of comp. shingles - 3 tab | 44.30 SQ | 60.06 | 0.00 | 532.14 | 3,192.80 | (0.00) | 3,192.80 |
| 167. Laminated - comp. shingle rfg. - w/out felt | 51.00 SQ | 250.55 | 355.24 | 2,626.66 | 15,759.95 | (2,960.30) | 12,799.65 |
| 168. R&R Hip / Ridge cap - Standard profile - composition shingles | 136.00 LF | 8.71 | 19.58 | 240.82 | 1,444.96 | (163.20) | 1,281.76 |
| 169. R&R Continuous ridge vent - shingle-over style | 136.00 LF | 10.16 | 27.42 | 281.84 | 1,691.02 | (195.84) | 1,495.18 |
| 170. Roofing felt - 30 lb. | 44.30 SQ | 40.39 | 32.32 | 364.32 | 2,185.92 | (404.02) | 1,781.90 |
| 171. Asphalt starter - peel and stick | 401.00 LF | 2.13 | 14.20 | 173.66 | 1,041.99 | (177.44) | 864.55 |
| 172. R&R Drip edge | 753.00 LF | 3.28 | 52.41 | 504.44 | 3,026.69 | (374.35) | 2,652.34 |
| 173. Step flashing | 276.00 LF | 10.60 | 26.83 | 590.48 | 3,542.91 | (191.62) | 3,351.29 |
| 174. R&R Flashing - L flashing - galvanized | 166.00 LF | 5.66 | 22.01 | 192.32 | 1,153.89 | (157.23) | 996.66 |
| 175. Remove Additional charge for high roof (2 stories or greater) | 44.30 SQ | 5.50 | 0.00 | 48.74 | 292.39 | (0.00) | 292.39 |
| 176. Additional charge for high roof (2 stories or greater) | 44.30 SQ | 21.97 | 0.00 | 194.66 | 1,167.93 | (0.00) | 1,167.93 |
| 177. Remove Additional charge for steep roof - 7/12 to 9/12 slope | 4.68 SQ | 14.57 | 0.00 | 13.64 | 81.83 | (0.00) | 81.83 |
| 178. Additional charge for steep roof - 7/12 to 9/12 slope | 4.68 SQ | 49.73 | 0.00 | 46.54 | 279.28 | (0.00) | 279.28 |
| 179. Remove Additional charge for steep roof - 10/12 - 12/12 slope | 0.57 SQ | 22.90 | 0.00 | 2.62 | 15.67 | (0.00) | 15.67 |
| 180. Additional charge for steep roof - 10/12 - 12/12 slope | 0.57 SQ | 78.16 | 0.00 | 8.92 | 53.47 | (0.00) | 53.47 |

| Totals: Building 11- Four Plex (351-357) | | | 550.01 | 5,821.80 | 34,930.70 | 4,624.00 | 30,306.70 |
|---|---|---|---|---|---|---|---|

### Building 12- Five Plex 2 (339-347)

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 181. Tear off, haul and dispose of comp. shingles - 3 tab | 55.38 SQ | 60.06 | 0.00 | 665.22 | 3,991.34 | (0.00) | 3,991.34 |
| 182. Laminated - comp. shingle rfg. - w/out felt | 64.00 SQ | 250.55 | 445.79 | 3,296.20 | 19,777.19 | (3,714.88) | 16,062.31 |
| 183. R&R Hip / Ridge cap - Standard profile - composition shingles | 173.00 LF | 8.71 | 24.91 | 306.34 | 1,838.08 | (207.60) | 1,630.48 |
| 184. R&R Continuous ridge vent - shingle-over style | 173.00 LF | 10.16 | 34.88 | 358.50 | 2,151.06 | (249.12) | 1,901.94 |
| 185. Roofing felt - 30 lb. | 55.40 SQ | 40.39 | 40.42 | 455.60 | 2,733.63 | (505.25) | 2,228.38 |
| 186. Asphalt starter - peel and stick | 477.00 LF | 2.13 | 16.89 | 206.58 | 1,239.48 | (211.07) | 1,028.41 |
| 187. R&R Drip edge | 904.00 LF | 3.28 | 62.92 | 605.62 | 3,633.66 | (449.42) | 3,184.24 |
| 188. Step flashing | 338.00 LF | 10.60 | 32.85 | 723.14 | 4,338.79 | (234.67) | 4,104.12 |

**Accurate Adjusting & Appraisals PC**

Accurate Adjusting & Appraisals PC
PO BOX 552
Westcliffe, CO 81252
678-943-3169

**CONTINUED - Building 12- Five Plex 2 (339-347)**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 189.  R&R Flashing - L flashing - galvanized | 179.00 LF | 5.66 | 23.74 | 207.38 | 1,244.26 | (169.54) | 1,074.72 |
| 190.  Remove Additional charge for high roof (2 stories or greater) | 55.40 SQ | 5.50 | 0.00 | 60.94 | 365.64 | (0.00) | 365.64 |
| 191.  Additional charge for high roof (2 stories or greater) | 55.40 SQ | 21.97 | 0.00 | 243.42 | 1,460.56 | (0.00) | 1,460.56 |
| 192.  Remove Additional charge for steep roof - 7/12 to 9/12 slope | 6.04 SQ | 14.57 | 0.00 | 17.60 | 105.60 | (0.00) | 105.60 |
| 193.  Additional charge for steep roof - 7/12 to 9/12 slope | 6.04 SQ | 49.73 | 0.00 | 60.08 | 360.45 | (0.00) | 360.45 |
| 194.  Remove Additional charge for steep roof - 10/12 - 12/12 slope | 0.10 SQ | 22.90 | 0.00 | 0.46 | 2.75 | (0.00) | 2.75 |
| 195.  Additional charge for steep roof - 10/12 - 12/12 slope | 0.10 SQ | 78.16 | 0.00 | 1.56 | 9.38 | (0.00) | 9.38 |
| Totals:  Building 12- Five Plex 2 (339-347) | | | 682.40 | 7,208.64 | 43,251.87 | 5,741.55 | 37,510.32 |

**Building 13- Four Plex (329-335)A**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 196.  Tear off, haul and dispose of comp. shingles - 3 tab | 44.30 SQ | 60.06 | 0.00 | 532.14 | 3,192.80 | (0.00) | 3,192.80 |
| 197.  Laminated - comp. shingle rfg. - w/out felt | 51.00 SQ | 250.55 | 355.24 | 2,626.66 | 15,759.95 | (2,960.30) | 12,799.65 |
| 198.  R&R Hip / Ridge cap - Standard profile - composition shingles | 136.00 LF | 8.71 | 19.58 | 240.82 | 1,444.96 | (163.20) | 1,281.76 |
| 199.  R&R Continuous ridge vent - shingle-over style | 136.00 LF | 10.16 | 27.42 | 281.84 | 1,691.02 | (195.84) | 1,495.18 |
| 200.  Roofing felt - 30 lb. | 44.30 SQ | 40.39 | 32.32 | 364.32 | 2,185.92 | (404.02) | 1,781.90 |
| 201.  Asphalt starter - peel and stick | 401.00 LF | 2.13 | 14.20 | 173.66 | 1,041.99 | (177.44) | 864.55 |
| 202.  R&R Drip edge | 753.00 LF | 3.28 | 52.41 | 504.44 | 3,026.69 | (374.35) | 2,652.34 |
| 203.  Step flashing | 276.00 LF | 10.60 | 26.83 | 590.48 | 3,542.91 | (191.62) | 3,351.29 |
| 204.  R&R Flashing - L flashing - galvanized | 166.00 LF | 5.66 | 22.01 | 192.32 | 1,153.89 | (157.23) | 996.66 |
| 205.  Remove Additional charge for high roof (2 stories or greater) | 44.30 SQ | 5.50 | 0.00 | 48.74 | 292.39 | (0.00) | 292.39 |
| 206.  Additional charge for high roof (2 stories or greater) | 44.30 SQ | 21.97 | 0.00 | 194.66 | 1,167.93 | (0.00) | 1,167.93 |
| 207.  Remove Additional charge for steep roof - 7/12 to 9/12 slope | 4.68 SQ | 14.57 | 0.00 | 13.64 | 81.83 | (0.00) | 81.83 |
| 208.  Additional charge for steep roof - 7/12 to 9/12 slope | 4.68 SQ | 49.73 | 0.00 | 46.54 | 279.28 | (0.00) | 279.28 |

