**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

**CHRISTOPHER BRYAN STEWART,**          **CIVIL ACTION NO.**

    **Plaintiff,**

**Vs.**

**STATE BOARD OF PARDONS AND PAROLES,**
**CHAIRMAN TERRY E. BERNARD,**

    **Defendants.**

## COMPLAINT

Plaintiff Christopher Bryan Stewart files this Complaint for Mandamus

pursuant to 28 U.S.C. §1361 and in accordance with 42 U.S.C. §1983 for

equitable relief against the State Board of Pardons and Paroles and Chairman

Terry E. Bernard, and states as follows:

### PLAINTIFF

1.

Plaintiff Christopher Bryan Stewart ("Stewart") has been incarcerated

in the Georgia Department of Corrections for almost 12 years and is currently

incarcerated at Costal State Prison.

## DEFENDANTS

2.

The Defendant State Board of Pardons and Paroles ("Parole Board") is an independent agency of the State of Georgia and may be served with process at 2 Martin Luther King, Jr. Drive, S.E., Floyd Building, Balcony Level, East Tower, Atlanta, GA 30334-4909.

3.

The Defendant Chairman Terry E. Barnard ("Chairman") was at all times relevant the Chairman of the Defendant State Board of Pardons and Paroles and may be served with process at 2 Martin Luther King, Jr. Drive, S.E., Floyd Building, Balcony Level, East Tower, Atlanta, GA 30334-4909.

## JURISDICTION

4..

Jurisdiction for this action is pursuant to 28 U.S.C. §1331 and arises under the Constitution of the United States, 28 U.S.C. §1361 and 42 U.S.C. § 1983.

## VENUE

5.

Venue is proper pursuant to 28 U.S.C. § 1391 in the United States District Court for the Northern District of Georgia where at all times relevant

acts of the Defendants occurred giving rise to this cause of action within the Northern District of Georgia.

## PREREQUISITES TO FILING

6.

There are no prerequisites to filing this action under 28 U.S.C. §1361 and 42 U.S.C. § 1983 and in accordance with the Prison Litigation Reform Act, 42 U.S.C. § 1997e because parole causes of action are not covered.

## OPERATIVE FACTS

7.

Plaintiff Stewart was at all times relevant an inmate at in the Georgia Department of Corrections for almost 12 years.

8.

Under the parole laws and regulations in effect at the time of commission of Plaintiff's offence in 2011 that he was to be considered for release on parole after serving sixty-five percent of his 20 years sentence. To determine the Plaintiff's parole eligibility, the Parole Board must use the risk to re-offend guidelines in effect at the time he committed the voluntary manslaughter charge, which occurred in 2011. When applied to Christopher Stewart calculates: (1) Number of Felony Convictions (2 convictions = 1 pt.); (2) Number of Prior Prison Incarcerations (1 prior incarceration = 1 pt.); (3)

Current Prison Sentenced Offenses (offense not listed (voluntary manslaughter) = 0 pts.); (4) Age at Current Prison Admission (46 years old = -2 pts.); (5) History of drug or alcohol abuse (no = 0 pts); (6) Employed at the time of current arrest (yes (plumber) = -3 pts). According to the appropriate Risk to Re-offend Score Chart, Christopher Stewart has -3 points (negative 3 points). This low-risk to re-offend calculates to 65% of his 20-year sentence.

9..

Plaintiff's counsel on June 6, 2022 filed an Application for Release on Parole on behalf of Plaintiff Stewart seeking his release on parole because he was eligible for release on parole after sixty-five percent of his judicial sentence in accordance with the parole laws and Parole Decision Guidelines in effect at the time of commission of his offense. A copy of the Application for Release on Parole is attached as "Exhibit A."

10.

Plaintiff received a response on behalf of the Defendant Parole Board denying the Plaintiffs' release on parole based on a subsequent adopted Parole Decision Guideline that extended his sentence to serve until he served ninety percent of his judicial sentence. A copy of the Parole Board's response is attached as "Exhibit B."

11.

The Parole Board retroactively assigned Christopher Stewart an erroneous parole decision based on guidelines dated 06/01/2018 that were not the parole decision guidelines that were in effect when he was convicted of voluntary manslaughter in 2011. A copy of the parole decision guidelines in effect at the time of commission of the Plaintiff's offense is attached as "Exhibit C." The Response from the State Board of Pardons and Paroles quoted the retroactive application of the new policy that extended the Plaintiff's sentence to serve, "For all cases considered for parole on or after July 1, 2017, the new system will be used to compute an offender's parole risk score." The new parole decision guidelines which were based primarily on the number of arrests and not convictions determined that he was to serve 90% of his sentence with his tentative parole month to be September of 2029.

