**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| AMERICAN PREMIER SERVICES, INC., <br><br> Plaintiff, <br><br> vs. <br><br> PAUL A. OSTERHOLT, and WEST GEORGIA EROSION, LLC, <br><br> Defendants. | Case No. _____ |

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

COMES NOW Plaintiff, AMERICAN PREMIER SERVICES, INC. ("Plaintiff"), by and through its undersigned counsel, and sues Defendants, PAUL A. OSTERHOLT ("Osterholt") and WEST GEORGIA EROSION, LLC ("WGE") (collectively, "Defendants"), and states as follows:

**JURISDICTION, PARTIES, AND VENUE**

1. Plaintiff is a Delaware corporation with its principal place of business located in the State of Florida.

2. Osterholt is a citizen of the State of Alabama.

3. WGE is an Alabama limited liability company.

4. Osterholt is the sole member of WGE and is a citizen of the State of Alabama.

5. This Court has personal jurisdiction over Osterholt because he transacts business in Georgia. Alternatively, the Court has personal jurisdiction over Osterholt because the tortious acts described herein occurred in Georgia.

6. This Court has personal jurisdiction over WGE because it transacts business in Georgia. Alternatively, the Court has personal jurisdiction over WGE because the tortious acts described herein occurred in Georgia.

7. The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because Plaintiff and Defendants are citizens of different States and the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

8. Venue is proper in the Northern District of Georgia pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in the Northern District of Georgia.

## GENERAL ALLEGATIONS

9. Plaintiff is the parent company of non-party HydroSpec, Inc. d/b/a Valor Environmental of Georgia ("Valor").

10. Valor is in the business of developing and providing environmental and erosion control products and services, performing storm water inspections, safety and compliance consulting, quality assurance consulting, and related services.

11. On or about March 29, 2010, Osterholt became employed by non-party Watkins Erosion Control, Inc. ("Watkins Erosion") as the General Manager of its office located at 1132 Old Harris Road, Dallas, Georgia 30132.

12. On or about December 17, 2021, Valor acquired Watkins Erosion.

13. On December 17, 2021, Osterholt executed an employment agreement with Plaintiff ("Agreement"), a true and correct copy of which is attached as Exhibit "A" and incorporated herein.

14. On or about January 12, 2023, Osterholt's employment with Valor terminated.

15. Pursuant to the Agreement, Osterholt is prohibited from, among other things, working for, participating in or otherwise being engaged in a competing business within a restricted time and area, soliciting and/or performing services for certain customers or former customers of Plaintiff, and disclosing Plaintiff's confidential information.

16. Pursuant to Exhibit A, Section 1, of the Agreement:

1. <u>Restrictive Covenants.</u>

    a. <u>Non-Competition</u>. Employee acknowledges and agrees that (x) in the performance of his duties under this letter, (i) he will be brought into frequent contact, either in person, by telephone or through the mails, with existing and potential customers of the Company Group, (ii) will have access to and participate in the creation of trade secrets for the Company Group, and (iii) the services to be rendered by Employee will be special and unique, and (y) his position with the Company Group and the performance of his duties under this letter

agreement makes it necessary for the protection of the business of the Company Group that Employee not compete with the Company Group so long as he is employed by the Company Group and not compete with the Company Group for a reasonable period after such employment as provided in this Section 1.

   i. So long as Employee is employed by the Company Group and for a period of two (2) years thereafter or the maximum shorter period permitted by applicable law, Employee shall not, directly or indirectly, control, manage, operate, be employed or engaged (whether as a consultant, or otherwise) by, or otherwise participate or engage in any business as, or own any interest in, any individual, proprietorship, partnership, corporation, limited liability company, joint venture, trust or any other form of business entity, whether as a proprietor, partner, shareholder, joint venturer, trustee, or in any other capacity whatsoever, if such entity is engaged, anywhere within the Restricted Territory, in any business competitive with, or complimentary to, the business of the Company Group as presently conducted or currently proposed to be conducted at the time Employee's employment by the Company Group is terminated.

   ii. So long as Employee is employed by the Company Group and for a period of two (2) years thereafter or the maximum shorter period permitted by applicable law, Employee shall not, directly or indirectly, (A) solicit customers, active prospects, business or patronage for any Competitive Business within the Restricted Territory, or (B) solicit, divert, entice or otherwise take away any customers, former customers, active prospects, business, patronage or orders of the Company Group or attempt to do so.

b. <u>Non-Solicitation; Non-Disparagement</u>. So long as Employee is employed by the Company Group and for a period of two (2) years thereafter or the maximum shorter period permitted by applicable law, Employee shall not, directly or indirectly, (i) hire or solicit to perform services (as an employee, consultant or otherwise) any persons who are or, within the six (6) month period immediately preceding the termination of Employee's employment by the

4

      Company Group were, salaried, technical or professional employees, representatives or agents of the Company Group, or take any actions which are calculated to persuade any such salaried, technical or professional employees, representatives or agents of the Company Group to terminate their association with the Company Group, or (ii) make or publish any statement (orally or in writing) that libels, slanders, disparages or otherwise defaces the goodwill or reputation (whether or not such disparagement legally constitutes slander) of the Company Group, or its officers or directors.

