# EXHIBIT A

**American Premier Services, Inc.**
1511 E. St. Rd. 434, Suite 3017, Winter Springs, FL 32708.

December 17, 2021

Personal and Confidential

Mr. Ashley Osterholt
135 Ivey Dr.
Lineville, AL 36266

Dear Mr. Osterholt:

      This letter sets forth the basic terms and conditions pursuant to which you will be employed by American Premier Services, Inc. (together with its affiliates, the "Company"). We are excited at the prospect of you joining our team. If you have any questions regarding this letter, please do not hesitate to contact me directly.

1. Effective Date: Your employment will be effective on the date hereof (the "Effective Date").

2. Position, Duties and Responsibilities: You shall serve as General Manager of Watkins Erosion Control and will report directly to the CEO of the Company. You will perform such duties as the CEO may assign from time to time.

3. Time Devoted to Work: You agree that you will devote your full business time, attention and energies to the Company.

4. Salary: The Company shall pay you, in accordance with the Company's policies and practices in effect from time to time, an annual base salary of One Hundred and Thirty Thousand U.S. Dollars ($130,000).

5. Bonus: You may be eligible to receive a discretionary annual bonus, as determined by the CEO and the Board of the Company.

6. Benefits: You will receive all general benefits for which you are eligible under the terms of any plans, programs or arrangements that the Company provides from time to time and are generally applicable to all employees of the Company.

7. Employment; Term. The Company hereby agrees to continue to employ you at will, and you hereby accept employment with the Company, upon the terms and conditions set forth in this letter for the period beginning on the date hereof and, unless sooner terminated as provided herein, ending on December 17, 2026 (the "Initial Term"). At the expiration of the Initial Term, this letter agreement will automatically renew for successive additional terms of one (1) year (each a "Renewal Term" and, together with the Initial Term, the "Employment Period"), unless notice of nonrenewal is given in writing by either party hereto to the other party at least sixty (60) days prior to the expiration of the Initial Term or any successive Renewal Term. Notwithstanding anything to the contrary herein, your employment with the Company and the Employment Period will end on the earlier of (a) your death or mental or physical disability or incapacity (as determined by a physician selected by the Company in its good faith judgment), (b) your

Exhibit A

    resignation, or (c) termination by the Company at any time, for any reason (or no reason) with or without cause.  Any termination of the Employment Period by the Company or by you will be effective as specified in a written notice from the terminating party to the other party.

8.  <u>Representations and Warranties</u>:  By signing this letter you represent and warrant to the Company that (a) your execution and delivery of, and the performance of your obligations under, this letter does not and will not conflict with, breach, violate or cause a default under any contract, agreement, instrument, order, judgment or decree to which you are a party or by which you are bound, (b) you are not a party to or bound by any employment agreement, non-compete agreement, confidentiality agreement or other restrictive covenant with any person (other than as may be set forth in other agreements between you and the Company or its affiliates), (c) upon the execution and delivery of this letter by the Company and you, this letter shall be a valid and binding obligation and enforceable against you in accordance with its terms, and (d) you are in compliance with all laws, rules and regulations that govern and will apply to, and will not be restricted from rendering, the services and duties to be rendered by you. In addition, you acknowledge and agree to be bound by the additional terms, conditions and covenants set forth on <u>Exhibit A</u> attached hereto.

    This letter supersedes any previous discussions you may have had about the terms of your employment with the Company.  By accepting employment with the Company, you acknowledge that you are not relying and have not relied on any oral or written statements, promises or representations made by any employee, agent or representative of the Company or any of its affiliates that are not expressly set forth in this letter.  The terms of this letter cannot be amended or otherwise modified except by a writing signed by a duly authorized representative of the Company.  This letter may be executed in any number of counterparts, each of which shall be an original but all of which together shall constitute one and the same instrument. Counterparts may be delivered via facsimile and electronic mail (including portable document format (.PDF) and any electronic signature complying with the U.S. federal ESIGN Act of 2000, e.g., www.docusign.com).  The contents of this letter shall be governed by the laws of the State of Delaware, without regard to conflicts of laws principles.

Please indicate your acceptance of the terms of this letter by signing and dating this letter and returning a copy to me on or prior to December 17, 2021 (after which the terms of employment offered and contemplated by this letter will automatically, and without any further action by the Company, terminate and be of no further force or effect).

Sincerely,

American Premier Services, Inc.

