# EXHIBIT C



# EMPLOYMENT AGREEMENT

This Employment Agreement ("Agreement") is made as of October 4, 2021 between SiFi Networks America LLC, a Delaware limited liability company ("Company"), and Joseph A. Patton, an individual residing at 730 Fowler Mill Road, Bogart, GA 30622 ("Employee" or "you").

WHEREAS, Company desires to employ Employee in the position of a President of Wholesale Sales and Employee desires to be employed by Company in such capacity;

NOW THEREFORE, the parties agree as follows with the intent to be legally bound.

1. <u>Employment</u>. Company hereby employs Employee, and Employee accepts employment with Company, upon the terms and subject to the conditions set forth in this Agreement.

2. <u>Start Date</u>: Employee will commence employment with Company on NOvember 1, 2021 ("Start Date"). *Immigration*: Before and in order to start work, Employee must provide acceptable documentation of identity and authorization to work in the USA.

3. <u>Position and duties.</u> Your title will be President of Wholesale Sales, reporting to the CEO, and you will work remotely, attending meetings at SiFi offices as necessary to meet with members of the team. Your primary role will be to develop a highly successful team to secure new clients for the Company and its affiliates and subsidiaries and nurture existing clients to maximize revenue generating opportunities across Company's and its affiliates' and subsidiaries' assets. Your title, reporting relationships, and duties and responsibilities may be changed from time to time in the discretion of management.

4. <u>Compensation and Benefits.</u>

   a. <u>Base Compensation</u>. Employee's annual base salary will be two hundred, fifty thousand dollars ($250,000) ("Base Compensation") payable monthly on a prorated basis on the last day of each calendar month in accordance with Company's general payroll practices minus withheld taxes and appropriate payroll deductions.

   b. <u>Incentive Compensation</u>. In addition to the Base Compensation, you will receive commission ("Commission") based on the closing of customer contracts as follows:

   i. Two one-hundredths of one percent (0.02%) of aggregate customer contract monthly revenue multiplied by the total term (in months) until the earlier of (x) customer contract expiration, or (y) the date of the customer's first fixed termination right for convenience under such customer contract.

   ii. Commission is paid at the end of the fiscal quarter during which it was earned.

   iii. You shall be included upon your starting date in the Keyman bonus program which in general, provides for the pro rata sharing of one percent (1.00%) of the profit generated from a sale event of the business between those in the Keyman bonus

program at such time, provided you do not resign or are terminated for cause or voluntarily terminate your employment prior to any such event.

    c.    Benefits.

    iv. Employee will be given fifteen (15) days Paid Time Off, exclusive of Federal Holidays.

    v. Employee will be entitled to Paid Sick Leave in accordance with applicable federal law and the laws of the state of the Employee's primary residence.

    vi. The Company is investigating company healthcare plans, which Employee will be given the option to transfer into once this is established. In the interim, healthcare insurance premium expenses can be reimbursed up to One Thousand Five Hundred Dollars ($1,500) per month.

    vii. In the event Company implements a 401(k) plan, you shall be entitled to a monthly contribution from the Company in the amount of One Thousand, One Hundred Dollars ($1,100).

    viii. Up to two (2) round-trip tickets to fly from the USA to the UK once per annum may be provided by the Company.

## 5. Expense Reimbursement

The Company will reimburse Employee for all reasonable and necessary business expenses Employee incurs in the course of performing Employee's duties and responsibilities, including reimbursement at the IRS rate for all authorized business miles driven in Employee's own vehicle, provided Employee submits adequate supporting documentation for all such expenses.

## 6. Term and termination.

    a.    Employment at-will. Employee acknowledges and agrees that no provision contained in this Agreement will entitle Employee to remain in the employ of Company or affect the right of Company to terminate Employee's employment hereunder at any time for any reason. In the event Company terminates Employee without cause but for convenience, Employee shall continue to be paid any earned but unpaid Commission and Base Compensation for a period of up to but not exceeding twenty-four (24) months from the Start Date. There shall be a three hundred and sixty (360) day notice period for any termination for convenience.

    b.    Duration. The term of Employee's employment with Company shall continue from the date hereof without interruption until the earlier event of (i) termination by Company or (ii) Employee's resignation, death, or permanent disability.

"Permanent disability" means a physical or mental disability which, in the reasonable and in good faith determination of the Company, renders the Employee unable to perform the duties of Employee's position for more than one hundred eighty (180) days total in any twelve (12) month period.

    c.    Termination in other circumstances. If Employee's employment with Company is terminated as a result of Employee's resignation, death, or permanent disability, or by Company for "Cause," Employee or Employee's estate, as the case may

Page 2 of 6

be, will be entitled to receive Employee's base salary, Commission earned through the termination date, and benefits through the date of termination and Employee's right to receive any other compensation or benefits hereunder will terminate as of the date of such termination.

