**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| YIT CHEE WAH, a/k/a Steven Yit, on Behalf of and Solely in His Capacity as the Liquidator of RHODIUM INTERNATIONAL TRADING USA, INC. (IN LIQUIDATION), <br><br> Plaintiff, <br><br> vs. <br><br> FCIA TRADE CREDIT & POLITICAL RISK DIVISION OF GREAT AMERICAN INSURANCE COMPANY (f/k/a FCIA MANAGEMENT COMPANY, INC.) <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CASE NO. <br> _____ |

**<u>COMPLAINT</u>**

Plaintiff, Yit Chee Wah, a/k/a Steven Yit ("Plaintiff" or "Yit"), on behalf of

and solely in his capacity as the Liquidator of Rhodium International Trading USA,

Inc. ("Rhodium USA"), a physical commodity trading company that is now in

official liquidation proceedings in Singapore, by and through his counsel, brings

claims against Defendant, FCIA Trade Credit & Political Risk Division of Great

American Insurance Company (f/k/a FCIA Management Company, Inc.) ("FCIA"), for declaratory judgment and bad faith and respectfully alleges as follows:

## I.   <u>INTRODUCTION</u>

1.    At all relevant times herein, Rhodium USA was engaged in physical commodities trading, acting as an intermediary between suppliers and buyers of commodities such as sugar, soybeans, copper, and coal.

2.    Rhodium USA bought goods from a supplier and thereafter sold the goods to a buyer.

3.    Rhodium USA extended credit to the buyer, permitting the buyer to pay for the goods weeks or months after the goods were delivered.

4.    Commodity traders such as Rhodium USA face the potential risk of non-payment if their customers become insolvent or default on their purchases from Rhodium USA.

5.    In order to protect its balance sheets against non-payment of accounts receivables, Rhodium USA purchased trade credit risk insurance, which provides coverage for instances in which a buyer failed to pay Rhodium USA for goods under the terms of a contract of sale.

6.    The dispute between Rhodium USA and FCIA involves a trade credit insurance policy, the Comprehensive Credit Insurance Policy (MultiBuyer Limits)

with a Policy No. GLMB-123147, which FCIA issued to Rhodium USA with an effective policy period of August 1, 2019 to August 1, 2020 (the "FCIA Policy"). A copy the FCIA Policy, which is subject to verification for completeness and accuracy as may be needed through discovery, is attached hereto as **Exhibit A**.

7.      Rhodium USA has submitted claims under the FCIA Policy for eight (8) separate transactions in which the buyers failed to pay Rhodium USA for goods under the terms of contracts of sale, totaling $20,468,966.92 (collectively, "Claims").

8.      FCIA denied coverage for the Claims.

9.      Plaintiff, on behalf of Rhodium USA, seeks a declaratory judgment that FCIA owes Rhodium USA coverage pursuant to the FCIA Policy and brings a bad faith claim against FCIA for its failure to pay the Claims.

## II.      <u>PARTIES</u>

10.      Plaintiff is the representative of Rhodium USA

11.      At all relevant times, Rhodium USA was and is a corporation that is incorporated in Delaware and has its principal place of business in Georgia.

12.      FCIA was and is a division of Great American Insurance Company, which is a corporation that is incorporated in Ohio, has its principal place of business in Ohio, and is licensed and regularly transacts business in Georgia.

### III.   JURISDICTION AND VENUE

13.     This is an action for declaratory relief pursuant to 28 U.S.C. § 2201.

14.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) based upon the diversity of citizenship of the parties and the provisions of the Federal Declaratory Judgment Act to declare the rights and obligations of the parties under certain policies of insurance.

15.     The amount in controversy is in excess of this Court's minimum jurisdictional amount of $75,000, exclusive of interest, costs, and attorneys' fees.

16.     Venue is proper in the Unites States District Court for the Northern District of Georgia pursuant to 28 U.S.C. § 1391(b)(2) because FCIA is a division of Great American Insurance Company, which is licensed and regularly transact business in Georgia, and issued and delivered the subject insurance policy to Rhodium USA in Fulton County, Georgia.

