# EXHIBIT F

## GREAT AMERICAN INSURANCE COMPANY

### NOTICE OF CLAIM AND PROOF OF LOSS

SHORT-TERM COMPREHENSIVE/SHORT-TERM POLITICAL RISK/SHORT-TERM COUNTRY LIMIT
AND RECEIVABLE PURCHASE CREDIT INSURANCE POLICY

Please complete each section of this Proof of Loss form relevant to your claim. A complete and accurate Proof of Loss will facilitate processing your claim. Please contact your insurance agent or broker, or the Insurer's servicing company, FCIA Management Company, Inc., if you have any questions.

A. NAMES AND ADDRESSES (please provide In full)

1. Insured: Rhodium International Trading USA, Inc          Contact: Cheam Hing Lee

   Address: 16192 Coastal Highway Lewes, Delaware 19958 County of Sussex, United Stated

   Telephone: +65 6239 9388     Fax: N/A     E-Mail: cheam@rhodiumresources.con

2. Buyer/Issuing Bank: Quan Jun Da Industrial Co., Ltd.          Contact: N/A

   Address: 18/F Intercontinental Office Building, No. 108, Guangda Road, Taijiang District, Fuzhou, Fujian, 35000

   Telephone: N/A     Fax: N/A     E-Mail: N/A

3. Assignee : White Oak Trade Finance LLC          Contact: N/A

   Address: 3 Embarcadero Center, 5th Floor, San Francisco, CA 94111

   Telephone: N/A     Fax: N/A     E-Mail: N/A

4. Broker Name: Marsh USA Inc.          Contact: Dan Carrier

   Address: 1166 Ave of the Americas, New York, NY, 10036

   Telephone: +1 718 964 8920 N/A     Fax: N/A     E-Mail: Daniel.M.Carrier@marsh.com

B. CERTIFICATIONS OF INSURED

I represent that the information on this Proof of Loss is complete and accurate.

NOTE: Several states require that we include a statement specified by statute and these appear at the end of this form.

Name: Cheam Hing Lee          Title: Director

Authorized Signature: *[signature]*          Date: 18-Jun-2021

C. POLICY INFORMATION

Policy No.: GLMB-123147

Policy Period for Claimed Shipments: 08 / 01 / 2019 to 08 / 01 / 2020
            Month  Day  Year      Month  Day  Year

Deductible Amount: $ 0     DCL Amount: $ N/A     SBCL Amount: $ 6,000,000     Country Limit: $ 21,300,000

Any limits in effect are noncumulative. Only one credit limit can be in effect for a buyer/issuing bank on the date of shipment.

D.  CLAIM INFORMATION
Please submit copies of the following documents if relevant to your claim.  Information concerning collection efforts is requested later in Item 8.

1.  Buyer Obligation

    (a)  Invoice                            ☒ Enclosed          ☐ Not Applicable
    (b)  Draft                              ☐ Enclosed          ☒ Not Applicable
    (c)  Acceptance Advice                  ☐ Enclosed          ☒ Not Applicable
    (d)  Nonpayment Advice                  ☐ Enclosed          ☒ Not Applicable
    (e)  Promissory Note                    ☐ Enclosed          ☒ Not Applicable
    (f)  Letter of Credit                   ☐ Enclosed          ☒ Not Applicable
    (g)  Contract of Sale/                  ☒ Enclosed          ☐ Not Applicable
         Purchase Orders

2.  Other Documents

    (a)  Bill of Lading                     ☒ Enclosed          ☐ Not Applicable
    (b)  Evidence of Interest               ☐ Enclosed          ☒ Not Applicable
         Obligation (if Interest
         Coverage Is Claimed)
    (c)  Copy of Payment Demand             ☒ Enclosed          ☐ Not Applicable
         to Buyer and Collection            Please List:_____
         documents.

3.  Special Conditions

    (a)  Security Interest                  ☐ Enclosed          ☒ Not Applicable
    (b)  Guaranty                           ☐ Enclosed          ☒ Not Applicable

                                            Guarantor Name: _____

    (c)  Import Permit/License/             ☐ Enclosed          ☒ Not Applicable
         Registration
    (d)  Other Special Conditions           ☐ Enclosed          ☒ Not Applicable

4.  Please identify product(s) shipped under the claimed transaction(s):__Please see attached Contracts :__

5.  If transactions claimed are under an SBCL, indicate SBCL amount: $_6,000,000_____

    and effective date:_01-Oct-2019_____.

6.  If transactions claimed are under your DCL, you must demonstrate compliance by submitting credit information or ledger experience.

    a)  Credit Information Option: Credit Information obtained from sources listed on your DCL endorsement must be dated within the 12 month period prior to shipment.  Please list each source of credit information and its date.

| Source | Date |
|--------|------|
| N/A    | N/A  |
| N/A    | N/A  |
| N/A    | N/A  |

    b)  Ledger Experience Option: Section G (Ledger Experience Worksheet) maybe used to list ledger experience or you may submit other documents.  Please note instructions in Section G.

7.  Reason for non-payment.  Include all communications with buyer:_____

_Buyer defaulted on payments on the payment due date and waiting period had lapsed._

8.  If the buyer disputes owing any amount claimed, please explain in a cover letter.

E.  SCHEDULE OF SHIPMENTS / RECEIVABLE PURCHASES

Include a listing of all outstanding shipments/receivable purchases made to the buyer.  If one is not available the outstandings must be listed on this form.

Interest calculations reflecting the dollar amount of the contract interest due for each Invoice must be included in the appropriate column below.

| Invoice Number | Shipment/ Purchase Date | Contract Amount | Payment Terms | Due Date(s) | Interest from Due Date to 180 Days After Due Date | Partial Payment(s) | Month Shipment/ Purchase Reported |
|---|---|---|---|---|---|---|---|
| Please see | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Are there any uninsured amounts with this buyer?     ⊗  No    θ  Yes

If yes, please complete: What is the amount? $_N/A_____

Why is the amount uninsured?_N/A_____

F.  CALCULATION OF ELIGIBLE LOSS

| | |
|---|---|
| Total contract amount of all shipments: | USD 5,999,361.55 |
| (+) Plus interest at _N/A_ to due date: (Contract Rate) | Nil |
| (+) Plus interest at _1%_ from due date to 180 days after due date: (Contract Rate) | USD 354,261.69 |
| (-) Minus | |
| a)  Total buyer payments: | USD 1,800,000.00 |
| b)  Other credits, discounts and allowances: | Nil |
| c)  Funds received from other sources: | Nil |
| d)  Savings due to non-payment of agent's commission: | Nil |
| Net Loss: | USD 4,553,623.24 |
| Net loss @ Insured Percentage _80_ %: | USD 3,642,898.59 |

G.  LEDGER EXPERIENCE WORKSHEET (DCL ONLY)

List all shipments made during the 12 months prior to the first claimed shipment.  You may submit your ledger experience on another document, such as a printout from your accounts receivable system, if it includes all information requested below.  Please include the highest credit balance and days to pay.

| Invoice No. | Amount | Payment Terms | Shipment Date | Original Due Date(s) | Amount Paid | Date Paid |
|---|---|---|---|---|---|---|
| N/A | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

Please state the limit established based on 200% of the highest amount owed at any one time and paid promptly:  N/A

READ the applicable Fraud Warning Statement for the state in which your application or claim is being made before executing and submitting either attached document to the insurer or your agent.

**WARNINGS BY STATE**

**ALABAMA**
**§27-12A-20**
Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof.

**ALASKA**
**§21.36.380**
A person who knowingly and with intent to injure, defraud, or deceive an insurance company files a claim containing false, incomplete, or misleading information may be prosecuted under state law.

**ARIZONA**
**§20-466.03**
For your protection, Arizona law requires the following statement to appear on this form. Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties.

**ARKANSAS**
**§23-66-503**

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**CALIFORNIA**
**§1871.2**
**§1879.2**

For your protection, California law requires the following to appear on this form: Any person who knowingly presents a false or fraudulent claim for payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**COLORADO**
**§10-1-128**

It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policy- holder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

**DELAWARE**
**11§913**

Any person who knowingly, and with intent to injure, defraud or deceive any insurer, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

**DISTRICT OF COLUMBIA**
**§22-3225.09**

WARNING: It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

**FLORIDA**
**§817.234**

Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

**IDAHO**
**§41-1331**

Any person who knowingly, and with intent to defraud or deceive any insurance company, files a statement containing any false, incomplete, or misleading information is guilty of a felony.

**INDIANA**
**§27-2-16-3**

A person who knowingly and with intent to defraud an insurer files a statement of claim containing any false, incomplete, or misleading information commits a felony.

| | |
|---|---|
| **KENTUCKY**<br>§304.47-030 | Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.<br>Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime. |
| **LOUISIANA**<br>§40:1424 | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **MAINE**<br>§2186(3)(A) | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits. |
| **MARYLAND**<br>§27-805 | Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **MINNESOTA**<br>§60a.955 | A person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime. |
| **NEW HAMPSHIRE**<br>§402:82 | Any person who, with a purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA638:20. |
| **NEW JERSEY**<br>§17:33A-6 | Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties. |
| NJAC 11:16-1.2 | Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties. |
| **NEW MEXICO**<br>§59A-16C-8 | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties. |

**NEW YORK**
**§403(d)**

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

**OHIO**
**§3999.21**

Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

**Bulletin 92-3**

H.B. 259 permits insurers to comply with the warning requirement by using an addendum to an application or claim form, as long as it is actually attached to the form and otherwise satisfies the statute's requirements. An addendum may be used indefinitely, as may stamps and stickers.

**OKLAHOMA**
**§3613.1**

WARNING: Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**PENNSYLVANIA**
**§18-4117**

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**RHODE ISLAND**
**§27-29-13.3**

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**TENNESSEE**
**§56-53-111**

It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

**TEXAS**
**§704.002(a)**

Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**VIRGINIA**
**§52-40**

It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

**WASHINGTON**
**§48.135.080**

It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

**WEST VIRGINIA**
**§33-41-3**

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.





✉ clientservices@lloydslistintelligence.com

# Vessel Report

Your vessel report for 'Starlight'



*Downloaded by vivian@rhodiumresources.com
on 16 June 2021*

Customised to include:

✓ Movements

*This report is strictly confidential and supplied subject to our terms and conditions.
Lloyd's is the registered trademark of the Society incorporated by the Lloyd's Act 1871 by the name of Lloyd's.*

Lloyd's List Intelligence
Seasearcher

Vessel Report - Starlight

CONFIDENTIAL

# Vessel Overview

## Starlight – Summary
**Last Updated:** 14 Jun 2021

| | | | |
|---|---|---|---|
| LLI NO | 344645 | IMO | 9279484 |
| Flag: | Cyprus | Vessel Type | bulk carrier |
| Status: | Live | Reg. Owner | Light Shipping Limited |
| Built | 2004 | DWT | 75611 |
| GT | 38851 | Hull Type | Double Bottom |
| Latest AIS message type | A | | |

## Registration
**Last Updated:** 14 Jun 2021

Name:    Starlight

Name history:

| Name | From | Until |
|---|---|---|
| Star of Nippon | Before 05 May 2004 | Before 01 Dec 2018 |
| Wismar Winner | 02 Jan 2002 | Before 04 May 2004 |
| Yard No.1211 Sanoyas | Before 01 Jan 2002 | 01 Jan 2002 |

Flag:    Cyprus

Flag Official Number:    9279484

Flag history:

| Flag | Flag Official Number | Call Sign | MMSI | Port of registry | From | Until |
|---|---|---|---|---|---|---|
| PAN | 41816TJ | 3FBS4 | 372580000 | Panama | Before 28 Mar 2011 | Before 04 Jul 2011 |
| CYP | | P3TM9 | 210872000 | Limassol | Before 01 Jan 2002 | Before 27 Mar 2011 |

| | | | |
|---|---|---|---|
| Call Sign | P3TM9 | IMO | 9279484 |
| MMSI | 210872000 | Port of registry | Limassol |

## Vessel Movements
**Last Updated:** 16/06/2021 03:54:48 (GMT)

| | | | |
|---|---|---|---|
| Region | Far East - China Sea | Lat/Lng: | 24° 24' 45" N 118° 3' 7" E |
| Nearest port | Zhangzhou, China  0.0891nm | Status | stopped |

© 2021 Informa UK Ltd, All rights reserved. Downloaded by: vivian@rhodiumresources.com

2

Lloyd's List Intelligence
Seasearcher

Vessel Report - Starlight

CONFIDENTIAL

## Ports & Passings

| Status and Distance | Port | Type | From | To | Duration | Destination | Country | Details |
|---|---|---|---|---|---|---|---|---|
| called at | Hong Kong | Port | 15:24 (GMT) 26/06/20 | 20:20 (GMT) 26/06/20 | 4 hours | - | China (GMT +08H) | |
| called at | Tanjung Bara | Port | 03:04 (GMT) 20/06/20 | 06:23 (GMT) 21/06/20 | 1 day | Hong Kong ETA: 26/06/20 | Indonesia (GMT +07H) | |
| called at | Yangpu Anch. | Anchorage | 10:02 (GMT) 13/06/20 | 11:10 (GMT) 14/06/20 | 1 day | Tanjung Bara ETA: 20/06/20 | China (GMT +08H) | Anchored |
| called at | Basuo | Port | 18:12 (GMT) 09/06/20 | 04:59 (GMT) 13/06/20 | 3 days | Yangpu Anch. ETA: 13/06/20 | China (GMT +08H) | |
| called at | Tanjung Bara | Port | 09:15 (GMT) 27/05/20 | 06:22 (GMT) 29/05/20 | 1 day | Basuo ETA: 09/06/20 | Indonesia (GMT +07H) | |
| called at | Zhongjiagang | Port | 09:07 (GMT) 16/05/20 | 03:56 (GMT) 20/05/20 | 3 days | Tanjung Bara ETA: 27/05/20 | China (GMT +08H) | |
| called at | Changjiangkou Anch. | Anchorage | 20:00 (GMT) 15/05/20 | 08:07 (GMT) 15/05/20 | 12 hours | Zhongjiagang ETA: 16/05/20 | China (GMT +08H) | Anchored |
| called at | Dongjiakou | Port | 18:46 (GMT) 12/05/20 | 11:29 (GMT) 13/05/20 | 16 hours | Changjiangkou Anch. ETA: 14/05/20 | China (GMT +08H) | |
| called at | Dongjiakou Anch. | Anchorage | 21:09 (GMT) 10/05/20 | 18:40 (GMT) 11/05/20 | 21 hours | Dongjiakou ETA: 12/05/20 | China (GMT +08H) | Anchored |

## Vessel Sightings

| Status and Distance | Port | Type | From | To | Duration | Destination | Country |
|---|---|---|---|---|---|---|---|

There is no data available.

