# EXHIBIT H

 **Trade Credit & Political Risk**

August 2, 2021

VIA Email: cheam@rhodiumresources.com; ojas@rhodiumresources.com; michael.wyer@rhodiumresources.com

RHODIUM INTERNATIONAL TRADING USA, INC.
12600 DEERFIELD PARKWAY
SUITE 100
ALPHARETTA, GA 30004
UNITED STATES

<u>ATTN</u>: Cheam Hing Lee, et al

> RE: LEMARC AGROMOND LIMITED (Our claim no. 22969)
> Invoices SIRITUSA 1033, SIRITUSA1034

Dear Messrs. Lee, Doshi, and Wyer,

The purpose of this letter is to notify Rhodium International Trading USA, Inc. ("Rhodium Trading") of FCIA Management Company, Inc., now known as FCIA Trade Credit & Political Risk Division of Great American Insurance Company ("FCIA")'s position with respect to Rhodium Trading's Notice of Claim and Proof of Loss dated April 30, 2021 (the "Claim") under Policy No. GLMB-123147 (the "Policy") for Invoices SIRITUSA1033 and SIRITUSA1034 issued to Lemarc Agromond Limited ("Lemarc" or the "Buyer"). We acknowledge receipt of Mr. Wyer's email dated June 17, 2021, along with the documents attached thereto. This letter supplements our prior correspondence of June 4, 2021.

Based on the information received, we understand that Invoices SIRITUSA1033 and SIRITUSA1034 (the "Invoices") are the subject of a dispute between you and the Buyer. Thus, by operation of Article 3-F of the Policy, "until you have established the indebtedness to be a valid and legally enforceable indebtedness of the Buyer in the courts of the Buyer's country or you have settled the dispute with our prior written approval," the Policy does not provide any potential indemnification of the claimed loss. Therefore, we will keep our claim file open pending resolution of your dispute with the Buyer. We ask that you inform us immediately of any potential settlement with the Buyer so we can review the potential settlement and consider whether to provide prior written consent. **We emphasize that our prior written consent is mandated by the Policy for any settlement of Rhodium Trading's dispute with the Buyer. If a settlement is reached without our prior written consent, then any claim for coverage will be subject to denial.** Once the indebtedness has been established in the courts or a settlement with our prior written consent has been reached between you and the Buyer, the benefits potentially available under the Policy shall be limited to the Buyer's non-payment of the valid and enforceable settlement amount or the valid and enforceable amount established by the courts, not the original amount of the Invoices.

In short summary, if the dispute is resolved in accordance with Article 3-F of the Policy, we will then proceed to adjust the Claim once we receive (1) documents confirming satisfaction of Article 3-F and (2) the other materials set forth below that will be necessary to determine whether the Claim is otherwise covered under the Policy. To be clear, we are deferring adjustment of this Claim, including the investigation or consideration of any other potential coverage defenses, and not closing our file, pending resolution of the dispute with the Buyer. Please do not hesitate to contact the undersigned if you wish to discuss the Claim or any of this letter's contents. In the meantime, FCIA reserves all rights under the Policy, at law, and in equity with respect to the Claim, and acknowledges Rhodium Trading's rights as likewise reserved.

### The Policy

The Policy period ran from August 1, 2019 to August 1, 2020. The Policy provides certain insurance for certain trade transactions involving agricultural commodities, ferrous and non-ferrous metals, and coal, subject to all Policy terms, conditions, exclusions, other provisions, and applicable law. The Policy carries a Deductible of $1,000,000. The Credit Limit Amount for covered transactions involving the Buyer is $2,000,000 plus interest. The Insured Percentage is 90%. Pursuant to Endorsement No. 9, the Policy's Loss Payee is a White Oak entity, White Oak Trade Finance, LLC.

### Background

Based on the information received, there are two invoices at issue in this Claim:

| *Invoice Number* | *Contract No.* | *Amount* | *Due Date* | *Hereinafter* |
|---|---|---|---|---|
| SIRITUSA1034 | SRITUSA1646-865 | $768,440.00 | Sept. 3, 2020 | "Invoice 1" |
| SIRITUSA1033 | SRITUSA1648-851 | $1,480,421.10 | Sept. 18, 2020 | "Invoice 2" |

By letter dated September 10, 2020 with the subject line "Formal Legal Notice of Dispute – Breach of Contract" to Rhodium Trading's parent company, Rhodium Resources Pte Ltd ("Rhodium Resources," now Antanium), the Buyer provided information to Rhodium Resources concerning an alleged breach of contract by Rhodium Resources. By letter dated September 15, 2020, with the subject line "Second Legal Notice of Dispute – Breach of Contract and Exercise of LMA's Contractual Rights Thereunder," the Buyer provided notice of its "exercise of LMA's contractual rights thereunder." Among other things, the Buyer specifically stated that it was exercising a "right to set-off" based on a schedule of amounts payable to Rhodium Resources and its various affiliates. The referenced schedule includes both Invoice 1 and Invoice 2.

