IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| SNAPTECH, LLC ) <br> ) <br> PLAINTIFF, ) <br> ) <br> v. ) <br> ) <br> QUANTUMRHINO, INC., ) <br> ) <br> DEFENDANT. ) <br> _____) | Civil Action No. _____ |

## **COMPLAINT**

Plaintiff Snaptech, LLC ("**Snaptech**"), files this Complaint against Defendant QuantumRhino, Inc. ("**QR**"), and alleges as follows:

## **PARTIES**

1. Snaptech is a Georgia limited liability company with its principal place of business in Atlanta, Georgia.

2. The individual members of Snaptech are citizens of Georgia.

3. QR is a Delaware corporation with its principal place of business in Arizona.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 due to the complete diversity of citizenship of the parties and because the amount in controversy exceeds $75,000.

5. The Court has personal jurisdiction over QR because the contract at issue, executed by both parties, contains a forum selection clause that provides any action or suit initiated in relation to the contract must be brought in federal or state court located in the city of Atlanta, Georgia. The contract further provides that the agreement between the parties shall be construed as a contract made in the State of Georgia and governed by the laws of the State of Georgia, without regard to conflict of law principles.

6. Venue is proper in this Court due to the forum selection clause in the contract at issue.

## FACTUAL ALLEGATIONS

7. The material facts underlying Snaptech's claims in this Complaint are straightforward.

8. Snaptech is a boutique software firm and business consultancy focused on software-as-a-service (SaaS) products.

9. QR is a software consulting firm.

10. QR contacted and engaged Snaptech in a three (3) month SOW to address delivery challenges QR had with their own personnel in developing software, including an application programming interface ("**API**") utilizing NestJS/NodeJS, that QR intended to deploy by the end of 2022 as part of an Overtime Management System for a Software as a Service ("**SaaS**") platform for the Las Vegas Metropolitan Police Department ("**LVMPD**").

11. Snaptech and QR entered into a Master Services Agreement (the "**MSA**"), effective as of August 22, 2022, under which Snaptech would provide professional services to QR.

12. Attached to the MSA was a statement of work ("**SOW A**" and collectively with the MSA, the "**Agreement**"). A true and correct copy of the Agreement is attached hereto as **Exhibit A**.

13. In consideration for Snaptech's professional services and pursuant to the Agreement, QR was to pay Snaptech a $120,000 retainer fee ("**Retainer**"), either (1) 100% due at the time of execution of SOW A or (2) $40,000.00 due at the time of execution of SOW A, $40,000.00 due 30 days after signing, and $40,000.00 due 60 days after signing.

14. SOW A was executed on August 23, 2022 by Marin Ursu – QR's Chief Information Officer and a Managing Partner of Quantum Rhino, Inc.

15. QR never paid any of the Retainer.

16. Snaptech performed its obligations under the Agreement.

17. Pursuant to Section 1 of the MSA, Snaptech's primary point of contact with QR was Dan Durbin with a defined responsibility to "manage and/or coordinate the project requirements, and/or assignment and delivery for any resources provided by Snaptech."

18. Snaptech communicated with Mr. Durbin throughout the course of the engagement in fulfilling a wide-variety of requested services including changes to software architecture, fixing code quality issues with QR's offshore India team, database design, Amazon Web Services infrastructure, testing automation, navigating QR personnel changes, and ongoing adjustments to business requirements including pairing down features and simplification of the API to address delivery deadlines and issues with the technical expertise of the India-team responsible for integrating the web-based User Interface with the API.

19. QR's Director of Integrations/Software Development Mr. Dan Durbin, QR's Chief Information Officer Mr. Marin Ursu, QR's Chief Executive Officer Mr. Chris Sinkwitz, Chief Technology Officer Mr. Chris Reynolds, and other QR personnel requested that Snaptech perform work and advisory services throughout the duration of SOW A.

20. Snaptech completed work and delivered software that was regularly integrated on an ongoing basis into QR's Github account and deployed for testing and user acceptance (by QR and QR's client LVMPD) throughout the duration of SOW A. Snaptech concluded work on or around November 18, 2022 with approximately 8% of the $120,000 budget remaining.

21. Thereafter, on December 8, 2022, Snaptech issued its invoices to QR (the "**Invoices**") via Intuit QuickBooks totaling $111,912.50. True and correct copies of the Invoices (#5533, #5534, #5535, #5536, #5537) are attached hereto as **Exhibit B**.

22. The Invoices were due on receipt and Intuit audit logs show all invoices were viewed initially by QR personnel on 12/09/2022 and several more times within the following week.

23. Section 3(a) of the MSA requires that if QR does not object to the Invoices, the work product "will be considered accepted after 15-days from the invoice statement date."

24. QR did not respond nor raise any objections to any of the Invoices within 15 days of their statement dates.

25. QR did not pay the Invoices upon receipt.

26. Snaptech followed up with QR via email on December 26, 2022 regarding payment of the Invoices along with a copy of all invoices attached. QR did not respond.

