UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| PATRICK RUEFF, ) | |
| ) | |
| Plaintiff, ) | CIVIL ACTION |
| ) | FILE NO. |
| v. ) | |
| ) | **JURY TRIAL DEMANDED** |
| GLOBAL INDUSTRIAL ) | |
| COMPANY ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

Plaintiff Patrick Rueff ("Mr. Rueff" or "Plaintiff") brings this Complaint against Defendant Global Industrial Company ("Global" or "Defendant") and sets forth the following claims:

## INTRODUCTION

1. Plaintiff began working at Defendant in December 2016.

2. Mr. Rueff is a military veteran and suffers from Posttraumatic Stress Disorder ("PTSD") which constitutes a serious health condition under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*

3. After Mr. Rueff took FMLA leave for his serious health condition, Global retaliated against him and interfered with his FMLA rights, ultimately terminating Mr. Rueff when he sought to return to work following his protected

1

FMLA leave.

4.      Accordingly, Mr. Rueff asserts claims against Defendant for interference and retaliation under the FMLA.

5.      Mr. Rueff seeks injunctive and declaratory relief, back pay and lost benefits, front pay or reinstatement, liquidated damages, and attorneys' fees and costs of litigation.

## JURISDICTION AND VENUE

6.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights).

7.      Venue is proper in this Court because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district. *See* 28 U.S. Code § 1391(b)(2).

## THE PARTIES

8.      Mr. Rueff is now, and was at all times relevant to this action, a resident of the State of Georgia.

9.      Mr. Rueff is an "eligible employee" within the meaning of the FMLA because during the relevant time period, Mr. Rueff was employed with Global for more than twelve months and worked more than 1,250 hours per year. 29 CFR § 825.110.

10. Defendant Global is a foreign for-profit corporation that is registered with the Georgia Secretary of State. Its principal place of business is 11 Harbor Park Drive, Port Washington, NY, 11050.

11. Defendant Global regularly transacts business in the State of Georgia.

12. Defendant Global is a covered employer under the FMLA, as during the relevant time period it engaged in commerce or in any industry or activity affecting commerce, and employed 50 or more employees for each working day during each of twenty or more calendar workweeks in the current or preceding calendar year within the meaning of the FMLA, 29 U.S.C. § 2601 *et seq*.

13. Defendant Global may be served with a summons and copy of the Complaint in this action by delivering process to its registered agent: Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Ga, 30092.

## STATEMENT OF FACTS

14. Mr. Rueff began working for Global as a Continuous Improvement Manager in October 2019.

15. At all relevant times, Mr. Rueff worked at Global's facility in Buford, GA, Gwinnett County.

16. Mr. Rueff is a military veteran and suffers from Posttraumatic Stress Disorder ("PTSD").

17. Mr. Rueff communicated his PTSD to Human Resources at the time Global hired him.

18. On or about December 3, 2020, Mr. Rueff shared with his supervisor, Jared DeMott, that he was experiencing difficulty his memory as a result of his PTSD.

19. On or about December 8, 2020, Mr. Rueff requested FMLA leave to receive treatment for his PTSD.

20. On or about December 18, 2020, Global notified Mr. Rueff that his FMLA request had been approved, effective December 14, 2020 through February 29, 2021, and that he was to follow up with Global two weeks before his anticipated return to work date.

21. In January 2021, Mr. Rueff sought to return to work part-time to begin the transition back to full-time work.

22. On or about January 19, 2021, Global requested a doctor's release, including any restrictions, before Mr. Rueff could return to work. Mr. Rueff provided an email from his physician stating that he was cleared to return to part-time work and also provided a copy of a request for a reasonable accommodation under the Americans with Disabilities Act ("ADA").

23. Mr. Rueff's physician communicated directly with Global on February

3, 2021 regarding Mr. Rueff's ADA accommodation request and how the doctor believed the requests were reasonable.

24. Mr. Rueff intended for his request for accommodation to apply only to the limited time he was to work part-time before his return to full-time work..

25. From then on, Global shuffled Mr. Rueff between various representatives of Global or parent Systemax while never adequately addressing his questions or concerns.

26. Mr. Rueff spoke with Natalie Dalton of Global on or around February 5 and asked for the copy of any accommodations paperwork she had. Global's HR Department then referred Mr. Rueff to Stacy Robinson at Systemax.

27. Mr. Rueff contacted Ms. Robinson and left her a message.

28. On or about February 8, Mr. Rueff sent a text message to Mr. DeMott that he was still waiting to hear back from Ms. Robinson about approval for him return to work.

