## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| ANDREA KESSEL, | ) | |
| | ) | CIVIL ACTION |
| Plaintiff, | ) | FILE NO. |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| M.A.C. COSMETICS, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

Plaintiff, Ms. Andrea Kessel ("Plaintiff" or "Ms. Kessel") submits the following Complaint for Damages and Equitable Relief against Defendant M.A.C. Cosmetics, Inc. ("M.A.C." or "Defendant").

## INTRODUCTION

1.

Andrea Kessel is a talented and compassionate makeup artist with many years of experience helping women look their best. She wanted to turn her trade into a career with a leading company, and so in 2019 she joined Defendant M.A.C., a New York-based cosmetics company that touts itself as having a commitment to serve "All Races, All Sexes, All Ages." *See* M.A.C. Cosmetics, Our Story, *available at* https://www.maccosmetics.com/our-story (last visited Mar. 6, 2023). Regrettably,

Ms. Kessel, a white woman, quickly learned that M.A.C.'s tagline is nothing more, and that the company had no commitment to protect her from race discrimination. Throughout her employment, Ms. Kessel was subjected to discriminatory remarks by her black supervisor in front of customers, denied the opportunity to provide makeup services to black women, and disciplined and fired after she complained about the discrimination.

2.

Plaintiff asserts mixed-motive and single motive discrimination claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"). She asserts and intends to prove these claims by way of direct evidence and circumstantial evidence under the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and the "convincing mosaic" analysis as set forth in *Lewis v. City of Union City, Ga.*, 934 F.3d 1169 (11th Cir. 2019) (en banc). Ms. Kessel also asserts claims for retaliation in violation of Title VII, § 1981, and failure to accommodate and retaliation under the Americans with Disabilities Act. She seeks back pay and lost economic benefits of employment, reinstatement or front pay in lieu of reinstatement, compensatory and punitive damages, reasonable attorney's fees and costs of litigation, as well as declaratory and injunctive relief.

## JURISDICTION AND VENUE

3.

Plaintiff's claims present federal questions over which this Court has jurisdiction pursuant to 28 U.S.C. § 1331, § 1343(a), 42 U.S.C. § 2000e-5(f)(3), and 42 U.S.C. § 12117(a) (incorporating 42 U.S.C. § 2000e-5(f)(3)).

4.

Venue is proper under 42 U.S.C. § 2000e-5(f)(3), 28 U.S.C. § 1391(b)(1) and (b)(3), and 28 U.S.C. § 1391(d).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5.

Plaintiff timely filed a charge of discrimination against Defendant with the United States Equal Employment Opportunity Commission ("EEOC").

6.

Plaintiff has received the Notice of Right to Sue from the EEOC within the last ninety (90) days and has satisfied all other conditions precedent to the filing of this lawsuit.

## PARTIES

7.

Plaintiff Andrea Kessel is white and is a resident of the State of Georgia.

8.

M.A.C. is a cosmetics manufacturer and retailer doing business as a subsidiary of the Estee Lauder Companies. It is based in New York City, NY, but sells its products worldwide, and is one of the top three global makeup brands.

9.

Defendants may be served with process by personal service upon their registered agent for service of process, Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corner, Georgia 30092.

10.

Defendant was at all relevant times an "employer" within the meaning of Title VII, 42 U.S.C. § 2000e(b).

11.

Plaintiff and Defendant were at all relevant times parties to an employment contract within the meaning of 42 U.S.C. § 1981.

12.

Defendant was at all relevant times an "employer" within the meaning of the ADA, 42 U.S.C. § 12111(5).

13.

Plaintiff was at all relevant times an "employee" of Defendant as defined by Title VII, 42 U.S.C. § 2000e(f).

14.

Plaintiff was at all relevant times an "employee" of Defendant within the meaning of the ADA, 42 U.S.C. § 12111(5).

15.

Plaintiff is a "qualified individual with a disability" as that term is used and defined by the ADA, 42 U.S.C. § 12102(1) and § 12111(8).

## FACTS

16.

