IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **JEANINE GIAMPIETRO** ) | |
| ) | **Civil Action No.:** |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| **AUTOMATED DATA** ) | |
| **PROCESSING, INC.** ) | **Jury Trial Demanded** |
| ) | |
| Defendant. ) | |

## COMPLAINT

COMES NOW Plaintiff, Jeanine Giampietro, through counsel, and hereby files her Complaint for damages and attorneys' fees against Defendant Automated Data Processing, Inc. (hereinafter "ADP").

## JURISDICTION AND VENUE

1.

Pursuant to 28 U.S.C. § 1331 (federal question), this Court has jurisdiction over Plaintiff's cause of action brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000, *et. seq*. Plaintiff is seeking damages, attorneys' fees and costs of litigation to redress the deprivation of her rights by ADP because of its retaliatory treatment after she exercised her statutorily protected right to complain about workplace discrimination.

2.

Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over the breach of contract claim brought by Plaintiff that arises under the laws of the State of Georgia.

3.

The unlawful employment practices alleged herein were committed within the Northern District of the State of Georgia.

## PARTIES

4.

Ms. Giampietro is a resident of Georgia and subjects herself to the jurisdiction of this Court.

5.

Defendant, ADP, is a foreign for-profit company with its principal place of business in Roseland, New Jersey. ADP regularly conducts business throughout the State of Georgia, including the Northern District of Georgia.

## ADMINISTRATIVE PROCEDURE

6.

On or about April 18, 2020, Ms. Giampietro filed a timely Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging gender discrimination and retaliation. Such Charge of

Discrimination was filed within 180 days of the occurrence of the last acts on which this Complaint is based. A copy of the Charge is attached hereto as "Exhibit A."

7.

On or about December 8, 2022, the EEOC issued a Notice of Right to Sue. A copy of this notice is attached hereto as "Exhibit B." This action has been brought within the time period allowed by law.

## COUNT I: RETALIATION IN VIOLATION OF TITLE VII

8.

Ms. Giampietro was employed by ADP for almost 20 years.

9.

On multiple occasions in December 2018, Ms. Giampietro contacted Melissa Scasny, ADP Senior H.R. Business Partner, to specifically complain about a gender-based hostile work environment that involved verbal abuse and mistreatment by her supervisor, Mr. Joe Klienwaechter.

12.

On or about December 21, 2018, Ms. Scasny presented Ms. Giampietro with a work-severance offer using a "Severance Summary Letter" that was sent via email.

13.

The "Severance Summary Letter" explained ADP's proposal that Ms. Giampietro stop working as of March 1, 2019, and then receive six (6) months of

severance pay.

13.

In Ms. Scasny's December 21, 2018, email she acknowledged that Ms. Giampietro wanted her Restricted Stock to vest prior to the end of the severance period, which was originally set for September 1, 2019.

14.

Approximately twenty minutes after receiving the "Severance Summary Letter" Ms. Giampietro responded to Ms. Scasny's email and pointed out her concern that under the terms of the letter her Restricted Stock would not vest prior to the proposed end of the severance period (i.e., September 1, 2019).

15.

On January 2, 2019, Ms. Scasny confirmed to Ms. Giampietro that ADP was changing her "last day worked" to March 8, 2019 (instead of the 1st), and would recalculate her severance period based on that date so that Ms. Giampietro's Restricted Stock would vest before the end of the severance period.

16.

During the period of time that Ms. Giampietro was considering the terms presented in the "Severance Summary Letter," Mr. Klienwaechter continued his barrage of insults and ill treatment towards her.

17.

On January 10, 2019, Ms. Scasny retracted the work-severance offer after Ms. Giampietro once again complained that Mr. Klienwaechter was discriminating against her because she was a female.

18.

As a result of ADP forcing her out of the company and then rescinding the offer of severance after she once again complained of gender discrimination, Ms. Giampietro retained the undersigned to represent her in the pursuit of her claims.

19.

On February 1, 2019, the undersigned sent a demand letter to ADP on behalf of Ms. Giampietro, which outlined the facts described herein, set forth her claims of discrimination and retaliation, and invited the company to discuss the possibility of resolving these claims.

20.

Following the demand letter discussions ensued between the undersigned and Yvette Gordon, ADP's Senior Counsel – Litigation.

21.

