## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| ATAIN SPECIALTY INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) | CIVIL ACTION FILE NO.: |
| v. | ) ) | |
| VARAHI HOTEL, LLC, SHIV GLOBAL HOTEL, LLC, W.K., E.H., M.M., R.P., M.B., D.P., A.F., A.J., T.W., M.M., G.W., C.H., A.J. and K.M., | ) ) ) ) ) | |
| Defendants. | ) | |

## ATAIN SPECIALTY INSURANCE COMPANY'S
## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Atain Specialty Insurance Company ("Atain") hereby files its Complaint for Declaratory Judgment against Varahi Hotel, LLC ("Varahi"), Shiv Global Hotel, LLC ("Shiv Global"), W.K., E.H., M.M., R.P., M.B., D.P., A.F., A.J., T.W., M.M., G.W., C.H, A.J. and K.M. stating as follows:

## NATURE OF THE ACTION

1.     This is an insurance coverage action concerning Atain's obligations to Varahi and Shiv Global for various lawsuits and demands asserting sex-trafficking claims under a policy of insurance issued by Atain to Global Management &

Investment ("Global Management") for the period April 1, 2015 to December 6, 2015 (the "Policy").

2.      To start, Atain files this action to enforce a prior agreement of no coverage with Varahi under the Policy as to a lawsuit filed by Jane Doe 1 alleging sex trafficking and forced labor occurring at Varahi's hotel from 2015 to 2017 (the "Jane Doe 1 Lawsuit").[1]   This agreement was reached after Atain filed a declaratory judgment action in this Court seeking a ruling on its obligations to Varahi in the Jane Doe 1 Lawsuit (the "Jane Doe 1 DJ").[2]   A true and correct copy of the Jane Doe 1 Amended Complaint, which was the operative complaint at the time of the Jane Doe 1 DJ's filing, is attached as Exhibit "A".  A true and correct copy of the Jane Doe 1 DJ is attached as Exhibit "B".

3.      In this action, Atain also seeks a declaratory judgment under 28 U.S.C. § 2201 that it does not have an obligation to defend Varahi for any liability arising out of a lawsuit filed by W.K., E.H., M.M., R.P., M.B., D.P., and A.F. alleging sex trafficking and forced labor occurring at Varahi's hotel from 2010 to

---

[1] The Jane Doe 1 Lawsuit is styled as *Jane Doe 1 v. Red Roof Inns, Inc., et al.*, Case No. 1:19-cv-03840-WMR, in the Northern District of Georgia.

[2] The Jane Doe 1 DJ is styled as *Atain Specialty Insurance Company v. Virahi Hotel, LLC and Jane Doe 1*, Case No. 1:20-cv-01582-WMR, in the Northern District of Georgia.

2017 (the "W.K. Lawsuit").[3]   A true and correct copy of the operative pleading in the W.K. Lawsuit, the Second Amended Complaint, is attached as Exhibit "C".

4.      Atain also seeks declaratory judgment under 28 U.S.C. § 2201 that it does not have an obligation to Varahi for any liability arising out of demands recently asserted by additional alleged sex trafficking claimants T.W., G.W., M.M., A.J., and C.H alleging sex trafficking and forced labor occurring at Varahi's hotel from 2011 to 2016 (the "Demands").   True and correct copy of the Demands are attached together Exhibit" "D.

5.      Finally, Atain also seeks declaratory judgment under 28 U.S.C. § 2201 that it does not have an obligation to defend Shiv Global for any liability arising out of a lawsuit filed by K.M. alleging sex trafficking and forced labor occurring at Shiv Global's hotel from 2015 to 2017 (the "K.M. Lawsuit").[4]   A true and correct copy of the K.M. Lawsuit is attached as Exhibit "E".

## THE PARTIES & JURISDICTION

6.      Atain is a Michigan corporation with its principal place of business in Farmington Hills, Michigan.   Atain is a citizen of Michigan.

---

[3] The W.K. Lawsuit is styled as *W.K., et al. v. Red Roof Inns, Inc., et al.*, Case 1:20-cv-05263-MHC, in the United States District Court for the Northern District of Georgia.
[4] The K.M. Lawsuit is styled as *K.M. v. Shiv Global Hotel, LLC*, Case No. 1:22-cv-03968-JPB, in the Northern District of Georgia.

7.     Varahi Hotel, LLC ("Varahi") is a Georgia limited liability company with a principal office address of 2200 Corporate Plaza, Smyrna, Georgia, 30080. Varahi may be served through its registered agent, Bharat Patel, at 2200 Corporate Plaza, Smyrna, Georgia, 30080.   All of Varahi's members are residents and citizens of the state of Georgia.

8.     Shiv Global Hotel, LLC ("Shiv Global") is a Georgia limited liability company with a principal office address of 2030 Avalon Parkway, Suite 200, McDonough, GA 30253.  Shiv Global may be served through its registered agent, Joel Haber, at 2030 Avalon Parkway, Suite 200, McDonough, GA 30253.  All of Shiv Global's members are residents and citizens of the state of Georgia.

