# Exhibit "D"



October 17, 2022

**VIA STATUTORY DELIVERY**
**AND VIA EMAIL**

C. Shane Keith
Hawkins Parnell & Young, LLP
303 Peachtree Street NE
Suite 4000
Atlanta, GA 30308

**VIA STATUTORY DELIVERY**
**AND VIA EMAIL**

Adi Allushi, Esq.
Lewis Brisbois Bisgaard & Smith
600 Peachtree Street NE
Suite 4700
Atlanta, GA 30308

**Re:**   **T.W.**

Dear Shane and Adi:

Please allow this letter to serve as a compromise settlement demand for the above-referenced client.

## FACTS AND LIABILITY

From about February of 2015 through early 2016, T.W. was trafficked for sex as a minor at the Red Roof Inn located at 2200 Corporate Plaza, Smyrna, Georgia (the "Red Roof"). During the entirety of her trafficking, the property was owned by Varahi Hotel, and was operated as a Red Roof franchise location.

T.W. was 17 years old when she began being trafficked at the Red Roof. She was trafficked by a violent trafficker who controlled her psychologically and frequently beat her at the Red Roof. While she was trafficked at the Red Roof, T.W. was made to have commercial sex with 5–7 men per day, staying at the hotel for up to a month at a time. T.W. knew of more than 10 other girls and women who were being sold for sex at the hotel, half of whom were also minors, and she knew of at least 7 other traffickers operating out of the Red Roof. A.J., another client at Red Roof, witnessed the trafficking of T.W. and was trafficked by two other traffickers at the Red Roof at the same time. A.J. will testify that T.W.'s trafficker was a "gorilla pimp," and beat T.W. often at the hotel. Both will testify that hotel employee Forrest Castille hung out with and smoked marijuana with T.W.'s and A.J.'s traffickers.

Both T.W. and A.J. will testify that Bob Patel, the owner of the Red Roof, interacted with them both and allowed the trafficking at the hotel. A.J. will testify that Mr. Patel allowed pimps and girls being sold for sex at the hotel to be sold for sex during the day and pay for their room late, so long as they paid an additional late fee. A.J. herself made this arrangement with Mr. Patel *as a minor* at the Red Roof.

This is more disturbing because during this time when T.W. was sold for sex as a minor at the Red Roof, Michele Sarkisian called and emailed Andrew Alexander, the president of Red Roof, to notify him that sex trafficking was occurring at the Red Roof Smyrna.  Ms. Sarkisian also sent Mr. Alexander a *fifty-page report* detailing rampant sex trafficking that was occurring and had been occurring in the prior weeks and months at the Red Roof Smyrna – while T.W. was being trafficked on the premises.  Sadly, Red Roof did nothing.  Unbelievably, Red Roof never even forwarded these emails and report to Bob Patel or anyone else at Varahi Hotel.  If Red Roof had taken any action whatsoever to prevent or eliminate the sex trafficking that was reported directly to it in 2015, T.W. would have been rescued and would not have endured further trafficking at the hotel.

There are many other women and girls who have filed lawsuits against both Varahi and Red Roof, alleging that both Varahi and Red Roof knew or should have known that rampant sex trafficking and other crimes were occurring at the Red Roof Smyrna in the years prior to T.W.'s trafficking. These include but are not limited to a minor victim of sex trafficking whose pimp attempted to drown her in the bathtub at the Red Roof in December of 2014.  In the event that this case cannot be amicably resolved, some of these women and girls will be called as witnesses at trial of this case to discuss the harrowing conditions that Varahi and Red Roof allowed to occur and continue unabated at the Red Roof Smyrna, all in the name of revenue.

Georgia law has mandated since September 15, 2013, that hotels post a notice on their premises that provides sex trafficking victims a method to contact the federal and state hotlines for rescue.  The statute (O.C.G.A. § 16-5-47) provides that this notice must be posted in every public restroom on the premises and in a "conspicuous location in clear view of the public and employees." It is undisputed that no such notice was posted at the Red Roof Smyrna until approximately 2017 or 2018, after T.W. was trafficked at the hotel.

In the interest of brevity, we are not detailing here all of the prior crimes that Varahi had knowledge of, to include violent crimes, attempted murders, sex trafficking, and rampant prostitution and drug dealing, nor are we detailing all of the ways in which Varahi and Red Roof turned a blind eye to the known victimization of young girls and women in the interest of profits.  In fact, as you well know, the Red Roof Smyrna (while failing miserably in the areas of quality and customer service, as measured by Red Roof), was a top revenue generating property for Red Roof – and accordingly, was defined as a "Top Performer" by Red Roof, explaining why no effort was made by either Varahi or Red Roof to stop sex trafficking at the hotel.

It is also worth noting that in the face of multiple and ongoing customer complaints about safety and security concerns on the premises, Bob Patel reported to the public on multiple occasions that he was hiring security, would increase security hours, and would provide security every day – none of which he did until Cobb County issued a nuisance abatement notice to the Red Roof Smyrna in 2017.  What is clear by Mr. Patel's representations to the public is that Varahi knew that security was needed in order to provide a safe environment to its customers but failed to act.

Varahi is certainly liable pursuant to O.C.G.A. § 51-3-1 for failing to exercise ordinary care in keeping its premises and approaches safe, and Red Roof is vicariously liable for Varahi's negligence.  Given Varahi's actual knowledge of T.W.'s presence on the premises, and Varahi's knowledge that she was a victim of sex trafficking on the premises, there is no question that Varahi

2

knowingly benefitted from participation in a venture that it knew or should have known violated the TVPRA as to T.W.

Separately, due to the timing of Michele Sarkisian's emails and calls to Red Roof, including to both Andrew Alexander and George Limbert multiple times throughout the month of December 2015 *while T.W. was being sex trafficked at the hotel*, we are confident that a jury will find that Red Roof is separately liable for its own actions in knowingly benefiting from participation in a venture that it knew or should have known violated the TVPRA as to T.W.

Based on the above information, there can be no question that Defendants are liable for T.W.'s sex trafficking at the Red Roof Smyrna.

## DAMAGES

T.W. was only 17 years old when her trafficking at the Red Roof began, and she was trafficked there for over a year, forced to have sex with hundreds of men for the benefit of her traffickers, the johns, Varahi, and Red Roof. T.W. has undoubtedly suffered significantly as a result her sex trafficking and her life will never be the same. Jurors will instinctively understand the horror that this young woman experienced and the permanent and devastating effects and mental scarring that will last a lifetime. The losses here are massive and we anticipate that a jury will award a very significant verdict in favor of T.W.

## DEMAND

Given the clear liability of Defendants and the traumatic and permanent injuries suffered by T.W., we hereby make this demand in the amount of $3,000,000. This demand is made pursuant to *Southern General v. Holt*, 262 Ga. 267, 416 S.E.2d 274 (1992), *Cotton States Mutual Ins. Co. v. Brightman*, 276 Ga. 683, 580 S.E.2d 519 (2003), and O.C.G.A. § 51-12-14 as an unliquidated damages demand.

This demand is reasonable and appropriate especially in light of a verdict reached in a sex trafficking case against a hotel just last month. In that case a judge in a bench trial awarded a single minor sex trafficking victim a verdict of **$25.4 million** against the owner of the hotel. *See* https://www.arkansasonline.com/news/2022/jul/31/victim-of-sex-trafficking-awarded-25m/.

In exchange for the payment of $3,000,000, T.W. will execute a limited liability release in favor of Varahi Hotel, LLC, Red Roof Inns, Inc, and Red Roof Franchising, LLC, with agreed upon terms. T.W. will not provide indemnity for any claims between the Defendants, their agents, or their insurers or for any claims other than those by T.W. Specifically, T.W. will agree to provide indemnity for medical expenses only. Also, please allow us also to confirm that our client will not be made whole by this settlement, and this is the settlement of personal physical injuries.

As noted above, Varahi and Red Roof are both independently liable to T.W. for her sex trafficking at their hotel, and it makes no difference to T.W. which entity or entities contribute to this settlement or in what amounts. Although we suspect that Varahi Hotel owes a duty to indemnify its co-defendants in this case for some of Plaintiff's claims, it does not appear that this duty to indemnify

covers T.W.'s independent TVPRA claims against Red Roof, and it is of no consequence to us how Defendants spread risk. T.W. is offering to resolve all of her claims against all Defendants in exchange for $3,000,000.00.

