JS 44   (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| | |

| **(b)** County of Residence of First Listed Plaintiff   Wheeler | County of Residence of First Listed Defendant   Wheeler |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| **(c)**  Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| J. Scott Key, 80 Macon Street, McDonough, GA 30253 (678) 610-6624 | Christopher M. Carr, Georgia Attorney General |

## II.  BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III.  CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☒ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☒ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | **IMMIGRATION** | | |
| | | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | |
| | | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V.  ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation - Transfer
- ☐ 8  Multidistrict Litigation - Direct File

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 2254

Brief description of cause:
Petition for Writ of Habeas Corpus for Prisoner in State Custody

## VII.  REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☐ No

## VIII.  RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 3/6/2023 | /s/J. Scott Key |

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

AO 241 (Rev. 09/17)

## PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF
## HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| United States District Court | District: Northern District of Georgia |
|---|---|

| Name (under which you were convicted): <br> Richard Wayne McWilliams | Docket or Case No.: |
|---|---|

| Place of Confinement : <br> Wheeler County Correctional Facility | Prisoner No.: <br> 0000070166 |
|---|---|

| Petitioner (include the name under which you were convicted) <br><br> Richard Wayne McWilliams | | Respondent (authorized person having custody of petitioner) <br><br> Douglas Williams, Warden |
|---|---|---|
| | v. | |

| The Attorney General of the State of: Georgia |
|---|

### PETITION

1.  (a) Name and location of court that entered the judgment of conviction you are challenging:

    Superior Court of Fulton County, Georgia

    (b) Criminal docket or case number (if you know):  14SC126664

2.  (a) Date of the judgment of conviction (if you know):  6/3/2015

    (b) Date of sentencing:  6/3/2015

3.  Length of sentence:  Life plus 25 years

4.  In this case, were you convicted on more than one count or of more than one crime?  ☑ Yes      ☐ No

5.  Identify all crimes of which you were convicted and sentenced in this case: Felony Murder, Involuntary

    Manslaughter, Aggravated Sexual Battery, and Aggravated Assault

6.  (a) What was your plea? (Check one)

    ☑ (1)    Not guilty          ☐ (3)    Nolo contendere (no contest)

    ☐ (2)    Guilty              ☐ (4)    Insanity plea

AO 241 (Rev. 09/17)

(b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to?

_____

_____

_____

_____

_____

_____

(c) If you went to trial, what kind of trial did you have? (Check one)

☑ Jury    ☐ Judge only

7.    Did you testify at a pretrial hearing, trial, or a post-trial hearing?

☐ Yes    ☑ No

8.    Did you appeal from the judgment of conviction?

☑ Yes    ☐ No

9.    If you did appeal, answer the following:

(a) Name of court:    Supreme Court of Georgia

(b) Docket or case number (if you know):    S18A0728

(c) Result:    Affirmed

(d) Date of result (if you know):    10/9/2018

(e) Citation to the case (if you know):    McWilliams v. State, 304 Ga. 502 (2018)

(f) Grounds raised: (1-3) Trial court erred in denying Mr. McWilliams's Motion for Directed Verdict on the

charges of false imprisonment, aggravated sexual battery, and aggravated assault alleged in counts 4-6 of

the indictment based upon insufficient evidence; (4) The trial court erred in allowing evidence of other acts committed

by Mr. McWilliams pursuant to O.C.G.A. §§ 24-4-404(b) and 24-4-413 over timely objection; (5) The verdict by the jury finding

Mr. McWilliams not guilty in count 1 of malice murder, but guilty of the lesser included offense of involuntary

manslaughter with the underlying offense being battery, and guilty of felony murder in counts 2 and 3 are mutually

exclusive and therefore the jury's verdict should be set aside and a new trial granted.

(g) Did you seek further review by a higher state court?    ☐ Yes    ☑ No

If yes, answer the following:

(1) Name of court: _____

(2) Docket or case number (if you know): _____

(3) Result: _____

_____

AO 241 (Rev. 09/17)

(4) Date of result (if you know): _____

(5) Citation to the case (if you know): _____

(6) Grounds raised: _____

_____

_____

_____

(h) Did you file a petition for certiorari in the United States Supreme Court?     ☐ Yes     ☑ No

If yes, answer the following:

(1) Docket or case number (if you know): _____

(2) Result: _____

_____

(3) Date of result (if you know): _____

(4) Citation to the case (if you know): _____

10.     Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions

concerning this judgment of conviction in any state court?     ☑ Yes     ☐ No

11.     If your answer to Question 10 was "Yes," give the following information:

(a)     (1) Name of court:  Superior Court of Wheeler County, Georgia

(2) Docket or case number (if you know):  19CV093

(3) Date of filing (if you know):  9/30/2019

(4) Nature of the proceeding:  Petition for Writ of Habeas Corpus

(5) Grounds raised:  15 grounds of Ineffective Assistance of Counsel.

_____

_____

_____

_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☑ Yes     ☐ No

(7) Result:  Denied

AO 241 (Rev. 09/17)

(8) Date of result (if you know):    5/17/2022

(b) If you filed any second petition, application, or motion, give the same information:

(1) Name of court:

(2) Docket or case number (if you know):

(3) Date of filing (if you know):

(4) Nature of the proceeding:

(5) Grounds raised:

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐  Yes      ☐  No

(7) Result:

(8) Date of result (if you know):

(c) If you filed any third petition, application, or motion, give the same information:

(1) Name of court:

(2) Docket or case number (if you know):

(3) Date of filing (if you know):

(4) Nature of the proceeding:

(5) Grounds raised:

AO 241 (Rev. 09/17)

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

❑ Yes    ❑ No

(7) Result: _____

(8) Date of result (if you know): _____

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

(1) First petition:    ✔ Yes    ❑ No

(2) Second petition:    ❑ Yes    ❑ No

(3) Third petition:    ❑ Yes    ❑ No

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

_____

_____

12.    For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States.  Attach additional pages if you have more than four grounds.  State the facts supporting each ground.  Any legal arguments must be submitted in a separate memorandum.

**CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court.  Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.**

**GROUND ONE:** Ineffective Assistance of Counsel

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Counsel failed to appeal the admissibility of certain 404(b) or other extrinsic evidence and failed to preserve

for appeal the inadmissible hearsay evidence that was admitted in the form of 404(b) or other extrinsic evidence.

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground One, explain why: _____

_____

_____

_____

_____

_____

AO 241 (Rev. 09/17)

(c)      **Direct Appeal of Ground One:**

      (1) If you appealed from the judgment of conviction, did you raise this issue?      ☐ Yes    ☑ No

      (2) If you did not raise this issue in your direct appeal, explain why:  Trial counsel handled the appeal and
could not raise ineffective assistance of counsel on himself.

(d) **Post-Conviction Proceedings:**

      (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

          ☑ Yes    ☐ No

      (2) If your answer to Question (d)(1) is "Yes," state:

      Type of motion or petition:    Petition for Writ of Habeas Corpus

      Name and location of the court where the motion or petition was filed:  Superior Court of Wheeler County, Georgia

      Docket or case number (if you know):  19CV093

      Date of the court's decision:  5/17/2022

      Result (attach a copy of the court's opinion or order, if available):  Denied

      (3) Did you receive a hearing on your motion or petition?      ☑ Yes    ☐ No

      (4) Did you appeal from the denial of your motion or petition?      ☑ Yes    ☐ No

      (5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?    ☑ Yes    ☐ No

      (6) If your answer to Question (d)(4) is "Yes," state:

      Name and location of the court where the appeal was filed:  Supreme Court of Georgia

      Docket or case number (if you know):  S22H1132

      Date of the court's decision:    2/21/2023

      Result (attach a copy of the court's opinion or order, if available):   Application Denied

      (7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

AO 241 (Rev. 09/17)

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have

used to exhaust your state remedies on Ground One: _____

_____

_____

| **GROUND TWO:** | Ineffective Assistance of Counsel |

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Counsel failed to object or move for a mistrial when the State attacked Petitioner's character by describing

him as "a real live Dr. Jekyll and Mr. Hyde."

_____

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Two, explain why: _____

_____

_____

(c)　　**Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?　　☐ Yes　　☑ No

(2) If you did <u>not</u> raise this issue in your direct appeal, explain why: Trial counsel handled the appeal and

could not raise ineffective assistance of counsel on himself.

