# EXHIBIT "1"

E-FILED IN OFFICE - NL
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA

**23-A-00956-9**
2/2/2023 12:30 PM
TIANA P. GARNER, CLERK

# IN THE SUPERIOR COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

MTC Consulting, LLC and

Michael Chamberlain

**CIVIL ACTION** 23-A-00956-9
**NUMBER** _____

_____

PLAINTIFF

VS.

Progressive Mountain Insurance Company

_____

_____

DEFENDANT

## SUMMONS

TO THE ABOVE NAME DEFENDANT:  Progressive Mountain Insurance Company

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney whose name and address is:

Robert D. Johnson
Johnson & Alday, LLC
219 Roswell St. NE
Marietta, GA 30060

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of sercice.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This ___2nd___ day of ___February___

Tiana P. Garner

Clerk of Superior Court

BY _____

Deputy Clerk

E-FILED IN OFFICE - NL
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
23-A-00956-9
2/2/2023 12:30 PM
TIANA P. GARNER, CLERK

IN THE SUPERIOR COURT OF GWINNETT COUNTY
STATE OF GEORGIA

|  |  |  |
|---|---|---|
| MTC CONSULTING, LLC and MICHAEL CHAMBERLAIN, | ) ) ) | CIVIL ACTION 23-A-00956-9 |
| Petitioners, | ) ) | FILE NO.:_____ |
| | ) | |
| v. | ) ) | |
| PROGRESSIVE MOUNTAIN INSURANCE COMPANY, | ) ) ) | |
| Respondent. | ) ) | |

## PETITION FOR DECLARATORY JUDGMENT

COME NOW, MTC CONSULTING, LLC and MICHAEL CHAMBERLAIN, and file this their Petition for Declaratory Judgment. Petitioners ask this Court to exercise its authority pursuant to O.C.G.A. § 9-4-2 and declare the rights and legal relations of the parties herein. In support thereof, Petitioners respectfully show the Court as follows:

### Parties, Jurisdiction and Venue

1.

Jurisdiction is proper in this Court pursuant to O.C.G.A. § 9-4-2.

2.

Venue is proper in this Court pursuant to O.C.G.A. § 14-2-510 as Respondent's registered agent for service lies in Gwinnett County.

3.

Petitioner MTC Consulting, LLC is incorporated in the State of Georgia with its principal place of business in Bishop, Georgia. MTC Consulting, LLC is authorized to conduct business in the State of Georgia.

1

4.

Petitioner Michael Chamberlain is the sole owner of MTC Consulting, LLC. He is a resident of the State of Georgia and has been at all times pertinent to this matter.

5.

Respondent Progressive Mountain Insurance Company is a foreign insurance company with its principal place of business in Mayfield Village, Ohio. Respondent may be served with Summons and Petition through its registered agent, CT Corporation System, located at 289 S. Culver Street, Lawrenceville, Gwinnett County, Georgia 30046.

**Preliminary Allegations**

**Subject Collision and Loss**

6.

Petitioner Michael Chamberlain is the father of Austin Chamberlain. Austin Chamberlain was a student at the University of Mississippi ("Ole Miss") on or about October 24, 2021. Austin Chamberlain was a resident-relative of Michael Chamberlain with a principal residence of 1060 Apalachee Trace, Bishop, Georgia 30621. This is the home address of Petitioner Michael Chamberlain and the principal address for MTC Consulting, LLC.

7.

On or about October 24, 2021, Austin Chamberlain was a passenger in a 2017 Ford F Series pick-up truck driven by Maxley Baxter. Upon information and belief, Baxter drove the vehicle while intoxicated.

8.

On or about October 24, 2021, Maxley Baxter drove north on Graysport Crossing Road in Grenada County, Mississippi. Baxter left the roadway on the east (right) side of the road and made

2

contact with two trees, causing Austin Chamberlain to be ejected from the vehicle. (See Police Report attached hereto as Exhibit "A").

9.

Austin Chamberlain died as a result of the subject collision. He was 19 years old at the time of his death.

10.

Petitioner Michael Chamberlain made claims for the wrongful death of Austin Chamberlain against various insurance carriers. Petitioner made claims against the liability insurance carrier for Maxley Baxter as well as several under-insured motorist claims for "at home" under-insured motorist policies in the Chamberlain household/residence.

11.

Petitioner Michael Chamberlain is also pursuing a wrongful death dramshop lawsuit against the bar/restaurant that served Maxley Baxter alcohol on the date of the subject collision.

12.

Petitioners MTC Consulting, LLC and Michael Chamberlain contend that the value of all the claims arising from the subject collision/incident which resulted in the death of Austin Chamberlain exceed all available liability and UM policies applicable to the subject incident.

13.

Petitioner Michael Chamberlain filed this Petition after his attempts to make an under-insured motorist claim against his Progressive Insurance policy were rejected, as described below.

**Subject Insurance Policy**

14.

3

At the time of the subject collision and wrongful death of Austin Chamberlain, MTC Consulting, LLC had a policy with Progressive Commercial (underwritten by Progressive Mountain Insurance Company), policy number 02171740. Petitioner Michael Chamberlain was listed on the declarations page for said policy as a "rated driver". The policy has an uninsured/under-insured policy limit of $1,000,000.00. The declaration page lists a 2021 Chevy Silverado C1500, VIN # 3GCUYGEL8MG132947. Further, the declaration page lists that the truck is used for "personal use". (A Copy of the Policy and Declaration Page attached hereto as Exhibit "B").

15.

The Policy was issued to MTC Consulting, LLC with an address of 1060 Apalachee Trace, Bishop, Georgia 30621. This is the principal address of MTC Consulting, LLC. It is also the home address of Petitioner Michael Chamberlain. It was also the home/principal address of Austin Chamberlain.

16.

Austin Chamberlain was the son of Michael Chamberlain and at all times relevant to this action and subject collision, Austin Chamberlain was a resident relative of Petitioner Michael Chamberlain.

17.

The subject policy issued by Respondent Progressive Mountain Insurance was sold to Petitioner by Scott Beaver at Arch Partners Insurance in Watkinsville, Georgia. Arch Partners Insurance is listed on the policy declaration page as Petitioner's "agent".

18.

4

Petitioner Michael Chamberlain alleges Scott Beaver made several statements at the time of purchase of the policy that the subject Progressive policy would have the full force and effect of providing uninsured motorist coverage if Petitioner Michael Chamberlain or any of his resident relatives were injured or killed in a motor vehicle collision.

19.

Petitioners are not in possession of the application for insurance. However, the declaration page does not list Austin Chamberlain as a "rated" driver on the policy at the time of the subject collision. Petitioners have no knowledge whether Austin Chamberlain is listed on the application for insurance.

20.

The uninsured motorist coverage endorsement of the policy states in pertinent part:

## UNINSURED MOTORIST COVERAGE ENDORSEMENT

Except as specifically modified in this endorsement, all provisions of the Commercial Auto Policy apply.

We agree with you that the insurance provided under your Commercial Auto Policy, and related endorsements, is modified as follows:

INSURING AGREEMENT

Subject to the Limits of Liability, if you pay the premium for Uninsured Motorist Coverage, we will pay for damages, other than punitive or exemplary damages, which an insured is legally entitled to recover from the owner or operator of an uninsured auto because of bodily injury or property damage:

1.    sustained by an insured;

2.    caused by an accident; and

5

3.    arising out of the ownership, maintenance, or use of an uninsured auto.

We will pay under this endorsement only after the limits of liability under all applicable liability bonds and policies have been exhausted by payment of judgments or settlements.

Any judgment or settlement for damages against an owner or operator of an uninsured auto that arises out of a lawsuit brought without our written consent is not binding on us.

ADDITIONAL DEFINITIONS

When used in this endorsement, whether in the singular, plural, or possessive:

1i    "Insured" means:

a.    if the named insured shown on the declarations page is a natural person:

(;)    you or a relative;

(ii)    any person occupying an insured auto or a temporary substitute auto; and

(iii)    any person who is entitled to recover damages covered by this endorsement because of bodily injury sustained by a person described in (i) or (ii) above; or

b.    if the named insured shown on the declarations page is a corporation, partnership, organization, or any other entity that is not a natural person:

(i)    any person occupying an insured auto or a temporary substitute auto; and

(ii)    any person who is entitled to recover damages covered by this endorsement because of bodily injury sustained by a person described in (i) above.

For purposes of this definition, insured auto includes mobile equipment that is: a. owned by you; b. leased, hired, or borrowed by you and you have purchased either "Hired Auto Coverage" or "Any Automobile Legal Liability Coverage" from us; or

c.    not owned, leased, hired, or borrowed by you and you have purchased either "Employer's Non-Ownership Liability Coverage" or "Any Automobile Legal Liability Coverage" from us.

However, mobile equipment meeting any of those three criteria will be included in the definition only if at the time of loss it is being:

i.      used in your business;

ii.     operated on a public highway; and

iii.    operated in a state or province where it is subject to a compulsory or financial responsibility law or other motor vehicle insurance law.

2.      "Non-owned auto" means any auto that is not owned by you or furnished for your regular use and, if the named insured is a natural person, not owned by or furnished for the regular use of the named insured's spouse or relative.

3.      "Owned" means the person or organization:

a.      holds legal title to the vehicle;

b.      has legal possession of the vehicle that is subject to a written security agreement with an original term of six months or more; or

c.      has legal possession of the vehicle that is leased to that person or organization under a written agreement for a continuous period of six months or more.

4.      "Owner" means the person or organization who, with respect to a vehicle:

a.      holds legal title to the vehicle;

b.      has legal possession of the vehicle that is subject to a written security agreement with an original term of six months or more; or

c.      has legal possession of the vehicle that is leased to that person or organization under a written agreement for a continuous period of six months or more.

5.      "Property damage" means:

a.      physical damage to, or destruction or loss of use of, an insured auto; and

b.      physical damage to, or destruction of, any property owned by an insured which is contained in the insured auto at the time of the accident.

6.      "Uninsured auto" means an auto or trailer of any type:

a.      to which no liability bond or policy applies at the time of the accident;

b.      to which a liability bond or policy applies at the time of the accident, but the bonding or insuring company:

(i)      legally denies coverage; or

(ii)     is or becomes insolvent;

c.      whose operator or owner cannot be identified and which causes an accident resulting in bodily injury or property damage to an insured, provided that:

(i)      the insured, or someone on his or her behalf, reports the accident to the police or civil authority within 24 hours or as soon as practicable after the accident; and

(ii)     the accident is reported to us no later than 30 days after the accident.

If there is no physical contact with the auto, the facts of the accident must be corroborated by an eyewitness other than an injured insured; or

d.      to which a bodily injury liability bond or policy applies at the time of the accident, and:

(i)      if "Added On Coverage" has been elected, as shown on the declarations page, the amount of coverage available under all applicable liability policies or bonds is less than the damages that the insured is legally entitled to recover for bodily injury or property damage from the owner or operator of the uninsured auto; and

if "Reduced Coverage" has been elected, as shown on the declarations page the amount of coverage available under all applicable liability policies or bonds

is less than the applicable coverage limit for Uninsured Motorist Coverage shown on the declarations page.

As used in (i) and (ii) above, the amount of coverage available under the bodily injury liability and property damage liability coverages for said uninsured auto shall be the applicable limits of coverage, less any amounts by which the maximum amounts payable under such limits of coverage have, by reason of payment of other claims or otherwise, been reduced below the limits of coverage.

An "uninsured auto" does not include any vehicle or equipment:

a.      owned by, furnished to, or available for the regular use of you or, if the named insured is a natural person, a relative;

b.      designed mainly for use off public roads, while not on public roads;

c.      while being used as a residence or premises; or

d.      shown on the declarations page of this policy.

EXCLUSIONS - READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS ENDORSEMENT.

1.      Coverage under this endorsement is not provided for bodily injury sustained by any person while using or occupying:

a.      an insured auto without the express or implied permission of you or, if the named insured is a natural person, a relative; or

b.      a non-owned auto without the express or implied permission of the owner.

2.      Coverage under this endorsement is not provided for property damage:

a.      to an insured auto for which insurance is afforded under a nuclear energy liability insurance contract;

b.      to a trailer you own that is not shown on the declarations page; or

c.      due to a nuclear reaction or radiation.

3.      Coverage under this endorsement will not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar laws:

a.      workers' compensation law; or

b.      disability benefits law.

LIMITS OF LIABILITY

The following provisions shall apply to both Uninsured Motorist Coverage - Added on to At-Fault Liability Limits, referred to as "Added On Coverage", and to Uninsured Motorist Coverage - Reduced by At-Fault Liability Limits Coverage, referred to as "Reduced Coverage."

Regardless of the number of premiums paid, or the number of insured autos or trailers shown on the declarations page, or the number of policies issued by us, or the number of vehicles or insureds involved in an accident, or the number of claims or lawsuits arising out of an accident, we will pay no more than the limit of liability shown for Uninsured Motorist Coverage on the declarations page.

If the declarations page shows that "combined single limit" or "CSL" applies, the amount shown is the most we will pay for the total of all damages resulting from any one accident. However, without changing this total "each accident" limit of liability, we will comply with any law that requires us to provide any separate limits.

If "combined single limits" or "CSL" applies, the Uninsured Motorist bodily injury and property damage coverage deductibles shall be a single aggregate deductible.

If your declarations page shows a split limit:

1.      the amount shown for "each person" is the most we will pay for all damages due to a bodily injury to one person;

2.      subject to the "each person" limit, the amount shown for "each accident" is the most we will pay for all damages due to bodily injury sustained by two or more persons in any one accident; and

3.      the amount shown for "property damage" is the most we will pay for the aggregate of all property damage caused by any one accident.

The "each person" limit of liability includes the total of all claims made for bodily injury to an insured and all claims of others derived from such bodily injury, including, but not limited to, emotional injury or mental anguish resulting from the bodily injury of another or from witnessing the bodily injury to another, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death.

Added On Coverage

If "Added On Coverage" has been elected, as shown on the declarations page, the following shall also apply:

1.      The damages payable for bodily injury under this endorsement will be reduced by all sums:

a.      paid because of bodily injury by or on behalf of any persons or organizations that may be legally responsible;

b.      paid under Part I - Liability To Others;

c.      paid or payable under any applicable Medical Payments Coverage endorsement under this policy; and

d.      paid or payable because of bodily injury under any of the following or similar laws:

11

(i)     workers' compensation law; or

(ii)    disability benefits law.

2.      The damages payable for property damage under this endorsement will be reduced by all sums:

a.      paid because of property damage by or on behalf of any persons or organizations that may be legally responsible;

b.      paid under Part I - Liability To Others; and

c.      paid or payable under any other property or physical damage insurance.

Reduced Coverage

If "Reduced Coverage" has been elected, as shown on the declarations page, the following shall also apply:

1.      The bodily injury limits of liability under this endorsement shall be reduced by all sums:

a.      paid because of bodily injury by or on behalf of any persons or organizations that may be legally responsible;

b.      paid under Part I - Liability To Others;

c.      paid or payable under any applicable Medical Payments Coverage Endorsement; and

d.      paid, payable, or that should apply, because of bodily injury under any of the following or similar laws:

(i)     workers' compensation law; or

(ii)    disability benefits law.

2.      The property damage limits of liability under this endorsement shall be reduced by all sums:

12

a.      paid because of property damage by or on behalf of any persons or organizations that may

be legally responsible;

b.      paid under Part I-Liability To Others; and

c.      paid or payable under any other property or physical damage insurance.

When property damage covered under this endorsement is also covered by any applicable Collision

Coverage under Part II, the coverage under this endorsement shall be excess over the Collision

Coverage, except to the extent that the coverage under this endorsement is used to reimburse you

for any applicable Collision Coverage deductible.

Payments for property damage under this endorsement are also subject to the following provisions:

1.      no more than one deductible shall be applied to any one accident; and

2.      an adjustment for depreciation and physical condition will be made in determining the limit

of liability at the time of the accident.

No one will be entitled to duplicate payments for the same elements of damages.

OTHER INSURANCE

If there is other applicable uninsured motorist coverage, as described in O.

amended, the following order of priority shall be used to determine which insurer is responsible

for providing payments:

1.      a policy insuring the injured person as a named insured; then

2.      a policy insuring the injured person's spouse or any relative; then

3.      policies insuring the owner or operator of the auto occupied in the accident.

If we are responsible for providing payment under this endorsement to an insured and there is more

than one applicable policy of the same priority, we will pay only our share of the damages. Our

share is the proportion that our limit of liability bears to the total of all available coverage limits

on the same level of priority.

We will not pay for any damages that would duplicate any payment made for damages under other

insurance.

ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN
UNCHANGED.

## **SUBJECT CLAIM**

### 21.

Petitioner Michael Chamberlain, through counsel, put Respondent on timely notice of the

wrongful death and all related UM claims following the subject collision/incident.

### 22.

On September 27, 2022, counsel for Petitioner Michael Chamberlain sent a statutory time

demand to Petitioner, pursuant to O.C.G.A. § 33-7-11(j), for the UM limits of $1,000,000.00. (See

Time Demand attached hereto as Exhibit "C").

### 23.

On October 5, 2022, Respondent rejected Petitioner's time demand in writing. (See

Demand Rejection Letter attached hereto as Exhibit "D").

## **Count I – The Policy is Ambiguous**

### 24.

The Petitioners incorporate the allegations contained in Paragraphs 1 through 23 as though

set forth fully herein.

### 25.

14

Because Respondent's policy is ambiguous and is not clearly written it must be construed in favor of Petitioners.

26.

Therefore, Petitioners seek the Court's guidance and clarification as to their contention that Respondent's UM policy applies to them and they may recover under the policy for the claims made on behalf of and for the death of Austin Chamberlain.

## Count II – Material Misrepresentation

27.

The Petitioners incorporate the allegations contained in Paragraphs 1 through 26 as though set forth fully herein.

28.

Because Respondent's agent, Scott Beaver, made a material misrepresentation to Petitioner Michael Chamberlain at the time Petitioner purchased the policy, the Respondent owes UM coverage for any claims arising from the subject incident/collision.

29.

Therefore, Petitioners seek the Court's guidance and clarification as to their contention that Respondent's UM policy applies to them and they may recover under the policy for the claims made on behalf of and for the death of Austin Chamberlain arising from the subject incident/collision.

## Count III – Personal Use and Resident Relative

30.

The Petitioners incorporate the allegations contained in Paragraphs 1 through 29 as though set forth fully herein.

15

31.

Because the declaration page for Respondent's policy lists the motor vehicle on the policy as "personal use" for Petitioner Michael Chamberlain, the policy has the full force and effect of a personal insurance policy issued to Petitioner Michael Chamberlain as he is a "natural person" as defined by the policy. Said designation of "personal use" indicates the policy was issued to Petitioner Michael Chamberlain for his personal use of the listed automobile.

32.

The Respondent's policy defines an "insured" as "you or a relative".

33.

Austin Chamberlain was the natural son of Petitioner Michael Chamberlain and a resident relative of Petitioner Michael Chamberlain.

34.

Reviewing the plain language of the Policy, the Petitioner is entitled to UM coverage for any and all claims arising from the subject incident/collision as Austin Chamberlain fits the definition of a relative of natural person Petitioner Michael Chamberlain.

35.

Therefore, Petitioners seek the Court's guidance and clarification as to their contention that Respondent's UM policy applies to them and they may recover under the policy for the claims made on behalf of and for the death of Austin Chamberlain and all claims arising from the subject incident/collision.

36.

The Petitioners have no adequate remedy at law or otherwise, except by this Petition for Declaratory Judgment.

WHEREFORE Petitioners pray:

(a) That process and summons issue to the Respondent herein and that they be served with

process and a copy of this Petition for Declaratory Judgment as required by law;

(b) That this Court declare the rights and legal obligations of Petitioners and Respondent

under the Subject Policy; and,

(c) And for such other and further relief as this Court deems appropriate.


Respectfully submitted, this 2nd day of February, 2023.

JOHNSON & ALDAY, LLC

ROBERT D. JOHNSON
Georgia Bar Number 125305
JOHN E. ALDAY
Georgia Bar Number 298669
*Attorneys for Petitioners*

219 Roswell Street, NE
Marietta, Georgia 30060
(678)967-4040
bobby@johnsonalday.com
john@johnsonalday.com

# MISSISSIPPI UNIFORM CRASH REPORT
## CRASH INFORMATION

2021067532

Rev. 2020-1

| ☐ Secondary Crash | | Agency # 0022 | Case # 2021101819 | Page 1 of 10 |
|---|---|---|---|---|

| Number of Motorists 2 | Number of Non-Motorists 0 | Non-Fatally Injured Persons 1 | Fatalities 1 | Total Injuries and Fatalities 2 | Vehicles Involved 1 |
|---|---|---|---|---|---|

| Investigating Agency | County | City | Latitude | Longitude |
|---|---|---|---|---|
| Grenada County Sheriff Office | Grenada | Gore Springs | 33.837531° N | 89.606123° W |

## CRASH TIME INFORMATION

| Crash Date/Time | Police Notified Date/Time | Police Arrived Date/Time | Roadway Cleared Date/Time | 10-24 Investigation Completed |
|---|---|---|---|---|
| 10/24/2021 0159 | 10/24/2021 0159 | 10/24/2021 0212 | 10/24/2021 0519 | 10/24/2021 0519 |

## ROAD INFORMATION

| Named road | | Numbered road |
|---|---|---|
| | GRAYSPORT CROSSING ROAD | |
| Address Number | Street Name | Road Number · Milepost |

| Intersection Road Name | ☐ Crash was at an intersection | Intersection Road Number |
|---|---|---|

## LOCATION INFORMATION

| Road Classification 103 | Property Ownership 100 | Trafficway Characteristics 100 | Intersection Approach 1 | Traffic Flow Direction N |
|---|---|---|---|---|
| 100 Interstate          200 Parking lot/ 101 US highway             private drive 102 State highway    201 State park 103 County road      202 Off road 104 City street | 100 Public property 200 Private property | 100 Trafficway, on road 101 Trafficway, not on road 200 Non-trafficway | 1 Not an intersection 2 Two 3 Three 4 Four 5 Five or more | X Not applicable   (not a divided highway)          N North W West            E East          S South |

## INVESTIGATING OFFICER

| Rank | First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|---|
| Deputy | Randy | | Denley | |

| Badge # | Printed Name | Signature |
|---|---|---|
| SO 9 | Deputy Randy Deniey | *Deputy Randy Denley* |

## CRASH CIRCUMSTANCES AND CONDITIONS

| First Harmful Event 316 | Location of First Harmful Event 108 | School Bus Relation 000 | Weather Conditions 000 |
|---|---|---|---|
| **Non-Collision** 100 Cargo/equipment loss or shift 101 Fell/jumped from motor vehicle 102 Fire/explosion 103 Immersion, full or partial 104 Jackknife 105 Overturn/rollover 106 Thrown or falling object 198 Other non-collision harmful event | 100 Gore 101 In parking lane or zone 102 Median 103 Off roadway, location unknown 104 On roadway 105 On shoulder, left side 106 On shoulder, right side 107 Outside road/right-of-way 108 Roadside 109 Separator/traffic island 999 Unknown | 000 No 100 Yes, school bus directly involved 101 Yes, school bus indirectly involved | 000 Clear 100 Blowing sand, soil, dirt 101 Blowing snow 102 Cloudy 103 Fog, smog, smoke 104 Freezing rain or freezing drizzle 105 Rain 106 Severe crosswinds 107 Sleet or hail 108 Snow 980 Other 999 Unknown |
| **Collision with Non-Fixed Object** 200 Collision with animal (live) 201 Collision with motor vehicle in transport 202 Collision with parked motor vehicle 203 Collision with pedalcycle 204 Collision with pedestrian 205 Collision with railway vehicle (train, engine) 206 Collision with object at rest from MV in transport 207 Collision with falling/shifting cargo or anything set in motion by MV 208 Collision with work zone/maintenance equipment 209 Collision with farm equipment 297 Collision with other non-motorist 298 Collision with other non-fixed object | **Intersection Geometry** 970 100 Angled / skewed 101 Roundabout / traffic circle 102 Perpendicular 970 Not applicable | | |
| | **Manner of Crash** 000 000 Not a collision between     two motor vehicles 100 Angle 101 Front to front 102 Front to rear 103 Rear to rear | **Intersection Traffic Control** 970 000 No controls 100 Signalized 101 Stop -all way 102 Stop -partial 103 Yield 970 Not applicable | **Environmental Conditions** 000 000 None 100 Animal(s) 101 Debris 102 Glare 103 Non-highway work |
| **Collision with Fixed Object** 300 Collision with bridge overhead structure 301 Collision with bridge pier or support 302 Collision with bridge rail 303 Collision with cable barrier 304 Collision with concrete traffic barrier 305 Collision with culvert 306 Collision with curb 307 Collision with ditch 308 Collision with embankment 309 Collision with fence 310 Collision with guardrail end terminal 311 Collision with guardrail face 312 Collision with impact attenuator/crash cushion 313 Collision with mailbox 314 Collision with traffic sign support 315 Collision with traffic signal support 316 Collision with tree (standing) 317 Collision with utility pole/light support 396 Collision with other post, pole, or support 397 Collision with other traffic barrier 398 Collision with other fixed object (wall, building, tunnel, etc.) 399 Collision with unknown fixed object | 104 Rear to side 105 Sideswipe, opposite direction 106 Sideswipe, same direction 980 Other 999 Unknown **Relation to Junction** 000 000 Not an interchange area 100 Acceleration or deceleration lane 101 Crossover related 102 Driveway access or related 103 Entrance/exit ramp or related 104 Intersection or related 105 Non-junction 106 Railway grade crossing 107 Shared-use path or trail 108 Through roadway 980 Other location within an interchange     area (median, shoulder, and roadside) 999 Unknown | **Roadway Surface Condition** 000 000 Dry 100 Ice/Frost 101 Mud, dirt, gravel 102 Oil 103 Sand 104 Slush 105 Snow 106 Water (standing,moving) 107 Wet 980 Other 999 Unknown **Light Condition** 302 101 Daylight 201 Dark-lighted 301 Dark -lighted 302 Dark - not lighted 399 Dark - unknown lighting 980 Other 999 Unknown | 104 Obstructed crosswalks 105 Obstruction in roadway 106 Prior crash 107 Prior non-recurring incident 108 Regular congestion 109 Related to a bus stop 110 Road surface condition     (wet, icy, snow, slush, etc.) 111 Ruts, holes,bumps 112 Shoulders (none, low, soft, high) 113 Toll booth/plaza related 114 Traffic control device 115 Traffic incident 116 Visual obstruction 117 Weather conditions 118 Work zone (construction/     maintenance/utility) 119 Worn,travel-polished surface 980 Other 999 Unknown |

PLAINTIFF'S EXHIBIT A.

# MISSISSIPPI UNIFORM CRASH REPORT
## CRASH INFORMATION
Rev. 2020-1

2021067532

| Agency # | 0022 | Case # | 2021101819 | Page | 2 | of | 10 |

## WORK ZONE CRASH INFORMATION

| Work Zone | 000 | Location Relative to Work Zone | 970 | Work Zone Type | 970 | Worker(s) Present | 970 | Law Enforcement Present | 970 |
|---|---|---|---|---|---|---|---|---|---|
| 000 No<br>100 Yes<br>999 Unknown | | 100 Before the first work zone warning sign<br>101 Advance warning area<br>102 Transition area<br>103 Activity area<br>104 Termination area<br>970 Not applicable<br>999 Unknown | | 100 Lane closure<br>101 Lane shift / crossover<br>102 Work on shoulder or median<br>103 Intermittent or moving work<br>970 Not applicable<br>980 Other<br>999 Unknown | | 000 No<br>100 Yes<br>970 Not applicable<br>999 Unknown | | 000 No<br>100 Yes<br>970 Not applicable<br>999 Unknown | |

## PHOTOGRAPHER

| Photos Taken? | Rank | First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|---|---|
| ☒ | Deputy | Randy | | Denley | |

## REVIEWING OFFICER

| Rank | First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|---|
| Deputy | Joey | | Ward | |

### WITNESS #                    WITNESS #

| Name | | | | Name | | | |
|---|---|---|---|---|---|---|---|
| First | Middle | Last | Suffix | First | Middle | Last | Suffix |

| Address | | | | Address | | | |
|---|---|---|---|---|---|---|---|

| City | State | Postal Code | City | State | Postal Code |
|---|---|---|---|---|---|

| Phone Number | Age | Sex | Phone Number | Age | Sex |
|---|---|---|---|---|---|

### WITNESS #                    WITNESS #

| Name | | | | Name | | | |
|---|---|---|---|---|---|---|---|
| First | Middle | Last | Suffix | First | Middle | Last | Suffix |

| Address | | | | Address | | | |
|---|---|---|---|---|---|---|---|

| City | State | Postal Code | City | State | Postal Code |
|---|---|---|---|---|---|

| Phone Number | Age | Sex | Phone Number | Age | Sex |
|---|---|---|---|---|---|

### WITNESS #                    WITNESS #

| Name | | | | Name | | | |
|---|---|---|---|---|---|---|---|
| First | Middle | Last | Suffix | First | Middle | Last | Suffix |

| Address | | | | Address | | | |
|---|---|---|---|---|---|---|---|

| City | State | Postal Code | City | State | Postal Code |
|---|---|---|---|---|---|

| Phone Number | Age | Sex | Phone Number | Age | Sex |
|---|---|---|---|---|---|

## TRAIN CRASH INFORMATION                    TRAIN #

| Engineer ☐ Unknown | | | | Engineer ID Number ☐ Unknown |
|---|---|---|---|---|
| First | Middle | Last | Suffix | |

| Conductor ☐ Unknown | | | | Conductor ID Number ☐ Unknown |
|---|---|---|---|---|
| First | Middle | Last | Suffix | |

| Company ☐ Unknown | | DOT Crossing Number ☐ Unknown |
|---|---|---|

CRASH REPORT - SUMMARY BACK

# MISSISSIPPI UNIFORM CRASH REPORT
## VEHICLE INFORMATION

2021067532

Rev. 2020-1   Agency # | 0022   Case # | 2021101819   Page | 3 | of | 10

**Motor Vehicle #** 1

### DESCRIPTION AND INFORMATION

Check if this vehicle had no driver ☐

**Hit and Run** | 000
- 000 No, did not leave the scene
- 100 Yes, driver and vehicle left scene
- 101 Yes, only driver left scene

**Vehicle Type** | 100
- 100 Motor vehicle in transport
- 101 Parked motor vehicle
- 102 Working vehicle / equipment

**Vehicle Body Type** | 103

**Passenger Vehicles**
- 100 Passenger car
- 101 Passenger van (less than 9 seats)
- 102 (Sport) utility vehicle
- 103 Pickup
- 104 Cargo van

**Construction / Farm Equipment**
- 200 Construction equipment (backhoe, bulldozer, etc.)
- 201 Farm equipment (tractor, combine, harvester, etc.)

**VIN** 1FTEX1EP2HFC83443 ☐ Unknown

**Model Year** ☐ Unknown | 2017   **Make** Ford   **Model** F-Series pickup   **Color** Gray

**Cycle / Low Speed**
- 300 2-wheeled motorcycle
- 301 3-wheeled motorcycle
- 302 Moped or motorized bicycle
- 303 All-terrain vehicle / all-terrain cycle (ATV / ATC)
- 304 Golf Cart
- 305 Snowmobile
- 306 Low Speed Vehicle
- 307 Recreational off-highway vehicles (ROV)
- 308 Autocycle

**License Plate** ☐ Missing   ☐ Non-expiring

**State** IL ☐ Unknown   **Number** 2932081 ☐ Unknown   **Year** 2021 ☐ Unknown

**Owner Name** ☐ Same as driver ☐ Unknown
David L. Hoglund

**Owner Address** ☐ Same as driver ☐ Unknown
173 Hunt Club Dr.   Saint Charles   IL   60174
*Street*   *City*   *State*   *Postal Code*

**Trucks**
- 400 Single unit truck
- 401 Truck tractor
- 498 Other truck

**Large Passenger Vehicle**
- 500 Motor home
- 501 9 or 12 passenger van
- 502 15-passenger van
- 503 Large limo
- 504 Mini-bus
- 505 School bus
- 506 Transit bus
- 507 Motorcoach
- 598 Other bus / large passenger vehicle

**Insurance** ☐ Uninsured at time of crash

**Company** _____ ☒ Unknown
**NAIC #** _____ ☒ Unknown
**Policy #** _____ ☒ Unknown

**Other**
- 980 Other

### DAMAGE

**Damage Extent** | 102
- 000 None
- 100 Minor damage
- 101 Functional damage
- 102 Disabling damage
- 990 Vehicle not at scene

**State Property Damaged**
- ☒ 000 None
- ☐ 100 Bridge overhead structure
- ☐ 101 Bridge pier or support
- ☐ 102 Bridge rail
- ☐ 200 Cable barrier
- ☐ 201 Concrete traffic barrier
- ☐ 202 Guardrail end terminal
- ☐ 203 Guardrail face
- ☐ 204 Impact attenuator/crash cushion
- ☐ 298 Other traffic barrier
- ☐ 300 Traffic sign support
- ☐ 301 Traffic signal support
- ☐ 302 Utility pole/light support
- ☐ 980 Other

**Initial Contact Point**
7 8 9 10 11 / 6 ➡ 12 / 5 4 3 2 1
- ☐ 000 Non-collision
- ☐ 001 Vehicle not at scene
- ☐ 100 Top
- ☐ 113 Undercarriage
- ☐ 114 Cargo Loss
- ☐ 999 Unknown

**Damaged Areas**
7 8 9 10 **11** / 6 ➡ 12 / 5 4 3 2 1
- ☐ 001 Vehicle not at scene
- ☐ 100 Top
- ☐ 113 Undercarriage

### TOWING

**Tow Status** | 101
- 000 Not towed
- 100 Towed, but not due to disabling damage
- 101 Towed due to disabling damage

**Tow Authority** | 101
- 100 Owner
- 101 Law enforcement
- 970 Not applicable
- 980 Other

**Towed By** ☐ Unknown
Jerry's Wrecker

# MISSISSIPPI UNIFORM CRASH REPORT
## VEHICLE INFORMATION
Rev. 2020-1

2021067532

| Motor Vehicle # | | | | | | |
|---|---|---|---|---|---|---|
| 1 | Agency # 0022 | Case # 2021101819 | Page 4 of 10 | | | |

## MOTOR VEHICLE CIRCUMSTANCES

### Vehicle Usage  `000`

000 No special function
100 Bus - school (public or private)
101 Bus - childcare / daycare
102 Bus - transit / commuter
103 Bus - charter / tour
104 Bus - intercity
105 Bus - shuttle
198 Bus - other
200 Farm vehicle
201 Fire truck
202 Highway / maintenance
203 Mail carrier
204 Military
205 Ambulance
206 Police

207 Public utility
208 Non-transport emergency services vehicle
209 Safety service patrols - Incident response
210 Other incident response
211 Rental truck (over 10,000 lbs)
212 Towing - incident response
213 Truck acting as crash attenuator
214 Taxi
215 Vehicle used for electronic ride-hailing
(transportation network company)

980 Other
999 Unknown

### Emergency Vehicle Usage  `000`

000 Non-emergency, non-transport
100 Non-emergency transport
200 Emergency operation, emergency warning equipment not in use
201 Emergency operation, emergency warning equipment in use
970 Not applicable
999 Unknown

### Travel Direction  `100`

000 Not on roadway
.................................. 999 Unknown
100 North
800 Northwest          200 Northeast
700 West                                      300 East
600 Southwest          400 Southeast
500 South

### Vehicle Maneuver  `105`

100 Backing
101 Changing lanes
102 Entering traffic lane
103 Leaving traffic lane
104 Making U-turn
105 Movements essentially straight ahead
106 Negotiating a curve
107 Overtaking/passing
108 Parked
109 Slowing
110 Stopped in traffic
111 Turning left
112 Turning right
980 Other
999 Unknown

### Traffic Control Device Types and Statuses

| Traffic Control Device Types | | Devices Present | Devices Inoperative or Missing |
|---|---|---|---|
| 000 None | 300 Flashing railroad crossing (may include gates) | 1  `000` | 1  `000` |
| 100 Person (including flagger, law enforcement, crossing guard, etc) | 301 Flashing school zone signal 302 Flashing traffic control signal 303 Lane use control signal 304 Ramp meter signal | 2 | 2 |
| 200 Bicycle crossing sign 201 "Curve Ahead" warning sign 202 "Intersection Ahead" warning sign | 305 Traffic control signal 398 Other signal | 3 | 3 |
| 203 Pedestrian crossing sign 204 Railroad crossing 205 "Reduce Speed Ahead" warning sign | 400 Bicycle crossing 401 Pedestrian crossing 402 Railroad crossing 403 School zone 498 Other pavement marking (excluding edgelines, centerlines, or lane lines) | 4 | 4 |
| 206 School zone sign 207 Stop sign 208 Yield sign 298 Other warning sign | 980 Other 999 Unknown | | |

### Vehicle Defects  `000`

000 None
100 Brakes
101 Exhaust system
102 Body doors
103 Steering
104 Power train
105 Suspension
106 Tires
107 Wheels
108 Lights (head,signal,tail)
109 Window / Windshield
110 Mirrors
111 Wipers
112 Truck coupling / trailer hitch / safety chains
980 Other
999 Unknown

### Automation System Level Present  `000`

000 No automation
100 Driver assistance
101 Partial automation
102 Conditional automation
103 High automation
104 Full automation
199 Automation level unknown
999 Unknown

### Automation System Level Engaged at Time of Crash  `000`

000 No automation
100 Driver assistance
101 Partial automation
102 Conditional automation
103 High automation
104 Full automation
199 Automation level unknown
999 Unknown

### Trafficway Division  `000`

000 Not divided
001 Not divided, with a continuous left turn lane
100 Divided, flush median (greater than 4 ft wide)
101 Divided, raised median (curbed)
102 Divided, depressed median
999 Unknown

### Barrier Type  `000`

000 None
100 Cable barrier
101 Concrete barrier (e.g. Jersey barrier)
102 Earth embankment
103 Guardrail
980 Other

| Roadway Grade `101` | # of Through Lanes `101` | Roadway Alignment `101` | Permitted Travel `200` |
|---|---|---|---|
| 100 Level 101 Uphill 102 Hillcrest 103 Downhill 104 Sag (bottom) | 2 | 100 Straight 101 Curve left 102 Curve right | 100 One-way 200 Two-way |
| | # of Auxiliary Lanes | | Posted Speed Limit 40  ☐ Unknown  ☐ N/A |
| | 0 | | |

### HOV Lane Presence  `000`

000 None present
100 Separated barrier, flush (greater than 4 ft wide), raised or depressed median
101 Not separated, painted pavement markings, post-mounted delineators

### HOV Lane Relation  `000`

000 No
100 Yes

## MOTOR VEHICLE EVENTS

| Sequence of Events | 1 `006` | 2 `316` | 3 `316` | 4 | Most Harmful Event `316` |
|---|---|---|---|---|---|

### Non-Harmful Events

000 Cross centerline
001 Cross median
002 End departure (T-intersection, dead-end, etc.)
003 Downhill runaway
004 Equipment failure (blown tire, brake failure, etc.)

005 Ran off roadway left
006 Ran off roadway right
007 Reentering roadway
008 Separation of units
098 Other non-harmful event

### Non-Collision Events

100 Cargo/equipment loss or shift
101 Fell/jumped from motor vehicle
102 Fire/explosion
103 Immersion, full or partial
104 Jackknife
105 Overturn/rollover
106 Thrown or falling object
198 Other non-collision harmful event

### Collision with Person / Vehicle / Non-Fixed Object

200 Collision with animal (live)
201 Collision with motor vehicle in transport
202 Collision with parked motor vehicle
203 Collision with pedacycle
204 Collision with pedestrian
205 Collision with railway vehicle (train, engine)
206 Collision with object at rest from MV in transport
207 Collision with falling, shifting cargo, or anything set in motion by MV
208 Collision with work zone/maintenance equipment
209 Collision with farm equipment
297 Collision with other non-motorist
298 Collision with other non-fixed object

### Collision with Fixed Object

300 Collision with bridge overhead structure
301 Collision with bridge pier or support
302 Collision with bridge rail
303 Collision with cable barrier
304 Collision with concrete traffic barrier
305 Collision with culvert
306 Collision with curb
307 Collision with ditch
308 Collision with embankment
309 Collision with fence
310 Collision with guardrail end terminal
311 Collision with guardrail face
312 Collision with impact attenuator/crash cushion
313 Collision with mailbox
314 Collision with traffic sign support
315 Collision with traffic signal support
316 Collision with tree (standing)
317 Collision with utility pole/light support

396 Collision with other post,pole,or support
397 Collision with other traffic barrier
398 Collision with other fixed object (wall, building, tunnel, etc.)
399 Collision with unknown fixed object

# MISSISSIPPI UNIFORM CRASH REPORT
## VEHICLE INFORMATION

2021067532

| Motor Vehicle # | | |
|---|---|---|
| 1 | | |

Rev. 2020-1   **Agency #** 0022   **Case #** 2021101819   **Page** 5 **of** 10

## COMMERCIAL MOTOR VEHICLE INFORMATION

**Vehicle Configuration** 000

000 Not a qualifying vehicle

100 Vehicles 10,000 lbs or less placarded for hazardous materials

200 Bus/large van (seats 9-15 occupants, including driver)
201 Bus (seats more than 15 occupants, including driver)

300 Single-unit truck (2-axle and GVWR > 10,000 lbs.)
301 Single-unit truck (3 or more axles)
302 Truck pulling trailer(s)
303 Truck tractor (bobtail)
304 Truck tractor/semi-trailer
305 Truck tractor/double
306 Truck tractor/triple
307 Truck more than 10,000 lbs., cannot classify

**Cargo Body Type** 970

000 No cargo body

| | | |
|---|---|---|
| 100 Bus | 105 Flatbed | 109 Log |
| 101 Auto transporter | 106 Garbage / refuse | 110 Pole trailer |
| 102 Cargo tank | 107 Grain / chips / gravel | 111 Van / enclosed box |
| 103 Concrete mixer | 108 Intermodal container chassis | 112 Vehicle towing another vehicle |
| 104 Dump | | |
| 970 Not applicable | 980 Other | 999 Unknown |

| **Special Sizing** | **Number of Axles** | **Motor Carrier Type** 000 | **Motor Carrier Identification** 970 |
|---|---|---|---|
| ☒ 000 No special sizing | ☐ Unknown | 000 Not a motor carrier | 100 USDOT number |
| ☐ 100 Over-height | | 100 Interstate carrier | 101 State number |
| ☐ 101 Over-length | | 101 Intrastate carrier | 970 Not applicable |
| ☐ 102 Over-weight | | 102 Not in commerce / government | 999 Unknown/unable to determine |
| ☐ 103 Over-width | | 980 Not in commerce / other truck or bus | |
| ☐ 999 Unknown | | | **State** _____ |

**Motor Carrier Address** ☐ Unknown

Street _____   City _____   State _____   Postal Code _____

**GVWR/GCWR** 970   **Commodity Hauled**

100 Light (less than 10,000 lbs.GVWR/GCWR)
101 Medium (10,001 - 26,000 lbs GVWR/GCWR)
102 Heavy (greater than 26,000 lbs GVWR/GCWR)
970 Not applicable
999 Unknown

**Hazardous Materials Placard** 000

000 Did not carry hazardous materials    999 Unknown
100 Carried hazardous materials with placard
200 Carried hazardous materials without placard

**Hazardous Material ID**    Not applicable

**Hazardous Material Class** 970

1 Explosives
2 Gas
3 Flammable liquids
4 Other flammable substances
5 Oxidizing substances and organic peroxides
6 Toxic (poisonous) and infectious substances
7 Radioactive material
8 Corrosives
9 Miscellaneous dangerous goods
970 Not applicable
999 Unknown

**Hazardous Materials Released from Vehicle Cargo Compartment** 970

000 No, hazardous materials not released
100 Yes, hazardous materials released
970 Not applicable

**Motor Carrier Name** ☐ Unknown

**Motor Carrier ID Number**

## TRAILER INFORMATION                                    TRAILER #

**VIN** ☐ Unknown                    **Number of Axles** ☐ Unknown

**Year** ☐ Unknown   **Make** ☐ Unknown              **Model** ☐ Unknown

**License Plate** ☐ Missing

**State** _____ ☐ Unknown   **Number** _____ ☐ Unknown

## TRAILER INFORMATION                                    TRAILER #

**VIN** ☐ Unknown                    **Number of Axles** ☐ Unknown

**Year** ☐ Unknown   **Make** ☐ Unknown              **Model** ☐ Unknown

**License Plate** ☐ Missing

**State** _____ ☐ Unknown   **Number** _____ ☐ Unknown

## TRAILER INFORMATION                                    TRAILER #

**VIN** ☐ Unknown                    **Number of Axles** ☐ Unknown

**Year** ☐ Unknown   **Make** ☐ Unknown              **Model** ☐ Unknown

**License Plate** ☐ Missing

**State** _____ ☐ Unknown   **Number** _____ ☐ Unknown

CRASH REPORT - COMMERCIAL MOTOR VEHICLE DESCRIPTION AND IDENTIFICATION

## MISSISSIPPI UNIFORM CRASH REPORT
## DRIVER INFORMATION
Rev. 2020-1

2021067532

| Motor Vehicle #<br>1 | | | | Agency # 0022 | Case # 2021101819 | Page 6 of 10 |
|---|---|---|---|---|---|---|

### DRIVER INFORMATION

| Name ☐ Unknown | | | | Age ☐ Unknown | Sex 101 | Race 103 |
|---|---|---|---|---|---|---|

Maxley *First*     Byron *Middle*     Baxter *Last*    *Suffix*

Age: 19

**Sex** 101
100 Female
101 Male
999 Unknown

**Race** 103
100 American Indian or Alaska Native
101 Asian or Pacific Islander
102 Black
103 White
980 Other
999 Unknown

| Address ☐ Unknown | | | | Phone Number ☐ Unknown | | Ethnicity 101 |
|---|---|---|---|---|---|---|

2225 Sutton Drive *Street*    South Elgin *City*    IL *State*    60177 *Postal Code*

**Ethnicity** 101
100 Hispanic
101 Other than Hispanic
999 Unknown

**Incident Responder** 000
000 No
100 EMS
101 Fire
102 Police
103 Tow operator
104 Transportation (i.e. maintenance workers, safety service patrol operators, etc.)
980 Other
999 Unknown

**Date of Birth** ☐ Unknown
2/3/2002

### DRIVER LICENSE INFORMATION

**License Status** 100
100 Valid license
000 Not licensed
001 Canceled or denied
002 Expired
003 Revoked
004 Suspended
999 Unknown

**License Number**
B236-5420-2034

**License State**
IL

**Is Commercial DL?**
☐ Yes ☒ No

**License Class** 400
000 None
100 Class A
101 Class B
102 Class C
200 Light commercial/taxi/chauffeur (MS class D)
300 Motorcycle only (class M, non-MS only)
400 Regular driver license class (MS classes R, T, P, and Y)
970 Not applicable

**Commercial Driver License Status** 970
100 Valid
101 Learner's permit
000 Canceled or denied
001 Disqualified
002 Expired
003 Revoked
004 Suspended
098 Other (not valid)
970 Not applicable
999 Unknown

**Endorsements on License**
☒ 000 None/not applicable
☐ 100 H - Hazardous materials
☐ 101 N - Tank vehicle
☐ 102 P - Passenger
☐ 103 S - School
☐ 104 T - Double/triple trailers
☐ 105 X - Combination of tank vehicle and hazardous materials
☐ 980 Other non-commercial license endorsements (e.g., motorcycle, etc.)
☐ 999 Unknown

**Endorsement Compliance** 000
000 No endorsements required for the vehicle
100 Endorsements required, complied with
101 Endorsements required, not complied with
199 Endorsements required, compliance unknown
999 Unknown if endorsements required

**Restrictions on License**
B - Corrective lenses (1)

**Alcohol Interlock Presence** 970
000 No
100 Yes
970 Not applicable
999 Unknown

### DRIVER SEATING AND SAFETY INFORMATION

**Seating Position** 106

**Standard Vehicle Seats**

| Row | Front Left | Middle | Right | Unk |
|---|---|---|---|---|
| 1 | 100 | 101 | 102 | 199 |
| 2 | 200 | 201 | 202 | 299 |
| 3 | 300 | 301 | 302 | 399 |
| 4 | 400 | 401 | 402 | 499 |
| Oth | 500 | 501 | 502 | 599 |
| Unk | 600 | 601 | 602 | 699 |

**Other Seating Positions**
700 Unenclosed cargo area
701 Riding on motor vehicle exterior (non-trailing unit)
800 Trailing unit
801 Sleeper section of cab (truck)
698 Other enclosed cargo area
970 Not applicable
999 Unknown

**Restraint Systems Used** 100
100 None used - motor vehicle occupant
101 Booster seat
102 Child restraint system - forward facing
103 Child restraint system - rear facing
104 Child restraint - type unknown
105 Lap belt only used
106 Shoulder and lap belt used
107 Shoulder belt only used
108 Stretcher
109 Wheelchair
199 Restraint used - type unknown
200 No helmet
201 DOT-compliant motorcycle helmet
202 Not DOT-compliant motorcycle helmet
299 Unknown if DOT-compliant motorcycle helmet
970 Not applicable
980 Other
999 Unknown

**Used Improperly?** 000
000 No
100 Yes
999 Unknown

**Air Bags Deployed**
☐ 000 Not deployed
☒ 100 Front
☐ 101 Side
☐ 102 Curtain
☐ 103 Other (knee, air belt, etc.)
☐ 970 Not applicable
☐ 999 Deployment unknown

**Ejection** 000
000 Not ejected
100 Ejected, partially
101 Ejected, totally
970 Not applicable
999 Unknown

**Extrication** 000
000 No
100 Yes

# MISSISSIPPI UNIFORM CRASH REPORT
## DRIVER INFORMATION
Rev. 2020-1

2021067532

| Motor Vehicle # | Agency # | 0022 | Case # | 2021101819 | Page | 7 | of | 10 |
|---|---|---|---|---|---|---|---|---|
| 1 | | | | | | | | |

## MEDICAL INFORMATION

| Injury Status | 101 | Type of Medical Transportation | 100 | EMS Response Agency |
|---|---|---|---|---|

**Injury Status** 101
100 (K) Fatal Injury
101 (A) Suspected Serious Injury
102 (B) Suspected Minor Injury
103 (C) Possible Injury
104 (O) No Apparent Injury

**Type of Medical Transportation**
000 Not transported
100 EMS air
101 EMS ground
200 Law enforcement
980 Other
999 Unknown

**EMS Response Agency** 100
UMMC

**EMS Response Run #**  ☒ Unknown

**Facility Receiving Patient**
North Mississippi Medical Center

## DRIVER CONDITION AND CIRCUMSTANCES

**Conditions at Time of Crash** 104
000 Apparently normal
100 Asleep or fatigued
101 Emotional (depressed, angry, disturbed, etc.)
102 Ill (sick), fainted
103 Physically impaired
104 Under the influence of medications/
    drugs/alcohol
970 Not applicable
980 Other
999 Unknown

**Distracted By** 999
000 Not distracted
100 Talking / listening
101 Manually operating a device
    (e.g., texting, dialing, playing game, etc.)
980 Other
999 Unknown

**Distraction Source** 970
100 Hands-free mobile phone
101 Hand-held mobile phone
102 Vehicle-integrated device
198 Other electronic device
200 Passenger or other non-motorist
201 External to vehicle/non-motorist area
298 Not applicable
970 Not applicable
999 Unknown

**Speeding Related** 100
000 No
100 Exceeded speed limit
101 Racing
102 Too fast for conditions
999 Unknown

**Suspected Alcohol Usage** 100
000 No
100 Yes
999 Unknown

**Test Status** 100
000 Test not given
001 Test refused
100 Test given
999 Unknown if tested

**Alcohol Test Type** 100
100 Blood
101 Blood clot
102 Blood plasma/serum
200 Breath
201 Preliminary breath test (PBT)
300 Urine
301 Vitreous
970 Not applicable
980 Other

**Alcohol Test Results** 100
000 Results pending
001 Negative results with no actual value
100 Results received
101 Positive results with no actual value
970 Not applicable
999 Unknown

**BAC**
0.26

**Suspected Drug Usage** 000
000 No
100 Yes
999 Unknown

**Test Status** 000
000 Test not given
001 Test refused
100 Test given
999 Unknown if tested

**Drug Test Type** 970
100 Blood
101 Urine
102 Both blood and urine
103 Saliva
198 Other
970 Not applicable
999 Unknown

**Drug Test Results** 970
Not applicable

## DRIVER ACTIONS

**Driver Actions at Time of Crash** 111
000 No contributing action

100 Disregard other road markings
101 Disregard other traffic signs
102 Failed to keep in proper lane
103 Failed to yield right-of-way
104 Followed too closely
105 Improper backing
106 Improper passing
107 Improper turn
108 Operated motor vehicle in inattentive, careless, negligent, or erratic manner
109 Operated motor vehicle in reckless or aggressive manner
110 Over-correcting or over-steering
111 Ran off roadway
112 Ran red light
113 Ran stop sign
114 Swerved or avoided due to wind,slippery surface,motor vehicle,object,non-motorist in roadway,etc.
115 Wrong side or wrong way

980 Other contributing action
999 Unknown

**Avoidance Maneuver** 000
000 No avoidance maneuver    102

100 Accelerating
101 Accelerating and steering left
102 Accelerating and steering right
103 Braking and steering left
104 Braking and steering right
105 Braking (lockup)
106 Braking (no lockup)
107 Braking (lockup unknown)
108 Releasing brakes
109 Steering left
110 Steering right

980 Other
999 Unknown

## CITATIONS

# MISSISSIPPI UNIFORM CRASH REPORT
## PASSENGER INFORMATION

2021067532

Rev. 2020-1

Agency # | 0022 | Case # | 2021101819 | Page | 8 | of | 10

## PASSENGER INFORMATION

### MOTOR VEHICLE # 1   PASSENGER # 1                                       UNBORN CHILD OF

| Name ☐ Unknown | | | | | Date of Birth | Age | Sex | 101 | Race |
|---|---|---|---|---|---|---|---|---|---|
| Austin | Hunter | Chamberlain | | | 12/21/2001 | 19 | 100 Female / 101 Male / 999 Unknown | | 103 |
| *First* | *Middle* | *Last* | *Suffix* | | | | | | |

| Address ☐ Unknown | | | | | | Phone Number | Ethnicity |
|---|---|---|---|---|---|---|---|
| 1060 Apalachee Trce | Bishop | | GA | 30621 | | | 101 |
| *Street* | *City* | | *State* | *Postal Code* | | | |

| Air Bags Deployed | Injury Status | Incident Responder | Restraint System | Used Improperly? | 999 | Seating Position | Ejection | Extrication |
|---|---|---|---|---|---|---|---|---|
| ☐ 000 Not deployed | 100 | 000 | 999 | 000 No / 100 Yes   999 Unknown | | 102 | 101 | 000 |
| ☒ 100 Front | | | | | | | | |
| ☐ 101 Side | Type of Medical Transportation | EMS Response Agency | | | | Facility Receiving Patient | | |
| ☐ 102 Curtain | | Coroner | | | | University Of Mississippi Medical Center - Grenada | | |
| ☐ 103 Other | 980 | EMS Response Run #   ☒ Unknown | | | | | | |
| ☐ 970 Not applicable | | | | | | | | |
| ☐ 999 Unknown | | | | | | | | |

### MOTOR VEHICLE #     PASSENGER #                                          UNBORN CHILD OF

| Name ☐ Unknown | | | | | Date of Birth | Age | Sex | | Race |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | 100 Female / 101 Male / 999 Unknown | | |
| *First* | *Middle* | *Last* | *Suffix* | | | | | | |

| Address ☐ Unknown | | | | | | Phone Number | Ethnicity |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| *Street* | *City* | | *State* | *Postal Code* | | | |

| Air Bags Deployed | Injury Status | Incident Responder | Restraint System | Used Improperly? | Seating Position | Ejection | Extrication |
|---|---|---|---|---|---|---|---|
| ☐ 000 Not deployed | | | | 000 No / 100 Yes   999 Unknown | | | |
| ☐ 100 Front | | | | | | | |
| ☐ 101 Side | Type of Medical Transportation | EMS Response Agency | | | Facility Receiving Patient | | |
| ☐ 102 Curtain | | | | | | | |
| ☐ 103 Other | | EMS Response Run #   ☐ Unknown | | | | | |
| ☐ 970 Not applicable | | | | | | | |
| ☐ 999 Unknown | | | | | | | |

### MOTOR VEHICLE #     PASSENGER #                                          UNBORN CHILD OF

| Name ☐ Unknown | | | | | Date of Birth | Age | Sex | | Race |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | 100 Female / 101 Male / 999 Unknown | | |
| *First* | *Middle* | *Last* | *Suffix* | | | | | | |

| Address ☐ Unknown | | | | | | Phone Number | Ethnicity |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| *Street* | *City* | | *State* | *Postal Code* | | | |

| Air Bags Deployed | Injury Status | Incident Responder | Restraint System | Used Improperly? | Seating Position | Ejection | Extrication |
|---|---|---|---|---|---|---|---|
| ☐ 000 Not deployed | | | | 000 No / 100 Yes   999 Unknown | | | |
| ☐ 100 Front | | | | | | | |
| ☐ 101 Side | Type of Medical Transportation | EMS Response Agency | | | Facility Receiving Patient | | |
| ☐ 102 Curtain | | | | | | | |
| ☐ 103 Other | | EMS Response Run #   ☐ Unknown | | | | | |
| ☐ 970 Not applicable | | | | | | | |
| ☐ 999 Unknown | | | | | | | |

Total # of Passengers: 1

## PASSENGER CODES

**Injury Status**
100 (K) Fatal injury
101 (A) Suspected serious injury
102 (B) Suspected minor injury
103 (C) Possible injury
104 (O) No apparent injury

**Race**
100 American Indian or Alaska Native
101 Asian or Pacific Islander
102 Black
103 White
999 Unknown

**Type of Medical Transportation**
000 Not transported
100 EMS air
101 EMS ground
200 Law enforcement
980 Other
999 Unknown

**Ejection**
000 Not ejected
100 Ejected, partially
101 Ejected, totally
970 Not applicable
999 Unknown

**Extrication**
000 No
100 Yes

**Ethnicity**
100 Hispanic
101 Other than Hispanic
999 Unknown

**Incident Responder**
000 No
100 EMS
101 Fire
102 Police
103 Tow operator
104 Transportation
(i.e. maintenance workers, safety service patrol operators, etc.)
980 Other
999 Unknown

**Restraint Systems**
100 None used - motor vehicle occupant
101 Booster Seat
102 Child restraint system - forward facing
103 Child restraint system - rear facing
104 Child restraint system - type unknown
105 Lap belt only used
106 Shoulder and lap belt used
107 Shoulder belt only used
108 Stretcher
109 Wheelchair
199 Restraint used - type unknown

200 No helmet
201 DOT-compliant motorcycle helmet
202 Not DOT-compliant motorcycle helmet
299 Unknown if DOT-compliant motorcycle helmet

970 Not applicable
980 Other
999 Unknown

**Seating Position**

| | Front | | | |
|---|---|---|---|---|
| Row | Left | Middle | Right | Unk |
| 1 | 100 | 101 | 102 | 199 |
| 2 | 200 | 201 | 202 | 299 |
| 3 | 300 | 301 | 302 | 399 |
| 4 | 400 | 401 | 402 | 499 |
| Other | 500 | 501 | 502 | 599 |
| Unk | 600 | 601 | 602 | 699 |

700 Unenclosed cargo area
701 Riding on motor vehicle exterior (non-trailing unit)
800 Trailing unit
801 Sleeper section of cab (truck)
898 Other enclosed cargo area
970 Not applicable
999 Unknown

CRASH REPORT - PASSENGER INFORMATION

# MISSISSIPPI UNIFORM CRASH REPORT
## DIAGRAM
Rev. 2020-1

2021067532

| Scene # | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 1 | | Agency # | 0022 | Case # | 2021101819 | Page | 9 | of | 10 |

**CRASH DIAGRAM**

N

Graysport Crossing Rd

V1

V1

V1

V1

V1

V1

V1

NOT TO SCALE

CRASH REPORT - DIAGRAM

**MISSISSIPPI UNIFORM CRASH REPORT**
**NARRATIVE**
Rev. 2020-1

2021067532

| Agency # | 0022 | Case # | 2021101819 | Page | 10 | of | 10 |

**CRASH NARRATIVE**

V1 WAS TRAVELING NORTH ON GRAYSPORT CROSSING ROAD, JUST NORTH OF STONEY BURKE ROAD. V1 LEFT THE ROADWAY ON THE EAST SIDE MAKING CONTACT WITH 2 TREES EJECTING THE FRONT SEAT PASSENGER. V1 THEN CROSSED THE ROADWAY ON THE WEST SIDE OF GRAYSPORT CROSSING ROAD MAKING CONTACT WITH ANOTHER TREE CAUSING THE VEHICLE TO FACE SOUTH.

FOR MORE INFORMATION REFERENCE INCIDENT CASE #2021101819

================================================================
================================================================
Disclaimer: All information below this line is auto-generated from report data.
================================================================
================================================================

Vehicle 1 Driver EMS Response Agency: UMMC
Vehicle 1 Passenger 1 Medical Transportation Type: Coroner
Vehicle 1 Passenger 1 EMS Response Agency: Coroner

CRASH REPORT - NARRATIVE

ARCH PARTNERS INS
3651 MARS HILL RD
WATKINSVILLE, GA 30677



PROGRESSIVE®
COMMERCIAL

**Named insured**

MTC CONSULTING LLC
1060 APALACHEE TRACE
BISHOP, GA 30621

Policy number:  02171740
Underwritten by:
Progressive Mountain Insurance Co
April 6, 2021
Policy Period: Jun 5, 2021 – Jun 5, 2022
Page 1 of  2

progressiveagent.com
Online Service
Make payments, check billing activity, print
policy documents, update your policy or
check the status of a claim.

1-706-850-8877
ARCH PARTNERS INS
Contact your agent for personalized service.

1-800-444-4487
For customer service if your agent is
unavailable or to report a claim.

# Commercial Auto Insurance Coverage Summary
# This is your Renewal Declarations Page

This Renewal Declarations Page is effective only if the minimum amount due to renew your policy is received or postmarked by June 5, 2021.

Your coverage begins on June 5, 2021 at 12:01 a.m.  This policy expires on June 5, 2022 at 12:01 a.m.

Your insurance policy and any policy endorsements contain a full explanation of your coverage. The policy limits shown for an auto may not be combined with the limits for the same coverage on another auto, unless the policy contract allows the stacking of limits. The policy contract is form 6912 (02/19). The contract is modified by forms 2852GA (02/19), 4757GA (02/19), 1303 (11/07), 6870 (06/04), 8518GA (09/89), Z311 (02/19), 4852GA (02/19), 4881GA (02/19), Z228 (01/11) and A274GA (02/19).

The named insured organization type is a corporation.

## Outline of coverage

| Description | Limits | Deductible | Premium |
|---|---|---|---|
| Liability To Others | | | |
| Bodily Injury and Property Damage Liability | $1,000,000 combined single limit | | |
| Uninsured Motorist - Reduced | | | |
| Bodily Injury and Property Damage | $1,000,000 combined single limit | | |
| Deductible Applies To Property Damage | | $250 | |
| Medical Payments | | | |
| Comprehensive | | | |
| See Auto Coverage Schedule | Limit of liability less deductible | | |
| Collision | | | |
| See Auto Coverage Schedule | Limit of liability less deductible | | |
| Rental Reimbursement | | | |
| See Auto Coverage Schedule | | | |
| Total 12 month policy premium | | | |

## Rated drivers

1. MICHAEL CHAMBERLAIN



PLAINTIFF'S
EXHIBIT
B-

4
Continued

Form 6489 GA (04/20)

Policy number: 02171740
MTC CONSULTING LLC
Page 2  of 2

## Auto coverage schedule

1.  2021 CHEVROLET SILVERADO C1500   Actual Cash Value (plus $2,000.00 Permanently Attached Equip)
    VIN: 3GCUYGEL8MG132947   Garaging Zip Code: 30621   Radius: 50 miles
    Personal use: Y   Body type: Pickup Truck

| Liability Premium | Liability Premium | UM-Red Premium | Med Pay Premium | | |
|---|---|---|---|---|---|
| | | | | | |

| Physical Damage Premium | Comp Deductible | Comp Premium | Collision Deductible | Collision Premium | |
|---|---|---|---|---|---|
| | $250 | | $500 | | |

| Other Coverages Premium | Rental Limit | Rental Premium | | | Auto Total |
|---|---|---|---|---|---|
| | $40  per day Max $1,200 | | | | |

### Premium discount

| Policy | |
|---|---|
| 02171740 | Paid In Full |

## Company officers

*[signature]*

Secretary

Form 6912 (02/19)

# COMMERCIAL AUTO POLICY

| INDEX OF POLICY PROVISIONS | PAGE |
|---|---|

**DUTIES IN THE EVENT OF AN ACCIDENT OR LOSS**............................................1

**GENERAL DEFINITIONS**............................................................................2

**PART I - LIABILITY TO OTHERS**

Insuring Agreement – Liability To Others ......................................................6

Additional Definitions Used in This Part Only ...............................................6

Additional Payments ..................................................................................8

Out-Of-State Coverage Extension ...............................................................9

Exclusions................................................................................................9

Limit of Liability ..................................................................................... 12

**PART II - DAMAGE TO YOUR AUTO**

Insuring Agreement – Collision Coverage ................................................. 13

Insuring Agreement – Comprehensive Coverage ........................................ 14

Insuring Agreement – Fire and Theft with Combined

    Additional Coverage (CAC) ................................................................... 14

Additional Coverage................................................................................ 14

Additional Payments ............................................................................... 14

Additional Definition Used in This Part Only .............................................. 15

Exclusions.............................................................................................. 15

Limit of Liability ..................................................................................... 16

Deductible ............................................................................................. 17

Salvage ................................................................................................. 17

No Benefit to Bailee ............................................................................... 17

Appraisal ............................................................................................... 18

Payment of Loss ..................................................................................... 18

Loss Payee Agreement............................................................................ 18

**GENERAL PROVISIONS** ........................................................................... 19

## COMMERCIAL AUTO POLICY

If **you** pay **your** premium when due, **we** will provide the insurance described in this policy.

## DUTIES IN THE EVENT OF AN ACCIDENT OR LOSS

For coverage to apply under this policy, **you** or the person seeking coverage must promptly report each **accident** or **loss** even if **you** or the person seeking coverage is not at fault. Refer to your policy documents for the claims phone number.

**You** or the person seeking coverage must also obtain and provide **us** the names and addresses of all persons involved in the **accident** or **loss**, the names and addresses of any witnesses, and the license plate numbers of the vehicles involved.

If **you** or the person seeking coverage cannot identify the owner or operator of a vehicle involved in the **accident**, or if theft or vandalism has occurred, **you** or the person seeking coverage must notify the police within 24 hours or as soon as practicable. However, for purposes of uninsured motorist coverage when the owner or operator of a vehicle involved in the accident cannot be identified, **you** or the person seeking coverage must notify the police no more than 30 days after the accident.

A person seeking coverage must:
1. cooperate with **us** in any matter concerning a claim or lawsuit;
2. provide any written proof of **loss** **we** may reasonably require;
3. allow **us** to take signed and recorded statements, including sworn statements and examinations under oath, which **we** may conduct outside the presence of **you**, a **relative**, or any person claiming coverage, and answer all reasonable questions **we** may ask as often as **we** may reasonably require;
4. promptly call **us** to notify **us** about any claim or lawsuit and send **us** any and all legal papers relating to any claim or lawsuit;
5. attend hearings and trials as **we** require;
6. submit to medical examinations at **our** expense by doctors **we** select as often as **we** may reasonably require;
7. authorize **us** to obtain medical and other records;
8. take reasonable steps after a **loss** to protect the **insured auto** from further **loss**. **We** will pay reasonable expenses incurred in providing that protection. If failure to provide such protection results in further loss, any additional damages will not be covered under this policy;
9. allow **us** to have access to an **insured auto** or other **auto** involved in an **accident** or **loss** and to have it inspected and appraised before its repair or disposal; and
10. authorize **us** access to **your** business or personal records as often as **we** may reasonably require.

## GENERAL DEFINITIONS

**The words and phrases below, whether in the singular, plural or possessive, have the following special meanings when appearing in boldface type in this policy, and in endorsements issued in connection with this policy, unless specifically modified.**

1. "**Accident**" means a sudden, unexpected and unintended event, or a continuous or repeated exposure to that event, that causes **bodily injury** or **property damage**.

2. "**Auto**" means a land motor vehicle or **trailer** designed for travel on public roads, or any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state or province where it is licensed or principally garaged. It does not include **mobile equipment**. Self-propelled vehicles with the following types of permanently attached equipment are **autos**, not **mobile equipment**:
   a. equipment designed and used primarily for:
      (i) snow removal;
      (ii) road maintenance, but not construction or resurfacing;
      (iii) street cleaning;
   b. cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and
   c. air compressors, pumps, and generators, including spraying, welding, building cleaning, geophysical exploration, lighting, and well-servicing equipment.

3. **"Bodily injury"** means bodily harm, sickness, or disease, including death that results from bodily harm, sickness, or disease.

4. **"Declarations"** or **"declarations page"** means the document prepared by **us** listing **your** policy information, which may include the types of coverage **you** have elected, the limit for each coverage, the cost for each coverage, the specifically described **autos** covered by this policy, and the types of coverage for each specifically described **auto.**

5. **"Employee"** includes a **leased worker** and a statutory employee. **Employee** does not include a **temporary worker.**

6. **"Insured auto"** or **"your insured auto"** means:
   a. Any **auto** specifically described on the **declarations page**; or
   b. An additional **auto** for Part I – Liability To Others and/or Part II – Damage To Your Auto on the date **you** become the owner if:
      (i) **you** acquire the **auto** during the policy period shown on the **declarations page**;
      (ii) **we** insure all **autos** owned by **you** that are used in **your** business;
      (iii) no other insurance policy provides coverage for that **auto**; and
      (iv) **you** tell **us** within 30 days after **you** acquire it that **you** want **us** to cover it for that coverage.

   If **you** add any coverage, increase **your** limits, or make any other changes to this policy during the 30-day period after **you** acquire an additional **auto**, these changes to **your** policy will not become effective until after **you** ask **us** to add the coverage, increase **your** limits, or make such changes for the additional **auto. We** may charge premium for the additional auto from the date **you** acquire the **auto**.

   With respect to Part I – Liability To Others, if **we** provide coverage for an additionally acquired **auto** in accordance with this paragraph b., **we** will provide the same coverage for such additional **auto** as **we** provide for any **auto** shown on the **declarations page.**

   With respect to Part II – Damage To Your Auto, if **we** provide coverage for an **auto you** acquire in addition to any **auto** specifically described on the **declarations page**, and the additional **auto** is:
      (i) a **private passenger auto**, **we** will provide the broadest coverage **we** provide for any **auto** shown on the **declarations page**; or
      (ii) any **auto** other than a **private passenger auto**, and **you** have purchased Physical Damage coverage for at least one **auto** other than a **private passenger auto**, **we** will provide the broadest coverage for which the newly acquired **auto** is eligible.

   c. Any replacement **auto** on the date **you** become the owner if:
      (i) **you** acquire the **auto** during the policy period shown on the **declarations page**;
      (ii) the **auto** that **you** acquire replaces one specifically described on the **declarations page** due to termination of **your** ownership of the replaced **auto** or due to mechanical breakdown of, deterioration of, or **loss** to the replaced **auto** that renders it permanently inoperable; and
      (iii) no other insurance policy provides coverage for that **auto**.
   If **we** provide coverage for a replacement **auto**, **we** will provide the same coverage for the replacement **auto** as **we** provide for the replaced **auto. We** will provide that coverage for a period of 30 days after **you** become the owner of such replacement **auto. We** will not provide any coverage after this 30-day period unless within this period **you** ask **us** to insure the replacement **auto. If you** add any coverage, increase **your** limits, or make any other changes to **your** policy during this 30-day period, these changes to **your** policy will not become effective until after **you** ask **us** to add the coverage, increase **your** limits, or make such changes.

7. **"Insured contract"** means:
   a. A lease of premises;
   b. A sidetrack agreement;
   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;
   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;
   e. That part of any other contract or agreement pertaining to **your** business (including an indemnification of a municipality in connection with work performed for a municipality) under which **you** assume the tort liability that is vicariously imposed on another for **your** negligence or that of **your employees** or agents; or

f.  That part of any contract or agreement, entered into as part of **your** business, for the rental of an **insured auto**. However, such contract or agreement shall not be considered an **insured contract** to the extent that it obligates **you** or any of **your employees** to pay for **property damage** to any **auto** rented or leased to **you** or any of **your employees**.

An "**insured contract**" does not include that part of any contract or agreement:

1.  That indemnifies a railroad for **bodily injury** or **property damage** arising out of construction or demolition operations within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass, or crossing; or
2.  That pertains to the loan, lease or rental of an **auto** to **you** or any of **your employees**, if the **auto** is loaned, leased or rented with a driver; or
3.  That holds a person or organization engaged in the business of transporting property by **auto** for hire harmless for **your** use of an **insured auto** over a route or territory that person or organization is authorized to serve by public authority.

8.  "**Leased worker**" means a person leased to **you** by a labor leasing firm under an agreement between **you** and the labor leasing firm to perform duties related to the conduct of **your** business. **Leased worker** does not include a **temporary worker.**

9.  "**Loss**" means sudden, direct and accidental loss or damage.

10. "**Mobile equipment**" means any of the following types of land vehicles, including, but not limited to, any attached machinery or equipment:
    a.  Bulldozers, farm implements and machinery, forklifts, and other vehicles designed for use principally off public roads;
    b.  Vehicles **you** use solely on premises **you** own or rent and on accesses to public roads from these premises, unless specifically described on the **declarations page** and not defined as **mobile equipment** under other parts of this definition;
    c.  Any vehicle that travels on crawler treads, or that does not require licensing in the state in which **you** reside or **your** business is licensed;
    d.  Vehicles, whether self-propelled or not, used primarily to provide mobility to permanently attached:
        (i)  Power cranes, shovels, loaders, diggers, or drills; or
        (ii) Road construction or resurfacing equipment, such as graders, scrapers or rollers.
    e.  Vehicles not described in Paragraphs a., b., c., or d. above that are not self-propelled and are used primarily to provide mobility to permanently attached equipment of the following types:
        (i)  Air compressors, pumps, and generators, including spraying, welding, building cleaning, geophysical exploration, lighting, and well-servicing equipment; or
        (ii) Cherry pickers and similar devices used to raise or lower workers.
    f.  Vehicles not described in Paragraphs a., b., c., or d. above that are self-propelled and used primarily for purposes other than transportation of persons or cargo.
    However, **mobile equipment** does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state or province where it is licensed or principally garaged.

11. "**Occupying**" means in, on, entering or exiting.

12. "**Personal vehicle sharing program**" means a system or process, operated by a business, organization, network, group, or individual, that facilitates the sharing of **private passenger autos** for use by individuals, businesses, or other entities.

13. "**Pollutants**" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

14. "**Private passenger auto**" means a land motor vehicle:
    a.  of the private passenger, pickup body, or cargo van type;
    b.  designed for operation principally upon public roads;
    c.  with at least four wheels; and
    d.  with a gross vehicle weight rating of 12,000 pounds or less, according to the manufacturer's specifications.
    However, **private passenger auto** does not include step-vans, parcel delivery vans, or cargo cutaway vans or other vans with cabs separate from the cargo area.

15. "**Property damage**" means physical damage to, destruction of, or loss of use of, tangible property.

16. "**Relative**" means any person residing in the household in which the named insured resides who is related to the named insured by blood, marriage, or adoption, including a ward or foster child. This term only applies if the named insured is a natural person.

17."**Temporary substitute auto**" means any **auto you** do not own while used with the permission of its owner as a temporary substitute for an **insured auto** that has been withdrawn from normal use due to breakdown, repair, servicing, loss or destruction. However, **temporary substitute auto** does not include any **auto** available for the regular or frequent use of **you**, a **relative**, or **your employees** unless that **auto** is insured under a separate policy of insurance that provides at least the minimum required limits of financial responsibility under the applicable state and federal laws.

18. "**Temporary worker**" means:
   a. a person who is furnished to **you** to substitute for a permanent **employee** on leave or to meet seasonal or short-term workload conditions; or
   b. a day laborer.

19. "**Trailer**" includes a semi-trailer and any piece of equipment used to convert a semi-trailer to a full trailer while it is attached to the semi-trailer.

20. "**We**", "**us**" and "**our**" mean the company providing this insurance as shown on the **declarations page**.

21. "**You**", "**your**" and "**yours**" refer to the named insured shown on the **declarations page**.

## PART I - LIABILITY TO OTHERS

### INSURING AGREEMENT - LIABILITY TO OTHERS

Subject to the Limits of Liability, if **you** pay the premium for liability coverage for the **insured auto** involved, **we** will pay damages, other than punitive or exemplary damages, for **bodily injury**, **property damage**, and **covered pollution cost or expense** for which an **insured** becomes legally responsible because of an **accident** arising out of the ownership, maintenance or use of that **insured auto**. However, **we** will only pay for the **covered pollution cost or expense** if the same **accident** also caused **bodily injury** or **property damage** to which this insurance applies.

**We** will settle or defend, at **our** option, any claim or lawsuit for damages covered by this Part I. **We** have no duty to settle or defend any lawsuit, or make any additional payments, after the Limit of Liability for this coverage has been exhausted by payment of judgments or settlements.

### ADDITIONAL DEFINITIONS USED IN THIS PART ONLY

A. When used in Part I - Liability To Others, **insured** means:
   1. **You** with respect to an **insured auto**.
   2. Any person while using, with **your** permission, and within the scope of that permission, an **insured auto you** own, hire, or borrow except:
      (a) Any person while he or she is working in a business of selling, leasing, repairing, parking, storing, servicing, delivering or testing **autos**, unless that business is **yours** and it was so represented in **your** application.
      (b) Any person while he or she is moving property to or from an **insured auto**, other than one of **your employees**, partners (if you are a partnership), members (if you are a limited liability company), or officers or directors (if you are a corporation).
      (c) The owner or anyone else from whom the **insured auto** is leased, hired, or borrowed. However, this exception does not apply if the **insured auto** is specifically described on the **declarations page**.
      (d) The employees or agents of an owner or anyone else from whom the **insured auto** is leased, hired or borrowed. However, this exception does not apply if the **insured auto** is specifically described on the **declarations page**.
      For purposes of this subsection A.2., an **insured auto you** own includes any **auto** specifically described on the **declarations page**.

5

3. Any other person or organization, but only with respect to the legal liability of that person or organization for acts or omissions of any person otherwise covered under this Part I - Liability To Others. If **we** make a filing or submit a certificate of insurance on **your** behalf with a regulatory or governmental agency, the term "**insured**" as used in such filing or certificate, and in any related endorsement, refers only to the person or organization named on such filing, certificate or endorsement.

B. When used in Part I - Liability To Others, **insured auto** also includes:
   1. **Trailers** designed primarily for travel on public roads, while connected to **your insured auto** that is a power unit;
   2. **Mobile equipment** while being carried or towed by an **insured auto**;
   3. Any **temporary substitute auto**; and
   4. **Mobile equipment** that is:
      a. owned by **you;**
      b. leased, hired, or borrowed by **you** and **you** have purchased either "Hired Auto Coverage" or "Any Automobile Legal Liability Coverage" from **us**; or
      c. not owned, leased, hired, or borrowed by **you** and **you** have purchased either "Employer's Non-Ownership Liability Coverage" or "Any Automobile Legal Liability Coverage" from **us**.

      However, **mobile equipment** meeting any of those three criteria will qualify only if at the time of **loss** it is being:
      a. used in **your** business;
      b. operated on a public highway; and
      c. operated in a state or province where it is subject to a compulsory or financial responsibility law or other motor vehicle insurance law.

C. When used in Part I - Liability To Others, "**covered pollution cost or expense**" means any cost or expense arising out of:
   1. Any request, demand, order, or statutory or regulatory requirement; or
   2. Any claim or suit by or on behalf of a governmental authority demanding that the **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of, **pollutants**.

   **Covered pollution cost or expense** does not include any cost or expense arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of **pollutants**:
   a. That are, or that are contained in any property that is:
      (i) Being transported or towed by, handled, or handled for movement into, onto, or from, the **insured auto**;
      (ii) Otherwise in the course of transit by or on behalf of the **insured**; or
      (iii) Being stored, disposed of, treated, or processed in or upon the **insured auto**;
   b. Before the **pollutants** or any property in which the **pollutants** are contained are moved from the place where they are accepted by the **insured** for movement into or onto the **insured auto**; or
   c. After the **pollutants** or any property in which the **pollutants** are contained are moved from the **insured auto** to the place where they are finally delivered, disposed of, or abandoned by the **insured**.

   The above Paragraph a. of this definition does not apply to fuels, lubricants, fluids, exhaust gasses, or other similar **pollutants** that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the **insured auto** or its parts if:
   (1) The **pollutants** escape, seep, migrate, or are discharged, dispersed or released directly from an **insured auto** part designed by its manufacturer to hold, store, receive or dispose of such **pollutants** and is a part that would be required for the customary operation of the **insured auto**; and
   (2) The **bodily injury**, **property damage** or **covered pollution cost or expense** does not arise out of the operation of any equipment listed in Paragraphs b. and c. of the definition of **auto**.

   The above Paragraphs b. and c. of this definition do not apply to **accidents** that occur away from premises owned by or rented to an **insured** with respect to **pollutants** not in or upon an **insured auto** if:
   (1) The **pollutants** or any property in which the **pollutants** are contained are upset, overturned or damaged as a result of the maintenance or use of an **insured auto**; and
   (2) The discharge, dispersal, release or escape of the **pollutants** is caused directly by such upset, overturn or damage.

**ADDITIONAL PAYMENTS**

In addition to **our** Limit of Liability, **we** will pay for an **insured**:

1. all expenses that **we** incur in the settlement of any claim or defense of any lawsuit;

2. interest accruing after entry of judgment on that part of the judgment that does not exceed **our** Limit of Liability. This payment does not apply if **we** have not been given notice of suit or the opportunity to defend an **insured**. **Our** payment, offer in writing, or deposit in court of that part of the judgment which does not exceed **our** Limit of Liability ends **our** duty to pay interest which accrues after the date of **our** payment, written offer, or deposit;

3. the premium on any appeal bond or attachment bond required in any lawsuit **we** defend. **We** have no duty to purchase a bond in a principal amount exceeding **our** Limit of Liability, and **we** have no duty to apply for or furnish these bonds;

4. up to $2,000 for cost of bail bonds required because of an **accident we** cover. **We** have no duty to apply for or furnish these bonds;

5. reasonable expenses incurred by an **insured** at **our** request, including loss of earnings up to $250 a day; and

6. all court costs taxed against the **insured** in any "suit" against the **insured** we defend. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the **insured**.

**OUT-OF-STATE COVERAGE EXTENSION**

If an **accident** to which this Part I applies occurs in any state, territory, or possession of the United States of America, Puerto Rico, or any province or territory of Canada, other than the state in which an **insured auto** is principally garaged, and the state, province, territory or possession has:

1. a financial responsibility or similar law requiring limits of liability for **bodily injury** or **property damage** higher than the limits shown on the **declarations page**, this policy will provide the higher limit; or

2. a compulsory insurance or similar law requiring a non-resident to maintain insurance whenever the non-resident uses an **auto** in that state, province, territory or possession, this policy will provide the greater of:
   a. the required minimum amounts and types of coverage; or
   b. the Limits of Liability under this policy.

This extension does not apply to the limit or limits specified by any law governing commercial carriers of passengers or property.

**We** will not pay anyone more than once for the same elements of loss because of this extension.

**EXCLUSIONS - PLEASE READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE FOR AN ACCIDENT OR LOSS WILL NOT BE AFFORDED UNDER THIS PART I - LIABILITY TO OTHERS.**
Coverage under this Part I, including **our** duty to defend, does not apply to:

1. **Expected or Intended Injury**
   **Bodily injury** or **property damage** either expected by or caused intentionally by or at the direction of any **insured**.

2. **Contractual**
   Any liability assumed by an **insured** under any contract or agreement, unless the agreement is an **insured contract** that was executed prior to the occurrence of any **bodily injury** or **property damage**.

   However, this exclusion does not apply to liability for damages that an **insured** would have in the absence of the contract or agreement.

3. **Worker's Compensation**

Any obligation for which an **insured** or an insurer of that **insured**, even if one does not exist, may be held liable under workers' compensation, unemployment compensation, disability benefits law, or any similar law.

4. **Nuclear Energy Liability**

An **accident** for which any person is insured under nuclear energy liability insurance. This exclusion applies even if the limits of that insurance are exhausted.

5. **Employee Indemnification and Employer's Liability**

**Bodily injury** to:

a. An **employee** of any **insured** arising out of or within the course of:
   (i) That **employee's** employment by any **insured**; or
   (ii) Performing duties related to the conduct of any **insured's** business; or
b. The spouse, child, parent, brother or sister of that **employee** as a consequence of Paragraph a. above.

This exclusion applies:

a. Whether the **insured** may be liable as an employer or in any other capacity; and
b. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to **bodily injury** to a domestic **employee** if benefits are neither paid nor required to be provided under any workers' compensation, disability benefits, or similar law, or to liability for **bodily injury** assumed by the **insured** under an **insured contract**. For the purposes of this policy, a domestic **employee** is a person engaged in household or domestic work performed principally in connection with a residence premises.

6. **Fellow Employee**

**Bodily injury** to:

a. a fellow **employee** of an **insured** injured while within the course of their employment or while performing duties related to the conduct of **your** business.
b. the spouse, child, parent, brother, or sister of that fellow **employee** as a consequence of Paragraph a. above.

7. **Care, Custody or Control**

**Property damage** to, towing or removal expense for, or **covered pollution cost or expense** involving, any property owned by, rented to, being transported by, used by, or in the care, custody or control of any **insured**, including any motor vehicle operated or being towed. But this exclusion does not apply to liability assumed under a sidetrack agreement.

8. **Movement of Property by Mechanical Device**

**Bodily injury** or **property damage** resulting from or caused by the movement of property by a mechanical device, other than a hand truck, not attached to an **insured auto**.

9. **Handling of Property**

**Bodily injury** or **property damage** resulting from or caused by the handling of property:

a. before it is moved from the place where it is accepted by the **insured** for movement into or onto **your insured auto**; or
b. after it has been moved from **your insured auto** to the place where it is finally delivered by the **insured**.

10. **Pollution**

**Bodily injury** or **property damage** resulting from or caused by the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of any **pollutants**:

a. That are, or that are contained in any property that is:
   (i) Being transported or towed by, handled, or handled for movement into, onto, or from, the **insured auto**;
   (ii) Otherwise in the course of transit by or on behalf of the **insured**; or
   (iii) Being stored, disposed of, treated, or processed in or upon the **insured auto**;
b. Before the **pollutants** or any property in which the **pollutants** are contained are moved from the place where they are accepted by

8

the **insured** for movement into or onto the **insured auto**; or

c. After the **pollutants** or any property in which the **pollutants** are contained are moved from the **insured auto** to the place where they are finally delivered, disposed of, or abandoned by the **insured**.

The above Paragraph a. of this exclusion does not apply to fuels, lubricants, fluids, exhaust gasses, or other similar **pollutants** that are needed for or result from the normal electrical, hydraulic, or mechanical functioning of the **insured auto** or its parts, if:

(1) The **pollutants** escape, seep, migrate, or are discharged, dispersed, or released directly from an **insured auto** part designed by its manufacturer to hold, store, receive, or dispose of such **pollutants** and is a part that would be required for the customary operation of the **insured auto**; and

(2) The **bodily injury**, **property damage**, or **covered pollution cost or expense** does not arise out of the operation of any equipment listed in Paragraphs b. and c. of the definition of **auto**.

The above Paragraphs b. and c. of this exclusion do not apply to **accidents** that occur away from premises owned by or rented to an **insured** with respect to **pollutants** not in or upon an **insured auto** if:

(1) The **pollutants** or any property in which the **pollutants** are contained are upset, overturned, or damaged as a result of the mainte-nance or use of an **insured auto**; and

(2) The discharge, dispersal, seepage, migration, release, or escape of the **pollutants** is caused directly by such upset, overturn, or damage.

11. **Racing**

   **Bodily injury** or **property damage** arising out of **you** or an **insured** participating in, or preparing for, a prearranged or organized racing, speed or demolition contest, stunting activity, or performance contest.

12. **War**

   **Bodily injury** or **property damage** arising directly or indirectly out of:

   a. War, including undeclared or civil war;

   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

13. **Operations**

   **Bodily injury**, **property damage**, or **covered pollution cost or expense** arising out of the operation of:

   a. any equipment listed in Paragraphs b. and c. of the definition of **auto**; or

   b. machinery or equipment that is on, attached to, or part of, a land vehicle that meets the definition of **mobile equipment**.

14. **Completed Operations**

   **Bodily injury** or **property damage** arising out of, or caused by, **your** work after that work has been completed or abandoned.

   For purposes of this exclusion, **your** work means:

   a. Work or operations performed by **you** or on **your** behalf;

   b. Materials, parts, or equipment furnished in connection with such work or operations; and

   c. The delivery of liquids.

   **Your** work includes warranties or representations made at any time with respect to the fitness, quality, durability, or performance of any of the items included in Paragraphs a., b., or c. above.

   **Your** work will be deemed completed at the earliest of the following times:

   a. When all of the work called for in **your** contract has been completed.

   b. When all of the work to be done at a particular site has been completed if **your** contract calls for work at more than one site.

   c. When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

   Work that may need service, maintenance, correction, repair, or replacement, but which is otherwise complete, will be treated as

completed.

### 15. Criminal Acts

**Bodily injury** or **property damage** caused by, or reasonably expected to result from, a criminal act or omission of an **insured person.** This exclusion applies regardless of whether that **insured person** is actually charged with, or convicted of, a crime. For purposes of this exclusion, criminal acts or omissions do not include traffic violations.

### 16. Vehicle Sharing--Private Passenger Autos

**Bodily injury** or **property damage** arising out of the use of an **insured auto** that is a **private passenger auto** while being used in connection with a **personal vehicle sharing program.** This exclusion does not apply to the operation of an **insured auto** by **you.**

## LIMIT OF LIABILITY

**We** will pay no more than the Limit of Liability shown on the **declarations page** for this coverage for the **insured auto** involved in the **accident** regardless of:

1.  the number of premiums paid;
2.  the number of **insured autos** or trailers shown on the **declarations page**;
3.  the number of policies issued by **us**;
4.  the number of vehicles or **insureds** involved in an **accident**; or
5.  the number of claims or lawsuits arising out of an **accident**;

subject to the following:

### 1.  Coverage Required by Filings

If **we** have filed a certificate of insurance on **your** behalf with any regulatory or governmental agency, and:

(i)   **we** are required to pay any judgment entered against **you**; or
(ii)  **we** agree to settle a claim or lawsuit;

for **bodily injury, property damage,** or **covered pollution cost or expense** arising out of an **accident** or **loss** otherwise not covered under the terms of this policy solely because of such certificate of insurance, **we** will be obligated to pay no more than the minimum amount required by that agency or applicable law. If any payment is based solely on such certificate, **you** must reimburse **us** in full for **our** payment, including legal fees and costs **we** incurred, whether the payment is made as a result of judgment or settlement.

### 2.  Combined Bodily Injury and Property Damage Limits

Subject to the terms of Section 1 above, if **your declarations page** indicates that combined **bodily injury** and **property damage** limits apply for "each accident" or "combined single limit" applies, the most **we** will pay for the aggregate of all damages and **covered pollution cost or expense** combined, resulting from any one **accident**, is the combined liability insurance limit shown on the **declarations page** for the **insured auto** involved in the **accident**.

### 3.  Separate Bodily Injury Liability and Property Damage Liability Limits

Subject to the terms of Section 1 above, if **your declarations page** indicates that separate **bodily injury** liability and **property damage** liability limits apply:

a.  The "each person" **bodily injury** liability limit listed on the **declarations page** for the **insured auto** involved in the **accident** is the maximum **we** will pay for **bodily injury** sustained by any one person in any one **accident**, and that "each person" maximum limit will apply to the aggregate of claims made for such **bodily injury** and any and all claims derived from such **bodily injury**, including, but not limited to, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death.

b.  Subject to the **bodily injury** liability limit for "each person", the "each accident" **bodily injury** liability limit listed on the **declarations page** for the **insured auto** involved in the **accident** is the maximum **we** will pay for **bodily injury** sustained by two or more persons in any one **accident**, including all derivative claims which include, but are not limited to, loss of society, loss of companionship, loss

of services, loss of consortium, and wrongful death.

c.  The "each accident" **property damage** liability limit listed on the **declarations page** for the **insured auto** involved in the **accident** is the maximum **we** will pay for the aggregate of all **property damage** and **covered pollution cost or expense** combined, sustained in any one **accident**.

For the purpose of determining **our** Limit of Liability under Sections 1., 2., and 3. above, all **bodily injury**, **property damage**, and **covered pollution cost or expense**, resulting from continuous or repeated exposure to substantially the same event, shall be considered as resulting from one **accident**.

An **insured auto** and any **trailer** or **trailers** attached thereto shall be deemed to be one **auto** with respect to **our** Limit of Liability.

When coverage is afforded for an **accident** involving an **insured auto** that, at the time of loss:
   a.  is a **trailer** specifically described on the **declarations page**; and
   b.  is attached to any power unit that is not an **insured auto** specifically described on the **declarations page**;
the maximum amount we will pay will be limited to the lesser of an amount not to exceed the applicable compulsory or financial responsibility law limits of the state identified in **your** address as shown on the **declarations page** or the Limit of Liability shown on the **declarations page**.

Any amount payable under Part I - Liability To Others to or for an injured person will be reduced by any payment made to that person under any Uninsured Motorist Coverage, Underinsured Motorist Coverage, Personal Injury Protection Coverage, or Medical Payments Coverage provided by this policy.

## PART II - DAMAGE TO YOUR AUTO

### INSURING AGREEMENT - COLLISION COVERAGE

Subject to the Limits of Liability, if **you** pay the premium for Collision Coverage, **we** will pay for **loss** to **your insured auto** and its **permanently attached equipment** when it collides with another object or overturns.

### INSURING AGREEMENT - COMPREHENSIVE COVERAGE

Subject to the Limits of Liability, if **you** pay the premium for Comprehensive Coverage, **we** will pay for **loss** to **your insured auto** and its **permanently attached equipment** from any cause other than those covered under Collision Coverage.

Any **loss** caused by missiles, falling objects, fire, theft, collision with an animal, or accidental glass breakage shall be deemed a Comprehensive **loss**. However, **you** have the option of having glass breakage caused by a covered **auto's** collision or overturn considered a **loss** under Collision Coverage.

### INSURING AGREEMENT - FIRE AND THEFT WITH COMBINED ADDITIONAL COVERAGE (CAC)

Subject to the Limits of Liability, if **you** pay the premium for Fire and Theft with Combined Additional Coverage (CAC), **we** will pay for **loss** to **your insured auto** and its **permanently attached equipment** caused by:

1.  fire, lightning or explosion;
2.  theft;
3.  windstorm or hail;
4.  earthquake;
5.  flood or rising water;
6.  malicious mischief or vandalism;
7.  the stranding, sinking, burning, collision, or derailment of any conveyance in or upon which **your insured auto** is being transported; or
8.  collision with a bird or animal.

No **losses** other than those specifically described above will be covered under Part II of this policy.

## ADDITIONAL COVERAGE

### 1.  Transportation Expenses

**We** will pay up to $30 per day, up to a maximum of $900, for temporary transportation expenses incurred by **you** because of the theft of an **insured auto** that is a **private passenger auto.** This coverage applies only to those **insured autos** for which **you** carry Comprehensive Coverage. **We** will pay for temporary transportation expenses incurred during the period beginning 48 hours after **you** report the theft to **us,** and ending when the **insured auto** is returned to use, or **we** pay for its **loss.**

### 2.  Coverage for Temporary Substitute Autos

If a **temporary substitute auto** is involved in a **loss,** **we** will provide the same coverage and deductible that would have applied to the **insured auto** for which it is a substitute. The most **we** will pay for **loss** to a **temporary substitute auto** is the lesser of the actual cash value at the time of **loss** or the cost of repairing or replacing the damaged or stolen property with like kind and quality, less the applicable deductible.

### 3.  Pet Injury Coverage

If **you** have purchased Collision Coverage for at least one **insured auto** listed on the **declarations page**, Pet Injury Coverage is included in **your** policy.

#### Insuring Agreement

If a **pet** sustains injury or death while inside an **insured auto** at the time of a **loss** covered under Collision, Comprehensive, or Fire & Theft with Combined Additional Coverage, **we** will pay:
1.  for reasonable and customary veterinary fees incurred by **you** or the owner of the **pet** if the **pet** is injured in, or as a direct result of, the covered **loss**; or
2.  a death benefit if the **pet** dies in, or as a direct result of, the covered **loss.**

In the event of a covered **loss** due to the theft of an **insured auto**, **we** will provide the death benefit provided the **pet** is not recovered.

#### Limits of Liability

The following additional Limits of Liability apply to Pet Injury Coverage:
1.  The most **we** will pay for all damages in any one **loss** is a total of $1,000 regardless of the number of pets involved.
2.  If the **pet** dies in, or as a direct result of, a covered **loss**, **we** will provide a death benefit of $1,000, less any payment **we** made toward veterinary expenses for the **pet**.
3.  No deductible shall apply to this coverage.

## ADDITIONAL PAYMENTS

If **you** have paid the premium for Comprehensive Coverage, Collision Coverage, or Fire and Theft with Combined Additional Coverage, then in addition to **our** Limit of Liability, **we** will pay:

1.  All reasonable expenses necessary to return a stolen **insured auto** to **you**, unless **we** determine the auto to be a total loss.
2.  All reasonable expenses necessary to remove an **insured auto** from the site of an **accident** or **loss** and transport it to a repair facility.

## ADDITIONAL DEFINITIONS USED IN THIS PART ONLY

When used in Part II - Damage To Your Auto:

1.  **"Finance agreement"** means a written lease or loan contract, entered into as a part of **your** business, pertaining to the lease or purchase by **you** of an **insured auto**, and subject to a valid promissory note or written payment obligation contained in a lease, and security agreement or other written agreement establishing a security interest, executed concurrently with a purchase or lease of the **insured auto** that is commensurate with fair market value.

2.  **"Permanently attached equipment"** or **PAE** means equipment and devices that are permanently installed or attached to **your insured auto. Permanently attached equipment** also includes:
    a. accessories designed to work as part of the equipment or devices;
    b. load securing equipment and devices; and
    c. custom paint or decals.

3.  **"Pet"** means a dog or cat occupying an **insured auto** with **your** express or implied consent.

**EXCLUSIONS** - PLEASE READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE FOR AN ACCIDENT OR LOSS WILL NOT BE AFFORDED UNDER THIS PART II - DAMAGE TO YOUR AUTO.

1.  **We** will not pay for loss caused by or resulting from any of the following. Such **loss** is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the **loss.**
    a. **War or Military Action**
    (1) war, including undeclared or civil war;
    (2) warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or agents;
    (3) insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.
    b. **Nuclear Hazard**
    (1) the explosion of any weapon employing atomic fission or fusion; or
    (2) nuclear reaction or radiation, or radioactive contamination, however caused.

2.  **We** will not pay for **loss** to any sound equipment, video equipment, or transmitting equipment not permanently installed in **your insured auto**, or to tapes, records, compact discs, DVDs, or similar items used with sound or video equipment.

3.  **We** will not pay for **loss** to radar detectors or to any other equipment or device designed or used to detect speed measuring equipment, or to any equipment designed or used to jam or disrupt any speed measuring equipment.

4.  **We** will not pay for **loss** due and confined to:
    a. wear and tear, freezing, mechanical or electrical breakdown, or structural failure caused by material fatigue, decomposition, or corrosion.
    b. blowouts, punctures, flat spots, or other road damage to tires.
    But, coverage does apply if the damage is the result of other **loss** covered by the policy.

5.  **We** will not pay for **loss** incurred while **your insured auto** is used in any illicit trade or transportation, or due to **your insured auto's** destruction or confiscation by governmental or civil authorities because **you**, or, if **you** are a natural person, any **relative**, engaged in illegal activities.

6.  **We** will not pay for **loss** caused by **you** or an insured participating in or preparing for a prearranged or organized racing, speed or demolition contest, stunting activity or performance contest.

7.  **We** will not pay for **loss** to an **insured auto** for diminution of value.

8.  If **we** pay **your** financial obligation under a **finance agreement**, **we** will not pay:
    a. Overdue **finance agreement** payments including any type of late fees or penalties;
    b. Financial penalties imposed under a **finance agreement** for excessive use, abnormal wear and tear, or high mileage;

13

c.  Security deposits not normally refunded by the lessor or lender;

d.  Cost of **finance agreement** related products such as, but not limited to, Credit Life Insurance, Health, Accident or Disability insurance purchased by **you**;

e.  Carryover balances from previous **finance agreements** or other amounts not associated with the **insured auto**; or

f.  Unpaid principal included in the outstanding **finance agreement** balance that was not used by **you** to purchase the **insured auto**.

9.  **We** will not pay for **loss** to an **insured auto** while being used in connection with a **personal vehicle sharing program**. This exclusion does not apply to the operation of an **insured auto** by **you.**

## LIMIT OF LIABILITY

1.  If the **declarations page** shows actual cash value for the **insured auto**, then the most **we** will pay for **loss** to **your insured auto** is the least of:

    a.  the actual cash value of the stolen or damaged property at the time of **loss**;

    b.  the amount necessary to replace the stolen or damaged property with other of like kind and quality; or

    c.  the amount necessary to repair the damaged property to its pre-loss physical condition; however if **we** determine that the **insured auto** is a total loss, **we** may, at **our** option, pay the lesser of the actual cash value, or the cost to replace, rather than repair, the **insured auto**.

    **Permanently attached equipment (PAE)** is covered to the limit shown on the **declarations page**. This limit includes transfer of undamaged **PAE** to another **insured auto**, but will not increase the **PAE** limit shown on the **declarations page**.

2.  If the **declarations page** shows Stated Amount for the **insured auto**, then the most **we** will pay for **loss** to **your insured auto** is the least of:

    a.  the actual cash value of the stolen or damaged property at the time of **loss**;

    b.  the amount necessary to replace the stolen or damaged property with other of like kind and quality;

    c.  the amount necessary to repair the damaged property to its pre-loss physical condition; however if **we** determine that the **insured auto** is a total loss, **we** may, at **our** option, pay the lesser of the actual cash value, Stated Amount, or the cost to replace, rather than repair, the **insured auto**; or

    d.  the applicable Stated Amount of the property as shown on the **declarations page**.

    However, if there is a **finance agreement** in place for the **insured auto**, the most **we** will pay for a total loss where the outstanding financial obligation under a **finance agreement** for the **insured auto** at the time of the **loss** is:

    a.  greater than the actual cash value of the **insured auto** at the time of **loss**; and

    b.  the Stated Amount shown on the **declarations page** is greater than the actual cash value of the **insured auto** at the time of **loss**; is the lesser of:

    a.  the applicable Stated Amount of the **insured auto** as shown on the **declarations page**; or

    b.  the outstanding financial obligation under a **finance agreement** for the **insured auto** at the time of the **loss**.

    **PAE** is included in the value of the **insured auto**, but only to the extent the value of the equipment has been included in the Stated Amount shown on the **declarations page**. The transfer of undamaged **PAE** to another **insured auto** will be covered if the aggregate of all damage and cost to move is within the Stated Amount shown on the **declarations page**.

3.  Payments for **loss** covered under Collision Coverage, Comprehensive Coverage, or Fire and Theft with Combined Additional Coverage are subject to the following provisions:

    a.  in determining the amount necessary to repair damaged property to its pre-loss physical condition, the amount to be paid by **us**:

        (i)  shall not exceed the prevailing competitive labor rates charged in the area where the property is to be repaired, and the cost of repair or replacement parts and equipment, as reasonably determined by **us**; and

        (ii)  will be based on the cost of repair or replacement parts and equipment which may be new, reconditioned, remanufactured, or used, including, but not limited to:

            (a)  original manufacturer parts or equipment; and

            (b)  non-original manufacturer parts or equipment;

    b.  the actual cash value is determined by the market value, age and condition of the **auto** at the time the **loss** occurs; and

   c.  duplicate recovery for the same elements of damages is not permitted.

4.  To determine the amount necessary to repair the damaged property to its pre-loss physical condition as referred to in Paragraph 1.c., the total cost of necessary repairs will be reduced by:
   a.  the cost of labor, parts and materials necessary to repair or replace damage, deterioration, defects, or wear and tear on exterior body parts, windshields and other glass, wheels, and paint, that existed prior to the **accident** and that is eliminated as a result of the repair or replacement of property damaged in the **loss**. This adjustment for physical condition includes, but is not limited to, broken, cracked or missing parts, rust, dents, scrapes, gouges, and peeling paint;
   b.  an amount for depreciation (also referred to as betterment) that represents a portion of the cost of mechanical parts (parts that wear out over time and have a useful life typically shorter than the life of the **auto** as a whole) that are installed as replacements for existing mechanical parts that were defective, inoperable or nonfunctional prior to the **accident**, which **we** deem necessary to replace in the course of repair; and
   c.  an amount for depreciation (also referred to as betterment) on high-wear parts that have a measurable life, such as tires, batteries, engine or transmission, determined by the proportional increase in the useful life of the replacement part when compared to the replaced part. For example, if **we** replace a 24-month old battery that had a manufacturer's rated life of 60 months with a new 60-month rated battery, **our** payment for the battery is reduced by 40 percent and **you** are responsible to pay that 40 percent portion of the cost of the battery.

## DEDUCTIBLE

For each **loss** that qualifies for coverage under Comprehensive, Collision, or Fire and Theft with Combined Additional Coverage, the deductible shown on the **declarations page** for the **insured auto** will be applied. A single deductible will be applied to any **loss**. In the event there are different deductible amounts applicable to the **loss**, the higher deductible will be applied. In all events, the deductible will be applied against the limit of liability. If a **loss** involves another coverage added by endorsement to this policy, only one deductible will apply to the entire **loss** event.

If **your insured auto** is an additional **auto** that **you** have requested to be added to **your** policy within 30 days of **your** acquisition of the **auto**, and no deductible has been designated for the additional **auto** prior to the **loss**, then:
1.  when the **insured auto** is a **private passenger auto**, **we** will apply the lowest deductible listed for any one **auto** listed on the **declarations page**; or
2.  when the **insured auto** is an **auto** other than a **private passenger auto**, **we** will apply the highest deductible listed for any one **auto** listed on the **declarations page**.

No deductible will apply to a **loss** to window glass when the glass is repaired instead of replaced.

No deductible will apply to payments made under the Additional Payments section for expenses necessary to return a stolen **insured auto** to **you**.

## SALVAGE

If **we** pay the actual cash value of **your insured auto** less the deductible, or if **we** pay the amount necessary to replace **your insured auto** less the deductible, **we** are entitled to all salvage. If **your insured auto** is a total loss and **we** pay the applicable Limit of Liability or Stated Amount as shown on the **declarations page** less the deductible, **we** are entitled to the same percent of salvage as **our** payment bears to the actual cash value of **your insured auto**.

## NO BENEFIT TO BAILEE

No bailee or carrier shall benefit, directly or indirectly, from this Part II - Damage To Your Auto.

## APPRAISAL

If **we** cannot agree with **you** on the amount of **your loss**, then **you** or **we** may demand an appraisal of the **loss**. Each party shall appoint a

competent and disinterested appraiser. If the appraisers agree on the amount of the **loss**, they shall submit a written report to **us** and this shall be deemed to be the amount of the **loss**.

If the appraisers cannot agree on the amount of the **loss** within a reasonable time, they shall then choose a competent, impartial umpire, provided that if they cannot agree on an umpire within 15 days, either **you** or **we** may petition a judge of a court having jurisdiction to choose an umpire. The disagreement of the appraisers shall then be submitted to the umpire. Subject to the provisions of the policy, a written agreement signed by both appraisers or by one appraiser and the umpire will be the amount of the **loss.**

**You** must pay **your** fees and expenses and those of **your** appraiser. **We** will pay **our** fees and expenses and those of **our** appraiser. All other expenses of the appraisal, including payment of the umpire if one is necessary, will be shared equally by **you** and **us**.

By agreeing to an appraisal, **we** do not waive any of **our** rights under any other part of this policy, including **our** right to deny the claim.

### PAYMENT OF LOSS

At **our** option, **we** may pay the **loss** in money, or repair or replace the damaged or stolen property. **We** may, at any time before the **loss** is paid or the property is replaced, return, at **our** expense, any stolen property either to **you** or to the address shown on the **declarations page**, with payment for the resulting damage less any applicable deductibles. **We** may keep all or part of the property at the agreed or appraised value, but there shall be no abandonment to **us**.

**We** may make payment for a **loss** either to **you** or the owner of the property. Payment for a **loss** is required only if **you** have fully complied with the terms of this policy.

**You** must convey title to and possession of the damaged, destroyed, or stolen property to **us** if **we** pay the actual cash value of **your insured auto** less the deductible or if **we** pay the amount necessary to replace **your insured auto** less the deductible.

### LOSS PAYEE AGREEMENT

**We** will pay the Loss Payee named in the policy for **loss** to **your insured auto**, as the interest of the Loss Payee may appear.

This insurance covers the interest of the Loss Payee unless:
1. the **loss** results from fraudulent acts or omissions on **your** part; or
2. the **loss** is otherwise not covered under the terms of this policy.

Cancellation, nonrenewal, termination, or voiding ends this agreement as to the Loss Payee's interest.

If **we** make any payment to the Loss Payee, **we** will obtain the Loss Payee's rights against any other party.

### GENERAL PROVISIONS

1. **Policy Period and Territory**

   This policy applies only to **accidents** and **losses** occurring during the policy period shown on the **declarations page** and that occur within a state, territory, or possession of the United States of America, or a province or territory of Canada, or while an **insured auto** is being transported between their ports.

2. **Policy Changes**

   This policy, **your** insurance application (which is made a part of this policy as if attached hereto), the **declarations page**, as amended, and endorsements to this policy issued by **us** contain all the agreements between **you** and **us**. Subject to the following, its terms may not be changed or waived except by an endorsement issued by **us**.

The premium for this policy is based on information **we** have received from **you** or other sources. **You** agree to cooperate with **us** in determining if this information is correct and complete, and **you** will notify **us** if it changes during the policy period. If this information is incorrect, incomplete, or changes during the policy period, **you** agree that we may adjust **your** premium during the policy period, or take other appropriate action.

Changes that may result in a premium adjustment include, but are not limited to, changes in:

a.  the number, type, or use classification of **insured autos**;

b.  operators using **insured autos**, their ages, driving histories, license status, state or country of license issuance, or marital status;

c.  the place of principal garaging of any **insured auto**;

d.  coverage, deductibles, or limits of liability; or

e.  rating territory or discount eligibility.

If **you** ask **us** to delete a vehicle from this policy, no coverage will apply to that vehicle as of the date and time **you** ask **us** to delete it.

Nothing contained in this section will limit **our** right to void this policy for fraud, misrepresentation or concealment of any material fact by **you**, or anyone acting on **your** behalf.

3.  **Other Insurance**

    a.  For any **insured auto** that is specifically described on the **declarations page**, this policy provides primary coverage. For an **insured auto** which is not specifically described on the **declarations page**, coverage under this policy will be excess over any and all other valid and collectible insurance, whether primary, excess or contingent. However, if the **insured auto** that is specifically described on the **declarations page** is a **trailer**, this policy will be excess over any and all other valid and collectible insurance, whether primary, excess or contingent, unless the **trailer** is attached to an **insured auto** that is a power unit **you** own and that is specifically described on the **declarations page**.

    b.  If coverage under more than one policy applies on the same basis, either excess or primary, **we** will pay only **our** proportionate share. **Our** proportionate share is the proportion that the Limit of Liability of this policy bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

4.  **Two or More Policies Issued By Us**

    If any applicable insurance other than this policy is issued to **you** by **us**, or any company affiliated with **us**, and applies to the same **accident** or **loss**, the total amount payable among all such policies shall not exceed the limits provided by the single policy with the highest limits of liability.

5.  **Legal Action Against Us**

    **We** may not be sued unless there is full compliance with all the terms of this policy.

    **We** may not be sued for payment under Part I - Liability To Others until the obligation of an insured under Part I to pay is finally determined either by judgment against that insured after actual trial or by written agreement of the insured, the claimant, and **us**. No one will have any right to make us a party to a lawsuit to determine the liability of an insured.

6.  **Our Recovery Rights**

    In the event of any payment under this policy, we are entitled to all the rights of recovery of the person or organization to whom or for whom payment was made. That person or organization must sign and deliver to **us** any legal papers relating to that recovery, do whatever else is necessary to help **us** exercise those rights, and do nothing after the **loss** or **accident** to harm **our** rights.

    When a person has been paid damages by us under this policy and also recovers from another, the amount recovered from the other shall be held in trust for **us** and reimbursed to **us** to the extent of **our** payment, provided that the person to or on behalf of whom such

payment is made is fully compensated for their **loss.**

In the event recovery has already been made from the responsible party, any rights to recovery by the person(s) claiming coverage under this policy no longer exist.

7. **Assignment**

Interest in this policy may not be assigned without **our** written consent. If the policyholder named on the **declarations page** is a natural person and that person dies, the policy will cover:

a.   any other named insured on the policy;

b.   the legal representative of the deceased person while acting within the scope of duty of a legal representative; and

c.   any person having proper custody of **your insured auto** until a legal representative is appointed, but in no event for more than 30 days after the date of death.

8. **Waiver**

Notice to any agent or knowledge possessed by any agent or other person shall not change or effect a waiver on any portion of this policy nor prevent **us** from exercising any of **our** rights under this policy.

9. **Bankruptcy**

**We** are not relieved of any obligation under this policy because of the bankruptcy or insolvency of an insured.

10. **Inspection and Audit**

**We** shall have the right to inspect **your** property and operations at any time. This includes, but is not limited to, the right to inspect and audit the maintenance of any **autos** covered hereunder, the identity of **your** drivers and their driving records, and **your** radius of operations. In doing so, **we** do not warrant that the property or operations are safe and healthful, or are in compliance with any law, rule or regulation.

**We** shall also have the right to examine and audit **your** books and records at any time during the policy period and any extensions of that period and within three years after termination of the policy, as far as they relate to the subject matter of this insurance.

11. **Fraud or Misrepresentation**

This policy was issued in reliance upon the information provided on **your** insurance application. **We** may void this policy at any time, including after the occurrence of an **accident** or **loss**, if **you**:

1.   made incorrect statements or representations to **us** with regard to any material fact or circumstance;

2.   concealed or misrepresented any material fact or circumstance; or

3.   engaged in fraudulent conduct;

at the time of application. This means that **we** will not be liable for any claims or damages that would otherwise be covered.

Any changes **we** make at **your** request to this policy after inception will be made in reliance upon information **you** provide. If **you**:

1.   make incorrect statements or representations to **us** with regard to any material fact or circumstance;

2.   conceal or misrepresent any material fact or circumstance; or

3.   engage in fraudulent conduct;

in connection with a requested change, **we** may void the policy or reform it as it existed immediately prior to the requested change. **We** may do this at any time, including after the occurrence of an **accident** or **loss.**

When **we** have not voided or reformed the policy, **we** may still deny coverage for an **accident** or **loss** if **you**, in connection with the policy application, or in connection with any requested change, have concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, and that concealment, misrepresentation, or fraudulent conduct was material to a risk **we** assumed.

**We** may deny coverage for an **accident** or **loss** if **you** or any other insured knowingly concealed or misrepresented any material fact or circumstance or engaged in fraudulent conduct in connection with the presentation or settlement of a claim. **We** reserve all rights to

indemnity against a person committing fraud or misrepresentation for all payments made and costs incurred.

12. **Liberalization**

If we make a change that broadens a coverage **you** have under this edition of **your** policy without additional charge, **you** will receive the broadened coverage. The broadened coverage applies on the date the coverage change is implemented in **your** state. This provision does not apply to a general program revision or **our** issuance of a subsequent edition of **your** policy. Otherwise, this policy can be changed only by endorsement issued by **us**.

13. **Severability**

Except with respect to the Limit of Liability, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or lawsuit is brought.

14. **Settlement of Claims**

**We** may use estimating, appraisal, or injury evaluation systems to adjust claims under this policy and to determine the amount of damages, expenses, or loss payable under this policy. Such systems may be developed by **us** or a third party and may include computer software, databases, and specialized technology.

15. **Automatic Termination**

If **we** or an affiliate offers to renew or continue this policy and **you** or **your** representative does not accept, this policy will automatically terminate at the end of the current policy period at 12:01 a.m. Failure to pay the required renewal or continuation premium when due will mean that **you** have not accepted **our** offer.

If **you** obtain other insurance on an **insured auto**, any similar insurance provided by this policy will terminate as to that **insured auto** on the effective date and at the effective time of the other insurance.

If an **insured auto** is sold or transferred, any insurance provided by this policy will terminate as to that **insured auto** on the effective date of the sale or transfer.

16. **Duty to Report Changes**

**You** must promptly notify **us** when:
1. **your** mailing or business address changes;
2. the principal garaging address of an **insured auto** changes;
3. there is any change with respect to the persons who operate an **insured auto**;
4. there is a change in the driver's license status, or state or country of license issuance, of any person using an **insured auto**; or
5. **you** acquire, sell, or dispose of **autos**.

17. **Terms of Policy Conformed to Statutes**

If any provision of this policy fails to conform to the statutes of the state listed on **your** application as **your** business location, the provision shall be deemed amended to conform to such statutes. All other provisions shall be given full force and effect. Any disputes as to the coverages provided or the provisions of this policy shall be governed by the law of the state listed on **your** application as **your** business location.

Form 2852 GA (02/19)

## UNINSURED MOTORIST COVERAGE ENDORSEMENT

Except as specifically modified in this endorsement, all provisions of the Commercial Auto Policy apply.

**We** agree with **you** that the insurance provided under **your** Commercial Auto Policy, and related endorsements, is modified as follows:

### INSURING AGREEMENT

Subject to the Limits of Liability, if **you** pay the premium for UninsuredMotorist Coverage, **we** will pay for damages, other than punitive or exemplary damages, which an **insured** is legally entitled to recover from the **owner** or operator of an **uninsured auto** because of **bodily injury** or **property damage**:
1. sustained by an **insured**;
2. caused by an **accident**; and
3. arising out of the ownership, maintenance, or use of an **uninsured auto**.

**We** will pay under this endorsement only after the limits of liability under all applicable liability bonds and policies have been exhausted by payment of judgments or settlements.

Any judgment or settlement for damages against an **owner** or operator of an **uninsured auto** that arises out of a lawsuit brought without **our** written consent is not binding on **us**.

### ADDITIONAL DEFINITIONS

When used in this endorsement, whether in the singular, plural, or possessive:
1. "**Insured**" means:
   a. if the named insured shown on the **declarations page** is a natural person:
      (i)    **you** or a **relative**;
      (ii)   any person **occupying** an **insured auto** or a **temporary substitute auto**; and
      (iii)  any person who is entitled to recover damages covered by this endorsement because of **bodily injury** sustained by a person described in (i) or (ii) above; or
   b. if the named insured shown on the **declarations page** is a corporation, partnership, organization, or any other entity that is not a natural person:
      (i)    any person **occupying** an **insured auto** or a **temporary substitute auto**; and
      (ii)   any person who is entitled to recover damages covered by this endorsement because of **bodily injury** sustained by a person described in (i) above.

   For purposes of this definition, **insured auto** includes **mobile equipment** that is:
   a. owned by **you**;

    b. leased, hired, or borrowed by **you** and **you** have purchased either "Hired Auto Coverage" or "Any Automobile Legal Liability Coverage" from **us**; or

    c. not owned, leased, hired, or borrowed by **you** and **you** have purchased either "Employer's Non-Ownership Liability Coverage" or "Any Automobile Legal Liability Coverage" from **us**.

    However, **mobile equipment** meeting any of those three criteria will be included in the definition only if at the time of **loss** it is being:

      i. used in **your** business;

      ii. operated on a public highway; and

      iii. operated in a state or province where it is subject to a compulsory or financial responsibility law or other motor vehicle insurance law.

2. "**Non-owned auto**" means any **auto** that is not **owned** by **you** or furnished for **your** regular use and, if the named insured is a natural person, not **owned** by or furnished for the regular use of the named insured's spouse or **relative**.

3. "**Owned**" means the person or organization:
    a. holds legal title to the vehicle;
    b. has legal possession of the vehicle that is subject to a written security agreement with an original term of six months or more; or
    c. has legal possession of the vehicle that is leased to that person or organization under a written agreement for a continuous period of six months or more.

4. "**Owner**" means the person or organization who, with respect to a vehicle:
    a. holds legal title to the vehicle;
    b. has legal possession of the vehicle that is subject to a written security agreement with an original term of six months or more; or
    c. has legal possession of the vehicle that is leased to that person or organization under a written agreement for a continuous period of six months or more.

5. "**Property damage**" means:
    a. physical damage to, or destruction or loss of use of, an **insured auto**; and
    b. physical damage to, or destruction of, any property **owned** by an **insured** which is contained in the **insured auto** at the time of the **accident**.

6. "**Uninsured auto**" means an **auto** or trailer of any type:
    a. to which no liability bond or policy applies at the time of the **accident**;
    b. to which a liability bond or policy applies at the time of the **accident**, but the bonding or insuring company:
      (i) legally denies coverage; or
      (ii) is or becomes insolvent;
    c. whose operator or **owner** cannot be identified and which causes an **accident** resulting in **bodily injury** or **property damage** to an **insured**, provided that:
      (i) the **insured**, or someone on his or her behalf, reports the **accident** to the police or civil authority within 24 hours or as soon as practicable after the **accident**; and
      (ii) the **accident** is reported to **us** no later than 30 days after the **accident**.
    If there is no physical contact with the **auto**, the facts of the **accident** must be corroborated by an eyewitness other than an injured **insured**; or
    d. to which a **bodily injury** liability bond or policy applies at the time of the **accident**, and:
      (i) if "Added On Coverage" has been elected, as shown on the **declarations page**, the amount of coverage available under all applicable liability policies or bonds

> is less than the damages that the **insured** is legally entitled to recover for **bodily injury** or **property damage** from the **owner** or operator of the **uninsured auto**; and
> (ii) if "Reduced Coverage" has been elected, as shown on the **declarations page**, the amount of coverage available under all applicable liability policies or bonds is less than the applicable coverage limit for Uninsured Motorist Coverage shown on the **declarations page**.
> As used in (i) and (ii) above, the amount of coverage available under the bodily injury liability and property damage liability coverages for said **uninsured auto** shall be the applicable limits of coverage, less any amounts by which the maximum amounts payable under such limits of coverage have, by reason of payment of other claims or otherwise, been reduced below the limits of coverage.

An "**uninsured auto**" does not include any vehicle or equipment:
a. **owned** by, furnished to, or available for the regular use of **you** or, if the named insured is a natural person, a **relative**;
b. designed mainly for use off public roads, while not on public roads;
c. while being used as a residence or premises; or
d. shown on the **declarations page** of this policy.

## EXCLUSIONS - READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS ENDORSEMENT.

1. Coverage under this endorsement is not provided for **bodily injury** sustained by any person while using or **occupying**:
   a. an **insured auto** without the express or implied permission of **you** or, if the named insured is a natural person, a **relative**; or
   b. a **non-owned auto** without the express or implied permission of the **owner.**
2. Coverage under this endorsement is not provided for **property damage**:
   a. to an **insured auto** for which insurance is afforded under a nuclear energy liability insurance contract;
   b. to a trailer **you** own that is not shown on the **declarations page**; or
   c. due to a nuclear reaction or radiation.
3. Coverage under this endorsement will not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar laws:
   a. workers' compensation law; or
   b. disability benefits law.

## LIMITS OF LIABILITY

The following provisions shall apply to both Uninsured Motorist Coverage – Added on to At-Fault Liability Limits, referred to as "Added On Coverage", and to Uninsured Motorist Coverage – Reduced by At-Fault Liability Limits Coverage, referred to as "Reduced Coverage."

Regardless of the number of premiums paid, or the number of **insured autos** or trailers shown on the **declarations page**, or the number of policies issued by **us**, or the number of vehicles or **insureds** involved in an **accident**, or the number of claims or lawsuits arising out of an **accident**, **we** will pay no more than the limit of liability shown for Uninsured Motorist Coverage on the **declarations page**.

If the **declarations page** shows that "combined single limit" or "CSL" applies, the amount shown is the most **we** will pay for the total of all damages resulting from any one **accident**. However, without changing this total "each accident" limit of liability, **we** will comply with any law that requires **us** to provide any separate limits.

If "combined single limits" or "CSL" applies, the Uninsured Motorist **bodily injury** and **property damage** coverage deductibles shall be a single aggregate deductible.

If **your declarations page** shows a split limit:
1. the amount shown for "each person" is the most **we** will pay for all damages due to a **bodily injury** to one person;
2. subject to the "each person" limit, the amount shown for "each accident" is the most **we will** pay for all damages due to **bodily injury** sustained by two or more persons in any one **accident**; and
3. the amount shown for "property damage" is the most **we** will pay for the aggregate of all **property damage** caused by any one **accident**.

The "each person" limit of liability includes the total of all claims made for **bodily injury** to an **insured** and all claims of others derived from such **bodily injury**, including, but not limited to, emotional injury or mental anguish resulting from the **bodily injury** of another or from witnessing the **bodily injury** to another, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death.

## Added On Coverage

If "Added On Coverage" has been elected, as shown on the **declarations page**, the following shall also apply:
1. The damages payable for **bodily injury** under this endorsement will be reduced by all sums:
   a. paid because of **bodily injury** by or on behalf of any persons or organizations that may be legally responsible;
   b. paid under Part I – Liability To Others;
   c. paid or payable under any applicable Medical Payments Coverage endorsement under this policy; and
   d. paid or payable because of **bodily injury** under any of the following or similar laws:
      (i)   workers' compensation law; or
      (ii) disability benefits law.
2. The damages payable for **property damage** under this endorsement will be reduced by all sums:
   a. paid because of **property damage** by or on behalf of any persons or organizations that may be legally responsible;
   b. paid under Part I – Liability To Others; and
   c. paid or payable under any other property or physical damage insurance.

## Reduced Coverage

If "Reduced Coverage" has been elected, as shown on the **declarations page**, the following shall also apply:
1. The bodily injury limits of liability under this endorsement shall be reduced by all sums:
   a. paid because of **bodily injury** by or on behalf of any persons or organizations that may be legally responsible;
   b. paid under Part I – Liability To Others;
   c. paid or payable under any applicable Medical Payments Coverage Endorsement; and

d. paid, payable, or that should apply, because of **bodily injury** under any of the following or similar laws:
   (i) workers' compensation law; or
   (ii) disability benefits law.
2. The property damage limits of liability under this endorsement shall be reduced by all sums:
   a. paid because of **property damage** by or on behalf of any persons or organizations that may be legally responsible;
   b. paid under Part I–Liability To Others; and
   c. paid or payable under any other property or physical damage insurance.

When **property damage** covered under this endorsement is also covered by any applicable Collision Coverage under Part II, the coverage under this endorsement shall be excess over the Collision Coverage, except to the extent that the coverage under this endorsement is used to reimburse **you** for any applicable Collision Coverage deductible.

Payments for **property damage** under this endorsement are also subject to the following provisions:
1. no more than one deductible shall be applied to any one **accident**; and
2. an adjustment for depreciation and physical condition will be made in determining the limit of liability at the time of the **accident**.

No one will be entitled to duplicate payments for the same elements of damages.

## OTHER INSURANCE

If there is other applicable uninsured motorist coverage, as described in ⁱ O.C.G.A. 33-7-11, as amended, the following order of priority shall be used to determine which insurer is responsible for providing payments:
1. a policy insuring the injured person as a named insured; then
2. a policy insuring the injured person's spouse or any **relative**; then
3. policies insuring the **owner** or operator of the **auto occupied** in the **accident**.

If **we** are responsible for providing payment under this endorsement to an **insured** and there is more than one applicable policy of the same priority, **we** will pay only **our** share of the damages. **Our** share is the proportion that **our** limit of liability bears to the total of all available coverage limits on the same level of priority.

**We** will not pay for any damages that would duplicate any payment made for damages under other insurance.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.**

# J&A
## JOHNSON & ALDAY, LLC
——— ATTORNEYS AT LAW ———

📞 (678) 967-4040
🖨 (678) 400-2223
✉ info@johnsonalday.com
🌐 www.johnsonalday.com

📍 219 Roswell Street, NE
Marietta, GA 30060

September 27, 2022

**US PRIORITY MAIL – 2 DAY**
9405 5111 0803 3548 8676 71

Ms. Stephanie Ray
Progressive Claims
747 Alpha Drive
Highland Heights, Ohio 44143

**UM TIME DEMAND**

Re:  Our Client:          Michael Chamberlain as PNG of Austin Chamberlain
     Your Insured:        Michael Chamberlain and MTC Consulting, LLC
     At-Fault Driver:     Maxley Baxter
     Date of Collision:   October 24, 2021
     Claim Number:        21-5443821

Dear Stephanie:

Please be advised that my firm is assisting Michael Chamberlain and his Mississippi counsel, J. Peyton Randolph, with respect to the under-insured motorist claim stemming from the October 24, 2021 motor vehicle collision wrongful death of Austin Chamberlain. As you know, the at-fault driver, Maxley Baxter, was woefully under-insured for this tragic event. Mr. Baxely's insurance carrier tendered its policy limits. I write to Progressive to make a settlement demand on Mr. Chamberlain's behalf. On Mr. Chamberlain's behalf, I hereby demand $1,000,000.00, his applicable UM policy limits (specifically the MTC Consulting UM Policy, Policy No. 02171740), in exchange for a mutually agreeable release should Progressive require one. This release must carve out the present claims pending in Mississippi for a dram shop action. This demand is made as a time-limited demand for the minimum time frame set forth under Georgia law, pursuant to O.C.G.A. § 33-7-11(j) and Lewis v. Cherokee Ins. Co., 258 Ga. App. 839 (1984).

**Liability:** Liability is clear. On October 24, 2021, Maxley Baxter, under the influence of alcohol, drove north on Graysport Crossing Road in Grenada County, Mississippi. Mr. Baxter left the roadway on the east side and struck two trees, ejecting young Austin Chamberlain from the vehicle. Austin Chamberlain died as a result of the wreck and the injuries caused therefrom. Maxley Baxter was charged with multiple felonies which he pled guilty too and remains incarcerated. Austin Chamberlain was a front seat passenger in the vehicle and was not liable in any way. Enclosed is the police report for your review.

**Damages:** Austin Chamberlain was 19 years old when he died. His entire life was in front of him. There is no way to accurately measure the damages from his tragic loss of life. That said, attached is a report from our expert economist which provides an estimate of economic damages for Austin Chamberlain's life at $3,000,000.00 at a minimum.

**PLAINTIFF'S EXHIBIT**
C -
tabbies®

**Time Demand:** As stated above, Michael Chamberlain has authorized me to demand $1,000,000.00, his applicable UM policy limits (for the policy referenced in this letter), in exchange for a mutually agreeable release (carving out the pending dram shop law suit), should Progressive require one. We have fully complied with Georgia law as set forth within this demand, but if you feel anything additional is necessary, please let me know. This demand is obviously governed by Lewis v. Cherokee Inc. Co., 258 Ga. App. 839 (1984), and its progeny as well as the Georgia Unliquidated Damages Act, O.C.G.A. § 51-12-14. This demand is made as a time-limited demand for the minimum time frame set forth under Georgia law.

Pursuant to O.C.G.A. § 33-7-11, this offer of settlement for the amount of $1,000,000.00, must be accepted by you, in writing, no later than sixty (60) days from the date you receive this offer. You will then have ten (10) days in which to provide payment of the settlement monies. Timely payment is an essential element of the acceptance, and the settlement check must accompany the release. Further, only my client's name and my firm name may appear on the settlement check. As stated above, in return, my client will sign a mutually agreed upon general release and will release Progressive from all claims for bodily injury, personal injury, compensatory damages, general damages, and all other damages available to him under the law.

I look forward to hearing from you in the near future.

Sincerely,

Robert D. Johnson
RDJ/

Enclosures

Cc:    Mr. Michael Chamberlain/ MTC Consulting, LLC
       Mr. J. Peyton Randolph, II, Esq.
       April_Brandenburg@progressive.com

# MISSISSIPPI UNIFORM CRASH REPORT
## CRASH INFORMATION

# MISSISSIPPI UNIFORM CRASH REPORT
## CRASH INFORMATION
Rev. 2020-1

2021067532

☐ Secondary Crash

| Number of Motorists | 2 | Number of Non-Motorists | 0 | Non-Fatally Injured Persons | 1 | Fatalities | | Agency # | 0022 | Case # | | 2021101819 | Page | 1 | of | 10 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

| | | | Fatalities | 1 | Total Injuries and Fatalities | | Vehicles Involved | |
|---|---|---|---|---|---|---|---|---|

| Investigating Agency | | County | | City | | Latitude | Longitude |
|---|---|---|---|---|---|---|---|
| Grenada County Sheriff Office | | Grenada | | Gore Springs | | 33.837531° N | 89.606123° W |

## CRASH TIME INFORMATION

| Crash Date/Time | Police Notified Date/Time | Police Arrived Date/Time | Roadway Cleared Date/Time | 10-24 Investigation Completed |
|---|---|---|---|---|
| 10/24/2021 0159 | 10/24/2021 0159 | 10/24/2021 0212 | 10/24/2021 0519 | 10/24/2021 0519 |

## ROAD INFORMATION

**Named road**

GRAYSPORT CROSSING ROAD

Numbered road

Address Number _____ Street Name _____

**Intersection Road Name** _____

☐ Crash was at an intersection

Road Number _____

**Intersection Road Number** _____

Milepost _____

## LOCATION INFORMATION

| Road Classification | 103 | Property Ownership | 100 | Trafficway | 100 | Intersection Approach | 1 | Traffic Flow Direction | N |
|---|---|---|---|---|---|---|---|---|---|
| 100 Interstate    200 Parking lot/ | | 100 Public property | | **Trafficway Characteristics** | | 1 Not an intersection | | X Not applicable | |
| 101 US highway          private drive | | 200 Private property | | 100 Trafficway, on road | | 2 Two | | (not a divided highway) | |
| 102 State highway   201 State park | | | | 101 Trafficway, not on road | | 3 Three | | N North | |
| 103 County road    202 Off road | | | | 200 Non-trafficway | | 4 Four | | W West                          E East | |
| 104 City street | | | | | | 5 Five or more | | S South | |

## INVESTIGATING OFFICER

| Rank | First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|---|
| Deputy | Randy | | Denley | |

| Badge # | Printed Name | Signature |
|---|---|---|
| SO 9 | Deputy Randy Denley | *Deputy Randy Denley* |

## CRASH CIRCUMSTANCES AND CONDITIONS

| First Harmful Event | | Location of First Harmful Event | 316 | School Bus Relation | 108 | Weather Conditions | 000 |
|---|---|---|---|---|---|---|---|

**First Harmful Event**

*Non-Collision*
- 100 Cargo/equipment loss or shift
- 101 Fell/jumped from motor vehicle
- 102 Fire/explosion
- 103 Immersion, full or partial
- 104 Jackknife
- 105 Overturn/rollover
- 106 Thrown or falling object
- 198 Other non-collision harmful event

*Collision with Non-Fixed Object*
- 200 Collision with animal (live)
- 201 Collision with motor vehicle in transport
- 202 Collision with parked motor vehicle
- 203 Collision with pedalcycle
- 204 Collision with pedestrian
- 205 Collision with railway vehicle (train, engine)
- 206 Collision with object at rest from MV in transport
- 207 Collision with falling/shifting cargo or anything set in motion by MV
- 208 Collision with work zone/maintenance equipment
- 209 Collision with farm equipment
- 297 Collision with other non-motorist
- 298 Collision with other non-fixed object

*Collision with Fixed Object*
- 300 Collision with bridge overhead structure
- 301 Collision with bridge pier or support
- 302 Collision with bridge rail
- 303 Collision with cable barrier
- 304 Collision with concrete traffic barrier
- 305 Collision with culvert
- 306 Collision with curb
- 307 Collision with ditch
- 308 Collision with embankment
- 309 Collision with fence
- 310 Collision with guardrail end terminal
- 311 Collision with guardrail face
- 312 Collision with impact attenuator/crash cushion
- 313 Collision with mailbox
- 314 Collision with traffic sign support
- 315 Collision with traffic signal support
- 316 Collision with tree (standing)
- 317 Collision with utility pole/light support
- 398 Collision with other post, pole, or support
- 397 Collision with other traffic barrier
- 398 Collision with other fixed object (wall, building, tunnel, etc.)
- 399 Collision with unknown fixed object

**Location of First Harmful Event** — 100
- 100 Gore
- 101 In parking lane or zone
- 102 Median
- 103 Off roadway, location unknown
- 104 On roadway
- 105 On shoulder, left side
- 106 On shoulder, right side
- 107 Outside road/right-of-way
- 108 Roadside
- 109 Separator/traffic island
- 999 Unknown

**Manner of Crash** — 000
- 000 Not a collision between two motor vehicles
- 100 Angle
- 101 Front to front
- 102 Front to rear
- 103 Rear to rear
- 104 Rear to side
- 105 Sideswipe, opposite direction
- 106 Sideswipe, same direction
- 980 Other
- 999 Unknown

**Relation to Junction** — 000
- 000 Not an interchange area
- 100 Acceleration or deceleration lane
- 101 Crossover related
- 102 Driveway access or related
- 103 Entrance/exit ramp or related
- 104 Intersection or related
- 105 Non-junction
- 106 Railway grade crossing
- 107 Shared-use path or trail
- 108 Through roadway
- 980 Other location within an interchange area (median, shoulder, and roadside)
- 999 Unknown

**School Bus Relation** — 000
- 000 No
- 100 Yes, school bus directly involved
- 101 Yes, school bus indirectly involved

**Intersection Geometry** — 970
- 100 Angled / skewed
- 101 Roundabout / traffic circle
- 102 Perpendicular
- 970 Not applicable

**Intersection Traffic Control** — 970
- 000 No controls
- 100 Signalized
- 101 Stop-all way
- 102 Stop-partial
- 103 Yield
- 970 Not applicable

**Roadway Surface Condition** — 000
- 000 Dry
- 100 Ice/Frost
- 101 Mud, dirt, gravel
- 102 Oil
- 103 Sand
- 104 Slush
- 105 Snow
- 106 Water (standing, moving)
- 107 Wet
- 980 Other
- 999 Unknown

**Light Condition** — 302
- 101 Daylight
- 201 Dawn/Dusk
- 301 Dark - lighted
- 302 Dark - not lighted
- 303 Dark - unknown lighting
- 980 Other
- 999 Unknown

**Weather Conditions** — 000
- 000 Clear
- 100 Blowing sand, soil, dirt
- 101 Blowing snow
- 102 Cloudy
- 103 Fog, smog, smoke
- 104 Freezing rain or freezing drizzle
- 105 Rain
- 106 Severe crosswinds
- 107 Sleet or hail
- 108 Snow
- 980 Other
- 999 Unknown

**Environmental Conditions** — 000
- 000 None
- 100 Animal(s)
- 101 Debris
- 102 Glare
- 103 Non-highway work
- 104 Obstructed crosswalks
- 105 Obstruction in roadway
- 106 Prior crash
- 107 Prior non-recurring incident
- 108 Regular congestion
- 109 Related to a bus stop
- 110 Road surface condition (wet, icy, snow, slush, etc.)
- 111 Ruts, holes, bumps
- 112 Shoulders (none, low, soft, high)
- 113 Toll booth/plaza related
- 114 Traffic control device
- 115 Traffic incident
- 116 Visual obstruction
- 117 Weather conditions
- 118 Work zone (construction/ maintenance/utility)
- 119 Worn/travel-polished surface
- 980 Other
- 999 Unknown

CRASH REPORT - CRASH SUMMARY

# MISSISSIPPI UNIFORM CRASH REPORT
## CRASH INFORMATION
Rev. 2020-1

2021067532

Agency # | 0022 | Case # | 2021101819 | Page | 2 | of | 10

## WORK ZONE CRASH INFORMATION

| Work Zone | 000 | Location Relative to Work Zone | 970 | Work Zone Type | 970 | Worker(s) Present | 970 | Law Enforcement Present | 970 |
|---|---|---|---|---|---|---|---|---|---|
| 000 No<br>999 Unknown | | 100 Before the first work zone warning sign<br>101 Advance warning area<br>102 Transition area<br>103 Activity area<br>104 Termination area<br>970 Not applicable<br>999 Unknown | | 100 Lane closure<br>101 Lane shift / crossover<br>102 Work on shoulder or median<br>103 Intermittent or moving work<br>970 Not applicable<br>980 Other<br>999 Unknown | | 000 No<br>100 Yes<br>970 Not applicable<br>999 Unknown | | 000 No<br>100 Yes<br>970 Not applicable<br>999 Unknown | |

## PHOTOGRAPHER

| Photos Taken? | Rank | First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|---|---|
| ☒ | Deputy | Randy | | Denley | |

## REVIEWING OFFICER

| Rank | First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|---|
| Deputy | Joey | | Ward | |

## WITNESS #

| Name | | | | WITNESS # |
|---|---|---|---|---|
| First | Middle | Last | Suffix | |
| Address | | | | |
| City | State | Postal Code | | |
| Phone Number | Age | Sex | | |

| Name | | | | WITNESS # |
|---|---|---|---|---|
| First | Middle | Last | Suffix | |
| Address | | | | |
| City | State | Postal Code | | |
| Phone Number | Age | Sex | | |

## WITNESS #

| Name | | | | WITNESS # |
|---|---|---|---|---|
| First | Middle | Last | Suffix | |
| Address | | | | |
| City | State | Postal Code | | |
| Phone Number | Age | Sex | | |

| Name | | | | WITNESS # |
|---|---|---|---|---|
| First | Middle | Last | Suffix | |
| Address | | | | |
| City | State | Postal Code | | |
| Phone Number | Age | Sex | | |

## WITNESS #

| Name | | | | WITNESS # |
|---|---|---|---|---|
| First | Middle | Last | Suffix | |
| Address | | | | |
| City | State | Postal Code | | |
| Phone Number | Age | Sex | | |

| Name | | | | WITNESS # |
|---|---|---|---|---|
| First | Middle | Last | Suffix | |
| Address | | | | |
| City | State | Postal Code | | |
| Phone Number | Age | Sex | | |

## TRAIN CRASH INFORMATION

TRAIN #

| Engineer | ☐ Unknown | | | Engineer ID Number | ☐ Unknown |
|---|---|---|---|---|---|
| First | Middle | Last | Suffix | | |
| Conductor | ☐ Unknown | | | Conductor ID Number | ☐ Unknown |
| First | Middle | Last | Suffix | | |
| Company | ☐ Unknown | | | DOT Crossing Number | ☐ Unknown |

CRASH REPORT - SUMMARY BACK

# MISSISSIPPI UNIFORM CRASH REPORT
## VEHICLE INFORMATION
Rev. 2020-1

**Motor Vehicle #** 1

2021067532

Agency # 0022  Case # 2021101819  Page 3 of 10

### DESCRIPTION AND INFORMATION

| | | |
|---|---|---|
| **Check if this vehicle had no driver** ☐ | **Hit and Run** <br> ☐ 000 No, did not leave the scene <br> ☐ 100 Yes, driver and vehicle left scene <br> ☐ 101 Yes, only driver left scene | **000 Vehicle Type** <br> 100 Motor vehicle in transport <br> 101 Parked motor vehicle <br> 102 Working vehicle / equipment |

**VIN** 1FTEX1EP2HFC83443

**Model Year** ☐ Unknown | **Make** Ford | **Model** F-Series pickup | **Color** Gray ☐ Unknown
2017

**License Plate** ☐ Missing

**State** IL  ☐ Unknown  **Number** 293208?  ☐ Unknown  **Year** 2021  ☐ Unknown  ☐ Non-expiring

**Owner Name** ☐ Same as driver  ☐ Unknown
David L. Hoglund

**Owner Address** ☐ Same as driver  ☐ Unknown
173 Hunt Club Dr.
*Street*

Saint Charles  IL  60174
*City*  *State*  *Postal Code*

**Insurance** ☐ Uninsured at time of crash

**Company** ☒ Unknown
**NAIC #** ☒ Unknown
**Policy #** ☒ Unknown

**100 Vehicle Body Type** [103]

**Passenger Vehicles**
100 Passenger car
101 Passenger van (less than 9 seats)
102 (Sport) utility vehicle
103 Pickup
104 Cargo van

**Construction / Farm Equipment**
200 Construction equipment (backhoe, bulldozer, etc.)
201 Farm equipment (tractor, combine, harvester, etc.)

**Cycle / Low Speed**
300 2-wheeled motorcycle
301 3-wheeled motorcycle
302 Moped or motorized bicycle
303 All-terrain vehicle / all-terrain cycle (ATV / ATC)
304 Golf Cart
305 Snowmobile
306 Low Speed Vehicle
307 Recreational off-highway vehicles (ROV)
308 Autocycle

**Trucks**
400 Single unit truck
401 Truck tractor
488 Other truck

**Large Passenger Vehicle**
500 Motor home  505 School bus
501 9 or 12 passenger van  506 Transit bus
502 15-passenger van  507 Motorcoach
503 Large limo  588 Other bus / large passenger vehicle
504 Mini-bus

**Other**
988 Other

### DAMAGE

**Damage Extent** [102]
000 None
100 Minor damage
101 Functional damage
102 Disabling damage
988 Vehicle not at scene

**State Property Damaged**
☒ 000 None
☐ 100 Bridge overhead structure
☐ 101 Bridge pier or support
☐ 102 Bridge rail
☐ 200 Cable barrier
☐ 201 Concrete traffic barrier
☐ 202 Guardrail end terminal
☐ 203 Guardrail face
☐ 204 Impact attenuator/crash cushion
☐ 288 Other traffic barrier
☐ 300 Traffic sign support
☐ 301 Traffic signal support
☐ 302 Utility pole/light support
☐ 988 Other

**Initial Contact Point**

| 7 | 8 | 9 | 10 | 11 |
|---|---|---|---|---|
6 → 12
| 5 | 4 | 3 | 2 | 1 |

☐ 000 Non-collision
☐ 001 Vehicle not at scene
☐ 100 Top
☐ 113 Undercarriage
☐ 114 Cargo Loss
☐ 999 Unknown

**Damaged Areas**

| 7 | 8 | 9 | 10 | 11 |
|---|---|---|---|---|

☐ 001 Vehicle not at scene
☐ 100 Top
☐ 113 Undercarriage

### TOWING

**Tow Status**
000 Not towed
100 Towed, but not due to disabling damage
101 Towed due to disabling damage

**Tow Authority** [101]
100 Owner
101 Law enforcement
970 Not applicable
980 Other

**Towed By** [101]  ☐ Unknown

Jerry's Wrecker

# MISSISSIPPI UNIFORM CRASH REPORT
## VEHICLE INFORMATION
Rev. 2020-1

2021067532

Motor Vehicle # 1

Agency # 0022 Case # 2021101819 Page 4 of 10

## MOTOR VEHICLE CIRCUMSTANCES

### Vehicle Usage
- 000 No special function
- 100 Bus - school (public or private)
- 101 Bus - childcare / daycare
- 102 Bus - transit / commuter
- 103 Bus - charter / tour
- 104 Bus - intercity
- 105 Bus - shuttle
- 198 Bus - other
- 200 Farm vehicle
- 201 Fire truck
- 202 Highway / maintenance
- 203 Mail carrier
- 204 Military
- 205 Ambulance
- 206 Police
- 207 Public utility
- 208 Non-transport emergency services vehicle
- 209 Safety service patrols - incident response
- 210 Other incident response
- 211 Rental truck (over 10,000 lbs)
- 212 Towing - incident response
- 213 Truck acting as crash attenuator
- 214 Taxi
- 215 Vehicle used for electronic ride-hailing (transportation network company)
- 980 Other
- 999 Unknown

195

### Emergency Vehicle Usage
- 000 Emergency Vehicle Use
- 000 Non-emergency, non-transport
- 100 Non-emergency transport
- 200 Emergency operation, emergency warning equipment not in use
- 201 Emergency operation, emergency warning equipment in use
- 970 Not applicable
- 999 Unknown

### Travel Direction
000 Not on roadway | 100

- 100 North
- 200 Northeast
- 300 East
- 400 Southeast
- 500 South
- 600 Southwest
- 700 West
- 800 Northwest

999 Unknown

### Vehicle Maneuver
000 | 195
- 000 Vehicle Maneuver
- 100 Backing
- 101 Changing lanes
- 102 Entering traffic lane
- 103 Leaving traffic lane
- 104 Making U-turn
- 105 Movements essentially straight ahead
- 106 Negotiating a curve
- 107 Overtaking/passing
- 108 Parked
- 109 Slowing
- 110 Stopped in traffic
- 111 Turning left
- 112 Turning right
- 980 Other
- 999 Unknown

## Traffic Control Device Types and Statuses

### Traffic Control Device Types
- 000 None
- 100 Person (including flagger, law enforcement, crossing guard, etc)
- 200 Bicycle crossing sign
- 201 "Curve Ahead" warning sign
- 202 "Intersection Ahead" warning sign
- 203 Pedestrian crossing sign
- 204 Railroad crossing
- 205 "Reduce Speed Ahead" warning sign
- 206 School zone sign
- 207 Stop sign
- 208 Yield sign
- 298 Other warning sign
- 300 Flashing railroad crossing (may include gates)
- 301 Flashing school zone signal
- 302 Flashing traffic control signal
- 303 Lane use control signal
- 304 Ramp meter signal
- 305 Traffic control signal
- 398 Other signal
- 400 Bicycle crossing
- 401 Pedestrian crossing
- 402 Railroad crossing
- 403 School zone
- 498 Other pavement marking (excluding edgelines, centerlines, or lane lines)
- 980 Other
- 999 Unknown

### Devices Present
| | |
|---|---|
| 1 | 000 |
| 2 | |
| 3 | |
| 4 | |

### Devices Inoperative or Missing
| | |
|---|---|
| 1 | 000 |
| 2 | |
| 3 | |
| 4 | |

### Vehicle Defects
000
- 000 None
- 100 Brakes
- 101 Exhaust system
- 102 Body doors
- 103 Steering
- 104 Power train
- 105 Suspension
- 106 Tires
- 107 Wheels
- 108 Lights (head,signal,tail)
- 109 Window / Windshield
- 110 Mirrors
- 111 Wipers
- 112 Truck coupling / trailer hitch / safety chains
- 980 Other
- 999 Unknown

### Trafficway Division
- 000 Not divided
- 001 Not divided, with a continuous left turn lane
- 100 Divided, flush median (greater than 4 ft wide)
- 101 Divided, raised median (curbed)
- 102 Divided, depressed median
- 999 Unknown

### Roadway Grade 101
- 100 Level
- 101 Uphill
- 102 Hillcrest
- 103 Downhill
- 104 Sag (bottom)

### Barrier Type
000
- 000 None
- 100 Cable barrier
- 101 Concrete barrier (e.g. Jersey barrier)
- 102 Earth embankment
- 103 Guardrail
- 980 Other

### # of Through Lanes
2

### # of Auxiliary Lanes
0

### Roadway Alignment
101
- 100 Straight
- 101 Curve left
- 102 Curve right

### Permitted Travel 200
- 100 One-way
- 200 Two-way

### Posted Speed Limit
40
- ☐ Unknown
- ☐ N/A

### Automation System Level Present
000
- 000 No automation
- 100 Driver assistance
- 101 Partial automation
- 102 Conditional automation
- 103 High automation
- 104 Full automation
- 199 Automation level unknown
- 999 Unknown

### Automation System Level Engaged at Time of Crash
000
- 000 No automation
- 100 Driver assistance
- 101 Partial automation
- 102 Conditional automation
- 103 High automation
- 104 Full automation
- 199 Automation level unknown
- 999 Unknown

### HOV Presence
000
- 000 None present
- 100 Separated barrier, flush (greater than 4 ft wide), raised or depressed median
- 101 Not separated, painted pavement markings, post-mounted delineators

### HOV Lane Relation 000
- 000 No
- 100 Yes

## MOTOR VEHICLE EVENTS

### Sequence of Events
1 006   2 316   3 316   4

### Non-Harmful Events
- 000 Cross centerline
- 001 Cross median
- 002 End departure (T-intersection, dead-end, etc.)
- 003 Downhill runaway
- 004 Equipment failure (blown tire, brake failure, etc.)
- 005 Ran off roadway left
- 006 Ran off roadway right
- 007 Reentering roadway
- 008 Separation of units
- 098 Other non-harmful event

### Non-Collision Events
- 100 Cargo/equipment loss or shift
- 101 Fell/jumped from motor vehicle
- 102 Fire/explosion
- 103 Immersion, full or partial
- 104 Jackknife
- 105 Overturn/rollover
- 106 Thrown or falling object
- 198 Other non-collision harmful event

### Collision with Person / Vehicle / Non-Fixed Object
- 200 Collision with animal (live)
- 201 Collision with motor vehicle in transport
- 202 Collision with parked motor vehicle
- 203 Collision with pedalcycle
- 204 Collision with pedestrian
- 205 Collision with railway vehicle (train, engine)
- 206 Collision with object at rest from MV in transport
- 207 Collision with falling, shifting cargo, or anything set in motion by MV
- 208 Collision with work zone/maintenance equipment
- 209 Collision with farm equipment
- 267 Collision with other non-motorist
- 298 Collision with other non-fixed object

### Collision with Fixed Object
- 300 Collision with bridge overhead structure
- 301 Collision with bridge pier or support
- 302 Collision with bridge rail
- 303 Collision with cable barrier
- 304 Collision with concrete traffic barrier
- 305 Collision with culvert
- 306 Collision with curb
- 307 Collision with ditch
- 308 Collision with embankment
- 309 Collision with fence
- 310 Collision with guardrail end terminal
- 311 Collision with guardrail face
- 312 Collision with impact attenuator/crash cushion
- 313 Collision with mailbox
- 314 Collision with traffic sign support
- 315 Collision with traffic signal support
- 316 Collision with tree (standing)
- 317 Collision with utility pole/light support
- 396 Collision with other post,pole,or support
- 397 Collision with other traffic barrier
- 398 Collision with other fixed object (wall, building, tunnel, etc.)
- 399 Collision with unknown fixed object

### Most Harmful Event 316

# MISSISSIPPI UNIFORM CRASH REPORT
## VEHICLE INFORMATION
Rev. 2020-1

| Motor Vehicle # | 2021067532 |
|---|---|
| 1 | |

**COMMERCIAL MOTOR VEHICLE INFORMATION**

Agency # 0022 Case # 2021101819 Page 5 of 10

**Vehicle Configuration**

000 Not a qualifying vehicle

100 Vehicles 10,000 lbs or less placarded for hazardous materials

200 Bus/large van (seats 9-15 occupants, including driver)
201 Bus (seats more than 15 occupants, including driver)

300 Single-unit truck (2 axle and GVWR > 10,000 lbs.)
301 Single-unit truck (3 or more axles)
302 Truck pulling trailer(s)
303 Truck tractor (bobtail)
304 Truck tractor/semi-trailer
305 Truck tractor/double
306 Truck tractor/triple
307 Truck more than 10,000 lbs., cannot classify

970

**Cargo Body Type**

000 No cargo body

100 Bus
101 Auto transporter
102 Cargo tank
103 Concrete mixer
104 Dump

105 Flatbed
106 Garbage / refuse
107 Grain / chips / gravel
108 Intermodal container chassis

109 Log
110 Pole trailer
111 Van / enclosed box
112 Vehicle towing another vehicle

970 Not applicable        980 Other

999 Unknown

970

**Special Sizing**

☒ 000 No special sizing
☐ 100 Over-height
☐ 101 Over-length
☐ 102 Over-weight
☐ 103 Over-width
☐ 999 Unknown

| Number of Axles | Motor Carrier Type |
|---|---|
| ☐ Unknown | 000 Not a motor carrier |
| | 100 Interstate carrier |
| | 101 Intrastate carrier |
| | 102 Not in commerce / government |
| | 980 Not in commerce / other truck or bus |

**Motor Carrier Identification** 970

100 USDOT number
101 State number
970 Not applicable
999 Unknown/unable to determine

**State**

**Motor Carrier Address** ☐ Unknown

Street

**GVWR/GCWR**

100 Light (less than 10,000 lbs. GVWR/GCWR)
101 Medium (10,001 - 26,000 lbs GVWR/GCWR)
102 Heavy (greater than 26,000 lbs GVWR/GCWR)
970 Not applicable
999 Unknown

970 **Commodity Hauled**

**Hazardous Materials Placard** 000

000 Did not carry hazardous materials
100 Carried hazardous materials with placard
200 Carried hazardous materials without placard

999 Unknown

**Hazardous Material ID**    Not applicable

**Hazardous Material Class** 970

1 Explosives
2 Gas
3 Flammable liquids
4 Other flammable substances
5 Oxidizing substances and organic peroxides
6 Toxic (poisonous) and infectious substances
7 Radioactive material
8 Corrosives
9 Miscellaneous dangerous goods
970 Not applicable
999 Unknown

**Hazardous Materials Released from Vehicle Cargo Compartment** 970

000 No, hazardous materials not released
100 Yes, hazardous materials released
970 Not applicable

**Motor Carrier Name** ☐ Unknown

**Motor Carrier ID Number**

City

State        Postal Code

---

## TRAILER INFORMATION

VIN ☐ Unknown

TRAILER #

Number of Axles ☐ Unknown

Year ☐ Unknown    Make ☐ Unknown

Model ☐ Unknown

License Plate ☐ Missing

State ____ ☐ Unknown    Number ____        ☐ Unknown

---

## TRAILER INFORMATION

VIN ☐ Unknown

TRAILER #

Number of Axles ☐ Unknown

Year ☐ Unknown    Make ☐ Unknown

Model ☐ Unknown

License Plate ☐ Missing

State ____ ☐ Unknown    Number ____        ☐ Unknown

---

## TRAILER INFORMATION

VIN ☐ Unknown

TRAILER #

Number of Axles ☐ Unknown

Year ☐ Unknown    Make ☐ Unknown

Model ☐ Unknown

License Plate ☐ Missing

State ____ ☐ Unknown    Number ____        ☐ Unknown

CRASH REPORT - COMMERCIAL MOTOR VEHICLE DESCRIPTION AND IDENTIFICATION

# MISSISSIPPI UNIFORM CRASH REPORT
## DRIVER INFORMATION
Rev. 2020-1

2021067532

| Motor Vehicle # 1 | | | | |
|---|---|---|---|---|
| | | Agency # 0022 | Case # 2021101819 | Page 6 of 10 |

### DRIVER INFORMATION

**Name** ☐ Unknown

Maxley
First

Byron
Middle

Baxter
Last

Suffix

**Address** ☐ Unknown

2225 Sutton Drive
Street

South Elgin
City

IL
State

60177
Postal Code

**Incident Responder**
- 000 No
- 100 EMS
- 101 Fire
- 102 Police
- 103 Tow operator
- 104 Transportation (i.e. maintenance workers, safety service patrol operators, etc.)

**Age** ☐ Unknown
19

**Sex** 101
- 100 Female
- 101 Male
- 999 Unknown

**Race** 103
- 100 American Indian or Alaska Native
- 101 Asian or Pacific Islander
- 102 Black
- 103 White
- 980 Other
- 999 Unknown

**Phone Number** ☐ Unknown

**Date of Birth** 000 ☐ Unknown
2/3/2002

**Ethnicity** 101
- 980 Other
- 999 Unknown
- 100 Hispanic
- 101 Other than Hispanic
- 999 Unknown

### DRIVER LICENSE INFORMATION

**License Status** 100
- 100 Valid license
- 000 Not licensed
- 001 Canceled or denied
- 002 Expired
- 003 Revoked
- 004 Suspended
- 999 Unknown

**License Number**
B236-5420-2034

**License State**
IL

**Is Commercial DL?**
☐ Yes ☒ No

**License Class**
- 000 None
- 100 Class A
- 101 Class B
- 102 Class C
- 200 Light commercial/taxi/chauffeur (MS class D)
- 300 Motorcycle only (class M, non-MS only)
- 400 Regular driver license class (MS classes R, T, P, and Y)
- 970 Not applicable

**Commercial Driver License Status** 400 | 970
- 100 Valid
- 101 Learner's permit
- 000 Canceled or denied
- 001 Disqualified
- 002 Expired
- 003 Revoked
- 098 Other (not valid)
- 970 Not applicable
- 999 Unknown

**Endorsements on License**
- ☒ 000 None/not applicable
- ☐ 100 H - Hazardous materials
- ☐ 101 N - Tank vehicle
- ☐ 102 P - Passenger
- ☐ 103 S - School
- ☐ 104 T - Double/triple trailers
- ☐ 105 X - Combination of tank vehicle and hazardous materials
- ☐ 980 Other non-commercial license endorsements (e.g., motorcycle, etc.)
- ☐ 999 Unknown

**Endorsement Compliance**
- 000 No endorsements required for the vehicle
- 100 Endorsements required, complied with
- 101 Endorsements required, not complied with
- 199 Endorsements required, compliance unknown
- 999 Unknown if endorsements required

**Restrictions on License** 000
B - Corrective lenses (1)

**Alcohol Interlock Presence** 970
- 000 No
- 100 Yes
- 970 Not applicable
- 999 Unknown

### DRIVER SEATING AND SAFETY INFORMATION

**Seating Position**

**Standard Vehicle Seats**

| Row | Left | Middle | Right | Unk |
|---|---|---|---|---|
| Front | 100 | 101 | 102 | 199 |
| 1 | 100 | 101 | 102 | 199 |
| 2 | 200 | 201 | 202 | 299 |
| 3 | 300 | 301 | 302 | 399 |
| 4 | 400 | 401 | 402 | 499 |
| Oth | 500 | 501 | 502 | 599 |
| Unk | 600 | 601 | 602 | 699 |

**Other Seating Positions**
- 700 Unenclosed cargo area
- 701 Riding on motor vehicle exterior (non-trailing unit)
- 800 Trailing unit
- 801 Sleeper section of cab (truck)
- 898 Other enclosed cargo area
- 970 Not applicable
- 999 Unknown

**Restraint Systems Used** 100
- 100 None used - motor vehicle occupant
- 101 Booster seat
- 102 Child restraint system - forward facing
- 103 Child restraint system - rear facing
- 104 Child restraint - type unknown
- 105 Lap belt only used
- 106 Shoulder and lap belt used
- 107 Shoulder belt only used
- 108 Stretcher
- 109 Wheelchair
- 199 Restraint used - type unknown

106
- 200 No helmet
- 201 DOT-compliant motorcycle helmet
- 202 Not DOT-compliant motorcycle helmet
- 299 Unknown if DOT-compliant motorcycle helmet
- 970 Not applicable
- 980 Other
- 999 Unknown

**Air Bags Deployed**
- ☐ 000 Not deployed
- ☒ 100 Front
- ☐ 101 Side
- ☐ 102 Curtain
- ☐ 103 Other (knee, air belt, etc.)
- ☐ 970 Not applicable
- ☐ 999 Deployment unknown

**Used Improperly?** 000
- 000 No
- 100 Yes
- 999 Unknown

**Ejection**
- 000 Not ejected
- 100 Ejected, partially
- 101 Ejected, totally
- 970 Not applicable
- 999 Unknown

**Extrication** 000
- 000 No
- 100 Yes

| Motor Vehicle # |
|---|
| 1 |

# MISSISSIPPI UNIFORM CRASH REPORT
## DRIVER INFORMATION
Rev. 2020-1

2021067532

Agency # 0022 | Case # 2021101819 | Page 7 of 10

## MEDICAL INFORMATION

| Injury Status | 101 | Type of Medical Transportation |
|---|---|---|
| 100 (K) Fatal Injury | | 000 Not transported |
| 101 (A) Suspected Serious Injury | | 100 EMS air |
| 102 (B) Suspected Minor Injury | | 101 EMS ground |
| 103 (C) Possible Injury | | 200 Law enforcement |
| 104 (O) No Apparent Injury | | 980 Other |
| | | 999 Unknown |

**100 EMS Response Agency**
UMMC

**EMS Response Run #** ☒ Unknown

**Facility Receiving Patient**
North Mississippi Medical Center

## DRIVER CONDITION AND CIRCUMSTANCES

| Conditions at Time of Crash | 104 | Distracted By |
|---|---|---|
| 000 Apparently normal | | 000 Not distracted |
| 100 Asleep or fatigued | | 100 Talking / listening |
| 101 Emotional (depressed, angry, disturbed, etc.) | | 101 Manually operating a device |
| 102 Ill (sick), fainted | | (e.g., texting, dialing, playing game, etc.) |
| 103 Physically impaired | | 980 Other |
| 104 Under the influence of medications/ drugs/alcohol | | 999 Unknown |
| 970 Not applicable | | |
| 980 Other | | |
| 999 Unknown | | |

| | 999 | Distraction Source |
|---|---|---|
| | | 100 Hands-free mobile phone |
| | | 101 Hand-held mobile phone |
| | | 102 Vehicle-integrated device |
| | | 198 Other electronic device |
| | | 200 Passenger or other non-motorist |
| | | 201 External to vehicle/non-motorist area |
| | | 298 Other |
| | | 970 Not applicable |
| | | 999 Unknown |

| 970 | Speeding Related | 100 |
|---|---|---|
| | 000 No | |
| | 100 Exceeded speed limit | |
| | 101 Racing | |
| | 102 Too fast for conditions | |
| | 999 Unknown | |

| Suspected Alcohol Usage | 100 | Test Status | 100 | Alcohol Test Type |
|---|---|---|---|---|
| 000 No | | 000 Test not given | | 100 Blood |
| 100 Yes | | 001 Test refused | | 101 Blood clot |
| 999 Unknown | | 100 Test given | | 102 Blood plasma/serum |
| | | 999 Unknown if tested | | |

200 Breath
201 Preliminary breath test (PBT)
300 Urine
301 Vitreous
970 Not applicable
980 Other

| 100 | Alcohol Test Results | 100 | BAC |
|---|---|---|---|
| | 000 Results pending | | 0.26 |
| | 001 Negative results with no actual value | | |
| | 100 Results received | | |
| | 101 Positive results with no actual value | | |
| | 970 Not applicable | | |
| | 999 Unknown | | |

| Suspected Drug Usage | 000 | Test Status | 000 | Drug Test Type |
|---|---|---|---|---|
| 000 No | | 000 Test not given | | 100 Blood |
| 100 Yes | | 001 Test refused | | 101 Urine |
| 999 Unknown | | 100 Test given | | 102 Both blood and urine |
| | | 999 Unknown if tested | | 103 Saliva |
| | | | | 198 Other |

970 Not applicable
999 Unknown

| 970 | Drug Test Results |
|---|---|
| | Not applicable |

## DRIVER ACTIONS

| Driver Actions at Time of Crash |
|---|
| 000 No contributing action |
| 100 Disregard other road markings |
| 101 Disregard other traffic signs |
| 102 Failed to keep in proper lane |
| 103 Failed to yield right-of-way |
| 104 Followed too closely |
| 105 Improper backing |
| 106 Improper passing |
| 107 Improper turn |
| 108 Operated motor vehicle in inattentive, careless, negligent, or erratic manner |
| 109 Operated motor vehicle in reckless or aggressive manner |
| 110 Over-correcting or over-steering |
| 111 Ran off roadway |
| 112 Ran red light |
| 113 Ran stop sign |
| 114 Swerved or avoided due to wind,slippery surface,motor vehicle,object,non-motorist in roadway,etc. |
| 115 Wrong side or wrong way |
| 980 Other contributing action |
| 999 Unknown |

| 111 | Avoidance Maneuver | 000 |
|---|---|---|
| 102 | 000 No avoidance maneuver | |
| | 100 Accelerating | |
| | 101 Accelerating and steering left | |
| | 102 Accelerating and steering right | |
| | 103 Braking and steering left | |
| | 104 Braking and steering right | |
| | 105 Braking (lockup) | |
| | 106 Braking (no lockup) | |
| | 107 Braking (lockup unknown) | |
| | 108 Releasing brakes | |
| | 109 Steering left | |
| | 110 Steering right | |
| | 980 Other | |
| | 999 Unknown | |

## CITATIONS

# MISSISSIPPI UNIFORM CRASH REPORT
## PASSENGER INFORMATION
Rev. 2020-1

2021067532

Agency # 0022  Case # 2021101819  Page 8 of 10

PASSENGER INFORMATION

**Total # of Passengers** 1

---

**MOTOR VEHICLE #** 1  **PASSENGER #** 1

**Name** ☐ Unknown

Austin | Hunter | Chamberlain | Bishop
First | Middle | Last | Suffix

**Date of Birth** 12/21/2001  **Age** 19

**Sex** ☐ 100 Female ☒ 101 Male ☐ 999 Unknown

**UNBORN CHILD OF**

**Race** 101

**Address** ☐ Unknown
1060 Apalachee Trce
Street
Bishop | GA | 30621
City | State | Postal Code

**Phone Number**

**Ethnicity** 101

**Air Bags Deployed**
☐ 000 Not deployed
☒ 100 Front
☐ 101 Side
☐ 102 Curtain
☐ 103 Other
☐ 970 Not applicable
☐ 999 Unknown

**Injury Status** 100

**Incident Responder** 000

**Restraint System** 999

**Used Improperly?** ☐ 000 No ☒ 100 Yes  999 Unknown

**Seating Position** 102

**Ejection** 101

**Extrication** 000

**Type of Medical Transportation** 980

**EMS Response Agency** Coroner

**EMS Response Run #** ☒ Unknown

**Facility Receiving Patient** University Of Mississippi Medical Center - Granada

---

**MOTOR VEHICLE #**  **PASSENGER #**

**Name** ☐ Unknown

First | Middle | Last | Suffix

**Date of Birth**  **Age**

**Sex** ☐ 100 Female ☐ 101 Male ☐ 999 Unknown

**UNBORN CHILD OF**

**Race**

**Address** ☐ Unknown
Street
City | State | Postal Code

**Phone Number**

**Ethnicity**

**Air Bags Deployed**
☐ 000 Not deployed
☐ 100 Front
☐ 101 Side
☐ 102 Curtain
☐ 103 Other
☐ 970 Not applicable
☐ 999 Unknown

**Injury Status**

**Incident Responder**

**Restraint System**

**Used Improperly?** ☐ 000 No ☐ 100 Yes  999 Unknown

**Seating Position**

**Ejection**

**Extrication**

**Type of Medical Transportation**

**EMS Response Agency**

**EMS Response Run #** ☐ Unknown

**Facility Receiving Patient**

---

**MOTOR VEHICLE #**  **PASSENGER #**

**Name** ☐ Unknown

First | Middle | Last | Suffix

**Date of Birth**  **Age**

**Sex** ☐ 100 Female ☐ 101 Male ☐ 999 Unknown

**UNBORN CHILD OF**

**Race**

**Address** ☐ Unknown
Street
City | State | Postal Code

**Phone Number**

**Ethnicity**

**Air Bags Deployed**
☐ 000 Not deployed
☐ 100 Front
☐ 101 Side
☐ 102 Curtain
☐ 103 Other
☐ 970 Not applicable
☐ 999 Unknown

**Injury Status**

**Incident Responder**

**Restraint System**

**Used Improperly?** ☐ 000 No ☐ 100 Yes  999 Unknown

**Seating Position**

**Ejection**

**Extrication**

**Type of Medical Transportation**

**EMS Response Agency**

**EMS Response Run #** ☐ Unknown

**Facility Receiving Patient**

---

## PASSENGER CODES

**Injury Status**
100 (K) Fatal injury
101 (A) Suspected serious injury
102 (B) Suspected minor injury
103 (C) Possible injury
104 (O) No apparent injury

**Race**
100 American Indian or Alaska Native
101 Asian or Pacific Islander
102 Black
103 White
980 Other
999 Unknown

**Type of Medical Transportation**
000 Not transported
100 EMS air
101 EMS ground
200 Law enforcement
980 Other
999 Unknown

**Ejection**
000 Not ejected
100 Ejected, partially
970 Not applicable
999 Unknown

**Ethnicity**
100 Hispanic
101 Other than Hispanic
999 Unknown

**Incident Responder**
000 No
100 EMS
101 Fire
102 Police
103 Tow operator
104 Transportation (i.e. maintenance workers, safety service patrol operators, etc.)
980 Other
999 Unknown

**Extrication**
000 No
100 Yes

**Restraint Systems**
100 None used - motor vehicle occupant
101 Booster Seat
102 Child restraint system - forward facing
103 Child restraint system - rear facing
104 Child restraint system - type unknown
105 Lap belt only used
106 Shoulder and lap belt used
107 Shoulder belt only used
108 Stretcher
109 Wheelchair
199 Restraint used - type unknown
200 No helmet
201 DOT-compliant motorcycle helmet
202 Not DOT-compliant motorcycle helmet
299 Unknown if DOT-compliant motorcycle helmet
970 Not applicable
980 Other
999 Unknown

**Seating Position**

| Row | Left | Front Middle | Right | Unk |
|-----|------|--------------|-------|-----|
| 1 | 100 | 101 | 102 | 199 |
| 2 | 200 | 201 | 202 | 299 |
| 3 | 300 | 301 | 302 | 399 |
| 4 | 400 | 401 | 402 | 499 |
| Other | 500 | 501 | 502 | 599 |
| Unk | 600 | 601 | 602 | 699 |

700 Unenclosed cargo area
701 Riding on motor vehicle exterior (non-trailing unit)
800 Trailing unit
801 Sleeper section of cab (truck)
898 Other enclosed cargo area
970 Not applicable
999 Unknown

CRASH REPORT - PASSENGER INFORMATION

# MISSISSIPPI UNIFORM CRASH REPORT
## DIAGRAM
Rev. 2020-1

2021067532

| Agency # | 0022 | Case # | 2021101818 | Page | 9 | of | 10 |

### CRASH DIAGRAM

Scene #
1



Graysport Crossing Rd

N

NOT TO SCALE

CRASH REPORT - DIAGRAM

# MISSISSIPPI UNIFORM CRASH REPORT
## NARRATIVE
Rev. 2020-1

2021067532

Agency # 0022   Case # 2021101819   Page 10 of 10

### CRASH NARRATIVE

V1 WAS TRAVELING NORTH ON GRAYSPORT CROSSING ROAD, JUST NORTH OF STONEY BURKE ROAD. V1 LEFT THE ROADWAY ON THE EAST SIDE MAKING CONTACT WITH 2 TREES EJECTING THE FRONT SEAT PASSENGER. V1 THEN CROSSED THE ROADWAY ON THE WEST SIDE OF GRAYSPORT CROSSING ROAD MAKING CONTACT WITH ANOTHER TREE CAUSING THE VEHICLE TO FACE SOUTH.

FOR MORE INFORMATION REFERENCE INCIDENT CASE #2021101819

=====================================================================
=====================================================================
Disclaimer: All information below this line is auto-generated from report data.
=====================================================================
=====================================================================

Vehicle 1 Driver EMS Response Agency: UMMC
Vehicle 1 Passenger 1 Medical Transportation Type: Coroner
Vehicle 1 Passenger 1 EMS Response Agency: Coroner

# ECONOMIST REPORT
## BILL M. BRISTER, PH.D., ECONOMIST

**Bill M. Brister, Ph.D.**
**Economist**
**P.O. Box 150606**
**Millsaps College**
**Jackson, MS 39210**
**601-624-0729**
**bristbm@millsaps.edu**

February 7, 2022

Peyton Randolph
Law Offices of Peyton Randolph, II
613 Steed Road
Ridgeland, MS 39157

RE: **Austin Hunter Chamberlain (Deceased) vs. Maxley Baxter, et al.**

Dear Mr. Randolph:

In the above reference matter, I have estimated the present value of lost earnings and the present value of lost household production to the estate of Austin Chamberlain resulting from his death on October 24, 2021. To produce these estimates, I have reviewed documents that include the Complaint in this matter; the College Transcript of Austin Chamberlain from Mississippi State University; the High School Transcript of Austin Chamberlain from North Oconee High School; the Mississippi Uniform Crash Report relevant to this matter; a letter dated December 13, 2021, from Owens Outfitters; a letter dated December 14, 2021, from Kolby J. Hanley, Founder and CEO of ULTRAVIEW Archery, and emails from Tonya and Michael Chamberlain providing their educational levels. I have also used sources of data and methodologies that are generally accepted in Mississippi Circuit Courts and Federal District Courts. These sources of data and methodologies are given in the tables and appendices enclosed with this report.

**Lost Earnings**

Austin Chamberlain was born on December 21, 2001. He died on October 24, 2021. Austin was 19 years of age at the time of his death. Austin graduated from North Oconee High School in Bogart, Georgia, in May of 2020. While in high school Austin earned 21 hours of college credit from the University of North Georgia. He enrolled at Mississippi State University in the Fall semester of 2020 and continued through the Spring semester of 2021 earning 26 hours of credit over the two semesters. Austin was enrolled at Mississippi State University at the time of his death on October 24, 2021.

Austin's parents are Michael and Tonya Chamberlain. Michael's highest level of education is a Ph.D. from Mississippi State University and is currently a Professor of Wildlife Ecology and Management at the University of Georgia. Tonya's highest level of education is a Masters of Science from Mississippi State University and is currently an independent IT consultant with MTC Consulting, LLC.

1

In this analysis, I provide two estimates of lost earnings to the estate of Austin Chamberlain. One estimate is based on the national average earnings for males with Some College but No Degree. A second estimate is based on the national average earnings for males with a Bachelor's Degree.

## Some College, No Degree

As shown in Table 1 enclosed with this report, **the present value of the lost earnings to the estate of Austin Chamberlain is $1,842,254.** This estimate is based on the following data and assumptions:

> But for his death, Austin would have earned at the national average level for males with Some College but No Degree throughout his worklife expectancy (Appendix 1).

> The worklife earnings estimates as given in Appendix 1 do not include the impact of real earnings increases over time. The term *real earnings* refers to the growth in earnings in excess of the inflation rate. The earnings estimates over Austin's worklife are increased at the rate of 1.02% annually. This is the national average annual rate of change in the Real Compensation for All Employed Persons over the last 20 years. (Appendix 2).

> I assume that Austin would have begun employment at 20 years of age. The national average worklife expectancy for 20-year-old males with Some College but No Degree is 38.54 years (Appendix 3).

> Federal and Mississippi Income Taxes are deducted based on a single filer taking standard deductions and exemptions.

> Personal Consumption Expenditures consist of that portion of household earnings that is spent for the sole benefit of the decedent and is a deduction from earnings in a wrongful death matter in Mississippi. Personal consumption expenditures as a percentage of earnings is based on household income and household size (Appendix 4). In this analysis, I assume that Austin, but for his death, would have lived in a two-person household for the remainder of his life expectancy. The national average household size is 2.53 people and 71.8% of the households in the U.S. consists of 2 or more people (Appendix 5).

> The earnings estimates given in Table 1 and Appendix 1 do not include the impact of inflation. Therefore, the discount rate used to discount the future estimates to present value should not include the impact of inflation. The yield on the 30-Year Inflation Indexed Treasury Bond is -.07% as of February 2, 2022, and is used as the discount rate in this analysis (Appendix 6).

Bachelor's Degree

As shown in Table 2 enclosed with this report, **the present value of the lost earnings to the estate of Austin Chamberlain is $3,334,360**. This estimate is based on the following data and assumptions:

> But for his death, Austin would have earned at the national average level for males with a Bachelor's Degree throughout his worklife expectancy (Appendix 1).

> I assume that Austin would have begun employment at the age of 22 years. The national average worklife expectancy for 22-year-old males with a Bachelor's Degree is 40.68 years (Appendix 3).

> The assumptions for the annual increase in real earnings, taxes, personal consumption expenditures, and the discount rate as discussed above in the Some College No Degree section of this report hold here for the Bachelor's Degree scenario.

## Lost Household Production

Household production, also known as household services, consists of those non-compensated activities that individuals perform for their own benefit or for the benefit of other members of their household. These activities include cleaning, cooking, shopping, repairing, providing transportation, yardwork, etc.

As shown in Table 3 enclosed with this report, **the present value of lost household production to the estate of Austin Chamberlain is $501,073.** This estimate is based on the following data and assumptions:

> But for his death, Austin would have performed household production at the national average level for men of similar marital status, employment status, age, and household composition (Appendix 7).

> The values for household production as given in Appendix 7 are stated in 2019 dollars. These values are increased to 2021 dollars by using a 4.07% inflation rate as computed from the Consumer Price Index for All Items and All Consumers from 12/2019 to 12/2021 (Appendix 8).

> Austin was 19 years of age at the time of his death. The national average life expectancy for 19-year-old men is 58 years (Appendix 9). The national average worklife expectancy for 20-year-old males with Some College No Degree is 38.54 years (Appendix 3).

3

Based on a 2-person household, the percentage of household production that is for the sole benefit of the decedent is assumed to be 25% (Appendix 7). Personal consumption serves as a deduction from the total value of household production.

The future values for household production as given in Table 3 are stated in 2021 dollars. They do not include the impact of inflation. Therefore, the discount rate used to discount the future values to present value should not include the impact of inflation. The yield on the 30-Year Inflation Indexed Treasury Bond is -.07% as of February 2, 2022, and is used as the discount rate in this analysis (Appendix 6).

## Summary

The present value of lost earnings to the estate of Austin Chamberlain is $1,842,254 based on the national average earnings of men with Some College but No Degree.

The present value of lost earnings to the estate of Austin Chamberlain is $3,334,360 based on the national average earnings of men with a Bachelor's Degree.

The present value of lost household production to the estate of Austin Chamberlain is $501,073.

I reserve the right to supplement or revise this report upon receipt of new and relevant information.

Sincerely,

Bill M. Brister, Ph.D.

4

## Enclosures:

Table 1: Computation of the Present Value of Lost Earnings based on the Earnings of Men with Some College but No Degree.

Table 2: Computation of the Present Value of Lost Earnings based on the Earnings of Men with a Bachelor's Degree.

Table 3: Computation of the Present Value of Lost Household Production.

Appendix 1: Worklife Earnings in 2020 dollars for men with Some College but No Degree and men with a Bachelor's Degree.

Appendix 2: Annual Rate of Increase in Real Hourly Compensation (7/2001 to 7/2021).

Appendix 3: Worklife Expectancy.

Appendix 4: Personal Consumption Percentages.

Appendix 5: Average Household Size.

Appendix 6: Discount Rate.

Appendix 7: Household Production Hours, Hourly Value, Personal Consumption Percentage, and Mississippi Wage Adjustment.

Appendix 8: Inflation rate 12/2019 to 12/2021).

Appendix 9: Life Expectancy.

5

## Enclosures:

Table 1: Computation of the Present Value of Lost Earnings based on the Earnings of Men with Some College but No Degree.

Table 2: Computation of the Present Value of Lost Earnings based on the Earnings of Men with a Bachelor's Degree.

Table 3: Computation of the Present Value of Lost Household Production.

Appendix 1: Worklife Earnings in 2020 dollars for men with Some College but No Degree and men with a Bachelor's Degree.

Appendix 2: Annual Rate of Increase in Real Hourly Compensation (7/2001 to 7/2021).

Appendix 3: Worklife Expectancy.

Appendix 4: Personal Consumption Percentages.

Appendix 5: Average Household Size.

Appendix 6: Discount Rate.

Appendix 7: Household Production Hours, Hourly Value, Personal Consumption Percentage, and Mississippi Wage Adjustment.

Appendix 8: Inflation rate 12/2019 to 12/2021).

Appendix 9: Life Expectancy.

5

## Table 1
### Austin Chamberlain
### Lost Earnings - Some College, No Degree

**Assumptions:**

| | |
|---|---|
| Date of Birth: | 12/21/2001 |
| Date of Death: | 10/24/2021 |
| Age at Death: | 19.8 Years |
| Annual Increase in Real Earnings: | 1.02% |
| Worklife Expectancy at Age 20: | 38.54 Years |
| Discount Rate: | -0.07% |

| | Year | Age | Earnings in 2020 Dollars | Earnings with Real Increases | Federal Income Tax | State Income Tax | Earnings after Tax | Personal Consumption Percentage | Personal Consumption Expenditures | Earnings after Personal Consumption Expenditures | Present Value of Lost Earnings |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 2022 | 20 | 36,457 | 36,829 | 2,714 | 1,186 | 32,928 | 37.3% | 13,737 | 19,191 | 19,191 |
| 2 | 2023 | 21 | 36,457 | 37,205 | 2,760 | 1,205 | 33,240 | 37.3% | 13,877 | 19,362 | 19,376 |
| 3 | 2024 | 22 | 36,457 | 37,584 | 2,805 | 1,224 | 33,555 | 34.5% | 12,966 | 20,588 | 20,617 |
| 4 | 2025 | 23 | 36,457 | 37,967 | 2,851 | 1,243 | 33,873 | 34.5% | 13,099 | 20,774 | 20,818 |
| 5 | 2026 | 24 | 36,457 | 38,355 | 2,898 | 1,263 | 34,194 | 34.5% | 13,232 | 20,962 | 21,021 |
| 6 | 2027 | 25 | 47,110 | 50,068 | 4,303 | 1,848 | 43,916 | 30.3% | 15,171 | 28,746 | 28,846 |
| 7 | 2028 | 26 | 47,110 | 50,578 | 4,364 | 1,874 | 44,340 | 30.3% | 15,325 | 29,015 | 29,137 |
| 8 | 2029 | 27 | 47,110 | 51,094 | 4,426 | 1,900 | 44,768 | 30.3% | 15,482 | 29,287 | 29,431 |
| 9 | 2030 | 28 | 47,110 | 51,615 | 4,489 | 1,926 | 45,201 | 30.3% | 15,689 | 29,561 | 29,727 |
| 10 | 2031 | 29 | 47,110 | 52,142 | 4,552 | 1,952 | 45,638 | 30.3% | 15,799 | 29,839 | 30,027 |
| 11 | 2032 | 30 | 59,691 | 66,741 | 7,670 | 2,682 | 56,388 | 26.0% | 17,353 | 39,036 | 39,310 |
| 12 | 2033 | 31 | 59,691 | 67,421 | 7,820 | 2,716 | 56,885 | 26.0% | 17,530 | 39,356 | 39,660 |
| 13 | 2034 | 32 | 59,691 | 68,109 | 7,971 | 2,750 | 57,387 | 24.9% | 16,959 | 40,428 | 40,769 |
| 14 | 2035 | 33 | 59,691 | 68,804 | 8,124 | 2,785 | 57,894 | 24.9% | 17,132 | 40,762 | 41,135 |
| 15 | 2036 | 34 | 59,691 | 69,506 | 8,279 | 2,820 | 58,407 | 24.9% | 17,307 | 41,100 | 41,505 |
| 16 | 2037 | 35 | 63,361 | 74,591 | 9,384 | 3,072 | 62,075 | 23.9% | 17,813 | 44,262 | 44,780 |
| 17 | 2038 | 36 | 63,361 | 75,292 | 9,552 | 3,110 | 62,630 | 23.9% | 17,995 | 44,636 | 45,199 |
| 18 | 2039 | 37 | 63,361 | 76,060 | 9,721 | 3,148 | 63,191 | 23.9% | 18,178 | 45,013 | 45,552 |
| 19 | 2040 | 38 | 63,361 | 76,836 | 9,891 | 3,187 | 63,757 | 23.9% | 18,364 | 45,394 | 45,970 |
| 20 | 2041 | 39 | 63,361 | 77,619 | 10,064 | 3,226 | 64,330 | 28.1% | 17,930 | 46,399 | 47,021 |
| 21 | 2042 | 40 | 85,020 | 105,215 | 16,260 | 4,606 | 84,348 | 19.2% | 20,201 | 64,147 | 65,052 |
| 22 | 2043 | 41 | 85,020 | 106,288 | 16,518 | 4,659 | 85,110 | 19.2% | 20,407 | 64,703 | 65,662 |
| 23 | 2044 | 42 | 85,020 | 107,372 | 16,778 | 4,714 | 85,880 | 19.2% | 20,615 | 65,265 | 66,278 |
| 24 | 2045 | 43 | 85,020 | 108,467 | 17,041 | 4,768 | 86,658 | 19.2% | 20,826 | 65,832 | 66,901 |
| 25 | 2046 | 44 | 85,020 | 109,573 | 17,307 | 4,824 | 87,443 | 19.2% | 21,038 | 66,405 | 67,530 |
| 26 | 2047 | 45 | 68,599 | 89,312 | 12,686 | 3,811 | 72,868 | 21.5% | 19,202 | 53,665 | 54,611 |
| 27 | 2048 | 46 | 68,599 | 90,223 | 12,837 | 3,856 | 73,530 | 21.5% | 19,398 | 54,132 | 55,127 |
| 28 | 2049 | 47 | 68,599 | 91,143 | 13,039 | 3,902 | 74,202 | 21.5% | 19,596 | 54,606 | 55,648 |
| 29 | 2050 | 48 | 68,599 | 92,073 | 13,244 | 3,949 | 74,881 | 21.5% | 19,796 | 55,085 | 56,176 |
| 30 | 2051 | 49 | 68,599 | 93,012 | 13,450 | 3,996 | 75,566 | 20.9% | 19,439 | 56,127 | 57,278 |
| 31 | 2052 | 50 | 71,484 | 97,912 | 14,528 | 4,241 | 79,143 | 20.3% | 19,876 | 59,267 | 60,525 |
| 32 | 2053 | 51 | 71,484 | 98,911 | 14,748 | 4,291 | 79,873 | 20.3% | 20,079 | 59,794 | 61,106 |
| 33 | 2054 | 52 | 71,484 | 99,920 | 15,084 | 4,341 | 80,495 | 20.3% | 20,284 | 60,211 | 61,575 |
| 34 | 2055 | 53 | 71,484 | 100,939 | 15,329 | 4,392 | 81,218 | 20.3% | 20,491 | 60,728 | 62,147 |
| 35 | 2056 | 54 | 71,484 | 101,969 | 15,576 | 4,443 | 81,949 | 20.3% | 20,700 | 61,250 | 62,725 |
| 36 | 2057 | 55 | 76,992 | 110,946 | 17,730 | 4,892 | 88,323 | 19.2% | 21,302 | 67,021 | 68,684 |
| 37 | 2058 | 56 | 76,992 | 112,077 | 18,002 | 4,949 | 89,126 | 19.2% | 21,519 | 67,608 | 69,334 |
| 38 | 2059 | 57 | 76,992 | 113,221 | 18,276 | 5,006 | 89,938 | 19.2% | 21,738 | 68,200 | 69,980 |
| 39 | 2060 | 58 | 41,576 | 61,763 | 6,575 | 2,433 | 52,754 | 27.2% | 16,799 | 35,955 | 36,924 |

**Total Present Value = 1,842,254**

Sources:

Worklife Earnings in 2020 Dollars: U.S. Census Bureau, Current Population Survey, 2020 Annual Social and Economic Supplement. PINC-04, Educational Attainment–People 18 Years Old and Over, by Total Money Earnings in 2020 by Work Experience, Age, Race, Hispanic Origin, and Sex. Based on Male, All Races.

Worklife Expectancy: "A Markov Process Model of Labor Force Activity: Extended Tables of Central Tendency, Shape, Percentile Points, and Bootstrap Standard Errors," Journal of Forensic Economics, Vol. 28, No. 1-2, 2019, by Gary R. Skoog and James E. Ciecka, and Kurt V. Krueger, Table 6.

Annual Increase in Real Earnings: Annual Increase in Real Hourly Compensation for All Employed Persons, Business Sector as reported by the FRED database of the St. Louis Federal Reserve Bank, 7/2001 to 7/2021.

Federal Taxes: U.S. Internal Revenue Service, Form 1040 and 1040 Instructions, 2021, based on Single Filer taking Standard deductions and Exemptions.

State Taxes: Mississippi State Tax Commission, Form 80-105-8-1-000, 2021, and Form 80-100, 2020, based on Single Filer taking Standard Deductions and Exemptions.

Personal Consumption Percentage: "Patton-Nelson Personal Consumption Tables 2016-17", Ruble, Patton, and Nelson, 2019, Journal of Legal Economics, Volume 25, Number 1-2, pp. 75-89, Table 3a.

Real Discount Rate, http://www.federalreserve.gov/releases/h15/update/, Rate and Bonds, Inflation Indexed Treasuries, 30-Year, February 2, 2022.

**Table 2**
**Austin Chamberlain**
**Lost Earnings - Bachelor's Degree**

Assumptions:

| | |
|---|---|
| Date of Birth: | 12/21/2001 |
| Date of Death: | 10/24/2021 |
| Age at Death: | 19.8 Years |
| Annual Increase in Real Earnings: | 1.02% |
| Worklife Expectancy at Age 22: | 40.68 Years |
| Discount Rate: | -0.07% |

| # | Year | Age | Earnings in 2020 Dollars | Earnings with Real Increases | Federal Income Tax | State Income Tax | Earnings after Tax | Personal Consumption Percentage | Personal Consumption Expenditures | Earnings after Personal Consumption Expenditures | Present Value of Lost Earnings |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 2024 | 22 | 54,902 | 58,661 | 5,893 | 2,278 | 50,490 | 0.272 | 15,956 | 34,534 | 34,583 |
| 2 | 2025 | 23 | 56,902 | 59,259 | 6,025 | 2,308 | 50,927 | 0.272 | 16,119 | 34,808 | 34,881 |
| 3 | 2026 | 24 | 56,902 | 59,864 | 6,158 | 2,339 | 51,368 | 0.272 | 16,283 | 35,085 | 35,184 |
| 4 | 2027 | 25 | 71,154 | 75,621 | 9,624 | 3,126 | 62,871 | 0.2390 | 18,073 | 44,798 | 44,955 |
| 5 | 2028 | 26 | 71,154 | 76,393 | 9,794 | 3,165 | 63,434 | 0.2390 | 18,258 | 45,176 | 45,366 |
| 6 | 2029 | 27 | 71,154 | 77,172 | 9,966 | 3,204 | 64,003 | 0.2390 | 18,444 | 45,559 | 45,783 |
| 7 | 2030 | 28 | 71,154 | 77,959 | 10,139 | 3,243 | 64,577 | 0.2310 | 19,009 | 46,669 | 46,931 |
| 8 | 2031 | 29 | 71,154 | 78,754 | 10,313 | 3,283 | 65,158 | 0.2310 | 18,192 | 46,966 | 47,263 |
| 9 | 2032 | 30 | 82,955 | 92,752 | 13,393 | 3,983 | 75,377 | 0.2090 | 19,385 | 55,991 | 56,385 |
| 10 | 2033 | 31 | 82,955 | 93,698 | 13,601 | 4,030 | 76,067 | 0.2090 | 19,583 | 56,484 | 56,921 |
| 11 | 2034 | 32 | 82,955 | 94,664 | 13,811 | 4,078 | 76,765 | 0.2090 | 19,783 | 56,982 | 57,463 |
| 12 | 2035 | 33 | 82,955 | 95,619 | 14,024 | 4,126 | 77,470 | 0.2090 | 19,984 | 57,485 | 58,011 |
| 13 | 2036 | 34 | 82,955 | 96,595 | 14,238 | 4,175 | 78,182 | 0.2050 | 20,188 | 57,993 | 58,565 |
| 14 | 2037 | 35 | 104,113 | 122,468 | 20,257 | 5,468 | 96,742 | 0.1820 | 22,289 | 74,453 | 75,239 |
| 15 | 2038 | 36 | 104,113 | 123,717 | 20,557 | 5,531 | 97,629 | 0.1820 | 22,517 | 75,113 | 75,959 |
| 16 | 2039 | 37 | 104,113 | 124,979 | 20,860 | 5,594 | 98,525 | 0.1820 | 22,746 | 75,779 | 76,686 |
| 17 | 2040 | 38 | 104,113 | 126,254 | 21,166 | 5,658 | 99,430 | 0.1740 | 21,968 | 77,462 | 78,445 |
| 18 | 2041 | 39 | 104,113 | 127,542 | 21,475 | 5,722 | 100,345 | 0.1740 | 22,192 | 78,152 | 79,199 |
| 19 | 2042 | 40 | 115,498 | 142,932 | 25,169 | 6,492 | 111,272 | 0.1670 | 23,870 | 87,402 | 88,635 |
| 20 | 2043 | 41 | 115,498 | 144,390 | 25,519 | 6,564 | 112,307 | 0.1670 | 24,113 | 88,194 | 89,500 |
| 21 | 2044 | 42 | 115,498 | 145,863 | 25,872 | 6,638 | 113,352 | 0.1600 | 13,338 | 90,014 | 91,412 |
| 22 | 2045 | 43 | 115,498 | 147,350 | 26,229 | 6,713 | 114,409 | 0.1600 | 23,576 | 90,833 | 92,307 |
| 23 | 2046 | 44 | 115,498 | 148,853 | 26,590 | 6,788 | 115,476 | 0.1600 | 23,817 | 91,659 | 93,213 |
| 24 | 2047 | 45 | 114,824 | 149,494 | 26,744 | 6,820 | 115,931 | 0.1600 | 23,917 | 92,013 | 93,637 |
| 25 | 2048 | 46 | 114,824 | 151,019 | 27,110 | 6,896 | 117,013 | 0.1600 | 24,163 | 92,850 | 94,556 |
| 26 | 2049 | 47 | 114,824 | 152,559 | 27,479 | 6,973 | 118,107 | 0.1600 | 24,409 | 93,698 | 95,486 |
| 27 | 2050 | 48 | 114,824 | 154,115 | 27,853 | 7,051 | 119,212 | 0.1600 | 24,658 | 94,554 | 96,426 |
| 28 | 2051 | 49 | 114,824 | 155,687 | 28,230 | 7,129 | 120,328 | 0.1540 | 23,976 | 96,352 | 98,329 |
| 29 | 2052 | 50 | 114,824 | 171,164 | 31,944 | 7,903 | 131,317 | 0.1490 | 25,503 | 105,813 | 108,060 |
| 30 | 2053 | 51 | 124,984 | 172,910 | 32,363 | 7,991 | 132,556 | 0.1490 | 25,764 | 106,793 | 109,136 |
| 31 | 2054 | 52 | 124,984 | 174,674 | 32,787 | 8,079 | 133,808 | 0.1490 | 26,026 | 107,782 | 110,224 |
| 32 | 2055 | 53 | 124,984 | 176,455 | 33,214 | 8,168 | 135,073 | 0.1440 | 25,410 | 109,664 | 112,227 |
| 33 | 2056 | 54 | 124,984 | 178,255 | 33,901 | 8,258 | 136,097 | 0.1440 | 25,669 | 110,428 | 113,089 |
| 34 | 2057 | 55 | 115,902 | 167,015 | 30,949 | 7,696 | 128,371 | 0.1490 | 24,885 | 103,486 | 106,053 |
| 35 | 2058 | 56 | 115,902 | 168,719 | 31,358 | 7,781 | 129,580 | 0.1490 | 25,139 | 104,441 | 107,108 |
| 36 | 2059 | 57 | 115,902 | 170,440 | 31,771 | 7,867 | 130,802 | 0.1490 | 25,396 | 105,407 | 108,173 |
| 37 | 2060 | 58 | 115,902 | 172,178 | 32,188 | 7,954 | 132,037 | 0.1490 | 25,655 | 106,382 | 109,251 |
| 38 | 2061 | 59 | 115,902 | 173,934 | 32,609 | 8,042 | 133,283 | 0.1490 | 25,916 | 107,367 | 110,340 |
| 39 | 2062 | 60 | 115,128 | 174,535 | 32,753 | 8,072 | 133,710 | 0.1490 | 26,006 | 107,704 | 110,764 |
| 40 | 2063 | 61 | 115,128 | 176,315 | 33,181 | 8,161 | 134,974 | 0.1440 | 25,389 | 109,585 | 112,776 |
| 41 | 2064 | 62 | 78,287 | 121,117 | 19,933 | 5,401 | 95,783 | 0.1820 | 22,043 | 73,740 | 75,341 |
| | | | | | | | | | **Total Present Value =** | | **3,334,360** |

Sources:

Worklife Earnings in 2020 Dollars: U.S. Census Bureau, Current Population Survey, 2020 Annual Social and Economic Supplement. PINC-04. Educational Attainment--People 18 Years Old and Over, by Total Money Earnings in 2020 by Work Experience, Age, Race, Hispanic Origin, and Sex Based on Male, All Races.

Worklife Expectancy: "A Markov Process Model of Labor Force Activity: Extended Tables of Central Tendency, Shape, Percentile Points, and Bootstrap Standard Errors", Journal of Forensic Economics, Vol. 28, No. 1-2, 2019, by Gary R. Skoog and James E. Ciecka, and Kurt V. Krueger, Table 8.

Annual Increase in Real Earnings: Annual Increase in Real Hourly Compensation for All Employed Persons, Business Sector as reported by the FRED database of the St. Louis Federal Reserve Bank, 7/2001 to 7/2021.

Federal Taxes: U.S. Internal Revenue Service, Form 1040 and 1040 Instructions, 2021, based on Single Filer taking Standard deductions and Exemptions.

State Taxes: Mississippi State Tax Commission, Form 80-105-8-1-000, 2021, and Form 80-100, 2020, based on Single Filer taking Standard deductions and Exemptions.

Personal Consumption Percentage: "Patton-Nelson Personal Consumption Tables 2016-17", Ruble, Patton, and Nelson, 2019, Journal of Legal Economics, Volume 25, Number 1-2, pp. 75-89, Table 3a.

Real Discount Rate. http://www.federalreserve.gov/releases/h15/update/, Rate and Bonds, Inflation Indexed Treasuries, 30-Year, February 2, 2022.

Table 3
Austin Chamberlain
Lost Household Production

| Assumptions: | |
|---|---|
| Date of Birth: | |
| Date of Death: | 12/21/2001 |
| Age at Death: | 10/24/2021 |
| Worklife Expectancy from Age 20: | 19.8 Years |
| Life Expectancy at Age 19: | 58 Years |
| Annual Increase in Earnings (2019 to 2021): | 4.07% |
| Personal Consumption Percentage: | 25.00% |
| Discount Rate: | -0.07% |

| # | Year ending 10/24 | Age | Household Production in 2019 Dollars | Household Production in 2021 Dollars | Personal Consumption | Lost Household Production | Present Value of Lost Household Production |
|---|---|---|---|---|---|---|---|
| 1 | 2022 | 20 | 8,572 | 9,284 | 2,321 | 6,963 | 6,963 |
| 2 | 2023 | 21 | 8,572 | 9,284 | 2,321 | 6,963 | 6,968 |
| 3 | 2024 | 22 | 8,572 | 9,284 | 2,322 | 6,963 | 6,968 |
| 4 | 2025 | 23 | 8,572 | 9,284 | 2,321 | 6,963 | 6,973 |
| 5 | 2026 | 24 | 8,572 | 9,284 | 2,321 | 6,963 | 6,978 |
| 6 | 2027 | 25 | 8,572 | 9,284 | 2,321 | 6,963 | 6,983 |
| 7 | 2028 | 26 | 8,572 | 9,288 | 2,321 | 6,963 | 6,988 |
| 8 | 2029 | 27 | 8,572 | 9,284 | 2,321 | 6,963 | 6,992 |
| 9 | 2030 | 28 | 8,572 | 9,284 | 2,321 | 6,963 | 6,997 |
| 10 | 2031 | 29 | 8,572 | 9,284 | 2,321 | 6,963 | 7,002 |
| 11 | 2032 | 30 | 8,572 | 9,284 | 2,321 | 6,963 | 7,007 |
| 12 | 2033 | 31 | 8,572 | 9,284 | 2,321 | 6,963 | 7,012 |
| 13 | 2034 | 32 | 8,572 | 9,284 | 2,321 | 6,963 | 7,017 |
| 14 | 2035 | 33 | 8,572 | 9,284 | 2,321 | 6,963 | 7,022 |
| 15 | 2036 | 34 | 8,572 | 9,284 | 2,322 | 6,963 | 7,027 |
| 16 | 2037 | 35 | 8,572 | 9,284 | 2,321 | 6,963 | 7,032 |
| 17 | 2038 | 36 | 8,572 | 9,284 | 2,321 | 6,963 | 7,037 |
| 18 | 2039 | 37 | 8,572 | 9,284 | 2,321 | 6,963 | 7,042 |
| 19 | 2040 | 38 | 8,572 | 9,284 | 2,321 | 6,963 | 7,047 |
| 20 | 2041 | 39 | 8,572 | 9,284 | 2,322 | 6,963 | 7,052 |
| 21 | 2042 | 40 | 8,572 | 9,284 | 2,321 | 6,963 | 7,056 |
| 22 | 2043 | 41 | 8,572 | 9,284 | 2,321 | 6,963 | 7,061 |
| 23 | 2044 | 42 | 8,572 | 9,284 | 2,321 | 6,963 | 7,066 |
| 24 | 2045 | 43 | 8,572 | 9,284 | 2,321 | 6,963 | 7,071 |
| 25 | 2046 | 44 | 8,572 | 9,284 | 2,321 | 6,963 | 7,076 |
| 26 | 2047 | 45 | 10,933 | 11,936 | 2,976 | 8,929 | 9,087 |
| 27 | 2048 | 46 | 10,998 | 11,906 | 2,976 | 8,929 | 9,092 |
| 28 | 2049 | 47 | 10,933 | 11,906 | 2,976 | 8,929 | 9,098 |
| 29 | 2050 | 48 | 10,993 | 11,906 | 2,976 | 8,929 | 9,106 |
| 30 | 2051 | 49 | 10,993 | 11,906 | 2,976 | 8,929 | 9,106 |
| 31 | 2052 | 50 | 10,993 | 11,906 | 2,976 | 8,929 | 9,113 |
| 32 | 2053 | 51 | 10,993 | 11,906 | 2,976 | 8,929 | 9,119 |
| 33 | 2054 | 52 | 10,993 | 11,906 | 2,976 | 8,929 | 9,125 |
| 34 | 2055 | 53 | 10,993 | 11,906 | 2,976 | 8,929 | 9,132 |
| 35 | 2056 | 54 | 10,993 | 11,906 | 2,976 | 8,929 | 9,138 |
| 36 | 2057 | 55 | 10,910 | 11,816 | 2,954 | 8,862 | 9,144 |
| 37 | 2058 | 56 | 10,910 | 11,816 | 2,954 | 8,862 | 9,082 |
| 38 | 2059 | 57 | 10,910 | 11,816 | 2,954 | 8,862 | 9,084 |
| 39 | 2060 | 58 | 10,910 | 11,816 | 2,954 | 8,862 | 8,994 |
| 40 | 2061 | 59 | 14,746 | 15,971 | 3,993 | 11,978 | 8,301 |
| 41 | 2062 | 60 | 14,746 | 15,971 | 3,993 | 11,978 | 12,310 |
| 42 | 2063 | 61 | 14,746 | 15,971 | 3,993 | 11,978 | 12,318 |
| 43 | 2064 | 62 | 14,746 | 15,971 | 3,993 | 11,978 | 12,327 |
| 44 | 2065 | 63 | 14,746 | 15,971 | 3,993 | 11,978 | 12,333 |
| 45 | 2066 | 64 | 14,746 | 15,971 | 3,993 | 11,978 | 12,344 |
| 46 | 2067 | 65 | 14,746 | 15,971 | 3,993 | 11,978 | 12,353 |
| 47 | 2068 | 66 | 14,746 | 15,971 | 3,993 | 11,978 | 12,361 |
| 48 | 2069 | 67 | 14,746 | 15,971 | 3,993 | 11,978 | 12,370 |
| 49 | 2070 | 68 | 14,746 | 15,971 | 3,993 | 11,978 | 12,379 |
| 50 | 2071 | 69 | 14,746 | 15,971 | 3,993 | 11,978 | 12,387 |
| 51 | 2072 | 70 | 14,746 | 15,971 | 3,993 | 11,978 | 12,396 |
| 52 | 2073 | 71 | 14,746 | 15,971 | 3,993 | 11,978 | 12,409 |
| 53 | 2074 | 72 | 14,746 | 15,971 | 3,993 | 11,978 | 12,419 |
| 54 | 2075 | 73 | 11,797 | 12,776 | 3,194 | 9,582 | 12,428 |
| 55 | 2076 | 74 | 8,847 | 9,582 | 2,396 | 7,187 | 9,945 |
| 56 | 2077 | 75 | 8,858 | 6,388 | 1,597 | 4,791 | 7,464 |
| 57 | 2078 | 76 | 2,948 | 3,193 | 799 | 2,395 | 4,809 |
| 58 | 2079 | 77 | 0 | 0 | 0 | 0 | 2,491 |
| | | | | | | | 0 |
| | | | | Total Present Value = | | | 501,073 |

Sources:

Household Production Hours, Hourly Value, Personal Consumption Percentage, and Mississippi Wage Adjustment: Expectancy Data, The Dollar Value of a Day: 2019 Dollar Valuation. Shawnee Mission, Kansas, 2020, Tables 263, 5, 82, and 418.

Worklife Expectancy: "A Markov Process Model of Labor Force Activity: Extended Tables of Central Tendency, Shape, Percentile Points, and Bootstrap Standard Errors", Journal of Forensic Economics, Vol. 28, No. 1-2, 2019, by Gary R. Skoog and James E. Ciecka, and Kurt V. Krueger, Table 8.

Life Expectancy: United States Life Tables, 2018, National Vital Statistics Reports, U.S. Department of Health and Human Services, Volume 69, Number 12, November 17, 2020.

Annual Increase in Earnings (12/2019 to 12/2021): Department of Labor, Bureau of Labor Statistics as reported by FRED database of the St. Louis Federal Reserve Bank, Consumer Price Index for All Urban Consumers, All Items, 12/2019 to 12/2021.

Real Discount Rate, http://www.federalreserve.gov/releases/h15/update/, Rate and Bonds, Inflation Indexed Treasuries, 30-Year, February 2, 2022.

# PINC-04. Educational Attainment—People 18 Years Old and Over by Total Money Earnings in 2020, Work Experience in 2020, Age, Race, Hispanic Origin, and Sex

Information on confidentiality protection, sampling error, nonsampling error, and definitions is available at <https://www.census.gov/programs-surveys/cps/technical-documentation/complete.html>.

Source: U.S. Census Bureau, Current Population Survey, 2021 Annual Social and Economic Supplement (CPS ASEC).

(Numbers in thousands. People 18 years old and over as of March of the following year. A.O.I.C. stands for alone or in combination)

**Male**
**All Races**
**Worked Full-Time, Year-Round**
**Mean Earnings**

| Characteristic | Total | Less Than 9th Grade | 9th to 12th (no diploma) | High school Graduate (total GED) | Some college No degree | Associate degree | College Bachelor's degree or more | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Total | Bachelor's degree | Master's degree | Professional degree | Doctorate degree |
| Total | 84,180 | 45,862 | 42,751 | 55,591 | 66,599 | 70,073 | 119,760 | 102,614 | 131,959 | 197,566 | 173,689 |
| Under 65 years | 82,983 | 47,149 | 42,860 | 64,761 | 64,046 | 68,975 | 117,695 | 101,446 | 132,790 | 192,589 | 371,777 |
| 18 to 24 years | 39,555 | (B) | 29,911 | 35,478 | 36,452 | 43,740 | 65,364 | 65,902 | (B) | (B) | (B) |
| 25 to 29 years | 63,654 | 63,230 | 32,469 | 42,825 | 47,710 | 57,820 | 73,627 | 71,154 | 81,374 | (B) | (B) |
| 30 to 34 years | 72,104 | 48,064 | 39,705 | 54,651 | 59,091 | 62,917 | 89,855 | 82,855 | 103,141 | 120,624 | 126,723 |
| 35 to 39 years | 69,010 | 81,112 | 38,206 | 64,951 | 69,091 | 70,149 | 116,206 | 104,113 | 120,005 | 158,685 | 144,364 |
| 40 to 44 years | 69,053 | 43,059 | 47,227 | 58,194 | 63,561 | 72,481 | 120,083 | 115,680 | 134,180 | 224,340 | 204,584 |
| 45 to 49 years | 94,749 | 94,275 | 45,231 | 57,615 | 85,028 | 75,546 | 134,872 | 115,654 | 147,962 | 237,598 | 172,785 |
| 50 to 54 years | 100,308 | 48,975 | 48,975 | 61,318 | 68,599 | 74,096 | 141,253 | 124,956 | 150,200 | 178,727 | 204,584 |
| 55 to 59 years | 94,161 | 41,905 | 54,577 | 65,095 | 71,464 | 76,301 | 137,695 | 115,902 | 149,155 | 179,727 | 172,785 |
| 60 to 64 years | 94,039 | 45,456 | 47,336 | 69,082 | 76,592 | 82,308 | 137,398 | 115,123 | 146,958 | 263,864 | 182,785 |
| 65 to 69 years | 102,059 | 45,955 | (B) | 76,180 | 74,415 | 87,837 | 129,626 | 116,123 | 149,155 | 247,591 | 197,463 |
| 70 to 74 years | 110,023 | (B) | (B) | 64,246 | 92,772 | 87,868 | 163,150 | 107,565 | 132,331 | 206,431 | 182,052 |
| 75 years and over | 95,710 | (B) | (B) | 61,789 | 105,154 | (B) | 117,776 | 115,782 | 124,416 | (B) | (B) |

*Appendix 2.*

Federal Reserve Economic Data
Link: https://fred.stlouisfed.org
Help: https://fredhelp.stlouisfed.org
Economic Research Division
Federal Reserve Bank of St. Louis

Business Sector: Real Hourly Compensation for All Employed Persons, Index
2012=100, Quarterly, Seasonally Adjusted

| Quarterly observation_date | Index of Real Hourly Compensation | Annual Rate of Change |
|---|---|---|
| 2001-07-01 | 93.513 | |
| 2021-07-01 | 114.498 | 1.02% |

U.S. Bureau of Labor Statistics, Business Sector: Real Hourly Compensation for
All Employed Persons [PRS84006151], retrieved from FRED, Federal Reserve
Bank of St. Louis; https://fred.stlouisfed.org/series/PRS84006151, February 4,
2022.

*Appendix 3.*

*Journal of Forensic Economics* 28(1-2), 2019, pp. 15-108
© 2019 by the National Association of Forensic Economics

# The Markov Model of Labor Force Activity 2012-17: Extended Tables of Central Tendency, Shape, Percentile Points, and Bootstrap Standard Errors

Gary R. Skoog, James E. Ciecka, and Kurt V. Krueger*

## Abstract

This paper updates the Skoog-Ciecka-Krueger (2011) study which used 2005-09 U.S. population labor force data to estimate worklife expectancies. This update presents estimates using 2012-17 labor force data for persons ages 18 and over by sex and education. These updated estimates are presented as before as a set of worklife tables, including extended probability calculations and other statistical measures useful to forensic economists. Transition probabilities, by age, gender, and education, are contained in the electronic supplementary materials.

## I. Introduction

Worklife expectancy within the Markov model remains the current paradigm employed by forensic economists to calculate mortality-adjusted time in-and-out of the labor force. Its use is commonly dated to Smith (1982) and the Bureau of Labor Statistics *Bulletin 2135*, which announced the change from the conventional worklife model; but the model goes back earlier.[1] Two living states, active and inactive in the labor force, are tracked and continue to be used in the worklife tables that are in most common use.

This paper updates the Skoog-Ciecka-Krueger (2011) study which used 2005-09 U.S. population labor force data to estimate worklife expectancies. This update presents estimates using 2012-17 labor force data for persons ages 18 and over by sex and education. These updated estimates are presented as before as a set of worklife tables, including extended probability calculations and other statistical measures useful to forensic economists.

The paper is organized as follows. Section II contains a brief refresher on the method, notation, and recursions used to calculate worklife expectancies and other distributional characteristics of time in the labor force. Our data sets are discussed in Section III. Section IV is the heart of the paper. It

---

*Gary R. Skoog, Legal Econometrics Inc., Glenview, IL; James E. Ciecka, DePaul University, Chicago, IL; Kurt V. Krueger, John O. Ward Associates, Prairie Village, KS.
[1]Hoem and Fong (1976) and Hoem (1977) are the earliest known multistate life tables of lifetime labor force activity.

Appendix 3, cont.

34

## JOURNAL OF FORENSIC ECONOMICS

Table 6
Characteristics for Initially Active Men, Some College, No Degree

| Age | WLE Mean | Median | Mode | SD | SK | KU | 10% | 25% | 75% | 90% | WLE-B | SE-B |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 20 | 38.54 | 39.50 | 41.50 | 9.46 | -0.91 | 4.59 | 26.50 | 33.50 | 44.50 | 49.50 | 38.51 | 0.28 |
| 21 | 37.71 | 38.50 | 40.50 | 9.37 | -0.88 | 4.49 | 26.50 | 32.50 | 44.50 | 48.50 | 37.63 | 0.28 |
| 22 | 36.89 | 38.50 | 39.50 | 9.27 | -0.84 | 4.39 | 25.50 | 31.50 | 43.50 | 47.50 | 36.87 | 0.28 |
| 23 | 36.06 | 37.50 | 39.50 | 9.17 | -0.81 | 4.28 | 24.50 | 31.50 | 42.50 | 46.50 | 36.04 | 0.27 |
| 24 | 35.23 | 36.50 | 38.50 | 9.07 | -0.77 | 4.16 | 23.50 | 30.50 | 41.50 | 45.50 | 35.21 | 0.27 |
| 25 | 34.39 | 35.50 | 37.50 | 8.97 | -0.74 | 4.06 | 23.50 | 29.50 | 40.50 | 44.50 | 34.36 | 0.27 |
| 26 | 33.54 | 34.50 | 36.50 | 8.87 | -0.70 | 3.95 | 22.50 | 28.50 | 39.50 | 43.50 | 33.51 | 0.27 |
| 27 | 32.68 | 33.50 | 35.50 | 8.77 | -0.67 | 3.85 | 21.50 | 27.50 | 38.50 | 42.50 | 32.65 | 0.27 |
| 28 | 31.81 | 32.50 | 34.50 | 8.68 | -0.63 | 3.75 | 20.50 | 26.50 | 37.50 | 41.50 | 31.79 | 0.26 |
| 29 | 30.94 | 31.50 | 33.50 | 8.58 | -0.60 | 3.66 | 19.50 | 25.50 | 36.50 | 40.50 | 30.92 | 0.26 |
| 30 | 30.08 | 30.50 | 32.50 | 8.49 | -0.57 | 3.57 | 19.50 | 25.50 | 35.50 | 40.50 | 30.06 | 0.26 |
| 31 | 29.22 | 30.50 | 31.50 | 8.39 | -0.54 | 3.49 | 18.50 | 24.50 | 34.50 | 39.50 | 29.20 | 0.26 |
| 32 | 28.36 | 29.50 | 30.50 | 8.29 | -0.50 | 3.41 | 17.50 | 23.50 | 34.50 | 38.50 | 28.34 | 0.25 |
| 33 | 27.51 | 28.50 | 29.50 | 8.19 | -0.47 | 3.34 | 16.50 | 22.50 | 33.50 | 37.50 | 27.50 | 0.25 |
| 34 | 26.67 | 27.50 | 28.50 | 8.09 | -0.44 | 3.27 | 15.50 | 21.50 | 32.50 | 36.50 | 26.65 | 0.24 |
| 35 | 25.83 | 26.50 | 28.50 | 7.99 | -0.41 | 3.21 | 15.50 | 20.50 | 31.50 | 35.50 | 25.82 | 0.24 |
| 36 | 25.00 | 25.50 | 27.50 | 7.88 | -0.38 | 3.15 | 14.50 | 20.50 | 30.50 | 35.50 | 24.98 | 0.24 |
| 37 | 24.16 | 24.50 | 26.50 | 7.78 | -0.34 | 3.09 | 13.50 | 19.50 | 29.50 | 33.50 | 24.14 | 0.24 |
| 38 | 23.32 | 23.50 | 25.50 | 7.67 | -0.31 | 3.04 | 13.50 | 18.50 | 28.50 | 32.50 | 23.30 | 0.25 |
| 39 | 22.48 | 22.50 | 24.50 | 7.56 | -0.28 | 2.98 | 12.50 | 17.50 | 27.50 | 31.50 | 22.46 | 0.25 |
| 40 | 21.63 | 22.50 | 23.50 | 7.46 | -0.24 | 2.94 | 11.50 | 16.50 | 26.50 | 30.50 | 21.61 | 0.24 |
| 41 | 20.78 | 21.50 | 22.50 | 7.35 | -0.21 | 2.89 | 10.50 | 16.50 | 25.50 | 29.50 | 20.77 | 0.24 |
| 42 | 19.94 | 20.50 | 21.50 | 7.25 | -0.18 | 2.85 | 10.50 | 15.50 | 24.50 | 28.50 | 19.93 | 0.23 |
| 43 | 19.10 | 19.50 | 20.50 | 7.14 | -0.14 | 2.82 | 9.50 | 14.50 | 24.50 | 27.50 | 19.09 | 0.23 |
| 44 | 18.27 | 18.50 | 19.50 | 7.03 | -0.11 | 2.79 | 8.50 | 13.50 | 23.50 | 27.50 | 18.27 | 0.23 |
| 45 | 17.44 | 17.50 | 18.50 | 6.91 | -0.08 | 2.76 | 8.50 | 12.50 | 22.50 | 26.50 | 17.45 | 0.23 |
| 46 | 16.63 | 16.50 | 17.50 | 6.79 | -0.04 | 2.74 | 7.50 | 12.50 | 21.50 | 25.50 | 16.64 | 0.22 |
| 47 | 15.84 | 16.50 | 16.50 | 6.67 | -0.00 | 2.73 | 6.50 | 11.50 | 20.50 | 24.50 | 15.84 | 0.21 |
| 48 | 15.06 | 15.50 | 15.50 | 6.58 | 0.03 | 2.72 | 6.50 | 10.50 | 19.50 | 23.50 | 15.06 | 0.20 |
| 49 | 14.32 | 14.50 | 14.50 | 6.38 | 0.08 | 2.72 | 5.50 | 9.50 | 18.50 | 22.50 | 14.31 | 0.20 |
| 50 | 13.59 | 13.50 | 14.50 | 6.22 | 0.12 | 2.73 | 5.50 | 9.50 | 17.50 | 21.50 | 13.59 | 0.19 |
| 51 | 12.89 | 12.50 | 13.50 | 6.05 | 0.17 | 2.75 | 4.50 | 8.50 | 16.50 | 20.50 | 12.88 | 0.19 |
| 52 | 12.19 | 12.50 | 12.50 | 5.88 | 0.22 | 2.77 | 4.50 | 7.50 | 16.50 | 19.50 | 12.18 | 0.18 |
| 53 | 11.50 | 11.50 | 11.50 | 5.71 | 0.28 | 2.81 | 3.50 | 7.50 | 15.50 | 19.50 | 11.49 | 0.18 |
| 54 | 10.82 | 10.50 | 10.50 | 5.54 | 0.34 | 2.85 | 3.50 | 6.50 | 14.50 | 18.50 | 10.82 | 0.18 |

*Appendix 5, con't*

38

## JOURNAL OF FORENSIC ECONOMICS

Table 8
Characteristics for Initially Active Men, Bachelor's Degree

| Age | WLE Mean | Median | Mode | SD | SK | KU | 10% | 25% | 75% | 90% | WLE-B | SE-B |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 22 | 40.68 | 41.50 | 42.50 | 9.07 | -1.29 | 6.13 | 30.50 | 36.50 | 46.50 | 50.50 | 40.67 | 0.19 |
| 23 | 39.81 | 41.50 | 41.50 | 8.96 | -1.25 | 5.97 | 29.50 | 36.50 | 45.50 | 49.50 | 39.79 | 0.19 |
| 24 | 38.92 | 40.50 | 40.50 | 8.84 | -1.20 | 5.81 | 28.50 | 35.50 | 44.50 | 48.50 | 38.91 | 0.19 |
| 25 | 38.03 | 39.50 | 39.50 | 8.73 | -1.15 | 5.64 | 27.50 | 34.50 | 43.50 | 47.50 | 38.01 | 0.19 |
| 26 | 37.12 | 38.50 | 38.50 | 8.62 | -1.11 | 5.48 | 26.50 | 33.50 | 42.50 | 46.50 | 37.11 | 0.19 |
| 27 | 36.22 | 37.50 | 37.50 | 8.51 | -1.06 | 5.32 | 25.50 | 32.50 | 41.50 | 45.50 | 36.20 | 0.19 |
| 28 | 35.31 | 36.50 | 36.50 | 8.40 | -1.01 | 5.16 | 25.50 | 31.50 | 40.50 | 45.50 | 36.20 | 0.19 |
| 29 | 34.40 | 35.50 | 36.50 | 8.30 | -0.96 | 5.01 | 24.50 | 30.50 | 39.50 | 43.50 | 35.29 | 0.18 |
| 30 | 33.49 | 34.50 | 35.50 | 8.19 | -0.92 | 4.86 | 23.50 | 29.50 | 38.50 | 42.50 | 34.38 | 0.18 |
| 31 | 32.58 | 33.50 | 34.50 | 8.09 | -0.87 | 4.71 | 22.50 | 28.50 | 37.50 | 41.50 | 32.56 | 0.18 |
| 32 | 31.66 | 32.50 | 33.50 | 7.99 | -0.83 | 4.57 | 21.50 | 27.50 | 36.50 | 41.50 | 32.56 | 0.18 |
| 33 | 30.74 | 31.50 | 32.50 | 7.89 | -0.77 | 4.43 | 20.50 | 26.50 | 35.50 | 40.50 | 31.65 | 0.18 |
| 34 | 29.82 | 30.50 | 31.50 | 7.79 | -0.73 | 4.30 | 20.50 | 25.50 | 34.50 | 38.50 | 30.72 | 0.18 |
| 35 | 28.90 | 29.50 | 30.50 | 7.69 | -0.68 | 4.18 | 19.50 | 25.50 | 34.50 | 38.50 | 29.80 | 0.18 |
| 36 | 27.99 | 28.50 | 29.50 | 7.60 | -0.64 | 4.06 | 18.50 | 24.50 | 32.50 | 37.50 | 28.89 | 0.18 |
| 37 | 27.08 | 27.50 | 28.50 | 7.50 | -0.59 | 3.95 | 17.50 | 23.50 | 31.50 | 36.50 | 27.97 | 0.18 |
| 38 | 26.17 | 26.50 | 27.50 | 7.40 | -0.54 | 3.85 | 16.50 | 22.50 | 30.50 | 34.50 | 27.06 | 0.18 |
| 39 | 25.26 | 25.50 | 26.50 | 7.30 | -0.50 | 3.76 | 15.50 | 21.50 | 29.50 | 34.50 | 26.15 | 0.18 |
| 40 | 24.36 | 24.50 | 25.50 | 7.21 | -0.45 | 3.67 | 15.50 | 20.50 | 28.50 | 33.50 | 25.24 | 0.18 |
| 41 | 23.46 | 23.50 | 24.50 | 7.11 | -0.41 | 3.58 | 14.50 | 19.50 | 26.50 | 32.50 | 24.34 | 0.18 |
| 42 | 22.56 | 22.50 | 23.50 | 7.01 | -0.36 | 3.51 | 13.50 | 18.50 | 26.50 | 31.50 | 23.44 | 0.18 |
| 43 | 21.67 | 22.50 | 22.50 | 6.90 | -0.31 | 3.43 | 12.50 | 17.50 | 26.50 | 30.50 | 22.54 | 0.18 |
| 44 | 20.78 | 21.50 | 21.50 | 6.80 | -0.27 | 3.37 | 11.50 | 16.50 | 25.50 | 30.50 | 21.65 | 0.17 |
| 45 | 19.90 | 20.50 | 20.50 | 6.69 | -0.22 | 3.31 | 11.50 | 15.50 | 24.50 | 28.50 | 20.76 | 0.17 |
| 46 | 19.04 | 19.50 | 19.50 | 6.57 | -0.16 | 3.25 | 10.50 | 15.50 | 23.50 | 27.50 | 19.89 | 0.17 |
| 47 | 18.17 | 18.50 | 18.50 | 6.45 | -0.11 | 3.21 | 9.50 | 14.50 | 22.50 | 26.50 | 19.02 | 0.17 |
| 48 | 17.31 | 17.50 | 17.50 | 6.34 | -0.05 | 3.16 | 9.50 | 13.50 | 21.50 | 25.50 | 18.16 | 0.16 |
| 49 | 16.45 | 16.50 | 16.50 | 6.22 | 0.00 | 3.12 | 8.50 | 12.50 | 21.50 | 25.50 | 17.29 | 0.16 |
| 50 | 15.59 | 15.50 | 15.50 | 6.10 | 0.06 | 3.10 | 7.50 | 11.50 | 19.50 | 23.50 | 16.43 | 0.16 |
| 51 | 14.75 | 14.50 | 14.50 | 5.97 | 0.12 | 3.07 | 7.50 | 10.50 | 18.50 | 22.50 | 15.57 | 0.16 |
| 52 | 13.92 | 13.50 | 13.50 | 5.85 | 0.19 | 3.06 | 6.50 | 10.50 | 17.50 | 21.50 | 14.73 | 0.16 |
| 53 | 13.10 | 12.50 | 12.50 | 5.72 | 0.25 | 3.06 | 5.50 | 9.50 | 16.50 | 20.50 | 13.90 | 0.16 |
| 54 | 12.30 | 12.50 | 11.50 | 5.58 | 0.32 | 3.07 | 5.50 | 8.50 | 15.50 | 20.50 | 13.08 | 0.15 |
| 55 | 11.50 | 11.50 | 10.50 | 5.45 | 0.39 | 3.10 | 4.50 | 7.50 | 14.50 | 18.50 | 12.28 | 0.15 |

appendix 4

Michael R. Ruble, Robert T. Patton, and David M. Nelson. 2019. Patton-Nelson Personal Consumption Tables 2016-17. *Journal of Legal Economics* 25(1-2): pp. 75-89.

# Patton-Nelson Personal Consumption Tables 2016-17

## Michael R. Ruble, Robert T. Patton, and David M. Nelson

**Abstract:** *The Patton-Nelson Personal Consumption Tables, a source widely referenced by forensic economists and attorneys, were last updated using 2011-12 data. The Bureau of Labor Statistics Consumer Expenditure Survey, 2016-17 was used to recalculate the consumption percentage tables for adult males and females employing the most current information available. When compared to the 2011-12 survey results, the 2016-17 study reveals slight to moderate increases in consumption percentages among consumer units depending on family size.*

The Patton-Nelson Personal Consumption (PNPC) Tables were last updated in 2014 (Ruble, Patton, and Nelson 2014) using 2011-12 Bureau of Labor Statistic (BLS) Consumer Expenditure data. The resulting percentages are applied to total consumer unit pretax income to determine the necessary consumption allowance which is subtracted from the pretax earnings of the decedent in arriving at the loss to the estate.

The PNPC Tables were first published nationally in 1991 (Patton and Nelson 1991). Since that time, the tables have been updated five times using 1994-95 BLS data (Lierman, Patton, and Nelson 1998) 1997-98 BLS data (Ruble, Patton, and Nelson 2000), 2000-01 BLS data (Ruble, Patton, and Nelson 2004), 2005-06 BLS data (Ruble, Patton, and Nelson 2009) and 2011-12 BLS data (Ruble, Patton, and Nelson 2014). In the 2000-01 version, the original model was modified slightly to include suggestions made by Bell and Taub 2002, by changing how certain consumer expenditures are allocated in determining the adult consumption within the consumer unit.

Michael R. Ruble, Ph.D., CPA, 1260 Thalen Drive, Lynden, WA 98264, 360-354-8749, E-mail: rublem747@msn.com

Robert T. Patton, Ph.D., 1100 Chuckanut Crest Lane, Bellingham, WA 98226, 360-305-7132, E-mail: bpatton916@msn.com

David M. Nelson, Ph.D., Department of Economics, College of Business and Economics, Western Washington University, Bellingham, WA 98225

Appendix 4, con't

## Table 3a. (2016-17) Incremental Consumption Cost Percentage - Males

| Income Level $ | Consumer Unit Size | | | | |
| --- | --- | --- | --- | --- | --- |
| | 1 | | | | |
| | Low – High | 2 | 3 | 4 | 5 + |
| | Male | | | | |
| 20,000 | 127.0 – 131.3 | 51.6 | 36.3 | 28.8 | 23.3 |
| 25,000 | 112.6 – 116.7 | 45.3 | 32.0 | 25.7 | 20.8 |
| 30,000 | 102.1 – 105.9 | 40.8 | 28.8 | 23.4 | 19.0 |
| 35,000 | 94.0 – 97.6 | 37.3 | 26.4 | 21.6 | 17.5 |
| 40,000 | 87.5 – 91.0 | 34.5 | 24.5 | 20.1 | 16.4 |
| 45,000 | 82.1 – 85.5 | 32.2 | 22.9 | 19.0 | 15.4 |
| 50,000 | 77.6 – 80.9 | 30.3 | 21.6 | 17.9 | 14.6 |
| 55,000 | 73.7 – 76.9 | 28.7 | 20.4 | 17.1 | 13.9 |
| 60,000 | 70.4 – 73.4 | 27.3 | 19.5 | 16.3 | 13.3 |
| 65,000 | 67.4 – 70.4 | 26.0 | 18.6 | 15.7 | 12.8 |
| 70,000 | 64.8 – 67.7 | 24.9 | 17.8 | 15.1 | 12.3 |
| 75,000 | 62.4 – 65.3 | 23.9 | 17.1 | 14.5 | 11.9 |
| 80,000 | 60.3 – 63.1 | 23.1 | 16.5 | 14.1 | 11.5 |
| 85,000 | 58.4 – 61.1 | 22.3 | 16.0 | 13.6 | 11.2 |
| 90,000 | 56.6 – 59.3 | 21.6 | 15.5 | 13.2 | 10.9 |
| 95,000 | 55.0 – 57.6 | 20.9 | 15.0 | 12.9 | 10.6 |
| 100,000 | 53.5 – 56.0 | 20.3 | 14.6 | 12.5 | 10.3 |
| 110,000 | 50.8 – 53.3 | 19.2 | 13.8 | 11.9 | 9.8 |
| 120,000 | 48.5 – 50.9 | 18.2 | 13.1 | 11.4 | 9.4 |
| 130,000 | 46.4 – 48.8 | 17.4 | 12.6 | 10.9 | 9.0 |
| 140,000 | 44.6 – 46.9 | 16.7 | 12.0 | 10.5 | 8.7 |
| 150,000 | 43.0 – 45.2 | 16.0 | 11.6 | 10.2 | 8.4 |
| 160,000 | 41.5 – 43.7 | 15.4 | 11.2 | 9.8 | 8.1 |
| 170,000 | 40.2 – 42.3 | 14.9 | 10.8 | 9.5 | 7.9 |
| 180,000 | 39.0 – 41.1 | 14.4 | 10.4 | 9.2 | 7.6 |
| 190,000 | 37.9 – 39.9 | 13.9 | 10.1 | 9.0 | 7.4 |
| 200,000 | 36.8 – 38.8 | 13.5 | 9.8 | 8.8 | 7.2 |

12.1%. Expenditure categories that accounted for most of the difference were Food, Housing and Healthcare. The increase in expenditure percentages is consistent with the increase in the consumption percentages is Tables 3a and 3b.

84

*Journal of Legal Economics*
Volume 25, Number 1–2, September 2019, pp. 75–89.

*Appendix 5.*

**HH-4. Households by Size: 1960 to Present**
(Numbers in thousands, except for averages)

For more information about ASEC, including the source and accuracy statement, see the technical documentation accessible at:
https://www.census.gov/programs-surveys/cps/technical-documentation/complete.html

| Year | All households | Number of people | | | | | | | Average number of people per household |
|------|----------------|------|------|-------|------|------|------|---------------|----------------------------------------|
| | | One | Two | Three | Four | Five | Six | Seven or more | |
| 2020 | 128,451 | 36,188 | 44,742 | 19,337 | 16,262 | 7,446 | 2,919 | 1,546 | 2.53 |
| | % of Total | 28.2% | 34.8% | 15.1% | 12.7% | 5.8% | 2.3% | 1.2% | |

Source: U.S. Census Bureau, Current Population Survey, March and Annual Social and Economic Supplements.
Internet Release Date: December 2020

28.2% of Households are One-Person.
71.8% of Households are Two or More People.

The average household size is 2.53 People.

*appendix 6.*

## Selected Interest Rates

| Instruments | 2022 Jan 27 | 2022 Jan 28 | 2022 Jan 31 | 2022 Feb 1 | 2022 Feb 2 |
|---|---|---|---|---|---|
| Federal funds (effective) 1 2 3 | 0.08 | 0.08 | 0.08 | 0.08 | 0.08 |
| Commercial Paper 3 4 5 8 | | | | | |
| Nonfinancial | | | | | |
| 1-month | 0.06 | 0.06 | n.a. | n.a. | n.a. |
| 2-month | 0.13 | 0.12 | n.a. | 0.16 | 0.16 |
| 3-month | n.a. | n.a. | n.a. | 0.21 | 0.21 |
| Financial | | | | | |
| 1-month | n.a. | 0.14 | n.a. | 0.09 | 0.11 |
| 2-month | n.a. | n.a. | n.a. | n.a. | 0.22 |
| 3-month | 0.30 | 0.30 | n.a. | 0.22 | 0.29 |
| Bank prime loan 2 3 7 | 3.25 | 3.25 | 3.25 | 3.25 | 3.25 |
| Discount window primary credit 2 8 | 0.25 | 0.25 | 0.25 | 0.25 | 0.25 |
| U.S. government securities | | | | | |
| Treasury bills (secondary market) 3 4 | | | | | |
| 4-week | 0.04 | 0.04 | 0.03 | 0.04 | 0.04 |
| 3-month | 0.20 | 0.19 | 0.24 | 0.20 | 0.20 |
| 6-month | 0.43 | 0.43 | 0.49 | 0.48 | 0.45 |
| 1-year | 0.74 | 0.74 | 0.76 | 0.76 | 0.74 |
| Treasury constant maturities | | | | | |
| Nominal 9 | | | | | |
| 1-month | 0.04 | 0.04 | 0.03 | 0.04 | 0.04 |
| 3-month | 0.20 | 0.19 | 0.22 | 0.19 | 0.19 |
| 6-month | 0.43 | 0.43 | 0.49 | 0.48 | 0.45 |
| 1-year | 0.75 | 0.75 | 0.78 | 0.78 | 0.76 |
| 2-year | 1.18 | 1.15 | 1.18 | 1.18 | 1.16 |
| 3-year | 1.43 | 1.38 | 1.39 | 1.39 | 1.38 |
| 5-year | 1.66 | 1.61 | 1.62 | 1.63 | 1.60 |
| 7-year | 1.78 | 1.74 | 1.75 | 1.76 | 1.74 |
| 10-year | 1.81 | 1.78 | 1.79 | 1.81 | 1.78 |
| 20-year | 2.17 | 2.14 | 2.17 | 2.19 | 2.17 |
| 30-year | 2.09 | 2.07 | 2.11 | 2.12 | 2.11 |
| Inflation Indexed 10 | | | | | |
| 5-year | -1.10 | -1.19 | -1.20 | -1.17 | -1.19 |
| 7-year | -0.82 | -0.90 | -0.90 | -0.87 | -0.89 |
| 10-year | -0.59 | -0.66 | -0.65 | -0.62 | -0.63 |
| 20-year | -0.26 | -0.30 | -0.29 | -0.25 | -0.25 |
| 30-year | -0.11 | -0.14 | -0.12 | -0.08 | -0.07 |
| Inflation-indexed long-term average 11 | -0.17 | -0.21 | -0.19 | -0.15 | -0.14 |

*Appendix 7.*

# Expectancy Data
### Economic Demographers



# The Dollar Value of a Day

**Diary Analysis**

**2019 Dollar Valuation**

*Appendix 7, con't*

*The Dollar Value of a Day, 2019*

## Table 263. Single men, Employed full-time, Less than 45 years old, No minor children in home

| Time Use Category | Weekly Hours | Hourly Value | Dollar Value of a Day | Weekly Waking Hours | | | | Participation Rate Percent | Standard Error Percent |
|---|---|---|---|---|---|---|---|---|---|
| | | | | Secondary Child Care | With Family | At Home | Alone | | |
| Inside Housework | 1.73 | $14.55 | $3.59 | 0.02 | 0.08 | 1.61 | 1.43 | 18.7% | 2.1% |
| Food Cooking & Clean-up | 1.74 | 14.47 | 3.60 | 0.02 | 0.25 | 1.61 | 1.14 | 36.9 | 1.6 |
| Pets, Home & Vehicles | 2.34 | 16.96 | 5.68 | 0.04 | 0.29 | 1.91 | 1.66 | 20.4 | 2.7 |
| Household Management | 0.64 | 21.01 | 1.91 | 0.00 | 0.06 | 0.40 | 0.44 | 15.7 | 3.7 |
| Shopping | 1.80 | 14.75 | 3.78 | 0.01 | 0.25 | 0.05 | 0.97 | 39.0 | 2.0 |
| Obtaining Services | 0.07 | 17.85 | 0.17 | 0.00 | 0.01 | 0.01 | 0.03 | 2.0 | 11.3 |
| Travel for Household Activity | 1.86 | 18.08 | 4.80 | 0.01 | 0.20 | 0.02 | 1.21 | 42.9 | 1.7 |
| Household Production | 10.18 | 16.20 | 23.55 | 0.11 | 1.14 | 5.60 | 6.88 | 72.5 | 1.0 |
| Household Children | 0.00 | 14.75 | 0.01 | n/a | 0.00 | 0.00 | 0.00 | 0.0 | 12.7 |
| Household Adults | 0.05 | 14.52 | 0.11 | 0.00 | 0.02 | 0.03 | 0.02 | 1.9 | 16.6 |
| Non-Household Members | 0.97 | 14.74 | 2.05 | 0.00 | 0.47 | 0.25 | 0.15 | 13.5 | 4.2 |
| Travel for Household Members | 0.05 | 18.08 | 0.14 | 0.00 | 0.01 | 0.00 | 0.02 | 1.3 | 11.0 |
| Travel for Non-Household Members | 0.53 | 18.08 | 3.37 | 0.00 | 0.09 | 0.00 | 0.28 | 11.7 | 2.2 |
| Caring and Helping | 1.61 | 15.94 | 3.68 | 0.01 | 0.80 | 0.28 | 0.45 | 15.3 | 2.8 |
| Eating & Drinking | 7.46 | 14.92 | 15.89 | 0.04 | 1.16 | 3.03 | 2.81 | 94.3 | 0.8 |
| Personal Health Care | 0.37 | 14.49 | 0.77 | 0.00 | 0.07 | 0.17 | 0.24 | 3.4 | 8.3 |
| Grooming | 4.17 | 14.66 | 8.73 | 0.02 | n/a | n/a | n/a | 81.1 | 0.7 |
| Sleeping | 60.28 | 15.19 | 130.86 | n/a | n/a | n/a | n/a | 99.9 | 0.4 |
| Private, Personal, or N/A | 1.90 | 17.01 | 4.63 | 0.01 | 0.18 | 0.61 | 0.91 | 22.0 | 2.7 |
| Personal Time | 74.19 | 15.18 | 160.88 | 0.07 | 1.41 | 3.81 | 3.95 | 100.0 | 0.6 |
| Socializing | 5.06 | 16.86 | 12.20 | 0.03 | 1.22 | 1.25 | 0.44 | 34.8 | 1.7 |
| Passive Leisure | 24.03 | 14.51 | 49.83 | 0.13 | 2.33 | 21.00 | 16.21 | 88.9 | 0.7 |
| Active Leisure | 2.84 | 14.51 | 5.89 | 0.01 | 0.31 | 0.27 | 1.22 | 21.3 | 2.0 |
| Attendance Leisure | 1.08 | 14.51 | 2.25 | 0.01 | 0.20 | 0.03 | 0.15 | 5.7 | 2.9 |
| Religious Activities | 0.41 | 19.98 | 1.16 | 0.00 | 0.09 | 0.05 | 0.15 | 3.6 | 3.7 |
| Volunteering | 0.36 | 19.58 | 1.02 | 0.00 | 0.03 | 0.04 | 0.09 | 2.4 | 4.8 |
| Travel Related to Leisure | 3.40 | 18.08 | 8.79 | 0.01 | 0.40 | 0.03 | 1.83 | 59.0 | 1.4 |
| Leisure | 37.19 | 15.27 | 82.14 | 0.20 | 4.58 | 22.66 | 20.88 | 97.2 | 0.6 |
| Working at Job | 40.12 | 37.81 | 216.72 | 0.00 | 0.55 | 1.93 | 4.49 | 69.9 | 0.6 |
| Educational Activities | 1.19 | 19.98 | 8.39 | 0.00 | 0.08 | 0.50 | 0.70 | 4.3 | 3.8 |
| Commuting to Work or School | 3.52 | 18.08 | 9.09 | 0.00 | 0.08 | 0.03 | 3.02 | 64.4 | 1.1 |
| Work and Education | 44.83 | 35.73 | 229.19 | 0.00 | 0.70 | 2.45 | 8.21 | 73.0 | 0.8 |
| Total | 168.00 | $20.77 | $498.44 | 0.38 | 8.42 | 34.81 | 39.57 | | |

| | | | | |
|---|---|---|---|---|
| Avg. Size of U.S. Pop. in 2003-2019 | 11,838,152 | | Average Age | 32.2 |
| ATUS Respondents in 2003-2019 | 7,975 | | 5th Percentile Age | 21.0 |
| Sunday Respondents | 1,970 | | 95th Percentile Age | 43.0 |
| Weekday Respondents | 3,996 | | Household Size | 1.55 |
| Saturday Respondents | 2,009 | | Number of Adults | 1.55 |
| | | | Number of Children under Age 18 | 0.00 |
| Household Production Weekly Hours for the Benefit of the Respondent | | | | 2.19 |
| Percentage of Total Household Production Weekly Hours Benefiting the Respondent | | | | 21.5% |

| % of Mean Hours | Owners | Renters |
|---|---|---|
| Household Production | 108.0% | 90.8% |
| Caring and Helping | 106.4% | 92.0% |
| Personal Time | 99.8% | 100.3% |
| Leisure | 100.9% | 99.3% |
| Work and Education | 97.5% | 102.5% |
| Population (1,000s) | 6,230 | 5,462 |
| Pop. Size Valid %s | Yes | Yes |

**Definitions**

Weekly Hours: Weekly average time in hours where the activity category describes the main activity that was being performed by the respondent. Weekly hours are calculated by summing average Sunday hours plus five times average weekday hours plus average Saturday hours.

Hourly Value: See tables 386-412.

Dollar Value of a Day: Weekly hours times hourly value divided by seven.

Secondary Child Care: While performing a primary activity, at woke children under age 13 were in the respondent's care.

With Family: At least one primary family member (spouse, child, or parent) was in the room or accompanied the respondent.

At Home: The respondent was inside or outside his or her own home.

Participation Rate: Percent of population reporting at least one daily episode of the activity.

Standard Error Percent: Standard error of the mean reported as a percent of the episode mean in the activity.

% of Mean Hours: Adjustment percentage to weekly hours based on whether living quarters are owned or rented.

Household production weekly hours for the benefit of the respondent: Respondent-related household production divided by the respondent's household size plus 1 if the respondent's household size is greater than 1. The percentage of the total household production weekly hours benefiting the respondent is respondent-benefit household production weekly hours divided by total weekly hours of household production. See Table 413 for description.

'Who' and 'Where' coding only during waking hours and not coded for sleeping, grooming, some personal and work activities. Percentage of mean hours valid for populations greater than 290,000.

Recorded Consumption Percentage = 1 / (2+1+1) = .25

279

**Expectancy Data**
Economic Demographers

*Appendix 7, con't*

## Table 264. Single men, Employed full-time, Ages 45 through 54, No minor children in home

| Time Use Category | Weekly Hours | Hourly Value | Dollar Value of a Day | Weekly Waking Hours | | | | Participation Rate | Standard Error Percent |
|---|---|---|---|---|---|---|---|---|---|
| | | | | Secondary Child Care | With Family | At Home | Alone | | |
| Inside Housework | 2.32 | $14.55 | $4.82 | 0.01 | 0.11 | 2.16 | 2.13 | 23.9% | 2.7% |
| Food Cooking & Clean-up | 2.32 | 14.47 | 4.79 | 0.02 | 0.20 | 2.17 | 1.81 | 48.8 | 2.2 |
| Pets, Home & Vehicles | 3.56 | 16.96 | 8.63 | 0.01 | 0.22 | 3.17 | 3.02 | 28.5 | 3.0 |
| Household Management | 1.05 | 21.01 | 3.16 | 0.00 | 0.05 | 0.82 | 0.86 | 21.2 | 5.3 |
| Shopping | 1.88 | 14.75 | 3.97 | 0.01 | 0.22 | 0.06 | 1.35 | 38.7 | 2.7 |
| Obtaining Services | 0.12 | 17.85 | 0.30 | 0.00 | 0.00 | 0.02 | 0.08 | 2.9 | 13.9 |
| Travel for Household Activity | 2.04 | 18.08 | 5.28 | 0.01 | 0.17 | 0.04 | 1.67 | 43.9 | 2.0 |
| Household Production | 13.30 | 16.29 | 30.95 | 0.06 | 0.99 | 8.44 | 10.93 | 80.7 | 1.3 |
| Household Children | 0.00 | 14.75 | 0.00 | n/a | 0.00 | 0.00 | 0.00 | 0.0 | 0.0 |
| Household Adults | 0.06 | 14.52 | 0.13 | 0.00 | 0.04 | 0.05 | 0.01 | 1.6 | 15.6 |
| Non-Household Members | 1.10 | 14.74 | 2.31 | 0.00 | 0.48 | 0.21 | 0.14 | 12.1 | 5.7 |
| Travel for Household Members | 0.02 | 18.08 | 0.05 | 0.00 | 0.01 | 0.00 | 0.01 | 0.6 | 21.3 |
| Travel for Non-Household Members | 0.56 | 18.08 | 1.46 | 0.01 | 0.11 | 0.00 | 0.28 | 10.6 | 3.2 |
| Caring and Helping | 1.75 | 15.85 | 3.95 | 0.01 | 0.64 | 0.26 | 0.45 | 13.7 | 3.9 |
| Eating & Drinking | 7.58 | 14.92 | 16.17 | 0.04 | 1.06 | 3.69 | 4.07 | 94.9 | 1.2 |
| Personal Health Care | 0.39 | 14.49 | 0.81 | 0.00 | 0.03 | 0.21 | 0.29 | 5.2 | 14.0 |
| Grooming | 4.22 | 14.66 | 8.85 | 0.01 | n/a | n/a | n/a | 78.8 | 1.0 |
| Sleeping | 58.35 | 15.19 | 126.69 | n/a | n/a | n/a | n/a | 99.9 | 0.6 |
| Private, Personal, or N/A | 1.95 | 17.01 | 4.73 | 0.00 | 0.05 | 0.74 | 1.11 | 21.5 | 3.9 |
| Personal Time | 72.49 | 15.18 | 157.21 | 0.05 | 1.15 | 4.64 | 5.47 | 100.0 | 0.8 |
| Socializing | 3.63 | 16.86 | 8.75 | 0.01 | 1.36 | 1.13 | 0.46 | 30.7 | 2.6 |
| Passive Leisure | 26.50 | 14.51 | 54.94 | 0.07 | 2.18 | 24.03 | 21.40 | 91.7 | 1.1 |
| Active Leisure | 2.15 | 14.51 | 4.45 | 0.00 | 0.22 | 0.27 | 1.16 | 16.7 | 3.3 |
| Attendance Leisure | 0.77 | 14.51 | 1.59 | 0.01 | 0.16 | 0.01 | 0.27 | 3.8 | 4.2 |
| Religious Activities | 0.54 | 19.98 | 1.54 | 0.00 | 0.07 | 0.09 | 0.26 | 4.8 | 6.4 |
| Volunteering | 0.47 | 19.98 | 1.35 | 0.00 | 0.02 | 0.10 | 0.24 | 2.6 | 6.6 |
| Travel Related to Leisure | 2.94 | 18.08 | 7.60 | 0.01 | 0.32 | 0.03 | 2.10 | 51.3 | 2.1 |
| Leisure | 37.00 | 15.18 | 80.23 | 0.11 | 4.34 | 25.65 | 25.87 | 97.1 | 0.9 |
| Working at Job | 39.83 | 58.14 | 330.82 | 0.00 | 0.18 | 2.78 | 7.98 | 68.0 | 1.0 |
| Educational Activities | 0.18 | 19.98 | 0.53 | 0.00 | 0.01 | 0.13 | 0.16 | 0.7 | 8.6 |
| Commuting to Work or School | 3.45 | 18.08 | 8.90 | 0.00 | 0.04 | 0.04 | 3.14 | 59.0 | 1.6 |
| Work and Education | 43.46 | 54.80 | 340.24 | 0.00 | 0.23 | 2.95 | 11.29 | 69.1 | 1.2 |
| Total | 168.00 | $25.52 | $612.58 | 0.23 | 7.34 | 41.95 | 54.00 | | |

| | | | | | |
|---|---|---|---|---|---|
| Avg. Size of U.S. Pop. in 2003-2019 | 3,296,012 | | Average Age | 49.6 | |
| ATUS Respondents in 2003-2019 | 3,697 | | 5th Percentile Age | 45.0 | |
| Sunday Respondents | 915 | | 95th Percentile Age | 54.0 | |
| Weekday Respondents | 1,830 | | Household Size | 1.23 | |
| Saturday Respondents | 952 | | Number of Adults | 1.23 | |

| % of Mean Hours | Owners | Renters |
|---|---|---|
| Household Production | 109.9% | 81.7% |
| Caring and Helping | 102.8% | 98.5% |
| Personal Time | 99.6% | 100.7% |
| Leisure | 98.7% | 101.9% |
| Work and Education | 98.7% | 102.8% |
| Population (1,000s) | 2,094 | 1,155 |
| Pop. Size Valid %'s | Yes | Yes |

Number of Children under Age 18: 0.00
Household Production Weekly Hours for the Benefit of the Respondent: 3.30
Percentage of Total Household Production Weekly Hours Benefiting the Respondent: 24.8%

**Definitions**

Weekly Hours: Weekly average time in hours where the activity category describes the main activity that was being performed by the respondent. Weekly hours are calculated by summing average Sunday hours plus five times average weekday hours plus average Saturday hours.

Hourly Value: See tables 386-412.

Dollar Value of a Day: Weekly hours times hourly value divided by seven.

Secondary Child Care: While performing a primary activity, at wake children under age 13 were in the respondent's care.

With Family: At least one primary family member (spouse, child, or parent) was in the room or accompanied the respondent.

At Home: The respondent was inside or outside his or her own home.

Participation Rate: Percent of population reporting at least one daily episode of the activity.

Standard Error Percent: Standard error of the mean reported as a percent of the episode mean in the activity.

% of Mean Hours: Adjustment percentage to weekly hours based on whether living quarters are owned or rented.

Household production weekly hours for the benefit of the respondent: Respondent-related household production divided by the respondent's household size plus 1 plus an additional 1 if the respondent's household size is greater than 1. The percentage of the total household production weekly hours benefiting the respondent is respondent-benefit household production weekly hours divided by total weekly hours of household production. See Table 413 for description.

Note: 'Who' and 'Where' coding only during waking hours and not coded for sleeping, grooming, some personal and work activities. Percentage of mean hours valid for populations greater than 290,000.

*The Dollar Value of a Day, 2019*

**Table 265. Single men, Employed full-time, Ages 55 & over, No minor children in home**

| Time Use Category | Weekly Hours | Hourly Value | Dollar Value of a Day | Weekly Waking Hours | | | | Particip-ation Rate | Standard Error Percent |
|---|---|---|---|---|---|---|---|---|---|
| | | | | Secondary Child Care | With Family | At Home | Alone | | |
| Inside Housework | 2.47 | 14.55 | 5.12 | 0.00 | 0.07 | 2.31 | 2.32 | 26.4% | 2.9% |
| Food Cooking & Clean-up | 2.32 | 14.47 | 4.79 | 0.00 | 0.13 | 2.21 | 2.00 | 50.8 | 2.0 |
| Pets, Home & Vehicles | 3.60 | 16.96 | 8.73 | 0.00 | 0.09 | 3.09 | 3.33 | 30.5 | 3.3 |
| Household Management | 1.08 | 21.01 | 3.25 | 0.00 | 0.03 | 0.87 | 0.96 | 23.1 | 5.0 |
| Shopping | 1.92 | 14.75 | 4.05 | 0.01 | 0.17 | 0.11 | 1.49 | 39.7 | 2.6 |
| Obtaining Services | 0.09 | 17.85 | 0.23 | 0.00 | 0.00 | 0.02 | 0.07 | 2.5 | 12.4 |
| Travel for Household Activity | 2.12 | 18.08 | 5.48 | 0.00 | 0.19 | 0.08 | 1.73 | 44.6 | 2.0 |
| **Household Production** | 13.60 | 16.29 | 31.64 | 0.01 | 0.70 | 8.64 | 11.90 | 81.5 | 1.3 |
| Household Children | 0.00 | 14.75 | 0.00 | n/a | 0.00 | 0.00 | 0.00 | 0.0 | 0.0 |
| Household Adults | 0.09 | 14.52 | 0.19 | 0.00 | 0.08 | 0.05 | 0.00 | 1.1 | 29.1 |
| Non-Household Members | 0.82 | 14.74 | 1.72 | 0.01 | 0.34 | 0.12 | 0.19 | 20.7 | 6.7 |
| Travel for Household Members | 0.01 | 18.08 | 0.04 | 0.00 | 0.01 | 0.00 | 0.00 | 0.4 | 10.5 |
| Travel for Non-Household Members | 0.41 | 18.08 | 1.06 | 0.00 | 0.09 | 0.00 | 0.22 | 8.3 | 3.7 |
| **Caring and Helping** | 1.33 | 15.79 | 3.00 | 0.01 | 0.52 | 0.17 | 0.41 | 12.0 | 4.7 |
| Eating & Drinking | 7.74 | 14.92 | 16.50 | 0.00 | 0.83 | 4.04 | 4.77 | 94.7 | 1.0 |
| Personal Health Care | 0.72 | 14.49 | 1.48 | 0.00 | 0.09 | 0.40 | 0.57 | 8.7 | 8.9 |
| Grooming | 4.06 | 14.66 | 8.50 | 0.00 | n/a | n/a | n/a | 77.9 | 1.1 |
| Sleeping | 57.79 | 15.19 | 125.43 | n/a | n/a | n/a | n/a | 99.9 | 0.7 |
| Private, Personal, or N/A | 1.64 | 17.01 | 3.99 | 0.00 | 0.09 | 0.52 | 0.87 | 20.7 | 4.3 |
| **Personal Time** | 71.94 | 15.17 | 155.90 | 0.00 | 1.01 | 4.96 | 6.21 | 100.0 | 0.9 |
| Socializing | 3.34 | 16.86 | 8.05 | 0.00 | 1.23 | 0.97 | 0.40 | 30.6 | 2.7 |
| Passive Leisure | 27.18 | 14.51 | 56.86 | 0.01 | 1.55 | 24.92 | 23.29 | 92.3 | 1.1 |
| Active Leisure | 2.19 | 14.51 | 4.53 | 0.00 | 0.15 | 0.43 | 1.32 | 17.1 | 4.1 |
| Attendance Leisure | 0.57 | 14.51 | 1.18 | 0.00 | 0.09 | 0.05 | 0.24 | 2.9 | 5.6 |
| Religious Activities | 0.61 | 19.98 | 1.73 | 0.00 | 0.09 | 0.16 | 0.29 | 6.3 | 4.5 |
| Volunteering | 0.77 | 19.98 | 2.20 | 0.00 | 0.05 | 0.11 | 0.23 | 4.8 | 8.0 |
| Travel Related to Leisure | 2.98 | 18.08 | 7.56 | 0.00 | 0.29 | 0.05 | 2.10 | 52.0 | 2.2 |
| **Leisure** | 37.58 | 15.28 | 81.61 | 0.02 | 3.45 | 26.79 | 27.87 | 97.5 | 1.0 |
| Working at Job | 40.30 | 71.54 | 411.90 | 0.01 | 0.32 | 4.75 | 10.77 | 70.2 | 1.0 |
| Educational Activities | 0.10 | 19.98 | 0.27 | 0.00 | 0.00 | 0.07 | 0.08 | 0.4 | 13.1 |
| Commuting to Work or School | 3.15 | 18.08 | 8.13 | 0.00 | 0.00 | 0.04 | 2.93 | 57.5 | 1.9 |
| **Work and Education** | 43.54 | 67.57 | 420.30 | 0.01 | 0.35 | 4.86 | 13.78 | 70.8 | 1.2 |
| **Total** | 168.00 | 28.85 | 692.46 | 0.05 | 6.03 | 45.32 | 60.17 | | |

| | | | |
|---|---|---|---|
| Avg. Size of U.S. Pop. in 2008-2019 | 2,413,923 | Average Age | 61.0 |
| ATUS Respondents in 2003-2019 | 3,277 | 5th Percentile Age | 55.0 |
| Sunday Respondents | 801 | 95th Percentile Age | 73.0 |
| Weekday Respondents | 1,641 | Household Size | 1.26 |
| Saturday Respondents | 835 | Number of Adults | 1.16 |
| | | Number of Children under Age 18 | 0.00 |
| Household Production Weekly Hours for the Benefit of the Respondent | 3.48 | | |
| Percentage of Total Household Production Weekly Hours Benefiting the Respondent | 25.6% | | |

| % of Mean Hours | Owners | Renters |
|---|---|---|
| Household Production | 109.5% | 79.5% |
| Caring and Helping | 104.2% | 93.4% |
| Personal Time | 100.0% | 100.1% |
| Leisure | 97.0% | 107.4% |
| Work and Education | 99.6% | 100.1% |
| Population (1,000s) | 1,699 | 673 |
| Pop. Size Valid %'s | Yes | Yes |

**Definitions**

Weekly Hours: Weekly average time in hours where the activity category describes the main activity that was being performed by the respondent. Weekly hours are calculated by summing average Sunday hours plus five times average weekday hours plus average Saturday hours.

Hourly Value: See tables 386-412.

Dollar Value of a Day: Weekly hours times hourly value divided by seven.

Secondary Child Care: While performing a primary activity, at wake children under age 13 were in the respondent's care.

With Family: At least one primary family member (spouse, child, or parent) was in the room or accompanied the respondent.

At Home: The respondent was inside or outside his or her own home.

Participation Rate: Percent of population reporting at least one daily episode of the activity.

Standard Error Percent: Standard error of the mean reported as a percent of the episode mean in the activity.

% of Mean Hours: Adjustment percentage to weekly hours based on whether living quarters are owned or rented.

Household production weekly hours for the benefit of the respondent: Respondent-related household production divided by the respondent's household size plus 1 plus an additional 1 if the respondent's household size is greater than 1. The percentage of the total household production weekly hours benefiting the respondent is respondent-benefit household production weekly hours of household production. See Table 413 for description.

Note: 'Who' and 'Where' coding only during waking hours and not coded for sleeping, grooming, some personal and work activities. Percentage of mean hours valid for populations greater than 290,000.

**Expectancy Data**
Economic Demographers

Appendix 7, con't

## Table 300. Single men, Retired, All ages, No minor children in home

| Time Use Category | Weekly Hours | Hourly Value | Dollar Value of a Day | Weekly Waking Hours | | | | Participation Rate | Standard Error Percent |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | Secondary Child Care | With Family | At Home | Alone | | |
| Inside Housework | 2.79 | $14.55 | $5.79 | 0.00 | 0.09 | 2.72 | 2.64 | 31.3% | 2.3% |
| Food Cooking & Clean-up | 3.58 | 14.47 | 7.40 | 0.00 | 0.17 | 3.49 | 3.21 | 58.7 | 1.2 |
| Pets, Home & Vehicles | 5.60 | 16.56 | 13.56 | 0.00 | 0.26 | 5.10 | 5.08 | 35.9 | 2.0 |
| Household Management | 1.73 | 21.01 | 5.19 | 0.00 | 0.07 | 1.46 | 1.52 | 28.4 | 2.9 |
| Shopping | 2.37 | 14.75 | 5.00 | 0.00 | 0.24 | 0.13 | 1.76 | 39.4 | 1.9 |
| Obtaining Services | 0.27 | 17.85 | 0.68 | 0.00 | 0.01 | 0.17 | 0.12 | 4.1 | 10.4 |
| Travel for Household Activity | 2.10 | 18.08 | 5.41 | 0.00 | 0.18 | 0.03 | 1.67 | 44.1 | 1.6 |
| **Household Production** | 18.43 | 16.35 | 43.03 | 0.00 | 1.02 | 13.09 | 15.98 | 85.3 | 0.9 |
| Household Children | 0.00 | 14.75 | 0.00 | n/a | 0.00 | 0.00 | 0.00 | 0.0 | 0.8 |
| Household Adults | 0.15 | 14.52 | 0.30 | 0.00 | 0.04 | 0.10 | 0.01 | 1.6 | 39.7 |
| Non-Household Members | 1.06 | 14.74 | 2.73 | 0.00 | 0.46 | 0.17 | 0.20 | 11.2 | 4.7 |
| Travel for Household Members | 0.02 | 18.08 | 0.06 | 0.00 | 0.01 | 0.00 | 0.01 | 0.6 | 8.2 |
| Travel for Non-Household Members | 0.46 | 18.08 | 1.19 | 0.00 | 0.10 | 0.01 | 0.24 | 9.3 | 2.7 |
| **Caring and Helping** | 1.69 | 15.68 | 3.79 | 0.00 | 0.61 | 0.28 | 0.45 | 12.6 | 3.4 |
| Eating & Drinking | 8.49 | 14.92 | 18.10 | 0.00 | 1.08 | 5.84 | 5.42 | 96.0 | 0.7 |
| Personal Health Care | 1.54 | 14.49 | 3.19 | 0.00 | 0.11 | 0.91 | 1.16 | 18.9 | 4.9 |
| Grooming | 3.21 | 14.66 | 6.73 | 0.00 | n/a | n/a | n/a | 61.9 | 1.0 |
| Sleeping | 63.15 | 15.19 | 137.07 | n/a | n/a | n/a | n/a | 99.7 | 0.4 |
| Private, Personal, or N/A | 2.43 | 17.01 | 5.90 | 0.00 | 0.22 | 0.79 | 1.04 | 25.4 | 2.8 |
| **Personal Time** | 78.81 | 15.19 | 170.98 | 0.00 | 1.41 | 7.53 | 7.62 | 100.0 | 0.5 |
| Socializing | 5.17 | 16.86 | 12.44 | 0.00 | 1.96 | 1.86 | 0.62 | 37.3 | 1.8 |
| Passive Leisure | 53.96 | 14.51 | 111.88 | 0.00 | 3.05 | 51.64 | 47.19 | 98.1 | 0.6 |
| Active Leisure | 2.54 | 14.51 | 5.26 | 0.00 | 0.19 | 0.50 | 1.63 | 21.0 | 2.6 |
| Attendance Leisure | 0.67 | 14.51 | 1.39 | 0.00 | 0.12 | 0.03 | 0.24 | 3.5 | 4.2 |
| Religious Activities | 1.14 | 19.98 | 3.26 | 0.00 | 0.12 | 0.41 | 0.69 | 9.9 | 3.0 |
| Volunteering | 1.17 | 19.98 | 3.35 | 0.00 | 0.05 | 0.25 | 0.53 | 5.9 | 4.0 |
| Travel Related to Leisure | 3.10 | 18.08 | 8.01 | 0.00 | 0.43 | 0.05 | 2.11 | 51.4 | 1.9 |
| **Leisure** | 67.75 | 15.04 | 145.58 | 0.00 | 5.93 | 54.74 | 53.00 | 99.4 | 0.6 |
| Working at Job | 1.15 | 84.65 | 13.93 | 0.00 | 0.01 | 0.27 | 0.47 | 2.8 | 5.5 |
| Educational Activities | 0.06 | 19.98 | 0.18 | 0.00 | 0.00 | 0.01 | 0.02 | 0.3 | 19.8 |
| Commuting to Work or School | 0.10 | 18.08 | 0.27 | 0.00 | 0.00 | 0.00 | 0.09 | 2.4 | 6.3 |
| **Work and Education** | 1.32 | 76.31 | 14.38 | 0.00 | 0.01 | 0.28 | 0.57 | 3.5 | 5.6 |
| **Total** | 168.00 | $15.74 | $377.76 | 0.01 | 8.98 | 75.93 | 77.63 | | |

| | | | | |
| --- | --- | --- | --- | --- |
| Avg. Size of U.S. Pop. in 2003-2019 | 4,477,658 | Average Age | 72.2 | |
| ATUS Respondents in 2003-2019 | 6,112 | 5th Percentile Age | 58.0 | |
| Sunday Respondents | 1,549 | 95th Percentile Age | 85.0 | |
| Weekday Respondents | 3,034 | Household Size | 1.14 | |
| Saturday Respondents | 1,529 | Number of Adults | 1.14 | |
| | | Number of Children under Age 18 | 0.00 | |
| Household Production Weekly Hours for the Benefit of the Respondent | | | 4.41 | |
| Percentage of Total Household Production Weekly Hours Benefiting the Respondent | | | 24.0% | |

| % of Mean Hours | Owners | Renters |
| --- | --- | --- |
| Household Production | 109.1% | 70.7% |
| Caring and Helping | 100.7% | 97.2% |
| Personal Time | 99.9% | 100.2% |
| Leisure | 97.8% | 107.3% |
| Work and Education | 91.4% | 124.9% |
| Population (1,000s) | 3,361 | 1,056 |
| Pop. Size Valid %'s | Yes | Yes |

### Definitions

**Weekly Hours:** Weekly average time in hours where the activity category describes the main activity that was being performed by the respondent. Weekly hours are calculated by summing average Sunday hours plus five times average weekday hours plus average Saturday hours.

**Hourly Value:** See tables 386-412.

**Dollar Value of a Day:** Weekly hours times hourly value divided by seven.

**Secondary Child Care:** While performing a primary activity, at wake children under age 13 were in the respondent's care.

**With Family:** At least one primary family member (spouse, child, or parent) was in the room or accompanied the respondent.

**At Home:** The respondent was inside or outside his or her own home.

**Participation Rate:** Percent of population reporting at least one daily episode of the activity.

**Standard Error Percent:** Standard error of the mean reported as a percent of the episode mean in the activity.

**% of Mean Hours:** Adjustment percentage to weekly hours based on whether living quarters are owned or rented.

**Household production weekly hours for the benefit of the respondent:** Respondent-related household production divided by the respondent's household size plus 1 plus an additional 1 if the respondent's household size is greater than 1. The percentage of the total household production weekly hours benefiting the respondent is respondent-benefit household production weekly hours divided by total weekly hours of household production. See Table 413 for description.

**Note:** 'Who' and 'Where' coding only during waking hours and not coded for sleeping, grooming, some personal and work activities. Percentage of mean hours valid for populations greater than 290,000.

**Expectancy Data**
Economic Demographers

*appendix 7, cont*

## Table 414, continued. National to Area Wage Adjustment Percentages, May 2019

| Minnesota | |
|---|---|
| Duluth, MN-WI | 106.8 |
| Fargo, ND-MN | 100.2 |
| Grand Forks, ND-MN | 101.0 |
| La Crosse-Onalaska, WI-MN | 102.2 |
| Mankato-North Mankato, MN | 90.7 |
| Minneapolis-St. Paul-Bloomington, MN-WI | 105.3 |
| Rochester, MN | 108.2 |
| St. Cloud, MN | 105.4 |
| Northeast Minnesota nonmetropolitan area | 107.1 |
| Northwest Minnesota nonmetropolitan area | 103.0 |
| Southeast Minnesota nonmetropolitan area | 103.5 |
| Southwest Minnesota nonmetropolitan area | 102.4 |
| | 102.7 |
| **Mississippi** | **86.5** |
| Gulfport-Biloxi-Pascagoula, MS | 86.7 |
| Hattiesburg, MS | 83.9 |
| Jackson, MS | 87.7 |
| Memphis, TN-MS-AR | 91.4 |
| Northeast Mississippi nonmetropolitan area | 83.6 |
| Northwest Mississippi nonmetropolitan area | 81.2 |
| Southeast Mississippi nonmetropolitan area | 79.7 |
| Southwest Mississippi nonmetropolitan area | 82.0 |
| **Missouri** | **95.2** |
| Cape Girardeau, MO-IL | 86.8 |
| Columbia, MO | 93.7 |
| Fayetteville-Springdale-Rogers, AR-MO | 91.3 |
| Jefferson City, MO | 87.2 |
| Joplin, MO | 86.1 |
| Kansas City, MO-KS | 96.2 |
| Springfield, MO | 89.7 |
| St. Joseph, MO-KS | 90.5 |
| St. Louis, MO-IL | 97.3 |
| Central Missouri nonmetropolitan area | 86.3 |
| North Missouri nonmetropolitan area | 86.3 |
| Southeast Missouri nonmetropolitan area | 86.2 |
| Southwest Missouri nonmetropolitan area | 85.6 |
| **Montana** | **94.4** |
| Billings, MT | 95.1 |
| Great Falls, MT | 89.5 |
| Missoula, MT | 92.8 |
| East-Central Montana nonmetropolitan area | 97.7 |
| Southwest Montana nonmetropolitan area | 97.1 |
| West Montana nonmetropolitan area | 93.0 |
| **Nebraska** | **96.6** |
| Grand Island, NE | 95.9 |
| Lincoln, NE | 94.0 |
| Omaha-Council Bluffs, NE-IA | 99.3 |
| Sioux City, IA-NE-SD | 90.5 |
| Northeast Nebraska nonmetropolitan area | 95.3 |
| Northwest Nebraska nonmetropolitan area | 90.7 |
| South Nebraska nonmetropolitan area | 94.7 |

| Nevada | |
|---|---|
| Carson City, NV | 98.0 |
| Las Vegas-Henderson-Paradise, NV | 97.8 |
| Reno, NV | 97.4 |
| Nevada nonmetropolitan area | 95.9 |
| | 97.4 |
| **New Hampshire** | **98.9** |
| Boston-Cambridge-Nashua, MA-NH | 116.8 |
| Dover-Durham, NH-ME | 101.8 |
| Manchester, NH | 98.4 |
| Portsmouth, NH-ME | 103.8 |
| Central New Hampshire nonmetropolitan area | 98.2 |
| Northern New Hampshire nonmetropolitan area | 92.9 |
| West Central-Southwest New Hampshire nonmetropolitan area | 100.6 |
| **New Jersey** | **102.9** |
| Allentown-Bethlehem-Easton, PA-NJ | 93.8 |
| Atlantic City-Hammonton, NJ | 102.2 |
| New York-Newark-Jersey City, NY-NJ-PA | 113.2 |
| Ocean City, NJ | 99.4 |
| Philadelphia-Camden-Wilmington, PA-NJ-DE-MD | 99.7 |
| Trenton, NJ | 104.5 |
| Vineland-Bridgeton, NJ | 99.7 |
| **New Mexico** | **90.3** |
| Albuquerque, NM | 91.2 |
| Farmington, NM | 91.3 |
| Las Cruces, NM | 84.5 |
| Santa Fe, NM | 97.8 |
| Eastern New Mexico nonmetropolitan area | 87.1 |
| Northern New Mexico nonmetropolitan area | 87.1 |
| **New York** | **113.6** |
| Albany-Schenectady-Troy, NY | 106.5 |
| Binghamton, NY | 101.6 |
| Buffalo-Cheektowaga-Niagara Falls, NY | 103.4 |
| Elmira, NY | 109.0 |
| Glens Falls, NY | 101.7 |
| Ithaca, NY | 113.4 |
| Kingston, NY | 109.3 |
| New York-Newark-Jersey City, NY-NJ-PA | 113.2 |
| Rochester, NY | 102.6 |
| Syracuse, NY | 103.8 |
| Utica-Rome, NY | 101.9 |
| Watertown-Fort Drum, NY | 101.8 |
| Capital/Northern New York nonmetro area | 106.0 |
| Central East New York nonmetropolitan area | 107.1 |
| Southwest New York nonmetropolitan area | 101.6 |

Appendix 8

Consumer Price Index for All Urban Consumers: All Items in U.S. City Average, Index 1982-1984=100, Monthly, Seasonally Adjusted

Frequency: Monthly

| observation_date | CPI | Inflation Rate |
|---|---|---|
| 2019-12-01 | 258.203 | |
| 2021-12-01 | 280.192 | 4.17% |

U.S. Bureau of Labor Statistics, Consumer Price Index for All Urban Consumers: All Items in U.S. City Average [CPIAUCSL], retrieved from FRED, Federal Reserve Bank of St. Louis; https://fred.stlouisfed.org/series/CPIAUCSL, February 2, 2022.



# National Vital Statistics Reports

Volume 69, Number 12

November 17, 2020

# United States Life Tables, 2018

by Elizabeth Arias, Ph.D., and Jiaquan Xu, M.D., Division of Vital Statistics

## Abstract

*Objectives*—This report presents complete period life tables for the United States by Hispanic origin, race, and sex, based on age-specific death rates in 2018.

*Methods*—Data used to prepare the 2018 life tables are 2018 final mortality statistics; July 1, 2018 population estimates based on the 2010 decennial census; and 2018 Medicare data for persons aged 66–99. The methodology used to estimate the life tables for the Hispanic population remains unchanged from that developed for the publication of life tables by Hispanic origin for data year 2006. The methodology used to estimate the 2018 life tables for all other groups was first implemented with data year 2008. In 2018, all 50 states and the District of Columbia reported deaths by race based on the 1997 Office of Management and Budget revised standards for the classification of federal data on race and ethnicity. As a result, race-specific life tables for 2018 presented in this report are based on the new standard and show estimates for single-race groups. These estimates are not completely comparable with those of previous years, which are based on bridged-race groups. To show trends and document the impact of changing to the 1997 standards, life expectancy estimates for 2006–2018 are reported for bridged-race categories that were in use starting with data year 2000.

*Results*—In 2018, the overall expectation of life at birth was 78.7 years, increasing from 78.6 in 2017. Between 2017 and 2018, life expectancy at birth increased by 0.1 year for males (76.1 to 76.2) and females (81.1 to 81.2). In 2018, life expectancy at birth was 81.8 for the Hispanic population, 78.6 for the non-Hispanic single-race white population, and 74.7 for the non-Hispanic single-race black population.

**Keywords:** life expectancy • survival • death rates • Hispanic origin • race • National Vital Statistics System

## Introduction

There are two types of life tables: the cohort (or generation) life table and the period (or current) life table. The cohort life table presents the mortality experience of a particular birth cohort—all persons born in the year 1900, for example—from the moment of birth through consecutive ages in successive calendar years. Based on age-specific death rates observed through consecutive calendar years, the cohort life table reflects the mortality experience of an actual cohort from birth until no lives remain in the group. To prepare just a single complete cohort life table requires data over many years. It is usually not feasible to construct cohort life tables entirely on the basis of observed data for real cohorts due to data unavailability or incompleteness (1). For example, a life table representation of the mortality experience of a cohort of persons born in 1970 would require the use of data projection techniques to estimate deaths into the future (2,3).

Unlike the cohort life table, the period life table does not represent the mortality experience of an actual birth cohort. Rather, the period life table presents what would happen to a hypothetical cohort if it experienced throughout its entire life the mortality conditions of a particular period in time. For example, a period life table for 2018 assumes a hypothetical cohort that is subject throughout its lifetime to the age-specific death rates prevailing for the actual population in 2018. The period life table may thus be characterized as rendering a "snapshot" of current mortality experience and shows the long-range implications of a set of age-specific death rates that prevailed in a given year. In this report the term "life table" refers only to the period life table and not to the cohort life table.

Life tables can be classified in two ways according to the length of the age interval in which data are presented. A complete life table contains data for every single year of age. An abridged life table typically contains data by 5- or 10-year age intervals. A complete life table can easily be aggregated into 5- or 10-year age groups (see Technical Notes for instructions). Other than the decennial life tables, U.S. life tables based on data before 1997



U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES
Centers for Disease Control and Prevention
National Center for Health Statistics
National Vital Statistics System



NCHS reports can be downloaded from: https://www.cdc.gov/nchs/products/index.htm.

## Table 2. Life table for males: United States, 2018

*Spreadsheet version available from: https://ftp.cdc.gov/pub/Health_Statistics/NCHS/Publications/NVSR/69-12/Table02.xlsx.*

| Age (years) | Probability of dying between ages $x$ and $x+1$ $q_x$ | Number surviving to age $x$ $l_x$ | Number dying between ages $x$ and $x+1$ $d_x$ | Person-years lived between ages $x$ and $x+1$ $L_x$ | Total number of person-years lived above age $x$ $T_x$ | Expectation of life at age $x$ $e_x$ |
|---|---|---|---|---|---|---|
| 0–1 | 0.006213 | 100,000 | 621 | 99,456 | 7,622,240 | 76.2 |
| 1–2 | 0.000411 | 99,379 | 41 | 99,358 | 7,522,784 | 75.7 |
| 2–3 | 0.000301 | 99,338 | 30 | 99,323 | 7,423,426 | 74.7 |
| 3–4 | 0.000223 | 99,308 | 22 | 99,297 | 7,324,103 | 73.8 |
| 4–5 | 0.000170 | 99,286 | 17 | 99,277 | 7,224,806 | 72.8 |
| 5–6 | 0.000160 | 99,269 | 16 | 99,261 | 7,125,529 | 71.8 |
| 6–7 | 0.000141 | 99,253 | 14 | 99,246 | 7,026,268 | 70.8 |
| 7–8 | 0.000124 | 99,239 | 12 | 99,233 | 6,927,022 | 69.8 |
| 8–9 | 0.000108 | 99,227 | 11 | 99,221 | 6,827,789 | 68.8 |
| 9–10 | 0.000092 | 99,216 | 9 | 99,211 | 6,728,568 | 67.8 |
| 10–11 | 0.000085 | 99,207 | 8 | 99,203 | 6,629,356 | 66.8 |
| 11–12 | 0.000095 | 99,199 | 9 | 99,194 | 6,530,154 | 65.8 |
| 12–13 | 0.000135 | 99,189 | 13 | 99,182 | 6,430,960 | 64.8 |
| 13–14 | 0.000210 | 99,176 | 21 | 99,165 | 6,331,777 | 63.8 |
| 14–15 | 0.000315 | 99,155 | 31 | 99,139 | 6,232,612 | 62.9 |
| 15–16 | 0.000432 | 99,124 | 43 | 99,102 | 6,133,473 | 61.9 |
| 16–17 | 0.000551 | 99,081 | 55 | 99,053 | 6,034,371 | 60.9 |
| 17–18 | 0.000679 | 99,026 | 67 | 98,993 | 5,935,317 | 59.9 |
| 18–19 | 0.000811 | 98,959 | 80 | 98,919 | 5,836,325 | 59.0 |
| 19–20 | 0.000945 | 98,879 | 93 | 98,832 | 5,737,406 | 58.0 |
| 20–21 | 0.001082 | 98,785 | 107 | 98,732 | 5,638,574 | 57.1 |
| 21–22 | 0.001214 | 98,678 | 120 | 98,618 | 5,539,842 | 56.1 |
| 22–23 | 0.001327 | 98,559 | 131 | 98,493 | 5,441,224 | 55.2 |
| 23–24 | 0.001413 | 98,428 | 139 | 98,358 | 5,342,730 | 54.3 |
| 24–25 | 0.001476 | 98,289 | 145 | 98,216 | 5,244,372 | 53.4 |
| 25–26 | 0.001531 | 98,144 | 150 | 98,068 | 5,146,156 | 52.4 |
| 26–27 | 0.001584 | 97,993 | 155 | 97,916 | 5,048,088 | 51.5 |
| 27–28 | 0.001633 | 97,839 | 160 | 97,758 | 4,950,172 | 50.6 |
| 28–29 | 0.001681 | 97,678 | 164 | 97,596 | 4,852,414 | 49.7 |
| 29–30 | 0.001730 | 97,514 | 169 | 97,430 | 4,754,818 | 48.8 |
| 30–31 | 0.001779 | 97,345 | 173 | 97,259 | 4,657,388 | 47.8 |
| 31–32 | 0.001829 | 97,172 | 178 | 97,083 | 4,560,129 | 46.9 |
| 32–33 | 0.001888 | 96,994 | 183 | 96,903 | 4,463,046 | 46.0 |
| 33–34 | 0.001957 | 96,811 | 189 | 96,717 | 4,366,143 | 45.1 |
| 34–35 | 0.002032 | 96,622 | 196 | 96,524 | 4,269,426 | 44.2 |
| 35–36 | 0.002119 | 96,425 | 204 | 96,323 | 4,172,903 | 43.3 |
| 36–37 | 0.002209 | 96,221 | 213 | 96,115 | 4,076,580 | 42.4 |
| 37–38 | 0.002286 | 96,009 | 219 | 95,899 | 3,980,465 | 41.5 |
| 38–39 | 0.002348 | 95,789 | 225 | 95,677 | 3,884,566 | 40.6 |
| 39–40 | 0.002401 | 95,564 | 229 | 95,450 | 3,788,889 | 39.6 |
| 40–41 | 0.002466 | 95,335 | 235 | 95,217 | 3,693,440 | 38.7 |
| 41–42 | 0.002565 | 95,100 | 244 | 94,978 | 3,598,223 | 37.8 |
| 42–43 | 0.002700 | 94,856 | 256 | 94,728 | 3,503,245 | 36.9 |
| 43–44 | 0.002876 | 94,600 | 272 | 94,464 | 3,408,517 | 36.0 |
| 44–45 | 0.003084 | 94,327 | 291 | 94,182 | 3,314,054 | 35.1 |
| 45–46 | 0.003318 | 94,037 | 312 | 93,881 | 3,219,872 | 34.2 |
| 46–47 | 0.003572 | 93,725 | 335 | 93,557 | 3,125,991 | 33.4 |
| 47–48 | 0.003850 | 93,390 | 360 | 93,210 | 3,032,434 | 32.5 |
| 48–49 | 0.004161 | 93,030 | 387 | 92,837 | 2,939,224 | 31.6 |
| 49–50 | 0.004515 | 92,643 | 418 | 92,434 | 2,846,387 | 30.7 |
| 50–51 | 0.004895 | 92,225 | 451 | 91,999 | 2,753,953 | 29.9 |
| 51–52 | 0.005321 | 91,773 | 488 | 91,529 | 2,661,954 | 29.0 |
| 52–53 | 0.005835 | 91,285 | 533 | 91,019 | 2,570,425 | 28.2 |
| 53–54 | 0.006436 | 90,752 | 584 | 90,460 | 2,479,406 | 27.3 |
| 54–55 | 0.007098 | 90,168 | 640 | 89,848 | 2,388,946 | 26.5 |
| 55–56 | 0.007765 | 89,528 | 695 | 89,181 | 2,299,098 | 25.7 |
| 56–57 | 0.008432 | 88,833 | 749 | 88,458 | 2,209,917 | 24.9 |
| 57–58 | 0.009126 | 88,084 | 804 | 87,682 | 2,121,458 | 24.1 |
| 58–59 | 0.009870 | 87,280 | 861 | 86,849 | 2,033,776 | 23.3 |
| 59–60 | 0.010670 | 86,419 | 922 | 85,958 | 1,946,927 | 22.5 |

**PROGRESSIVE**°

Underwritten by: Progressive Mountain Insurance Company
747 Alpha Drive
Highland Heights OH 44143
Phone 440-620-2423
Fax 833-905-1744
http://www.progressive.com

October 5, 2022

J Peyton Randolph II
Attorney for Michael Chamberlain and Estate of Austin Chamberlain
613 Steed Rd
Ridgeland, MS 39157

Johnson & Alday, LLC
Robert D. Johnson
Attorney for Michael Chamberlain and Estate of Austin Chamberlain
219 Roswell Street, NE
Marietta, GA 30060

Claim No.:      21-5443821
Policy No.:     02171740-001
Date of Loss:   10/24/21
Claimant:       Michael Chamberlain as PNG of Austin Chamberlain

Dear Attorney's Randolph and Johnson:

Please be advised that Progressive Mountain Insurance Company ("Progressive") has completed our investigation into the above-captioned loss. This letter is written to advise you that Progressive is unable to afford *uninsured/underinsured motorist coverage* for this loss.

The facts as we understand them is that Austin Chamberlain was a guest passenger in a 2017 Ford F150, VIN# 1FTEX1EP2HFC83443 that was owned by David Hoglund and driven by Maxley Baxter when this loss occurred. Our investigation has revealed the 2017 Ford F150, VIN# 1FTEX1EP2HFC83443 driven by Maxley Baxter was not an insured auto or temporary substitute auto as defined by the policy. Austin Charmberlain therefore did not qualify as an insured under the policy at the time of the accident.

Progressive issued commercial auto policy # 02171740-1 (Form 6912/Edition 02/19) to MTC Consulting, LLC, amended by the Uninsured Motorist Coverage Endorsement Amendatory Endorsement (Form 2852 GA/Edition 02/19) for the policy period June 5, 2021 to June 5, 2022. The 6912 (02/19) policy states in part:

GENERAL DEFINITIONS THE FOLLOWING:
6.  "**Insured auto**" or "**your insured auto**" means:
    a.  Any **auto** specifically described on the **declarations page**; or
    b.  An additional **auto** for Part I - Liability To Others and/or Part II - Damage To Your Auto on the date **you** become the owner if:
        (i)   **you** acquire the **auto** during the policy period shown on the **declarations page**;
        (ii)  **we** insure all **autos** owned by **you** that are used in **your** business;
        (iii) no other insurance policy provides coverage for that **auto**; and
        (iv)  **you** tell **us** within 30 days after **you** acquire it that **you** want **us** to cover it for that coverage.



   c.   Any replacement **auto** on the date **you** become the owner if:
       (i)   **you** acquire the **auto** during the policy period shown on the **declarations page**;
       (ii)  the **auto** that **you** acquire replaces one specifically described on the **declarations page** due to termination of **your** ownership of the replaced **auto** or due to mechanical breakdown of, deterioration of, or **loss** to the replaced **auto** that renders it permanently inoperable; and
       (iii) no other insurance policy provides coverage for that **auto**.
       If **we** provide coverage for a replacement **auto**, **we** will provide the same coverage for the replacement **auto** as **we** provide for the replaced **auto**. **We** will provide that coverage for a period of 30 days after **you** become the owner of such replacement **auto**. **We** will not provide any coverage after this 30-day period unless within this period **you** ask **us** to insure the replacement **auto**. If **you** add any coverage, increase **your** limits, or make any other changes to **your** policy during this 30-day period, these changes to **your** policy will not become effective until after **you** ask **us** to add the coverage, increase **your** limits, or make such changes.

   17. "**Temporary substitute auto**" means any **auto** **you** do not own while used with the permission of its owner as a temporary substitute for an **insured auto** that has been withdrawn from normal use due to breakdown, repair, servicing, loss or destruction. However, **temporary substitute auto** does not include any **auto** available for the regular or frequent use of **you**, a **relative**, or **your** **employees** unless that **auto** is insured under a separate policy of insurance that provides at least the minimum required limits of financial responsibility under the applicable state and federal laws.

   20. "**We**", "**us**" and "**our**" mean the company providing this insurance as shown on the **declarations page**.

   21. "**You**", "**your**" and "**yours**" refer to the named insured shown on the **declarations page**.

Please see the Uninsured Motorist Coverage Endorsement (Form 2852 GA/Edition 02/19) for the policy period June 5, 2021 to June 5, 2022. The endorsement states in part:

**INSURING AGREEMENT**

Subject to the Limits of Liability, if **you** pay the premium for Uninsured Motorist Coverage, **we** will pay for damages, other than punitive or exemplary damages, which an **insured** is legally entitled to recover from the **owner** or operator of an **uninsured auto** because of **bodily injury** or **property damage**:
1. sustained by an **insured**;
2. caused by an **accident**; and
3. arising out of the ownership, maintenance, or use of an **uninsured auto**.

Additional Definitions:

Except as specifically modified in this endorsement, all provisions of the Commercial Auto Policy apply.

We agree with you that the insurance provided under your Commercial Auto Policy, and related endorsements, is modified as follows:

**ADDITIONAL DEFINITIONS**

When used in this endorsement, whether in the singular, plural, or possessive: 1. **"Insured"** means:
   b. if the named insured shown on the **declarations page** is a corporation, partnership, organization, or any other entity that is not a natural person:
       (i) any person **occupying** an **insured auto** or a **temporary substitute auto;** and
       (ii)  any person who is entitled to recover damages covered by this endorsement because of **bodily injury** sustained by a person described in (i) above.

Based on the facts as we understand them and these policy provisions, the 2017 Ford F150, VIN# 1FTEX1EP2HFC83443 does not qualify as an insured auto or temporary substitute auto under the policy. Since Austin Chamberlain was not occupying an insured auto or temporary substitute auto at the time of the accident he did not qualify as an insured under the policy. Unfortunately, as a result Progressive is unable to afford coverage for this loss.

We reserve the right to review any additional claims or amendments to this claim to make a separate determination as to whether a defense, or indemnity, might be provided by Progressive.

Sincerely,


Stephanie Ray
Claims Adjuster


Cc:   MTC Consulting LLC
      Attn: Michael Chamberlain
      1060 Apalachee Trace
      Bishop, GA 30621

      Arch Partners Insurance
      3651 Mars Hill Rd.
      Watkinsville, GA 30677

E-FILED IN OFFICE - JT
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA

**23-A-00956-9**

**3/9/2023 12:06 PM**
TIANA P. GARNER, CLERK

IN THE SUPERIOR COURT OF GWINNETT COUNTY
STATE OF GEORGIA

MTC CONSULTING, LLC and
MICHAEL CHAMBERLAIN,

     Plaintiffs,

v.

PROGRESSIVE MOUNTAIN INSURANCE
COMPANY,

     Respondent.

    Civil Action File No.:
23-A-00956-9

## RESPONDENT PROGRESSIVE MOUNTAIN INSURANCE COMPANY'S ANSWER TO PETITIONERS' PETITION FOR DECLARATORY JUDGMENT AND COUNTERCLAIM FOR DECLARATORY JUDGMENT

COMES NOW, Progressive Mountain Insurance Company (hereinafter referred to as "Progressive" or "Respondent"), and files this its Answer to Petitioners' Petition for Declaratory Judgment ("Petition") and Counterclaim for Declaratory Judgment, showing the Court as follows:

### FIRST DEFENSE

In response to the individually numbered paragraphs contained in Petitioners' Petition, Respondent responds as follows:

### Parties, Jurisdiction and Venue

1.

Respondent admits the allegations contained in Paragraph 1 of Petitioners' Petition.

2.

Respondent admits the allegations contained in Paragraph 2 of Petitioners' Petition.

1

3.

Respondent is without knowledge or information sufficient to form a belief as to the veracity of the allegations contained in Paragraph 3 of Petitioners' Petition and, therefore, the allegations contained in Paragraph 3 of Petitioners' Petition are denied.

4.

Respondent is without knowledge or information sufficient to form a belief as to the veracity of the allegations contained in Paragraph 4 of Petitioners' Petition and, therefore, the allegations contained in Paragraph 4 of Petitioners' Petition are denied.

5.

Respondent admits the allegations contained in Paragraph 5 of Petitioners' Petition.

**<u>Preliminary Allegations</u>**

**<u>Subject Collision and Loss</u>**

6.

Respondent is without knowledge or information sufficient to form a belief as to the veracity of the allegations contained in Paragraph 6 of Petitioners' Petition and, therefore, the allegations contained in Paragraph 6 of Petitioners' Petition are denied.

7.

Respondent is without knowledge or information sufficient to form a belief as to the veracity of the allegations contained in Paragraph 7 of Petitioners' Petition and, therefore, the allegations contained in Paragraph 7 of Petitioners' Petition are denied.

8.

Respondent is without knowledge or information sufficient to form a belief as to the veracity of the allegations contained in Paragraph 8 of Petitioners' Petition and, therefore, the allegations contained in Paragraph 8 of Petitioners' Petition are denied.

9.

Respondent is without knowledge or information sufficient to form a belief as to the veracity of the allegations contained in Paragraph 9 of Petitioners' Petition and, therefore, the allegations contained in Paragraph 9 of Petitioners' Petition are denied.

10.

Respondent is without knowledge or information sufficient to form a belief as to the veracity of the allegations contained in Paragraph 10 of Petitioners' Petition as to each and every claim filed by Petitioners and, therefore, the allegations contained in Paragraph 10 of Petitioners' Petition are denied.

11.

Respondent is without knowledge or information sufficient to form a belief as to the veracity of the allegations contained in Paragraph 11 of Petitioners' Petition and, therefore, the allegations contained in Paragraph 11 of Petitioners' Petition are denied.

12.

Respondent is without knowledge or information sufficient to form a belief as to the veracity of the allegations contained in Paragraph 12 of Petitioners' Petition and, therefore, the allegations contained in Paragraph 12 of Petitioners' Petition are denied.

13.

Respondent is without knowledge or information sufficient to form a belief as to the veracity of the allegations contained in Paragraph 13 of Petitioners' Petition and, therefore, the allegations contained in Paragraph 13 of Petitioners' Petition are denied.

**Subject Insurance Policy**

14.

In response to the allegations contained in Paragraph 14 of Petitioner's Petition, Respondent admits that, upon information and belief, MTC Consulting, LLC was the named insured on Progressive Mountain Insurance Company Policy No. 02171740.  Respondent admits that Michael Chamberlain was listed on the policy as a rated driver, but denies any allegation, express or implied, that Michael Chamberlain was a named insured on the Policy. Respondent admits that the policy provided "reduced" uninsured/underinsured motorist coverage in a combined single limit of $1 million, subject to all terms and conditions of the policy.  Respondent admits that the declarations page lists a 2021 Chevy Silverado C1500, VIN 3GCUYGEL8MG132947, and that, in the space indicating where a listed vehicle is or is not used for personal use, the declarations page indicates that the Chevy Silverado is used for personal use. All allegations contained in Paragraph 14 not expressly admitted are denied.

15.

Respondent admits the address listed on the policy is 1060 Apalachee Trace, Bishop, Georgia 30621.  Respondent is without knowledge or information sufficient to form a belief as to the veracity of the remaining allegations contained in Paragraph 15 of the Petition and, therefore, said allegations are denied.

16.

Respondent is without knowledge or information sufficient to form a belief as to the veracity of the allegations contained in Paragraph 16 of Petitioners' Petition and, therefore, the allegations contained in Paragraph 16 of Petitioners' Petition are denied.

17.

Upon Respondent's knowledge, information, and belief, Respondent admits the allegations contained in Paragraph 17 of Petitioners' Petition.

18.

Respondent is without knowledge or information sufficient to form a belief as to the veracity of the allegations contained in Paragraph 18 of Petitioners' Petition and, therefore, the allegations contained in Paragraph 18 of Petitioners' Petition are denied.

19.

To the extent a response is required, Respondent admits that the declarations page does not list Austin Chamberlain as a rated driver, nor was Austin Chamberlain listed on the application for insurance.

20.

In response to the allegations contained in Paragraph 20 of Petitioner's Petition, Respondent denies that Paragraph 20 includes an exact and precise recitation of the cited policy language, as the Petition's recitation contains typographical errors.  Petitioner has attached a true and accurate copy of the subject policy for reference to the policy language.

## SUBJECT CLAIM

### 21.

Respondent denies as stated the allegations contained in Paragraph 21 of Petitioner's Petition.

### 22.

Respondent admits the allegations contained in Paragraph 22 of Petitioners' Petition.

### 23.

Respondent admits the allegations contained in Paragraph 23 of Petitioners' Petition.

## Count I – The Policy is Ambiguous

### 24.

Respondent reasserts and realleges its responses to Paragraphs 1 through 23 of Petitioners' Petition as if fully restated herein.

### 25.

Respondent denies the allegations contained in Paragraph 25 of Petitioners' Petition.

### 26.

Respondent denies the allegations contained in Paragraph 26 of Petitioners' Petition.

## Count II – Material Misrepresentation

### 27.

Respondent reasserts and realleges its responses to Paragraphs 1 through 26 of Petitioners' Petition as if fully restated herein.

### 28.

Respondent denies the allegations contained in Paragraph 28 of Petitioners' Petition.

29.

Respondent denies the allegations contained in Paragraph 29 of Petitioners' Petition.

## Count III – Personal Use and Resident Relative

30.

Respondent reasserts and realleges its responses to Paragraphs 1 through 29 of Petitioners' Petition as if fully restated herein.

31.

Respondent denies the allegations contained in Paragraph 31 of Petitioners' Petition.

32.

Respondent denies as stated the allegations contained in Paragraph 32 of Petitioners' Petition.  By way of further response, Respondent shows that the definition of "insured" cited by Petitioners' Paragraph 32 is the partial definition of "insured" only "if the named insured shown on the declarations page is a natural person".  Where, as here, the named insured is an entity that is not a natural person, the definition of "insured" is different from the definition cited by Petitioners' Paragraph 32.

33.

Respondent is without knowledge or information sufficient to form a belief as to the veracity of the allegations contained in Paragraph 33 of Petitioners' Petition and, therefore, the allegations contained in Paragraph 33 of Petitioners' Petition are denied.

34.

Respondent denies the allegations contained in Paragraph 34 of Petitioners' Petition.

35.

Respondent denies the allegations contained in Paragraph 35 of Petitioners' Petition.

36.

Respondent denies the allegations contained in Paragraph 36 of Petitioners' Petition.

37.

Respondent denies each and every allegation contained in the Paragraph beginning with "WHEREFORE" in Petitioners' Petition, including subparts and any prayer or request for relief.

38.

Respondent denies each and every allegation contained in Petitioners' Petition to which no response has previously been made.

WHEREFORE, having fully responded to Petitioners' Petition, Respondent demands that it be discharged, with costs cast against the remaining parties.

## PROGRESSIVE MOUNTAIN INSURANCE COMPANY'S COUNTERCLAIM FOR DECLARATORY JUDGMENT

COMES NOW, Progressive Mountain Insurance Company ("Progressive") and files this its Counterclaim for Declaratory Judgment.  Progressive asks this Court to declare the rights and legal relations of the parties herein.  In support thereof, Progressive respectfully shows the Court as follows:

### PARTIES, JURISDICTION, AND VENUE

1.

Jurisdiction is proper in this Court pursuant to O.C.G.A. § 9-4-2.

2.

Petitioners/Counterclaim Respondents have submitted to venue in this Court.

3.

Counterclaim Petitioner Progressive is incorporated in the State of Ohio with its principal place of business in Mayfield Village, Ohio.  Progressive is authorized to conduct business in the State of Georgia.

4.

Counterclaim Respondent MTC Consulting, LLC ("MTC") is a Georgia limited liability company with its principal place of business in Bishop, Georgia.  MTC has submitted to the jurisdiction and venue of this Court.

5.

Counterclaim Respondent Michael Chamberlain is a resident and citizen of the State of Georgia.  He has submitted to the jurisdiction and venue of this Court.

<u>PRELIMINARY ALLEGATIONS</u>

<u>Subject Accident</u>

6.

On or about October 24, 2021, a single-vehicle accident occurred when a 2017 Ford F Series truck left the roadway and collided with two trees in Grenada County, Mississippi (the "subject accident").

7.

Upon information and belief, Austin Chamberlain was a passenger in the 2017 Ford F Series at the time of the subject accident.

8.

Upon information and belief, Austin Chamberlain sustained bodily injury and died as a result of the subject accident.

9

9.

The 2017 Ford F Series being driven by Maxley Baxter at the time of the subject accident was owned by David Hoglund of Saint Charles, Illinois.

10.

The 2017 Ford F Series being driven by Maxley Baxter at the time of the subject accident was not owned by MTC.

11.

The 2017 Ford F Series being driven by Maxley Baxter at the time of the subject accident was not owned by Michael Chamberlain.

**Subject Policy**

12.

At the time of the subject incident, MTC Consulting LLC was the named insured on Progressive Mountain Insurance Company Commercial Auto Policy No. 02171740, with effective dates of coverage from June 5, 2021 through June 5, 2022 ("Policy"). (A true and accurate copy of the Policy is attached hereto as Exhibit "A.")

13.

The Policy provided "reduced" uninsured motorist bodily injury and property damage coverage in a combined single limit of $1,000,000.00, subject to all terms and conditions of the Policy.

14.

In its application for insurance, MTC listed itself as a "Corporation or LLC" and provided its Employer ID number. (A true and accurate copy of MTC's application for insurance is attached hereto as Exhibit "B.")

15.

In the application, MTC listed one vehicle to be covered: A 2015 Chevrolet Silverado C1500.  (Ex. B.)

16.

In the application, MTC indicated that the 2015 Chevrolet Silverado C1500 would be used for both business and personal use.  (Ex. B.)

17.

As a result of MTC's application, the Policy's declarations page indicates: "The named insured organization type is a corporation."  (Ex. A.)

18.

Subsequent to the Policy inception, MTC removed the 2015 Chevrolet Silverado C1500 and added a 2021 Chevrolet Silverado C1500; thus, at the time of the subject accident, the 2021 Chevrolet Silverado C1500 was the only vehicle listed on the Policy.

19.

The Policy states, in pertinent part:

**GENERAL DEFINITIONS**

**The words and phrases below, whether in the singular, plural or possessive, have the following special meanings when appearing in boldface type in this policy, and in endorsements issued in connection with this policy, unless specifically modified.**

. . . .

6.     "**Insured auto**" or "**your insured auto**" means:
a.     Any **auto** specifically described on the **declarations page**; or
b.     An additional **auto** for Part I – Liability To Others and/or Part II – Damage To Your Auto […]
c.     Any replacement **auto** on the date you become the owner if:
(i)     **you** acquire the **auto** during the policy period shown on the **declarations page**;
(ii)     the **auto** that **you** acquire replaces one specifically described on the **declarations page** due to termination of **your** ownership of the replaced **auto** or due to mechanical breakdown of, deterioration of, or loss to the replaced **auto** that renders it permanently inoperable; and

11

                (iii)        no other insurance policy provides coverage for that **auto**.

. . . .

18.      "**Temporary substitute auto**" means any **auto you** do not own while used with the permission of its owner as a temporary substitute for an **insured auto** that has been withdrawn from normal use due to breakdown, repair, servicing, loss or destruction.  However, **temporary substitute auto** does not include any **auto** available for the regular or frequent use of **you**, a **relative**, or **your employees** unless that **auto** is insured under a separate policy of insurance that provides at least the minimum required limits of financial responsibility under the applicable state and federal laws.

. . . .

21.      "**You**", "**your**", and "**yours**" refer to the named insured shown on the **declarations page**.

## UNINSURED MOTORIST COVERAGE ENDORSEMENT

. . . .

### INSURING AGREEMENT

Subject to the Limits of Liability, if **you** pay the premium for Uninsured Motorist Coverage, **we** will pay for damages, other than punitive or exemplary damages, which an **insured** is legally entitled to recover from the **owner** or operator of an **uninsured auto** because of **bodily injury** or **property damage**:

        1.      sustained by an **insured**;
        2.      caused by an **accident**; and
        3.      arising out of the ownership, maintenance, or use of an **uninsured auto**.

**We** will pay under this endorsement only after the limits of liability under all applicable bodily injury liability bonds and policies have been exhausted by payment of judgments or settlements.

. . . .

### ADDITIONAL DEFINITIONS

When used in this endorsement, whether in the singular, plural, or possessive:

1.      "**Insured**" means:
        . . . .
        b.      If the named insured shown on the **declarations page** is a corporation, partnership, organization, or any other entity that is not a natural person:
                (i)      any person **occupying** an **insured auto** or a **temporary substitute auto**; and
                (ii)     any person who is entitled to recover damages covered by this endorsement because of **bodily injury** sustained by a person described in (i) above.
        For purposes of this definition, **insured auto** includes **mobile equipment** that is:

12

      a.       owned by **you**;

      b.       leased, hired, or borrowed by **you** and **you** have purchased either "Hired Auto Coverage" or "Any Automobile Legal Liability Coverage" from **us**; or

      c.       not owned, leased, hired, or borrowed by **you** and **you** have purchased either "Employer's Non-Ownership Liability Coverage" or "Any Automobile Legal Liability Coverage" from **us**.

However, **mobile equipment** meeting any of those three criteria will be included in the definition only if at the time of loss it is being:

      i.      used in **your** business;

      ii.     operated on a public highway; and

      iii.    operated in a state or province where it is subject to a compulsory or financial responsibility law or other motor vehicle insurance law.

. . . .

**Reduced Coverage**

If "Reduced Coverage" has been elected, as shown on the **declarations page**, the following shall also apply:

1.     The bodily injury limits of the liability under this endorsement shall be reduced by all sums:

      a.       paid because of **bodily injury** by or on behalf of any persons or organizations that may be legally responsible.

      b.       paid under Part I – Liability To Others;

      c.       paid or payable under any applicable Medical Payments coverage Endorsement; and

      d.       paid, payable, or that should apply, because of **bodily injury** under any of the following or similar laws:

      (i)     workers' compensation law; or

      (ii)    disability benefits law.

. . . .

(Ex. A.)

## <u>Subject Claim</u>

20.

On September 27, 2022, counsel for Michael Chamberlain (as parent and natural guardian of Austin Chamberlain) submitted to Progressive a time-limited demand for $1 million, purportedly under the Policy's UM coverage. (A true and accurate copy of the demand is attached hereto as Exhibit "C.")

<u>DECLARATORY JUDGMENT</u>

<u>Count I – No Bodily Injury To An "Insured"</u>

21.

Progressive incorporates by reference the allegations contained in Paragraphs 1 through 20 as though set forth fully herein.

22.

Progressive is in a position of uncertainty as to its rights, obligations, and duties in regard to the extent of any applicable coverage under the Policy pursuant to the terms at issue and cited herein.

23.

In order for UM coverage to apply under the Policy, the damages at issue must be "because of bodily injury or property damage: (1) sustained by an **insured** . . . ."  (Ex. A.)

24.

With respect to the definition of "insured", the Policy states:

1.   "**Insured**" means:
     . . . .
     b.   If the named insured shown on the **declarations page** is a corporation, partnership, organization, or any other entity that is not a natural person:
          (i)   any person **occupying** an **insured auto** or a **temporary substitute auto**; and
          (ii)  any person who is entitled to recover damages covered by this endorsement because of **bodily injury** sustained by a person described in (i) above.

25.

The named insured on the Policy is MTC.

26.

MTC is a "corporation, partnership, organization, or any other entity that is not a natural person."

14

27.

MTC designated itself as a corporation in its application for insurance coverage.

28.

Austin Chamberlain was not occupying an insured auto or temporary substitute auto at the time of the subject accident, as set out by subparagraph (b)(i) of the definition of "insured".

29.

Austin Chamberlain is not entitled to recover damages because of bodily injury sustained by another person occupying an insured auto or temporary substitute auto, as set out by subparagraph (b)(ii) of the definition of "insured".

30.

Accordingly, Austin Chamberlain is not an "insured" under the plain language of the Policy.

31.

Because no "insured" sustained bodily injury, the Policy does not provide UM coverage for the subject accident.

**Count II – "Reduced" UM Coverage**

32.

Progressive incorporates by reference the allegations contained in Paragraphs 1 through 31 as though set forth fully herein.

33.

Progressive is in a position of uncertainty as to its rights, obligations, and duties in regard to the extent of any applicable coverage under the Policy pursuant to the terms at issue and cited herein.

15

34.

In MTC's application for insurance coverage, it affirmatively rejected "Added On" UM coverage and selected "Reduced" UM coverage.

35.

The application states: "I understand that Reduced Coverage provides lower effective limits than Added On Coverage because with Reduced Coverage, my Uninsured Motorist Coverage limits are reduced by all amounts paid by or on behalf of the at-fault party, including any amounts paid by liability insurance."

36.

Thus, at the time of the subject accident, the Policy provided "Reduced" UM coverage in the amount of $1 million, subject to all terms and conditions of the Policy.

37.

The Policy states:

**Reduced Coverage**

If "Reduced Coverage" has been elected, as shown on the **declarations page**, the following shall also apply:
1.      The bodily injury limits of the liability under this endorsement shall be reduced by all sums:
      a.      paid because of **bodily injury** by or on behalf of any persons or organizations that may be legally responsible.
      b.      paid under Part I – Liability To Others;
      c.      paid or payable under any applicable Medical Payments coverage Endorsement; and
      d.      paid, payable, or that should apply, because of **bodily injury** under any of the following or similar laws:
            (i)      workers' compensation law; or
            (ii)     disability benefits law.
. . . .

38.

Upon information and belief, Michael Chamberlain, on behalf of Austin Chamberlain, has been paid some amount by or on behalf of Maxley Baxter.

39.

Upon information and belief, Michael Chamberlain, on behalf of Austin Chamberlain, has been paid some amount by or on behalf of one or more persons or entities allegedly legally responsible for the subject accident and resulting damages to Austin Chamberlain.

40.

Pursuant to the plain language of the Policy, if UM coverage did exist for Michael Chamberlain's claim, the applicable limit would be reduced by all sums paid to Michael Chamberlain, on behalf of Austin Chamberlain, by or on behalf of any person or entity allegedly legally responsible for the subject accident and resulting damages to Austin Chamberlain.

41.

Progressive is in a position of uncertainty as to its rights, obligations, and duties in regard to the extent of any applicable coverage under the Policy pursuant to the terms at issue and cited herein and seeks a judicial declaration with respect to these coverage issues.

42.

Progressive has no adequate remedy at law or otherwise, except by this Petition for Declaratory Judgment.

WHEREFORE, Counterclaim Petitioner Progressive prays:

(a)     that process and summons issue to each of the Counterclaim Respondents herein and that they be served with process and a copy of this Petition for Declaratory Judgment as required by law;

(b)     that this Court declare the rights and legal obligations of Counterclaim Petitioner and Counterclaim Respondents under the subject Policy;

(c)     and for such other and further relief as this Court deems appropriate.

17

Respectfully submitted, this 9th day of March, 2023.

LUEDER, LARKIN & HUNTER, LLC

*/s/ Samuel H. Sabulis*
SAMUEL H. SABULIS
Georgia Bar No. 339532
*Attorneys for Respondent*

3535 Piedmont Road NE
Building 14, Suite 205
Atlanta, Georgia 30305
T: (678) 359-6028
F: (678) 359-6028
ssabulis@luederlaw.com

18

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have this day served a copy of the within and foregoing document upon all parties to this matter by:

_____x_____   Electronically filing this document with PeachCourt / Odyssey which sends notice via that system to all parties and counsel pursuant to O.C.G.A. § 9-11-5(F) and/or U.S.C.R. 36.16(E)

_____   Electronically serving this document via email pursuant to O.C.G.A. § 9-11-5 (F) and/or U.S.C.R. 36.16(E) as follows:

_____   Depositing a true copy of same in the U.S. Mail, proper postage prepaid, addressed to counsel of record as follows:

Robert D. Johnson, Esq.
John E. Alday, Esq.
Johnson & Alday, LLC
219 Roswell Street, NE
Marietta, Georgia 30060

Respectfully submitted, this 9th day of March, 2023.

LUEDER, LARKIN & HUNTER, LLC

*/s/ Samuel H. Sabulis*_____
SAMUEL H. SABULIS
Georgia Bar No. 339532
*Attorneys for Respondent*

3535 Piedmont Road NE
Building 14, Suite 205
Atlanta, Georgia 30305
T: (678) 359-6028
F: (678) 359-6028
ssabulis@luederlaw.com

# EXHIBIT "A"

ARCH PARTNERS INS
3651 MARS HILL RD
WATKINSVILLE, GA 30677


COMMERCIAL

Named insured

MTC CONSULTING LLC
1060 APALACHEE TRACE
BISHOP, GA 30621

Policy number:   02171740
Underwritten by:
Progressive Mountain Insurance Co
April 6, 2021
Policy Period: Jun 5, 2021 - Jun 5, 2022
Page 1 of 2

progressiveagent.com
Online Service
Make payments, check billing activity, print
policy documents, update your policy or
check the status of a claim.

1-706-850-8877
ARCH PARTNERS INS
Contact your agent for personalized service.

1-800-444-4487
For customer service if your agent is
unavailable or to report a claim.

# Commercial Auto Insurance Coverage Summary This is your Renewal Declarations Page

This Renewal Declarations Page is effective only if the minimum amount due to renew your policy is received or postmarked by June 5, 2021.

Your coverage begins on June 5, 2021 at 12:01 a.m. This policy expires on June 5, 2022 at 12:01 a.m.

Your insurance policy and any policy endorsements contain a full explanation of your coverage. The policy limits shown for an auto may not be combined with the limits for the same coverage on another auto, unless the policy contract allows the stacking of limits. The policy contract is form 6912 (02/19). The contract is modified by forms 2852GA (02/19), 4757GA (02/19), 1303 (11/07), 6870 (06/04), 8518GA (09/89), Z311 (02/19), 4852GA (02/19), 4881GA (02/19), Z228 (01/11) and A274GA (02/19).

The named insured organization type is a corporation.

## Outline of coverage

| Description | Limits | Deductible | Premium |
|---|---|---|---|
| **Liability To Others** | | | |
| Bodily Injury and Property Damage Liability | $1,000,000 combined single limit | | |
| **Uninsured Motorist - Reduced** | | | |
| Bodily Injury and Property Damage | $1,000,000 combined single limit | | |
| Deductible Applies To Property Damage | | $250 | |
| **Medical Payments** | | | |
| **Comprehensive** | | | |
| See Auto Coverage Schedule | Limit of liability less deductible | | |
| **Collision** | | | |
| See Auto Coverage Schedule | Limit of liability less deductible | | |
| **Rental Reimbursement** | | | |
| See Auto Coverage Schedule | | | |
| Total 12 month policy premium | | | |

## Rated drivers

1. MICHAEL CHAMBERLAIN

Form 6489 GA (04/20)

Policy number: 02171740
MTC CONSULTING LLC
Page 2 of 2

## Auto coverage schedule

1.  2021 CHEVROLET SILVERADO C1500  Actual Cash Value (plus $2,000.00 Permanently Attached Equip)
    VIN: 3GCUYGEL8MG132947  Garaging Zip Code: 30621  Radius: 50 miles
    Personal use: Y  Body type: Pickup Truck

| Liability Premium | Liability Premium | UM-Red Premium | Med Pay Premium | |
|---|---|---|---|---|
| | | | | |

| Physical Damage Premium | Comp Deductible | Comp Premium | Collision Deductible | Collision Premium |
|---|---|---|---|---|
| | $250 | | $500 | |

| Other Coverages Premium | Rental Limit | Rental Premium | | Auto Total |
|---|---|---|---|---|
| | $40 per day | | | |
| | Max $1,200 | | | |

## Premium discount

| Policy | |
|---|---|
| 02171740 | Paid In Full |

## Company officers

*[signature]*

Secretary

Form 6912 (02/19)

# COMMERCIAL AUTO POLICY

**INDEX OF POLICY PROVISIONS**         **PAGE**

DUTIES IN THE EVENT OF AN ACCIDENT OR LOSS ..................................................1

**GENERAL DEFINITIONS** ...............................................................................2

**PART I - LIABILITY TO OTHERS**
    Insuring Agreement - Liability To Others ......................................6
    Additional Definitions Used in This Part Only .............................6
    Additional Payments ...........................................................................8
    Out-Of-State Coverage Extension ..................................................9
    Exclusions ..............................................................................................9
    Limit of Liability ................................................................................ 12

**PART II - DAMAGE TO YOUR AUTO**
    Insuring Agreement - Collision Coverage ................................. 13
    Insuring Agreement - Comprehensive Coverage ..................... 14
    Insuring Agreement - Fire and Theft with Combined
      Additional Coverage (CAC) ...................................................... 14
    Additional Coverage ........................................................................ 14
    Additional Payments ....................................................................... 14
    Additional Definition Used in This Part Only ............................. 15
    Exclusions ........................................................................................... 15
    Limit of Liability ............................................................................... 16
    Deductible .......................................................................................... 17
    Salvage ............................................................................................... 17
    No Benefit to Bailee ........................................................................ 17
    Appraisal ............................................................................................ 18
    Payment of Loss .............................................................................. 18
    Loss Payee Agreement ................................................................... 18

**GENERAL PROVISIONS** .......................................................... 19

## COMMERCIAL AUTO POLICY

If **you** pay **your** premium when due, **we** will provide the insurance described in this policy.

## DUTIES IN THE EVENT OF AN ACCIDENT OR LOSS

For coverage to apply under this policy, **you** or the person seeking coverage must promptly report each **accident** or **loss** even if **you** or the person seeking coverage is not at fault. Refer to your policy documents for the claims phone number.

**You** or the person seeking coverage must also obtain and provide **us** the names and addresses of all persons Involved in the **accident** or **loss**, the names and addresses of any witnesses, and the license plate numbers of the vehicles involved.

If **you** or the person seeking coverage cannot identify the owner or operator of a vehicle involved in the **accident**, or if theft or vandalism has occurred, **you** or the person seeking coverage must notify the police within 24 hours or as soon as practicable. However, for purposes of uninsured motorist coverage when the owner or operator of a vehicle involved in the accident cannot be identified, **you** or the person seeking coverage must notify the police no more than 30 days after the accident.

A person seeking coverage must:

1. cooperate with **us** in any matter concerning a claim or lawsuit;
2. provide any written proof of **loss we** may reasonably require;
3. allow **us** to take signed and recorded statements, including sworn statements and examinations under oath, which **we** may conduct outside the presence of **you**, a **relative**, or any person claiming coverage, and answer all reasonable questions **we** may ask as often as **we** may reasonably require;
4. promptly call **us** to notify **us** about any claim or lawsuit and send **us** any and all legal papers relating to any claim or lawsuit;
5. attend hearings and trials as **we** require;
6. submit to medical examinations at **our** expense by doctors **we** select as often as **we** may reasonably require;
7. authorize **us** to obtain medical and other records;
8. take reasonable steps after a **loss** to protect the **insured auto** from further **loss. We** will pay reasonable expenses incurred in providing that protection. If failure to provide such protection results in further loss, any additional damages will not be covered under this policy;
9. allow **us** to have access to an **insured auto** or other **auto** involved in an **accident** or **loss** and to have it inspected and appraised before its repair or disposal; and
10. authorize **us** access to **your** business or personal records as often as **we** may reasonably require.

## GENERAL DEFINITIONS

**The words and phrases below, whether in the singular, plural or possessive, have the following special meanings when appearing in boldface type in this policy, and in endorsements issued in connection with this policy, unless specifically modified.**

1. "**Accident**" means a sudden, unexpected and unintended event, or a continuous or repeated exposure to that event, that causes **bodily injury** or **property damage**.

2. "**Auto**" means a land motor vehicle or **trailer** designed for travel on public roads, or any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state or province where it is licensed or principally garaged. It does not include **mobile equipment**. Self-propelled vehicles with the following types of permanently attached equipment are **autos**, not **mobile equipment**:
   a. equipment designed and used primarily for:
      (i) snow removal;
      (ii) road maintenance, but not construction or resurfacing;
      (iii) street cleaning;
   b. cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and
   c. air compressors, pumps, and generators, including spraying, welding, building cleaning, geophysical exploration, lighting, and well-servicing equipment.

3. "**Bodily injury**" means bodily harm, sickness, or disease, including death that results from bodily harm, sickness, or disease.

4. "**Declarations**" or "**declarations page**" means the document prepared by **us** listing **your** policy information, which may include the types of coverage **you** have elected, the limit for each coverage, the cost for each coverage, the specifically described **autos** covered by this policy, and the types of coverage for each specifically described **auto**.

5. "**Employee**" includes a **leased worker** and a statutory employee. **Employee** does not include a **temporary worker**.

6. "**Insured auto**" or "**your insured auto**" means:
   a. Any **auto** specifically described on the **declarations page**; or
   b. An additional **auto** for Part I - Liability To Others and/or Part II - Damage To Your Auto on the date **you** become the owner if:
      (i) **you** acquire the **auto** during the policy period shown on the **declarations page**;
      (ii) **we** insure all **autos** owned by **you** that are used in **your** business;
      (iii) no other insurance policy provides coverage for that **auto**; and
      (iv) **you** tell **us** within 30 days after **you** acquire it that **you** want **us** to cover it for that coverage.

   If **you** add any coverage, increase **your** limits, or make any other changes to this policy during the 30-day period after **you** acquire an additional **auto**, these changes to **your** policy will not become effective until after **you** ask **us** to add the coverage, increase **your** limits, or make such changes for the additional **auto**. **We** may charge premium for the additional **auto** from the date **you** acquire the **auto**.

   With respect to Part I - Liability To Others, if **we** provide coverage for an additionally acquired **auto** in accordance with this paragraph b., **we** will provide the same coverage for such additional **auto** as **we** provide for any **auto** shown on the **declarations page**.

   With respect to Part II - Damage To Your Auto, if **we** provide coverage for an **auto you** acquire in addition to any **auto** specifically described on the **declarations page**, and the additional **auto** is:
      (i) a **private passenger auto**, **we** will provide the broadest coverage **we** provide for any **auto** shown on the **declarations page**; or
      (ii) any **auto** other than a **private passenger auto**, and **you** have purchased Physical Damage coverage for at least one **auto** other than a **private passenger auto**, **we** will provide the broadest coverage for which the newly acquired **auto** is eligible.

   c. Any replacement **auto** on the date **you** become the owner if:
      (i) **you** acquire the **auto** during the policy period shown on the **declarations page**;
      (ii) the **auto** that **you** acquire replaces one specifically described on the **declarations page** due to termination of **your** ownership of the replaced **auto** or due to mechanical breakdown of, deterioration of, or **loss** to the replaced **auto** that renders it permanently inoperable; and
      (iii) no other insurance policy provides coverage for that **auto**.
   If **we** provide coverage for a replacement **auto**, **we** will provide the same coverage for the replacement **auto** as **we** provide for the replaced **auto**. **We** will provide that coverage for a period of 30 days after **you** become the owner of such replacement **auto**. **We** will not provide any coverage after this 30-day period unless within this period **you** ask **us** to insure the replacement **auto**. If **you** add any coverage, increase **your** limits, or make any other changes to **your** policy during this 30-day period, these changes to **your** policy will not become effective until after **you** ask **us** to add the coverage, increase **your** limits, or make such changes.

7. "**Insured contract**" means:
   a. A lease of premises;
   b. A sidetrack agreement;
   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;
   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;
   e. That part of any other contract or agreement pertaining to **your** business (including an indemnification of a municipality in connection with work performed for a municipality) under which **you** assume the tort liability that is vicariously imposed on another for **your** negligence or that of **your employees** or agents; or

f. That part of any contract or agreement, entered into as part of **your** business, for the rental of an **insured auto**. However, such contract or agreement shall not be considered an **insured contract** to the extent that it obligates **you** or any of **your employees** to pay for **property damage** to any **auto** rented or leased to **you** or any of **your employees**.

An "**insured contract**" does not include that part of any contract or agreement:

1. That indemnifies a railroad for **bodily injury** or **property damage** arising out of construction or demolition operations within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass, or crossing; or
2. That pertains to the loan, lease or rental of an **auto** to **you** or any of **your employees**, if the **auto** is loaned, leased or rented with a driver; or
3. That holds a person or organization engaged in the business of transporting property by **auto** for hire harmless for **your** use of an **insured auto** over a route or territory that person or organization is authorized to serve by public authority.

8. "**Leased worker**" means a person leased to **you** by a labor leasing firm under an agreement between **you** and the labor leasing firm to perform duties related to the conduct of **your** business. **Leased worker** does not include a **temporary worker**.

9. "**Loss**" means sudden, direct and accidental loss or damage.

10. "**Mobile equipment**" means any of the following types of land vehicles, including, but not limited to, any attached machinery or equipment:
    a. Bulldozers, farm implements and machinery, forklifts, and other vehicles designed for use principally off public roads;
    b. Vehicles **you** use solely on premises **you** own or rent and on accesses to public roads from these premises, unless specifically described on the **declarations page** and not defined as **mobile equipment** under other parts of this definition;
    c. Any vehicle that travels on crawler treads, or that does not require licensing in the state in which **you** reside or **your** business is licensed;
    d. Vehicles, whether self-propelled or not, used primarily to provide mobility to permanently attached:
       (i) Power cranes, shovels, loaders, diggers, or drills; or
       (ii) Road construction or resurfacing equipment, such as graders, scrapers or rollers.
    e. Vehicles not described in Paragraphs a., b., c., or d. above that are not self-propelled and are used primarily to provide mobility to permanently attached equipment of the following types:
       (i) Air compressors, pumps, and generators, including spraying, welding, building cleaning, geophysical exploration, lighting, and well-servicing equipment; or
       (ii) Cherry pickers and similar devices used to raise or lower workers.
    f. Vehicles not described in Paragraphs a., b., c., or d. above that are self-propelled and used primarily for purposes other than transportation of persons or cargo.
    However, **mobile equipment** does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state or province where it is licensed or principally garaged.

11. "**Occupying**" means in, on, entering or exiting.

12. "**Personal vehicle sharing program**" means a system or process, operated by a business, organization, network, group, or individual, that facilitates the sharing of **private passenger autos** for use by individuals, businesses, or other entities.

13. "**Pollutants**" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

14. "**Private passenger auto**" means a land motor vehicle:
    a. of the private passenger, pickup body, or cargo van type;
    b. designed for operation principally upon public roads;
    c. with at least four wheels; and
    d. with a gross vehicle weight rating of 12,000 pounds or less, according to the manufacturer's specifications.
    However, **private passenger auto** does not include step-vans, parcel delivery vans, or cargo cutaway vans or other vans with cabs separate from the cargo area.

15. "**Property damage**" means physical damage to, destruction of, or loss of use of, tangible property.

16. "**Relative**" means any person residing in the household in which the named insured resides who is related to the named insured by blood, marriage, or adoption, including a ward or foster child. This term only applies if the named insured is a natural person.

17. "**Temporary substitute auto**" means any **auto you** do not own while used with the permission of its owner as a temporary substitute for an **insured auto** that has been withdrawn from normal use due to breakdown, repair, servicing, loss or destruction. However, **temporary substitute auto** does not include any **auto** available for the regular or frequent use of **you**, a **relative**, or **your employees** unless that **auto** is insured under a separate policy of insurance that provides at least the minimum required limits of financial responsibility under the applicable state and federal laws.

18. "**Temporary worker**" means:
    a. a person who is furnished to **you** to substitute for a permanent **employee** on leave or to meet seasonal or short-term workload conditions; or
    b. a day laborer.

19. "**Trailer**" includes a semi-trailer and any piece of equipment used to convert a semi-trailer to a full trailer while it is attached to the semi-trailer.

20. "**We**", "**us**" and "**our**" mean the company providing this insurance as shown on the **declarations page**.

21. "**You**", "**your**" and "**yours**" refer to the named insured shown on the **declarations page**.

## PART I - LIABILITY TO OTHERS

**INSURING AGREEMENT - LIABILITY TO OTHERS**

Subject to the Limits of Liability, if **you** pay the premium for liability coverage for the **insured auto** involved, **we** will pay damages, other than punitive or exemplary damages, for **bodily injury**, **property damage**, and **covered pollution cost or expense** for which an **insured** becomes legally responsible because of an **accident** arising out of the ownership, maintenance or use of that **insured auto**. However, **we** will only pay for the **covered pollution cost or expense** if the same **accident** also caused **bodily injury** or **property damage** to which this insurance applies.

**We** will settle or defend, at **our** option, any claim or lawsuit for damages covered by this Part I. **We** have no duty to settle or defend any lawsuit, or make any additional payments, after the Limit of Liability for this coverage has been exhausted by payment of judgments or settlements.

**ADDITIONAL DEFINITIONS USED IN THIS PART ONLY**

A.  When used in Part I - Liability To Others, **insured** means:
    1.  **You** with respect to an **insured auto**.
    2.  Any person while using, with **your** permission, and within the scope of that permission, an **insured auto you** own, hire, or borrow except:
        (a) Any person while he or she is working in a business of selling, leasing, repairing, parking, storing, servicing, delivering or testing **autos**, unless that business is **yours** and it was so represented in **your** application.
        (b) Any person while he or she is moving property to or from an **insured auto**, other than one of **your employees**, partners (if you are a partnership), members (if you are a limited liability company), or officers or directors (if you are a corporation).
        (c) The owner or anyone else from whom the **insured auto** is leased, hired, or borrowed. However, this exception does not apply if the **insured auto** is specifically described on the **declarations page**.
        (d) The employees or agents of an owner or anyone else from whom the **insured auto** is leased, hired or borrowed. However, this exception does not apply if the **insured auto** is specifically described on the **declarations page**.
        For purposes of this subsection A.2., an **insured auto you** own includes any **auto** specifically described on the **declarations page**.

3. Any other person or organization, but only with respect to the legal liability of that person or organization for acts or omissions of any person otherwise covered under this Part I - Liability To Others. If **we** make a filing or submit a certificate of insurance on **your** behalf with a regulatory or governmental agency, the term "**insured**" as used in such filing or certificate, and in any related endorsement, refers only to the person or organization named on such filing, certificate or endorsement.

B. When used in Part I - Liability To Others, **insured auto** also includes:
   1. **Trailers** designed primarily for travel on public roads, while connected to **your insured auto** that is a power unit;
   2. **Mobile equipment** while being carried or towed by an **insured auto**;
   3. Any **temporary substitute auto**; and
   4. **Mobile equipment** that is:
      a. owned by **you;**
      b. leased, hired, or borrowed by **you** and **you** have purchased either "Hired Auto Coverage" or "Any Automobile Legal Liability Coverage" from **us**; or
      c. not owned, leased, hired, or borrowed by **you** and **you** have purchased either "Employer's Non-Ownership Liability Coverage" or "Any Automobile Legal Liability Coverage" from **us**.

   However, **mobile equipment** meeting any of those three criteria will qualify only if at the time of **loss** it is being:
      a. used in **your** business;
      b. operated on a public highway; and
      c. operated in a state or province where it is subject to a compulsory or financial responsibility law or other motor vehicle insurance law.

C. When used in Part I - Liability To Others, "**covered pollution cost or expense**" means any cost or expense arising out of:
   1. Any request, demand, order, or statutory or regulatory requirement; or
   2. Any claim or suit by or on behalf of a governmental authority demanding that the **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of, **pollutants**.

   **Covered pollution cost or expense** does not include any cost or expense arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of **pollutants**:
      a. That are, or that are contained in any property that is:
         (i) Being transported or towed by, handled, or handled for movement into, onto, or from, the **insured auto**;
         (ii) Otherwise in the course of transit by or on behalf of the **insured**; or
         (iii) Being stored, disposed of, treated, or processed in or upon the **insured auto**;
      b. Before the **pollutants** or any property in which the **pollutants** are contained are moved from the place where they are accepted by the **insured** for movement into or onto the **insured auto**; or
      c. After the **pollutants** or any property in which the **pollutants** are contained are moved from the **insured auto** to the place where they are finally delivered, disposed of, or abandoned by the **insured.**

   The above Paragraph a. of this definition does not apply to fuels, lubricants, fluids, exhaust gasses, or other similar **pollutants** that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the **insured auto** or its parts if:
      (1) The **pollutants** escape, seep, migrate, or are discharged, dispersed or released directly from an **insured auto** part designed by its manufacturer to hold, store, receive or dispose of such **pollutants** and is a part that would be required for the customary operation of the **insured auto**; and
      (2) The **bodily injury**, **property damage** or **covered pollution cost or expense** does not arise out of the operation of any equipment listed in Paragraphs b. and c. of the definition of **auto**.

   The above Paragraphs b. and c. of this definition do not apply to **accidents** that occur away from premises owned by or rented to an **insured** with respect to **pollutants** not in or upon an **insured auto** if:
      (1) The **pollutants** or any property in which the **pollutants** are contained are upset, overturned or damaged as a result of the maintenance or use of an **insured auto**; and
      (2) The discharge, dispersal, release or escape of the **pollutants** is caused directly by such upset, overturn or damage.

**ADDITIONAL PAYMENTS**

In addition to **our** Limit of Liability, **we** will pay for an **insured**:

1.  all expenses that **we** incur in the settlement of any claim or defense of any lawsuit;

2.  interest accruing after entry of judgment on that part of the judgment that does not exceed **our** Limit of Liability. This payment does not apply if **we** have not been given notice of suit or the opportunity to defend an **insured**. **Our** payment, offer in writing, or deposit in court of that part of the judgment which does not exceed **our** Limit of Liability ends **our** duty to pay interest which accrues after the date of **our** payment, written offer, or deposit;

3.  the premium on any appeal bond or attachment bond required in any lawsuit **we** defend. **We** have no duty to purchase a bond in a principal amount exceeding **our** Limit of Liability, and **we** have no duty to apply for or furnish these bonds;

4.  up to $2,000 for cost of bail bonds required because of an **accident we** cover. **We** have no duty to apply for or furnish these bonds;

5.  reasonable expenses incurred by an **insured** at **our** request, including loss of earnings up to $250 a day; and

6.  all court costs taxed against the **insured** in any "suit" against the **insured** we defend. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the **insured**.

**OUT-OF-STATE COVERAGE EXTENSION**

If an **accident** to which this Part I applies occurs in any state, territory, or possession of the United States of America, Puerto Rico, or any province or territory of Canada, other than the state in which an **insured auto** is principally garaged, and the state, province, territory or possession has:
1.  a financial responsibility or similar law requiring limits of liability for **bodily injury** or **property damage** higher than the limits shown on the **declarations page**, this policy will provide the higher limit; or
2.  a compulsory insurance or similar law requiring a non-resident to maintain insurance whenever the non-resident uses an **auto** in that state, province, territory or possession, this policy will provide the greater of:
    a.  the required minimum amounts and types of coverage; or
    b.  the Limits of Liability under this policy.

This extension does not apply to the limit or limits specified by any law governing commercial carriers of passengers or property.

**We** will not pay anyone more than once for the same elements of **loss** because of this extension.

<u>**EXCLUSIONS**</u> **- PLEASE READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE FOR AN ACCIDENT OR LOSS WILL NOT BE AFFORDED UNDER THIS PART I - LIABILITY TO OTHERS.**
Coverage under this Part I, including **our** duty to defend, does not apply to:

1.  **Expected or Intended Injury**
    **Bodily injury** or **property damage** either expected by or caused intentionally by or at the direction of any **insured**.

2.  **Contractual**
    Any liability assumed by an **insured** under any contract or agreement, unless the agreement is an **insured contract** that was executed prior to the occurrence of any **bodily injury** or **property damage**.

    However, this exclusion does not apply to liability for damages that an **insured** would have in the absence of the contract or agreement.

3. **Worker's Compensation**

Any obligation for which an **insured** or an insurer of that **insured**, even if one does not exist, may be held liable under workers' compensation, unemployment compensation, disability benefits law, or any similar law.

4. **Nuclear Energy Liability**

An **accident** for which any person is insured under nuclear energy liability insurance. This exclusion applies even if the limits of that insurance are exhausted.

5. **Employee Indemnification and Employer's Liability**

**Bodily injury** to:

a. An **employee** of any **insured** arising out of or within the course of:

   (i)   That **employee's** employment by any **insured**; or

   (ii)  Performing duties related to the conduct of any **insured's** business; or

b. The spouse, child, parent, brother or sister of that **employee** as a consequence of Paragraph a. above.

This exclusion applies:

a. Whether the **insured** may be liable as an employer or in any other capacity; and

b. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to **bodily injury** to a domestic **employee** if benefits are neither paid nor required to be provided under any workers' compensation, disability benefits, or similar law, or to liability for **bodily injury** assumed by the **insured** under an **insured contract**. For the purposes of this policy, a domestic **employee** is a person engaged in household or domestic work performed principally in connection with a residence premises.

6. **Fellow Employee**

**Bodily injury** to:

a. a fellow **employee** of an **insured** injured while within the course of their employment or while performing duties related to the conduct of **your** business.

b. the spouse, child, parent, brother, or sister of that fellow **employee** as a consequence of Paragraph a. above.

7. **Care, Custody or Control**

**Property damage** to, towing or removal expense for, or **covered pollution cost or expense** involving, any property owned by, rented to, being transported by, used by, or in the care, custody or control of any **insured**, including any motor vehicle operated or being towed. But this exclusion does not apply to liability assumed under a sidetrack agreement.

8. **Movement of Property by Mechanical Device**

**Bodily injury** or **property damage** resulting from or caused by the movement of property by a mechanical device, other than a hand truck, not attached to an **insured auto**.

9. **Handling of Property**

**Bodily injury** or **property damage** resulting from or caused by the handling of property:

a. before it is moved from the place where it is accepted by the **insured** for movement into or onto **your insured auto**; or

b. after it has been moved from **your insured auto** to the place where it is finally delivered by the **insured**.

10. **Pollution**

**Bodily injury** or **property damage** resulting from or caused by the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of any **pollutants**:

a. That are, or that are contained in any property that is:

   (i)   Being transported or towed by, handled, or handled for movement into, onto, or from the **insured auto**;

   (ii)  Otherwise in the course of transit by or on behalf of the **insured**; or

   (iii) Being stored, disposed of, treated, or processed in or upon the **insured auto**;

b. Before the **pollutants** or any property in which the **pollutants** are contained are moved from the place where they are accepted by

the **insured** for movement into or onto the **insured auto**; or

c.   After the **pollutants** or any property in which the **pollutants** are contained are moved from the **insured auto** to the place where they are finally delivered, disposed of, or abandoned by the **insured**.

The above Paragraph a. of this exclusion does not apply to fuels, lubricants, fluids, exhaust gasses, or other similar **pollutants** that are needed for or result from the normal electrical, hydraulic, or mechanical functioning of the **insured auto** or its parts, if:

(1)   The **pollutants** escape, seep, migrate, or are discharged, dispersed, or released directly from an **insured auto** part designed by its manufacturer to hold, store, receive, or dispose of such **pollutants** and is a part that would be required for the customary operation of the **insured auto**; and

(2)   The **bodily injury**, **property damage**, or **covered pollution cost or expense** does not arise out of the operation of any equipment listed in Paragraphs b. and c. of the definition of **auto**.

The above Paragraphs b. and c. of this exclusion do not apply to **accidents** that occur away from premises owned by or rented to an **insured** with respect to **pollutants** not in or upon an **insured auto** if:

(1)   The **pollutants** or any property in which the **pollutants** are contained are upset, overturned, or damaged as a result of the mainte-nance or use of an **insured auto**; and

(2)   The discharge, dispersal, seepage, migration, release, or escape of the **pollutants** is caused directly by such upset, overturn, or damage.

## 11.  Racing

**Bodily injury** or **property damage** arising out of **you** or an **insured** participating in, or preparing for, a prearranged or organized racing, speed or demolition contest, stunting activity, or performance contest.

## 12.  War

**Bodily injury** or **property damage** arising directly or indirectly out of:

a. War, including undeclared or civil war;

b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## 13.  Operations

**Bodily injury**, **property damage**, or **covered pollution cost or expense** arising out of the operation of:

a.   any equipment listed in Paragraphs b. and c. of the definition of **auto**; or

b.   machinery or equipment that is on, attached to, or part of, a land vehicle that meets the definition of **mobile equipment**.

## 14.  Completed Operations

**Bodily injury** or **property damage** arising out of, or caused by, **your** work after that work has been completed or abandoned.

For purposes of this exclusion, **your** work means:

a.   Work or operations performed by **you** or on **your** behalf;

b.   Materials, parts, or equipment furnished in connection with such work or operations; and

c.   The delivery of liquids.

**Your** work includes warranties or representations made at any time with respect to the fitness, quality, durability, or performance of any of the items included in Paragraphs a., b., or c. above.

**Your** work will be deemed completed at the earliest of the following times:

a.   When all of the work called for in **your** contract has been completed.

b.   When all of the work to be done at a particular site has been completed if **your** contract calls for work at more than one site.

c.   When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair, or replacement, but which is otherwise complete, will be treated as

9

completed.

15. **Criminal Acts**
    **Bodily injury** or **property damage** caused by, or reasonably expected to result from, a criminal act or omission of an **insured person**. This exclusion applies regardless of whether that **insured person** is actually charged with, or convicted of, a crime. For purposes of this exclusion, criminal acts or omissions do not include traffic violations.

16. **Vehicle Sharing--Private Passenger Autos**
    **Bodily injury** or **property damage** arising out of the use of an **insured auto** that is a **private passenger auto** while being used in connection with a **personal vehicle sharing program**. This exclusion does not apply to the operation of an **insured auto** by **you**.

## LIMIT OF LIABILITY

**We** will pay no more than the Limit of Liability shown on the **declarations page** for this coverage for the **insured auto** involved in the **accident** regardless of:

1. the number of premiums paid;
2. the number of **insured autos** or trailers shown on the **declarations page**;
3. the number of policies issued by **us**;
4. the number of vehicles or **insureds** involved in an **accident**; or
5. the number of claims or lawsuits arising out of an **accident**;

subject to the following:

1. **Coverage Required by Filings**

    If **we** have filed a certificate of insurance on **your** behalf with any regulatory or governmental agency, and:
    (i) **we** are required to pay any judgment entered against **you**; or
    (ii) **we** agree to settle a claim or lawsuit;
    for **bodily injury**, **property damage**, or **covered pollution cost or expense** arising out of an **accident** or **loss** otherwise not covered under the terms of this policy solely because of such certificate of insurance, **we** will be obligated to pay no more than the minimum amount required by that agency or applicable law. If any payment is based solely on such certificate, **you** must reimburse **us** in full for **our** payment, including legal fees and costs **we** incurred, whether the payment is made as a result of judgment or settlement.

2. **Combined Bodily Injury and Property Damage Limits**

    Subject to the terms of Section 1 above, if **your declarations page** indicates that combined **bodily injury** and **property damage** limits apply for "each accident" or "combined single limit" applies, the most **we** will pay for the aggregate of all damages and **covered pollution cost or expense** combined, resulting from any one **accident**, is the combined liability insurance limit shown on the **declarations page** for the **insured auto** involved in the **accident**.

3. **Separate Bodily Injury Liability and Property Damage Liability Limits**

    Subject to the terms of Section 1 above, if **your declarations page** indicates that separate **bodily injury** liability and **property damage** liability limits apply:
    a. The "each person" **bodily injury** liability limit listed on the **declarations page** for the **insured auto** involved in the **accident** is the maximum **we** will pay for **bodily injury** sustained by any one person in any one **accident**, and that "each person" maximum limit will apply to the aggregate of claims made for such **bodily injury** and any and all claims derived from such **bodily injury**, including, but not limited to, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death.
    b. Subject to the **bodily injury** liability limit for "each person", the "each accident" **bodily injury** liability limit listed on the **declarations page** for the **insured auto** involved in the **accident** is the maximum **we** will pay for **bodily injury** sustained by two or more persons in any one **accident**, including all derivative claims which include, but are not limited to, loss of society, loss of companionship, loss

of services, loss of consortium, and wrongful death.

    c.   The "each accident" **property damage** liability limit listed on the **declarations page** for the **insured auto** involved in the **accident** is the maximum **we** will pay for the aggregate of all **property damage** and **covered pollution cost or expense** combined, sustained in any one **accident**.

For the purpose of determining **our** Limit of Liability under Sections 1., 2., and 3. above, all **bodily injury**, **property damage**, and **covered pollution cost or expense**, resulting from continuous or repeated exposure to substantially the same event, shall be considered as resulting from one **accident**.

An **insured auto** and any **trailer** or **trailers** attached thereto shall be deemed to be one **auto** with respect to **our** Limit of Liability.

When coverage is afforded for an **accident** involving an **insured auto** that, at the time of loss:

    a.   is a **trailer** specifically described on the **declarations page**; and
    b.   is attached to any power unit that is not an **insured auto** specifically described on the **declarations page**;

the maximum amount we will pay will be limited to the lesser of an amount not to exceed the applicable compulsory or financial responsibility law limits of the state identified in **your** address as shown on the **declarations page** or the Limit of Liability shown on the d**eclarations page**.

Any amount payable under Part I - Liability To Others to or for an injured person will be reduced by any payment made to that person under any Uninsured Motorist Coverage, Underinsured Motorist Coverage, Personal Injury Protection Coverage, or Medical Payments Coverage provided by this policy.

## PART II - DAMAGE TO YOUR AUTO

### INSURING AGREEMENT - COLLISION COVERAGE

Subject to the Limits of Liability, if **you** pay the premium for Collision Coverage, **we** will pay for **loss** to **your insured auto** and its **permanently attached equipment** when it collides with another object or overturns.

### INSURING AGREEMENT - COMPREHENSIVE COVERAGE

Subject to the Limits of Liability, if **you** pay the premium for Comprehensive Coverage, **we** will pay for **loss** to **your insured auto** and its **permanently attached equipment** from any cause other than those covered under Collision Coverage.

Any **loss** caused by missiles, falling objects, fire, theft, collision with an animal, or accidental glass breakage shall be deemed a Comprehensive **loss**. However, **you** have the option of having glass breakage caused by a covered **auto's** collision or overturn considered a **loss** under Collision Coverage.

### INSURING AGREEMENT - FIRE AND THEFT WITH COMBINED ADDITIONAL COVERAGE (CAC)

Subject to the Limits of Liability, if **you** pay the premium for Fire and Theft with Combined Additional Coverage (CAC), **we** will pay for **loss** to **your insured auto** and its **permanently attached equipment** caused by:

1. fire, lightning or explosion;
2. theft;
3. windstorm or hail;
4. earthquake;
5. flood or rising water;
6. malicious mischief or vandalism;
7. the stranding, sinking, burning, collision, or derailment of any conveyance in or upon which **your insured auto** is being transported; or
8. collision with a bird or animal.

No **losses** other than those specifically described above will be covered under Part II of this policy.

**ADDITIONAL COVERAGE**

1. **Transportation Expenses**

   **We** will pay up to $30 per day, up to a maximum of $900, for temporary transportation expenses incurred by **you** because of the theft of an **insured auto** that is a **private passenger auto**. This coverage applies only to those **insured autos** for which **you** carry Comprehensive Coverage. **We** will pay for temporary transportation expenses incurred during the period beginning 48 hours after **you** report the theft to **us**, and ending when the **insured auto** is returned to use, or **we** pay for its **loss.**

2. **Coverage for Temporary Substitute Autos**

   If a **temporary substitute auto** is involved in a **loss**, **we** will provide the same coverage and deductible that would have applied to the **insured auto** for which it is a substitute. The most **we** will pay for **loss** to a **temporary substitute auto** is the lesser of the actual cash value at the time of **loss** or the cost of repairing or replacing the damaged or stolen property with like kind and quality, less the applicable deductible.

3. **Pet Injury Coverage**

   If **you** have purchased Collision Coverage for at least one **insured auto** listed on the **declarations page**, Pet Injury Coverage is included in **your** policy.

   **Insuring Agreement**

   If a **pet** sustains injury or death while inside an **insured auto** at the time of a **loss** covered under Collision, Comprehensive, or Fire & Theft with Combined Additional Coverage, **we** will pay:
   1. for reasonable and customary veterinary fees incurred by **you** or the owner of the **pet** if the **pet** is injured in, or as a direct result of, the covered **loss**; or
   2. a death benefit if the **pet** dies in, or as a direct result of, the covered **loss.**

   In the event of a covered **loss** due to the theft of an **insured auto**, **we** will provide the death benefit provided the **pet** is not recovered.

   **Limits of Liability**

   The following additional Limits of Liability apply to Pet Injury Coverage:
   1. The most **we** will pay for all damages in any one **loss** is a total of $1,000 regardless of the number of **pets** involved.
   2. If the **pet** dies in, or as a direct result of, a covered **loss**, **we** will provide a death benefit of $1,000, less any payment **we** made toward veterinary expenses for the **pet**.
   3. No deductible shall apply to this coverage.

**ADDITIONAL PAYMENTS**

If **you** have paid the premium for Comprehensive Coverage, Collision Coverage, or Fire and Theft with Combined Additional Coverage, then in addition to **our** Limit of Liability, **we** will pay:

1. All reasonable expenses necessary to return a stolen **insured auto** to **you**, unless **we** determine the **auto** to be a total loss.
2. All reasonable expenses necessary to remove an **insured auto** from the site of an **accident** or **loss** and transport it to a repair facility.

**ADDITIONAL DEFINITIONS USED IN THIS PART ONLY**

When used in Part **II** - Damage To Your Auto:

1. "**Finance agreement**" means a written lease or loan contract, entered into as a part of **your** business, pertaining to the lease or purchase by **you** of an **insured auto**, and subject to a valid promissory note or written payment obligation contained in a lease, and security agreement or other written agreement establishing a security interest, executed concurrently with a purchase or lease of the **insured auto** that is commensurate with fair market value.

2. "**Permanently attached equipment**" or **PAE** means equipment and devices that are permanently installed or attached to **your insured auto**. **Permanently attached equipment** also includes:
   a. accessories designed to work as part of the equipment or devices;
   b. load securing equipment and devices; and
   c. custom paint or decals.

3. "**Pet**" means a dog or cat occupying an **insured auto** with **your** express or implied consent.

**<u>EXCLUSIONS</u> - PLEASE READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE FOR AN ACCIDENT OR LOSS WILL NOT BE AFFORDED UNDER THIS PART II - DAMAGE TO YOUR AUTO.**

1. **We** will not pay for loss caused by or resulting from any of the following. Such **loss** is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the **loss**.
   a. **War or Military Action**
   (1) war, including undeclared or civil war;
   (2) warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or agents;
   (3) insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.
   b. **Nuclear Hazard**
   (1) the explosion of any weapon employing atomic fission or fusion; or
   (2) nuclear reaction or radiation, or radioactive contamination, however caused.

2. **We** will not pay for **loss** to any sound equipment, video equipment, or transmitting equipment not permanently installed in **your insured auto**, or to tapes, records, compact discs, DVDs, or similar items used with sound or video equipment.

3. **We** will not pay for **loss** to radar detectors or to any other equipment or device designed or used to detect speed measuring equipment, or to any equipment designed or used to jam or disrupt any speed measuring equipment.

4. **We** will not pay for **loss** due and confined to:
   a. wear and tear, freezing, mechanical or electrical breakdown, or structural failure caused by material fatigue, decomposition, or corrosion.
   b. blowouts, punctures, flat spots, or other road damage to tires.
   But, coverage does apply if the damage is the result of other **loss** covered by the policy.

5. **We** will not pay for **loss** incurred while **your insured auto** is used in any illicit trade or transportation, or due to **your insured auto's** destruction or confiscation by governmental or civil authorities because **you**, or, if **you** are a natural person, any **relative**, engaged in illegal activities.

6. **We** will not pay for **loss** caused by **you** or an insured participating in or preparing for a prearranged or organized racing, speed or demolition contest, stunting activity or performance contest.

7. **We** will not pay for **loss** to an **insured auto** for diminution of value.

8. If **we** pay **your** financial obligation under a **finance agreement**, **we** will not pay:
   a. Overdue **finance agreement** payments including any type of late fees or penalties;
   b. Financial penalties imposed under a **finance agreement** for excessive use, abnormal wear and tear, or high mileage;

    c.   Security deposits not normally refunded by the lessor or lender;

    d.   Cost of **finance agreement** related products such as, but not limited to, Credit Life Insurance, Health, Accident or Disability insurance purchased by **you**;

    e.   Carryover balances from previous **finance agreements** or other amounts not associated with the **insured auto**; or

    f.   Unpaid principal included in the outstanding **finance agreement** balance that was not used by **you** to purchase the **insured auto**.

9.  **We** will not pay for **loss** to an **insured auto** while being used in connection with a **personal vehicle sharing program**. This exclusion does not apply to the operation of an **insured auto** by **you.**

## LIMIT OF LIABILITY

1.  If the **declarations page** shows actual cash value for the **insured auto**, then the most **we** will pay for **loss** to **your insured auto** is the least of:

    a.   the actual cash value of the stolen or damaged property at the time of **loss**;

    b.   the amount necessary to replace the stolen or damaged property with other of like kind and quality; or

    c.   the amount necessary to repair the damaged property to its pre-loss physical condition; however if **we** determine that the **insured auto** is a total loss, **we** may, at **our** option, pay the lesser of the actual cash value, or the cost to replace, rather than repair, the **insured auto**.

    **Permanently attached equipment** (**PAE**) is covered to the limit shown on the **declarations page**. This limit includes transfer of undamaged **PAE** to another **insured auto**, but will not increase the **PAE** limit shown on the **declarations page**.

2.  If the **declarations page** shows Stated Amount for the **insured auto**, then the most **we** will pay for **loss** to **your insured auto** is the least of:

    a.   the actual cash value of the stolen or damaged property at the time of **loss**;

    b.   the amount necessary to replace the stolen or damaged property with other of like kind and quality;

    c.   the amount necessary to repair the damaged property to its pre-loss physical condition; however if **we** determine that the **insured auto** is a total loss, **we** may, at **our** option, pay the lesser of the actual cash value, Stated Amount, or the cost to replace, rather than repair, the **insured auto**; or

    d.   the applicable Stated Amount of the property as shown on the **declarations page**.

    However, if there is a **finance agreement** in place for the **insured auto**, the most **we** will pay for a total loss where the outstanding financial obligation under a **finance agreement** for the **insured auto** at the time of the **loss** is:

    a.   greater than the actual cash value of the **insured auto** at the time of **loss**; and

    b.   the Stated Amount shown on the **declarations page** is greater than the actual cash value of the **insured auto** at the time of **loss**; is the lesser of:

    a.   the applicable Stated Amount of the **insured auto** as shown on the **declarations page**; or

    b.   the outstanding financial obligation under a **finance agreement** for the **insured auto** at the time of the **loss**.

    **PAE** is included in the value of the **insured auto**, but only to the extent the value of the equipment has been included in the Stated Amount shown on the **declarations page**. The transfer of undamaged **PAE** to another **insured auto** will be covered if the aggregate of all damage and cost to move is within the Stated Amount shown on the **declarations page**.

3.  Payments for **loss** covered under Collision Coverage, Comprehensive Coverage, or Fire and Theft with Combined Additional Coverage are subject to the following provisions:

    a.   in determining the amount necessary to repair damaged property to its pre-loss physical condition, the amount to be paid by **us**:

        (i)   shall not exceed the prevailing competitive labor rates charged in the area where the property is to be repaired, and the cost of repair or replacement parts and equipment, as reasonably determined by **us**; and

        (ii)   will be based on the cost of repair or replacement parts and equipment which may be new, reconditioned, remanufactured, or used, including, but not limited to:

            (a)   original manufacturer parts or equipment; and

            (b)   non-original manufacturer parts or equipment;

    b.   the actual cash value is determined by the market value, age and condition of the **auto** at the time the **loss** occurs; and

c.  duplicate recovery for the same elements of damages is not permitted.

4.  To determine the amount necessary to repair the damaged property to its pre-loss physical condition as referred to in Paragraph 1.c., the total cost of necessary repairs will be reduced by:

a.  the cost of labor, parts and materials necessary to repair or replace damage, deterioration, defects, or wear and tear on exterior body parts, windshields and other glass, wheels, and paint, that existed prior to the **accident** and that is eliminated as a result of the repair or replacement of property damaged in the **loss**. This adjustment for physical condition includes, but is not limited to, broken, cracked or missing parts, rust, dents, scrapes, gouges, and peeling paint;

b.  an amount for depreciation (also referred to as betterment) that represents a portion of the cost of mechanical parts (parts that wear out over time and have a useful life typically shorter than the life of the **auto** as a whole) that are installed as replacements for existing mechanical parts that were defective, inoperable or nonfunctional prior to the **accident**, which **we** deem necessary to replace in the course of repair; and

c.  an amount for depreciation (also referred to as betterment) on high-wear parts that have a measurable life, such as tires, batteries, engine or transmission, determined by the proportional increase in the useful life of the replacement part when compared to the replaced part. For example, if **we** replace a 24-month old battery that had a manufacturer's rated life of 60 months with a new 60-month rated battery, **our** payment for the battery is reduced by 40 percent and **you** are responsible to pay that 40 percent portion of the cost of the battery.

## DEDUCTIBLE

For each **loss** that qualifies for coverage under Comprehensive, Collision, or Fire and Theft with Combined Additional Coverage, the deductible shown on the **declarations page** for the **insured auto** will be applied. A single deductible will be applied to any **loss**. In the event there are different deductible amounts applicable to the **loss**, the higher deductible will be applied. In all events, the deductible will be applied against the limit of liability. If a **loss** involves another coverage added by endorsement to this policy, only one deductible will apply to the entire **loss** event.

If **your insured auto** is an additional **auto** that **you** have requested to be added to **your** policy within 30 days of **your** acquisition of the **auto**, and no deductible has been designated for the additional **auto** prior to the **loss**, then:

1.  when the **insured auto** is a **private passenger auto**, **we** will apply the lowest deductible listed for any one **auto** listed on the **declarations page**; or

2.  when the **insured auto** is an **auto** other than a **private passenger auto**, **we** will apply the highest deductible listed for any one **auto** listed on the **declarations page**.

No deductible will apply to a **loss** to window glass when the glass is repaired instead of replaced.

No deductible will apply to payments made under the Additional Payments section for expenses necessary to return a stolen **insured auto** to **you**.

## SALVAGE

If **we** pay the actual cash value of **your insured auto** less the deductible, or if **we** pay the amount necessary to replace **your insured auto** less the deductible, **we** are entitled to all salvage. If **your insured auto** is a total loss and **we** pay the applicable Limit of Liability or Stated Amount as shown on the **declarations page** less the deductible, **we** are entitled to the same percent of salvage as **our** payment bears to the actual cash value of **your insured auto**.

## NO BENEFIT TO BAILEE

No bailee or carrier shall benefit, directly or indirectly, from this Part II - Damage To Your Auto.

## APPRAISAL

If **we** cannot agree with **you** on the amount of **your loss**, then **you** or **we** may demand an appraisal of the **loss**. Each party shall appoint a

15

competent and disinterested appraiser. If the appraisers agree on the amount of the **loss**, they shall submit a written report to **us** and this shall be deemed to be the amount of the **loss**.

If the appraisers cannot agree on the amount of the **loss** within a reasonable time, they shall then choose a competent, impartial umpire, provided that if they cannot agree on an umpire within 15 days, either **you** or **we** may petition a judge of a court having jurisdiction to choose an umpire. The disagreement of the appraisers shall then be submitted to the umpire. Subject to the provisions of the policy, a written agreement signed by both appraisers or by one appraiser and the umpire will be the amount of the **loss**.

**You** must pay **your** fees and expenses and those of **your** appraiser. **We** will pay **our** fees and expenses and those of **our** appraiser. All other expenses of the appraisal, including payment of the umpire if one is necessary, will be shared equally by **you** and **us**.

By agreeing to an appraisal, **we** do not waive any of **our** rights under any other part of this policy, including **our** right to deny the claim.

**PAYMENT OF LOSS**

At **our** option, **we** may pay the **loss** in money, or repair or replace the damaged or stolen property. **We** may, at any time before the **loss** is paid or the property is replaced, return, at **our** expense, any stolen property either to **you** or to the address shown on the **declarations page**, with payment for the resulting damage less any applicable deductibles. **We** may keep all or part of the property at the agreed or appraised value, but there shall be no abandonment to **us**.

**We** may make payment for a **loss** either to **you** or the owner of the property. Payment for a **loss** is required only if **you** have fully complied with the terms of this policy.

**You** must convey title to and possession of the damaged, destroyed, or stolen property to **us** if **we** pay the actual cash value of **your insured auto** less the deductible or if **we** pay the amount necessary to replace **your insured auto** less the deductible.

**LOSS PAYEE AGREEMENT**

**We** will pay the Loss Payee named in the policy for **loss** to **your insured auto**, as the interest of the Loss Payee may appear.

This insurance covers the interest of the Loss Payee unless:
1. the **loss** results from fraudulent acts or omissions on **your** part; or
2. the **loss** is otherwise not covered under the terms of this policy.

Cancellation, nonrenewal, termination, or voiding ends this agreement as to the Loss Payee's interest.

If **we** make any payment to the Loss Payee, **we** will obtain the Loss Payee's rights against any other party.

<u>GENERAL PROVISIONS</u>

1. **Policy Period and Territory**

   This policy applies only to **accidents** and **losses** occurring during the policy period shown on the **declarations page** and that occur within a state, territory, or possession of the United States of America, or a province or territory of Canada, or while an **insured auto** is being transported between their ports.

2. **Policy Changes**

   This policy, **your** insurance application (which is made a part of this policy as if attached hereto), the **declarations page**, as amended, and endorsements to this policy issued by **us** contain all the agreements between **you** and **us**. Subject to the following, its terms may not be changed or waived except by an endorsement issued by **us**.

The premium for this policy is based on information **we** have received from **you** or other sources. **You** agree to cooperate with **us** in determining if this information is correct and complete, and **you** will notify **us** if it changes during the policy period. If this information is incorrect, incomplete, or changes during the policy period, **you** agree that **we** may adjust **your** premium during the policy period, or take other appropriate action.

Changes that may result in a premium adjustment include, but are not limited to, changes in:

a.  the number, type, or use classification of **insured autos**;

b.  operators using **insured autos**, their ages, driving histories, license status, state or country of license issuance, or marital status;

c.  the place of principal garaging of any **insured auto**;

d.  coverage, deductibles, or limits of liability; or

e.  rating territory or discount eligibility.

If **you** ask **us** to delete a vehicle from this policy, no coverage will apply to that vehicle as of the date and time **you** ask **us** to delete it.

Nothing contained in this section will limit **our** right to void this policy for fraud, misrepresentation or concealment of any material fact by **you**, or anyone acting on **your** behalf.

3.  **Other Insurance**

    a.  For any **insured auto** that is specifically described on the **declarations page**, this policy provides primary coverage. For an **insured auto** which is not specifically described on the **declarations page**, coverage under this policy will be excess over any and all other valid and collectible insurance, whether primary, excess or contingent. However, if the **insured auto** that is specifically described on the **declarations page** is a **trailer**, this policy will be excess over any and all other valid and collectible insurance, whether primary, excess or contingent, unless the **trailer** is attached to an **insured auto** that is a power unit **you** own and that is specifically described on the **declarations page**.

    b.  If coverage under more than one policy applies on the same basis, either excess or primary, **we** will pay only **our** proportionate share. **Our** proportionate share is the proportion that the Limit of Liability of this policy bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

4.  **Two or More Policies Issued By Us**

    If any applicable insurance other than this policy is issued to **you** by **us**, or any company affiliated with **us**, and applies to the same **accident** or **loss**, the total amount payable among all such policies shall not exceed the limits provided by the single policy with the highest limits of liability.

5.  **Legal Action Against Us**

    **We** may not be sued unless there is full compliance with all the terms of this policy.

    **We** may not be sued for payment under Part I - Liability To Others until the obligation of an insured under Part I to pay is finally determined either by judgment against that insured after actual trial or by written agreement of the insured, the claimant, and **us**. No one will have any right to make us a party to a lawsuit to determine the liability of an insured.

6.  **Our Recovery Rights**

    In the event of any payment under this policy, **we** are entitled to all the rights of recovery of the person or organization to whom or for whom payment was made. That person or organization must sign and deliver to **us** any legal papers relating to that recovery, do whatever else is necessary to help **us** exercise those rights, and do nothing after the **loss** or **accident** to harm **our** rights.

    When a person has been paid damages by **us** under this policy and also recovers from another, the amount recovered from the other shall be held in trust for **us** and reimbursed to **us** to the extent of **our** payment, provided that the person to or on behalf of whom such

payment is made is fully compensated for their **loss**.

In the event recovery has already been made from the responsible party, any rights to recovery by the person(s) claiming coverage under this policy no longer exist.

7. **Assignment**

Interest in this policy may not be assigned without **our** written consent. If the policyholder named on the **declarations page** is a natural person and that person dies, the policy will cover:
a. any other named insured on the policy;
b. the legal representative of the deceased person while acting within the scope of duty of a legal representative; and
c. any person having proper custody of **your insured auto** until a legal representative is appointed, but in no event for more than 30 days after the date of death.

8. **Waiver**

Notice to any agent or knowledge possessed by any agent or other person shall not change or effect a waiver on any portion of this policy nor prevent **us** from exercising any of **our** rights under this policy.

9. **Bankruptcy**

**We** are not relieved of any obligation under this policy because of the bankruptcy or insolvency of an insured.

10. **Inspection and Audit**

**We** shall have the right to inspect **your** property and operations at any time. This includes, but is not limited to, the right to inspect and audit the maintenance of any **autos** covered hereunder, the identity of **your** drivers and their driving records, and **your** radius of operations. In doing so, **we** do not warrant that the property or operations are safe and healthful, or are in compliance with any law, rule or regulation.

**We** shall also have the right to examine and audit **your** books and records at any time during the policy period and any extensions of that period and within three years after termination of the policy, as far as they relate to the subject matter of this insurance.

11. **Fraud or Misrepresentation**

This policy was issued in reliance upon the information provided on **your** insurance application. **We** may void this policy at any time, including after the occurrence of an **accident** or **loss**, if **you**:
1. made incorrect statements or representations to **us** with regard to any material fact or circumstance;
2. concealed or misrepresented any material fact or circumstance; or
3. engaged in fraudulent conduct;
at the time of application. This means that **we** will not be liable for any claims or damages that would otherwise be covered.

Any changes **we** make at **your** request to this policy after inception will be made in reliance upon information **you** provide. If **you**:
1. make incorrect statements or representations to **us** with regard to any material fact or circumstance;
2. conceal or misrepresent any material fact or circumstance; or
3. engage in fraudulent conduct;
in connection with a requested change, **we** may void the policy or reform it as it existed immediately prior to the requested change. **We** may do this at any time, including after the occurrence of an **accident** or **loss**.

When **we** have not voided or reformed the policy, **we** may still deny coverage for an **accident** or **loss** if **you**, in connection with the policy application, or in connection with any requested change, have concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, and that concealment, misrepresentation, or fraudulent conduct was material to a risk **we** assumed.

**We** may deny coverage for an **accident** or **loss** if **you** or any other insured knowingly concealed or misrepresented any material fact or circumstance or engaged in fraudulent conduct in connection with the presentation or settlement of a claim. **We** reserve all rights to

indemnity against a person committing fraud or misrepresentation for all payments made and costs incurred.

**12.  Liberalization**

If **we** make a change that broadens a coverage **you** have under this edition of **your** policy without additional charge, **you** will receive the broadened coverage. The broadened coverage applies on the date the coverage change is implemented in **your** state. This provision does not apply to a general program revision or **our** issuance of a subsequent edition of **your** policy. Otherwise, this policy can be changed only by endorsement issued by **us.**

**13.  Severability**

Except with respect to the Limit of Liability, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or lawsuit is brought.

**14.  Settlement of Claims**

**We** may use estimating, appraisal, or injury evaluation systems to adjust claims under this policy and to determine the amount of damages, expenses, or loss payable under this policy. Such systems may be developed by **us** or a third party and may include computer software, databases, and specialized technology.

**15.  Automatic Termination**

If **we** or an affiliate offers to renew or continue this policy and **you** or **your** representative does not accept, this policy will automatically terminate at the end of the current policy period at 12:01 a.m. Failure to pay the required renewal or continuation premium when due will mean that **you** have not accepted **our** offer.

If **you** obtain other insurance on an **insured auto**, any similar insurance provided by this policy will terminate as to that **insured auto** on the effective date and at the effective time of the other insurance.

If an **insured auto** is sold or transferred, any insurance provided by this policy will terminate as to that **insured auto** on the effective date of the sale or transfer.

**16.  Duty to Report Changes**

**You** must promptly notify **us** when:
1.  **your** mailing or business address changes;
2.  the principal garaging address of an **insured auto** changes;
3.  there is any change with respect to the persons who operate an **insured auto**;
4.  there is a change in the driver's license status, or state or country of license issuance, of any person using an **insured auto**; or
5.  **you** acquire, sell, or dispose of **autos.**

**17.  Terms of Policy Conformed to Statutes**

If any provision of this policy fails to conform to the statutes of the state listed on **your** application as **your** business location, the provision shall be deemed amended to conform to such statutes. All other provisions shall be given full force and effect. Any disputes as to the coverages provided or the provisions of this policy shall be governed by the law of the state listed on **your** application as **your** business location.

Form 2852 GA (02/19)

## UNINSURED MOTORIST COVERAGE ENDORSEMENT

Except as specifically modified in this endorsement, all provisions of the Commercial Auto Policy apply.

**We** agree with **you** that the insurance provided under **your** Commercial Auto Policy, and related endorsements, is modified as follows:

### INSURING AGREEMENT

Subject to the Limits of Liability, if **you** pay the premium for UninsuredMotorist Coverage, **we** will pay for damages, other than punitive or exemplary damages, which an **insured** is legally entitled to recover from the **owner** or operator of an **uninsured auto** because of **bodily injury** or **property damage**:
1. sustained by an **insured**;
2. caused by an **accident**; and
3. arising out of the ownership, maintenance, or use of an **uninsured auto**.

**We** will pay under this endorsement only after the limits of liability under all applicable liability bonds and policies have been exhausted by payment of judgments or settlements.

Any judgment or settlement for damages against an **owner** or operator of an **uninsured auto** that arises out of a lawsuit brought without **our** written consent is not binding on **us**.

### ADDITIONAL DEFINITIONS

When used in this endorsement, whether in the singular, plural, or possessive:
1. "**Insured**" means:
   a. if the named insured shown on the **declarations page** is a natural person:
      (i)    **you** or a **relative**;
      (ii)   any person **occupying** an **insured auto** or a **temporary substitute auto**; and
      (iii)  any person who is entitled to recover damages covered by this endorsement because of **bodily injury** sustained by a person described in (i) or (ii) above; or
   b. if the named insured shown on the **declarations page** is a corporation, partnership, organization, or any other entity that is not a natural person:
      (i)    any person **occupying** an **insured auto** or a **temporary substitute auto**; and
      (ii)   any person who is entitled to recover damages covered by this endorsement because of **bodily injury** sustained by a person described in (i) above.
   For purposes of this definition, **insured auto** includes **mobile equipment** that is:
   a.   owned by **you**;

    b.  leased, hired, or borrowed by **you** and **you** have purchased either "Hired Auto Coverage" or "Any Automobile Legal Liability Coverage" from **us**; or

    c.  not owned, leased, hired, or borrowed by **you** and **you** have purchased either "Employer's Non-Ownership Liability Coverage" or "Any Automobile Legal Liability Coverage" from **us**.

      However, **mobile equipment** meeting any of those three criteria will be included in the definition only if at the time of **loss** it is being:

       i.   used in **your** business;

      ii.   operated on a public highway; and

      iii.  operated in a state or province where it is subject to a compulsory or financial responsibility law or other motor vehicle insurance law.

2.  "**Non-owned auto**" means any **auto** that is not **owned** by **you** or furnished for **your** regular use and, if the named insured is a natural person, not **owned** by or furnished for the regular use of the named insured's spouse or **relative**.

3.  "**Owned**" means the person or organization:

    a. holds legal title to the vehicle;

    b. has legal possession of the vehicle that is subject to a written security agreement with an original term of six months or more; or

    c. has legal possession of the vehicle that is leased to that person or organization under a written agreement for a continuous period of six months or more.

4.  "**Owner**" means the person or organization who, with respect to a vehicle:

    a. holds legal title to the vehicle;

    b. has legal possession of the vehicle that is subject to a written security agreement with an original term of six months or more; or

    c. has legal possession of the vehicle that is leased to that person or organization under a written agreement for a continuous period of six months or more.

5.  "**Property damage**" means:

    a. physical damage to, or destruction or loss of use of, an **insured auto**; and

    b. physical damage to, or destruction of, any property **owned** by an **insured** which is contained in the **insured auto** at the time of the **accident**.

6.  "**Uninsured auto**" means an **auto** or trailer of any type:

    a. to which no liability bond or policy applies at the time of the **accident**;

    b. to which a liability bond or policy applies at the time of the **accident**, but the bonding or insuring company:

      (i)   legally denies coverage; or

      (ii)  is or becomes insolvent;

    c. whose operator or **owner** cannot be identified and which causes an **accident** resulting in **bodily injury** or **property damage** to an **insured**, provided that:

      (i)   the **insured**, or someone on his or her behalf, reports the **accident** to the police or civil authority within 24 hours or as soon as practicable after the **accident**; and

      (ii)  the **accident** is reported to **us** no later than 30 days after the **accident**.

      If there is no physical contact with the **auto**, the facts of the **accident** must be corroborated by an eyewitness other than an injured **insured**; or

    d. to which a **bodily injury** liability bond or policy applies at the time of the **accident**, and:

      (i)   if "Added On Coverage" has been elected, as shown on the **declarations page**, the amount of coverage available under all applicable liability policies or bonds

is less than the damages that the **insured** is legally entitled to recover for **bodily injury** or **property damage** from the **owner** or operator of  the **uninsured auto**; and

(ii)    if "Reduced Coverage" has been elected, as shown on the **declarations page**, the amount of coverage available under all applicable liability policies or bonds is less than the applicable coverage limit for Uninsured Motorist Coverage shown on the **declarations page**.

As used in (i) and (ii) above, the amount of coverage available under the bodily injury liability and property damage liability coverages for said **uninsured auto** shall be the applicable limits of coverage, less any amounts by which the maximum amounts payable under such limits of coverage have, by reason of payment of other claims or otherwise, been reduced below the limits of coverage.

An "**uninsured auto**" does not include any vehicle or equipment:

a.  **owned** by, furnished to, or available for the regular use of **you** or, if the named insured is a natural person, a **relative**;
b.  designed mainly for use off public roads, while not on public roads;
c.  while being used as a residence or premises; or
d.  shown on the **declarations page** of this policy.

**EXCLUSIONS** - READ THE FOLLOWING EXCLUSIONS CAREFULLY.  IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS ENDORSEMENT.

1.  Coverage under this endorsement is not provided for **bodily injury** sustained by any person while using or **occupying**:
    a.  an **insured auto** without the express or implied permission of **you** or, if the named insured is a natural person, a **relative**; or
    b.  a **non-owned auto** without the express or implied permission of the **owner.**
2.  Coverage under this endorsement is not provided for **property damage**:
    a.  to an **insured auto** for which insurance is afforded under a nuclear energy liability insurance contract;
    b.  to a trailer **you** own that is not shown on the **declarations page**; or
    c.  due to a nuclear reaction or radiation.
3.  Coverage under this endorsement will not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar laws:
    a.  workers' compensation law; or
    b.  disability benefits law.

**LIMITS OF LIABILITY**

The following provisions shall apply to both Uninsured Motorist Coverage – Added on to At-Fault Liability Limits, referred to as "Added On Coverage", and to Uninsured Motorist Coverage – Reduced by At-Fault Liability Limits Coverage, referred to as "Reduced Coverage."

Regardless of the number of premiums paid, or the number of **insured autos** or trailers shown on the **declarations page**, or the number of policies issued by **us**, or the number of vehicles or **insureds** involved in an **accident**, or the number of claims or lawsuits arising out of an **accident**, **we** will pay no more than the limit of liability shown for Uninsured Motorist Coverage on the **declarations page**.

If the **declarations page** shows that "combined single limit" or "CSL" applies, the amount shown is the most **we** will pay for the total of all damages resulting from any one **accident**. However, without changing this total "each accident" limit of liability, **we** will comply with any law that requires **us** to provide any separate limits.

If "combined single limits" or "CSL" applies, the Uninsured Motorist **bodily injury** and **property damage** coverage deductibles shall be a single aggregate deductible.

If **your declarations page** shows a split limit:
1. the amount shown for "each person" is the most **we** will pay for all damages due to a **bodily injury** to one person;
2. subject to the "each person" limit, the amount shown for "each accident" is the most **we** will pay for all damages due to **bodily injury** sustained by two or more persons in any one **accident**; and
3. the amount shown for "property damage" is the most **we** will pay for the aggregate of all **property damage** caused by any one **accident**.

The "each person" limit of liability includes the total of all claims made for **bodily injury** to an **insured** and all claims of others derived from such **bodily injury**, including, but not limited to, emotional injury or mental anguish resulting from the **bodily injury** of another or from witnessing the **bodily injury** to another, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death.

**Added On Coverage**

If "Added On Coverage" has been elected, as shown on the **declarations page**, the following shall also apply:
1. The damages payable for **bodily injury** under this endorsement will be reduced by all sums:
   a. paid because of **bodily injury** by or on behalf of any persons or organizations that may be legally responsible;
   b. paid under Part I - Liability To Others;
   c. paid or payable under any applicable Medical Payments Coverage endorsement under this policy; and
   d. paid or payable because of **bodily injury** under any of the following or similar laws:
      (i)     workers' compensation law; or
      (ii) disability benefits law.
2. The damages payable for **property damage** under this endorsement will be reduced by all sums:
   a. paid because of **property damage** by or on behalf of any persons or organizations that may be legally responsible;
   b. paid under Part I - Liability To Others; and
   c. paid or payable under any other property or physical damage insurance.

**Reduced Coverage**

If "Reduced Coverage" has been elected, as shown on the **declarations page**, the following shall also apply:
1. The bodily injury limits of liability under this endorsement shall be reduced by all sums:
   a. paid because of **bodily injury** by or on behalf of any persons or organizations that may be legally responsible;
   b. paid under Part I - Liability To Others;
   c. paid or payable under any applicable Medical Payments Coverage Endorsement; and

    d.  paid, payable, or that should apply, because of **bodily injury** under any of the following or
similar laws:
        (i) workers' compensation law; or
        (ii) disability benefits law.
2.  The property damage limits of liability under this endorsement shall be reduced by all sums:
    a.  paid because of **property damage** by or on behalf of any persons or organizations that
may be legally responsible;
    b.  paid under Part I–Liability To Others; and
    c.  paid or payable under any other property or physical damage insurance.

When **property damage** covered under this endorsement is also covered by any applicable
Collision Coverage under Part II, the coverage under this endorsement shall be excess over the
Collision Coverage, except to the extent that the coverage under this endorsement is used to
reimburse **you** for any applicable Collision Coverage deductible.

Payments for **property damage** under this endorsement are also subject to the following
provisions:
1.  no more than one deductible shall be applied to any one **accident**; and
2.  an adjustment for depreciation and physical condition will be made in determining the limit of
liability at the time of the **accident**.

No one will be entitled to duplicate payments for the same elements of damages.

**OTHER INSURANCE**

If there is other applicable uninsured motorist coverage, as described in O.C.G.A. 33-7-11, as
amended, the following order of priority shall be used to determine which insurer is responsible
for providing payments:
1.  a policy insuring the injured person as a named insured; then
2.  a policy insuring the injured person's spouse or any **relative**; then
3.  policies insuring the **owner** or operator of the **auto occupied** in the **accident**.

If **we** are responsible for providing payment under this endorsement to an **insured** and there is
more than one applicable policy of the same priority, **we** will pay only **our** share of the damages.
**Our** share is the proportion that **our** limit of liability bears to the total of all available coverage
limits on the same level of priority.

**We** will not pay for any damages that would duplicate any payment made for damages under
other insurance.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.**

# EXHIBIT "B"

SCOTT BEAVER
ARCH PARTNERS INS
230 BRIARCLIFF RD
ATHENS, GA 30606



Underwritten by:
Progressive Mountain Insurance Co
May 28, 2020
Policy Period: Jun 5, 2020 - Jun 5, 2021
Page 1   of 1

MTC CONSULTING LLC
1060 APALACHEE TRACE
BISHOP, GA 30621

Dear MTC CONSULTING LLC,

Thank you for giving me the opportunity to quote your Commercial Auto insurance coverage.  I appreciate your business and am confident that you will be pleased with your decision to purchase coverage through Progressive.  We'll get your hard-working vehicles back on the road fast following an accident.  Instead of outsourcing, our commercial claims professionals manage all repairs to help save you time and money when it really matters - when you need to get back in business.  Our commercial auto claims representatives are ready to assist you 24 hours a day, 7 days a week, every day of the year by calling 1-800-274-4499.  You also have the ability to make payments, check billing activity, print policy documents, or check the status of a claim at progressiveagent.com.

**Enclosed you will find:**
- Your application.  Please review and sign where indicated.
- Policy documents that require your signature.
- Request for additional information.

**Within 2 weeks you will receive:**
- Your policy contract and Commercial Auto Insurance Coverage Summary (Declarations Page).
  - Please take a few minutes to review these important documents and call Progressive if you have any questions about your coverage.
- Permanent ID cards for your wallet.

## Receipt of initial payment for the policy

This is receipt of                 for the initial payment on this policy.  Payment was made by Credit Card.

If you have any questions, please call me at  1-706-850-8877.

Form WELCOMELTR (05/06)

# Application for Insurance
## Please review, sign where indicated, and return



**Policy number:  02171740-0**
Named Insured: MTC CONSULTING LLC

May 28, 2020
Page 1   of   5

## Policy and premium information for policy number 02171740-0

| | |
|---|---|
| Insurance company: | Progressive Mountain Insurance Co<br>P.O. BOX 94739<br>Cleveland, OH 44101 |
| Agent: | SCOTT BEAVER<br>ARCH PARTNERS INS<br>230 BRIARCLIFF RD<br>ATHENS, GA 30606<br>01T99<br>1-706-850-8877 |
| Named Insured: | MTC CONSULTING LLC<br><br>1060 APALACHEE TRACE<br>BISHOP, GA 30621<br>e-mail address:  CHAMBERLAINCREW@ATT.NET<br>Phone Number:  1-225-205-5792 |
| Financial responsibility vendor: | TRANS UNION<br>1-800-916-8800 |
| Policy period: | Jun 5, 2020 - Jun 5, 2021 |
| Effective date and time: | Jun 5, 2020 at 12:01AM ET |
| Total policy premium: | |
| Initial payment required: | |
| Initial payment received: | |
| Payment plan: | 1 payment |

## Rated drivers

The insured declares that no persons other than those listed in this application are expected to operate, even occasionally, the vehicle(s) described in this application.

| Name | Date of birth | Age | Marital status | Driver's license number | State | Points | Additional information | CDL | Original year CDL issued |
|---|---|---|---|---|---|---|---|---|---|
| MICHAEL CHAMBERLAIN | 08/28/1971 | 48 | Married | *****6714 | GA | 0 | | No | |

## Outline of coverage

| Description | Limits | Deductible | Premium |
|---|---|---|---|
| Liability To Others | | | |
| Bodily Injury and Property Damage Liability | $1,000,000 combined single limit | | |
| Uninsured/Underinsured Motorist - Reduced | | | |
| Bodily Injury and Property Damage | $1,000,000 combined single limit | | |
| Deductible Applies To Property Damage | | $250 | |
| Medical Payments | $1,000 each person | | |
| Comprehensive | | | |
| See Auto Coverage Schedule | Limit of liability less deductible | | |


Continued

Policy number: 02171740-0
MTC CONSULTING LLC
Page 2 of 5

Collision
  See Auto Coverage Schedule                    Limit of liability less deductible
Rental Reimbursement
  See Auto Coverage Schedule

**Total 12 month policy premium**

## Auto coverage schedule

1.  **2015 CHEVROLET SILVERADO C1500**   Actual Cash Value (plus $2,000.00 Permanently Attached Equip)
    VIN: **3GCUKSEC9FG147481**  Garaging Zip Code: 30621  Territory: 8  Radius: 50 miles
    Personal use: Y  Body type: Pickup  Use class: S

| Liability Premium | Liability | UM/UIM-Red | UMPD-Red | Med Pay | |
|---|---|---|---|---|---|
| **Physical Damage Premium** | Comp Deductible | Comp Premium | Collision Deductible | Collision Premium | |
| | $250 | | $500 | | |
| **Other Coverages Premium** | Rental Limit | Rental Premium | | | Auto Total |
| | $40 per day Max $1200 | | | | |

## Vehicle questions

1. Is this vehicle used for business, personal or both? Business/Personal

2. What is the average number of jobsites, trips, deliveries or errands per day? 1

## Financial responsibility information

| Name | Home address | Age | Date of birth |
|---|---|---|---|
| MICHAEL CHAMBERLAIN | 1060 APALACHEE TRACE | 48 | 08/28/1971 |
| | BISHOP, GA 30621-0000 | | |

Is MICHAEL CHAMBERLAIN involved in the daily operation of the business?   Yes

## Business information

| Business type | Sub business type | Other |
|---|---|---|
| Services | Consulting, Legal & Engineering | |
| Applicant | Employer ID number | |
| Corporation or LLC | 471235937 | |

Does the applicant have a USDOT Number?   No

  If a USDOT Number is obtained in the future, it must be provided to Progressive.

## Additional policy questions

1. Year the current business was established:  2014

Failure to provide proof of the year the current business was established may result in change in premium.

2. Does the insured currently have General Liability Insurance or a Business Owners Policy?   Neither

3. Premise type your tow business operates from: Unknown

## Premium discounts

| Policy | |
|---|---|
| 02171740-0 | Paid in Full and Business Experience |


Continued

Policy number:  02171740-0
MTC CONSULTING LLC
Page 3  of 5

## Prior insurance questions

Prior insurance:  Yes ...........................................................................................................................................................

Policy number:   049558963 ................................................................................................................................................

Effective dates of coverage:  May 20, 2019 to May 20, 2021 ..............................................................................................

Has applicant had continuous coverage for at least one year?  Yes ...................................................................................

Bodily injury limits:  1 Million CSL .......................................................................................................................................

## Underwriting questions

Does the applicant require any Waivers of Subrogation?    No      If yes, how many?   0

How many Additional Insureds are required?    0

Are any state or federal filings required? No



Continued

## Application agreement

### Verification of content

The insured declares that the statements contained herein are true to the best of their knowledge and belief. The insured also agrees to pay any surcharges applicable under the Company rules which are necessitated by inaccurate statements. The insured declares that no persons other than those listed in this application are expected to operate, even occasionally, the vehicle(s) described in this application. The insured understands that this policy may be rescinded and declared void if this application contains any false information or if any information that would alter the Company's exposure is omitted or misrepresented. If a federal or state endorsement is attached to this policy that subjects the Company to public liability for negligence in the insured's operation, maintenance or use of motor vehicles, the insured: (1) declares that all commercially owned or operated vehicles have been disclosed to us and are listed on this Application; (2) will promptly notify us of any additional commercially owned or operated vehicles put into service in the future; and (3) understands that failure to promptly inform us of, and list, all current and future commercially owned or operated vehicles may result in the cancellation or nonrenewal of this policy, or in a premium increase.

### Notice of information practices

The insured understands that to calculate an accurate price for their insurance, the Company may obtain information from third parties, such as consumer reporting agencies that provide driving, claims and credit histories.  The Company may use a credit-based insurance score based on the information contained in the credit history.  The Company or its affiliates may obtain new or updated information to calculate the renewal premium or service the insurance. The insured may access information about them and correct it if inaccurate.  In some cases, the law permits the Company to disclose the information it collects without authorization.  However, the Company will not share personal information with nonaffiliated companies for their marketing purposes without consent.  Complete details are in the Company's Privacy Policy, which will be provided with this insurance policy and upon request.  The insured has or will obtain from existing and new drivers employed or contracted by the insured, an acknowledgement that their driving record information may be disclosed to the insured or their employer, contractor, or agent in connection with the insurance being applied for hereunder.  The insured agrees to submit to loss control inspections as often as the Company may reasonably require.  The insured agrees that refusal to submit to an inspection is grounds for cancellation of this policy.

### The insured affirms that

If the initial payment is made by electronic funds transfer, check, draft, or other remittance, the coverage afforded under this policy is conditioned on payment to the Company by the financial institution.  If the transfer, check, draft, or other remittance is not honored by the financial institution, the Company shall be deemed not to have accepted the payment and this policy shall be void.

If the initial payment is made by credit card, the coverage afforded under this policy is conditioned on payment to the Company by the card issuer.  The insured understands that if the Company is unable to collect my initial payment from the card issuer, the Company shall be deemed not to have accepted the payment and this policy shall be void.  The insured also understands that if a credit card transaction is authorized for any payment other than the initial payment, this policy will be subject to cancellation for nonpayment of premium if the Company is unable to collect payment from the card issuer.  The Company is deemed "unable to collect" in the following instances: (1) when the insured reaches the credit limit on the credit card and the card issuer refuses the charge; (2) when the card issuer cancels or revokes the credit card; or (3) when the card issuer does not pay the Company, for any reason whatsoever, upon the Company's request.

If the insured has an outstanding unpaid balance from a prior Progressive commercial lines policy, payment of that balance is required. Nonpayment of a prior unpaid balance may result in the denial, cancellation, or nonrenewal of this policy.

### Other charges

The insured agrees to pay the installment fees shown on the billing statement that become due during the policy term and each renewal policy term in accordance with the payment plan they have selected.  The insured understands that the amount of these fees may change upon policy renewal or if they change their payment plan.  Any change in the amount of installment fees will be reflected on the payment schedule.




Continued

Policy number:  02171740-0
MTC CONSULTING LLC
Page 5  of 5

The insured understands that a returned payment fee of $20.00 will be assessed to the balance due on the policy if any check offered in payment is not honored by the bank or other financial institution.  Imposition of such charge shall not deem the Company to have accepted the check unconditionally.

The insured agrees to pay a late fee of $20.00 during the policy term and each renewal policy term when either the minimum amount due is not paid or payment is postmarked more than 2 days after the premium due date.  The amount of this fee may change upon policy renewal.

**Signature of first named insured or**
**Authorized signatory of the named insured entity**                    **Date**

X *Tonya Chamberlain*                                                    May 28, 2020
Tonya Chamberlain (May 28, 2020 16:09 EDT)
.........................................................................................................

Form Z421 GA (02/19)



Policy number:  02171740-0
MTC CONSULTING LLC
Page 1   of 1

## Important Notice

Federal, state and local laws may require you to carry higher limits of liability insurance based on your business or vehicle type.  It's your responsibility to comply with these laws.

Please contact the state department of transportation, your employer, or the city and municipalities where you operate, to determine if you're required to carry higher limits.

Form A107 (03/13)

## Important notice about a potential rate change

If you have a driver listed on your policy with a license issued by any state other than your policy state, that may have caused an increase in your premium.

Please contact Customer Service at 1-800-444-4487 if a driver licensed out of state has obtained a new driver's license.

Form A257 (05/18)

Policy number:  02171740-0
MTC CONSULTING LLC
Page 1  of 2

## Uninsured Motorist Coverage Options

1. **Complete Section A only - If you are Rejecting Added on to At-Fault Liability Limits (Added On Coverage).**

2. **Complete Section B only - If you are Selecting an Uninsured Motorist Coverage limit that is lower then your Liability limit.**

3. **Complete Both Sections A and B - If you are both Rejecting Added On Coverage <u>and</u> Selecting an Uninsured Motorist Coverage limit that is lower than your Liability limit.**

4. **Read the last paragraph of this form, then sign and date it.**

### Section A - Rejection of Added On Coverage and Selection of Reduced Coverage

I understand that I am entitled to Added On Coverage unless I reject it and choose Reduced Coverage instead. I understand that Added On Coverage provides coverage for damages caused by uninsured motorists by making available Added On Coverage limits that are in addition to all amounts payable under the liability insurance of the at-fault party. I understand that Reduced Coverage provides lower effective limits than Added On Coverage because with Reduced Coverage, my Uninsured Motorist Coverage limits are reduced by all amounts paid by or on behalf of the at-fault party, including any amounts paid by liability insurance.

[X]   I reject Added On Coverage and select Reduced Coverage

### Section B - Uninsured Motorist Coverage - Selection of lower limits

I have been offered and I have rejected the option to purchase Uninsured Motorist Bodily Injury and Property Damage Coverage in an amount equal to the limits I have selected for Liability Coverage. Instead, I elect the lower limits of Uninsured Motorist Coverage selected below. I understand that Uninsured Motorist Coverage protects insureds under the policy who sustain bodily injury, including any resulting death, in an accident in which the owner or operator of a motor vehicle who is legally liable does not have insurance or does not have enough insurance. I understand that Uninsured Motorist Property Damage Coverage would protect me if my vehicle sustained property damage in an accident in which the owner or operator of a motor vehicle who is legally liable does not have  insurance.

Insureds for purposes of this coverage include any occupant of an insured auto, and when the named insured is a natural person, the named insured and named insured's resident relatives.

I understand and agree that this rejection of the higher limits and election of lower limits shall be binding on all persons insured under the policy, and that this election shall apply to any renewal, reinstatement, substitute, amended, altered, modified, or replacement policy with this company or any affiliated company, unless the first named insured, or authorized representative of the first named insured, revokes this election or selects a different option.

I elect the following lower limit of Uninsured Motorist Coverage.

[X]   $1,000,000 combined single limit for bodily injury and property damage each accident

### Uninsured Motorist Coverage - Property Damage Deductible (you must also select a deductible.)



[X]   $250 each accident.

[ ]   $500 each accident.

[ ]   $1000 each accident.


Continued

Policy number:  02171740-0
MTC CONSULTING LLC
Page 2   of 2

I understand and agree that the above selection shall be binding on all persons insured under the policy, and that they shall also apply to any renewal, reinstatement, substitute, amended, altered, modified, or replacement policy with this company or any affiliated company, unless a named insured or an authorized representative submits a request to add the coverage and pays the additional premium.

**Signature of first Named Insured or**
**Authorized signatory of the Named Insured entity**          Date                    Title

X   *Tonya Chamberlain*                                       May 28, 2020
    Tonya Chamberlain (May 28, 2020 16:09 EDT)
..........................................................................................................................................

Form 2702 GA (07/09)



Policy number:  02171740-0
MTC CONSULTING LLC
Page 1   of  1

## Agent compensation disclosure

The insurance producer that sold you this policy is a licensed independent insurance agent authorized by Progressive Mountain Insurance Co and by other insurance companies to solicit business on their behalf.  We believe that independent agents who represent more than one company can better assist you in finding the combination of coverage, price and service that meets your needs.

We will pay your agent a commission for placing your policy with us.  We may also help your agent pay for advertising and marketing that is designed to attract new customers.

Your agent may also be eligible for additional compensation, based upon the volume and profitability of certain business he or she places with us.

Form Z181 (05/05)

# EXHIBIT "C"

42 Pages SCANNED Fri, 30 Sep 2022 21:00:18 GMT



JOHNSON & ALDAY, LLC
— ATTORNEYS AT LAW —

📞 (678) 967-4040
🖶 (678) 400-2223
✉ info@johnsonalday.com
🌐 www.johnsonalday.com
📍 219 Roswell Street, NE
   Marietta, GA 30060

September 27, 2022

**US PRIORITY MAIL – 2 DAY**
9405 5111 0803 3548 8676 71

Ms. Stephanie Ray
Progressive Claims
747 Alpha Drive
Highland Heights, Ohio 44143

|  | **UM TIME DEMAND** | |
|---|---|---|
| Re: | Our Client: | Michael Chamberlain as PNG of Austin Chamberlain |
| | Your Insured: | Michael Chamberlain and MTC Consulting, LLC |
| | At-Fault Driver: | Maxley Baxter |
| | Date of Collision: | October 24, 2021 |
| | Claim Number: | 21-5443821 |

Dear Stephanie:

Please be advised that my firm is assisting Michael Chamberlain and his Mississippi counsel, J. Peyton Randolph, with respect to the under-insured motorist claim stemming from the October 24, 2021 motor vehicle collision wrongful death of Austin Chamberlain. As you know, the at-fault driver, Maxley Baxter, was woefully under-insured for this tragic event. Mr. Baxely's insurance carrier tendered its policy limits. I write to Progressive to make a settlement demand on Mr. Chamberlain's behalf.  On Mr. Chamberlain's behalf, I hereby demand $1,000,000.00, his applicable UM policy limits (specifically the MTC Consulting UM Policy, Policy No. 02171740), in exchange for a mutually agreeable release should Progressive require one. This release must carve out the present claims pending in Mississippi for a dram shop action. This demand is made as a time-limited demand for the minimum time frame set forth under Georgia law, pursuant to O.C.G.A. § 33-7-1l(j) and <u>Lewis v. Cherokee</u> <u>Ins. Co.,</u> 258 Ga. App. 839 (1984).

**Liability:**  Liability is clear.  On October 24, 2021, Maxley Baxter, under the influence of alcohol, drove north on Graysport Crossing Road in Grenada County, Mississippi. Mr. Baxter left the roadway on the east side and struck two trees, ejecting young Austin Chamberlain from the vehicle. Austin Chamberlain died as a result of the wreck and the injuries caused therefrom. Maxley Baxter was charged with multiple felonies which he pled guilty too and remains incarcerated. Austin Chamberlain was a front seat passenger in the vehicle and was not liable in any way. Enclosed is the police report for your review.

**Damages:**  Austin Chamberlain was 19 years old when he died. His entire life was in front of him. There is no way to accurately measure the damages from his tragic loss of life. That said, attached is a report from our expert economist which provides an estimate of economic damages for Austin Chamberlain's life at $3,000,000.00 at a minimum.

42 Pages SCANNED Fri, 30 Sep 2022 21:00:18 GMT

**Time Demand**:  As stated above, Michael Chamberlain has authorized me to demand $1,000,000.00, his applicable UM policy limits (for the policy referenced in this letter), in exchange for a mutually agreeable release (carving out the pending dram shop law suit), should Progressive require one.  We have fully complied with Georgia law as set forth within this demand, but if you feel anything additional is necessary, please let me know. This demand is obviously governed by Lewis v. Cherokee Inc. Co., 258 Ga. App. 839 (1984), and its progeny as well as the Georgia Unliquidated Damages Act, O.C.G.A. § 51-12-14. This demand is made as a time-limited demand for the minimum time frame set forth under Georgia law.

Pursuant to O.C.G.A. § 33-7-11, this offer of settlement for the amount of $1,000,000.00, must be accepted by you, in writing, no later than sixty (60) days from the date you receive this offer.  You will then have ten (10) days in which to provide payment of the settlement monies. Timely payment is an essential element of the acceptance, and the settlement check must accompany the release. Further, only my client's name and my firm name may appear on the settlement check.  As stated above, in return, my client will sign a mutually agreed upon general release and will release Progressive from all claims for bodily injury, personal injury, compensatory damages, general damages, and all other damages available to him under the law.

I look forward to hearing from you in the near future.

Sincerely,

Robert D. Johnson
RDJ/

Enclosures

Cc:    Mr. Michael Chamberlain/ MTC Consulting, LLC
       Mr. J. Peyton Randolph, II, Esq.
       April_Brandenburg@progressive.com

E-FILED IN OFFICE - JT
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA

23-A-00956-9

3/9/2023 12:06 PM

TIANA P. GARNER, CLERK

IN THE SUPERIOR COURT OF GWINNETT COUNTY
STATE OF GEORGIA

MTC CONSULTING, LLC and
MICHAEL CHAMBERLAIN,

     Plaintiffs,

v.

PROGRESSIVE MOUNTAIN INSURANCE
COMPANY,

     Respondent.

Civil Action File No.:
23-A-00956-9

**RESPONDENT PROGRESSIVE MOUNTAIN INSURANCE COMPANY'S
JURY TRIAL DEMAND**

COMES NOW Progressive Mountain Insurance Company, Respondent in the above-captioned matter, and hereby demand a trial by twelve (12) persons.

Respectfully submitted, this 9th day of March, 2023.

LUEDER, LARKIN & HUNTER, LLC

*/s/ Samuel H. Sabulis*
SAMUEL H. SABULIS
Georgia Bar No. 339532
MARGARET L. MANNS
Georgia Bar No. 317367
*Attorneys for Respondent*

3535 Piedmont Road NE
Building 14, Suite 205
Atlanta, Georgia 30305
T: (678) 359-6028
F: (678) 359-6028
ssabulis@luederlaw.com
mmanns@luederlaw.com

-1-

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that I have this day served a copy of the within and foregoing document upon all parties to this matter by:

_____X_____          Electronically filing this document with PeachCourt/Odyssey which sends notice via that system to all parties and counsel pursuant to O.C.G.A. § 9-11-5(F) and/or U.S.C.R. 36.16(E)

_____          Electronically serving this document via email pursuant to O.C.G.A. § 9-11-5 (F) and/or U.S.C.R. 36.16(E) as follows:

_____          Depositing a true copy of same in the U.S. Mail, proper postage prepaid, addressed to counsel of record as follows:

Robert D. Johnson, Esq.
John E. Alday, Esq.
Johnson & Alday, LLC
219 Roswell Street, NE
Marietta, Georgia 30060

Respectfully submitted, this 9th day of March, 2023.

LUEDER, LARKIN & HUNTER, LLC

*/s/ Samuel H. Sabulis*
SAMUEL H. SABULIS
Georgia Bar No. 339532
MARGARET L. MANNS
Georgia Bar No. 317367
*Attorneys for Respondent*

3535 Piedmont Road NE
Building 14, Suite 205
Atlanta, Georgia 30305
T: (678) 359-6028
F: (678) 359-6028
ssabulis@luederlaw.com
mmanns@luederlaw.com

E-FILED IN OFFICE - JT
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA

23-A-00956-9

3/9/2023 12:06 PM
TIANA P. GARNER, CLERK

TO:            ALL JUDGES, CLERKS OF COURT, and COUNSEL OF RECORD

FROM:          SAMUEL H. SABULIS

RE:            NOTICE OF LEAVE OF ABSENCE

DATE:          March 9, 2023

CAFN:          23-A-00956-9

_____

COMES NOW, SAMUEL H. SABULIS, and respectfully notifies all judges before whom he has cases pending, all affected clerks of court, and all opposing counsel, that he will be on leave pursuant to Georgia Uniform Court Rule 16 on the following dates:

1.     Dates through and including May 25 – June 2, 2023.

2.     Dates through and including June 19 - 23, 2023.

3.     Dates through and including July 3 - 7 2023.

4.     Dates through and including September 4 - 8, 2023.

5.     Dates through and including October 9 - 13 2023.

6.     Dates through and including November 20 - 24 2023.

The purpose of the leave is for personal time with family and/or to fulfill CLE obligations. Attached as Exhibit "A" is the list of actions to be protected.  Pursuant to U.S.C.R. 16, all affected judges presiding over the cases listed in the attachment hereto and opposing counsel therein shall have ten (10) days from the date of this Notice to object to it.  If no objections are filed, the leave shall be granted pursuant to U.S.C.R. 16.

*(Signature on the following page)*

This the 9th day of March, 2023.

        LUEDER, LARKIN & HUNTER, LLC

        _____

        SAMUEL H. SABULIS
        Bar No.: 339532

3535 Piedmont Road, NE
Building 14, Suite 205
Atlanta, Georgia 30305
(678) 359-6028
ssabulis@luederlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that I have this day served a copy of the within and foregoing document upon all parties to this matter by:

_____X_____ Electronically filing this document with PeachCourt / Odyssey which sends notice via that system to all parties and counsel pursuant to O.C.G.A. § 9-11-5(F) and/or U.S.C.R. 36.16(E)

_____ Electronically serving this document via email pursuant to O.C.G.A. § 9-11-5 (F) and/or U.S.C.R. 36.16(E) as follows:

_____ Depositing a true copy of same in the U.S. Mail, proper postage prepaid, addressed to counsel of record as follows:

Robert D. Johnson, Esq.
John E. Alday, Esq.
Johnson & Alday, LLC
219 Roswell Street, NE
Marietta, Georgia 30060

Respectfully submitted, this 9th day of March, 2023.

LUEDER, LARKIN & HUNTER, LLC

_____
SAMUEL H. SABULIS
Bar No.: 339532
*Attorney for Respondent*

3535 Piedmont Road, NE
Building 14, Suite 205
Atlanta, Georgia 30305
(678) 359-6028
ssabulis@luederlaw.com

**EXHIBIT "A"**

| Name of Case<br>Case Number | Name of Judge<br>County and Court | Opposing Counsel |
|---|---|---|
| MTC Consulting, LLC and<br>Michael Chamberlain,<br><br>     Petitioners,<br><br>v.<br><br>Progressive Mountain<br>Insurance Company,<br><br>     Respondents.<br><br>Civil Action File No.:<br>23-A-00956-9 | Presiding Judge,<br>Superior Court of Gwinnett<br>County | Robert D. Johnson, Esq.<br>John E. Alday, Esq.<br>Johnson & Alday, LLC<br>219 Roswell Street, NE<br>Marietta, Georgia 30060 |