# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### (ATLANTA DIVISION)

| | |
|---|---|
| TAKIRA SADE ANDERSON, | **Case No.:** |
| Plaintiff, | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| v. | |
| EXPERIAN INFORMATION SOLUTIONS, INC.; EQUIFAX INFORMATION SERVICES, LLC; AND TRANS UNION LLC, | 1. **FCRA, 15 U.S.C. § 1681** *et seq.* |
| Defendants. | |

Plaintiff Takira Sade Anderson ("Plaintiff"), through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, against Defendants Experian Information Solutions, Inc. ("Experian"); Equifax Information Services, LLC ("Equifax"); and Trans Union LLC ("Trans Union") (referenced collectively as "Defendants").

## I.     INTRODUCTION

1.     Plaintiff's Complaint alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, against Defendants, consumer reporting agencies, for reporting inaccurate information on Plaintiff's consumer report.

"Consumer reports" under 15 U.S.C. § 1681a(d) include both credit file disclosures obtained directly by Plaintiff from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

## II.   <u>JURISDICTION AND VENUE</u>

2.     The District Court has federal question jurisdiction over these claims pursuant to 28 U.S.C. § 1331; 15 U.S.C. § 1681.

3.     Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

4.     Defendants transact business here; as such, personal jurisdiction is established.

## III.   <u>PARTIES</u>

5.     Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

6.     Plaintiff is a natural person residing in Fairburn, Fulton County, GA.

7.     Plaintiff is a *consumer* as defined by the FCRA, 15 U.S.C. § 1681a(c).

8.     Defendant Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Experian is regularly engaged in

the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Experian's principal place of business is located at 475 Anton Boulevard, Costa Mesa, California 92626.

9.      Defendant Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers in the form of "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, GA 30309 and can be served thru its registered agent Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, GA 30092.

10.      Defendant Trans Union is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). On information and belief, Trans Union is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Trans Union's principal place of business is located at 555 West Adams Street, Chicago, Illinois 60661 and can be served through its registered agent Illinois Corporation Services Company, 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

11.     Upon information and belief, Defendants disburse consumer reports to third parties under contract for monetary compensation.

12.     At all relevant times, Defendants acted through duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

13.     Any violations by Defendants were not in good faith, were knowing, negligent, willful, and/or intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violations.

## IV.   FACTUAL BACKGROUND

14.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

15.     The United States Congress decided that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

16.     Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

17.    The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

18.    Defendants report consumer information about Plaintiff and other consumers through the sale of consumer reports.

19.    Defendants' consumer reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) Public Record Information: this section typically includes public record information, such as bankruptcy filings; and (iv) Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

20.    Defendants obtain consumer information from various sources, including furnishers that provide consumer information to Defendants, and

information Defendants independently source themselves or through third party providers, vendors or repositories, including computerized reporting services like PACER.

21.     Defendants routinely report inaccurate, incomplete, outdated, and materially misleading information about consumers after they have been discharged from bankruptcy, without verifying or updating the information as required by § 1681e(b), despite possessing information that indicates their reporting is inaccurate.

22.     For example, even when Defendants report an account as having been opened after a bankruptcy is filed, Defendants will often inaccurately report that account as being discharged in the bankruptcy, when Defendants know that is not possible.

23.     The majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Defendants) to make lending decisions. Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models) to interpret the information in a consumer's consumer report, which is based on the amount of reported debt, payment history, and dates of delinquencies contained in Defendants' reports.

24.     FICO and other third-party algorithms use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a

direct reflection of a consumer's creditworthiness.

25.   The information reported by Defendants contributes to consumer creditworthiness, including their FICO Scores, which are calculated using information contained in Defendants' consumer reports.

26.   FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

27.   "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed.

28.   In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred and how many delinquent accounts exist.

29.   The more severe, recent and frequent late payments are, the greater the harm to the FICO Score.

30.   After bankruptcy, credit scores heavily weight a consumer's efforts to rebuild their credit history by establishing new, positive credit.

31.   A consumer who has obtained a bankruptcy discharge and has a consumer report that is inaccurately reporting that an account was discharged in bankruptcy when the account was not included in bankruptcy (because it was opened

after the bankruptcy filing) and is in fact being paid suffers greater harm than if that account was accurately reporting.

32.   Defendants voluntarily obtained Plaintiff's consumer bankruptcy information and reported it in individual account tradelines and the Public Records section of Plaintiff's consumer reports.

