# Agreement of Indemnity



# 29809

**RLI Insurance Company**
**Contractors Bonding and Insurance Company**
P.O. Box 3967
Peoria, IL 61612-3967

Reference Account Name: _Briggs Brothers Enterprises Corporation_     Date of Agreement: _12/1/2019_

We, the undersigned, individually and for and on behalf of all other Indemnitors, enter into this Agreement of Indemnity ("Agreement") in favor of Company.

**DEFINITIONS:**

As used in this Agreement, the following terms have the following meanings and shall apply equally to the singular and plural forms of such terms:

a. "Agreement" means this Agreement of Indemnity.
b. "Company" means **RLI Insurance Company**, and/or **Contractors Bonding and Insurance Company** as applicable and their respective present or future direct or indirect affiliates and subsidiaries of parent companies and parent Company and/or the parent Company's successors and assigns, co-sureties, joint venture partners, reinsurers, subsidiaries, affiliates and divisions, whether now existing or hereafter acquired or created.
c. "Indemnitors" means the Principal and one or more of the persons, firms, or entities signing this Agreement below, and their respective successors, assigns, co-venturers, joint venture partners, parents, subsidiaries, sibling companies, affiliates and divisions, whether now existing or hereafter acquired or created. Also, Indemnitors shall include any and all entity(s) and/or individual(s) that obtain Bonds from Company at the request of any of the aforementioned parties, or any combination of the above.
d. "Loss" Any and all cost and expense of any kind or nature, including attorney fees, consulting, and other professional fees and expenses which the Company incurs in connection with any Bond or with enforcing the terms of this Agreement. Said cost and expense shall include, but not be limited to, the Company's (i) investigation in connection with any Bond; (ii) prosecuting, litigating or defending any action, claim, or other cause of action related to a Bond; (iii) obtaining Company's release from any Bond; (iv) enforcing the terms of this Agreement by claim, demand, or litigation; and (v) all interest at the highest legal rate.
e. "Default" Any of the following shall constitute a Default under this Agreement: (a) a declaration of default, Notice to Cure, notice of potential default, or request for Surety conference issued by any Obligee; (b) breach or abandonment of any Contract; (c) breach of any provision of this Agreement; (d) failure to make payment of a bill in connection with any Contract; (e) Company's establishment of a reserve; (f) improper diversion of Contract funds or any Indemnitors assets to the detriment of Contract obligations; (g) Principal or any Indemnitor becoming the subject of any proceeding or agreement of bankruptcy, receivership, insolvency, or creditor assignment, or actually becoming insolvent; (h) any Indemnitor dying, becoming legally incompetent, being imprisoned, being convicted of a felony, or disappearing and being unable to be located; (i) any representation furnished to Company by or on behalf of any Indemnitor proving to have been materially false or misleading when made; and/or (j) any change in control or existence of any Indemnitor. Change of control means the addition or departure of any person or entity having a 10% or greater ownership interest in any Indemnitor; k) SuretyCompany receiving any communication constituting a claim, notice, demand, or request for payment related to any Bond; (l) Principal fails to keep in force any licenses or meet any other requirements necessary to do business in the state(s) in which work is performed or business is conducted; and/or (m) Principal is dissolved or ceases to do business or perform work, or Company becomes aware that Principal or any Indemnitor(s) may be in financial distress.(n) Principal fails to remit premium when due.
f. "Bond" means any and all bonds, contract of suretyship, guarantee, obligation, undertaking, writing or commitment, and any modifications or amendments thereto, issued or undertaken by the Company, any and all bonds, undertakings, guarantees, contractual obligations, statements of prequalification or commitment, for which Company has an obligation as a result of an asset purchase, acquisition, merger or like transaction, issued for, or which Company has executed or procured for or on behalf of: (a) any one or more of the Indemnitors (without regard to whether any such Indemnitor signed this Agreement), their respective present or future direct or indirect parent companies, subsidiaries and affiliates and all of their respective successors and assigns; (b) any present or future joint venture, co-venture, consortium, partnership, trust, association, limited liability company or other legal entity in which one or more of the persons or entities identified in sub-paragraph (a) above have an interest: (c) any other person or entity at the request of any of the Indemnitors; or (d) any combination of the above, whether executed or procured before, on, or after the execution of this Agreement. Bond shall include any and all Modifications.
g. "Modifications" shall include but not be limited to renewals, substitutions, riders, endorsements, reinstatements, replacements, increases or decreases in penal sum, continuations, and extensions.
h. "Contract". Any and all contract and/or obligation that is guaranteed or covered under a Bond issued by Company.
i. "Obligee" Any entity that a Bond is issued in favor of.
j. "Principal" means the person, firm, or entity Identified as Indemnitor(s) and its successors, parent companies, subsidiaries, sibling companies, affiliated companies, divisions, limited liability companies, co-venturers, joint venture partners, consortiums, assigns, or other legal entities whether now existing or hereafter acquired or created. If Principal changes its name or corporate structure or form, each and every part of this Agreement shall bind the newly named or formed Principal in every respect as if such newly named or formed Principal signed this Agreement.

