# EXHIBIT A

THE SECURITIES TO WHICH THIS PRIVATE PLACEMENT SUBSCRIPTION AGREEMENT RELATES HAVE NOT BEEN AND WILL NOT BE REGISTERED WITH THE SECURITIES AND EXCHANGE COMMISSION OR THE SECURITIES COMMISSION OF ANY STATE, AND WILL BE ISSUED IN RELIANCE UPON AN EXEMPTION FROM REGISTRATION UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (THE "1933 ACT") AND APPLICABLE SECURITIES LAWS, AND, ACCORDINGLY, MAY NOT BE OFFERED OR SOLD EXCEPT PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT UNDER THE 1933 ACT OR PURSUANT TO AN AVAILABLE EXEMPTION FROM, OR IN A TRANSACTION NOT SUBJECT TO, THE REGISTRATION REQUIREMENTS OF THE 1933 ACT AND IN ACCORDANCE WITH APPLICABLE STATE SECURITIES LAWS.

## NexTech AR Solutions Corp.

(the "Issuer")

## SUBSCRIPTION AGREEMENT

Units

### THE ISSUER IS NOT A REPORTING ISSUER

---

The Units (the "Units") will be sold on a non-brokered private placement basis at a price of $0.25 per Unit. Each Unit will consist of one (1) common share of the Issuer (each, a "Share") and one (1) common share purchase warrant (each, a "Warrant"), with each Warrant entitling the holder thereof to purchase one additional common share (each, a "Warrant Share") of the Issuer at a price of $0.50 per Warrant Share for a period of twenty-four (24) months from their date of issue, subject to accelerated expiry upon the occurrence of certain events set out herein. The Units will be offered pursuant to exemptions from the registration and prospectus requirements of applicable securities legislation. The Subscriber must be purchasing as principal or deemed under applicable securities laws to be purchasing as principal.

The Subscriber acknowledges that the Issuer is not a reporting issuer in any jurisdiction of Canada, and the common shares of the Issuer are not listed for trading on any stock exchange. There can be no assurance that the Issuer will ever become a reporting issuer in a jurisdiction of Canada or that the Shares will ever be listed and posted for trading on any stock exchange.

### INSTRUCTIONS FOR COMPLETING THIS SUBSCRIPTION PRIOR TO DELIVERY TO THE ISSUER

1.  The subscriber (the "Subscriber") must complete the information required on page 3 with respect to subscription amounts, subscriber details, and alternate registration and delivery particulars (if applicable).

2.  The Subscriber must complete the applicable forms (the "Forms") at the end of Schedule "B":

    (a)  All Subscribers must complete Form 1 – "Certificate for Exemption".

    (b)  All Subscribers who are individuals and subscribing pursuant to section (j), (k) or (l) of the definition of "accredited investor" in National Instrument 45-106 Prospectus Exemptions ("NI 45-106") must complete and execute Form 1, Schedule 1 – "Form 45-106F9: Form for Individual Accredited Investors".

    (c)  All Subscribers who are resident in Ontario and subscribing pursuant to the Friends, Family and Business Associates exemption in NI 45-106 must complete and execute Form 1, Schedule 2 - "Form 45-106F12: Risk Acknowledgment Form for Family, Friend and Business Associate Investors".

    (d)  All Subscribers who are residents of Saskatchewan and who are 'family, friends or business associates" must complete and execute Form 1A – "Risk Acknowledgement – Saskatchewan Close Personal Friends and Business Associates".

    (e)  All Subscribers who are U.S. Purchasers (as defined in section 1.1 of Schedule "A" herein) must complete Form 2 – "Certificate of U.S. Accredited Investor Status".

    (f)  All Subscribers must complete Form 3 – "Acknowledgement and Direction".

3.  Return this subscription together with all applicable Forms to the Issuer at Suite 510, 580 Hornby Street, Vancouver, British Columbia, V6C 3B6, with payment for the total subscription price for the subscribed for Units by way of a certified cheque, money order or bank draft made payable to "Cassels Brock & Blackwell LLP In Trust" or by wire to:

| | |
|---|---|
| Beneficiary Bank: | Bank of Nova Scotia |
| Institution Number: | 002 |
| Swift Address: | NOSCCATT |
| Transit Number: | 47696 |
| ABA Routing Number: | 026 002 532 |
| Address: | Toronto Business Centre, 44 King Street West |
| | Toronto, Ontario  M5H 1H1 |

Beneficiary Name and Account Number:

| | |
|---|---|
| Name of Beneficiary: | Cassels Brock and Blackwell LLP (in trust) |
| | Suite 2200, 885 West Georgia Street, Vancouver, British Columbia, V6C 3E8 |

| | |
|---|---|
| Account Type: | Canadian Dollar Trust Account Number: |
| Account Number: | 476961197118 |

| | |
|---|---|
| References: | The following MUST be referenced on the wire instructions: |
| | NEXTECH AR SOLUTIONS CORP. and REMITTER'S NAME |

EVANS-FRANKLIN 000002

TO: NexTech AR Solutions Corp.

1. The Subscriber irrevocably subscribes for and agrees to purchase from the Issuer the following securities:

    Number of Units at $0.25 each:

    Total subscription price for the subscribed Units: $\underline{\text{\$}\phantom{xxxxxxxxxxxxxxxxxxxxxxxx}}$
    (total subscription amounts must not be less than $50,000)

2. The Subscriber and the Issuer agree that the offering of the Units shall be on the terms and conditions specified in Schedules "A" and "B" hereto. The Subscriber hereby makes the representations, warranties, acknowledgments and agreements set out in Schedules "A" and "B" hereto and in all applicable Forms, and acknowledges and agrees that the Issuer and its respective counsel will and can rely on such representations, warranties, acknowledgments and agreements should this subscription be accepted.

3. Identity of and execution by Subscriber:

| BOX A: SUBSCRIBER INFORMATION AND EXECUTION |
|---|
| (name of subscriber) |
| (address – include city, province and postal code) |
| (telephone number)   (email address)    X (signature of subscriber/authorized signatory) |
| (if applicable, print name of signatory and office) |

Execution hereof by the Subscriber shall constitute an offer and agreement to subscribe for the Units set out in Item 1 above pursuant to the provisions of Item 2 above, and acceptance by the Issuer shall effect a legal, valid and binding agreement between the Issuer and the Subscriber. This subscription may be executed and delivered by facsimile, and shall be deemed to bear the date of acceptance below.

4. If the Units are to be registered other than as set out in Box A, the Subscriber directs the Issuer to register and deliver the Units as follows:

| BOX B: ALTERNATE REGISTRATION INSTRUCTIONS |
|---|
| (name of registered holder) |
| (address of registered holder – include city, province and postal code) |
| (registered holder: contact name, contact telephone number and contact email address) |

5. If the Units are to be delivered other than as set out in Box A (or if completed, Box B):

| BOX C: ALTERNATE DELIVERY INSTRUCTIONS |
|---|
| (name of recipient) |
| (address of recipient – include city, province and postal code) |
| (recipient: contact name, contact telephone number and contact email address) |

6.  If the Subscriber is purchasing as agent for a principal, and is not a trust company or trust corporation purchasing as trustee or agent for accounts fully managed by it or is not a person acting on behalf of an account fully managed by it (and in each such case satisfying the criteria set forth in NI 45-106), complete Box D below and provide as a separate attachment the personal information required on page 6 and all applicable Forms on behalf of such principal (a "Disclosed Principal"):

---

**BOX D: IDENTIFICATION OF PRINCIPAL**

_____

(name of Disclosed Principal)

_____

(address of Disclosed Principal – include city, province and postal code)

_____

(Disclosed Principal: contact name, contact telephone number and contact email address)

---

[Signature page to follow]

EVANS-FRANKLIN 000004

<u>ACCEPTANCE</u>

| | | |
|---|---|---|
| This subscription is accepted and agreed to by the Issuer | ) | NexTech AR Solutions Corp. |
| | ) | |
| as of the _____ day of _____, 2018. | ) | |
| | ) | Per: _____ |
| | ) |      Authorized Signatory |

EVANS-FRANKLIN 000005

<u>SCHEDULE A</u>

1.    <u>Interpretation</u>

1.1    Unless the context otherwise requires, reference in this subscription to:

(a)    "Applicable Securities Laws" means the Securities Act or analogous legislation of the Selling Jurisdictions and all rules, regulations, policies, orders, notices and other instruments incidental thereto;

(b)    "Closing" refers to the completion of the purchase and sale of the Units, and if the purchase and sale occurs in two or more tranches, the "Closing" for purposes of any particular Unit shall be the completion of the purchase and sale of that particular Unit;

(c)    "Closing Date" means the date on which the Closing shall occur;

(d)    "Exchange" means any of the Toronto Stock Exchange, the TSX Venture Exchange, or the Canadian Securities Exchange;

(e)    "Going Public Transaction" means (i) a listing of the common share capital of the Issuer on any Exchange; (ii) the acquisition of the Issuer by an existing company listed on any Exchange, such that the resulting effect is that holders of the common share capital of the Issuer receive shares in the capital of the resulting public company; (iii) the assignment or transfer of substantially all of the assets or undertaking of the Issuer to an existing company listed on any Exchange; or (iv) any other type of transaction whatsoever which results in the current holders of the common share capital of the Issuer receiving shares of a company listed on the Exchange in exchange for their existing shares;

(f)    "NI45-102" and "NI45-106" refer to National Instrument 45-102 and National Instrument 45-106, respectively, of the Canadian Securities Administrators;

(g)    "Offering" has the meaning set forth in Section 2.1 of this Schedule "A";

(h)    "Securities" means, collectively, the Units, the Shares, the Warrants and the Warrant Shares, and for the purposes of a Going Public Transaction shall include any securities which may be issued to holders of such securities of the Issuer in the event the securities are exchanged for securities of an existing company listed on any Exchange in connection with a Going Public Transaction;

(i)    "Selling Jurisdictions" refers to all jurisdictions where the Units are sold;

(j)    "subscription" or "subscription agreement" means this subscription agreement and includes all schedules hereto and the Forms;

(k)    "U.S. Person" means a (a) U.S. Person as that term is defined in Rule 902(o) of Regulation S ("Regulation S") promulgated under the U.S. Securities Act, (b) any person purchasing securities on behalf or the account or benefit of any "U.S. Person" or any person in the United States, (c) any person that receives or received an offer of the securities while in the United States, (d) any person that is in the United States at the time the purchaser's buy order was made or this subscription was executed or delivered. "U.S. person" includes but is not limited to (i) any natural person resident in the United States; (ii) any partnership or corporation organized or incorporated under the laws of the United States; (iii) any partnership or corporation organized outside the United States by a U.S. person principally for the purpose of investing in securities not registered under the U.S. Securities Act, unless it is organized or incorporated, and owned, by accredited investors who are not natural persons, estates or trusts; (iv) any estate or trust of which any executor or administrator or trustee is a U.S. person;

(l)    "U.S. Securities Act" means the United States Securities Act of 1933, as amended;

(m)    "Warrants" means each transferable common share purchase warrant of the Issuer entitling the holder thereof to purchase one Warrant Share at a price of $0.50 per Warrant Share for a period of twenty-four (24) months from the date the Warrants are issued, subject to accelerated expiry upon the occurrence of certain events; and

**EVANS-FRANKLIN 000006**

(n)  "Warrant Shares" mean the previously unissued common shares of the Issuer issuable upon the due exercise of the Warrants in accordance with the terms set out therein including payment therefore.

1.2  In the subscription, the following terms have the meanings defined in Regulation S: "designated offshore securities market", "directed selling efforts", "foreign issuer" and "United States".

1.3  Unless otherwise stated, all dollar figures herein expressed are in Canadian Dollars.

1.4  References imputing the singular shall include the plural and vice versa; references imputing individuals shall include corporations, partnerships, societies, associations, trusts and other artificial constructs and vice versa; and references imputing gender shall include the opposite gender.

2.  <u>Description of Offering and Securities</u>

2.1  The Issuer is offering (the "Offering") up to 8,000,000 Units at a price of $0.25 per Unit for gross proceeds of up to $2,000,000.  Each Unit will consist of one Share and one Warrant, with each Warrant entitling the holder thereof to purchase one Warrant Share at a price of $0.50 per Warrant Share for a period of twenty-four (24) months from the date the Warrants are issued.  If, at any time following completion of a Going Public Transaction, the closing price of the Issuer's common shares on the Exchange is $0.75 or more for the preceding ten (10) consecutive trading days, the Issuer will have the right to accelerate the expiry of the Warrants by giving notice, via news release, of its exercise of such right and thereafter the Warrants will, without further notice or act by Issuer, automatically expire and be of no further force and effect at 5:00 p.m. (Vancouver time) on the date that is thirty (30) days after the date of said news release.  For greater certainty, the non-receipt by any one or more holders of the Warrants of such notice shall not invalidate the accelerated expiry of all the Warrants as aforesaid.

In the event a Going Public Transaction involves the exchange of the Warrants for securities of an existing public company listed on the Exchange, the exercise price of the Warrants and the applicable trigger price for the acceleration of the expiry date of those Warrants will be adjusted to account for the exchange ratio used to exchange common shares of the Issuer for common shares of the existing public company.

2.2  The Offering is not subject to any minimum aggregate amount and there can be no guarantees that the Issuer will raise sufficient funds to meet its present or future objectives.

2.3  The completion of transactions contemplated in this Subscription is subject to the following conditions:

(a)  the receipt by the Issuer from the Subscriber, in form and content satisfactory to the Issuer in its sole discretion, of any other documents required by Applicable Securities Laws which the Issuer requests;

(b)  the truth, at the time of acceptance and as at Closing, of the Subscriber's representations and warranties under this agreement; and

(c)  the performance by the Subscriber of its covenants under this agreement.

3.  <u>Eligibility and Subscription Procedure</u>

3.1  The Offering is being made pursuant to exemptions (the "Exemptions") from the registration and prospectus requirements of Applicable Securities Laws.  The Subscriber acknowledges and agrees that the Issuer and its respective counsel will and can rely on the representations, warranties, acknowledgments and agreements of the Subscriber contained in this subscription and otherwise provided by the Subscriber to the Issuer to determine the availability of Exemptions should this subscription be accepted.

3.2  The Offering is not, and under no circumstances is to be construed as, a public offering of the Securities.  The Offering is not being made, and this subscription does not constitute, an offer to sell or the solicitation of an offer to buy the Securities in any jurisdiction where, or to any person to whom, it is unlawful to make such offer or solicitation.

3.3  Subscribers must duly complete and execute this subscription together with all applicable Forms hereto (please see the Instructions listed on the face page hereof) and return them to the Issuer with payment for the total subscription price for the subscribed Units by way of a certified cheque, money order or bank draft made payable to "Cassels Brock & Blackwell LLP In Trust" or by wire as set out on the face page hereof.

EVANS-FRANKLIN 000007

3.4    Subscriptions are irrevocable.  Prior to the Closing, the subscription price for the subscribed Units may be freely used by the Issuer, and such funds shall be deemed to be a non-interest bearing loan from the Subscriber to the Issuer until the issuance of the Units against such funds or the funds are otherwise returned to the Subscriber in whole or in part as provided for in Article 4.

3.5    A subscription will only be effective upon its acceptance by the Issuer.  Subscriptions will only be accepted if the Issuer is satisfied that, and will be subject to a condition for the benefit of the Issuer that, the Offering can lawfully be made in the jurisdiction of residence of the Subscriber pursuant to an available Exemption and that all other Applicable Securities Laws have been and will be complied with in connection with the proposed distribution.  The Issuer reserves the right to accept this subscription in whole or in part.

3.6    No disclosure document has been prepared or will be delivered to the Subscriber in connection with the Offering, and the Subscriber hereby expressly acknowledges and confirms that it has not received, and has no need for, any disclosure document in connection with the Offering.

4.    <u>Closing Procedure</u>

4.1    The Offering will be completed at one or more Closings at such time or times, on such date or dates, and at such place or places, as the Issuer may determine.  At each Closing, the Issuer will deliver certificates representing the Units to those Subscribers whose subscriptions have been accepted.

4.2    In the event that the purchase and sale of the Units contemplated by this subscription is not otherwise completed or only completed in part, the Issuer shall, as the case may be, immediately return this subscription and the total subscription price for the subscribed Units or return the part of the part of the subscription price representing the number of Units in respect of which this subscription was not completed, all without interest or deduction.

5.    <u>Reporting and Consent</u>

5.1    The Subscriber, on its own behalf and on behalf of any other person for whom it is contracting hereunder, expressly consents and agrees to:

(a)    the Issuer collecting personal information regarding the Subscriber for the purpose of completing the transactions contemplated by this subscription; and

(b)    the Issuer releasing personal information regarding the Subscriber, and this Subscription, to securities regulatory authorities in compliance with Applicable Securities Laws and to other authorities as required by law.

The purpose of the collection of the information is to ensure the Issuer and its advisors will be able to issue Securities to the Subscriber in accordance with the instructions of the Subscriber and in compliance with applicable corporate, securities and other laws, and to obtain the information required to be provided in documents required to be filed with securities regulatory authorities under Applicable Securities Laws and with other authorities as required, which may include their public disclosure of such information. The Subscriber, on its own behalf and on behalf of any other person for whom it is contracting hereunder, further expressly consents and agrees to the collection, use and disclosure of all such personal information by securities regulatory authorities and other authorities in accordance with their requirements.

The contact information for the officer of the Issuer who can answer questions about the collection of information by the Issuer is as follows:

Name & Title:    Evan Gappelberg. Chief Executive Officer
Issuer Name:     NexTech AR Solutions Corp.
Address:         Suite 510, 580 Hornby Street, Vancouver, British Columbia, V6C 3B6
Email Address:   evan@nextechar.com

6.    <u>Resale Restrictions and Legending of Securities</u>

6.1    The Subscriber hereby acknowledges and agrees that the Offering is being made pursuant to Exemptions and, as a result, the Securities will be subject to a number of statutory restrictions on resale and trading.  Until these restriction expire, the

**EVANS-FRANKLIN 000008**

Subscriber will not be able to sell or trade the Securities unless the Subscriber complies with an exemption from the prospectus and registration requirements under Applicable Securities Laws. In general, unless permitted under Applicable Securities Laws, the Subscriber cannot trade the Securities in Canada until the Issuer becomes a reporting issuer in a jurisdiction of Canada. See also section 6.3 below.

6.2 The Subscriber acknowledges and agrees that:

(a) the constating documents of the Issuer provide that the Securities may not be sold, transferred or disposed of without the consent of the Issuer's directors, which can effectively be withheld at the discretion of the directors;

(b) the Issuer is not a reporting issuer in any jurisdiction, and has no present intention to become a reporting issuer in any jurisdiction;

(c) the Securities will not be listed or posted for trading on any stock exchange in any jurisdiction, and the Issuer has no present intention to list its common shares on any stock exchange;

(d) the Securities have not been and will not be registered under the U.S. Securities Act, or any State securities laws, and may not be offered and sold, directly or indirectly, in the United States or by or to or for the account or benefit of a U.S. Person without registration under the U.S. Securities Act and any applicable State securities laws, unless an exemption from registration is available;

(e) the Issuer has no present intention and is not obligated under any circumstances to register the Securities, or to take any other actions to facilitate or permit any proposed resale or transfer thereof in the United States or otherwise by or to or for the account or benefit of a U.S. Person, and in particular, the Subscriber and the Issuer further acknowledge and agree that the Issuer is hereby required to refuse to register any transfer of the Securities not made in accordance with the provisions of Regulation S, pursuant to registration under the U.S. Securities Act, or pursuant to an available exemption from registration.

6.3 The foregoing discussion on hold periods and resale restrictions is a general summary only and is not intended to be comprehensive or exhaustive, or to apply in all circumstances. Subscribers are advised to consult with their own advisors concerning their particular circumstances and the particular nature of the restrictions on transfer, the extent of the applicable hold period and the possibilities of utilizing any further Exemptions or the obtaining of a discretionary order to transfer any Securities. Subscribers are further advised against attempting to resell or transfer any Securities until they have determined that any such resale or transfer is in compliance with the requirements of all Applicable Securities Laws and the terms of this Subscription, including but not limited to compliance with restrictions on certain pre-trade activities and the filing with the appropriate regulatory authority of reports required upon any resale of the Securities.

6.4 To evidence the applicable hold periods and restrictions on resale and transferability prescribed by Applicable Securities Laws, the Issuer will place a legend on the certificates representing the Securities as are required under Applicable Securities Laws, or as it may otherwise deem necessary or advisable.

6.5 The Subscriber agrees that in the event the Issuer completes a Going Public Transaction, the Subscriber will enter into any escrow or voluntary pooling agreements as may be required by any regulatory authority or by any broker, investment dealer or sponsor retained by the Issuer in respect of such a transaction, and further agrees to execute any documents as may be required to put such escrow or pooling agreements into effect.

7. <u>Finder's Fees</u>

7.1 Subject to compliance with applicable laws, the Issuer may pay a finder's fee or commission to persons who assist in the introduction of investors to the Issuer, which without limiting the foregoing may include cash, common shares and/or convertible securities. No finder's fee will be payable in respect of Units sold pursuant to Section 4(2) of the U.S. Securities Act and Rule 506 of Regulation D ("Regulation D") promulgated under the U.S. Securities Act to a finder who is not registered as a broker-dealer under the United States Securities Exchange Act of 1934, as amended, and applicable state securities laws, or unless such finder is exempt from such registration requirements.

EVANS-FRANKLIN 000009

8.    <u>Miscellaneous</u>

8.1     The Subscriber acknowledges and agrees that all costs and expenses incurred by the Subscriber, including any fees and disbursements of any special counsel retained by the Subscriber, relating to the purchase, resale or transfer of the Securities shall be borne by the Subscriber.

8.2     Each party to this subscription covenants that it will, from time to time both before and after the Closing, at the request and expense of the requesting party, promptly execute and deliver all such other notices, certificates, undertakings, escrow agreements and other instruments and documents, and shall do all such other acts and other things, as may be necessary or desirable for the purposes of carrying out the provisions of this subscription.

8.3     Except as expressly provided for in this subscription and in any agreements, instruments and other documents contemplated or provided for herein, this subscription contains the entire agreement between the parties with respect to the sale of the Securities and there are no other terms, conditions, representations, warranties, acknowledgments and agreements, whether expressed or implied, whether written or oral, and whether made by statute, common law, the parties hereto or anyone else.  This subscription may only be amended by instrument in writing signed by the parties hereto.

8.4     The invalidity or unenforceability of any particular provision of this subscription or any part thereof shall not affect or limit the validity or enforceability of the remaining provisions of this subscription or part thereof.

8.5     This subscription, including without limitation the terms, conditions, representations, warranties, acknowledgments and agreements contained herein, shall survive and continue in full force and effect and be binding upon the Subscriber and the Issuer notwithstanding the completion of the purchase and sale of the Securities, the conversion or exercise thereof and any subsequent disposition thereof by the Subscriber.

8.6     This subscription is not transferable or assignable.  This subscription shall enure to the benefit of and be binding upon the parties hereto and their respective successors and permitted assigns.

8.7     This subscription is governed by the laws of the Province of British Columbia and the federal laws of Canada applicable therein.  The Subscriber, in his personal or corporate capacity, irrevocably attorns to the jurisdiction of the courts of the Province of British Columbia.

8.8     Time shall be of the essence hereof.

8.9     This subscription may be executed in as many counterparts as may be necessary and delivered by facsimile, and such counterparts and facsimiles shall be deemed to constitute one and the same original instrument.  Without limiting the foregoing, the Issuer may rely on facsimile delivery of this subscription, and acceptance of such facsimile shall be effective to create a valid and binding agreement between the Subscriber and the Issuer.

EVANS-FRANKLIN 000010

<u>SCHEDULE B</u>

1.    <u>Representations, Warranties, Acknowledgments and Agreements of the Subscriber</u>

1.1    The Subscriber hereby represents, warrants, certifies, acknowledges and agrees for the benefit of the Issuer and its respective counsel that:

(a)    the Subscriber is resident in the jurisdiction set out on page 3 above, and if such address is not located in British Columbia, the Subscriber expressly certifies that it is not resident in British Columbia;

(b)    no securities commission or similar regulatory authority has reviewed or passed on the merits of the Securities, and in particular no governmental agency or authority, stock exchange or other regulatory body or any other entity has made any finding or determination as to the merit for investment of, nor have any such agencies, authorities, exchanges, bodies or other entities made any recommendation or endorsement with respect to, the Securities;

(c)    there is no government or other insurance covering the Securities;

(d)    there are risks associated with the purchase of the Securities, being speculative investments which involve a substantial degree of risk;

(e)    there are restrictions on the Subscriber's ability to resell the Securities and it is the responsibility of the Subscriber to find out what those restrictions are and to comply with them before selling the Securities;

(f)    the Issuer is not a reporting issuer under the laws of any jurisdiction, and its common shares are not listed or posted for trading on stock exchange;

(g)    the Issuer has advised the Subscriber that it is relying on one or more exemptions from the requirements to provide the Subscriber with a prospectus and to sell securities through a person registered to sell securities under the Applicable Securities Laws, and as a consequence of acquiring the Securities pursuant to such exemption, certain protections, rights and remedies provided in applicable securities legislation, including statutory rights of rescission or damages, may not be available to it;

(h)    the Subscriber has been further advised that due to the fact that no prospectus has been or is required to be filed with respect to any of the Securities under Applicable Securities Laws (i) the Subscriber may not receive information that might otherwise be required to be provided to it under such legislation, (ii) the Issuer is relieved from certain obligations that would otherwise apply under applicable legislation, and (iii) the Subscriber is restricted from using certain of the civil remedies available under such legislation;

(i)    no person has made to the Subscriber any written or oral representations (i) that any person will resell or repurchase the Securities, (ii) that any person will refund the purchase price for the Securities, (iii) as to the future price or value of the Securities, or (iv) that the Securities will be listed and posted for trading on any stock exchange or that application has been made to list the common shares of the Issuer on any stock exchange;

(j)    the Subscriber is capable by reason of knowledge and experience in financial and business matters in general, and investments in particular, of assessing and evaluating the merits and risks of an investment in the Securities, and is and will be able to bear the economic loss of its entire investment in any of the Securities and can otherwise be reasonably assumed to have the capacity to protect its own interest in connection with the investment;

(k)    the Subscriber has been advised to consult its own investment, legal and tax advisors with respect to the merits and risks of an investment in the Securities, Applicable Securities Laws and applicable resale restrictions, and in all cases the Subscriber has not relied upon the Issuer or its respective counsel or advisors for investment, legal or tax advice, always having, if desired, in all cases sought the advice of the Subscriber's own personal investment advisor, legal counsel and tax advisors, and in particular, the Subscriber has been advised and understands that it is solely responsible, and neither the Issuer nor its respective counsel or advisors are in any way responsible, for the Subscriber's compliance with Applicable Securities Laws and with applicable resale restrictions regarding the holding and disposition of the Securities;

**EVANS-FRANKLIN 000011**

(l)    to the knowledge of the Subscriber, the Offering was not advertised or solicited in any manner in contravention of Applicable Securities Laws, and has not been made through or as a result of any general solicitation or general advertising or any seminar or meeting whose attendees have been invited by general solicitation or general advertising;

(m)    the Subscriber has no knowledge of a "material fact" or "material change", as those terms are defined in the Applicable Securities Laws applicable in its jurisdiction of residence, in respect of the affairs of the Issuer that has not been generally disclosed to the public;

(n)    the Subscriber is not an investment club;

(o)    the Subscriber has the legal capacity and competence to enter into and execute this subscription and to take all actions required pursuant hereto, and if the Subscriber is not an individual, it is also duly formed and validly subsisting under the laws of its jurisdiction of formation and all necessary approvals by its directors, shareholders, partners and others have been obtained to authorize the entering into and execution of this subscription and the taking of all actions required hereto on behalf of the Subscriber;

(p)    the Subscriber has duly and validly entered into, executed and delivered this subscription and it constitutes a legal, valid and binding obligation of the Subscriber enforceable against it in accordance with its terms subject to applicable bankruptcy, insolvency, reorganization, moratorium and other laws of general application affecting the enforcement of creditors' rights generally and as limited by laws relating to the availability of equitable remedies;

(q)    the entering into of this subscription and the transactions contemplated hereby does not and will not, conflict with, result in a violation or breach of, or constitute a default under, any of the terms and provisions of any law, regulation, order or ruling applicable to the Subscriber, or of any agreement, contract or indenture, written or oral, to which it is or may be a party or by which it is or may be bound, or, if the Subscriber is a corporation, its constating documents or any resolutions of its directors or shareholders;

(r)    with respect to compliance with the U.S. Securities Act:

(i)    none of the Securities have been registered under the U.S. Securities Act, or under any state securities or "blue sky" laws of any state of the United States, and, unless so registered, may not be offered or sold except pursuant to an effective registration statement under the U.S. Securities Act or pursuant to an exemption from, or in a transaction not subject to, the registration requirements of the U.S. Securities Act;

(ii)    the Subscriber is neither an underwriter of, or dealer in, the common shares of the Issuer, nor participating, pursuant to a contractual agreement or otherwise, in the distribution of the Securities;

(iii)    the Subscriber is acquiring the Securities for investment only and not with a view to resale or distribution and, in particular, has no intention to distribute, directly or indirectly, all or any of the Securities in the United States or to U.S. Persons or to persons in the United States, and the Subscriber does not have any agreement or understanding (either written or oral) with any U.S. Person or person in the United States respecting (A) the transfer or assignment of any rights or interests in any of the Securities; (B) the division of profits, losses, fees, commissions, or any financial stake in connection with this subscription or the Securities; or (C) the voting of any securities offered hereby or underlying any securities offered hereby;

(iv)    the Subscriber does not intend to and will not engage in hedging transactions with regard to the Securities unless in compliance with the U.S. Securities Act;

(v)    any person who acquires Securities may at the Issuer's discretion be required to provide the Issuer with written certification that it is not a U.S. Person or person in the United States and that the Securities are not being acquired, directly or indirectly, for the account or benefit of a U.S. Person or person in the United States; and

EVANS-FRANKLIN 000012

(vi)    the current structure of this transaction and all transactions and activities contemplated hereunder, and the Subscriber's participation therein, is not a scheme to avoid the registration requirements of the U.S. Securities Act;

(s)    unless the Subscriber has completed Form 2 – Certificate of U.S. Accredited Investor Status, attached hereto:

(i)    the Subscriber is not a U.S. Person or person in the United States and is not acquiring the Securities, directly or indirectly, for the account or the benefit of a U.S. Person or person in the United States;

(ii)    the Securities have not been offered to the Subscriber while the Subscriber was in the United States, and the individuals making the order to purchase the Securities and executing and delivering this subscription for the account or benefit of the Subscriber were not in the United States when the order was placed or when this subscription was executed and delivered; and

(iii)    the Subscriber is not purchasing the Units as the result of any "directed selling efforts"; and

(t)    if the Subscriber has completed Form 2 – Certificate of U.S. Accredited Investor Status, attached hereto:

(i)    the Subscriber, by completing Form 2 – Certificate of U.S. Accredited Investor Status, is representing and warranting to the Issuer that the Subscriber is an "accredited investor" as the term is defined in Regulation D, and that all information contained in the Subscriber's completed Form 2 – Certificate of U.S. Accredited Investor Status is complete and accurate in all respects and may be relied upon by the Issuer;

(ii)    the Subscriber will not acquire the Securities as a result of, and will not itself engage in, any activities undertaken for the purpose of, or that could reasonably be expected to have the effect of, conditioning the market in the United States for the resale of any of the Securities; provided, however, that the Subscriber may sell or otherwise dispose of any of the Securities pursuant to registration thereof under the U.S. Securities Act and any applicable state securities laws or under an exemption from such registration requirements;

(iii)    the Subscriber and its advisor(s) have had a reasonable opportunity to ask questions of and receive answers from the Issuer in connection with the distribution of the Securities hereunder, and to obtain additional information, to the extent possessed or obtainable without unreasonable effort or expense, necessary to verify the accuracy of the information about the Issuer;

(iv)    the Subscriber hereby acknowledges that that upon the issuance thereof, and until such time as the same is no longer required under the applicable securities laws and regulations, the certificates representing any of the Securities will bear legends in substantially the form set forth on Form 2 hereto;

(v)    the Issuer will refuse to register any transfer of the Securities not made pursuant to an effective registration statement under the U.S. Securities Act or pursuant to an available exemption from the registration requirements of the U.S. Securities Act; and

(vi)    the statutory and regulatory basis for the exemption claimed for the offer of the Securities would not be available if the Offering is part of a plan or scheme to evade the registration provisions of the U.S. Securities Act.

