IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| RACHEL ROSS<br><br>    Plaintiff,<br><br>v.<br><br>JOIYA INC., DEANNA BROWN, and CHRISTOPHER BROWN,<br><br>    Defendants. | CIVIL ACTION FILE NO:<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff, RACHEL ROSS, brings this action for damages and other relief against Defendants JOIYA, INC., DEANNA BROWN, and CHRISTOPHER BROWN and allege as follows:

### NATURE OF THE ACTION

1. This is an action for unpaid minimum and overtime wages under the Fair Labor Standards Act, 29 U.S.C. § 201 *et. seq.* ("FLSA"), as well as for breach of contract and attorney's fees under Georgia law.

### PARTIES

2. Plaintiff Rachel Ross ("Ms. Ross") is a citizen of Georgia.

3. Defendant Joiya, Inc. ("Joiya") is a Delaware company licensed to conduct business in the state of Georgia.

4. Joiya's principal place of business is located at 8000 Avalon Boulevard, Suite 100, Alpharetta, Georgia 30009.

5. Joiya may be served with process by delivering a copy of the Summons and this Complaint to its registered agent, FisherBroyles, LLC, 945 East Paces Ferry Road NE, Suite 2000, Atlanta, Georgia, 30326.

6. Joiya is subject to personal jurisdiction in this Court.

7. Defendant Deanna Brown ("Ms. Brown") is a natural person and may be served with service of process wherever she may be found.

8. Ms. Brown is subject to personal jurisdiction in this Court.

9. Defendant Christopher Brown ("Mr. Brown," and collectively with Joiya and Ms. Brown, "Defendants") is a natural person and may be served with service of process wherever he may be found.

10. Mr. Brown is subject to personal jurisdiction in this Court

## JURISDICTION AND VENUE

11. The Court has original jurisdiction over Ms. Ross' FLSA claims pursuant to 28 U.S.C. § 1331 because they raise questions of federal law.

12. The Court has jurisdiction over Ms. Ross' state law claims pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction).

13. Ms. Ross' state law claims arise out of a common nucleus of operative facts as her federal claims for unpaid overtime wages under the FLSA because both her federal and state law claims arise out of Defendants' wage and hour policies and practices.

14. Under 28 U.S.C. § 1391 and Local Rule 3.1(B)(3), venue is proper because a substantial part of the events or omissions giving rise to Ms. Ross' claims occurred in Fulton County, Georgia, which is located within the Atlanta Division of the Northern District of Georgia.

**FACTUAL ALLEGATIONS SHOWING THAT JOIYA EMPLOYED PLAINTIFF**

15. Joiya is a Georgia-based company engaged in selling cannabinoid beauty, health, and wellness products.

16. Joiya sells its products in states throughout the United States.

17. Joiya has been licensed to conduct business in the state of Georgia since 2019.

18. Joiya qualifies as an "employer" within the meaning of the FLSA.

19. Joiya is a covered enterprise under the FLSA.

20. Joiya's gross sales or business done exceeds $500,000.00, annually.

21. Joiya is an enterprise engaged in commerce or the production of goods for commerce within the meaning of the FLSA.

22. Joiya employs two or more individuals who engage in commerce or regularly handle or otherwise work on goods or materials that have been moved in or produced for commerce.

23. Joiya advertises its products on the internet.

24. The oils Joiya uses in its products come from states outside of Georgia, including Colorado and Kentucky.

25. Some or all of Joiya's products are manufactured outside of the state of Georgia.

26. While performing their job duties, Joiya's employees regularly handle materials that were manufactured outside of the state of Georgia.

27. While performing their job duties, Joiya's employees regularly use phones and/or computers manufactured outside the state of Georgia.

