IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **SIMON IYORE GUOBADIA**, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civil Action |
| | ) |
| **UR MENDOZA JADDOU**, | ) Case No.: _____ |
| Director of U.S. Citizenship | ) |
| and Immigration Services, | ) |
| **SHINEKA MILLER**, | ) |
| Director of the USCIS Atlanta | ) |
| Field Office, | ) |
| | ) |
| Respondents. | ) |
| _____ | ) |

## PETITION FOR REVIEW OF A NATURALIZATION DECISION

**To the Honorable Judges of this Court:**

The Petitioner, **SIMON I. GUOBADIA**, through undersigned counsel, alleges as follows:

1. This is an action brought by a lawful permanent resident of the United States who is eligible to naturalize and become a United States citizen, but whose application for naturalization has been unlawfully denied. Therefore, Petitioner, SIMON I. GUOBADIA, files this Petition for Review seeking *de*

-1-

*novo* judicial review, pursuant to section 310(c) of the Immigration and Nationality Act, 8 USC §1421(c), of the denial of her application for naturalization.

## PARTIES

2. Petitioner SIMON I. GUOBADIA is a native and citizen of Nigeria. He obtained lawful permanent resident status on December 1, 1990, and has been a lawful permanent resident since. (**Exhibit 1**, Lawful Permanent Resident Card). On or around December 31, 2020, over five years after being granted lawful permanent residence, Petitioner properly filed an application for naturalization with Respondents. (**Exhibit 2**, N-400 Receipt Notice).

3. Respondent Ur Mendoza Jaddou is the Director of U.S. Citizenship and Immigration Services ("USCIS"). USCIS is the agency responsible for implementing the provisions of the Immigration and Nationality Act, and in particular 8 USC §1421, et seq., the provisions under which permanent residents can be naturalized and become U.S. citizens. Respondent Mendoza Jaddou is responsible for the adjudication of Petitioner's application for naturalization. Respondent Mendoza Jaddou is sued in her official capacity.

4. Respondent Shineka Miller is the Field Office Director for the Atlanta Office

of USCIS. Respondent Miller is responsible for the adjudication of naturalization applications in her district. Respondent is sued in her official capacity.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of the Petition for Hearing on a Naturalization Application pursuant to INA § 310(c), 8 U.S.C. § 1447(c), which specifically provides for *de novo* judicial review of the denial of a naturalization decision. Additionally, 8 C.F.R. § 336.9 provides that such a petition for review must be filed within 120 days of USCIS' final determination.

6. This Court has jurisdiction over the subject matter of this case because Petitioner has filed this action within 120 days of the USCIS's affirmance of its denial of the naturalization application – its final decision on this matter - which occurred on November 15, 2022. (**Exhibit 3**, N-336 Decision Notice).

7. Venue is proper in the Northern District of Georgia under 28 U.S.C. §1391(e), as Respondents are officers or employees of the United States acting in their official capacities, Petitioner resides in this district, and no real property is involved in this action.

## LEGAL FRAMEWORK

### *Naturalization Generally*

8. To naturalize as a United States citizen, an applicant must be a lawfully admitted permanent resident alien, 8 U.S.C. § 1429, who has continuously resided in the United States for at least five years prior to the filing of his or her naturalization petition; has been physically present for at least half of that time; and between the filing of his or her petition and his or her admission, has resided continuously in the United States. 8 U.S.C. § 1427 (a)(1), (2).

9. An applicant must also have been "a person of good moral character, attached to the principles of the Constitution of the United States, and well-disposed to the good order and happiness of the United States" for five years before the filing of the petition and up to the time of admission to citizenship. *Id*. § 1427(a)(3). Finally, he or she must not fall into any of the categories described in 8 U.S.C. § 1424 (a).

10. Pursuant to 8 U.S.C. § 1421(c), "[a] person whose application for naturalization is denied, after a hearing before an immigration officer under section 1447(a) of this title, may seek review of such denial before the United States district court for the district in which such person resides in accordance

with chapter 7 of title 5. Such review shall be *de novo*, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing *de novo* on the application."

11. The Administrative Procedure Act, 5 U.S.C. § 706 provides that a Court "shall hold unlawful and set aside agency action, findings, and conclusions found to be –

   (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

   (B) contrary to constitutional right, power, privilege, or immunity, [or]

   (C) in excess of statutory jurisdiction, authority or limitations, or short of statutory right."

### *The Special Agricultural Worker Program*

12. Passed in 1986, INA §245A [8 USC §1255a] introduced a two-step process for "legalization," broadly, an application for temporary residency followed by an application for permanent residency. This process took various forms depending on the particular form of relief sought. Here, Petitioner gained temporary residence through Special Agricultural Worker (SAW) legalization.

13. To become a temporary resident, SAW applicants had to: (1) reside in U.S.; (2) perform "seasonal agricultural services" in U.S. for at least 90 "man days" between May 1, 1985 and May 1, 1986; (3) be otherwise admissible with certain exceptions (some of the grounds of exclusion could be waived in the discretion of INS); and (4) file a timely application for temporary residence during the 18-month period beginning June 1, 1987. INA §210 [8 USC §1160].

