July 27, 2022

U.S. Department of Homeland Security
U.S. Citizenship and Immigration Services
2150 Parklake Drive
Atlanta, GA 30345



U.S. Citizenship
and Immigration
Services

H. GLENN FOGLE JR
THE FOGLE LAW FIRM LLC ATLANTA
55 IVAN ALLEN JR BLVD STE 830
ATLANTA, GA 30308

IOE0910474857

RE: SIMON IYORE GUOBADIA
N-400, Application for Naturalization

A091-942-115

## DECISION

Dear SIMON GUOBADIA:

On December 31, 2020, you filed a Form N-400, Application for Naturalization, with U.S. Citizenship and Immigration Services (USCIS) under section 316 of the Immigration and Nationality Act (INA).

After a thorough review of the information provided in your application for naturalization, the documents supporting your application, and your testimony during your naturalization interview, USCIS has determined that you are not eligible for naturalization. Accordingly, USCIS must deny your application for naturalization.

Generally, to qualify for naturalization, under INA 316, an applicant must:

- Be 18 years of age or older at the time of filing Form N-400;
- Be lawfully admitted for permanent residence;
- Be a lawful permanent resident for at least 5 years at the time of filing Form N-400;
- Demonstrate good moral character for at least 5 years prior to the Form N-400 filing date, and during the period leading to administration of the Oath of Allegiance;
- Have resided continuously in the United States for at least 5 years as a lawful permanent resident before filing Form N-400;
- Have resided for at least 3 months in the State or USCIS District where residency is claimed before filing Form N-400;
- Have resided continuously in the United States from the date of filing Form N-400 up to the time of administration of the Oath of Allegiance;
- Be physically present in the United States for at least 2½ years at the time of filing Form N-400;
- Demonstrate a basic knowledge of U.S. history and government;
- Demonstrate the ability to read, write, and speak words in ordinary usage in the English language; and
- Establish an attachment to the principles of the U.S. Constitution and be disposed to the good order and happiness of the United States.



## Statement of Facts and Analysis Including Ground(s) for Denial

On July 25, 1991, you obtained temporary resident status as a Special Agricultural Worker (SAW) Adjustment pursuant to section 210 of the Immigration Nationality Act (INA) and were accorded the S26 (Special Agricultural Workers) class of admission code. Your temporary status was automatically converted to lawful permanent residence (LPR) status by operation of law. On April 27, 1992, you filed a Form I-90, Application to Replace Alien Registration Card with the former Immigration and Naturalization (INS), to receive your registration card.

USCIS received your Form N-400, Application for Naturalization on December 31, 2020, and on June 3, 2022, you appeared for an interview to determine your eligibility for naturalization. After reviewing the evidence and the testimony provided, USCIS determined you were not lawfully admitted for permanent residence. You were not in fact eligible to obtain temporary resident status through Legalization pursuant to section 210 of the INA. You were clearly inadmissible at the time of the temporary resident grant on July 25, 1991. A ground of inadmissibility was present for which you did not disclose to the former INS and no waiver was available for you. See 8 C.F.R. 210.1(a), 210.3(a) thru 210.3(d)(e).

<u>AFM 24.5</u>

Confidentiality. The former INS and USCIS may not use or disclose information in a legalization application or its accompanying evidence except to adjudicate the application itself, or for certain law enforcement functions and fraud proceedings. If the legalization application is granted, however, and the noncitizen later files an immigrant visa petition or other status petition under section 204 of the INA, the former INS or USCIS may use information in the legalization file in adjudicating the immigrant visa petition. This also applies to adjudicating a later naturalization application.

<u>8 C.F.R. §§ 245a.3(n)(4), 245a.21(d)</u> state that Legalization information from approved cases may be used during the adjudication of Form N-400 applications or visa petitions filed by the Legalization applicant.

The record of proceedings reveals:

On or about August 11, 1982, you entered the United States legally at the New York, New York port of entry and were admitted as a B-2 nonimmigrant visitor for pleasure under the identity Simon Iyore Osamudiamen Guobadia, born in Port Harcourt, Nigeria on June 2, 1964. You were authorized to remain in the United States for a period not to exceed six (6) months. After you overstayed your admission time for more than one (1) year, on May 6, 1985, the former INS received your Form I-485 Adjustment of Status Application based on your marriage to your first spouse Mary Alice Jackson, on January 7, 1985. You annotated on this application that your name is Simon Iyore Guobadia, born in Port Harcourt, Nigeria on June 2, 1964. In support of this application, a document titled Declaration of Age dated December 11, 1984, was submitted to confirm your identity in lieu of a birth certificate. This document declared your name as Simon Guobadia born in Port Harcourt, Nigeria on June 2, 1964. The person or party who made this formal declaration is listed as Olufemi Davres, whom identified himself/herself as your cousin.

On July 12, 1985, the Former INS denied the Form I-485 application. This was due to Mary Alice Jackson's voluntary withdrawal of the concurrently filed underlying immigrant petition she filed on your behalf. In a sworn statement dated July 12, 1985, Mary Alice Jackson voluntarily explained to an officer of the former INS that you never resided together and that the marriage was never consummated. This constituted marriage fraud, in that, your marriage to Mary Alice Jackson was considered a sham marriage by the former INS. As a result of your overstay status, you were found

deportable. According to the record, on July 12, 1985, you were instantly issued an Order to Show Cause, Form I-221S, under A-Number 027468019. The evidence confirms that on October 18, 1985, you were granted voluntary return and voluntarily departed the United States for Nigeria on December 28, 1985. This event was also confirmed by you during the naturalization interview on June 3, 2022. However, you failed to disclose the fact that you were previously required to depart the United States in 1985, by way of voluntary departure to USCIS on the current N-400 application.

