E-FILED IN OFFICE - IT
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA

**23-A-01070-2**
**2/7/2023 2:06 PM**
TIANA P. GARNER, CLERK

## IN THE SUPERIOR COURT OF GWINNETT COUNTY

## STATE OF GEORGIA

**ZNT, LLC**
145 Honey Lane, Fayetteville, GA 30214
1239 Robinson Road, Peachtree City, GA 30269

**PLAINTIFF**      CIVIL ACTION NUMBER: _____  23-A-01070-2

**VS**

**AmGUARD Insurance Company**
**RA: C T Corporation System**
289 S. Culver St.
Lawrenceville, GA 30046

**DEFENDANT**

---

## SUMMONS

---

**TO THE ABOVE-NAMED DEFENDANT**:

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

**Michael D. Turner**
**Attorney For the Plaintiff**
**THE HUGGINS LAW FIRM, LLC**
**110 Norcross Street**
**Roswell, GA 30075**
**770-913-6229**
mdturner@lawhuggins.com

an Answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This _____7th day of February, 2023_____ day of _____, 2023.

Tiana P. Garner,
Clerk of Superior Court

BY: _____
Deputy Clerk

## EXHIBIT "A"

E-FILED IN OFFICE - IT
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
**23-A-01070-2**
**2/7/2023 2:06 PM**
TIANA P. GARNER, CLERK

## IN THE SUPERIOR COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| **ZNT, LLC,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION FILE NO.:** |
| ) | 23-A-01070-2 |
| **AMGUARD INSURANCE COMPANY,** ) | |
| a foreign corporation, ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

### COMPLAINT

**COMES NOW** Plaintiff **ZNT, LLC**, by and through the undersigned counsel, and files this Complaint for breach of first party property insurance contract and bad faith denial of insurance coverage against Defendant, **AmGUARD Insurance Company**, and in support hereof, states as follows:

### PARTIES

1.

Plaintiff is an entity doing business in Fayette County, Georgia.

2.

Upon information and belief, Defendant is a foreign insurance company, registered to transact business in, and in fact transacts business in, the State of Georgia. Defendant is in the business of insuring risks and properties located throughout the United States, including Georgia. Defendant maintains an office at 289 S. Culver St., Lawrenceville, GA 30046, where it may be served with process through its registered agent, C T Corporation System, as identified by the state of Georgia Secretary of State registry.

## JURISDICTION AND VENUE

3.

This Court has subject matter jurisdiction over this action for breach of contract and bad faith denial of an insurance claim because the breached contract was entered into, and concerned property in, the state of Georgia and the amount in controversy exceeds $15,000.00. This Court has personal jurisdiction over Defendant because Defendant is transacting business and insuring properties in the state of Georgia and has appointed a registered agent for service of process in Georgia pursuant to O.C.G.A. § 33-4-1 and O.C.G.A. § 33-4-4.

4.

Venue is proper in this Court because Defendant has a registered agent doing business in Gwinnett County pursuant to O.C.G.A. § 33-4-1, O.C.G.A. § 33-4-4.

5.

In addition, by virtue of the express terms of the insurance policy at issue, Defendant has consented to jurisdiction and venue of this Court.

## THE POLICY

6.

Prior to March 25, 2021, and in consideration of the premiums paid to Defendant by the Plaintiff, Defendant issued a policy with Policy No. ZNBP151318 (the "Policy"). A true and accurate copy of the Policy is attached hereto as Exhibit "A."

7.

The Policy provides numerous coverages for the real and personal property located at 1239 Robinson Road, Peachtree City, GA 30269 (the "Insured Property," "Property," or the "home").

The Policy likewise insures against loss due to Wind, subject to a deductible of $1,000 per occurrence. (*See* Ex. A).

8.

The Policy is an all-perils policy providing coverage for sudden and accidental direct physical loss to the dwelling, other structures, and personal property. The Policy covers property repairs and personal property on a full replacement cost basis. (*See* Ex. A).

9.

The Policy covers various types of expenses, including reasonable and necessary costs incurred for temporary repairs to protect covered property from further imminent covered loss and additional living expenses. (*See* Ex. A).

**SUDDEN AND ACCIDENTAL DAMAGE TO THE INSURED PROPERTY**

10.

On or about March 25, 2021, the above-referenced property suffered damage from a sudden and accidental direct physical loss resulting from Wind (the "Loss"). The Policy was in effect at the time of the Loss.

11.

Plaintiff promptly and timely notified Defendant of the damage to the Property resulting from the Loss and made a claim pursuant to the Policy. As a result, Defendant assigned an adjuster ("Adjuster") to investigate Plaintiff's claim for sudden and accidental direct physical loss. The Adjuster was authorized as Defendant's representative and agent for purposes of the claim.

12.

At all times, Plaintiff made themselves and the Property available to, and fully cooperated with, the Defendant and its representative and agent to inspect and investigate the damages caused by the loss.

13.

Defendant, through its authorized representative and agent, Adjuster, performed a site inspection of the Property.

14.

Defendant's authorized representative and agent, Adjuster, incurred the duty of acting with due diligence in achieving a proper disposition of the Plaintiff's claim when Adjuster undertook the handling of the claim.

15.

Defendant, through its authorized representative and agent, Adjuster, grossly underestimated the scope of loss suffered by the Plaintiff as a result of the Wind event. Defendant failed to properly indemnify the Plaintiff and denied Plaintiff's claim in its entirety. Defendant thus claims Plaintiff is due $0.00 as indemnification under the Policy. A true and accurate copy of the Defendant's denial letter is attached hereto as Exhibit "B."

16.

As a result of Defendant's gross underestimation, Plaintiff requested multiple times that Defendant reconsider its position regarding Defendant's estimate. Defendant refused to comply with the Plaintiff's requests and continued to frivolously and baselessly deny any additional payment on Plaintiff's claim. Furthermore, the Defendant continued to ignore the opinions of the

4

Plaintiff's experts as to the extent of damage and the amount it will cost the Plaintiff to be properly indemnified for the Loss.

17.

Plaintiff made repeated requests for payment of the claim, including a written demand sent to Defendant on November 16, 2022. A true and accurate copy of the written demand is attached hereto as Exhibit "C." Despite this demand for $92,997.41 less previous payments and the applicable deductible, Defendant continued to frivolously deny Plaintiff's claim without just cause when, under one or more portions of the Policy, the obligation to settle the claim became reasonably clear.

18.

The Plaintiff's November 16, 2022, correspondence (Ex. C) to Defendant was a letter of representation from Plaintiff's counsel and a formal 60-Day demand, pursuant to the guidelines set forth in O.C.G.A. §33-4-6. After putting Defendant on notice of a potential lawsuit through the formal 60-Day demand, the Defendant continued to deny Plaintiff's claim without just cause.

19.

Defendant did not act fairly or honestly toward the Plaintiff, or with due regard to the Plaintiff's claim and interests, when Defendant, under all circumstances articulated herein, failed to indemnify the Plaintiff for their damages in direct breach of the terms and conditions of the Policy.

20.

Plaintiff has fulfilled all conditions precedent and contractual obligations under the Policy prior to this lawsuit, or the same were waived.

21.

There exists a genuine, justifiable controversy between the Plaintiff and the Defendant as to whether Defendant is responsible for further indemnification owed to the Plaintiff as a result of the Loss. Plaintiff has exhausted every reasonable means possible to resolve this dispute with the Defendant. With no other option, Plaintiff was constrained to hire legal counsel, incur additional expenses, and file this lawsuit.

22.

Plaintiff has suffered loss under the Policy in an amount to be determined at trial.

## COUNT I: BREACH OF CONTRACT

23.

Plaintiff hereby adopts, re-alleges, and incorporates their allegations set forth in Paragraphs 1-22 of this Complaint as if fully set forth herein.

24.

Plaintiff has performed all conditions precedent to the Defendant's obligation to perform under the Policy including, without limitation, the timely payment of premiums, timely notice of the claim, and post loss obligations, or the Defendant has waived any and all other conditions.

25.

Under the terms of the Policy, Defendant is required to fully indemnify the Plaintiff for the damages sustained from the Loss.

26.

Despite Plaintiff's timely written demand, Defendant failed to provide full indemnification to the Plaintiff under the terms of the Policy.

27.

Defendant failed to act in good faith and fair dealing under the terms of the Policy by refusing to properly investigate and fully indemnify the Plaintiff according to the terms of the Policy.

28.

The Plaintiff suffered damages as a direct result of Defendant's failure to indemnify the Plaintiff for their loss.

29.

All foregoing conduct constitutes a breach of contract that has resulted in damages to the Plaintiff.

30.

**WHEREFORE,** Plaintiff prays for this Court to enter an award in Plaintiff's favor of compensatory damages, attorneys' fees, pre- and post-judgment interest, and such other and further relief as the Court may deem just and proper.

## COUNT II: BAD FAITH PURSUANT TO O.C.G.A. § 33-4-6

31.

Plaintiff hereby adopts, re-alleges, and incorporates their allegations set forth in Paragraphs 1-30 of this Complaint as if fully set forth herein.

32.

By failing to achieve a proper disposition of Plaintiff's claim, Defendant acted frivolously, and without a reasonable basis or justification, in contravention of its duty of good faith and fair dealing.

7

33.

Defendant did not attempt in good faith to settle the Plaintiff's claim when it could have, and should have, done so under all attendant circumstances had it acted fairly and honestly toward the Plaintiff and with due regard for the Plaintiff's interests.

34.

Defendant's failures to adjust Plaintiff's claim in good faith include, but are not limited to:

(1) Knowingly misrepresenting to claimants, and insureds, relevant facts or policy provisions relating to coverages at issue (*see* O.C.G.A. § 33-6-34(1));

(2) Failing to acknowledge with reasonable promptness pertinent communications with respect to claims arising under its policies (*see* O.C.G.A. § 33-6-34(2));

(3) Failing to adopt and implement procedures for the prompt investigation and settlement of claims arising under its policies (*see* O.C.G.A. § 33-6-34(3));

(4) Not attempting in good faith to effectuate prompt, fair, and equitable settlement of claims submitted in which liability has become reasonable clear (*see* O.C.G.A. § 33-6-34(4));

(5) Compelling insureds or beneficiaries to institute suits to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in suits brought by them (*see* O.C.G.A. § 33-6-34(5));

(6) Refusing to pay claims without conducting a reasonable investigation (*see* O.C.G.A. § 33-6-34(6));

(7) When requested by the insured in writing, failing to affirm or deny coverage of claims within a reasonable time after having completed its investigation related to such claim or claims (*see* O.C.G.A. § 33-6-34(7)); and

(8) When requested by the insured in writing, failing in the case of payments or offers of compromise to provide promptly a reasonable and accurate explanation of the basis for such action (or, in the case of claims denials, providing said denial to the insured in writing) (*see* O.C.G.A. § 33-6-34(10)).

35.

The above and foregoing actions of Defendant constitute bad faith pursuant to O.C.G.A. § 33-4-6, as the Defendant refused to pay Plaintiff's covered loss within sixty (60) days after Plaintiff's timely written demand (Ex. C) for payment without a reasonable basis for doing so.

36.

Defendant frivolously, and without a reasonable basis, denied proper indemnification to the Plaintiff for their covered loss.

37.

Defendant's refusal to indemnify the Plaintiff was done frivolously, without a reasonable basis, and in bad faith.

38.

As a result of Defendant's above-referenced bad faith breach of the Policy issued to the Plaintiff, and pursuant to O.C.G.A. § 33-4-6(a), Defendant is liable for penalties in the amount of "not more than fifty percent (50%) of the liability of the insurer for the loss, or $5,000.00, whichever is greater, and all reasonable attorneys' fees for the prosecution of the action against the Insurer."

39.

**WHEREFORE,** Plaintiff prays for this Court to enter an award, in Plaintiff's favor, of the statutory award in an amount of fifty percent (50%) of the total compensatory damages awarded

or $5,000.00, whichever is greater, along with a statutory allowance for reasonable attorneys' fees in prosecuting this action, pursuant to O.C.G.A. § 33-4-6, for Defendant's unfair claims settlement practices and bad faith refusal to pay Plaintiff's loss claim when it could and should have done so, had it acted fairly and reasonably toward the insured.

## DEMAND FOR JURY TRIAL

40.

Plaintiff requests a trial by Jury on all counts of the Complaint.

## PRAYER FOR RELIEF

41.

**WHEREFORE**, Plaintiff requests that after due proceedings are had, all appropriate penalties be assessed against the Defendant and that the Plaintiff receive any and all damages at law to which they are justly entitled, and thus prays for judgment against the Defendant, as follows:

a. That this Court grant judgment in favor of the Plaintiff and against Defendant in an amount to be determined at trial for breach of insurance contract.

b. Compensatory damages, including all damages to the Plaintiff by the Defendant and any resulting expenses.

c. Bad faith damages in an amount of fifty percent (50%) of the total compensatory damages awarded or $5,000.00, whichever is greater, for Defendant's bad faith delay, denial, and its intentional, frivolous failure to conduct a reasonable investigation of the Plaintiff's claim without a reasonable basis;

d. Plaintiff's attorneys' fees and costs of suit in this action;

e. Plaintiff's consultant and expert fees;

10

f.  Pre- and post-judgment interest in the maximum amount allowed by law;

g.  All statutory penalties;

h.  Any and all applicable multipliers; and,

i.  Any and all other relief that the Court may deem just and proper, whether such relief sounds in law or equity.

Dated, this 7th day of February, 2023.

RESPECTFULLY SUBMITTED,

**The Huggins Law Firm, LLC**
110 Norcross Street
Roswell, GA 30075
(o) (770) 913-6229
(e) remington@lawhuggins.com
(e) mdturner@lawhuggins.com

J. Remington Huggins, Esq.
Georgia Bar No.: 348736
Michael D. Turner, Esq.
Georgia Bar No.: 216414
*Attorneys for the Plaintiff*

# EXHIBIT A

 

BUSINESSOWNER'S
BP IN 01 01 10

# BUSINESSOWNER'S COVERAGE FORM INDEX

This index is provided only as a convenience. It should not be assumed to provide a reference to every provision that can affect a question, claim or coverage. To determine the full scope of coverage and pertinent restrictions and exclusions, the policy (including endorsements) must be read in its entirety. The features may also be affected by related provisions not referenced at all in the index, or noted elsewhere in it. For instance, an **Exclusion** feature addresses a specific policy exclusion; but restrictions of coverage and exclusions also appear within the areas where coverage, covered causes of loss, etc., are described.

| Businessowners Coverage Feature | Page Number | Businessowners Coverage Feature | Page Number |
|---|---|---|---|
| Abandonment Property Loss Condition | 21 | Business Liability Coverage | 30-32 |
| Accounts Receivable Coverage Extension | 14 | Business Personal Property Coverage | 1 |
| Accounts Receivable Exclusion | 20 | Business Personal Property Limit – Seasonal Increase (Limit Of Insurance) | 20-21 |
| Acts Or Decisions Exclusion | 19 | Cancellation Condition | 46 |
| Additional Coverages | 3-12 | Certain Computer-related Losses Exclusion | 16-17 |
| Additional Exclusion – Loss Or Damage To Products Exclusion | 19 | Changes Condition | 46 |
| "Advertisement" Definition | 42 | Changes In Or Extremes Of Temperature Exclusion | 18 |
| Aggregate Limits (Liability And Medical Expenses Limits Of Insurance) | 41 | Civil Authority Additional Coverage | 7-8 |
| Aircraft, Auto Or Watercraft Exclusion | 35 | Collapse Additional Coverage | 4-5 |
| Appraisal Property Loss Condition | 21 | Collapse Exclusion | 18 |
| "Auto" Definition | 42 | "Computer" Definition | 28 |
| Bankruptcy General Condition | 41 | Concealment, Misrepresentation Or Fraud Condition | 46 |
| "Bodily Injury" Definition | 42 | Consequential Losses Exclusion | 17 |
| Building Coverage | 1 | Continuous Or Repeated Seepage Or Leakage Of Water Exclusion | 19 |
| Building Limit – Automatic Increase (Limits Of Insurance) | 20 | Contractual Liability Exclusion | 33 |
| Business Income Additional Coverage | 5-7 | Control Of Property General Condition | 25 |
| Business Income And Extra Expense Exclusions | 19-20 | "Counterfeit Money" Definition | 29 |
| Business Income From Dependent Properties Additional Coverage | 9-10 | Coverage Extension – Supplementary Payments (Business Liability Coverage) | 31-32 |

**BUSINESSOWNER'S COVERAGE FORM INDEX**

| Businessowners Coverage Feature | Page Number | Businessowners Coverage Feature | Page Number |
|---|---|---|---|
| Coverage Extensions – Section I – Property | 12-14 | Errors Or Omissions Exclusion | 19 |
| "Coverage Territory" Definition | 42 | Examination Of Your Books And Records Condition | 46 |
| Covered Causes Of Loss | 2 | Exclusions – Section I – Property | 14-20 |
| Covered Property | 1 | Exclusions – Section II – Liability | 32-40 |
| Damage To Impaired Property Or Property Not Physically Injured Exclusion | 36 | "Executive Officer" Definition | 43 |
| Damage To Property Exclusion | 36 | Expected Or Intended Injury Exclusion | 33 |
| Damage To Your Product Exclusion | 36 | Exposed Property Exclusion | 18 |
| Damage To Your Work Exclusion | 36 | Extended Business Income Coverage (Business Income Additional Coverage) | 6-7 |
| Dampness Or Dryness Of Atmosphere Exclusion | 18 | Extra Expense Additional Coverage | 7 |
| Debris Removal Additional Coverage | 3-4 | False Pretense Exclusion | 18 |
| Deductibles | 21 | Fire Department Service Charge Additional Coverage | 4 |
| Dishonesty Exclusion | 17-18 | Fire Extinguisher Systems Recharge Expense Additional Coverage | 10 |
| Duties In The Event Of Loss Or Damage Property Loss Condition | 21-22 | Forgery Or Alteration Additional Coverage | 8 |
| Duties In The Event Of Occurrence, Offense, Claim Or Suit General Condition | 41-42 | Frozen Plumbing Exclusion | 17 |
| Earth Movement Exclusion | 15 | "Fungi" Definition | 29 |
| Electrical Apparatus Exclusion | 17 | "Fungi", Wet Rot Or Dry Rot Exclusion | 17 |
| Electrical Disturbance Exclusion | 19 | Glass Expenses Additional Coverage | 10 |
| Electronic Data Additional Coverage | 10-11 | Governmental Action Exclusion | 15 |
| "Electronic Data" Definition | 29 | "Hostile Fire" Definition | 43 |
| Electronic Data Exclusion | 38 | "Impaired Property" Definition | 43 |
| "Employee" Definition | 42 | Increased Cost Of Construction Additional Coverage | 8-9 |
| Employee Dishonesty Optional Coverage | 26-27 | Inspections And Surveys Condition | 47 |
| Employer's Liability Exclusion | 33 | Insurance Under Two Or More Coverages Condition | 47 |
| Equipment Breakdown Protection Optional Coverage | 28-29 | "Insured Contract" Definition | 43 |

BIZGUARD PLUS

| Businessowners Coverage Feature | Page Number | Businessowners Coverage Feature | Page Number |
|---|---|---|---|
| Installation, Testing, Repair Exclusion | 19 | Money Orders And "Counterfeit Money" Additional Coverage | 8 |
| Interruption Of Computer Operations Additional Coverage | 11 | Mortgageholders Property General Condition | 25 |
| "Leased Worker" Definition | 43 | Neglect Exclusion | 18 |
| Legal Action Against Us General Condition Section II – Liability | 42 | Negligent Work Exclusion | 19 |
| Legal Action Against Us Property Loss Condition – Section I – Property | 22 | Nesting Or Infestation Exclusion | 18 |
| Liability And Medical Expenses Definitions | 42-45 | Newly Acquired Or Constructed Property Coverage Extension | 13 |
| Liability And Medical Expenses General Conditions | 41-42 | No Benefit To Bailee Property General Condition | 25 |
| Liability And Medical Expenses Limits Of Insurance | 41 | Nuclear Energy Liability Exclusion | 38-40 |
| Liberalization Condition | 47 | Nuclear Hazard Exclusion | 15 |
| Limitations | 2-3 | "Occurrence" Definition | 44 |
| Limited Coverage For "Fungi", Wet Rot Or Dry Rot Additional Coverage | 11-12 | "Operations" Definition | 29 |
| Limits Of Insurance – Section I – Property | 20 | Optional Coverages | 25-29 |
| Liquor Liability Exclusion | 33 | Ordinance Or Law Exclusion | 15 |
| "Loading Or Unloading" Definition | 43 | Other Insurance Condition | 47 |
| Loss Payment Property Loss Condition | 22-24 | Other Types Of Loss Exclusion | 18 |
| "Manager" Definition | 29 | Outdoor Property Coverage Extension | 13 |
| Marring Or Scratching Exclusion | 18 | Outdoor Signs Optional Coverage | 25-26 |
| Mechanical Breakdown Exclusion | 18 | "Period Of Restoration" Definition | 29 |
| Medical Expenses Coverage | 32-33 | "Personal And Advertising Injury" Definition | 44 |
| Medical Expenses Exclusions | 38-40 | Personal And Advertising Injury Exclusion | 37 |
| "Member" Definition | 29 | Personal Effects Coverage Extension | 13 |
| "Mobile Equipment" Definition | 43-44 | Personal Property Off-premises Coverage Extension | 13 |
| Mobile Equipment Exclusion | 35 | Policy Period, Coverage Territory Property General Condition | 25 |
| Money And Securities Optional Coverage | 26 | Pollutant Clean-up And Removal Additional Coverage | 7 |
| "Money" Definition | 29 | "Pollutants" Definition – Section I – Property | 29 |

