# Exhibit A



**SOCIAL SECURITY ADMINISTRATION**

Office of Hearings Operations
Suite 500, Marquis 1
245 Peachtree Ctr. Ave
Atlanta, GA 30303-9913

Date: September 29, 2022

Anthony Jermaine Ray

## Notice of Decision – Unfavorable

I carefully reviewed the facts of your case and made the enclosed decision.  Please read this notice and my decision.

**If You Disagree With My Decision**

If you disagree with my decision, you may file an appeal with the Appeals Council.

**How To File An Appeal**

To file an appeal you or your representative must ask in writing that the Appeals Council review my decision.  The preferred method for filing your appeal is by using our secure online process available at https://www.ssa.gov/benefits/disability/appeal.html.

You may also use our Request for Review form (HA-520) or write a letter.  The form is available at https://www.ssa.gov/forms/ha-520.html.  Please write the Social Security number associated with this case on any appeal you file.  You may call (800) 772-1213 with questions.

Please send your request to:

**Appeals Council**
**5107 Leesburg Pike**
**Falls Church, VA 22041-3255**

**Time Limit To File An Appeal**

You must file your written appeal **within 60 days** of the date you get this notice.  The Appeals Council assumes you got this notice 5 days after the date of the notice unless you show you did not get it within the 5-day period.

Form HA-L76-OP2 (03-2010)

**Suspect Social Security Fraud?**
**Please visit http://oig.ssa.gov/r or call the Inspector General's Fraud Hotline**
**at 1-800-269-0271 (TTY 1-866-501-2101).**

See Next Page

Anthony Jermaine Ray (BNC#: 21QM183J13710)                    Page 2 of 3

The Appeals Council will dismiss a late request unless you show you had a good reason for not filing it on time.

**What Else You May Send Us**

You or your representative may send us a written statement about your case.  You may also send us new evidence.  You should send your written statement and any new evidence **with your appeal**.  Sending your written statement and any new evidence with your appeal may help us review your case sooner.

**How An Appeal Works**

The Appeals Council will consider your entire case.  It will consider all of my decision, even the parts with which you agree.  Review can make any part of my decision more or less favorable or unfavorable to you.  The rules the Appeals Council uses are in the Code of Federal Regulations, Title 20, Chapter III, Part 416 (Subpart N).

The Appeals Council may:

- Deny your appeal,
- Return your case to me or another administrative law judge for a new decision,
- Issue its own decision, or
- Dismiss your case.

The Appeals Council will send you a notice telling you what it decides to do.  If the Appeals Council denies your appeal, my decision will become the final decision.

**The Appeals Council May Review My Decision On Its Own**

The Appeals Council may review my decision even if you do not appeal.  If the Appeals Council reviews your case on its own, it will send you a notice within 60 days of the date of this notice.

**When There Is No Appeals Council Review**

If you do not appeal and the Appeals Council does not review my decision on its own, my decision will become final.  A final decision can be changed only under special circumstances.  You will not have the right to Federal court review.

**New Application**

You have the right to file a new application at any time, but filing a new application is not the same as appealing this decision.  If you disagree with my decision and you file a new application instead of appealing, you might lose some benefits or not qualify for benefits at all.  If you disagree with my decision, you should file an appeal within 60 days.

Form HA-L76-OP2 (03-2010)

See Next Page

Anthony Jermaine Ray (BNC#: 21QM183J13710)                    Page 3 of 3

**If You Have Any Questions**

1. Visit www.ssa.gov for fast, simple, and secure online service.
2. Call us at **1-800-772-1213**, weekdays from 8:00 am to 7:00 pm. If you are deaf or hard of hearing, call TTY **1-800-325-0778**. Please mention this notice and decision when you call.
3. You may also call your local office at (877) 828-1694.


Social Security
Bldg 2400 Suite 122
3800 Camp Creek Pkwy
Atlanta, GA 30331-9819

**How are we doing?** Go to www.ssa.gov/feedback to tell us.


Brendan F. Flanagan
Administrative Law Judge


Enclosures:
Decision Rationale


cc:     Kathleen Flynn
        315 W. Ponce De Leon
        Avenue, Suite 940
        Decatur, GA 30030


Form HA-L76-OP2 (03-2010)

**SOCIAL SECURITY ADMINISTRATION**
**Office of Hearings Operations**

**DECISION**

**IN THE CASE OF**                                      **CLAIM FOR**

Anthony Jermaine Ray                                   Supplemental Security Income
(Claimant)

_____                        21QM183J13710
(Wage Earner)                                          (Beneficiary Notice Control Number)
                                                       *Social Security Number removed for your protection*

## JURISDICTION AND PROCEDURAL HISTORY

On February 13, 2020, the claimant filed an application for supplemental security income, alleging disability beginning August 23, 2018.  The claim was denied initially on September 14, 2021, and upon reconsideration on December 8, 2021.  Thereafter, the claimant filed a written request for hearing received on December 21, 2021 (20 CFR 416.1429 *et seq.*).  On May 5, 2022, the undersigned held a telephone hearing due to the extraordinary circumstance presented by the Coronavirus Disease 2019 (COVID-19) Pandemic.  All participants attended the hearing by telephone. The claimant agreed to appear by telephone before the hearing and confirmed such agreement at the start of the hearing.  The claimant's primary representative is Kathleen Flynn, an attorney.  The claimant is secondarily represented by Erica Dempsey, an attorney, who appeared at the hearing. Deauna Fronenberger, an impartial vocational expert, also appeared at the hearing.

