IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| Naveen Marri and Shravya Bagaiahgari, | ) C/A No.: |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| Ur Jaddou, Director, U.S. Citizenship and Immigration Services, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

## **COMPLAINT**

Defendant has taken more than two years to make decisions on Plaintiffs applications for adjustment of status—colloquially known as green card applications. Despite interviewing the Plaintiffs in November 2021, the Atlanta Field Office has yet to make final decisions. This delay is unreasonable and it harms the Plaintiffs. For the reasons below, this Court should compel Defendant to issue final decisions on their applications.

## **PARTIES**

1.      Plaintiff Naveen Marri is a citizen and national of India. He maintains a residence in Cumming, Georgia.

2.      Plaintiff Shravya Bagaiahgariis a citizen and national of India. She maintains a residence in Cumming, Georgia.

3.      Defendant Ur M. Jaddou is the Director of United States Citizenship and Immigration Services. In her official capacity—the only capacity in which she is sued—she is in charge of policy, adjudications, and all final decisions of United States Citizenship and Immigration Services.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331.

5.      Under its federal question jurisdiction, this Court can hear claims under the Administrative Procedure Act (5 U.S.C. § 501, et seq.) ("APA").

6.      Under the APA, this Court can compel agency action that is unlawfully withheld or unreasonably delayed. 5 U.S.C. §§ 706(1) & (2).

7.      Under its federal question jurisdiction, this Court can also provide declaratory relief under 28 U.S.C. § 2201.

8.      Venue is proper in this Court under 28 U.S.C. § 1391(e)(1) because Plaintiffs live in this district and division.

9.      Plaintiffs have exhausted all administrative remedies or constructively exhausted all administrative remedies. *Darby v. Cisneros*, 509 U.S. 137 (1993).

**LEGAL BACKGROUND**

10.    USCIS adjudicates employment-based immigrant visas at two national service centers: the Texas Service Center and the Nebraska Service Center.

11.    Over the past six Fiscal Years, the Texas Service Center's final adjudications on employment-based Forms I-485 have dropped by 90%:

| FY | Quarter 1 | Quarter 2 | Quarter 3 | Quarter 4 | Total |
|---|---|---|---|---|---|
| 2016 | 10314 | 13895 | 18127 | 11431 | 53767 |
| 2017 | N/A | 14429 | 14637 | 10987 | 40053 |
| 2018 | 10917 | 5809 | 5648 | 2671 | 25045 |
| 2019 | 1943 | 1690 | 1292 | 1247 | 6172 |
| 2020 | 815 | 658 | 845 | 832 | 3150 |
| 2021 | 567 | 1073 | 2687 | 6423 | 10750 |
| 2022 | 3565 | | | | |

Because of this slow down, as of the end of first quarter of Fiscal Year 2022, the Texas Service Center had a backlog of employment-based Forms I-485 of at least 97,128 applications.

12.     Similarly, over the same time period, the Nebraska Service Center's final

adjudications on employment-based Forms I-485 have dropped by 90%:

| FY | Quarter 1 | Quarter 2 | Quarter 3 | Quarter 4 | Total |
|---|---|---|---|---|---|
| 2016 | 13768 | 15033 | 17098 | 9485 | 55384 |
| 2017 | N/A | 13485 | 14213 | 12745 | 40443 |
| 2018 | 15924 | 10893 | 7410 | 2348 | 36575 |
| 2019 | 2452 | 2996 | 1077 | 1135 | 7660 |
| 2020 | 549 | 540 | 765 | 522 | 2376 |
| 2021 | 845 | 1061 | 3788 | 4745 | 10439 |
| 2022 | 3556 | | | | |

13.     Because of this slow down, as of the end of the first quarter of Fiscal Year

2022, the Nebraska Service Center had a backlog of employment-based Forms

I-485 of at least 89,580.

14.     As of this filing USCIS claims that it adjudicates 80% of

employment-based Forms I-485 at the Texas and Nebraska Service Centers in

50.5 and 22 months, respectively.

15.    USCIS explains on its website that these processing times are not

"absolute":

> This processing time is based on how long it took us to complete 80%
> of adjudicated cases over the past six months. Each case is unique,
> and some cases may take longer than others. Processing times should
> be used as a reference point, not an absolute measure of how long
> your case will take to be completed.

*See* https://egov.uscis.gov/processing-times/ (last visited Mar. 1, 2023).

16.    More tellingly, USCIS will not let individuals make an inquiry about their

pending Form I-485 for 40 months.

17.    And while this is how USCIS reports "processing times" to the public (and

courts), "internally, USCIS uses the cycle time methodology to gauge progress

toward reducing our backlog of cases."

https://egov.uscis.gov/processing-times/more-info (last visited Mar. 1, 2023).

18.    Further, visa regressed I-485s are excluded from these calculations. Thus,

they are wholly irrelevant to Plaintiffs wait.

19.    Upon information and belief, USCIS manipulated the way it reports its

"processing times" to help its public perception and gain an advantage in delay

litigation like this case.

20.     Importantly, these alleged processing times do not report "touch time"—a term defined as "the time an employee with adjudicative responsibilities actually handles the case." 84 Fed. Reg. 62280, 62291 (Nov. 14, 2019).

21.     USCIS most recently reported the actual touch time for such an application to be 1.63 hours or 98 minutes. 84 Fed. Reg. 62280, 62292 (Nov. 14, 2019).[1] This means it takes, on average, 98 minutes for an immigration service officer to make a final decision.

22.     The Texas and Nebraska Service Centers have record staffing.

23.     Further, despite not reporting any adjudications or processing times, USCIS's Missouri Service Center (also called the National Benefits Center) is currently adjudicating employment-based Forms I-485, and it is doing so at a much faster rate than both Texas and Nebraska.

