## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| **Jaafar Omar** | |
| **Aisha Haroun** | Civil Action No. |
| **Hadya Yaakoub** | |
| **A.Y.,** *a minor* | **Complaint for Declaratory and Injunctive Relief Under the Administrative Procedure Act and for a Writ of Mandamus** |
| Plaintiffs, | |
| v. | |
| **U.S. DEPARTMENT OF STATE,** Executive Agency; | |
| **AMBER BASKETTE,** Deputy Chief of Mission, U.S. Embassy in Khartoum, Sudan; | |
| Defendants. | |

## <u>PLAINTIFFS ORIGINAL COMPLAINT</u>

This is an action to compel the U.S. Department of State and its officers (collectively referred to as "Defendants") to immediately take all appropriate action to adjudicate Plaintiffs' immigrant visa applications, which have been pending at the U.S. Embassy in Khartoum, Sudan ("the Embassy") for 24 months.

## I.     INTRODUCTION

Plaintiffs are a family who have been forced to endure prolonged separation because of the Defendants' unreasonable delays in adjudicating their immigrant visa applications. Plaintiffs Aisha Haroun, Hadya Yaakoub, and A.Y. are all beneficiaries

of approved immigrant petitions filed by Plaintiff Jaafar Omar, a United States citizen. Plaintiffs Aisha Haroun, Hadya Yaakoub, and A.Y. have all applied for immigrant visas, seeking admission to the United States as immediate relatives of a U.S. citizen, the most preferential immigrant classification afforded by law.

Plaintiffs' immigrant visa applications have been subjected to extreme and unusual delay, errors, duplicative requests for documents and information, and a lack of meaningful communication by the Embassy. As discussed further below, the procedural history of Plaintiffs' immigrant visa applications is riddled with irregularities and unwarranted scrutiny caused by the Defendants. As a result, Plaintiffs have suffered significant emotional and financial harm as they remain separated for an indefinite amount of time.

The Embassy is currently in possession of all relevant documents and information required to adjudicate the applications but have failed to so for an unreasonable amount of time. Plaintiffs seek a Court order mandating the Defendants to adjudicate Plaintiffs' visa applications within 30 days.

## II.    JURISDICTION AND VENUE

1.    Jurisdiction in this case is proper under 28 U.S.C. §§ 1331 and 1361. Specifically, this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which provides that "district courts shall have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States."

2.     This Court can also compel agency action that is unlawfully withheld, or which is contrary to law, an abuse of discretion, or arbitrary and capricious under the Administrative Procedure Act. 5 U.S.C. §§ 555(b), 706.

3.     Further, this Court has subject matter jurisdiction under the Mandamus statute, 28 U.S.C. § 1361. Districts courts have original jurisdiction over any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to them.  28 U.S.C. § 1361.  In this case, Defendants have failed or refused to adjudicate the Plaintiffs' visa applications in a timely and reasonable manner despite their clear, non-discretionary duty to do so, and there is no other adequate remedy available to Plaintiffs.

4.     Venue is proper before this Court pursuant to 28 U.S.C. § 1391(e) as this is an action against officers and agents of the United States in their official capacities in the district where Plaintiff Jaafar Omar resides. There is no real property is involved in this action.

### III.   PARTIES

5.    **Plaintiff Jaafar Omar** is a United States citizen and resident of Clarkston, GA. He is the petitioner of three approved I-130 Petitions for Alien Relative on behalf of his spouse, Plaintiff Aisha Haroun and two children, Plaintiffs Hadya Yaakoub, and A.Y.

6.     **Plaintiff Aisha Haroun** is a citizen of Sudan. She is the beneficiary of an approved I-130 Petition for Alien Relative filed on her behalf by her husband, Plaintiff Jaafar Omar. Plaintiff Aisha Haroun appeared for an interview at the Embassy on May 5, 2021, and again on July 19, 2021. Plaintiff Aisha Haroun is not the mother of Plaintiff Hadya Yaakoub. She is the mother of Plaintiff A.Y., and she and Plaintiff Jaafar Omar also have one other minor U.S. citizen child together. Her immigrant visa application is complete, and the Embassy is in possession of all relevant documents and information required to adjudicate her application.

