IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, ) ) ) ) | |
| Plaintiff, ) ) | CIVIL ACTION FILE NO. |
| v. ) ) | |
| EMIL SUIUGAN and PRIME PAINTERS, LLC, ) ) ) | |
| Defendants. ) | |

## COMPLAINT

Plaintiff Travelers Property Casualty Company of America ("Travelers") files this complaint for damages as follows.

## PARTIES

1.

Travelers is a corporation organized under the laws of Connecticut with its principal place of business in Connecticut.

2.

Emil Suiugan is a citizen of Georgia and may be served at his residences located at 1760 Shady Creek Lane, Lawrenceville, Georgia 30043 and 1924A Collins Hill Road, Lawrenceville, Georgia 30043.

3.

Emil Suiugan has done or does business under the name Prime Painters, LLC and/or Prime Painting & Tile, LLC.

4.

Prime Painters, LLC ("Prime Painters") is organized in Georgia, has its principal office address at 1924A Collins Hill Road, Lawrenceville, Georgia 30043, and is a citizen of Georgia for purposes of federal court jurisdiction, where its sole member Emil Suiugan is a citizen. It may be served through its registered agent, Kimberly Hoipkemier, at 1215 Hightower Trail, Suite C-200, Atlanta, Georgia 30350.

## JURISDICTION AND VENUE

5.

There is complete diversity of citizenship between Travelers, which is a citizen of Connecticut, and Defendants, who are citizens of Georgia, for purposes of federal court jurisdiction.

6.

The amount in controversy exceeds $75,000.00.

7.

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

8.

Defendants are subject to the personal jurisdiction of this Court.

9.

Venue is proper in the Atlanta Division of the Northern District of Georgia, where Defendants reside. 28 U.S.C. § 1391(b); N.D. Ga. L.R. 3.1.

**FACTS**

10.

In June 2017, Prime Painters submitted an application for workers compensation insurance that was signed by its member, Emil Suiugan, and producer Vicki Neville with agency Foster and Associates DBA Foster Witmer Insurance Agency. A true and complete copy of the application materials that were included with the binder for coverage are attached hereto as Exhibit 1, which is herein incorporated by reference.

11.

The application signed by Emil Suiugan included a section entitled "INDIVIDUALS INCLUDED/EXCLUDED" that listed only Emil Suiugan as

Prime Painters' member with 100% ownership in the business.

12.

The application further included a State Rating Worksheet that was completed to show that Prime Painters had "0" (zero) employees and identified the business as falling within Class Code 5474 as "Painting NOC Shop Operations Drivers."

13.

The application listed Prime Painters' mailing address as 1760 Shady Creek Lane, Lawrenceville, GA 30043-2709.

14.

The application then included a "total estimated annual premium" which was calculated at a total of $1,620.00.

15.

Based on the information provided in the application, Travelers issued an assigned risk worker's compensation insurance policy to Prime Painters as the named insured, Policy No. 6JUB-8H17878-6-17, for the period June 15, 2017 to June 15, 2018.

16.

Apart from a brief lapse in coverage in June 2019, the policy was renewed annually up to the 2021-2022 term during which time it was cancelled effective October 6, 2021.

17.

True and complete copies of the following policies issued to Prime Painters are attached to Mark Mocadlo's Declaration, which is enclosed hereto as <u>Exhibit 2</u>, as Exhibits A to E, respectively, and which are herein incorporated by reference:

- A. Policy No. 6JUB-8H17878-6-17 for the period June 15, 2017 to June 15, 2018 ("2017 Policy");

- B. Policy No. 6JUB-8H17878-6-18 for the period June 15, 2018 to June 15, 2019 ("2018 Policy");

- C. Policy No. 6JUB-4N42607-7-19 for the period June 21, 2019 to June 15, 2020 ("2019 Policy");

- D. Policy No. 6JUB-4N42607-7-20 for the period June 15, 2020 to June 15, 2021 ("2020 Policy"); and

- E. Policy No. 6JUB-4N42607-7-21 for the period June 15, 2021 to June 15, 2022 ("2021 Policy").

(collectively, the "Policies").

18.

