# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| **IN RE: SUBPOENA ISSUED TO NON-PARTY INNOVATION LAW LAB** | **Case No.:** _____ |
| IN THE MATTER OF: | |
| The State of Arizona, By and Through its Attorney General, Mark Brnovich, et al., | |
| Plaintiffs, | United States District Court Western District of Louisiana LaFayette Division |
| v. | Civil Action No. 6:22-cv-01130-DCJ-CBW |
| Merrick Garland, in his official capacity as Attorney General of the United States, et al., | |
| Defendants. | |

## MEMORANDUM IN SUPPORT OF INNOVATION LAW LAB'S MOTION TO QUASH THIRD-PARTY RULE 45 SUBPOENA

Pursuant to Federal Rule of Civil Procedure 45(d)(3)(A), non-party Innovation Law Lab ("Law Lab") submits the following Memorandum in Support of its Motion to Quash the Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action ("Subpoena") issued by the

States of Louisiana and Florida (collectively, the "States") to Law Lab on February 17, 2023 and served on February 27, 2023.[1]

## INTRODUCTION

The Subpoena relates to a lawsuit that several states, including Louisiana and Florida, filed against the United States Attorney General and other Defendants challenging an interim final rule authorizing U.S. Citizenship and Immigration Services ("USCIS") to consider the asylum applications of certain individuals subject to expedited removal who establish a fear of persecution or torture during their required credible fear screening. (Cruz Decl. at Ex. A; *see also* Procedures for Credible Fear Screening and Consideration of Asylum, Withholding of Removal, and CAT Protection Claims by Asylum Officers, 87 FR 18078 (Mar. 29, 2022) (hereinafter referred to as "March 29, 2022 Interim Final Rule")).

Law Lab is not a party to that lawsuit. Law Lab is a small organization that leverages law, technology, and advocacy in order to defend the right to asylum, deploys interventions at immigrant and refugee crisis points to provide and amplify legal representation for immigrants; facilitates collaboration among direct service

---

[1] (Declaration of Nancy Cruz in Support of Innovation Law Lab's Motion to Quash Third-Party Rule 45 Subpoena, (hereinafter "Cruz Decl") at Exhibit A, Subpoena *Duces Tecum* to Law Lab dated February 17, 2023).

providers, impact litigators, and policy advocates; scales anti-detention work; and defends immigrants in the State of Oregon. (Declaration of Stephen W. Manning in Support of Innovation Law Lab's Motion to Quash Third-Party Rule 45 Subpoena (hereinafter "Manning Decl."), ¶ 2). Despite Law Lab's non-party status, the States have served it with a far-reaching subpoena that this Court should quash.

As detailed below, the Subpoena seeks an enormous amount of privileged and work-product protected information from Law Lab, the disclosure of which would destroy Lab Law's ability to continue its work representing and aiding asylum seekers. (Manning Decl., ¶ 15). It is also unclear what relevant information the States could obtain from Law Lab that could not be obtained from the Defendants in the underlying action. Moreover, Law Lab is a small organization that cannot devote the significant time and resources necessary to determine if every potentially responsive document is privileged or entitled to work-product protection, especially because the requests largely seek privileged documents. (Manning Decl., ¶ 17).

Indeed, this Subpoena, alongside other similar subpoenas served by the States, appears to be a fishing expedition into the files of small, non-profit groups that provide aid to asylum seekers. (Manning Decl., ¶ 16). Notably, the States appear to have specifically targeted small legal service providers in the immigration space with this and other subpoenas. (Manning Decl., ¶ 16). Asking Law Lab and other

small legal services providers to shoulder the burden of gathering information already available to the States is an improper method for the States to seek the discovery they desire. As detailed below, the Federal Rules demand that the Court quash the Subpoena. *Morton v. Lien Filers, Etc. of Heath W. Williams, L.L.C.*, No. 20-cv-3211, 2021 WL 4815899, at *3 (N.D. Ga. Aug. 19, 2021) ("Rule 45 also provides that upon 'timely motion,' the Court 'must' quash or modify a subpoena that . . . subjects a person to undue burden.").

