IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: SUBPOENA ISSUED TO NON-PARTY INNOVATION LAW LAB<br><br>IN THE MATTER OF:<br><br>The State of Arizona,<br>By and Through its Attorney General,<br>Mark Brnovich, et al.,<br><br>    Plaintiffs,<br>v.<br><br>Merrick Garland, in his official capacity as Attorney General of the United States, et al.,<br><br>    Defendants. | Case No.: _____<br><br><br><br><br><br>United States District Court<br>Western District of Louisiana<br>LaFayette Division<br>Civil Action No. 6:22-cv-01130-DCJ-CBW |

**DECLARATION OF STEPHEN MANNING**
**IN SUPPORT OF INNOVATION LAW LAB'S**
**MOTION TO QUASH THIRD-PARTY RULE 45 SUBPOENA**

## DECLARATION OF STEPHEN MANNING

I, Stephen W. Manning, declare as follows:

1. I am an attorney licensed to practice in the State of Oregon and am a member in good standing of the bars of the United States District Court for the District of Oregon, the United States Court of Appeals for the Ninth Circuit, and the Supreme Court of the United States. I am a member of the American Immigration Lawyers Association ("AILA"), a former member of the Board of Governors of AILA, and a former Chair of the Oregon Chapter of AILA. I am over 18 and have personal knowledge of the facts described herein and, if called to testify, I could and would do so competently.

2. I am the Executive Director of Innovation Law Lab ("Law Lab"), a small nonprofit organization based in Oregon that I founded to defend and improve the legal rights of immigrants and refugees. Law Lab's mission is to leverage law, technology, and organizing to fight for immigrant and refugee justice. As part of that mission, Law Lab aims to increase access to legal representation and legal resources for asylum-seeking individuals from around the world, the majority of whom arrive in the United States at the southern border. Law Lab defends the rights of asylum seekers, intervenes at immigrant and refugee crisis points to provide direct representations for immigrants, works to find long-term representation for asylum

applicants, litigates in federal and state courts on behalf of its clients, and advocates for policy changes in federal and state forums. Our work is national, but we have a particular emphasis on immigrant rights in the State of Oregon.

3. Law Lab employs lawyers, accredited representatives, legal assistants, and similar professionals in its provision of legal services. Accredited representatives are individuals who are authorized under federal law to provide immigration legal services. *See* 8 C.F.R. § 1292.1(a)(4).

4. I am aware that Louisiana and Florida, among other plaintiffs, filed a lawsuit against the U.S. Attorney General, and other defendants, challenging an interim final rule on asylum. Law Lab is not a party to the lawsuit.

5. I am aware that state officials of Louisiana and Florida have made disparaging, degrading, and highly controversial remarks related to immigrants.

6. I have reviewed the document titled "Subpoena to produce documents, information, or objects or to permit inspection of premises in a civil action" (hereinafter referred to as the "Subpoena") issued in the civil action, *Arizona v. Garland*, a copy of which was emailed to Law Lab's registered agent.

7. The document commands that we appear at the Office of the Attorney General for the State of Georgia in Atlanta, Georgia on March 10, 2023 at 10 a.m. and produce at such time:

8. "DOCUMENTS sufficient to IDENTIFY all persons known to Law Lab (including persons in the Law Lab case management system) who are ASYLUM APPLICANTS or asylum seekers (a) located in Florida or Louisiana, (b) who provided a residence address in in [sic] Florida or Louisiana, or (c) who provided a mailing address in Florida or Louisiana."

9. "All DOCUMENTS used, presented, or distributed by Law Lab in its asylum workshops."

10. "All DOCUMENTS created for use across Law Lab's Centers of Excellence pro bono programs, BorderX detention project, EPIC program, and other initiatives related to asylum or asylum applications, including without limitation printed guides, worksheets, training videos, and self-help videos."

11. "All non-client specific DOCUMENTS YOU provide(d) to aliens, including ASYLUM APPLICANTS or asylum seekers, regarding public education, Temporary Assistance for Needy Families ('TANF'), Supplemental Nutrition Assistance Program ('SNAP'), Medicaid, or other public benefits."

