IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

Case No. _____

MAGNUM PHOTOS, INC.,

    Plaintiff,

v.

SHOOTPROOF, LLC d/b/a COLE'S CLASSROOM,

    Defendant.

## COMPLAINT

Plaintiff Magnum Photos, Inc. ("Plaintiff") sues defendant ShootProof, LLC d/b/a Cole's Classroom ("Defendant"), and alleges as follows:

## THE PARTIES

1.    Plaintiff is a corporation organized and existing under the laws of the State of New York with its principal place of business located in New York, NY.

2.    Defendant is a limited liability company organized and existing under the laws of the State of Georgia with its principal place of business located at 3101 Cobb Parkway, Suite 124, Atlanta, GA 30339.  Defendant's agent for service of process is: Evelyn A. Ashley, Esq., Moye White LLP, 1349 Peachtree Street NW, Suite 1525, Atlanta, GA 30309.

## JURISDICTION AND VENUE

3.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

4.    This Court has personal jurisdiction over Defendant because it is a citizen and resident of this state, operates a business in this state, committed a tortious act within this state,

and the exercise of personal jurisdiction over it would not offend traditional notices of fair play and substantial justice.

5. Venue properly lies in this district pursuant to 28 U.S.C. § 1400(a) because Defendant or its agents reside or may be found in this district. "A defendant 'may be found' in a district in which he could be served with process; that is, in a district which may assert personal jurisdiction over the defendant." Palmer v. Braun, 376 F.3d 1254, 1259-60 (11th Cir. 2004). "In other words, 'if a court has personal jurisdiction over the defendants in a copyright infringement action, venue in that court's district is proper.'" McGregor v. In Tune Music Grp., No. 15-62044-CIV-ZLOCH, 2016 U.S. Dist. LEXIS 190302, at *11 (S.D. Fla. July 29, 2016) (quoting Store Decor Div. of Jas Int'l, Inc. v. Stylex Worldwide Indus., Ltd., 767 F. Supp. 181, 185 (N.D. Ill. 1991).

## FACTS

### I. Plaintiff's Business

6. Plaintiff is an international photographic cooperative owned by its photographer-members, with offices in New York City, Paris, London, and Tokyo.

7. Plaintiff was founded in 1947 (two years following the aftermath of the Second World War) by four leading photographers: Henri Cartier-Bresson, Robert Capa, George Rodger and David Seymour. All four photographers had been photojournalists in the Second World War and were profoundly affected by what they had seen.

8. These photographers believed that the most important job of a photojournalist is to record the human condition in the outside world as compassionately as possible. The agency was set up in order to give photographers the freedom to determine their own fate and not be beholden to magazine or newspaper editors with agendas that might compromise the integrity of the

photographer.

9. Today, Plaintiff is the most respected in the world and supports some sixty-four international photographers. It holds an extensive library of images recording major world events from the Spanish Civil War to the present day.

10. For more than 70 years, Plaintiff has been creating the highest quality photographic content for an international client base of media, charities, publishers, brands, and cultural institutions.

## II.     The Work at Issue in this Lawsuit

### *A.     Elliott Erwitt*

11. Elliott Erwitt is one of the many renowned photographers represented by Plaintiff (see https://www.magnumphotos.com/photographer/elliott-erwitt/). As a teenager living in Hollywood, Mr. Erwitt developed an interest in photography and worked in a commercial darkroom before experimenting with photography at Los Angeles City College. In 1948, he moved to New York and exchanged janitorial work for film classes at the New School for Social Research.

12. Mr. Erwitt traveled in France and Italy in 1949 with his trusty Rolleiflex camera. In 1951, he was drafted for military service and undertook various photographic duties while serving in a unit of the Army Signal Corps in Germany and France.

13. While in New York, Mr. Erwitt met Edward Steichen, Robert Capa and Roy Stryker, the former head of the Farm Security Administration. Mr. Stryker initially hired Mr. Erwitt to work for the Standard Oil Company, where he was building up a photographic library for the company, and subsequently commissioned him to undertake a project documenting the city of Pittsburgh.

14. In 1953, Mr. Erwitt joined Plaintiff and worked as a freelance photographer for *Collier's*, *Look, LIFE, Holiday*, and other luminaries in that golden period for illustrated

magazines. To this day, he is for hire and continues to work for a variety of journalistic and commercial outfits.

