1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

SUPERIOR RIGGING AND ERECTING, CO.,

               Plaintiff,

    v.

BRIGGS OF BURTON, INC.,

               Defendant.

NO.

**COMPLAINT**

COMES NOW Plaintiff Superior Rigging and Erecting, Co. ("Superior Rigging") by and through its undersigned counsel and brings this action against Defendant Briggs of Burton Inc. ("Briggs") (Briggs and Superior Rigging are collectively referred to herein as the "Parties").

## PARTIES

1.   Superior Rigging is a Georgia corporation with its principal office located at 3250 Woodstock Road SE, Atlanta, Georgia 30316.

2.   Superior Rigging is authorized to bring this action in all respects.

3.   Briggs is a New York Corporation with its principal office located at 1163 Pittsford-Victor Rd, Suite 220, Pittsford, NY, United States, 14534.

4.   Briggs may be served through its registered agent located at 1163 Pittsford-Victor Rd, Suite 220, Pittsford, NY, United states, 14534.

COMPLAINT - 1



Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

[DocNum]

## JURISDICTION / VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

6. The matter in controversy exceeds the sum or value of $75,000.

7. Venue is properly laid pursuant to 28 U.S.C. § 1391.

8. This Court has personal jurisdiction over Briggs.

9. Briggs has transacted business in Bartow County of the State of Georgia.

10. This action arises out of Briggs' business transaction in the State of Georgia.

## STATEMENT OF FACTS

## <u>The Project</u>

11. Briggs was engaged by beer manufacturer, Anheuser-Busch, to modify the Anheuser-Busch brewery in Cartersville, Georgia so the brewery could produce 350,000 barrels per year of Craft Brand beers (the "Project").

12. To complete the Project, it was necessary for Briggs to engage a contractor for rigging and installation services.

13. The rigging and installation services for the Project were required for the installation of equipment into existing facilities across multiple buildings at the Anheuser-Busch brewery.

14. The equipment to be installed at the Project included without limitation:

- five yeast tanks and the necessary platforms;
- four centrifuges, four corresponding tanks, two necessary platforms, and MCC panels;
- two dry hop mix tanks; and
- twelve unitanks with unitank ancillary items.

COMPLAINT - 2

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224   |   Fax 206.583.0359

[DocNum]

15. The rigging and installation of equipment for the Project required utilization of heavy machinery.

16. For example, rigging and installation of the equipment required a 350-ton crane.

17. The mobilization and demobilization of the heavy machinery required the expenditure of time, manpower, and labor.

18. The Project included a written Project Milestone Plan containing details for the rigging and installation timeline.

19. The Project Milestone Plan began on January 6, 2021 with the installation of twelve unitanks and was scheduled to end on April 19, 2021 with the installation of a dry hop tank system.

20. The total rigging and installation services were scheduled for completion before the end of May 2021.

21. To meet the rigging and installation timeline, careful logistics and planning were required.

**Briggs engages Superior Rigging to perform rigging and installation services for the Project.**

22. Upon information and belief, Briggs invited various contractors to place bids for the rigging and installation services necessary for the Project.

23. Superior Rigging was one of the contractors Briggs invited to place a bid for the rigging and installation services.

24. Superior Rigging submitted its bid in response to the invitation by Briggs thereby quoting Superior Rigging's rates, prices, and terms for the rigging and installation services.

25. Briggs accepted Superior Rigging's bid.

26. Briggs engaged Superior Rigging to perform rigging and installation

COMPLAINT - 3

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

[DocNum]

services for the Project.

27.  Briggs required Superior Rigging to enter the contract attached hereto as Exhibit A (the "Briggs Contract").

## Terms of the Briggs Contract

28.  The Briggs Contract identified the terms and scope of work for the rigging and installation services to be performed by Superior Rigging.

29.  Briggs promised to pay Superior Rigging $356,900.00 for the scope of work identified by the Briggs Contract.

30.  According to Schedule A of the Briggs Contract, Briggs also promised to pay Superior Rigging price adjustments if the installation of the equipment was delayed beyond Superior Rigging's control.

31.  Briggs agreed that if the installation of equipment was delayed beyond the maximum price adjustment cap, further discussions would be required between the Parties.

32.  According to Section 11.4 of the Briggs Contract, Briggs further agreed that 'In the event any legal action is commenced by either party to enforce their obligations under this Agreement, both parties agree that [sic] any judgment shall include the other party's reasonable professional fees and court costs."

## Briggs causes delays and requires Superior Rigging to perform extra work

33.  Early into Superior Rigging's performance, the Project began experiencing delays caused by Briggs and its various contractors.

34.  Briggs failed to coordinate schedules and facilities which caused extensive delays.

35.  Briggs also failed to prepare facilities for Superior Rigging's services which resulted in unexpected extra work that Briggs requested Superior Rigging to perform outside the scope of work described in the Briggs Contract.

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

[DocNum]

36.   On multiple occasions, Superior Rigging was required by Briggs to mobilize heavy equipment, machinery, multiple vehicles, and manpower only to arrive and find the existing facilities at the Project unprepared for the rigging and installation of the brewery equipment.

37.   On multiple occasions, Superior Rigging was required by Briggs to dedicate its labor and equipment to the Project while little to no work could be achieved.

38.   Briggs' delays resulted in multiple extra mobilizations and hours expended by Superior Rigging outside the agreed upon scope of work and Superior Rigging's quotes.

39.   Briggs' delays extended the timeline for the rigging and installation services well beyond the agreed upon timeline and through October 2021.

40.   Briggs delayed the installation of equipment entitling Superior Rigging to price adjustments under Schedule A of the Briggs Contract.

41.   Briggs' delays continued well beyond the price adjustment cap of the Briggs Contract causing the Parties to engage in discussions regarding work outside the scope of the Briggs Contract that Briggs desired Superior Rigging to perform.

42.   Briggs signed additional contracts with Superior Rigging to perform extra work outside the scope of work described in the Briggs Contract.

**Briggs signs Superior Rigging's terms and conditions for extra work**

43.   Before and throughout Superior Rigging's performance of rigging and installation services, Superior Rigging requested and Briggs agreed to and did sign Superior Rigging's terms and conditions as set forth on individually numbered work tickets whereby Briggs agreed to pay for Superior Riggings' rates and services.

44.   The Superior Rigging work tickets all contained identical terms and conditions upon which the parties agreed to their respective rights and duties (the

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

[DocNum]

"Terms and Conditions").

45. A true and accurate copy of the Terms and Conditions which were included with each work ticket is attached hereto as Exhibit B.

46. For the work Superior Rigging performed beyond the scope of work described in the Briggs Contract, Briggs agreed to be bound by the Terms and Conditions.

47. Among many things, the Terms and Conditions signed and agreed to by Briggs state, "All payments required hereunder shall be due in full upon billing. In addition to the rates shown on the face of this service agreement, the customer shall pay the following arising in connection with the service agreement: . . . d) Superior's costs and expenses, including reasonable attorney's fees (unless prohibited by law), incurred in enforcing this agreement and/or collecting any amount due hereunder."

**Superior Rigging completes all work, and Briggs refuses to pay in full**

48. Even though Briggs caused multiple delays and impediments, Superior Rigging still performed the entire scope of work under the Briggs Contract.

49. Superior Rigging also performed additional work requested by Briggs outside of the Briggs Contract for which Briggs agreed to pay Superior Rigging.

50. Even though Briggs agreed to pay Superior Rigging $356,900.00 for the scope of work described in the Briggs Contract, Briggs has only paid Superior Rigging $320,777.60 in total.

51. Briggs refuses to pay for the entire scope of work that Superior Rigging performed under the Briggs Contract.

52. Briggs also refuses to pay additional amounts owed under the Briggs Contract for delays.

53. Briggs also refuses to pay for the extra work it engaged Superior Rigging to perform outside of and beyond the scope of work described by the Briggs

COMPLAINT - 6

RS   Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

Contract.

54.  Superior Rigging invoiced Briggs for all the work Superior Rigging performed.

55.  Briggs has paid some of the Superior Rigging invoices, but Briggs has refused to pay other Superior Rigging invoices.

56.  Briggs refuses to pay Superior Rigging Invoice 43783 for $17,559.50 attached hereto as Exhibit C.

57.  Briggs refuses to pay Superior Rigging Invoice 43784 for $4,455.00 attached hereto as Exhibit D.

58.  Briggs refuses to pay Superior Rigging Invoice 43785 for $2,451.00 attached hereto as Exhibit E.

59.  Briggs refuses to pay Superior Rigging Invoice 44143 for $57,327.00 attached hereto as Exhibit F.

60.  Briggs refuses to pay Superior Rigging Invoice 44435 for $125,997.50 attached hereto as Exhibit G.

61.  Briggs refuses to pay Superior Rigging Invoice 2267AT for $28,593.60 attached hereto as Exhibit H.

62.  Briggs refuses to pay Superior Rigging Invoice 2401AT for $14,938.45 attached hereto as Exhibit I.

**COUNT I: BRIGGS' BREACH OF THE BRIGGS CONTRACT**

63. Superior Rigging hereby restates and incorporates the preceding paragraphs of this Complaint.

64. Briggs contracted with Superior Rigging to perform the scope of work described by the Briggs Contract in exchange for payment.

65. By mutual assent, the Parties formed a contract.

66. Superior Rigging fully performed the scope of work described in the

COMPLAINT - 7

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

[DocNum]

Briggs Contract.

67. Briggs agreed to pay $356,900.00 for Superior Rigging's performance of the scope of work described in the Briggs Contract.

68. Superior Rigging's performance constitutes good and valuable consideration for Briggs' payment.

69. Briggs has only paid Superior Rigging $320,777.60 for Superior Rigging's performance of the scope of work.

70. Briggs has breached the Briggs Contract by failing to pay Superior Rigging for performance of the scope of work in full.

71. Briggs also caused delays to Superior Rigging's performance of the scope of work.

72. Briggs agreed to pay Superior Rigging for delays beyond Superior Rigging's control.

73. Briggs has failed to pay Superior Rigging for the delays caused by Briggs.

74. By failing to pay for delay, Briggs has breached the Briggs Contract.

75. As a result of Briggs' breaches, Superior Rigging has suffered damages in an amount to be proven at trial plus applicable interest, costs, and attorneys' fees.

