## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### Atlanta Division

_____

| | |
|---|---|
| MAXIM HEALTHCARE STAFFING SERVICES, INC., | ) |
| | ) |
| | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) Case No. |
| v. | ) |
| | ) _____ |
| SNAPNURSE, INC. AND JAMIE BARBER, | ) |
| | ) |
| *Defendants.* | ) |
| | ) |

_____

| | |
|---|---|
| MAXIM HEALTHCARE STAFFING SERVICES, INC., | ) |
| | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) Underlying Action in the U.S. |
| v. | ) District Court for the District |
| | ) of Maryland |
| JEROME CHARLES, | ) |
| | ) Case No. No. 8:23-cv-00115- |
| *Defendant.* | ) PX |

_____

### PLAINTIFF MAXIM HEALTHCARE STAFFING SERVICES, INC.'S EMERGENCY MOTION TO COMPEL FED. R. CIV. P. 45 SUBPOENA COMPLIANCE AND HOLD SNAPNURSE, INC. AND JAMIE BARBER IN CONTEMPT AND MEMORANDUM IN SUPPORT

Pursuant to Federal Rule of Civil Procedure 45 and Local Rules 7 and 37, Plaintiff Maxim Healthcare Staffing Services, Inc. ("Maxim") moves the Court to enter an Order granting Maxim's (1) Motion to Compel the production of documents pursuant to an effectively unopposed Fed. R. Civ. P. 45 subpoena duces tecum against SnapNurse, Inc. ("SnapNurse") and (2) Motion to hold SnapNurse and SnapNurse employee Jamie Barber in contempt for refusing to appear at subpoenaed depositions, order them to appear for depositions on March 27 and March 28, 2023, and award Maxim its costs and attorneys' fees incurred in connection with this motion.  Maxim further requests an immediate hearing on this matter pursuant to Local Rule 7.2 so that the depositions of SnapNurse and Barber can be completed before the March 31, 2023 preliminary injunction hearing in *Maxim Healthcare Staffing Services, Inc. v. Jerome Charles*, No. 8:23-cv-00115-PX (D.Md.), the underlying Maryland District Court proceeding for which the subpoenas to SnapNurse and Barber were served.

## I.     FACTUAL BACKGROUND

1.     Maxim is an industry leader in the highly competitive business of recruiting and staffing medical personnel on a temporary or permanent basis to healthcare facilities across the nation.

2.     Maxim hired Defendant Jerome Charles ("Charles"), a Maryland resident, as a Healthcare Recruiter in its Virginia Beach, Virginia office, in January 2016.   And, in May 2017, Maxim promoted Charles to Business Development Manager for its Northern Virginia territory.

3.     In both positions, Charles entered into a legally enforceable, written Employment Agreement with Maxim.   Charles stipulated that the restrictions in the Employment Agreements, including the post-employment restrictions, were reasonable and necessary to preserve Maxim's legitimate and protectable interest in, among other things, its trade secrets, confidential information, and goodwill with customers and employees.

4.     In October 2022, Charles announced his resignation from employment with Maxim.   Less than a month later, Maxim learned that Charles had started employment with SnapNurse as Vice President of Business Development in the Virginia market.   SnapNurse is headquartered in the Atlanta, Georgia metro area.

5.     Maxim and SnapNurse are direct competitors in the recruiting and staffing of medical personnel on a temporary or permanent basis for medical and healthcare facilities around the nation.

6.     On December 16, 2022, Maxim sent Charles a letter, reminding him of the post-employment obligations contained in his Employment Agreements.   Maxim

also sent SnapNurse a letter the same day, describing Charles's post-employment obligations to Maxim.

7.    On December 30, 2022, SnapNurse's counsel, Joseph Shelton ("Shelton"), responded on behalf of SnapNurse and Charles to Maxim's letter.  In the letter, SnapNurse said: "Charles confirmed to SnapNurse that he does not possess any confidential, proprietary, or trade secret information belonging to Maxim."

