## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
### Southern Division

| | |
|---|---|
| MAXIM HEALTHCARE STAFFING SERVICES, INC. <br> 7227 Lee Deforest Drive <br> Columbia, Maryland 21046, <br><br>     *Plaintiff,* <br><br> v. <br><br> JEROME CHARLES <br> 4777 Balmoral Street <br> White Plains, Maryland 20695, <br><br>     *Defendant.* | No. _____ |

### VERIFIED COMPLAINT

Plaintiff Maxim Healthcare Staffing Services, Inc. ("Maxim"), by and through undersigned counsel, files this Complaint for injunctive and other relief against Defendant Jerome Charles ("Charles"). In support of its Complaint, Maxim states as follows:

### PARTIES, JURISDICTION, AND VENUE

1.      Maxim is a for-profit corporation organized under Maryland law. Maxim's headquarters is located at 7227 Lee Deforest Drive, Columbia, Maryland 21046.

2.      Upon information and belief, Charles is an individual residing at 4777 Balmoral St., White Plains, Maryland 20695.

3.      This Court maintains personal jurisdiction over Charles because, upon information and belief, Charles resides in and is domiciled in Maryland.

4862-8803-5144.7

4.     The federal claim in this action arises under the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1832 *et seq.*

5.     The state law claims in this action arise under the Maryland Uniform Trade Secrets Act, Md. Code Ann., Com. Law § 11-1201; Virginia Uniform Trade Secrets Act, Va. Code § 59.1-336; and Maryland common law.  The amount in controversy in each of these state law claims exceeds $75,001.

6.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1367 (supplemental jurisdiction).

7.     Venue is appropriate in this Court and in this Division pursuant to 28 U.S.C. § 1391 and L.R. 501.4(b), because this is the judicial district and Division in which Charles resides.  Thus, this judicial district and Division has personal jurisdiction over Charles.

## FACTUAL ALLEGATIONS

### I.     Maxim Healthcare Staffing Services, Inc.

8.     Maxim is an industry leader in the highly competitive business of recruiting and staffing medical professionals on a temporary or permanent basis to healthcare facilities across the nation.

9.     Since 1988, Maxim has connected the nation's top talent to a variety of healthcare partners by staffing medical professionals such as nurses, allied health professionals, locum tenens, travel nurses, medical coders, and others with its clients. In addition to healthcare staffing, Maxim also provides staffing for schools and other educational service clients.

10.     Maxim's staffing and workforce management clients include, but are not limited to, hospitals, nursing homes, government facilities, school districts, and other facilities. Among

other clients, Maxim also contracts with numerous federal agencies to provide healthcare staffing and workforce management solutions.

11.     Maxim assists clients across the nation, and has physical offices in 33 states, including Maryland and Virginia.

12.     Maxim's business is centered on relationships.  Maxim must build and maintain relationships with clients and candidates for placements to be successful.  Maxim's success is largely due to its reputation in the staffing and workforce management industry, and the hard-earned goodwill it developed over time with clients and candidates.

13.     Maxim invests considerable time and resources to develop its client relationships. This investment includes providing Maxim's trained and trusted internal employees access to these client relationships so that the employee can sustain and build upon Maxim's goodwill.

14.     Through the expenditure of significant resources and effort over decades of business, Maxim developed and maintains confidential and trade secret information that provides a distinct advantage over its competitors in the industry.  This confidential and trade secret information includes, but is not limited to, information related to Maxim's: (1) financial affairs; (2) sales and marketing strategies; (3) contract terms; (4) compliance matrices; (5) pricing and costs; (6) workflow; (7) project management reports; (8) customer and prospective customer contact information; (9) customer and prospective customer staffing requirements; (10) customer margin tolerances; (11) forms for acquiring and recording information; (12) financial controls; (13) management practices; (14) candidate and prospective candidate list and information; and (15) other internal procedures and processes related to training, client marketing and development, and the recruitment of talent.

3

15.    This information, as well as other confidential and trade secret information of Maxim, is not available through proper means to the public or Maxim's competitors.  It is also reasonably safeguarded by Maxim through password-protected computers; company-specific and password-protected intranet platforms; information security policies; a code of conduct; and confidentiality agreements that include nondisclosure and other restrictive covenants.  (*See* Information Security Policy 4.6.4, attached as Exhibit I; Relevant Code of Conduct Policy, attached as Exhibit J).

## II.    Maxim's Employment of Charles

16.    In January 2016, Maxim hired Charles as a Healthcare Recruiter in its Virginia Beach, Virginia office, located at 293 Independence Boulevard, Suite 405, Virginia Beach, Virginia 23462.

17.    As a Healthcare Recruiter, Charles worked closely with Maxim's clients and candidates and had access to Maxim's confidential information and trade secrets, including information pertaining to Maxim's current and prospective clients and employees.

18.    Charles was responsible for, among other things, recruiting, attracting, and screening qualified and diverse healthcare and educational professionals for placement with Maxim's clients.  Therefore, Charles had access to, and knowledge of, Maxim's confidential recruitment and training tools, documents, and other materials not readily available to the public or Maxim's competitors.

19.    Charles also had access to applications for employment and personal information about the candidates, including their contact information, prior job and education history, and positions applied for.  This information is not readily available to the public or Maxim's competitors.

20.     Charles was also responsible for developing, managing, and maintaining relationships with Maxim's clients and achieving growth in client accounts.  As a result, Charles had access to current and prospective client lists; customer pricing information; customer contracts; customer staffing demands and needs; project management reports; customer margin tolerances; and business strategies regarding emerging markets and clients.

21.     In May 2017, Maxim promoted Charles to the position of Business Development Manager.  In connection with this promotion, Charles transferred to the Northern Virginia office, located at 7600 Leesburg Pike, West Building, Suite 204, Falls Church, Virginia 22043.

22.     In this position, Charles was responsible for the overall development and execution of the marketing and business development strategies for Northern Virginia. Charles analyzed opportunities in this region and developed customized business plans to maximize potential referrals from jurisdictions outside of Virginia.  Charles was also charged with building and executing an effective recruitment strategy in this region to ensure client demand was met.

23.     In the role of Business Development Manager, Charles was also responsible for developing, managing, and maintaining client relationships.  Charles collaborated with clients to better understand their needs, to educate them on Maxim's services, and to develop lasting relationships and goodwill.

24.     Throughout his employment with Maxim, Charles received extensive access to confidential and trade secret information related to Maxim's services, clients, and business strategies.

25.     During his employment, Charles had access to Maxim's prospective and current client lists.  These lists contain detailed points of contact, client requirement information, pricing information, and other confidential and trade secret information not readily available to the public.

4862-8803-5144.7

26.     Charles also had access to Maxim's prospective and current candidate lists.  These

lists contain detailed information about prospective and current job candidates, including, but not

limited to, contact information, prior job history, positions sought, and other confidential and trade

secret information not readily available to the public.  These lists are used by Maxim to identify

qualified personnel to staff at their clients' sites.

**III.     Charles' 2016 and 2017 Employment Agreements**

27.     Charles entered into a legally enforceable, written employment agreement with

Maxim on January 18, 2016, and reaffirmed this agreement on April 19, 2017, when he was

promoted to Business Development Manager.  A true and accurate copy of Charles's Employment

Agreements are attached hereto as Exhibits A and B (collectively referred to as the "Employment

Agreements").[1]

28.     Charles stipulated that the restrictions in the Employment Agreements, including

the post-employment restrictions, were reasonable and necessary to preserve Maxim's legitimate

and protectable interest in, among other things, its trade secrets, confidential information, and

goodwill with customers and employees.  (Exhibit A, 2016 Employment Agreement; Exhibit B,

2017 Employment Agreement).

29.     In each Employment Agreement, Charles acknowledged that, in his employment

with Maxim "and in performance of this Agreement, [he] will acquire certain non-public trade

secrets, confidential information and information concerning customer or client relationships of

Maxim, the public disclosure of which would cause financial loss and irreparable injury to

Maxim." (Ex. A, Whereas Clause; Ex. B, Whereas Clause).

---

[1]  The applicable restrictive covenants contained within the 2016 and 2017 Employment
Agreements executed by Charles contain identical language.

4862-8803-5144.7

30.     Charles agreed to not divulge Maxim's "Confidential Information" or "Trade Secrets," except as required by the proper performance of his duties for Maxim or authorized by law. (Ex. A, ¶ 4; Ex. B, ¶ 4).

31.     The Employment Agreements define "Confidential Information" to include "information not generally known by Maxim's competitors or the general public concerning Maxim, including but not limited to: its financial affairs, sales and marketing strategy, acquisition plan pricing and costs; its customers' names, addresses, telephone numbers, contact persons, staffing requirements, margin tolerances regarding pricing, and the names, addresses, telephone numbers, skill sets, availability and wage rates of its temporary medical personnel." (Ex. A, ¶ 4; Ex. B, ¶ 4).

32.     The Employment Agreements define "Trade Secrets" to include "information that Maxim takes measures to keep secret and that gives Maxim an advantage over its competitors, and includes but is not limited to: sales, recruiting, pricing and marketing techniques, sales and recruiting manuals, forms for acquiring and recording information, financial controls, and management practices, procedures, and processes." (Ex. A, ¶ 4; Ex. B, ¶ 4).

33.     Charles also agreed that, upon termination of his employment with Maxim for whatever reason, to return all of Maxim's records, papers, and other property, whether on paper, computer discs, or other forms, belonging or pertaining to Maxim. (Ex. A, ¶ 8; Ex. B, ¶ 8).

34.     Charles agreed, upon termination of his employment with Maxim for whatever reason, not to compete against Maxim for an 18-month period following his employment. (Ex. A, ¶ 5; Ex. B, ¶ 5). The non-compete provision of the Employment Agreements states:

> [Charles] agrees that upon the termination of his/her employment, whether by Maxim or [Charles] and whether with or without cause, for a period of eighteen (18) month thereafter, [Charles] shall not directly or indirectly engage in or prepare to engage in, or be

4862-8803-5144.7

employed by, any business that is engaging in or preparing to engage in any aspect of Maxim's Business in which [Charles] performed work during the two (2) year period preceding his/her termination of employment, within a radius of fifty (50) miles of the office in which [Charles] worked at the time [Charles'] employment terminated or any other office in which [Charles] worked during the two (2) years preceding termination of employment, or as much geographic territory as a court of competent jurisdiction deems reasonable.

35.     In addition, Charles agreed, upon termination of his employment with Maxim, not to solicit Maxim's clients for an 18-month period.  (Ex. A, ¶ 6; Ex. B, ¶ 6).  The non-solicitation provision of the Employment Agreements states:

For a period of eighteen (18) months after [Charles'] termination of employment for whatever reason, [Charles] agrees not to on behalf of him/herself or any other person or entity, approach, contact, solicit or induce any individual, corporation or other entity which is a client or customer of Maxim, about which [Charles] obtained knowledge by reason of [Charles'] employment by Maxim to: (i) enter into any business relationship with a client or customer of Maxim if the business relationship is competitive with any aspect of Maxim's business in which [Charles] worked during the two (2) year period preceding termination of employment, or (ii) reduce or eliminate the business such client or customer conducts with Maxim.

36.     Charles also agreed that, upon termination of his employment with Maxim for whatever reason, not to solicit Maxim's employees for an 18-month period following his employment.  (Ex. A, ¶ 7; Ex. B, ¶ 7).  This provision of the Employment Agreements states:

For a period of eighteen (18) months after [Charles'] termination of employment for whatever reason, [Charles] agree not to, on behalf of him/herself or any other person or entity, approach, contact, solicit or induce any person who has been an internal employee or an external healthcare employee of Maxim within the two (2) year period prior to the date of termination of [Charles'] employment and about whom [Charles] obtained knowledge by reason of [Charles'] employment with Maxim: (i) to cease working for Maxim at clients or customers of Maxim, or (ii) to refrain from beginning work for Maxim at clients or customers of Maxim, or (iii) to provide services

8

to any individuals, corporation or entity whose business is competitive with Maxim.

37.     Charles acknowledged that irreparable damage would result to Maxim in the event of the violation of any covenant, and that it would be difficult to ascertain the damages arising from a violation of the covenants contained in the Employment Agreement. (Ex. A ¶ 10; Ex. B ¶ 10).

38.     For any violation of the covenants contained within Paragraphs 4, 5, 6, or 7 of the Employment Agreements, Charles agreed he will "pay to Maxim an amount equal to one hundred percent (100%) of the gross profit, or twenty-five (25%) of the gross sales, whatever amount is greater, resulting from business generated by [Charles], either directly or indirectly, on his/her own account or as agent, owner, officer, director, trustee, creator, partner, consultant, stockholder, employer, employee, or otherwise for or in conjunction with any other person or entity, through conduct in violation of Paragraphs 4, 5, 6, or 7" of the Employment Agreements. He further agreed that any "liquidated damages shall be in addition to any other legal or equitable relief that may be available to Maxim for such breach." (Ex. A, ¶ 10; Ex. B, ¶ 10).

**IV.     Charles' Resignation From Maxim And Breach Of Legal Duties**

39.     On or about October 31, 2022, Charles provided notice of his intent to resign from his employment with Maxim. Charles' last day worked for Maxim was November 11, 2022.

40.     While the exact date is unknown, in October or November of 2022, Charles accepted an offer of employment with SnapNurse, Inc. ("SnapNurse") as Vice President of Business Development.

41.     On or about November 28, 2022, Maxim learned that Charles was working for SnapNurse.

9

42.     Maxim and SnapNurse are direct competitors in the recruiting and staffing of medical personnel on a temporary or permanent basis to medical and healthcare facilities.

43.     SnapNurse's website claims that SnapNurse is America's emerging leader in healthcare staffing, and states that SnapNurse has helped facilities across the country by placing thousands of on-demand nurses and allied professionals.

44.     Upon information and belief, SnapNurse provides staffing services in direct competition with Maxim in Northern Virginia and across the nation.  This includes the area within 50 miles of Maxim's office in Falls Church, Virginia.

45.     Upon information and belief, SnapNurse employed Charles between mid-November 2022 and January 12, 2023 in a position was substantially similar to the position he occupied with Maxim.  According to a job posting by SnapNurse, the Vice President of Business Development is responsible for the overall development and execution of marketing and business development strategies.  The role is also responsible for: developing new leads and contacts; preparing business strategies by analyzing target market and industry trends; qualifying leads and developing program strategies to win business and achieve sales goals; increasing overall sales volume; managing and developing a sales pipeline; and managing sales processes.  (Exhibit C, SnapNurse Job Posting).

46.     On December 16, 2022, Maxim sent Charles a letter reminding Charles of his post-employment obligations contained in his Employment Agreement with Maxim.  (Exhibit D, Dec. 16, 2022, Charles Letter).  Charles did not respond to Maxim's December 16, 2022, letter.

47.     Maxim also sent SnapNurse a letter on December 16, 2022.  (Exhibit E, Dec. 16, 2022, SnapNurse Letter).  Within that letter, Maxim outlined the post-employment obligations contained within Charles' Employment Agreement with Maxim.

10

48.     On December 30, 2022, SnapNurse, through counsel, responded to Maxim's December 16, 2022, letter.  (Exhibit F, Dec. 30, 2022, SnapNurse Letter).  Within that letter, SnapNurse stated that Charles understood his post-employment obligations.  SnapNurse further claimed that Charles did not possess any of Maxim's confidential information, proprietary information, or trade secrets.

49.     On or about January 3, 2023, Maxim discovered that Charles downloaded and misappropriated Maxim's confidential and trade secret information just before ending his employment with Maxim.

50.     In the days and weeks before the termination of his employment with Maxim, Charles accessed Maxim's secured, password-protected system, downloaded Maxim's confidential and trade secret information, and sent 19 emails with over 90 attachments containing Maxim's confidential and trade secret information to his personal email account (jcharles1288@gmail.com).  (Emails, attached as Exhibit G).  This includes numerous emails and attachments which were sent after Charles provided notice of his resignation, but before his last day of work.

51.     The documents and information within these emails include, but are not limited to:

a.      Confidential and proprietary internal training materials and sales strategies;

b.      Contracts which contain terms, pricing, and client contact information;

c.      Information about individuals who applied for jobs through Maxim, including contact information and job qualifications;

d.      Maxim's pricing information;

e.      Maxim's client lists, including Excel documents containing information pertaining to thousands of Maxim's clients nationwide; and

f.      Maxim's prospective client lists containing information pertaining to Maxim's prospective clients nationwide.

4862-8803-5144.7

52.     Maxim did not authorize Charles' misappropriation of Maxim's confidential and trade secret information, nor has Charles returned this information.

53.     Upon information and belief, Charles still possesses Maxim's confidential and trade secret information.

54.     On January 12, 2023, at approximately 5:15 p.m. EST, counsel for SnapNurse notified counsel for Maxim that Charles was no longer employed by SnapNurse, and acknowledged that Charles misappropriated documents and information from Maxim.

55.     On January 12, 2023, SnapNurse, through its counsel, indicated it did not know the extent of disclosure of Maxim's confidential information and trade secrets within SnapNurse by Charles, nor could it confirm that Maxim's confidential information and trade secrets were not uploaded to SnapNurse's computer systems or network.

## COUNT I – MISAPPROPRIATION OF TRADE SECRETS
## IN VIOLATION OF THE DEFEND TRADE SECRETS ACT OF 2016
### 18 U.S.C. § 1832 *et seq.*

56.     Maxim re-alleges and incorporates the allegations contained in the foregoing Paragraphs of this Complaint.

57.     Maxim is the owner of proprietary information, including information identified in Paragraph 14, *supra*, certain of which information constitutes trade secrets within the meaning of 18 U.S.C. § 1839(3), including but not limited to Maxim's pricing data, operational manuals, market analysis, prospective and current candidate contact information, prospective and current customer information, and training materials.

58.     Maxim's trade secrets are related to services used in, or intended for use in, interstate commerce. Maxim operates offices nationwide and also provides staffing and workforce management services to clients nationwide.

12

59.     Between mid-November 2022 and January 12, 2023, Charles worked for SnapNurse, which is a company that also provides staffing to clients nationwide in direct competition with Maxim.

60.     Maxim has taken reasonable measures to safeguard its trade secrets. Maxim reasonably safeguards its confidential and trade secret information through password-protected computers and documents; company-specific and password-protected intranet platforms; information security policies; a code of conduct; and employment agreements that include nondisclosure terms and other restrictive covenants.

61.     Maxim's trade secrets derive independent economic value from not being generally known to and not being readily ascertainable through proper means by another person who can obtain economic value from the disclosure or use of the information.

62.     Charles' conduct as alleged in this Complaint constitutes actual and/or threatened misappropriation of trade secrets pursuant to 18 U.S.C. § 1832 *et seq.* Charles entered into confidentiality agreements with Maxim, for which he agreed not to disclose or use Maxim's confidential information. The confidentiality provision contained within the Employment Agreements is valid and enforceable.

63.     Charles acquired Maxim's trade secrets by improper means and, upon information and belief, used and disclosed Maxim's trade secrets while knowing that the trade secrets were improperly acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secrets.

64.     Charles misappropriated Maxim's trade secrets for his own competitive advantage and, upon information and belief, for the advantage of his former employer, SnapNurse.

4862-8803-5144.7

65.     Charles knew and understood that the trade secrets acquired, used, and disclosed were Maxim's property, and that the use and/or disclosure would result in competitive harm to Maxim.

66.     It is probable, if not certain, that Charles improperly used Maxim's trade secrets and confidential information while performing work for SnapNurse, and will use Maxim's trade secrets with other future employers.

67.     Charles' conduct in misappropriating Maxim's trade secrets and confidential information was intentional, willful, and malicious.

68.     As a direct and proximate result of Charles misappropriation, Maxim has suffered damages and will continue to be irreparably harmed.

### COUNT II – MISAPPROPRIATION OF TRADE SECRETS
### IN VIOLATION OF THE MARYLAND UNIFORM TRADE SECRETS ACT
### Md. Code Ann., Com. Law § 11-1201 *et seq.*

69.     Maxim re-alleges and incorporates the allegations contained in the foregoing Paragraphs of this Complaint.

70.     Maxim is the owner of proprietary information, including information identified in Paragraph 14, *supra*, certain of which information constitutes trade secrets within the meaning of Md. Code Ann., Com. Law § 11-1201(e), including but not limited to Maxim's pricing data, operational manuals, market analysis, prospective and current candidate contact information, prospective and current customer information, and training materials.

71.     Maxim has taken reasonable measures to safeguard its trade secrets.  Maxim reasonably safeguards its confidential and trade secret information through password-protected computers; company-specific and password-protected intranet platforms; information security

policies; a code of conduct; and employment agreements that include nondisclosure terms and other restrictive covenants.

72.     Maxim's trade secrets derive independent economic value from not being generally known to and not being readily ascertainable through proper means by another person who can obtain economic value from the disclosure or use of the information.

73.     Charles' conduct as alleged in this Complaint constitutes actual and/or threatened misappropriation of trade secrets pursuant to Md. Code Ann., Com. Law § 11-1201 *et seq.* Charles entered into confidentiality agreements with Maxim, for which he agreed not to disclose or use Maxim's confidential information.   The confidentiality provision within the Employment Agreements is valid and enforceable.

74.     In particular, Charles acquired Maxim's trade secrets by improper means and, upon information and belief, used and disclosed Maxim's trade secrets while knowing that the trade secrets were improperly acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secrets.

75.     Charles misappropriated Maxim's trade secrets for his own competitive advantage and, upon information and belief, for the advantage of his former employer, SnapNurse.

76.     Charles knew and understood that the trade secrets acquired, used, and disclosed were Maxim's property, and that the use and/or disclosure of such information and documents would result in competitive harm to Maxim.

77.     It is probable, if not certain, that Charles will improperly use Maxim's trade secrets and confidential information to perform work for SnapNurse, or other future employers.

78.     Charles' conduct in misappropriating Maxim's trade secrets and confidential information was intentional, willful, and malicious.

15

79.     As a direct and proximate result of Charles' conduct, Maxim has suffered and/or

will suffer monetary and other damages, and will continue to experience irreparable harm from

Charles' misappropriation.

<div align="center">

**COUNT III – MISAPPROPRIATION OF TRADE SECRETS
IN VIOLATION OF THE VIRGINIA UNIFORM TRADE SECRETS ACT
Va. Code § 59.1-336**

</div>

80.     Maxim re-alleges and incorporates the allegations contained in the foregoing

Paragraphs of this Complaint.

81.     Maxim is the owner of proprietary information, including information identified in

Paragraph 14, *supra*, certain of which information constitutes trade secrets within the meaning of

Va. Code § 59.1-336, including but not limited to Maxim's pricing data, operational manuals,

market analysis, prospective and current employee contact information, prospective and current

customer information, and training materials.

82.     Maxim has taken reasonable measures to safeguard its trade secrets.  Maxim

reasonably safeguards its confidential and trade secret information through password-protected

computers; company-specific and password-protected intranet platforms; information security

policies; a code of conduct; and employment agreements that include nondisclosure terms and

other restrictive covenants.

83.     Maxim's trade secrets derive independent economic value from not being generally

known to and not being readily ascertainable through proper means by another person who can

obtain economic value from the disclosure or use of the information.

84.     Charles' conduct as alleged in this Complaint constitutes actual and/or threatened

misappropriation of trade secrets pursuant to Va. Code § 59.1-336.  Charles entered into

confidentiality agreements with Maxim, for which he agreed not to disclose or use Maxim's

<div align="center">16</div>

confidential information.  The confidentiality provision within the Employment Agreements is valid and enforceable.

85.     Charles acquired Maxim's trade secrets by improper means and, upon information and belief, used and disclosed Maxim's trade secrets while knowing that the trade secrets were improperly acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secrets.

86.     Charles misappropriated Maxim's trade secrets for his own competitive advantage and, upon information and belief, for the advantage of his former employer, SnapNurse.

87.     Charles knew and understood that the trade secrets acquired, used, and disclosed were Maxim's property, and that the use and/or disclosure would result in competitive harm to Maxim.

88.     It is probable, if not certain, that Charles improperly used Maxim's trade secrets and confidential information while performing work for SnapNurse, and will do so with other future employers.

89.     Charles' conduct in misappropriating Maxim's trade secrets and confidential information was intentional, willful, and malicious.

90.     As a direct and proximate result of Charles' conduct, Maxim has suffered and/or will suffer monetary and other damages, and will continue to experience irreparable harm from Charles' misappropriation.

4862-8803-5144.7

## COUNT IV – BREACH OF CONTRACT

91.     Maxim re-alleges and incorporates the allegations contained in the foregoing Paragraphs of this Complaint.

92.     Charles and Maxim are parties to the Employment Agreements, attached as Exhibits A and B, which are contracts supported by valid consideration.

93.     Based on the Employment Agreements' choice-of-law provisions, this claim is governed by Maryland law.

94.     All conditions precedent necessary for the enforcement of the Employment Agreements have been satisfied.

95.     The Employment Agreements are reasonably necessary to protect Maxim's legitimate business interests, including Maxim's trade secrets, confidential information, and its business relationships.

96.     Charles has breached the Employment Agreements by misappropriating Maxim's confidential and trade secret information, and continuing to possess and/or control Maxim's confidential information following the termination of his employment with Maxim.

97.     Upon information and belief, Charles breached the Employment Agreements by engaging in Maxim's business in which he performed work during the two (2) year period preceding his termination of employment and within a radius of 50 miles of the office in which he worked at the time of his employment termination or any other office in which employee worked during the two (2) years prior to his termination.

98.     Upon information and belief, Charles breached his Employment Agreement through his employment with SnapNurse, which is a business that engages in, or is preparing to engage in, Maxim's business in which Charles performed work during the two (2) year period

18

preceding his/her termination of employment, within a radius of fifty (50) miles of the office in which Charles worked at the time Charles' employment with Maxim terminated.

99.     Charles's wrongful actions have proximately damaged Maxim's legitimate business interests and goodwill, and have denied Maxim the benefit of its bargain with respect to his Employment Agreement.

100.     As a direct and proximate result of Charles' conduct, Maxim has suffered and will continue to suffer, irreparable injury and significant damages in an amount to be proven at trial.

## COUNT V – BREACH OF FIDUCIARY DUTY

101.     Maxim re-alleges and incorporates the allegations contained in the foregoing Paragraphs of this Complaint.

102.     Charles, as a Business Development Manager for Maxim, owed a fiduciary duty and duty of loyalty to Maxim. Among the duties Charles owed to Maxim was the duty to disclose actual or potential conflicts of interest, not to disclose Maxim's confidential information, not to compete through SnapNurse against Maxim, and to deal openly and honestly with Maxim in all matters.

103.     Through the acts alleged herein, Charles breached his fiduciary duties to Maxim by neglecting his duties to Maxim, misusing Maxim's confidential information and resources for his own personal gain, and otherwise failing and refusing to act in the sole interests of Maxim during the time that he was Maxim's Business Development Manager.

104.     All of the actions undertaken by Charles to breach his fiduciary duty to Maxim were taken knowingly, intentionally, and with actual malice.

4862-8803-5144.7

105.    Charles's actions in breach of his duty have directly caused Maxim to suffer injury and damage, and will continue to cause injury and damages unless and until Charles is restrained from further breaching his duty to Maxim.

## COUNT VI – CONVERSION

106.    Maxim re-alleges and incorporates the allegations contained in the foregoing Paragraphs of this Complaint.

107.    By unlawfully accessing, downloading, and misappropriating Maxim's confidential information, Charles has exerted dominion and/or ownership over Maxim's property.

108.    Charles' use and/or continued possession of Maxim's confidential information deprives Maxim of the use of its resources.

109.    Charles intended to exercise dominion or control over Maxim's confidential information in a manner inconsistent with Maxim's rights to such property.

110.    Charles committed the foregoing actions knowingly, intentionally, and with malice.

111.    Charles' conversion of Maxim's property has directly and proximately caused damage and harm to Maxim, and will continue to cause damage and harm unless and until Charles is restrained from possessing said property.

## PRAYER FOR RELIEF

**WHEREFORE,** Maxim Healthcare Staffing Services, Inc. prays that the Court:

1.    Enter judgment that Charles violated the Defend Trade Secrets Act of 2016;

2.    Enter judgment that Charles violated the Maryland Uniform Trade Secrets Act;

3.    Enter judgment that Charles violated the Virginia Uniform Trade Secrets Act;

4.    Enter judgment that Charles breached his contractual obligations;

5.    Enter judgment that Charles breached his fiduciary duties;

4862-8803-5144.7

6.      Enter judgment that Charles unlawfully converted Maxim's property;

7.      Preliminarily and permanently enjoin Charles from misappropriating, accessing, or utilizing Maxim's confidential and trade secret information, and order the return and destruction of Maxim's confidential and trade secret information;

8.      Award Maxim compensatory damages for all damages sustained as a result of Charles' wrongdoing, in an amount to be proven at trial;

9.      Award Maxim liquidated damages pursuant to the terms and conditions of the Employment Agreement between Maxim and Charles;

10.     Award Maxim exemplary and/or punitive damages to the fullest extent permitted by the Defend Trade Secrets Act of 2016, Maryland Uniform Trade Secrets Act, Virginia Uniform Trade Secrets Act, and other common law claims;

11.     Award Maxim damages in the amount Charles was unjustly enriched by disgorging Charles of all profits and compensation earned from Charles' illegal conduct and awarding Maxim all such profits and compensation;

12.     Award Maxim pre-judgment and post-judgment interest at the maximum rate allowed by law;

13.     Award Maxim the reasonable attorneys' fees and costs incurred in pursuing this action, pursuant to the Defend Trade Secrets Act, Maryland Uniform Trade Secrets Act, and Virginia Uniform Trade Secrets Act; and

14.     Award Maxim such other legal or equitable relief as the Court deems just and proper.

4862-8803-5144.7

## DEMAND FOR JURY TRIAL

Plaintiff Maxim Healthcare Staffing Services, Inc. hereby demands a jury trial on all issues of fact so triable.

Respectfully submitted,

*/s/ Michael J. Schrier*
Michael J. Schrier, Esq.
D. Md. Bar No. 15967
Husch Blackwell LLP
1801 Pennsylvania Ave., NW, Suite 1000
Washington, DC 20006
T: (202) 378-2313
F: (202) 378-2319
michael.schrier@huschblackwell.com

William E. Corum (*Pro Hac Vice Application Forthcoming*)
Tyler Hibler (*Pro Hac Vice Application Forthcoming*)
Megan Scheiderer (*Pro Hac Application Forthcoming*)
Husch Blackwell LLP
4801 Main Street, Suite 1000
Kansas City, Missouri 64112
T: (816) 983-8000
F: (816) 983-8080
william.corum@huschblackwell.com
tyler.hibler@huschblackwell.com

Counsel for Maxim Healthcare Staffing Services, Inc.

