# Hennessy, Michaeli

| | |
|---|---|
| **From:** | Hibler, Tyler |
| **Sent:** | Friday, February 17, 2023 4:35 PM |
| **To:** | Shelton, Joseph |
| **Cc:** | Scheiderer, Megan; Schrier, Michael; Hennessy, Michaeli; Shipp, Shawn |
| **Subject:** | Maxim v. Jerome Charles - Deposition Request |
| **Attachments:** | Draft Subpoena.pdf; Maxim - Charles  Stipulated Protective Order -- Draft.docx |

Mr. Shelton:

Following up on our prior communications, attached is a draft subpoena outlining deposition topics and document requests directed to SnapNurse in connection with the case of *Maxim Healthcare Staffing Services v. Jerome Charles* that is pending in the District of Maryland.

Please review the topics and requests outlined on Exhibits A and B of the draft subpoena and provide a date/location SnapNurse's corporate representative is available to provide testimony between March 20 and March 28, 2023. If you have any objections to these requests that you would like to discuss, I am available to confer via telephone next Tuesday after 10:00 a.m. CST.  Once a date is provided, we will issue a formal notice and subpoena.

Pursuant to the District of Maryland's discovery guidelines, please provide the names of the designated persons who will testify, and the areas that each person will testify to, no fewer than five (5) business days before the deposition is scheduled to begin.  Additionally, in order to expedite deposition questioning, Maxim requests SnapNurse produce the requested documents, including electronically stored information, in a reasonable time prior to the deposition.  We again suggest five (5) business days before the deposition is scheduled to begin.

During our prior communications we also discussed the potential need for a protective order.  Utilizing the approved form from the District of Maryland as a template, we have prepared the attached protective order that we plan to propose for submission in this case.  This includes an attorney-eyes only designation to protect the disclosure of information which could cause competitive harm to the discloser if a market competitor of the discloser were to review such documents or information.

Finally, please provide dates for the deposition of Jamie Alix Barber, Mr. Charles' supervisor at SnapNurse, between March 20 and March 28, 2023.

Thank you,

**Tyler Hibler**
**Partner**

**HUSCH BLACKWELL LLP**
4801 Main Street,
Suite 1000
Kansas City, MO 64112-2551

Direct: 816-983-8325
Fax: 816-983-8080
Tyler.Hibler@huschblackwell.com
huschblackwell.com
 vBio|vCard

**Healthcare, Life Sciences & Education**
**Labor & Employment**

**Husch Blackwell is redefining partnership and client service. With 800+ lawyers in more than 20 offices across the United States including The Link virtual office, we are a national law firm with a coast-to-coast footprint focused on tackling the most complex business challenges.**

# UNITED STATES DISTRICT COURT
for the
District of Maryland

| | |
|---|---|
| MAXIM HEALTHCARE STAFFING SERVICES, INC. ) | |
| *Plaintiff* ) | |
| v. ) | Civil Action No. No. 8:23-cv-00115-PX |
| JEROME CHARLES ) | |
| ) | |
| *Defendant* ) | |

**SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION**

To:
_____
*(Name of person to whom this subpoena is directed)*

☑ **Testimony:** YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters: See attached Definitions and Exhibit A to Subpoena

| Place: TBD | Date and Time: |
|---|---|

The deposition will be recorded by this method:  stenographically

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:
    See attached Definitions and Exhibit B to Subpoena

   The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 02/17/2023

| *CLERK OF COURT* | |
| | OR |
| _____ | Michael J. Schrier, Esq. |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Plaintiff Maxim
_____, who issues or requests this subpoena, are:

Michael J. Schrier, 1801 Pennsylvania Ave., NW, Suite 1000, Washington, D.C. 20006; T: (202) 378-2313; michael.schrier@huschblackwell.com

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No. No. 8:23-cv-00115-PX

# PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____   on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

**Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)**

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
     **(i)** is a party or a party's officer; or
     **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
     **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*

   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

     **(i)** fails to allow a reasonable time to comply;
     **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
     **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
     **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

     **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
     **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
     **(i)** expressly make the claim; and
     **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## DEFINITIONS FOR EXHIBIT A AND EXHIBIT B

Unless otherwise indicated, the following items have the following meanings when used in these definitions and instructions and in the following topics:

1. **"Maxim"** shall mean Maxim Healthcare Staffing Services, Inc., the Plaintiff in the present litigation, and all current or former officers, directors, agents, servants, employees, affiliates, attorneys, accountants, representatives, and predecessor entities.

