**From:** Shelton, Joseph <jshelton@fisherphillips.com>
**Sent:** Tuesday, March 14, 2023 9:06 PM
**To:** Schrier, Michael <Michael.Schrier@huschblackwell.com>
**Cc:** Hibler, Tyler <Tyler.Hibler@huschblackwell.com>
**Subject:** RE: Maxim v. Charles -- SnapNurse subpoenas

[EXTERNAL EMAIL]

Michael,

Your summary of what has transpired is incomplete and not entirely accurate.

Prior to our call yesterday, I obviously did send you SnapNurse's Objections on Friday, March 10. There were many communications prior to that time, and they are detailed in the Objections.

After receiving my Objections on 3/10, you emailed me on Sunday, March 12 asking for a call on Monday and seeking clarification of the intent and scope of the Objections. I responded Sunday providing my availability for a call on Monday, and I stated the following regarding the intent and scope of the Objections:

> … yes, the intent and scope was to object to all three of the requests (i.e., both depositions and the document requests). However, upon further consideration, we are willing to do the following in lieu of motion practice this week. You may depose Jamie Barber on Thursday, March 16. Our preference would be to begin at 10.30 ET, but we can further discuss the start time. While we are willing to go to the office location on the subpoena, we would be happy to host you at my firm's Atlanta office (also in the midtown area). In addition to permitting you to depose Ms. Barber in her role as Mr. Charles' manager, Ms. Barber would be able to speak to the following 30(b)(6) topics: 1, 2, 3, 4, 5*, 6*, 7, 8, and 13. (With respect to Nos. 5 and 6, we object to the requests as overbroad and not described with reasonable particularity. However, Ms. Barber could speak to her knowledge on those topics.)
>
> Ms. Barber would also be able to address questions related to No. 9 assuming you are just looking for the basics of Mr. Charles' compensation structure.
>
> Ms. Barber would also be able to address questions related to the territory assigned to Mr. Charles and the types of customers he was expected to solicit (and not solicit). Her knowledge in this area would likely address reasonable and relevant questions you might pose relating to Nos. 10 and 16. However, we have objections to the phrasing of those requests and the potential scope of questioning. So we would not be officially designating her on those topics at this point.
>
> Ms. Barber would also likely be able to address questions relating to No. 21, although we note that it is not clear exactly what that request is asking/seeking. If the gist of No. 21 is whether SnapNurse was aware of Mr. Charles' post-employment restrictive covenants with Maxim, then Ms. Barber should be able to adequately respond to reasonable and relevant questions in that regard.
>
> Like you, I will need to make travel and other arrangements if you want to go forward as described above. So please let me know about this as soon as you are able on Monday.

We then had a 90-minute telephone conversation yesterday late afternoon/early evening. During that call, I explained again what I thought I had explained in my Sunday email. We then proceeded to have what I thought was a mostly productive dialogue about the status of everything and how we might go forward.

During our call, I discussed again what I've explained previously in writing in terms of the efforts that SnapNurse has been and is undertaking to get to the bottom of the extent by which Mr. Charles disclosed/used Maxim's information during his employment with SnapNurse.  I gave you a sense of some areas where I thought we were close to having a handle on things (e.g., Salesforce), but I also explained that I didn't have a firm handle on exactly how long it would take before we were done.

You did ask multiple times during the call if I could commit to a specific deadline by which we would be done.  And I told you multiple times I couldn't yet say.  There were instances where you made comments along the lines of "if we're talking another week, that's one thing.  But if we're talking 2, 3, or 4 weeks, then that's another."  (I don't purport for that to be your exact quote.)  When you said something along those lines, I was clear in saying I did _not_ think we were talking 2, 3, or 4 weeks, but that I thought we were looking at more like a week.  I also made it clear that we would not wait to produce everything at the end and that I would be willing to share information/documents as we nailed things down.  I cited the Salesforce information as an example of that because I felt we were close on that issue.

At the end of the call, you said you had to talk to your client.  And you asked me to talk to my client to get a guarantee on a deadline.  I again said that I wasn't going to be able to make a guarantee on a date certain.  We also discussed whether Jamie Barber might be able to be deposed on March 27 or 28.

