## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **A-1 Concert Entertainment LLC** | ) |
| | ) |
| **Plaintiff** | ) Case No.: |
| | ) |
| **v.** | ) |
| | ) |
| **JR Sports Enterprises, LLC;** | ) |
| **TJR Management, LLC; Georgio Rodriguez;** | )**JURY TRIAL DEMANDED** |
| **William Pletch; Showcase Entertainment;** | ) |
| **Terronce Morris; Terronce Morris** | ) |
| **Entertainment; National Management LLC,** | ) |
| **Timothy Rickert; John Rickert; John Does** | ) |
| **1 to 10, individuals and entities,** | ) |
| | ) |
| **Defendant.** | ) |

## COMPLAINT FOR BREACH OF CONTRACT

**COMES NOW** Plaintiff, A-1 Concert Entertainment LLC (hereinafter "A-1

Concert" or "Plaintiff"), and files this its complaint against JR Sports Enterprises,

LLC (hereinafter "JR Sports Enterprises, LLC"), TJR Management, LLC

(hereinafter "TJR Management"),  Georgio Rodriguez (hereinafter "Rodriguez"),

William Pletch (hereinafter "Pletch"), Showcase Entertainment (hereinafter

"Showcase"), Terronce Morris (hereinafter "Morris"), Terronce Morris

Entertainment (hereinafter "TM Entertainment"), National Management LLC

("National Management"), Timothy Rickert (hereinafter "T. Rickert"), and John

Rickert (hereinafter "J. Rickert")(collectively "Defendants"), respectfully showing the Court as follows:

## **PARTIES**

1.

Plaintiff A-1 Concert Entertainment LLC is a Georgia domestic limited liability company with a principal place of business of 1586 Peachtree Battle Avenue, Atlanta, Georgia, 30327.

2.

Defendant JR Sports Enterprises, LLC is a New York foreign limited liability company.  Service of process may be executed upon JR Sports Enterprises, LLC at The LLC at 16 Brendan Lane, Niskayuna, New York, 12309, the registered agent for Defendant JR Sports Enterprises, LLC.

3.

Upon information and belief, Defendant TJR Management, LLC is an unregistered entity and alter ego of Timothy Rickert, John Rickert, and JR Sports Enterprises, LLC which maintains business operations in Schenectady County, New York.  Service of process may be executed upon TJR Management, LLC at The LLC at 16 Brendan Lane, Niskayuna, New York, 12309.

4.

John Rickert is a resident of the State of New York. Service of process may be executed upon John Rickert at his place of employment, to wit: JR Sports Enterprises, LLC, 16 Brendan Lane, Niskayuna, New York, 12309.

5.

Timothy Rickert is a resident of the State of New York. Service of process may be executed upon Timothy Rickert at his place of employment, to wit: JR Sports Enterprises, LLC, 16 Brendan Lane, Niskayuna, New York, 12309.

6.

Upon information and belief, Defendant National Management, LLC is an unregistered entity and alter ego of T. Rickert and TJR Management, LLC which maintains business operations in Schenectady County, New York.  Service of process may be executed upon National Management, LLC at The LLC at 16 Brendan Lane, Niskayuna, New York, 12309.

7.

Georgio Rodriguez is a resident of the State of Florida.  Service of process may be executed upon Georgio Rodriguez at his residence, to wit: 1122 Courtland St, Orlando, FL 32804.

8.

William Pletch is a resident of the State of Texas. Service of process may be executed upon William Pletch at his residence, to wit: 1809 Creekside Court, Garland, Texas 75041.

9.

Upon information and belief, Defendant Showcase Entertainment is an entity and alter ego of William Pletch, a Texas State resident. Service of process for Showcase Entertainment may be executed upon William Pletch at 1809 Creekside Court, Garland, Texas 75041.

10.

Terrence Morris is a resident of the State of Texas. Service of process may be executed upon Terrence Morris at his residence, to wit: 31 Heights Court Drive, Missouri City, Texas 77459.

11.

Upon information and belief, Defendant Terrence Morris Entertainment is an entity and alter ego of Terrence Morris, a Texas State resident. Service of process for Terrence Morris Entertainment may be executed upon Terrence Morris at 31 Heights Court Drive, Missouri City, Texas 77459.

## JURISDICTION AND VENUE

12.

This Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331.

13.

This Court has subject matter jurisdiction over Plaintiff's federal RICO claim pursuant to 18 U.S.C. §1964(c).

14.

