**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| ANTHONY OLIVER, REGINALD PRIDDY, ANTHONY WILLIAMS, Individually and on behalf of all others similarly situated. | Case No.: _____ |
| | **JURY DEMAND** |
| Plaintiffs , | **CLASS ACTION COMPLAINT** |
| vs. | |
| CORRECTCARE-INTEGRATED HEALTH, L.L.C., an Kentucky limited liability company; | |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiffs Anthony Oliver, Reginald Priddy, and Anthony Williams, ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this Class Action Complaint pursuant to 28 U.S.C. 1332 (d) and the Class Action Fairness Act, and alleges the following against Defendant CorrectCare Integrated Health, LLC ("CorrectCare" or "Defendant"), based upon personal knowledge with respect to Plaintiffs and upon information and belief derived from, among other things, investigation of counsel, Plaintiffs and review of public documents as to all other matters:

1

**NATURE OF THE ACTION**

1. This class action arises out of the recent data breach (the "Data Breach") involving CorrectCare, which collected and stored certain private health information ("PHI") of the Plaintiffs and the putative Class Members. CorrectCare is a vendor that works with various customers in the prison industry "to facilitate access to appropriate medical providers and to manage the claims payment process while minimizing costs within the correctional environment." Over the course of this work, CorrectCare is entrusted with peoples' highly sensitive information.

2. According to CorrectCare, the PHI compromised in the Data Breach included names, dates of birth, Social Security Numbers and certain "limited health information, such as a diagnosis code and/or CPT code."

3. Social Security numbers are particularly valuable to criminals. This information can be sold and traded on the dark web black market. The loss of a Social Security number is especially troubling because it cannot be easily changed and can be misused in a range of nefarious activities, such as filing fraudulent tax returns to steal tax refund payments, opening new accounts to take out loans, and other forms of identity theft.

4. The Data Breach was a direct result of CorrectCare's failure to implement adequate and reasonable cybersecurity procedures and protocols necessary to protect consumers' PHI. Inexplicitly, the Defendant has acknowledged that it first became aware of the exposure of information stores on its web server to the public on July 6, 2022, but it has only recently begun contacting Class Members. "Further investigation" by the company revealed that patient information contained in these file directories may have been exposed as early as January 22, 2022.

5. According to state officials in Georgia, the Data Breach has affected 178,000 individuals who have interacted with the Georgia Department of Public Safety and Corrections, and County jails statewide. Since the Breach, CorrectCare has confirmed with the Department of Health and Human Services' Office for Civil Rights that at a minimum, the PHI of almost 1,500,000 individuals had been exposed.

6. Plaintiffs bring this class action lawsuit on behalf of themselves and all those similarly situated to address Defendant's inadequate safeguarding of Class Members' PHI that it collected and maintained, and for failing to provide timely and adequate notice to Plaintiffs

and other Class Members that their sensitive information was unsecured and left open to the unauthorized access of any unknown third party.

## PARTIES

7. Plaintiffs Anthony Oliver, ("Mr. Oliver"), is an adult individual and citizen of Georgia. Mr. Oliver is permanently domiciled in the State of Georgia.

8. Plaintiffs Reginald Priddy, ("Mr. Priddy"), is an adult individual and citizen of Georgia. Mr. Priddy is permanently domiciled in the State of Georgia.

9. Plaintiffs Anthony Williams, ("Mr. Williams"), is an adult individual and citizen of Georgia. Mr. William's is permanently domiciled in the State of Georgia.

10. Plaintiffs's PHI was stored and handled by CorrectCare. Plaintiffs were and still are, incarcerated in the Georgia Department of Corrections, ("GDC"), in the State of Georgia. During these time periods, Plaintiffs ' received medical treatment for, among other things, a broken finger, broken back, dental check-up, and wellness visits – the claims for which were, upon information and belief, processed by CorrectCare. On or around December 2, 2022, Plaintiffs were notified by CorrectCare via letter, dated November 28, 2022, of the Data Breach and of the impact to their PHI.

11. Since the Data Breach, Plaintiffs has had numerous accounts breached, including their bank account, consumer credit cards, consumer accounts, and have now been placed in collections from various debt collectors who have posted consumer debts on the Plaintiffs ' credit trade lines. Likewise, third-party scammers have used their personal information to try and obtain lines of credit for credit cards and loans.

