## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| DIANETTE WILLIAMS,<br><br>          Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION<br>SOLUTIONS, INC.<br><br>          Defendant. | **Case No.:**<br><br><br>**COMPLAINT AND<br>DEMAND FOR JURY TRIAL**<br><br><br>  **1.  FCRA, 15 U.S.C. § 1681 *et seq.*** |

Plaintiff Dianette Williams ("Plaintiff"), through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.,* against Defendant Experian Information Solutions, Inc. ("Experian" or "Defendant").

## I.  INTRODUCTION

1.  Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.,* by the Defendant.  Plaintiff contends Defendant failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports, and consequently reported inaccurate information about Plaintiff.  "Consumer reports"

1

under 15 U.S.C. § 1681a(d) include both credit file disclosures obtained directly by Plaintiff from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

## II.   JURISDICTION AND VENUE

2.      This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of the FCRA, a federal law. *See* 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

3.      Venue in the Northern District of Georgia is proper pursuant to 28 U.S.C. § 1391 because Defendant regularly transacts business within this District, is otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## III.   PARTIES

4.      Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

5.      Plaintiff is a natural person who resides in Smyrna, Georgia.

6.      Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

7.     Defendant Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f).  On information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties. Experian's principal place of business is located at 475 Anton Boulevard, Costa Mesa, California 92626.

8.     During all times pertinent to this Complaint, Defendant was authorized to conduct business in the State of Georgia and conducted business in the State of Georgia on a routine and systematic basis.

9.     Defendant regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties. Defendant regularly furnishes consumer reports to third parties for monetary compensation, fees, and other dues, using means and facilities of interstate commerce, and is therefore a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA.

10.     During all times pertinent to this Complaint, Defendant acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

11.     Any violations by Defendant were not in good faith, were knowing, negligent, willful, and/or intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violation.

## IV.    FACTUAL BACKGROUND

12.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

13.     The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

14.     Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

15.     The FCRA is intended to ensure consumer reporting agencies ("CRAs") exercise their grave responsibilities with fairness, impartiality, and a

respect for the consumer's right to privacy because CRAs have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

16.    Defendant, one of the three major consumer reporting agencies (at times referred to collectively as "the CRAs," and individually as a "CRA") in the United States, regularly publishes and distributes credit information about Plaintiff and other consumers through the sale of consumer reports.

17.    Defendant regularly purchases and obtains consumer bankruptcy information to include in consumer reports.

18.    Defendant's consumer reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) Public Record Information: this section typically includes public record information, such as bankruptcy filings; and (iv) Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications

for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

19.     Defendant obtains consumer information from various sources. Some consumer information is sent directly to Defendant by furnishers, and other information is independently gathered by Defendant from third party providers/vendors or repositories, like computerized reporting services such as PACER and Lexis-Nexis.

20.     Defendant regularly seeks out and procures consumer bankruptcy filing and discharge information, with the intention of including it in the consumer reports Defendant sells to third parties for a profit.

21.     The diligence Defendant exercises in uncovering and recording consumer bankruptcy filings is not replicated in Defendant's subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

22.     Defendant's unreasonable policies, procedures, and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by § 1681e(b).

23.    Defendant knows the information it reports about consumers' bankruptcies is often inconsistent with public records, furnished/reported information, and/or information contained in its own files.

24.    The vast majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Defendant) to make lending decisions.

25.    Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models), including debt-to-income ratios, to interpret the information in a consumer's consumer report, which is based on the amount of reported debt, payment history, and dates of delinquencies contained in Defendant's reports.

26.    The information Defendant includes in a consumer report contributes to a consumer's overall creditworthiness and determines their FICO Scores.

27.    FICO Scores are calculated using information contained in Defendant's consumer reports.

28.    FICO and other third-party algorithms use variables or "attributes" derived from a consumer report to calculate a person's "credit score," which is a direct reflection of their creditworthiness.

29.     FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

    a.   "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower a consumer's FICO Score will be.

    b.   The "amount of debt" a consumer owes has a major impact on his or her credit score. When a CRA reports a debt as outstanding when it is in fact discharged, the CRA is indicating that a consumer's "amount of debt" is higher than it actually is, which will undoubtedly impact a consumer's credit score.

