# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# (ATLANTA DIVISION)

| | |
|---|---|
| JAMES GREGG ZINN, | No.: |
| Plaintiff, | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| v. | **FCRA, 15 U.S.C. § 1681** *et seq.* |
| WELLS FARGO BANK, N.A.; EXPERIAN INFORMATION SOLUTIONS, INC.; EQUIFAX INFORMATION SERVICES, LLC; and TRANS UNION LLC, | |
| Defendants. | |

Plaintiff James Gregg Zinn, ("Plaintiff") through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* against Defendants Wells Fargo Bank, N.A. ("Wells Fargo"), Experian Information Solutions, Inc. ("Experian"); Equifax Information Services, LLC ("Equifax"); and Trans Union LLC ("Trans Union") (referenced collectively as "Defendants").

## INTRODUCTION

1.    Plaintiff's Complaint alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. against Experian, Equifax, and Trans Union, each a consumer reporting agency, for reporting inaccurate information on

Plaintiff's consumer reports. "Consumer reports" under 15 U.S.C. § 1681a(d) include both credit file disclosures obtained directly by Plaintiff from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

2.      Plaintiff's Complaint also alleges that CRA Defendants also violated 15 U.S.C. § 1681 *et seq.* by failing to reasonably investigate Plaintiff's consumer disputes, which each resulted in Defendants' reporting inaccurate information about Plaintiff.

3.      Plaintiff's Complaint also alleges violations of the FCRA against the furnisher Wells Fargo for failing to conduct a reasonable reinvestigation after receiving notice of Plaintiff's dispute from CRA Defendants.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of the FCRA, a federal law. *See* 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

5.      Venue in the Northern District of Georgia is proper pursuant to 28 U.S.C. § 1391 because Defendants regularly transact business within this District or

are otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## PARTIES

6.      Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

7.      Plaintiff is a natural person residing in the city of Lawrenceville, Gwinnett County, Georgia.

8.      Plaintiff is a ("consumer") as defined by the FCRA, 15 U.S.C. § 1681a(c).

9.      Defendant Wells Fargo is a financial institution engaged in the business of giving credit and collecting debt. Wells Fargo is also a furnisher, as contemplated in 15 U.S.C. § 1681s-2. Upon information and belief, Wells Fargo is regularly engaged in the business of furnishing credit information to the consumer reporting agencies. Wells Fargo is headquartered at 420 Montgomery Street, San Francisco, California 94104. Wells Fargo can be served through its registered agent, Corporation Service Company located at 2345 Rice St., Suite 230, Roseville, MN 55113.

10.     Defendant Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f)).  On information and belief, Experian is regularly engaged in the

business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Experian's principal place of business is located at 475 Anton Boulevard, Costa Mesa, California 92626.

11.    Defendant Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers in the form of "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, GA 30309.  Equifax can be served through its registered agent, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners GA 30092.

12.    Defendant Trans Union is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f)). On information and belief, Trans Union is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Trans Union's principal place of business is located at 555 West Adams Street, Chicago, Illinois 60661. Trans Union can be

served through its registered agent Illinois Corporation Service Company, located at 801 Adlai Stevenson Drive, Springfield, IL 62703.

13.    During all times pertinent to this Complaint, Defendants were authorized to conduct business in the State of Georgia and conducted business in the State of Georgia on a routine and systematic basis.

14.    During all times pertinent to this Complaint, Defendants acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

15.    Any violations by Defendants were not in good faith, were knowing, negligent, willful, and/or intentional.

16.    Neither Wells Fargo nor the CRA Defendants maintained procedures reasonably adapted to avoid any such violations.

## FACTUAL ALLEGATIONS

17.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

18.    The United States Congress decided that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting

methods undermine the public confidence, which is essential to the continual functioning of the banking system.

19.     Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

20.     The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

21.     Experian, Trans Union, and Equifax, the three major consumer reporting agencies (at times referred to collectively as "CRAs" and individually as a "CRA") in the United States, regularly publish and distribute credit information about Plaintiff and other consumers through the sale of consumer reports.

22.     The CRA Defendants consumer reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) Public Record Information: this section typically includes public record information, such as bankruptcy filings; and (iv) Credit Inquiries: this

section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

23.    The CRA Defendants know the information it reports about consumers is often inconsistent with public records, furnished/reported information, and/or information contained in its own files.

24.    The majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like the CRA Defendants) to make lending decisions.

25.    The information reported by the CRA Defendants contribute to consumer creditworthiness, including their FICO Scores, which are calculated using information contained in Trans Union consumer credit reports.

26.    The vast majority of financial services lenders (e.g., banks, creditors, lenders) rely upon credit reports, FICO Scores and other proprietary third-party algorithms – "scoring" models – to interpret the information in a credit report.

