IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

STEPHANIE TATAILLE,

    Plaintiff,

vs.

PYRAMIDS LOUNGE LLC
and AHMED HEDIA,

    Defendants.

Civil Action File No.

---

## COMPLAINT

Plaintiff Stephanie Tataille ("Tataille") brings this Complaint against Defendants Pyramids Lounge LLC ("Pyramids") and Ahmed Hedia ("Hedia") (collectively referred to as "Defendants") as follows:

**INTRODUCTION**

### 1.

This is a wage and hour case.

### 2.

Pyramids operates a hookah lounge in Atlanta known as the Pyramid Lounge. It employed Tataille as a server and bartender there within the three years preceding the initiation of this action. During that time Pyramids required Tataille to (1) work off the clock; and (2) pay a portion of her tips to it, to a cleaner and to owners and/or manager as a condition of her employment.

3.

Pyramids terminated Tataille's employment in retaliation for her requests to be properly paid minimum wage and her earned tips in accordance with the FLSA.

4.

In addition to her federal causes of action, Tataille asserts a pendent state law claim for breach of contract which arises out of the same set of operating facts as her federal claims, *i.e.* Pyramids' failure to pay Tataille her hourly wage and earned tips during the final months of her employment.

(a) **Jurisdiction and Venue**

5.

This Court has subject matter jurisdiction over the present action under Article III, § 2 of the United States Constitution, FLSA §16(b), 29 U.S.C. § 216(b) and 28 U. S.C § 1331, because this case arises under the FLSA, a federal statute that affects interstate commerce.

6.

Venue properly lies in the Northern District of Georgia under 28 U.S.C. § 1391 because Pyramids conducts business in Georgia, within this judicial district and a substantial portion of the events giving rise to the claims herein arose in this judicial district.

(b) **The Parties**

7.

Tataille resides in Gwinnett County, Georgia.

8.

Pyramids employed Tataille as a bartender and occasionally as a server at the Pyramid Lounge from approximately January 2017 through April 23, 2022.

9.

Pyramids again employed Tataille as bar lead and server at the Pyramid Lounge from approximately October 2022 through February 10, 2023.

10.

At all times material hereto, Tataille was an "employee" of Pyramids within the meaning of the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

11.

Pyramids employed Tataille at the Pyramid Lounge located at 2787 Main Street, Atlanta, GA 30344.

12.

Pyramids is a domestic limited liability company organized under the laws of the State of Georgia.

13.

At all times material hereto, Pyramids was an "employer" of Tataille within the meaning of FLSA § 3(d), 29 U.S.C. §203(d).

14.

Pyramids is subject to the personal jurisdiction of this Court.

15.

Pyramids may be served with process through its registered agent AMGD K. Ibraheem CPA Inc. at 3845 Holcomb Bridge Road, Suite 100, Norcross, Georgia 30092.

16.

At all times material hereto, Hedia was an owner and/or manager of Pyramids.

17.

At all times material hereto, Hedia was a managing member of Pyramids.

18.

At all times material hereto, Tataille was an "employee" of Hedia within the meaning of the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

19.

At all times material hereto, Hedia was an "employer" of Tataille within the meaning of FLSA § 3(d), 29 U.S.C. §203(d).

20.

Hedia is subject to the personal jurisdiction of this Court.

21.

Hedia may be served with process at 2121 Bennington Court, Lawrenceville, Georgia 30043 or wherever he may be located.

22.

At all times material hereto, Tataille was "engaged in commerce" as an individual employee of Pyramids within the meaning of 3(s)(1(A) and (B).

**(c) Enterprise Coverage:**

23.

At all times material hereto, Pyramids was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA, 29 U.S.C. § 203(s)(1)(A)(i) and (ii) and (s)(1)(B).

24.

During 2020, Pyramids had two or more "employees engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

25.

During 2021, Pyramids had two or more "employees engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

26.

During 2022, Pyramids had two or more "employees engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

27.

During 2023, Pyramids had two or more "employees engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

28.

During 2020, Pyramids had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." within the meaning of 29 U.S.C. § 203(s)(1)(A).

29.

During 2021, Pyramids had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." within the meaning of 29 U.S.C. § 203(s)(1)(A).

30.

During 2022, Pyramids had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." within the meaning of 29 U.S.C. § 203(s)(1)(A).

31.

During 2023, Pyramids had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." within the meaning of 29 U.S.C. § 203(s)(1)(A).

32.

During 2020, Pyramids had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

33.

During 2021, Pyramids had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

34.

During 2022, Pyramids had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

35.

During 2023, Pyramids had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

36.

At all times material hereto, Pyramids has been an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of FLSA § 3(s)(1), 29 U.S.C. § 203(s)(1).

37.

