ID# 2022-0129768-CV
⚖ EFILED IN OFFICE
CLERK OF SUPERIOR COURT
COBB COUNTY, GEORGIA

**22106989**

**Ann B. Harris - 56**
**OCT 07, 2022 09:48 AM**

Connie Taylor, Clerk of Superior Court
Cobb County, Georgia

## IN THE SUPERIOR COURT OF COBB COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| BANK OF AMERICA, N.A., | ) | |
| | ) | Case No. |
| Plaintiff, | ) | |
| | ) | _____ |
| v. | ) | |
| | ) | |
| M.A. SADIQ aka M. AKHTAR SADIQ aka | ) | |
| AKHTAR SADIQ and AMINA SADIQ, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

### COMPLAINT FOR REFORMATION, DECLARATORY JUDGMENT, AND EQUITABLE RELIEF

COMES NOW, BANK OF AMERICA, N.A. (hereinafter, "Plaintiff" or "BANA"), and hereby files this Complaint against the above-named Defendants, respectfully showing this Honorable Court as follows:

1.

This action involves real property and the improvements thereon located at 2231 Snug Harbor NE, Marietta, Georgia 30066 (hereinafter, the "Property"), and more particularly described as follows:

> All that tract or parcel of land lying and being in Land Lot 779, 16th District, 2nd Section, Cobb County, Georgia, being Lot 44, Block A, Phase 2, St. Charles Square Subdivision, as per play recorded in Plat Book 165, Page 13 and 14, Cobb County Records, which plat is incorporated herein and made a part hereof by reference.

2.

Upon information and belief, M.A. Sadiq aka M. Akhtar Sadiq aka Akhtar Sadiq ("Mr. Sadiq") resides and may be served with Summons and Complaint at the Property. Mr. Sadiq is subject to the jurisdiction of this Court and venue is proper herein pursuant to Ga. Const. Art. 6, § 2, ¶ III.

3.

Upon information and belief, Amina Sadiq ("Ms. Sadiq") resides and may be served with Summons and Complaint at the Property. Ms. Sadiq is subject to the jurisdiction of this Court and venue is proper herein pursuant to Ga. Const. Art. 6, § 2, ¶ III.

4.

On May 30, 1997, the Property was conveyed from St. Charles Square Builders Inc. to Mr. Sadiq and Ms. Sadiq as Joint Tenants with Right of Survivorship via Warranty Deed, recorded on June 2, 1997, Deed Book 10395, Page 175, Cobb County, Georgia Records (hereinafter, the "Warranty Deed"). A true and correct copy of the Warranty Deed is attached hereto as **Exhibit "A"** and incorporated by reference herein.

5.

On May 25, 2007, Mr. Sadiq and Ms. Sadiq obtained a home equity line of credit loan in the original amount of up to One Hundred Fifty Thousand and 00/100 Dollars ($150,000.00) from Plaintiff (hereinafter, the "Loan").

6.

To secure repayment of the Loan, Mr. Sadiq and Ms. Sadiq executed a Security Deed in favor of Plaintiff recorded on August 23, 2007 in Deed Book 14529, Page 247, Cobb County, Georgia Records (hereinafter, the "Security Deed"). A true and correct copy of the Security Deed is attached hereto as **Exhibit "B"** and incorporated by reference herein.

7.

By mistake, Paragraph 22 of the non-uniform covenants contained in the Security Deed pertaining to "Acceleration; Remedies" references a Trustee. Paragraph 22 was intended to recite the following:

22.    Acceleration; Remedies.   Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise).   The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.  If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law.  Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law.  Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines.  Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance.  The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein.  Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.  The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale.  If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

8.

By this action, Plaintiff seeks to correct the language in the Security Deed to effectuate the true intentions of the Parties.

## COUNT I
## REFORMATION

9.

Plaintiff re-alleges and incorporates by reference the within and foregoing Paragraphs 1 through 8 of this Complaint as if fully reinstated herein.

10.

The Court should reform the Security Deed by deleting the incorrect language in Paragraph 22 of the non-uniform covenants and replacing it with the language as referenced in Paragraph Seven (7) hereinabove.

11.

The parties intended that the Security Deed contain the correct, Georgia standard language. By reforming the real estate records in the manner described above, the Court would be effectuating the true intention of the parties.

12.

There is no adequate remedy at law to restore the parties to the *status quo ante*.

