ID# 2023-0026188-CV
EFILED IN OFFICE
CLERK OF SUPERIOR COURT
COBB COUNTY, GEORGIA
**22106989**
Ann B. Harris - 56
FEB 20, 2023 04:56 PM

Connie Taylor, Clerk of Superior Court
Cobb County, Georgia

IN THE SUPERIOR COURT OF COBB COUNTY
STATE OF GEORGIA

| | |
|---|---|
| BANK OF AMERICA, N.A., | ) |
| | ) |
| Plaintiff, | ) Case No. |
| | ) |
| v. | ) 22106989 |
| | ) |
| M.A. SADIQ aka M. AKHTAR SADIQ aka | ) |
| AKHTAR SADIQ and AMINA SADIQ, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANTS' ANSWER TO COMPLAINT FOR REFORMATION, DECLARATORY JUDGMENT,
AND EQUITABLE RELIEF AND COUNTERCLAIMS**

Comes now M.A. Sadiq aka M. Akhtar Sadiq aka Akhtar Sadiq and Amina Sadiq (hereinafter referred to as "Defendants" or "the Sadiqs"), by and through their undersigned counsel, and files their Answer to Plaintiff, Bank of America, N.A., (hereinafter referred to as "Plaintiff" or "the Bank") as follows:

**FIRST DEFENSE**

Defendants plead lack of subject matter jurisdiction.

**SECOND DEFENSE**

Venue is improper in this case as this matter addresses a federal question.

**THIRD DEFENSE**

Defendants plead the defense of estoppel.

**FOURTH DEFENSE**

Defendants plead failure of consideration.

**FIFTH DEFENSE**

Defendants plead the defense of waiver.

**SIXTH DEFENSE**

Defendants plead the defense of Contributory Negligence.

**RESERVATION OF AFFIRMATIVE DEFENSES LATER DISCOVERED**

Defendants expressly reserve the right to assert any and all affirmative defenses and matters in avoidance as may be disclosed during the course of additional investigation and discovery. Subject to and without waiving any of its rights, defenses, or objections, Defendant, by and through counsel, responds to specific averments contained in the Complaint as follows:

**RESPONSE TO FACTS**

1.

Defendants admit the allegations in paragraph 1 of the Complaint.

2.

Defendants admit the allegations in paragraph 2 of the Complaint in part and denies the allegations in paragraph 2 of the Complaint in part. Mr. Sadiq resides at and may be served with Summons and Complaint at the property. This court has personal jurisdiction over Mr. Sadiq. However, the appropriate subject matter jurisdiction and venue is in the United States District Court for the Northern District of Georgia as this matter involves a federal question.

3.

Defendants admit the allegations in paragraph 3 of the Complaint in part and denies the allegations in paragraph 3 of the Complaint in part. Mrs. Sadiq resides at and may be served with Summons and Complaint at the property. This court has personal jurisdiction over Mrs. Sadiq. However,

the appropriate subject matter jurisdiction and venue lies with the United States District Court for the Northern District of Georgia.

4.

Defendants admit the allegations in paragraph 4 of the Complaint.

5.

Defendants admit the allegations in paragraph 5 of the Complaint.

6.

Defendants admit the allegations in paragraph 6 of the Complaint.

7.

Defendants can neither admit nor deny as the Sadiqs are not privy to the Banks intentions. To the extent a response is required, the Sadiqs deny the allegations in paragraph 7.

8.

Defendants admit the allegations of paragraph 8 of this Complaint in so much that the Bank has expressed to the Sadiqs the Bank's desire to change the language of the original security deed.

## COUNT I
## REFORMATION

9.

Defendants restate and reallege all proceeding paragraphs and resources as if set out herein verbatim.

10.

Defendants deny the allegations in paragraph 10 of the Complaint.

11.

Defendants deny the allegations in paragraph 11 of the Complaint.

12.

Defendants deny the allegations in paragraph 12 of the Complaint.

## COUNT II
## DECLARATORY JUDGMENT

13.

Defendants restate and reallege all proceeding paragraphs and resources as if set out herein verbatim.

14.

Defendants admit the allegations in paragraph 14 of the Complaint.

