# EXHIBIT "D"



Thomas Wingfield
Phone: 404.954.5193
twingfield@hallboothsmith.com

191 Peachtree Street NE
Suite 2900
Atlanta, GA 30303-1775, USA

Office: 404.954.5000
Fax: 404.954.5020
www.hallboothsmith.com

October 11, 2022

<u>Via E-Mail</u>

Mr. Garrett Lewis
Senior Specialist, Construction Defect Claims
United States Fire Insurance Company
305 Madison Avenue
Morristown, New Jersey 07960
(garrett.lewis@cfins.com)

RE: ***Beachwalk (at Hallandale) Condominium Association, Inc. v. PRH 2600 Hallandale Beach, LLC, et al.*, Case No. CACE18008615, Circuit Court of the 17th Judicial Circuit, Broward County, Florida**

|  |  |
|---|---|
| **Insured:** | **Fly & Form Inc.** |
| **Insurer:** | **Landmark American Insurance Company** |
| **Policy Nos.:** | **LHA109625 and LHA110177** |
| **Policy Periods:** | **4/30/14-4/30/2015 and 4/30/2015-4/30/2016** |
| **Claim No.:** | **7030128436** |
| **First Mercury Policy No.:** | **NJ-CGL-000027680-01** |
| **First Mercury Policy Period:** | **4/30/2013 to 4/30/2014** |
| **First Mercury Claim No.:** | **22196FM-1** |

Dear Mr. Lewis:

    We write on behalf of and at the direction of Landmark American Insurance Company with respect to the above-referenced claim and Landmark's demand that First Mercury Insurance Company provide contribution for the costs incurred by Landmark to defend their mutual insured, Fly & Form, Inc. Landmark demands contribution from First Mercury in the amount of $214,541.43, which is one-half of the defense costs incurred by Landmark during the time period that First Mercury refused to defend Fly & Form.

    Beachwalk (at Hallandale) Condominium Association (the "Association") filed a Complaint against, among others, John Moriarty & Associates of Florida ("Moriarty"). The Association filed an Amended Complaint on or about July 13, 2018.

ATLANTA, GA

ALABAMA | ARKANSAS | COLORADO | FLORIDA | GEORGIA | MONTANA | NEW JERSEY | NEW YORK
NORTH CAROLINA | OKLAHOMA | SOUTH CAROLINA | TENNESSEE

HALL BOOTH SMITH, P.C.

Mr. Garrett Lewis
October 11, 2022
Page 2

_____

In the Amended Complaint, the Association made the following allegations:

- The Association is a condominium association for the operation of Beachwalk, a condominium complex, which has been controlled with unit owners since December 1, 2015.

- Moriarty was the general contractor for the construction of Beachwalk.

- The Association discovered certain defective conditions at Beachwalk which existed prior to December 1, 2015.

The Association attached a Property Condition Assessment 558 Turnover Report prepared by Epic Forensics & Engineering which identifies purported defects and deficiencies in the construction of Beachwalk.

The Association asserted four Counts against Moriarty: (1) Negligence, (2) Breach of Implied Warranty, (3) Breach of Statutory Warranty and (4) Violation of 553.84, Fla.Stat. In support of the Negligence, Breach of Implied Warranty and Breach of Statutory Warranty counts, the Association alleged that, *inter alia*, Moriarty "constructed the subject condominium building, common elements and improvements with the defects and deficiencies set forth in the Defect List attached hereto and incorporated by reference as Exhibit A." The count for Violation of 553.84, Fla.Stat. was based on alleged code violations committed by Moriarty in the construction of Beachwalk.

In the Breach of Implied Warranty and Breach of Statutory Warranty counts, the Association alleged,

> As a direct and proximate result of Defendant's, Moriarty, breach of the above-mentioned implied warranties, the Association has expended and will be required to expend large sums of money to remedy the defects and deficiencies set forth in Exhibit A or will be required to expend large sums of money for maintenance which would have been unnecessary had the subject condominium building, common elements and improvements been properly designed and constructed[.]

