# Exhibit A



**SOCIAL SECURITY ADMINISTRATION**

Office of Hearings Operations
2nd Floor
10155 Eagle Drive
Covington, GA 30014-3804

Date: September 23, 2022

Vanessa Renee Rose

## Notice of Decision – Unfavorable

I carefully reviewed the facts of your case and made the enclosed decision. Please read this notice and my decision.

**If You Disagree With My Decision**

If you disagree with my decision, you may file an appeal with the Appeals Council.

**How To File An Appeal**

To file an appeal you or your representative must ask in writing that the Appeals Council review my decision. The preferred method for filing your appeal is by using our secure online process available at https://www.ssa.gov/benefits/disability/appeal.html.

You may also use our Request for Review form (HA-520) or write a letter. The form is available at https://www.ssa.gov/forms/ha-520.html. Please write the Social Security number associated with this case on any appeal you file. You may call (800) 772-1213 with questions.

Please send your request to:

**Appeals Council**
**5107 Leesburg Pike**
**Falls Church, VA 22041-3255**

**Time Limit To File An Appeal**

You must file your written appeal **within 60 days** of the date you get this notice. The Appeals Council assumes you got this notice 5 days after the date of the notice unless you show you did not get it within the 5-day period.

Form HA-L76-OP2 (03-2010)

**Suspect Social Security Fraud?**
**Please visit http://oig.ssa.gov/r or call the Inspector General's Fraud Hotline**
**at 1-800-269-0271 (TTY 1-866-501-2101).**

See Next Page

Vanessa Renee Rose (BNC#: 21UM383H83276)                    Page 2 of 3

The Appeals Council will dismiss a late request unless you show you had a good reason for not filing it on time.

**What Else You May Send Us**

You or your representative may send us a written statement about your case.  You may also send us new evidence.  You should send your written statement and any new evidence **with your appeal**.  Sending your written statement and any new evidence with your appeal may help us review your case sooner.

**How An Appeal Works**

The Appeals Council will consider your entire case.  It will consider all of my decision, even the parts with which you agree.  Review can make any part of my decision more or less favorable or unfavorable to you.  The rules the Appeals Council uses are in the Code of Federal Regulations, Title 20, Chapter III, Part 416 (Subpart N).

The Appeals Council may:

- Deny your appeal,
- Return your case to me or another administrative law judge for a new decision,
- Issue its own decision, or
- Dismiss your case.

The Appeals Council will send you a notice telling you what it decides to do.  If the Appeals Council denies your appeal, my decision will become the final decision.

**The Appeals Council May Review My Decision On Its Own**

The Appeals Council may review my decision even if you do not appeal.  If the Appeals Council reviews your case on its own, it will send you a notice within 60 days of the date of this notice.

**When There Is No Appeals Council Review**

If you do not appeal and the Appeals Council does not review my decision on its own, my decision will become final.  A final decision can be changed only under special circumstances.  You will not have the right to Federal court review.

**New Application**

You have the right to file a new application at any time, but filing a new application is not the same as appealing this decision.  If you disagree with my decision and you file a new application instead of appealing, you might lose some benefits or not qualify for benefits at all.  If you disagree with my decision, you should file an appeal within 60 days.

Form HA-L76-OP2 (03-2010)

See Next Page

Vanessa Renee Rose (BNC#: 21UM383H83276)                Page 3 of 3

**If You Have Any Questions**

1. Visit www.ssa.gov for fast, simple, and secure online service.
2. Call us at **1-800-772-1213**, weekdays from 8:00 am to 7:00 pm. If you are deaf or hard of hearing, call TTY **1-800-325-0778**. Please mention this notice and decision when you call.
3. You may also call your local office at (877) 626-9909.

                    Social Security
                    3554 Covington Hwy
                    Decatur, GA 30032-9803

**How are we doing?** Go to www.ssa.gov/feedback to tell us.

                    Kristen Glover
                    Administrative Law Judge

Enclosures:
Decision Rationale

cc:     Kathleen Flynn
        315 W. Ponce De Leon
        Avenue, Suite 940
        Decatur, GA 30030

**SOCIAL SECURITY ADMINISTRATION**
**Office of Hearings Operations**

**DECISION**

<table>
<tr><td><u>**IN THE CASE OF**</u></td><td><u>**CLAIM FOR**</u></td></tr>
<tr><td>Vanessa Renee Rose</td><td>Supplemental Security Income</td></tr>
<tr><td>(Claimant)</td><td></td></tr>
<tr><td></td><td>21UM383H83276</td></tr>
<tr><td>(Wage Earner)</td><td>(Beneficiary Notice Control Number)<br>*Social Security Number removed for your protection*</td></tr>
</table>

**JURISDICTION AND PROCEDURAL HISTORY**

On November 24, 2020, the claimant protectively filed an application for supplemental security income, alleging disability beginning June 16, 2020. The claim was denied initially on October 22, 2021, and upon reconsideration on December 15, 2021. Thereafter, the claimant filed a written request for hearing received on January 20, 2022 (20 CFR 416.1429 *et seq.*). On May 17, 2022, the undersigned held a telephone hearing due to the extraordinary circumstance presented by the Coronavirus Disease 2019 (COVID-19) Pandemic. All participants attended the hearing by telephone. The claimant agreed to appear by telephone before the hearing, and she confirmed such agreement at the start of the hearing. The claimant is represented by attorneys Kathleen Flynn and Brynne Holt, and Ms. Holt appeared at the hearing. Pamela Joann Harris, an impartial vocational expert, also appeared at the hearing.

If the claimant wishes that written evidence be considered at the hearing, then the claimant must submit or inform the Administrative Law Judge about the evidence no later than five business days before the date of the scheduled hearing (20 CFR 416.1435(a)). Pursuant to 20 CFR 416.1435(b), if the claimant misses this deadline but submits or informs the Administrative Law Judge about written evidence before the hearing decision is issued, the Administrative Law Judge will accept the evidence if: (1) an action of the Social Security Administration misled the claimant; (2) the claimant had a physical, mental, educational, or linguistic limitation(s) that prevented submitting or informing the Administrative Law Judge about the evidence earlier, or (3) some other unusual, unexpected, or unavoidable circumstance beyond the claimant's control prevented the claimant from submitting or informing the Administrative Law Judge about the evidence earlier.

