UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| **MICHELLE NOEL CORBIN** ) <br> ) <br> *Plaintiff* ) <br> ) <br> v. ) <br> ) <br> ) <br> **NICHOLAS BROUSSARD,** in his individual ) <br> Capacity as a City of East Point Police Officer, ) <br> **MARGO JESTER,** in her individual ) <br> Capacity as a City of East Point Police Officer ) <br> **BENITO CLERVEAUX,** in his individual ) <br> Capacity as a City of East Point Police Officer ) <br> **CITY OF EAST POINT,** and the ) <br> **CITY OF EAST POINT** ) <br> **POLICE DEPARTMENT** ) <br> ) <br> *Defendants* ) | **Case No.:** |

## INTRODUCTION

1. This cause of action arises out of Plaintiff Michelle Corbin's violent encounter with City of East Point, Georgia police and subsequent unlawful arrest and confinement on March 27, 2021, at the Chick-Fil-A restaurant located at 3410 Camp Creek Parkway, East Point, Georgia at approximately 10:27 p.m.

2. This cause of action is for money damages brought pursuant to 42 U.S.C. 1983 to redress the deprivation under color of state law of Plaintiff's clearly established rights as secured by the Fourth and Fourteenth Amendments to the United States Constitution against (1) Defendants N. Broussard, M. R. Jester, and B. Clerveaux in their respective capacities as duly certified law enforcement officers employed by the City of East Point Police Department, for their respective violations of Plaintiff's right to be free from the use of excessive force, malicious prosecution, false arrest, false

imprisonment and (2) Defendant City of East Point for its unconstitutional policies, customs, and/or practices under Monell and (3) Defendant City of East Point Police Department for its unconstitutional policies, customs, and/or practices.

## JURISDICTION AND VENUE

3. This court has jurisdiction over federal questions pursuant to 28 U.S.C. § 1331, 1343, and 42 U.S.C. § 1983, 1988.

4. Venue is proper in this Court under 28 U.S.C. § 1391(b) because all incidents, events and occurrences giving rise to this action occurred in East Point and because one or more of the Defendants reside within East Point.

## THE PARTIES

5. At all times relevant Plaintiff Corbin was a citizen of the United States and the city of Pine Bluff, state of Arkansas.

6. The City of East Point is and was at all times material hereto a political subdivision of the State of Georgia, organized and existing under and by virtue of the laws of Georgia.

7. The City of East Point Police Department is and was at all times material hereto an East Point agency, providing the vehicle through which the City fulfills its policing functions.

8. At all times relevant Defendant Broussard was a citizen of the United States and the city of East Point, Georgia.

9. Broussard was at all times material hereto employed by the East Point Police Department as a duly appointed and sworn police officer, and was acting in his individual capacity and/or under color of state law, and within the scope of his employment.

10. At all times relevant Defendant Jester was a citizen of the United States and the city of East Point, Georgia.

11. Jester was at all times material hereto employed by the East Point Police Department as a duly appointed and sworn police officer, and was acting in her individual capacity and/or under color of state law, and within the scope of her employment.

12. At all times relevant Defendant Clerveaux was a citizen of the United States and the city of East Point, Georgia.

13. Clerveaux was at all times material hereto employed by the East Point Police Department as a duly appointed and sworn police officer, and was acting in his individual capacity and/or under color of state law, and within the scope of his employment.

## FACTUAL ALLEGATIONS

14. On March 27, 2021, Plaintiff Michelle Thomas Corbin, a resident of Pine Bluff, Arkansas, was visiting family members and exploring business opportunities in the Atlanta, Georgia area.

15. On this date at approximately 9:00 P.M., Plaintiff, a partially disabled veteran who suffered from occasional psychological "Panic attacks", felt the onset of one of the attacks and decided to seek food and drink at a Chick-Fil-A restaurant located at 3410 Camp Creek Parkway, East Point, Georgia.

