**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

_____

In re Mbeti Ndonga Subpoena                    Miscellaneous Action No. _____

_____

## NON-PARTY MBETI NDONGA'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY AND TO QUASH DEPOSITION SUBPOENA OR, IN THE ALTERNATIVE, TO MODIFY

Pursuant to Federal Rules of Civil Procedure 45(d)(3) and 26(b) & (c), Mbeti Ndonga, by and through her attorneys, submits this Memorandum of Law in Support of Her Motion to Stay and to Quash Deposition Subpoena or, in the Alternative, to Modify ("Motion to Quash"). The non-party deposition subpoena to Ndonga ("Ndonga subpoena") was issued by Mahendra Amin in *Amin v. NBCUniversal Media, LLC*, Case No. 5:21-CV-00056-LGW-BWC (S.D. Ga.) (hereinafter *Amin v. NBCU*). The subpoena is returnable on April 4, 2023 in Atlanta, Georgia. *See* Ex. A, Copy of Ndonga Subpoena. Efforts have been made to resolve the matter of this subpoena with Amin's counsel prior to filing this motion, including -- without waiving any Rule 45 or Rule 26 arguments -- offering to provide a declaration from Ndonga responsive to limited questions in lieu of deposition. These efforts to avoid motion practice were unsuccessful.

Amin alleges that employees of NBCUniversal Media, LLC ("NBCU") made defamatory statements ("Challenged Statements") about him in their September 15-17, 2020 television broadcasts. The Challenged Statements concern allegations that Amin performed unwanted hysterectomies and other gynecological surgeries on women detained by U.S. Immigration Customs and Enforcement ("ICE") at the Irwin County Detention Center ("ICDC") in Ocilla, Georgia. *See* Ex B, Amin's Amended Complaint filed May 3, 2022 (ECF 49). Amin's Amended Complaint does not refer to Ndonga, and none of the Challenged Statements identified therein refer to Ndonga. *See* Ex. C, Chart of Alleged Defamatory Statements Redacted to Reflect Surviving Claims.[1]

Ndonga and Amin are both parties in the related putative class action *Oldaker v. Giles*, Case No. 7:20-cv-00224-WLS-MSH (M.D. Ga.) (hereinafter *Oldaker*). Ndonga is a named plaintiff in that case, while Amin is a defendant. The *Oldaker* Plaintiffs allege claims arising out of medical abuse by Amin and the

---

[1] Ex. C was filed January 1, 2022 by NBCU in connection with its Motion for Judgment on the Pleadings setting forth the Challenged Statements identified in Amin's First Amended Complaint. *See Amin v. NBCU*, ECF 24-1. Many of these statements were dismissed as non-defamatory as a matter of law. *See Amin v. NBCU*, 2022 WL 16964770, at *19-21 (S.D. Ga. Nov. 16, 2022). Those have been redacted from Ex. C, leaving only those statements remaining at issue.

retaliation they suffered from ICE and ICDC when they tried to speak out.[2] *See* Ex. D, *Oldaker* Second Amended Complaint, filed Dec. 1, 2022.

The Ndonga subpoena should be quashed for several reasons. First, the subpoena was not personally served on Ndonga, but was given to her mother Lucy Ndonga on March 14, 2023. *See* Ex. E, Ndonga Aff., dated March 27, 2023. In the Eleventh Circuit, the majority of courts require personal service on a compulsory non-party witness like Ndonga.

Second, all discovery in *Oldaker* is currently stayed due to the pendency of ongoing federal investigations of the underlying events. *See* Ex. F, Order of J. Sands, filed Feb. 1, 2022 (ECF 187). Requiring Ndonga to comply with Amin's subpoena would violate this stay. If Defendant Amin is permitted to depose Plaintiff Ndonga, that would provide him backdoor discovery in *Oldaker* during a period in which no other parties are being allowed to take discovery. For this reason alone, the Ndonga subpoena should be quashed.

Third, Ndonga's testimony is not relevant to Amin's defamation claims. These claims turn on what information NBCU possessed at the time they made the Challenged Statements, and, if any of the Statements were false, whether NBCU

---

[2] *See* Sen. Jon Ossoff, *Opening Statement,* U.S. Senate Comm. on Homeland Sec. & Gov't Affs., Medical Mistreatment of Women In ICE Detention, at 1 (Nov. 15, 2022), https://www.hsgac.senate.gov/subcommittees/investigations/hearings/medical-mistreatment-of-women-in-ice-detention/.

knew them to be false or acted with reckless disregard to whether they were false. *See Amin v. NBCU*, 2022 WL 16964770, at *21 (S.D. Ga. Nov. 16, 2022) (holding that Amin plausibly alleged actual malice -- *i.e.*, knowing or reckless false statements -- with respect to a subset of the Challenged Statements, and dismissing the rest). None of the Challenged Statements reference Ndonga and she has no information that would be relevant to proving NBCU knowingly or recklessly made false statements about Amin. Ndonga was neither a source for NBCU's Challenged Statements, nor did any information concerning Ndonga put NBCU on notice that their Challenged Statements were false or likely to be false. This renders her testimony of zero probative value in Amin's defamation case, making her deposition unduly burdensome under both Rule 45(d)(3) and Rule 26(b) & (c).

