**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| The Coca-Cola Company,<br><br>      Plaintiff,<br><br>   v.<br><br>SuperCooler Technologies, Inc.,<br><br>      Defendant. | Case No. _____ |

**COMPLAINT**

Plaintiff The Coca-Cola Company ("TCCC"), by its undersigned counsel, for its complaint against Defendant SuperCooler Technologies, Inc. ("SCTI"), alleges the following, based upon personal knowledge as to its own acts and upon information and belief as to all other matters:

**PRELIMINARY STATEMENT**

1. This is a breach of contract action for SCTI's failure to repay the amount owed to TCCC under the parties' Note Purchase Agreement.

2. Plaintiff seeks judgment against SCTI for $2,970,000 plus interest in the amount of four and a half percent (4.5%) per annum, as provided for in the

Note Purchase Agreement, pre-judgment and post-judgment interest, attorney's fees, and any further relief as is just and proper.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), in that this is a civil action between a citizen of Georgia and a citizen of Florida, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. Venue is proper in this district under 28 U.S.C. § 1391(b), in that Plaintiff resides in this district and a substantial part of the events or omissions giving rise to the claim occurred in this district.

5. Jurisdiction and venue are proper in this judicial district pursuant to the mandatory forum selection clause contained in Article 8.1 of the parties' Agreement (defined below).

## PARTIES

6. Plaintiff TCCC is a corporation that is incorporated in Delaware and has its principal place of business in Atlanta, Georgia, which is in the Northern District of Georgia.

7. Defendant SCTI is a domestic corporation organized under the laws of Florida, with its principal place of business in Maitland, Florida.

## FACTS

8. SCTI and TCCC began discussions about working together on beverage cooling technologies in or about the fall of 2014.

9. At that time, SCTI marketed two ideas to make beverages colder: (1) to rapidly chill beverages by placing a beverage bottle into a liquid bath and turning the bottle at a certain angle and at certain frequencies ("Rapid Chill" technology); and (2) to create slushy beverages without the need for ice using an ultrasonic nucleator device, a circular pad which allows sound waves to move though the bottle and product inside to create ice crystallization ("Arctic Chill" technology).

10. In 2014, SCTI had some background intellectual property ("IP") and initial prototypes in hand, but no scalable working product.

11. By 2014, prior to its involvement with SCTI, TCCC had initiated numerous projects, many of which included patent filings, on technologies relating to quickly cooling beverages and to extremely cool beverages, including producing a "Superchilling" vending machine available commercially outside the United States to cool beverages below their freezing point.

12. SCTI and TCCC entered into a Master Services Agreement on July 13, 2015, which required SCTI to work with TCCC to help develop Arctic Chill

and Rapid Chill technologies. TCCC would pay SCTI for this work on a project-by-project basis pursuant to further statements of work ("SOWs").

13. SCTI wanted to be TCCC's supplier and manufacturer of the coolers and the nucleators for Arctic Chill technology—which TCCC marketed as "Arctic Coke"—but SCTI did not have commercial manufacturing capability to do so. SCTI never brought Coca-Cola a commercially viable cooler.

14. TCCC realized that—at least at this initial stage—it would need to source Arctic Coke coolers and nucleators from a third-party manufacturer in order to meet customer deadlines and commitments. In or around July 2016, SCTI worked with TCCC to create a request for proposal ("RFP") for the manufacturing of these coolers and nucleators, and confirmed to TCCC that the language in the RFP was acceptable to SCTI. TCCC sent the RFP to SCTI to give it an opportunity to submit a proposal.

15. TCCC ultimately sourced the initial Arctic Coke cooler units from another manufacturer to fulfill customer commitments. However, SCTI supplied the electronic control board that goes inside each nucleator to ensure proper crystallization.

16. On or about February 2, 2017, TCCC agreed to loan SCTI up to $3,000,000 under a Note Purchase Agreement ("NPA" or "Agreement"), to help

SCTI ramp up its capabilities to supply the nucleator boards and otherwise work with TCCC on Arctic Coke/Arctic Chill technology.

