*BETTY MARTIN, INDIVIDUALLY, and FRANK MARTIN, JR., as ANTICIPATED ADMINISTRATOR of the ESTATE of FRANK MARTIN, SR., DECEASED, v. ROBERTA OPERATOR, LLC d/b/a ROBERTA HEALTH AND REHAB; GBD, LLC; BARRES, LLC; T AND C CAPITAL ASSETS, LLC; WINDWARD HEALTH PARTNERS, LLC; MISSION HEALTH OF GEORGIA, LLC; ABC CORPORATIONS; AND JOHN/JANE DOES I and II,*
*State Court of Gwinnett County, State of Georgia*
*Civil Action File Number:  23-C-01217-S7*

*BETTY MARTIN, INDIVIDUALLY, and FRANK MARTIN, JR., as ANTICIPATED ADMINISTRATOR of the ESTATE of FRANK MARTIN, SR., DECEASED, v. ROBERTA OPERATOR, LLC d/b/a ROBERTA HEALTH AND REHAB; GBD, LLC; BARRES, LLC; T AND C CAPITAL ASSETS, LLC; WINDWARD HEALTH PARTNERS, LLC; MISSION HEALTH OF GEORGIA, LLC; ABC CORPORATIONS; AND JOHN/JANE DOES I and II,*
*USDC, Northern District, Atlanta Division*
*Civil Action File Number:  TBA (Removal # )*

# EXHIBIT A:  PETITION FOR REMOVAL

## COMPLAINT FILED IN THE
## STATE COURT OF GWINNETT COUNTY

E-FILED IN OFFICE - CB
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-01217-S7**

**2/22/2023 7:23 PM**
**TIANA P. GARNER, CLERK**

## IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

BETTY MARTIN, INDIVIDUALLY, and )
FRANK MARTIN, JR., as ANTICIPATED )
ADMINISTRATOR of the ESTATE of FRANK )
MARTIN, SR., DECEASED, )
           )
       Plaintiffs, )
           )    CIVIL ACTION FILE NO.:
v. )     23-C-01217-S7
           )    _____
ROBERTA OPERATOR, LLC d/b/a ROBERTA )
HEALTH AND REHAB; GBD, LLC; BARRES, )
LLC; T AND C CAPITAL ASSETS, LLC; )
WINDWARD HEALTH PARTNERS, LLC; )
MISSION HEALTH OF GEORGIA, LLC; )
ABC CORPORATIONS; AND JOHN/JANE )
DOES I and II, )
           )
       Defendants. )

## **COMPLAINT FOR DAMAGES**

COME NOW Betty Martin, Individually, and Frank Martin, Jr., as Anticipated

Administrator of the Estate of Frank Martin, Sr., Deceased (hereinafter "Plaintiffs"), and presents

their complaint for damages against Defendants Roberta Operator, LLC d/b/a Roberta Health and

Rehab; GBD, LLC; Barres, LLC; T and C Capital Assets, LLC; Windward Health Partners, LLC;

Mission Health of Georgia, LLC; ABC Corporations; and John/Jane Does I and II, as follows:

1.

In this action, Plaintiffs show that the Defendants' violations of federal and state law and

regulations in the operation of a long-term care facility, professional negligence, general

negligence, breach of contract and wrongful death in the provision of nursing home care, medical

care, treatment and services led directly and proximately to severe and life-threatening injuries,

illness, pain, suffering and death of Frank Martin, Sr.  Plaintiffs therefore seek to recover damages for claims arising under tort and contract.

## JURISDICTION AND VENUE

2.

Plaintiff, Betty Martin, is an individual over the age of nineteen (19) years and brings this lawsuit individually as surviving spouse of Frank Martin, Sr.  Plaintiff Betty Martin hereby subjects herself to the jurisdiction of this Court.

3.

Plaintiff, Frank Martin, Jr., is an individual over the age of nineteen (19) years and brings this lawsuit as the Anticipated Administrator of the Estate of his father, Frank Martin, Sr.  Plaintiff Frank Martin, Jr. hereby subjects himself to the jurisdiction of this Court.

4.

Defendant Roberta Operator, LLC d/b/a Roberta Health and Rehab is a foreign limited liability company formed under the laws of the State of Florida. This Defendant owns, operates, and/or manages a skilled nursing facility called Roberta Health and Rehab, located at 420 Myrtle Drive, Roberta, Crawford County, Georgia, 31078.  This Defendant can be served with process by service upon its registered agent for service of process in this State: National Registered Agents, Inc.; 289 S. Culver Street, Lawrenceville, Gwinnett County, Georgia, 30046-4805.

5.

Defendant GBD, LLC is a foreign limited liability company formed under the laws of the State of Florida. This Defendant owns, operates, and/or manages a skilled nursing facility called Roberta Health and Rehab, located at 420 Myrtle Drive, Roberta, Crawford County, Georgia, 31078. This Defendant can be served with process by service upon its registered agent for service of

process in this State: National Registered Agents, Inc.; 289 S. Culver Street, Lawrenceville, Gwinnett County, Georgia, 30046-4805.

6.

Defendant Barres, LLC is a foreign limited liability company formed under the laws of the State of Florida with its principal place of business in Tampa, Florida and is not authorized to transact business in the State of Georgia. At all times material and relevant hereto, this Defendant owned, operated, and/or managed a skilled nursing facility called Roberta Health and Rehab, located at 420 Myrtle Drive, Roberta, Crawford County, Georgia, 31078. While this Defendant transacts significant business in this state, it maintains no registered agent for service of process in this state. Defendant Barres, LLC is subject to the jurisdiction of this Court pursuant to Georgia law, including O.C.G.A. § 9-10-91, the Georgia Long Arm Statute, in that it transacted business within the State of Georgia, committed a tortuous act and/or omission within the State of Georgia, and owns, uses or possesses real property within the State of Georgia. This Defendant can be served with process by service upon its registered agent for service of process: Stuart Lindeman, 2907 West Bay to Bay Boulevard, Suite 303, Tampa, Florida, 33629.

7.

