*BETTY MARTIN, INDIVIDUALLY, and FRANK MARTIN, JR., as ANTICIPATED ADMINISTRATOR of the ESTATE of FRANK MARTIN, SR., DECEASED, v. ROBERTA OPERATOR, LLC d/b/a ROBERTA HEALTH AND REHAB; GBD, LLC; BARRES, LLC; T AND C CAPITAL ASSETS, LLC; WINDWARD HEALTH PARTNERS, LLC; MISSION HEALTH OF GEORGIA, LLC; ABC CORPORATIONS; AND JOHN/JANE DOES I and II,*
*State Court of Gwinnett County, State of Georgia*
*Civil Action File Number:  23-C-01217-S7*

*BETTY MARTIN, INDIVIDUALLY, and FRANK MARTIN, JR., as ANTICIPATED ADMINISTRATOR of the ESTATE of FRANK MARTIN, SR., DECEASED, v. ROBERTA OPERATOR, LLC d/b/a ROBERTA HEALTH AND REHAB; GBD, LLC; BARRES, LLC; T AND C CAPITAL ASSETS, LLC; WINDWARD HEALTH PARTNERS, LLC; MISSION HEALTH OF GEORGIA, LLC; ABC CORPORATIONS; AND JOHN/JANE DOES I and II,*
*USDC, Northern District, Atlanta Division*
*Civil Action File Number:  TBA (Removal # )*

# EXHIBIT B:  PETITION FOR REMOVAL

## <u>ALL PLEADINGS FILED IN THE STATE COURT OF GWINNETT COUNTY</u>

E-FILED IN OFFICE - CB
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

23-C-01217-S7
2/22/2023 7:23 PM
TIANA P. GARNER, CLERK

## General Civil and Domestic Relations Case Filing Information Form

☐ Superior or ☒ State Court of __Gwinnett_____ County

| For Clerk Use Only |
|---|
| **Date Filed** _____<br>**MM-DD-YYYY**      **Case Number** _____ |

| **Plaintiff(s)** | **Defendant(s)** |
|---|---|
| Betty Martin, Individually, and Frank Martin, Jr., as | ROBERTA OPERATOR, LLC d/b/a ROBERTA HEALTH AND REHAB; GBD, LLC; |

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

Anticipated Adminstrator of the Estate of Frank Martin, Sr., Deceased

BARRES, LLC; T AND C CAPITAL ASSETS, LLC;

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

WINDWARD HEALTH PARTNERS, LLC; MISSION HEALTH OF GEORGIA, LLC;

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

ABC Corporations; and John/Jane Does I and II

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

**Plaintiff's Attorney** __William F. Holbert__ **State Bar Number** __360088__ **Self-Represented** ☐

### Check one case type and one sub-type in the same box (if a sub-type applies):

**General Civil Cases**

- ☐ **Automobile Tort**
- ☐ **Civil Appeal**
- ☐ **Contempt/Modification/Other Post-Judgment**
- ☐ **Contract**
- ☐ **Garnishment**
- ☐ **General Tort**
- ☐ **Habeas Corpus**
- ☐ **Injunction/Mandamus/Other Writ**
- ☐ **Landlord/Tenant**
- ☐ **Medical Malpractice Tort**
- ☐ **Product Liability Tort**
- ☐ **Real Property**
- ☐ **Restraining Petition**
- ☒ **Other General Civil**

**Domestic Relations Cases**

- ☐ **Adoption**
- ☐ **Contempt**
  - ☐ **Non-payment of child support, medical support, or alimony**
- ☐ **Dissolution/Divorce/Separate Maintenance/Alimony**
- ☐ **Family Violence Petition**
- ☐ **Modification**
  - ☐ **Custody/Parenting Time/Visitation**
- ☐ **Paternity/Legitimation**
- ☐ **Support – IV-D**
- ☐ **Support – Private (non-IV-D)**
- ☐ **Other Domestic Relations**

☐ Check if the action is related to another action pending or previously pending in this court involving some or all of the same: parties, subject matter, or factual issues. If so, provide a case number for each.

_____      _____
**Case Number**                       **Case Number**

☒ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in OCGA § 9-11-7.1.

☐ Is a foreign language or sign-language interpreter needed in this case? If so, provide the language(s) required.

_____ **Language(s) Required**

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

Version 1.1.20

E-FILED IN OFFICE - CB
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-01217-S7**

**2/22/2023 7:23 PM**
TIANA P. GARNER, CLERK

## AFFIDAVIT OF COLLEEN A. DISHMAN, BSN, RN-BC

Personally, appeared before me, the undersigned officer duly authorized to administer oaths, Colleen A. Dishman, BSN, RN-BC, who, after being duly sworn, deposes and states the following:

1.

I am of sound mind and legal age and am fully competent to testify to the matters stated herein. I make this affidavit upon my own personal knowledge unless otherwise stated herein.

2.

I am a Registered Nurse licensed to practice nursing in the State of North Carolina. I am currently a full-time nurse in a long-term care center and provide patient-centered care to patients receiving sub-acute rehabilitation after hospitalization. I have extensive nursing experience in acute and long-term care settings. I also have experience in nursing management and have served as Supervisor and Director of Nursing at several rehabilitation and long-term care facilities. As shown in my attached CV, I was active in practice in a long-term care facility and/or a hospital setting where I provided frequent and regular care to geriatric residents requiring all aspects of care including wound care for three (3) of the last five (5) years immediately preceding Defendants' negligent treatment of Mr. Frank Martin at Roberta Health and Rehabilitation facility (hereinafter "Roberta HR").

3.

Specifically, from 2018 to the present, I have served as the Director of Nursing at two (2) long- term care facilities and presently employed as a coordinator of care and patient advocate for the residents. In this role, I am responsible for the development and implementation of care strategies and for overseeing and supervising the nursing care and activities of daily living

("ADL") care provided by the nursing staff within the facility. Additionally, I will monitor and provide care to residents with issues involving wound care and treatment, pain management, and hydration and nutrition support. Many of these residents require extensive assistance with ADLs. My resident care duties include, but are not limited to, the following:

a. Develop individualized care plans for the residents by consulting with other health care members, the patient and family;

b. Serve as the patient advocate to obtain the highest standard of care for all of the resident's needs;

c. Providing care, developing care plans, and implementing interventions for residents at risk for skin breakdown;

d. Making rounds regularly to observe outcomes, and assessing residents to ensure care plans and physicians' orders are being followed and resident ADL care is properly given; and

e. Regularly providing or arranging one-on-one nursing education to staff throughout the COVID-19 facility outbreak

4.

From 2010 through 2018, I served as Director of Nursing at three (3) different healthcare facilities where I provided supervision to all departments. My responsibilities included overseeing and supervising nursing care, and providing hands-on resident care.  I was involved in various research projects to improve the outcomes for the residents.   The outcome of the wound project improved wound outcomes by reducing in-house acquired pressure ulcers by 70%.

5.

For a more detailed description of my credentials, including my education, training, experience, and employment history, I have attached a true and correct copy of my updated CV to this affidavit.

6.

Based on the foregoing, I have extensive education, training, and experience in all aspects of the provision of nursing care and wound treatment to patients in a medical facility for at least three (3) out of the five (5) years preceding Mr. Martin's residency at Roberta HR.

7.

Pursuant to my education, training, and experience, I am familiar with the guidelines and regulations of long-term care facilities, including the requirement to comply with physicians' orders and advocate for patients to continually receive proper care.

8.

Also, pursuant to my education, training, and experience, I am familiar with the proper care of patients who have had medical conditions similar to those of Frank Martin, including, but not limited to, cerebral vascular accident, hypertension, and dementia.

9.

Pursuant to my education, training, and experience, I am fully familiar with the long-term care facility requirements for a resident's physical condition to be monitored and care rendered as ordered.

10.

Pursuant to my education, training, and experience, I am fully aware of the circumstances under which a resident is in need of the services of a physician for care and treatment following

an acute condition change.  My experience includes the provision of emergency medical care when the resident needs it.

11.

As a result of my education, training, and experience outlined above, I am well-qualified to testify as to the acceptable standards of care with respect to the below-referenced aspects of nursing care that occurs at a nursing home, assisted living facility, and/or in any type of long-term care setting.

12.

The standard of care in a long-term care setting requires staff to prepare proper assessments and care plans for the identification of residents at risk for skin breakdown and to provide proper care for prevention of the same.

13.

The standard of care in a long-term care setting requires staff to provide appropriate monitoring and update care plans when the needs of a resident have changed substantially.

14.

The standard of care in a long-term care setting requires staff to recognize significant changes in a resident and initiate a resident's transfer to an acute care center sufficient to meet the resident's needs.

15.

The standard of care in a long-term care setting requires staff to obtain immediate emergency or hospital care when the resident's condition requires it.

16.

I have reviewed records and charts related to the medical and nursing care, treatment, and services provided to Frank Martin while he was a resident at Roberta HR. In addition, I am familiar with the allegations of the Complaint to which this affidavit is attached.

17.

Based upon my review of the records, I have learned the following, which I will assume to be true for purposes of this affidavit:

a.      On July 22, 2020, Frank Martin was admitted to Roberta HR following a hospital admission. He was sixty-four (64) years old at the time and had a history of hypertension, dysphagia with g-tube placement, cerebrovascular accident, and dementia.

b.      On admission, he was placed on COVID isolation per facility policy. He was COVID negative at the time. He was receiving tube feedings for nutrition. He weighed 186 lbs.

c.      On July 23, 2020, he was noted to have three stage II pressure ulcers and two suspected deep tissue injuries. A baseline care plan addressing his skin integrity was developed but did not include any pressure reducing devices. The Braden Scale Assessment was performed and based on his score of 9, Mr. Martin was noted to be at very high risk for skin breakdown.

d.      On July 29, 2020, the MDS Assessment indicated Mr. Martin required extensive assistance of two for bed mobility and dependent for all other activities of daily living. Mr. Martin was noted to have two stage II pressure ulcers, one unstageable ulcer due to slough/eschar, and two deep tissue injuries.

e.     On August 2, 2020, the Dietary Note indicated Mr. Martin's enteral feedings were inadequate in all nutrients.

f.     On August 5, 2020, the Weekly Pressure Report indicated Mr. Martin had five areas of skin breakdown.

g.     On August 10, 2020, the Treatment Administration Record indicated the pressure ulcer treatments had not been signed off as completed per order.

h.     On August 19, 2020, the Weekly Pressure Report indicated Mr. Martin had five areas of skin breakdown.

i.     On August 24, 2020, the Nurses Note indicated Mr. Martin's weight had decreased to 180 lbs.

j.     On September 2, 2020, the Weekly Pressure Report indicated Ms. Martin had five areas of skin breakdown.

k.     On September 11, 2020, the Weekly Pressure Report indicated Ms. Martin had nine areas of skin breakdown.

l.     On September 30, 2020, the Weekly Pressure Report indicated Ms. Martin had six areas of skin breakdown, with deterioration to stage III on his sacral ulcer, right inner knee and left inner knee ulcers.

m.     On October 5, 2020, the Dietary Note indicated Mr. Martin's enteral formula was inadequate in protein and calories.

n.     On October 7, 2020, the Weekly Pressure Report indicated Mr. Martin had six areas of skin breakdown. His sacral pressure ulcer had deteriorated to a stage IV, and he had unstageable ulcers due to slough, to his left hip and left inner knee.

o.  On October 19, 2020, the Dietary Note indicated Mr. Martin's enteral feedings were still inadequate for protein.

p.  On October 29, 2020, the MDS Assessment indicated Mr. Martin had one stage II pressure ulcer, one stage III pressure ulcer, one stage IV pressure ulcer, and three deep tissue injuries.

q.  On November 1, 2020, the Treatment Administration Record indicated four missed treatments during the month of November.

r.  On November 2, 2020, the Nurses Note indicated Mr. Martin's sacral ulcer and left inner knee ulcer had increased in size and had an increased amount of drainage.

s.  On November 11, 2020, the Nurses Note indicated Mr. Martin's sacral ulcer, stage IV, had slough and eschar tissue, and a large amount of foul-smelling drainage with some active bleeding. The area measured 5.5 x 5 x 3.5 cm with 2.2 cm of tunneling. The pressure ulcer to his left hip, unstageable due to eschar, measured 5.9 x 6.9 cm. The pressure ulcer to his left inner knee, unstageable due to eschar, measured 3.7 x 3.5 cm. He also had a stage II pressure ulcer to his right heel and a stage III pressure ulcer to his right knee.

t.  On November 12, 2020, cultures of his left hip and sacral pressure ulcer were obtained. The cultures were reported positive on November 18, 2020, and antibiotics were ordered.

u.  On November 20, 2020, the Nurses Note indicated Mr. Martin had been referred to a Wound Clinic.

v.      On November 20, 2020, the Nurses Note indicated Mr. Martin's sacral pressure ulcer and left hip ulcer had continued to deteriorate with increased drainage and worsening appearance.

w.     On November 25, 2020, Mr. Martin was noted to have eleven areas of skin breakdown.

x.      On December 3, 2020, the Nurses Note indicated Mr. Martin's sacral wound had deteriorated. The wound bed contained gray/black with soft stringy-like tissue. The nurse was able to see an imprint of the bone. There was a large amount of foul pus-like drainage.

y.      On December 6, 2020, the Treatment Administration Record noted the treatment to Mr. Martin's pressure ulcers had not been completed.

z.      On December 8, 2020, the Wound Clinic Note indicated Mr. Martin had presented for initial assessment. He had multiple pressure ulcers including stage IV ulcers to his sacrum and left trochanter, a stage II to his knee, and unstageable ulcers to his ankle and foot. Treatment to the ulcers were changed and off-loading and turning every two hours were recommended.

aa.    On December 9, 2020, Mr. Martin's sacral ulcer, stage IV measured 8.5 x 9.9 x 4.2 with 7.0 cm tunneling at 11 o'clock. The wound contained eschar and had a large amount of foul-smelling drainage. His left hip ulcer, unstageable, measured 8 x 9 x 2.0 cm with 5.0 cm tunneling at 11 o'clock. The wound bed contained slough and there was a large amount of purulent drainage.

bb.    On December 11, 2020, the Lab Report noted an elevated white blood count of 22.5.

cc.     On December 12, 2020, Mr. Martin was admitted to Hospice Care.

dd.     On December 27, 2020, the Weekly Pressure Report noted Mr. Martin's sacral ulcer, stage IV measured 9 x 10.2 x 4.2 with 7.0 cm of tunneling at 11 o'clock. The wound bed contained eschar. There was a large amount of foul-smelling drainage and active bleeding noted when the dressing was removed. The left hip ulcer, unstageable measured 8 x 9 x 2.5 cm with 5.0 cm tunneling at 11 o'clock. The wound bed contained slough. There was a large amount of purulent drainage. The left inner foot, stage II ulcer, measured 2 x 2 cm. The right inner knee ulcer, stage III, measured 0.5 x 0.5 cm. The left inner knee ulcer, unstageable, measured 4.1 x 3.5 x 0.3. The wound bed contained slough and there was a moderate amount of drainage. The right ankle ulcer, unstageable, measured 3.8 x 3.4 cm. The wound bed contained eschar and there was a moderate amount of drainage. Pain was noted during treatment of these ulcers.

ee.     The January 2021 Treatment Administration Record noted multiple missed treatments.

ff.     On January 19, 2021, the Wound Clinic Note indicated Mr. Martin's trochanter and sacral ulcer had been debrided to remove slough.

gg.     On January 27, 2021, the Weekly Pressure Report noted Mr. Martin had seven areas of skin breakdown. Those areas included:

- Lower sacral area, stage IV, measuring 9 x 10.1 x 4.2 with 7.5 cm tunneling at 11 o'clock. Eschar was present in the wound bed. There was a large amount of malodorus drainage. Bone could be palpated in this ulcer.

