EXHIBIT " A"

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| A.J., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE |
| | ) | NO. 1:22-cv-02752-LMM |
| PACIFIC CAPITAL | ) | |
| FUNDING, LLC; TAJJ | ) | |
| ASSOCIATES, LLC; | ) | |
| HIGHLAND HOTEL GROUP, LLC, | ) | |
| COBB REAL ESTATE SERVICES, | ) | |
| LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## SECOND AMENDED COMPLAINT FOR DAMAGES

COMES NOW Plaintiff in the above-styled action and hereby files her

Complaint as follows:

1.

When she was 14 years old, Plaintiff was trafficked for sex at the Days Inn

by Wyndham located at 2191 Northwest Pkwy SE, Marietta, GA 30067 (the "Days

Inn") in and around December 2012. Plaintiff is identified in this Complaint by her

initials to prevent public disclosure of her name. Plaintiff's counsel will disclose

her full name to defense counsel as soon as they are known or as soon as an appropriate protective order is in place.[1]

2.

At all times relevant to this Complaint, Plaintiff was a minor child and victim of sex trafficking at Defendants' hotel.

3.

At all times relevant hereto, Defendants Pacific Capital Funding, LLC ("Pacific Capital"), Tajj Associates, LLC ("Tajj"), Highland Hotel Group, LLC ("Highland"); and Cobb Real Estate Services, LLC ("Cobb Real Estate Services") jointly owned, supervised, operated, maintained, controlled, managed and were inextricably connected to the renting of rooms at the Days Inn, from which they benefited financially.

4.

A person under the age of 18 cannot consent to having sex in exchange for money. Any sale of sex in exchange for money involving a person under eighteen

---

[1] Contemporaneously with this Complaint, Plaintiff has filed a Motion for Protective Order and Leave to Proceed Anonymously based on the nature of the allegations in the Complaint, which include the sex trafficking of Plaintiff, a minor child, and are intimate and personal in nature, as well as for her own personal safety.

(i.e., "minor sex trafficking") is *criminal* sex trafficking under federal law. 18 U.S.C. § 1591(a). Minor sex trafficking does not require evidence that the victim was subject to "force, fraud, or coercion." 18 U.S.C. § 1591(a)(1), *et seq.* Every person who engages in commercial sex with a minor is trafficking that minor under 18 U.S.C. § 1591(a)(1). Yet, plaintiff was forcibly sold by a violent trafficker repeatedly at the Days Inn.

5.

Whenever reference is made in this Complaint to any act, deed, or conduct of Defendants, the allegation is that Defendants engaged in the act, deed, or conduct by or through one or more of its officers, directors, agents, employees, or representatives who was actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of the Defendants.

**Parties, Jurisdiction, and Venue**

6.

Plaintiff is a citizen of the United States of America, is a resident of the State of Georgia, and consents to the jurisdiction of this Court. Plaintiff was born in June of 1998 and was a minor at the time of her sex trafficking.

3

7.

Pacific Capital is a Georgia limited liability company with its principal place of business in Castaic, California. It regularly conducts business in the State of Georgia, derives substantial revenue from services rendered in Georgia, and has committed tortious acts or omissions both within and outside Georgia, resulting in injuries in Georgia. Service can be made on Pacific Capital by serving its registered agent: Samir C. Patel, 1117 Perimeter Center West Suite W311, Atlanta, GA, 30338.

8.

Jurisdiction and venue are proper as to Pacific Capital, and Pacific Capital was properly served with process in this action.

9.

Tajj is a Georgia limited liability company with its principal place of business in Marietta, Georgia. Service can be made on Tajj by serving its registered agent: Jayesh V. Patel, 7385 Hannover Parkway N., Stockbridge, Georgia, 30281.

10.

Jurisdiction and venue are proper as to Tajj, and Tajj was properly served with process in this action.

11.

Highland is a Georgia limited liability company with its principal place of business in Marietta, Georgia. Service can be made on Highland by serving its registered agent: Alpa Patel, 2191 Northwest Parkway, Marietta, Georgia, 30067.

12.

Jurisdiction and venue are proper as to Highland, and Highland was properly served with process in this action.

13.

