IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| JEFFREY HUGHES, | : | |
| on behalf of himself and all others | : | |
| similarly situated, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action File No. |
| v. | : | |
| | : | _____ |
| CAPITAL ONE SERVICES, LLC, a | : | |
| Delaware limited liability company, | : | |
| servicer for Capital One, N.A., successor by | : | |
| merger to Capital One Bank (USA), N.A. | : | |
| | : | |
| Defendant. | : | |
| | : | |

## CLASS ACTION COMPLAINT

### INTRODUCTION

1.      This is an action by the Plaintiff, Jeffrey Hughes, on behalf of himself

and others similarly situated, against Capital One Services, LLC ("Capital One")

for actual and punitive damages and such equitable and declaratory relief as is

necessary to enforce the requirements of the Equal Credit Opportunity Act

("ECOA") with respect to the requirement that Capital One provide written

adverse action notices containing the *specific reasons* for the adverse action taken

when taking such adverse action with respect to a credit transaction. 15 U.S.C. §

1691(d).

2.     In addition, Plaintiff, Jeffrey Hughes, on behalf of himself and all others similarly situated, brings this action against Capital One for breach of contract for unilaterally closing credit card accounts in bad faith without providing the consumer the specific reason for such action including the source of any information which Capital One may be relying.

## PARTIES AND PERSONAL JURISDICTION

3.     Plaintiff is a natural person who is authorized by law to bring this action.

4.     Defendant, CAPITAL ONE SERVICES, LLC ("Capital One"), is a limited liability company which transacts business in this State and District, has registered to do business in the State of Georgia and maintains a registered agent in the Northern District of Georgia.

5.     Capital One issues consumer credit cards to persons throughout the United States, including the State of Georgia.

6.     Capital One engages in continuous and systematic business transactions in the State of Georgia with respect to its credit card issuance and servicing and its cards are routinely used throughout the State of Georgia.

7.     In the course of its business, Defendant twice accepted an application for a credit card from Plaintiff Jeffrey Hughes, issued Plaintiff such credit cards, and then closed such credit cards without providing Plaintiff a

specific statement of reasons, including the source of the information relied

upon, for closing such card. Such conduct forms the basis of this Complaint.

8.     Capital One may be served upon its registered agent in the State of

Georgia, Corporation Service Company, 2 Sun Court, Suite 400, Peachtree

Corners, GA, 30092.

9.     Defendant is subject to the jurisdiction of this court.

10.    All conditions precedent to this action have been complied with.

## SUBJECT MATTER JURISDICTION

11.    In enacting the ECOA, Congress found "that there is a need to

insure that the various financial institutions and other firms engaged in the

extensions of credit exercise their responsibility to make credit available with

fairness, impartiality, and without discrimination[.]" ECOA, 88 Stat. 1521, note to

15 U.S.C. § 1691.

12.    In enacting the ECOA, Congress found "[e]conomic stabilization

would be enhanced [by] the informed use of credit which Congress has

heretofore sought to promote." *Id.*

13.    The adverse action requirements of 15 U.S.C. § 1691(d) further such

Congressional purposes by ensuring that credit is made available with fairness,

impartiality, and without discrimination, and that consumers are informed and

educated in their use of credit.

14.    "In 1976, Congress amended the ECOA to include a provision requiring creditors to provide applicants with written notice of *the specific reasons* why an adverse action was taken in regards to their credit. *See* 15 U.S.C. § 1691(d)(2)-(3)" *Tyson v. Sterling Rental, Inc.*, 836 F.3d 571, 576 (6th Cir. 2016).

15.    "The Senate report accompanying the 1976 amendment indicates that in addition to further discouraging discriminatory practices, the notice requirement is intended to provide consumers with a 'valuable educational benefit' and to allow for the correction of possible errors '[i]n those cases where the creditor may have acted on misinformation or inadequate information.'" *Id.* at 576-77 *citing* S. Rep. No. 94-589, at 4 (1976).

16.    By refusing to provide Plaintiff and members of the putative class the specific reasons for adverse action, Capital One has denied them of their private statutory right to receive such information, of the educational benefit of such information, and the ability to engage in the informed use of credit.

17.    In addition, by refusing to provide Plaintiff and members of the putative class the specific reasons for adverse action, including the source of such information, Capital One has denied them of their due process right to correct possible errors.

