**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **SALLY FRANCISCO,** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CIVIL ACTION NO. |
| | * | |
| **GEORGIA HIGHLAND MEDICAL SVCS, INC.,** | * | JURY TRIAL DEMANDED |
| | * | |
| Defendant. | * | |
| | * | |

## COMPLAINT

COMES NOW, Plaintiff Sally Francisco ("Plaintiff" or "Francisco") by and through undersigned counsel and respectfully files this timely Complaint against Defendant GEORGIA HIGHLANDS MEDICAL SERVICES, INC. ("Defendant," "GEORGIA HIGHLANDS MEDICAL" or "GHMS").

## INTRODUCTION

This is a case of illegal discrimination and retaliation in the workplace. Francisco was a high-performing  GHMS employee whom GHMS allowed to be subject to constant discrimination for being white by an existing black employee, Tamara Morris. For years, GHMS permitted this racially hostile employee to (i) harass Stewart and other white employees, and (ii) to grossly underperform in her job including willingly frustrating patient care and the workflows of her white co-

workers, all despite repeated complaints. After Plaintiff filed a complaint and notified GHMS of her EEOC filing, she was issued serious disciplinary action for false reasons. Another GHMS Co-worker filed suit sometime in 2022 for receiving the same disciplinary action as Plaintiff. Plaintiff was harassed by management and somehow blamed for the suit.  She was interrogated regarding the lawsuit and questioned by Defendant's lawyers in regard to her knowledge of the suit and whether or not she maintained contact with the previous co-worker.  Defendant's attorneys demanded she send them all paperwork she possessed regarding the lawsuit by the previous co-worker.  After the mediation in her previous co-worker's suit, the treatment became more hostile towards Plaintiff.  Plaintiff was ultimately terminated for based on fabricated allegations.

1.     Defendants discriminated against Francisco through, inter alia: (a) race discrimination under 42 U.S.C. § 1981; and (b)  and retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amendedby the Civil Rights Act of 1991.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

3.     Pursuant to 28 U.S.C. § 1391(b), venue is proper because Defendant resides and/or conduct business in the Northern District of Georgia, and the

unlawful employment practices giving rise to Plaintiff's claims occurred in the judicial district.

4.     Francisco resides in the Northern District of Georgia and is  a citizen of Georgia.

5.     GMHS is a domestic, Georgia non-profit corporation with its principal office located at 475 Tribble Gap Road, Cumming, GA, 30040-2467. GHMS is licensed to, and does, transact business in Georgia.

6.     GHMS's Bartow Family Health Center office is located at 775 West Avenue, Suite A, Cartersville, GA 30120.

7.     Plaintiff worked at GMHS's Bartow Family Health Center location.

8.     At all times relevant to Plaintiff's Complaint, GHMS was Francisco's employer, and Francisco was a GHMS employee within the meaning of Title VII.

9.     At all times material to the Complaint, GMHS had more than 15 employees within the meaning of Title VII.

## ADMINISTRATIVE PROCEEDINGS

10.     Francisco filed an EEOC Charge on or aboutDecember 21, 2022, alleging race discrimination and retaliation, and she made allegations before the EEOC which  placed GMHS on fair notice of the claims Francisco brings in this lawsuit.

11.    Francisco filed her EEOC charge within 180 days of the last act of discrimination to which she was subjected, her termination.

12.    Francisco timely filed her EEOC charge.

13.    The EEOC issued a Notice of Right to Sue dated January 11. 2023.

14.    Francisco filed her lawsuit less than 90 days after her Notice of Right to Sue issued.

15.    Francisco's Title VII claims are timely filed.

16.    Francisco has exhausted the administrative prerequisites to filing her Title VII claims.

## FACTUAL ALLEGATIONS

### General Allegations

17.    Based on information and belief, Plaintiff alleges that, at all times mentioned herein, Defendants were acting within the course, scope, purpose, consent, knowledge, ratification, and authorization of such agency, employment, joint venture, and conspiracy.

18.    Based on information and belief, Plaintiff alleges that, at all times mentioned herein, there may be unknown Defendants who were the agents, servants, and employees, co-venturers, and co-conspirators of Defendants and were, at all times herein mentioned, acting within the course, scope, purpose, consent,

knowledge, ratification, and authorization of such agency, employment, joint venture, and conspiracy.

