**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| KAITLYN SMITH, KRYSTAL RIVERA, KIMBERLY ISAACS-HEYLIGER, and RACHEL BAILEY, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION FILE NO. _____ |
| v. | ) ) | JURY TRIAL DEMANDED |
| F & H FOOD TRADING GROUP, INC., LITTLE ALLEY STEAK, LLC, and IVANA SIJAKOVIC, | ) ) ) ) | |
| Defendants. | ) ) | COLLECTIVE ACTION COMPLAINT |
| _____ | ) ) | |

## COLLECTIVE ACTION COMPLAINT

Plaintiffs Kaitlyn Smith, Krystal Rivera, Kimberly Isaacs-Heyliger, and Rachel Bailey (collectively "Plaintiffs"), by and through counsel, file this Collective Action Complaint against Defendants F & H Food Trading Group, Inc. ("F & H"), Little Alley Steak, LLC ("Little Alley") and Ivana Sijakovic ("Sijakovic") (collectively "Defendants") relating to Defendants' employment of Plaintiffs at Little Alley Steak restaurant located at 955 Canton St, Roswell, GA 30075 (the "Restaurant").

In support of their claims, Plaintiffs assert as follows:

## **INTRODUCTION**

1.      Plaintiffs allege violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.,* for Defendants failure to pay Plaintiffs and other similarly situated employees proper wages.

2.      Plaintiff Kaitlyn Smith alleges violations of the ADA Amendments Act of 2008 ("ADAAA") for Defendants' discrimination and retaliation against Plaintiff Smith based on her medical disability.

3.      Plaintiff Krystal Rivera alleges violations of the ADAAA and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII") for Defendants' discrimination and retaliation against Plaintiff Rivera based on her sexual orientation and medical disability.

4.      Plaintiff Kimberly Isaacs-Heylinger alleges violations of the Title VII for Defendants' discrimination against Plaintiff Isaacs-Heylinger based on her race.

## **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

5.      Plaintiffs Smith, Rivera, and Isaacs-Heylinger filed timely Charges of Discrimination with the EEOC, and plan to amend this Complaint to add claims arising under ADAAA and Title VII claims upon receipt of a Notice of a Right to Sue.

**JURISDICTION AND VENUE**

6.     This court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331 and § 1343, 29 U.S.C. § 216(b), 42 U.S.C. § 12117, and 42 U.S.C. § 2000e-5(f)(3).

7.     Venue is proper in this Northern District of Georgia pursuant to 28 U.S.C. § 1391.

8.     Defendants transact business in this judicial district and the events giving rise to the claims herein occurred in this judicial district and division.

**THE PARTIES**

9.     Each Plaintiff is a resident of Georgia in this judicial district and division and worked at the Restaurant during the relevant period, three years from the date of this filing to the present.

10.     Each Plaintiff consents to be a party and opt-in Plaintiff in this lawsuit and to represent the collective class adequately. See Exhibit 1, Plaintiffs' Declarations and Consents.

11.     Defendants own and operate the Restaurant from which all Plaintiffs' claims arise.

12.     Defendant F & H is a Georgia corporation with its principal office

address on file with the Georgia Secretary of State as 2799 Lawrenceville Hwy, Suite 202, Decatur, GA 30033.

13.     Defendant F & H's registered agent for service of process is Errol Dwight Samuels, 2799 Lawrenceville Hwy, Suite 202, Decatur, GA 30033.

14.     Defendant F & H had annual gross revenue and volume of sales in excess of $500,000.00 for each year in the relevant period.

15.     Defendant Little Alley is a Georgia corporation with its principal office address on file with the Georgia Secretary of State as 2799 Lawrenceville Hwy, Suite 202, Decatur, GA 30033.

16.     Defendant Little Alley's registered agent for service of process is Errol Dwight Samuels, 2799 Lawrenceville Hwy, Suite 202, Decatur, GA 30033.

17.     Defendant Little Alley had annual gross revenue and volume of sales in excess of $500,000.00 for each year in the relevant period.

