IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| SERGIO LARA, | : | |
| | : | Civil Action File No. |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| MIDSOUTH STEEL, INC., and | : | |
| MIDSOUTH STEEL, LLC, | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT

Plaintiff Sergio Lara (hereinafter "Lara") brings this Complaint against Defendant Midsouth Steel, Inc. (hereinafter "MSI") and Midsouth Steel, LLC (hereinafter "MSL") (collectively "Defendants") and shows this Court as follows:

## INTRODUCTION

1.

This is a wage and hour case.

2.

MSI is in the business of providing ornamental and structural steel products for residential and commercial applications. MSL provides payroll services for MSI. Lara worked for MSI as a welding helper and then as a welder from on or about September 2016 through February 1, 2022. During this time, Defendants misclassified Lara as an independent contractor and failed to pay him at one and one-half times his regular hourly rate (hereinafter "the FLSA overtime premium")

1

for work performed in excess of forty hours in a work week (hereinafter "overtime work").

### (a) Jurisdiction and Venue

3.

This Court has subject matter jurisdiction over the present action under Article III, § 2 of the United States Constitution, FLSA §16(b), 29 U.S.C. § 216(b) and 28 U. S.C § 1331, because this case arises under the FLSA, a federal statute that affects interstate commerce.

4.

Venue properly lies in the Northern District of Georgia under 28 U.S.C. § 1391 because Defendants are located within this judicial district and a substantial portion of the events giving rise to the claims herein arose in this judicial district.

### (b) The Parties

5.

Lara is a natural person who resides in Gwinnett County, Georgia.

6.

MSI is a domestic for-profit corporation organized under the laws of the State of Georgia.

7.

MSI is subject to the personal jurisdiction of this Court.

8.

MSI maintains a principal office address within this judicial district at 4301 Roosevelt Highway, Atlanta, Georgia 30349.

9.

MSI may be served with process through its registered agent Jerome Adams, 116 West Bryan Street, Douglas, Georgia 31533.

10.

MSL is a foreign Limited Liability Company organized under the laws of the State of Delaware.

11.

MSL is subject to the personal jurisdiction of this Court.

12.

MSL maintains a principal office address within this judicial district at 4301 Roosevelt Highway, Atlanta, Georgia 30349.

13.

MSL may be served with process through its registered agent Jerome Adams, 116 West Bryan Street, Douglas, Georgia 31533.

**(c) Joint Employer Allegations**

14.

Throughout the Relevant Time Period (*i.e.* the three years immediately preceding the initiation of this action), MSI and MSL shared the services of Lara.

15.

Throughout the Relevant Time Period, MSI and MSL acted directly or indirectly in the interest of each other with respect to Lara.

16.

Throughout the Relevant Time Period, Lara was under the direct control of MSI and MSL.

17.

Throughout the Relevant Time Period, MSI and MSL exercised joint control over Lara.

18.

Throughout the Relevant Time Period, managers and/or supervisors of MSI and MSL supervised and/or inspected the work performed by Lara.

19.

Throughout the Relevant Time Period, Lara performed services for MSI and MSL.

20.

Throughout the Relevant Time Period, MSI and MSL utilized the same principal office address.

21.

Throughout the Relevant Time Period, MSI and MSL utilized the same CEO.

22.

Throughout the Relevant Time Period, MSI and MSL were a joint employer of Lara within the meaning of the FLSA.

4

23.

Throughout the Relevant Time Period, MSI and MSL comprised a single "enterprise engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

24.

Throughout the Relevant Time Period, MSI and MSL were related enterprises.

25.

Throughout the Relevant Time Period, MSI and MSL operated under a unified operation or common control.

26.

Throughout the Relevant Time Period, MSI and MSL performed a common business purpose.

27.

Throughout the Relevant Time Period, MSI and MSL jointly provided ornamental and structural steel products for residential and commercial applications.

**(d) Enterprise Coverage:**

28.

In the three years immediately preceding the initiation of this action, MSI was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

29.

Throughout 2020, MSI had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

30.

Throughout 2021, MSI had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

31.

Throughout 2022, MSI had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

32.

Throughout the Relevant Time Period, Lara and other MSI employees handled goods which moved in interstate commerce in the furtherance of the MSI's commercial purposes, including steel, fencing, welding machines, cutting torches, angle grinders, plasma cutters, gloves, and helmets.

33.

