IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| LAUREN LAW, ) | |
| ) | |
| PLAINTIFF, ) | CIVIL ACTION FILE NO. |
| ) | |
| v. ) | |
| ) | |
| 1120 JSC GROUP, LLC, D/B/A ) | |
| FRIED TOMATO BUFFET ) | |
| ) | JURY TRIAL DEMANDED |
| DEFENDANT. ) | |
| ) | |
| ) | |

## COMPLAINT

Lauren Law ("Ms. Law" or "Plaintiff") files this Complaint against Defendant 1120 JSC Group, LLC, d/b/a FRIED TOMATO BUFFET ("FTB" or "Defendant"). Plaintiff respectfully shows this Court as follows:

### INTRODUCTION

1. This action is for sexual harassment and retaliation arising under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §2000e, *et seq*. ("Title VII"), and related state-law claims. Plaintiff seeks declaratory and injunctive relief, back pay, front pay, compensatory damages, punitive damages and attorney's fees and costs. Plaintiff further invokes pendant jurisdiction of this Court pursuant to 28

1

U.S.C. § 1367 to hear and decide claims arising under the laws of the State of Georgia for assault, battery, negligent supervision, and negligent retention.

## JURISDICTION AND VENUE

2. Ms. Law's Title VII claims present federal questions over which the Court has jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. §2000e-5(f)(3).

3. This Court has pendant jurisdiction over Ms. Law's claims arising under the laws of the State of Georgia pursuant to 28 U.S.C. § 1367.

4. This Court is an appropriate venue for all of Ms. Law's claims under 28 U.S.C. § 1391(b) and 42 U.S.C. §2000e-5(f)(3) because all the parties reside within the Northern District of Georgia and a substantial majority of events giving rise to Ms. Law's claims occurred in this judicial district.

## ADMINISTRATIVE PROCEEDINGS

5. Ms. Law filed a timely charge of sexual harassment and retaliation with the Equal Employment Opportunity Commission ("EEOC"). A true and accurate copy of the Charge is attached hereto as Exhibit "1" and is incorporated herein.

6. Ms. Law also filed an Amended Charge with the EEOC. A true and accurate copy of the Amended Charge is attached hereto as Exhibit "2" and is incorporated herein.

7. Ms. Law received a notice of right to sue from the EEOC within ninety (90) days of filing this Complaint and has complied with all other conditions precedent to the institution of this lawsuit. A true and accurate copy of the Notice of Right to Sue is attached hereto as Exhibit "3" and is incorporated herein.

## PARTIES

8. Ms. Law is a citizen of the United States.

9. Ms. Law is a resident of the State of Georgia.

4. FTB is a company licensed to do business in Georgia.

5. FTB transacts business in the Northern District of Georgia.

6. FTB is subject to this Court's jurisdiction.

7. FTB may be served with process through its registered agent for service of process.

## STATEMENT OF FACTS

8. Ms. Law is female.

9. Ms. Law was an employee of FTB at all times material to this Complaint.

10. Ms. Law is a member of a protected class under Title VII.

11. FTB is subject to the anti-discrimination and anti-retaliation provisions of Title VII.

12. FTB employed 15+ employees for each working day in each of twenty or more calendar weeks from 2020 throughout 2021.

13. Plaintiff began employment with FTB on or about May 24, 2021.

14. The lead server at FTB was a woman named Kimberly Oakley.

15. Plaintiff worked 4 days a week at FTB.

16. Ms. Oakley began to sexually harass the Plaintiff.

17. Ms. Oakley would call Plaintiff "her girlfriend" and use terms like "whore" and "slut" in reference to Plaintiff.

18. Ms. Oakley would talk about her sex life with Plaintiff.

19. Ms. Oakley was also very touchy and commonly gave Plaintiff hugs, and she touched her in ways that made the Plaintiff uncomfortable.

20. Ms. Oakley would take pictures of Plaintiff while she was serving tables.

21. Ms. Oakley repeatedly asked Plaintiff to go out with her to clubs and bars, but Plaintiff always refused these requests.

