# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| CHAD W. EPPLE, in his capacity as Trustee for the SOUTHEASTERN ENGINEERING, INC. DEFINED BENEFIT PLAN, and SOUTHEASTERN ENGINEERING, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> BRUCE REICH, NATIONAL LIFE INSURANCE COMPANY, and LIFE INSURANCE COMPANY OF THE SOUTHWEST, <br><br> Defendants. | Civil Action No. _____ <br><br><br> JURY TRIAL DEMANDED |

## COMPLAINT

COME NOW Plaintiffs Chad W. Epple ("Epple"), in his capacity as the Trustee for the Southeastern Engineering, Inc. Defined Benefit Plan, and Southeastern Engineering, Inc. ("Southeastern"), by and through their undersigned attorneys, and file this Complaint against National Life Insurance Company ("NLIC"), Life Insurance Company of the Southwest ("LSW"), and Bruce Reich ("Reich") (collectively, "Defendants"), respectfully showing the Court as follows:

## **INTRODUCTION**

Plaintiffs bring this action for fiduciary violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, related to the Southeastern Engineering, Inc. Defined Benefit Plan (the "Plan"), and seek relief under ERISA § 502(a)(2) for breaches of fiduciary duties owed to the Plan by Defendants. Plaintiffs further seek recovery for violations of Georgia state law, to the extent such law applies prior to the existence of the Plan. Plaintiffs also seek to recover their attorneys' fees and the costs of bringing this action pursuant to 29 U.S.C. § 1132(g) and/or O.C.G.A. § 13-6-11.

## **PARTIES**

1.

Southeastern Engineering, Inc. ("Southeastern") is a privately held engineering firm incorporated under the laws of the State of Georgia with its corporate headquarters located in Cobb County, Georgia. At all relevant times, Southeastern was the Plan Sponsor of the Plan. Epple is the Vice President of Southeastern and at all relevant times served as the Trustee of the Plan.

2.

Defendant Bruce Reich is a natural person residing and doing business in the State of Georgia. Reich is the agent responsible for the Plan's investments. Pursuant

to one or more contracts, Reich holds a principal-agent relationship with Defendants NLIC and LSW. Defendant Reich can be served with process at 2389 Lower Birmingham Road, Canton, GA 30115.

3.

Defendant NLIC is a financial services company headquartered in Montpelier, Vermont. NLIC issues and maintains the life insurance and annuity policies issued under the Plan and holds a principal-agent relationship with Defendant Reich, pursuant to one or more contracts. Defendant NLIC can be served with process through its registered agent Tyeasha Harris, 1201 Peachtree St. N.E., CT Corporation System, Atlanta, GA 30361.

4.

Defendant LSW is a financial services company headquartered in Montpelier, Vermont. LSW, a part of NLIC, issues and maintains the life insurance and annuity policies issued under the Plan and holds a principal-agent relationship with Defendant Reich, pursuant to one or more contracts. Defendant LSW can be served with process through its registered agent Linda Banks, 289 S. Culver Street, Lawrenceville, GA 30046.

5.

Defendants NLIC and LSW are liable for the acts and omissions of their

employees and agents, including Defendant Bruce Reich, as set forth below, under applicable agency theories, including actual, ostensible and/or apparent agency.

## JURISDICTION & VENUE

6.

This Court has subject matter jurisdiction over Plaintiffs' claims, based on Plaintiff's ERISA allegations, pursuant to 29 U.S.C. § 1132 and 28 U.S.C. § 1331. Supplemental jurisdiction over related state law claims is proper, pursuant to 28 U.S.C. § 1367(a).

7.

Venue is proper under 28 U.S.C. § 1391 and 29 U.S.C. § 1132€(2) as Defendants do business, and the actions and harms alleged occurred, in this district.

## FACTUAL BACKGROUND

8.

In 2019, Southeastern engaged the consulting and plan design services of NLIC/LSW agent Bruce Reich, to assist with the creation and funding of the Southeastern Engineering, Inc. Defined Benefit Plan (the "Plan"), for the benefit of, and for the purpose of retaining, certain key Southeastern employees.

9.

The Plan qualifies as an employee pension benefit plan under ERISA as

defined by 29 U.S.C. § 1002(2). The Plan is a "defined benefit" pension plan, providing retirement income to certain participants (key Southeastern employees) and their beneficiaries.

10.

On multiple occasions, Epple instructed Reich that Southeastern had budgeted approximately $500,000 in annual contributions to the Plan, over the first three years.

11.

