## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| DIANE MINOR,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>EQUIFAX INFORMATION<br>SERVICES, LLC,<br><br>　　　　　　Defendant. | Case No.:<br><br><br>**COMPLAINT AND<br>DEMAND FOR JURY TRIAL**<br><br><br>　1.　**FCRA, 15 U.S.C. § 1681, *et seq.*** |

Plaintiff Diane Minor ("Plaintiff"), through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.,* against Defendant Equifax Information Services, LLC ("Equifax" or "Defendant").

## I.　INTRODUCTION

1.　Plaintiff's Complaint alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, against Defendant, a consumer reporting agency, for reporting inaccurate information on Plaintiff's consumer report. "Consumer reports" under 15 U.S.C. § 1681a(d) include both credit file disclosures obtained directly by Plaintiff from the consumer reporting agencies and consumer

1

reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

## II.      JURISDICTION AND VENUE

2.      The District Court has federal question jurisdiction over these claims pursuant to 28 U.S.C. § 1331; 15 U.S.C. § 1681.

3.      Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

4.      Defendant transacts business here; as such, personal jurisdiction is established.

## III.      PARTIES

5.      Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

6.      Plaintiff is a natural person residing in Lawrenceville, Georgia.

7.      Plaintiff is a consumer as defined by the FCRA, 15 U.S.C. § 1681a(c).

8.      Defendant Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers in the form of "consumer reports," as defined in 15 U.S.C. § 1681a(d),

to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, GA 30309. Equifax's can be served through its registered agent, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

9.      Upon information and belief, Defendant disburses consumer reports to third parties under contract for monetary compensation.

10.     At all relevant times, Defendant acted through duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

11.     Any violations by Defendant were not in good faith, were knowing, negligent, willful, and/or intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violations.

## IV.   FACTUAL BACKGROUND

12.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

13.     The United States Congress decided that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting

methods undermine the public confidence, which is essential to the continual functioning of the banking system.

14.    Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

15.    The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

16.    Defendant reports consumer information about Plaintiff and other consumers through the sale of consumer reports.

17.    Defendant's consumer reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) Public Record Information: this section typically includes public record information, such as bankruptcy filings; and (iv) Credit Inquiries: this section lists every entity that has accessed the consumer's file

through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

18.     Defendant obtains consumer information from various sources, including furnishers that provide consumer information to Defendant, and information Defendant independently sources itself or through third party providers, vendors or repositories, including computerized reporting services like PACER.

19.     Defendant routinely reports inaccurate, incomplete, outdated, and materially misleading information about consumers after they have been discharged from bankruptcy, without verifying or updating the information as required by § 1681, despite possessing information that indicates its reporting is inaccurate.

20.     For example, even when Defendant reports an account as having been opened after a bankruptcy is filed, Defendant will often inaccurately report that account as being discharged in the bankruptcy, when Defendant knows that is not possible.

21.     The majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Defendant) to

make lending decisions. Those institutions also use FICO Scores and other proprietary third-party algorithms (or "scoring" models) to interpret the information in a consumer's consumer report, which is based on the amount of reported debt, payment history, and dates of delinquencies contained in Defendant's reports.

22.     FICO and other third-party algorithms use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

23.     The information reported by Defendant contributes to consumer creditworthiness, including their FICO Scores, which are calculated using information contained in Defendant's consumer reports.

24.     FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

25.     "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether those payments have been timely, late, or missed.

26.     In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist.

27.    The more severe, recent, and frequent late payments are, the greater the harm to the FICO Score.

28.    After bankruptcy, credit scores greatly affect a consumer's efforts to rebuild his or her credit history by establishing new, positive credit.

29.    A consumer who has obtained a bankruptcy discharge and has a consumer report that is inaccurately reporting that an account was discharged in bankruptcy when the account was not included in bankruptcy (because it was opened after the bankruptcy filing) and is in fact being paid suffers greater harm than if that account was accurately reporting.

30.    Defendant voluntarily obtained Plaintiff's consumer bankruptcy information and reported it in individual account tradelines and the Public Records section of Plaintiff's consumer reports.

31.    Defendant is well aware that a bankruptcy can only discharge accounts which were opened prior to the date of the bankruptcy filing.

32.    Defendant is also aware that accounts opened after a bankruptcy petition is filed are not (and cannot be) included in a bankruptcy and therefore are not discharged thereby.

