UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| Spherion Staffing, LLC,<br><br>                Plaintiff,<br><br>    v.<br><br>Hart & Associates, LLC, and<br>Patrick A. Hart,<br><br>                Defendants. | Case No. _____ |

**COMPLAINT FOR DAMAGES**

COMES NOW Plaintiff Spherion Staffing, LLC ("Spherion" or "Plaintiff"), by and through its undersigned counsel, and for its Complaint against Defendants Hart & Associates, LLC and Patrick A. Hart states as follows:

**BASES FOR CLAIMS**

1. This action arises from Spherion's termination of the Franchise Agreement between it and Defendants. Spherion terminated the Franchise Agreement after discovering that Defendants improperly secured more than $200,000 in federal Paycheck Protection Program loan funds by falsely claiming Spherion employees as Defendants' own. Furthermore, after auditing Defendants' accounts, Spherion determined that Defendants had overbilled one of Spherion's largest national customers by nearly $200,000 and retained payments from the

customer that, by contract, were due to Spherion. Spherion has been forced to reimburse the customer for the overbilling and has demanded that Defendants make Spherion whole. Defendants have failed to do so.

## THE PARTIES

2. Plaintiff Spherion Staffing, LLC is a Delaware limited liability company, having its principal place of business at 3625 Cumberland Boulevard, Suite 600, Atlanta, Georgia. Its sole member is SFN Group, LLC, a Delaware limited liability company, whose sole member is Randstad North America, Inc., a Delaware corporation with a principal place of business in Atlanta, Georgia.

3. Defendant Hart & Associates, LLC is an Alabama limited liability company. Its sole member is Defendant Patrick A Hart.

4. Defendant Patrick A. Hart is a citizen of the State of Alabama.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and no Defendant shares a state of citizenship with Spherion or its member.

6. This Court has personal jurisdiction over Defendants because they conduct business in this district and the events giving rise to Spherion's claims occurred in this district. Furthermore, under a Franchise Agreement between the parties, Defendants waived all questions of personal jurisdiction in this district.

7. Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Spherion's claims occurred in this district. Furthermore, Defendants consented to venue in this district and waived all questions as to venue under the Franchise Agreement.

## FACTUAL ALLEGATIONS

### Background and the Spherion System

8. Spherion is the franchisor of the Spherion staffing business system. It licenses individuals and businesses, pursuant to a Franchise Agreement, the right to operate a staffing and recruiting business under the Spherion® name, using Spherion's proprietary plans, systems, and procedures.

9. Using Spherion's plans, systems, and procedures, franchisees recruit and supply personnel to provide temporary help and full-time or permanent placement services to customer businesses.

10. On November 23, 2015, Patrick A. Hart entered into a Franchise Agreement with Spherion, which granted him the right to operate a Spherion franchised business in and around Montgomery, Alabama, for a period of ten years—unless terminated earlier under the terms of the Agreement. A true and correct copy of the Franchise Agreement is attached hereto as **Exhibit 1**.

11. On the same date, Hart assigned the Franchise Agreement to Hart & Associates, LLC; however, Hart acknowledged and agreed that he would remain

bound by and subject to each of the terms and conditions of the Franchise Agreement. Because Defendants' obligations under the Franchise Agreement are coextensive, they are collectively referred to hereinafter as Hart & Associates.

12.     The temporary employees that Spherion franchisees, including Hart & Associates, place with customer businesses are, unambiguously, Spherion employees. Indeed, the Franchise Agreement defines "Temporary Employees" as follows:

> "**Temporary Employees**" means the *employees of [Spherion]* who are provided to Customers by Franchisee *on behalf of [Spherion]* to perform any services authorized by this Agreement, irrespective of whether such employees are full-time, part-time or temporary.

(Franchise Agreement § 1(s) (italicization added).)

13.     Based on information provided by franchisees, Spherion pays the temporary employees' payroll, payroll taxes, workers' compensation, general liability, bonding, fringe benefit expenses, and other direct costs defined in the Franchise Agreement. (Franchise Agreement § 6(e).)

14.     Customers receiving staffing placements remit payment for those services pursuant to contracts that set forth the fees to be paid for the services provided – based on, for example, the nature of the services, the duration of the services, and whether a placement is or becomes a full-time employee of the customer.

15. Spherion owns the customer accounts and any payments made by customers are to be promptly remitted to Spherion. (Franchise Agreement § 7(v).)

