IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| MATTHEW STANDISH and<br>HUNUU HEALTH, INC., | )<br>)<br>) | |
| Plaintiffs, | )<br>) | CIVIL ACTION |
| v. | )<br>) | FILE NO. _____ |
| MARRIX POWER and<br>ANDREW MAKSAKOV, | )<br>)<br>)<br>) | **JURY TRIAL DEMANDED** |
| Defendants. | ) | |

## **COMPLAINT**

Plaintiffs Matthew Standish ("Standish") and Hunuu Health, Inc. ("Hunuu") bring this action for breach of contract, fraud, and the Georgia Fair Business Practices Act against Marrix Power ("Marrix") and Andrew Maksakov ("Maksakov").

## **NATURE OF THE ACTION**

1.

This case arises from Defendants Marrix and Maksakov's intentional lies and abject failure to perform the mobile app design services they promised to Plaintiffs Standish and Hunuu. To induce Standish and Hunuu to pay them, Marrix and Maksakov knowingly and falsely claimed that they were lawfully permitted to

provide coding services to an American company; that Marrix was a *bona fide* business (and Maksakov an authorized service-provider) located in Canada; and that Defendants had a team of Canada-based developers who were able to and would provide the services Plaintiffs needed.  Instead, Defendants took Plaintiffs' money and repudiated the false contract they signed, and then refused to remedy their wrongdoing despite admitting their representations had been false.  Plaintiffs are entitled to recover all amounts they paid Defendants, consequential and lost profit damages as a result of harm done to Plaintiffs' business, fees and expenses incurred in pursuing this action, and punitive damages for intentional misconduct.

## PARTIES, JURISDICTION AND VENUE

2.

Plaintiff Matthew Standish is a citizen of the United States who resides in Cherokee County, Georgia.

3.

Plaintiff Hunuu Health, Inc. is a corporation incorporated in Georgia and headquartered in Cherokee County, Georgia.

4.

Defendant Marrix Power is, upon information and belief, a Canadian company headquartered in Ontario, Canada.  Alternatively, Marrix may be a fake

d/b/a of a business existing solely in (and authorized to do business solely in) the country of Ukraine.

5.

Defendant Andrew Maksakov is a citizen of Ukraine who resides in both Ontario, Canada and in Ukraine.

6.

This Court possesses subject matter jurisdiction over this dispute under 28 U.S.C. § 1332(a)(3) because this is a dispute between Standish and Hunnu (both citizens of Georgia) and Marrix and Maksakov (citizens of Canada and Ukraine), and the amount in controversy in this action exceeds the sum or value of $75,000, exclusive of interest and costs.

7.

Defendants are subject to the personal jurisdiction and venue of this Court pursuant to 28 U.S.C. § 1391(b)(2) because they purposely availed themselves of Georgia jurisdiction by transacting business in Georgia and with Standish and Hunuu, who they knew to be Georgia citizens, because they affirmatively agreed that their dealings with Plaintiffs would be controlled by United States law, and because they signed a contract that contained a Georgia forum and venue selection clause.

8.

Defendants may be served with process by emailing their legal representative, Ruslana Tsaruk, [lawyer.ruslanatss@gmail.com](mailto:lawyer.ruslanatss@gmail.com), because she has identified herself affirmatively as Defendants' legal representatives for purposes of this dispute and affirmatively stated that she will accept communications with respect to this dispute, and because Defendants have no registered agent in Georgia.

## FACTS

9.

Defendant Maksakov represents himself as a web and mobile app design and development specialist and CEO of Marrix Power, located in Ontario, Canada.

10.

Plaintiff Standish, on behalf of himself and Plaintiff Hunuu, contacted Defendants in fall, 2022. Plaintiffs sought app design services for a health support portal critical to Hunuu's business. Plaintiffs explained that the App, Dashboard, and Analytics Platform to be designed were time sensitive and would be immediately placed in commercial use and a critical feature for raising money with venture capitalists.

11.

The parties negotiated by phone and email to and from Georgia, and Defendants were aware that they would be conducting work for Georgia clients and to be used in Georgia. Maksokov represented that he and his Marrix team could complete the work requested, and the parties exchanged detailed timelines and specifications.

12.

Plaintiffs provided a detailed Proposal and paid Defendants $5,000 via wire to a New York-based bank account in the name of Marrix Power on September 28th, 2022.

13.

On or around October 2, 2022, the parties signed a Master Services Agreement that included a pricing schedule, technical specifications, and a timeline for completion, along with a "Total Project Cost" of $40,000 to be paid by Plaintiffs in two equal installments, the first upon Project inception and the final installment "Upon Completion" which the Proposal defined as "Project launch of Website to Market." Maksakov signed the Agreement purportedly on behalf of Marrix Power

14.

Plaintiffs repeatedly expressed the time-sensitive nature of the Project to Defendants and they agreed that time was of the essence.

15.

