

EXHIBIT A

ID# 2021-0055085-CV
EFILED IN OFFICE
CLERK OF SUPERIOR COURT
COBB COUNTY, GEORGIA
**21103284**
Jason D. Marbutt - 67
APR 28, 2021 03:05 PM

*Connie Taylor, Clerk of Superior Court*
*Cobb County, Georgia*

IN THE SUPERIOR COURT OF COBB COUNTY
STATE OF GEORGIA

BENNING CONSTRUCTION COMPANY,

    Plaintiff,

v.

BARNHILL, INC.,

    Defendant.

Civil Action No.:

### BENNING CONSTRUCTION COMPANY'S COMPLAINT AND PETITION FOR DECLARATORY JUDGMENT

COMES NOW Benning Construction Company ("BCC") pursuant to O.C.G.A. §§ 9-4-1, et. seq. and files this Complaint and Petition for Declaratory Judgment, respectfully showing the Court as follows:

### PARTIES AND JURISDICTION

1. BCC is a domestic profit corporation organized and existing under the laws of the State of Georgia, with its principal office at 4695 S. Atlanta Road SE, Atlanta, GA 30339.

2. Barnhill, Inc. ("Defendant") is a domestic profit corporation organized and existing under the laws of the State of Georgia with its principal place of business at 3470 Princeton Corners Drive, Marietta, Georgia, 30062. Defendant may be served with process through its registered agent Harry D. Barnhill, at 3470 Princeton Corners Dr., Marietta, Georgia, 30062.

3. Pursuant to Article 20 of the subcontract executed by BCC and Defendant, this Court has jurisdiction over this matter and venue is proper in Cobb County, Georgia. See Subcontract for: Pre-Engineered Metal Building, No.: 19-4315 (the "Subcontract"), Article 20, a true and correct copy of which is attached hereto as **Exhibit "1."**

## FACTS

**A. The Contracts**

4. On or about August 13, 2019, BCC and non-party Ringgold Medical Two, LLC ("Owner") executed a certain AIA Document A101 – 2017 Standard Form of Agreement Between Owner and Contractor where the basis of payment is a Stipulated Sum (the "Prime Contract") for the construction of the project known as Medical Office Building – Shell located at Battlefield Parkway, Ringgold, Georgia 30736 (the "Project"). A true and correct copy of the Prime Contract is attached as **Exhibit "2."**

5. On or about December 11, 2019, BCC, as general contractor, and Defendant, as subcontractor, executed the Subcontract wherein Defendant agreed to design, fabricate, deliver, and erect two pre-engineered metal buildings for the Project. *See*, generally, the Subcontract. The total subcontract price was $275,291.00.

6. The Subcontract memorialized the rights and obligations of BCC and Defendant including, among other things, BCC's right to issue a "Contractor's Decision." Specifically, Article 3 of the Subcontract provides that:

> Unless otherwise provided herein, all claims or disputes by Subcontractor arising under or relating to the Work, changes to the Work, or this Subcontract shall first be decided by Contractor in a written decision sent to Subcontractor…In the event Subcontractor disagrees with Contractor's decision, then Subcontractor must appeal that decision by initiating litigation within thirty (30) days of Subcontractor's receipt of the decision. In the event Subcontractor does not appeal the decision within thirty (30) days of Subcontractor's initial receipt of Contractor's decision, then Subcontractor will be deemed to have waived a condition precedent to litigation, arbitration, or other dispute resolution of the claim and Subcontractor shall be deemed to have accepted and agreed to be conclusively bound by Contractor's decision…

7. Further, the Defendant agreed to "prosecute the Work in a prompt, diligent, and workmanlike manner" and guaranteed that "upon the receipt of a written notice from [BCC],

[Defendant] shall promptly repair and make good in accordance with the Contract Documents any defect that may appear in the Work within one (1) year after final completion of the project…" *See* Articles 7 and 11 of the Subcontract.

### B. The Defective Work

8. On or about July 7, 2020, Defendant installed the portion of the roofing system on the southern side of the building at the Project where the roof intersected the wall and parapet. Upon information and belief, Defendant did not install the cleat specified in the design drawings intended to secure the edge of the metal roofing panels to the building structure.