## Accurate Adjusting & Appraisals PC

Accurate Adjusting & Appraisals PC
PO BOX 552
Westcliffe, CO 81252
678-943-3169

### CONTINUED - Building 13- Four Plex (329-335)A

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 209.  Remove Additional charge for steep roof - 10/12 - 12/12 slope | 0.57 SQ | 22.90 | 0.00 | 2.62 | 15.67 | (0.00) | 15.67 |
| 210.  Additional charge for steep roof - 10/12 - 12/12 slope | 0.57 SQ | 78.16 | 0.00 | 8.92 | 53.47 | (0.00) | 53.47 |
| 211.  R&R Gutter - aluminum - up to 5"* | 44.00 LF | 9.69 | 11.85 | 87.64 | 525.85 | (0.00) | 525.85 |
| 212.  R&R Overhead door & hardware - 8' x 7' | 2.00 EA | 1,150.67 | 94.57 | 479.18 | 2,875.09 | (0.00) | 2,875.09 |
| 213.  R&R Overhead door & hardware - 16' x 8' | 2.00 EA | 2,203.73 | 206.95 | 922.90 | 5,537.31 | (0.00) | 5,537.31 |
| 214.  R&R Downspout - aluminum - up to 5"* | 40.00 LF | 9.69 | 10.78 | 79.68 | 478.06 | (0.00) | 478.06 |
| 215.  Prime & paint downspout* | 40.00 LF | 1.68 | 0.62 | 13.56 | 81.38 | (0.00) | 81.38 |
| Totals:  Building 13- Four Plex (329-335)A | | | 874.78 | 7,404.76 | 44,428.39 | 4,624.00 | 39,804.39 |

### Building 14-Six Plex (#315-325)

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 216.  Tear off, haul and dispose of comp. shingles - 3 tab | 60.85 SQ | 60.06 | 0.00 | 730.94 | 4,385.59 | (0.00) | 4,385.59 |
| 217.  Laminated - comp. shingle rfg. - w/out felt | 70.00 SQ | 250.55 | 487.58 | 3,605.22 | 21,631.30 | (4,063.15) | 17,568.15 |
| 218.  R&R Hip / Ridge cap - Standard profile - composition shingles | 953.00 LF | 8.71 | 137.23 | 1,687.56 | 10,125.42 | (1,143.60) | 8,981.82 |
| 219.  R&R Continuous ridge vent - shingle-over style | 953.00 LF | 10.16 | 192.12 | 1,974.90 | 11,849.50 | (1,372.32) | 10,477.18 |
| 220.  Roofing felt - 30 lb. | 60.85 SQ | 40.39 | 44.40 | 500.42 | 3,002.55 | (554.95) | 2,447.60 |
| 221.  Asphalt starter - peel and stick | 485.00 LF | 2.13 | 17.17 | 210.06 | 1,260.28 | (214.61) | 1,045.67 |
| 222.  R&R Drip edge | 953.00 LF | 3.28 | 66.33 | 638.42 | 3,830.59 | (473.78) | 3,356.81 |
| 223.  Step flashing | 358.00 LF | 10.60 | 34.80 | 765.92 | 4,595.52 | (248.55) | 4,346.97 |
| 224.  R&R Flashing - L flashing - galvanized | 154.00 LF | 5.66 | 20.42 | 178.40 | 1,070.46 | (145.86) | 924.60 |
| 225.  Remove Additional charge for high roof (2 stories or greater) | 60.85 SQ | 5.50 | 0.00 | 66.94 | 401.62 | (0.00) | 401.62 |
| 226.  Additional charge for high roof (2 stories or greater) | 60.85 SQ | 21.97 | 0.00 | 267.38 | 1,604.25 | (0.00) | 1,604.25 |
| 227.  Remove Additional charge for steep roof - 7/12 to 9/12 slope | 7.94 SQ | 14.57 | 0.00 | 23.14 | 138.83 | (0.00) | 138.83 |
| 228.  Additional charge for steep roof - 7/12 to 9/12 slope | 7.94 SQ | 49.73 | 0.00 | 78.98 | 473.84 | (0.00) | 473.84 |

## Accurate Adjusting & Appraisals PC

Accurate Adjusting & Appraisals PC
PO BOX 552
Westcliffe, CO 81252
678-943-3169

### CONTINUED - Building 14-Six Plex (#315-325)

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| Totals:  Building 14-Six Plex (#315-325) | | | 1,000.05 | 10,728.28 | 64,369.75 | 8,216.82 | 56,152.93 |

### Building 15- Six Plex (301-311)

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 229.  Tear off, haul and dispose of comp. shingles - 3 tab | 60.85 SQ | 60.06 | 0.00 | 730.94 | 4,385.59 | (0.00) | 4,385.59 |
| 230.  Laminated - comp. shingle rfg. - w/out felt | 70.00 SQ | 250.55 | 487.58 | 3,605.22 | 21,631.30 | (4,063.15) | 17,568.15 |
| 231.  Roofing felt - 30 lb. | 60.85 SQ | 40.39 | 44.40 | 500.42 | 3,002.55 | (554.95) | 2,447.60 |
| 232.  Asphalt starter - peel and stick | 485.00 LF | 2.13 | 17.17 | 210.06 | 1,260.28 | (214.61) | 1,045.67 |
| 233.  R&R Hip / Ridge cap - Standard profile - composition shingles | 953.00 LF | 8.71 | 137.23 | 1,687.56 | 10,125.42 | (1,143.60) | 8,981.82 |
| 234.  R&R Continuous ridge vent - shingle-over style | 953.00 LF | 10.16 | 192.12 | 1,974.90 | 11,849.50 | (1,372.32) | 10,477.18 |
| 235.  R&R Drip edge | 953.00 LF | 3.28 | 66.33 | 638.42 | 3,830.59 | (473.78) | 3,356.81 |
| 236.  Step flashing | 358.00 LF | 10.60 | 34.80 | 765.92 | 4,595.52 | (248.55) | 4,346.97 |
| 237.  R&R Flashing - L flashing - galvanized | 154.00 LF | 5.66 | 20.42 | 178.40 | 1,070.46 | (145.86) | 924.60 |
| 238.  Remove Additional charge for high roof (2 stories or greater) | 60.85 SQ | 5.50 | 0.00 | 66.94 | 401.62 | (0.00) | 401.62 |
| 239.  Additional charge for high roof (2 stories or greater) | 60.85 SQ | 21.97 | 0.00 | 267.38 | 1,604.25 | (0.00) | 1,604.25 |
| 240.  Remove Additional charge for steep roof - 7/12 to 9/12 slope | 7.94 SQ | 14.57 | 0.00 | 23.14 | 138.83 | (0.00) | 138.83 |
| 241.  Additional charge for steep roof - 7/12 to 9/12 slope | 7.94 SQ | 49.73 | 0.00 | 78.98 | 473.84 | (0.00) | 473.84 |
| 242.  R&R Overhead door & hardware - 16' x 7' | 2.00 EA | 1,671.24 | 149.47 | 698.40 | 4,190.35 | (0.00) | 4,190.35 |
| 243.  R&R Overhead door & hardware - 8' x 7' | 6.00 EA | 1,150.67 | 283.71 | 1,437.54 | 8,625.27 | (0.00) | 8,625.27 |
| 244.  R&R Downspout - aluminum - up to 5"* | 100.00 LF | 9.69 | 26.94 | 199.18 | 1,195.12 | (0.00) | 1,195.12 |
| 245.  Prime & paint gutter / downspout | 100.00 LF | 1.68 | 1.56 | 33.92 | 203.48 | (0.00) | 203.48 |
| 246.  R&R Gutters - aluminum - up to 5"* | 195.00 LF | 9.69 | 52.53 | 388.42 | 2,330.50 | (0.00) | 2,330.50 |
| 247.  R&R Central air conditioning system - 2 ton - up to 13 SEER | 4.00 EA | 2,798.35 | 407.49 | 2,320.18 | 13,921.07 | (0.00) | 13,921.07 |
| Totals:  Building 15- Six Plex (301-311) | | | 1,921.75 | 15,805.92 | 94,835.54 | 8,216.82 | 86,618.72 |