## CAUSES OF ACTION

## MANDAMUS - 28 U.S.C. §1361

12.

Defendants' actions in retroactively extending consideration of the release of the Plaintiff until he has served ninety present of his judicial sentence violates the Ex Post Facto prohibitions of the United States Constitution as interpreted by the Supreme Court of the United States in

*Garner v. Jones*, 529 U.S. 244 (2000) and *California Dept. of Corrections v. Morales*, 514 U.S. 499 (1995) and *Warden, Lewisburg Penitentiary v. Marrero*, 417 U.S. 653, 663 (1974)  and by the United States District Court for the Northern District of Georgia in *Coleman Jackson v. State Board of Pardons and Paroles*, 2002 U.S. Dist. LEXIS 28008 (N.D. Ga).

13.

Plaintiff is entitled to release to an order of mandamus pursuant to 28 U.S.C. §1361 requiring the Defendants to consider the release of the Plaintiff in accordance with the parole laws and Parole Decision Guidelines in effect at the time of commission of his offense.

**CIVIL RIGHTS- 42 USC § 1983**

14.

Defendants were deliberately indifferent in their duty to Plaintiff when they refused to consider him for release on parole in accordance with the Parole laws and Parole Decision Guidelines in effect at the time of commission of his offence in violation of Plaintiffs constitutional rights under the Ex Post Facto provisions of the United States Constitution and the civil rights laws.

15.

Defendants in their official and individual capacities knew that their actions and deliberate indifference would extend the Plaintiff's sentence to serve before consideration of release on parole in violation of the Ex Post Facto prohibitions of the United States Constitution and civil rights laws. The actions of the Defendants under color of law violated clearly established constitutional rights of which they knew, or a reasonable person would have known. The pre-existing law was apparent and its contours sufficiently clear that they should have understood that what the Defendants were doing in retroactively extending the Plaintiff's sentence to serve to ninety present of his judicial sentence before consideration of his release on parole in violation of the Ex post Facto prohibition of the United States Constitution including the precedent of the United States Supreme Court of the United States in *Garner v. Jones*, 529 U.S. 244 (2000) and *California Dept. of Corrections v. Morales*, 514 U.S. 499 (1995) and *Warden, Lewisburg Penitentiary v. Marrero,* 417 U.S. 653, 662 (1974).

WHEREFORE, Plaintiff Stewart prays:

(1) That the Court issue a Mandamus pursuant to 28 U.S.C. §1361 requiring the Defendants to consider the Plaintiff in accordance with the parole laws and Parole Decision Guidelines in effect at the time of commission of his offence that he be considered for release on parole after serving sixty-five percent of his judicial sentence;

(2) That the Court issue an injunction pursuant to 42 U.S.C. !983 requiring the Defendants to consider the Plaintiff in accordance with the parole laws and Parole Decision Guidelines in effect at the time of commission of his offence that he be considered for release on parole after serving sixty-five percent of his judicial sentence;

(3) That the Court award attorney's fees and the costs of this action in accordance with 42 U.S.C. § 1988;

(4) That the Court award such other relief as may be proper:

> */S/ McNeill Stokes*
> McNeill Stokes
> Georgia Bar Number 683600
> Attorney for Plaintiff

5372 Whitehall Place SE
Mableton, GA 30126
Telephone: 404-352-2144
Email: mcstokes@bellsouth.net

EXHIBIT A

**BEFORE THE
STATE BOARD OF PARDONS AND PAROLES
STATE OF GEORGIA**

RE:  **CHRISTOPHER BRYAN STEWART**                    **GDC # 200523**

TO:  **THE MEMBERS OF THE STATE BOARD
OF PARDONS AND PAROLES**

**APPLICATION FOR RELEASE ON PAROLE**

This Application for Release on Parole is made on behalf of Christopher

Bryan Stewart who was sentenced in Cobb County for voluntary manslaughter and

is currently serving a 20-year sentence.

He has been in custody for almost 12 years and is deserving of consideration

for release on parole in 2023, or up to a year sooner depending on his performance

incentive credits. He has been unable to complete his case plan in order to earn

additional PIC credits because the required class is not offered at Central State

Prison. Christopher's offenses permit him to be paroled after 13 years which was in

effect at the time of commission of his offense in 2011.