    c. <u>Non-Disclosure</u>. Employee understands and acknowledges that he has had, and will continue to have, access to certain Confidential Information, the disclosure or use of which may damage the Company Group. Consequently, as an inducement for the Company Group to enter into this letter agreement, Employee agrees that for the longest period permitted by law following the date hereof, other than as required by law, Employee shall not (a) use any Confidential Information except in furtherance of his duties for the Company Group, nor (b) disclose any Confidential Information except to officers or other employees of the Company Group when it is necessary, in the ordinary course of business, to do so. Employee (and if deceased, his personal representative) shall promptly, following a request therefor from the Company Group, return to the Company Group, without retaining copies, all tangible items which are or which contain Confidential Information.

(*See* Ex. A, pp. A-1, A-2).

17. The Agreement includes Plaintiff and all of its divisions, subsidiaries, and affiliates, including Valor (collectively, "Company Group"). (*See* Ex. A, p. A-3).

18. The Agreement signed by Osterholt is: (a) necessary to protect Plaintiff's legitimate interests, (b) reasonably limited in time and territory, (c) not

unduly restrictive on Osterholt's ability to earn a living, (d) reasonable from a public policy standpoint, and (e) supported by valuable consideration.

19.     Plaintiff has taken reasonable steps to maintain the confidentiality of its trade secrets and confidential information by, among other things: (a) requiring employees to agree to and execute agreements like the Agreement executed by Osterholt, and (b) requiring passwords and other security means to access the information.

20.     During his employment, Osterholt had access to the trade secrets and confidential information of Plaintiff and Valor, including their customer lists, customer information, pricing information, business methods, and sales and marketing methods.

21.     During his employment, Osterholt performed services in the Atlanta metropolitan area, west Georgia counties, and Greene County, Georgia.

22.     Pursuant to the Agreement, the "Restricted Territory" means any state within which the business of the Company Group is carried on, or is actively planned to be carried on, at the time of expiration or termination of Employee's employment by the Company. (*See* Ex. A, at p. A-4).

23.     Within two (2) years of his termination of his employment with Valor, Osterholt created WGE to perform services, and is performing services, within the Restricted Territory.

24. The services performed by WGE are similar to or competitive with the business of Plaintiff and Valor as contemplated by the Agreement.

25. Moreover, within two (2) years of his termination of his employment with Valor, Osterholt and/or WGE have solicited Valor's customers and employees in violation of the Agreement.

26. Plaintiff and Valor have suffered damages and continue to suffer damages as a result of the actions of Osterholt, which are in violation of the Agreement.

27. All conditions precedent to this action have occurred, been satisfied, or been waived.

## COUNT I
## BREACH OF CONTRACT / INJUNCTIVE RELIEF
### (AGAINST OSTERHOLT ONLY)

28. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 27 above, as if more fully set forth herein.

29. This is an action for breach of the Agreement, pursuant to which Plaintiff seeks preliminary and permanent injunctive relief against Osterholt only.

30. Plaintiff has built up and established valuable business relationships throughout Georgia.

31. Plaintiff has legitimate business interests described above to protect, thereby justifying the need for enforcement of the Agreement.

32. The Agreement is reasonably necessary to protect Plaintiff's legitimate business interests.

33. Enforcement of the Agreement will not violate public policy.

34. Osterholt has intentionally and willfully breached, and is continuing to breach, the terms of the Agreement by his wrongful actions described above.

35. As a result of Osterholt's breaches of the Agreement, Plaintiff has suffered irreparable harm for which there is not an adequate remedy at law.

36. Plaintiff will continue to suffer irreparable harm for which there is not an adequate remedy at law.

37. Plaintiff has retained the services of Zimmerman, Kiser & Sutcliffe, P.A., to bring this action, and has agreed to pay its attorneys the reasonable fees and costs incurred in connection with this action.

WHEREFORE, Plaintiff respectfully requests that this Court enter a preliminary and permanent injunction enjoining Osterholt and those persons acting in concert or participation with Osterholt from breaching the Agreement, including prohibiting Osterholt from working within the restricted territory during the restricted time period, awarding Plaintiff its attorneys' fees and costs, and granting such other and further relief as this Court deems just, proper, and equitable. Further, Plaintiff demands a trial by jury on all issues so triable.

## COUNT II
## BREACH OF CONTRACT / DAMAGES
### (AGAINST OSTERHOLT ONLY)

38. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 27 above, as if more fully set forth herein.

39. This is an action for breach of the Agreement, pursuant to which Plaintiff seeks damages against Osterholt only.

40. Plaintiff has built up and established valuable business relationships throughout Georgia.

41. Osterholt has intentionally and willfully breached, and is continuing to breach, the terms of the Agreement by his wrongful actions described above.

42. As a result of Osterholt's breaches of the Agreement, Plaintiff has suffered, and continues to suffer, compensatory, special, and incidental damages, including lost revenues and profits, and lost business and goodwill.