By: *[signature]*
Name: Ryan Cortner
Its: President


Accepted and Agreed to as of December 17, 2021:

*[signature]*
Ashley Osterholt
135 Ivey Dr
Lineville, AL 36266

cc: Personnel file

**EXHIBIT A**

**Additional Employee Covenants**

In addition to the terms set forth in the foregoing letter, you ("Employee") and the Company Group agree as follows:

1.  Restrictive Covenants.

    a.  Non-Competition. Employee acknowledges and agrees that (x) in the performance of his duties under this letter, (i) he will be brought into frequent contact, either in person, by telephone or through the mails, with existing and potential customers of the Company Group, (ii) will have access to and participate in the creation of trade secrets for the Company Group, and (iii) the services to be rendered by Employee will be special and unique, and (y) his position with the Company Group and the performance of his duties under this letter agreement makes it necessary for the protection of the business of the Company Group that Employee not compete with the Company Group so long as he is employed by the Company Group and not compete with the Company Group for a reasonable period after such employment as provided in this Section 1.

        i.  So long as Employee is employed by the Company Group and for a period of two (2) years thereafter or the maximum shorter period permitted by applicable law, Employee shall not, directly or indirectly, control, manage, operate, be employed or engaged (whether as a consultant, or otherwise) by, or otherwise participate or engage in any business as, or own any interest in, any individual, proprietorship, partnership, corporation, limited liability company, joint venture, trust or any other form of business entity, whether as a proprietor, partner, shareholder, joint venturer, trustee, or in any other capacity whatsoever, if such entity is engaged, anywhere within the Restricted Territory, in any business competitive with, or complimentary to, the business of the Company Group as presently conducted or currently proposed to be conducted at the time Employee's employment by the Company Group is terminated.

        ii. So long as Employee is employed by the Company Group and for a period of two (2) years thereafter or the maximum shorter period permitted by applicable law, Employee shall not, directly or indirectly, (A) solicit customers, active prospects, business or patronage for any Competitive Business within the Restricted Territory, or (B) solicit, divert, entice or otherwise take away any customers, former customers, active prospects, business, patronage or orders of the Company Group or attempt to do so.

    b.  Non-Solicitation; Non-Disparagement. So long as Employee is employed by the Company Group and for a period of two (2) years thereafter or the maximum shorter period permitted by applicable law, Employee shall not, directly or indirectly, (i) hire or solicit to perform services (as an employee, consultant or otherwise) any persons who are or, within the six (6) month period immediately preceding the termination of Employee's employment by the Company Group were, salaried, technical or professional employees, representatives or agents of the Company Group, or take any actions which are calculated to persuade any such salaried, technical or professional employees, representatives or agents of the Company Group to terminate their association with the Company Group, or (ii) make or publish any statement (orally or in writing) that libels, slanders, disparages or

A-1

        otherwise defaces the goodwill or reputation (whether or not such disparagement legally constitutes slander) of the Company Group, or its officers or directors.

    c.    <u>Non-Disclosure</u>.  Employee understands and acknowledges that he has had, and will continue to have, access to certain Confidential Information, the disclosure or use of which may damage the Company Group.  Consequently, as an inducement for the Company Group to enter into this letter agreement, Employee agrees that for the longest period permitted by law following the date hereof, other than as required by law, Employee shall not (a) use any Confidential Information except in furtherance of his duties for the Company Group, nor (b) disclose any Confidential Information except to officers or other employees of the Company Group when it is necessary, in the ordinary course of business, to do so.  Employee (and if deceased, his personal representative) shall promptly, following a request therefor from the Company Group, return to the Company Group, without retaining copies, all tangible items which are or which contain Confidential Information.

    d.    <u>Direct or Indirect Violations</u>.  Employee will be in violation of this Section 1 if he engages in any activity set forth in this Section 1, directly or indirectly, for (i) his own benefit, (ii) for the benefit of any other Person, with respect to which Employee is or becomes a partner, joint venturer, equityholder, manager, director, officer, employee, agent or consultant, or (iii) for the benefit of any other Person in which Employee or any of Employee's spouse, children or parents owns, directly or indirectly, any equity interests.

    e.    <u>Tolling of Covenants</u>.  If a court determines that Employee has violated a restrictive covenant applicable to Employee under this Section 1, then the duration of such restrictive covenant shall automatically be extended by a period of time equal in length to the period during which such violation occurred.

2.    <u>Development of Inventions, Improvements or Know-How</u>.

    a.    <u>Disclosure Obligation</u>.  Employee and his successors, permitted assigns and representatives shall disclose fully and promptly to the Company Group any and all Work Product, including any and all facts, test data, findings, designs, formulas, processes, sketches, drawings, models and figures.

    b.    <u>Assignment</u>.  All Work Product is deemed a work of hire in accordance with the U.S. Copyright Act and is owned exclusively by the Company Group.  If, and to the extent, any of the Work Product is not considered a work of hire, Employee hereby assigns to the Company Group and shall, without further compensation, assign to the Company Group, Employee's entire right, title and interest in and to all Work Product.  At the Company Group's expense and request, Employee shall provide reasonable assistance and cooperation (including the execution of documents) necessary or advisable to obtain, enforce and maintain the Company Group's proprietary rights in the Work Product throughout the world.  Employee hereby appoints the Company Group as his agent and grants to the Company Group a power of attorney for the limited purpose of executing all such documents.