7.      Confidential information.

     a.      **Company information.** Employee agrees that at all times of Employee's employment and thereafter, to hold in strictest confidence, and not to use (or attempt to use), except for the benefit of Company, and not to disclose to any person or entity without written authorization of Company, any Confidential Information of Company.

"Confidential Information" means any and all confidential or proprietary knowledge, data, or information of the Company whether having existed, now existing, or to be developed during Employee's employment. By way of illustration but not limitation, Confidential Information includes (a) trade secrets, inventions, ideas, processes, formulas, source and object codes, data, programs, other works of authorship, know-how, improvements, discoveries, developments, designs and techniques, and any other proprietary technology and all proprietary rights therein; (b) information regarding research, development, new products, marketing and selling, business plans, budgets and unpublished financial statements, licenses, prices and costs, margins, discounts, credit terms, pricing and billing policies, quoting procedures, methods of obtaining business, forecasts, future plans and potential strategies, financial projections and business strategies, operational plans, financing and capital-raising plans, activities and agreements, internal services and operational manuals, methods of conducting Company business, suppliers and supplier information, and purchasing; (c) information regarding customers and potential customers of Company, including their identities, customer lists, names, representatives, their needs or desires with respect to the types of products or services offered by Company, proposals, bids, contracts and their contents and parties, the type and quantity of products and services provided or sought to be provided to customers and potential customers of Company, and other non-public information relating to customers and potential customers; (d) information regarding any of Company's business partners and their services, including names, representatives, proposals, bids, contracts and their contents and parties, the type and quantity of products and services received by Company, and other non-public information relating to business partners; (e) information regarding personnel, employee lists, compensation, and employee skills; and (f) any other non-public information which a competitor of Company could use to the competitive disadvantage of Company. Employee further understand that Confidential Information does not include any of the foregoing items that have become publicly known and made generally available publicly through no wrongful act of the Employee.

     b.      Promptly after termination of Employee's employment with Company for any reason, Employee or Employee's personal representative shall return to Company, or at Company's option destroy, any confidential information which is in tangible form (including all memoranda, notes, drawings, drafts, plans, records, reports, computer files, disks, tapes, printouts, software, and all other documents and data constituting, containing, or otherwise relating to any confidential information) and which is then in Employee's possession or control.

8.    <u>Non-Solicitation of clients and employees; non-competition.</u>  Employee agrees that Employee shall not, during Employee's employment with Company and for the longer period of (i) as long as Employee receives compensation from the Company or (ii) twelve (12) months, in each case immediately following the termination of Employee's employment with Company for any reason (whether voluntarily or involuntarily), either directly or indirectly, on Employee's behalf or in the service or on behalf of others:

a.    Solicit any client or customer to transact business with a competitive enterprise or to reduce or refrain from doing any business with Company, or (ii) interfere with or damage (or attempt to interfere with or damage) any relationship between Company and a client or customer, and Employee shall not contact or approach any person or entity for either purpose or authorize or knowingly approve the taking of such actions by any other person or entity; or

b.    Solicit any employee of Company (whether or not such person is a full-time employee and whether or not such employment is at-will or contract-based) to leave their employment with Company, to become employed or engaged by any other person or entity, or to engage in any activity that would cause any such employee to violate any agreement with Company, and Employee shall not approach any such employee for such purpose or knowingly approve of the taking of such action by any other person or entity; or

c.    Whether alone or in conjunction with any other person or entity, or as a partner, officer, director, consultant, agent, employee, stockholder, manager, or member, directly or indirectly engage in any business or activity involving in any manner last-mile fiber optic deployment conducted or operated in the continental United States, or any other location where Company, any subsidiary of Company, or any other Company affiliate is conducting business or actively planning to conduct business.

For purposes of this Section 8, "solicit" means any direct or indirect communication of any kind whatsoever, regardless of by whom initiated, inviting, advising, encouraging, or requesting any person or entity in any manner to take or refrain from taking any action.

For purposes of this Section 8, a "client" or "customer" means (a) any person or entity which at the time of determination is, or was within two (2) years prior to such time, a person or entity with whom Company had a client, customer, municipality, local government or regulatory entity or other strategic relationship (whether or not such strategic relationship has been memorialized in a writing), or (b) any person or entity which at the time of determination (i) had contacted or had been contacted (within the previous six (6) month period) by Company regarding the purchase or installation of Company's products or services, or (ii) who became known to Employee in connection with Employee's relationship with or employment by Company, as a prospective client or customer of Company.