17.     All conditions precedent to the filing of this action have occurred or have been complied with.

18.     Pursuant to the requirements of 28 U.S.C. § 2202 and Article III, Section 2 of the United States Constitution, a case or controversy exists and has existed between the parties since the beginning of this action, such that an action for declaratory judgment is ripe and appropriate.

- 4 -

## IV.   FACTUAL BACKGROUND

### A.   Rhodium USA's Ownership and Business

19.     Rhodium USA is 100% owned by Rhodium Resources Pte. Ltd.

20.     Rhodium Resources Pte. Ltd. owns Rhodium USA and a number of other companies (collectively, "the Rhodium Entities").

21.     Like Rhodium USA, the Rhodium Entities' core business is the physical trading of commodities.

### B.   The Policy

22.     Based on the information transmitted by Rhodium USA's broker, Marsh, to FCIA, and in consideration of premiums paid by Rhodium USA to FCIA, FCIA issued the FCIA Policy to Rhodium USA.  *See* Exhibit A.

23.     The Policy was issued to Rhodium USA at the following address:

|  |  |
|---|---|
| Insured: | RHODIUM INTERNATIONAL TRADING USA, INC. |
| Address: | 12600 DEERFIELD PARKWAY SUITE 100 ALPHARETTA, GA  30004 UNITED STATES |

*Id.* at Declarations at Item No. 1.

24.     The Policy provides comprehensive credit insurance for the following "[p]roducts:  [a]gricultural commodities, ferrous and non-ferrous metals, and coal." *Id.* at Declarations at Item No. 3.

- 5 -

25.    The Policy's limit of liability is $27,900,000 (principal), plus interest as specified in the Interest Coverage Endorsement.  *See id.* at Declarations at Item No. 4.

26.    The Policy's Insuring Agreement provides:  "[Great American] will indemnify you in accordance with the provisions of Article 6 - Proof and Payment of Claims and Recoveries, for Loss on an Insured Transaction caused by the Default of the Buyer which remains unpaid for the duration of the Waiting Period."  *Id.* at Article 1.

27.    Pursuant to Article 2 of the Policy:

Insured Transaction means a transaction which meets each of the following conditions:

A.    Each shipment and sale of products must be:

1.    shipped to a Buyer during the policy period. Shipment begins when the products are placed en route to the Buyer on the order of you or of any of your agents; and

2.    in conformity with the applicable export laws and regulations and the import laws and regulations of the Buyer's country; and

3.    payable in U.S. dollars or in another Contract Currency; and

4.    evidenced by a Buyer Obligation payable to you in the United States or in another Payment Country; and

5.      within the maximum payment terms permitted and in accordance with the terms of the applicable Credit Limit and the Eligible Country Endorsement.

*Id.* at Article 2.

28.      "Loss" is defined in the Policy to mean:

1.      the amount of the Default on the Buyer Obligation, including interest, if any, accrued and unpaid, and computed at the rate and in the manner specified in the Interest Coverage endorsement, less:

    a.     discounts or other similar allowances; and

    b.     any amount which you have received prior to our claim payment from any source as or towards payment of the amount in Default; and

    c.     any amount which you have received prior to our claim payment from return of product, or from realization of any security on the Insured Transaction; and

    d.     any amount which the Buyer would have been entitled to take into account by way of payment, set-off or counterclaim; and

    e.     any expenses saved by you by non-payment of any agent's commissions or your non-fulfillment of the contract of sale or purchase order;

2.      In the event the Buyer becomes the subject of proceedings under any laws relating to bankruptcy, insolvency, or relief of debt, the amount of the Default on the Buyer Obligation shall not exceed the amount of the Buyer Obligation that has been allowed in the proceedings.

3.      For purposes of calculating a Loss, all Monies received after the date of Default on an Insured Transaction or the date when payment was due and unpaid on any uninsured debt, whichever is earlier, to the date of claim payment shall be applied in chronological order of Due Dates,

regardless of any designation as to application by the Buyer, or other entity from whom such Monies are received.

*Id.* at Article 8.  Definitions at N.