© 2021 Informa UK Ltd, All rights reserved. Downloaded by: vivian@rhodiumresources.com

Page 2

CODE NAME: "CONGENBILL" EDITION 1994

| Shipper | BILL OF LADING | B/L No. |
|---|---|---|
| PT KALTIM PRIMA COAL<br>BAKRIE TOWER 15 FLOOR<br>JL H R RASUNA SAID<br>JAKARTA 12940 INDONESIA | TO BE USED WITH CHARTER-PARTIES<br>Reference No | 073CHN20 |

Consignee

TO ORDER

**FIRST ORIGINAL**

Notify Party

ANHUI TECHNOLOGY IMP. AND EXP. CO., LTD.

459 WEST CHANGJIANG RD., HEFEI CHINA

OR

HUAXIANG GLOBAL LIMITED

11/F, SIMSONS COMMERCIAL BUILDING,

139 JOHNSTON ROAD, WANCHAI, HONG KONG

| Name of Vessel | Port Of Loading |
|---|---|
| MV STARLIGHT | TANJUNG BARA, EAST KALIMANTAN, INDONESIA |

Port of discharge

HAIKOU OR DONGFANG OR GUANGDONG OR QINZHOU OR MEIZHOUWAN PORT, CHINA

| Shipper's description of goods | GROSS WEIGHT |
|---|---|
| INDONESIAN STEAM COAL | 64,998 MT |
| CLEAN ON BOARD<br>FREIGHT PAYABLE AS PER CHARTER PARTY | |

(of which .... on deck at Shipper's risk;the carrier not being responsible for loss or damage howsoever arising)

Freight payable as per
CHARTER PARTY dated

FREIGHT ADVANCE.
Received account of freight:

................................................
Time used for loading.......... days ....... Hours

Printed and sold
By Wytt Zonen B.V., Rotterdam (phone;31-010-4252827)
by the authority of the Baltic and international maritime
Council (BIMCO), Copenhagen

**SHIPPED** at the Port of Loading in apparent good order and condition on board the Vessel for carriage to the Port of Discharge or so near there to as she may safely get the goods specified above Weight, measure, quality, quantity, condition, contents and value unknown IN WITNESS where of the Master or Agent of the said Vessel has signed the number of Bills of Lading indicated below all of his tenor and date, any one of which being accomplished the others shall be void.
FOR CONDITIONS OF CARRIAGE SEE OVERLEAF

| Freight payable at | Place and date of issue |
|---|---|
| | TANJUNG BARA, EAST KALIMANTAN, INDONESIA ; MAY 29, 2020 |
| Number of original Bs/L | Signature |
| 3 (Three) | As agent for and on behalf of<br>Master of MV STARLIGHT<br>Capt. BUSANIA, FRANCISCO DELA CRUZ<br>(AS AGENT) |

**BILL OF LADING**
TO BE USED WITH CHARTER-PARTIES
CODE NAME:"CONGENBILL"
EDITION 1994

ADOPTED BY THE BALTIC AND INTERNATIONAL
MARITIME COUNCIL (BIMCO)

## Conditions of Carriage

(1) All the terms and conditions, liberties and exceptions of the Charter Party, dated as overleaf, including the law and Arbitration Clause, are herewith incorporated.

(2) General Paramount Clause.

   (a) The Hague Rules contained in the International Convention for the Unification of certain rules relating to Bill of Lading, dated Brussels the 25th August 1924 as enacted in the country of shipment shall apply to this Bill of Lading. When no such enactment is in force in the country of shipment, the corresponding legislation of the country of destination shall apply, but in respect of shipments to which no such enactments are compulsorily applicable, the terms of the said Convention shall apply.

   (b) Trades where hague-Visby rules apply.
   In trades where the International Brussels Convention 1924 as amended by the Protocol signed at Brussels on February 23rd 1968-the Hague-Visby Rules - apply compulsorily, the provisions of the respective legislations shall apply to this Bill of Lading.

   (c) The Carrier shall in no case be responsible for loss of or damage to the cargo, howsoever arising prior to loading into and after discharge from the Vessel or while the cargo is in the charge of another Carrier, nor in respect of deck cargo or live animals.

(3) General Average.
   General Average shall be adjusted, stated and settled according to York-Antwerp Rules, 1994, or any subsequent modification thereof, in London unless another place is agreed in the Charter Party.
   Cargo's contribution to General Average shall be paid to the carrier even when such average is the result of a fault,neglect or error of the Master, Pilot or Crew. The Charterers, Shippers and Consignees expressly renounce the Belgian Commercial Code, Part II, Art. 148.

(4) New Jason Clause.
   In the even of accident, danger,damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever whether due to negligence or not, for which, or for the consequence of which. the Carrier is not responsible, by statute, contract or otherwise. the cargo, shippers, consignees or the owners of the cargo shall contribute with the Carrier in General Average to the payment of any sacrifices. losses or expenses of a General Average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the cargo.
   If a salving vessel is owned or operated by the Carrier, salvage shall be paid for as fully as if the said salving vessel or vessels belonged to strangers Such deposit as the Carrier, or his agents, may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the cargo, shippers, consignees or owners of the goods of the Carrier before delivery.

(5) Both-to-Blame Collision Clause.
   If the vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, neglect or default of the Master, Mariner, Pilot or the servants of the Carrier in the navigation or in the management of the Vessel, the owners of the cargo carried hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying vessel or her owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said cargo, paid or payable by the other or non-carrying vessel or her owners to the owners of said cargo and set-off, recouped or recovered by the other or non-carrying vessel or her owners as part of their claim against the carrying Vessel or the Carrier.
   The foregoing provisions shall also apply where the owners, operators,or those in charge of any vessel or vessels or objects other than, or in addition to the colliding vessels or objects are at fault in respect of a collision or contact.

For particulars of cargo, freight
destination, etc.,see overleaf.





Rhodium International Trading USA, Inc.

| | | |
|---|---|---|
| Mailing address: | Registered address: | (p) +65 62399388 |
| P O Box 110 | 16192 Coastal Highway | (f) +65 6438 0946 |
| 3070 Windward Plaza | Lewes, Delaware 19958 | (w) www.rhodiumresources.com |
| Suite F | County of Sussex | Registration No. 7529127 |
| Alpharetta, GA 30005 | United States | |
| United States | | |

# PURCHASE CONTRACT

**Contract Number**     PRITUSA1655-801                          **Date**  11 JUN 2020

**The Buyer:**
**Mailing address:**
P O Box 110 3070 Windward Plaza Suite F
Alpharetta, GA 30005 United States

**Registered Address:**
**Rhodium International Trading USA, Inc.**
16192 Coastal Highway Lewes, Delaware 19958
County of Sussex United States

**The Seller:**
**Yeskey Enterprises Limited**
Unit 1601, 16/F, Comweb Plaza
12 Cheung Yue Street Lai Chi Kok
Kowloon Hong Kong

The Seller agrees to sell and deliver, whilst the Buyer agrees to buy and take delivery of the Commodity in accordance with the terms and conditions hereunder.

| | |
|---|---|
| **Commodity** | INDONESIAN STEAM COAL IN BULK |
| **Quantity** | 64,998.00 Metric Tons ("MT") |
| **Port of Loading** | Tanjung Bara, East Kalimantan, Indonesia |
| **Delivery Term** | Cost and Freight ("CFR") HAIKOU OR DONGFANG OR GUANGDONG OR QINZHOU OR MEIZHOUWAN PORT, CHINA (CFR shall be in accordance with latest Incoterms, unless modified by this Contract).  The Commodity shall be discharged on Free Out ("FO") basis. |
| **Unit Price** | USD44.54 per Metric Ton |
| **Shipment Period** | By 30 JUN 2020 latest |

**Payment**
Upon shipment, the Seller shall present the following Documents to the Buyer:
1. Commercial Invoice for full value of the shipped commodity, basis the quantity in DMT
2. Ocean/ Charter Party Bills of Lading consigned To Order, Blank Endorsed, MARKED "FREIGHT PAYABLE AS PER CHARTER PARTY", NOTIFYING ""Anhui Technology Imp. And Exp. Co., Ltd. 459 West Changjiang Rd., Hefei China" OR "HUAXIANG GLOBAL LIMITED 11/F, SIMSONS COMMERCIAL BUILDING, 139 JOHNSTON ROAD, WANCHAI, HONG KONG

The aforementioned Documents must be issued in accordance with instructions to be provided by the Buyer. Subject to the Buyer's agreement for each delivery, an additional certified true copy to be sent to the Buyer if the aforementioned Documents are presented in copy.

Payment shall be made via Telegraphic Transfer to the Seller's Designated Account 154 days after date of Commercial Invoice and after the Documents have been accepted by the Buyer.

**Quality and Weight Determination**
Shipped weight shipped quality final at load port, with no claim basis.

**Shipping terms**
Discharge rate: CQD. No demurrage or dispatch or detention will be involved.

**Insurance**



**RHODIUM** pure trade

| Rhodium International Trading USA, Inc. | | |
| Mailing address: | Registered address: | (p) +65 62399388 |
| P O Box 110 | 16192 Coastal Highway | (f) +65 6438 0946 |
| 3070 Windward Plaza | Lewes, Delaware 19958 | (w) www.rhodiumresources.com |
| Suite F | County of Sussex | Registration No. 7529127 |
| Alpharetta, GA 30005 | United States | |
| United States | | |

The Buyer or the ultimate buyer shall procure the necessary marine insurance coverage, provided the shipment has been executed in accordance with this Contract and the Seller has notified the Buyer of shipment within the timeline specified in this Contract.  It is expressly understood that should the Seller not comply with the above, then any risk of loss shall be borne by the Seller until such time that the non-compliance is rectified or that the shipment arrives safely at the destination without any claims whatsoever.

**Force Majeure**
Force Majeure means any circumstance or event including without limitation: fire, explosion, flood, earthquake, tsunami, extreme adverse weather conditions, acts of God, riot, war or threat of war, civil commotion, act or threat of terrorism, unrest or disturbance, sabotage, blockade, embargo, legislation, prohibition, regulation or directive having the force of law, the effect of which results in prevention of the Seller ("the Affected Party") from delivering the Commodity

Neither party shall hold the other liable as a result of prevention in carrying out its obligations under this Contract, arising from Force Majeure.  Notwithstanding this, the Buyer agrees that Force Majeure shall not excuse or suspend the Buyer's obligation to pay for the Commodity shipped under this Contract.

If the Force Majeure subsists for more than 30 (thirty) days, the seller shall have the right to terminate this Contract, and neither party may hold the other liable for any losses it may sustain.

**Assignment**
Neither the Buyer nor the Seller may assign their obligations and/or rights under this Contract without the consent in writing of the other party.  Any purported assignment without the aforesaid consent shall be void.

**Governing Law**
This Contract shall be governed by and construed in accordance with Singapore Law. A party who is not a party to this Contract shall have no rights under the Contracts (Rights of Third Parties) Act 2001 to enforce any of the terms of this Contract.

**Arbitration**
Any dispute arising out of this Contract shall be referred to and resolved by arbitration in Singapore, in accordance with the Arbitration Rules of the Singapore International Arbitration Centre ("the SIAC") for the time being in force, which rules are deemed to be incorporated by reference to this Clause. The Tribunal shall consist of 1 (One) arbitrator to be appointed by the Chairman of the SIAC. The language of the arbitration shall be in English.

This Contract represents the entire agreement between the Buyer and the Seller, and supersedes all prior agreements, communications and understanding, whether verbal or in writing and whether directly between the Buyer and Seller or through any broker or other third parties, pertaining to the subject matter hereof.  Any changes to this Contract shall be in writing, and duly agreed to by both the Buyer and the Seller.