We are in receipt of a Demand Letter dated September 17, 2020, from Rhodium Trading to Buyer, which demands payment with respect to Invoice 1 and reminds the Buyer that Invoice 2 was imminently due. While the Buyer denies receiving the letter, we note your statement that Rhodium Trading's Demand Letter was sent by "surface mail," in contrast to the two letters described above that reflect transmission by the Buyer through email.

By letter dated September 22, 2020 to the Buyer, Rhodium Resources, through its counsel Hill Dickinson, denied that the Buyer had any right to set off and demanded that the Buyer pay the money owed on various invoices, including Invoice 1 and Invoice 2.

We are in receipt of an email dated December 4, 2020 from the Hong Kong International Arbitration Centre confirming "that the parties have agreed to a stay of the proceedings." We do not have any other documents from the arbitration proceeding, but it is our understanding that the arbitration proceeding remains pending, although it is stayed.

By letter to us dated May 24, 2021, the Buyer denied that it received the September 17, 2020 demand letter and stated that "the payments under the Contracts have been legally and contractually set off through a separate exercise of remedial right." The Buyer's letter also stated that the arbitration proceedings were stayed at Rhodium Trading's request. The Buyer emphasized its position that it is not liable for Invoice 1 or Invoice 2, stating, "For the avoidance of doubt, LMA reiterates under no circumstances, is LMA liable to pay Rhodium either at law or by virtue of the Contracts which have already been legally and contractually set off."

On June 4, 2021, we sent you a letter that set forth our preliminary findings with respect to the Claim, including "that Lemarc considers this matter to be a dispute." We noted that "[w]e have not given prior written approval for any settlement, and we are unaware of any settlement."

Our June 4 letter also requested the following information:

- Lemarc claims to have never received your demand letter to them dated 17 September, 2020 (a copy of which we previously provided to them). Please provide us with proof of delivery of the letter, or confirmation that the letter was not sent.
- Please provide us with copies of correspondence from Lemarc to Rhodium dated 10 September 2020 and 15 September 2020, which are referred to in point four of Lemarc's letter.
- Please provide us with copies of all additional documentation and correspondence related to Lemarc's dispute.
- Please provide us with all documents associated with any arbitration proceedings involving Rhodium and Lemarc or the goods that are the subject of your claim, including HKIAC Ref: HKIAC/A20272.
- Please provide us with documents from the courts establishing the indebtedness to be a valid and legally enforceable indebtedness of the Buyer, any settlement of the dispute, or confirmation that there is no such settlement or documents from the courts.

By email dated June 17, 2021, Mr. Wyer responded to our June 4 letter. Mr. Wyer represented "that there is no active arbitration with Lemarc, that there is no set-off agreement with Lemarc and that we do not have a dispute with Lemarc." Mr. Wyer

provided some of the information requested in our June 4 letter, but we did not receive all documents associated with the arbitration proceedings. In addition, it appears that there are other documents related to the dispute that are outstanding.

### Limited Initial Evaluation

Under Article 3-F of the Policy, "We will not apply to the Deductible or indemnify you for any loss: . . . where a dispute exists between you and the Buyer, until you have established the indebtedness to be a valid and legally enforceable indebtedness of the Buyer in the courts of the Buyer's country or you have settled the dispute with our prior written approval."

Based on the information received and discussed above, we respectfully disagree with Mr. Wyer's statement that there is no dispute between the Buyer and Rhodium Trading. On the contrary, the Buyer states plainly that it will never be liable for the money that is the subject of Invoice 1 and Invoice 2, whereas Rhodium Trading takes the position that the Buyer owes the entire amounts of both invoices to Rhodium Trading. Although we acknowledge Mr. Wyer's statement that the arbitration proceeding regarding this dispute is not "active," it remains pending, and Mr. Wyer's statement that Rhodium Trading has "not *yet* escalated our collections to the courts" is a tacit acknowledgment that such an escalation could transpire in the future. Therefore, this exclusion applies to preclude coverage "until you have established the indebtedness to be a valid and legally enforceable indebtedness of the Buyer in the courts of the Buyer's country or you have settled the dispute with our prior written approval."