27. Snaptech then sent a letter (the "**Demand Letter**") on January 13, 2023, demanding that QR pay the Invoices in full by January 31, 2023. QR responded to the Demand Letter on February 1, 2023, refusing to pay the Invoices (the "**Response Letter**"). The Response Letter—sent 55 days after the Invoices were delivered—is the first time that QR purportedly objected to the Invoices.

28. On February 18, 2023, Snaptech replied to the Response Letter, rebutting QR's alleged justification for nonpayment, and reiterated the demand for payment (the "**Reply Letter**"). The Reply Letter also expressed Snaptech's intention to file a lawsuit if QR failed to pay Snaptech in full within 10 days.

29. Despite these repeated demands, QR has failed and refused to pay any of the Invoices thereby leaving Snaptech with no choice but to file this Complaint.

## COUNT I: BREACH OF CONTRACT

30. Snaptech repeats and re-alleges the allegations contained in paragraphs 1 through 29 of this Complaint as if fully set forth herein.

31. Snaptech and QR entered a valid and binding Agreement, and QR agreed to compensate Snaptech for its services.

32. Snaptech tendered full performance of its obligations under the Agreement by providing software development and other technical and business advisory services to QR upon request.

33. QR breached its obligations to Snaptech by failing to fund the retainer and subsequently refusing to pay the Invoices more than 50 days after receiving them.

34. As a direct and proximate consequence of QR's failure to pay the Invoices, Snaptech has suffered actual damages, for which Snaptech is entitled to recover $111,912.50, plus interest at the contract rate of 1.5% per month.

## COUNT II: QUANTUM MERUIT AND UNJUST ENRICHMENT

35. Snaptech repeats and re-alleges the allegations contained in paragraphs 1 through 29 of this Complaint as if fully set forth herein.

36. Pursuant to Georgia law, and in the alternative to Count 1, Snaptech pleads a cause of action against QR for quantum meruit and unjust enrichment.

37. Snaptech provided valuable services to QR pursuant to the Agreement which QR leveraged to accelerate their software development for their Overtime Management System. Among those services were extensive API software programming, integrations from their India-based offshore software team, Amazon Web Services infrastructure design/optimization, database schema design, coding

reviews, automated continuous integration/development of software, test-driven development, software architectural reviews, and business planning including triaging the abrupt exit of QR's CIO Marin Ursu on or about October 7, 2022.

38. As a direct result of Snaptech's provision of valuable services, tangible benefits were conferred on QR including significant contributions to software architecture, programming, execution strategy, and infrastructure. Non-tangible long-term benefits including mentorship and coaching of their offshore teams, transfer of knowledge regarding best practices and patterns to their senior technical managers including technical subjects such as Services Oriented Architecture, relational database schema design, NestJS technology, and assessment of their software teams and software.

39. Snaptech reasonably expected payment from QR for its services, and QR knew Snaptech expected such payment.

40. QR used and accepted Snaptech's services and had notice that Snaptech expected to be paid by QR for such services.

41. As a direct and proximate result of QR's failure to pay Snaptech for its services, Snaptech has been damaged and is entitled to recover the reasonable value of the services it provided to QR in the amount of $111,912.50.

## COUNT III: ATTORNEYS' FEES

42.     Snaptech repeats and re-alleges the allegations contained in paragraphs 1 through 29 of this Complaint as if fully set forth herein.

43.     Because QR failed and refused to pay the Invoices, Snaptech was required to expend considerable time and resources pursuing compensation and to retain attorneys to prosecute this action.

44.     QR's failure and refusal to pay the Invoices has been in bad faith, stubbornly litigious, and has caused unnecessary trouble and expense for Snaptech.

45.     Accordingly, Snaptech is entitled to recover its attorneys' fees and expenses of litigation pursuant to O.C.G.A. § 13-6-11.

## PRAYER FOR RELIEF

For these reasons, Snaptech respectfully requests that the Court issue summons for QR to appear and answer, and that Snaptech be awarded a judgment against QR for the following:

      a.     Compensatory damages in the total amount of $111,912.50;

      b.     Pre-judgment interest at the contracted rate of 1.5% per month;

      c.     Post-judgment interest to the fullest extent permitted by law;

      d.     Court costs;

      e.     Attorneys' fees; and

  f. All other relief that the Court deems just and proper.

Date: March 2, 2023    Respectfully submitted,

          **MORRIS, MANNING & MARTIN, LLP**

          By: */s/ Eric A. Larson*
           Eric A. Larson
           Georgia Bar No. 800631
           Nathan R. Miles
           Georgia Bar No. 829924

          *Attorneys for Plaintiff Snaptech, LLC*

1600 Atlanta Financial Center
3343 Peachtree Road NE
Atlanta, Georgia 30326
Telephone: (404) 233-7000
Facsimile:  (404) 365-9532
elarson@mmmlaw.com
nmiles@mmmlaw.com