29. On or about February 9, Mr. Rueff called and emailed Ms. Dalton and left voicemails for Ms. Robinson at Systemax and with Susan Foster at Global HR.

30. On or about February 10, Mr. Rueff spoke with Ms. Foster, and she directed him to contact Ms. Robinson. Mr. Rueff left a voicemail with Ms. Robinson that same day and also sent her an email later that afternoon.

31. Ms. Robinson responded to Mr. Rueff's email and said she was going to reach out to local HR to familiarize herself with his matter.

32. The next day, Ms. Robinson left Mr. Rueff a voicemail stating she met with local HR, Mr. DeMott and Greg Witowski, who was Mr. DeMott's supervisor. Ms. Robinson stated that she wanted to give Mr. Rueff an update on what they discussed in the meeting and what their expectations were.

33. Ms. Robinson told Mr. Rueff in their follow up conversation that Global wanted him to be evaluated by another doctor and she was going to get back to him with details.

34. Mr. Rueff continued to follow up with Ms. Robinson and left a number of messages requesting further detail. Mr. Rueff also communicated with Camille Jordan of Global to ask her about his return to work and to inform her he was having difficulty getting a response from Ms. Robinson.

35. Ms. Jordan stated she was going to call Ms. Robinson about Mr. Rueff's situation.

36. Mr. Rueff continued to try to reach Ms. Robinson. He also contacted Mr. DeMott about the delayed process and Mr. Rueff's constant attempts to track down responsive information. Mr. Rueff continued to leave voicemails for Ms. Robinson and sent her an email noting how long the process had taken.

37. Ms. Robinson called Mr. Rueff back on a Friday afternoon. He returned her call the following Monday, left two separate voicemails and ultimately was able to speak with Ms. Robinson.

38. Ms. Robinson stated that Global wanted Mr. Rueff to get a "second opinion" on his "leave request" through MDLIVE.

39. Mr. Rueff attempted to work through MDLIVE to get a second opinion regarding his return-to-work status but Ms. Robinson sent Mr. Rueff forms that he had completed at the beginning of his leave.

40. Ms. Robinson stated that MDLIVE needed to complete the FMLA request form with Certification of Health Care Provider ("CHP") form along with the FMLA - Notice of Eligibility & Rights & Responsibilities. Mr. Rueff communicated this to MDLIVE only to be told by MDLIVE that they do not offer this service.

41. Mr. Rueff relayed what MDLIVE told him back to Ms. Robinson.

42. Ms. Robinson had stated that she needed the CHP form completed by MDLIVE because the CHP form addresses Mr. Rueff's "further need for leave (or not) and any accommodations recommended." Then, she stated that GDI wanted MDLIVE to complete the forms because GDI wanted a second opinion of Mr. Rueff's leave.

43. Mr. Rueff communicated this to MDLIVE which told him they could not provide a second opinion on leave requests, and he informed Ms. Robinson of this.

44. Mr. Rueff then consulted a treating medical provider at his practice who completed the clearance form and sent it to Global , who acknowledged receipt.

45. This form stated that Mr. Rueff was medically cleared to return to work full-time with no restrictions.

46. Mr. Rueff continued to try to get some meaningful response from Global about his return to work but to no avail.

47. When Mr. Rueff attempted to return to work upon the conclusion of his FMLA leave, Global denied him entry to his workplace.

48. The local Human Resources representative told Mr. Rueff that there was no return-to-work date scheduled for him and that he would have to follow up with the HR representatives he had been communicating with. Mr. Rueff returned home and attempted to do so multiple times on both March 1 and 2, 2021 without response.

49. After close of business on March 2, 2021, Mr. DeMott, and another HR representative called Mr. Rueff to inform him that he was being terminated allegedly due to the company's inability to meet his requested accommodations.

50. But Mr. Rueff was not seeking any accommodations at that point because his need to work part-time had passed and he had provided Global with a medical note that he was cleared to return to work with no restrictions.

## COUNT ONE
## INTERFERENCE IN VIOLATION OF THE FMLA

51. Mr. Rueff incorporates by reference paragraphs 1 through 50 of this Complaint.

52. Mr. Rueff was an eligible employee with a serious health condition as that term is defined by the FMLA and accompanying regulations, specifically 29 U.S.C. § 2611(11) and 29 C.F.R. § 825.113.

53. Global terminated Mr. Rueff which denied him his right to return to his same or equivalent job position following his protected FMLA leave and also interfered with his ability to use further FMLA leave.