Ms. Kessel is a white person.

17.

Ms. Kessel was hired by M.A.C. on September 4, 2017 to work as a makeup artist at its makeup counter in the Belk Department Store in Centerville, Georgia.

18.

Ms. Kessel reported directly to M.A.C.'s Retail Manager Drexel Shingles, who is black.

19.

From the beginning of Ms. Kessel's employment until 2021, she consistently received good reviews, and was the top salesperson by revenue of all the M.A.C. employees at her location while she was employed there.

20.

From the beginning of Ms. Kessel's employment, Mr. Shingles told Ms. Kessel that she was brought onboard to attract "white, middle-aged women" or "white soccer moms."

21.

Ms. Kessel's race became a recurring theme throughout her employment, and Mr. Shingles repeatedly reminded her that she was to focus on bringing in older, white customers.

22.

Mr. Shingles also directed Ms. Kessel only to sell products to white customers and to leave all black customers to wait so that they could be helped by a black employee.

23.

Mr. Shingles also constantly told Ms. Kessel, often in front of customers or employees of M.A.C. or Belk:

a.   "white people can't match the color of black skin";

b.   "you were hired to take care of the middle-aged soccer moms";

c.   "you white people don't know how to do makeup on black skin because you do not understand the black culture";

d.   "black people do not wear those colors, you'd understand if you were black"; and

e.   Regularly referred to white customers as "white soccer moms."

24.

The discriminatory remarks worsened in 2020, when racial issues were at the forefront of a national conversation after the killing of a Black man named George Floyd by a white police officer near Minneapolis, Minnesota. Mr. Shingles made numerous remarks reflecting his focus on race and his discriminatory views about white people, speaking to friends and customers in the store about "the unfairness of white privilege," saying that "white people don't understand Black Lives Matter," and that it was "time for black people to take hold of power."

25.

Mr. Shingles then began to escalate his discriminatory treatment of Ms. Kessel by writing her up for alleged violations when he knew she was not violating any workplace rules.

26.

Mr. Shingles even deprived Ms. Kessel of making sales by disallowing her from selling to black customers, which impacted her production and compensation.

27.

In approximately March 2021, Ms. Kessel overheard a conversation between Mr. Shingles and a friend of his, a tall black woman dressed fashionably. The woman was returning a product she had purchased, and Mr. Shingles said in response, "yeah, white people don't always know what's best for black skin. I can't wait to get rid of her and replace her with someone of color."

28.

In May 2021, Ms. Kessel requested as a reasonable accommodation that she be permitted to use a chair at the sales counter on occasion in order to alleviate the pain she suffered as a result of her mild scoliosis.

29.

In support of her request for reasonable accommodation she provided a copy of a doctor's note.

30.

Mr. Shingles denied Ms. Kessel's request and treated her poorly after she submitted it, including issuing Ms. Kessel unwarranted discipline based on alleged

policy violations, even though he never provided her with any M.A.C. employee handbook or policy manual during the entire time she was employed there.

31.

Mr. Shingles did not treat black employees at M.A.C. the same way he treated Ms. Kessel as described above.

32.

While nitpicking Ms. Kessel and issuing her unjustified discipline for things he knew not to be violations of any policies or rules, he constantly excused the actual violations of black employees.

33.

For example, M.A.C. employee Earl Hartsfield had an excessive number of late and missed days of work, received numerous customer complaints, was observed screaming at a customer, used over 30 minutes of company time to make telephone calls in the back room while neglecting his duties, and was caught defacing company property.

34.

Mr. Hartsfield also consistently failed to make his sales goals and was the least productive member on the team.

35.

Yet, Mr. Hartsfield was never terminated or subjected to the same discipline as Ms. Kessel.

36.

On September 10, 2021, Ms. Kessel formally complained to the human resources department at M.A.C. on September 10, 2021 about Mr. Shingles engaging in race discrimination against her, and that Mr. Shingles denied her a reasonable accommodation for her disability.

37.