Throughout the severance discussions Ms. Gordon was well aware that a key factor in Ms. Giampietro's willingness to accept an agreement to release her claims

against ADP was that her Restricted Stock vested prior to the end of her severance period.

22.

Based on assurances regarding the vesting of her Restricted Stock prior to the end of her severance period, Ms. Giampietro accepted ADP's settlement offer.

23.

At the time of acceptance, Ms. Gordon was asked whether the severance amount could be paid in a lump sum.

24.

In response to the question about a lump sum payment, Ms. Gordon edited Paragraph 1(a) of the proposed severance agreement to allow for it.

25.

No other language in the severance agreement was revised after Paragraph 1(a) was changed to reflect a lump sum payment.

26.

There is no language in the severance agreement that would allow a change in the form of the severance payment (i.e., from periodic to a lump sum) to affect any other provision of the contract.

27.

Ms. Giampietro signed the severance agreement on or about April 16, 2019.

28.

In August 2019 Ms. Giampietro learned that her Restricted Stock had been canceled by ADP, even though the severance agreement contemplated that it was to vest on September 1, 2019.

29.

Pursuant to the severance agreement, Ms. Giampietro remained on ADP's payroll until September 6, 2019.

## COUNT I
## RETALIATION IN VIOLATION OF TITLE VII

30.

Ms. Giampietro engaged in protected activity when she retained an attorney to contact and negotiate with ADP on her behalf regarding her employment-related claims of gender discrimination and retaliation.

31.

ADP took an adverse employment action against Ms. Giampietro when it canceled her Restricted Stock after the Severance Agreement was executed, but before the severance period ended on September 6, 2019.

32.

There were no provisions in the Severance Agreement that would lawfully permit ADP to cancel Ms. Giampietro's Restricted Stock before it vested on September 1, 2019. *See* Count II, *infra.*

33.

ADP's actions were intentional and were committed with reckless disregard of Plaintiff's federally protected rights.

34.

As a consequence of the aforementioned retaliatory conduct, Plaintiff has suffered financial losses and emotional harm.

**COUNT II: BREACH OF CONTRACT**

35.

The severance agreement is a valid and binding written contract between Ms. Giampietro and ADP under the laws of the State of Georgia.

36.

At all times relevant, ADP knew that the vesting of her Restricted Stock was an essential component for Ms. Giampietro to enter into an agreement to release her legal claims against the company.

37.

Ms. Giampietro complied with the provisions of the contract regarding the vesting of her Restricted Stock.

38.

ADP breached its contract with Ms. Giampietro by canceling the Restricted Stock that was should have vested on September 1, 2019, and failing to compensate

her for the value of that Restricted Stock.

39.

Because of Defendant's breach of contract, Plaintiff is entitled to damages for the value of the Restricted Stock at the time it should have vested.

40.

Plaintiff is further entitled to interest on all amounts due to her as a result of Defendant's breach of contract.

### COUNT III – ATTORNEYS' FEES FOR BREACH OF CONTRACT

41.

Plaintiff is entitled to attorneys' fees and expenses of litigation pursuant to O.C.G.A. § 13-6-11 because Defendant has acted in bad faith, been stubbornly litigious, and caused Plaintiff unnecessary trouble and expense to collect the amounts due to her for breach of contract.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, respectfully prays:

1. For a trial by jury;
2. That the Court grant Plaintiff judgment against Defendant on her retaliation claim under Title VII and award damages for the value of the Restricted Stock that was supposed to vest on September 1, 2019,
3. Grant compensatory damages pursuant to Title VII;

4. Grant a judgment in Plaintiff's favor and against Defendant for breach of contract under Georgia law for the value of the Restricted Stock that was supposed to vest on September 1, 2019;

5. Award interest, as provided for under Federal and/or Georgia law, on all amounts due to Plaintiff by Defendant;

6. Award all costs of this action;

7. Award attorneys' fees pursuant to Title VII and O.C.G.A. § 13-6-11;

8. Award such other and further relief at this Court may deem just and proper.

Respectfully submitted this 7th day of March 2023,

/s/ **Robert C.D. McDonald**
Georgia Bar No. 489600
Attorney for Plaintiff

The Law Offices of Robert C.D. McDonald, P.C.
5410 Matt Highway, PMB 3
Cumming, Georgia 30028
Phone: (404) 314-6738
lawyerbobmcd@yahoo.com