9.     W.K. is a plaintiff in the underlying W.K. Lawsuit and is a citizen of the United States of America and a resident of the State of Georgia.

10.    E.H. is a plaintiff in the underlying W.K. Lawsuit and is a citizen of the United States of America and a resident of the State of Georgia.

11.    M.M. is a plaintiff in the underlying W.K. Lawsuit and is a citizen of the United States of America and a resident of the State of Georgia.

12.    R.P. is a plaintiff in the underlying W.K. Lawsuit and is a citizen of the United States of America and a resident of the State of Georgia.

13.    M.B. is a plaintiff in the underlying W.K. Lawsuit and is a citizen of the United States of America and a resident of the State of Florida.

14.    D.P. is a plaintiff in the underlying W.K. Lawsuit and is a citizen of the United States of America and a resident of the State of Georgia.

15.    A.F. is a plaintiff in the underlying W.K. Lawsuit and is a citizen of the United States of America and a resident of the State of Arizona.

16.    T.W. has made a demand against Varahi and is a citizen of the United States of America and a resident of the State of Georgia.

17.    G.W. has made a demand against Varahi and is a citizen of the United States of America and a resident of the State of Georgia.

18.    M.M. has made a demand against Varahi and is a citizen of the United States of America and a resident of the State of Georgia.

19.    A.J. has made a demand against Varahi and is a citizen of the United States of America and a resident of the State of Georgia.

20.    C.H. has made a demand against Varahi and is a citizen of the United States of America and a resident of the State of Georgia.

21.    K.M. is a plaintiff in the underlying K.M. Lawsuit and is a citizen of the United States of America and a resident of the State of Ohio.

22.    This Court has personal jurisdiction over the Defendants by virtue of their sufficient minimum contacts with the forum.

23.    Complete diversity of citizenship exists because Atain is a Michigan citizen and defendants are citizens of Georgia, Florida, Arizona and Ohio.

24.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states, and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

25.    Venue is proper in this Court under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claims occurred in the Northern District of Georgia, including the claims made in the underlying W.K. Lawsuit, K.M. Lawsuit, the Demands and Jane Doe 1 Lawsuit. The Defendants are subject to the Court's personal jurisdiction in the Northern District of Georgia or have consented to the Court's jurisdiction in the underlying matters.

26.    Atain files this action to enforce a prior settlement agreement between itself and Varahi related to the Jane Doe 1 Lawsuit.

27.    This action is also brought pursuant to 28 U.S.C. § 2201 and seeks declaratory relief as to Atain's obligations owed to Varahi with respect to the W.K. Lawsuit and Demands under Atain's Policy issued to Global Management.  Varahi has sought coverage under the Policy.  Atain is uncertain as to its duties, rights,

and obligations and files this declaratory judgment action to resolve questions of coverage under the Policy, including its duty to defend Varahi. The plaintiffs and claimants are named as defendants to ensure Atain complete relief. An actual and justiciable dispute over those duties, rights, and obligations exists between the parties.

28.     Additionally, this action is brought pursuant to 28 U.S.C. § 2201 and seeks declaratory relief as to Atain's obligations owed to Shiv Global with respect to the K.M. Lawsuit under Atain's Policy issued to Global Management. Shiv Global has sought coverage under the Policy. Atain is uncertain as to its duties, rights, and obligations and files this declaratory judgment action to resolve questions of coverage under the Policy, including its duty to defend Shiv Global. The plaintiff is also named as a defendant to ensure Atain complete relief. An actual and justiciable dispute over those duties, rights, and obligations exists between the parties.

## ATAIN'S INSURANCE POLICY

29.     Atain issued Commercial General Liability Policy No. CIP250491 to Global Management for the policy period April 1, 2015 to December 6, 2015 providing certain coverage subject to the Policy's terms, conditions, and exclusions (the "Policy"). A true and correct copy of the Policy is attached as Exhibit "F".

30.     The Policy's Declarations page identifies Global Management as the only Named Insured on the Policy.  Ex. "F", UNLPF-D-1 (11-04).

31.     The Policy does not identify any additional Named Insureds.  Ex. "F".

32.     The Policy includes a Schedule of Locations, which identifies 2200 Corporate Plaza, Smyrna, Georgia 30084 (the "Smyrna Hotel") and 2859 Panola Road, Lithonia, Georgia 30058 (the "Lithonia Hotel") and designated premises. Ex. "F", B&W 61 04/07.

33.     The Policy includes an Additional Insured Endorsement that provides:

**ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION**

**\* \* \***

**SCHEDULE**

| Name of Additional Insured Person(s) Or Organization(s): | Location(s) of Covered Operations |
|---|---|
| ALL PERSONS OR ORGANIZATIONS AS REQUIRED BY WRITTEN CONTRACT WITH THE INSURED. | |

A.     **SECTION II – WHO IS AN INSURED** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such a person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with

respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.**     Your acts or omissions; or

**2.**     The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

A person's or organizations status as an additional insured under this endorsement ends when your operations for that additional insured are completed.