Defendants' exposure in this case is extraordinarily high.  While this offer is reasonable to settle T.W.'s case, the total exposure for an excess verdict could be enormous. Juries don't tolerate sex crimes, especially of minors.  Below is a sampling of verdicts from nearby cases involving various sex crimes and circumstances:

**$1 Billion** 2018, Clayton County, Georgia, jury verdict for $1 billion in rape case of a 14-year-old. JVR No. 1806080054, 2018 WL 2949238 (Ga. State Ct.)

**$105 Million** 2013, Florida, verdict for sexual abuse and rape of six minors. 13 FJVR 6-33, 2013 WL 2948225 (Fla.Cir.Ct.)

**$105 Million** 2000, South Carolina State Ct., jury verdict for plaintiff alleging sexual abuse by private school teachers. JVR No. 385613, 2000 WL 33299966

**$100 Million** 2011, Florida Circuit Court, Eleventh Judicial Circuit, Miami-Dade County, jury verdict for plaintiff alleging sexual abuse by priest. 2011 WL 7809523 (Fla.Cir.Ct.).

**$49 Million** 2014, Florida, verdict for sexual abuse of 16-year-old. 8 FJVR 2-16, 2017 WL 7906461 (Fla.Cir.Ct.)

**$19 Million** 2008, Florida, verdict for six years of minor sexual abuse. 2009 WL 5538751 (Fla.Cir.Ct.)

**$9 Million** 2011, DeKalb County, Georgia, jury verdict for rape of adult woman. 2011 WL 7657731 (Ga. State Ct.)

**$9 Million** 2008, DeKalb County, Georgia, jury verdict for rape of 33-year-old woman. JVR No. 491331, 2008 WL 4145713 (Ga. State Ct.)

**$9 Million** 2005, Fulton County, Georgia, jury verdict for rape of 22-year old woman. JVR No. 478470, 2005 WL 6042321 (Ga. Super. Ct.) 7

**$8 Million** 2016, Fulton County, Georgia, verdict for sexual abuse of minor. 2016 WL 10514829 (Ga. State Ct.)

Our own firm has grown increasingly used to hearing insurance companies say that they are unsure how to value sex trafficking cases because they aren't aware of prior settlements or verdicts. As the sex trafficking verdict above shows, we think this sort of bury-your-head-in-the-sand response defies common sense and ignores jury attitudes that have been clearly demonstrated in other types of sexual abuse, rape, or molestation cases.

Regardless, we can now add multiple direct data points to the analysis. We recently obtained what we believe to be the first non-confidential sex trafficking settlement potentially in the country for two other minor clients against a hotel in Georgia. The two cases were captioned *Jillian Todd, Esq., as the administrator of the estate and legal guardian of A.B. v. Lincoln Hotels, LLC et al*, U.S. District Court for the Northern District of Georgia, Case No. 1:20-cv- 03332-MHC and *C.D. v. Lincoln Hotels, LLC et al.*, U.S. District Court for the Northern District of Georgia, Case No. 1:20-cv-03335-MHC. These two related cases recently settled for **$4.8 million**, exhausting all available insurance.

Even more recently, in the case of *Jane Doe v. T&S Hospitality, LLC*, State Court of Cobb County, Case No. 21-A-3871, we settled against the owner of a hotel for **$3 million**, again the limits of insurance. That case involved a 17-year-old victim trafficked at the hotel and her trafficker was never arrested. The two insurance companies in that case both saw the obvious likelihood of an excess verdict and tendered their limits. The facts in T.W.'s case regarding the Red Roof are significantly more damning.

In these recently settled matters, the insurance companies involved understood the enormous exposure that their insured hotel faced, and the insurance companies complied with their fiduciary obligations to act in the best interests of their insured by settling the case within the applicable limits of insurance.

This demand will remain open for thirty (30) days from the date of this letter, and will thereafter no longer be available for acceptance. Alternatively, and in good faith, if the parties agree to mediate this case on December 1, 2022 or December 2, 2022 as we have discussed, we will extend the time to respond to this demand until the time of the mediation. We have conveyed this offer to settle in good faith and trust you will evaluate it in good faith.

Sincerely,

Patrick J. McDonough

**ANDERSEN, TATE, & CARR, P.C.**
One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
Phone: (770) 822-0900
Facsimile: (770)822-9680
pmcdonough@atclawfirm.com



ANDERSEN | TATE | CARR
A FULL SERVICE GEORGIA LAW FIRM

October 17, 2022

**VIA STATUTORY DELIVERY**          **VIA STATUTORY DELIVERY**
**AND VIA EMAIL**                    **AND VIA EMAIL**

C. Shane Keith                       Adi Allushi, Esq.
Hawkins Parnell & Young, LLP         Lewis Brisbois Bisgaard & Smith
303 Peachtree Street NE              600 Peachtree Street NE
Suite 4000                           Suite 4700
Atlanta, GA 30308                    Atlanta, GA 30308

                    Re:    <u>G.W.</u>

Dear Shane and Adi:

       Please allow this letter to serve as a compromise settlement demand for the above-referenced client.

<u>**FACTS AND LIABILITY**</u>

       From about 2011 through November 2013, beginning when she was about *13 years old,* G.W. was trafficked for sex as a minor at the Red Roof Inn located at 2200 Corporate Plaza, Smyrna, Georgia (the "Red Roof").  During her trafficking, the property was owned by Red Roof corporate and later by Varahi Hotel, and was operated as a Red Roof franchise location.

       G.W. was shockingly only about 13 years old when she began being trafficked at the Red Roof.  Her trafficker controlled her psychologically and physically beat her at the hotel. While she was trafficked at the Red Roof, G.W. was made to have commercial sex with 10–20 men per day, staying at the hotel for weeks at a time.  While she was trafficked at the Red Roof, G.W. would cry to her trafficker that she was tired from seeing so many dates.  In response to this, her trafficker gave her speed in order to force her to stay awake. Both video and photographs exist documenting both G.W. and her traffickers at the Red Roof.

       G.W. will testify that she observed that about half the hotel was overrun with drug dealers or sex trafficking, that she observed numerous other trafficking victims, several who appeared to be as young as she was.  She recalls her pimp asking "crackheads" who hung around the hotel to rent rooms in their name for them, which the hotel allowed. She saw traffickers with 4-5 rooms rented for as many victims operating openly at the hotel.

       Of course, there are many other women and girls who have filed lawsuits against both Varahi and Red Roof, alleging that both Varahi and Red Roof knew or should have known that rampant sex trafficking and other crimes were occurring at the Red Roof Smyrna in the years prior to G.W.'s trafficking and their testimony is similar.  In the event that this case cannot be amicably resolved,

some of these women and girls will be called as witnesses at trial of this case to discuss the harrowing conditions that Varahi and Red Roof allowed to occur and continue unabated at the Red Roof Smyrna, all in the name of revenue.

In the interest of brevity, we are not detailing here all of the prior crimes that Varahi and Red Roof had knowledge of, to include violent crimes, attempted murders, sex trafficking, and rampant prostitution and drug dealing, nor are we detailing all of the ways in which Varahi and Red Roof turned a blind eye to the known victimization of young girls and women in the interest of profits while each owned the hotel.  In fact, as you well know, the Red Roof Smyrna (while failing miserably in the areas of quality and customer service, as measured by Red Roof), was a top revenue generating property for Red Roof – and accordingly, was defined as a "Top Performer" by Red Roof, explaining why no effort was made by either Varahi or Red Roof to stop sex trafficking at the hotel.

It is also worth noting that in the face of multiple and ongoing customer complaints about safety and security concerns on the premises, Bob Patel reported to the public on multiple occasions that he was hiring security, would increase security hours, and would provide security every day – none of which he did until Cobb County issued a nuisance abatement notice to the Red Roof Smyrna in 2017.  What is clear by Mr. Patel's representations to the public is that Varahi knew that security was needed in order to provide a safe environment to its customers but failed to act.

Here, both Varahi and Red Roof are directly liable as the owner of the hotel at different times, and Red Roof faces additional liability for its own actions as a franchisor. Based on the above information, there can be no question that Defendants are liable for G.W.'s sex trafficking at the Red Roof Smyrna.