(d)　　**Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

　　☑ Yes　　☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:　　Petition for Writ of Habeas Corpus

Name and location of the court where the motion or petition was filed: Superior Court of Wheeler County, Georgia

_____

Docket or case number (if you know): 19CV093

AO 241 (Rev. 09/17)

Date of the court's decision:   5/17/2022

Result (attach a copy of the court's opinion or order, if available):   Denied

(3) Did you receive a hearing on your motion or petition?          ☑ Yes      ☐ No

(4) Did you appeal from the denial of your motion or petition?    ☑ Yes      ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?    ☑ Yes      ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: Supreme Court of Georgia

Docket or case number (if you know):   S22H1132

Date of the court's decision:   2/21/2023

Result (attach a copy of the court's opinion or order, if available):   Application Denied

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)   **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Two :

**GROUND THREE:**   Ineffective Assistance of Counsel

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Counsel failed to object when the State elicited from the treating physician speculative testimony regarding what

Petitioner was thinking.

AO 241 (Rev. 09/17)

(b) If you did not exhaust your state remedies on Ground Three, explain why: _____

_____

_____

(c)    **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ☐ Yes    ☑ No

(2) If you did not raise this issue in your direct appeal, explain why: Trial counsel handled the appeal and could not raise ineffective assistance of counsel on himself.

(d)    **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑ Yes    ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:    Petition for Writ of Habeas Corpus

Name and location of the court where the motion or petition was filed: Superior Court of Wheeler County, Georgia

Docket or case number (if you know):    19CV093

Date of the court's decision:    5/17/2022

Result (attach a copy of the court's opinion or order, if available):    Denied

(3) Did you receive a hearing on your motion or petition?    ☑ Yes    ☐ No

(4) Did you appeal from the denial of your motion or petition?    ☑ Yes    ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?    ☑ Yes    ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:    Supreme Court of Georgia

Docket or case number (if you know):    S22H1132

Date of the court's decision:    2/21/2023

Result (attach a copy of the court's opinion or order, if available):    Application Denied

AO 241 (Rev. 09/17)

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____

_____

_____

(e)     **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Three: _____

_____

_____

**GROUND FOUR:** Ineffective Assistance of Counsel

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Counsel failed to move for a mistrial, object, or seek a curative instruction when the State argued that the jury could

convict if they believed in his guilt below 75%.

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Four, explain why: _____

_____

_____

_____

(c)     **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?     ❏ Yes     ☑ No

(2) If you did not raise this issue in your direct appeal, explain why:   Trial counsel handled the appeal and

could not raise ineffective assistance of counsel on himself.

_____

(d)     **Post-Conviction Proceedings**:

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑ Yes     ❏ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:   Petition for Writ of Habeas Corpus

AO 241 (Rev. 09/17)

Name and location of the court where the motion or petition was filed: Superior Court of Wheeler County, Georgia

Docket or case number (if you know): 19CV093

Date of the court's decision: 5/17/2022

Result (attach a copy of the court's opinion or order, if available): Denied

(3) Did you receive a hearing on your motion or petition? ☑ Yes ☐ No

(4) Did you appeal from the denial of your motion or petition? ☑ Yes ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal? ☑ Yes ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: Supreme Court of Georgia

Docket or case number (if you know): S22H1132

Date of the court's decision: 2/21/2023

Result (attach a copy of the court's opinion or order, if available): Application Denied

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)     **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Four:

AO 241 (Rev. 09/17)

13.    Please answer these additional questions about the petition you are filing:

(a)    Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction?    ☑ Yes    ☐    No

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them: _____

_____

_____

_____

(b)    Is there any ground in this petition that has not been presented in some state or federal court?  If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

_____

_____

_____

14.    Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition?         ☐    Yes    ☑ No

If "Yes," state the name and  location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed.  Attach a copy of any court opinion or order, if available. _____

_____

_____

_____

_____

_____

_____

15.    Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging?         ☐    Yes    ☑ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised. _____

_____

_____

_____

_____

AO 241 (Rev. 09/17)

16.     Give the name and address, if you know, of each attorney who represented you in the following stages of the

judgment you are challenging:

(a) At preliminary hearing: Thomas M. Martin (deceased)


(b) At arraignment and plea: Thomas M. Martin (deceased)


(c) At trial:   Thomas M. Martin (deceased)


(d) At sentencing:   Thomas M. Martin (deceased)


(e) On appeal:   Thomas M. Martin (deceased)


(f) In any post-conviction proceeding:   Kenneth Glenn, 207 St. Andrews Ct., McDonough, GA 30253;

J. Scott Key, 80 Macon St., McDonough, GA 30253

(g) On appeal from any ruling against you in a post-conviction proceeding: Kenneth Glenn, 207 St. Andrews Ct.,

McDonough, GA 30253; J. Scott Key, 80 Macon St., McDonough, GA 30253


17.     Do you have any future sentence to serve after you complete the sentence for the judgment that you are

challenging?          ☐  Yes      ☑  No

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:


(b) Give the date the other sentence was imposed:

(c) Give the length of the other sentence:

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the

future?          ☐  Yes      ☐  No

18.     TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain

why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*

The conviction in this case was affirmed on 10/9/2018. The case was remitted on 11/16/2018.

State Habeas Corpus was filed on 9/30/2019, which was denied on 5/17/2022. A timely Certificate of

Probable Cause to Appeal was filed on 6/15/2022 and denied on 2/21/2023. The state habeas action

tolled the one-year statute of limitations, and this case is timely filed.

See Dolphy v. Warden, Cent. State Prison, 823 F.3d 1342 (11th Cir. 2016).

AO 241 (Rev. 09/17)

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in part that:

(1)    A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody  pursuant to the judgment of a State court.  The limitation period shall run from the latest of -

(A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

(C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

AO 241 (Rev. 09/17)

(2)    The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief:   That Habeas Corpus relief be granted.

or any other relief to which petitioner may be entitled.

/s/J. Scott Key

Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for

Writ of Habeas Corpus was placed in the prison mailing system on _____ (month, date, year).

Executed (signed) on _____ (date).

Signature of Petitioner

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition.

Counsel for Mr. McWilliams is signing this petition on Petitioner's behalf. Petitioner is incarcerated

with limited access and this petition is time sensitive.

Print    Save As...    Reset

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| Richard Wayne McWilliams,<br>GDC#0000070166,<br>   Petitioner,<br><br>v.<br><br>Douglas Williams, Warden,<br>   Respondent. | Docket or Case No. |

**Attachment to Petition for Writ of Habeas Corpus**

Richard Wayne McWilliams brings his Petition for Writ of Habeas Corpus under 28

U.S.C. §2254. He incorporates, by reference, all the grounds set out in his habeas petition and

brings the following additional grounds in this attachment to said petition.

5.

**GROUND FIVE:** Ineffective Assistance of Counsel.

**(a) Supporting facts:**

Counsel failed to object or move for mistrial when the State argued that God was assisting the

State in efforts to prosecute Petitioner, by assisting the State in securing a 404(b) witness.

**(b) If you did not exhaust your state remedies on Ground Five, explain why:** _____

_____

_____

**(c) Direct Appeal of Ground Five:**

 (1) If you appealed from the judgment of conviction, did you raise this issue?

   Yes ✔ No

 (2) If you did not raise this issue in your direct appeal, explain why: Trial counsel handled

   the appeal and could not raise ineffective assistance of counsel on himself.

1

**(d) Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑ Yes    No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: <u>Petition for Writ of Habeas Corpus</u>

Name and location of the court where the motion or petition was filed: <u>Superior Court of Wheeler County, Georgia</u>

Docket or case number (if you know): <u>19CV093</u>

Date of the court's decision: <u>5/17/2022</u>

Result (attach a copy of the court's opinion or order, if available): <u>Denied</u>

(3) Did you receive a hearing on your motion or petition?    ☑ Yes    No

(4) Did you appeal from the denial of your motion or petition?    ☑ Yes    No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

☑ Yes    No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: <u>Supreme Court of Georgia</u>

Docket or case number (if you know): <u>S22H1132</u>

Date of the court's decision: <u>2/21/2023</u>

Result (attach a copy of the court's opinion or order, if available): <u>Application Denied</u>

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: _____

**(e) Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Five: _____
_____

6.

**GROUND SIX:** Ineffective Assistance of Counsel.

**(a) Supporting facts:**

Counsel failed to ask any juror a question during voir dire.

**(b) If you did not exhaust your state remedies on Ground Six, explain why:** _____

_____

_____

**(c)  Direct Appeal of Ground Six:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☑ No

(2) If you did not raise this issue in your direct appeal, explain why: Trial counsel handled

the appeal and could not raise ineffective assistance of counsel on himself.