33.   Defendants are well aware that a bankruptcy can only discharge accounts which were opened prior to the date of the bankruptcy filing.

34.   Defendants are also aware that accounts opened after a bankruptcy petition is filed are not (and cannot be) included in a bankruptcy and therefore are not discharged thereby.

35.   Defendants are also provided information about whether an account is included in a bankruptcy from information "furnishers" who report their accounts to the CRAs. Furnishers do not inaccurately report newly opened, positive account as "discharged in bankruptcy."

36.   However, Defendants regularly override furnisher reporting of positive accounts, newly opened after a bankruptcy filing, as "discharged in bankruptcy," which is not possible.

37.   More than a decade ago, Defendants implemented automated "bankruptcy scrub" software which, upon Defendants' reporting of a bankruptcy

public record discharge, is supposed to identify inaccurate pre-bankruptcy accounts and override the furnisher's reporting.

38.     However, upon information and belief, Defendants' bankruptcy scrub algorithms are flawed and often mistakenly treat accounts opened after the bankruptcy filing as though they were opened before the bankruptcy filing, even though Defendants know the "Open Date" of the accounts.

39.     Consequently, Defendants regularly publish consumer information that conflicts with information already reported in Defendants' credit files.

40.     Defendants routinely report inaccurate and materially misleading information about consumers like Plaintiff, without verifying or updating it as required by § 1681e(b), despite possessing information inconsistent with the reported information that establishes that the reported information is inaccurate.

41.     Defendants' unreasonable policies and procedures cause them to regularly report consumer information without verifying its accuracy.

42.     Defendants' unreasonable policies, procedures and/or algorithms consistently fail to identify and update consumer information following a bankruptcy as required by § 1681e(b).

43.     Defendants know the information they report about accounts opened after bankruptcy filings is often inconsistent with public records and data contained in Defendants' own files.

44.     Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against Defendants for their inaccurate credit reporting following a Chapter 7 bankruptcy.

45.     Thus, Defendants are on continued notice of their inadequate post-bankruptcy reporting procedures, which cause Defendants to report inaccurate balances, account statuses, payment histories, and/or payment statuses.

*Allegations Specific to the Credit Reporting of Plaintiff*

46.     On or about April 27, 2022, Plaintiff filed for bankruptcy under Chapter 7 of Title 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Georgia, petition number 22-53208-lrc.

47.     Plaintiff received an Order of Discharge on or about August 8, 2022.

48.     Defendants prepared one or more consumer reports concerning Plaintiff after she was discharged from Chapter 7 Bankruptcy.

49.     The allegations in this complaint against Defendants are based on the reporting by Defendants in Plaintiff's November 25, 2022 credit reports obtained by Plaintiff.

50.     Plaintiff obtained the credit reports to ensure that her credit account tradelines and bankruptcy were being reported accurately.

51.     In Plaintiff's consumer reports, Defendants included the bankruptcy case number, court, and the fact that Plaintiff's bankruptcy had been filed in April 2022 in the Public Records section of Plaintiff's consumer reports.

52.     Defendants also reported Plaintiff's credit history in individual "tradelines," including names of credit accounts, account numbers, account types, responsibility for the account (i.e., individual or joint accounts), the date the accounts were opened, statuses, and the dates of the last status update.

53.     Defendants obtained notice of Plaintiff's bankruptcy discharge through their routine, independent collection of consumer information from third party vendors such as Lexis-Nexis, as well as from furnishers that provide data regarding the individual tradelines reported by Defendants in Plaintiff's consumer reports.

54.     Defendants should **not** have inaccurately reported accounts that were opened after the bankruptcy and not included in the bankruptcy or discharged as included in the bankruptcy but did so.

55.     In September 2022, Plaintiff opened a Self Financial, Inc. Self Credit Builder Account (the "Account") ending with account number 56581.

56.     The Account was opened after Plaintiff filed for bankruptcy April 27, 2022. Plaintiff's Account, therefore, was not included in Plaintiff's bankruptcy and was not discharged.

57.     Defendants incorrectly reported the Account as "discharged through bankruptcy." The Account should not have been inaccurately reported with a bankruptcy discharge status.

58.     Additionally, the Account should have been reported with an accurate tradeline status such as "Paid/Closed" that reflects the actual status of the Account, instead of an incorrect bankruptcy status.

59.     Defendants are aware that CRAs are not permitted to report account opened after the bankruptcy filing with a status of "discharged through bankruptcy."