**EXHIBIT 2**

## RECITALS:

WHEREAS, the Principal, in the performance of Contracts and the fulfillment of obligations, whether solely in its own name or jointly with others, may desire or be required to give or procure certain surety bonds, undertakings, or instruments of guarantee, and to renew, continue, or substitute the same from time to time, or to give or procure new Bonds, undertakings, or instruments of guarantee with the same or different penalties and/or conditions in renewal, continuation, extension, or substitution thereof (any one or more of which are hereinafter called a Bond or Bonds), or the Indemnitors may request the Company to refrain from cancelling said Bonds;

WHEREAS, at the request of the Indemnitors, and upon the express condition that this Agreement of Indemnity (the Agreement) be given, the Company has executed or procured to be executed, and may from time to time hereafter execute or procure to be executed, Bonds on behalf of the Principal;

WHEREAS, the Indemnitors have a substantial, material, and beneficial interest in obtaining the Bonds or in the Company's refraining from cancelling the Bonds;

WHEREAS, the Indemnitors understand that the Company expressly requires the execution and delivery of this Agreement as part of the consideration for the execution, renewal or extension of any Bond, or for refraining from canceling any Bond;

NOW, THEREFORE, in consideration of the foregoing premises and of the covenants set forth herein, the Indemnitors for themselves and their respective heirs, executors, administrators, successors and assigns, jointly and severally, hereby covenant and agree with the Company, as follows:

## TERMS

1. Recitals. The Indemnitors agree that the above Recitals are true and correct and incorporated by reference into this Agreement.

2. Premiums. The Indemnitors jointly and severally will pay the Company all premiums and charges of the Company for the Bonds, including all renewals until the Indemnitors shall serve evidence satisfactory to the Company of its discharge or release from the Bonds and all liability by reason thereof.

3. Indemnity. The Indemnitors agree to exonerate, indemnify and hold Company harmless from and against all Loss. Upon demand, the Indemnitors shall pay to the Company, as soon as liability exists or is asserted against the Company, whether or not the Company shall have made any payment therefor. Such payment shall be equal to such amounts as the Company, in its sole discretion, deems sufficient to protect it from Loss or potential Loss. The vouchers or other evidence of any such payments made by the Company shall be prima facie evidence of the fact and amount of the liability of the Indemnitors to Company. The obligations of the Indemnitors under this Agreement are joint and several. In the event of any claim or demand being made by the Company against the Indemnitors, or any one or more of the parties so designated, by reason of the execution of a Bond or Bonds, the Company is hereby expressly authorized to settle with any one or more of the Indemnitors individually, and without reference to the others, and such settlement or composition shall not affect the liability of any of the others, and Indemnitors hereby expressly waive the right to be discharged and released by reason of the release of one or more of the joint debtors, and hereby consent to any settlement or composition that may hereafter be made. The liability of the Indemnitors hereunder shall not be affected by the failure of the Principal to sign any Bond, nor by any claim that other indemnity or security was to have been obtained, nor by the release of any indemnity, or the return or exchange of any collateral that may have been obtained and if any party signing this Agreement is not bound for any reason, this Agreement shall still be binding upon each and every other party. The Indemnitors each waive and subordinate all rights of indemnity, subrogation and contribution each against the other until all obligations to the Company under this Agreement have been satisfied in full.