1.2    The Subscriber hereby represents, warrants, acknowledges and agrees for the benefit of the Issuer and its respective counsel that it is purchasing the Securities as principal (or is deemed under applicable securities laws to be doing so), not for the benefit of any other person and not with a view to the resale or distribution of all or any of the Securities, and:

(a)    in respect of all Subscribers resident in or otherwise subject to the securities laws of a Province of Canada other than Ontario, it is:

(i)    a person described in section 2.3 of NI45-106 by virtue of being an "accredited investor" as defined in NI45-106, and provided that it is not a person that is or has been created or used solely to purchase or

hold securities as an "accredited investor" as described in paragraph (m) of the definition of "accredited investor" in NI45-106;

(ii) a person described in section 2.5 of NI45-106 by virtue of being (A) a director, executive officer or control person of the Issuer or of an affiliate of the Issuer; (B) a spouse, parent, grandparent, brother, sister, child or grandchild of a director, executive officer or control person of the Issuer or an affiliate of the Issuer; (C) a parent, grandparent, brother, sister, child or grandchild of the spouse of a director, executive officer or control person of the Issuer or of an affiliate of the Issuer; (D) a close personal friend or close business associate of a director, executive officer or control person of the Issuer or of an affiliate of the Issuer; (E) a founder of the Issuer or a spouse, parent, grandparent, brother, sister, child, close personal friend or close business associate of a founder of the Issuer; (F) a parent, grandparent, brother, sister or child of a spouse of a founder of the Issuer; (G) a person of which a majority of the voting securities are beneficially owned by, or a majority of the directors are, persons described in paragraphs 1.2(a)(ii)(A) to 1.2(a)(ii)(F); or (H) a trust or estate of which all of the beneficiaries or a majority of the trustees are persons described in paragraphs 1.2(a)(ii)(A) to 1.2(a)(ii)(F);

(iii) a person described in section 2.10 of NI45-106 by virtue of the Units having an acquisition cost to the purchaser of not less than $150,000 paid in cash, and provided that it is not a person that is or has been created or used solely to purchase or hold securities in reliance on the exemption provided by section 2.10 of NI45-106, and further provided that if it is resident in or otherwise subject to the securities laws of Alberta, no document purporting to describe the business and affairs of the Issuer, which has been prepared for review by prospective purchasers to assist such prospective purchasers in making an investment decision in respect of the Units, has been delivered to or summarized for or seen by or requested by the Subscriber in connection with the Offering; or

(iv) a person described in section 2.24 of NI45-106 by virtue of being an employee, "executive officer", "director" or "consultant" of the Issuer or of a "related entity" of the Issuer or by virtue of being a "permitted assign" of the foregoing persons, as those terms are defined in sections 1.1 or 2.22 of NI45-106, and its participation in the Offering is voluntary,

and the Subscriber has certified same by marking the applicable boxes and signing and returning Form 1 herein; and

(b) in respect of all Subscribers resident in or otherwise subject to the securities laws of Ontario, it is:

(i) a person described in subsection 1.2(a)(i), (iii) or (iv) of this Schedule B; or

(ii) a person described in section 2.7 of NI45-106 by virtue of being (A) a founder of the Issuer; (B) an affiliate of a founder of the Issuer; (C) a spouse, parent, brother, sister, grandparent or child of an executive officer, director or founder of the Issuer; or (D) a person that is a control person of the Issuer,

and the Subscriber has certified same by marking the applicable boxes and signing and returning Form 1 herein; and

(c) in respect of all Subscribers resident outside of Canada or the United States:

(i) it is knowledgeable of, or has been independently advised as to, the applicable securities laws of the securities regulatory authorities (the "International Authorities") having application to the Offering and the Issuer in the jurisdiction (the "International Jurisdiction") in which the Subscriber is resident;

(ii) it is purchasing Securities pursuant to an applicable exemption from any prospectus, registration or similar requirements under the applicable securities laws of the International Jurisdiction, or the Subscriber is permitted to purchase the Securities under the applicable securities laws of the International Jurisdiction without the need to rely on such exemptions;

EVANS-FRANKLIN 000014

    (iii)     the applicable securities laws of the International Jurisdiction do not require the Issuer to make any filings or seek any approvals of any nature whatsoever with or from any of the International Authorities in connection with the Offering or the Securities, including any resale thereof;

    (iv)     the Offering and the completion of the offer and sale of the Securities to the Subscriber as contemplated herein complies in all respects with the applicable securities laws of the International Jurisdiction, and does not trigger:

        (A)     any obligation to prepare and file a prospectus or similar or other offering document, or any other report with respect to such purchase in the International Jurisdiction; or

        (B)     any continuous disclosure reporting obligation of the Issuer in the International Jurisdiction; and

    (v)     it will, if requested by the Issuer, deliver to the Issuer a certificate or opinion of local counsel from the International Jurisdiction which will confirm the matters referred to in subparagraphs (ii), (iii) and (iv) above to the satisfaction of the Issuer, acting reasonably.

2.     <u>Reliance, Notification, Indemnity and Survival</u>

2.1    The Subscriber acknowledges and agrees that the Issuer and its respective counsel will and can rely on the representations, warranties, certifications, acknowledgments and agreements of the Subscriber contained in this subscription and otherwise provided by the Subscriber to and with the Issuer to determine the availability of Exemptions should this subscription be accepted, and otherwise in completing the offering, issue and sale of the Securities to the Subscriber in accordance with applicable laws.

2.2    The Subscriber undertakes to notify the Issuer immediately of any change in any representation, warranty or other information pertaining to the Subscriber herein or otherwise provided in connection with this subscription which takes place prior to Closing.

2.3    The Subscriber hereby agrees to indemnify and hold harmless the Issuer against all actions, claims, damages, costs, expenses, losses and liabilities which it may suffer or incur as a result of this subscription.

2.4    The representations, warranties, acknowledgements and agreements made by the Subscriber in this subscription and otherwise provided by the Subscriber and the Issuer shall be true and correct as of the date of execution of this subscription and as of Closing as if repeated thereat, and shall survive the Closing.

**EVANS-FRANKLIN 000015**

<u>FORM 1</u>

CERTIFICATE FOR EXEMPTION

In addition to the representations, warranties acknowledgments and agreements contained in the subscription to which this Form 1 – Certificate for Exemption is attached, the Subscriber hereby represents, warrants and certifies to the Issuer and the Agents that the Subscriber is purchasing the securities set out in the subscription as principal, it is resident in the jurisdiction set out on the Acceptance Page of the subscription and: [check all appropriate boxes]

<u>Category 1: Accredited Investor</u>

The Subscriber is [check appropriate box and complete related blanks]:

☐ (a) except in Ontario, a Canadian financial institution, or a Schedule III bank;

☐ (b) except in Ontario, the Business Development Bank of Canada incorporated under the Business Development Bank of Canada Act (Canada);

☐ (c) except in Ontario, a subsidiary of any person referred to in paragraphs (a) or (b), if the person owns all of the voting securities of the subsidiary, except the voting securities required by law to be owned by directors of that subsidiary;

☐ (d) except in Ontario, a person registered under the securities legislation of a jurisdiction of Canada, as an adviser or dealer;

☐ (e) an individual registered under the securities legislation of a jurisdiction of Canada as a representative of a person referred to in paragraph (d);

☐ (e.1) an individual formerly registered under the securities legislation of a jurisdiction of Canada, other than an individual formerly registered solely as a representative of a limited market dealer under one or both of the Securities Act (Ontario) or the Securities Act (Newfoundland and Labrador);

☐ (f) except in Ontario, the Government of Canada or a jurisdiction of Canada, or any crown corporation, agency or wholly owned entity of the Government of Canada or a jurisdiction of Canada;

☐ (g) except in Ontario, a municipality, public board or commission in Canada and a metropolitan community, school board, the Comité de gestion de la taxe scolaire de l'île de Montréal or an intermunicipal management board in Québec;

☐ (h) except in Ontario, any national, federal, state, provincial, territorial or municipal government of or in any foreign jurisdiction, or any agency of that government;

☐ (i) except in Ontario, a pension fund that is regulated by either the Office of the Superintendent of Financial Institutions (Canada), a pension commission or similar regulatory authority of a jurisdiction of Canada;

☐ (j) an individual who, either alone or with a spouse, beneficially owns financial assets having an aggregate realizable value that before taxes, but net of any related liabilities, exceeds Cdn$1,000,000;
If qualifying under this paragraph, the Subscriber must also complete and sign Schedule 1 attached hereto entitled "Form 45-106F9: Form for Individual Accredited Investors"

☐ (j.1) an individual who beneficially owns financial assets having an aggregate realizable value that, before taxes, but net of any related liabilities exceeds $5,000,000;

☐ (k) an individual whose net income before taxes exceeded Cdn$200,000 in each of the two most recent calendar years or whose net income before taxes combined with that of a spouse exceeded Cdn$300,000 in each of the two most recent calendar years and who, in either case, reasonably expects to exceed that net income level in the current calendar year;
If qualifying under this paragraph, the Subscriber must also complete and sign Schedule 1 attached hereto entitled "Form 45-106F9: Form for Individual Accredited Investors"

EVANS-FRANKLIN 000016

☐ (l) an individual who, either alone or with a spouse, has net assets of at least Cdn$5,000,000;
If qualifying under this paragraph, the Subscriber must also complete and sign Schedule 1 attached hereto entitled "Form 45-106F9: Form for Individual Accredited Investors"

☐ (m) a person, other than an individual or investment fund, that has net assets of at least Cdn$5,000,000 as shown on its most recently prepared financial statements;

☐ (n) an investment fund that distributes or has distributed its securities only to:

    (i) a person that is or was an accredited investor at the time of the distribution;

    (ii) a person that acquires or acquired securities in the circumstances referred to in sections 2.10 and 2.19 of NI 45-106, or

    (iii) a person described in paragraph (i) or (ii) that acquires or acquired securities under section 2.18 of NI 45-106;

☐ (o) an investment fund that distributes or has distributed securities under a prospectus in a jurisdiction of Canada for which the regulator or, in Quebec, the securities regulatory authority, has issued a receipt;

☐ (p) a trust company or trust corporation registered or authorized to carry on business under the Trust and Loan Companies Act (Canada) or under comparable legislation in a jurisdiction of Canada or a foreign jurisdiction, acting on behalf of a fully managed account managed by the trust company or trust corporation, as the case may be;

☐ (q) a person acting on behalf of a fully managed account managed by that person, if that person is registered or authorized to carry on business as an adviser or the equivalent under the securities legislation of a jurisdiction of Canada or a foreign jurisdiction;

☐ (r) a registered charity under the Income Tax Act (Canada) that, in regard to the trade, has obtained advice from an eligibility adviser or an adviser registered under the securities legislation of the jurisdiction of the registered charity to give advice on the securities being traded;

☐ (s) an entity organized in a foreign jurisdiction that is analogous to any of the entities referred to in paragraphs (a) to (d) or paragraph (i) in form and function;

☐ (t) a person in respect of which all of the owner of interests, direct, indirect or beneficial, except the voting securities required by law to be owned by directors, are persons that are accredited investors;

☐ (u) an investment fund that is advised by a person registered as an adviser or a person that is exempt from registration as an adviser;

☐ (v) a person that is recognized or designated by the securities regulatory authority or, except in Ontario and Quebec, the regulator as an accredited investor; or

☐ (w) a trust established by an accredited investor for the benefit of the accredited investor's family members of which a majority of the trustees are accredited investors and all of the beneficiaries are the accredited investor's spouse, a former spouse of the accredited investor or a parent, grandparent, brother, sister, child or grandchild of that accredited investor, of that accredited investor's spouse or of that accredited investor's former spouse.

AND

If the Subscriber is a resident of, or otherwise subject to the securities laws of, Ontario, the Subscriber is [check appropriate box]:

☐ (aa) a bank listed in Schedule I, II or III to the Bank Act (Canada);

☐ (bb) an association to which the Cooperative Credit Associations Act (Canada) applies or a central cooperative credit society for which an order has been made under subsection 473(1) of that Act;

☐ (cc) a loan corporation, trust company, trust corporation, insurance company, treasury branch, credit union, caisse populaire, financial services cooperative or credit union league or federation that is authorized by a statute of Canada or Ontario to carry on business in Canada or Ontario, as the case may be;

EVANS-FRANKLIN 000017

☐ (dd)   the Business Development Bank of Canada;

☐ (ee)   a subsidiary of any person or company referred to in clause (aa), (bb), (cc) or (dd), if the person or company owns all of the voting securities of the subsidiary, except the voting securities required by law to be owned by directors of that subsidiary;

☐ (ff)   a person or company registered under the securities legislation of a province or territory of Canada as an adviser or dealer, except as otherwise prescribed by the regulations;

☐ (gg)   the Government of Canada, the government of a province or territory of Canada, or any Crown corporation, agency or wholly owned entity of the Government of Canada or of the government of a province or territory of Canada;

☐ (hh)   a municipality, public board or commission in Canada and a metropolitan community, school board, the Comité de gestion de la taxe scolaire de l'Île de Montréal or an intermunicipal management board in Quebec;

☐ (ii)   any national, federal, state, provincial, territorial or municipal government of or in any foreign jurisdiction, or any agency of that government;

☐ (jj)   a pension fund that is regulated by either the Office of the Superintendent of Financial Institutions (Canada) or a pension commission or similar regulatory authority of a province or territory of Canada;

☐ (kk)   a person or company that is recognized or designated by the Ontario Securities Commission as an accredited investor; or

☐ (ll)   such other persons or companies as may be prescribed by the regulations under the Securities Act (Ontario).

Additional Instruction:  If the Subscriber is an individual and qualifies under Category 1 pursuant to paragraphs (j), (k) or (l), it must also complete and sign Schedule 1 attached hereto entitled "Form 45-106F9: Form for Individual Accredited Investors".

Definitions:

"Canadian financial institution" means

(a)   an association governed by the Cooperative Credit Associations Act (Canada) or a central cooperative credit society for which an order has been made under section 473(1) of that Act, or

(b)   a bank, loan corporation, trust company, trust corporation, insurance company, treasury branch, credit union, caisse populaire, financial services cooperative, or league that, in each case, is authorized by an enactment of Canada or a jurisdiction of Canada to carry on business in Canada or a jurisdiction of Canada;

"EVCC" means an employee venture capital corporation that does not have a restricted constitution, and is registered under Part 2 of the Employee Investment Act (British Columbia), R.S.B.C. 1996 c. 112, and whose business objective is making multiple investments;

"financial assets" means

(a)   cash,

(b)   securities, or

(c)   a contract of insurance, a deposit or an evidence of a deposit that is not a security for the purposes of securities legislation;

"fully managed account" means an account of a client for which a person makes the investment decisions if that person has full discretion to trade in securities for the account without requiring the client's express consent to a transaction;

"investment fund" means a mutual fund or a non-redeemable investment fund, and, for greater certainty in British Columbia, includes an EVCC and a VCC;

EVANS-FRANKLIN 000018

"person" includes

    (a)    an individual,

    (b)    a corporation,

    (c)    a partnership, trust, fund and an association, syndicate, organization or other organized group of persons, whether incorporated or not, and

    (d)    an individual or other person in that person's capacity as a trustee, executor, administrator or personal or other legal representative;

"related liabilities" means

    (a)    liabilities incurred or assumed for the purpose of financing the acquisition or ownership of financial assets, or

    (b)    liabilities that are secured by financial assets;

"Schedule III bank" means an authorized foreign bank named in Schedule III of the Bank Act (Canada);

"spouse" means, an individual who,

    (a)    is married to another individual and is not living separate and apart within the meaning of the Divorce Act (Canada), from the other individual; or

    (b)    is living with another individual in a marriage-like relationship, including a marriage-like relationship between individuals of the same gender; or

    (c)    in Alberta, is an individual referred to in paragraph (a) or (b), or is an adult interdependent partner within the meaning of the Adult Interdependent Relationships Act (Alberta);

"subsidiary" means in issuer that is controlled directly or indirectly by another issuer and includes a subsidiary of that subsidiary;

"VCC" means a venture capital corporation registered under Part 1 of the Small Business Venture Capital Act (British Columbia), R.S.B.C. 1996 c. 429, whose business objective is making multiple investments.

<u>Category 2:  Family, Friends and Business Associates</u>

The Subscriber is [check appropriate box and complete related blanks]:

☐    (a)    a director, executive officer or control person of the Issuer or of an affiliate of the Issuer;

☐    (b)    a spouse, parent, grandparent, brother, sister, grandchild or child of a director, executive officer or control person of the Issuer or of an affiliate of the Issuer;

☐    (c)    a parent, grandparent, brother, sister, grandchild or child of the spouse of a director, executive officer or control person of the Issuer or of an affiliate of the Issuer;

☐    (d)    a close personal friend* of a director, executive officer or control person of the Issuer or of an affiliate of the Issuer;

☐    (e)    a close business associate** of a director, executive officer or control person of the Issuer or of an affiliate of the Issuer;

☐    (f)    a founder of the Issuer or a spouse, parent, grandparent, brother, sister, grandchild, child, close personal friend or close business associate of a founder of the Issuer;

☐    (g)    a parent, grandparent, brother, sister, grandchild or child of a spouse of a founder of the Issuer,

☐    (h)    a person of which a majority of the voting securities are beneficially owned by persons described in paragraphs (a) to (g);

☐    (i)    a person of which a majority of the directors are persons described in paragraphs (a) to (g);

**EVANS-FRANKLIN 000019**

☐    (j)    a trust or estate of which all of the beneficiaries are persons described in paragraphs (a) to (g); or

☐    (k)    a trust or estate of which a majority of the trustees or executors are persons described in paragraphs (a) to (g),

of which the relevant director, executive officer, control person or founder of the Issuer or affiliate thereof referred to in paragraphs (b) to (k) above is:

State name:    _____

State the length of your relationship with this person:    _____

<u>Additional Instruction</u>:   If the Subscriber qualifies under Category 2 and is a resident of Ontario, it must also complete and sign Schedule 2 attached hereto entitled "Form 45-106F12: Risk Acknowledgment Form for Family, Friend and Business Associate Investors".

<u>Notes</u>:

\*    "close personal friend" means an individual who has known the named director, executive officer, control person or founder well enough and for a sufficient period of time to be in a position to assess the capabilities and trustworthiness of that person. The term "close personal friend" can include a family member who is not already specifically identified in paragraphs (b), (c), (f) or (g) if the family member otherwise meets the criteria described above. An individual's relationship with the named director, executive officer, control person or founder must be direct. An individual is not a "close personal friend" solely because that individual is a relative, a member of the same club, organization, association or religious group, a co-worker, colleague or associate at the same workplace, a client, customer, former client or former customer, a mere acquaintance, or connected through some form of social media, such as Facebook, Twitter or LinkedIn.

\*\*    "close business associate" means an individual who has had sufficient prior business dealings with the named director, executive officer, control person or founder to be in a position to assess the capabilities and trustworthiness of that person. An individual's relationship with the named director, executive officer, control person or founder must be direct. An individual is not a "close business associate" solely because that individual is a member of the same club, organization, association or religious group, a co-worker, colleague or associate at the same workplace, a client, customer, former client or former customer, a mere acquaintance, or connected through some form of social media, such as Facebook, Twitter or LinkedIn.

<u>Category 3: $150,000 Purchaser</u>

☐    The Subscriber <u>is not</u> an individual and has an acquisition cost for the Units of not less than $150,000 paid in cash, and is not a person that is or has been created or used solely to purchase or hold securities in reliance on the exemption provided by section 2.10 of NI 45-106.

<u>Category 4: Employees, Officers, Directors and Consultants</u>

The Subscriber is [check appropriate box]:

☐    (a)    an employee of the Issuer or of a "related entity" of the Issuer;

☐    (b)    an executive officer of the Issuer or of a "related entity" of the Issuer;

☐    (c)    a director of the Issuer or of a "related entity" of the Issuer;

☐    (d)    a consultant of the Issuer or of a "related entity" of the Issuer; or

☐    (e)    a "permitted assign" of a person described in paragraphs (a) to (d),

and its participation in the Offering is voluntary.

EVANS-FRANKLIN 000020

<u>Category 5: Founder, Control Person and Family</u> (only available for Ontario residents)

The Subscriber is resident in, or otherwise subject to the securities laws of, Ontario, and is [check appropriate box and complete related blanks]:

☐ (a) a founder of the Issuer;

☐ (b) an affiliate of a founder of the Issuer;

☐ (c) a spouse, parent, brother, sister, grandparent, grandchild or child of an executive officer, director or founder of the Issuer, of which the relevant executive officer, director or founder is _____; or

☐ (d) a person that is a control person of the Issuer.

\* \* \* \* \* \* \*

The representations, warranties, statements and certification made in this Certificate are true and accurate as of the date of this Certificate and will be true and accurate as of the Closing. If any such representation, warranty, statement or certification becomes untrue or inaccurate prior to the Closing, the Subscriber shall give the Issuer immediate written notice thereof.

The Subscriber acknowledges and agrees that the Issuer will and can rely on this Certificate in connection with the Subscriber's subscription.

IN WITNESS, the undersigned has executed this Certificate as of the _____ day of _____, 2018.

If a corporation, partnership or other entity:

If an individual:

_____
Print Name of Subscriber

_____
Print Name of Subscriber

_____
Signature of Authorized Signatory

_____
Signature

_____
Name and Position of Authorized Signatory

_____
Jurisdiction of Residence of Subscriber

_____
Jurisdiction of Residence of Subscriber

FORM 1 – SCHEDULE 1

Form 45-106F9
Form for Individual Accredited Investors

| WARNING! |
|---|
| This investment is risky. Don't invest unless you can afford to lose all the money you pay for this investment. |

| SECTION 1 TO BE COMPLETED BY THE ISSUER OR SELLING SECURITY HOLDER |
|---|

| 1. About your investment | |
|---|---|
| Type of securities: Units | Issuer: NexTech AR Solutions Corp. (the "Issuer") |

| Purchased from: the Issuer |
|---|

| SECTIONS 2 TO 4 TO BE COMPLETED BY THE PURCHASER |
|---|

| 2. Risk acknowledgement | |
|---|---|
| This investment is risky. Initial that you understand that: | Your initials |
| Risk of loss – You could lose your entire investment of $ _____. [Instruction: Insert the total dollar amount of the | |
| Liquidity risk – You may not be able to sell your investment quickly or at all. | |
| Lack of information – You may receive little or no information about your investment. | |
| Lack of advice – You will not receive advice from the salesperson about whether this investment is suitable for you unless the salesperson is registered. The salesperson is the person who meets with, or provides information to, you about making this investment. To check whether the salesperson is registered, go to www.aretheyregistered.ca. | |

| 3. Accredited investor status | |
|---|---|
| If you are relying on a prospectus exemption contained in any of sections (j), (k), or (l) of Category 1 "Accredited Investor" in Form 1, you must meet at least one of the following criteria to be able to make this investment. Initial the statement that applies to you. (You may initial more than one statement.) The person identified in section 6 is responsible for ensuring that you meet the definition of accredited investor. That person, or the salesperson identified in section 5, can help you if you have questions about whether you meet these criteria. | Your initials |
| • Your net income before taxes was more than $200,000 in each of the 2 most recent calendar years, and you expect it to be more than $200,000 in the current calendar year. (You can find your net income before taxes on your personal income tax return.) | |
| • Your net income before taxes combined with your spouse's was more than $300,000 in each of the 2 most recent calendar years, and you expect your combined net income before taxes to be more than $300,000 in the current | |
| • Either alone or with your spouse, you own more than $1 million in cash and securities, after subtracting any debt related to the cash and securities. | |
| • Either alone or with your spouse, you have net assets worth more than $5 million. (Your net assets are your total assets (including real estate) minus your total debt.) | |

**EVANS-FRANKLIN 000022**

| 4. Your name and signature |
|---|

By signing this form, you confirm that you have read this form and you understand the risks of making this investment as identified in this form.

First and last name (please print):

| Signature: | Date: |
|---|---|
| | |

| SECTION 5 TO BE COMPLETED BY THE SALESPERSON |
|---|

| 5. Salesperson information |
|---|

[Instruction: The salesperson is the person who meets with, or provides information to, the purchaser with respect to making this investment. That could include a representative of the issuer or selling security holder, a registrant or a person who is exempt from the registration requirement.]

First and last name of salesperson (please print):

| Telephone: | Email: |
|---|---|

Name of firm (if registered):

| SECTION 6 TO BE COMPLETED BY THE ISSUER OR SELLING SECURITY HOLDER |
|---|

| 6. For more information about this investment |
|---|

NexTech AR Solutions Corp.
Suite 510, 580 Hornby Street
Vancouver, British Columbia, V6C 3B6
Attention: Evan Gappelberg, Chief Executive Officer
Email: evan@nextechar.com

For more information about prospectus exemptions, contact your local securities regulator. You can find contact information at www.securities-administrators.ca.

Form instructions:

1. This form does not mandate the use of a specific font size or style but the font must be legible.

2. The information in sections 1, 5 and 6 must be completed before the purchaser completes and signs the form.

3. The purchaser must sign this form. Each of the purchaser and the issuer or selling security holder must receive a copy of this form signed by the purchaser. The issuer or selling security holder is required to keep a copy of this form for 8 years after the distribution.

FORM 1 – SCHEDULE 2
ONTARIO RESIDENTS ONLY

Form 45-106F12
Risk Acknowledgement Form for Family, Friend and Business Associate Investors

| WARNING! |
|---|
| This investment is risky.  Don't invest unless you can afford to lose all the money you pay for this investment. |

| SECTION 1 TO BE COMPLETED BY THE ISSUER | |
|---|---|
| **1. About your investment** | |
| Type of securities:  Units | Issuer:  NexTech AR Solutions Corp. (the "Issuer") |

| SECTIONS 2 TO 4 TO BE COMPLETED BY THE PURCHASER | |
|---|---|
| **2. Risk acknowledgement** | |
| This investment is risky. Initial that you understand that: | Your initials |
| Risk of loss – You could lose your entire investment of $ _____.  [Instruction: Insert the total dollar amount | |
| Liquidity risk – You may not be able to sell your investment quickly – or at all. | |
| Lack of information – You may receive little or no information about your investment. The information you receive may be limited to the information provided to you by the family member, friend or close business associate specified in section 3 of this form. | |
| **3. Family, friend or business associate status** | |
| You must meet one of the following criteria to be able to make this investment. Initial the statement that applies to you: | Your initials |
| A) You are:<br><br>   1)  [check all applicable boxes]<br><br>       a director of the issuer or an affiliate of the issuer<br><br>       an executive officer of the issuer or an affiliate of the issuer<br><br>       a control person of the issuer or an affiliate of the issuer<br><br>       a founder of the issuer<br><br>   OR<br><br>   2)  [check all applicable boxes]<br><br>       a person of which a majority of the voting securities are beneficially owned by, or a majority of the directors are, (i) individuals listed in (1) above and/or (ii) family members, close personal friends or close business associates of individuals listed in (1) above<br><br>       a trust or estate of which all of the beneficiaries or a majority of the trustees or executors are (i) individuals listed in (1) above and/or (ii) family members, close personal friends or close business associates of individuals listed in (1) above | |

B) You are a family member of _____ [Instruction: Insert the name of the person who is your relative either directly or through his or her spouse], who holds the following position at the issuer or an affiliate of the issuer: _____.

You are the _____ of that person or that person's spouse. [Instruction: To qualify for this investment, you must be (a) the spouse of the person listed above or (b) the parent, grandparent, brother, sister, child or grandchild of that person or that person's spouse.]

C) You are a close personal friend of _____ [Instruction: Insert the name of your close personal friend], who holds the following position at the issuer or an affiliate of the issuer: _____.

You have known that person for _____ years.

D) You are a close business associate of _____ [Instruction: Insert the name of your close business associate], who holds the following position at the issuer or an affiliate of the issuer: _____.

You have known that person for _____ years.

## 4. Your name and signature

By signing this form, you confirm that you have read this form and you understand the risks of making this investment as identified in this form. You also confirm that you are eligible to make this investment because you are a family member, close personal friend or close business associate of the person identified in section 5 of this form.

First and last name (please print):

| Signature: | Date: |
|---|---|

SECTION 5 TO BE COMPLETED BY PERSON WHO CLAIMS THE CLOSE PERSONAL RELATIONSHIP, IF APPLICABLE

## 5. Contact person of the issuer or an affiliate of the issuer

[Instruction: To be completed by the director, executive officer, control person or founder with whom the purchaser has a close personal relationship indicated under sections 3B, C or D of this form.]

By signing this form, you confirm that you have, or your spouse has, the following relationship with the purchaser: [check the box that applies]

family relationship as set out in section 3B of this form

close personal friendship as set out in section 3C of this form

close business associate relationship as set out in section 3D of this form

First and last name of contact person (please print):

Position with the issuer or affiliate of the issuer (director, executive officer, control person or founder):

| Telephone: | Email: |
|---|---|
| Signature: | Date: |

| SECTION 6 TO BE COMPLETED BY THE ISSUER | |
| --- | --- |
| 6. For more information about this investment | |

NexTech AR Solutions Corp.
Suite 510, 580 Hornby Street
Vancouver, British Columbia, V6C 3B6
Attention: Evan Gappelberg, Chief Executive Officer
Email: evan@nextechar.com

For more information about prospectus exemptions, contact your local securities regulator. You can find contact information at www.securities-administrators.ca.

| Signature of executive officer of the issuer (other than the purchaser): | Date: |
| --- | --- |

Form instructions:

1   This form does not mandate the use of a specific font size or style but the font must be legible.

2.   The information in sections 1, 5 and 6 must be completed before the purchaser completes and signs the form.

3.   The purchaser, an executive officer who is not the purchaser and, if applicable, the person who claims the close personal relationship to the purchaser must sign this form. Each of the purchaser, contact person at the issuer and the issuer must receive a copy of this form signed by the purchaser. The issuer is required to keep a copy of this form for 8 years after the distribution.

4.   The detailed relationships required to purchase securities under this exemption are set out in section 2.5 of National Instrument
45-106 Prospectus and Registration Exemptions. For guidance on the meaning of "close personal friend" and "close business associate", please refer to sections 2.7 and 2.8, respectively, of Companion Policy 45-106CP Prospectus and Registration Exemptions.

EVANS-FRANKLIN 000026

FORM 1A – SCHEDULE 1
SASKATCHEWAN RESIDENTS ONLY

---

FORM 45-106F5

Risk Acknowledgement - Saskatchewan Close Personal Friends and Close Business Associates

I acknowledge that this is a risky investment:

·    I am investing entirely at my own risk.

·    No securities regulatory authority has evaluated or endorsed the merits of these securities.

·    The person selling me these securities is not registered with a securities regulatory authority and has no duty to tell me whether this investment is suitable for me.

·    I will not be able to sell these securities for 4 months.

·    I could lose all the money I invest.

·    I do not have a 2-day right to cancel my purchase of these securities or the statutory rights of action for misrepresentation I would have if I were purchasing the securities under a prospectus.

I am investing $ _____ [total consideration] in total; this includes any amount I am obliged to pay in future.

I am a close personal friend or close business associate of _____ [state name], who is a _____ [state title - founder, director, executive officer or control person] of _____ [state name of issuer or its affiliate – if an affiliate state "an affiliate of the issuer" and give the issuer's name].

I acknowledge that I am purchasing based on my close relationship with _____ [state name of founder, director, executive officer or control person] whom I know well enough and for a sufficient period of time to be able to assess her/his capabilities and trustworthiness.

I acknowledge that this is a risky investment and that I could lose all the money I invest.

_____        _____

Date                               Signature of Purchaser

                                           _____

                                           Print name of Purchaser

Sign 2 copies of this document.  Keep one copy for your records.

---

You are buying Exempt Market Securities

They are called exempt market securities because two parts of securities law do not apply to them. If an issuer wants to sell exempt market securities to you:

·    the issuer does not have to give you a prospectus (a document that describes the investment in detail and gives you some legal protections), and

·    the securities do not have to be sold by an investment dealer registered with a securities regulatory authority.

There are restrictions on your ability to resell exempt market securities.  Exempt market securities are more risky than other securities.

You may not receive any written information about the issuer or its business

If you have any questions about the issuer or its business, ask for written clarification before you purchase the securities. You should consult your own professional advisers before investing in the securities.

You will not receive advice.

Unless you consult your own professional advisors, you will not get professional advice about whether the investment is suitable for you.

For more information on the exempt market, refer to the Saskatchewan Financial Services Commission's website at http://www.sfsc.gov.sk.ca.

INSTRUCTION:  THE PURCHASER MUST SIGN 2 COPIES OF THIS FORM.  THE PURCHASER AND THE ISSUER MUST EACH RECEIVE A SIGNED COPY.

**EVANS-FRANKLIN 000027**

FORM 2

CERTIFICATE OF U.S. ACCREDITED INVESTOR STATUS

In addition to the representations, warranties, acknowledgments and agreements contained in the subscription agreement (the "subscription") to which this Form 2 – Certificate of U.S. Accredited Investor Status is attached, the Subscriber hereby represents, warrants and certifies to the Issuer that the Subscriber is purchasing the securities set out in the subscription as principal, that the Subscriber is a resident of the jurisdiction of its disclosed address set out in the Subscriber's information on page 3 of the subscription, and:

1. The Subscriber hereby represents, warrants, acknowledges and agrees to and with the Issuer that the Subscriber:

    (a) is a U.S. Person;

    (b) has such knowledge and experience in financial and business matters as to be capable of evaluating the merits and risks of the transactions detailed in the subscription and it is able to bear the economic risk of loss arising from such transactions;

    (c) is acquiring the Securities for its own account, for investment purposes only and not with a view to any resale, distribution or other disposition of the Securities in violation of the United States securities laws and, in particular, it has no intention to distribute either directly or indirectly any of the Securities in the United States or to U.S. Persons; provided, however, that the Subscriber may sell or otherwise dispose of any of the Securities pursuant to registration thereof pursuant to the United States Securities Act of 1933, as amended (the "U.S. Securities Act"), and any applicable State securities laws or if an exemption from such registration requirements is available or registration is otherwise not required under this U.S. Securities Act;

    (d) is not acquiring the Securities as a result of any form of general solicitation or general advertising, as such terms are defined for purposes of Regulation D under the U.S. Securities Act, including without limitation any advertisement, article, notice or other communication published in any newspaper, magazine or similar media or broadcast over radio or television or other form of telecommunications, or published or broadcast by means of the Internet or any other form of electronic display, or any seminar or meeting whose attendees have been invited by general solicitation or general advertising;

    (e) understands the Securities have not been and will not be registered under the U.S. Securities Act or the securities laws of any state of the United States and that the sale contemplated hereby is being made in reliance on an exemption from such registration requirements provided by Section 4(2) of the U.S. Securities Act and Rule 506 of Regulation D promulgated thereunder.

    (f) satisfies one or more of the categories indicated below (check appropriate box):

       ☐ Category 1: An organization described in Section 501(c)(3) of the United States Internal Revenue Code, a corporation, a Massachusetts or similar business trust or a partnership, not formed for the specific purpose of acquiring the Securities offered, with total assets in excess of US $5,000,000;

       ☐ Category 2: A natural person whose individual net worth, or joint net worth with that person's spouse, on the date of purchase exceeds US $1,000,000 excluding the value of the primary residence of that person;

          Note: For purposes of calculating "net worth" under this paragraph:

             (i) The person's primary residence shall not be included as an asset;

             (ii) Indebtedness that is secured by the person's primary residence, up to the estimated fair market value of the primary residence at the time of the sale of securities, shall not be included as a liability (except that if the amount of such indebtedness outstanding at the time of the sale of securities exceeds the amount outstanding 60 days before such time, other than as a result of the acquisition of the primary residence, the amount of such excess shall be included as a liability); and

             (iii) Indebtedness that is secured by the person's primary residence in excess of the estimated fair market value of the primary residence at the time of the sale of securities shall be included as a liability.