28. Joiya employed Ms. Ross as that term is defined by the FLSA.

29. Ms. Ross worked for Joiya as Vice President of Product Innovation.

30. As part of her job duties, Ms. Ross developed many of Joiya's products, which were shipped across state lines.

31. Joiya hired Ms. Ross.

32. Joiya maintained Ms. Ross' employment records.

33. Joiya set Ms. Ross' work schedule.

34. Joiya regularly evaluated Ms. Ross' performance.

35. Joiya paid Ms. Ross' wages.

36. Joiya directed Ms. Ross' work.

37. Joiya told Ms. Ross on which products she was to work.

### FACTUAL ALLEGATIONS SHOWING THAT MS. BROWN AND MR. BROWN EMPLOYED MS. ROSS

38. Ms. Brown employed Ms. Ross as that term is defined by the FLSA.

39. Ms. Brown is the Chief Executive Officer of Joiya.

40. While Ms. Ross was employed, Ms. Brown was the President of Joiya.

41. As President, Ms. Brown was personally involved with the day-to-day operations of Joiya.

42. Ms. Brown set the pay policies relevant to Ms. Ross.

43. Ms. Brown had the authority to fire Ms. Ross.

44. Ms. Brown had the authority to reprimand Ms. Ross.

45. Ms. Brown regularly evaluated Ms. Ross' job performance.

46. Ms. Brown had to approve Ms. Ross' work.

47. Ms. Brown approved payroll for Ms. Ross.

48. Ms. Brown set Ms. Ross's work schedule.

49. Mr. Brown employed Ms. Ross as that term is defined by the FLSA.

50. Mr. Brown is the Chief Marketing Officer ("CMO") and Secretary of Joiya.

51. As the CMO, Mr. Brown was personally involved with the day-to-day operations of Joiya.

52. Mr. Brown was involved in setting the pay policies relevant to Ms. Ross.

53. Mr. Brown had the authority to fire Ms. Ross.

54. Mr. Brown had the authority to reprimand Ms. Ross.

55. Mr. Brown regularly evaluated Ms. Ross' job performance.

56. Mr. Brown directed Ms. Ross' work.

57. While employed by Defendants, Ms. Ross was an individually covered employee under the FLSA.

58. By way of example, the products Ms. Ross regularly spoke with contractors who provided services to Joiya located outside the state of Georgia.

**FACTS SUPPORTING PLAINTIFF'S CLAIM FOR UNPAID WAGES IN VIOLATION OF THE FLSA**

59. Ms. Ross began working for Joiya on or about July 8, 2019.

60. Ms. Ross worked for Defendants until October 31, 2021.

61. Ms. Ross' typical work schedule was Monday through Friday from 8:00 a.m. until 5:00 p.m., or Monday through Friday from 9:00 a.m. until 6:00 p.m.

62. However, in order to complete her work on behalf of Defendants, Ms. Ross frequently worked before and after her scheduled working hours.

63. Ms. Ross also worked certain weekends in order to complete her work for Defendants.

64. Ms. Ross regularly did not take a lunch break.

65. Ms. Ross regularly responded to work messages outside her typical schedule.

66. Ms. Ross regularly worked in excess of 40 hours per workweek on behalf of Defendants.

67. Defendants knew Ms. Ross worked in excess of 40 hours because, among other reasons, Defendants regularly scheduled Ms. Ross to work more than 40 hours per workweek.

68. Defendants directed Ms. Ross to work more than 40 hours during most, if not all, workweeks.

69. Defendants also knew Ms. Ross worked more than 40 hours in certain workweeks because Ms. Ross regularly contacted Ms. Brown, and other managers

assigned to Ms. Ross, on weekends and late into the evening regarding work on behalf of Defendants.

70. Further, Ms. Ross regularly worked with contractors located on the West Coast, resulting in her working late into the evenings on behalf of Defendants to accommodate the time difference.

71. In violation of the FLSA's recordkeeping requirement, Defendants failed to maintain accurate records of Ms. Ross' hours worked.

72. Defendants did not utilize a timekeeping system to track Ms. Ross' time.

73. Defendants' practices resulted in Ms. Ross working hours in excess of 40 hours per week, for which she was not compensated at one and one-half times her regular rate of pay.

74. Defendants never compensated Ms. Ross any overtime wages throughout her entire employment.

75. Defendants knew, or should have known, that Plaintiff worked hours in excess of 40 during certain workweeks, for which she was not properly compensated.

76. During certain workweeks, Defendants paid each Ms. Ross no wages for the work she performed on behalf of Defendants.

77. By way of example, from October 15, 2021, through October 31, 2021, Defendants paid Ms. Ross no wages despite her performing work on behalf of Defendants.

78. These, and other of Defendants' practices, resulted in Ms. Ross not earning at least $7.25 per hour for each hour worked in certain workweeks.

79. Defendants knew, or should have known, that they were not compensating Ms. Ross at least $7.25 per hour for each hour worked in certain workweeks.