14. Those accepted as temporary residents in the SAW program were then automatically adjusted to lawful permanent resident status after a one or two year waiting period following a set date prescribed by INA §210(a)(2) [8 USC §1160(a)(2)]. This was a non-discretionary adjustment, defined in clear terms under the Special Agricultural Worker legislation.

15. The program was also subject to strict confidentiality restrictions. Per INA §§ 245A(c)(5) and 210(b)(6) [8 USC §§ 1255a(c)(5) and 1160(b)(6)], neither the AG, nor any official or employee of DOJ or bureau or agency thereof could use information submitted in an adjustment application under the SAW program "for any purpose other than": criminal prosecution for making false statements in the application; preparing reports to Congress; or making a

decision on the application. Information could not and still cannot be used for deportation proceedings.

## RELEVANT FACTS

16. Petitioner filed a Form I-700 application seeking Temporary Resident status through the Special Agricultural Worker program on or about October 24, 1988. (**Exhibit 4**, N-400 Denial Notice).

17. On or about July 25, 1991, the application was granted and Petitioner received temporary resident status. **Id.**

18. On April 27, 1992, Petitioner submitted a Form I-90 seeing a registration card in connection with the prior Form I-700 application. This was granted by the INS on May 5, 1992. **Id.**

19. On December 31, 2020, Petitioner submitted a Form N-400, Application for Naturalization. (**Exhibit 2**, N-400 Receipt Notice).

20. On or about June 3, 2022, the Service conducted an interview regarding the application. (**Exhibit 5**, N-400 Interview Notice). Said interview was recorded, at the advice of DHS counsel.

21. On July 22, 2022, the Service denied the N-400, reasoning that the Petitioner's 1988 application for temporary resident status contained false or fraudulent

information, and that therefore he had never been lawfully admitted to permanent resident status. (**Exhibit 4**, N-400 Denial Notice).

22. On October 24, 2022, Petitioner appealed the decision via a Form N-336. (**Exhibit 6**, N-336 Receipt Notice). Petitioner noted that any criminal activity that might impact his application took place over thirty years prior, that he had demonstrated reformation of character, and that he had been a lawful permanent resident without issue since the status was conferred to him. Petitioner also noted the extensive limitations on the use of information provided pursuant to an I-700 application.

23. On November 15, 2022, Respondents issued an N-336 denial notice reiterating the notion that he was unable to naturalize due to misrepresentations on an application thirty years prior. (**Exhibit 3**, N-336 Denial Notice).

24. The Respondents, in violation of the Administrative Procedures Act, 5 USC §701 *et seq.*, have unlawfully denied Petitioner's application for naturalization and therefore, have failed to carry out the adjudicative functions delegated to them by law regarding Petitioner's case.

## COUNT 1

*Respondents erred, abused their discretion, and acted outside the confines of the law when they denied Petitioner's naturalization on the basis of misstatements in an I-700 application submitted thirty-five years prior.*

25. Respondent's ultimate argument is that Petitioner misrepresented material facts in his Form I-700, Application for Temporary Resident Status as a Special Agricultural Worker. (**Exhibit 4**, N-400 Denial Notice). In the Service's understanding, Petitioner therefore did not gain his permanent residence lawfully.

26. At no point does Respondent argue that Petitioner is not a Lawful Permanent Resident.

27. The legacy INS took no affirmative steps to remove or rescind Petitioner's temporary resident status while that status was effective.

28. Neither the legacy INS, nor the Service, nor any other organ of the Department of Homeland Security have taken any action to rescind or remove Petitioner's lawful permanent resident status over the past thirty odd years.

29. Since becoming a lawful permanent resident, the Petitioner has never been flagged as inadmissible when re-entering the United States following international travel.

30. The sole argument presented by the Service is that, in effect, the Petitioner was ineligible for the temporary resident status its predecessor granted through the Special Agricultural Worker program on July 25, 1991, and that therefore he is ineligible for naturalization now and in the future.

31. Statements made in a petition for temporary resident status through the Special Agricultural Worker program may only thereafter be used in criminal prosecution for making false statements in the application, preparing reports to Congress, or making a decision on the application itself. See generally INA §§ 245A(c)(5) and 210(b)(6) [8 USC §§ 1255a(c)(5) and 1160(b)(6)].

32. As further evidence of the narrowness of use cases for petition contents, the BIA has found that information furnished "pursuant to an application" for legalization through the Special Agricultural Worker may not be used in a rescission proceeding. *Matter of Masri*, 22 I&N Dec. 1145 (BIA 1999) [information may only be used to determine eligibility for temporary status, to terminate temporary status, or for criminal purposes].