On or about June 18, 1986, you re-entered the United States legally under the same identity at the Baltimore, Maryland port of entry, and were admitted again as a B-2 nonimmigrant visitor for pleasure and you were authorized to remain in the United States for period not to exceed six (6) months. You again overstayed your admission time. The travel document you used to facilitate this entry was Nigerian Passport Number 0764807, issued in Lagos, Nigeria on July 15, 1981.

On September 1, 1987, you were arrested in Baltimore, Maryland for federal Bank and Credit Card Fraud. On December 8, 1987, in the State and District of Maryland, you entered a guilty plea for the felony offense of Accessory after the Fact to Conspiracy to Use Unauthorized Access Devices, Docket Number K-87-0422. You were convicted for this felony under the same identity Simon Iyore Guobadia, with the date of birth, June 2, 1964. You were placed on supervised probation for a period of five (5) years and ordered to pay $3000 restitution.

On October 24, 1988, you filed a Form I-700 application under a different identity. A review of this application shows this application is signed and dated by you on October 13, 1988. USCIS found that various misrepresentations of material facts were made by you during this application process for temporary residence. For example:

- You filed the form I-700 application with a different identity. The different identity you used on this application is Iyore Guobadia born in Benin City, Nigeria on June 14, 1962.

- You claimed you were never married. The evidence shows you were still married to Mary Alice Jackson.

- You incorrectly answered "No" to question 26 that asked whether you had been arrested, convicted, or confined in a prison. Prior to filing the I-700, you had already been arrested on September 1, 1987, in Maryland and convicted in Maryland, on December 7, 1987.

- You incorrectly answered "No" to question 28 that asked whether any INA 212 provisions applied to you. Considering your lengthy criminal record, you were not eligible for temporary residence based on your one fraud and two crimes involving moral turpitude of (CIMT) convictions.

- You gave incorrect information on the I-700 application about your last entry into the United States. At the time of filing of the form I-700, the evidence confirms your last entry into the United States occurred on June 18, 1986, at the Baltimore, Maryland port of entry. However, you falsely claimed on the I-700 application that you last entered the United States on March 5, 1985, at the New York, New York port of entry.

During the pendency of the I-700 application, on January 6, 1989, you were arrested again in Arlington, Virginia for felony Unauthorized Use of a Vehicle. You were found guilty. On May 25, 1990, you were arrested again for fraud in Maryland. After serving a seventy-five (75) day sentence at a halfway house for violation of probation, as of July 19, 1990, you were released from confinement with the Bureau of Prisons and released to U.S. immigration officials. On August 9, 1990, you were again issued an Order to Show Cause and removal proceedings were initiated against you under the identity Simon Iyore Guobadia, A-Number 027468019.

On January 9, 1991, you obtained another felony conviction in Washington D.C. for Credit Card Fraud. You were sentenced to eight (8) months incarceration and three (3) years of supervised release. On April 9, 1991, you were afforded a hearing before an Immigration Judge to answer the charges of the Order to Show Cause dated August 9, 1990. As a result of your hearing, you were ordered deported from the United States to Nigeria by an Immigration Judge.

Meanwhile, on July 25, 1991, the former INS incorrectly granted you temporary residence under the different identity of Iyore Guobadia, A-Number 091942115, for which you were not entitled to receive. It is USCIS' position that a different identity was used by you at the time of filing the form I-700 and you also had a disqualifying criminal inadmissibility ground that was willfully concealed by you on the I-700 application.

On March 4, 1992, our records confirm you were deported and physically removed from the United States to Nigeria under the identity Simon Iyore Guobadia, A-Number 027468019, at the U.S. Governments expense on Air Nigeria Flight #851.

However, twenty-six (26) days later, on April 27, 1992, the former INS received your form I-90 to obtain a registration card in connection with the unlawfully approved form I-700 application that was auto-granted to you under a different identity, Iyore Guobadia, A-Number 091942115. The former INS approved the I-90 application on May 5, 1992. It is important to note that the receipt of this application on April 27, 1992, acknowledges your physical presence in the United States and confirms your unlawful re-entry into the United States after deportation and without permission from the former INS.

Moreover, on December 22, 2016, USCIS received your first Form N-400, Application for Naturalization (NBC*007299135) under the different identity of Iyore Guobadia, A-Number 091942115. On February 21, 2019, USCIS denied this application based on INA 318 grounds for unlawful adjustment. The decision notice issued in connection with this application clearly explained to you that you are not eligible for naturalization because your temporary residence status was unlawfully granted.

During your interview with USCIS on June 3, 2022, you testified that after you were deported and physically removed on March 4, 1992, from the United States, you recalled that you returned to the United States legally with permanent residency at the New York, New York port of entry at John F. Kennedy International airport sometime in 1992. This testimony is inconsistent with government records. You have provided no evidence to show how and when you re-entered the United States after you were deported on March 4, 1992, under the identity Simon Iyore Guobadia, A-Number 027468019.

To qualify for naturalization under INA 316, you must demonstrate that you meet all the requirements for naturalization including the requirement of having been lawfully admitted for permanent residence.

As discussed, you have not demonstrated that you have been lawfully admitted for permanent residence and, therefore, are ineligible for naturalization. A different identity was used by you at the time of filing the form I-700 for temporary residence status. You also had a disqualifying criminal inadmissibility ground that was willfully concealed by you on the I-700 application. As a secondary matter, after your removal on March 4, 1992, it is USCIS' position that you returned to the United States unlawfully on an unknown date and location without permission from the former INS.