**BUSINESSOWNER'S COVERAGE FORM INDEX**

| Businessowners Coverage Feature | Page Number | Businessowners Coverage Feature | Page Number |
|---|---|---|---|
| "Pollutants" Definition – Section II – Liability | 44 | "Specified Causes Of Loss" Definition | 30 |
| Pollution Exclusion – Section I – Property | 18 | Steam Apparatus Exclusion | 17 |
| Pollution Exclusion – Section II – Liability | 33-35 | "Stock" Definition | 30 |
| Premium Audit Condition | 47-48 | "Suit" Definition | 45 |
| Premiums Condition | 47 | "Temporary Worker" Definition | 45 |
| Preservation Of Property Additional Coverage | 4 | Transfer Of Rights Of Recovery Against Others To Us Condition | 48 |
| "Products-completed Operations Hazard" Definition | 44-45 | Transfer Of Your Rights And Duties Under This Policy Condition | 48 |
| Professional Services Exclusion | 35-36 | Utility Services Exclusion | 15-16 |
| "Property Damage" Definition | 45 | Vacancy Property Loss Condition | 24-25 |
| Property Definitions | 29-30 | Valuable Papers And Records Coverage Extension | 14 |
| Property General Conditions | 25 | "Valuable Papers And Records" Definition | 30 |
| Property Loss Conditions | 21-25 | Violation Of Customer Protection Statutes Exclusion | 38 |
| Property Not Covered | 2 | Virus Or Bacteria Exclusion | 17 |
| Recall Of Products, Work Or Impaired Property Exclusion | 37 | "Volunteer Worker" Definition | 45 |
| Recovered Property Loss Condition | 24 | War And Military Action Exclusion | 16 |
| Resumption Of Operations Property Loss Condition | 24 | War Exclusion | 35 |
| Rust Or Other Corrosion Exclusion | 18 | Water Damage, Other Liquids, Powder Or Molten Material Damage Additional Coverage | 5 |
| Section I – Property | 1-30 | Water Exclusion | 16 |
| Section II – Liability | 30-45 | Wear And Tear Exclusion | 18 |
| Section III – Common Policy Conditions | 46-48 | Weather Conditions Exclusion | 19 |
| "Securities" Definition | 29 | Who Is An Insured | 40-41 |
| Separation Of Insureds General Condition | 42 | Workers' Compensation And Similar Laws Exclusion | 33 |
| Settling, Cracking, Shrinking Or Expansion Exclusion | 18 | "Your Product" Definition | 45 |
| Smog Exclusion | 18 | "Your Work" Definition | 45 |
| Smoke, Vapor, Gas Exclusion | 17 | | |





BUSINESSOWNER'S
BP 00 03 01 10

# BUSINESSOWNER'S COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Form the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

In Section **II** – Liability, the word "insured" means any person or organization qualifying as such under Paragraph **C.** Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Paragraph **H.** Property Definitions in Section **I** – Property and Paragraph **F.** Liability And Medical Expenses Definitions in Section **II** – Liability.

## SECTION I – PROPERTY

### A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

**1. Covered Property**

Covered Property includes Buildings as described under Paragraph **a.** below, Business Personal Property as described under Paragraph **b.** below, or both, depending on whether a Limit of Insurance is shown in the Declarations for that type of property. Regardless of whether coverage is shown in the Declarations for Buildings, Business Personal Property, or both, there is no coverage for property described under Paragraph **2.** Property Not Covered.

**a.** Buildings, meaning the buildings and structures at the premises described in the Declarations, including:

(1) Completed additions;

(2) Fixtures, including outdoor fixtures;

(3) Permanently installed:

(a) Machinery; and

(b) Equipment;

(4) Your personal property in apartments, rooms or common areas furnished by you as landlord;

(5) Personal property owned by you that is used to maintain or service the buildings or structures or the premises, including:

(a) Fire extinguishing equipment;

(b) Outdoor furniture;

(c) Floor coverings; and

(d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

(6) If not covered by other insurance:

(a) Additions under construction, alterations and repairs to the buildings or structures;

(b) Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the buildings or structures.

**b.** Business Personal Property located in or on the buildings at the described premises or in the open (or in a vehicle) within 100 feet of the described premises, including:

(1) Property you own that is used in your business;

(2) Property of others that is in your care, custody or control, except as otherwise provided in Loss Payment Property Loss Condition Paragraph **E.5.d.(3)(b)**;

(3) Tenant's improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

(a) Made a part of the building or structure you occupy but do not own; and

(b) You acquired or made at your expense but cannot legally remove;

(4) Leased personal property which you have a contractual responsibility to insure, unless otherwise provided for under Paragraph **1.b.(2)**; and

(5) Exterior building glass, if you are a tenant and no Limit of Insurance is shown in the Declarations for Building property. The glass must be owned by you or in

**BUSINESSOWNER'S COVERAGE FORM**

your care, custody or control.

**2. Property Not Covered**

Covered Property does not include:

a. Aircraft, automobiles, motortrucks and other vehicles subject to motor vehicle registration;

b. "Money" or "securities" except as provided in the:

(1) Money And Securities Optional Coverage; or

(2) Employee Dishonesty Optional Coverage;

c. Contraband, or property in the course of illegal transportation or trade;

d. Land (including land on which the property is located), water, growing crops or lawns;

e. Outdoor fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, signs (other than signs attached to buildings), trees, shrubs or plants, all except as provided in the:

(1) Outdoor Property Coverage Extension; or

(2) Outdoor Signs Optional Coverage;

f. Watercraft (including motors, equipment and accessories) while afloat;

g. Accounts, bills, food stamps, other evidences of debt, accounts receivable or "valuable papers and records"; except as otherwise provided in this policy;

h. "Computer(s)" which are permanently installed or designed to be permanently installed in any aircraft, watercraft, motortruck or other vehicle subject to motor vehicle registration. This paragraph does not apply to "computer(s)" while held as "stock";

i. "Electronic data", except as provided under Additional Coverages – Electronic Data. This Paragraph i. does not apply to your "stock" of prepackaged software.

j. Animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings.

**3. Covered Causes Of Loss**

Risks of direct physical loss unless the loss is:

a. Excluded in Paragraph **B.** Exclusions in Section **I;** or

b. Limited in Paragraph **4.** Limitations in Section **I.**

**4. Limitations**

a. We will not pay for loss of or damage to:

(1) Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

(2) Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

(3) Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property. This limitation does not apply to the Optional Coverage for Money and Securities.

(4) Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

(5) The interior of any building or structure caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

(a) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

(b) The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

b. We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

(1) Animals, and then only if they are killed or their destruction is made necessary.

(2) Fragile articles such as glassware, statuary, marble, chinaware and porcelain, if broken. This restriction does not apply to:

(a) Glass that is part of the exterior or interior of a building or structure;

---

      (b) Containers of property held for sale; or

      (c) Photographic or scientific instrument lenses.

  c. For loss or damage by theft, the following types of property are covered only up to the limits shown:

    (1) $2,500 for furs, fur garments and garments trimmed with fur.

    (2) $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semiprecious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

    (3) $2,500 for patterns, dies, molds and forms.

**5. Additional Coverages**

  **a. Debris Removal**

    (1) Subject to Paragraphs **(3)** and **(4)**, we will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

    (2) Debris Removal does not apply to costs to:

      (a) Extract "pollutants" from land or water; or

      (b) Remove, restore or replace polluted land or water.

    (3) Subject to the exceptions in Paragraph **(4)**, the following provisions apply:

      (a) The most that we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

      (b) Subject to Paragraph **(a)** above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

    (4) We will pay up to an additional $10,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

      (a) The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

      (b) The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

    Therefore, if Paragraphs **(4)(a)** and/or **(4)(b)** apply, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $10,000.

    (5) **Examples**

    **Example #1**

| | |
|---|---|
| Limit of Insurance | $ 90,000 |
| Amount of Deductible | $ 500 |
| Amount of Loss | $ 50,000 |
| Amount of Loss Payable | $ 49,500 |
| | ($50,000 – $500) |
| Debris Removal Expense | $ 10,000 |
| Debris Removal Expense Payable | $ 10,000 |

($10,000 is 20% of $50,000)

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3)**.

**Example #2**

| | |
|---|---|
| Limit of Insurance | $ 90,000 |
| Amount of Deductible | $ 500 |
| Amount of Loss | $ 80,000 |
| Amount of Loss Payable | $ 79,500 |
| | ($80,000 – $500) |
| Debris Removal Expense | $ 30,000 |

**BUSINESSOWNER'S COVERAGE FORM**

Debris Removal Expense
Payable

| | |
|---|---|
| Basic Amount | $ 10,500 |
| Additional Amount | $ 10,000 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000; capped at $10,500). The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4)**, because the debris removal expense ($30,000) exceeds 25% of the loss payable plus the deductible ($30,000 is 37.5% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $30,000 = $109,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $10,000, the maximum payable under Paragraph **(4)**. Thus the total payable for debris removal expense in this example is $20,500; $9,500 of the debris removal expense is not covered.

**b. Preservation Of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss of or damage to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the loss or damage occurs within 30 days after the property is first moved.

**c. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $2,500, unless a different limit is shown in the Declarations, for your liability for fire department service charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

**d. Collapse**

The coverage provided under this Additional Coverage – Collapse applies only to an abrupt collapse as described and limited in Paragraphs **d.(1)** through **d.(7)**.

**(1)** For the purpose of this Additional Coverage – Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

**(2)** We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this policy or that contains Covered Property insured under this policy, if such collapse is caused by one or more of the following:

**(a)** Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

**(b)** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

**(c)** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation.

**(d)** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

**(i)** A cause of loss listed in Paragraph **(2)(a)** or **(2)(b)**;

**(ii)** One or more of the "specified causes of loss";

**(iii)** Breakage of building glass;

**(iv)** Weight of people or personal property; or

**(v)** Weight of rain that collects on a roof.

**(3)** This Additional Coverage – Collapse does **not** apply to:

**(a)** A building or any part of a building that is in danger of falling down or caving in;

**(b)** A part of a building that is standing, even if it has separated from another part of the building; or

**(c)** A building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**(4)** With respect to the following property:

**(a)** Awnings;

**(b)** Gutters and downspouts;

**(c)** Yard fixtures;

**(d)** Outdoor swimming pools;

**(e)** Piers, wharves and docks;

**(f)** Beach or diving platforms or appurtenances;

**(g)** Retaining walls; and

**(h)** Walks, roadways and other paved surfaces;

if an abrupt collapse is caused by a cause of loss listed in Paragraphs **(2)(a)** through **(2)(d)**, we will pay for loss or damage to that property only if such loss or damage is a direct result of the abrupt collapse of a building insured under this policy and the property is Covered Property under this policy.

**(5)** If personal property abruptly falls down or caves in and such collapse is **not** the result of abrupt collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

**(a)** The collapse of personal property was caused by a cause of loss listed in Paragraphs **(2)(a)** through **(2)(d)** of this Additional Coverage;

**(b)** The personal property which collapses is inside a building; and

**(c)** The property which collapses is not of a kind listed in Paragraph **(4)**, regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph **(5)** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

**(6)** This Additional Coverage – Collapse does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**(7)** This Additional Coverage – Collapse will not increase the Limits of Insurance provided in this policy.

**(8)** The term Covered Cause of Loss includes the Additional Coverage – Collapse as described and limited in Paragraphs **d.(1)** through **d.(7)**.

**e. Water Damage, Other Liquids, Powder Or Molten Material Damage**

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

We will not pay the cost to repair any defect that caused the loss or damage; but we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

**(1)** Results in discharge of any substance from an automatic fire protection system; or

**(2)** Is directly caused by freezing.

**f. Business Income**

**(1) Business Income**

**(a)** We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of the site at which the described premises are located.

**BUSINESSOWNER'S COVERAGE FORM**

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:

(i) The portion of the building which you rent, lease or occupy; and

(ii) Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises.

(b) We will only pay for loss of Business Income that you sustain during the "period of restoration" and that occurs within 12 consecutive months after the date of direct physical loss or damage. We will only pay for ordinary payroll expenses for 60 days following the date of direct physical loss or damage, unless a greater number of days is shown in the Declarations.

(c) Business Income means the:

(i) Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses; and

(ii) Continuing normal operating expenses incurred, including payroll.

(d) Ordinary payroll expenses:

(i) Means payroll expenses for all your employees except:

i. Officers;

ii. Executives;

iii. Department Managers;

iv. Employees under contract; and

v. Additional Exemptions shown in the Declarations as:
  ● Job Classifications; or
  ● Employees.

(ii) Include:

i. Payroll;

ii. Employee benefits, if directly related to payroll;

iii. FICA payments you pay;

iv. Union dues you pay; and

v. Workers' compensation premiums.

(2) **Extended Business Income**

(a) If the necessary suspension of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

(i) Begins on the date property except finished stock is actually repaired, rebuilt or replaced and "operations" are resumed; and

(ii) Ends on the earlier of:

i. The date you could restore your "operations", with reasonable speed, to the level which would generate the Business Income amount that would have existed if no direct physical loss or damage had occurred; or

ii. 30 consecutive days after the date determined in Paragraph (a)(i) above, unless a greater number of consecutive days is shown in the Declarations.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

(b) Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

(3) With respect to the coverage provided in this Additional Coverage, suspension means:

(a) The partial slowdown or complete cessation of your business activities; or

(b) That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

(4) This Additional Coverage is not subject to the Limits of Insurance of Section I – Property.

g. **Extra Expense**

(1) We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of the site at which the described premises are located.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:

(a) The portion of the building which you rent, lease or occupy; and

(b) Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises.

(2) Extra Expense means expense incurred:

(a) To avoid or minimize the suspension of business and to continue "operations":

(i) At the described premises; or

(ii) At replacement premises or at temporary locations, including relocation expenses, and costs to equip and operate the replacement or temporary locations.

(b) To minimize the suspension of business if you cannot continue "operations".

(c) To:

(i) Repair or replace any property; or

(ii) Research, replace or restore the lost information on damaged "valuable papers and records";

to the extent it reduces the amount of loss that otherwise would have been payable under this Additional Coverage or Additional Coverage **f.** Business Income.

(3) With respect to the coverage provided in this Additional Coverage, suspension means:

(a) The partial slowdown or complete cessation of your business activities; or

(b) That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

(4) We will only pay for Extra Expense that occurs within 12 consecutive months after the date of direct physical loss or damage. This Additional Coverage is not subject to the Limits of Insurance of Section I – Property.

h. **Pollutant Clean-up And Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay for each location under this Additional Coverage is $10,000 for the sum of all such expenses arising out of Covered Causes of Loss occurring during each separate 12-month period of this policy.

i. **Civil Authority**

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

**BUSINESSOWNER'S COVERAGE FORM**

(1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

(2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

Civil Authority coverage for necessary Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

(1) Four consecutive weeks after the date of that action; or

(2) When your Civil Authority coverage for Business Income ends;

whichever is later.

The definitions of Business Income and Extra Expense contained in the Business Income and Extra Expense Additional Coverages also apply to this Civil Authority Additional Coverage. The Civil Authority Additional Coverage is not subject to the Limits of Insurance of Section I – Property.

**j. Money Orders And "Counterfeit Money"**

We will pay for loss resulting directly from your having accepted in good faith, in exchange for merchandise, "money" or services:

(1) Money orders issued by any post office, express company or bank that are not paid upon presentation; or

(2) "Counterfeit money" that is acquired during the regular course of business.

The most we will pay for any loss under this Additional Coverage is $1,000.

**k. Forgery Or Alteration**

(1) We will pay for loss resulting directly from forgery or alteration of, any check, draft, promissory note, bill of exchange or similar written promise of payment in "money", that you or your agent has issued, or that was issued by someone who impersonates you or your agent.

(2) If you are sued for refusing to pay the check, draft, promissory note, bill of exchange or similar written promise of payment in "money", on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur in that defense.

(3) For the purpose of this coverage, check includes a substitute check as defined in the Check Clearing for the 21st Century Act, and will be treated the same as the original it replaced.

(4) The most we will pay for any loss, including legal expenses, under this Additional Coverage is $2,500, unless a higher Limit of Insurance is shown in the Declarations.

**l. Increased Cost Of Construction**

(1) This Additional Coverage applies only to buildings insured on a replacement cost basis.

(2) In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with enforcement of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in Paragraphs **(3)** through **(9)** of this Additional Coverage.

(3) The ordinance or law referred to in Paragraph **(2)** of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises, and is in force at the time of loss.

(4) Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

(a) You were required to comply with before the loss, even when the building was undamaged; and

**(b)** You failed to comply with.

**(5)** Under this Additional Coverage, we will not pay for:

**(a)** The enforcement of any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungi", wet rot or dry rot; or

**(b)** Any costs associated with the enforcement of an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants", "fungi", wet rot or dry rot.

**(6)** The most we will pay under this Additional Coverage, for each described building insured under Section I – Property, is $10,000. If a damaged building(s) is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for each damaged building, is $10,000.

The amount payable under this Additional Coverage is additional insurance.

**(7)** With respect to this Additional Coverage:

**(a)** We will not pay for the Increased Cost of Construction:

**(i)** Until the property is actually repaired or replaced, at the same or another premises; and

**(ii)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

**(b)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction is the increased cost of construction at the same premises.

**(c)** If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction is the increased cost of construction at the new premises.

**(8)** This Additional Coverage is not subject to the terms of the Ordinance Or Law Exclusion, to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

**(9)** The costs addressed in the Loss Payment Property Loss Condition in Section I – Property do not include the increased cost attributable to enforcement of an ordinance or law. The amount payable under this Additional Coverage, as stated in Paragraph **(6)** of this Additional Coverage, is not subject to such limitation.

**m. Business Income From Dependent Properties**

**(1)** We will pay for the actual loss of Business Income you sustain due to physical loss or damage at the premises of a dependent property caused by or resulting from any Covered Cause of Loss.

However, this Additional Coverage does not apply when the only loss to dependent property is loss or damage to "electronic data", including destruction or corruption of "electronic data". If the dependent property sustains loss or damage to "electronic data" and other property, coverage under this Additional Coverage will not continue once the other property is repaired, rebuilt or replaced.

The most we will pay under this Additional Coverage is $5,000 unless a higher Limit of Insurance is indicated in the Declarations.

**(2)** We will reduce the amount of your Business Income loss, other than Extra Expense, to the extent you can resume "operations", in whole or in part, by using any other available:

**(a)** Source of materials; or

**(b)** Outlet for your products.

**(3)** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

**BUSINESSOWNER'S COVERAGE FORM**

**(4)** Dependent property means property owned by others whom you depend on to:

    **(a)** Deliver materials or services to you, or to others for your account. But services does not mean water, communication or power supply services;

    **(b)** Accept your products or services;

    **(c)** Manufacture your products for delivery to your customers under contract for sale; or

    **(d)** Attract customers to your business.

    The dependent property must be located in the coverage territory of this policy.

**(5)** The coverage period for Business Income under this Additional Coverage:

    **(a)** Begins 72 hours after the time of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the premises of the dependent property; and

    **(b)** Ends on the date when the property at the premises of the dependent property should be repaired, rebuilt or replaced with reasonable speed and similar quality.

**(6)** The Business Income coverage period, as stated in Paragraph **(5)**, does not include any increased period required due to the enforcement of any ordinance or law that:

    **(a)** Regulates the construction, use or repair, or requires the tearing down of any property; or

    **(b)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

    The expiration date of this policy will not reduce the Business Income coverage period.

**(7)** The definition of Business Income contained in the Business Income Additional Coverage also applies to this Business Income From Dependent Properties Additional Coverage.

**n. Glass Expenses**

**(1)** We will pay for expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

**(2)** We will pay for expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

**o. Fire Extinguisher Systems Recharge Expense**

**(1)** We will pay:

    **(a)** The cost of recharging or replacing, whichever is less, your fire extinguishers and fire extinguishing systems (including hydrostatic testing if needed) if they are discharged on or within 100 feet of the described premises; and

    **(b)** For loss or damage to Covered Property if such loss or damage is the result of an accidental discharge of chemicals from a fire extinguisher or a fire extinguishing system.

**(2)** No coverage will apply if the fire extinguishing system is discharged during installation or testing.

**(3)** The most we will pay under this Additional Coverage is $5,000 in any one occurrence.

**p. Electronic Data**

**(1)** Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore "electronic data" which has been destroyed or corrupted by a Covered Cause of Loss. To the extent that "electronic data" is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the "electronic data" was stored, with blank media of substantially identical type.

**(2)** The Covered Causes of Loss applicable to Business Personal Property include a computer virus, harmful code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including "electronic data") by any employee, including a temporary or leased employee, or by an entity retained by you, or for you, to inspect, design, install, modify, maintain, repair or replace that system.

**(3)** The most we will pay under this Additional Coverage – Electronic Data for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved, is $10,000, unless a higher Limit of Insurance is shown in the Declarations. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in, but not after, that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

**q. Interruption Of Computer Operations**

**(1)** Subject to all provisions of this Additional Coverage, you may extend the insurance that applies to Business Income and Extra Expense to apply to a suspension of "operations" caused by an interruption in computer operations due to destruction or corruption of "electronic data" due to a Covered Cause of Loss.