The claimant submitted or informed the Administrative Law Judge about all written evidence at least five business days before the date of the claimant's scheduled hearing (20 CFR 416.1435(a)). After the hearing, the record remained open for the submission of additional evidence from the claimant's representative, which has been received and admitted into the record (Exhibit B22F-B25F).

## ISSUES

The issue is whether the claimant is disabled under section 1614(a)(3)(A) of the Social Security Act.  Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

Although supplemental security income is not payable prior to the month following the month in which the application was filed (20 CFR 416.335), the undersigned has considered the complete medical history consistent with 20 CFR 416.912.

See Next Page

Anthony Jermaine Ray (BNC#: 21QM183J13710)                    Page 2 of 13

After careful consideration of all the evidence, the undersigned concludes the claimant has not been under a disability within the meaning of the Social Security Act since February 13, 2020, the date the application was filed.

## APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 416.920(a)).  The steps are followed in order.  If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the undersigned must determine whether the claimant is engaging in substantial gainful activity (20 CFR 416.920(b)).  Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful.  "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 416.972(a)).  "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 416.972(b)).  Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA (20 CFR 416.974 and 416.975).  If an individual engages in SGA, he is not disabled regardless of how severe his physical or mental impairments are and regardless of his age, education, and work experience.  If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the undersigned must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 416.920(c)).  An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities.  An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 416.922, Social Security Rulings (SSRs) 85-28 and 16-3p).  If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled.  If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, the undersigned must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926).  If the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listing and meets the duration requirement (20 CFR 416.909), the claimant is disabled.  If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the undersigned must first determine the claimant's residual functional capacity (20 CFR 416.920(e)).  An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments.  In making this finding, the undersigned must

Anthony Jermaine Ray (BNC#: 21QM183J13710)                    Page 3 of 13

consider all of the claimant's impairments, including impairments that are not severe (20 CFR 416.920(e) and 416.945; SSR 96-8p).

Next, the undersigned must determine at step four whether the claimant has the residual functional capacity to perform the requirements of his past relevant work (20 CFR 416.920(f)). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established.  In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 416.960(b) and 416.965).  If the claimant has the residual functional capacity to do his past relevant work, the claimant is not disabled.  If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 416.920(g)), the undersigned must determine whether the claimant is able to do any other work considering his residual functional capacity, age, education, and work experience.  If the claimant is able to do other work, he is not disabled.  If the claimant is not able to do other work and meets the duration requirement, he is disabled.  Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration.  In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 416.912 and 416.960(c)).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, the undersigned makes the following findings:

**1.   The claimant has not engaged in substantial gainful activity since February 13, 2020, the application date (20 CFR 416.971 *et seq.*).**

**2.   The claimant has the following severe impairments: diabetes mellitus; right leg infection; major depressive disorder; intellectual disorder (20 CFR 416.920(c)).**

The above medically determinable impairments significantly limit the ability to perform basic work activities as required by SSR 85-28. As such, the undersigned finds all to be severe.

The medical evidence of record established other impairments: obesity, hypertension, hyperlipidemia, and osteoarthritis of the right hip, and showed a history of a left leg infection that occurred in 2014. However, none alone nor in combination with other conditions has caused more than mild and/or transient symptoms during the relevant time (See e.g., Exhibit B17F/9, 23-25; B22F/38; B11F/9; B22F/31, 1,194-1,195). Thus, the undersigned finds all to be non-severe. Nonetheless, when evaluating the residual functional capacity below, the undersigned considered all impairments, including non-severe (20 CFR 416.920(e) and 416.945; SSR 96-8p).

Anthony Jermaine Ray (BNC#: 21QM183J13710)                    Page 4 of 13

Further, the claimant alleged other mental impairments limited his ability to work, schizophrenia, a bipolar disorder, and a manic-depressive disorder (Exhibit B2E). Historically, these were noted or a variant diagnosis appeared, including a major depressive disorder and a depressive disorder, not otherwise specified. There was also a historical diagnosis of a posttraumatic stress disorder. The undersigned considered all and finds that the above severe mental impairments best represent the symptoms and signs for the relevant period (Exhibit B17F/10, 14; B15F/22-28, 55-58; B6F). Moreover, regardless of diagnosis, the undersigned has considered all mental complaints at issue here.

Of note as well, the claimant has a history significant for polysubstance abuse, including cocaine, some of which occurred during the period at issue. However, as a whole, such use was short-lived and did not have apparent functional impact during the relevant time (See e.g., Exhibit B15F/22-28; B21F/23, 83; B22F/30, 92). The undersigned accordingly finds this to be non-severe.