24.     Upon information and belief, this slowdown is not attributable to a lack of resources.

25.     Upon information and belief, this slowdown is not attributable to a smaller demand for employment-based Forms I-485.

---

[1] "USCIS requires employees who adjudicate immigration benefit requests to report adjudication hours and case completions by benefit type." *Id.* USCIS's Office of Performance and Quality then reviews, scrutinizes, and adjusts the data (if necessary). *Id.*

26.     Rather, upon information and belief, this slowdown is systemic and due to intentional choices or reckless disregard.

27.     For example, USCIS admitted during a deposition that, during Fiscal Year 2021 the Texas Service Center "got rid of" 70,000 Forms I-485, but then "they came back." It seems the Texas Service Center transferred Forms I-485 in masse to various field offices only to have the field offices return them. This arbitrary policy error required adjudicators to be moved from other immigration benefit adjudications to adjudications for Forms I-485.

28.     At their current rate of adjudication, it is expected that employment-based Forms I-485 will take approximately 7 years to receive a final adjudication.

29.     Plaintiffs are seemingly being punished because they were forced to file with or have cases pending at the Texas Service Center.

30.     USCIS believes employment-based adjustment of status applications should take 6 months to adjudicate:

| NEW CYCLE TIME GOALS | | |
|---|---|---|
| **2 WEEKS** | **6 MONTHS** | |
| I-129 Premium | N-400 | I-526 |
| I-140 Premium | N-600 | I-600 |
| **2 MONTHS** | N-600K | I-600A |
| I-129 Non-Premium | I-485 | I-730 |
| **3 MONTHS** | I-140 Non-Premium | I-800 |
| I-765 | I-130 Immediate Relative | I-800A |
| I-131 Advance Parole | I-129F Fiancé(e) | I-90 |
| I-539 | I-290B | I-821D Renewals |
| I-824 | I-360 | |
| | I-102 | |

https://egov.uscis.gov/processing-times/reducing-processing-backlogs (last visited Mar. 1, 2023).

31.     This six-month goal comports with USCIS's interpretation of Congressional intent:

> a.   "In FY 2002, the President called for an average processing time standard of six months for the adjudication of most immigration benefit applications and petitions to eliminate the backlog of pending applications and petitions at USCIS within five years (end of FY 2006)," 72 Fed. Reg. 4888, 4892 (Feb. 1, 2007);

b. "The proposed fee adjustments and this final rule reflect these concerns. Over the past several years, USCIS received appropriated funds to reduce processing times and meet the President's goal of a six-month or less processing time for nearly all immigration benefit applications and petitions." 72 Fed. Reg. 29851, 29857 (May 30, 2007); and

c. "By the end of FY 2008, USCIS plans to reduce processing times for each of these cases [including Forms I-485] by two months, from six months to four months." 72 Fed. Reg. 29851, 29858-59 (May 30, 2007).

32.    The Agency sought to limit the length of adjudications for Forms I-485 because it recognized these delays harm non-citizens.

33.    First, it prevents the acquisition of lawful permanent residence. This is a significant benefit that non-citizens live in the United States for years to acquire. In fact, most of the Plaintiff in this case have been in the United States for more than a decade and only became eligible for lawful permanent residency a year ago.

34.    Second, it prevents the accrual of residence for applying to become a naturalized United States citizen. *See generally* 8 U.S.C. §1427.

35.     Third, it hurts the United States labor force because non-citizens in lengthy delays can be subject to gaps in work authorization, which impacts the United States labor market. 81 Fed. Reg. 82398, 82455 (Nov. 18, 2016).

36.     Fourth, lengthy waits for acquisition of lawful permanent residency deprives non-citizens of acquiring better mortgage rates, lines of credit, and state and federal benefits.

37.     Fifth, it prevents non-citizens from applying for family-based immigrant visas on behalf of qualifying relatives. *See generally* 8 U.S.C. § 1153(a).

38.     Finally—most pressingly—lengthy waits for permanent residency for citizens of countries with visa backlogs risk retrogression of the visa bulletin.

39.     Simply said, non-citizens whose immigrant visas are charged to a couple of countries—notably including India and the People's Republic of China—are subject to certain country caps for employment-based immigrant visas. These caps turn over every fiscal year. So, if a long-waiting adjustment of status applicant's visa numbers are retrogressed or the waits extend past the end of a particular fiscal year, there is risk that the immigrant visa numbers are "effectively lost" for no other reason than USCIS's Form I-485 delays.

40.     These delays stunt the applicants' personal lives, professional lives, and membership in the national community.

*Plaintiffs' Allegations*

41.    The Plaintiffs are a married couple that have lived in the United States for approximately 16 years in lawful non-immigrant status. They remain in lawful status today in a period of stay authorized by the Attorney General.

42.    All Plaintiffs are currently in lawful H-1B and H-4 non-immigrant status.

43.    Mr. Marri's employer filed for permanent labor certification for him on October 25, 2010.

44.    After the Department of Labor issued labor certification, the employer filed an immigrant visa with USCIS, which assigned it receipt number LIN1190572548.

45.    This date—October 25, 2010—set Mr. Marri's priority date for this immigrant visa and all subsequent immigrant visas.

46.    Mr. Marri's initial immigrant visa was later approved as an EB2.

47.    At that time, Mr. Marri's immigrant visa was not "current."

48.    While waiting for their immigrant visa to become current, employers filed one more immigrant visas on their behalf in an attempt to get a "current" immigrant visa sooner.