7.     **Plaintiff Hadya Yaakoub** is a nineteen-year-old citizen of Sudan. She is the beneficiary of an approved I-130 Petition for Alien Relative filed on her behalf by her father, Plaintiff Jaafar Omar. Plaintiff Hadya Yaakoub appeared for an interview at the Embassy on May 5, 2021. Her immigrant visa application is complete, and the Embassy is in possession of all relevant documents and information required to adjudicate her application.

8.     **Plaintiff A.Y.** is a four-year-old citizen of Sudan. He is the beneficiary of an approved I-130 Petition for Alien Relative filed on his behalf by his father, Plaintiff Jaafar Omar. He appeared for an interview at the Embassy on May 5, 2021. His immigrant visa application is complete, and the Embassy is in possession of all relevant documents and information required to adjudicate his application.

9.     **Defendant U.S. Department of State** is a cabinet-level department of the U.S. federal government. Department of State ("DOS") is responsible for the issuance of nonimmigrant visas abroad.

10.    **Defendant Amber Blankette** is the Deputy Chief of Mission at the U.S. Embassy in Khartoum, Sudan and is the principal officer in charge of the Embassy. She is sued in her official capacity, along with any other successors and assigns.

## IV.   STATUTORY AND REGULATORY BACKGROUND

11.    Congress has long recognized that "family reunification" is the "cornerstone of U.S. immigration policy," and serves the "national interest." 136 Cong. Rec. H8629-02 (1990); *see also*, H.R. Rep No. 82-1355 (1952).

12.    Immigration based on a foreign national's familial relationship with a United States citizen is the primary method by which foreign nationals may seek to immigrate to the United States.

13.    Under the Immigration and Nationality Act (INA), family-sponsored visas may be issued to the spouses and children of United States Citizens. 8 U.S.C. § 1151(b)(2)(A)(i).

14.    This family-sponsored immigration process is initiated when U.S. Citizen sponsors a qualifying family member by filing a Petition for Alien Relative (Form I-130) with USCIS. *See* 8 U.S.C. § 1154. USCIS then verifies that the

petitioner is a U.S Citizen and that a qualifying familial relationship exists between the petitioner and the beneficiary. 8 C.F.R. § 204.1(a)(1).

15.     If an I-130 petition is approved, USCIS forwards the approved petition to the NVC. The beneficiary is then able to begin the process of formally applying for a visa by submitting a DS-260 Online Immigrant Visa and Alien Registration Application with the NVC.

16.     After completing the DS-260 application, filing supporting documentation, and paying applicable fees, a beneficiary becomes "documentarily qualified," meaning that "the applicant has obtained all documents specified by the consular officer as sufficient to meet the formal visa application requirements, and necessary processing procedures of the consular office have been completed."[1]

17.     When a case becomes documentarily qualified, the NVC then forwards the case file to the consular post. *See* Foreign Affairs Manual (FAM) 504.4-5(B).[2]

---

[1] Department of State, *The Operation of the Immigrant Numerical Control System*. Available at https://travel.state.gov/content/dam/visas/Immigrant%20Visa%20Control%20System_operation%20of.pdf (last accessed March 11, 2023).

[2] The FAM and its associated handbooks are a single, comprehensive, and authoritative source for the DOS's organization structures, policies, and procedures that govern the operations of the State Department, the Foreign Service and, when applicable, other federal agencies. The FAM conveys information to Department staff and contractors so they can carry out their responsibilities in accordance with statutory, executive and Department mandates. A digital copy of the FAM can be accessed at https://fam.state.gov/default.aspx# (last visited on November 2, 2021).