The 2017, 2018, and 2019 Policies were issued to Prime Painters at 1760 Shady Creek Lane, Lawrenceville, GA 30043-2709.

19.

The 2020 and 2021 Policies were issued to Prime Painters at 1924A Collins Hill Road, Lawrenceville, GA 30043.

20.

The estimated premium applied to each of the policy terms matched the estimate listed in the application at $1,620.00 (except the 2019 Policy, which was calculated at $1,594.00).

21.

Each of the policies included the following notice on the Information Page:

> The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and Rating Plans. All required information is subject to verification and change by audit to be made ANNUALLY.

22.

Each of the policies further included the following notice to the policyholder:

**ATTENTION: GEORGIA CONTRACTORS**
**YOU MAY BE LIABLE FOR WORKERS COMPENSATION**
**COVERAGE FOR YOUR CONTRACTORS**

Did you know that if you have Workers' Compensation Insurance in Georgia and you use contractors in your business you may be liable for uninsured contractors? Without valid Workers' Compensation certificates of insurance for your contractors you may be charged an additional premium.

23.

The Policies also included the following terms under **PART FIVE PREMIUM, E. Final Premium**:

> the premium shown on the Information Page, schedules, and endorsements is an estimate. The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy. If the final premium is more than the premium you paid to us, you must pay us the balance.

24.

The Policies further included an endorsement that amended **PART FIVE PREMIUM, D. Premium Payments** to state: "You will pay all premium when due. You will pay the premium even if part or all of a workers compensation law is not valid. **The due date for audit and retrospective premiums is the date of the billing.**"

25.

The Policies further provided under **PART FIVE PREMIUM, F. Records** that "[y]ou will keep records of information needed to compute premium. You will

provide us with copies of those records when we ask for them."

26.

The Policies further provided under **PART FIVE PREMIUM, G. Audit**:

> You will let us examine and audit all your records that relate to this policy. These records include ledgers, journals, registers, vouchers, contracts, tax reports, payroll and disbursement records, and programs for storing and retrieving data. We may conduct the audits during regular business hours during the policy period and within three years after the policy period ends. Information developed by audit will be used to determine final premium. Insurance rate service organizations have the same rights we have under this provision.

27.

The Policies further provided under **PART FIVE PREMIUM, C. Remuneration** that:

> Premium for each work classification is determined by multiplying a rate times a premium basis. Remuneration is the most common premium basis. This premium basis includes payroll and all other remuneration paid or payable during the policy period for the services of:
> 1. all your officers and employees engaged in work covered by this policy; and
> 2. all other persons engaged in work that could make us liable under Part One (Workers Compensation Insurance) of this policy. If you do not have payroll records for these persons, the contract price for their services and materials may be used as the premium basis. This paragraph 2 will not apply if you give us proof that the employers of these persons lawfully secured their workers compensation obligations.

28.

The Policies also included an endorsement entitled **Audit Noncompliance Charge Endorsement** that permits a maximum audit noncompliance charge multiplier of up to two times the annual premium if the insured does not allow Travelers to "examine and audit all of your records that relate to this policy, and/or do not provide audit information as requested."

29.

Shortly after the 2017 Policy came into effect, Travelers requested additional information from Prime Painters based on a detailed review of the policy that indicated the business may have used "helpers/contractors/subcontractors" to perform work, in contrast to the representations made in the application.

30.

The letter further noted that "[e]ach policy term will be reviewed and audited in regards to the helpers/contractors/subcontractors working on behalf of our insured and we reserve the right to include any payroll paid to uninsured subcontractors or individuals who do not meet the Georgia requirements for independent contractors."

31.

In a response initialed by Emil Suiugan, Prime Painters confirmed that it had no employees, helpers, contractors, or subcontractors, and that it does not file Form 1099 or Form 1096 with the tax authorities.

32.

Travelers thereafter audited Prime Painters annually in accordance with the policy terms.

33.

Each year Emil Suiugan, on behalf of Prime Painters, confirmed that the business has no employees or contractors but rather he manages the business and performs the labor himself.

34.

Occasionally, Travelers was forced to issue Notices of Noncooperation to Prime Painters when Suiugan, on behalf of Prime Painters, failed to produce information and documents, such as tax records, upon request.