## BACKGROUND

### A.    The Underlying Litigation

As noted above, several states filed a lawsuit in the United States District Court for the Western District of Louisiana, challenging the March 29, 2022 Interim Final Rule. (Cruz Decl. at Ex. B at 4). The Plaintiffs include Louisiana and Florida, and the lawsuit names the United States Attorney General and other officials of the United States government and federal governmental agencies as Defendants. Generally, Plaintiffs allege that promulgation of the March 29, 2022 Interim Final Rule violates the Administrative Procedure Act, 5 U.S.C. §§ 706(2)(A)-(D) for, among other claims, (1) exceeding Defendants' statutory authority under the Immigration and Naturalization Act ("INA"), 8 U.S.C. §§ 1101 et seq. and the Homeland Security Act ("HSA"), Pub. L. No. 107-296 (2002); (2) violating the

APA's notice-and-comment requirements, and (3) arbitrarily and capriciously failing to address reliance interests in the prior system of asylum adjudication, among other requisite considerations. (Cruz Decl. at Ex. B at 47-66).

On December 2, 2022, the parties in the underlying lawsuit filed a Joint Status Report that discussed ongoing discovery issues. (Cruz Decl. at Ex. C). During a Status Conference held on December 16, 2022 ("December 16 Status Conference") addressing the discovery issues presented by the parties, the court directed the Plaintiffs to "apprise the Defendants of the factual bases—including the relevant states and agencies thereof—on which they seek to establish Article III standing" before commencing jurisdictional discovery. (Cruz Decl. at Ex. D).

Subsequently, on January 17, 2023, the court held another Status Conference ("January 17 Status Conference"), during which the parties updated the court about the status of jurisdictional discovery. (Cruz Decl. at Ex. E). During the January 17 Status Conference, the Plaintiffs advised the court that they "intend to establish Article III standing by showing the effect of the [March 29, 2022 Interim Final Rule] on certain discrete programs in the states of Louisiana and Florida, in addition to asserting standing as a matter of law." (*Id.* ). The court ordered the parties to confer and seek agreement on the parameters of jurisdictional discovery and advise the

court of any impasse. The court further ordered the period of jurisdictional discovery to be on or before March 24, 2023, unless extended. (*Id.*).

**B.    The Subpoena**

The Subpoena to Law Lab is dated February 17, 2023, and notification of it was sent to the Defendants in the underlying lawsuit on the same date. (Cruz Decl. at Ex. A). However, while the States dated their subpoena February 17th, they did not attempt formal service on Law Lab until February 27th. While the States sent an email to Law Lab on Friday, February 24th, it is unclear why the States waited a full week to send that email and, 10 days to attempt formal service. When it was served, the Subpoena listed a compliance deadline of March 10, 2023. (Cruz Decl. at Ex. A). Likely recognizing that a compliance deadline of less than two weeks from formal service was likely overly burdensome, the States offered an extension until March 17th, and the parties agreed to that date for compliance while preserving all of Law Lab's rights to object to and move to quash the Subpoena. (Cruz Decl. at Ex. F). The place for compliance is listed as the Office of the Attorney General - SG Unit, in Atlanta, Georgia. (Cruz Decl. at Ex. A).

The Subpoena demands production of the following documents:

(1)    Documents sufficient to identify all persons known to Law Lab (including persons in the Law Lab case management system) who are asylum applicants or asylum seekers located, residing, or with a mailing address in Florida or Louisiana;

(2)     All documents used, presented, or distributed by Law Lab at its asylum workshops;

(3)     All documents created for use across Law Lab's initiatives related to asylum applications;

(4)     All non-client specific documents Law Lab provided to clients or prospective clients; and

(5)     All documents related to the August 20, 2021 Notice of Proposed Rulemaking or March 29, 2022 Interim Final Rule regarding asylum procedures.[2]

## C.     Relevant Knowledge Possessed by Law Lab

As explained in detail below, the Subpoena seeks an enormous amount of privileged and work-product protected information from Law Lab. However, Law Lab has some resources for immigrants and people seeking asylum that are readily available on the Internet. For example, Law Lab offers a free training course for asylum. Law Lab's website provides two links where any interested individual—including the lawyers for the states of Louisiana and Florida—can access its training materials, learn about asylum law's complexities, and be referred to other suggested materials to further the lawyers' knowledge. (Manning Decl., ¶ 23).