12. "All DOCUMENTS relating to the FINAL RULE or ASYLUM NPRM, including without limitation (a) the impact the impact [sic] (whether anticipated or actual) or the FINAL RULE on asylum grant rates or (b) the impact (whether anticipated or actual) of the FINAL RULE on asylum applications."

13. The document defines certain words including DOCUMENTS, YOU, ASYLUM APPLICANTS, FINAL RULE, and ASYLUM NPRM among other words.

14. I am aware that Louisiana and Florida have served similar subpoenas on other similar legal service organizations, a private attorney, and other similar migrant beneficial aid organizations.

15. Even though Law Lab is not a party to the lawsuit, the Subpoena seeks an enormous amount of information from Law Lab and its lawyers that is privileged and work-product protected. Our clients and prospective clients provide us information and we provide advice and counsel to them. The Subpoena demands that we provide our client secrets, our confidential advice, the identities of our clients, and materials we provided our clients and prospective clients. This is information is collected within and protected by Law Lab in the context of the attorney-client relationship. Plainly stated, the forced disclosure of this information would permanently destroy Lab Law's ability to continue its work aiding asylum seekers and furthering its policy work.

16. This Subpoena, like the other similar subpoenas served by Louisiana and Florida, appears to be a fishing expedition by Louisiana and Florida into the files of small non-profit groups that provide aid to asylum seekers and perhaps in

retaliation for providing legal services to people their governors and attorneys general dislike.

17. Producing the requested information would violate the attorney-client privilege, reveal client secrets in violation of attorney ethical rules, and cause irreversible damage to Law Lab's mission and ability to perform its legal work.

18. Like most lawyers, law firms, and legal services organizations, Law Lab's lawyers interview clients and prospective clients, gather documents from clients, investigate claims, gather data, provide advice and counsel, distribute relevant documents based on our legal judgment to individuals and do what every other lawyer does when working with clients and prospective clients.

19. Like most lawyers, law firms, and legal services organizations, Law Lab uses a case management system to docket events and tasks; store client secrets, confidential client information and attorney work product; and manage the provision of legal services. The information in our case management system relates to current clients, former clients, and prospective clients seeking legal services. That is, we use the case management system to manage our cases. There is no information in our case management system that does not relate to a current client, former client, or prospective client.

20. In addition to providing legal services, Law Lab operates a clearinghouse for immigration legal services in Oregon under Oregon law. *See* section 2, chapter 88, Oregon Laws 2022. All the information we receive from individuals is, by law, protected information. *See* ORS 40.225.

21. Over the years, Law Lab has held numerous so-called "workshops" wherein our lawyers, accredited representatives, legal assistants, and others involved in the provision of legal services interview, screen, advise, and counsel individuals who may seek asylum. We gather information from individuals and make legal judgments about facts and law as it relates to their claims and we do so in our role as lawyers and accredited representatives. We provide advice and documents to individuals based on that advice. A so-called "workshop" is a means to provide high-quality legal services at scale where there is insufficient access to counsel. "Workshops" are a tool we use to provide access to counsel.

22. Law Lab provides training to other lawyers and in many cases provides technical assistance to pro bono lawyers on aspects of asylum law. Asylum law is very complex. Many people seeking asylum are unrepresented or, because of systemic barriers, are unable to access counsel. Because access to counsel is difficult for asylum-seekers, Law Lab relies on pro bono attorneys from big law firms, small law firms, and private practice to represent individuals in their legal matters,

including asylum. Law Lab creates materials specific to these lawyers to train them and provides advice to these lawyers within a confidential arrangement about their particular cases.