15. In the late 1960s, Mr. Erwitt served as Plaintiff's president for three years. He then turned to film: in the 1970s, he produced several notable documentaries and in the 1980s eighteen comedy films for HBO. Mr. Erwitt became known for benevolent irony, and for a humanistic sensibility traditional to the spirit of Plaintiff.

16. Mr. Erwitt previously took a professional photograph (the "<u>First Erwitt Photograph</u>") of a boy sitting in a car behind a cracked glass window. A copy of the First Erwitt Photograph is exhibited below:



17. The First Erwitt Photograph was registered by Mr. Erwitt with the Register of Copyrights on November 10, 1988 and was assigned Registration No. TX0002436642. A true and correct copy of a printout of the registration from the US Copyright Office is attached hereto as **Exhibit "A."**

18. Mr. Erwitt is the owner of the First Erwitt Photograph and has remained the owner at all times material hereto.

19.     For all times relevant to this action, Plaintiff has been appointed as the exclusive administrator and publisher of all copyright rights in and to the First Erwitt Photograph. As such, Plaintiff is entitled to institute and maintain this action for copyright infringement. See 17 U.S.C. § 501(b).

20.     Mr. Erwitt previously took a professional photograph (the "Second Erwitt Photograph") of a small chihuahua on the street standing next to a large dog and a person's legs. A copy of the Second Erwitt Photograph is exhibited below:



21.     The Second Erwitt Photograph was registered by Plaintiff (pursuant to an assignment of all rights in the Second Erwitt Photograph to Plaintiff) with the Register of Copyrights on November 13, 1989 and was assigned Registration No. TX0002776374. A true and correct copy of a printout of the registration from the US Copyright Office is attached hereto as **Exhibit "B."**

22.     Plaintiff is the owner of the Second Erwitt Photograph and has remained the owner at all times material hereto.

### B.     *Philippe Halsman*

23. Philippe Halsman is one of the many renowned photographers represented by Plaintiff (see https://www.magnumphotos.com/photographer/philippe-halsman/).

24. Mr. Halsman began to take photographs in Paris in the 1930s. He opened a portrait studio in Montparnasse in 1934, where he photographed André Gide, Marc Chagall, André Malraux, Le Corbusier and other writers and artists, using an innovative twin-lens reflex camera that he had designed himself.

25. He arrived in the United States in 1940, just after the fall of France, having obtained an emergency visa through the intervention of Albert Einstein.

26. In the course of his prolific career in America, Mr. Halsman produced reportage and covers for most major American magazines, including a staggering 101 covers for Life magazine.  His assignments brought him face-to-face with many of the century's leading personalities.

27. In 1945, he was elected the first president of the American Society of Magazine Photographers, where he led the fight for photographers' creative and professional rights.  His work soon won international recognition, and in 1951, he was invited by the founders of Plaintiff to join the organization as a 'contributing member', so that they could syndicate his work outside the United States.  This arrangement still stands.

28. Mr. Halsman began a thirty-seven-year collaboration with Salvador Dalí in 1941 which resulted in a stream of unusual Photographs of Ideas, including Dalí Atomicus and the Dalí's Mustache series.

29. In the early 1950s, Mr. Halsman began to ask his subjects to jump for his camera at the conclusion of each sitting.  These uniquely witty and energetic images have become an

important part of his photographic legacy.

30. Mr. Halsman passed away in June 1979 in New York City.

31. Mr. Halsman previously took a professional photograph commonly known as "Dali Atomicus" (the "Halsman Photograph") of Salvador Dali that is one of the most iconic images to emerge from Mr. Halsman/Mr. Dali's years of collaboration. It took the pair 28 tries to achieve the playful weightlessness displayed in the photograph. A copy of the Halsman Photograph is exhibited below:



32. The Halsman Photograph was registered by Yvonne Halsman (his widow/wife) with the Register of Copyrights on December 20, 1982 and was assigned Registration No. TX0001039311. A true and correct copy of a printout of the registration from the US Copyright Office is attached hereto as **Exhibit "C."**

33. Ms. Halsman (as the representative of Mr. Halsman's estate) is the owner of the Halsman Photograph and has remained the owner at all times material hereto.

34. For all times relevant to this action, Plaintiff has been appointed as the exclusive administrator and publisher of all copyright rights in and to the Halsman Photograph. As such, Plaintiff is entitled to institute and maintain this action for copyright infringement. See 17 U.S.C. § 501(b).

### C. Steve McCurry

35. Steve McCurry is one of the many renowned photographers represented by Plaintiff (see https://www.magnumphotos.com/photographer/steve-mccurry/).