76. Briggs' agreed by written contract to pay Superior Rigging's costs and attorneys' fees.

**COUNT II: BRIGGS' BREACHES OF CONTRACT FOR EXTRA WORK**

77. Superior Rigging hereby restates and incorporates the preceding paragraphs of this Complaint.

78. In addition to the scope of work described in the Briggs' Contract, Briggs also contracted with Superior Rigging to perform extra rigging and installation work.

79. The Parties' relationship surrounding the extra rigging and installation

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

[DocNum]

work is governed by Superior Rigging's Terms and Conditions.

80. Superior Rigging presented Briggs with a work ticket that included Terms and Conditions each time Briggs requested that Superior Rigging perform extra work.

81. Each time Superior Rigging was requested to perform extra work, Briggs signed Superior Rigging's Terms and Conditions.

82. Briggs has failed to pay Superior Rigging for the extra work.

83. By failing to pay Superior Rigging for the extra work, Briggs breached its contracts with Superior Rigging.

84. As a result of Briggs' breaches, Superior Rigging has suffered damages in an amount to be proven at trial plus applicable interest, costs, and attorneys' fees.

85. Briggs' agreed by written contract to pay Superior Rigging's costs and attorney's fees.

## COUNT III: UNJUST ENRICHMENT

86. Superior Rigging hereby restates and incorporates the preceding paragraphs of this Complaint.

87. Briggs has failed to pay for Superior Rigging's performance of rigging and installation services.

88. Briggs retains the benefit of Superior Rigging's performance of rigging and installation services.

89. Superior Rigging performed the rigging and installation services at great expense.

90. Superior Rigging performed the rigging and installation services with the expectation of payment from Briggs.

91. Because Briggs wrongfully refused to pay Superior Rigging for the rigging and installation services, Superior Rigging has suffered damages.

RS   Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

[DocNum]

92.  Under such circumstances, it is unjust for Briggs to retain the benefit of Superior Rigging's performance.

## COUNT IV: PROMISSORY ESTOPPEL

93. Superior Rigging hereby restates and incorporates the preceding paragraphs of this Complaint.

94. Briggs accepted Superior Rigging's performance of rigging and installation services.

95.  Briggs promised to pay for Superior Rigging's performance of rigging and installation services.

96.  In reasonable reliance on Briggs' promises, Superior Rigging performed the rigging and installation services at great expense.

97.  Now, after Superior Rigging has performed the rigging and installation services, Briggs refuses to pay for Superior Rigging's work.

98.  Injustice may only be avoided by enforcement of Briggs' promises.

## COUNT V: O.C.G.A. § 13-6-11 Attorneys' Fees

99.  Superior Rigging hereby restates and incorporates the preceding paragraphs of this Complaint.

100.Superior Rigging is entitled to its attorneys' fees under the Parties' contracts, and alternatively Superior Rigging is entitled to its expenses of litigation under O.C.G.A. § 13-6-11 because Briggs has acted in bad faith, has been stubbornly litigious, and has caused Superior Rigging unnecessary trouble and expense.

## PRAYER FOR RELIEF

WHEREFORE, Superior Rigging respectfully requests that this Court hold a jury trial and grant the following relief:

a.  Entry of a judgment against Briggs for breach of the Briggs Contract;

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

[DocNum]

b. Entry of a judgment against Briggs for Briggs' breaches of its contracts with Superior Rigging to perform extra work;

c. Entry of a judgment against Briggs for damages in an amount to be determined at trial;

d. Entry of a judgment against Briggs for pre-judgment and post-judgment interest;

e. Entry of a judgment against Briggs for Superior Rigging's reasonable attorneys' fees, other costs of collection, and litigation expenses;

f. Any and all other additional relief that the Court may deem just and equitable under all the circumstances.

DATED this 16th day of March, 2023.

By *s/ Christopher R. Conley*
*s/ Bryan C. Graff*
Christopher R. Conley
Georgia Bar No. 907964
Bryan C. Graff
Georgia Bar No. 141503
Attorney for Superior Rigging and Erecting Co.
RYAN, SWANSON & CLEVELAND, PLLC
1201 Third Avenue, Suite 3400
Seattle, Washington  98101-3034
Telephone: (206) 464-4224
Facsimile: (206) 583-0359
Conley@ryanlaw.com
Graff@ryanlaw.com

COMPLAINT - 11

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

[DocNum]

# EXHIBIT A

# EQUIPMENT INSTALLATION CONTRACT – PO13238 & PO13316 & PO13325

This **EQUIPMENT INSTALLATION CONTRACT** ("Agreement") dated as of 8th January 2021, between

BRIGGS OF BURTON, INC. 1163 Pittsford-Victor Road, Suite 220, Pittsford NY, 14534 (Purchaser); and

SUPERIOR RIGGING & ERECTING COMPANY, 3250 Woodstock Road, Atlanta, Georgia, 30316 (Supplier).

A. Purchaser desires to purchase certain brewery equipment and installation services from Supplier and Supplier desires to sell and install such equipment for Purchaser to Purchaser's End User facility, provided that the terms and conditions of sale set forth herein are agreed upon between the parties.

B. Both parties would like to execute this Agreement to document the terms and conditions of the equipment and services sale.

## 1. EQUIPMENT SALE

1.1 Equipment Sale: Purchase Price. Supplier hereby agrees to sell to the Purchaser the equipment (ancillary kit required for install of equipment provided by others) and installation services related to the equipment and services (collectively "Equipment") as listed and described on;

   i. Briggs PO13238 & PO13316 & PO13325
   ii. Tender specification: Briggs RFQ, ref no. MG2195/BP0238/14674 – Request for Quotation - Rigging
   iii. Supplier's Proposal Scope document dated January 19th, 2021, consisting of 3 pages and their document dated February 8th, 2021, consisting of 2 pages.
   iv. Installation Requirements as per Schedule A
      ("Project Documents") which are attached hereto as Schedule A and incorporated by reference, in consideration of Purchaser's installment payments totalling $356,900.00 USD.

   Supplier shall not make any substitutions without prior written authorization of the Purchaser in its sole discretion.

1.2 RESERVED

1.3 Payment Terms: The Purchase Price shall be payable by the Purchaser in 90 days Net USD funds. The Supplier shall invoice monthly, based on the stages of installation work completed (set out as Section 4 below).

1.4 Late Charges: In the event the Purchaser fails to make timely payments in accordance with the installment schedule listed above, any past due amount beyond thirty (30) days shall bear interest at the rate of 2% per annum until such amount is paid in full.

1.5 Invoices and all supporting documents shall be transmitted via Electronic transfer to: bincaccounts@briggsplc.com
   **Sold To:** Briggs of Burton, Inc.
   **Attn:** Accounts Payable
   1163 Pittsford-Victor Road
   Suite 220,
   Pittsford NY, 14534
   **Subject heading:** PO No. PO13238/BG0238 Cartersville

1.6 Prices detailed in this Agreement are fixed, firm and free of escalation or any currency rate fluctuation through to completion unless agreed and shown otherwise in Schedule A to this Agreement.

1.7 The cost of all drawings, documentation, installation manuals, shop inspection, shop testing, non-destructive reports, test certificates and code data books as specified herein is included in the prices detailed in this Agreement. Copies of all of the same shall be delivered to Purchaser, and shall be and become the sole property of Purchaser.

1.8 Supplier shall keep in accordance with generally accepted accounting practices, books, records, and accounts pertaining to performance of work, including Supplier's and sub-supplier and/or sub-contractor's personnel records, correspondence, instructions, plans, drawings, receipts, vouchers, memoranda, data stored in computer libraries and such other documentation and related systems and controls necessary for an accurate audit and verification of costs. Supplier shall preserve, and shall cause its sub-suppliers and/or sub-contractors to preserve said documents during the performance of work and for a period of three (3) years after termination of work or completion of the work.

1.9 Supplier shall permit, at reasonable times during the performance of work and for a period of three (3) years after termination of work or completion, authorized representatives of Purchaser or End User to review Supplier's and sub-suppliers timesheets and other documents containing information on work completed / time spent / expenses

## EQUIPMENT INSTALLATION CONTRACT – PO13238 & PO13316 & PO13325

and make copies thereof, as necessary to audit and verify the completeness and accuracy of reimbursable costs contained in invoices submitted by Seller, or for any other reasonable purpose. No such inspection prior to delivery shall waive any rights of Purchaser or relieve Supplier of its obligations under this Agreement.

1.10 Changes to orders may be made only by mutual agreement of Supplier and Purchaser.

### 2. LIEN WAIVER

2.1 Final payment shall not become due until the Supplier properly delivers to Purchaser: Subcontractor Affidavit and Final Waiver of Lien properly executed by Supplier and all of Supplier's subcontractors of every tier who provided any labor or materials in excess of $50,000 in value, or from whom Purchaser otherwise has requested a lien waiver, Supplier's Affidavit and Final Waiver of Lien, properly executed by Supplier or the subcontractor, as applicable.

2.2 Specific forms are attached and shall be executed without modification.

2.3 If applicable law requires a particular form of lien waiver, Purchaser may direct Supplier and/or its Subcontractors to execute such form in lieu of provided forms.

### 3. TAXES

3.1 The goods and services provided or rendered to Purchaser pursuant to this Agreement are **not** subject to Georgia state and/or local sales/use tax, value added taxes, goods and services tax or provincial sales taxes.

3.2 Supplier shall segregate and identify such tax and tax rate separately on each invoice. If Supplier is authorized to collect such taxes, Supplier must invoice Purchaser for such taxes separately enumerated on each invoice to Purchaser. If Supplier is not licensed to collect such tax, each invoice shall so state, and Purchaser will accrue and pay applicable tax directly to the appropriate taxing authorities. Supplier shall not be entitled to reimbursement by Purchaser for such taxes in the event Supplier fails to invoice Purchaser for such taxes applicable to each invoice.

(i) US Supplier: If Supplier is a corporation, company, partnership, or association created or organized in the United States or under the laws of the United States; or an individual who is a U.S. citizen or U.S. resident alien, Supplier shall provide a completed IRS Form W-9.

(ii) Non U.S. entity/individual: Supplier shall provide the applicable IRS Form W-8 as well as any documentation required for claiming a reduced rate under a treaty, as applicable.

(iii) Insufficient forms: If the IRS Form received is found to be not sufficient for Purchaser to determine that it is not required under IRS regulations to withhold, Purchaser shall withhold at the rate prescribed under the U.S. laws and regulations, and Supplier shall have no right against Purchaser for indemnification for amounts withheld.