8.    Contrary to SnapNurse's representation, Maxim discovered that Charles accessed Maxim's password-protected intranet, downloaded Maxim's confidential and proprietary information without permission or authorization and beyond the scope of his employment, and sent over 90 attachments, containing Maxim's confidential and trade secret information, to his personal email account.

9.    On or about January 9, 2023, Maxim requested SnapNurse preserve all electronic data, including data on Charles' laptop.

10.    On January 12, 2023, SnapNurse affirmed that Charles misappropriated Maxim's confidential information and trade secrets, indicated it did not know the extent of disclosure of Maxim's information and documents within SnapNurse by Charles, and could not confirm, as of that date, that Maxim's information and documents were brought over to SnapNurse by Charles.  Maxim further could not confirm, as of that date, that Maxim's confidential information and trade secrets

were not uploaded to SnapNurse's network.

11.     On January 12, 2023, SnapNurse terminated Charles' employment as Vice President of Business Development.

12.     On January 17, 2023, Maxim filed its Verified Complaint against Charles in the United States District Court, District of Maryland, asserting six claims: (i) Misappropriation of Trade Secrets in violation of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1832 *et seq* ("DTSA")*,* (ii) Misappropriation of Trade Secrets in Violation of the Maryland Uniform Trade Secrets Act, Md. Code Ann., Com. Law § 11-1201 *eq seq. (*"MUTSA"), (iii) Misappropriation of Trade Secrets in violation of the Virginia Uniform Trade Secrets Act, Va. Code § 59.1-336 ("VUTSA"), (iv) Breach of Contract, (v) Breach of Fiduciary Duty, and (vi) Conversion.  *See* Verified Complaint, attached as **Exhibit A**.  The case caption is *Maxim Healthcare Staffing Services, Inc. v. Jerome Charles*, No. 8:23-cv-00115-PX (D.Md.).

13.     Maxim also filed a Motion for Ex Parte Temporary Restraining Order ("TRO") and Preliminary Injunction and a Motion for Expedited Discovery.  *See* Maxim's Motion for TRO, attached as **Exhibit B**; *see also* Maxim's Motion for Expedited Discovery, attached as **Exhibit C**.

14.     On January 24, 2023, the Court held an in-person hearing on Maxim's

Motion for Ex Parte Temporary Restraining Order and Preliminary Injunction and Motion for Expedited Discovery.

15.   On January 24, 2023, the Court orally granted Maxim's Motion for Expedited Discovery, as unopposed.   Expedited Discovery Order, attached as **Exhibit D**.   The Court granted Maxim's request to conduct limited discovery, expressly including the depositions of SnapNurse's corporate representative(s) and Charles's supervisor at SnapNurse (Jamie Barber) within 15 days of receipt of Charles's responses to Maxim's initial written discovery requests.  *Id.*   The Order further expressly granted Maxim the right to issue Rule 45 subpoenas to SnapNurse to discover: (i) the circumstances of Charles' resignation from Maxim and hiring by SnapNurse, (ii) Charles' activities while employed by SnapNurse, and (iii) Charles' misappropriation and use of Maxim's confidential and proprietary information.  *Id.* The overriding purpose of granting expedited discovery was to permit Maxim to fully explore the extent of Charles' actions prior to the expiration of the TRO and the upcoming Preliminary Injunction Hearing.

16.   On January 27, 2023, the Maryland District Court granted Maxim's request for entry of a temporary restraining order against Charles lasting until March 31, 2023, at 3:00 PM ET, at which time the Court will hold a hearing on Maxim's Preliminary Injunction Motion.  *See* TRO Order, attached as **Exhibit E**.  The Court

found that if the temporary restraining order was not granted, Maxim would face a likely risk of material, immediate, and irreparable harm.  *Id.*  The Court further held that Maxim established a likelihood that it would succeed on the merits of its claims asserted under the DTSA, MUTSA, VUTSA, breach of contract, and other common law claims against Charles based on the limited information provided in the Verified Complaint.