## **VERIFICATION**

I, Barry Hellman, being duly sworn, state that I am the Area Vice President of Maxim Healthcare Staffing Services, Inc. in the case captioned *Maxim Healthcare Staffing Services, Inc. v. Jerome Charles* and have authorized the filing of this Complaint. I have reviewed the allegations made in the Complaint, and to those allegations of which I have personal knowledge, I believe them to be true. As to those allegations of which I do not have personal knowledge, I rely on business records maintained in their regular course of business, and I believe them to be true.

Barry Hellman
Area Vice President

Sworn to me this 17th day of January, 2023.

Notary Public

My Commission Expires: 2 | 28 | 2025



23

Exhibit A

Case 1:23-mi-99999-UNA   Document 840-1   Filed 03/17/23   Page 25 of 107
Case 8:23-cv-00115   Document 1-1   Filed 01/17/23   Page 2 of 51    EXHIBIT A

, #

## EMPLOYMENT AND MUTUAL ARBITRATION AGREEMENT

This EMPLOYMENT AND MUTUAL ARBITRATION AGREEMENT (this "Agreement"), made this , by and between MAXIM HEALTHCARE SERVICES, INC. or any affiliated company and/or any of its parents, subsidiaries, affiliates, agents, officers, directors, successors, agents, assigns, employees (hereinafter referred to as "MAXIM"), and , hereinafter referred to as "EMPLOYEE." MAXIM and EMPLOYEE may be collectively referred to as the "parties."

WHEREAS, MAXIM is engaged in the highly competitive business of recruiting and providing medical and/or other personnel on a temporary or permanent basis to nursing homes, hospitals, other medical and healthcare facilities, and home care services, and other lines of business MAXIM engages in, enters, or prepares to enter during EMPLOYEE's employment with MAXIM (collectively "MAXIM's Business");

WHEREAS, the parties recognize and acknowledge that in the performance of these services, and in the performance of this Agreement, EMPLOYEE will acquire certain non−public trade secrets, confidential information and information concerning customer or client relationships of MAXIM, the public disclosure of which would cause financial loss and irreparable injury to MAXIM;

WHEREAS, the parties desire to resolve any dispute or claim under this Agreement or that otherwise may arise between them by arbitration and not by a court or jury;

NOW THEREFORE, in consideration of the foregoing and the mutual covenants and restrictions contained herein, each of the parties intending to be legally bound agree as follows:

1. **AGREEMENT OF EMPLOYMENT**:  MAXIM agrees to employ EMPLOYEE in the position of , at an annual base salary of $ paid in weekly installments (or such other method as MAXIM may determine in its sole discretion from time to time).  EMPLOYEE agrees that employment and/or the payments described above are adequate and sufficient consideration for the promises of EMPLOYEE herein.

The scope of EMPLOYEE's employment, including duties, assignment, position and all responsibilities, shall be as established by MAXIM from time to time, whether orally or in writing. The parties agree that EMPLOYEE shall devote his/her full time, attention and energies to the business of MAXIM and shall not enter into any other business activity that interferes with EMPLOYEE's duties and responsibilities for MAXIM.

2. **TERM OF EMPLOYMENT**:  The term of employment shall continue until terminated by either party. EMPLOYEE agrees and expressly understands that the term of employment under this Agreement is "at will," with no certain term of employment being offered or promised. It is further understood that either EMPLOYEE or MAXIM may terminate EMPLOYEE's employment at any time, with or without cause.

If EMPLOYEE's employment with MAXIM is terminated by either EMPLOYEE or MAXIM, the parties agree that the terms of Paragraphs 4 through 13 of this Agreement shall survive.

3. **INDEMNIFICATION**: EMPLOYEE represents and warrants that EMPLOYEE's employment with MAXIM will not violate the lawful terms and conditions of any agreements entered into by EMPLOYEE prior to or during EMPLOYEE's employment with MAXIM. EMPLOYEE agrees to indemnify and hold MAXIM harmless from any and all claims arising out of any breach of any such agreement.

4. **AGREEMENT NOT TO DIVULGE CONFIDENTIAL INFORMATION**:  EMPLOYEE agrees that, except as required by the proper performance of his/her duties for MAXIM or authorized by law, he/she shall not divulge any Confidential Information or Trade Secrets concerning MAXIM or any MAXIM clients, customers, employees, or Healthcare Employees ("Healthcare Employee" means an employee of MAXIM who is or was employed to work at customers or clients of MAXIM) to any other person, entity or company besides MAXIM. For purposes of this Agreement, "Confidential Information" shall mean information not generally known by MAXIM's competitors or the general public concerning MAXIM, including but not limited to: its financial affairs, sales and marketing strategy, acquisition plan, pricing and costs; its customers' names, addresses, telephone numbers, contact persons, staffing requirements, margin tolerances regarding pricing, and the names, addresses, telephone numbers, skill sets, availability and wage rates of its temporary medical personnel. "Trade Secrets" shall mean information that MAXIM takes measures to keep secret and that gives MAXIM an advantage over its competitors, and includes but is not limited to: sales, recruiting, pricing and marketing techniques, sales and recruiting manuals, forms for acquiring and recording information, financial controls, and management practices, procedures and processes.

5. **COVENANT NOT TO COMPETE**:  EMPLOYEE agrees that upon the termination of his/her employment, whether by MAXIM or EMPLOYEE and whether with or without cause, for a period of eighteen (18) months thereafter, EMPLOYEE shall not directly or indirectly engage in or prepare to engage in, or be employed by, any business that is engaging in or preparing to engage in any aspect of MAXIM's Business in which EMPLOYEE performed work during the two (2) year period preceding his/her termination of employment, within a radius of fifty (50) miles of the office in which EMPLOYEE worked at the time EMPLOYEE's employment terminated or any other office in which EMPLOYEE worked during the two (2) years preceding termination of employment, or as much geographic territory as a court of competent jurisdiction deems reasonable. The prohibitions contained in this Paragraph shall extend to (i) activities undertaken by EMPLOYEE directly on EMPLOYEE's own behalf, and to (ii) activities undertaken by EMPLOYEE indirectly through any individual, corporation or entity which

undertakes such prohibited activities with EMPLOYEE's assistance and in or with respect to which EMPLOYEE is an owner, officer, director, trustee, shareholder, creditor, employee, agent, partner or consultant or participates in some other capacity.

6.  **NO CLIENT SOLICITATION**:  For a period of eighteen (18) months after EMPLOYEE's termination of employment for whatever reason, EMPLOYEE agrees not to on behalf of him/herself or any other person or entity, approach, contact, solicit or induce any individual, corporation or other entity which is a client or customer of MAXIM, about which EMPLOYEE obtained knowledge by reason of EMPLOYEE's employment by MAXIM to:
    (i) enter into any business relationship with a client or customer of  MAXIM if the business relationship is competitive with any aspect of MAXIM's Business in which EMPLOYEE worked during the two (2) year period preceding termination of employment, or
    (ii) reduce or eliminate the business such client or customer conducts with  MAXIM.

7.  **NO EMPLOYEE SOLICITATION**:  For a period of eighteen (18) months after EMPLOYEE's termination of employment for whatever reason, EMPLOYEE agrees not to, on behalf of him/herself or any other person or entity, approach, contact, solicit or induce any person who has been an internal employee or an external healthcare employee of MAXIM within the two (2) year period prior to the date of termination of EMPLOYEE's employment and about whom EMPLOYEE obtained knowledge by reason of EMPLOYEE's employment with MAXIM:
    (i) to cease working for MAXIM at clients or customers of MAXIM, or
    (ii) to refrain from beginning work for MAXIM at clients or customers of MAXIM, or
    (iii) to provide services to any individual, corporation or entity whose business is competitive with MAXIM.

8.  **RETURN OF RECORDS**:  EMPLOYEE agrees, upon termination of his/her employment with MAXIM for whatever reason, to return to MAXIM all original and copies of records, papers, and other property (whether on paper, computer discs or other form) belonging or pertaining to MAXIM.

9.  **SITE OF AGREEMENT**:  This Agreement is being entered into in the State of Maryland and shall be governed by and construed, interpreted and enforced in accordance with the laws of the State of Maryland, without giving effect to the principles of conflicts of laws except that Paragraph 12 and Attachment A is governed by the Federal Arbitration Act and by the laws of the State of Maryland.

10.  **REMEDIES; DAMAGES**:  EMPLOYEE recognizes that irreparable damage will result to MAXIM in the event of the violation of any covenant contained in Paragraphs 4, 5, 6, and 7 hereof made by him/her and further recognizes and acknowledges that it would be difficult to ascertain the damages arising from a violation by him/her of the covenants contained in Paragraphs 4, 5, 6 and 7 hereof.  EMPLOYEE agrees that as damages arising as a consequence of a violation of the covenants contained in Paragraphs 4, 5, 6 and 7 hereof, EMPLOYEE shall pay to MAXIM an amount equal to one hundred percent (100%) of the gross profit, or twenty–five percent (25%) of the gross sales, whatever amount is greater, resulting from business generated by EMPLOYEE, either directly or indirectly, on his/her own account or as agent, owner, officer, director, trustee, creator, partner, consultant, stockholder, employer, employee, or otherwise for or in conjunction with any other person or entity, through conduct in violation of Paragraphs 4, 5, 6 or 7 hereof.  Such liquidated damages amount shall be in addition to any other legal or equitable relief that may be available to MAXIM for such breach.

11.  **SEVERABILITY**:  If any term, provision, or condition of this Agreement, or its application to any circumstance or party, shall, to any extent, be invalid or unenforceable in any jurisdiction, the remainder of this Agreement, or the application of such term, provision, or condition to such circumstance or party (other than those as to which it is held invalid or unenforceable) shall not be affected and each remaining term, provision, or condition of this Agreement shall be valid and enforceable to the fullest extent permitted by applicable law. Any such invalidation or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction. Without limiting the foregoing, if a court of competent jurisdiction or arbitrator should determine that any of the restrictions contained in Paragraph 4, 5, 6 or 7 hereof are unreasonable in terms of scope, duration, geographic area or otherwise, such provision shall be deemed reformed to the minimum extent necessary such that such restriction shall be rendered enforceable.

12.  **MUTUAL ARBITRATION OF DISPUTES**:  MAXIM believes that if any disputes, claims, complaints or controversies ("Claim(s)") related to an employee's or former employee's employment currently exist or arise, it is in the best interest of both the individual and MAXIM to resolve the Claim without litigation.  Most Claims are resolved internally through MAXIM's complaint processes.  When such Claims are not resolved internally, EMPLOYEE and MAXIM agree to resolve such Claims through final and binding arbitration as described below and in Attachment A.  For purposes of this Paragraph 12, the term "MAXIM" mean MAXIM Healthcare Services, Inc. and its parents, subsidiaries, affiliates, successors, assigns, agents, officers, directors, and employees.

    a)  Claims covered by this agreement to arbitrate

EMPLOYEE and MAXIM agree to arbitrate before a neutral arbitrator, exclusively on an individual basis (and not on a class, collective or representative basis) any and all existing or future Claims between EMPLOYEE and MAXIM, that arise out of or relate to EMPLOYEE's recruitment, application, employment or separation from employment with MAXIM, including claims involving any current or former director, officer, shareholder, agent or employee of MAXIM, whether the disputes or claims arise under common law, or in tort, contract, or pursuant to a statute, regulation, or ordinance now in existence or which may in the future be enacted or recognized, including, but not limited to, the following Claims:

●  Claims for fraud, promissory estoppel, fraudulent inducement of contract or breach of contract or contractual obligation, whether alleged contract or obligation be oral, written, or express or implied by fact or law;

- Claims for wrongful termination of employment, violation of public policy and constructive discharge, infliction of emotional distress, misrepresentation, interference with contract or prospective economic advantage, defamation, unfair business practices, and any other tort or tort−like causes of action relating to or arising from the employment relationship or the formation or termination thereof;
- Claims for discrimination, harassment or retaliation, whether on the basis of age, sex, race, national origin, religion, disability or any other unlawful basis, under any and all federal, state, or local statutes, regulations, rules, ordinances or common law, including but not limited to Title VII of the Civil Rights Act of 1964, the Civil Rights Acts of 1866 and 1991, the Age Discrimination in Employment Act of 1967, the Older Workers Benefit Protection Act of 1990, the Rehabilitation Act of 1973, the Americans with Disabilities Act of 1990, the Family and Medical Leave Act of 1993, and including claims under the Fair Labor Standards Act of 1938, the Equal Pay Act of 1963, Section 1981 of the Civil Rights Act, the Sarbanes−Oxley Act of 2002 and the Worker Adjustment and Retraining Notification Act.
- Claims for non−payment or incorrect payment of wages, compensation commissions, bonuses, severance, employee fringe benefits, stock options and the like, penalties and restitution, whether such claims be pursuant to alleged express or implied contract or obligation, equity, and any federal, state, or local statutes, regulations, rules, ordinances or common law concerning wages, compensation or employee benefits.
- Claims arising out of or relating to the grant, exercise, vesting and/or issuance of equity in MAXIM or options to purchase equity in MAXIM.

The non−exhaustive list of Claims above (collectively "Covered Claims") are subject to arbitration pursuant to the terms of this Agreement, and MAXIM and EMPLOYEE hereby forever waive and give up the right to a judicial forum for the resolution of such Covered Claims. EMPLOYEE and MAXIM understand that this means they are giving up the right to have any Covered Claims decided by a judge or jury.

b)  <u>Claims not covered by this agreement to arbitrate</u>

Notwithstanding the above, EMPLOYEE and MAXIM agree that the following disputes and claims are not covered by this Agreement and shall therefore be resolved in any appropriate forum as required by the laws then in effect:

- Claims for workers' compensation benefits, unemployment insurance, or state or federal disability insurance;
- Any criminal complaint or proceeding;
- Claims under the National Labor Relations Act, as amended, that fall within the exclusive jurisdiction of the National Labor Relations Board;
- Claims for benefits under a plan that is governed by Employee Retirement Income Security Act of 1974 ("ERISA");
- Any individual claims EMPLOYEE may have against MAXIM or that MAXIM may have against EMPLOYEE for temporary or preliminary or permanent injunctive relief (including a temporary restraining order) which are based upon claims of unfair competition and/or the use and/or unauthorized disclosure of trade secrets or other confidential information are not subject to the terms of this agreement; EMPLOYEE or MAXIM, therefore, may seek and obtain appropriate injunctive relief from a court or other tribunal for such claims; and
- Any other dispute or claim that has been expressly excluded from arbitration by statute, regulation or state law that is not preempted by the Federal Arbitration Act.

Nothing in this Agreement should be interpreted as restricting or prohibiting  EMPLOYEE from filing a charge or complaint with the U.S. Equal Employment Opportunity Commission, the National Labor Relations Board, the Department of Labor, the Occupational Safety and Health Commission, the Securities and Exchange Commission, any other federal, state, or local administrative agency charged with investigating and/or prosecuting complaints under any applicable federal, state or municipal law or regulation; however, any Covered Claim that is not finally resolved through the agency proceedings must be submitted to arbitration in accordance with this agreement.  A federal, state, or local agency would also be entitled to investigate the charge in accordance with applicable law.

c)  <u>Arbitration Terms and Procedures</u>

 The terms, procedures and rules that regulate the mutual agreement to arbitrate disputes and claims are set forth in Attachment A and are incorporated herein by reference.

13.  **MODIFICATION**:  The Agreement supersedes any prior agreement between the parties including but not limited to any prior agreement concerning the subject matter of dispute resolution.  This Agreement may only be modified, revoked and/or terminated by a subsequent written agreement signed by the EMPLOYEE and a Vice President of MAXIM which specifically states the parties' intent to modify, revoke and/or terminate this Agreement or by an agreement signed by a designated officer of MAXIM.  The parties hereto understand that this Agreement shall remain in effect not withstanding any job change or job assignment by EMPLOYEE within MAXIM or its organization.

14.  **TERMINATION**:  Paragraphs 4 through 15, inclusive of this Agreement will survive the termination of EMPLOYEE's employment with MAXIM, as well as the termination or expiration of any benefit of such employment.  In the event that EMPLOYEE's employment with MAXIM is severed or terminated and EMPLOYEE is subsequently re−employed by MAXIM, this Agreement will remain in full force and effect during such subsequent employment and will survive the termination of such subsequent employment.

15.  <u>**ENTIRE AGREEMENT**</u>:  This Agreement and Attachment A represent the entire agreement between the parties with respect to the

subject matter covered by this Agreement. This Agreement supersedes any and all prior agreements or understandings, oral or written between the parties hereto pertaining to the subject matter covered by this Agreement, and may not be changed orally. EMPLOYEE consents and agrees that MAXIM may assign this Agreement to any subsidiary, parent, affiliate or successor of MAXIM, or to any transferee of all of the assets of MAXIM, and such assignment shall not, in and of itself, constitute a termination of the EMPLOYEE's employment hereunder.  EMPLOYEE acknowledges that the covenants and conditions of this Agreement are reasonable and fair. EMPLOYEE further recognizes that the restrictions and conditions contained herein are necessary for the protection of MAXIM's business.

EMPLOYEE ACKNOWLEDGES THAT:

EMPLOYEE HAS CAREFULLY READ THIS AGREEMENT AND UNDERSTANDS THE TERMS OF THIS AGREEMENT.  THIS AGREEMENT IS BEING SIGNED VOLUNTARILY.  IN ENTERING INTO THIS AGREEMENT, EMPLOYEE IS NOT RELYING ON ANY PROMISES OR REPRESENTATIONS BY MAXIM EXCEPT THOSE CONTAINED IN THIS AGREEMENT.

EMPLOYEE HAS BEEN GIVEN THE OPPORTUNITY TO DISCUSS THIS AGREEMENT WITH PRIVATE LEGAL COUNSEL AND HAS EXERCISED THAT OPPORTUNITY TO THE EXTENT EMPLOYEE WISHES TO DO SO.


_____
Maxim Representative
MAXIM HEALTHCARE SERVICES, INC.:


_____
Date

EMPLOYEE:


Jerome Charles                                                    Jerome Charles
_____          _____
**(Print Name)**                                              **(Signature)**

1/18/16
_____
Date


                                                                                    ATTACHMENT A
**ARBITRATION TERMS AND PROCEDURES**

    a)   Final and Binding Arbitration

    EMPLOYEE and MAXIM understand and agree that the arbitration of any and all existing or future disputes and claims under this Agreement shall be instead of a court trial before a judge and/or a jury.  EMPLOYEE and MAXIM also understand and agree that, by signing this Agreement, they are expressly waiving any and all rights to a trial before a judge and/or a jury regarding any disputes and claims which they now have or which they may in the future have that are subject to arbitration under this Agreement.  EMPLOYEE and MAXIM also understand and agree that the arbitrator's decision will be final and binding on both MAXIM and EMPLOYEE, subject to review on the grounds set forth in the Federal Arbitration Act.

    b)   Class, Collective, or Representative Action Waiver

    To the extent permitted by law, all covered claims under this Agreement must be brought in the parties' individual capacity, and not as a plaintiff or class member in any purported class, collective or representative action or proceeding.  No claims may be brought or maintained on a class, collective or representative basis either in court or in arbitration.  All such claims will be decided on an individual basis in arbitration pursuant to this Agreement.  The parties expressly waive any right with respect to any Covered Claims to submit, initiate, or participate in a representative capacity or as a plaintiff, claimant or member in a class action, collective action, or other representative or joint action, regardless of whether the action is filed in arbitration or in court.  If, for any reason, the waiver of any ability to initiate or maintain a claim as a class, collective or representative action is found to be unenforceable or invalid, then any such putative class, collective, or representative action claim shall be litigated and decided in a court of competent jurisdiction, and not in arbitration.  Any issue concerning the enforceability or validity of this waiver must be decided by a court of competent jurisdiction, and not by an arbitrator.  Claims may not be joined or consolidated in arbitration with Claims brought by other individual(s), and no damages or penalties may be sought or recovered on behalf of other individuals, unless agreed to in writing by all parties.

    The arbitrator's authority to resolve disputes and make awards under this Agreement is limited to disputes between:  (i) EMPLOYEE and

MAXIM; and (ii) EMPLOYEE and any current or former officers, directors, employees and agents, if such individual is sued for conduct arising out of their employment with MAXIM.  No arbitration award or decision will have any preclusive effect as to issues or claims in any dispute with anyone who is not a named party to the arbitration.

Notwithstanding the foregoing, EMPLOYEE individually or on behalf of others, has the right to challenge the validity of this waiver on such grounds as may exist in law or equity for the revocation of any contract, and MAXIM will not discipline, discharge or engage in any retaliatory action against such EMPLOYEE in the event he/she chooses to challenge the validity of this waiver or engage in any other protected concerted activity under Section 7 of the National Labor Relations Act.  However, MAXIM reserves the right to attempt to enforce this waiver in any appropriate forum.

c)  Arbitration Procedures

EMPLOYEE and MAXIM understand and agree that arbitration pursuant to this Agreement to arbitrate shall be conducted before a single, neutral arbitrator of the American Arbitration Association ("AAA") (unless the Parties agree upon another mutually acceptable arbitrator, in which case the arbitration will be conducted before such mutually acceptable arbitrator) in accordance with and selected pursuant to the then−current rules and procedures of the Employment Arbitration Rules of the AAA to the extent not inconsistent with the terms of this Agreement; provided, however, that the Arbitrator shall allow the discovery authorized under the Federal Rules of Civil Procedure or any other discovery required by state law in arbitration proceedings.  Also, to the extent that any of the Employment Arbitration Rules or anything in this Agreement conflicts with any arbitration procedures required by law, the arbitration procedures required by law shall govern.  EMPLOYEE and MAXIM also agree that nothing in this Agreement relieves either of them from any obligation they may have to exhaust certain administrative remedies before arbitrating any claims or disputes under this Agreement.

The Arbitrator shall have jurisdiction to hear and rule on pre−hearing disputes and is authorized to hold pre−hearing conferences by telephone or in person, as the Arbitrator deems necessary.  The Arbitrator shall have the authority to entertain a motion to dismiss and/or a motion for summary judgment by any party.

Either party may obtain a court reporter to provide a stenographic record of proceedings.

Either party, upon request at the close of hearing, shall be given leave to file a post−hearing brief.  The time for filing such a brief shall be set by the Arbitrator.

The Arbitrator shall render a written award and opinion with the essential findings and conclusions on which the award is based.

Either party shall have the right, within 20 days of issuance of the Arbitrator's opinion, to file with the Arbitrator a motion to reconsider (accompanied by a supporting brief), and the other party shall have 20 days from the date of the motion to respond.  The Arbitrator thereupon shall reconsider the issues raised by the motion and, promptly, either confirm or change the decision, which (except as provided by this Agreement) shall then be final and conclusive upon the parties.

The most current Employment Arbitration Rules of the AAA may be found on the Internet at www.adr.org.  A printed copy of these rules is also available from MAXIM upon request.

d)  Damages and Other Relief

Any Covered Claims arbitrated hereunder are subject to the same limitations regarding damages and ability to obtain other relief, and affirmative rights to individual damages and other relief, as would have applied if the claim was made, and proceeded, in a judicial forum.

e)  Place of Arbitration

The parties understand and agree that the arbitration shall take place in the state in which the EMPLOYEE currently or last worked for MAXIM, unless otherwise agreed by the parties.

f)  Time limitation on Filing Claims

The parties understand and agree that any demand for arbitration by either the EMPLOYEE or MAXIM shall be filed within the statute of limitation that is applicable to the claim(s) upon which arbitration is sought or required.  Any failure to file a demand for arbitration within this time frame and according to these rules shall constitute a waiver of all rights to raise any claim in any forum arising out of any dispute that was subject to arbitration. All such untimely claims shall be deemed barred by the applicable statute of limitations.  The date of the filing is the date on which written notice by the party seeking arbitration stating that party's intention to arbitrate is received by AAA.

In the event EMPLOYEE files a demand for arbitration with AAA, the EMPLOYEE must serve MAXIM with a copy of the demand within ten (10) days of filing with AAA, directing the copy to MAXIM's registered agent.

In the event MAXIM files a demand for arbitration with AAA, MAXIM must serve the EMPLOYEE with a copy of the demand within ten (10) days of filing with AAA, directing the copy to the EMPLOYEE at the last address provided by the EMPLOYEE, in writing, to MAXIM.

All service hereunder must be made by United States certified or registered mail, return receipt requested.

g)   Governing law

The parties agree that MAXIM is engaged in transactions involving interstate commerce.  They understand and agree that this is an agreement to arbitrate under the Federal Arbitration Act.  To the extent not inconsistent with the Federal Arbitration Act, this agreement to arbitrate and its interpretation, validity, construction, enforcement and performance, as well as disputes and/or claims arising under this Agreement, shall be governed by the laws of the State of Maryland.

h)   Judicial Enforcement

Either EMPLOYEE or MAXIM may bring an action in any court of competent jurisdiction to compel arbitration under this Agreement.  If provided for by the laws of such jurisdiction, either EMPLOYEE or MAXIM may bring an action in any court of competent jurisdiction to enforce or vacate an arbitration award in accordance with such laws.

i)   Costs of arbitration

The parties understand and agree that MAXIM will bear the arbitrator's fee and any other type of expense or cost that the EMPLOYEE would not be required to bear if the dispute or claim was brought in court, as well as any other expense or cost that is unique to arbitration.  Notwithstanding the above, if EMPLOYEE is the party initiating the claim, EMPLOYEE is responsible for contributing an amount equal to the filing fee to initiate a claim in the court of general jurisdiction in the state in which EMPLOYEE is (or was last) employed by MAXIM.  MAXIM and EMPLOYEE shall each pay their own attorneys' fees incurred in connection with the arbitration, and the arbitrator will not have authority to award attorneys' fees unless a statute or contract at issue in the dispute authorizes the award of attorneys' fees to the prevailing party, in which case the arbitrator shall have the authority to make an award of attorneys' fees as required or permitted by applicable law.  If there is a dispute as to whether MAXIM or EMPLOYEE is the prevailing party in the arbitration, the Arbitrator will decide this issue.

In addition, to the extent that it results in a greater recovery for EMPLOYEE, MAXIM agrees to waive the limitations on the recovery of expert fees as an item of costs imposed by 28 U.S.C. § 1821(b) or any similar statute or rule for reasonable expert fees incurred by EMPLOYEE in any arbitration in which (i) EMPLOYEE prevails on any covered claim in an amount greater than the amount of any prior offer of settlement made by MAXIM, and (ii) such reasonable expert fees were incurred for an expert report or expert testimony that was admitted into evidence and relied upon by the arbitrator in rendering the award on such claims.

# Exhibit B

, #

## EMPLOYMENT AND MUTUAL ARBITRATION AGREEMENT

This EMPLOYMENT AND MUTUAL ARBITRATION AGREEMENT (this "Agreement"), made this , by and between MAXIM HEALTHCARE SERVICES, INC. or any affiliated company and/or any of its parents, subsidiaries, affiliates, agents, officers, directors, successors, agents, assigns, employees (hereinafter referred to as "MAXIM"), and , hereinafter referred to as "EMPLOYEE." MAXIM and EMPLOYEE may be collectively referred to as the "parties."

WHEREAS, MAXIM is engaged in the highly competitive business of recruiting and providing medical and/or other personnel on a temporary or permanent basis to nursing homes, hospitals, other medical and healthcare facilities, and home care services, and other lines of business MAXIM engages in, enters, or prepares to enter during EMPLOYEE's employment with MAXIM (collectively "MAXIM's Business");

WHEREAS, the parties recognize and acknowledge that in the performance of these services, and in the performance of this Agreement, EMPLOYEE will acquire certain non–public trade secrets, confidential information and information concerning customer or client relationships of MAXIM, the public disclosure of which would cause financial loss and irreparable injury to MAXIM;

WHEREAS, the parties desire to resolve any dispute or claim under this Agreement or that otherwise may arise between them by arbitration and not by a court or jury;

NOW THEREFORE, in consideration of the foregoing and the mutual covenants and restrictions contained herein, each of the parties intending to be legally bound agree as follows:

1. **AGREEMENT OF EMPLOYMENT**:  MAXIM agrees to employ EMPLOYEE in the position of , at an annual base salary of $ paid in weekly installments (or such other method as MAXIM may determine in its sole discretion from time to time).  EMPLOYEE agrees that employment and/or the payments described above are adequate and sufficient consideration for the promises of EMPLOYEE herein.

The scope of EMPLOYEE's employment, including duties, assignment, position and all responsibilities, shall be as established by MAXIM from time to time, whether orally or in writing. The parties agree that EMPLOYEE shall devote his/her full time, attention and energies to the business of MAXIM and shall not enter into any other business activity that interferes with EMPLOYEE's duties and responsibilities for MAXIM.

2. **TERM OF EMPLOYMENT**:  The term of employment shall continue until terminated by either party. EMPLOYEE agrees and expressly understands that the term of employment under this Agreement is "at will," with no certain term of employment being offered or promised. It is further understood that either EMPLOYEE or MAXIM may terminate EMPLOYEE's employment at any time, with or without cause.

If EMPLOYEE's employment with MAXIM is terminated by either EMPLOYEE or MAXIM, the parties agree that the terms of Paragraphs 4 through 13 of this Agreement shall survive.

3. **INDEMNIFICATION**: EMPLOYEE represents and warrants that EMPLOYEE's employment with MAXIM will not violate the lawful terms and conditions of any agreements entered into by EMPLOYEE prior to or during EMPLOYEE's employment with MAXIM. EMPLOYEE agrees to indemnify and hold MAXIM harmless from any and all claims arising out of any breach of any such agreement.