2. **"Charles"** and **"Defendant"** shall mean Jerome Charles, the Defendant in the present litigation, and anyone acting on his behalf.

3. **"SnapNurse"** means SnapNurse, Inc. and all current or former officers, directors, agents, servants, employees, affiliates, attorneys, accountants, representatives, and predecessor entities.

4. **"Case," "Action,"** or **"Lawsuit"** shall mean the present litigation, case captioned as *Maxim Healthcare Staffing Services, Inc. v. Jerome Charles*, No. 8:23-cv-00115-PX.

5. **"Communications"** shall mean, without limitation, any oral, written, or electronic transmission of information, demands, or questions, including but not limited to conversations, meetings, discussions, telephone calls, seminars, conferences, writings, letters, messages, notes, memoranda, emails (including attachments), text messages, or any other form of instant message.

6. **"Document"** refers to any electronically stored information ("ESI"), written or graphic matter, or other physical thing containing information, however produced or reproduced, of every kind and description and in any medium, including any original or draft (with or without notes or changes thereon) of any of the foregoing. "Document" includes (without limiting the generality of the foregoing) e-mails, text messages, chats, SMS messages, social media postings, invitations, correspondence, blueprints, drawings, papers, books, accounts, letters, photographs,

objects, microfilm, telegrams, notes or sound recordings of any type of personal or telephone conversations or meetings or conferences, minutes of directors or committee meetings, memoranda, reports, forecasts, analyses, contracts, licenses, agreements, ledgers, books of account, vouchers, bank checks, invoices, charge slips, expense account reports, hotel charges, receipts, freight bills, working papers, drafts, statistical records, cost sheets, abstracts of bids, stenographers' notebooks, calendars, electronic or magnetic data, appointment books, diaries, time sheets or logs, job or transactions files, computer printouts, or papers similar to any of the foregoing however denominated.  Any document bearing on any portion thereof any mark (including but not limited to initials, stamped indicia, comments or notations or any character) not a part of the original text or photographic reproduction thereof is to be considered as a separate document.

7.     The terms "relate to" and "relating to" mean "refer to," "constitute," "contain," "mention," "discuss," "concern" or "comment upon."

HB: 4873-3824-9807.2

**EXHIBIT A - EXAMINATION TOPICS**

1. SnapNurse's policies and procedures in place from January 2022 to Present, if any, that discuss any measures taken by SnapNurse to prevent the disclosure or use of a third-party's confidential, proprietary, or trade secret information by SnapNurse Employees.

2. The organizational structure of the department within which Charles worked at SnapNurse, including who reported to Charles and who Charles reported to.

3. The employment relationship between SnapNurse and Charles.

4. Agreements entered between SnapNurse and Charles, including but not limited to employment agreements and the terms and conditions for the same.

5. Charles' employment at SnapNurse from November 2022 to Present.

6. The hiring and recruiting of Charles for a position with SnapNurse.

7. The training provided to Charles during his employment at SnapNurse, including onboarding training pertaining to bringing third-party documents and information to SnapNurse.

8. Charles' job duties with SnapNurse.

9. Charles' salary, benefits, and any additional compensation with SnapNurse from November 2022 to Present, including how such compensation was earned.

10. Customers or potential customers, that were also customers or targets of Maxim, with whom Charles was in contact, in any way, relating to his employment with SnapNurse.

11. The identity of candidates, who were either currently or formerly employed by Maxim at any time, that Charles interviewed, recommended, or communicated with about employment with SnapNurse.

12. The SnapNurse electronic devices, accounts, and systems that Charles had access to while employed with SnapNurse from November 2022 to Present.

13. The termination of Charles' employment with SnapNurse.

14. SnapNurse's knowledge of documents Charles took from Maxim, including if the documents have been sent to and/or received by any other employee at SnapNurse.

15. Documents and information that Charles provided or transferred to SnapNurse (regardless of timeframe) related to Maxim, Maxim's clients, Maxim's prospective clients, Maxim's employees, or Maxim's prospective employees.

16. Information about the markets, client industries, and geographic territories within which Charles worked during his employment at SnapNurse, including:

    i. The clients acquired by SnapNurse in Charles' market/territory while Charles was employed by SnapNurse to Present;
    ii. The prospective Clients, for whom SnapNurse had not previously performed work, solicited by SnapNurse in Charles' market/territory while Charles was employed by SnapNurse to Present; and
    iii. The SnapNurse employees who worked with Charles in that market/territory.

17. Information about other employees hired by SnapNurse who are known to have been employed by Maxim, including their name, position, territory, reporting structure, and dates of employment.