You then sent me an email at 11:29 ET/10:29 this morning after leaving me a voice mail.  I called you back about 30 minutes later after I finished a call that I had been on.  After our conversation, I sent you an email at 12:09 ET/11:09 CT confirming what I had relayed to you on the phone in response to your continued request for a guaranteed date certain deadline:

> We just talked.  As I explained when we spoke late yesterday afternoon, and as I reiterated during our call just now, I'm not able to provide a "guarantee" as to a date certain that SnapNurse will be done with all the searching and work that it is doing (as I've previously described in writing and in our call yesterday).  What I can guarantee is that SnapNurse and I are working diligently to get through everything and to continue to provide you with feedback as we have it.
>
> I can commit that I will not wait for everything to be finished on our end before I provide you with feedback and documents.  Rather, if we are not involved in motion practice, I will commit to provide you with documents/information as I have it.  As one example that I've mentioned to you, Tyler had previously mentioned that Jerome Charles testified in his deposition that he thought he had LinkedIn messages with John Spears and Jamie Barber as part of his SnapNurse recruitment.  In follow up to that, we've been trying to track that down.  With respect to John Spears, we found emails regarding his and Mr. Charles' communications about potential SnapNurse employment.  (John Spears is a former employee so we don't know about any potential LinkedIn messaging.)  With respect to Jamie Barber, she has found her LinkedIn communications with Mr. Charles.  We're willing to produce those now.
>
> As another example, I've previously explained that we had a concern that some of the Maxim contact information taken by Mr. Charles might have ended up in SnapNurse's Salesforce information.  We are close to having handle on that, and I'm willing to provide you with what we found when we're finished with that.
>
> While I can't provide a date certain guarantee of when we'll be done with all that we're doing, my best guestimate is that another week is going to be sufficient.
>
> Let me know what you decide please as soon as possible.

I emailed you again 1.5 hours later, asking when I could expect to hear from you and relaying the following regarding Jamie Barber: "Also, I have heard back from Jamie Barber, and while she had travel plans on 3/28 she is willing to move them if that is a date you want to set for her?  If 3/28 absolutely would not work, she possibly could do 3/27."

I tried calling you 1.5 hours after that, and I followed up with an email asking for an update.  You then emailed me the below at 4.34 ET/3:34 CT.

From the very beginning when Tyler sent me a draft of the 30(b)(6) and the document requests, I've been relaying my position that what Maxim is seeking is overbroad as a whole.  That sentiment is not new and has been a continual refrain.  But I've also been relaying what we are trying to do to get to the bottom of whether and to what extent SnapNurse has Maxim's information from Mr. Charles.  That hasn't changed and it continues.  We have not been deliberately evasive, and the facts bear that out.

Despite the disputes, our efforts as described continue.  And like I said we would, we will begin to share things as we

nail them down. To that end, I'm attaching information/documents flowing from what Tyler shared with me regarding Jerome Charles' deposition testimony. Specifically, I am attaching emails involving John Spears and Jerome Charles that we have located. (Mr. Spears is no longer employed by SnapNurse so we do not know whether he messaged with Mr. Charles via LinkedIn as well.) Also, we are producing the LinkedIn messaging that Jamie Barber had with Mr. Charles as well as a text exchange Ms. Barber and Mr. Spears had regarding Mr. Charles.

I anticipate I should be able to provide you more information/documentation tomorrow relating to the Salesforce issue I've previously described. I also should be able to produce some of the personnel information you have requested. Other efforts are continuing, and I've asked Ms. Barber to continue to hold March 28 as a potential deposition date.

In short, I believe that any motions filed by Maxim at this point would be unnecessary and inappropriate. However, if Maxim chooses to pursue that route, we will obviously respond as needed.

Thanks,

Joe

**Joseph P. Shelton**
**Regional Managing Partner**

Fisher & Phillips LLP
424 Church Street | Suite 1700 | Nashville, TN 37219-2301
jshelton@fisherphillips.com | O: (615) 488-2901 C: (404) 441-4088

vCard | Bio | Website   On the Front Lines of Workplace Law

This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error, then immediately delete this message.

** We have moved. Please note new address above.