Jurisdiction of the state law claims set forth in this matter is proper pursuant to 28 U.S.C. § 1332 as the Plaintiff and Defendants to this action, are citizens of different states and the amount in controversy, exclusive of interest and costs, is in excess of $75,000.

15.

This Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

16.

The causes of action detailed within this complaint fall within the pertinent statute of limitation requirements. Notably, the corrupt organization and fraudulent conduct as alleged below was discovered by Plaintiff less than one year prior to the date of this Complaint.

17.

Venue in this district and division is proper under 28 U.S.C § 1391, as the unlawful conduct complained of herein occurred in this district and division.

18.

Plaintiff A-1 Concert Entertainment LLC voluntarily submits itself to the jurisdiction of this Court.

## **<u>INTRODUCTION</u>**

19.

Plaintiff seeks to recover more than $105,000.00 that the Defendants have stolen from A-1 Concert Entertainment LLC via a fraudulent scheme. Defendants carried out this scheme via an enterprise comprised of, Georgio Rodriguez, William Pletch, Terrence Morris, Timothy Rickert, John Rickert, National Management LLC, JR Sports Enterprises, LLC, TJR Management, LLC, Showcase Entertainment and Terrence Morris Entertainment, as well as possible other unknown individuals.

20.

The Defendants' ultimate aim was to steal money from Plaintiff. To achieve this goal, Timothy Rickert (hereinafter "T. Rickert") and Jamell Romeo (hereinafter "Romeo")[1] approached A'lencio Graham (hereinafter "Graham"), one

---

[1] Upon information and belief Jamell Romeo is an employee of JR Sports Enterprises, LLC, TJR Management, LLC and National Management LLC.

of the owners of A-1 Concert Entertainment LLC, about securing Melissa

Jefferson, who is more commonly known by her stage name of "Lizzo"

(hereinafter "Jefferson"), to perform at a concert that was to take place on June 18,

2022 at State Farm Arena in Atlanta, Georgia (hereinafter "Performance").

21.

The Performance was to take place at a concert that was headlined by Jeffery

Williams, who is more commonly known by his stage name of "Young Thug"

(hereinafter "Williams").

22.

An agreement was reach between Plaintiff and Defendants – T. Rickert and

Romeo which was reduced to writing and executed on or about April 23, 2022.

The Defendants quoted Plaintiff a fee of $170,000 for the Performance.  They

required a security deposit of $105,000, which was promptly wired by Plaintiff to a

bank account designated by T. Rickert and Romeo shortly after the Agreement was

signed.

23.

During their discussion regarding the Performance, T. Rickert represented to

Graham that he was an owner and officer of TJR Management LLC (hereinafter

"TJR Management").  According to T. Rickert, TJR Management was "a full

service entertainment agency" registered with the Secretary of State in New York.

T. Rickert further represented to Graham that TJR Management served as a booking agent for Jefferson.  It was only after the fraud came to light that Plaintiff learned that TJR Management was not an actual business, but rather an alter-ego of Pletch, Morris, J. Rickert and T. Rickert created to facilitate the fraudulent scheme complained of herein.

24.

At all times relevant to this matter, T. Rickert served as a minority owner of JR Sports Enterprises, LLC (hereinafter "JR Sports"), in addition to being the "owner" of TJR Management. John Rickert (hereinafter "J. Rickert") served as the president and founder of JR Sports.

25.

JR Sports is a New York for-profit limited liability company which represents professional athletes, entertainers, personalities, and performers and assists their clients with negotiations and contracts.  During their negotiations regarding the Performance and in their capacity as agents for JR Sports, both T. Rickert and Romeo falsely represented to Graham that Jefferson was a client of JR Sports.

26.

Throughout the scheme, the Defendants orchestrated an ongoing shell game through which they identified several other individuals and companies that were

represented as being part of the "team" to coordinate Jefferson's presence for the Performance.

27.

The "team" included, Georgio Rodriguez (hereinafter "Rodriguez"), William Pletch (hereinafter "Pletch"), Showcase Entertainment (hereinafter "Showcase"), Terrence Morris (hereinafter "Morris"), and Terrence Morris Entertainment (hereinafter "TM Entertainment").

28.

Though it was communicated to Graham that these individuals were part of the team to facilitate the terms of the Performance, in reality, they were simply an alter ego of the TJ Management and/or co-conspirators who split the proceeds received from Plaintiff among themselves and without any intention of arranging to have Jefferson perform as required according to the Agreement.

29.

Upon information and belief, the Defendants have no contractual relationship with Jefferson, nor have they ever represented or served as an agent on behalf of Jefferson.