12. As a result of Defendant's conduct, Plaintiffs suffered actual damages including, without limitation, time and expenses related to monitoring their financial accounts for fraudulent activity, facing an increased and imminent risk of fraud and identity theft, the lost value of their personal information, and other economic and non-economic harm. Plaintiffs and Class Members will now be forced to expend additional time to review their credit reports and monitor their financial accounts and medical records for fraud or identify theft – particularly since the compromised information may include Social Security numbers.

13. Defendant CorrectCare is a Kentucky entity with a principal place of business and headquarters in Fayette County, with an address at 1218 South Broadway, Suite 250, Lexington, Kentucky. Correctcare is permanently domiciled in the State of Kentucky. Further all of its board of directors, and /or members are also permanently domiciled in

_____

PLAINTIFF'S CLASS ACTION COMPLAINT

Kentucky. Defendant CorrectCare maintains a registered office with a registered agent in Georgia where it can be served through Registered Agent Solutions, Inc., located at 900 Old Roswell Pkwy, # 310, Roswell Georgia 30076 that is within the Northern District of Georgia, Atlanta Division. The Plaintiffs and members of the proposed Class are all residents of Georgia.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over this controversy pursuant to 28 U.S.C. §§ 1332(d). The amount in controversy in this class action exceeds $5,000,000, exclusive of interest and costs, and there are numerous Class members who are citizens of states other than Defendant's state of citizenship.

15. This Court has personal jurisdiction over Defendant because it is authorized to and does conduct substantial business in this District, and transacting business in this State, and CorrectCare maintains a registered agent in this District. Further, all Plaintiffs are incarcerated in Georgia.

16. Venue is proper under 28 U.S.C. §1391(b) because the cause of action upon which the complaint is based arose in the Northern District of Georgia.

## COMMON FACTUAL ALLEGATIONS

17. Plaintiffs and the proposed Class are individuals who had their PHI entrusted to CorrectCare. As noted above, CorrectCare is a medical claims processor  servicing corrections facilities.

18. Plaintiffs bring this class action against Defendant for Defendant's failure to properly secure and safeguard protected health information as defined by the Health Insurance Information Portability and Accountability Act ("HIPAA"), medical information, and other personally identifiable information, for failing to comply with industry standards to protect and safeguard that information, and for failing to provide timely and adequate notice to Plaintiffs and other members of the class that  such  information had been compromised.

### CorrectCare's Unsecure Data Management and Disclosure of Data Breach

19. Plaintiffs and Class Members provided their PHI to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and  secure from unauthorized access.

20. Plaintiffs and Class Member's PHI was provided to Defendant in conjunction with the type of work Defendant does within the healthcare industry, specifically processing medical claims in the correctional setting.

21. However, CorrectCare failed to secure the PHI of the individuals that provided it with this sensitive information.

22. CorrectCare's data security obligations were particularly important given the substantial increase in cyber-attacks and/or data breaches preceding the date they disclosed the incident.

23. According to PR Newswire, CorrectCare first discovered, on July 6, 2022, "that two file directories on its web server had been inadvertently exposed to the public internet."

24. After conducting an initial investigation, CorrectCare "determined patient information contained in these file directories may have been exposed as early as January 22, 2022." CorrectCare noted that the patient information affect "included name, date of birth, and limited health information, such as a diagnosis code and/or CPT code, treatment provider, and dates of treatment, and may have included Social Security numbers."

25. Despite first becoming aware of the existence of the Data Breach on July 6, 2022 – and conducting "promptly" an investigation "with the assistance of third-party cyber security specialists" – CorrectCare waited until after Thanksgiving, in November, to notify Plaintiffs that their information was compromised.

## Plaintiffs and the Class Have Suffered Injury as a Result of
## CorrectCare's Data Mismanagement

26. As a result of Defendant's failure to implement and follow even the most basic security procedures, Plaintiffs and Class Members' PHI has been publicly exposed. Plaintiffs and other Class Members now face an increased risk of identity theft, particularly due to the potential dissemination of their Social Security Number and other impacted information, and will continue to spend, significant time and money to protect themselves due to Defendant's Data Breach.

27. Plaintiffs and other class members have had their most personal, sensitive and PHI disseminated to the public at large and have experienced and will continue to experience emotional pain and mental anguish and embarrassment.

28. Plaintiffs and Class members face an increased risk of identity theft attacks, and related cybercrimes because of the Data Breach. Those impacted are under heightened and

5

prolonged anxiety, as they will be at risk for falling victim for cybercrimes for years to come.