30.     Lenders also consider a consumer's debt-to-income ratio ("DTI") before deciding to extend credit or approve financing terms.

31.    DTI compares the total amount a consumer owes to the total amount a consumer earns.

32.    Defendant regularly provides information that allows lenders to calculate the "total amount of debt" a consumer owes based on the total debt reported by Defendant.

33.    A consumer's income, however, is not included in his or her consumer report; only his or her "amount of debt" is. Consumers enter their income into credit applications. Therefore, DTI is not calculated in a consumer's credit score but is a factor in credit decisions.

34.    The higher the amount of reported debt that a consumer has, or appears to have, the worse the consumer's DTI will be, and the more difficult it will be for a consumer to obtain credit and favorable credit terms (e.g., higher interest rates and lower credit limits).

35.    A consumer who has obtained a bankruptcy discharge and has an account that is inaccurately reporting with outstanding or past due balances after the bankruptcy discharge suffers greater harm than if that account were accurately reporting with a zero-dollar balance.

36.     Defendant is aware that the effect of a Discharge Order in a Chapter 7 Bankruptcy is that all statutorily dischargeable debts, other than those that have been reaffirmed or successfully challenged in an adversary proceeding, are discharged.

37.     However, Defendant also knows that it is rare for a pre-petition debt to be reaffirmed or successfully challenged in an adversary proceeding.

38.     Further, Defendant knows that if reaffirmation agreements or adversary proceedings exist, they will be explicitly identified on an individual consumer's bankruptcy docket sheet.

39.     Additionally, information indicating whether a specific debt was reaffirmed or successfully challenged through an adversary proceeding (rather than discharged) can be easily retrieved from the same sources from which Defendant independently obtains consumer bankruptcy case information.

40.     Defendant also receives information about account reaffirmations or other discharge exceptions directly from furnishers of account/tradeline information.

41.     Despite the availability of accurate consumer information, Defendant regularly reports inaccurate information about accounts after consumers receive a Discharge Order.

42.     Defendant's unreasonable policies and procedures cause it to routinely report inaccurate and materially misleading information about consumers, including Plaintiff, who have been discharged from Chapter 7 Bankruptcy.

43.     Rather than follow reasonable procedures to assure maximum possible accuracy, as required by the FCRA, Defendant frequently reports information regarding pre-bankruptcy debts based on information it knows is incomplete or inaccurate.

44.     After a bankruptcy is discharged, Defendant also routinely relies on furnisher data, even though the furnisher has ceased updating an account upon the filing of a bankruptcy and the account information is "stale" (not updated by the furnisher since more than 90 days).

45.     Consequently, Defendant regularly publishes consumer information that conflicts with information: provided by data furnishers to Defendant, already included in Defendant's credit files, contained in public records that Defendant

11

regularly accesses, or sourced through Defendant's independent and voluntary efforts.

46.    Defendant routinely reports inaccurate and materially misleading information about consumers like Plaintiff, without verifying or updating it as required by § 1681e(b).

47.    Defendant knows the information it reports about consumers' bankruptcies is often inconsistent with public records, information provided by furnishers, and data contained in Defendant's own files.

48.    Defendant also knows that failing to report the effect of a discharge on consumer account tradelines, while reflecting a bankruptcy on a credit report, would reasonably be understood to declare to the world that that the consumer had been in bankruptcy but had not received a discharge of a particular account. This not only inaccurately reflects an outstanding debt, but also would reasonably suggest to a consumer and those reviewing the consumer's credit report that the consumer was guilty of a bad act for which he/she did not deserve a discharge of a particular debt.[1]

---

[1] Indeed, a bankruptcy discharge is for the "honest but unfortunate debtor," *Grogan v. Garner*, 498 U.S. 279, 287 (1991), and will not be provided to someone who

49.     Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against Defendant for its inaccurate credit reporting following a Chapter 7 discharge.