27.    These algorithms use variables or "attributes" derived from the credit report to calculate a "credit score," which ultimately determines consumer creditworthiness.

28.    FICO Scores factor the following: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

29.    Payment history refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late or missed.

30.    The more severe, recent, and frequent late payments are the greater the harm to the FICO Score.

31.    In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently this occurred, and how many delinquent accounts exist. However, once a delinquent account has been remedied, the longer the account stays current the more a consumer's FICO Score should increase.

32.    The CRA Defendants are well aware that an account that has been settled and/or paid by the consumer should report that the account was settled/paid and not merely charged off.

33.    Information regarding whether a debt has been settled/paid can be obtained from the furnisher or from information possessed by or provided to the CRA Defendants from furnishers of account/tradeline information such as payment history and reported balance.

34.     Rather than following reasonable procedures to assure maximum possible accuracy, the CRA Defendants inaccurately reported Plaintiff's accounts and failed to reasonably investigate despite the ability to verify Plaintiff's dispute through a reasonable investigation.

*Allegations Specific to Credit Reporting of Plaintiff*

35.     On or about October 26, 2018, Plaintiff obtained an account from Wells Fargo, account number ending in 8842 (the "Account").

36.     The aforementioned Account is the only account Plaintiff has with Wells Fargo.

37.     On January 20, 2022, Plaintiff filed an arbitration demand before the American Arbitration Association styled: *James Zinn v. Wells Fargo Bank, N.A.*, Case No. 01-22-0000-2744 (the "Arbitration").

38.     On or about August 8, 2022, Plaintiff entered into a settlement agreement with Wells Fargo to settle the Arbitration.

39.     As part of the settlement agreement, Mr. Zinn's balance on the Account was waived in exchange for his release of any and all claims against Wells Fargo.

40.     Plaintiff provided Wells Fargo consideration for the waiver that was equal or greater than the amount he owed to Wells Fargo.

41.   Regardless of the value of the consideration provided to Wells Fargo by Plaintiff, the debt was no longer owed.

42.   Sometime around October 11, 2022, Wells Fargo sent Plaintiff an offer to settle Plaintiff's account through a debt waiver (the "Letter").

43.   Plaintiff was shocked and confused to receive the Letter as he had settled all of his debts owed to Wells Fargo just two months earlier.

44.   After receiving the Letter, Plaintiff obtained his credit reports to assure the Account was reporting accurately.

45.   Plaintiff discovered the CRA Defendants inaccurately reported the Account with a status of charge off with an owed and past due balance of $1,425.

46.   The status of "Charge-Off" in the consumer credit reporting industry means that a debt may still be owed or indicates there is a balance and/or past due balance owed on the account before or after the "charge-off."

47.   The national consumer reporting agencies specifically acknowledge that a "charge-off" generally means consumers are still legally responsible for paying the debt.

48.   According to Experian, creditors typically charge off accounts after they have been delinquent, *i.e.*, gone without any scheduled payments for six

months, a charge-off does not mean your debt is forgiven, you are still legally responsible for repaying the outstanding amount.

49.     According to Equifax, a charge-off means the lender has written the account off as a loss and the account is closed to future charges, the time frame is generally between 120 and 180 days after you become delinquent, and a charge-off does not mean that you no longer owe the debt, you are still legally obligated to pay the debt.

### *Plaintiff's Disputes*

50.     On or about November 9, 2022, Plaintiff sent separate letters to the CRA Defendants disputing their inaccurate reporting of Plaintiff's credit reports.

51.     In the letters to the CRA Defendants, Plaintiff informed them that he had settled his Wells Fargo debt and asked them to fix the inaccurate reporting immediately.

52.     On or about November 18, 2022, Trans Union responded to Plaintiff's dispute letter. Trans Union's response indicated that it was correctly reporting of the Account and updated the maximum delinquency, rating and historical trended data instead of deleting or correctly reporting the Account.

53.     Defendant Experian never responded to Plaintiff's dispute.

54.     Defendant Equifax never responded to Plaintiff's dispute.

55.     In or around January 2023, Plaintiff pulled his Experian consumer report to verify whether the reporting had been updated. Defendant Experian failed to correct the inaccurate reporting of the Account and continued to report the Account with a status of charge off with an owed and past due balance of $1,425.

56.     In or around January 2023, Plaintiff pulled his Equifax consumer report to verify whether the reporting had been updated. Defendant Equifax failed to correct the inaccurate reporting of the Account and continued to report the Account with a status of charge off with an owed and past due balance of $1,425.