At all times material hereto, in the course of her duties for Pyramids, Tataille used or handled the following, among others, instruments of interstate commerce: computers, cash, cash registers, credit cards, credit card machines, office furniture, office supplies, dishware, glassware, hookah, tobacco, beer, wine, and liquor.

**(d) Hedia is an employer under the FLSA**

38.

At all times material hereto, Hedia was an owner and manager of Pyramids.

39.

At all times material hereto, Hedia had authority to make business decisions on behalf of Pyramids.

40.

At all times material hereto, Hedia exercised operational control over Tataille's work activities.

41.

At all times material hereto, Hedia managed the day-to-day operation of Pyramids.

42.

At all times material hereto, Pyramids vested Hedia with supervisory authority over Tataille.

43.

At all times material hereto, Hedia exercised supervisory authority over Tataille.

44.

At all times material hereto, Hedia scheduled Tataille's working hours or supervised the scheduling of Tataille's working hours.

45.

At all times material hereto, Hedia exercised authority and supervision over Tataille's compensation.

46.

At all times material hereto, Hedia had authority to hire employees on behalf of Pyramids.

47.

At all times material hereto, Hedia had authority to terminate employees of Pyramids.

48.

Hedia hired Tataille to work at the Pyramid Lounge.

49.

At all times material hereto, Hedia had authority to discipline employees of Pyramids.

50.

At all times material hereto, Hedia acted directly or indirectly in the interest of Pyramids in relation to Tataille.

51.

At all times material hereto, Hedia was an "employer" of Tataille within the meaning of 29 U.S.C. § 203(d).

**(e) Lack of FLSA Exemptions**

52.

At all times material hereto, Tataille was not exempt from the minimum wage requirements of the FLSA by reason of any exemption.

53.

At all times material hereto, Pyramids did not employ Tataille in a bona fide professional capacity within the meaning of 29 USC § 213 (a)(1).

54.

At all times material hereto, Pyramids did not employ Tataille in a bona fide administrative capacity within the meaning of 29 USC § 213 (a)(1).

55.

At all times material hereto, Pyramids did not employ Tataille in a bona fide executive capacity within the meaning of 29 USC § 213 (a)(1).

56.

At all times material hereto, in the course of her duties for Pyramids, Tataille did not supervise two or more employees.

57.

At all times material hereto, Pyramids did not employ Tataille in the capacity of an "outside salesman" so as to be exempt from the minimum and maximum hour requirements of 29 USC § 213 (a)(1).

58.

Pyramids has failed to meet the requirements for any of the exemptions from the application of the minimum wage requirements of the Fair Labor Standards Act set forth in 29 U.S.C. § 213.

**(f) Additional Factual Allegations**

59.

Pyramids employed Tataille as a bartender and server from approximately January 2017 through April 23, 2022 and later as a bar lead and server from October 2022 through February 10, 2023.

60.

At all times relevant from March 2020 through February 10, 2023 (hereinafter the "Relevant Time Period"), Pyramids employed Tataille.

61.

At all times during the Relevant Time Period, Pyramids failed to compensate Tataille on a salaried basis.

62.

At all times during the Relevant Time Period, Pyramids compensated Tataille on an hourly rate basis.

63.

At all times material hereto, Tataille was a "tipped employee" within the meaning of 29 U.S.C. § 203(t).

64.

At all times relevant from March 2020 through April 23, 2022, Pyramids compensated Tataille at an hourly rate of $5.00 per hour plus tips.

65.

At all times relevant from March 2020 through April 23, 2022, Defendants failed to inform Tataille of the provisions of 29 U.S.C. § 203 (m)(2)(A).

66.

At all times relevant from March 2020 through April 23, 2022, took advantage of an FLSA tip credit of $2.25 with respect to the hourly wage it paid to Tataille.

67.

At all times relevant from March 2020 through April 23, 2022, Defendants required Tataille to share her tips with employees who did not customarily and regularly receive tips.

68.

At all times relevant from October 2022 through February 10, 2023, Pyramids compensated Tataille at an hourly rate of $10.00 per hour plus tips.

69.

Throughout the Relevant Time Period, Tataille normally worked shifts at the Pyramid Lounge on Fridays, Saturdays, and Sundays.

70.

At all times during the Relevant Time Period, Pyramids required Tataille to pay it 20% of her total tips earned from the credit card portion of tips she earned whenever she worked a shift on a Friday or Saturday.

71.

At all times during the Relevant Time Period, Pyramids required Tataille to pay it's managers and supervisors 20% of her total tips earned from the credit card portion of tips she earned whenever she worked a shift on a Friday or Saturday.

72.

At all times during the Relevant Time Period, Pyramids required Tataille to pay it 50% of the total tips she earned whenever she worked a shift on a Sunday.

73.

At all times during the Relevant Time Period, Pyramids required Tataille to pay 50% of the total tips she earned to Pyramids' Manager Mohammed "Mo" whenever she worked a shift on a Sunday.