## COUNT II
## DECLARATORY JUDGMENT

13.

Plaintiff re-alleges and incorporates by reference the within and foregoing Paragraphs 1 through 13 of this Complaint as if fully reinstated herein.

14.

This claim is an action for declaratory judgment brought pursuant to the provisions of O.C.G.A. §§ 9-4-1 *et seq*.

15.

An actual controversy exists between the parties in this case.

16.

It is necessary and proper that the rights and status among the parties hereto be declared, including with respect to the parties' interest in the Property.

17.

The Court should declare that the Security Deed is a valid, enforceable, secured interest against the Property, with the correct language in Paragraph 22 of the Security Deed pertaining to "Acceleration; Remedies" as shown in Paragraph Seven (7) hereinabove.

## COUNT III
## EQUITABLE RELIEF

18.

Plaintiff re-alleges and incorporates by reference the within and foregoing Paragraphs 1 through 17 of this Complaint as if fully reinstated herein.

19.

If the Security Deed is not reformed as set forth hereinabove, the Defendants will be unjustly enriched and the true intentions of the parties will not be fulfilled.

20.

There is no adequate remedy at law to restore the parties to the *status quo ante*.

WHEREFORE, Plaintiff prays for relief as follows:

a) That the Security Deed, recorded in Deed Book 14529, Page 247, Cobb County, Georgia Records, be reformed by deleting Paragraph 22 of the Non-Uniform Covenants, and replacing with the language as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

b) That the Security Deed, recorded in Deed Book 14529, Page 247, Cobb County, Georgia

   Records, be declared a valid, enforceable, secured interest against the Property; and

c) For such other and further relief as this Court deems just and proper.

   Respectfully submitted, this 7th day of October, 2022.

   _/s/ Tenise C. Chung_____ _
   TENISE C. CHUNG
   Georgia State Bar No. 128706
   HANNAH C. DAVENPORT
   Georgia State Bar No. 231413
   **Rubin Lublin, LLC**
   3145 Avalon Ridge Place, Suite 100
   Peachtree Corners, Georgia 30071
   (770) 246-3353 (Telephone)
   (470) 508-9203 (Facsimile)
   tchung@rlselaw.com
   hdavenport@rlselaw.com
   *Attorneys for Plaintiff*

**EXHIBIT A**

This instrument prepared by:
Frank A Young, P.C.
1180 Grimes Bridge Road, Suite 100
Roswell, Georgia 30075



10.00

STATE OF GEORGIA
FULTON COUNTY

# Warranty Deed
# (Joint Tenancy)

**This Indenture,** made May 30, 1997, between St. Charles Square Builders, Inc., of the County of Dekalb in the State of Georgia, as party or parties of the first part, hereinafter called Grantor, and M. Akhtar Sadiq and Amina Sadiq, of the County of Cobb in the State of Georgia as party or parties of the second part, hereinafter called Grantees (the words "Grantor and "Grantee" to include their respective heirs, successors and assigns where the context requires or permits).

## Witnesseth:

That Grantor for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) AND OTHER GOOD AND VALUABLE CONSIDERATION, in hand paid at and before the sealing and delivery of these presents, the receipts whereof is hereby acknowledged, has granted, bargained, sold, aliened, conveyed and confirmed, and by these presents does grant, bargain, sell, alien, convey and confirm unto the said Grantees, as joint tenants with right of survivorship as defined and created by Georgia Laws 1980 (Ga. Code Anno. 85-1002), the heirs, executors and assigns of the survivor, the following described real property, to-wit:

All that tract or parcel of land lying and being in Land Lot 779, 16th District, 2nd Section, Cobb County, Georgia, being Lot 44, Block A, Phase 2, St. Charles Square Subdivision, as per plat recorded in Plat Book 165, page 13 and 14, Cobb County Records, which plat is incorporated herein and made a part hereof by reference.

Cobb County, Georgia    Real Estate Transfer Tax

Paid    176.70
Date    6-2-97
Jay C. Stephenson
Clerk of Superior Court

COBB SUPERIOR COURT CLERK

FILED AND RECORDED
97 JUN -2 PM 3: 27

THIS CONVEYANCE is made subject to all zoning ordinances, easements and restrictions of record affecting said described property.