15.

Defendants admit the allegations in paragraph 15 of the Complaint.

16.

Defendants admit the allegations in paragraph 16 of the Complaint.

17.

Defendants deny the allegations in paragraph 17 of the Complaint.

## COUNT III
## EQUITABLE RELIEF

18.

Defendants restate and reallege all proceeding paragraphs and resources as if set out herein verbatim.

19.

Defendants deny the allegations in paragraph 19 of the Complaint.

20.

Defendants deny the allegations in paragraph 20 of the Complaint.

## GENERAL DENIAL AND PRAYER FOR RELIEF

21.

Any allegations contained in Plaintiff's Complaint, not specifically addressed, denied or controverted are hereby denied.

Wherefore, the Sadiqs pray:

(a) That the Bank's Complaint be dismissed as to all claims against the Sadiqs in its entirety with prejudice;

(b) That the Bank's claims against the Sadiqs be dismissed as subject matter jurisdiction and venue are improper;

(c) That all costs be cast upon the Bank;

(d) That the Bank's request for relief be denied;

(e) That this Court grant the Sadiqs such other and further relief as this Court deems just and proper.

## COUNTERCLAIMS

COMES NOW, the Sadiqs and files these Counterclaims, respectfully showing this Court as follows:

22.

This court has personal jurisdiction but not subject matter jurisdiction.

23.

This court does not have subject matter jurisdiction. The Bank has violated the Real Estate Settlement Procedures Act (hereinafter referred to as "RESPA") which presents a federal question to this court.

24.

Venue is improper as this matter involves a federal question.

## FACTS

25.

The Sadiqs restate and incorporate herein the foregoing Paragraphs 1 - 24 as if fully stated herein.

26.

The premises is located at 2231 Snug Harbor NE, Marietta, GA 30066 (the "Subject Property") which is encumbered by a security deed held by the Bank.

27.

The relevant security deed was recorded on August 23, 2007, at Deed Book 14529, Page 247, Cobb County Records (the "Security Deed").

28.

In the Security Deed, the Bank wrote the power of sale language as follows:

> 22. Acceleration; Remedies. Lender shall give notice as required by Applicable Law prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument or the Agreement (but not prior to acceleration under Section 18 of the Security Instrument unless Applicable Law provides otherwise), Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section, including, but not limited to, reasonable attorney's fees and costs of title evidence.
> 
> If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold.  Trustee shall cause this notice to be recorded in each county in which any part of the Property is located.  Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law.  After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place designated under the terms designated in the notice of sale in one or more parcels in any order Trustee determines.  Trustee may postpone sale of all or any parcel of the Property

by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorney's fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

29.

After the Sadiqs received a forbearance during the Covid-19 pandemic, Sadiqs were advised by the Bank to apply for a loan modification, to which the Sadiq's complied.

30.

The Sadiqs diligently applied for a loan modification and provided all documents requested by the Bank for this loan modification.

31.

The Sadiqs provided communications and documents regarding the application for loan modification, and the Bank provided responses, on the multiple dates, with requests for documents the Sadiqs had previously provided to the Bank.

32.

On or about January 25, 2022, the Sadiqs and the Bank held a phone conversation, which is the first communication regarding the Sadiqs seeking a loan modification.

33.

The Bank informed the Sadiqs that it would send a loan modification packet to the Sadiqs to complete.

34.

The Bank informed the Sadiqs that the Bank would modify the loan at 1% interest.

35.

Despite this discussion, and despite numerous subsequent calls to the Bank, the Bank never sent the loan modification packet to the Sadiqs which caused the Sadiqs to download the loan modification packet from the Bank's website.

36.

On or about April 11, 2022, the Sadiqs sent a complete loan modification package to the Bank, via fax and UPS, which included the following documents:

- o  Tax Returns
- o  A completed Loan Application
- o  Profit/loss statements from Borrower's businesses
- o  Personal bank statements
- o  Borrower's Social Security award letter from 2022
- o  Borrower's Wife's Social Security award letter from 2022
- o  Borrower's Wife's proof of TIAA income/retirement income
- o  Mortgage statements from first position mortgage
- o  Letter of explanation stating that 1st position mortgage was not modified

37.