The Association made a slightly different allegation in support of the Negligence count:

> As a direct and proximate result of Defendant's, Moriarty, breach of the above-mentioned implied warranties, the Association has expended and will be required to expend large sums of money to remedy the defects and deficiencies set forth in Exhibit A, <u>as well as damage to other property</u>, or will be required to expend large sums of money for maintenance which would have been unnecessary had the subject condominium building, common

HALL BOOTH SMITH, P.C.

Mr. Garrett Lewis
October 11, 2022
Page 3

_____

        elements and improvements been properly designed and constructed[]

(emphasis and underline added).

       In support of the count for Violation of 553.84, Fla.Stat., the Association alleged that it "has expended and will be required to expend large sums of money to remedy the violations of the Florida Building code and all other applicable codes[.]"

       In the Property Report, Epic identified numerous alleged defects and deficiencies. The report was organized by "property components/disciplines." In the "Concrete Placement" section, Epic identified numerous alleged defects and deficiencies allegedly attributable to the "Concrete Placement" discipline, including purported cracking of concrete walls and exposed metal rods at concrete encasing for floor drain which are corroded. In the Stucco section, Epic identified the alleged debonding of stucco associated with the "Concrete Placement" discipline.

       On August 31, 2018, Moriarty filed the Third-Party Complaint. The Third-Party Complaint names sub-contractors, including F&F, who provided work on the construction of Beachwalk and were involved in the disciplines identified in the Property Report. In the general allegations, Moriarty incorporated the allegations of the Amended Complaint. Moriarty asserted three counts against F&F: Contractual Indemnity, Breach of Contract and Common Law Indemnity. In each of the counts, John Moriarty sought to hold F&F liable "for all amounts claimed or adjudicated in favor of the Association against [Moriarty] for damages associated with F&F's scope of work and found to be defective.

       F&F provided notice the Amended Complaint and Third-Party Complaint to its insurers, First Mercury and Landmark. In a June 26, 2019 letter, Landmark agreed to undertake the defense of F&F under a reservation of rights and to appoint Swift Currie as defense counsel.

       Although F&F first provided notice of the claims to First Mercury on or about November 1, 2018, First Mercury did not agree to provide a defense to F&F until it issued it July 10, 2020 letter in which it agreed to appoint defense counsel under a reservation of rights. First Mercury elected to appoint Quintairo, Prieto, Wood & Boyer, P.A. as counsel to defend F&F.

       During the litigation, Quintairo, Prieto, Wood & Boyer, P.A. was disqualified as defense counsel and could no longer represent F&F in the underlying litigation, but Landmark understands that Quintairo, Prieto, Wood & Boyer, P.A. then began representing First Mercury as coverage counsel. After Quintairo, Prieto, Wood & Boyer, P.A. was disqualified as counsel, First Mercury did not appoint new counsel to defend F&F in the underlying litigation nor did it agree to share in the defense being provided by Landmark despite its clear obligation to provide a defense.

HALL BOOTH SMITH, P.C.

Mr. Garrett Lewis
October 11, 2022
Page 4

_____

### A. First Mercury had a duty to defend F&F.

Under Georgia law, "[a]n insurer's duty to defend is determined by comparing the allegations of the complaint with the provisions of the policy."[1] *Landmark Am. Ins. Co. v. Khan*, 307 Ga.App. 609 (2011) (quoting *Pilz v. Monticello Ins. Co.*, 267 Ga.App. 370 (2004)). The insurer has a duty to defend the action if the allegations "even arguably" implicate insurance coverage. *Id.* (quoting *BBL–McCarthy v. Baldwin Paving Co.*, 285 Ga.App. 494 (2007)). "Indeed, to excuse the duty to defend the [complaint] must <u>unambiguously</u> exclude coverage under the policy." *Id.* (quoting *BBL–McCarthy*, supra) (emphasis added).

The First Mercury Policy provides coverage for "property damage" as a result of an "occurrence," which the policy defines as an "accident." Under Georgia law, an "accident" is "an unintended happening rather than one occurring through intention or design." *Owners Ins. Co. v. James*, 295 F. Supp.2d 1354 (N.D. Ga. 2003) (construing Georgia law) (internal citations omitted); O.C.G.A. § 1-3-3(2) (stating "accident" means an event which takes place without one's foresight or expectation or design). If damage to other property other than the work of F&F is alleged to have occurred during the Policy Period of the First Mercury Policy, First Mercury's duty to defend is triggered. *See Burt Co. v. Clarendon American Ins. Co.*, No. CV-165 (WLS), 1:08 2010 WL 11519565 (M.D.Ga. Jan. 26, 2010).