The claimant submitted or informed the Administrative Law Judge about additional written evidence less than five business days before the scheduled hearing date. The undersigned Administrative Law Judge finds that the requirements of 20 CFR 416.1435(b) are satisfied and admits this evidence into the record.

**ISSUES**

See Next Page

The issue is whether the claimant is disabled under section 1614(a)(3)(A) of the Social Security Act.  Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

Although supplemental security income is not payable prior to the month following the month in which the application was filed (20 CFR 416.335), the undersigned has considered the complete medical history consistent with 20 CFR 416.912.

After careful consideration of all the evidence, the undersigned concludes the claimant has not been under a disability within the meaning of the Social Security Act since November 24, 2020, the date the application was filed.

## APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 416.920(a)).  The steps are followed in order.  If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the undersigned must determine whether the claimant is engaging in substantial gainful activity (20 CFR 416.920(b)).  Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful.  "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 416.972(a)).  "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 416.972(b)).  Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that she has demonstrated the ability to engage in SGA (20 CFR 416.974 and 416.975).  If an individual engages in SGA, she is not disabled regardless of how severe her physical or mental impairments are and regardless of her age, education, and work experience.  If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the undersigned must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 416.920(c)).  An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 416.922, Social Security Rulings (SSRs) 85-28 and 16-3p).  If the claimant does not have a severe medically determinable impairment or combination of impairments, she is not disabled.  If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

See Next Page

At step three, the undersigned must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926). If the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listing and meets the duration requirement (20 CFR 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the undersigned must first determine the claimant's residual functional capacity (20 CFR 416.920(e)). An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. In making this finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 416.920(e) and 416.945; SSR 96-8p).

Next, the undersigned must determine at step four whether the claimant has the residual functional capacity to perform the requirements of her past relevant work (20 CFR 416.920(f)). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 416.960(b) and 416.965). If the claimant has the residual functional capacity to do her past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 416.920(g)), the undersigned must determine whether the claimant is able to do any other work considering her residual functional capacity, age, education, and work experience. If the claimant is able to do other work, she is not disabled. If the claimant is not able to do other work and meets the duration requirement, she is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 416.912 and 416.960(c)).

## **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

After careful consideration of the entire record, the undersigned makes the following findings:

**1.   The claimant has not engaged in substantial gainful activity since November 24, 2020, the application date (20 CFR 416.971 *et seq.*).**

**2.   The claimant has the following severe impairments: asthma, obesity, degenerative joint disease of the cervical spine, osteoarthritis of the right knee, generalized anxiety disorder, and major depressive disorder (20 CFR 416.920(c)).**

The record confirms the claimant has been treated for asthma, degenerative joint disease of the cervical spine, osteoarthritis of the right knee, generalized anxiety disorder, and major depressive disorder.  She is also obese, as the record indicates she is approximately five feet and eight inches tall and weighs over 250 pounds, giving her a body mass index (BMI) over 30.  The undersigned notes that obesity can cause limitation of function, and the combined effects of obesity with other impairments may be greater than might be expected without obesity (SSR 19-2p).  These considerations have been taken into account in reaching the conclusions herein.

Evidence prior to the alleged onset date include a June 19, 2020 MRI of the cervical spine showing mild spondylosis at C3-C4 causing mild central stenosis with no underlying cord signal abnormality to suggest contusion.  MRI results of the brain and of the lumbar spine were normal (Exhibit 3F).  Records from Emory Healthcare (Emory) show treatment for complaints of numbness on the right side of the body in July 2020 (Exhibit 1F).  Likewise, records from Medcura Health (Medcura) show the claimant was treated for anxiety, mild persistent asthma, and joint pain during a July 2020 exam (Exhibit 3F).  Potters House Family and Children Treatment Center (Potter) notes also confirm treatment in mid to late-2020 for anxiety and depression, with psychiatrist LeNora Ashley, M.D. diagnosing the claimant with the same following a July 16, 2020 exam and with initial treatment consisting of Xanax and therapy, with Dr. Ashley noting on August 13, 2020, that the claimant was still depressed and anxious, as well as reporting a few panic attacks, which necessitated increasing her Lexapro (Exhibits 5F, 8F, and 16F).

Emory records also include a September 25, 2020 EMG/nerve conduction study was normal, with no electrophysiologic evidence for a generalized large-fiber polyneuropathy or a right C5-T1 or L3-S1 radiculopathy.  The claimant received treatment at Emory for joint pain on December 1, 2020, although without reference to a medically determinable impairment causing the same (Exhibits 1F and 10F).  Dr. Ashley saw the claimant at Potter again on December 28, 2020, and she noted the claimant reported good and bad days, but with some progress overall.  During a January 28, 2021 evaluation, Dr. Ashley noted the claimant's complaints of anxiety and depression.  During a mental status exam, the claimant had normal memory, good orientation, soft speech, no impairment in attention or focus, and no cognitive deficits.  Dr. Ashley prescribed the claimant Lexapro and continued her on Xanax.  Potter records confirm ongoing treatment with therapy in 2021 (Exhibits 5F, 8F, and 16F).

Notes from a March 10, 2021 Medcura telehealth evaluation indicated normal mood and affect, as well as normal movement of all extremities.  The claimant was continued on medication, including Flovent, for her asthma (Exhibits 3F, 4F, and 7F).  CT scans of the lumbar and thoracic spine on March 16, 2021, were normal, and a CT scan of the cervical spine that same day showed mildly straightened alignment possibly related to spasm or position.  There were also mild degenerative changes most pronounced at C3-C4 without definite spinal cord impingement (Exhibit 9F).  A During a March 30, 2021 telehealth exam at Emory, the claimant complained of diffuse pain.  Emory records reference an MRI of the brain being normal, with an MRI also showing spondylosis of the cervical spine.  Upon exam, the claimant was in no acute distress, and there was no evidence of abnormal movement (Exhibits 1F and 10F).  Grady Memorial

See Next Page

Hospital (Grady) notes reference the claimant having a current condition of asthma during treatment for another impairment on April 12, 2021, as well (Exhibit 2F).