16. Plaintiff had suffered the attacks for four years. Ms. Corbin suffered major back and hip injuries during her military service and has been diagnosed with post-traumatic stress disorder (PTSD). Even though her panic attacks were significant and were characterized by personal agitation, lack of ability to communicate, and loss of focus, she had been able to mother a son, maintain a full-time job as Director of the Red Cross in her Community and control the attacks through medications, prior to March 27, 2021.

17. When she arrived at the Chick-Fil-A, she guided her car into the second or outside lane of the drive-up window service. When the onset of an attack occurred, Ms. Corbin would eat and take proscribed medications with some form of liquid. For reasons that are not entirely clear, Ms. Corbin did not receive the food and drink she ordered from the restaurant.

18.     As Ms. Corbin waited in her vehicle at the drive-in window, an employee from the restaurant apparently realized that Ms. Corbin required medical attention. The male employee approached Ms. Corbin as she sat in her vehicle and asked her not to attempt to move her car. He stated he would "get her food and get her some help."

19.     Plaintiff took the additional step of using her OnStar Roadside Assistance service to request immediate medical assistance as she waited in her vehicle.

20.     At approximately 10:27 p.m. on March 27, 2021, the Defendant Officers were dispatched to the restaurant in response to a call which allegedly came from the Chick-Fil-A restaurant, remarkably contending Ms. Corbin was refusing to leave the restaurant drive-thru.

21.     Ms. Corbin remained at the restaurant solely due to the representations made to her by the Chick-Fil-A employee.

22.     When the first officers from the East Point Police Department, Defendant Officers Jester and Clerveaux, arrived on the scene, Ms. Corbin assumed they were present to assist her with her medical condition.

23.     During her initial conversations with the Defendant Officers Jester and Clerveaux, Ms. Corbin explained she was from out of town and why she was visiting Atlanta. Plaintiff carefully explained her medical issues involving the panic attack, and provided the names of the four drugs she was taking at the time. She asked for help getting food and drink so she could take her medication. Ms. Corbin also presented her driver's license to the officers.

24.     Because the Officers were generally improperly trained, particularly in the areas of de-escalation of violence and treatment of mentally challenged citizens; worked in a police department that tolerated and enabled violent conduct by officers against citizens; worked in a Police Department that failed to properly discipline officers who were involved in complaints from the public involving excessive force, Officers Jester and Clerveaux made no effort to assist Ms. Corbin in treating her mental crisis by performing the simple act of getting her a small amount of food and something to drink, so she could take her medication.

25.     The attitudes of Officers Jester and Clerveaux were unnecessarily callus, unprofessional and aggressive. When the officers arrived, Ms. Corbin was seated in the driver's seat of her vehicle applying makeup to her face. It was clear she was

undergoing some form of mental crisis. She was unarmed and presented no danger to the officers or the public.

26. Despite the obvious need for calmness, professionalism and medical attention, Defendant Officers Jester, and Clerveaux, almost immediately began to demand that Ms. Corbin get out of her vehicle, roll down her windows and unlock her doors so she could be arrested and detained.

27. Plaintiff responded to the aggressive approach from the two officers by asking them to leave her alone while she awaited private assistance to solve her medical problems.

28. In short order, Defendant Sergeant Broussard, an officer with a history of receiving complaints from the public for using excessive force, and who the City of East Point and the East Point Police Department were aware of Broussard's diagnosed anger management issues, arrived on the scene and approached the front of Plaintiff's vehicle. He could clearly see Plaintiff sitting in the driver's seat of her vehicle, placing makeup on her face.

29. Defendant's own body cam videos reveal that Plaintiff never made any terroristic or violent threats towards Officer Jester or Clerveaux. Despite this fact, Officer Jester maliciously informs Sergeant Broussard that Plaintiff said "(she) going to kill us and all kind of shit". This statement was untrue.

30. Sergeant Broussard after receiving this information asked no questions about a warrant, probable cause, a magistrate judge, or any legal justification for arresting Plaintiff and damaging her vehicle. He never asked whether Plaintiff presented any danger to the officers or the public. He simply reacted with what could best be described as rage.