Amin, along with the other *Oldaker* Defendants, will clearly have the opportunity to depose Ndonga with respect to her claims against him in that case. Accordingly, being deposed by Amin now would impose additional undue burden on Ndonga by subjecting her to multiple depositions by the same adversary (Amin) and on the same subject matter (the treatment he provided). This undue burden, coupled with lack of relevance and violation of the *Oldaker* discovery stay, provides more than ample basis for quashing the Ndonga subpoena under Rule 45, or granting a protective order under Rule 26(b) & (c) prohibiting the deposition.

However, if this motion to quash or prohibit Ndonga's non-party deposition is denied, she alternatively seeks modification of the subpoena under both Rule 45(d)(3)(C) and Rule 26 (b) & (c), requiring either a written declaration or deposition on written questions narrowly tailored to the subject matter of the Challenged Statements still at issue by NBCU. *See* Ex. C.

Finally, while this motion is pending, Ndonga seeks a stay of the subpoena's April 4, 2023 return date. This is necessary to prevent the burden and harm that will result if Ndonga is required to appear for deposition before the instant motion has been fully briefed and resolved.

## RELEVANT FACTS & PROCEDURAL HISTORY

### I.   Stay of Discovery in *Oldaker*

Ndonga and the other plaintiffs in *Oldaker* filed their Consolidated Amended Class Action Complaint on December 21, 2020. ECF 54 & 56. Plaintiffs' complaint alleged medical abuse by Defendant Amin, with the knowledge and participation of other Defendants, including ICE and ICDC. None of the Plaintiffs allege Amin performed a hysterectomy on them. Pursuant to the *Oldaker* Federal Defendants' requests, the Middle District of Georgia has repeatedly stayed discovery in the case. ECF 168, 178 & 187. In the currently operative Stay Order, the court notes:

> Federal Respondents' reasons for requesting an extension of the stay are compelling: the claims in this case and the ongoing criminal investigation concern the same alleged violations, the evidence being gathered in the investigation will likely overlap with the discovery that will be sought in this case, and the Federal respondents are still responding to requests from Congressional committees regarding the allegations at issue in this case.

Ex. F, ECF 187 at 2. The court lifted the stay of the case only to allow Plaintiffs to proceed with amending their complaint and any motions to dismiss to be resolved. *Id.* at 2–3. However, the court specifically ordered that "[d]iscovery in this case remains STAYED until further order of the court for good cause." *Id.* at 3 (emphasis in original). Thus far, no discovery has taken place.

## II.   *Amin v. NBCU* **Defamation Action**

On September 9, 2021, Amin filed a lawsuit for defamation against NBCU. *See Amin v. NBCU*, ECF 1. On May 3, 2022, Amin amended his complaint. Ex. B, ECF 49. The Amended Complaint alleges publication of false and defamatory statements about Defendant Amin in five MSNBC broadcasts between September 15, 2020 and September 17, 2020. *Id.* ¶¶ 2, 74–89. Many of the alleged defamatory statements concern reporting that Amin was performing hysterectomies and other surgeries on women detained at ICDC. *See id.* The Amended Complaint does not reference any of the *Oldaker* Plaintiffs.

The first MSNBC broadcast at issue aired an interview with Dawn Wooten, the former ICDC nurse who filed a whistleblower complaint about medical abuse

at the facility. ECF 51-2 at 28–29. MSNBC's reporter mentioned that she spoke with "four lawyers who represented clients in [ICDC] over the past three years." *Id.* at 28. None of the *Oldaker* Plaintiffs were interviewed or named in this broadcast. In the second broadcast at issue, MSBNC aired a longer interview with Dawn Wooten and her attorney. ECF 51-3 at 12–15. During the segment, MSNBC also referenced that they spoke with a lawyer who represented two women at that facility who "told NBC News that indeed two of his clients received hysterectomies they believe may have been unnecessary" and "another attorney who represents two different women who claim they also had unnecessary hysterectomies while detained at this facility." *Id.* at 12. None of the *Oldaker* Plaintiffs were interviewed or named in this broadcast.