17. Under the Agreement, TCCC agreed to loan SCTI an aggregate principal amount of up to $3,000,000 for professional services related to TCCC's "Arctic Coke" machines, which would become due and payable with interest on December 31, 2020, the Maturity Date as defined in the Agreement. In consideration for the loan SCTI agreed, among other things, to use the money in furtherance of its work with TCCC on Arctic Chill technology.

18. The Agreement was structured to provide the loan to SCTI in two tranches. A first tranche would be advanced to SCTI at the date of the Agreement. The second tranche would be issued to SCTI upon completion of certain development milestones (for example, the completion of certain designs and prototypes) and upon a written Draw Notice.

19. On or about February 3, 2017, TCCC advanced $1,470,000 to SCTI.

20. On May 28, 2017, SCTI issued a Draw Notice for the second tranche of $1,500,000.

21. In or around June 2017, TCCC determined SCTI had met the intent of certain development milestones which were required for SCTI to receive the second tranche of TCCC's loan.

22.     On or about June 30, 2017, TCCC sent the second tranche of $1,500,000 to SCTI, in order to help SCTI continue its business.

23.     December 31, 2020 was the "Maturity Date" under the Agreement, the date on which the principal amount loaned under the Agreement was due and payable with interest.  SCTI has not made any payments to TCCC under the Agreement.

24.     SCTI's failure to pay when due the principal and interest payments outstanding as of the Maturity Date is an "Event of Default" under the Agreement.

25.     Upon an Event of Default under the Agreement, all outstanding obligations are automatically due and payable by SCTI: "[TCCC] may declare all outstanding Obligations payable by [SCTI] hereunder to be immediately due and payable without presentment, demand, protest or further notice of any kind, all of which are hereby expressly waived. Upon the occurrence or existence of any Event of Default described in Sections 3(b) or 3(c), immediately and without notice, all outstanding Obligations payable by [SCTI] hereunder shall automatically become immediately due and payable, without presentment, demand, protest or any other notice of any kind, all of which are hereby expressly waived."

## BREACH OF CONTRACT

26.     TCCC repeats and realleges paragraphs 8 through 25 hereof, as if fully set forth herein.

27.     On or about February 2, 2017, TCCC and SCTI entered into a valid written agreement, the Note Purchase Agreement, wherein TCCC would loan SCTI up to $3,000,000 plus interest and SCTI would use the money in furtherance of its work with TCCC on Arctic Chill technology.

28.     Plaintiff TCCC has performed its obligation and advanced $2,970,000 principal amount to SCTI under the Agreement.

29.     Defendant SCTI has breached the Agreement by failing to pay the required principal and interest due at the Maturity Date under the terms of the Agreement.

30.     As a direct and proximate result of SCTI's breach, TCCC has been damaged in the amount of $2,970,000 in principal, plus interest which continues to accrue on a compounded basis on the unpaid principal balance at a rate of 4.5% per annum, per the Agreement.

## PRAYER FOR RELIEF

WHEREFORE, The Coca-Cola Company demands:

(a) Judgment against the Defendant in the amount to be determined at trial but which exceeds $2,970,000, plus interest;

(b) Attorney's fees and costs; and

(c) Such other relief as this Court deems just.

This the 28th day of March, 2023.

        Respectfully submitted,

        **SHOOK, HARDY & BACON LLP**

        */s/* Joshua L. Becker
        Joshua L. Becker
        GA Bar # 046046
        jbecker@shb.com
        Caroline M. Gieser
        GA Bar # 167916
        cgieser@shb.com
        1230 Peachtree Street, Suite 1200
        Atlanta, GA 30309
        (t) (470) 867-6000
        (f) (470) 867-6001

        *Attorneys for Plaintiff*
        *The Coca-Cola Company*