Defendant T and C Capital Assets, LLC is a foreign limited liability company formed under the laws of the State of Florida with its principal place of business in Wesley Chapel, Florida and is not authorized to transact business in the State of Georgia. At all times material and relevant hereto, this Defendant owned, operated, and/or managed a skilled nursing facility called Roberta Health and Rehab, located at 420 Myrtle Drive, Roberta, Crawford County, Georgia, 31078. While this Defendant transacts significant business in this state, it maintains no registered agent for service of process in this state. Defendant T and C Capital Assets, LLC is subject to the jurisdiction

of this Court pursuant to Georgia law, including O.C.G.A. § 9-10-91, the Georgia Long Arm Statute, in that it transacted business within the State of Georgia, committed a tortuous act and/or omission within the State of Georgia, and owns, uses or possesses real property within the State of Georgia. This Defendant can be served with process by service upon its registered agent for service of process: Joseph M. Passero, 777 S. Harbour Island Boulevard, Suite 400, Tampa, Florida, 33602.

8.

Defendant Windward Health Partners, LLC is a foreign limited liability company formed under the laws of the State of Florida with its principal place of business in Tampa, Florida and is not authorized to transact business in the State of Georgia. At all times material and relevant hereto, this Defendant owned, operated, and/or managed a skilled nursing facility called Roberta Health and Rehab, located at 420 Myrtle Drive, Roberta, Crawford County, Georgia, 31078.  While this Defendant transacts significant business in this state, it maintains no registered agent for service of process in this state. Defendant Windward Health Partners, LLC is subject to the jurisdiction of this Court pursuant to Georgia law, including O.C.G.A. § 9-10-91, the Georgia Long Arm Statute, in that it transacted business within the State of Georgia, committed a tortuous act and/or omission within the State of Georgia, and owns, uses or possesses real property within the State of Georgia. This Defendant can be served with process by service upon its registered agent for service of process: NRAI Services, Inc., 1200 South Pine Island Road, Plantation, Florida, 33324.

9.

Defendant Mission Health of Georgia, LLC is a foreign limited liability company formed under the laws of the State of Florida. This Defendant owns, operates, and/or manages a skilled nursing facility called Roberta Health and Rehab, located at 420 Myrtle Drive, Roberta, Crawford

County, Georgia, 31078.  This Defendant can be served with process by service upon its registered

agent for service of process in this State: National Registered Agents, Inc.; 289 S. Culver Street,

Lawrenceville, Gwinnett County, Georgia, 30046-4805.

10.

Defendant ABC, Inc., is a corporate entity whose correct name is not known at the current

time, but is known to Defendants.  Upon information and belief, Defendant ABC, Inc. is an entity

capable of being sued in Georgia and is subject to the jurisdiction and venue of this Court.  Once

the true and correct identity of Defendant ABC, Inc., has been established, it will be substituted

into this action by amendment and pursuant to Georgia law.

11.

Upon proper service of process, and based on the foregoing, jurisdiction is proper in this

Court.  Venue is proper in this Court under OCGA § 9-10-31.

**PARTIES**

12.

Plaintiff Betty Martin is the surviving spouse of Frank Martin, Sr., deceased, and, in her

individual capacity, brings the wrongful death claims on behalf of the wrongful death claimants.

Plaintiff Frank Martin, Jr. is the Anticipated Administrator of the Estate of Frank Martin, Sr.,

deceased, and seeks to recover upon Mr. Martin, Sr.'s individual claims against Defendants arising in

tort and contract.  These parties will be referred to collectively herein as "Plaintiffs."

13.

The Defendants Roberta Operator, LLC d/b/a Roberta Health and Rehab; GBD, LLC;

Barres, LLC; T and C Capital Assets, LLC; Windward Health Partners, LLC; and Mission Health

of Georgia, LLC (hereinafter collectively "Roberta Health and Rehab") owned, operated,

maintained and/or managed a long-term skilled nursing care facility called Roberta Health and Rehab, located at 420 Myrtle Drive, Roberta, Crawford County, Georgia, 31078 at the time of Frank Martin, Sr.'s residency. The Defendant entities were contractually charged with responsibility for the provision of residence, care, treatment and convalescent/rehabilitation services to Mr. Frank Martin, Sr. These Defendants negligently failed at their responsibilities as described below.

14.

Defendant John/Jane Doe I at all relevant times was the Administrator at Roberta Health and Rehab.  Defendant John/Jane Doe II at all relevant times was the Director of Nursing Services at Roberta Health and Rehab.  In these capacities, each of these Defendants were responsible for ensuring that Mr. Frank Martin, Sr. received the medical and nursing care, treatment and services necessary to address his medical and nursing needs and his needs with respect to his activities of daily living.  These Defendants were also responsible for discovering, investigating, preventing and correcting all instances of resident abuse, mistreatment and neglect.  They were responsible for proper and timely communication of Mr. Martin, Sr.'s medical condition and needs to his doctor when necessary, and providing prompt medical care when it was necessary.

## **FACTS**

15.

On July 22, 2020, Frank Martin, Sr. was admitted to Roberta Health and Rehab following a hospital admission. He was sixty-four (64) years old at the time and had a history of hypertension, dysphagia with g-tube placement, cerebrovascular accident, and dementia.

16.

On admission, he was placed on COVID isolation per facility policy. He was COVID negative at the time. He was receiving tube feedings for nutrition. He weighed 186 lbs.

17.

On July 23, 2020, he was noted to have three stage II pressure ulcers and two suspected deep tissue injuries. A baseline care plan addressing his skin integrity was developed but did not include any pressure reducing devices. The Braden Scale Assessment was performed and based on his score of 9, Mr. Martin was noted to be at very high risk for skin breakdown.

18.

On July 29, 2020, the MDS Assessment indicated Mr. Martin required extensive assistance of two for bed mobility and was dependent for all other activities of daily living. Mr. Martin was noted to have two stage II pressure ulcers, one unstageable ulcer due to slough/eschar, and two deep tissue injuries.

19.

On August 2, 2020, the Dietary Note indicated Mr. Martin's enteral feedings were inadequate in all nutrients.