- Left hip, stage IV, measuring 8.5 x 9 x 7.8 cm with 7.0 cm tunneling at 7 0'clock. The wound bed contained slough, and there was a large amount of drainage. Bone was palpable within this ulcer.

- Left inner foot, stage II, measuring 1.2 x 1.4.

- Left inner knee, stage III, measuring 3.6 x 3.3 x 0.2. The wound bed contained slough, and there was a moderate amount of drainage.

- Right ankle ulcer, stage III, measuring 3.7 x 3.5. The wound bed contained slough, and there was a small amount of drainage.

- Right side, upper back, stage III, measuring 9.3 x 8.3. The wound bed contained slough, and there was a moderate amount of drainage.

- Right hip/buttocks ulcer, stage II measuring 7.6 x 3.1.

hh.   On January 27, 2021, the Nurses Note indicated the pressure ulcer to Mr. Martin's upper back had deteriorated. It was now unstageable with eschar, and measured 9.5 x 8.5 cm. The ulcer to his right hip/buttock had a dark purple/black center and measured 7.6 x 3.2.

ii.   On March 3, 2020, the Weekly Pressure Report noted Mr. Martin continued to have eight areas of skin breakdown. His pressure ulcers continued to deteriorate and were documented as painful.

jj.   On March 7, 2021, Mr. Martin died.

18.

Based upon the above facts, I have developed the following opinions about the care, treatment, and services that the Roberta HR staff provided to Frank Martin:

1.      Roberta HR staff deviated from the standard of care by failing to develop a resident centered care plan, and failed to closely monitor, and implement adequate interventions for a resident at high risk for skin breakdown, pressure ulcers, and infection. The care plan was not updated with additional interventions as Mr. Martin developed additional ulcers and/or when his ulcers deteriorated.

2.      Specifically, Roberta HR staff deviated from the standard of care by failing to develop a wound care plan of care until November, 2020 for Mr. Martin even though he was admitted with skin breakdown in July, 2020.

3.      Roberta HR staff deviated from the standard of care by failing to timely notify Mr. Martin's primary care physician of the deteriorating skin breakdown and/or to consult with the wound care physician earlier in his care to prevent the wounds from deteriorating to a Stage IV with support tissue and bone exposed.

4.      Roberta HR staff deviated from the standard of care by failing to timely and properly assess Mr. Martin for skin breakdown, failing to develop a care plan to adequately address Mr. Martin's skin breakdown, failing to implement appropriate interventions to prevent and treat skin breakdown, and failing to re-assess the efficacy of Mr. Martin's care plan and make appropriate changes to treatments and interventions as needed.

5.      Roberta HR staff deviated from the standard of care by failing to timely and properly assess Mr. Martin's nutritional status, failing to develop a care plan to adequately address Mr. Martin's nutritional needs, failing to implement appropriate interventions to prevent and address weight loss, and failing to re-assess the efficacy of Mr. Martin's nutritional care plan.

6.      Roberta HR staff deviated from the standard of care by failing to follow physician's orders by failing to provide ordered care and treatment.

7.      Roberta HR staff deviated from the standard of care by failing to provide Mr. Martin the highest practicable physical, mental, and psychosocial well-being.

19.

As a result of each one of the above-described failures to follow the acceptable standards of care, Frank Martin lacked appropriate health care, causing tremendous struggle, suffering, and death.

20.

This Affidavit is given pursuant to the provisions of Official Code of Georgia Annotated§ 9-11-9.1, which states that a single negligent act or omission be specified in order for a Complaint to be filed in the Courts of Georgia.  It is not intended to encompass all of the opinions presently held by me.  Rather, as discovery progresses and additional information becomes available, I reserve the right to modify or alter or form additional opinions.

Further affiant sayeth not.

This 27 day of September, 2022.

COLLEEN A. DISHMAN, BSN, RN-BC

Sworn to and subscribed before me

this 27th day of September, 2022.

Notary Public
My commission expires:

# Colleen A. Dishman

## BSN, RN-BC

## Contact

101 E. Central Ave
Catawba, NC 28609
(828) 234-4834
colleen.a.dishman@gmail.com

## Education

Appalachian State University
Boone, NC
Bachelor of Science in Nursing

Catawba Valley Community
College
Hickory, NC
Associate of Science in Nursing

Lenoir-Rhyne College
Hickory, NC
Bachelor of Arts, International
Relations

## Key Skills

Quality Measures
Electronic Health Records
QAPI
Regulatory Compliance
Infection Control, SPICE Certified
Grant Writing
Wound Care
Nursing Care
Procurement/Purchasing
Care Planning
Empathy
Patient Assessment
Safety
Patient & Family Education
Critical Thinking

## Objective

Self-motivated nurse with 15 years of healthcare experience with a diverse background of patient care opportunities and strong clinical skills. Currently pursuing a doctorate of nursing practice (DNP) in nursing informatics with a goal of utilizing clinical assessment skills to improve efficiency and work flow of clinical information systems.

## Professional Experience

June 2020 - present
Nurse • Trinity Village, Lutheran Services of the Carolinas

- Provide patient-centered care to patients receiving sub-acute rehabilitation after hospitalization
- Serve as a patient advocate, coordinating services, care and consultations and developed care plans according to patient need
- Communicate with interdisciplinary team to create plan of care for patients with goal of returning home after illness
- Provide direct care to COVID-19 patients during facility outbreaks
- Supervise clinical staff, including RN, LPN, CMA, CMT and CNA, to ensure patient care is delivered within regulatory compliance and meetings company policies and procedures

March 2019 – June 2020
Director of Nursing • Autumn Care of Statesville

- Improved Quality Measure star-rating to 5 stars from 3 stars
- Reduced "Return to Hospital" average rates (RTH) from 30% to ≤10% (national benchmark is 13%)
- Developed Antibiotic Stewardship program and reduced nosocomial infection rates by 27% in 2019
- Improved wound management program and reduced in-house acquired pressure ulcers by 70%

September 2018 – March 2019
Director of Nursing • Cardinal Healthcare & Rehabilitation Center
- Reduced "Return to Hospital" average rates (RTH) from 33% to 15% (national benchmark is 13%)
- Improved Quality Measure star-rating to 5 stars from 4 stars

## Licensure & Certifications

Registered Nurse, NC #231800

BLS

ANCC Board Certified, Gerontological Nursing

## References

Chris Simmons
(828) 578-1928
chrisesimmons@gmail.com

Jonell Fields, RN
(828) 732-7132
jfields@catawbavalleymc.org

Jacob Vosburg, LPN
(828) 358-7526
vosburgjacob@yahoo.com

• Reduced restraint/alarm use by 50% and eliminated bed/chair alarms

May 2012 – September 2018
Interim Director of Nursing • Assistant Director of Nursing, Staff Development Coordinator, Nursing Supervisor • Conover Nursing & Rehabilitation Center
• Reduced "Return to Hospital" average rates (RTH) from 33% to 12% (national benchmark is 13%)
• Eliminated alarms from facility
• Transitioned facility from paper charting to Electronic Health Records

December 2012 – February 2015
Director of Healthcare Services • Greater Hickory Cooperative Christian Ministry

• Awarded $535,000 in grant funds to provide paid clinical providers
• Increased dental services by 400%
• Created discharge program with local hospitals to provide day-of-discharge prescriptions and PCP follow-up to prevent rehospitalization
• Increased primary care visits by 150%
• Improved health outcomes to below state benchmarks (HTN, DM, COPD) as monitored by the NC Association of Free Clinics

December 2010 – May 2012
Unit Manager • Carolina Rehabilitation of Burke

June 2010 – December 2010
Third Shift Supervisor • Lutheran Services of the Carolinas

April 2006 – June 2010
Pharmacy Buyer, Pharmacy/Nursing Liaison • Catawba Valley Medical Center

E-FILED IN OFFICE - CB
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-01217-S7**

**2/22/2023 7:23 PM**

**TIANA P. GARNER, CLERK**

IN THE STATE COURT OF GWINNETT COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| BETTY MARTIN, INDIVIDUALLY, and | ) | |
| FRANK MARTIN, JR., as ANTICIPATED | ) | |
| ADMINISTRATOR of the ESTATE of FRANK | ) | |
| MARTIN, SR., DECEASED, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION FILE NO.: |
| v. | ) | 23-C-01217-S7 |
| | ) | _____ |
| ROBERTA OPERATOR, LLC d/b/a ROBERTA | ) | |
| HEALTH AND REHAB; GBD, LLC; BARRES, | ) | |
| LLC; T AND C CAPITAL ASSETS, LLC; | ) | |
| WINDWARD HEALTH PARTNERS, LLC; | ) | |
| MISSION HEALTH OF GEORGIA, LLC; | ) | |
| ABC CORPORATIONS; AND JOHN/JANE | ) | |
| DOES I and II, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF BETTY MARTIN, INDIVIDUALLY'S, FIRST INTERROGATORIES TO
DEFENDANT ROBERTA OPERATOR, LLC d/b/a ROBERTA HEALTH AND REHAB**

NOW COMES Betty Martin, Individually, Plaintiff in the above-styled civil action, and pursuant to the provisions of O.C.G.A. § 9-11-33 serves upon Defendant Roberta Operator, LLC d/b/a Roberta Health and Rehab (hereinafter "Defendant") the following Interrogatories, and requires Defendant to answer said Interrogatories separately and fully, in writing and within forty-five (45) days after service of said Interrogatories upon Defendant as provided by law.

**INSTRUCTIONS**

These interrogatories are continuing and if at any time after Defendant has initially responded to these interrogatories, new or additional information responsive to any of these interrogatories comes to the attention of or into the actual and/or constructive possession of Defendant within the scope of OCGA § 9-11-26, then Defendant is required accordingly, to

furnish such new or additional information to Plaintiff and to file and serve upon counsel for Plaintiff supplemental responses to these interrogatories.

(A)     When used in these interrogatories, the terms "Defendant," "Defendants," "you," "your," or any synonym thereof, are intended to and shall embrace and include each of the Defendants designated in the complaint unless otherwise specified. In addition, these terms are meant specifically to incorporate and encompass agents, servants, employees, representatives, private investigators, attorneys and others who are in possession of or may have obtained information for or on behalf of Defendants, individually and collectively.

(B)     The terms "identification," "identify" or "identity," when used in reference to a natural person, shall mean to state the full name, the present or last known home and business addresses, home and business telephone numbers, their employer and job title and present whereabouts for each such person.

(C)     The terms "identification," "identify," or "identity" when used in reference to a corporation or other entity or person, shall mean to state the full legal name, state of incorporation or organization, address of the home office, the principal place of business and registered agent for service of process.

(D)     The terms "identification," "identify," or "identity," when used in reference to a document or file shall mean its author, the manner and date or time period in which it originated, was developed or kept, its original location, its present location, and all persons who have been custodian of the document or file. Such identification should be made with a significant level of particularity to enable you to respond to a request to produce same.

(E)     The words "related to" or "relating to" shall include pertaining to, concerning, respecting, referring to, summarizing, digesting, embodying, reflecting, establishing, tending to

establish, derogating from, tending not to establish, evidencing, comprising, concerned with, commencing on, responding to, disagreeing with, showing, describing, analyzing, representing, constituting, or including.

(F)     The words "document" or "documents" are used in their broad and liberal sense and shall mean the original (or, if the original is not available, the best copy available) of any and all information in tangible or other form and shall include, without limiting the generality of the foregoing, all letters, correspondence, contracts, agreements, memoranda, mechanical and electronic recordings, calendar an diary entries, notes or memoranda of conversations, telephonic or otherwise, and of meetings or conferences, studies, reports, recommendations, quotations, offers, inquiries, bulletins, summaries, newsletters, compilations, specifications, maps, charts, blueprints, diagrams, graphs, photographs, pictures, film, videotapes, microfilm, propositions, articles, announcements, newspaper clippings, books, books of account, ledgers, vouchers, cancelled checks, invoices, bills, receipts, opinions, certificates, and writings of any kind, and all other tangible things upon which any handwriting, typing, printing, drawings, representation, photostatic or other copy, or other graphic matter, magnetic or electrical impulses, or other form of communication is recorded or produced, including audio and video recordings and computer stored information, whether or not in printer form and all rough drafts and revised drafts (including all handwritten notes or other marks on same), and all other drafts and copies of documents as hereinbefore defined by whatever means made.  If multiple copies of a document exist, each copy which is being identified, produced, or identified as a privileged document shall also be produced or so identified.  Also to be identified or produced are all documents clipped, stapled, or otherwise attached to all described or requested documents.

(G)     The words "person" or "persons" mean all natural persons ("individual" or "individuals") and entities including without limitation:  corporations, companies, partnerships, limited partnerships, joint ventures, trusts, estates, associations, public agencies, departments, bureaus or boards.

(H)     A "communication" shall mean every manner or means of disclosure, transfer, or exchange of information whether orally or face-to-face or by telephone, mail, personal delivery, documents, and otherwise.

(I)     The words "and" as well as "or" shall be construed either conjunctively or disjunctively as necessary to bring within the scope of these interrogatories any information which might otherwise be construed to be outside their scope.

(J)     "All" includes the word "any," and "any" includes the word "all."   "Each" includes the word "every" and "every" includes the words "each."

(K)     The word "Plaintiffs" refers to and shall be construed to mean the Plaintiffs named in the style of the case unless so stated in the interrogatory.  The word "Resident" refers to and shall be construed to mean Frank Martin, Sr. unless so stated in the interrogatory.

(L)     The term "charting error" shall refer to anything in the medical record of Frank Martin, Sr. that is inaccurate, untrue, false, incorrect, erroneous, misleading, deceptive or any information known to Defendants that should be contained in the chart of Frank Martin, Sr. that is not contained therein.

(M)     Should Defendants claim as privileged any document for which identification is requested by any of the following interrogatories, Defendants shall list each such document in such a manner to allow for its identification in the event of a motion to compel and, additionally, Defendants shall indicate the ground on which the claim of privilege, the date, author and title of

each document, the portion of the document to which the claim of privilege extends and the identity of all persons, corporations or other entities to whom the document has been shown, in order that the Court can determine whether such document is, in fact, privileged.

(N)     If you cannot answer any of the following interrogatories in full after exercising due diligence to secure the information to do so, so state and answer to the extent possible, specifying your inability to answer the remainder, and stating what information or knowledge you have concerning the unanswered portions.

## **INTERROGATORIES**

1.

Please provide the following information regarding the ownership of all Defendants named in this action during the timeframe of July 22, 2019 to present.

   a)  The name and last known address of each individual and entity with any ownership interest in any or all Defendant corporations/business entities at any and all times during that period, whether the ownership interest is direct, indirect, contingent or otherwise, or as a debtor or creditor,

   b)  The dates that each person and entity owned such interest during that period,

   c)  The exact nature of each ownership interest of each person and entity identified in your responses above.