Cobb Real Estate Services is a Georgia limited liability company with its principal place of business in Kennesaw, Georgia. Service can be made on Cobb Real Estate Services by serving its registered agent Eddie Bowling, 3105 Creekside Village Dr., Suite 804, Kennesaw, Georgia, 30144.

14.

Jurisdiction and venue are proper as to Cobb Real Estate Services, and Cobb Real Estate Services was properly served with process in this action.

15.

Defendants jointly controlled the operation of the Days Inn during the time in which Plaintiff was trafficked. Pacific Capital purchased the hotel from Tajj in a foreclosure sale in October 2012 in order to facilitate the transfer of the hotel's

ownership to Highland in March 2013.  Members of Pacific Capital have stated that while it owned the hotel for a little more than four months, Tajj, Highland, and Cobb Real Estate Services together jointly operated and managed the hotel, and employed all of the hotel staff.

16.

Throughout the time period when Plaintiff was trafficked at the hotel, the daily operation and management of the hotel was carried out by Cobb Real Estate Services as the franchisee at the hotel. In that role, Cobb Real Estate Services was responsible for the oversight of employees and the safety and security of the property and its guests, including Plaintiff.

17.

Defendants were joint venturers who operated the hotel together as one company, shared valuable data and guest information derived from the hotel, shared funds generated by the Days Inn, and had rights of mutual control over the Days Inn and each other.  Pacific Capital ratified the conduct of Tajj, Highland, and Cobb Real Estate Services and its agents and representatives in the operation of the Days Inn.  Likewise, Tajj, Highland, and Cobb Real Estate Services exerted mutual control over each other and ratified the conduct of each other in the operation of the hotel.

6

18.

Defendants are directly liable for their own acts and omissions and directly and vicariously liable for the acts and omissions of every other Defendant and its agents and representatives.

19.

This Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 because Plaintiff asserts claims arising under 18 U.S.C. 1595(a).

20.

Venue is proper in this district pursuant to 28 U.S.C. § 1391 as the incidents forming the basis of this complaint occurred in Cobb County, Georgia, within the Northern District of Georgia, Atlanta Division.

**Plaintiff's Minor Sex Trafficking at the Days Inn**

21.

Plaintiff, a 14-year-old minor at the time, was trafficked for sex over the course of several days at the Days Inn in December 2012. Plaintiff was rescued from the hotel by the police, who later arrested Plaintiff's trafficker and charged him with sex trafficking and pimping a person under the age of 18. The trafficker entered a guilty plea to selling plaintiff for sex at the Days Inn and was sentenced to prison.

22.

Plaintiff's trafficker had a history of sex trafficking at the Days Inn. In fact, the investigation into Plaintiff's trafficking determined that the Days Inn was a hotel that Plaintiff's trafficker used "quite frequently." Plaintiff's trafficker rented rooms and trafficked at least four other minor girls and women for sex at the hotel continuously in the three months prior to Plaintiff's rescue from the Days Inn. Just a few months before Plaintiff was trafficked at the hotel, her trafficker was arrested there with guns and drugs and two of his other minor victims were rescued from the hotel. Defendants knew or should have known that Plaintiff's trafficker at that time was selling minor victims for sex at the hotel and that further dealings with the trafficker were for the same purpose.

23.

On or about December 17, 2012, Plaintiff's trafficker took Plaintiff to the Days Inn, where at the time he kept four rooms rented at the hotel in which he trafficked Plaintiff and his other victims for sex.

24.

Plaintiff's trafficker took her to one of his rooms in the hotel, room 216, made her pose for pictures to be used in online advertisements for sex, and then raped her twice in the hotel room, "to get her ready to have sex with other men."

25.

The first time a man purchased sex with Plaintiff was at the Days Inn. The man did not use a condom, and afterwards, the 14-year-old Plaintiff was left crying and in pain from the sex.

26.

After she had been sold to several men at the Days Inn, Plaintiff's trafficker returned to the room and beat her for "not following the rules."

27.

While Plaintiff was trafficked at the Days Inn, she was made to have sex with as many as nine older men each day. Defendants knew or should have known that the number of daily, older male visitors to the room was clearly indicative of not only prostitution, but also of child sex trafficking.

28.

In addition to being made to have sex with older male buyers, Plaintiff was forced to engage in sex with her trafficker every day.

29.