18.    For these reasons and those articulated in the facts below, Plaintiff and members of the putative class have suffered concrete and particularized

injuries that are fairly traceable to Capital One's conduct. Such injuries may be redressed in the form of damages and equitable relief as sought herein.

19.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Plaintiff's Equal Credit Opportunity Act claim because it arises under federal law, 15 U.S.C. § 1691 et seq.

20.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1331 over Plaintiff's state law claim because it is so related to the ECOA claim that they form part of the same case of controversy under Article III of the United States Constitution.

## STATEMENT OF FACTS

21.     In 2022, Plaintiff applied for and was issued two credit cards from Capital One with account numbers ending in 4082 and 0376 ("accounts").

22.     Plaintiff is therefore an applicant as defined by the ECOA and Regulation B.

23.     Capital One issued such credit card accounts, and Plaintiff subsequently used such credit cards, thereby entering into contracts with Capital One.

24.     The 4082 account was applied for in or around July, 2022.

25.     On or about October 12, 2022, Plaintiff discovered that his Capital One account ending in 4082 was not working.

26.     On October 19, 2022, Capital One sent a letter informing Plaintiff that it had closed the 4082 account.

27.     The October 19, 2022 letter did not provide a specific statement of reasons for why Capital One was closing the account.

28.     The October 19, 2022 letter did not provide Plaintiff with a notice of the right to a statement of the reasons for closing the account, nor the identity of the person or office from which such statement may be obtained.

29.     Despite closing Plaintiff's account ending in 4082 approximately three months after opening it, Capital One solicited Plaintiff to open a second account in October, 2022.

30.     Plaintiff applied for a new Capital One account in October, 2022. Rather than reject Plaintiff's application outright, Capital One granted the application, issued the credit card ending in 0376, and then closed the account approximately three weeks later.

31.     On November 16, 2022, Capital One sent Plaintiff the same form letter as the October 19, 2022 letter, this time to inform him that the 0376 account was being closed.

32.     Capital One takes the position that by granting consumers such as Plaintiff credit before closing such accounts, such consumers lose the protections provided for by the Equal Credit Opportunity Act. Plaintiff adamantly disagrees

6

with Capital One's interpretation of the ECOA, which if accepted would permit Capital One to continue its practice of issuing cards and closing them shortly thereafter to avoid ECOA's protections, as it did with Plaintiff.

33.     The only reason for closing the accounts provided by Capital One was that "Capital One has discovered adverse past or present legal action involving an individual or entity associated with the account. Unfortunately, it can't be reopened, and we are not able to offer additional information about this decision."

34.     The statement provided by Capital One was not specific under the ordinary, unambiguous definition of the term. *See*, e.g., *Barnett Bank of Marion Cty., NA v. Nelson*, 517 US 25, 38 (1996) ("in ordinary English" the term "specifically" (the adverb form of "specific") means "'explicitly, particularly, [or] definitely,' [cits.] thereby contrasting a specific reference with an implicit reference made by more general language to a broader topic.") *quoting* Black's Law Dictionary 1398 (6th ed. 1990).

35.     Despite what the letter said, Capital One *was* able to offer additional information about its decision to close the account.  It was simply unwilling to do so.

36.     Plaintiff had an outstanding balance at the time of closures and was not in default on the terms or payment.

37.     While the payment terms imposed on Mr. Hughes continued, Capital One would no longer extend Mr. Hughes any new credit on the account.

38.     The closing of his accounts negatively affected Plaintiff's debt-to-credit ratios which are used in prevalent scoring models such as FICO.

39.     Capital One based its decision based on information obtained from a third-party consumer reporting agency.

40.     Plaintiff wanted to know the source of the information that Capital One relied on. Armed with such information, Plaintiff could have requested a copy of his file along with the report provided to Capital One. This would have allowed Plaintiff to review the information that Capital One was relying on and correct misinformation, if any, in such report.

41.     Capital One's unilateral termination of Plaintiff's credit card accounts also caused Plaintiff worry and concern about his ability to obtain credit in the future.  Without knowing for certain what information Capital One relied upon or the source of any such information, Plaintiff was – and still is – unable to fix or correct such information if it turns out to be incorrect or incomplete.

42.     Capital One still refuses to provide any specific information regarding the reasons for closing the account or refusing to reopen it, including the following: A) The type of legal proceeding at issue; and B) the information if relied upon in making the decision.