19.     As a direct and proximate result of Defendant's violation of existing law, as herein described, Plaintiff has been compelled to retain the services of counsel and has thereby incurred, and will continue to incur, legal fees and costs.

## STATEMENT OF FACTS APPLICABLE TO ALL CLAIMS

### Defendant' Failed to Prevent and Remedy Discrimination

20.     Defendant's practices and procedures for handling complaints ofdiscrimination do not adequately ensure that complaints are investigated fairly, that prompt remedial action is taken in response to discrimination, that incidents of discrimination are thereby prevented, and that all managers and supervisors are aware of the fact that racial discrimination is taken seriously across all levels of the company.

21.     GHMS fails to provide sufficient monitoring, training, and oversight and has failed to ensure that employees are treated in a nondiscriminatory manner.

22.     Francisco is a white female.

23.     Francisco began her employment at GHMS as a Medical Assistant on October 18, 2020.  This occurred after Francisco was  asked to come back to work for Defendant which she had previously left on good terms.

24.     Francisco's job duties as a Medical Assistant included taking patients' vitals and medical history, obtaining necessary medical records, informing patients of medical test or lab results, providing standard referrals to other health care providers, answering patient questions and the nurse phone line,  and providing tests and treatments such as ear cleanings and breathing treatments

25.     Francisco regularly enjoyed high-praise, compliments, and positive feedback from coworkers, her provider, and management.

26.     Francisco's first and only disciplinary notice from GMHS was issued on September 20, 2021.  Plaintiff was forced to sign the report out of fear of losing her job and accompanying benefits.

27.     Francisco was treated unfairly and discriminated against by GHMS, its agents, and GMHS employee Tamara Morris.

28.     Tamara Morris was employed by GMHS as a Critical Care Coordinator ("CCC") at all times relevant to Plaintiff's Complaint.

29.     Tamara Morris is a black female.

30.     The duties and responsibilities of a CCC primarily function to facilitate and provide various forms of assistance and support to GMHS' Medical Assistants and Practitioners when called upon. This included but was not limited to pulling and accessing patient records for medical assistants and practitioners.

31.     At all times relevant to Plaintiff's complaint, COVID-19, a deadly and highly contagious virus, was present in Georgia at pandemic levels and classified as a public health emergency. COVID-19 created unprecedented patient volume at GMHS and made urgent the need for swift and efficient patient care from all GMHS employees and support staff.

32.     Numerous employees complained to GMHS supervisors and management about Morris's behavior as creating an intolerable work environment.

33.     Ms. Morris maintained a functioning and collaborative relationship with fellow-minority employees in the office.

34.     Ms. Morris was incessantly abrasive and intentionally non-compliant towards white medical assistants.

35.     Ms. Morris willfully impeded the workflows of white medical assistants while facilitating the workflows of other minority employees.

36.     Ms. Morris regularly and willfully ignored performing her job duties when asked by white medical assistants, including Francisco but Morris fully performed her job duties when asked the same or similar tasks by minority coworkers.

37.     Ms. Morris constantly derided the white medical assistants as needy and made constant hostile remarks under her breath when engaging with white medical assistants but showed no such hostility towards minority employees.

38.     Ms. Morris would intimidate white medical assistants from approaching by glaring at them and muttering under her breath as they walked past. Afterwards, Ms. Morris frequently returned to chatting and laughing with other minority employees. Ms. Morris would change her demeanor dramatically in the presence of GMHS management and supervisors and present herself as an amicable and a team player.

39.39.  Barbara Stewart ("Stewart") worked as  medical assistantStewart was a white female medical assistant and employee of GMHS. At all times relevant to Plaintiff complaint, Francisco and Stewart were coworkers. Stewart worked as a medical assistant to Dr. Lee Battles at the Bartow Health Center.

40.     Laurie Tynes ("LT") is/was a white female medical assistant and was an employee of GMHS at all times relevant to the Complaint.

41.     On or about June 10, 2021, Stewart asked Ms. Morris for assistance in retrieving patient records, Ms. Morris mocked Stewart and her white female boss , calling the boss Stewart's "mama" and that the pair asked for everything. Stewart responded by telling Ms. Morris that Stewart did not have the ability to access  ER records like Ms. Morris did and accessing patient records was Ms. Morris' job. Ms. Morris then turned to Michelle Brown, another white woman who works for Quest Diagnostics employee who works in the office and told Ms. Brown to "go and get your white girl."