18.     At all relevant times, Defendant Ivana Sijakovic was general manager, and/or a decision maker for the Restaurant.

19.     Defendant Sijakovic can be served at 405 Chuckida Way, Woodstock, GA 30188.

20.     At all relevant times, Defendants have continuously been an employer engaged in interstate commerce and/or the production of goods for commerce,

within the meaning of the FLSA, 29 U.S.C. § 207(a).

21.   Defendants employed Plaintiffs throughout the relevant period.

## FACTUAL ALLEGATIONS

22.   Plaintiffs are current or former employees of Defendants who were employed at the Restaurant at times during the period of February 2014 through the present.

23.   Defendant F & H and Little Alley own and operate Little Alley Steak restaurant located at 955 Canton St, Roswell, GA 30075 (the "Restaurant").

**I.   DEFENDANTS' FLSA VIOLATIONS.**

**A. Defendant Sijakovic is Individually Liability for the FLSA Violations.**

24.   At all relevant times, Defendant Sijakovic was a manager, and/or decision maker for the Restaurant; had control and direction over workplace conditions, operations, personnel, and compensation including making hiring and firing decisions relating to Plaintiffs and other employees; determined Plaintiffs and other employees' wages; and approved Plaintiffs and other employees' hours and days off.

25.   At all relevant times, Defendant Sijakovic as a manager, and/or decision maker for the Restaurant, made the decision of what to pay Plaintiffs and other employees and to withhold minimum wage compensation in violation of the

5

FLSA.

26.    At all relevant times, Defendant Sijakovic exercised sufficient control over Plaintiffs and other employees to cause Defendant Sijakovic to be individually liable for the FLSA violations.

**B. Plaintiffs and other Tipped Employees' Employment with Defendants.**

27.    Plaintiffs were employed as servers and bartenders at the Restaurant.

28.    Plaintiff Kaitlyn Smith was employed at the Restaurant from approximately January 2020 through October 2022 as a server and bartender.

29.    Plaintiff Krystal Rivera was employed at the Restaurant from approximately June 2021 through present as a host and server.

30.    Plaintiff Kimberly Isaacs-Heyliger was employed at the Restaurant from approximately October 2021 through October 2022 as a server and bartender.

31.    Plaintiff Rachel Bailey was employed at the Restaurant from approximately June 2021 through November 2021 as a server.

32.    At all relevant times, Plaintiffs and other similarly situated tipped employees ("Tipped Employees") were "employees" of Defendants as that term is used in 29 U.S.C. § 203(e)(1).

33.    At all relevant times, Defendants employed, and/or continues to employ, Plaintiffs and other Tipped Employees within the meaning of the FLSA.

34.     Plaintiffs and other Tipped Employees employed by Defendants were similarly situated, with similar job duties and responsibilities, and with similar pay structures.

35.     At all relevant times, Plaintiffs and other Tipped Employees were non-exempt employees for Defendants.

### C. Defendants Denied Plaintiffs and other Tipped Employees Earned Wages for Non-Customer Service Duties.

36.     At all relevant times, Defendants paid Plaintiff and other Tipped Employees a tip credit wage (less than minimum wage) for all hours worked at the Restaurant.

37.     Federal law permits Defendants to pay employees less than the minimum wage so long as they are working a tipped occupation, and able to earn tips.

38.     Federal law prohibits Defendants from utilizing the tip credit when requiring employees to perform non-tip producing tasks that are not contemporaneous with tip-producing activities or are not for reasonable times immediately before or after performing contemporaneous tipped activities.

**A. Opening and Closing Tasks Were Non-Tip Producing and Not Contemporaneous with Tip-Producing Tasks or Customer Service.**

39.     Throughout the relevant period, Plaintiffs and other Tipped Employees were routinely assigned opening and closing duties that included non-tipped, maintenance-type, food prep, cleaning and non-customer service duties while employed by Defendants.

40.     These opening and closing duties were not contemporaneous with customer service, were substantial, and amounted to a separate, non-tipped occupation.

41.     These opening and closing duties were not contemporaneous with customer service duties.

42.     These opening and closing duties were performed both before and after customer service and for extensive periods of time that were not reasonable times immediately before or after tipped activities.