Throughout 2020, MSI had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" within the meaning of 29 U.S.C. § 203(s)(1)(A).

34.

Throughout 2021, MSI had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" within the meaning of 29 U.S.C. § 203(s)(1)(A).

35.

Throughout 2022, MSI had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" within the meaning of 29 U.S.C. § 203(s)(1)(A).

36.

Throughout 2020, MSI had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

37.

Throughout 2021, MSI had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

38.

Throughout 2022, MSI had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

39.

Throughout the Relevant Time Period, MSI was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of FLSA § 3(s)(1), 29 U.S.C. § 203(s)(1).

40.

In the three years immediately preceding the initiation of this action (hereinafter, "the Relevant Time Period"), MSL was an "enterprise engaged in commerce or in

the production of goods for commerce" within the meaning of the FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

41.

Throughout 2020, MSL had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

42.

Throughout 2021, MSL had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

43.

Throughout 2022, MSL had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

44.

Throughout the Relevant Time Period, Lara and other MSL employees handled goods which moved in interstate commerce in the furtherance of the MSL's commercial purposes, including steel, fencing, welding machines, cutting torches, angle grinders, plasma cutters, gloves, and helmets.

45.

Throughout 2020, MSL had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" within the meaning of 29 U.S.C. § 203(s)(1)(A).

46.

Throughout 2021, MSL had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" within the meaning of 29 U.S.C. § 203(s)(1)(A).

47.

Throughout 2022, MSL had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" within the meaning of 29 U.S.C. § 203(s)(1)(A).

48.

Throughout 2020, MSL had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

49.

Throughout 2021, MSL had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

50.

Throughout 2022, MSL had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

51.

Throughout the Relevant Time Period, MSL was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of FLSA § 3(s)(1), 29 U.S.C. § 203(s)(1).

52.

Throughout 2020, MSI and MSL jointly had two or more "employees engaged in commerce" within the meaning of defined by 29 U.S.C. § 203(s)(1)(A).

53.

Throughout 2021, MSI and MSL jointly had two or more "employees engaged in commerce" within the meaning of defined by 29 U.S.C. § 203(s)(1)(A).

54.

Throughout 2022, MSI and MSL jointly had two or more "employees engaged in commerce" within the meaning of defined by 29 U.S.C. § 203(s)(1)(A).

55.

Throughout 2020, MSI and MSL jointly had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" within the meaning of 29 U.S.C. § 203(s)(1)(A).

56.

Throughout 2021, MSI and MSL jointly had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" within the meaning of 29 U.S.C. § 203(s)(1)(A).

57.

Throughout 2022, MSI and MSL jointly had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" within the meaning of 29 U.S.C. § 203(s)(1)(A).

58.

In 2020, MSI and MSL jointly had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

59.

In 2021, MSI and MSL jointly had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

60.

In 2022, MSI and MSL are jointly projected to have an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

61.

Throughout the Relevant Time Period, MSI and MSL have been an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of FLSA, § 6(a), 29 U.S.C. § 206 (a) and FLSA, § 7(a)(1), 29 U.S.C. § 207.

**(e) Misclassification as an Independent Contractor**

62.

Lara worked for Defendants as a welding helper and then as a welder continuously from on or about September 2016 through February 1, 2022.

63.

Throughout the Relevant Time Period, Defendants classified Lara as an independent contractor.

64.

Throughout the Relevant Time Period, MSL annually prepared and submitted to the IRS an IRS Form 1099 on which it showed all money it paid to Lara during the previous calendar year.

65.

Throughout the Relevant Time Period, Defendants failed to prepare and submit to the IRS an IRS Form W2 showing all money it paid to Lara during the previous calendar year.

66.

 Throughout the Relevant Time Period, Lara was economically dependent on Defendants for his livelihood.

67.

Throughout the Relevant Time Period, Defendants exercised control over the time in which Lara worked.

68.

Throughout the Relevant Time Period, Defendants exercised control over the manner in which Lara worked.

69.

Throughout the Relevant Time Period, Defendants exercised control over the methods Lara employed while working.

70.

Throughout the Relevant Time Period, Lara worked for Defendants on a continuous and full-time basis.

71.

Throughout the Relevant Time Period, Defendants treated Lara as an employee in all respects except payment of the FLSA overtime premium and benefits.

72.

Throughout the Relevant Time Period, Defendants treated persons other than Lara who worked for it as welders as employees.

73.