22. A coworker told Plaintiff that Ms. Oakley was bisexual.

23. Plaintiff became increasingly uncomfortable around Ms. Oakley, as it appeared to Plaintiff that Ms. Oakley was pursuing a relationship with her.

24. Further, JC Hong, the owner, also engaged in flirty behaviors, which made Plaintiff uncomfortable.

25. Ms. Oakley's comments and the flirty comments from Mr. Hong were directed at Plaintiff due to her gender.

26. The sexual harassment experienced by Plaintiff had the effect of unreasonably interfering with Plaintiff's work performance by creating an intimidating, hostile, and offensive working environment that affected Plaintiff's psychological well-being.

27. Specifically, Ms. Oakley's comments to Plaintiff were both pervasive and severe such that they were enough to create a work environment that a reasonable person would consider intimidating, hostile, or abusive.

28. On or around October 13, 2021, Plaintiff told Ms. Oakley that she was not interested in a relationship with Ms. Oakley, and that her behavior was making her uncomfortable.

29. Plaintiff's statements in this encounter with Ms. Oakley constitute a complaint of sexual harassment under Title VII.

30. After Plaintiff made it clear that she was not interested in a relationship with her, Ms. Oakley began to retaliate against Plaintiff.

31. For example, Ms. Oakley began to get Plaintiff in trouble for minor things that other people were not written up for and for things that Plaintiff had not gotten in trouble for before she rejected Ms. Oakley's sexual advances.

32. For example, Plaintiff began to be written up for not having her hair in a bun, as opposed to a ponytail.

33. On or about November 4th, 2021, Plaintiff made a second complaint of sexual harassment to the Restaurant manager, Don Seo. (See (Exhibit 4")

34. Plaintiff's communication to Mr. Seo constitutes a protected activity pursuant to Title VII.

35. After Plaintiff's written sexual harassment complaint, Plaintiff had two meetings with Mr. Hong.

36. During the meetings, Plaintiff explained how she felt sexually harassed by Ms. Oakley, and how she was retaliated against after she rejected Ms. Oakley's advances.

37. Plaintiff's first meeting was approximately November 5, 2021.

38. On November 10, 2021, Mr. Hong called Plaintiff away from her work and into a second meeting.

39. During this second meeting, Mr. Hong took notes of his communication with Plaintiff, and he memorialized her complaint of sexual harassment. See "Exhibit 5'"

40. During the meetings with Mr. Hong, Plaintiff explained to Mr. Hong how Ms. Oakley was requiring her to wear her hair in a bun instead of a ponytail like all the other female employees.

41. Plaintiff provided FTB with pictures of multiple servers who wore their hair in a ponytail like Plaintiff.

42. Plaintiff's complaint of sexual harassment seemed to frustrate Mr. Hong.

43. Two days later, November 12, 2021, Plaintiff was written up for the first time by Mr. Hong because she didn't complete her side work on November 10, 2021 when Mr. Hong called Plaintiff into a meeting with him. (See "Exhibit 6")

44. Plaintiff attempted to explain in the employee comments section of the write up that the reason that she didn't complete the side work was because Mr. Hong called her into a meeting with him, and when the meeting ended other servers had completed the side work. (See "Exhibit 6").

45. The comment by Plaintiff in response to her write up constitutes a complaint of harassment protected by Title VII.

46. This complaint of retaliation by Plaintiff in the employee comment section again upset Mr. Hong.

47. FTB also retaliated against Plaintiff by changing her schedule, assigning her less desirable tables, yelling at her, and attempting to humiliate Plaintiff in front of her coworkers, and reducing her schedule from 4 days a week to 3 days a week. Each of these retaliatory actions constitutes an adverse action as defined by Title VII.