Reich developed the Plan's investments and continually assured Epple and Southeastern that annual contributions would be approximately $500,000 and would not substantially increase over time.

12.

In terms of the funding vehicles for the Plan, Reich imprudently invested excessive pension plan funds into life insurance policies, and imprudently invested pension plan funds in low-yielding annuity policies, issued by LSW/NLIC. The investments were imprudent, *inter alia*, because in his role as the plan's investment advice fiduciary, Reich, focusing on a discretionary plan provision regarding potential funding vehicles, imprudently advised Plaintiffs that the Plan *required* them to use plan assets to automatically purchase inefficient, expensive, and low

yielding individual life insurance policies on the lives of each participant up to the maximum amount permitted by the plan.  Reich knew, or should have known, that under the terms of the Plan a participant's anticipated retirement benefit typically increases each year to reflect increases in the rate of annual compensation and, consequently, by recommending this investment course of action, LSW/NLIC would pay him annual commission income on (i) the renewal life insurance premiums billed to the Plan each year for the life insurance policies the Plan purchased in prior years, plus (ii) the first year life insurance premiums received on the new policies Reich would sell each year to "top off" each participant's life insurance up to 100 times their revised anticipated retirement benefit.  As an investment fiduciary to the Plan, Reich knew or should have known that it would take many years before the cumulative cash surrender value of the individual life insurance policies he sold to the Plan would equal the accumulated premiums paid by the Plan to LSW/NLIC, and many more years before it would achieve a modest 2-3% investment return. This massive financial loss to plan assets dramatically increased the Plan's annual funding requirement above the level that would have been required to fund the Plan without the purchase of life insurance policies.  Reich knew or should have known that his investment advice tramples all three cornerstones of prudent investment management:  (a) cost-consciousness; (b) the selection of investments that provide

the highest return for a given level of cost and risk, or, conversely, the lowest level of cost and risk for a given level of return; and (c) the selection of actively managed mutual funds only if they provide a commensurate rate of return to cover the extra costs and risks typically associated with such funds.  Reich's imprudent investment advice further ignored the Plaintiffs' instructions regarding their chief plan design constraint, which was repeatedly emphasized to him: to ensure that Plan costs did not exceed an annual funding requirement of $500,000.  Had Reich, as an agent of NLIC and LSW, provided prudent investment vehicle funding advice to Plaintiffs, the Plan could have and would have been established, funded, and maintained to provide substantially equal benefits to the participants of the Plan, at a fraction of the cost.

13.

Reich was personally interested in and monetarily benefitted from his sale/the Plan's purchase of the life insurance and annuity policies.  Reich also continually promised to provide, but never provided Southeastern or Epple, with any actuarial illustrations or similar studies describing the key plan terms, the impact of his investment advice on the Plan's annual funding requirements, actuarial funding methods and assumptions, estimated annual costs, sensitivity to changes in workforce, or compensation levels.

14.

Reich promised Southeastern that when an employee terminated his or her employment with Southeastern, the Plan money associated with that employee would stay in the Plan and be split with the remaining Plan participants, but that did not happen.

15.

Reich further promised that the value of the Plan's life insurance policies would grow such that it would cover his commission payments, but it did not.

16.

After the Plan was instituted, Reich, an agent of NLIC and LSW, maintained his involvement with the Plan by serving as an investment fiduciary and agent-of-record regarding the Plan's ongoing purchases of individual life insurance policies and annuity contracts from LSW/NLIC for additional participants in the Plan, and through his involvement with the collection of renewal premiums.

17.

In year three of the Plan's existence, Southeastern's minimum contribution was projected to be approximately $625,000, the recommended contribution was $1,400,000, and the Plan's accrued liabilities increased to $2,100,000.

18.

Further, the Plan faced surrender charges of approximately $305,000 for ten (10) years post-effective date, despite Southeastern's instructions to Reich that it intended to commit funding to the Plan in an amount certain ($500,000) each year for the first three years.

19.

Southeastern was forced to freeze the Plan and contemplate complete termination of the Plan due to the significant material differences between the cost of the Plan as effectuated by Reich and Southeastern's intended Plan design. Further, due to the faulty plan design and imprudent investments, Southeastern was unable to retain certain key employees meant to benefit from the Plan.

20.

On February 7, 2022, Southeastern wrote a letter to NLIC asking that NLIC waive any and all surrender charges associated with the Plan. NLIC responded in a letter dated February 25, 2022, effectively refusing to waive the surrender charges.

21.