33.    Defendant is also provided information about whether an account is included in a bankruptcy from information "furnishers" who report their accounts

to the CRAs. Furnishers do not inaccurately report newly opened, positive accounts as "discharged in bankruptcy."

34.    However, Defendant regularly overrides furnisher reporting of positive accounts, newly opened after a bankruptcy filing, as "discharged in bankruptcy," which is not possible.

35.    More than a decade ago, Defendant implemented automated "bankruptcy scrub" software which, upon Defendant's reporting of a bankruptcy public record discharge, is supposed to identify inaccurate pre-bankruptcy accounts and override the furnisher's reporting.

36.    However, upon information and belief, Defendant's bankruptcy scrub algorithms are flawed and often mistakenly treat accounts opened after the bankruptcy filing as though they were opened before the bankruptcy filing, even though Defendant knows the "Open Date" of the accounts.

37.    Consequently, Defendant regularly publishes consumer information that conflicts with information already reported in Defendant's credit files.

38.    Defendant routinely reports inaccurate and materially misleading information about consumers like Plaintiff, without verifying or updating it as required by § 1681e(b), despite possessing information inconsistent with the reported information that establishes that the reported information is inaccurate.

39.    Defendant's unreasonable policies and procedures cause it to regularly report consumer information without verifying its accuracy.

40.    Defendant's unreasonable policies, procedures and/or algorithms consistently fail to identify and update consumer information following a bankruptcy as required by § 1681e(b).

41.    Defendant knows the information it reports about accounts opened after bankruptcy filings is often inconsistent with public records and data contained in Defendant's own files.

42.    Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against Defendant for its inaccurate credit reporting following a Chapter 7 bankruptcy.

43.    Thus, Defendant is on continued notice of its inadequate post-bankruptcy reporting procedures, which cause Defendant to report inaccurate balances, account statuses, payment histories, and/or payment statuses.

<u>*Allegations Specific to the Credit Reporting of Plaintiff*</u>

44.    On or about May 5, 2022, Plaintiff filed for bankruptcy under Chapter 7 of Title 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Georgia, petition number 22-53505.

45.    Plaintiff received an Order of Discharge in or around August 2022.

9

46.     Defendant prepared one or more consumer reports concerning Plaintiff after she was discharged from Chapter 7 Bankruptcy.

47.     The allegations in this complaint against Defendant are based on the reporting by Defendant in Plaintiff's 12/28/2022 consumer disclosure obtained by Plaintiff.

48.     On or about December 28, 2022, Plaintiff obtained her consumer reports as provided under 15 U.S.C. 1681j to ensure that Plaintiff's credit account tradelines and bankruptcy were being reported accurately.

49.     Defendant included the bankruptcy case number, court, and the fact that Plaintiff's bankruptcy had been filed in May 2022 in the Public Records section of Plaintiff's consumer reports.

50.     Defendant also reported Plaintiff's credit history in individual "tradelines," including names of credit accounts, account numbers, account types, responsibility for the account (i.e., individual or joint accounts), the date the accounts were opened, statuses, and the dates of the last status update.

51.     Defendant obtained notice of Plaintiff's bankruptcy discharge through its routine, independent collection of consumer information from third party vendors such as Lexis-Nexis, as well as from furnishers that provide data regarding the individual tradelines reported by Defendant in Plaintiff's consumer reports.

52.     Defendant should **not** have inaccurately reported accounts that were opened after the bankruptcy and not included in the bankruptcy or discharge as included in the bankruptcy, but did so.

53.     In June 2022, Plaintiff opened a First Electronic Bank ("FEB") Account (the "FEB Account") starting with account number 5322*************.

54.     The FEB Account was opened after Plaintiff filed for bankruptcy in May 2022. The FEB Account, therefore, was not included in Plaintiff's bankruptcy and was not discharged.

55.     Defendant incorrectly reported the FEB Account as discharged through "BANKRUPTCY CHAPTER 7." The FEB Account should not have been inaccurately reported with a bankruptcy discharge status.

56.     Additionally, the FEB Account should have been reported with an accurate tradeline status such as "Current" that reflects the actual status of the Account, instead of an incorrect bankruptcy status.

57.     Defendant is aware that CRAs are not permitted to report an account opened after the bankruptcy filing with a status of "discharged through bankruptcy."