16. The Franchise Agreement defines "Customer(s)" as existing and potential users of the staffing services that are authorized by the Franchise Agreement to be marketed and provided by franchisees like Hart & Associates on behalf of Spherion. (Franchise Agreement § 1(f).)

17. Franchisees receive a commission from Spherion, which is calculated as a percentage of the gross profits received from Spherion customers as a result of franchisees' temporary and permanent staffing placements with those customers. (Franchise Agreement §12.)

18. Spherion franchisees must maintain and provide to Spherion detailed information relating to the placement of full-time or permanent employees and complete and accurate weekly payroll and billing information for temporary employees furnished to customers. (Franchise Agreement § 7(u).)

### The Federal Paycheck Protection Program

19. In March 2020, in response to the COVID-19 pandemic upending the global economy and staggering local small businesses, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act (the CARES Act).

20. Among other things, the CARES Act created the Paycheck Protection program (PPP), to be administered by the United States Small Business

Administration (SBA). The stated purpose of the PPP was to provide an incentive for small businesses to keep workers on the payroll.

21.     Broadly speaking, upon application and approval, qualifying businesses could receive a low-interest, forgivable loan equal to approximately 2.5 times their average monthly payroll costs.

22.     Later, through the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act, Congress permitted certain eligible borrowers that previously received a PPP loan (First Draw PPP Loan) to apply for an additional PPP Loan (Second Draw PPP Loan).

23.     To apply for a PPP loan, applicants were required to complete a Paycheck Protection Program Borrower Application Form on which they disclosed information including their number of employees and average monthly payroll expenses. Again, those figures largely determined the size of the PPP loan the applicant could receive.

24.     In signing the Borrower Application Form, applicants certified, among other things, that (i) all loan proceeds would be used only for business-related purposes as specified in the loan application and consistent with the PPP Rule; and (ii) the information provided in the application was true and accurate in all material respects and a knowingly false statement to obtain a loan was punishable under the law.

## Hart & Associates PPP Misconduct and
## Spherion's Termination of the Franchise Agreement

25. In April 2020, Hart & Associates applied for a First Draw PPP Loan based on the accurate certification that it had two employees and an average qualifying monthly payroll of $8,333.33.

26. Based on those representations, Hart & Associates received a loan in the amount of $20,833.33.

27. In May 2022, Spherion received a complaint from an individual apparently previously associated with Hart & Associates' franchise that, in connection with a Second Draw PPP Loan, Hart & Associates falsely claimed as its own Spherion temporary employees.

28. After conducting its own investigation, Spherion determined that Hart & Associates had in fact falsely claimed Spherion temporary employees as Hart & Associates' own employees to inflate the payroll expenses for which it could receive PPP relief.

29. Specifically, and shockingly, only nine months after receiving its First Draw PPP Loan based on the accurate representation that it had *two* employees and an average qualifying monthly payroll of *$8,333.33*, in its application for a Second Draw PPP Loan, Hart & Associates falsely represented that it had *eighty-five* employees and average qualifying monthly payroll expenses of *$111,131.60*.

30. Based on those representations, Hart & Associates received a second loan in the amount of $278,279. True and correct copies of the loan applications for the First and Second Draw PPP loans are attached hereto as **Exhibits 2 and 3,** respectively.

31. Hart & Associates failed to provide a plausible explanation for its conduct when confronted by Spherion.

32. The Franchise Agreement granted Hart & Associates a license to operate its Spherion staffing and recruiting franchise strictly in accordance with the terms of the Franchise Agreement.

33. Hart & Associates agreed to comply with all terms of the Franchise Agreement. (Franchise Agreement § 7(b).)

34. Hart & Associates acknowledged Spherion's right to insist on full compliance with, and the full performance of, the terms and conditions of the agreement, and that the failure to fulfill or perform any of the obligations created by the Agreement would constitute a material breach of the Agreement. (Franchise Agreement § 23.)

35. In addition to the obligations discussed above, Hart & Associates agreed to conduct its franchised business in accordance with all applicable laws, statutes, rules, and regulations. (Franchise Agreement § 7(s).)

36. Hart & Associates also agreed that it would not directly or indirectly make use of any list of information concerning any temporary employees or other employees of Spherion, including those placed by Hart & Associates with any customer. (Franchise Agreement § 5(a)(4).)