Unfortunately, from the beginning, Defendants failed to proceed with the Project in a timely manner. Defendants offered a number of excuses for the Project's slow start, including that it was difficult to get his team together since they did not actually work in his office, that his mother had recently suffered a health emergency, and that his principal designer had just gone on vacation for fifteen days immediately after the payment of $5,000 was received by defendant.

16.

As work on the Project began, Plaintiffs complained to Defendants that the team's work was slow, failed to incorporate Plaintiffs' feedback on design, and even failed to correct basic proof-reading errors cited by Plaintiffs. Via video conference, text and telephone from Georgia, Plaintiffs continued to urge Defendant Maksakov to complete the Project expeditiously, as promised.

17.

Plaintiffs put Defendants on notice of impending meetings that Plaintiff had scheduled with representatives of healthcare providers, healthcare systems, and

venture capitalists for which Plaintiffs informed Defendants that it was essential Plaintiff be able to refer to the completed website, and that without it, Plaintiffs' financial backers and prospective customers would be lost and Plaintiffs' credibility in the marketplace would be harmed.  Defendants again acknowledged the urgency of the project.

18.

Only after these repeated communications – and after Plaintiffs had paid $38,500 to the New York bank account registered in Marrix's name – did Defendants announce that they could or would only complete the Project if Plaintiffs paid fees beyond those owed under the Agreement.

19.

When Plaintiffs refused to pay more and demanded Defendants complete their work, Defendants summarily walked away, announcing that they "reject[ed] any chance to continue working."  Defendants then ceased all communications with Plaintiffs and disabled Plaintiffs' access to the Project's project management site, through which Defendants shared work-in-progress with Plaintiffs and received feedback from Plaintiffs. Defendants also changed passwords to servers and hosting sites in retaliation without informing the Plaintiffs.

20.

Defendants' misconduct inspired Plaintiffs to hire counsel and conduct an investigation, including because Defendants had failed to provide a W-9 tax form upon request.  Plaintiffs' investigation uncovered that, upon information and belief, Marrix is not a *bona fide* entity at all, and Maksakov's representations to be its CEO and to manage a team of developers were lies.  In fact, neither Maksakov nor Marrix are authorized to conduct business in the United States or Canada, and they maintain a United States bank account under false pretenses.  Upon information and believe, neither Maksakov nor Marrix are legally registered in Canada and may not be located or authorized to work either there or in the United States.

21.

On January 24, 2023, Plaintiffs, by and though their attorneys, sent a demand letter to Defendants identifying their misrepresentations and demanding return of all moneys paid and other damages.

22.

In response, Defendants affirmatively identified Ruslana Tsaruk as their legal representative authorized to accept and respond to Defendants' legal demands. Incredibly, Defendants openly "acknowledge[d] that Mr. Maksakov had made a misrepresentation to Your Client regarding Marrix Power, which constitutes a

breach of the Agreement," and admitted that Marrix Power is not an actual legal entity at all. Nevertheless, despite admitting to fraud, Defendants refused to remedy their misconduct, or even to refund the money they had taken from Plaintiffs and deposited in their falsely-registered New York bank account.

23.

As of the date of this Complaint, the Project has still not been completed, Defendants have not returned Plaintiffs' funds, and Defendants have rebuffed all Plaintiffs' reasonable attempts to communicate with Defendants to resolve their dispute.

24.

Pursuant to both the Agreement and Georgia law, Plaintiffs have been damaged not only by the full $38,500 they paid to Defendants, but by hundreds of thousands of dollars more due to the cancellation of fund raising and customer contracts and business opportunities Defendants knew and agreed were contingent on their work. Defendants knew of and agreed to the existence of these consequential damages and Plaintiffs' right to recover them both during their course of business and in the Agreement itself. That Agreement and Georgia and federal law also entitle Plaintiffs to recover all fees and costs and to garnish Defendants' United States bank account and any other United States assets. Finally, Plaintiffs

are entitled to recover punitive damages due to Defendants' intentional misrepresentations and fraud, to which Defendants have admitted, in an amount to be determined at trial.

## COUNT ONE: BREACH OF CONTRACT

25.

Plaintiffs reallege and incorporate by reference the foregoing paragraphs of his Complaint as if fully set forth herein

26.

The Agreement between Plaintiffs and Defendants is a valid, binding Agreement under Georgia and United States law.

27.

Despite Plaintiffs paying Defendants consideration in the amount of $38,500, Defendants breached the Agreement by failing to perform the services it required; by refusing to return Plaintiffs' confidential information and locking Plaintiffs from the work-in-progress; and by terminating the Agreement without providing any notice of breach or cure period as required on its face.

28.

The Agreement expressly provides that consequential damages are available to Plaintiffs in the event of breach; that Defendants' breach of confidentiality or

property rights constitute additional violations subject to additional damages; and that Defendants owe Plaintiffs their reasonable attorneys' fees and expenses in the event Plaintiffs prevail in any dispute with Defendants.

29.