9. From September of 2020 through the Spring of 2021, the Owner complained to BCC about leaks in the work performed by Defendant on the Project.

10. BCC made various attempts to involve Defendant to ascertain the source and cause water intrusion issue at the Project.

11. Various repair attempts were not successful, as the Owner reported ongoing water intrusion along the same intersection between the southern wall and roof on December 4 and 28, 2020.

12. Defendant returned to the Project for the last time on January 26, 2021 in its final, unsuccessful attempt to identify and fix the water intrusion issues plaguing the building at the Project.

13. Defendant agreed to meet with BCC on January 29, 2021 to discuss the next steps for rectifying the ongoing water intrusion. Despite this agreement, Defendant did not appear at the scheduled meeting.

## C. The Contractor's Decision

14. On January 29, 2021, BCC issued a Contractor's Decision and 48-Hour Notice of Default to Defendant (the "Contractor's Decision"). A true and correct copy of the Contractor's Decision is attached hereto as **Exhibit "3."**

15. In the Contractor's Decision, BCC informed Defendant that, pursuant to Articles 3 and 8 of the Subcontract, Defendant was in default under the terms of the Subcontract. BCC advised that unless Defendant provided "proper men, materials, and supervision to repair the roof leaks" within 48 hours, BCC would employ another subcontractor to augment Defendant's workforce.

16. The Contractor's Decision further set forth that, as provided for in the Subcontract, if Defendant objected to BCC's Contractor's Decision that Defendant was in default, it must file suit against BCC within thirty days of receipt of the Contractor's Decision or else "[Defendant] will be deemed to have waived a condition precedent to litigation…and shall be deemed to have accepted and agreed to be conclusively bound by Contractor's decision."

17. To date, Defendant has not responded to the Contractor's Decision.

18. Defendant did not return to the Project, nor did it repair the leaking roof.

19. Defendant did not object to the Contractor's Decision by filing suit against BCC within the thirty days of receipt of the Contractor's Decision.

20. Defendant's failure to appeal the Contractor's Decision through litigation results in Defendant being bound by its findings. *See Holt & Holt, Inc. v. Choate Construction Company*, 271 Ga. App. 292, 293 (2004); *see also North Augusta Associates Limited Partnership v. 1815 Exchange, Inc.*, 220 Ga. App. 790 (1996).

### D. BCC's Ongoing Remediation Efforts

21. On February 5, 2021, BCC employed Infinity Metals, LLC ("Infinity") to supplement Defendant's work. Infinity installed additional metal flashing along the affected portion of the Project building's southern wall.

22. On March 4, 2021, the Owner advised BCC that the Project building was still experiencing water intrusion along the southern wall.

23. On March 10, 2021, BCC employed Re-Roof USA LLC ("Re-Roof"), a metal building roofing specialist, to review, address, and repair the leaking roof. Re-Roof attempted to rectify the water intrusion issues on March 23, 2021.

24. On March 25, 2021, following a heavy rainstorm, the Owner advised BCC of significant water intrusion in the Project Building. Specifically, the Owner reported water intrusion along the southern wall intersection as well as along the demising wall separating the finished medical office space from the unfinished southern portion. The Owner also reported additional leaks in the finished medical office space.

25. On March 30, 2021, Re-Roof returned to the Project and performed water testing in an attempt to locate the source of the water intrusion. Re-Roof discovered that the cleat used to secure the edge of the metal roofing panel to the Project building structure was not installed. The design documents provided by Defendant identified the inclusion of the cleat.

26. BCC has directed Re-Roof to procure and install the missing cleat and to install additional flashing along the entire length of the impacted wall in order to ensure that the leaks are stopped. Re-Roof's work is ongoing.

27. BCC has incurred and continues to incur additional charges and costs to supplement Defendant's workforce and complete the repairs to the Project.