## Accurate Adjusting & Appraisals PC

Accurate Adjusting & Appraisals PC
PO BOX 552
Westcliffe, CO 81252
678-943-3169

### Building 16- Eight Plex (#2326-2338)

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 248.  Tear off, haul and dispose of comp. shingles - 3 tab | 116.30 SQ | 60.06 | 0.00 | 1,397.00 | 8,381.98 | (0.00) | 8,381.98 |
| 249.  Laminated - comp. shingle rfg. - w/out felt | 134.00 SQ | 250.55 | 933.36 | 6,901.42 | 41,408.48 | (7,778.03) | 33,630.45 |
| 250.  R&R Hip / Ridge cap - Standard profile - composition shingles | 133.70 LF | 8.71 | 19.25 | 236.78 | 1,420.56 | (160.44) | 1,260.12 |
| 251.  R&R Continuous ridge vent - shingle-over style | 335.00 LF | 10.16 | 67.54 | 694.22 | 4,165.36 | (482.40) | 3,682.96 |
| 252.  Roofing felt - 30 lb. | 116.30 SQ | 40.39 | 84.85 | 956.46 | 5,738.67 | (1,060.66) | 4,678.01 |
| 253.  Asphalt starter - peel and stick | 754.00 LF | 2.13 | 26.69 | 326.54 | 1,959.25 | (333.65) | 1,625.60 |
| 254.  R&R Drip edge | 1,536.00 LF | 3.28 | 106.91 | 1,028.98 | 6,173.97 | (763.61) | 5,410.36 |
| 255.  Step flashing | 556.00 LF | 10.60 | 54.04 | 1,189.52 | 7,137.16 | (386.02) | 6,751.14 |
| 256.  R&R Flashing - L flashing - galvanized | 441.00 LF | 5.66 | 58.48 | 510.92 | 3,065.46 | (417.69) | 2,647.77 |
| 257.  Remove Additional charge for high roof (2 stories or greater) | 116.30 SQ | 5.50 | 0.00 | 127.94 | 767.59 | (0.00) | 767.59 |
| 258.  Additional charge for high roof (2 stories or greater) | 116.30 SQ | 21.97 | 0.00 | 511.02 | 3,066.13 | (0.00) | 3,066.13 |
| 259.  Remove Additional charge for steep roof - 7/12 to 9/12 slope | 101.21 SQ | 14.57 | 0.00 | 294.92 | 1,769.55 | (0.00) | 1,769.55 |
| 260.  Additional charge for steep roof - 7/12 to 9/12 slope | 101.21 SQ | 49.73 | 0.00 | 1,006.64 | 6,039.81 | (0.00) | 6,039.81 |
| **Totals:  Building 16- Eight Plex (#2326-2338)** | | | **1,351.12** | **15,182.36** | **91,093.97** | **11,382.50** | **79,711.47** |

### Building 17- Four Plex (#2429-2435)

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 261.  Tear off, haul and dispose of comp. shingles - 3 tab | 58.36 SQ | 60.06 | 0.00 | 701.02 | 4,206.12 | (0.00) | 4,206.12 |
| 262.  Laminated - comp. shingle rfg. - w/out felt | 67.33 SQ | 250.55 | 468.98 | 3,467.70 | 20,806.21 | (3,908.17) | 16,898.04 |
| 263.  R&R Hip / Ridge cap - Standard profile - composition shingles | 168.00 LF | 8.71 | 24.19 | 297.50 | 1,784.97 | (201.60) | 1,583.37 |
| 264.  R&R Continuous ridge vent - shingle-over style | 168.00 LF | 10.16 | 33.87 | 348.14 | 2,088.89 | (241.92) | 1,846.97 |
| 265.  Roofing felt - 30 lb. | 58.40 SQ | 40.39 | 42.61 | 480.28 | 2,881.67 | (532.61) | 2,349.06 |
| 266.  Asphalt starter - peel and stick | 412.00 LF | 2.13 | 14.58 | 178.44 | 1,070.58 | (182.31) | 888.27 |
| 267.  R&R Drip edge | 828.00 LF | 3.28 | 57.63 | 554.68 | 3,328.15 | (411.63) | 2,916.52 |
| 268.  Step flashing | 239.00 LF | 10.60 | 23.23 | 511.32 | 3,067.95 | (165.93) | 2,902.02 |
| 269.  R&R Flashing - L flashing - galvanized | 311.00 LF | 5.66 | 41.24 | 360.30 | 2,161.80 | (294.56) | 1,867.24 |
| 270.  Remove Additional charge for high roof (2 stories or greater) | 58.40 SQ | 5.50 | 0.00 | 64.24 | 385.44 | (0.00) | 385.44 |

## Accurate Adjusting & Appraisals PC

Accurate Adjusting & Appraisals PC
PO BOX 552
Westcliffe, CO 81252
678-943-3169

### CONTINUED - Building 17- Four Plex (#2429-2435)

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 271.  Additional charge for high roof (2 stories or greater) | 58.40 SQ | 21.97 | 0.00 | 256.62 | 1,539.67 | (0.00) | 1,539.67 |
| 272.  Remove Additional charge for steep roof - 7/12 to 9/12 slope | 38.98 SQ | 14.57 | 0.00 | 113.58 | 681.52 | (0.00) | 681.52 |
| 273.  Additional charge for steep roof - 7/12 to 9/12 slope | 38.98 SQ | 49.73 | 0.00 | 387.70 | 2,326.18 | (0.00) | 2,326.18 |
| 274.  Remove Additional charge for steep roof - 10/12 - 12/12 slope | 11.98 SQ | 22.90 | 0.00 | 54.86 | 329.20 | (0.00) | 329.20 |
| 275.  Additional charge for steep roof - 10/12 - 12/12 slope | 11.98 SQ | 78.16 | 0.00 | 187.28 | 1,123.64 | (0.00) | 1,123.64 |
| **Totals:  Building 17- Four Plex (#2429-2435)** | | | **706.33** | **7,963.66** | **47,781.99** | **5,938.73** | **41,843.26** |

### Building 18- Four Plex (2419-2425)

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 276.  Tear off, haul and dispose of comp. shingles - 3 tab | 58.36 SQ | 60.06 | 0.00 | 701.02 | 4,206.12 | (0.00) | 4,206.12 |
| 277.  Laminated - comp. shingle rfg. - w/out felt | 67.33 SQ | 250.55 | 468.98 | 3,467.70 | 20,806.21 | (3,908.17) | 16,898.04 |
| 278.  R&R Continuous ridge vent - shingle-over style | 168.00 LF | 10.16 | 33.87 | 348.14 | 2,088.89 | (241.92) | 1,846.97 |
| 279.  R&R Hip / Ridge cap - Standard profile - composition shingles | 168.00 LF | 8.71 | 24.19 | 297.50 | 1,784.97 | (201.60) | 1,583.37 |
| 280.  Roofing felt - 30 lb. | 58.40 SQ | 40.39 | 42.61 | 480.28 | 2,881.67 | (532.61) | 2,349.06 |
| 281.  Asphalt starter - peel and stick | 412.00 LF | 2.13 | 14.58 | 178.44 | 1,070.58 | (182.31) | 888.27 |
| 282.  R&R Drip edge | 828.00 LF | 3.28 | 57.63 | 554.68 | 3,328.15 | (411.63) | 2,916.52 |
| 283.  Step flashing | 239.00 LF | 10.60 | 23.23 | 511.32 | 3,067.95 | (165.93) | 2,902.02 |
| 284.  R&R Flashing - L flashing - galvanized | 311.00 LF | 5.66 | 41.24 | 360.30 | 2,161.80 | (294.56) | 1,867.24 |
| 285.  Remove Additional charge for high roof (2 stories or greater) | 58.40 SQ | 5.50 | 0.00 | 64.24 | 385.44 | (0.00) | 385.44 |
| 286.  Additional charge for high roof (2 stories or greater) | 58.40 SQ | 21.97 | 0.00 | 256.62 | 1,539.67 | (0.00) | 1,539.67 |
| 287.  Remove Additional charge for steep roof - 7/12 to 9/12 slope | 38.98 SQ | 14.57 | 0.00 | 113.58 | 681.52 | (0.00) | 681.52 |
| 288.  Additional charge for steep roof - 7/12 to 9/12 slope | 38.98 SQ | 49.73 | 0.00 | 387.70 | 2,326.18 | (0.00) | 2,326.18 |
| 289.  Remove Additional charge for steep roof - 10/12 - 12/12 slope | 11.98 SQ | 22.90 | 0.00 | 54.86 | 329.20 | (0.00) | 329.20 |
| 290.  Additional charge for steep roof - 10/12 - 12/12 slope | 11.98 SQ | 78.16 | 0.00 | 187.28 | 1,123.64 | (0.00) | 1,123.64 |