The Board has assigned Christopher Stewart an erroneous parole decision

based on guidelines dated 06/01/2018 that were not the parole decision guidelines

that were in effect when he was convicted of voluntary manslaughter in 2011. This

parole decision guidelines which was based primarily on the number of arrests and

not convictions determined that he was to serve 90% of his sentence with his

1

tentative parole month to be September of 2029. (Exhibit A). Applying the subsequent parole decision guidelines, that were not in effect at the time of commission of his offense, which increased his sentence to serve is unconstitutional and violative of ex post facto prohibitions of the United States Constitution. The Supreme Court of the United States has instructed, in *Garner v. Jones*, 529 U.S. 244 (2000) and *California Dept. of Corrections v. Morales*, 514 U.S. 499 (1995), that the proper parole determination are to be in accordance with the parole laws and guidelines in effect at the time of the commission of the offense. In Christopher's case, the parole guidelines that were in effect as of 2011. This was also the decision in *Coleman Jackson v. State Board of Pardons and Paroles*, 2002 U.S. Dist. LEXIS 28008 (N.D. Ga.), in which Judge O'Kelley enjoined the State Board of Pardons and Parole over 20 years ago that they could not apply subsequent guidelines that increased the likelihood of the Defendant's sentence to serve as a violation of ex post facto. The State Board of Pardons and Parole has setup in Chris Stewart's case a similar situation to the *Coleman Jackson* case by increasing his sentence to serve by applying subsequent parole guidelines that dictate a longer sentence to serve.

The appropriate parole guidelines for a Level VIII offense that were in effect in 2011 determine the risk to re-offend on a score chart. (Exhibit B). To determine Christopher's parole eligibility, the Parole Board must use the risk to re-offend guidelines in effect at the time he committed the voluntary manslaughter charge,

2

which occurred in 2011. When applied to Christopher Stewart calculates: (1) Number of Felony Convictions (2 convictions = 1 pt.); (2) Number of Prior Prison Incarcerations (1 prior incarceration = 1 pt.); (3) Current Prison Sentenced Offenses (offense not listed (voluntary manslaughter) = 0 pts.); (4) Age at Current Prison Admission (46 years old = -2 pts.); (5) History of drug or alcohol abuse (no = 0 pts); (6) Employed at the time of current arrest (yes (plumber) = -3 pts). According to the appropriate Risk to Re-offend Score Chart, Christopher has -3 points (negative 3 points). This low-risk to re-offend calculates to 65% of his 20-year sentence to determine that his temporary parole month should be in September 2024.

Although it is understood that the Parole Board will accept his guilty plea, Christopher has consistently maintained that he acted in self-defense in regard to his voluntary manslaughter case, but, as the record indicates, Christopher took a plea deal because he would not be able to provide witnesses to testify on his behalf, but his attorney believed that there was circumstantial evidence to show Christopher acted in self-defense. Specifically, the only witness that could possibly testify as to whether Christopher's actions were self-defense, was not a credible witness and Christopher chose to accept a plea bargain rather than taking a chance at trial. While Christopher himself was willing to testify to the nature of his self-defense at trial, he decided not to risk a heavier charge and sentence by proceeding to trial. Additionally, the record reflects the court's acknowledgement that with the facts before the court,

3

it was possible that a jury would have found Christopher not guilty or might find self-defense and it was also possible the jury could find Christopher guilty of malice murder and, as such, the court accepted Christopher's guilty plea for voluntary manslaughter. In his plea deal hearing, the record reflects Christopher was very sorry for Mr. Alvarez's death, while maintaining he acted in self-defense. (Exhibit C).

During his incarceration, Christopher has dedicated himself to rehabilitation and he will be a productive member of society upon release. Christopher has the support of his family and friends who will create and maintain a strong support network for Christopher upon his release.

Upon release, Christopher will be accepted into a loving and supportive home and has plans to move in with his brother, Mr. Michael Edmundson. Christopher's family will provide love, guidance, and support for Christopher. He will have adequate housing, with his brother, at 22 Lodge Pole Pine Ct., Newman, GA, 30265, and transportation to and from work.

Christopher has participated in various educational and rehabilitative courses throughout his incarceration. Christopher's successful completion of cognitive rehabilitation programs include his participation in moral reconation therapy, motivation for change, and thinking for a change. (Exhibit D). However, Christopher has not had the opportunity to participate in his required substance abuse course,

4

Matrix Model – Early Recovery Skills because the course is not offered at Central State Prison.

Before his incarceration, Christopher was a plumber and currently has $60,000 saved in his bank account and will rely on that money immediately upon release. He is employable based on his previous employment experience as a plumber, and he has continued to engage in vocational classes to further support his employment prospects. The vocational programs Christopher has participated in include Re-entry Skills Building, Basic Computer Operation, and Office Technology. (Exhibit E). Christopher's previous employers at Mr. Plunger have written letters of support describing Christopher as a "master plumber" and explaining that Christopher has always been a strong community member prior to his incarceration. (Exhibit F). Christopher has employment prospects for when he is released from prison with his previous employer Mr. Plunger who has guaranteed his employment upon Christopher's release from prison. (Exhibit G).