43. Plaintiff has retained the services of Zimmerman, Kiser & Sutcliffe, P.A., to bring this action, and has agreed to pay its attorneys the reasonable fees and costs incurred in connection with this action.

WHEREFORE, Plaintiff demands a judgment against Osterholt for compensatory, special, and incidental damages, including lost revenues and profits, and lost business and goodwill, prejudgment interest, post judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court

deems just, proper, and equitable. Further, Plaintiff demands a trial by jury on all issues so triable.

## COUNT III
## TORTIOUS INTERFERENCE WITH CONTRACTUAL AND ADVANTAGEOUS BUSINESS RELATIONSHIPS / INJUNCTIVE RELIEF
### (AGAINST WGE ONLY)

44. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 27 above, as if more fully set forth herein.

45. This is an action for tortious interference with contractual and advantageous business relationships pursuant to which Plaintiff seeks injunctive relief against WGE only.

46. Plaintiff has built up and established valuable business relationships throughout Georgia.

47. Plaintiff maintains contractual and advantageous business relationships with a number of individuals and businesses in connection with environmental and erosion control products and services.

48. WGE has acquired actual knowledge of Plaintiff's contractual and advantageous business relationships, including the specific terms of the relationships, through Osterholt and other improper means.

49. WGE has intentionally and maliciously interfered, and continues to intentionally and maliciously interfere, with Plaintiff's contractual and advantageous

business relationships by attempting (and, in some cases, succeeding) to direct their business to Osterholt and WGE.

50. WGE's actions were not, and are not, privileged or justified.

51. WGE's conduct was, and continues to be, intentional, wrongful, and malicious, and performed with the intent to deprive Plaintiff of its rights.

52. WGE's interference with Plaintiff's contractual and advantageous business relationships has directly and proximately caused, and continues to cause, Plaintiff to sustain damages for which there is no adequate remedy at law.

53. Unless WGE is enjoined from interfering with Plaintiff's contractual and advantageous business relationships, Plaintiff will continue to suffer irreparable injury and damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter a preliminary and permanent injunction enjoining WGE from interfering with Plaintiff's contractual and advantageous business relationships and unfairly competing with Plaintiff, awarding Plaintiff its costs, and granting such other and further equitable and legal relief as this Court deems just, proper, and equitable. Further, Plaintiff demands a trial by jury on all issues so triable.

## COUNT IV
## TORTIOUS INTERFERENCE WITH CONTRACTUAL AND ADVANTAGEOUS BUSINESS RELATIONSHIPS / DAMAGES
### (AGAINST WGE ONLY)

54. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 27 above, as if more fully set forth herein.

55. This is an action for tortious interference with contractual and advantageous business relationships pursuant to which Plaintiff seeks damages against WGE only.

56. Plaintiff has built up and established valuable business relationships throughout Georgia.

57. Plaintiff maintains contractual and advantageous business relationships with a number of individuals and businesses in connection with environmental and erosion control products and services.

58. WGE has acquired actual knowledge of Plaintiff's contractual and advantageous business relationships, including the specific terms of the relationships, through Osterholt and other improper means.

59. WGE has intentionally and maliciously interfered, and continues to intentionally and maliciously interfere, with Plaintiff's contractual and advantageous business relationships by attempting (and, in some cases, succeeding) to direct their business to Osterholt and WGE.

60. WGE's actions were not, and are not, privileged or justified.

61. WGE's conduct was, and continues to be, intentional, wrongful, and malicious, and performed with the intent to deprive Plaintiff of its rights.

62. WGE's interference with Plaintiff's contractual and advantageous business relationships has directly and proximately caused, and continues to cause, Plaintiff to sustain compensatory, special, and incidental damages, including lost revenues and profits, and lost business and goodwill.

WHEREFORE, Plaintiff demands a judgment against WGE for compensatory, special, and incidental damages, including lost revenues and profits, and lost business and goodwill, prejudgment interest, post judgment interest, costs, and such other equitable and legal relief as this Court deems just, proper, and equitable. Further, Plaintiff demands a trial by jury on all issues so triable.

Dated this 28th day of February 2023.

>/s/ Patricia G. Griffith
> Patricia G. Griffith, Esq.
> Georgia Bar No. 311928
> Ford & Harrison LLP
> 271 17th Street, NW, Suite 1900
> Atlanta, GA 30363
> Telephone:  (404) 888-3800
> Facsimile:   (404) 888-3863
> pgriffith@fordharrison.com

And

/s/ J. Scott Hudson
J. Scott Hudson, Esq.
Florida Bar No.: 725137
(*pro hac vice* to be filed)
Nicholas J. Mari, Esq.
Florida Bar No. 123877
(*pro hac vice* to be filed)
ZIMMERMAN KISER & SUTCLIFFE, P.A.
315 East Robinson Street, Suite 600
Orlando, Florida 32801
Telephone:   (407) 425-7010
Facsimile:   (407) 425-2747
shudson@zkslawfirm.com
nmari@zkslawfirm.com
kgoodman@zkslawfirm.com
service@zkslawfirm.com

*Attorneys for Plaintiff*

WSACTIVELLP:13828688.1