    c.    <u>Publication</u>.  Without the prior written consent of the Company Group, Employee shall not publish or submit for publication or otherwise disclose to any Person other than the Company Group any data or results from Employee's work on behalf of the Company Group.

      d.      <u>Ventures</u>.  If during the period in which Employee is employed by the Company Group, Employee is engaged in or associated with the planning or implementing of any project, program or venture involving the Company Group and another Person, then all rights in the project, program or venture shall, unless the Board expressly waives the Company Group's rights with respect thereto, belong to the Company Group and shall constitute a corporate opportunity belonging exclusively to the Company Group.  Employee shall not be entitled to any interest in such project, program or venture or to any commission, finder's fee or other compensation in connection therewith.

      e.      <u>Miscellaneous</u>.  Nothing in this letter agreement prohibits Employee from reporting possible violations of federal law or regulation to any governmental agency or entity including but not limited to the Department of Justice, the Securities and Exchange Commission, the Equal Employment Opportunity Commission, the Occupational Safety and Health Administration and any Inspector General, or making other disclosures that are protected under the whistleblower provisions of federal law or regulation. Employee does not need the prior authorization of the Company to make any such reports or disclosures and Employee is not required to notify the Company that Employee has made such reports or disclosures.  Pursuant to 18 USC Section 1833(b), Employee will not be held criminally or civilly liable under any federal or state trade secret law for any disclosure of a trade secret that is made (i) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or is made in a complaint or other document that is filed under seal in a lawsuit or other proceeding.  If Employee files a lawsuit for retaliation by the Company for reporting a suspected violation of law, Employee may disclose the Company's trade secrets to Employee's attorney and use the trade secret information in the court proceeding if Employee: (i) files any document containing the trade secret under seal, and (ii) does not disclose the trade secret, except pursuant to court order.

3.    <u>Severability</u>. If any provision of this letter agreement, including this <u>Exhibit A</u> is adjudicated to be invalid or unenforceable by a court of competent jurisdiction, then the remaining provisions will remain in full force and effect.  The invalid or unenforceable provision will, without further action by the Company Group or the Employee, be automatically amended to effect the original purpose and intent of the invalid or unenforceable provision; provided, however, that such amendment will apply only with respect to the operation of such provision in the particular jurisdiction with respect to which such adjudication is made.  Any provision adjudicated invalid or unenforceable only in part or degree shall remain in full force and effect to the extent not adjudicated invalid or unenforceable.

4.    <u>Definitions</u>.

"*Board*" means the board of managers of the Company or, in the absence thereof, the Manager.

"*Business*" means the business (whether conducted or to be conducted in the future) of (a) developing and providing environmental and erosion control products and services, storm water inspection, safety, compliance consulting, quality assurance and related services and (b) providing any other products or services which the Company Group provides, or actively considers providing, during the Employment Period.

"*Company Group*" means the Company and all of its divisions, subsidiaries and affiliates engaged in the Business, if any, as they may exist from time to time, and, as the context may require, the Company's predecessors in interest.

A-3

"*Competitive Business*" means any business, wherever located, that is engaged in the Business or directly competes with, or is complimentary to, the Company Group.

"*Confidential Information*" shall mean all information, including trade secrets, disclosed to Employee or known by Employee as a consequence of or through his relationship with the Company Group, concerning the products, processes or services offered by the Company Group or any of their customers or vendors and which (i) has not been made generally available to the public through no fault of Employee, and is useful or of value to the Company Group's current or anticipated business, research or development activities or of those of any customer or supplier of the Company Group; or (ii) has been identified to Employee as confidential, either orally or in writing.  Confidential Information shall include: computer programs; unpatented inventions, discoveries or improvements; marketing, manufacturing, or organizational research and development, or business plans; sales forecasts; personnel information, including the identity of other employees of the Company Group, their responsibilities, competence, abilities, and compensation; manufacturing techniques; product formulations and product constructions; pricing and financial information; current and prospective customer lists and information on customers or their employees; information concerning planned or pending acquisitions or divestitures; and information concerning purchases of major equipment or property.  Confidential Information shall not include information which: (y) is in or hereafter enters the public domain through no fault of such party; or (z) is obtained by such party from a third party having the legal right to use and disclose the same.

"*Manager*" means Clearwell Fund Management, LLC.

"*Person*" means any natural individual, corporation, partnership, limited liability company, joint venture, association, trust or other entity.

"*Restricted Territory*" means any state within which the business of the Company Group is carried on, or is actively planned to be carried on, at the time of expiration or termination of Employee's employment by the Company.

"*Work Product*" means any and all promotional and advertising materials, catalogs, brochures, plans, customer lists, supplier lists, manuals, handbooks, dealer and distributor lists, inventions, discoveries, improvements, trade secrets, secret processes and any technology, know-how or intellectual property made or developed or conceived of by Employee, in whole or in part, alone or with others, that results from any work he may do for, or at the request of, the Company Group or that relates to the business, operations, activities, research, investigations or obligations of the Company Group.