Employee acknowledges and agrees that Company may provide a copy of this Section 8 to any person or entity (a) which Employee may directly or indirectly own, manage, operate, finance, join, control, or participate in the ownership, management, operation, financing, or control of, or (b) with which Employee may be connected as an officer, director, manager, member, employee, partner, principal, agent, representative, consultant, or otherwise, or in connection with which Employee may use or permit Employee's name to be used; provided, however, that this provision shall not apply after expiration of the time periods set forth herein or with respect to any activities,

persons, or entities excluded by the terms hereof. Employee agrees to provide the names and addresses of any of such person or entity as Company may request from time to time.

9. **Representations and warranties of Employee.** Employee represents and warrants to Company that Employee's employment with Company and the signing and delivery of this Agreement, and the fulfillment of the terms of this Agreement, (a) will not constitute a breach of any agreement or other instrument to which Employee is a party or by which Employee is legally bound, and (b) does not require the consent of any person or entity. Employee further represents, acknowledges, and agrees that Employee's employment with Company resulted solely from Employee's decision to contact Company directly regarding potential employment, and not from any prior contact by Company to Employee while Employee was employed by Employee's former employer. Employee agrees that Employee will not contact any employee of Employee's former employer for the purpose of inducing or soliciting such employee to become an employee of Company, and that if Employee is contacted by an employee of Employee's former employer regarding potential employment with Company, Employee will not engage in any discussion of potential employment other than to notify the employee of the requirements imposed upon him by this Agreement and to refer such employee to the person in charge of hiring personnel at Company.

10. **Notices.** All notices, consents, requests, demands, and other communications required or permitted hereunder (a) will be in writing; (b) will be sent by messenger, certified or registered U.S. mail, or a reliable express delivery service (with a copy sent by one of the foregoing means), charges prepaid as applicable, to the appropriate address(es) set forth below; and (c) will be deemed to have been given on the date of receipt by the addressee (or, if the date of receipt is not a business day, on the first business day after the date of receipt), as evidenced by a receipt executed by the addressee (or a responsible person in Employee's home or office), the records of the person delivering such communication or a notice to the effect that such addressee refused to claim or accept such communication, if sent by messenger, U.S. mail, or express delivery service. All such communications will be sent to the following addresses, or to such other addresses as any party may inform the others by giving five (5) business days' prior notice:

If to Company:                                  If to Employee:

SiFi Networks America, LLC          Joe Patton
103 Foulk Road, Suite 500              730 Fowler Mill Road
Wilmington, DE 19803                   Bogart, GA 30622
NOTICES@SiFiNetworks.com       Cell: (678) 523-0341
                                                        Email: joepatton7@gmail.com

11. **Miscellaneous.** This Agreement (a) may be amended only by a writing signed by each of the parties; (b) may not be assigned, pledged, or otherwise transferred by Employee, whether by operation of law or otherwise; (c) may be executed in several counterparts, each of which is deemed an original but all of which constitute one and the same instrument; (d) contains the entire agreement of the parties with respect to the transactions contemplated hereby and supersedes all prior written and oral agreements, and all contemporaneous oral agreements, relating to such transactions; (e) will be governed by, and construed and enforced first in accordance with the laws of the State of Delaware or if the State of Delaware law is not applicable then the laws of the state of Employee's primary residence, in either case without giving effect to any conflict of law rules of the applicable state law; and (f) is binding upon, and will inure to the benefit of, the parties and their respective heirs, successors, and permitted assigns.

12. **No waiver.** The waiver by a party of any breach or violation of any provision of this Agreement will not operate or be construed as a waiver of any subsequent breach or violation

hereof. Whenever possible, each provision of this Agreement will be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement is held to be invalid, illegal, or unenforceable in any jurisdiction, such provision will, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining portions hereof or affecting the validity or enforceability of such provision in any other jurisdiction, and this Agreement will be reformed, construed, and enforced in such jurisdiction as if such invalid, illegal, or unenforceable provision had never been contained herein. More specifically, if any court determines that any of the covenants set forth in Section 8 are overbroad under applicable law in time, geographical scope, or otherwise, the parties to this Agreement specifically agree and authorize such court to rewrite this Agreement to reflect the maximum time, geographical, and/or other restrictions permitted under applicable law to be reasonable and enforceable.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

SIFI NETWORKS AMERICA, LLC

_____
Ben Bawtree-Jobson, CEO

10/4/2021

_____
Joseph A. Patton, Employee

10/4/2021