29.     Pursuant to the Policy, "'Buyer' means the entity with whom you have contracted for the sale of products, or for letter of credit transactions, the Issuing Bank."  *Id.* at Article 8.  Definitions at A.

30.     Pursuant to the Policy, "Buyer Obligation" means:

1.      the agreement of the Buyer to pay the Contract Price, together with interest, if any, thereon. The agreement shall be valid and enforceable, when obtained, under the laws of the Buyer's country and of a state, territory, or possession of the United States and shall be set forth in a negotiable instrument (such as a promissory note, draft or bill of exchange) or open account documents (written purchase order, invoice and shipping documents). The purchase order, contract of sale, invoice and shipping documents must indicate your name and the name of the Buyer; or

2.      the agreement of the Issuing Bank to pay a Letter of Credit naming you as beneficiary, under which you have presented documents in conformity with the requirements of the Letter of Credit and which documents have been accepted by the Issuing Bank.

*Id.* at Article 8.  Definitions at B.

31.     Pursuant to the Policy, "'Default' means non-payment, in whole or in part, of the amount of principal or interest, if any, due on a Buyer Obligation in accordance with its terms. Default shall not include any non-payment resulting from

any tax or other charge levied by withholding or otherwise, on a Buyer Obligation.'" *Id.* at Article 8.  Definitions at H.

32.     The Policy contains a Georgia Amendatory Endorsement which deletes the Policy's (a) New York choice of law provision and (b) arbitration provision.  *Id.* at Endorsement No. 6, Georgia Endorsement.

33.     The Policy's Georgia Amendatory Endorsement provides in pertinent part as follows:  "The Policy is amended as follows: [. . .] C.  Article 7, Section F, Choice of Law, is deleted and replaced by the following:  7.F. Choice of Law.  The construction, validity and performance of this Policy shall be governed by and construed in accordance with Georgia law."  *Id.*

34.     The parties agreed to toll the two year time period after the date of Default in which Rhodium USA was required to file a lawsuit against FCIA.  *See id.* at Section A.  *See also* **Exhibit B** (Tolling Agreement).

35.     At all times relevant hereto, all pertinent terms and conditions of the Policy have been satisfied or excused.

36.     The Policy was and remains in full force and effect at all times relevant hereto.

### C.   Underlying Transactions and Claims

37.   This is a declaratory judgment and bad faith action concerning the Claims, which consist of eight (8) trade credit insurance claims arising from instances in which a buyer failed to pay Rhodium USA for goods under the terms of a contract of sale.

38.   Rhodium USA has submitted the following Claims, totaling $20,468,966.92, under the FCIA Policy:

| Invoice Number | FCIA-Assigned Claim No. | Amount | Hereinafter |
|---|---|---|---|
| SIRITUSA1033 | 22969 | $1,480,421.10 | "Invoice 1" |
| SIRITUSA1034 | 22969 | $768,440.00 | "Invoice 2" |
| SIRITUSA1035 | 22970 | $1,697,982.77 | "Invoice 3" |
| SIRITUSA1037 | 22974 | $2,999,480.00 | "Invoice 4" |
| SIRITUSA1038 | 22975 | $2,999,657.70 | "Invoice 5" |
| SIRITUSA1039 | 22973 | $4,523,400.00 | "Invoice 6" |
| SIRITUSA1041 | 22975 | $2,999,703.85 | "Invoice 7" |
| SIRITUSA1042 | 22974 | $2,999,881.50 | "Invoice 8" |

### D.   Claims Submissions and Other Supporting Documentation

39.   On or about April 30, 2021, Marsh, on behalf of Rhodium USA, submitted a completed Notice of Claim and Proof of Loss form for Invoices 1 and 2 and supporting documentation to FCIA.  True and correct copies of the Notice of Claim and Proof of Loss form for Invoices 1 and 2 and supporting documentation submitted by Marsh to FCIA are attached hereto as **Exhibit C**.

40.     On or about May 21, 2021, Marsh, on behalf of Rhodium USA, submitted a completed Notice of Claim and Proof of Loss form for Invoice 3 and supporting documentation to FCIA.  True and correct copies of the Notice of Claim and Proof of Loss form for Invoice 3 and supporting documentation submitted by Marsh to FCIA are attached hereto as **Exhibit D**.