Agreed,
For the Buyer                                          For the Seller

Rhodium International Trading USA, Inc.        Yeskey Enterprises Limited



## Yeskey Enterprises Limited

# INVOICE

| | |
|---|---|
| **SHIPPED TO:** | **DATE:** 17/6/2020 |
| **RHODIUM INTERNATIONAL TRADING USA, INC** | **INVOICE NO:** YEL/20-06/17-01 |
| MAILING ADDRESS:<br>P O BOX 110, 3070 WINDWARD PLAZA | **BL NO:** 073CHN20 |
| SUIT F, ALPHARETTA, GA 30005, UNITED STATES<br>REGISTERED ADDRESS: | **POD:** HAIKOU OR DONGFANG OR GUANGDONG OR<br>QINZHOU OR MEIZHOUWAN PORT, CHINA |
| 16192 COASTAL HIGHWAY, LEWES,<br>DELAWARE 19958, COUNTY OF SUSSEX, UNITED<br>STATES | **POL:** TANJUNG BARA, EAST KALIMANTAN,<br>INDONESIA |

| **PAYMENT TERMS:** | TT 154 DAYS FROM INVOICE DATE |
|---|---|

| S.NO | DESCRIPTION | QTY<br>(MT) | RATE<br>(USD) | AMOUNT<br>(USD) |
|---|---|---|---|---|
| 1 | INDONESIAN STEAM COAL IN BULK | 64,998.000 | 44.54 | 2,895,010.92 |
| | | | | |
| | **GRAND TOTAL** | **64,998.000** | | **2,895,010.92** |

IN WORDS: USD Two Million Eight Hundred Ninety Five Thousand Tenand Cents Ninety Two Only

**BANK DETAILS:**

| | | |
|---|---|---|
| BENEFICIARY NAME | : | YESKEY ENTERPRISES LIMITED |
| BENEFICIARY ACCOUNT | : | 631-904-688-4    USD |
| BENEFICIARY BANK | : | UNITED OVERSEAS BANK LIMITED |
| SWIFT | : | UOVBSGSG |

### Thank you for your business!

**For YESKEY ENTERPRISES LIMITED**



**AUTHORISED SIGNATORY**

**Reg HK Address:**
Unit 1606, 16/F, Comweb Plaza
12 Cheung Yue Street
Lai Chi Kok, Kowloon, Hong Kong

**Singapore Address:**
24 Raffles Place
#25-02A Clifford Centre
Singapore 048621



Rhodium International Trading USA, Inc.
Mailing address:          Registered address:        +65 62399388
P O Box 110               16192 Coastal Highway      +65 6438 0946
3070 Windward Plaza       Lewes, Delaware 19958
Suite F                   County of Sussex           www.rhodiumresources.com
Alpharetta, GA 30005      United States              Registration No  7529127
United States

## SALES CONTRACT

| | | | |
|---|---|---|---|
| Contract Number | SRITUSA1656-801 | Date | 11 JUNE 2020 |

**The Seller:**

**Mailing address:**

P O Box 110 3070 Windward Plaza Suite F
Alpharetta, GA 30005 United States

**Registered Address:**
**Rhodium International Trading USA, Inc.**
**16192 Coastal Highway Lewes, Delaware 19958**
**County of Sussex United States**

**The Buyer:**

**QUAN JUN DA INDUSTRIAL CO., LTD.**

18/F, INTERCONTINENTAL OFFICE BUILDING, NO. 108,
GUANGDA ROAD, TAIJIANG DISTRICT, FUZHOU, FUJIAN,
350005, P.R. CHINA

The Seller agrees to sell and deliver, whilst the Buyer agrees to buy and take delivery of the Commodity in accordance with the terms and conditions hereunder.

| | |
|---|---|
| **Commodity** | INDONESIAN STEAM COAL |
| **Quantity** | 64,998.00 Metric Tons ("MT") |
| **Port of Loading** | TANJUNG BARA, East Kalimantan, Indonesia |
| **Delivery Term** | Cost and Freight ("CFR") HAIKOU OR DONGFANG OR GUANGDONG OR QINZHOU OR MEIZHOUWAN PORT, CHINA (CFR shall be in accordance with latest Incoterms, unless modified by this Contract).  The Commodity shall be discharged on Free Out ("FO") basis. |
| **Unit Price** | USD46.15 per MT |
| **Shipment Period** | By 30 JUNE 2020 latest |



**Payment**
After shipment, the Seller shall present the following Documents to the Buyer:
1. Commercial Invoice for full value of the shipped commodity
2. Ocean/ Charter Party Bills of Lading consigned To Order, Blank Endorsed, MARKED "FREIGHT PAYABLE AS PER CHARTER PARTY", NOTIFYING "Anhui Technology Imp. And Exp. Co., Ltd. 459 West Changjiang Rd., Hefei China" OR "HUAXIANG GLOBAL LIMITED 11/F, SIMSONS COMMERCIAL BUILDING, 139 JOHNSTON ROAD, WANCHAI, HONG KONG

It is expressly agreed that the Seller's Commercial Invoice evidences the indebtedness of the Buyer towards the Seller. Payment will be due at 149 days after date of Commercial Invoice.  Payment shall be made by the respective due date to the Seller's nominated account set out below without any set-off or deduction whatsoever and howsoever caused, including any claims and/or disputes as to Quality, Quantity and/or demurrage/despatch (unless expressly agreed to by the Seller in writing).

Bank Name: First Republic Bank
Bank City/State: 44 Montgomery Street, San Francisco CA, 94104
ABA/Routing Transit Number: 321081669
Swift Code: FRBBUS6S



Rhodium International Trading USA, Inc.

| Mailing address: | Registered address: | (p) +65 62399388 |
| P O Box 110 | 16192 Coastal Highway | (f) +65 6438 0946 |
| 3070 Windward Plaza | Lewes, Delaware 19958 | |
| Suite F | County of Sussex | www.rhodiumresources.com |
| Alpharetta, GA 30005 | United States | Registration No. 7529127 |
| United States | | |

Account Number: 80007875448
Account Name: White Oak Trade Finance LLC

It is expressly understood that title to the Commodity shall only transfer to the Buyer after the Seller has invoiced the Buyer under the abovementioned Commercial Invoice.

Should the Buyer fail to pay by the due date, late payment penalty at the rate of 1% (One Percent) per month, fractions pro rata, calculated on the outstanding bill amount shall be levied on the Buyer. The Seller has the option to either obtain payment of such late payment penalty at any time prior to settlement of the bill amount, or allow such late payment penalty to be paid together with the settlement of the bill amount. For the avoidance of doubt, such provision shall not be construed as an extension of the due date, as the Buyer will be held to be in default until the bill, together with any late payment penalty, is settled in full.

The Buyer shall indemnify the Seller for all out-of-pocket costs, charges and expenses, including but not limited to legal costs, incurred by the Seller as a result of the Buyer's failure to accept the Documents, to honour Payment when due, or in connection with the Seller's enforcement, settlement or other disposition of claims with respect to the Documents.

**Quality and Weight Determination**
Shipped weight shipped quality final at load port, with no claim basis.

**Shipping terms**
Discharge rate: CQD
No demurrage or dispatch or detention will be involved.

**Insurance**
The Buyer assumes all risks of damage or loss from the time that the Commodity is placed on board the shipment vessel at the load port. Accordingly, the Buyer is responsible to procure marine insurance coverage to protect against any damage or loss to the Commodity during the entire period of transit. The Seller shall be entitled to receive a copy of a valid open policy issued by the Buyer's insurers, or the insurance certificate issued for the shipment, as evidence of the Buyer's fulfilment of this Clause.

**Taxes**
The Buyer agrees to be liable for all taxes incurred or to be incurred in the destination country and/or the domicile country of the Buyer on account of the supply of Commodity in accordance with the terms and conditions of this Contract. In the event that any payments from the Buyer should be subject to any withholding tax and/or any deduction as mandated by the Tax or Governmental authorities of the destination country and/or the domicile country of the Buyer, then the Buyer shall duly gross up the payment to the extent of the withholding tax and/or deduction such that the payment received by the Seller is equivalent to the amount had it not been subject to such withholding and/or deduction.

**Force Majeure**
Force Majeure means any circumstance or event including without limitation: fire, explosion, flood, earthquake, tsunami, extreme adverse weather conditions, acts of God, riot, war or threat of war, civil commotion, act or threat of terrorism, unrest or disturbance, sabotage, blockade, embargo, legislation, prohibition, regulation or directive having the force of law, the effect of which results in prevention of the Seller ("the Affected Party") from delivering the Commodity

Neither party shall hold the other liable as a result of prevention in carrying out its obligations under this Contract, arising from Force Majeure. Notwithstanding this, the Buyer agrees that Force Majeure shall not excuse or suspend the Buyer's obligation to pay for the Commodity shipped under this Contract.

If the Force Majeure subsists for more than 30 (thirty) days, the seller shall have the right to terminate this Contract, and neither party may hold the other liable for any losses it may sustain.

**Material Adverse Events**
It is expressly agreed that the Seller shall have the right to suspend, postpone or terminate its performance under this Contract, to require a Performance Assurance such as a secure payment instrument or Letter of Credit issued by a first class bank, as well as accelerate the due date(s) of outstanding bills under this Contract or any other contracts that may exist between the Buyer and the Seller should any Material Adverse Event(s) arise. Material Adverse Events shall be at the sole determination of the Seller, and shall include without limitation:
-       Material change in the operating or financial condition of the Buyer;



**RHODIUM**
pure trade

Rhodium International Trading USA, Inc.
Mailing address:          Registered address:          +65 62399388
P O Box 110               16192 Coastal Highway       +65 6438 0946
3070 Windward Plaza       Lewes, Delaware 19958
Suite F                   County of Sussex            www.rhodiumresources.com
Alpharetta, GA 30005      United States               Registration No. 7529127
United States

- Material breach or default by the Buyer under this Contract, or any other contracts;
- Material change in the legal, economic or financial environment within the destination country and/or the domicile country of the Buyer;
- Material change in the global financial environment or macro economy.

The aforementioned rights of the Seller shall not be subject to penalty(ies) or further liabilities of whatsoever nature. Upon the determination of a Material Adverse Event(s) by the Seller, written notification together with the decision of the Seller shall be sent to the Buyer.

**Assignment**
The Buyer may not assign its obligations and/or rights under this Contract without the consent in writing of the Seller. Any purported assignment without the aforesaid consent shall be void.

The Seller may assign any of its obligations and/or rights under this Contract by written notification to the Buyer. Upon such assignment, the Buyer shall continue to fulfill those duties and responsibilities called for under the Assignment in favour of the Assignee, including adhering to any timelines and/or due dates as stipulated within this Contract. Any failure by the Buyer to fulfill its obligations and responsibilities in favour of the Assignee may be subject to remedy and/or penalties as stipulated within this Contract, and which may be imposed by either the Assignee or the Seller. The Assignee has the right to further assign any of its assigned rights to any other party, including the Seller.

The Buyer shall bear all out-of-pocket costs and expenses (including legal fees and stamp duties) incurred in connection with the execution of any documents in relation to the Assignment(s).

**Representations and Warranties**
The Buyer represents and warrants that:
- It has obtained all the authorities, approvals and licences, and done all acts necessary under applicable laws and regulations in force to ensure the legality, validity, enforceability and admissibility of obtaining credit under this Contract and the Documents;
- It is a duly organized and legally existing corporation in the country from which the Buyer is obligated to make payment under the terms of this Contract, has legal capacity to enter into this Contract and undertake all its obligations (including payment obligations) under the said Contract;
- It has obtained all the authorities, approvals and licences under the applicable laws and regulations in force to which the Buyer is subject, to import the Commodity and pay for it in accordance with this Contract;
- Its payment obligations under this Contract and the Documents are direct, unconditional, unsubordinated and will at all times rank at least pari passu with the Buyer's other unsecured and unsubordinated obligations at present and in the future.

**Governing Law**
This Contract shall be governed by and construed in accordance with Singapore Law.
A party who is not a party to this Contract shall have no rights under the Contracts (Rights of Third Parties) Act 2001 to enforce any of the terms of this Contract.

**Arbitration**
Any dispute arising out of this Contract shall be referred to and resolved by arbitration in Singapore, in accordance with the Arbitration Rules of the Singapore International Arbitration Centre ("the SIAC") for the time being in force, which rules deemed to be incorporated by reference to this Clause. The Tribunal shall consist of 1 (One) arbitrator to be appointed by the Chairman of the SIAC. The language of the arbitration shall be in English.

This Contract represents the entire agreement between the Buyer and the Seller, and supersedes all prior agreements, communications and understanding, whether verbal or in writing and whether directly between the Buyer and Seller or through any broker or other third parties, pertaining to the subject matter hereof. Any changes to this Contract shall be in writing, and duly agreed to by both the Buyer and the Seller.

Agreed,
For the Seller

Rhodium International Trading USA, Inc.