Once you establish "the indebtedness to be a valid and legally enforceable indebtedness of the Buyer in the courts of the Buyer's country" or receipt of a settlement of the dispute made **with our prior written consent**, we will be prepared to adjust your Claim. To do so, we will need at least, but not limited to, the following documents or confirmation from Rhodium Trading that the requested documents do not exist:

- All purchase orders for the transacted goods underlying each of the subject invoices. If none exist, please provide all correspondence between Rhodium Trading and the Buyer showing how these transactions were initiated;
- All bills of lading underlying each of the subject invoices that were not previously provided to us, or confirmation that we have already received them all;
- Documents demonstrating that the goods underlying the invoices were actually shipped to and delivered to the Buyer or confirmation that no such documents exist;
- Documents demonstrating the full chain of ownership of the underlying commodity goods/inventory at issue from the very beginning of the formation of the subject transactions to the present;
    o To address this request adequately, we expect proof of payment from Rhodium Trading to its immediate suppliers for the underlying goods, any records on any electronic trading platform demonstrating the transactions,

- and any confirmation of payment or similar acknowledgment Rhodium Trading received from its suppliers.
- Documents demonstrating the full chain of ownership of the subject receivables from the very beginning of the formation of the subject transactions to the present;
- If any receivable has been purchased, sold, satisfied, transferred, exchanged, or otherwise assigned by anyone to anyone at any time following the sale of the subject goods to the Buyer, kindly provide the transaction date, the seller, the purchaser, and the consideration paid for the receivable for each such transaction, as well as documents supporting the same;
- If not provided to us previously or in response to the above requests, please provide all documents exchanged by Rhodium Trading, any of its affiliates, or the loss payee that relate to or demonstrate any payments of or relating to the subject invoices or their underlying financing, including all applicable finance agreements and any documents purporting to assign any right under any such agreement, invoice, receivable, or the Policy;
- Copies of all other insurance policies under which Rhodium Trading, or any of its affiliates, have sought, or could seek, to collect benefits with respect to the subject invoices; and
- A payment ledger reflecting, from January 1, 2019, to September 18, 2020, all prior payments from the Buyer to Rhodium Trading and its affiliates, the original due date for each such payment, and the date each payment was received.

### **Conclusion and Reservation of Rights**

In sum, we will keep our claim file open pending resolution of your dispute with the Buyer. We ask that you inform us immediately of any potential settlement with the Buyer so we can review the potential settlement and consider whether to provide prior written consent. Until then, there is no indemnification available for the Claim by operation of Article 3-F of the Policy, and thus we will defer adjustment of the claim until the dispute with the Buyer is resolved. If the dispute with the Buyer concludes in a manner that does not foreclose coverage, then we direct your attention to the above requests for information and look forward to proceeding with adjustment of the Claim.

This letter is not, and should not be construed as, a waiver of any terms, conditions, exclusions, or other provisions of the Policy, or any other policies of insurance issued by FCIA, Great American Insurance Company, or any of their affiliates. FCIA expressly reserves all rights, at law and in equity, under the Policy, including the right to assert additional grounds for the denial or limitation of coverage.

In this connection, FCIA emphasizes that it does not waive any rights available to it under Endorsement No. 6, which states, among other things:

No action may be brought against the Insurer prior to 60 days after submission of a complete, accurate and satisfactory proof of Loss and unless a written demand is made on the Insurer 30 days prior to bringing such action. No action of any kind may be brought against the Insurer more than 2 years after the date of Default.

FCIA will rely on this contractual limitations provision if there is ever a formal proceeding related to this Claim.

Accordingly, all of FCIA's rights remain fully reserved. Any actions taken by Rhodium Trading, or any of its representatives, that are inconsistent with the information set forth herein are taken at the entity's or person's sole risk. As such, FCIA shall not be estopped from taking any action consistent with its full and complete reservation of rights.

Please do not hesitate to contact the undersigned at +1 (212) 885-1508 or mdelmendo@fcia.com should you wish to discuss any aspect of this matter or this letter.

Kind regards,

Michael Delmendo
Senior Claims Recovery Specialist
FCIA Management Company, Inc.

Cc: Andrew Baldauf, Sr. Client Service Representative, Credit Specialties
Marsh JLT Specialty
1166 Ave of the Americas, New York, NY, 10036
via email: ANDREW.BALDAUF@marsh.com

Ling Vey Hong LL.B. (Hons)
Vice President, Claims Advocate – FinPro
Claims Solutions, Marsh Advisory
Marsh Singapore Pte Ltd
8 Marina View #09-02, Asia Square Tower 1, Singapore 018960
via email: Vey-Hong.Ling@marsh.com