54. Global also frustrated and unreasonably interfered with Mr. Rueff's leave and right to return to work by its failure to communicate with him, inconsistent communications and instructions when it did communicate with him, and insistence on Mr. Rueff taking certain actions despite Mr. Rueff's explaining that the entities to which Global directed him would not perform such services.

55. Global's actions in interfering with Mr. Rueff's FMLA leave were committed with reckless disregard for his right to take up to twelve work weeks of

leave time for a serious health condition and to be returned to his job position or an equivalent position and were in violation of the FMLA, 29 U.S.C. § 2615(a)(1).

56. Global acted willfully in interfering with Mr. Rueff's FMLA leave in violation of the FMLA through its voluntary and reckless disregard for Mr. Rueff's rights under the FMLA.

57. The effect of Global's FMLA interference has been to deprive Mr. Rueff of a job, as well as income in the form of wages, and other economic benefits of employment due to him, solely because of his right to leave under the FMLA.

58. Mr. Rueff is entitled to both equitable and monetary relief for Global's violation of the FMLA, specifically 29 U.S.C. § 2617(a)(1)(A) and (B), including back pay, front pay or reinstatement, attorney's fees and costs of litigation.

59. Mr. Rueff is also entitled to liquidated damages for Global's violation of his rights under the FMLA, 29 U.S.C. § 2617(a)(1)(A)(iii).

## COUNT TWO
## RETALIATION IN VIOLATION OF THE FMLA

60. Mr. Rueff incorporates by reference paragraphs 1 through 50 of this Complaint.

61. Mr. Rueff was an eligible employee with a serious health condition as that term is defined by the FMLA and the accompanying regulations, specifically 29 U.S.C. § 2611(11) and 29 C.F.R. § 825.113.

62.     Global intentionally retaliated against Mr. Rueff by terminating him because of his exercise of FMLA rights and doing so shortly after he utilized FMLA leave.

63.     Global's retaliatory conduct was committed with reckless disregard for Mr. Rueff's right to be free from discriminatory treatment for exercising his rights under the FMLA, 29 U.S.C. § 2615(a)(2).

64.     Global acted willfully in retaliating against Mr. Rueff in violation of the FMLA.

65.     The effect of Global's actions has been to deprive Mr. Rueff of a job, as well as income in the form of wages, and other economic benefits of employment due him, solely because of the exercise of his rights under the FMLA.

66.     As a result, Rueff is entitled to both equitable and monetary relief for Global's violation of the FMLA, specifically 29 U.S.C. § 2617(a)(1)(A) and (B), including back pay, front pay or reinstatement, attorneys' fees, and costs of litigation.

67.     Mr. Rueff is also entitled to liquidated damages for Global's violation of his rights under the FMLA, 29 U.S.C. § 2617(a)(1)(A)(iii).

## **PRAYER FOR RELIEF**

WHEREFORE, Mr. Rueff demands a **TRIAL BY JURY** and that the

following relief be granted:

    A.    That this Court take jurisdiction of this matter;

    B.    That process be served on Defendant;

    C.    That Mr. Rueff be awarded a declaratory judgment that Defendant violated the FMLA;

    D.    That this Court enter a permanent injunction, prohibiting Defendant from engaging in unlawful employment practices in violation of the FMLA;

    E.    That the Court award Mr. Rueff back pay and all benefits, privileges, and rights previously denied;

    F.    That the Court order that Mr. Rueff be reinstated or, in the alternative, be awarded front pay;

    G.    That the Court award Mr. Rueff liquidated damages in an amount to be determined by the trier of fact;

    H.    That the Court award Mr. Rueff his costs in this action and reasonable attorneys' fees;

    I.    That the Court grant to Mr. Rueff the right to have a trial by jury on all issues triable to a jury; and

    J.    That the Court grant such additional relief as the Court deems proper and just.

Respectfully submitted this 2nd day of March, 2023.

                                            **BUCKLEY BALA WILSON MEW LLP**

                                            */s/ Thomas J. Mew IV*
                                            Thomas J. Mew IV
                                            Georgia Bar No. 503447
                                            BUCKLEY BALA WILSON MEW LLP
                                            600 Peachtree Street, NE, Suite 3900
                                            Atlanta, GA  30308
                                            Telephone: (404) 781-1100
                                            Facsimile: (404) 781-1101
                                            tmew@bbwmlaw.com

                                            *Counsel for Plaintiff*