M.A.C. admitted in its Position Statement to the EEOC that Ms. Kessel reported Mr. Shingles to human resources for making discriminatory remarks such as referring to customers as "white trash" and saying to Ms. Kessel, "white people have a hard time matching skin tones [to makeup]," "you don't understand the black culture so you can't relate to our clients," and "you need to understand, black women can only wear certain colors. White people don't understand this."

38.

On October 5, 2021, less than one month after she made a formal discrimination complaint against Mr. Shingles, she was fired.

39.

Mr. Shingles claimed to Ms. Kessel that she was fired for receiving a complaint from a customer and warnings.

40.

The incident for which Ms. Kessel was allegedly terminated was a manufactured complaint by a woman who is a close personal friend of Mr. Shingles.

41.

In addition, Mr. Hartsfield, a black employee, committed numerous policy violations and received numerous customer complaints, was observed screaming at a customer, and was never fired.

42.

Also, a Black employee named Kianna Peoples requested every Sunday off, and Mr. Shingles granted that request but denied a request by Ms. Kessel to have a single Sunday off.

43.

Mr. Shingles also gave part-time workers shifts during the week which prevented Ms. Kessel from having a Sunday off.

## COUNT I

**RACE DISCRIMINATION
IN VIOLATION OF TITLE VII
DISPARATE DISCIPLINE AND TERMINATION**

44.

Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

45.

Plaintiff is a member of a protected class in that she is a white person.

46.

Plaintiff's race was a "motivating factor" in Defendant's decision to discipline and/or terminate her employment, even if there exist legitimate non-discriminatory reasons that also motivated these actions.

47.

Plaintiff's race was the "but for" cause of Defendant's decision to discipline and/or terminate her employment, such that if she were not white, she would not have been disciplined and terminated as she was.

48.

Furthermore, there is a convincing mosaic of circumstantial evidence that shows Mr. Shingles harbored discriminatory animus that was the reason for his decision to discipline and/or terminate Ms. Kessel's employment.

49.

The above-pled discriminatory conduct toward Plaintiff, including, but not limited to, being disciplined and terminated, constitutes unlawful race discrimination in violation of Title VII.

50.

Defendant acted in bad faith, willfully and wantonly disregarded Plaintiff's rights under Title VII, and acted in reckless disregard for Plaintiff's rights under Title VII.

51.

As a result of Defendant's discriminatory conduct, Plaintiff has suffered lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

52.

Pursuant to Title VII, Plaintiff is entitled to damages including, back pay and lost benefits, front pay and/or reinstatement, compensatory damages, punitive damages, attorney's fees and costs of litigation, and all other relief recoverable under Title VII and statutes providing for relief under Title VII.

## <u>COUNT II</u>

**RACIAL SEGREGATION IN VIOLATION OF TITLE VII
RACE MATCHING**

53.

Plaintiff incorporates by reference all preceding paragraphs of this

Complaint.

54.

Plaintiff is a member of a protected class in that she is a white person.

55.

Mr. Shingles made it clear to Ms. Kessel that she was hired to attract white

customers, and that she should only sell to this specific group, and to leave all

black customers to wait in order to be helped by a black employee.

56.

On several occasions, Ms. Kessel was in fact prevented from providing

service to black customers.

57.

Title VII of the Civil Rights Act provides that it is an unlawful employment

practice for an employer "to limit, segregate, or classify his employees … in any

way which deprive or tend to deprive any individual of employment opportunities

or otherwise adversely affect his status as an employee, because of such

individual's race[.]" 42 U.S.C. § 2000e-2(a)(2).

58.

The practice of race-matching, or assigning employees to serve specific

customers on the basis of race, constitutes unlawful segregation in violation of

Title VII. *Ferrill v. The Parker Grp., Inc.*, 967 F. Supp. 472, 474 (N.D. Ala. 1997),

*aff'd sub nom. Ferrill v. Parker Grp., Inc.*, 168 F.3d 468 (11th Cir. 1999);

E.E.O.C. Compliance Manual, Section 15-V, Evaluating Employment Decisions,

Example 5 (explaining that an employer who "usually assigns Black and Asian

American salespersons to sales territories with a high percentage of Blacks and

Asian Americans" violates Title VII "which prohibits employers from depriving

employees of employment opportunities by limiting, segregating, or classifying

them on the basis of race");

59.