B.     With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to:

**Additional Insured Contractual Liability**

"Bodily injury" or "property damage" for which the "additional insured(s)" are obligated to pay damages by reason of the assumption of liability in a contract or agreement.

* * *

**Negligence of Additional Insured**

"Bodily injury" or "property damage" directly caused by or resulting from the negligence of the "additional insured(s)".

Ex. "F", AF 000 859 (07/2012).

34.     The Policy's insuring agreement states:

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.**     **Insuring Agreement**

**a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or

"property damage" to which this insurance applies.   We will have the right and duty to defend the insured against any "suit" seeking those damages.   However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.   We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.   But:

**(1)**    The amount we will pay for damages is limited as described in Section **III** – Limits of Insurance; and

**(2)**    Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

* * *

**b.**    This insurance applies to "bodily injury" and "property damage" only if:

**(1)**    The "bodily injury" or property damage" is caused by an "occurrence" that takes place in the coverage territory";

**(2)**    The "bodily injury" or "property damage" occurs during the policy period; and

**(3)**    Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.   If such a listed insured or authorized "employee" knew prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or

after the policy period will be deemed to have been
known prior to the policy period.

Ex. "F", CG 00 01 04 13, p. 1 of 16.

35.   The Policy defines "occurrence" as follows:

13.   "Occurrence" means an accident, including continuous or
repeated exposure to substantially the same   general
harmful conditions.

Ex. "F", CG 00 01 04 13, p. 15 of 16.

36.   Additionally, the Policy's Physical-Sexual Abuse Exclusion provides:

**VII.   PHYSICAL-SEXUAL ABUSE EXCLUSION**

This insurance does not apply to any "occurrence," suit, liability
claim, demand or causes of action arising out of or resulting from
the physical abuse, sexual abuse or licentious, immoral or sexual
behavior, whether or not intended to lead to, or culminating in
any sexual act, whether caused by, or at the instigation of, or at
the direction of, or omission by:

a.   The insured or the insured's employees;

b.   Patrons of the insured's business;

c.   Agents of the insured;

d.   "Volunteer workers;"

e.   Subcontractor or employee of any subcontractor;

f.   "Independent contractor" or employee of any
"independent contractor;" or

g.   "Leased worker."

For the purposes of this endorsement:

1.   ***"Independent contractor" means*** one that contracts to
do work or perform a service for another and that retains
control over the means or methods used in doing the

work or preforming the service. "Independent contractor" includes, but is not limited to, subcontractors and any employees of a subcontractor, any employee of an independent contractor, any employees of the insured, agents, representatives, volunteers, spouses, family members or the insured or *any Additional Insureds added to this policy.*

Ex. "F", AF000899 03-14 (emphasis supplied).

37.     The Policy also contains an Expected or Intended Injury Exclusion which provides:

**2.     Exclusions**

This insurance does not apply to:

**a.**     "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

Ex. "F", CG 00 01 04 13, p. 2 of 16.

38.     The Policy's coverage for Personal and Advertising Injury contains the following relevant exclusions:

**2.     Exclusions**

This insurance does not apply to:

**a.     Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act

12

would violate the rights of another and would inflict "personal and advertising injury".

\* \* \*

**d.     Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured."

Ex. "F", CG 00 01 04 13, p. 6 of 16.

39.    The Policy defines "personal and advertising injury" as follows:

**14.**    "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.**    False arrest, detention or imprisonment;

Ex. "F", CG 00 01 04 13, p. 15 of 16.

40.    The Policy's Known Injury or Damage Exclusion Personal and

Advertising Injury states:

**Known Injury Or Damage**

This insurance does not apply to "personal and advertising injury" arising from an offense:

**a.**    That occurs during the policy period and, prior to the policy period, an insured listed under Paragraph **1.** of **SECTION II – WHO IS AN INSURED** or an "employee" authorized by you to give or receive notice of an offense or claim, knew that the "personal and advertising injury" had occurred prior to the policy period, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period,  that the "personal and advertising injury" occurred, then any continuation, change or resumption of such offense during or

after the policy period will be deemed to have been known prior to the policy period; or

**b.**     That occurs during the policy period and was, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of **SECTION II – WHO IS AN INSURED** or an "employee" authorized by you to give or receive notice of an offense or claim, includes continuation, change or resumption of that "personal and advertising injury" after the end of the policy period.

A personal and advertising injury arising from an offense will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of **SECTION II – WHO IS AN INSURED** or an "employee" authorized by you to give or receive notice of an offense or claim:

**(1)**     Reports all, or any part, of the "personal and advertising injury" to us or any other insurer;

**(2)**     Receives a written of verbal demand or claim for damages because of the "personal and advertising injury"; or

**(3)**     *Becomes aware by any other means that "personal and advertising injury" has occurred or has begun to occur*.