## DAMAGES

G.W. was only *13 years old* when her trafficking at the Red Roof began, and she was trafficked there for nearly three years, forced to have sex with hundreds of men for the benefit of her traffickers, the johns, Varahi, and Red Roof. G.W. has undoubtedly suffered significantly as a result her sex trafficking and her life will never be the same.  Jurors will instinctively understand the horror that this young woman experienced and the permanent and devastating effects and mental scarring that will last a lifetime.  The losses here are massive and we anticipate that a jury will award a very significant verdict in favor of G.W.

## DEMAND

Given the clear liability of Defendants and the traumatic and permanent injuries suffered by G.W., we hereby make this demand in the amount of $3,000,000.  This demand is made pursuant to *Southern General v. Holt,* 262 Ga. 267, 416 S.E.2d 274 (1992), *Cotton States Mutual Ins. Co. v. Brightman*, 276 Ga. 683, 580 S.E.2d 519 (2003), and O.C.G.A. § 51-12-14 as an unliquidated damages demand.

This demand is reasonable and appropriate especially in light of a verdict reached in a sex trafficking case against a hotel just last month.  In that case a judge in a bench trial awarded a single

minor sex trafficking victim a verdict of **$25.4 million** against the owner of the hotel. *See* https://www.arkansasonline.com/news/2022/jul/31/victim-of-sex-trafficking-awarded-25m/.

In exchange for the payment of $3,000,000, G.W. will execute a limited liability release in favor of Varahi Hotel, LLC, Red Roof Inns, Inc, Red Roof Franchising, LLC, and any other Red Roof entities related to the hotel during Red Roof's ownership, with agreed upon terms.  G.W. will not provide indemnity for any claims between the Defendants, their agents, or their insurers or for any claims other than those by G.W.  Specifically, G.W. will agree to provide indemnity for medical expenses only.  Also, please allow us also to confirm that our client will not be made whole by this settlement, and this is the settlement of personal physical injuries.

As noted above, Varahi and Red Roof are both independently liable to G.W. for her sex trafficking at their hotel, and it makes no difference to G.W. which entity or entities contribute to this settlement or in what amounts.  Although we suspect that Varahi Hotel owes a duty to indemnify its co-defendants in this case for some of Plaintiff's claims, it does not appear that this duty to indemnify covers G.W.'s independent TVPRA claims against Red Roof, and it is of no consequence to us how Defendants spread risk.  G.W. is offering to resolve all of her claims against all Defendants in exchange for $3,000,000.00.  Notably, Varahi has no obligations to Red Roof for the two years G.W. was trafficked at the hotel before Varahi's ownership.

Defendants' exposure in this case is extraordinarily high.  While this offer is reasonable to settle G.W.'s case, the total exposure for an excess verdict could be enormous. Juries don't tolerate sex crimes, especially of minors, and especially of a 13 year old.  Below is a sampling of verdicts from nearby cases involving various sex crimes and circumstances:

**$1 Billion** 2018, Clayton County, Georgia, jury verdict for $1 billion in rape case of a 14-year-old. JVR No. 1806080054, 2018 WL 2949238 (Ga. State Ct.)

**$105 Million** 2013, Florida, verdict for sexual abuse and rape of six minors. 13 FJVR 6-33, 2013 WL 2948225 (Fla.Cir.Ct.)

**$105 Million** 2000, South Carolina State Ct., jury verdict for plaintiff alleging sexual abuse by private school teachers. JVR No. 385613, 2000 WL 33299966

**$100 Million** 2011, Florida Circuit Court, Eleventh Judicial Circuit, Miami-Dade County, jury verdict for plaintiff alleging sexual abuse by priest. 2011 WL 7809523 (Fla.Cir.Ct.).

**$49 Million** 2014, Florida, verdict for sexual abuse of 16-year-old. 8 FJVR 2-16, 2017 WL 7906461 (Fla.Cir.Ct.)

**$19 Million** 2008, Florida, verdict for six years of minor sexual abuse. 2009 WL 5538751 (Fla.Cir.Ct.)

**$9 Million** 2011, DeKalb County, Georgia, jury verdict for rape of adult woman. 2011 WL 7657731 (Ga. State Ct.)

**$9 Million** 2008, DeKalb County, Georgia, jury verdict for rape of 33-year-old woman. JVR No. 491331, 2008 WL 4145713 (Ga. State Ct.)

**$9 Million** 2005, Fulton County, Georgia, jury verdict for rape of 22-year old woman. JVR No. 478470, 2005 WL 6042321 (Ga. Super. Ct.) 7

**$8 Million** 2016, Fulton County, Georgia, verdict for sexual abuse of minor. 2016 WL 10514829 (Ga. State Ct.)

Our own firm has grown increasingly used to hearing insurance companies say that they are unsure how to value sex trafficking cases because they aren't aware of prior settlements or verdicts. As the sex trafficking verdict above shows, we think this sort of bury-your-head-in-the-sand response defies common sense and ignores jury attitudes that have been clearly demonstrated in other types of sexual abuse, rape, or molestation cases.

Regardless, we can now add multiple direct data points to the analysis. We recently obtained what we believe to be the first non-confidential sex trafficking settlement potentially in the country for two other minor clients against a hotel in Georgia. The two cases were captioned *Jillian Todd, Esq., as the administrator of the estate and legal guardian of A.B. v. Lincoln Hotels, LLC et al*, U.S. District Court for the Northern District of Georgia, Case No. 1:20-cv- 03332-MHC and *C.D. v. Lincoln Hotels, LLC et al.*, U.S. District Court for the Northern District of Georgia, Case No. 1:20-cv-03335-MHC. These two related cases recently settled for **$4.8 million**, exhausting all available insurance.

Even more recently, in the case of *Jane Doe v. T&S Hospitality, LLC*, State Court of Cobb County, Case No. 21-A-3871, we settled against the owner of a hotel for **$3 million**, again the limits of insurance. That case involved a 17-year-old victim trafficked at the hotel and her trafficker was never arrested. Our firm has also recently settled two separate cases for policy limit amounts which are confidential. The four insurance companies in those cases saw the obvious likelihood of an excess verdict and tendered their limits. The insurance companies involved understood the enormous exposure that their insured hotel faced, and the insurance companies complied with their fiduciary obligations to act in the best interests of their insured by settling the case within the applicable limits of insurance. In addition to those policy limits settlements, our firm also recently settled a case where a client was at a hotel for less than 2 weeks for $1.375 million dollars. The facts in G.W.'s case regarding the Red Roof are significantly more damning than each of these settled cases.

This demand will remain open for thirty (30) days from the date of this letter, and will thereafter no longer be available for acceptance. Alternatively, and in good faith, if the parties agree to mediate this case on December 1, 2022 or December 15, 2022 as we have discussed, we will extend the time to respond to this demand until the time of the mediation. We have conveyed this offer to settle in good faith and trust you will evaluate it in good faith.

Very truly yours,

Patrick J. McDonough

4

**ANDERSEN, TATE, & CARR, P.C.**
One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
Phone: (770) 822-0900
Facsimile: (770)822-9680
pmcdonough@atclawfirm.com



October 17, 2022

**VIA STATUTORY DELIVERY**
**AND VIA EMAIL**

C. Shane Keith
Hawkins Parnell & Young, LLP
303 Peachtree Street NE
Suite 4000
Atlanta, GA 30308

**VIA STATUTORY DELIVERY**
**AND VIA EMAIL**

Adi Allushi, Esq.
Lewis Brisbois Bisgaard & Smith
600 Peachtree Street NE
Suite 4700
Atlanta, GA 30308

      **Re:**   **M.M.**

Dear Shane and Adi:

      Please allow this letter to serve as a compromise settlement demand for the above-referenced client.

### FACTS AND LIABILITY

      From about April of 2015 through the middle of 2016, M.M. was trafficked for sex as an 18 year old at the Red Roof Inn located at 2200 Corporate Plaza, Smyrna, Georgia (the "Red Roof"). During the entirety of her trafficking, the property was owned by Varahi Hotel, and was operated as a Red Roof franchise location.