**(d)  Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑ Yes    No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: Petition for Writ of Habeas Corpus

Name and location of the court where the motion or petition was filed: Superior Court of

Wheeler County, Georgia

Docket or case number (if you know): 19CV093

Date of the court's decision: 5/17/2022

Result (attach a copy of the court's opinion or order, if available): Denied

(3) Did you receive a hearing on your motion or petition?   ☑ Yes    No

(4) Did you appeal from the denial of your motion or petition?   ☑  Yes    No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

☑ Yes    No

(6) If your answer to Question (d)(4) is "Yes," state:

    Name and location of the court where the appeal was filed: <u>Supreme Court of Georgia</u>

    Docket or case number (if you know): <u>S22H1132</u>

    Date of the court's decision: <u>2/21/2023</u>

    Result (attach a copy of the court's opinion or order, if available): <u>Application Denied</u>

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: _____

**(e) Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Six: _____
_____

WHEREFORE, Richard McWilliams moves that habeas corpus be granted.

                                                 Respectfully Submitted,

                                               <u>/s/J. Scott Key</u>
                                                 J. Scott Key
                                       Attorney for Petitioner
                                       Ga. Bar No. 416839

Miller & Key, P.A.
80 Macon Street
McDonough, GA 30253
(678) 610-6624
scott@scottkeylaw.com

**EFILED IN OFFICE**
CLERK OF SUPERIOR COURT
WHEELER COUNTY, GEORGIA
**19CV093-W**
SARAH F. WALL
MAY 17, 2022 03:57 PM

*Carol W. Bragg*
Carol W. Bragg, Clerk
Wheeler County, Georgia

IN THE SUPERIOR COURT OF WHEELER COUNTY
STATE OF GEORGIA

RICHARD M. MCWILLIAMS,           )
                                 )
        Petitioner,              )
        GDC No. 0001264772,      )
                                 )
                                 ) Habeas Corpus
v.                               ) File No. 19CV093
                                 )
DOUGLAS WILLIAMS, Warden, and    )
TIMOTHY WARD, Commissioner,      )
                                 )
        Respondent.              )

## FINAL ORDER

Petitioner, RICHARD MCWILLIAMS, filed this Application for Writ of Habeas Corpus on September 30, 2019 challenging the validity of his June 3, 2015 Fulton County conviction. An evidentiary hearing occurred on May 18, 2021. After reviewing the Petition, the entire record of the case, and applicable law, the Court makes the following findings:

## PROCEDURAL HISTORY

A Fulton County grand jury re-indicted Petitioner on May 13, 2014, on charges of murder, two counts of felony murder, aggravated sexual battery, false imprisonment, and aggravated assault. (HT 49). Following a jury trial, Petitioner was convicted of involuntary manslaughter as a lesser-included offense of murder, two counts of felony murder, aggravated sexual battery, false imprisonment, and aggravated assault and received a sentence of life imprisonment plus twenty-five (25) years to serve. (HT 425). Trial counsel continued to represent Petitioner on appeal. On June 16, 2015, Petitioner filed a Motion for New Trial based on the general grounds. (HT 434). Subsequently, Petitioner filed an Amended Motion for New Trial based on the following grounds:

1. The trial court erred in denying the Defendant's Motion for Directed Verdict on the charge of false imprisonment in Count V of the indictment;

2. The trial court erred in denying Defendant's Motion for Directed Verdict on the charge of aggravated sexual battery listed in Count VI of the indictment;

3. The trial court erred in allowing into evidence over timely objection hearsay testimony regarding a posting on Facebook allegedly made by the deceased;

4. The trial court erred in allowing into evidence over timely objection evidence of other acts allegedly committed by the Defendant pursuant to O.C.G.A. § 24-4-404(b); and,

5. The verdict by the jury finding the Defendant not guilty on Count I of malice murder, but guilty of the lesser included offense of involuntary manslaughter and guilty of felony murder on Counts II and III are mutually exclusive and therefore the jury's entire verdict should be set aside and the Defendant granted a new trial.

The trial court entered an Order Denying Motion for New Trial on November 29, 2017. (HT 441-444). On appeal, Petitioner raised the following issues:

1. The trial court erred in denying Mr. McWilliams Motion for Directed Verdict on the charge of false imprisonment alleged in Count 5 of the indictment based upon insufficient evidence;

2. The trial court erred in denying Mr. McWilliams Motion for Directed Verdict on the charge of aggravated sexual battery alleged in Count 4 of the indictment based upon insufficient evidence;

3. The trial court erred in denying Mr. McWilliams Motion for Directed Verdict on the charge of aggravated assault alleged in Count 6 of the indictment based upon insufficient evidence;

4. The trial court erred in allowing into evidence over timely objection evidence of other acts allegedly committed by Mr. McWilliams pursuant to O.C.G.A. § 24-4-404(b); and,

5. The verdict by the jury finding Mr. McWilliams not guilty in Count 1 of malice murder, but guilty of the lesser included offense of involuntary manslaughter with the underlying

offense being battery, and guilty of felony murder in Counts 2 and 3 are mutually
exclusive and therefore the entire jury's verdict should be set aside and Mr. McWilliams
granted a new trial.

(HT 1880-1881). On October 9, 2018, the Supreme Court of Georgia affirmed Petitioner's
conviction. McWilliams v. The State, 304 Ga. 502.

 In his Application for Writ of Habeas Corpus, Petitioner raised the following grounds for
relief:

1. Petitioner received ineffective assistance of counsel when counsel failed to appeal the
   trial court's erroneous ruling that hearsay was admissible under the necessity exception to
   the hearsay rule. Counsel also failed to preserve the hearsay issue properly for appeal.
   During a pretrial motions hearing, trial counsel failed to maintain a proper objection to
   the admissibility of evidence by stopping the trial court from making an individualized
   finding regarding which statements were admissible at trial. Counsel also allowed the
   trial court to conflate a finding that the evidence was relevant as prior difficulties between
   the parties with a determination that the specific form of the evidence was inadmissible
   hearsay;

2. Petitioner received ineffective assistance of counsel when counsel failed to object or
   move for a mistrial when the trial court made a comment on the evidence that "this is a
   serious case. As are most of the cases that come before this court in various categories
   that we have;"

3. Petitioner received ineffective assistance of counsel when counsel failed to object or
   move for a mistrial when Petitioner's bond was revoked after mentioning that he was
   originally free to move about the courthouse. He said "late in the afternoon, you may see
   the attorneys and Mr. McWilliams out in the hallway, coming and going, riding the
   elevator." However, later in the trial, the court revoked his bond, which rendered him
   absent from the public portions of the courthouse. The trial court specifically mentioned

that he was free to move about before incarcerating him, allowing the jury to infer that his bond had been revoked;

4.  Petitioner received ineffective assistance of counsel when counsel failed to object or move for a mistrial when the judge gave an instruction in violation of the golden rule;

5.  Petitioner received ineffective assistance of counsel when counsel failed to object or move for a mistrial when the State attacked Petitioner's character by describing him as "a real live Dr. Jekyll and Mr. Hyde;"

6.  Petitioner received ineffective assistance of counsel when counsel failed to object or move for a mistrial when the State argued in opening that the physician who treated the alleged victim said that "the last time he saw this amount of head trauma to a patient, in his words, was when someone was thrown from a vehicle going over 50 miles per hour [. . .]" The particulars of the trauma to another patient are irrelevant to causation in this case, and the visual of a car wreck was unduly prejudicial;

7.  Petitioner received ineffective assistance of counsel when counsel failed to object or move for a mistrial when the State elicited bolstering evidence from medical personnel regarding the alleged victim's daughter's belief regarding the ultimate issue in the case;

8.  Petitioner received ineffective assistance of counsel when counsel failed to object or move for a mistrial when the State elicited that next of kin ordered that Petitioner no longer be allowed to visit the alleged victim at the hospital;

9.  Petitioner received ineffective assistance of counsel when counsel failed to object or move for a mistrial when the State elicited from the treating physician speculative testimony regarding what Petitioner was thinking. Specifically, the State asked "when he asked you that question did it seem to you that he was asking you that out of concern for the patient or for the story;"

10. Petitioner received ineffective assistance of counsel when counsel failed to object or move for a mistrial when the State attacked Petitioner's character in his closing argument by referencing him as "Dr. Jekyll;"

11. Petitioner received ineffective assistance of counsel when counsel failed to object or move for a mistrial, object, or seek a curative instruction when the State argued that the jury could convict if they believed in his guilt below 75%;

12. Petitioner received ineffective assistance of counsel when counsel failed to object or move for a mistrial when the State argued future dangerousness in his closing statement. "But, ladies and gentlemen, the cycle is going to be broken today. Not for everybody, but it is here." The State then referenced the 404(b) witnesses, implying that a conviction was necessary to protect them; and,

13. Petitioner received ineffective assistance of counsel when counsel failed to object or move for a mistrial when the State argued that God was assisting the State in its efforts to prosecute Petitioner, by assisting the State in securing a 404(b) witness. "And maybe it was divine intervention, however the stars aligned, but the State was able to locate her, talk to her, subpoena her, and she came and told you about it."