60.     Defendants should have reported all of Plaintiff's accounts opened after her bankruptcy filing as paid/closed when Plaintiff had paid the full balance of the accounts.

61.     Defendants failed to accurately report that the Account is paid/closed and/or was not included in bankruptcy, and instead inaccurately reported that it was included in Plaintiff's bankruptcy discharge.

62.     Plaintiff learned Defendants were inaccurately reporting Plaintiff's post-bankruptcy, paid Account as having been included in Plaintiff's bankruptcy,

and subject to bankruptcy coding that conveys to creditors/lenders that the Account was discharged or non-paid even though Plaintiff made all her payments on the Account after the bankruptcy was discharged.

63.     After filing for bankruptcy, Plaintiff opened the Account, and therefore, the Account was not dischargeable or discharged.

64.     However, when Plaintiff pulled her consumer reports, Plaintiff discovered that Defendants were not reporting the Account as paid/closed but was instead reporting it as included in Plaintiff's bankruptcy.

65.     Defendants do not have reasonable procedures in place to detect and correct accounts that were opened after the bankruptcy was filed but are reporting as discharged through bankruptcy, even where Defendants have received information from the furnisher that indicates the Account was opened after the bankruptcy filing.

66.     Self Financial, Inc. furnished information to Defendants that indicated Plaintiff's Account is paid/closed and was opened after Plaintiff's bankruptcy filing, but Defendants rejected or otherwise overrode the data they received.

67.     Defendants inaccurately reported that Plaintiff discharged the Account through bankruptcy when Plaintiff has already made all her payments on the Account after the bankruptcy.

68.     Defendants failed to indicate the Account is paid/closed.

69.     Defendants' reporting was patently false/incorrect and therefore inaccurate, as the Account is paid/closed and was opened after the bankruptcy filing and not discharged by Plaintiff's bankruptcy. Additionally, Defendants' reporting of the Account is materially misleading and therefore also inaccurate.

### *Plaintiff's Damages*

70.     Upon information and belief, had Defendants accurately reported the Account with its correct payment history and status, Plaintiff's credit scores would have been better.

71.     After bankruptcy, a consumer's efforts to establish and build new credit is heavily weighted and scores will be lower when no such positive credit is being reported.

72.     Plaintiff opened the credit builder Account specifically to rebuild her credit after her bankruptcy was discharged.

73.     Plaintiff was shocked to find out that the Account she had opened and paid to rebuild her credit post-bankruptcy was being reported as discharged in her bankruptcy.

74.     After Plaintiff's bankruptcy discharge, Plaintiff applied for credit cards with Capital One and Wells Fargo but was denied due to the inaccurate reporting of the Account by Defendants.

75.     After Plaintiff's bankruptcy discharge, Plaintiff applied for a credit card with First Phase and was approved at a less than favorable rate and a lower credit limit due to the inaccurate reporting of the Account by Defendants Equifax and Experian.

76.     Equifax's inaccurate reporting of the Account, along with additional information belonging to Plaintiff, was published to Wells Fargo, First Phase and Capital One by Equifax during the process of Plaintiff's credit applications.

77.     Experian's inaccurate reporting of the Account, along with additional information belonging to Plaintiff, was published to Wells Fargo, Capital One, CDC Federal Credit Union, First Phase/TBOM, LP/DMS/Affinity FCU/AM, First InvST SVC/First, Flagship Credit Acceptance, Air Force FCU, and Discover Financial Services by Experian during the process of Plaintiff's credit applications.

78.     Trans Union's inaccurate reporting of the Account, along with additional information belonging to Plaintiff, was published to Wells Fargo, Capital One, Regional AC, Feb/Destiny, and ML TAB Bank by Trans Union during the process of Plaintiff's credit applications.

79.     As a direct result of Defendants' inaccurate reporting, Plaintiff suffers damages, including a decreased credit score, lower overall creditworthiness, and other financial harm.

80.     As a direct result of Defendants' inaccurate reporting, Plaintiff also suffers actual damages in the form of attorney's fees incurred, related to Defendants' inaccurate reporting.

81.     Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, loss of sleep, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

## V.     COUNT I
### Defendants Experian, Equifax, and Trans Union
### (Violations of the FCRA, 15 U.S.C. § 1681 *et. seq.*)

82.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

83.     The FCRA requires consumer reporting agencies, like Defendants, maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. § 1681e(b).