4. Collateral Security. At any time, if the Company is threatened with liability, receives a claim against a Bond, or believes that it may incur liability, the Indemnitors will, immediately upon demand, and regardless of whether the Company has made any payment, incurred liability, or established a reserve, pay the Company an amount the Company deems, in its sole discretion, is necessary to protect itself from a potential Loss or actual Loss. The Company shall have the right to use the deposit, or any part thereof, as collateral security for a Loss, to reimburse itself for a Loss it paid, and/or to pay for a Loss. The Company shall have no obligation to invest said collateral or to provide a return and/or interest on the collateral deposit. The Company will return any unused portion of the deposit upon the termination of the Company's liability on the Bonds and after the Company has fully reimbursed itself for its Loss under this Agreement. The Indemnitors acknowledge and agree that their failure to provide collateral security to the Company in accordance with the provisions of this section shall irreparably harm the Company and that monetary damages will be inadequate to compensate the Company. . The Indemnitors waive any and all defenses they may have to such a request and shall not raise any defense in opposition to a request for order requiring the posting or deposit of collateral security.

5. Security Interest. As security for the Indemnitors obligations under this Agreement, the Indemnitors each hereby grant to Company a security interest in accordance with the Uniform Commercial Code ("UCC") to the following properties, assets and rights of the Indemnitors ("Collateral"), whether now owned or hereafter acquired (all of which is collectively referred to herein as the Collateral): (a) all goods which includes inventory, equipment and any accessions thereto; (b) instruments which includes promissory notes; (c) documents; (d) accounts; (e) chattel paper; (f) deposit accounts; (g) letters of credit rights; (h) securities and other investment property; (i) supporting obligations; (j) all Contract rights or other contract rights to the payment of money, insurance, and proceeds on said Contracts or other contracts; and (k) all other general intangibles. The Indemnitors irrevocably authorize the Company in order to perfect its security interest, without notice, to file a financing statement or amendments thereto as required by the UCC. The failure by Company to file any financing statement shall not release or excuse any of the Indemnitors' obligations under this Agreement. A copy or facsimile of this Agreement may be filed for recording in lieu of a financing statements in each and every jurisdiction where the UCC so permits. The Company is hereby appointed as the attorney-In-fact to make any additions to this Security Interest granted to Company by this Agreement that may be necessary to permit its filing as a financing statement under the UCC, and to execute and file such additional instruments and financing statements on behalf of the Indemnitors as may be reasonably necessary to perfect the security interest.

# EXHIBIT 2

6. **Assignment.** In the event of Default as security for the Indemnitors obligations under this Agreement, the Indemnitors each hereby assign and transfer all of their respective right title and interest to the following assets: (a) all of the rights of the Indemnitors arising in any manner (whether directly or indirectly) from any Bond; (b) all the rights, title, and interest of the Indemnitors in and to any and all machinery, equipment, goods (including inventory, equipment and accessions thereto), plants, tools, inventory and materials that are, or may hereafter be, about or upon the site or sites of any and all of the contractual work referred to in any Bond or elsewhere, including materials purchased for or chargeable to any and all Contracts, materials that may be in process of construction or fabrication, in transit, in storage elsewhere, or in transformation to any and all of said sites, wherever located, whether now owned or hereafter acquired or arising, and all proceeds and products thereof; (c) all of the rights, title and interest of the Indemnitors in and to any and all subcontracts let or to be let in connection with any and all Contracts, and in and to all surety bonds supporting such subcontracts; (d) all actions, causes of actions, claims and demands whatsoever that the Indemnitors may have or acquire against any subcontractor, laborer, or supplier of material or equipment, or any person furnishing or agreeing to furnish or supply labor, material, services, supplies, machinery, tools or other equipment in connection with or on account of any and all Contracts; and against any surety or sureties of any subcontractor, due on account of any and all Contracts, and all other contracts whether bonded or not in which the Indemnitors, individually or collectively, have an interest; (e) all accounts and accounts receivable, and all actions, causes of actions, claims and demands whatsoever that the Indemnitors may have or acquire against, any Obligee, general contractor, subcontractor, intermediary, owner or other responsible party with regard to the contractual work or obligation referred to in any Bond or elsewhere; (f) all of the rights arising out of any insurance policy; (g) all of the rights arising out of any contract or agreement to which the Indemnitors, individually or collectively, are a party, regardless of whether the Company has issued a Bond in connection with any such contract or agreement; and (h) any and all accounts, receivables, chattel paper, documents or certificates of title, deposit accounts, investment property, letters of credit, real property, tangible property, intangibles, choses in action, or bills of lading. The Indemnitors, individually and collectively, authorize the Company, at its sole discretion, and to the extent the Company deems appropriate, but without any obligation on the Company's part to: (a) to assert and pursue any or all of the assigned, transferred or conveyed rights, actions, causes of action, claims and/or demands, and to take possession of all or part of the work plus any associated supplies, tools, plant, machinery, equipment, materials, records, drawings and plans; and/or (b) to arrange for the completion of such work, or to relet, or to consent to the reletting or completion of, any Contract secured by any Bond.