       ☐ Category 3: A natural person who had an individual income in excess of US $200,000 in each of the two most recent years or joint income with that person's spouse in excess of US $300,000 in each

EVANS-FRANKLIN 000028

of those years and has a reasonable expectation of reaching the same income level in the current year;

☐ Category 4: A bank as defined under Section (3)(a)(2) of the U.S. Securities Act or savings and loan association or other institution as defined in Section 3(a)(5)(A) of the U.S. Securities Act, whether acting in its individual or fiduciary capacity; a broker or dealer registered pursuant to Section 15 of the Securities Exchange Act of 1934 (United States); an insurance company as defined in Section 2(13) of the U.S. Securities Act; an investment company registered under the United States Investment Company Act of 1940 or a business development company as defined in Section 2(a)(48) of such Act; a Small Business Investment Company licensed by the U.S. Small Business Administration under Section 301(c) or (d) of the United States Small Business Investment Act of 1958; a plan established and maintained by a state, its political subdivisions, or an agency or instrumentality of a state or its political subdivisions, for the benefit of its employees if the plan has total assets in excess of US$5,000,000; an employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 (United States) if investment decision is made by a plan fiduciary, as defined in Section 3(21) of such act, which is either a bank, savings and loan association, insurance company or registered investment adviser, or if the employee benefit plan has total assets in excess of US$5,000,000, or, if a self-directed plan, with investment decisions made solely by persons that are accredited investors;

☐ Category 5: A private business development company as defined in Section 202(a)(22) of the United States Investment Advisers Act of 1940;

☐ Category 6: A director or executive officer of the Issuer;

☐ Category 7 A trust that (a) has total assets in excess of US$5,000,000, (b) was not formed for the specific purpose of acquiring the Securities and (c) is directed in its purchases of securities by a person who has such knowledge and experience in financial and business matters that he or she is capable of evaluating the merits and risks of an investment in the Securities as described in SEC Rule 506(b)(2)(ii) under the U.S. Securities Act; or

☐ Category 8 An entity in which all of the equity owners are accredited investors; and

(g) if an individual, is a resident of the state or other jurisdiction of its disclosed address set out in the Subscriber's information on page 3 of its subscription; or if not an individual, has received and accepted the offer to acquire the Securities at the office of the Subscriber at the disclosed address set out in the Subscriber's information on page 3, of its subscription.

2. The Subscriber acknowledges and agrees that:

(a) the Subscriber has not acquired the Securities as a result of, and will not itself engage in any activities undertaken for the purpose of, or that could reasonably be expected to have the effect of, conditioning the market in the United States for the resale of any of the Securities; provided, however, that the Subscriber may sell or otherwise dispose of any of the Securities pursuant to registration of any of the Securities pursuant to the U.S. Securities Act and any applicable state securities laws or under an exemption from such registration requirements and as otherwise provided herein;

(b) if the Subscriber decides to offer, sell or otherwise transfer any of the Securities, it will not offer, sell or otherwise transfer any of such securities, directly or indirectly, unless:

(i) the sale is to the Issuer;

(ii) the sale is made pursuant to the requirements of Rule 904 promulgated under the U.S. Securities Act;

(iii) the sale is made pursuant to the exemption from the registration requirements under the U.S. Securities Act provided by Rule 144 thereunder if available and in accordance with any applicable state securities or "Blue Sky" laws; or

(iv) the Securities are sold in a transaction that does not require registration under the U.S. Securities Act or any applicable U.S. state laws and regulations governing the offer and sale of securities, and it has prior to such sale furnished to the Issuer an opinion of counsel reasonably satisfactory to the Issuer;

EVANS-FRANKLIN 000029

(c)  upon the issuance thereof, and until such time as the same is no longer required under the applicable requirements of the U.S. Securities Act or applicable U.S. State laws and regulations, the certificates representing any of the Securities will bear a legend in substantially the following form:

> "THE SECURITIES REPRESENTED HEREBY HAVE NOT BEEN REGISTERED UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (THE "U.S. SECURITIES ACT") OR UNDER THE SECURITIES LAWS OF ANY STATE OF THE UNITED STATES.  THE HOLDER HEREOF, BY PURCHASING SUCH SECURITIES, AGREES FOR THE BENEFIT OF THE ISSUER OF SUCH SECURITIES AND ITS SUCCESSORS (THE "CORPORATION") THAT SUCH SECURITIES MAY BE OFFERED, SOLD, PLEDGED OR OTHERWISE TRANSFERRED ONLY (A) TO THE CORPORATION; (B) OUTSIDE THE UNITED STATES IN ACCORDANCE WITH RULE 904 OF REGULATION S UNDER THE U.S. SECURITIES ACT AND IN COMPLIANCE WITH LOCAL LAWS AND REGULATIONS; (C) IN ACCORDANCE WITH THE EXEMPTION FROM REGISTRATION UNDER THE U.S. SECURITIES ACT PROVIDED BY RULE 144 THEREUNDER, IF AVAILABLE, AND IN COMPLIANCE WITH APPLICABLE STATE SECURITIES LAWS; OR (D) IN A TRANSACTION THAT DOES NOT REQUIRE REGISTRATION UNDER THE U.S. SECURITIES ACT OR ANY APPLICABLE STATE SECURITIES LAWS, AND, IN THE CASE OF PARAGRAPH (C) OR (D), THE SELLER HAS PRIOR TO SUCH TRANSFER FURNISHED TO THE CORPORATION AN OPINION OF COUNSEL OF RECOGNIZED STANDING IN FORM AND SUBSTANCE SATISFACTORY TO THE CORPORATION TO SUCH EFFECT.  DELIVERY OF THIS CERTIFICATE MAY NOT CONSTITUTE GOOD DELIVERY IN SETTLEMENT OF TRANSACTIONS ON STOCK EXCHANGES IN CANADA."

and provided that if any of the Securities are being sold by the Subscriber in an off-shore transaction and in compliance with the requirements of Rule 904 of Regulation S, at a time when the Issuer is a "foreign issuer" as defined in Rule 902 of Regulation S, the legend set forth above may be removed by providing a declaration to the Issuer or such other evidence as the Issuer may from time to time prescribe (which may include an opinion of counsel satisfactory to the Issuer), to the effect that the sale of the securities is being made in compliance with Rule 904 of Regulation S;

and provided further, that if any of the Securities are being sold pursuant to Rule 144 of the U.S. Securities Act and in compliance with any applicable state securities laws, the legend may be removed by delivery to the Issuer of an opinion satisfactory to the Issuer to the effect that the legend is no longer required under applicable requirements of the U.S. Securities Act and state securities laws;

(d)  the Issuer may make a notation on its records in order to implement the restrictions on transfer set forth and described herein and the subscription;

(e)  the Subscriber understands and acknowledges that the Issuer (i) is not obligated to remain a "foreign issuer" within the meaning of Rule 902 of Regulation S, (ii) may not, at the time the Securities are resold by it or at any other time, be a foreign issuer, and (iii) may engage in one or more transactions which could cause the Issuer not to be a foreign issuer;

(f)  the Subscriber understands and agrees that the financial statements of the Issuer have been prepared in accordance with Canadian generally accepted accounting principles or International Financial Reporting Standards, which differ in some respects from United States generally accepted accounting principles, and thus may not be comparable to financial statements of United States companies;

(g)  the Subscriber understands that the Securities are "restricted securities" under applicable federal securities laws and that the U.S. Securities Act and the rules of the Securities Exchange Commission (the "SEC") provide in substance that the Subscriber may dispose of the Securities only pursuant to an effective registration statement under the U.S. Securities Act or an exemption therefrom, and, other than as set out herein, the Subscriber understands that the Issuer has no obligation to register any of the Securities or to take action so as to permit sales pursuant to the U.S. Securities Act (including Rule 144 thereunder).  Accordingly, the Subscriber understands that absent registration, under the rules of the SEC, the Subscriber may be required to hold the Securities indefinitely or to transfer the Securities in the United States or to U.S. Persons in "private placements" which are exempt from registration under the U.S. Securities Act, in which event the transferee will acquire "restricted securities" subject to the same limitations as in the hands of the Subscriber.  As a consequence, the Subscriber understands that it must bear the economic risks of the investment in the Securities for an indefinite period of time.

(h)  the Subscriber understands and agrees that there may be material tax consequences to the Subscriber of an acquisition, disposition or exercise of any of the Securities, and the Issuer gives no opinion and makes no representation with respect to the tax consequences to the Subscriber under United States, state, local or foreign tax law of the Subscriber's acquisition or disposition of such Securities, and in particular, no determination has been made whether the Issuer will be a "passive foreign investment company" ("PFIC") within the meaning of Section 1291 of the United States Internal Revenue Code (the "Code"), provided, however, the Issuer agrees that it shall provide to the Subscriber, upon written request, all of the information that would be required for United States income tax reporting purposes by a United States security holder making an election to treat the

EVANS-FRANKLIN 000030

Issuer as a "qualified electing fund" for the purposes of the Code, should the Issuer or the Subscriber determine that the Issuer is a PFIC in any calendar year following the Subscriber's purchase of the Securities; and

(i)     the funds representing the subscription price which will be advanced by the Subscriber to the Issuer hereunder will not represent proceeds of crime for the purposes of the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act (the "PATRIOT Act") and the Subscriber acknowledges that the Issuer may in the future be required by law to disclose the Subscriber's name and other information relating to the subscription and the Subscriber's subscription hereunder, on a confidential basis, pursuant to the PATRIOT Act, and that no portion of the subscription price to be provided by the Subscriber (i) has been or will be derived from or related to any activity that is deemed criminal under the laws of the United States of America, or any other jurisdiction, or (ii) is being tendered on behalf of a person or entity who has not been identified to or by the Subscriber, and it shall promptly notify the Issuer if the Subscriber discovers that any of such representations ceases to be true and provide the Issuer with appropriate information in connection therewith.

\* \* \* \* \* \* \*

The representations, warranties, statements and certification made in this Certificate are true and accurate as of the date of this Certificate and will be true and accurate as of the Closing.  If any such representation, warranty, statement or certification becomes untrue or inaccurate prior to the Closing, the Subscriber shall give the Issuer immediate written notice thereof.

Capitalized terms not specifically defined in this Certificate have the meaning ascribed to them in the subscription to which this Certificate is attached.

The Subscriber acknowledges and agrees that the Issuer will and can rely on this Certificate in connection with the Subscriber's subscription.

IN WITNESS, the undersigned has executed this Certificate as of the _____ day of _____, 2018.

If a corporation, partnership or other entity:                    If an individual:

_____                   _____
Print Name of Subscriber                                             Print Name of Subscriber

_____                   _____
Signature of Authorized Signatory                                  Signature

_____                   _____
Name and Position of Authorized Signatory                    Jurisdiction of Residence of Subscriber

_____
Jurisdiction of Residence of Subscriber

EVANS-FRANKLIN 000031

FORM 3

ACKNOWLEDGMENT AND DIRECTION

TO:     Cassels Brock & Blackwell LLP

RE:     NexTech AR Solutions Corp. (the "Issuer")
        Private Placement of Units

_____

The undersigned (the "Subscriber") hereby confirms that it has deposited $_____ (the "Deposited Funds") in trust with Cassels Brock & Blackwell LLP ("CBB") for the purchase of _____ Units of the Issuer (the "Units"), as set out in the attached subscription.

The Subscriber acknowledges and agrees that CBB acts as legal counsel of the Issuer. For greater certainty, CBB in no way represents the interests of the Subscriber in any manner or for any purpose whatsoever. The Subscriber confirms that it has had the opportunity to consult with its own legal counsel with respect to the purchase any potential resale of the Units.

The Subscriber hereby expressly and irrevocably authorizes and directs CBB to release and deliver the Deposited Funds to the Issuer against the delivery of certificates representing the Units subscribed for in accordance with the terms of the attached Subscription Agreement.

EXECUTED by the undersigned this _____ day of _____, 2018.

If a corporation, partnership or other entity:          If an individual:

_____                       _____
Signature of Authorized Signatory                       Signature

_____                       _____
Name of Entity                                          Print or Type Name

_____
Type of Entity

_____
Name and Position of Signatory

**EVANS-FRANKLIN 000032**

- 3 -

**TO:  NexTech AR Solutions Corp.**

1.  The Subscriber irrevocably subscribes for and agrees to purchase from the Issuer the following securities:

    **Number of Units at $0.25 each:**            258,000

    Total subscription price for the subscribed Units:    $  64,500

    (total subscription amounts must not be less than $50,000)

2.  The Subscriber and the Issuer agree that the offering of the Units shall be on the terms and conditions specified in Schedules "A" and "B" hereto. The Subscriber hereby makes the representations, warranties, acknowledgments and agreements set out in Schedules "A" and "B" hereto and in all applicable Forms, and acknowledges and agrees that the Issuer and its respective counsel will and can rely on such representations, warranties, acknowledgments and agreements should this subscription be accepted.

3.  Identity of and execution by Subscriber:

---

**BOX A: SUBSCRIBER INFORMATION AND EXECUTION**

David  A  FRANKLIN
(name of subscriber)

916 Esplanade  unit  703      Redondo Beach  CA 90277
(address – include city, province and postal code)

808 428 9048   indo 737 gymail.com x    Daniel Franklin
(telephone number)   (email address)              (signature of subscriber/authorized signatory)

indo 737egmail.com
(if applicable, print name of signatory and office)

---

Execution hereof by the Subscriber shall constitute an offer and agreement to subscribe for the Units set out in Item 1 above pursuant to the provisions of Item 2 above, and acceptance by the Issuer shall effect a legal, valid and binding agreement between the Issuer and the Subscriber. This subscription may be executed and delivered by facsimile, and shall be deemed to bear the date of acceptance below.

4.  If the Units are to be registered other than as set out in Box A, the Subscriber directs the Issuer to register and deliver the Units as follows:

---

**BOX B: ALTERNATE REGISTRATION INSTRUCTIONS**

(name of registered holder)

(address of registered holder – include city, province and postal code)

(registered holder: contact name, contact telephone number and contact email address)

---

5.  If the Units are to be delivered other than as set out in Box A (or if completed, Box B):

---

**BOX C: ALTERNATE DELIVERY INSTRUCTIONS**

(name of recipient)

(address of recipient – include city, province and postal code)

(recipient: contact name, contact telephone number and contact email address)

---

**FORM 1 – SCHEDULE 1**

**Form 45-106F9**
*Form for Individual Accredited Investors*

| WARNING! |
|---|
| This investment is risky. Don't invest unless you can afford to lose all the money you pay for this investment. |

## SECTION 1 TO BE COMPLETED BY THE ISSUER OR SELLING SECURITY HOLDER

### 1. About your investment

| | |
|---|---|
| Type of securities: *Units* | Issuer: *NexTech AR Solutions Corp. (the "Issuer")* |

Purchased from: *the Issuer*

## SECTIONS 2 TO 4 TO BE COMPLETED BY THE PURCHASER

### 2. Risk acknowledgement

| This investment is risky. Initial that you understand that: | Your initials |
|---|---|
| **Risk of loss** – You could lose your entire investment of $ 64,500 . [*Instruction: Insert the total dollar amount of the* | *A* |
| **Liquidity risk** – You may not be able to sell your investment quickly or at all. | *A* |
| **Lack of information** – You may receive little or no information about your investment. | *A* |
| **Lack of advice** – You will not receive advice from the salesperson about whether this investment is suitable for you unless the salesperson is registered. The salesperson is the person who meets with, or provides information to, you about making this investment. To check whether the salesperson is registered, go to www.aretheyregistered.ca. | *A* |

### 3. Accredited investor status

| If you are relying on a prospectus exemption contained in any of sections (j), (k), or (l) of Category 1 "Accredited Investor" in Form 1, you must meet at least one of the following criteria to be able to make this investment. Initial the statement that applies to you. (You may initial more than one statement.) The person identified in section 6 is responsible for ensuring that you meet the definition of accredited investor. That person, or the salesperson identified in section 5, can help you if you have questions about whether you meet these criteria. | Your initials |
|---|---|
| • Your net income before taxes was more than $200,000 in each of the 2 most recent calendar years, and you expect it to be more than $200,000 in the current calendar year. (You can find your net income before taxes on your personal income tax return.) | *DF* |
| • Your net income before taxes combined with your spouse's was more than $300,000 in each of the 2 most recent calendar years, and you expect your combined net income before taxes to be more than $300,000 in the current | |
| • Either alone or with your spouse, you own more than $1 million in cash and securities, after subtracting any debt related to the cash and securities. | |
| • Either alone or with your spouse, you have net assets worth more than $5 million. (Your net assets are your total assets (including real estate) minus your total debt.) | |

### 4. Your name and signature

By signing this form, you confirm that you have read this form and you understand the risks of making this investment as identified in this form.

First and last name (please print): David FRANKLIN

Signature:

Date:
3 - 2 - 2018

### SECTION 5 TO BE COMPLETED BY THE SALESPERSON

### 5. Salesperson information

*[Instruction: The salesperson is the person who meets with, or provides information to, the purchaser with respect to making this investment. That could include a representative of the issuer or selling security holder, a registrant or a person who is exempt from the registration requirement.]*

First and last name of salesperson (please print):

| Telephone: | Email: |
|---|---|

Name of firm (if registered):

### SECTION 6 TO BE COMPLETED BY THE ISSUER OR SELLING SECURITY HOLDER

### 6. For more information about this investment

*NexTech AR Solutions Corp.*
*Suite 510, 580 Hornby Street*
*Vancouver, British Columbia, V6C 3B6*
*Attention: Evan Gappelberg, Chief Executive Officer*
*Email: evan@nextechar.com*

**For more information about prospectus exemptions, contact your local securities regulator. You can find contact information at www.securities-administrators.ca.**

*Form instructions:*

1. *This form does not mandate the use of a specific font size or style but the font must be legible.*

2. *The information in sections 1, 5 and 6 must be completed before the purchaser completes and signs the form.*

3. *The purchaser must sign this form. Each of the purchaser and the issuer or selling security holder must receive a copy of this form signed by the purchaser. The issuer or selling security holder is required to keep a copy of this form for 8 years after the distribution.*

NXT-00000225

# FORM 2

## CERTIFICATE OF U.S. ACCREDITED INVESTOR STATUS

In addition to the representations, warranties, acknowledgments and agreements contained in the subscription agreement (the "**subscription**") to which this Form 2 – Certificate of U.S. Accredited Investor Status is attached, the Subscriber hereby represents, warrants and certifies to the Issuer that the Subscriber is purchasing the securities set out in the subscription as principal, that the Subscriber is a resident of the jurisdiction of its disclosed address set out in the Subscriber's information on page 3 of the subscription, and:

1.  The Subscriber hereby represents, warrants, acknowledges and agrees to and with the Issuer that the Subscriber:

    (a)  is a U.S. Person;

    (b)  has such knowledge and experience in financial and business matters as to be capable of evaluating the merits and risks of the transactions detailed in the subscription and it is able to bear the economic risk of loss arising from such transactions;

    (c)  is acquiring the Securities for its own account, for investment purposes only and not with a view to any resale, distribution or other disposition of the Securities in violation of the United States securities laws and, in particular, it has no intention to distribute either directly or indirectly any of the Securities in the United States or to U.S. Persons; provided, however, that the Subscriber may sell or otherwise dispose of any of the Securities pursuant to registration thereof pursuant to the United States *Securities Act of 1933*, as amended (the "**U.S. Securities Act**"), and any applicable State securities laws or if an exemption from such registration requirements is available or registration is otherwise not required under this U.S. Securities Act;

    (d)  is not acquiring the Securities as a result of any form of general solicitation or general advertising, as such terms are defined for purposes of Regulation D under the U.S. Securities Act, including without limitation any advertisement, article, notice or other communication published in any newspaper, magazine or similar media or broadcast over radio or television or other form of telecommunications, or published or broadcast by means of the Internet or any other form of electronic display, or any seminar or meeting whose attendees have been invited by general solicitation or general advertising;

    (e)  understands the Securities have not been and will not be registered under the U.S. Securities Act or the securities laws of any state of the United States and that the sale contemplated hereby is being made in reliance on an exemption from such registration requirements provided by Section 4(2) of the U.S. Securities Act and Rule 506 of Regulation D promulgated thereunder.

    (f)  satisfies one or more of the categories indicated below (**check appropriate box**):

        ☐ Category 1:  An organization described in Section 501(c)(3) of the United States Internal Revenue Code, a corporation, a Massachusetts or similar business trust or a partnership, not formed for the specific purpose of acquiring the Securities offered, with total assets in excess of US $5,000,000;

        ☐ Category 2:  A natural person whose individual net worth, or joint net worth with that person's spouse, on the date of purchase exceeds US $1,000,000 excluding the value of the primary residence of that person;

            *Note: For purposes of calculating "net worth" under this paragraph:*

                *(i)    The person's primary residence shall not be included as an asset;*

                *(ii)   Indebtedness that is secured by the person's primary residence, up to the estimated fair market value of the primary residence at the time of the sale of securities, shall not be included as a liability (except that if the amount of such indebtedness outstanding at the time of the sale of securities exceeds the amount outstanding 60 days before such time, other than as a result of the acquisition of the primary residence, the amount of such excess shall be included as a liability); and*

                *(iii)  Indebtedness that is secured by the person's primary residence in excess of the estimated fair market value of the primary residence at the time of the sale of securities shall be included as a liability.*

        ☑ Category 3:  A natural person who had an individual income in excess of US $200,000 in each of the two most recent years or joint income with that person's spouse in excess of US $300,000 in each

NXT-00000226

Issuer as a "qualified electing fund" for the purposes of the Code, should the Issuer or the Subscriber determine that the Issuer is a PFIC in any calendar year following the Subscriber's purchase of the Securities; and

(i)    the funds representing the subscription price which will be advanced by the Subscriber to the Issuer hereunder will not represent proceeds of crime for the purposes of the *Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act* (the "**PATRIOT Act**") and the Subscriber acknowledges that the Issuer may in the future be required by law to disclose the Subscriber's name and other information relating to the subscription and the Subscriber's subscription hereunder, on a confidential basis, pursuant to the PATRIOT Act, and that no portion of the subscription price to be provided by the Subscriber (i) has been or will be derived from or related to any activity that is deemed criminal under the laws of the United States of America, or any other jurisdiction, or (ii) is being tendered on behalf of a person or entity who has not been identified to or by the Subscriber, and it shall promptly notify the Issuer if the Subscriber discovers that any of such representations ceases to be true and provide the Issuer with appropriate information in connection therewith.

\* \* \* \* \* \* \*

The representations, warranties, statements and certification made in this Certificate are true and accurate as of the date of this Certificate and will be true and accurate as of the Closing. If any such representation, warranty, statement or certification becomes untrue or inaccurate prior to the Closing, the Subscriber shall give the Issuer immediate written notice thereof.

Capitalized terms not specifically defined in this Certificate have the meaning ascribed to them in the subscription to which this Certificate is attached.

The Subscriber acknowledges and agrees that the Issuer will and can rely on this Certificate in connection with the Subscriber's subscription.

IN WITNESS, the undersigned has executed this Certificate as of the ___2nd___ day of ___March___, 2018.

**If a corporation, partnership or other entity:**    **If an individual:**

_David Franklin_
_____    _____
*Print Name of Subscriber*    *Print Name of Subscriber*

_____    _____
*Signature of Authorized Signatory*    *Signature*

_____    _CALIFORNIA , US_
*Name and Position of Authorized Signatory*    *Jurisdiction of Residence of Subscriber*

_____
*Jurisdiction of Residence of Subscriber*

## FORM 3

### ACKNOWLEDGMENT AND DIRECTION

**TO:**   **Cassels Brock & Blackwell LLP**

**RE:**   **NexTech AR Solutions Corp.** (the "**Issuer**")
Private Placement of Units

The undersigned (the "**Subscriber**") hereby confirms that it has deposited $ _64, 500_ (the "**Deposited Funds**") in trust with Cassels Brock & Blackwell LLP ("**CBB**") for the purchase of _258, 000_ Units of the Issuer (the "**Units**"), as set out in the attached subscription.

The Subscriber acknowledges and agrees that CBB acts as legal counsel of the Issuer. For greater certainty, CBB in no way represents the interests of the Subscriber in any manner or for any purpose whatsoever. The Subscriber confirms that it has had the opportunity to consult with its own legal counsel with respect to the purchase any potential resale of the Units.

The Subscriber hereby expressly and irrevocably authorizes and directs CBB to release and deliver the Deposited Funds to the Issuer against the delivery of certificates representing the Units subscribed for in accordance with the terms of the attached Subscription Agreement.

EXECUTED by the undersigned this _2nd_ day of _March_ , 2018.

**If a corporation, partnership or other entity:**          **If an individual:**

_____          _____
*Signature of Authorized Signatory*                        *Signature*

                                                           _DAVID FRANKLIN_
_____          *Print or Type Name*
*Name of Entity*

_____
*Type of Entity*

_____
*Name and Position of Signatory*

THE SECURITIES TO WHICH THIS PRIVATE PLACEMENT SUBSCRIPTION AGREEMENT RELATES HAVE NOT BEEN AND WILL NOT BE REGISTERED WITH THE SECURITIES AND EXCHANGE COMMISSION OR THE SECURITIES COMMISSION OF ANY STATE, AND WILL BE ISSUED IN RELIANCE UPON AN EXEMPTION FROM REGISTRATION UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (THE "1933 ACT") AND APPLICABLE SECURITIES LAWS, AND, ACCORDINGLY, MAY NOT BE OFFERED OR SOLD EXCEPT PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT UNDER THE 1933 ACT OR PURSUANT TO AN AVAILABLE EXEMPTION FROM, OR IN A TRANSACTION NOT SUBJECT TO, THE REGISTRATION REQUIREMENTS OF THE 1933 ACT AND IN ACCORDANCE WITH APPLICABLE STATE SECURITIES LAWS.

## NexTech AR Solutions Corp.
### (the "**Issuer**")
### SUBSCRIPTION AGREEMENT
Units

### THE ISSUER IS NOT A REPORTING ISSUER

The Units (the "**Units**") will be sold on a **non-brokered private placement** basis at a price of **$0.25 per Unit**. Each Unit will consist of one (1) common share of the Issuer (each, a "**Share**") and one (1) common share purchase warrant (each, a "**Warrant**"), with each Warrant entitling the holder thereof to purchase one additional common share (each, a "**Warrant Share**") of the Issuer at a price of $0.50 per Warrant Share for a period of twenty-four (24) months from their date of issue, subject to accelerated expiry upon the occurrence of certain events set out herein. The Units will be offered pursuant to exemptions from the registration and prospectus requirements of applicable securities legislation. **The Subscriber must be purchasing as principal or deemed under applicable securities laws to be purchasing as principal.**

**The Subscriber acknowledges that the Issuer is not a reporting issuer in any jurisdiction of Canada, and the common shares of the Issuer are not listed for trading on any stock exchange. There can be no assurance that the Issuer will ever become a reporting issuer in a jurisdiction of Canada or that the Shares will ever be listed and posted for trading on any stock exchange.**

### INSTRUCTIONS FOR COMPLETING THIS SUBSCRIPTION PRIOR TO DELIVERY TO THE ISSUER

1. The subscriber (the "**Subscriber**") *must complete* the information required on page 3 with respect to subscription amounts, subscriber details, and alternate registration and delivery particulars (if applicable).

2. The Subscriber must complete the applicable forms (the "**Forms**") at the end of Schedule "B":

   (a) All Subscribers *must complete* Form 1 – "Certificate for Exemption".

   (b) All Subscribers who are individuals and subscribing pursuant to section (j), (k) or (l) of the definition of "accredited investor" in National Instrument 45-106 *Prospectus Exemptions* ("**NI 45-106**") must complete and execute **Form 1, Schedule 1 – "*Form 45-106F9: Form for Individual Accredited Investors*"**.

   (c) All Subscribers who are resident in Ontario and subscribing pursuant to the Friends, Family and Business Associates exemption in NI 45-106 must complete and execute **Form 1, Schedule 2 – "*Form 45-106F12: Risk Acknowledgment Form for Family, Friend and Business Associate Investors*"**.

   (d) All Subscribers who are residents of Saskatchewan and who are 'family, friends or business associates" must complete and execute **Form 1A – "Risk Acknowledgement – Saskatchewan Close Personal Friends and Business Associates"**.

   (e) All Subscribers *who are* U.S. Purchasers (as defined in section 1.1 of Schedule "A" herein) *must complete* **Form 2 – "Certificate of U.S. Accredited Investor Status"**.

   (f) All Subscribers *must complete* Form 3 – "Acknowledgement and Direction".

- 2 -

3. Return this subscription together with all applicable Forms to the Issuer at Suite 510, 580 Hornby Street, Vancouver, British Columbia, V6C 3B6, with payment for the total subscription price for the subscribed for Units by way of a certified cheque, money order or bank draft made payable to **"Cassels Brock & Blackwell LLP In Trust"** or by wire to:

| **Beneficiary Bank:** | Bank of Nova Scotia |
|---|---|
| Institution Number: | 002 |
| Swift Address: | NOSCCATT |
| Transit Number: | 47696 |
| ABA Routing Number: | 026 002 532 |
| Address: | Toronto Business Centre, 44 King Street West |
| | Toronto, Ontario M5H 1H1 |

**Beneficiary Name and Account Number:**

| Name of Beneficiary: | Cassels Brock and Blackwell LLP (in trust) |
|---|---|
| | Suite 2200, 885 West Georgia Street, Vancouver, British Columbia, V6C 3E8 |

| Account Type: | Canadian Dollar Trust Account Number: |
|---|---|
| Account Number: | 476961197118 |

**References:** The following **MUST** be referenced on the wire instructions:

**NEXTECH AR SOLUTIONS CORP. and REMITTER'S NAME**

NXT-00000230

- 3 -

**TO: NexTech AR Solutions Corp.**

1. The Subscriber irrevocably subscribes for and agrees to purchase from the Issuer the following securities:

   **Number of Units at $0.25 each:**     258,000

   Total subscription price for the subscribed Units:    $ 64,500

   (total subscription amounts must not be less than $50,000)

2. The Subscriber and the Issuer agree that the offering of the Units shall be on the terms and conditions specified in Schedules "A" and "B" hereto. The Subscriber hereby makes the representations, warranties, acknowledgments and agreements set out in Schedules "A" and "B" hereto and in all applicable Forms, and acknowledges and agrees that the Issuer and its respective counsel will and can rely on such representations, warranties, acknowledgments and agreements should this subscription be accepted.

3. Identity of and execution by Subscriber:

---

**BOX A: SUBSCRIBER INFORMATION AND EXECUTION**

Jim E. Evans

(name of subscriber)

1510 RoBES Landing      Marietta, Ga 30066

(address – include city, province and postal code)

6787543100   jimevanst@hotmail.com   X  Jim E. Evans

(telephone number)      (email address)      (signature of subscriber/authorized signatory)

Jim E. Evans

(if applicable, print name of signatory and office)

---

Execution hereof by the Subscriber shall constitute an offer and agreement to subscribe for the Units set out in Item 1 above pursuant to the provisions of Item 2 above, and acceptance by the Issuer shall effect a legal, valid and binding agreement between the Issuer and the Subscriber. This subscription may be executed and delivered by facsimile, and shall be deemed to bear the date of acceptance below.

4. If the Units are to be registered other than as set out in Box A, the Subscriber directs the Issuer to register and deliver the Units as follows:

---

**BOX B: ALTERNATE REGISTRATION INSTRUCTIONS**

(name of registered holder)

(address of registered holder – include city, province and postal code)

(registered holder: contact name, contact telephone number and contact email address)

---

5. If the Units are to be delivered other than as set out in Box A (or if completed, Box B):

---

**BOX C: ALTERNATE DELIVERY INSTRUCTIONS**

(name of recipient)

(address of recipient – include city, province and postal code)

(recipient: contact name, contact telephone number and contact email address)

---

- 4 -

6. If the Subscriber is purchasing as agent for a principal, and is not a trust company or trust corporation purchasing as trustee or agent for accounts fully managed by it or is not a person acting on behalf of an account fully managed by it (and in each such case satisfying the criteria set forth in NI 45-106), complete Box D below and provide as a separate attachment the personal information required on page 6 and all applicable Forms on behalf of such principal (a **"Disclosed Principal"**):

| BOX D: IDENTIFICATION OF PRINCIPAL |
| --- |
| (name of Disclosed Principal) |
| (address of Disclosed Principal – include city, province and postal code) |
| (Disclosed Principal: contact name, contact telephone number and contact email address) |

*[Signature page to follow]*

NXT-00000232

- 5 -

## ACCEPTANCE

This subscription is accepted and agreed to by the Issuer )
)                **NexTech AR Solutions Corp.**
as of the _____ day of _____, 2018.   )
)                Per: _____
)                     Authorized Signatory

NXT-00000233

- 6 -

## SCHEDULE A

1.    **Interpretation**

1.1    Unless the context otherwise requires, reference in this subscription to:

(a)    "**Applicable Securities Laws**" means the Securities Act or analogous legislation of the Selling Jurisdictions and all rules, regulations, policies, orders, notices and other instruments incidental thereto;

(b)    "**Closing**" refers to the completion of the purchase and sale of the Units, and if the purchase and sale occurs in two or more tranches, the "Closing" for purposes of any particular Unit shall be the completion of the purchase and sale of that particular Unit;

(c)    "**Closing Date**" means the date on which the Closing shall occur;

(d)    "**Exchange**" means any of the Toronto Stock Exchange, the TSX Venture Exchange, or the Canadian Securities Exchange;

(e)    "**Going Public Transaction**" means (i) a listing of the common share capital of the Issuer on any Exchange; (ii) the acquisition of the Issuer by an existing company listed on any Exchange, such that the resulting effect is that holders of the common share capital of the Issuer receive shares in the capital of the resulting public company; (iii) the assignment or transfer of substantially all of the assets or undertaking of the Issuer to an existing company listed on any Exchange; or (iv) any other type of transaction whatsoever which results in the current holders of the common share capital of the Issuer receiving shares of a company listed on the Exchange in exchange for their existing shares;

(f)    "**NI45-102**" and "**NI45-106**" refer to National Instrument 45-102 and National Instrument 45-106, respectively, of the Canadian Securities Administrators;

(g)    "**Offering**" has the meaning set forth in Section 2.1 of this Schedule "A";

(h)    "**Securities**" means, collectively, the Units, the Shares, the Warrants and the Warrant Shares, and for the purposes of a Going Public Transaction shall include any securities which may be issued to holders of such securities of the Issuer in the event the securities are exchanged for securities of an existing company listed on any Exchange in connection with a Going Public Transaction;

(i)    "**Selling Jurisdictions**" refers to all jurisdictions where the Units are sold;

(j)    "**subscription**" or "**subscription agreement**" means this subscription agreement and includes all schedules hereto and the Forms;

(k)    "**U.S. Person**" means a (a) U.S. Person as that term is defined in Rule 902(o) of Regulation S ("**Regulation S**") promulgated under the U.S. Securities Act, (b) any person purchasing securities on behalf or the account or benefit of any "U.S. Person" or any person in the United States, (c) any person that receives or received an offer of the securities while in the United States, (d) any person that is in the United States at the time the purchaser's buy order was made or this subscription was executed or delivered. "U.S. person" includes but is not limited to (i) any natural person resident in the United States; (ii) any partnership or corporation organized or incorporated under the laws of the United States; (iii) any partnership or corporation organized outside the United States by a U.S. person principally for the purpose of investing in securities not registered under the U.S. Securities Act, unless it is organized or incorporated, and owned, by accredited investors who are not natural persons, estates or trusts; (iv) any estate or trust of which any executor or administrator or trustee is a U.S. person;

(l)    "**U.S. Securities Act**" means the United States *Securities Act of 1933*, as amended;

(m)    "**Warrants**" means each transferable common share purchase warrant of the Issuer entitling the holder thereof to purchase one Warrant Share at a price of $0.50 per Warrant Share for a period of twenty-four (24) months from the date the Warrants are issued, subject to accelerated expiry upon the occurrence of certain events; and

- 7 -

      (n)      **"Warrant Shares"** mean the previously unissued common shares of the Issuer issuable upon the due exercise of the Warrants in accordance with the terms set out therein including payment therefore.