80. Defendants knew Ms. Ross performed work between October 15, 2021, and October 31, 2021, because she communicated with Ms. Brown and Mr. Brown during that timeframe regarding her job duties.

81. Defendants knew, or should have known, that in the workweeks it issued Ms. Ross no wages, Ms. Ross performed work on behalf of Defendants but was not paid at least $7.25 per hour for their work.

**FACTS SUPPORTING MS. ROSS' BREACH OF CONTRACT CLAIM FOR UNPAID NON-OVERTIME WORK**

82. Joiya employed Ms. Ross to perform work as the Vice President of Product Innovation.

83. Joiya had an agreement with Ms. Ross to pay her a weekly sum of $2,550.00 for work on behalf of Joiya.

84. This agreement to compensate Ms. Ross a weekly sum of $2,550.00. constituted a contract under Georgia law.

85. Ms. Ross performed work on behalf of Joiya in accordance with their contract.

86. Despite Joiya's contractual obligations, Joiya did not compensate Ms. Ross any wages from October 15, 2021, through October 31, 2021.

87. As a result, Joiya failed to pay Ms. Ross for all hours she worked between 0 – 40 hours at the contractual rate.

88. Thus, Joiya breached its contract with Ms. Ross.

89. Joiya's breach of contract was intentional.

90. Joiya knew Ms. Ross performed work on behalf of the company yet chose not to compensate her for the work.

91. Prior to retaining counsel, Ms. Ross made written and verbal efforts to collect her earned, yet unpaid, wages.

92. In response to these attempts by Ms. Ross, Ms. Brown stated Ms. Ross would be fully compensated for all of her unpaid work.

93. As of the filing of this Complaint, Ms. Ross has not been paid her wages for October 15, 2021, through October 21, 2021.

94. Prior to initiating this action, Ms. Ross' counsel made multiple written demands to Defendants to recoup Ms. Ross' unpaid wages.

95. Despite these attempts, Joiya has refused to compensate Ms. Ross her contractually agreed-upon wages.

96. Joiya is without justification for failing to pay Ms. Ross her contractually agreed-upon wages.

### COUNT 1: FAILURE TO PAY FLSA OVERTIME WAGES

97. Plaintiff regularly worked more than 40 hours per workweek while employed by Defendants.

98. Defendants failed to compensate Plaintiff for all time worked, including those in excess of 40 hours per workweek.

99. Defendants failed to compensate Plaintiff at one and one-half times her regular rate of pay for all time worked over 40 hours during certain workweeks.

100. Defendants suffered or permitted Plaintiff to work hours in excess of 40 hours during certain workweeks.

101. Defendants knew, or should have known, that Plaintiff worked in excess of 40 hours during certain workweeks.

102. Defendants knew Plaintiff worked more than 40 hours during certain workweeks and chose not to pay Plaintiff one and one-half times her regular rate of pay for time worked over 40 hours per workweek.

103. Defendants violated the FLSA's record-keeping provision by failing to keep accurate time records of Plaintiff's work on behalf of Defendants.

104. Defendants violated the FLSA's overtime provision willfully and with reckless disregard for Plaintiff's rights.

105. Plaintiff seeks her unpaid overtime for all time over 40 hours in certain workweeks, in which Defendants failed to compensate her at 1.5 times her regular rate of pay.

106. Pursuant to U.S.C. § 216(b), Defendants are liable to Plaintiff for all unpaid overtime wages, liquidated damages, and attorneys' fees and costs of litigation.

### COUNT 2: FAILURE TO PAY FLSA MINIMUM WAGES

107. From October 15, 2021, through October 31, 2021, Plaintiff performed her regular job duties for Defendants.

108. Defendants have not paid Plaintiff any wages for her work for certain workweeks.

109. During certain workweeks, Defendants failed to compensate Plaintiff at least $7.25 per hour for all hours she worked.

110. Defendant suffered or permitted Plaintiff to work hours for which Defendants failed to compensate Plaintiff at least $7.25 per hour for all hours she worked.

111. Defendants knew, or should have known, that Plaintiff worked hours for which they were not compensated at least $7.25 in certain workweeks.

112. Defendants knew Plaintiff worked hours for which she was not compensated least $7.25 in certain workweeks, and chose not to pay Plaintiff at least $7.25 per hour for each hour worked.