33. The Service contends that, in fact, it is not seeking to leverage statements made in a petition for temporary resident status, as it is currently adjudicating the Petitioner's application for naturalization, and not relitigating the initial

grant of temporary resident status. For this notion, Respondents point to 8 CFR §§ 245a.3(n)(4) and 245a.21(d), which state that information contained in granted legalization files may be used to make a decision on a naturalization application submitted by the applicant.

34. However, the Service has only identified fraud in the initial I-700 application as the ground which disqualifies the applicant from naturalization; in their contention, due to his false statements, Petitioner never "lawfully" adjusted to the lawful permanent resident status he has enjoyed without controversy for three decades.

35. Whether fraudulent or not, information given pursuant to an application under the SAW program may not be used in denying a benefits petition on the ground of inadmissibility due to fraud. Matter of ___, A90-666-357 (AAO July 1, 2008), reprinted in 85 No. 31 Interpreter Releases 2185 (Aug. 11, 2008) [USCIS is precluded from considering any fraud regarding SAW application to make an inadmissibility finding on another application and to require an I-601 waiver]. This is precisely what the Service is attempting in the present case.

36. SAW temporary residents were automatically adjusted to permanent

residency under INA § 210(a)(2) [8 USC §1160]. *Perez-Enriquez v. Gonzales*, 463 F.3d 1007 (9th Cir. 2006) (en banc). While the Attorney General was empowered to terminate temporary resident status prior to the adjustment to permanent residence, after the passage of the requisite time period, lawful permanent resident status was granted by operation of law, without further review by the legacy INS or the Attorney General.

37. This is also the stated position of the Board of Immigration Appeals. In *Matter of Jimenez-Lopez*, 20 I&N Dec. 738 (B.I.A. 1993), the Board considered the case of an individual who applied for temporary residence under SAW on June 2, 1988, with the application approved in November 10, 1989. On April 8, 1990, he was arrested and on October 1, 1990, convicted of importation of a controlled substance and possession with intent to distribute. On December 1, 1990, the INS adjusted his status to lawful permanent resident. The Board concluded that any proceedings seeking to remove Jimenez-Lopez must be conducted on the premise that he is a lawful permanent resident who was being deported, rather than that he was an applicant rendered inadmissible for permanent resident status by his convictions.

38. Even more explicitly, in *In re Herrera-Mendez*, 2004 WL 1167348 (BIA Jan.

27, 2004), the BIA held that:

> Whereas adjustment pursuant to section 245 of the Act requires that an alien be admissible to the United States at the time of his adjustment to lawful permanent residence, adjustment pursuant to section 210(a)(2) of the Act has no such requirement. Instead, pursuant to section 210(a)(1)(C) of the Act, an alien's admissibility to the United States is determined as of the time of his adjustment to that of lawful temporary resident. After the alien has been granted lawful temporary resident status under section 210(a)(1) of the Act, section 210(a)(2) mandates that his status be adjusted to that of lawful permanent resident based on a fixed schedule and without further reference to his admissibility. . . .

39. Thus framed, the Petitioner did lawfully gain his permanent residence by operation of law. The INS had been afforded ample opportunity to revoke or terminate his temporary resident status, and having declined to do so, it lawfully admitted Petitioner to permanent resident status. The Service may not raise its own lack of action as a ground to deny Petitioner citizenship.

40. Petitioner was over 18 years of age at the time of his filing for naturalization. INA § 334(b), 8 U.S.C. § 1445(b). He had continuously resided in the United States of America as a permanent legal resident for a period of five years immediately preceding the filing of the application for naturalization. INA § 101(a)(33), 8 U.S.C. § 1101(a)(33). Petitioner has demonstrated good moral character for the five years preceding the application, and has shown

successful completion of any and all requirements associated with any previous criminal convictions. INA § 316, 8 U.S.C. § 1427.

41. In light of the foregoing, Petitioner is entitled to naturalization. To the deny this case will only further burden the courts, Service, and the Petitioner, and further delay the process of his naturalization, which has been available to him for decades.

## CLAIM FOR RELIEF

WHEREFORE, the Petitioner prays that this Court:

1. Conduct a *de novo* review of Petitioner's application for naturalization, including a *de novo* hearing on Petitioner's application for naturalization, should the Court deem it necessary;

2. Vacate Respondents' decision finding that Petitioner's naturalization is not approvable due to his permanent residence being improperly;

3. Remand the case to Respondents with directions to grant Petitioner's application for naturalization;

4. Award Petitioner attorney's fees under the Equal Access to Justice Act; and,

5. Grant any other such relief as justice may require.

Respectfully submitted,

this 13th day of March, 2023

THE FOGLE LAW FIRM, LLC

/S/ H. Glenn Fogle, Jr.
by:  H. Glenn Fogle, Jr.
Georgia Bar. No. 266963
Attorney for the Petitioner

55 Allen Plaza, Suite 830
55 Ivan Allen Jr. Boulevard
Atlanta, GA 30308
Tel.:  (404) 522-1852
Email: glenn@foglelaw.com