Therefore, you are ineligible for naturalization. Accordingly, USCIS must deny your application for naturalization.See INA 318. See INA 101(f)(6) and 316(a)(3) and Title 8, Code of Federal Regulations (8 CFR), sections 316.10 (a) and (b)(2)(vi).

www.uscis.gov

If you believe that you can overcome the grounds for this denial, you may submit a request for a hearing on Form N-336, Request for a Hearing on a Decision in Naturalization Proceedings, within 30 calendar days of service of this decision (33 days if this decision was mailed). See attached 8 CFR 336.2 (a) and 103.8(b). Without a properly filed Form N-336, this decision will become final. See INA 336.

For questions about your application, you can use our many online tools (www.uscis.gov/tools) including our virtual assistant, Emma. If you are not able to find the information you need online, you can reach out to the USCIS Contact Center by visiting www.uscis.gov/contactcenter.

Sincerely,

*[signature]*

Shineka C. Miller
Field Office Director

cc: H. GLENN FOGLE JR

Attachment
(Applicable Law/Regulations)

To better assist you, the sections of the law referenced in your decision are provided below:

**INA 318**
Except as otherwise provided in this title, no person shall be naturalized unless he has been lawfully admitted to the United States for permanent residence in accordance with all applicable provisions of this Act. The burden of proof shall be upon such person to show that he entered the United States lawfully, and the time, place, and manner of such entry into the United States, but in presenting such proof he shall be entitled to the production of his immigrant visa, if any, or of other entry document, if any, and of any other documents and records, not considered by the Attorney General to be confidential, pertaining to such entry, in the custody of the Service. Notwithstanding the provisions of section 405(b), and except as provided in sections 328 and 329 no person shall be naturalized against whom there is outstanding a final finding of deportability pursuant to a warrant of arrest issued under the provisions of this or any other Act; and no application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding pursuant to a warrant of arrest issued under the provisions of this or any other Act: Provided, That the findings of the Attorney General in terminating removal proceedings or in canceling the removal of an alien pursuant to the provisions of this Act, shall not be deemed binding in any way upon the Attorney General with respect to the question of whether such person has established his eligibility for naturalization as required by this title.

**INA 336**
(a) If, after an examination under section 335, an application for naturalization is denied, the applicant may request a hearing before an immigration officer.

(b) If there is a failure to make a determination under section 335 before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

(c) The Attorney General shall have the right to appear before any immigration officer in any naturalization proceedings for the purpose of cross-examining the applicant and the witnesses produced in support of the application concerning any matter touching or in any way affecting the applicant's right to admission to citizenship, and shall have the right to call witnesses, including the applicant, produce evidence, and be heard in opposition to, or in favor of, the granting of any application in naturalization proceedings.

(d) The immigration officer shall, if the applicant requests it at the time of filing the request for the hearing, issue a subpoena for the witnesses named by such applicant to appear upon the day set for the hearing, but in case such witnesses cannot be produced upon the hearing other witnesses may be summoned upon notice to the Attorney General, in such manner and at such time as the Attorney General may by regulation prescribe. Such subpoenas may be enforced in the same manner as subpoenas under section 335(b) may be enforced.

(e) It shall be lawful at the time and as a part of the administration by a court of the oath of allegiance

under section 337(a), for the court, in its discretion, upon the bona fide prayer of the applicant included in an appropriate petition to the court, to make a decree changing the name of said person, and the certificate of naturalization shall be issued in accordance therewith.

**8 CFR 336.2**

(a) The applicant, or his or her authorized representative, may request a hearing on the denial of the applicant's application for naturalization by filing a request with USCIS within thirty days after the applicant receives the notice of denial.

**8 CFR 103.8**

This section states authorized means of service by the Service on parties and on attorneys and other interested persons of notices, decisions, and other papers (except warrants and subpoenas)in administrative proceedings before Service officers as provided in this chapter.

(b) Effect of service by mail. Whenever a person has the right or is required to do some act within a prescribed period after the service of a notice upon him and the notice is served by mail, 3 days shall be added to the prescribed period. Service by mail is complete upon mailing.

**8 CFR 210.1**

### § 210.1 Definition of terms used in this part

(a) *Act.* The Immigration and Nationality Act, as amended by the Immigration Reform and Control Act of 1986.

(b) *ADIT. Alien Documentation, Identification and Telecommunications card, Form I-89.* Used to collect key data concerning an alien. When processed together with an alien's photographs, fingerprints and signature, this form becomes the source document for generation of Form I-551, Permanent Resident Card.

(c) *Application period.* The 18-month period during which an application for adjustment of status to that of a temporary resident may be accepted, begins on June 1, 1987, and ends on November 30, 1988.

(d) *Complete application.* A complete application consists of an executed Form I-700, Application for Temporary Resident Status as a Special Agricultural Worker, evidence of qualifying agricultural employment and residence, a report of medical examination, and the prescribed number of photographs. An application is not complete until the required fee has been paid and recorded.

(e) *Determination process.* Determination process as used in this part means reviewing and evaluating all information provided pursuant to an application for the benefit sought and making a determination thereon. If fraud, willful misrepresentation of a material fact, a false writing or document, or any other activity prohibited by section 210(b)(7) of the Act is discovered during the determination process the Service shall refer the case to a U.S. Attorney for possible prosecution.

(f) *Family unity.* The term *family unity* as used in section 210(c)(2)(B)(i) of the Act means maintaining the family group without deviation or change. The family group shall include the spouse, unmarried minor children who are not members of some other household, and parents who reside regularly in the household of the family group.

(g) *Group 1.* Special agricultural workers who have performed qualifying agricultural employment in the United States for at least 90 man-days in the aggregate in each of the twelve-month periods ending on May 1, 1984, 1985, and 1986, and who have resided in the United States for six months in the aggregate in each of those twelve-month periods.