**(2)** With respect to the coverage provided under this Additional Coverage, the Covered Causes of Loss are subject to the following:

  **(a)** Coverage under this Additional Coverage – Interruption Of Computer Operations is limited to the "specified causes of loss" and Collapse.

  **(b)** If the Businessowners Coverage Form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage.

  **(c)** The Covered Causes of Loss include a computer virus, harmful code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for an interruption related to manipulation of a computer system (including "electronic data") by any employee, including a temporary or leased employee, or by an entity retained by you, or for you, to inspect, design, install, modify, maintain, repair or replace that system.

**(3)** The most we will pay under this Additional Coverage – Interruption Of Computer Operations for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of premises, locations or computer systems involved, is $10,000 unless a higher Limit of Insurance is shown in the Declarations. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy year in which the interruption began.

**(4)** This Additional Coverage – Interruption Of Computer Operations does not apply to loss sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in **(3)** above has not been exhausted.

**(5)** Coverage for Business Income does not apply when a suspension of "operations" is caused by destruction or corruption of "electronic data", or any loss or damage to "electronic data", except as provided under Paragraphs **(1)** through **(4)** of this Additional Coverage.

**(6)** Coverage for Extra Expense does not apply when action is taken to avoid or minimize a suspension of "operations" caused by destruction or corruption of "electronic data", or any loss or damage to "electronic data", except as provided under Paragraphs **(1)** through **(4)** of this Additional Coverage.

**r. Limited Coverage For "Fungi", Wet Rot Or Dry Rot**

**(1)** The coverage described in Paragraphs **r.(2)** and **r.(6)** only applies when the "fungi", wet rot or dry rot are the result of a "specified cause of loss" other than

**BUSINESSOWNER'S COVERAGE FORM**

fire or lightning that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

(2) We will pay for loss or damage by "fungi", wet rot or dry rot. As used in this Limited Coverage, the term loss or damage means:

   (a) Direct physical loss or damage to Covered Property caused by "fungi", wet rot or dry rot, including the cost of removal of the "fungi", wet rot or dry rot;

   (b) The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungi", wet rot or dry rot; and

   (c) The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungi", wet rot or dry rot are present.

(3) The coverage described under this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungi", wet rot or dry rot, we will not pay more than the total of $15,000 even if the "fungi", wet rot or dry rot continues to be present or active, or recurs, in a later policy period.

(4) The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungi", wet rot or dry rot, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

If there is covered loss or damage to Covered Property, not caused by "fungi", wet rot or dry rot, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungi", wet rot or dry rot causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

(5) The terms of this Limited Coverage do not increase or reduce the coverage provided under the Water Damage, Other Liquids, Powder Or Molten Material Damage or Collapse Additional Coverages.

(6) The following applies only if Business Income and/or Extra Expense Coverage applies to the described premises and only if the suspension of "operations" satisfies all the terms and conditions of the applicable Business Income and/or Extra Expense Additional Coverage.

   (a) If the loss which resulted in "fungi", wet rot or dry rot does not in itself necessitate a suspension of "operations", but such suspension is necessary due to loss or damage to property caused by "fungi", wet rot or dry rot, then our payment under the Business Income and/or Extra Expense is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

   (b) If a covered suspension of "operations" was caused by loss or damage other than "fungi", wet rot or dry rot, but remediation of "fungi", wet rot or dry rot prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

**6. Coverage Extensions**

In addition to the Limits of Insurance of Section I – Property, you may extend the insurance provided by this policy as provided below.

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

**a. Newly Acquired Or Constructed Property**

**(1) Buildings**

If this policy covers Buildings, you may extend that insurance to apply to:

**(a)** Your new buildings while being built on the described premises; and

**(b)** Buildings you acquire at premises other than the one described, intended for:

**(i)** Similar use as the building described in the Declarations; or

**(ii)** Use as a warehouse.

The most we will pay for loss or damage under this Extension is $250,000 at each building.

**(2) Business Personal Property**

If this policy covers Business Personal Property, you may extend that insurance to apply to:

**(a)** Business Personal Property, including such property that you newly acquire, at any location you acquire;

**(b)** Business Personal Property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations; or

**(c)** Business Personal Property that you newly acquire, located at the described premises.

This Extension does not apply to personal property that you temporarily acquire in the course of installing or performing work on such property or your wholesale activities.

The most we will pay for loss or damage under this Extension is $100,000 at each building.

**(3) Period Of Coverage**

With respect to insurance on or at each newly acquired or constructed property, coverage will end when any of the following first occurs:

**(a)** This policy expires;

**(b)** 30 days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

**(c)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as covered property.

**b. Personal Property Off-premises**

You may extend the insurance provided by this policy to apply to your Covered Property, other than "money" and "securities", "valuable papers and records" or accounts receivable, while it is in the course of transit or at a premises you do not own, lease or operate. The most we will pay for loss or damage under this Extension is $10,000.

**c. Outdoor Property**

You may extend the insurance provided by this policy to apply to your outdoor fences, radio and television antennas (including satellite dishes), signs (other than signs attached to buildings), trees, shrubs and plants, including debris removal expense. Loss or damage must be caused by or result from any of the following causes of loss:

**(1)** Fire;

**(2)** Lightning;

**(3)** Explosion;

**(4)** Riot or Civil Commotion; or

**(5)** Aircraft.

The most we will pay for loss or damage under this Extension is $2,500, unless a higher Limit of Insurance for Outdoor Property is shown in the Declarations, but not more than $1,000 for any one tree, shrub or plant.

**d. Personal Effects**

You may extend the insurance that applies to Business Personal Property to apply to personal effects owned by you, your officers, your partners or "members", your "managers" or your employees. This extension does not apply to:

**(1)** Tools or equipment used in your business; or

**(2)** Loss or damage by theft.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises.

**BUSINESSOWNER'S COVERAGE FORM**

**e. Valuable Papers And Records**

**(1)** You may extend the insurance that applies to Business Personal Property to apply to direct physical loss or damage to "valuable papers and records" that you own, or that are in your care, custody or control caused by or resulting from a Covered Cause of Loss. This Coverage Extension includes the cost to research, replace or restore the lost information on "valuable papers and records" for which duplicates do not exist.

**(2)** This Coverage Extension does not apply to:

**(a)** Property held as samples or for delivery after sale; and

**(b)** Property in storage away from the premises shown in the Declarations.

**(3)** The most we will pay under this Coverage Extension for loss or damage to "valuable papers and records" in any one occurrence at the described premises is $10,000, unless a higher Limit of Insurance for "valuable papers and records" is shown in the Declarations.

For "valuable papers and records" not at the described premises, the most we will pay is $5,000.

**(4)** Loss or damage to "valuable papers and records" will be valued at the cost of restoration or replacement of the lost or damaged information. To the extent that the contents of the "valuable papers and records" are not restored, the "valuable papers and records" will be valued at the cost of replacement with blank materials of substantially identical type.

**(5)** Paragraph **B.** Exclusions in Section I – Property does not apply to this Coverage Extension except for:

**(a)** Paragraph **B.1.c.,** Governmental Action;

**(b)** Paragraph **B.1.d.,** Nuclear Hazard;

**(c)** Paragraph **B.1.f.,** War And Military Action;

**(d)** Paragraph **B.2.f.,** Dishonesty;

**(e)** Paragraph **B.2.g.,** False Pretense;

**(f)** Paragraph **B.2.m.(2),** Errors Or Omissions; and

**(g)** Paragraph **B.3.**

**f. Accounts Receivable**

**(1)** You may extend the insurance that applies to Business Personal Property to apply to accounts receivable. We will pay:

**(a)** All amounts due from your customers that you are unable to collect;

**(b)** Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;

**(c)** Collection expenses in excess of your normal collection expenses that are made necessary by loss or damage; and

**(d)** Other reasonable expenses that you incur to reestablish your records of accounts receivable;

that result from direct physical loss or damage by any Covered Cause of Loss to your records of accounts receivable.

**(2)** The most we will pay under this Coverage Extension for loss or damage in any one occurrence at the described premises is $10,000, unless a higher Limit of Insurance for accounts receivable is shown in the Declarations.

For accounts receivable not at the described premises, the most we will pay is $5,000.

**(3)** Paragraph **B.** Exclusions in Section I – Property does not apply to this Coverage Extension except for:

**(a)** Paragraph **B.1.c.,** Governmental Action;

**(b)** Paragraph **B.1.d.,** Nuclear Hazard;

**(c)** Paragraph **B.1.f.,** War And Military Action;

**(d)** Paragraph **B.2.f.,** Dishonesty;

**(e)** Paragraph **B.2.g.,** False Pretense;

**(f)** Paragraph **B.3.;** and

**(g)** Paragraph **B.6.,** Accounts Receivable Exclusion.

**B. Exclusions**

**1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

**a. Ordinance Or Law**

**(1)** The enforcement of any ordinance or law:

**(a)** Regulating the construction, use or repair of any property; or

**(b)** Requiring the tearing down of any property, including the cost of removing its debris.

**(2)** This exclusion, Ordinance Or Law, applies whether the loss results from:

**(a)** An ordinance or law that is enforced even if the property has not been damaged; or

**(b)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property or removal of its debris, following a physical loss to that property.

**b. Earth Movement**

**(1)** Earthquake, including any earth sinking, rising or shifting related to such event;

**(2)** Landslide, including any earth sinking, rising or shifting related to such event;

**(3)** Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

**(4)** Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in Paragraphs **(1)** through **(4)** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

**(5)** Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or volcanic action, we will pay for the loss or damage caused by that fire, building glass breakage or volcanic action.

Volcanic action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

**(a)** Airborne volcanic blast or airborne shock waves;

**(b)** Ash, dust or particulate matter; or

**(c)** Lava flow.

All volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss of or damage to Covered Property.

**c. Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this policy.

**d. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

**e. Utility Services**

The failure of power, communication, water or other utility service supplied to the described premises, however caused, if the failure:

**(1)** Originates away from the described premises; or

**(2)** Originates at the described premises, but only if such failure involves equipment used to supply the utility service to the described premises from a source away from the described premises.

Failure of any utility service includes lack of sufficient capacity and reduction in supply.

Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power.

But if the failure or surge of power, or the failure of communication, water or other utility service, results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**BUSINESSOWNER'S COVERAGE FORM**

Communication services include but are not limited to service relating to Internet access or access to any electronic, cellular or satellite network.

This exclusion does not apply to loss or damage to "computer(s)" and "electronic data".

**f. War And Military Action**

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g. Water**

(1) Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

(2) Mudslide or mudflow;

(3) Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

(4) Water under the ground surface pressing on, or flowing or seeping through:

(a) Foundations, walls, floors or paved surfaces;

(b) Basements, whether paved or not; or

(c) Doors, windows or other openings; or

(5) Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **(1)**, **(3)** or **(4)**, or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5)**, is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

But if any of the above, in Paragraphs **(1)** through **(5)**, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.

**h. Certain Computer-related Losses**

(1) The failure, malfunction or inadequacy of:

(a) Any of the following, whether belonging to any insured or to others:

(i) "Computer" hardware, including microprocessors or other electronic data processing equipment as may be described elsewhere in this policy;

(ii) "Computer" application software or other "electronic data" as may be described elsewhere in this policy;

(iii) "Computer" operating systems and related software;

(iv) "Computer" networks;

(v) Microprocessors ("computer" chips) not part of any "computer" system; or

(vi) Any other computerized or electronic equipment or components; or

(b) Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph **(a)** above;

due to the inability to correctly recognize, distinguish, interpret or accept one or more dates or times. An example is the inability of computer software to recognize the year 2000.

(2) Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph **(1)** above.

However, if excluded loss or damage, as described in Paragraph **(1)** above results in a "specified cause of loss" under Section I – Property, we will pay only for the loss or damage caused by such "specified cause of loss".

We will not pay for repair, replacement or modification of any items in Paragraph **(1)(a)** or **(1)(b)** to correct any deficiencies or change any features.

**i. "Fungi", Wet Rot Or Dry Rot**

Presence, growth, proliferation, spread or any activity of "fungi", wet rot or dry rot.

But if "fungi", wet rot or dry rot result in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion does not apply:

**(1)** When "fungi", wet rot or dry rot result from fire or lightning; or

**(2)** To the extent that coverage is provided in the Limited Coverage For "Fungi", Wet Rot Or Dry Rot Additional Coverage, with respect to loss or damage by a cause of loss other than fire or lightning.

**j. Virus Or Bacteria**

**(1)** Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

**(2)** However, the exclusion in Paragraph **(1)** does not apply to loss or damage caused by or resulting from "fungi", wet rot or dry rot. Such loss or damage is addressed in Exclusion **i.**;

**(3)** With respect to any loss or damage subject to the exclusion in Paragraph **(1)**, such exclusion supersedes any exclusion relating to "pollutants".

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

**a. Electrical Apparatus**

Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

**(1)** Electrical or electronic wire, device, appliance, system or network; or

**(2)** Device, appliance, system or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

**(1)** Electrical current, including arcing;

**(2)** Electrical charge produced or conducted by a magnetic or electromagnetic field;

**(3)** Pulse of electromagnetic energy; or

**(4)** Electromagnetic waves or microwaves.

But if fire results, we will pay for the loss or damage caused by fire.

We will pay for loss or damage to "computer(s)" due to artificially generated electrical, magnetic or electromagnetic energy if such loss or damage is caused by or results from:

**(1)** An occurrence that took place within 100 feet of the described premises; or

**(2)** Interruption of electric power supply, power surge, blackout or brownout if the cause of such occurrence took place within 100 feet of the described premises.

**b. Consequential Losses**

Delay, loss of use or loss of market.

**c. Smoke, Vapor, Gas**

Smoke, vapor or gas from agricultural smudging or industrial operations.

**d. Steam Apparatus**

Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**e. Frozen Plumbing**

Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

**(1)** You do your best to maintain heat in the building or structure; or

**(2)** You drain the equipment and shut off the supply if the heat is not maintained.

**f. Dishonesty**

Dishonest or criminal acts by you, anyone else with an interest in the property, or any of your or their partners, "members", officers, "managers", employees, directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

**BUSINESSOWNER'S COVERAGE FORM**

**(1)** Acting alone or in collusion with others; or

**(2)** Whether or not occurring during the hours of employment.

This exclusion does not apply to acts of destruction by your employees; but theft by employees is not covered.

With respect to accounts receivable and "valuable papers and records", this exclusion does not apply to carriers for hire.

This exclusion does not apply to coverage that is provided under the Employee Dishonesty Optional Coverage.

**g. False Pretense**

Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**h. Exposed Property**

Rain, snow, ice or sleet to personal property in the open.

**i. Collapse**

**(1)** Collapse, including any of the following conditions of property or any part of the property:

**(a)** An abrupt falling down or caving in;

**(b)** Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

**(c)** Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to Paragraph i.(1)(a) or i.(1)(b).

But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

**(2)** This Exclusion i., does not apply:

**(a)** To the extent that coverage is provided under the Additional Coverage – Collapse; or

**(b)** To collapse caused by one or more of the following:

**(i)** The "specified causes of loss";

**(ii)** Breakage of building glass;

**(iii)** Weight of rain that collects on a roof; or

**(iv)** Weight of people or personal property.

**j. Pollution**

We will not pay for loss or damage caused by or resulting from the discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

**k. Neglect**

Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

**l. Other Types Of Loss**

**(1)** Wear and tear;

**(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**(3)** Smog;

**(4)** Settling, cracking, shrinking or expansion;

**(5)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals;

**(6)** Mechanical breakdown, including rupture or bursting caused by centrifugal force.

This exclusion does not apply with respect to the breakdown of "computer(s)";

**(7)** The following causes of loss to personal property:

**(a)** Dampness or dryness of atmosphere;

**(b)** Changes in or extremes of temperature; or

**(c)** Marring or scratching.

But if an excluded cause of loss that is listed in Paragraphs **(1)** through **(7)** above results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

**m. Errors Or Omissions**

Errors or omissions in:

**(1)** Programming, processing or storing data, as described under "electronic data" or in any "computer" operations; or

**(2)** Processing or copying "valuable papers and records".

However, we will pay for direct physical loss or damage caused by resulting fire or explosion if these causes of loss would be covered by this coverage form.

**n. Installation, Testing, Repair**

Errors or deficiency in design, installation, testing, maintenance, modification or repair of your "computer" system including "electronic data".

However, we will pay for direct physical loss or damage caused by resulting fire or explosion if these causes of loss would be covered by this coverage form.

**o. Electrical Disturbance**

Electrical or magnetic injury, disturbance or erasure of "electronic data", except as provided for under the Additional Coverages of Section I – Property.

However, we will pay for direct loss or damage caused by lightning.

**p. Continuous Or Repeated Seepage Or Leakage Of Water**

Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

**3.** We will not pay for loss or damage caused by or resulting from any of the following Paragraphs **a.** through **c.** But if an excluded cause of loss that is listed in Paragraphs **a.** through **c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**a. Weather Conditions**

Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **B.1.** above to produce the loss or damage.

**b. Acts Or Decisions**

Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**c. Negligent Work**

Faulty, inadequate or defective:

**(1)** Planning, zoning, development, surveying, siting;

**(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

**(3)** Materials used in repair, construction, renovation or remodeling; or

**(4)** Maintenance;

of part or all of any property on or off the described premises.

**4. Additional Exclusion**

The following applies only to the property specified in this Additional Exclusion.

**Loss Or Damage To Products**

We will not pay for loss or damage to any merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion applies to any effect that compromises the form, substance or quality of the product. But if such error or omission results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**5. Business Income And Extra Expense Exclusions**

**a.** We will not pay for:

**(1)** Any Extra Expense, or increase of Business Income loss, caused by or resulting from:

**(a)** Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

**(b)** Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of "operations", we will cover such loss that affects your Business Income during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage.

**BUSINESSOWNER'S COVERAGE FORM**

**(2)** Any other consequential loss.

**b.** With respect to this exclusion, suspension means:

**(1)** The partial slowdown or complete cessation of your business activities; and

**(2)** That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

**6. Accounts Receivable Exclusion**

The following additional exclusion applies to the Accounts Receivable Coverage Extension:

We will not pay for:

**a.** Loss or damage caused by or resulting from alteration, falsification, concealment or destruction of records of accounts receivable done to conceal the wrongful giving, taking or withholding of "money", "securities" or other property.

This exclusion applies only to the extent of the wrongful giving, taking or withholding.

**b.** Loss or damage caused by or resulting from bookkeeping, accounting or billing errors or omissions.

**c.** Any loss or damage that requires any audit of records or any inventory computation to prove its factual existence.

**C. Limits Of Insurance**

**1.** The most we will pay for loss or damage in any one occurrence is the applicable Limits of Insurance of Section I – Property shown in the Declarations.

**2.** The most we will pay for loss of or damage to outdoor signs attached to buildings is $1,000 per sign in any one occurrence.

**3.** The amounts of insurance applicable to the Coverage Extensions and the following Additional Coverages apply in accordance with the terms of such coverages and are in addition to the Limits of Insurance of Section I – Property:

**a.** Fire Department Service Charge;

**b.** Pollutant Clean-up And Removal;

**c.** Increased Cost Of Construction;

**d.** Business Income From Dependent Properties;

**e.** Electronic Data; and

**f.** Interruption Of Computer Operations.

**4. Building Limit – Automatic Increase**

**a.** In accordance with Paragraph **C.4.b.**, the Limit of Insurance for Buildings will automatically increase by 8%, unless a different percentage of annual increase is shown in the Declarations.

**b.** The amount of increase is calculated as follows:

**(1)** Multiply the Building limit that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Building limit by:

**(a)** The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 7% is .07); or

**(b)** .08, if no percentage of annual increase is shown in the Declarations; and

**(2)** Multiply the number calculated in accordance with **b.(1)** by the number of days since the beginning of the current policy year, or the effective date of the most recent policy change amending the Building limit, divided by 365.

**Example:**

If:

The applicable Building limit is $100,000. The annual percentage increase is 8%. The number of days since the beginning of the policy year (or last policy change) is 146.

The amount of increase is

$100,000 x .08 x 146 ÷ 365 = $3,200.

**5. Business Personal Property Limit – Seasonal Increase**

**a.** Subject to Paragraph **5.b.**, the Limit of Insurance for Business Personal Property is automatically increased by:

**(1)** The Business Personal Property – Seasonal Increase percentage shown in the Declarations; or

**(2)** 25% if no Business Personal Property – Seasonal Increase percentage is shown in the Declarations;

to provide for seasonal variances.

**b.** The increase described in Paragraph **5.a** will apply only if the Limit of Insurance shown for Business Personal Property in the Declarations is at least 100% of your average monthly values during the lesser of:

**(1)** The 12 months immediately preceding the date the loss or damage occurs; or

**(2)** The period of time you have been in business as of the date the loss or damage occurs.

## D. Deductibles

1. We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Declarations. We will then pay the amount of loss or damage in excess of the Deductible up to the applicable Limit of Insurance of Section I – Property.