Lastly, at the hearing, the claimant alleged he has neuropathy in his feet. However, this is not supported by any clinical evidence, but rather, there was cursory mention of neuropathy as part of his past medical history (See e.g., Exhibit B24F/10). In the absence of the requisite evidence, the undersigned finds this is not a medically determinable impairment.

**3.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).**

As to physical impairments, none alone nor combined has met or medically equaled a listing. For example, despite mention of uncontrolled diabetes with hyperglycemia, there has not been resultant complications as may be evaluated under other applicable listings, such as 11.14 for peripheral neuropathy (See e.g., Exhibit B21F/25-26; B22F/33; Social Security Ruling 14-2p). Also, while there was a right leg infection, this did not result in extensive fungating or extensive ulcerating skin lesions that persisted for at least 3 months despite continuing treatment as prescribed as evaluated under listing 8.03 (See e.g., Exhibit B25F; B24F).

Additionally, the severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.05. In making this finding, the undersigned has considered whether the "paragraph B" criteria ("paragraph A or B" criteria of listing 12.05) are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning. An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.

In understanding, remembering, or applying information, the claimant has at most a moderate limitation. For example, the claimant endorsed difficulties with his memory and understanding, but he also disclosed that he did a number of activities without apparent problems, such as preparing meals, using public transportation, and shopping as needed (Exhibit B3E). Also, there was mention of being forgetful at times, but on exam, his memory appeared grossly intact.

See Next Page

Additionally, he demonstrated a goal-directed thought process (Exhibit B15F/28). Moreover, during other exams, the claimant followed all commands and directions without difficulty (Exhibit B24F/15, 40).

In interacting with others, the claimant has at most a moderate limitation. For example, the claimant indicated that he did not go anywhere and mostly stayed in touch with others by telephone. However, he also disclosed that he shopped in stores as needed and that he relied, at least in part, on public transportation. He reported that he did not need anyone with him when going out (Exhibit B3E). Further, despite testimony of irritability, elsewhere, the claimant disclosed doing well with medication with improved functioning (Exhibit B15F/42-43, 55).

With regard to concentrating, persisting, or maintaining pace, the claimant has at most a moderate limitation.  For example, the claimant indicated he could pay attention for about 10 minutes of a conversation and that he did not complete tasks he started. Yet, the claimant also disclosed that he prepared meals daily and did household chores, such as dishwashing and sweeping (Exhibit B3E). Further, on exam, he demonstrated a goal-directed thought process. He had no apparent attention deficit as he spelled "world" backwards correctly (Exhibit B15F/28). Moreover, during other exams, the claimant followed all commands and directions without difficulty (Exhibit B24F/15, 40).

As for adapting or managing oneself, the claimant has experienced no more than a moderate limitation.  For example, in spite of his mental health impairments, the claimant has been able to perform a range of activities regularly, including preparing simple meals and doing some household chores, such as dish washing and sweeping. He also remained capable of going out daily and going out alone. He indicated he was unable to manage money, but he remained capable of using public transportation and shopping in stores as needed (Exhibit B3E). Further, after starting medications for his mental health, the claimant reported significant improvement of functioning. He reported that he had better sleep, which led to improved daytime focus and attention. He appeared as happy and focused (Exhibit B15F/42-43). Likewise, during another follow-up, the claimant endorsed doing well with medication, which he said significantly reduced depressive symptoms. He noted being mildly restless and worried, but mostly over housing (Exhibit B15F/55; See also B15F/63-64).

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria (criteria of listing 12.05) are not satisfied.

The undersigned has also considered whether the "paragraph C" criteria of 12.04 are satisfied. In this case, as examples above and further discussion below support, the "paragraph C" criteria is not present (See e.g., Exhibit B3E; B19F; B15F/42-43, 55).

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process.  The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning.  The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

Turning back to listing 12.05, this listing is based on the three elements that characterize intellectual disorder: significantly subaverage general intellectual functioning; significant deficits in current adaptive functioning; and the disorder manifested before age 22.

The required level of severity for this disorder is met when the requirements in paragraphs A or B are satisfied.

Paragraph A requires the following:

1. Significantly subaverage general intellectual functioning evident in your cognitive inability to function at a level required to participate in standardized testing of intellectual functioning; and

2. Significant deficits in adaptive functioning currently manifested by your dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing); and

3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

In this case, these requirements are not met because the claimant demonstrated the cognitive capacity to participate in standardized testing of intellectual functioning (Exhibit B6F). Additionally, from a mental standpoint, the claimant has not been dependent upon others for personal needs. Rather, the claimant disclosed that he generally attended to personal care, prepared his own meals, and did household chores (Exhibit B3E; B19F).