49.    Mr. Marri is the beneficiary of two EB2 visa numbers. And both have a priority date of October 25, 2010.

50.    Mr. Marri's immigrant visa is current right now.

51.    Mr. Marri and Mrs. Bagaiahgari filed Forms I-485 on 2020-10-26 based on

Mr. Marri's EB-2 approval, USCIS accepted them, and USCIS assigned them the

following receipt numbers:

| Plaintiff | I-485 Receipt Number |
|---|---|
| Mr. Marri | MSC2190395172 |
| Mrs. Bagaiahgari | MSC2190395169 |

52.    USCIS assigned their Forms I-485 to the Missouri Service Center.

53.    At the time they filed their I-485s, their immigrant visas were current.

54.    Plaintiffs provided category three biometrics in relation to their pending

Forms I-485.

55.    Upon information and belief, USCIS has already acquired the results of all

criminal and national security checks for Plaintiffs because the Plaintiffs have

provided category three biometrics and received their interim benefits—work and

travel authorization.

56.    The issuance of interim benefits means that the application will not be held

in suspense: "Interim benefits will not be granted based on a benefit request held

in suspense for the submission of requested initial evidence, except that the

applicant or beneficiary will normally be allowed to remain while a benefit

request to extend or obtain status while in the United States is pending" and

USCIS may hold applications in suspense based on a fraud, criminal, or national

security investigation. 8 C.F.R. §§ 103.2(b)(10)(ii), (b)(18).

57.    No Plaintiff has a criminal record.

58.    Plaintiffs' Forms I-485 are adjudication ready.

59.    Plaintiffs received their "interim benefits."

60.    Plaintiffs attended an interview in the Atlanta Field Office on November 16, 2021.

61.    But the Agency has still yet to make a final decision.

62.    This delay has caused them significant harm.

63.    First, the lengthy delay is causing Plaintiffs significant mental anguish and suffering. Plaintiffs have lived in the United States for years, but still their status in the United States is uncertain and at the whims of any administration. Further, Plaintiffs have witnessed other foreign nationals—including Indian nationals—apply for adjustment of months after them yet still acquire green cards before them. This uncertainty and unfairness cause them significant mental harm.

64.    Second, Plaintiffs cannot travel to see their family for various delay-related reasons: (1) they could be called for an interview for AOS; (2) they could receive requests for evidence; and (3) their travel authorization extension remains

pending. Further, if they travel, their adjustment of status application could be considered abandoned.

65.     Finally, the Plaintiffs have lost thousands of dollars and hundreds of hours paying for and preparing the necessary immigration paperwork to maintain status. They have taken every step USCIS has requested, suggested, and required, including premium processing, concurrent filing, and providing medicals.

66.     All of Plaintiffs' delays are unreasonable.

67.     It is also worth noting that Plaintiffs are not immune from retrogression.

68.     While Plaintiffs' visa numbers have not retrogressed, their numbers could retrogress during the course of this litigation.

## FIRST CAUSE OF ACTION
## (APA – UNREASONABLE DELAY)

69.     Plaintiffs re-allege all allegations above as though restated here.

70.     The APA requires USCIS to make a decision on Plaintiff's Forms I-485 "within a reasonable amount of time." 5 U.S.C. § 555(b).

*A Decision on a Form I-485 is Required and Discrete*

71.     This Court has jurisdiction in unreasonable delay claims over agency actions that are required and discrete. *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004). In *Norton*, the Court noted:

a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*. These limitations rule out several kinds of challenges. The limitation to discrete agency action precludes the kind of broad programmatic attack we rejected in *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990) . . . The limitation to *required* agency action rules out judicial discretion of even discrete agency action that is not demanded by law (which includes, of course, agency regulations that have the force of law).

*Id.* at 64.

72.    First, USCIS is required to make a decision on a pending Form I-485.

73.    USCIS promulgated regulations requiring it to decide and notify Form I-485 applicants of approvals and denials: "the applicant shall be notified of the decision of the director and, if the application is denied, the reason for the denial." 8 C.F.R. § 245.2(a)(5).

74.    In fact, for certain adjustment of status decisions, USCIS promulgated regulations requiring denials, though this provision is not at issue here. *See, e.g.,* 8 C.F.R. § 245.1(c)(8)(vi).

75.    USCIS also promulgated more general adjudication provisions that require decisions. *See* 8 C.F.R. § 103.2(b)(19) (defining procedures for notification of approvals); *Id.* at § 103.3 (defining notification procedures for denials).

76.    These regulations independently and collectively demonstrate a decision on a Form I-485 is required under *SUWA*.

77.     It should be noted neither a statutory nor a regulatory timeline or deadline is necessary to show a "required" action. *See, e.g., Garcia v. United States Dep't of Homeland Sec.*, 25 F.4th 430, 454 (6th Cir. 2022) ("The violation of a statutory deadline is not required to succeed on a § 706(1) claim."); *Gonzalez v. Cuccinelli*, 985 F.3d 357, 374 n.10 (4th Cir. 2021) (same).

78.     Similarly, *a decision* is required even if a benefit is ultimately discretionary. *See, M.J.L.* 420 F. Supp. 3d at 595 (finding a decision is required where benefit is ultimately discretionary); *see also Gonzalez*, 985 F.3d at 374 n.10 (same).

79.     Second, a decision on a Form I-485 is discrete. A decision on a Form I-485 is an "order" under 5 U.S.C. § 551(6). Further, despite the final adjustment of status decision being discretionary, ordering USCIS to make a final decision on a Form I-485 does not unnecessarily entangle this Court with the Agency's discretion because this Court will not be directing the Agency *how to exercise its discretion* it will only be ordering it to take a discrete, narrow, limited, and easily identifiable decision. *SUWA*, 54 U.S. at 63-68.