18.    The beneficiary is then interviewed by a consular officer at the beneficiary's applicable U.S. embassy or consulate.

19.    Under the INA, consular officials are required to act on visa applications. The relevant statutory language states that for immigrant visas:

> When a visa application has been properly completed and executed in accordance with the provisions of the INA and the implementing regulations, the consular officer must issue the visa, refuse the visa, or, pursuant to an outstanding order under INA 243(d), discontinue granting the visa.

22 C.F.R. § 42.81(a); *see also* 8 U.S.C. §§ 1101(a)(9), (16), 1201(b)(2)(A)(i); *Patel v. Reno*, 134 F.3d 929, 932 (9th Cir. 1997) ("A consular office is required by law to act on visa applications.").

20.    Congress has always expected that immigration benefits be issued in a timely manner. Specifically, Congress has declared that "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." 8 U.S.C. §1571(b).

21.    The FAM also recognizes that Congress intended family-based visa applications to be adjudicated expeditiously, stating that "Section 237 of Public Law 106-113 and subsequent legislation require that the Department establish a policy under which immediate relative (and fiancé(e)) visas be processed within 30 days of receipt of the necessary information from the applicant and the Department of Homeland Security (DHS); all other family-based immigrant visas (IV) must be

processed within 60 days. The Department expects all posts to strive to meet the

30/60-day *requirements*." 9 FAM 504.7-2 (emphasis added).

## V.    FACTUAL ALLEGATIONS

### A. *Plaintiff A.Y.*

22.    On September 12, 2018, Plaintiff Jaafer Omar filed an I-130, Petition

for Alien Relative on behalf of child, Plaintiff A.Y. The petition was approved on

February 12, 2020. *See* Exhibit A (Documents and Communications Regarding

Plaintiff A.Y.) at 1.

23.    Plaintiff A.Y.'s approved I-130 was transferred to the NVC and issued

the case number KHT2020584003. *See id* at 4.

24.    Plaintiff Jaafar Omar completed his Form DS-260, paid all required

fees, and submitted all required documentation to the NVC on behalf of Plaintiff

A.Y. His case became documentality complete on January 14, 2021. *See id* at 3.

25.    On January 25, 2021, the NVC sent Plaintiff A.Y.'s case to the

Embassy and scheduled him for an interview on February 17, 2021. *See id* at 5-7.

Plaintiff Aisha Haroun, Plaintiff A.Y.'s mother, was not scheduled to attend the

interview with her son.

26.    Upon information and belief, Plaintiff A.Y. was descheduled from this

interview.

27.     On January 29, 2021, the NVC sent Plaintiff A.Y. an email with the subject "Introduction to Document Collection," which is normally sent out to visa applicants upon the NVC's initial receipt of the approved immigrant petition.

28.     It was abnormal for the NVC to send this email to Plaintiff A.Y. since his case was already documentarily complete, and he had been scheduled for an interview with the Embassy just days before. *See id* at 8-10.

29.     Plaintiff A.Y. attended an in-person interview with Plaintiff Aisha Haroun and Plaintiff Hadya Omar on May 5, 2021. The Embassy only sent email notice of the interview for Plaintiff Aisha Haroun and Plaintiff Hadya Omar. The Embassy did not send Plaintiff A.Y. a separate email requesting that he appear for an interview.

30.     Plaintiff A.Y. submitted all required documentation, including a completed medical exam, to a consular officer during the May 5th interview.

31.     The consular officer also took possession of Plaintiff A.Y.'s passport during the May 5 interview. Collecting a passport usually indicates that the consular officer is prepared to approve the immigrant visa application and issue the visa by placing a stamp in the applicant's passport.

32.     On November 7, 2022, in response to a congressional inquiry, the Embassy advised the Plaintiffs that additional documents, including a renewed

medical exam, must be submitted to the Embassy via hand delivery. *See id* at 11-12.