35.

Then, during Travelers audit for the 2020-2021 policy term, Suiugan revealed for the first time that Prime Painters uses uninsured contract labor for its work.

36.

Travelers learned this information from an email directly from Suiugan that confirmed, "I do have guys and pay them," as well as from tax forms that Suiugan produced for the first time. For instance, Suiugan provided Prime Painters' Form 1096 for 2020 that listed 11 Form 1099-NECs for nonemployee compensation totaling $423,069.00 to 11 individual recipients. A true and correct copy of the Form 1096 that Suiugan provided to Travelers is attached hereto as <u>Exhibit 3</u> and is incorporated herein by reference.

37.

The revelation that Prime Painters retains individuals that are compensated through Form 1099-NEC directly contradicts the statements Prime Painters and Suiugan had made during prior audits and the application that Prime Painters has no employees, helpers, contractors, or subcontractors.

38.

After the audit was complete, both Suiugan and his accountant agreed with the audit findings during the exit interview.

39.

Based on this new information, Travelers requested additional documentation such as:

- Complete copies of all 1099's issued or received by Prime Painters, LLC during calendar year 2018, 2019 and 2020, including a copy of each year's 1096.
- A listing of all payments made to any subcontractor, independent contractor or contract worker during the time period of 6/15/18 – 6/15/20. For each payment, please list the date of the payment; the recipient of the payment; the amount of the payment; what the payment was for; and, whether the payment was in cash, check or other.
- Copies of any valid certificates of insurance for any subcontractors, independent contractors or contract workers that did any work for you during the time period 6/15/18 – 6/15/20.
- A listing of all payments made to any employee during the time period of 6/15/18 – 6/15/20. For each payment, please list the date of the payment; the recipient of the payment; the amount of the payment; what the payment was for; and, whether the payment was in cash, check or other.
- A complete copy of your 2018, 2019 and 2020 year-end tax report, including all schedules and attachments.
- A signed and notarized statement indicating that any information provided to my office is complete and accurate to the best of your knowledge.

*See* Exhibit F to Mark Mocadlo's Declaration at Exhibit 2, hereto.

40.

When Suiugan did not cooperate with the investigation, Travelers issued Premium Adjustment Notices for the policy periods from 2018 to the cancellation date on October 6, 2021, using the information then available (such as the newly-produced Form 1096) as a basis. These Premium Adjustment Notices are included

near the end of the policies attached as exhibits to Mark Mocadlo's Declaration at Exhibit 2, hereto.

41.

The adjusted premium for the 2017-2022 policy terms totaled at least $923,378.00, including but not limited to:

- $155,641.00 for the 2018 Policy that was due no later than November 25, 2021;

- $150,306.00 for the 2019 Policy that was due no later than November 25, 2021;

- $159,790.00 for the 2020 Policy that was due no later than September 6, 2021; and

- $457,641.00 for the 2021 Policy.

42.

Prime Painters has not paid these adjusted amounts.

43.

Later, Suiugan produced some bank statements dated between June 2018 and June 2019 and between June 2020 and June 2021 that did not include copies of cancelled checks. The bank statements listed "Prime Painters LLC" as the account

holder with the address 1924A Collins Hill Rd, Lawrenceville, Georgia 30043-3004.

44.

While the bank statements were for a "business choice checking" account for Prime Painters, the transactions listed reflect numerous personal withdrawals, such as for vacations and jewelry; transfers to accounts in Emil Suiugan's name, such as personal savings accounts; loan payments that appear unrelated to the painting industry; and payments made by the Georgia Department of Community Affairs under its Housing Assistance Program for landlords.

45.

The statements also reflect "business to business" transactions bearing Suiugan's name.

46.

The bank statements further show total deposits of approximately $2 million during the 2018-2021 timeframe alone, which does not include the statements missing from that time period (notably the year-long gap between June 2019 and June 2020).

47.

Almost all of these funds have been withdrawn during that timeframe as reflected in the statements that show withdrawals totaling approximately $1.864 million.

## COUNT I – BREACH OF CONTRACT
## FOR FAILURE TO PAY AMOUNTS OWED

48.