Additionally, Law Lab filed a public comment on the August 20, 2021 Notice of Proposed Rulemaking which is available to the Plaintiffs from the Defendants and

---

[2] (Cruz Decl. at Ex. A). The requests for documents included in the Subpoena are hereinafter collectively referred to as the "Requests".

can be obtained by the Plaintiffs through a public inspection of the rulemaking proceeding. Law Lab's opinion about the rule's impact on asylum grant rates and asylum applications is outlined in this public comment along with the identification of non-protected source materials. (Manning Decl., ¶ 29). Notably, these resources are all publicly available and accessible to the States.

## **ARGUMENT**

### A.    **Legal Standards**

On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i)    fails to allow a reasonable time to comply;

(ii)    requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii)    requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv)    subjects a person to undue burden.

Fed. R. Civ. P. 45(d)(3)(A)(i)-(iv); *see also Schwieterman v. Caterpillar Inc.*, No. 20-CV-2611, 2021 WL 8648760, at *1 (N.D. Ga. Nov. 17, 2021). The burden of proving that compliance with a subpoena presents an undue burden "'lies with the party opposing the subpoena; however, the party seeking to enforce a subpoena bears the burden of demonstrating that the request is relevant.'" *Id*. (quoting *Martin v.*

*DeWafelbakkers LLC*, No. 113CV02529, 2014 WL 12042549, at *1 (N.D. Ga. Jan.

8, 2014)). To determine whether a subpoena imposes an undue burden, "the Court

must balance the requesting party's need for the discovery against the burden

imposed upon the subpoenaed party." *Id*. Notably, "[c]ourts must also consider the

status of a witness as a non-party when determining the degree of burden; the status

of the person as a non-party is a factor often weighing against disclosure." *Id*.

## B.    The Subpoena Requires Disclosure of Privileged or Other Protected Matter.

Under Rule 45(d)(3)(ii), this Court must quash or modify the States' subpoena

because it requires disclosure of privileged or other protected matter, and no

exception or waiver applies. Fed. R. Civ. P. 45(d)(3)(A)(iii). Here, producing the

requested information would violate the attorney-client privilege, reveal client

secrets in violation of attorney ethical rules, and cause serious and long-lasting harm

to Law Lab's mission and ability to perform its legal work.

First and foremost, the States' Subpoena Requests encompass documents

protected by the attorney-client privilege. Like most lawyers, law firms, and legal

services organizations, Law Lab uses a case management system to store

confidential client information and attorney work product, docket events and tasks,

and manage the provision of legal services. (Manning Decl., ¶ 19). The information

in Law Lab's case management system relates to current clients, former clients, and

other individuals seeking legal services. (Manning Decl., ¶ 19). The subpoena has far-reaching Requests that collectively implicate the attorney-client privilege. For example, Request Nos. 1 and 3 are of particular concern. Those Requests seek documents (including those in the Law Lab case management system) sufficient to identify all persons known to Law Lab who are either asylum applicants or asylum-seekers and who are located in Florida or Louisiana. However, Law Lab's lawyers interview clients and prospective clients, gather documents from clients, investigate claims, gather data, provide advice and counsel, distribute relevant documents based on our legal judgment to individuals and do what every other lawyer does when working with clients and prospective clients. (Manning Decl., ¶ 18). Such documents are privileged because the responsive documents in Law Lab's possession were collected within the context of the attorney-client relationship. (Manning Decl., ¶ 15).