23.     For non-privileged information, Law Lab has some resources for immigrants and people seeking asylum that are readily available on the Internet. For example, we have a free training course for asylum. There are two links available on our website where any interested individual—including the lawyers for the states of Louisiana and Florida—can access our training materials, learn about asylum law's complexities, and be referred to other suggested materials to further the lawyers' knowledge. The first link is: https://innovationlawlab.org/immigrant-u/ and the second link is: https://innovationlawlab.org/center-of-excellence-training/. These links appear in the footer of our website under "Immigrant U" and "Center of Excellence Training."

24.     As lawyers and accredited representatives, Law Lab would be permanently damaged in its mission as a legal services organization if it were required to produce client information. *See, e.g.,* Oregon Rule of Professional Conduct 1.6(a) (forbidding the disclosure of "information relating to the representation of a client"); *id.* § 1.8 (prohibiting the disclosure of information gained from prospective clients).

25. We would be unable to function as a legal services organization if we were required to produce protected information, including documents from, with, or about our clients. This concern is particularly acute here where representatives associated with the States have made numerous anti-immigrant and inflammatory comments about noncitizens, particularly those seeking asylum under U.S. law.

26. Even if the requested information were not privileged or protected, the identification and production of the requested information is unduly burdensome to Law Lab, who is not a party to this case. If it were even possible to produce the information consistent with our ethical obligations and Oregon statutory obligations—which we doubt— the time to search, locate, provide notice to our clients of the request, collate, and review for production, would burden our small staff and imperil our representation of others. As a non-party, Law Lab does not have the capacity to devote the significant time and resources needed to determine whether it could produce documents that are non-privileged. Law Lab is an organization consisting of approximately 30 employees and has no lawyers on staff who are designated to represent us in this matter. In fact, our lawyers are engaged in other mission-related work. We would be forced to pause our mission-related work, work with impending deadlines before courts and administrative tribunals, in order to respond to the production request. This would harm our clients, our mission, and

work. As a small nonprofit and a nonparty, Law Lab has not budgeted any funds to support the production of information for Louisiana and Florida in their case.

27. The requested information about the number of asylum-seeking individuals in Florida and Louisiana is certainly available to the Plaintiffs from the Defendants and would likely be available from the Plaintiffs' own records.

28. The Defendants process the asylum applications of *all* people seeking asylum throughout the country, including in Florida and Louisiana; applicants must provide their updated address to the Defendants promptly. *See* 8 C.F.R. § 265.1.

29. With regard to the demand to produce information about "the impact the impact [sic] (whether anticipated or actual) of the FINAL RULE on asylum grant rates" or "the impact (whether anticipated or actual) of the FINAL RULE on asylum applications" Law Lab filed a public comment on the August 20, 2021 Notice of Proposed Rulemaking which is available to the Plaintiffs from the Defendants and can be obtained by the Plaintiffs through a public inspection of the rulemaking proceeding. Our opinion about the rule's impact on asylum grant rates and asylum applications is outlined in our public comment along with the identification of non-protected source materials. It is also available on our website at https://innovationlawlab.org/blog/defending-rights-through-the-rulemaking-process/.

30. With regard to the demand for producing the other information, it would be very expensive and unduly burdensome for Law Lab, who is not a party to this lawsuit. For example, searching for, locating, and producing documents related to asylum or asylum applications dating back to 2014 would be expensive and unduly burdensome, even if it were not privileged and protected. In 2014, Law Lab launched an extensive array of representation projects including at a large-scale family detention center in Artesia, New Mexico. The Artesia Pro Bono Project provided representation to more than 700 women and children who were detained at the Artesia Family Residential Center in Artesia, New Mexico, including representation during their credible and reasonable fear screenings, applications for release, and merits adjudication on immigration relief. The Artesia Pro Bono Project lasted six months and ended when the detention center in Artesia was closed in December 2014. Since then, Law Lab has launched or supported many representation efforts, both short- and long-term, that serve people seeking asylum at sites throughout the country, including (but not limited to) the representation of some of the first asylum seekers subjected to the Migrant Protection Protocols; representing over one hundred immigrant men detained at the federal prison in Sheridan, Oregon, in 2018; running our Centers of Excellence pro bono programs in several cities with in immigration courts with nearly 100% asylum denial rates; and

managing Oregon's first universal representation program (which provides legal representation to noncitizens in Oregon). Gathering and producing the documents "created for use" across these, and other, programs implemented over the past decade would be extremely burdensome. It would also require coordination with various other groups, as almost all our representation projects operate in partnership with other legal service organizations who may also have claims of attorney work product, common interest, or privilege.