36. Mr. McCurry has been one of the most iconic voices in contemporary photography for over three decades, documenting conflicts, vanishing cultures, ancient traditions and contemporary culture. His image of a young Afghan refugee with piercing eyes—the June 1985 National Geographic cover—has become one of the most distinctive in photographic history.

37. Born in a suburb of Philadelphia, Pennsylvania; Mr. McCurry studied film at Pennsylvania State University, before going on to work for a local newspaper. After several years of freelance work, Mr. McCurry made his first of what would become many trips to India. Travelling with little more than a bag of clothes and another filled with film, he made his way across the subcontinent, exploring the country with his camera.

38. It was after several months of travel that he found himself crossing the border into Pakistan. There, he met a group of refugees from Afghanistan, who smuggled him across the border into their country, just as the Russian Invasion was closing the country to all western journalists. Emerging in traditional dress, with a full beard and weather-worn features after weeks embedded with the Mujahideen, Mr. McCurry brought the world the first images of the conflict in Afghanistan, putting a human face to the issue.

39. Since then, McCurry has gone on to create evocative images in over six continents

and countless countries, with scores of magazine and book covers, as well as solo global exhibitions. Despite his prolific output his pictures always retain the human element that made his celebrated image of the Afghan Girl so powerful. He has published many books and retrospectives, including Monsoon (1988), The Path to Buddha (2003), Portraits (1999), On Reading (2016) and most recently, Steve McCurry: A Life in Pictures (2018).

40. Mr. McCurry has been recognized with some of the most prestigious awards in the industry, including the Robert Capa Gold Medal, National Press Photographers Award, and an unprecedented four first prize awards from the World Press Photo contest.

41. Mr. McCurry has been a contributor to Plaintiff since 1986.

42. As noted above, Mr. McCurry is perhaps most famous for his photograph titled Afghan Girl (the "McCurry Photograph"). A copy of the McCurry Photograph is exhibited below:



43. The McCurry Photograph was registered by Mr. McCurry with the Register of Copyrights on April 10, 2009 and was assigned Registration No. VA0001714828. A true and correct copy of a printout of the registration from the US Copyright Office is attached hereto as

**Exhibit "D."**

44.     Mr. McCurry is the owner of the McCurry Photograph and has remained the owner at all times material hereto.

45.     For all times relevant to this action, Plaintiff has been appointed as the exclusive administrator and publisher of all copyright rights in and to the McCurry Photograph. As such, Plaintiff is entitled to institute and maintain this action for copyright infringement. See 17 U.S.C. § 501(b).

46.     The First Erwitt Photograph, the Second Erwitt Photograph, the Halsman Photograph, and the McCurry Photograph are collectively referred to herein as the "Work."

### III.    Defendant's Unlawful Activities

47.     Defendant makes online galleries, contracts, and invoices for professional photographers.

48.     In August 2019, Defendant acquired "Cole's Classroom" which offers various online photography training courses, sells various photography software/presets, and generally provides photography-related information/articles.

49.     "Cole's Classroom" advertises/markets its business primarily through its website (https://www.colesclassroom.com/), social media (e.g. https://www.facebook.com/ColesClassroom/?ref=page_internal), and other forms of advertising. Cole's Classroom's page alone has over 442,000 followers.

50.     On a date after the above-referenced copyright registration of each photograph comprising the Work, Defendant published each of the First Erwitt Photograph, the Second Erwitt Photograph, the Halsman Photograph, and the McCurry Photograph on its website (at https://www.colesclassroom.com/26-famous-photographers/) in connection with an article titled

"40 Famous Photographers to Inspire You [2020 Updated]":



















*McCurry created a hauntingly beautiful image here.*

51.     Notably, Defendant misidentifies the First Erwitt Photograph on its website as having been created by photographer Gary Winogrand.

52. A true and correct copy of screenshots of Defendant's website, displaying the copyrighted Work, is attached hereto as **Exhibit "E."**

53. Throughout the foregoing article, Defendant invites viewers to sign up for its "Classroom Pro" service (offered at $49.00 per month) and to "Become the photographer of your dreams with Cole's Classroom." Various other messages are included in the article, all of which invite viewers to sign up for Defendant's paid service. For example:

> Ready to take your photography to the next level?
>
> Join Cole's Classroom today! »

> Take a deep dive into landscape photography in our Getting Started with Landscape Photography course

> Become the photographer you were **born to be.**
>
> Join Cole's Classroom

> Advance your wedding photography with our Photoshop Basics for Photographers course

> Why stop here? Unlock **hundreds of photography classes** for beginners.
>
> Start Free Trial



54.     Defendant is not and has never been licensed to use or display the Work.  Defendant never contacted Plaintiff to seek permission to use the Work in connection with its website/advertising or for any other purpose – even though the Work that was copied is clearly professional photography that would put Defendant on notice that the Work was not intended for public use.