### 4. INSTALLATION

4.1 Installation Address:
ABI Construction, 100 Busch Drive NE, Cartersville, GA, 30120
Attn: Briggs / Chris Wilson, Project: Craft & Draft Capability

4.2 Safety
Supplier will be required to adhere to all of Purchaser's and End User's Safety Policies and Regulations at all times, including those currently in place for COVID-19. A copy of Supplier's Safety Program is required to be on file at site prior to the start of work.

4.3 Site Coordination
All works at site to be coordinated with our Chris Wilson whom can be contacted at chris.wilson@briggsplc.com or via cell at 585-472-9393.

4.4 Dates
(a) The Supplier will use its best efforts to meet the timings as set out below.

By end of January 2021:
- Unload, ingress, stand vertically, align, level, anchor, and grout 5 yeast tanks in Building 5.
- Unload, ingress, set, and anchor 4 centrifuges in Building 6.

By end of February 2021:

## EQUIPMENT INSTALLATION CONTRACT – PO13238 & PO13316 & PO13325

- Offload, stand, set, align, level, anchor, and grout 12 Uni-tanks at Building 55.

By end of March 2021:
- Unload, ingress, assemble, align, level, anchor, and grout 1 platform associated with the 5 yeast tanks.

By end of April 2021:
- Rig 1 tank into freight elevator and lift to 2nd floor.
- Rig and stand vertically, align, level, anchor, and grout 1st tank.
- Rig and stand vertically 2nd tank on 1st floor.
- Align, level, anchor, and grout 2nd tank.
- Rig, lift, and assemble tank top walkway system.
- Rig, lift, and set 12 top plates on the 12 Uni-tanks.
- Rig, lift, and set 12 igloos on top of the 12 Uni-tanks.

By end of May 2021:
- Unload, ingress, stand vertically, align, level, anchor, and grout 4 tanks in Building 6.
- Unload, ingress, assemble, align, level, anchor, and grout 2 platforms in building 6.
- Ingress 2 tanks into Building 6A.

(b) Parties agree that the above delivery time is agreed and reasonable and will allow the Supplier sufficient time as stated in Section 4.2 (a), time being of the essence. Purchaser shall not be obligated to accept delivery before the time stated in 4.2(a) unless the Purchaser agrees otherwise.

## 5. MATERIAL ORIGIN

5.1 The Supplier will be required to provide the origin of material upon Purchaser's request. Failure by the Supplier to comply with the manufacturers, material of construction, or certificates of compliance required in the technical specifications shall result in the immediate issuance of a Non-Conformance Report regardless of what stage of manufacturing the materials have entered.

## 6.   REPRESENTATIONS AND EQUIPMENT WARRANTY

6.1 Supplier warrants that all Equipment and Installation Services supplied pursuant to this Agreement will comply with all applicable laws, rules, ordinances and regulations, and further Supplier shall provide all permits, certificates and licenses which may be required for the performance of this Agreement.

6.2 Supplier's Warranty: Supplier warrants to the Purchaser that the Equipment and Installation Services shall (1) conform to the quality and specifications specified in the Project Documents; (2) Supplier warrants that all Equipment shall (i) be new and of good quality (ii)not infringe upon any patent or other intellectual property right, and (iii) bear all warning labels and markings required by applicable law; and (3) be free from defects in workmanship and material for the Warranty Period.

6.3 Warranty Period: Twelve (12) months from the completion of all Workmanship / Craftsmanship.

6.4 Performance Testing: If the performance of the Equipment is questioned by the Purchaser during the Warranty Period described in Section 6.3, the Purchaser agrees to provide written notice which describes the nature of the problem and the Supplier will arrange for the prompt, necessary and appropriate performance testing.

6.5 Equipment Replacement or Return: In the event the Equipment and/or Installation Services fails to meet any or all of the performance standards in Schedule A attached hereto, the Supplier shall repair and/or replace all or any portion of the Equipment or services within a reasonable period of time following the Performance Testing described in Section 6.4. If the Supplier is unable to affect the changes necessary for the Equipment to perform according to the warranted performance standards and to the reasonable satisfaction of the Purchaser, then the Supplier will accept return of the Equipment and will refund any amounts paid by Purchaser in connection with the Equipment and Installation Services as of the date of the Equipment return and compensate the Purchaser for a third party to supply and install the Equipment.

6.6 Replacement Parts and Labor: Any parts, material or labor provided by Supplier as replacements during the Supplier's warranty period shall be provided to the Purchaser at no charge. Freight and expenses for repair work are the responsibility of the Supplier.

## EQUIPMENT INSTALLATION CONTRACT – PO13238 & PO13316 & PO13325

**7.  SUSPENSION OF PERFORMANCE**

7.1 The Purchaser may at any time, and from time to time, by written notice to the Supplier, suspend all or any portion of this Agreement. Such suspensions shall not exceed more than one hundred eighty (180) consecutive calendar days. Upon receiving any such notice of suspension, Supplier shall promptly suspend further performance of the Agreement to the extent specified, and during the period of such suspension. Supplier shall use its best efforts to mitigate costs associated with suspension. Purchaser may at any time withdraw the suspension as to all or part of the suspended performance by written notice to Supplier specifying the effective date and further details and Seller shall, on the specified date of withdrawal, resume diligent performance of the Agreement.

**8.  RISK OF LOSS**

8.1  Risk of Loss: The risk of loss with respect to the Equipment (kit furnished by others) shall be borne exclusively by the Supplier whist being handled by or under the control of the Supplier, until the Equipment (kit furnished by others) is installed and secured in its' final place at the Purchaser's/End User's site.

8.2  N/A

8.3  Supplier shall advise Purchaser in writing of any special shipping, handling or storage measures or procedures required to assure safekeeping of the Equipment. Failure by Supplier to so advise Purchaser may result in a claim to Supplier of the Purchaser's costs arising from such failure.

**9.  PURCHASER WARRANTIES**

9.1  Warranties: Purchaser warrants that as of the date of this Agreement that the following are true and accurate:
(a) The execution of this Agreement by Purchaser does not conflict with any other agreement to which the Purchaser is bound; and
(b) No approvals, consents or authorizations are required from third parties before the Purchaser executes this Agreement.

9.2  Additional Responsibilities of the Supplier:
(a) Pay all federal, state and local taxes in connection with Purchaser's purchase and use of the Equipment, including without limitation, sales, use, excise, property and gross receipts taxes;

**10.  CONFIDENTIALITY**

10.1 The Parties have signed a Confidentiality Agreement, attached hereto at Schedule B.

10.2 This Agreement contemplates disclosure to Supplier of Confidential Information such as drawings and/or other data that are considered proprietary by the Purchaser and/or the End User. The Supplier shall comply with the terms of the Confidentiality Agreement, including obtaining a like agreement from any third party (including lower-tier suppliers and contractors) to which Supplier must disclose any proprietary information in the performance of this Agreement.

**11.  CLAIMS**

11.1 For purposes of this Agreement "Loss" means all costs, loss, damages, liabilities or expenses, including reasonable attorneys' fees, arising in connection with any action, proceeding, demand or claim.

11.2 Supplier shall indemnify, defend, and hold harmless the Purchaser from all Loss to the extent Loss is caused or incurred due to breach of this Agreement or the negligence, willful misconduct, or other actionable fault of the Supplier.

11.3 Purchaser, without waiver or limitation of any rights or remedies of Purchaser or End User, shall be entitled from time to time to offset and deduct from any amounts due or owing by Purchaser to Supplier in connection with this Agreement, any and all amounts owed by Supplier to Purchaser.

11.4 Actions: In the event any legal action is commenced by either party to enforce their obligations under this Agreement, both parties agree that the any judgment shall include the other party's reasonable professional fees and court costs. In the event that Purchaser is required to arbitrate a dispute with a third party, which dispute arises out of this Agreement or is in any way connected with Supplier, Supplier agrees to join in such arbitration proceeding as Purchaser may direct and shall submit to such jurisdiction and be finally bound by the judgment rendered in accordance with the arbitration rules as may be established therein.

## EQUIPMENT INSTALLATION CONTRACT – PO13238 & PO13316 & PO13325

**12. INSURANCE**

The following Insurance types are to be provided by the Supplier:
- General Liability, Product Liability - $1 million USD minimum, $2 million USD aggregate.
- Automobile, Workers Compensation, Employer Liability - $1 million USD minimum.
- Umbrella Insurance - $5 million USD minimum.

The Purchaser requires to be listed as an Additional Insured (on a primary/non-contributory basis), along with a Waiver of Subrogation in the Purchaser's favour, both where applicable.

The Purchaser requires a 30-day prior written Notice of Cancellation.

**13. COMMUNICATIONS**

**13.1 For the Purchaser**
Michael Armani (Michael.Armani@briggsplc.com)

**13.2 For the Supplier**
John Morgan (j.morgan@superiorrigging.com)

Communication between Purchaser and Seller by E-mail is for the expedient transfer of preliminary technical data and non-contractual information only.

**14. TERMINATION**

14.1 The Purchaser shall have the option to terminate this Agreement and any Purchase Order hereunder for convenience, in whole or in part, without cost or liability, except as stated below, by giving written notice of such termination to Supplier.

14.2 In the event of termination the Purchaser will compensate Supplier, and Supplier agrees to accept as full and complete payment for all termination charges or claims of Supplier, an amount that is reasonably calculated by Purchaser considering order value and length of time / duration of the Agreement prior to the effective date of the calculation.

**15. GENERAL**

15.1 Entire Agreement: This Agreement represents the entire agreement between the parties with respect to the subject matter herein. All other prior agreements, commitments, representations or understandings, whether oral or in writing are hereby superseded, except that any purchase order is incorporated herein by reference. Purchaser hereby acknowledges that it is not relying on any written or oral representation of Supplier, other than those set forth herein or in any written performance standards provided by Supplier. Supplier shall, in its performance of this Agreement, comply with all applicable laws, ordinances, regulations, and regulatory orders.

15.2 Promotion: Supplier agrees that it shall not without the prior written approval of the Purchaser, advertise or publicise the Purchaser or End User's name or photographs of the Equipment on or off Supplier's premises in any promotional material for the purpose of soliciting current or future business. If written approval is provided, the use of such photographs will be jointly agreed upon with Purchaser's permission prior to such use.

15.3 Assignment: Both parties agree that its rights and obligations hereunder may not be assigned, either in whole or in part, without the prior written consent of the other party, except that Purchaser may assign this Agreement to any affiliate or subsidiary.