17.   On February 17, 2023, Maxim's counsel emailed Shelton an advance copy of the draft subpoena for the Rule 30(b)(6) deposition with requests for documents and a request to depose Jamie Alix Barber ("Barber"), Defendant's direct supervisor at Maxim.  *See* February 17, 2023, Email, attached as **Exhibit F**.  The purpose of this was to begin a dialogue with SnapNurse to facilitate the Court ordered depositions as smoothly and as timely as possible.

18.   On February 23, 2023, Shelton emailed Maxim's counsel, stating he was authorized to accept service of the subpoenas on behalf SnapNurse and Barber. *See* February 23, 2023, Email, attached as **Exhibit G**.

19.   On February 24, 2023, Maxim's counsel sent to Shelton, and Shelton accepted service of, a Fed. R. Civ. P. 45 subpoena to SnapNurse to designate corporate representative(s) for a Rule 30(b)(6) deposition on twenty-six (26) designated topics and to produce documents in response to twenty-nine (29) separate

but related document production requests directly concerning the six claims against Charles in the Verified Complaint and Charles' breach of his post-employment restrictive covenants.  *See* SnapNurse Subpoena, attached as **Exhibit H.**  The document production and deposition were both simultaneously scheduled for March 16, 2023, at 9:00 AM at Moorman Pieschel, LLC, One Midtown Plaza, 1360 Peachtree St., NE 1205, Atlanta, Georgia, 30309.

20.    On February 24, 2023, Maxim's counsel sent to Shelton, and Shelton accepted service of, a Fed. R. Civ. P. 45 subpoena for testimony from Barber.  *See* Barber Subpoena, attached as **Exhibit I**.  The deposition was scheduled for March 15, 2023, at 9:00 AM at Moorman Pieschel, LLC, One Midtown Plaza, 1360 Peachtree St., NE 1205, Atlanta, Georgia, 30309.  The location of the deposition was chosen based on Shelton's representation made on February 23, 2023, that Barber was worked for SnapNurse in the Atlanta, GA metro area.

21.    On March 3, 2023, Shelton sent a letter to Maxim's counsel, discussing general concerns with the discovery requests issued on February 24, 2023.  *See* SnapNurse Letter, attached as **Exhibit J**. In the letter, Shelton describes the communications between Maxim and SnapNurse and further discusses the alleged "efforts taken by SnapNurse regarding Mr. Charles' conduct vis-à-vis Maxim's information."  Shelton represented that SnapNurse has focused on four areas: (i)

Charles' SnapNurse issued computer, (ii) SnapNurse's internal network, (iii) Charles' SnapNurse email account, and (iv) search terms across SnapNurse's network.   Shelton also represents:

a.   With regard to Charles' SnapNurse computer, SnapNurse admits that Charles' computer was wiped clean before it could properly conduct a forensic analysis on it.  SnapNurse says its knowledge about "what happened to the machine is very limited." SnapNurse concluded that no "Maxim information or documents reside on Mr. Charles' SnapNurse laptop."

b.   With regard to SnapNurse's internal network, SnapNurse located some of Maxim's proprietary and confidential information on its internal network. The first document was entitled "List of potential clients (Stephen) 12.13.PA.WV," and the second document was entitled "Steph's copy of Jerome's Potential Clients." SnapNurse represented that "Stephen" is a SnapNurse employee who worked with Charles during his employment with SnapNurse. SnapNurse further said, "We **do have concerns** that Mr. Charles and/or Mr. Chinn might have placed some of the information on the two attached spreadsheets into Salesforce

and/or Salesloft." (emphasis added).

    c.    With regard to the search terms, SnapNurse said it was in the process of conducting a search and would provide an update on the results.