4. **AGREEMENT NOT TO DIVULGE CONFIDENTIAL INFORMATION**:  EMPLOYEE agrees that, except as required by the proper performance of his/her duties for MAXIM or authorized by law, he/she shall not divulge any Confidential Information or Trade Secrets concerning MAXIM or any MAXIM clients, customers, employees, or Healthcare Employees ("Healthcare Employee" means an employee of MAXIM who is or was employed to work at customers or clients of MAXIM) to any other person, entity or company besides MAXIM. For purposes of this Agreement, "Confidential Information" shall mean information not generally known by MAXIM's competitors or the general public concerning MAXIM, including but not limited to: its financial affairs, sales and marketing strategy, acquisition plan, pricing and costs; its customers' names, addresses, telephone numbers, contact persons, staffing requirements, margin tolerances regarding pricing, and the names, addresses, telephone numbers, skill sets, availability and wage rates of its temporary medical personnel. "Trade Secrets" shall mean information that MAXIM takes measures to keep secret and that gives MAXIM an advantage over its competitors, and includes but is not limited to: sales, recruiting, pricing and marketing techniques, sales and recruiting manuals, forms for acquiring and recording information, financial controls, and management practices, procedures and processes.

5. **COVENANT NOT TO COMPETE**:  EMPLOYEE agrees that upon the termination of his/her employment, whether by MAXIM or EMPLOYEE and whether with or without cause, for a period of eighteen (18) months thereafter, EMPLOYEE shall not directly or indirectly engage in or prepare to engage in, or be employed by, any business that is engaging in or preparing to engage in any aspect of MAXIM's Business in which EMPLOYEE performed work during the two (2) year period preceding his/her termination of employment, within a radius of fifty (50) miles of the office in which EMPLOYEE worked at the time EMPLOYEE's employment terminated or any other office in which EMPLOYEE worked during the two (2) years preceding termination of employment, or as much geographic territory as a court of competent jurisdiction deems reasonable. The prohibitions contained in this Paragraph shall extend to (i) activities undertaken by EMPLOYEE directly on EMPLOYEE's own behalf, and to (ii) activities undertaken by EMPLOYEE indirectly through any individual, corporation or entity which

undertakes such prohibited activities with EMPLOYEE's assistance and in or with respect to which EMPLOYEE is an owner, officer, director, trustee, shareholder, creditor, employee, agent, partner or consultant or participates in some other capacity.

6. **NO CLIENT SOLICITATION**: For a period of eighteen (18) months after EMPLOYEE's termination of employment for whatever reason, EMPLOYEE agrees not to on behalf of him/herself or any other person or entity, approach, contact, solicit or induce any individual, corporation or other entity which is a client or customer of MAXIM, about which EMPLOYEE obtained knowledge by reason of EMPLOYEE's employment by MAXIM to:
    (i) enter into any business relationship with a client or customer of MAXIM if the business relationship is competitive with any aspect of MAXIM's Business in which EMPLOYEE worked during the two (2) year period preceding termination of employment, or
    (ii) reduce or eliminate the business such client or customer conducts with MAXIM.

7. **NO EMPLOYEE SOLICITATION**: For a period of eighteen (18) months after EMPLOYEE's termination of employment for whatever reason, EMPLOYEE agrees not to, on behalf of him/herself or any other person or entity, approach, contact, solicit or induce any person who has been an internal employee or an external healthcare employee of MAXIM within the two (2) year period prior to the date of termination of EMPLOYEE's employment and about whom EMPLOYEE obtained knowledge by reason of EMPLOYEE's employment with MAXIM:
    (i) to cease working for MAXIM at clients or customers of MAXIM, or
    (ii) to refrain from beginning work for MAXIM at clients or customers of MAXIM, or
    (iii) to provide services to any individual, corporation or entity whose business is competitive with MAXIM.

8. **RETURN OF RECORDS**: EMPLOYEE agrees, upon termination of his/her employment with MAXIM for whatever reason, to return to MAXIM all original and copies of records, papers, and other property (whether on paper, computer discs or other form) belonging or pertaining to MAXIM.

9. **SITE OF AGREEMENT**: This Agreement is being entered into in the State of Maryland and shall be governed by and construed, interpreted and enforced in accordance with the laws of the State of Maryland, without giving effect to the principles of conflicts of laws except that Paragraph 12 and Attachment A is governed by the Federal Arbitration Act and by the laws of the State of Maryland.

10. **REMEDIES; DAMAGES**: EMPLOYEE recognizes that irreparable damage will result to MAXIM in the event of the violation of any covenant contained in Paragraphs 4, 5, 6, and 7 hereof made by him/her and further recognizes and acknowledges that it would be difficult to ascertain the damages arising from a violation by him/her of the covenants contained in Paragraphs 4, 5, 6 and 7 hereof. EMPLOYEE agrees that as damages arising as a consequence of a violation of the covenants contained in Paragraphs 4, 5, 6 and 7 hereof, EMPLOYEE shall pay to MAXIM an amount equal to one hundred percent (100%) of the gross profit, or twenty–five percent (25%) of the gross sales, whatever amount is greater, resulting from business generated by EMPLOYEE, either directly or indirectly, on his/her own account or as agent, owner, officer, director, trustee, creator, partner, consultant, stockholder, employer, employee, or otherwise for or in conjunction with any other person or entity, through conduct in violation of Paragraphs 4, 5, 6 or 7 hereof. Such liquidated damages amount shall be in addition to any other legal or equitable relief that may be available to MAXIM for such breach.

11. **SEVERABILITY**: If any term, provision, or condition of this Agreement, or its application to any circumstance or party, shall, to any extent, be invalid or unenforceable in any jurisdiction, the remainder of this Agreement, or the application of such term, provision, or condition to such circumstance or party (other than those as to which it is held invalid or unenforceable) shall not be affected and each remaining term, provision, or condition of this Agreement shall be valid and enforceable to the fullest extent permitted by applicable law. Any such invalidation or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction. Without limiting the foregoing, if a court of competent jurisdiction or arbitrator should determine that any of the restrictions contained in Paragraph 4, 5, 6 or 7 hereof are unreasonable in terms of scope, duration, geographic area or otherwise, such provision shall be deemed reformed to the minimum extent necessary such that such restriction shall be rendered enforceable.

12. **MUTUAL ARBITRATION OF DISPUTES**: MAXIM believes that if any disputes, claims, complaints or controversies ("Claim(s)") related to an employee's or former employee's employment currently exist or arise, it is in the best interest of both the individual and MAXIM to resolve the Claim without litigation. Most Claims are resolved internally through MAXIM's complaint processes. When such Claims are not resolved internally, EMPLOYEE and MAXIM agree to resolve such Claims through final and binding arbitration as described below and in Attachment A. For purposes of this Paragraph 12, the term "MAXIM" mean MAXIM Healthcare Services, Inc. and its parents, subsidiaries, affiliates, successors, assigns, agents, officers, directors, and employees.

    a)  Claims covered by this agreement to arbitrate

EMPLOYEE and MAXIM agree to arbitrate before a neutral arbitrator, exclusively on an individual basis (and not on a class, collective or representative basis) any and all existing or future Claims between EMPLOYEE and MAXIM, that arise out of or relate to EMPLOYEE's recruitment, application, employment or separation from employment with MAXIM, including claims involving any current or former director, officer, shareholder, agent or employee of MAXIM, whether the disputes or claims arise under common law, or in tort, contract, or pursuant to a statute, regulation, or ordinance now in existence or which may in the future be enacted or recognized, including, but not limited to, the following Claims:

    • Claims for fraud, promissory estoppel, fraudulent inducement of contract or breach of contract or contractual obligation, whether such alleged contract or obligation be oral, written, or express or implied by fact or law;

- Claims for wrongful termination of employment, violation of public policy and constructive discharge, infliction of emotional distress, misrepresentation, interference with contract or prospective economic advantage, defamation, unfair business practices, and any other tort or tort−like causes of action relating to or arising from the employment relationship or the formation or termination thereof;
- Claims for discrimination, harassment or retaliation, whether on the basis of age, sex, race, national origin, religion, disability or any other unlawful basis, under any and all federal, state, or local statutes, regulations, rules, ordinances or common law, including but not limited to Title VII of the Civil Rights Act of 1964, the Civil Rights Acts of 1866 and 1991, the Age Discrimination in Employment Act of 1967, the Older Workers Benefit Protection Act of 1990, the Rehabilitation Act of 1973, the Americans with Disabilities Act of 1990, the Family and Medical Leave Act of 1993, and including claims under the Fair Labor Standards Act of 1938, the Equal Pay Act of 1963, Section 1981 of the Civil Rights Act, the Sarbanes−Oxley Act of 2002 and the Worker Adjustment and Retraining Notification Act.
- Claims for non−payment or incorrect payment of wages, compensation commissions, bonuses, severance, employee fringe benefits, stock options and the like, penalties and restitution, whether such claims be pursuant to alleged express or implied contract or obligation, equity, and any federal, state, or local statutes, regulations, rules, ordinances or common law concerning wages, compensation or employee benefits.
- Claims arising out of or relating to the grant, exercise, vesting and/or issuance of equity in MAXIM or options to purchase equity in MAXIM.

The non−exhaustive list of Claims above (collectively "Covered Claims") are subject to arbitration pursuant to the terms of this Agreement, and MAXIM and EMPLOYEE hereby forever waive and give up the right to a judicial forum for the resolution of such Covered Claims. EMPLOYEE and MAXIM understand that this means they are giving up the right to have any Covered Claims decided by a judge or jury.

   b)   Claims not covered by this agreement to arbitrate

Notwithstanding the above, EMPLOYEE and MAXIM agree that the following disputes and claims are not covered by this Agreement and shall therefore be resolved in any appropriate forum as required by the laws then in effect:

- Claims for workers' compensation benefits, unemployment insurance, or state or federal disability insurance;
- Any criminal complaint or proceeding;
- Claims under the National Labor Relations Act, as amended, that fall within the exclusive jurisdiction of the National Labor Relations Board;
- Claims for benefits under a plan that is governed by Employee Retirement Income Security Act of 1974 ("ERISA");
- Any individual claims EMPLOYEE may have against MAXIM or that MAXIM may have against EMPLOYEE for temporary or preliminary or permanent injunctive relief (including a temporary restraining order) which are based upon claims of unfair competition and/or the use and/or unauthorized disclosure of trade secrets or other confidential information are not subject to the terms of this agreement; EMPLOYEE or MAXIM, therefore, may seek and obtain appropriate injunctive relief from a court or other tribunal for such claims; and
- Any other dispute or claim that has been expressly excluded from arbitration by statute, regulation or state law that is not preempted by the Federal Arbitration Act.

Nothing in this Agreement should be interpreted as restricting or prohibiting  EMPLOYEE from filing a charge or complaint with the U.S. Equal Employment Opportunity Commission, the National Labor Relations Board, the Department of Labor, the Occupational Safety and Health Commission, the Securities and Exchange Commission, any other federal, state, or local administrative agency charged with investigating and/or prosecuting complaints under any applicable federal, state or municipal law or regulation; however, any Covered Claim that is not finally resolved through the agency proceedings must be submitted to arbitration in accordance with this agreement.  A federal, state, or local agency would also be entitled to investigate the charge in accordance with applicable law.

   c)   Arbitration Terms and Procedures

   The terms, procedures and rules that regulate the mutual agreement to arbitrate disputes and claims are set forth in Attachment A and are incorporated herein by reference.

   13.   **MODIFICATION:**  The Agreement supersedes any prior agreement between the parties including but not limited to any prior agreement concerning the subject matter of dispute resolution.  This Agreement may only be modified, revoked and/or terminated by a subsequent written agreement signed by the EMPLOYEE and a Vice President of MAXIM which specifically states the parties' intent to modify, revoke and/or terminate this Agreement or by an agreement signed by a designated officer of MAXIM.  The parties hereto understand that this Agreement shall remain in effect not withstanding any job change or job assignment by EMPLOYEE within MAXIM or its organization.

   14.   **TERMINATION:**  Paragraphs 4 through 15, inclusive of this Agreement will survive the termination of EMPLOYEE's employment with MAXIM, as well as the termination or expiration of any benefit of such employment.  In the event that EMPLOYEE's employment with MAXIM is severed or terminated and EMPLOYEE is subsequently re−employed by MAXIM, this Agreement will remain in full force and effect during such subsequent employment and will survive the termination of such subsequent employment.

   15.   **ENTIRE AGREEMENT:**  This Agreement and Attachment A represent the entire agreement between the parties with respect to the

subject matter covered by this Agreement. This Agreement supersedes any and all prior agreements or understandings, oral or written between the parties hereto pertaining to the subject matter covered by this Agreement, and may not be changed orally. EMPLOYEE consents and agrees that MAXIM may assign this Agreement to any subsidiary, parent, affiliate or successor of MAXIM, or to any transferee of all of the assets of MAXIM, and such assignment shall not, in and of itself, constitute a termination of the EMPLOYEE's employment hereunder. EMPLOYEE acknowledges that the covenants and conditions of this Agreement are reasonable and fair. EMPLOYEE further recognizes that the restrictions and conditions contained herein are necessary for the protection of MAXIM's business.

EMPLOYEE ACKNOWLEDGES THAT:

EMPLOYEE HAS CAREFULLY READ THIS AGREEMENT AND UNDERSTANDS THE TERMS OF THIS AGREEMENT. THIS AGREEMENT IS BEING SIGNED VOLUNTARILY. IN ENTERING INTO THIS AGREEMENT, EMPLOYEE IS NOT RELYING ON ANY PROMISES OR REPRESENTATIONS BY MAXIM EXCEPT THOSE CONTAINED IN THIS AGREEMENT.

EMPLOYEE HAS BEEN GIVEN THE OPPORTUNITY TO DISCUSS THIS AGREEMENT WITH PRIVATE LEGAL COUNSEL AND HAS EXERCISED THAT OPPORTUNITY TO THE EXTENT EMPLOYEE WISHES TO DO SO.

_____
Maxim Representative
MAXIM HEALTHCARE SERVICES, INC.:

04/28/2017
_____
Date

EMPLOYEE:


Jerome Charles                             Jerome Charles
_____          _____
(Print Name)                              (Signature)

4/19/17
_____
Date


ATTACHMENT A

### ARBITRATION TERMS AND PROCEDURES

a) <u>Final and Binding Arbitration</u>

EMPLOYEE and MAXIM understand and agree that the arbitration of any and all existing or future disputes and claims under this Agreement shall be instead of a court trial before a judge and/or a jury. EMPLOYEE and MAXIM also understand and agree that, by signing this Agreement, they are expressly waiving any and all rights to a trial before a judge and/or a jury regarding any disputes and claims which they now have or which they may in the future have that are subject to arbitration under this Agreement. EMPLOYEE and MAXIM also understand and agree that the arbitrator's decision will be final and binding on both MAXIM and EMPLOYEE, subject to review on the grounds set forth in the Federal Arbitration Act.

b) <u>Class, Collective, or Representative Action Waiver</u>

To the extent permitted by law, all covered claims under this Agreement must be brought in the parties' individual capacity, and not as a plaintiff or class member in any purported class, collective or representative action or proceeding. No claims may be brought or maintained on a class, collective or representative basis either in court or in arbitration. All such claims will be decided on an individual basis in arbitration pursuant to this Agreement. The parties expressly waive any right with respect to any Covered Claims to submit, initiate, or participate in a representative capacity or as a plaintiff, claimant or member in a class action, collective action, or other representative or joint action, regardless of whether the action is filed in arbitration or in court. If, for any reason, the waiver of any ability to initiate or maintain a claim as a class, collective or representative action is found to be unenforceable or invalid, then any such putative class, collective, or representative action claim shall be litigated and decided in a court of competent jurisdiction, and not in arbitration. Any issue concerning the enforceability or validity of this waiver must be decided by a court of competent jurisdiction, and not by an arbitrator. Claims may not be joined or consolidated in arbitration with Claims brought by other individual(s), and no damages or penalties may be sought or recovered on behalf of other individuals, unless agreed to in writing by all parties.

The arbitrator's authority to resolve disputes and make awards under this Agreement is limited to disputes between: (i) EMPLOYEE and

MAXIM; and (ii) EMPLOYEE and any current or former officers, directors, employees and agents, if such individual is sued for conduct arising out of their employment with MAXIM. No arbitration award or decision will have any preclusive effect as to issues or claims in any dispute with anyone who is not a named party to the arbitration.

Notwithstanding the foregoing, EMPLOYEE individually or on behalf of others, has the right to challenge the validity of this waiver on such grounds as may exist in law or equity for the revocation of any contract, and MAXIM will not discipline, discharge or engage in any retaliatory action against such EMPLOYEE in the event he/she chooses to challenge the validity of this waiver or engage in any other protected concerted activity under Section 7 of the National Labor Relations Act. However, MAXIM reserves the right to attempt to enforce this waiver in any appropriate forum.

c)   Arbitration Procedures

EMPLOYEE and MAXIM understand and agree that arbitration pursuant to this Agreement to arbitrate shall be conducted before a single, neutral arbitrator of the American Arbitration Association ("AAA") (unless the Parties agree upon another mutually acceptable arbitrator, in which case the arbitration will be conducted before such mutually acceptable arbitrator) in accordance with and selected pursuant to the then-current rules and procedures of the Employment Arbitration Rules of the AAA to the extent not inconsistent with the terms of this Agreement; provided, however, that the Arbitrator shall allow the discovery authorized under the Federal Rules of Civil Procedure or any other discovery required by state law in arbitration proceedings. Also, to the extent that any of the Employment Arbitration Rules or anything in this Agreement conflicts with any arbitration procedures required by law, the arbitration procedures required by law shall govern. EMPLOYEE and MAXIM also agree that nothing in this Agreement relieves either of them from any obligation they may have to exhaust certain administrative remedies before arbitrating any claims or disputes under this Agreement.

The Arbitrator shall have jurisdiction to hear and rule on pre-hearing disputes and is authorized to hold pre-hearing conferences by telephone or in person, as the Arbitrator deems necessary. The Arbitrator shall have the authority to entertain a motion to dismiss and/or a motion for summary judgment by any party.

Either party may obtain a court reporter to provide a stenographic record of proceedings.

Either party, upon request at the close of hearing, shall be given leave to file a post-hearing brief. The time for filing such a brief shall be set by the Arbitrator.

The Arbitrator shall render a written award and opinion with the essential findings and conclusions on which the award is based.

Either party shall have the right, within 20 days of issuance of the Arbitrator's opinion, to file with the Arbitrator a motion to reconsider (accompanied by a supporting brief), and the other party shall have 20 days from the date of the motion to respond. The Arbitrator thereupon shall reconsider the issues raised by the motion and, promptly, either confirm or change the decision, which (except as provided by this Agreement) shall then be final and conclusive upon the parties.

The most current Employment Arbitration Rules of the AAA may be found on the Internet at www.adr.org. A printed copy of these rules is also available from MAXIM upon request.

d)   Damages and Other Relief

Any Covered Claims arbitrated hereunder are subject to the same limitations regarding damages and ability to obtain other relief, and affirmative rights to individual damages and other relief, as would have applied if the claim was made, and proceeded, in a judicial forum.

e)   Place of Arbitration

The parties understand and agree that the arbitration shall take place in the state in which the EMPLOYEE currently or last worked for MAXIM, unless otherwise agreed by the parties.

f)   Time limitation on Filing Claims

The parties understand and agree that any demand for arbitration by either the EMPLOYEE or MAXIM shall be filed within the statute of limitation that is applicable to the claim(s) upon which arbitration is sought or required. Any failure to file a demand for arbitration within this time frame and according to these rules shall constitute a waiver of all rights to raise any claim in any forum arising out of any dispute that was subject to arbitration. All such untimely claims shall be deemed barred by the applicable statute of limitations. The date of the filing is the date on which written notice by the party seeking arbitration stating that party's intention to arbitrate is received by AAA.

In the event EMPLOYEE files a demand for arbitration with AAA, the EMPLOYEE must serve MAXIM with a copy of the demand within ten (10) days of filing with AAA, directing the copy to MAXIM's registered agent.

In the event MAXIM files a demand for arbitration with AAA, MAXIM must serve the EMPLOYEE with a copy of the demand within ten (10) days of filing with AAA, directing the copy to the EMPLOYEE at the last address provided by the EMPLOYEE, in writing, to MAXIM.

All service hereunder must be made by United States certified or registered mail, return receipt requested.

g)   Governing law

The parties agree that MAXIM is engaged in transactions involving interstate commerce.  They understand and agree that this is an agreement to arbitrate under the Federal Arbitration Act.  To the extent not inconsistent with the Federal Arbitration Act, this agreement to arbitrate and its interpretation, validity, construction, enforcement and performance, as well as disputes and/or claims arising under this Agreement, shall be governed by the laws of the State of Maryland.

h)   Judicial Enforcement

Either EMPLOYEE or MAXIM may bring an action in any court of competent jurisdiction to compel arbitration under this Agreement.  If provided for by the laws of such jurisdiction, either EMPLOYEE or MAXIM may bring an action in any court of competent jurisdiction to enforce or vacate an arbitration award in accordance with such laws.

i)   Costs of arbitration

The parties understand and agree that MAXIM will bear the arbitrator's fee and any other type of expense or cost that the EMPLOYEE would not be required to bear if the dispute or claim was brought in court, as well as any other expense or cost that is unique to arbitration.  Notwithstanding the above, if EMPLOYEE is the party initiating the claim, EMPLOYEE is responsible for contributing an amount equal to the filing fee to initiate a claim in the court of general jurisdiction in the state in which EMPLOYEE is (or was last) employed by MAXIM.  MAXIM and EMPLOYEE shall each pay their own attorneys' fees incurred in connection with the arbitration, and the arbitrator will not have authority to award attorneys' fees unless a statute or contract at issue in the dispute authorizes the award of attorneys' fees to the prevailing party, in which case the arbitrator shall have the authority to make an award of attorneys' fees as required or permitted by applicable law.  If there is a dispute as to whether MAXIM or EMPLOYEE is the prevailing party in the arbitration, the Arbitrator will decide this issue.

In addition, to the extent that it results in a greater recovery for EMPLOYEE, MAXIM agrees to waive the limitations on the recovery of expert fees as an item of costs imposed by 28 U.S.C. § 1821(b) or any similar statute or rule for reasonable expert fees incurred by EMPLOYEE in any arbitration in which (i) EMPLOYEE prevails on any covered claim in an amount greater than the amount of any prior offer of settlement made by MAXIM, and (ii) such reasonable expert fees were incurred for an expert report or expert testimony that was admitted into evidence and relied upon by the arbitrator in rendering the award on such claims.

# Exhibit C

    🔍

Home   My Network   Jobs   Messaging   Notifications   Me ▾     Work ▾     <u>Try Premium for free</u>



↗   •••

# VP of Business Development

SnapNurse   Scottsdale, AZ (Hybrid)

💼 Full-time · Mid-Senior level

🏢 201-500 employees · Staffing and Recruiting

💡 See how you compare to 167 applicants. <u>Try Premium for free</u>

⊘ No longer accepting applications

## About the job

We are looking for a VP of Business Development for the Arizona, California, Oregon, and Washington regions, to join our fantastic team!

**Here's the SnapShot:**
At SnapNurse we aim to deliver great healthcare and workforce support to our communities through tech enabled innovation, and by supplying the best people to the right place, in the fastest time.

**Change the Game!**
Are you self-motivated, high performing, results driven, collaborative and love a challenge? The SnapNurse Sales Team is looking for a VP of Business Development who will hunt for new opportunities and successfully close out new business.

**Our team members are game changers. For your role on the team, you will:**
- Grow the business by developing new leads and contacts
- Research and prepare business strategy by analyzing your target market and industry trends
- Qualify leads and develop innovative program strategies to win business and achieve sales goals
- Responsible for increasing overall sales volume by developing key relationships with new accounts
- Ongoing management and development of sales pipeline
- Attend networking events and conferences to attract clients
- Manage sales process to close new business opportunities

**Live our SNAP values:**
SnapTime
Nurture growth and be a game changer
Act with care and kindness
Passion for our stakeholders - internal, customer, resident & clinician focused


We want each team member to be successful and we'll do our best to help you succeed. This includes making reasonable accommodations to enable individuals with disabilities to perform the essential functions of their jobs here at SnapNurse.

**What you bring to the team:**
- Bachelor's Degree required
- Minimum 5 years of sales experience, with 3 years in Healthcare Staffing;
- Proven strong, verbal, and written communication skills
- Strong organizational skills
- A winning and collaborative mindset

**Nice to Have:**
- Technology staffing experience

**What else?**
- Travel about 40%

See less ∧

**Set alert for similar jobs**

Vice President of Business Development, Scottsdale, AZ

🔔 Set alert

---

**Featured benefits**

- Medical insurance
- Vision insurance
- Dental insurance
- 401(k)
- Disability insurance

---

**About the company**

 **SnapNurse**
7,240 followers

+ Follow

Staffing & Recruiting • 201-500 employees • 743 on LinkedIn

SnapNurse is a technology platform that reimagines the future of healthcare staffing.

Whether your facility needs staff for short term contracts or same day shift fulfillment, we use machine learning algorithms to match the highest quality, fully crede ...show more

See more

---

More jobs



**Strategic Alliance Sales Director (CRE): Oracle**

PwC

Kansas City, MO

🕐 Be an early applicant

_____
1 week ago



**Vice President, Business Development (Remote/Virtual)**

Prudential Financial

Johnson County, KS

🕐 Be an early applicant

_____
1 week ago



**Global Head of Business Development, Healthcare and Li...**

NVIDIA

Santa Clara, CA

_____
1 week ago



**Head of Sales and Business Development**

ProAg

Lenexa, KS

_____
2 weeks ago



**Business Development Director**

Daniels Health

Minneapolis, MN

_____
1 week ago



**Director of Business Development**

TurningPoint Executive Search

San Diego, CA

_____
1 week ago



**Business Development Executive - Remote**

Underdog.io

New York, United States

New

See more jobs like this

---

**Get ahead with Premium Career**

Contact recruiters directly, see who's viewed your profile, stand out as a top applicant, and more.

 Millions of members use Premium

**Try Premium for free**

Looking for talent?   Post a job

LinkedIn

| | | | | Select Language |
|---|---|---|---|---|
| About | Accessibility | Talent Solutions | **Questions?** Visit our Help Center. | English (English) |
| Community Guidelines | Careers | Marketing Solutions | | |
| Privacy & Terms ⌄ | Ad Choices | Advertising | **Manage your account and privacy** Go to your Settings. | |
| Sales Solutions | Mobile | Small Business | | |
| Safety Center | | | | |

LinkedIn Corporation © 2023

# Exhibit D

# HUSCH BLACKWELL

Tyler C. Hibler
Partner

4801 Main Street, Suite 1000
Kansas City, MO 64112
Direct: 816.983.8325
Fax: 816.983.8080
tyler.hibler@huschblackwell.com

December 16, 2022

**Via Certified Mail**

Mr. Jerome Charles
4777 Balmoral St.
White Plains, MD 20695

      Re:      Breach of Post-Employment Obligations

Dear Mr. Charles:

      Our law firm represents your former employer, Maxim Healthcare Staffing Services, Inc. ("Maxim").  As you are aware, in consideration of your employment with Maxim, you executed the enclosed Employment and Mutual Arbitration Agreements ("Agreements").  *See* 2016 Agreement, attached as **Exhibit A**; *see also* 2017 Agreement, attached as **Exhibit B**.

      By entering into these Agreements, you agreed to be bound by express covenants during and after your employment with Maxim.  I am writing to remind you of these covenants.  You agreed to the following obligations:

      **Agreement Not to Divulge Confidential Information:** Employee agrees that, except as required by the proper performance of his/her duties for maxim or authorized by law, he/she shall not divulge any Confidential Information or Trade Secrets concerning Maxim or any Maxim clients, customers, employees, or Healthcare Employees ('Healthcare Employee' means an employee of Maxim who is or was employed to work at customers or clients of Maxim) to any other person, entity or company besides Maxim.

      **Covenant Not to Compete:** Employee agrees that upon the termination of his/her employment, whether by Maxim or employee and whether with or without case, for a period of eighteen (18) months thereafter, employee shall not directly or indirectly engage in or prepare to engage in, or be employed by, any business that is engaging in or preparing to engage in any aspect of Maxim's business in which employee performed work during the two (2) year period preceding his/her termination of employment, within a radius of fifty (50) miles of the office in which employee worked at the time employee's employment terminated or any other office in

# HUSCH BLACKWELL

December 16, 2022
Page 2

> which employee worked at the time employee's employment
> terminated or any other office in which employee worked during the
> two (2) years preceding termination of employment, or as much
> geographic territory as a court of competent jurisdiction deems
> reasonable.
>
> **No Client Solicitation:** For a period of eighteen (18) months after
> employee's termination of employment for whatever reason,
> employee agrees not to on behalf of him/herself or any other person
> or entity, approach, contact, solicit or induce any individual,
> corporation or other entity which is a client or customer of Maxim,
> about which employee obtained knowledge by reason of employee's
> employment by Maxim to: (i) enter into any business relationship
> with a client or customer of Maxim if the business relationship is
> competitive with any aspect of Maxim's business in which
> employee worked during the two (2) year period preceding
> termination of employment, or (ii) reduce or eliminate the business
> such client or customer conducts with Maxim.
>
> **No Employee Solicitation:** For a period of eighteen (18) months
> after employee's termination of employment for whatever reason,
> employee agrees not to, on behalf of him/herself or any other person
> or entity, approach, contact, solicit or induce any person who has
> been an internal employee or an external healthcare employee of
> Maxim with the two (2) year period prior to the date of termination
> of employee's employment and about whom employee obtained
> knowledge by reason of employee's employment with Maxim: (i) to
> cease working for Maxim at clients or customers of Maxim, or (ii)
> to refrain from beginning work for Maxim at clients or customers of
> Maxim, or (iii) to provide services to any individual, corporation or
> entity whose business is competitive with Maxim.

*See* **Exhibit A**; *see also* **Exhibit B**.

In your fiduciary role as Maxim's Business Development Manager, you had access to Maxim's trade secrets and proprietary information. This information includes, but is not limited to, prices and costs, contractors and customers, marketing and selling methods, and the processes by which Maxim generates and maintains business. Notably, in your roles with Maxim, you not only managed and assisted clients in the Northern Virginia region, but you also assisted clients staff their entities with traveling healthcare professionals nationwide.

We recently learned that you are currently employed by SnapNurse, Inc. ("SnapNurse"), a direct competitor of Maxim, as Vice President of Business Development. Based upon information

# HUSCH BLACKWELL

December 16, 2022
Page 3

currently available, it is our understanding and belief that your position requires you to engage in services that are competitive with Maxim's services within the restricted territory identified in the Agreements.  Further, it is our belief your employment with SnapNurse includes job duties and tasks which are in violation of the non-solicitation covenants contained within the Agreements.