18. Describe how SnapNurse searched for all documents and information described in Exhibit B *infra*, and the information learned from the search, including the location of the documents and the identify of any individuals who accessed said documents and information.

19. Any forensic analysis of SnapNurse's devices and systems conducted to identify documents or information obtained from Maxim, and the information learned from any such forensic analysis, including the location of the documents and information found, when the Document was uploaded to SnapNurse's systems, and information about who accessed the Document and/or information.

20. Communications between SnapNurse and Charles from August 2022 to January 2023 that discussed Charles' employment with Maxim.

21. SnapNurse's knowledge of Charles' employment agreement with Maixm.

22. Actions undertaken by SnapNurse to ensure Maxim's former employees, including Charles, adhere to confidentiality and restrictive covenant obligations.

23. Communications between Charles and other SnapNurse employees referencing Maxim's clients or prospective clients.

24. Communications between Charles and other SnapNurse employees referencing Maxim's employees or prospective employees.

25. Communications between Charles and other SnapNurse employees regarding documents and information obtained by Charles solely through his employment with Maxim.

26. Communications between Charles and SnapNurse regarding the solicitation of Maxim's clients, customers, or employees.

HB: 4873-3824-9807.2

## **EXHIBIT B – DOCUMENT REQUESTS**

1. SnapNurse's policies and procedures in place from August 1, 2022 to January 31, 2023, if any, that reference the misappropriation, disclosure, or use of third-party confidential, proprietary, or trade secret information.

2. Communications and Documents reflecting SnapNurse's recruitment and hiring of Charles, including all Communications reflecting applications for employment, interviews, job inquiries, job offers, and employment agreements.

3. Communications and Documents reflecting Charles' job duties and responsibilities during his employment with SnapNurse.

4. Communications and Documents between SnapNurse and Charles from August 1, 2022 to January 31, 2023 that refer to Charles' employment with Maxim.

5. Communications and Documents between SnapNurse and Charles from August 1, 2022 to January 31, 2023 that refer to Charles' employment agreement with Maxim.

6. Communications and documents between SnapNurse and Charles from August 2022 to January 2023 referring to or discussing Maxim, this includes but is not limited to Communications referencing documents or materials taken by Charles from Maxim.

7. Communications referencing the applicability and/or enforceability of Charles' employment agreement, including any of the restrictive covenants contained therein, entered with Maxim.

8. Communications and Documents describing Charles' salary, benefits, and any additional compensation from SnapNurse from November 1, 2022 to January 31, 2023, including any documents describing commissions and commission calculations.

9. Any agreements entered between Charles and SnapNurse regarding his employment with SnapNurse.

10. Job postings and advertisements that SnapNurse posted, with Charles' input or on his recommendation, on any social media site or any other website, regarding job openings available through SnapNurse or that SnapNurse is/was seeking to fill on behalf of a customer.

11. Communications and Documents referencing the termination of Charles' employment with SnapNurse.

12. Documents sufficient to identify all customers or potential customers that were also customers or targets of Maxim with whom Charles was in contact, in any way, relating to his employment with SnapNurse, from November 2022 to January 2023.

13. Documents identifying the organizational structure of the department within which Charles worked at SnapNurse, including who reports to Charles and who Charles reports to.

14. Documents setting forth or describing the markets, client industries, and geographic territories Charles was assigned to while employed at SnapNurse.

15. Documents (including lists, charts, reports, or spreadsheets) showing or summarizing placements, orders, and requisitions of clients and prospective clients on which Charles worked while employed by SnapNurse that were also customers or targets of Maxim.

16. All documents and information stored or contained on SnapNurse's software, devices, or storage systems that were obtained by SnapNurse, including SnapNurse's current and former employees, from Maxim.

17. Hardcopy documents that were obtained by SnapNurse, including SnapNurse's current and former employees, from Maxim.

18. Communications from or received by Charles while employed at SnapNurse that contain the term "Maxim."

19. Communications between Charles and any former Maxim employee who was employed by SnapNurse between August 1, 2022 to January 31, 2023.

20. Communications between Charles and any individual who is known to have worked for Maxim, or is still currently working for Maxim, while Charles was employed by SnapNurse.

21. In native file format with metadata intact, produce all documents or data stored on SnapNurse devices or accounts, including active files, invisible files, hidden files, password-protected files, encrypted files, items in the recycle bin, folders storing prior installation files or versions of your device, downloaded files, deleted files and emails, fragmented files, unallocated space, slack space, RAM, temporary files, draft files and emails, and system logs, that contain any of the following terms. The applicable timeframe is August 1, 2022 to Present.