30.

In the case at bar, Defendants ultimately siphoned a total payment of $105,000 made by Plaintiff through a wire transfer to a bank account under the control of the Defendants.

31.

Defendants egregious behavior continued after Plaintiff learned of their fraud and demanded the returned of the stolen funds.

32.

Instead, Defendants denied receiving the funds and have refused to return the same.

33.

Defendants' conduct violates Federal Racketeering Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. §1961 et seq., with predicate acts of mail fraud, wire fraud and money laundering, among others. Defendants' conduct furthermore constitutes common law fraud, unjust enrichment, conversion, aiding and abetting fraud, and breach of contract, among others. As a result, Defendants' misconduct entitles Plaintiff to damages, court costs, and attorney fees.

**FACTUAL BACKGROUND**

34.

This Complaint details how a group of supposed agents for Jefferson, together with co-conspirators, have established a fraudulent scheme to steal money from Plaintiff and to direct said funds to accounts under Defendants' control.

35.

In or around January 2022, A'lencio Graham, engaged in negotiations with JR Sports through Romeo about organizing a performance for Melissa Jefferson, who is professionally known as Lizzo, that would take place on or around June 18, 2022 at the State Farm Arena in Atlanta, Georgia (hereinafter "Performance").

36.

The title of the Performance was "Young Thug & Friends."  The headliner for the Performance was Jeffery Williams, who is professionally known as Young Thug.  Jefferson and a number of other artists were to perform as sub-headliners at the Performance.

37.

In or about April 2022, T. Rickert presented Graham an Artist Performance Agreement (hereinafter "Agreement") which reduced their negotiations for Jefferson's presence at the Performance to writing.

38.

Although, it was initially stated that the contract would be between Plaintiff and JR Sports, it was later communicated to Graham that the agreement would be

executed with TJR Management, as Jefferson was now a client of TJR

Management.

39.

On or about April 23, 2022, Graham and T. Rickert executed the Agreement

on behalf of A-1 Concert and TJR Management, respectively.

40.

Pursuant to the Agreement, Jefferson was to perform at State Farm Arena in

Atlanta, Georgia (hereinafter "Venue") for fifty-five minutes on Saturday, June 18,

2022.

41.

In consideration for her performance, A-1 Concert agreed to pay TJR

Management a performance fee of $170,000.

42.

The Agreement required that Plaintiff wire $105,000 to a bank account

designated by T. Rickert and Romeo on or before April 23, 2022.  This payment

served as a security deposit to ensure Jefferson's presence at the Performance. The

remaining balance of $65,000 was due on June 3, 2022.

43.

In compliance with the Agreement, A-1 Concert wired $105,000 to the designated account on April 23, 2022.  The name on the designated bank account was National Management LLC.

44.

The bank account where the funds were transferred is under the exclusive control of the Defendants.

45.

In addition to securing her presence, Romeo and T. Rickert stated that Jefferson would post regularly on her official social media accounts (i.e. Instagram, Facebook, and Twitter) to advertise the upcoming Performance and increase interest in ticket sales.

46.

Upon information and belief, Jefferson never posted on any of her official social media accounts regarding the Performance.

47.

In or about May 9, 2022, the Fulton County District Attorney office announced that it had arrested Williams on a fifty-six count indictment, involving serious felonies offenses including, but not limited to, drug possession, RICO (Racketeer Influenced and Corrupt Organizations Act) and murder.

48.

On May 12, 2022, Graham received an email from Trey Feazell, Executive VP Arena Programming for the Atlanta Hawks and State Farm Arena, informing that the Venue was canceling the Performance, due to "(among other things)[] the headline artist Young Thug's recent indictment on multiple felonies and his current incarceration without bail."

49.

As of the date of this Complaint, Williams has remained in the custody of Fulton County Jail since May 9, 2022 in "no bond" status.

50.

Immediately after the announcement on May 9, 2022 regarding Williams' arrest, Graham reached out to T. Rickert and Romeo seeking reimbursement of the $105,000 that was previously tendered to secure Jefferson's presence at the Performance.

51.

Initially, T. Rickert and Romeo assured that Graham that he would receive a refund of the funds.

52.

To date, Defendants have failed to return any funds to Graham or A-1 Concert.

53.

Instead, over the months that followed, Graham received correspondence from T. Rickert, Romeo, Rodriguez, Pletch, Morris, all of whom claim that they are no longer in possession of his funds.

54.