29. Cyber criminals seek out PHI at a greater rate than other sources of personal information. In a 2022 report, the healthcare compliance company Proetus found that there were 905 medical data breaches in 2021, leaving over 50 million patient ecords exposed for 700 of the 2021 incidents. This is an increase from the 758 medical data breaches that Protenus compiled in 2020.

30. The healthcare sector suffered about 337 breaches in the first half of 2022 alone, according to Fortified Health Security's mid-year report released in uly. The percentage of healthcare breaches attributed to malicious activity rose more than 5 percentage points in the first six months of 2022 to account for nearly 80 percent of all reported incidents.

31. Further, a 2022 report released by IBM Security states that for 12 consecutive years the healthcare industry has had the highest average cost of a data breach and as of 2022 healthcare data breach costs have hit a new record high.

32. PII/PHI is a valuable property right. The value of PII/PHI as a commodity is measurable. "Firms are now able to attain significant market valuations by employing business models predicated on the successful use of personal data within the existing legal and regulatory frameworks." American companies are estimated to have spent over $19 billion on acquiring personal data of consumers in 2018. It is so valuable to identity thieves that once PII/PHI has been disclosed, criminals often trade it on the "cyber black-market," or the "dark web," for many years.

33. As a result of its real value and the recent large-scale data breaches, identity thieves and cyber criminals have openly posted credit card numbers, Social Security numbers, PII/PHI, and other sensitive information directly on various Internet websites, making the information publicly available. This information from various breaches, including the information exposed in the Data Breach, can be aggregated and become more valuable to thieves and more damaging to victims.

34. PHI is particularly valuable and has been referred to as a "treasure trove for criminals." A cybercriminal who steals a person's PHI can end up with as many as "seven to 10 personal identifying characteristics of an individual." A study by Experian found that the "average total cost" of medical identity theft is "about $20,000" per incident, and that a majority of

victims of medical identity theft were forced to pay out-of-pocket costs for healthcare they did not receive in order to restore coverage.

35. Personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200. Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web. All-inclusive health insurance dossiers containing sensitive health insurance information, names, addresses, telephone numbers, email addresses, SSNs, and bank account information, complete with account and routing numbers, can fetch up to $1,200 to $1,300 each on the black market. Criminals can also purchase access to entire company data breaches from $900 to $4,500.23 according to a report released by the Federal Bureau of Investigation's ("FBI") Cyber Division, criminals can sell healthcare records for 50 times the price of a stolen Social Security or credit card number.

36. Criminals can use stolen PII/PHI to extort a financial payment by "leveraging details specific to a disease or terminal illness." Quoting Carbon Black's Chief Cybersecurity Officer, one recent article explained: "Traditional criminals understand the power of coercion and extortion . . . . By having healthcare information—specifically, regarding a sexually transmitted disease or terminal illness—that information can be used to extort or coerce someone to do what you want them to do."

37. Consumers place a high value on the privacy of that data. Researchers shed light on how much consumers value their data privacy—and the amount is considerable. Indeed, studies confirm that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."

38. Given these facts, any company that transacts business with a consumer and then compromises the privacy of consumers' PII/PHI has thus deprived that consumer of the full monetary value of the consumer's transaction with the company.

39. Indeed, cyberattacks against the healthcare industry have been common for over ten years with the Federal Bureau of Investigation ("FBI") warning as early as 2011 that cybercriminals were "advancing their abilities to attack a system remotely" and "[o]nce a system is compromised, cyber criminals will use their accesses to obtain PII." The FBI further warned that that "the increasing sophistication of cyber criminals will no doubt lead to an escalation in cybercrime.

40. Cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets so they are aware of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive to ransomware criminals… because they often have lesser IT defenses and a high incentive to regain access to their data quickly.

41. In fact, according to the cybersecurity firm Mimecast, 90% of healthcare organizations experienced cyberattacks in the past year.

42. CorrectCare was on notice that the FBI has recently been concerned about data security in the healthcare industry. In August 2014, after a cyberattack on Community Health Systems, Inc., the FBI warned companies within  the  healthcare industry that hackers were targeting them. The warning stated that "[t]he FBI has observed malicious actors targeting healthcare related systems, perhaps for the purpose of obtaining the Protected Healthcare Information (PHI) and/or Personally Identifiable Information (PII)."