50.     Thus, Defendant is on continued notice of its inadequate post-bankruptcy reporting procedures. More specifically, Defendant is on continued notice that its inadequate procedures regularly result in the reporting of inaccurate balances, account statuses, payment histories, and payment statuses.

<u>*Allegations Specific to Credit Reporting of Plaintiff*</u>

51.     Plaintiff filed a "no asset" Chapter 7 Bankruptcy on or about May 13, 2022, in the United States Bankruptcy Court for the Northern District of Georgia (Case No. 22-053699).

52.     Plaintiff received an Order of Discharge on or about August 29, 2022.

53.     Thereafter, Plaintiff was not personally liable for any of her dischargeable debts. Upon entry of Plaintiff's Discharge Order, all of Plaintiff's dischargeable debts had zero-dollar balances.

---

filed bankruptcy in bad faith, failed to report assets, fraudulently transferred assets, engaged in reprehensible pre-bankruptcy conduct such as fraud, defalcation or embezzlement, or caused willful and malicious injury. 11 U.S.C. §§ 727(a), 523(a).

54.   Upon information and belief, Defendant prepared one or more consumer reports concerning Plaintiff after she was discharged from Chapter 7 Bankruptcy.

55.   The allegations in this complaint against Defendant are based on the reporting by Defendant in Plaintiff's December 8, 2022 consumer disclosure obtained by Plaintiff.

56.   Defendant obtained notice of Plaintiff's bankruptcy discharge through its routine, independent collection of consumer information from third party vendors such as Lexis-Nexis, as well as from furnishers that provide data regarding the individual tradelines reported by Defendant in Plaintiff's consumer reports.

57.   In the Public Records section of Plaintiff's consumer report, Defendant included the bankruptcy case number, court, filing date, and the fact that Plaintiff's bankruptcy had been discharged.

58.   Defendant also reported Plaintiff's credit history in individual "tradelines," including names of credit accounts, account numbers, account types, responsibility for the account (i.e., individual or joint accounts), the date the accounts were opened, statuses, and the dates of the last status update.

59.     Defendant is aware that CRAs are generally required to report accounts included in a consumer's Chapter 7 bankruptcy with a status of "discharged through bankruptcy," and/or with a zero-dollar balance, unless a furnisher provides information showing that a specific debt was excluded from the discharge.

60.     Defendant knows that consumers file Chapter 7 bankruptcies to eliminate debt they cannot afford and that the "default rule" is that all debts in a Chapter 7 are discharged unless excepted by the bankruptcy code (student loans, child support, etc.).

61.     Defendant should have reported **all** of Plaintiff's dischargeable, pre-petition debts as included in or discharged in Chapter 7 Bankruptcy and/or with a zero-dollar balance.

62.     Defendant failed to report **all** of Plaintiff's dischargeable, pre-petition debts as included in or discharged in Chapter 7 bankruptcy and/or with a zero-dollar balance.

63.     Defendant inaccurately reported, *inter alia*, Plaintiff's Consolidation Capital Account (the "Account"), starting with AGDR1316**** and opened in November 2021, which predated Plaintiff's bankruptcy filing.

64.    The Account was discharged in Plaintiff's bankruptcy on or about August 29, 2022.  Therefore, the Account should have been reported as discharged in bankruptcy, and/or with a zero-dollar balance.

65.    However, Experian inaccurately reported the discharged Account as having a balance of $10,230, instead of a zero-dollar balance.

66.    Defendants know that the Account has not been updated since prior to Plaintiff's Chapter 7 filing.

67.    Experian did not indicate that the Account was discharged in bankruptcy or report the Account with a zero-dollar balance, despite reporting Plaintiff's bankruptcy in the public records section of Plaintiff's consumer report and reporting other pre-bankruptcy accounts as having a status of "Bankruptcy," and with zero-dollar balances.

68.    The Account was essentially frozen in time by Defendant based on a pre-bankruptcy balance and status on Defendant December 8, 2022 consumer report. Consequently, Defendant inaccurately reported the actual balance, status, and payment obligations on the Account.

69.     Defendant does not have reasonable procedures in place to detect and correct pre-Chapter 7 debts which continue to report balances after Defendant reports a discharge.