57.     Upon information and belief, the CRA Defendants did not investigate Plaintiff's dispute and merely forwarded an automated dispute form to Furnisher Wells Fargo. Rather than perform a reasonable investigation based on Plaintiff's dispute, and information about the Accounts known by the CRA Defendants through Plaintiff's dispute, balance, and reported payment history regarding on the Account, the CRA Defendants merely parroted information furnished by Wells Fargo despite awareness that the information was factually inaccurate and conflicted with information known by the CRA Defendants

58.     Upon information and belief, Wells Fargo failed to conduct a reasonable investigation after receiving notice of Plaintiff's dispute from the CRA Defendants. Wells Fargo failed, among other things, to review all relevant

information regarding the dispute or ignored this information. Consequently, Wells Fargo continued to furnish inaccurate data to the CRA Defendants despite knowledge of Plaintiff's dispute and otherwise possessing information from which Wells Fargo should have reported accurate information about the Account.

59.     As a result of Defendants' conduct, Plaintiff has sustained actual damages including, including, without limitation, emotional and mental anguish, loss of sleep, headaches, reputational damage, violation of privacy, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

60.     Upon information and belief, had Defendants accurately reported the Account, Plaintiff's credit score and credit worthiness would have been better.

61.     Defendants' conduct reduced Plaintiff's access to credit by reporting materially misleading and patently false information on her consumer credit report.

62.     Furthermore, Plaintiff was chilled from applying for credit due to the inaccurate reporting of the Account because he believes it is pointless either because he will not be approved or because the interest rates will be too high if he is approved.

63.     As a direct result of Defendant's inaccurate reporting, Plaintiff also suffers actual damages in the form of attorneys' fees incurred, related to Defendants' inaccurate reporting.

## COUNT I

### Violations of the FCRA, 15 U.S.C. § 1681 *et. seq.*

### CRA Defendants

64.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

65.     When a consumer disputes the accuracy or completion of information included in a CRA's credit file, the FCRA requires the agency to either conduct a reasonable reinvestigation into the disputed information **or** delete the disputed information from the consumer's credit file within thirty (30) days of receiving notice of the dispute. 15 U.S.C. § 1681i(a)(2)(A).

66.     When conducting its reinvestigation of disputed information in a consumer report, the credit reporting agency is required to "review and consider all relevant information submitted by the consumer." Additionally, the CRA must notify the person who furnished the disputed information of the consumer's dispute within five business days of its receipt.

67.     When notifying the furnisher of the consumer's dispute, the CRA is to "include all relevant information regarding the dispute that the agency received from the consumer." 15 U.S.C. § 1681i(a)(2)(A).

68.     The CRA Defendants failed to conduct a reasonable investigation under 15 U.S.C. § 1681i.

14/17

69.     The CRA Defendants violated sections 1681n and 1681o of the FCRA by engaging in the following conduct that violates 15 U.S.C. § 1681s-2(a), (b):

  a. Willfully and negligently failing to conduct an investigation of the inaccurate information that Plaintiff disputed;

  b. Willfully and negligently failing to review all relevant information concerning Plaintiff's file;

  c. Willfully and negligently failing to properly participate, investigate and comply with the reinvestigations that were conducted by any and all credit reporting agencies concerning the inaccurate information disputed by Plaintiff; and

  d. Willfully and negligently continuing to furnish and disseminate inaccurate and derogatory credit, account and other information concerning Plaintiff to the other credit reporting agencies.

70.     Instead of reasonably reinvestigating Plaintiff's dispute, the CRA Defendants continued to inaccurately report the Account despite indicating that they would correct the inaccuracies, which are capable of verification by Trans Union through confirming the settlement, and/or reported balance, payment obligation.

71.     Instead of reasonably reinvestigating Plaintiff's dispute and correcting the inaccuracies as indicated, the CRA Defendants continued to inaccurately report the Account, and at most parroted inaccurate information from the furnishers despite notice of the inaccuracies.

72.    The CRA Defendants' acts, as described above, were done willfully and knowingly; or, alternatively, were negligent.

73.    As a result of the foregoing violations of the FCRA, the CRA Defendants are liable to Plaintiff for actual damages, statutory damages, attorneys' fees and costs, as described herein and as allowable by law.

## COUNT II

### Violations of the FCRA, 15 U.S.C. § 1681 s-2(b)
### Defendant Wells Fargo

74.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

75.    The FCRA requires a furnisher such as Wells Fargo, either after receiving notice directly from the consumer or from a credit reporting agency that a consumer disputes information that is being reported by that furnisher, to conduct an investigation with respect to the disputed information. The investigation involves (a) reviewing all relevant information, (b) reporting the results of the investigation to the credit reporting agency, and (c) if the investigation reveals that the information is incomplete or inaccurate, reporting those results to all other credit reporting agencies to which the furnisher has provided the inaccurate information.