74.

At all times during the Relevant Time Period, Defendants required Tataille to pay $10.00 at the end of each shift she worked to Pyramids' cleaner, "Bobby" or "Zuki".

75.

During the Relevant Time Period, Tataille was normally scheduled to work 17 hours during each work week.

76.

During the Relevant Time Period, Tataille worked (3) days during each work week.

77.

From March 2020 through February 10, 2023, Pyramids required Tataille to work off the clock for approximately one (1) hour after her scheduled work shifts cleaning and performing side tasks.

78.

From March 2020 through March 2022, the time Tataille spent cleaning and performing side tasks was uncompensated.

79.

During the Relevant Time Period, Defendants truncated the hours Tataille actually worked.

80.

During the Relevant Time Period, Defendants were aware of the actual number of hours Tataille worked during each work week.

81.

Defendants knew or should have known that the Minimum Wage requirements of the FLSA applied to Tataille.

82.

Section 6 of the FLSA (29 U.S.C. § 206) requires that Defendants compensate Tataille at a rate of no less than $7.25 per hour for every hour worked in a work week.

83.

Defendants knew or should have known that the Section 6 of the FLSA requires that Defendants compensate Tataille at a rate of at least $7.25 per hour for every hour worked in a work week.

84.

At all times relevant from March 2020 through April 23, 2022, Defendants failed to compensate Tataille at a rate of $7.25 per hour for each hour she worked.

85.

Defendants willfully failed to compensate Tataille at a rate of $7.25 per hour for each hour she worked.

86.

Upon information and belief, in failing or refusing to pay Tataille minimum wages as required by the FLSA, Defendants have not relied on any letter ruling from the Department of Labor indicating that Tataille was not entitled to minimum wages.

87.

Defendants' conduct constitutes willful violations of § 206 of the FLSA, entitling Tataille to all relief afforded under the FLSA, including the award of liquidated damages.

88.

Defendants failed to pay Tataile for thirty-seven (37) hours that she worked in December 2022 and January 2023 and for 9 hours and 48 minutes that she worked during her last week of employment in February 2023.

89.

In or about January 2023, Tataille complained to Defendants regarding her unpaid hours and Defendants requirement that she pay kickbacks to Defendants' owners and management.

90.

On February 10, 2023, Hedia terminated Plaintiff's employment.

## COUNT 1 - FAILURE TO PAY MINIMUM WAGE

91.

The allegations in paragraphs 1-90 above are incorporated herein by reference.

92.

At all times material hereto, Tataille was an employee covered by the FLSA and entitled to the minimum wage protections set forth in FLSA § 6(a), 29 U.S.C. § 206(a).

93.

At all times material hereto, Defendants required Tataille to perform off the clock work.

94.

By requiring Tataille to perform off the clock work, Defendants failed to compensate Tataille at an hourly rate above or equal to the minimum wage as established in accordance with 29 U.S.C. § 206.

95.

At all times material hereto, Defendants willfully failed to compensate Tataille at an hourly rate above or equal to the minimum wage as established in accordance with Section 6 of the FLSA.

96.

At all times material hereto, Defendants retained tips received by Tataille, in violation of 29 U.S.C. § 203 (m)(2)(B).

97.

At all times material hereto, Defendants required Tataille to share tips with manager and supervisors.

98.

As a legal consequence of their unlawful retention of tips, Defendants were not entitled to apply the $2.25 per hour tip credit to Tataille during the period from March 2020 through April 23, 2022.

99.

As a legal consequence of their unlawful retention of tips, Defendants failed to pay Tataille at a rate equal to or greater than the minimum wage during the period from March 2020 through April 23, 2022.

100.

As a result of the underpayment of minimum wages as alleged above, Tataille is entitled to payment of minimum wages in an amount to be determined at trial, in accordance with 29 U.S.C. § 216(b).

101.

As a result of the underpayment of minimum wages as alleged above, Tataille is entitled to liquidated damages in accordance with 29 U.S.C. § 216(b).

102.

As a result of the underpayment of minimum wages as alleged above, Tataille is entitled to reimbursement of her costs of litigation, including her reasonable attorneys' fees pursuant to 29 U.S.C. § 216(b).

## COUNT 2 – UNLAWFUL RETENTION OF TIPS

103.

The allegations in paragraphs 1-90 above are incorporated herein by reference.

104.

At all times material hereto, Defendants kept tips received by Tataille.

105.

At all times material hereto, Defendants willfully kept tips received by Tataille.

106.

At all times material hereto, Defendants allowed managers and supervisors to keep a portion of tips received by Tataille.

107.

At all times material hereto, Defendants willfully allowed managers and supervisors to keep a portion of tips received by Tataille.

108.

Defendants' retention of tips earned by Tataille, including their distribution of Tataille's tips to managers and supervisors, constitutes a violation of 29 U.S.C. § 203 (m)(2)(B).