TO HAVE AND TO HOLD the said described property, with all and singular the rights, members appurtenances thereof, to the same being, belonging, or in anywise appertaining, to the only proper use, benefit and behoof of the said Grantees, as joint tenants with right of survivorship as defined above, the heirs, executors and assigns of the survivor, forever in FEE SIMPLE.

AND THE SAID Grantor will warrant and forever defend the right and title to the said described property unto the said Grantees against the claims of all persons whomsoever.

IN WITNESS WHEREOF, the Grantor has signed and sealed this deed, the day and year above written.

Signed, sealed and delivered in the presence of:     St. Charles Square Builders, Inc.

_____     _____ (Seal)
Witness                                    Assistant Secretary

MARK A. YOUNG
NOTARY
EXPIRES
GEORGIA
JUNE 9, 1997
PUBLIC
COBB COUNTY

_____     (Seal)
Notary Public

CORPORATE SEAL

BK 10395 PG 175

FOR SUB AGREE SEE
DE Book 14866 Page 5102    hmg

# EXHIBIT B

Deed Book 14529 Pg  247
Filed and Recorded Aug-23-2007 02:15pm
2007-0134610
Georgia Intangible Tax Paid $450.00


Sadiq, M A

Record and Return To:
Fiserv Lending Solutions
27 Inwood Road
ROCKY HILL, CT 06067

*Jay C. Stephenson*
Jay C. Stephenson
Clerk of Superior Court Cobb Cty. Ga.

13

_____ [Space Above This Line For Recording Data] _____

16/779

## SECURITY DEED

### DEFINITIONS

**(A)** **"Security Instrument"** means this document, which is dated  MAY 25, 2007             , together
with all Riders to this document.
**(B)** **"Borrower"** is  M A SADIQ, AMINA SADIQ


the party or parties who have signed this Security Instrument.
Borrower is the grantor under this Security Instrument.
**(C)** **"Lender"** is   Bank of America, NA

Lender is a  National Banking Association                              organized
and existing under the laws of  THE UNITED STATES OF AMERICA
Lender's address is   100 North Tryon Street, Charlotte, North Carolina
28255
Lender is the grantee under this Security Instrument.
**(D)**    **"Agreement"** means the Home Equity Line of Credit Agreement signed by the Borrowers.
**(E)**    **"Account"** means the Home Equity Line of Credit Account pursuant to which the Lender makes  Advances to
the Borrower at the Borrower's direction, allowing the Borrower to repay those Advances and take additional
Advances, subject to the terms of the Agreement.
**(F)**    **"Credit Limit"** means the maximum aggregate amount of principal that may be secured by this Security
Instrument at any one time.  The Credit Limit is  $150,000.00             Except to the extent
prohibited by Applicable Law, the Credit Limit does not apply to interest, Finance Charges, and other fees and
charges validly incurred by Borrower under the Agreement and this Security Instrument.  The Credit Limit also does
not apply to other advances made under the terms of this Security Instrument to protect Lender's security and to
perform any of the covenants contained in this Security Instrument.
**(G)**    **"Account Balance"** is the total unpaid principal of the Account, plus earned but unpaid Finance Charges,
outstanding fees, charges, and costs.
**(H)**    **"Maturity Date"** is the date on which the entire Account Balance under the Agreement is due.  The entire
Account Balance on your Account, as defined in the Agreement and this Security Instrument, is due on
MAY 25, 2032
**(I)**    **"Property"** means the Property that is described below under the heading "Transfer of Rights in the Property."

M
GEORGIA HOME EQUITY LINE OF CREDIT SECURITY DEED
GAHESI.HLC 10/06/06                         Page 1 of 12

DocMagic *€Ferms* 800-649-1362
www.docmagic.com

Deed Book 14529 Pg   248

**(J)** **"Secured Debt"** means:

   (1)   All amounts due under your Account, including principal, interest, Finance Charges, and other fees, charges, and costs incurred under the terms of this Security Instrument and all extensions, modifications, substitutions or renewals thereof.

   (2)   Any advances made and expenses incurred by Lender under the terms of this Security Instrument.

**(K)** **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ 1-4 Family       ☐ Condominium Rider       ☐ Escrow Rider
☐ Second Home     ☐ Planned Unit Development Rider   ☐ Mortgage Insurance Rider
☐ Other(s)

**(L)** **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(M)** **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(N)** **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(O)** **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(P)** **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Agreement and/or this Security Instrument.