Thirty (30) days from the date of the Sadiqs faxed loan modification application dated April 11, 2022, is May 11, 2022.

38.

On or about June 6, 2022, at the Bank's request, the Sadiqs resent bank statements to the Bank, which were already provided in the April 11th package.

39.

On or about June 22, 2022, at the Bank's request, the Sadiqs resent documents to the Bank, which were already provided in the earlier packages provided to the Bank.

40.

On or about June 25, 2022, the Bank provided a letter to the Sadiqs confirming receipt of his financial documents.

41.

On or about June 30, 2022, at the Bank's request, the Sadiqs resent loan application items, which were already provided in earlier packages provided to the Bank.

42.

On or about July 6, 2022, the Bank requested documents from the Sadiqs which the Sadiqs had already provided in previous packets sent to the Bank.

43.

Thirty (30) days from the date of the Bank's letter of June 25, 2022, is July 25, 2022.

44.

On or about July 25, 2022, the Sadiqs again provided the Bank with the complete loan modification packet, per a request from the Bank on July 22, 2022.

45.

On or about August 10, 2022, the Sadiqs again provided all documents requested by the Bank regarding the requested loan modification.

46.

On or about August 19, 2022, the Sadiqs again provided all documents requested by the Bank regarding the requested loan modification.

47.

On or about August 19, 2022, the Sadiqs sent correspondence via fax and via FedEx, which was delivered on August 22, 2022, to the Bank's loan representative, Chief Financial Officer and Chief Administrative Officer regarding the issues the Sadiqs were having with the loan modification process.

48.

The Sadiqs never received a response from either the Bank's loan representative, Chief Financial Officer or the Bank's Chief Administrative Officer.

49.

To date, despite the Sadiqs' diligent efforts to obtain a loan modification with the Bank, the Bank has still failed to properly process the loan modification. Rather, the Bank has repeatedly requested documents which Borrower already provided and has unnecessarily and unlawfully dragged out the loan modification process by failing to respond within the time constraints set by RESPA.

50.

Current interest rates are now significantly higher than the 1% offered to the Sadiqs at the beginning of the loan modification and loss mitigation process. The difference in the 1% interest rate and the current interest rate creates a significant financial detriment to the Sadiqs.

51.

The Bank's delays in processing the Sadiqs' loan modification package created undue burdens on the Sadiqs that have impacted their financial, physical, and mental wellbeing.

52.

The Bank's actions and inaction regarding the Sadiqs' application for loan modification are in violation of RESPA's requirements, pursuant to 12 CFR 1024.41.

## COUNTERCLAIM I
## VIOLATIONS OF THE REAL ESTATE
## SETTLEMENT PROCEDURES ACT (RESPA)

53.

The Sadiqs restate and incorporate herein the foregoing Paragraphs 1 - 53 as if fully stated herein.

54.

The Sadiqs provided loan modification documents to the Bank on multiple occasions prior to the Bank providing notice of acceptance June 25, 2022. Despite being provided with a notice of acceptance of financial documents, the Bank continued to ask respondents for the same information the Sadiqs had already provided on multiple occasions.

55.

The Sadiqs, pursuant to the Bank's repeated requests, repeatedly provided the requested loan modification information to the Bank seven (7) times over a period of four (4) months.

56.

The Bank never provided the Sadiqs with a notice in writing stating the Bank's determination of which loss mitigation items, if any, it would offer to the Sadiqs.

57.

The Bank failed to provide a decision on mitigation loss options that the Sadiqs could appeal.

58.

The Bank's failure to properly process the loan modification documents submitted on seven (7) different occasions within 30 days of any of the loan modification submissions kept the Sadiqs in

a perpetual cycle of submitting the same documents to the Bank without being afforded the opportunity to modify their loan or appeal a loan modification denial.

59.

The Bank's actions and inaction regarding the Sadiqs' application for loan modification are in violation of RESPA's requirements, pursuant to 12 CFR 1024.41.

## COUNTERCLAIM II
## BREACH OF CONTRACT

60.

The Sadiqs restate and incorporate herein the foregoing Paragraphs 1 - 60 as if fully stated herein.