In the Negligence count against Moriarty in the Amended Complaint, the Association asserted that it suffered damages because of the alleged defects and deficiencies in work performed during construction of Beachwalk and because of damages to <u>other property</u>. The allegation of damage to other property was not limited to any particular discipline or as a result of any specified defect or deficiencies. The Amended Complaint and Third-Party Complaint did not contain allegations of precisely when the damage to other property manifested, so as pled, the alleged damage to other property could have occurred during the Policy Period of the First Mercury Policy.

Because Georgia courts view the duty to defend as being broad and because they find a duty to defend if the complaint alleges liability that is potentially covered by a policy, the allegations of the Amended Complaint, which are incorporated into the Third-Party Complaint and are the basis of the claims asserted against F&F, triggered First Mercury's duty to defend F&F.[2]

### B. Landmark is entitled to equitable contribution from First Mercury for the costs incurred to defend their mutual insured.

Under Georgia law, an insurer who insures the same insured, the same interests and the same risks as another insurer is entitled to contribution from the other insurer for costs incurred to defend and indemnify the mutual insured. *See Southern Trust Ins. Co. v. Cravey*, 345 Ga.App. 697 (2018) (quoting *Fireman's Fund Ins. Co. v. Pekor*, 106 Ga. 1 (1898)). The method of calculating the amount of contribution is determined by the "other insurance" clauses of the policies. *Id.*

---

[1] Georgia law governs the interpretation of the policies as they were delivered to F&F in Georgia. *See Lima Delta Co. v. Global Aerospace, Inc.*, 325 Ga.App. 76 (2013).
[2] No exclusion in the First Mercury Policy expressly precludes coverage for the claims as pled.

HALL BOOTH SMITH, P.C.

Mr. Garrett Lewis
October 11, 2022
Page 5

_____

The First Mercury Policy and the Landmark Policies potentially provided coverage for the claims as pled. The 2015/2016 Landmark Policy includes a Non-Accumulation of Limits endorsement which provides that that the combined maximum limit of liability under all policies issued by Landmark is the "amount stated in the Declaration of the policy with the highest Each Occurrence Limit of Insurance": $1,000,000 Each Occurrence. Thus, coverage under the Landmark Policies is limited to coverage that would be available under a single policy, so the pro rata allocation of defense costs between the Landmark Policies and the First Mercury Policy is on a fifty-fifty basis.

### **Conclusion**

Landmark demands that First Mercury reimburse Landmark for its share of the defense costs incurred by Landmark to defend their mutual insured, as it is undisputed that First Mercury had a duty to defend F&F, but failed to honor that obligation.

Landmark incurred $429,082.85 to defend F&F from the claims asserted by the John Moriarty in the litigation. First Mercury's pro rata share of those incurred defense costs is $214,541.43. Landmark demands that First Mercury contribute its share of the costs to defend F&F in the amount of 214,541.43 within thirty (30) days of the date of this letter.

If First Mercury refuses to pay its share of the defense costs, Landmark will be forced to file suit for contribution to recover the amounts that First Mercury indisputably owes. As there is no reasonable dispute that First Mercury owed F&F a defense and that it refused to provide that defense, First Mercury has no reasonable basis to reject Landmark's demand for contribution, and any refusal by First Mercury to pay the amount demanded will be in bad faith and evidence of it being stubbornly litigious, which will permit Landmark to recover its attorney's fees and costs of litigation in the event that it has to file suit.

Please confirm First Mercury's agreement that it will pay the amount it owes for the defense of F&F to Landmark and arrange for payment to be made within thirty (30) days of the date of this letter. If you would like to discuss this matter, please contact the undersigned.

Sincerely,

Thomas K. Wingfield
Partner
**HALL BOOTH SMITH, P.C.**

cc:   Mr. Gavin Hawley (via email)

75990957.1