The claimant was seen at Emory via telehealth on June 14, 2021, for complaints of right-sided neck, arm, back, and leg pain, with some self-measured issues with painful and limited range of motion in the spine.  The claimant's gait was described as non-antalgic, with the claimant noted to not use an assistive device to ambulate.  She was prescribed pain medication, and she was sent for physical therapy services (Exhibit 10F).  Dr. Ashley saw the claimant at Potter again on June 24, 2021, and the claimant stated her medication, including Lexapro, had calmed her down "considerably."  She was also described as "doing well."  Dr. Ashley noted the claimant had also not had further panic attacks (Exhibit 16F).

Jessie Al-Amin, M.D. conducted a consultative evaluation of the claimant on October 8, 2021, and she noted the claimant weighed 254 pounds at that time.  Dr. Al-Amin noted the claimant did not appear ill or sick, was cooperative, and presented with normal affect, memory, and judgment.  No facial asymmetry was noted, a neck exam was normal, and the claimant's lungs were clear to auscultation during a respiratory exam, which also revealed no wheezing, rales, or rhonchi.  Exams of the spine, upper extremities, lower extremities, and feet were normal, as well.  A neurological exam revealed normal speech and tone, no significant atrophy in the extremities, and intact sensation.  However, during an additional examination performed by Dr. Al-Amin, the claimant had normal posture, used and required a cane to walk or stand, could not perform a tandem walk, and had difficulty walking, squatting, climbing stairs, and rising from a sitting to standing position.  She could bend over while sitting, and she had no difficulty getting on the exam table.  She used a walker due to her right leg reportedly buckling, although she was able to walk short distances without assistance.  The claimant exhibited intact fine and gross motor coordination, and she was described as able to dress unassisted, perform household chores without assistance, shop unassisted, and lift/carry groceries.  She was observed to hold and write on a clipboard, although she had some difficulty using her right hand for activities like picking up a coin.  The claimant had some reduced range of motion in the lumbar spine, right shoulder, right hip, right knee, and right ankle.  Dr. Al-Amin's diagnoses included mild persistent asthma and a history of anxiety and depression (Exhibit 6F).

During a follow-up exam at Emory on October 15, 2021, the claimant complained of right-sided pain despite treatment.  Upon exam, she had normal respiratory findings, full bilateral upper and lower extremity strength of 5/5, full sensation to touch in the bilateral lower extremities, and exhibited a mildly antalgic gait with use of a cane to ambulate.  She was also described as cooperative, with appropriate mood and affect.  She was continued on medication, including Gabapentin, for her reports of pain (Exhibit 10F).  A December 9, 2021 assessment session report completed by Dr. Ashley at Potter indicated the claimant was doing well despite stressors, with some improvement in emotional pain with mediation.  The claimant denied difficulty concentrating or being easily distracted, withdrawing, sudden mood changes, hallucinations, excessive worry, or abnormal thinking (Exhibit 16F).

A January 5, 2022 telehealth evaluation at Medcura shows the claimant was being treated for COVID-19, but with notations that she appeared to be in no acute distress, with good judgment and with normal mood and affect (Exhibits 4F and 7F).  Potter notes show Kenneth DiNella,

M.D. saw the claimant there on January 22, 2022, and a mental status exam showed the claimant to have normal attention, memory, and speech, with appropriate affect and cooperative attitude (Exhibit 16F).  Notes from a February 9, 2022 Emory evaluation indicate the claimant was dealing with significant stress and was finding it difficult to find physical therapy she could afford.  Exam notes show normal respiratory exam findings and a notation that the claimant had a regular and intact gait (Exhibit 11F).  On February 23, 2022, the claimant was treated at Emory Hillandale Hospital for extremity pain.  Records show the claimant's reports of arm symptoms might be the result of neuropathy or anxiety, and an upper extremity venous duplex ultrasound was negative for deep vein thrombosis (Exhibit 14F).

The claimant was treated at Emory again on March 28, 2022, for complaints of ongoing pain despite treatment with medication.  The claimant noted she had not been able to start physical therapy due to insurance issues.  She noted she was taking Cymbalta under the direction of a psychiatrist, as well.  Upon exam, the claimant was in no acute distress, had normal respiratory exam findings, had normal motor, sensory, and neurologic exam findings, and had a mildly antalgic gait.  Mood and affect were appropriate.  Additionally, an x-ray of the left knee showed no acute osseous finding.  An x-ray of the right knee, however, indicated mild tricompartmental marginal osteoarthritis.  The claimant was continued on medication for her pain (Exhibit 11F).

Having reviewed these records, the undersigned finds the above medically determinable impairments significantly limit the claimant's ability to perform basic work activities as required by SSR 85-28.

In addition to the claimant's severe impairments, she has also been treated for right carpal tunnel syndrome (CTS) and has a history of a hysterectomy.  Emory notes confirm a prior history of treatment for right CTS (Exhibit 9F).  Dr. Al-Amin also noted during her October 2020 consultative exam that the claimant had some issues with activities like picking up coins with her right hand, but she also noted the claimant exhibited only mild weakness in the right upper extremity, with 4/5 grip strength (Exhibit 6F).  However, subsequent exams indicated improvement in the effects of the claimant's right CTs, as she exhibited full bilateral upper extremity strength of 5/5 during an October 15, 2021 exam at Emory (Exhibit 10F).  Normal motor and sensory findings were also noted during a recent March 28, 2022 Emory exam (Exhibit 11F).  These recent records indicate the claimant's right CTS has not resulted in more than minimal functional limitation or restriction.