31. Defendant Broussard instructed Defendant Officers Jester and Clerveaux to take their ASP batons and break the windows of Ms. Corbin's car. He is heard saying to Officer Jester on at least three occasions to swing her ASP baton "Like you mean it", "Like a baseball bat."

32. Defendant Broussard then unleashes a display of malicious rage when he strikes the front window where Plaintiff is seating thirty times, with his ASP baton. Glass from the window flew at Ms. Corbin from each blow, flying into her face, arm, legs and body.

5

33. While Ms. Corbin is screaming for her mother and from the pain of the flying glass, Ms. Corbin is forcibly handcuffed and pulled from her vehicle and positioned on the concrete driveway at the restaurant.

34. Defendant Broussard, based upon his lack of training and the lack of adequate standard police procedures established by the City of East Point Police Department and the City of East Point, at the instance Plaintiff screams and cries for her mother, turns off the audio component of his body worn camera. This action by Defendant Broussard prevents his body worn camera from recording important evidence of the violent, illegal arrest of Plaintiff and her instantaneous expressions of the pain and agony caused by the unreasonable force utilized by the Defendant Officers.

35. The three officers for no apparent reason shattered the windows of Plaintiff's vehicle. Even though several more appropriate alternatives were available to them like a request for medical attention, the delivery of food and drink to Ms. Corbin or a request to the OnStar Roadside service to remotely open the doors of the vehicle, the Defendant officers proceeded to smash the windows of Ms. Corbin's vehicle, not for the purpose of illegally arresting her, but apparently to teach her some form of police justice.

36. After Plaintiff was pulled from her vehicle without committing any crime, without probable cause, without a warrant and in clear violation of the Fourteenth Amendment and 42 U.S.C.§ 1983, she was handcuffed and placed on the concrete driveway of the restaurant by Defendants.

37. Ms. Corbin was then dragged along the concrete driveway of the restaurant for 5 to 10 yards by Sergeant Broussard and Officer Clerveaux to the police vehicle driven by Officer Jester. Plaintiff was bleeding from several areas of her body at the time of this illegal and unconstitutional conduct.

38. Plaintiff was transported to the East Point Detention Center where she was held for several hours before being transferred to the Fulton County Jail located at 901 Rice Street, Atlanta, Georgia.

39. Many of the detention duties performed at the detention center were conducted by Defendant Officer Jester, even though she was not a detention officer. Officer Jester continued to display a confrontational manner after it was clear Plaintiff suffered from a medical crisis.

40. At no time during the illegal arrest and detention of Plaintiff did the defendants mention any criminal charges lodged against Ms. Corbin.

41. Upon arrival at the Fulton County Jail, East Point Police officials were questioned regarding the physical and emotional condition of Ms. Corbin by Fulton County Jail intake officers. Ms. Corbin was still bleeding at the time of her arrival at the jail and in obvious emotional distress.

42. After a discussion between the Fulton County Jail Officials and the East Point Officers, Ms. Corbin was accepted at the Fulton County Jail during the early hours of March 28, 2021. On this same date Ms. Corbin was taken to Grady Hospital in Atlanta for treatment of her injuries and her mental crisis.

43. When Ms. Corbin was returned to the Fulton County Jail, she was placed in a single cell in the section of the jail reserved for inmates with psychological issues.

44. On March 31, 2021, Plaintiff was released on bond from the Fulton County Jail.

45. On January 25, 2022, Plaintiff was indicted by a Fulton County Grand Jury based upon a one-sided false presentation by East Point Police Officers for the offenses of

    (a) Obstruction of Law Enforcement Officers by Use of Threats of Violence O.C.G.A. § 16-10-24(B)
    (b) Terroristic Threats O.C.G.A. §16-11-37
    (c) Criminal Trespass O.C.G.A. §16-11-37
    (d) Battery O.C.G.A. §16-5-23.1

46. On March 28, 2022, after a careful review of this matter by a Fulton County Assistant District Attorney, the case against Plaintiff was dismissed. The order of dismissal stated, "after speaking with the officers involved in this case... the above referenced case is dismissed and there will be no further action from the state."