During the third broadcast at issue, MSNBC aired a brief segment of its interview with Dawn Wooten, ECF 51-4 at 13, an interview with an anonymous woman detained at ICDC, *id.* at 14, and an interview with Congresswoman Sheila Jackson Lee regarding the story of *Oldaker* Plaintiff Pauline Binam. *Id.* at 16–18. Amin's Amended Complaint does not challenge any statements made during the discussion of Plaintiff Binam's story in this broadcast. ECF 49 ¶ 81. No other *Oldaker* Plaintiffs were named or interviewed in this broadcast. In the fourth broadcast at issue, MSNBC again aired a segment of its interview with Dawn Wooten. ECF 51-5 at 6–7. MSNBC noted that they had spoken with several

lawyers who had represented women detained at ICDC to corroborate the allegations in the whistleblower complaint. *Id.* at 7–9. None of the *Oldaker* Plaintiffs were interviewed or named in this broadcast. During the fifth broadcast at issue, MSNBC re-aired their interview from the third broadcast with an anonymous woman detained at ICDC. ECF 51-6 at 14. None of the Plaintiffs in this case were interviewed or named in this broadcast.

On November 16, 2022, the Southern District of Georgia granted in part and denied in part NBCU's Motion for Judgment on the Pleadings. Specifically, the Court dismissed Amin's claims of defamation with respect to statements made during the third broadcast, which was the only broadcast involving any *Oldaker* Plaintiff. *See Amin v. NBCU*, 2022 WL 16964770, at *18. The court also granted NBCU's motion as to certain statements that are opinion, including all of the statements at issue in the fifth broadcast made by the anonymous woman interviewed by MSNBC. *Id.* at *19. As a result, the only Challenged Statements remaining at issue in Amin's defamation case concern allegations in Dawn Wooten's whistleblower complaint, statements made by Wooten during her interview with MSNBC, and certain statements made to reporters by lawyers who represented detained women at ICDC. *See* Ex. C.

8

III.    **Third-Party Deposition Subpoena to Ndonga**

In March 2022, Amin's defamation counsel informed Plaintiffs' counsel in *Oldaker* that Amin intended to depose seven *Oldaker* Plaintiffs, including Mbeti Ndonga. In December 2022, *Oldaker* Plaintiffs' counsel expressed concern about the burden this would impose given that these Plaintiffs have very limited, if any, information relevant to the issues in *Amin v. NBCU*. In an attempt to avoid time-consuming and costly litigation, as well as unnecessary burden on the courts, in having to oppose seven non-party subpoenas, Plaintiffs' counsel in *Oldaker* suggested depositions by a limited number of written questions pursuant to FRCP 31. Counsel for Amin agreed to consider this proposal. In February 2023, Amin's counsel suggested that the seven Plaintiffs prepare declarations to answer questions, but reserved the right to request deposition testimony as follow up to the declarations. Counsel for Plaintiffs did not agree to allow depositions on follow-up questions, but proposed providing one additional declaration in response to follow-ups. NBCU's counsel, who have not subpoenaed Plaintiffs, indicated they would be amenable to accepting declarations. But Amin's Counsel did not agree and indicated they would subpoena the Plaintiffs.

On March 14, 2023, *Oldaker* Plaintiff Mbeti Ndgona's mother Lucy Ndonga was given a third-party subpoena to Ndonga, returnable on April 4, 2023, in Atlanta, Georgia. Undersigned counsel objected to improper service and conferred

with counsel for Amin to see if his position had changed regarding accepting

declarations in lieu of deposition, and, if not, asking if Amin would consent to a

request to stay the subpoena pending resolution of a motion to quash. Amin does

not consent.

## LEGAL STANDARD

Under Rule 45(d)(3)(A), a court must quash a subpoena that subjects a

person to undue burden. *See Jordan v. Comm'r, Miss. Dep't Corr.*, 947 F.3d 1322,

1337 (11th Cir. 2020); *Precision Aviation Grp., Inc. v. Prime Indus., Inc.*, No.

1:16-CV-3182-TCB, 2017 WL 2903361, at *2 (N.D. Ga. June 16, 2017). A

subpoena seeking irrelevant information constitutes an undue burden. *See*

*Precision Aviation*, 2017 WL 2903361, at *2 (a subpoena may "be quashed if it

calls for clearly irrelevant matter"). Moreover, where private information such as

medical treatment is at issue, "federal courts have recognized that privacy interests

and confidentiality concerns can factor into a decision whether to quash a

subpoena under Rule 45, even though the information requested by the subpoena is

not subject to a federal evidentiary privilege." *Jordan*, 947 F.3d at 1336. *See also*

*Castleberry v. Camden Co.*, 331 F.R.D. 559, 563 (S.D. Ga. 2019) ("The burden on

the non-party is particularly great when the party issuing the subpoena seeks

private information.") (internal quotations and citations omitted). Further, an

unduly burdensome subpoena will only be modified -- rather than quashed – if the

serving party "shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship." FRCP 45(d)(3)(C).