20.

On August 5, 2020, the Weekly Pressure Report indicated Mr. Martin had five areas of skin breakdown.

21.

On August 10, 2020, the Treatment Administration Record indicated the pressure ulcer treatments had not been signed off as completed per order.

22.

On August 19, 2020, the Weekly Pressure Report indicated Mr. Martin had five areas of skin breakdown.

23.

On August 24, 2020, the Nurses Note indicated Mr. Martin's weight had decreased to 180 lbs.

24.

On September 2, 2020, the Weekly Pressure Report indicated Mr. Martin had five areas of skin breakdown.

25.

On September 11, 2020, the Weekly Pressure Report indicated Mr. Martin had nine areas of skin breakdown.

26.

On September 30, 2020, the Weekly Pressure Report indicated Mr. Martin had six areas of skin breakdown, with deterioration to stage III on his sacral ulcer, right inner knee and left inner knee ulcers.

27.

On October 5, 2020, the Dietary Note indicated Mr. Martin's enteral formula was inadequate in protein and calories.

28.

On October 7, 2020, the Weekly Pressure Report indicated Mr. Martin had six areas of skin breakdown. His sacral pressure ulcer had deteriorated to a stage IV, and he had unstageable ulcers due to slough, to his left hip and left inner knee.

29.

On October 19, 2020, the Dietary Note indicated Mr. Martin's enteral feedings were still inadequate for protein.

30.

On October 29, 2020, the MDS Assessment indicated Mr. Martin had one stage II pressure ulcer, one stage III pressure ulcer, one stage IV pressure ulcer, and three deep tissue injuries.

31.

On November 1, 2020, the Treatment Administration Record indicated four missed treatments during the month of November.

32.

On November 2, 2020, the Nurses Note indicated Mr. Martin's sacral ulcer and left inner knee ulcer had increased in size and had an increased amount of drainage.

33.

On November 11, 2020, the Nurses Note indicated Mr. Martin's sacral ulcer, stage IV, had slough and eschar tissue, and a large amount of foul-smelling drainage with some active bleeding. The area measured 5.5 x 5.0 x 3.5 cm with 2.2 cm of tunneling. The pressure ulcer to his left hip, unstageable due to eschar, measured 5.9 x 6.9 cm. The pressure ulcer to his left inner knee, unstageable due to eschar, measured 3.7 x 3.5 cm. He also had a stage II pressure ulcer to his right heel and a stage III pressure ulcer to his right knee.

34.

On November 12, 2020, cultures of his left hip and sacral pressure ulcer were obtained. The cultures were reported positive on November 18, 2020, and antibiotics were ordered.

35.

On November 20, 2020, the Nurses Note indicated Mr. Martin had been referred to a Wound Clinic.

36.

On November 20, 2020, the Nurses Note indicated Mr. Martin's sacral pressure ulcer and left hip ulcer had continued to deteriorate with increased drainage and worsening appearance.

37.

On November 25, 2020, Mr. Martin was noted to have eleven areas of skin breakdown.

38.

On December 3, 2020, the Nurses Note indicated Mr. Martin's sacral wound had deteriorated. The wound bed contained gray/black with soft stringy-like tissue. The nurse was able to see an imprint of the bone. There was a large amount of foul pus-like drainage.

39.

On December 6, 2020, the Treatment Administration Record noted the treatment to Mr. Martin's pressure ulcers had not been completed.

40.

On December 8, 2020, the Wound Clinic Note indicated Mr. Martin had presented for initial assessment. He had multiple pressure ulcers including stage IV ulcers to his sacrum and left trochanter, a stage II to his knee, and unstageable ulcers to his ankle and foot. Treatment to the ulcers were changed and off-loading and turning every two hours were recommended.

41.

On December 9, 2020, Mr. Martin's sacral ulcer, stage IV measured 8.5 x 9.9 x 4.2 with 7.0 cm tunneling at 11 o'clock. The wound contained eschar and had a large amount of foul-smelling drainage. His left hip ulcer, unstageable, measured 8.0 x 9.0 x 2.0 cm with 5.0 cm tunneling at 11 o'clock. The wound bed contained slough and there was a large amount of purulent drainage.

42.

On December 11, 2020, the Lab Report noted an elevated white blood count of 22.5.

43.

On December 12, 2020, Mr. Martin was admitted to Hospice Care.

44.

On December 27, 2020, the Weekly Pressure Report noted Mr. Martin's sacral ulcer, stage IV measured 9.0 x 10.2 x 4.2 cm with 7.0 cm of tunneling at 11 o'clock. The wound bed contained eschar. There was a large amount of foul-smelling drainage and active bleeding noted when the dressing was removed. The left hip ulcer, unstageable measured 8.0 x 9.0 x 2.5 cm with 5.0 cm tunneling at 11 o'clock. The wound bed contained slough. There was a large amount of purulent drainage. The left inner foot, stage II ulcer, measured 2 x 2 cm. The right inner knee ulcer, stage III, measured 0.5 x 0.5 cm. The left inner knee ulcer, unstageable, measured 4.1 x 3.5 x 0.3 cm. The wound bed contained slough and there was a moderate amount of drainage. The right ankle ulcer, unstageable, measured 3.8 x 3.4 cm. The wound bed contained eschar and there was a moderate amount of drainage. Pain was noted during treatment of these ulcers.

45.

The January 2021 Treatment Administration Record noted multiple missed treatments.

46.

On January 19, 2021, the Wound Clinic Note indicated Mr. Martin's trochanter and sacral ulcer had been debrided to remove slough.

47.

On January 27, 2021, the Weekly Pressure Report noted Mr. Martin had seven areas of skin breakdown. Those areas included:

- Lower sacral area, stage IV, measuring 9.0 x 10.1 x 4.2 cm with 7.5 cm tunneling at 11 o'clock. Eschar was present in the wound bed. There was a large amount of malodorous drainage. Bone could be palpated in this ulcer.