2.

Please state the exact nature of the business relationship between each and every one of the Defendant entities in this action during the timeframe of July 22, 2019 to present.

3.

If at any time during the timeframe of July 22, 2019 to present there has been any agreement between any or all Defendant entities designed to limit any or all of the Defendant's liability(ies) arising from the operation of Roberta Health and Rehab (hereinafter referred to as the "Facility"), please provide the following:

a) The exact nature and language of each such agreement,

b) The date upon which each such agreement was entered by each Defendant,

c) Please identify each and every document which defines, sets out, memorializes, or is in any way related to any such agreement.

4.

Were/Are any or all of the corporate Defendants, or any other persons or entities entitled to share profits generated as a result of the operation of the Facility from July 22, 2019 to present?  If so, please provide the following:

a) Identify each Defendant, and each person and entity entitled to share profits from operation of the Facility.

b) Provide the exact language and describe the exact nature of the agreement pursuant to which each Defendant corporate entity, person and/or other entity is entitled to share in the profits,

c) Identify each and every document which defines, sets out, specifies, explains, describes and/or which is in any way related to the agreement pursuant to which profits are divided between each Defendant, person and/or entity.

5.

Please identify by name and business address each and every person and/or entity with an ownership interest in any land, building, motor vehicle, fixture, furniture, equipment and all other assets and materials used in the operation of the Facility at any and all times from July 22, 2019 to present.   Describe the nature of the ownership interest of each person and entity.

6.

Please provide the names, last known home and business address, telephone number title and dates of employment of each and every officer, director, manager and supervisor of each of the Defendant corporations/business entities for the period from July 22, 2019 to present. Specifically identify all board members that the Defendants share(d) in common for July 22, 2019 to present.

7.

Identify by name, last known home and business address, telephone number, employment title, and current employer of each administrator, medical director, director of nursing and assistant director of nursing at the Facility during the time of Frank Martin, Sr.'s residence, and provide the dates of each person's service in that capacity.

8.

For each person who provided medical care, treatment and/or health care services of any type to Frank Martin, Sr. at the Facility from July 22, 2020 through March 7, 2021, please state the following:

a)  Their name, last known address, telephone number and all email addresses,

b)  Their last known employer, title and duties,

c)  Their current employer, title and duties,

d) Their dates of employment at each of the above employments,

e) Describe their involvement in the care and treatment of Frank Martin, Sr.,

f) Whether they are a current or former employee of Defendants.

**(Simply referring Plaintiff to the Medical Chart is not a sufficient response to this request as this request seeks more information than the names of individuals.)**

9.

Please identify each person who had any supervisory role over persons employed and/or otherwise providing nursing and/or medical services to Frank Martin, Sr. in the Facility from July 22, 2020 through March 7, 2021.  For each such person, please provide the following:

a) Their name, last known address, telephone number and all email addresses,

b) Their last known employer, title and duties,

c) Their current employer, title and duties,

d) Their dates of employment at each of the above employments,

e) Describe their involvement in the care and treatment of Frank Martin, Sr.,

f) Whether they are a current or former employee of Defendants.

**(Simply referring Plaintiff to the Medical Chart is not a sufficient response to this request as this request seeks more information than the names of individuals.)**

10.

For each person who was a part of the nursing staff who provided medical care, treatment and/or health care services of any type to Frank Martin, Sr. at the Facility from July 22, 2020 through March 7, 2021, please state the following:

g) Their name, last known address, telephone number and all email addresses,

h) Their last known employer, title and duties,

-8-

    i)   Their current employer, title and duties,

    j)   Their dates of employment at each of the above employments,

    k)   Describe their involvement in the care and treatment of Frank Martin, Sr.,

    l)   Whether they are a current or former employee of Defendants.

**(Simply referring Plaintiff to the Medical Chart is not a sufficient response to this request as this request seeks more information than the names of individuals.)**

11.

For each person who was a part of the non-nursing staff, including but not limited to CNAs and restorative aids, who provided medical care, treatment and/or health care services of any type to Frank Martin, Sr. at the Facility from July 22, 2020 through March 7, 2021, please state the following:

    a)   Their name, last known address, telephone number and all email addresses,

    b)   Their last known employer, title and duties,

    c)   Their current employer, title and duties,

    d)   Their dates of employment at each of the above employments,

    e)   Describe their involvement in the care and treatment of Frank Martin, Sr.,

    f)   Whether they are a current or former employee of Defendants.

**(Simply referring Plaintiff to the Medical Chart is not a sufficient response to this request as this request seeks more information than the names of individuals.)**

12.

For each person who was an outside consultant who provided medical care, treatment and/or health care services of any type to Frank Martin, Sr. at the Facility from July 22, 2020 through March 7, 2021, please state the following:

a)  Their name, last known address, telephone number and all email addresses,

b)  Their last known employer, title and duties,

c)  Their current employer, title and duties,

d)  Their dates of employment at each of the above employments,

e)  Describe their involvement in the care and treatment of Frank Martin, Sr.,

f)  Whether they are a current or former employee of Defendants.

**(Simply referring Plaintiff to the Medical Chart is not a sufficient response to this request as this request seeks more information than the names of individuals.)**

13.

State the name, last known address, telephone number and employer of any person, including any party who to your knowledge, information or belief was an eyewitness to any of the facts or circumstances complained of in the complaint, and describe the general subject matter of that knowledge, or who has some knowledge of any fact or circumstance complained of in the complaint, and describe the general subject matter of that knowledge.

14.

Pursuant to the provisions of O.C.G.A. § 9-11-26(b)(4)(A)(i), defendant is requested to identify each person whom defendant expects to call as an expert witness at trial, state the subject matter on which such expert is expected to testify, and state the substance of the facts and opinions to which the expert is expected to testify and the summary of the grounds of each opinion.

15.

If Plaintiff has failed to name all parties with an ownership, management, operational interest/responsibility and/or any consulting interest/responsibility in the Facility during the time period of Frank Martin, Sr.'s residency, please identify all such parties.

16.

Identify each and every insurance policy, contract or agreement pursuant to which any insurer is or may be liable to cover all or a portion of any judgment against any or all of the Defendants in this lawsuit.  For each such policy, provide the name and address of the insurer, the insurance agent through whom the policy was obtained, the policy number, the claim number associated with this lawsuit, and the limits of liability coverage.

17.

Identify and describe with specificity each and every complaint whether written or verbal received by Defendants which in any way concerns or relates to care, treatment, monitoring and/or supervision of Frank Martin, Sr. from July 22, 2020 through present.

18.

State whether Defendant was investigated by any state or federal agency with respect to any circumstances or incident involving Frank Martin, Sr. If so, state the date(s) of such investigation(s), and state and describe any findings or deficiencies that were found.

19.

Identify each and every "charting error" known by these Defendants to be contained in the Facility's nursing home record of Frank Martin, Sr.

-11-

20.

Please state whether any medical record has been altered, changed, and/or modified since Frank Martin, Sr.'s care and treatment, identifying what has been changed, when it was changed, who changed it, and why it was changed.

21.

Please identify the brand, model, and version of the medical records keeping systems used by Defendants to create and maintain Frank Martin, Sr.'s medical records.

22.

Please identify the platforms, programs, applications and all other systems used to input, store, transmit, and/or manage in any way electronic medical records, and/or diagnostic, pharmaceutical and radiological information.

23.

Please identify the platforms, programs, applications and all other systems used to input, store, transmit, and/or manage in any way electronic communication such as texts, instant messages and emails between providers.

24.

Identify each and every lawsuit filed within the last five years by style and the court in which the lawsuit was filed against any of Defendants that in any way concerns the care, treatment, neglect and/or abuse of residents.  Although lawsuits are a matter of public record, the information is much more easily accessible to Defendants than to Plaintiff.

25.

State each and every fact that Defendants contend supports each and every Affirmative Defense asserted in its Answer to Plaintiffs' Complaint.

-12-

26.

Identify by name, address, employer and job title each and every individual that responded or aided in responding to these interrogatories.

27.

Please state in detail how you contend Frank Martin, Sr.'s sickness, condition and/or ailment occurred, including but not limited to Stage III and/or Stage IV skin breakdown.

28.

Describe in detail each communication, written or oral, with Frank Martin, Sr. or his family regarding the care and treatment of Frank Martin, Sr. while at the Facility.

29.

Was an investigation conducted by you, at or near the time of Frank Martin, Sr.'s injuries (including but not limited to Stage III and/or Stage IV skin breakdown), as to how the injuries occurred? If so, by whom and for what purpose?

30.

Did you report Frank Martin, Sr.'s injuries (including but not limited to Stage III and/or Stage IV skin breakdown) to any state agency?

31.

Do you contend Frank Martin, Sr.'s specific sickness, condition and/or ailment, including but not limited to Stage III and/or Stage IV skin breakdown, was of "unknown origin"?  If not, what do you contend was the origin and cause of his specific sickness, condition and/or ailment?

32.

Please identify any and all reports, notes, tracking records, logs or other compilation of pressure or decubitus ulcers/sores involving any and all residents at the Facility for the time

period of July 22, 2019 through July 22, 2021. Defendants may redact all protected health information.

33.

Please state how one shift communicates necessary resident information to the oncoming shift during the timeframe of July 22, 2019 through July 22, 2021.

34.

For each of the following individuals, please state whether he/she is a current or former employee of Defendant as well as his/her last known home and business address, email addresses, telephone number, employment title, and current employer:

(a) Rose Smith;

(b) Director of Nursing during Frank Martin, Sr.'s residency,

(c) Assistant Director of Nursing during Frank Martin, Sr.'s residency,

(d) Administrator during Frank Martin, Sr.'s residency, and

(e) Assistant Administrator during Frank Martin, Sr.'s residency.

<em>{signatures to follow}</em>

This 22nd day of February, 2023.

Respectfully submitted,

**PRIETO, MARIGLIANO, HOLBERT & PRIETO, LLC**

_/s/ Joan M. Woolley_
Michael A. Prieto
Georgia Bar No.:  587236
William F. Holbert
Georgia Bar No.:  360088
Joan M. Woolley
Georgia Bar No.: 315913
_Attorneys for the Plaintiffs_

1555 Mount Vernon Road
Atlanta, GA  30338
P: 404-856-0040 ● F: 404-856-0066
mprieto@pmhplaw.com
bholbert@pmhplaw.com
jwoolley@pmhplaw.com
www.pmhplaw.com

IN THE STATE COURT OF GWINNETT COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| BETTY MARTIN, INDIVIDUALLY, and FRANK MARTIN, JR., as ANTICIPATED ADMINISTRATOR of the ESTATE of FRANK MARTIN, SR., DECEASED, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION FILE NO.: |
| v. | ) ) | 23-C-01217-S7 |
| ROBERTA OPERATOR, LLC d/b/a ROBERTA HEALTH AND REHAB; GBD, LLC; BARRES, LLC; T AND C CAPITAL ASSETS, LLC; WINDWARD HEALTH PARTNERS, LLC;  MISSION HEALTH OF GEORGIA, LLC; ABC CORPORATIONS; AND JOHN/JANE DOES I and II, | ) ) ) ) ) ) ) ) | _____ |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of ***Plaintiff Betty Martin, Individually's,***

***First Interrogatories to Defendant Roberta Operator, LLC d/b/a Roberta Health and Rehab*** upon

all parties to this matter by serving the same with the Complaint.

Roberta Operator, LLC
d/b/a Roberta Health and Rehab
c/o Reg Agent: National Registered Agents, Inc.
289 S. Culver Street,
Lawrenceville, GA 30046-4805

GBD, LLC
c/o Reg Agent: National Registered Agents, Inc.
289 S. Culver Street,
Lawrenceville, GA 30046-4805

Barres, LLC
c/o Reg Agent: Stuart Lindeman
2907 West Bay to Bay Boulevard, Suite 303
Tampa, FL 33629

T and C Capital Assets, LLC
c/o Reg Agent: Joseph M. Passero
777 S. Harbour Island Boulevard, Suite 400,
Tampa, FL 33602.

Windward Health Partners, LLC
c/o Reg Agent: NRAI Services, Inc.
1200 South Pine Island Road
Plantation, FL 33324

Mission Health of Georgia, LLC
c/o Reg Agent: National Registered Agents, Inc.
289 S. Culver Street,
Lawrenceville, GA 30046-4805

*Signature to follow*

This 22nd day of February, 2023.

Respectfully submitted,

**PRIETO, MARIGLIANO, HOLBERT & PRIETO, LLC**

_/s/ Joan M. Woolley_
Michael A. Prieto
Georgia Bar No.:  587236
William F. Holbert
Georgia Bar No.:  360088
Joan M. Woolley
Georgia Bar No.: 315913
_Attorneys for the Plaintiffs_

1555 Mount Vernon Road
Atlanta, GA  30338
P: 404-856-0040 ● F: 404-856-0066
mprieto@pmhplaw.com
bholbert@pmhplaw.com
jwoolley@pmhplaw.com
www.pmhplaw.com

E-FILED IN OFFICE - CB
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
**23-C-01217-S7**
**2/22/2023 7:23 PM**
**TIANA P. GARNER, CLERK**

IN THE STATE COURT OF GWINNETT COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| BETTY MARTIN, INDIVIDUALLY, and | ) | |
| FRANK MARTIN, JR., as ANTICIPATED | ) | |
| ADMINISTRATOR of the ESTATE of FRANK | ) | |
| MARTIN, SR., DECEASED, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION FILE NO.: |
| v. | ) | 23-C-01217-S7 |
| | ) | _____ |
| ROBERTA OPERATOR, LLC d/b/a ROBERTA | ) | |
| HEALTH AND REHAB; GBD, LLC; BARRES, | ) | |
| LLC; T AND C CAPITAL ASSETS, LLC; | ) | |
| WINDWARD HEALTH PARTNERS, LLC; | ) | |
| MISSION HEALTH OF GEORGIA, LLC; | ) | |
| ABC CORPORATIONS; AND JOHN/JANE | ) | |
| DOES I and II, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF BETTY MARTIN, INDIVIDUALLY'S, FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS TO ALL DEFENDANTS

NOW COMES Betty Martin, Individually, Plaintiff in the above captioned case and for her first Request for Production to Defendants requests the following:

Pursuant to OCGA Section 9-11-34, Plaintiff hereby requests that each of the Defendants respond to the following requests for production, separately and completely, in writing and produce responsive documents in accordance therewith, within forty-five (45) days from the date of service thereof.

## INSTRUCTIONS

(A)    Defendants should make production responsive to these requests within the time allotted by O.C.G.A. Section 9-11-34 at the office of **Prieto, Marigliano, Holbert & Prieto, LLC, 1555 Mount Vernon Road, Atlanta, Georgia 30338**.

(B)     These Requests for Production of Documents are continuing and if, at any time after Defendants have produced the requested documents or otherwise responded hereto, further documents or other evidence identified and responsive to these Requests come into their actual or constructive possession and control, then Defendants are requested to respond by producing said documents at the aforesaid location within ten (10) days of acquiring same but in no event later than ten (10) days prior to the date of trial.