Plaintiff's sex trafficker operated openly and brazenly at the Days Inn, as did other sex traffickers. When Plaintiff was trafficked at the Days Inn, she witnessed

at least three other victims, including another minor victim, being trafficked for sex at the hotel. As a result, there was constant stream of traffic throughout the day of men with no luggage visiting the hotel rooms of these women and children for short periods of time before leaving and being followed by another anonymous man.  Defendants knew or should have known that this constant foot traffic was indicative of sex trafficking, including minor sex trafficking.

30.

When Plaintiff was trafficked at the Days Inn, multiple other traffickers operated at the hotel and several other victims were trafficked for sex at the hotel. As a result, a large number of buyers frequented the hotel each day.

31.

While plaintiff was with a man buying sex in the room at the Days Inn, Plaintiff's trafficker would guard the hotel room and along with other victims would loiter outside the room or in the hotel parking lot. Plaintiff and other obviously minor victims would often stand and walk around outside the hotel in view of the staff in skimpy and inappropriate clothing. Defendants knew or should have known that the conduct of Plaintiff's trafficker, in conjunction with the

buyers frequenting the room, was indicative of not only prostitution, but also of child sex trafficking.

32.

Plaintiff, her trafficker, and the other victims with whom Plaintiff was trafficked, regularly interacted with Defendants' employees, agents, and representatives during the time period in which Plaintiff was trafficked at the Days Inn.

33.

While Plaintiff was trafficked for sex at the Days Inn, she exhibited numerous well-known and visible signs of a child sex trafficking victim, of which Defendants knew or should have known, including her age and inappropriate appearance, fatigue, sleep deprivation, a failure to make eye contact with others, loitering, and monitoring and control of Plaintiff by her trafficker, an older man.

34.

At times when Plaintiff's room was being used by another victim, Plaintiff would wander around the hotel and often visited the lobby of the hotel, interacting with front desk employees, who knew or should have known Plaintiff was a minor victim of sex trafficking occurring at the Days Inn.

35.

Defendants' employees at the Days Inn were familiar with and accommodating to Plaintiff's trafficker.

36.

While trafficked at the Days Inn, Plaintiff's rooms evidenced numerous well-known and visible signs of sex trafficking of which Defendants knew or should have known. Frequently, the trash cans in the rooms in which Plaintiff was trafficked contained an extraordinary number of used condoms and condom wrappers, multiple large boxes of condoms, multiple cell phones, and Plaintiff or her trafficker frequently requested an excessive number of towels from housekeeping.

37.

More specifically, the room in which the 14-year-old child was staying openly contained at least two cell phones, unmarked drugs, a bottle of sex lube, *two* large boxes of condoms, a 36-count box of Trojan Magnum condoms and a 40-count box of Lifestyles condoms, open condom wrappers around the room, scattered underwear, wigs, and multiple packages of baby wipes used to clean herself after being sold for sex. Some of what the room looked like on the day of Plaintiff's rescue is shown in the pictures below. During the cleaning of the room,

Defendants knew or should have known that these items were obviously indicative of the fact that the 14-year-old child in the room was being sold for sex.









38.

In December 2012, the Marietta Police Department was called to the Days Inn by Plaintiff's family members upon suspicion that the minor Plaintiff was located at the hotel. Plaintiff was subsequently rescued from the hotel, and her trafficker was arrested for sex trafficking.

39.

Defendants knew Plaintiff was at the Days Inn and that she was a minor. When the police arrived looking for Plaintiff, one of the Defendants' employees *then* told the police that there was a young girl in room 216. Despite the hotel manager's knowledge of this minor at the hotel, Defendants never contacted the police or otherwise provided help to Plaintiff. At that point, it was far too late to prevent the sex trafficking Plaintiff had been subject to at the Days Inn.

40.

When the police officers first made contact with Plaintiff, she was found loitering in the hallway of the Days Inn. Plaintiff asked the responding officers to transport her to another location because she was scared her trafficker would see her with the police. Plaintiff stated that if her trafficker saw her talking to the officers, he would kill her.

41.

Upon examination of Plaintiff, the Sexual Assault Nurse Examiner ("SANE Nurse") indicated Plaintiff exhibited signs of trauma and sustained injuries to her vaginal area, including a tear on her hymen, and three healing tears. When describing Plaintiff's injuries to Plaintiff, the SANE nurse stated that Plaintiff's "insides were ripped out."