43.     Plaintiff was substantially harmed and damaged by Capital One's improper handling of his account. The account was closed without providing the specific reason and without providing Plaintiff sufficient information to fix whatever information Capital One relied upon, if it turned out to be incorrect or incomplete.

## CLASS ALLEGATIONS

44.     This action is brought on behalf of a class defined as (1) all persons in the United States 2) who applied for a consumer credit card from Capital One, 3) where such application was either denied or was granted then closed, and 4) who Capital One sent a letter stating "Capital One has discovered adverse past or present legal action involving an individual or entity associated with the account. Unfortunately, it can't be reopened, and we are not able to offer additional information about this decision." (5) Excluded from the class are persons who were delinquent or otherwise in default.

45.     The exact size of the class is information within the exclusive knowledge of the Defendant.

46.     The class is so numerous that joinder of all members is impractical.

47.     The allegation of the previous paragraph is likely to have evidentiary support after a reasonable opportunity for further investigation or

discovery.  This allegation is based upon the use of a generic form letter which lacks any specificity as required by ECOA and Capital One's status as one of the largest volume issuers of consumer credit cards in the United States.

48.     There are questions of law and fact common to the class, which common issues predominate over any issues involving only individual class members.  The principal issues are:

    A.  Whether Capital One is a creditor as defined by ECOA;

    B.  Whether Plaintiff and putative class members are applicants as defined by ECOA;

    C.  Whether Capital One's letter provided a specific statement of reasons for its adverse action;

    D.  Whether Capital One breached the terms of the credit card agreement, including but not limited to the covenants of good faith and fair dealing, when it unilaterally terminated such accounts without providing a specific statement of reasons and prohibited consumers from challenging the information upon which Capital One relied; and

    E.   The amount of damages and form of injunctive relief, if any, should be awarded.

54.     The claims of the Plaintiff are typical of those of the class members.

All are based on the same facts and legal theories.

55.     Plaintiff will fairly and adequately protect the interests of the class.
He has retained counsel experienced in handling consumer class actions.
Neither Plaintiff nor his counsel have any interests which might cause them not
to vigorously pursue this action.

56.     Certification of the class under Rule 23 is appropriate in that:

a.      The questions of law or fact common to the members of the
class predominate over any questions affecting an individual member;

b.      A class action is superior to other available methods for the
fair and efficient adjudication of the controversy. Class treatment will
permit a large number of similarly situated persons to prosecute their
common claims relating to Defendant's refusal to provide the specific
reasons for adverse actions efficiently, and without the duplication of
effort and expense that numerous individual lawsuits would entail.
Absent a class action, many members of the class will likely not obtain
or even attempt to obtain relief, whether because they are unaware of
their right to relief from the harm caused by Defendant's illegal
practices, due to the prohibitive time and monetary cost inherent in
individual litigation, or otherwise.

57.     Plaintiff requests certification of a class pursuant to Rule 23(b)(3) for

his claims of monetary damages.

58.   Plaintiff requests certification of a class pursuant to Rule 23(b)(2) for his claims for equitable relief.

## CAUSE OF ACTION

## COUNT ONE: EQUAL CREDIT OPPORTUNITY ACT

59.   The acts of Defendant constitute violations of the Equal Credit Opportunity Act and Regulation B.

60.   The ECOA defines adverse action as "a denial or revocation of credit, a change in terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested."

61.   The ECOA requires that "[e]ach applicant against whom adverse action is taken shall be entitled to a Statement of Reasons for such action from the creditor." 15 U.S.C. § 1691(d)(2).

62.   "A statement of reasons meets the requirements of this subsection only if it contains the specific reasons for the adverse action taken." 15 U.S.C. § 1691(d)(3).

63.   Capital One failed to and in fact expressly refused to provide the specific reasons for the adverse action of revoking and refusing to extend credit as alleged herein.

64.   As a result of Defendant's actions in violation of the ECOA, plaintiff

and members of the putative class were substantially harmed, and are entitled to an award of actual damages. Such damages naturally accrue from the revocation of existing accounts and the resulting impacts on credit scores.

65. The amounts of such damages may be uniformly established by common evidence and/or expert testimony.

66. As a result of Defendant's actions in violation of the ECOA, Plaintiff and members of the putative class are entitled to an award of punitive damages of up to $10,000 per class member not to exceed a total aggregate recovery of $500,000 in punitive damages under ECOA, or whatever damages the Court or jury finds just and proper.