42.     Michelle Brown is a white female.

43.     Tina Orrick was the GMHS office manager at Bartow Family Health Center at the Time of the "white girl" comment.

44.     Tina Orrick is a white female.

45.     The day following the "white girl" comment, on or about June 11, 2021, Francisco and Stewart informed Tim Preisinger that they wanted to meet with him (Tim), Ms. Orrick, and HR to discuss Ms. Morris' behavior, now colored by the racially-charged comment. In response, Tim Preisinger then informed Stewart that there was not an HR department in place at that time. Tim agreed a meeting was in order.

46.     Nothing was done and on or about June 18, 2021, Stewart emailed Tim to re-request a meeting and demanded someone with equal or greater authority to an HR representative be present.  Francisco was aware of and in agreement with this email.

47.     On or about June 21, 2021, Tina Orrick informed Stewart that Tim refused to have the CEO or COO of GMHS present at the meeting. Stewart, Francisco, and another white medical assistant then met with Tina Orrick. Ms. Orrick assured Stewart and Francisco that she would talk with Ms. Morris and "see how that goes."

48.     On or about June 23, 2021, Stewart and Francisco finally met with Tim

Preisinger as requested weeks earlier. Tim Preisinger, Tina Orrick,  Francisco, Laurie Tyne and Stewart were all present to report  Tamara's on-going behavior and the racially-charged remark. Stewart stated she wanted to report the hostile work environment caused by Tamara and that they wanted a record be made to reflect the occurrence of this meeting and its purpose. Francisco and LT then recalled the numerous complaints about Tamara's behavior by themselves and others over the years and Tamara's hostile behavior had yet to improve or be adequately addressed. Ms. Orrick responded by yelling at Francisco, Stewart and their co-workers.

49.     A short time thereafter, Tim told Francisco she had spoken with Ms. Morris and that Francisco could file a grievance if she wished.

50.     On about July 2, 2021, Stewart received a call from Kristen Lindsey ("Lindsey") who stated she was GMHS Human Resources

51.     An HR department was, in fact, in place during the time Francisco and Stewart were demanding to meet with Tim and HR in the weeks prior.

52.     Kirsten Lindsey was employed by GMHS and working remotely as Human Resources for GMHS during the dates of June 11, 2021 and June 30, 2021.

53.     Lindsey stated there was no record of reports of a hostile work environment or discrimination to Tim or management.

54.     A step-by-step procedure is not properly outlined in the GMHS employee handbook and Stewart asked Lindsey via email how to proceed with filing

a formal grievance on or about July 6, 2021. On or about July 8, 2021, Lindsey replied that she was preoccupied with payroll but would circle back.

55.     Stewart emailed Lindsey again on or about July 14, 2021 after hearing nothing back.  Francisco was aware of and in agreement with this email. Stewart wrote her email that she did not feel her complaints were being taken seriously. Francisco was also aware of this email.

56.     Stewart received no response from HR until on or about July 20, 2021 when Stewart was contacted via email by Tracie Webb ("Webb"), who introduced herself as the new HR representative for GMHS. Webb provided a document for Stewart to fill out and begin the process.

57.     Webb also advised Francisco and Stewart that she planned to conduct an investigation and interview employees pursuant to the grievance.

58.     Stewart and Francisco again asked for a layout or copy of the formal grievance procedure. None was given.

59.     Francisco and Stewart both filed a formal grievance.

60.     On or about June 23, 2021, Ms. Morris' behavior showed no change so Francisco and Stewart asked to meet privately with Tina Orrick. In the meeting, Francisco and Stewart begged Ms. Orrick to speak with Morris about her behavior and stated that she did not believe Ms. Orrick was taking her seriously and that she did not appreciate how serious the problem was.

61.     Stewart suggested Ms. Morris receive Equal Employment Opportunity training. In response, Orrick laughed and dismissed the suggestion.

62.     On or about July 29, 2021 Francisco was interviewed by Tracie Webb as part of the investigation for Francisco's complaint.

63.     During Stewart's interview, she informed Webb that she intended to file a charge with the EEOC due to the lack of progress on this issue and Tina Orrick's refusal to take Ms. Morris' conduct seriously.