**1. Server Duties.**

43.     Plaintiffs and other Tipped Employees' opening and closing server duties extended to the entire Restaurant beyond areas where Plaintiffs and other Tipped Employees served customers.

44.     Plaintiffs and other Tipped Employees' mandatory opening and closing

server duties consumed a substantial portion of Plaintiffs and other Tipped Employees' workday, were more than "part of the time" that Plaintiffs and other Tipped Employees worked, were for times longer than a few minutes, and longer than de minimis time periods.

45.     The opening duties were not tipped duties and were required to be performed for extensive and unreasonable periods of time before serving customers and before the Restaurant opened.

46.     The closing duties were not tipped duties and were required to be performed for extensive and unreasonable periods of time after serving customers and after the Restaurant closed.

47.     For Plaintiffs and other Tipped Employees working as a server, such opening and closing duties included, but were not limited to: extensive cleaning throughout the Restaurant and in areas unrelated to server stations; brewing beverages; baking bread; garnishing salads and desserts; polishing and stocking glassware; restocking condiments; cleaning under tables and booths; cleaning and restocking server stations; sweeping floors in the Restaurant and kitchen; mopping server station floors; cleaning and restocking the drink stations; cleaning bathrooms including cleaning toilets, stalls, mirrors, countertops, restocking supplies, and emptying trash cans; cleaning table caddies, coffee makers, storage containers, trays,

drink mats, lights, ceiling vents, blinds, windows, ledges, chairs, baseboards, picture frames, and walls; running errands to various store for supplies.

48.    For Plaintiffs and other Tipped Employees working as servers, there was a clear dividing line between Plaintiffs and other Tipped Employees' customer service duties and Plaintiffs and other Tipped Employees' non-customer service, opening and closing duties, particularly because extensive non-customer service duties were required before and after the Restaurant was open, and before Plaintiffs and other Tipped Employees were assigned a customer and after Plaintiffs and other Tipped Employees' customers were served.

### 2. Bartender Duties.

49.    Plaintiffs and other Tipped Employees' opening and closing bartender duties extended to the entire Restaurant and beyond areas where Plaintiffs and other Tipped Employees served customers.

50.    Plaintiffs and other Tipped Employees' mandatory opening and closing bartender duties consumed a substantial portion of Plaintiffs and other Tipped Employees' workday, were more than "part of the time" that Plaintiffs and other Tipped Employees worked, were for times longer than a few minutes, and longer than de minimis time periods.

51.    The opening duties were not tipped duties and were required to be

performed for extensive and unreasonable periods of time before serving customers and before the Restaurant opened.

52.    The closing duties were not tipped duties and were required to be performed for extensive and unreasonable periods of time after serving customers and after the Restaurant closed.

53.    For Plaintiffs and other Tipped Employees working as a bartender, such opening and closing duties included, but were not limited to: cutting drink garnishes; restocking bar supplies and plateware; counting register drawers to record amount enclosed and ensure accuracy with financial reporting; cleaning countertops; taking to-go orders and placing orders with kitchen; packing food in to-go containers; scrubbing and washing sinks; cleaning bar cooler inside and out; washing all glasses; wiping down bar stools and front of bar; wiping down gaskets for all coolers; removing and cleaning all pour spouts; breaking down cardboard from new supplies and taking out the trash; sweeping floors in bar area.

54.    For Plaintiffs and other Tipped Employees working as bartenders, there was a clear dividing line between Plaintiffs and other Tipped Employees' customer service duties and Plaintiffs and other Tipped Employees' non-customer service, opening and closing duties, particularly because extensive non- customer service duties were required before and after the Restaurant was open, and before Plaintiffs

and other Tipped Employees were serving customers and after Plaintiffs and other Tipped Employees' customers were served.

**B. Defendants Denied Plaintiffs and other Tipped Employees Earned Wages.**

55.     Defendants maintained records of hours that Plaintiffs and other Tipped Employees worked while clocked in to Defendants' time-keeping system.