Throughout the Relevant Time Period, Lara did not solicit customers on his own behalf.

74.

Throughout the Relevant Time Period, all of Lara's work efforts were directed at serving the customers, employees and agents of Defendants.

75.

Throughout the Relevant Time Period, Defendants provided Lara with all materials and equipment necessary to perform work as a welding helper and welder, including, but not limited to, steel, welding machines, cutting torches, angle grinders, soldering irons, and plasma cutters.

76.

Throughout the Relevant Time Period, Lara did not advertise on his own behalf in connection with the type of services he performed for Defendants.

77.

Throughout the Relevant Time Period, Lara made no significant investments into his work for Defendants such that he shared any significant risk of loss.

78.

Throughout the Relevant Time Period, Defendants bore all costs associated with advertising, marketing, and promoting the business of Defendants.

79.

Throughout the Relevant Time Period, Lara exercised no independent business judgment in connection with his work for Defendants.

80.

Throughout the Relevant Time Period, Defendants did not permit Lara to subcontract out his work or hire employees to perform his job duties.

81.

Throughout the Relevant Time Period, Defendants negotiated contracts for the customers that Lara served without his notice, input or direction.

82.

Throughout the Relevant Time Period. Lara's opportunity for profit or loss did not depend on Lara's managerial skill.

83.

Throughout the Relevant Time Period, the work that Lara performed for Defendants did not require a skill requiring training and certification from an entity other than Defendants.

84.

Throughout the Relevant Time Period, Defendants provided Lara with on the job training to acquire the skills to perform work as a welding helper and as a welder.

85.

Throughout the Relevant Time Period, Lara worked for Defendants on a consistent and full-time basis.

86.

Throughout the Relevant Time Period, Defendants provided Lara with job assignments and locations.

87.

Throughout the Relevant Time Period, Defendants sole business was providing welding and fabrication services to its residential and business customers.

88.

Throughout the Relevant Time Period, the work performed by Lara was an integral part of Defendants' business.

89.

Throughout the Relevant Time Period, Defendants misclassified Lara as an independent contractor.

90.

Throughout the Relevant Time Period, Lara was an "employee" of MSI within the meaning of FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

91.

Throughout the Relevant Time Period, MSI was an "employer" of Lara within the meaning of FLSA § 3(d), 29 U.S.C. §203(d).

92.

Throughout the Relevant Time Period, Lara was an "employee" of MSL within the meaning of FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

93.

Throughout the Relevant Time Period, MSL was an "employer" of Lara within the meaning of FLSA § 3(d), 29 U.S.C. §203(d).

**(f) Lack of Exemption**

94.

Throughout the Relevant Time Period, Lara was not exempt from the FLSA's Maximum Hours requirements pursuant to any exemption set forth in the FLSA.

95.

Throughout the Relevant Time Period, Defendants did not employ Lara in a bona fide professional capacity within the meaning of 29 USC § 213 (a)(1).

96.

Throughout the Relevant Time Period, Defendants did not employ Lara in a bona fide administrative capacity within the meaning of 29 USC § 213 (a)(1).

97.

Throughout the Relevant Time Period, Defendants did not employ Lara in a bona fide executive capacity within the meaning of 29 USC § 213 (a)(1).

98.

Throughout the Relevant Time Period, Defendants did not compensate Lara on genuinely salaried basis.

99.

Throughout the Relevant Time Period, Defendants did not employ Lara in the capacity of an "outside salesman" so as to be exempt from the minimum and maximum hour requirements of 29 USC § 213 (a)(1).

**(g) Additional Factual Allegations**

100.

Throughout the Relevant Time Period, Defendants compensated Lara on an hourly basis.

101.

Throughout the Relevant Time Period, Defendants compensated Lara on no basis other than an hourly basis.

102.

At all times relevant from approximately March 2020 through early 2021, Defendants compensated Lara at a regular hourly rate of $18.00.

103.

At all times relevant from approximately early 2021 through February 1, 2022, Defendants compensated Lara at a regular hourly rate of $19.00.

104.

Throughout the Relevant Time Period, Defendants compensated Lara at his regular hourly rate for every hour that he worked.

105.

Throughout the Relevant Time Period, Defendants compensated Lara at his regular hourly rate for his overtime work.

106.

Throughout the Relevant Time Period, Defendants scheduled Lara to work 12 hours during each work shift.

107.

Throughout the Relevant Time Period, Lara frequently worked in excess of 12 hours during each a work shift.