48. On January 07, 2022, Plaintiff was at work and Mr. Hong, called Plaintiff into yet another meeting with him.

49. During this meeting, Mr. Hong wrote Plaintiff up for a second time for talking on her cell phone while she was rolling silverware before the restaurant opened back on December 26, 2021. (See "Exhibit G")

50. When this meeting began, Mr. Hong presented Plaintiff with a write up. (See "Exhibit G")

51. Again, in the employee comments section, Plaintiff complained that this write up was in retaliation for her complaints of sexual harassment against Ms. Oakley.

52. Again, Plaintiff's complaint of retaliation upset Mr. Hong.

53. As a result of Plaintiff's complaint of retaliation, Mr. Hong took the write up back that he had just made Plaintiff sign, and. he changed the wording on the write up. (See "Exhibit 7")

54. Specifically, Mr. Hong added verbiage and he changed the write up to a be a "FINAL WARNING" and a two-week suspension without pay instead of a "second warning" without any suspension as it had been initially drafted.

55. This second write up, the change to a final warning, and the suspension from work without pay all constitute adverse actions.

56. During the January 7, 2022, meeting, Mr. Hong told Plaintiff she needed to grow up and take his criticisms seriously or she would be fired.

57. Later that same day, January 7, 2022, Plaintiff filed her first EEOC Charge.

58. Approximately, two weeks later, Plaintiff got a text from Mr. Hong saying that he wanted to meet with Plaintiff.

59. Plaintiff went to the meeting with Mr. Hong.

60. During this meeting, Mr. Hong asked Plaintiff, "How it was being off for two weeks?"

61. Mr. Hong asked Plaintiff what lesson she learned.

62. Plaintiff told him that she felt like the reason she had been suspended was because of her complaint of sexual harassment, and complaints of retaliation.

63. Plaintiff's response upset Mr. Hong.

64. Mr. Hong kept saying that Plaintiff was not learning her lesson and not taking her job seriously.

65. Plaintiff tried to explain herself, but Mr. Hong got upset and fired Plaintiff.

66. Plaintiff was fired from FTB because she refused to withdraw her complaints of sexual harassment and retaliation.

67. Plaintiff was terminated by the Defendant on or about January 19, 2022.

68. Later that same day, Plaintiff filed an amended charge of sexual harassment and retaliation with the EEOC.

## COUNT I
## Sexual Harassment in Violation of Title VII

69. Plaintiff incorporates by reference the preceding Paragraphs as if fully restated herein.

70. As a woman, Plaintiff is a member of a protected group.

71. As detailed above, throughout her employment with FTB, Plaintiff was subjected to sexual harassment and a hostile work environment by FTB's employees and management.

72. All the above conduct by Defendant's employees and management was unwelcome, offensive, and intimidating to Plaintiff, and open and obvious in the workplace.

73. Ms. Oakley implicitly conditioned Plaintiff's continued employment on allowing certain sexual comments etc.

74. When Plaintiff rejected Ms. Oakley's sexual advances she was punished as detailed above.

75. Plaintiff complained that the sexually harassing conduct was unwelcome.

76. At all times relevant to this action, Defendant knew or should have known of the sexual harassment endured by Plaintiff as well as the existence of a sexually harassing work environment, and they failed to meaningfully remedy the workplace environment to protect Plaintiff.

77. Defendant willfully and wantonly disregarded Plaintiff's rights. Additionally, Defendant's discrimination and retaliation against Plaintiff was undertaken in bad faith and constitute unlawful, intentional gender discrimination in violation of Title VII.

78. As a result of Defendant's unlawful actions, Plaintiff has suffered emotional distress, inconvenience, loss of income and benefits (past and future), humiliation, and other indignities. Plaintiff seeks all damages available.

79. Plaintiff seeks all remedies available by law or equity.

## COUNT II
## Retaliation in Violation of Title VII

80. Plaintiff incorporates by reference the preceding paragraphs as if fully restated herein.

81. Plaintiff engaged in protected activities protected under Title VII by making complaints of sexual harassment.

82. As a result of her complaints of sexual harassment, Plaintiff suffered adverse employment actions including but not limited to unfounded writeups, changing her schedule, assigning her fewer desirable tables, yelling at her, and attempting to humiliate Plaintiff in front of her coworkers, and ultimately terminating her employment.