On May 26, 2022, Southeastern wrote a letter to Reich asking for additional details on the actuarial methods and assumptions upon which the Plan design was based. Reich failed to respond to this letter.

## GOVERNING LEGAL PRINCIPLES UNDER ERISA

22.

ERISA § 502(a) provides the enforcement mechanisms for breaches of ERISA's requirements. *See* 29 U.S.C. § 1132(a)(2) (a civil action may be brought: "by a … fiduciary, for appropriate relief under section 1109 of this title."). ERISA § 409(a), provides, in pertinent part:

> any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(a). Fiduciaries face potential personal liability. *Heffner v. Blue Cross & Blue Shield of Ala., Inc.*, 443 F.3d 1330, 1338-39 (11th Cir. 2006).

23.

ERISA §§ 404(a)(l)(A) and (B) provide, in pertinent part, that a fiduciary shall discharge its duties with respect to a plan solely in the interest of the participants, for the exclusive purpose of providing benefits to participants and their beneficiaries, and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

These fiduciary duties under ERISA §§ 404(a)(l)(A) and (B) are referred to as the duties of loyalty, exclusive purpose and prudence, and are among the "highest known to the law." *Herman v. NationsBank Trust Co.*, 126 F.3d 1354, 1361 (11th Cir. 1997) (internal citation omitted).  They entail, among other things:

    (a)    the duty to maintain and protect plan assets, and to make prudent decisions that are in the best interest of plan beneficiaries.  *See* 29 U.S.C. § 1104(a)(1)(A)(i) ("[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries . . . .").

    (b)    a duty to disclose and inform, which encompasses: (i) a negative duty not to misinform; (ii) an affirmative duty to inform when the fiduciary knows or should know that silence might be harmful; and (iii) a duty to convey complete and accurate information material to the circumstances; and

    (c)    a duty to discharge fiduciary duties with respect to the plan solely in the interest of the participants, for the exclusive purpose of providing benefits to participants with care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.  *See* 29 U.S.C. § 1104.

24.

All conditions precedent to the bringing of this action have occurred or have been performed. Alternatively, any condition precedent to the bringing of this action that has not occurred or has not been performed should be excused as futile, as a matter of fact and/or law.

## COUNT I – ERISA BREACH OF FIDUCIARY DUTIES UNDER 29 U.S.C. § 1132(a)(2)

25.

Plaintiffs incorporate the preceding paragraphs 1-24 above as if set forth fully herein.

26.

The factual allegations detailed herein demonstrate that Defendants breached their fiduciary duties by failing to act in a prudent and/or loyal manner through their failure to make decisions that are in the best interest of plan participants. Reich's failures in devising a plan that corresponded with the intentions of the Plan Sponsor, and his ongoing involvement in the investment management of the Plan in a manner inconsistent with the wishes of the Plan Sponsor, harmed the Plan as a whole, as well as its individual participants.

27.

The factual allegations herein further demonstrate the Defendants further

breached their fiduciary duties by failing to make prudent Plan investments. Reich failed to properly investigate various options for the Plan pre-investment, instead choosing to invest solely in low-yield life insurance and annuity policies as a funding vehicle for the Plan. This failure of the duty of prudent investing resulted in significant but avoidable losses to the Plan.

28.

As a direct and proximate result of the breach of the fiduciary duties as alleged herein, Plaintiffs have been or will be forced to pay a significant sum in surrender charges.

29.

Reich acted as a fiduciary of the Plan pursuant to § 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A) and the law interpreting that section, including 29 C.F.R. § 2510.3-21, by exercising discretionary authority over the Plan's assets and rendering investment advice for a fee. NLIC and LSW are liable for any fiduciary breach by Reich through theories of agency or apparent agency related to the principal-agent relationship maintained by Defendants. As outlined herein, Reich had discretionary authority and control with respect to the management and/or administration of the Plan and its assets, including acting as a fiduciary providing investment advice by purchasing life insurance policies and annuity contracts for

new participants in the Plan and through his collection of renewal premiums.

30.

Pursuant to ERISA, Defendants are liable to the Plaintiffs for losses caused by their breaches of fiduciary duty alleged in this Count.

### **COUNT II – ATTORNEYS' FEES UNDER 29 U.S.C. § 1132(g)**

31.

Plaintiffs incorporate the preceding paragraphs 1-30 above as if set forth fully herein.

32.

Defendants' violations of ERISA have caused Plaintiffs to incur litigation costs and attorneys' fees to remedy the breaches herein.

33.