58.     Defendant should have reported all of Plaintiff's accounts opened after her bankruptcy filing as current because Plaintiff was current on her accounts.

59.     Defendant failed to accurately report that the FEB Account is current and/or was not included in bankruptcy, and instead inaccurately reported that it was included in Plaintiff's bankruptcy discharge.

60.     Plaintiff learned Defendant was inaccurately reporting Plaintiff's post-bankruptcy, current account as having been included in Plaintiff's bankruptcy, and subject to bankruptcy coding that conveys to creditors/lenders that the FEB Account was discharged or non-paid even though Plaintiff is currently making payments on the FEB Account.

61.     After filing for bankruptcy, Plaintiff opened the FEB Account. Therefore, the Account was not dischargeable or discharged.

62.     However, when Plaintiff pulled Plaintiff's consumer reports, Plaintiff discovered that Defendant was not reporting the FEB Account as current but was instead reporting it as included in Plaintiff's bankruptcy.

63.     Defendant does not have reasonable procedures in place to detect and correct accounts that were opened after a bankruptcy was filed but are reporting as discharged through bankruptcy, even where Defendant has received information from the furnisher that indicates the Account was opened after the bankruptcy filing.

64.   FEB furnished information to Defendant that indicated the FEB Account is current and opened after Plaintiff's bankruptcy filing, but Defendant rejected or otherwise overrode the data it received.

65.   Notably, the other national consumer reporting agencies, Experian and Trans Union, did not inaccurately report the FEB Account like Equifax. Experian and Trans Union did not inaccurately report that the FEB Account was included or discharged in Plaintiff's bankruptcy.

66.   Defendant inaccurately reported that Plaintiff discharged the FEB Account through bankruptcy when Plaintiff is currently paying on the FEB Account.

67.   Defendant failed to indicate the FEB Account is current and opened after Plaintiff's bankruptcy filing.

68.   Defendant's reporting was patently false and therefore inaccurate, as the FEB Account is current and opened after the bankruptcy filing and not discharged by Plaintiff's bankruptcy. Additionally, Defendant's reporting of the FEB Account is materially misleading and therefore also inaccurate.

//

*Plaintiff's Damages*

69.    Upon information and belief, had Defendant accurately reported the FEB Account with its correct payment history and status, Plaintiff's credit scores would have been better.

70.    After bankruptcy, a consumer's efforts to establish and build new credit is heavily weighted and scores will be lower when no such positive credit is being reported.

71.    After Plaintiff's bankruptcy discharge, Plaintiff applied for a credit card with The Bank of Missouri ("TBOM") but was approved on less than favorable terms due to the inaccurate reporting of the FEB Account by Defendant.

72.    Defendant's inaccurate reporting of the FEB Account, along with additional information belonging to Plaintiff, was published to various creditors by Defendant during the process of Plaintiff's credit applications.

73.    Additionally, Plaintiff has been chilled from applying for housing.

74.    In or around February 2022, Plaintiff's minor son was assailed and robbed by members of a local gang.

75.    Thereafter, in or around Fall of 2022, the individual assailants, and other members of the gang, were indicted on federal RICO charges.

76.     Consequently, Plaintiff fears that the gang members who escaped indictment will take some retaliatory or vindictive violent actions against Plaintiff and/or her son. Plaintiff's home address is known to members of the gang, as a result of the aforementioned assault of Plaintiff's son.

77.     Therefore, in or around September 2022, Plaintiff explored the possibility of relocating. However, Plaintiff abstained from doing so due to Defendant's erroneous credit reporting.

78.     Plaintiff reasonably fears that, as a result of Defendant's inaccurate reporting, any housing applications she makes will be denied, and will only serve to further harm her credit.

79.     As a direct result of Defendant's inaccurate reporting, Plaintiff suffers damages, including a decreased credit score, lower overall creditworthiness, and other financial harm.

80.     As a direct result of Defendant's inaccurate reporting, Plaintiff also suffered actual damages in the form of attorneys' fees incurred, related to Defendant's inaccurate reporting.

81.     Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish,

loss of sleep, reputational damage, violation of privacy, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

## V.   COUNT I
### Violations of the FCRA, 15 U.S.C. § 1681, *et. seq.*

82.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

83.   The FCRA requires consumer reporting agencies, like Defendant, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. § 1681e(b).