37. Section 17 of Franchise Agreement provides that Spherion may terminate the Agreement if Hart & Associates makes a willful misrepresentation to Spherion, or fails to make a material disclosure to Spherion, as to matters involving or affecting the franchise, or any other person or organization related to franchise; in the sole judgment of Spherion, allows its reputation for honesty, integrity, fair dealing, or good moral character to become impaired through publicity or notoriety; or fails to cure any other default under the Franchise Agreement. (Franchise Agreement §§ 17(b)(1)(ii), 17(b)(4).)

38. The misconduct by Hart & Associates outlined above in connection with its receipt of a Second Draw PPP loan constituted incurable breaches of the Franchise Agreement provisions outlined above. Accordingly, by Notice of Default and Termination dated July 14, 2022, Spherion terminated the Franchise Agreement. A true and correct copy of the Notice of Default and Termination is attached hereto as **Exhibit 4**.

39. Upon receipt of the Notice, Hart & Associates ceased operating its franchised business.

## **Spherion's Supplemental Termination of the Franchise Agreement and Demand for Payment Based on Hart & Associates' Customer Billing Misconduct**

40. In the July 14, 2022, Notice, and as provided for under the Franchise Agreement, Spherion informed Hart & Associates that any amounts owed by Spherion to Hart & Associates through the date of termination would be paid in due course, less any amounts due to Spherion by Hart & Associates.

41. To that end, Spherion conducted an audit of Hart & Associates' books and records, as well as supporting data, to reconcile the business's accounts. In doing so, Spherion discovered that Hart & Associates had committed additional, material defaults under the Franchise Agreement during its time as a franchisee.

42. The defaults uncovered by Spherion's audit concern the overbilling of one of Spherion's and its parent company Randstad North America Inc.'s most important national customers.[1] The defaults also concern Hart & Associates' misappropriation of funds due to Spherion from that customer.

43. Specifically, Spherion discovered that Hart & Associates kept $21,029.97 in payments from the customer that were due to Spherion under the Franchise Agreement.

---

[1] Due to confidentiality provisions in the underlying contracts between Randstad and the customer, the customer's name has been omitted here. The identity of the customer is known by Hart & Associates.

44. Furthermore, between March and July 2022, Hart & Associates applied the incorrect rate to determine the fees owed by the customer for temporary employee placements that ultimately converted to permanent placements ("conversion fees"). Hart & Associates' conduct in this regard resulted in the customer being overbilled approximately $70,000.[2]

45. Finally, Spherion also determined that Hart & Associates improperly billed the customer for conversion fees for employees that never actually became permanent placements with the customer – in other words, the client should have never paid a conversion fee for the employee but did. These phantom conversion fees totaled approximately $125,000.

46. In total, Hart & Associates overbilled the client nearly $200,000.

47. Spherion has been forced to disclose and explain the circumstances to the customer and reimburse it.

48. Hart and Associates' conduct constituted additional terminable defaults of the Franchise Agreement provisions outlined above, as well as the Franchise Agreement provision giving Spherion the right to immediately terminate the Franchise Agreement without an opportunity to cure if Hart &

---

[2] The Notice of Termination for the billing misconduct contained a calculation error with respect these charges; however, Spherion has provided Hart & Associates a revised calculation.

Associates converted or embezzled funds of Spherion or others (Franchise Agreement § 17(b)).

49. Accordingly, Spherion sent Hart & Associates a Supplemental Notice of Default and Termination dated October 11, 2022. A true and correct copy of this Supplemental Notice of Default and Termination is attached hereto as **Exhibit 5**.[3]

50. The Franchise Agreement sets forth Hart & Associates' obligations upon termination. Those obligations include the obligation to pay to Spherion any and all money owing to Spherion by Hart & Associates. (Franchise Agreement § 8 (i).)

51. In addition, Hart & Associates agreed to indemnify Spherion for any losses and expenses incurred in connection with any claim, investigation, or inquiry (whether or not a formal proceeding or action has been instituted) which arises out of Hart & Associates' breach or alleged breach of contract or its business activities under the Franchise Agreement, or for losses or damages and contractual liabilities to third persons arising out of Hart & Associates' operation of the franchised business, including but not limited to those circumstances in which any act, violation, or omission of the franchisee is so egregious, in Spherion's reasonable judgment, that it would be unreasonable and unfair to the Spherion

---

[3] The customer name has been redacted in light of the previously discussed confidentiality concerns.

system and franchisees not to make the offending owner fully responsible for its own action, violation, breach, negligence, or omission. (Franchise Agreement § 19(a).)