Plaintiffs have been damaged in an amount to be determined at trial, but exceeding $75,000 as such damages include the $38,500 Plaintiffs paid, the value of lost financing and business opportunities in the hundreds of thousands of dollars, and in fees and expenses in an amount that continues to rise.

**COUNT TWO: FRAUD**

30.

Plaintiffs reallege and incorporate by reference the foregoing paragraphs of their Complaint as if fully set forth herein.

31.

In the alternative, the Agreement is unenforceable because Defendants induced and procured Plaintiffs' signature by knowingly false and material misrepresentations, including: that Marrix was a *bona fide* business based in Canada and authorized to perform the work, including in the sensitive field of health-care data and technology; and that Defendants had the technical know-how and team to perform the work on the schedule provided.

32.

In fact, even before the Agreement was executed, Defendants knew that these claims were false and material to Plaintiffs' decision to engage Defendants. Defendants were neither legally authorized to do the work, nor did they have the ability, the capacity, or the present intent to deliver.

33.

Defendants intended that Plaintiffs would rely on these misrepresentations by paying Defendants and executing theAgreement, and Plaintiffs did so reasonably rely.

34.

As a result of Defendants' fraud, Plaintiffs have been damaged in an amount to be determined at trial, but exceeding $75,000 as such damages include the $38,500 Plaintiffs paid, the value of lost financing and business opportunities in the hundreds of thousands of dollars, and in fees and expenses in an amount that continues to rise.

35.

In addition, in light of Defendants' intentional torts, Plaintiffs are entitled to recover punitive damages in an amount determined by the enlightened conscience of the court sufficient to punish Defendants for their fraudulent actions and to deter them from such actions in the future.

## COUNT THREE: VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICE ACT

36.

Plaintiffs reallege and incorporate by reference the foregoing paragraphs of their Complaint as if fully set forth herein.

37.

Defendants violated the Georgia Fair Business Practices Act ("FBPA") when they advertised goods or services with the intent not to sell them as advertised; represented that goods or services are of a particular standard, quality, or grade when this is not the case; and engaged in other conduct which similarly creates a likelihood of confusion or of misunderstanding. See O.C.G.A. § 10-1-372.

38.

Plaintiffs delivered the necessary *ante litem* notice to Defendant Mobile prior to bringing this action, including via Plaintiffs' January 2023 demand letter.

39.

As a result of Defendants' violations of the GFBPA, Plaintiffs have been damaged in an amount to be determined at trial, but exceeding $75,000 as such damages include the $38,500 Plaintiffs paid, the value of lost financing and business opportunities in the hundreds of thousands of dollars, and in fees and expenses in an amount that continues to rise.

40.

Plaintiff is entitled to recover punitive damages because Defendants' violations of the GFBPA were knowing, willful, and in bad faith.

## COUNT FOUR: ATTORNEYS FEES

41.

Plaintiffs reallege and incorporate by reference the foregoing paragraphs of their Complaint as if fully set forth herein.

42.

The Agreement expressly provides that Defendants owe Plaintiffs for reasonable costs (including attorneys' fees) incurred in prosecuting an action for Defendants' wrongdoing.

43.

In addition, Defendants have acted in bad faith, been stubbornly litigious and multiplied these proceedings unreasonably and vexatiously, including making knowingly false statements and by refusing to acknowledge their obvious liability.

44.

Accordingly, pursuant to the Agreement, 28 U.S.C. § 1927, O.C.G.A. § 9-6-11, and as otherwise provided by law, Plaintiffs are entitled to recover their

attorneys' fees and other reasonable expenses incurred in connection with this litigation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for judgment as follows:

1. That the Court enter judgment in favor of Plaintiffs and against Defendants on all claims for relief;

2. That the Court award Plaintiffs all damages incurred, including 1.5 percent monthly interest, in an amount to be proven at trial;

3. That the Court award Caradigm its attorneys' fees and expenses of litigation pursuant to the Agreement, to 28 U.S.C. § 1927, to O.C.G.A. § 9-6-11, and as otherwise provided by law;

4. That the Court award punitive damages for Defendants' intentional wrongdoing, in an amount to be proven at trial;

5. That the Court provide all authorization necessary for Plaintiffs to garnish and otherwise take possession of all United States account balances and funds of Defendants;

6. That all costs be assessed against Defendants; and

7. That the Court award such other and further relief as shall appear just and proper.

This 7th day of April, 2023.

                                                  Respectfully submitted,

                                                  */s/ Christopher T. Giovinazzo*
                                                  Christopher T. Giovinazzo
                                                  Georgia Bar No. 142165
                                                  email: giovinazzo@bmelaw.com

**BONDURANT, MIXSON & ELMORE, LLP**    *Attorney for Plaintiffs*
3900 One Atlantic Center                             *Matthew Standish and*
1201 West Peachtree Street, N.W.              *Hunuu Health, Inc.*
Atlanta, Georgia  30309
Telephone:  (404) 881-4100
Facsimile:  (404) 881-4111