28. On or about April 1, 2021, counsel for the Owner wrote to counsel for BCC alleging the presence of mold in the Project building as a result of the significant and ongoing leaks (the "Owner Demand"). A true and correct copy of the Owner Demand is attached hereto as **Exhibit "4."**

29. The Owner Demand further insisted that BCC engage a mold expert to inspect the Project and to develop a remediation plan.

30. On or about April 6, 2021, BCC employed SES Environment, Inc. ("SES") to investigate the reports of mold at the Project and to provide recommendations regarding possible remediation measures, if necessary.

31. On April 11, 2021, SES promulgated a letter summarizing its findings and recommendations (the "SES Letter"). A true and correct copy of the SES Letter is attached hereto as **Exhibit "5."**

32. The SES Letter noted the presences of "viable fungal growth on sheetrock within the unoccupied building" resulting from "moisture intrusion originating at the roof due to issues with the installation of roof flashing."

33. The SES Letter recommended reasonable remediation efforts including the treatment of the affected portions of drywall and insulation as well as proactive treatment of the other walls of the Project in order to prevent the recurrence of the mold. The SES Letter also recommended the temporary installation of industrial HEPA equipment to disseminate the interior air to further decrease the likelihood of the recurrence of the mold.

34. BCC accepted the recommendations set forth in the SES Letter and engaged SES to remediate the mold infestation at the Project.

## COUNT I – DECLARATORY JUDGMENT

35. BCC incorporates by reference the averments continued in paragraph 1-34 as if fully set forth verbatim herein.

36. As set forth in the Contractor's Decision and the Subcontract, after BCC found Defendant in default, the Defendant was required to file suit against BCC within thirty days of receipt of the Contractor's Decision or else "[Defendant] will be deemed to have waived a condition precedent to litigation…and shall be deemed to have accepted and agreed to be conclusively bound by Contractor's decision."

37. Defendant did not file suit within thirty days of its receipt of the Contractor's Decision.

38. BCC asks that this Court declare that because Defendant did not file suit within the contractually mandated time, Defendant has accepted and agreed to be conclusively bound by BCC's decision that it defaulted under the Subcontract.

39. BCC further asks that this Court declare that Defendant is liable to BCC for all damages it has sustained as a result of BCC's Contractor's Decision including: (1) investigative costs, (2) costs to repair the roof, (3) costs to remediate the water intrusion resulting from Defendant's defective design and construction, (4) legal fees and costs, and any other such damages which have or will continue to accrue.

## COUNT II – BREACH OF CONTRACT

40. BCC incorporates by reference the averments continued in paragraph 1-39 as if fully set forth verbatim herein.

41. The Subcontract is a binding and enforceable contract.

42. Defendant breached the Subcontract by (1) failing to prosecute the work in conformance with the Contract Documents, (2) performing faulty and defective work, (3) failing to provide adequate manpower, equipment, supervision, and materials to repair the leaking roof, (4) by failing to complete the repair work within the time set by BCC, (5) failing to pay BCC the costs incurred as a result of BCC's Contractor's Decision, and (6) failing to honor its warranty obligations to "promptly repair and make good in accordance with the Contract Documents any defect that may appear in the Work within one (1) year after final completion of the Project."

43. Defendant's breaches of the Subcontract are the proximate and actual cause of the damages sustained by BCC.

44. As a result of the Defendant's breaches of the Subcontract, BCC has sustained damages including the excess costs to complete and repair the Project, the costs to investigate the defective nature of Defendant's work, the cost to analyze the defective plans provided by Defendant, the cost to remediate the mold which infiltrated the Project as a direct and proximate result of Defendant's failure to provide a water tight structure, and the attorney's fees and costs associated with bringing this action.

## COUNT III—ATTORNEYS' FEES

45. BCC incorporates by reference the averments continued in paragraph 1-44 as if fully set forth verbatim herein.

46. Pursuant to Article 3 of the Subcontract, "[Defendant] is responsible for any and all damages actually sustained by BCC as a result of Subcontractor's default and/or termination of [Defendant]."

47. Defendant failed to timely initiate litigation challenging the BCC's decision that it was in default and that it would supplement its work force as outlined in their January 29, 2021

Contractor's Decision. Therefore, the Contractor's Decision conclusively resolves the issue of Defendant's default.