## Accurate Adjusting & Appraisals PC

Accurate Adjusting & Appraisals PC
PO BOX 552
Westcliffe, CO 81252
678-943-3169

**CONTINUED - Building 18- Four Plex (2419-2425)**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| Totals:  Building 18- Four Plex (2419-2425) | | | 706.33 | 7,963.66 | 47,781.99 | 5,938.73 | 41,843.26 |

**Building 19- Eight Plex (#2401-2415)**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 291.  Tear off, haul and dispose of comp. shingles - 3 tab | 110.95 SQ | 60.06 | 0.00 | 1,332.74 | 7,996.40 | (0.00) | 7,996.40 |
| 292.  Laminated - comp. shingle rfg. - w/out felt | 127.67 SQ | 250.55 | 889.27 | 6,575.40 | 39,452.39 | (7,410.61) | 32,041.78 |
| 293.  R&R Hip / Ridge cap - Standard profile - composition shingles | 346.00 LF | 8.71 | 49.82 | 612.68 | 3,676.16 | (415.20) | 3,260.96 |
| 294.  R&R Continuous ridge vent - shingle-over style | 346.00 LF | 10.16 | 69.75 | 717.04 | 4,302.15 | (498.24) | 3,803.91 |
| 295.  Roofing felt - 30 lb. | 110.95 SQ | 40.39 | 80.95 | 912.46 | 5,474.68 | (1,011.86) | 4,462.82 |
| 296.  Asphalt starter - peel and stick | 753.00 LF | 2.13 | 26.66 | 326.12 | 1,956.67 | (333.20) | 1,623.47 |
| 297.  R&R Drip edge | 1,621.00 LF | 3.28 | 112.82 | 1,085.92 | 6,515.62 | (805.87) | 5,709.75 |
| 298.  Step flashing | 644.00 LF | 10.60 | 62.60 | 1,377.80 | 8,266.80 | (447.12) | 7,819.68 |
| 299.  R&R Flashing - L flashing - galvanized | 438.00 LF | 5.66 | 58.08 | 507.44 | 3,044.60 | (414.85) | 2,629.75 |
| 300.  Remove Additional charge for high roof (2 stories or greater) | 110.00 SQ | 5.50 | 0.00 | 121.00 | 726.00 | (0.00) | 726.00 |
| 301.  Additional charge for high roof (2 stories or greater) | 110.00 SQ | 21.97 | 0.00 | 483.34 | 2,900.04 | (0.00) | 2,900.04 |
| 302.  Remove Additional charge for steep roof - 7/12 to 9/12 slope | 22.79 SQ | 14.57 | 0.00 | 66.42 | 398.47 | (0.00) | 398.47 |
| 303.  Additional charge for steep roof - 7/12 to 9/12 slope | 22.79 SQ | 49.73 | 0.00 | 226.68 | 1,360.03 | (0.00) | 1,360.03 |
| Totals:  Building 19- Eight Plex (#2401-2415) | | | 1,349.95 | 14,345.04 | 86,070.01 | 11,336.95 | 74,733.06 |

**Building 20- Eight Plex (2402-2416)**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 304.  Tear off, haul and dispose of comp. shingles - 3 tab | 110.95 SQ | 60.06 | 0.00 | 1,332.74 | 7,996.40 | (0.00) | 7,996.40 |
| 305.  Laminated - comp. shingle rfg. - w/out felt | 127.67 SQ | 250.55 | 889.27 | 6,575.40 | 39,452.39 | (7,410.61) | 32,041.78 |

## Accurate Adjusting & Appraisals PC

Accurate Adjusting & Appraisals PC
PO BOX 552
Westcliffe, CO 81252
678-943-3169

### CONTINUED - Building 20- Eight Plex (2402-2416)

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 306.  R&R Continuous ridge vent - shingle-over style | 346.00 LF | 10.16 | 69.75 | 717.04 | 4,302.15 | (498.24) | 3,803.91 |
| 307.  R&R Hip / Ridge cap - Standard profile - composition shingles | 346.00 LF | 8.71 | 49.82 | 612.68 | 3,676.16 | (415.20) | 3,260.96 |
| 308.  Roofing felt - 30 lb. | 110.95 SQ | 40.39 | 80.95 | 912.46 | 5,474.68 | (1,011.86) | 4,462.82 |
| 309.  Asphalt starter - peel and stick | 753.00 LF | 2.13 | 26.66 | 326.12 | 1,956.67 | (333.20) | 1,623.47 |
| 310.  R&R Drip edge | 1,621.00 LF | 3.28 | 112.82 | 1,085.92 | 6,515.62 | (805.87) | 5,709.75 |
| 311.  Step flashing | 644.00 LF | 10.60 | 62.60 | 1,377.80 | 8,266.80 | (447.12) | 7,819.68 |
| 312.  R&R Flashing - L flashing - galvanized | 438.00 LF | 5.66 | 58.08 | 507.44 | 3,044.60 | (414.85) | 2,629.75 |
| 313.  Remove Additional charge for high roof (2 stories or greater) | 110.00 SQ | 5.50 | 0.00 | 121.00 | 726.00 | (0.00) | 726.00 |
| 314.  Additional charge for high roof (2 stories or greater) | 110.00 SQ | 21.97 | 0.00 | 483.34 | 2,900.04 | (0.00) | 2,900.04 |
| 315.  Remove Additional charge for steep roof - 7/12 to 9/12 slope | 22.79 SQ | 14.57 | 0.00 | 66.42 | 398.47 | (0.00) | 398.47 |
| 316.  Additional charge for steep roof - 7/12 to 9/12 slope | 22.79 SQ | 49.73 | 0.00 | 226.68 | 1,360.03 | (0.00) | 1,360.03 |
| **Totals:  Building 20- Eight Plex (2402-2416)** | | | **1,349.95** | **14,345.04** | **86,070.01** | **11,336.95** | **74,733.06** |

### Building 21 Six Plex (2391-2397 Block)

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 317.  Tear off, haul and dispose of comp. shingles - 3 tab | 88.80 SQ | 60.06 | 0.00 | 1,066.66 | 6,399.99 | (0.00) | 6,399.99 |
| 318.  Laminated - comp. shingle rfg. - w/out felt | 102.33 SQ | 250.55 | 712.77 | 5,270.32 | 31,621.87 | (5,939.74) | 25,682.13 |
| 319.  R&R Hip / Ridge cap - Standard profile - composition shingles | 272.00 LF | 8.71 | 39.17 | 481.66 | 2,889.95 | (326.40) | 2,563.55 |
| 320.  R&R Continuous ridge vent - shingle-over style | 272.00 LF | 10.16 | 54.84 | 563.68 | 3,382.04 | (391.68) | 2,990.36 |
| 321.  Roofing felt - 30 lb. | 88.80 SQ | 40.39 | 64.79 | 730.28 | 4,381.70 | (809.86) | 3,571.84 |
| 322.  Asphalt starter - peel and stick | 620.00 LF | 2.13 | 21.95 | 268.52 | 1,611.07 | (274.35) | 1,336.72 |
| 323.  R&R Drip edge | 26.33 LF | 3.28 | 1.83 | 17.64 | 105.83 | (13.09) | 92.74 |
| 324.  Step flashing | 502.00 LF | 10.60 | 48.79 | 1,074.00 | 6,443.99 | (348.53) | 6,095.46 |
| 325.  R&R Flashing - L flashing - galvanized | 368.00 LF | 5.66 | 48.80 | 426.34 | 2,558.02 | (348.55) | 2,209.47 |
| 326.  Remove Additional charge for high roof (2 stories or greater) | 88.80 SQ | 5.50 | 0.00 | 97.68 | 586.08 | (0.00) | 586.08 |

## Accurate Adjusting & Appraisals PC

Accurate Adjusting & Appraisals PC
PO BOX 552
Westcliffe, CO 81252
678-943-3169

### CONTINUED - Building 21 Six Plex (2391-2397 Block)

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 327.  Additional charge for high roof (2 stories or greater) | 88.80 SQ | 21.97 | 0.00 | 390.18 | 2,341.12 | (0.00) | 2,341.12 |
| 328.  Remove Additional charge for steep roof - 7/12 to 9/12 slope | 57.93 SQ | 14.57 | 0.00 | 168.80 | 1,012.84 | (0.00) | 1,012.84 |
| 329.  Additional charge for steep roof - 7/12 to 9/12 slope | 57.93 SQ | 49.73 | 0.00 | 576.18 | 3,457.04 | (0.00) | 3,457.04 |
| 330.  Remove Additional charge for steep roof - 10/12 - 12/12 slope | 22.45 SQ | 22.90 | 0.00 | 102.82 | 616.93 | (0.00) | 616.93 |
| 331.  Additional charge for steep roof - 10/12 - 12/12 slope | 22.45 SQ | 78.16 | 0.00 | 350.94 | 2,105.63 | (0.00) | 2,105.63 |

| | | | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| **Totals:  Building 21 Six Plex (2391-2397 Block)** | | | **992.94** | **11,585.70** | **69,514.10** | **8,452.20** | **61,061.90** |