It is important to note that during his incarceration, Christopher has become visually and hearing impaired. Christopher is remorseful for the crimes he has committed and has dedicated his time, during incarceration, to rehabilitating himself to ensure he is a productive member of society upon his release. It is requested that his release on parole be expedited as soon as possible or, in the alternative, that he be transferred to a transition center.

5

This 6th day of June, 2022.

Respectfully submitted,


McNeill Stokes,
Georgia Bar Number 683600
Attorney for Christopher Bryan Stewart

5372 Whitehall Pl
Mableton, GA 30126
Tel 404-352-3285
Fax 404-367-0353
Email:r.cstokes@bellsouth.net

6

EXHIBIT B



# STATE BOARD OF PARDONS AND PAROLES

| Terry E. Barnard | 2 MARTIN LUTHER KING, JR. DRIVE, S.E. | Jacqueline Bunn, Esq. |
|---|---|---|
| Chairman | FLOYD BUILDING, BALCONY LEVEL, EAST TOWER | Member |
| Brian Owens | ATLANTA, GEORGIA 30334-4909 | David Herring |
| Vice-Chairman | (404) 656-4661 | Member |
| | WWW.PAP.GEORGIA.GOV | Meg Heap |
| | | Member |

June 28, 2022

Mr. McNeill Stokes, Attorney at Law
5372 Whitehall Pl.
Mableton, Ga. 30126

Re: Christopher Stewart, ZX-765062

Dear Mr. Stokes,

This acknowledges receipt of your Application For Release On Parole dated June 6, 2022 regarding Mr. Stewart.

In May, 2018, the Board considered Mr. Stewart's case and agreed with the Guidelines Recommendation of September, 2029. The Board did make him eligible to receive Performance Incentive Credits (PIC) for program completions which may advance his TPM. So far, he has earned 2 credits which may advance his TPM to July, 2029.

Regarding your claim that "The Board has assigned Christopher Stewart an erroneous parole decision based on guidelines dated 06/01/2018 that were not the parole guidelines that were in effect when he was convicted of voluntary manslaughter in 2011", please see below:

In 2015, the Board began a revision of the Parole Decision Guidelines. Statistical analyses identified the significant predictors of public safety risk (felony arrest within three years of prison release). For the first time, both risk factors and their weights were identified separately for males and females. **For all cases considered for parole on or after July 1, 2017, the new system will be used to compute an offender's parole risk score.** The

Board's new Parole Decision Guidelines represent its best effort to protect the public from harm by maximizing the utility of the state's prison system and ensuring that the most dangerous offenders are incarcerated for the longest period of time possible, given the State's available resources.

Therefore, there has been no error in Mr. Stewart's case.

Upon a thorough review of your Application, it has been determined that there is insufficient new and compelling information contained in it to warrant a consideration of Mr. Stewart's case prior to his scheduled reconsideration in May, 2023.

Your Application has been made a part of Mr. Stewart's file.

Sincerely,

Steve Baustin
Attorney Liaison

EXHIBIT C

## RISK TO RE-OFFEND SCORE CHART

The Parole Board will use the following factors to compute a Risk to Re-Offend Score for each inmate it considers for parole using its Parole Guidelines System.

Number of Felony Convictions: (none = 0 pts.), (1-2 = 1 pt.), (3 = 2 pts.), (4-5 = 3 pts.), (6-7 = 4 pts.), (8 = 5 pts.), (9 or more = 6 pts.).

Number of Prior Prison Incarcerations: (none = 0 pts.), (1 = 1 pt.), (2 = 3 pts.), (3 = 4 pts.), (4 or more = 6 pts.).

Current Prison Sentenced Offenses (score is cumulative) includes:  (offense(s) not listed = 0 pts.), (burglary = 1 pt.), (drug possession = 1 pt.), (forgery = 2 pts.), (felony obstruction of an officer = 3 pts.), (theft = 5 pts.).

Age at Current Prison Admission: (20 or less = 0 pts.), (more than 20 to 40 = minus 1 pt.), (more than 40 = minus 2 pts.).

History of drug or alcohol abuse: (no = 0 pts.), (yes = 2 pts.).

Employed at time of current arrest: (no = 0 pts.), (yes = minus 3 pts.).

## VERIFICATION

I, Chris Stewart, do hereby declare under the penalty of perjury that the averments contained in the foregoing Complaint are true and correct to the best of my knowledge and belief.

This ___3rd___ day of _November_, 2022.

Chris Stewart

Chris Stewart # 200523
Coastal State Prison
200 Gulf Stream rd,
Garden City, GA. 31418

DOB 2/24/66