41.     On or about June 16, 2021, Marsh, on behalf of Rhodium USA, submitted a completed Notice of Claim and Proof of Loss form for Invoices 4 and 8 and supporting documentation to FCIA.  True and correct copies of the Notice of Claim and Proof of Loss form for Invoices 4 and 8 and supporting documentation submitted by Marsh to FCIA are attached hereto as **Exhibit E**.

42.     On or about June 18, 2021, Marsh, on behalf of Rhodium USA, submitted a completed Notice of Claim and Proof of Loss form for Invoices 5 and 7 and supporting documentation to FCIA.  True and correct copies of the Notice of Claim and Proof of Loss form for Invoices 5 and 7 and supporting documentation submitted by Marsh to FCIA are attached hereto as **Exhibit F**.

43.     On or about May 31, 2021, Marsh, on behalf of Rhodium USA, submitted a completed Notice of Claim and Proof of Loss form for Invoice 6 and supporting documentation to FCIA.  True and correct copies of the Notice of Claim

and Proof of Loss form for Invoice 6 and supporting documentation submitted by Marsh to FCIA are attached hereto as **Exhibit G**.

**E.    FCIA's Coverage Denials**

**Invoices 1 and 2**

44.    On or about August 2, 2021, Michael Delmendo, Senior Claims Recovery Specialist, on behalf of FCIA, issued a letter, denying coverage for Invoices 1 and 2. In the Denial Letter, FCIA claims that Rhodium has not "established the indebtedness to be a valid and legally enforceable indebtedness of the Buyer in the courts of the Buyer's country" or "receipt of a settlement of the dispute made **with our prior written consent**."  A true and correct copy of the letter from FCIA to Rhodium USA dated August 2, 2021 is attached hereto as **Exhibit H** (emphasis in original).

**Invoice 3**

45.    On or about July 20, 2022, Jason A. Morris, Carlton Fields, P.A., on behalf of FICA, issued a letter, denying coverage for Invoice 3, for the following reasons:

- "[T[here is no coverage for the Claim because the Invoice is not a product of an 'Insured Transaction'" as required by the Policy because the underlying goods were not (i) "shipped to a Buyer during the policy

period" and (ii) "placed en route to the Buyer on the order of" Rhodium Trading or its agent and because Rhodium Trading has not established "a buyer obligation payable to you in the United States or in another Payment Country."

- Article 3-C-2 which precludes coverage "for any loss . . . if, on the date of entering into the Insured Transaction, any amount owing from the Buyer to you on any transaction is overdue: . . . more than 90 days if the Buyer is located in any other country [other than the United States or Canada]" bars coverage for Invoice 3 because "[o]n May 5, 2020, the Buyer's affiliate was more than 90 days overdue to the Rhodium Group in an amount exceeding $200,000."

- Article 3-D-2 which precludes coverage "if, on the date of entering into the Insured Transaction: . . . 2. You have knowledge or information of any circumstances that may reasonably be expected to result in a loss, unless approved by us in writing[]" bars coverage for Invoice 3 because Rhodium Trading knew on May 5, 2020 that the Buyer and its affiliate, Longview Resources (SG) Pte. Ltd., had failed to make timely payments in accordance with their contractual obligations and some amount was more than 90 days overdue.

- "Rhodium Trading has breached its duties to cooperate as set forth in Articles 4 and 7 of the Policy."

- "[T]here is no coverage for the Claim due to the voluminous and material misrepresentations and omissions made by Rhodium Trading to FCIA during the underwriting process, pre-claim process, or claims process for the Agritrade Claim, as set forth in detail above."

- "Rhodium Trading has not established that it incurred a Loss in the amount claimed."

- "Rhodium Trading's proof of Loss for the Claim remains incomplete, despite the passage of almost fourteen months since the Claim was filed, and more than eleven months since FCIA's original August 12, 2021 letter requesting a complete and satisfactory proof of Loss."

- "Article 3-G will apply to bar coverage for the Claim if it is determined that the Buyer and Rhodium Trading are affiliates or subsidiaries."