For the Buyer

QUAN JUN DA INDUSTRIAL CO., LTD
合同专用章



Rhodium International Trading USA, Inc.
Mailing address:                    Registered address:              (p) +65 62399388
P O Box 110                         16192 Coastal Highway            (f) +65 6438 0946
3070 Windward Plaza                 Lewes, Delaware 19958            (w) www.rhodiumresources.com
Suite F                             County of Sussex                 Registration No. 7529127
Alpharetta, GA 30005                United States
United States

# COMMERCIAL INVOICE

**INVOICE NO: SIRITUSA1038**

**INVOICE TO:**
QUAN JUN DA INDUSTRIAL CO., LTD.
18/F, INTERCONTINENTAL OFFICE BUILDING,
NO. 108, GUANGDA ROAD, TAIJIANG DISTRICT,
FUZHOU, FUJIAN, 350005, P.R. CHINA

**VESSEL:** MV STARLIGHT
**SHIPMENT DATE:** 29 MAY 2020
**PORT OF LOADING:** TANJUNG BARA, EAST
KALIMANTAN, INDONESIA
**PORT OF DISCHARGE:** HAIKOU OR DONGFANG OR
GUANGDONG OR QINZHOU OR MEIZHOUWAN PORT,
CHINA
**SALES CONTRACT NO:** SRITUSA1656-801

| DESCRIPTION OF GOODS | AMOUNT |
| --- | --- |
| **INDONESIAN STEAM COAL**<br>BL NO.: 037CHN20<br>QUANTITY: 64,998.00 MT<br><br>UNIT PRICE: USD46.15/MT CFR HAIKOU OR DONGFANG OR GUANGDONG OR QINZHOU OR MEIZHOUWAN PORT, CHINA AS PER LATEST INCOTERMS<br><br>PAYMENT TERMS: 149 DAYS AFTER DATE OF COMMERCIAL INVOICE (17 JUNE 2020)<br>PAYMENT DUE DATE: 13 NOV 2020 | |

| | TOTAL | USD 2,999,657.70 |
| --- | --- | --- |

PAYMENT INSTRUCTION
Bank Name: First Republic Bank
Bank City/State: 44 Montgomery Street, San Francisco CA, 94104
ABA/Routing Transit Number: 321081669
Swift Code: FRBBUS6S
Account Number: 80007875448
Account Name: White Oak Trade Finance LLC

*For* **RHODIUM INTERNATIONAL TRADING USA, INC.**

17 JUNE 2020



# 全駿達實業有限公司
## QUAN JUN DA INDUSTRIAL CO. LTD

地址：中國・福建省福州市臺江區廣達路108號世茂國際中心寫字樓18層
Add：(18/F,Intercontinental Office Building,No.108,Guangda Road,Taijiang District,Fuzhou,Fujian)
電話（Tel）：0591-63360666  傳真（Fax）：0591-63360609  郵編（Cap）：350005

**Acknowledgement of Assignment**

To:    White Oak Trade Finance, LLC
3 Embarcadero Center, 5th Floor, San Francisco, CA 94111, United States America

Attention: James Chan/ Victoria Shih

Date: 17 JUNE 2020

Dear Sirs

1    We acknowledge receipt of the notice from Rhodium International Trading USA, Inc. dated 17 JUNE 2020, a copy of which is attached to this Acknowledgement (the **Notice**).

2    We have not received notice that any other person has an interest in the Contract.

3    We will comply with the instructions in the Notice.

4    We agree that no amendment or termination of the Contract, nor any waiver of its terms, will be effective unless it is approved by White Oak.

5    We will not exercise any right of set-off against payment owing by us under the Contract.

6    We do not have any dispute under or in relation to the Contract including in relation to invoice number [ SIRITUSA1038 ] issued under the Contract.

Executed and delivered as a              )

**DEED** by                                           )     ..............................................

QUAN JUN DA INDUSTRIAL CO., LTD.     )        Director

acting by:                                           )     ....... *Chen Xiuzhen* ............
                                                                Director/Secretary

A witness is required if only one director signs
Signed by the Director in the presence of:
Witness name: ....................................................................
Witness signature: ...............................................................
Witness name/address: ..........................................................

Contact person: ....... *Chen Xiuzhen* ...........................

Title: ..... *Director / Secretary* ...............................

Phone number: ... *+86.591.63360666.- 663* .................

Email address: ....... *chenxz @quanjunda.com* ...............

1



Rhodium International Trading USA, Inc.

| Mailing address: | Registered address: | (p) +65 62399388 |
| P O Box 110 | 16192 Coastal Highway | (f) +65 6438 0946 |
| 3070 Windward Plaza | Lewes, Delaware 19958 | (w) www.rhodiumresources.com |
| Suite F | County of Sussex | Registration No. 7529127 |
| Alpharetta, GA 30005 | United States | |
| United States | | |

### SCHEDULE 2

**Form of Notice and Acknowledgement of Assignment of Sales Contract**

To:     QUAN JUN DA INDUSTRIAL CO., LTD.

18/F, INTERCONTINENTAL OFFICE BUILDING, NO. 108, GUANGDA ROAD, TAIJIANG DISTRICT, FUZHOU, FUJIAN, 350005, P.R. CHINA

Date:     17 JUNE 2020

Dear Sirs

### Notice of Assignment

1    We give you notice that, under a Deed of Assignment dated 22 August 2019 entered into by us in favour of White Oak Trade Finance, LLC (**White Oak**), we have assigned to White Oak by way of security all of our rights in Sales Contract Number: SRITUSA1656-801 Dated 11 JUNE 2020 (and in and to any other assets derived from any of those rights under any applicable law, including, without limitation, all amounts payable by you to us thereunder) (the **Contract**).

2    We will remain liable for our obligations under the Contract.  White Oak has no obligations under it.

3    We have agreed with White Oak not to terminate or amend the Contract or to waive any of its terms without the consent of White Oak.

4    We instruct you to:

    (a)    make all payments due to us under the Contract to the following Collection Account

            Bank Name: First Republic Bank
            Bank City/State: 44 Montgomery Street, San Francisco CA, 94104
            ABA/Routing Transit Number: 321081669
            Swift Code: FRBBUS6S
            Account Number: 80007875448
            Account Name: White Oak Trade Finance LLC
            or otherwise as White Oak shall direct by notice; and

    (b)    disclose to White Oak, without further approval from us, such information regarding the Contract as White Oak may from time to time request and to send White Oak copies of all notices issued by you under the Contract.

5    This instruction cannot be varied or terminated without the consent of White Oak.

6    This instruction is governed by English law.

Please sign the enclosed acknowledgement and return it to Rhodium International Trading USA, Inc. at:
Attn: Operations Department
9 Raffles Place #23-02/03 Republic Plaza Singapore 048619 Tel: +65 6239 9388

Rhodium International Trading USA, Inc. will subsequently forward the acknowledgement to White Oak's agent at:
Norton Rose Fulbright (Asia) LLP
9 Straits View, Marina One West Tower, #09-09, Singapore, 018937
Attn: Shernie See Tel: +65 6309 5320

................................
for and on behalf of
**Rhodium International Trading USA, Inc.**



**CONFIDENTIAL**



Lloyd's List Intelligence
Seasearcher

✉ clientservices@lloydslistintelligence.com

# Vessel Report

Your vessel report for 'Ningbo Innovation'



*Downloaded by vivian@rhodiumresources.com*
*on 16 June 2021*

Customised to include:

✓ Movements

*This report is strictly confidential and supplied subject to our terms and conditions.*
*Lloyd's is the registered trademark of the Society incorporated by the Lloyd's Act 1871 by the name of Lloyd's.*

Lloyd's List Intelligence
Seasearcher

Vessel Report - Ningbo Innovation

 CONFIDENTIAL

# Vessel Overview

## Ningbo Innovation – Summary
**Last Updated:** 16 Jun 2021

| | | | |
|---|---|---|---|
| LLJ NO | 304257 | IMO | 9219422 |
| Flag | Singapore | Vessel Type | bulk carrier |
| Status: | Live | Reg. Owner | Ningbo Innovation Shipping |
| Built | 2001 | DWT | 75413 |
| GT | 39713 | Hull Type | Double Bottom |
| Latest AIS message type | A | | |

## Registration
**Last Updated:** 16 Jun 2021

Name: Ningbo Innovation

Name history:

| Name | From | Until |
|---|---|---|
| Michele Bottiglieri | 02 Jan 1999 | Before 20 Jul 2011 |
| Yard No.4959 Hitachi (Maizuru) | Before 01 Jan 1999 | 01 Jan 1999 |

Flag: Singapore

Flag Official Number:

Flag history:

| Flag | Flag Official Number | Call Sign | MMSI | Port of registry | From | Until |
|---|---|---|---|---|---|---|
| ITA | 19 | IBTI | 247016100 | Torre del Greco | Before 01 Jan 1999 | Before 20 Jul 2011 |

| | | | |
|---|---|---|---|
| Call Sign | 9V9570 | IMO | 9219422 |
| MMSI | 566181000 | Port of registry | Singapore |

## Vessel Movements
**Last Updated:** 16/06/2021 03:47:23 (GMT)

| | | | |
|---|---|---|---|
| Region | Far East - China Sea | Lat/Lng: | 29° 35' 53" N  122° 37' 28" E |
| Nearest port | Ningbo Anch., China  9.3886nm | Status | nearing |
| Destination | Ningbo, China | ETA | 16 Jun 2021  2 hours from now |

© 2021 Informa UK Ltd, All rights reserved. Downloaded by: vivian@rhodiumresources.com

Vessel Report - Ningbo Innovation

Lloyd's List Intelligence
**Seasearcher**

CONFIDENTIAL

## Ports & Passings

| Status and Distance | Port | Type | From | To | Duration | Destination | Country | Details |
|---|---|---|---|---|---|---|---|---|
| ETA | Ningbo | Port | 06:30 (GMT) 16/06/21 | | | - | China (GMT +08H) | |
| called at | Taichung | Port | 20:55 (GMT) 02/08/20 | 03:46 (GMT) 05/08/20 | 2 days | Ningbo ETA: 16/06/21 | Taiwan (GMT +08H) | |
| called at | Muara Pantai Anch. | Anchorage | Before 08:13 (GMT) 25/07/20 | Before 03:28 (GMT) 29/07/20 | 3 days | Taichung ETA: 02/08/20 | Indonesia (GMT +07H) | Anchored |
| called at | Yangpu Anch. | Anchorage | 15:20 (GMT) 17/07/20 | 05:51 (GMT) 18/07/20 | 14 hours | Muara Pantai Anch. ETA: 25/07/20 | China (GMT +08H) | Anchored |
| called at | Macun | Port | 09:49 (GMT) 11/07/20 | 07:46 (GMT) 17/07/20 | 5 days | Yangpu Anch. ETA: 17/07/20 | China (GMT +08H) | |
| called at | Tanjung Bara | Port | 04:08 (GMT) 26/06/20 | 21:36 (GMT) 04/07/20 | 8 days | Macun ETA: 11/07/20 | Indonesia (GMT +07H) | |

## Vessel Sightings

| Status and Distance | Port | Type | From | To | Duration | Destination | Country |
|---|---|---|---|---|---|---|---|

There is no data available.

© 2021 Informa UK Ltd, All rights reserved. Downloaded by: vivian@rhodiumresources.com

Page 2

CODE NAME: "CONGENBILL" EDITION 1994

| | |
|---|---|
| Shipper<br>PT KALTIM PRIMA COAL<br>BAKRIE TOWER 15 FLOOR<br>JL H R RASUNA SAID<br>JAKARTA 12940 INDONESIA | **BILL OF LADING**<br>TO BE USED WITH CHARTER-PARTIES<br><br>Reference No. |

**B/L No.**
095CHN20

Consignee
TO ORDER

**FIRST ORIGINAL**

Notify Party
FUJIAN RONGJIANG IMP. AND EXP. CO., LTD.
8-9/F., FOREIGN TRADE CENTER BUILDING,
NO. 75 WUSI ROAD, GULOU DISTRICT,
FUZHOU, CHINA

OR

HUAXIANG GLOBAL LIMITED
11/F, SIMSONS COMMERCIAL BUILDING,
139 JOHNSTON ROAD, WANCHAI, HONG KONG

Name of Vessel        Port Of Loading
MV NINGBO INNOVATION      TANJUNG BARA, EAST KALIMANTAN, INDONESIA

Port of discharge
HAIKOU OR DONGFANG OR GUANGDONG OR MEIZHOUWAN OR QINZHOU PORT, CHINA

| Shipper's description of goods | GROSS WEIGHT |
|---|---|
| <br>INDONESIAN STEAM COAL<br><br>**CLEAN ON BOARD**<br>**FREIGHT PAYABLE AS PER CHARTER PARTY** | <br>64,999 MT |

(of which .... on deck at Shipper's risk;the carrier not
being responsible for loss or damage howsoever arising)

| | |
|---|---|
| Freight payable as per<br>CHARTER PARTY dated<br><br>FREIGHT ADVANCE.<br>Received account of freight:<br><br>........................................<br>Time used for loading......... days ......Hours | **SHIPPED** at the Port of Loading in apparent good order and condition<br>on board the Vessel for carriage to the Port of Discharge<br>or so near there to as she may safely get the goods specified above<br>Weight, measure, quality, quantity, condition, contents and value unknown<br>IN WITNESS where of the Master or Agent of the said Vessel has signed<br>the number of Bills of Lading indicated below all of his tenor and date,<br>any one of which being accomplished the others shall be void.<br>FOR CONDITIONS OF CARRIAGE SEE OVERLEAF |

| Freight payable at | Place and date of issue<br>TANJUNG BARA, EAST KALIMANTAN, INDONESIA ; JULY 04, 2020 |
|---|---|
| Number of original Bs/L<br><br>3 (Three) | Signature<br>As agent for and on behalf of the<br>Master of MV NINGBO INNOVATION<br>Capt. YUAN SHUJUN |

Printed and said
By Wyt& Zonen B.V., Rotterdam (phone;31-010-4252837)
by the authority of the Baltic and International maritime
Council (BIMCO), Copenhagen

# BILL OF LADING

Page 1

TO BE USED WITH CHARTER-PARTIES
CODE NAME: "CONGENBILL"
EDITION 1994
ADOPTED BY
THE BALTIC AND INTERNATIONAL MARITIME COUNCIL (BIMCO)

## Conditions of Carriage

**(1)** All terms and conditions, liberties and exceptions of the Charter Party, dated as overleaf, including the law and Arbitration Clause, are herewith incorporated.

**(2) General Paramount Clause.**

   (a)  The Hague Rules contained in the International Convention for the Unification of certain rules relating to Bills of Lading, dated Brussels the 25th August 1924 as enacted in the country of shipment shall, apply to this Bill of lading. When no such enactment is in force in the country of shipment, the corresponding legislation of the country of destination shall apply, but in respect of shipments to which no such enactments are compulsorily applicable, the terms of the said Convention shall apply

   (b)  Trades where Hague-Visby Rules apply.
      In trades where the International Brussels Convention 1924 as amended by the protocol signed at Brussels on February 23 rd 1968 — the Hague-Visby Rules — apply compulsorily, the provisions of the respective legislation shall apply to this Bill of Lading.