The above-pled discriminatory conduct toward Plaintiff constitutes unlawful

race discrimination in violation of Title VII.

60.

Defendant acted in bad faith, willfully and wantonly disregarded Plaintiff's rights under Title VII, and acted in reckless disregard for Plaintiff's rights under Title VII.

61.

As a result of Defendants' discriminatory conduct, Plaintiff has suffered lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

62.

Pursuant to Title VII, Plaintiff is entitled to damages including, back pay and lost benefits, front pay and/or reinstatement, compensatory damages, punitive damages, attorney's fees and costs of litigation, and all other relief recoverable under Title VII and statutes providing for relief under Title VII.

## COUNT III

### RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981 DISPARATE DISCIPLINE AND TERMINATION

63.

Plaintiff hereby incorporates each and every preceding paragraph as if set forth fully herein.

64.

At all times material to this Complaint, Plaintiff and Defendant were parties to an employment agreement under which Plaintiff worked for Defendant, and Defendant compensated Plaintiff for her work.

65.

Plaintiff performed her contractual obligations.

66.

Plaintiff is a white person.

67.

42 U.S.C. § 1981 prohibits Defendant from discriminating against Plaintiff on the basis of her race.

68.

Defendant discriminated against Plaintiff on the basis of her race by, among other things, subjecting her to discipline and termination on the basis of her race when it did not subject similarly situated black employees to the same.

69.

The above-pled discriminatory conduct toward Plaintiff constitutes unlawful race discrimination against Plaintiff in violation of 42 U.S.C. § 1981.

70.

Defendant undertook its conduct intentionally and maliciously with respect to Plaintiff and her federally protected rights, or additionally, and in the alternative, undertook its conduct recklessly with respect to Plaintiff and her federally protected rights, entitling her to recover punitive damages against Defendant.

71.

As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

72.

Pursuant to § 1981, Plaintiff is entitled to damages including back pay and lost benefits, front pay and/or reinstatement, compensatory damages, punitive damages, attorney's fees and costs of litigation pursuant to 42 U.S.C. § 1988, and all other relief recoverable under § 1981.

## **COUNT IV**

### **RACIAL SEGREGATION IN VIOLATION OF 42 U.S.C. § 1981
RACE MATCHING**

73.

Plaintiff hereby incorporates each and every preceding paragraph as if set forth fully herein.

74.

At all times material to this Complaint, Plaintiff and Defendant were parties to an employment agreement under which Plaintiff worked for Defendant, and Defendant compensated Plaintiff for her work.

75.

Plaintiff performed her contractual obligations.

76.

Plaintiff is a white person.

77.

Mr. Shingles made it clear to Ms. Kessel that she was hired to attract white customers, and that she should only sell to this specific group, and to leave all black customers to wait in order to be helped by a black employee.

78.

On several occasions, Ms. Kessel was in fact prevented from providing service to black customers.

79.

42 U.S.C. § 1981 prohibits race discrimination in the making and enforcement of contracts, including agreements of employment.

80.

The practice of race-matching, or assigning employees to serve specific customers on the basis of race, constitutes unlawful segregation in violation of 42 U.S.C. § 1981. *Ferrill v. The Parker Grp., Inc.*, 967 F. Supp. 472, 474 (N.D. Ala. 1997), *aff'd sub nom. Ferrill v. Parker Grp., Inc.*, 168 F.3d 468 (11th Cir. 1999).

81.

The above-pled discriminatory conduct toward Plaintiff constitutes unlawful race discrimination in violation of 42 U.S.C. § 1981.

82.

Defendant undertook its conduct intentionally and maliciously with respect to Plaintiff and her federally protected rights, or additionally, and in the alternative, undertook its conduct recklessly with respect to Plaintiff and her federally protected rights, entitling her to recover punitive damages against Defendant.