Ex. "F", AF 000 873 (07/2012) (emphasis supplied).

41.     Finally, the Policy's Medical Payments insuring agreement provides

the following exclusion:

**2.**     **Exclusions**

We will not pay expenses for "bodily injury":

\* \* \*

**c.**     **Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

Ex. "F", CG 00 01 04 13, p. 8 of 16.

## FACTS RELEVANT TO THE JANE DOE 1 LAWSUIT

42.     Jane Doe 1 filed the Jane Doe 1 Lawsuit against Varahi and numerous other defendants on August 26, 2019.

43.     In the Jane Doe 1 Lawsuit, Jane Doe 1 contends that various hotel managers and owners, including Varahi, were involved in and/or benefited from sex-trafficking at their hotels, including the Smyrna Hotel.  Ex. "A".

44.     Varahi sought insurance coverage for the Jane Doe 1 Lawsuit under Atain's Policy.

45.     Varahi is not a named insured on the Policy.

46.     Atain has repeatedly requested that Varahi provide any contract with Global Management that requires it to be named as an additional insured on Atain's Policy and no such contract has been provided.

47.     There is no contract between Varahi and Global Management that predates the inception of the Policy.

48.     After receipt of the Jane Doe 1 Lawsuit, Atain informed Varahi that it did not believe that Varahi qualified as an insured on its Policy and that coverage was likely otherwise barred by the terms, exclusions, and conditions of the Policy,

but agreed to provide Varahi with a defense for the Jane Doe 1 Lawsuit under a reservation of rights.  See Reservation of Rights, attached hereto as Exhibit "G".

49.    Atain specifically reserved its rights to file a declaratory judgment action and to seek to recoup its defense fees incurred following a finding of no coverage. Ex. "G".

50.    Atain then filed a declaratory judgment action in this Court, the "Jane Doe 1 DJ," seeking a ruling that it had no duty to defend Varahi in the Jane Doe 1 Lawsuit on April 13, 2020.  Ex. "B".

51.    In the Jane Doe 1 DJ, Atain argued that Varahi did not qualify for coverage under the Policy as it was not an insured or additional insured.  In the Jane Doe 1 DJ, Atain also argued that even if Varahi could show it was an insured, coverage for the Jane Doe 1 Lawsuit was barred by the Policy's Physical-Sexual Abuse Exclusion and/or other terms or exclusions of the Policy.  Ex "B".

52.    After the Jane Doe 1 DJ was filed, Atain reached an agreement with both Varahi and Jane Doe 1 to dismiss the Jane Doe 1 DJ in exchange for an agreement that there was no coverage available to Varahi for Jane Doe 1's claims or the Jane Doe 1 Lawsuit.

53.    Jane Doe 1's counsel agreed there was no coverage available under the Policy for the Jane Doe 1 Lawsuit via an email dated July 3, 2020.  *See* July 3,

16

2020 Email from Sachin Varghese to Richard Zelonka, attached hereto as Exhibit "H."[5]

54.    Varahi's counsel agreed not to seek coverage from Atain for the Jane Doe 1 Lawsuit via an email dated July 16, 2020.  *See* July 16, 2020 Email from Mike Weinstein to Richard Zelonka, attached hereto as Exhibit "I."[6]

55.    Following receipt of these email confirmations, Atain advised the Court that the matter had settled while the parties were still finalizing a release, and the Court administratively dismissed the Jane Doe 1 DJ.

56.    Jane Doe 1, through counsel, executed a release and settlement agreement.

57.    Varahi has not taken issue with the language in the release and settlement agreement but has not responded to Atain's request to execute the document.

---

[5]  Ex. "H" is an email chain that has been redacted and truncated to only show the cited correspondence.

[6]  Ex. "I" is an email chain that has been redacted and truncated to only show the cited correspondence.

## <u>FACTS RELEVANT TO THE W.K. LAWSUIT</u>

58.     The W.K. Lawsuit was filed against Varahi and numerous other defendants on December 29, 2020. The Second Amended Complaint is now the operative pleading. Ex. "C".

59.     In the W.K. Lawsuit, W.K., E.H., M.M., R.P. M.B., D.P., and A.F. allege that they were sex trafficked over the following time periods at the Red Roof Inn located at 2200 Corporate Plaza, Smyrna, Georgia, 30080 (the "Smyrna Hotel"):

(a)     W.K. alleges she was sex trafficked at the Smyrna Hotel from 2013 to 2014.  Ex. "C", ¶ 13.

(b)     E.H. alleges she was sex trafficked at the Smyrna Hotel from 2014 through 2018.  Ex. "C", ¶ 14.

(c)     M.M. alleges she was sex trafficked at the Smyrna Hotel from 2010 through 2017.  Ex. "C", ¶ 15.

(d)     R.P. alleges she was sex trafficked at the Smyrna Hotel from 2012 through 2016.  Ex. "C", ¶ 16.