      M.M. was 18 years old when she was trafficked at the Red Roof. Her trafficker, an older man, controlled her psychologically and physically while she was at the hotel, often beating her there. In fact, after one such episode, M.M.'s trafficker was stabbed at the Red Roof by a group of other men who saw him abusing M.M. While she was trafficked at the Red Roof, M.M. was made to have commercial sex with 5–10 men per day for roughly a year, staying at the hotel for months at a time.

      M.M. recalls 10–20 other girls or women being sold for sex at the Red Roof by more than 5 traffickers at the hotel. This is disturbing because during this time when M.M. was sold for sex at the Red Roof, Michele Sarkisian called and emailed Andrew Alexander, the president of Red Roof, to notify him that sex trafficking was occurring at the Red Roof Smyrna. Ms. Sarkisian also sent Mr. Alexander a *fifty-page report* detailing rampant sex trafficking that was occurring and had been occurring in the prior weeks and months at the Red Roof Smyrna – while M.M. was being trafficked on the premises. Sadly, Red Roof did nothing. Unbelievably, Red Roof never even forwarded these emails and report to Bob Patel or anyone else at Varahi Hotel. If Red Roof had taken any action whatsoever to prevent or eliminate the sex trafficking that was reported directly to it in 2015, M.M. would have been rescued and would not have endured further trafficking at the hotel.

      There are many other women and girls who have filed lawsuits against both Varahi and Red Roof, alleging that both Varahi and Red Roof knew or should have known that rampant sex trafficking

and other crimes were occurring at the Red Roof Smyrna in the years prior to M.M.'s trafficking. These include but are not limited to a minor victim of sex trafficking whose pimp attempted to drown her in the bathtub at the Red Roof in December of 2014. In the event that this case cannot be amicably resolved, some of these women and girls will be called as witnesses at trial of this case to discuss the harrowing conditions that Varahi and Red Roof allowed to occur and continue unabated at the Red Roof Smyrna, all in the name of revenue.

Georgia law has mandated since September 15, 2013, that hotels post a notice on their premises that provides sex trafficking victims a method to contact the federal and state hotlines for rescue. The statute (O.C.G.A. § 16-5-47) provides that this notice must be posted in every public restroom on the premises and in a "conspicuous location in clear view of the public and employees." It is undisputed that no such notice was posted at the Red Roof Smyrna until approximately 2017 or 2018, after M.M. was trafficked at the hotel.

In the interest of brevity, we are not detailing here all of the prior crimes that Varahi had knowledge of, to include violent crimes, attempted murders, sex trafficking, and rampant prostitution and drug dealing, nor are we detailing all of the ways in which Varahi and Red Roof turned a blind eye to the known victimization of young girls and women in the interest of profits. In fact, as you well know, the Red Roof Smyrna (while failing miserably in the areas of quality and customer service, as measured by Red Roof), was a top revenue generating property for Red Roof – and accordingly, was defined as a "Top Performer" by Red Roof, explaining why no effort was made by either Varahi or Red Roof to stop sex trafficking at the hotel.

It is also worth noting that in the face of multiple and ongoing customer complaints about safety and security concerns on the premises, Bob Patel reported to the public on multiple occasions that he was hiring security, would increase security hours, and would provide security every day – none of which he did until Cobb County issued a nuisance abatement notice to the Red Roof Smyrna in 2017. What is clear by Mr. Patel's representations to the public is that Varahi knew that security was needed in order to provide a safe environment to its customers but failed to act.

Varahi is certainly liable pursuant to O.C.G.A. § 51-3-1 for failing to exercise ordinary care in keeping its premises and approaches safe, and Red Roof is vicariously liable for Varahi's negligence. Given Varahi's actual knowledge of M.M.'s presence on the premises, and Varahi's knowledge that she was a victim of sex trafficking on the premises, there is no question that Varahi knowingly benefitted from participation in a venture that it knew or should have known violated the TVPRA as to M.M.

Separately, due to the timing of Michele Sarkisian's emails and calls to Red Roof, including to both Andrew Alexander and George Limbert multiple times throughout the month of December 2015 _while M.M. was being sex trafficked at the hotel_, we are confident that a jury will find that Red Roof is separately liable for its own actions in knowingly benefiting from participation in a venture that it knew or should have known violated the TVPRA as to M.M.

Based on the above information, there can be no question that Defendants are liable for M.M.'s sex trafficking at the Red Roof Smyrna.

## DAMAGES

M.M. was only 18 years old when her trafficking at the Red Roof began, and she was trafficked there for over a year, forced to have sex with hundreds of men for the benefit of her traffickers, the johns, Varahi, and Red Roof. M.M. has undoubtedly suffered significantly as a result her sex trafficking and her life will never be the same. Jurors will instinctively understand the horror that this young woman experienced and the permanent and devastating effects and mental scarring that will last a lifetime. The losses here are massive and we anticipate that a jury will award a very significant verdict in favor of M.M.

## DEMAND

Given the clear liability of Defendants and the traumatic and permanent injuries suffered by M.M., we hereby make this demand in the amount of $2,000,000. This demand is made pursuant to *Southern General v. Holt,* 262 Ga. 267, 416 S.E.2d 274 (1992), *Cotton States Mutual Ins. Co. v. Brightman*, 276 Ga. 683, 580 S.E.2d 519 (2003), and O.C.G.A. § 51-12-14 as an unliquidated damages demand.

This demand is reasonable and appropriate especially in light of a verdict reached in a sex trafficking case against a hotel just last month. In that case a judge in a bench trial awarded a single minor sex trafficking victim a verdict of **$25.4 million** against the owner of the hotel. *See* https://www.arkansasonline.com/news/2022/jul/31/victim-of-sex-trafficking-awarded-25m/.

In exchange for the payment of $2,000,000, M.M. will execute a limited liability release in favor of Varahi Hotel, LLC, Red Roof Inns, Inc, and Red Roof Franchising, LLC, with agreed upon terms. M.M. will not provide indemnity for any claims between the Defendants, their agents, or their insurers or for any claims other than those by M.M. Specifically, M.M. will agree to provide indemnity for medical expenses only. Also, please allow us also to confirm that our client will not be made whole by this settlement, and this is the settlement of personal physical injuries.

As noted above, Varahi and Red Roof are both independently liable to M.M. for her sex trafficking at their hotel, and it makes no difference to M.M. which entity or entities contribute to this settlement or in what amounts. Although we suspect that Varahi Hotel owes a duty to indemnify its co-defendants in this case for some of Plaintiff's claims, it does not appear that this duty to indemnify covers M.M.'s independent TVPRA claims against Red Roof, and it is of no consequence to us how Defendants spread risk. M.M. is offering to resolve all of her claims against all Defendants in exchange for $2,000,000.00.

Defendants' exposure in this case is extraordinarily high. While this offer is reasonable to settle M.M.'s case, the total exposure for an excess verdict could be enormous. Juries don't tolerate sex crimes, especially of minors. Below is a sampling of verdicts from nearby cases involving various sex crimes and circumstances:

**$1 Billion** 2018, Clayton County, Georgia, jury verdict for $1 billion in rape case of a 14-year-old. JVR No. 1806080054, 2018 WL 2949238 (Ga. State Ct.)

3

**$105 Million** 2013, Florida, verdict for sexual abuse and rape of six minors. 13 FJVR 6-33, 2013 WL 2948225 (Fla.Cir.Ct.)

**$105 Million** 2000, South Carolina State Ct., jury verdict for plaintiff alleging sexual abuse by private school teachers. JVR No. 385613, 2000 WL 33299966

**$100 Million** 2011, Florida Circuit Court, Eleventh Judicial Circuit, Miami-Dade County, jury verdict for plaintiff alleging sexual abuse by priest. 2011 WL 7809523 (Fla.Cir.Ct.).

**$49 Million** 2014, Florida, verdict for sexual abuse of 16-year-old. 8 FJVR 2-16, 2017 WL 7906461 (Fla.Cir.Ct.)

**$19 Million** 2008, Florida, verdict for six years of minor sexual abuse. 2009 WL 5538751 (Fla.Cir.Ct.)

**$9 Million** 2011, DeKalb County, Georgia, jury verdict for rape of adult woman. 2011 WL 7657731 (Ga. State Ct.)

**$9 Million** 2008, DeKalb County, Georgia, jury verdict for rape of 33-year-old woman. JVR No. 491331, 2008 WL 4145713 (Ga. State Ct.)