On May 14, 2021, Petitioner filed an Amended Petition for Writ of Habeas Corpus which added the following gorund:

14. Petitioner received ineffective assistance of counsel when counsel failed to ask any juror a single question during void dire. Counsel's decision not to question any juror during *voir dire* was ineffective assistance of counsel.

In the Amended Petition, Petitioner withdrew Grounds two (2), three (3), four (4), six (6), seven (7), eight (8), ten (10), and twelve (12) while preserving the remaining grounds. On May 17, 2021, Petitioner filed a Second Amended Petition for Writ of Habeas Corpus addressing Ground One as follows:

1. Petitioner received ineffective assistance of counsel when counsel failed to raise on appeal or preserve for appellate review the admissibility of certain 404(b) or other extrinsic evidence and failed to preserve for appellate review inadmissible hearsay that

was admitted in the form of 404(b) or other extrinsic evidence. In a pretrial hearing regarding the admissibility of this category of evidence, the trial court reserved ruling. Trial counsel argued that the evidence was hearsay. The trial court ultimately ruled that the evidence was "too remote to the date in which it was written." However, the court then reserved ruling on the evidence without ever ruling on the hearsay objection. During trial, trial counsel was consumed about whether the trial court had already introduced the 404(b) and other extrinsic evidence – he believed they had already been admitted. The trial court corrected him but said he was going to admit all such evidence. Trial counsel did not interpose a hearsay objection. The trial court then admitted a Facebook post where the decedent had claimed that she was being abused by Petitioner without further objection. The trial court admitted purported journal entries from the decedent without objection. And the trial court admitted evidence regarding claims that he engaged in consensual anal sex with a separate girlfriend, where such a consensual act was not admissible as extrinsic evidence and where such evidence was unduly prejudicial compared to any slight probative value as per rule 403. Trial counsel did not interpose an objection at the time the evidence was offered and did not seek a ruling regarding the admissibility of such evidence in a pretrial ruling. Even if the Court finds that the evidence was preserved for appeal, trial/appellate counsel was ineffective in not raising any of these issues on appeal.

An evidentiary hearing was held on May 18, 2021 in which Tom Withers testified as an expert witness and documentary evidence was admitted. Petitioner was represented at trial and on appeal by attorney Michael Martin who is deceased.

## BACKGROUND

The Supreme Court of Georgia summarized the evidence at trial as follows:

The evidence construed in a light most favorable to upholding the jury's verdicts shows as follows. Appellant and the victim dated for approximately five years leading up to her

death. The victim confided in her daughter, as well as in a close friend, about abuse she suffered at the hands of appellant when he was drunk. At trial, both the daughter and the friend testified that Ms. Baxter told them that appellant would become verbally, physically, and sexually abusive toward her when he consumed alcohol. They testified that Ms. Baxter confided that when appellant drank, he would sometimes roughly force his fingers up Ms. Baxter's anus despite her begging him not to do so. Ms. Baxter kept journals and photographs documenting some of the abuse she suffered at the hands of appellant. On New Year's Day 2012, for example, appellant, who was drunk, punched Ms. Baxter in the face, breaking her nose, and also choked her. Ms. Baxter took photographs of her injuries and documented the event by posting on Facebook that same day. The photographs and a screenshot of the Facebook post were presented to the jury. In addition, Ms. Baxter had written a letter to appellant breaking up with him, complaining about, among other things, his drinking and his placing his finger "up [her] butt." Ms. Baxter had sent a blind copy of this letter to her close friend, who testified as to its authenticity, and the letter was published to the jury. A domestic violence expert testified that Ms. Baxter and appellant were in a cycle of abuse which included a pattern of verbal abuse, physical abuse, separation and reconciliation.

In October 2012, Ms. Baxter and appellant had just reconciled and decided to go on a trip to downtown Atlanta. On October 13, 2012, the two checked into the Westin Peachtree Plaza Hotel where they were the only hotel guests on the 64th floor. After checking in, the two went to two nearby restaurants where they ate and consumed alcohol. The victim took several photos of her activities, posting them to social media so that her daughter and friend knew where she was. The last photo and posting she made was at 8:15 p.m. inside the hotel room.

The next day, a hotel housekeeping supervisor testified she called hotel security upon seeing a trail of blood and vomit leading from the guest elevators to the couple's room. Isaac Byrd, a hotel security officer, testified that when he arrived at the room, appellant told him Ms. Baxter had hit her face against the elevator door. Byrd stated that when appellant did not ask for help or assistance for Ms. Baxter, Byrd asked to see her. When Byrd and a few other hotel personnel entered the room, they noticed packed bags and a woman's purse on the dresser. Byrd testified that the bed was covered in blood and vomit. Byrd and other hotel personnel testified that Ms. Baxter was sitting motionless on the floor, propped up against the bed. She had vomit in her hair and blood and vomit on her face, but her clothes were clean.[2] Ms. Baxter made some mumbling noises, but was unresponsive to any questions. Byrd testified he made the decision to have the hotel dispatcher call 911.[3] An ambulance took Ms. Baxter to Atlanta Medical Center. The hotel had the room cleaned before police became involved in the case on October 15, meaning there was no crime scene for the police to investigate. There was also no hotel video footage of the incident or witnesses to the incident other than appellant.

Several medical personnel testified about Ms. Baxter's condition while she was a patient in the intensive care unit from October 14-21, 2012. Nursing personnel testified the

victim had bruising to her anus and a tear in her rectum. The nursing staff took photographs of these injuries and turned them over to police. In addition to suffering from trauma to her head and the injuries to her anus and rectum, a nurse testified Ms. Baxter had the imprint of a hand on her arm and a bruise on the left side of her neck. The neurosurgeon who treated Ms. Baxter testified that Ms. Baxter had lacerations and abrasions to her face and body; a "ligamental" strain "in" her neck; bleeding on both sides of her brain in the frontal lobe area; and trauma to the deep center of her brain which caused lesions. The neurosurgeon testified the injuries to Ms. Baxter's head caused increased "intracranial" pressure resulting in more damage to her brain, despite efforts to control the pressure. Eventually, Ms. Baxter's family members decided to withdraw her from life support and she died on October 21.

Appellant did not testify at trial; however, he gave varying pretrial statements to different people as to how Ms. Baxter was injured, including two recorded statements to police that were played for the jury. For example, appellant told a hotel security officer that Ms. Baxter's injuries were from her face hitting the elevator door; but he also told the hotel's assistant director of housekeeping that the victim fell and hit her head on the trash receptacle near the elevator. A nurse testified that appellant said the victim was injured when elevator doors closed on her head. Appellant told police that he and Ms. Baxter were in their room when she decided to go back out. Because he did not want her to leave, he said he followed her down the hall and grabbed her by the arm. Appellant told police he and the victim were standing about four feet away from the guest elevators "fussing" when one of the elevators dinged. Appellant stated Ms. Baxter pulled away from him and ran into the nearest elevator door which was not the one that had opened. Having hit her head, appellant said Ms. Baxter started vomiting and he took her back to the room for the night.

The medical examiner performed the autopsy on Ms. Baxter on October 22, 2012. She testified that the cause of death was blunt force trauma to the head and the posterior of the neck and that the manner of death was homicide. The medical examiner testified that the trauma to the head was made by a "severe" force, causing bleeding on Ms. Baxter's brain. Both the medical examiner and the treating neurosurgeon testified that the head injuries Ms. Baxter sustained were inconsistent with her running into an elevator from a distance of four feet. The neurosurgeon testified that Ms. Baxter's injuries were more akin to injuries caused by being in a car accident.