84.     Defendants negligently and willfully violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit report.

85.     Defendants independently sought information about Plaintiff's bankruptcy filing and discharge and voluntarily included it in Plaintiff's consumer

reports.

86.     When Defendants voluntarily procured and reported Plaintiff's bankruptcy information, they had an obligation to follow reasonable procedures to ensure they reported the bankruptcy with maximal accuracy.

87.     Defendants knew or should have known that an account that is opened after a bankruptcy is filed is not included in the bankruptcy or discharge.

88.     These obligations are well established by the plain language of the FCRA, promulgated by the Federal Trade Commission, detailed in case law, and exemplified in prior cases involving Defendants from which Defendants are on notice of their unreasonable procedures concerning the reporting of accounts opened after a bankruptcy filing.

89.     Additionally, Defendants possess or could easily obtain substantial written materials that detail CRAs' duties and obligations under the FCRA, including those arising after a consumer bankruptcy.

90.     Further, Defendants received notice that Plaintiff is actively making payments on the Account through information provided by the data furnisher, Sunrise Banks, N.A. and therefore had actual knowledge that the Account was opened after the bankruptcy filing and that Plaintiff was making payments on the Account.

91.     However, despite knowledge that the Account is paid/closed and was opened after filing for bankruptcy, Defendants inaccurately reported the Account as "discharged in bankruptcy."

92.     Upon information and belief, Defendants' bankruptcy scrub algorithms are defective and cannot distinguish between accounts opened before or after the petition was filed before performing the scrub process.

93.     Despite knowing their legal obligations, Defendants willfully and knowingly breached their duties in violation of 15 U.S.C. § 1681e(b). Accordingly, Defendants deprived Plaintiff of her rights as a consumer under the FCRA.

94.     Not only did Defendants have prior notice of their unreasonable procedures for reporting an account opened after a bankruptcy filing, but they also possessed information from which they should have known the information reported about Plaintiff was inaccurate.

95.     Defendants knew from the furnisher of the Account that the Account had been opened after Plaintiff filed for bankruptcy and Plaintiff was making payments on the Account.

96.     Yet in this case, Defendants inaccurately reported the Account, which they knew is paid/closed and was opened after Plaintiff's bankruptcy filing, as "discharged in bankruptcy."

97.     Defendants violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of Plaintiff's consumer information.

98.     Defendants also violated 15 U.S.C. § 1681e(b) by failing to report accurate information when Defendants knew or should have known the information they were reporting is inaccurate, or otherwise contradicted by information known by Defendants, reported to Defendants, and reasonably available to Defendants.

99.     Defendants' violations of 15 U.S.C. § 1681e(b) were willful.

100.    Alternatively, Defendants' violations of 15 U.S.C. § 1681e(b) were negligent.

101.    Defendants' inaccurate reporting damaged Plaintiff's creditworthiness.

102.    Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, credit denial, and other financial harm caused by Defendants inaccurately reporting the Account as discharged in bankruptcy.

103.    Plaintiff also suffered actual damages in the form of expenses for attorney's fees.

104.    Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, stress, anger, loss of sleep, frustration, shock, embarrassment, and anxiety.

105.   Defendants are direct and proximate causes of Plaintiff's damages.

106.   Defendants are substantial factors in Plaintiff's damages.

107.   Therefore, Defendants are individually liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq*.

## VI.   <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiff Takira Sade Anderson respectfully requests the judgments be entered against Defendants for the following:

A. Declaratory judgment that Defendants violated the FCRA;

B. Actual damages pursuant to 15 U.S.C. § 1681n(a)(1) or § 1681o(a)(1);

C. Statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1681n(a)(1);

D. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

E. Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

F. Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law; and

G. Any other relief that this Court deems appropriate.

//

## VII.   <u>JURY DEMAND</u>

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a

trial by jury of all issues triable by jury.

Respectfully submitted this 9th day of March 2023.

**CONSUMER ATTORNEYS**

*BY: Jena Dakroub*
Jenna Dakroub, GA #385021
CONSUMER ATTORNEYS
260 Peachtree Street NW, STE 2200,
Atlanta, Georgia 30303
E:Jdakroub@consumerattorneys.com
T: (602) 807-1525
F: (718) 715-1750

CONSUMER ATTORNEYS
8245 N. 85th Way
Scottsdale, AZ 85258

*Attorneys for Plaintiff*
*Takira Sade Anderson*