7. **Contract Funds are Trust Funds.** If any of the Bonds are executed in connection with a Contract, the Indemnitors, as trustees, covenant and agree that all payments received for or on account of said Contract or obligation shall be held as a trust fund, in which the Company has an interest, for the payment of debts incurred in the performance of the Contract or obligation and for any labor, materials, services, equipment or supplies furnished in the prosecution of the work provided in said Contract or obligation or any authorized extension or modification thereof; and, further, the Indemnitors expressly understand and declare that all monies due and to become due under any Contract or obligations covered by any Bond are trust funds, whether in the possession of the Indemnitors or otherwise, for the benefit of and for payment of all such obligations in connection with any such Contract or obligations for which the Company would be liable under any of Bond, which said trust also inures to the benefit of the Company for any liability or loss It may have or sustain under any Bond, and this Agreement and declaration shall also constitute notice of such trust. If the Company satisfies any liability on any Bond, the Company shall be entitled to assert the claim of the claimant to the trust funds, in its own name or that of the claimant. In addition to the trust obligations agreed to hereinabove and not as a requirement to such trust obligations, the Indemnitors shall, upon demand of the Company, open an account in a bank or other depository approved by the Company, in the name of the Company or designated as a trust account for Company, and shall deposit therein all monies received from the contracts covered by any Bond. Withdrawals from the trust account shall require countersignature by a representative of the Company. The trust shall terminate upon satisfaction of all obligations for which the trust is hereby created, or 20 years from the date of this Agreement, whichever occurs first.

Any violation of this trust fund provision is done with full knowledge of the Indemnitors' fiduciary obligations to laborers, subcontractors and/or suppliers, knowledge that any violation of this trust fund provision is improper, and is prima facie evidence of the Indemnitors gross recklessness in respect to the Indemnitors fiduciary duty to laborers, subcontractors and/or suppliers.

8. **Company's Takeover Rights.** If a Default occurs, then the Company shall have the right, in its sole discretion, without any obligation, and is hereby authorized, with or without exercising any other right or option conferred upon it by law or in the terms of this Agreement, to take possession of any part or all of the work under any Contract or contracts or obligations covered by any Bond, and at the expense of the Indemnitors to complete or arrange for the completion of the same, and the Indemnitors shall promptly, upon demand, pay to the Company its Loss.

9. **Company's Rights.** If a Default occurs, then the Company shall have the right, in its sole discretion, without any obligation, and is hereby authorized, with or without exercising any other right or option conferred upon it by law or in the terms of this Agreement, to: (a) Notify any Obligee in writing that the Principal is in Default with respect to this Agreement and/or direct any Obligee to withhold any further payments to Principal until Company consents to its release in any manner Uoint check, payment to Company, etc.) Company may, at its sole discretion, direct; and/or (b) Take possession of any of the Principal's office equipment, project documents, specific project accounting records, contract documents, subcontracts, rental agreements, equipment, supplies, and/or materials (whether ordered, delivered, or stored at the jobsite or any other location) as necessary to complete any work under any Contract.

10. **Changes.** The Company is authorized and empowered, at its sole option and without obligation, without notice to or knowledge of the Indemnitors to assent to any change whatsoever in the Bonds, and/or any Contracts or obligations referred to in the Bonds, and/or in the general conditions, plans and/or specifications accompanying any contracts, including, but not limited to, any change in the time for the completion of any Contracts and to payments or advances thereunder before the same may be due, and to assent to or take any assignment or assignments, to execute or consent to the execution of any continuations, extensions or renewals of the Bonds and to execute any substitute or substitutes therefor, with the same or different conditions, provisions and Obligees and with the same or larger or smaller penalties, it being expressly understood and agreed that the Indemnitors shall remain bound under the terms of this Agreement even though any such assent by the Company does or might substantially increase the liability of said Indemnitors.

11. **Settlement of Claims.** The Company, in its sole discretion, shall have the right to determine for itself and the Indemnitors whether any claim, demand or suit brought against the Company or relating to any Bond shall be paid, compromised, settled, tried, defended or appealed, and the Company's decision and/or action with regard to any claim shall be binding upon the Indemnitors. If Company exercises its right to settle as described herein, the Company shall be entitled to reimbursement for its Loss.