1.2      In the subscription, the following terms have the meanings defined in Regulation S: **"designated offshore securities market"**, **"directed selling efforts"**, **"foreign issuer"** and **"United States"**.

1.3      Unless otherwise stated, all dollar figures herein expressed are in Canadian Dollars.

1.4      References imputing the singular shall include the plural and vice versa; references imputing individuals shall include corporations, partnerships, societies, associations, trusts and other artificial constructs and vice versa; and references imputing gender shall include the opposite gender.

## 2.      Description of Offering and Securities

2.1      The Issuer is offering (the **"Offering"**) up to 8,000,000 Units at a price of \$0.25 per Unit for gross proceeds of up to \$2,000,000. Each Unit will consist of one Share and one Warrant, with each Warrant entitling the holder thereof to purchase one Warrant Share at a price of \$0.50 per Warrant Share for a period of twenty-four (24) months from the date the Warrants are issued. If, at any time following completion of a Going Public Transaction, the closing price of the Issuer's common shares on the Exchange is \$0.75 or more for the preceding ten (10) consecutive trading days, the Issuer will have the right to accelerate the expiry of the Warrants by giving notice, via news release, of its exercise of such right and thereafter the Warrants will, without further notice or act by Issuer, automatically expire and be of no further force and effect at 5:00 p.m. (Vancouver time) on the date that is thirty (30) days after the date of said news release. For greater certainty, the non-receipt by any one or more holders of the Warrants of such notice shall not invalidate the accelerated expiry of all the Warrants as aforesaid.

In the event a Going Public Transaction involves the exchange of the Warrants for securities of an existing public company listed on the Exchange, the exercise price of the Warrants and the applicable trigger price for the acceleration of the expiry date of those Warrants will be adjusted to account for the exchange ratio used to exchange common shares of the Issuer for common shares of the existing public company.

2.2      The Offering is not subject to any minimum aggregate amount and there can be no guarantees that the Issuer will raise sufficient funds to meet its present or future objectives.

2.3      The completion of transactions contemplated in this Subscription is subject to the following conditions:

      (a)      the receipt by the Issuer from the Subscriber, in form and content satisfactory to the Issuer in its sole discretion, of any other documents required by Applicable Securities Laws which the Issuer requests;

      (b)      the truth, at the time of acceptance and as at Closing, of the Subscriber's representations and warranties under this agreement; and

      (c)      the performance by the Subscriber of its covenants under this agreement.

## 3.      Eligibility and Subscription Procedure

3.1      The Offering is being made pursuant to exemptions (the **"Exemptions"**) from the registration and prospectus requirements of Applicable Securities Laws. The Subscriber acknowledges and agrees that the Issuer and its respective counsel will and can rely on the representations, warranties, acknowledgments and agreements of the Subscriber contained in this subscription and otherwise provided by the Subscriber to the Issuer to determine the availability of Exemptions should this subscription be accepted.

3.2      The Offering is not, and under no circumstances is to be construed as, a public offering of the Securities. The Offering is not being made, and this subscription does not constitute, an offer to sell or the solicitation of an offer to buy the Securities in any jurisdiction where, or to any person to whom, it is unlawful to make such offer or solicitation.

3.3      Subscribers must duly complete and execute this subscription together with all applicable Forms hereto **(please see the Instructions listed on the face page hereof)** and return them to the Issuer with payment for the total subscription price for the subscribed Units by way of a certified cheque, money order or bank draft made payable to **"Cassels Brock & Blackwell LLP In Trust"** or by wire as set out on the face page hereof.

- 8 -

3.4     Subscriptions are irrevocable. Prior to the Closing, the subscription price for the subscribed Units may be freely used by the Issuer, and such funds shall be deemed to be a non-interest bearing loan from the Subscriber to the Issuer until the issuance of the Units against such funds or the funds are otherwise returned to the Subscriber in whole or in part as provided for in Article 4.

3.5     A subscription will only be effective upon its acceptance by the Issuer. Subscriptions will only be accepted if the Issuer is satisfied that, and will be subject to a condition for the benefit of the Issuer that, the Offering can lawfully be made in the jurisdiction of residence of the Subscriber pursuant to an available Exemption and that all other Applicable Securities Laws have been and will be complied with in connection with the proposed distribution. The Issuer reserves the right to accept this subscription in whole or in part.

3.6     No disclosure document has been prepared or will be delivered to the Subscriber in connection with the Offering, and the Subscriber hereby expressly acknowledges and confirms that it has not received, and has no need for, any disclosure document in connection with the Offering.

## 4.     Closing Procedure

4.1     The Offering will be completed at one or more Closings at such time or times, on such date or dates, and at such place or places, as the Issuer may determine. At each Closing, the Issuer will deliver certificates representing the Units to those Subscribers whose subscriptions have been accepted.

4.2     In the event that the purchase and sale of the Units contemplated by this subscription is not otherwise completed or only completed in part, the Issuer shall, as the case may be, immediately return this subscription and the total subscription price for the subscribed Units or return the part of the part of the subscription price representing the number of Units in respect of which this subscription was not completed, all without interest or deduction.

## 5.     Reporting and Consent

5.1     The Subscriber, on its own behalf and on behalf of any other person for whom it is contracting hereunder, expressly consents and agrees to:

    (a)     the Issuer collecting personal information regarding the Subscriber for the purpose of completing the transactions contemplated by this subscription; and

    (b)     the Issuer releasing personal information regarding the Subscriber, and this Subscription, to securities regulatory authorities in compliance with Applicable Securities Laws and to other authorities as required by law.

The purpose of the collection of the information is to ensure the Issuer and its advisors will be able to issue Securities to the Subscriber in accordance with the instructions of the Subscriber and in compliance with applicable corporate, securities and other laws, and to obtain the information required to be provided in documents required to be filed with securities regulatory authorities under Applicable Securities Laws and with other authorities as required, which may include their public disclosure of such information. The Subscriber, on its own behalf and on behalf of any other person for whom it is contracting hereunder, further expressly consents and agrees to the collection, use and disclosure of all such personal information by securities regulatory authorities and other authorities in accordance with their requirements.

The contact information for the officer of the Issuer who can answer questions about the collection of information by the Issuer is as follows:

        Name & Title:      Evan Gappelberg, Chief Executive Officer
        Issuer Name:       **NexTech AR Solutions Corp.**
        Address:           Suite 510, 580 Hornby Street, Vancouver, British Columbia, V6C 3B6
        Email Address:     evan@nextechar.com

## 6.     Resale Restrictions and Legending of Securities

6.1     The Subscriber hereby acknowledges and agrees that the Offering is being made pursuant to Exemptions and, as a result, the Securities will be subject to a number of statutory restrictions on resale and trading. Until these restriction expire, the

NXT-00000236

- 9 -

Subscriber will not be able to sell or trade the Securities unless the Subscriber complies with an exemption from the prospectus and registration requirements under Applicable Securities Laws. In general, unless permitted under Applicable Securities Laws, the Subscriber cannot trade the Securities in Canada until the Issuer becomes a reporting issuer in a jurisdiction of Canada. **See also section 6.3 below**.

6.2     The Subscriber acknowledges and agrees that:

    (a)     the constating documents of the Issuer provide that the Securities may not be sold, transferred or disposed of without the consent of the Issuer's directors, which can effectively be withheld at the discretion of the directors;

    (b)     the Issuer is not a reporting issuer in any jurisdiction, and has no present intention to become a reporting issuer in any jurisdiction;

    (c)     the Securities will not be listed or posted for trading on any stock exchange in any jurisdiction, and the Issuer has no present intention to list its common shares on any stock exchange;

    (d)     the Securities have not been and will not be registered under the U.S. Securities Act, or any State securities laws, and may not be offered and sold, directly or indirectly, in the United States or by or to or for the account or benefit of a U.S. Person without registration under the U.S. Securities Act and any applicable State securities laws, unless an exemption from registration is available;

    (e)     the Issuer has no present intention and is not obligated under any circumstances to register the Securities, or to take any other actions to facilitate or permit any proposed resale or transfer thereof in the United States or otherwise by or to or for the account or benefit of a U.S. Person, and in particular, the Subscriber and the Issuer further acknowledge and agree that the Issuer is hereby required to refuse to register any transfer of the Securities not made in accordance with the provisions of Regulation S, pursuant to registration under the U.S. Securities Act, or pursuant to an available exemption from registration.

6.3     **The foregoing discussion on hold periods and resale restrictions is a general summary only and is not intended to be comprehensive or exhaustive, or to apply in all circumstances.** Subscribers are advised to consult with their own advisors concerning their particular circumstances and the particular nature of the restrictions on transfer, the extent of the applicable hold period and the possibilities of utilizing any further Exemptions or the obtaining of a discretionary order to transfer any Securities. Subscribers are further advised against attempting to resell or transfer any Securities until they have determined that any such resale or transfer is in compliance with the requirements of all Applicable Securities Laws and the terms of this Subscription, including but not limited to compliance with restrictions on certain pre-trade activities and the filing with the appropriate regulatory authority of reports required upon any resale of the Securities.

6.4     To evidence the applicable hold periods and restrictions on resale and transferability prescribed by Applicable Securities Laws, the Issuer will place a legend on the certificates representing the Securities as are required under Applicable Securities Laws, or as it may otherwise deem necessary or advisable.

6.5     The Subscriber agrees that in the event the Issuer completes a Going Public Transaction, the Subscriber will enter into any escrow or voluntary pooling agreements as may be required by any regulatory authority or by any broker, investment dealer or sponsor retained by the Issuer in respect of such a transaction, and further agrees to execute any documents as may be required to put such escrow or pooling agreements into effect.

## 7.     **Finder's Fees**

7.1     Subject to compliance with applicable laws, the Issuer may pay a finder's fee or commission to persons who assist in the introduction of investors to the Issuer, which without limiting the foregoing may include cash, common shares and/or convertible securities. No finder's fee will be payable in respect of Units sold pursuant to Section 4(2) of the U.S. Securities Act and Rule 506 of Regulation D ("**Regulation D**") promulgated under the U.S. Securities Act to a finder who is not registered as a broker-dealer under the United States Securities Exchange Act of 1934, as amended, and applicable state securities laws, or unless such finder is exempt from such registration requirements.

- 10 -

## 8.    Miscellaneous

8.1     The Subscriber acknowledges and agrees that all costs and expenses incurred by the Subscriber, including any fees and disbursements of any special counsel retained by the Subscriber, relating to the purchase, resale or transfer of the Securities shall be borne by the Subscriber.

8.2     Each party to this subscription covenants that it will, from time to time both before and after the Closing, at the request and expense of the requesting party, promptly execute and deliver all such other notices, certificates, undertakings, escrow agreements and other instruments and documents, and shall do all such other acts and other things, as may be necessary or desirable for the purposes of carrying out the provisions of this subscription.

8.3     Except as expressly provided for in this subscription and in any agreements, instruments and other documents contemplated or provided for herein, this subscription contains the entire agreement between the parties with respect to the sale of the Securities and there are no other terms, conditions, representations, warranties, acknowledgments and agreements, whether expressed or implied, whether written or oral, and whether made by statute, common law, the parties hereto or anyone else.  This subscription may only be amended by instrument in writing signed by the parties hereto.

8.4     The invalidity or unenforceability of any particular provision of this subscription or any part thereof shall not affect or limit the validity or enforceability of the remaining provisions of this subscription or part thereof.

8.5     This subscription, including without limitation the terms, conditions, representations, warranties, acknowledgments and agreements contained herein, shall survive and continue in full force and effect and be binding upon the Subscriber and the Issuer notwithstanding the completion of the purchase and sale of the Securities, the conversion or exercise thereof and any subsequent disposition thereof by the Subscriber.

8.6     This subscription is not transferable or assignable.  This subscription shall enure to the benefit of and be binding upon the parties hereto and their respective successors and permitted assigns.

8.7     This subscription is governed by the laws of the Province of British Columbia and the federal laws of Canada applicable therein.  The Subscriber, in his personal or corporate capacity, irrevocably attorns to the jurisdiction of the courts of the Province of British Columbia.

8.8     Time shall be of the essence hereof.

8.9     This subscription may be executed in as many counterparts as may be necessary and delivered by facsimile, and such counterparts and facsimiles shall be deemed to constitute one and the same original instrument.  Without limiting the foregoing, the Issuer may rely on facsimile delivery of this subscription, and acceptance of such facsimile shall be effective to create a valid and binding agreement between the Subscriber and the Issuer.

NXT-00000238

**SCHEDULE B**

1. **Representations, Warranties, Acknowledgments and Agreements of the Subscriber**

1.1 The Subscriber hereby represents, warrants, certifies, acknowledges and agrees for the benefit of the Issuer and its respective counsel that:

(a) the Subscriber is resident in the jurisdiction set out on page 3 above, and if such address is not located in British Columbia, the Subscriber expressly certifies that it is not resident in British Columbia;

(b) no securities commission or similar regulatory authority has reviewed or passed on the merits of the Securities, and in particular no governmental agency or authority, stock exchange or other regulatory body or any other entity has made any finding or determination as to the merit for investment of, nor have any such agencies, authorities, exchanges, bodies or other entities made any recommendation or endorsement with respect to, the Securities;

(c) there is no government or other insurance covering the Securities;

(d) there are risks associated with the purchase of the Securities, being speculative investments which involve a substantial degree of risk;

(e) there are restrictions on the Subscriber's ability to resell the Securities and it is the responsibility of the Subscriber to find out what those restrictions are and to comply with them before selling the Securities;

(f) the Issuer is not a reporting issuer under the laws of any jurisdiction, and its common shares are not listed or posted for trading on stock exchange;

(g) the Issuer has advised the Subscriber that it is relying on one or more exemptions from the requirements to provide the Subscriber with a prospectus and to sell securities through a person registered to sell securities under the Applicable Securities Laws, and as a consequence of acquiring the Securities pursuant to such exemption, certain protections, rights and remedies provided in applicable securities legislation, including statutory rights of rescission or damages, may not be available to it;

(h) the Subscriber has been further advised that due to the fact that no prospectus has been or is required to be filed with respect to any of the Securities under Applicable Securities Laws (i) the Subscriber may not receive information that might otherwise be required to be provided to it under such legislation, (ii) the Issuer is relieved from certain obligations that would otherwise apply under applicable legislation, and (iii) the Subscriber is restricted from using certain of the civil remedies available under such legislation;

(i) no person has made to the Subscriber any written or oral representations (i) that any person will resell or repurchase the Securities, (ii) that any person will refund the purchase price for the Securities, (iii) as to the future price or value of the Securities, or (iv) that the Securities will be listed and posted for trading on any stock exchange or that application has been made to list the common shares of the Issuer on any stock exchange;

(j) the Subscriber is capable by reason of knowledge and experience in financial and business matters in general, and investments in particular, of assessing and evaluating the merits and risks of an investment in the Securities, and is and will be able to bear the economic loss of its entire investment in any of the Securities and can otherwise be reasonably assumed to have the capacity to protect its own interest in connection with the investment;

(k) the Subscriber has been advised to consult its own investment, legal and tax advisors with respect to the merits and risks of an investment in the Securities, Applicable Securities Laws and applicable resale restrictions, and in all cases the Subscriber has not relied upon the Issuer or its respective counsel or advisors for investment, legal or tax advice, always having, if desired, in all cases sought the advice of the Subscriber's own personal investment advisor, legal counsel and tax advisors, and in particular, the Subscriber has been advised and understands that it is solely responsible, and neither the Issuer nor its respective counsel or advisors are in any way responsible, for the Subscriber's compliance with Applicable Securities Laws and with applicable resale restrictions regarding the holding and disposition of the Securities;

(l)    to the knowledge of the Subscriber, the Offering was not advertised or solicited in any manner in contravention of Applicable Securities Laws, and has not been made through or as a result of any general solicitation or general advertising or any seminar or meeting whose attendees have been invited by general solicitation or general advertising;

(m)    the Subscriber has no knowledge of a "material fact" or "material change", as those terms are defined in the Applicable Securities Laws applicable in its jurisdiction of residence, in respect of the affairs of the Issuer that has not been generally disclosed to the public;

(n)    the Subscriber is not an investment club;

(o)    the Subscriber has the legal capacity and competence to enter into and execute this subscription and to take all actions required pursuant hereto, and if the Subscriber is not an individual, it is also duly formed and validly subsisting under the laws of its jurisdiction of formation and all necessary approvals by its directors, shareholders, partners and others have been obtained to authorize the entering into and execution of this subscription and the taking of all actions required hereto on behalf of the Subscriber;

(p)    the Subscriber has duly and validly entered into, executed and delivered this subscription and it constitutes a legal, valid and binding obligation of the Subscriber enforceable against it in accordance with its terms subject to applicable bankruptcy, insolvency, reorganization, moratorium and other laws of general application affecting the enforcement of creditors' rights generally and as limited by laws relating to the availability of equitable remedies;

(q)    the entering into of this subscription and the transactions contemplated hereby does not and will not, conflict with, result in a violation or breach of, or constitute a default under, any of the terms and provisions of any law, regulation, order or ruling applicable to the Subscriber, or of any agreement, contract or indenture, written or oral, to which it is or may be a party or by which it is or may be bound, or, if the Subscriber is a corporation, its constating documents or any resolutions of its directors or shareholders;

(r)    with respect to compliance with the U.S. Securities Act:

    (i)    none of the Securities have been registered under the U.S. Securities Act, or under any state securities or "blue sky" laws of any state of the United States, and, unless so registered, may not be offered or sold except pursuant to an effective registration statement under the U.S. Securities Act or pursuant to an exemption from, or in a transaction not subject to, the registration requirements of the U.S. Securities Act;

    (ii)    the Subscriber is neither an underwriter of, or dealer in, the common shares of the Issuer, nor participating, pursuant to a contractual agreement or otherwise, in the distribution of the Securities;

    (iii)    the Subscriber is acquiring the Securities for investment only and not with a view to resale or distribution and, in particular, has no intention to distribute, directly or indirectly, all or any of the Securities in the United States or to U.S. Persons or to persons in the United States, and the Subscriber does not have any agreement or understanding (either written or oral) with any U.S. Person or person in the United States respecting (A) the transfer or assignment of any rights or interests in any of the Securities; (B) the division of profits, losses, fees, commissions, or any financial stake in connection with this subscription or the Securities; or (C) the voting of any securities offered hereby or underlying any securities offered hereby;

    (iv)    the Subscriber does not intend to and will not engage in hedging transactions with regard to the Securities unless in compliance with the U.S. Securities Act;

    (v)    any person who acquires Securities may at the Issuer's discretion be required to provide the Issuer with written certification that it is not a U.S. Person or person in the United States and that the Securities are not being acquired, directly or indirectly, for the account or benefit of a U.S. Person or person in the United States; and

NXT-00000240

(vi) the current structure of this transaction and all transactions and activities contemplated hereunder, and the Subscriber's participation therein, is not a scheme to avoid the registration requirements of the U.S. Securities Act;

(s) unless the Subscriber has completed Form 2 – Certificate of U.S. Accredited Investor Status, attached hereto:

(i) the Subscriber is not a U.S. Person or person in the United States and is not acquiring the Securities, directly or indirectly, for the account or the benefit of a U.S. Person or person in the United States;

(ii) the Securities have not been offered to the Subscriber while the Subscriber was in the United States, and the individuals making the order to purchase the Securities and executing and delivering this subscription for the account or benefit of the Subscriber were not in the United States when the order was placed or when this subscription was executed and delivered; and

(iii) the Subscriber is not purchasing the Units as the result of any "directed selling efforts"; and

(t) if the Subscriber has completed Form 2 – Certificate of U.S. Accredited Investor Status, attached hereto:

(i) the Subscriber, by completing Form 2 – Certificate of U.S. Accredited Investor Status, is representing and warranting to the Issuer that the Subscriber is an "accredited investor" as the term is defined in Regulation D, and that all information contained in the Subscriber's completed Form 2 – Certificate of U.S. Accredited Investor Status is complete and accurate in all respects and may be relied upon by the Issuer;

(ii) the Subscriber will not acquire the Securities as a result of, and will not itself engage in, any activities undertaken for the purpose of, or that could reasonably be expected to have the effect of, conditioning the market in the United States for the resale of any of the Securities; provided, however, that the Subscriber may sell or otherwise dispose of any of the Securities pursuant to registration thereof under the U.S. Securities Act and any applicable state securities laws or under an exemption from such registration requirements;

(iii) the Subscriber and its advisor(s) have had a reasonable opportunity to ask questions of and receive answers from the Issuer in connection with the distribution of the Securities hereunder, and to obtain additional information, to the extent possessed or obtainable without unreasonable effort or expense, necessary to verify the accuracy of the information about the Issuer;

(iv) the Subscriber hereby acknowledges that that upon the issuance thereof, and until such time as the same is no longer required under the applicable securities laws and regulations, the certificates representing any of the Securities will bear legends in substantially the form set forth on Form 2 hereto;

(v) the Issuer will refuse to register any transfer of the Securities not made pursuant to an effective registration statement under the U.S. Securities Act or pursuant to an available exemption from the registration requirements of the U.S. Securities Act; and

(vi) the statutory and regulatory basis for the exemption claimed for the offer of the Securities would not be available if the Offering is part of a plan or scheme to evade the registration provisions of the U.S. Securities Act.

1.2 The Subscriber hereby represents, warrants, acknowledges and agrees for the benefit of the Issuer and its respective counsel that it is purchasing the Securities as principal (or is deemed under applicable securities laws to be doing so), not for the benefit of any other person and not with a view to the resale or distribution of all or any of the Securities, and:

(a) **in respect of all Subscribers resident in or otherwise subject to the securities laws of a Province of Canada other than Ontario**, it is:

(i) a person described in section 2.3 of NI45-106 by virtue of being an "accredited investor" as defined in NI45-106, and provided that it is not a person that is or has been created or used solely to purchase or

hold securities as an "accredited investor" as described in paragraph (m) of the definition of "accredited investor" in NI45-106;

(ii)    a person described in section 2.5 of NI45-106 by virtue of being (A) a director, executive officer or control person of the Issuer or of an affiliate of the Issuer; (B) a spouse, parent, grandparent, brother, sister, child or grandchild of a director, executive officer or control person of the Issuer or an affiliate of the Issuer; (C) a parent, grandparent, brother, sister, child or grandchild of the spouse of a director, executive officer or control person of the Issuer or of an affiliate of the Issuer; (D) a close personal friend or close business associate of a director, executive officer or control person of the Issuer or of an affiliate of the Issuer; (E) a founder of the Issuer or a spouse, parent, grandparent, brother, sister, child, close personal friend or close business associate of a founder of the Issuer; (F) a parent, grandparent, brother, sister or child of a spouse of a founder of the Issuer; (G) a person of which a majority of the voting securities are beneficially owned by, or a majority of the directors are, persons described in paragraphs 1.2(a)(ii)(A) to 1.2(a)(ii)(F); or (H) a trust or estate of which all of the beneficiaries or a majority of the trustees are persons described in paragraphs 1.2(a)(ii)(A) to 1.2(a)(ii)(F);

(iii)    a person described in section 2.10 of NI45-106 by virtue of the Units having an acquisition cost to the purchaser of not less than $150,000 paid in cash, and provided that it is not a person that is or has been created or used solely to purchase or hold securities in reliance on the exemption provided by section 2.10 of NI45-106, and further provided that if it is resident in or otherwise subject to the securities laws of Alberta, no document purporting to describe the business and affairs of the Issuer, which has been prepared for review by prospective purchasers to assist such prospective purchasers in making an investment decision in respect of the Units, has been delivered to or summarized for or seen by or requested by the Subscriber in connection with the Offering; or

(iv)    a person described in section 2.24 of NI45-106 by virtue of being an employee, "executive officer", "director" or "consultant" of the Issuer or of a "related entity" of the Issuer or by virtue of being a "permitted assign" of the foregoing persons, as those terms are defined in sections 1.1 or 2.22 of NI45-106, and its participation in the Offering is voluntary;

and the Subscriber has certified same by marking the applicable boxes and signing and returning **Form 1** herein; **and**

(b)    **in respect of all Subscribers resident in or otherwise subject to the securities laws of Ontario**, it is:

(i)    a person described in subsection 1.2(a)(i), (iii) or (iv) of this Schedule B; **or**

(ii)    a person described in section 2.7 of NI45-106 by virtue of being (A) a founder of the Issuer; (B) an affiliate of a founder of the Issuer; (C) a spouse, parent, brother, sister, grandparent or child of an executive officer, director or founder of the Issuer; or (D) a person that is a control person of the Issuer,

and the Subscriber has certified same by marking the applicable boxes and signing and returning **Form 1** herein; **and**

(c)    **in respect of all Subscribers resident outside of Canada or the United States**:

(i)    it is knowledgeable of, or has been independently advised as to, the applicable securities laws of the securities regulatory authorities (the **"International Authorities"**) having application to the Offering and the Issuer in the jurisdiction (the **"International Jurisdiction"**) in which the Subscriber is resident;

(ii)    it is purchasing Securities pursuant to an applicable exemption from any prospectus, registration or similar requirements under the applicable securities laws of the International Jurisdiction, or the Subscriber is permitted to purchase the Securities under the applicable securities laws of the International Jurisdiction without the need to rely on such exemptions;

(iii) the applicable securities laws of the International Jurisdiction do not require the Issuer to make any filings or seek any approvals of any nature whatsoever with or from any of the International Authorities in connection with the Offering or the Securities, including any resale thereof;

(iv) the Offering and the completion of the offer and sale of the Securities to the Subscriber as contemplated herein complies in all respects with the applicable securities laws of the International Jurisdiction, and does not trigger:

(A) any obligation to prepare and file a prospectus or similar or other offering document, or any other report with respect to such purchase in the International Jurisdiction; or

(B) any continuous disclosure reporting obligation of the Issuer in the International Jurisdiction; and

(v) it will, if requested by the Issuer, deliver to the Issuer a certificate or opinion of local counsel from the International Jurisdiction which will confirm the matters referred to in subparagraphs (ii), (iii) and (iv) above to the satisfaction of the Issuer, acting reasonably.

## 2. Reliance, Notification, Indemnity and Survival

2.1 The Subscriber acknowledges and agrees that the Issuer and its respective counsel will and can rely on the representations, warranties, certifications, acknowledgments and agreements of the Subscriber contained in this subscription and otherwise provided by the Subscriber to and with the Issuer to determine the availability of Exemptions should this subscription be accepted, and otherwise in completing the offering, issue and sale of the Securities to the Subscriber in accordance with applicable laws.

2.2 The Subscriber undertakes to notify the Issuer immediately of any change in any representation, warranty or other information pertaining to the Subscriber herein or otherwise provided in connection with this subscription which takes place prior to Closing.

2.3 The Subscriber hereby agrees to indemnify and hold harmless the Issuer against all actions, claims, damages, costs, expenses, losses and liabilities which it may suffer or incur as a result of this subscription.

2.4 The representations, warranties, acknowledgements and agreements made by the Subscriber in this subscription and otherwise provided by the Subscriber and the Issuer shall be true and correct as of the date of execution of this subscription and as of Closing as if repeated thereat, and shall survive the Closing.

NXT-00000243

FORM 1

## CERTIFICATE FOR EXEMPTION

In addition to the representations, warranties acknowledgments and agreements contained in the subscription to which this Form 1 – Certificate for Exemption is attached, the Subscriber hereby represents, warrants and certifies to the Issuer and the Agents that the Subscriber is purchasing the securities set out in the subscription as principal, it is resident in the jurisdiction set out on the Acceptance Page of the subscription and: **[check all appropriate boxes]**

### Category 1: Accredited Investor

The Subscriber is **[check appropriate box and complete related blanks]**:

☐ (a)  except in Ontario, a Canadian financial institution, or a Schedule III bank;

☐ (b)  except in Ontario, the Business Development Bank of Canada incorporated under the *Business Development Bank of Canada Act* (Canada);

☐ (c)  except in Ontario, a subsidiary of any person referred to in paragraphs (a) or (b), if the person owns all of the voting securities of the subsidiary, except the voting securities required by law to be owned by directors of that subsidiary;

☐ (d)  except in Ontario, a person registered under the securities legislation of a jurisdiction of Canada, as an adviser or dealer;

☐ (e)  an individual registered under the securities legislation of a jurisdiction of Canada as a representative of a person referred to in paragraph (d);

☐ (e.1)  an individual formerly registered under the securities legislation of a jurisdiction of Canada, other than an individual formerly registered solely as a representative of a limited market dealer under one or both of the Securities Act (Ontario) or the Securities Act (Newfoundland and Labrador);

☐ (f)  except in Ontario, the Government of Canada or a jurisdiction of Canada, or any crown corporation, agency or wholly owned entity of the Government of Canada or a jurisdiction of Canada;

☐ (g)  except in Ontario, a municipality, public board or commission in Canada and a metropolitan community, school board, the Comité de gestion de la taxe scolaire de l'île de Montréal or an intermunicipal management board in Québec;

☐ (h)  except in Ontario, any national, federal, state, provincial, territorial or municipal government of or in any foreign jurisdiction, or any agency of that government;

☐ (i)  except in Ontario, a pension fund that is regulated by either the Office of the Superintendent of Financial Institutions (Canada), a pension commission or similar regulatory authority of a jurisdiction of Canada;

☐ (j)  an individual who, either alone or with a spouse, beneficially owns financial assets having an aggregate realizable value that before taxes, but net of any related liabilities, exceeds Cdn$1,000,000;
**If qualifying under this paragraph, the Subscriber must also complete and sign Schedule 1 attached hereto entitled "*Form 45-106F9: Form for Individual Accredited Investors*"**

☐ (j.1)  an individual who beneficially owns financial assets having an aggregate realizable value that, before taxes, but net of any related liabilities exceeds $5,000,000;

☐ (k)  an individual whose net income before taxes exceeded Cdn$200,000 in each of the two most recent calendar years or whose net income before taxes combined with that of a spouse exceeded Cdn$300,000 in each of the two most recent calendar years and who, in either case, reasonably expects to exceed that net income level in the current calendar year;
**If qualifying under this paragraph, the Subscriber must also complete and sign Schedule 1 attached hereto entitled "*Form 45-106F9: Form for Individual Accredited Investors*"**

☐    (l)    an individual who, either alone or with a spouse, has net assets of at least Cdn$5,000,000;
**If qualifying under this paragraph, the Subscriber must also complete and sign Schedule 1 attached hereto entitled "*Form 45-106F9: Form for Individual Accredited Investors*"**

☐    (m)    a person, other than an individual or investment fund, that has net assets of at least Cdn$5,000,000 as shown on its most recently prepared financial statements;

☐    (n)    an investment fund that distributes or has distributed its securities only to:

       (i)    a person that is or was an accredited investor at the time of the distribution;

       (ii)    a person that acquires or acquired securities in the circumstances referred to in sections 2.10 and 2.19 of NI 45-106, or

       (iii)    a person described in paragraph (i) or (ii) that acquires or acquired securities under section 2.18 of NI 45-106;

☐    (o)    an investment fund that distributes or has distributed securities under a prospectus in a jurisdiction of Canada for which the regulator or, in Quebec, the securities regulatory authority, has issued a receipt;

☐    (p)    a trust company or trust corporation registered or authorized to carry on business under the *Trust and Loan Companies Act* (Canada) or under comparable legislation in a jurisdiction of Canada or a foreign jurisdiction, acting on behalf of a fully managed account managed by the trust company or trust corporation, as the case may be;

☐    (q)    a person acting on behalf of a fully managed account managed by that person, if that person is registered or authorized to carry on business as an adviser or the equivalent under the securities legislation of a jurisdiction of Canada or a foreign jurisdiction;

☐    (r)    a registered charity under the *Income Tax Act* (Canada) that, in regard to the trade, has obtained advice from an eligibility adviser or an adviser registered under the securities legislation of the jurisdiction of the registered charity to give advice on the securities being traded;

☐    (s)    an entity organized in a foreign jurisdiction that is analogous to any of the entities referred to in paragraphs (a) to (d) or paragraph (i) in form and function;

☐    (t)    a person in respect of which all of the owner of interests, direct, indirect or beneficial, except the voting securities required by law to be owned by directors, are persons that are accredited investors;

☐    (u)    an investment fund that is advised by a person registered as an adviser or a person that is exempt from registration as an adviser;

☐    (v)    a person that is recognized or designated by the securities regulatory authority or, except in Ontario and Quebec, the regulator as an accredited investor; or

☐    (w)    a trust established by an accredited investor for the benefit of the accredited investor's family members of which a majority of the trustees are accredited investors and all of the beneficiaries are the accredited investor's spouse, a former spouse of the accredited investor or a parent, grandparent, brother, sister, child or grandchild of that accredited investor, of that accredited investor's spouse or of that accredited investor's former spouse.