113. Defendants violated the FLSA's minimum wage provision willfully and with reckless disregard for Plaintiff's rights.

114. Plaintiff seeks her unpaid minimum wages for all time Defendants failed to compensate her at least $7.25 per hour for each hour worked during certain workweeks.

115. Pursuant to U.S.C. § 216(b), Defendants are liable to Plaintiff for all unpaid minimum wage wages, liquidated damages, and attorneys' fees and costs of litigation.

## COUNT 3: BREACH OF CONTRACT
### (Defendant Joiya, Inc.)

116. Defendant Joiya had a contractual obligation to pay Plaintiff a weekly sum of $2,355.77.

117. Defendant Joiya failed to pay Plaintiff at the agreed-upon weekly sum for all straight-time hours worked.

118. Each time Defendant Joiya failed to pay Plaintiff the agreed-upon wage for all hours worked, Defendant Joiya breached its contractual agreement with Plaintiff.

119. As a result of Defendant Joiya's breach of contract, Defendant Joiya is liable to Plaintiff for all non-overtime wages due to Plaintiff for hours worked that remain unpaid at the contractually-specified rate.

120. Defendant Joiya also breached the duty of good faith and fair dealing, which is implied in every contract entered into or to be performed in the State of Georgia, by knowingly failing to pay her for all hours worked.

121. Any and all conditions precedent to Plaintiff's bringing this lawsuit have been fulfilled, satisfied, or waived.

## COUNT 4: INTENTIONAL BREACH OF CONTRACT
### (Defendant Joiya, Inc.)

122. By refusing to compensate Plaintiff for the agreed-upon rate of pay for all hours worked for knowingly false and unjustified reasons, Defendant Joiya has intentionally breached its contract with Plaintiff.

123. Further, Defendant Joiya has acted in bad faith, has been stubbornly litigious, and/or has caused Plaintiff unnecessary trouble and expense.

124. Plaintiff is entitled to her reasonable attorney's fees and expenses under O.C.G.A. § 13-6-11.

125. As a direct result of Defendant Joiya's intentional breach of its contract with Plaintiff, Plaintiff has suffered direct damages in the form of lost wages, as well as pre-judgment and post-judgment interest.

126. Pursuant to O.C.G.A. § 51-12-10, Plaintiff is also entitled to recover remote damages occasioned by Defendant Joiya's knowing and intentional breach of its contract with Plaintiff.

## DEMAND FOR JUDGMENT

Plaintiffs respectfully request that the Court:

(a) Declare that Defendants violated the FLSA's minimum wage provision;

(b) Declare that Defendants violated the FLSA's overtime provision;

(c)   Enter judgment against Defendants that they violated the FLSA's minimum wage provision and, further, that its minimum wage violations were willful;

(d)   Enter judgment against Defendants that they violated the FLSA's overtime provision and, further, that their overtime violations were willful;

(e)   Declare that Defendant Joiya breached its contract with Plaintiff, and that such breach was intentional;

(f)   Enter judgement against Defendant Joiya that it intentionally breached its contract with Plaintiff;

(g)   Declare that Defendant Joiya has acted in bad faith, has been stubbornly litigious, and/or has caused Plaintiff unnecessary trouble and expense;

(h)   Enter judgement against Defendant Joiya that it has acted in bad faith, has been stubbornly litigious, and/or has caused Plaintiff unnecessary trouble and expense;

(i)   Enter a monetary judgment against Defendants, including:

   i)   Unpaid minimum wages at the rate of $7.25 per hour;

   ii)  Overtime wages at one and one-half times Plaintiff's regular rate of pay;

      iii)    Liquidated damages in an amount equal to Plaintiff's unpaid minimum wages and unpaid overtime wages;

      iv)    Unpaid breach of contract wages against Defendant Joiya;

      v)    Remote damages suffered by Plaintiff against Defendant Joiya;

      vi)    Reasonable costs and attorney's fees;

      vii)    Pre-judgment interest;

      viii)    Post-judgement interest continuing to accrue; and,

(j)    Grant such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a jury trial.

Respectfully submitted: March 13, 2023.

                                                              */s/ William S. Cleveland*

**POOLE HUFFMAN, LLC.**                    William S. Cleveland
3562 Habersham at Northlake          Georgia Bar No. 721593
Building J, Suite 200                         billy@poolehuffman.com
Tucker, Georgia    30084
T: (404) 373-4008 | F: (888) 709-5723

*Counsel for Plaintiff*