(h) *Group 2.* Special agricultural workers who during the twelve-month period ending on May 1, 1986 have performed at least 90 man-days in the aggregate of qualifying agricultural employment in the United States.

(i) *Legalization Office.* Legalization offices are local offices of the Immigration and Naturalization Service which accept and process applications for legalization or special agricultural worker status, under the authority of the district directors in whose districts such offices are located.

(j) *Man-day.* The term *man-day* means the performance during any day of not less than one hour of qualifying agricultural employment for wages paid. If employment records relating to an alien applicant show only piece rate units completed, then any day in which piece rate work was performed shall be counted as a man-day. Work for more than one employer in a single day shall be counted as no more than one man-day for the purposes of this part.

(k) *Nonfrivolous application.* A complete application will be determined to be nonfrivolous at the time the applicant appears for an interview at a legalization or overseas processing office if it contains:

(1) Evidence or information which shows on its face that the applicant is admissible to the United States or, if inadmissible, that the applicable grounds of excludability may be waived under the provisions of section 210(c)(2)(i) of the Act,

(2) Evidence or information which shows on its face that the applicant performed at least 90 man-days of qualifying employment in seasonal agricultural services during the twelve-month period from May 1, 1985 through May 1, 1986, and

(3) Documentation which establishes a reasonable inference of the performance of the seasonal agricultural services claimed by the applicant.

(l) *Overseas processing office.* Overseas processing offices are offices outside the United States at which applications for adjustment to temporary resident status as a special agricultural worker are received, processed, referred to the Service for adjudication or denied. The Secretary of State has designated for this purpose the United States Embassy at Mexico City, and in all other countries the immigrant visa issuing of office at which the alien, if an applicant for an immigrant visa, would make such application. Consular officers assigned to such offices are authorized to recommend approval of an application for special agricultural worker status to the Service if the alien establishes eligibility for approval and to deny such an application if the alien fails to establish eligibility for approval or is found to have committed fraud or misrepresented facts in the application process.

(m) *Preliminary application.* A preliminary application is defined as a fully completed and signed application with fee and photographs which contains specific information concerning the performance of qualifying employment in the United States, and identifies documentary evidence which the applicant intends to submit as proof of such employment. The applicant must be otherwise admissible to the United States and must establish to the satisfaction of the examining officer during an interview that his or her claim to eligibility for special agriculture worker status is credible.

(n) *Public cash assistance.* Public cash assistance means income or needs-based monetary assistance. This includes but is not limited to supplemental security income received by the alien or his immediate family members through federal, state, or local programs designed to meet subsistence levels. It does not include assistance in kind, such as food stamps, public housing, or other non-cash benefits, nor does it include work-related compensation or certain types of medical assistance (Medicare, Medicaid, emergency treatment, services to pregnant women or children under 18 years of age, or treatment in the interest of public health).

(o) *Qualified designated entity.* A qualified designated entity is any state, local, church, community, or voluntary agency, farm labor organization, association of agricultural employers or individual designated by the Service to assist aliens in the preparation of applications for Legalization and/or Special Agricultural Worker status.

(p) *Qualifying agricultural employment.* Qualifying agricultural employment means the performance of "seasonal agricultural services" described at section 210(h) of the Act as that term is defined in regulations by the Secretary of Agriculture at 7 CFR part 1d.

(q) *Regional processing facility.* Regional Processing Facilities are Service offices established in each of the four Service regions to adjudicate, under the authority of the Directors of the Regional Processing Facilities, applications for adjustment of status under sections 210 and 245a of the Act.

(r) *Service.* The Immigration and Naturalization Service (INS).

(s) *Special agricultural worker.* Any individual granted temporary resident status in the Group 1 or Group 2 classification or permanent resident status under section 210(a) of the Act

## § 210.2 Application for temporary resident status.

(a)

(1) *Application for temporary resident status.* An alien agricultural worker who believes that he or she is eligible for adjustment of status under the provisions of § 210.3 of this part may file an application for such adjustment at a qualified designated entity, at a legalization office, or at an overseas processing office outside the United States. Such application must be filed within the application period.

(2) *Application for Group 1 status.* An alien who believes that he or she qualifies for Group 1 status as defined in § 210.1(f) of this part and who desires to apply for that classification must so endorse his or her application at the time of filing. Applications not so endorsed will be regarded as applications for Group 2 status as defined in § 210.1(g) of this part.

(3) *Numerical limitations.* The numerical limitations of sections 201 and 202 of the Act do not apply to the adjustment of aliens to lawful temporary or permanent resident status under section 210 of the Act. No more than 350,000 aliens may be granted temporary resident status in the Group 1 classification. If more than 350,000 aliens are determined to be eligible for Group 1 classification, the first 350,000 applicants (in chronological order by date the application is filed at a legalization or overseas processing office) whose applications are approved for Group 1 status shall be accorded that classification. Aliens admitted to the United States under the transitional admission standard placed in effect between July 1, 1987, and November 1, 1987, and under the preliminary application standard at § 210.2(c)(4) who claim eligibility for Group 1 classification shall be registered as applicants for that classification on the date of submission to a legalization office of a complete application as defined in § 210.1(c) of this part. Other applicants who may be eligible for Group 1 classification shall be classified as Group 2 aliens. There is no limitation on the number of aliens whose resident status may be adjusted from temporary to permanent in Group 2 classification.

(b) *Filing date of application* -

(1) *General.* The date the alien submits an application to a qualified designated entity, legalization office or overseas processing office shall be considered the filing date of the application, provided that in the case of an application filed at a qualified designated entity the alien has consented to have the entity forward the application to a legalization office. Qualified designated entities are required to forward completed applications to the appropriate legalization office within 60 days after the applicant gives consent for such forwarding.