2. Regardless of the amount of the Deductible, the most we will deduct from any loss or damage under all of the following Optional Coverages in any one occurrence is the Optional Coverage Deductible shown in the Declarations:

   **a.** Money and Securities;

   **b.** Employee Dishonesty;

   **c.** Outdoor Signs; and

   **d.** Forgery or Alteration.

   But this Optional Coverage Deductible will not increase the Deductible shown in the Declarations. This Deductible will be used to satisfy the requirements of the Deductible in the Declarations.

3. No deductible applies to the following Additional Coverages:

   **a.** Fire Department Service Charge;

   **b.** Business Income;

   **c.** Extra Expense;

   **d.** Civil Authority; and

   **e.** Fire Extinguisher Systems Recharge Expense.

## E. Property Loss Conditions

### 1. Abandonment

There can be no abandonment of any property to us.

### 2. Appraisal

If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

### 3. Duties In The Event Of Loss Or Damage

**a.** You must see that the following are done in the event of loss or damage to Covered Property:

**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limits of Insurance of Section I – Property. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

**(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(8)** Cooperate with us in the investigation or settlement of the claim.

**(9)** Resume all or part of your "operations" as quickly as possible.

**BUSINESSOWNER'S COVERAGE FORM**

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**4. Legal Action Against Us**

No one may bring a legal action against us under this insurance unless:

**a.** There has been full compliance with all of the terms of this insurance; and

**b.** The action is brought within two years after the date on which the direct physical loss or damage occurred.

**5. Loss Payment**

In the event of loss or damage covered by this policy:

**a.** At our option, we will either:

**(1)** Pay the value of lost or damaged property;

**(2)** Pay the cost of repairing or replacing the lost or damaged property;

**(3)** Take all or any part of the property at an agreed or appraised value; or

**(4)** Repair, rebuild or replace the property with other property of like kind and quality, subject to Paragraph **d.(1)(e)** below.

**b.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**c.** We will not pay you more than your financial interest in the Covered Property.

**d.** Except as provided in Paragraphs **(2)** through **(7)** below, we will determine the value of Covered Property as follows:

**(1)** At replacement cost without deduction for depreciation, subject to the following:

**(a)** If, at the time of loss, the Limit of Insurance on the lost or damaged property is 80% or more of the full replacement cost of the property immediately before the loss, we will pay the cost to repair or replace, after application of the deductible and without deduction for depreciation, but not more than the least of the following amounts:

**(i)** The Limit of Insurance under Section I – Property that applies to the lost or damaged property;

**(ii)** The cost to replace, on the same premises, the lost or damaged property with other property:

**i.** Of comparable material and quality; and

**ii.** Used for the same purpose; or

**(iii)** The amount that you actually spend that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost is limited to the cost which would have been incurred had the building been built at the original premises.

**(b)** If, at the time of loss, the Limit of Insurance applicable to the lost or damaged property is less than 80% of the full replacement cost of the property immediately before the loss, we will pay the greater of the following amounts, but not more than the Limit of Insurance that applies to the property:

**(i)** The actual cash value of the lost or damaged property; or

**(ii)** A proportion of the cost to repair or replace the lost or damaged property, after application of the deductible and without deduction for depreciation. This proportion will equal the ratio of the applicable Limit of Insurance to 80% of the cost of repair or replacement.

**(c)** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim on a replacement cost basis if you notify us of your intent to do so within 180 days after the loss or damage.

**(d)** We will not pay on a replacement cost basis for any loss or damage:

**(i)** Until the lost or damaged property is actually repaired or replaced; and

**(ii)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

However, if the cost to repair or replace the damaged building property is $2,500 or less, we will settle the loss according to the provisions of Paragraphs **d.(1)(a)** and **d.(1)(b)** above whether or not the actual repair or replacement is complete.

**(e)** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

**(2)** If the Actual Cash Value -- Buildings option applies, as shown in the Declarations, Paragraph **(1)** above does not apply to Buildings. Instead, we will determine the value of Buildings at actual cash value.

**(3)** The following property at actual cash value:

**(a)** Used or secondhand merchandise held in storage or for sale;

**(b)** Property of others. However, if an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance;

**(c)** Household contents, except personal property in apartments or rooms furnished by you as landlord;

**(d)** Manuscripts; and

**(e)** Works of art, antiques or rare articles, including etchings, pictures, statuary, marble, bronzes, porcelain and bric-a-brac.

**(4)** Glass at the cost of replacement with safety glazing material if required by law.

**(5)** Tenants' Improvements and Betterments at:

**(a)** Replacement cost if you make repairs promptly.

**(b)** A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

**(i)** Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

**(ii)** Divide the amount determined in **(i)** above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

**(c)** Nothing if others pay for repairs or replacement.

**(6)** Applicable only to the Optional Coverages:

**(a)** "Money" at its face value; and

**(b)** "Securities" at their value at the close of business on the day the loss is discovered.

**(7)** Applicable only to Accounts Receivable:

**(a)** If you cannot accurately establish the amount of accounts receivable outstanding as of the time of loss or damage:

**(i)** We will determine the total of the average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which the loss or damage occurs; and

**(ii)** We will adjust that total for any normal fluctuations in the amount of accounts receivable for the month in which the loss or damage occurred or for any demonstrated variance from the average for that month.

**(b)** The following will be deducted from the total amount of accounts receivable, however that amount is established:

**(i)** The amount of the accounts for which there is no loss or damage;

**(ii)** The amount of the accounts that you are able to reestablish or collect;

**BUSINESSOWNER'S COVERAGE FORM**

    **(iii)** An amount to allow for probable bad debts that you are normally unable to collect; and

    **(iv)** All unearned interest and service charges.

**e.** Our payment for loss of or damage to personal property of others will only be for the account of the owners of the property. We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**f.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**g.** We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, provided you have complied with all of the terms of this policy; and

    **(1)** We have reached agreement with you on the amount of loss; or

    **(2)** An appraisal award has been made.

**h.** A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the loss to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the loss to the party wall, subject to all applicable policy provisions including Limits of Insurance and all other provisions of this Loss Payment Condition. Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of the Transfer Of Rights Of Recovery Against Others To Us Condition in this policy.

**6. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, you may retain the property. But then you must return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limits of Insurance of Section **I** – Property.

**7. Resumption Of Operations**

We will reduce the amount of your:

**a.** Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

**b.** Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

**8. Vacancy**

**a. Description Of Terms**

    **(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in Paragraphs **(a)** and **(b)** below:

        **(a)** When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

        **(b)** When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

            **(i)** Rented to a lessee or sublessee and used by the lessee or sublessee to conduct its customary operations; and/or

            **(ii)** Used by the building owner to conduct customary operations.

    **(2)** Buildings under construction or renovation are not considered vacant.

**b. Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

    **(1)** We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

        **(a)** Vandalism;

        **(b)** Sprinkler leakage, unless you have protected the system against freezing;

**(c)** Building glass breakage;

**(d)** Water damage;

**(e)** Theft; or

**(f)** Attempted theft.

**(2)** With respect to Covered Causes of Loss other than those listed in Paragraphs **(1)(a)** through **(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

**F. Property General Conditions**

**1. Control Of Property**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Form at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

**2. Mortgageholders**

**a.** The term "mortgageholder" includes trustee.

**b.** We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

**c.** The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

**d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this policy will then apply directly to the mortgageholder.

**e.** If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

**(2)** The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**f.** If we cancel this policy, we will give written notice to the mortgageholder at least:

**(1)** 10 days before the effective date of cancellation if we cancel for your non-payment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**g.** If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

**3. No Benefit To Bailee**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**4. Policy Period, Coverage Territory**

Under Section I – Property:

**a.** We cover loss or damage commencing:

**(1)** During the policy period shown in the Declarations; and

**(2)** Within the coverage territory or, with respect to property in transit, while it is between points in the coverage territory.

**b.** The coverage territory is:

**(1)** The United States of America (including its territories and possessions);

**(2)** Puerto Rico; and

**(3)** Canada.

**G. Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages also apply. These coverages are subject to the terms and conditions applicable to property coverage in this policy, except as provided below.

**1. Outdoor Signs**

**a.** We will pay for direct physical loss of or damage to all outdoor signs at the described premises:

**BUSINESSOWNER'S COVERAGE FORM**

    **(1)** Owned by you; or

    **(2)** Owned by others but in your care, custody or control.

**b.** Paragraph **A.3.,** Covered Causes Of Loss, and Paragraph **B.,** Exclusions in Section **I** – Property, do not apply to this Optional Coverage, except for:

    **(1)** Paragraph **B.1.c.,** Governmental Action;

    **(2)** Paragraph **B.1.d.,** Nuclear Hazard; and

    **(3)** Paragraph **B.1.f.,** War And Military Action.

**c.** We will not pay for loss or damage caused by or resulting from:

    **(1)** Wear and tear;

    **(2)** Hidden or latent defect;

    **(3)** Rust;

    **(4)** Corrosion; or

    **(5)** Mechanical breakdown.

**d.** The most we will pay for loss or damage in any one occurrence is the Limit of Insurance for Outdoor Signs shown in the Declarations.

**e.** The provisions of this Optional Coverage supersede all other references to outdoor signs in this policy.

**2. Money And Securities**

**a.** We will pay for loss of "money" and "securities" used in your business while at a bank or savings institution, within your living quarters or the living quarters of your partners or any employee having use and custody of the property, at the described premises, or in transit between any of these places, resulting directly from:

    **(1)** Theft, meaning any act of stealing;

    **(2)** Disappearance; or

    **(3)** Destruction.

**b.** In addition to the Limitations and Exclusions applicable to Section **I** – Property, we will not pay for loss:

    **(1)** Resulting from accounting or arithmetical errors or omissions;

    **(2)** Due to the giving or surrendering of property in any exchange or purchase; or

    **(3)** Of property contained in any "money"-operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

**c.** The most we will pay for loss in any one occurrence is:

    **(1)** The limit shown in the Declarations for Inside the Premises for "money" and "securities" while:

        **(a)** In or on the described premises; or

        **(b)** Within a bank or savings institution; and

    **(2)** The limit shown in the Declarations for Outside the Premises for "money" and "securities" while anywhere else.

**d.** All loss:

    **(1)** Caused by one or more persons; or

    **(2)** Involving a single act or series of related acts;

    is considered one occurrence.

**e.** You must keep records of all "money" and "securities" so we can verify the amount of any loss or damage.

**3. Employee Dishonesty**

**a.** We will pay for direct loss of or damage to Business Personal Property and "money" and "securities" resulting from dishonest acts committed by any of your employees acting alone or in collusion with other persons (except you or your partner) with the manifest intent to:

    **(1)** Cause you to sustain loss or damage; and also

    **(2)** Obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment) for:

        **(a)** Any employee; or

        **(b)** Any other person or organization.

**b.** We will not pay for loss or damage:

    **(1)** Resulting from any dishonest or criminal act that you or any of your partners or "members" commit whether acting alone or in collusion with other persons.

    **(2)** Resulting from any dishonest act committed by any of your employees (except as provided in Paragraph **a.**), "managers" or directors:

        **(a)** Whether acting alone or in collusion with other persons; or

        **(b)** While performing services for you or otherwise.

    **(3)** The only proof of which as to its existence or amount is:

    (a) An inventory computation; or

    (b) A profit and loss computation.

**c.** The most we will pay for loss or damage in any one occurrence is the Limit of Insurance for Employee Dishonesty shown in the Declarations.

**d.** All loss or damage:

    **(1)** Caused by one or more persons; or

    **(2)** Involving a single act or series of acts;

    is considered one occurrence.

**e.** If any loss is covered:

    **(1)** Partly by this insurance; and

    **(2)** Partly by any prior cancelled or terminated insurance that we or any affiliate had issued to you or any predecessor in interest;

    the most we will pay is the larger of the amount recoverable under this insurance or the prior insurance.

    We will pay only for loss or damage you sustain through acts committed or events occurring during the policy period. Regardless of the number of years this policy remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period.

**f.** This Optional Coverage is cancelled as to any employee immediately upon discovery by:

    **(1)** You; or

    **(2)** Any of your partners, "members", "managers", officers or directors not in collusion with the employee;

    of any dishonest act committed by that employee before or after being hired by you.

**g.** We will pay only for covered loss or damage sustained during the policy period and discovered no later than one year from the end of the policy period.

**h.** If you (or any predecessor in interest) sustained loss or damage during the policy period of any prior insurance that you could have recovered under that insurance except that the time within which to discover loss or damage had expired, we will pay for it under this Optional Coverage, provided:

    **(1)** This Optional Coverage became effective at the time of cancellation or termination of the prior insurance; and

    **(2)** The loss or damage would have been covered by this Optional Coverage had it been in effect when the acts or events causing the loss or damage were committed or occurred.

**i.** The insurance under Paragraph **h.** above is part of, not in addition to, the Limit of Insurance applying to this Optional Coverage and is limited to the lesser of the amount recoverable under:

    **(1)** This Optional Coverage as of its effective date; or

    **(2)** The prior insurance had it remained in effect.

**j.** With respect to the Employee Dishonesty Optional Coverage in Paragraph **G.3.**, employee means:

    **(1)** Any natural person:

        **(a)** While in your service or for 30 days after termination of service;

        **(b)** Who you compensate directly by salary, wages or commissions; and

        **(c)** Who you have the right to direct and control while performing services for you;

    **(2)** Any natural person who is furnished temporarily to you:

        **(a)** To substitute for a permanent employee as defined in Paragraph **(1)** above, who is on leave; or

        **(b)** To meet seasonal or short-term workload conditions;

    **(3)** Any natural person who is leased to you under a written agreement between you and a labor leasing firm, to perform duties related to the conduct of your business, but does not mean a temporary employee as defined in Paragraph **(2)** above;

    **(4)** Any natural person who is a former employee, director, partner, member, manager, representative or trustee retained as a consultant while performing services for you; or

    **(5)** Any natural person who is a guest student or intern pursuing studies or duties, excluding, however, any such person while having care and custody of property outside any building you occupy in conducting your business.

    But employee does not mean:

**BUSINESSOWNER'S COVERAGE FORM**

(1) Any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character; or

(2) Any "manager", director or trustee except while performing acts coming within the usual duties of an employee.

**4. Equipment Breakdown Protection Coverage**

**a.** We will pay for direct loss of or damage to Covered Property caused by or resulting from a mechanical breakdown or electrical failure to pressure, mechanical or electrical machinery and equipment.

Mechanical breakdown or electrical failure to pressure, mechanical or electrical machinery and equipment does not mean any:

(1) Malfunction including but not limited to adjustment, alignment, calibration, cleaning or modification;

(2) Leakage at any valve, fitting, shaft seal, gland packing, joint or connection;

(3) Damage to any vacuum tube, gas tube, or brush; or

(4) The functioning of any safety or protective device.

**b.** Paragraphs **A.4.a.(1)** and **A.4.a.(2), Limitations,** do not apply to this Optional Coverage.

**c.** With respect to the coverage provided by this Optional Coverage, the following exclusions in Paragraph **B. Exclusions** do not apply:

(1) Paragraph **B.2.a. Electrical Apparatus;**

(2) Paragraph **B.2.d. Steam Apparatus;** and

(3) Paragraph **B.2.l.(6) Mechanical Breakdown.**

**d.** With respect to the coverage provided by this Optional Coverage, Paragraph **G.1.c.(5)** of the **Outdoor Sign Optional Coverage** does not apply.

**e.** If a dollar deductible is shown in the Declarations for this Optional Coverage, we will first subtract the applicable deductible amount from any loss we would otherwise pay. We will then pay the amount of loss in excess of the applicable deductible up to the applicable limit for this coverage.

If no optional deductible is chosen for this Optional Coverage, the Property Deductible shown in the Declarations applies.

**f.** With respect to **Additional Coverages 5.f. Business Income** and **5.g. Extra Expense,** if the 72-hour time period in the definition of "period of restoration" (hereinafter referred to as time deductible) is amended for this Optional Coverage as shown in the Declarations, we will not pay for any Business Income loss that occurs during the consecutive number of hours shown as the time deductible in the Declarations immediately following a mechanical breakdown or electrical failure. If a time deductible is shown in days, each day shall mean 24 consecutive hours.

As respects the coverage provided by this Optional Coverage, any time deductible shown in the Declarations for Equipment Breakdown Protection Coverage supersedes any time deductible otherwise applicable to the Business Income coverage provided by this policy.

**g.** With respect to the coverage provided by this Optional Coverage, Paragraph **H. Property Definitions** is amended as follows:

1. "Computer" means:

**a.** Programmable electronic equipment that is used to store, retrieve and process data; and

**b.** Associated peripheral equipment that provides communication, including input and output functions such as printing and auxiliary functions such as data transmission.

"Computer" includes those used to operate production type machinery or equipment.

**h.** Whenever any covered pressure, mechanical or electrical machinery and equipment is found to be in, or exposed to, a dangerous condition, any of our representatives may suspend coverage provided by this Optional Coverage for loss from a mechanical breakdown or electrical failure to that pressure, mechanical or electrical machinery and equipment.

However, coverage provided by this Optional Coverage may be reinstated for loss from a mechanical breakdown or electrical failure to that pressure, mechanical or electrical machinery and equipment if the reasons for the suspension are found by any of our representatives to no longer exist.

We may suspend or reinstate this Optional coverage by mailing or delivering a written notification regarding the suspension or reinstatement to:

(1) Your last known address; or

(2) The address where the pressure, mechanical or electrical machinery and equipment is located.

This notification will indicate the effective date of the suspension or reinstatement.

If the coverage provided by this Optional Coverage is not reinstated, you will get a pro rata refund of premium. But the suspension will be effective even if we have not yet made or offered a refund.

**H. Property Definitions**

1. "Computer" means:

    a. Programmable electronic equipment that is used to store, retrieve and process data; and

    b. Associated peripheral equipment that provides communication, including input and output functions such as printing and auxiliary functions such as data transmission.

    "Computer" does not include those used to operate production type machinery or equipment.

2. "Counterfeit money" means an imitation of "money" that is intended to deceive and to be taken as genuine.

3. "Electronic data" means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a "computer" or device connected to it, which enable the "computer" or device to receive, process, store, retrieve or send data.

4. "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

5. "Manager" means a person serving in a directorial capacity for a limited liability company.

6. "Member" means an owner of a limited liability company represented by its membership interest, who also may serve as a "manager".

7. "Money" means:

    a. Currency, coins and bank notes in current use and having a face value; and

    b. Travelers checks, register checks and money orders held for sale to the public.

8. "Operations" means your business activities occurring at the described premises.

9. "Period of restoration":

    a. Means the period of time that:

        (1) Begins:

            (a) 72 hours after the time of direct physical loss or damage for Business Income Coverage; or

            (b) Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

            caused by or resulting from any Covered Cause of Loss at the described premises; and

        (2) Ends on the earlier of:

            (a) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

            (b) The date when business is resumed at a new permanent location.

    b. Does not include any increased period required due to the enforcement of any ordinance or law that:

        (1) Regulates the construction, use or repair, or requires the tearing down of any property; or

        (2) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants".

    The expiration date of this policy will not cut short the "period of restoration".

10. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

11. "Securities" means negotiable and non-negotiable instruments or contracts representing either "money" or other property and includes:

**BUSINESSOWNER'S COVERAGE FORM**

    **a.** Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

    **b.** Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

    but does not include "money".

**12.** "Specified causes of loss" means the following:

Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

    **a.** Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

      **(1)** The cost of filling sinkholes; or

      **(2)** Sinking or collapse of land into manmade underground cavities.

    **b.** Falling objects does not include loss of or damage to:

      **(1)** Personal property in the open; or

      **(2)** The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

    **c.** Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam.

**13.** "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

**14.** "Valuable papers and records" means inscribed, printed or written:

    **a.** Documents;

    **b.** Manuscripts; and

    **c.** Records;

    including abstracts, books, deeds, drawings, films, maps or mortgages.

But "valuable papers and records" does not mean "money" or "securities".

**SECTION II – LIABILITY**

**A. Coverages**

  **1. Business Liability**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or any offense and settle any claim or "suit" that may result. But:

      **(1)** The amount we will pay for damages is limited as described in Paragraph **D.** – Liability And Medical Expenses Limits Of Insurance in Section II – Liability; and

      **(2)** Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements or medical expenses.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Paragraph **f.** Coverage Extension – Supplementary Payments.

    **b.** This insurance applies:

      **(1)** To "bodily injury" and "property damage" only if:

        **(a)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **(b)** The "bodily injury" or "property damage" occurs during the policy period; and

(c) Prior to the policy period, no insured listed under Paragraph **C.1.** Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known before the policy period.

(2) To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **C.1.** Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **C.1.** Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

f. **Coverage Extension – Supplementary Payments**

(1) We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

(a) All expenses we incur.

(b) Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which Business Liability Coverage for "bodily injury" applies. We do not have to furnish these bonds.

(c) The cost of bonds to release attachments, but only for bond amounts within our Limit of Insurance. We do not have to furnish these bonds.

(d) All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

(e) All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

(f) Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

(g) All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the limit of liability.

(2) If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

(a) The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

BUSINESSOWNER'S COVERAGE FORM

**(b)** This insurance applies to such liability assumed by the insured;

**(c)** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**(d)** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**(e)** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**(f)** The indemnitee:

**(i)** Agrees in writing to:

   **i.** Cooperate with us in the investigation, settlement or defense of the "suit";

   **ii.** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

   **iii.** Notify any other insurer whose coverage is available to the indemnitee; and

   **iv.** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(ii)** Provides us with written authorization to:

   **i.** Obtain records and other information related to the "suit"; and

   **ii.** Conduct and control the defense of the indemnitee in such "suit".

**(3)** So long as the conditions in Paragraph **(2)** are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **B.1.b.(2)** Exclusions in Section **II** – Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the Limits of Insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

**(a)** We have used up the applicable Limit of Insurance in the payment of judgments or settlements; or

**(b)** The conditions set forth above, or the terms of the agreement described in Paragraph **(2)(f)** above are no longer met.