Paragraph B requires the following:

1. Significantly subaverage general intellectual functioning evidenced by a or b:

    a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or

    b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

2. Significant deficits in adaptive functioning currently manifested by an extreme limitation of one, or marked limitation of two, in the following areas of mental functioning:

    a. Understand, remember, or apply information (see 12.00E1); or

    b. Interact with others (see 12.00E2); or

    c. Concentrate, persist, or maintain pace (see 12.00E3); or

See Next Page

   d.   Adapt or manage oneself (see 12.00E4); and

3.   The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

In this case, Wechsler Adult Intelligence Scale IV testing revealed a full-scale IQ of 66, but the claimant has not had significant deficits in adaptive functioning as set forth above (Exhibit B6F; B3E; B19F/2-3). For example, despite the claimant's testimony regarding difficulties with reading and comprehension, he successfully obtained his driver's license as he further disclosed at the hearing. Additionally, he indicated trouble handling money, but other reports from the claimant revealed that he remained capable of performing a number of activities routinely, including preparing meals, dishwashing, and sweeping. He also disclosed that he was able to go out alone, use public transportation, and shop in stores as needed (Exhibit B3E; Hearing testimony). Moreover, historically, the claimant has been employed in several jobs over the years, including substantial gainful activity during his self-employment as a landscape laborer (Hearing testimony; Exhibit B3D).

**4.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work with lifting and carrying 20 pounds occasionally and 10 pounds frequently, as well as, sitting, standing, and walking 6 hours each in an 8-hour day and with no pushing or pulling with the right leg. Further, he can occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, and occasionally balance, stoop, kneel, crouch, and crawl. He should have no exposure to hazards, moving mechanical parts, and unprotected heights. Also, he can understand, remember, and carry out simple instructions and can concentrate and persist in 2-hour segments. He is limited to no more than occasional interaction with the public, crowds, coworkers, and supervisors. He is limited to no more than occasional changes in the routine work setting. He cannot perform fast-paced, high production demands, such as work that has defined hourly quotas.**

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSR 16-3p. The undersigned also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 416.920c.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must

evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities.

At the hearing, the claimant testified that he was hospitalized in February 2022 for a right leg infection and for which he had surgery and antibiotics for treatment. He testified that he has been unable to ambulate without a walker since his hospital discharge. The claimant further testified that he has had bad swelling in his feet if he stands for more than an hour and that he needs to elevate his legs daily for about 10 hours or for whole a day. He also testified that he has difficulty sitting for a long time because his knees stiffen, feet swell, and his low back hurts, which he said all began in the past year. He testified that he could sit for no more than 2 hours before symptoms begin and that he then needs to stand. The claimant also previously reported that his body was weak and deteriorating (Exhibit B3E). Additionally, the claimant testified that he has a hard time concentrating and that he can focus for 20 to 30 minutes or so. He said that anything can distract him, or he becomes irritated because of difficulty reading. The claimant testified that he is able to read, but that he needs help understanding. He testified that he becomes irritated easily and that he stays to himself. He testified that he took special education courses while in school.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

There is a medical history of uncontrolled diabetes mellitus, a major depressive disorder, and an intellectual disorder (See e.g., Exhibit B17F; B15F; B6F). However, for the relevant time, since the Title XVI application date of February 13, 2020, treatment notes largely pertain to only a 5-month period in 2022 (See e.g., Exhibit B17F/24-25; B25F/5-8; B21F/9; B24F/27-33, 38-40; B22F/11-14; B23F/3-4). For nearly two years since the Title XVI application date, the claimant had sparse, if any, physical or mental complaints. At one time, he presented for a tuberculosis screening in December 2020 (Exhibit B17F/24-25). The evidence of record otherwise predates the period at issue or relates to the right leg infection in 2022. Given the alleged chronicity and severity of symptoms, including the recurrent swelling of his feet and daily need for elevation, as well as, his exertional limits, one would expect to find some mention of such during that nearly two-year period before the right leg infection occurred in 2022. The lack of reported symptoms and medical care for such an extensive period strongly suggests that the claimant has not been as limited as alleged through the relevant time. It is noted that factors may impede one's ability to obtain medical care, such as financial constraints or mental health issues. However, apart from one report in 2022 in which there was mention of difficulty paying for medication, there has otherwise been little, if any, other evidence to explain the lack of reported symptoms and treatment (Exhibit B22F/92).

See Next Page

Rather, in the meantime, other reports from the claimant indicate little to no functional impact. For example, in May 2020, despite his report of high blood sugar and mention of being weak sometimes, the claimant disclosed that he could lift 50 pounds and walk a half mile at one time. He also indicated being forgetful and that he had difficulty handling money. Yet, he attended to personal care, prepared his own meals, and shopped in stores as needed. Moreover, he remained capable of using public transportation and going out alone. Notably, the claimant performed such activities despite taking no medications at that time and while living independently (Exhibit B3E). The claimant similarly reported his engagement in activities of daily living in 2021 without any significant difficulty (Exhibit B19F/2-3). Likewise, in 2022, the claimant indicated that he had been managing his own needs. At that time, the claimant additionally indicated that he had been caring for his grandmother (Exhibit B21F/23). Such evidence collectively suggests that the claimant has not been as limited as alleged through the relevant time.