80.     USCIS has a non-discretionary duty to make a decision on Plaintiff's pending Forms I-485.

*8 U.S.C. § 1252(a)(2)(B)(i) Does not Preclude Review*

81.     No statute precludes review of an unlawful withholding or unreasonably

delayed Form I-485. *See Patel v. Garland*, 142 S. Ct. 1614 (2022).

82.     In *Patel*, a foreign national sought review of a factual determination

underlying the denial of his adjustment of status application that was filed in

removal proceedings. *Id.* at 1619-20. The question presented was whether 8 U.S.C.

§ 1252(a)(2)(B)(i) prohibits review of such fact determinations. *Id.* at 1621.

83.     The Court summarized the relevant language of § 1252(a)(2)(B)(i) as

follows: § 1252(a)(2)(b)(i) "strips courts of jurisdiction to review 'any judgment

regarding the granting of relief' under § 1255." *Id.* (quoting 8 U.S.C. §

1252(a)(2)(B)(i)). The Court then noted that the "outcome of this case largely turns

on the scope of the word 'judgment.'" *Id.* at 1621.

84.     The Court determined that the text and structure of § 1252(a)(2)(B) revealed

an intent for broad preclusive effect:

> The provision does not restrict itself to certain kinds of decisions.
> Rather, it prohibits review of any judgment regarding the granting of
> relief under § 1255 and the other enumerated provisions. As this Court
> has "repeatedly explained," " ' "the word 'any' has an expansive
> meaning." ' " Here, "any" means that the provision applies to
> judgments " 'of whatever kind' " under § 1255, not just discretionary
> judgments or the last-in-time judgment. Similarly, the use of
> "regarding" "in a legal context generally has a broadening effect,
> ensuring that the scope of a provision covers not only its subject but
> also matters relating to that subject." Thus, § 1252(a)(2)(B)(i)

17

> encompasses not just "the granting of relief" but also any judgment
> relating to the granting of relief. That plainly includes factual findings.

*Id.* at 1623 (internal citations omitted). The Court then identified a very important

safety valve that Congress intended to ensure the constitutionality of such a broad

jurisdictional preclusion:

> Section 1252(a)(2)(D), which preserves review of constitutional
> claims and questions of law, reinforces that conclusion. Congress
> added this subparagraph after we suggested in *St. Cyr* that barring
> review of all legal questions in removal cases could raise a
> constitutional concern. The amendment is precise. While Congress
> could have responded to *St. Cyr* by lifting § 1252's prohibitions on
> judicial review altogether, it instead excised only the legal and
> constitutional questions that implicated our concern. And if Congress
> made such questions an exception, it must have left something within
> the rule. The major remaining category is questions of fact.

*Id.* at 1623 (internal citations omitted). Thus, the Court found that §

1252(a)(2)(B)(i) precludes review only of "judgments" of fact underlying

adjustment of status denials in removal proceedings.

85.     Neither *Patel's* holding nor its rationale indicates that § 1252(a)(2)(B)(i)

precludes review over *inaction* related to adjustment of status petitions.

86.     The word "judgment" requires action. If there is no action, there is no

"judgment"; in *Patel*, fact findings that did not occur are not "judgments."

Tellingly, § 1252(a)(2)(B)(i) uses the word "judgment," not "agency action." 8

U.S.C. § 1252(a)(2)(B)(i). This is significant because the APA does not define

"judgment," though it does define "agency action" as "failure to act." 5 U.S.C. §

551(13). Congress chose not to use the term "agency action" in § 1252(a)(2)(B)(i);

this indicates it did not intend to preclude review of unlawful withholding and

unreasonable delay claims. Reinforcing this "action" requirement *Patel* requires

the judgment to be "regarding the granting of relief." *Patel*, 142 S. Ct. at 1622. If

there is no "judgment," there can certainly be no "judgment regarding the granting

of relief." *Id.*

87.     Finally, the Court's emphasis on the importance of § 1252(a)(2)(D)'s savings

clause to the proper interpretation of § 1252(a)(2)(B)(i) also reveals that §

1252(a)(2)(B)(i) does not preclude review over inaction because there could never

be an opportunity to get review of legal or constitutional questions related to

inaction on a petition for review.

88.     To get to a petition for review, action must occur; you cannot file a petition

for review of inaction. *Patel* makes clear that § 1252(a)(2)(D) is crucial to the

constitutionality and interpretation of § 1252(a)(2)(B)(i). Because it would not

provide the same constitutional protections for delay cases, an interpretation of §

1252(a)(2)(B)(i) that precluded all review of delays raises serious constitutional

questions, and such interpretation must be avoided.

89.    *Patel* holds that, while broad, § 1252(a)(2)(B)(i) precludes review only of actual factual determinations; it does not preclude review over inaction.

   *8 U.S.C. § 1252(a)(2)(B)(ii) does not preclude review of inaction.*

90.    Similarly, 8 U.S.C. § 1252(a)(2)(B)(ii) does not preclude judicial review of inaction.   There is a strong presumption in favor of judicial review of "agency action." *Kucana v. Holder*, 558 U.S. 233, 251 (2010). The presumption controls when the statute is "reasonably susceptible to divergent interpretation." *Kucana*, 558 U.S. at 251 (quoting *Guiterrez de Martinez v. Lamagno*, 515 U.S. 417, 434 (1995)). "Congress may overcome this strong presumption in two limited ways: through an express jurisdiction-stripping provision, see 5 U.S.C. § 701(a)(1) (2006), or by committing agency action "to agency discretion by law," see id. § 701(a)(2)." *Quinteros-Mendoza v. Holder*, 556 F.3d 159, 162 (4th Cir. 2009). However, the presumption of judicial review is so strong that it takes "clear and convincing evidence" to preclude judicial review, expressly or implicitly. *Kucana*, 558 U.S. at 252.