33.     On November 14, 2022, the Embassy sent Plaintiff A.Y. an email asking him to provide an updated medical report, updated police clearance reports, and a host of other documents. The email contains typographical errors, contradicting information regarding the manner of document delivery, and is signed by "R.M.M" with the "Visa Unit." Upon information and belief, the U.S. Embassy in Khartoum uses contracted workers, who are not consular officers, to assist in document gathering and applicant communication. *See id* at 13-15.

34.     On November 23, 2022, the Embassy once again requested financial sponsorship documents from Plaintiffs. Plaintiffs provided all requested documents and information to the Embassy. *See id* at 16-19.

35.     Despite having already submitted all of the requested information, Plaintiff Jaafar Omar paid for another medical exam, collected all requested documentation, and had the documents hand-delivered to the Embassy.

36.     Plaintiff Jaafar Omar does not recall exactly when he submitted each medical exam, but he does recall having to purchase three medical exams for each member of his family, spending $1,500 in total.

37.     On February 13, 2023, the NVC sent Plaintiff A.Y. an email with the subject "Notice of Immigrant Visa Case Creation," which is normally sent out to

visa applicants upon the NVC's initial receipt of the approved immigrant petition. It was abnormal for the NVC to send this email to Plaintiff A.Y. since almost two years had passed since his case was at the NVC. *See id* at 20-21.

38.    On February 18, 2023, the NVC sent Plaintiff A.Y. another untimely email with the subject line "Introduction to Document Collection." This email is normally sent to applicants at the very beginning of NVC processing. *See id* at 22-23.

39.    On February 22, 2023, the Embassy sent Plaintiff A.Y. another email, again asking him to provide an updated medical report, an updated police clearance report, and a host of other documents. *See id* at 24-25.

40.    Plaintiff A.Y., through counsel, informed the Embassy that he had previously submitted all documentation on numerous occasions, but the embassy has failed to respond.

41.    As of the date of filing this complaint, Plaintiff A.Y.'s immigrant visa status shows "Ready" for an interview, despite having been interviewed on May 5, 2021. *See id* at 26.

42.    In total, the Embassy has been in possession of Plaintiff A.Y.'s immigrant visa application for 26 months. It has been 22 months since Plaintiff A.Y. appeared for an interview at the Embassy.

### B. Plaintiff Hadya Yaakoub

43.     On January 12, 2021, Plaintiff Jaafer Omar filed an I-130, Petition for Alien Relative on behalf of his child, Plaintiff Hadya Yaakoub. The petition was approved on March 11, 2021. *See* Exhibit B (Documents and Communication Regarding Plaintiff Hadya Yaakoub) at 1.

44.     Plaintiff Jaafar Omar had previously filed a Form I-130 on Plaintiff Hadya Yaakoub's behalf, but that petition was denied by USCIS because Plaintiff Jaafar Omar was unable to obtain original copies of certain required documents related to his previous marriage to Plaintiff Hadya Yaakoub's mother.

45.     The NVC received Plaintiff Hadya Yaakoub's case on March 15, 2021, sent her the case initiation email, and issued her the case number KHT2021574003. *See id* at 3-4.

46.     On March 16, 2021, the NVC expedited Plaintiff Hadya Yaakoub to the Embassy under the Child Citizenship Act because Plaintiff Hadya Yaakoub was nearing her 18th birthday.[3]

---

[3] If an American Citizen files an immigration petition for a child that is about to reach the age of 18, the NVC sends the case to the consular post with a request to expedite the processing of the case.  The Child Citizenship Act (CCA) intends to help eligible children reach the United States before their 18th birthday, so they can benefit from U.S. Citizenship on arrival in the U.S.

47.    The Embassy sent multiple emails to Plaintiff Hadya Omar within minutes of one another. Each email contained differing case numbers – KHT2021574003 and KHT2021575001. *See id* at 5-6.

48.    A few hours later, on March 16, 2021, the NVC sent to Plaintiff Hadya Yaakoub another case initiation email, this time with the case number KHT2021575001. *See id* at 7-8.