Travelers hereby incorporates by reference the preceding paragraphs of this complaint as though fully restated herein.

49.

Prime Painters entered into insurance contracts with Travelers for workers' compensation coverage that resulted in the Policies described above.

50.

As a result of the auditing of these policies, it was calculated that Prime Painters owes Travelers more than the estimated premium that was paid.

51.

As such, Prime Painters is indebted to Travelers and is liable and bound to pay the outstanding premium balance for the Policies, totaling at least $923,378.00.

52.

The amounts were calculated based on the information Prime Painters has provided Travelers to date.

53.

Prime Painters incurred these debts through false pretenses, a false representation, or actual fraud.

54.

Despite demands for payment, Prime Painters has failed to pay the outstanding premium balance owed, in breach of the Policies' terms.

### COUNT II - ALTER EGO LIABILITY/PIERCING THE VEIL AGAINST ALL DEFENDANTS

55.

Travelers hereby incorporates by reference the preceding paragraphs of this complaint as though fully restated herein.

56.

Emil Suiugan and Prime Painters (which shares the same addresses as Suiugan) have comingled or confused their otherwise separate properties and finances and have failed to maintain an arms-length relationship with each other.

57.

Suiugan, as the owner, operator, officer, manager and/or director of Prime Painters, has abused and disregarded the legal entity and separateness of Prime Painters and made the entity a mere instrument of his affairs.

58.

Defendants have achieved this by, among other things, Suiugan's use of Prime Painters' funds for personal expenses and other expenses unrelated to Prime Painters' business.

59.

Such a unity of interest, operation, control, and/or ownership exists among the Defendants that the separate affairs and personalities of the Defendants no longer exist.

60.

Suiugan used Prime Painters in such a way so as to hide the true extent of his operations to avoid the proper premium owed and defraud and harm Travelers.

61.

Defendants have acted in concert and to intentionally abuse the legal form of Prime Painters to defeat justice, perpetrate actual or constructive fraud, and evade contractual responsibility.

62.

Suiugan has drained the assets of Prime Painters so as to avoid having to pay and/or being able to satisfy the premium obligations owed to Travelers after Travelers began conducting premium audits.

63.

Suiugan has purposefully transferred or comingled the assets of Prime Painters with his own to such an extent that Prime Painters is without appropriate means to satisfy its premium obligations owed to Travelers.

64.

For these reasons, Travelers will likely be unable to recover its damages from Prime Painters, and Travelers has no other adequate remedies at law.

65.

Defendants have benefited at the expense of Travelers from the abuse of the legal form, the misappropriation of the funds, and the hiding of the true extent of the operations of Prime Painters.

66.

By virtue of the foregoing, the legal form of Prime Painters, LLC should be disregarded, and all the Defendants should be held accountable for the obligations of Prime Painters.

67.

By virtue of the foregoing, Travelers is entitled to pierce the veil of Prime Painters and recover all damages from Defendants for all contractual debt and legal obligation of Prime Painters to Travelers.

68.

WHEREFORE, Travelers requests the following:

1. A trial by jury on all issues so triable;
2. That as to Count I, Travelers be awarded damages against Prime Painters for its contractual debt plus pre-judgment and post-judgment interest;
3. That as to Count II, the veil of Prime Painters, LLC be pierced so that Travelers may enforce judgment against all Defendants for Prime Painters' contractual debt plus pre-judgment and post-judgment interest;
4. That all costs of this action be taxed against Defendants; and
5. For such other and further relief that this Court deems just and proper.

This 16th day of March 2023.

                                            **FREEMAN MATHIS & GARY, LLP**

                                            */s/ Jessica C. Samford*
                                            Jessica C. Samford
                                            Georgia Bar No. 231518
                                            jsamford@fmglaw.com
                                            Lee D. Whatling
                                            Georgia Bar No. 689717
                                            lwhatling@fmglaw.com

                                            *Counsel for Plaintiff Travelers*
                                            *Property Casualty Company of America*

100 Galleria Parkway
Suite 1600
Atlanta, GA 30339-5948
(770) 818-0000 (telephone)
(770) 937-9960 (facsimile)