In addition to violating the attorney-client privilege, production of the documents and information requested by the States would also contravene the applicable rules of attorney conduct. Both the Louisiana and Florida Rules of Professional Conduct prohibit attorneys from revealing information related to representation of a client. *See* La. Rules of Prof'l Conduct R. 1.6; R. Regul. Fl. Bar 4-16; see also *id*. Cmt. ("A fundamental principle in the client-lawyer relationship is

that, in the absence of the client's informed consent, the lawyer must not reveal information relating to the representation."). Such production of information would also violate the Oregon Rules of Professional Conduct, which apply to all of Law Lab's attorneys. (Manning Decl., ¶ 24; *see also, e.g.*, Oregon Rule of Professional Conduct § 1.6(a) (forbidding the disclosure of "information relating to the representation of a client"); *id*. § 1.8 (prohibiting the disclosure of information gained from prospective clients)). In addition to providing legal services, Law Lab operates a clearinghouse for legal services in Oregon under Oregon law (section 2, chapter 88, Oregon Laws 2022). (Manning Decl., ¶ 20) As part of this operation, all the information Law Lab receives from individuals is protected information under Or. Rev. Stat. § 40.225. (Manning Decl., ¶ 20); *see also* Or. Rev. Stat. 40.225).

Additionally, Law Lab has held numerous so-called "workshops" wherein Law Lab's lawyers, accredited representatives, legal assistants, and others involved in the provision of legal services interview, screen, advise, and counsel individuals who may seek asylum. Law Lab gathers information from individuals and makes legal judgments about facts and law as it relates to their claims and does so in their role as lawyers and accredited representatives. (Manning Decl., ¶ 21). Law Lab provides advice and documents to individuals based on that advice. (Manning Decl., ¶ 21). A so-called "workshop" is a means to provide high-quality legal services at

scale where there is insufficient access to counsel. "Workshops" are a tool Law Lab uses to provide access to counsel. (Manning Decl., ¶ 21). Producing these documents would contravene both the attorney-client privilege and applicable rules of professional conduct.

Not only is Law Lab legally required to protect documents and information subject to the attorney-client privilege and applicable rules of professional conduct, as lawyers and accredited representatives, Law Lab will be permanently damaged in its mission as a legal services organization if required to produce the requested client information. (Manning Decl., ¶ 24). Law Lab could not function as a legal services organization if it were required to produce protected information, including documents from, with, or about its clients. (Manning Decl., ¶ 25). This concern is particularly acute here where representatives associated with the States have made numerous anti-immigrant and inflammatory comments about noncitizens, particularly those seeking asylum under U.S. law. (Manning Decl., ¶ 25).

Beyond these ethical and privilege issues, the information sought by the States is particularly sensitive because it pertains to asylum seekers. The federal government has specific confidentiality rules that pertain to asylum seekers, which "generally prohibit the disclosure to third parties of information contained in or pertaining to asylum applications, credible fear determinations, and reasonable fear

determinations."[3] It is clear based on this policy that the federal government recognizes the sensitive nature of this information and has established these "[confidentiality] regulations [to] safeguard information that, if disclosed publicly, could subject the claimant to retaliatory measures by government authorities or non-state actors in the event the claimant is repatriated. Such disclosure could also endanger the security of the claimant's family members who may still be residing in the country of origin."[4] The simple fact that an individual has applied for asylum is considered a confidentiality breach by USCIS. Consistent with the federal government, Law Lab also recognizes the extremely sensitive nature of this information and is similarly committed to safeguarding this information. Law Lab is further subject to federal regulations requiring representation of clients "in accordance with the law, including applicable rules of professional conduct," which similarly require Law Lab to protect clients' sensitive information as an unbreachable duty.[5]

---

[3] USCIS Policy Manual, Vol. 1 - General Policies and Procedures, Part A - Public Services, Chapter 7 - Privacy and Confidentiality, Section F (https://www.uscis.gov/policy-manual/volume-1-part-a-chapter-7).

[4] *Id*.

[5] USCIS AAO Practice Manual, Chapter 2 - Representation of Parties before the Administrative Appeals Office, Section 2.10 (https://www.uscis.gov/administrative-appeals/aao-practice-manual/chapter-2-

Moreover, any information the States seek that a Court may disagree is attorney-client privileged and/or protected from discovery under applicable rules of professional conduct is protected as attorney work product. Federal law governs the work product doctrine. *See Abusbeih v. Ansari*, No. 18-cv-01061, 2018 WL 11344739, at *4 (N.D. Ga. Dec. 18, 2018). Rule 26 "provides qualified protection to 'documents and tangible things . . . prepared in anticipation of litigation or for trial' by or for a party, or by or for a party's representative." *Freedom Plastics, LLC v. Sparta Polymers, LLC*, No. 11-CV-00334, 2013 WL 12290257, at *6 (N.D. Ga. Apr. 1, 2013) (citing Fed. R. Civ. P. 26(b)(3)). Such work product materials may only be discovered where the party shows "'that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.'" *Abusbeih*, 2018 WL 11344739, at *4 (citing Fed. R. Civ. P. 26(b)(3)(A)(ii)).