31. It is not clear how or why production of these additional documents relates to Plaintiffs' claims or standing in this case. As noted above, the requested documents date back long before the May 2022 publication date of the Asylum IFR that is at issue in this case. Of the named programs, neither Law Lab's Centers of Excellence nor our EPIC program (the El Paso Immigration Collaborative) operate in the states of Louisiana or Florida. Our BorderX detention project ceased operating in 2021, before the promulgation of the Asylum IFR that is at issue in this case.

32. Law Lab has not conducted any workshops of any kind in Florida or Louisiana at any time.

33. Appearing in Atlanta would be expensive and burdensome. Law Lab is headquartered in Portland, Oregon. Our organization is a small, Oregon-based nonprofit and the cost of arranging for production of such a multitude of sensitive

and important documents across the country from our headquarters would be significant. Our two staff members, both of whom are accredited representatives (meaning they are permitted to provide legal service on immigration matters but are not licensed to practice any other area of law) who work from the Atlanta area, would be burdened in their capacity to deliver legal services.

34.   I hereby declare under the penalty of perjury pursuant to the laws of the United States that the above is true and correct to the best of my knowledge.

EXECUTED this 16th day of March, 2023.

_____
Stephen W. Manning, OSB #013373

# CERTIFICATE OF SERVICE

I hereby certify that on March 16, 2023, I electronically filed the within and foregoing **DECLARATION OF STEPHEN W. MANNING IN SUPPORT OF INNOVATION LAW LAB'S MOTION TO QUASH THIRD PARTY RULE 45 SUBPOENA**, with the Clerk of Court using the CM/ECF system, which will automatically send email documentation of such filing to all attorneys of record.

I further certify that on this day, I served a true and correct copy of the within and foregoing upon counsel of record in the underlying action by electronic email and by depositing a true and correct copy of same in the United States Mail, first-class postage prepaid, addressed as follows:

| | |
|---|---|
| JEFF LANDRY<br>LOUISIANA ATTORNEY GENERAL<br>Joseph S. St. John<br>Deputy Solicitor General<br>Office of the Attorney General<br>Louisiana Department of Justice<br>1885 N. Third Street<br>Baton Rouge, LA  70804<br>STJohnj@ag.louisiana.gov<br><br>*Counsel for State of Louisiana*<br>*A Plaintiff in the Underlying Action* | Brian Ward<br>U S Department of Justice<br>P.O. Box 868 Ben Franklin Station<br>Washington, D.C. 20044<br>Brian.c.ward@usdoj.gov<br><br>Erez R. Reuveni<br>U S Department of Justice<br>Civil Division (5th)<br>450 5th Street NW<br>Washington, D.C.  20001<br>Erez.r.reuveni@usdoj.gov<br><br>*Counsel for Defendants*<br>*In the Underlying Action* |

Dated:  March 16, 2023

| | |
|---|---|
| **KILPATRICK TOWNSEND &**<br>**STOCKTON LLP**<br>1100 Peachtree Street, Suite 2800<br>Atlanta, Georgia 30309-4530<br>(404) 815-6500<br>Fax:  (404) 815-6555<br>TCaldas@kilpatricktownsend.com<br>GReddy@kilpatricktownsend.com<br>BTRichardson@kilpatricktownsend.com | /s/ Bennett T. Richardson<br>Gautam Reddy<br>Georgia Bar No. 757546<br>Tamara Serwer Caldas<br>Georgia Bar No. 617053<br>Bennett T. Richardson<br>Georgia Bar No. 974586<br><br>*Attorneys for Innovation Law Lab* |

US2008 21662655 1