55. Defendant utilized the Work for commercial use – namely, in connection with the furthering of Defendant's business.

56. Upon information and belief, Defendant located a copy of the Work on the internet and, rather than contact Plaintiff to secure a license, simply copied the Work for its own commercial use.

57. Through its ongoing diligent efforts to identify unauthorized use of its photographs, Plaintiff first discovered Defendant's unauthorized use/display of the Work in approximately October 2021.  Following Plaintiff's discovery, Plaintiff notified Defendant in writing of such unauthorized use.  To date, Plaintiff has been unable to negotiate a reasonable license for the past infringement of its Work.

58. All conditions precedent to this action have been performed or have been waived.

## COUNT I – COPYRIGHT INFRINGEMENT

59. Plaintiff re-alleges and incorporates paragraphs 1 through 58 as set forth above.

60. Each photograph comprising the Work is an original work of authorship, embodying copyrightable subject matter, that is subject to the full protection of the United States copyright laws (17 U.S.C. § 101 *et seq.*).

61. Mr. Erwitt owns a valid copyright in the First Erwitt Photograph Plaintiff owns a valid copyright in the Second Erwitt Photograph.

62. Ms. Halsman (as the representative of Mr. Halsman's estate) owns a valid copyright in the Halsman Photograph.

63. Mr. McCurry owns a valid copyright in the McCurry Photograph.

64. Plaintiff has standing to bring this lawsuit and assert the claim(s) herein as it has sufficient rights, title, and interest to such copyright (as Plaintiff serves as the exclusive licensing

15
COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

agent with respect to the Work and, in the case of the second Erwitt Photograph, owns the copyright outright).

65. As a result of Plaintiff's reproduction, distribution, and public display of the Work, Defendant had access to the Work prior to its own reproduction, distribution, and public display of the Work on its website.

66. Defendant reproduced, distributed, and publicly displayed the Work without authorization from Plaintiff.

67. By its actions, Defendant infringed and violated Plaintiff's exclusive rights in violation of the Copyright Act, 17 U.S.C. § 501, by reproducing, distributing, and publicly displaying the Work for its own commercial purposes.

68. Defendant's infringement was willful as it acted with actual knowledge or reckless disregard for whether its conduct infringed upon Plaintiff's copyright.  Defendant is in the photography business and purports to provide various services to professional and amateur photographers alike. Notably, Defendant itself utilizes a copyright disclaimer on its website ("© 2023 Cole's Classroom. All rights reserved."), indicating that Defendant understands the importance of copyright protection and intellectual property rights and is actually representing that it owns each of the photographs published on its website.  See, e.g., Bell v. ROI Prop. Grp. Mgmt., LLC, No. 1:18-cv-00043-TWP-DLP, 2018 U.S. Dist. LEXIS 127717, at *3 (S.D. Ind. July 31, 2018) ("[T]he willfulness of ROI's infringement is evidenced by the fact that at the bottom of the webpage on which the Indianapolis photograph was unlawfully published appeared the following: 'Copyright © 2017.'  By placing a copyright mark at the bottom of its webpage that contained Mr. Bell's copyrighted Indianapolis Photograph, Mr. Bell asserts ROI willfully infringed his copyright by claiming that it owned the copyright to everything on the webpage; John Perez

Graphics & Design, LLC v. Green Tree Inv. Grp., Inc., Civil Action No. 3:12-cv-4194-M, 2013 U.S. Dist. LEXIS 61928, at *12-13 (N.D. Tex. May 1, 2013) ("Once on Defendant's website, Defendant asserted ownership of Plaintiff's Registered Work by including a copyright notice at the bottom of the page. Based on these allegations, the Court finds Plaintiff has sufficiently pled a willful violation…."). Defendant clearly understands that high-end food photography is not generally available for free or that such can simply be copied from the internet.