15.4 Severability: To the extent any provision of this Agreement is invalid, unenforceable, or void in any jurisdiction, either in whole or in part, such provision shall not impair the remaining provisions of this Agreement and such remaining provisions shall continue to be in full force and affect.

15.5 Governing Law: This Agreement shall be governed by the laws of the State of New York applicable to contracts made and performed wholly within the state, excluding any conflict of laws provisions. The parties agree to the exclusive jurisdiction of state and federal courts located in Monroe County, New York, in the event of any legal proceedings involving this Agreement.

15.6 Supplier warrants to the Purchaser that the Equipment supplied hereunder comply with all applicable requirements of the Occupational Safety and Health Act of 1970 (PL 91-596), as amended, and of all applicable standards, rules

**EQUIPMENT INSTALLATION CONTRACT – PO13238 & PO13316 & PO13325**

and regulations issued under said Act and agrees to indemnify and hold the Purchaser harmless against all loss, damage or expense, including penalties, resulting from any breach of this warranty.

15.7 Agency: Each party disclaims the existence of an agency or partnership relationship, express or implied, with the other party. Nothing in this Agreement shall be construed to establish an agency relationship between the parties.

15.8 Supplier certifies that it is in compliance, and shall at all times remain in compliance, with all applicable anticorruption and anti-bribery laws, including but not limited to the U.S. Foreign Corrupt Practices Act of 1977, as amended.

15.9 Amendments:  Any amendments to this Agreement shall be in writing executed by both parties.

15.10 The undersigned officers represent that they hold the office indicated and are authorized to execute this Agreement; this Agreement to be executed in counterparts, each of which shall be deemed to be an original document but all such counterparts together shall constitute but one agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first written above.

**PURCHASER**

| | |
|---|---|
| Name: | **Briggs of Burton, Inc** |
| By: | Reay Dicks |
| Title: | Vice President Engineering |
| Signature: | |
| Address: | 1163 Pittsford-Victor Road Suite 220, Pittsford NY, 14534 |

**SUPPLIER**

| | |
|---|---|
| Name: | **Superior Rigging & Erecting Company** |
| By: | |
| Title: | |
| Signature: | |
| Address: | 3250 Woodstock Road, Atlanta GA, 30316 |

## EQUIPMENT INSTALLATION CONTRACT – PO13238 & PO13316 & PO13325

## <u>SCHEDULE A</u>

<u>**Section I – Project Specifications**</u>

Briggs RFQ, ref no. MG2195/BP0238/14674 – Request for Quotation - Rigging

<u>**Section II – Data Sheet**</u>

Not applicable.

<u>**Section III – Installation Requirements**</u>

1. **MATERIALS AND EQUIPMENT**
   a. Unloading and Storage:
      1. Supplier shall be responsible for receiving, unloading, storage, retrieval and setting of all equipment materials furnished by Supplier (including all Equipment of Purchaser or End User) in connection with the Installation Work (the "Work"). Supplier shall submit written rigging plans to Purchaser for approval <u>3 days prior to commencement of rigging.</u> Supplier shall provide proper rigging of all lifts to avoid **potential injuries to person and damage to equipment, materials and property.**

      2. Supplier shall be aware of impending material and equipment deliveries, and shall have available sufficient personnel and equipment necessary to unload and properly store these items. Supplier shall be aware of storage restrictions and the available access to areas of the job site. Supplier shall properly coordinate delivery of materials and equipment.

      3. Supplier shall properly store all equipment and materials, whether Supplier, Purchaser or End User furnished, to prevent all possibility of damage, both internal and external, including spillage and leakage. Supplier shall, if necessary, reinforce all shipping packaging at the job site with sheet metal, plywood, waterproof fabrics, or other material to adequately protect equipment. Supplier shall protect finished surfaces from damages at all times. Supplier shall be liable for any damage to equipment or components in its care.

   b. Contract Price Adjustment (Quotation dated January 19th, 2021):
      1. Quotation is based on setting two (2) Uni-Tanks per day (12 tanks = 6 days).

      2. If Uni-Tanks are delayed beyond SRE control each additional day will be charged at a rate of $11,920.00 per day, capped at two (2) days ($23,840), at which point further discussions between parties will be required. Note that if Purchaser calls off the day prior, then there will be no standing charges incurred. However, if Briggs calls off the day of, then Purchaser will be charged for a half day (4 hours) on the basis of the crew size at site. Note that should the day be called off due to either scenario, there will no charges for equipment.

      3. Similarly, if tanks are provided at a rate of more than 2 per day, each day less than 6 days will incur a deduction of $11,920.00 per day from the overall price with a maximum deduction of 3 days ($35,760).

   c. Contract Price Adjustment (Quotation dated February 8th, 2021):
      1. Quotation is based on five (5) unloading days and five (5) reloading days at two (2) Uni-Tanks per day. It also includes for fourteen (14) off days in-between.

      2. If Uni-Tanks are delayed beyond SRE control each additional off day will be charged at a rate of $ 300.00, capped at fourteen (14) days ($4,200), not including weekends, at which point further discussions between parties will be required.

**EQUIPMENT INSTALLATION CONTRACT – PO13238 & PO13316 & PO13325**

3.   If reloading occurs at a rate of more than two (2) Uni-Tanks per day, each day less than five (5) days will incur a deduction of $6,250.00 per day from the overall price with a maximum deduction of two (2) days ($12,500).

4.   Pricing is on the basis of Straight time, weekdays (Mon-Fri) only, between the hours of 6:30am and 3:30pm. Any time outside of these parameters will be charged overtime as per the Supplier Rate Book dated as of July 2019.

## 2.   PROTECTION OF LIFE, WORK AND PROPERTY

a.   Supplier shall maintain at all times, as required by the conditions and progress of the Work, all necessary safeguards for the protection of life, the Work, supplies, materials and equipment (including Equipment of Purchaser or End User) on the job site not yet incorporated in the Work, End User's property, and adjacent property. In addition, Supplier shall develop an EHS Program and observe all obligations thereunder, in accordance with Attachment E below. Supplier shall remain solely responsible for the safety of its employees and subcontractors at the job site.

b.   Supplier shall comply with all instructions of End User regarding safety rules, prevention of accidents, fires or elimination of any unsafe practice. Supplier shall ensure that each of its employees fully complies with all of End User's site orientation rules.

c.   Supplier shall post danger signs warning against the hazards created by such features of construction as protruding nails, hoists, well holes, elevator hatchways, scaffolding, window openings, stairways, falling materials and similar conditions. Supplier shall designate a responsible member of its organization on the Work, whose duty shall be the prevention of accidents. Supplier shall report to Purchaser the name and position of the person designated.

d.   Supplier shall provide protection and storage for all materials and equipment it provides, or which Purchaser or End User provides to Supplier. Supplier shall prevent stored items from contaminating surrounding areas, drainage systems, or sewer systems.

e.   In an emergency affecting the safety of life, Work, End User's property, or adjoining property, Supplier without special instruction or authorization from Purchaser, is permitted to act, at its discretion, to prevent such threatened injury or loss. Any compensation claimed by Supplier on account of emergency Work shall be determined by mutual agreement of Supplier and Purchaser.

f.   Supplier shall develop and maintain an up-to-date emergency action plan, taking into account fires, explosions, adverse weather, floods, and other potential emergencies. The procedures shall outline specific action to be taken to secure and protect persons and property, including the building materials, buildings, equipment and cranes.

g.   Neither Supplier, its employees, nor any of its subcontractors' or suppliers' employees shall bring on End User's property any laptop computers or other devices for connection to the End User's Local Area Network (LAN) unless such person first obtains written approval from End User's Representative to such connection. If End User's Representative approves the connection of the laptop or other device to End User's computer system, the person seeing such connection shall contact End User's Information Systems Department, which shall ensure the laptop or other device is compatible with End User's computer system, and provide final approval to (or, if necessary, reject) such connection. Supplier, its employees, subcontractors, and suppliers shall strictly comply with this procedure to prevent possible damage to Purchaser and End User's property, equipment and production schedule.

h.   Purchaser and End User shall at all times have access to the Work for the inspection or monitoring thereof wherever it is in preparation or progress, and Supplier shall provide proper facilities for such inspection or monitoring.

## 3.   SITE RULES

Supplier shall comply with the rules of End User's facility in which Supplier performs Work, including End User's site orientation rules for such facility. In addition to the specific site rules of the End User's facility, the following rules also apply:

a.   Ingress and egress from the job site shall be made only through designated security checkpoints (doors and gates). No one without the proper authorization and identification will be admitted through these points.

**EQUIPMENT INSTALLATION CONTRACT – PO13238 & PO13316 & PO13325**

b.   Unnecessary vehicles of Supplier shall not enter the job site.

c.   Designated employee parking lots may be used by Supplier and its visitors only when Supplier is working on the job site.

d.   On-site parking of allowed Supplier vehicles will be permitted only in designated area.  (Map will be provided if applicable.)

e.   Supplier's visitors shall not drive onto End User's property without prior written approval of End User.

f.   No personal property other than work clothes, lunch boxes, tool boxes and similar items of a personal nature may be brought on the job site.  All property being removed from the job site shall be subject to inspection. No property other than work clothes, lunch boxes, and similar items may be removed without proper authorization.

g.   Only authorized vehicles operated at safe speeds shall be permitted to enter the job site, including those areas specifically reserved for Supplier and its employees' vehicle parking.  All vehicles are subject to inspection upon entering and/or leaving the job site.  Proper written authorization shall be required to remove supplies, tools and equipment from the job site.  Any unauthorized vehicle parked on End User's premises in violation of this requirement may be physically removed by End User.

h.   Supplier shall confine its operations to limits allowed by law, ordinances, rules, regulations, permits or directions of End User and shall not unreasonably encumber the premises.

i.   Supplier shall not load or permit any part of any structure to be loaded with a weight that will endanger its safety.

j.   Supplier shall enforce End User's instructions regarding signs, advertisements, fires and smoking.

k.   Supplier shall furnish its own dunnage and weather protection, if required.

l.   Use of gas and diesel powered equipment is prohibited in operating areas.  Under extraordinary circumstances their use may be permitted under controlled conditions if approved by End User's Representative, in writing, in advance of their scheduled use.  Liquid propane gas and electronic equipment shall be used whenever possible.

m.   No operations or equipment of End User shall be taken out of service or put into services without approval of End User.  Any production interruptions require End User's prior written approval at least 10 working days before a shutdown, pursuant to a signed Disruption of Operations Authorization attached as Form #9.  Supplier shall supply all information End User requires to support of such form.

n.   Supplier's on-site fabrication area shall be designated by End User's Representative.  The fabrication area shall be in an area outside the main building, and Supplier shall surround such area with welding curtains along with the appropriate safety signs and equipment.  Fabrication areas including sand boxes, threading machines, and welding areas are not allowed in the main building unless authorized by End User's Representative via Hot Work Permits.

o.   Supplier shall close and secure, at the end of each working day, all exterior building openings, including doors, windows, roof openings and overhead doors.

p.   Supplier shall obtain written authorization from End User's Representative prior to performing any Work outside normal work hours as established for the facility.