22.    On March 9, 2023, Maxim's counsel responded via letter. *See* Maxim Letter, attached as **Exhibit K**. Maxim's counsel said it was willing to confer about the scope of discovery served on SnapNurse and Barber. *Id.* Specifically, if SnapNurse would agree to the inspection and email productions requested in the subpoena, Maxim would narrow the topics and documents requests accordingly. Maxim further requested that SnapNurse provide a sworn verification which specifically outlines the protocols utilized to conduct the searches performed by SnapNurse, a detailed description of the results, and an agreement to produce all data/documents identified through searches for Maxim's review, which would effectively eliminate numerous Rule 30(b)(6) topics. However, if an agreement is not reached, Maxim intended to proceed with the scheduled depositions, as set forth in the subpoena. *Id.*

23.    On March 10, 2023, SnapNurse served Maxim with a twenty-page letter that contained only two pages of boilerplate objections to Maxim's subpoena duces tecum and lots of self-serving representations by counsel without any

documents or other evidence backing them up. *See* SnapNurse's Discovery Objections, attached as **Exhibit L**. SnapNurse asserted that the subpoena requests were "unreasonably broad in scope, unduly burdensome, of a harassing nature, vague and ambiguous, and seek information that is not relevant to SnapNurse's role as a non party [sic] in the litigation." No effort was made by SnapNurse in its objections to connect any one or more of the vague single word objections to any one or more of the individual document production requests issued by Maxim. Furthermore, in the letter, SnapNurse admitted that it was "concerned that there was at least some Maxim information/documentation shared by Mr. Charles" during his employment with SnapNurse. *See id.*, p. 14. SnapNurse also admitted that Charles was in contact with a Maxim client(s) during his employment with SnapNurse. *Id.,* p. 16.

24.    On March 12, 2023, Maxim's counsel emailed Shelton, requesting an immediate meet and confer about SnapNurse's March 10th objections. *See* March 12 Email, attached as **Exhibit M**.

25.    On March 13, 2023, Maxim's counsel and Shelton met and conferred for 90 minutes in an attempt to resolve the pending discovery disputes between Maxim and SnapNurse regarding (1) when SnapNurse will produce documents; (2) which of the 29 document production requests SnapNurse will produce documents

to and which ones it will not produce documents; (3) which deposition topics SnapNurse will produce a corporate designee to testify about; and (4) when Maxim will be able to take the full depositions of Barber and SnapNurse after SnapNurse fully complies with the subpoena duces tecum.

26.    In an email dated March 14, 2023, at 4:34 PM, Maxim's counsel summarized the March 13, 2023, call.  *See* March 14 Email, attached as **Exhibit N**. As recounted in the email:

    a.    Shelton said few, if any, documents would be produced the week of the March 13th in response to the subpoenas.  Shelton further said he could not guarantee that any document would be produced before the scheduled depositions or when SnapNurse would complete its document production on the currently undisclosed document requests to which SnapNurse allegedly does not object.  Based on these representations, Maxim expressly said it would be filing a motion to compel.

    b.    Further, SnapNurse said that if Maxim insisted on proceeding with depositions, it would only make available Barber to testify about some – not all – of the topics in what could be construed to be a corporate designee role and not in her personal capacity.

Because SnapNurse's had failed to produce any documents or designate any witness(es) to testify to the Rule 30(b)(6) topics, Maxim expressly said it would be filing a motion to compel and/or a motion for contempt.

c.   Shelton said that Barber would not appear for her deposition on March 15, 2023, pursuant to the accepted subpoena.  Based on this representation, Maxim expressly deemed Barber's actions to constitute contempt of the subpoena.

27.   On March 14, 2023, at 9:06 PM, Shelton responded to Maxim's email. SnapNurse said, "upon further consideration, we are willing to do the following in lieu of motion practice."  *See* SnapNurse March 14 Email, attached as **Exhibit O**. SnapNurse agreed to produce Barber on March 16, 2023 – but it was unclear whether she was being produced in her individual capacity or as a corporate designee. Similarly, Shelton responded that he could not ensure that any documents would be produced before any such March 16th proposed deposition.   SnapNurse also indicated that Barber "would be able to speak" or "could speak" to some of the Rule 30(b)(6) topics but not all.