As outlined within the Agreements, any breach of the non-disclosure, non-compete, or non-solicitation covenants contained within Paragraphs 4, 5, 6, and 7 of the Agreements will cause irreparable damage to Maxim.  As a result, within Paragraph 10 of the Agreements, it was agreed that you will pay to Maxim an amount equal to 100 percent of the gross profit, or 25 percent of the gross sales, whichever amount is greater, resulting from any business generated by you, or your new employer, through conduct in violation of the contractual obligations outlined within Paragraphs 4, 5, 6, or 7 of the Agreements.  These damages are in addition to any other legal or equitable relief which may be available to Maxim as a result of your breach of the Agreements.

In light of the above, we are writing to remind you of your contractual obligations, and to demand that you immediately cease and desist any conduct which is in violation of the terms and conditions contained within the Agreements.  In order to further assess your compliance with the Agreements, we ask that you please provide the following information by **December 30, 2022**:

1.  Please confirm your current residential address;

2.  Identify the address of every location at which you have performed, or will perform, work on behalf of SnapNurse. This includes, but is not limited to, all corporate offices, home/personal offices, client offices, and other remote work locations; and

3.  Identify all actions undertaken taken by you and/or SnapNurse to ensure compliance with the restrictive covenants contained within the Agreement.

In the event you fail to respond as requested, Maxim is prepared to take the necessary and legally appropriate steps, including but not limited to obtaining a court order against you, to protect its rights and prevent any further breach of the Agreements.

Sincerely,

HUSCH BLACKWELL LLP

Tyler C. Hibler

TCH/jmp
Enclosures
cc: SnapNurse, Inc.; The Corporation Trust Company

Husch Blackwell LLP

Case 1:23-mi-99999-UNA   Document 840-1   Filed 03/17/23   Page 46 of 107
Case 8:23-cv-00115   Document 1-4   Filed 01/17/23   Page 5 of 36
EXHIBIT A

, #

## EMPLOYMENT AND MUTUAL ARBITRATION AGREEMENT

This EMPLOYMENT AND MUTUAL ARBITRATION AGREEMENT (this "Agreement"), made this , by and between MAXIM HEALTHCARE SERVICES, INC. or any affiliated company and/or any of its parents, subsidiaries, affiliates, agents, officers, directors, successors, agents, assigns, employees (hereinafter referred to as "MAXIM"), and , hereinafter referred to as "EMPLOYEE."  MAXIM and EMPLOYEE may be collectively referred to as the "parties."

WHEREAS, MAXIM is engaged in the highly competitive business of recruiting and providing medical and/or other personnel on a temporary or permanent basis to nursing homes, hospitals, other medical and healthcare facilities, and home care services, and other lines of business MAXIM engages in, enters, or prepares to enter during EMPLOYEE's employment with MAXIM (collectively "MAXIM's Business");

WHEREAS, the parties recognize and acknowledge that in the performance of these services, and in the performance of this Agreement, EMPLOYEE will acquire certain non–public trade secrets, confidential information and information concerning customer or client relationships of MAXIM, the public disclosure of which would cause financial loss and irreparable injury to MAXIM;

WHEREAS, the parties desire to resolve any dispute or claim under this Agreement or that otherwise may arise between them by arbitration and not by a court or jury;

NOW THEREFORE, in consideration of the foregoing and the mutual covenants and restrictions contained herein, each of the parties intending to be legally bound agree as follows:

1. **AGREEMENT OF EMPLOYMENT**:  MAXIM agrees to employ EMPLOYEE in the position of , at an annual base salary of $ paid in weekly installments (or such other method as MAXIM may determine in its sole discretion from time to time).  EMPLOYEE agrees that employment and/or the payments described above are adequate and sufficient consideration for the promises of EMPLOYEE herein.

The scope of EMPLOYEE's employment, including duties, assignment, position and all responsibilities, shall be as established by MAXIM from time to time, whether orally or in writing. The parties agree that EMPLOYEE shall devote his/her full time, attention and energies to the business of MAXIM and shall not enter into any other business activity that interferes with EMPLOYEE's duties and responsibilities for MAXIM.

2. **TERM OF EMPLOYMENT**:  The term of employment shall continue until terminated by either party. EMPLOYEE agrees and expressly understands that the term of employment under this Agreement is "at will," with no certain term of employment being offered or promised. It is further understood that either EMPLOYEE or MAXIM may terminate EMPLOYEE's employment at any time, with or without cause.

If EMPLOYEE's employment with MAXIM is terminated by either EMPLOYEE or MAXIM, the parties agree that the terms of Paragraphs 4 through 13 of this Agreement shall survive.

3. **INDEMNIFICATION**: EMPLOYEE represents and warrants that EMPLOYEE's employment with MAXIM will not violate the lawful terms and conditions of any agreements entered into by EMPLOYEE prior to or during EMPLOYEE's employment with MAXIM. EMPLOYEE agrees to indemnify and hold MAXIM harmless from any and all claims arising out of any breach of any such agreement.

4. **AGREEMENT NOT TO DIVULGE CONFIDENTIAL INFORMATION**:  EMPLOYEE agrees that, except as required by the proper performance of his/her duties for MAXIM or authorized by law, he/she shall not divulge any Confidential Information or Trade Secrets concerning MAXIM or any MAXIM clients, customers, employees, or Healthcare Employees ("Healthcare Employee" means an employee of MAXIM who is or was employed to work at customers or clients of MAXIM) to any other person, entity or company besides MAXIM. For purposes of this Agreement, "Confidential Information" shall mean information not generally known by MAXIM's competitors or the general public concerning MAXIM, including but not limited to: its financial affairs, sales and marketing strategy, acquisition plan, pricing and costs; its customers' names, addresses, telephone numbers, contact persons, staffing requirements, margin tolerances regarding pricing, and the names, addresses, telephone numbers, skill sets, availability and wage rates of its temporary medical personnel. "Trade Secrets" shall mean information that MAXIM takes measures to keep secret and that gives MAXIM an advantage over its competitors, and includes but is not limited to: sales, recruiting, pricing and marketing techniques, sales and recruiting manuals, forms for acquiring and recording information, financial controls, and management practices, procedures and processes.

5. **COVENANT NOT TO COMPETE**:  EMPLOYEE agrees that upon the termination of his/her employment, whether by MAXIM or EMPLOYEE and whether with or without cause, for a period of eighteen (18) months thereafter, EMPLOYEE shall not directly or indirectly engage in or prepare to engage in, or be employed by, any business that is engaging in or preparing to engage in any aspect of MAXIM's Business in which EMPLOYEE performed work during the two (2) year period preceding his/her termination of employment, within a radius of fifty (50) miles of the office in which EMPLOYEE worked at the time EMPLOYEE's employment terminated or any other office in which EMPLOYEE worked during the two (2) years preceding termination of employment, or as much geographic territory as a court of competent jurisdiction deems reasonable. The prohibitions contained in this Paragraph shall extend to (i) activities undertaken by EMPLOYEE directly on EMPLOYEE's own behalf, and to (ii) activities undertaken by EMPLOYEE indirectly through any individual, corporation or entity which

undertakes such prohibited activities with EMPLOYEE's assistance and in or with respect to which EMPLOYEE is an owner, officer, director, trustee, shareholder, creditor, employee, agent, partner or consultant or participates in some other capacity.

6. **NO CLIENT SOLICITATION**:  For a period of eighteen (18) months after EMPLOYEE's termination of employment for whatever reason, EMPLOYEE agrees not to on behalf of him/herself or any other person or entity, approach, contact, solicit or induce any individual, corporation or other entity which is a client or customer of MAXIM, about which EMPLOYEE obtained knowledge by reason of EMPLOYEE's employment by MAXIM to:
    (i) enter into any business relationship with a client or customer of  MAXIM if the business relationship is competitive with any aspect of MAXIM's Business in which EMPLOYEE worked during the two (2) year period preceding termination of employment, or
    (ii) reduce or eliminate the business such client or customer conducts with  MAXIM.

7. **NO EMPLOYEE SOLICITATION**:  For a period of eighteen (18) months after EMPLOYEE's termination of employment for whatever reason, EMPLOYEE agrees not to, on behalf of him/herself or any other person or entity, approach, contact, solicit or induce any person who has been an internal employee or an external healthcare employee of MAXIM within the two (2) year period prior to the date of termination of EMPLOYEE's employment and about whom EMPLOYEE obtained knowledge by reason of EMPLOYEE's employment with MAXIM:
    (i) to cease working for MAXIM at clients or customers of MAXIM, or
    (ii) to refrain from beginning work for MAXIM at clients or customers of MAXIM, or
    (iii) to provide services to any individual, corporation or entity whose business is competitive with MAXIM.

8. **RETURN OF RECORDS**:  EMPLOYEE agrees, upon termination of his/her employment with MAXIM for whatever reason, to return to MAXIM all original and copies of records, papers, and other property (whether on paper, computer discs or other form) belonging or pertaining to MAXIM.

9. **SITE OF AGREEMENT**:  This Agreement is being entered into in the State of Maryland and shall be governed by and construed, interpreted and enforced in accordance with the laws of the State of Maryland, without giving effect to the principles of conflicts of laws except that Paragraph 12 and Attachment A is governed by the Federal Arbitration Act and by the laws of the State of Maryland.

10. **REMEDIES; DAMAGES**:  EMPLOYEE recognizes that irreparable damage will result to MAXIM in the event of the violation of any covenant contained in Paragraphs 4, 5, 6, and 7 hereof made by him/her and further recognizes and acknowledges that it would be difficult to ascertain the damages arising from a violation by him/her of the covenants contained in Paragraphs 4, 5, 6 and 7 hereof.  EMPLOYEE agrees that as damages arising as a consequence of a violation of the covenants contained in Paragraphs 4, 5, 6 and 7 hereof, EMPLOYEE shall pay to MAXIM an amount equal to one hundred percent (100%) of the gross profit, or twenty−five percent (25%) of the gross sales, whatever amount is greater, resulting from business generated by EMPLOYEE, either directly or indirectly, on his/her own account or as agent, owner, officer, director, trustee, creator, partner, consultant, stockholder, employer, employee, or otherwise for or in conjunction with any other person or entity, through conduct in violation of Paragraphs 4, 5, 6 or 7 hereof.  Such liquidated damages amount shall be in addition to any other legal or equitable relief that may be available to MAXIM for such breach.

11. **SEVERABILITY**:  If any term, provision, or condition of this Agreement, or its application to any circumstance or party, shall, to any extent, be invalid or unenforceable in any jurisdiction, the remainder of this Agreement, or the application of such term, provision, or condition to such circumstance or party (other than those as to which it is held invalid or unenforceable) shall not be affected and each remaining term, provision, or condition of this Agreement shall be valid and enforceable to the fullest extent permitted by applicable law. Any such invalidation or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction. Without limiting the foregoing, if a court of competent jurisdiction or arbitrator should determine that any of the restrictions contained in Paragraph 4, 5, 6 or 7 hereof are unreasonable in terms of scope, duration, geographic area or otherwise, such provision shall be deemed reformed to the minimum extent necessary such that such restriction shall be rendered enforceable.

12. **MUTUAL ARBITRATION OF DISPUTES**:  MAXIM believes that if any disputes, claims, complaints or controversies ("Claim(s)") related to an employee's or former employee's employment currently exist or arise, it is in the best interest of both the individual and MAXIM to resolve the Claim without litigation.  Most Claims are resolved internally through MAXIM's complaint processes.  When such Claims are not resolved internally, EMPLOYEE and MAXIM agree to resolve such Claims through final and binding arbitration as described below and in Attachment A.  For purposes of this Paragraph 12, the term "MAXIM" mean MAXIM Healthcare Services, Inc. and its parents, subsidiaries, affiliates, successors, assigns, agents, officers, directors, and employees.

    a) Claims covered by this agreement to arbitrate

EMPLOYEE and MAXIM agree to arbitrate before a neutral arbitrator, exclusively on an individual basis (and not on a class, collective or representative basis) any and all existing or future Claims between EMPLOYEE and MAXIM, that arise out of or relate to EMPLOYEE's recruitment, application, employment or separation from employment with MAXIM, including claims involving any current or former director, officer, shareholder, agent or employee of MAXIM, whether the disputes or claims arise under common law, or in tort, contract, or pursuant to a statute, regulation, or ordinance now in existence or which may in the future be enacted or recognized, including, but not limited to, the following Claims:

- Claims for fraud, promissory estoppel, fraudulent inducement of contract or breach of contract or contractual obligation, whether alleged contract or obligation be oral, written, or express or implied by fact or law;

- Claims for wrongful termination of employment, violation of public policy and constructive discharge, infliction of emotional distress, misrepresentation, interference with contract or prospective economic advantage, defamation, unfair business practices, and any other tort or tort−like causes of action relating to or arising from the employment relationship or the formation or termination thereof;
- Claims for discrimination, harassment or retaliation, whether on the basis of age, sex, race, national origin, religion, disability or any other unlawful basis, under any and all federal, state, or local statutes, regulations, rules, ordinances or common law, including but not limited to Title VII of the Civil Rights Act of 1964, the Civil Rights Acts of 1866 and 1991, the Age Discrimination in Employment Act of 1967, the Older Workers Benefit Protection Act of 1990, the Rehabilitation Act of 1973, the Americans with Disabilities Act of 1990, the Family and Medical Leave Act of 1993, and including claims under the Fair Labor Standards Act of 1938, the Equal Pay Act of 1963, Section 1981 of the Civil Rights Act, the Sarbanes−Oxley Act of 2002 and the Worker Adjustment and Retraining Notification Act.
- Claims for non−payment or incorrect payment of wages, compensation commissions, bonuses, severance, employee fringe benefits, stock options and the like, penalties and restitution, whether such claims be pursuant to alleged express or implied contract or obligation, equity, and any federal, state, or local statutes, regulations, rules, ordinances or common law concerning wages, compensation or employee benefits.
- Claims arising out of or relating to the grant, exercise, vesting and/or issuance of equity in MAXIM or options to purchase equity in MAXIM.

The non−exhaustive list of Claims above (collectively "Covered Claims") are subject to arbitration pursuant to the terms of this Agreement, and MAXIM and EMPLOYEE hereby forever waive and give up the right to a judicial forum for the resolution of such Covered Claims. EMPLOYEE and MAXIM understand that this means they are giving up the right to have any Covered Claims decided by a judge or jury.

   b)   <u>Claims not covered by this agreement to arbitrate</u>

Notwithstanding the above, EMPLOYEE and MAXIM agree that the following disputes and claims are not covered by this Agreement and shall therefore be resolved in any appropriate forum as required by the laws then in effect:

- Claims for workers' compensation benefits, unemployment insurance, or state or federal disability insurance;
- Any criminal complaint or proceeding;
- Claims under the National Labor Relations Act, as amended, that fall within the exclusive jurisdiction of the National Labor Relations Board;
- Claims for benefits under a plan that is governed by Employee Retirement Income Security Act of 1974 ("ERISA");
- Any individual claims EMPLOYEE may have against MAXIM or that MAXIM may have against EMPLOYEE for temporary or preliminary or permanent injunctive relief (including a temporary restraining order) which are based upon claims of unfair competition and/or the use and/or unauthorized disclosure of trade secrets or other confidential information are not subject to the terms of this agreement; EMPLOYEE or MAXIM, therefore, may seek and obtain appropriate injunctive relief from a court or other tribunal for such claims; and
- Any other dispute or claim that has been expressly excluded from arbitration by statute, regulation or state law that is not preempted by the Federal Arbitration Act.

Nothing in this Agreement should be interpreted as restricting or prohibiting  EMPLOYEE from filing a charge or complaint with the U.S. Equal Employment Opportunity Commission, the National Labor Relations Board, the Department of Labor, the Occupational Safety and Health Commission, the Securities and Exchange Commission, any other federal, state, or local administrative agency charged with investigating and/or prosecuting complaints under any applicable federal, state or municipal law or regulation; however, any Covered Claim that is not finally resolved through the agency proceedings must be submitted to arbitration in accordance with this agreement.  A federal, state, or local agency would also be entitled to investigate the charge in accordance with applicable law.

   c)   <u>Arbitration Terms and Procedures</u>

 The terms, procedures and rules that regulate the mutual agreement to arbitrate disputes and claims are set forth in Attachment A and are incorporated herein by reference.

   13.   **MODIFICATION**:  The Agreement supersedes any prior agreement between the parties including but not limited to any prior agreement concerning the subject matter of dispute resolution.  This Agreement may only be modified, revoked and/or terminated by a subsequent written agreement signed by the EMPLOYEE and a Vice President of MAXIM which specifically states the parties' intent to modify, revoke and/or terminate this Agreement or by an agreement signed by a designated officer of MAXIM.  The parties hereto understand that this Agreement shall remain in effect not withstanding any job change or job assignment by EMPLOYEE within MAXIM or its organization.

   14.   **TERMINATION**:  Paragraphs 4 through 15, inclusive of this Agreement will survive the termination of EMPLOYEE's employment with MAXIM, as well as the termination or expiration of any benefit of such employment.  In the event that EMPLOYEE's employment with MAXIM is severed or terminated and EMPLOYEE is subsequently re−employed by MAXIM, this Agreement will remain in full force and effect during such subsequent employment and will survive the termination of such subsequent employment.

   15.  <u>**ENTIRE AGREEMENT**</u>:  This Agreement and Attachment A represent the entire agreement between the parties with respect to the

subject matter covered by this Agreement. This Agreement supersedes any and all prior agreements or understandings, oral or written between the parties hereto pertaining to the subject matter covered by this Agreement, and may not be changed orally. EMPLOYEE consents and agrees that MAXIM may assign this Agreement to any subsidiary, parent, affiliate or successor of MAXIM, or to any transferee of all of the assets of MAXIM, and such assignment shall not, in and of itself, constitute a termination of the EMPLOYEE's employment hereunder.  EMPLOYEE acknowledges that the covenants and conditions of this Agreement are reasonable and fair. EMPLOYEE further recognizes that the restrictions and conditions contained herein are necessary for the protection of MAXIM's business.

EMPLOYEE ACKNOWLEDGES THAT:

EMPLOYEE HAS CAREFULLY READ THIS AGREEMENT AND UNDERSTANDS THE TERMS OF THIS AGREEMENT.  THIS AGREEMENT IS BEING SIGNED VOLUNTARILY.  IN ENTERING INTO THIS AGREEMENT, EMPLOYEE IS NOT RELYING ON ANY PROMISES OR REPRESENTATIONS BY MAXIM EXCEPT THOSE CONTAINED IN THIS AGREEMENT.

EMPLOYEE HAS BEEN GIVEN THE OPPORTUNITY TO DISCUSS THIS AGREEMENT WITH PRIVATE LEGAL COUNSEL AND HAS EXERCISED THAT OPPORTUNITY TO THE EXTENT EMPLOYEE WISHES TO DO SO.


_____
Maxim Representative
MAXIM HEALTHCARE SERVICES, INC.:


_____
Date

EMPLOYEE:


Jerome Charles                                              Jerome Charles
_____          _____
**(Print Name)**                                               **(Signature)**

1/18/16
_____
Date


ATTACHMENT A

**ARBITRATION TERMS AND PROCEDURES**

   a)   Final and Binding Arbitration

   EMPLOYEE and MAXIM understand and agree that the arbitration of any and all existing or future disputes and claims under this Agreement shall be instead of a court trial before a judge and/or a jury.  EMPLOYEE and MAXIM also understand and agree that, by signing this Agreement, they are expressly waiving any and all rights to a trial before a judge and/or a jury regarding any disputes and claims which they now have or which they may in the future have that are subject to arbitration under this Agreement.  EMPLOYEE and MAXIM also understand and agree that the arbitrator's decision will be final and binding on both MAXIM and EMPLOYEE, subject to review on the grounds set forth in the Federal Arbitration Act.

   b)   Class, Collective, or Representative Action Waiver

   To the extent permitted by law, all covered claims under this Agreement must be brought in the parties' individual capacity, and not as a plaintiff or class member in any purported class, collective or representative action or proceeding.  No claims may be brought or maintained on a class, collective or representative basis either in court or in arbitration.  All such claims will be decided on an individual basis in arbitration pursuant to this Agreement.  The parties expressly waive any right with respect to any Covered Claims to submit, initiate, or participate in a representative capacity or as a plaintiff, claimant or member in a class action, collective action, or other representative or joint action, regardless of whether the action is filed in arbitration or in court.  If, for any reason, the waiver of any ability to initiate or maintain a claim as a class, collective or representative action is found to be unenforceable or invalid, then any such putative class, collective, or representative action claim shall be litigated and decided in a court of competent jurisdiction, and not in arbitration.  Any issue concerning the enforceability or validity of this waiver must be decided by a court of competent jurisdiction, and not by an arbitrator.  Claims may not be joined or consolidated in arbitration with Claims brought by other individual(s), and no damages or penalties may be sought or recovered on behalf of other individuals, unless agreed to in writing by all parties.

   The arbitrator's authority to resolve disputes and make awards under this Agreement is limited to disputes between:  (i) EMPLOYEE and

MAXIM; and (ii) EMPLOYEE and any current or former officers, directors, employees and agents, if such individual is sued for conduct arising out of their employment with MAXIM.  No arbitration award or decision will have any preclusive effect as to issues or claims in any dispute with anyone who is not a named party to the arbitration.

Notwithstanding the foregoing, EMPLOYEE individually or on behalf of others, has the right to challenge the validity of this waiver on such grounds as may exist in law or equity for the revocation of any contract, and MAXIM will not discipline, discharge or engage in any retaliatory action against such EMPLOYEE in the event he/she chooses to challenge the validity of this waiver or engage in any other protected concerted activity under Section 7 of the National Labor Relations Act.  However, MAXIM reserves the right to attempt to enforce this waiver in any appropriate forum.

c)   Arbitration Procedures

EMPLOYEE and MAXIM understand and agree that arbitration pursuant to this Agreement to arbitrate shall be conducted before a single, neutral arbitrator of the American Arbitration Association ("AAA") (unless the Parties agree upon another mutually acceptable arbitrator, in which case the arbitration will be conducted before such mutually acceptable arbitrator) in accordance with and selected pursuant to the then−current rules and procedures of the Employment Arbitration Rules of the AAA to the extent not inconsistent with the terms of this Agreement; provided, however, that the Arbitrator shall allow the discovery authorized under the Federal Rules of Civil Procedure or any other discovery required by state law in arbitration proceedings.  Also, to the extent that any of the Employment Arbitration Rules or anything in this Agreement conflicts with any arbitration procedures required by law, the arbitration procedures required by law shall govern.  EMPLOYEE and MAXIM also agree that nothing in this Agreement relieves either of them from any obligation they may have to exhaust certain administrative remedies before arbitrating any claims or disputes under this Agreement.

The Arbitrator shall have jurisdiction to hear and rule on pre−hearing disputes and is authorized to hold pre−hearing conferences by telephone or in person, as the Arbitrator deems necessary.  The Arbitrator shall have the authority to entertain a motion to dismiss and/or a motion for summary judgment by any party.

Either party may obtain a court reporter to provide a stenographic record of proceedings.

Either party, upon request at the close of hearing, shall be given leave to file a post−hearing brief.  The time for filing such a brief shall be set by the Arbitrator.

The Arbitrator shall render a written award and opinion with the essential findings and conclusions on which the award is based.

Either party shall have the right, within 20 days of issuance of the Arbitrator's opinion, to file with the Arbitrator a motion to reconsider (accompanied by a supporting brief), and the other party shall have 20 days from the date of the motion to respond.  The Arbitrator thereupon shall reconsider the issues raised by the motion and, promptly, either confirm or change the decision, which (except as provided by this Agreement) shall then be final and conclusive upon the parties.

The most current Employment Arbitration Rules of the AAA may be found on the Internet at www.adr.org.  A printed copy of these rules is also available from MAXIM upon request.

d)   Damages and Other Relief

Any Covered Claims arbitrated hereunder are subject to the same limitations regarding damages and ability to obtain other relief, and affirmative rights to individual damages and other relief, as would have applied if the claim was made, and proceeded, in a judicial forum.

e)   Place of Arbitration

The parties understand and agree that the arbitration shall take place in the state in which the EMPLOYEE currently or last worked for MAXIM, unless otherwise agreed by the parties.

f)   Time limitation on Filing Claims

The parties understand and agree that any demand for arbitration by either the EMPLOYEE or MAXIM shall be filed within the statute of limitation that is applicable to the claim(s) upon which arbitration is sought or required.  Any failure to file a demand for arbitration within this time frame and according to these rules shall constitute a waiver of all rights to raise any claim in any forum arising out of any dispute that was subject to arbitration. All such untimely claims shall be deemed barred by the applicable statute of limitations.  The date of the filing is the date on which written notice by the party seeking arbitration stating that party's intention to arbitrate is received by AAA.

In the event EMPLOYEE files a demand for arbitration with AAA, the EMPLOYEE must serve MAXIM with a copy of the demand within ten (10) days of filing with AAA, directing the copy to MAXIM's registered agent.

In the event MAXIM files a demand for arbitration with AAA, MAXIM must serve the EMPLOYEE with a copy of the demand within ten (10) days of filing with AAA, directing the copy to the EMPLOYEE at the last address provided by the EMPLOYEE, in writing, to MAXIM.

All service hereunder must be made by United States certified or registered mail, return receipt requested.

g)   Governing law

The parties agree that MAXIM is engaged in transactions involving interstate commerce.  They understand and agree that this is an agreement to arbitrate under the Federal Arbitration Act.  To the extent not inconsistent with the Federal Arbitration Act, this agreement to arbitrate and its interpretation, validity, construction, enforcement and performance, as well as disputes and/or claims arising under this Agreement, shall be governed by the laws of the State of Maryland.

h)   Judicial Enforcement

Either EMPLOYEE or MAXIM may bring an action in any court of competent jurisdiction to compel arbitration under this Agreement.  If provided for by the laws of such jurisdiction, either EMPLOYEE or MAXIM may bring an action in any court of competent jurisdiction to enforce or vacate an arbitration award in accordance with such laws.

i)   Costs of arbitration

The parties understand and agree that MAXIM will bear the arbitrator's fee and any other type of expense or cost that the EMPLOYEE would not be required to bear if the dispute or claim was brought in court, as well as any other expense or cost that is unique to arbitration. Notwithstanding the above, if EMPLOYEE is the party initiating the claim, EMPLOYEE is responsible for contributing an amount equal to the filing fee to initiate a claim in the court of general jurisdiction in the state in which EMPLOYEE is (or was last) employed by MAXIM. MAXIM and EMPLOYEE shall each pay their own attorneys' fees incurred in connection with the arbitration, and the arbitrator will not have authority to award attorneys' fees unless a statute or contract at issue in the dispute authorizes the award of attorneys' fees to the prevailing party, in which case the arbitrator shall have the authority to make an award of attorneys' fees as required or permitted by applicable law.  If there is a dispute as to whether MAXIM or EMPLOYEE is the prevailing party in the arbitration, the Arbitrator will decide this issue.

In addition, to the extent that it results in a greater recovery for EMPLOYEE, MAXIM agrees to waive the limitations on the recovery of expert fees as an item of costs imposed by 28 U.S.C. § 1821(b) or any similar statute or rule for reasonable expert fees incurred by EMPLOYEE in any arbitration in which (i) EMPLOYEE prevails on any covered claim in an amount greater than the amount of any prior offer of settlement made by MAXIM, and (ii) such reasonable expert fees were incurred for an expert report or expert testimony that was admitted into evidence and relied upon by the arbitrator in rendering the award on such claims.

, #

## EMPLOYMENT AND MUTUAL ARBITRATION AGREEMENT

This EMPLOYMENT AND MUTUAL ARBITRATION AGREEMENT (this "Agreement"), made this , by and between MAXIM HEALTHCARE SERVICES, INC. or any affiliated company and/or any of its parents, subsidiaries, affiliates, agents, officers, directors, successors, agents, assigns, employees (hereinafter referred to as "MAXIM"), and , hereinafter referred to as "EMPLOYEE." MAXIM and EMPLOYEE may be collectively referred to as the "parties."

WHEREAS, MAXIM is engaged in the highly competitive business of recruiting and providing medical and/or other personnel on a temporary or permanent basis to nursing homes, hospitals, other medical and healthcare facilities, and home care services, and other lines of business MAXIM engages in, enters, or prepares to enter during EMPLOYEE's employment with MAXIM (collectively "MAXIM's Business");

WHEREAS, the parties recognize and acknowledge that in the performance of these services, and in the performance of this Agreement, EMPLOYEE will acquire certain non–public trade secrets, confidential information and information concerning customer or client relationships of MAXIM, the public disclosure of which would cause financial loss and irreparable injury to MAXIM;

WHEREAS, the parties desire to resolve any dispute or claim under this Agreement or that otherwise may arise between them by arbitration and not by a court or jury;

NOW THEREFORE, in consideration of the foregoing and the mutual covenants and restrictions contained herein, each of the parties intending to be legally bound agree as follows:

1. **AGREEMENT OF EMPLOYMENT**:  MAXIM agrees to employ EMPLOYEE in the position of , at an annual base salary of $ paid in weekly installments (or such other method as MAXIM may determine in its sole discretion from time to time).  EMPLOYEE agrees that employment and/or the payments described above are adequate and sufficient consideration for the promises of EMPLOYEE herein.

The scope of EMPLOYEE's employment, including duties, assignment, position and all responsibilities, shall be as established by MAXIM from time to time, whether orally or in writing. The parties agree that EMPLOYEE shall devote his/her full time, attention and energies to the business of MAXIM and shall not enter into any other business activity that interferes with EMPLOYEE's duties and responsibilities for MAXIM.

2. **TERM OF EMPLOYMENT**:  The term of employment shall continue until terminated by either party. EMPLOYEE agrees and expressly understands that the term of employment under this Agreement is "at will," with no certain term of employment being offered or promised. It is further understood that either EMPLOYEE or MAXIM may terminate EMPLOYEE's employment at any time, with or without cause.

If EMPLOYEE's employment with MAXIM is terminated by either EMPLOYEE or MAXIM, the parties agree that the terms of Paragraphs 4 through 13 of this Agreement shall survive.