1. "Maxim"
2. "Maxim Healthcare Staffing Services"
3. "1 Behavior Standards Final"
4. "11-Hyper-Persuasive-Sales-Email-Templates"
5. "ACT Summary"
6. "Allied BDM Training Final Version"
7. "Allied_Related Services Info"
8. "Alliedplaybook July 2018"
9. "AM Commission Calculator"
10. "Application Plan"
11. "Area 3 – Selling and Operating Travel"
12. "BD Sequence"
13. "BDM Boot Camp Resource"
14. "Candidates I've Called"
15. "Common Allied Position Descriptions"
16. "Contract Sheet"
17. "Copy of School District Contact List"
18. "Covid-19-Vaccination-Program"
19. "DBO – Eric P – powerpoint"
20. "DBO Territory Review Prep"
21. "DBO Toolkit_Staffing"
22. "DBO Whales"
23. "Educational Services Definitions and Acronyms"
24. "Educational Services Presentation"

10

25. "Evolent Health Contracts"
26. "Fact-Sheet-Operation-Warp-Speed"
27. "Final Reporting Guidelines Table of Contents"
28. "Final Reporting Issues Guidelines"
29. "G-2 new form"
30. "Grady_130BR_medsurg"
31. "Hampton Roads Regional Jail Docs b julion"
32. "HC Industry Links"
33. "Home work for school cases"
34. "How to do Ops"
35. "Indeed recruiting"
36. "Kyle Foss DBO Business Plan – NEOhio"
37. "Let to the Director Loudon County"
38. "Life Care Dept of Social Services Sworn Disclosure State"
39. "LinkedIn Prospecting – overview and tips"
40. "Local_directors"
41. "Long-term Care Staffing Services_ST"
42. "Maxim Sales Approach"
43. "Maxim Healthcare Services VHS"
44. "MHSS Lyncc Care Agreement"
45. "MHSS UVA Community Health Rate Rider"
46. "MHSS UVA Health MSA"
47. "Morning Pointe Maxim"
48. "New Sales Doc"
49. "NOVA 5 year Projection"
50. "NOVA Schools 30 60 90"
51. "October 2022 SE SLG Call"
52. "Prospecting Training"
53. "Rate Sheet"
54. "Recruit 1"
55. "Recruiter Growing"
56. "Recruiter Toolkit 1.0 Participant Guide"
57. "Regulations Governing Licensure of Surgical Assistants"
58. "Reporting Compliance Issues and Concerns"
59. "RFP 414077 Renewal"
60. "School District Contact List"
61. "School District Contact Prospecting List"
62. "SE Sales 101 Training"
63. "Search Contacts"
64. "Sentara Open Orders"
65. "South Region BD community Rate Increases"
66. "SS&O Pursuit Plan"
67. "SS&O Sample Pursuit Plan"
68. "Staffing Spread Calculator Maxim"
69. "Staffing Spread Calculator"
70. "Standard Confirmation Form"

11

71. "tempprofiles NOVA"
72. "Universal G2"
73. "VA Surgical Tech Application SOP"
74. "Vendor Partnerships"
75. "VHCA VCAL Membership Directory"
76. "WI New RC Training"
77. "Zip Recruiter Job Applicant Tracker"

22. Communications and Documents reflecting actions undertaken by SnapNurse to ensure Charles complied with the terms and conditions of his employment agreement with Maxim.

23. Communications sent or received using Charles' Maxim email address or Charles' SnapNurse-issued mobile device, or any other communication in SnapNurse's possession, to or from any persons SnapNurse or Charles reasonably knew or suspected to be a current client, placement candidate, or current temporary employee of Maxim.

24. All Communications between SnapNurse and Charles related to: a) Maxim; b) Charles' hire or potential hire by SnapNurse; c) clients of Maxim; d) Maxim employees; e) agreements between Charles and Maxim; f) other legal obligations owed by Charles (or potentially owed by Charles) to Maxim; g) burden rates, spread rates or other cost and pricing information of Maxim; h) Maxim's business processes and startegies; and i) the prospect of litigation with Maxim.

25. Documents SnapNurse sent to or received from Charles before November 11, 2022.

26. Documents that Charles has provided or transferred to SnapNurse (regardless of timeframe) related to Maxim.

27. Job descriptions for each position held by Charles at SnapNurse.

28. Internal Communications sent between or among SnapNurse managers or executives that reference or relate to the hiring of Charles.

12

13

29. Communications and other Documents that discuss any plan to recruit, hire, or potentially hire any Maxim employee, to the extent Charles is referenced or was involved in the communication, creation, or review of the document.