Through no fault of the Plaintiff, the Performance was canceled and thus, Plaintiff was entitled to a reimbursement of his funds.

55.

Due to Defendants failure to reimburse Plaintiff as required by the Agreement, Plaintiff has suffered unnecessary damages and expenses, in an amount of no less than $105,000 and is entitled to compensatory damages, costs, prejudgment interest, expenses and attorney's fees from Defendants.  Defendants will remain in breach and Plaintiff will continue to accrue damages until this matter is successfully resolved.

## COUNT ONE: VIOLATIONS OF RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT (18 U.S.C §1962(c))

56.

Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 56 as if fully set forth herein.

RICO Enterprise

57.

The Defendants are a group of persons and entities associated together in fact for the common purpose of carrying out an ongoing criminal enterprise, as described in the foregoing

paragraphs of this Complaint; namely, through a multi-faceted campaign of lies, fraud, and

corruption to defraud the Plaintiff and to redirect over $105,000 of Plaintiff's funds to the criminal enterprise.

58.

The criminal enterprise has generally been structured to operate as a unit to accomplish the goals of the Defendants' criminal scheme:

   a.  Defendants T. Rickert, Romeo, and J. Rickert primarily operate their criminal enterprise through the organization and structure of the JR Sports and the fictious organization, TJR Management.
   b.  Co-conspirator, Defendant Pletch operated his criminal enterprise individually and through the fictitious organizations Showcase Entertainment and TJR Management.
   c.  Co-conspirator, Morris operated his criminal enterprise individually and through the fictitious organizations Terronce Morris Entertainment and TJR Management.
   d.  Co-conspirator, Rodriguez operated his criminal enterprise individually and through the fictitious organization TJR Management.
   e.  At all relevant times, defendants T. Rickert, Romeo, J. Rickert, Pletch, Morris, Rodriguez actively engaged in the criminal enterprise to further the objectives of the criminal enterprise.

59.

Defendants constitute an association-in-fact enterprise within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c), (hereinafter "Enterprise"). Each of the Defendants participated in the operation or management of the Enterprise.

60.

At all relevant times, the Enterprise was engaged in, and its activities affected, interstate or foreign commerce within the meaning of 18 U.S.C. § 1962(c).

Pattern of Racketeering Activity

61.

The Defendants conducted or participated, directly or indirectly, in the conduct, management, or operation of the Enterprise's affairs through a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5) and in violation of 18 U.S.C. § 1962(c), to wit:

Pattern of Racketeering Activity: Mail Fraud and Wire Fraud
in Violation of 18 U.S.C. §§ 1341, 1342, 1343

62.

At all times material to this Complaint, the Defendants were engaged in interstate and foreign commerce and in an industry that affects interstate and foreign commerce.

63.

As described herein, the Defendants have engaged in wide-ranging schemes

or artifices to defraud Plaintiff. The ultimate objective of these fraudulent schemes

or artifices has been to divert to the Enterprise funds illegally elicited from

Plaintiff.

64.

Defendants designed and implemented a fraudulent scheme to retain

$105,000 of Plaintiff's funds by:

a.  concealing from the Plaintiff they did not have a relationship with Jefferson;

b.  inducing the Plaintiff to enter into the Agreement by falsely claiming that

   they represented Jefferson;

c.  concealing from Plaintiff that TJR Management, Showcase Entertainment,

   Terronce Morris Entertainment were fictitious businesses that do not

   formally exist;

d.  falsely representing to Plaintiff that Jefferson was a client JR Sports and TJR

   Management.

65.

In furtherance of their schemes, as described herein, the Defendants

transmitted, or caused to be transmitted, by means of wire communication in

interstate or foreign

commerce, writings, signs, signals, pictures, and sounds, and also caused matters

and things to be

placed in any post office or authorized depository, or deposited or caused to be

deposited matters

or things to be sent or delivered by a private or commercial interstate carrier,

including, but not

limited to the following:

    a.  emails, writings, mailings, and/or telephone calls from the Defendants to

         Plaintiff incorporating false and misleading statements regarding their

         relationship with Jefferson;

    b.  emails, writings, mailings, and/or telephone calls from the Defendants to

         Plaintiff using fictious and false names and addresses in furtherance of the

         Defendants' fraudulent scheme;

    c.  emails, writings, mailings, and/or telephone calls among the Defendants

         concerning the design and implementation of their scheme to defraud the

         Plaintiff;

    d.  emails, writings, mailings, and/or telephone calls from Defendants to

         Plaintiff soliciting funds for a wire transfer.

66.