43. The American Medical Association ("AMA") has also warned healthcare companies about the importance of protecting their patients' confidential information:

> Cybersecurity is not just a technical issue; it's a patient safety issue. AMA research has revealed that 83% of physicians work in a practice that has experienced some kind of cyberattack. Unfortunately, practices are learing that cyberattacks not only threaten the privacy and security of patients' health and financial information, but also patient access to care.

44. As implied by the above AMA quote, stolen PHI can be used to interrupt important medical services. This is an imminent and certainly impending risk for Plaintiffs and Class Members. Plaintiffs  and  members  of  the Class, as  a whole, must immediately devote time, energy, and money to: 1) closely monitor their medical statements,  bills, records,  and credit and financial accounts; 2) change login and password information  on any sensitive account even more frequently than they already do;  3) more carefully screen and scrutinize phone calls, emails, and other communications to ensure that they are not  being targeted in a social engineering or spear phishing attack; and 4) search for suitable identity theft protection and credit monitoring services, and pay to procure them.

45. Once PHI is exposed, there is virtually no way to ensure that the exposed information has been fully recovered or contained against future misuse. For this reason, Plaintiffss and Class members will need to maintain these heightened measures for years, and possibly

their entire lives, as a result of CorrectCare' conduct.  Further, the value of  Plaintiffs' and Class members' PHI has been diminished by  its exposure in the Data Breach.

46. As a result of CorrectCare's data security failures,  Plaintiffs and Class members are at substantial risk of suffering identity  theft and fraud or misuse of their PHI.

47. Plaintiffs and the Class suffered actual injury from having PHI compromised as a result of CorrectCare' negligent data management and resulting Data Breach including, but not limited to (a) damage to and diminution in the value  of their PHI, a form of property that Defendant obtained from Plaintiffs; (b) violation of theirs privacy rights;  and (c) present and increased risk arising from the identity theft and fraud.

48. For the reasons mentioned above, CorrectCare's conduct, which allowed the Data Breach to occur, caused Plaintiffss  and  members of the Class these significant injuries and harm.

49. Plaintiffs bring this class action against CorrectCare  for its failure to properly secure and safeguard PHI and for failing to provide timely, accurate,  and adequate notice to Plaintiffs and  other class members that their PHI had been compromised.

50. Plaintiffs, individually and on behalf of  all other similarly  situated individuals, alleges claims in negligence, negligence per se,   breach of implied contract, breach of fiduciary duty, and unjust enrichment.

## CLASS ACTION ALLEGATIONS

51. Plaintiffs bring this action on behalf of themselves and on behalf  of all other persons similarly situated.

52. Plaintiffs  proposes the following Class definition, subject to amendment as appropriate:

> All Georgia Department of Corrections inmates whose Private Health Information was entrusted  to CorrectCare and which was compromised as a result of the Data Breach discovered by CorrectCare on or around June 6, 2022 (the " GDC Inmate Class").

> All pretrial detainee inmates whose Private Health Information was entrusted  to CorrectCare and which was compromised as a result of  the Data Breach discovered by CorrectCare on or around June 6, 2022 (the "Pretrial Inmate Class").

53. Excluded from the Class are Defendant's officers and directors, and any entity in which Defendant has a controlling  interest; and the affiliates, legal representatives, attorneys,

successors, heirs, and assigns of Defendant. Excluded also from the Class are Members of the judiciary to whom this case is assigned, their families and Members of his staff.

54. Plaintiffs reserve the right to amend or modify the class definitions with greater specificity or division after having had an opportunity to conduct discovery. The proposed Classes meet the criteria for certification under Rule 23(a), 23(b)(2), 23(b)(3), and 23(c)(4).

55. **Numerosity**.  The Members of the Class are so numerous that joinder of all of them is impracticable. As noted above, the data breach affected almost 178,000 inmates plus inmates.

56. **Commonality**. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members.  These common questions of law and fact include, without limitation:

a. Whether Defendant unlawfully used, maintained, lost, or disclosed Plaintiffs' and Class Members' PHI;

b. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c. Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

d. Whether Defendant's data security systems prior to and during  the Data Breach were consistent with industry standards;

e. Whether Defendant owed a duty to Class Members to safeguard their PHI;

f. Whether Defendant breached its duty to Class Members to safeguard their PHI;

g. Whether computer hackers obtained Class Members' PHI in the Data Breach;

h. Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

i. Whether Plaintiffs and Class Members suffered legally cognizable damages as a result of Defendant's misconduct;

j. Whether Defendant's conduct was negligent;

k. Whether Defendant's conduct  was per se negligent;

l. Whether Defendant's acts, inactions, and practices complained of  herein amount to acts of intrusion upon seclusion under the law;

m. Whether Defendant was unjustly enriched;

n.  Whether Defendant failed to provide notice of the Data Breach in a timely manner; and

o.  Whether Plaintiffs and Class Members are entitled to damages, civil penalties, punitive damages, and/or injunctive relief.