70.     Defendant does not have reasonable procedures in place to detect and correct or suppress pre-Chapter 7 debts reporting balances where Defendant is aware that the furnisher has ceased all account updates after the bankruptcy was filed.

71.     Notably, the other national consumer reporting agencies, Equifax and Trans Union, did not inaccurately report the Account such as Experian did.

### *Plaintiff's Dispute*

72.     On or about December 9, 2022, Plaintiff sent a certified letter (the "Dispute Letter") to Experian disputing Experian's inaccurate reporting of her accounts.

73.     The letter specifically advised that Experian that all of her debts incurred before the filing of her bankruptcy were in fact discharged..

74.     Upon information and belief, Experian received Plaintiff's Dispute Letter.

75.     Upon information and belief, Experian did not forward Plaintiff's Dispute Letter to Consolidated Capital or any other information furnisher.

76.     On or about January 3, 2023, Experian completed its investigation into Plaintiff's dispute and provided Plaintiff with the results.

77.     Experian failed to correct Plaintiff's consumer report and continued to report the Account as having an outstanding balance and status of "Open."

78.     Consolidated Capital furnished information to Defendant that indicated Plaintiff's Account was included or discharged in bankruptcy and had a zero-dollar balance after the bankruptcy discharge, but Defendant rejected or otherwise overrode the data it received.

79.     Alternatively, Defendant knew from past experiences that Consolidated Capital furnished inaccurate information regarding discharged debts or has historically failed to employ reasonable procedures to ensure it properly updates consumer debts after a Chapter 7 Bankruptcy is discharged.

80.     Nevertheless, Defendant blindly relied on the information provided by Consolidated Capital even though it conflicted with information contained in Defendant's' records, contradicted other information Defendant reported about

Plaintiff, or neglected Defendant's knowledge regarding Plaintiff's bankruptcy and discharge.

81.    If Consolidated Capital did not furnish data to Defendant that the Account was discharged, Defendant's blind reliance on the furnisher, was unreasonable.

82.    Defendant was unreasonable in failing to consider the fact that since Consolidated Capital ceased updating the Account after Plaintiff's bankruptcy was filed, Consolidated Capital was an unreliable furnisher in this instance.

83.    Defendant inaccurately reported that Plaintiff owed a balance that she did not actually owe, and also reported inaccurate account statuses.

84.    Defendant inaccurately reported the Account with a balance owed after the Account was discharged in Chapter 7 Bankruptcy and therefore had a zero-dollar balance.

85.    Defendant failed to indicate that the Account had a zero-dollar balance and was discharged in Chapter 7 Bankruptcy.

86.    Defendant's reporting of the Account is patently false and therefore inaccurate.

19

87.    If not patently false, Defendant's reporting of the Account is materially misleading and therefore inaccurate.

### *Plaintiff's Damages*

88.    Upon information and belief, had Defendant accurately reported the Account with a zero balance, Plaintiff's credit scores and/or DTI would have been better.

89.    Defendant's reporting of an additional $10,230 of debt which Plaintiff does not actually owe negatively increases DTI since the debt is substantially greater, but the income is unchanged.

90.    The false increased debt also negatively impacts the 30% of credit score which is based on the debt owed divided by credit limits, which impacts post-discharge consumers even more than those who have not filed bankruptcy.

91.    The inaccurate reporting by Defendant suggests to creditors that Plaintiff is guilty of a bad act and was not deserving of receiving a discharge of the Account.

92.    After Plaintiff's bankruptcy discharge, Plaintiff applied for credit with multiple entities – and was denied due to the inaccurate reporting of the Account by Defendant.

93.    After Plaintiff's bankruptcy discharge, Plaintiff also applied for credit with Consumer Portfolio Services, Inc., and was approved at less than favorable rates and lower credit limits due to the inaccurate reporting of the Account by Defendant.

94.    Defendant's inaccurate reporting of the Account, along with additional information belonging to Plaintiff, was published to several creditors by Defendant during the process of Plaintiff's credit applications and/or credit offers.