76.    Wells Fargo failed to conduct a reasonable investigation following receipt of indirect disputes under 15 U.S.C. § 1681s(2)(b).

77.     Wells Fargo knew or should have known about its obligations under the FCRA. These obligations are well established in the plain language of the FCRA, in the promulgations of the Federal Trade Commission, and in well-established case law. Wells Fargo obtained or had available substantial written materials that apprised it of its duties under the FCRA. Despite knowing these legal obligations, Wells Fargo acted consciously in breaching its known duties and deprived Plaintiff of his rights under the FCRA.

78.     Wells Fargo have willfully provided inaccurate information to Defendant Trans Union, despite Plaintiff paying the Account as agreed and in full.

79.     Wells Fargo reporting of the Account as merely charge-offs is patently inaccurate or materially misleading, which is also inaccurate.

80.     Plaintiff disputed Wells Fargo's tradeline through all three national CRAs: Experian, Equifax, and Trans Union.

81.     Thereafter, upon information and belief, the credit reporting agencies forwarded Plaintiff's dispute to Wells Fargo, notifying Wells Fargo that Plaintiff was disputing the information it had furnished about the Account.

82.     Upon information and belief, Wells Fargo received notice of Plaintiff's dispute and failed to reasonably investigate or otherwise take corrective measures despite possessing all relevant knowledge regarding the dispute.

83.     Upon information and belief, Wells Fargo continues to furnish inaccurate information about Plaintiff to all the CRAs, even though Wells Fargo possesses all relevant information about the Account and the inaccuracy that Plaintiff disputed.

84.     The inaccurate Wells Fargo Account materially and adversely affects Plaintiff's credit standing.

85.     On at least one occasion within the past two years, by example only and without limitations, Defendant Wells Fargo violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's dispute to Trans Union.

86.     Furnisher violated 15 U.S.C. §§ 1681n and 1681o of the FCRA by engaging in willful and negligent noncompliance of 15 U.S.C. § 1681s-2(a), (b), and engaging in conduct that violates 15 U.S.C. § 1681s-2(a), (b), including:

(a)     Willfully and negligently failing to conduct an investigation of Plaintiff's dispute, despite possessing knowledge, information, and records to substantiate Plaintiff's dispute;

(b)     Willfully and negligently failing to review all relevant information concerning Plaintiff's dispute;

(c)     Willfully and negligently failing to report the results of investigations to the relevant consumer reporting agencies;

(d)     Willfully and negligently failing to report to the CRAs that the disputed information is indeed inaccurate;

(e)     Willfully and negligently failing to properly participate, investigate and comply with the reinvestigations that were conducted by any and all consumer reporting agencies concerning the inaccurate information disputed by Plaintiff;

(f)     Willfully and negligently continuing to furnish and disseminate inaccurate credit, account and other information concerning the Plaintiff to the consumer reporting agencies despite actual knowledge of the falsity of the reported information; and

(g)     Willfully and negligently failing to comply with the requirements for furnishers of information enumerated in 15 U.S.C. § 1681s-2(b).

87.     Wells Fargo unreasonably refused to take corrective measures required by the FCRA to correct and/or update Plaintiff's consumer information furnished to the national consumer reporting agencies.

88.     Wells Fargo conduct was a direct and proximate cause, as well as a substantial factor, in causing serious injuries, damages and harm to Plaintiff that are outlined more fully above, and as a result, Wells Fargo is liable to compensate Plaintiff for the full amount of statutory, actual and punitive damages, along with

attorneys' fees and costs, as well as other such relief, permitted by 15 U.S.C. § 1681n.

89.     As a result of the above-described violations Plaintiff has sustained damages including loss of the opportunities to obtain credit or better credit conditions, emotional distress, and mental pain.

90.     Wells Fargo's violation of the FCRA was willful and therefore Plaintiff is entitled to seek statutory and punitive damages.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment be entered against Defendants for the following:

A.  Declaratory judgment that Defendants Wells Fargo, Experian, Equifax, and Trans Union violated the FCRA;

B.  Actual damages pursuant to 15 U.S.C. § 1681n(a);

C.  Statutory damages pursuant to 15 U.S.C. § 1681n(a)(1)(A);

D.  Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

E.  Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§1681n(c) and 1681o(b);

F.  Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law; and

G.  Any other relief that this Court deems appropriate.


Dated: March 20, 2022

*/s/Jenna Dakroub*
Jenna Dakroub, GA #385021
CONSUMER ATTORNEYS
8245 N. 85th Way
Scottsdale, AZ 85258
E: jdakroub@consumerattorneys.com
T: (602) 807-1525
F: (718) 715-1750
*Attorneys for Plaintiff,*
*James Gregg Zinn*