109.

As a result of the unlawful retention of tips as alleged above, Tataille is entitled to payment of retained tips in an amount to be determined at trial, in accordance with 29 U.S.C. § 216(b).

110.

As a result of the unlawful retention of tips as alleged above, Tataille is entitled liquidated damages, in accordance with 29 U.S.C. § 216(b).

111.

As a result of the unlawful retention of tips as alleged above, Tataille is entitled to reimbursement of her costs of litigation, including her reasonable attorneys' fees pursuant to 29 U.S.C. § 216(b).

## COUNT 3 - BREACH OF CONTRACT

112.

The allegations in paragraphs 1-90 above are incorporated by reference.

113.

At all times material, Tataille and Pyramids were parties to a contract of employment (hereafter "the Contract").

114.

The Contract provided that Pyramids would pay Tataille for work that was performed by Tataille on behalf of and for the benefit of Defendant.

115.

Pyramids' failure to pay Tataille her hourly rate and tips earned for 46 hours and 48 minutes that she worked during the period from December 2022 through February 10, 2023 constitutes a breach of the Contract.

116.

Pyramids' failure to pay Tataille her hourly rate and tips earned for 46 hours and 48 minutes that she worked during the period from December 2022 through February 10, 2023 constitutes a material breach of the Contract.

117.

As the direct and foreseeable result of these breaches, Tataille has sustained and continues to sustain damages in an amount to be proved at trial.

### COUNT 4 – ILLEGAL RETALIATION

118.

The allegations in all previous paragraphs are incorporated by reference as if fully set out in this paragraph.

119.

In or about January 2023, Tataille complained to Hedia regarding Defendants' failure to properly compensate her for all hours worked.

120.

In or about January 2023, Tataille complained to Hedia regarding Defendants' requirement that she pay a portion of the tips she earned to owners, management, and/or cleaners.

121.

Tataille's requests to be properly compensated for all hours worked in the manner required by the FLSA constitutes protected activity within the meaning of the 29 U.S.C. § 215(a)(3).

122.

Tataille's requests to be properly compensated for all tips she earned constitutes protected activity within the meaning of the 29 U.S.C. § 215(a)(3).

123.

On or about February 10, 2023, Pyramids terminated Tataille's employment.

124.

Prior to terminating her employment, Defendants never counseled, warned, suspended or disciplined Tataille in any manner whatsoever.

125.

Pyramids terminated Tataille's employment in retaliation for her protected activity in violation of 29 U.S.C. § 215(a)(3).

126.

As a result of Pyramids' unlawful retaliation, Tataille has suffered loss of employment, emotional distress, loss of income, and other employee benefits in amounts to be proven at trial.

127.

Tataille is entitled to special and compensatory damages due to Pyramids' unlawful retaliatory discharge in an amount to be determined at trial.

128.

As a result of Pyramid's unlawful retaliation, Tataille is entitled to liquidated damages in accordance with 29 U.S.C. § 216(b).

129.

As a result of Pyramid's unlawful retaliation, Pyramids is indebted to Tataille for her costs of litigation, including her reasonable attorneys' fees, in accordance with 29 U.S.C. § 216(b).

WHEREFORE, Tataille respectfully prays:

1.  That her claims be tried before a jury;

2.  That she be awarded due but unpaid minimum wages in an amount to be determined at trial against Defendants, jointly and severally;

3.  That she be awarded an amount equivalent to the tips retained by Defendants in violation of the FLSA against Defendants, jointly and severally;

4.  That she be awarded liquidated damages against Defendants, jointly and severally;

5.  That she be awarded damages in an amount to be proved at trial against Defendant Pyramids for the state law claims herein asserted in amounts to be proven at trial;

6.  That she be awarded amounts to be determined at trial against Defendant Pyramids in compensatory damages arising from Defendants' unlawful retaliatory acts, including emotional damages, lost income, and lost benefits;

7.  That the Court order Defendant Pyramids to reinstate her to her former position or provide her front pay in lieu of reinstatement;

8.  That she be awarded nominal damages; and

9.  For such other and further relief as the Court deems just and proper.

Respectfully submitted,

DELONG CALDWELL BRIDGERS
FITZPATRICK & BENJAMIN, LLC

101 MARIETTA STREET
SUITE 2650
ATLANTA, GEORGIA 30303
(404) 979-3150
(404) 979-3170 (f)
kevin.fitzpatrick@dcbflegal.com
charlesbridgers@dcbflegal.com

/s/ KEVIN D. FITZPATRICK, JR.
KEVIN D. FITZPATRICK. JR.
GA. BAR NO. 262375

/s/CHARLES R. BRIDGERS
CHARLES R. BRIDGERS
GA. BAR NO. 080791

COUNSEL FOR PLAINTIFF