**(Q)** **"Approved Prior Loan"** means a lien which is and which lender acknowledges and agrees will continue to have priority over the lien created by this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in the

       COUNTY          of       COBB              :
       [Type of Recording Jurisdiction]            [Name of Recording Jurisdiction]

SCHEDULE A ATTACHED HERETO AND MADE A PART OF.

Deed Book 14529 Pg  249

which currently has the address of   2231 SNUG HBR NE

[Street]

MARIETTA           GEORGIA            300667803        ("Property Address"):
[City]                        [State]                                    [Zip Code]

TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

ADVANCES. During the Draw Period described in the Agreement, the Borrower may repeatedly take and repay any advances that Lender makes to Borrower under the terms of the Agreement and this Security Instrument, subject to the terms that the Agreement and this Security Instrument impose. The Agreement and this Security Instrument will remain in full force and effect notwithstanding that the Account Balance under the Agreement may occasionally be reduced to an amount of equal to or less than zero.

Any amounts that Lender advances to Borrower in excess of the Credit Limit will be secured by the terms of this Security Instrument unless applicable law prohibits the same. Lender shall not be obligated to increase the Credit Limit formally or to make additional Advances in excess of the Credit Limit stated in the Agreement even though the Credit Limit has been exceeded one or more times. The Draw Period may or may not be followed by a Repayment Period, as described in the Agreement, during which additional Advances are not available. During both the Draw Period and the Repayment Period the Lender may, at its option, make Advances from the Account to pay fees, charges, or credit insurance premiums due under the Agreement or this Security Instrument, or make other Advances as allowed by this Security Instrument.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.**   Borrower and Lender covenant and agree as follows:

**1.    Payment of Secured Debt.**   Borrower shall pay when due all Secured Debt in accordance with the Agreement and this Security Instrument. All payments shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Agreement or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Agreement or Security Instrument be by a method of Lender's choosing. These methods include, but are not limited to: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Billing Statement or at such other location as may be designated by Lender in accordance with the notice provisions provided in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Account current. Lender may accept any payment or partial payment insufficient to bring the Account current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Agreement and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2.    Application of Payments or Proceeds.**   All payments accepted by Lender shall be applied to the Secured Debt under this Security Instrument as provided in the Agreement unless Applicable Law provides otherwise. Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Agreement shall not extend or postpone the due date, or change the amount, of the Minimum Payment.

**3.    Funds for Escrow Items.**   Borrower shall not be required to pay into escrow amounts due for taxes, assessments, leasehold payments, or other insurance premiums unless otherwise agreed in a separate writing.

Deed Book 14529 Pg 250

4. **Charges; Liens; Prior Security Interests.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in a manner provided in Section 3.

Borrower shall promptly discharge any lien, other than the Approved Prior Loan, which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, other than the Approved Prior Loan, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth in this Section.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with the Agreement. Borrower shall pay when due, or shall cause to be paid when due, all sums required under the loan documents evidencing the Approved Prior Loan and shall perform or cause to be performed all of the covenants and agreements of Borrower or the obligor set forth in such loan documents. All of Lender's rights under this Covenant shall be subject to the rights of the Holder of the Approved Prior Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Agreement. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section shall become additional Secured Debt of Borrower and secured by this Security Instrument. These amounts shall be subject to the terms of the Agreement and the Security Instrument.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgagee clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender

has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds.  Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower.  If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the Secured Debt secured by this Security Instrument, whether or not then due, with the  excess, if any, paid to Borrower.  Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters.  If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim.  The 30-day period will begin when the notice is given.  In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Agreement or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property.  Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Agreement or this Security Instrument, whether or not then due.

**6.    Occupancy.**  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of the Agreement and Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at  least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7.    Preservation, Maintenance and Protection of the Property; Inspections.**  Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property.  Whether or not Borrower resides on the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition.  Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage.  If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes.  Lender may disburse proceeds for  the repairs and restoration in a single payment or in a series of progress payments as the work is completed.  If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property.  If it has reasonable cause, Lender may inspect the interior of the improvements on the Property.  Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8.    Borrower's Home Equity Line of Credit Application Process; Default.**  Borrower shall be in default if, during the Account application process, or at any time during the term of the Agreement, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Account.  Material representations include, but are not limited to,  representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