61.

The Sadiqs and the Bank entered into a legally binding loan agreement.  The Sadiqs never missed a payment to the bank prior to their forbearance.  The Sadiqs requested a loan modification under the terms of the loan agreement.  The Bank failed to properly process this modification to the detriment of the Sadiqs.

62.

The Bank's failure to process the Sadiqs' loan application is a breach of the implied duty of good faith.

63.

The Sadiqs have endured damages as a direct result of both the Bank's actions and the Banks lack of action.  When the Sadiqs began the loan modification process, Mr. Sadiq was informed that his interest rate would be 1%. Interest rates have risen dramatically since the Sadiqs started the loan modification process.  As a result, the Bank's delay will cause significant financial harm to the Sadiqs.

## COUNTERCLAIM III
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

64.

The Sadiqs restate and incorporate herein the foregoing Paragraphs 1 - 64 as if fully stated herein.

65.

The Bank was at a minimum reckless in how they have handled the loan modification process with the Sadiqs.

66.

The Bank's actions for repeatedly asking for the same information seven (7) times over four (4) months when RESPA requires an appropriate response within the required thirty (30) days is extreme and outrageous.

67.

These actions and flippant behavior by the Bank repeatedly asking the Sadiqs for the same information over and over again while the Sadiqs are worried and concerned about losing their home created severe physical and mental duress to the Sadiqs.

## COUNTERCLAIM IV
## PUNITIVE DAMAGES

68.

The Sadiqs restate and incorporate herein the foregoing Paragraphs 1 - 68 as if fully stated herein.

69.

The Bank is fully aware that the Sadiqs need this loan modification to keep their home.

70.

The Bank is aware that since the Sadiqs began this process with the Bank, interest rates have risen significantly and beyond 1%.

71.

The Bank made several demands for the same package of previously provided loan modification from the Sadiqs over a period of four (4) months as interest rates rose.

72.

To date, despite providing the documents the Bank demanded several times and the first set of loan modification documents being provided nearly a year ago, the Bank has still not provided a letter of options or denial within thirty (30) days on the Sadiqs loan modification request pursuant to federal law.

73.

Though the Bank has failed to act pursuant to federal law in the Sadiqs' loan modification process, the Bank has chosen to focus on correcting language in the Security Deed the Bank wrote in order to establish its ability to foreclose on the Sadiqs' home with repeated requests for the Sadiqs to approve the new language that the Bank wants so that the Bank has the option to foreclose on the Sadiqs' home.

74.

The Bank knows it is in error by failing to follow the proper loan modification process required under RESPA despite the Sadiqs diligent efforts in repeatedly submit the paperwork.

75.

The Bank continues to fail to process the Sadiqs loan modification package submitted seven (7) times to the Bank and despite the Sadiqs contacting the Bank – to include its Chief Financial

Officer and its Chief Administrative Officers – yet the Sadiqs repeated requests for assistance have been ignored.

76.

The Bank has shown callous indifference to following proper loan modification procedures required by federal law.

77.

In addition, the Bank has demonstrated willful misconduct by:

- failing to provide any loan modification letter pursuant to RESPA,
- extending the process for a loan modification without any authority to do so while interest rates continued to rise well beyond the 1% promised to the Sadiqs at the beginning of the loan modification process,
- ignoring repeated requests for help from the Sadiqs for the Bank to simply process the loan documents the Bank demanded and the Sadiqs provided, and
- pursuing a change in the Security Deed language written by the Bank in order to establish foreclosure rights to the Sadiqs' home.

78.

The Banks actions and inactions and delays have stripped the Sadiqs of their ability to save their home while the Bank is actively pursuing means to establish foreclosure rights to the Sadiqs' home.

79.

The Banks actions and inactions exhibit willful misconduct and an entire lack of care by the Bank to follow federal law and create a presumption of conscious indifference to consequences. The Banks chosen course of action has created an aggravated set of circumstances that beg for punishment and deterrence pursuant to O.C.G.A. §51-12-5.1.

## COUNTERCLAIM V
## ATTORNEYS' FEES AND COSTS

80.