Additionally, records confirm the claimant underwent a hysterectomy in April 2021 following a history of issues that included abnormal uterine bleeding (Exhibits 2F, 3F, and 9F).  Subsequent physical exams do not reflect any significant gynecological, hematological, or other findings linked to this impairment that show it has caused more than minimal functional limitation or restriction (Exhibits 6F, 7F, 10F, and 11F).

An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities.  An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 416.922 and Social Security Ruling

85-28).  Because the evidence of record shows the claimant's right CTS and history of hysterectomy are only slight abnormalities having no more than a minimal effect on the claimant's ability to work, the undersigned finds these impairments are not severe.  The undersigned considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity.

Additionally, the claimant has complained of joint pain and of right-sided weakness/numbness.  The undersigned notes that pain is a symptom and not a medically determinable impairment, with any specific joint issues addressed above.   Records from Emory Healthcare (Emory) show treatment for complaints of numbness on the right side of the body in July 2020 with ongoing complaints of the same at times.  However, no objective studies, including MRI scans of the brains, have not confirmed the presence of an impairment causing these reported symptoms (Exhibits 1F, 7F, 10F, and 11F).  A medically determinable impairment must be supported by evidence from an "acceptable medical source" including anatomical, physiological, or psychological abnormalities demonstrated by medically acceptable clinical and laboratory diagnostic techniques (See Sections 223(d)(3) and 1614(a)(3)(D) of the Social Security Act).  A medically determinable impairment may not be established solely on the basis of subjective allegations (Social Security Ruling 16-3p).  Since there is no objective medical evidence confirming the presence of any right-sided weakness/numbness and in light of the claimant's joint pain being a symptom and not a medically determinable impairment, these subjective complaints require no further consideration under the provisions of Social Security Ruling 16-3p.

**3.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).**

The claimant's impairments do not have the same attendant findings as any impairment contained in Appendix 1.  Special consideration was given to listings 1.15 (Disorders of the skeletal spine resulting in compromise of a nerve root), 1.18 (Abnormality of a major joint in any extremity), and 3.03 (Asthma).  Listings 1.15 and 1.18 are not met, as there is a lack of evidence of documented medical need for a walker, bilateral canes, bilateral crutches, or a wheeled and seated mobility device involving the use of both hands.  There is also no evidence of an inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements and of a documented medical need for a one-handed, hand-held assistive device that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand.  Additionally, the record does not provide evidence of an inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements.  Additionally, listing 3.03 is not met because the record lacks documentation of the required FEV1 levels with evidence of the requisite exacerbations or complications with the required hospitalizations for treatment of the claimant's asthma.

The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06.  In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied.  To satisfy the "paragraph B" criteria, the mental impairments must result in one extreme limitation or two

marked limitations in a broad area of functioning.  An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis.  A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.

In understanding, remembering, or applying information, the claimant has a moderate limitation. The undersigned acknowledges the claimant's mood variability and anxiety may make functioning like remembering things more difficult, but Dr. Ashley noted on January 28, 2021, that the claimant had normal memory with no cognitive defects (Exhibits 5F, 8F, and 16F). Likewise, Dr. Al-Amin noted during her October 8, 2021 exam that the claimant presented with normal memory, as well (Exhibit 6F).  Subsequent exams at Potter also do not show debilitating issues with memory or cognitive function as a result of the claimant's depression and anxiety, with the claimant denying abnormal thinking during a December 9, 2021 assessment, and with Dr. DiNella noting the claimant had normal memory in January 2022 (Exhibit 16F).  Based on this evidence, the undersigned finds the claimant's mental impairments have resulted in no more than moderate limitation in understanding, remembering, or applying information.

In interacting with others, the claimant has a moderate limitation.  While the claimant has noted she has been withdrawn at times and has had some history of difficulty interacting with others, Dr. Al-Amin noted on October 8, 2021, that the claimant was cooperative upon exam (Exhibit 6F).  During a follow-up exam at Emory on October 15, 2021, as well, the claimant was described as cooperative, with appropriate mood and affect (Exhibit 10F).  Potter notes indicate the claimant denied social withdrawal or sudden mood changes during a December 9, 2021 assessment, and a January 5, 2022 telehealth evaluation at Medcura also indicated normal mood and affect at that time (Exhibits 4F, 7F, and 16F).  Dr. DiNella noted on January 22, 2022, that the claimant had cooperative attitude and appropriate affect (Exhibit 16F).  No issues with socialization or presentation were noted during a March 28, 2022 exam at Emory, as well (Exhibit 11F).  The undersigned finds this evidence supportive of a conclusion that the claimant's mental impairments have not resulted in more than moderate limitation in interacting with others.

With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation.  The undersigned acknowledges the claimant's mood variability and anxiety will negatively affect the claimant's functioning in this area.  However, Dr. Ashley noted on January 28, 2021 evaluation that the claimant had no impairment in attention or focus (Exhibits 5F, 8F, and 16F).  The claimant continued to require treatment for anxiety and depression, but Dr. Ashley noted during a December 9, 2021 assessment at Potter that the claimant denied difficulty with concentrating or being easily distracted.  Additionally, Dr. DiNella noted on January 22, 2022, that the claimant had normal attention (Exhibit 16F).  No recent exams indicate ongoing and debilitating issues with focus, task completion, or concentration, and the undersigned finds this evidence supports a conclusion that the claimant's mental impairments cause no more than moderate limitation with regard to concentrating, persisting or maintaining pace.

As for adapting or managing oneself, the claimant has experienced a moderate limitation.  While the claimant's depression and anxiety may affect her ability to handle changes or maintain good self-control and self-regulation, exam notes do not show significant problems in this area of

functioning.  During a January 28, 2021 evaluation, Dr. Ashley noted the claimant had good orientation.  During another exam at Potter on June 24, 2021, Dr. Ashley described the claimant as doing well, with references to medication having successfully calmed the claimant (Exhibits 5F, 8F, and 16F).  Dr. Al-Amin noted on October 8, 2021, that the claimant presented with normal judgment at that time, and Dr. Ashley noted during a December 9, 2021 assessment at Potter that the claimant denied difficulty with sudden mood changes, hallucinations, excessive worry, or abnormal thinking (Exhibits 6F and 16F).  A January 5, 2022 telehealth evaluation at Medcura indicates the claimant exhibited good judgment with normal mood and affect at that time (Exhibits 4F and 7F).  Her mood and affect were also appropriate during a March 28, 2022 Emory exam, with no evidence of significant deficits in adaptive or self-management skills (Exhibit 11F).  Based on this evidence, the undersigned finds the claimant's mental impairments have resulted in no more than moderate limitation in the claimant's ability to adapt or manage herself.