47. As a result of the injuries caused by the Defendant, the Plaintiff received injuries from flying glass, being dragged on concrete with glass attached to her body, and various bruises and tears from the rough and aggressive physical treatment of Plaintiff.

7

48. As a result of the injuries and the attack of Plaintiff while she was seated in her vehicle, Plaintiff has suffered severe mental anguish and permanent psychological scarring from this incident.

49. As a result of the injuries caused by Defendants Jester, Clerveaux and Sergeant Broussard, Plaintiff has developed a permanent unnatural fear of law enforcement officers and possible confrontations with law enforcement officers that has contributed to her inability to maintain or acquire employment.

50. The Chick-Fil-A Restaurants located at 3410 Camp Creek Parkway, has never come forward and lodged any charges against Plaintiff.

51. Defendant Officers Jester, Clerveaux and Sergeant Broussard all realized they made no effort to investigate this incident before they arrested and detained Plaintiff.

52. The Defendants also realized Ms. Corbin had committed no crime, was suffering an emotional crisis, and was seeking medical assistance for this condition. Because of this fact Defendants decided to fabricate a story about Plaintiff's conduct to support their unreasonable, illegal, and unconstitutional conduct.

53. Ms. Corbin, a visitor to the Northern District, has suffered and continues to suffer, as a result of the actions of the defendants.

54. As a direct result and proximate result of the wrongful acts of the Defendants, Ms. Corbin has suffered immense harm and sustained damages.

## COUNT 1- 42 U.S.C. § 1983 – Fourth Amendment Violations

55. Plaintiff incorporates and re-alleges all preceding paragraphs as though fully pleaded herein.

56. The conduct by the officers identified in this count and described herein constituted excessive force in violation of the Fourth Amendment of the United States Constitution and clearly established law.

57. At all material times, Defendant Broussard, Jester, and Clerveaux were acting under color of state law, as agents of East Point, Georgia, and within the

scope of their employment and authority as duly certified law enforcement officers of the city of East Point.

58. Plaintiff Corbin had a constitutionally protected right under the Georgia Constitution and the United States Constitution to be free from and maintain her bodily integrity against unreasonable assaults against his person and excessive force.

59. Defendant Officers violated Plaintiff's rights under the state and federal Constitutions by using unjustified and unreasonable force against her as she sat in her car and did not resist arrest.

60. Defendant Officers conduct unlawfully subjected Plaintiff to excessive, unreasonable, and unnecessary physical force.

61. At all material times, Broussard, Jester, and Clerveaux had no reason to believe that Plaintiff Corbin was armed or dangerous.

62. At all material times, Broussard did not have a reasonable fear of imminent bodily harm when he broke Plaintiff Corbin's car windows, grabbed her by her wrist and arm and violently dragged her out of the car and threw her onto the ground, nor did he have a reasonable belief that any other person was in danger of imminent bodily danger from Plaintiff Corbin.

63. At all material times, Clerveaux did not have a reasonable fear of imminent bodily harm when he broke Plaintiff Corbin's car windows and pulled Plaintiff Corbin's arms behind her, nor did he have a reasonable belief that any other person was in danger of imminent bodily danger from Plaintiff Corbin.

64. Every reasonable officer would have known that using force against a compliant, unarmed individual who is not resisting arrest constitutes excessive force in violation of the Fourth Amendment.

65. Broussard, Jester, and Clerveaux's use of force in using their department issued ASP batons to bash in Plaintiff Corbin's car windows and forcibly drag her from the inside of the car and onto the ground was objectively unreasonable and violated clearly established law.

66. As a direct and proximate result of Broussard, Jester, and Clerveaux's unjustified, excessive, and illegal use of force, Plaintiff Corbin experienced conscious pain and suffering.

67. None of the Defendant Officers ever had a reasonable fear of imminent bodily harm, nor did they have a reasonable belief that any other person was in danger of imminent bodily danger from Plaintiff Corbin at any point in time.