Rule 26(c) provides that upon showing of good cause by the movant:

[A] court may issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (A) forbidding the disclosure or discovery; (B) specifying terms ...; (C) prescribing a discovery method other than the one selected by the party seeking discovery; (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters.

FRCP 26(c)(1); *see also Regions Bank v. Legal Outsource PA*, No. 214CV476FTM29MRM, 2016 WL 11644385, at *2 (M.D. Fla. May 18, 2016); *Stephenson v. Atrium Health, Inc.*, No. 3:21-CV-103-FDW-DCK, 2021 WL 5407856, at *2, *4 (W.D.N.C. Nov. 18, 2021) (granting motion to quash and for a protective order by precluding service of non-party subpoenas).

## ARGUMENT

### I.   Ndonga Was Not Personally Served

Mbeti Ndonga was not personally served with the subpoena, as confirmed by her affidavit. *See* Ex. E, Ndonga Aff., dated March 27, 2023.  On the evening of March 14, 2023, a process server handed the subpoena to Lucy Ndonga, Mbeti Ndonga's mother. In the Eleventh Circuit, personal service of a subpoena is required to comply with Federal Rule of Civil Procedure 45(b)(1). *See* FRCP 45(b)(1) ("Serving a subpoena requires delivering a copy to the named person . .

."); *Green v. Pickens Cty. Sch. Sys.*, No. 2:19-CV-8, 2021 WL 2559453, at *13 (N.D. Ga. Apr. 26, 2021) ("[T]he majority position of courts in this circuit is that personal service is required" to satisfy Rule 45 and collecting cases); *Lachney v. Target Corp.*, No. 1:09-CV-700, 2009 WL 10698747, at *1 (N.D. Ga. Mar. 23, 2003) (noting that the "[a]uthority in the Eleventh Circuit . . . suggests that personal service on the subpoenaed witness is required"); *see also Wright & Miller: Federal Practice & Procedure* § 2545 (2016) ("The longstanding interpretation of Rule 45 has been that personal service is required.").

As the Court in *Green* explained, "under the Federal Rules, compulsory process may be served upon an unwilling witness only in person." 2021 WL 2559453, at *16 (emphasis added) (quoting *FTC v. Compagnie de Saint-Gobain-Pont-A-Mousson*, 636 F.2d 1300, 1313 (D.C. Cir. 1980)). Courts faced with similar circumstances have granted motions to quash subpoenas where, as here, only a single unsuccessful attempt was made to effectuate personal service. *See, e.g.*, *Du Preez v. Banis*, 2015 WL 13567129 (D. Haw. 2015) (quashing subpoena where personal service had not been effectuated and defendant only attempted service once); *Fiorentino v. Cabot Oil & Gas Corp.*, 2012 WL 12861600 (M.D. Pa. 2012) (quashing subpoenas where not personally served and only one attempt had been made to serve each non-party witness). Since Ndonga was not personally served

12

with the subpoena, and there was only one unsuccessful attempt at service, the
subpoena should be quashed.

## II.     Ndonga's Testimony is Not Relevant to Amin's Defamation Claims

The only Challenged Statements remaining at issue in Amin's defamation
action concern allegations in Dawn Wooten's whistleblower complaint, statements
made by Wooten during her interview with MSNBC, and certain statements made
to reporters by lawyers who represented detained women at ICDC. *See* Ex. C.
These remaining Challenged Statements are all subject to Georgia's state law
"public interest privilege" because they "were made in connection to allegations of
severe mistreatment of detainees, which is 'an issue of public interest or concern.'"
2022 WL 16964770, at *3, *21. To overcome this privilege, Amin must show that
these remaining Challenged Statements, shown in Ex. B, were made with actual
malice. *See id*. at *8. To show actual malice, a defamation plaintiff must offer
"clear and convincing proof that the defamatory falsehood was made with
knowledge of its falsity or with reckless disregard for the truth." *Gertz v. Robert
Welch, Inc.*, 418 U.S. 323, 342 (1974). *Accord ACLU v. Zeh*, 864 S.E.2d 422, 428
(Ga. Sup. Ct. 2021). This means that, even if Amin could prove the Challenged
Statements were false, he must then prove that NBCU knew the statements were
false or had notice that they likely were false. *See Zeh*, 864 S.E.2d at 439

("Reckless disregard requires clear and convincing proof that a defendant was aware of the likelihood he was circulating false information.").