- Left hip, stage IV, measuring 8.5 x 9.0 x 7.8 cm with 7.0 cm tunneling at 7 0'clock. The wound bed contained slough, and there was a large amount of drainage. Bone was palpable within this ulcer.

- Left inner foot, stage II, measuring 1.2 x 1.4 cm.

- Left inner knee, stage III, measuring 3.6 x 3.3 x 0.2 cm. The wound bed contained slough, and there was a moderate amount of drainage.

- Right ankle ulcer, stage III, measuring 3.7 x 3.5 cm. The wound bed contained slough, and there was a small amount of drainage.

- Right side, upper back, stage III, measuring 9.3 x 8.3 cm. The wound bed contained slough, and there was a moderate amount of drainage.

- Right hip/buttocks ulcer, stage II measuring 7.6 x 3.1 cm.

48.

On January 27, 2021, the Nurses Note indicated the pressure ulcer to Mr. Martin's upper back had deteriorated. It was now unstageable with eschar, and measured 9.5 x 8.5 cm. The ulcer to his right hip/buttock had a dark purple/black center and measured 7.6 x 3.2.

49.

On March 3, 2020, the Weekly Pressure Report noted Mr. Martin continued to have eight areas of skin breakdown. His pressure ulcers continued to deteriorate and were documented as painful.

50.

On March 7, 2021, Mr. Martin died.

**COUNT I**
**VIOLATION OF FEDERAL STATUTES AND**
**REGULATIONS OF 42 CFR §483.1 et seq.**

51.

Roberta Health and Rehab is a licensed and certified long-term care facility that  provides skilled nursing care as a participant in the Medicare program and that provides nursing care as a participant in the Medicaid program; Roberta Health and Rehab receives funding under  the Medicare and Medicaid programs.

52.

The U.S. Department of Health & Human Services has promulgated a number of regulations pursuant to its authority under OBRA at 42 USCA § 1395i-3 related to the care, treatment and services provided to residents of skilled nursing facilities participating in the Medicare program and nursing facilities participating in the Medicaid program.  Among those regulations are the following:

a)  42 CFR §483.10 and 15(a) provide that the resident has a right to live a dignified existence,

b)  42 CFR §483.13(c) requires the facility to implement protocols to protect the resident from neglect,

c)  42 CFR §483.13(c)(2) requires that all instances of patient neglect be reported to the facility administrator and other officials in accordance with state law,

d)  42 CFR §483.13(c)(3) requires that the facility maintain evidence of its investigation into patient neglect and must prevent future neglect of patients,

e)  42 CFR §483.13(c)(4) requires that results of neglect investigation be reported to the administrator and appropriate state authorities,

f)  42 CFR §483.15 requires the facility to care for its residents in a manner that maintains and enhances the resident's quality of life,

g)  42 CFR §483.15(e)(1) requires that each resident be provided services in the facility to accommodate their individual needs,

h)  42 CFR §483.20(b) and (g) require the facility to maintain a comprehensive and accurate assessment of the resident's medical needs, including the resident's general health and physical functioning,

i)  42 CFR §483.20(k)(1) requires that the facility prepare an accurate  comprehensive care plan that addresses the patient's medical and nursing needs,

j)  42 CFR §483.20(k)(3) requires that services provided or arranged by the facility  meet professional standards of quality and be provided by qualified persons,

k)  42 CFR §483.25 requires the facility to provide services to attain and maintain the highest practicable physical, mental and psychosocial well-being in accordance with the resident's assessments and Care Plan,

l)  42 CFR §483.25(a)(3) requires the facility to provide a resident who is unable to carry out the activities of daily living necessary services to maintain good nutrition, hygiene, grooming and oral hygiene,

m)  42 CFR §483.30 requires the facility to maintain an adequate nursing staff,

n)  42 CFR §483.75 requires that the facility be administered in such a way as to use its resources effectively and efficiently to maintain the highest practicable physical, mental and psychosocial well-being of each resident,

o) 42 CFR §483.75 requires properly trained, qualified and competent staff.

p) 42 CFR §483.75(b) requires the facility to operate and provide services in compliance with law and acceptable professional standards and principles that apply to professionals providing said services,

q) 42 CFR §483.75(k)(1) requires the facility to maintain clinical records in accordance with accepted professional standards and practices which are complete and accurate.

53.

As described in this complaint, the Defendants violated the above regulations of the U.S. Department of Health and Human Services in the following acts and omissions, among others to be demonstrated by the evidence:

a) Defendants failed to administer the nursing facility in such a way as to use its resources effectively and efficiently to maintain the highest practicable physical, mental and psychosocial well-being of Frank Martin, Sr.,

b) Defendants failed to implement protocols to protect Frank Martin, Sr. from neglect,

c) Defendants failed to operate and provide services to Frank Martin, Sr. in compliance with law and acceptable professional standards and principles that apply to professionals providing said services,

d) Defendants failed to provide or arrange services for Frank Martin, Sr. that met professional standards of quality,

e) Defendants failed to maintain an adequate nursing staff to provide for Mr. Martin, Sr.'s needs,

f) Defendants failed to provide properly trained, qualified and competent staff to care for Mr. Martin, Sr.,

g) Defendants failed to maintain complete and accurate clinical records related to the care and treatment of Frank Martin, Sr. in accordance with accepted professional standards and practices,

h) Defendants failed to protect Frank Martin, Sr. from neglect,

i) Defendants failed in their duty to report all instances of Frank Martin, Sr.'s neglect to the facility administrator and appropriate state authorities,

j) Defendants failed to report results of any neglect investigation to the administrator and appropriate state authorities,

k) Defendants failed to properly train and supervise the nursing staff to provide the appropriate care, treatment and services that Frank Martin, Sr. needed, and

l) Defendants failed to follow physician's orders with respect to the care and treatment that Frank Martin, Sr. needed.

54.

The aforesaid violations of 42 CFR §483.1 et seq. constitute evidence of a deviation of the standard of care.

55.

Defendants are liable to Plaintiffs for all damages recoverable, including but not limited to pain and suffering, medical expenses, funeral expenses and the full value of Mr. Martin, Sr.'s life.