(C)     The words "document" or "documents" are used in their broad and liberal sense and shall mean the original (or, if the original is not available, the best copy available) of any and all information in tangible or other form and shall include, without limiting the generality of the foregoing, all letters, correspondence, contracts, agreements, memoranda, mechanical and electronic recordings, calendar and diary entries, notes or memoranda of conversations, telephonic or otherwise, and of meetings or conferences, studies, reports, recommendations, quotations, offers, inquiries, bulletins, summaries, newsletters, compilations, specifications, maps, charts, blueprints, diagrams, graphs, photographs, pictures, film, videotapes, microfilm, propositions, articles, announcements, newspaper clippings, books, books of account, ledgers, vouchers, canceled checks, invoices, bills, receipts, opinions, certificates, and writings of any kind, and all other tangible things upon which any handwriting, typing, printing, drawings, representation, photostatic or other copy, or other graphic matter, magnetic or electrical impulses, or other form of communication is recorded or produced, including audio and video recordings and computer-stored information, whether or not in printout form, and all rough drafts and revised drafts (including all handwritten notes or their marks on same), and all other drafts and copies of documents as hereinbefore defined by whatever means made.  If multiple copies of a document exist, each copy which is in any way not completely identical to a copy which is

being identified, produced, or identified as a privileged document shall also be produced and so identified.  Also to be identified or produced are all documents clipped, stapled, or otherwise attached to all described or requested documents.

(D)     "All" includes the word "any," and "any" includes the word "all."  "Each" includes the word "every" and "every" includes the word "each."

(E)     The terms "nursing facilities," "Defendant," "Defendants," "you," "your" or any synonym thereof, are intended to and shall embrace and include each of the Defendants in this action as identified in Plaintiffs' Complaint for Damages unless otherwise specified.  In addition, these terms are meant specifically to incorporate and encompass agents, servants, employees, representatives, private investigators, attorneys and others who are in possession of or may have obtained information for or on behalf of Defendants, individually and collectively.

(F)     A "communication" shall mean every manner or means of disclosure, transfer, or exchange of information whether oral, face-to-face, by telephone, mail, personal delivery, documents, electronic communications or otherwise between two or more persons or entities.

(G)     If any document or tangible thing requested was at any time, but is not now, in your possession or custody or subject to your control, please state what disposition was made of such document or tangible thing and when such disposition occurred.  If you decline to produce any document requested hereinafter on the basis of any privilege known in the law, then, at the time of production designated herein, as to each such document or tangible thing please provide the following written information pertaining to such document:

(1)     Its date or if not dated, the date it was prepared or received;

(2)     The type of document (e.g., letter, memorandum, telegram, chart, photograph, reproduction, email);

-3-

(3)     The author and the addressee; including the names of all persons receiving a copy;

(4)     Its present location;

(5)     The identity of the individual or person presently custodian or custodians thereof;

(6)     The number of pages thereof;

(7)     The identity of each person who received a copy of such document and the relationship of such person to any Defendant or Defendants;

(8)     Whether such document contains or relates to facts or opinions, or both; and

(9)     The nature of privilege or other grounds for refusing production (e.g., work product,) of such document and the factual and/or legal authority relied upon to support that claim.

(H)     The words "related to" or "relating to" shall include pertaining to, concerning, respecting, referring to, summarizing, digesting, embodying, reflecting, establishing, tending to establish, derogating from, tending not to establish, evidencing, comprising, connected with, commenting on, responding to, disagreeing with, showing, describing, analyzing, representing, constitution, or including.

(I)     The words "person" or "persons" mean all natural persons ("individual" or "individuals") and entities including without limitation: corporations, companies, partnerships, limited partnerships, joint ventures, trusts, estates, associations, public agencies, departments, bureaus, or boards.

(J)     The words "and" as well as "or" shall be construed either conjunctively or disjunctively as necessary to bring within the scope of these Requests for Production any information which might otherwise be construed to be outside their scope.

(K)     "All" includes the word "any," and "any" includes the word "all."  "Each" includes the word "every" and "every" includes the word "each."

(L)     The word "Plaintiffs" refers to and shall be construed to mean the Plaintiffs named in the style of the case unless so stated in the request.  The word "Resident" refers to and shall be construed to mean Frank Martin, Sr. unless so stated in the request.

(M)     Should Defendants claim as privileged any document requested by any of the following requests, Defendants shall list each such document in such a manner to allow for its identification in the event of a motion to compel and, additionally, Defendant shall indicate in addition to the information requested in subsection (G) above the grounds on which the claim of privilege, the date, author and title of each document, the portion of the document to which the claim of privilege extends and the identity of all persons, corporations or other entities to whom the document has been shown, in order that the Court can determine whether such document is, in fact, privileged.

## REQUESTS FOR PRODUCTION

### 1.

Please produce the Articles of Incorporation for each of the corporate Defendants in this action in effect during the timeframe of Frank Martin, Sr.'s residency.

### 2.

Please produce the governing documents for all Defendants including, but not limited to, the By-Laws, Rules and Regulations of the Medical Staff, and any other governing documents.

### 3.

Please produce the Mission Statements for all Defendants.

4.

Please provide each management agreement, operating agreement, transfer agreement, or other agreement detailing the responsibilities and obligations of each Defendant to the Roberta Health and Rehab (hereinafter referred to as the "Facility").

5.

Please provide all documents related to the dissolution of any Defendant corporate entity at any time during the timeframe of Frank Martin, Sr.'s residency to the present.

6.

Please provide all documents related to the purchase and/or sale of each Defendant business entity in this action during the timeframe of Frank Martin, Sr.'s residency to the present.

7.

Please provide each and every document related to the transfer of any ownership interest in any of the Defendant business entities in this case at any time between one year preceding Frank Martin, Sr.'s residency to present.

8.

Please provide all documents which contain all or any part of each agreement pursuant to which each Defendant and all other persons and entities are entitled to share in profits arising from the operation or management of the Defendant nursing facility at any and all times from one year preceding Frank Martin, Sr.'s residency to present

9.

Please provide each and every document which contains, defines, describes, specifies and/or explains any agreement between any or all Defendant business entities designed to limit

any or all of the Defendant's liability(ies) arising from operation or management of the Facility for a time period of one year preceding Frank Martin, Sr.'s residency to present.

10.

Please provide all deeds, contracts, real estate transaction documents, leases, and all other documents related to each Defendant's ownership and/or use of real property related to operation of the Facility during the timeframe of Frank Martin, Sr.'s residency.

11.

Please provide all documents related in any way to each Defendant's ownership and/or use of any and all buildings, motor vehicles, equipment, fixtures, furniture, and all other assets related to operation of the Facility during the timeframe of Frank Martin, Sr.'s residency.

12.

Please provide all documents which contain all or any part of each agreement pursuant to which each Defendant or any other persons or entity is/are responsible for payment of expenses in the operation of the Facility at any and all times from one year preceding Frank Martin, Sr.'s residency to present.

13.

Please provide all documents which contain all or any part of each agreement pursuant to which any Defendant or other persons or entities are responsible for provision of vehicles, fixtures, furniture, equipment, supplies and/or materials necessary for the operation of the Facility at any and all times from one year preceding Frank Martin, Sr.'s residency to present.

14.

Produce any and all documents that in any way concern surveys by each state and federal agency of the Facility for a timeframe of one year preceding Frank Martin, Sr.'s residency to one

year after his death. Plaintiff is fully aware the Georgia Department of Community Health maintains some of the requested information and is a matter of public record; however, this request seeks additional documents and records regarding survey and plans of correction and investigations regarding the same that are <u>not</u> a part of the public record.

15.

Produce any and all documents that in any way relate to deficiencies found by each state and federal agency of the Facility for a timeframe of one year preceding Frank Martin, Sr.'s residency to one year after his death.

16.

Produce any and all documents that in any way relate to sanctions, fines, assessments or other punitive actions taken by each state and federal agency against the Facility for a timeframe of one year preceding Frank Martin, Sr.'s residency to one year after his death.

17.

Produce a <u>color</u> copy of any and all medical and billing records of Frank Martin, Sr. created by Defendants, <u>including ADL sheets containing the initials of the nursing staff who provided ADL care and the time the care was provided, along with a legend for identifying the nursing staff by their initials</u>. These records may be provided via CD-ROM or other digitized format.

18.

Produce a copy of all medical records of Frank Martin, Sr. in the possession of Defendants that were created by any other healthcare provider.

19.

Produce any and all business records, including but not limited to admissions forms and contracts, Medicare and Medicaid forms, financial records and all other business documents that in any way concern or relate to Frank Martin, Sr.

20.

Produce any and all statements of witnesses that in any way concern the care and treatment of Frank Martin, Sr. at the Facility and/or any of the matters raised in Plaintiffs' Complaint for Damages.

21.

Produce any and all documents generated or created by any expert expected to testify in connection with this lawsuit and that will be relied upon by said expert in forming and/or offering his/her opinions.

22.

Produce any and all documents including correspondence sent from Defendants, their agents, servants, employees or its attorneys, underlined_text relied upon by any expert expected to testify in connection with this lawsuit.

23.

Produce any and all documents including correspondence sent from Defendants or their attorneys to any of Frank Martin, Sr.'s physicians or other health care providers.

24.

Produce all payroll-based-journal data submitted to CMS for a timeframe of July 22, 2019 to July 22, 2021.

25.

For the period of one year preceding Frank Martin, Sr.'s residency to one year after, produce any and all protocols, policies, practices and/or procedures.  In lieu of producing all responsive documents, please provide an Index from which Plaintiff can request specific protocols, policies, practices and/or procedures.

26.

Produce any and all documents including training manuals, employee handbooks, textbooks, videotapes, audio-tapes and any other documents or things that in any way relate to or concern the training of personnel at the Facility during the timeframe of Frank Martin, Sr.'s residency.

27.

Produce any and all incident and/or accident reports created by Defendants which in any way relate to or concern Frank Martin, Sr.

28.

Produce all documents created for and/or provided to CMS or Georgia Department of Community Health regarding facility acquired pressure sores at the Facility during Frank Martin, Sr.'s residency and for one (1) year preceding.

29.

Produce each and every investigative report created by Defendants which in any way concerns, relates or pertains to any incident in which Frank Martin, Sr. was injured or harmed while a resident at the Facility, including, but not limited to, the development or worsening of skin breakdown.

30.

Produce each and every document produced and/or provided by Defendants to each state and federal agency that in any way concerns, relates, or pertains to any incident in which Frank Martin, Sr. was injured or harmed in the Facility, including, but not limited to, the development or worsening of skin breakdown.

31.

Produce each and every employee work schedule produced for the agents, servants and/or employees of the Facility for the time period of July 22, 2020 through March 7, 2021.

32.

Produce any and all photographs, drawings, videotapes or other graphic depictions of Frank Martin, Sr.  in the possession of Defendants.

33.

Produce any and all complaints including complaints made by Defendants' agents, servants, and/or employees concerning staffing levels for the Facility for a timeframe of one year preceding Frank Martin, Sr.'s residency to one year after.

34.

Produce any and all complaints including complaints made by Defendants' agents, servants, and/or employees concerning pressure or decubitus sores/ulcers/wounds at the Defendant nursing facility for a timeframe of one year preceding Frank Martin, Sr.'s residency to one year after.

35.

Produce all personnel files for all the agents, servants and/or employees of the Facility identified on every employee work schedule produced in response to Request 31.

36.

Produce all physician communications books and/or entries which in any way reference Frank Martin, Sr.

37.

Produce each and every document including correspondence, notes, memos, medical records, nurse's notes, orders or any other documentation of any kind that in any way evidences communications between Defendants and any of Frank Martin, Sr.'s physicians concerning his medical condition.

38.

Produce each and every document including correspondence, notes, memos, medical records, nurse's notes, orders or any other documentation of any kind that evidences communications between Defendants and their agents, servants, and/or employees concerning Frank Martin, Sr.'s medical condition, including by not limited to, shift reports, communication logs, weekly summary, nurses' standup meetings, nurses meeting minutes, department or staff meeting minutes, CNA care sheets, and/or any other document that references Frank Martin, Sr.

39.

Produce each and every document including correspondence, notes, memos, medical records, nurse's notes or any other documentation of any kind that in any way evidences communications between Defendants and Frank Martin, Sr. or any family members concerning his medical condition, care or treatment.

40.

Please produce each and every document related to these Defendants' communications with any and all third parties about any and all of the occurrences and circumstances outlined in the complaint, including, but not limited to, the development or worsening of skin breakdown.

41.

For each policy of insurance identified by each Defendant in their responses to Plaintiff's interrogatories, please provide a <u>complete copy</u> of the policy of insurance along with all schedules, amendments, endorsements, and declarations pages.

42.

Please produce each and every document related to nurses' meeting minutes, staff meetings, department meetings, or other discussions relating to staffing, lack of supplies, abuse or neglect, or pressure or decubitus sores/ulcers/wounds for a time period of one year prior through one year after Frank Martin, Sr.'s residency.

43.

Please produce each and every email, text, instant message related to or in any way referencing Frank Martin, Sr. and/or his family.

44.

Please produce each and every email, text, instant message related to or in any way referencing staffing concerns related to the Facility.

45.

Please produce any and all documentation, whether in paper and/or electronic and/or any other form that in any way references Frank Martin, Sr. Such documentation would include, but

not be limited to sound and/or audio recordings, e-mails, faxes, text messages, notations and any other form in which information is stored and preserved.

46.

All management contracts between Defendants or their related entities, and any corporation, individual, or entity.

47.

Please provide all CMS-10114 applications including all attachments and supporting documentation that Defendants completed in order to obtain their National Provider Identifier (NPI) that is assigned by the National Plan and Provider Enumeration System that health care providers must obtain prior to enrolling in Medicare or before submitting a change to the health care provider's Medicare enrollment information.

48.

Please provide all Institutional Providers Forms CMS-855-A including attachments and supporting documentation that Defendants completed to apply for enrollment in the Medicare program or to make a change in their enrollment information.

49.

Please provide any and all Internet-Based Provider Enrollment, Chain and Ownership System (PECOS) documentation including any attachments and supporting documentation that Defendants submitted in order to enroll in the Medicare program or make a change in their enrollment information.

50.

Please provide all Medicaid Provider Enrollment applications, whether completed in writing or through internet submission, including all attachments and supporting documentation that Defendants have completed in order to obtain a Medicaid provider number for the Facility.

51.

Please produce any and all reports, notes, tracking records, logs or other compilation of documentation concerning infection rates involving any and all residents at the Facility for the time period of one (1) year prior through one (1) year after Frank Martin, Sr.'s residency.

52.

Please produce the following documentation relating to any and all residents at the Facility who suffered pressure ulcers, decubitus ulcers and/or skin breakdown, for the time period of one (1) year prior through one (1) year after Frank Martin, Sr.'s residency: MDS records, care plans, nurse's notes regarding wounds, physician's orders regarding wound care, treatment records (TARs), skin records, wound tracking forms, wound care tracking forms, and transfer records. This request does not seek HIPAA protected information and expressly requests the redaction of same.

53.

For those Defendants on whom Plaintiff served First Interrogatories, please produce a Verification of Defendant's responses to Plaintiff's Interrogatories.

54.