42.

On June 19, 2014, Plaintiff's trafficker pled guilty to Pimping for Persons Under 18 in the Superior Court of Cobb County.

## Defendants' Knowledge of Sex Trafficking Generally

43.

Defendants knew or should have known of the existence of sex trafficking and its illegality more than 20 years ago, since the passage of the Trafficking Victims Protection Act in 2000, and the United Nations' adoption of the Palermo Protocol, to prevent, suppress, and punish trafficking in persons.

44.

Defendants knew or should have known that during the relevant period Atlanta was a hub of sex trafficking and that the crime was prevalent in the city, including at the Days Inn. According to a well-publicized study commissioned by

16

the U.S. Department of Justice, Atlanta had one of, if not the, largest illegal sex

trafficking economies in the country.[2]  In 2007, Atlanta's sex trafficking economy

was worth $290 million annually, and traffickers reported average *weekly* earnings

of roughly $33,000. Over the last two decades, sex trafficking has generated

billions of dollars in illicit profits in metro Atlanta alone. Defendants have received

and retained some of those illicit profits through renting hotel rooms used for the

trafficking of Plaintiff and other minors.

45.

Defendants knew or should have known of the Atlanta area's well-

publicized reputation as an "epicenter for human trafficking, particularly child sex

trafficking,"[3] and as "the number one city for child sex trafficking."[4]

---

[2] *See* Christian Boone, *Study: Atlanta's Sex Trade Highly Profitable*, Atlanta Journal-Constitution, (March 13, 2014) https://www.ajc.com/news/crime--law/study-atlanta-sex-trade-highly-profitable/GiuU5vZdoUo5vdUYSaOBNM/ (last visited April 1, 2021); *see also* Meredith Dank, et.al, *Estimating the Size and Structure of the Underground Commercial Sex Economy in Eight Major US Cities*, Urban Institute, (March 12, 2014), 30-32, *available at* https://www.urban.org/research/publication/estimating-size-and-structure-underground-commercial-sex-economy-eight-major-us-cities (last visited April 1, 2021).
[3] Sally Yates, Remarks at Justice Department Event Marking National Slavery and Human Trafficking Prevention Month, (Jan. 29, 2015), *available at* https://www.justice.gov/opa/speech/acting-deputy-attorney-general-sally-quillian-yates-delivers-remarks-justice-department (last visited April 1, 2021).
[4] *Id.*

46.

Defendants knew or should have known that hotels and motels are "a particularly attractive site for criminal activity ranging from drug dealing and prostitution to human trafficking. Offering privacy and anonymity on the cheap, they have been employed as . . . rendezvous sites where child sex workers meet their clients on threat of violence from their procurers[.]" City *of Los Angeles v. Patel*, 135 S. Ct. 2443, 2457 (2015) (Scalia, J., dissenting, joined by Chief Justice Roberts and Justice Thomas).

47.

Defendants knew or should have known the following: The National Human Trafficking Hotline has reported that ninety-two percent of the calls it received involving hotels and motels reported sex trafficking, and another two percent reported a combination of sex and labor trafficking.[5] A 2012 study found that 63 percent of trafficking incidents occurred in hotels.[6] And the Polaris Project found

---

[5] *Human Trafficking and Hotels & Motels*, Polaris Project, https://polarisproject.org/human-trafficking-and-hotels-motels/ (last visited April 1, 2021).
[6] Jon Conte, *et al., Inhospitable to Human Trafficking Program Evaluation*, at 2, Businesses Ending Slavery and Trafficking, (July 2014), https://www.bestalliance.org/uploads/5/0/0/4/50047795/itt_program_evaluation.11_without_appendix.pdf at 5 (last visited April 1, 2021).

that "75% of [trafficking] survivors responding to Polaris's survey reported

coming into contact with hotels at some point during their exploitation . . . .

Unfortunately, 94% also disclosed that they never received any assistance,

concern, or identification from hotel staff."

48.

Defendants knew or should have known that the organization called End

Child Prostitution and Trafficking (ECPAT-USA) launched the Tourism Child-

Protection Code of Conduct (the "Code") in the United States in 2004.[7]

49.