67. Capital One knows of and is familiar with its obligations to inform applicants of adverse action, yet it expressly refused to do so.

68. Instead, Capital One has granted credit applications only to close them shortly thereafter in an apparent attempt to avoid its ECOA obligations.

69. Capital One made a business decision to refuse to comply with ECOA as to Plaintiff and the class as described herein, because noncompliance was cheaper and otherwise more advantageous for Capital One, even though its noncompliance ran to the substantial detriment of Plaintiff and the class.

70. The resources of Capital One, along with the nature and persistence of its refusals, justifies the maximum award of punitive damages.

71.     Pursuant to 15 U.S.C. § 1691e(c), Plaintiff requests, on behalf of himself and the putative class, that this Court grant equitable relief in the form of requiring Capital One to provide a specific statement of reasons for its adverse actions, including but not limited to a description of the *actual* reasons for the adverse action, including the source(s) of the information Capital One relied upon.

72.     Plaintiff requests an award of costs and a reasonable attorneys' fee pursuant to 15 U.S.C. § 1691e(d).

## COUNT TWO: BREACH OF CONTRACT

73.     When Capital One issues an applicant a credit card and the applicant then uses such card, it creates a contract between Capital One and the cardholder.

74.     The terms of use of the credit card agreement with Capital One and its cardholders provide that Capital One "may close or suspend your Account at any time and for any reason permitted by law, even if you are not in default."

75.     The terms of use of the credit card agreement with Capital One and its cardholders also provide that "[a]t any time, we may add, delete or change any term of this Agreement, unless the law prohibits us from doing so. We will give you notice of any changes as required by law. We may notify you of

changes on your Statement or in a separate notice. Our notice will tell you when and how the changes will take effect. The notice will describe any rights you have in connection with the changes."

76.     Like all provisions in a contract, these provisions include implied covenants of good faith and fair dealing.

77.     Capital One has refused to provide the specific reason for closing the account which would be necessary to determine if such reason was permitted by law.

78.     It is not permitted by law for Capital One to close an account without providing a statement of reasons, including the source of the information relied upon.

79.     In addition to the ECOA obligations as alleged in Count One, the Fair Credit Reporting Act required Capital One to provide the following information:

> (A)     the name, address, and telephone number of the consumer
> reporting agency (including a toll-free telephone number established
> by the agency if the agency compiles and maintains files on
> consumers on a nationwide basis) that furnished the report to the
> person; and
>
> (B)     a statement that the consumer reporting agency did not make

the decision to take the adverse action and is unable to provide the

consumer the specific reasons why the adverse action was taken[.]

15 U.S.C. § 1681m(a)(3).

80.    Capital One did not provide the name, address, and telephone

number of the consumer reporting agency that furnished the report, nor did it

provide any statement indicating whether or not the consumer reporting agency

took part in making the decision to take adverse action or whether it could

supply the reasons why the adverse action was taken.

81.    In addition, the Fair Credit Reporting Act also required Capital One

to provide notice of the consumer's right:

(A) to obtain, under section 1681j of this title, a free copy of a consumer

report on the consumer from the consumer reporting agency referred to in

paragraph (3), which notice shall include an indication of the 60-day

period under that section for obtaining such a copy; and

(B) to dispute, under section 1681i of this title, with a consumer reporting

agency the accuracy or completeness of any information in a consumer

report furnished by the agency.

15 U.S.C. § 1681m(a)(4).

82.    Capital One did not provide any notice of the right to obtain a free

copy of a consumer report, nor did it provide any notice of the right to dispute

the accuracy or completeness of any information furnished by the consumer reporting agency.

83.     It is not permitted by law for Capital One to close an account without providing notice of the consumer's right to a statement of reasons, including the source of the information relied upon.

84.     It is not permitted by law for Capital One to close an account without providing notice of the consumer's rights under the Fair Credit Reporting Act.

85.     Moreover, the act of closing the account was a material change to the terms of the agreement. By closing the account, Capital One revoked the primary consideration for the consumer entering into the credit transaction: the ability to access a revolving line of credit, both for use and for credit reporting purposes.

86.     While Capital One was entitled to close the account and change the terms pursuant to the agreement, it was expressly limited to do so only "as permitted by law" or "unless the law prohibits [Capital One] from doing so[.]"