64.     Ms. Orrick resigned from GMHS on or about August 2021.

65.     On or around Aug. 11, GMHS CEO Todd Shifflet informed GMHS staff that a secondary "third party" investigation was being undertaken by Southern Health Lawyers, LLC regarding the grievances.

66.     Francisco was never interviewed for or by the third-party investigation.

67.     On September 20, 2021, Tracie Webb, Tim Preisinger, and GMHS CEO, Todd Shifflet as a group met Ms. Morris, Francisco and Stewart, individually, to go over the results of the investigations into the Grievance filed by Stewart and Francisco.

68.     During this grievance investigation results meeting, Francisco and Stewart were informed they were being placed on Progressive Disciplinary Action ("PDA") (the Grievance investigation meeting hereafter, the "PDA Meeting").

69.     The PDA Letter explained GMHS's proffered reasons for placing

Francisco and Stewart on PDA, and that non-compliance with the Progressive Disciplinary Action had serious consequences including termination. The letter highlighted Francisco and Stewart would be terminated if she failed to follow the PDA's resultant 30-day plan.

70.     Stewart resigned from her employment on almost right away because of the stress caused the discrimination, hostile work environment and the obvious signs no action would be taken to protect her constitutional rights.

71.     Francisco was not in a financial situation allowing her to take the same action as Stewart so she continued to endure progressively harsher treatment, especially after Stewart filed a lawsuit to protect her constitutional rights.

72.     During the last week of February of 2022, attorneys for Defendant interrogated Francisco about Stewart's lawsuit and why she had had not told anyone about her conversations with Stewart after Stewart resigned from Defendant.

73.     Stewart participated in a mediation to which resolved her lawsuit on or about May 16, 2022.

74.     After the mediation, the treatment toward Francisco continued to get progressively worse.

75.     Francisco was terminated from her position on September 1, 2022, in retaliation for initial filing of a grievance  and her friendship with Stewart about which she had been previously interrogated by Defendant and their attorneys.

## COUNT 1

## Intentional Discrimination Violating 42 U.S.C. § 1981

76.   At all times material to Plaintiff's Complaint, Francisco and Defendant were parties to an oral contract of employment under which, *inter  alia*, Francisco worked for Defendant and Defendant compensated Francisco for her work.

77.   Francisco performed her contractual obligations by, *inter alia*, working for Defendant.

78.   Under 42 U.S.C. § 1981, it is unlawful for Defendant to discriminate against Francisco based on her race in the making or enforcement of contracts with her.

79.   42 U.S.C. § 1981's prohibition  on race discrimination in the making or enforcing of contracts applies to Francisco's employment contract with Defendant.

80.   The above-pled facts constitute race discrimination in violation of 42 U.S.C. § 1981 because Defendant discriminated against Francisco by discharging her.

81.   GMHS intentionally favored the interests of non-minority employees.

82.   Defendant's intentionally discriminatory actions caused Francisco to suffer lost compensation and other benefits of employment, emotional distress

exacerbated by her diagnosed mental conditions, inconvenience, humiliation, and other indignities.

83.    Francisco is entitled to damages, lost benefits, front pay and/or reinstatement, compensatory damages, punitive damages,attorneys' fees, and costs of litigation pursuant to 42 U.S.C. § 1988, and all other relief recoverable under 42 U.S.C. § 1981.

84.    Defendant acted with malice toward Francisco, authorizing an award of punitive damages.

85.    Additionally and in the alternative, Defendant acted with reckless disregard for Francisco's federally protected rights, authorizing an award of punitive damages.

## COUNT II

## Race Discrimination Violating Title VII

86.    Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

87.    At all times material to the Complaint, Francisco was Defendant's employee, and Defendant was Francisco's employer, within the meaning  of Title VII.

88.    Defendant violated Francisco's rights by issuing serious disciplinary notice for false reasons and threatening to terminate her. Defendant also micro-

managed Francisco's work and unfairly criticized her for no valid reasons.  Even one of the doctors commented to Francisco that it was clear to him that she was being targeted for termination.

89.    Defendant undertook the above-pled conduct, including disciplinary notice to Francisco, because of Francisco's race in violation of Title VII's anti-discrimination provisions.

90.    Defendant's conduct in terminating Francisco's employment caused her to suffer lost compensation and other benefits of employment, emotional distress exacerbated by her diagnosed physical conditions, inconvenience, humiliation, and other indignities.