**1. Minimum wage claims for non-customer service duties.**

56.     Defendants denied Plaintiffs and other Tipped Employees minimum wage compensation for the above stated discrete and easy-to-identify periods where Plaintiffs and other Tipped Employees were performing opening and closing duties that were not contemporaneous with customer service duties and were for unreasonable time periods before and after the performance of customer service.

57.     Defendants violated the FLSA by willfully refusing to pay Plaintiffs and other Tipped Employees proper minimum wage compensation for these non-customer service duties amounting to a separate occupation.

**2. Wage claims for work performed off-the-clock.**

58.     Defendants denied Plaintiffs and other Tipped Employees minimum wage compensation for time spent working off the clock either before or after their shift.

59.     Defendants sometimes required Plaintiffs and other Tipped Employees to arrive at the Restaurant and begin working prior to the Restaurant's opening to perform non-tip related, maintenance tasks while off the clock.

60.     Defendants sometimes required Plaintiffs and other Tipped Employees to remain at the Restaurant and continue working after their scheduled shift to perform non-tip related, maintenance tasks while off the clock.

61.     Defendants sometimes required Plaintiffs and other Tipped Employees attend meetings, wine classes, liquor classes, training, and 'cleaning parties' while off the clock.

62.     Defendants violated the FLSA by willfully refusing to pay Plaintiffs and other Tipped Employees proper minimum wage compensation for time spent working off the clock.

63.     Defendant's policy and practice of not paying employees, including Plaintiffs and other Tipped Employees, minimum wage for all hours worked violated the FLSA.

64.     While Plaintiffs and other Tipped Employees' schedules varied, Plaintiffs and other Tipped Employees occasionally worked more than 40 hours per workweek.

65.     Defendants denied Plaintiffs and other Tipped Employees overtime

compensation for all hours worked over 40 hours in a workweek.

66.     Defendants violated the FLSA by willfully refusing to pay Plaintiffs and other Tipped Employees proper overtime compensation for time spent working off the clock when those off-the-clock hours exceeded 40 hours in a workweek.

67.     Defendants' policy and practice of not paying Plaintiffs and other Tipped Employees at a rate of one and one-half times the regular rate of pay for work performed in excess of 40 hours per workweek violates the FLSA.

## II.     DEFENDANTS' EEOC VIOLATIONS.

68.     Defendant Sijakovic was a supervisor to Plaintiffs and a manager for the Restaurant.

<u>**Defendants' Title VII Violations**</u>
**Racial Discrimination**

69.     Plaintiff Isaacs-Heylinger is an African-American female.

70.     Defendants subjected Plaintiff Isaacs-Heylinger to discrimination by insulting and harassing her based on her race.

71.     Defendant Sijakovic ridiculed and punished Plaintiff Isaacs-Heylinger based on her race.

72.     Defendant Sijakovic stated that she did not like Plaintiff Isaacs-Heylinger's hair or the texture and forbid Plaintiff Isaacs-Heylinger from wearing it

14

a certain the way at the Restaurant.

73.    Defendant Sijakovic yelled these racial charged comments at Plaintiff Isaacs-Heylinger during at a meeting with several other employees present.

74.    Defendant Sijakovic told Plaintiff Isaacs-Heylinger that hair looked like it had Christmas tree decorations in it. Defendant Sijakovic made these comments to insult Plaintiff Isaacs-Heylinger's Afro-textured hair.

75.    Defendant Sijakovic would purposefully sit tables of less desirable customers in Plaintiff Isaacs-Heylinger section.

76.    Defendant Sijakovic allowed and encouraged other employees at the Restaurant to call Plaintiff Isaacs-Heylinger "Harriett Tubman". Defendant Sijakovic made these comments to insult Plaintiff Isaacs-Heylinger's race.

77.    Plaintiff Isaacs-Heylinger complained to other managers at the Restaurant but no action was taken.

**Gender Discrimination**

78.    Plaintiff Rivera is a gay woman.

79.    Defendants subjected Plaintiff Rivera to discrimination by insulting and harassing her based on her gender.

80.    Once Defendant Sijakovic discovered that Plaintiff Rivera was a gay woman, Defendant Sijakovic told Plaintiff Rivera that women should not date other

women.