108.

Throughout the Relevant Time Period, Lara performed overtime work.

109.

Throughout the Relevant Time Period, Lara performed work in excess of 40 hours during most, if not all, work weeks.

110.

Throughout the Relevant Time Period, Lara often worked 40-50 overtime hours during each work week.

111.

Throughout the Relevant Time Period, Defendants were aware of the actual number of hours Lara worked during each work week.

112.

Throughout the Relevant Time Period, Defendants paid Lara at his regular hourly rate for each hour he worked (*i.e.*, at "straight pay"), including all overtime work.

113.

Throughout the Relevant Time Period, Defendants knew or should have known that the FLSA applied to Lara.

114.

Throughout the Relevant Time Period, Defendants knew or should have known that Lara was entitled to FLSA overtime protections.

115.

FLSA Section 7, 29 U.S.C. § 207, requires that Defendants compensate Lara at the FLSA overtime premium for overtime work.

116.

Throughout the Relevant Time Period, Defendants knew or should have known that the Section 7 of the FLSA requires that it pay Lara the FLSA overtime premium for overtime work.

117.

Throughout the Relevant Time Period, Defendants failed to compensate Lara at the FLSA overtime premium for overtime work.

118.

Throughout the Relevant Time Period, Defendants knew or should have known that the Section 7 of the FLSA requires that Defendants compensate Lara at the FLSA overtime premium for overtime work.

119.

Throughout the Relevant Time Period, Defendants failed to pay Lara at the FLSA overtime premium for overtime work.

120.

Throughout the Relevant Time Period, Defendants willfully failed to pay Lara at the FLSA overtime premium for overtime work.

121.

Upon information and belief, Defendants have not relied on any letter ruling from the Department of Labor indicating that Lara was not entitled to overtime wages.

122.

Upon information and belief, Defendants has not relied on advice from an attorney indicating that Lara was not entitled to overtime wages.

## COUNT I - FAILURE TO PAY OVERTIME

### 123.

The allegations in paragraphs 1-122 above are incorporated herein by reference as if fully set forth verbatim.

### 124.

Throughout the Relevant Time Period, Lara was an employee of Defendants who was covered by the FLSA and entitled to the FLSA Maximum Hours requirements as set forth in FLSA § 7(a), 29 U.S.C. § 207(a).

### 125.

Throughout the Relevant Time Period, Lara regularly performed overtime work for Defendants.

### 126.

Throughout the Relevant Time Period, Defendants failed to pay Lara at the FLSA overtime premium for his overtime work.

### 127.

Throughout the Relevant Time Period, Defendants willfully failed to pay Lara at the FLSA overtime premium for his overtime work.

### 128.

As a result of the underpayment of overtime compensation as alleged above, Lara is entitled to payment of due but unpaid overtime in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

129.

As a result of the underpayment of overtime compensation as alleged above, Lara is entitled to liquidated damages in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

130.

As a result of the underpayment of overtime compensation as alleged above, Lara is entitled to his litigation costs, including his costs of litigation including his reasonable attorneys' fees in accordance with FLSA § 16(b); 29 U.S.C. § 216(b).

WHEREFORE, Lara respectfully prays:

(a) That this Court award him an amount as determined at trial against MSI and MSL, jointly and severally equivalent to all due but unpaid overtime compensation accrued within the Relevant Time Period;

(b) That this Court award him an additional like amount in liquidated damages against MSI and MSL, jointly and severally;

(c) That this Court award him his costs of litigation, including his reasonable attorneys' fees against MSI and MSL, jointly and severally;

(d) That this Court award him nominal damages against MSI and MSL, jointly and severally; and

(e) For such other and further relief as this Court deems just and proper.

Respectfully submitted,

DELONG CALDWELL BRIDGERS
FITZPATRICK & BENJAMIN, LLC

/S/ KEVIN D. FITZPATRICK, JR.
101 MARIETTA STREET                 KEVIN D. FITZPATRICK. JR.
SUITE 2650                          GA. BAR NO. 262375
ATLANTA, GEORGIA 30303              /S/CHARLES R. BRIDGERS
(404) 979-3150                      CHARLES R. BRIDGERS
(404) 979-3170 (f)                  GA. BAR NO. 080791
kevin.fitzpatrick@dcbflegal.com
charlesbridgers@dcbflegal.com       COUNSEL FOR PLAINTIFF