83. As a direct and proximate result of Defendant's unlawful discriminatory and retaliatory actions, Plaintiff has suffered lost wages and other benefits of employment, significantly diminished employment opportunities, inconvenience, loss of income, and emotional distress, including but not limited to outrage, shock, and humiliation because she exercised her rights under Title VII.

84. Defendant willfully and wantonly disregarded Plaintiff's rights, and Defendant's discrimination and retaliation against Plaintiff was undertaken in bad faith.

85. As a result, Plaintiff is entitled to both equitable and monetary relief in all forms provided by law.

86. Plaintiff seeks all remedies available to her by law or equity.

### COUNT III
### Assault

37. Plaintiff hereby incorporates each and every preceding paragraph as if set forth fully herein.

38. Plaintiff's co-worker's behavior constitutes civil assault.

39. Defendant knew that Plaintiff was likely to be subjected to sexually harassing comments and/or fear of touching due to the open and obvious nature of Defendant's employees conduct in the workplace.

40. Defendant failed to take prompt and appropriate remedial steps to protect Plaintiff from sexual harassment and assault and battery.

41. Because of Defendant's negligent supervision and retention, Defendant ratified the co-worker's behavior.

42. Plaintiff suffered damages in the form of lost wages and benefits, significantly diminished employment opportunities, and emotional distress.

## COUNTS IV AND V
### Negligent Retention and Negligent Supervision

43. Plaintiff hereby incorporates each and every preceding paragraph as if set forth fully herein.

44. At all times material to this Complaint, Defendant owed a legal duty of care toward their employees to exercise reasonable care and prudence in the hiring, supervision, and retention of its employees.

45. By and through the conduct, actions, and malfeasance cited above, Defendant breached the above-described legal duties of care that it owed to Plaintiff.

46. Defendant knew that Plaintiff was being subjected to sexually harassing comments and conduct because of Plaintiff's repeated complaints of sexual harassment and the open and obvious nature of Defendant's employees' conduct in the workplace.

47. Defendant failed to take prompt and appropriate remedial steps to protect Plaintiff from sexual harassment.

48. Because of Defendant's negligent supervision and retention, Plaintiff suffered damages in the form of lost wages and benefits, significantly diminished employment opportunities, and emotional distress.

**WHEREFORE**, Plaintiff demands an arbitration and the following relief:

(a) cause process to issue;

(b) issue a declaratory judgment that Defendants' acts, policies, practices, and procedures complained of herein violated Plaintiff's rights under Title VII and state law;

(c) grant Plaintiff a permanent injunction enjoining Defendants, their officers, agents, successors, employees, attorneys, and those acting in concert with them, from engaging in any employment practice or policy which discriminates against the Plaintiff and others similarly situated because of the exercise of their rights under Title VII or because of their participation in this lawsuit;

(d) grant Plaintiff judgment in her favor and against Defendants under all Counts of this Complaint;

(e) order Defendants to make the Plaintiff whole by providing for her out-of-pocket losses as well as back pay in an amount equal to the sum of any wages, salary, employment benefits or other compensation denied or lost as a result of Defendants' unlawful and discriminatory acts, together with interest thereon, all in an amount to be proven at trial;

(f) grant to Plaintiff compensatory and punitive damages for Defendants' willful violations of Title VII;

(g) grant to Plaintiff reasonable attorney's fees together with any and all other costs associated with this action as provided by Title VII and state law violations; and

(h) grant plaintiff all other damages including nominal damages, available by law.

(i) grant such additional relief as this court deems proper and just.

Respectfully submitted on this 4th day of April 2023.

/s/ J. Stephen Mixon
J. Stephen Mixon
Georgia Bar No. 514050

THE MIXON LAW FIRM
3344 Peachtree Rd., Suite 800
Atlanta, GA 30326
Phone: 770-955-0100
steve@mixon-law.com