This Court should award Plaintiffs their reasonable attorneys' fees and the litigation costs and expenses of bringing this action.

### **COUNT III – NEGLIGENCE**

34.

Plaintiffs incorporate the preceding paragraphs 1-5, 8, 10-15, 17-18, 20-21 & 24 above as if set forth fully herein.

35.

Pursuant to Georgia law, Defendants owed Plaintiffs a duty to exercise the degree of care expected of a reasonable person in the same or similar circumstances. Defendants failed to exercise this degree of care, causing injury to Plaintiffs.

36.

As a direct and proximate result of the actions/omissions of Defendants constituting negligence, Plaintiffs suffered substantial harm.

37.

Defendants have been negligent by, *inter alia*, the acts and omissions outlined in the allegations incorporated into this Count.

38.

Defendant Reich is directly liable for his negligence. Defendants NLIC and LSW are liable for their negligence and/or have imputed liability through theories of actual, ostensible, and/or or apparent agency.

39.

Plaintiffs have suffered damages and are entitled to an award of damages due to Defendants' negligence.

## COUNT IV – FRAUDULENT MISREPRESENTATIONS/OMISSIONS

40.

Plaintiffs incorporate the preceding paragraphs 1-5, 8, 10-15, 17-18, 20-21 & 24 above as if set forth fully herein.

41.

As set forth above, Defendants falsely represented certain material facts and omitted certain material facts to Plaintiffs prior to the existence of the Plan. Defendants acted upon such false representations to their own benefit and with the intention of inducing Plaintiffs to agree to Defendants' Plan terms. Plaintiffs justifiably relied on Defendants' false representations when entering into the Plan. Plaintiffs suffered injury as a direct result of Defendants' false representations.

42.

The actions and omissions outlined in the allegations incorporated into this Count constitute fraudulent misrepresentations/omissions.

43.

As a direct and proximate result of the actions/omissions of Defendants constituting fraudulent misrepresentations/omissions, Plaintiffs suffered substantial harm.

44.

Defendant Reich is directly liable for his fraudulent conduct. Defendants NLIC and LSW are liable for their fraudulent conduct and/or have imputed liability through theories of actual, ostensible, and/or apparent agency.

45.

Plaintiffs have suffered damages and are entitled to an award of damages due to Defendants' fraudulent misrepresentations/omissions.

### **COUNT V – ATTORNEYS' FEES UNDER O.C.G.A. § 13-6-11**

46.

Plaintiffs incorporate the preceding paragraphs 1-5, 8, 10-15, 17-18, 20-21, 24, & 31-45 above as if set forth fully herein.

47.

Defendants have unjustifiably denied and/or failed to take responsibility for their acts and omissions as set forth above.

48.

Defendants' violations as set forth herein have caused Plaintiffs to be put to the burden and expense of hiring legal counsel to force Defendants to meet their obligations and duties.

49.

Defendants have acted in bad faith, been stubbornly litigious, and have caused

the Plaintiffs unnecessary trouble and expense, entitling Plaintiffs to recover their attorneys' fees and expenses of litigation pursuant to O.C.G.A. § 13-6-11.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray that this Court grant the following relief against Defendants:

(a) Grant a trial by jury, pursuant to Federal Rule of Civil Procedure 38(b), for all issues so triable;

(b) Find in favor of Plaintiffs for Defendants' breaches of fiduciary duties alleged herein, and award any and all appropriate relief to the Plan including but not limited to surcharge;

(c) Find that Defendants are liable to Plaintiffs under state law theories of negligence and/or fraudulent misrepresentation/omission;

(d) Award Plaintiffs their reasonable attorneys' fees pursuant to 29 U.S.C. § 1132(g) and/or O.C.G.A. § 13-6-11;

(e) Award prejudgment interest, pursuant to ERISA and/or O.C.G.A. § 13-6-12, as available upon applicable claims; and

(f) Any and other such relief that this Honorable Court or the Finder of Fact deems equitable and just.

**A JURY TRIAL IS DEMANDED ON ALL CLAIMS SO TRIABLE.**

Respectfully submitted this 6th day of April, 2023.

>/s/  Nancy B. Pridgen
> Nancy B. Pridgen, Esq.
> Georgia Bar Number 587949
> npridgen@hallbenefitslaw.com
> (404) 551-5884 direct
> (678) 812-3654 fax
> *Of Counsel*
> HALL BENEFITS LAW
> 270 Carpenter Dr NE #325
> Atlanta, GA 30328
>
> *Counsel for Plaintiffs*