84.   Defendant negligently and willfully violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit report.

85.   Defendant independently sought information about Plaintiff's bankruptcy filing and discharge and voluntarily included it in Plaintiff's consumer reports.

86.   When Defendant voluntarily procured and reported Plaintiff's bankruptcy information, it had an obligation to follow reasonable procedures to ensure it reported the bankruptcy with maximal accuracy.

16

87.     Defendant knew or should have known that an account that is opened after a bankruptcy is filed is not included in the bankruptcy or discharge.

88.     These obligations are well established by the plain language of the FCRA, promulgated by the Federal Trade Commission, detailed in case law, and exemplified in prior cases involving Defendant from which Defendant is on notice of its unreasonable procedures concerning the reporting of accounts opened after a bankruptcy filing.

89.     Additionally, Defendant possesses or could easily obtain substantial written materials that detail CRAs' duties and obligations under the FCRA, including those arising after a consumer bankruptcy.

90.     Further, Defendant received notice that Plaintiff is actively making payments on the FEB Account through information provided by the data furnisher, FEB, and therefore had actual knowledge that the FEB Account was opened after the bankruptcy filing and that Plaintiff was making payments on the FEB Account.

91.     However, despite knowledge that the FEB Account is current and opened after filing for bankruptcy, Defendant inaccurately reported the FEB Account as "discharged in bankruptcy."

92.     Upon   information   and   belief,   Defendant's   bankruptcy   scrub algorithms are defective and cannot distinguish between accounts opened before or after the petition was filed before performing the scrub process.

93.     Despite   knowing   its   legal   obligations,   Defendant   willfully   and knowingly breached its duties in violation of 15 U.S.C. § 1681e(b). Accordingly, Defendant deprived Plaintiff of her rights as a consumer under the FCRA.

94.     Not   only   did   Defendant   have   prior   notice   of   its   unreasonable procedures for reporting an account opened after a bankruptcy filing, but it also possessed information from which it should have known the information reported about Plaintiff was inaccurate.

95.     Defendant knew from the furnisher of the FEB Account that the FEB Account had been opened after Plaintiff had filed for bankruptcy and that Plaintiff was making payments on the account.

96.     Yet in this case, Defendant inaccurately reported the FEB Account, which it knew is current and was opened after Plaintiff's bankruptcy filing, as "discharged in bankruptcy."

97.     Defendant   violated   15   U.S.C.   §   1681e(b)   by   failing   to   follow reasonable   procedures   to   assure   maximum   possible   accuracy   of   Plaintiff's consumer information.

98.    Defendant also violated 15 U.S.C. § 1681e(b) by failing to report accurate information when Defendant knew or should have known the information it was reporting is inaccurate, or otherwise contradicted by information known by Defendant, reported to Defendant, and reasonably available to Defendant.

99.    Defendant's violations of 15 U.S.C. § 1681e(b) were willful.

100.    Alternatively, Defendant's violations of 15 U.S.C. § 1681e(b) were negligent.

101.    Defendant's    inaccurate    reporting    damaged    Plaintiff's creditworthiness.

102.    Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, credit denial, and other financial harm caused by Defendant inaccurately reporting the FEB Account as discharged in bankruptcy.

103.    Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, stress, anger, loss of sleep, frustration, shock, embarrassment, and anxiety.

104.    Defendant is a direct and proximate cause of Plaintiff's damages.

105.    Defendant is a substantial factor in Plaintiff's damages.

106.   Therefore, Defendant is liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681, *et seq*.

## VI.   <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiff respectfully requests that judgment be entered against Defendant for the following:

A. Declaratory judgment that Defendant violated the FCRA;

B. Actual damages pursuant to 15 U.S.C. § 1681n(a)(1) or § 1681o(a)(1);

C. Statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1681n(a)(1);

D. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

E. Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

F. Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law; and

G. Any other relief that this Court deems appropriate.

## VII.   <u>JURY DEMAND</u>

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues so triable.

//

RESPECTFULLY SUBMITTED this 7th day of April 2023.

By: s/Jenna Dakroub
Jenna Dakroub
Bar Number: 385021
**CONSUMER ATTORNEYS**
8245 N. 85th Way
Scottsdale, AZ 85258
Telephone: (602) 807-1525
Fax: (718) 715-1750
E: jdakroub@consumerattorneys.com
*Attorneys for Plaintiff Diane Minor*