52. "Losses and expenses" under Section 19(a) include, without limitation, all losses, compensatory, exemplary or punitive damages, penalties, fines, charges, costs, expenses, lost profits, attorneys' fees, court costs, settlement amounts, judgments, and compensation for damages to Company's reputation and goodwill, and any and all expenses of refunds, compensation, and other such amounts incurred in connection with the matter at issue. (Franchise Agreement § 19(d).)

53. The result of Spherion's audit determined that, after accounting for the commissions still due from Spherion to Hart & Associates; determining the commissions that Hart & Associates received in connection with the overbilling; and adding the attorneys' fees, audit costs, and converted funds due from Hart & Associates to Spherion, Hart & Associates owed Spherion a total balance of $124,781.52.

54. Spherion's October 11, 2022, Notice demanded that Hart & Associates make immediate arrangement to pay the outstanding balance within 14 days.

55. Hart & Associates failed to comply with Spherion's demand.

56. Upon information and belief, Hart & Associates disputes Spherion's termination of the Franchise Agreement and the amounts that Spherion claims it is due.

57. The parties have mediated this dispute pursuant to Section 27 of the Franchise Agreement; thus, it is presently ripe for judicial determination.

## COUNT ONE
### Declaratory Judgment – Franchise Agreement Termination

58. Spherion incorporates by reference the preceding paragraphs as if fully set forth herein.

59. The Franchise Agreement between Spherion and Hart & Associates is a valid and enforceable contract.

60. Spherion has performed all conditions necessary to secure Hart & Associates' performance under the contract.

61. The conduct described in this Complaint constitutes material breaches of the contractual provisions of the Franchise Agreement cited herein.

62. These breaches constitute good cause for the termination of the Franchise Agreement.

63. As a direct and proximate result of these actions, Spherion has incurred and is continuing to incur monetary damages in an amount exceeding $75,000, exclusive of interest and costs, with the precise amount to be determined at trial.

64. An actual justiciable controversy exists over the Franchise Agreement's termination.

65. Spherion is entitled to declaratory relief that the termination of the Franchise Agreement is valid and enforceable and an injunctive order ratifying and enforcing the termination.

## COUNT TWO
### Breach of Contract – Failure to Pay Money Owed to Spherion

66. Spherion incorporates the preceding paragraphs as if fully set forth herein.

67. The Franchise Agreement between Spherion and Hart & Associates is a valid and enforceable contract.

68. Spherion has performed all conditions precedent necessary to secure Hart & Associates' performance under the contract.

69. Hart & Associates has breached the contract in multiple ways through its improper billing and conversion of customer payments owed to Spherion.

70. Spherion has compensated the improperly billed customer for Hart & Associates' improper billing, and Hart & Associates is contractually required to indemnify Spherion for those amounts, as well as the associated costs and fees.

71. Despite Spherion's demand, Hart & Associates has failed to pay all money owed to Spherion.

72. Hart & Associates' failure to pay the amounts owed to Spherion constitutes material breaches of the contractual provisions of the Franchise Agreement cited herein.

73. Spherion has been damaged by Hart & Associates' breach of the contract and improper billing practices in an amount exceeding $75,000, exclusive of interest and costs, with the precise amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court:

A. Enter a declaratory judgment holding that Defendants' conduct violated the terms of the Franchise Agreement and constitutes good cause for terminating the Franchise Agreement;

B. Enter an injunctive order ratifying and enforcing the termination of the Franchise Agreement.

C. Enter judgment in favor of Spherion for the damages it has sustained as a result of Defendants' conduct.

D. Award Spherion its costs and attorneys' fees as provided for by the Franchise Agreement.

E. Award Spherion such other relief as the Court may deem just and proper.

Respectfully submitted this 7th day of April, 2023.

/s/ *Lawrence B. Domenico*
LAWRENCE B. DOMENICO
Georgia State Bar No. 003260
CAITLIN L. AMICK
Georgia State Bar No. 866013

Counsel for Plaintiff Spherion Staffing, LLC

MOZLEY, FINLAYSON & LOGGINS LLP
1050 Crown Pointe Parkway, Suite 1500
Atlanta, Georgia 30338
Telephone: (404) 256-0700
ldomenico@mfllaw.com
camick@mfllaw.com

/s/ *Justin Sallis*
JUSTIN SALLIS
Application to practice *Pro Hac Vice* to be submitted

Counsel for Plaintiff Spherion Staffing, LLC

Lathrop GPM LLP
600 New Hampshire Ave NW, The Watergate, Suite 700
Washington, D.C. 20037
Telephone: (202) 295-2223
Justin.sallis@lathropgpm.com