48. BCC's attorney's fees in this action are a direct result of Defendant's defaults under the Subcontract and are recoverable pursuant to Article 3 of the Subcontract.

49. BCC is also entitled to recover its attorney's fees and costs from this action pursuant to O.C.G.A. § 13-6-11 because Defendant has acted in bad faith, been stubbornly litigious, and has caused BCC unnecessary trouble and expense.

WHEREFORE BCC prays that the Court enter an Order:

(1) in favor of BCC and against Defendant as to all Counts;

(2) granting the declaratory relief sought in Count I;

(3) finding in BCC's favor on Count II for Breach of Contract and awarding damages in the amount of not less than $47,331.88 plus pre-judgment interest and post-judgment interest at the applicable legal rate;

(4) finding in BCC's favor on Count III for Attorney's Fees and Costs and awarding attorney's fees and costs pursuant to the Subcontract and/or O.C.G.A. § 13-6-11 in an amount to be determined at trial; and

(5) awarding such other and further relief as this Court finds just and equitable.

This 28th day of April, 2021.

Respectfully submitted,

**HUDSON LAMBERT PARROTT WALKER, LLC**

*/s/ Kevin H. Hudson*
Kevin H. Hudson
Georgia Bar No. 374630
Brendan E. Kirwin
Georgia Bar No. 512223

Fifteen Piedmont Center, Suite 850
Atlanta, Georgia 30305
Telephone: (404) 554-8181
Facsimile: (404) 554-8171
khudson@hlpwlaw.com
bkirwin@hlpwlaw.com
*Attorneys for Benning Construction Company*

10

# Exhibit 3



# BENNING CONSTRUCTION COMPANY
## GENERAL CONTRACTORS
### AN EMPLOYEE-OWNED COMPANY

January 29, 2021

Page 1 of 2

Barnhill, Inc.
3470 Princeton Corners Drive
Marietta, GA 30062

RE:  Ringgold Medical Office Building ("Project")
     Battlefield Parkway
     Ringgold, GA
     **Contractor's Decision and 48-Hour Notice of Default**

Dear Sir/Madam:

You Firm was notified on December 4, 2020 that the Owner of the above-referenced Project was experiencing leaks in the roof over the vacant spaces in the building you supplied to the Project and was demanding immediate corrective action to address the leaks. In response to our multiple phone calls and e-mails with you about this subject, you had agreed to provide manpower to the site on January 27, 2021 to address the roof leaks, but then failed to do as promised. To date, your Firm has failed to take any action evaluate or remedy the roof leaks identified by the Owner, and you have stated in your latest communications that you cannot commit to a timeframe for any repairs. Your continued inability or unwillingness to perform is a breach of your Subcontract and is jeopardizing BCC's relationship with the Owner of the Project.

Under Articles 3 and 8 of the Subcontract Agreement, we are rendering to you a Contractor's Decision that Barnhill, Inc. is in default under its Subcontract for failure to perform and supply adequate manpower to address the roof leaks identified by the Owner. Benning Construction Company is providing you with forty-eight (48) hours' notice to provide proper men, materials, and supervision to repair the roof leaks. If by **Sunday, January 31, 11:30 AM EST**, your Firm has not repaired the roof leaks, then Benning Construction Company will be forced to employ another subcontractor to augment your forces in performing the scope of work detailed in our subcontract with you. Any/all costs incurred by this action, including, but not limited to, higher subcontractor costs, delay damages, and any legal fees associated with this action will be assessed against your firm.

We regret that your actions have brought us to this point. However, we can no longer allow your inability or unwillingness to repair the roof leaks to affect the Project. Severe damages are potentially in play with the Owner due to your continued inaction, and Benning Construction Company will look to your Firm to fully indemnify and reimburse it for any damages incurred or claims asserted by the Owner in accordance with the terms of your Subcontract. It would be advisable to notify your insurance carrier of a potential claim regarding this project.