### Building  22- Six Plex (2373 to 2383)

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 332.  Tear off, haul and dispose of comp. shingles - 3 tab | 88.80 SQ | 60.06 | 0.00 | 1,066.66 | 6,399.99 | (0.00) | 6,399.99 |
| 333.  Laminated - comp. shingle rfg. - w/out felt | 102.33 SQ | 250.55 | 712.77 | 5,270.32 | 31,621.87 | (5,939.74) | 25,682.13 |
| 334.  R&R Hip / Ridge cap - Standard profile - composition shingles | 272.00 LF | 8.71 | 39.17 | 481.66 | 2,889.95 | (326.40) | 2,563.55 |
| 335.  R&R Continuous ridge vent - shingle-over style | 272.00 LF | 10.16 | 54.84 | 563.68 | 3,382.04 | (391.68) | 2,990.36 |
| 336.  Roofing felt - 30 lb. | 88.80 SQ | 40.39 | 64.79 | 730.28 | 4,381.70 | (809.86) | 3,571.84 |
| 337.  Asphalt starter - peel and stick | 620.00 LF | 2.13 | 21.95 | 268.52 | 1,611.07 | (0.00) | 1,611.07 |
| 338.  R&R Drip edge | 26.33 LF | 3.28 | 1.83 | 17.64 | 105.83 | (13.09) | 92.74 |
| 339.  Step flashing | 502.00 LF | 10.60 | 48.79 | 1,074.00 | 6,443.99 | (348.53) | 6,095.46 |
| 340.  R&R Flashing - L flashing - galvanized | 368.00 LF | 5.66 | 48.80 | 426.34 | 2,558.02 | (348.55) | 2,209.47 |
| 341.  Remove Additional charge for high roof (2 stories or greater) | 88.80 SQ | 5.50 | 0.00 | 97.68 | 586.08 | (0.00) | 586.08 |
| 342.  Additional charge for high roof (2 stories or greater) | 88.80 SQ | 21.97 | 0.00 | 390.18 | 2,341.12 | (0.00) | 2,341.12 |
| 343.  Remove Additional charge for steep roof - 7/12 to 9/12 slope | 57.93 SQ | 14.57 | 0.00 | 168.80 | 1,012.84 | (0.00) | 1,012.84 |
| 344.  Additional charge for steep roof - 7/12 to 9/12 slope | 57.93 SQ | 49.73 | 0.00 | 576.18 | 3,457.04 | (0.00) | 3,457.04 |
| 345  Remove Additional charge for steep roof - 10/12 - 12/12 slope | 22.45 SQ | 22.90 | 0.00 | 102.82 | 616.93 | (0.00) | 616.93 |
| 346.  Additional charge for steep roof - 10/12 - 12/12 slope | 22.45 SQ | 78.16 | 0.00 | 350.94 | 2,105.63 | (0.00) | 2,105.63 |

## Accurate Adjusting & Appraisals PC

Accurate Adjusting & Appraisals PC
PO BOX 552
Westcliffe, CO 81252
678-943-3169

### CONTINUED - Building  22- Six Plex (2373 to 2383)

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 347.  R&R Window screen, 10 - 16 SF | 14.00 EA | 54.22 | 37.34 | 159.28 | 955.70 | (0.00) | 955.70 |
| 348.  R&R Overhead door & hardware - 8' x 7' | 9.00 EA | 1,150.67 | 425.56 | 2,156.32 | 12,937.91 | (0.00) | 12,937.91 |
| 349.  R&R Overhead (garage) door opener - Standard grade | 9.00 EA | 388.89 | 78.30 | 715.66 | 4,293.97 | (0.00) | 4,293.97 |
| 350. R&R Gutter / downspout - aluminum - up to 5" | 80.00 LF | 9.69 | 21.55 | 159.36 | 956.11 | (0.00) | 956.11 |
| 351.  Comb and straighten a/c condenser fins - with trip charge | 4.00 EA | 189.92 | 0.00 | 151.94 | 911.62 | (0.00) | 911.62 |
| 352.  Windows - Vinyl (Bid Item) | 1.00 EA | 1,100.00 | 0.00 | 220.00 | 1,320.00 | (0.00) | 1,320.00 |
| **Totals:  Building  22- Six Plex (2373 to 2383)** | | | **1,555.69** | **15,148.26** | **90,889.41** | **8,177.85** | **82,711.56** |

### Building 23 Eight Plex (#2346-2360)

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 353.  Tear off, haul and dispose of comp. shingles - 3 tab | 116.30 SQ | 60.06 | 0.00 | 1,397.00 | 8,381.98 | (0.00) | 8,381.98 |
| 354.  Laminated - comp. shingle rfg. - w/out felt | 134.00 SQ | 250.55 | 933.36 | 6,901.42 | 41,408.48 | (7,778.03) | 33,630.45 |
| 355.  R&R Hip / Ridge cap - Standard profile - composition shingles | 335.00 LF | 8.71 | 48.24 | 593.22 | 3,559.31 | (402.00) | 3,157.31 |
| 356.  R&R Continuous ridge vent - shingle-over style | 335.00 LF | 10.16 | 67.54 | 694.22 | 4,165.36 | (482.40) | 3,682.96 |
| 357.  Roofing felt - 30 lb. | 116.30 SQ | 40.39 | 84.85 | 956.46 | 5,738.67 | (1,060.66) | 4,678.01 |
| 358.  Asphalt starter - peel and stick | 754.00 LF | 2.13 | 26.69 | 326.54 | 1,959.25 | (333.65) | 1,625.60 |
| 359.  R&R Drip edge | 1,536.00 LF | 3.28 | 106.91 | 1,028.98 | 6,173.97 | (763.61) | 5,410.36 |
| 360.  Step flashing | 556.00 LF | 10.60 | 54.04 | 1,189.52 | 7,137.16 | (386.02) | 6,751.14 |
| 361.  R&R Flashing - L flashing - galvanized | 441.00 LF | 5.66 | 58.48 | 510.92 | 3,065.46 | (417.69) | 2,647.77 |
| 362.  Remove Additional charge for high roof (2 stories or greater) | 116.30 SQ | 5.50 | 0.00 | 127.94 | 767.59 | (0.00) | 767.59 |
| 363.  Additional charge for high roof (2 stories or greater) | 116.30 SQ | 21.97 | 0.00 | 511.02 | 3,066.13 | (0.00) | 3,066.13 |
| 364.  Remove Additional charge for steep roof - 7/12 to 9/12 slope | 101.21 SQ | 14.57 | 0.00 | 294.92 | 1,769.55 | (0.00) | 1,769.55 |
| 365.  Additional charge for steep roof - 7/12 to 9/12 slope | 101.21 SQ | 49.73 | 0.00 | 1,006.64 | 6,039.81 | (0.00) | 6,039.81 |
| **Totals:  Building 23 Eight Plex (#2346-2360)** | | | **1,380.11** | **15,538.80** | **93,232.72** | **11,624.06** | **81,608.66** |