- Coverage will be denied "should it be determined that the money allegedly owed under the Invoice can be set off."

A true and correct copy of the letter from FCIA to Rhodium dated July 20, 2022 is attached hereto as **Exhibit I**.

**Invoices 4 and 8**

46.     On or about July 25, 2022, Jason A. Morris, Carlton Fields, P.A., on behalf of FICA, issued a letter, denying coverage for Invoices 4 and 8, for the following reasons:

- "[T[here is no coverage for the Claim because the Invoice is not a product of an 'Insured Transaction'" as required by the Policy because the underlying goods were not (i) "shipped to a Buyer during the policy period" and (ii) "placed en route to the Buyer on the order of" Rhodium Trading or its agent, and because Rhodium Trading has not established "a Buyer obligation payable to you in the United States or in another Payment Country."

- Article 3-D-2 which precludes coverage "if, on the date of entering into the Insured Transaction: . . . 2. You have knowledge or information of any circumstances that may reasonably be expected to result in a loss, unless approved by us in writing[]" bars coverage for the Claim because Rhodium Trading knew on the dates it entered into the transactions underlying Invoices 4 and 8 that the Buyer had failed to make timely payments in accordance with its contractual obligations and some amount was more than 90 days overdue.

- "Rhodium Trading has breached its duties to cooperate as set forth in Articles 4 and 7 of the Policy."

- "[T]here is no coverage for the Claim due to the voluminous and material misrepresentations and omissions made by Rhodium Trading to FCIA during the underwriting process, pre-claim process, or claims process for the Agritrade Claim, as set forth in detail above."

- "Rhodium Trading has not established that it incurred a Loss in the amount claimed."

- "Rhodium Trading's proof of Loss for the Claim remains incomplete, despite the passage of more than thirteen months since the Claim was filed, and more than eleven months since FCIA's original August 19, 2021 letter requesting a complete and satisfactory proof of Loss."

A true and correct copy of the letter from FCIA to Rhodium USA dated July 25, 2022 is attached hereto as **Exhibit J**.

## **Invoices 5 and 7**

47.     On or about July 28, 2022, Jason A. Morris, Carlton Fields, P.A., on behalf of FCIA, issued a letter, denying coverage for Invoices 5 and 7, for the following reasons:

- "[T[here is no coverage for the Claim because the Invoices are not a product of an 'Insured Transaction'" as required by the Policy because the underlying goods were not (i) "shipped to a Buyer during the policy period" and (ii) "placed en route to the Buyer on the order of" Rhodium Trading or its agent, and because Rhodium Trading has not established "a Buyer Obligation payable to you in the United States or in another Payment Country."

- "Rhodium Trading has breached its duties to cooperate as set forth in Articles 4 and 7 of the Policy."

- "[T[here is no coverage for the Claim due to the voluminous and material misrepresentations and omissions made by Rhodium Trading to FCIA during the underwriting process, pre-claim process, or claims process for the Agritrade Claim, as set forth in detail above."

- Article 3-D-2 which precludes coverage "if, on the date of entering into the Insured Transaction: . . . 2. You have knowledge or information of any circumstances that may reasonably be expected to result in a loss, unless approved by us in writing[]" bars coverage for Invoice 7 because Rhodium Trading knew on July 9, 2020 when entered into the transaction underlying Invoice 7 that the Buyer had failed to make timely payment in accordance

with its contractual obligations and some amount was more than 90 days overdue.

- "Rhodium Trading has not established that it incurred a Loss in the amount claimed."

- "Rhodium Trading's proof of Loss for the Claim remains incomplete, despite the passage of more than thirteen months since the Claim was filed, and more than eleven months since FCIA's original August 20, 2021 letter requesting a complete and satisfactory proof of Loss."

A true and correct copy of the letter from FCIA to Rhodium USA dated July 28, 2022 is attached hereto as **Exhibit K**.