   (c)  The Carrier shall in no case be responsible for loss of or damage to the cargo, howsoever arising prior to loading into and after discharge from the Vessel or while the cargo is in the charge of another Carrie, nor in respect of deck cargo or live animals.

**(3) General Average.**
General Average shall be adjusted, stated and settled according to York-Antwerp Rules 1994, or any subsequent modification thereof, in London unless another place is agreed in the Charter Party.
Cargo's contribution to general Average shall be paid to the Carrier even when such average is the result of afault, neglect or error of the Master, Pilot or Crew. The Charterers, Shippers and Consignees expressly renounce the Belgian Commercial Code, Part II, Art. 148.

**(4) New Jason Clause**
In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the Carrier is not responsible, by statute, contract or otherwis, the cargo, shippers, consignees or the owners of the cargo shall contribute with the Carrier in General Average to payment of any sacrifices, losses or expenses of a General Average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the cargo. If a salving vessel is owned or operated by the Carrier, salvage shall be paid for as fully as if the said salving vessel or vessels belonged to strangers. Such deposit as the Carrier, or his agents, may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if require, be made by the cargo, shippers, consignees or owners of the goods to the Carrier before delivery.

**(5) Both-to-Blame Collision Clause.**
If the vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, neglect or default of the Master, Mariner, Pilot or the servants of the Carrier in the navigation or in the management of the Vessel, the owners of the cargo carried hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying vessel or her owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said cargo, paid or payable by the other or non-carrying vessel or her owners to the owners of said cargo and set-off, recouped or recovered by the other or non-carrying vessel or her owners as part of their claim against the carrying Vessel or the Carrier.
The foregoing provisions shall also apply where the owners, operators or those in charge of any vessels ob jects other than, or in addition to, the colliding vessels or objects are at fault in respect to a collision or contact.

For particulars of cargo, freight,
destination, etc., see overleaf.



Page 2

CODE NAME: "CONGENBILL" EDITION 1994

| Shipper | **BILL OF LADING** | B/L No. |
|---|---|---|
| PT KALTIM PRIMA COAL<br>BAKRIE TOWER 15 FLOOR<br>JL H R RASUNA SAID<br>JAKARTA 12940 INDONESIA | TO BE USED WITH CHARTER-PARTIES<br><br>Reference No. | 095CHN20 |

Consignee

TO ORDER

Notify Party

FUJIAN RONGJIANG IMP. AND EXP. CO., LTD.

8-9/F., FOREIGN TRADE CENTER BUILDING,

NO. 75 WUSI ROAD, GULOU DISTRICT,

FUZHOU, CHINA

OR

HUAXIANG GLOBAL LIMITED

11/F, SIMSONS COMMERCIAL BUILDING,

139 JOHNSTON ROAD, WANCHAI, HONG KONG

# SECOND ORIGINAL

| Name of Vessel | Port Of Loading |
|---|---|
| MV NINGBO INNOVATION | TANJUNG BARA, EAST KALIMANTAN, INDONESIA |

Port of discharge

HAIKOU OR DONGFANG OR GUANGDONG OR MEIZHOUWAN OR QINZHOU PORT, CHINA

| Shipper's description of goods | GROSS WEIGHT |
|---|---|
| INDONESIAN STEAM COAL | 64,999 MT |

**CLEAN ON BOARD**

**FREIGHT PAYABLE AS PER CHARTER PARTY**

(of which .... on deck at Shipper's risk;the carrier not
being responsible for loss or damage howsoever arising)

| Freight payable as per<br>CHARTER PARTY dated | **SHIPPED** at the Port of Loading in apparent good order and condition on board the Vessel for carriage to the Port of Discharge or so near there to as she may safely get the goods specified above Weight, measure, quality, quantity, condition, contents and value unknown IN WITNESS where of the Master or Agent of the said Vessel has signed the number of Bills of Lading indicated below all of his tenor and date, any one of which being accomplished the others shall be void. FOR CONDITIONS OF CARRIAGE SEE OVERLEAF |
|---|---|
| FREIGHT ADVANCE.<br>Received account of freight: | |

...................................................

Time used for loading.......... days ......Hours

| Freight payable at | Place and date of issue<br>TANJUNG BARA, EAST KALIMANTAN, INDONESIA : JULY 04, 2020 |
|---|---|
| Number of original Bs/L<br><br>3 (Three) | Signature<br>As agent for and on behalf<br>Master of MV NINGBO INNOVATION<br>Capt. YUAN SHIJIA |

Printed and sold

By Wyt& Zonen B.V., Rotterdam (phone;31-010-4252827)

by the authority of the Baltic and International maritime

Council (BIMCO), Copenhagen

# BILL OF LADING

Page 1

TO BE USED WITH CHARTER-PARTIES
CODE NAME: "CONGENBILL"
EDITION 1994
ADOPTED BY
THE BALTIC AND INTERNATIONAL MARITIME COUNCIL (BIMCO)

## Conditions of Carriage

**(1)** All terms and conditions, liberties and exceptions of the Charter Party, dated as overleaf, including the law and Arbitration Clause, are herewith incorporated.

**(2) General Paramount Clause.**
    **(a)** The Hague Rules contained in the International Convention for the Unification of certain rules relating to Bills of Lading, dated Brussels the 25th August 1924 as enacted in the country of shipment shall, apply to this Bill of lading. When no such enactment is in force in the country of shipment, the corresponding legislation of the country of destination shall apply, but in respect of shipments to which no such enactments are compulsorily applicable, the terms of the said Convention shall apply

    **(b)** Trades where Hague-Visby Rules apply.
        In trades where the International Brussels Convention 1924 as amended by the protocol signed at Brussels on February 23 rd 1968 – the Hague-Visby Rules – apply compulsorily, the provisions of the respective legislation shall apply to this Bill of Lading.

    **(c)** The Carrier shall in no case be responsible for loss of or damage to the cargo, howsoever arising prior to loading into and after discharge from the Vessel or while the cargo is in the charge of another Carrie, nor in respect of deck cargo or live animals.

**(3) General Average.**
General Average shall be adjusted, stated and settled according to York-Antwerp Rules 1994, or any subsequent modification thereof, in London unless another place is agreed in the Charter Party.
Cargo's contribution to general Average shall be paid to the Carrier even when such average is the result of afault, neglect or error of the Master, Pilot or Crew. The Charterers, Shippers and Consignees expressly renounce the Belgian Commercial Code, Part II, Art. 148.

**(4) New Jason Clause**
In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the Carrier is not responsible, by statute, contract or otherwis, the cargo, shippers, consignees or the owners of the cargo shall contribute with the Carrier in General Average to payment of any sacrifices, losses or expenses of a General Average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the cargo. If a salving vessel is owned or operated by the Carrier, salvage shall be paid for as fully as if the said salving vessel or vessels belonged to strangers. Such deposit as the Carrier, or his agents, may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if require, be made by the cargo, shippers, consignees or owners of the goods to the Carrier before delivery.

**(5) Both-to-Blame Collision Clause.**
If the vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, neglect or default of the Master, Mariner, Pilot or the servants of the Carrier in the navigation or in the management of the Vessel, the owners of the cargo carried hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying vessel or her owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said cargo, paid or payable by the other or non-carrying vessel or her owners to the owners of said cargo and set-off, recouped or recovered by the other or non-carrying vessel or her owners as part of their claim against the carrying Vessel or the Carrier.
The foregoing provisions shall also apply where the owners, operators or those in charge of any vessels ob jects other than, or in addition to, the colliding vessels or objects are at fault in respect to a collision or contact.

For particulars of cargo, freight,
destination, etc., see overleaf.

Page 2

CODE NAME: "CONGENBILL" EDITION 1994

**Shipper**
PT KALTIM PRIMA COAL
BAKRIE TOWER 15 FLOOR
JL H R RASUNA SAID
JAKARTA 12940 INDONESIA

**BILL OF LADING**
TO BE USED WITH CHARTER-PARTIES

B/L No.
095CHN20

Reference No.

**Consignee**
TO ORDER

**Notify Party**
FUJIAN RONGJIANG IMP. AND EXP. CO., LTD.
8-9/F., FOREIGN TRADE CENTER BUILDING,
NO. 75 WUSI ROAD, GULOU DISTRICT,
FUZHOU, CHINA

OR

HUAXIANG GLOBAL LIMITED
11/F, SIMSONS COMMERCIAL BUILDING,
139 JOHNSTON ROAD, WANCHAI, HONG KONG

# THIRD ORIGINAL

**Name of Vessel**    **Port Of Loading**
MV NINGBO INNOVATION     TANJUNG BARA, EAST KALIMANTAN, INDONESIA

**Port of discharge**
HAIKOU OR DONGFANG OR GUANGDONG OR MEIZHOUWAN OR QINZHOU PORT, CHINA

| Shipper's description of goods | GROSS WEIGHT |
|---|---|
| INDONESIAN STEAM COAL | 64,999 MT |

**CLEAN ON BOARD**
**FREIGHT PAYABLE AS PER CHARTER PARTY**

(of which .... on deck at Shipper's risk;the carrier not
being responsible for loss or damage howsoever arising)

Freight payable as per
CHARTER PARTY dated

FREIGHT ADVANCE.
Received account of freight:

.............................................
Time used for loading......... days ......Hours

**SHIPPED** at the Port of Loading in apparent good order and condition
on board the Vessel for carriage to the Port of Discharge
or so near there to as she may safely get the goods specified above
Weight, measure, quality, quantity, condition, contents and value unknown
IN WITNESS where of the Master or Agent of the said Vessel has signed
the number of Bills of Lading indicated below all of his tenor and date,
any one of which being accomplished the others shall be void.
FOR CONDITIONS OF CARRIAGE SEE OVERLEAF

| Freight payable at | Place and date of issue |
|---|---|
| | TANJUNG BARA, EAST KALIMANTAN, INDONESIA : JULY 04, 2020 |
| Number of original Bs/L | Signature |
| 3 (Three) | As agent for and on behalf of |
| | Master of MV NINGBO INNOVATION |
| | Capt. YUAN SHUYI |

Printed and sold
By Wyt& Zonen B.V., Rotterdam (phone;31-010-4252627)
by the authority of the Baltic and International maritime
Council (BIMCO), Copenhagen

# BILL OF LADING

Page 1

TO BE USED WITH CHARTER-PARTIES
CODE NAME: "CONGENBILL"
EDITION 1994
ADOPTED BY
THE BALTIC AND INTERNATIONAL MARITIME COUNCIL (BIMCO)

## Conditions of Carriage

**(1)** All terms and conditions, liberties and exceptions of the Charter Party, dated as overleaf, including the law and Arbitration Clause, are herewith incorporated.

**(2) General Paramount Clause.**
(a) The Hague Rules contained in the International Convention for the Unification of certain rules relating to Bills of Lading, dated Brussels at the 25th August 1924 as enacted in the country of shipment shall, apply to this Bill of lading. When no such enactment is in force in the country of shipment, the corresponding legislation of the country of destination shall apply, but in respect of shipments to which no such enactments are compulsorily applicable, the terms of the said Convention shall apply

(b) Trades where Hague-Visby Rules apply.
In trades where the International Brussels Convention 1924 as amended by the protocol signed at Brussels on February 23 rd 1968 – the Hague-Visby Rules – apply compulsorily, the provisions of the respective legislation shall apply to this Bill of Lading.

(c) The Carrier shall in no case be responsible for loss of or damage to the cargo, howsoever arising prior to loading into and after discharge from the Vessel or while the cargo is in the charge of another Carrie, nor in respect of deck cargo or live animals.

**(3) General Average.**
General Average shall be adjusted, stated and settled according to York-Antwerp Rules 1994, or any subsequent modification thereof, in London unless another place is agreed in the Charter Party.
Cargo's contribution to general Average shall be paid to the Carrier even when such average is the result of afault, neglect or error of the Master, Pilot or Crew. The Charterers, Shippers and Consignees expressly renounce the Belgian Commercial Code, Part II, Art. 148.

**(4) New Jason Clause**
In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the Carrier is not responsible, by statute, contract or otherwis, the cargo, shippers, consignees or the owners of the cargo shall contribute with the Carrier in General Average to payment of any sacrifices, losses or expenses of a General Average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the cargo. If a salving vessel is owned or operated by the Carrier, salvage shall be paid for as fully as if the said salving vessel or vessels belonged to strangers. Such deposit as the Carrier, or his agents, may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if require, be made by the cargo, shippers, consignees or owners of the goods to the Carrier before delivery.

**(5) Both-to-Blame Collision Clause.**
If the vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, neglect or default of the Master, Mariner, Pilot or the servants of the Carrier in the navigation or in the management of the Vessel, the owners of the cargo carried hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying vessel or her owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said cargo, paid or payable by the other or non-carrying vessel or her owners to the owners of said cargo and set-off, recouped or recovered by the other or non-carrying vessel or her owners as part of their claim against the carrying Vessel or the Carrier.
The foregoing provisions shall also apply where the owners, operators or those in charge of any vessels ob jects other than, or in addition to, the colliding vessels or objects are at fault in respect to a collision or contact.

For particulars of cargo, freight,
destination, etc., see overleaf.