83.

As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

84.

Pursuant to § 1981, Plaintiff is entitled to damages including back pay and lost benefits, front pay and/or reinstatement, compensatory damages, punitive damages, attorney's fees and costs of litigation pursuant to 42 U.S.C. § 1988, and all other relief recoverable under § 1981.

## COUNT V

## RETALIATION IN VIOLATION OF TITLE VII

85.

Plaintiff incorporates each and every preceding paragraph herein by reference as if set forth fully herein.

86.

Plaintiff engaged in activity protected by Title VII of the Civil Rights Act by opposing practices made unlawful under that statute, including when she verbally complained of race discrimination in the workplace.

87.

In response to Plaintiff's protected complaints, she was subjected to adverse employment actions, including but not limited to discipline and termination.

88.

The above-pled retaliatory conduct toward Plaintiff constitutes unlawful retaliation in violation of Title VII.

89.

Defendant acted in bad faith, willfully and wantonly disregarded Plaintiff's rights under Title VII, and acted in reckless disregard for Plaintiff's rights under Title VII.

90.

As a result of Defendants' discriminatory conduct, Plaintiff has suffered lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

Pursuant to Title VII, Plaintiff is entitled to damages including, back pay and lost benefits, front pay and/or reinstatement, compensatory damages, punitive damages, attorney's fees and costs of litigation, and all other relief recoverable under Title VII and statutes providing for relief under Title VII.

## **COUNT VI**

### **RETALIATION IN VIOLATION OF 42 U.S.C. § 1981 DISPARATE DISCIPLINE AND TERMINATION**

91.

Plaintiff hereby incorporates each and every preceding paragraph as if set forth fully herein.

92.

At all times material to this Complaint, Plaintiff and Defendant were parties to an employment agreement under which Plaintiff worked for Defendant, and Defendant compensated Plaintiff for her work.

93.

Plaintiff performed her contractual obligations.

94.

Plaintiff is a white person.

95.

42 U.S.C. § 1981 prohibits Defendant from retaliating against Plaintiff because she complained of race discrimination the making, enforcement, or performance of a contract, including an employment agreement.

96.

Defendant retaliated against Plaintiff because she complained of race discrimination in the making, enforcement, or performance of a contract, including an employment agreement, when it subjected her to discipline and termination when it did not subject similarly situated black employees to the same.

97.

The above-pled retaliatory conduct toward Plaintiff constitutes unlawful retaliation in violation of 42 U.S.C. § 1981.

98.

Defendant undertook its conduct intentionally and maliciously with respect to Plaintiff and her federally protected rights, or additionally, and in the alternative, undertook its conduct recklessly with respect to Plaintiff and her federally protected rights, entitling her to recover punitive damages against Defendant.

99.

As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

100.

Pursuant to § 1981, Plaintiff is entitled to damages including back pay and lost benefits, front pay and/or reinstatement, compensatory damages, punitive damages, attorney's fees and costs of litigation pursuant to 42 U.S.C. § 1988, and all other relief recoverable under § 1981.

## COUNT VII

### FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADAAA

101.

At all relevant times, Defendant has been subject to the requirements of Title I of the Americans with Disabilities Act as amended by the ADA.

102.

At all times relevant, Ms. Kessel was an individual with a disability as defined by the ADA, 42 U.S.C. § 12102(1), inasmuch as she had physical impairments that substantially limited one or more major life activities, she had a record of such impairments, and she was regarded as a person with such impairments.

103.

At all relevant times, Ms. Kessel was a qualified individual with a disability as that term is defined by 42 U.S.C. § 12111(8), and she was able to perform the essential functions of her job with or without a reasonable accommodation.

104.

The ADA requires employers to provide reasonable accommodations to employees who are qualified individuals with a disability, which include "[m]odifications or adjustments that enable [an employee with a disability] to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities." 29 C.F.R. § 1630.2(o)(1)(iii).

105.