(e)     M.B. alleges she was sex trafficked at the Smyrna Hotel from 2015 through 2016.  Ex. "C" ¶ 17.

(f)    D.P. alleges she was sex trafficked at the Smyrna Hotel in 2017.
Ex. "C" ¶ 18.

(g)    A.F. alleges she was sex trafficked at the Smyrna Hotel in 2010
and 2011.  Ex. "C" ¶ 19.

60.    The W.K. Lawsuit alleges ownership of the Smyrna Hotel was
transferred to Varahi in December 2012.  Ex. "C" ¶ 38.

61.    The W.K. Lawsuit alleges that Bharatkumar R. Patel, a Varahi Hotel,
LLC member, was aware of prostitution at the Smyrna Hotel as early as August
2014, as evidenced by his responding to reviews of the Smyrna Hotel which stated
that prostitution was occurring.  Ex. "C", ¶¶ 76 – 85.

62.    The W.K. Lawsuit also points to signs at the front desk and night
window of the Smyrna Hotel stating "NO REFUNDS AFTER 15 MINUTES" as
evidence that Varahi was aware of the presence of commercial sex on the property
from at least 2013.  Ex. "C",  ¶¶ 104 – 105.

63.    The W.K. Lawsuit alleges that Varahi "knowingly granted and
permitted the use of the [Smyrna Hotel] and individual rooms there in for the
purpose of prostitution" and "ratified and confirmed this grant and permission by
failing and refusing the (sic) halt the activities of sex traffickers they knew were
operating out of that hotel."  Ex. "C", ¶ 391.

19

64.    The W.K. Lawsuit alleges Varahi aided and abetted the prostitution of W.K., E.H., M.M., R.P., M.B., and D.P.  Ex. "C", ¶ 394.

65.    The W.K. Lawsuit alleges Varahi aided and abetted the sex traffickers at the Smyrna Hotel so that it could continue to make money off of W.K., E.H., M.M., R.P, M.B., and D.P.'s sexual servitude.  Ex. "C", ¶¶ 397, 404, 407, 412.

66.    The W.K. Lawsuit alleges Varahi's acts constituted "harboring, holding, confining and detaining persons who were forced to engage in sexual acts in exchange for money" at the Smyrna Hotel.  Ex. "C", ¶ 426.

67.    The W.K. .Lawsuits asserts claims against Varahi for violations of the Georgia Racketeer Influenced and Corrupt Practices Act ("RICO"), violation of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), and negligence. Ex. "C", Counts I – IV.

68.    The W.K. Lawsuit was filed after counsel for Varahi had already agreed that there was no coverage available to Varahi for the similar Jane Doe 1 matter.

69.    After the W.K. Lawsuit was filed, Atain reached out to counsel for the claimants and counsel for Varahi to again seek an agreement of no coverage based on Varahi's not qualify as an insured or additional insured on the Policy and the Policy's Physical-Sexual Abuse Exclusion.

70.     Counsel for the plaintiffs in the W.K. Lawsuit agreed that Atain's Policy does not provide coverage to Varahi for the W.K. Lawsuit.  *See* August 6, 2021 Email from Michael Buamrind, attached hereto as Exhibit "J."

71.     Counsel for Varahi has been unresponsive to Atain's requests for such an agreement.

**FACTS RELEVANT TO THE DEMANDS**

72.     On October 17, 2022, counsel for T.W., M.M., G.W., C.H., and A.J. issued pre-suit demands to Varahi on behalf of each claimant.  Ex. "D".

73.     The Demands allege that claimants were sex-trafficked at the Smyrna Hotel and seek to settle claimant's allegations against Varahi.

74.     The claimants contend they were sex-trafficked at the Smyrna Hotel over the following time periods:

(a)     T.W. alleges she was sex-trafficked at the Smyrna Hotel from February 2015 through early 2016;

(b)     M.M. alleges she was sex-trafficked at the Smyrna Hotel from April 2015 through the middle of 2016;

(c)     G.W. she was sex-trafficked at the Smyrna Hotel from 2011 through November 2013;

(d)    C.H. alleges she was sex-trafficked at the Smyrna Hotel from the middle of 2013 to the end of 2013 and again in 2015; and

(e)    A.J. alleges she was sex-trafficked at the Smyrna Hotel from March 2015 through the middle of 2016.

75.    T.W., M.M., G.W., C.H., and A.J. seek damages from Varahi as the result of their sex trafficking at the Smyrna Hotel.

## FACTS RELEVANT TO K.M.'S LAWSUIT

76.    The K.M. Lawsuit was filed against Shiv Global on October 3, 2022. Ex. "E".

77.    In the K.M. Lawsuit, K.M. alleges that she was sex trafficked at the Lithonia Hotel between November 2013 and 2016. Ex. "E", ¶¶ 3, 20 - 21.

78.    In the K.M. Lawsuit, K.M. alleges she was sexually assaulted hundreds of times while at the Lithonia Hotel. Ex. "E", ¶ 23.