**$9 Million** 2005, Fulton County, Georgia, jury verdict for rape of 22-year old woman. JVR No. 478470, 2005 WL 6042321 (Ga. Super. Ct.) 7

**$8 Million** 2016, Fulton County, Georgia, verdict for sexual abuse of minor. 2016 WL 10514829 (Ga. State Ct.)

Our own firm has grown increasingly used to hearing insurance companies say that they are unsure how to value sex trafficking cases because they aren't aware of prior settlements or verdicts. As the sex trafficking verdict above shows, we think this sort of bury-your-head-in-the-sand response defies common sense and ignores jury attitudes that have been clearly demonstrated in other types of sexual abuse, rape, or molestation cases.

Regardless, we can now add multiple direct data points to the analysis. We recently obtained what we believe to be the first non-confidential sex trafficking settlement potentially in the country for two other minor clients against a hotel in Georgia. The two cases were captioned *Jillian Todd, Esq., as the administrator of the estate and legal guardian of A.B. v. Lincoln Hotels, LLC et al*, U.S. District Court for the Northern District of Georgia, Case No. 1:20-cv- 03332-MHC and *C.D. v. Lincoln Hotels, LLC et al.*, U.S. District Court for the Northern District of Georgia, Case No. 1:20-cv-03335-MHC. These two related cases recently settled for **$4.8 million**, exhausting all available insurance.

Even more recently, in the case of *Jane Doe v. T&S Hospitality, LLC*, State Court of Cobb County, Case No. 21-A-3871, we settled against the owner of a hotel for **$3 million**, again the limits of insurance. That case involved a 17-year-old victim trafficked at the hotel and her trafficker was never arrested. Our firm has also recently settled two separate cases for policy limit amounts which

4

are confidential.  The four insurance companies in those cases saw the obvious likelihood of an excess verdict and tendered their limits. The insurance companies involved understood the enormous exposure that their insured hotel faced, and the insurance companies complied with their fiduciary obligations to act in the best interests of their insured by settling the case within the applicable limits of insurance.  In addition to those policy limits settlements, our firm also recently settled a case where a client was at a hotel for less than 2 weeks for $1.375 million dollars. The facts in M.M.'s case regarding the Red Roof are significantly more damning than each of these settled cases.

This demand will remain open for thirty (30) days from the date of this letter, and will thereafter no longer be available for acceptance.  Alternatively, and in good faith, if the parties agree to mediate this case on December 1, 2022 or December 15, 2022 as we have discussed, we will extend the time to respond to this demand until the time of the mediation.  We have conveyed this offer to settle in good faith and trust you will evaluate it in good faith.

Sincerely,

Patrick J. McDonough

**ANDERSEN, TATE, & CARR, P.C.**
One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
Phone: (770) 822-0900
Facsimile: (770)822-9680
pmcdonough@atclawfirm.com



A FULL SERVICE GEORGIA LAW FIRM

October 17, 2022

**VIA STATUTORY DELIVERY**
**AND VIA EMAIL**

C. Shane Keith
Hawkins Parnell & Young, LLP
303 Peachtree Street NE
Suite 4000
Atlanta, GA 30308

**VIA STATUTORY DELIVERY**
**AND VIA EMAIL**

Adi Allushi, Esq.
Lewis Brisbois Bisgaard & Smith
600 Peachtree Street NE
Suite 4700
Atlanta, GA 30308

**Re:     A.J.**

Dear Shane and Adi:

Please allow this letter to serve as a compromise settlement demand for the above-referenced client.

### FACTS AND LIABILITY

From about March of 2015 through the middle of 2016, A.J. was trafficked for sex as a minor at the Red Roof Inn located at 2200 Corporate Plaza, Smyrna, Georgia (the "Red Roof").  During the entirety of her trafficking, the property was owned by Varahi Hotel, and was operated as a Red Roof franchise location.

A.J. was 16 years old when she was trafficked at the Red Roof.  She turned 17 while being trafficked at the hotel.  She was trafficked by two different traffickers at the Red Roof, both of whom controlled her psychologically and physically beat her at the hotel. While she was trafficked at the Red Roof, A.J. was made to have commercial sex with 5–12 men per day for roughly a year, staying at the hotel for longer than a month at a time. Forrest Castille, who worked at the front desk, has executed an affidavit identifying A.J. as one of the young minor victims of sex trafficking he previously testified about at the hotel. He remembers her nickname, "Big Baby," and her trafficker, whose street name was "Bachi." The affidavit is attached.

Another client, T.W., witnessed the trafficking of A.J. at the Red Roof. T.W. was also trafficked as a minor at the hotel at the same time. Both T.W. and A.J. will testify that Bob Patel, the owner of the Red Roof, interacted with them and allowed the trafficking at the hotel. Both will testify that Mr. Castille hung out with and smoked marijuana with T.W.'s and A.J.'s traffickers.

A.J. will testify that Mr. Patel allowed pimps and girls being sold for sex at the hotel to be sold for sex during the day and pay for their room late, so long as they paid an additional late fee. A.J. herself made this arrangement with Mr. Patel *as a minor* at the Red Roof. A.J. frequently came into the front office herself to pay cash for an additional day for the room her trafficker, an older man,

rented.  A.J. recalls at least 20 other girls or women being sold for sex at the Red Roof by about 10 traffickers and that there were multiple other minor victims she recognized at the hotel.

This is more disturbing because during this time when A.J. was sold for sex as a minor at the Red Roof, Michele Sarkisian called and emailed Andrew Alexander, the president of Red Roof, to notify him that sex trafficking was occurring at the Red Roof Smyrna.  Ms. Sarkisian also sent Mr. Alexander a *fifty-page report* detailing rampant sex trafficking that was occurring and had been occurring in the prior weeks and months at the Red Roof Smyrna – while A.J. was being trafficked on the premises.  Sadly, Red Roof did nothing.  Unbelievably, Red Roof never even forwarded these emails and report to Bob Patel or anyone else at Varahi Hotel.  If Red Roof had taken any action whatsoever to prevent or eliminate the sex trafficking that was reported directly to it in 2015, A.J. would have been rescued and would not have endured further trafficking at the hotel.

There are many other women and girls who have filed lawsuits against both Varahi and Red Roof, alleging that both Varahi and Red Roof knew or should have known that rampant sex trafficking and other crimes were occurring at the Red Roof Smyrna in the years prior to A.J.'s trafficking.  These include but are not limited to a minor victim of sex trafficking whose pimp attempted to drown her in the bathtub at the Red Roof in December of 2014.  In the event that this case cannot be amicably resolved, some of these women and girls will be called as witnesses at trial of this case to discuss the harrowing conditions that Varahi and Red Roof allowed to occur and continue unabated at the Red Roof Smyrna, all in the name of revenue.

Georgia law has mandated since September 15, 2013, that hotels post a notice on their premises that provides sex trafficking victims a method to contact the federal and state hotlines for rescue.  The statute (O.C.G.A. § 16-5-47) provides that this notice must be posted in every public restroom on the premises and in a "conspicuous location in clear view of the public and employees." It is undisputed that no such notice was posted at the Red Roof Smyrna until approximately 2017 or 2018, after A.J. was trafficked at the hotel.

In the interest of brevity, we are not detailing here all of the prior crimes that Varahi had knowledge of, to include violent crimes, attempted murders, sex trafficking, and rampant prostitution and drug dealing, nor are we detailing all of the ways in which Varahi and Red Roof turned a blind eye to the known victimization of young girls and women in the interest of profits.  In fact, as you well know, the Red Roof Smyrna (while failing miserably in the areas of quality and customer service, as measured by Red Roof), was a top revenue generating property for Red Roof – and accordingly, was defined as a "Top Performer" by Red Roof, explaining why no effort was made by either Varahi or Red Roof to stop sex trafficking at the hotel.

It is also worth noting that in the face of multiple and ongoing customer complaints about safety and security concerns on the premises, Bob Patel reported to the public on multiple occasions that he was hiring security, would increase security hours, and would provide security every day – none of which he did until Cobb County issued a nuisance abatement notice to the Red Roof Smyrna in 2017.  What is clear by Mr. Patel's representations to the public is that Varahi knew that security was needed in order to provide a safe environment to its customers but failed to act.