The State introduced extrinsic acts evidence pursuant to Rule 404 (b)4 and Rule 4135 concerning appellant's relationships with two other women—one whom he dated before he dated the victim and one whom he dated after the victim's death and through his trial. Both of the women testified that appellant was verbally and physically abusive to them when he drank. Both women recounted instances where appellant inflicted blows to their heads. The women also testified that appellant was violent when they tried to leave his vicinity because of his drunkenness and abusive behavior. In addition, one of the women testified that appellant had touched her anus against her will.

McWilliams v. The State, 304 Ga. 502 (2018).

## **GROUND ONE**

In Ground One, Petitioner alleges that he received ineffective assistance of counsel when counsel failed to raise on appeal or preserve for appellate review the admissibility of certain 404(b) or other extrinsic evidence and failed to preserve for appellate review inadmissible hearsay that was admitted in the form of 404(b) or other extrinsic evidence. In a pretrial hearing regarding the admissibility of this category of evidence, the trial court reserved ruling. Trial counsel argued that the evidence was hearsay. The trial court ultimately ruled that the evidence was "too remote to the date in which it was written." However, the court then reserved ruling on the evidence without ever ruling on the hearsay objection. During trial, trial counsel was confused about whether the trial court had already introduced the 404(b) and other extrinsic evidence – he believed they had already been admitted. The trial court corrected him but said he was going to admit all such evidence. Trial counsel did not interpose a hearsay objection. The trial court then admitted a Facebook post where the decedent had claimed that she was being abused by Petitioner without further objection. The trial court admitted purported journal entries from the decedent without objection. And the trial court admitted evidence regarding claims that he engaged in consensual anal sex with a separate girlfriend, where such a consensual act was not admissible as extrinsic evidence and where such evidence was unduly prejudicial compared to any slight probative value as per Rule 403. Trial counsel did not interpose an objection at the time the evidence was offered and did not seek a ruling regarding the admissibility of such evidence in a pretrial ruling. Even if the Court finds that the evidence was preserved for appeal, trial/appellate counsel was ineffective in not raising any of these issues on appeal.

The test for establishing ineffective assistance of counsel was set forth in Strickland v. Washington, 466 U.S. 668 (1984). Under this two-prong test, Petitioner must show (1) the attorney's performance was deficient, meaning that counsel made errors so serious that he was not functioning as "counsel" guaranteed by the Sixth Amendment and (2) that this deficient

performance prejudiced the defense, that is, counsel's errors were so serious as to deprive Petitioner of a fair trial with a reliable result. <u>Strickland</u>. "[A]ny ineffective assistance inquiry [must begin] with a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Humphrey v. Nance</u>, 293 Ga. 189 (2013) *quoting* <u>Waters v. Thomas</u>, 46 F.3d 1506 (11th Cir. 1995).

Petitioner was represented at trial and on appeal by attorney Michael Martin. Counsel raised on several occasions objections to the testimony of Petitioner's girlfriends, the journal entries, and Facebook posts. These objections were made for a variety of grounds including Rule 404(b).[1]

At this preliminary motion hearing, the trial court heard arguments regarding various 404(b) evidence. Carla Mulkey testified at the hearing as a prior girlfriend of Petitioner and the cycle of violence, drinking, break-ups and apologies in their relationship. (HT 487-499). References were also made to additional witnesses who would testify to their violent relationships with Petitioner. The State provided notice of intent to introduce hearsay evidence pursuant to O.C.G.A. § 24-8-807 in the form of a journal. (HT 517-518). The court reviewed these journal entries at a pre-trial hearing. (HT 519-520). Defense counsel objected to the admission of excerpts from the journal in lieu of the entire journal pursuant to the rule of completeness. (HT 520-521). The State agreed to admit the entirety of the journal into evidence but defense counsel argued that portions of the journal were inadmissible. (HT 521-523). Additionally, the journal did not arrive in the State's possession in its original form, but rather was comprised of photocopied pages provided by the victim's daughter. (HT 525-526). The State explained that the victim maintained loose pages in a manila folder which the State obtained and copied as it was found. (HT 526). The trial judge announced that he was not ready to rule upon the admissibility of the journal which numbered around 400 pages, and recessed the hearing. (HT 530). The prosecutor also brought the Facebook posts to the judge's attention for review before the next hearing. (HT 532).

---

[1] Throughout the arguments on the admission of this evidence, the attorneys argue hearsay, character, completeness, and a variety of other issues simultaneously.

The trial court reconvened its hearing on January 23, 2015. (HT 535). The State announced that it was attempting to introduce the journal and Facebook posts under both the necessity hearsay exception and O.C.G.A. § 24-8-803(3) as a statement of the then-existing relationship which the State contended was abusive. (HT 538-539). Defense counsel argued that the journal entries were too remote in time to the incident. (HT 540). The trial judge agreed and did not allow the evidence identified as 1-A as too remote. (HT 540-541). The State then moved to events identified as prior difficulties contained in the journal and Facebook posts. (HT 544). After reviewing Parker v. State, 296 Ga. 199 (2014), the judge stated that the case law indicated the majority of the statements would be admissible.[2] (HT 547, 550). While the defense argued that the statements were not actually prior difficulties and just statements of feelings, the prosecutor argued that they were representative of the ongoing domestic abuse. (HT 551-552). Ultimately, after listening to the arguments of counsel, the trial judge reversed his decision on the evidence identified as 1-A as well as the statement identified as B, as prior difficulties between the parties. (HT 553). The trial court then began to review each statement and ruled on its admissibility. (HT 554). However, defense counsel interrupted and explained that with his objections noted for the record, the court need to proceed through each individual statement because the entirety of the journal would be admitted under the rule of completeness. (HT 554-555). Therefore, the trial court did rule that the journal was admissible under the necessity exception as evidence of prior difficulties. The only issue discussed at the hearing that the court withheld ruling on was the testimony of prior bad acts involving sexual abuse until after a foundation had been laid in the State's case-in-chief. (HT 588-589).

Prior to opening statements, the prosecutor brought up the pending 404(b) motion involving the testimony of Renee Hawkins-Gantt. (HT 758, 761). The prosecutor clarified with the judge that he had reserved ruling regarding the testimony of Carla Mulkey which was discussed *supra*. (HT 761). Defense counsel requested that the court withhold ruling until the State introduced some evidence that an aggravated sexual battery had occurred. (HT 762). To perfect the record, Renee Hawkins-Gantt testified outside the presence of the jury. Carla Mulkey had previously testified at the preliminary hearing. After a review of the case law and following

---

[2] The cited case deals in part with the admission of similar transaction evidence in domestic violence cases.

a proffer of the State concerning the evidence of sexual violence, the trial court allowed the testimony of the two witnesses. (HT 813-814).

The first witness introduced at trial was Angela Kay Matthews, the victim's daughter. (HT 856). Following her mother's hospitalization, Ms. Matthews retrieved her mother's computer and accessed her e-mails to Petitioner. (HT 881-882). The State introduced the e-mails into evidence. (HT 882). Ms. Matthews also testified that her mother kept a journal daily by writing on loose paper which she found in her mother's house. (HT 889, 893-895). The State introduced the pages into evidence and defense counsel renewed his objection. (HT 895). The court noted the objection and introduced the documents into evidence. As indicated by Petitioner, the trial court initially ruled that the journal entries would not be admissible as they were too remote in time to the incident. However, upon reviewing the case law provided by the prosecutor, the trial court reversed its decision and admitted the statements in the journal over objection. Defense counsel maintained a general objection to the admission of the journal but preferred the entirety of the journal be admitted rather than the particularly damaging excerpts selected by the prosecutor.

Colette Wayda testified as the victim's friend who spoke with her regularly concerning her relationship with Petitioner. (HT 1175). Ms. Wayda testified concerning an incident between Petitioner and the victim in 2012 which the victim explained over a phone call in which Petitioner choked the victim and broke her nose. (HT 1182). This phone call between Ms. Wayda and the victim occurred approximately fifteen minutes after the incident. (HT 1182). The victim subsequently described the incident in a Facebook post. (HT 1182-1183). Defense counsel did not raise an objection at that time. However, in the trial court's Order Denying Motion for New Trial, the trial court found that the admission of the Facebook evidence over objection was proper and in the alternative that such error was harmless. (HT 441-444). The trial court did not find that counsel failed to timely object or preserve the issue. During the preliminary hearings, the issue of the Facebook post was discussed generally but within the context of the journal entry and the proffered testimony of the two witnesses. Based on a review of the transcript and the trial court's order, the trial court and defense counsel believed that an objection had been raised to the

404(b) category of evidence generally and defense counsel did not need to reiterate the objection at trial as he had preserved the issue through objections at several stages.