12. **Advances.** The Company may, in its sole discretion and without any obligation, to guarantee loans, to advance or lend to the Principal money, which the Company may see fit, for the purpose of any Contracts or obligations referred to in, or guaranteed by, the Bonds. All money expended in the completion of such Contracts or obligations by, the Company, or lent or advanced from time to time to the Principal, or guaranteed by the Company for the purposes of any such Contracts or obligations, and all costs, and expenses incurred by the Company in relation thereto, unless repaid with legal interest by the Principal to the Company when due, shall be presumed to be a Loss by the Company for which the Indemnitors are responsible under this Agreement, notwithstanding that said money or any part thereof should not be so used by the Principal. The Company's making or guarantee of any advance or loan contemplated by this paragraph shall not be deemed or construed as the Company's agreement to make or guarantee of any further or future advance or loan; the making or guarantee of such further or future advances or loans must be specifically agreed to in writing by the Company.

13. **Books and records.** At any time in its sole discretion, the Company shall have the right to review, inspect and copy the books, records, accounts, documents, and electronically-stored information of each and all of the Indemnitors, individually and collectively. The Indemnitors specifically hereby authorize any bank, depository, materials supplier, trade creditor, governmental entity, including, but not limited to, any one or more departments of any state, commonwealth, county, city, municipality, parish or territory of the United States and the United States itself, or other person, firm, or entity to furnish to the Company upon the Company's request, any information the Company request including, but not limited to, account balances, the status of the work under contracts being performed by the Principal, the condition of the performance of such Contracts, and payments of accounts payable to the Principal. The Indemnitors expressly agree and acknowledge that by this Agreement and/or any Bond Company issues at the request of or on behalf of the Indemnitors, Company does not grant any right to Indemnitors to defer payment of any debt, or to incur debt and defer the payment of any debt, or to purchase property and services and defer payment therefor. The Indemnitors further, expressly agree and acknowledge that Company is in no way involved in the business of regularly arranging for the extension, renewal, or continuation of credit.

14. **Decline execution of any Bond and/or renewal.** In its sole discretion, the Company may decline to execute any bond applied for without incurring any liability whatever to the Indemnitors, and the Indemnitors agree to make no claim to the contrary in consideration of the Company's receiving this Agreement. If the Company executes a bid or proposal bond, in its sole discretion it may nevertheless decline to execute any and all bonds that may be required in connection with any award made on the bid or proposal for which the bond was given, and the Principal shall have the right to procure from another surety any bonds that may be required in connection with any award under the bid or proposal for which the bond was given. The Company's decision to decline the execution of any bond shall not diminish or alter the liability of the Indemnitors that may arise by reason of having executed the bid or proposal bond. The Company may take any action it deems necessary to obtain release from liability under any or all Bonds, and the Undersigned will, upon request from Company, assist the Company in obtaining release from any Bonds. The Indemnitors shall, however, remain liable to the Company for losses or expenses paid or incurred by the Company before the release from any Bonds.

15. **Indemnitors waive notice.** The Indemnitors hereby waive notice of the following: (a) execution of said Bonds and of the acceptance of this Agreement; (b) any Default or any other act or acts giving rise to any claim under any Bond; (c) any and all liability of the Company under any Bond; (d) any and all liability on their part under this Agreement The Indemnitors shall be and continue to be liable under this Agreement, notwithstanding any notice of any kind to which they might have been or be entitled and notwithstanding any defenses they might have been entitled to make.

16. **Construction of Agreement** The Indemnitors agree that their liability to the Company shall be construed as broadly as the liability of the Company is construed toward its Obligee. The words "Principal" and "Indemnitors", or personal pronouns used to refer to those words, shall apply regardless of number or gender, and to individuals, partnerships or corporations, as the circumstances require. If the Company procures the execution of a Bond by other sureties, or executes a Bond with co-sureties, or reinsures any portion of a Bond with reinsuring sureties, then all of the terms and conditions of this Agreement shall inure to the benefit of such other sureties, co-sureties and reinsuring sureties, as their interests may appear. If any of the parties mentioned in this Agreement fail to execute the Agreement, or if the execution of this Agreement by any of the parties is defective or invalid for any reason, such failure, defect or invalidity shall not in any manner affect the validity of this Agreement or the liability hereunder of any of the parties executing the Agreement, but each and every party so executing shall be and remain fully bound and liable under this Agreement to the same extent as if such failure, defect or invalidity had not existed. The Indemnitors understand and agree that the rights, powers, and remedies given to or available to the Company under this Agreement are in addition to, and not in lieu of, any and all other rights, powers, and remedies which the Company may have or acquire against the Indemnitors or others whether by the terms of any other agreement or by operation of law or otherwise. If any provision or provisions of this Agreement be void or unenforceable under any law governing its construction or enforcement, this Agreement shall not be voided or vitiated thereby, but shall be construed and enforced with the same effect as though such provision or provisions were omitted.