**AND**

If the Subscriber is a resident of, or otherwise subject to the securities laws of, Ontario, the Subscriber is **[check appropriate box]**:

☐    (aa)    a bank listed in Schedule I, II or III to the *Bank Act* (Canada);

☐    (bb)    an association to which the *Cooperative Credit Associations Act* (Canada) applies or a central cooperative credit society for which an order has been made under subsection 473(1) of that Act;

☐    (cc)    a loan corporation, trust company, trust corporation, insurance company, treasury branch, credit union, caisse populaire, financial services cooperative or credit union league or federation that is authorized by a statute of Canada or Ontario to carry on business in Canada or Ontario, as the case may be;

NXT-00000245

☐ (dd) the Business Development Bank of Canada;

☐ (ee) a subsidiary of any person or company referred to in clause (aa), (bb), (cc) or (dd), if the person or company owns all of the voting securities of the subsidiary, except the voting securities required by law to be owned by directors of that subsidiary;

☐ (ff) a person or company registered under the securities legislation of a province or territory of Canada as an adviser or dealer, except as otherwise prescribed by the regulations;

☐ (gg) the Government of Canada, the government of a province or territory of Canada, or any Crown corporation, agency or wholly owned entity of the Government of Canada or of the government of a province or territory of Canada;

☐ (hh) a municipality, public board or commission in Canada and a metropolitan community, school board, the Comité de gestion de la taxe scolaire de l'Île de Montréal or an intermunicipal management board in Quebec;

☐ (ii) any national, federal, state, provincial, territorial or municipal government of or in any foreign jurisdiction, or any agency of that government;

☐ (jj) a pension fund that is regulated by either the Office of the Superintendent of Financial Institutions (Canada) or a pension commission or similar regulatory authority of a province or territory of Canada;

☐ (kk) a person or company that is recognized or designated by the Ontario Securities Commission as an accredited investor; or

☐ (ll) such other persons or companies as may be prescribed by the regulations under the *Securities Act* (Ontario).

**Additional Instruction: If the Subscriber is an individual and qualifies under Category 1 pursuant to paragraphs (j), (k) or (l), it must also complete and sign Schedule 1 attached hereto entitled "*Form 45-106F9: Form for Individual Accredited Investors*".**

**Definitions:**

**"Canadian financial institution"** means

(a) an association governed by the *Cooperative Credit Associations Act* (Canada) or a central cooperative credit society for which an order has been made under section 473(1) of that Act, or

(b) a bank, loan corporation, trust company, trust corporation, insurance company, treasury branch, credit union, caisse populaire, financial services cooperative, or league that, in each case, is authorized by an enactment of Canada or a jurisdiction of Canada to carry on business in Canada or a jurisdiction of Canada;

**"EVCC"** means an employee venture capital corporation that does not have a restricted constitution, and is registered under Part 2 of the *Employee Investment Act* (British Columbia), R.S.B.C. 1996 c. 112, and whose business objective is making multiple investments;

**"financial assets"** means

(a) cash,

(b) securities, or

(c) a contract of insurance, a deposit or an evidence of a deposit that is not a security for the purposes of securities legislation;

**"fully managed account"** means an account of a client for which a person makes the investment decisions if that person has full discretion to trade in securities for the account without requiring the client's express consent to a transaction;

**"investment fund"** means a mutual fund or a non-redeemable investment fund, and, for greater certainty in British Columbia, includes an EVCC and a VCC;

**"person"** includes

    (a)    an individual,

    (b)    a corporation,

    (c)    a partnership, trust, fund and an association, syndicate, organization or other organized group of persons, whether incorporated or not, and

    (d)    an individual or other person in that person's capacity as a trustee, executor, administrator or personal or other legal representative;

**"related liabilities"** means

    (a)    liabilities incurred or assumed for the purpose of financing the acquisition or ownership of financial assets, or

    (b)    liabilities that are secured by financial assets;

**"Schedule III bank"** means an authorized foreign bank named in Schedule III of the *Bank Act* (Canada);

**"spouse"** means, an individual who,

    (a)    is married to another individual and is not living separate and apart within the meaning of the *Divorce Act* (Canada), from the other individual; or

    (b)    is living with another individual in a marriage-like relationship, including a marriage-like relationship between individuals of the same gender; or

    (c)    in Alberta, is an individual referred to in paragraph (a) or (b), or is an adult interdependent partner within the meaning of the *Adult Interdependent Relationships Act* (Alberta);

**"subsidiary"** means in issuer that is controlled directly or indirectly by another issuer and includes a subsidiary of that subsidiary;

**"VCC"** means a venture capital corporation registered under Part 1 of the *Small Business Venture Capital Act* (British Columbia), R.S.B.C. 1996 c. 429, whose business objective is making multiple investments.

### Category 2: Family, Friends and Business Associates

The Subscriber is **[check appropriate box and complete related blanks]**:

☐    (a)    a director, executive officer or control person of the Issuer or of an affiliate of the Issuer;

☐    (b)    a spouse, parent, grandparent, brother, sister, grandchild or child of a director, executive officer or control person of the Issuer or of an affiliate of the Issuer;

☐    (c)    a parent, grandparent, brother, sister, grandchild or child of the spouse of a director, executive officer or control person of the Issuer or of an affiliate of the Issuer;

☐    (d)    a close personal friend* of a director, executive officer or control person of the Issuer or of an affiliate of the Issuer;

☐    (e)    a close business associate** of a director, executive officer or control person of the Issuer or of an affiliate of the Issuer;

☐    (f)    a founder of the Issuer or a spouse, parent, grandparent, brother, sister, grandchild, child, close personal friend or close business associate of a founder of the Issuer;

☐    (g)    a parent, grandparent, brother, sister, grandchild or child of a spouse of a founder of the Issuer,

☐    (h)    a person of which **a majority** of the voting securities are beneficially owned by persons described in paragraphs (a) to (g);

☐    (i)    a person of which **a majority** of the directors are persons described in paragraphs (a) to (g);

☐   (j)    a trust or estate of which **all** of the beneficiaries are persons described in paragraphs (a) to (g); or

☐   (k)    a trust or estate of which **a majority** of the trustees or executors are persons described in paragraphs (a) to (g),

**of which the relevant director, executive officer, control person or founder of the Issuer or affiliate thereof referred to in paragraphs (b) to (k) above is:**

State name: _____

State the length of your relationship with this person: _____

**Additional Instruction: If the Subscriber qualifies under Category 2 and is a resident of Ontario, it must also complete and sign Schedule 2 attached hereto entitled "*Form 45-106F12: Risk Acknowledgment Form for Family, Friend and Business Associate Investors*".**

**Notes:**

\*    "**close personal friend**" means an individual who has known the named director, executive officer, control person or founder well enough and for a sufficient period of time to be in a position to assess the capabilities and trustworthiness of that person. The term "close personal friend" can include a family member who is not already specifically identified in paragraphs (b), (c), (f) or (g) if the family member otherwise meets the criteria described above. An individual's relationship with the named director, executive officer, control person or founder must be direct. An individual is not a "close personal friend" solely because that individual is a relative, a member of the same club, organization, association or religious group, a co-worker, colleague or associate at the same workplace, a client, customer, former client or former customer, a mere acquaintance, or connected through some form of social media, such as Facebook, Twitter or LinkedIn.

\*\*  "**close business associate**" means an individual who has had sufficient prior business dealings with the named director, executive officer, control person or founder to be in a position to assess the capabilities and trustworthiness of that person. An individual's relationship with the named director, executive officer, control person or founder must be direct. An individual is not a "close business associate" solely because that individual is a member of the same club, organization, association or religious group, a co-worker, colleague or associate at the same workplace, a client, customer, former client or former customer, a mere acquaintance, or connected through some form of social media, such as Facebook, Twitter or LinkedIn.

**Category 3: $150,000 Purchaser**

☐    The Subscriber is not an individual and has an acquisition cost for the Units of not less than $150,000 paid in cash, and is not a person that is or has been created or used solely to purchase or hold securities in reliance on the exemption provided by section 2.10 of NI 45-106.

**Category 4: Employees, Officers, Directors and Consultants**

The Subscriber is **[check appropriate box]**:

☐   (a)    an employee of the Issuer or of a "related entity" of the Issuer;

☐   (b)    an executive officer of the Issuer or of a "related entity" of the Issuer;

☐   (c)    a director of the Issuer or of a "related entity" of the Issuer;

☐   (d)    a consultant of the Issuer or of a "related entity" of the Issuer; or

☐   (e)    a "permitted assign" of a person described in paragraphs (a) to (d),

and its participation in the Offering is voluntary.

**Category 5: Founder, Control Person and Family (only available for Ontario residents)**

The Subscriber is resident in, or otherwise subject to the securities laws of, Ontario, and is **[check appropriate box and complete related blanks]**:

☐    (a)    a founder of the Issuer;

☐    (b)    an affiliate of a founder of the Issuer;

☐    (c)    a spouse, parent, brother, sister, grandparent, grandchild or child of an executive officer, director or founder of the Issuer, of which the relevant executive officer, director or founder is _____; or

☐    (d)    a person that is a control person of the Issuer.

\* \* \* \* \* \* \*

The representations, warranties, statements and certification made in this Certificate are true and accurate as of the date of this Certificate and will be true and accurate as of the Closing. If any such representation, warranty, statement or certification becomes untrue or inaccurate prior to the Closing, the Subscriber shall give the Issuer immediate written notice thereof.

The Subscriber acknowledges and agrees that the Issuer will and can rely on this Certificate in connection with the Subscriber's subscription.

IN WITNESS, the undersigned has executed this Certificate as of the _____ day of _____, 2018.

**If a corporation, partnership or other entity:**      **If an individual:**

_____      _____
*Print Name of Subscriber*                                 *Print Name of Subscriber*

_____      _____
*Signature of Authorized Signatory*                       *Signature*

_____      _____
*Name and Position of Authorized Signatory*        *Jurisdiction of Residence of Subscriber*

_____
*Jurisdiction of Residence of Subscriber*

**4. Your name and signature**

By signing this form, you confirm that you have read this form and you understand the risks of making this investment as identified in this form.

First and last name (please print): Jim E Evans

Signature: Jim E Evans

Date: 3.2.2018

**SECTION 5 TO BE COMPLETED BY THE SALESPERSON**

**5. Salesperson information**

*[Instruction: The salesperson is the person who meets with, or provides information to, the purchaser with respect to making this investment. That could include a representative of the issuer or selling security holder, a registrant or a person who is exempt from the registration requirement.]*

First and last name of salesperson (please print):

Telephone: | Email:

Name of firm (if registered):

**SECTION 6 TO BE COMPLETED BY THE ISSUER OR SELLING SECURITY HOLDER**

**6. For more information about this investment**

*NexTech AR Solutions Corp.*
*Suite 510, 580 Hornby Street*
*Vancouver, British Columbia, V6C 3B6*
*Attention: Evan Gappelberg, Chief Executive Officer*
*Email: evan@nextechar.com*

**For more information about prospectus exemptions, contact your local securities regulator. You can find contact information at www.securities-administrators.ca.**

*Form instructions:*

1. *This form does not mandate the use of a specific font size or style but the font must be legible.*

2. *The information in sections 1, 5 and 6 must be completed before the purchaser completes and signs the form.*

3. *The purchaser must sign this form. Each of the purchaser and the issuer or selling security holder must receive a copy of this form signed by the purchaser. The issuer or selling security holder is required to keep a copy of this form for 8 years after the distribution.*

NXT-00000250

**FORM 1 – SCHEDULE 2**
**ONTARIO RESIDENTS ONLY**

**Form 45-106F12**
*Risk Acknowledgement Form for Family, Friend and Business Associate Investors*

| **WARNING!** |
|---|
| **This investment is risky. Don't invest unless you can afford to lose all the money you pay for this investment.** |

---

**SECTION 1 TO BE COMPLETED BY THE ISSUER**

**1. About your investment**

| Type of securities: *Units* | Issuer: *NexTech AR Solutions Corp. (the "Issuer")* |
|---|---|

**SECTIONS 2 TO 4 TO BE COMPLETED BY THE PURCHASER**

**2. Risk acknowledgement**

| This investment is risky. Initial that you understand that: | **Your initials** |
|---|---|
| **Risk of loss** – You could lose your entire investment of $ _____ . *[Instruction: Insert the total dollar amount]* | |
| **Liquidity risk** – You may not be able to sell your investment quickly – or at all. | |
| **Lack of information** – You may receive little or no information about your investment. The information you receive may be limited to the information provided to you by the family member, friend or close business associate specified in section 3 of this form. | |

**3. Family, friend or business associate status**

| You must meet one of the following criteria to be able to make this investment. Initial the statement that applies to you: | **Your initials** |
|---|---|

A) You are:

    *1) [check all applicable boxes]*

        ☐ a director of the issuer or an affiliate of the issuer

        ☐ an executive officer of the issuer or an affiliate of the issuer

        ☐ a control person of the issuer or an affiliate of the issuer

        ☐ a founder of the issuer

    OR

    *2) [check all applicable boxes]*

        ☐ a person of which a majority of the voting securities are beneficially owned by, or a majority of the directors are, (i) individuals listed in (1) above and/or (ii) family members, close personal friends or close business associates of individuals listed in (1) above

        ☐ a trust or estate of which all of the beneficiaries or a majority of the trustees or executors are (i) individuals listed in (1) above and/or (ii) family members, close personal friends or close business associates of individuals listed in (1) above

B) You are a family member of _____ *[Instruction: Insert the name of the person who is your relative either directly or through his or her spouse]*, who holds the following position at the issuer or an affiliate of the issuer: _____.

You are the _____ of that person or that person's spouse. *[Instruction: To qualify for this investment, you must be (a) the spouse of the person listed above or (b) the parent, grandparent, brother, sister, child or grandchild of that person or that person's spouse.]*

C) You are a close personal friend of _____ *[Instruction: Insert the name of your close personal friend]*, who holds the following position at the issuer or an affiliate of the issuer: _____.

You have known that person for _____ years.

D) You are a close business associate of _____ *[Instruction: Insert the name of your close business associate]*, who holds the following position at the issuer or an affiliate of the issuer: _____.

You have known that person for _____ years.

### 4. Your name and signature

By signing this form, you confirm that you have read this form and you understand the risks of making this investment as identified in this form. You also confirm that you are eligible to make this investment because you are a family member, close personal friend or close business associate of the person identified in section 5 of this form.

First and last name (please print):

| Signature: | Date: |
|---|---|

### SECTION 5 TO BE COMPLETED BY PERSON WHO CLAIMS THE CLOSE PERSONAL RELATIONSHIP, IF APPLICABLE

### 5. Contact person of the issuer or an affiliate of the issuer

*[Instruction: To be completed by the director, executive officer, control person or founder with whom the purchaser has a close personal relationship indicated under sections 3B, C or D of this form.]*

By signing this form, you confirm that you have, or your spouse has, the following relationship with the purchaser: *[check the box that applies]*

☐ family relationship as set out in section 3B of this form

☐ close personal friendship as set out in section 3C of this form

☐ close business associate relationship as set out in section 3D of this form

First and last name of contact person (please print):

Position with the issuer or affiliate of the issuer (director, executive officer, control person or founder):

| Telephone: | Email: |
|---|---|
| Signature: | Date: |

**SECTION 6 TO BE COMPLETED BY THE ISSUER**

**6. For more information about this investment**

*NexTech AR Solutions Corp.*
*Suite 510, 580 Hornby Street*
*Vancouver, British Columbia, V6C 3B6*
*Attention: Evan Gappelberg, Chief Executive Officer*
*Email: evan@nextechar.com*

**For more information about prospectus exemptions, contact your local securities regulator. You can find contact information at <u>www.securities-administrators.ca.</u>**

| Signature of executive officer of the issuer (other than the purchaser): | Date: |
|---|---|

*Form instructions:*

*1     This form does not mandate the use of a specific font size or style but the font must be legible.*

*2.   The information in sections 1, 5 and 6 must be completed before the purchaser completes and signs the form.*

*3.   The purchaser, an executive officer who is not the purchaser and, if applicable, the person who claims the close personal relationship to the purchaser must sign this form. Each of the purchaser, contact person at the issuer and the issuer must receive a copy of this form signed by the purchaser. The issuer is required to keep a copy of this form for 8 years after the distribution.*

*4.   The detailed relationships required to purchase securities under this exemption are set out in section 2.5 of National Instrument*
*45-106 Prospectus and Registration Exemptions. For guidance on the meaning of "close personal friend" and "close business associate", please refer to sections 2.7 and 2.8, respectively, of Companion Policy 45-106CP Prospectus and Registration Exemptions.*

**FORM 1A – SCHEDULE 1**
**SASKATCHEWAN RESIDENTS ONLY**

---

**FORM 45-106F5**
**Risk Acknowledgement - Saskatchewan Close Personal Friends and Close Business Associates**

I acknowledge that this is a risky investment:

- I am investing entirely at my own risk.

- No securities regulatory authority has evaluated or endorsed the merits of these securities.

- The person selling me these securities is not registered with a securities regulatory authority and has no duty to tell me whether this investment is suitable for me.

- I will not be able to sell these securities for 4 months.

- I could lose all the money I invest.

- I do not have a 2-day right to cancel my purchase of these securities or the statutory rights of action for misrepresentation I would have if I were purchasing the securities under a prospectus.

I am investing $ _____ [total consideration] in total; this includes any amount I am obliged to pay in future.

I am a **close** personal friend or **close** business associate of _____ [state name],
who is a _____ [state title - founder, director, executive officer or control person]
of _____ [state name of issuer or its affiliate – if an affiliate
state "an affiliate of the issuer" and give the issuer's name].

I acknowledge that I am purchasing based on my close relationship with _____ [state name
of founder, director, executive officer or control person] whom I know well enough and for a sufficient period of time to be
able to assess her/his capabilities and trustworthiness.

**I acknowledge that this is a risky investment and that I could lose all the money I invest.**

_____            _____
Date                                                              Signature of Purchaser

                                                                    _____
                                                                    Print name of Purchaser

Sign 2 copies of this document. Keep one copy for your records.

---

**You are buying Exempt Market Securities**

They are called *exempt market securities* because two parts of securities law do not apply to them. If an issuer wants to sell *exempt market securities* to you:

- the issuer does not have to give you a prospectus (a document that describes the investment in detail and gives you some legal protections), and

- the securities do not have to be sold by an investment dealer registered with a securities regulatory authority.

There are restrictions on your ability to resell *exempt market securities*. Exempt market securities are more risky than other securities.

**You may not receive any written information about the issuer or its business**

If you have any questions about the issuer or its business, ask for written clarification before you purchase the securities. You should consult your own professional advisers before investing in the securities.

**You will not receive advice.**

Unless you consult your own professional advisors, you will not get professional advice about whether the investment is suitable for you.

For more information on the exempt market, refer to the Saskatchewan Financial Services Commission's website at http://www.sfsc.gov.sk.ca.

*INSTRUCTION: THE PURCHASER MUST SIGN 2 COPIES OF THIS FORM. THE PURCHASER AND THE ISSUER MUST EACH RECEIVE A SIGNED COPY.*

## FORM 2

## CERTIFICATE OF U.S. ACCREDITED INVESTOR STATUS

In addition to the representations, warranties, acknowledgments and agreements contained in the subscription agreement (the **"subscription"**) to which this Form 2 – Certificate of U.S. Accredited Investor Status is attached, the Subscriber hereby represents, warrants and certifies to the Issuer that the Subscriber is purchasing the securities set out in the subscription as principal, that the Subscriber is a resident of the jurisdiction of its disclosed address set out in the Subscriber's information on page 3 of the subscription, and:

1.    The Subscriber hereby represents, warrants, acknowledges and agrees to and with the Issuer that the Subscriber:

(a)    is a U.S. Person;

(b)    has such knowledge and experience in financial and business matters as to be capable of evaluating the merits and risks of the transactions detailed in the subscription and it is able to bear the economic risk of loss arising from such transactions;

(c)    is acquiring the Securities for its own account, for investment purposes only and not with a view to any resale, distribution or other disposition of the Securities in violation of the United States securities laws and, in particular, it has no intention to distribute either directly or indirectly any of the Securities in the United States or to U.S. Persons; provided, however, that the Subscriber may sell or otherwise dispose of any of the Securities pursuant to registration thereof pursuant to the United States *Securities Act of 1933*, as amended (the **"U.S. Securities Act"**), and any applicable State securities laws or if an exemption from such registration requirements is available or registration is otherwise not required under this U.S. Securities Act;

(d)    is not acquiring the Securities as a result of any form of general solicitation or general advertising, as such terms are defined for purposes of Regulation D under the U.S. Securities Act, including without limitation any advertisement, article, notice or other communication published in any newspaper, magazine or similar media or broadcast over radio or television or other form of telecommunications, or published or broadcast by means of the Internet or any other form of electronic display, or any seminar or meeting whose attendees have been invited by general solicitation or general advertising;

(e)    understands the Securities have not been and will not be registered under the U.S. Securities Act or the securities laws of any state of the United States and that the sale contemplated hereby is being made in reliance on an exemption from such registration requirements provided by Section 4(2) of the U.S. Securities Act and Rule 506 of Regulation D promulgated thereunder.

(f)    satisfies one or more of the categories indicated below (**check appropriate box**):

☐    Category 1:    An organization described in Section 501(c)(3) of the United States Internal Revenue Code, a corporation, a Massachusetts or similar business trust or a partnership, not formed for the specific purpose of acquiring the Securities offered, with total assets in excess of US $5,000,000;

☐    Category 2:    A natural person whose individual net worth, or joint net worth with that person's spouse, on the date of purchase exceeds US $1,000,000 excluding the value of the primary residence of that person;

> *Note:  For purposes of calculating "net worth" under this paragraph:*
>
> *(i)    The person's primary residence shall not be included as an asset;*
>
> *(ii)    Indebtedness that is secured by the person's primary residence, up to the estimated fair market value of the primary residence at the time of the sale of securities, shall not be included as a liability (except that if the amount of such indebtedness outstanding at the time of the sale of securities exceeds the amount outstanding 60 days before such time, other than as a result of the acquisition of the primary residence, the amount of such excess shall be included as a liability); and*
>
> *(iii)    Indebtedness that is secured by the person's primary residence in excess of the estimated fair market value of the primary residence at the time of the sale of securities shall be included as a liability.*

☑    Category 3:    A natural person who had an individual income in excess of US $200,000 in each of the two most recent years or joint income with that person's spouse in excess of US $300,000 in each

NXT-00000255

of those years and has a reasonable expectation of reaching the same income level in the current year;

☐ Category 4: A bank as defined under Section (3)(a)(2) of the U.S. Securities Act or savings and loan association or other institution as defined in Section 3(a)(5)(A) of the U.S. Securities Act, whether acting in its individual or fiduciary capacity; a broker or dealer registered pursuant to Section 15 of the *Securities Exchange Act of 1934* (United States); an insurance company as defined in Section 2(13) of the U.S. Securities Act; an investment company registered under the United States *Investment Company Act of 1940* or a business development company as defined in Section 2(a)(48) of such Act; a Small Business Investment Company licensed by the U.S. Small Business Administration under Section 301(c) or (d) of the United States *Small Business Investment Act of 1958*; a plan established and maintained by a state, its political subdivisions, or an agency or instrumentality of a state or its political subdivisions, for the benefit of its employees if the plan has total assets in excess of US$5,000,000; an employee benefit plan within the meaning of the *Employee Retirement Income Security Act of 1974* (United States) if investment decision is made by a plan fiduciary, as defined in Section 3(21) of such act, which is either a bank, savings and loan association, insurance company or registered investment adviser, or if the employee benefit plan has total assets in excess of US$5,000,000, or, if a self-directed plan, with investment decisions made solely by persons that are accredited investors;

☐ Category 5: A private business development company as defined in Section 202(a)(22) of the United States *Investment Advisers Act of 1940*;

☐ Category 6: A director or executive officer of the Issuer;

☐ Category 7 A trust that (a) has total assets in excess of US$5,000,000, (b) was not formed for the specific purpose of acquiring the Securities and (c) is directed in its purchases of securities by a person who has such knowledge and experience in financial and business matters that he or she is capable of evaluating the merits and risks of an investment in the Securities as described in SEC Rule 506(b)(2)(ii) under the U.S. Securities Act; or

☐ Category 8 An entity in which all of the equity owners are accredited investors; and

(g) if an individual, is a resident of the state or other jurisdiction of its disclosed address set out in the Subscriber's information on page 3 of its subscription; or if not an individual, has received and accepted the offer to acquire the Securities at the office of the Subscriber at the disclosed address set out in the Subscriber's information on page 3, of its subscription.

2. The Subscriber acknowledges and agrees that:

(a) the Subscriber has not acquired the Securities as a result of, and will not itself engage in any activities undertaken for the purpose of, or that could reasonably be expected to have the effect of, conditioning the market in the United States for the resale of any of the Securities; provided, however, that the Subscriber may sell or otherwise dispose of any of the Securities pursuant to registration of any of the Securities pursuant to the U.S. Securities Act and any applicable state securities laws or under an exemption from such registration requirements and as otherwise provided herein;

(b) if the Subscriber decides to offer, sell or otherwise transfer any of the Securities, it will not offer, sell or otherwise transfer any of such securities, directly or indirectly, unless:

(i) the sale is to the Issuer;

(ii) the sale is made pursuant to the requirements of Rule 904 promulgated under the U.S. Securities Act;

(iii) the sale is made pursuant to the exemption from the registration requirements under the U.S. Securities Act provided by Rule 144 thereunder if available and in accordance with any applicable state securities or "Blue Sky" laws; or

(iv) the Securities are sold in a transaction that does not require registration under the U.S. Securities Act or any applicable U.S. state laws and regulations governing the offer and sale of securities, and it has prior to such sale furnished to the Issuer an opinion of counsel reasonably satisfactory to the Issuer;

NXT-00000256

(c) upon the issuance thereof, and until such time as the same is no longer required under the applicable requirements of the U.S. Securities Act or applicable U.S. State laws and regulations, the certificates representing any of the Securities will bear a legend in substantially the following form:

> *"THE SECURITIES REPRESENTED HEREBY HAVE NOT BEEN REGISTERED UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (THE "U.S. SECURITIES ACT") OR UNDER THE SECURITIES LAWS OF ANY STATE OF THE UNITED STATES. THE HOLDER HEREOF, BY PURCHASING SUCH SECURITIES, AGREES FOR THE BENEFIT OF THE ISSUER OF SUCH SECURITIES AND ITS SUCCESSORS (THE "CORPORATION") THAT SUCH SECURITIES MAY BE OFFERED, SOLD, PLEDGED OR OTHERWISE TRANSFERRED ONLY (A) TO THE CORPORATION; (B) OUTSIDE THE UNITED STATES IN ACCORDANCE WITH RULE 904 OF REGULATION S UNDER THE U.S. SECURITIES ACT AND IN COMPLIANCE WITH LOCAL LAWS AND REGULATIONS; (C) IN ACCORDANCE WITH THE EXEMPTION FROM REGISTRATION UNDER THE U.S. SECURITIES ACT PROVIDED BY RULE 144 THEREUNDER, IF AVAILABLE, AND IN COMPLIANCE WITH APPLICABLE STATE SECURITIES LAWS; OR (D) IN A TRANSACTION THAT DOES NOT REQUIRE REGISTRATION UNDER THE U.S. SECURITIES ACT OR ANY APPLICABLE STATE SECURITIES LAWS, AND, IN THE CASE OF PARAGRAPH (C) OR (D), THE SELLER HAS PRIOR TO SUCH TRANSFER FURNISHED TO THE CORPORATION AN OPINION OF COUNSEL OF RECOGNIZED STANDING IN FORM AND SUBSTANCE SATISFACTORY TO THE CORPORATION TO SUCH EFFECT. DELIVERY OF THIS CERTIFICATE MAY NOT CONSTITUTE GOOD DELIVERY IN SETTLEMENT OF TRANSACTIONS ON STOCK EXCHANGES IN CANADA."*

and provided that if any of the Securities are being sold by the Subscriber in an off-shore transaction and in compliance with the requirements of Rule 904 of Regulation S, at a time when the Issuer is a "foreign issuer" as defined in Rule 902 of Regulation S, the legend set forth above may be removed by providing a declaration to the Issuer or such other evidence as the Issuer may from time to time prescribe (which may include an opinion of counsel satisfactory to the Issuer), to the effect that the sale of the securities is being made in compliance with Rule 904 of Regulation S;

and provided further, that if any of the Securities are being sold pursuant to Rule 144 of the U.S. Securities Act and in compliance with any applicable state securities laws, the legend may be removed by delivery to the Issuer of an opinion satisfactory to the Issuer to the effect that the legend is no longer required under applicable requirements of the U.S. Securities Act and state securities laws;

(d) the Issuer may make a notation on its records in order to implement the restrictions on transfer set forth and described herein and the subscription;

(e) the Subscriber understands and acknowledges that the Issuer (i) is not obligated to remain a "foreign issuer" within the meaning of Rule 902 of Regulation S, (ii) may not, at the time the Securities are resold by it or at any other time, be a foreign issuer, and (iii) may engage in one or more transactions which could cause the Issuer not to be a foreign issuer;

(f) the Subscriber understands and agrees that the financial statements of the Issuer have been prepared in accordance with Canadian generally accepted accounting principles or International Financial Reporting Standards, which differ in some respects from United States generally accepted accounting principles, and thus may not be comparable to financial statements of United States companies;

(g) the Subscriber understands that the Securities are "restricted securities" under applicable federal securities laws and that the U.S. Securities Act and the rules of the Securities Exchange Commission (the "SEC") provide in substance that the Subscriber may dispose of the Securities only pursuant to an effective registration statement under the U.S. Securities Act or an exemption therefrom, and, other than as set out herein, the Subscriber understands that the Issuer has no obligation to register any of the Securities or to take action so as to permit sales pursuant to the U.S. Securities Act (including Rule 144 thereunder). Accordingly, the Subscriber understands that absent registration, under the rules of the SEC, the Subscriber may be required to hold the Securities indefinitely or to transfer the Securities in the United States or to U.S. Persons in "private placements" which are exempt from registration under the U.S. Securities Act, in which event the transferee will acquire "restricted securities" subject to the same limitations as in the hands of the Subscriber. As a consequence, the Subscriber understands that it must bear the economic risks of the investment in the Securities for an indefinite period of time.

(h) the Subscriber understands and agrees that there may be material tax consequences to the Subscriber of an acquisition, disposition or exercise of any of the Securities, and the Issuer gives no opinion and makes no representation with respect to the tax consequences to the Subscriber under United States, state, local or foreign tax law of the Subscriber's acquisition or disposition of such Securities, and in particular, no determination has been made whether the Issuer will be a "passive foreign investment company" ("PFIC") within the meaning of Section 1291 of the United States Internal Revenue Code (the "Code"), provided, however, the Issuer agrees that it shall provide to the Subscriber, upon written request, all of the information that would be required for United States income tax reporting purposes by a United States security holder making an election to treat the

NXT-00000257

Issuer as a "qualified electing fund" for the purposes of the Code, should the Issuer or the Subscriber determine that the Issuer is a PFIC in any calendar year following the Subscriber's purchase of the Securities; and

(i)    the funds representing the subscription price which will be advanced by the Subscriber to the Issuer hereunder will not represent proceeds of crime for the purposes of the *Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act* (the **"PATRIOT Act"**) and the Subscriber acknowledges that the Issuer may in the future be required by law to disclose the Subscriber's name and other information relating to the subscription and the Subscriber's subscription hereunder, on a confidential basis, pursuant to the PATRIOT Act, and that no portion of the subscription price to be provided by the Subscriber (i) has been or will be derived from or related to any activity that is deemed criminal under the laws of the United States of America, or any other jurisdiction, or (ii) is being tendered on behalf of a person or entity who has not been identified to or by the Subscriber, and it shall promptly notify the Issuer if the Subscriber discovers that any of such representations ceases to be true and provide the Issuer with appropriate information in connection therewith.

\* \* \* \* \* \* \*

The representations, warranties, statements and certification made in this Certificate are true and accurate as of the date of this Certificate and will be true and accurate as of the Closing. If any such representation, warranty, statement or certification becomes untrue or inaccurate prior to the Closing, the Subscriber shall give the Issuer immediate written notice thereof.

Capitalized terms not specifically defined in this Certificate have the meaning ascribed to them in the subscription to which this Certificate is attached.

The Subscriber acknowledges and agrees that the Issuer will and can rely on this Certificate in connection with the Subscriber's subscription.

IN WITNESS, the undersigned has executed this Certificate as of the __2__ day of __March__, 2018.

**If a corporation, partnership or other entity:**    **If an individual:**

_____    _Jim E. Evans_

*Print Name of Subscriber*    *Print Name of Subscriber*

_____    _Jim E. Evans_

*Signature of Authorized Signatory*    *Signature*

_____    _Georgia, US_

*Name and Position of Authorized Signatory*    *Jurisdiction of Residence of Subscriber*

_____

*Jurisdiction of Residence of Subscriber*

NXT-00000258

## FORM 3

### ACKNOWLEDGMENT AND DIRECTION

**TO:** **Cassels Brock & Blackwell LLP**

**RE:** **NexTech AR Solutions Corp.** (the "**Issuer**")
Private Placement of Units

The undersigned (the "**Subscriber**") hereby confirms that it has deposited $ 64,500 (the "**Deposited Funds**") in trust with Cassels Brock & Blackwell LLP ("**CBB**") for the purchase of 258,000 Units of the Issuer (the "**Units**"), as set out in the attached subscription.

The Subscriber acknowledges and agrees that CBB acts as legal counsel of the Issuer. For greater certainty, CBB in no way represents the interests of the Subscriber in any manner or for any purpose whatsoever. The Subscriber confirms that it has had the opportunity to consult with its own legal counsel with respect to the purchase any potential resale of the Units.

The Subscriber hereby expressly and irrevocably authorizes and directs CBB to release and deliver the Deposited Funds to the Issuer against the delivery of certificates representing the Units subscribed for in accordance with the terms of the attached Subscription Agreement.

EXECUTED by the undersigned this 2 day of March , 2018.