(2) [Reserved]

(c) *Filing of application* -

(1) *General.* The application must be filed on Form I-700 at a qualified designated entity, at a legalization office, at a designated port of entry, or at an overseas processing office within the eighteen-month period beginning on June 1, 1987 and ending on November 30, 1988.

(2) *Applications in the United States.*

(i) The application must be filed on Form I-700 with the required fee and, if the applicant is 14 years or older, the application must be accompanied by a completed Form FD-258 (Fingerprint Card).

(ii) All fees for applications filed in the United States, other than those within the provisions of § 210.2(c)(4), must be submitted in the exact amount in the form of a money order, cashiers' check, or bank check made payable to the Immigration and Naturalization Service. No personal checks or currency will be accepted. Fees will not be waived or refunded under any circumstances.

(iii) In the case of an application filed at a legalization office, including an application received from a qualified designated entity, the district director may, at his or her discretion, require filing either by mail or in person, or may permit filing in either manner.

(iv) Each applicant, regardless of age, must appear at the appropriate Service legalization office and must be fingerprinted for the purpose of issuance of Form I-688A. Each applicant shall be interviewed by an immigration officer, except that the interview may be waived when it is impractical because of the health of the applicant.

(3) *Filing at overseas processing offices.*

(i) The application must be filed on Form I-700 and must include a completed State Department Form OF-179 (Biographic Data for Visa Purposes).

(ii) Every applicant must appear at the appropriate overseas processing office to be interviewed by a consular officer. The overseas processing office will inform each applicant of the date and time of the interview. At the time of the interview every applicant shall submit the required fee.

(iii) All fees for applications submitted to an overseas processing office shall be submitted in United States currency, or in the currency of the country in which the overseas processing office is located. Fees will not be waived or refunded under any circumstances.

(iv) An applicant at an overseas processing office whose application is recommended for approval shall be provided with an entry document attached to the applicant's file. Upon admission to the United States, the applicant shall proceed to a legalization office for presentation or completion of Form FD-258 (Fingerprint Card), presentation of the applicant's file and issuance of the employment authorization Form I-688A.

(4) *Border processing.* The Commissioner will designate specific ports of entry located on the southern land border to accept and process applications under this part. Ports of entry so designated will process preliminary applications as defined at § 210.1(l) under the authority of the district directors in whose districts they are located. The ports of entry at Calexico, California, Otay Mesa, California, and Laredo, Texas have been designated to conduct preliminary application processing. Designated ports of entry may be closed or added at the discretion of the Commissioner.

(i) *Admission standard.* The applicant must present a fully completed and signed Form I-700, Application for Temporary Resident Status with the required fee and photographs at a designated port of entry. The application must contain specific information concerning the performance of qualifying employment in the United States and identify documentary evidence which the applicant intends to submit as proof of such employment. The applicant must establish to the satisfaction of the examining officer during an interview that his or her claim to eligibility for special agricultural worker classification is credible, and that he or she is otherwise admissible to the United States under the provisions of § 210.3(e) of this part including, if required, approval of an application for waiver of grounds of excludability.

(ii) *Procedures.* The fee for any application under this paragraph including applications for waivers of grounds of excludability, must be submitted in United States currency. Application fees shall not be collected until the examining immigration officer has determined that the applicant has presented a preliminary application and is admissible to the United States including, if required, approval of an application for waiver of grounds of excludability as provided in this paragraph. Applicants at designated ports of entry must present proof of identity in the form of a valid passport, a "cartilla" (Mexican military service registration booklet), a Form 13 ("Forma trece" - Mexican lieu passport identity document), or a certified copy of a birth certificate accompanied by additional evidence of identity bearing a photograph and/or fingerprint of the applicant. Upon a determination by an immigration officer at a designated port of entry that an applicant has presented a preliminary application, the applicant shall be admitted to the United States as an applicant for special agricultural worker status. All preliminary applicants shall be considered as prospective applicants for the Group 2 classification. However, such applicants may later submit a complete application for either the Group 1 or Group 2 classification to a legalization office. Preliminary applicants are not required to pay the application fee a second time when submitting the complete application to a legalization office.

(iii) *Conditions of admission.* Aliens who present a preliminary application shall be admitted to the United States for a period of ninety (90) days with authorization to accept employment, if they are determined by an immigration officer to be admissible to the United States. Such aliens are required, within that ninety-day period, to submit evidence of eligibility which meets the provisions of § 210.3 of this part; to complete Form FD-258 (Fingerprint Card); to obtain a report of medical examination in accordance with § 210.2(d) of this part; and to submit to a legalization office a complete application as defined at § 210.1(c) of this part. The INS may, for good cause, extend the ninety-day period and grant further authorization to accept employment in the United States if an alien demonstrates he or she was unable to perfect an application within the initial period. If an alien described in this paragraph fails to submit a complete application to a legalization office within ninety days or within such additional period as may have been authorized, his or her application may be denied for lack of prosecution, without prejudice.

(iv) Deportation is not stayed for an alien subject to deportation and removal under the INA, notwithstanding a claim to eligibility for SAW status, unless that alien has filed a nonfrivolous application.

(d) *Medical examination.* An applicant under this part must be examined at no expense to the government by a designated civil surgeon or, in the case of an applicant abroad, by a physician or clinic designated to perform medical examinations of immigrant visa applicants. The medical report setting forth the findings concerning the mental and physical condition of the applicant shall be incorporated into the record. Any applicant certified under paragraph (1), (2), (3), (4), or (5) of section 212(a) of the Act may appeal to a Board of Medical Officers of the U.S. Public Health Service as provided in section 234 of the Act and part 235 of this chapter.