**2. Medical Expenses**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the Limits of Insurance of Section **II** – Liability. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**B. Exclusions**

**1. Applicable To Business Liability Coverage**

This insurance does not apply to:

BIZGUARD PLUS

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**BUSINESSOWNER'S COVERAGE FORM**

    **(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

    **(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

    **(i)** Any insured; or

    **(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

    **(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

    **(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

    **(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 51 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where it is licensed or principally garaged; or

**(b)** The operation of any of the following machinery or equipment:

**(i)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(ii)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition or stunting activity.

**i. War**

"Bodily injury", "property damage" or "personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by government authority in hindering or defending against any of these.

**j. Professional Services**

"Bodily injury", "property damage" or "personal and advertising injury" caused by the rendering or failure to render any professional service. This includes but is not limited to:

**(1)** Legal, accounting or advertising services;

**(2)** Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

**(3)** Supervisory, inspection or engineering services;

**BUSINESSOWNER'S COVERAGE FORM**

**(4)** Medical, surgical, dental, x-ray or nursing services treatment, advice or instruction;

**(5)** Any health or therapeutic service treatment, advice or instruction;

**(6)** Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming;

**(7)** Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

**(8)** Body piercing services; and

**(9)** Services in the practice of pharmacy.

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering or failure to render of any professional service.

**k. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate Limit of Insurance applies to Damage To Premises Rented To You as described in Paragraph **D.** Liability And Medical Expenses Limit Of Insurance in Section **II** – Liability.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**l. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**m. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**n. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

Includes copyrighted material of the Insurance Services Office, Inc., used with its permission.     **BP 00 03 01 10**

**o. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**p. Personal And Advertising Injury**

"Personal and advertising injury":

**(1)** Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

**(2)** Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

**(3)** Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

**(4)** For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

**(5)** Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

**(6)** Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

**(7)** Arising out of the wrong description of the price of goods, products or services stated in your "advertisement";

**(8)** Committed by an insured whose business is:

　**(a)** Advertising, broadcasting, publishing or telecasting;

　**(b)** Designing or determining content of websites for others; or

　**(c)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under Paragraph **F.** Liability And Medical Expenses Definitions.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, by itself, is not considered the business of advertising, broadcasting, publishing or telecasting.

**(9)** Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time;

**(10)** With respect to any loss, cost or expense arising out of any:

　**(a)** Request, demand or order that any insured or others test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize or in any way respond to, or assess the effects of, "pollutants"; or

　**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to, or assessing the effects of, "pollutants".

**(11)** Arising out of an electronic chatroom or bulletin board the insured hosts, owns or over which the insured exercises control;

**(12)** Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**(13)** Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatags, or any other similar tactics to mislead another's potential customers.

**BUSINESSOWNER'S COVERAGE FORM**

**q. Electronic Data**

Damages arising out of the loss of, loss of use, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**r. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**s. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury", "property damage", or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c., d., e., f., g., h., i., k., l., m., n.** and **o.** in Section **II – Liability** do not apply to damage by fire to premises while rented to you, or temporarily occupied by you with permission of the owner. A separate Damage To Premises Rented To You Limit of Insurance applies to this coverage as described in Paragraph **D.** Liability And Medical Expenses Limits of Insurance in Section **II – Liability**.

**2. Applicable To Medical Expenses Coverage**

We will not pay expenses for "bodily injury":

**a.** To any insured, except "volunteer workers".

**b.** To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c.** To a person injured on that part of premises you own or rent that the person normally occupies.

**d.** To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e.** To a person injured while practicing, instructing or participating in any physical exercises or games, sports or athletic contests.

**f.** Included within the "products-completed operations hazard".

**g.** Excluded under Business Liability Coverage.

**3. Applicable To Both Business Liability Coverage And Medical Expenses Coverage – Nuclear Energy Liability Exclusion**

This insurance does not apply:

**a.** Under Business Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by the Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

**(a)** Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

**(b)** The insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**b.** Under Medical Expenses Coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**c.** Under Business Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of the "nuclear material"; if:

**(1)** The "nuclear material":

**(a)** Is at any "nuclear facility" owned by, or operated by or on behalf of, an insured; or

**(b)** Has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility"; but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property threat.

**d.** As used in this exclusion:

**(1)** "By-product material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**(2)** "Hazardous properties" include radioactive, toxic or explosive properties;

**(3)** "Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for:

**(i)** Separating the isotopes of uranium or plutonium;

**(ii)** Processing or utilizing "spent fuel"; or

**(iii)** Handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

**(4)** "Nuclear material" means "source material", "special nuclear material" or "by-product material";

**(5)** "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

**(6)** "Property damage" includes all forms of radioactive contamination of property;

**(7)** "Source material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**(8)** "Special nuclear material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**(9)** "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

**BUSINESSOWNER'S COVERAGE FORM**

**(10)**"Waste" means any waste material:

    **(a)** Containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content; and

    **(b)** Resulting from the operation by any person or organization of any "nuclear facility" included under Paragraphs **(a)** and **(b)** of the definition of "nuclear facility".

**C. Who Is An Insured**

  **1.** If you are designated in the Declarations as:

    **a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

    **b.** A partnership or joint venture, you are an insured. Your members, your partners and their spouses are also insureds, but only with respect to the conduct of your business.

    **c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

    **d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

    **e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

  **2.** Each of the following is also an insured:

    **a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

    **(1)** "Bodily injury" or "personal and advertising injury":

      **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

      **(b)** To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph **(a)** above;

      **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(a)** or **(b)**; or

      **(d)** Arising out of his or her providing or failing to provide professional health care services.

    **(2)** "Property damage" to property:

      **(a)** Owned, occupied or used by,

      **(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

    you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

    **b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

    **c.** Any person or organization having proper temporary custody of your property if you die, but only:

      **(1)** With respect to liability arising out of the maintenance or use of that property; and

      **(2)** Until your legal representative has been appointed.

    **d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**D. Liability And Medical Expenses Limits Of Insurance**

1. The Limits of Insurance of Section **II** – Liability shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   **a.** Insureds;

   **b.** Claims made or "suits" brought; or

   **c.** Persons or organizations making claims or bringing "suits".

2. The most we will pay for the sum of all damages because of all:

   **a.** "Bodily injury", "property damage" and medical expenses arising out of any one "occurrence"; and

   **b.** "Personal and advertising injury" sustained by any one person or organization;

   is the Liability and Medical Expenses limit shown in the Declarations. But the most we will pay for all medical expenses because of "bodily injury" sustained by any one person is the Medical Expenses limit shown in the Declarations.

3. The most we will pay under Business Liability Coverage for damages because of "property damage" to a premises while rented to you or in the case of fire while rented to you or temporarily occupied by you with permission of the owner is the applicable Damage To Premises Rented To You limit shown for that premises in the Declarations. For a premises temporarily occupied by you, the applicable limit will be the highest Damage To Premises Rented To You limit shown in the Declarations.

4. **Aggregate Limits**

   The most we will pay for:

   **a.** All "bodily injury" and "property damage" that is included in the "products-completed operations hazard" is twice the Liability and Medical Expenses limit.

   **b.** All:

   **(1)** "Bodily injury" and "property damage" except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard";

   **(2)** Plus medical expenses;

   **(3)** Plus all "personal and advertising injury" caused by offenses committed;

   is twice the Liability and Medical Expenses limit.

   Subject to Paragraph **a.** or **b.** above, whichever applies, the Damage To Premises Rented To You Limit is the most we will pay for damages because of "property damage" to any one premises, while rented to you, or in the case of fire, while rented to you or temporarily occupied by you with permission of the owner.

   The Limits of Insurance of Section **II** – Liability apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**E. Liability And Medical Expenses General Conditions**

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this policy.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   **(1)** How, when and where the "occurrence" or offense took place;

   **(2)** The names and addresses of any injured persons and witnesses; and

   **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

   **b.** If a claim is made or "suit" is brought against any insured, you must:

   **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

   **(2)** Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   **c.** You and any other involved insured must:

**BUSINESSOWNER'S COVERAGE FORM**

    **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

    **(2)** Authorize us to obtain records and other information;

    **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

    **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the insured because of injury or damage to which this insurance may also apply.

  **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

  **3. Legal Action Against Us**

    No person or organization has a right under this policy:

    **a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

    **b.** To sue us on this policy unless all of its terms have been fully complied with.

    A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

  **4. Separation Of Insureds**

    Except with respect to the Limits of Insurance of Section **II – Liability**, and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:

    **a.** As if each Named Insured were the only Named Insured; and

    **b.** Separately to each insured against whom claim is made or "suit" is brought.

**F. Liability And Medical Expenses Definitions**

  **1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

    **a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

    **b.** Regarding websites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

  **2.** "Auto" means:

    **a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

    **b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where it is licensed or principally garaged.

    However, "auto" does not include "mobile equipment".

  **3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

  **4.** "Coverage territory" means:

    **a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

    **b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

    **c.** All other parts of the world if the injury or damage arises out of:

      **(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

      **(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

      **(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

    provided the insured's responsibility to pay damages is determined in a "suit" on the merits in the territory described in Paragraph **a.** above or in a settlement we agree to.

  **5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   (1) The repair, replacement, adjustment or removal of "your product" or "your work"; or

   (2) Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph f. does not include that part of any contract or agreement:

   (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

   (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      (a) Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

      (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

   (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in Paragraph (2) above and supervisory, inspection or engineering services.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

    a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

    b. While it is in or on an aircraft, watercraft or "auto"; or

    c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

    but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**BUSINESSOWNER'S COVERAGE FORM**

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, on which are permanently mounted:

    **(1)** Power cranes, shovels, loaders, diggers or drills; or

    **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    **(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

    **(1)** Equipment designed primarily for:

        **(a)** Snow removal;

        **(b)** Road maintenance, but not construction or resurfacing; or

        **(c)** Street cleaning;

    **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where they are licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law or motor vehicle registration law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    **(1)** Products that are still in your physical possession; or

    **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

        **(a)** When all of the work called for in your contract has been completed.

        **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

        **(c)** When that part of the work done at the job site has been put to its intended use by any other person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

The "bodily injury" or "property damage" must occur away from premises you own or rent, unless your business includes the selling, handling or distribution of "your product" for consumption on premises you own or rent.

  **b.** Does not include "bodily injury" or "property damage" arising out of:

    **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

    **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials.

**17.** "Property damage" means:

  **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

  **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

  **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

  **a.** Means:

    **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

      **(a)** You;

      **(b)** Others trading under your name; or

      **(c)** A person or organization whose business or assets you have acquired; and

    **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

  **b.** Includes:

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    **(2)** The providing of or failure to provide warnings or instructions.

  **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

  **a.** Means:

    **(1)** Work or operations performed by you or on your behalf; and

    **(2)** Materials, parts or equipment furnished in connection with such work or operations.

  **b.** Includes:

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

    **(2)** The providing of or failure to provide warnings or instructions.

**BUSINESSOWNER'S COVERAGE FORM**

**SECTION III – COMMON POLICY CONDITIONS (APPLICABLE TO SECTION I – PROPERTY AND SECTION II – LIABILITY)**

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   **a.** Five days before the effective date of cancellation if any one of the following conditions exists at any building that is Covered Property in this policy;

   **(1)** The building has been vacant or unoccupied 60 or more consecutive days. This does not apply to:

   **(a)** Seasonal unoccupancy; or

   **(b)** Buildings in the course of construction, renovation or addition.

   Buildings with 65% or more of the rental units or floor area vacant or unoccupied are considered unoccupied under this provision.

   **(2)** After damage by a Covered Cause of Loss, permanent repairs to the building:

   **(a)** Have not started, and

   **(b)** Have not been contracted for,

   within 30 days of initial payment of loss.

   **(3)** The building has:

   **(a)** An outstanding order to vacate;

   **(b)** An outstanding demolition order; or

   **(c)** Been declared unsafe by governmental authority.

   **(4)** Fixed and salvageable items have been or are being removed from the building and are not being replaced. This does not apply to such removal that is necessary or incidental to any renovation or remodeling.

   **(5)** Failure to:

   **(a)** Furnish necessary heat, water, sewer service or electricity for 30 consecutive days or more, except during a period of seasonal unoccupancy; or

   **(b)** Pay property taxes that are owing and have been outstanding for more than one year following the date due, except that this provision will not apply where you are in a bona fide dispute with the taxing authority regarding payment of such taxes.

   **b.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium.

   **c.** 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Concealment, Misrepresentation Or Fraud**

This policy is void in any case of fraud by you as it relates to this policy at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This policy;

2. The Covered Property;

3. Your interest in the Covered Property; or

4. A claim under this policy.

**D. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

### E. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe and healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

### F. Insurance Under Two Or More Coverages

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

### G. Liberalization

If we adopt any revision that would broaden the coverage under this policy without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this policy.

### H. Other Insurance

1. If there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance of Section I – Property.

2. Business Liability Coverage is excess over:

   a. Any other insurance that insures for direct physical loss or damage; or

   b. Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

3. When this insurance is excess, we will have no duty under Business Liability Coverage to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

### I. Premiums

1. The first Named Insured shown in the Declarations:

   a. Is responsible for the payment of all premiums; and

   b. Will be the payee for any return premiums we pay.

2. The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

3. With our consent, you may continue this policy in force by paying a continuation premium for each successive one-year period. The premium must be:

   a. Paid to us prior to the anniversary date; and

   b. Determined in accordance with Paragraph 2. above.

   Our forms then in effect will apply. If you do not pay the continuation premium, this policy will expire on the first anniversary date that we have not received the premium.

4. Undeclared exposures or change in your business operation, acquisition or use of locations may occur during the policy period that are not shown in the Declarations. If so, we may require an additional premium. That premium will be determined in accordance with our rates and rules then in effect.

### J. Premium Audit

1. This policy is subject to audit if a premium designated as an advance premium is shown in the Declarations. We will compute the final premium due when we determine your actual exposures.

 Includes copyrighted material of the Insurance Services Office, Inc., used with its permission.

**BUSINESSOWNER'S COVERAGE FORM**

2. Premium shown in this policy as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

3. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**K. Transfer Of Rights Of Recovery Against Others To Us**

1. Applicable to Businessowners Property Coverage:

If any person or organization to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

a. Prior to a loss to your Covered Property.

b. After a loss to your Covered Property only if, at time of loss, that party is one of the following:

(1) Someone insured by this insurance;

(2) A business firm:

(a) Owned or controlled by you; or

(b) That owns or controls you; or

(3) Your tenant.

You may also accept the usual bills of lading or shipping receipts limiting the liability of carriers.

This will not restrict your insurance.

2. Applicable to Businessowners Liability Coverage:

If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them. This condition does not apply to Medical Expenses Coverage.

**L. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

# EXHIBIT B



**Berkshire Hathaway**
**GUARD** Insurance
Companies

P.O. Box 1368
**Wilkes-Barre, PA 18703-1368**
**Toll-Free 800-673-2465**
**FAX 570-825-0611**
**www.guard.com**

February 4, 2022

ZNT, LLC
145 Honey Ln
Fayetteville, GA 30214-4256

| | |
|---|---|
| Policyholder: | ZNT, LLC |
| Policy No.: | ZNBP151318 |
| Policy Period: | June 19, 2020 to June 19, 2021 |
| Claim No.: | ZNBP151318-001-001-001 |
| Date of Loss: | 03/25/2021 |
| Carrier: | AmGUARD Insurance Company |

Dear Policyholder:

The undersigned represents the interests of AmGUARD Insurance Company ("AmGUARD") relative to the above-referenced claim, receipt of which is hereby acknowledged. You have reported a claim for damage to your hot water tank and boiler. AmGUARD understands that in reporting this claim, ZNT, LLC is seeking coverage and indemnification for the claim under AmGUARD Policy ZNBP151318.

This letter is to advise you that based upon careful review of the facts surrounding this loss, and the terms, conditions, limitations, exclusions and/or endorsements of the Policy, we have concluded that there is no coverage afforded under AmGUARD Policy ZNBP151318. Accordingly, for the reasons set forth in greater detail below, AmGUARD Insurance Company respectfully disclaims any duty to indemnify ZNT, LLC for any loss and/or damage related to this claim.

### The Claim

You have reported that on or about 11/09/2021, roof damages from windstorm on 03/25/2021.

### The Policy

AmGUARD Insurance Company issued Businessowner's Policy ZNBP151318 (the "Policy") to ZNT, LLC. The Policy period is from June 19, 2020 to June 19, 2021. The Policy is an "Occurrence" Policy, which provides Business Property and Business Liability coverage for covered claims occurring during the Policy Period. The Policy is subject to all terms, conditions, limitations, and exclusions contained therein. To illustrate the reason for our denial of coverage in this matter we direct your attention to pertinent policy provisions.  The policy must be read in its entirety, but we provide the following relevant sections in whole or part for convenience.

We first direct your attention to the following Policy provisions in the **Businessowner's Coverage Form (BP 00 03 01 10)**:

*SECTION I – PROPERTY*
  *A. Coverage*

*We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.*

1. **Covered Property**

   *Covered Property includes Building as described under Paragraph **a.** below, Business Personal Property as described under Paragraph **b.** below, or both, depending on whether a Limit of Insurance is shown in the Declarations for that type of property. Regardless of whether coverage is shown in the Declarations for Buildings, Business Personal Property, or both, there is no coverage for property described under Paragraph **2**. Property Not Covered.*

3. **Covered Causes of Loss**

   *Risks of direct physical loss unless the loss is:*
   *a. Excluded in Paragraph **B**. Exclusions in Section **I**; or*
   *b. Limited in Paragraph **4**. Limitations in Section **I**.*

4. **Limitations**

   *a. We will not pay for loss of or damage to:*

      ***(5)*** *The interior of any building or structure caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:*

         ***(a)*** *The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or*

         ***(b)*** *The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.*

We also refer you to Page 14 of 48:

**B. Exclusions**

1. *We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.*

   **g. Water**

      ***(1)*** *Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);*

      ***(3)*** *Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;*

      ***(4)*** *Water under the ground surface pressing on, or flowing or seeping through:*

         ***(a)*** *Foundations, walls, floors or paved surfaces;*

         ***(b)*** *Basements, whether paved or not; or*

         ***(c)*** *Doors, windows or other openings; or*

   *This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5)**, is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.*

      **2.** *We will not pay for loss or damage caused by or resulting from any of the following:*

**k. Neglect**
Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

**l. Other Types of Losses**
**(1)** Wear and Tear;
**(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;
**(4)** Settling, cracking, shrinking, or expansion

**P. Continuous Or Repeated Seepage or Leakage of Water**
Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

**3.** We will not pay for loss or damage caused by or resulting from any of the following Paragraphs **a.** through **c.** But if an excluded cause of loss that is listed in Paragraphs **a.** through **c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Loss.

**c. Negligent Work**
Faulty, inadequate or defective:
**(1)** Planning, zoning, development, surveying, siting;
**(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
**(3)** Materials used in repair, construction, renovation or remodeling; or
**(4)** Maintenance;
of part or all of any property on or off the described premises.

Our joint investigation with Engle Martin & Associates and ProNet Group, Inc. has revealed there is no coverage for alleged damages. Per the Engineer's report, approximately 62 creased/torn/missing shingles distributed across eight different roof slopes are consistent with mechanical damage by a person or persons unknown and were not the result of wind. The overall condition of the composition shingles is the result of normal age-related deterioration occurring over the installed service life of the roof covering and the quality of materials and workmanship used during the initial installation. The scattered water-stained ceiling tiles are the result of roof leaks at various anomalies on the roof and from various mechanical/plumbing components routed through the attic space. The stains have developed over a period of time (several months), and there is no storm created openings in the building envelope that caused or contributed to the stained ceiling tiles.

Please refer to the Policy language above, which specifically limits or excludes damages when there is not a covered cause of loss. In this case, the damage and leaking was due to the deterioration, mechanical damages, and negligent work. As stated above wear and tear, deterioration, repeated water seepage, negligent work, and no storm created openings are limited and excluded under the policy and AmGUARD will not pay for any loss and/or damage due to same.

Due to, but not necessarily limited to the foregoing Policy coverage and/or definitions, we must respectfully conclude that AmGUARD's Businessowner's Coverage Form does not provide coverage for the subject claim. This denial decision is by way of illustration rather than limitation. The specificity of this denial is not to be construed as a waiver or modification of the terms, conditions,

3

exclusions or limitations of the insurance contract upon which a claim has been made or a waiver of any defenses, which may be available to AmGUARD, all of which are specifically reserved.

Please also be referred to **page 22 of 48** of the Policy, which states:

> **4. Legal Action Against Us**
> *No one may bring a legal action against us under this insurance unless:*
> *a. There has been full compliance with all of the terms of this insurance; and*
> *b. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.*

AmGUARD expressly reserves its right to supplement this letter by raising additional defenses to coverage and asserts all defenses based upon law or Policy terms and conditions, exclusions and /or limitations of the Policy, either during the course of any inquiry into the facts relating to this claim or in any future litigation or proceeding pertaining to insurance coverage in this matter. No actions heretofore or hereinafter taken by AmGUARD Insurance Company shall be constructed as either a waiver of its Policy provisions or its rights thereunder, all of which are hereby reserved.