Further, as noted above, the bulk of medical care that ensued occurred during a finite period of less than 12 consecutive months and during which he did show some sign of improvement (Exhibit B25F; B23F/3-4, 8). Initial mention of a right groin sore appeared during a January 2022 emergency room visit (Exhibit B25F/5-8, 21). Shortly thereafter, February 2022 clinical workup showed inflammation and edema consistent with cellulitis in the right thigh and right inguinal area. At that time, his blood glucose was over 500 (Exhibit B21F/26). This culminated in extensive treatment during a prolonged hospitalization for approximately 6 weeks between February and March 2022. Due to signs of necrotizing fasciitis, treatment entailed multiple surgical procedures with debridement and skin grafting, as well as, antibiotics and physical therapy (See e.g., Exhibit B21F/23, 25, 70-72; B24F/24, 27-33, 38-40, 73).

During that time in 2022, there was mention of the claimant using a walker for ambulation. However, this appeared as part of the claimant's postoperative recovery. The evidence of record does not otherwise establish that such use will be medically necessary for the requisite duration of at least 12 consecutive months (See e.g., Exhibit B24F/14, 180). Postoperative medical records showed continued signs of wound complications with purulent discharge, erythema, and edema. Yet, even then, however, the claimant had only somewhat reduced strength with a rating of 4+ out of 5. He also had normal range of motion (Exhibit B22F/23, 31-32, 92-94). Moreover, in May 2022, the claimant exhibited 99% healed skin graft to the right lower extremity and signs of healed wounds (Exhibit B23F/3-4, 8). Thus, in considering such evidence or lack thereof through the period at issue, the undersigned finds the severity of diabetes and this recent right leg infection well accounted for in finding a residual functional capacity for a reduced range of light work, including no pushing or pulling with the right lower extremity.

Additionally, the undersigned has accounted for the claimant's mental health history of a major depressive disorder and an intellectual disorder in finding restriction to understanding, remembering, and carrying out no more than simple instructions with no fast-paced, high production demands, as well as, no more than occasional interactions with the public, crowds, coworkers, and supervisors and occasional changes in a routine work setting. As noted above, despite a full-scale IQ score of 66 obtained during cognitive testing in 2016 and in spite of his alleged difficulties reading, comprehending, and remembering, the evidence as a whole supports the limits found here (Exhibit B6F). Of note, as indicated above, the claimant remained capable

of attending to personal care, preparing his own meals, shopping as needed in stores, and using public transportation (Exhibit B3E; B19F/2-3).

Moreover, mental status exams have largely been unremarkable. For example, on multiple exams, the claimant followed all commands and directions without difficulty (Exhibit B24F/15, 40). Additionally, in the months preceding the Title XVI application date, there was mention of being forgetful at times, but his memory appeared grossly intact. Also, he demonstrated a goal-directed thought process. He had no apparent attention deficit as he spelled "world" backwards correctly (Exhibit B15F/28). Further, after starting medications for his mental health, the claimant reported significant improvement of functioning. He reported that he had better sleep, which led to improved daytime focus and attention. He appeared as happy and focused (Exhibit B15F/42-43). Likewise, during another follow-up, the claimant endorsed doing well with medication, which he said significantly reduced depressive symptoms. He noted being mildly restless and worried, but mostly over housing (Exhibit B15F/55; See also B15F/63-64).

Since then, during a 2021 consultative mental evaluation, the claimant indicated that he continued to take medication, but alleged adverse side effects of agitation and grogginess (Exhibit B19F/2). Also, the claimant alleged pervasive depressive symptoms of anhedonia, irritability, sleep problems, and fatigue. However, consultative psychologist, Ifetayo Ojelade, Ph.D., found that the claimant "appeared inauthentic" and diagnosed malingering. When reviewing the supplied medical records and considering the claimant's presentation, Dr. Ojelade explained that it was unclear whether the claimant experienced clinically significant symptoms. Dr. Ojelade further noted that throughout the interview, there was significant evidence that the claimant exaggerated or magnified his symptoms. Dr. Ojelade opined that the results of that evaluation should be viewed with caution (Exhibit B19F). Thus, with this in mind along with consideration of all other relevant evidence of record, the undersigned finds the above mental restriction warranted.

As for medical opinions and prior administrative medical findings, the undersigned cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical findings or medical opinions, including those from medical sources. The undersigned has fully considered the medical opinions and prior administrative medical findings as follows:

Upon initial review in September 2021, State agency medical consultant, A. Lesesne, M.D., opined that the claimant's physical impairments, diabetes mellitus, hypertension, and hyperlipidemia were all non-severe (Exhibit B4A). Likewise, upon reconsideration in November 2021, State agency medical consultant, Lawrence Schaffzin, M.D., opined that the claimant's physical impairments remained non-severe (Exhibit B6A). Similarly, in 2016, consultative physician, Bobby Crocker, M.D., did not opine any specific functional restriction, but indicated mild severity as to the subjective complaints of chronic low back pain, right hip pain, and right knee pain (Exhibit B7F). While the opined severity was supported by a review of the relevant evidence of record or direct exam of the claimant, the undersigned finds this is not entirely consistent with the totality of evidence, including medical records submitted at the hearing level (See e.g., Exhibit B21F-B25F). In viewing the record most favorably to the claimant despite the paucity of evidence since the Title XVI application date until 2022, the undersigned finds restriction to less than the full range of light work warranted.