91.    Here, the relevant question is whether there is clear and convincing evidence that § 1252(a)(2)(B)(ii) precludes judicial review claims over inaction.

92.    Section 1252(a)(2)(B)(ii) in relevant part states: "no court shall have jurisdiction to review . . . any other decision or action of . . . the Secretary of

20

Homeland Security the authority of which is *specified under this subchapter to be in the discretion of the . . . Secretary of Homeland Security . . . .*" (emphasis added). When it passed this section, "Congress had in mind decisions . . . made discretionary by legislation." *Kucana*, 558 U.S. 246-47. The plain language of § 1252(a)(2)(B)(ii) only precludes judicial review of decisions *"specified"* to be in the Attorney General's discretion by other legislation, not every discretionary decision. *Kucana*, 558 U.S. at 243 n.10. And it is important to see that Congress, in fact, "specified" certain decisions to be in the Attorney General's discretion and the Secretary of Homeland Security's discretion in the relevant sub-chapter; Congress did not leave it to the imagination. *Id.* (citing §§ 1157(c)(1), 1181(b), and 1182(a)(3)(D)(iii))[2].

93.     Thus, while Congress did use § 1252(a)(2)(B)(ii) to preclude judicial review over some discretionary decisions, it intended only to do so where it *explicitly* specified as such and there was actual action.

94.     Like § 1252(a)(2)(B)(i), § 1252(a)(2)(B)(ii) only precludes review of a "decision" or "action." *Id.* The APA does not define either of these terms as

---

[2] Similarly, the remaining decisions identified in § 1252(a)(2)(B)(i) use the word "discretion" in the statute: §1182(i) ("The Attorney General may, in the discretion of the Attorney General, waive the application . . ."); § 1229b(B)(2)(D) ("The determination of what evidence is credible and the weight to be given that evidence shall be within the sole discretion of the Attorney General.") § 1229c ("he Attorney General may, in the discretion of the Attorney General for humanitarian purposes, waive application of subparagraph (A) . . ."), and § 1255(a) (noting the status of an alien "may be adjusted by the Attorney General, in his discretion . . .").

inaction. Even if these can be defined as inaction, there is no *explicit* specification that USCIS has the discretion to refuse to make a final decision altogether *or* make a decision on an unreasonable time frame.

95.     Section 1252(a)(2)(B)(ii) requires a statute to identify the particular inaction and identify it as discretionary. Section 1255(a)'s grant of rulemaking authority does not say USCIS has the discretion to refuse or unreasonably delay final agency action. While it is not in dispute that the final adjustment of status decision is discretionary, this does not render discretionary USCIS's duty to make a final decision on a pending application because a "mandamus will lie where an inferior tribunal or agency refuses to act *even though the act required involves the exercise of judgment and discretion*." *Safeway*, 38 F.2d at 280 (emphasis added). Finally, because § 1252(a)(2)(B)(ii) is reasonably susceptible to divergent interpretations, it does not overcome the presumption of reviewability. *Kucana*, 558 U.S. at 251.

96.     Further, this Court should not construe § 1252(a)(2)(B)(ii) to preclude jurisdiction if § 1252(a)(2)(B)(i) does not preclude jurisdiction because such interpretation would render all of § 1252(a)(2)(B)(i) superfluous. If § 1252(a)(2)(B)(ii) is more expansive than § 1252(a)(2)(B)(i) and both sections apply to Forms I-485, § 1252(a)(2)(B)(i) is wholly unnecessary. This Court should not adopt an interpretation that would render superfluous an entire other statutory

section. *Marx v. Gen Revenue Corp.*, 568 U.S. 371, 385, (2013) (surplusage canon is "strongest when an interpretation would render superfluous another part of the same statutory scheme").

97.    Finally, *Bian v. Clinton*, 605 F.3d 249 (5th Cir. 2010), *vacated*, No. 09-10568, 2010 WL 3633770 (5th Cir. Sept. 16, 2010), does not control. In *Bian*, a Form I-485 applicant sought an order compelling a final decision on their Form I-485, but the applicant admitted that no immigrant visa was available at the time. *Id.* at 251. Without an immigrant visa, the Form I-485 would be denied if their application was adjudicated. *Id.* Nevertheless, the applicant brought the case, and this Court reviewed whether either subsection at § 1252(a)(2)(B) precluded judicial review. *Id.* at 253-54.

98.    Reviewing the language of § 1252(a)(2)(B)(i) and § 1252(a)(2)(B)(I), the Court noted that Congress gave the agencies authority to promulgate regulations for adjustment of status, and USCIS had promulgated a regulation that prevented it from adjudicating a Form I-485 unless or until the Department of State allocated an available visa number. *Id.* at 254. Because there was no immigrant visa available to the applicant, this Court characterized the applicant's challenge as a challenge to the agencies' application of that regulation: "Bian contests USCIS's decision to adjudicate her application in compliance with regulations that are clearly within the

agency's discretion to establish." *Id.* The Court then determined § 1252(a)(2)(B) precluded review to challenge USCIS's *action* to adjudicate in compliance with its regulations. *Id.* Contrary to USCIS's arguments, *Bian* did not find that § 1252(a)(2)(B) precluded judicial review over inaction. Rather, the Court construed Bian's claim as a challenge to the Agency's action. Thus, it is irrelevant here.

*Plaintiffs Allege Specific, Nonconclusory Facts that State a Plausible Claim*

99.    Plaintiffs here allege specific, nonconclusory facts that USCIS is unreasonably delaying final agency action on their Forms I-485. *Ashcroft v. Iqbal*, 556 U.S. 662, 679-80 (2008).