49.    On April 17, 2021, the Embassy sent an email to Plaintiff Hadya Yaakoub which requested that she appear for an in-person interview on May 5, 2021. Plaintiff Hadya Yaakoub attended the interview, along with her brother Plaintiff, A.Y., and her stepmother, Plaintiff Aisha Haroun. *See id* at 9-18.

50.    After the interview, the Embassy did not collect Plaintiff Hadya Yaakoub's passport.

51.    On September 8, 2021, months after Plaintiff Hadya Yaakoub turned 18, the Embassy requested a DNA test to confirm if she was in fact the biological child of Plaintiff Jaafar Omar. *See id* at 19-28.

52.    Plaintiffs dutifully underwent the DNA test and hand delivered the results, along with Plaintiff Hadya Yaakoub's passport, to the Embassy.

53.    On November 7, 2022, in response to a congressional inquiry, the Embassy advised the Plaintiffs that additional documents, including a renewed medical exam, must be submitted to the Embassy via hand delivery. *See id* at 29-

30. Despite having provided the embassy with the same evidence on multiple occasions, Plaintiffs hand delivered the requested documents to the Embassy.

54.     On November 23, 2022, the Embassy once again requested financial sponsorship documents from Plaintiffs. Plaintiffs provided all requested documents and information. *See id* at 31-33.

55.     On February 22, 2023, the Embassy sent Plaintiff Hadya Yaakoub another email, almost identical to the November 7 correspondence, again asking her to provide an updated medical report, an updated police clearance reports, and host of other documents. *See id* at 34-35.

56.     Plaintiff Hadya Yaakoub, through counsel, informed the Embassy that she had previously submitted all documentation on numerous occasions, but the embassy has failed to respond.

57.     As of the date of filing this complaint, both of Plaintiff Hadya Yaakoub's immigrant visa case numbers show that her application is "Ready" for an interview, despite having been interviewed on May 5, 2021. *See id* at 36-37.

58.     In total, the Embassy has been in possession of Plaintiff Hadya Yaakoub immigrant visa application for 24 months. It has been 22 months since Plaintiff Hadya Yaakoub appeared for an interview at the Embassy.

### C. *Plaintiff Aisha Haroun*

59.     On April 18, 2018, Plaintiff Jaafer Omar filed an I-130, Petition for Alien Relative on behalf of his spouse, Plaintiff Aisha Haroun. The petition was approved on February 12, 2020. Exhibit C (Documents and Communication Regarding Plaintiff Aisha Haroun) at 1.

60.     Plaintiff Aisha Haroun's approved I-130 was transferred to the NVC and issued the case number KHT2020584002. *See id* at 2-4.

61.     Plaintiff Aisha Haroun completed her Form DS-260, paid all required fees, and submitted all required documentation to the NVC.

62.     On February 3, 2021, Plaintiff Aisha Haroun received a message from the NVC incorrectly stating that her immigrant visa classification had changed from the spouse of a lawful permanent resident to the spouse of a U.S. citizen. *See id* at 6.

63.     This message from the NVC was clearly incorrect since Plaintiff Jaafar Omar became a U.S. citizen before he filed I-130 petitions for his family.

64.     The timing of the NVC's message is also unusual because at the time it was sent, Plaintiff A.Y.'s case had already been documentarily qualified, and he had already been scheduled for an interview at the Embassy. The NVC normally interviews family members together, particularly in cases where there are very young applicants, like A.Y.

65.    On March 16, 2021, Plaintiff Aisha Haroun's application was also expedited to the Embassy, along with the application of Plaintiff Hadya Yaakoub.

66.    On May 5, 2021, Plaintiff Aisha Haroun attended an in-person interview with Plaintiff A.Y. and Plaintiff Hadya Omar. *See id* at 8-17.