Under Rule 26, "even where discovery of fact work product is permitted, the court 'must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.'" *Monitronics Int'l, Inc. v. Hall, Booth, Smith, P.C.*, No. 15-CV-3927,

representation-of-parties-before-the-administrative-appeals-office); *see also* 8 C.F.R. § 1003.102.

2016 WL 7030324, at *12 (N.D. Ga. Dec. 2, 2016) (citing Fed. R. Civ. P. 26(b)(3)(B)). These materials comprise opinion work product and "enjoy nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances, such as where they were created to further a crime or fraud." *Id.* (cleaned up). The documents and information sought by the States, especially pertaining to Requests Nos. 1 and 5, fall under this category of work product.

For example, Request No. 5 seeks "[a]ll DOCUMENTS relating to the fINAL RULE or ASYLUM NPRM, including without limitation (a) the impact [sic] (whether anticipated or actual) of the FINAL RULE on asylum grant rates or (b) the impact (whether anticipated or actual) of the FINAL RULE on asylum applications." (Cruz Decl. at Ex. A at 10). Complying with Request No. 5 would require disclosure of Law Lab's mental impressions, conclusions, opinions, or legal theories concerning the March 29, 2022 Interim Final Rule and specifically how this rule may impact current and potential clients and potential legal advice that Law Lab offers, which clearly comprises protected opinion work product.[6]

---

[6] The only material that may be relevant to this request is Law Lab's publicly filed comment on the August 20, 2021 Notice of Proposed Rulemaking which is available to the Plaintiffs from the Defendants and can be obtained by the Plaintiffs through a public inspection of the rulemaking proceeding. Law Lab's opinion about the rule's impact on asylum grant rates and asylum applications is outlined in its public comment along with the identification of non-protected source materials. It is also

In short, this Court should quash the States' subpoena because it seeks documents protected by the attorney-client privilege and/or work product doctrine and/or is protected from discovery by ethics codes. The States should not be allowed to undermine the sanctity of the attorney-client privilege—especially in the case of organizations such as Law Lab whose clients' livelihoods and safety rely on their ethical and zealous representation. This is particularly true for asylum applicants and prospective asylum seekers, as a breach of confidentiality may result in irreparable harm to them or their families in their home country.

## C.     The Requested Production Would Be Unduly Burdensome.

In addition, even if some small number of documents are found to be relevant and not protected from discovery for the reasons noted above, production of the requested documents would be unduly burdensome in contravention of the Federal Rules of Civil Procedure. Indeed, the party issuing a subpoena to a non-party "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45 (d)(1); *see also Bailey v. Fair & Walker Unit Owners Ass'n, Inc.*, 22-CV-98, 2023 WL 2119490, at *1 (N.D. Ga. Jan. 17, 2023) (citing *Jordan v. Comm'r, Miss. Dep't of Corr.*, 947 F.3d 1322, 1329 (11th Cir.

---

available on our website at https://innovationlawlab.org/blog/defending-rights-through-the-rulemaking-process/. (Manning Decl., ¶ 29).

2020)). As noted above, "the court for the district where compliance is required must quash or modify a subpoena that: … subjects a person to undue burden." Fed. R. Civ. P. 45 (d)(3)(A)(iv).. The undue burden analysis requires the court to "'balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it.'" *Jordan*, 947 F.3d at 1337 (quoting 9A Wright & Miller, Federal Practice and Procedure § 2463.1 (3d ed. 2019); *see also Morton*, 2021 WL 4815899, at *3 (N.D. Ga. Aug. 19, 2021).