69.    Defendant's willfulness is further demonstrated by the fact that Defendant has refused and/or failed to remove the Work from its website notwithstanding multiple communications sent to Defendant (via Federal Express, e-mail, and telephone) notifying it of the infringement and demanding that the Work be removed from Defendant's website. See, e.g. Prepared Food Photos, Inc. v. Perry Wings Plus, Inc., No. 22-CV-61883-RAR, 2022 U.S. Dist. LEXIS 227304, at *10 (S.D. Fla. Dec. 19, 2022) ("Defendant's refusal to remove Plaintiff's Work after nearly a dozen communication attempts demonstrates Defendant's willfulness."); Burch v. Nyarko, 2007 U.S. Dist. LEXIS 55345, at *3 (S.D.N.Y. July 30, 2007) ("Nyarko's conduct throughout this action - reflected in his refusal to talk to Plaintiff, to remove the photographs promptly from the website, and to respond to this suit - supported a finding of willfulness under 17 U.S.C. § 504(c)(2)."); Schwabel v. HPT Serv., LLC, No. 3:17-cv-791-J-34JBT, 2018 U.S. Dist. LEXIS 171820, at *10 n.8 (M.D. Fla. Sep. 6, 2018) ("Because Defendant failed to remove the Photograph from the subject sites after Plaintiff demanded that he do so, the undersigned recommends that the infringements were willful."). The willfulness of Defendant's infringement is further demonstrated by Defendant's inclusion on its website of a copyright notice ("Copyright © 2019. Islamorada Times. All Rights Reserved. Privacy Policy"), indicating Defendant understands the importance of copyright protection/intellectual

property rights and falsely represented all content thereon as its own. See, e.g., Bell v. ROI Prop. Grp. Mgmt., LLC, No. 1:18-cv-00043-TWP-DLP, 2018 U.S. Dist. LEXIS 127717, at *3 (S.D. Ind. July 31, 2018) ("[T]he willfulness of ROI's infringement is evidenced by the fact that at the bottom of the webpage on which the Indianapolis photograph was unlawfully published appeared the following: 'Copyright © 2017.' By placing a copyright mark at the bottom of its webpage that contained Mr. Bell's copyrighted Indianapolis Photograph, Mr. Bell asserts ROI willfully infringed his copyright by claiming that it owned the copyright to everything on the webpage; John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc., Civil Action No. 3:12-cv-4194-M, 2013 U.S. Dist. LEXIS 61928, at *12-13 (N.D. Tex. May 1, 2013) ("Once on Defendant's website, Defendant asserted ownership of Plaintiff's Registered Work by including a copyright notice at the bottom of the page. Based on these allegations, the Court finds Plaintiff has sufficiently pled a willful violation…."). As of the date of this filing, the Work is still published on Defendant's website.

70. Plaintiff has been damaged as a direct and proximate result of Defendant's infringement.

71. Plaintiff is entitled to recover its actual damages resulting from Defendant's unauthorized use of the Work and, at Plaintiff's election (pursuant to 17 U.S.C. § 504(b), Plaintiff is entitled to recover damages based on a disgorgement of Defendant's profits from infringement of the Work, which amounts shall be proven at trial.

72. Alternatively, and at Plaintiff's election, Plaintiff is entitled to statutory damages pursuant to 17 U.S.C. § 504(c), in such amount as deemed proper by the Court.

73. Pursuant to 17 U.S.C. § 505, Plaintiff is further entitled to recover its costs and attorneys' fees as a result of Defendant's conduct.

74. Defendant's conduct has caused and any continued infringing conduct will continue to cause irreparable injury to Plaintiff unless enjoined by the Court. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction prohibiting infringement of Plaintiff's exclusive rights under copyright law.

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

a. A declaration that Defendant has infringed Plaintiff's copyrights in the Work;

b. A declaration that such infringement is willful;

c. An award of actual damages and disgorgement of profits as the Court deems proper or, at Plaintiff's election, an award of statutory damages for willful infringement up to $150,000.00 for each infringement of each photograph comprising the Work;

d. Awarding Plaintiff its costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 505;

e. Awarding Plaintiff interest, including prejudgment interest, on the foregoing amounts;

f. Permanently enjoining Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with Defendant, from directly or indirectly infringing Plaintiff's copyrights or continuing to display, transfer, advertise, reproduce, or otherwise market any works derived or copied from the Work or to participate or assist in any such activity; and

g. For such other relief as the Court deems just and proper.

### Demand For Jury Trial

Plaintiff demands a trial by jury on all issued so triable.

Dated: March 17, 2023.

COPYCAT LEGAL PLLC
3111 N. University Drive
Suite 301
Coral Springs, FL 33065
Telephone: (877) 437-6228
james@copycatlegal.com

By: /s/ James D'Loughy_____
      James D'Loughy, Esq.