4.   **PROHIBITED ACTS BY SUPPLIER'S EMPLOYEES**

a.   The following acts by employees of Supplier are prohibited:

1.   Loitering or being on the job site in excess of 30 minutes before or after assigned shifts;

2.   Possession or consumption of alcoholic beverages on the job site, regardless of the source (any person under the influence of any alcoholic beverage will not be permitted to work);

## EQUIPMENT INSTALLATION CONTRACT – PO13238 & PO13316 & PO13325

3. Gambling, including sale of chances;

4. Disorderly conduct, fighting, or horseplay and/or threatening, insulting, or abusing any person;

5. Willfully defacing or damaging equipment or other property regardless of ownership;

6. Violating End User's or Purchaser's or Supplier's substance abuse policies;

7. Distributing or posting literature, photographs or other printed materials

8. Soliciting or attempting to solicit or collect funds without End User's prior written permission;

9. Unauthorized possession of any of End User's property or products;

10. Possession of cameras, explosives, and/or firearms without End User's prior written approval;

11. Use of End User's telephones without proper authorization. Calls outside the facility, when permission is granted by End User, shall be by credit card or collect call;

12. Use of End User's tools, materials, or equipment, unless furnished in accordance with this Agreement;

13. Sale of food or beverages on job site, regardless of source (another employee or outside vendors);

14. Parking in End User's parking lots, except for those specifically set aside for contractors;

15. Posting of any Supplier signs without prior written approval of End User;

16. Tobacco chewing, eating, drinking and smoking in any part of the production and operating areas or facilities;

17. Use of End User's containers (cans, bottles, cartons or others) for any use other than their intended purpose;

18. Use of End User's restrooms, breakrooms, trucker's lounge, cafeteria and hospitality or recreation facilities. This includes the Hospitality Center during working hours when such Centers exist;

19. Blocking of railroad tracks, gates, roadways or otherwise interfering with normal production or construction operations by Supplier's vehicles or those of its employees.

b. Purchaser and/or End User may take any action it deems necessary to enforce the above rules, including arrest and/or eviction from the job site.

c. Supplier shall at all times enforce strict discipline and good order among its employees, and shall not employ on Work any unfit person or anyone not skilled in the work assigned.

5. **CLEANING UP**
Supplier shall at all times keep the premises free from accumulations of waste material or rubbish caused by its employees or the Work; at the completion of each days' Work, Supplier shall remove all its rubbish from and about the building, shall remove all its tools, unused scaffolding and surplus materials, and shall laves its work "broom clean" or its equivalent unless more exactly specified. If Supplier violates this provision, Purchaser may remove the rubbish and charge the cost of removal to Supplier.

**EQUIPMENT INSTALLATION CONTRACT – PO13238 & PO13316 & PO13325**

ATTACHMENT E
ENVIRONMENTAL, HEALTH AND SAFETY PROVISIONS

I. **GENERAL REQUIREMENTS**

    a.   Supplier shall establish a comprehensive written Environmental, Health and Safety ("EHS") Program for the protection of the environment, Supplier's personnel, its Subcontractors' personnel and all others present at the job site. Supplier's EHS Program shall establish procedures reasonably designed to ensure that Supplier meets the environmental, health and safety conditions stated herein. A copy of the EHS Program shall be provided to End User as required herein. The EHS Program shall comply with OSHA 29 CFR Part 1910, "General Industry Standards" and Part 1926, "Construction Regulations" and American National Standards Institute (ANSI) Standard A10.38. Supplier shall incorporate all of End User's job work rules and job safety practices into its EHS Program. Supplier shall give Purchaser and End User a copy of its EHS Program and shall provide to each of its employees a copy of Supplier's Safety rules. Supplier shall provide Purchaser and End User with written proof that each employee has received its Safety rules before the employee starts work on the Job site. Purchaser and End User reserve the right to comment on the proposed EHS Program. If Purchaser or End User has objections to an EHS Program, End User may delay the start of work pending resolution of the objections, and Supplier shall have no claim for damages or extra costs by reason of such delay; however, if End User advises Supplier that End User will review the EHS Program but fails to review and comment on such Program for more than 7 days, Supplier shall have a right to an extension of the time of performance.

    Objectives of the EHS Program include:

    1.   avoiding injuries to Supplier's subcontractors, Purchaser's and End User's employees; other workers at the site; and, the public;

    2.   maximizing productivity;

    3.   reducing construction interruption due to accidents;

    4.   maintaining a safe and healthful place to work; and

    5.   assuring compliance with regulatory requirements.

    Supplier shall furnish all instructors, training, direct supervision, testing, testing equipment, and enforcement necessary to implement Supplier's EHS Program.

    b.   In addition to the requirements of this Agreement, Supplier shall abide by all requirements of End User's "Supplier Safety Orientation" program. In the event that any requirements of this Agreement conflicts with the Supplier Safety Orientation document, Supplier shall abide by the more stringent of the requirements.

    c.   Supplier and its Subcontractors shall be responsible for the safety of their Work and their employees at the job site. Supplier shall:

    1.   Actively and adequately promote safe working performance on the part of its employees. Supplier and each subcontractor shall conduct its own EHS Program to best suites its particular needs.

    2.   Take into account Purchaser's and End User's employees as well as other contractors and subcontractors who employees and agents may be present on the job site performing work not included in this Contract. Supplier's EHS Program shall recognize and implement Supplier's duty to communicate and coordinate its Work with others to maximize the safety of all.

    3.   Report immediately in writing to Purchaser, by name, those employees discharged for safety rule infractions. The reason for the discharge shall be given. Supplier shall not allow any such discharged employee to return to any of the Purchaser's work without written authorization from Purchaser.

    4.   Maintain the "OSHA Record of Occupational Injuries and Illness," to classify injuries, and submit the results, with man-hours by Supplier and Subcontractor, to End User in a monthly Supplier consolidated injury report. Supplier shall post the OSHA 300 log beginning January 1 of the current year, and shall maintain such log through January 1 of each succeeding year. Supplier shall post the OSHA 300A log in accordance with 29 CFR 1904.

    5.   Inform all of its employees of the location and use of the nearest safety shower, eye bath and other emergency equipment such as respirators, fire extinguishers and spill response equipment.

## EQUIPMENT INSTALLATION CONTRACT – PO13238 & PO13316 & PO13325

**FORM #9**
**DISRUPTION OF OPERATIONS AUTHORIZATION**

LOCATION _____

CITY, STATE _____

OWNER'S PROJECT NO.: _____  D.O. NO.: _____

CONTRACT NO.: _____  DATE: _____

TO: _____
(Owner's Operations)

ATTN: _____
(Resident Construction Owner's Representative)

1.    DEPARTMENT AFFECTED: _____

2.    OPERATIONS AFFECTED: _____

3.    TIMES:  FROM: _____ AM/PM  TO: _____ AM/PM

Item Description:

Distribution:

(INTEGRATOR) PROJECT MANAGER    _____

OWNER'S PROJECT MANAGER    _____

OWNER'S FACILITY MANAGER    _____

OWNER'S BREWMASTER    _____

OWNER'S RESIDENT OWNER'S REPRESENTATIVE    _____

OWNER'S FACILITY SECURITY    _____

FIELD OFFICE CENTRAL FILE    _____
(Owner's Representative)

EMERGENCY CONTACT:

OWNER: _____    _____    _____
            Name                              Phone              Radio

INTEGRATOR: _____    _____    _____
                      Name                         Phone              Radio

# EXHIBIT B

**Ticket No** 2087
**Job** ATR-679
**Date** Wednesday, October 13, 2021
**PO #** 13238
**(Required)**

**Customer** BRI0009

Briggs Of Burton Inc

1163 Pittsford-Victor Rd Suite 220

Pittsford, NY 14534

Phone (585) 426-2460

Terms: NET 15

**Job Site** ABI Cartersville

100 Busch Dr NE

Cartersville, GA, 30212

Ordered By Chris Wilson                 CP: (585) 472-9393
E-Mail chris.wilson@briggsplc.com   WP: (585) 472-9393
Report To: Chris Wilson               CP: (585) 472-9393
E-Mail chris.wilson@briggsplc.com   WP: (585) 472-9393
Phone (585) 472-9393

euser- Busch:

**Lift Info**

| | | | |
|---|---|---|---|
| Set up Distance | 65 | Up | 65 |

In 65   Total Lift Radius 65

Heaviest Pick 55,000

Equip Req: 12500 fork lift with boom

Comments  See Vista Write Up

Directions  Take I-75 north to Cassville-White Rd exit turn right, then make first right onto Busch Dr NE. Contractor entrance is at the end of that road.

Description:  See Vista Write Up Job #2110715

**Units**

| Sched Type | Unit Type | Unit Code | Comments |
|---|---|---|---|

**Labor**

| Employee Type | Employee | Comments |
|---|---|---|
| Foreman | Shelton, James Lee | |
| Rigger | Dunn, Christopher J | |
| Rigger | Fountain, Troy | |

Have Signed At
Start of Job

The following terms and conditions governing this rental are understood and agreed to :

Customer's Name:   Chris Wilson / Briggs Of Burton Inc

Date  10/13/2021  1:22 PM                     By

Authorized Signature

**Ticket No** **2087**
**Job** **ATR-679**
**Date** **Wednesday, October 13, 2021**
**PO #** **13238**
**(Required)**

Time Left Yard   9:04 AM

Time Left Job   1:36 PM

Time Arrived Job   9:04 AM

Time Arrived Yard   5:25 PM

Have Signed At End of Day

The above hours are verified to be correct.