28.   On March 15, 2023, Shelton emailed Maxim, indicating it located some proprietary information belonging to Maxim on SnapNurse's network and produced

two .pdf documents and one PowerPoint document – without reference to whether the documents produced were in response to any one or more of Maxim's 29 document production requests or whether or when additional documents would be produced.

## II.     ARGUMENT AND ANALYSIS

### A.     The Court Should Grant Maxim's Motion to Compel.

Federal Rule of Civil Procedure Rule 45 expressly permits a party to procure discovery from a non-party through the issuance and service of a subpoena.  *See* Fed. R. Civ. P. 45.   A properly issued and served subpoena provides a court with jurisdiction over a non-party witness within the court's territorial jurisdiction. *See Smith v. Pefanis*, 652 F. Supp. 2d 1308, 1339 (N.D. Ga. 2009).

Under Rule 45, a person who is commanded to respond to a subpoena duces tecum may object but must do so within fourteen days after the subpoena is served. Fed. R. Civ. P. 45(d)(2).   A non-party waives all objections if it fails to "timely respond to plaintiff with objections, comply with the subpoena, or move to quash or modify the subpoena."  *See Wilburn v. Axcess Staffing Serv., LLC*, No. 1:19-CV-4688-LMM-WEJ, 2020 WL 10223303, at \*1 (N.D. Ga. July 29, 2020); *see also Evans Mills Off. Condo. Ass'n Inc. v. Owners Ins. Co.*, No. 1:20-Cv-1540-CAP, 2020 WL 13598043, at \*3 (N.D. Ga. Nov. 25, 2020) (granting a motion to compel

discovery from non-party because the non-party failed to object to the subpoena).

Merely asserting boilerplate objections is improper. *Fudali v. Pivotal Corp.*, No.

1:09-2354-RWS-SSC, 2009 WL 10668516, at *6 (N.D. Ga. Oct. 30, 2009) (granting

motion to compel a non-party to produce documents when the non-party provided

boilerplate objections, such as irrelevant, overbroad, unduly burdensome, and

vague). Objections to requests for discovery should be "plain enough and specific

enough so that the court can understand in what way the [discovery requests] are

alleged to be objectionable." *See Panola Land Buyers Ass'n v. Shuman*, 762 F.2d

1550, 1559 (11th Cir. 1985); *see also Martin v. Ward*, No. 1:18-cv-4617-MLB, 2021

WL 1186749 at *2 (N.D. Ga. Mar. 30, 2021) ("'The party resisting discovery bears

the burden of showing 'specifically how the objected-to request is unreasonable or

otherwise unduly burdensome.' 'Rule 26 objections must be sufficiently specific and

involve more than a mere conclusory 'recitation of expense and burdensomeness.'")

(citations omitted). Boilerplate objections fail to provide sufficient information to

the requesting party and/or the Court to understand the scope of validity of the

objection. *Carnes v. Crete Carrier Corp.*, 244 F.R.D. 694, 698 (N.D. Ga. 2007).

Once a non-party timely serves objections, the party serving the subpoena may

petition the Court in which the document production was to take place to rule on the

objections and order the non-party to produce documents.   Fed. R. Civ. P. 45(d)(2)(B)(i).

Here, Shelton accepted service of a proper Fed. R. Civ. P. 45 subpoena duces tecum requesting SnapNurse to produce documents in response to twenty-nine separate document production requests.   As discussed above, the federal District Court Judge in Maryland expressly authorized Maxim to pursue discovery from SnapNurse.   **Exhibit D**.   As of the filing of this motion, SnapNurse has produced a grand total of six documents prior to the March 16, 2023, 9 AM return date for the subpoena duces tecum and all without designating to which document request each responds or whether SnapNurse's search for responsive documents is complete. During the many hours of meet and confer, Shelton indicated that SnapNurse objected to several of the document requests, but never specified exactly which ones. Hence, it is not clear whether SnapNurse's meager document production to date is in response to **all** document requests or just self-selected ones.   Regardless, it is clear that SnapNurse failed to comply with the subpoena duces tecum and produce all responsive documents in its possession, custody, or control prior to the return date on the subpoena.