3. **INDEMNIFICATION**: EMPLOYEE represents and warrants that EMPLOYEE's employment with MAXIM will not violate the lawful terms and conditions of any agreements entered into by EMPLOYEE prior to or during EMPLOYEE's employment with MAXIM. EMPLOYEE agrees to indemnify and hold MAXIM harmless from any and all claims arising out of any breach of any such agreement.

4. **AGREEMENT NOT TO DIVULGE CONFIDENTIAL INFORMATION**:  EMPLOYEE agrees that, except as required by the proper performance of his/her duties for MAXIM or authorized by law, he/she shall not divulge any Confidential Information or Trade Secrets concerning MAXIM or any MAXIM clients, customers, employees, or Healthcare Employees ("Healthcare Employee" means an employee of MAXIM who is or was employed to work at customers or clients of MAXIM) to any other person, entity or company besides MAXIM. For purposes of this Agreement, "Confidential Information" shall mean information not generally known by MAXIM's competitors or the general public concerning MAXIM, including but not limited to: its financial affairs, sales and marketing strategy, acquisition plan, pricing and costs; its customers' names, addresses, telephone numbers, contact persons, staffing requirements, margin tolerances regarding pricing, and the names, addresses, telephone numbers, skill sets, availability and wage rates of its temporary medical personnel. "Trade Secrets" shall mean information that MAXIM takes measures to keep secret and that gives MAXIM an advantage over its competitors, and includes but is not limited to: sales, recruiting, pricing and marketing techniques, sales and recruiting manuals, forms for acquiring and recording information, financial controls, and management practices, procedures and processes.

5. **COVENANT NOT TO COMPETE**:  EMPLOYEE agrees that upon the termination of his/her employment, whether by MAXIM or EMPLOYEE and whether with or without cause, for a period of eighteen (18) months thereafter, EMPLOYEE shall not directly or indirectly engage in or prepare to engage in, or be employed by, any business that is engaging in or preparing to engage in any aspect of MAXIM's Business in which EMPLOYEE performed work during the two (2) year period preceding his/her termination of employment, within a radius of fifty (50) miles of the office in which EMPLOYEE worked at the time EMPLOYEE's employment terminated or any other office in which EMPLOYEE worked during the two (2) years preceding termination of employment, or as much geographic territory as a court of competent jurisdiction deems reasonable. The prohibitions contained in this Paragraph shall extend to (i) activities undertaken by EMPLOYEE directly on EMPLOYEE's own behalf, and to (ii) activities undertaken by EMPLOYEE indirectly through any individual, corporation or entity which

undertakes such prohibited activities with EMPLOYEE's assistance and in or with respect to which EMPLOYEE is an owner, officer, director, trustee, shareholder, creditor, employee, agent, partner or consultant or participates in some other capacity.

6. **NO CLIENT SOLICITATION**:  For a period of eighteen (18) months after EMPLOYEE's termination of employment for whatever reason, EMPLOYEE agrees not to on behalf of him/herself or any other person or entity, approach, contact, solicit or induce any individual, corporation or other entity which is a client or customer of MAXIM, about which EMPLOYEE obtained knowledge by reason of EMPLOYEE's employment by MAXIM to:
(i) enter into any business relationship with a client or customer of  MAXIM if the business relationship is competitive with any aspect of MAXIM's Business in which EMPLOYEE worked during the two (2) year period preceding termination of employment, or
(ii) reduce or eliminate the business such client or customer conducts with  MAXIM.

7. **NO EMPLOYEE SOLICITATION**:  For a period of eighteen (18) months after EMPLOYEE's termination of employment for whatever reason, EMPLOYEE agrees not to, on behalf of him/herself or any other person or entity, approach, contact, solicit or induce any person who has been an internal employee or an external healthcare employee of MAXIM within the two (2) year period prior to the date of termination of EMPLOYEE's employment and about whom EMPLOYEE obtained knowledge by reason of EMPLOYEE's employment with MAXIM:
(i) to cease working for MAXIM at clients or customers of MAXIM, or
(ii) to refrain from beginning work for MAXIM at clients or customers of MAXIM, or
(iii) to provide services to any individual, corporation or entity whose business is competitive with MAXIM.

8. **RETURN OF RECORDS**:  EMPLOYEE agrees, upon termination of his/her employment with MAXIM for whatever reason, to return to MAXIM all original and copies of records, papers, and other property (whether on paper, computer discs or other form) belonging or pertaining to MAXIM.

9. **SITE OF AGREEMENT**:  This Agreement is being entered into in the State of Maryland and shall be governed by and construed, interpreted and enforced in accordance with the laws of the State of Maryland, without giving effect to the principles of conflicts of laws except that Paragraph 12 and Attachment A is governed by the Federal Arbitration Act and by the laws of the State of Maryland.

10. **REMEDIES; DAMAGES**:  EMPLOYEE recognizes that irreparable damage will result to MAXIM in the event of the violation of any covenant contained in Paragraphs 4, 5, 6, and 7 hereof made by him/her and further recognizes and acknowledges that it would be difficult to ascertain the damages arising from a violation by him/her of the covenants contained in Paragraphs 4, 5, 6 and 7 hereof.  EMPLOYEE agrees that as damages arising as a consequence of a violation of the covenants contained in Paragraphs 4, 5, 6 and 7 hereof, EMPLOYEE shall pay to MAXIM an amount equal to one hundred percent (100%) of the gross profit, or twenty–five percent (25%) of the gross sales, whatever amount is greater, resulting from business generated by EMPLOYEE, either directly or indirectly, on his/her own account or as agent, owner, officer, director, trustee, creator, partner, consultant, stockholder, employer, employee, or otherwise for or in conjunction with any other person or entity, through conduct in violation of Paragraphs 4, 5, 6 or 7 hereof.  Such liquidated damages amount shall be in addition to any other legal or equitable relief that may be available to MAXIM for such breach.

11. **SEVERABILITY**:  If any term, provision, or condition of this Agreement, or its application to any circumstance or party, shall, to any extent, be invalid or unenforceable in any jurisdiction, the remainder of this Agreement, or the application of such term, provision, or condition to such circumstance or party (other than those as to which it is held invalid or unenforceable) shall not be affected and each remaining term, provision, or condition of this Agreement shall be valid and enforceable to the fullest extent permitted by applicable law. Any such invalidation or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction. Without limiting the foregoing, if a court of competent jurisdiction or arbitrator should determine that any of the restrictions contained in Paragraph 4, 5, 6 or 7 hereof are unreasonable in terms of scope, duration, geographic area or otherwise, such provision shall be deemed reformed to the minimum extent necessary such that such restriction shall be rendered enforceable.

12. **MUTUAL ARBITRATION OF DISPUTES**:  MAXIM believes that if any disputes, claims, complaints or controversies ("Claim(s)") related to an employee's or former employee's employment currently exist or arise, it is in the best interest of both the individual and MAXIM to resolve the Claim without litigation.  Most Claims are resolved internally through MAXIM's complaint processes.  When such Claims are not resolved internally, EMPLOYEE and MAXIM agree to resolve such Claims through final and binding arbitration as described below and in Attachment A.  For purposes of this Paragraph 12, the term "MAXIM" mean MAXIM Healthcare Services, Inc. and its parents, subsidiaries, affiliates, successors, assigns, agents, officers, directors, and employees.

a)  Claims covered by this agreement to arbitrate

EMPLOYEE and MAXIM agree to arbitrate before a neutral arbitrator, exclusively on an individual basis (and not on a class, collective or representative basis) any and all existing or future Claims between EMPLOYEE and MAXIM, that arise out of or relate to EMPLOYEE's recruitment, application, employment or separation from employment with MAXIM, including claims involving any current or former director, officer, shareholder, agent or employee of MAXIM, whether the disputes or claims arise under common law, or in tort, contract, or pursuant to a statute, regulation, or ordinance now in existence or which may in the future be enacted or recognized, including, but not limited to, the following Claims:

● Claims for fraud, promissory estoppel, fraudulent inducement of contract or breach of contract or contractual obligation, whether such alleged contract or obligation be oral, written, or express or implied by fact or law;

- Claims for wrongful termination of employment, violation of public policy and constructive discharge, infliction of emotional distress, misrepresentation, interference with contract or prospective economic advantage, defamation, unfair business practices, and any other tort or tort−like causes of action relating to or arising from the employment relationship or the formation or termination thereof;
- Claims for discrimination, harassment or retaliation, whether on the basis of age, sex, race, national origin, religion, disability or any other unlawful basis, under any and all federal, state, or local statutes, regulations, rules, ordinances or common law, including but not limited to Title VII of the Civil Rights Act of 1964, the Civil Rights Acts of 1866 and 1991, the Age Discrimination in Employment Act of 1967, the Older Workers Benefit Protection Act of 1990, the Rehabilitation Act of 1973, the Americans with Disabilities Act of 1990, the Family and Medical Leave Act of 1993, and including claims under the Fair Labor Standards Act of 1938, the Equal Pay Act of 1963, Section 1981 of the Civil Rights Act, the Sarbanes−Oxley Act of 2002 and the Worker Adjustment and Retraining Notification Act.
- Claims for non−payment or incorrect payment of wages, compensation commissions, bonuses, severance, employee fringe benefits, stock options and the like, penalties and restitution, whether such claims be pursuant to alleged express or implied contract or obligation, equity, and any federal, state, or local statutes, regulations, rules, ordinances or common law concerning wages, compensation or employee benefits.
- Claims arising out of or relating to the grant, exercise, vesting and/or issuance of equity in MAXIM or options to purchase equity in MAXIM.

The non−exhaustive list of Claims above (collectively "Covered Claims") are subject to arbitration pursuant to the terms of this Agreement, and MAXIM and EMPLOYEE hereby forever waive and give up the right to a judicial forum for the resolution of such Covered Claims. EMPLOYEE and MAXIM understand that this means they are giving up the right to have any Covered Claims decided by a judge or jury.

   b)   Claims not covered by this agreement to arbitrate

Notwithstanding the above, EMPLOYEE and MAXIM agree that the following disputes and claims are not covered by this Agreement and shall therefore be resolved in any appropriate forum as required by the laws then in effect:

- Claims for workers' compensation benefits, unemployment insurance, or state or federal disability insurance;
- Any criminal complaint or proceeding;
- Claims under the National Labor Relations Act, as amended, that fall within the exclusive jurisdiction of the National Labor Relations Board;
- Claims for benefits under a plan that is governed by Employee Retirement Income Security Act of 1974 ("ERISA");
- Any individual claims EMPLOYEE may have against MAXIM or that MAXIM may have against EMPLOYEE for temporary or preliminary or permanent injunctive relief (including a temporary restraining order) which are based upon claims of unfair competition and/or the use and/or unauthorized disclosure of trade secrets or other confidential information are not subject to the terms of this agreement; EMPLOYEE or MAXIM, therefore, may seek and obtain appropriate injunctive relief from a court or other tribunal for such claims; and
- Any other dispute or claim that has been expressly excluded from arbitration by statute, regulation or state law that is not preempted by the Federal Arbitration Act.

Nothing in this Agreement should be interpreted as restricting or prohibiting  EMPLOYEE from filing a charge or complaint with the U.S. Equal Employment Opportunity Commission, the National Labor Relations Board, the Department of Labor, the Occupational Safety and Health Commission, the Securities and Exchange Commission, any other federal, state, or local administrative agency charged with investigating and/or prosecuting complaints under any applicable federal, state or municipal law or regulation; however, any Covered Claim that is not finally resolved through the agency proceedings must be submitted to arbitration in accordance with this agreement.  A federal, state, or local agency would also be entitled to investigate the charge in accordance with applicable law.

   c)   Arbitration Terms and Procedures

   The terms, procedures and rules that regulate the mutual agreement to arbitrate disputes and claims are set forth in Attachment A and are incorporated herein by reference.

   13.  **MODIFICATION**:  The Agreement supersedes any prior agreement between the parties including but not limited to any prior agreement concerning the subject matter of dispute resolution.  This Agreement may only be modified, revoked and/or terminated by a subsequent written agreement signed by the EMPLOYEE and a Vice President of MAXIM which specifically states the parties' intent to modify, revoke and/or terminate this Agreement or by an agreement signed by a designated officer of MAXIM.  The parties hereto understand that this Agreement shall remain in effect not withstanding any job change or job assignment by EMPLOYEE within MAXIM or its organization.

   14.  **TERMINATION**:  Paragraphs 4 through 15, inclusive of this Agreement will survive the termination of EMPLOYEE's employment with MAXIM, as well as the termination or expiration of any benefit of such employment.  In the event that EMPLOYEE's employment with MAXIM is severed or terminated and EMPLOYEE is subsequently re−employed by MAXIM, this Agreement will remain in full force and effect during such subsequent employment and will survive the termination of such subsequent employment.

   15.  **ENTIRE AGREEMENT**:  This Agreement and Attachment A represent the entire agreement between the parties with respect to the

subject matter covered by this Agreement. This Agreement supersedes any and all prior agreements or understandings, oral or written between the parties hereto pertaining to the subject matter covered by this Agreement, and may not be changed orally. EMPLOYEE consents and agrees that MAXIM may assign this Agreement to any subsidiary, parent, affiliate or successor of MAXIM, or to any transferee of all of the assets of MAXIM, and such assignment shall not, in and of itself, constitute a termination of the EMPLOYEE's employment hereunder. EMPLOYEE acknowledges that the covenants and conditions of this Agreement are reasonable and fair. EMPLOYEE further recognizes that the restrictions and conditions contained herein are necessary for the protection of MAXIM's business.

EMPLOYEE ACKNOWLEDGES THAT:

EMPLOYEE HAS CAREFULLY READ THIS AGREEMENT AND UNDERSTANDS THE TERMS OF THIS AGREEMENT. THIS AGREEMENT IS BEING SIGNED VOLUNTARILY. IN ENTERING INTO THIS AGREEMENT, EMPLOYEE IS NOT RELYING ON ANY PROMISES OR REPRESENTATIONS BY MAXIM EXCEPT THOSE CONTAINED IN THIS AGREEMENT.

EMPLOYEE HAS BEEN GIVEN THE OPPORTUNITY TO DISCUSS THIS AGREEMENT WITH PRIVATE LEGAL COUNSEL AND HAS EXERCISED THAT OPPORTUNITY TO THE EXTENT EMPLOYEE WISHES TO DO SO.

_____
Maxim Representative
MAXIM HEALTHCARE SERVICES, INC.:

04/28/2017
_____
Date

EMPLOYEE:


Jerome Charles
_____
**(Print Name)**

4/19/17
_____
Date

Jerome Charles
_____
**(Signature)**


                                                            ATTACHMENT A

## ARBITRATION TERMS AND PROCEDURES

a) <u>Final and Binding Arbitration</u>

EMPLOYEE and MAXIM understand and agree that the arbitration of any and all existing or future disputes and claims under this Agreement shall be instead of a court trial before a judge and/or a jury. EMPLOYEE and MAXIM also understand and agree that, by signing this Agreement, they are expressly waiving any and all rights to a trial before a judge and/or a jury regarding any disputes and claims which they now have or which they may in the future have that are subject to arbitration under this Agreement. EMPLOYEE and MAXIM also understand and agree that the arbitrator's decision will be final and binding on both MAXIM and EMPLOYEE, subject to review on the grounds set forth in the Federal Arbitration Act.

b) <u>Class, Collective, or Representative Action Waiver</u>

To the extent permitted by law, all covered claims under this Agreement must be brought in the parties' individual capacity, and not as a plaintiff or class member in any purported class, collective or representative action or proceeding. No claims may be brought or maintained on a class, collective or representative basis either in court or in arbitration. All such claims will be decided on an individual basis in arbitration pursuant to this Agreement. The parties expressly waive any right with respect to any Covered Claims to submit, initiate, or participate in a representative capacity or as a plaintiff, claimant or member in a class action, collective action, or other representative or joint action, regardless of whether the action is filed in arbitration or in court. If, for any reason, the waiver of any ability to initiate or maintain a claim as a class, collective or representative action is found to be unenforceable or invalid, then any such putative class, collective, or representative action claim shall be litigated and decided in a court of competent jurisdiction, and not in arbitration. Any issue concerning the enforceability or validity of this waiver must be decided by a court of competent jurisdiction, and not by an arbitrator. Claims may not be joined or consolidated in arbitration with Claims brought by other individual(s), and no damages or penalties may be sought or recovered on behalf of other individuals, unless agreed to in writing by all parties.

The arbitrator's authority to resolve disputes and make awards under this Agreement is limited to disputes between: (i) EMPLOYEE and

MAXIM; and (ii) EMPLOYEE and any current or former officers, directors, employees and agents, if such individual is sued for conduct arising out of their employment with MAXIM.  No arbitration award or decision will have any preclusive effect as to issues or claims in any dispute with anyone who is not a named party to the arbitration.

Notwithstanding the foregoing, EMPLOYEE individually or on behalf of others, has the right to challenge the validity of this waiver on such grounds as may exist in law or equity for the revocation of any contract, and MAXIM will not discipline, discharge or engage in any retaliatory action against such EMPLOYEE in the event he/she chooses to challenge the validity of this waiver or engage in any other protected concerted activity under Section 7 of the National Labor Relations Act.  However, MAXIM reserves the right to attempt to enforce this waiver in any appropriate forum.

c) <u>Arbitration Procedures</u>

EMPLOYEE and MAXIM understand and agree that arbitration pursuant to this Agreement to arbitrate shall be conducted before a single, neutral arbitrator of the American Arbitration Association ("AAA") (unless the Parties agree upon another mutually acceptable arbitrator, in which case the arbitration will be conducted before such mutually acceptable arbitrator) in accordance with and selected pursuant to the then–current rules and procedures of the Employment Arbitration Rules of the AAA to the extent not inconsistent with the terms of this Agreement; provided, however, that the Arbitrator shall allow the discovery authorized under the Federal Rules of Civil Procedure or any other discovery required by state law in arbitration proceedings.  Also, to the extent that any of the Employment Arbitration Rules or anything in this Agreement conflicts with any arbitration procedures required by law, the arbitration procedures required by law shall govern.  EMPLOYEE and MAXIM also agree that nothing in this Agreement relieves either of them from any obligation they may have to exhaust certain administrative remedies before arbitrating any claims or disputes under this Agreement.

The Arbitrator shall have jurisdiction to hear and rule on pre–hearing disputes and is authorized to hold pre–hearing conferences by telephone or in person, as the Arbitrator deems necessary.  The Arbitrator shall have the authority to entertain a motion to dismiss and/or a motion for summary judgment by any party.

Either party may obtain a court reporter to provide a stenographic record of proceedings.

Either party, upon request at the close of hearing, shall be given leave to file a post–hearing brief.  The time for filing such a brief shall be set by the Arbitrator.

The Arbitrator shall render a written award and opinion with the essential findings and conclusions on which the award is based.

Either party shall have the right, within 20 days of issuance of the Arbitrator's opinion, to file with the Arbitrator a motion to reconsider (accompanied by a supporting brief), and the other party shall have 20 days from the date of the motion to respond.  The Arbitrator thereupon shall reconsider the issues raised by the motion and, promptly, either confirm or change the decision, which (except as provided by this Agreement) shall then be final and conclusive upon the parties.

The most current Employment Arbitration Rules of the AAA may be found on the Internet at www.adr.org.  A printed copy of these rules is also available from MAXIM upon request.

d) <u>Damages and Other Relief</u>

Any Covered Claims arbitrated hereunder are subject to the same limitations regarding damages and ability to obtain other relief, and affirmative rights to individual damages and other relief, as would have applied if the claim was made, and proceeded, in a judicial forum.

e) <u>Place of Arbitration</u>

The parties understand and agree that the arbitration shall take place in the state in which the EMPLOYEE currently or last worked for MAXIM, unless otherwise agreed by the parties.

f) <u>Time limitation on Filing Claims</u>

The parties understand and agree that any demand for arbitration by either the EMPLOYEE or MAXIM shall be filed within the statute of limitation that is applicable to the claim(s) upon which arbitration is sought or required.  Any failure to file a demand for arbitration within this time frame and according to these rules shall constitute a waiver of all rights to raise any claim in any forum arising out of any dispute that was subject to arbitration. All such untimely claims shall be deemed barred by the applicable statute of limitations.  The date of the filing is the date on which written notice by the party seeking arbitration stating that party's intention to arbitrate is received by AAA.

In the event EMPLOYEE files a demand for arbitration with AAA, the EMPLOYEE must serve MAXIM with a copy of the demand within ten (10) days of filing with AAA, directing the copy to MAXIM's registered agent.

In the event MAXIM files a demand for arbitration with AAA, MAXIM must serve the EMPLOYEE with a copy of the demand within ten (10) days of filing with AAA, directing the copy to the EMPLOYEE at the last address provided by the EMPLOYEE, in writing, to MAXIM.

All service hereunder must be made by United States certified or registered mail, return receipt requested.

g)   Governing law

The parties agree that MAXIM is engaged in transactions involving interstate commerce.  They understand and agree that this is an agreement to arbitrate under the Federal Arbitration Act.  To the extent not inconsistent with the Federal Arbitration Act, this agreement to arbitrate and its interpretation, validity, construction, enforcement and performance, as well as disputes and/or claims arising under this Agreement, shall be governed by the laws of the State of Maryland.

h)   Judicial Enforcement

Either EMPLOYEE or MAXIM may bring an action in any court of competent jurisdiction to compel arbitration under this Agreement.  If provided for by the laws of such jurisdiction, either EMPLOYEE or MAXIM may bring an action in any court of competent jurisdiction to enforce or vacate an arbitration award in accordance with such laws.

i)   Costs of arbitration

The parties understand and agree that MAXIM will bear the arbitrator's fee and any other type of expense or cost that the EMPLOYEE would not be required to bear if the dispute or claim was brought in court, as well as any other expense or cost that is unique to arbitration. Notwithstanding the above, if EMPLOYEE is the party initiating the claim, EMPLOYEE is responsible for contributing an amount equal to the filing fee to initiate a claim in the court of general jurisdiction in the state in which EMPLOYEE is (or was last) employed by MAXIM. MAXIM and EMPLOYEE shall each pay their own attorneys' fees incurred in connection with the arbitration, and the arbitrator will not have authority to award attorneys' fees unless a statute or contract at issue in the dispute authorizes the award of attorneys' fees to the prevailing party, in which case the arbitrator shall have the authority to make an award of attorneys' fees as required or permitted by applicable law.  If there is a dispute as to whether MAXIM or EMPLOYEE is the prevailing party in the arbitration, the Arbitrator will decide this issue.

In addition, to the extent that it results in a greater recovery for EMPLOYEE, MAXIM agrees to waive the limitations on the recovery of expert fees as an item of costs imposed by 28 U.S.C. § 1821(b) or any similar statute or rule for reasonable expert fees incurred by EMPLOYEE in any arbitration in which (i) EMPLOYEE prevails on any covered claim in an amount greater than the amount of any prior offer of settlement made by MAXIM, and (ii) such reasonable expert fees were incurred for an expert report or expert testimony that was admitted into evidence and relied upon by the arbitrator in rendering the award on such claims.

Exhibit E

# HUSCH BLACKWELL

Tyler C. Hibler
Partner

4801 Main Street, Suite 1000
Kansas City, MO 64112
Direct: 816.983.8325
Fax: 816.983.8080
tyler.hibler@huschblackwell.com

December 16, 2022

**<u>Via Certified Mail</u>**

SnapNurse, Inc.
1201 Peachtree St. NE
Atlanta, Georgia 30309

The Corporation Trust Company
Corporation Trust Center, 1209 Orange St.
Wilmington, Delaware 19801

      Re:    Jerome Charles

To Whom It May Concern:

      Our law firm represents Maxim Healthcare Staffing Services, Inc. ("<u>Maxim</u>").  It has come to our attention that SnapNurse, Inc. ("<u>SnapNurse</u>") recently hired Jerome Charles ("<u>Mr. Charles</u>") as its Vice President of Business Development.  Based upon information currently available, Maxim has reason to believe Mr. Charles is violating his contractual and common law obligations to Maxim, with the knowledge and/or participation of SnapNurse, through this employment.

      In consideration of employment with Maxim, Mr. Charles executed the enclosed Employment and Mutual Arbitration Agreements (the "<u>Agreements</u>") on January 18, 2016, and then subsequently reaffirmed these obligations on April 19, 2017.  *See* 2016 Agreement, attached as **Exhibit A**; *see also* 2017 Agreement, attached as **Exhibit B**.  By entering into these Agreements, Mr. Charles agreed to be bound by express covenants during and after his employment with Maxim.  Specifically, Mr. Charles agreed to the following obligations:

      **<u>Agreement Not to Divulge Confidential Information:</u>** Employee agrees that, except as required by the proper performance of his/her duties for maxim or authorized by law, he/she shall not divulge any Confidential Information or Trade Secrets concerning Maxim or any Maxim clients, customers, employees, or Healthcare Employees ('Healthcare Employee' means an employee of Maxim who is or was employed to work at customers or clients of Maxim) to any other person, entity or company besides Maxim.

Husch Blackwell LLP

# HUSCH BLACKWELL

December 16, 2022
Page 2

**Covenant Not to Compete:** Employee agrees that upon the termination of his/her employment, whether by Maxim or employee and whether with or without case, for a period of eighteen (18) months thereafter, employee shall not directly or indirectly engage in or prepare to engage in, or be employed by, any business that is engaging in or preparing to engage in any aspect of Maxim's business in which employee performed work during the two (2) year period preceding his/her termination of employment, within a radius of fifty (50) miles of the office in which employee worked at the time employee's employment terminated or any other office in which employee worked at the time employee's employment terminated or any other office in which employee worked during the two (2) years preceding termination of employment, or as much geographic territory as a court of competent jurisdiction deems reasonable.

**No Client Solicitation:** For a period of eighteen (18) months after employee's termination of employment for whatever reason, employee agrees not to on behalf of him/herself or any other person or entity, approach, contact, solicit or induce any individual, corporation or other entity which is a client or customer of Maxim, about which employee obtained knowledge by reason of employee's employment by Maxim to: (i) enter into any business relationship with a client or customer of Maxim if the business relationship is competitive with any aspect of Maxim's business in which employee worked during the two (2) year period preceding termination of employment, or (ii) reduce or eliminate the business such client or customer conducts with Maxim.

**No Employee Solicitation:** For a period of eighteen (18) months after employee's termination of employment for whatever reason, employee agrees not to, on behalf of him/herself or any other person or entity, approach, contact, solicit or induce any person who has been an internal employee or an external healthcare employee of Maxim with the two (2) year period prior to the date of termination of employee's employment and about whom employee obtained knowledge by reason of employee's employment with Maxim: (i) to cease working for Maxim at clients or customers of Maxim, or (ii) to refrain from beginning work for Maxim at clients or customers of Maxim, or (iii) to provide services to any individual, corporation or entity whose business is competitive with Maxim.

# HUSCH BLACKWELL

December 16, 2022
Page 3

*See* **Exhibit A** and **Exhibit B**.  In addition, Mr. Charles owes Maxim a duty of loyalty and fiduciary duty to not use or disclose Maxim's confidential, proprietary, or trade secret information at any time after his employment with Maxim.

Maxim believes Mr. Charles has been and is continuing to violate his contractual and common law obligations to Maxim by virtue of his employment with SnapNurse.  Furthermore, it is our understanding that Mr. Charles's position with SnapNurse requires him to directly engage in services that are competitive with Maxim's services within the restricted territory identified in the Agreements.

We have sent Mr. Charles a letter demanding that all improper and unlawful activity cease immediately.  *See* Enclosed Letter, attached as **Exhibit C**.  By participating in, or inducing, Mr. Charles's violation of the covenants in his Agreements with Maxim, SnapNurse may also be liable for any wrongful conduct.  Thus, Maxim demands that SnapNurse provide the following assurances:

- Confirm that SnapNurse has reviewed and understands Mr. Charles's post-employment contractual obligations to Maxim as set forth in the attached Agreements;

- Confirm SnapNurse has not engaged, and will not engage, in any conduct that interferes with Mr. Charles's performance of his obligations under the Agreements;

- Identify all actions undertaken taken by SnapNurse to ensure Mr. Charles remains in compliance with the restrictive covenants contained within the Agreements;

- Identify all measures to taken by SnapNurse to prevent the disclosure of Maxim's confidential, proprietary, or trade secret information by Mr. Charles; and

- Identify the address of every physical location at which Mr. Charles has performed, or will perform, work on behalf of SnapNurse. This includes, but is not limited to, all corporate offices, home/personal offices, client offices, and all other remote work locations.

Please provide the above requested information and assurances to the undersigned by close of business on **December 30, 2022**.  Maxim takes its business interests very seriously, and will take all necessary and legally appropriate steps to prevent the misappropriation or disclosure of its trade secrets or confidential information, any breach of its contractual interests, tortious

# HUSCH BLACKWELL

December 16, 2022
Page 4

interference with its business relations or contracts, or other usurpation of its business opportunities.  We look forward to your prompt response.

Sincerely,

HUSCH BLACKWELL LLP

Tyler C. Hibler

TCH/jmp
Enclosures
cc: Jerome Charles

Case 1:23-mi-99999-UNA   Document 840-1   Filed 03/17/23   Page 63 of 107
Case 8:23-cv-00115   Document 1-5   Filed 01/17/23   Page 6 of 20
EXHIBIT A

, #

## EMPLOYMENT AND MUTUAL ARBITRATION AGREEMENT

This EMPLOYMENT AND MUTUAL ARBITRATION AGREEMENT (this "Agreement"), made this , by and between MAXIM HEALTHCARE SERVICES, INC. or any affiliated company and/or any of its parents, subsidiaries, affiliates, agents, officers, directors, successors, agents, assigns, employees (hereinafter referred to as "MAXIM"), and , hereinafter referred to as "EMPLOYEE."  MAXIM and EMPLOYEE may be collectively referred to as the "parties."

WHEREAS, MAXIM is engaged in the highly competitive business of recruiting and providing medical and/or other personnel on a temporary or permanent basis to nursing homes, hospitals, other medical and healthcare facilities, and home care services, and other lines of business MAXIM engages in, enters, or prepares to enter during EMPLOYEE's employment with MAXIM (collectively "MAXIM's Business");

WHEREAS, the parties recognize and acknowledge that in the performance of these services, and in the performance of this Agreement, EMPLOYEE will acquire certain non−public trade secrets, confidential information and information concerning customer or client relationships of MAXIM, the public disclosure of which would cause financial loss and irreparable injury to MAXIM;

WHEREAS, the parties desire to resolve any dispute or claim under this Agreement or that otherwise may arise between them by arbitration and not by a court or jury;

NOW THEREFORE, in consideration of the foregoing and the mutual covenants and restrictions contained herein, each of the parties intending to be legally bound agree as follows:

1. **AGREEMENT OF EMPLOYMENT**:  MAXIM agrees to employ EMPLOYEE in the position of , at an annual base salary of $ paid in weekly installments (or such other method as MAXIM may determine in its sole discretion from time to time).  EMPLOYEE agrees that employment and/or the payments described above are adequate and sufficient consideration for the promises of EMPLOYEE herein.