The Defendants participated in the scheme or artifice to defraud Plaintiff

knowingly, and with the specific intent to deceive and/or defraud Plaintiff.

67.

Plaintiff relied on the false and misleading statements and omissions

regarding Defendants' relationship with Jefferson. In reliance on those statements

and omissions, Plaintiff executed the Agreement with T. Rickert and TJR

Management and wired $105,000 to a TD Bank checking account designated by

Defendant T. Rickert and Romeo.  Upon information and belief, T. Rickert is an

authorized signatory on the account.

68.

The Defendants' false and misleading statements and omissions caused

Plaintiff

substantial damages to which he is entitled to recover.

<u>Plaintiff Was Injured by the Defendants' Pattern of Racketeering Activity</u>

69.

As described above, each of the Defendants has engaged in multiple

predicate

acts. The conduct of each of the Defendants constitutes a pattern of racketeering

activity

within the meaning of 18 U.S.C. § 1961(5).

70.

Plaintiff was injured in its business and property by reason of the

Defendants' violations of 18 U.S.C. § 1962(c). The injuries to Plaintiff caused by

reason of the violations of 18 U.S.C. § 1962(c) include, but are not limited to, the theft of $105,000 of Plaintiff's funds, loss business opportunities for Plaintiff, and financial destruction to Plaintiff's business.

71.

Further, these injuries to Plaintiff were a direct, proximate, and reasonably foreseeable result of the Defendants' violations of 18 U.S.C. § 1962.

72.

Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover treble damages plus costs and attorneys' fees from the Defendants.

## COUNT TWO: VIOLATIONS OF RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT (18 U.S.C §1962(d))

73.

Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 72 as if fully set forth herein.

74.

The Defendants have unlawfully, knowingly and willfully combined, conspired, confederated and agreed together and with others to violate 18 U.S.C. § 1962(c) as

described hereinabove, in violation of 18 U.S.C. § 1962(d).

75.

Upon information and belief, the Defendants knew that they were engaged

in a conspiracy to commit the predicate acts, and they knew that the predicate acts

were part of such

racketeering activity, and the participation and agreement of each of them was

necessary to allow

the commission of this pattern of racketeering activity. This conduct constitutes a

conspiracy to

violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d).

76.

Upon information and belief, the Defendants agreed to conduct or

participate, directly or indirectly, in the conduct, management, or operation of the

Enterprise's affairs through a pattern of racketeering activity in violation of 18

U.S.C. § 1962(c).

77.

Each Defendant knew about and agreed to facilitate the Enterprise's

schemes to obtain property from Plaintiff. It was part of the conspiracy that the

Defendants would commit a pattern of racketeering activity in the conduct of the

affairs of the Enterprise, including the acts of racketeering set forth hereinabove.

78.

As a direct and proximate result of the Defendants' conspiracy, the acts of racketeering activity of the Enterprise, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiff has been substantially injured in its business and property and is entitled to recovery from the Defendants.

79.

Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover treble damages plus costs and attorneys' fees from the Defendants.

## COUNT THREE: VIOLATION OF GEORGIA RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT O.C.G.A. § 16-14-4(b))

80.

Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 79 as if fully set forth herein.

81.

In violation of O.C.G.A. § 16-14-4(b), the Defendants have conducted and participated in, directly or indirectly, the Enterprise through a pattern of racketeering activity within the meaning of O.C.G.A. § 16-14-3(3).

82.

Plaintiff was injured in its business and property by reason of the Defendants' violations of O.C.G.A. § 16-14-4(b).  The injuries to Plaintiff caused by reason of the violations of O.C.G.A. § 16-14-4(b) include, but are not limited

to, the theft of $105,000 of Plaintiff's funds, loss business opportunities for Plaintiff, and financial destruction to Plaintiff's business.

### 83.

Further, these injuries to Plaintiff were a direct, proximate, and reasonably foreseeable result of the Defendants' violations of O.C.G.A. § 16-14-4(b).

### 84.

Pursuant to O.C.G.A. § 16-14-6(c), Plaintiff is entitled to recover treble damages plus costs and attorneys' fees from the Defendants.

## COUNT FOUR: VIOLATION OF GEORGIA RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT O.C.G.A. § 16-14-4(c)

### 85.

Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 84 as if fully set forth herein.

### 86.

The Defendants have unlawfully, knowingly and willfully combined, conspired, confederated and agreed together and with others to violate O.C.G.A. § 16-14-4(b) as described hereinabove, in violation of O.C.G.A. § 16-14-4(c).