57. **Typicality**. Plaintiffs's claims are typical of those of other Class Members because Plaintiffs's PHI, like that of every other Class member, was compromised  in the Data Breach.

58. **Adequacy of Representation**. Plaintiffs  will fairly and adequately represent and protect the interests of the Members of the  Class. Plaintiffs's Counsel is competent and experienced in litigating class actions.

59. **Predominance**. Defendant has engaged in a common course of conduct toward Plaintiffs and  Class Members, in that  all the Plaintiffs' and  Class Members' data was stored on the same computer systems  and unlawfully accessed in the same  way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues  in  a single action has important and desirable advantages of judicial economy.

60. **Superiority**. A class action is superior to  other available methods  for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal  litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

61. Defendant has acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis.

62. Likewise, particular issues are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a.   Whether Defendant failed to timely notify the public of the Data Breach;

b.   Whether Defendant owed a legal duty to Plaintiffs and the Class to exercise due care in collecting, storing, and safeguarding their PHI;

c.   Whether Defendant's security measures to protect their data systems were reasonable in light of best practices recommended by data security experts;

d.   Whether Defendant's failure to institute adequate protective security measures amounted to negligence;

e.   Whether Defendant failed to take commercially reasonable steps to safeguard consumer PHI; and

f.   Whether adherence to FTC data security recommendations, and measures recommended by data security experts would have reasonably prevented the Data Breach.

63. Finally, all members of the proposed Class are readily ascertainable. Defendant has access to Class Members' names and addresses affected by the Data Breach. In fact, Class Members have already been preliminarily identified and sent notice of the Data Breach by Defendant.

## CAUSES OF ACTION

### First Cause of Action

### Negligence

### (On Behalf of Plaintiffs and Class Members)

64. Plaintiffs re-allege and incorporates the above allegations as if fully set forth herein.

65. CorrectCare (by and through its customers) required Plaintiffs and Class Members to submit non-public personal information in order to obtain healthcare/medical services.

66. By collecting and storing this data in CorrectCare's computer property, and sharing it and using it for commercial gain, Defendant had a duty of care to use reasonable means to secure and safeguard their computer property—and Class Members' PHI held within it— to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to implement processes by which it could detect a breach of their security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a Data Breach.

67. Defendant owed a duty of care to Plaintiffs and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure

that its systems and networks, and the personnel responsible for them, adequately protected the PHI.

68. Defendant's duty of care to use reasonable  security measures  arose as a result of the special relationship that existed between Defendant CorrectCare and its patients, which is recognized by laws and regulations  including but not limited to HIPAA, as  well as common law. Defendant was in a position  to ensure that its  systems were sufficient to protect against the foreseeable risk of harm to Class  Members from a Data Breach or data breach.

69. Defendant's duty to use reasonable security measures under HIPAA required Defendant to "reasonably protect"  confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected   health information." 45 C.F.R. § 164.530(c)(1). Some or all of the healthcare,  medical, and/or medical information  at  issue in this case  constitutes "protected health information"  within the meaning of  HIPAA.

70. In addition, Defendant had a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as  interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

71. Defendant's duty to use reasonable care in  protecting confidential data arose not only as a result of the statutes and regulations  described above, but also because Defendant is bound by industry standards to protect confidential PHI.

72. Defendant breached  its duties,  and thus were  negligent, by  failing to use reasonable measures to  protect  Class  Members' PHI.  The  specific  negligent  acts  and  omissions committed by Defendant include, but are not  limited to, the following:

a. Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' PHI;

b. Failing to adequately monitor the security of their networks and systems;

c. Failure to periodically ensure that their email system had plans in place to maintain reasonable data security safeguards;

d. Allowing unauthorized access to Class Members' PHI;

e. Failing to detect  in a  timely manner that Class Members' PHI had been compromised;

f. Failing to timely notify Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages;

_____

g.   Failing to secure its web servers from unauthorized and public access;  and

h.   It was foreseeable that Defendant's  failure to use reasonable measures to protect Class Members' PHI would result in injury to Class Members.  Further, the breach of security was reasonably foreseeable given the  known high frequency of cyberattacks  and data breaches in the healthcare industry.