95.    As a direct result of Defendant's inaccurate reporting, Plaintiff suffers damages, including a decreased credit score, lower overall creditworthiness, and other financial harm.

96.    As a direct result of Defendant's inaccurate reporting, Plaintiff also suffers actual damages, in the form of expenses and attorney's fees incurred, related to Defendant's inaccurate reporting.

97.    Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, loss of sleep, headaches, reputational harm, violation of privacy, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

# V.     COUNT I
## Violation of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681e(b), 1681i

98.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

99.     The FCRA requires CRAs, like Defendant, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. § 1681e(b).

100.   Defendant negligently and willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of the information it reported about Plaintiff's pre-bankruptcy debts after Plaintiff received a Discharge Order.

101.   Defendant independently sought information about Plaintiff's bankruptcy filing and discharge and voluntarily included it in Plaintiff's consumer reports.

102.   When Defendant voluntarily procured and reported Plaintiff's bankruptcy information, it had an obligation to follow reasonable procedures to ensure it reported the bankruptcy discharge and its effect(s) with maximal accuracy.

103.   Defendant received notice of Plaintiff's bankruptcy discharge through public records, its own files, and information provided by data furnishers.

104.   Individual furnishers of account information also notified Defendant of Plaintiff's bankruptcy, as evidenced by other tradelines in Plaintiff's consumer report that are labeled included and discharged in bankruptcy.

105.   Defendant had actual knowledge of Plaintiff's bankruptcy and Discharge Order, as evidenced by the information it published in Plaintiff's consumer reports, including Plaintiff's bankruptcy case number, court, date of filing, and date of discharge.

106.   But despite knowledge of Plaintiff's bankruptcy, Defendant inaccurately reported the Account, which predated Plaintiff's Chapter 7 Bankruptcy, with a status other than "Bankruptcy" and a balance greater than zero.

107.   Defendant knew or should have known of its obligations under the FCRA, especially those pertaining to reporting discharged debt with a zero-dollar balance.

108.   These obligations are well established by the plain language of the FCRA, promulgated by the Federal Trade Commission, detailed in case law, and

exemplified in prior cases involving Defendant from which Defendant is on notice of its unreasonable procedures concerning the reporting of discharged debts.

109.   Additionally, Defendant possesses or could easily obtain substantial written materials that detail CRAs' duties and obligations under the FCRA, including those arising after a consumer files for Chapter 7 Bankruptcy.

110.   Despite knowledge of these legal obligations, Defendant willfully and knowingly breached its duties in violation of 15 U.S.C. § 1681e(b). Accordingly, Defendant deprived Plaintiff of her rights as a consumer under the FCRA.

111.   Not only did Defendant have prior notice of its unreasonable procedures for reporting discharged debts, but it also possessed information from which it should have known the information reported about Plaintiff was inaccurate.

112.   Defendant knew or should have known that the effect of a Discharge Order in a no-asset Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

113. Defendant knows that discharged pre-petition debts should not be reported as late, past due, or with outstanding balances after the discharge date, and should be reported with a zero-dollar balance.

114. Yet in this case, Defendant reported the Account, which predated Plaintiff's bankruptcy, with a balance owed (instead of a zero-dollar balance) after it was discharged.

115. Defendant intentionally ignored the fact that Consolidation Capital ceased updating the Account after Plaintiff's bankruptcy, which was unreasonable.

116. Defendant knows that the Account has not been updated since Plaintiff's Chapter 7, and that the reported balance, payment obligation, and status are therefore inaccurate, outdated, and have been superseded by Plaintiff's Chapter 7 discharge. Defendant violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file/consumer report.

117. Defendant also violated 15 U.S.C. § 1681e(b) by failing to report accurate information when Defendant knew or should have known the information it was reporting is inaccurate, and/or otherwise contradicted by information known by Defendant, reported to Defendant, and reasonably available to Defendant.

118.   Even after Plaintiff notified Defendant of the inaccurate information it included in Plaintiff's credit file, Defendant continued to inaccurately report the Account with an outstanding balance.

119.   Defendant's inaccurate reporting was particularly egregious because it had the ability to independently confirm that the Account was discharged by reviewing its own records or accessing readily available public records.