Borrower is also in default if: 1) Borrower engages in fraud or makes a material misrepresentation at any time in connection with Borrower's Account;  2) Lender does not receive the full amount of any Minimum Payment due or Borrower fails to meet any of the other repayment terms of the Agreement;  3)  Borrower's action or inaction adversely affects the Property or Lender's rights in it.  Examples of these actions or inactions include, but are not limited to: a) Borrower's death, if Borrower is the sole person on the Account; or the death of all but one borrower which adversely affects Lender's security;  b) Illegal use of the Property, if such use subjects the Property to seizure; c)  Transfer of all or part of the Borrower's interest in the Property without Lender's written consent;  d)  All or part of the Property is taken by condemnation or eminent domain;  e)  Foreclosure of any senior lien on the Property;  f)

GEORGIA HOME EQUITY LINE OF CREDIT SECURITY DEED
GAHESI.HLC  10/06/06                                                          Page 5 of 12                                          DocMagic *eFormat* 800-649-1362
                                                                                                                                        www.docmagic.com

Deed Book 14529 Pg  252

Failure to maintain required insurance on the Property;  g) Waste or destructive use of the Property which adversely affects Lender's security;  h)  Failure to pay taxes or assessments on the Property;  i)  Permitting the creation of a senior lien on the Property other than an Approved Prior Loan;  j)  Filing of a judgment against Borrower, if the amount of the judgment and collateral subject to the judgment is such that Lender's security is adversely affected.

Lender may, at its option, take lesser actions than those described at the beginning of this Section.  Such lesser actions may include, without limitation, suspending Borrower's Account and not allowing Borrower to obtain any further Advances, reducing Borrower's Credit Limit, and/or changing the payment terms on Borrower's Account. If Lender takes any such actions, this shall not constitute an election of remedies or a waiver of Lender's right to exercise any rights or remedies under the remainder of this Section, the remaining provisions of the Agreement, the Security Instrument, or at law or in equity.  Lender may take action under this Section only after complying with any notice or cure provisions required under Applicable Law.  In the event Lender elects not to terminate the Account or take any lesser action as provided in this Section, Lender does not forfeit or waive its right to do so at a later time if any of the circumstances described above exists at that time.

**9.    Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**  If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or  forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for  whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below).  Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b)  appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding.  Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions.  Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so.  It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section shall become additional Secured Debt of Borrower secured by this Security Instrument, payable according to the terms of the Agreement and this Security Instrument  These amounts shall bear interest at the Agreement rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.  If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease.  Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease.  Borrower shall not, without the express written consent of Lender, alter or amend the ground lease.  If Borrower acquires fee title to the Property,  the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10.    Mortgage Insurance.**  Borrower is not required to obtain Mortgage Insurance unless otherwise agreed in writing.

**11.    Assignment of Miscellaneous Proceeds; Forfeiture.**  All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened.  During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.  Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds.  If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the Secured Debt secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.  Such Miscellaneous Proceeds shall be applied in the order provided for in the Agreement and this Security Instrument.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the Secured Debt secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Secured Debt secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Secured Debt secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Secured Debt immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Secured Debt immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the Secured Debt secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, and Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Secured Debt secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be otherwise applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the Secured Debt secured by this Security Instrument granted by Lender to Borrower or any Successors in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Agreement (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the Secured Debt secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Agreement without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability

Deed Book 14529 Pg  254

under this Security Instrument unless Lender agrees to such release in writing.  The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender.

**14.  Agreement/Account Charges.**  Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees.  In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee.  Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Account is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other Account charges collected or to be collected in connection with the Account exceed the permitted limits, then:  (a) any such Account charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower.  Lender may choose to make this refund by reducing the principal owed under the Agreement or by making a direct payment to Borrower.  If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Agreement).  Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15.  Notices.**  All notices given by Borrower or Lender in connection with this Security Instrument must be in writing.  Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means.  Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise.  The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender.  Borrower shall promptly notify Lender of Borrower's change of address.  If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure.  There may be only one designated notice address under  this Security Instrument at any one time.  Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower.  Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender.  If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16.  Governing Law; Severability; Rules of Construction.**  This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located.  All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law.   Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract.  In the event that any provision or clause of this Security Instrument or the Agreement conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Agreement which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the  plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17.  Borrower's Copy.**  Borrower shall be given one copy of the Agreement and of this Security Instrument.