The Sadiqs restate and incorporate herein the foregoing Paragraphs 1 - 76 as if fully stated herein.

81.

The Sadiqs have diligently submitted and resubmitted their loan modification package as requested and demanded by the Bank beginning in April of 2022. The Bank has not processed the loan modification pursuant to deadlines imposed by federal law.

82.

The Bank seeks to change its own language it wrote in the Security Deed on the Sadiq's home. While the Bank has not processed the Sadiqs' loan modification providing options for the Sadiqs to keep their home, the Bank expended considerable effort in its demands that the Sadiqs approve new language in the Security Deed to allow the Bank to foreclose on the Sadiqs' home.

83.

As a result of the Bank's actions and inactions, the Sadiqs have been forced to hire legal counsel to help protect their home and demand the Bank follow federal law in processing their loan modification.

84.

Had the Bank followed federal law in the loan modification process, there would be no reason for the Sadiqs to be before the Court with this action.

85.

The Bank has expended resources to attempt to change its own language in the Security Deed.

86.

The Bank continues to fail to process the loan modification for the Sadiqs and instead brought an action to change the language it wrote in the security deed to allow them to foreclose on the Sadiqs' home.

87.

As a result of the Bank's actions and inaction, the Sadiqs are entitled to attorney's fees under the Georgia Civil Practice Act.

**PRAYER FOR RELIEF**

WHEREFORE, the Sadiqs' pray for relief as follows:

(a) That the Bank's Complaint be dismissed as to all claims against the Sadiqs in its entirety with prejudice;

(b) That the Bank's claims against the Sadiqs be dismissed as subject matter jurisdiction and venue are improper;

(c) That the Bank's requests for relief be denied;

(d) That the Sadiqs requests for relief on all their counterclaims be granted;

(e) That all costs be cast upon the Bank to include the Sadiqs' attorneys' fees; and

(f) That this Court grant the Sadiqs any and all such other and further relief as this Court deems just and proper.

[Signature on following page.]

Respectfully submitted this 20th day of February, 2023.

                                          RICHARD C. WAYNE & ASSOCIATES, P.C.

                                          __/s/ Matthew J. Tokajer_____
                                          Matthew J. Tokajer
                                          Georgia Bar No. 482394
                                          Richard C. Wayne, Sr.
                                          Georgia Bar No. 742725
                                          Deborah R. Kidd
                                          Georgia Bar No. 425406
                                          Counsel for the Sadiqs

100 Hammond Dr.
Atlanta, Georgia 30328
Telephone: (404) 231-1444
Facsimile: (404) 231-1666
richard@rwaynelaw.com
matt@rwaynelaw.com
deborah@rwaynelaw.com

**IN THE SUPERIOR COURT OF COBB COUNTY**
**STATE OF GEORGIA**

| | |
|---|---|
| BANK OF AMERICA, N.A., | ) |
| | ) |
|     Plaintiff, | ) Case No. |
| | ) |
| v. | ) 22106989 |
| | ) |
| M.A. SADIQ aka M. AKHTAR SADIQ aka | ) |
| AKHTAR SADIQ and AMINA SADIQ, | ) |
| | ) |
|     Defendant. | ) |

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the **Answer to Complaint for Reformation, Declaratory Judgment, and Equitable Relief and Counterclaims** via the Odyssey electronic file and serve system upon the following attorney(s) of record:

Tenise C. Chung
Hannah C. Davenport
Rubin Lublin, LLC
3145 Avalon Ridge Place, Suite 100
Peachtree Corners, Georgia 30071
tchung@rlselaw.com
hdavenport@rlselaw.com

    This 20th day of February, 2023.

    /s/ Matthew J. Tokajer
    Matthew J. Tokajer
    Georgia Bar No. 482394
    Richard C. Wayne, Sr.
    Georgia Bar No. 742725
    Deborah R. Kidd
    Georgia Bar No. 425406
    Attorneys for Respondent

Richard C. Wayne & Associates, P.C.
100 Hammond Drive
Atlanta, Georgia 30328
Phone: (404) 231-1444
Facsimile: (404) 231-1666
richard@rwaynelaw.com
matt@rwaynelaw.com
deborah@rwaynelaw.com