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.

The undersigned has also considered whether the "paragraph C" criteria are satisfied.  In this case, the evidence fails to establish the presence of the "paragraph C" criteria, as there is no evidence of only a minimal capacity to adapt to changes in the claimant's environment or to demands that are not already part of the claimant's daily life.

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process.  The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning.  The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

**4.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she could not climb ladders, ropes, or scaffolds, could occasionally climb ramps and stairs, could frequently balance, and could occasionally crouch, crawl, kneel, and stoop.  She is limited to occasional overhead reaching bilaterally.  She is limited to no more than frequent exposure to workplace hazards, such as moving machinery and unprotected heights.  She is limited to simple and routine tasks with simple work-related decisions, occasional interaction with the public, and occasional routine workplace changes.**

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSR 16-3p. The undersigned also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 416.920c.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical

or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities.

At the hearing, the claimant testified she cannot stand for long periods, and she noted she has to hold onto to things when walking or has to use a cane. The claimant reported her right hand "gives out," meaning things fall out of her hand, and she stated her hand goes numb and tingles, with timing varied. The claimant stated she has attempted to get physical therapy for her conditions, but she noted she has had problems getting therapy providers to accept her insurance. She also described having pain in her hand, knee, back and foot/ankle, stated that she treats her pain by elevating her feet and taking pain medication, and tries to move her will prop up her feet and takes pain medication, and that she will try to move her foot around when it is weak. She testified she uses a cane daily for stability to stand and walk.

The claimant estimated she can stand for five minutes, can sit for about fifteen minutes without bending over, can lift/carry fifteen pounds, has pain with bending at the waist, cannot squat for long periods, and can complete chores for short periods of time. She noted she can reach her arms out, including overhead and to the side, and she stated she does not have a problem with buttoning unless her hand is weak or numb. The claimant also stated she takes medication for depression, although she stated the medication gives her headaches. She reported having mood swings, stated she does not want to be around anyone, and has anxiety with panic attacks caused by stress. The claimant testified she reads, watches television, and spends the day propping up her legs. She also noted her children help her with things around the house.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are not fully consistent with the evidence of record. Concerning the claimant's spinal and knee issues, as well as the effects of her obesity, the undersigned recognizes these impairments will cause some exertional and nonexertional limitations, although the record does not show these impairments to be as limiting as has been alleged. Exam notes concerning pain, issues with range of motion, and other symptoms confirm the claimant has been noted to have an impaired gait, including during exams at Emory on October 15, 2021, and on March 28, 2022

(Exhibits 10F and 11F).  Dr. Al-Amin also noted on October 8, 2021, that the claimant exhibited some problems walking and that she reportedly needed an assistive device for ambulating more than short distances (Exhibit 6F).  The record, however, shows the claimant's gait issues were only intermittent in nature, as the claimant had a non-antalgic gait during a June 14, 2021 Emory evaluation, as well as having a regular and intact gait during an Emory exam on February 9, 2022, with the claimant's March 2022 gait issues noted only to be mild (Exhibits 10F and 11F).  The record fails to support a conclusion that an assistive device is medically necessary pursuant to SSR 96-9p.

Likewise, reports of significant problems with extremity use and range of motion have been only noted occasionally and not consistently or with debilitating consequences, as was alleged at the hearing.  As discussed above, the claimant had normal movement of all extremities on March 10, 2021, according to Medcura records, and an Emory evaluation three weeks later indicated no abnormal movements (Exhibits 1F, 4F, 7F, and 10F).  The claimant reported pain and self-measured range of motion issues in her extremities during a June 14, 2021 evaluation, and Dr. Al-Amin noted on October 8, 2021, that the claimant presented during a consultative exam with difficulty walking, squatting, climbing stairs, and rising from a sitting to standing position.  Despite these issues, Dr. Al-Amin also described the claimant as able to bend over, able to get on and off of an exam table, as having intact fine and gross motor coordination, and as able to dress unassisted, perform household chores without assistance, shop unassisted, and lift/carry groceries (Exhibits 6F and 10F).

Emory exam notes from one week after Dr. Al-Amin's exam indicated full upper and lower extremity strength, with good sensation and only mild gait issues (Exhibit 10F).  Motor, sensory, and neurologic exam findings were also normal during a March 28, 2022 exam at Emory, despite some mild gait issues, with no recent evidence of symptoms that support hearing-level assertions of significant loss of ability to engage in multiple physical activities (Exhibit 11F).  Based on this evidence, the undersigned finds the claimant's demonstrated symptoms support a limitation to light work to address difficulty with lifting/carrying due to knee and spinal symptoms and in light of only intermittent and mild gait issues, with additional postural limitations and environmental limitations to address pain and range of motion issues associated with the claimant's cervical spine impairment, right knee impairment, and body habitus.  A restriction to overhead reaching has also been included in the residual functional capacity to address pain and upper extremity symptoms linked to the claimant's cervical spine impairment.  The undersigned notes that assertions of greater limitation than that adopted above are not supported by the evidence of record concerning consistently demonstrated functioning upon exam.

With regard to the claimant's asthma, diagnoses of and treatment for the same have been noted in the record.  However, respiratory exams, including during Dr. Al-Amin's October 2021 consultative exam and as recently as during a March 28, 2022 Emory exam have consistently been normal (Exhibits 6F, 10F, and 11F).  While the record does not support a finding of disabling limitation linked to the claimant's asthma or even limitation to exposure to pulmonary irritants in light of no findings of exacerbation of her asthmatic condition due to any specific environmental factors, the undersigned finds a restriction to light work is sufficient to address exertional activities that would cause the claimant problems in light of her history of respiratory issues.