68. At all times of this incident the Defendants, Officers Broussard, Jester and Clerveaux were employed by the City of East Point's Police Department. It is clear from the conduct of the officers that the police department has failed to train its officers properly to deescalate confrontations with citizens so that such confrontations will not result in injuries to citizens or officers.

69. It is also clear from the before described facts and circumstances that the East Point Police Department has failed to properly train its officers and employees to address situations where citizens are psychologically challenged and are undergoing temporary mental crises, without the use of excessive force by Police officers.

70. Based upon the continued employment of Defendant Broussard, who has a long history of complaints from citizens and family members for excessive use of force, it is clear the police department has not established the proper training, officer discipline or appropriate policies and standard operating procedures to correct the problem of officer use of excessive force against innocent citizens.

71. The City of East Point is the entity that has created and developed the City of East Point Police Department. The city has been the subject of many complaints from the public involving the use of excessive force by Police officers. None of the incidents are more well-known than the case of State v. Eberhart 307 Ga. 254 (2019) wherein a City of East Point Sergeant was convicted for murder in 2016 for the death of a citizen who was handcuffed and tasered more than 14 times as he laid compliant in a shallow creek.

72. Despite the number of complaints brought by the public, cases like Eberhart and situations like Defendant Broussard in this case, who was officially diagnosed with anger management issues, the City of East Point has failed to enact appropriate policies, training and employee screening methods designed to stop the use of excessive force by East Point Officers.

73. Because of the failures of the East Point Police Department and the City of East Point, Plaintiff has been harmed and harmed permanently by Defendants violations of 42 U.S.C. §1983 and the Fourteenth Amendment.

## COUNT 2 – 42 U.S.C. § 1983 – Monell Liability

74. Plaintiff hereby incorporates and re-alleges all preceding paragraphs as though fully pleaded herein.

75. The Mayor, the City Council, and the Police Chief had final policymaking authority with regard to establishing written policies and training programs governing the conduct of East Point police Department officers performing policing on behalf of the City.

76. The Mayor, the City Council, and the Police Chief established and/or approved of East Point police Department's written policies and training governing the conduct of East Point Police Department officers performing policing functions.

77. The written policies and training established and/or approved by the Mayor, the City Council, and the Police Chief constitute the official policy of the City and were the moving force behind and caused Plaintiff's injuries.

78. East Point, with deliberate indifference to the rights of arrestees, detainees, and the like, continued to employee Broussard despite knowledge of their repeated unconstitutional, unlawful, or other improper conduct.

79. East Point had the power to terminate or appropriately discipline Broussard for prior incidents but failed to do so despite the City's knowledge of a pattern of complaints regarding excessive force.

80. East Point's failure to terminate or properly discipline Broussard is part of its larger custom, policy or practice of failing to supervise, terminate, or properly discipline its officers for unconstitutional, unlawful, or otherwise improper conduct, and thereby encouraged Broussard to continue engaging in unlawful acts towards arrestees, such as Plaintiff Corbin.

81. The City, acting by and through its Mayor and/or other policymakers, had knowledge of East Point's unconstitutional patterns and practices and was deliberately indifferent to and/or tacitly authorized the same.

82. As a direct and proximate result of the foregoing policies, failures, practices, or customs, Defendant Officers used excessive force in incident with Plaintiff Corbin and she suffered all damages complained of herein.

### COUNT 3 – 42 U.S.C. § 1983 – Canton Liability

83. Plaintiff hereby incorporated and re-alleges all preceding paragraphs as though fully pleaded herein.

84. East Point failed to properly train or modify its training to Defendant Officers and its other officers, including but not limited to, matters related to the reasonable and appropriate use of force during such arrests, and intervention in the excessive use of force by fellow officers.

85. Effectuating an arrest, using force to effectuate an arrest, and intervening in the use of force is a usual and recurring situation with which East Point law enforcement officers and other agents encounter on a regular basis.

86. As such, East Point was aware of a need for more and different training. East Point specifically knew that its officers needed training regarding the use of prone restraint and was required to provide its officers with such training.