Ndonga's testimony would be irrelevant to whether the remaining Challenged Statements were false or made with actual malice. Of the 27 Challenged Statements still at issue, 23 relate to alleged hysterectomies or removal of other reproductive organs and 4 concern unspecified non-consensual procedures or physical roughness by Amin. *See* Ex. B. Ndonga did not undergo a hysterectomy by Amin. Her testimony on this or any other point about his treatment of her is irrelevant for purposes of proving the alleged falsity of the Challenged Statements. Amin has his personal knowledge of Ndonga's treatment and his medical records of this treatment. He has no need for Ndonga's testimony to establish what took place.

Moreover, to the best of the knowledge of undersigned counsel, neither Ndonga nor any person acting on her behalf communicated with NBCU, and Ndonga made no public statements about Amin, at the time of NBCU's September 15-17, 2020 broadcasts. Thus, NBCU could not have relied on information from or about Ndonga in making any of the Challenged Statements, nor did any communications by Ndonga or anyone acting on her behalf put NBCU on notice that any of the Challenged Statements were false, or likely to be so. Ndonga's testimony is therefore irrelevant to Amin's defamation claims with respect to either

falsity or actual malice. *See, e.g., Sheindlin v. Brady*, No. 1:21cv1124, 2021 WL 2075483, at *3-5 (S.D.N.Y. May 24, 2021) (quashing nonparty deposition subpoenas in defamation case because defendant failed to show that the information he sought was relevant or necessary to the claims or defenses). As Amin's subpoena seeks irrelevant testimony from Ndonga, it creates an "undue burden" requiring that her motion to quash be granted. *See Zorn v. Principal Life Ins. Co.*, No. CV 609-081, 2010 WL 3282982, at *2 (S.D. Ga. Aug. 18, 2010) (noting implicit relevancy ground for quashing a subpoena under Rule 45 because producing irrelevant information "can obviously constitute an undue burden").

Demanding irrelevant testimony from Ndonga likewise warrants a protective order pursuant to Rule 26(c), prohibiting her non-party deposition. *See Collins-Williams v. Contour Eastwyck LLC*, No. 1:20-CV-03129-CAP, 2021 WL 2476470, at *3 (N.D. Ga. May 14, 2021) (noting that court may construe a motion to quash based on Rule 26 grounds, such as relevance, as a motion for a protective order under Rule 26(c)); *Sun Capital Partners, Inc. v. Twin City Fire Ins. Co.*, 303 F.R.D. 673, 676 (S.D. Fla. 2014) (noting that the court may grant protective order "if a subpoena served on a third party requests irrelevant information"); *see also Wachovia Ins. Servs., Inc. v. Paddison*, No. 406CV083, 2006 WL 8435309, at *19 (S.D. Ga. July 18, 2006) ("the court may . . . deem a motion to quash as a motion for a protective order under Rule 26(c).").

### III.   The Subpoena Imposes Undue Burden on Ndonga and Violates Existing Discovery Stay in *Oldaker*

In the Eleventh Circuit, the "undue burden analysis requires the court to balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it." *Jordan*, 947 F.3d at 1337 (internal quotations and citations omitted). Courts must weigh "the relevance of the information requested to the underlying litigation and the burden that would be imposed by producing it." *Id.* (internal quotations and citations omitted). "The status of the subpoena recipient as a non-party is also a factor that can weigh against disclosure in the undue burden inquiry." *Id.; see also Va. Dep't Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) (noting that where the subpoena is directed to a non-party, "courts must give the recipient's nonparty status special weight, leading to an even more demanding and sensitive inquiry than the one governing discovery generally") (internal quotations omitted). Here, any benefit of Ndonga's testimony is theoretical and extremely marginal at best. The burden of compelling her to attend a deposition to discuss deeply personal medical information in a case in which she is a non-party vastly outweighs any purported benefit. *See Castleberry*, 331 F.R.D. at 563.

For discovery to have a benefit to the requesting party, the "information sought must likely (not just theoretically) have marginal benefit in litigating

important issues." *Va. Dep't Corr.*, 921 F.3d at 189. Further, the "information must offer some value over and above what the requesting party already has." *Id.* As explained *supra*, in Section II, Ndonga's testimony has no relevance to falsity or actual malice. Thus, its relevance is purely theoretical and not the proper subject of a third-party subpoena. In any event, Ndonga's testimony does not "offer some value over and above," what Amin already has, because he has his own knowledge and records of his treatment of her. *See id.*

The subpoena also would impose significant burdens on Ndonga. First, testifying would require her to recount traumatic events that happened to her while involuntarily detained—an experience which she did not speak about to NBCU. Ndonga has a privacy interest in not being forced to testify about these traumatic events in response to questioning from Defendant Amin, the very person who caused this trauma, in a proceeding to which Ndonga is not a party. *See Fappiano v. City of New York*, 640 F. App'x 115, 121 (2d Cir. 2016) (affirming order quashing subpoena to rape victim where court properly "balanced the victim's interest in maintaining her privacy and preventing unwanted exposure to her past trauma with [requestor's] interest in discovering relevant information"); *see also King v. State*, 535 S.E.2d 492, 495 (Ga. 2000) (recognizing right to privacy under Georgia constitution for personal medical records); *Enenmuo v. Hildreth*, No. 1:19-CV-03400-ELR, 2020 WL 13528573, at *2 (N.D. Ga. June 24, 2020) (recognizing