**COUNT II**
**VIOLATION OF REQUIREMENTS OF THE GEORGIA BILL OF RIGHTS FOR RESIDENTS OF LONG-TERM CARE FACILITIES AT OCGA §31-8-100 et seq.**

56.

The State of Georgia has promulgated the *Bill of Rights for Residents of Long-Term Care Facilities* at OCGA §31-8-100 et seq. which sets out requirements for those providing care,

treatment and services to residents of long-term care facilities in this state.  In particular, OCGA § 31-8-108(a) requires that residents of long-term care facilities receive care, treatment and services that are adequate and appropriate and which must be provided with reasonable care and skill and in compliance with all applicable laws and regulations (including those listed in the preceding Count of this complaint), and with respect for the resident's personal dignity, among other requirements.

57.

Pursuant to its authority granted by statute, the Georgia Department of Community Health has promulgated a number of regulations for the provision of care, treatment and services to residents of long-term care facilities.  In particular, Ga. Comp. R. & Regs. R. 290-5-39-.07 requires that each resident be provided with care, treatment and services which are adequate and appropriate for the condition of the resident as determined by the resident's developing care plan.   The regulation also requires that services be provided with reasonable care and skill and in compliance with all applicable laws and regulations (including the state laws and federal regulations identified above).

58.

The Defendants violated the provisions of the *Georgia Bill of Rights for Residents of Long-Term Care Facilities* and the regulations of the Georgia Department of Community Health identified above in all of the acts and omissions that are described in this Complaint for Damages. Among the acts and omissions constituting violation of the *Georgia Bill of Rights for Residents of Long-Term Care Facilities* are the following:

a)   Defendants deviated from the standard of care by failing to develop a resident centered care plan, and failed to closely monitor, and implement adequate

-17-

interventions for a resident at high risk for skin breakdown, pressure ulcers, and infection. The care plan was not updated with additional interventions as Mr. Martin developed additional ulcers and/or when his ulcers deteriorated.

b)    Defendants deviated from the standard of care by failing to develop a wound care plan of care until November 2020 for Mr. Martin even though he was admitted with skin breakdown in July 2020.

c)    Defendants deviated from the standard of care by failing to timely notify Mr. Martin's primary care physician of the deteriorating skin breakdown and/or to consult with the wound care physician earlier in his care to prevent the wounds from deteriorating to a Stage IV with support tissue and bone exposed.

d)    Defendants deviated from the standard of care by failing to timely and properly assess Mr. Martin for skin breakdown, failing to develop a care plan to adequately address Mr. Martin's skin breakdown, failing to implement appropriate interventions to prevent and treat skin breakdown, and failing to re-assess the efficacy of Mr. Martin's care plan and make appropriate changes to treatments and interventions as needed.

e)    Defendants deviated from the standard of care by failing to timely and properly assess Mr. Martin's nutritional status, failing to develop a care plan to adequately address Mr. Martin's nutritional needs, failing to implement appropriate interventions to prevent and address weight loss, and failing to re-assess the efficacy of Mr. Martin's nutritional care plan.

f)    Defendants deviated from the standard of care by failing to follow physician's orders by failing to provide ordered care and treatment.

g)    Defendants deviated from the standard of care by failing to maintain Mr. Martin's highest practicable physical, mental, and psychosocial well-being.

59.

The aforesaid violations of *Georgia Bill of Rights for Residents of Long-Term Care Facilities* and the regulations of the Georgia Department of Community Health constitute evidence of a deviation of the standard of care.

60.

Defendants' failure to comply with the *Georgia Bill of Rights for Residents of Long-Term Care Facilities* and the regulations of the Georgia Department of Community Health set out above lead directly to the serious injury, illness, terrible pain, suffering, anguish and grief, and death of Frank Martin, Sr.

61.

Defendants are liable to Plaintiffs for all damages recoverable, including but not limited to pain and suffering, medical expenses, funeral expenses and the full value of Mr. Martin, Sr.'s life.

## COUNT III
## STATUTORY REMEDIES AGAINST DEFENDANTS FOR VIOLATION OF FEDERAL AND STATE STATUTES AND REGULATIONS IN THE OPERATION OF A NURSING HOME

62.

Roberta Health and Rehab is a "nursing home" as that term is defined under O.C.G.A. § 31-7-1(1)(B).

63.

Nursing homes in Georgia must be licensed by the Department of Community Health and are required to comply with all applicable state and federal laws governing the administration of

long-term care facilities, including, but not limited to the *Bill of Rights for Long Term Care Facilities* and its rules and regulations.

64.

Pursuant to O.C.G.A. §§ 31-8-100 through 31-8-127, residents of nursing homes in Georgia have been granted certain rights which are enumerated in the regulations promulgated by the Georgia Department of Community Health at Ga. Comp. R. & Regs. R. 111-8-50, et seq.

65.

Among the regulations promulgated by the Georgia Department of Community Health for the operation of nursing homes is Ga. Comp. R. & Regs. R. 111-8-50-.02 and 111-8-50-.07 which provide that each resident of a nursing home must receive care and services which shall be adequate, appropriate and *in compliance with applicable federal and state law and regulations*.

66.

The State of Georgia has promulgated the *Bill of Rights for Residents of Long-term Care Facilities* at O.C.G.A. § 31-8-100 et eq., which sets out requirements for those providing care, treatment and services to residents of long-term care facilities in this state.

67.

Defendants' conduct which is described in great detail herein constitutes numerous individual violations of the *Georgia Bill of Rights for Residents of Long-term Care Facilities* at O.C.G.A. § 31-8-100 et seq., the regulations of the Georgia Department of Community Health at Ga. Comp. R. & Regs. R. 111-8-50 et seq. and the regulations of the U.S. Department of Health and Human Services at 42 CFR § 483.1 et seq.

68.

Defendants are liable to Plaintiffs for all damages recoverable.

## COUNT IV
## PROFESSIONAL NEGLIGENCE

69.

Frank Martin, Sr. entered into a contract with the Defendants for the provision of long-term residence, care, treatment and services at the Defendants' facility, and Defendants failed to provide that care, treatment and service as described herein.