For each of the following individuals, please produce his/her personnel file:

(a)  Rose Smith;

(b)  Director of Nursing during Frank Martin, Sr.'s residency;

-15-

(c)  Assistant Director of Nursing during Frank Martin, Sr.'s residency;

(d)  Administrator during Frank Martin, Sr.'s residency; and

(e)  Assistant Administrator during Frank Martin, Sr.'s residency.

55.

Produce each and every weekly, monthly, and/or yearly cost report, including but not limited to CMS Form 671, Cost Report S7, and CMS Form 2540-10, created by each Defendant and/or their agents, servants, and employees relating to and/or concerning Westwood Health and Rehabilitation for the years 2018 through 2021.

This 22nd day of February, 2023.

Respectfully submitted,

**PRIETO, MARIGLIANO, HOLBERT & PRIETO, LLC**

*/s/ Joan M. Woolley*
Michael A. Prieto
Georgia Bar No.:  587236
William F. Holbert
Georgia Bar No.:  360088
Joan M. Woolley
Georgia Bar No.: 315913
*Attorneys for the Plaintiffs*

1555 Mount Vernon Road
Atlanta, GA  30338
P: 404-856-0040 ● F: 404-856-0066
mprieto@pmhplaw.com
bholbert@pmhplaw.com
jwoolley@pmhplaw.com
www.pmhplaw.com

IN THE STATE COURT OF GWINNETT COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| BETTY MARTIN, INDIVIDUALLY, and | ) | |
| FRANK MARTIN, JR., as ANTICIPATED | ) | |
| ADMINISTRATOR of the ESTATE of FRANK | ) | |
| MARTIN, SR., DECEASED, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION FILE NO.: |
| v. | ) | 23-C-01217-S7 |
| | ) | _____ |
| ROBERTA OPERATOR, LLC d/b/a ROBERTA | ) | |
| HEALTH AND REHAB; GBD, LLC; BARRES, | ) | |
| LLC; T AND C CAPITAL ASSETS, LLC; | ) | |
| WINDWARD HEALTH PARTNERS, LLC; | ) | |
| MISSION HEALTH OF GEORGIA, LLC; | ) | |
| ABC CORPORATIONS; AND JOHN/JANE | ) | |
| DOES I and II, | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of **PLAINTIFF BETTY MARTIN, INDIVIDUALLY'S, FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS TO ALL DEFENDANTS** upon all parties to this matter by serving the same with the Complaint.

| | |
|---|---|
| Roberta Operator, LLC | GBD, LLC |
| d/b/a Roberta Health and Rehab | c/o Reg Agent: National Registered Agents, Inc. |
| c/o Reg Agent: National Registered Agents, Inc. | 289 S. Culver Street, |
| 289 S. Culver Street, | Lawrenceville, GA 30046-4805 |
| Lawrenceville, GA 30046-4805 | |
| | |
| Barres, LLC | T and C Capital Assets, LLC |
| c/o Reg Agent: Stuart Lindeman | c/o Reg Agent: Joseph M. Passero |
| 2907 West Bay to Bay Boulevard, Suite 303 | 777 S. Harbour Island Boulevard, Suite 400, |
| Tampa, FL 33629 | Tampa, FL 33602. |
| | |
| Windward Health Partners, LLC | Mission Health of Georgia, LLC |
| c/o Reg Agent: NRAI Services, Inc. | c/o Reg Agent: National Registered Agents, Inc. |
| 1200 South Pine Island Road | 289 S. Culver Street, |
| Plantation, FL 33324 | Lawrenceville, GA 30046-4805 |

*(Signatures to follow)*

-17-

This 22nd day of February, 2023.

Respectfully submitted,

**PRIETO, MARIGLIANO, HOLBERT & PRIETO, LLC**

*/s/ Joan M. Woolley*
Michael A. Prieto
Georgia Bar No.:  587236
William F. Holbert
Georgia Bar No.:  360088
Joan M. Woolley
Georgia Bar No.: 315913
*Attorneys for the Plaintiffs*

1555 Mount Vernon Road
Atlanta, GA  30338
P: 404-856-0040 ● F: 404-856-0066
mprieto@pmhplaw.com
bholbert@pmhplaw.com
jwoolley@pmhplaw.com
www.pmhplaw.com

E-FILED IN OFFICE - CB
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-01217-S7**

**2/22/2023 7:23 PM**

TIANA P. GARNER, CLERK

IN THE STATE COURT OF GWINNETT COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| BETTY MARTIN, INDIVIDUALLY, and | ) | |
| FRANK MARTIN, JR., as ANTICIPATED | ) | |
| ADMINISTRATOR of the ESTATE of FRANK | ) | |
| MARTIN, SR., DECEASED, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION FILE NO.: |
| v. | ) | 23-C-01217-S7 |
| | ) | _____ |
| ROBERTA OPERATOR, LLC d/b/a ROBERTA | ) | |
| HEALTH AND REHAB; GBD, LLC; BARRES, | ) | |
| LLC; T AND C CAPITAL ASSETS, LLC; | ) | |
| WINDWARD HEALTH PARTNERS, LLC; | ) | |
| MISSION HEALTH OF GEORGIA, LLC; | ) | |
| ABC CORPORATIONS; AND JOHN/JANE | ) | |
| DOES I and II, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DAMAGES

COME NOW Betty Martin, Individually, and Frank Martin, Jr., as Anticipated

Administrator of the Estate of Frank Martin, Sr., Deceased (hereinafter "Plaintiffs"), and presents

their complaint for damages against Defendants Roberta Operator, LLC d/b/a Roberta Health and

Rehab; GBD, LLC; Barres, LLC; T and C Capital Assets, LLC; Windward Health Partners, LLC;

Mission Health of Georgia, LLC; ABC Corporations; and John/Jane Does I and II, as follows:

1.

In this action, Plaintiffs show that the Defendants' violations of federal and state law and

regulations in the operation of a long-term care facility, professional negligence, general

negligence, breach of contract and wrongful death in the provision of nursing home care, medical

care, treatment and services led directly and proximately to severe and life-threatening injuries,

illness, pain, suffering and death of Frank Martin, Sr.  Plaintiffs therefore seek to recover damages for claims arising under tort and contract.

## JURISDICTION AND VENUE

2.

Plaintiff, Betty Martin, is an individual over the age of nineteen (19) years and brings this lawsuit individually as surviving spouse of Frank Martin, Sr.  Plaintiff Betty Martin hereby subjects herself to the jurisdiction of this Court.

3.

Plaintiff, Frank Martin, Jr., is an individual over the age of nineteen (19) years and brings this lawsuit as the Anticipated Administrator of the Estate of his father, Frank Martin, Sr.  Plaintiff Frank Martin, Jr. hereby subjects himself to the jurisdiction of this Court.

4.

Defendant Roberta Operator, LLC d/b/a Roberta Health and Rehab is a foreign limited liability company formed under the laws of the State of Florida. This Defendant owns, operates, and/or manages a skilled nursing facility called Roberta Health and Rehab, located at 420 Myrtle Drive, Roberta, Crawford County, Georgia, 31078.  This Defendant can be served with process by service upon its registered agent for service of process in this State: National Registered Agents, Inc.; 289 S. Culver Street, Lawrenceville, Gwinnett County, Georgia, 30046-4805.

5.

Defendant GBD, LLC is a foreign limited liability company formed under the laws of the State of Florida. This Defendant owns, operates, and/or manages a skilled nursing facility called Roberta Health and Rehab, located at 420 Myrtle Drive, Roberta, Crawford County, Georgia, 31078. This Defendant can be served with process by service upon its registered agent for service of

process in this State: National Registered Agents, Inc.; 289 S. Culver Street, Lawrenceville, Gwinnett County, Georgia, 30046-4805.

6.

Defendant Barres, LLC is a foreign limited liability company formed under the laws of the State of Florida with its principal place of business in Tampa, Florida and is not authorized to transact business in the State of Georgia. At all times material and relevant hereto, this Defendant owned, operated, and/or managed a skilled nursing facility called Roberta Health and Rehab, located at 420 Myrtle Drive, Roberta, Crawford County, Georgia, 31078.  While this Defendant transacts significant business in this state, it maintains no registered agent for service of process in this state. Defendant Barres, LLC is subject to the jurisdiction of this Court pursuant to Georgia law, including O.C.G.A. § 9-10-91, the Georgia Long Arm Statute, in that it transacted business within the State of Georgia, committed a tortuous act and/or omission within the State of Georgia, and owns, uses or possesses real property within the State of Georgia. This Defendant can be served with process by service upon its registered agent for service of process: Stuart Lindeman, 2907 West Bay to Bay Boulevard, Suite 303, Tampa, Florida, 33629.

7.

Defendant T and C Capital Assets, LLC is a foreign limited liability company formed under the laws of the State of Florida with its principal place of business in Wesley Chapel, Florida and is not authorized to transact business in the State of Georgia. At all times material and relevant hereto, this Defendant owned, operated, and/or managed a skilled nursing facility called Roberta Health and Rehab, located at 420 Myrtle Drive, Roberta, Crawford County, Georgia, 31078.  While this Defendant transacts significant business in this state, it maintains no registered agent for service of process in this state. Defendant T and C Capital Assets, LLC is subject to the jurisdiction

of this Court pursuant to Georgia law, including O.C.G.A. § 9-10-91, the Georgia Long Arm Statute, in that it transacted business within the State of Georgia, committed a tortuous act and/or omission within the State of Georgia, and owns, uses or possesses real property within the State of Georgia. This Defendant can be served with process by service upon its registered agent for service of process: Joseph M. Passero, 777 S. Harbour Island Boulevard, Suite 400, Tampa, Florida, 33602.

8.

Defendant Windward Health Partners, LLC is a foreign limited liability company formed under the laws of the State of Florida with its principal place of business in Tampa, Florida and is not authorized to transact business in the State of Georgia. At all times material and relevant hereto, this Defendant owned, operated, and/or managed a skilled nursing facility called Roberta Health and Rehab, located at 420 Myrtle Drive, Roberta, Crawford County, Georgia, 31078.  While this Defendant transacts significant business in this state, it maintains no registered agent for service of process in this state. Defendant Windward Health Partners, LLC is subject to the jurisdiction of this Court pursuant to Georgia law, including O.C.G.A. § 9-10-91, the Georgia Long Arm Statute, in that it transacted business within the State of Georgia, committed a tortuous act and/or omission within the State of Georgia, and owns, uses or possesses real property within the State of Georgia. This Defendant can be served with process by service upon its registered agent for service of process: NRAI Services, Inc., 1200 South Pine Island Road, Plantation, Florida, 33324.

9.

Defendant Mission Health of Georgia, LLC is a foreign limited liability company formed under the laws of the State of Florida. This Defendant owns, operates, and/or manages a skilled nursing facility called Roberta Health and Rehab, located at 420 Myrtle Drive, Roberta, Crawford

County, Georgia, 31078.  This Defendant can be served with process by service upon its registered agent for service of process in this State: National Registered Agents, Inc.; 289 S. Culver Street, Lawrenceville, Gwinnett County, Georgia, 30046-4805.

10.

Defendant ABC, Inc., is a corporate entity whose correct name is not known at the current time, but is known to Defendants. Upon information and belief, Defendant ABC, Inc. is an entity capable of being sued in Georgia and is subject to the jurisdiction and venue of this Court. Once the true and correct identity of Defendant ABC, Inc., has been established, it will be substituted into this action by amendment and pursuant to Georgia law.

11.

Upon proper service of process, and based on the foregoing, jurisdiction is proper in this Court.  Venue is proper in this Court under OCGA § 9-10-31.

**PARTIES**

12.

Plaintiff Betty Martin is the surviving spouse of Frank Martin, Sr., deceased, and, in her individual capacity, brings the wrongful death claims on behalf of the wrongful death claimants. Plaintiff Frank Martin, Jr. is the Anticipated Administrator of the Estate of Frank Martin, Sr., deceased, and seeks to recover upon Mr. Martin, Sr.'s individual claims against Defendants arising in tort and contract.  These parties will be referred to collectively herein as "Plaintiffs."

13.

The Defendants Roberta Operator, LLC d/b/a Roberta Health and Rehab; GBD, LLC; Barres, LLC; T and C Capital Assets, LLC; Windward Health Partners, LLC; and Mission Health of Georgia, LLC (hereinafter collectively "Roberta Health and Rehab") owned, operated,

maintained and/or managed a long-term skilled nursing care facility called Roberta Health and Rehab, located at 420 Myrtle Drive, Roberta, Crawford County, Georgia, 31078 at the time of Frank Martin, Sr.'s residency. The Defendant entities were contractually charged with responsibility for the provision of residence, care, treatment and convalescent/rehabilitation services to Mr. Frank Martin, Sr. These Defendants negligently failed at their responsibilities as described below.

14.

Defendant John/Jane Doe I at all relevant times was the Administrator at Roberta Health and Rehab.  Defendant John/Jane Doe II at all relevant times was the Director of Nursing Services at Roberta Health and Rehab.  In these capacities, each of these Defendants were responsible for ensuring that Mr. Frank Martin, Sr. received the medical and nursing care, treatment and services necessary to address his medical and nursing needs and his needs with respect to his activities of daily living.  These Defendants were also responsible for discovering, investigating, preventing and correcting all instances of resident abuse, mistreatment and neglect.  They were responsible for proper and timely communication of Mr. Martin, Sr.'s medical condition and needs to his doctor when necessary, and providing prompt medical care when it was necessary.

## FACTS

15.

On July 22, 2020, Frank Martin, Sr. was admitted to Roberta Health and Rehab following a hospital admission. He was sixty-four (64) years old at the time and had a history of hypertension, dysphagia with g-tube placement, cerebrovascular accident, and dementia.

16.

On admission, he was placed on COVID isolation per facility policy. He was COVID negative at the time. He was receiving tube feedings for nutrition. He weighed 186 lbs.

17.

On July 23, 2020, he was noted to have three stage II pressure ulcers and two suspected deep tissue injuries. A baseline care plan addressing his skin integrity was developed but did not include any pressure reducing devices. The Braden Scale Assessment was performed and based on his score of 9, Mr. Martin was noted to be at very high risk for skin breakdown.

18.

On July 29, 2020, the MDS Assessment indicated Mr. Martin required extensive assistance of two for bed mobility and was dependent for all other activities of daily living. Mr. Martin was noted to have two stage II pressure ulcers, one unstageable ulcer due to slough/eschar, and two deep tissue injuries.

19.

On August 2, 2020, the Dietary Note indicated Mr. Martin's enteral feedings were inadequate in all nutrients.

20.

On August 5, 2020, the Weekly Pressure Report indicated Mr. Martin had five areas of skin breakdown.

21.

On August 10, 2020, the Treatment Administration Record indicated the pressure ulcer treatments had not been signed off as completed per order.

22.

On August 19, 2020, the Weekly Pressure Report indicated Mr. Martin had five areas of skin breakdown.

23.

On August 24, 2020, the Nurses Note indicated Mr. Martin's weight had decreased to 180 lbs.

24.

On September 2, 2020, the Weekly Pressure Report indicated Mr. Martin had five areas of skin breakdown.

25.

On September 11, 2020, the Weekly Pressure Report indicated Mr. Martin had nine areas of skin breakdown.

26.