Defendants knew or should have known that the Code, which lays out well-

established best practices for the hospitality industry to identify, address, and deter

sex trafficking, identifies six reasonable and logical steps hotels and motels can

take:

    a. establish corporate policy and procedures against sexual

       exploitation of children;

    b. train employees in children's rights, the prevention of sexual

       exploitation and how to report suspected cases;

---

[7] *See The Tourism Child-Protection Code of Conduct*, ECPAT-USA, *available at*
www.ecpatusa.org/code/ (last visited April 1, 2021).

    c.  include a clause in further partner contracts stating a common repudiation and zero tolerance policy of sexual exploitation of children;

    d.  provide information to travelers on children's rights, the prevention of sexual exploitation of children and how to report suspected cases;

    e.  support, collaborate and engage stakeholders in the prevention of sexual exploitation of children; and

    f.  report annually on the company's implementation of Code-related activities.

50.

Defendants knew or should have known that ECPAT is only one of several high-profile organizations that have for years given hotels and motels the tools to address the scourge of sex trafficking at hotels.

51.

Without a market, a place for the buying and selling of humans for sex, sex trafficking would cease to exist. Defendants, for a fee, provided that market, a private and anonymous market for Plaintiff to be sold for sex at their hotel.

20

## **Defendants' Knowledge of Prior Crime at the Days Inn**

52.

Before and during Plaintiff's sex trafficking at the Days Inn, Days Inn employees knew or should have known about crime, prostitution, and sex trafficking, which was obvious at the Days Inn.

53.

Before and during Plaintiff's sex trafficking at the Days Inn, Defendants knew of, condoned, and permitted widespread prostitution and sex trafficking, including minor sex trafficking, at the Days Inn.

54.

Prior to Plaintiff's sex trafficking at the Days Inn, Days Inn employees at the hotel knew or should have known that rooms at the Days Inn were frequently rented for short term use for commercial sex with guests, usually men, renting a room at the hotel, using it for a short period of time, and then leaving and not returning to the hotel.

55.

Prior to and during Plaintiff's trafficking at the Days Inn, the premises and its approaches were well known for crime, prostitution, and sex trafficking, which is why Plaintiff's sex trafficker brought Plaintiff and three other victims to the

21

Days Inn to be sold for sex. Defendants provided a busy market for just that type of illegal activity

56.

Prior to Plaintiff's sex trafficking, Defendants knew or should have known of sex crimes, violent crimes, and significant drug activity at the Days Inn, but negligently failed to take any steps to protect their invitees, including Plaintiff.

57.

Prior to Plaintiff's sex trafficking, Defendants knew or should have known that on or about September 2010, a child victim of sex trafficking was rescued at the Days Inn by the Marietta Police Department.

58.

Prior to Plaintiff's sex trafficking, Defendants knew or should have known that upon the officer's arrival at the Days Inn, police made contact in the parking lot with three females, two of which were minors.

59.

Prior to Plaintiff's sex trafficking, Defendants knew or should have known that at least one minor had been trafficked by an older man at the hotel for two weeks. The trafficker took all the money from selling the minor for sex at the Days Inn.

60.

Prior to Plaintiff's sex trafficking, Defendants knew or should have known

that on or about November 2011, Marietta Police were dispatched to the Days Inn

in response to a possible assault. Two individuals, one of which was suspected of

being a prostitute, were arrested for possession of drugs.

61.

Just months prior to Plaintiff's sex trafficking, Defendants knew or should

have known that two other minor victims of Plaintiff's trafficker were recovered

by law enforcement at the Days Inn.

## **COUNT I**

## **STATUTORY LIABILITY**
## **18 U.S.C. § 1595(a)**

62.

Plaintiff incorporates Paragraphs 1 through 59 as if fully restated herein

verbatim.

63.

In violation of the Trafficking Victims Protection Reauthorization Act

("TVPRA"), 18 U.S.C. § 1595(a), Defendants knowingly benefitted from

participation in a venture that Defendants knew or should have known violated the

TVPRA.

64.

Defendants knowingly benefitted from Plaintiff's sex trafficking by receiving the revenue generated by the operation of the Days Inn, including a percentage of the revenue generated for the rate charged on the rooms in which Plaintiff was trafficked.

65.

Defendants participated in a venture by associating with Plaintiff's sex trafficker, facilitating Plaintiff's sex trafficking through its operation of the hotel, and providing to Plaintiff's trafficker the necessary venue for Plaintiff's minor sex trafficking. In the course of this venture, multiple men paid to have sex with Plaintiff at the Days Inn.