87.     Capital One expressly agreed that it "will give you notice of any changes as required by law" and that "[t]he notice will describe any rights you have in connection with the changes."

88.     As detailed above, Capital One's notice did not contain the information required by ECOA or FCRA.

89.     Specifically, the notice did not describe the consumer's right to obtain the report, to dispute the completeness or accuracy of any item of information in the report, or to the specific reasons for the closing the account.

90.     Capital One refused to provide notice of the consumer's rights under ECOA and FCRA despite its express agreement that the notice would contain any rights the Plaintiff had in connection with the change.

91.     By closing accounts without providing a specific statement of reasons, including the source of the information relied upon, Capital One has breached the terms of its credit agreement including the implied covenants of good faith and fair dealing.

92.     Plaintiff requests, on behalf of himself and the putative class, actual damages the amounts of which damages may be uniformly established by expert testimony and/or common evidence. Such damages reflect the loss of use of credit, diminished credit to debt ratios, and the inability to engage in the informed use of credit.

93.     In addition or in the alternative, Plaintiff requests, on behalf of himself and the putative class, nominal damages which naturally accrue from the breach of contract.

94.     The award of damages cannot fully compensate Plaintiff and class members for Capital One's breach. Plaintiff requests, on behalf of himself and the

18

putative class, specific performance of the contract in the form of Capital One

reopening such accounts or providing the specific reasons for the adverse

actions, including the source of the information relied upon, along with every

item of information required by 15 U.S.C. § 1681m(a).

95.     Capital One has acted in bad faith in breaching the contract and

refusing to provide the specific reasons for closing the accounts, including the

source of the information relied upon, and in refusing to provide consumers with

a statement of their rights.  Accordingly, Plaintiff, on behalf of himself and the

putative class, requests an award of the expenses of litigation, including a

reasonable attorneys fees, pursuant to O.C.G.A. § 13-6-11.

### JURY TRIAL DEMAND

96.     Plaintiff hereby demands a trial by jury on all issues so triable.

### DOCUMENT PRESERVATION DEMAND

97.     Plaintiff hereby demands that the Defendant take affirmative steps

to preserve all telephone recordings, data, emails, other recordings, phone

records, letters, documents and all other tangible things that relate to the

allegations herein, Plaintiff or the putative class members, or the events

described herein, any third party associated with any  such events, account, sale

or file associated with plaintiff or the putative class members, and any account or

number or symbol relating to any of them.  These materials are very likely

relevant to the litigation of this claim.  If Defendant is aware of any third party that has possession, custody or control of any such materials, Plaintiff demands that Defendant request that such third party also take steps to preserve the materials.  This demand shall not narrow the scope of any independent document preservation duties of the Defendant.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of himself and the class he seeks to represent against Defendant, as follows:

A.    Certification of this matter to proceed as a class action;

B.    That Plaintiff and the class be awarded actual, nominal, general, treble, exemplary, and punitive damages as requested herein;

C.    The Capital One be Ordered to provide the Plaintiff and the class of the specific reasons for its adverse action, including the source of the information, or to reinstate such accounts instanter;

D.    That Plaintiff and members of the class be awarded the expenses of litigation, including a reasonable attorneys' fee.

E.    That Plaintiff and members of the class be awarded such additional relief as deemed just and proper.


Respectfully submitted,

SKAAR & FEAGLE, LLP

By:    /s/ Justin T. Holcombe
       Justin T. Holcombe
       Georgia Bar No. 552100
       jholcombe@skaarandfeagle.com
       Kris Skaar
       Georgia Bar No. 649610
       kskaar@skaarandfeagle.com
       133 Mirramont Lake Drive
       Woodstock, GA 30189
       Tel:    (770) 427-5600
       Fax:    (404) 601-1855

       James M. Feagle
       Georgia Bar No. 256916
       jfeagle@skaarandfeagle.com
       Cliff R. Dorsen
       Georgia Bar No. 149254
       cdorsen@skaarandfeagle.com
       2374 Main Street, Suite B
       Tucker, GA 30084
       Tel:    (404) 373-1970

       Alexander H. Burke, *pro hac vice*
       forthcoming
       **BURKE LAW OFFICES, LLC**
       909 Davis Street, Suite 500
       Evanston, IL 60201
       (312) 729-5288
       ABurke@BurkeLawLLC.com