91.    Defendant acted with malice toward Francisco, authorizing an award of punitive damages.

## COUNT III

## Hostile Work Environment Violating Title VII and Section 1981

92.    Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

93.    Defendant failed to maintain a tolerable work environment by failing to take effective corrective action against Tamara Morris's racially-motivated malicious non-compliance and racial discrimination, including after GMHS was

made aware that Tamara Morris was openly hostile Stewart and the other white medical assistants but not other office minorities.

94.   GMHS hired Francisco into a work environment GMHS knew or had reason to know was intolerably hostile and at odds with the implied terms and conditions of Francisco's employment in place at the time of hiring. No disclosure or warning of such an environment was made to Plaintiff upon hiring and plaintiff did not agree impliedly or expressly to work in such an environment.

95.   Tamara Morris' intimidated Francisco and other white non-supervisory co-workers through constant and discriminatory abrasiveness towards the white Medical Assistants.

96.   The discrimination and harassment that Plaintiff was subjected to in the hands of Defendant's and their agents, representatives, and employees was persistent in nature, unwelcome, extremely offensive, and humiliating.

97.   Such behavior had the effect of creating a hostile, intolerable, and intimidating work environment.

98.   Such continuing and persistent discrimination and harassment adversely affected the terms and conditions of Plaintiff's employment.

99.   Defendants' acts and failures to act were motivated by evil and intent and in reckless disregard and callous indifference to Francisco's federally protected rights.

100.   Plaintiff was discharged as a result of Defendant's failure to take effective corrective action towards the racially hostile and intolerable work environment of GMHS and complaints made by Francisco and others regarding this environment.

101.   As a direct and proximate result of the above unlawful employment practices, Francisco has suffered the indignity of discrimination, the invasion of her right to be free from discrimination, and great humiliation, which manifested in physical illness and emotional distress.

102.   Francisco's physical and mental distresses were exacerbated by medical conditions known to GMHS.

103.   GMHS's failure to control and remedy discriminatory non-compliance and intimidating behavior of the Critical Care Coordinator unfairly placed a disproportionate workload and burden upon Plaintiff that forced her to work countless hours of overtime.

104.   As a direct and proximate result of the said unlawful employment practices, Francisco suffered extreme mental anguish, outrage, severe anxiety about her future and her ability to support herself, harm to her employability and earning capacity, painful embarrassment before her coworkers, damage to her professional reputation, loss of enjoyment in the ordinary pleasures of life, and the strain of the added workload and time away from home.

## COUNT IV

### Retaliation in Violation of Title VII and Section 1981

105.   Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

106.   As herein alleged, the Defendants by and through their officers, managing agents and or its supervisors illegally retaliated against Plaintiff by placing her on Progressive Disciplinary Action and threat of termination in response to Plaintiff engaging in protected employment activities. Defendant also caused Plaintiff to be discharged in retaliation for her complaints of discrimination.

107.   On information and belief, and based thereon, Plaintiff alleges GMHS provided false reasons for placing her on PDA. The PDA claims are directly contrary to the Performance Evaluations she only recently received from her supervisor and directly contradict the constant glowing feedback she received from office management, supervisors, and colleagues.

108.   Defendant acted with malice toward Francisco, authorizing an award of punitive damages.

[page break – prayer for relief follows]

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands a TRIAL BY JURY and the following relief:

(a) Declaratory judgment that Defendant violated Plaintiff's rights under the federal statutes listed above;

(b) A permanent injunction against Defendant enjoining Defendant from further violations of the federal statutes listed above;

(c)  Full back pay from the date of Plaintiff's termination, including all raises to which Plaintiff would have been entitled but for her wrongful termination, and all fringe and pension benefits of employment, with prejudgment interest theron;

(d) Compensatory damages, in an amount to be determined by the enlightened conscience of the jury, for Plaintiff's severed emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life and special damages;

(e) Punitive damages in an amount to be determined by the enlightened conscious of the jury to be sufficient to punish Defendant for its conduct towards Plaintiff and to deter Defendant from similar conduct in the future;

(f) Reasonable attorneys' fees and costs; and

(g) Other and further relief as the Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Respectfully submitted March 31st, 2023.

s/ John F. Meyers
JMeyers Group LLC
Georgia Bar No. 503692

JMeyers Group LLC
1755 The Exchange SE, # 339
Atlanta, Georgia 30339
Phone: (404) 597-1275