81.   Every time that Plaintiff Rivera worked with Defendant Sijakovic, Defendant Sijakovic would scream at her and treat her more harshly than other employees.

82.   On several occasions, Defendant Sijakovic screamed at Plaintiff Rivera in front of guests and called her stupid and other insults.

83.   Plaintiff Rivera complained to Defendant Sijakovic and asked to not be the target of humiliation and ridicule.

84.   In response to Plaintiff Rivera's complained, Defendant Sijakovic repeatedly stated that Plaintiff Rivera was "not protected" because she was gay.

85.   Plaintiff Rivera complained several times to other managers at the Restaurant but no action was taken.

### Defendants' ADA Amendments Act of 2008 Violations

86.   Defendants violated the ADA Amendments Act of 2008 ("ADAAA") by discriminating against Plaintiffs Smith and Rivera based on their medical disabilities.

### A. Plaintiff Smith

87.   Plaintiff Smith was discriminated against by Defendants and not given the appropriate accommodations for her degenerative disc disease and chronic back

pain, which substantially limited one or more major life activity.

88.     Plaintiff Smith had a record of having back pain and was regarded by Defendants as having back pain. Her back pain precluded Plaintiff Smith's ability to lift heavy objects as well as run food and dishes throughout the Restaurant.

89.     While bartending at the Restaurant, Plaintiff Smith does not have to lift as many heavy items, and it limits the fatigue and pain on her back.

90.     As accommodation for her disability, Plaintiff Smith requested to be scheduled primarily as a bartender rather than a server.

91.     Rather than grant Plaintiff Smith's reasonable accommodation, Defendant Sijakovic ridiculed and punished Plaintiff Smith for her disability.

92.     Defendants repeatedly scheduled Plaintiff Smith for primarily server shifts and not bartender shifts.

## B. __Plaintiff Rivera__

93.     Plaintiff Rivera was discriminated against by Defendants and not given the appropriate accommodations for her depression, which substantially limited one or more major life activities.

94.     Plaintiff Rivera had a record of having depression and was regarded by Defendants as having depression. Depression precluded Plaintiff Rivera's ability to cope and process with stressful environments and trauma.

95.     As accommodation for her disability, Plaintiff Rivera requested not to be screamed at and time to compose herself following a triggering event.

96.     Rather than grant Plaintiff Rivera's reasonable accommodation, Defendant Sijakovic ridiculed and punished Plaintiff Rivera for her disability.

97.     Defendant Sijakovic told Plaintiff Rivera that she was not allowed to use the restroom without Defendant Sijakovic's express permission.

98.     Defendant Sijakovic told Plaintiff Rivera: "I don't care if it's even suicide, it's not going to save you from me."

99.     Plaintiff Rivera complained several times to other managers at the Restaurant, but no action was taken.

## ADMINISTRATIVE PROCEEDINGS
### (On behalf of Plaintiffs Smith, Rivera, and Isaacs-Heylinger)

100.    Plaintiffs Smith, Rivera, and Isaacs-Heylinger each timely filed separate charges of disability, discrimination, and retaliation against Defendants with the United States Equal Employment Opportunity Commission ("EEOC").

101.    Plaintiffs Smith, Rivera, and Isaacs-Heylinger will seek to amend the Complaint and assert their Title VII claims upon receipt of Notices of Right to Sue.

## <u>COLLECTIVE ACTION ALLEGATIONS</u>

102.   Plaintiffs brings this case on their own behalf and as an "opt-in" collective action on behalf of the following class of employees (the "Collective Class") pursuant to 29 U.S.C. § 216(b):

> All persons who, during the period beginning three years prior to the filing date of this Complaint, were employed at Little Alley Steak restaurant located at 955 Canton St, Roswell, GA 30075 as a Server and/or Bartender and were improperly paid less than minimum wage, and/or not paid properly all hours worked.