19-43\S19-4315\Barnhill\48 Hours' Notice – Contractors Decision

OFFICE:  4695 S. ATLANTA ROAD SE ATLANTA, GEORGIA 30339



# BENNING CONSTRUCTION COMPANY
## G E N E R A L   C O N T R A C T O R S
### AN EMPLOYEE-OWNED COMPANY

Page 2 of 2

Please take due notice. If you should have any questions, please feel free to contact us. All rights, claims, and defenses are expressly reserved.

Sincerely,

BENNING CONSTRUCTION COMPANY


Ryce A. Elliott
President

19-43\S19-4315\Barnhill\48 Hours' Notice – Contractors Decision

Exhibit 4



**LAW OFFICES**

**GRANT KONVALINKA & HARRISON, P.C.**

A PROFESSIONAL CORPORATION

John R. Anderson

Ninth Floor, Republic Centre
633 Chestnut Street
Chattanooga, TN 37450-0900

Telephone (423)756-8400
Facsimile (423)756-6518
www.gkhpc.com

Writer's E-Mail & Facsimile
janderson@gkhpc.com
(423) 756-0643

April 1, 2021

Kevin H. Hudson
Hudson Lambert Parrott Walker, LLC
Fifteen Piedmont Center
3575 Piedmont Road, Suite 850
Atlanta, GA 30305

**BY EMAIL**

Re: Benning Construction Company
    Ringgold Medical Two, LLC

Dear Mr. Hudson:

Several members of your client have been on-site at our client's property this week. It has been determined that the roof was installed incorrectly. As a result of the incorrect installation and substantial number of leaks, there is now mold in the building. Additionally, a tenant is prevented from moving into the building. Demand is hereby made that your client immediately undertake a mold analysis with a plan for remediation as a result of this incorrect installation. The roof will need to be completely corrected.

Please advise immediately upon the retention of a mold expert and provide a copy of the analysis and the plan for remediation. Please advise a schedule for the correction of the incorrectly installed roof which has been the result of the multiple leaks.

Very truly yours,

John R. Anderson

cc: C. Larry Armour (by Email)
    David Hudson (by Email)

# Exhibit 5



**SES Environmental Inc.** Atlanta, Deerfield Beach, Dallas, Washington DC

April 11th, 2021

Benning Construction Company
4695 South Atlanta Road
Atlanta, Georgia 30339

RE: **Visual Inspection**
**Ringgold Medical Office Building**
4645 Battlefield Parkway
Ringgold, Georgia 30736

SES Environmental, Inc. (SES) has completed a visual inspection within designated areas of the Ringgold Medical Office Building project located in Ringgold, Georgia. This document presents observations from this inspection.

### 1.0 Visual Inspection

#### 1.1 Visual Observations

A preliminary inspection of areas reportedly affected by moisture intrusion resulted in the observation of viable fungal growth on sheetrock within the unoccupied building accessed by SES personnel on April 6th, 2021. Significant evidence of viable fungal growth was observed to be present on sheetrock and insulation on the northern wall of the building. It is the opinion of SES that the fungal growth is present as a result of moisture intrusion originating at the roof due to issues with the installation of roof flashing.

#### 1.2 Recommendations

Due to the level of observed impaction, SES recommends that the insulation on the northern wall be removed and that sheetrock be treated in place through a regimen consisting of the applications of an oxidizer and fungal inhibitor.

SES also recommends that the insulation on the remaining walls be treated with the inhibitor to ensure that extant spores originating on the northern wall do not become viable on existing materials through the remediation process.

Finally, SES recommends the installation of Industrial HEPA equipment within the area before and during removal of materials and treatment. This will assist in the dissemination of the interior air during the removal. Once the project is complete, air sampling will be performed within the interior space as well as in the ambient, exterior environment. Comparison of data from the two sets of samples provides an evaluation of the efficacy of building systems to limit airborne fungal dissemination and to provide an indication of the atmospheric quality as it pertains to mold on the day sampling will be conducted.

We appreciate the opportunity to help manage your environmental risk. If you have questions in regard to this project, please feel free to contact the undersigned at your convenience.

Sincerely,

Slade L. Scoles, MS, CIH
Manager, Industrial Hygiene