## Accurate Adjusting & Appraisals PC

Accurate Adjusting & Appraisals PC
PO BOX 552
Westcliffe, CO 81252
678-943-3169

### Building 24- Eight Plex (#2337-2351)

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 366.  Tear off, haul and dispose of comp. shingles - 3 tab | 110.95 SQ | 60.06 | 0.00 | 1,332.74 | 7,996.40 | (0.00) | 7,996.40 |
| 367.  Laminated - comp. shingle rfg. - w/out felt | 127.67 SQ | 250.55 | 889.27 | 6,575.40 | 39,452.39 | (7,410.61) | 32,041.78 |
| 368.  R&R Hip / Ridge cap - Standard profile - composition shingles | 346.00 LF | 8.71 | 49.82 | 612.68 | 3,676.16 | (415.20) | 3,260.96 |
| 369.  R&R Continuous ridge vent - shingle-over style | 346.00 LF | 10.16 | 69.75 | 717.04 | 4,302.15 | (498.24) | 3,803.91 |
| 370.  Roofing felt - 30 lb. | 110.95 SQ | 40.39 | 80.95 | 912.46 | 5,474.68 | (1,011.86) | 4,462.82 |
| 371.  Asphalt starter - peel and stick | 753.00 LF | 2.13 | 26.66 | 326.12 | 1,956.67 | (333.20) | 1,623.47 |
| 372.  R&R Drip edge | 1,621.00 LF | 3.28 | 112.82 | 1,085.92 | 6,515.62 | (805.87) | 5,709.75 |
| 373.  Step flashing | 644.00 LF | 10.60 | 62.60 | 1,377.80 | 8,266.80 | (447.12) | 7,819.68 |
| 374.  R&R Flashing - L flashing - galvanized | 438.00 LF | 5.66 | 58.08 | 507.44 | 3,044.60 | (414.85) | 2,629.75 |
| 375.  Remove Additional charge for high roof (2 stories or greater) | 110.00 SQ | 5.50 | 0.00 | 121.00 | 726.00 | (0.00) | 726.00 |
| 376.  Additional charge for high roof (2 stories or greater) | 110.00 SQ | 21.97 | 0.00 | 483.34 | 2,900.04 | (0.00) | 2,900.04 |
| 377.  Remove Additional charge for steep roof - 7/12 to 9/12 slope | 22.79 SQ | 14.57 | 0.00 | 66.42 | 398.47 | (0.00) | 398.47 |
| 378.  Additional charge for steep roof - 7/12 to 9/12 slope | 22.79 SQ | 49.73 | 0.00 | 226.68 | 1,360.03 | (0.00) | 1,360.03 |
| **Totals:  Building 24- Eight Plex (#2337-2351)** | | | **1,349.95** | **14,345.04** | **86,070.01** | **11,336.95** | **74,733.06** |

### Building 25- Eight Plex (#2321-2333)

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 379.  Tear off, haul and dispose of comp. shingles - 3 tab | 110.95 SQ | 60.06 | 0.00 | 1,332.74 | 7,996.40 | (0.00) | 7,996.40 |
| 380.  Laminated - comp. shingle rfg. - w/out felt | 127.67 SQ | 250.55 | 889.27 | 6,575.40 | 39,452.39 | (7,410.61) | 32,041.78 |
| 381.  R&R Continuous ridge vent - shingle-over style | 346.00 LF | 10.16 | 69.75 | 717.04 | 4,302.15 | (498.24) | 3,803.91 |
| 382.  R&R Hip / Ridge cap - Standard profile - composition shingles | 346.00 LF | 8.71 | 49.82 | 612.68 | 3,676.16 | (415.20) | 3,260.96 |
| 383.  Roofing felt - 30 lb. | 110.95 SQ | 40.39 | 80.95 | 912.46 | 5,474.68 | (1,011.86) | 4,462.82 |
| 384.  Asphalt starter - peel and stick | 753.00 LF | 2.13 | 26.66 | 326.12 | 1,956.67 | (333.20) | 1,623.47 |
| 385.  R&R Drip edge | 1,621.00 LF | 3.28 | 112.82 | 1,085.92 | 6,515.62 | (805.87) | 5,709.75 |
| 386.  Step flashing | 644.00 LF | 10.60 | 62.60 | 1,377.80 | 8,266.80 | (447.12) | 7,819.68 |
| 387.  R&R Flashing - L flashing - galvanized | 438.00 LF | 5.66 | 58.08 | 507.44 | 3,044.60 | (414.85) | 2,629.75 |
| 388.  Remove Additional charge for high roof (2 stories or greater) | 110.00 SQ | 5.50 | 0.00 | 121.00 | 726.00 | (0.00) | 726.00 |

## Accurate Adjusting & Appraisals PC

Accurate Adjusting & Appraisals PC
PO BOX 552
Westcliffe, CO 81252
678-943-3169

### CONTINUED - Building 25- Eight Plex (#2321-2333)

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 389. Additional charge for high roof (2 stories or greater) | 110.00 SQ | 21.97 | 0.00 | 483.34 | 2,900.04 | (0.00) | 2,900.04 |
| 390. Remove Additional charge for steep roof - 7/12 to 9/12 slope | 22.79 SQ | 14.57 | 0.00 | 66.42 | 398.47 | (0.00) | 398.47 |
| 391. Additional charge for steep roof - 7/12 to 9/12 slope | 22.79 SQ | 49.73 | 0.00 | 226.68 | 1,360.03 | (0.00) | 1,360.03 |
| **Totals: Building 25- Eight Plex (#2321-2333)** | | | 1,349.95 | 14,345.04 | 86,070.01 | 11,336.95 | 74,733.06 |

### 373-408

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 392. R&R Gutter / downspout - aluminum - up to 5" | 450.00 LF | 9.69 | 121.23 | 896.34 | 5,378.07 | (1,212.30) | 4,165.77 |
| 393. Prime & paint gutter / downspout | 450.00 LF | 1.68 | 7.02 | 152.60 | 915.62 | (117.00) | 798.62 |
| 394. R&R Window screen, 17 - 25 SF | 1.00 EA | 65.84 | 3.36 | 13.84 | 83.04 | (0.00) | 83.04 |
| 395. R&R Central air conditioning system - 2 ton - 14-15 SEER | 3.00 EA | 3,077.56 | 355.88 | 1,917.72 | 11,506.28 | (5,931.27) | 5,575.01 |
| 396. R&R Window screen, 26 - 32 SF | 1.00 EA | 94.46 | 5.08 | 19.90 | 119.44 | (42.35) | 77.09 |
| **Totals: 373-408** | | | 492.57 | 3,000.40 | 18,002.45 | 7,302.92 | 10,699.53 |

### 406-420

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 397. R&R Downspout - aluminum - up to 5"* | 240.00 LF | 9.69 | 64.66 | 478.06 | 2,868.32 | (646.56) | 2,221.76 |
| 398. Prime & paint gutter / downspout | 240.00 LF | 1.68 | 3.74 | 81.38 | 488.32 | (62.40) | 425.92 |
| 399. R&R Central air conditioning system - 2 ton - 14-15 SEER | 6.00 EA | 3,077.56 | 711.75 | 3,835.44 | 23,012.55 | (11,862.54) | 11,150.01 |
| **Totals: 406-420** | | | 780.15 | 4,394.88 | 26,369.19 | 12,571.50 | 13,797.69 |

### General Conditions

## Accurate Adjusting & Appraisals PC

Accurate Adjusting & Appraisals PC
PO BOX 552
Westcliffe, CO 81252
678-943-3169

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 400.  PERMITS AND FEES | 1.00 EA | 0.00 | 0.00 | 0.00 | 0.00 | (0.00) | 0.00 |
| 401.  Dumpster load - Approx. 20 yards, 4 tons of debris | 4.00 EA | 650.00 | 0.00 | 520.00 | 3,120.00 | (0.00) | 3,120.00 |
| Required for the residual debris generated during the rebuild. | | | | | | | |
| 402.  Flasher barricade (per day) | 720.00 DA | 0.92 | 0.00 | 132.48 | 794.88 | (0.00) | 794.88 |
| 403.  Barricade and warning device - setup and takedown | 80.00 HR | 61.08 | 0.00 | 977.28 | 5,863.68 | (0.00) | 5,863.68 |
| 404.  Commercial Supervision / Project Management - per hour | 480.00 HR | 77.94 | 0.00 | 7,482.24 | 44,893.44 | (0.00) | 44,893.44 |
| *Also accounts for safety monitor per building to satisfy OSHA requirements. | | | | | | | |
| *Accounts for OSHA requirements for one supervisor to be on the roof and one on the ground. | | | | | | | |
| 1926.502(h)(1)(iii) The safety monitor shall be on the same walking/working surface and within visual  sighting distance of   the employee being monitored; | | | | | | | |
| 1926.502(h)(1)(iv) The safety monitor shall be close enough to communicate orally with the employee; and 1926.502(h)(1)(v) The safety monitor shall not have other responsibilities which could take the monitor's attention from the monitoring function. | | | | | | | |
| ALSO:*Accounts for supervisor to set up harness system for workers. | | | | | | | |
| 405.  Temporary toilet (per month) | 4.00 MO | 106.15 | 0.00 | 84.92 | 509.52 | (0.00) | 509.52 |
| 406.  General Laborer - per hour | 720.00 HR | 41.06 | 0.00 | 5,912.64 | 35,475.84 | (0.00) | 35,475.84 |
| *Accounts for labor to keep site clean for residents, safety monitor, hydration station set up and maintenance, ect.. 24 hours  by 30 days., traffic and pedestrian control. | | | | | | | |
| 407.  Telehandler/forklift (per month) - no operator | 2.00 MO | 2,892.00 | 0.00 | 1,156.80 | 6,940.80 | (0.00) | 6,940.80 |
| 408.  Equipment Operator - per hour | 160.00 HR | 60.88 | 0.00 | 1,948.16 | 11,688.96 | (0.00) | 11,688.96 |
| 409.  Boom truck and operator - 20 ton | 160.00 HR | 106.00 | 0.00 | 3,392.00 | 20,352.00 | (0.00) | 20,352.00 |
| 410.  Boom or spider lift - 50'-60' reach (per month) | 2.00 MO | 3,158.40 | 0.00 | 1,263.36 | 7,580.16 | (0.00) | 7,580.16 |
| 411.  Job-site cargo/storage container - 20' long - per month | 2.00 MO | 150.00 | 18.00 | 63.60 | 381.60 | (0.00) | 381.60 |
| Container used to store miscellaneous roofing components required to have on site during roofing operations. | | | | | | | |
| 412.  Job-site cargo container - pick up/del. (each way) 16'-40' | 2.00 EA | 175.00 | 0.00 | 70.00 | 420.00 | (0.00) | 420.00 |
| **Totals:  General Conditions** | | | 18.00 | 23,003.48 | 138,020.88 | 0.00 | 138,020.88 |
| **Line Item Totals:  HERITAGE_PARK_CIRCL1** | | | 30,823.07 | 321,267.52 | 1,927,603.75 | 216,887.63 | 1,710,716.12 |