<u>**Invoice 6**</u>

48.     On or about July 11, 2022, Jason A. Morris, Carlton Fields, P.A., on behalf of FICA, issued a letter, denying coverage for Invoice 6, for the following reasons:

- "[T[here is no coverage for the Claim because the Invoice is not a product of an 'Insured Transaction'" as required by the Policy because the underlying goods were not (i) "shipped to a Buyer during the policy period" and (ii) "placed en route to the Buyer on the order of" Rhodium Trading or its agent, and because Rhodium Trading has not established "a

- 18 -

Buyer Obligation payable to you in the United States or in another Payment Country."

- Article 3-C-2 which precludes coverage "for any loss . . . if, on the date of entering into the Insured Transaction, any amount owing from the Buyer to you on any transaction is overdue: . . . more than 90 days if the Buyer is located in any other country [other than the United States or Canada]" bars coverage for Invoice 6 because "[o]n June 23, 2020, the Buyer was more than 90 days overdue to the Rhodium Group in an amount exceeding €4,000,000 and $200,000."

- Article 3-D-2 which precludes coverage "if, on the date of entering into the Insured Transaction: . . . 2. You have knowledge or information of any circumstances that may reasonably be expected to result in a loss, unless approved by us in writing[]" bars coverage for Invoice 6 because Rhodium Trading knew on June 23, 2020 that the Buyer and its affiliate, Longview Resources (Labuan) Ltd., had failed to make timely payments in accordance with their contractual obligations and $200,403.32 was more than 90 days overdue from the Buyer.

- "Rhodium Trading has breached its duties to cooperate as set forth in Articles 4 and 7 of the Policy."

- "[T]here is no coverage for the Claim due to the voluminous and material misrepresentations and omissions made by Rhodium Trading to FCIA during the underwriting process, pre-claim process, or claims process for the Agritrade Claim, as set forth in detail above."

- "Rhodium Trading has not established that it incurred a Loss in the amount claimed."

- "Rhodium Trading's proof of Loss for the Claim remains incomplete, despite the passage of almost a year since the Claim was filed, and more than nine months since FCIA's original September 24, 2021 letter requesting a complete and satisfactory proof of Loss."

- "Article 3-G will apply to bar coverage for the Claim if it is determined that the Buyer and Rhodium Trading are affiliates or subsidiaries."

- Coverage will be denied "should it be determined that the money allegedly owed under the Invoice can be set off."

A true and correct copy of the letter from FCIA to Rhodium USA dated July 11, 2022 is attached hereto as **Exhibit L**.

49.    On or about July 7, 2022, counsel provided written notification to FCIA that it faces liability for its bad faith failure to pay the claim for Invoice No. 2 (SIRITUSA 1034)  pursuant to O.C.G.A. § 33-4-6- if FCIA fails to pay the claim

within sixty (60) of this demand.  A true and correct copy of the letter from Rhodium USA to FCIA dated July 7, 2022 is attached hereto as **Exhibit M**.

50.     On or about July 19, 2022, counsel provided written notification to FCIA that it faces liability for its bad faith failure to pay the claim for Invoice Nos. 1 (SIRITUSA 1033), 3 (SIRITUSA 1035), 4 (SIRITUSA 1037), 5 (SIRITUSA 1038), 6 (SIRITUSA 1039), 7 (SIRITUSA 1041), and 8 (SIRITUSA 1042) pursuant to O.C.G.A. § 33-4-6- if FCIA fails to pay the claims within sixty (60) of this demand.  A true and correct copy of the letter from Rhodium USA to FCIA dated July 19, 2022 is attached hereto as **Exhibit N**.

51.     As of the date of this filing, FCIA has not paid any of the Claims or withdrawn its coverage denials.

## COUNT ONE

## DECLARATORY JUDGMENT – DUTY TO INDEMNIFY FOR THE UNDERLYING TRANSACTIONS

52.     Rhodium USA realleges and reincorporates the allegations contained in Paragraphs 1 to 51 as if fully set forth herein.

53.     Rhodium USA seeks a declaratory judgment relating to the present controversy.

54.     There is a bona fide, actual, justiciable, and present controversy between the parties concerning the interpretation of the FCIA Policy.