Page 2

CODE NAME: "CONGENBILL" EDITION 1994

| Shipper | **BILL OF LADING** | B/L No. |
|---|---|---|
| PT KALTIM PRIMA COAL<br>BAKRIE TOWER 15 FLOOR<br>JL H R RASUNA SAID<br>JAKARTA 12940 INDONESIA | TO BE USED WITH CHARTER-PARTIES<br><br>Reference No. | 095CHN20 |

Consignee

TO ORDER

## NON-NEGOTIABLE

Notify Party

FUJIAN RONGJIANG IMP. AND EXP. CO., LTD.
8-9/F., FOREIGN TRADE CENTER BUILDING,
NO. 75 WUSI ROAD, GULOU DISTRICT,
FUZHOU, CHINA

OR

HUAXIANG GLOBAL LIMITED
11/F, SIMSONS COMMERCIAL BUILDING,
139 JOHNSTON ROAD, WANCHAI, HONG KONG

Name of Vessel          Port Of Loading

MV NINGBO INNOVATION        TANJUNG BARA, EAST KALIMANTAN, INDONESIA

Port of discharge

HAIKOU OR DONGFANG OR GUANGDONG OR MEIZHOUWAN OR QINZHOU PORT, CHINA

| Shipper's description of goods | GROSS WEIGHT |
|---|---|
| INDONESIAN STEAM COAL | 64,999 MT |

CLEAN ON BOARD

FREIGHT PAYABLE AS PER CHARTER PARTY

(of which .... on deck at Shipper's risk;the carrier not
being responsible for loss or damage howsoever arising)

| Freight payable as per<br>CHARTER PARTY dated<br><br>FREIGHT ADVANCE.<br>Received account of freight:<br><br>.............................................<br>Time used for loading......... days ......Hours | **SHIPPED** at the Port of Loading in apparent good order and condition<br>on board the Vessel for carriage to the Port of Discharge<br>or so near there to as she may safely get the goods specified above<br>Weight, measure, quality, quantity, condition, contents and value unknown<br>IN WITNESS where of the Master or Agent of the said Vessel has signed<br>the number of Bills of Lading indicated below all of his tenor and date,<br>any one of which being accomplished the others shall be void.<br>FOR CONDITIONS OF CARRIAGE SEE OVERLEAF |
|---|---|

| Freight payable at | Place and date of issue |
|---|---|
| | TANJUNG BARA, EAST KALIMANTAN, INDONESIA : JULY 04, 2020 |
| Number of original Bs/L<br><br>3 (Three) | Signature<br>As agent for and on behalf of<br>Master of MV NINGBO INNOVATION<br>Capt. YUAN SHILUN |

Printed and sold
By Wyli & Zonen B.V., Rotterdam (phone;31-010-4252827)
by the authority of the Baltic and International maritime
Council (BIMCO), Copenhagen

# BILL OF LADING

Page 1

TO BE USED WITH CHARTER-PARTIES
CODE NAME: "CONGENBILL"
EDITION 1994
ADOPTED BY
THE BALTIC AND INTERNATIONAL MARITIME COUNCIL (BIMCO)

## Conditions of Carriage

**(1)** All terms and conditions, liberties and exceptions of the Charter Party, dated as overleaf, including the law and Arbitration Clause, are herewith incorporated.

**(2) General Paramount Clause.**

   (a)  The Hague Rules contained in the International Convention for the Unification of certain rules relating to Bills of Lading, dated Brussels at the 25th August 1924 as enacted in the country of shipment shall, apply to this Bill of lading. When no such enactment is in force in the country of shipment, the corresponding legislation of the country of destination shall apply, but in respect of shipments to which no such enactments are compulsorily applicable, the terms of the said Convention shall apply

   (b)  Trades where Hague-Visby Rules apply.
      In trades where the International Brussels Convention 1924 as amended by the protocol signed at Brussels on February 23 rd 1968 – the Hague-Visby Rules – apply compulsorily, the provisions of the respective legislation shall apply to this Bill of Lading.

   (c)  The Carrier shall in no case be responsible for loss of or damage to the cargo, howsoever arising prior to loading into and after discharge from the Vessel or while the cargo is in the charge of another Carrie, nor in respect of deck cargo or live animals.

**(3) General Average.**
General Average shall be adjusted, stated and settled according to York-Antwerp Rules 1994, or any subsequent modification thereof, in London unless another place is agreed in the Charter Party.
Cargo's contribution to general Average shall be paid to the Carrier even when such average is the result of afault, neglect or error of the Master, Pilot or Crew. The Charterers, Shippers and Consignees expressly renounce the Belgian Commercial Code, Part II, Art. 148.

**(4) New Jason Clause**
In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the Carrier is not responsible, by statute, contract or otherwis, the cargo, shippers, consignees or the owners of the cargo shall contribute with the Carrier in General Average to payment of any sacrifices, losses or expenses of a General Average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the cargo. If a salving vessel is owned or operated by the Carrier, salvage shall be paid for as fully as if the said salving vessel or vessels belonged to strangers. Such deposit as the Carrier, or his agents, may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if require, be made by the cargo, shippers, consignees or owners of the goods to the Carrier before delivery.

**(5) Both-to-Blame Collision Clause.**
If the vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, neglect or default of the Master, Mariner, Pilot or the servants of the Carrier in the navigation or in the management of the Vessel, the owners of the cargo carried hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying vessel or her owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said cargo, paid or payable by the other or non-carrying vessel or her owners to the owners of said cargo and set-off, recouped or recovered by the other or non-carrying vessel or her owners as part of their claim against the carrying Vessel or the Carrier.
The foregoing provisions shall also apply where the owners, operators or those in charge of any vessels ob jects other than, or in addition to, the colliding vessels or objects are at fault in respect to a collision or contact.

For particulars of cargo, freight,<br>destination, etc., see overleaf.



 **RHODIUM** pure trade

Rhodium International Trading USA, Inc.

| Mailing address: | Registered address: | (p) +65 62399388 |
|---|---|---|
| P O Box 110 | 16192 Coastal Highway | (f) +65 6438 0946 |
| 3070 Windward Plaza | Lewes, Delaware 19958 | (w) www.rhodiumresources.com |
| Suite F | County of Sussex | Registration No. 7529127 |
| Alpharetta, GA 30005 | United States | |
| United States | | |

# PURCHASE CONTRACT

**Contract Number**     PRITUSA1661-801                                          **Date  9 JULY 2020**

**The Buyer:**
Mailing address:
P O Box 110 3070 Windward Plaza Suite F
Alpharetta, GA 30005 United States

Registered Address:
Rhodium International Trading USA, Inc.
16192 Coastal Highway Lewes, Delaware 19958
County of Sussex United States

**The Seller:**
Yeskey Enterprises Limited
Unit 1601, 16/F, Comweb Plaza
12 Cheung Yue Street Lai Chi Kok
Kowloon Hong Kong

The Seller agrees to sell and deliver, whilst the Buyer agrees to buy and take delivery of the Commodity in accordance with the terms and conditions hereunder.

| | |
|---|---|
| **Commodity** | INDONESIAN STEAM COAL |
| **Quantity** | 64,999.00 Metric Tons ("MT") |
| **Port of Loading** | Tanjung Bara, East Kalimantan, Indonesia |
| **Delivery Term** | Cost and Freight ("CFR") HAIKOU OR DONGFANG OR GUANGDONG OR QINZHOU OR MEIZHOUWAN PORT, CHINA (CFR shall be in accordance with latest Incoterms, unless modified by this Contract).  The Commodity shall be discharged on Free Out ("FO") basis. |
| **Unit Price** | USD44.43 per Metric Ton |
| **Shipment Period** | By 31 JULY 2020 latest |

**Payment**

Upon shipment, the Seller shall present the following Documents to the Buyer:

1.  Commercial Invoice for full value of the shipped commodity
2.  Ocean/ Charter Party Bills of Lading consigned To Order, Blank Endorsed, MARKED "FREIGHT PAYABLE AS PER CHARTER PARTY", NOTIFYING "FUJIAN RONGJIANG IMP. AND EXP. CO., LTD. 8-9/F., FOREIGN TRADE CENTER BUILDING, NO. 75 WUSI ROAD, GULOU DISTRICT, FUZHOU, CHINA" OR "HUAXIANG GLOBAL LIMITED 11/F, SIMSONS COMMERCIAL BUILDING, 139 JOHNSTON ROAD, WANCHAI, HONG KONG
3.  The aforementioned Documents must be issued in accordance with instructions to be provided by the Buyer. Subject to the Buyer's agreement for each delivery, an additional certified true copy to be sent to the Buyer if the aforementioned Documents are presented in copy.

Payment shall be made via Telegraphic Transfer to the Seller's Designated Account 154 days after date of Commercial Invoice and after the Documents have been accepted by the Buyer.

**Quality and Weight Determination**
Shipped weight shipped quality final at load port, with no claim basis.

**Shipping terms**
Discharge rate: CQD. No demurrage or dispatch or detention will be involved.

**Insurance**
The Buyer or the ultimate buyer shall procure the necessary marine insurance coverage, provided the shipment has been



| | | |
|---|---|---|
| Rhodium International Trading USA, Inc. | | |
| Mailing address: | Registered address: | (p) +65 62399388 |
| P O Box 110 | 16192 Coastal Highway | (f) +65 6438 0946 |
| 3070 Windward Plaza | Lewes, Delaware 19958 | (w) www.rhodiumresources.com |
| Suite F | County of Sussex | Registration No. 7529127 |
| Alpharetta, GA 30005 | United States | |
| United States | | |

executed in accordance with this Contract and the Seller has notified the Buyer of shipment within the timeline specified in this Contract. It is expressly understood that should the Seller not comply with the above, then any risk of loss shall be borne by the Seller until such time that the non-compliance is rectified or that the shipment arrives safely at the destination without any claims whatsoever.

**Force Majeure**

Force Majeure means any circumstance or event including without limitation: fire, explosion, flood, earthquake, tsunami, extreme adverse weather conditions, acts of God, riot, war or threat of war, civil commotion, act or threat of terrorism, unrest or disturbance, sabotage, blockade, embargo, legislation, prohibition, regulation or directive having the force of law, the effect of which results in prevention of the Seller ("the Affected Party") from delivering the Commodity

Neither party shall hold the other liable as a result of prevention in carrying out its obligations under this Contract, arising from Force Majeure. Notwithstanding this, the Buyer agrees that Force Majeure shall not excuse or suspend the Buyer's obligation to pay for the Commodity shipped under this Contract.

If the Force Majeure subsists for more than 30 (thirty) days, the seller shall have the right to terminate this Contract, and neither party may hold the other liable for any losses it may sustain.

**Assignment**

Neither the Buyer nor the Seller may assign their obligations and/or rights under this Contract without the consent in writing of the other party. Any purported assignment without the aforesaid consent shall be void.

**Governing Law**

This Contract shall be governed by and construed in accordance with Singapore Law. A party who is not a party to this Contract shall have no rights under the Contracts (Rights of Third Parties) Act 2001 to enforce any of the terms of this Contract.

**Arbitration**

Any dispute arising out of this Contract shall be referred to and resolved by arbitration in Singapore, in accordance with the Arbitration Rules of the Singapore International Arbitration Centre ("the SIAC") for the time being in force, which rules are deemed to be incorporated by reference to this Clause. The Tribunal shall consist of 1 (One) arbitrator to be appointed by the Chairman of the SIAC. The language of the arbitration shall be in English.

This Contract represents the entire agreement between the Buyer and the Seller, and supersedes all prior agreements, communications and understanding, whether verbal or in writing and whether directly between the Buyer and Seller or through any broker or other third parties, pertaining to the subject matter hereof. Any changes to this Contract shall be in writing, and duly agreed to by both the Buyer and the Seller.