By refusing Ms. Kessel's request to be permitted to use a chair in order to alleviate the pain she experiences because of her disabilities, Defendant denied Plaintiff reasonable accommodation that would have enabled her to enjoy equal benefits and privileges of employment enjoyed by similarly situated employees.

106.

The above-pled conduct constitutes disability discrimination in violation of the ADA, 42 U.S.C. § 12112.

107.

Defendant's actions have caused and will continue to cause Ms. Kessel to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, all in an amount to be established at trial.

108.

Defendant's actions were undertaken intentionally, willfully, and maliciously with respect to, or with reckless disregard for, Ms. Kessel's federally protected rights, and she is therefore entitled to punitive damages.

## **COUNT VIII**

## **RETALIATION IN VIOLATION OF THE ADAAA**

109.

Plaintiff incorporates each and every preceding paragraph herein by reference as if set forth fully herein.

110.

At all relevant times, Defendant has been subject to the requirements of Title I of the Americans with Disabilities Act as amended by the ADA.

111.

At all times relevant, Ms. Kessel was an individual with a disability as defined under the ADA, 42 U.S.C. § 12102(1), inasmuch as she had physical impairments that substantially limited one or more major life activities, she had a record of such impairments, and she was regarded as a person with such impairments..

112.

At all relevant times, Ms. Kessel has been a qualified individual with a disability as that term is defined by 42 U.S.C. § 12111(8), and able to perform the essential functions of her job with or without a reasonable accommodation.

113.

Plaintiff engaged in protected activity under the ADA when she requested a reasonable accommodation in the form of permission to sit at a chair behind the makeup counter at which she worked for limited periods of time because of pain caused by her disabilities, and/or when she complained about being denied this requested reasonable accommodation.

114.

Shortly after Plaintiff engaged in the above-pled protected activity, she was fired for pretextual reasons.

115.

Defendant's actions amount to a violation of the ADA, which prohibits retaliation because an individual requests a reasonable accommodation or seeks to exercise rights under the Act. 42 U.S.C. § 12203.

116.

As a direct and proximate result of Defendant's unlawful retaliation against Ms. Kessel, she has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other job related benefits, including social security, all in an amount to be established at trial.

117.

Defendant's actions have caused, continue to cause, and will cause Ms. Kessel to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

118.

Defendant's actions were undertaken intentionally, willfully, and maliciously with respect to, or with reckless disregard for, Ms. Kessel's federally protected rights, and she is therefore entitled to punitive damages.

119.

Ms. Kessel is entitled to be reinstated to employment by Defendant, and, if reinstatement is not feasible, she is entitled to an award of damages for future lost wages and benefits of employment.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands a **TRIAL BY JURY** and that the following relief be granted:

A.  That the Court take jurisdiction of this matter;

B.  That process be served;

C.  That the Court award Plaintiff back pay and lost economic benefits of employment, including interest and lost social security benefits, in an amount to be determined at the trial of this case;

D.  That the Court award Plaintiff reinstatement, or front pay in lieu of reinstatement;

E.  That the Court award compensatory damages for pain and suffering and emotional distress in an amount to be determined by the trier of fact;

F.  That the Court award Plaintiff punitive damages against Defendant in an amount to be determined by the trier of fact;

G.  That the Court award Plaintiff reasonable attorney's fees and costs of litigation in this action;

H.  That the Court grant to Plaintiff the right to have a trial by jury on all issues triable to a jury; and

I.      That the Court grant such other additional relief as the Court deems

        proper and just.

Respectfully submitted this 6th day of March, 2023.

                                    **BEAL SUTHERLAND**
                                    **BERLIN & BROWN, LLC**

                                    *s/ Brian J. Sutherland*
                                    Brian J. Sutherland
                                    Georgia Bar No. 105408
                                    brian@beal.law
                                    Rachel Berlin Benjamin
                                    Georgia Bar No. 707419
                                    rachel@beal.law
                                    945 East Paces Ferry Rd NE
                                    Suite 2000
                                    Atlanta, GA 30326