79.    In the K.M. Lawsuit, K.M. alleges Shiv Global employees and a manager named Yogi were aware of sex trafficking at the Lithonia Hotel. Ex. "E", ¶¶ 31 - 33.

80.    In the K.M. Lawsuit, K.M. contends that Shiv Global knowingly benefited from sex trafficking at the Lithonia Hotel. Ex. "E", ¶ 39.

81.    In the K.M. Lawsuit, K.M. asserts one cause of action against Shiv Global for violation of the Trafficking Victims Protection Reauthorization Act.

82.    The K.M. Lawsuit was forwarded to Atain with a request that Atain participate in Shiv Global's defense.

83.    There is no contract between Global Management and Shiv Global, which requires Global Management to name Shiv Global as an additional insured on the Policy.

84.    There is no contract between Global Management and Shiv Global governing their relationship that pre-dates Atain's Policy.

85.    On November 2, 2022, Atain issued a Reservation of Rights letter to Shiv Global.  The Reservation of Rights letter advised Shiv Global that Atain does not believe Shiv Global qualifies for coverage under the Policy as it is not an insured or additional insured.  Atain further advised that the Policy's Physical-Sexual Abuse Exclusion, among other terms, conditions, and exclusions of the Policy, likely barred coverage for the K.M. Lawsuit.  A true and correct copy of Atain's November 2, 2022 Reservation of Rights letter is attached as Exhibit "K".

86.    In Atain's Reservation of Rights letter, Atain agreed to participate in Shiv Global's defense.  However, Atain reserved the right to seek a declaratory ruling on its obligations to Shiv Global under the Policy, and to seek to recoup its

costs and fees in the event a court determines the Policy provides no coverage to Shiv Global.  Ex. "K".

## COUNT I: VARAHI'S BREACH OF CONTRACT

87.     Atain repeats and incorporates the allegations set for in ¶¶ 20-57, above, as if fully set forth herein.

88.     In exchange for dismissal of the Jane Doe 1 DJ, Varahi agreed that there was no coverage available under Atain's Policy for the Jane Doe 1 Lawsuit.

89.     Atain informed this Court of the settlement agreement, and the Jane Doe 1 DJ was dismissed; however, Varahi has refused to execute a release agreement to finalize the agreement and settlement.

90.     Atain therefore asks the Court to enforce this settlement.

91.     Atain also seeks damages in the amount of its costs in filing this action for Varahi's breach of the settlement agreement.

## COUNT II – DECLARATORY JUDGMENT
## W.K. LAWSUIT

92.     Atain repeats and incorporates the allegations set for in ¶¶ 20-41, 58 – 71, above, as if fully set forth herein.

93.     The Policy's Declarations page names Global Management as the only Named Insured on the Policy, the Policy does not include any additional Named Insureds, or identify any named additional insureds.

94.   There is further no written contract or agreement between Global Management and Varahi, and as such, Varahi cannot qualify as an additional insured under the Policy's Additional Insured Endorsement.

95.   Accordingly, there is no coverage available to Varahi for the W.K. Lawsuit because Varahi is not insured under the Policy.

96.   Second, even if Varahi could qualify for additional insured coverage, which it cannot, the Policy's Additional Insured Endorsement excludes coverage for the negligence of the additional insured.

97.   Third, even if Varahi could qualify as an additional insured on the Policy, which it cannot, the Policy's Physical-Sexual Abuse Exclusion unambiguously excludes coverage for any occurrence, suit, liability claim, demand, or cause of action arising out of or resulting from the physical abuse, sexual abuse or licentious, immoral or sexual behavior.

98.   Because the allegations in the Lawsuit arise out of physical abuse, sexual abuse, or licentious, immoral or sexual behavior, there is also no coverage available to Varahi.

99.   Fourth, the Policy only provides coverage for "bodily injury" caused by an "occurrence," and excludes coverage for any "bodily injury" known to have occurred prior to the inception of the Policy.

100.   Because the W.K. Lawsuit alleges conduct and injuries that were not "accidental" the Policy bars coverage for the claims.

101.   Because the W.K. Lawsuit alleges that Varahi had knowledge of sex-trafficking occurring prior to the Policy's inception, the Policy does not provide coverage for the claims.

102.   Fifth, the Policy excludes coverage for "bodily injury" expected or intended from the standpoint of the insured.

103.   Sixth, the Policy's Knowing Violation of Rights of Another expressly bars coverage for "personal and advertising injury" caused with the knowledge that the act would violate the rights of another and would inflict personal injury.

104.   Seventh, the Policy's Criminal Acts exclusion removes coverage for personal injury arising out of a criminal act committed by or at the direction of any insured.

105.   Eighth, the Policy's Known Injury or Damage Exclusion excludes coverage for bodily injury that the insured becomes aware has occurred or has begun to occur prior to the Policy's effective date.  Based on the allegations in the W.K. Lawsuit, Varahi was aware that sex-trafficking was occurring at the Smyrna Hotel prior to the Policy's inception.