Varahi is certainly liable pursuant to O.C.G.A. § 51-3-1 for failing to exercise ordinary care in keeping its premises and approaches safe, and Red Roof is vicariously liable for Varahi's negligence.  Given Varahi's actual knowledge of A.J.'s presence on the premises, and Varahi's knowledge that she was a victim of sex trafficking on the premises, there is no question that Varahi knowingly benefitted from participation in a venture that it knew or should have known violated the TVPRA as to A.J.

Separately, due to the timing of Michele Sarkisian's emails and calls to Red Roof, including to both Andrew Alexander and George Limbert multiple times throughout the month of December 2015 *while A.J. was being sex trafficked at the hotel*, we are confident that a jury will find that Red Roof is separately liable for its own actions in knowingly benefiting from participation in a venture that it knew or should have known violated the TVPRA as to A.J.

Based on the above information, there can be no question that Defendants are liable for A.J.'s sex trafficking at the Red Roof Smyrna.

## DAMAGES

A.J. was only *16 years old* when her trafficking at the Red Roof began, and she was trafficked there for over a year, forced to have sex with hundreds of men for the benefit of her traffickers, the johns, Varahi, and Red Roof. A.J. has undoubtedly suffered significantly as a result her sex trafficking and her life will never be the same.  Jurors will instinctively understand the horror that this young woman experienced and the permanent and devastating effects and mental scarring that will last a lifetime.  The losses here are massive and we anticipate that a jury will award a very significant verdict in favor of A.J.

## DEMAND

Given the clear liability of Defendants and the traumatic and permanent injuries suffered by A.J., we hereby make this demand in the amount of $3,000,000.  This demand is made pursuant to *Southern General v. Holt,* 262 Ga. 267, 416 S.E.2d 274 (1992), *Cotton States Mutual Ins. Co. v. Brightman*, 276 Ga. 683, 580 S.E.2d 519 (2003), and O.C.G.A. § 51-12-14 as an unliquidated damages demand.

This demand is reasonable and appropriate especially in light of a verdict reached in a sex trafficking case against a hotel just last month.  In that case a judge in a bench trial awarded a single minor sex trafficking victim a verdict of **$25.4 million** against the owner of the hotel. *See* https://www.arkansasonline.com/news/2022/jul/31/victim-of-sex-trafficking-awarded-25m/.

In exchange for the payment of $3,000,000, A.J. will execute a limited liability release in favor of Varahi Hotel, LLC, Red Roof Inns, Inc, and Red Roof Franchising, LLC, with agreed upon terms.  A.J. will not provide indemnity for any claims between the Defendants, their agents, or their insurers or for any claims other than those by A.J.  Specifically, A.J. will agree to provide indemnity for medical expenses only.  Also, please allow us also to confirm that our client will not be made whole by this settlement, and this is the settlement of personal physical injuries.

As noted above, Varahi and Red Roof are both independently liable to A.J. for her sex trafficking at their hotel, and it makes no difference to A.J. which entity or entities contribute to this settlement or in what amounts.  Although we suspect that Varahi Hotel owes a duty to indemnify its co-defendants in this case for some of Plaintiff's claims, it does not appear that this duty to indemnify covers A.J.'s independent TVPRA claims against Red Roof, and it is of no consequence to us how Defendants spread risk.  A.J. is offering to resolve all of her claims against all Defendants in exchange for $3,000,000.00.

Defendants' exposure in this case is extraordinarily high.  While this offer is reasonable to settle A.J.'s case, the total exposure for an excess verdict could be enormous. Juries don't tolerate sex crimes, especially of minors.  Below is a sampling of verdicts from nearby cases involving various sex crimes and circumstances:

**$1 Billion** 2018, Clayton County, Georgia, jury verdict for $1 billion in rape case of a 14-year-old. JVR No. 1806080054, 2018 WL 2949238 (Ga. State Ct.)

**$105 Million** 2013, Florida, verdict for sexual abuse and rape of six minors. 13 FJVR 6-33, 2013 WL 2948225 (Fla.Cir.Ct.)

**$105 Million** 2000, South Carolina State Ct., jury verdict for plaintiff alleging sexual abuse by private school teachers. JVR No. 385613, 2000 WL 33299966

**$100 Million** 2011, Florida Circuit Court, Eleventh Judicial Circuit, Miami-Dade County, jury verdict for plaintiff alleging sexual abuse by priest. 2011 WL 7809523 (Fla.Cir.Ct.).

**$49 Million** 2014, Florida, verdict for sexual abuse of 16-year-old. 8 FJVR 2-16, 2017 WL 7906461 (Fla.Cir.Ct.)

**$19 Million** 2008, Florida, verdict for six years of minor sexual abuse. 2009 WL 5538751 (Fla.Cir.Ct.)

**$9 Million** 2011, DeKalb County, Georgia, jury verdict for rape of adult woman. 2011 WL 7657731 (Ga. State Ct.)

**$9 Million** 2008, DeKalb County, Georgia, jury verdict for rape of 33-year-old woman. JVR No. 491331, 2008 WL 4145713 (Ga. State Ct.)

**$9 Million** 2005, Fulton County, Georgia, jury verdict for rape of 22-year old woman. JVR No. 478470, 2005 WL 6042321 (Ga. Super. Ct.) 7

**$8 Million** 2016, Fulton County, Georgia, verdict for sexual abuse of minor. 2016 WL 10514829 (Ga. State Ct.)

Our own firm has grown increasingly used to hearing insurance companies say that they are unsure how to value sex trafficking cases because they aren't aware of prior settlements or verdicts. As the sex trafficking verdict above shows, we think this sort of bury-your-head-in-the-sand response

defies common sense and ignores jury attitudes that have been clearly demonstrated in other types of sexual abuse, rape, or molestation cases.

Regardless, we can now add multiple direct data points to the analysis. We recently obtained what we believe to be the first non-confidential sex trafficking settlement potentially in the country for two other minor clients against a hotel in Georgia. The two cases were captioned *Jillian Todd, Esq., as the administrator of the estate and legal guardian of A.B. v. Lincoln Hotels, LLC et al*, U.S. District Court for the Northern District of Georgia, Case No. 1:20-cv- 03332-MHC and *C.D. v. Lincoln Hotels, LLC et al.*, U.S. District Court for the Northern District of Georgia, Case No. 1:20-cv-03335-MHC. These two related cases recently settled for **$4.8 million**, exhausting all available insurance.

Even more recently, in the case of *Jane Doe v. T&S Hospitality, LLC*, State Court of Cobb County, Case No. 21-A-3871, we settled against the owner of a hotel for **$3 million**, again the limits of insurance. That case involved a 17-year-old victim trafficked at the hotel and her trafficker was never arrested. Our firm has also recently settled two separate cases for policy limit amounts which are confidential. The four insurance companies in those cases saw the obvious likelihood of an excess verdict and tendered their limits. The insurance companies involved understood the enormous exposure that their insured hotel faced, and the insurance companies complied with their fiduciary obligations to act in the best interests of their insured by settling the case within the applicable limits of insurance. In addition to those policy limits settlements, our firm also recently settled a case where a client was at a hotel for less than 2 weeks for $1.375 million dollars. The facts in A.J.'s case regarding the Red Roof are significantly more damning than each of these settled cases.

This demand will remain open for thirty (30) days from the date of this letter, and will thereafter no longer be available for acceptance. Alternatively, and in good faith, if the parties agree to mediate this case on December 1, 2022 or December 15, 2022 as we have discussed, we will extend the time to respond to this demand until the time of the mediation. We have conveyed this offer to settle in good faith and trust you will evaluate it in good faith.