At trial of several instances of 404(b) evidence was introduced. Specifically, the testimony of two witnesses, the journal, emails, and Facebook posts. Both the trial attorneys and Petitioner have conflated these instances which this Court has attempted to parse through the lengthy review of the transcript provided *supra*. In his brief on appeal, defense counsel argued that the trial court erred in admitting over objection evidence of other acts pursuant to O.C.G.A. §§ 24-4-404(b), 24-4-413, and 24-4-403. (HT 1888-1891). As it relates to the testimony of Carla Mulkey and Renee Hawkins-Gant concerning their relationships with Petitioner and the instances of domestic violence, the issue has been addressed on appeal. The Supreme Court of Georgia found that the evidence was properly admitted. McWilliams v. State, 304 Ga. 502 (2018)(HT 1973-1991). Issues previously decided on the merits on direct appeal are barred as *res judicata*. Bruce v. Smith, 274 Ga. 432 (2001); Gaither v. Gibby, 267 Ga. 96 (1996). Petitioner has not identified a basis for this Court to revisit the issue. However, defense counsel did not include in his argument the journal entries, emails, or Facebook posts.

Regarding the other instances of 404(b) evidence in the form of journal entries, emails, and the Facebook posts, the Court finds that defense counsel did raise an objection prior to the trial and preserved the objection. Therefore, defense counsel was not ineffective for failing to object or preserve the issue for appeal. However, defense counsel only pursued the claim that the trial court erred in admitting 404(b) evidence through the testimony of Carla Mulkey and Renee Hawkins-Gant. To establish that an appellate attorney was ineffective, a habeas corpus petitioner must show that his appellate counsel's decision to not raise a particular issue was an unreasonable one which only an incompetent attorney would make, with the controlling principle being whether appellate counsel's decision "was a reasonable tactical move which any competent attorney in the same situation would have made." Shorter v. Waters, 275 Ga. 581 (2002).

The Court notes that defense counsel continued to represent Petitioner on appeal. Unfortunately, counsel has passed away and therefore his testimony regarding appellate strategy was not available. However, the transcript of the preliminary hearing, trial, motion for new trial

hearing, and appellant brief indicate that counsel was aware of this issue and elected to focus his appeal on the testimony of Petitioner's prior girlfriends rather than the journal pages or Facebook post. Focusing an appeal on the strongest issues constitutes a reasonable appellate strategy. As the recordings of the victim were prior difficulties between the parties, the review of that issue differs substantially from the analysis of the prior difficulties between the Petitioner and third parties. Here, Petitioner has focused on the O.C.G.A. 24-4-404(b) objection to the Facebook post and journal entries. These documents and the statements they contained were written by the victim at or near the time of the incidents and were properly admitted.

O.C.G.A. 24-4-404(b) provides that

(b) Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. The prosecution in a criminal proceeding shall provide reasonable notice to the defense in advance of trial, unless pretrial notice is excused by the court upon good cause shown, of the general nature of any such evidence it intends to introduce at trial. Notice shall not be required when the evidence of prior crimes, wrongs, or acts is offered to prove the circumstances immediately surrounding the charged crime, motive, or prior difficulties between the accused and the alleged victim.

The evidence at issue relates to the writings of the victim as it relates to Petitioner recorded at or near the time of the incidents at issue. A three-part test has been adopted to determine the admissibility of evidence under 404(b)[3]:

(1) the evidence must be relevant to an issue other than defendant's character; (2) the probative value must not be substantially outweighed by its undue prejudice; (3) the government must offer sufficient proof so that the jury could find that defendant committed the act.

United States v. Ellisor, 522 F.3d 1255 (11th Cir. 2008); see also, State v. Jones, 297 Ga. 156 (2015). Here, the evidence at issue detailed prior incidents between Petitioner and the victim

---

[3] The Court notes that Petitioner was tried shortly after the adoption of the new evidence code and the trial judge did not have the benefit of current body of caselaw to inform his rulings.

involving domestic violence. The evidence was therefore relevant to demonstrate motive; specifically, Petitioner's use of violence to control the victim. *See*, <u>Smart v. State</u>, 299 Ga. 414 (2016). The Court next finds that the probative value of the evidence outweighed its prejudicial impact as per Rule 403. The exclusion of evidence under Rule 403 has been described as an "extraordinary remedy which should be used sparingly." <u>Smart</u>, 299 Ga. at 418. While Petitioner, and defense counsel at trial, argued that the incidents were too remote in time to the allegations at trial, the evidence directly showed the nature of the relationship between Petitioner and the victim and the ongoing instances of domestic violence. *See*, <u>Flowers v. State</u>, 307 Ga. 618 (2020). Finally, the State offered sufficient proof to conclude that the events occurred as the victim's writings were done shortly after the events, were documented in her own handwriting or from her social media accounts, and were corroborated by additional witness testimony. Therefore, the trial court did not err in admitting the evidence over objection and trial counsel was not ineffective for failing to raise this issue on appeal.

Accordingly, Ground One provides no basis for relief.

## **GROUND TWO**

In Ground Two, Petitioner alleges that he received ineffective assistance of counsel when counsel failed to object or move for a mistrial when the trial court made a comment on the evidence that "this is a serious case. As are most of the cases that come before this court in various categories that we have."

In his Amended Petition for Writ of Habeas Corpus filed on May 14, 2021, Petitioner expressly withdrew this ground.

Accordingly, Ground Two provides no basis for relief.

## **GROUND THREE**

In Ground Three, Petitioner alleges that he received ineffective assistance of counsel when counsel failed to object or move for a mistrial when Petitioner's bond was revoked after

mentioning that he was originally free to move about the courthouse. He said "late in the afternoon, you may see the attorneys and Mr. McWilliams out in the hallway, coming and going, riding the elevator." However, later in the trial, the court revoked his bond, which rendered him absent from the public portions of the courthouse. The trial court specifically mentioned that he was free to move about before incarcerating him, allowing the jury to infer that his bond had been revoked.

In his Amended Petition for Writ of Habeas Corpus filed on May 14, 2021, Petitioner expressly withdrew this ground.

Accordingly, Ground Three provides no basis for relief.

## **GROUND FOUR**

In Ground Four, Petitioner alleges that he received ineffective assistance of counsel when counsel failed to object or move for a mistrial when the judge gave an instruction in violation of the golden rule.

In his Amended Petition for Writ of Habeas Corpus filed on May 14, 2021, Petitioner expressly withdrew this ground.

Accordingly, Ground Four provides no basis for relief.

## **GROUND FIVE**

In Ground Five, Petitioner alleges that he received ineffective assistance of counsel when counsel failed to object or move for a mistrial when the State attacked Petitioner's character by describing him as "a real live Dr. Jekyll and Mr. Hyde."

The test for establishing ineffective assistance of counsel was set forth in Strickland v. Washington, 466 U.S. 668 (1984). Under this two-prong test, Petitioner must show (1) the attorney's performance was deficient, meaning that counsel made errors so serious that he was not functioning as "counsel" guaranteed by the Sixth Amendment and (2) that this deficient performance prejudiced the defense, that is, counsel's errors were so serious as to deprive

Petitioner of a fair trial with a reliable result. Strickland. "[A]ny ineffective assistance inquiry [must begin] with a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Humphrey v. Nance, 293 Ga. 189 (2013) quoting Waters v. Thomas, 46 F.3d 1506 (11th Cir. 1995). "In opening statement the prosecutor is permitted to state what the evidence is expected to show and the trial court has broad discretion to control the content of the opening statements of both parties." Massey v. State, 263 Ga. 379 (1993)(citations omitted). Petitioner has not shown that the prosecution made any statement that went beyond the broad latitude afforded to attorneys during argument or that counsel was ineffective for not objecting. See, Odom v. State, 304 Ga. .App. 615 (2010).