17. **Separate suits and other indemnity.** In its sole discretion, the Company may bring separate suits hereunder as causes of action accrue, and the bringing of suit or the recovery of judgment upon any cause of action shall not prejudice or bar the bringing of other suits upon other causes of action, whether then or thereafter arising. The Indemnitors shall continue to remain bound under this Agreement even though the Company may have from time to time before the execution of this Agreement or hereafter, with or without notice to or knowledge of the Indemnitors, accepted or released other agreements of indemnity or collateral in connection with the execution or procurement of any Bond, from the Indemnitors or others, it being expressly understood and agreed by the Indemnitors that any and all other rights the Company may have or acquire against the Indemnitors and/or others under any such other or additional agreements of indemnity or collateral shall be in addition to, and not in lieu of, the rights afforded the Company under this Agreement.

18. **Attorney in fact.** The Indemnitors hereby irrevocably nominate, constitute, appoint and designate the Company as their attorney-in-fact with the right, but not the obligation, to exercise all of the rights of the Indemnitors assigned, transferred and set over to the Company in this Agreement, and in the name of the Indemnitors to make, execute, and deliver any and all additional or other assignments, instruments, documents or papers deemed necessary and proper by the Company to give full effect not only to the intent and meaning of the within assignments, but also to the full protection intended to be given to the Company under all other provisions of this Agreement. The Indemnitors hereby ratify and confirm all acts and actions taken and done by the Company as such attorney in fact.

19. **Entire Agreement, modifications, and copies.** This Agreement constitutes the complete and final expression of the agreement of the parties relating to the issuance of Bonds by Company and relating to the matters set forth in this Agreement, and supersedes all prior contracts, agreements, and understandings of the parties, whether oral or written. This Agreement may not be changed or modified orally. No change or modification shall be effective unless made by written addendum executed to form a part hereof. For the purposes of recording or enforcing this Agreement, a photocopy or scanned electronic image or facsimile copy of the Agreement shall be regarded as an original for all purposes.

**EXHIBIT 2**

20. Representations and opportunity to review with counsel and Indemnitors own review of Principal. The Indemnitors represent and warrant to the Company that they have carefully read and understand this entire Agreement. No separate agreements or understandings change the terms of this Agreement, and no terms may be waived or changed without the surety's written approval. The Indemnitors represent and warrant to the Company that each of them has had the opportunity to consult with legal counsel regarding this Agreement, that each of them has read and understands this Agreement, that each of them is fully aware of the legal effect of this Agreement, and that each of them has entered into this Agreement freely and voluntarily based on their own independent judgment and not on any representation or promise, other than those contained in this Agreement. The Indemnitors represent and warrant that the execution of this Agreement results from arms-length negotiations between the parties. Further each of the Indemnitors represents and agrees that each has relied upon its own due diligence in making its own respective independent appraisal of the Principal and its business and financial condition, will continue to be responsible for making its own due diligence in making its own independent appraisal of such matters, and has not relied upon and will not rely upon the Company for information. The Indemnitors agree that the Company has no duty to inform any of the Indemnitors of the financial condition or other affairs related to the Principal.

21. Bond form. The Indemnitors acknowledge and agree that it is their sole responsibility to provide the proper forms for the Bonds to be executed by the Company, and to review and approve any bond and undertaking executed by the Company on its own forms. Neither the Company, nor its agents, shall have any liability whatsoever to the Indemnitors if they shall fail to furnish the Company with the proper forms or if they fail to object to forms furnished or executed by the Company. It shall be the sole responsibility of the Indemnitors to review all bond forms executed by the Company for appropriateness and for any errors or omissions before delivery of the Bonds to an obligee. The Company and its agents shall have no liability to the Indemnitors on account of any negligence (whether sole or concurrent), inadvertence, error or omission in the preparation, execution, or delivery of any Bonds. Before requesting that the Company issue any Bond, the Indemnitors shall obtain confirmation that the proposed obligee on the Bond will accept the Company as surety on the proposed Bond, and neither the Company, nor its agents, shall have any liability whatsoever if any obligee refuses, for whatever reason, to accept the Company as surety on any Bond. The Indemnitors agree that they shall be solely responsible for arranging, independent of the Company, for the timely delivery of any Bond to the obligee. The Company and its agents shall have no liability to the Indemnitors if any Bond is not timely delivered to any obligee for any reason whatsoever, including any negligent acts or omissions on the part of the Company or its agents.