**If a corporation, partnership or other entity:**

_____
*Signature of Authorized Signatory*

_____
*Name of Entity*

_____
*Type of Entity*

_____
*Name and Position of Signatory*

**If an individual:**

*Jim E Evans*
*Signature*

*Jim E Evans*
*Print or Type Name*

- 5 -

### ACCEPTANCE

This subscription is accepted and agreed to by the Issuer )
)
as of the ____ day of _____, 2018. )
)
)

NexTech AR Solutions Corp.

Per: _____

Authorized Signatory

NXT-00000260

# EXHIBIT B

**NexTech AR Solutions Corp.**
349 Carlaw Ave Suite 304
Toronto, ON M4M 2T1

**NEWS RELEASE**

**NexTech Calls 8,131,300 $0.50 Warrants Now Set to Expire March 7th, 2019**

**February 5th, 2019 – Vancouver, British Columbia - Toronto, ON –** NexTech AR Solutions (the "Company" or "NexTech") (**CSE: NTAR**) **(OTC: NEXCF) (FSE:N29**) is announcing today that it is accelerating the expiry date of all outstanding common share purchase warrants dated March 29, 2018 (the "Warrants") of the Company issued pursuant to a private placement (the "Warrant Certificates"). The proceeds from the exercise of the Warrants will primarily be used by the Company to continue to innovate and build out its Augmented Reality (AR) technology, as well as for acquisitions, and general corporate working capital purposes.

As of the close of market on February 4, 2019:

- A total of 3,082,300, $0.50 warrants were voluntarily exercised raising $1,541,150 for the Company.

- As previously reported on December 16th, 2018 NexTech's CEO Evan Gappelberg exercised his 500,000 $0.50 warrants for $250,000 in gross proceeds to the Company.

- 11,213,600 $0.50 Warrants were originally issued on March 29, 2018 private placement.

- 8,131,300 Warrants remain outstanding as of 2/4/19.

- With this announcement the $0.50 warrants are set to expire at 5:00 p.m. PST on March 7, 2019.

- If all of the remaining outstanding 8,131,300 Warrants are exercised, gross proceeds to the Company will total $4,065,650.

- Each Warrant is exercisable into one Common Share at a price of $0.50 per Common Share.

Pursuant to the Warrant Certificates, the Company may accelerate the expiry date of the Warrants in the event that the closing price of the Company's shares on the CSE Exchange is $0.75 or more for ten (10) consecutive trading days and the Company has provided notice to the Warrant holders, by news release, that the Warrant Holders are required to exercise the Warrants within thirty (30) calendar days (the "Acceleration Trigger") or the Warrants will be cancelled on the date that is thirty (30) days after the date of the news release. For greater certainty one non-receipt by the warrant holder of such notice will not invalidate the accelerated expiry time of the Warrants as aforesaid.

The Company confirms that as of the close of markets on January 18, 2019, an Acceleration Trigger had occurred. In accordance with the terms of the Warrant Certificates, this news release constitutes notice to Warrant holders of the Acceleration Trigger. Accordingly, the Company confirms that the Warrants are now set to expire at 5:00 p.m. PST on March 7, 2019, being thirty (30) calendar days following the occurrence of the Acceleration Trigger (the "Early Expiry Date"). Any Warrants remaining unexercised after the Early Expiry Date will be cancelled.

If all Warrants at a price of $0.50 per common share get exercised, the total common shares outstanding of NexTech will be 58,551,472.

### About NexTech AR Solutions Corp.

NexTech is bringing augmented reality (AR) to the masses by creating an AR ecosystem for consumers and offering a simple SaaS model for eCommerce businesses. The ecosystem is rising up around its three verticals; eCommerce solution for websites, AR learning and education as well as AR live streaming for events. The company has filed a patent around its AR web-enabled eCommerce platform which has been integrated with Shopify, Wordpress and Magento. The AR can "go live" on any ecomm site with just a few lines of embed code creating a highly scalable platform. The global eCommerce industry generated $2.8 trillion-dollars in 2018 and is projected to hit $3.4 trillion in 2019 according to Statistica.

NexTech has acquired its e-learning platform "edCetra" which has been used by Fortune 500 companies such as Imperial Oil, Bombardier and Staples, as well as the Library of Congress and others to educate and train employees. NexTech has added augmented reality ("AR") training and education options into the platform and expects to launch in 2019. The company is also working on bringing forth its AR live streaming platform for shows and live events.  All of the company's platforms run off of one backend CRM. NexTech launched its ARitize™ app in August 2018, which is capable of hosting many brands 3D objects and augmented reality experiences. NexTech also owns a large and diverse revenue generating App Portfolio that is deployed on the iTunes and Google play store which it intends to ARitize™.

**On behalf of the Board of NexTech AR Solutions Corp.**
"*Evan Gappelberg*"
CEO and Director

For further information, please contact:
Evan Gappelberg
Chief Executive Officer
info@nextechar.com

*The CSE has not reviewed and does not accept responsibility for the adequacy or accuracy of this release.*

*Certain information contained herein may constitute "forward-looking information" under Canadian securities legislation. Generally, forward-looking information can be identified by the use of forward-looking terminology such as, "will be", "looking forward" or variations of such words and phrases or statements that certain actions, events or results "will" occur. Forward-looking statements regarding the Company increasing investors awareness are based on the Company's estimates and are subject to known and unknown risks, uncertainties and other factors that may cause the actual results, level of activity, performance or achievements of NexTech to be materially different from those expressed or implied by such forward-looking statements or forward-looking information, including capital expenditures and other costs.  There can be no assurance that such statements will prove to be accurate, as actual results and future events could differ materially from those anticipated in such statements. Accordingly, readers should not place undue reliance on forward-looking statements and forward-looking information. NexTech will not update any forward-looking statements or forward-looking information that are incorporated by reference herein, except as required by applicable securities laws.*

# EXHIBIT C

| From: | Dave Franklin <indo737@gmail.com> |
| Sent: | Wednesday, March 25, 2020 3:04 PM |
| To: | evan@nextechar.com; closingbellservices@gmail.com; jimevans4@hotmail.com |
| Subject: | NTAR Warrants |
| Attachments: | warrants forms.pdf |

Hi Evan,

We hope all is well.  Today Jim and I individually attempted to exercise our 258,000 warrants each from the initial placement that expire on March 29, 2020.  We attempted to exercise the warrants with Belinda Tyldesley at Closing Bell Services and she indicated that the warrants had expired in conjunction with acceleration provisions.  We have tried to reach you several times regarding these warrants and expiration since the company's Dec 2, 2019 request letter.  We request that you give us and Belinda direction in exercising these warrants if any changes with addresses, expiration date, or instructions have occurred due to COVID-19 or other extenuating circumstances.  We have included Belinda on the email to expedite the process.  Pursuant to our agreement attached are our warrant exercise forms,  and our funds will be transferred from outside counsels trust awaiting confirmation that our shares have been issued.

Thanks,

David Franklin and Jim Evans

NXT-00000117

### SCHEDULE "B"

### EXERCISE FORM

**TO:** **NEXTECH AR SOLUTIONS CORP.**

Terms which are not otherwise defined herein will have the meanings ascribed to such terms in the Warrant Certificate held by the undersigned and issued by NexTech AR Solutions Corp. (the "**Company**").

(1) The undersigned hereby exercises the right to acquire **358,000** Shares of the Company in accordance with and subject to the provisions of such Warrant Certificate and herewith makes payment of the purchase price in the amount of C$ **29,000** in full for the said number of Shares, subject to adjustment in accordance with the terms of the Warrant Certificate.

(2) The undersigned hereby represents, warrants and certifies to the Company that at the time of exercise (PLEASE CHECK [✓] ONE OF THE FOLLOWING):

A. ☐ The undersigned holder (i) at the time of exercise of these Warrants is not in the United States; (ii) is not a "U.S. person" as defined in Regulation S under the United States *Securities Act of 1933*, as amended (the "**U.S. Securities Act**") and is not exercising these Warrants on behalf of a "U.S. person"; and (iii) did not execute or deliver this Exercise Form in the United States.

**OR**

B. ☑ The undersigned holder (i) is an "accredited investor", as defined in Rule 501(a) under the U.S. Securities Act, who acquired the Warrants directly from the Company; (ii) is exercising the Warrants solely for its own account and not on behalf of any other person; and (iii) each of the representations and warranties made in connection with the issuance of the Warrants remains true and correct on the date of exercise of the Warrants.

**OR**

C. ☐ The undersigned holder has delivered to the Company an opinion of counsel in form and substance satisfactory to the Company (in its sole discretion) to the effect that the exemption from the registration requirements of the U.S. Securities Act and applicable state securities laws is available.

The undersigned understands that unless box A above is checked, the certificate representing the Shares will bear a legend restricting transfer without registration under the U.S. Securities Act and applicable state securities laws unless an exemption from registration is available.

(3) The undersigned hereby irrevocably directs that the said Shares be issued and delivered as follows:

| Name(s) in Full | Address(es) | Number of Shares |
|---|---|---|
| Jim E. Evans | 50 Biscayne h #4117 Atlanta Ga 30309 | 258,000 |
| | | |

Note: If further nominees are intended, please attach (and initial) a schedule giving these particulars.

If any Shares are to be issued to a person or persons other than the undersigned holder, the undersigned holder must pay all applicable transfer taxes or other government charges.

If any Warrants represented by this Warrant Certificate are not being exercised, a new Warrant Certificate will be issued and delivered with the share certificates.

DATED this **25** day of **March**, 20 **20**.

_Jim E. Evans_
Signature Guaranteed (if applicable)

_Jim E. Evans_
(Signature of registered holder or Authorized Signatory if a corporation)

_Jim E. Evans_
If applicable, print Name and Office/Title of Signatory

_Jim E. Evans_
Print full name of registered holder as on the Warrant Certificate

_50 Biscayne Dr #4117_
Print full address _Atlantc, Ga 30309_

Instructions:

1.    The registered Holder may exercise its right to receive Shares by completing this form and surrendering this form, the ORIGINAL Warrant Certificate representing the Warrants being exercised and the purchase price to the Company's office at Suite 510, 580 Hornby Street, Vancouver, British Columbia, V6C 3B6. or such other location as the Company may advise from time to time by notice in writing to the Holder. Cheques representing the purchase price should be made payable to the Company.

2.    If the Exercise Form indicates that Shares are to be issued to a person or persons other than the registered Holder of the Warrant Certificate, the signature of such Holder of the Exercise Form must be guaranteed by an authorized officer of a chartered bank, trust company or an investment dealer who is a member of a recognized stock exchange.

3.    If the Exercise Form is signed by a trustee, exercise, administrator, curator, guardian, attorney, officer of a corporation or any person acting in a fiduciary or representative capacity, the certificate must be accompanied by evidence of authority to sign satisfactory to the Company.

4.    If box (2)C. above is checked, any opinion tendered must be from counsel of recognized standing in form and substance satisfactory to the Company. Holders planning to deliver an opinion of counsel in connection with the exercise of the Warrants should contact the Company in advance to determine whether any opinions tendered will be acceptable to the Company.

NXT-00000119

## SCHEDULE "B"

## EXERCISE FORM

**TO:** **NEXTECH AR SOLUTIONS CORP.**

Terms which are not otherwise defined herein will have the meanings ascribed to such terms in the Warrant Certificate held by the undersigned and issued by NexTech AR Solutions Corp. (the "**Company**").

(1)     The undersigned hereby exercises the right to acquire **258,000** Shares of the Company in accordance with and subject to the provisions of such Warrant Certificate and herewith makes payment of the purchase price in the amount of C$ **129,000** in full for the said number of Shares, subject to adjustment in accordance with the terms of the Warrant Certificate.

(2)     The undersigned hereby represents, warrants and certifies to the Company that at the time of exercise (PLEASE CHECK [✓] ONE OF THE FOLLOWING):

A. ☐   The undersigned holder (i) at the time of exercise of these Warrants is not in the United States; (ii) is not a "U.S. person" as defined in Regulation S under the United States *Securities Act of 1933*, as amended (the "**U.S. Securities Act**") and is not exercising these Warrants on behalf of a "U.S. person"; and (iii) did not execute or deliver this Exercise Form in the United States.

**OR**

B. ☑   The undersigned holder (i) is an "accredited investor", as defined in Rule 501(a) under the U.S. Securities Act, who acquired the Warrants directly from the Company; (ii) is exercising the Warrants solely for its own account and not on behalf of any other person; and (iii) each of the representations and warranties made in connection with the issuance of the Warrants remains true and correct on the date of exercise of the Warrants.

**OR**

C. ☐   The undersigned holder has delivered to the Company an opinion of counsel in form and substance satisfactory to the Company (in its sole discretion) to the effect that the exemption from the registration requirements of the U.S. Securities Act and applicable state securities laws is available.

The undersigned understands that unless box A above is checked, the certificate representing the Shares will bear a legend restricting transfer without registration under the U.S. Securities Act and applicable state securities laws unless an exemption from registration is available.

(3)     The undersigned hereby irrevocably directs that the said Shares be issued and delivered as follows:

| Name(s) in Full | Address(es) | Number of Shares |
|---|---|---|
| David A. Franklin | 297 E. Paces Ferry Rd NE Apt 1912 Atlanta, Ga 30305 | 258,000 |
| | | |

Note: If further nominees are intended, please attach (and initial) a schedule giving these particulars.

If any Shares are to be issued to a person or persons other than the undersigned holder, the undersigned holder must pay all applicable transfer taxes or other government charges.

If any Warrants represented by this Warrant Certificate are not being exercised, a new Warrant Certificate will be issued and delivered with the share certificates.

DATED this 25 day of March , 2020.

_David A. Franklin_
Signature Guaranteed (if applicable)

_David A. Franklin_
(Signature of registered holder or Authorized Signatory if a corporation)

David A. Franklin
If applicable, print Name and Office/Title of Signatory

David A. Franklin
Print full name of registered holder as on the Warrant Certificate

297 E. Paces Ferry Rd NE
Print full address Apt 1912
Atlantc, Ga 30305

Instructions:

1.      The registered Holder may exercise its right to receive Shares by completing this form and surrendering this form, the ORIGINAL Warrant Certificate representing the Warrants being exercised and the purchase price to the Company's office at Suite 510, 580 Hornby Street, Vancouver, British Columbia, V6C 3B6. or such other location as the Company may advise from time to time by notice in writing to the Holder. Cheques representing the purchase price should be made payable to the Company.

2.      If the Exercise Form indicates that Shares are to be issued to a person or persons other than the registered Holder of the Warrant Certificate, the signature of such Holder of the Exercise Form must be guaranteed by an authorized officer of a chartered bank, trust company or an investment dealer who is a member of a recognized stock exchange.

3.      If the Exercise Form is signed by a trustee, exercise, administrator, curator, guardian, attorney, officer of a corporation or any person acting in a fiduciary or representative capacity, the certificate must be accompanied by evidence of authority to sign satisfactory to the Company.

4.      If box (2)C. above is checked, any opinion tendered must be from counsel of recognized standing in form and substance satisfactory to the Company. Holders planning to deliver an opinion of counsel in connection with the exercise of the Warrants should contact the Company in advance to determine whether any opinions tendered will be acceptable to the Company.

# EXHIBIT D

| | |
|---|---|
| **From:** | Evan Gappelberg <evan@nextechar.com> |
| **Sent:** | Wednesday, March 25, 2020 3:21 PM |
| **To:** | Dave Franklin; Belinda Tyldesley |
| **Subject:** | Re: NTAR Warrants |

David and Jim,

As shareholders you were informed (see PR below) that these warrants expired in 2019. Once they expire they are no longer available for you to exercise so Belinda is correct to reject your request.

However, Dave I do believe that you do have other warrants that have not yet expired. I believe you have 27,541 $0.75 warrants...if you wish to exercise those before the expiry please forward the documents and capital required to Belinda for the .75 warrants.

https://www.globenewswire.com/news-release/2019/02/05/1710555/0/en/NexTech-Calls-8-131-300-0-50-Warrants-Now-Set-to-Expire-March-7th-2019.html

On Wed, Mar 25, 2020 at 4:04 PM Dave Franklin <indo737@gmail.com> wrote:
Hi Evan,

We hope all is well. Today Jim and I individually attempted to exercise our 258,000 warrants each from the initial placement that expire on March 29, 2020. We attempted to exercise the warrants with Belinda Tyldesley at Closing Bell Services and she indicated that the warrants had expired in conjunction with acceleration provisions. We have tried to reach you several times regarding these warrants and expiration since the company's Dec 2, 2019 request letter. We request that you give us and Belinda direction in exercising these warrants if any changes with addresses, expiration date, or instructions have occurred due to COVID-19 or other extenuating circumstances. We have included Belinda on the email to expedite the process. Pursuant to our agreement attached are our warrant exercise forms, and our funds will be transferred from outside counsels trust awaiting confirmation that our shares have been issued.

Thanks,

David Franklin and Jim Evans

--



**Evan Gappelberg**
CEO at NexTech AR Solutions Corp.

**Address** 349 Carlaw Avenue, Suite 304, Toronto Canada
M4M 2T1
Website 888 RENEXT 4AR Ext 700

1

# EXHIBIT E

AO 88A  (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of New York

| | |
|---|---|
| JIM EVANS and DAVE FRANKLIN ) | |
| *Plaintiff* ) | |
| v. ) | Civil Action No.  2:20-CV-03880 (GRB) |
| NEXTECH AR SOLUTIONS CORP. ) | |
| *Defendant* ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                                     JUSTIN MCAUSLAND
                              955 Wendover Drive, Atlanta, GA 30319
                          *(Name of person to whom this subpoena is directed)*

☑ Testimony: YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:

| Place:  Trustpoint Court Reporting 3200 Cobb Galleria Parkway, Suite 270 Atlanta, Georgia 30339 | Date and Time: 05/26/2022 9:00 am |
|---|---|

The deposition will be recorded by this method:     Stenographic and video

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: See Exhibit A hereto.

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     05/05/2022

            *CLERK OF COURT*

                                                    OR

                                                          /s/ Craig H. Kuglar
_____          _____
    *Signature of Clerk or Deputy Clerk*                 *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*     Jim Evans and Dave Franklin
_____, who issues or requests this subpoena, are:

Craig H. Kuglar, Law Office of Craig Kuglar, LLC, 931 Monroe Dr. NE, Ste. A105-353, Atlanta, GA 30308, ck@kuglarlaw.com, (404) 432-4448

## Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  2:20-CV-03880 (GRB)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $  0.00  .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
  (i) is a party or a party's officer; or
  (ii) is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
 (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
 (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***

 (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

  (i) fails to allow a reasonable time to comply;
  (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
  (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  (iv) subjects a person to undue burden.
 (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

  (i) disclosing a trade secret or other confidential research, development, or commercial information; or
  (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
 (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
 (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  (i) expressly make the claim; and
  (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

### Exhibit A

1.      Produce all communications (including but not limited to correspondence, telephone records, text messages, emails, recordings, notes of telephone calls, etc.) between you and Evan Gappelberg and/or any other representative/agent of NexTech AR Solutions Corp.

2.      Produce all communications (including but not limited to correspondence, telephone records, text messages, emails, recordings, notes of telephone calls, etc.) between you and any other third person regarding or discussing NexTech AR Solutions Corp.

3.      Produce all documents pertaining to your investment in NexTech AR Solutions Corp.

4.      Produce all statements showing trading of stock in NexTech AR Solutions Corp. by you or anyone person or entity under your control and/or have trading authority, including but not limited to personal and retirement accounts, accounts for your children, spouse or other relative.

5.      Produce all statements showing trading of stock in any other company operated, controlled or in which Evan Gappelberg served in an executive capacity (including but not limited to Future Farms Technologies) by you or anyone person or entity under your control, including but not limited to personal and retirement accounts, accounts for your children, spouse or other relative.

6.      Produce your detailed mobile telephone billing records for the period January 2019-April 2020.

7.      Produce any/all records evidencing any monetary or non-monetary gifts provided by you (or any person or entity you control) to Evan Gappelberg.

8.      Produce all documents evidencing any in person, phone or video meeting with Evan Gappelberg.

AO 88A  (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

| | |
|---|---|
| JIM EVANS and DAVE FRANKLIN ) | |
| *Plaintiff* ) | |
| v. ) | Civil Action No.   2:20-CV-03880 (GRB) |
| NEXTECH AR SOLUTIONS CORP. ) | |
| ) | |
| *Defendant* ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:
DEREK E. SIMS
1750 Enterprise Way, Suite 114, Marietta, GA 30067
*(Name of person to whom this subpoena is directed)*

☑ Testimony: YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:

| Place:  Trustpoint Court Reporting 3200 Cobb Galleria Parkway, Suite 270 Atlanta, Georgia 30339 | Date and Time: 05/26/2022 1:00 am |
|---|---|

The deposition will be recorded by this method:     Stenographic and video

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: See Exhibit A hereto.

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     05/05/2022

*CLERK OF COURT*

OR

/s/ Craig H. Kuglar

_____          _____
*Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*     Jim Evans and Dave Franklin
_____ , who issues or requests this subpoena, are:

Craig H. Kuglar, Law Office of Craig Kuglar, LLC, 931 Monroe Dr. NE, Ste. A105-353, Atlanta, GA 30308, ck@kuglarlaw.com, (404) 432-4448

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  2:20-CV-03880 (GRB)

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____  on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

#### (c) Place of Compliance.

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
        **(i)** is a party or a party's officer; or
        **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

#### (d) Protecting a Person Subject to a Subpoena; Enforcement.

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
        **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
        **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
        **(i)** fails to allow a reasonable time to comply;
        **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
        **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
        **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

        **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
        **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
        **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
        **(ii)** ensures that the subpoenaed person will be reasonably compensated.

#### (e) Duties in Responding to a Subpoena.

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
        **(i)** expressly make the claim; and
        **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

#### (g) Contempt.
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## Exhibit A

1.    Produce all communications (including but not limited to correspondence, telephone records, text messages, emails, recordings, notes of telephone calls, etc.) between you and Evan Gappelberg and/or any other representative/agent of NexTech AR Solutions Corp.

2.    Produce all communications (including but not limited to correspondence, telephone records, text messages, emails, recordings, notes of telephone calls, etc.) between you and any other third person regarding or discussing NexTech AR Solutions Corp.

3.    Produce all documents pertaining to your investment in NexTech AR Solutions Corp.

4.    Produce all statements showing trading of stock in NexTech AR Solutions Corp. by you or anyone person or entity under your control and/or have trading authority, including but not limited to personal and retirement accounts, accounts for your children, spouse or other relative.

5.    Produce all statements showing trading of stock in any other company operated, controlled or in which Evan Gappelberg served in an executive capacity (including but not limited to Future Farms Technologies) by you or anyone person or entity under your control, including but not limited to personal and retirement accounts, accounts for your children, spouse or other relative.

6.    Produce your detailed mobile telephone billing records for the period January 2019-April 2020.

7.    Produce any/all records evidencing any monetary or non-monetary gifts provided by you (or any person or entity you control) to Evan Gappelberg.

8.    Produce all documents evidencing any in person, phone or video meeting with Evan Gappelberg.

AO 88A  (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

| | |
|---|---|
| JIM EVANS and DAVE FRANKLIN ) | |
| *Plaintiff* ) | |
| v. ) | Civil Action No.   2:20-CV-03880 (GRB) |
| NEXTECH AR SOLUTIONS CORP. ) | |
| *Defendant* ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                                    PETER J. WOOLVERTON
                    21 Ferry Landing Lane NW, Unit 1512, Atlanta, GA 30305
                        *(Name of person to whom this subpoena is directed)*

☑ Testimony:  YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:

| Place: Trustpoint Court Reporting | Date and Time: |
|---|---|
| 3200 Cobb Galleria Parkway, Suite 270 Atlanta, Georgia 30339 | 05/27/2022 9:00 am |

         The deposition will be recorded by this method:    Stenographic and video

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: See Exhibit A hereto.

         The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    05/05/2022

                    *CLERK OF COURT*
                                                OR

                                                      /s/ Craig H. Kuglar
         _____              _____
            *Signature of Clerk or Deputy Clerk*              *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*    Jim Evans and Dave Franklin
                                                    , who issues or requests this subpoena, are:
Craig H. Kuglar, Law Office of Craig Kuglar, LLC, 931 Monroe Dr. NE, Ste. A105-353, Atlanta, GA 30308, ck@kuglarlaw.com, (404) 432-4448

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  2:20-CV-03880 (GRB)

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## Exhibit A

1.      Produce all communications (including but not limited to correspondence, telephone records, text messages, emails, recordings, notes of telephone calls, etc.) between you and Evan Gappelberg and/or any other representative/agent of NexTech AR Solutions Corp.

2.      Produce all communications (including but not limited to correspondence, telephone records, text messages, emails, recordings, notes of telephone calls, etc.) between you and any other third person regarding or discussing NexTech AR Solutions Corp.

3.      Produce all documents pertaining to your investment in NexTech AR Solutions Corp.

4.      Produce all statements showing trading of stock in NexTech AR Solutions Corp. by you or anyone person or entity under your control and/or have trading authority, including but not limited to personal and retirement accounts, accounts for your children, spouse or other relative.

5.      Produce all statements showing trading of stock in any other company operated, controlled or in which Evan Gappelberg served in an executive capacity (including but not limited to Future Farms Technologies) by you or anyone person or entity under your control, including but not limited to personal and retirement accounts, accounts for your children, spouse or other relative.

6.      Produce your detailed mobile telephone billing records for the period January 2019-April 2020.

7.      Produce any/all records evidencing any monetary or non-monetary gifts provided by you (or any person or entity you control) to Evan Gappelberg.

8.      Produce all documents evidencing any in person, phone or video meeting with Evan Gappelberg.

# EXHIBIT F

**IN THE UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **JIM EVANS AND DAVE FRANKLIN** | Hearing Date: **05/26/2022** |
| Plaintiff/Petitioner | INDEX NO:   **2:20-CV-03880** |
| | Index Date:   **05/05/2022** |
| vs. | AFFIDAVIT OF SERVICE OF: |
| **NEXTECH AR SOLUTIONS CORP.** | **SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION** |
| Defendant/Respondent | |

Received by Peter Constantine, on the **7th day of May, 2022 at 12:07 PM** to be served upon **Derek E Sims at 1750 Enterprise Way, Suite 114, Marietta, Cobb County, GA 30067**.

The undersigned, being first duly sworn, on oath deposes and says: That s(he) is now and at all times herein mentioned was a citizen of the United States, over the age of eighteen, not an officer of a plaintiff corporation, not a party to nor interested in the above entitled action, and is competent to be a witness therein.

On the **11th day of May, 2022 at 3:29 PM** at the address of **1750 Enterprise Way, Suite 114, Marietta, Cobb County, GA 30067**, this affiant served the above described documents upon **Derek E Sims** in the manner described below:

**PERSONAL SERVICE**, by personally delivering **1** true and correct copy(ies) of the above described documents, with the date and hour of service endorsed thereon by this affiant, to the named defendant.

THE DESCRIPTION OF THE PERSON WITH WHOM THE COPY(IES) OF THIS PROCESS WAS LEFT IS AS FOLLOWS:
**Derek E Sims, I delivered the documents to Derek E Sims with identity confirmed by subject saying yes when named. The individual accepted service with direct delivery. The individual appeared to be a brown-haired white male contact 35-45 years of age, 6'0"-6'2" tall and weighing 180-200 lbs with a beard and a mustache.**

Deponent asked the indicated person whether the defendant and/or present occupant was presently in the military service of the United States Government or in active duty in the military service of the State of New York or a dependent of anybody in the military and defendant and/or present occupant refused to indicate.

Executed on _May      11_, 20_22_.

_____

**Peter Constantine, Reg. # N/A, Magistrate Court of Cobb County, GA**
ABC Legal Services, LLC
DCA Lic. #1380619 Exp. 02/28/24
147 Prince St, Suite 4-6, Brooklyn, NY 11201
STATE OF ~~NEW YORK~~ GA COUNTY OF ___COBB___
SWORN TO AND SUBSCRIBED BEFORE ME THIS _12_ OF _MAY_ 20_22_ BY _PETER CONSTANTINE_ (AFFIANT NAME)

_____
SIGNATURE OF NOTARY PUBLIC
___JAI   NIPANIKAR___
PRINT, TYPE OR STAMP NOTARY'S COMMISSIONED NAME
PERSONALLY KNOWN_____ OR PRODUCED IDENTIFICATION _✓_
TYPE OF IDENTIFICATION PRODUCED_GA  DRIVERS LICENSE_




# EXHIBIT G

# IN THE UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF NEW YORK

**JIM EVANS AND DAVE FRANKLIN**

                                Plaintiff/Petitioner

vs.

**NEXTECH AR SOLUTIONS CORP.**

                           Defendant/Respondent

| | |
|---|---|
| Hearing Date: | **05/27/2022** |
| INDEX NO: | **2:20-CV-03880** |
| Index Date: | **05/05/2022** |

AFFIDAVIT OF SERVICE OF:
**SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION**

Received by **Xavier Irvine**, on the **10th day of May, 2022 at 9:13 AM** to be served upon **Peter J. Woolverton** at **21 Ferry Landing Ln. NW, Unit 1512, Atlanta, Fulton County, GA 30305**.

The undersigned, being first duly sworn, on oath deposes and says: That s(he) is now and at all times herein mentioned was a citizen of the United States, over the age of eighteen, not an officer of a plaintiff corporation, not a party to nor interested in the above entitled action, and is competent to be a witness therein.

On the **18th day of May, 2022 at 5:54 PM** at the address of **21 Ferry Landing Ln. NW, Unit 1512, Atlanta, Fulton County, GA 30305**, this affiant served the above described documents upon **Peter J. Woolverton** in the manner described below:

**PERSONAL SERVICE**, by personally delivering 1 true and correct copy(ies) of the above described documents, with the date and hour of service endorsed thereon by this affiant, to the named defendant.

THE DESCRIPTION OF THE PERSON WITH WHOM THE COPY(IES) OF THIS PROCESS WAS LEFT IS AS FOLLOWS:
**Peter J. Woolverton, I delivered the documents to Peter J. Woolverton with identity confirmed by subject saying yes when named. The individual accepted service with direct delivery. The individual appeared to be a brown-haired white male contact 45-55 years of age, 5'8"-5'10" tall and weighing 180-200 lbs. At the address I observed a call/mail box listing subject. I spoke with a property manager/landlord who says subject resides.**

Deponent asked the indicated person whether the defendant and/or present occupant was presently in the military service of the United States Government or in active duty in the military service of the State of New York or a dependent of anybody in the military and defendant and/or present occupant refused to indicate.

Executed on    _19th of May_ , 20 _22_ .

 

**Xavier Irvine, Reg. # n/a, Cobb State, GA**

ABC Legal Services, LLC
DCA Lic. #1380619 Exp, 02/28/24
147 Prince St, Suite 4-6, Brooklyn, NY 11201

STATE OF NEW YORK COUNTY OF _____
SWORN TO AND SUBSCRIBED BEFORE ME THIS _19_ OF _May_ 20 _22_ BY _Jam Martinez_ _____ (AFFIANT NAME)

SIGNATURE OF NOTARY PUBLIC _____

PRINT, TYPE OR STAMP NOTARY'S COMMISSIONED NAME

PERSONALLY KNOWN _____ OR PRODUCED IDENTIFICATION _____
TYPE OF IDENTIFICATION PRODUCED _____



# EXHIBIT H

**Subject:**   Re: Evans v. Nextech AR Solutions Corp - Deposition of Woolverton
**Date:**   Tuesday, May 24, 2022 at 10:01:43 AM Eastern Daylight Time
**From:**   Craig Kuglar <ck@kuglarlaw.com>
**To:**   Kappler, Aaron M. <AKappler@tokn.com>, Beth Williams <beth@kuglarlaw.com>
**CC:**   leslie.thorne@haynesboone.com <leslie.thorne@haynesboone.com>, Thornton, Leslie E.
<lthornton@tokn.com>
**Attachments:**   image001.jpg, image001.png

Aaron,

Thank you for reaching out and I look forward to working with you on this matter.

We are amenable to changing the date and I will get back to you after I have conferred with counsel for Nextech.  I have no objection to taking the deposition at your office.

Regards,
Craig



The Law Office of Craig Kuglar, LLC | Securities Arbitration and Litigation
931 Monroe Dr. NE Suite A-102-353 | Atlanta, GA 30308 | 404.432.4448 | www.kuglarlaw.com

On Tue, May 24, 2022 at 9:56 AM Kappler, Aaron M. <AKappler@tokn.com> wrote:

> Good morning,
>
>
> I represent Peter Woolverton.  We received the non-party subpoena for his deposition, scheduling it for Friday May 27, 2022.  Please note that I have a conflict for that date, and as such, we will need to reschedule his deposition. Please let me know other dates/times that you are available.
>
>
> Additionally, Mr. Woolverton would prefer for the deposition to be taken at my office:  2 Sun Court, Suite 400, Peachtree Corners, GA 30092.
>
>
> Please confirm the deposition will be postponed and provide alternative dates.  Thanks,
>
>
> Aaron

**Aaron M. Kappler**

Admitted in Georgia, Texas



**Thompson, O'Brien, Kappler & Nasuti, P.C.**

Peachtree Corners: (770) 925-0111

Savannah: (912) 348-1776

akappler@tokn.com | www.tokn.com

Mailing Address:

2 Sun Court, Suite 400

Peachtree Corners, GA 30092

# EXHIBIT I

**IN THE UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **JIM EVANS AND DAVE FRANKLIN** | Hearing Date: **05/26/2022** |
| Plaintiff/Petitioner | INDEX NO: **2:20-CV-03880** |
| vs. | Index Date: **05/05/2022** |
| **NEXTECH AR SOLUTIONS CORP.** | DECLARATION OF NON-SERVICE OF: |
| Defendant/Respondent | **SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION** |

Received by **Julius Velasquez**, on the **10th day of May, 2022 at 7:04 PM** to be served upon **Justin McAusland** at **955 Wendover Drive Northeast, Atlanta, Fulton County, GA 30319**.

The undersigned hereby declares: That s(he) is now and at all times herein mentioned was a citizen of the United States, over the age of eighteen, not an officer of a plaintiff corporation, not a party to nor interested in the above entitled action, and is competent to be a witness therein.

Declarant states s(he) attempted to serve **Justin McAusland** at the address of: **3680 BROOKHAVEN MANOR XING NE, ATLANTA, GA 30319** and was unable to effect service for the following reasons:

**5/13/2022 12:53 PM: There was no answer at the address.**
**5/15/2022 11:47 AM: There was no answer at the address.**
**5/20/2022 5:04 PM: There was no answer at the address.**

Declarant hereby states under penalty of perjury under the laws of the State of Georgia that the statement above is true and correct.