(e) *Limitation on access to information and confidentiality.*

(1) Except for consular officials engaged in the processing of applications overseas and employees of a qualified designated entity where an application is filed with that entity, no person other than a sworn officer or employee of the Department of Justice or bureau or agency thereof, or contract personnel employed by the Service to work in connection with the legalization program, will be permitted to examine individual applications.

(2) Files and records prepared by qualified designated entities under this section are confidential. The Attorney General and the Service shall not have access to these files and records without the consent of the alien.

(3) All information furnished pursuant to an application for temporary resident status under this part including documentary evidence filed with the application shall be used only in the determination process, including a determination under § 210.4(d) of this part, or to enforce the provisions of section 210(b)(7) of the Act, relating to prosecutions for fraud and false statements made in connection with applications, as provided in paragraph (e)(4) of this section.

(4) If a determination is made by the Service that the noncitizen has, in connection with his or her application, engaged in fraud or willful misrepresentation or concealment of a material fact, knowingly provided a false writing or document in making his or her application, knowingly made a false statement or representation, or engaged in any other activity prohibited by section 210(b)(7) of the Act, the Service shall refer the matter to the U.S. Attorney for prosecution of the alien or any person who created or supplied a false writing or document for use in an application for adjustment of status under this part.

(f) *Decision.* The applicant shall be notified in writing of the decision and, if the application is denied, of the reason(s) therefore. An adverse decision under this part including an overseas application may be appealed to the Associate Commissioner, Examinations (Administrative Appeals Unit) on Form I-694. The appeal with the required fee shall be filed with the Regional Processing Facility in accordance with the provisions of § 103.3(a)(2) of this chapter. An applicant for Group 1 status as defined in § 210.1(f) of this part who is determined to be ineligible for that status may be classified as a temporary resident under Group 2 as defined in § 210.1(g) of this part if otherwise eligible for Group 2 status. In such a case the applicant shall be notified of the decision to accord him or her Group 2 status and to deny Group 1 status. He or she is entitled to file an appeal in accordance with the provisions of § 103.3(a)(2) of this chapter from that portion of the decision denying Group 1 status. In the case of an applicant who is represented in the application process in accordance with 8 CFR part 292, the applicant's representative shall also receive notification of decision specified in this section.

(g) *Motions.* In accordance with the provisions of § 103.5(b) of this chapter, the director of a regional processing facility or a consular officer at an overseas processing office may *sua sponte* reopen any proceeding under this part under his or her jurisdiction and reverse any adverse decision in such proceeding when appeal is taken under § 103.3(a)(2) of this part from such adverse decision; the Associate Commissioner, Examinations, and the Chief of the Administrative Appeals Unit may *sua sponte* reopen any proceeding conducted by that unit under this part and reconsider any decision rendered in such proceeding. The decision must be served on the appealing party within forty-five (45) days of receipt of any briefs and/or new evidence, or upon expiration of the time allowed for the submission of any briefs. Motions to reopen a proceeding or reconsider a decision shall not be considered under this part.

(h) *Certifications.* The regional processing facility director may, in accordance with § 103.4 of this chapter, certify a decision to the Associate Commissioner, Examinations when the case involves an unusually complex or novel question of law or fact. A consular officer assigned to an overseas

processing office is authorized to certify a decision in the same manner and upon the same basis.

### § 210.3 Eligibility.

(a) *General.* An alien who, during the twelve-month period ending on May 1, 1986, has engaged in qualifying agricultural employment in the United States for at least 90 man-days is eligible for status as an alien lawfully admitted for temporary residence if otherwise admissible under the provisions of section 210(c) of the Act and if he or she is not ineligible under the provisions of paragraph (d) of this section.

(b) *Proof of eligibility -*

(1) *Burden of proof.* An alien applying for adjustment of status under this part has the burden of proving by a preponderance of the evidence that he or she has worked the requisite number of man-days, is admissible to the United States under the provisions of section 210(c) of the Act, is otherwise eligible for adjustment of status under this section and in the case of a Group 1 applicant, has resided in the United States for the requisite periods. If the applicant cannot provide documentation which shows qualifying employment for each of the requisite man-days, or in the case of a Group 1 applicant, which meets the residence requirement, the applicant may meet his or her burden of proof by providing documentation sufficient to establish the requisite employment or residence as a matter of just and reasonable inference. The inference to be drawn from the documentation provided shall depend on the extent of the documentation, its credibility and amenability to verification as set forth in paragraphs (b)(2) and (3) of this section. If an applicant establishes that he or she has in fact performed the requisite qualifying agricultural employment by producing sufficient evidence to show the extent of that employment as a matter of just and reasonable inference, the burden then shifts to the Service to disprove the applicant's evidence by showing that the inference drawn from the evidence is not reasonable.

(2) *Evidence.* The sufficiency of all evidence produced by the applicant will be judged according to its probative value and credibility. Original documents will be given greater weight than copies. To meet his or her burden of proof, an applicant must provide evidence of eligibility apart from his or her own testimony. Analysis of evidence submitted will include consideration of the fact that work performed by minors and spouses is sometimes credited to a principal member of a family.

(3) *Verification.* Personal testimony by an applicant which is not corroborated, in whole or in part, by other credible evidence (including testimony of persons other than the applicant) will not serve to meet an applicant's burden of proof. All evidence of identity, qualifying employment, admissibility, and eligibility submitted by an applicant for adjustment of status under this part will be subject to verification by the Service. Failure by an applicant to release information protected by the Privacy Act or related laws when such information is essential to the proper adjudication of an application may result in denial of the benefit sought. The Service may solicit from agricultural producers, farm labor contractors, collective bargaining organizations and other groups or organizations which maintain records of employment, lists of workers against which evidence of qualifying employment can be checked. If such corroborating evidence is not available and the evidence provided is deemed insufficient, the application may be denied.