If you believe our determination was based on information or documentation that is in error, please advise us in writing immediately, and we will promptly reconsider our determination. You may also take this matter up with the Georgia Office of Insurance and Safety Fire Commissioner, Two Martin Luther King, Jr. Drive, West Tower, Suite 704, Atlanta, Georgia 30334 or by phone at 1-(800)-656-2298 or on the web at https://www.oci.ga.gov/.

Thank you for your cooperation during the course of our investigation.  If you have any questions regarding anything in this letter or additional information that you would like to bring to our attention, please do not hesitate to contact the undersigned.

Waiving none, but in all other respects, reserving the rights and defenses of AmGUARD Insurance Company, I remain.


Respectfully,

Darren Heiser
PROPERTY & CASUALTY CLAIMS ADJUSTER

**CC:**

**GWINNETT INSURANCE ASSOCIATES INC.**
**250 Langley Drive**
**Suite 1101**
**Lawrenceville, GA 30046**

4

# EXHIBIT C



**HUGGINS** LAW FIRM

**Michael D. Turner, Esq.**
110 Norcross Street
Roswell, GA 30075
mdturner@lawhuggins.com
(770) 913-6229

November 16, 2022

AmGUARD Insurance Company
P.O. Box A-H
39 Public Square
Wilkes-Barre, PA 18703

**Sent Via email:**
claims@GUARD.com

Re:    Named Insured(s):    ZNT, LLC
        Policy Number:      ZNBP151318
        Claim Number:      ZNBP151318-001-001-001
        Date of Loss:       March 25, 2021

To Whom it May Concern:

I have been retained by ZNT, LLC ("Your Insured") to represent them regarding the above referenced property insurance claim. All further communication regarding this claim should be directed to my office.

Please also accept this letter as a formal demand for a **certified copy of the relevant insurance policy, to include the original policy, any renewals, and any endorsements.** We also request a copy of any and all repair estimates drafted to date, **as well as a payment sheet or payment log detailing all insurance proceeds issued to date for this claim.**

My client has complied with all conditions contained in the insurance policy. My client is at a loss as to why AmGUARD Insurance Company ("AmGUARD") has not afforded the proper coverage under the applicable policy. This lack of good faith has forced Your Insured to retain my legal services in order to fairly settle their claim. It is our belief that AmGUARD has violated the Unfair Claims Settlement Practice Act pursuant to O.C.G.A. § 33-6-34 and has breached the insurance policy.

Bad faith claims handling triggers additional liability on your part under O.C.G.A. § 33-4-6 that includes the amount of the claim, plus a penalty of an additional fifty percent (50%) of the value of the claim and reasonable attorneys' fees and costs.

Therefore, per the enclosed spreadsheets of damages to Your Insured's property, we are hereby making formal demand that you settle the above claim for the sum of **$92,997.41, less previous payments and the applicable deductible.** The invoice & estimate of damages is attached for your review. This demand is being made pursuant to O.C.G.A. § 33-4-6, and you have sixty (60) days in which to make payment on this claim or be subject to a lawsuit containing a claim for breach of contract and bad faith seeking all compensation allowed by law, including attorneys' fees and a penalty of fifty percent (50%) of the loss amount.

To: AmGUARD Insurance Company
Client: ZNT, LLC
November 16, 2022
Page **2** of **2**

This letter constitutes a "proper demand" for payment under O.C.G.A. § 33-4-6. If you contend that a proper demand has not been made, you must immediately notify us of the reasons for such allegation. Otherwise, it will be assumed you agree this letter constitutes a proper demand.

The purpose of this correspondence is to encourage AmGUARD to resolve Your Insured's claim in a fair and equitable manner in hopes of avoiding litigation. If you fail to respond to this letter with an offer of settlement that is acceptable to Your Insured, we will have no alternative other than recommending to Your Insured that a lawsuit be filed against you.

Payment must be received in my office within sixty (60) days of your receipt of this letter in order to avoid a suit for bad faith penalties and attorney's fees. Any check issued should list Huggins Law Firm, LLC as sole payee. Any objection to these payment terms shall be submitted in writing to Huggins Law Firm, LLC within 10 days of receipt of this letter.

I look forward to working with you to resolve this matter quickly and amicably. Please feel free to contact me should you have any questions regarding this formal 60-day demand. Should you have any questions or concerns, please reach out to me at mdturner@lawhuggins.com or by phone at (770) 913-6229.

Sincerely,

Michael D. Turner, Esq.
Attorney at Law

MDT/aak
Encl.

 **Premier-Claims**

120 Regency Parkway, Suite 115
Omaha, NE 68114
T: (877) 219-0049
F: (404) 865-3642

| | | | |
|---|---|---|---|
| Insured: | ZNT LLC c/o Nadir Tejani | | |
| Property: | 1239 Robinson Rd | | |
| | Peachtree City, GA 30269 | | |

| | | | |
|---|---|---|---|
| Claim Rep.: | Premier Claims | Business: | (877) 219-0049 |
| Estimator: | Premier Claims | Business: | (877) 219-0049 |

**Claim Number:** ZNBP151318-001-001-001    **Policy Number:** ZNBP241581    **Type of Loss:** Wind Damage

| | | | |
|---|---|---|---|
| Date of Loss: | 3/25/2021 | Date Received: | |
| Date Inspected: | | Date Entered: | 11/11/2021 4:46 PM |

| | |
|---|---|
| Price List: | GAAT8X_NOV21 |
| | Restoration/Service/Remodel |
| Estimate: | ZNT_LLC_NADIR |

This estimate was created in order to return the insured to a pre-loss condition. Premier Claims reserves the right to make any changes to this estimate at any time during our representation of the insured. Should you have any questions or concerns, please direct all communication to the Premier Claims Office.

 **Premier-Claims**

120 Regency Parkway, Suite 115
Omaha, NE 68114
T: (877) 219-0049
F: (404) 865-3642

### ZNT_LLC_NADIR

### Main Level

**Main Level**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 1. Temporary toilet - Minimum rental charge | 1.00 EA | 98.00 | 0.00 | 19.60 | 117.60 | (0.00) | 117.60 |
| 2. Commercial Supervision / Project Management - per hour | 20.00 HR | 73.05 | 0.00 | 292.20 | 1,753.20 | (0.00) | 1,753.20 |
| 3. Taxes, insurance, permits & fees (Bid Item) | 1.00 EA | | | | | | OPEN ITEM |
| 4. Single axle dump truck - per load - including dump fees | 1.00 EA | 264.54 | 0.00 | 52.90 | 317.44 | (0.00) | 317.44 |
| 5. Roofer - per hour | 16.00 HR | 119.01 | 0.00 | 380.84 | 2,285.00 | (0.00) | 2,285.00 |
| Protect landscape/drive, set up staging area, load/unload material to roof, and general clean up | | | | | | | |
| 6. Final cleaning - construction - Commercial | 1,961.42 SF | 0.19 | 0.00 | 74.54 | 447.21 | (0.00) | 447.21 |
| 7. Rental equipment delivery / mobilization (Bid item) | 2.00 EA | 150.00 | 0.00 | 60.00 | 360.00 | (0.00) | 360.00 |
| 8. Telehandler/forklift (per week) - no operator | 1.00 WK | 1,198.89 | 0.00 | 239.78 | 1,438.67 | (0.00) | 1,438.67 |
| 9. Telehandler/forklift and operator | 40.00 HR | 112.39 | 0.00 | 899.12 | 5,394.72 | (0.00) | 5,394.72 |
| 10. Barricade/warning sign/traffic cone - Min. equip. charge | 1.00 EA | 52.50 | 0.00 | 10.50 | 63.00 | (0.00) | 63.00 |
| 11. Barricade and warning device - setup and takedown | 6.00 HR | 56.84 | 0.00 | 68.20 | 409.24 | (0.00) | 409.24 |
| **Total: Main Level** | | | **0.00** | **2,097.68** | **12,586.08** | **0.00** | **12,586.08** |



**Roof**

| | |
|---|---|
| 9556.14 Surface Area | 95.56 Number of Squares |
| 632.72 Total Perimeter Length | 194.97 Total Ridge Length |
| 238.83 Total Hip Length | |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 12. Tear off, haul and dispose of comp. shingles - Laminated | 95.56 SQ | 135.03 | 0.00 | 2,580.70 | 15,484.17 | (0.00) | 15,484.17 |
| 13. Laminated - comp. shingle rfg. - w/ felt | 105.33 SQ | 249.91 | 818.78 | 5,428.36 | 32,570.16 | (0.00) | 32,570.16 |
| 14. Asphalt starter - peel and stick | 632.72 LF | 1.84 | 23.47 | 237.54 | 1,425.21 | (0.00) | 1,425.21 |
| 15. R&R Drip edge | 632.72 LF | 3.48 | 49.61 | 450.30 | 2,701.77 | (0.00) | 2,701.77 |
| 16. Seal & paint trim - two coats | 632.72 LF | 1.40 | 5.32 | 178.22 | 1,069.35 | (0.00) | 1,069.35 |
| 17. Roofing felt - 15 lb. | 95.56 SQ | 30.06 | 40.54 | 582.60 | 3,495.67 | (0.00) | 3,495.67 |
| 18. Roofing felt - 30 lb. | 95.56 SQ | 35.04 | 73.85 | 684.46 | 4,106.73 | (0.00) | 4,106.73 |



**Premier-Claims**

120 Regency Parkway, Suite 115
Omaha, NE 68114
T: (877) 219-0049
F: (404) 865-3642

### CONTINUED - Roof

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 19. R&R Continuous ridge vent - shingle-over style | 194.97 LF | 10.60 | 45.86 | 422.52 | 2,535.06 | (0.00) | 2,535.06 |
| 20. Gutter / downspout - Detach & reset | 394.32 LF | 5.29 | 0.00 | 417.20 | 2,503.15 | (0.00) | 2,503.15 |
| 21. R&R Valley metal | 231.12 LF | 6.93 | 32.84 | 326.88 | 1,961.38 | (0.00) | 1,961.38 |
| 22. Remove Additional charge for high roof (2 stories or greater) | 95.56 SQ | 13.88 | 0.00 | 265.28 | 1,591.65 | (0.00) | 1,591.65 |
| 23. Additional charge for high roof (2 stories or greater) | 95.56 SQ | 18.67 | 0.00 | 356.82 | 2,140.93 | (0.00) | 2,140.93 |
| 24. Remove Additional charge for steep roof - 7/12 to 9/12 slope | 7.82 SQ | 36.70 | 0.00 | 57.40 | 344.39 | (0.00) | 344.39 |
| 25. Additional charge for steep roof - 7/12 to 9/12 slope | 7.82 SQ | 42.27 | 0.00 | 66.12 | 396.67 | (0.00) | 396.67 |
| 26. R&R Ridge cap - Standard profile - composition shingles | 433.80 LF | 7.66 | 69.84 | 678.54 | 4,071.28 | (0.00) | 4,071.28 |
| 27. R&R Flashing - L flashing - galvanized | 52.00 LF | 5.43 | 5.35 | 57.56 | 345.27 | (0.00) | 345.27 |
| 28. Step flashing | 20.00 LF | 9.18 | 2.16 | 37.16 | 222.92 | (0.00) | 222.92 |
| 29. R&R Flashing - pipe jack | 4.00 EA | 61.74 | 3.66 | 50.14 | 300.76 | (0.00) | 300.76 |
| 30. R&R Flashing - kick-out diverter | 16.00 EA | 37.54 | 13.38 | 122.80 | 736.82 | (0.00) | 736.82 |
| 31. R&R Furnace vent - rain cap and storm collar, 5" | 1.00 EA | 84.17 | 1.40 | 17.12 | 102.69 | (0.00) | 102.69 |
| 32. Digital satellite system - Detach & reset | 1.00 EA | 34.16 | 0.00 | 6.84 | 41.00 | (0.00) | 41.00 |
| 33. Digital satellite system - alignment and calibration only | 1.00 EA | 102.46 | 0.00 | 20.50 | 122.96 | (0.00) | 122.96 |
| 34. Remove Weathervane * | 1.00 EA | 39.39 | 0.00 | 7.88 | 47.27 | (0.00) | 47.27 |
| 35. Install Weathervane * | 1.00 EA | 210.03 | 0.00 | 42.00 | 252.03 | (0.00) | 252.03 |
| 36. Detach & Reset Gutter guard/screen | 394.32 LF | 3.43 | 0.00 | 270.50 | 1,623.02 | (0.00) | 1,623.02 |
| Needs d/r to change out drip, see photo | | | | | | | |
| **Totals: Roof** | | | **1,186.06** | **13,365.44** | **80,192.31** | **0.00** | **80,192.31** |
| **Total: Main Level** | | | **1,186.06** | **15,463.12** | **92,778.39** | **0.00** | **92,778.39** |

### Labor Minimums Applied

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 37. Heat, vent, & air cond. labor minimum | 1.00 EA | 180.93 | 0.00 | 36.18 | 217.11 | (0.00) | 217.11 |
| 38. Temporary repair services labor minimum | 1.00 EA | 1.59 | 0.00 | 0.32 | 1.91 | <0.00> | 1.91 |

 **Premier-Claims**

120 Regency Parkway, Suite 115
Omaha, NE 68114
T: (877) 219-0049
F: (404) 865-3642

**CONTINUED - Labor Minimums Applied**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| **Totals: Labor Minimums Applied** | | | 0.00 | 36.50 | 219.02 | 0.00 | 219.02 |
| **Line Item Totals: ZNT_LLC_NADIR** | | | 1,186.06 | 15,499.62 | 92,997.41 | 0.00 | 92,997.41 |

## Grand Total Areas:

| | | | |
|---|---|---|---|
| 0.00 SF Walls | 0.00 SF Ceiling | 0.00 SF Walls and Ceiling |
| 0.00 SF Floor | 0.00 SY Flooring | 0.00 LF Floor Perimeter |
| 0.00 SF Long Wall | 0.00 SF Short Wall | 0.00 LF Ceil. Perimeter |
| | | |
| 0.00 Floor Area | 0.00 Total Area | 0.00 Interior Wall Area |
| 1,245.93 Exterior Wall Area | 0.00 Exterior Perimeter of Walls | |
| | | |
| 9,556.14 Surface Area | 95.56 Number of Squares | 632.72 Total Perimeter Length |
| 194.97 Total Ridge Length | 238.83 Total Hip Length | |

 **Premier-Claims**

120 Regency Parkway, Suite 115
Omaha, NE 68114
T: (877) 219-0049
F: (404) 865-3642

## Summary for Dwelling

| | |
|---|---:|
| Line Item Total | 76,311.73 |
| Material Sales Tax | 1,186.06 |
| Subtotal | 77,497.79 |
| Overhead | 7,749.81 |
| Profit | 7,749.81 |
| **Replacement Cost Value** | **$92,997.41** |
| **Net Claim** | **$92,997.41** |

Premier Claims

 **Premier-Claims**

120 Regency Parkway, Suite 115
Omaha, NE 68114
T: (877) 219-0049
F: (404) 865-3642

## Recap of Taxes, Overhead and Profit

| | Overhead (10%) | Profit (10%) | Material Sales Tax (7%) | Storage Rental Tax (7%) | Local Food Tax (3%) |
|---|---|---|---|---|---|
| **Line Items** | 7,749.81 | 7,749.81 | 1,186.06 | 0.00 | 0.00 |
| **Total** | 7,749.81 | 7,749.81 | 1,186.06 | 0.00 | 0.00 |

 **Premier-Claims**

120 Regency Parkway, Suite 115
Omaha, NE 68114
T: (877) 219-0049
F: (404) 865-3642

## Recap by Room

**Estimate: ZNT_LLC_NADIR**

| | | |
|---|---:|---:|
| **Area: Main Level** | 10,488.40 | 13.74% |
| Roof | 65,640.81 | 86.02% |
| Area Subtotal: Main Level | 76,129.21 | 99.76% |
| Labor Minimums Applied | 182.52 | 0.24% |
| **Subtotal of Areas** | 76,311.73 | 100.00% |
| **Total** | 76,311.73 | 100.00% |

 **Premier-Claims**

120 Regency Parkway, Suite 115
Omaha, NE 68114
T: (877) 219-0049
F: (404) 865-3642

## Recap by Category

| O&P Items | Total | % |
|---|---:|---:|
| CLEANING | 372.67 | 0.40% |
| GENERAL DEMOLITION | 17,627.23 | 18.95% |
| ELECTRICAL - SPECIAL SYSTEMS | 102.46 | 0.11% |
| HEAVY EQUIPMENT | 5,994.49 | 6.45% |
| HEAT,  VENT & AIR CONDITIONING | 241.92 | 0.26% |
| LABOR ONLY | 1,461.00 | 1.57% |
| PAINTING | 885.81 | 0.95% |
| ROOFING | 45,484.52 | 48.91% |
| SOFFIT, FASCIA, & GUTTER | 3,438.47 | 3.70% |
| SPECIALTY ITEMS | 210.03 | 0.23% |
| TEMPORARY REPAIRS | 493.13 | 0.53% |
| O&P Items Subtotal | 76,311.73 | 82.06% |
| Material Sales Tax | 1,186.06 | 1.28% |
| Overhead | 7,749.81 | 8.33% |
| Profit | 7,749.81 | 8.33% |
| Total | 92,997.41 | 100.00% |