See Next Page

As to mental functioning, upon initial review in September 2021, State agency psychological consultant, D. Massey, Ph.D., had no current medically determinable mental impairment (Exhibit B4A/5). Upon reconsideration in November 2021, State agency psychological consultant, Cal Vander Plate, Ph.D., determined that there was insufficient evidence to evaluate (Exhibit B6A). The undersigned also considered Dr. Ojelade's consultative medical opinion, which indicated that the claimant was not experiencing psychological factors impacting his current functional abilities. Dr. Ojelade further opined that regarding his social interactions, the claimant's reported behavior and presentation during this interview suggested mild impairment in his ability to appropriately interact with the public and those in a supervisory capacity given his inauthentic presentation. Dr. Ojelade also opined that the claimant's clinical presentation and current diagnosis suggested no impairment in his activities of daily living relative to his psychological diagnosis. Dr. Ojlade explained that the claimant may have a psychological diagnosis, but that this would not prevent him from appropriately adapting to the stressors resulting from the demands of being in a work environment, daily functioning, and social interactions (Exhibit B19F). The undersigned finds the prior administrative medical findings and Dr. Ojelade's medical opinion are overall unpersuasive. Like the prior administrative medical findings and other opinion evidence above, the opined severity or lack of was supported by a review of the relevant evidence of record and direct observation/exam of the claimant. However, despite Dr. Olejade's word of caution, in viewing the record most favorably to the claimant with consideration of an earlier consultative exam, which established an intellectual disorder and a history of a major depressive disorder, the undersigned finds more than mild restriction as set out above warranted (Exhibit B6F; B15F/22-28, 55-58).

As to the 2016 consultative mental evaluation, examining psychologist, Stephen Hamby, Ph.D., opined that the claimant was able to understand, remember, and carry out simple instructions and sustain attention in order to complete simple tasks. Dr. Hamby also opined that the claimant would be able to relate adequately to supervisors and coworkers and was at low risk for psychiatric decompensation under stressful work conditions (Exhibit B6F). Although this exam preceded the period at issue, the undersigned finds Dr. Hamby's medical opinion is generally persuasive as it was supported by contemporaneous cognitive testing and observation. At that time, the claimant obtained a full-scale IQ score of 66 and a verbal comprehension score of 70. However, the claimant demonstrated other unremarkable signs on exam, including intact memory and attention. Also, the claimant had an unremarkable presentation. Dr. Hamby observed a "rather agreeable and mild-mannered individual". At no time did he show any evidence of depression or agitation (Exhibit B6F). Further, the opined severity is overall consistent with other evidence, including activities the claimant performed and other generally unremarkable mental status exams (See e.g., Exhibit B3E; B24F/15, 40; B15F/28).

Based on the foregoing, the undersigned finds the claimant has the above residual functional capacity assessment, which is supported by the overall evidence of record, including physical and mental exams, as well as, activities the claimant performed.

**5.   The claimant is unable to perform any past relevant work (20 CFR 416.965).**

The claimant has past relevant work as a landscape laborer, which is classified under #408.687-014 of the Dictionary of Occupational Titles (DOT) as requiring heavy, unskilled work (Specific

Vocational Preparation (SVP) 2). As required by SSR 82-62, this work was substantial gainful activity, was performed long enough for the claimant to achieve average performance, and was performed within the relevant period (See e.g., Exhibit B2E; B3D; Hearing testimony). However, as this work requires demands that exceed the residual functional capacity found here, the undersigned accordingly finds that the claimant is unable to perform his past relevant work.

**6.     The claimant was born on August 17, 1980, and he was 39 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).**

**7.     The claimant has at least a high school education (20 CFR 416.964).**

**8.     Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 416.968).**

**9.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).**

In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11).  When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14).  If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).

If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.20.  However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations.  To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity.  The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as:

- Photocopy machine operator (DOT #207.685-014, light, unskilled work (SVP 2)) with approximately 10,000 jobs nationally,
- Housekeeping cleaner (DOT #323.687-014, light, unskilled work (SVP 2)) with approximately 194,000 jobs nationally, and
- Silverware wrapper (DOT #318.687-018, light, unskilled work (SVP 2)) with approximately 10,000 jobs nationally.

See Next Page

Even if the claimant is further restricted to sedentary work with otherwise the same limits as set out above, there is other work that could still be performed as the vocational expert identified:

- Document preparer (DOT #249.587-018, sedentary, unskilled work (SVP 2)) with approximately 5,000 jobs nationally,
- Addressor (DOT #209.587-010, sedentary, unskilled work (SVP 2)) with approximately 17,000 jobs nationally,
- Cutter and paster (DOT #249.587-014, sedentary, unskilled work (SVP 2)) with approximately 5,000 jobs nationally, and
- Call-out operator (DOT #237.367-014, sedentary, unskilled work (SVP 2)) with approximately 3,000 jobs nationally.

Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the DOT. For information not addressed by the DOT, including social limitations, workplace changes, variations in climbing, pushing/pulling with a specific lower extremity, concentration, persistence, and pace for a specific time period, the vocational expert relied upon her professional education, training, and experience.

Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.  A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

**10.  The claimant has not been under a disability, as defined in the Social Security Act, since February 13, 2020, the date the application was filed (20 CFR 416.920(g)).**

## DECISION

Based on the application for supplemental security income filed on February 13, 2020, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.


/s/ *Brendan F. Flanagan*
Brendan F. Flanagan
Administrative Law Judge

September 29, 2022
Date

# LIST OF EXHIBITS

## Payment Documents/Decisions

| Component | No. | Description | Received | Dates | Pages |
|---|---|---|---|---|---|
| Y13 | B1A | Disability Determination Transmittal | | 2020-02-13 | 1 |
| Y13 | B2A | Fee-Authorization to Charge/Collect Fee | | 2020-02-13 | 1 |
| Y13 | B3A | Disability Determination Explanation | | 2021-01-15 | 11 |
| Y13 | B4A | Disability Determination Explanation | | 2021-09-08 | 7 |
| Y13 | B5A | Disability Determination Transmittal | | 2021-09-14 | 1 |
| Y13 | B6A | Disability Determination Explanation | | 2021-11-26 | 15 |
| Y13 | B7A | Reopened Determination/Decision | | 2021-12-21 | 1 |

## Jurisdictional Documents/Notices

| Component | No. | Description | Received | Dates | Pages |
|---|---|---|---|---|---|
| Y13 | B1B | SSA-1696 - Claimant's Appointment of a Representative | | 2020-02-13 | 5 |
| Y13 | B2B | Fee Agreement for Representation before SSA | | 2020-02-13 | 1 |
| Y13 | B3B | Misc Jurisdictional Documents/Notices | | 2020-04-02 | 2 |
| Y13 | B4B | Misc Jurisdictional Documents/Notices | | 2020-04-02 | 2 |
| Y13 | B5B | T16 Notice of Disapproved Claim | | 2021-09-14 | 5 |
| Y13 | B6B | T16 Notice of Disapproved Claim | | 2021-09-14 | 5 |
| Y13 | B7B | Request for Reconsideration | | 2021-10-13 | 11 |
| Y13 | B8B | Misc Jurisdictional Documents/Notices | | 2021-10-13 | 1 |

| Y13 | B9B | Misc Jurisdictional Documents/Notices | 2021-10-13 | 1 |
| Y13 | B10B | T16 Disability Reconsideration Notice | 2021-12-08 | 6 |
| Y13 | B11B | Misc Jurisdictional Documents/Notices | 2021-12-21 | 1 |
| Y13 | B12B | Misc Jurisdictional Documents/Notices | 2021-12-21 | 1 |
| Y13 | B13B | Misc Jurisdictional Documents/Notices | 2021-12-22 | 3 |
| Y13 | B14B | Misc Jurisdictional Documents/Notices | 2021-12-22 | 3 |
| Y13 | B15B | Outgoing ODAR Correspondence | 2022-01-08 | 16 |
| Y13 | B16B | Outgoing ODAR Correspondence | 2022-01-12 | 4 |
| Y13 | B17B | Request for Hearing Acknowledgement Letter | 2022-01-12 | 15 |
| Y13 | B18B | Claimant's Change of Address Notification | 2022-02-07 | 1 |
| Y13 | B19B | Hearing Notice | 2022-02-14 | 25 |
| Y13 | B20B | Notice Of Hearing Reminder | 2022-04-07 | 6 |
| Y13 | B21B | SSA-1696 - Claimant's Appointment of a Representative | 2022-05-02 | 4 |
| Y13 | B22B | Fee Agreement for Representation before SSA | 2022-05-02 | 1 |

## Non-Disability Development

| Component | No. | Description | Received | Dates | Pages |
|---|---|---|---|---|---|
| Y13 | B1D | Application for Disability Insurance Benefits | | 2020-02-13 | 5 |
| Y13 | B2D | Application for Supplemental Security Income Benefits (Abbreviated) | | 2020-04-08 | 10 |
| Y13 | B3D | Detailed Earnings Query | | 2022-03-01 | 3 |
| Y13 | B4D | Summary Earnings Query | | 2022-03-01 | 1 |

| Y13 | B5D | Certified Earnings Records | | | 2022-03-01 | 2 |
| Y13 | B6D | WHAT - Work History Assistant Tool | | | 2022-05-03 | 19 |
| Y13 | B7D | Certified Earnings Records | | | 2022-05-03 | 2 |