100.   Under *Iqbal*, Plaintiff need only allege non-conclusory, specific facts that demonstrate a plausible claim to relief to state a sufficient claim under Rule 12(b)(6). *Id.*

101.   This is a two-step analysis. First, the Court should review the complaint for well-pleaded allegations—those allegations that are non-conclusory. *Id.* at 678.

102.   Second, the Court should assume all well-pleaded allegations as true and determine whether the complaint states a "plausible" claim. *Id.* at 679.

103.   This is a "context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

104.   Tellingly, *Iqbal* does not instruct courts to determine the "merits" of the

claim.

105.   This is an unreasonable delay under the factors laid out in

*Telecommunications Research & Action Ctr. v. FCC ("TRAC")*, 750 F.2d 70 (D.C.

Cir. 1984). Those factors comprise:

> (1) "the time an agency takes to make a decision should be governed
> by a 'rule of reason' "; (2) "[t]he content of a rule of reason can
> sometimes be supplied by a congressional indication of the speed at
> which the agency should act"; (3) "the reasonableness of a delay will
> differ based on the nature of the regulation; that is, an unreasonable
> delay on a matter affecting human health and welfare might be
> reasonable in the sphere of economic regulation"; (4) "the effect of
> expediting delayed actions on agency activity of a higher or
> competing priority . . . [and] the extent of the interests prejudiced by
> the delay"; and (5) "a finding of unreasonableness does not require a
> finding of impropriety by the agency."

*Id.*

### *TRAC 1: Rule of Reason*

106.   First, USCIS has no rule of reason for adjudicating Forms I-485.

107.   USCIS does not decide them on a "first in, first out" basis, and it never has.

108.   At most, USCIS adjudicates them on a first in, first assigned basis, but it

has no rationale or logic for when it assigns them for adjudication.

109.   USCIS regularly adjudicates later-filed Forms I-485 prior to earlier-filed

Forms I-485.

110.   Further, USCIS adjudicates employment-based Forms I-485 differently at the Missouri Service Center than it does at the Texas and Nebraska Service Centers because applications at the Missouri Service Center are adjudicated much quicker. Thus, USCIS is treating Plaintiff differently than similarly situated applicants.

111.   USCIS also adjudicates Forms I-485 with later priority dates well before it decides Forms I-485 with earlier priority dates. This violates the law: "Immigrant visas made available under subsection (a) or (b) shall be issued to eligible immigrants in the order in which a petition in behalf of each such immigrant is filed with the Attorney General (or in the case of special immigrants under section 1101(a)(27)(D) of this title, with the Secretary of State) as provided in section 1154(a) of this title." 8 U.S.C. § 1153(b).

112.   USCIS does not have a uniform process for "interfiling" despite a recent policy announcement.

113.   Part of USCIS's rule of reason, to the extent it has one, is its Adjudications Hold Policy.

114.   USCIS's Adjudications Hold Policy is unlawful because it is based on USCIS's unlawful, *ultra vires*, or arbitrary requirement that an immigrant visa be immediately available at the time of approval, despite the clear congressional

intent to remove such eligibility criteria.

115.   This Adjudications Hold Policy can arbitrarily add years to a delay.

116.   For example, in 2012, immigrant visas available for EB2 immigrants regressed from those who applied on or by May 1, 2010 to those who applied on or by August 15, 2007. *Compare* April 2012 Visa Bulletin[3] *with* May 2012 Visa Bulletin.[4] It would take 9 years—until April 2021—for those EB2 immigrant visas to become available again for Indian nationals filing on or before May 1, 2010. Visa Bulletin April 2021.[5] In other words, if a foreign national had applied for an EB2 visa on or by May 1, 2010 and applied to adjust status in 2012, they had to wait until 2021 to be eligible to adjust status. Plaintiffs in this case risk similar regression if USCIS does not adjudicate their adjustment of status petitions by September 30, 2022.

117.   Similarly, the "transfer of underlying basis" process is now part of USCIS's rule of reason to the extent it has one.

118.   On January 21, 2022, USCIS announced a new "transfer of underlying

---

[3]                                                     Available                           at
https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin/2012/visa-bulletin-for-april
-2012.html (last visited Dec. 9, 2022)

[4]                                                     Available                           at
https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin/2012/visa-bulletin-for-may-
2012.html (last visited Dec. 9, 2022)).

[5]                                                     Available                           at
https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin/2021/visa-bulletin-for-april
-2021.html (last visited Dec. 9, 2022).

basis" process for adjustment of status applicants. USCIS, Green Card for

Employment-Based Immigrants. *See*

https://www.uscis.gov/green-card/green-card-eligibility/green-card-for-employme

nt-based-immigrants (last visited Sep. 22, 2022).

119.    Essentially, USCIS created a formal policy, requiring adjustment of status

applicants with multiple approved immigrant visas to choose which immigrant

visa will form the basis of the adjustment of status application:

> You may be eligible, using the new mailing address below, to request to transfer the underlying basis of your Form I-485, Application to Register Permanent Residence or Adjust Status, to a different employment-based immigrant category based on another Form I-140, Immigrant Petition for Alien Workers.
> USCIS may, in its discretion, grant a transfer request if the following criteria are met:
>     ● You have continuously maintained eligibility for adjustment of status;
>     ● Your adjustment of status application based on the original Form I-140 is still pending;
>     ● You are eligible for the new immigrant category; and
>     ● You have a visa immediately available in the new immigrant category.
>
> You must request in writing that USCIS transfer the underlying basis of your pending Form I-485 to another immigrant category.

*Id.* The Agency claims that it has discretion to reject a request for a transfer.

However, USCIS also discourages the filing of two adjustment of status

applications at the same time.