67.    Plaintiff Aisha Haroun submitted all required documentation, including a completed medical exam, to a consular officer during the May 5th interview.

68.    The consular officer took possession of Plaintiff Aisha Haroun's passport during the May 5th interview. Collecting a passport usually indicates that the consular officer is prepared to approve the immigrant visa application and issue the visa by placing a stamp in the applicant's passport.

69.    On July 7, 2021, the Embassy sent an email to Plaintiff Aisha Haroun, instructing her to appear for a second in-person interview at the Embassy, this time with Plaintiff Jaafar Omar. The second interview was scheduled for July 19, 2022. *See id* at 18-20.

70.    Plaintiff Jaafar Omar and Plaintiff Aisha Haroun attended the July 19th interview together.

71.    On November 7, 2022, in response to a congressional inquiry, the Embassy advised the Plaintiffs that additional documents, including a renewed medical exam, must be submitted to the Embassy via hand delivery. Despite having provided the embassy with the same evidence on multiple occasions, Plaintiffs

nonetheless hand delivered the requested documents to the Embassy. *See id* at 21-22.

72.     On November 23, 2022, the Embassy once again requested financial sponsorship documents from Plaintiffs. Despite having already submitted all of the requested information, Plaintiffs paid for another medical exam, collected all requested documentation, and hand-delivered the documents to the Embassy. *See id* at 26-28.

73.     Plaintiffs, through counsel, informed the Embassy that they have previously submitted all documentation in numerous occasions, but the embassy has failed to respond.

74.     As of the date of filing this complaint, Plaintiff Aisha Haroun's immigrant visa status shows "Refused," despite the Embassy being in possession of all required documents and information needed to adjudicate her application. *See id* at 29.

75.     In total, the Embassy has been in possession of Plaintiff Aisha Haroun's immigrant visa application for 24 months. It has been 22 months since Plaintiff Aisha Haroun appeared for an interview at the Embassy.

### D. Exhaustion

76.     Plaintiffs and their counsel have attempted to contact the Defendants numerous times in efforts to resolve the delay, but have received no meaningful

response, and on many occasions, no response at all. *See* Exhibit D (Unanswered Communication with Defendants and Congressional Requests).

77.    Plaintiffs have also sought congressional assistance on more than one occasion. The congressional assistance requests have only resulted in duplicative requests for documents and information that the Embassy already has. *See id*.

78.    Plaintiffs have done everything that the Defendants have asked of them, and they have exhausted all available avenues to have their cases promptly adjudicated.

79.    Plaintiffs have suffered significant emotional and financial harm as they remain separated for an indefinite amount of time.

80.    Plaintiffs have no other recourse against Defendants' unlawful delay than by way of this lawsuit.

## VII.   CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### (Unreasonable Delay in Violation of the Administrative Procedure Act (5 U.S.C. § 706(1))

81.    Plaintiffs re-allege and incorporate by reference each of the foregoing and following paragraphs.

82.    The APA requires administrative agencies to conclude matters presented to the agency for decision "within a reasonable time." 5 U.S.C. § 555(b).

83.    The "agency action" that is covered by the APA includes "the whole or

a part of an agency rule, order, license, sanction, relief, or the equivalent to denial thereof, or *failure to act*." 5 U.S.C. § 551(13) (emphasis added).

84.   The APA explicitly provides a right of judicial review to a person "adversely affected or aggrieved" by an agency's "fail[ure] to act" or other agency action. 5 U.S.C. § 702.

85.   Accordingly, when a proper showing is made, "[t]he reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

86.   Here, the Defendants have unreasonably delayed and unlawfully withheld the adjudication of the Plaintiffs' visa applications.

87.   The immigrant visa application of Plaintiff A.Y. has been in the possession of Embassy since January of 2021. Plaintiffs allege that this 26-month delay is unreasonable.

88.   The immigrant visa applications of Plaintiffs Aisha Haroun and Hadya Yaakoub have been in the possession of Embassy since March of 2021. Plaintiffs allege that this 24-month delay is unreasonable.