"Some of the 'factors required to be balanced by the trial court in determining the propriety of a subpoena are the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena.'" *Morton*, 2021 WL 4815899 at *3. Furthermore, "'[c]ourts must also consider the status of a witness as a non-party when determining the degree of burden; the status of the person as a non-party is a factor often weighing against disclosure.'" *Schwieterman*, 2021 WL 8648760 at *1 (quoting *Martin*, 2014 WL 12042549, at *1). As demonstrated below, the undue burden factors heavily weigh in favor of Law Lab.

First, it is unclear how any of the Requests are relevant to the underlying lawsuit.[7] As explained *supra*, the claims in the underlying lawsuit were brought against officials of the United States government and federal governmental agencies responsible for promulgating or implementing the March 29, 2022 Interim Final Rule. (Cruz Decl. at Ex. B, ¶ 44). Further, the claims in the underlying lawsuit relate to alleged violations of the Administrative Procedure Act by the Defendants for exceeding statutory authority in promulgating and implementing an interim final rule that took effect in May 2022.[8] (Cruz Decl. at Ex. B). The requested information, which includes documents about Law Lab's programs and clients,[9] is immaterial to the underlying claims, especially as it pertains to Law Lab's asylum workshops and Centers of Excellence pro bono programs. The existence and operation of these programs has no bearing on the Defendants' actions in the underlying lawsuit.

---

[7] The only potential exception is Law Lab's publicly filed comment on the August 20, 2021 Notice of Proposed Rulemaking. *See supra* fn. 6.

[8] See FACT SHEET: Implementation of the Credible Fear and Asylum Processing Interim Final Rule | USCIS; *see also Piccard v. Deedy*, No. 21-cv-558, 2022 WL 832425, at *2 (N.D. Ga. Mar. 21, 2022) (citing Fed. R. Evid. 201(b)) ("a court [may] take judicial notice of a fact without formal proof when the fact is not subject to reasonable dispute because it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.")

[9] See, e.g., Requests 1 and 3. (Cruz Decl. at Ex. A).

Additionally, the relevant time period for the requested documents in all five Requests date back long before the March 29, 2022 Interim Final Rule that is at issue in the underlying case. (Manning Decl., ¶ 31). For example, Request No. 2 seeks "all documents" created for use across several of Law Lab's programs. (Cruz Decl. at Ex. A at 9). Of the named programs in the Subpoena, neither Law Lab's Centers of Excellence nor its EPIC program (the El Paso Immigration Collaborative) operate in the states of Louisiana or Florida. (Manning Decl., ¶ 31). Law Lab's BorderX detention project ceased operating under that name in 2021, before the promulgation of the Asylum IFR that is at issue in the underlying case. (*Id.*) Moreover, Law Lab has not conducted any workshops in Florida or Louisiana of any kind at any time. (Manning Decl., ¶ 32).

Indeed, the burden imposed on Law Lab clearly outweighs the need of the States to obtain the requested documentation. Identifying and producing the requested documents is unduly burdensome to Law Lab for several reasons. First, setting aside any ethical considerations and obligations, the immense time and effort required to search, locate, provide notice to Law Lab clients of the Subpoena, screen for privilege, and review for production would significantly burden Law Lab's small staff—which consists of only 30 employees. (Manning Decl., ¶ 26). As a non-party to the underlying lawsuit, Law Lab's lawyers would be forced to pause their mission-

related work to respond to the requested production—which, given the nature of Law Lab's mission, would cause harm to Law Lab's clients and work. (Manning Decl., ¶ 26). Moreover, as a small non-profit, Law Lab has not and is unable to budget any of its already limited funds for this production. (*Id.*).

Furthermore, the States can obtain the information about asylum applicants and asylum seekers (as sought in Request No. 1) from the Defendants in the underlying action. The Defendants process the asylum applications of all people seeking asylum throughout the country, including in Florida and Louisiana. (Manning Decl., ¶ 28). Additionally, applicants must promptly provide their updated addresses and regularly report to the Defendants. (*Id.*). It is clear that the States have other avenues to obtain the requested information that do not unduly burden a small non-profit and that do not risk the disclosure of attorney-client information as addressed in Section B above.