Customer's Name   Chris Wilson / Briggs Of Burton Inc

Date   10/13/2021  1:23 PM

By

Authorized Signature

LEM
Comments

## Terms and Conditions :

Superior Rigging & Erecting Co. Inc. (Superior) agrees to perform the lifting operation, requested by Customer, subject to the following:

**1. Control, Supervision and Operation of Equipment, Operators and/or Crew:** Customer agrees that the Equipment and all persons operating or maintaining such Equipment, including **Superior's** employees, agents or independent contractors, are under Customer's exclusive jurisdiction, possession, supervision, and control. Customer is responsible for providing a competent and experienced site supervisor and lift director to oversee job site and lifting operations as set forth in ASME/ANSI 30.5-3.1.3 ET. SEQ. (AMENDED 2007). Customer is responsible for providing overall job site safety. Customer is responsible for providing **Superior** accurate load weights and accepts all liability resulting from its failure to do so. Customer assumes responsibility, control of, and supervision for rigging, hooking and unhooking loads. Customer agrees to provide competent and qualified signal persons to direct **Superior's** equipment operators. **Superior's** work does not include rigging, signaling, hooking or unhooking the loads (except where and to the extent **Superior's** employees or designated subcontractors are used as agreed in writing by the parties hereto). Customer is responsible to ensure the Equipment shall be operated in a safe and lawful manner at all times, and in accordance with the manufacturer's operator's manual, OSHA, MSHA and ANSI Standards including, but not limited to, the Standard Crane and Derrick Signals in accordance with ASME/ANSI B30.5-3.3 (amended 2007). The operation of the Equipment shall not exceed the manufacturer's safety requirements and rated load capacities. If the Equipment is a crane, it is to be used as a lift crane ONLY. Demolition, dynamic compaction, pile driving, and clamming work require additional documentation and equipment authorized only by **Superior**. If Equipment is furnished with an operator, the services of such operator will be performed under the complete direction and control of customer and operator shall be considered Customer's employee for all purposes other than the payment of wages, worker's compensation, and their benefits.

**2. Compliance with Laws and Standards:** The Customer shall comply with and conform to all applicable laws, regulations, ordinances, rules and orders of any governmental entity including but not limited to OSHA laws and regulations and shall comply with all applicable ANSI Standards. Customer shall indemnify, defend and save **Superior** harmless against actual or asserted violations thereof while the equipment is under the Customer's possession, control and supervision.

**3. Title:** Any Equipment used to perform the lifting operation shall remain the property of **Superior** at all times. The Customer shall keep the Equipment free from any and all liens, encumbrances and claims whatsoever, and shall not perform or permit any act that may encumber or impair **Superior's** title or rights in the Equipment. Upon **Superior's** request, Customer shall promptly execute and /or deliver to **Superior** all documentation (such as estoppel certificates or a landlord waiver), as **Superior** deems necessary or appropriate for the preservation, perfection or enforcement of **Superior's** interests in the Equipment and **Superior's** rights under this Agreement, and if Customer fails to do so, **Superior** may execute such documents on Customer's behalf and in Customer's name.

**4. Indemnification:** TO THE FULLEST EXTENT ALLOWED BY APPLICABLE LAW, CUSTOMER SHALL DEFEND, INDEMNIFY, AND HOLD HARMLESS SUPERIOR, IT'S OFFICERS, DIRECTORS, SHAREHOLDERS, PARTNERS, MEMBERS, MANAGERS, EMPLOYEES, AFFILIATES, REPRESENTATIVES AND AGENTS ("INDEMNITEES") FROM ANY AND ALL ACTIONS, CAUSES OF ACTION, CLAIMS, SUITS, DEMANDS, INVESTIGATIONS, OBLIGATIONS, JUDGMENTS, LOSSES, COSTS, LIABILITIES, DAMAGES, FINES, PENALTIES AND EXPENSES, INCLUDING ATTORNEY FEES, WHICH ARE INCURRED BY, ACCRUED, ASSERTED, OR MADE AGAINST, OR RECOVERABLE FROM ANY OF THE INDEMNITEES ARISING FROM OR RELATING TO, DIRECTLY OR INDIRECTLY, CUSTOMER'S ACCEPTANCE, POSSESSION, TRANSPORT, USE, OPERATION, OR CONTROL OF THE EQUIPMENT, WHETHER OR NOT THE SAME ARISES FROM DAMAGE TO PROPERTY (REAL OR PERSONAL), INJURY OR DEATH TO PERSONS INCLUDING BUT NOT LIMITED TO CUSTOMER'S EMPLOYEES, AGENTS AND REPRESENTATIVES, FAILURE TO COMPLY WITH APPLICABLE LAWS, REGULATIONS AND ORDINANCES, EQUIPMENT, CONDITION OR LOSS OF USE OR SEIZURE OF EQUIPMENT, CUSTOMER EXPRESSLY AGREES TO WAIVE ANY WORKER'S COMPEN-SATION IMMUNITY IT MAY OTHERWISE HAVE. THE DUTY OF DEFEND, INDEMNIFY AND HOLD HARMLESS INDEMNITEES EXISTS WHETHER OR NOT THE UNDERLYING CLAIM OR LOSS IS BASED IN WHOLE OR IN PART UPON THE ACTIVE, PASSIVE OR CONCURRENT NEGLIGENCE OF INDEMNITEES. CUSTOMER'S OBLIGATION TO DEFEND, INDEMNIFY AND HOLD HARMLESS THE INDEMNITEES SHALL SURVIVE THE TERMINATION OF THIS SERVICE AGREEMENT. IT IS EXPRESSLY AGREED THAT THIS INDEMNIFICATION CLAUSE APPLIES TO BOTH THIRD-PARTY CLAIMS AND ALL CLAIMS BETWEEN SUPERIOR AND CUSTOMER. IN JURISDICTIONS IN WHICH THE INDEMNIFICAITON PROVIDED FOR IN THIS SECTION IS BROADER THAN THAT ALLOWED BY APPLICABLE LAW, THIS SECTION SHALL BE INTERPRETED AS PROVIDING THE BROADEST INDEMNIFICATION PERMITTED AND SHALL BE LIMITED ONLY TO THE EXTENT NECESSARY TO COMPLY WITH SAID LAW.

**5. Payment Adjustments:** Payments under this service agreement shall be subject to adjustment for excess hours of operator and/or crew time and /or excess hours of usage of the Equipment in accordance with the rates agreed to at the time of the order, custom in the area where the lifting operation occurs, or by any applicable collective bargaining agreement, as the case may be. Customer shall not be entitled to any abatement, deduc-tion, set-off, counterclaim, recoupment or defense against payment for any reason. SUPERIOR SHALL NOT BE LIABLE FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES RELATING TO THE SERVICE AGREEMENT.

**6. Payment:** All payments required hereunder shall be due in full upon billing. In addition to the rates shown on the face of this service agreement, the customer shall pay the following arising in connection with the service agreement:

a) All demurrage, storage, switching, and drayage.

b) All taxes, levies, assessments, fees and other public charges assessed as a result of this service agreement, including tangible personal property taxes if applicable.

c) All Judgments, awards, fines, penalties, forfeitures, court costs, expenses, attorneys' fees (unless prohibited by law) incurred by **Superior** in accordance with item 4 above.

| | |
|---|---|
| **Ticket No** | **2087** |
| **Job** | **ATR-679** |
| **Date** | **Wednesday, October 13, 2021** |
| **PO #** | **13238** |
| **(Required)** | |

d) **Superior's** costs and expenses, including reasonable attorney's fees (unless prohibited by law), incurred in enforcing this agreement and/or collecting any amounts due hereunder.

e) In the event of an accident resulting in damage to the Equipment arising from the acts, omissions, misfeasance or malfeasance of Customer, including, but not limited to Customer's employees, agents, represen-tatives, subcontractors or independent contractors. Customer shall be responsible for costs of repairs and related expenses, all consequential damages including, but not limited to, loss of use of the equipment, loss of profits due to downtime and all reasonable attorney fees incurred in recovering such damages.

**Any payments more than <u>30</u> days past due hereunder shall bear interest at the rate of <u>1.5%</u> per month <u>(or the maximum amount allowed by law whichever is higher).</u>**

**7. Default:** Time is of the essence with respect to Customer's performance of its obligations under this Agreement. If Customer fails to pay when due any payment or other amount required herein to be paid by Customer, or if Customer makes an assignment for the benefit of creditors, whether voluntary or involuntary, or if a petition is filed by or against Customer under the bankruptcy laws of the United States, or if Customer fails to observe or perform any other covenant or requirement of this Agreement, which failure is not cured to **Superior's** satisfaction within five (5) days after **Superior's** notice to Customer thereof; in addition to other remedies Superior may exercise to protect its interest, **CUSTOMER AGREEES THAT SUPERIOR MAY TAKE POSSESSION OF ANY OR ALL ITEMS OF EQUIPMENT, WHEREVER THESE ITEMS MAY BE LOCATED, WITH-OUT DEMAND OR NOTICE, WITHOUT ANY COURT ORDER OR OTHER PROCESS OF LAW, AND WITHOUT LIABILITY TO CUSTOMER FOR ANY DAMAGES OCCASIONED BY SUCH TAKINGS OR POSSESSION.**

**8. Notice:** Customer shall immediately notify **Superior** of any event or occurrence involving personal injury and/or property damage of any kind relating to **Superior** personnel or Equipment. Customer shall immediately deliver to **Superior** any summons, pleading, notice or paper of any kind involving any claim, suit or proceeding relating to any event or occurrence involving **Superior** personnel or Equipment. Customer shall not aid or abet the assertion of any such claim, suit or proceeding, and shall fully cooperate with **Superior** in investigating and defending the same.

**9. Access & Site Conditions:** Customer shall provide **Superior** with proper ingress to and egress from the job site and provide protection of all paving, curbs, real estate, structures and/or improvements and Customer shall be responsible for all damage to any paving, curbs, real estate, structures and/or improvements caused by Customer's failure to provide proper ingress and egress. Customer is responsible for providing an operating area that is suitable for operation of the Equipment with respect to levelness, surface conditions, and support capability, proximity to power lines, excavations, slopes, underground utilities, subsurface conditions, and obstructions to equipment operations. **Superior** shall have immediate access to and right to the Customer's facility or property. Customer shall perform or have performed all necessary inspections or testing to determine the nature of the ground or soil and its ability to support the crane while in operation or otherwise. If the ground or soil condition is such that it cannot support the crane, Customer shall take all necessary measures to insure that these conditions are remedied prior to the crane being placed on that ground or soil. These measures include, but are not limited to, the provision of proper shoring or cribbing or other measures.