Moreover, SnapNurse has waived all objections to Maxim's subpoena by failing to assert any objections with specificity.   *Panola Land Buyers*, 762 F.2d at

1559.  In its letter of objection, SnapNurse asserted boilerplate objections ("they are unreasonably broad in scope, unduly burdensome, of a harassing nature, vague and ambiguous, and seek information that is not relevant to SnapNurse's role as a non party in the litigation") without specifying which, if any, of the individual twenty-nine requests were objectionable or providing any explanation for the boilerplate objections beyond the one-word objections.  *See* **Exhibit L** at 18.  SnapNurse is a large company represented by sophisticated counsel from a national law firm, meaning SnapNurse was capable of preparing and serving proper objections, but failed to do so.

SnapNurse, in its March 10th objections, generally states that a non-party should not be compelled to comply with a subpoena, citing to *Pinehaven Plantation Properties, LLC v. Mountcastle Family LLC*, No. 1:12-CV-62, 2013 WL 6734117 (M.D. Ga. Dec. 19, 2013).  *See* **Exhibit L** at 18-19.  Aside from being clearly factually distinguishable from the current situation in this case, SnapNurse made no attempt in its March 10th objections to explain how *Pinehaven Plantation Properties* could theoretically apply to any one or more of Maxim's document production requests.  To the extent *Pinehaven Plantation Properties* could apply, it only strengthens Maxim's position.  SnapNurse is the only party that can produce the documents related to whether Charles disclosed and/or used Maxim's confidential,

proprietary, trade secret information while employed at SnapNurse – which SnapNurse has represented did indeed happen – after Charles' SnapNurse laptop was mysteriously wiped on or about January 12, 2023 and after SnapNurse was advised by Maxim to preserve documents. Moreover, only SnapNurse can produce documents concerning Charles' breach of his post-employment restrictive covenants that took place while he was employed by SnapNurse. As such, SnapNurse's objection that, as a nonparty it should not be held to comply with the subpoena, is meritless.

In the complete absence of any valid objections, the Court should compel SnapNurse to fully and completely produce all non-privileged and responsive documents in its possession, custody, or control to Maxim no later than Friday, March 24, 2023, so as to enable Maxim to review such documents and then take SnapNurse's 30(b)(6) deposition prior to the March 31, 2023 Preliminary Injunction hearing currently scheduled in the underlying Maryland federal District Court case.

### B.    The Court Should Grant Maxim's Motion for Contempt.

Both SnapNurse and Barber failed to, and expressly refused to, comply with Maxim's subpoenas for third party discovery in the underlying Maryland federal case and has continued to delay Maxim's ability to conduct discovery into Charles' actions while employed with SnapNurse – all while knowing that the Maryland

District Court's temporary restraining order is set to expire on March 31, 2023, in just a few short weeks. SnapNurse has (i) refused to designate corporate representative(s) to testify on all topics for the Rule 30(b)(6) deposition, and (ii) initially refused to produce Barber. SnapNurse's delay tactics cannot be excused. Thus, Maxim submits that SnapNurse and Barber are in contempt of Court.

Under Fed. R. Civ. P. 45(g), a person who fails to comply with a subpoena can be subject to contempt sanctions. "Although a subpoena is in a sense the command of the attorney who completes the form, defiance of a subpoena is an act in defiance of a court order and exposes the defiant non-party to contempt sanctions." *See ACS Partners, LLC v. GFI Management Serv., Inc.*, No. 1:16-CV-1763-LMM, 2016 WL 11567571, at *2 (N.D. Ga. Aug. 25, 2016) (contempt sanctions can be reasonable costs and fees). On the other hand, if a non-party contests a subpoena or seeks to be relieved from some or all of the obligations to comply with a validly served subpoena, such non-party must file a Fed. R. Civ. P. 45(d)(3) motion quash or, alternatively, a motion for protective order.