The scope of EMPLOYEE's employment, including duties, assignment, position and all responsibilities, shall be as established by MAXIM from time to time, whether orally or in writing. The parties agree that EMPLOYEE shall devote his/her full time, attention and energies to the business of MAXIM and shall not enter into any other business activity that interferes with EMPLOYEE's duties and responsibilities for MAXIM.

2. **TERM OF EMPLOYMENT**:  The term of employment shall continue until terminated by either party. EMPLOYEE agrees and expressly understands that the term of employment under this Agreement is "at will," with no certain term of employment being offered or promised. It is further understood that either EMPLOYEE or MAXIM may terminate EMPLOYEE's employment at any time, with or without cause.

If EMPLOYEE's employment with MAXIM is terminated by either EMPLOYEE or MAXIM, the parties agree that the terms of Paragraphs 4 through 13 of this Agreement shall survive.

3. **INDEMNIFICATION**: EMPLOYEE represents and warrants that EMPLOYEE's employment with MAXIM will not violate the lawful terms and conditions of any agreements entered into by EMPLOYEE prior to or during EMPLOYEE's employment with MAXIM. EMPLOYEE agrees to indemnify and hold MAXIM harmless from any and all claims arising out of any breach of any such agreement.

4. **AGREEMENT NOT TO DIVULGE CONFIDENTIAL INFORMATION**:  EMPLOYEE agrees that, except as required by the proper performance of his/her duties for MAXIM or authorized by law, he/she shall not divulge any Confidential Information or Trade Secrets concerning MAXIM or any MAXIM clients, customers, employees, or Healthcare Employees ("Healthcare Employee" means an employee of MAXIM who is or was employed to work at customers or clients of MAXIM) to any other person, entity or company besides MAXIM. For purposes of this Agreement, "Confidential Information" shall mean information not generally known by MAXIM's competitors or the general public concerning MAXIM, including but not limited to: its financial affairs, sales and marketing strategy, acquisition plan, pricing and costs; its customers' names, addresses, telephone numbers, contact persons, staffing requirements, margin tolerances regarding pricing, and the names, addresses, telephone numbers, skill sets, availability and wage rates of its temporary medical personnel. "Trade Secrets" shall mean information that MAXIM takes measures to keep secret and that gives MAXIM an advantage over its competitors, and includes but is not limited to: sales, recruiting, pricing and marketing techniques, sales and recruiting manuals, forms for acquiring and recording information, financial controls, and management practices, procedures and processes.

5. **COVENANT NOT TO COMPETE**:  EMPLOYEE agrees that upon the termination of his/her employment, whether by MAXIM or EMPLOYEE and whether with or without cause, for a period of eighteen (18) months thereafter, EMPLOYEE shall not directly or indirectly engage in or prepare to engage in, or be employed by, any business that is engaging in or preparing to engage in any aspect of MAXIM's Business in which EMPLOYEE performed work during the two (2) year period preceding his/her termination of employment, within a radius of fifty (50) miles of the office in which EMPLOYEE worked at the time EMPLOYEE's employment terminated or any other office in which EMPLOYEE worked during the two (2) years preceding termination of employment, or as much geographic territory as a court of competent jurisdiction deems reasonable. The prohibitions contained in this Paragraph shall extend to (i) activities undertaken by EMPLOYEE directly on EMPLOYEE's own behalf, and to (ii) activities undertaken by EMPLOYEE indirectly through any individual, corporation or entity which

undertakes such prohibited activities with EMPLOYEE's assistance and in or with respect to which EMPLOYEE is an owner, officer, director, trustee, shareholder, creditor, employee, agent, partner or consultant or participates in some other capacity.

6.  **NO CLIENT SOLICITATION**:  For a period of eighteen (18) months after EMPLOYEE's termination of employment for whatever reason, EMPLOYEE agrees not to on behalf of him/herself or any other person or entity, approach, contact, solicit or induce any individual, corporation or other entity which is a client or customer of MAXIM, about which EMPLOYEE obtained knowledge by reason of EMPLOYEE's employment by MAXIM to:
    (i) enter into any business relationship with a client or customer of  MAXIM if the business relationship is competitive with any aspect of MAXIM's Business in which EMPLOYEE worked during the two (2) year period preceding termination of employment, or
    (ii) reduce or eliminate the business such client or customer conducts with  MAXIM.

7.  **NO EMPLOYEE SOLICITATION**:  For a period of eighteen (18) months after EMPLOYEE's termination of employment for whatever reason, EMPLOYEE agrees not to, on behalf of him/herself or any other person or entity, approach, contact, solicit or induce any person who has been an internal employee or an external healthcare employee of MAXIM within the two (2) year period prior to the date of termination of EMPLOYEE's employment and about whom EMPLOYEE obtained knowledge by reason of EMPLOYEE's employment with MAXIM:
    (i) to cease working for MAXIM at clients or customers of MAXIM, or
    (ii) to refrain from beginning work for MAXIM at clients or customers of MAXIM, or
    (iii) to provide services to any individual, corporation or entity whose business is competitive with MAXIM.

8.  **RETURN OF RECORDS**:  EMPLOYEE agrees, upon termination of his/her employment with MAXIM for whatever reason, to return to MAXIM all original and copies of records, papers, and other property (whether on paper, computer discs or other form) belonging or pertaining to MAXIM.

9.  **SITE OF AGREEMENT**:  This Agreement is being entered into in the State of Maryland and shall be governed by and construed, interpreted and enforced in accordance with the laws of the State of Maryland, without giving effect to the principles of conflicts of laws except that Paragraph 12 and Attachment A is governed by the Federal Arbitration Act and by the laws of the State of Maryland.

10.  **REMEDIES; DAMAGES**:  EMPLOYEE recognizes that irreparable damage will result to MAXIM in the event of the violation of any covenant contained in Paragraphs 4, 5, 6, and 7 hereof made by him/her and further recognizes and acknowledges that it would be difficult to ascertain the damages arising from a violation by him/her of the covenants contained in Paragraphs 4, 5, 6 and 7 hereof.  EMPLOYEE agrees that as damages arising as a consequence of a violation of the covenants contained in Paragraphs 4, 5, 6 and 7 hereof, EMPLOYEE shall pay to MAXIM an amount equal to one hundred percent (100%) of the gross profit, or twenty–five percent (25%) of the gross sales, whatever amount is greater, resulting from business generated by EMPLOYEE, either directly or indirectly, on his/her own account or as agent, owner, officer, director, trustee, creator, partner, consultant, stockholder, employer, employee, or otherwise for or in conjunction with any other person or entity, through conduct in violation of Paragraphs 4, 5, 6 or 7 hereof.  Such liquidated damages amount shall be in addition to any other legal or equitable relief that may be available to MAXIM for such breach.

11.  **SEVERABILITY**:  If any term, provision, or condition of this Agreement, or its application to any circumstance or party, shall, to any extent, be invalid or unenforceable in any jurisdiction, the remainder of this Agreement, or the application of such term, provision, or condition to such circumstance or party (other than those as to which it is held invalid or unenforceable) shall not be affected and each remaining term, provision, or condition of this Agreement shall be valid and enforceable to the fullest extent permitted by applicable law. Any such invalidation or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction. Without limiting the foregoing, if a court of competent jurisdiction or arbitrator should determine that any of the restrictions contained in Paragraph 4, 5, 6 or 7 hereof are unreasonable in terms of scope, duration, geographic area or otherwise, such provision shall be deemed reformed to the minimum extent necessary such that such restriction shall be rendered enforceable.

12.  **MUTUAL ARBITRATION OF DISPUTES**:  MAXIM believes that if any disputes, claims, complaints or controversies ("Claim(s)") related to an employee's or former employee's employment currently exist or arise, it is in the best interest of both the individual and MAXIM to resolve the Claim without litigation.  Most Claims are resolved internally through MAXIM's complaint processes.  When such Claims are not resolved internally, EMPLOYEE and MAXIM agree to resolve such Claims through final and binding arbitration as described below and in Attachment A.  For purposes of this Paragraph 12, the term "MAXIM" mean MAXIM Healthcare Services, Inc. and its parents, subsidiaries, affiliates, successors, assigns, agents, officers, directors, and employees.

    a)  Claims covered by this agreement to arbitrate

EMPLOYEE and MAXIM agree to arbitrate before a neutral arbitrator, exclusively on an individual basis (and not on a class, collective or representative basis) any and all existing or future Claims between EMPLOYEE and MAXIM, that arise out of or relate to EMPLOYEE's recruitment, application, employment or separation from employment with MAXIM, including claims involving any current or former director, officer, shareholder, agent or employee of MAXIM, whether the disputes or claims arise under common law, or in tort, contract, or pursuant to a statute, regulation, or ordinance now in existence or which may in the future be enacted or recognized, including, but not limited to, the following Claims:

●  Claims for fraud, promissory estoppel, fraudulent inducement of contract or breach of contract or contractual obligation, whether alleged contract or obligation be oral, written, or express or implied by fact or law;

- Claims for wrongful termination of employment, violation of public policy and constructive discharge, infliction of emotional distress, misrepresentation, interference with contract or prospective economic advantage, defamation, unfair business practices, and any other tort or tort−like causes of action relating to or arising from the employment relationship or the formation or termination thereof;
- Claims for discrimination, harassment or retaliation, whether on the basis of age, sex, race, national origin, religion, disability or any other unlawful basis, under any and all federal, state, or local statutes, regulations, rules, ordinances or common law, including but not limited to Title VII of the Civil Rights Act of 1964, the Civil Rights Acts of 1866 and 1991, the Age Discrimination in Employment Act of 1967, the Older Workers Benefit Protection Act of 1990, the Rehabilitation Act of 1973, the Americans with Disabilities Act of 1990, the Family and Medical Leave Act of 1993, and including claims under the Fair Labor Standards Act of 1938, the Equal Pay Act of 1963, Section 1981 of the Civil Rights Act, the Sarbanes−Oxley Act of 2002 and the Worker Adjustment and Retraining Notification Act.
- Claims for non−payment or incorrect payment of wages, compensation commissions, bonuses, severance, employee fringe benefits, stock options and the like, penalties and restitution, whether such claims be pursuant to alleged express or implied contract or obligation, equity, and any federal, state, or local statutes, regulations, rules, ordinances or common law concerning wages, compensation or employee benefits.
- Claims arising out of or relating to the grant, exercise, vesting and/or issuance of equity in MAXIM or options to purchase equity in MAXIM.

The non−exhaustive list of Claims above (collectively "Covered Claims") are subject to arbitration pursuant to the terms of this Agreement, and MAXIM and EMPLOYEE hereby forever waive and give up the right to a judicial forum for the resolution of such Covered Claims. EMPLOYEE and MAXIM understand that this means they are giving up the right to have any Covered Claims decided by a judge or jury.

b)   Claims not covered by this agreement to arbitrate

Notwithstanding the above, EMPLOYEE and MAXIM agree that the following disputes and claims are not covered by this Agreement and shall therefore be resolved in any appropriate forum as required by the laws then in effect:

- Claims for workers' compensation benefits, unemployment insurance, or state or federal disability insurance;
- Any criminal complaint or proceeding;
- Claims under the National Labor Relations Act, as amended, that fall within the exclusive jurisdiction of the National Labor Relations Board;
- Claims for benefits under a plan that is governed by Employee Retirement Income Security Act of 1974 ("ERISA");
- Any individual claims EMPLOYEE may have against MAXIM or that MAXIM may have against EMPLOYEE for temporary or preliminary or permanent injunctive relief (including a temporary restraining order) which are based upon claims of unfair competition and/or the use and/or unauthorized disclosure of trade secrets or other confidential information are not subject to the terms of this agreement; EMPLOYEE or MAXIM, therefore, may seek and obtain appropriate injunctive relief from a court or other tribunal for such claims; and
- Any other dispute or claim that has been expressly excluded from arbitration by statute, regulation or state law that is not preempted by the Federal Arbitration Act.

Nothing in this Agreement should be interpreted as restricting or prohibiting  EMPLOYEE from filing a charge or complaint with the U.S. Equal Employment Opportunity Commission, the National Labor Relations Board, the Department of Labor, the Occupational Safety and Health Commission, the Securities and Exchange Commission, any other federal, state, or local administrative agency charged with investigating and/or prosecuting complaints under any applicable federal, state or municipal law or regulation; however, any Covered Claim that is not finally resolved through the agency proceedings must be submitted to arbitration in accordance with this agreement.  A federal, state, or local agency would also be entitled to investigate the charge in accordance with applicable law.

c)   Arbitration Terms and Procedures

 The terms, procedures and rules that regulate the mutual agreement to arbitrate disputes and claims are set forth in Attachment A and are incorporated herein by reference.

13.  **MODIFICATION**:  The Agreement supersedes any prior agreement between the parties including but not limited to any prior agreement concerning the subject matter of dispute resolution.  This Agreement may only be modified, revoked and/or terminated by a subsequent written agreement signed by the EMPLOYEE and a Vice President of MAXIM which specifically states the parties' intent to modify, revoke and/or terminate this Agreement or by an agreement signed by a designated officer of MAXIM.  The parties hereto understand that this Agreement shall remain in effect not withstanding any job change or job assignment by EMPLOYEE within MAXIM or its organization.

14.  **TERMINATION**:  Paragraphs 4 through 15, inclusive of this Agreement will survive the termination of EMPLOYEE's employment with MAXIM, as well as the termination or expiration of any benefit of such employment.  In the event that EMPLOYEE's employment with MAXIM is severed or terminated and EMPLOYEE is subsequently re−employed by MAXIM, this Agreement will remain in full force and effect during such subsequent employment and will survive the termination of such subsequent employment.

15. **ENTIRE AGREEMENT**:  This Agreement and Attachment A represent the entire agreement between the parties with respect to the

subject matter covered by this Agreement. This Agreement supersedes any and all prior agreements or understandings, oral or written between the parties hereto pertaining to the subject matter covered by this Agreement, and may not be changed orally.  EMPLOYEE consents and agrees that MAXIM may assign this Agreement to any subsidiary, parent, affiliate or successor of MAXIM, or to any transferee of all of the assets of MAXIM, and such assignment shall not, in and of itself, constitute a termination of the EMPLOYEE's employment hereunder.  EMPLOYEE acknowledges that the covenants and conditions of this Agreement are reasonable and fair. EMPLOYEE further recognizes that the restrictions and conditions contained herein are necessary for the protection of MAXIM's business.

EMPLOYEE ACKNOWLEDGES THAT:

EMPLOYEE HAS CAREFULLY READ THIS AGREEMENT AND UNDERSTANDS THE TERMS OF THIS AGREEMENT.  THIS AGREEMENT IS BEING SIGNED VOLUNTARILY.  IN ENTERING INTO THIS AGREEMENT, EMPLOYEE IS NOT RELYING ON ANY PROMISES OR REPRESENTATIONS BY MAXIM EXCEPT THOSE CONTAINED IN THIS AGREEMENT.

EMPLOYEE HAS BEEN GIVEN THE OPPORTUNITY TO DISCUSS THIS AGREEMENT WITH PRIVATE LEGAL COUNSEL AND HAS EXERCISED THAT OPPORTUNITY TO THE EXTENT EMPLOYEE WISHES TO DO SO.


_____
Maxim Representative
MAXIM HEALTHCARE SERVICES, INC.:


_____
Date

EMPLOYEE:


Jerome Charles                                  Jerome Charles
_____        _____
**(Print Name)**                                **(Signature)**

1/18/16
_____
Date


ATTACHMENT A

**ARBITRATION TERMS AND PROCEDURES**

a) <u>Final and Binding Arbitration</u>

EMPLOYEE and MAXIM understand and agree that the arbitration of any and all existing or future disputes and claims under this Agreement shall be instead of a court trial before a judge and/or a jury.  EMPLOYEE and MAXIM also understand and agree that, by signing this Agreement, they are expressly waiving any and all rights to a trial before a judge and/or a jury regarding any disputes and claims which they now have or which they may in the future have that are subject to arbitration under this Agreement.  EMPLOYEE and MAXIM also understand and agree that the arbitrator's decision will be final and binding on both MAXIM and EMPLOYEE, subject to review on the grounds set forth in the Federal Arbitration Act.

b) <u>Class, Collective, or Representative Action Waiver</u>

To the extent permitted by law, all covered claims under this Agreement must be brought in the parties' individual capacity, and not as a plaintiff or class member in any purported class, collective or representative action or proceeding.  No claims may be brought or maintained on a class, collective or representative basis either in court or in arbitration.  All such claims will be decided on an individual basis in arbitration pursuant to this Agreement.  The parties expressly waive any right with respect to any Covered Claims to submit, initiate, or participate in a representative capacity or as a plaintiff, claimant or member in a class action, collective action, or other representative or joint action, regardless of whether the action is filed in arbitration or in court.  If, for any reason, the waiver of any ability to initiate or maintain a claim as a class, collective or representative action is found to be unenforceable or invalid, then any such putative class, collective, or representative action claim shall be litigated and decided in a court of competent jurisdiction, and not in arbitration.  Any issue concerning the enforceability or validity of this waiver must be decided by a court of competent jurisdiction, and not by an arbitrator.  Claims may not be joined or consolidated in arbitration with Claims brought by other individual(s), and no damages or penalties may be sought or recovered on behalf of other individuals, unless agreed to in writing by all parties.

The arbitrator's authority to resolve disputes and make awards under this Agreement is limited to disputes between:  (i) EMPLOYEE and

MAXIM; and (ii) EMPLOYEE and any current or former officers, directors, employees and agents, if such individual is sued for conduct arising out of their employment with MAXIM.  No arbitration award or decision will have any preclusive effect as to issues or claims in any dispute with anyone who is not a named party to the arbitration.

Notwithstanding the foregoing, EMPLOYEE individually or on behalf of others, has the right to challenge the validity of this waiver on such grounds as may exist in law or equity for the revocation of any contract, and MAXIM will not discipline, discharge or engage in any retaliatory action against such EMPLOYEE in the event he/she chooses to challenge the validity of this waiver or engage in any other protected concerted activity under Section 7 of the National Labor Relations Act.  However, MAXIM reserves the right to attempt to enforce this waiver in any appropriate forum.

c) Arbitration Procedures

EMPLOYEE and MAXIM understand and agree that arbitration pursuant to this Agreement to arbitrate shall be conducted before a single, neutral arbitrator of the American Arbitration Association ("AAA") (unless the Parties agree upon another mutually acceptable arbitrator, in which case the arbitration will be conducted before such mutually acceptable arbitrator) in accordance with and selected pursuant to the then−current rules and procedures of the Employment Arbitration Rules of the AAA to the extent not inconsistent with the terms of this Agreement; provided, however, that the Arbitrator shall allow the discovery authorized under the Federal Rules of Civil Procedure or any other discovery required by state law in arbitration proceedings.  Also, to the extent that any of the Employment Arbitration Rules or anything in this Agreement conflicts with any arbitration procedures required by law, the arbitration procedures required by law shall govern.  EMPLOYEE and MAXIM also agree that nothing in this Agreement relieves either of them from any obligation they may have to exhaust certain administrative remedies before arbitrating any claims or disputes under this Agreement.

The Arbitrator shall have jurisdiction to hear and rule on pre−hearing disputes and is authorized to hold pre−hearing conferences by telephone or in person, as the Arbitrator deems necessary.  The Arbitrator shall have the authority to entertain a motion to dismiss and/or a motion for summary judgment by any party.

Either party may obtain a court reporter to provide a stenographic record of proceedings.

Either party, upon request at the close of hearing, shall be given leave to file a post−hearing brief.  The time for filing such a brief shall be set by the Arbitrator.

The Arbitrator shall render a written award and opinion with the essential findings and conclusions on which the award is based.

Either party shall have the right, within 20 days of issuance of the Arbitrator's opinion, to file with the Arbitrator a motion to reconsider (accompanied by a supporting brief), and the other party shall have 20 days from the date of the motion to respond.  The Arbitrator thereupon shall reconsider the issues raised by the motion and, promptly, either confirm or change the decision, which (except as provided by this Agreement) shall then be final and conclusive upon the parties.

The most current Employment Arbitration Rules of the AAA may be found on the Internet at www.adr.org.  A printed copy of these rules is also available from MAXIM upon request.

d) Damages and Other Relief

Any Covered Claims arbitrated hereunder are subject to the same limitations regarding damages and ability to obtain other relief, and affirmative rights to individual damages and other relief, as would have applied if the claim was made, and proceeded, in a judicial forum.

e) Place of Arbitration

The parties understand and agree that the arbitration shall take place in the state in which the EMPLOYEE currently or last worked for MAXIM, unless otherwise agreed by the parties.

f) Time limitation on Filing Claims

The parties understand and agree that any demand for arbitration by either the EMPLOYEE or MAXIM shall be filed within the statute of limitation that is applicable to the claim(s) upon which arbitration is sought or required.  Any failure to file a demand for arbitration within this time frame and according to these rules shall constitute a waiver of all rights to raise any claim in any forum arising out of any dispute that was subject to arbitration. All such untimely claims shall be deemed barred by the applicable statute of limitations.  The date of the filing is the date on which written notice by the party seeking arbitration stating that party's intention to arbitrate is received by AAA.

In the event EMPLOYEE files a demand for arbitration with AAA, the EMPLOYEE must serve MAXIM with a copy of the demand within ten (10) days of filing with AAA, directing the copy to MAXIM's registered agent.

In the event MAXIM files a demand for arbitration with AAA, MAXIM must serve the EMPLOYEE with a copy of the demand within ten (10) days of filing with AAA, directing the copy to the EMPLOYEE at the last address provided by the EMPLOYEE, in writing, to MAXIM.

All service hereunder must be made by United States certified or registered mail, return receipt requested.

g)   Governing law

The parties agree that MAXIM is engaged in transactions involving interstate commerce.  They understand and agree that this is an agreement to arbitrate under the Federal Arbitration Act.  To the extent not inconsistent with the Federal Arbitration Act, this agreement to arbitrate and its interpretation, validity, construction, enforcement and performance, as well as disputes and/or claims arising under this Agreement, shall be governed by the laws of the State of Maryland.

h)   Judicial Enforcement

Either EMPLOYEE or MAXIM may bring an action in any court of competent jurisdiction to compel arbitration under this Agreement.  If provided for by the laws of such jurisdiction, either EMPLOYEE or MAXIM may bring an action in any court of competent jurisdiction to enforce or vacate an arbitration award in accordance with such laws.

i)   Costs of arbitration

The parties understand and agree that MAXIM will bear the arbitrator's fee and any other type of expense or cost that the EMPLOYEE would not be required to bear if the dispute or claim was brought in court, as well as any other expense or cost that is unique to arbitration.  Notwithstanding the above, if EMPLOYEE is the party initiating the claim, EMPLOYEE is responsible for contributing an amount equal to the filing fee to initiate a claim in the court of general jurisdiction in the state in which EMPLOYEE is (or was last) employed by MAXIM.  MAXIM and EMPLOYEE shall each pay their own attorneys' fees incurred in connection with the arbitration, and the arbitrator will not have authority to award attorneys' fees unless a statute or contract at issue in the dispute authorizes the award of attorneys' fees to the prevailing party, in which case the arbitrator shall have the authority to make an award of attorneys' fees as required or permitted by applicable law.  If there is a dispute as to whether MAXIM or EMPLOYEE is the prevailing party in the arbitration, the Arbitrator will decide this issue.

In addition, to the extent that it results in a greater recovery for EMPLOYEE, MAXIM agrees to waive the limitations on the recovery of expert fees as an item of costs imposed by 28 U.S.C. § 1821(b) or any similar statute or rule for reasonable expert fees incurred by EMPLOYEE in any arbitration in which (i) EMPLOYEE prevails on any covered claim in an amount greater than the amount of any prior offer of settlement made by MAXIM, and (ii) such reasonable expert fees were incurred for an expert report or expert testimony that was admitted into evidence and relied upon by the arbitrator in rendering the award on such claims.

, #

## EMPLOYMENT AND MUTUAL ARBITRATION AGREEMENT

This EMPLOYMENT AND MUTUAL ARBITRATION AGREEMENT (this "Agreement), made this , by and between MAXIM HEALTHCARE SERVICES, INC. or any affiliated company and/or any of its parents, subsidiaries, affiliates, agents, officers, directors, successors, agents, assigns, employees (hereinafter referred to as "MAXIM"), and , hereinafter referred to as "EMPLOYEE." MAXIM and EMPLOYEE may be collectively referred to as the "parties."

WHEREAS, MAXIM is engaged in the highly competitive business of recruiting and providing medical and/or other personnel on a temporary or permanent basis to nursing homes, hospitals, other medical and healthcare facilities, and home care services, and other lines of business MAXIM engages in, enters, or prepares to enter during EMPLOYEE's employment with MAXIM (collectively "MAXIM's Business");

WHEREAS, the parties recognize and acknowledge that in the performance of these services, and in the performance of this Agreement, EMPLOYEE will acquire certain non–public trade secrets, confidential information and information concerning customer or client relationships of MAXIM, the public disclosure of which would cause financial loss and irreparable injury to MAXIM;

WHEREAS, the parties desire to resolve any dispute or claim under this Agreement or that otherwise may arise between them by arbitration and not by a court or jury;

NOW THEREFORE, in consideration of the foregoing and the mutual covenants and restrictions contained herein, each of the parties intending to be legally bound agree as follows:

1. **AGREEMENT OF EMPLOYMENT**:  MAXIM agrees to employ EMPLOYEE in the position of , at an annual base salary of $ paid in weekly installments (or such other method as MAXIM may determine in its sole discretion from time to time).  EMPLOYEE agrees that employment and/or the payments described above are adequate and sufficient consideration for the promises of EMPLOYEE herein.

The scope of EMPLOYEE's employment, including duties, assignment, position and all responsibilities, shall be as established by MAXIM from time to time, whether orally or in writing. The parties agree that EMPLOYEE shall devote his/her full time, attention and energies to the business of MAXIM and shall not enter into any other business activity that interferes with EMPLOYEE's duties and responsibilities for MAXIM.

2. **TERM OF EMPLOYMENT**:  The term of employment shall continue until terminated by either party. EMPLOYEE agrees and expressly understands that the term of employment under this Agreement is "at will," with no certain term of employment being offered or promised. It is further understood that either EMPLOYEE or MAXIM may terminate EMPLOYEE's employment at any time, with or without cause.

If EMPLOYEE's employment with MAXIM is terminated by either EMPLOYEE or MAXIM, the parties agree that the terms of Paragraphs 4 through 13 of this Agreement shall survive.

3. **INDEMNIFICATION**: EMPLOYEE represents and warrants that EMPLOYEE's employment with MAXIM will not violate the lawful terms and conditions of any agreements entered into by EMPLOYEE prior to or during EMPLOYEE's employment with MAXIM. EMPLOYEE agrees to indemnify and hold MAXIM harmless from any and all claims arising out of any breach of any such agreement.

4. **AGREEMENT NOT TO DIVULGE CONFIDENTIAL INFORMATION**:  EMPLOYEE agrees that, except as required by the proper performance of his/her duties for MAXIM or authorized by law, he/she shall not divulge any Confidential Information or Trade Secrets concerning MAXIM or any MAXIM clients, customers, employees, or Healthcare Employees ("Healthcare Employee" means an employee of MAXIM who is or was employed to work at customers or clients of MAXIM) to any other person, entity or company besides MAXIM. For purposes of this Agreement, "Confidential Information" shall mean information not generally known by MAXIM's competitors or the general public concerning MAXIM, including but not limited to: its financial affairs, sales and marketing strategy, acquisition plan, pricing and costs; its customers' names, addresses, telephone numbers, contact persons, staffing requirements, margin tolerances regarding pricing, and the names, addresses, telephone numbers, skill sets, availability and wage rates of its temporary medical personnel. "Trade Secrets" shall mean information that MAXIM takes measures to keep secret and that gives MAXIM an advantage over its competitors, and includes but is not limited to: sales, recruiting, pricing and marketing techniques, sales and recruiting manuals, forms for acquiring and recording information, financial controls, and management practices, procedures and processes.

5. **COVENANT NOT TO COMPETE**:  EMPLOYEE agrees that upon the termination of his/her employment, whether by MAXIM or EMPLOYEE and whether with or without cause, for a period of eighteen (18) months thereafter, EMPLOYEE shall not directly or indirectly engage in or prepare to engage in, or be employed by, any business that is engaging in or preparing to engage in any aspect of MAXIM's Business in which EMPLOYEE performed work during the two (2) year period preceding his/her termination of employment, within a radius of fifty (50) miles of the office in which EMPLOYEE worked at the time EMPLOYEE's employment terminated or any other office in which EMPLOYEE worked during the two (2) years preceding termination of employment, or as much geographic territory as a court of competent jurisdiction deems reasonable. The prohibitions contained in this Paragraph shall extend to (i) activities undertaken by EMPLOYEE directly on EMPLOYEE's own behalf, and to (ii) activities undertaken by EMPLOYEE indirectly through any individual, corporation or entity which

undertakes such prohibited activities with EMPLOYEE's assistance and in or with respect to which EMPLOYEE is an owner, officer, director, trustee, shareholder, creditor, employee, agent, partner or consultant or participates in some other capacity.

6. **NO CLIENT SOLICITATION**: For a period of eighteen (18) months after EMPLOYEE's termination of employment for whatever reason, EMPLOYEE agrees not to, on behalf of him/herself or any other person or entity, approach, contact, solicit or induce any individual, corporation or other entity which is a client or customer of MAXIM, about which EMPLOYEE obtained knowledge by reason of EMPLOYEE's employment by MAXIM to:
   (i) enter into any business relationship with a client or customer of MAXIM if the business relationship is competitive with any aspect of MAXIM's Business in which EMPLOYEE worked during the two (2) year period preceding termination of employment, or
   (ii) reduce or eliminate the business such client or customer conducts with MAXIM.