### 87.

The Defendants' conduct constitutes a conspiracy to violate O.C.G.A. § 16-14-4(b), in violation of O.C.G.A. § 16-14-4(c).

### 88.

As a direct and proximate result of the Defendants' conspiracy, the acts of

racketeering activity of the Enterprise, the overt acts taken in furtherance of that

conspiracy, and

violations of O.C.G.A. § 16-14-4(c), Plaintiff has been substantially injured in its

business and property and is entitled to recovery from the Defendants.

89.

Pursuant to O.C.G.A. § 16-14-4(c), Plaintiff is entitled to recover treble

damages plus costs and attorneys' fees from the Defendants.

## COUNT FIVE: UNJUST ENRICHMENT

90.

Plaintiff incorporates by reference the allegations contained in Paragraphs 1

through 89 as if fully set forth herein.

91.

Defendants, jointly and severally, have been unjustly enriched by their acts

and conduct described in this Complaint and said acts were to the detriment of

Plaintiff.

92.

Plaintiff wired $105,000 to a TD Bank checking account designated by

Defendant T. Rickert and Romeo, after they falsely represented to Plaintiff that

they could secure Jefferson's appearance for the Performance.

93.

The Defendants have been unjustly enriched by such consideration, which

they obtained by their fraudulent, tortious, and illegal conduct as set forth herein.

94.

Plaintiff has made several demands for the return of the funds that were

illegally elicited by the Defendants, to no avail.

95.

Principles of equity and good conscience mandate that this Court prevent the

Defendants from reaping a financial windfall and any other benefits arising out of

their fraudulent, tortious, and illegal conduct.

96.

As a direct and proximate result of Defendants' actions, as described above,

Plaintiff has suffered significant damages and are entitled to compensatory

damages, costs, prejudgment interest, expenses and attorney's fees from

Defendants.

**COUNT SIX: BREACH OF CONTRACT**
**(against  T. Rickert and TJR Management)**

97.

Plaintiff incorporates by reference the allegations contained in Paragraphs 1

through 89 as if fully set forth herein.

98.

Plaintiff entered into the Agreement with Defendant T. Rickert and TJR Management, wherein Defendant T. Rickert and TJR Management agreed to secure Jefferson's appearance to perform on June 18, 2022.

99.

The title of the Performance was "Young Thug & Friends."  The headliner for the Performance was Jeffery Williams, who is professionally known as Young Thug.  Jefferson and a number of other artists were to perform as sub-headliners at the Performance.

100.

In exchange for and in consideration of securing Jefferson's appearance at the Performance, Plaintiff agreed to pay T. Rickert and TJR Management total fee of $170,000.

101.

In addition to securing her presence, Romeo and T. Rickert stated that Jefferson would post regularly on her official social media accounts (i.e. Instagram, Facebook, and Twitter) to advertise the upcoming Performance and increase ticket sales.

102.

Upon information and belief, Jefferson never posted on any of her official social media accounts regarding the Performance.

103.

Pursuant to the Agreement, Plaintiff was required to wire $105,000 to a bank account designated by T. Rickert, Romeo and TJR Management on or before April 23, 2022.

104.

The remaining balance of $65,000 was due on June 3, 2022.

105.

In compliance with the Agreement, Plaintiff wired $105,000 on April 23, 2022, as directed.  The designated bank account was assigned to a business bearing the name National Management LLC.

106.

The bank account where the funds were transferred is under the exclusive control of the Defendants.

107.

Plaintiff satisfied all its requirements under the Agreement.

108.

In or about May 9, 2022, the Fulton County District Attorney office announced that it had arrested Williams on a fifty-six count indictment, involving serious felonies offenses including, but not limited to, drug possession, RICO (Racketeer Influenced and Corrupt Organizations Act) and murder.

109.

On May 12, 2022, Graham received an email from Trey Feazell, Executive VP Arena Programming for the Atlanta Hawks and State Farm Arena, informing that the Venue was canceling the Performance, due to "(among other things)[] the headline artist Young Thug's recent indictment on multiple felonies and his current incarceration without bail."

110.

During this time, Graham reached out to T. Rickert and Romeo seeking reimbursement of the $105,000 that was previously tendered to secure Jefferson's presence at the Performance.

111.

Defendants T. Rickert and TJR Management breached the contract by failing to return the funds tendered, upon learning that Agreement could not be completed due to the arrest of the headliner and the cancelation by the Venue.

112.