73. It was therefore foreseeable that the failure to adequately safeguard Class Members' PHI would result in one or more types of injuries to Class Members.

74. Plaintiffs and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

75. Defendant's negligent conduct  is ongoing, in that it still holds the PHI of Plaintiffs and Class Members in an unsafe and unsecure manner.

76. Plaintiffs and Class Members are also entitled to injunctive relief requiring Defendant to (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue  to provide adequate credit monitoring to all Class Members.

**Second Cause of Action**

**Breach of Implied Contract**

**(On Behalf of Plaintiffs and Class Members)**

77. Plaintiffs re-allege the above allegations as if fully set forth herein.

78. When Plaintiffs and Class Members provided their PHI to Defendant CorrectCare in exchange for Defendant CorrectCare's services, they entered into implied contracts with Defendant pursuant to which Defendant agreed to reasonably protect such information.

79. Defendant CorrectCare sllicited, offered, and invited Class Members to provide their PHI as part of Defendant's regular business practices. Plaintiffs and Class Members accepted Defendant's offers and provided their PHI to Defendant.

80. In entering into such implied contracts, Plaintiffs and Class Members reasonably believed and expected that Defendant's data security practices complied with relevant laws and regulations, including HIPAA, and were consistent with industry standards.

81. Plaintiffs and Class Members on their behalf paid money to Defendant  to Defendant  with the reasonable belief and expectation that Defendant would use part of its earnings to obtain adequate data security. Defendant failed to do so.

14

_____

82. Plaintiffs and Class Members have entrusted their PHI to Defendant in the absence of the implied contract between them and Defendant to keep their information reasonably secure.

83. Plaintiffs and Class Members would not have entrusted their PHI to Defendant in the furtherance of their implied promise to monitor their computer systems and networks to ensure that it adopted reasonable data security measures.

84. Plaintiffs and Class Members fully and adequately performed their obligations under the implied contracts with Defendant.

85. Defendant breached its implied contracts with Plaintiffs and Class Members by failing to safeguard and protect their PHI.

86. As a direct and proximate result of Defendant's breach of the implied contracts, Plaintiffs and Class Members sustained damages as alleged herein, including the loss of the benefit of the bargain.

87. Plaintiffs and Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach. 88. Plaintiffs and Class Members are also entitled to injunctive relief requiring Defendant to, e.g., (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members.

### Third Cause of Action

### Negligence Per Se

### (On Behalf of Plaintiffs and All Class Members)

88. Plaintiffs re-allege the above allegations as if fully set forth herein.

89. Pursuant to the Federal Trade Commission Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' PHI.

90. Pursuant to HIPAA, 42 U.S.C. § 1302d, et seq., Defendant had a duty to implement reasonable safeguards to protect Plaintiffs' and Class Members' PHI.

91. Pursuant to HIPAA, Defendant had a duty to render the electronic PHI they maintained unusable, unreadable, or indecipherable to unauthorized individuals, as specified in the HIPAA Security Rule by "the use of an algorithmic process to transform data into a form in which there is a low probability of assigning meaning without use of a confidential process or key." See definition of encryption at 45 C.F.R. § 164.304.

15

92. Defendant breached its duties to Plaintiffs and Class Members under the Federal Trade Commission Act and HIPAA by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' PHI.

93. Defendant's failure to comply with applicable laws and regulations constitutes negligence per se. But for Defendant's wrongful and negligent breach of their duties owed to Plaintiffs and Class Members, Plaintiffs and Class Members would not have been injured.

94. The injury and harm suffered by Plaintiffs and Class Members was the reasonably foreseeable result of Defendant's breach of their duties. Defendant knew or should have known that they failing to meet its duties, and that Defendant's breach would cause Plaintiffs and Class Members to experience the foreseeable harms associated with the exposure of their PHI.

95. As a direct and proximate result of Defendant's negligent conduct, Plaintiffs and Class Members have suffered injury and are entitled to compensatory, consequential, and punitive damages in an amount to be proven at trial.

**Fourth Cause of Action**

**Breach of Fiduciary Duty**

**(On Behalf of Plaintiffs and Class Members)**

96. Plaintiffs re-allege the above allegations as if fully set forth herein.

97. In light of the confidential medical relationship between Defendant CorrectCare and Plaintiffs and Class Members, whereby Defendant became guardian of Plaintiffs ' and Class Members' PHI, Defendant became a fiduciary by its undertaking and guardianship of the PHI, to act primarily for Plaintiffs and Class Members, (1) for the safeguarding of Plaintiffs ' and Class Members' PHI; (2) to timely notify Plaintiffs and Class Members of a Data Breach and disclosure; and (3) to maintain complete and accurate records of what information (and where) Defendant did and does store.