120.   In around 2009, Defendant implemented its own automated software "bankruptcy scrub" following the settlement agreement in *White v. Experian Info. Sols., Inc.,* No. SACV 05-1070 DOC (MLGx), (C.D. Cal. 2008).

121.   Defendant's bankruptcy scrub software identifies pre-petition accounts and makes assumptions about which accounts were discharged through the Chapter 7, even when the furnisher does not update the accounts as discharged.

122.   In other words, Defendant's automated bankruptcy scrub assumes Defendant's notice of a Chapter 7 discharge is in fact notice that a consumer's pre-petition accounts may be reporting inaccurately, and Defendant will override data reported by a furnisher according to Defendant's assumptions and algorithms.

123.   However, Defendant has intentionally chosen to disregard knowingly inaccurate open balances and payment obligations of certain types of pre-

bankruptcy accounts in Defendant's software programming of its automated "bankruptcy scrub" it has been employing for well over a decade.

124.   Defendant's violations of 15 U.S.C. § 1681e(b) were willful.

125.   Alternatively, Defendant's violations of 15 U.S.C. § 1681e(b) were negligent.

126.   When a consumer disputes the accuracy or completeness of information included in a CRA's credit file, the FCRA requires the agency to either conduct a reasonable reinvestigation into the disputed information or delete the disputed information from the consumer's credit file within thirty (30) days of receiving notice of the dispute. 15 U.S.C. § 1681i(a)(2)(A).

127.   When conducting its reinvestigation of disputed information in a consumer report, the consumer reporting agency is required to "review and consider all relevant information submitted by the consumer."

128.   Additionally, the CRA must notify the person who furnished the disputed information of the consumer's dispute within five business days of its receipt. When notifying the furnisher of the consumer's dispute, the CRA is to "include all relevant information regarding the dispute that the agency received from the consumer." 15 U.S.C. § 1681i(a)(2)(A).

129.   Thus, in addition to violating the FCRA by failing to follow reasonable procedures as 15 U.S.C. § 1681e(b) requires, Experian also violated the FCRA by failing to perform a reasonable reinvestigation of the disputed Account even after Plaintiff notified it of the inaccurate information in Plaintiff's credit file.

130.   Defendant's violation of 15 U.S.C. § 1681i include, but are not limited to the following:

   (a) Failing to reasonably reinvestigate the inaccurate information Plaintiff disputed.

   (b) Failing to consider all relevant information while investigating Plaintiff's dispute.

   (c) Failing to notify pertinent information furnishers about Plaintiff's dispute.

131.   Instead of reasonably reinvestigating Plaintiff's dispute, Defendant continued to report the discharged Account with an outstanding balance after Plaintiff's bankruptcy discharge.

132.   Defendant's inaccurate reporting damaged Plaintiff's creditworthiness.

133.   Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, credit denial, and other financial harm caused by Defendant inaccurately reporting a balance for a debt that was discharged in bankruptcy, and otherwise failing to report that the Account was discharged in bankruptcy.

134.   Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, stress, loss of sleep, headaches anger, frustration, shock, embarrassment, and anxiety.

135.   Defendant is a direct and proximate cause of Plaintiff's damages.

136.   Defendant is a substantial factor in Plaintiff's damages.

137.   Therefore, Defendant is liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq*.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgments against Defendant/s for the following:

(a)     Declaratory judgment that Defendant violated the FCRA, 15 U.S.C. §§ 1681e(b and 1681i);

(b)     An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(c)     An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(d)     An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2),

(e)     An award of costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and § 1681o(a)(2); and

(f)     Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

## VI.    <u>JURY DEMAND</u>

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED this 20th day of March 2023,

**CONSUMER ATTORNEYS**

By: *s/Jenna Dakroub*
Jenna Dakroub
Bar Number: 385021
8245 N. 85th Way
Scottsdale, AZ 85258
Telephone: (602) 807-1525
Fax: (718) 715-1750
E: jdakroub@consumerattorneys.com

*Attorneys for Plaintiff Dianette Williams*

31