**18.  Transfer of the Property or a Beneficial Interest in Borrower.**  As used in this Section, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the  Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

Deed Book 14529 Pg   255

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19.  Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender or causes Lender to be paid all sums which then would be due under this Security Instrument and the Agreement as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the Secured Debt secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20.  Change of Servicer; Notice of Grievance.** The Agreement or a partial interest in the Agreement (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Servicer") that collects the amounts due under the Agreement and this Security Instrument and performs other mortgage loan servicing obligations under the Agreement, this Security Instrument, and Applicable Law. There also might be one or more changes of the Servicer unrelated to a sale of the Agreement. If the Agreement is sold and thereafter the Agreement is serviced by a Servicer other than the purchaser of the Agreement, the servicing obligations to Borrower will remain with the Servicer or be transferred to a successor Servicer and are not assumed by the Agreement purchaser unless otherwise provided.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party and allowed the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and reasonable time to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21.  Hazardous Substances.** As used in this Section: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a

GEORGIA HOME EQUITY LINE OF CREDIT SECURITY DEED
GAHESI HLC  10/09/06                                              Page 9 of 12                              DocMagic *eFecrms* 800-649-1362
                                                                                                                    www.docmagic.com

Deed Book **14529** Pg   **256**

condition that adversely affects the value of the Property.   The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand,  lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance  which adversely affects the value of the Property.  If Borrower learns, or is notified  by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.  Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.**     Borrower and Lender further covenant and agree as follows:

**22.   Acceleration; Remedies.   Lender** shall give notice as required by Applicable Law prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument or the Agreement (but not prior to acceleration under Section 18 of the Security Instrument unless Applicable Law provides otherwise), Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and  of  Lender's election to cause the Property to be sold.  Trustee shall cause this notice to be recorded in each county in which any art of the Property is located.  Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law.  After the time required  by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied.  The recitals in the Trustee's deed shall be prima facie evidence of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

**23.   Release.**   Upon Borrower's request, and upon payment in full of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument.  Borrower shall pay any recordation costs.  Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for  services rendered and the charging of the fee is permitted under Applicable Law.

**24.   Waiver of Homestead.**   Borrower waives all rights of homestead exemption in the Property.

**25.   Assumption Nota Novation.**   Lender's acceptance of an assumption of the obligations of this Security Instrument and the Agreement, and any release of Borrower in connection therewith, shall not constitute a novation.

**26.   Security Deed; Future Advances.**   This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure  the payment of all sums secured hereby. This Security Instrument secures future advances.

Deed Book 14529 Pg  257

**BENEFICIARY REQUESTS NOTICE OF ANY ADVERSE ACTION**
**THAT A PRIORITY LIEN HOLDER TAKES WITH REGARD TO**
**THE PROPERTY, INCLUDING DEFAULT AND FORECLOSURE**

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

_____ (Seal)
M A SADIQ                        -Borrower

_____ (Seal)
AMINA SADIQ                      -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

Deed Book 14529 Pg   258

[Space Below This Line For Acknowledgment]

Signed, sealed and delivered in the presence of:

_____
Unofficial Witness

_____
Unofficial Witness

N.P
SEAL

_____
Notary Public
State of Georgia

My commission expires: _____

Notary Public, DeKalb County, Georgia
My commission expires April 8, 2010

Signed before me this 29th day of May 2007
in Attock City— Pakistan

ATTESTED                    ATTESTED

Sher Ahmed Naeem (Advocate)

May 29th 2007

DocMagic €Fmmmns 800-649-1362
www.docmagic.com

Deed Book 14529 Pg   259
Jay C. Stephenson
Clerk of Superior Court Cobb Cty. Ga.

H156FD26

## SCHEDULE A

THE FOLLOWING PROPERTY:

THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT(S) 779 OF DISTRICT 16,  COBB COUNTY, GEORGIA, BEING LOT(S) 44, BLOCK A, ST CHARLES SQUARE SUBDIVISION, PHASE 2, AS PER PLAT RECORDED IN COBB COUNTY, GEORGIA RECORDS.

BEING AND INTENDING TO DESCRIBE THE SAME PREMISES CONVEYED IN A DEED RECORDED 06/02/1997, IN BOOK 10395, PAGE 175.

KNOWN AS: 2231 SNUG HBR NORTHEAST

PARCEL: 16-0779 -076