See Next Page

The undersigned also acknowledges the claimant's depression and anxiety will also result in some limitation, but the claimant's history of mental health exam observations does not show these impairments to be as severe as alleged.  Potter notes show overall progress in the claimant's symptoms was referenced during a December 28, 2020 exam, with a January 28, 2021 mental status evaluation indicating normal memory, good orientation, soft speech, no impairment in attention or focus, and no cognitive deficits (Exhibits 5F, 8F, and 16F).  The claimant also had normal mood and affect during a March 10, 2021 Medcura evaluation, and Dr. Ashley noted on June 24, 2021, that the claimant stated her medication had calmed her down "considerably" and that the claimant was "doing well" (Exhibits 7F and 16F).  Dr. Al-Amin noted in October 2021 that the claimant presented with normal affect, memory, and judgment at that time, and she was described as cooperative, with appropriate mood and affect during an October 15, 2021 Emory exam (Exhibits 6F and 10F).

The claimant continued to do well with mental health treatment, including therapy in 2021 and into 2022, with Dr. Ashley noting on December 9, 2021, that the claimant was doing well despite stressors and with the record indicating the claimant denied difficulty concentrating or being easily distracted, withdrawing, sudden mood changes, hallucinations, excessive worry, or abnormal thinking at that time (Exhibit 16F).  Dr. DiNella further noted on January 22, 2022, that the claimant exhibited normal attention, memory, and speech, with appropriate affect and cooperative attitude, and Emory notes from a March 28, 2022 exam also reflected the claimant presented with appropriate mood and affect (Exhibits 11F and 16F).  Thus, these records and observations indicate the presence of depression and anxiety that have responded well to treatment and that, while severe, have not resulted in disabling limitation.  In light of the claimant's noted and observed symptoms of record, the undersigned has included restrictions in the residual functional capacity concerning the type and complexity of work in which the claimant can engage, how much interaction she can have with others, and the amount of routine workplace change she can handle, which properly address the demonstrated effects of her mental impairments.

As discussed above, the record indicates the claimant's right CTS and history of hysterectomy have not resulted in more than minimal functional limitation or restriction.  In sum, while the evidence of record does not support the level of limitation alleged by the claimant, the undersigned recognizes that the claimant's impairments do result in some functional limitation, and the residual functional capacity has been fashioned to incorporate those limitations and restrictions supported by the medical evidence of record.

As for the medical opinions and prior administrative medical findings, the undersigned will not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical findings or medical opinions, including those from medical sources.  The undersigned fully considered the medical opinions and prior administrative medical findings in this case.

Dr. Al-Amin concluded after her consultative exam that the claimant may lift as tolerated, has no problems with shoulder activities, might have problems handling objects in the right hand, may have difficulty with prolonged sitting, standing, or walking, may have some difficulty climbing

stairs, may have problems stooping, and has no environmental restrictions (Exhibit 6F). This opinion is only moderately persuasive. First, the opinion is vague with regard to specific limitations. Second, the examination findings support that the claimant would have some limitations in postural activities as well as exertion. The vague limitations assessed, however, are not entirely consistent with the record as a whole. For example, the record does not confirm that the claimant has had a stroke, as this is not objectively documented. The claimant further has normal brain and lumbar MRI results with mild findings from the cervical MRI (Exhibit 3F), and a normal EMG/nerve conduction study (Exhibit 1F). The claimant's left knee x-ray was normal and her right knee x-ray showed mild findings (Exhibit 11F). Examination findings in the records have varied from normal to mildly antalgic gait, as noted in the above summary of the treatment records. As previously noted, the records is not consistent with a conclusion that the claimant requires an assistive device.

State agency medical consultant Bradley Stephan, M.D. concluded in an October 18, 2021 physical residual functional capacity assessment that the claimant can engage in light work, can never climb ladders, ropes, or scaffolds, and can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. Dr. Stephan stated the claimant can frequently reach in front and/or laterally, reach overhead, handle, and finger, all on the right. He stated the claimant should avoid concentrated exposure to extreme cold and to pulmonary irritants, as well as needing to avoid even moderate exposure to hazards (Exhibit 1A). State agency medical consultant R. Rosen, M.D. concluded in a December 14, 2021 physical residual functional capacity assessment that the claimant can engage in light work reduced by a restriction to standing and/or walking a total of four hours in an eight-hour workday, with a notation that the claimant requires a hand-held assistive device for ambulation. Dr. Rosen concluded the claimant can never climb ladders, ropes, or scaffolds but that she can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. Dr. Rosen further noted the claimant can occasionally reach in front and/or laterally, reach overhead, and handle, all on the right, as well as concluding the claimant should avoid concentrated exposure to pulmonary irritants and hazards (Exhibit 3A). These opinion are only moderately persuasive, as statements concerning the claimant's need for right upper extremity limitations and restrictions as to lifting and carrying are not supported by objective studies of the neck or upper extremities, including EMG/nerve conduction studies. Additionally, these opinions are not fully consistent with exam notes, which have indicated only minimal issues with upper extremity problems, have shown no more than intermittent gait issues, and have shown generally good musculoskeletal strength overall. The opinions also appear to base many of these restrictions on symptoms which occurred during a June 2020 hospitalization, but which have been shown to have generally resolved other than very occasional complaints or findings of extremity dysfunction.