87. East Point was deliberately indifferent to and exhibited reckless disregard with respect to the potential violation of constitutional rights.

88. The failure to train and/or to appropriately modify training constituted official East Point policies, practices, or customs.

89. East Point's failure to train and/or to modify training was behind the acts the Defendant Officers made toward Plaintiff Corbin.

90. As a direct and proximate result of East Point's acts and omissions, Plaintiff Corbin suffered injuries and experienced pain and suffering.

### COUNT 4 – 42 U.S.C. § 1983 - Malicious Prosecution

91. Plaintiff hereby incorporates and re-alleges all preceding paragraphs as though fully pleaded herein.

92. Defendants pursued prosecution through an accusation for criminal offenses that were instigated without probable cause and with malice. The prosecution was terminated favorable to Plaintiff, and she was damaged as a result of the Defendant's intentional misconduct towards the Plaintiff.

93. Defendants failed to show any probable cause to the charges that were pursued against Plaintiff.

94. Plaintiff successfully defended herself against the charges and the case against her was dismissed.

95. Defendants filing for criminal charges against plaintiff was malicious and brought by Defendants without any cause to believe that any crime had been committed.

96. As a direct and proximate result of the aforementioned intentional and malicious acts and omissions of Defendants, Plaintiff was falsely arrested and has suffered significant economic damages, has suffered humiliation and emotional distress, and suffered physical injuries.

## COUNT 5 – False Arrest

97. Plaintiff hereby incorporates and re-alleges all preceding paragraphs as though fully pleaded herein.

98. Under O.C.G.A. § 51-7-1, Defendants actions in causing the unlawful seizure, detention, and restraint of Plaintiff was undertaken and performed without probable cause because the above acts of Defendants and circumstances are such as to satisfy a reasonable person that Defendants had no grounds for proceeding to arrest Plaintiff.

99. Based on the information available to Defendants, the seizure, detention and restraint of Plaintiff was made maliciously.

100. Plaintiff's arrest constituted a wanton abuse of power under color of authority.

101. As a direct and proximate result of the aforementioned intentional and malicious acts and omissions of Defendants, Plaintiff was falsely arrested and has

suffered significant economic damages, has suffered humiliation and emotional distress, and suffered physical injuries.

## COUNT 6 – False Imprisonment

102. Plaintiff hereby incorporates and re-alleges all preceding paragraphs as though fully pleaded herein.

103. Defendants caused Plaintiff to be seized and detained against her will when she was innocent of any crime.

104. Under O.C.G.A. 51-7-20, Defendants denied Plaintiff of her personal liberty when they unlawfully and falsely seized, detained, and forcibly restrained against her will.

105. Defendants, without probable cause, placed Plaintiff in the East Point City Jail.

106. As a direct and proximate result of the aforementioned intentional and malicious acts of Defendants, Plaintiff was falsely imprisoned and has suffered significant economic damages, has suffered humiliation and emotional distress, and physical injuries.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, MICHELLE NOEL CORBIN, demands.

a. Full and fair compensatory damages in the amount to be determined by a jury.
b. Punitive damages in an amount to be determined by a jury.
c. Reasonable attorney's fee and costs of this action, and
d. Any such other relief appears just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury of all triable issues, per Fed. R. Civ., p.38 (b)

Respectfully Submitted

_____
Paul L. Howard, Jr.
920 DANNON VIEW SW
SUITE 3202
ATLANTA, GEORGIA 30331
TELEPHONE: 404-855-6263
EMAIL: paul@thepaulhowardlawfirm.com

Dated: March 27, 2023

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of March 2023. I served all parties having appeared in this matter with a copy of the foregoing document, by filing same with the Clerk of Court using the CM/ECF system which will send notification of such filing electronically to counsel of record for all parties.


*[signature]*

Paul Howard, Jr
920 DANNON VIEW SW
SUITE 3202
ATLANTA, GEORGIA 30331
TELEPHONE: 404-855-6263
EMAIL: paul@thepaulhowardlawfirm.com