17

right to medical privacy "may only be waived to the extent such information is relevant to the medical condition the plaintiff has placed in issue in the legal proceeding") (cleaned up); Ga. Code Ann. § 24-12-1(a) (providing Georgia medical providers are not "required to release any medical information concerning a patient" except on court order or waiver).

Second, if Amin were allowed to depose Ndonga as a non-party to his lawsuit, he would effectively be obtaining party discovery in the *Oldaker* case, in violation of the discovery stay in *Oldaker*. *See* Ex. F, J. Sands Stay Order (ECF 187). Although this subpoena issued from a separate proceeding, both lawsuits concern Amin's medical treatment of women held in ICE custody at ICDC. If allowed to proceed, Ndonga's deposition will provide Amin with discovery of information relevant to the claims and defenses in *Oldaker*, while no other parties are being allowed to take discovery in that case. This is information that he should not have access to in light of the stay. *See In re Grand Jury Subpoena*, 175 F.3d 332, 339 (4th Cir. 1999) (upholding order quashing criminal subpoena where subpoena's purpose was to obtain discovery for stayed civil proceeding, circumventing the stay); *Kiskadee Commc'ns (Bermuda), Ltd. v. Father*, No. C 10-05277 WHA, 2011 WL 5085284, at *2 (N.D. Cal. Oct. 26, 2011) (requiring party to withdraw third-party subpoena in action stayed pending arbitration). Amin should not be permitted to use non-party discovery in his defamation suit to

18

circumvent the stay in *Oldaker*. *See, e.g., In re Application of Shahrokh Mireskandari*, No. CV 12-10310 DSF (EX), 2013 WL 12085135, at *1 (C.D. Cal. Jan. 7, 2013) (declining to allow subpoena related to a foreign proceeding where discovery was unlikely to support foreign proceeding, was overbroad, and applicant was using process to "evade discovery supervision in the various state and federal proceedings that [the] parties (or related parties) [were] part of").

<u>Third</u>, Amin is certain to seek to depose Ndonga a second time as a party to the *Oldaker* litigation. Allowing him to depose her now as part of his defamation lawsuit would create an unacceptable likelihood that she would be subject to not one but *two* duplicative depositions by Amin concerning the same traumatic events. Parties ordinarily would need to seek leave of court to take multiple depositions of the same witness. *See* FRCP 30(a)(2)(A)(ii). And courts routinely deny requests for duplicative depositions, or limit the scope and subject matter of subsequent depositions to new material. *See, e.g.*, *Roberts v. Gen. Motors LLC*, No. 4:13-CV-541 CAS, 2016 WL 233243, at *3 (E.D. Mo. Jan. 20, 2016) (granting motion to quash "redundant and duplicative depositions"); *Lehman v. Wal-Mart Stores, Inc.,* No. 7:09CV5007, 2010 WL 147909, at *1 (D. Neb. Jan. 11, 2010) (granting motion to quash deposition where deponents had already testified to same subject matter); *see also Schwarz & Schwarz of Va., L.L.C. v. Certain Underwriters at Lloyd's*, No. CIV.A 6:07CV042, 2009 WL 1913234, at *2 (W.D.

19

Va. July 1, 2009) (limiting additional deposition to new material not covered in prior deposition). If Amin is to depose Ndonga, it should be in her case-in-chief against him (among others), not in his ancillary defamation case to which she is not a party and as to which she has no relevant information. Amin's effort to use non-party discovery to obtain two depositions of Ndonga over the same subject matter where he would ordinarily only be allowed one is not within the scope of discovery allowed by Rule 45 and should be rejected.

Additionally, demanding that Ndonga submit to a non-party deposition about privileged medical information is not "proportional to the needs of the case" and is therefore impermissible under Rule 26. Any hypothetical marginal relevance of Ndonga's testimony to Amin's defamation claims is far outweighed by the undue burden such a deposition would impose on Ndonga for the reasons enumerated above, particularly given that Amin already possesses information pertaining to Ndonga's medical treatment, namely his first-hand knowledge and her medical records. *See* FRCP 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering … whether the burden … of the proposed discovery outweighs its likely benefit."); FRCP 26(b)(2)(C) (requiring court to limit discovery if it "can be obtained from some other source that is more convenient [or] less burdensome"). A protective order pursuant to Rule 26(b) & (c)

prohibiting the deposition is therefore necessary to prevent Amin's exceeding the scope of permissible discovery. *See West v. City of Albany, Ga.*, 830 F. App'x 588, 593 (11th Cir. 2020) (affirming protective order where "discovery request was only tangentially relevant to [the] claim").