70.

Pursuant to the requirements of OCGA §9-11-9.1, Plaintiffs have attached hereto the affidavit of Colleen A. Dishman, BSN, RN-BC, who is licensed to practice nursing in the State of North Carolina.   Nurse Dishman has prepared an affidavit which sets forth the Defendants' acts and omissions related to the care, treatment and services provided to Mr. Martin, Sr. which proximately caused him severe injury, pain, suffering, and death, and which illustrate Defendants' failure to provide the degree of care and skill required of these Defendants in their professions, as set out below.   The Plaintiffs hereby incorporate by this reference the entire contents of Nurse Dishman's Affidavit and CV, attached hereto as Exhibit "A."   The Affidavit is not inclusive of each act, error, or omission that has been committed by Defendants, and Plaintiffs reserve the right to contend and prove additional acts, errors, and omissions on the part of Defendants that reflect a departure from the requisite standard of care required by law.

71.

Pursuant to Nurse Dishman's education, training and experience, Nurse Dishman is familiar with the guidelines and regulations of long-term care facilities in all aspects of the provision of nursing care, treatment and services, including wound treatment, to residents of a long-term care facility, including the requirement to comply with physicians' orders and advocate for patients to continually receive proper care.

72.

Also, pursuant to Nurse Dishman's education, training and experience, Nurse Dishman is familiar with the proper care and assessment of patients who have had medical conditions similar to Mr. Martin, Sr., including, but not limited to, cerebral vascular accident, hypertension, and dementia.

73.

Pursuant to Nurse Dishman's education, training and experience, Nurse Dishman is fully familiar with the long-term care facility requirements for a resident's physical condition to be monitored and care rendered as ordered.

74.

Pursuant to Nurse Dishman's education, training and experience, Nurse Dishman is fully aware of the circumstances under which a resident is in need of the services of a physician for care and treatment following an acute condition change.  Nurse Dishman's experience includes the provision of emergency care when the resident needs it.

75.

As a result of Nurse Dishman's education, training and experience outlined above, Nurse Dishman is well qualified to testify as to the acceptable standards of care with respect to the below referenced aspects of nursing care, including care for patients that occurs at nursing homes, assisted living facilities and/or any type of long-term care facility.

76.

The standard of care in a long-term care setting requires staff to prepare comprehensive and accurate assessments and care plans for the identification of residents at risk for skin breakdown and to provide proper care for the prevention of the same.

77.

The standard of care in a long-term care setting requires staff to provide appropriate monitoring and accurate assessments and to update the resident's care plan(s) when the needs of a resident have changed substantially.

78.

The standard of care in a long-term care setting requires staff to recognize significant changes in a resident and initiate a resident's transfer to an acute care center sufficient to meet the resident's needs.

79.

The standard of care in a long-term care setting requires staff to obtain immediate emergency or hospital care when the resident's condition requires it.

80.

Notwithstanding the duty owed to Frank Martin, Sr. by Defendants as described herein, Defendants were negligent and failed to exercise that degree of care, skill and diligence required of the medical and nursing home profession in general under similar conditions and like circumstances.  The negligence of Defendants with respect to Frank Martin, Sr., included, but was not limited to, the following:

1. Roberta Health and Rehab staff failed to develop a resident centered care plan, and failed to closely monitor, and implement adequate interventions for a resident at high risk for skin breakdown, pressure ulcers, and infection. The care plan was not updated with additional interventions as Mr. Martin developed additional ulcers and/or when his ulcers deteriorated.

2. Roberta Health and Rehab staff failed to develop a wound care plan of care until November 2020 for Mr. Martin even though he was admitted with skin breakdown in July 2020.

3. Roberta Health and Rehab staff failed to timely notify Mr. Martin's primary care physician of the deteriorating skin breakdown and/or to consult with the wound care physician earlier in his care to prevent the wounds from deteriorating to a Stage IV with support tissue and bone exposed.

4. Roberta Health and Rehab staff failed to timely and properly assess Mr. Martin for skin breakdown, failing to develop a care plan to adequately address Mr. Martin's skin breakdown, failing to implement appropriate interventions to prevent and treat skin breakdown, and failing to re-assess the efficacy of Mr. Martin's care plan and make appropriate changes to treatments and interventions as needed.

5. Roberta Health and Rehab staff failed to timely and properly assess Mr. Martin's nutritional status, failing to develop a care plan to adequately address Mr. Martin's nutritional needs, failing to implement appropriate interventions to prevent and address weight loss, and failing to re-assess the efficacy of Mr. Martin's nutritional care plan.

6. Roberta Health and Rehab staff failed to follow physician's orders by failing to provide ordered care and treatment.

7. Roberta Health and Rehab staff failed to maintain Mr. Martin's highest practicable physical, mental, and psychosocial well-being.

81.

Defendants also have vicarious liability for the negligent acts and omissions of all persons or entities under Defendants' control either direct or indirect, including its respective

-24-

employees, agents, and consultants.

82.

As a direct and proximate result of the negligence of Defendants as described herein, Frank Martin, Sr. lacked appropriate health care, causing tremendous struggle, suffering and death.

## COUNT V
## NEGLIGENT MANAGEMENT AND OPERATION
## OF A LONG-TERM CARE FACILITY

83.

The Defendants had a duty to make operational, budgetary, and administrative decisions that would benefit the custodial, medical, and nursing needs of residents in Roberta Health and Rehab, including Mr. Martin, Sr. The Defendants failed to exercise reasonable care with respect to the management and operational decisions of Roberta Health and Rehab, and Mr. Martin sustained serious injury, great pain and suffering and death as demonstrated herein.

84.

At all material times, Defendants represented that: (a) they were competent to provide Mr. Martin, Sr. with the necessary care, treatment and services and would provide the same; and (b) that Mr. Martin, Sr.'s condition was capable of being successfully managed by them.

85.