On September 30, 2020, the Weekly Pressure Report indicated Mr. Martin had six areas of skin breakdown, with deterioration to stage III on his sacral ulcer, right inner knee and left inner knee ulcers.

27.

On October 5, 2020, the Dietary Note indicated Mr. Martin's enteral formula was inadequate in protein and calories.

28.

On October 7, 2020, the Weekly Pressure Report indicated Mr. Martin had six areas of skin breakdown. His sacral pressure ulcer had deteriorated to a stage IV, and he had unstageable ulcers due to slough, to his left hip and left inner knee.

29.

On October 19, 2020, the Dietary Note indicated Mr. Martin's enteral feedings were still inadequate for protein.

30.

On October 29, 2020, the MDS Assessment indicated Mr. Martin had one stage II pressure ulcer, one stage III pressure ulcer, one stage IV pressure ulcer, and three deep tissue injuries.

31.

On November 1, 2020, the Treatment Administration Record indicated four missed treatments during the month of November.

32.

On November 2, 2020, the Nurses Note indicated Mr. Martin's sacral ulcer and left inner knee ulcer had increased in size and had an increased amount of drainage.

33.

On November 11, 2020, the Nurses Note indicated Mr. Martin's sacral ulcer, stage IV, had slough and eschar tissue, and a large amount of foul-smelling drainage with some active bleeding. The area measured 5.5 x 5.0 x 3.5 cm with 2.2 cm of tunneling. The pressure ulcer to his left hip, unstageable due to eschar, measured 5.9 x 6.9 cm. The pressure ulcer to his left inner knee, unstageable due to eschar, measured 3.7 x 3.5 cm. He also had a stage II pressure ulcer to his right heel and a stage III pressure ulcer to his right knee.

34.

On November 12, 2020, cultures of his left hip and sacral pressure ulcer were obtained. The cultures were reported positive on November 18, 2020, and antibiotics were ordered.

35.

On November 20, 2020, the Nurses Note indicated Mr. Martin had been referred to a Wound Clinic.

36.

On November 20, 2020, the Nurses Note indicated Mr. Martin's sacral pressure ulcer and left hip ulcer had continued to deteriorate with increased drainage and worsening appearance.

37.

On November 25, 2020, Mr. Martin was noted to have eleven areas of skin breakdown.

38.

On December 3, 2020, the Nurses Note indicated Mr. Martin's sacral wound had deteriorated. The wound bed contained gray/black with soft stringy-like tissue. The nurse was able to see an imprint of the bone. There was a large amount of foul pus-like drainage.

39.

On December 6, 2020, the Treatment Administration Record noted the treatment to Mr. Martin's pressure ulcers had not been completed.

40.

On December 8, 2020, the Wound Clinic Note indicated Mr. Martin had presented for initial assessment. He had multiple pressure ulcers including stage IV ulcers to his sacrum and left trochanter, a stage II to his knee, and unstageable ulcers to his ankle and foot. Treatment to the ulcers were changed and off-loading and turning every two hours were recommended.

41.

On December 9, 2020, Mr. Martin's sacral ulcer, stage IV measured 8.5 x 9.9 x 4.2 with 7.0 cm tunneling at 11 o'clock. The wound contained eschar and had a large amount of foul-smelling drainage. His left hip ulcer, unstageable, measured 8.0 x 9.0 x 2.0 cm with 5.0 cm tunneling at 11 o'clock. The wound bed contained slough and there was a large amount of purulent drainage.

42.

On December 11, 2020, the Lab Report noted an elevated white blood count of 22.5.

43.

On December 12, 2020, Mr. Martin was admitted to Hospice Care.

44.

On December 27, 2020, the Weekly Pressure Report noted Mr. Martin's sacral ulcer, stage IV measured 9.0 x 10.2 x 4.2 cm with 7.0 cm of tunneling at 11 o'clock. The wound bed contained eschar. There was a large amount of foul-smelling drainage and active bleeding noted when the dressing was removed. The left hip ulcer, unstageable measured 8.0 x 9.0 x 2.5 cm with 5.0 cm tunneling at 11 o'clock. The wound bed contained slough. There was a large amount of purulent drainage. The left inner foot, stage II ulcer, measured 2 x 2 cm. The right inner knee ulcer, stage III, measured 0.5 x 0.5 cm. The left inner knee ulcer, unstageable, measured 4.1 x 3.5 x 0.3 cm. The wound bed contained slough and there was a moderate amount of drainage. The right ankle ulcer, unstageable, measured 3.8 x 3.4 cm. The wound bed contained eschar and there was a moderate amount of drainage. Pain was noted during treatment of these ulcers.

45.

The January 2021 Treatment Administration Record noted multiple missed treatments.

46.

On January 19, 2021, the Wound Clinic Note indicated Mr. Martin's trochanter and sacral ulcer had been debrided to remove slough.

47.

On January 27, 2021, the Weekly Pressure Report noted Mr. Martin had seven areas of skin breakdown. Those areas included:

- Lower sacral area, stage IV, measuring 9.0 x 10.1 x 4.2 cm with 7.5 cm tunneling at 11 o'clock. Eschar was present in the wound bed. There was a large amount of malodorous drainage. Bone could be palpated in this ulcer.

- Left hip, stage IV, measuring 8.5 x 9.0 x 7.8 cm with 7.0 cm tunneling at 7 0'clock. The wound bed contained slough, and there was a large amount of drainage. Bone was palpable within this ulcer.

- Left inner foot, stage II, measuring 1.2 x 1.4 cm.

- Left inner knee, stage III, measuring 3.6 x 3.3 x 0.2 cm. The wound bed contained slough, and there was a moderate amount of drainage.

- Right ankle ulcer, stage III, measuring 3.7 x 3.5 cm. The wound bed contained slough, and there was a small amount of drainage.

- Right side, upper back, stage III, measuring 9.3 x 8.3 cm. The wound bed contained slough, and there was a moderate amount of drainage.

- Right hip/buttocks ulcer, stage II measuring 7.6 x 3.1 cm.

48.

On January 27, 2021, the Nurses Note indicated the pressure ulcer to Mr. Martin's upper back had deteriorated. It was now unstageable with eschar, and measured 9.5 x 8.5 cm. The ulcer to his right hip/buttock had a dark purple/black center and measured 7.6 x 3.2.

49.

On March 3, 2020, the Weekly Pressure Report noted Mr. Martin continued to have eight areas of skin breakdown. His pressure ulcers continued to deteriorate and were documented as painful.

-12-

50.

On March 7, 2021, Mr. Martin died.

## COUNT I
## VIOLATION OF FEDERAL STATUTES AND
## REGULATIONS OF 42 CFR §483.1 et seq.

51.

Roberta Health and Rehab is a licensed and certified long-term care facility that provides skilled nursing care as a participant in the Medicare program and that provides nursing care as a participant in the Medicaid program; Roberta Health and Rehab receives funding under the Medicare and Medicaid programs.

52.

The U.S. Department of Health & Human Services has promulgated a number of regulations pursuant to its authority under OBRA at 42 USCA § 1395i-3 related to the care, treatment and services provided to residents of skilled nursing facilities participating in the Medicare program and nursing facilities participating in the Medicaid program. Among those regulations are the following:

a) 42 CFR §483.10 and 15(a) provide that the resident has a right to live a dignified existence,

b) 42 CFR §483.13(c) requires the facility to implement protocols to protect the resident from neglect,

c) 42 CFR §483.13(c)(2) requires that all instances of patient neglect be reported to the facility administrator and other officials in accordance with state law,

d) 42 CFR §483.13(c)(3) requires that the facility maintain evidence of its investigation into patient neglect and must prevent future neglect of patients,

-13-

e) 42 CFR §483.13(c)(4) requires that results of neglect investigation be reported to the administrator and appropriate state authorities,

f) 42 CFR §483.15 requires the facility to care for its residents in a manner that maintains and enhances the resident's quality of life,

g) 42 CFR §483.15(e)(1) requires that each resident be provided services in the facility to accommodate their individual needs,

h) 42 CFR §483.20(b) and (g) require the facility to maintain a comprehensive and accurate assessment of the resident's medical needs, including the resident's general health and physical functioning,

i) 42 CFR §483.20(k)(1) requires that the facility prepare an accurate comprehensive care plan that addresses the patient's medical and nursing needs,

j) 42 CFR §483.20(k)(3) requires that services provided or arranged by the facility meet professional standards of quality and be provided by qualified persons,

k) 42 CFR §483.25 requires the facility to provide services to attain and maintain the highest practicable physical, mental and psychosocial well-being in accordance with the resident's assessments and Care Plan,

l) 42 CFR §483.25(a)(3) requires the facility to provide a resident who is unable to carry out the activities of daily living necessary services to maintain good nutrition, hygiene, grooming and oral hygiene,

m) 42 CFR §483.30 requires the facility to maintain an adequate nursing staff,

n) 42 CFR §483.75 requires that the facility be administered in such a way as to use its resources effectively and efficiently to maintain the highest practicable physical, mental and psychosocial well-being of each resident,

o) 42 CFR §483.75 requires properly trained, qualified and competent staff.

p) 42 CFR §483.75(b) requires the facility to operate and provide services in compliance with law and acceptable professional standards and principles that apply to professionals providing said services,

q) 42 CFR §483.75(k)(1) requires the facility to maintain clinical records in accordance with accepted professional standards and practices which are complete and accurate.

53.

As described in this complaint, the Defendants violated the above regulations of the U.S. Department of Health and Human Services in the following acts and omissions, among others to be demonstrated by the evidence:

a) Defendants failed to administer the nursing facility in such a way as to use its resources effectively and efficiently to maintain the highest practicable physical, mental and psychosocial well-being of Frank Martin, Sr.,

b) Defendants failed to implement protocols to protect Frank Martin, Sr. from neglect,

c) Defendants failed to operate and provide services to Frank Martin, Sr. in compliance with law and acceptable professional standards and principles that apply to professionals providing said services,

d) Defendants failed to provide or arrange services for Frank Martin, Sr. that met professional standards of quality,

e) Defendants failed to maintain an adequate nursing staff to provide for Mr. Martin, Sr.'s needs,

f) Defendants failed to provide properly trained, qualified and competent staff to care for Mr. Martin, Sr.,

g) Defendants failed to maintain complete and accurate clinical records related to the care and treatment of Frank Martin, Sr. in accordance with accepted professional standards and practices,

h) Defendants failed to protect Frank Martin, Sr. from neglect,

i) Defendants failed in their duty to report all instances of Frank Martin, Sr.'s neglect to the facility administrator and appropriate state authorities,

j) Defendants failed to report results of any neglect investigation to the administrator and appropriate state authorities,

k) Defendants failed to properly train and supervise the nursing staff to provide the appropriate care, treatment and services that Frank Martin, Sr. needed, and

l) Defendants failed to follow physician's orders with respect to the care and treatment that Frank Martin, Sr. needed.

54.

The aforesaid violations of 42 CFR §483.1 et seq. constitute evidence of a deviation of the standard of care.

55.

Defendants are liable to Plaintiffs for all damages recoverable, including but not limited to pain and suffering, medical expenses, funeral expenses and the full value of Mr. Martin, Sr.'s life.

**COUNT II**
**VIOLATION OF REQUIREMENTS OF THE GEORGIA BILL OF RIGHTS FOR RESIDENTS OF LONG-TERM CARE FACILITIES AT OCGA §31-8-100 et seq.**

56.

The State of Georgia has promulgated the *Bill of Rights for Residents of Long-Term Care Facilities* at OCGA §31-8-100 et seq. which sets out requirements for those providing care,

treatment and services to residents of long-term care facilities in this state.  In particular, OCGA § 31-8-108(a) requires that residents of long-term care facilities receive care, treatment and services that are adequate and appropriate and which must be provided with reasonable care and skill and in compliance with all applicable laws and regulations (including those listed in the preceding Count of this complaint), and with respect for the resident's personal dignity, among other requirements.

57.

Pursuant to its authority granted by statute, the Georgia Department of Community Health has promulgated a number of regulations for the provision of care, treatment and services to residents of long-term care facilities.  In particular, Ga. Comp. R. & Regs. R. 290-5-39-.07 requires that each resident be provided with care, treatment and services which are adequate and appropriate for the condition of the resident as determined by the resident's developing care plan.  The regulation also requires that services be provided with reasonable care and skill and in compliance with all applicable laws and regulations (including the state laws and federal regulations identified above).

58.

The Defendants violated the provisions of the *Georgia Bill of Rights for Residents of Long-Term Care Facilities* and the regulations of the Georgia Department of Community Health identified above in all of the acts and omissions that are described in this Complaint for Damages.  Among the acts and omissions constituting violation of the *Georgia Bill of Rights for Residents of Long-Term Care Facilities* are the following:

    a)    Defendants deviated from the standard of care by failing to develop a resident centered care plan, and failed to closely monitor, and implement adequate

interventions for a resident at high risk for skin breakdown, pressure ulcers, and infection. The care plan was not updated with additional interventions as Mr. Martin developed additional ulcers and/or when his ulcers deteriorated.

b)   Defendants deviated from the standard of care by failing to develop a wound care plan of care until November 2020 for Mr. Martin even though he was admitted with skin breakdown in July 2020.

c)   Defendants deviated from the standard of care by failing to timely notify Mr. Martin's primary care physician of the deteriorating skin breakdown and/or to consult with the wound care physician earlier in his care to prevent the wounds from deteriorating to a Stage IV with support tissue and bone exposed.

d)   Defendants deviated from the standard of care by failing to timely and properly assess Mr. Martin for skin breakdown, failing to develop a care plan to adequately address Mr. Martin's skin breakdown, failing to implement appropriate interventions to prevent and treat skin breakdown, and failing to re-assess the efficacy of Mr. Martin's care plan and make appropriate changes to treatments and interventions as needed.

e)   Defendants deviated from the standard of care by failing to timely and properly assess Mr. Martin's nutritional status, failing to develop a care plan to adequately address Mr. Martin's nutritional needs, failing to implement appropriate interventions to prevent and address weight loss, and failing to re-assess the efficacy of Mr. Martin's nutritional care plan.

f)   Defendants deviated from the standard of care by failing to follow physician's orders by failing to provide ordered care and treatment.

g)  Defendants deviated from the standard of care by failing to maintain Mr. Martin's

highest practicable physical, mental, and psychosocial well-being.

59.

The aforesaid violations of *Georgia Bill of Rights for Residents of Long-Term Care Facilities* and the regulations of the Georgia Department of Community Health constitute evidence of a deviation of the standard of care.

60.

Defendants' failure to comply with the *Georgia Bill of Rights for Residents of Long-Term Care Facilities* and the regulations of the Georgia Department of Community Health set out above lead directly to the serious injury, illness, terrible pain, suffering, anguish and grief, and death of Frank Martin, Sr.

61.

Defendants are liable to Plaintiffs for all damages recoverable, including but not limited to pain and suffering, medical expenses, funeral expenses and the full value of Mr. Martin, Sr.'s life.

**COUNT III**
**STATUTORY REMEDIES AGAINST DEFENDANTS FOR VIOLATION OF FEDERAL AND STATE STATUTES AND REGULATIONS IN THE OPERATION OF A NURSING HOME**

62.

Roberta Health and Rehab is a "nursing home" as that term is defined under O.C.G.A. § 31-7-1(1)(B).