66.

The venture in which Defendants participated was in or affecting interstate commerce.

67.

Defendants knew or should have known the venture engaged in acts in violation of the TVPRA because Defendants, their agents and representatives, had a history of dealings with Plaintiff's trafficker. Defendant also had the opportunity

24

to observe Plaintiff, a minor, and three other victims at the hotel, with and without her trafficker, the signs of minor sex trafficking exhibited by Plaintiff, her trafficker, and the rooms in which Plaintiff and the three other victims were trafficked, and the frequent traffic of adult male buyers to Plaintiff's rooms.

68.

Defendants knew or should have known the venture engaged in acts in violation of the TVPRA because Defendants, their agents and representatives, knew or should have known of other sex trafficking and sex crimes at the hotel in the months before Plaintiff was trafficked for sex at the Days Inn.

69.

Defendants are directly and vicariously liable under § 1595(a) for the actions of their agents and representatives.

70.

Plaintiff has suffered substantial physical, emotional, and psychological harm and other damages as a direct and proximate result of Defendants' participation in this venture.

71.

Defendants are liable to Plaintiff for her damages in an amount to be proven at trial, including reasonable attorneys' fees and punitive damages under 18 U.S.C.

§ 1595(a).

72.

All Defendants are jointly and severally liable for damages arising from the indivisible injuries they caused Plaintiff, whose damages were proximately caused by the acts discussed in this count.

## DAMAGES

73.

Plaintiff incorporates Paragraphs 1 through 70 as if fully set forth herein.

74.

As a proximate and foreseeable result of the Defendants' negligence and violations of the TVPRA, Plaintiff sustained personal injuries, mental and emotional pain and suffering, experienced mental anguish, and suffered other damages as will be proven at trial. Plaintiff brings each and every claim permissible under federal law against Defendant for injuries suffered in the incident at issue. Plaintiff seeks all compensatory, special, economic, consequential, general, punitive, and all other damages permissible under federal law, including, but not limited to:

a)      Personal injuries;

b)   Past, present and future conscious pain and suffering;

c)   Loss of enjoyment of life;

d)   Medical expenses;

e)   Mental anguish and emotional distress;

f)   Loss of past, present, and future wages;

g)   Incidental expenses;

h)   All special, compensatory, economic, punitive, and other damages permissible under Georgia and federal law; and

i)   Consequential damages to be proven at trial.

## 75.

Plaintiff is entitled to an award of punitive damages without limitation or cap because the actions of Defendants and their employees were willful and wanton and showed an entire want of care, which raises the presumption of a conscious indifference to consequences, and because Defendants' actions were malicious, oppressive, and in reckless disregard of Plaintiff's rights.

## 76.

Defendants' actions evidence a species of bad faith, were and are stubbornly litigious, and have caused Plaintiff undue expense.  Thus, Plaintiff is entitled to recover her necessary expenses of litigation, including an award of reasonable

attorneys' fees and expenses required by this action. (18 U.S.C. § 1595(a)).

Furthermore, Plaintiff is entitled to all expenses of litigation and attorneys' fees

pursuant to Federal law.

WHEREFORE, Plaintiff prays for a judgment to be awarded to her and

against Defendants for the following:

a)  Process issue as provided by law;

b)  Plaintiff be awarded actual damages in amounts to be shown at trial

from Defendants;

c)  Plaintiff be awarded all general, special, compensatory, economic,

consequential, punitive and other allowable damages in accordance

with the enlightened conscience of an impartial jury from Defendants;

d)  Plaintiff be awarded a trial by jury; and

e)  Plaintiff have such other relief as this Court deems just and appropriate

under the circumstances.

TRIAL BY JURY IS HEREBY DEMANDED.

This 2nd day of November, 2022.

Respectfully submitted,

**ANDERSEN, TATE & CARR, P.C.**

*/s/ Patrick J. McDonough*
Patrick J. McDonough
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
Jonathan S. Tonge
Georgia Bar No. 303999
jtonge@atclawfirm.com
*Attorneys for Plaintiff*

**ANDERSEN, TATE & CARR, P.C.**
One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
Phone: (770) 822-0900
Facsimile: (770) 822-9680