103.   Plaintiffs, on behalf of themselves and Collective Class members, seeks relief on a collective basis challenging Defendants' failure to properly pay Plaintiffs and other Tipped Employees' minimum wages and improper use of the tip-credit in violation of the FLSA.

104.   The Collective Class is so numerous that joinder of all members is impracticable.  It is believed that the Collective Class includes over forty persons.

105.   Plaintiffs' claims and experiences are typical of that of the Collective Class members.

106.   Plaintiffs will fairly and adequately protect the interests of the Collective Class and has retained counsel that are experienced and competent in the fields of employment law and collective action litigation.  Plaintiffs have no interest that is contrary to or in conflict with those of the Collective Class members.

19

107.   This Collective Action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is not practical.  The cost of litigation compared to the anticipated damages make it more efficient to adjudicate this matter as a Collective Action.

108.   Common questions of law and fact predominate in this action, including but not limited to:

   a.  Identification of all persons in the Collective Class; and

   b.  Whether Defendants improperly calculated and paid Plaintiff's and other Tipped Employees' wages in violation of the FLSA.

109.   Plaintiffs have given their written consent to become a party Plaintiff in this collective action under the FLSA. Plaintiffs' written consents are attached hereto as "Exhibit 1."

<u>**COUNT I**</u>
**FAIR LABOR STANDARDS ACT VIOLATIONS**
**UNPAID WAGES**

110.   Plaintiffs realleges and incorporates by reference the preceding paragraphs of the Complaint as if they were set forth fully herein.

111.   At all relevant times, Defendants were engaged in interstate commerce and/or the production of services for commerce, within the meaning of the FLSA, 29 U.S.C. § 207(a).

20

112.   At all relevant times, Defendants employed Plaintiffs within the meaning of the FLSA, 29 U.S.C. §§ 201 et seq.

113.   At all relevant times, Defendants were an enterprise (as that term is defined in the FLSA, 29 U.S.C. § 203(r) and (s)(1)) with multiple employees (including Plaintiff) who were engaged in commerce or in handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

114.   The Restaurant had annual gross revenue and volume of sales in excess of $500,000.00 for each year in the relevant period.

115.   At all relevant times, Defendants improperly took a tip credit against Plaintiffs and other Tipped Employees' wages for time spent working in a non-tipped occupation.

116.   At all relevant times, Defendants had a policy and practice of failing to pay Plaintiffs and other Tipped Employees for all hours worked, including overtime hours, in violation of the FLSA.

117.   The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of the statute, 29 U.S.C. § 255(a).

118.   Plaintiffs and other Tipped Employees suffered damages due to Defendants' willful misconduct.

21

119.   Due to Defendants' FLSA violations, Plaintiffs and other Tipped Employees were damaged and is entitled to recover from Defendants compensation for unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees, costs, and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

**WHEREFORE**, Plaintiff demands a trial by jury and requests that this Court grant the following relief against Defendants:

A.   Designation of this action as a collective action on behalf of the Plaintiff and Collective Class members;

B.   Prompt issuance of notice to all Collective Class members, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Opt-In, and appointing Plaintiff and her counsel to represent the Collective Class members;

C.   Award of all unpaid wages, including but not limited to, all unpaid minimum wage compensation and improperly withheld tips, due under the FLSA to Plaintiff and the Collective Class members;

D.   Award of liquidated damages to the Plaintiff and Collective Class members;

E.      Award of costs and expenses of this action together with reasonable

attorneys' and expert fees; and

F.      Such other relief as this Court deems just and proper.


Respectfully submitted this March 31, 2023.

HALL & LAMPROS, LLP

*/s/ Gordon Van Remmenc*
Christopher B Hall
Georgia Bar No. 318380
Gordon Van Remmen
Georgia Bar No. 215512


300 Galleria Parkway,
Suite 300
Atlanta, GA 30339
(404) 876-8100 telephone
(404) 876-3477 facsimile
chall@hallandlampros.com
gordon@hallandlampros.com

*Attorneys for Plaintiffs*


Plaintiffs' counsel certifies that this complaint is in 14-point Times New Roman font.