**Accurate Adjusting & Appraisals PC**

Accurate Adjusting & Appraisals PC
PO BOX 552
Westcliffe, CO 81252
678-943-3169

## Summary for Dwelling

| | |
|---|---|
| Line Item Total | 1,575,513.16 |
| Material Sales Tax | 30,805.07 |
| Storage Rental Tax | 18.00 |
| Subtotal | 1,606,336.23 |
| Overhead | 160,633.76 |
| Profit | 160,633.76 |
| **Replacement Cost Value** | **$1,927,603.75** |
| Less Depreciation | (216,887.63) |
| **Actual Cash Value** | **$1,710,716.12** |
| **Net Claim** | **$1,710,716.12** |
| Total Recoverable Depreciation | 216,887.63 |
| **Net Claim if Depreciation is Recovered** | **$1,927,603.75** |

David Tolar
President

## Accurate Adjusting & Appraisals PC

Accurate Adjusting & Appraisals PC
PO BOX 552
Westcliffe, CO 81252
678-943-3169

### Recap of Taxes, Overhead and Profit

| | Overhead (10%) | Profit (10%) | Material Sales Tax (6%) | Storage Rental Tax (6%) | Local Food Tax (2%) |
|---|---|---|---|---|---|
| **Line Items** | 160,633.76 | 160,633.76 | 30,805.07 | 18.00 | 0.00 |
| **Total** | **160,633.76** | **160,633.76** | **30,805.07** | **18.00** | **0.00** |

## Accurate Adjusting & Appraisals PC

Accurate Adjusting & Appraisals PC
PO BOX 552
Westcliffe, CO 81252
678-943-3169

## Recap by Room

**Estimate: HERITAGE_PARK_CIRCL1**

| | | |
|---|---|---|
| Building 1 -Clubhouse | 10,727.94 | 0.68% |
| Building 2-Six Plex (374-384) | 75,815.00 | 4.81% |
| Building 3 Seven Plex (390-402) | 61,479.79 | 3.90% |
| Building 4- Eight Plex (408-424) | 71,917.55 | 4.56% |
| Building 5 -Six Plex (424-434) | 79,292.22 | 5.03% |
| Building 6 -Six Plex (425-435) | 59,420.74 | 3.77% |
| Building 7-Eight Plex(#409-421) | 66,753.61 | 4.24% |
| Building 8-Seven Plex (391-407) | 43,704.29 | 2.77% |
| Building 9- (373-387) | 48,800.99 | 3.10% |
| Building 10- Five Plex (363-369) | 35,360.83 | 2.24% |
| Building 11- Four Plex (351-357) | 28,558.89 | 1.81% |
| Building 12- Five Plex 2 (339-347) | 35,360.83 | 2.24% |
| Building 13- Four Plex (329-335)A | 36,148.85 | 2.29% |
| Building 14-Six Plex (#315-325) | 52,641.42 | 3.34% |
| Building 15- Six Plex (301-311) | 77,107.87 | 4.89% |
| Building 16- Eight Plex (#2326-2338) | 74,560.49 | 4.73% |
| Building 17- Four Plex (#2429-2435) | 39,112.00 | 2.48% |
| Building 18- Four Plex (2419-2425) | 39,112.00 | 2.48% |
| Building 19- Eight Plex (#2401-2415) | 70,375.02 | 4.47% |
| Building 20- Eight Plex (2402-2416) | 70,375.02 | 4.47% |
| Building 21 Six Plex (2391-2397 Block) | 56,935.46 | 3.61% |
| Building  22- Six Plex (2373 to 2383) | 74,185.46 | 4.71% |
| Building 23 Eight Plex (#2346-2360) | 76,313.81 | 4.84% |
| Building 24- Eight Plex (#2337-2351) | 70,375.02 | 4.47% |
| Building 25- Eight Plex (#2321-2333) | 70,375.02 | 4.47% |
| 373-408 | 14,509.48 | 0.92% |
| 406-420 | 21,194.16 | 1.35% |
| General Conditions | 114,999.40 | 7.30% |

| | | |
|---|---|---|
| **Subtotal of Areas** | **1,575,513.16** | **100.00%** |

| | | |
|---|---|---|
| **Total** | **1,575,513.16** | **100.00%** |

**Accurate Adjusting & Appraisals PC**

Accurate Adjusting & Appraisals PC
PO BOX 552
Westcliffe, CO 81252
678-943-3169

## Recap by Category with Depreciation

| O&P Items | RCV | Deprec. | ACV |
|---|---|---|---|
| CONTENT MANIPULATION | 650.00 | | 650.00 |
| GENERAL DEMOLITION | 195,516.24 | | 195,516.24 |
| DOORS | 29,088.96 | | 29,088.96 |
| HEAVY EQUIPMENT | 38,801.60 | | 38,801.60 |
| HEAT,  VENT & AIR CONDITIONING | 126,114.09 | 17,793.81 | 108,320.28 |
| LABOR ONLY | 66,974.40 | | 66,974.40 |
| METAL STRUCTURES & COMPONENTS | 389.50 | 38.10 | 351.40 |
| PAINTING | 6,058.56 | 179.40 | 5,879.16 |
| ROOFING | 1,076,366.83 | 196,975.11 | 879,391.72 |
| SOFFIT, FASCIA, & GUTTER | 24,694.20 | 1,858.86 | 22,835.34 |
| TEMPORARY REPAIRS | 5,973.40 | | 5,973.40 |
| WINDOW REGLAZING & REPAIR | 1,087.66 | 42.35 | 1,045.31 |
| WINDOWS - VINYL | 3,797.72 | | 3,797.72 |
| O&P Items Subtotal | 1,575,513.16 | 216,887.63 | 1,358,625.53 |
| Material Sales Tax | 30,805.07 | | 30,805.07 |
| Storage Rental Tax | 18.00 | | 18.00 |
| Overhead | 160,633.76 | | 160,633.76 |
| Profit | 160,633.76 | | 160,633.76 |
| Total | 1,927,603.75 | 216,887.63 | 1,710,716.12 |



















































Hail and multiple tears and creases



















































# Spatter

















































































































































LENNOX
INDUSTRIES INC.
M/N 10HPB24-12P
S/N 5804C01578
CONTAINS HCFC-22
FACTORY CHARGE
4 LBS 4 OZS
DESIGN PRESSURE
HI 278 PSIG
LO 144 PSIG
ELECTRICAL RATING
1 PH 60 HZ
NOMINAL VOLTS 208/230
MIN 197 MAX 253
COMPRESSOR
PH 1
RLA 12.2
LRA 61
MIN. CKT. AMPACITY AMPERAGE MINIMUM 16.4
FAN MOTOR
PH 1
FLA 1.1
HP 1/6
MAX FUSE OR CKT. BKR FUSIBLE/COUPE CIRCUIT (HACR PER NEC) 25
5804C01578
c UL us
FOR OUTDOOR USE