55.     Accordingly, Rhodium USA requests a judgment in its favor declaring:

A. Rhodium USA is an insured under the FCIA Policy;

B. The FCIA Policy's Georgia Amendatory Endorsement is valid and enforceable;

C. The FCIA Policy's choice of law and arbitration provision are not enforceable and are void as a matter of law;

D. The Claims each constitute an "Insured Transaction" pursuant to the FCIA Policy;

E. The FCIA Policy provides coverage for the losses and damages arising from the Claims;

F. FCIA has breached its duty to indemnify Rhodium USA for the Claims;

G. Rhodium USA has complied with all its contractual obligations under the FCIA Policy;

H. By virtue of FCIA's acts, omissions, and breaches, Rhodium USA is excused from all conditions allegedly imposed by the FCIA Policy;

I. The FCIA Policy is a primary insurance policy and not an excess insurance policy;

J.  There is no "other insurance" available to Rhodium USA; and

K. Rhodium USA's losses and damages are covered under the FCIA Policy.

## <u>COUNT TWO</u>

### BAD FAITH

56.     Rhodium USA realleges and reincorporates the allegations contained in Paragraphs 1 to 55 as if fully set forth herein.

57.     FCIA owed Rhodium USA a duty of good faith with respect to its performance of its contractual obligations under the FCIA Policy.

58.     The Claims are covered by the FCIA Policy.

59.     FCIA's denial of coverage for the Claims was in bad faith.

60.     FCIA breached its duty of good faith in the performance of its obligations under the FCIA Policy in bad faith because FCIA knew it had no legitimate basis for refusing to provide coverage for the Claims.  Further, FCIA (among other things) failed to conduct an adequate investigation of Rhodium USA's claims, failed to properly evaluate the Claims, applied an unreasonably restrictive construction of the FCIA Policy's provisions, applied an unreasonably broad construction of the FCIA Policy's exclusions, created unreasonable reasons to deny the Claims, and/or relied on ambiguous, inapplicable,  unenforceable, and/or non-

existent Policy provisions in an effort to avoid its contractual obligations and deny the Claims.  FCIA's conduct constitutes a bad faith breach of the FCIA Policy.

61.     Rhodium USA has suffered damages as a result of FCIA's bad faith denial of coverage.

62.     Rhodium USA provided written notices of its intention to assert claims for bad faith penalties and attorneys' fees pursuant to O.C.G.A. § 33-4-6 if FCIA continued to refuse to pay the Claims.  *See* Exhibits N and O.

63.     Notwithstanding receipt of the bad faith notices, FCIA refused to pay the Claims.

64.     FCIA is liable to Rhodium USA for bad faith denial of coverage for the Claims pursuant to the FCIA Policy.

65.     As a direct and proximate result of FCIA's bad faith breaches, Rhodium USA has suffered and will continue to suffer extensive damages, which continue to accrue in the form of attorney's fees and costs related to this litigation, and Rhodium USA is entitled to compensatory, statutory, and punitive damages, including, but not limited to, the Policy limits, lost profits, attorneys' fees, costs, expenses, in amounts to be determined by a jury, and such further relief as the Court deems just, equitable, and proper.

## **JURY DEMAND**

Rhodium USA demands a trial by jury on all issues so triable pursuant to Federal Rule of Civil Procedure 38.

## **PRAYER FOR RELIEF**

WHEREFORE, Rhodium USA prays for judgment against FCIA as follows:

A.     A declaratory judgment in its favor as identified therein.

B.     Judgment in its favor on all causes of action identified herein;

C.     Compensatory, statutory, and punitive damages, including, but not limited to, lost profits, in amounts to be determined by a jury;

D.     Attorneys' fees, costs, expenses, in amounts to be determined by a jury;

E.     Such further relief as the Court deems just, equitable, and proper.


Dated:  March 2, 2023                    Respectfully submitted,


                                        */s/ D. Austin Bersinger*
                                        D. Austin Bersinger
                                        Georgia Bar No. 144792
                                        BARNES & THORNBURG LLP
                                        3340 Peachtree Road N.E., Suite 2900
                                        Atlanta, Georgia 30326
                                        Telephone:  (404) 264-4082
                                        Facsimile:   (404) 264-4033
                                        Email:     austin.bersinger@btlaw.com