Agreed,
For the Buyer                                                  For the Seller

**Rhodium International Trading USA, Inc.**          **Yeskey Enterprises Limited**



**Yeskey Enterprises Limited**

# INVOICE

| SHIPPED TO: | | DATE: | 13/7/2020 |
|---|---|---|---|
| **RHODIUM INTERNATIONAL TRADING USA, INC** | | INVOICE NO: | YEL/20-07/13-01 |
| MAILING ADDRESS: | | BL NO: | 095CHN20 |
| P O BOX 110, 3070 WINDWARD PLAZA SUIT F, ALPHARETTA, GA 30005, UNITED STATES | | POD: | HAIKOU OR DONGFANG OR GUANGDONG OR MEIZHOUWAN OR QINZHOU PORT, CHINA |
| REGISTERED ADDRESS: 16192 COASTAL HIGHWAY, LEWES, DELAWARE 19958, COUNTY OF SUSSEX, UNITED STATES | | POL: | TANJUNG BARA, EAST KALIMANTAN, INDONESIA |

| PAYMENT TERMS: | TT 154 DAYS FROM INVOICE DATE |
|---|---|

| S.NO | DESCRIPTION | QTY (MT) | RATE (USD) | AMOUNT (USD) |
|---|---|---|---|---|
| 1 | INDONESIAN STEAM COAL | 64,999.000 | 44.43 | 2,887,905.57 |
| | **GRAND TOTAL** | **64,999.000** | | **2,887,905.57** |

IN WORDS: USD Two Million Eight Hundred Eighty Seven Thousand Nine Hundred Five and Cents Fifty Seven Only

**BANK DETAILS:**
BENEFICIARY NAME    :  YESKEY ENTERPRISES LIMITED
BENEFICIARY ACCOUNT :  631-904-688-4   USD
BENEFICIARY BANK     :  UNITED OVERSEAS BANK LIMITED
SWIFT          :  UOVBSGSG

**Thank you for your business!**

**For YESKEY ENTERPRISES LIMITED**



**AUTHORISED SIGNATORY**

**Reg HK Address:**
Unit 1606, 16/F, Comweb Plaza
12 Cheung Yue Street
Lai Chi Kok, Kowloon, Hong Kong

**Singapore Address:**
24 Raffles Place
#25-02A  Clifford Centre
Singapore 048621



**RHODIUM** *pure trade*

Rhodium International Trading USA, Inc.

| Mailing address: | Registered address: | ☎ +65 62399388 |
|---|---|---|
| P O Box 110 | 16192 Coastal Highway | +65 6438 0946 |
| 3070 Windward Plaza | Lewes, Delaware 19958 | 🖳 www.rhodiumresources.com |
| Suite F | County of Sussex | Registration No. 7529127 |
| Alpharetta, GA 30005 | United States | |
| United States | | |

## SALES CONTRACT

| Contract Number | SRITUSA1662-801 | Date  9 JULY 2020 |
|---|---|---|

**The Seller:**

**The Buyer:**

Mailing address:

**QUAN JUN DA INDUSTRIAL CO., LTD.**

P O Box 110 3070 Windward Plaza Suite F
Alpharetta, GA 30005 United States

18/F, INTERCONTINENTAL OFFICE BUILDING, NO. 108,
GUANGDA ROAD, TAIJIANG DISTRICT, FUZHOU, FUJIAN,
350005, P.R. CHINA

Registered Address:

**Rhodium International Trading USA, Inc.**

**16192 Coastal Highway Lewes, Delaware 19958**
County of Sussex United States

The Seller agrees to sell and deliver, whilst the Buyer agrees to buy and take delivery of the Commodity in accordance with the terms and conditions hereunder.

| Commodity | INDONESIAN STEAM COAL |
|---|---|
| **Quantity** | 64,999.00 Metric Tons ("MT") |
| **Port of Loading** | TANJUNG BARA, East Kalimantan, Indonesia |
| **Delivery Term** | Cost and Freight ("CFR") HAIKOU OR DONGFANG OR GUANGDONG OR QINZHOU OR MEIZHOUWAN PORT, CHINA (in accordance with latest Incoterms, unless modified by this Contract).  The Commodity shall be discharged on Free Out ("FO") basis. |
| **Unit Price** | USD46.15 per MT |
| **Shipment Period** | By 31 JULY 2020 latest |



**Payment**

After shipment, the Seller shall present the following Documents to the Buyer:

1. Commercial Invoice for full value of the shipped commodity
2. Ocean/ Charter Party Bills of Lading consigned To Order, Blank Endorsed, MARKED "FREIGHT PAYABLE AS PER CHARTER PARTY", NOTIFYING "FUJIAN RONGJIANG IMP. AND EXP. CO., LTD. 8-9/F., FOREIGN TRADE CENTER BUILDING, NO. 75 WUSI ROAD, GULOU DISTRICT, FUZHOU, CHINA" OR "HUAXIANG GLOBAL LIMITED 11/F, SIMSONS COMMERCIAL BUILDING, 139 JOHNSTON ROAD, WANCHAI, HONG KONG

It is expressly agreed that the Seller's Commercial Invoice evidences the indebtedness of the Buyer towards the Seller. Payment will be due at 149 days after date of Commercial Invoice.  Payment shall be made by the respective due date to the Seller's nominated account set out below without any set-off or deduction whatsoever and howsoever caused, including any claims and/or disputes as to Quality, Quantity and/or demurrage/despatch (unless expressly agreed to by the Seller in writing).

Bank Name: First Republic Bank
Bank City/State: 44 Montgomery Street, San Francisco CA, 94104
ABA/Routing Transit Number: 321081669
Swift Code: FRBBUS6S
Account Number: 80007875448
Account Name: White Oak Trade Finance LLC

Reference: WOTF1_TA_US_RHODIUM_2



Rhodium International Trading USA, Inc.

| Mailing address: | Registered address: | ∴ +65 62399388 |
| P O Box 110 | 16192 Coastal Highway | ✆ +65 6438 0946 |
| 3070 Windward Plaza | Lewes, Delaware 19958 | ✉ www.rhodiumresources.com |
| Suite F | County of Sussex | Registration No. 7529127 |
| Alpharetta, GA 30005 | United States | |
| United States | | |

It is expressly understood that title to the Commodity shall only transfer to the Buyer after the Seller has invoiced the Buyer under the abovementioned Commercial Invoice.

Should the Buyer fail to pay by the due date, late payment penalty at the rate of 1% (One Percent) per month, fractions pro rata, calculated on the outstanding bill amount shall be levied on the Buyer. The Seller has the option to either obtain payment of such late payment penalty at any time prior to settlement of the bill amount, or allow such late payment penalty to be paid together with the settlement of the bill amount. For the avoidance of doubt, such provision shall not be construed as an extension of the due date, as the Buyer will be held to be in default until the bill, together with any late payment penalty, is settled in full.

The Buyer shall indemnify the Seller for all out-of-pocket costs, charges and expenses, including but not limited to legal costs, incurred by the Seller as a result of the Buyer's failure to accept the Documents, to honour Payment when due, or in connection with the Seller's enforcement, settlement or other disposition of claims with respect to the Documents.

**Quality and Weight Determination**
Shipped weight shipped quality final at load port, with no claim basis.

**Shipping terms**
Discharge rate: CQD
No demurrage or dispatch or detention will be involved.

**Insurance**
The Buyer assumes all risks of damage or loss from the time that the Commodity is placed on board the shipment vessel at the load port. Accordingly, the Buyer is responsible to procure marine insurance coverage to protect against any damage or loss to the Commodity during the entire period of transit. The Seller shall be entitled to receive a copy of a valid open policy issued by the Buyer's insurers, or the insurance certificate issued for the shipment, as evidence of the Buyer's fulfilment of this Clause.

**Taxes**
The Buyer agrees to be liable for all taxes incurred or to be incurred in the destination country and/or the domicile country of the Buyer on account of the supply of Commodity in accordance with the terms and conditions of this Contract. In the event that any payments from the Buyer should be subject to any withholding tax and/or any deduction as mandated by the Tax or Governmental authorities of the destination country and/or the domicile country of the Buyer, then the Buyer shall duly gross up the payment to the extent of the withholding tax and/or deduction such that the payment received by the Seller is equivalent to the amount had it not been subject to such withholding and/or deduction.

**Force Majeure**
Force Majeure means any circumstance or event including without limitation: fire, explosion, flood, earthquake, tsunami, extreme adverse weather conditions, acts of God, riot, war or threat of war, civil commotion, act or threat of terrorism, unrest or disturbance, sabotage, blockade, embargo, legislation, prohibition, regulation or directive having the force of law, the effect of which results in prevention of the Seller ("the Affected Party") from delivering the Commodity

Neither party shall hold the other liable as a result of prevention in carrying out its obligations under this Contract, arising from Force Majeure. Notwithstanding this, the Buyer agrees that Force Majeure shall not excuse or suspend the Buyer's obligation to pay for the Commodity shipped under this Contract.

If the Force Majeure subsists for more than 30 (thirty) days, the seller shall have the right to terminate this Contract, and neither party may hold the other liable for any losses it may sustain.

**Material Adverse Events**
It is expressly agreed that the Seller shall have the right to suspend, postpone or terminate its performance under this Contract, to require a Performance Assurance such as a secure payment instrument or Letter of Credit issued by a first class bank, as well as accelerate the due date(s) of outstanding bills under this Contract or any other contracts that may exist between the Buyer and the Seller should any Material Adverse Event(s) arise. Material Adverse Events shall be at the sole determination of the Seller, and shall include without limitation:
-        Material change in the operating or financial condition of the Buyer;
-        Material breach or default by the Buyer under this Contract, or any other contracts;
-        Material change in the legal, economic or financial environment within the destination country and/or the domicile country of the Buyer;



**RHODIUM** pure trade

Rhodium International Trading USA, Inc.

| Mailing address: | Registered address: | ☏ +65 62399388 |
|---|---|---|
| P O Box 110 | 16192 Coastal Highway | +65 6438 0946 |
| 3070 Windward Plaza | Lewes, Delaware 19958 | 🖳 www.rhodiumsources.com |
| Suite F | County of Sussex | Registration No. 7529127 |
| Alpharetta, GA 30005 | United States | |
| United States | | |

- Material change in the global financial environment or macro economy.

The aforementioned rights of the Seller shall not be subject to penalty(ies) or further liabilities of whatsoever nature. Upon the determination of a Material Adverse Event(s) by the Seller, written notification together with the decision of the Seller shall be sent to the Buyer.

**Assignment**
The Buyer may not assign its obligations and/or rights under this Contract without the consent in writing of the Seller. Any purported assignment without the aforesaid consent shall be void.

The Seller may assign any of its obligations and/or rights under this Contract by written notification to the Buyer. Upon such assignment, the Buyer shall continue to fulfill those duties and responsibilities called for under the Assignment in favour of the Assignee, including adhering to any timelines and/or due dates as stipulated within this Contract. Any failure by the Buyer to fulfill its obligations and responsibilities in favour of the Assignee may be subject to remedy and/or penalties as stipulated within this Contract, and which may be imposed by either the Assignee or the Seller. The Assignee has the right to further assign any of its assigned rights to any other party, including the Seller.

The Buyer shall bear all out-of-pocket costs and expenses (including legal fees and stamp duties) incurred in connection with the execution of any documents in relation to the Assignment(s).

**Representations and Warranties**
The Buyer represents and warrants that:
- It has obtained all the authorities, approvals and licences, and done all acts necessary under applicable laws and regulations in force to ensure the legality, validity, enforceability and admissibility of obtaining credit under this Contract and the Documents;
- It is a duly organized and legally existing corporation in the country from which the Buyer is obligated to make payment under the terms of this Contract, has legal capacity to enter into this Contract and undertake all its obligations (including payment obligations) under the said Contract;
- It has obtained all the authorities, approvals and licences under the applicable laws and regulations in force to which the Buyer is subject, to import the Commodity and pay for it in accordance with this Contract;
- Its payment obligations under this Contract and the Documents are direct, unconditional, unsubordinated and will at all times rank at least pari passu with the Buyer's other unsecured and unsubordinated obligations at present and in the future.

**Governing Law**
This Contract shall be governed by and construed in accordance with Singapore Law.
A party who is not a party to this Contract shall have no rights under the Contracts (Rights of Third Parties) Act 2001 to enforce any of the terms of this Contract.

**Arbitration**
Any dispute arising out of this Contract shall be referred to and resolved by arbitration in Singapore, in accordance with the Arbitration Rules of the Singapore International Arbitration Centre ("the SIAC") for the time being in force, which rules are deemed to be incorporated by reference to this Clause. The Tribunal shall consist of 1 (One) arbitrator to be appointed by the Chairman of the SIAC. The language of the arbitration shall be in English.

This Contract represents the entire agreement between the Buyer and the Seller, and supersedes all prior agreements, communications and understanding, whether verbal or in writing and whether directly between the Buyer and Seller or through any broker or other third parties, pertaining to the subject matter hereof. Any changes to this Contract shall be in writing, and duly agreed to by both the Buyer and the Seller.

Agreed,
For the Seller

Rhodium International Trading USA, Inc.

For the Buyer

QUAN JIN DA INDUSTRIAL CO., LTD

 **RHODIUM** pure trade

Rhodium International Trading USA Inc.
Mailing address:
P O Box 110
3070 Windward Plaza
Suite F
Alpharetta, GA 30005
United States

Registered address
16192 Coastal Highway
Lewes Delaware 19956
County of Sussex
United States

+65 62399389
+65 6436 0946
www.rhodiumresources.com
Registration No. 7529127

# COMMERCIAL INVOICE

**INVOICE NO: SIRITUSA1041**

**INVOICE TO:**
QUAN JUN DA INDUSTRIAL CO., LTD.
18/F, INTERCONTINENTAL OFFICE BUILDING,
NO. 108, GUANGDA ROAD, TAIJIANG DISTRICT,
FUZHOU, FUJIAN, 350005, P.R. CHINA

**VESSEL:** MV NINGBO INNOVATION
**SHIPMENT DATE:** 4 JULY 2020
**PORT OF LOADING:** TANJUNG BARA, EAST
KALIMANTAN, INDONESIA
**PORT OF DISCHARGE:** HAIKOU OR DONGFANG OR
GUANGDONG OR QINZHOU OR MEIZHOUWAN PORT,
CHINA
**SALES CONTRACT NO:** SRITUSA1662-801

| DESCRIPTION OF GOODS | AMOUNT |
|---|---|
| **INDONESIAN STEAM COAL**<br>BL NO.: 095CHN20<br>QUANTITY: 64,999.00 MT<br><br>UNIT PRICE: USD46.15/MT CFR HAIKOU OR DONGFANG OR GUANGDONG OR QINZHOU OR MEIZHOUWAN PORT, CHINA AS PER LATEST INCOTERMS<br><br>PAYMENT TERMS: 149 DAYS AFTER DATE OF COMMERCIAL INVOICE (13 JULY 2020)<br>PAYMENT DUE DATE: 9 DEC 2020 | |

| | TOTAL | USD 2,999,703.85 |
|---|---|---|

<u>PAYMENT INSTRUCTION</u>
Bank Name: First Republic Bank
Bank City/State: 44 Montgomery Street, San Francisco CA, 94104
ABA/Routing Transit Number: 321081669
Swift Code: FRBBUS6S
Account Number: 80007875448
Account Name: White Oak Trade Finance LLC

Reference: WOTF1_TA_US_RHODIUM_2

*For* **RHODIUM INTERNATIONAL TRADING USA, INC.**



13 JULY 2020



# 全駿達實業有限公司
## QUAN JUN DA INDUSTRIAL CO. LTD
地址：中國・福建省福州市臺江區廣達路108號世茂國際中心寫字樓18層
Add：(18/F,Intercontinental Office Building,No.108,Guangda Road,Taijiang District,Fuzhou,Fujian)
電話（Tel）：0591-63360666   傳真（Fax）：0591-63360609   郵編（Cap）：350005

**Acknowledgement of Assignment**

To:    White Oak Trade Finance, LLC
3 Embarcadero Center, 5th Floor, San Francisco, CA 94111, United States America

Attention: James Chan/ Victoria Shih

Date: 13 JULY 2020

Dear Sirs

1      We acknowledge receipt of the notice from Rhodium International Trading USA, Inc. dated 13 JULY 2020, a copy of which is attached to this Acknowledgement (the **Notice**).