106.    Finally, the Policy's Injury on Normally Occupied Premises exclusion explicitly excludes coverage under Coverage C – Medical Payments for bodily injury to a person injured on any part of premises owned or rented by an insured that the person normally occupies.  Based on the allegations in the W.K. Lawsuit, the W.K. claimants regularly occupied rooms at the Smyrna Hotel.

107.    Even if Varahi qualifies as an additional insured, which Atain disputes, coverage for the W.K. Lawsuit is otherwise barred by the terms, conditions, and exclusions of the Policy outlined above.

108.    Atain therefore asks this Court to declare that it has no obligation to defend Varahi for the W.K. Lawsuit.

**COUNT IV – DECLARATORY JUDGMENT
DEMANDS**

109.    Atain repeats and incorporates the allegations set for in ¶¶ 20-41, 72-75 above, as if fully set forth herein.

110.    The Policy's Declarations page names Global Management as the only Named Insured on the Policy, the Policy does not include any additional Named Insureds, or identify any named additional insureds.

111.    There is further no written contract or agreement between Global Management and Varahi, and as such, Varahi cannot qualify as an additional insured under the Policy's Additional Insured Endorsement.

112.   Accordingly, there is no coverage available to Varahi for the claims made in the Demands because Varahi is not insured under the Policy.

113.   Second, even if Varahi could qualify for additional insured coverage, which it cannot, the Policy's Additional Insured Endorsement excludes coverage for the negligence of the additional insured.

114.   Third, even if Varahi could qualify as an additional insured on the Policy, which it cannot, the Policy's Physical-Sexual Abuse Exclusion unambiguously excludes coverage for any occurrence, suit, liability claim, demand, or cause of action arising out of or resulting from the physical abuse, sexual abuse or licentious, immoral or sexual behavior.

115.   Because the allegations in the Demands arise out of physical abuse, sexual abuse, or licentious, immoral or sexual behavior, there is no coverage available to Varahi.

116.   Fourth, the Policy only provides coverage for "bodily injury" caused by an "occurrence," and excludes coverage for any "bodily injury" known to have occurred prior to the inception of the Policy.

117.   Because the Demands allege conduct and injuries that were not "accidental" the Policy bars coverage for the Demands.

118.   Because the Demands allege that Varahi had knowledge of sex-trafficking occurring prior to the Policy's inception, the Policy does not provide coverage for the claims.

119.   Fifth, the Policy excludes coverage for "bodily injury" expected or intended from the standpoint of the insured.

120.   Sixth, the Policy's Knowing Violation of Rights of Another expressly bars coverage for "personal and advertising injury" caused with the knowledge that the act would violate the rights of another and would inflict personal injury.

121.   Seventh, the Policy's Criminal Acts exclusion removes coverage for personal injury arising out of a criminal act committed by or at the direction of any insured.

122.   Eighth, the Policy's Known Injury or Damage Exclusion excludes coverage for bodily injury that the insured becomes aware has occurred or has begun to occur prior to the Policy's effective date.  Based on the allegations in the Demands, Varahi was aware that sex-trafficking was occurring at the Smyrna Hotel prior to the Policy's inception.

123.   Finally, the Policy's Injury on Normally Occupied Premises exclusion explicitly excludes coverage under Coverage C – Medical Payments for bodily

injury to a person injured on any part of premises owned or rented by an insured that the person normally occupies.

124.   Even if Varahi qualifies as an additional insured, which Atain disputes, coverage for the Demands is otherwise barred by the terms, conditions, and exclusions of the Policy outlined above.

125.   Atain therefore asks this Court to declare that it has no obligation to defend Varahi for the Demands.

## COUNT V – DECLARATORY JUDGMENT
## K.M. LAWSUIT

126.   Atain repeats and incorporates the allegations set for in ¶¶ 20-41, 76-86, above, as if fully set forth herein.

127.   The Policy's Declarations page names Global Management as the only Named Insured on the Policy, the Policy does not include any additional Named Insureds, or identify any named additional insureds.

128.   There is further no written contract or agreement between Global Management and Shiv Global, and as such, Shiv Global cannot qualify as an additional insured under the Policy's Additional Insured Endorsement.

129.   Accordingly, there is no coverage available to Shiv Global for the K.M. Lawsuit because Shiv Global is not insured under the Policy.

130.   Second, even if Shiv Global could qualify for additional insured coverage, which it cannot, the Policy's Additional Insured Endorsement excludes coverage for the negligence of the additional insured.

131.   Third, even if Shiv Global could qualify for additional insured coverage, which it cannot, the Policy's Physical-Sexual Abuse Exclusion unambiguously excludes coverage for any occurrence, suit, liability claim, demand, or cause of action arising out of or resulting from the physical abuse, sexual abuse or licentious, immoral or sexual behavior.