Sincerely,

Patrick J. McDonough

**ANDERSEN, TATE, & CARR, P.C.**
One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
Phone: (770) 822-0900
Facsimile: (770)822-9680
pmcdonough@atclawfirm.com

## <u>AFFIDAVIT OF FORREST CASTILLE</u>

COUNTY OF COBB
STATE OF GEORGIA

      Personally appeared before the undersigned officer duly appointed to administer oaths came Forrest Castille, who upon first being duly sworn, deposes and states as follows:

1. My name is Forrest Castille. I am more than twenty-one years of age, competent to testify, have no legal or mental disability and have personal knowledge of the facts stated herein. I freely give this affidavit for use in this case.
2. I was employed by Red Roof Inns, Inc. from roughly 2008 to December 2012.
3. After the hotel sold in December 2012, I became an employee of Varahi Hotels, LLC.
4. I was employed by Varahi Hotels from roughly December 2012 to 2016.
5. I worked at the Red Roof Inn at 2200 Corporate Plaza, Smyrna, Georgia, 30080 ("Red Roof Inn") as a front desk attendant the entire duration of my employment, from 2008 to 2016.
6. I testified about my experiences at the Red Roof Inn at a deposition on October 22, 2021. In that deposition, I testified that I was aware of several pimps working out of the hotel who were selling several obviously very young minor girls for sex at the hotel.
7. One of the young girls I saw who was sold for sex by a pimp at the Red Roof Inn is the girl whose picture is attached as Exhibit 1.
8. This girl I knew by the name "Big Baby" and I knew her pimp as "Bachi." The two of them were at the Red Roof Inn a lot in the last year or so that I worked there. I often saw Big Baby around the property with Bachi and the different men who were coming in and out of her room to buy sex.
9. Once, Big Baby came running into the front office of the Red Roof Inn because Bachi had hit her several times and I hid her in the office of the Red Roof Inn while he was looking for her.

This, the __16__ day of October, 2022.

_Forrest Castille_
Forrest Castille

I, __Cathy Crawford__, a notary public for the county and state, certify that Forrest Castille, whose name is signed to the foregoing affidavit and who acknowledged before me on this day that, having read the contents of the foregoing affidavit, she executed the same voluntarily.

Sworn to and subscribed before
me this __16__ day of October, 2022

Notary Public



# Exhibit 1



# Exhibit 1





A FULL SERVICE GEORGIA LAW FIRM

October 17, 2022

**VIA STATUTORY DELIVERY**
**AND VIA EMAIL**

C. Shane Keith
Hawkins Parnell & Young, LLP
303 Peachtree Street NE
Suite 4000
Atlanta, GA 30308

**VIA STATUTORY DELIVERY**
**AND VIA EMAIL**

Adi Allushi, Esq.
Lewis Brisbois Bisgaard & Smith
600 Peachtree Street NE
Suite 4700
Atlanta, GA 30308

   **Re:**  **C.H.**

Dear Shane and Adi:

  Please allow this letter to serve as a compromise settlement demand for the above-referenced client.

**FACTS AND LIABILITY**

  In two different time periods, from the middle of 2013 to the end of 2013, and again in 2015, C.H. was trafficked for sex at the Red Roof Inn located at 2200 Corporate Plaza, Smyrna, Georgia (the "Smyrna Red Roof") and the Red Roof Inn located at 1960 North Druid Hills Rd. NE, Atlanta, Georgia (the "Buckhead Red Roof"). At the Smyrna Red Roof, during the entirety of her trafficking, the property was owned by Varahi Hotel, and was operated as a Red Roof franchise location. At the Buckhead Red Roof, the hotel was owned and operated directly by Red Roof Inns, Inc. related entities.

**1.**  **Smyrna Red Roof**

  At the Smyrna Red Roof, C.H. was trafficked by "Kwan," the same trafficker testified about by Jane Does 1-4, C.A., R.K., T.H., and K.P. She was also trafficked by Anthony Shivers at the Smyrna Red Roof, who has been testified about by several clients and witnesses, has been videoed at the Smyrna Red Roof with women being sold for sex, and who hotel employee Forrest Castille testified was a known pimp. Of course, Anthony Shivers is also the trafficker who was reported directly to Andrew Alexander, the president of Red Roof, to notify him that sex trafficking was occurring at the hotel.

  While she was trafficked at the Smyrna Red Roof, her traffickers controlled C.H. psychologically as well as through violence. While she was trafficked at the Smyrna Red Roof, C.H. was made to have commercial sex with 5–12 men per day, staying at the hotel for up to a month at a time. Once at the Smyrna Red Roof, another trafficker at the hotel tried to take C.H. from Shivers and pistol-whipped her. C.H. went to the front desk and asked them to call the police, but the employees did nothing.

Of course, there are many other women and girls who have filed lawsuits against both Varahi and Red Roof, alleging that both Varahi and Red Roof knew or should have known that rampant sex trafficking and other crimes were occurring at the Smyrna Red Roof in the years prior to C.H.'s trafficking and their testimony is similar.  Several of these other plaintiffs are witnesses to C.H.'s trafficking at the Smyrna Red Roof.  In the event that this case cannot be amicably resolved, some of these women and girls will be called as witnesses at trial of this case to discuss the harrowing conditions that Varahi and Red Roof allowed to occur and continue unabated at the Red Roof Smyrna, all in the name of revenue.

In the interest of brevity, we are not detailing here all of the prior crimes that Varahi and Red Roof had knowledge of, to include violent crimes, attempted murders, sex trafficking, and rampant prostitution and drug dealing, nor are we detailing all of the ways in which Varahi and Red Roof turned a blind eye to the known victimization of young girls and women in the interest of profits while each owned the hotel.  In fact, as you well know, the Smyrna Red Roof (while failing miserably in the areas of quality and customer service, as measured by Red Roof), was a top revenue generating property for Red Roof – and accordingly, was defined as a "Top Performer" by Red Roof, explaining why no effort was made by either Varahi or Red Roof to stop sex trafficking at the hotel.

Here, both Varahi and Red Roof are directly liable as the owner of the hotel, and Red Roof faces additional liability for its own actions as a franchisor. Based on the above information, there can be no question that Defendants are liable for C.H.'s sex trafficking at the Red Roof Smyrna.

**2.      Buckhead Red Roof**

C.H. was also trafficked by Kwan at the Buckhead Red Roof in 2013 and 2015 for a few months, staying for more than a week at a time, where she also had to engage in commercial sex with about 5-12 men per day.

At the Buckhead Red Roof, Kwan paid off hotel employees for assistance in his trafficking. C.H. often witnessed Kwan handing the employees at the front desk an extra $50–$100 when checking in at the hotel. Kwan was also violent at the Buckhead Red Roof. Once, in a room right above the office, Kwan threw another victim, Laura, into a toilet and forced her to drink urine from it. Laura resisted for a while and the incident was loud enough to hear far beyond the room.

At all material times, the Buckhead Red Roof was owned, operated, managed, and controlled by Red Roof Inns, Inc. and its related entities, and all employees working at the hotel were employed by Red Roof Inns, Inc.  These entities had direct knowledge of rampant crime at the Buckhead Red Roof back to at least 2009, including prostitution, drug dealing, and sex trafficking.  Vanessa Cole, a floating general manager for Red Roof, testified that she was assigned to the Buckhead Red Roof intermittently in 2011 and 2012.  While there, Ms. Cole feared for her own safety and the safety of her employees.  Further, she recognized many indicators of sex trafficking at the Buckhead Red Roof, including the presence of wigs and large amounts of condoms in guest rooms, high traffic of male visitors to guest rooms, and young girls controlled by pimps.

Michael Thomas, a Buckhead Red Roof front desk employee in 2012, testified that the hotel consistently received negative reviews and comments from guests due to the presence of pimps with young girls, prostitution, sex trafficking, young girls opening soliciting buyers of commercial sex, and drug deals.  As a result, Jay Moyer, Red Roof's vice president of operations, instructed the hotel employees to move the "questionable guests" to the back side of the hotel where they would be hidden from the "family oriented" guests staying on the front side of the hotel.

Further evidencing his knowledge of the ongoing sex trafficking occurring at the Buckhead Red Roof, Mr. Moyer sent an email to his colleagues in 2013 when the property was being converted to a Red Roof + location, telling his colleagues that his thoughts on the transition included that "my pimps and hos love them some snacks to go with their smokes."  In addition, Mr. Moyer was told that a minor was being trafficked for sex on the premises in April of 2015.  In response to this actual notice of minor sex trafficking, Mr. Moyer did *nothing* other than to tell the manager of the property to "tread lightly."

There are many other women and girls who have filed lawsuits against Red Roof, alleging that Red Roof knew or should have known that rampant sex trafficking and other crimes were occurring at the Buckhead Red Roof in the years prior to C.H.'s trafficking.  Some of these victims are also witnesses to the trafficking of C.H. at the Buckhead Red Roof.  In the event that this case cannot be amicably resolved, some of these women and girls will be called as witnesses at trial of this case to discuss the harrowing conditions that Red Roof allowed to occur and continue unabated at the Buckhead Red Roof, all in the name of revenue.