      In his opening statements, the prosecutor argued the following:

> May it please the court, ladies and gentlemen of the jury, what we are here for today is to hold responsible this defendant for the murder of Kathleen Baxter. What you have in court here today is a real-life Dr. Jekyll and Mr. Hyde. You might have read that story as a child. But sometimes the truth is stranger than fiction, because this defendant, when he picks up his bottle, he changes to a totally different person, somebody who in one moment was charismatic, somebody who a woman wanted to be with, changes to a violent, abusive, vile person.[4]

Petitioner contends that referring to him as a "real-live Dr. Jekyll and Mr. Hyde" was improper.[5] Of course, "Dr. Jekyll and Mr. Hyde" refers to the character created by Robert Louis Stevenson in the novella the Strange Case of Dr. Jekyll and Mr. Hyde. In the story, Dr. Jekyll creates a serum intended to suppress the evil within him but instead transforms himself into Mr. Hyde, an embodiment of said evil. The character has been a part of the zeitgeist for so long that the phrase "Dr. Jekyll and Mr. Hyde" is commonly used to refer to anyone who displays a duality of character. In this instance, the "Dr. Jekyll and Mr. Hyde" statement refers more to the role of alcohol in the case than to Petitioner's character.[6] A major theme of the novella is that everyone has a "Hyde" inside them that can be released and that each person has the capacity for both

---

[4] In closing arguments, the prosecutor returned to this analogy. (HT 1399-1400).
[5] The Court notes that Petitioner does not contend the reference to him as a "violent, abusive, and vile person" was improper or outside the boundaries of opening statements. (HT 27-28).
[6] In his opening statement, defense counsel also discussed the role of alcohol in the incident arguing that Petitioner and the victim had drank in excess, were "severely intoxicated," and was accidentally injured. (HT 849).

good and evil. In opening statements, counsel is permitted to utilize figurative speech so long as it is based on the facts that will be introduced. *See*, Hooker v. State, 278 Ga. App. 382 (2006)(finding mistrial not required where prosecutor described the accused as a "dangerous man" in opening statements). The evidence and testimony introduced at trial showed that Petitioner dramatically changed when drinking. While counsel should reserve drawing inferences from the evidence until closing arguments, an untimely inference does not automatically demand a mistrial. The Court does not find that the statement was an improper reference to Petitioner's character. Rather, it was a figurative expression intended to explain the role of alcohol in the incident and was based on the evidence that would be presented at trial.

Defense counsel did not object to the statement. In the absence of testimony from counsel, the Court finds that this was the result of reasonable trial strategy and tactics. Attorneys are generally given broad latitude during opening and closing arguments and many lawyers are reluctant to interpose an objection during arguments. Had counsel objected, the jury's attention would have been drawn to the statement and the statement would not have resulted in the declaration of a mistrial. The Court finds that counsel was not ineffective for failing to object to the prosecutor's opening statement and that Petitioner has failed to demonstrate that the alleged ineffectiveness prejudiced his trial.

Accordingly, Ground Five provides no basis for relief.

## **GROUND SIX**

In Ground Six, Petitioner alleges that he received ineffective assistance of counsel when counsel failed to object or move for a mistrial when the State argued in opening that the physician who treated the alleged victim said that "the last time he saw this amount of head trauma to a patient, in his words, was when someone was thrown from a vehicle going over 50 miles per hour [. . .]" The particulars of the trauma to another patient are irrelevant to causation in this case, and the visual of a car wreck was unduly prejudicial.

In his Amended Petition for Writ of Habeas Corpus filed on May 14, 2021, Petitioner expressly withdrew this ground.

Accordingly, Ground Six provides no basis for relief.

## **GROUND SEVEN**

In Ground Seven, Petitioner alleges that he received ineffective assistance of counsel when counsel failed to object or move for a mistrial when the State elicited bolstering evidence from medical personnel regarding the alleged victim's daughter's belief regarding the ultimate issue in the case

In his Amended Petition for Writ of Habeas Corpus filed on May 14, 2021, Petitioner expressly withdrew this ground.

Accordingly, Ground Seven provides no basis for relief.

## **GROUND EIGHT**

In Ground Eight, Petitioner alleges that he received ineffective assistance of counsel when counsel failed to object or move for a mistrial when the State elicited that next of kin ordered that Petitioner no longer be allowed to visit the alleged victim at the hospital.

In his Amended Petition for Writ of Habeas Corpus filed on May 14, 2021, Petitioner expressly withdrew this ground.

Accordingly, Ground Eight provides no basis for relief.

## **GROUND NINE**

In Ground Nine, Petitioner alleges that he received ineffective assistance of counsel when counsel failed to object or move for a mistrial when the State elicited from the treating physician speculative testimony regarding what Petitioner was thinking. Specifically, the State asked "when he asked you that question did it seem to you that he was asking you that out of concern for the patient or for the story."

The test for establishing ineffective assistance of counsel was set forth in Strickland v. Washington, 466 U.S. 668 (1984). Under the Strickland two-prong test, Petitioner must show that (1) the attorney's performance was deficient, meaning that counsel made errors so serious that he was not functioning as "counsel" as guaranteed by the Sixth Amendment and (2) that this deficient performance prejudiced the defense thereby depriving Petitioner of a fair trial with a reliable result.

Gregory Cumberbatch testified as a doctor working for Atlanta Medical Center with a specialty in neurosurgery who treated the victim. (HT 1059-1060). In the course of his treatment of the victim, Dr. Cumberbatch received information concerning the injuries including the patient history that was given to explain the injuries. (HT 1070-1074). Dr. Cumberbatch testified that Petitioner told that she ran into an elevator. (HT 1073). This conversation occurred in the hospital parking lot a couple of days after the victim's admission. (HT 1074). According to Dr. Cumberbatch, Petitioner asked if he believed the injuries occurred because she ran into the elevator to which Dr. Cumberbatch replied that it was unlikely due to the amount of trauma. (HT 1075). Then the prosecutor asked "When he asked you that question did it seem to you that he was asking you that out of concern for the patient or for the story?" (HT 1075). Dr. Cumberbatch replied "For the story." (HT 1075).

Defense counsel did not object to the testimony. Rather, defense counsel cross-examined Dr. Cumberbatch concerning his disbelief in the elevator scenario and his lack of training in calculating the precise amount of force required to cause various injuries. (HT 1078-1080). The decision whether or not to object to particular testimony is a matter of trial strategy and tactics. "A defendant who contends a strategic decision constitutes deficient performance must show that no competent attorney, under similar circumstances, would have made it." Davis v. State, 306 Ga. 140 (2019). While defense counsel could have objected to the speculative nature of the question, based on the transcript of the trial, defense counsel chose to address his concerns through cross-examination. While an objection would have drawn attention to the question, cross-examination allowed defense counsel to frame the discussion with Dr. Cumberbatch and address his analysis of the injuries sustained by the victim in its totality. Under the circumstances, the Court does not find that defense counsel was ineffective for failing to object

to the question as it appears to have been a reasonable strategic decision. Alternatively, the question and answer at issue were a minor part of Dr. Cumberbatch's testimony and the trial itself. Therefore, Petitioner has failed to show that he was prejudiced by the alleged failure to object.

Accordingly, Ground Nine provides no basis for relief.

## GROUND TEN

In Ground Ten, Petitioner alleges that he received ineffective assistance of counsel when counsel failed to object or move for a mistrial when the State attacked Petitioner's character in his closing argument by referencing him as "Dr. Jekyll."

In his Amended Petition for Writ of Habeas Corpus filed on May 14, 2021, Petitioner expressly withdrew this ground.

Accordingly, Ground Ten provides no basis for relief.

## GROUND ELEVEN

In Ground Eleven, Petitioner alleges that he received ineffective assistance of counsel when counsel failed to object or move for a mistrial, object, or seek a curative instruction when the State argued that the jury could convict if they believed in his guilt below 75%.

The test for establishing ineffective assistance of counsel was set forth in Strickland v. Washington, 466 U.S. 668 (1984). Under the Strickland two-prong test, Petitioner must show that (1) the attorney's performance was deficient, meaning that counsel made errors so serious that he was not functioning as "counsel" as guaranteed by the Sixth Amendment and (2) that this deficient performance prejudiced the defense thereby depriving Petitioner of a fair trial with a reliable result.

In his closing arguments the prosecutor said the following:

Now, I want to talk to you, before we start to go into the facts, about a few more pieces of law. The Defense mentioned to you reasonable doub.t I want to put it in the proper

context. Sometimes a defense attorney will try to explain reasonable doubt like it's the highest mountain anyone could ever climb, no one can ever reach it. But that's not what reasonable doubt means. Reasonable doubt means – it is not a doubt that is required for us to prove guilty beyond all doubt. So if you're thinking, well, beyond all doubt, I'm not sure if he's guilty. But that's not the standard. It's beyond a reasonable doubt.