22. Company's right to be discharged under any Bond. In its sole discretion, upon request by the Company, the Indemnitors shall be required to procure the discharge of the Company from any Bond and all liability by reason thereof. If the Indemnitors are unable to procure the discharge of the Company from any Bond, then the Indemnitors agree to deposit collateral acceptable to the Company to cover the penal amount of the Bond.

23. Jury trial waiver **THE INDEMNITORS WAIVE THEIR RIGHT TO REQUEST A JURY TRIAL IN ANY LAWSUIT OR PROCEEDING ARISING OUT OF THIS AGREEMENT. THE INDEMNITORS FURTHER WAIVE ANY RIGHT THEY MAY HAVE TO CONSOLIDATE ANY SUCH ACTION WITH AN ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED. THE INDEMNITORS ACKNOWLEDGE AND AGREE THAT THEY HAVE FULLY CONSIDERED THE PROVISIONS OF THIS SECTION, HAVE HAD THE OPPORTUNITY TO DISCUSS THIS PROVISION WITH AN ATTORNEY OF THEIR CHOOSING, AND HAVE AGREED TO THIS SECTION AT ARMS LENGTH, IN GOOD FAITH, AND WITHOUT COERCION OR DURESS.**

24. Other. **THE INDEMNITORS HEREBY ACKNOWLEDGE THAT THIS AGREEMENT IS INTENDED TO COVER WHATEVER BONDS (WHETHER OR NOT COVERED BY ANY OTHER AGREEMENT OF INDEMNITY SIGNED AT ANY TIME BY ANY ONE OR MORE OF THE INDEMNITORS - ALL OTHER AGREEMENTS OF INDEMNITY OF ANY KIND BEING SUPPLEMENTAL TO THIS), MAY BE EXECUTED BY THE SURETY ON BEHALF OF THE INDEMNITORS, OR ANY ONE OF THEM (WHETHER CONTRACTING ALONE OR AS A JOINT OR CO-ADVENTURER), FROM TIME TO TIME, AND OVER AN INDEFINITE PERIOD OF YEARS, UNTIL THIS AGREEMENT SHALL BE CANCELED IN ACCORDANCE \\i1TH THE TERMS HEREOF.**

25. Notice of Demand by Company to Indemnitors. The Company's demand under this Agreement to the Indemnitor shall be deemed to have been given, delivered or made, as the case may be (notwithstanding the lack of actual receipt by the addressee): (i) upon hand-delivery, (ii) three (3) business days after having been deposited in the United States mail, sufficient postage affixed and prepaid, (iii) one (1) business day after having been deposited with an expedited, overnight courier service (such as, by way of example but not limitation, U.S. Express Mail, Federal Express, UPS or DHL), or (iv) one (1) business day after having been sent facsimile or email, addressed to the party to whom notice is Intended to be given at the address(es) set forth below the signatures of the Indemnitors, or at any other address for any Indemnitor. Failure by Company to provide notice of a demand does not release the Indemnitors obligations under this Agreement.

26. Termination of Agreement. This Agreement may be terminated by the Indemnitors upon twenty (20) days written notice sent by registered or certified mail, with proof of delivery, to the Company and addressed to its Vice President of Contract Surety Department at 9025 N. Lindbergh Dr. Peoria, Illinois 61615; but any such notice of termination shall not operate to modify, bar, or discharge the Indemnitors of their obligations under this Agreement or as to any Bond that may have been executed before such termination. Any notice sent to any other address or any person other than Surety Claims Department of the Company as provided for in this paragraph shall not be effective to terminate this Agreement. Any oral notice to or constructive notice of termination to any agent or employee of Company shall not constitute notice of termination under this Agreement.