Date: 05/25/2022

**Julius Velasquez, Reg. # Covered by Superior court, Cobb Magistrate, GA**
ABC Legal Services, LLC
DCA Lic. #1380619 Exp, 02/28/24
147 Prince St, Suite 4-6, Brooklyn, NY 11201

# EXHIBIT J

AO 88A  (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

| | |
|---|---|
| JIM EVANS and DAVE FRANKLIN | )<br>) |
| *Plaintiff* | ) |
| v. | )   Civil Action No.   2:20-CV-03880 (GRB) |
| NEXTECH AR SOLUTIONS CORP. | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:         PETER J. WOOLVERTON, c/o Aaron M. Kappler
Thompson, O'Brien, Kappler & Nasuti, P.C., 2 Sun Court, Suite 400, Peachtree Corners, GA 30092
*(Name of person to whom this subpoena is directed)*

☑ Testimony:  YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:

| Place:  Via Zoom<br>Trustpoint Court Reporting | Date and Time:<br>        12/15/2022 9:00 am |
|---|---|

The deposition will be recorded by this method:      Stenographic and video

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:  See Exhibit A hereto.

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     11/22/2022

             *CLERK OF COURT*

                                        OR

                                              /s/ Craig H. Kuglar
_____                    _____
    *Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*     Jim Evans
and Dave Franklin                                        , who issues or requests this subpoena, are:
Craig H. Kuglar, Law Office of Craig Kuglar, LLC, 594 Dean Street, Brooklyn, NY  11238, ck@kuglarlaw.com, (404) 432-4448

## Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  2:20-CV-03880 (GRB)

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

    ❏ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

    ❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____                    _____
                                              *Server's signature*

                                   _____
                                              *Printed name and title*

                                   _____
                                              *Server's address*

Additional information regarding attempted service, etc.:

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:
(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or
(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## Exhibit A

1.      Produce all communications (including but not limited to correspondence, telephone records, text messages, emails, recordings, notes of telephone calls, etc.) between you and Evan Gappelberg and/or any other representative/agent of NexTech AR Solutions Corp.

2.      Produce all communications (including but not limited to correspondence, telephone records, text messages, emails, recordings, notes of telephone calls, etc.) between you and any other third person regarding or discussing NexTech AR Solutions Corp.

3.      Produce all documents pertaining to your investment in NexTech AR Solutions Corp.

4.      Produce all statements showing trading of stock in NexTech AR Solutions Corp. by you or anyone person or entity under your control and/or have trading authority, including but not limited to personal and retirement accounts, accounts for your children, spouse or other relative.

5.      Produce all statements showing trading of stock in any other company operated, controlled or in which Evan Gappelberg served in an executive capacity (including but not limited to Future Farms Technologies) by you or anyone person or entity under your control, including but not limited to personal and retirement accounts, accounts for your children, spouse or other relative.

6.      Produce your detailed mobile telephone billing records for the period January 2019-April 2020.

7.      Produce any/all records evidencing any monetary or non-monetary gifts provided by you (or any person or entity you control) to Evan Gappelberg.

8.      Produce all documents evidencing any in person, phone or video meeting with Evan Gappelberg.

AO 88A  (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of New York

| | |
|---|---|
| JIM EVANS and DAVE FRANKLIN | ) |
| *Plaintiff* | ) |
| v. | ) |
| NEXTECH AR SOLUTIONS CORP. | ) |
| | ) |
| *Defendant* | ) |

Civil Action No.   2:20-CV-03880 (GRB)

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:
DEREK E. SIMS
1750 Enterprise Way, Suite 114, Marietta, GA 30067
*(Name of person to whom this subpoena is directed)*

☑ Testimony:  YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:

| Place: VIA Zoom<br>Trustpoint Court Reporting | Date and Time:<br>12/15/2022 12:00 pm |
|---|---|

The deposition will be recorded by this method:   Stenographic and video

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:  See Exhibit A hereto.

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   11/22/2022

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| | | /s/ Craig H. Kuglar |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Jim Evans and Dave Franklin
, who issues or requests this subpoena, are:
Craig H. Kuglar, Law Office of Craig Kuglar, LLC, 594 Dean Street, Brooklyn, NY  11238, ck@kuglarlaw.com, (404) 432-4448

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.   2:20-CV-03880 (GRB)

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

◻ I served the subpoena by delivering a copy to the named individual as follows: _____

_____   on *(date)* _____ ; or

◻ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____   for travel and $ _____   for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____       _____

                                                 *Server's signature*

                                                 _____

                                                 *Printed name and title*

                                                 _____

                                                 *Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or
(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

### Exhibit A

1.      Produce all communications (including but not limited to correspondence, telephone records, text messages, emails, recordings, notes of telephone calls, etc.) between you and Evan Gappelberg and/or any other representative/agent of NexTech AR Solutions Corp.

2.      Produce all communications (including but not limited to correspondence, telephone records, text messages, emails, recordings, notes of telephone calls, etc.) between you and any other third person regarding or discussing NexTech AR Solutions Corp.

3.      Produce all documents pertaining to your investment in NexTech AR Solutions Corp.

4.      Produce all statements showing trading of stock in NexTech AR Solutions Corp. by you or anyone person or entity under your control and/or have trading authority, including but not limited to personal and retirement accounts, accounts for your children, spouse or other relative.

5.      Produce all statements showing trading of stock in any other company operated, controlled or in which Evan Gappelberg served in an executive capacity (including but not limited to Future Farms Technologies) by you or anyone person or entity under your control, including but not limited to personal and retirement accounts, accounts for your children, spouse or other relative.

6.      Produce your detailed mobile telephone billing records for the period January 2019-April 2020.

7.      Produce any/all records evidencing any monetary or non-monetary gifts provided by you (or any person or entity you control) to Evan Gappelberg.

8.      Produce all documents evidencing any in person, phone or video meeting with Evan Gappelberg.

AO 88A  (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the

Eastern District of New York

<table>
<tr><td>JIM EVANS and DAVE FRANKLIN</td><td>)</td><td></td></tr>
<tr><td><i>Plaintiff</i></td><td>)</td><td></td></tr>
<tr><td>v.</td><td>)</td><td>Civil Action No.    2:20-CV-03880 (GRB)</td></tr>
<tr><td>NEXTECH AR SOLUTIONS CORP.</td><td>)</td><td></td></tr>
<tr><td><i>Defendant</i></td><td>)</td><td></td></tr>
</table>

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:
                                 JUSTIN MCAUSLAND
                    3680 Brookhaven Manor Xing NE, Atlanta, Georgia  30319
                         *(Name of person to whom this subpoena is directed)*

☑ Testimony:  YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:

<table>
<tr><td>Place:  VIA Zoom<br>Trustpoint Court Reporting</td><td>Date and Time:<br><br>12/15/2022 3:00 am</td></tr>
</table>

The deposition will be recorded by this method:    Stenographic and video

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:  See Exhibit A hereto.

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  _____11/22/2022_____

            *CLERK OF COURT*
                                                OR

_____          ____/s/ Craig H. Kuglar____
   *Signature of Clerk or Deputy Clerk*              *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*    Jim Evans and Dave Franklin
_____ , who issues or requests this subpoena, are:
Craig H. Kuglar, Law Office of Craig Kuglar, LLC, 594 Dean Street, Brooklyn, NY  11238, ck@kuglarlaw.com, (404) 432-4448

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.   2:20-CV-03880 (GRB)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

    ❐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____    on *(date)* _____ ; or

    ❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*

   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## Exhibit A

1.      Produce all communications (including but not limited to correspondence, telephone records, text messages, emails, recordings, notes of telephone calls, etc.) between you and Evan Gappelberg and/or any other representative/agent of NexTech AR Solutions Corp.

2.      Produce all communications (including but not limited to correspondence, telephone records, text messages, emails, recordings, notes of telephone calls, etc.) between you and any other third person regarding or discussing NexTech AR Solutions Corp.

3.      Produce all documents pertaining to your investment in NexTech AR Solutions Corp.

4.      Produce all statements showing trading of stock in NexTech AR Solutions Corp. by you or anyone person or entity under your control and/or have trading authority, including but not limited to personal and retirement accounts, accounts for your children, spouse or other relative.

5.      Produce all statements showing trading of stock in any other company operated, controlled or in which Evan Gappelberg served in an executive capacity (including but not limited to Future Farms Technologies) by you or anyone person or entity under your control, including but not limited to personal and retirement accounts, accounts for your children, spouse or other relative.

6.      Produce your detailed mobile telephone billing records for the period January 2019-April 2020.

7.      Produce any/all records evidencing any monetary or non-monetary gifts provided by you (or any person or entity you control) to Evan Gappelberg.

8.      Produce all documents evidencing any in person, phone or video meeting with Evan Gappelberg.

# EXHIBIT K

Wednesday, January 25, 2023 at 10:10:28 Eastern Standard Time

| | |
|---|---|
| **Subject:** | Evans v. Nextech AR Solutions Corp - Deposition of Woolverton |
| **Date:** | Wednesday, November 30, 2022 at 2:30:44 PM Eastern Standard Time |
| **From:** | Craig Kuglar <ck@kuglarlaw.com> |
| **To:** | Kappler, Aaron M. <AKappler@tokn.com>, Beth Williams <beth@kuglarlaw.com> |
| **Attachments:** | image001.jpg, 2022-11-22 Subpoena (Woolverton).pdf |

Aaron,

Please find the attached subpoena for your client Peter Woolverton.  Please confirm you are indeed authorized to accept service.

Regards,
Craig



The Law Office of Craig Kuglar, LLC | Securities Arbitration and Litigation
931 Monroe Dr. NE Suite A-102-353 | Atlanta, GA 30308 | 404.432.4448 | www.kuglarlaw.com

On Mon, Oct 31, 2022 at 1:51 PM Craig Kuglar <ck@kuglarlaw.com> wrote:

Aaron,

I am reaching back out on this matter where you represent third party witness Peter Woolverton.  We would like to reschedule his deposition for the middle/end of November.  Please let me know what dates work best for you and your client.  I am happy taking the deposition at the address you provided and will put that on the revised subpoena.

I will confirm those dates work with counsel for NexTech so there won't be a need to reschedule again.

Thanks,
Craig

The Law Office of Craig Kuglar, LLC | Securities Arbitration and Litigation
931 Monroe Dr. NE Suite A-102-353 | Atlanta, GA 30308 | 404.432.4448 | www.kuglarlaw.com

On Tue, May 24, 2022 at 10:01 AM Craig Kuglar <ck@kuglarlaw.com> wrote:

Aaron,

Thank you for reaching out and I look forward to working with you on this matter.

We are amenable to changing the date and I will get back to you after I have conferred with counsel for Nextech.

I have no objection to taking the deposition at your office.

Regards,
Craig

The Law Office of Craig Kuglar, LLC | Securities Arbitration and Litigation
931 Monroe Dr. NE Suite A-102-353 | Atlanta, GA 30308 | 404.432.4448 | www.kuglarlaw.com

On Tue, May 24, 2022 at 9:56 AM Kappler, Aaron M. <AKappler@tokn.com> wrote:

Good morning,

I represent Peter Woolverton.  We received the non-party subpoena for his deposition, scheduling it for Friday May 27, 2022.  Please note that I have a conflict for that date, and as such, we will need to reschedule his deposition.  Please let me know other dates/times that you are available.

Additionally, Mr. Woolverton would prefer for the deposition to be taken at my office:  2 Sun Court, Suite 400, Peachtree Corners, GA 30092.

Please confirm the deposition will be postponed and provide alternative dates.  Thanks,

Aaron

**Aaron M. Kappler**

Admitted in Georgia, Texas

TOKN | THOMPSON O'BRIEN

**Thompson, O'Brien, Kappler & Nasuti, P.C.**

Peachtree Corners: (770) 925-0111

Savannah: (912) 348-1776

akappler@tokn.com | www.tokn.com

Mailing Address:

2 Sun Court, Suite 400

Peachtree Corners, GA 30092

# EXHIBIT L

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.     **2:20-CV-03880(GRB)**

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (I))*

This summons for   **Derek E. Sims**
was recieved by me on  **11/27/2022:**

☐   I personally served the summons on the individual at *(place)*  on *(date)* ; or

☐   I left the summons at the individual's residence or usual place of abode with *(name)* , a person of suitable age and discretion who resides there, on , and mailed a copy to the individual's last known address; or

☐   I served the summons on *(name of individual)* , who is designated by law to accept service of process on behalf of *(name of  organization)* ; or

☒   I returned the summons unexecuted because **No contact**; or

☐   Other *(specify)*

My fees are $ 0 for travel and **$ 255.00** for services, for a total of **$ 255.00**.

I declare under penalty of perjury that this information is true.

Date:   12/14/2022

_____
*Server's signature*

**Peter Constantine**
*Printed name and title*

**1810 Ashborough Rd SE Apt D**
**Marietta, GA 30067**

_____
*Server's address*

Additional information regarding attempted service, etc:

**11/28/2022 5:53 PM: There was no answer at the address.**
**11/29/2022 2:44 PM: I spoke with an individual who indicated they were the resident and they stated subject resides but not available at this time.  Derek Sims is currently in the Bahamas for an undisclosed period of time.**
**12/2/2022 3:45 PM: I spoke with an individual who indicated they were the employee and they stated subject employed but not available at this time.**
**12/6/2022 1:56 PM: I spoke with an individual who indicated they were the employee and they stated subject employed but not available at this time.  The servee is currently out of the country.**
**12/10/2022 3:23 PM: I spoke with an individual who indicated they were the employee and they stated subject employed but not available at this time.  Mr. Sims is still in the Bahamas.**





AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 3)

Civil Action No.      **2:20-CV-03880(GRB)**

**12/12/2022 10:13 AM: I spoke with an individual who indicated they were the employee and they stated subject employed but not available at this time.  Mr. Sims is still out of the country.**
**12/13/2022 8:25 PM: There was no answer at the address.**



Tracking #: **0097923531**


AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.   **2:20-CV-03880(GRB)**

# PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for   **Justin McAusland**
was recieved by me on  **11/25/2022:**

☐    I personally served the summons on the individual at *(place)*  on *(date)* ; or

☐    I left the summons at the individual's residence or usual place of abode with *(name)* , a person of suitable age and discretion who resides there, on , and mailed a copy to the individual's last known address; or

☐    I served the summons on *(name of individual)* , who is designated by law to accept service of process on behalf of *(name of  organization)* ; or

☒    I returned the summons unexecuted because **Other**; or

☐    Other *(specify)*


My fees are $ 0 for travel and **$ 0.00** for services, for a total of **$ 0.00**.

I declare under penalty of perjury that this information is true.


Date:  12/02/2022

_____
*Server's signature*

**Jeremy Lee**
*Printed name and title*

**1862 Linwood Ave
East Point, GA 30344**

_____
*Server's address*


Additional information regarding attempted service, etc:

**11/26/2022 11:57 AM: There was no answer at the address.
11/29/2022 9:31 AM: There was no answer at the address.**




Tracking #: **0097364902**

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.   **2:20-CV-03880(GRB)**

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for   **Justin McAusland**
was recieved by me on **12/10/2022:**

☐   I personally served the summons on the individual at *(place)*  on *(date)* ; or

☐   I left the summons at the individual's residence or usual place of abode with *(name)* , a person of suitable age and discretion who resides there, on , and mailed a copy to the individual's last known address; or

☐   I served the summons on *(name of individual)* , who is designated by law to accept service of process on behalf of *(name of organization)* ; or

☒   I returned the summons unexecuted because ; or

☐   Other *(specify)*

My fees are $ 0 for travel and **$ 0.00** for services, for a total of **$ 0.00**.

I declare under penalty of perjury that this information is true.

Date:  01/02/2023

_____
*Server's signature*

**Xavier Irvine**
*Printed name and title*

**49 Turner Ln**
**Dallas, GA 30157**

_____
*Server's address*

Additional information regarding attempted service, etc:

**12/12/2022 2:15 PM: I spoke with an individual who indicated they were the resident and they stated subject resides but not available at this time.**
**12/19/2022 2:04 PM: I spoke with an individual who indicated they were the resident and they stated subject resides but not available at this time.**





Tracking #: **0098645810**

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.   **2:20-CV-03880**

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for   **Peter J. Woolverton**
was recieved by me on **12/10/2022:**

☐   I personally served the summons on the individual at *(place)*  on *(date)* ; or

☐   I left the summons at the individual's residence or usual place of abode with *(name)* , a person of suitable age and discretion who resides there, on , and mailed a copy to the individual's last known address; or

☐   I served the summons on *(name of individual)* , who is designated by law to accept service of process on behalf of *(name of  organization)* ; or

☒   I returned the summons unexecuted because ; or

☐   Other *(specify)*


My fees are $ 0 for travel and **$ 85.00** for services, for a total of **$ 85.00** .

I declare under penalty of perjury that this information is true.


Date:  12/30/2022

_____
*Server's signature*

**Xavier Irvine**
*Printed name and title*

**49 Turner Ln**
**Dallas, GA 30157**

_____
*Server's address*


Additional information regarding attempted service, etc:

**12/12/2022 12:17 PM: There was no answer at the address. I spoke with a property manager/landlord who says subject resides.**
**12/19/2022 1:51 PM: There was no answer at the address. At the address I observed a call/mail box listing subject.**





Tracking #: **0098451771**

# EXHIBIT M

AO 88A  (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Eastern District of New York

| | | |
|---|---|---|
| JIM EVANS and DAVE FRANKLIN | ) | |
| _Plaintiff_ | ) | |
| v. | ) | Civil Action No.   2:20-CV-03880 (GRB) |
| NEXTECH AR SOLUTIONS CORP. | ) | |
| _Defendant_ | ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:              PETER J. WOOLVERTON, c/o Aaron M. Kappler
        Thompson, O'Brien, Kappler & Nasuti, P.C., 2 Sun Court, Suite 400, Peachtree Corners, GA 30092
                        _(Name of person to whom this subpoena is directed)_

☑ Testimony:  YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:

| Place:  Via Zoom | Date and Time: |
|---|---|
| Trustpoint Court Reporting | 01/23/2023 9:00 am |

    The deposition will be recorded by this method:    Stenographic and video

☑ _Production:_  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:  See Exhibit A hereto.

    The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    12/26/2022

                    _CLERK OF COURT_
                                        OR
                                                            /s/ Craig H. Kuglar
    _____          _____
        _Signature of Clerk or Deputy Clerk_                _Attorney's signature_

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_    Jim Evans and Dave Franklin
_____, who issues or requests this subpoena, are:
Craig H. Kuglar, Law Office of Craig Kuglar, LLC, 594 Dean Street, Brooklyn, NY  11238, ck@kuglarlaw.com, (404) 432-4448

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  2:20-CV-03880 (GRB)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

#### (c) Place of Compliance.

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i) is a party or a party's officer; or
    (ii) is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
  (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B) inspection of premises at the premises to be inspected.

#### (d) Protecting a Person Subject to a Subpoena; Enforcement.

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
  (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***

  (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    (i) fails to allow a reasonable time to comply;
    (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv) subjects a person to undue burden.
  (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    (i) disclosing a trade secret or other confidential research, development, or commercial information; or
    (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii) ensures that the subpoenaed person will be reasonably compensated.

#### (e) Duties in Responding to a Subpoena.

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:

  (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
  (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

    (i) expressly make the claim; and
    (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

#### (g) Contempt.
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## Exhibit A

1.     Produce all communications (including but not limited to correspondence, telephone records, text messages, emails, recordings, notes of telephone calls, etc.) between you and Evan Gappelberg and/or any other representative/agent of NexTech AR Solutions Corp.

2.     Produce all communications (including but not limited to correspondence, telephone records, text messages, emails, recordings, notes of telephone calls, etc.) between you and any other third person regarding or discussing NexTech AR Solutions Corp.

3.     Produce all documents pertaining to your investment in NexTech AR Solutions Corp.

4.     Produce all statements showing trading of stock in NexTech AR Solutions Corp. by you or anyone person or entity under your control and/or have trading authority, including but not limited to personal and retirement accounts, accounts for your children, spouse or other relative.

5.     Produce all statements showing trading of stock in any other company operated, controlled or in which Evan Gappelberg served in an executive capacity (including but not limited to Future Farms Technologies) by you or anyone person or entity under your control, including but not limited to personal and retirement accounts, accounts for your children, spouse or other relative.

6.     Produce your detailed mobile telephone billing records for the period January 2019-April 2020.

7.     Produce any/all records evidencing any monetary or non-monetary gifts provided by you (or any person or entity you control) to Evan Gappelberg.

8.     Produce all documents evidencing any in person, phone or video meeting with Evan Gappelberg.

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of New York

| | |
|---|---|
| JIM EVANS and DAVE FRANKLIN ) | |
| *Plaintiff* ) | |
| v. ) | Civil Action No.   2:20-CV-03880 (GRB) |
| NEXTECH AR SOLUTIONS CORP. ) | |
| ) | |
| *Defendant* ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:
### DEREK E. SIMS
### 1750 Enterprise Way, Suite 114, Marietta, GA 30067
*(Name of person to whom this subpoena is directed)*

☑ Testimony: YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:

| Place: VIA Zoom | Date and Time: |
|---|---|
| Trustpoint Court Reporting | 01/23/2023 12:00 pm |

The deposition will be recorded by this method:   Stenographic and video

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: See Exhibit A hereto.

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   12/26/2022

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| | | /s/ Craig H. Kuglar |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Jim Evans and Dave Franklin
, who issues or requests this subpoena, are:

Craig H. Kuglar, Law Office of Craig Kuglar, LLC, 594 Dean Street, Brooklyn, NY 11238, ck@kuglarlaw.com, (404) 432-4448

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.   2:20-CV-03880 (GRB)

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____               _____

*Server's signature*

_____

*Printed name and title*

_____

*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***

  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:

  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## Exhibit A

1.      Produce all communications (including but not limited to correspondence, telephone records, text messages, emails, recordings, notes of telephone calls, etc.) between you and Evan Gappelberg and/or any other representative/agent of NexTech AR Solutions Corp.

2.      Produce all communications (including but not limited to correspondence, telephone records, text messages, emails, recordings, notes of telephone calls, etc.) between you and any other third person regarding or discussing NexTech AR Solutions Corp.

3.      Produce all documents pertaining to your investment in NexTech AR Solutions Corp.

4.      Produce all statements showing trading of stock in NexTech AR Solutions Corp. by you or anyone person or entity under your control and/or have trading authority, including but not limited to personal and retirement accounts, accounts for your children, spouse or other relative.

5.      Produce all statements showing trading of stock in any other company operated, controlled or in which Evan Gappelberg served in an executive capacity (including but not limited to Future Farms Technologies) by you or anyone person or entity under your control, including but not limited to personal and retirement accounts, accounts for your children, spouse or other relative.

6.      Produce your detailed mobile telephone billing records for the period January 2019-April 2020.

7.      Produce any/all records evidencing any monetary or non-monetary gifts provided by you (or any person or entity you control) to Evan Gappelberg.

8.      Produce all documents evidencing any in person, phone or video meeting with Evan Gappelberg.

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Eastern District of New York

| | |
|---|---|
| JIM EVANS and DAVE FRANKLIN | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.   2:20-CV-03880 (GRB) |
| NEXTECH AR SOLUTIONS CORP. | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:
JUSTIN MCAUSLAND
955 Wendover Drive NE, Atlanta, GA 30319-1216
*(Name of person to whom this subpoena is directed)*

☑ Testimony: YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:

| Place: VIA Zoom<br>Trustpoint Court Reporting | Date and Time:<br>01/23/2023 3:00 am |
|---|---|

The deposition will be recorded by this method:   Stenographic and video

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: See Exhibit A hereto.

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   12/26/2022

CLERK OF COURT

OR

_____                    /s/ Craig H. Kuglar
*Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Jim Evans and Dave Franklin
_____ , who issues or requests this subpoena, are:
Craig H. Kuglar, Law Office of Craig Kuglar, LLC, 594 Dean Street, Brooklyn, NY 11238, ck@kuglarlaw.com, (404) 432-4448

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 2:20-CV-03880 (GRB)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❑ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a
person to attend a trial, hearing, or deposition only as follows:
  (A) within 100 miles of where the person resides, is employed, or
regularly transacts business in person; or
  (B) within the state where the person resides, is employed, or regularly
transacts business in person, if the person
    (i) is a party or a party's officer; or
    (ii) is commanded to attend a trial and would not incur substantial
expense.

(2) *For Other Discovery.* A subpoena may command:
  (A) production of documents, electronically stored information, or
tangible things at a place within 100 miles of where the person resides, is
employed, or regularly transacts business in person; and
  (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney
responsible for issuing and serving a subpoena must take reasonable steps
to avoid imposing undue burden or expense on a person subject to the
subpoena. The court for the district where compliance is required must
enforce this duty and impose an appropriate sanction—which may include
lost earnings and reasonable attorney's fees—on a party or attorney who
fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*
  (A) *Appearance Not Required.* A person commanded to produce
documents, electronically stored information, or tangible things, or to
permit the inspection of premises, need not appear in person at the place of
production or inspection unless also commanded to appear for a deposition,
hearing, or trial.
  (B) *Objections.* A person commanded to produce documents or tangible
things or to permit inspection may serve on the party or attorney designated
in the subpoena a written objection to inspecting, copying, testing, or
sampling any or all of the materials or to inspecting the premises—or to
producing electronically stored information in the form or forms requested.
The objection must be served before the earlier of the time specified for
compliance or 14 days after the subpoena is served. If an objection is made,
the following rules apply:
    (i) At any time, on notice to the commanded person, the serving party
may move the court for the district where compliance is required for an
order compelling production or inspection.
    (ii) These acts may be required only as directed in the order, and the
order must protect a person who is neither a party nor a party's officer from
significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

  (A) *When Required.* On timely motion, the court for the district where
compliance is required must quash or modify a subpoena that:

    (i) fails to allow a reasonable time to comply;
    (ii) requires a person to comply beyond the geographical limits
specified in Rule 45(c);
    (iii) requires disclosure of privileged or other protected matter, if no
exception or waiver applies; or
    (iv) subjects a person to undue burden.
  (B) *When Permitted.* To protect a person subject to or affected by a
subpoena, the court for the district where compliance is required may, on
motion, quash or modify the subpoena if it requires:

    (i) disclosing a trade secret or other confidential research, development,
or commercial information; or
    (ii) disclosing an unretained expert's opinion or information that does
not describe specific occurrences in dispute and results from the expert's
study that was not requested by a party.
  (C) *Specifying Conditions as an Alternative.* In the circumstances
described in Rule 45(d)(3)(B), the court may, instead of quashing or
modifying a subpoena, order appearance or production under specified
conditions if the serving party:
    (i) shows a substantial need for the testimony or material that cannot be
otherwise met without undue hardship; and
    (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These
procedures apply to producing documents or electronically stored
information:
  (A) *Documents.* A person responding to a subpoena to produce documents
must produce them as they are kept in the ordinary course of business or
must organize and label them to correspond to the categories in the demand.
  (B) *Form for Producing Electronically Stored Information Not Specified.*
If a subpoena does not specify a form for producing electronically stored
information, the person responding must produce it in a form or forms in
which it is ordinarily maintained or in a reasonably usable form or forms.
  (C) *Electronically Stored Information Produced in Only One Form.* The
person responding need not produce the same electronically stored
information in more than one form.
  (D) *Inaccessible Electronically Stored Information.* The person
responding need not provide discovery of electronically stored information
from sources that the person identifies as not reasonably accessible because
of undue burden or cost. On motion to compel discovery or for a protective
order, the person responding must show that the information is not
reasonably accessible because of undue burden or cost. If that showing is
made, the court may nonetheless order discovery from such sources if the
requesting party shows good cause, considering the limitations of Rule
26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*
  (A) *Information Withheld.* A person withholding subpoenaed information
under a claim that it is privileged or subject to protection as trial-preparation
material must:
    (i) expressly make the claim; and
    (ii) describe the nature of the withheld documents, communications, or
tangible things in a manner that, without revealing information itself
privileged or protected, will enable the parties to assess the claim.
  (B) *Information Produced.* If information produced in response to a
subpoena is subject to a claim of privilege or of protection as
trial-preparation material, the person making the claim may notify any party
that received the information of the claim and the basis for it. After being
notified, a party must promptly return, sequester, or destroy the specified
information and any copies it has; must not use or disclose the information
until the claim is resolved; must take reasonable steps to retrieve the
information if the party disclosed it before being notified; and may promptly
present the information under seal to the court for the district where
compliance is required for a determination of the claim. The person who
produced the information must preserve the information until the claim is
resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a
motion is transferred, the issuing court—may hold in contempt a person
who, having been served, fails without adequate excuse to obey the
subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## Exhibit A

1.      Produce all communications (including but not limited to correspondence, telephone records, text messages, emails, recordings, notes of telephone calls, etc.) between you and Evan Gappelberg and/or any other representative/agent of NexTech AR Solutions Corp.

2.      Produce all communications (including but not limited to correspondence, telephone records, text messages, emails, recordings, notes of telephone calls, etc.) between you and any other third person regarding or discussing NexTech AR Solutions Corp.

3.      Produce all documents pertaining to your investment in NexTech AR Solutions Corp.

4.      Produce all statements showing trading of stock in NexTech AR Solutions Corp. by you or anyone person or entity under your control and/or have trading authority, including but not limited to personal and retirement accounts, accounts for your children, spouse or other relative.

5.      Produce all statements showing trading of stock in any other company operated, controlled or in which Evan Gappelberg served in an executive capacity (including but not limited to Future Farms Technologies) by you or anyone person or entity under your control, including but not limited to personal and retirement accounts, accounts for your children, spouse or other relative.

6.      Produce your detailed mobile telephone billing records for the period January 2019-April 2020.

7.      Produce any/all records evidencing any monetary or non-monetary gifts provided by you (or any person or entity you control) to Evan Gappelberg.

8.      Produce all documents evidencing any in person, phone or video meeting with Evan Gappelberg.

# EXHIBIT N

## JIM EVANS, ET AL. v NEXTECH AR SOLUTIONS CORP.

Reference ID: REF-11625063 (Derek E. Sims)                    Submitted: 12/27/22

**Case #:** 2:20-CV-03880 (GRB)
**Documents Category:** Subpoena
**Parties to Serve:** Derek E. Sims                    **Type:** Serve Only
**Court:** US District Court, New York, Eastern Division, Central Islip



### Status Overview

**All activity has been stopped.**

1 Document Review — 2 Service — 3 Proof — 4 Complete



### Key Events

📅 **Hearing**        12:00 PM        1/23/23

✕ **Canceled**    Service On Derek E. Sims    1/23/23



### Case Activity

[Expand All] | [Collapse All]

01/24/23 3:50 PM ✏️    **Signed Proof of Non-Service** for Derek E. Sims at 1750 Enterprise Way Suite 114, Marietta, GA 30067

01/23/23 10:23 AM ⓘ    Service for Derek E. Sims has been canceled by Beth Williams.

01/17/23 2:57 PM 📋    Service attempted upon **Derek E. Sims** at 1750 Enterprise Way SE Ste 114, Marietta, GA 30067-9220

01/13/23 8:17 PM 📋    Service attempted upon **Derek E. Sims** at 1750 Enterprise Way SE Ste 114, Marietta, GA 30067-



Messages          Documents

Billing

### Send a Message

Messages are monitored during business hours by customer support.

BW    Enter a message to send to ABC Legal customer support.

📎 Attach or Drag & Drop Documents

[Send]





9220

01/10/23
5:17 PM    →    Process server
received documents
for Derek E. Sims

12/27/22
1:55 PM    Filing confirmed.
Case # 2:20-CV-
03880 (GRB) filed on
12/26/22 at US
District Court, New
York, Eastern
Division, Central
Islip.

12/27/22
1:53 PM    Order entered

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.   **2:20-CV-03880 (GRB)**

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (I))*

This summons for   **Derek E. Sims**
was recieved by me on  **1/10/2023:**

☐   I personally served the summons on the individual at *(place)*  on *(date)* ; or

☐   I left the summons at the individual's residence or usual place of abode with *(name)* , a person of suitable age and discretion who resides there, on , and mailed a copy to the individual's last known address; or

☐   I served the summons on *(name of individual)* , who is designated by law to accept service of process on behalf of *(name of  organization)* ; or

☒   I returned the summons unexecuted because ; or

☐   Other *(specify)*

My fees are $ 0 for travel and **$ 0.00** for services, for a total of **$ 0.00**.

I declare under penalty of perjury that this information is true.

Date:  01/24/2023

_____
*Server's signature*

**Euael Beyene**
*Printed name and title*

**3061 oakcliff road
APT 206
Doraville, GA 30340**

_____
*Server's address*

Additional information regarding attempted service, etc:

**1/13/2023 8:17 PM: There was no answer at the address.
1/17/2023 2:57 PM: I spoke with an individual who indicated they were the employee.  Subject is known but out of the country and employee refused to give phone number on subject or provide a date he will return.**





Tracking #: **0099867006**

## JIM EVANS, ET AL. v NEXTECH AR SOLUTIONS CORP.

Reference ID: REF-11625063                     Submitted: 12/26/22

**Case #:** 2:20-CV-03880 (GRB)

**Documents Category:** Subpoena

**Parties to Serve:** Peter J. Woolverton                     **Type:** Serve Only

**Court:** US District Court, New York, Eastern Division, Central Islip

### Status Overview

**All activity is in the process of being stopped.**



1. Document Review
2. Service
3. Proof
4. Complete

### Key Events

| | | |
|---|---|---|
| 🗓 **Hearing** | 09:00 AM | 1/23/23 |
| ✕ **Canceled** | Service On Peter J. Woolverton | 1/23/23 |

### Case Activity

⬇ Expand All  |  ⬆ Collapse All



01/23/23
10:23 AM

> Service for Peter J. Woolverton has been canceled by Beth Williams.      ⌃
>
> Customer Contact: Beth Williams

01/21/23
6:59 PM

> Service attempted upon **Peter J. Woolverton** at 21 Ferry Landing Ln NW Unit 1512, Atlanta, GA 30305-1673      ⌃
>
> I was unable to access the address due to gated community although I waited and called available phones, call box. At the address I

### Messages      Documents

Billing

**Send a Message**

Messages are monitored during business hours by customer support.