(4) *Securing SAW employment records.* When a SAW applicant alleges that an employer or farm labor contractor refuses to provide him or her with records relating to his or her employment and the applicant has reason to believe such records exist, the Service shall attempt to secure such records. However, prior to any attempt by the Service to secure the employment records, the following conditions must be met: a SAW application (Form I-700) must have been filed; an interview must have been conducted; the applicant's testimony must support credibly his or her claim; and, the Service must determine that the application cannot be approved in the absence of

the employer or farm labor contractor records. Provided each of these conditions has been met, and after unsuccessful attempts by the Service for voluntary compliance, the District Directors shall utilize section 235 of the Immigration and Nationality Act and issue a subpoena in accordance with 8 CFR 287.4, in such cases where the employer or farm labor contractor refuses to release the needed employment records.

(c) *Documents.* A complete application for adjustment of status must be accompanied by proof of identity, evidence of qualifying employment, evidence of residence and such evidence of admissibility or eligibility as may be requested by the examining immigration officer in accordance with requirements specified in this part. At the time of filing, certified copies of documents may be submitted in lieu of originals. However, at the time of the interview, wherever possible, the original documents must be presented except for the following: Official government records; employment or employment related records maintained by employers, unions, or collective bargaining organizations; medical records; school records maintained by a school or school board; or other records maintained by a party other than the applicant. Copies of records maintained by parties other than the applicant which are submitted in evidence must be certified as true and correct by such parties and must bear their seal or signature or the signature and title of persons authorized to act in their behalf. If at the time of the interview the return of original documents is desired by the applicant, they must be accompanied by notarized copies or copies certified true and correct by a qualified designated entity or by the alien's representative in the format prescribed in § 204.2(j)(1) or (2) of this chapter. At the discretion of the district director or consular officer, original documents, even if accompanied by certified copies, may be temporarily retained for further examination.

(1) *Proof of identity.* Evidence to establish identity is listed below in descending order of preference:

(i) Passport;

(ii) Birth certificate;

(iii) Any national identity document from a foreign country bearing a photo and/or fingerprint (e.g., "cedula", "cartilla", "carte d'identite," etc.);

(iv) Driver's license or similar document issued by a state if it contains a photo;

(v) Baptismal record or marriage certificate;

(vi) Affidavits, or

(vii) Such other documentation which may establish the identity of the applicant.

(2) *Assumed names -*

(i) *General.* In cases where an applicant claims to have met any of the eligibility criteria under an assumed name, the applicant has the burden of proving that the applicant was in fact the person who used that name.

(ii) *Proof of common identity.* The most persuasive evidence is a document issued in the assumed name which identifies the applicant by photograph, fingerprint or detailed physical description. Other evidence which will be considered are affidavit(s) by a person or persons other than the applicant, made under oath, which identify the affiant by name and address and state the affiant's relationship to the applicant and the basis of the affiant's knowledge of the applicant's use of the assumed name. Affidavits accompanied by a photograph which has been identified by the affiant as the individual known to the affiant under the assumed name in question will carry greater weight. Other documents showing the assumed name may serve to establish the common identity when substantiated by corroborating detail.

(3) *Proof of employment.* The applicant may establish qualifying employment through government employment records, or records maintained by agricultural producers, farm labor contractors, collective bargaining organizations and other groups or organizations which maintain records of employment, or such other evidence as worker identification issued by employers or collective bargaining organizations, union membership cards or other union records such as dues receipts or records of the applicant's involvement or that of his or her immediate family with organizations providing services to farm workers, or work records such as pay stubs, piece work receipts, W-2 Forms or certification of the filing of Federal income tax returns on IRS Form 6166, or state verification of the filing of state income tax returns. Affidavits may be submitted under oath, by agricultural producers, foremen, farm labor contractors, union officials, fellow employees, or other persons with specific knowledge of the applicant's employment. The affiant must be identified by name and address; the name of the applicant and the relationship of the affiant to the applicant must be stated; and the source of the information in the affidavit (e.g. personal knowledge, reliance on information provided by others, etc.) must be indicated. The affidavit must also provide information regarding the crop and the type of work performed by the applicant and the period during which such work was performed. The affiant must provide a certified copy of corroborating records or state the affiant's willingness to personally verify the information provided. The weight and probative value of any affidavit accepted will be determined on the basis of the substance of the affidavit and any documents which may be affixed thereto which may corroborate the information provided.

(4) *Proof of residence.* Evidence to establish residence in the United States during the requisite period(s) includes: Employment records as described in paragraph (c)(3) of this section; utility bills (gas, electric, phone, etc.), receipts, or letters from companies showing the dates during which the applicant received service; school records (letters, report cards, etc.) from the schools that the applicant or his or her children have attended in the United States showing the name of school, name and, if available, address of student, and periods of attendance, and hospital or medical records showing similar information; attestations by churches, unions, or other organizations to the applicant's residence by letter which: Identify applicant by name, are signed by an official (whose title is shown), show inclusive dates of membership, state the address where applicant resided during the membership period, include the seal of the organization impressed on the letter, establish how the author knows the applicant, and the origin of the information; and additional documents that could show that the applicant was in the United States at a specific time, such as: Money order receipts for money sent out of the country; passport entries; birth certificates of children born in the United States; bank books with dated transactions; letters of correspondence between the applicant and another person or organization; Social Security card; Selective Service card; automobile license receipts, title, vehicle registration, etc.; deeds, mortgages, contracts to which applicant has been a party; tax receipts; insurance policies, receipts, or letters; and any other document that will show that applicant was in the United States at a specific time. For Group 2 eligibility, evidence of performance of the required 90 man-days of seasonal agricultural services shall constitute evidence of qualifying residence.