 **Premier-Claims**

120 Regency Parkway, Suite 115
Omaha, NE 68114
T: (877) 219-0049
F: (404) 865-3642



1     1-1-Nov 01, 2021 14-58-42-DQqk   Date Taken: 11/1/2021

 **Premier-Claims**

120 Regency Parkway, Suite 115
Omaha, NE 68114
T: (877) 219-0049
F: (404) 865-3642



2      2-5-Nov 01, 2021 14-59-16-qrky      Date Taken: 11/1/2021



**Premier-Claims**

120 Regency Parkway, Suite 115
Omaha, NE 68114
T: (877) 219-0049
F: (404) 865-3642



3     3-7-Nov 01, 2021 14-59-19-MZXc   Date Taken: 11/1/2021



**Premier-Claims**

120 Regency Parkway, Suite 115
Omaha, NE 68114
T: (877) 219-0049
F: (404) 865-3642



4       4-12-Nov 01, 2021 14-59-26-Yp88   Date Taken: 11/1/2021



**Premier-Claims**

120 Regency Parkway, Suite 115
Omaha, NE 68114
T: (877) 219-0049
F: (404) 865-3642



5      5-13-Nov 01, 2021 14-59-33-          Date Taken: 11/1/2021
        YNYD

 **Premier-Claims**

120 Regency Parkway, Suite 115
Omaha, NE 68114
T: (877) 219-0049
F: (404) 865-3642



6    6-28-Nov 01, 2021 15-00-32-Ssb2   Date Taken: 11/1/2021



**Premier-Claims**

120 Regency Parkway, Suite 115
Omaha, NE 68114
T: (877) 219-0049
F: (404) 865-3642



7        7-30-Nov 01, 2021 15-00-35-2uXc   Date Taken: 11/1/2021



**Premier-Claims**

120 Regency Parkway, Suite 115
Omaha, NE 68114
T: (877) 219-0049
F: (404) 865-3642



8       8-32-Nov 01, 2021 15-00-40-FSQg   Date Taken: 11/1/2021



**Premier-Claims**

120 Regency Parkway, Suite 115
Omaha, NE 68114
T: (877) 219-0049
F: (404) 865-3642



9        9-34-Nov 01, 2021 15-01-23-ynkN    Date Taken: 11/1/2021



**Premier-Claims**

120 Regency Parkway, Suite 115
Omaha, NE 68114
T: (877) 219-0049
F: (404) 865-3642



10      10-35-Nov 01, 2021 15-01-25-        Date Taken: 11/1/2021
        ggVv



**Premier-Claims**

120 Regency Parkway, Suite 115
Omaha, NE 68114
T: (877) 219-0049
F: (404) 865-3642



11    11-36-Nov 01, 2021 15-01-30-    Date Taken: 11/1/2021
akQG



**Premier-Claims**

120 Regency Parkway, Suite 115
Omaha, NE 68114
T: (877) 219-0049
F: (404) 865-3642



12      12-45-Nov 01, 2021 15-38-43-        Date Taken: 11/1/2021
        dbxH



**Premier-Claims**

120 Regency Parkway, Suite 115
Omaha, NE 68114
T: (877) 219-0049
F: (404) 865-3642



13      13-53-Nov 01, 2021 15-42-19-      Date Taken: 11/1/2021
        5BXf

 **Premier-Claims**

120 Regency Parkway, Suite 115
Omaha, NE 68114
T: (877) 219-0049
F: (404) 865-3642



14      14-54-Nov 01, 2021 15-42-21-        Date Taken: 11/1/2021
        yeDW



**Premier-Claims**

120 Regency Parkway, Suite 115
Omaha, NE 68114
T: (877) 219-0049
F: (404) 865-3642



15      15-56-Nov 01, 2021 15-42-25-        Date Taken: 11/1/2021
        k7we



**Premier-Claims**

120 Regency Parkway, Suite 115
Omaha, NE 68114
T: (877) 219-0049
F: (404) 865-3642



16    16-57-Nov 01, 2021 15-42-27-     Date Taken: 11/1/2021
      3CcN

 **Premier-Claims**

120 Regency Parkway, Suite 115
Omaha, NE 68114
T: (877) 219-0049
F: (404) 865-3642



17      17-102-Nov 01, 2021 15-45-16-      Date Taken: 11/1/2021
        S3Rx



**Premier-Claims**

120 Regency Parkway, Suite 115
Omaha, NE 68114
T: (877) 219-0049
F: (404) 865-3642



18      18-110-Nov 01, 2021 15-45-33-      Date Taken: 11/1/2021
         NE9y



**Premier-Claims**

120 Regency Parkway, Suite 115
Omaha, NE 68114
T: (877) 219-0049
F: (404) 865-3642



19      19-127-Nov 01, 2021 15-46-37-      Date Taken: 11/1/2021
        GGaH



**Premier-Claims**

120 Regency Parkway, Suite 115
Omaha, NE 68114
T: (877) 219-0049
F: (404) 865-3642



20      20-128-Nov 01, 2021 15-46-43-        Date Taken: 11/1/2021
        kufh

 **Premier-Claims**

120 Regency Parkway, Suite 115
Omaha, NE 68114
T: (877) 219-0049
F: (404) 865-3642



21      21-130-Nov 01, 2021 15-46-47-        Date Taken: 11/1/2021
        5GE9



**Premier-Claims**

120 Regency Parkway, Suite 115
Omaha, NE 68114
T: (877) 219-0049
F: (404) 865-3642



22      22-131-Nov 01, 2021 15-46-51-        Date Taken: 11/1/2021
        Walz

 **Premier-Claims**

120 Regency Parkway, Suite 115
Omaha, NE 68114
T: (877) 219-0049
F: (404) 865-3642



23      23-132-Nov 01, 2021 15-46-53-        Date Taken: 11/1/2021
        MnYC



**Premier-Claims**

120 Regency Parkway, Suite 115
Omaha, NE 68114
T: (877) 219-0049
F: (404) 865-3642



24      24-145-Nov 01, 2021 15-47-33-      Date Taken: 11/1/2021
         agRg



**Premier-Claims**

120 Regency Parkway, Suite 115
Omaha, NE 68114
T: (877) 219-0049
F: (404) 865-3642



25     25-146-Nov 01, 2021 15-47-39-        Date Taken: 11/1/2021
       DJw2



**Premier-Claims**

120 Regency Parkway, Suite 115
Omaha, NE 68114
T: (877) 219-0049
F: (404) 865-3642



26      26-147-Nov 01, 2021 15-47-42-      Date Taken: 11/1/2021
        HGdT

 **Premier-Claims**

120 Regency Parkway, Suite 115
Omaha, NE 68114
T: (877) 219-0049
F: (404) 865-3642



27      27-148-Nov 01, 2021 15-47-48-        Date Taken: 11/1/2021
        DDyu

 **Premier-Claims**

120 Regency Parkway, Suite 115
Omaha, NE 68114
T: (877) 219-0049
F: (404) 865-3642



28      28-150-Nov 01, 2021 15-47-50-      Date Taken: 11/1/2021
        Y2h3



**Premier-Claims**

120 Regency Parkway, Suite 115
Omaha, NE 68114
T: (877) 219-0049
F: (404) 865-3642



29      29-159-Nov 01, 2021 15-48-24-        Date Taken: 11/1/2021
        yKae

IN THE SUPERIOR COURT OF GWINNETT COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| ZNT, LLC, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION FILE NO.:** |
| | ) | <u>23-A-01070-2</u> |
| AMGUARD INSURANCE COMPANY, | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

### PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS DIRECTED TO DEFENDANT

COMES NOW, Plaintiff, **ZNT, LLC**, by and through the undersigned counsel, and hereby propounds the following First Set of Interrogatories and Request for Production of Documents to the Defendant, **AmGUARD Insurance Company**, to be answered separately and fully, in writing, under oath, and in accordance with the Georgia Civil Practice Act, O.C.G.A. §§ 9-11-33 and 9-11-34.

### GENERAL INSTRUCTIONS

1. You are required to answer and verify the following interrogatories and requests for production of documents within forty-five (45) days of the date of service.

2. Each paragraph below shall operate and be construed independently; and, unless otherwise indicated, no paragraph limits the scope of any other paragraph.

3. In answering these discovery requests, you are required to furnish all information available to You (not merely such information as you know of your own personal knowledge), including information in the possession of your attorneys and accountants, other persons directly or indirectly employed by or connected with you or your attorneys or accountants, or anyone else acting on your behalf or otherwise subject to your control.

Page | 1

4. Your obligation to answer these discovery requests is intended to be continuing in nature; therefore, you are required by O.C.G.A. § 9-11-26 and instructed by the Plaintiff to reasonably & promptly amend or supplement your response if you learn that any prior response is in some material respect incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to Plaintiff during the discovery process or in writing.

5. You are instructed that a failure by you to make, amend, or supplement a response in a timely manner or to otherwise comply with O.C.G.A. § 9-11-26 may result in sanctions against You.

6. The singular includes the plural number, and vice versa. The masculine includes the feminine and neutral genders. The past tense includes the present tense where the clear meaning is distorted by a change of tense.

7. Each document request shall be deemed to call for the production of the original document or documents. If the original is not available, then a copy shall be produced if it differs in any respect from the original or from other copies (e.g., by reason of handwritten, typed, or printed notes or comments having been added to the copy that do not appear on the original).

8. If a request seeks a document that, to your knowledge, does not exist, please state that the document does not exist.

9. Without interfering with the readability of a document, please identify by Bates number or other means the request(s) to which the document is responsive.

10. For each document responsive to any request that is withheld under a claim of privilege, you are required by Uniform Superior Court Rule 5.5 to provide a privilege log containing the following information:

   a.  The date the document was prepared or created;

   b.  The name and title of the author or authors of the document;

   a.  A summary of the subject matter of the document;

   b.  The identity of each person or persons (other than those giving solely stenographic or clerical assistance) who assisted the author or authors in creating the document;

   c.  The identity of each person to whom the document or the contents of the document have been communicated (either intentionally or inadvertently), the date(s) of such communication, the title of each such person, and the date of such communication;

   d.  A statement of the basis on which privilege is claimed; and

   e.  The identity and title, if any, of the person or persons providing the information requested in subsections (a) through (f) above.

## **DEFINITIONS**

As used in these interrogatories, the terms listed below are defined as follows:

1.  "Document(s)" or "documentation" means any writing of any kind, including originals and all non-identical copies (whether different from the originals by reason of any notation made on such copies or otherwise), including without limitation correspondence, memoranda, notes, desk calendars, diaries, statistics, letters, telegrams, minutes, contracts, reports, studies, checks, invoices, statements, receipts, returns, warranties, guaranties, summaries, pamphlets, books, prospectuses, interoffice and intra-office communications, offers, notations of any sort of conversation, telephone calls, meetings or other

communications, bulletins, magazines, publications, printed matter, photographs, computer printouts, teletypes, faxes, invoices, worksheets and all drafts, alterations, modifications, changes and amendments of any of the foregoing, tapes, tape recordings, transcripts, graphic or aural records or representations of any kind, memorialized depictions of the Property or of Communications relating to the Claim, and electronic, mechanical or electric records or representations of any kind which You have knowledge or which are now or were formally in your actual or constructive possession, custody or control.

2. "Claim" or "Policyholder's Claim" shall refer to Claim No. ZNBP151318-001-001-001, which was drafted by the Insurance Company and issued to the Policyholder for direct physical loss or direct physical damage to the Property.

3. "Communication" shall mean and include any oral or written utterance, notation, or statement of any nature whatsoever, including but not limited to correspondence, personal conversation, telephone calls, dialogues, discussions, interviews, consultations, telegrams, telexes, cables, memoranda, agreements, notes, and oral, written, or other understandings or agreements. This shall include all written, recorded, or signed statements of any party, including the Policyholder, any adjuster, subcontractor, witnesses, investigators, or agents, representative, or employee of the parties concerning the subject matter of this action.

4. "Identify" shall mean:

    a.  when used to refer to a document, means to state the following:

        1. The subject of the document;

        2. The title of the document;

        3. The type of document (e.g., letter, memorandum, telegram, chart);

4. The date of the document, or if the specific date thereof is unknown, the month and year or other best approximation of such date with reference to other events;

5. The identity of the person or persons who wrote, contributed to, prepared or originated such document; and

6. The present or last known location and custodian of the document.

b.  when used in reference to a *person*, "identify" means to state to the fullest extent possible the person's name, present or last known address, present or last known telephone number(s), and, if a natural person, the person's employer and position of employment at the time(s) in question.

c.  when used in reference to a *conversation* or *communication*, "identify" means to state the date and length of the communication, the identity of all parties to the communication, the identity of all other witnesses to the communication, the place where the communication took place (if the communication did not take place in person, set forth the location of each party to and each witness to the communication), and the general subject matter(s) of the communication.

d.  when used in reference to a *claim*, "identify" means to state the date and location the claim arose, the location the claim was defended, the names of the parties involved, the case style, the amount in controversy, and the general nature of the claim.

e.  "Relating to" any given subject means any document, communication, or statement that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with,

> touches upon, or is in any manner whatsoever pertinent to that subject and supports, evidences, describes, mentions, refers to, contradicts or comprises the subject.

5. "Including" shall mean "including, but not limited to."

6. "And" and "or" shall be construed conjunctively or disjunctively as required by the context within the scope of a discovery request so as not to exclude any information that might be deemed outside the scope of the request or by any other construction.

7. "Person(s)" shall mean and include a natural person, firm, association, organization, partnership, business trust, corporation (public or private), or government entity.

8. "Parties" includes all named parties in this litigation and their agents, employees, servants, officers, and directors.

9. "Plaintiff" and "Policyholder" mean the above-captioned Plaintiff or the Policyholder listed on ZNBP151318 and his/her/its employees, representative, agents, employees, servants, officers, and directors.

10. "Property" or "Insured Property" means the property located at 1239 Robinson Road, Peachtree City, GA 30269.

11. "You," "Your," "Defendant," and "Insurance Company" means Defendant Insurance Company and its employees, representatives, agents, employees, servants, officers, directors, adjusters, branch claims representatives, regional or home office claims auditors or claims examiners, all claims managers and claims supervisors at any level, executive officers of the company, and all members of any review or claims committee, and each person presently or formerly acting or authorized to act on Defendant's behalf.

12. "Policy" means Policy No. ZNBP151318 issued by AmGUARD Insurance Company.

13. "Broker" means an insurance broker, excess/surplus lines broker, licensed insurance agent, managing general agent, or other insurance intermediary involved in the purchase, sale, negotiation, or placement of the Policy.

14. "Coverage Letter(s)" means the correspondence from You to Policyholder dated anytime, regarding Your position as to coverage for the Loss.

15. "Loss" means the event on or around March 25, 2021, in which Policyholder suffered property damage and has consequently incurred extra expenses such as additional living expenses, business income losses, and other losses afforded coverage for under the Policy.

16. "Possession, custody or control" includes the joint or several possession, custody, or control not only by the person to whom these interrogatories are addressed, but also the joint or several possession, custody, or control by each or any other person acting, or purporting to act on behalf of, the Person, whether as an employee, attorney, accountant, agent, sponsor, spokesman, or otherwise.

## **INTERROGATORIES**

1.

Identify any and all Persons involved in any way whatsoever in the investigation, adjustment, and handling of Plaintiff's claim for insurance benefits arising from the Loss on or about March 25, 2021, and for each, please include his/her name, place of employment, address, and telephone number; his/her title, license(s), and certification(s); the date his/her involvement in this claim commenced; the date his/her involvement in this claim concluded; and a description his/her involvement in this claim.

This interrogatory seeks information about every individual involved in the Claim including, but not limited to, Persons employed by the Defendant or retained by Defendant through

a third-party entity. For Defendant's employees specifically, this Interrogatory seeks the name of every employee of Defendant who had anything to do with the Claim.

2.

If any Person identified in Your answer to Interrogatory No. 1 is or was Your employee, agent, or representative, please state whether said Person has been promoted, demoted, terminated, or transferred from March 25, 2021 to present; describe in detail the change in employment status of each such Person, including the circumstances of the Person's employment before and after the change in status; and provide the last-known residence address and telephone number or place of current employment of each such former employee.

3.

Describe each and every investigative step conducted by You, or by anyone on Your behalf, regarding Plaintiff's Claim, beginning with the date and method You received notice of the subject Claim, and identify any and all documents and correspondence (paper or electronic) generated, obtained, or otherwise placed in Your possession, in the course of Your investigation.

4.

Identify each and every person that You expect to call as an expert witness at trial, and for each, please state: the subject matter on which the expert is expected to testify; the substance of the facts and opinions to which the expert is expected to testify; a summary of the grounds for each opinion; the data or other information considered by the expert in forming their opinions; whether a written report has been prepared; and identify the data or other information considered by the expert in forming their opinions & all documents You furnished to the expert.

5.

If You have retained or employed an expert in conjunction with the Claim who is not expected to be called as a witness at trial, please identify said expert(s), and for each, please state their address and contact information.

6.

Please state the date and manner in which You received notice of the Claim; the date and manner in which You acknowledged receipt of the Claim; the date and manner in which You commenced investigation of the Claim; the date and manner in which You requested from the Plaintiff all items, statements, and forms that You reasonably believed, at the time, would be required from the Plaintiff; the date and manner in which You notified the Plaintiff in writing of the acceptance or rejection of the claim; and the date, amount, and reason for any insurance proceed payments You have made to the Plaintiff.

7.

Have You extended coverage for any part of Plaintiff's Claim for insurance benefits, or have You denied or rejected Plaintiff's Claim? If You extended coverage for any part of Plaintiff's Loss, please state with specificity the provisions, endorsements, or any other part of the Policy governing Plaintiff's Loss that supports Your extension of coverage; please state with specificity Your reasons for denying or rejecting any part of Plaintiff's Claim; and include all facts and policy provisions that supported Your decision to deny or reject Plaintiff's Claim. This Interrogatory seeks the above information even if coverage was extended for the Loss but fell below the Plaintiff's deductible.

8.

Do You contend the damage to the Property can be repaired? If so, please state with specificity the method of repair Defendant contends should be used to repair the Property. This request seeks any and all building codes (state, county, city, or municipal), industry standards, and industry practices employed in the investigation, evaluation, and determination of methods used to repair damages caused by the Loss that Defendant states could be used to repair the Property. If such information exists, please state: the name(s), address(es), and telephone number(s) of all Persons who have personal knowledge of any of these industry standards or practices; and identify all documents that support or explain any of these building codes, engineering industry standards, and practices.

If You do not have an answer to this Interrogatory, please affirmatively state none of the above was relied upon in determining if the damage sustained to the Property by the Loss is or was repairable.

9.

Does the Policy owe for anything less than a proper repair of the damaged Property caused by a covered loss? If the Policy does not owe for a proper repair, please state with specificity the provision of the Policy which does not provide for a proper repair.

10.

Please identify any and all written policies, procedures, guidelines, or other documents (including document(s) maintained in physical or electronic form) You maintained for Your internal or third party adjusters to use in the state of Georgia in connection with adjusting Wind losses that were in effect on March 25, 2021 through present.

11.

Please state with specificity the approximate date and event which caused You to anticipate litigation with respect to Plaintiff's cause of action and identify all documents that support or explain any of these facts.

12.

Identify any and all documents (including those maintained electronically) relating to the investigation, claim handling, and adjustment of Wind claims in the state of Georgia that are routinely generated throughout the handling and investigation of such claims (including, but not limited to, Investigation Reports; reserve sheets; electronic claims diaries or similar record logs; claims review reports; and/or any team report relative to this claim) for the two years preceding March 25, 2021 to the present, and state whether any such documents were generated during the investigation and handling of the Claim.

13.

Have any documents (including those maintained electronically) relating to the Claim been destroyed, lost, or disposed of? If so, please identify what, when and why the document was destroyed, and describe Your document retention policy.

14.

Do You contend the Property was damaged by any excluded peril? If so, state the specific provision in the Policy supporting the exclusion and how the exclusion impacted Your claim decision, state in detail Your factual basis for this contention, and identify any documents supporting Your contention.

15.

Do You contend the Plaintiff failed to satisfy any condition, covenant, or duty of the Policy or otherwise breached the Policy? If so, identify each specific condition, covenant, or duty of the Policy You contend the Plaintiff failed to satisfy or breach, and identify all the documents relating to Your assertion and all Persons with knowledge of such facts.

16.

Identify the underwriting documents created or acquired in the formation of the Policy for the Property including any risk reports for the Property that have been generated or obtained at any time, and state if any Notice(s) of Cancellation or Notice(s) of Non-Renewal of the Policy have been issued.

17.

Identify any and all photographs, audio recordings, video recordings, written statements taken, or other memorializing documentation obtained during the course of Your investigation of the Claim. In Your response, please describe in detail what each document depicts or memorializes and state the date when each such document or memorialization was obtained or generated.

18.

Identify any and all repair estimates, invoices, quotes, receipts, or other documentation reflecting the cost or methodology to repair the damages at issue in this Claim, even if said item never left Your possession. In Your response, please describe in detail what each document depicts, when it was generated or obtained, why it was generated or obtained, and state the date when the item was created, received, or requested.

19.

Please identify each Person who assisted You in any way to provide responses to these Interrogatories. For each identified Person, please include the Person's name, place of employment, address, telephone number and relationship to you.

20.

State the good faith factual basis for Your Affirmative Defenses(s), and identify the date, type of document, author(s), recipient(s), and present custodian of every document known or believed by You to refer or relate in any way to the facts You contend support Your Affirmative Defense(s) and comprehensively describe all basis (factual and otherwise), documents, notes, memorandum, reports, or other documentation supporting Your responses to the paragraphs of Plaintiff's Complaint.

## **REQUEST FOR PRODUCTION OF DOCUMENTS**

1.

All documents responsive to Plaintiff's Interrogatories identified in Your responses to Plaintiff's Interrogatories or otherwise reviewed or relied upon in responding to Plaintiff's Interrogatories.

2.

The entire claim file, claims notes, or other similar records from the home, regional, or local offices; third party adjusters or adjusting firms; or ladder assist Persons retained by You regarding the Claim. This request includes, but it not limited to, copies of the file jackets; "field" files and notes; and drafts of documents contained in the file.

To the extent that this request seeks documents from third-party adjusters/adjusting firms, ladder assists, or other Persons retained by the Defendant, this request is only seeking such documents that have been provided to, or are in the control of, the Defendant.

3.

A certified copy of the Policy or insurance policies possessed by Defendant pertaining to the Property involved in this suit.

4.

All documents and tangible things supporting the method You contend could be used to properly repair the damages sustained to the Property as a result of the Loss.

5.

Your written procedures, policies, guidelines, or other similar documentation (including document(s) maintained in electronic form) that pertain to the handling of Wind claims in the state of Georgia for the year preceding March 25, 2021 to present.

6.

Any and all weather reports in Your possession which concern the Property, regardless of whether You relied upon them in making Your claims decision in this matter, for the two years preceding March 25, 2021 to present.

7.

The Operation Guides which relate to the handling of Wind claims in the state of Georgia in effect for the year preceding March 25, 2021 to present.

8.

The field notes, measurements, electronic diary, file materials, or other similar records (including all electronic and paper notes) created, obtained, or maintained by the claims personnel,

contractors, adjusters, engineers, or any other Person who physically inspected the Property or adjusted the Claim.

9.

The emails, instant messages, internal or external correspondence, or any other communication between Defendant and any agent, representative, employee, or other Person pertaining to the Claim.

10.

Defendant's internal newsletters, bulletins, publications, or other memoranda internally circulated which relates to the policies and procedures relied upon in the handling of Wind claims in the state of Georgia that were issued one year preceding March 25, 2021 through the present, including, but not limited to, memoranda issued to claims adjusters.

11.

The price guidelines, price indexes, or other similar information utilized in the creation of any repair estimates prepared, edited, requested, or relied upon by the Defendant. In the event published guidelines of "off the shelf" software (including, but not limited to, Xactimate software) were utilized to inform pricing decisions, You may respond by simply identifying the name, version, and/or edition of the published guidelines used.

12.

Any "Summary of Loss," "Pay sheet," "Payment Log," copy of issued payments, or other similar list or record of payments made by Defendant in relation to the Claim. This includes, but is not limited to, all payments issued to Plaintiff or Plaintiff's agents and representatives; all payments issued to independent adjusters, ladder assists, engineers, or other Persons retained in

Your adjustment of this claim; all copies of any and all checks issued; and all expenses incurred by You in Your adjustment of this claim.

13.

The documents reflecting reserves applied to the Claim.

14.

The contract or agreement between the Defendant and any third-party Person retained in the investigation and adjustment of the Claim. This request includes, but is not limited to, contracts or agreements with ladder assists, independent adjusters, contractors, engineers, meteorologists, or hygienists involved in any way throughout the Claim.

15.

All documents submitted to, or received from, each Person You expect to call as an expert witness at trial. This request includes, but is not limited to: any agreement exchanged or entered into between Defendant and the witness (including proposals not agreed upon and counteroffers to the same); all reports generated by the witness (including drafts); a current *curriculum vitae* for the witness; a list of all other publications authored by the witness; a list of all other cases in which the witness has testified as an expert at trial or by deposition; an invoice showing the compensation paid or owed to the witness; and all documents and tangible things consulted by and relied upon by the witness in forming his or her expert opinion.