### Disability Related Development

| Component | No. | Description | Received | Source | Dates | Pages |
|---|---|---|---|---|---|---|
| Y13 | B1E | Disability Report - Field Office | | Ray, Anthony Jermaine | to 2020-04-08 | 2 |
| Y13 | B2E | Disability Report - Adult | | Ray, Anthony Jermaine | to 2020-04-08 | 12 |
| Y13 | B3E | Function Report - Adult | | Ray, Anthony Jermaine | to 2020-05-18 | 12 |
| Y13 | B4E | Disability Report - Field Office | | Ray, Anthony Jermaine | to 2021-10-14 | 2 |
| Y13 | B5E | Disability Report - Appeals | | Ray, Anthony Jermaine | to 2021-10-14 | 8 |
| Y13 | B6E | Disability Report - Appeals | | Ray, Anthony Jermaine | to 2021-12-22 | 6 |
| Y13 | B7E | Disability Report - Field Office | | Ray, Anthony Jermaine | to 2021-12-22 | 2 |
| Y13 | B8E | Post Office Returned Mail - NOH | | | to 2022-03-04 | 3 |
| Y13 | B9E | Post Office Returned Mail - Acknowledgement Letter | | | to 2022-03-04 | 3 |
| Y13 | B10E | Post Office Returned Mail - Letter to VE | | | to 2022-03-04 | 4 |
| Y13 | B11E | Post Office Returned Mail - Exhibit Letter to Rep | | | to 2022-03-15 | 4 |
| Y13 | B12E | Representative Correspondence | | Kathleen M. Flynn | to 2022-04-06 | 2 |
| Y13 | B13E | Correspondence regarding efforts to obtain evidence | | Kathleen M. Flynn | to 2022-04-28 | 2 |
| Y13 | B14E | Post Office Returned Mail | | | to 2022-04-29 | 8 |

| Y13 | B15E | Resume of Vocational Expert | | Deauna Froneberger | to 2022-04-29 | 5 |

## **Medical Records**

| Component | No. | Description | Received | Source | Dates | Pages |
|---|---|---|---|---|---|---|
| Y13 | B1F | Office Treatment Records | | Springhill Medical Center | 2011-07-01 to 2011-10-01 | 37 |
| Y13 | B2F | Office Treatment Records | | Franklin Memorial Primary Health | 2012-08-02 to 2013-10-30 | 22 |
| Y13 | B3F | Progress Notes | | Mobile Infirmary Medical Center | 2014-03-28 to 2014-04-09 | 61 |
| Y13 | B4F | Hospital Records | | Piedmont Hospital | 2014-04-24 to 2015-08-14 | 52 |
| Y13 | B5F | Hospital Records | | Atlanta Medical Center | 2015-07-20 to 2015-09-17 | 44 |
| Y13 | B6F | CE Psychology | | Charles Stephen Hamby PhD | to 2016-01-19 | 7 |
| Y13 | B7F | CE Orthopedic | | Bobby A Crocker Md | to 2016-01-21 | 9 |
| Y13 | B8F | Hospital Records | | Grady Memorial Hospital | 2016-05-19 to 2017-01-31 | 49 |
| Y13 | B9F | Hospital Records | | Grady Hospital | 2016-05-09 to 2017-01-31 | 20 |
| Y13 | B10F | Hospital Records | | Emory Crawford Long Hospital | 2016-09-08 to 2018-06-21 | 55 |
| Y13 | B11F | Office Treatment Records | | Piedmont | 2014-04-24 to 2018-12-14 | 248 |
| Y13 | B12F | Office Treatment Records | | Ws Atlanta Medical Center | 2014-07-30 to 2019-07-13 | 221 |

| Y13 | B13F | Office Treatment Records | Atlanta Medical Center- Roi Dept | 2019-07-13 to 2019-07-13 | 23 |
| Y13 | B14F | Progress Notes | St Josephs Mercy Care Services | 2018-06-25 to 2019-10-11 | 139 |
| Y13 | B15F | Progress Notes | St Joseph's Mercy | 2018-06-25 to 2019-10-14 | 79 |
| Y13 | B16F | HIT MER | Wellstar Health System | 2020-01-01 to 2020-06-26 | 3 |
| Y13 | B17F | Office Treatment Records | St Josephs Mercy Care Services - M | 2019-10-10 to 2020-12-11 | 39 |
| Y13 | B18F | Progress Notes | St Josephs Mercy Care | 2020-12-08 to 2020-12-11 | 9 |
| Y13 | B19F | CE Psychology | A Healing Paradigm Llc - CE | to 2021-08-18 | 5 |
| Y13 | B20F | Medical Source - No MER Available | St Josephs Mercy Care | to 2022-03-02 | 5 |
| Y13 | B21F | Hospital Records | Mobile Infirmary Medical Center | 2014-03-28 to 2022-03-24 | 1652 |
| Y13 | B22F | Hospital Records | Ascension Providence Hospital | 2017-07-29 to 2022-04-21 | 186 |
| Y13 | B23F | Office Treatment Records | Mobile Infirmary Medical Center | 2022-05-06 to 2022-05-06 | 43 |
| Y13 | B24F | Medical Evidence of Record | Saad Healthcare | 2022-03-25 to 2022-03-31 | 190 |
| Y13 | B25F | Medical Evidence of Record | Springhill Medical Center | 2017-07-12 to 2022-06-11 | 53 |