120.   For example, a member of the backlogged community has an immigrant visa approved in EB2 category in 2012. However, the EB3 immigrant visa becomes current in October 2020, and so the foreign national applies to adjust status on the basis of a concurrently filed EB3. Then, while the adjustment of status application is pending, the EB3 "regresses" and the EB2 becomes available. The foreign national would have to request that USCIS swap out or transfer the underlying basis of their pending adjustment of status application from unavailable EB3 to the available EB2.

121.   But USCIS is required to adjudicate a Form I-485 if the applicant has any immigrant visa current. It does not have discretion to refuse to decide if the applicant has an approved immigrant visa, regardless of whether it was mentioned in the I-485. USCIS maintains all of these records after all.

122.   This policy has led to a significant slowdown for members of the backlogged community.

123.   USCIS fails to adjudicate Forms I-485 with current visa numbers from backlogged countries because it has no rule of reason for these applicants, which by definition make up a vast majority of the backlog.

124.   Moreover, USCIS takes fees for the adjustment of status that cover the costs of timely adjudicating Forms I-485. USCIS sets the fee rate based upon the costs

it incurs to process benefit applications in a timely fashion. USCIS cannot defend its actions by alleging a lack of resources when it charges fees to pay for resources needed to fulfill its statutory duty.

125.   Its backlog of more than 150,000 pending Forms I-485 for employment-based immigrant visas indicates USCIS has a surplus of fees for adjudicating employment-based Forms I-485.

126.   To the extent USCIS can articulate a rule of reason, it does not apply it because there is no rhyme or reason to when Forms I-485 with current visa numbers will be decided.

127.   Finally, the significant slowdown in 2018 reveals the lack of any rule of reason because the Texas and Nebraska Service Centers' productivity fell more than 80% in a single fiscal year, more than 18 months before COVID shut things down.

128.   COVID is not responsible for the significant slowdown.

*TRAC 2: Congressional Intent*

129.   Second, Congress has provided a sense of how long these interim benefits should be pending by announcing a timeline for adjudication of immigrant visa petitions of 180 days. 8 U.S.C. § 1571(b).

130.   USCIS interprets congressional intent to require it to make decision sin 180

days. 72 Fed. Reg. 4888, 4892 (Feb. 1, 2007); 72 Fed. Reg. 29851, 29858-59

(May 30, 2007). USCIS attempts to comport with this legislative aspiration.

131.    Thus, Congress indicates, and the Agency agrees, it should take 180 days to

act on an Form I-485.

132.    This Court should not consider USCIS's published processing times

dispositive of whether a delay is reasonable because the processing times are

inconsistent and not credible and, "depending on the grounds for the delays, even

processing times at the low end of the range could be unreasonable." *Raju v.*

*Cuccinelli*, No. 20-cv-01386-AGT, 2020 U.S. Dist. LEXIS 153269, at *6 (N.D.

Cal. Aug. 14, 2020).

133.    Using USCIS's published processing times "say[] little about the

unreasonableness of USCIS's delay in Plaintiff's case; this number also does not

alter how most (if not all) [benefits] adjudications might be unreasonably delayed.

We find it unhelpful to fixate on the average snail's pace when comparing snails

against snails in a snails' race." *Garcia*, 25 F.4th at 454.

134.    However, if it does, USCIS reports its median processing time for

employment based I-485s is 9.9 months for FY 2021.

https://egov.uscis.gov/processing-times/historic-pt (last visited Dec. 9, 2022). The

Plaintiff has been waiting more than twice as long as the median. And it certainly

indicates that USCIS has decided more than half of its inventory faster than it is processing Plaintiff.

*TRAC 3: Human Health and Welfare or Economic Regulation?*

135.   Third, the Agency's delay impacts human health and welfare, not merely economic interests. USCIS's delay prevents Plaintiff from acquiring lawful permanent residency and all of the benefits and stability associated with that status.

136.   It also prevents them from starting to accrue the residency necessary to apply to become a naturalized United States citizen.

137.   These delays stunt the Plaintiff's career because, while portable, a new employer must be willing to file at least a letter under 8 U.S.C. § 1184(j) for a Plaintiff to take a new job. Further, that job must be substantially similar, which limits Plaintiff's career options.

138.   Traveling internationally as a non-immigrant is more difficult than traveling as a permanent resident. Most of the recent travel bans had exceptions for lawful permanent residents, but not non-immigrant Form I-485 applicants.

*TRAC 4: Effect of Compelling Agency Action on Higher Priority*

139.   Fourth, compelling agency action here would have no effect on a USCIS activity of a higher or competing priority.

140.   USCIS has announced that adjudicating as many employment-based Forms I-485 is a priority for FY 2023.

141.   Further, by statute, the agency is required to charge a fee that recaptures the actual expenses incurred in the adjudication process. The funds taken through application receipts are sufficient to accomplish the task of adjudicating within six months.

142.   Moreover, the current historic delay durations accelerated after additional employees were hired and fees were increased.

143.   There is no line for Forms I-485 because USCIS does not adjudicate them on a first in first out basis. Thus, compelling action would not allow Plaintiff to "jump the line"; such metaphor is simply misplaced in this context. Rather, USCIS regularly "jumps the line" by deciding later filed Forms I-485 before earlier filed Forms I-485.

144.   Compelling action comports with USCIS's priorities.

145.   Finally, upon information and belief, the Agency has a pattern and practice of delaying Forms I-485 for nationals of backlogged countries.

146.   The historic slowdown in adjudications at the Texas and Nebraska Service Centers, upon information and belief, is caused in part by a policy to slow down adjudications of Forms I-485.

33

147.   The transfer of thousands of Forms I-485 to the field offices only to have them returned was done, upon information and belief, to slow down processing.