89.   Plaintiffs Hadya Yaakoub, A.Y., and Aisha Haroun were all initially interviewed on May 5, 2021. Plaintiffs allege that this 22-month delay, post-interview, is unreasonable.

90.   The unreasonable delay and unlawful withholding are evident by the

Defendants' numerous errors and irregularities in processing Plaintiffs' visa applications, including, but not limited to, the following:

a. Scheduling and descheduling Plaintiff A.Y. for an interview at the Embassy while his mother's case was still processing at the NVC;

b. Failing to notify Plaintiff A.Y. of his rescheduled visa interview;

c. Sending Plaintiffs multiple contradictory, repetitive, irrelevant, or untimely emails at various stages of the visa application process. On one occasion, the NVC sent Plaintiff Jaafar Omar an email containing an unknown individual's name and case number.

d. Requesting duplicate documents, information, and medical exams on multiple occasions;

e. Incorrectly determining that Plaintiff Aisha Haroun had changed immigrant visa categories;

f. Failing to provide Plaintiff Aisha Haroun with a documentarily complete date;

g. Requiring a DNA test from Plaintiff Hadya Omar, despite USCIS's determination that a valid parent-child relationship existed;

h. Failing to expedite the processing of Plaintiff Hadya Omar's immigrant visa application under the Child Citizenship Act;

i. Assigning Plaintiff Hadya Omar multiple case numbers;

j.  Subjecting Plaintiffs Aisha Haroun and Jaafar Omar to a second interview, despite USCIS's determination that a bona fide spousal relationship exists;

k.  Failing to respond to Plaintiffs' inquiries;

l.  Failing to adequately respond to Plaintiffs' congressional inquiries;

m. Subjecting Plaintiffs to communication with potentially inadequately trained contract workers and staff, increasing the likelihood of mistakes and irregularities in the visa processing.

91.   Defendant's failure to take corrective action when informed of their duplicative requests also contributes to the unreasonableness of the delay that Plaintiffs face.

92.   Plaintiffs have been harmed and prejudiced by the delay. Plaintiffs have been forced to endure prolonged family separation, with no indication as to when they will be reunited as a family in the U.S. The Defendants' delay in adjudicating Plaintiffs immigrant visa applications has deprived Plaintiffs of the ability to adequately plan for their future in the United States.

93.   The delay has caused emotional distress, stress, and anxiety to all Plaintiffs.

94.   The delay has resulted in financial harm to Plaintiffs. Plaintiff Jaafar Omar bares the financial burden of providing for two households. The Defendants

have financially harmed Plaintiff Jaafar Omar by requiring him to incur the expenses associated with acquiring multiple medical exams and police clearance reports.

95.    Defendants' failure to adjudicate Plaintiff Hadya Yaakoub's immigrant visa application before her 18th birthday has caused her significant harm to, as she is no longer eligible to become a U.S. citizen upon arrival to the United States under the Child Citizenship Act.

96.    The delay in adjudicating Plaintiffs' immigrant visa applications is unreasonable when assessed against existing statutory and regulatory timetables. In particular, Congress has declared that "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." 8 U.S.C. §1571(b).

97.    Moreover, the FAM recognizes that Congress intended family-based visa applications be adjudicated expeditiously, stating that "Section 237 of Public Law 106-113 and subsequent legislation require that the Department establish a policy under which immediate relative (and fiancé(e)) visas be processed within 30 days of receipt of the necessary information from the applicant and the Department of Homeland Security (DHS); all other family-based immigrant visas (IV) must be processed within 60 days. The Department expects all posts to strive to meet the 30/60-day requirements." 9 FAM 504.7-2.

98.    For these reasons, this Court should find that the delay in processing

Plaintiffs' cases is not reasonable.

## SECOND CAUSE OF ACTION
### (Writ of Mandamus Act (28 U.S.C. § 1361))

99.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as fully set forth herein.