Similarly, producing the documents requested in Requests Nos. 1, 2, 3, and 4, including, for example, documents related to asylum or asylum applications dated back to 2018, would also be expensive and unduly burdensome. Since 2014, when Law Lab supported the launch of an extensive, collaborative representation project at a large-scale family detention center in Artesia, New Mexico, Law Lab has launched or supported many representation efforts, both short- and long-term, that

serve asylum seekers at sites throughout the country. These efforts have included (but are not limited to) coordinating the representation of some of the first asylum seekers subjected to the Migrant Protection Protocols; representing over one hundred immigrant men detained at the federal prison; and coordinating Oregon's first universal representation program. (Manning Decl., ¶ 30). Gathering and producing the documents "created for use" across these, and other, programs implemented over the past decade would be extremely burdensome, and, as noted above, not relevant to the claims in the underlying suit. (*Id.*) Doing so would also require coordination with various other groups, as almost all of Law Lab's representation projects operate in partnership with other advocacy organizations. (*Id.*).

## CONCLUSION

For the reasons stated above, Law Lab respectfully urges this Court to quash the States' Subpoena because it violates Rule 45 by requiring the disclosure of privileged or other protected matter and by subjecting Law Lab to undue burden.

This 16th day of March, 2023.

**KILPATRICK TOWNSEND &
    STOCKTON LLP**
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4530
(404) 815-6500
Fax:  (404) 815-6555
TCaldas@kilpatricktownsend.com
GReddy@kilpatricktownsend.com
BTRichardson@kilpatricktownsend.com

/s/ Bennett T. Richardson
Gautam Reddy
Georgia Bar No. 757546
Tamara Serwer Caldas
Georgia Bar No. 617053
Bennett T. Richardson
Georgia Bar No. 974586

*Attorneys for Innovation Law Lab*

OF COUNSEL:

Emily Greb
Nancy Cruz
Kaitlin Dryden
**PERKINS COIE LLP**
33 East Main Street, Suite 201
Madison, WI 53703
Phone: (608) 663-7460
Fax:  (608) 663-7499
EGreb@perkinscoie.com
NCruz@perkinscoie.com
KDryden@perkinscoie.com

## LOCAL RULE 7.1 CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing document filed with the Clerk of Court

has been prepared in 14 point Times New Roman font, in accordance with Local

Rule 5.1(C).

Dated:      March 16, 2023.

/s/ Bennett T. Richardson
Bennett T. Richardson

## CERTIFICATE OF SERVICE

I hereby certify that on March 16, 2023, I electronically filed the within and foregoing **MEMORANDUM IN SUPPORT OF INNOVATION LAW LAB'S MOTION TO QUASH THIRD-PARTY RULE 45 SUBPOENA**, with the Clerk of Court using the CM/ECF system, which will automatically send email documentation of such filing to all attorneys of record.

I further certify that on this day, I served a true and correct copy of the within and foregoing upon counsel of record in the underlying action by electronic email and by depositing a true and correct copy of same in the United States Mail, first-class postage prepaid, addressed as follows:

JEFF LANDRY
LOUISIANA ATTORNEY GENERAL
Joseph S. St. John
Deputy Solicitor General
Office of the Attorney General
Louisiana Department of Justice
1885 N. Third Street
Baton Rouge, LA  70804
STJohnj@ag.louisiana.gov

*Counsel for State of Louisiana*
*A Plaintiff in the Underlying Action*

Brian Ward
U S Department of Justice
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
Brian.c.ward@usdoj.gov

Erez R. Reuveni
U S Department of Justice
Civil Division (5th)
450 5th Street NW
Washington, D.C.  20001
Erez.r.reuveni@usdoj.gov

*Counsel for Defendants*
*In the Underlying Action*

Dated:  March 16, 2023

**KILPATRICK TOWNSEND &**
    **STOCKTON LLP**
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4530
(404) 815-6500
Fax:  (404) 815-6555
TCaldas@kilpatricktownsend.com
GReddy@kilpatricktownsend.com
BTRichardson@kilpatricktownsend.com

/s/ Bennett T. Richardson
Gautam Reddy
Georgia Bar No. 757546
Tamara Serwer Caldas
Georgia Bar No. 617053
Bennett T. Richardson
Georgia Bar No. 974586

*Attorneys for Innovation Law Lab*