**10. Jury Waiver: <u>UNLESS PROHIBITED BY LAW, SUPERIOR AND CUSTOMER EACH KNOWINGLY, UNCONDITIONALLY, AND IRREVOCABLY WAIVE TRIAL BY JURY WITH RESPECT TO ANY ACTION, CLAIM, SUIT OR PROCEEDING, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE, IN RESPECT OF, ARISING OUT OF, RELATED TO, OR INCIDENTAL TO THE RELAITONSHIP ESTABLISHED BETWEEN THEM (OR AS TO ANY THIRD PARTIES) IN CONNECTION WITH THIS AGREEMENT ANY OTHER DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR THE PARTIES' CONDUCT.</u>**

**11. ASSIGNMENT OF TRANSFER:** This is a personal service agreement that neither **Superior** nor Customer may assign or transfer to a third party without the combined prior written consent of both parties hereto (which consent may be withheld for any reason). Any such consent shall not release Customer from any obligations under this agreement.

**12. Lifting, Lugs, Rigging and Apparatus:** Customer assumes all responsibility and liability to ensure the adequacy of the design and strength of any lifting lug or device embedded in or attached to any object, and of any and all rigging or lifting apparatus failures or defects (even if such rigging or lifting apparatus is supplied by **Superior** to the Customer).

**13. SDS Requirements:** Customer shall provide **Superior**, upon delivery of the Equipment to the job location, copies of safety data sheets (SDS) for all hazardous chemicals in use at said job location, or make such SDS available at a central location at the job site, in order that **Superior** may comply with the requirements of all applicable local, state and Federal laws and regulations, including but not limited to, OSHA regulations regarding hazardous materials. Furthermore, Customer shall inform **Superior** of all precautionary measures that need to be taken to protect the operators and/or crew or other personnel during normal operating conditions and in foreseeable emergencies.

**14. No Warranties: <u>SUPERIOR EXPRESSLY DISCLAIMS ANY AND ALL EXPRESS AND IMPLIED WARRANTIES AS TO THE EQUIPMENT, INCLUDING ANY WARRANTY OF MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE, SUPERIOR SHALL NOT BE LIABLE FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES RELATING TO THE POSSESSION, TRANSPORT, USE, OPERATION, CONTROL, MAINTENANCE AND/OR REPAIR OF THE EQUIPMENT, OR ANY LOSS, DAMAGE OR INJURY RESULTING THEREFROM.</u>**

**15. Full Agreement: Governing Law; Waiver; Severability:** This service agreement constitutes the full agreement between **Superior** and Customer. Any changes to this agreement must be in writing signed by **Superior** and Customer. No conduct by either party to this agreement shall be deemed a modification of this agreement. This agreement shall be binding upon and inure to the benefit of the parties hereto and their respec-tive successors and permissible assigns. The laws of the state of the jobsite location shall govern this agreement. Headings are provided for convenience only, and not for interpretation of this agreement. **Superior** and Customer are independent contractors of each other and Customer shall not be deemed to be the agent, servant or employee of **Superior** for any reason or purpose. No failure of **Superior** to enforce performance of any terms or covenants, or failure to exercise or delay in exercising any right under this agreement shall operate as a waiver thereof; nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right. If any provision of this agreement is held to be invalid or illegal by a court of competent jurisdiction, the invalid or illegal term will be deemed excluded from this agreement and will not invalidate the remaining terms of this agreement.

# EXHIBIT C



# SUPERIOR RIGGING & ERECTING COMPANY

3250 WOODSTOCK ROAD  •  ATLANTA, GEORGIA 30316  •  PHONE (404) 627-1335

11244 BOGGY CREEK ROAD  •  ORLANDO, FLORIDA 32824  •  PHONE (407) 730-8886

**Bill To:** BRIGGS OF BURTON INC
BINCACCOUNTS@BRIGGSPLC.COM
,

| | |
|---|---|
| Invoice Number: | 43783 |
| Invoice Date: | 07/30/2021 |
| Invoice Due: | 08/29/2021 |
| Job Number: | 2110715- |
| Terms: | 90 |
| P.O. Number: | 13238 |

**Project:** Budweiser Craft and Draft
100 Busch Dr NE

Cartersville, GA  30120

**Date:** CHANGE ORDER 5 EXTRA WORK ERECTING PLATFORM
IN BUILDING 6A
EXTRA WORK CUTTING HANDRAILS AND MAKING
MODIFICATIONS IN ORDER TO SET TANKS

| Description | Quanity | Rate | Total |
|---|---|---|---|
| RIGGER | 56.00 | 90.00 | 5,040.00 |
| RIGGER OT | 18.00 | 120.00 | 2,160.00 |
| RIGGING FOREMAN ST | 28.00 | 95.00 | 2,660.00 |
| RIGGING FOREMAN OT | 6.00 | 125.00 | 750.00 |
| EQUIPMENT DELIVERY | 4.00 | 550.00 | 2,200.00 |
| 8T CARRY DECK CRANE ST | 20.00 | 155.00 | 3,100.00 |
| 8T CARRY DECK CRANE OT | 6.00 | 185.00 | 1,110.00 |
| FUEL SURCHARGE | 0.05 | 10,790.00 | 539.50 |
| | | **Subtotal** | 17,559.50 |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*  \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
**TOTAL AMOUNT DUE          17559.50**
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*  \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Please remit payment to:**

**Superior Rigging & Erecting Co.**
**PO Box 17565**
**Atlanta, GA 30316**

# EXHIBIT D



# SUPERIOR RIGGING & ERECTING COMPANY

3250 WOODSTOCK ROAD   •   ATLANTA, GEORGIA 30316   •   PHONE (404) 627-1335

11244 BOGGY CREEK ROAD   •   ORLANDO, FLORIDA 32824   •   PHONE (407) 730-8886

| | | |
|---|---|---|
| **Bill To:** | BRIGGS OF BURTON INC | |
| | BINCACCOUNTS@BRIGGSPLC.COM | |
| | , | |

| | |
|---|---|
| Invoice Number: | 43784 |
| Invoice Date: | 07/30/2021 |
| Invoice Due: | 08/29/2021 |
| Job Number: | 2110715- |
| Terms: | 90 |
| P.O. Number: | 13238 |

**Project:**  Budweiser Craft and Draft
100 Busch Dr NE

Cartersville, GA  30120

**Date:**  CHANGE ORDER REQUEST 4
EXTRA WORK ERECTING PLATFORM IN BUILDING 6

| Description | Quanity | Rate | Total |
|---|---|---|---|
| RIGGER ST | 28.00 | 90.00 | 2,520.00 |
| RIGGING FOREMAN ST | 14.00 | 95.00 | 1,330.00 |
| MISC TOOL | 0.10 | 6,050.00 | 605.00 |
| | | **Subtotal** | 4,455.00 |

*******************************  ******************************

**TOTAL AMOUNT DUE**          **4455.00**

*******************************  ******************************

**Please remit payment to:**

**Superior Rigging & Erecting Co.**
**PO Box 17565**
**Atlanta, GA 30316**

# EXHIBIT E



# SUPERIOR RIGGING & ERECTING COMPANY

3250 WOODSTOCK ROAD • ATLANTA, GEORGIA 30316 • PHONE (404) 627-1335

11244 BOGGY CREEK ROAD • ORLANDO, FLORIDA 32824 • PHONE (407) 730-8886

**Bill To:** BRIGGS OF BURTON INC
BINCACCOUNTS@BRIGGSPLC.COM
,

|  |  |
|---|---|
| Invoice Number: | 43785 |
| Invoice Date: | 07/30/2021 |
| Invoice Due: | 08/29/2021 |
| Job Number: | 2110715- |
| Terms: | 90 |
| P.O. Number: | 13238 |

**Project:** Budweiser Craft and Draft
100 Busch Dr NE

Cartersville, GA  30120

**Date:** CHANGE ORDER REQUEST 3
EXTRA WORK DRILLING AND SETTING ANCHOR THAT DID
NOT LINE UP

| Description | Quanity | Rate | Total |
|---|---|---|---|
| RIGGER ST | 20.00 | 90.00 | 1,800.00 |
| TOOL CHARGE | 0.10 | 3,060.00 | 306.00 |
| MISC SUPPLIES (WASHERS) | 1.00 | 300.00 | 300.00 |
| SALES TAX | 1.00 | 21.00 | 21.00 |
| MATERIAL MARK UP | 0.15 | 300.00 | 45.00 |
|  |  | **Subtotal** | 2,451.00 |

```
******************************  ******************************
```
**TOTAL AMOUNT DUE        2451**
```
******************************  ******************************
```

**Please remit payment to:**

**Superior Rigging & Erecting Co.**
**PO Box 17565**
**Atlanta, GA 30316**

# EXHIBIT F

Case 1:22-cv-00902-JLH Document 697 Filed 02/03/23 Page 36 of 43



# SUPERIOR RIGGING & ERECTING COMPANY

| | | |
|---|---|---|
| | INVOICE NO: | 1197AT |
| 3250 WOODSTOCK ROAD . ATLANTA, GEORGIA 30316 . PHONE (404) 627-1335 | INVOICE DATE: | 9/24/2021 |
| 11244 BOGGY CREEK ROAD . ORLANDO, FLORIDA 32824 . PHONE (407) 730-8886 | PAYMENT DUE: | 10/19/2021 |

**BILL TO**
Briggs Of Burton Inc
1163 Pittsford-Victor Rd Suite 220
Pittsford, NY 14534
Payment Terms:  NET 15

**JOBSITE ADDRESS**
ABI Cartersville
100 Busch Dr NE
Cartersville, GA 30212
Ordrered By: Chris Wilson

**SUPERIOR INFORMATION**
Job Number: ATR-679
Sales Rep:  John Morgan
Phone: 4042958176
Email:  j.morgan@superiorrigging.com