Here, SnapNurse and Barber were <u>required</u> to file a motion quash, or alternatively a motion for protective order, if they did not wish to provide testimony at the time/place designated in the subpoenas or on all of the 30(b)(6) topics designated in the subpoena. Nonetheless, neither SnapNurse nor Barber filed any

such motions.  Accordingly, both SnapNurse and Barber were required to appear for their respective depositions at the time and place set forth in the subpoenas and SnapNurse was required to produce a corporate designee to testify on all twenty-six topics identified in the subpoena.

On March 13, 2023, SnapNurse's counsel informed Maxim that Barber would not appear for her subpoenaed deposition on March 15, 2023.  And, as indicated by counsel, Barber did not appear for her subpoenaed deposition on March 15, 2023.

On March 13, 2023, SnapNurse's counsel also informed Maxim that SnapNurse would **not** designate corporate representatives to testify on all of the topics set forth in the subpoenaed Rule 30(b)(6) deposition.  After Maxim indicated it would proceed with filing a Motion to Compel and/or Motion for Contempt, Shelton said Barber "may" testify to certain topics (albeit it was unclear whether she would be there in her personal or corporate capacity), while leaving the other topics to be covered at a later date, if at all.  Shelton further represented that any such depositions would be required to proceed before SnapNurse provided any documents in response to the subpoena duces tecum discussed above.  On March 16, 2023, SnapNurse did not appear for its deposition at the time and place commanded by the subpoena.

SnapNurse's and Barber's failure to appear for and/or be prepared to present as a witness to testify about the subpoenaed topics constitutes contempt of the subpoena in violation of Fed. R. Civ. P. 45(g).

Accordingly, Maxim moves the Court to (1) find both Barber and SnapNurse in contempt of the February 24, 2023 subpoenas when they failed to appear for their depositions; (2) order Barber and SnapNurse to appear for depositions on March 27 and March 28, 2023 pursuant to the subpoenas, but only AFTER SnapNurse produces all non-privileged responsive documents in its possession, custody, or control no later than Friday March 24, 2023; and (3) award Maxim the reasonable costs and attorneys' fees it incurred in bringing this present motion. *See, e.g.*, *Smith*, 652 F. Supp. 2d at 1342 (non-parties' failure to explain noncompliance warranted civil contempt sanctions); *see also Sanger v. Ahn,* No. 1:19-mi-00105-MLB-LTW, 2020 WL 9601873, at \*2 (N.D. Ga. July 15, 2020) (granting Fed. R. Civ. P. 37(5)(A) sanctions against a non-party who was in contempt of a Fed. R. Civ. P. 45 subpoena).

### C.   The Court Should Grant an Immediate Hearing Pursuant to LR 7.2(B).

Local Rule 7.2(B) states that upon "written motion and for good cause shown, the Court may waive the time requirements of this rule and grant an immediate hearing on any matter requiring such expedited procedure."

Maxim has shown that an immediate hearing is necessary.  The United States District Court, District of Maryland, granted Maxim a Temporary Restraining Order, which ends on March 31, 2023.  **Exhibit E**.  The Maryland District Court also granted Maxim's Motion for Expedited Discovery to ensure the parties would be prepared for the March 31, 2023 hearing on preliminary injunctive relief – which order also expressly included depositions of SnapNurse and Barber.  *See* **Exhibits C and D**.  However, SnapNurse has failed to comply with the properly served and valid subpoenas, which only further delays and extends the matter before the Maryland District Court and frustrates the Maryland District Court's ability to timely consider all relevant evidence at the March 31, 2023 preliminary injunction hearing as originally contemplated in that Court's order granting expedited discovery.  The pending March 31, 2023 expiration of the TRO and preliminary injunction hearing date as well as the Maryland District Court's order granting expedited discovery constitute "good cause" for an expedited hearing in this matter so as to permit Maxim to take the ordered depositions of SnapNurse and Barber prior to March 31, 2023.  Therefore, in light of the foregoing, this Court should grant an immediate hearing pursuant to Local Rule 7.2(B).