7. **NO EMPLOYEE SOLICITATION**: For a period of eighteen (18) months after EMPLOYEE's termination of employment for whatever reason, EMPLOYEE agrees not to, on behalf of him/herself or any other person or entity, approach, contact, solicit or induce any person who has been an internal employee or an external healthcare employee of MAXIM within the two (2) year period prior to the date of termination of EMPLOYEE's employment and about whom EMPLOYEE obtained knowledge by reason of EMPLOYEE's employment with MAXIM:
   (i) to cease working for MAXIM at clients or customers of MAXIM, or
   (ii) to refrain from beginning work for MAXIM at clients or customers of MAXIM, or
   (iii) to provide services to any individual, corporation or entity whose business is competitive with MAXIM.

8. **RETURN OF RECORDS**: EMPLOYEE agrees, upon termination of his/her employment with MAXIM for whatever reason, to return to MAXIM all original and copies of records, papers, and other property (whether on paper, computer discs or other form) belonging or pertaining to MAXIM.

9. **SITE OF AGREEMENT**: This Agreement is being entered into in the State of Maryland and shall be governed by and construed, interpreted and enforced in accordance with the laws of the State of Maryland, without giving effect to the principles of conflicts of laws except that Paragraph 12 and Attachment A is governed by the Federal Arbitration Act and by the laws of the State of Maryland.

10. **REMEDIES; DAMAGES**: EMPLOYEE recognizes that irreparable damage will result to MAXIM in the event of the violation of any covenant contained in Paragraphs 4, 5, 6, and 7 hereof made by him/her and further recognizes and acknowledges that it would be difficult to ascertain the damages arising from a violation by him/her of the covenants contained in Paragraphs 4, 5, 6 and 7 hereof. EMPLOYEE agrees that as damages arising as a consequence of a violation of the covenants contained in Paragraphs 4, 5, 6 and 7 hereof, EMPLOYEE shall pay to MAXIM an amount equal to one hundred percent (100%) of the gross profit, or twenty–five percent (25%) of the gross sales, whatever amount is greater, resulting from business generated by EMPLOYEE, either directly or indirectly, on his/her own account or as agent, owner, officer, director, trustee, creator, partner, consultant, stockholder, employer, employee, or otherwise for or in conjunction with any other person or entity, through conduct in violation of Paragraphs 4, 5, 6 or 7 hereof. Such liquidated damages amount shall be in addition to any other legal or equitable relief that may be available to MAXIM for such breach.

11. **SEVERABILITY**: If any term, provision, or condition of this Agreement, or its application to any circumstance or party, shall, to any extent, be invalid or unenforceable in any jurisdiction, the remainder of this Agreement, or the application of such term, provision, or condition to such circumstance or party (other than those as to which it is held invalid or unenforceable) shall not be affected and each remaining term, provision, or condition of this Agreement shall be valid and enforceable to the fullest extent permitted by applicable law. Any such invalidation or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction. Without limiting the foregoing, if a court of competent jurisdiction or arbitrator should determine that any of the restrictions contained in Paragraph 4, 5, 6 or 7 hereof are unreasonable in terms of scope, duration, geographic area or otherwise, such provision shall be deemed reformed to the minimum extent necessary such that such restriction shall be rendered enforceable.

12. **MUTUAL ARBITRATION OF DISPUTES**: MAXIM believes that if any disputes, claims, complaints or controversies ("Claim(s)") related to an employee's or former employee's employment currently exist or arise, it is in the best interest of both the individual and MAXIM to resolve the Claim without litigation. Most Claims are resolved internally through MAXIM's complaint processes. When such Claims are not resolved internally, EMPLOYEE and MAXIM agree to resolve such Claims through final and binding arbitration as described below and in Attachment A. For purposes of this Paragraph 12, the term "MAXIM" mean MAXIM Healthcare Services, Inc. and its parents, subsidiaries, affiliates, successors, assigns, agents, officers, directors, and employees.

   a)  Claims covered by this agreement to arbitrate

EMPLOYEE and MAXIM agree to arbitrate before a neutral arbitrator, exclusively on an individual basis (and not on a class, collective or representative basis) any and all existing or future Claims between EMPLOYEE and MAXIM, that arise out of or relate to EMPLOYEE's recruitment, application, employment or separation from employment with MAXIM, including claims involving any current or former director, officer, shareholder, agent or employee of MAXIM, whether the disputes or claims arise under common law, or in tort, contract, or pursuant to a statute, regulation, or ordinance now in existence or which may in the future be enacted or recognized, including, but not limited to, the following Claims:

- Claims for fraud, promissory estoppel, fraudulent inducement of contract or breach of contract or contractual obligation, whether such alleged contract or obligation be oral, written, or express or implied by fact or law;

- Claims for wrongful termination of employment, violation of public policy and constructive discharge, infliction of emotional distress, misrepresentation, interference with contract or prospective economic advantage, defamation, unfair business practices, and any other tort or tort−like causes of action relating to or arising from the employment relationship or the formation or termination thereof;
- Claims for discrimination, harassment or retaliation, whether on the basis of age, sex, race, national origin, religion, disability or any other unlawful basis, under any and all federal, state, or local statutes, regulations, rules, ordinances or common law, including but not limited to Title VII of the Civil Rights Act of 1964, the Civil Rights Acts of 1866 and 1991, the Age Discrimination in Employment Act of 1967, the Older Workers Benefit Protection Act of 1990, the Rehabilitation Act of 1973, the Americans with Disabilities Act of 1990, the Family and Medical Leave Act of 1993, and including claims under the Fair Labor Standards Act of 1938, the Equal Pay Act of 1963, Section 1981 of the Civil Rights Act, the Sarbanes−Oxley Act of 2002 and the Worker Adjustment and Retraining Notification Act.
- Claims for non−payment or incorrect payment of wages, compensation commissions, bonuses, severance, employee fringe benefits, stock options and the like, penalties and restitution, whether such claims be pursuant to alleged express or implied contract or obligation, equity, and any federal, state, or local statutes, regulations, rules, ordinances or common law concerning wages, compensation or employee benefits.
- Claims arising out of or relating to the grant, exercise, vesting and/or issuance of equity in MAXIM or options to purchase equity in MAXIM.

The non−exhaustive list of Claims above (collectively "Covered Claims") are subject to arbitration pursuant to the terms of this Agreement, and MAXIM and EMPLOYEE hereby forever waive and give up the right to a judicial forum for the resolution of such Covered Claims. EMPLOYEE and MAXIM understand that this means they are giving up the right to have any Covered Claims decided by a judge or jury.

b) Claims not covered by this agreement to arbitrate

Notwithstanding the above, EMPLOYEE and MAXIM agree that the following disputes and claims are not covered by this Agreement and shall therefore be resolved in any appropriate forum as required by the laws then in effect:

- Claims for workers' compensation benefits, unemployment insurance, or state or federal disability insurance;
- Any criminal complaint or proceeding;
- Claims under the National Labor Relations Act, as amended, that fall within the exclusive jurisdiction of the National Labor Relations Board;
- Claims for benefits under a plan that is governed by Employee Retirement Income Security Act of 1974 ("ERISA");
- Any individual claims EMPLOYEE may have against MAXIM or that MAXIM may have against EMPLOYEE for temporary or preliminary or permanent injunctive relief (including a temporary restraining order) which are based upon claims of unfair competition and/or the use and/or unauthorized disclosure of trade secrets or other confidential information are not subject to the terms of this agreement; EMPLOYEE or MAXIM, therefore, may seek and obtain appropriate injunctive relief from a court or other tribunal for such claims; and
- Any other dispute or claim that has been expressly excluded from arbitration by statute, regulation or state law that is not preempted by the Federal Arbitration Act.

Nothing in this Agreement should be interpreted as restricting or prohibiting  EMPLOYEE from filing a charge or complaint with the U.S. Equal Employment Opportunity Commission, the National Labor Relations Board, the Department of Labor, the Occupational Safety and Health Commission, the Securities and Exchange Commission, any other federal, state, or local administrative agency charged with investigating and/or prosecuting complaints under any applicable federal, state or municipal law or regulation; however, any Covered Claim that is not finally resolved through the agency proceedings must be submitted to arbitration in accordance with this agreement.  A federal, state, or local agency would also be entitled to investigate the charge in accordance with applicable law.

c) Arbitration Terms and Procedures

 The terms, procedures and rules that regulate the mutual agreement to arbitrate disputes and claims are set forth in Attachment A and are incorporated herein by reference.

13. **MODIFICATION**:  The Agreement supersedes any prior agreement between the parties including but not limited to any prior agreement concerning the subject matter of dispute resolution.  This Agreement may only be modified, revoked and/or terminated by a subsequent written agreement signed by the EMPLOYEE and a Vice President of MAXIM which specifically states the parties' intent to modify, revoke and/or terminate this Agreement or by an agreement signed by a designated officer of MAXIM.  The parties hereto understand that this Agreement shall remain in effect not withstanding any job change or job assignment by EMPLOYEE within MAXIM or its organization.

14. **TERMINATION**:  Paragraphs 4 through 15, inclusive of this Agreement will survive the termination of EMPLOYEE's employment with MAXIM, as well as the termination or expiration of any benefit of such employment.  In the event that EMPLOYEE's employment with MAXIM is severed or terminated and EMPLOYEE is subsequently re−employed by MAXIM, this Agreement will remain in full force and effect during such subsequent employment and will survive the termination of such subsequent employment.

15. **ENTIRE AGREEMENT**:  This Agreement and Attachment A represent the entire agreement between the parties with respect to the

subject matter covered by this Agreement. This Agreement supersedes any and all prior agreements or understandings, oral or written between the parties hereto pertaining to the subject matter covered by this Agreement, and may not be changed orally. EMPLOYEE consents and agrees that MAXIM may assign this Agreement to any subsidiary, parent, affiliate or successor of MAXIM, or to any transferee of all of the assets of MAXIM, and such assignment shall not, in and of itself, constitute a termination of the EMPLOYEE's employment hereunder. EMPLOYEE acknowledges that the covenants and conditions of this Agreement are reasonable and fair. EMPLOYEE further recognizes that the restrictions and conditions contained herein are necessary for the protection of MAXIM's business.

EMPLOYEE ACKNOWLEDGES THAT:

EMPLOYEE HAS CAREFULLY READ THIS AGREEMENT AND UNDERSTANDS THE TERMS OF THIS AGREEMENT. THIS AGREEMENT IS BEING SIGNED VOLUNTARILY. IN ENTERING INTO THIS AGREEMENT, EMPLOYEE IS NOT RELYING ON ANY PROMISES OR REPRESENTATIONS BY MAXIM EXCEPT THOSE CONTAINED IN THIS AGREEMENT.

EMPLOYEE HAS BEEN GIVEN THE OPPORTUNITY TO DISCUSS THIS AGREEMENT WITH PRIVATE LEGAL COUNSEL AND HAS EXERCISED THAT OPPORTUNITY TO THE EXTENT EMPLOYEE WISHES TO DO SO.

_____
Maxim Representative
MAXIM HEALTHCARE SERVICES, INC.:

04/28/2017
_____
Date

EMPLOYEE:

Jerome Charles
_____
(Print Name)

Jerome Charles
_____
(Signature)

4/19/17
_____
Date

ATTACHMENT A

## ARBITRATION TERMS AND PROCEDURES

a) Final and Binding Arbitration

EMPLOYEE and MAXIM understand and agree that the arbitration of any and all existing or future disputes and claims under this Agreement shall be instead of a court trial before a judge and/or a jury. EMPLOYEE and MAXIM also understand and agree that, by signing this Agreement, they are expressly waiving any and all rights to a trial before a judge and/or a jury regarding any disputes and claims which they now have or which they may in the future have that are subject to arbitration under this Agreement. EMPLOYEE and MAXIM also understand and agree that the arbitrator's decision will be final and binding on both MAXIM and EMPLOYEE, subject to review on the grounds set forth in the Federal Arbitration Act.

b) Class, Collective, or Representative Action Waiver

To the extent permitted by law, all covered claims under this Agreement must be brought in the parties' individual capacity, and not as a plaintiff or class member in any purported class, collective or representative action or proceeding. No claims may be brought or maintained on a class, collective or representative basis either in court or in arbitration. All such claims will be decided on an individual basis in arbitration pursuant to this Agreement. The parties expressly waive any right with respect to any Covered Claims to submit, initiate, or participate in a representative capacity or as a plaintiff, claimant or member in a class action, collective action, or other representative or joint action, regardless of whether the action is filed in arbitration or in court. If, for any reason, the waiver of any ability to initiate or maintain a claim as a class, collective or representative action is found to be unenforceable or invalid, then any such putative class, collective, or representative action claim shall be litigated and decided in a court of competent jurisdiction, and not in arbitration. Any issue concerning the enforceability or validity of this waiver must be decided by a court of competent jurisdiction, and not by an arbitrator. Claims may not be joined or consolidated in arbitration with Claims brought by other individual(s), and no damages or penalties may be sought or recovered on behalf of other individuals, unless agreed to in writing by all parties.

The arbitrator's authority to resolve disputes and make awards under this Agreement is limited to disputes between: (i) EMPLOYEE and

MAXIM; and (ii) EMPLOYEE and any current or former officers, directors, employees and agents, if such individual is sued for conduct arising out of their employment with MAXIM. No arbitration award or decision will have any preclusive effect as to issues or claims in any dispute with anyone who is not a named party to the arbitration.

Notwithstanding the foregoing, EMPLOYEE individually or on behalf of others, has the right to challenge the validity of this waiver on such grounds as may exist in law or equity for the revocation of any contract, and MAXIM will not discipline, discharge or engage in any retaliatory action against such EMPLOYEE in the event he/she chooses to challenge the validity of this waiver or engage in any other protected concerted activity under Section 7 of the National Labor Relations Act. However, MAXIM reserves the right to attempt to enforce this waiver in any appropriate forum.

c) <u>Arbitration Procedures</u>

EMPLOYEE and MAXIM understand and agree that arbitration pursuant to this Agreement to arbitrate shall be conducted before a single, neutral arbitrator of the American Arbitration Association ("AAA") (unless the Parties agree upon another mutually acceptable arbitrator, in which case the arbitration will be conducted before such mutually acceptable arbitrator) in accordance with and selected pursuant to the then–current rules and procedures of the Employment Arbitration Rules of the AAA to the extent not inconsistent with the terms of this Agreement; provided, however, that the Arbitrator shall allow the discovery authorized under the Federal Rules of Civil Procedure or any other discovery required by state law in arbitration proceedings. Also, to the extent that any of the Employment Arbitration Rules or anything in this Agreement conflicts with any arbitration procedures required by law, the arbitration procedures required by law shall govern. EMPLOYEE and MAXIM also agree that nothing in this Agreement relieves either of them from any obligation they may have to exhaust certain administrative remedies before arbitrating any claims or disputes under this Agreement.

The Arbitrator shall have jurisdiction to hear and rule on pre–hearing disputes and is authorized to hold pre–hearing conferences by telephone or in person, as the Arbitrator deems necessary. The Arbitrator shall have the authority to entertain a motion to dismiss and/or a motion for summary judgment by any party.

Either party may obtain a court reporter to provide a stenographic record of proceedings.

Either party, upon request at the close of hearing, shall be given leave to file a post–hearing brief. The time for filing such a brief shall be set by the Arbitrator.

The Arbitrator shall render a written award and opinion with the essential findings and conclusions on which the award is based.

Either party shall have the right, within 20 days of issuance of the Arbitrator's opinion, to file with the Arbitrator a motion to reconsider (accompanied by a supporting brief), and the other party shall have 20 days from the date of the motion to respond. The Arbitrator thereupon shall reconsider the issues raised by the motion and, promptly, either confirm or change the decision, which (except as provided by this Agreement) shall then be final and conclusive upon the parties.

The most current Employment Arbitration Rules of the AAA may be found on the Internet at www.adr.org. A printed copy of these rules is also available from MAXIM upon request.

d) <u>Damages and Other Relief</u>

Any Covered Claims arbitrated hereunder are subject to the same limitations regarding damages and ability to obtain other relief, and affirmative rights to individual damages and other relief, as would have applied if the claim was made, and proceeded, in a judicial forum.

e) <u>Place of Arbitration</u>

The parties understand and agree that the arbitration shall take place in the state in which the EMPLOYEE currently or last worked for MAXIM, unless otherwise agreed by the parties.

f) <u>Time limitation on Filing Claims</u>

The parties understand and agree that any demand for arbitration by either the EMPLOYEE or MAXIM shall be filed within the statute of limitation that is applicable to the claim(s) upon which arbitration is sought or required. Any failure to file a demand for arbitration within this time frame and according to these rules shall constitute a waiver of all rights to raise any claim in any forum arising out of any dispute that was subject to arbitration. All such untimely claims shall be deemed barred by the applicable statute of limitations. The date of the filing is the date on which written notice by the party seeking arbitration stating that party's intention to arbitrate is received by AAA.

In the event EMPLOYEE files a demand for arbitration with AAA, the EMPLOYEE must serve MAXIM with a copy of the demand within ten (10) days of filing with AAA, directing the copy to MAXIM's registered agent.

In the event MAXIM files a demand for arbitration with AAA, MAXIM must serve the EMPLOYEE with a copy of the demand within ten (10) days of filing with AAA, directing the copy to the EMPLOYEE at the last address provided by the EMPLOYEE, in writing, to MAXIM.

All service hereunder must be made by United States certified or registered mail, return receipt requested.

g)   Governing law

The parties agree that MAXIM is engaged in transactions involving interstate commerce.  They understand and agree that this is an agreement to arbitrate under the Federal Arbitration Act.  To the extent not inconsistent with the Federal Arbitration Act, this agreement to arbitrate and its interpretation, validity, construction, enforcement and performance, as well as disputes and/or claims arising under this Agreement, shall be governed by the laws of the State of Maryland.

h)   Judicial Enforcement

Either EMPLOYEE or MAXIM may bring an action in any court of competent jurisdiction to compel arbitration under this Agreement.  If provided for by the laws of such jurisdiction, either EMPLOYEE or MAXIM may bring an action in any court of competent jurisdiction to enforce or vacate an arbitration award in accordance with such laws.

i)   Costs of arbitration

The parties understand and agree that MAXIM will bear the arbitrator's fee and any other type of expense or cost that the EMPLOYEE would not be required to bear if the dispute or claim was brought in court, as well as any other expense or cost that is unique to arbitration. Notwithstanding the above, if EMPLOYEE is the party initiating the claim, EMPLOYEE is responsible for contributing an amount equal to the filing fee to initiate a claim in the court of general jurisdiction in the state in which EMPLOYEE is (or was last) employed by MAXIM. MAXIM and EMPLOYEE shall each pay their own attorneys' fees incurred in connection with the arbitration, and the arbitrator will not have authority to award attorneys' fees unless a statute or contract at issue in the dispute authorizes the award of attorneys' fees to the prevailing party, in which case the arbitrator shall have the authority to make an award of attorneys' fees as required or permitted by applicable law.  If there is a dispute as to whether MAXIM or EMPLOYEE is the prevailing party in the arbitration, the Arbitrator will decide this issue.

In addition, to the extent that it results in a greater recovery for EMPLOYEE, MAXIM agrees to waive the limitations on the recovery of expert fees as an item of costs imposed by 28 U.S.C. § 1821(b) or any similar statute or rule for reasonable expert fees incurred by EMPLOYEE in any arbitration in which (i) EMPLOYEE prevails on any covered claim in an amount greater than the amount of any prior offer of settlement made by MAXIM, and (ii) such reasonable expert fees were incurred for an expert report or expert testimony that was admitted into evidence and relied upon by the arbitrator in rendering the award on such claims.

# HUSCH BLACKWELL

Tyler C. Hibler
Partner

4801 Main Street, Suite 1000
Kansas City, MO 64112
Direct: 816.983.8325
Fax: 816.983.8080
tyler.hibler@huschblackwell.com

December 16, 2022

**Via Certified Mail**

Mr. Jerome Charles
4777 Balmoral St.
White Plains, MD 20695

      Re:     Breach of Post-Employment Obligations

Dear Mr. Charles:

      Our law firm represents your former employer, Maxim Healthcare Staffing Services, Inc. ("Maxim").  As you are aware, in consideration of your employment with Maxim, you executed the enclosed Employment and Mutual Arbitration Agreements ("Agreements").  *See* 2016 Agreement, attached as **Exhibit A**; *see also* 2017 Agreement, attached as **Exhibit B**.

      By entering into these Agreements, you agreed to be bound by express covenants during and after your employment with Maxim.  I am writing to remind you of these covenants.  You agreed to the following obligations:

      **Agreement Not to Divulge Confidential Information:** Employee agrees that, except as required by the proper performance of his/her duties for maxim or authorized by law, he/she shall not divulge any Confidential Information or Trade Secrets concerning Maxim or any Maxim clients, customers, employees, or Healthcare Employees ('Healthcare Employee' means an employee of Maxim who is or was employed to work at customers or clients of Maxim) to any other person, entity or company besides Maxim.

      **Covenant Not to Compete:** Employee agrees that upon the termination of his/her employment, whether by Maxim or employee and whether with or without case, for a period of eighteen (18) months thereafter, employee shall not directly or indirectly engage in or prepare to engage in, or be employed by, any business that is engaging in or preparing to engage in any aspect of Maxim's business in which employee performed work during the two (2) year period preceding his/her termination of employment, within a radius of fifty (50) miles of the office in which employee worked at the time employee's employment terminated or any other office in

# HUSCH BLACKWELL

December 16, 2022
Page 2

> which employee worked at the time employee's employment terminated or any other office in which employee worked during the two (2) years preceding termination of employment, or as much geographic territory as a court of competent jurisdiction deems reasonable.
>
> **No Client Solicitation:** For a period of eighteen (18) months after employee's termination of employment for whatever reason, employee agrees not to on behalf of him/herself or any other person or entity, approach, contact, solicit or induce any individual, corporation or other entity which is a client or customer of Maxim, about which employee obtained knowledge by reason of employee's employment by Maxim to: (i) enter into any business relationship with a client or customer of Maxim if the business relationship is competitive with any aspect of Maxim's business in which employee worked during the two (2) year period preceding termination of employment, or (ii) reduce or eliminate the business such client or customer conducts with Maxim.
>
> **No Employee Solicitation:** For a period of eighteen (18) months after employee's termination of employment for whatever reason, employee agrees not to, on behalf of him/herself or any other person or entity, approach, contact, solicit or induce any person who has been an internal employee or an external healthcare employee of Maxim with the two (2) year period prior to the date of termination of employee's employment and about whom employee obtained knowledge by reason of employee's employment with Maxim: (i) to cease working for Maxim at clients or customers of Maxim, or (ii) to refrain from beginning work for Maxim at clients or customers of Maxim, or (iii) to provide services to any individual, corporation or entity whose business is competitive with Maxim.

*See* **Exhibit A**; *see also* **Exhibit B**.

In your fiduciary role as Maxim's Business Development Manager, you had access to Maxim's trade secrets and proprietary information.  This information includes, but is not limited to, prices and costs, contractors and customers, marketing and selling methods, and the processes by which Maxim generates and maintains business.  Notably, in your roles with Maxim, you not only managed and assisted clients in the Northern Virginia region, but you also assisted clients staff their entities with traveling healthcare professionals nationwide.

We recently learned that you are currently employed by SnapNurse, Inc. ("SnapNurse"), a direct competitor of Maxim, as Vice President of Business Development.  Based upon information

# HUSCH BLACKWELL

December 16, 2022
Page 3

currently available, it is our understanding and belief that your position requires you to engage in services that are competitive with Maxim's services within the restricted territory identified in the Agreements. Further, it is our belief your employment with SnapNurse includes job duties and tasks which are in violation of the non-solicitation covenants contained within the Agreements.

As outlined within the Agreements, any breach of the non-disclosure, non-compete, or non-solicitation covenants contained within Paragraphs 4, 5, 6, and 7 of the Agreements will cause irreparable damage to Maxim. As a result, within Paragraph 10 of the Agreements, it was agreed that you will pay to Maxim an amount equal to 100 percent of the gross profit, or 25 percent of the gross sales, whichever amount is greater, resulting from any business generated by you, or your new employer, through conduct in violation of the contractual obligations outlined within Paragraphs 4, 5, 6, or 7 of the Agreements. These damages are in addition to any other legal or equitable relief which may be available to Maxim as a result of your breach of the Agreements.

In light of the above, we are writing to remind you of your contractual obligations, and to demand that you immediately cease and desist any conduct which is in violation of the terms and conditions contained within the Agreements. In order to further assess your compliance with the Agreements, we ask that you please provide the following information by **December 30, 2022**:

1.  Please confirm your current residential address;

2.  Identify the address of every location at which you have performed, or will perform, work on behalf of SnapNurse. This includes, but is not limited to, all corporate offices, home/personal offices, client offices, and other remote work locations; and

3.  Identify all actions undertaken taken by you and/or SnapNurse to ensure compliance with the restrictive covenants contained within the Agreement.

In the event you fail to respond as requested, Maxim is prepared to take the necessary and legally appropriate steps, including but not limited to obtaining a court order against you, to protect its rights and prevent any further breach of the Agreements.

Sincerely,

HUSCH BLACKWELL LLP

Tyler C. Hibler

TCH/jmp
Enclosures
cc: SnapNurse, Inc.; The Corporation Trust Company

Husch Blackwell LLP

# Exhibit F



fisherphillips.com

**Nashville**
424 Church Street
Suite 1700
Nashville, TN 37219

(615) 488-2900 | Tel
(615) 488-2928 | Fax

**Writer's Direct Dial:**
(615) 488-2901
**Writer's E-mail:**
jshelton@fisherphillips.com

December 30, 2022

VIA EMAIL ONLY (TYLER.HIBLER@HUSCHBLACKWELL.COM)

Tyler Hibler
Husch Blackwell
4801 Main Street, Suite 1000
Kansas City, MO 64112

  Re: Jerome Charles/SnapNurse

Dear Mr. Hibler:

  My firm represents SnapNurse, Inc. in labor/employment matters. This letter responds to your December 16, 2022 correspondence on behalf of Maxim Healthcare Staffing Services, Inc. ("Maxim") regarding your client's former employee, Jerome Charles.

  SnapNurse understands the importance of conducting business in a fair and ethical manner, and it does not seek or intend to engage in unfair competitive business practices. To that end, we appreciate Maxim reaching out to discuss its concerns regarding Mr. Charles' employment with SnapNurse. We are hopeful that we can put those concerns to rest, and we certainly welcome an open dialogue regarding any unresolved questions or concerns.

  Before hiring Mr. Charles, SnapNurse reviewed his Maxim Employment and Mutual Arbitration Agreement (the "Agreement"). SnapNurse confirms that it understands Mr. Charles' post-employment obligations to Maxim and that it has not engaged in any conduct that interferes with Mr. Charles' performance of his obligations. SnapNurse instructed Mr. Charles, and he agrees, that he is not to solicit any of his former Maxim clients or engage in any recruitment efforts of Maxim personnel. Further, Mr. Charles confirmed to SnapNurse that he does not possess any confidential, proprietary, or trade secret information belonging to Maxim. To the extent he learned any such information while working for Maxim, he understands and agrees that he is not to disclose or use such information in the performance of his duties for SnapNurse.

  It is our understanding that Mr. Charles worked out of Maxim's Falls Church, Virginia office during the period relevant to the Agreement. With that in mind, Mr. Charles' sales activity on behalf of SnapNurse is and will continue to be directed toward accounts located well outside the 50-mile radius from the Maxim Falls Church office. Further, Mr. Charles has not solicited and will not solicit any accounts he pursued or worked with while employed by Maxim, regardless of where they are located.

**Fisher & Phillips LLP**

Atlanta • Baltimore • Bethesda • Boston • Charlotte • Chicago • Cleveland • Columbia • Columbus • Dallas • Denver • Detroit • Fort Lauderdale • Gulfport
Houston • Irvine • Kansas City • Las Vegas • Los Angeles • Louisville • Memphis • Nashville • New Jersey • New Orleans • New York • Orlando • Philadelphia
Phoenix • Pittsburgh • Portland • Sacramento • San Diego • San Francisco • Seattle • Tampa • Washington, DC

December 30, 2022
Page 2

        We hope that this information resolves any concerns Maxim has regarding Mr. Charles' employment with SnapNurse. If Maxim has any further questions, please do not hesitate to let me know and we can set up a call.

                    Very truly yours,


                    Joseph P. Shelton
                    For FISHER & PHILLIPS LLP

Exhibit G

**From:**        Jerome Charles
**Sent:**        Tuesday, October 18, 2022 10:40 AM
**To:**          jcharles1288@gmail.com
**Subject:**     VHCA VCAL
**Attachments:** VHCA-VCAL-Membership-Directory-Updated-100818.pdf; Maxim_Healthcare_Services-VHS.pdf

**Jerome Charles**
*Business Development Manager* **| Maxim Healthcare Staffing**
7600 Leesburg Pike - West Building, Ste. 204 Falls Church, VA 22043
P: 703.270.6078 | F: 855.444.6024| E: jecharle@maximstaffing.com
*"No one ever made a difference by being like everyone else."*



https://www.maximhealthcare.com/

Confidentiality Statement:  The information contained in this facsimile/email transmission is privileged and confidential and is intended only for the use of the recipient listed above.  If you are neither the intended recipient or an employee or agent of the intended recipient responsible for the delivery of this information, you are hereby notified that the disclosure, copying, use or distribution of this information is strictly prohibited.  If you have received this transmission in error, please notify us immediately to arrange for the return of the transmitted documents or to verify their destruction.

Confidential Health Information Attached.  Health care information is personal and sensitive.  It is being faxed/emailed to you after appropriate authorization from the patient or under circumstances that do not require patient authorization.  You, the recipient, are obligated to maintain this information in a safe, secure and confidential manner.  *Re-disclosure without additional patient consent or authorization or as permitted by law is prohibited. Unauthorized re-disclosure or failure to maintain the confidentiality of this information could subject you to penalties under Federal and/or State law*

| | |
|---|---|
| **From:** | Jerome Charles |
| **Sent:** | Friday, February 21, 2020 12:56 PM |
| **To:** | Northern Virginia ST- Recruiters |
| **Subject:** | Allied/Related Services Info |
| **Attachments:** | Alliedplaybook July 2018.pdf; Common Allied Position Descriptions.doc; Educational Services Presentation.pptx; Educational Services Definitions and Acronyms.docx |

Team-

See attached resources for Allied/Related Services.