As a direct and proximate result of T. Rickert's and TJR Management's actions, as described above, Plaintiff has suffered damages in an amount of no less than $105,000 and are entitled to compensatory damages, costs, prejudgment interest, expenses and attorney's fees from Defendant.

## COUNT SEVEN: ALTER EGOS

113.

Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 112 as if fully set forth herein.

T. Rickert, TJR Management LLC, JR Sports Enterprises LLC, and National Management LLC

114.

Defendant T. Rickert entered into the Agreement with Plaintiff, as the President of TJR Management LLC.

115.

T. Rickert represented that he was an "owner/officer" of TJR Management.

116.

T. Rickert represented TJR Management as a "registered business in the State of New York."

117.

Upon information and belief, TJR Management is not a registered business in New York or any other state.

118.

At various times during the course of Plaintiff's relationship with Defendant T. Rickert, he would contact Plaintiff, representing himself as an owner and officer of TJR Management.

119.

At various times during the course of Plaintiff's relationship with Defendant T. Rickert, he would contact Plaintiff, representing himself as an owner and officer of JR Sports Enterprises.

120.

In connection with the Agreement, the funds were wired to a TD Bank business account bearing the name "National Management LLC."

121.

Upon information and belief, T. Rickert is an authorized signatory on the National Management LLC account.

122.

T. Rickert took part in the commission of the acts complained of herein by TJR Management, JR Sports Enterprises, and National Management LLC and is personally liable therefor.

123.

T. Rickert specifically directed the particular acts complained of herein to be done by TJR Management, JR Sports Enterprises, and National Management LLC and is personally liable therefor.

124.

Defendant T. Rickert treated TJR Management, JR Sports Enterprises, and National Management LLC as alter egos of himself and failed to maintain the corporations as unique and separate entities from himself.

William Pletch, Showcase Entertainment, TJR Management

125.

Defendant Pletch contacted Plaintiff, as an authorized agent of TJR Management LLC.

126.

Defendant Pletch represented that he was the owner of Showcase Entertainment.

127.

Defendant Pletch represented Showcase Entertainment as a registered business in the State of Texas.

128.

At various times during the course of Plaintiff's relationship with Defendant Pletch, he would contact Plaintiff, representing himself as an owner of Showcase Entertainment and an authorized agent of TJR Management.

129.

Defendant Pletch took part in the commission of the acts complained of herein by TJR Management and Showcase Entertainment and is personally liable therefor.

### 130.

Defendant Pletch specifically directed the particular acts complained of herein to be done by TJR Management and Showcase Entertainment and is personally liable therefor.

### 131.

Defendant Pletch treated TJR Management and Showcase Entertainment as alter egos of himself and failed to maintain the corporations as unique and separate entities from himself.

Terronce Morris, Terronce Morris Entertainment, TJR Management

### 132.

Defendant Morris contacted Plaintiff, as an authorized agent of TJR Management LLC.

### 133.

Defendant Morris represented that he was the owner of Terronce Morris Entertainment.

### 134.

Defendant Morris represented Terrance Morris Entertainment as a registered business in the State of Texas.

135.

At various times during the course of Plaintiff's relationship with Defendant Morris, he would contact Plaintiff, representing himself as an owner of Terrance Morris Entertainment and an authorized agent of TJR Management.

136.

Defendant Morris took part in the commission of the acts complained of herein by TJR Management and Terrance Morris Entertainment and is personally liable therefor.

137.

Defendant Morris specifically directed the particular acts complained of herein to be done by TJR Management and Terrance Morris Entertainment and is personally liable therefor.

138.

Defendant Morris treated TJR Management and Terrance Morris Entertainment as alter egos of himself and failed to maintain the corporations as unique and separate entities from himself.

## **COUNT EIGHT: CONVERSION**

139.

Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 138 as if fully set forth herein.

140.

Defendants obtained $105,000.00 under the false pretenses.

141.

Upon information and belief, and at all times relevant to this action, Defendants never had a contractual relationship with Jefferson, nor have they ever represented or served as an agent on behalf of Jefferson.

142.

Plaintiff has made multiple demands for the return of its funds, to no avail.

143.

Defendants have wholly failed to return the unearned funds.

144.

As a direct and proximate result of Defendants' actions, as described above, Plaintiff has suffered damages in an amount of no less than $105,000 and are entitled to compensatory damages, costs, prejudgment interest, expenses and attorney's fees from Defendants.

## COUNT NINE:  NEGLIGENT MISREPRESENTATION

145.

Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 144 as if fully set forth herein.

146.