98. Defendant has a fiduciary duty to act for the benefit of Plaintiffs and Class Members upon matters within the scope of CorrectCare's relationship with its patients and former patients, in particular, to keep secure their PHI.

99. Defendant breached its fiduciary duties to Plaintiffs and Class Members by failing to diligently discovery, investigate, and give notice of the Data Breach in a reasonable and practicable period of time. 102. Defendant breached its fiduciary duties to Plaintiffs and

Class Members  by  failing to encrypt and otherwise protect the integrity of  the  systems containing  Plaintiffs ' and Class Members' PHI.

100.    Defendant breached its fiduciary duties owed to Plaintiffs and Class Members by failing to timely notify and/or warn Plaintiffs and Class Members of  the Data Breach.

101.    Defendant breached its fiduciary duties  to  Plaintiffs  and  Class Members  by otherwise failing to safeguard Plaintiffs ' and Class Members' PHI.

102.    As a direct and proximate result of  Defendant's breaches of  its fiduciary duties, Plaintiffs and Class Members have  suffered and  will suffer injury, including but not limited to: (i) actual identity theft; (ii)  the compromise, publication, and/or theft of their PHI; (iii) out-ofpocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their PHI; (iv) lost opportunity  costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not  limited  to  efforts spent researching  how to prevent, detect, contest, and  recover from identity theft; (v) the continued risk to  their PHI, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to  undertake  appropriate and adequate measures to  protect the  PHI in their continued possession; (vi)  future costs in terms  of time,  effort, and money that will be  expended as result of the Data Breach for the remainder  of the lives of Plaintiffs and Class  Members;  and (vii) the diminished value of Defendant's services they received.

103.    As a direct and proximate result of Defendant's breach of its fiduciary duties, Plaintiffs and Class Members have suffered  and will continue to suffer  other forms of  injury and/or harm, and other economic and non-economic losses.

**Fifth Cause of Action**

**Intrusion Upon Seclusion / Invasion of Privacy**

**(On Behalf of Plaintiffs  and All Class Members)**

104.    Plaintiffs  re-allege the above allegations as if fully  set forth herein.

105.    Plaintiffs and Class Members had a  reasonable  expectation of privacy in the PHI Defendant mishandled.

106.    Defendant's conduct as alleged above intruded upon Plaintiffs' and Class Members' seclusion under common law.

107.   By intentionally failing to keep Plaintiffs' and Class Members' PHI safe, and by intentionally misusing and/or disclosing said information to unauthorized parties for unauthorized use, Defendant intentionally invaded Plaintiffs' and Class Members' privacy by:

a.   Intentionally and substantially intruding into Plaintiffs' and Class Members' private affairs in a manner that identifies Plaintiffs and Class Members and that would be highly offensive and objectionable to an ordinary person; and

b.   Intentionally publicizing private facts about Plaintiffs and Class Members, which is highly offensive and objectionable to an ordinary person; and

c.   Intentionally causing anguish or suffering to Plaintiffs and Class Members.

108.   Defendant knew that an ordinary person in Plaintiffs' or Class Members' position would consider Defendant's intentional actions highly offensive and objectionable.

109.   Defendant invaded Plaintiffs' and Class Members' right to privacy and intruded into Plaintiffs' and Class Members' private affairs by intentionally misusing and/or disclosing their PHI without their informed, voluntary, affirmative, and clear consent.

110.   Defendant intentionally concealed from and delayed reporting to Plaintiffs and Class Members a security incident that misused and/or disclosed their PHI without their informed, voluntary, affirmative, and clear consent.

111.   The conduct described above was at or directed at Plaintiffs and the Class Members.

112.   As a proximate result of such intentional misuse and disclosures, Plaintiffs' and Class Members' reasonable expectations of privacy in their PHI was unduly frustrated and thwarted. Defendant's conduct amounted to a substantial and serious invasion of Plaintiffs' and Class Members' protected privacy interests causing anguish and suffering such that an ordinary person would consider Defendant's intentional actions or inaction highly offensive and objectionable.