State agency psychological consultant A. Carter, Ph.D. concluded in an August 10, 2021 psychiatric review technique form that the claimant's mental impairments result in moderate limitation in her ability to concentrate, persist, or maintain pace, with only mild limitation noted in the other areas of the B criteria. In a mental residual functional capacity assessment, Dr. Carter concluded the claimant is able to understand and remember simple instructions and to carry them out. Dr. Carter stated the claimant would have difficulty understanding and carrying out complex instructions, that she is able to sustain concentration for simple instructions but not complex ones, that she has a reduced ability to interact with large groups but that she retains the

ability to interact with coworkers and supervisors, and that she has a reduced ability to adapt to changes in work-like setting but that she retains the ability to be aware of hazards, use public transportation, and set realistic goals (Exhibit 1A).  State agency psychological consultant R. Koontz, Ph.D. concurred with Dr. Carter's opinion in a December 14, 2021 psychiatric review technique form and mental residual functional capacity assessment (Exhibit 3A).  These opinions are only of moderate persuasiveness, as the undersigned notes findings of mostly mild limitation in the B criteria are internally inconsistent with findings of limitation in all of these areas in the restrictions noted in the mental residual functional capacity assessments, and these limitations therefore lack support in the opinion.  Additionally, the undersigned finds the specific limitations to be somewhat vague as to definitive limitation, with some inconsistency with the mostly normal mental status exams noted in recent Potter evaluation notes and with other examining source notes indicating mostly normal mood and affect upon exam.

The undersigned has considered the third-party statements completed by the claimant's fiancé, Michael Henderson, and by her mother, Amy Thomas (Exhibits 5E and 9E).  While third-party statements such as the one under consideration here can generally be helpful in making findings regarding the claimant's ability to complete activities of daily living; maintain concentration, attention, and pace; engage in social activities; and adapt and manage herself, they are, pursuant to 20 CFR 416.920, considered evidence from a nonmedical source.  As such, the undersigned has considered this statement, including opinions as to limitation, but there is no need to articulate how this evidence was considered in terms of persuasiveness.

**5.    The claimant has no past relevant work (20 CFR 416.965).**

**6.    The claimant was born on September 18, 1987 and was 33 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).**

**7.    The claimant has at least a high school education (20 CFR 416.964).**

**8.    Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).**

**9.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).**

In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11).  When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14).  If the

claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).

If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.20.  However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations.  To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity.  The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as a photocopy machine operator (DOT number 207.685-014; light; svp of two; unskilled; 23,000 jobs nationally), a marker (DOT number 209.587-034; light; svp of two; unskilled; 311,000 jobs nationally), and a laundry sorter (DOT number 361.687-014; light; svp of two; unskilled; 10,000 jobs nationally).

Although the vocational expert's testimony is inconsistent with the information contained in the Dictionary of Occupational Titles, there is a reasonable explanation for the discrepancy.  The vocational expert testified the DOT does not address overhead reaching with any upper extremity, work proximity with regard to the public, or simple, routine repetitive tasks, and she noted her testimony concerning these limitations is based upon her professional experience and education.  The undersigned finds the testimony of the vocational expert, including in the areas not addressed by the DOT, to be persuasive.

Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.  A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

**10.  The claimant has not been under a disability, as defined in the Social Security Act, since November 24, 2020, the date the application was filed (20 CFR 416.920(g)).**

<u>**DECISION**</u>

Based on the application for supplemental security income protectively filed on November 24, 2020, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

/s/ *Kristen Glover*
_____
Kristen Glover
Administrative Law Judge

September 23, 2022
_____
Date

# LIST OF EXHIBITS

## Payment Documents/Decisions

| Component | No. | Description | Received | Dates | Pages |
|---|---|---|---|---|---|
| T1I | 1A | Disability Determination Explanation-DDE- T16 (IN) PRT PRFC by DDS MD Bradley Stephen MD, MRFC by DDS PHD A Carter PHD | | 2021-10-18 | 9 |
| T1I | 2A | Initial Disability Determination by State Agency, Title XVI | | 2021-10-20 | 1 |
| T1I | 3A | Disability Determination Explanation-DDE-T16 (RC) PRT MRFC by DDS MD R Koontz MD | | 2021-12-14 | 9 |
| T1I | 4A | Reconsideration Disability Determination by State Agency, Title XVI | | 2021-12-15 | 1 |

## Jurisdictional Documents/Notices

| Component | No. | Description | Received | Dates | Pages |
|---|---|---|---|---|---|
| T1I | 1B | SSA-1696 - Claimant's Appointment of a Representative - Amelia Baxter Non Atty | | 2020-11-24 | 4 |
| T1I | 2B | T16 Notice of Disapproved Claim | | 2021-10-22 | 5 |
| T1I | 3B | Request for Reconsideration | | 2021-11-24 | 3 |
| T1I | 4B | T16 Disability Reconsideration Notice | | 2021-12-15 | 3 |
| T1I | 5B | SSA-1696-SUP2 - Representative's Withdrawal of Acceptance of Appointment-Amelia Baxter-Waiving Fees | | 2022-01-05 | 2 |

| T1I | 6B | SSA-1696 - Claimant's Appointment of a Representative-Kathleen M Flynn Atty | | 2022-01-20 | 4 |
|---|---|---|---|---|---|
| T1I | 7B | Fee Agreement for Representation before SSA-25%/$6000.00-Kathleen M Flynn | | 2022-01-20 | 1 |
| T1I | 8B | Request for Hearing by ALJ | | 2022-01-21 | 3 |
| T1I | 9B | Outgoing ODAR Correspondence | | 2022-01-27 | 16 |
| T1I | 10B | Request for Hearing Acknowledgement Letter | | 2022-02-01 | 15 |
| T1I | 11B | Hearing Notice | | 2022-02-17 | 24 |
| T1I | 12B | Notice Of Hearing Reminder | | 2022-04-19 | 6 |
| T1I | 13B | Fee Agreement for Representation before SSA | | 2022-05-16 | 1 |
| T1I | 14B | SSA-1696 - Claimant's Appointment of a Representative | | 2022-05-16 | 4 |
| T1I | 15B | Subpoena | Subsequent to hearing | 2022-07-07 | 4 |