## IV.    In the Alternative, the Subpoena Should Be Modified to Require a Declaration or Deposition on Written Questions

For the reasons stated above the Ndonga subpoena should be quashed or prohibited in its entirety. In the alternative, the subpoena should be modified to require that Ndonga answer limited questions narrowly tailored to the subject matter of the remaining Challenged Statements in Amin's defamation case either by responding via written declaration or by deposition on limited written questions. *See* FRCP 31. An oral deposition requires a witness to provide unstructured and unvetted answers to a line of uncontrolled narrative questioning. Requiring Ndonga to be subject to this nature of interrogation by Amin's counsel regarding traumatic events Amin is responsible for, in a proceeding to which Ndonga is not a party, would impose significant burdens as explained *supra*, in Section III. Thus, if this discovery were ever allowed to proceed, an alternative process would be vitally necessary.

To that end, Rule 26(c) and Rule 45(d)(3) authorize a court to protect a person from undue burden by, respectively, "prescribing a discovery method other

than the one selected by the party seeking discovery," FRCP 26(c)(1)(C), or "order[ing] appearance . . . under specified conditions." FRCP 45(d)(3)(C). Courts have used deposition on written questions to control for a myriad of burdens that oral deposition would otherwise impose. Factors as minor as travel expense have been found sufficient. *See Gatoil, Inc. v. Forest Hill State Bank*, 104 F.R.D. 580, 582 (D. Md. 1985). Deposition on written questions has also been used where, as here, the subject of the deposition is likely to implicate privileged information. *See Fid. Mgmt. & Rsch. Co. v. Actuate Corp.*, 275 F.R.D. 63, 64-65 (D. Mass. 2011); *Gatoil*, 104 F.R.D. at 582.

A written declaration or deposition on written questions would allow Ndonga and her counsel to review the questions in advance of her answering them to ensure they were narrowly tailored to only the subject matter of the Challenged Statements and to reduce Ndonga's risk of inadvertently disclosing medical or otherwise privileged or sensitive information not germane to Amin's claims in the *NBCUniversal Media, LLC* case. Responding via written declaration or deposition on written questions would also permit Ndonga's counsel to make objections to the proffered questions in advance. It would further ensure there is a clear record of what questions have been asked and answered, a necessary prerequisite to protecting Ndonga against duplicative questioning when she is later deposed as a

22

party in the *Oldaker* litigation, if the efforts to protect her from this duplicative burden were to be rejected by the Court in this instant proceeding.

In sum, Ndonga's status as a nonparty, the fact that she would be testifying about sensitive and privileged medical information and traumatic events, and the fact that she will be subjected to a second deposition on the same subject matter in *Oldaker* all weigh strongly in favor of keeping any non-party discovery permitted of her in the instant case tightly controlled. Discovery must be limited both in scope (*i.e.,* what questions may be asked) and manner (*i.e.*, written questions rather than free-ranging oral interrogation). Thus, should the Court decline to quash or prohibit Ndonga's non-party deposition in its entirety, it should exercise its discretion to structure the discovery in the manner least burdensome to Ndonga, which would be response by written declaration or depositions on written questions. *See Akridge v. Alfa Mut. Ins. Co.*, 1 F.4th 1271, 1276 (11th Cir. 2021) ("[D]istrict courts have broad discretion in fashioning discovery rulings").

### V.  Request to Stay Deposition Date Pending Resolution of Motion

The Ndonga subpoena is returnable April 4, 2023 at 2:00 p.m. A stay of this date is warranted during the pendency of Ndonga's instant Motion to Quash so that she may obtain review of the subpoena prior to being subjected to a traumatic and unnecessary deposition. *See* FRCP 26(c)(1)(B) (allowing protective orders "specifying terms, including time and place" of discovery). "Federal courts have

broad discretion to stay proceedings as part of their inherent authority to control their docket and ensure judicial economy." *Crater v. Ga. Dep't of Transp.*, No. 1:17-CV-5142-WSD-JKL, 2018 WL 11446844, at *1 (N.D. Ga. Apr. 4, 2018). Thus, in determining whether to stay discovery, courts "weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936).