At all times relevant to this action, Defendants were fully aware that the delivery of care and custodial services to residents at Roberta Health and Rehab, including Mr. Martin, Sr., required: (a) provision of adequate and appropriate staffing in the facility; and (b) appropriate census levels and census mixes within the facility.

86.

Despite this knowledge, Defendants made operational, budgetary, and administrative

decisions that were determined more by the financial needs and goals of the Defendants than by the custodial, medical, and nursing needs of residents in Roberta Health and Rehab, including Mr. Martin.

87.

Defendants entered into a continuing course of negligent conduct, creating, implementing, and enforcing dangerous operational budgets, practices, and policies at Roberta Health and Rehab which deprived residents, including Mr. Martin, Sr., of safe, adequate, and essential care and resources to meet their needs.

88.

Notwithstanding Defendants' decisions, directives, and practices which resulted in inadequate and inappropriate staffing of Roberta Health and Rehab, Defendants sought to market, recruit, and admit higher acuity, heavier care, higher pay residents to Roberta Health and Rehab, even though the needs of the resident population, including the needs of Mr. Martin, Sr., exceeded the capacity of the staff.

89.

At all material times, Defendants had a duty to allocate resources and exercise fiscal and operational policies with reasonable care so as to prevent the infliction of harm on residents of Roberta Health and Rehab, including Mr. Martin, Sr.

90.

Defendants breached their duty by failing to allocate sufficient financial and operational resources to Roberta Health and Rehab, thereby causing harm to residents, including Mr. Martin, Sr.  This conduct was specifically directed, controlled, and authorized by Defendants, who knew or should have known that such conduct would likely cause harm to residents at Roberta Health

and Rehab, including Mr. Martin, Sr.

91.

At all material times, Defendants knew or should have known that the delivery of essential and necessary care would suffer due to their budgetary and operational decisions, causing resident injury if they did not provide needed resources to adequately and appropriately staff and operate Roberta Health and Rehab.

92.

As a direct and proximate result of each one of the above-described negligent acts and omissions, dependent residents, including Mr. Martin, Sr., suffered repeated and ongoing neglect and were subjected to dangerous conditions, including the routine deprivation of basic custodial care.

93.

As a result of the foregoing acts and omissions and the resultant injuries, illness, suffering and death of Frank Martin, Sr., Plaintiffs are entitled to recover from the Defendants.

**COUNT VI**
**GENERAL NEGLIGENCE**

94.

Frank Martin, Sr. entered into a contract for the provision of long-term residence, care, treatment and services with the Defendants, and pursuant to their agreement, the Defendants had a duty to exercise ordinary care in the provision of that care, treatment, and services to Mr. Martin, Sr. The Defendants failed to exercise reasonable care in a number of instances with respect to the care, treatment and services provided to Mr. Martin, Sr., and he sustained serious injury, great pain and suffering, and death as a result as demonstrated herein.

95.

Upon information and belief, Defendants failed to establish and implement policies and procedures designed to provide appropriate care, treatment and services to Roberta Health and Rehab residents including Frank Martin, Sr.

96.

Upon information and belief, Defendants failed to properly prepare Roberta Health and Rehab's budget so as to use its resources effectively and efficiently to maintain appropriate care treatment and services to its residents including Frank Martin, Sr.

97.

Upon information and belief, Defendants failed to implement policies, practices and protocols to protect residents, including Frank Martin, Sr., from neglect.

98.

Defendants failed to operate and provide services to Frank Martin, Sr. in compliance with acceptable professional standards and principles that apply to professionals providing said services.

99.

Upon information and belief, Defendants failed to maintain an adequate nursing and non-professional staff to provide for Frank Martin, Sr's needs.

100.

Defendants failed to provide properly trained, qualified and competent staff to care for Mr. Martin, Sr.

101.

Upon information and belief, Defendants failed to properly train and supervise  the

Roberta Health and Rehab staff that was responsible for the provision of care, treatment and services to Frank Martin, Sr.

102.

Defendants failed to properly monitor and chart Frank Martin, Sr.'s condition and the course of care provided to address his medical conditions.

103.

Defendants' staff was negligent in a number of other ways identified herein and to be further demonstrated by the evidence.

104.

As a direct and proximate result of each one of the above-described negligent acts and omissions, Mr. Martin, Sr. suffered grave injury, suffered tremendously, and suffered death.

105.

Many of the Defendants' acts and omissions described herein are ministerial in nature and constitute simple negligence for which the Defendants are liable to Plaintiffs.

106.

As a result of the foregoing acts and omissions and the resultant injuries, pain and suffering, and death of Mr. Martin, Sr., the Plaintiffs are entitled to recover from the Defendants as set out below.

<strong><u>COUNT VII</u></strong><br><strong><u>BREACH OF CONTRACT</u></strong>

107.

Frank Martin, Sr. entered into a contract for the provision of long-term nursing care, treatment, and services with the Defendants, and pursuant to that agreement the Defendants had a duty to exercise ordinary care in the provision of care, treatment and services to Frank

-29-

Martin, Sr. The Defendants failed to exercise reasonable care in a number of instances with respect to the care, treatment and services provided to Frank Martin, Sr., and he sustained serious illness, injury, pain and suffering, and death as a result.

108.

In the wrongful acts and omissions described in detail above and in the insufficiency of care, treatment and services outlined herein, the Defendants failed to provide the services that they promised to provide pursuant to the contract for services entered between the Defendants and Frank Martin, Sr.  The Defendants therefore breached the contract for services as set out herein.

109.

As a result of the foregoing, Plaintiffs are entitled to recover all amounts paid to obtain services under the contract and all consequential damages arising therefrom.

**COUNT VIII**
**FAILURE TO PROVIDE SUFFICIENT AND PROPERLY TRAINED STAFF**

110.

Defendants had a duty to exercise ordinary and reasonable care in providing sufficient staffing and properly trained staff at Defendants' facility.

111.

Defendants were chronically understaffed, which put residents at the facility at risk and in danger.  In addition, the staff at Defendants' facility was inadequately and improperly trained.

112.

The Defendants breached their duty to exercise reasonable and ordinary care in providing sufficient and quality staffing.