63.

Nursing homes in Georgia must be licensed by the Department of Community Health and are required to comply with all applicable state and federal laws governing the administration of

long-term care facilities, including, but not limited to the *Bill of Rights for Long Term Care Facilities* and its rules and regulations.

64.

Pursuant to O.C.G.A. §§ 31-8-100 through 31-8-127, residents of nursing homes in Georgia have been granted certain rights which are enumerated in the regulations promulgated by the Georgia Department of Community Health at Ga. Comp. R. & Regs. R. 111-8-50, et seq.

65.

Among the regulations promulgated by the Georgia Department of Community Health for the operation of nursing homes is Ga. Comp. R. & Regs. R. 111-8-50-.02 and 111-8-50-.07 which provide that each resident of a nursing home must receive care and services which shall be adequate, appropriate and *in compliance with applicable federal and state law and regulations*.

66.

The State of Georgia has promulgated the *Bill of Rights for Residents of Long-term Care Facilities* at O.C.G.A. § 31-8-100 et eq., which sets out requirements for those providing care, treatment and services to residents of long-term care facilities in this state.

67.

Defendants' conduct which is described in great detail herein constitutes numerous individual violations of the *Georgia Bill of Rights for Residents of Long-term Care Facilities* at O.C.G.A. § 31-8-100 et seq., the regulations of the Georgia Department of Community Health at Ga. Comp. R. & Regs. R. 111-8-50 et seq. and the regulations of the U.S. Department of Health and Human Services at 42 CFR § 483.1 et seq.

68.

Defendants are liable to Plaintiffs for all damages recoverable.

-20-

## COUNT IV
## PROFESSIONAL NEGLIGENCE

69.

Frank Martin, Sr. entered into a contract with the Defendants for the provision of long-term residence, care, treatment and services at the Defendants' facility, and Defendants failed to provide that care, treatment and service as described herein.

70.

Pursuant to the requirements of OCGA §9-11-9.1, Plaintiffs have attached hereto the affidavit of Colleen A. Dishman, BSN, RN-BC, who is licensed to practice nursing in the State of North Carolina.   Nurse Dishman has prepared an affidavit which sets forth the Defendants' acts and omissions related to the care, treatment and services provided to Mr. Martin, Sr. which proximately caused him severe injury, pain, suffering, and death, and which illustrate Defendants' failure to provide the degree of care and skill required of these Defendants in their professions, as set out below.  The Plaintiffs hereby incorporate by this reference the entire contents of Nurse Dishman's Affidavit and CV, attached hereto as Exhibit "A."  The Affidavit is not inclusive of each act, error, or omission that has been committed by Defendants, and Plaintiffs reserve the right to contend and prove additional acts, errors, and omissions on the part of Defendants that reflect a departure from the requisite standard of care required by law.

71.

Pursuant to Nurse Dishman's education, training and experience, Nurse Dishman is familiar with the guidelines and regulations of long-term care facilities in all aspects of the provision of nursing care, treatment and services, including wound treatment, to residents of a long-term care facility, including the requirement to comply with physicians' orders and advocate for patients to continually receive proper care.

-21-

72.

Also, pursuant to Nurse Dishman's education, training and experience, Nurse Dishman is familiar with the proper care and assessment of patients who have had medical conditions similar to Mr. Martin, Sr., including, but not limited to, cerebral vascular accident, hypertension, and dementia.

73.

Pursuant to Nurse Dishman's education, training and experience, Nurse Dishman is fully familiar with the long-term care facility requirements for a resident's physical condition to be monitored and care rendered as ordered.

74.

Pursuant to Nurse Dishman's education, training and experience, Nurse Dishman is fully aware of the circumstances under which a resident is in need of the services of a physician for care and treatment following an acute condition change.  Nurse Dishman's experience includes the provision of emergency care when the resident needs it.

75.

As a result of Nurse Dishman's education, training and experience outlined above, Nurse Dishman is well qualified to testify as to the acceptable standards of care with respect to the below referenced aspects of nursing care, including care for patients that occurs at nursing homes, assisted living facilities and/or any type of long-term care facility.

76.

The standard of care in a long-term care setting requires staff to prepare comprehensive and accurate assessments and care plans for the identification of residents at risk for skin breakdown and to provide proper care for the prevention of the same.

77.

The standard of care in a long-term care setting requires staff to provide appropriate monitoring and accurate assessments and to update the resident's care plan(s) when the needs of a resident have changed substantially.

78.

The standard of care in a long-term care setting requires staff to recognize significant changes in a resident and initiate a resident's transfer to an acute care center sufficient to meet the resident's needs.

79.

The standard of care in a long-term care setting requires staff to obtain immediate emergency or hospital care when the resident's condition requires it.

80.

Notwithstanding the duty owed to Frank Martin, Sr. by Defendants as described herein, Defendants were negligent and failed to exercise that degree of care, skill and diligence required of the medical and nursing home profession in general under similar conditions and like circumstances.  The negligence of Defendants with respect to Frank Martin, Sr., included, but was not limited to, the following:

1.  Roberta Health and Rehab staff failed to develop a resident centered care plan, and failed to closely monitor, and implement adequate interventions for a resident at high risk for skin breakdown, pressure ulcers, and infection. The care plan was not updated with additional interventions as Mr. Martin developed additional ulcers and/or when his ulcers deteriorated.

2. Roberta Health and Rehab staff failed to develop a wound care plan of care until November 2020 for Mr. Martin even though he was admitted with skin breakdown in July 2020.

3. Roberta Health and Rehab staff failed to timely notify Mr. Martin's primary care physician of the deteriorating skin breakdown and/or to consult with the wound care physician earlier in his care to prevent the wounds from deteriorating to a Stage IV with support tissue and bone exposed.

4. Roberta Health and Rehab staff failed to timely and properly assess Mr. Martin for skin breakdown, failing to develop a care plan to adequately address Mr. Martin's skin breakdown, failing to implement appropriate interventions to prevent and treat skin breakdown, and failing to re-assess the efficacy of Mr. Martin's care plan and make appropriate changes to treatments and interventions as needed.

5. Roberta Health and Rehab staff failed to timely and properly assess Mr. Martin's nutritional status, failing to develop a care plan to adequately address Mr. Martin's nutritional needs, failing to implement appropriate interventions to prevent and address weight loss, and failing to re-assess the efficacy of Mr. Martin's nutritional care plan.

6. Roberta Health and Rehab staff failed to follow physician's orders by failing to provide ordered care and treatment.

7. Roberta Health and Rehab staff failed to maintain Mr. Martin's highest practicable physical, mental, and psychosocial well-being.

81.

Defendants also have vicarious liability for the negligent acts and omissions of all persons or entities under Defendants' control either direct or indirect, including its respective

employees, agents, and consultants.

82.

As a direct and proximate result of the negligence of Defendants as described herein, Frank Martin, Sr. lacked appropriate health care, causing tremendous struggle, suffering and death.

## COUNT V
## NEGLIGENT MANAGEMENT AND OPERATION
## OF A LONG-TERM CARE FACILITY

83.

The Defendants had a duty to make operational, budgetary, and administrative decisions that would benefit the custodial, medical, and nursing needs of residents in Roberta Health and Rehab, including Mr. Martin, Sr. The Defendants failed to exercise reasonable care with respect to the management and operational decisions of Roberta Health and Rehab, and Mr. Martin sustained serious injury, great pain and suffering and death as demonstrated herein.

84.

At all material times, Defendants represented that: (a) they were competent to provide Mr. Martin, Sr. with the necessary care, treatment and services and would provide the same; and (b) that Mr. Martin, Sr.'s condition was capable of being successfully managed by them.

85.

At all times relevant to this action, Defendants were fully aware that the delivery of care and custodial services to residents at Roberta Health and Rehab, including Mr. Martin, Sr., required: (a) provision of adequate and appropriate staffing in the facility; and (b) appropriate census levels and census mixes within the facility.

86.

Despite this knowledge, Defendants made operational, budgetary, and administrative

decisions that were determined more by the financial needs and goals of the Defendants than by the custodial, medical, and nursing needs of residents in Roberta Health and Rehab, including Mr. Martin.

87.

Defendants entered into a continuing course of negligent conduct, creating, implementing, and enforcing dangerous operational budgets, practices, and policies at Roberta Health and Rehab which deprived residents, including Mr. Martin, Sr., of safe, adequate, and essential care and resources to meet their needs.

88.

Notwithstanding Defendants' decisions, directives, and practices which resulted in inadequate and inappropriate staffing of Roberta Health and Rehab, Defendants sought to market, recruit, and admit higher acuity, heavier care, higher pay residents to Roberta Health and Rehab, even though the needs of the resident population, including the needs of Mr. Martin, Sr., exceeded the capacity of the staff.

89.

At all material times, Defendants had a duty to allocate resources and exercise fiscal and operational policies with reasonable care so as to prevent the infliction of harm on residents of Roberta Health and Rehab, including Mr. Martin, Sr.

90.

Defendants breached their duty by failing to allocate sufficient financial and operational resources to Roberta Health and Rehab, thereby causing harm to residents, including Mr. Martin, Sr.  This conduct was specifically directed, controlled, and authorized by Defendants, who knew or should have known that such conduct would likely cause harm to residents at Roberta Health

and Rehab, including Mr. Martin, Sr.

91.

At all material times, Defendants knew or should have known that the delivery of essential and necessary care would suffer due to their budgetary and operational decisions, causing resident injury if they did not provide needed resources to adequately and appropriately staff and operate Roberta Health and Rehab.

92.

As a direct and proximate result of each one of the above-described negligent acts and omissions, dependent residents, including Mr. Martin, Sr., suffered repeated and ongoing neglect and were subjected to dangerous conditions, including the routine deprivation of basic custodial care.

93.

As a result of the foregoing acts and omissions and the resultant injuries, illness, suffering and death of Frank Martin, Sr., Plaintiffs are entitled to recover from the Defendants.

**COUNT VI**
**GENERAL NEGLIGENCE**

94.

Frank Martin, Sr. entered into a contract for the provision of long-term residence, care, treatment and services with the Defendants, and pursuant to their agreement, the Defendants had a duty to exercise ordinary care in the provision of that care, treatment, and services to Mr. Martin, Sr. The Defendants failed to exercise reasonable care in a number of instances with respect to the care, treatment and services provided to Mr. Martin, Sr., and he sustained serious injury, great pain and suffering, and death as a result as demonstrated herein.

95.

Upon information and belief, Defendants failed to establish and implement policies and procedures designed to provide appropriate care, treatment and services to Roberta Health and Rehab residents including Frank Martin, Sr.

96.

Upon information and belief, Defendants failed to properly prepare Roberta Health and Rehab's budget so as to use its resources effectively and efficiently to maintain appropriate care treatment and services to its residents including Frank Martin, Sr.

97.

Upon information and belief, Defendants failed to implement policies, practices and protocols to protect residents, including Frank Martin, Sr., from neglect.

98.

Defendants failed to operate and provide services to Frank Martin, Sr. in compliance with acceptable professional standards and principles that apply to professionals providing said services.

99.

Upon information and belief, Defendants failed to maintain an adequate nursing and non-professional staff to provide for Frank Martin, Sr's needs.

100.

Defendants failed to provide properly trained, qualified and competent staff to care for Mr. Martin, Sr.

101.

Upon information and belief, Defendants failed to properly train and supervise the

Roberta Health and Rehab staff that was responsible for the provision of care, treatment and services to Frank Martin, Sr.

## 102.

Defendants failed to properly monitor and chart Frank Martin, Sr.'s condition and the course of care provided to address his medical conditions.

## 103.

Defendants' staff was negligent in a number of other ways identified herein and to be further demonstrated by the evidence.

## 104.

As a direct and proximate result of each one of the above-described negligent acts and omissions, Mr. Martin, Sr. suffered grave injury, suffered tremendously, and suffered death.

## 105.

Many of the Defendants' acts and omissions described herein are ministerial in nature and constitute simple negligence for which the Defendants are liable to Plaintiffs.

## 106.

As a result of the foregoing acts and omissions and the resultant injuries, pain and suffering, and death of Mr. Martin, Sr., the Plaintiffs are entitled to recover from the Defendants as set out below.

## COUNT VII
## BREACH OF CONTRACT

## 107.

Frank Martin, Sr. entered into a contract for the provision of long-term nursing care, treatment, and services with the Defendants, and pursuant to that agreement the Defendants had a duty to exercise ordinary care in the provision of care, treatment and services to Frank

Martin, Sr. The Defendants failed to exercise reasonable care in a number of instances with respect to the care, treatment and services provided to Frank Martin, Sr., and he sustained serious illness, injury, pain and suffering, and death as a result.

108.

In the wrongful acts and omissions described in detail above and in the insufficiency of care, treatment and services outlined herein, the Defendants failed to provide the services that they promised to provide pursuant to the contract for services entered between the Defendants and Frank Martin, Sr.  The Defendants therefore breached the contract for services as set out herein.

109.

As a result of the foregoing, Plaintiffs are entitled to recover all amounts paid to obtain services under the contract and all consequential damages arising therefrom.

**COUNT VIII**
**FAILURE TO PROVIDE SUFFICIENT AND PROPERLY TRAINED STAFF**

110.

Defendants had a duty to exercise ordinary and reasonable care in providing sufficient staffing and properly trained staff at Defendants' facility.

111.

Defendants were chronically understaffed, which put residents at the facility at risk and in danger.  In addition, the staff at Defendants' facility was inadequately and improperly trained.

112.

The Defendants breached their duty to exercise reasonable and ordinary care in providing sufficient and quality staffing.

-30-

113.

The Defendants failed to provide sufficient staffing at Defendants' facility and caused the facility to be chronically understaffed, and failed to properly train said staff.  Defendants' acts and omissions proximately caused Frank Martin, Sr. serious injury, pain, suffering, and death.

114.

As a further result of the Defendants' failure to provide sufficient staff at Defendants' facility and failure to properly train its staff, Plaintiffs are entitled to recover damages for the pain and mental anguish, death, suffering, medical expenses, and funeral and burial expenses.

**COUNT IX**
**IMPUTED LIABILITY**

115.

All of Frank Martin, Sr.'s injuries and damages were the direct result of the acts and omissions of the agents, servants and employees of the Defendant business entities  conducted within the course and scope of each individual's employment with the Defendant business entity health care providers.

116.

The Defendant business entities are therefore vicariously liable for the  individual employee and agent's acts and omissions, and for each individual officer, director, employee, agent and servant's negligent acts and omissions, and the resultant injuries, and damages of Frank Martin, Sr. by application of the doctrine of respondent superior. The Plaintiffs are therefore entitled to recover damages from the Defendants as set out herein.

**COUNT X**
**JOINT ENTERPRISE**

117.

At the time of the negligent acts and omissions and the Plaintiffs' resultant injuries and damages described herein, Defendants combined their property and labor in a joint undertaking for the provision of long-term care, treatment and services for a fee.  Each had rights of mutual control over the residence, care, treatment and other services provided to Mr. Martin, Sr. while he was a resident at Roberta Health and Rehab.

118.

By virtue of the foregoing, each of the Roberta Health and Rehab Defendants is liable to the Plaintiffs herein for money damages by application of the joint enterprise theory of recovery.