Fulton County Superior Court
***EFILED***TV
Date: 1/23/2023 5:05 PM
Cathelene Robinson, Clerk

**General Civil and Domestic Relations Case Filing Information Form**

☐ **Superior** or ☐ **State Court of** _____ **County**

| For Clerk Use Only | |
|---|---|
| **Date Filed** 1/23/2023 | 2023CV375304 |
| _____ | **Case Number** _____ |
| **MM-DD-YYYY** | |

**Plaintiff(s)** | **Defendant(s)**

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

**Plaintiff's Attorney** _____ **State Bar Number** _____ **Self-Represented** ☐

**Check one case type and one sub-type in the same box (if a sub-type applies):**

**General Civil Cases**
- ☐ Automobile Tort
- ☐ Civil Appeal
- ☐ Contempt/Modification/Other Post-Judgment
- ☐ Contract
- ☐ Garnishment
- ☐ General Tort
- ☐ Habeas Corpus
- ☐ Injunction/Mandamus/Other Writ
- ☐ Landlord/Tenant
- ☐ Medical Malpractice Tort
- ☐ Product Liability Tort
- ☐ Real Property
- ☐ Restraining Petition
- ☐ Other General Civil

**Domestic Relations Cases**
- ☐ Adoption
- ☐ Contempt
  - ☐ Non-payment of child support, medical support, or alimony
- ☐ Dissolution/Divorce/Separate Maintenance/Alimony
- ☐ Family Violence Petition
- ☐ Modification
  - ☐ Custody/Parenting Time/Visitation
- ☐ Paternity/Legitimation
- ☐ Support – IV-D
- ☐ Support – Private (non-IV-D)
- ☐ Other Domestic Relations

☐ Check if the action is related to another action pending or previously pending in this court involving some or all of the same: parties, subject matter, or factual issues. If so, provide a case number for each.

_____ _____
**Case Number** **Case Number**

☐ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in OCGA § 9-11-7.1.

☐ Is a foreign language or sign-language interpreter needed in this case? If so, provide the language(s) required.

_____ **Language(s) Required**

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

Version 1.1.20

Fulton County Superior Court
***EFILED***TV
Date: 1/23/2023 5:05 PM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| **HERITAGE PARK CONDOMINIUM** | ) |
| **ASSOCIATION, INC.,** | ) |
|     **Plaintiff,** | ) |
| | ) |
|   **v.** | )    **CIVIL ACTION FILE NO.:** |
| | )    2023CV373304 |
| **AMERICAN ALTERNATIVE** | )    _____ |
| **INSURANCE CORPORATION,** | ) |
|   **a foreign corporation,** | ) |
| | ) |
|     **Defendant.** | ) |

## CERTIFICATE OF SERVICE

     This is to certify that I have served the foregoing upon the Defendant American Alternative Insurance Corporation by serving them with the **_Summons, Complaint and Exhibits_**, and **_Plaintiff's First Set of Interrogatories and Request for Production of Documents_** in accordance with the Court's rules to Defendant American Alternative Insurance Corporation at the address listed below:

<div align="center">

**Registered Agent Solutions, Inc.**
**Registered Agent for Defendant American Alternative Insurance Corporation**
**900 Old Roswell Lakes Parkway, Suite 310**
**Roswell, GA 30076**

</div>

     Respectfully submitted, this 20th day of January, 2023.

<div align="right">

For: The Huggins Law Firm, LLC,

_(signature)_

</div>

| | |
|---|---|
| **The Huggins Law Firm, LLC** | J. Remington Huggins, Esq. |
| 110 Norcross Street | Georgia Bar No.: 348736 |
| Roswell, GA 30075 | Michael D. Turner, Esq. |
| (o) (770) 913-6229 | Georgia Bar No.: 216414 |
| (e) remington@lawhuggins.com | Foster L. Peebles, Esq. |
| (e) mdturner@lawhuggins.com | Georgia Bar No.: 410852 |
| (e) fpeebles@lawhuggins.com | _Attorneys for the Plaintiff_ |

Fulton County Superior Court
***EFILED***JH
Date: 1/25/2023 11:27 AM
Cathelene Robinson, Clerk

# IN THE SUPERIOR COURT OF FULTON COUNTY, GEORGIA
### 136 PRYOR STREET, ROOM C-103, ATLANTA, GEORGIA 30303
## SUMMONS

| | |
|---|---|
| _____ | ) Case   2023CV375304 |
| | ) No.:_____ |
| | ) |
| _____ | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | ) |
| | ) |
| _____ | ) |
| | ) |
| _____ | ) |
| **Defendant** | ) |
| | ) |
| | ) |
| | ) |

TO THE ABOVE NAMED DEFENDANT(S):

You are hereby summoned and required to file electronically with the Clerk of said Court at https://efilega.tylerhost.net/ofsweb (unless you are exempt from filing electronically) and serve upon plaintiff's attorney, whose name and address is:

An answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service; unless proof of service of this complaint is not filed within five (5) business days of such service. Then time to answer shall not commence until such proof of service has been filed. **IF YOU FAIL TO DO SO, JUDGMENT BY DEFAULT WILL BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

This_____1/26/2023_____day of_____, 20 _____

Honorable Cathelene "Tina" Robinson
Clerk of Superior Court
By_____
                    Deputy Clerk

To defendant upon whom this petition is served:
This copy of complaint and summons was served upon you _____, 20_____

Deputy Sherriff

**Instructions: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum is used**

Fulton County Superior Court
***EFILED***mJ
Date: 1/27/2023 2:24 PM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
### STATE OF GEORGIA

HERITAGE PARK CONDOMINIUM ASSOCIATION, INC.,
    **Plaintiff,**

v.

AMERICAN ALTERNATIVE INSURANCE COMPANY,
 a foreign corporation,

    **Defendant.**

)
)
)
)
)
)
)
)
)
)
)
)
)

**CIVIL ACTION FILE NO.:**
<u>2023CV375304</u>

### AFFIDAVIT OF SERVICE

Personally appeared before the undersigned officer duly authorized to administer oaths, _Chara Wallca_, who after first being duly sworn, deposes as follows:

My name is _Chara Wallca_. I am over the age of eighteen (18) and I am a citizen of the United States. I am not related to or employed by any party or attorney in this lawsuit.

I hereby certify that on _January 27th_, at _11:47_, I delivered a copy of the Summons, Complaint & exhibits and Plaintiff's Interrogatories & Requests for Production of Documents to Defendant's Registered Agent, Registered Agent Solutions, Inc., located at 900 Old Roswell Lakes Parkway, Suite 310, Roswell, GA 30076.

AFFIANT SAYETH NOT FURTHER this the _27th_ day of _January_, 2023.

_____
Process Server

Sworn to and subscribed before me
this _27th_ day of _January_, 2022.

_____
Notary Public
My Commission Expires: _2/3/2024_

## Case Information

# Heritage Park Condominium Association, Inc. VS. American Alternative Insurance Corporation

2023CV375304

| Location | Case Category | Case Type | Case Filed Date |
|---|---|---|---|
| Fulton - Superior Court | Civil | CONTRACT/ACCOUNT | 1/23/2023 |

| Judge | Case Status |
|---|---|
| SCHWALL, CRAIG | Open (Open) |

## Parties [2]

| Type | Name | Nickname/Alias | Attorneys |
|---|---|---|---|
| DEFENDANT | American Alternative Insurance Corporation | | |
| PLAINTIFF | Heritage Park Condominium Association, Inc. | | J. REMINGTON HUGGINS |

## Events [5]

| Date | Event | Type | Comments | Documents |
|---|---|---|---|---|
| 1/23/2023 | Filing | Plaintiff's Original Petition | ON CONTRACT AND ACCOUNT | COMPLAINT.pdf |
| 1/23/2023 | Filing | CASE INITIATION FORM | COMPLAINT ON CONTRACT AND ACCOUNT | CASE INITIATION FORM.pdf |
| 1/23/2023 | Filing | CERTIFICATE OF SERVICE | OF PLAINTIFF | CERTIFICATE OF SERVICE.pdf |
| 1/25/2023 | Filing | SUMMONS | Summons | SUMMONS.pdf |
| 1/27/2023 | Filing | AFFIDAVIT OF SERVICE | Affidavit of Service | AFFIDAVIT OF SERVICE.pdf |

© 2023 Tyler Technologies, Inc. | All Rights Reserved
Version: 2023.1.0.10138