1      We have not received notice that any other person has an interest in the Contract.

2      We will comply with the instructions in the Notice.

3      We agree that no amendment or termination of the Contract, nor any waiver of its terms, will be effective unless it is approved by White Oak.

4      We will not exercise any right of set-off against payments owing by us under the Contract.

5      We do not have any dispute under or in relation to the Contract including in relation to invoice number [ SIRITUSA1041 ] issued under the Contract.

Executed and delivered as a            )

**DEED by**                                         )      ...........................................

QUAN JUN DA INDUSTRIAL CO., LTD.    )      Director

acting by:                                          )
                                                         ...........................................
                                                         Director/Secretary

A witness is required if only one director signs
Signed by the Director in the presence of:
Witness name: ......................................................
Witness signature: ................................................
Witness name/address: .........................................

Contact person: ........Chen Xiuzhen.............................

Title: ..........Director / Secretary..............................

Phone number: .....+86.591. 63360666 - 663...................

Email address: ..........chenxz@quanjunda.com................

1



Rhodium International Trading USA, Inc.

| Mailing address: | Registered address: | (p) +65 62399388 |
| P O Box 110 | 16192 Coastal Highway | (f) +65 6438 0946 |
| 3070 Windward Plaza | Lewes, Delaware 19958 | (w) www.rhodiumresources.com |
| Suite F | County of Sussex | Registration No. 7529127 |
| Alpharetta, GA 30005 | United States | |
| United States | | |

**SCHEDULE 2**

**Form of Notice and Acknowledgement of Assignment of Sales Contract**

To:    QUAN JUN DA INDUSTRIAL CO., LTD.

18/F, INTERCONTINENTAL OFFICE BUILDING, NO. 108, GUANGDA ROAD, TAIJIANG DISTRICT,

FUZHOU, FUJIAN, 350005, P.R. CHINA

Date:    13 JULY 2020

Dear Sirs

**Notice of Assignment**

1    We give you notice that, under a Deed of Assignment dated 22 August 2019 entered into by us in favour of White Oak Trade Finance, LLC (**White Oak**), we have assigned to White Oak by way of security all of our rights in Sales Contract Number: SRITUSA1662-801 Dated 9 JULY 2020 (and in and to any other assets derived from any of those rights under any applicable law, including, without limitation, all amounts payable by you to us thereunder) (the **Contract**).

2    We will remain liable for our obligations under the Contract.  White Oak has no obligations under it.

3    We have agreed with White Oak not to terminate or amend the Contract or to waive any of its terms without the consent of White Oak.

4    We instruct you to:

    (a)    make all payments due to us under the Contract to the following Collection Account

            Bank Name: First Republic Bank
            Bank City/State: 44 Montgomery Street, San Francisco CA, 94104
            ABA/Routing Transit Number: 321081669
            Swift Code: FRBBUS6S
            Account Number: 80007875448
            Account Name: White Oak Trade Finance LLC
            or otherwise as White Oak shall direct by notice; and

    (b)    disclose to White Oak, without further approval from us, such information regarding the Contract as White Oak may from time to time request and to send White Oak copies of all notices issued by you under the Contract.

5    This instruction cannot be varied or terminated without the consent of White Oak.

6    This instruction is governed by English law.

Please sign the enclosed acknowledgement and return it to Rhodium International Trading USA, Inc. at:
Attn: Operations Department
9 Raffles Place #23-02/03 Republic Plaza Singapore 048619 Tel: +65 6239 9388

Rhodium International Trading USA, Inc. will subsequently forward the acknowledgement to White Oak's agent at:
Norton Rose Fulbright (Asia) LLP
9 Straits View, Marina One West Tower, #09-09, Singapore, 018937
Attn: Shernie See Tel: +65 6309 5320

...........................................................

for and on behalf of

**Rhodium International Trading USA, Inc.**

| Company Name | Customer Name | Invoice No. | Invoice Date | Invoice Due Date | Invoice Currency | Invoice Value | Balance Due | Payment Date | Payment Amount |
|---|---|---|---|---|---|---|---|---|---|
| Rhodium International Trading USA, Inc | QUAN JUN DA INDUSTRIAL CO., LTD | SIRITUSA1001 | 22/8/2019 | 16/1/2020 | USD | 2,997,970.00 | - | 17/1/2020 | 2,997,970.00 |
| Rhodium International Trading USA, Inc | QUAN JUN DA INDUSTRIAL CO., LTD | SIRITUSA1017 | 20/1/2020 | 17/6/2020 | USD | 2,999,910.00 | - | 17/6/2020 | 2,999,910.00 |
| Rhodium International Trading USA, Inc | QUAN JUN DA INDUSTRIAL CO., LTD | SIRITUSA1032 | 20/3/2020 | 17/7/2020 | USD | 2,999,880.00 | - | 10/7/2020 | 2,999,880.00 |
| Rhodium International Trading USA, Inc | QUAN JUN DA INDUSTRIAL CO., LTD | SIRITUSA1038 | 17/6/2020 | 13/11/2020 | USD | 2,999,657.70 | 1,199,657.70 | 10/6/2021 | 900,000.00 |
| Rhodium International Trading USA, Inc | QUAN JUN DA INDUSTRIAL CO., LTD | SIRITUSA1041 | 13/7/2020 | 9/12/2020 | USD | 2,999,703.85 | 2,999,703.85 | - | - |
| Rhodium International Trading USA, Inc | QUAN JUN DA INDUSTRIAL CO., LTD | DNRITUSA1004 | 18/1/2021 | 18/1/2021 | USD | 17,451.61 | 17,451.61 | - | - |
| Rhodium International Trading USA, Inc | QUAN JUN DA INDUSTRIAL CO., LTD | DNRITUSA1005 | 31/1/2021 | 14/2/2021 | USD | 58,979.94 | 58,979.94 | - | - |
| Rhodium International Trading USA, Inc | QUAN JUN DA INDUSTRIAL CO., LTD | DNRITUSA1006 | 31/1/2021 | 14/2/2021 | USD | 24,590.91 | 24,590.91 | - | - |
| Rhodium International Trading USA, Inc | QUAN JUN DA INDUSTRIAL CO., LTD | DNRITUSA1009 | 28/2/2021 | 14/3/2021 | USD | 20,904.28 | 20,904.28 | - | - |
| Rhodium International Trading USA, Inc | QUAN JUN DA INDUSTRIAL CO., LTD | DNRITUSA1010 | 28/2/2021 | 14/3/2021 | USD | 22,211.14 | 22,211.14 | - | - |
| Rhodium International Trading USA, Inc | QUAN JUN DA INDUSTRIAL CO., LTD | DNRITUSA1015 | 31/5/2021 | 14/6/2021 | USD | 60,173.50 | 60,173.50 | - | - |
| Rhodium International Trading USA, Inc | QUAN JUN DA INDUSTRIAL CO., LTD | DNRITUSA1016 | 31/5/2021 | 14/6/2021 | USD | 72,979.46 | 72,979.46 | - | - |

 **RHODIUM**
pure trade

Rhodium International Trading USA, Inc.
Mailing address:
P O Box 110   3070 Windward Plaza
Suite F Alpharetta, GA 30005
United States

Registered address:
16192 Coastal Highway
Lewes, Delaware 19958
County of Sussex
United States

+65 62399388
+65 6438 0946
www.rhodiumresources.com
Registration No. 7529127

**QUAN JUN DA INDUSTRIAL CO., LTD**

**ATTENTION : ACCOUNTS DEPARTMENT**

**Statement Generated As At**
17 June 2021

| INVOICE NO | CURRENCY | INVOICE AMOUNT | INVOICE DATE | INVOICE DUE DATE | BALANCE DUE |
|---|---|---|---|---|---|
| CUSTOMER : CNQUA001 | | QUAN JUN DA INDUSTRIAL CO., LTD | | | |
| SIRITUSA1038 | USD | 2,999,657.70 | 17/06/2020 | 13/11/2020 | 1,199,657.70 |
| SIRITUSA1041 | USD | 2,999,703.85 | 13/07/2020 | 09/12/2020 | 2,999,703.85 |
| DNRITUSA100 | USD | 17,451.61 | 18/01/2021 | 18/01/2021 | 17,451.61 |
| DNRITUSA100 | USD | 58,979.94 | 31/01/2021 | 14/02/2021 | 58,979.94 |
| DNRITUSA100 | USD | 24,590.91 | 31/01/2021 | 14/02/2021 | 24,590.91 |
| DNRITUSA100 | USD | 20,904.28 | 28/02/2021 | 14/03/2021 | 20,904.28 |
| DNRITUSA101 | USD | 22,211.14 | 28/02/2021 | 14/03/2021 | 22,211.14 |
| DNRITUSA101 | USD | 60,173.50 | 31/05/2021 | 14/06/2021 | 60,173.50 |
| DNRITUSA101 | USD | 72,979.46 | 31/05/2021 | 14/06/2021 | 72,979.46 |

| | Balance Due (USD) | Balance Due (EUR) |
|---|---|---|
| **Total** | **4,476,652.39** | **0.00** |

*"This is a computer generated statement and no signature is required"*
*Please verify the above statement promptly and notify us of any discrepancies. Any payments received after the end of the month will appear in next month's statement.*

## GREAT AMERICAN INSURANCE COMPANY POLICY

### SPECIAL BUYER CREDIT LIMIT

| INSURED #7030987 | BUYER #381182 |
|---|---|
| RHODIUM INTERNATIONAL TRADING USA, INC. 12600 DEERFIELD PARKWAY SUITE 100 ALPHARETTA, GA 30004 UNITED STATES | QUAN JUN DA INDUSTRIAL CO., LTD FUZHOU CHINA (PEOPLE`S REP) |

A Special Buyer Credit Limit is approved for the Buyer named above, subject to the following terms and conditions:

1.  Credit Limit Amount:       $ 6,000,000.00 (principal), plus interest as specified in the Declarations or in the Interest Coverage endorsement.

    Insured Percentage:       80%

2.  Payment terms:       UP TO 150 DAYS OPEN ACCOUNT FROM THE DATE OF THE INVOICE.

3.  Final shipment date:       This Special Buyer Credit Limit shall cover shipments made on or before August 01, 2020.

4.  Special conditions:       None.

This endorsement replaces previously issued endorsement number 11

Effective date of
this Endorsement October 01, 2019       To form a part of Policy no. GLMB-123147
        12:01 A.M
Issued to RHODIUM INTERNATIONAL TRADING       FOR THE INSURER
        USA, INC.

Date of issue November 21, 2019

Endorsement no. 16       President
        FCIA Management Company, Inc.

Broker no. 76400    Primary Insured no. 7030987



Rhodium International Trading USA, Inc.
| Mailing address: | Registered address: | +65 62306388 |
| P O Box 110 | 16192 Coastal Highway | +65 6438 0946 |
| 3070 Windward Plaza | Lewes, Delaware 19958 | www.rhodiumresources.com |
| Suite F | County of Sussex | Registration No. 7529127 |
| Alpharetta, GA 30005 | United States | |
| United States | | |

## DEMAND LETTER FOR PAYMENT

**Quan Jun Da Industrial Co., Ltd**
18/F, Intercontinental office building,
No.108, Guangda Road, Taijiang District,
Fuzhou, Fujian, 35005
China.

Attn: Li Zong Ming
Date: 05 April 2021

## TOTAL AMOUNT DUE USD 5,999,361.55

Dear Li Zong Ming
We refer to the following:

| Contract Number | Invoice Number | Currency | Invoice Value | Invoice Due Date |
|---|---|---|---|---|
| SRITUSA1656-801 | SIRITUSA1038 | USD | 2,999,657.70 | 13-Nov-2020 |
| SRITUSA1662-801 | SIRITUSA1041 | USD | 2,999,703.85 | 09-Dec-2020 |

(Collectively, the "**Outstanding Invoice(s)**").

The Outstanding Invoice(s) was/were issued and became due on the respective invoice due date(s). Notwithstanding our repeated reminders and requests for payment under the Outstanding Invoice(s), you have refused and/or neglected to make payment of the outstanding sum due to us. The sum of **USD 5,999,361.55** is exclusive of interest which continues to accrue pursuant to relevant clause of the above-mentioned contract(s) which allows for interest on unpaid invoices.

In the circumstances, we **HEREBY DEMAND** that full payment of **the Outstanding Invoice(s)** be made to us **IMMEDIATELY**. Please make payment to the account listed in the above-mentioned invoice(s).

**TAKE NOTICE** that unless full payment is received within seven (7) business days from the date of this demand, we will proceed with such legal action against you as we deem fit without further reference to you.

All of our rights are reserved.

Sincerely,

Rhodium International Trading USA, Inc.