132.   Because the allegations in the K.M. Lawsuit arise out of physical abuse, sexual abuse, or licentious, immoral or sexual behavior, there is no coverage available to Shiv Global for the K.M. Lawsuit.

133.   Fourth, the Policy only provides coverage for "bodily injury" caused by an "occurrence," and excludes coverage for any "bodily injury" known to have occurred prior to the inception of the Policy.

134.   Because the K.M. Lawsuit alleges conduct and injuries that were not "accidental" the Policy bars coverage for the claims.

135.   Because the K.M. Lawsuit alleges that Shiv Global had knowledge of sex-trafficking occurring prior to the Policy's inception, the Policy does not provide coverage for the claims.

136.   Fifth, the Policy excludes coverage for "bodily injury" expected or intended from the standpoint of the insured.

137.   Sixth, the Policy's Knowing Violation of Rights of Another expressly bars coverage for personal and advertising injury caused with the knowledge that the act would violate the rights of another and would inflict personal injury.

138.   Seventh, the Policy's Criminal Acts exclusion removes coverage for personal injury arising out of a criminal act committed by or at the direction of any insured.

139.   Eighth, the Policy's Known Injury or Damage Exclusion excludes coverage for bodily injury that the insured becomes aware has occurred or has begun to occur prior to the Policy's effective date.  Based on the allegations in the K.M. Lawsuit, Shiv Global was aware that sex-trafficking was occurring at the Lithonia Hotel prior to the Policy's inception.

140.   Finally, the Policy's Injury on Normally Occupied Premises explicitly excludes coverage under Coverage C – Medical Payments for bodily injury to a person injured on any part of premises owned or rented by an insured that the person normally occupies.  Based on the allegations in the K.M. Lawsuit, K.M. regularly occupied a room at the Lithonia Hotel.

141.   Even if Shiv Global qualifies as an additional insured, which Atain disputes, coverage for the K.M. Lawsuit is otherwise barred by the terms, conditions, and exclusions of the Policy outlined above.

142.   Atain therefore asks this Court to declare that it has no obligation to defend and/or indemnify Shiv Global for the K.M. Lawsuit.

## **PRAYER FOR RELIEF**

WHEREFORE, Atain hereby respectfully requests this Court enter a judgment in its favor and against the Defendants:

a)   Enforcing the settlement agreement between Atain and Varahi regarding the Jane Doe 1 Lawsuit;

b)   Declaring Atain has no obligation to defend, and therefore no duty to indemnify, Varahi for any liability arising out of the claims or allegations raised in the W.K. Lawsuit as Varahi is not a named insured, is not an additional insured, as otherwise does not qualify as an insured on the Policy;

c)   Declaring Atain has no obligation to defend, and therefore no duty to indemnify, Varahi for any liability arising out of the claims or allegations raised in the W.K. Lawsuit as the Policy does not provide coverage for the claims;

d)   Declaring Atain has no obligation to defend, and therefore no duty to indemnify, Varahi for any liability arising out of the claims or allegations raised in the Demands as Varahi is not a named insured, is not an additional insured, as otherwise does not qualify as an insured on the Policy;

e)    Declaring Atain has no obligation to defend, and therefore no duty to indemnify, Varahi for any liability arising out of the claims or allegations raised in the Demands as the Policy does not provide coverage for the claims;

f)    Declaring Atain has no obligation to defend, and therefore no duty to indemnify, Shiv Global for any liability arising out of the claims or allegations raised in the K.M. Lawsuit as Shiv Global is not a named insured, is not an additional insured, as otherwise does not qualify as an insured on the Policy;

g)    Declaring Atain has no obligation to defend, and therefore no duty to indemnify, Shiv Global for any liability arising out of the claims or allegations raised in the K.M. Lawsuit as the Policy does not provide coverage for the claims;

h)    Declaring that Atain may withdraw its defense of Varahi in the W.K. Lawsuit;

i)    Declaring that Atain may withdraw its defense of Shiv Global in the K.M. Lawsuit;

j)    Awarding Atain the costs it incurred brining this action to enforce the Jane Doe 1 Settlement;

k)    Awarding Atain the costs it incurred in defending Varahi in the W.K. Lawsuit, even though it had no duty to defend;

l)    Awarding Atain the costs it incurred in defending Shiv Global in the K.M. Lawsuit, even though it had no duty to defend; and

m)    Atain respectfully requests such further relief as this Court may deem appropriate.

Dated this 8th day of March 2023.

**WOOD, SMITH, HENNING & BERMAN LLP**          */s/ Richard E. Zelonka, Jr.*
1230 Peachtree Street, Suite 925                          Richard E. Zelonka, Jr.
Atlanta, Georgia 30309                                        Georgia Bar No. 142152
Telephone:  470-552-1152                                   Molly L. Moyer
Fax:  470-552-1151                                             Georgia Bar No. 987498
rzelonka@wshblaw.com
mmoyer@wshblaw.com                                    *Counsel for Plaintiff*
slytle@wshblaw.com                                          *Atain Specialty Insurance Company*