In the interest of brevity, we are not detailing here all of the prior crimes that the Red Roof Defendants had knowledge of, to include violent crimes, sex trafficking, and rampant prostitution and drug dealing, nor are we detailing all of the ways in which Red Roof turned a blind eye to the known victimization of young girls and women in the interest of profits.  In fact, as you well know, the Buckhead Red Roof (while failing miserably in the areas of quality and customer service, as measured by Red Roof), was a top revenue generating property for Red Roof – and accordingly, was defined as a "Top Performer" by Red Roof, explaining why no effort was made by Red Roof to stop sex trafficking at the hotel.

Red Roof is certainly liable pursuant to O.C.G.A. § 51-3-1 for failing to exercise ordinary care in keeping its premises and approaches safe.  Further, given Red Roof's employee's acceptance of money from C.H.'s trafficker, there is no question that Red Roof knowingly benefitted from participation in a venture that it knew or should have known violated the TVPRA as to C.H.

Based on the above information, there can be no question that Defendants are liable for C.H.'s sex trafficking at the Red Roof Smyrna.

## **DAMAGES**

C.H. has undoubtedly suffered significantly as a result her sex trafficking and her life will never be the same.  Jurors will instinctively understand the horror that this young woman experienced and the permanent and devastating effects and mental scarring that will last a lifetime.  The losses here are massive and we anticipate that a jury will award a very significant verdict in her favor.

## DEMAND

Given the clear liability of Defendants and the traumatic and permanent injuries suffered by C.H., we hereby make this demand in the amount of $1,500,000.  This demand is made pursuant to *Southern General v. Holt,* 262 Ga. 267, 416 S.E.2d 274 (1992), *Cotton States Mutual Ins. Co. v. Brightman,* 276 Ga. 683, 580 S.E.2d 519 (2003), and O.C.G.A. § 51-12-14 as an unliquidated damages demand.

This demand is reasonable and appropriate, given the extensive, permanent, and continuing damages sustained by C.H. and the egregiousness of the negligence, as well as the likely liability for punitive damages.  We strongly believe that the liability facts and losses in this case will result in a massive jury verdict against the Defendants, well in excess of this demand.  This demand is particularly reasonable in light of a verdict reached in a sex trafficking case against a hotel just last month.  In that case a judge in a bench trial awarded a single minor sex trafficking victim a verdict of **$25.4 million** against the owner of the hotel. *See* https://www.arkansasonline.com/news/2022/jul/31/victim-of-sex-trafficking-awarded-25m/.

In exchange for the payment of $1,500,000, C.H. will execute a limited liability release in favor of Defendants with agreed upon terms.  C.H. will not provide indemnity for any claims between the Defendants, their agents, or their insurers or for any claims other those by the C.H.   Specifically, C.H. will agree to provide indemnity for medical expenses only.  Also, please allow us also to confirm that our client will not be made whole by this settlement, and this is the settlement of personal physical injuries.

As noted above, Varahi and Red Roof are both independently liable to C.H. for her sex trafficking at their hotel, and it makes no difference to C.H. which entity or entities contribute to this settlement or in what amounts.  Although we suspect that Varahi Hotel owes a duty to indemnify its co-defendants in this case for some of C.H.'s claims, it does not appear that this duty to indemnify covers C.H.'s independent TVPRA claims against Red Roof and Varahi has nothing to do with claims related to the Buckhead Red Roof.  It is of no consequence to us how Defendants spread risk.  C.H. is offering to resolve all of her claims against all Defendants in exchange for $1,500,000.00.

Defendants' exposure in this case is extraordinarily high.  While this offer is reasonable to settle C.H.'s claims, the total exposure for an excess verdict could be enormous. Juries don't tolerate sex crimes.  Below is a sampling of verdicts from nearby cases involving various sex crimes and circumstances:

**$1 Billion** 2018, Clayton County, Georgia, jury verdict for $1 billion in rape case of a 14-year-old. JVR No. 1806080054, 2018 WL 2949238 (Ga. State Ct.)

**$105 Million** 2013, Florida, verdict for sexual abuse and rape of six minors. 13 FJVR 6-33, 2013 WL 2948225 (Fla.Cir.Ct.)

**$105 Million** 2000, South Carolina State Ct., jury verdict for plaintiff alleging sexual abuse by private school teachers. JVR No. 385613, 2000 WL 33299966

**$100 Million** 2011, Florida Circuit Court, Eleventh Judicial Circuit, Miami-Dade County, jury verdict for plaintiff alleging sexual abuse by priest. 2011 WL 7809523 (Fla.Cir.Ct.).

**$49 Million** 2014, Florida, verdict for sexual abuse of 16-year-old. 8 FJVR 2-16, 2017 WL 7906461 (Fla.Cir.Ct.)

**$19 Million** 2008, Florida, verdict for six years of minor sexual abuse. 2009 WL 5538751 (Fla.Cir.Ct.)

**$9 Million** 2011, DeKalb County, Georgia, jury verdict for rape of adult woman. 2011 WL 7657731 (Ga. State Ct.)

**$9 Million** 2008, DeKalb County, Georgia, jury verdict for rape of 33-year-old woman. JVR No. 491331, 2008 WL 4145713 (Ga. State Ct.)

**$9 Million** 2005, Fulton County, Georgia, jury verdict for rape of 22-year old woman. JVR No. 478470, 2005 WL 6042321 (Ga. Super. Ct.) 7

**$8 Million** 2016, Fulton County, Georgia, verdict for sexual abuse of minor. 2016 WL 10514829 (Ga. State Ct.)

Our own firm has grown increasingly used to hearing insurance companies say that they are unsure how to value sex trafficking cases because they aren't aware of prior settlements or verdicts. As the sex trafficking verdict above shows, we think this sort of bury-your-head-in-the-sand response defies common sense and ignores jury attitudes that have been clearly demonstrated in other types of sexual abuse, rape, or molestation cases.

Regardless, we can now add multiple direct data points to the analysis. We recently obtained what we believe to be the first non-confidential sex trafficking settlement potentially in the country for two other minor clients against a hotel in Georgia. The two cases were captioned *Jillian Todd, Esq., as the administrator of the estate and legal guardian of A.B. v. Lincoln Hotels, LLC et al*, U.S. District Court for the Northern District of Georgia, Case No. 1:20-cv- 03332-MHC and *C.D. v. Lincoln Hotels, LLC et al.*, U.S. District Court for the Northern District of Georgia, Case No. 1:20-cv-03335-MHC. These two related cases recently settled for **$4.8 million**, exhausting all available insurance.

Even more recently, in the case of *Jane Doe v. T&S Hospitality, LLC*, State Court of Cobb County, Case No. 21-A-3871, we settled against the owner of a hotel for **$3 million**, again the limits of insurance. That case involved a 17-year-old victim trafficked at the hotel and her trafficker was never arrested. Our firm has also recently settled two separate cases for policy limit amounts which are confidential. The four insurance companies in those cases saw the obvious likelihood of an excess verdict and tendered their limits. The insurance companies involved understood the enormous exposure that their insured hotel faced, and the insurance companies complied with their fiduciary obligations to act in the best interests of their insured by settling the case within the applicable limits of insurance. In addition to those policy limits settlements, our firm also recently settled a case where

a client was at a hotel for less than 2 weeks for $1.375 million dollars. The facts in C.H.'s case regarding the Red Roof Inns in Smyrna and Buckhead are significantly more damning than each of these settled cases.

This demand will remain open for thirty (30) days from the date of this letter, and will thereafter no longer be available for acceptance.  Alternatively, and in good faith, if the parties agree to mediate this case on December 1, 2022 or December 15, 2022 as we have discussed, we will extend the time to respond to this demand until the time of the mediation.  We have conveyed this offer to settle in good faith and trust you will evaluate it in good faith.

Sincerely,

Patrick J. McDonough

**ANDERSEN, TATE, & CARR, P.C.**
One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
Phone: (770) 822-0900
Facsimile: (770)822-9680
pmcdonough@atclawfirm.com