And when you think about it, this isn't a number. It's not like 75 percent. There's no mathematical certainty here. It is just what it says, a reasonable doubt. A doubt of a fair-minded juror honestly seeking the truth. And it's a doubt based on common sense and reason, for which reasons can be given. And not just a capricious reason, but a very common-sense reason where you can point to different things in your mind that would support that reason.

And do that same thing for when you're thinking about what proves that he's guilty on these charges. Reasons that you can point to why he's guilty within your common sense.

And it's not a vague or arbitrary doubt. So if you have a doubt, but it's just out in left field, that's not a reasonable doubt.

(HT 1414-1415). A review of the transcript of closing arguments reveals that Petitioner has taken the prosecutor's closing arguments out of context and misinterpreted them. Rather than arguing that the jury would be authorized to convict if they believed his guilt was "below 75 percent," the prosecutor argued that you could not put a number or a mathematical certainty on the concept of reasonable doubt. "And when you think about it, this isn't a number. It's *not* like 75 percent." (HT 1414, emphasis supplied). The prosecutor was explaining to the jury not to think of reasonable doubt in terms of numbers or percentages, and used 75 as an example of a numerical percentage.

While Petitioner is correct that the State must avoid misrepresenting the concept of reasonable doubt and should not attempt to assign percentages to the concept of reasonable doubt, the prosecutor in this case has avoided that error. *Compare*, Debelbot v. State, 308 Ga. 165 (2020)(finding trial counsel ineffective for failing to object to a closing argument in which the prosecutor said "You don't have to be fifty-one percent sure."). Had the prosecutor argued, as Petitioner represented, that the jury did not have to be 75 percent sure, then defense counsel should have objected. However, the prosecutor in the instant case presented an argument similar, but crucially different, to the argument present in Debelbot. While the prosecutor in Debelbot

was using the concept of mathematical percentages to reduce the State's burden, the prosecutor in the instant case rejected the concept of assigning percentages altogether and focused on the concept of reasonable doubt in the abstract. The law does not require the State to prove guilty to a mathematical certainty. *See*, <u>Pilcher v. State</u>, 214 Ga. App. 395 (1994). As the prosecutor did not assign a misleading percentage and defense counsel was ineffective for failing to interpose an objection.

Accordingly, Ground Eleven provides no basis for relief.

## **<u>GROUND TWELVE</u>**

In Ground Twelve, Petitioner alleges that he received ineffective assistance of counsel when counsel failed to object or move for a mistrial when the State argued future dangerousness in his closing statement. "But, ladies and gentlemen, the cycle is going to be broken today. Not for everybody, but it is here." The State then referenced the 404(b) witnesses, implying that a conviction was necessary to protect them.

In his Amended Petition for Writ of Habeas Corpus filed on May 14, 2021, Petitioner expressly withdrew this ground.

Accordingly, Ground Twelve provides no basis for relief.

## **<u>GROUND THIRTEEN</u>**

In Ground Thirteen, Petitioner alleges that he received ineffective assistance of counsel when counsel failed to object or move for a mistrial when the State argued that God was assisting the State in its efforts to prosecute Petitioner, by assisting the State in securing a 404(b) witness. "And maybe it was divine intervention, however the stars aligned, but the State was able to locate her, talk to her, subpoena her, and she came and told you about it."

The test for establishing ineffective assistance of counsel was set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). Under the <u>Strickland</u> two-prong test, Petitioner must show that (1) the attorney's performance was deficient, meaning that counsel made errors so serious

that he was not functioning as "counsel" as guaranteed by the Sixth Amendment and (2) that this deficient performance prejudiced the defense thereby depriving Petitioner of a fair trial with a reliable result.

In closing arguments, the prosecutor said:

> So we heard from Renee Gantt, who started dating him on – or in August of 2013. And what did she say? Same old story. Drinking heavily. Verbal abuse. Then came the physical abuse. She was hit, hit in the back of the head, trying to leave. On occasions, when she wanted to leave, she couldn't leave. Until she adapted and she figured out if I just let him pass out, if I just let him pass out, I can leave. She adapted. She also learned not to talk back to him. Don't argue back. Just let him have his way. Let him have his way.

> And luckily for her, she figured out that she might be killed. And maybe it was divine intervention, however the stars aligned, but the State was able to locate her. Talk to her, subpoena her, and she came and told you about it. She didn't want to be here. She didn't want to come. Guess what, she still loves him. She doesn't want anything bad to happen to him. That's what she told you. That's what she told the State. But she came because she had to tell the truth. I don't know how much more credible it can get.

(HT 1433). Petitioner contends the statement "And maybe it was divine intervention, however the stars aligned, but the State was able to locate her, talk to her, subpoena her, and she came and told you about it" was objectionable because the prosecutor aligned himself with God. However, the use of the phrase "divine intervention" or "the stars aligned" are not meant to be taken literally. While the phrases have their origins in religious and astrological circles, both have become commonly used secular phrases to describe unexpectedly positive events. The Court does not find that the prosecutor meant for his turn of phrase to be taken literally or that a reasonable jury would have placed a literal meaning on the idiom. The Court does not find that defense counsel was ineffective for failing to object to this portion of the closing argument. An objection would have called attention and emphasized the statement. Therefore, it was reasonable trial strategy and tactics not to object. Alternatively, the Court does not find that the failure to object prejudiced Petitioner in any way. As discussed, the phrase at issue is a commonly used secular idiom and an objection would not have warranted a mistrial.

Accordingly, Ground Thirteen provides no basis for relief.

# GROUND FOURTEEN

In Ground Fourteen, Petitioner alleges that he received ineffective assistance of counsel when counsel failed to ask any juror a single question during void dire. Counsel's decision not to question any juror during *voir dire* was ineffective assistance of counsel.

At trial, *voir dire* was conducted in three phases beginning with qualification questions from the judge, general questions by the attorneys, and followed-up with individual void dire in panels of six. (HT 608-609). After the prosecutor asked numerous general questions involving relationship with witnesses, defense counsel did not have any additional questions and *voir dire* proceeded to the individual phase. (HT 626). Throughout the individual *voir dire* questions, defense counsel asked many questions. (HT 631-744). Therefore, Petitioner and witness Tom Withers were mistaken in the assertion that trial counsel did not ask any juror a single question during *voir dire*. On the contrary, trial counsel asked many questions throughout individual *voir dire*.

Petitioner argues that trial counsel's failure to ask questions was particularly harmful in a case involving domestic violence. However, the prosecutor asked the jurors individually if they had encountered domestic violence situations and defense counsel followed up on these questions where appropriate. Petitioner also argues that *voir dire* provides counsel an opportunity to build rapport with the jurors. While counsel did not ask a question during general *voir dire*, the transcript reveals that the general *voir dire* questions were survey or polling questions of the group. The subsequent individual *voir dire* provided a far better opportunity for defense counsel to interact with the jurors. Based on a review of the transcript of the *voir dire* process, the Court finds that trial counsel asked numerous questions during *voir dire* and did not provide ineffective assistance.

Accordingly, Ground Fourteen provides no basis for relief.

## **CONCLUSION**

WHEREFORE, the instant Petition for Writ of Habeas Corpus is **DENIED**.

If Petitioner desires to appeal this Order, Petitioner must file a written application for certificate of probable cause to appeal with the Clerk of the Supreme Court of Georgia within thirty (30) days from the date of this Order. Petitioner must also file a Notice of Appeal with the Clerk of the Superior Court of Wheeler County within the same thirty (30) day period.

**The Clerk of the Superior Court of Wheeler County is hereby DIRECTED to mail a copy of this Order to Petitioner, Petitioner's Counsel of Record, Respondent, and Special Assistant Attorney General Ronald E. Daniels.**

SO **ORDERED**, this *17* day of _____*May*_____, 2022.

_____
Sarah F. Wall, Chief Judge
Wheeler County Superior Court



**SUPREME COURT OF GEORGIA**

Case No. S22H1132

February 21, 2023

The Honorable Supreme Court met pursuant to adjournment.

The following order was passed:

RICHARD WAYNE MCWILLIAMS v. DOUGLAS WILLIAMS, WARDEN et al.

Upon consideration of the application for certificate of probable cause to appeal the denial of habeas corpus, it is ordered that it be hereby denied.

*All the Justices concur, except Peterson, P. J., not participating.*

Trial Court Case No. 19CV093

**SUPREME COURT OF THE STATE OF GEORGIA**

Clerk's Office, Atlanta

I certify that the above is a true extract from the minutes of the Supreme Court of Georgia.

Witness my signature and the seal of said court hereto affixed the day and year last above written.

, Clerk