27. Choice of Law and Venue. This Agreement shall be governed and construed in accordance with the laws of the State of Illinois. Each party hereto irrevocably submits to the exclusive jurisdiction of the Courts of the State of Illinois, United States District Court Central District of Illinois with respect to any matter arising hereunder or related hereto.

28. **AUTHORIZATION TO CHECK CREDIT: Company and its agents are authorized to investigate the undersigned's credit (including, but not limited to, obtaining account numbers and/or account balances from financial institutions) and to obtain a consumer report or an investigative consumer report, now or at any time in the future, with any creditor, supplier, customer, financial institution, consumer reporting agency, and any other person or entity. Authorization is hereby granted, now or at any time in the future, to release information to Company, and/or its agents pertaining to the undersigned's credit, credit history, general reputation, personal consumer reports, investigative consumer reports, including but not limited to disclosing to Company and/or its agents, the undersigned's account numbers and/or account balances.**

IN WITNESS WHEREOF, we have hereunto set our hands and seals the day and year first above written.

**EXHIBIT 2**

If Indemnitor is a Corporation, Limited Liability Company, Partnership, Sole Proprietorship, Trust, or Individual, sign below.

Instructions: All signatures must be notarized. If the entity is: 1.) a corporation, an authorized officer should sign on behalf of the corporation; 2.) a limited liability company, the manager should sign on behalf of the LLC; 3.) a partnership, the authorized partner should sign on behalf of the partnership; 4.) a limited partnership, the general partner should sign on behalf of the limited partnership; 5.) a sole proprietorship or individual indemnitor, provide social security number and residential address. 6.) a trust, all trustees should sign.

Each of the undersigned hereby affirms to the Company as follows; I am a duly authorized official of the business entity Indemnitor on whose behalf I am executing this Agreement. In such capacity I am familiar with all the documents which set forth and establish the rights which govern the affairs, power and authority of such business including, to the extent applicable, the certificate or articles of incorporation, bylaws, corporate resolutions, and/or partnership, operating or limited liability agreements of such business entity. Having reviewed all such applicable documents and instruments and such other facts as deemed appropriate, I hereby affirm that such entity has the power and authority to enter into this Agreement and that the individuals executing this Agreement on behalf of such entity are duly authorized to do so.

Address: [redacted]

Indemnitor:

Briggs Brothers Enterprises Corporation
(Full Name of Indemnitor)

By: _____
(Signature)

Terry Briggs
(Name)

President
(Title)

Corporate Acknowledgement

State of Texas
ss.
County of Harris

On this _____ day of _____, _____, before me personally appeared Terry Briggs known by me to be the President of Briggs Brothers Enterprises Corporation, the corporation described in and which executed the foregoing General Agreement of Indemnity; and who being by me duly sworn, depose and say that (s)he knows the seal of said corporation; that the seal affixed to said Agreement is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that (s)he signed his/her name thereto by like order.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

(Signature of Notary Public)

Notary Public, Residing at Houston Tx
My commission expires: 05-23-2020

LEANNA ESTRADA
Notary Public, State of Texas
Comm. Expires 05-23-2020
Notary ID 130672743

Address: ███████████████                          Indemnitor:

                                                                    Terry Briggs
                                                           By: _____
                                                                     (Signature)

Individual Acknowledgement

State of Texas
ss.
County of Harris

On this 6 day of January, 2020, before me personally appeared Terry Briggs, known by me to be the person who is identified in and who executed the foregoing General Agreement of Indemnity, and who being by me duly sworn, deposes and says that (s)he executed said Agreement.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

_____
(Signature of Notary Public)

Notary Public, Residing at Houston TX
My commission expires: 5-23-2020

LEANNA ESTRADA
Notary Public, State of Texas
Comm. Expires 05-23-2020
Notary ID 130672743


Address: ███████████████                          Indemnitor:

                                                                    Shawna Briggs
                                                           By: _____
                                                                     (Signature)

Individual Acknowledgement

State of Texas
ss.
County of Harris

On this 6 day of January, 2020, before me personally appeared Shawna Briggs, known by me to be the person who is identified in and who executed the foregoing General Agreement of Indemnity, and who being by me duly sworn, deposes and says that (s)he executed said Agreement.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

_____
(Signature of Notary Public)

Notary Public, Residing at Houston TX
My commission expires: 5-23-2020

LEANNA ESTRADA
Notary Public, State of Texas
Comm. Expires 05-23-2020
Notary ID 130672743

**EXHIBIT 2**