BW | Enter a message to send to ABC Legal customer support.

📎 Attach or Drag & Drop Documents

**Send**



h, how do you like the new abclegal.com

box. At the address I
observed a call/mail
box listing subject.

Server: Xavier Irvine

📷 (1)    ◎

01/14/23    Service attempted ⌃
8:11 AM     upon **Peter J.
            Woolverton** at 21
            Ferry Landing Ln NW
            Unit 1512, Atlanta,
            GA 30305-1673

            I was unable to
            access the address
            due to gated
            community although I
            waited and called
            available phones, call
            box. At the address I
            observed a call/mail
            box listing subject.

            Server: Xavier Irvine

            📷 (2)    ◎

01/10/23    Process server ⌃
11:07 PM    received documents
            for Peter J.
            Woolverton

            Server: Xavier Irvine

12/27/22    **Filing** confirmed. ⌃
1:55 PM     Case # **2:20-CV-
            03880 (GRB)** filed on
            **12/26/22** at US
            District Court, New
            York, Eastern
            Division, Central
            Islip.

            SUBPOENA



12/27/22
1:48 PM

Order entered

12/26/22
10:12 AM

Standard Delivery for ∧
Service of Process
requested upon 3
parties

**Peter J. Woolverton**
21 Ferry Landing Lane
Northwest unit 1512,
Atlanta, GA 30305

**Justin McAusland**
955 Wendover Drive
Northeast, Atlanta, GA
30319

**Derek E. Sims**
1750 Enterprise Way
suite 114, Marietta,
GA 30067

🖉 (3)

# EXHIBIT O

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.   **2:20-CV-03880 (GRB)**

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for   **Justin McAusland**
was recieved by me on  **1/01/2023:**

☐  I personally served the summons on the individual at *(place)*  on *(date)* ; or

☒  I left the summons at the individual's residence or usual place of abode with **Christy McAusland** , a person of suitable age and discretion who resides there, on **01/18/2023**, and mailed a copy to the individual's last known address; or

☐  I served the summons on *(name of individual)* , who is designated by law to accept service of process on behalf of *(name of  organization)* ; or

☐  I returned the summons unexecuted because ; or

☐  Other *(specify)*

My fees are $ 0 for travel and **$ 0.00** for services, for a total of **$ 0.00**.

I declare under penalty of perjury that this information is true.

Date:  01/19/2023

*Server's signature*

**Melba Green**
*Printed name and title*

**1328 Orchard Park Drive**
**Stone Mountain, GA 30083**

*Server's address*

Additional information regarding attempted service, etc:

**I delivered the documents to Christy McAusland who indicated they were the subject's spouse, co-resident with identity confirmed by subject stating their name. The individual accepted service with direct delivery. The individual appeared to be a black-haired white female contact 35-45 years of age, 5'6"-5'8" tall and weighing 140-160 lbs.**




Tracking #: **0099584093**

# EXHIBIT P



January 19, 2023

**VIA FEDEX OVERNIGHT DELIVERY**
Justin McAusland
955 Wendover Drive NE
Atlanta, Georgia 30319-1216

   Re: *Jim Evans and Dave Franklin v. NexTech AR Solutions Corp.*
      United States District Court, Eastern District of New York
      Case No. 2:20-cv-3880 (GRB)

Dear Mr. McAusland:

   You were served with a subpoena for deposition on Wednesday, January 18, 2023. That deposition will be held via Zoom on January 23, 2023 beginning at 3:00 p.m.

   The Zoom meeting ID is 826 6917 4629. The password is 036856.

   You may forward the requested documents either by downloading them in the Dropbox linked here (https://www.dropbox.com/scl/fo/iaa6btkpjl504shdzwsjo/h?dl=0&rlkey=pst9yb1fch7 pnrxc62igpfu33) or by emailing them to beth@kuglarlaw.com.

   If you have any questions, you can reach me at (404) 432-4448. Thank you.

      Sincerely,

      Craig H. Kuglar

**Subject:** FedEx Shipment 771074817700: Your package has been delivered
**Date:** Friday, January 20, 2023 at 10:45:27 AM Eastern Standard Time
**From:** TrackingUpdates@fedex.com <TrackingUpdates@fedex.com>
**To:** beth@kuglarlaw.com <beth@kuglarlaw.com>
**Attachments:** DeliveryPicture.jpeg



# Hi. Your package was delivered Fri, 01/20/2023 at 10:39am.



Delivered to 955 WENDOVER DR NE, ATLANTA, GA 30319

**OBTAIN PROOF OF DELIVERY**



Delivery picture not showing? [View](#) in browser.

| | |
|---|---|
| **TRACKING NUMBER** | [771074817700](#) |
| **FROM** | Craig Kuglar |
| | 931 Monroe Drive NE |
| | Suite A102-353 |
| | ATLANTA, GA, US, 30308 |
| **TO** | Justin McAusland |
| | 955 WENDOVER DR NE |
| | ATLANTA, GA, US, 30319 |
| **REFERENCE** | NTAR |
| **SHIPPER REFERENCE** | NTAR |
| **SHIP DATE** | Thu 1/19/2023 07:29 PM |
| **DELIVERED TO** | Residence |
| **PACKAGING TYPE** | FedEx Envelope |
| **ORIGIN** | ATLANTA, GA, US, 30308 |
| **DESTINATION** | ATLANTA, GA, US, 30319 |
| **SPECIAL HANDLING** | Deliver Weekday |
| | Residential Delivery |
| **NUMBER OF PIECES** | 1 |
| **TOTAL SHIPMENT WEIGHT** | 0.50 LB |
| **SERVICE TYPE** | FedEx Priority Overnight |



## Get the FedEx® Mobile app

Create shipments, receive tracking alerts, redirect packages to a FedEx retail location for pickup, and more from the palm of your hand - **Download now**.





**FOLLOW FEDEX**        

✉  Please do not respond to this message. This email was sent from an unattended mailbox. This report was generated at approximately 9:45 AM CST 01/20/2023.

All weights are estimated.

To track the latest status of your shipment, click on the tracking number above.

Standard transit is the date and time the package is scheduled to be delivered by, based on the selected service, destination and ship date. Limitations and exceptions may apply. Please see the FedEx Service Guide for terms and conditions of service, including the FedEx Money-Back Guarantee, or contact your FedEx Customer Support representative.

© 2023 Federal Express Corporation. The content of this message is protected by copyright and trademark laws under U.S. and international law. Review our privacy policy. All rights reserved.

Thank you for your business.

# EXHIBIT Q



# Transcript of **Statement on the Record**

Monday, January 23, 2023

*Jim Evans and Dave Franklin v. NexTech AR Solutions Corp.*

www.TP.One
www.aldersonreporting.com
www.accutrancr.com
800.FOR.DEPO (800.367.3376)
Scheduling@TP.One

Reference Number: 124870

```
 1                 UNITED STATES DISTRICT COURT

            FOR THE EASTERN DISTRICT OF NEW YORK

 2

 3

 4   JIM EVANS and DAVE FRANKLIN,    )

                                    )

 5        Plaintiffs,               )

                                    )  Civil Action

 6   vs.                            )  No.: 2:2020cv03880 (GRB)

                                    )

 7   NEXTECH AR SOLUTIONS CORP.,     )

                                    )

 8        Defendant.                )

 9                          -  -  -

10              Statement on the record, via Zoom

11        videoconference, taken on behalf of the

12        Plaintiff, pursuant to notice, before

13        Jodi P. Scheffel, Certified Court Reporter,

14        Atlanta, Georgia, on the 23rd day of January,

15        2023, commencing at the hour of 3:25 p.m.

16

17

18

19

20

21

22

23

24

25
```

Statement on the Record
Case 1:23-mi-99999-UNA   Document 742-2   Filed 03/10/23   Page 159 of 171
1/23/2023
Page 2 (2 - 5)



**Page 2**

A P P E A R A N C E S

On behalf of the Plaintiffs:
CRAIG H. KUGLAR, ESQUIRE
Law Office of Craig Kuglar, LLC
931 Monroe Drive, NE
Suite A-102-353
Atlanta, Georgia 30308
(404)432-4448
ck@kuglar.com

On behalf of the Defendant:
MICHAEL FREYBERG, ESQUIRE
Haynes and Boone, LLP
30 Rockefeller Plaza
26th Floor
New York, NY 10122
(212)659-7300
michael.freyberg@haynesboone.com

* * *

**Page 3**

MR. KUGLAR: This is Craig Kuglar of the Law Office of Craig Kuglar, representing Plaintiffs in the lawsuit styled Jim Evans and Dave Franklin, Plaintiffs, versus Nextech AR Solutions Corp., Defendant, pending in the United States District Court for the Eastern District of New York.

We are at the scheduled deposition of third-party witness, Justin Mcausland, J-U-S-T-I-N, M-C-A-U-S-L-A-N-D, who was served on January 18, 2023, at his home, 955 Wendover Drive, Northeast, Atlanta, Georgia 30309, care of Christy Mcausland.

The subpoena set forth a time of 3:00 p.m. In addition, my office sent the witness a follow-up letter, which was delivered by overnight delivery, setting forth the Zoom link and information for how to provide documents electronically in advance of the deposition. Despite that, the witness not appeared. It's now 3:27 p.m. That's all.

(The statement on the record was concluded at 3:27 p.m.)

* * *

**Page 4**

D I S C L O S U R E
STATE OF GEORGIA                DEPONENT:
DEKALB COUNTY                   JUSTIN MCAUSLAND

Pursuant to Article 10.B. of the Rules and Regulations of the Board of Court Reporting of the Judicial Council of Georgia, I make the following disclosure:

I am a Georgia Certified Court Reporter. I am a representative of Trustpoint.One. I am not disqualified for a relationship of interest under the provisions of O.C.G.A. 9-11-28 (c).

The firm was contacted by the Law Office of Craig Kuglar, LLC to provide court reporting services for this Zoom videoconference deposition. The firm will not be taking this Zoom videoconference deposition under any contract that is prohibited by O.C.G.A. 15-14-37 (a) and (b).

The firm has no contract/agreement to provide reporting services with any party to the case, any counsel in the case, or any reporter or reporting agency from whom a referral might have been made to cover this Zoom videoconference deposition. The firm will charge its usual and customary rates to all parties in the case, and a financial discount will not be given to any party to this litigation.

This 24th day of January, 2023.

_____
Jodi P. Scheffel, #2750
Certified Court Reporter

**Page 5**

C E R T I F I C A T E
STATE OF GEORGIA
COUNTY OF DEKALB:

I, Jodi Scheffel, the officer before whom the foregoing statement on the record was taken, do certify that the statements of said parties were taken by me in stenotype and thereafter reduced to typewriting under my direction; that said proceeding is a true record of the statements given by said parties, that I am neither counsel for, related to, nor employed by any of the parties to the action in which this statement agreement was taken; and further, that I am not a relative or employee of any attorney or counsel employed by the parties hereto, nor financially, or otherwise interested in the outcome of the action.

This 24th day of January, 2023.

_____
Jodi P. Scheffel, 2750
Certified Court Reporter

## WORD INDEX

**< 1 >**
**10.B**  4:*3*
**10122**  2:*11*
**15-14-37**  4:*11*
**18**  3:*11*

**< 2 >**
**2:2020cv03880**  1:*6*
**2023**  1:*15*  3:*11*  4:*21*
  5:*21*
**212)659-7300**  2:*11*
**23rd**  1:*14*
**24th**  4:*21*  5:*21*
**26th**  2:*10*
**2750**  4:*24*  5:*24*

**< 3 >**
**3:00**  3:*14*
**3:25**  1:*15*
**3:27**  3:*21, 23*
**30**  2:*10*
**30308**  2:*5*
**30309**  3:*12*

**< 4 >**
**404)432-4448**  2:*5*

**< 9 >**
**9-11-28**  4:*8*
**931**  2:*4*
**955**  3:*11*

**< A >**
**A-102-353**  2:*4*
**Action**  1:*5*  5:*12, 16*
**addition**  3:*15*
**advance**  3:*19*
**agency**  4:*14*
**agreement**  5:*12*
**appeared**  3:*20*
**AR**  1:*7*  3:*4*
**Article**  4:*3*
**Atlanta**  1:*14*  2:*5*  3:*12*
**attorney**  5:*14*

**< B >**
**behalf**  1:*11*  2:*2, 8*
**Board**  4:*5*
**Boone**  2:*9*

**< C >**
**care**  3:*12*
**case**  4:*13, 14, 15*
**Certified**  1:*13*  4:*7, 25*
  5:*25*
**certify**  5:*6*
**charge**  4:*15*
**Christy**  3:*13*

**Civil**  1:*5*
**ck@kuglar.com**  2:*6*
**commencing**  1:*15*
**concluded**  3:*22*
**contacted**  4:*8*
**contract**  4:*11*
**contract/agreement**  4:*13*
**CORP**  1:*7*  3:*5*
**Council**  4:*5*
**counsel**  4:*13*  5:*11, 14*
**COUNTY**  4:*3*  5:*3*
**COURT**  1:*1, 13*  3:*6*  4:*5,
  7, 10, 25*  5:*25*
**cover**  4:*14*
**CRAIG**  2:*3*  3:*1, 2*  4:*10*
**customary**  4:*15*

**< D >**
**DAVE**  1:*4*  3:*4*
**day**  1:*14*  4:*21*  5:*21*
**Defendant**  1:*8*  2:*8*  3:*5*
**DEKALB**  4:*3*  5:*3*
**delivered**  3:*16*
**delivery**  3:*17*
**DEPONENT**  4:*2*
**deposition**  3:*8, 19*  4:*10,
  11, 15*
**Despite**  3:*20*
**direction**  5:*9*
**disclosure**  4:*6*
**discount**  4:*16*
**disqualified**  4:*8*
**DISTRICT**  1:*1*  3:*6*
**documents**  3:*18*
**Drive**  2:*4*  3:*12*

**< E >**
**EASTERN**  1:*1*  3:*6*
**electronically**  3:*19*
**employed**  5:*11, 14*
**employee**  5:*14*
**ESQUIRE**  2:*3, 9*
**EVANS**  1:*4*  3:*3*

**< F >**
**financial**  4:*16*
**financially**  5:*15*
**firm**  4:*8, 10, 13, 15*
**Floor**  2:*10*
**follow**  3:*15*
**following**  4:*5*
**foregoing**  5:*6*
**forth**  3:*14, 17*
**FRANKLIN**  1:*4*  3:*4*
**FREYBERG**  2:*9*
**further**  5:*13*

**< G >**
**Georgia**  1:*14*  2:*5*  3:*12*
  4:*2, 5, 7*  5:*2*

**given**  4:*16*  5:*10*
**GRB**  1:*6*

**< H >**
**Haynes**  2:*9*
**hereto**  5:*15*
**home**  3:*11*
**hour**  1:*15*

**< I >**
**information**  3:*18*
**interest**  4:*8*
**interested**  5:*15*
**its**  4:*15*

**< J >**
**January**  1:*14*  3:*11*  4:*21*
  5:*21*
**JIM**  1:*4*  3:*3*
**Jodi**  1:*13*  4:*24*  5:*5, 24*
**Judicial**  4:*5*
**Justin**  3:*9*  4:*3*
**J-U-S-T-I-N**  3:*10*

**< K >**
**KUGLAR**  2:*3*  3:*1, 2*
  4:*10*

**< L >**
**Law**  2:*3*  3:*2*  4:*8*
**lawsuit**  3:*3*
**letter**  3:*16*
**link**  3:*17*
**litigation**  4:*16*
**LLC**  2:*3*  4:*10*
**LLP**  2:*9*

**< M >**
**Mcausland**  3:*9, 13*  4:*3*
**M-C-A-U-S-L-A-N-D**
  3:*10*
**MICHAEL**  2:*9*
**michael.freyberg@haynes
  boone.com**  2:*12*
**Monroe**  2:*4*

**< N >**
**NE**  2:*4*
**neither**  5:*10*
**NEW**  1:*1*  2:*11*  3:*7*
**NEXTECH**  1:*7*  3:*4*
**Northeast**  3:*12*
**notice**  1:*12*
**NY**  2:*11*

**< O >**
**O.C.G.A**  4:*8, 11*
**Office**  2:*3*  3:*2, 15*  4:*8*
**officer**  5:*5*
**outcome**  5:*16*

**overnight**  3:*16*

**< P >**
**p.m**  1:*15*  3:*14, 21, 23*
**parties**  4:*15*  5:*7, 10, 12,
  15*
**party**  4:*13, 16*
**pending**  3:*5*
**Plaintiff**  1:*12*
**Plaintiffs**  1:*5*  2:*2*  3:*3, 4*
**Plaza**  2:*10*
**proceeding**  5:*9*
**prohibited**  4:*11*
**provide**  3:*18*  4:*10, 13*
**provisions**  4:*8*
**pursuant**  1:*12*  4:*3*

**< R >**
**rates**  4:*15*
**record**  1:*10*  3:*22*  5:*6, 9*
**reduced**  5:*8*
**referral**  4:*14*
**Regulations**  4:*5*
**related**  5:*11*
**relationship**  4:*8*
**relative**  5:*13*
**Reporter**  1:*13*  4:*7, 14,
  25*  5:*25*
**Reporting**  4:*5, 10, 13, 14*
**representative**  4:*7*
**representing**  3:*2*
**Rockefeller**  2:*10*
**Rules**  4:*3*

**< S >**
**scheduled**  3:*8*
**Scheffel**  1:*13*  4:*24*  5:*5,
  24*
**sent**  3:*15*
**served**  3:*10*
**services**  4:*10, 13*
**set**  3:*14*
**setting**  3:*17*
**SOLUTIONS**  1:*7*  3:*5*
**STATE**  4:*2*  5:*2*
**Statement**  1:*10*  3:*22*
  5:*6, 12*
**statements**  5:*7, 10*
**STATES**  1:*1*  3:*6*
**stenotype**  5:*8*
**styled**  3:*3*
**subpoena**  3:*14*
**Suite**  2:*4*

**< T >**
**taken**  1:*11*  5:*6, 7, 13*
**third-party**  3:*9*
**time**  3:*14*
**true**  5:*9*
**Trustpoint.One**  4:*7*



typewriting  5:*8*

**< U >**
**UNITED**  1:*1*  3:*5*
**usual**  4:*15*

**< V >**
**versus**  3:*4*
**videoconference**  1:*11*
 4:*10, 11, 15*
**vs**  1:*6*

**< W >**
**Wendover**  3:*11*
**witness**  3:*9, 15, 20*

**< Y >**
**YORK**  1:*1*  2:*11*  3:*7*

**< Z >**
**Zoom**  1:*10*  3:*17*  4:*10,*
 *11, 14*

# EXHIBIT R



# Invoice

Pay now at abclegal.com | ABC Legal Services, LLC | 633 Yesler Way, Seattle, WA 98104 | 206-521-9000 | ar@abclegal.com | Tax ID: 91-1153514

**BILL TO:**

**Law Office of Craig Kuglar, LLC**
**931 Monroe Drive NE Suite A102-353**
**Atlanta, GA 30308**

| | |
|---|---|
| INVOICE# | 11551869.100 |
| DATE | May 05, 2022 |
| ACCOUNT# | 130599 |
| ATTENTION | beth@kuglarlaw.com |
| REFERENCE# | REF-10019146 |

| **AMOUNT DUE** | **$ 0.00** |
|---|---|

| | |
|---|---|
| CASE # | N/A |
| CASE TITLE | N/A |
| COURT | N/A |

**SERVICES PERFORMED**

| DESCRIPTION | NOTE | AMOUNT |
|---|---|---|
| **Prepare Suit** | | |
| Process Service - Web Upload | **Uploaded File(s):** 2022-05-05 Subpoena to Testify at Depo (McAusland).pdf, 2022-05-05 Subpoena to Testify at Depo (Sims).pdf, 2022-05-05 Subpoena to Testify at Depo (Woolverton).pdf **Rush Requested:** No **Parties To Serve:** 3 | 255.00 |
| | | |

| | |
|---|---|
| SUBTOTAL | $ 255.00 |
| SALES TAX | $ 0.00 |
| **TOTAL CHARGES** | **$ 255.00** |

**PAYMENTS**

| SOURCE | DATE | AMOUNT |
|---|---|---|
| amex ending in 2005 | May 05, 2022 | 255.00 |
| | | |

| | |
|---|---|
| **AMOUNT PAID** | **$ 255.00** |

| | |
|---|---|
| **AMOUNT DUE** | **$ 0.00** |



# Invoice

Pay now at abclegal.com | ABC Legal Services, LLC | 633 Yesler Way, Seattle, WA 98104 | 206-521-9000 | ar@abclegal.com | Tax ID: 91-1153514

**BILL TO:**

**Law Office of Craig Kuglar, LLC**
**931 Monroe Drive NE Suite A102-353**
**Atlanta, GA 30308**

| | |
|---|---|
| **INVOICE#** | 11576387.100 |
| **DATE** | May 10, 2022 |
| **ACCOUNT#** | 130599 |
| **ATTENTION** | beth@kuglarlaw.com |
| **REFERENCE#** | REF-10019146 (MCAUSLAND) |

| **AMOUNT DUE** | **$ 0.00** |
|---|---|

| | |
|---|---|
| **CASE #** | 2:20-CV-03880 |
| **CASE TITLE** | JIM EVANS AND DAVE FRANKLIN v. NEXTECH AR SOLUTIONS CORP. |
| **COURT** | US District Court, New York, Eastern Division, Central Islip |

**SERVICES PERFORMED**

| DESCRIPTION | NOTE | AMOUNT |
|---|---|---|
| **Effect Service of Process** | | |
| Process Service - Additional Address | **Subject:** Justin McAusland<br>**Address:** 3680 BROOKHAVEN MANOR XING NE, ATLANTA, GA 30319 | 85.00 |
| | | |

| | |
|---|---|
| **SUBTOTAL** | $ 85.00 |
| **SALES TAX** | $ 0.00 |
| **TOTAL CHARGES** | **$ 85.00** |

**PAYMENTS**

| SOURCE | DATE | AMOUNT |
|---|---|---|
| amex ending in 2005 | May 10, 2022 | 85.00 |
| | | |

| | |
|---|---|
| **AMOUNT PAID** | **$ 85.00** |

| | |
|---|---|
| **AMOUNT DUE** | **$ 0.00** |



# Invoice

Pay now at abclegal.com | ABC Legal Services, LLC | 633 Yesler Way, Seattle, WA 98104 | 206-521-9000 | ar@abclegal.com | Tax ID: 91-1153514

**BILL TO:**

**Law Office of Craig Kuglar, LLC**
**931 Monroe Drive NE Suite A102-353**
**Atlanta, GA 30308**

| | |
|---|---|
| INVOICE# | 12799211.100 |
| DATE | Nov 22, 2022 |
| ACCOUNT# | 130599 |
| ATTENTION | beth@kuglarlaw.com |
| REFERENCE# | REF-11400040 |

| **AMOUNT DUE** | **$ 0.00** |
|---|---|

| | |
|---|---|
| CASE # | N/A |
| CASE TITLE | N/A |
| COURT | N/A |

## SERVICES PERFORMED

| DESCRIPTION | NOTE | AMOUNT |
|---|---|---|
| **Prepare Suit** | | |
| Process Service - Web Upload | **Uploaded File(s):** 2022-11-22 Subpoena (Sims).pdf, 2022-11-22 Subpoena (McAusland).pdf<br>**Rush Requested:** No<br>**Parties To Serve:** 2 | 170.00 |
| | | |

| | |
|---|---|
| SUBTOTAL | $ 170.00 |
| SALES TAX | $ 0.00 |
| **TOTAL CHARGES** | **$ 170.00** |

## PAYMENTS

| SOURCE | DATE | AMOUNT |
|---|---|---|
| American Express ending in 3037 | November 22, 2022 | 170.00 |
| | | |

| | |
|---|---|
| **AMOUNT PAID** | **$ 170.00** |

| | |
|---|---|
| **AMOUNT DUE** | **$ 0.00** |



# Invoice

Pay now at abclegal.com | ABC Legal Services, LLC | 633 Yesler Way, Seattle, WA 98104 | 206-521-9000 | ar@abclegal.com | Tax ID: 91-1153514

**BILL TO:**

**Law Office of Craig Kuglar, LLC**
**931 Monroe Drive NE Suite A102-353**
**Atlanta, GA 30308**

| | |
|---|---|
| INVOICE# | 12872804.100 |
| DATE | Dec 05, 2022 |
| ACCOUNT# | 130599 |
| ATTENTION | beth@kuglarlaw.com |
| REFERENCE# | REF-11400040 - SIMS |

| **AMOUNT DUE** | **$ 0.00** |
|---|---|

| | |
|---|---|
| CASE # | 2:20-CV-03880(GRB) |
| CASE TITLE | JIM EVANS AND DAVE FRANKLIN v. NEXTECH AR SOLUTIONS CORP. |
| COURT | US District Court, New York, Eastern Division, Brooklyn |

## SERVICES PERFORMED

| DESCRIPTION | NOTE | AMOUNT |
|---|---|---|
| **Prepare Suit** | | |
| CUSTOMER HAS REQUESTED THAT Justin McAusland IS ATTEMPTED AT : 955 Wendover Drive Northeast, Atlanta, GA 30319.<br><br>PAYMENT OF $85 ADDED TO INITIAL ORDER. NEW ORDER ENTERED AT: REF-11400040 - MCAUSLAND NEW | **Uploaded File(s):** 2022-11-22 Subpoena (Sims).pdf, 2022-11-22 Subpoena (McAusland).pdf<br>**Rush Requested:** No<br>**Parties To Serve:** 2 | 85.00 |
| | | |

| | |
|---|---|
| SUBTOTAL | $ 85.00 |
| SALES TAX | $ 0.00 |
| **TOTAL CHARGES** | **$ 85.00** |

## PAYMENTS

| SOURCE | DATE | AMOUNT |
|---|---|---|
| amex ending in 3037 | December 05, 2022 | 85.00 |
| | | |

| | |
|---|---|
| **AMOUNT PAID** | **$ 85.00** |

| | |
|---|---|
| **AMOUNT DUE** | **$ 0.00** |

OFFICIAL PROCESS SERVER TO U.S. DEPARTMENT OF JUSTICE AND U.S. STATE DEPARTMENT     Page 1 of 1



# Invoice

Pay now at abclegal.com | ABC Legal Services, LLC | 633 Yesler Way, Seattle, WA 98104 | 206-521-9000 | ar@abclegal.com | Tax ID: 91-1153514

**BILL TO:**

**Law Office of Craig Kuglar, LLC**
**931 Monroe Drive NE Suite A102-353**
**Atlanta, GA 30308**

| | |
|---|---|
| INVOICE# | 12899509.100 |
| DATE | Dec 08, 2022 |
| ACCOUNT# | 130599 |
| ATTENTION | beth@kuglarlaw.com |
| REFERENCE# | REF-11499188 |

**AMOUNT DUE** **$ 0.00**

| | |
|---|---|
| CASE # | N/A |
| CASE TITLE | N/A |
| COURT | N/A |

## SERVICES PERFORMED

| DESCRIPTION | NOTE | AMOUNT |
|---|---|---|
| **Prepare Suit** | | |
| Process Service - Web Upload | **Uploaded File(s):** 2022-11-22 Subpoena (Woolverton).pdf<br>**Rush Requested:** No<br>**Parties To Serve:** 1 | 85.00 |
| | | |

| | |
|---|---|
| SUBTOTAL | $ 85.00 |
| SALES TAX | $ 0.00 |
| **TOTAL CHARGES** | **$ 85.00** |

## PAYMENTS

| SOURCE | DATE | AMOUNT |
|---|---|---|
| American Express ending in 3037 | December 08, 2022 | 85.00 |
| | | |

| | |
|---|---|
| **AMOUNT PAID** | **$ 85.00** |

| | |
|---|---|
| **AMOUNT DUE** | **$ 0.00** |



# Invoice

Pay now at abclegal.com | ABC Legal Services, LLC | 633 Yesler Way, Seattle, WA 98104 | 206-521-9000 | ar@abclegal.com | Tax ID: 91-1153514

**BILL TO:**

**Law Office of Craig Kuglar, LLC**
**931 Monroe Drive NE Suite A102-353**
**Atlanta, GA 30308**

| | |
|---|---|
| INVOICE# | 13005230.100 |
| DATE | Dec 26, 2022 |
| ACCOUNT# | 130599 |
| ATTENTION | beth@kuglarlaw.com |
| REFERENCE# | REF-11625063 |

**AMOUNT DUE** | **$ 0.00**

| | |
|---|---|
| CASE # | N/A |
| CASE TITLE | N/A |
| COURT | N/A |

## SERVICES PERFORMED

| DESCRIPTION | NOTE | AMOUNT |
|---|---|---|
| **Prepare Suit** | | |
| Process Service - Web Upload | **Uploaded File(s):** 2022-12-26 Subpoena (McAusland).pdf, 2022-12-26 Subpoena (Sims).pdf, 2022-12-26 Subpoena (Woolverton).pdf<br>**Rush Requested:** No<br>**Parties To Serve:** 3 | 255.00 |
| | | |

| | |
|---|---|
| SUBTOTAL | $ 255.00 |
| SALES TAX | $ 0.00 |
| **TOTAL CHARGES** | **$ 255.00** |

## PAYMENTS

| SOURCE | DATE | AMOUNT |
|---|---|---|
| American Express ending in 3037 | December 26, 2022 | 255.00 |
| | | |

| | |
|---|---|
| **AMOUNT PAID** | **$ 255.00** |

| | |
|---|---|
| **AMOUNT DUE** | **$ 0.00** |

# STATEMENT

1 of 1

**Alderson** | A Trustpoint Company

| Account No. | Date |
|---|---|
| C57781 | 2/27/2023 |

| 1 - 30 days | 31 - 60 days | 61 - 90 days |
|---|---|---|
| $348.00 | $0.00 | $0.00 |
| **91 - 120 days** | **121 days & Over** | **Total Due** |
| $0.00 | $0.00 | **$348.00** |

Beth Willams
Law Office of Craig Kuglar, LLC
931 Monroe Drive, NE
Suite A102-353
Atlanta, GA 30308

| Invoice Date | Invoice No. | Balance | Job No. | Job Date | Witness | Case |
|---|---|---|---|---|---|---|
| 1/31/2023 | 156347 | 348.00 | 124870 | 1/23/2023 | Statement on the Record | Jim Evans and Dave Franklin v. NexTech AR Solutions Corp. |

**Tax ID:** 35-2640986

*Please detach bottom portion and return with payment.*

Beth Willams
Law Office of Craig Kuglar, LLC
931 Monroe Drive, NE
Suite A102-353
Atlanta, GA 30308

| | |
|---|---|
| Account No. | : C57781 |
| Date | : 2/27/2023 |
| **Total Due** | : **$348.00** |

Remit To: **Trustpoint Court Reporting, LLC
PO Box 532308
Atlanta, GA 30353-2308**



# INVOICE

1 of 2

| Invoice No. | Invoice Date | Job No. |
|---|---|---|
| 156347 | 1/31/2023 | 124870 |

| Job Date | Case No. |
|---|---|
| 1/23/2023 | |

| Case Name |
|---|
| Jim Evans and Dave Franklin v. NexTech AR Solutions Corp. |

| Payment Terms |
|---|
| Due upon receipt (1.5%/mo & collection) |

Beth Willams
Law Office of Craig Kuglar, LLC
931 Monroe Drive, NE
Suite A102-353
Atlanta, GA 30308

| | | | | |
|---|---|---|---|---|
| Statement on the Record | | | | |
| Statement on the Record | 1.00 Hours | @ | 300.000 | 300.00 |
| Processing Fee (Electronic Delivery only) | 1.00 | @ | 48.000 | 48.00 |
| **TOTAL DUE >>>** | | | | **$348.00** |

Ordered by      : Craig H. Kuglar
                Law Office of Craig Kuglar, LLC
                931 Monroe Dr. NE Suite A-102-353
                Atlanta, GA 30308

**MINIMUM BILLING APPLIES

For questions about payments email ARCR@tp.one
For billing inquiries, please email tpr.billing@tp.one

We appreciate the opportunity to work with you!

800.367.3376
www.trustpoint.one

Accounts Receivable Department
ARCR@trustpoint.one
678.496.2488 or 855.669.1205 ext. 602
Billing Department

**Tax ID:** 35-2640986

*Please detach bottom portion and return with payment.*

Beth Willams
Law Office of Craig Kuglar, LLC
931 Monroe Drive, NE
Suite A102-353
Atlanta, GA 30308

Invoice No.    : 156347
Invoice Date  : 1/31/2023
**Total Due**     : **$348.00**

Remit To: **Trustpoint Court Reporting, LLC**
          **PO Box 532308**
          **Atlanta, GA 30353-2308**

Job No.     : 124870
BU ID       : TP-Legal
Case No.    :
Case Name   : Jim Evans and Dave Franklin v. NexTech AR
              Solutions Corp.



# INVOICE

2 of 2

| Invoice No. | Invoice Date | Job No. |
|---|---|---|
| 156347 | 1/31/2023 | 124870 |

| Job Date | Case No. |
|---|---|
| 1/23/2023 | |

| Case Name |
|---|
| Jim Evans and Dave Franklin v. NexTech AR Solutions Corp. |

| Payment Terms |
|---|
| Due upon receipt (1.5%/mo & collection) |

Beth Willams
Law Office of Craig Kuglar, LLC
931 Monroe Drive, NE
Suite A102-353
Atlanta, GA 30308

tpr.billing@tp.one
678.821.2129

| | |
|---|---|
| **(-) Payments/Credits:** | 0.00 |
| **(+) Finance Charges/Debits:** | 0.00 |
| **(=) New Balance:** | **$348.00** |

**Tax ID:** 35-2640986

*Please detach bottom portion and return with payment.*

Beth Willams
Law Office of Craig Kuglar, LLC
931 Monroe Drive, NE
Suite A102-353
Atlanta, GA 30308

Invoice No.   : 156347
Invoice Date  : 1/31/2023
**Total Due**    : **$348.00**

Remit To:  **Trustpoint Court Reporting, LLC**
**PO Box 532308**
**Atlanta, GA 30353-2308**

Job No.    : 124870
BU ID      : TP-Legal
Case No.   :
Case Name  : Jim Evans and Dave Franklin v. NexTech AR
                 Solutions Corp.