(5) *Proof of financial responsibility.* Generally, the evidence of employment submitted under paragraph (c)(3) of this section will serve to demonstrate the alien's financial responsibility. If it appears that the applicant may be inadmissible under section 212(a)(15) of the Act, he or she may be required to submit documentation showing a history of employment without reliance on public cash assistance for all periods of residence in the United States.

(d) *Ineligible classes.* The following classes of aliens are ineligible for temporary residence under this part:

(1) An alien who at any time was a nonimmigrant exchange visitor under section 101(a)(15)(J) of the Act who is subject to the two-year foreign residence requirement unless the alien has complied

with that requirement or the requirement has been waived pursuant to the provisions of section 212(e) of the Act;

(2) An alien excludable under the provisions of section 212(a) of the Act whose grounds of excludability may not be waived, pursuant to section 210(c)(2)(B)(ii) of the Act;

(3) An alien who has been convicted of a felony, or three or more misdemeanors.

(e) *Exclusion grounds* -

(1) *Grounds of exclusion not to be applied.* Sections (14), (20), (21), (25), and (32) of section 212(a) of the Act shall not apply to applicants applying for temporary resident status.

(2) *Waiver of grounds for exclusion.* Except as provided in paragraph (e)(3) of this section, the Service may waive any other provision of section 212(a) of the Act only in the case of individual aliens for humanitarian purposes, to assure family unity, or when the granting of such a waiver is in the public interest. If an alien is excludable on grounds which may be waived as set forth in this paragraph, he or she shall be advised of the procedures for applying for a waiver of grounds of excludability on Form I-690. When an application for waiver of grounds of excludability is submitted in conjunction with an application for temporary residence under this section, it shall be accepted for processing at the legalization office, overseas processing office, or designated port of entry. If an application for waiver of grounds of excludability is submitted after the alien's preliminary interview at the legalization office, it shall be forwarded to the appropriate regional processing facility. All applications for waivers of grounds of excludability must be accompanied by the correct fee in the exact amount. All fees for applications filed in the United States other than those within the provisions of § 210.2(c)(4) must be in the form of a money order, cashiers' check, or bank check. No personal checks or currency will be accepted. Fees for waiver applications filed at the designated port of entry under the preliminary application standard must be submitted in United States currency. Fees will not be waived or refunded under any circumstances. Generally, an application for waiver of grounds of excludability under this part submitted at a legalization office or overseas processing office will be approved or denied by the director of the regional processing facility in whose jurisdiction the applicant's application for adjustment of status was filed. However, in cases involving clear statutory ineligibility or admitted fraud, such application for a waiver may be denied by the district director in whose jurisdiction the application is filed; in cases filed at overseas processing offices, such application for a waiver may be denied by a consular officer; or, in cases returned to a legalization office for re interview, such application may be approved at the discretion of the district director. Waiver applications filed at the port of entry under the preliminary application standard will be approved or denied by the district director having jurisdiction over the port of entry. The applicant shall be notified of the decision and, if the application is denied, of the reason(s) therefore. The applicant may appeal the decision within 30 days after the service of the notice pursuant to the provisions of § 103.3(a)(2) of this chapter.

(3) *Grounds of exclusion that may not be waived.* The following provisions of section 212(a) of the Act may not be waived:

(i) Paragraphs (9) and (10) (criminals);

(ii) Paragraph (15) (public charge) except as provided in paragraph (c)(4) of this section.

(iii) Paragraph (23) (narcotics) except for a single offense of simple possession of thirty grams or less of marijuana.

(iv) Paragraphs (27), (prejudicial to the public interest), (28), (communists), and (29) (subversive);

(v) Paragraph (33) (Nazi persecution).

(4) ***Special Rule for determination of public charge.*** An applicant who has a consistent employment history which shows the ability to support himself and his or her family, even though his income may be below the poverty level, is not excludable under paragraph (e)(3)(ii) of this section. The applicant's employment history need not be continuous in that it is uninterrupted. It should be continuous in the sense that the applicant shall be regularly attached to the workforce, has an income over a substantial period of the applicable time, and has demonstrated the capacity to exist on his or her income and maintain his or her family without reliance on public cash assistance. This regulation is prospective in that the Service shall determine, based on the applicant's history, whether he or she is likely to become a public charge. Past acceptance of public cash assistance within a history of consistent employment will enter into this decision. The weight given in considering applicability of the public charge provisions will depend on many factors, but the length of time an applicant has received public cash assistance will constitute a significant factor.

## SAW Adjustment

Provided a means for certain undocumented agricultural workers to gain temporary residence and later adjust to permanent resident by operation of law.

- Filed on Form I-700, Application for Status as a Temporary Resident Status as a Special Agricultural Worker.
- Group II: Applicant must have been employed in the U.S. for 90 man-days in the aggregate, in qualifying agricultural employment, during the 12-month period ending May 1, 1986. (No residence requirement).
- Not convicted of any felony or 3 or more misdemeanors.
- S2 (TR), S26 (LPR) - Seasonal Agricultural Worker (SAW) who worked at least 90 days during the year ending May 1, 1986, Group 2.
- Waiver available (Form I-690) for all other grounds except: INA 212(a)(2)(A) & (B) (criminals).





RECEIVED
AUG 0 9 REC'D
By