16.

All documents submitted to, or received from, each Person Defendant hired or consulted as an expert witness which Defendant does not intend to call as an expert witness at trial in this case. This request includes, but is not limited to: any agreement exchanged or entered into between Defendant and the witness (including proposals not agreed upon and counteroffers to the same);

all reports generated by the witness (including drafts); a current *curriculum vitae* for the witness; a list of all other publications authored by the witness; a list of all other cases in which the witness has testified as an expert at trial or by deposition; an invoice showing the compensation paid or owed to the witness; and all documents and tangible things consulted by and relied upon by the witness in forming his or her expert opinion.

17.

All documents in Your possession concerning the underwriting of the Policy issued for the Property. This request includes, but is not limited to, any risk reports for the Property and any Notice(s) of Cancellation or Notice(s) of Non-Renewal of the Policy for the Property.

18.

All repair estimates, invoices, quotes, receipts, or other documentation Defendant reviewed throughout the adjustment of the Claim which reflect the cost to repair any agreed upon, contested, or suspected damages at issue in the Claim. This request is inclusive of documents not transmitted to the Plaintiff through the adjustment of the Claim.

19.

Any and all photographs, audio recordings, video recordings, written statements taken, or other memorializing documentation obtained during the course of Your investigation of the claim. This request seeks the requested documentation to be produced in a format most similar to the original, in the highest quality version available, and in a format which retains the original metadata.

20.

A copy of the license, registration, certification, or other similar documentation for all Persons retained, employed, or consulted by the Defendant to inspect the Property and/or adjust the Claim.

21.

All evidence You intend to introduce at the trial of this matter.

It is requested that the above-requested responses be made within forty-five (45) days of service of this request at the offices of The Huggins Law Firm, LLC, 110 Norcross Street, Roswell, GA 30075.

Dated, this this 8th day of February, 2023.

RESPECTFULLY SUBMITTED,

J. Remington Huggins, Esq.
Georgia Bar No.: 348736
Michael D. Turner, Esq.
Georgia Bar No.: 216414
*Attorneys for the Plaintiff*

**THE HUGGINS LAW FIRM, LLC**
110 Norcross Street
Roswell, GA 30075
(o) (770) 913-6229
(e) remington@lawhuggins.com
(e) mdturner@lawhuggins.com

E-FILED IN OFFICE - IT
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
**23-A-01070-2**
2/7/2023 2:06 PM
TIANA P. GARNER, CLERK

## IN THE SUPERIOR COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| **ZNT, LLC,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **CIVIL ACTION FILE NO.:** |
| | ) 23-A-01070-2 |
| **AMGUARD INSURANCE COMPANY,** | ) _____ |
| a foreign corporation, | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

## CERTIFICATE OF SERVICE

This is to certify that I have served the foregoing upon the Defendant AmGUARD Insurance Company by serving them with the *Summons, Complaint and Exhibits*, and *Plaintiff's First Set of Interrogatories and Request for Production of Documents* in accordance with the Court's rules to Defendant AmGUARD Insurance Company at the address listed below:

**C T Corporation System**
**Registered Agent for Defendant AmGUARD Insurance Company**
**289 S. Culver St.**
**Lawrenceville, GA 30046**

Respectfully submitted, this 7th day of February, 2023.

For: The Huggins Law Firm, LLC,

_____

**The Huggins Law Firm, LLC**          J. Remington Huggins, Esq.
110 Norcross Street                    Georgia Bar No.: 348736
Roswell, GA 30075                      Michael D. Turner, Esq.
(o) (770) 913-6229                     Georgia Bar No.: 216414
(e) remington@lawhuggins.com           *Attorneys for the Plaintiff*
(e) mdturner@lawhuggins.com

E-FILED IN OFFICE - IT
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA

23-A-01070-2
2/7/2023 2:06 PM

TIANA P. GARNER, CLERK

## General Civil and Domestic Relations Case Filing Information Form

☐ **Superior** or ☐ **State Court of** _____ **County**

| For Clerk Use Only | |
|---|---|
| **Date Filed** _____ <br> **MM-DD-YYYY** | **Case Number** _____ <br> 23-A-01070-2 |

**Plaintiff(s)**

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

**Defendant(s)**

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

**Plaintiff's Attorney** _____   **Bar Number** _____   **Self-Represented** ☐

### Check One Case Type in One Box

**General Civil Cases**

- ☐ Automobile Tort
- ☐ Civil Appeal
- ☐ Contract
- ☐ Garnishment
- ☐ General Tort
- ☐ Habeas Corpus
- ☐ Injunction/Mandamus/Other Writ
- ☐ Landlord/Tenant
- ☐ Medical Malpractice Tort
- ☐ Product Liability Tort
- ☐ Real Property
- ☐ Restraining Petition
- ☐ Other General Civil

**Domestic Relations Cases**

- ☐ Adoption
- ☐ Dissolution/Divorce/Separate Maintenance
- ☐ Family Violence Petition
- ☐ Paternity/Legitimation
- ☐ Support – IV-D
- ☐ Support – Private (non-IV-D)
- ☐ Other Domestic Relations

**Post-Judgment – Check One Case Type**

- ☐ Contempt
  - ☐ Non-payment of child support, medical support, or alimony
- ☐ Modification
- ☐ Other/Administrative

☐ Check if the action is related to another action(s) pending or previously pending in this court involving some or all of the same parties, subject matter, or factual issues. If so, provide a case number for each.

_____          _____
**Case Number**                              **Case Number**

☐ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in O.C.G.A. § 9-11-7.1.

☐ Is an interpreter needed in this case? If so, provide the language(s) required. _____
**Language(s) Required**

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

_____
_____

Version 1.1.18

SHERIFF'S ENTRY OF SERVICE

Civil Action No. _____23-A-01070-2_____

Date Filed _2/7/2023_____

| Superior Court | ☒ | Magistrate Court | ☐ |
| State Court | ☐ | Probate Court | ☐ |
| Juvenile Court | ☐ | | |

Georgia, _Gwinnett_____ COUNTY

ZNT, LLC
_____

Attorney's Address

Huggins Law Firm, LLC
_____

110 Norcross St.
_____

Roswell, GA 30075
_____

Name and Address of Party to Served

AmGuard Insurance Company
_____

Registered Agent: C T Corporation System
_____

289 S. Culver St., Lawrenceville, GA 30046
_____

Plaintiff

VS.

AmGuard Insurance Company

Defendant

Garnishee

## SHERIFF'S ENTRY OF SERVICE

**PERSONAL**
I have this day served the defendant _____ personally with a copy
of the within action and summons.

**NOTORIOUS**
I have this day served the defendant _____
copy of the action and summons at his most notorious place abode in this County.

Delivered same into hands of _____ by leaving a
age, about _____ years; weight _____ pounds; height _____ feet and _____ inches, domiciled at the residence of
defendant.

**CORPORATION**
Served the defendant _AmGuard Insurance Company_ a corporation
by leaving a copy of the within action and summons with _Jane Richardson_
In charge of the office and place of doing business of said Corporation in this County.

**TACK & MAIL**
I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises
designated in said affidavit and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an
envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice
to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST**
Diligent search made and defendant _____
not to be found in the jurisdiction of this Court.

This _13_ day of _Feb_____, 20_23_

DEPUTY

_W. Coberly  S01332_

CLERK'S | DEFENDANT'S | PLAINTIFF'S COPY

# Gwinnett County Sheriff's Office

## Cover Sheet



**Sheriff #:**       23004880

**Person Served:**   AMGUARD INSURANCE COMPANY
289 SOUTH CULVER STREET
LAWRENCEVILLE GA 30046
PHONE:

**Process Information:**

Date Received:      02/10/2023

Assigned Zone:      289 S. Culver                    Court Case #:      23-A-01070-2

Expiration Date:                                     Hearing Date:

Paper Types:        COMPLAINT

Notes/Alerts:

**Notes:**

_____

_____

_____

_____

_____

_____

_____

E-FILED IN OFFICE - LW
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA

**23-A-01070-2**

**3/14/2023 10:20 AM**
TIANA P. GARNER, CLERK

## IN THE SUPERIOR COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| ZNT, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   CIVIL ACTION |
| | )   FILE NO. 23-A-01070-2 |
| AMGUARD INSURANCE COMPANY, | ) |
| a foreign corporation, | ) |
| | ) |
| Defendant. | ) |

_____

### DEFENDANT AMGUARD INSURANCE COMPANY'S
### ANSWER TO PLAINTIFF'S COMPLAINT

**COMES NOW**, AMGUARD INSURANCE COMPANY ("Defendant" or "AmGUARD"), named Defendant in the above-styled action, and files its Answer to Plaintiff's Complaint and shows the Court as follows:

### FIRST DEFENSE

Plaintiff's Complaint fails to state a claim upon which relief can be granted.

### SECOND DEFENSE

The Plaintiff's claims are barred by Plaintiff's failure to meet all conditions precedent under the insurance policies.

### THIRD DEFENSE

The Plaintiff's claims are barred by Plaintiff's failure to meet all conditions precedent under the insurance policies, specifically Plaintiff's failure to timely produce sworn proofs of loss for claimed amounts under the policies.

## FOURTH DEFENSE

The Plaintiff's claims are barred by Plaintiff's failure to meet all conditions precedent under the insurance policies, specifically the failure of Plaintiff and AmGUARD to agree on the amount of the losses or obtain an appraisal award for specific damages.

## FIFTH DEFENSE

To the extent Plaintiff seeks to assert a breach of contract action against AmGUARD, Plaintiff may not maintain such an action because AmGUARD did not breach any contract with Plaintiff.

## SIXTH DEFENSE

To the extent Plaintiff seeks to assert a bad faith claim against AmGUARD pursuant to O.C.G.A. § 33-4-6, Plaintiff is barred from asserting any such bad faith demand because Plaintiff failed to satisfy the procedural requirements of O.C.G.A. § 33-4-6, including, but not limited to, submitting a proper and timely bad faith demand to AmGUARD.

## SEVENTH DEFENSE

To the extent Plaintiff seeks to assert a bad faith claim against AmGUARD pursuant to O.C.G.A. § 33-4-6, Plaintiff may not recover because its claim is legally and factually insufficient. AmGUARD has, at all times, acted in good faith and with fair dealing with respect to Plaintiff's claims.

## EIGHTH DEFENSE

To the extent Plaintiff seeks to assert a bad faith claim against AmGUARD pursuant to any other statute or law aside from O.C.G.A. § 33-4-6, Plaintiff may not recover because its claim is legally and factually insufficient. O.C.G.A. § 33-4-6 is the exclusive remedy for bad

faith penalties or extra-contractual damages recoverable by an insured against his insurer based on a failure to pay policy benefits.

### NINTH DEFENSE

To the extent Plaintiff seeks to recover extra-contractual damages as a result of any alleged breach of contract claim against AmGUARD, Plaintiff may not recover because its claim is legally and factually insufficient. O.C.G.A. § 33-4-6 is the exclusive remedy for bad faith penalties or extra-contractual damages recoverable by an insured against his insurer based on a failure to pay policy benefits.

### TENTH DEFENSE

Plaintiff is unable to recover the damages set forth in its Complaint because, upon information and belief, the amounts claimed are either not covered under the insurance policies, or do not reflect the reasonable cost to replace the damaged covered property and to return the Plaintiff to their pre-loss condition.

### ELEVENTH DEFENSE

Plaintiff may not maintain this action against AmGUARD because Plaintiff failed to satisfy the conditions precedent to bringing suit set forth in the insurance policies issued by AmGUARD.

### TWELFTH DEFENSE

Plaintiff is unable to recover from AmGUARD because it failed to mitigate its damages as required by Georgia law.

### THIRTEENTH DEFENSE

Plaintiff is unable to recover from AmGUARD because its claimed damages occurred outside of the policy period defined within the policies.

## FOURTEENTH DEFENSE

Plaintiff's claims fail as a matter of law since Plaintiff and AmGUARD have never come to an agreement upon the amount of the loss, and there has not been an appraisal award for specific damages.

## FIFTEENTH DEFENSE

The Plaintiff's claims are barred by Plaintiff's failure to meet all conditions precedent under the insurance policies, specifically the failure of Plaintiff to timely notify AmGUARD of the loss so as to prevent prejudice to AmGUARD in its investigation of the claim.

## SIXTEENTH DEFENSE

Plaintiff is unable to recover from AmGUARD because its claimed damages are excluded from coverage under the unambiguous terms of the insurance policy.

## SEVENTEENTH DEFENSE

Defendant reserves the right to assert any and all additional defenses that arise during the course of this litigation and reserve the right to amend this Answer to assert such defenses.

## EIGHTEENTH DEFENSE

Responding to the specific, numbered paragraphs of Plaintiff's Complaint, Defendant shows as follows:

## PARTIES

1.

Defendant is without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph No. 1 of the Complaint and, therefore, can neither admit nor deny same.

2.

Defendant admits that AmGUARD. is a foreign insurance company, registered to transact business in, and in fact transacts business in the State of Georgia and is in the business of insuring risks and properties located throughout the United States, including Georgia.  Defendant admits that it may be served via its registered agent, C T Corporation System, at 289 S. Culver St., Lawrenceville, GA 30046.  Defendant denies the remaining allegations of Paragraph 2 of Plaintiff's Complaint.

## **JURISDICTION AND VENUE**

3.

Defendant denies the allegations in Paragraph 3 of Plaintiff's Complaint as pled. Defendant admits that the United States District Court for the Northern District of Georgia has subject matter jurisdiction over this claim because it involves citizens of different states and the amount in controversy exceeds $75,000.

4.

Defendant denies the allegations in Paragraph 4 of Plaintiff's Complaint as pled. Defendant admits that venue is proper in the United States District Court for the Northern District of Georgia, Atlanta Division.

5.

Defendant denies the allegations in Paragraph 5 of Plaintiff's Complaint as pled. Defendant admits that jurisdiction and venue are proper in the United States District Court for the Northern District of Georgia, Atlanta Division.

**THE POLICY**

6.

Defendant admits that it issued Businessowner's Policy No. ZNBP151318 to ZNT, LLC for the policy period of June 19, 2020 to June 19, 2021 (the "Policy"). Defendant admits that Exhibit A to Plaintiff's Complaint appears to be a copy of a Businessowner's Coverage Form Index and Businessowner's Coverage Form BP 00 03 01 10. Defendant denies the remaining allegations in Paragraph 6 of Plaintiff's Complaint.

7.

Defendant admits that the Policy provided certain coverages to specifically insured property for covered causes of loss occurring during the policy period, subject to all the policy terms, conditions, and exclusions, and up to the applicable policy limits. Defendant admits that the Policy language speaks for itself. Defendant denies the remaining allegations in Paragraph 7 of Plaintiff's Complaint as pled.

8.

Defendant admits that the Policy provided certain coverages to specifically insured property for covered causes of loss occurring during the policy period, subject to all the policy terms, conditions, and exclusions, and up to the applicable policy limits. Defendant admits that the Policy language speaks for itself. Defendant denies the remaining allegations in Paragraph 8 of Plaintiff's Complaint as pled.

9.

Defendant admits that the Policy provided certain coverages to specifically insured property for covered causes of loss occurring during the policy period, subject to all the policy terms, conditions, and exclusions, and up to the applicable policy limits. Defendant admits that the Policy

language speaks for itself. Defendant denies the remaining allegations in Paragraph 9 of Plaintiff's Complaint as pled.

**SUDDEN AND ACCIDENTAL DAMAGE TO THE INSURED PROPERTY**

10.

Defendant admits that the Policy was in effect on or about March 25, 2021. Defendant denies the remaining allegations in Paragraph 10 of Plaintiff's Complaint.

11.

Defendant admits that Plaintiff notified Defendant of damage to the Property allegedly resulting from a sudden and accidental direct physical loss resulting from wind on November 9, 2021, nearly eight months after the loss was alleged to have occurred.  Defendant admits that it assigned an adjuster ("Adjuster") to investigate Plaintiff's claim for sudden and accidental direct physical loss. Defendant denies that Plaintiff promptly and timely notified Defendant of any damage to the Property. Defendant denies the remaining allegations in Paragraph 11 of Plaintiff's Complaint as pled.

12.

Defendant admits that Plaintiff permitted Defendant to inspect the property with its adjuster and experts.  Defendant denies the remaining allegations in Paragraph 12 of Plaintiff's Complaint as pled.

13.

Defendant admits the allegations in Paragraph 13 of Plaintiff's Complaint.

14.

Defendant denies the allegations in Paragraph 14 of Plaintiff's Complaint as pled.

15.

Defendant admits that it denied Plaintiff's claim in its entirety and that Plaintiff is due $0.00 as indemnification under the Policy for the alleged loss. Defendant further admits that a true and accurate copy of Defendant's denial letter is attached to Plaintiff's Complaint as Exhibit "B." Defendant denies the remaining allegations in Paragraph 15 of Plaintiff's Complaint.

16.

Defendant denies the allegations in Paragraph 16 of Plaintiff's Complaint.

17.

Defendant admits that Plaintiff made a written demand to Defendant on November 16, 2022. Defendant denies the remaining allegations in Paragraph 17 of Plaintiff's Complaint.

18.

Defendant denies the allegations in Paragraph 18 of Plaintiff's Complaint.

19.

Defendant denies the allegations in Paragraph 19 of Plaintiff's complaint.

20.

Defendant denies the allegations in Paragraph 20 of Plaintiff's complaint.

21.

Defendant denies the allegations in Paragraph 21 of Plaintiff's Complaint.

22.

Defendant denies the allegations in Paragraph 22 of Plaintiff's Complaint.

## COUNT I: BREACH OF CONTRACT

23.

Responding to the allegations contained within Paragraph 23 of Plaintiff's Complaint, Defendant reasserts and incorporates by reference its affirmative defenses and answers to paragraphs 1 through 22 above as though fully set forth herein.

24.

Defendant denies the allegations in Paragraph 24 of Plaintiff's Complaint.

25.

Defendant denies the allegations in Paragraph 25 of Plaintiff's Complaint.

26.

Defendant denies the allegations in Paragraph 26 of Plaintiff's Complaint.

27.

Defendant denies the allegations in Paragraph 27 of Plaintiff's Complaint.

28.

Defendant denies the allegations in Paragraph 28 of Plaintiff's Complaint.

29.

Defendant denies the allegations in Paragraph 29 of Plaintiff's Complaint.

30.

Defendant denies the allegations in Paragraph 30 of Plaintiff's Complaint.

## <u>COUNT II: BAD FAITH PURSUANT TO O.C.G.A. § 33-4-6</u>

31.

Responding to the allegations contained within Paragraph 31 of Plaintiff's Complaint, Defendant reasserts and incorporates by reference its affirmative defenses and answers to paragraphs 1 through 30 above as though fully set forth herein.

32.

Defendant denies the allegations in Paragraph 32 of Plaintiff's Complaint.

33.

Defendant denies the allegations in Paragraph 33 of Plaintiff's Complaint.

34.

Defendant denies the allegations in Paragraph 34 of Plaintiff's Complaint.

35.

Defendant denies the allegations in Paragraph 35 of Plaintiff's Complaint.

36.

Defendant denies the allegations in Paragraph 36 of Plaintiff's Complaint.

37.

Defendant denies the allegations in Paragraph 37 of Plaintiff's Complaint.

38.

Defendant denies the allegations in Paragraph 38 of Plaintiff's Complaint.

39.

Defendant denies the allegations in Paragraph 39 of Plaintiff's Complaint.

**DEMAND FOR JURY TRIAL**

40.

Defendant denies the allegations in Paragraph 40 of Plaintiff's Complaint.

**PRAYER FOR RELIEF**

41.

Defendant denies the allegations in Paragraph 41 of Plaintiff's Complaint.

Any allegations in Plaintiff's Complaint not specifically responded to by Defendant, including the WHEREFORE Paragraph and all subparts, are hereby denied. Defendant further denies that Plaintiff is entitled to recover from Defendant in any sum or manner whatsoever.

WHEREFORE, having fully answered Plaintiff's Complaint, Defendant prays that it be discharged hence without liability and demands a trial by jury of twelve persons.

This 14th day of March, 2023.

                                    **SWIFT, CURRIE, McGHEE & HIERS, LLP**

                              By:     /s/ Drew C. Timmons
                                      Drew C. Timmons
                                      Georgia Bar No. 358626

                                      *Attorney for Defendant*

1420 Peachtree Street, N.E.
Suite 800
Atlanta, GA  30309-3231
404.874.8800
404.888.6199 [facsimile]
drew.timmons@swiftcurrie.com

## CERTIFICATE OF SERVICE

I hereby certify that I have this day filed the within and foregoing **DEFENDANT AMGUARD INSURACE COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT** with the Clerk of Court via electronic transmission using Odyssey eFileGA and served a copy of the foregoing electronically upon all parties of record via Odyssey eFileGA.

This 14th day of March, 2023.

**SWIFT, CURRIE, McGHEE & HIERS, LLP**

By:    /s/ Drew C. Timmons
Drew C. Timmons
Georgia Bar No. 358626

*Attorney for Defendant*

1420 Peachtree Street, N.E.
Suite 800
Atlanta, GA  30309-3231
404.874.8800
404.888.6199 [facsimile]
drew.timmons@swiftcurrie.com
4887-2916-4887, v. 1