*TRAC 5: Harm to Plaintiff from Delay*

148.   Plaintiff is suffering significant harm.

149.   They cannot acquire lawful permanent residency.

150.   They must maintain non-immigrant status.

151.   First, it prevents the acquisition of lawful permanent residence. This is a significant benefit that non-citizens live in the United States for years to acquire. In fact, most of the Plaintiff in this case have been in the United States for more than a decade and only became eligible for lawful permanent residency a year ago.

152.   Second, it prevents the accrual of residence for applying to become a naturalized United States citizen. *See generally* 8 U.S.C. §1427.

153.   Third, it hurts the United States labor force because non-citizens in lengthy delays can be subject to gaps in work authorization, which impacts the United States labor market. 81 Fed. Reg. 82398, 82455 (Nov. 18, 2016).

154.   Fourth, lengthy waits for acquisition of lawful permanent residency deprives non-citizens of acquiring better mortgage rates, lines of credit, and state and federal benefits.

155.   Fifth, it prevents non-citizens from applying for family-based immigrant

visas on behalf of qualifying relatives. *See generally* 8 U.S.C. § 1153(a).

156.   Sixth—most pressingly—lengthy waits for permanent residency for citizens of countries with visa backlogs risk retrogression of the visa bulletin.

157.   Seventh, lawful permanent residency is necessary to give Plaintiffs full career mobility. Employment-based non-immigrants are wholly reliant on their employer for their immigration status. For career advancement or working on government contracts, often employers require lawful permanent residency. Further, before a Plaintiff can move to a better job or get a promotion, a new employer must agree to file a transfer or a current employer must file an amendment. For similar reasons, employment based non-immigrants cannot open their own companies, pursue their own plans, or work for multiple employers (without governmental approvals). This causes significant harm that cannot be fixed as Plaintiffs are in their prime work years.

158.   Eighth, without lawful permanent residency, international travel is a mine field. To the extent they can get timely grants of advance parole from USCIS, parole does not guarantee readmission. It does not guarantee an airline will allow them to reboard in a foreign country. It is not travel authorization; it is advance parole. Further, if they seek to get a new nonimmigrant visa while they are in their country of nationality, they are at the whims of the consulates' schedules. With the

disparate fall out from the COVID 19 pandemic around the world, non-immigrant visa appoints are not available. For example, an non-immigrant visa appointment is not available in India until 2024. This forces Plaintiffs to forgo international trips to see ailing and dying parents. Plaintiffs have missed funerals, religious rites, and other landmark activities. These missed memories are irreparable.

159.   Finally, the stress, anxiety, and anguish that Plaintiffs suffer from meticulously maintaining their non-immigrant status for years, trying every possible way to expedite their lawful permanent residency, and following all of USCIS and DOS's tips adds up to hundreds of hours lost. These cannot be replaced. A life marked by uncertainty cannot lead to serenity. This hardship is irreparable.

160.   This harm greatly outweighs USCIS having to spend 98 minutes to adjudicate their pending Forms I-485 based on current visas.

### *TRAC 6: Agency Impropriety*

161.   The 90% reduction in productivity is indicative of bad faith delay.

162.   The Agency's knowing decision not to adjudicate Forms I-485 with current immigrant numbers that are, however, subject to likely regression is indicative of bad faith.

163.   There need not be agency impropriety to show the delay is unreasonable.

164.   Each TRAC factor weighs in favor of ordering USCIS to issue a decision on Plaintiff's applications'; thus, USCIS's delay is arbitrary and capricious under 5 U.S.C. § 706.

165.   Plaintiff demand discovery from Defendant to establish the delay is unlawful, intentional, and targeted at a specific and identifiable group.

166.   This delay is not substantially justified.

## PRAYER FOR RELIEF

Plaintiff prays that this Court will:

167.    Take jurisdiction over this case;

168.    Declare USCIS's delays described above in adjudication of the adjustment of status petitions unreasonable;

169.    Enter an order compelling USCIS to make a decision on Plaintiff's adjustment of status applications within 30 days, and if the Agency issues a request for additional evidence, order the Agency to make a final decision thereon within 30 days of its receipt of the Plaintiff's response to the request for evidence;

170.    Order Defendant to pay reasonable attorney's fees and costs under the Equal Access to Justice Act or another provision of law; and

171.    Enter and issue other relief that this Court deems just and proper.


March 14, 2023                          Respectfully submitted,

                                        s/Eli Echols
                                        ELI A. ECHOLS, ESQ.
                                        GA Bar No. 141839
                                        Attorney for Plaintiff
                                        Socheat Chea, P.C.
                                        3500 Duluth Park Lane, Building 300
                                        Duluth, GA 30096
                                        (770) 623-8880
                                        eli@socheatchea.com

## **CERTIFICATE OF SERVICE**

This is to certify I electronically filed the foregoing **COMPLAINT** with the Clerk of Court using the CM/ECF system. This system will automatically send email notification of such filing to all below Defendants who are registered with this system. In addition, in compliance with local rules, this initial Complaint and the accompanying Exhibits and summons have also been served by First Class Certified Mail, postage pre-paid, on:

Ur M. Jaddou, Director USCIS
c/o
Office of the Chief Counsel
5900 Capital Gateway Drive
Mail Stop 2120
Camp Springs, MD 20588-0009

Ryan K. Buchanan, U.S. Attorney
Richard B. Russell Federal Building
75 Ted Turner Dr. SW
Atlanta, Georgia 30303

Certified this 14th day of March, 2023.

_____/s/_____
Eli A. Echols, Esq.
Georgia Bar # 141839
Attorney for the Plaintiff
Socheat Chea, P.C.
3500 Duluth Park Lane, Bldg. 300
Duluth, Georgia 30096
(770) 623-8880
(770) 623-8852 (fax)
eli@socheatchea.com