100.   Plaintiffs seeks a writ of mandamus to compel Defendants "to perform a duty owed to [them]." 28 U.S.C. § 1361.

101.   Mandamus is available to compel a federal official or agency to perform a duty if: (1) the plaintiff has a clear right to the relief requested; (2) defendant has a clear, non-discretionary duty to act; and (3) there is no other adequate remedy available. *See id*.

102.   Plaintiffs are eligible for and have fulfilled all requirements for immediate relative immigrant visas. They have submitted all necessary information and evidence supporting their applications.

103.   Defendants have a clear, ministerial, and nondiscretionary duty to adjudicate the visa applications as they have been properly completed and executed. 8 U.S.C. 1153(e)(1), 1154; 22 C.F.R. 42.81(a). Consular officers at overseas posts are obligated by the Defendants' own regulations to either issue or refuse immigrant visa applications once an application has been executed. Plaintiffs therefore have a clear and certain right to have their visa application adjudicated.

104.   Plaintiffs have made numerous attempts to resolve the issue directly

with the Defendants, but their inter-agency requests and communications have been unsuccessful. Plaintiffs' congressional requests have only led to request for duplicative information by the Defendants.

105.   Therefore, Plaintiffs seek an order compelling the Department of State to adjudicate their visa application within 30 days.

## VIII.  REQUEST FOR RELIEF

WHEREFORE, Plaintiffs request that this Court grant the following relief:

(1)   Assume jurisdiction over this matter;

(2)   Issue a writ of mandamus compelling Defendants to adjudicate Plaintiffs' visa applications within 30 days;

(3)   Enter a judgment declaring Defendants' unreasonable delay and failure to adjudicate Plaintiffs Mr. Omar's visa to be in direct violation of the APA, the INA, and federal regulations;

(4)   Award Plaintiffs costs of suit and reasonable attorney's fees under the Equal Access to Justice Act, 42 U.S.C. §1988, and any other applicable law;

(5)   Grant such further relief as this Court deems just and proper.

Respectfully submitted this 14th day of March, 2023.

/s/ Hassan Kouyate
HASSAN KOUYATE
GA Bar: 497825

Law Firm of Kouyate & Assoc., LLC
1 Glenlake Pkwy, Ste 650
Atlanta, Georgia 30328
Tel: 404-999-4708
Fax: 626-900-8024
hassan@kouyatelawfirm.com

/s/ Waleed Naser
WALEED NASER[4]
Tennessee Bar # 037970
Illinois Bar # 6341786
Naser Immigration Law, LLC
155 N. Wacker Dr. Suite 4250
Chicago, IL 60606
waleed@naserlegal.com

*Attorneys for Plaintiffs.*

---

[4] *Pro hac vice* motion forthcoming.

## CERTIFICATE OF SERVICE

I, Hassan Kouyate, certify that on March 14, 2023 I filed the foregoing with the Clerk of Court using the CM/ECF system, and I certify that I will mail a hard copy of the document to the individuals listed below pursuant to Fed.R.Civ.P. 4 via certified mail to:

> Civil Process Clerk
> U.S. Attorney for the Northern District of Georgia
> The United States Attorney's Office
> Richard B. Russell Federal Building
> 75 Ted Turner Drive, S.W., Suite 600
> Atlanta, Georgia 30303-3309
>
> U.S. Department of State
> c/o Executive Office
> Office of the Legal Advisor, Suite 5.600
> 600 19th St. NW
> Washington, D.C. 20522
>
> Amber Blankette
> c/o Executive Office
> Office of the Legal Advisor, Suite 5.600
> 600 19th St. NW
> Washington, D.C. 20522
>
> Merrick Garland
> Attorney General of the United States
> 950 Pennsylvania Avenue, NW,
> Washington, DC 20530

Respectfully submitted this 14th day of March, 2023.

 _/s/ Hassan Kouyate_____