**Customer PO No:** 13238

**Work Performed:**  See Vista Write Up Job #2110715

| Date | Description | Qty | UM | Rate | Amount |
|---|---|---|---|---|---|
| 6/5/2021 to 9/30/2021 | Rigger ST | 164.00 | Hour(s) | $ 90.00 | $14,760.00 |
| | Rigger OT | 43.50 | Hour(s) | $ 120.00 | $5,220.00 |
| | Foreman ST | 88.00 | Hour(s) | $ 95.00 | $8,360.00 |
| | Foreman OT | 24.00 | Hour(s) | $ 125.00 | $3,000.00 |
| | Misc. Tool Fee 10% HARDWARE | 1.00 | Total | $ 2,500.00 | $2,500.00 |
| | Misc. Tool Fee 10% SALES TAX ON HARDWARE | 1.00 | Total | $ 175.00 | $175.00 |
| | Misc. Tool Fee 10% MATERIAL MARK UP | 1.00 | Total | $ 375.00 | $375.00 |
| | 350T All Terrain Crane OT | 8.00 | Hour(s) | $ 660.00 | $5,280.00 |
| | Forklift: 8,000lb ST | 48.00 | Hour(s) | $ 140.00 | $6,720.00 |
| | Forklift: 8,000lb OT | 8.00 | Hour(s) | $ 170.00 | $1,360.00 |
| | Freight EQUIPMENT DELIVERY | 10.00 | Each Way | $ 550.00 | $5,500.00 |
| | Fuel Refill FUEL SURCHARGE | 1.00 | Total | $ 943.00 | $943.00 |
| | Misc. Tool Fee 10% TOOL CHARGE | 1.00 | Total | $ 3,134.00 | $3,134.00 |

## TOTAL AMOUNT DUE BY 10/19/2021:     $57,327.00

Payment Due no later than: 10/19/2021

*SINCE 1952, WE MAKE THE TOUGH LOOK EASY AND PROVIDE WALL TO WALL SOLUTIONS TO LIFT, MOVE, AND ELEVATE YOUR DREAMS.*

# SUPERIOR RIGGING & ERECTING COMPANY

3250 WOODSTOCK ROAD . ATLANTA, GEORGIA 30316 . PHONE (404) 627-1335

11244 BOGGY CREEK ROAD . ORLANDO, FLORIDA 32824 . PHONE (407) 730-8886

| | |
|---|---|
| INVOICE NO: | 1197AT |
| INVOICE DATE: | 9/24/2021 |
| PAYMENT DUE: | 10/19/2021 |

## *PLEASE REMIT PAYMENT TO:*

**Superior Rigging & Erecting Co.**
**P.O. Box 17565**
**Atlanta, Georgia 30316**
For billing inquiries, please e-mail AR@SuperiorRigging.com

Payment Due no later than: 10/19/2021

*SINCE 1952, WE MAKE THE TOUGH LOOK EASY AND PROVIDE WALL TO WALL SOLUTIONS TO LIFT, MOVE, AND ELEVATE YOUR DREAMS.*

# EXHIBIT G



# SUPERIOR RIGGING & ERECTING COMPANY

3250 WOODSTOCK ROAD . ATLANTA, GEORGIA 30316 . PHONE (404) 627-1335
11244 BOGGY CREEK ROAD . ORLANDO, FLORIDA 32824 . PHONE (407) 730-8886

| | |
|---|---|
| INVOICE NO.: | 1482AT |
| INVOICE DATE: | 10/29/2021 |
| PAYMENT DUE: | 11/13/2021 |

**BILL TO**
Briggs Of Burton Inc
1163 Pittsford-Victor Rd Suite 220
Pittsford, NY 14534
Payment Terms: NET 15

**JOBSITE ADDRESS**
ABI Cartersville
100 Busch Dr NE
Cartersville, GA 30212
Ordrered By: Chris Wilson

**SUPERIOR INFORMATION**
Job Number: ATR-679
Sales Rep: John Morgan
Phone: 4042958176
Email: j.morgan@superiorrigging.com

**Customer PO No:** 13238

**Work Performed:** See Vista Write Up Job #2110715

| Date | Description | Qty | UM | Rate | Amount |
|---|---|---|---|---|---|
| 10/13/2021 to 10/30/2021 | Foreman ST | 76.00 | Hour(s) | $ 100.00 | $7,600.00 |
| | Foreman OT | 38.00 | Hour(s) | $ 125.00 | $4,750.00 |
| | Rigger ST | 216.00 | Hour(s) | $ 85.00 | $18,360.00 |
| | Rigger OT | 101.00 | Hour(s) | $ 115.00 | $11,615.00 |
| | 350T All Terrain Crane ST | 72.00 | Hour(s) | $ 600.00 | $43,200.00 |
| | 350T All Terrain Crane OT | 38.00 | Hour(s) | $ 660.00 | $25,080.00 |
| | 110T All Terrain Crane ST | 8.00 | Hour(s) | $ 320.00 | $2,560.00 |
| | Misc. Tool Fee 10% | 1.00 | Total | $ 4,232.50 | $4,232.50 |
| 11/3/2021 | Freight | 4.00 | Each Way | $ 550.00 | $2,200.00 |
| | Forklift: 12,000lb ST | 40.00 | Hour(s) | $ 160.00 | $6,400.00 |

## TOTAL AMOUNT DUE BY 11/13/2021:     $125,997.50

### *PLEASE REMIT PAYMENT TO:*

**Superior Rigging & Erecting Co.**
**P.O. Box 17565**
**Atlanta, Georgia 30316**
For billing inquiries, please e-mail AR@SuperiorRigging.com

*SINCE 1952, WE MAKE THE TOUGH LOOK EASY AND PROVIDE WALL TO WALL SOLUTIONS TO LIFT, MOVE, AND ELEVATE YOUR DREAMS.*

# EXHIBIT H



# SUPERIOR RIGGING & ERECTING COMPANY

3250 WOODSTOCK ROAD  .  ATLANTA, GEORGIA 30316  .   PHONE (404) 627-1335

11244 BOGGY CREEK ROAD . ORLANDO, FLORIDA 32824 . PHONE (407) 730-8886

| | |
|---|---|
| INVOICE NO: | 2267AT |
| INVOICE DATE: | 2/28/2022 |
| PAYMENT DUE: | 3/15/2022 |

| BILL TO | JOBSITE ADDRESS | SUPERIOR INFORMATION |
|---|---|---|
| Briggs Of Burton Inc | ABI Cartersville | Job Number: ATRG1000555 |
| 1163 Pittsford-Victor Rd Suite 220 | 100 Busch Dr NE | Sales Rep:  Dalton Wade |
| Pittsford, NY 14534 | Cartersville, GA 30212 | Phone: 6783324975 |
| Payment Terms:  NET 15 | Ordrered By: Chris Wilson | Email:  d.wade@superiorrigging.com |

Customer PO No:  ..

Work Performed:   SRE riggers and equipment to mobilize to AB in Cartersville.

Install two step over platforms using SRE equipment and crane.

All stainless steel welding excluded.

| Date | Description | Qty | UM | Rate | Amount |
|---|---|---|---|---|---|
| 2/23/2022 | Foreman ST | 64.00 | Hour(s) | $ 100.00 | $6,400.00 |
| | Rigger ST | 120.00 | Hour(s) | $ 85.00 | $10,200.00 |
| | 18T Carry Deck Crane ST | 56.00 | Hour(s) | $ 160.00 | $8,960.00 |
| | Misc. Tool Fee 10% | 1.00 | | $ 1,500.00 | $1,500.00 |
| | 9% Fuel Surcharge | | | 6.00% | $1,533.60 |

## TOTAL AMOUNT DUE BY 3/15/2022:          $28,593.60

### *PLEASE REMIT PAYMENT TO:*

**Superior Rigging & Erecting Co.**

**P.O. Box 17565**

**Atlanta, Georgia 30316**

For billing inquiries, please e-mail AR@SuperiorRigging.com

*SINCE 1952, WE MAKE THE TOUGH LOOK EASY AND PROVIDE WALL TO WALL SOLUTIONS TO LIFT, MOVE, AND ELEVATE YOUR DREAMS.*

# EXHIBIT I



# SUPERIOR RIGGING & ERECTING COMPANY

3250 WOODSTOCK ROAD . ATLANTA, GEORGIA 30316 . PHONE (404) 627-1335

11244 BOGGY CREEK ROAD . ORLANDO, FLORIDA 32824 . PHONE (407) 730-8886

| | |
|---|---|
| INVOICE NO: | 2401AT |
| INVOICE DATE: | 3/31/2022 |
| PAYMENT DUE: | 4/15/2022 |

**BILL TO**
Briggs Of Burton Inc
1163 Pittsford-Victor Rd Suite 220
Pittsford, NY 14534
Payment Terms:  NET 15

**JOBSITE ADDRESS**
ABI Cartersville
100 Busch Dr NE
Cartersville, GA 30212
Ordrered By: Chris Wilson

**SUPERIOR INFORMATION**
Job Number: ATRG1000555
Sales Rep:  Dalton Wade
Phone: 6783324975
Email:  d.wade@superiorrigging.com

**Customer PO No:**

**Work Performed:**  SRE riggers and equipment to mobilize to AB in Cartersville.

Install two step over platforms using SRE equipment and crane.

All stainless steel welding excluded.

| Date | Description | Qty | UM | Rate | Amount |
|---|---|---|---|---|---|
| 3/21/2022 to 3/28/2022 | Foreman ST | 34.00 | Hour(s) | $ 100.00 | $3,400.00 |
| | Foreman OT | 2.50 | Hour(s) | $ 125.00 | $312.50 |
| | Rigger ST | 34.00 | Hour(s) | $ 85.00 | $2,890.00 |
| | Rigger OT | 2.50 | Hour(s) | $ 115.00 | $287.50 |
| | Forklift: 12,000lb ST | 34.00 | Hour(s) | $ 160.00 | $5,440.00 |
| | Forklift: 12,000lb OT | 0.50 | Hour(s) | $ 190.00 | $95.00 |
| | Manlift | 8.00 | Hour(s) | $ 160.00 | $1,280.00 |
| | Fuel Surcharge % | | | 9.00% | $1,233.45 |

## TOTAL AMOUNT DUE BY 4/15/2022:     $14,938.45

### *PLEASE REMIT PAYMENT TO:*

**Superior Rigging & Erecting Co.**
**P.O. Box 17565**
**Atlanta, Georgia 30316**
For billing inquiries, please e-mail AR@SuperiorRigging.com

*SINCE 1952, WE MAKE THE TOUGH LOOK EASY AND PROVIDE WALL TO WALL SOLUTIONS TO LIFT, MOVE, AND ELEVATE YOUR DREAMS.*