## III.   CONCLUSION

SnapNurse's counsel has claimed in correspondence and orally throughout his interactions with Maxim's counsel that SnapNurse had no involvement with or knowledge of Charles' misappropriation of trade secrets or breaches of his post-employment restrictive covenants.   As discovery has progressed, it has become increasingly apparent that SnapNurse's stated position has less and less validity and factual support – particularly as more and more of Maxim's documents are discovered on SnapNurse's servers.   SnapNurse's evasiveness, delay, and apparent gamesmanship in responding to the two subpoenas and forcing Maxim to resort to motions practice given the upcoming March 31, 2023 Preliminary Injunction hearing in the underlying Maryland federal District Court matter and related Maryland order on expedited discovery strongly suggests SnapNurse may not be quite as innocent as it claims.

For all of the foregoing reasons set forth above, Maxim moves the Court to issue an Order, granting Maxim's Motion to Compel and Motion for Contempt against SnapNurse, ordering SnapNurse to produce all non-privileged responsive documents in its possession custody and control concerning all twenty-nine document requests contained in the subpoena duces tecum by March 24, 2023, finding Barber and SnapNurse in contempt and ordering Barber and SnapNurse to

appear for depositions on March 27 and March 28, 2023 so as to permit the taking of their depositions prior to the March 31, 2023 Preliminary Injunction hearing in the underlying federal District Court case in Maryland, awarding Maxim its reasonable costs and attorneys' fees incurred in connection with this motion, and any other relief deemed appropriate.

A proposed Order is filed concurrently with this filing.

Respectfully submitted,

MOORMAN PIESCHEL, LLC

*/s/ Christopher Moorman*
Christopher Moorman
Georgia Bar No. 521490
One Midtown Plaza
1360 Peachtree St. NE, Ste 1205
Atlanta, Georgia 30309
T: (404) 898-1242
F: (404) 898-1241
cgm@moormanpieschel.com

HUSCH BLACKWELL LLP

Michael J. Schrier
(D.Md. Bar No. 15967)
1801 Pennsylvania Ave., NW, Suite 1000
Washington, DC 20006
T: (202) 378-2313
F: (202) 378-2319
michael.schrier@huschblackwell.com

HUSCH BLACKWELL LLP

William E. Corum
Tyler Hibler
Megan Scheiderer
Husch Blackwell LLP
4801 Main Street, Suite 1000
Kansas City, Missouri 64112
T: (816) 983-8000
F: (816) 983-8080
william.corum@huschblackwell.com
tyler.hibler@huschblackwell.com
megan.scheiderer@huschblackwell.com

**Counsel for Maxim Healthcare Staffing Services, Inc.**

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned certifies that the foregoing document has been prepared in accordance with the font type and margin requirements of Local Rule 5.1 of the Northern District of Georgia, using 14-point Times New Roman type.

<u>Christopher G. Moorman</u>
*Attorney for Plaintiff Maxim Healthcare Services, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and accurate copy of the foregoing instrument was forwarded this 17th day of March, 2023, to the attorneys listed below by electronic mail and by operation of the Court's electronic filing system to all parties.

Joseph P. Shelton
Fisher & Phillips, LLP
424 Church Street
Suite 1700
Nashville, TN 37219
jshelton@fisherphillips.com

Granville Templeton, III
Templeton Law Firm
729 E. Pratt Street
Suite 560
Baltimore, MD 21202
granvilletempleton@gmail.com


MOORMAN PIESCHEL, LLC

/s/Christopher G. Moorman
Christopher G. Moorman