Thanks,

**Jerome Charles**
*Business Development Manager* **| Maxim Healthcare Services, Inc.**
7600 Leesburg Pike - West Building, Ste. 204 Falls Church, VA 22043
P: 703.270.6078 | F: 855.444.6024| E: jecharle@maxhealth.com
*"No one ever made a difference by being like everyone else."*



https://www.maximhealthcare.com/

Confidentiality Statement: The information contained in this facsimile/email transmission is privileged and confidential and is intended only for the use of the recipient listed above. If you are neither the intended recipient or an employee or agent of the intended recipient responsible for the delivery of this information, you are hereby notified that the disclosure, copying, use or distribution of this information is strictly prohibited. If you have received this transmission in error, please notify us immediately to arrange for the return of the transmitted documents or to verify their destruction.

Confidential Health Information Attached. Health care information is personal and sensitive. It is being faxed/emailed to you after appropriate authorization from the patient or under circumstances that do not require patient authorization. You, the recipient, are obligated to maintain this information in a safe, secure and confidential manner. *Re-disclosure without additional patient consent or authorization or as permitted by law is prohibited. Unauthorized re-disclosure or failure to maintain the confidentiality of this information could subject you to penalties under Federal and/or State law*

**From:**          Jerome Charles
**Sent:**          Thursday, October 20, 2022 3:55 PM
**To:**            jcharles1288@gmail.com
**Subject:**       BDM Commission/resources
**Attachments:**   AM Commission Calculator (BDM Staffing) NEW  1.1.2018.xlsx; Example FOIA_VA.docx; Area 3 – Selling and Operating Travel.pptm; BD sequence.xlsx

**Jerome Charles**
*Business Development Manager* **| Maxim Healthcare Staffing**
7600 Leesburg Pike - West Building, Ste. 204 Falls Church, VA 22043
P: 703.270.6078 | F: 855.444.6024| E: jecharle@maximstaffing.com
*"No one ever made a difference by being like everyone else."*



https://www.maximhealthcare.com/

Confidentiality Statement:  The information contained in this facsimile/email transmission is privileged and confidential and is intended only for the use of the recipient listed above.  If you are neither the intended recipient or an employee or agent of the intended recipient responsible for the delivery of this information, you are hereby notified that the disclosure, copying, use or distribution of this information is strictly prohibited.  If you have received this transmission in error, please notify us immediately to arrange for the return of the transmitted documents or to verify their destruction.

Confidential Health Information Attached.  Health care information is personal and sensitive.  It is being faxed/emailed to you after appropriate authorization from the patient or under circumstances that do not require patient authorization.  You, the recipient, are obligated to maintain this information in a safe, secure and confidential manner.  *Re-disclosure without additional patient consent or authorization or as permitted by law is prohibited. Unauthorized re-disclosure or failure to maintain the confidentiality of this information could subject you to penalties under Federal and/or State law*

| | |
|---|---|
| **From:** | Jerome Charles |
| **Sent:** | Wednesday, September 21, 2022 11:34 AM |
| **To:** | jcharles1288@gmail.com |
| **Subject:** | Business Development Resources |
| **Attachments:** | Allied BDM Training Final Version - 9-21-2022.pdf; BD Sequence 2.0.xlsx; ACT summary.docx; 11-Hyper-Persuasive-Sales-Email-Templates.pdf; SE Sales 101 training.pdf; Indeed Tip sheet.pdf; LinkedIn Prospecting- Overview and tips.pdf; WI New RC Training.pptx; Standard Confirmation Form.docx; Clinical Resource Document. Medical Positions.docx; FW: Atlanta Hot Needs- Med Surg-Grady- Atlanta-RN; Allied/Related Services Info ; RE: Email Template |

**Jerome Charles**
*Business Development Manager* **| Maxim Healthcare Staffing**
7600 Leesburg Pike - West Building, Ste. 204 Falls Church, VA 22043
P: 703.270.6078 | F: 855.444.6024| E: jecharle@maximstaffing.com
*"No one ever made a difference by being like everyone else."*



https://www.maximhealthcare.com/

Confidentiality Statement:  The information contained in this facsimile/email transmission is privileged and confidential and is intended only for the use of the recipient listed above.  If you are neither the intended recipient or an employee or agent of the intended recipient responsible for the delivery of this information, you are hereby notified that the disclosure, copying, use or distribution of this information is strictly prohibited.  If you have received this transmission in error, please notify us immediately to arrange for the return of the transmitted documents or to verify their destruction.

Confidential Health Information Attached.  Health care information is personal and sensitive.  It is being faxed/emailed to you after appropriate authorization from the patient or under circumstances that do not require patient authorization.  You, the recipient, are obligated to maintain this information in a safe, secure and confidential manner.  *Re-disclosure without additional patient consent or authorization or as permitted by law is prohibited. Unauthorized re-disclosure or failure to maintain the confidentiality of this information could subject you to penalties under Federal and/or State law*

| | |
|---|---|
| **From:** | Jerome Charles |
| **To:** | jcharles1288@gmail.com |
| **Subject:** | Contacts To remember Max |
| **Date:** | Thursday, November 3, 2022 12:21:54 PM |
| **Attachments:** | Search Contacts (2).xlsx |
| | Search Contacts (3).xlsx |
| | Search Contacts.xlsx |
| | Search Contacts (1).xlsx |
| | image001.png |
| | Search Contacts (5).xlsx |
| | Search Contacts (6).xlsx |
| | Search Contacts (7).xlsx |

## Jerome Charles

*Business Development Manager* **| Maxim Healthcare Staffing**

7600 Leesburg Pike - West Building, Ste. 204 Falls Church, VA 22043

P: **703.270.6078** | F: 855.444.6024| E: jecharle@maximstaffing.com

*"No one ever made a difference by being like everyone else."*



https://www.maximhealthcare.com/

Confidentiality Statement:  The information contained in this facsimile/email transmission is privileged and confidential and is intended only for the use of the recipient listed above.  If you are neither the intended recipient or an employee or agent of the intended recipient responsible for the delivery of this information, you are hereby notified that the disclosure, copying, use or distribution of this information is strictly prohibited.  If you have received this transmission in error, please notify us immediately to arrange for the return of the transmitted documents or to verify their destruction.

Confidential Health Information Attached.  Health care information is personal and sensitive.  It is being faxed/emailed to you after appropriate authorization from the patient or under circumstances that do not require patient authorization.  You, the recipient, are obligated to maintain this information in a safe, secure and confidential manner.  *Re-disclosure without additional patient consent or authorization or as permitted by law is prohibited. Unauthorized re-disclosure or failure to maintain the confidentiality of this information could subject you to penalties under Federal and/or State law*

[redacted]

---

**From:** Jerome Charles
**Sent:** Thursday, November 3, 2022 11:57 AM
**To:** jcharles1288@gmail.com
**Subject:** FW: COVID Vaccine BD Attack Email
**Attachments:** COVID-19-Vaccination-Program-Interim_Playbook.pdf; fact-sheet-operation-warp-speed.pdf; strategy-for-distributing-covid-19-vaccine.pdf

**Importance:** High

[redacted]

**From:** Jerome Charles
**Sent:** Friday, October 14, 2022 4:36 PM
**To:** jcharles1288@gmail.com
**Subject:** FW: DBO resources
**Attachments:** BDM Boot Camp resource- Updated

**Jerome Charles**
*Business Development Manager* | **Maxim Healthcare Staffing**

[redacted]

**From:** Jerome Charles
**Sent:** Friday, November 4, 2022 11:27 AM
**To:** jcharles1288@gmail.com
**Subject:** FW: Lynn Care Center & Maxim Healthcare Staffing
**Attachments:** MHSS Lynn Care Agreement new.pdf

**Jerome Charles**
*Business Development Manager* | **Maxim Healthcare Staffing**

| | |
|---|---|
| **From:** | Jerome Charles |
| **Sent:** | Monday, November 7, 2022 7:50 AM |
| **To:** | jcharles1288@gmail.com |
| **Subject:** | FW: Resources |
| **Attachments:** | School District Contact List.xlsx; School District Contact Prospecting List.xlsx; Staffing Spread Calculator - Maxim.xlsx; Universal G2.pdf; Candidates I've Called.docx; Copy of School District Contact List.xlsx; Home Work for School Cases.docx; let to the Director Loundon county.docx; local_directors.pdf; Recruiter Growing.pdf; RFP R14077 Renewal.pdf; recruit 1.doc; Recruiter Toolkit 1.0 Participant Guide.pdf; Reporting Compliance Issues and Concerns_ST.PDF; Sentara Open Orders.xlsx; social media.pdf; South Region BD Community-Rate Increases.docx; Staffing Spread Calculator.xlsm; Zip Recruiter Job Applicant Tracker.xlsx; 1 Behavior Standards  Final.pdf; blank-fax-cover-sheet.pdf; contract sheet.docx; Contracts.docx; Cover-Sheet-new.docx; Employment Verification Form.pdf; evaluation.pdf; FINAL Reporting Guidelines Table of Contents.docx; FINAL Reporting Issues Guidelines.docx; FORM_ID Badge.pub; G-2 new form.doc; Hampton Roads Regional Jail Docs b julion.pdf; HC Industry Links.docx; How to do OPs.pdf; Indeed recruiting.docx; INTERVIEW QUESTONS.docx; Life Care Dept of Social Services Sworn Disclosure State.pdf; Linkedin.pdf; LoggingInAndOutOfWorkstations.pdf; Maxim Sales Approach.docx; Name Badge Template.docx; Nurse Brochure.pdf; Prospecting Training.docx |

**Jerome Charles**
*Business Development Manager* | Maxim Healthcare Staffing

---

**From:** Jerome Charles
**Sent:** Monday, November 7, 2022 8:39 AM
**To:** 'jcharles1288@gmail.com' <jcharles1288@gmail.com>
**Subject:** Resources

**Jerome Charles**
*Business Development Manager* | Maxim Healthcare Staffing
7600 Leesburg Pike - West Building, Ste. 204 Falls Church, VA 22043
P: 703.270.6078 | F: 855.444.6024| E: jecharle@maximstaffing.com
*"No one ever made a difference by being like everyone else."*



https://www.maximhealthcare.com/

Confidentiality Statement:  The information contained in this facsimile/email transmission is privileged and confidential and is intended only for the use of the recipient listed above.  If you are neither the intended recipient or an employee or agent of the intended recipient responsible for the delivery of this information, you are hereby notified that the disclosure, copying, use or distribution of this information is strictly prohibited.  If you have received this transmission in error, please notify us immediately to arrange for the return of the transmitted documents or to verify their destruction.

Confidential Health Information Attached.  Health care information is personal and sensitive.  It is being faxed/emailed to you after appropriate authorization from the patient or under circumstances that do not require patient authorization.  You, the recipient, are obligated to maintain this information in a safe, secure and confidential manner.  *Re-disclosure without additional patient consent or authorization or as permitted by law is*

*prohibited. Unauthorized re-disclosure or failure to maintain the confidentiality of this information could subject you to penalties under Federal and/or State law*

[redacted]

**From:** Jerome Charles
**Sent:** Wednesday, October 12, 2022 10:34 AM
**To:** jcharles1288@gmail.com
**Subject:** FW: Sales tool
**Attachments:** New Sales Doc_10.06.22 (002).docx

**Jerome Charles**
***Business Development Manager*** **| Maxim Healthcare Staffing**

███████████

| | |
|---|---|
| **From:** | Jerome Charles |
| **Sent:** | Monday, October 17, 2022 12:59 PM |
| **To:** | jcharles1288@gmail.com |
| **Subject:** | FW: VA Surg Tech Certification |
| **Attachments:** | Regulations Governing Licensure Of Surgical Assistants And Certification Of Surgical Technologists.pdf; VA Surgical Tech Application SOP.pdf |

**Jerome Charles**
*Business Development Manager* | **Maxim Healthcare Staffing**

| | |
|---|---|
| **From:** | Jerome Charles |
| **To:** | jcharles1288@gmail.com |
| **Subject:** | FW: Resources |
| **Date:** | Monday, November 7, 2022 8:49:55 AM |
| **Attachments:** | School District Contact List.xlsx |
| | School District Contact Prospecting List.xlsx |
| | Staffing Spread Calculator - Maxim.xlsx |
| | Universal G2.pdf |
| | Candidates I"ve Called.docx |
| | Copy of School District Contact List.xlsx |
| | Home Work for School Cases.docx |
| | let to the Director Loundon county.docx |
| | local_directors.pdf |
| | Recruiter Growing.pdf |
| | RFP R14077 Renewal.pdf |
| | recruit 1.doc |
| | Recruiter Toolkit 1.0 Participant Guide.pdf |
| | Reporting Compliance Issues and Concerns_ST.PDF |
| | Sentara Open Orders.xlsx |
| | social media.pdf |
| | South Region BD Community-Rate Increases.docx |
| | Staffing Spread Calculator.xlsm |
| | Zip Recruiter Job Applicant Tracker.xlsx |
| | 1 Behavior Standards Final.pdf |
| | blank-fax-cover-sheet.pdf |
| | contract sheet.docx |
| | Contracts.docx |
| | Cover-Sheet-new.docx |
| | Employment Verification Form.pdf |
| | evaluation.pdf |
| | FINAL Reporting Guidelines Table of Contents.docx |
| | FINAL Reporting Issues Guidelines.docx |
| | FORM_ID Badge.pub |
| | G-2 new form.doc |
| | Hampton Roads Regional Jail Docs b julion.pdf |
| | HC Industry Links.docx |
| | How to do OPs.pdf |
| | Indeed recruiting.docx |
| | INTERVIEW QUESTONS.docx |
| | Life Care Dept of Social Services Sworn Disclosure State.pdf |
| | Linkedin.pdf |
| | LoggingInAndOutOfWorkstations.pdf |
| | Maxim Sales Approach.docx |
| | Name Badge Template.docx |
| | Nurse Brochure.pdf |
| | Prospecting Training.docx |
| | image001.png |

**Jerome Charles**
*Business Development Manager* **| Maxim Healthcare Staffing**

**From:** Jerome Charles
**Sent:** Monday, November 7, 2022 8:39 AM
**To:** 'jcharles1288@gmail.com' <jcharles1288@gmail.com>
**Subject:** Resources

**Jerome Charles**
*Business Development Manager* **| Maxim Healthcare Staffing**
7600 Leesburg Pike - West Building, Ste. 204 Falls Church, VA 22043

P: **703.270.6078** | F: 855.444.6024| E: jecharle@maximstaffing.com

*"No one ever made a difference by being like everyone else."*



https://www.maximhealthcare.com/

Confidentiality Statement:  The information contained in this facsimile/email transmission is privileged and confidential and is intended only for the use of the recipient listed above.  If you are neither the intended recipient or an employee or agent of the intended recipient responsible for the delivery of this information, you are hereby notified that the disclosure, copying, use or distribution of this information is strictly prohibited.  If you have received this transmission in error, please notify us immediately to arrange for the return of the transmitted documents or to verify their destruction.

Confidential Health Information Attached.  Health care information is personal and sensitive.  It is being faxed/emailed to you after appropriate authorization from the patient or under circumstances that do not require patient authorization.  You, the recipient, are obligated to maintain this information in a safe, secure and confidential manner.  *Re-disclosure without additional patient consent or authorization or as permitted by law is prohibited. Unauthorized re-disclosure or failure to maintain the confidentiality of this information could subject you to penalties under Federal and/or State law*

**From:**        Jerome Charles
**Sent:**        Monday, October 17, 2022 10:04 PM
**To:**          Jerome Charles
**Subject:**     Fwd: Maxim Healthcare Staffing - UVA Community Health Agreement
**Attachments:** MHSS - UVA Community Health Rate Rider--redline.docx; MHSS - UVA Health MSA--redline.docx

**Jerome Charles**
*Business Development Manager* **| Maxim Healthcare Staffing, Inc.**

| | |
|---|---|
| **From:** | Jerome Charles |
| **Sent:** | Thursday, October 20, 2022 3:59 PM |
| **To:** | jcharles1288@gmail.com |
| **Subject:** | GOvernment Resources |
| **Attachments:** | October 2022 SE SLG Call.pptx |

**Jerome Charles**

*Business Development Manager* | **Maxim Healthcare Staffing**

7600 Leesburg Pike - West Building, Ste. 204 Falls Church, VA 22043

P: 703.270.6078 | F: 855.444.6024| E: jecharle@maximstaffing.com

*"No one ever made a difference by being like everyone else."*



https://www.maximhealthcare.com/

Confidentiality Statement:  The information contained in this facsimile/email transmission is privileged and confidential and is intended only for the use of the recipient listed above.  If you are neither the intended recipient or an employee or agent of the intended recipient responsible for the delivery of this information, you are hereby notified that the disclosure, copying, use or distribution of this information is strictly prohibited.  If you have received this transmission in error, please notify us immediately to arrange for the return of the transmitted documents or to verify their destruction.

Confidential Health Information Attached.  Health care information is personal and sensitive.  It is being faxed/emailed to you after appropriate authorization from the patient or under circumstances that do not require patient authorization.  You, the recipient, are obligated to maintain this information in a safe, secure and confidential manner.  *Re-disclosure without additional patient consent or authorization or as permitted by law is prohibited. Unauthorized re-disclosure or failure to maintain the confidentiality of this information could subject you to penalties under Federal and/or State law*

**Business Development**

| | |
|---|---|
| **From:** | Jerome Charles |
| **Sent:** | Thursday, October 6, 2022 1:06 PM |
| **To:** | jcharles1288@gmail.com |
| **Subject:** | INterview Pursuit Plan Documents |
| **Attachments:** | APPLICATION PLANv2.pptx; SS&O Sample Pursuit Plan.xlsx; SS&O Pursuit Plan.docx |

**Jerome Charles**
*Business Development Manager* **| Maxim Healthcare Staffing**

| **From:** | Jerome Charles |
|---|---|
| **Sent:** | Friday, November 4, 2022 10:02 AM |
| **To:** | jcharles1288@gmail.com |
| **Subject:** | Max Tool Kit |
| **Attachments:** | DBO Whales.pptx; NOVA 5 Year Projections.pptx; NOVA Schools 30 60 90.pptx; Jerome Charles CV Maxim.docm; Jerome Charles CV.docm; Jerome Charles CV.pdf; Jerome Charles CV2.pdf; Jerome Charles Resume .docm; DBO Territory Review Prep.pptx; Long-Term Care Staffing Services_ST.pdf; Agreement.pdf; DBO Toolkit_Staffing (1).pdf |

**Jerome Charles**
*Business Development Manager* **| Maxim Healthcare Staffing**
7600 Leesburg Pike - West Building, Ste. 204 Falls Church, VA 22043
P: 703.270.6078 | F: 855.444.6024| E: jecharle@maximstaffing.com
*"No one ever made a difference by being like everyone else."*



https://www.maximhealthcare.com/

Confidentiality Statement:  The information contained in this facsimile/email transmission is privileged and confidential and is intended only for the use of the recipient listed above.  If you are neither the intended recipient or an employee or agent of the intended recipient responsible for the delivery of this information, you are hereby notified that the disclosure, copying, use or distribution of this information is strictly prohibited.  If you have received this transmission in error, please notify us immediately to arrange for the return of the transmitted documents or to verify their destruction.

Confidential Health Information Attached.  Health care information is personal and sensitive.  It is being faxed/emailed to you after appropriate authorization from the patient or under circumstances that do not require patient authorization.  You, the recipient, are obligated to maintain this information in a safe, secure and confidential manner.  *Re-disclosure without additional patient consent or authorization or as permitted by law is prohibited. Unauthorized re-disclosure or failure to maintain the confidentiality of this information could subject you to penalties under Federal and/or State law*

| | |
|---|---|
| **From:** | Jerome Charles |
| **To:** | jcharles1288@gmail.com |
| **Subject:** | Max |
| **Date:** | Friday, November 4, 2022 11:01:30 AM |
| **Attachments:** | DBO - Eric P - Powerpoint - 1.11.21.pptx |
| | image001.png |

## Jerome Charles

*Business Development Manager* **| Maxim Healthcare Staffing**

7600 Leesburg Pike - West Building, Ste. 204 Falls Church, VA 22043

P: **703.270.6078** | F: 855.444.6024| E: jecharle@maximstaffing.com

*"No one ever made a difference by being like everyone else."*



https://www.maximhealthcare.com/

Confidentiality Statement:  The information contained in this facsimile/email transmission is privileged and confidential and is intended only for the use of the recipient listed above.  If you are neither the intended recipient or an employee or agent of the intended recipient responsible for the delivery of this information, you are hereby notified that the disclosure, copying, use or distribution of this information is strictly prohibited.  If you have received this transmission in error, please notify us immediately to arrange for the return of the transmitted documents or to verify their destruction.

Confidential Health Information Attached.  Health care information is personal and sensitive.  It is being faxed/emailed to you after appropriate authorization from the patient or under circumstances that do not require patient authorization.  You, the recipient, are obligated to maintain this information in a safe, secure and confidential manner.  *Re-disclosure without additional patient consent or authorization or as permitted by law is prohibited. Unauthorized re-disclosure or failure to maintain the confidentiality of this information could subject you to penalties under Federal and/or State law*

**Shipp, Shawn**

| | |
|---|---|
| **From:** | Jerome Charles |
| **Sent:** | Wednesday, October 26, 2022 2:35 PM |
| **To:** | jcharles1288@gmail.com |
| **Subject:** | Resources |
| **Attachments:** | Evolent Health Contacts.docx; Search Contacts.xlsx; tempprofiles_NOVA.xlsx |

**Jerome Charles**
*Business Development Manager* **| Maxim Healthcare Staffing**
7600 Leesburg Pike - West Building, Ste. 204 Falls Church, VA 22043
P: 703.270.6078 | F: 855.444.6024| E: jecharle@maximstaffing.com
*"No one ever made a difference by being like everyone else."*



https://www.maximhealthcare.com/

Confidentiality Statement:  The information contained in this facsimile/email transmission is privileged and confidential and is intended only for the use of the recipient listed above.  If you are neither the intended recipient or an employee or agent of the intended recipient responsible for the delivery of this information, you are hereby notified that the disclosure, copying, use or distribution of this information is strictly prohibited.  If you have received this transmission in error, please notify us immediately to arrange for the return of the transmitted documents or to verify their destruction.

Confidential Health Information Attached.  Health care information is personal and sensitive.  It is being faxed/emailed to you after appropriate authorization from the patient or under circumstances that do not require patient authorization.  You, the recipient, are obligated to maintain this information in a safe, secure and confidential manner.  *Re-disclosure without additional patient consent or authorization or as permitted by law is prohibited. Unauthorized re-disclosure or failure to maintain the confidentiality of this information could subject you to penalties under Federal and/or State law*

**Shipp, Shawn**

---

| | |
|---|---|
| **From:** | Jerome Charles |
| **Sent:** | Friday, November 4, 2022 10:02 AM |
| **To:** | jcharles1288@gmail.com |
| **Subject:** | Tool kit max |
| **Attachments:** | Kyle Foss DBO Business Plan-NEOhio.pptx |

**Jerome Charles**
*Business Development Manager* **| Maxim Healthcare Staffing**
7600 Leesburg Pike - West Building, Ste. 204 Falls Church, VA 22043
P: 703.270.6078 | F: 855.444.6024| E: jecharle@maximstaffing.com
*"No one ever made a difference by being like everyone else."*



https://www.maximhealthcare.com/

Confidentiality Statement:  The information contained in this facsimile/email transmission is privileged and confidential and is intended only for the use of the recipient listed above.  If you are neither the intended recipient or an employee or agent of the intended recipient responsible for the delivery of this information, you are hereby notified that the disclosure, copying, use or distribution of this information is strictly prohibited.  If you have received this transmission in error, please notify us immediately to arrange for the return of the transmitted documents or to verify their destruction.

Confidential Health Information Attached.  Health care information is personal and sensitive.  It is being faxed/emailed to you after appropriate authorization from the patient or under circumstances that do not require patient authorization.  You, the recipient, are obligated to maintain this information in a safe, secure and confidential manner.  *Re-disclosure without additional patient consent or authorization or as permitted by law is prohibited. Unauthorized re-disclosure or failure to maintain the confidentiality of this information could subject you to penalties under Federal and/or State law*

# Exhibit I

# Maxim Electronic Resources Policy

4.5     Non-business Use of the Company's Electronic Resources and Personal Devices

4.5.1     Guidelines for Non-business Use of Electronic Resources:  Non-business use of the Company's Electronic Resources is subject to the following guidelines:

4.5.1.1     All non-business communications using the Company's Electronic Resources are subject to this policy in its entirety and to all other Company policies. All non-business communications using the Company's Electronic Resources may be monitored at any time in accordance with this policy.

4.5.1.2     Non-business communications using the Company's Electronic Resources are not private.  You should not use the Company's Electronic Resources for communications that you wish to keep private, privileged, or confidential.

4.5.1.3     Non-business uses of the Company's Electronic Resources shall not preempt any business activity and shall not interfere with your productivity or the productivity of others.

4.5.1.4     Access to Personal Electronic Mail Accounts:  Your use of the Company's Electronic Resources to gain access to a personal email account is subject to this Policy in its entirety.  You should be aware that a copy of email accessed from, or transmitted through, your personal email account using the Company's Electronic Resources may be stored on the Company's Electronic Resources.  The Company will monitor and review such email at its discretion.

4.5.2     Use of Portable Storage Devices:  Because of the ease with which information can be copied to portable storage devices, and because of the risk of loss of control such copying poses to the information of the Company, Company Personnel, and the Company's customers and clients, the Company finds it necessary to place controls on portable storage devices.  You should not connect any type of personal electronic storage device (for example, a laptop, flash drive, iPhone, iPod, iPad, MP3 player, etc.) to the Company's Electronic Resources without the prior, written authorization of your supervisor.  If you bring a personal electronic storage device onto Company premises, you thereby give permission to the Company, to the extent permitted by law, (a) to inspect the device at any time, and (b) to analyze and make a duplicate copy of any files, other data, or data storage media that may be within, or connectable to, the device.  If you do not want your personal electronic storage device inspected, you should not bring such a device onto Company premises or connect such a device to the Company's Electronic Resources.

4.6     Unacceptable Uses of Electronic Resources:  Misuse or abuse of the Company's Electronic Resources and, in particular, the Company's email, instant messaging system, and database systems, could expose the Company and any individual who engages in such improper conduct to civil and even criminal liability.  For this reason, you should carefully review the following list of prohibited conduct and comply with it.  This list is by no means exhaustive, but is an attempt to provide a framework for activities that fall into the category

CONFIDENTIAL

# Maxim Electronic Resources Policy

of unacceptable use.  Any conduct listed below as well as any other conduct constituting misuse or abuse of the Company's Electronic Resources is grounds for discipline up to and including termination of employment or contract.  In the event you violate this Policy, the Company reserves the right to rescind your authorization to access the Company's computers and terminate your access without further notice from the Company.

4.6.1      No Illegal or Unethical Conduct:  You shall not engage in any activity which is illegal under local, state, federal, or international law while using the Company's Electronic Resources.  Additionally, you shall not use the Company's Electronic Resources to engage in unethical conduct or to violate any Company policy.

4.6.2      No Violation of the Rights of Any Person or Company:  You shall not violate the rights of any person or company protected by copyright, trade secret, patent, or other intellectual property laws or similar regulations, including, but not limited to, the installation or distribution of "pirated" or other software products that are not appropriately licensed or permitted for use by the Company.

4.6.3      No Illegal Export of Software:  You shall not export software, technical information, encryption software, or technology, in violation of international or regional export control laws.  You shall consult with your supervisor and the Legal Department prior to export of any material that is in question.

4.6.4      No Improper Use or Disclosure of Confidential Information:  You shall not use the Company's Electronic Resources to disclose confidential or proprietary information belonging to the Company, Company Personnel, or any of the Company's customers, clients, vendors, or other business partners, to any person or party outside the Company without proper authorization.  This includes sending confidential or proprietary information of the Company to your home or other personal email account without a justified business purpose for doing so.  You shall not store the Company's confidential information on the local drive of any computer (for example, the "C:" drive), on any portable storage medium without the prior, written authorization of your supervisor.  Also, you shall not store the Company's confidential information in any data storage service that is not controlled by the Company, such as any online, Internet-based data backup, file serving, or document hosting service, without the prior, written consent of the Information Security Officer.  In any case, any such storage should be for short-term purposes only, such as accessibility of information during business travel, and the stored information should be deleted promptly after the short-term purpose has been accomplished.

4.6.5      No Offensive or Harassing Messages:  You shall not use the Company's Electronic Resources to create, retrieve, store, send, receive, or view offensive material.  Messages stored within or transmitted by computer, voice mail, email, instant messaging, or telephone systems shall not contain content that may reasonably be considered offensive to any other party.  Offensive material includes, but is not limited to, sexual comments, jokes, or images; racial slurs; gender-specific comments; or any

CONFIDENTIAL

# Exhibit J

# Business and Financial Information

## Accuracy of Company Records

Maxim requires that all books and records, including medical records, financial reports, accounting records, expense report, time records, marketing documents, press releases, and other documents that reflect the Company's business, be accurate and complete. All Company business records produced by employees or Contractors, including those kept off Company premises, are the sole property of Maxim.

All financial books, records, and accounts must correctly reflect transactions and events, and conform to generally accepted accounting principles, applicable laws, rules, regulations, and to the Company's system of internal controls.

The Company's guidelines for maintaining accurate books and records:
- Document accurately; do not make false or misleading entries;
- Make all entries to the Company's records in a timely manner. Do not pre-date or post-date any document;
- If corrections are required, follow the Company's policies and procedures governing record corrections;
- Do not omit relevant information;
- Use care when reviewing documents before approving them; and
- Promptly refund payments that are more than amounts billed or credit customer accounts.

## Protecting the Company's Proprietary Information, Trade Secrets, and Intellectual Property

Every employee is responsible for safeguarding from public disclosure Maxim's proprietary information and trade secrets. Proprietary information includes, but is not limited to, information about the Company's finances, business practices, processes, employees, and clients. Trade secrets are valuable Company information and intellectual property used and known by the Company that may not be subject to patent, copyright, or trademark protections, but which will not generally be known by competitors or other third parties, and which Maxim takes commercially reasonable measures to protect.