Defendants owed a duty to Plaintiff to make representations with due care and to see that it communicated truthful and complete information to Plaintiff.

147.

Defendants breached their duty owed when they collectively represented to Plaintiff that they (1) had a contractual relationship with Jefferson; (2) served as an agent on behalf of Jefferson; and (3) could secure Jefferson's appearance at the Performance.

148.

Defendants had no ability or intention to secure Jefferson's presence at the Performance, despite their representations.

149.

Plaintiff reasonably relied on the representations made by Defendants in deciding to execute the Agreement and subsequently wire $105,000 to the National Management LLC bank account.

150.

Defendants knew or should have known that these representations were false and that they were a deciding factor in Plaintiff's decision to execute the

Agreement and subsequently wire $105,000 to the National Management LLC bank account.

151.

The representations by the Defendants were false.

152.

As a direct and proximate result of Defendants' actions, as described above, Plaintiff has suffered damages in an amount of no less than $105,000 and are entitled to compensatory damages, costs, prejudgment interest, expenses and attorney's fees from Defendants.

**COUNT TEN:  FRAUDULENT MISREPRESENTATION**

153.

Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 152 as if fully set forth herein.

154.

Defendants owed a duty to Plaintiff to make representations with due care and to see that it communicated truthful and complete information to Plaintiff.

155.

Defendants breached their duty owed when they collectively represented to Plaintiff that they (1) had a contractual relationship with Jefferson; (2) served as an

agent on behalf of Jefferson; and (3) could secure Jefferson's appearance at the Performance.

### 156.

As set forth herein, Defendants represented that it intended to secure Jefferson's appearance at the Performance, when it did not intend to do so.

### 157.

Plaintiff reasonably relied on the representations made by Defendants in deciding to execute the Agreement and subsequently wire $105,000 to the National Management LLC bank account.

### 158.

Defendants knew that these representations were false, knew that these representations would induce Plaintiff to enter into the Agreement and pay accordingly.  Defendants also knew that the representations were material in nature as they spoke to the most important factor in Plaintiffs' decision to enter into the Agreement.

### 159.

The representations by Defendants were false and Defendants knew they were false at the time they were communicated to Plaintiff.

### 160.

The false representations made by T. Rickert and Romeo were done with the specific intent to induce Plaintiff into entering into the Agreement.

161.

The false representations made by the Defendants were done with the specific intent to convince Plaintiff that they had a contractual relationship with Jefferson.

162.

As a direct and proximate result of Defendants' actions, as described above, Plaintiff has suffered damages in an amount of no less than $105,000 and are entitled to compensatory damages, costs, prejudgment interest, expenses and attorney's fees from Defendants.

## COUNT ELEVEN: ATTORNEY FEES

163.

Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 162 as if fully set forth herein.

164.

Plaintiff is entitled to an award of attorney's fees and expenses of litigation on each and every cause of action alleged herein, as provided by statute and because Defendants have acted in bad faith, been stubbornly litigious, and caused Plaintiff unnecessary trouble and expense.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully prays for judgment against Defendants, as follows:

1)      For breach of contract for a sum of no less than $105,000 plus pre-judgment interest;

2)      For unjust enrichment for a sum of no less than $105,000, plus pre-judgment interest;

3)      For conversion for a sum of no less than $105,000, plus pre-judgment interest;

4)      General damages based upon Defendants conduct as alleged herein in an amount no less than $105,000;

5)      Punitive damages based upon Defendants willful, malicious, intentional, and deliberate acts in an amount to be determined at trial;

6)      Prejudgment interest at the rate allowed by law;

7)      Reasonable attorney's fees and expenses of litigation;

8)      Trial by jury as to all issues; and

9)      All other relief to which Plaintiffs may be entitled.

Dated: This 17th day of March 2023.

Respectfully submitted,

**WATSON LAW LLC**

s/A. Zakiya Watson-Caffe
A. Zakiya Watson-Caffe, Esq.
Bar Number:  441773
Attorney for Plaintiff:
**A-1 Concert Entertainment LLC**
800 Kennesaw Ave NW, Suite 220
Marietta, Georgia 30060
Tel: (404) 600-1771
Email:  Zak@ZWatsonLaw.com

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1</u>

The undersigned hereby certifies that the foregoing document has been prepared in accordance with the font type and margin requirements of Local Rule 5.1 in the Northern District of Georgia, using a font type of Times New Roman and a point size of 14.

By:     **<u>/s/ A. Zakiya Watson-Caffe</u>**
A. Zakiya Watson-Caffe
Georgia Bar No. 441773