113.   In failing to protect Plaintiffs' and Class Members' PHI, and in intentionally misusing and/or disclosing their PHI, Defendant acted with intentional malice and oppression and in conscious disregard of Plaintiffs' and Class Members' rights to have such information kept confidential and private. Plaintiffs therefore, seek an award of damages on behalf of themselves and the Class.

**Sixth Cause of Action**

**Unjust Enrichment**

**(On Behalf of Plaintiffs and Class Members)**

114.    Plaintiffs  re-allege the  above allegations as if fully set  forth herein. Plaintiffs bring their claim individually and on behalf of all Class Members. This count is plead in the alternative to the breach of contract count above.

115.    Upon information and belief, Defendant funds its data security measures entirely from its general revenue, including payments made by or on behalf of Plaintiffs and the Class Members.

116.    As such, a portion of the payments made by or on behalf of Plaintiffs and the Class Members is to be used to provide a reasonable level of data security, and the amount of the portion of each payment made that is allocated to data security is known to Defendant.

117.    Plaintiffs and Class Members conferred a monetary benefit on Defendant. Specifically, they purchased goods and services from Defendant and/or its agents and in so doing provided Defendant with their PHI. In exchange, Plaintiffs and Class Members should have received from Defendant the goods and services that were  the subject of the  transaction and have their PHI protected with adequate data security.

118.    Defendant knew that Plaintiffs and Class Members conferred a benefit which Defendant accepted. Defendant profited from these transactions and used the PHI of Plaintiffs and Class Members for business purposes.  In particular, Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to  secure Plaintiffs' and Class Members' Personal Information.  Instead of providing a reasonable level of security that would have prevented the hacking incident,

119.    Defendant instead calculated to increase its own profits at the expense of Plaintiffs and Class Members by utilizing cheaper, ineffective security measures. Plaintiffs and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's decision to prioritize its own profits over the requisite security.

120.    Under the principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiffs and Class Members, because Defendant failed to implement appropriate data management and security measures  that are mandated by industry standards.

PLAINTIFF'S CLASS ACTION COMPLAINT

121.    Defendant failed to secure Plaintiffs and Class Members' PHI and, therefore, did not provide full compensation for the benefit Plaintiffs and Class Members provided.

122.    Defendant acquired the PHI through inequitable means in that it failed to disclose the inadequate security practices previously alleged.

that Defendant knew that they had not reasonably secured the Plaintiffs' and Class Members' PHI,  that is material to the agreement.

123.    Plaintiffs and Class Members have no adequate remedy at law.

124.    As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have suffered and will suffer injury, including but not limited to: (a) actual identity theft; (b) the loss of the opportunity of how their PHI is used; (c) the compromise, publication, and/or theft of their PHI; (d) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their PHI; (e) lost opportunity costs associated with efforts expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (f) the continued risk to their PHI, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect PHI in their continued possession; and (g) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PHI compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and Class Members.

125.    As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

**126.**    Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiffs and Class Members, proceeds that they unjustly received from them. In the alternative, Defendant should be compelled to refund the amounts that Plaintiffs and Class Members overpaid for Defendant's services.

**PRAYER FOR RELIEF:**

**WHEREFORE**, Plaintiffs  pray for judgment as follows:

   a)  For an Order certifying this action as a class action and appointing Plaintiffs and their counsel to represent the Class;

   b)  For equitable relief enjoining CorrectCare from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiffs and Class Members' PHI, and from refusing to issue prompt, complete and accurate disclosures to Plaintiffs and Class Members;

   c)  For equitable relief compelling CorrectCare to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety, and to disclose with specificity the type of  PHI compromised during  the Data Breach;

   d)  For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of CorrectCare's wrongful conduct;

   e)  Ordering CorrectCare to pay for not less than ten years of credit monitoring services for Plaintiffs and the Class;

   f)  For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

   g)   For an award of punitive damages, as allowable by law;

   h) For an award of attorneys' fees and costs, and any other expense, including expert witness fees;

   i)  Pre- and post-judgment interest on any amounts awarded; and

   j)  Such other and further relief as this court may deem just and proper.

## JURY TRIAL DEMANDED

   Plaintiffs demand a trial by jury on all claims so triable.


Dated:  March 18th, 2023                         */S/ McNeill Stokes*
                                                McNeill Stokes
                                                Georgia Bar Number 683600

5372 Whitehall Place SE
Mableton, GA 30126
Telephone: 404-352-2144
Email:  mcstokes@bell south.net

PLAINTIFF'S CLASS ACTION COMPLAINT