## Non-Disability Development

| Component | No. | Description | Received | Dates | Pages |
|---|---|---|---|---|---|
| T1I | 1D | Lead Protective Filing Worksheet | | 2020-11-24 | 3 |
| T1I | 2D | Internet: Third-Party Filers Wet Signature Page | | 2020-12-03 | 8 |
| T1I | 3D | Internet: Third-Party Filers Wet Signature Page | | 2020-12-03 | 2 |
| T1I | 4D | Application for Supplemental Security Income Benefits | | 2020-12-15 | 7 |
| T1I | 5D | Detailed Earnings Query | | 2022-03-04 | 2 |
| T1I | 6D | Summary Earnings Query | | 2022-03-04 | 1 |

| | | | | | |
|---|---|---|---|---|---|
| T1I | 7D | New Hire, Quarter Wage, Unemployment Query (NDNH) | | 2022-03-04 | 1 |
| T1I | 8D | Certified Earnings Records | | 2022-03-04 | 2 |
| T1I | 9D | Detailed Earnings Query | | 2022-05-04 | 2 |
| T1I | 10D | Summary Earnings Query | | 2022-05-04 | 1 |
| T1I | 11D | New Hire, Quarter Wage, Unemployment Query (NDNH) | | 2022-05-04 | 1 |
| T1I | 12D | Certified Earnings Records | | 2022-05-04 | 2 |

## Disability Related Development

| Component | No. | Description | Received | Source | Dates | Pages |
|---|---|---|---|---|---|---|
| T1I | 1E | Work History Report | | Rose, Vanessa R | to 2020-12-17 | 8 |
| T1I | 2E | Disability Report - Adult | | Finney, Ashley | to 2020-12-17 | 8 |
| T1I | 3E | Disability Report - Field Office | | FO | to 2020-12-17 | 3 |
| T1I | 4E | Function Report - Adult | | Rose, Vanessa R | to 2021-06-17 | 8 |
| T1I | 5E | 3rd Party Function Report - Adult | | Henderson, Michael - Fiance | to 2021-06-30 | 8 |
| T1I | 6E | Disability Report - Field Office | | FO | to 2021-11-24 | 2 |
| T1I | 7E | Disability Report - Appeals | | Rose, Vanessa R | to 2021-11-24 | 5 |
| T1I | 8E | Function Report - Adult | | Rose, Vanessa R | to 2021-12-10 | 8 |
| T1I | 9E | 3rd Party Function Report - Adult | | Thomas, Amy - Mother | to 2021-12-12 | 8 |
| T1I | 10E | Disability Report - Field Office | | FO | to 2022-01-26 | 2 |
| T1I | 11E | Disability Report - Appeals | | Flynn, Kathleen Marie | to 2022-01-26 | 8 |
| T1I | 12E | Exhibit List to Rep PH2E | | Oho | to 2022-03-05 | 11 |

| | | | | | |
|---|---|---|---|---|---|
| T1I | 13E | Representative Correspondence | | to 2022-03-24 | 3 |
| T1I | 14E | Misc Disability Development and Documentation | | to 2022-04-13 | 2 |
| T1I | 15E | Resume of Vocational Expert | | to 2022-04-30 | 3 |
| T1I | 16E | Report of Contact | | to 2022-05-16 | 1 |
| T1I | 17E | Representative Brief | | to 2022-05-16 | 2 |
| T1I | 18E | Report of Contact | Subsequent to hearing | to 2022-06-06 | 1 |
| T1I | 19E | Representative Correspondence | Subsequent to hearing | to 2022-06-06 | 1 |
| T1I | 20E | Representative Correspondence | Subsequent to hearing | to 2022-07-06 | 1 |
| T1I | 21E | Proffer Correspondence | | to 2022-08-05 | 3 |
| T1I | 22E | Representative Correspondence | | to 2022-08-05 | 1 |

## Medical Records

| Component | No. | Description | Received | Source | Dates | Pages |
|---|---|---|---|---|---|---|
| T1I | 1F | Office Treatment Records | | The Emory Clinic | 2020-07-28 to 2021-04-01 | 22 |
| T1I | 2F | Hospital Records | | Grady Memorial Hospital | 2021-04-12 to 2021-05-25 | 60 |
| T1I | 3F | Office Treatment Records | | Medcura Health | 2019-10-16 to 2021-05-27 | 106 |
| T1I | 4F | Office Treatment Records | | Medcura Health | 2015-03-11 to 2021-05-27 | 524 |
| T1I | 5F | Office Treatment Records/Telehealth | | Potters House Family & Children Treatment Center-M | 2020-07-08 to 2021-07-14 | 53 |

| | | | | | | |
|---|---|---|---|---|---|---|
| T1I | 6F | Consultative Examination Report-General Medical Exam | | Al-Amin, Jessie L Md, Mph | to 2021-09-30 | 13 |
| T1I | 7F | Office Treatment Records | | Medcura Health | 2015-03-13 to 2022-01-05 | 660 |
| T1I | 8F | Office Treatment Records | | Potters House Family & Children Treatment Center-M | 2020-07-08 to 2022-01-27 | 80 |
| T1I | 9F | Outpatient/Inpatient Rehabilitation Records | | Emory Decatur Hospital | 2007-02-12 to 2021-03-17 | 953 |
| T1I | 10F | Outpatient/Inpatient Rehabilitation Records | | Emory Clinic | 2014-03-24 to 2021-10-15 | 56 |
| T1I | 11F | Outpatient/Inpatient Rehabilitation Records | | Emory Clinic | 2022-02-09 to 2022-03-28 | 12 |
| T1I | 12F | Medical Source - No MER Available | | Potters House | 2022-01-28 to 2022-04-06 | 1 |
| T1I | 13F | Medical Source - No MER Available | | Medcura Health | 2022-01-06 to 2022-04-06 | 4 |
| T1I | 14F | Emergency Department Records | | Emory Hillandale Hospital | to 2022-02-23 | 27 |
| T1I | 15F | Medical Source - No MER Available | Subsequent to hearing | Emory Decatur Hospital | 2021-03-18 to 2022-05-17 | 2 |
| T1I | 16F | Outpatient/Inpatient Rehabilitation Records | Subsequent to hearing | The Potters House | 2020-07-08 to 2022-05-12 | 489 |