Here, a stay of Ndonga's deposition date in light of her Motion to Quash is warranted. The current date of Ndonga's deposition is in less than a week, and does not leave sufficient time for her Motion to Quash to be fully considered. The current date would not even leave sufficient time for Amin to oppose her Motion to Quash, or for her to reply to any such opposition. *See* Local Rule 7.1(B)-(C) (providing 14 days for oppositions and replies thereto). Thus, at a minimum, a stay is warranted until briefing is complete. *See Degenhart v. Arthur State Bank*, No. CV411-041, 2011 WL 3651312, at *2 (S.D. Ga. Aug. 8, 2011) (staying deposition until briefing on motion for protective order was complete).

Further, Ndonga's Motion is likely to succeed on the merits for the reasons set forth above. Ndonga would suffer irreparable injury if the deposition were to proceed before her Motion is decided, as it would subject her to the undue burdens her Motion seeks to prevent. Moreover, Amin would suffer no discernable harm from a delay of Ndonga's deposition while her motion is pending given that the deadline for depositions of fact witnesses in this case is not until July 31, 2023. *See*

Ex. F, ECF 61, Scheduling Order; *see also Elsherif v. Clinic*, No. 18-CV-2998-DWF-KMM, 2020 WL 1441959, at *1 (D. Minn. Mar. 24, 2020) (postponing depositions where there would be no "meaningful prejudice"). Finally, a stay would serve the public interest by preserving Ndonga's rights under Rule 45 and Rule 26 to object to and request modification of a burdensome subpoena. *See Green v. Cosby*, No. CV 14-30211-MGM, 2016 WL 64211, at *2 (D. Mass. Jan. 5, 2016) (staying deposition pending resolution of objections to magistrate's order where denial of stay would amount to denial of right to review).

## CONCLUSION

Pursuant to FRCP 45(d)(3) and FRCP 26(b) & (c), Ndonga respectfully requests that the subpoena requiring her non-party deposition in *Amin v. NBCU* be quashed or prohibited, in its entirety. In the alternative, she requests that the subpoena be modified to require answers to only limited questions narrowly tailored to the subject matter of the remaining Challenged Statements at issue by either written declaration or deposition on written questions. Ndonga finally requests a stay of her deposition date pending resolution of this Motion.

Respectfully submitted this day of 27th day of March 2023.

[signatures on next page]

25

_/s/ Clare R. Norins_
Clare R. Norins
Georgia Bar No. 575364
cnorins@uga.edu
FIRST AMENDMENT CLINIC
University of Georgia
School of Law
Post Office Box 388
Athens, Georgia 30603
(706) 542-1419 (phone)

_/s/ Elora Mukherjee_
Elora Mukherjee*
emukherjee@law.columbia.edu
Immigrants' Rights Clinic
Morningside Heights
   Legal Services, Inc.
Columbia Law School
435 W. 116th Street
New York, NY 10027
(212) 854-4291 (phone)

*_Pro hac vice_ application forthcoming

_Attorneys for Mbeti Ndonga_

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1, the undersigned certifies that the foregoing complies with the font and point selections permitted by L.R. 5.1(B). This document was prepared on a computer using Times New Roman font (14 point).

This 27th day of March, 2023.

*/s/ Clare R. Norins*
Clare R. Norins
Georgia Bar No. 575364
*Attorney for Mbeti Ndonga*

27

## CERTIFICATE OF SERVICE

I hereby certify that on March 27, 2023, I filed **NDONGA MBETI'S MOTION TO STAY AND TO QUASH DEPOSITION SUBPOENA OR, IN THE ALTERNATIVE, TO MODIFY** and the accompanying **MEMORANDUM OF LAW IN SUPPORT** with the Clerk of Court using the CM/ECF system and served true copies of same via email on the following counsel of record in *Amin v. NBCUniversal Media, LLC*, Case No. 5:21-CV-00056-LGW-BWC (S.D. Ga.):

Stacey Godfrey Evans
sevans@staceyevanslaw.com
Tiffany N. Watkins
twatkins@staceyevanslaw.com
STACEY EVANS LAW
4200 Northside Parkway NW
Bldg One; Suite 200
Atlanta, GA 30327
Te: (770) 779-9602

Scott R. Grubman
sgrubman@cglawfirm.com
CHILIVIS GRUBMAN
DALBEY & WARNER LLP
1834 Independence Square
Atlanta, GA 30338
Te: (404) 233-4171

*Counsel for Mahendra Amin*

Elizabeth A. McNamara
lizmcnamara@dwt.com
Amanda B. Levine
amandalevine@dwt.com
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104
Tel: (212) 489-8230
amandalevine@dwt.com

Cynthia L. Counts
cynthia.counts@fisherbroyles.com
FISHERBROYLES, LLP
945 East Paces Ferry Rd. NE, Suite 2000
Atlanta, GA 30326
Tel: (404) 550-6233

*Counsel for NBCUniversal Media, LLC*

*/s/ Clare R. Norins*
Clare R. Norins
Georgia Bar No. 575364