113.

The Defendants failed to provide sufficient staffing at Defendants' facility and caused the facility to be chronically understaffed, and failed to properly train said staff.  Defendants' acts and omissions proximately caused Frank Martin, Sr. serious injury, pain, suffering, and death.

114.

As a further result of the Defendants' failure to provide sufficient staff at Defendants' facility and failure to properly train its staff, Plaintiffs are entitled to recover damages for the pain and mental anguish, death, suffering, medical expenses, and funeral and burial expenses.

**COUNT IX**
**IMPUTED LIABILITY**

115.

All of Frank Martin, Sr.'s injuries and damages were the direct result of the acts and omissions of the agents, servants and employees of the Defendant business entities  conducted within the course and scope of each individual's employment with the Defendant business entity health care providers.

116.

The Defendant business entities are therefore vicariously liable for the  individual employee and agent's acts and omissions, and for each individual officer, director, employee, agent and servant's negligent acts and omissions, and the resultant injuries, and damages of Frank Martin, Sr. by application of the doctrine of respondent superior. The Plaintiffs are therefore entitled to recover damages from the Defendants as set out herein.

## COUNT X
## JOINT ENTERPRISE

### 117.

At the time of the negligent acts and omissions and the Plaintiffs' resultant injuries and damages described herein, Defendants combined their property and labor in a joint undertaking for the provision of long-term care, treatment and services for a fee.  Each had rights of mutual control over the residence, care, treatment and other services provided to Mr. Martin, Sr. while he was a resident at Roberta Health and Rehab.

### 118.

By virtue of the foregoing, each of the Roberta Health and Rehab Defendants is liable to the Plaintiffs herein for money damages by application of the joint enterprise theory of recovery.

## COUNT XI
## ESTATE'S TORT CLAIMS

### 119.

Plaintiff Frank Martin, Jr. is the Anticipated Administrator of the Estate of Frank Martin, Sr., and he prosecutes these claims in that capacity.

### 120.

As set out above, Mr. Martin, Sr. sustained grievous injuries, pain, suffering, and death as a direct result of Defendants' acts and omissions which constitute violations of federal and state law, professional negligence and general negligence.

### 121.

In his capacity as the Anticipated Administrator of Mr. Martin, Sr.'s estate, Plaintiff Frank Martin, Jr. is entitled to recover all damages to which Mr. Martin, Sr. would have been entitled had he survived.  As a result of the Defendants' wrongful conduct, Mr. Martin, Sr. incurred medical

expenses and related expenses for his care, treatment and services prior to his death, and final expenses.  Mr. Martin, Sr. also endured untold pain and suffering as a result of Defendants' negligent acts and omissions prior to his death.

122.

Based on the foregoing, Plaintiff Frank Martin, Jr. is entitled to recover from Defendants damages equal to all expenses incurred in the provision of medical care and treatment to Mr. Frank Martin, Sr. resulting from the Defendants' wrongful conduct and to recover for Mr. Frank Martin, Sr.'s final expenses.  Plaintiff is also entitled to recover damages for Mr. Frank Martin, Sr.'s conscious pain and suffering prior to his death.

**COUNT XII**
**WRONGFUL DEATH**

123.

As set out above, Mr. Frank Martin, Sr. sustained grievous illness, suffered tremendously and ultimately died as a direct result of the Defendants' acts and omissions in the provision of care, treatment and services to him which constituted violations of federal and state law, professional negligence and simple negligence.

124.

Mr. Frank Martin, Sr. is survived by his spouse, Betty Martin, Plaintiff herein.

125.

As a result of the Defendants' violations of federal and state law, professional negligence, and simple negligence and Mr. Martin, Sr.'s resultant death as set out in detail above, Plaintiff Betty Martin is entitled to recover damages against the Defendants for Mr. Martin, Sr.'s wrongful death in an amount equal to the full value of the life of the deceased.

## COUNT XIII
## PUNITIVE DAMAGES

126.

As described and set forth herein, Defendants' actions, inactions, and omissions demonstrate willful misconduct, malice, wantonness, oppression, and an entire want of care giving rise to the presumption of Defendants' conscious indifference to the consequences of their actions.

127.

As a result of the foregoing, Plaintiffs are entitled to an award of punitive damages from the Defendants in an amount sufficient to punish Defendants and deter the Defendants from similar conduct in the future.

## COUNT XIV
## ATTORNEY'S FEES
## AS TO ALL DEFENDANTS

128.

Defendants and their agents generally have been stubbornly litigious and have caused the Plaintiffs unnecessary trouble and expense for which the Plaintiffs seek reasonable attorney's fees and expenses as determined by the jury, pursuant to O.C.G.A. §§ 13-6-9 and 13-6-11.

129.

By virtue of Defendants acting in bad faith as set forth above, Plaintiffs are entitled to recover reasonable attorney's fees pursuant to O.C.G.A. § 13-6-11.

**WHEREFORE: Plaintiffs pray for the following:**

a.      That service of process be had upon the Defendants,

b.      That this case be tried before 12 fair and impartial jurors on all issues so triable,

c.    That judgment be entered against the Defendants in amounts in excess of $10,000.00 with all costs to be taxed against the Defendants,

d.    That Plaintiffs recover a judgment against Defendants for punitive damages in an amount sufficient to punish Defendants and deter Defendants from similar conduct in the future;

e.    That the Court grant the Plaintiffs all other relief that it deems appropriate.

This 22nd day of February, 2023.

Respectfully submitted,

**PRIETO, MARIGLIANO, HOLBERT & PRIETO, LLC**

*/s/ Joan M. Woolley*
Michael A. Prieto
Georgia Bar No.:  587236
William F. Holbert
Georgia Bar No.:  360088
Joan M. Woolley
Georgia Bar No.: 315913
*Attorneys for the Plaintiffs*

1555 Mount Vernon Road
Atlanta, GA  30338
P: 404-856-0040 ● F: 404-856-0066
mprieto@pmhplaw.com
bholbert@pmhplaw.com
jwoolley@pmhplaw.com
www.pmhplaw.com