**COUNT XI**
**ESTATE'S TORT CLAIMS**

119.

Plaintiff Frank Martin, Jr. is the Anticipated Administrator of the Estate of Frank Martin, Sr., and he prosecutes these claims in that capacity.

120.

As set out above, Mr. Martin, Sr. sustained grievous injuries, pain, suffering, and death as a direct result of Defendants' acts and omissions which constitute violations of federal and state law, professional negligence and general negligence.

121.

In his capacity as the Anticipated Administrator of Mr. Martin, Sr.'s estate, Plaintiff Frank Martin, Jr. is entitled to recover all damages to which Mr. Martin, Sr. would have been entitled had he survived.  As a result of the Defendants' wrongful conduct, Mr. Martin, Sr. incurred medical

expenses and related expenses for his care, treatment and services prior to his death, and final expenses.  Mr. Martin, Sr. also endured untold pain and suffering as a result of Defendants' negligent acts and omissions prior to his death.

122.

Based on the foregoing, Plaintiff Frank Martin, Jr. is entitled to recover from Defendants damages equal to all expenses incurred in the provision of medical care and treatment to Mr. Frank Martin, Sr. resulting from the Defendants' wrongful conduct and to recover for Mr. Frank Martin, Sr.'s final expenses.  Plaintiff is also entitled to recover damages for Mr. Frank Martin, Sr.'s conscious pain and suffering prior to his death.

**COUNT XII**
**WRONGFUL DEATH**

123.

As set out above, Mr. Frank Martin, Sr. sustained grievous illness, suffered tremendously and ultimately died as a direct result of the Defendants' acts and omissions in the provision of care, treatment and services to him which constituted violations of federal and state law, professional negligence and simple negligence.

124.

Mr. Frank Martin, Sr. is survived by his spouse, Betty Martin, Plaintiff herein.

125.

As a result of the Defendants' violations of federal and state law, professional negligence, and simple negligence and Mr. Martin, Sr.'s resultant death as set out in detail above, Plaintiff Betty Martin is entitled to recover damages against the Defendants for Mr. Martin, Sr.'s wrongful death in an amount equal to the full value of the life of the deceased.

## COUNT XIII
## PUNITIVE DAMAGES

126.

As described and set forth herein, Defendants' actions, inactions, and omissions demonstrate willful misconduct, malice, wantonness, oppression, and an entire want of care giving rise to the presumption of Defendants' conscious indifference to the consequences of their actions.

127.

As a result of the foregoing, Plaintiffs are entitled to an award of punitive damages from the Defendants in an amount sufficient to punish Defendants and deter the Defendants from similar conduct in the future.

## COUNT XIV
## ATTORNEY'S FEES
## AS TO ALL DEFENDANTS

128.

Defendants and their agents generally have been stubbornly litigious and have caused the Plaintiffs unnecessary trouble and expense for which the Plaintiffs seek reasonable attorney's fees and expenses as determined by the jury, pursuant to O.C.G.A. §§ 13-6-9 and 13-6-11.

129.

By virtue of Defendants acting in bad faith as set forth above, Plaintiffs are entitled to recover reasonable attorney's fees pursuant to O.C.G.A. § 13-6-11.

**WHEREFORE: Plaintiffs pray for the following:**

a.      That service of process be had upon the Defendants,

b.      That this case be tried before 12 fair and impartial jurors on all issues so triable,

c.      That judgment be entered against the Defendants in amounts in excess of $10,000.00 with all costs to be taxed against the Defendants,

d.      That Plaintiffs recover a judgment against Defendants for punitive damages in an amount sufficient to punish Defendants and deter Defendants from similar conduct in the future;

e.      That the Court grant the Plaintiffs all other relief that it deems appropriate.

This 22nd day of February, 2023.

Respectfully submitted,

**PRIETO, MARIGLIANO, HOLBERT & PRIETO, LLC**

*/s/ Joan M. Woolley*
Michael A. Prieto
Georgia Bar No.:  587236
William F. Holbert
Georgia Bar No.:  360088
Joan M. Woolley
Georgia Bar No.: 315913
*Attorneys for the Plaintiffs*

1555 Mount Vernon Road
Atlanta, GA  30338
P: 404-856-0040 ● F: 404-856-0066
mprieto@pmhplaw.com
bholbert@pmhplaw.com
jwoolley@pmhplaw.com
www.pmhplaw.com

**SUMMONS**

E-FILED IN OFFICE - CB
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-01217-S7**

2/22/2023 7:23 PM
TIANA P. GARNER, CLERK

## IN THE STATE COURT OF <u>GWINNETT</u> COUNTY
## STATE OF GEORGIA

CIVIL ACTION    23-C-01217-S7

NUMBER _____

Betty Martin, Individually, and Frank Martin, Jr.,
As Anticipated Administrator of the Estate of
Frank Martin, Sr., Deceased

PLAINTIFFS

VS.

Barres, LLC
c/o Reg Agent: Stuart Lindeman
2907 West Bay to Bay Boulevard, Suite 303
Tampa, FL 33629

DEFENDANTS

### SUMMONS

TO THE ABOVE NAMED DEFENDANT:

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

**William F. Holbert**
**PRIETO, MARIGLIANO, HOLBERT & PRIETO, LLC**
**1555 Mount Vernon Road**
**Atlanta, GA  30338**
**P: 404-856-0040 ● F: 404-856-0066**

an answer to the complaint which is herewith served you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

23rd day of February, 2023

This _____ day of _____, 2022.

Tiana P. Garner

Clerk of Superior State Court

BY _____

Deputy Clerk

**SUMMONS**

E-FILED IN OFFICE - CB
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
**23-C-01217-S7**

2/22/2023 7:23 PM
TIANA P. GARNER, CLERK

## IN THE STATE COURT OF <u>GWINNETT</u> COUNTY
## STATE OF GEORGIA

CIVIL ACTION 23-C-01217-S7
NUMBER _____

Betty Martin, Individually, and Frank Martin, Jr.,
As Anticipated Administrator of the Estate of
Frank Martin, Sr., Deceased

PLAINTIFFS

VS.

Mission Health of Georgia, LLC
c/o Reg Agent: National Registered Agents, Inc.
289 S. Culver Street
Lawrenceville, GA 30046-480

DEFENDANTS

### SUMMONS

TO THE ABOVE NAMED DEFENDANT:

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

**William F. Holbert**
**PRIETO, MARIGLIANO, HOLBERT & PRIETO, LLC**
**1555 Mount Vernon Road**
**Atlanta, GA  30338**
**P: 404-856-0040 ● F: 404-856-0066**

an answer to the complaint which is herewith served you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

23rd day of February, 2023
This _____ day of _____, 2022.

Tiana P. Garner

Clerk of Superior/State Court

BY _____
Deputy Clerk

E-FILED IN OFFICE - CB
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-01217-S7**

2/22/2023 7:23 PM
TIANA P. GARNER, CLERK

**SUMMONS**

## IN THE STATE COURT OF <u>GWINNETT</u> COUNTY
## STATE OF GEORGIA

CIVIL ACTION 23-C-01217-S7
NUMBER _____

<u>Betty Martin, Individually, and Frank Martin, Jr.,</u>
<u>As Anticipated Administrator of the Estate of</u>
<u>Frank Martin, Sr., Deceased</u>

        PLAINTIFFS

        VS.

<u>Roberta Operator, LLC d/b/a Roberta Health and Rehab</u>
<u>c/o Reg Agent: National Registered Agents, Inc.</u>
<u>289 S. Culver Street,</u>
<u>Lawrenceville, GA 30046-4805</u>

        DEFENDANTS

### SUMMONS

TO THE ABOVE NAMED DEFENDANT:

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

**William F. Holbert**
**PRIETO, MARIGLIANO, HOLBERT & PRIETO, LLC**
**1555 Mount Vernon Road**
**Atlanta, GA  30338**
**P: 404-856-0040 ● F: 404-856-0066**

an answer to the complaint which is herewith served you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

23rd day of February, 2023

This _____ day of _____, 2022.

Clerk of Superior/State Court

BY_____

                     Deputy Clerk

E-FILED IN OFFICE - CB
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-01217-S7**

2/22/2023 7:23 PM
TIANA P. GARNER, CLERK

**SUMMONS**

## IN THE STATE COURT OF <u>GWINNETT</u> COUNTY
## STATE OF GEORGIA

CIVIL ACTION    23-C-01217-S7

NUMBER _____

<u>Betty Martin, Individually, and Frank Martin, Jr.,</u>
<u>As Anticipated Administrator of the Estate of</u>
<u>Frank Martin, Sr., Deceased</u>

PLAINTIFFS

VS.

<u>T and C Capital Assets, LLC</u>
<u>c/o Reg Agent: Joseph M. Passero</u>
<u>777 S. Harbour Island Boulevard, Suite 400</u>
<u>Tampa, FL 33602</u>

DEFENDANTS

### SUMMONS

TO THE ABOVE NAMED DEFENDANT:

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

**William F. Holbert**
**PRIETO, MARIGLIANO, HOLBERT & PRIETO, LLC**
**1555 Mount Vernon Road**
**Atlanta, GA  30338**
**P: 404-856-0040 ● F: 404-856-0066**

an answer to the complaint which is herewith served you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

23rd day of February, 2023

This _____ day of _____, 2022.

Tiana P. Garner

Clerk of Superior/State Court

BY _____

Deputy Clerk

E-FILED IN OFFICE - CB
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

23-C-01217-S7

2/22/2023 7:23 PM

TIANA P. GARNER, CLERK

**SUMMONS**

# IN THE STATE COURT OF <u>GWINNETT</u> COUNTY
## STATE OF GEORGIA

CIVIL ACTION   23-C-01217-S7
NUMBER _____

Betty Martin, Individually, and Frank Martin, Jr.,
As Anticipated Administrator of the Estate of
Frank Martin, Sr., Deceased

       PLAINTIFFS

       VS.

Windward Health Partners, LLC
c/o Reg Agent: NRAI Services, Inc.
1200 South Pine Island Road
Plantation, FL 33324

       DEFENDANTS

## SUMMONS

TO THE ABOVE NAMED DEFENDANT:

     You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

**William F. Holbert**
**PRIETO, MARIGLIANO, HOLBERT & PRIETO, LLC**
**1555 Mount Vernon Road**
**Atlanta, GA  30338**
**P: 404-856-0040 ● F: 404-856-0066**

an answer to the complaint which is herewith served you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

           23rd day of February, 2023

This _____ day of _____, 2022.

               Tiana P. Garner

         Clerk of Superior/State Court

BY _____

                  Deputy Clerk

E-FILED IN OFFICE - NN
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-01217-S7**

**2/27/2023 3:35 PM**

TIANA P. GARNER, CLERK

## IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| BETTY MARTIN, INDIVIDUALLY, and FRANK MARTIN, JR., as ANTICIPATED ADMINISTRATOR of the ESTATE of FRANK MARTIN, SR., DECEASED, | ) ) ) ) ) | CIVIL ACTION FILE NO.  23-C-01217-S7 |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| ROBERTA OPERATOR, LLC d/b/a ROBERTA HEALTH AND REHAB; GBD, LLC; BARRES, LLC; T AND C CAPITAL ASSETS, LLC; WINDWARD HEALTH PARTNERS, LLC; MISSION HEALTH OF GEORGIA, LLC; ABC CORPORATIONS; AND JOHN/JANE DOES I and II, | ) ) ) ) ) ) ) ) ) | |
| Defendant. | ) ) | |

## RULE 4 WAIVER OF SERVICE OF SUMMONS

<u>**TO**</u>:   Michael A. Prieto
William F. Holbert
Joan M. Woolley
PRIETO, MARIGLIANO, HOLBERT & PRIETO, LLC
1555 Mount Vernon Road
Atlanta, GA 30338

Pursuant to O.C.G.A. § 9-11-4(d), Defendants Roberta Operator, LLC d/b/a Roberta Health and Rehab, GBD, LLC, Barres, LLC, T and C Capital Assets, LLC, Windward Health Partners, LLC, Mission Health of Georgia, LLC, (hereinafter referred to as "Defendants") by and through their undersigned counsel, hereby accept and waive service of the Summons, <u>Complaint for Damages</u> and Discovery as itemized below:

1.     Filed *Summons; Barres, LLC;*

2.     Filed *Summons; GBD, LLC;*

3.     Filed *Summons; Roberta Operator, LLC d/b/a Roberta Health and Rehab;*

4.     Filed *Summons; Mission Health of Georgia, LLC;*

5.      Filed *Summons; T and C Capital Assets, LLC;*

6.      Filed *Summons; Windward Health Partners, LLC;*

7.      Filed *Complaint;*

8.      Filed *Affidavit;*

9.      Filed *Plaintiff Betty Matin, Individually's, First Interrogatories to Defendant Roberta Operator, LLC d/b/a Roberta Health and Rehab; and*

10.      Filed *Plaintiff Betty Matin, Individually's, First Request for Production to All Defendants.*

These Defendants agree to cooperate and avoid the cost of service of the aforementioned documents.  These Defendants further reserve all defenses and objections to the Plaintiffs' lawsuit pursuant to jurisdiction or venue of the Court, and as to any and all O.C.G.A. §§ 9-11-8 and 9-11-12 defenses and positions, except for objections based on a defect in the summons or in the service of process.  Defendants acknowledge that a judgment may be entered against them if an Answer or Rule 12 motion is not filed in Court within sixty (60) days from the date of this Waiver.

With respect to the written O.C.G.A. §§ 9-11-33, 9-11-34 and/or 9-11-36 Discovery already filed by the Plaintiffs with the <u>Complaint for Damages</u>, the deadline by which Defendants shall have to timely serve their objections and responses to the same shall be seventy-five (75) days from the date of this Waiver.

Respectfully submitted this <u>27th</u> day of <u>February</u>, 2023.

**GRAY, RUST, ST. AMAND,**
**MOFFETT & BRIESKE, L.L.P.**                   ***/s/ Sean T. Herald***
950 East Paces Ferry Road, N.E.                   Matthew G. Moffett
Suite 1700 – Salesforce Tower Atlanta             Georgia State Bar No.:  515323
Atlanta, Georgia 30326                            Sean T. Herald
Telephone:     (404) 870-7445                     Georgia State Bar No.:  246729
Facsimile:     (404) 870-1030                     *Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day served a copy of the foregoing with the Clerk of Court using the Court's electronic filing-and-service system, which will send electronic notification to all parties having appeared of record in this action:

**Michael A. Prieto**
**William F. Holbert**
**Joan M. Woolley**
**PRIETO, MARIGLIANO, HOLBERT & PRIETO, LLC**
**1555 Mount Vernon Road**
**Atlanta, GA 30338**

Dated this  27th  day of  February , 2023.

**GRAY, RUST, ST. AMAND,**
**MOFFETT & BRIESKE, L.L.P.**           ___/s/ Sean T. Herald_____
950 East Paces Ferry Road, N.E.              Matthew G. Moffett
Suite 1700 – Salesforce Tower Atlanta     Georgia State Bar No.:  515323
Atlanta, Georgia 30326                          Sean T. Herald
Telephone:      (404) 870-7445              Georgia State Bar No.:  246729
Facsimile:       (404) 870-1030              *Attorneys for Defendants*