# EXHIBIT F

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| VirnetX Inc., | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 6:10-cv-417 |
| vs. | § | |
| | § | |
| Cisco Systems, Inc., | § | |
| Apple Inc., | § | |
| Aastra USA, Inc., | § | |
| Aastra Technologies Ltd., | § | |
| NEC Corporation, and | § | |
| NEC Corporation of America, | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF VIRNETX INC.'S ORIGINAL COMPLAINT

Plaintiff VirnetX Inc. ("VirnetX") files this complaint against Defendants Aastra USA, Inc., Aastra Technologies Ltd., Apple Inc., Cisco Systems, Inc., NEC Corporation, and NEC Corporation of America (collectively, "Defendants") for patent infringement under 35 U.S.C. § 271 and in support thereof would respectfully show the Court the following:

## THE PARTIES

1.  Plaintiff VirnetX is a corporation organized and existing under the laws of the State of Delaware, and maintains its principal place of business at 5615 Scotts Valley Drive, Suite 110 Scotts Valley, California.

2.  Defendant Aastra Technologies Ltd. is a Canadian corporation with its principal place of business at 155 Snow Blvd., Concord, Ontario Canada, L4K 4N9.  Defendant Aastra USA, Inc. is a Delaware corporation with its principal place of business at 2811 Internet Blvd., Frisco, TX 75034.  Aastra Technologies Ltd. and Aastra USA, Inc. are collectively referred to as "Aastra."  On information and belief, Aastra regularly conducts and transacts business in

Texas, throughout the United States, and within the Eastern District of Texas, and as set forth below, has committed and continues to commit, tortious acts of patent infringement within and outside of Texas and within the Eastern District of Texas.

3. Defendant Apple Inc. ("Apple") is a California corporation with its principal place of business at 1 Infinite Loop, Cupertino, California 95014.  On information and belief, Apple regularly conducts and transacts business in Texas, throughout the United States, and within the Eastern District of Texas, and as set forth below, has committed and continues to commit, tortious acts of patent infringement within and outside of Texas and within the Eastern District of Texas.

4. Defendant Cisco Systems, Inc. ("Cisco") is a California corporation with its principal place of business at 170 West Tasman Dr., San Jose, CA 95134.  On information and belief, Cisco regularly conducts and transacts business in Texas, throughout the United States, and within the Eastern District of Texas, and as set forth below, has committed and continues to commit, tortious acts of patent infringement within and outside of Texas and within the Eastern District of Texas.

5. Defendant NEC Corporation is a Japanese corporation with its principal place of business at 5-7-1 Shiba, Minato-ku, Tokyo 108-8001.  Defendant NEC Corporation of America is a Nevada corporation with its principal place of business at 6535 N. State Highway 161, Irving, Texas 75039.  NEC Corporation and NEC Corporation of America are collectively referred to as "NEC."  On information and belief, NEC regularly conducts and transacts business in Texas, throughout the United States, and within the Eastern District of Texas, and as set forth below, has committed and continues to commit, tortious acts of patent infringement within and outside of Texas and within the Eastern District of Texas.

## JURISDICTION AND VENUE

6.      This is an action for patent infringement arising under the patent laws of the United States, Title 35, United States Code.  This Court has exclusive subject matter jurisdiction over this case for patent infringement under 28 U.S.C. § 1338.

7.      Venue is proper in the Eastern District of Texas under 28 U.S.C. §§ 1391 and 1400(b).

8.      This Court has personal jurisdiction over Defendants.  Defendants have conducted and do conduct business within the State of Texas.  Defendants, directly or through subsidiaries or intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and advertises (including the provision of an interactive web page) its products and/or services in the United States, the State of Texas, and the Eastern District of Texas.  Defendants, directly and through subsidiaries or intermediaries (including distributors, retailers, and others), has purposefully and voluntarily placed one or more of its infringing products and/or services, as described below, into the stream of commerce with the expectation that they will be purchased and used by consumers in the Eastern District of Texas.  These infringing products and/or services have been and continue to be purchased and used by consumers in the Eastern District of Texas.  Defendants have committed acts of patent infringement within the State of Texas and, more particularly, within the Eastern District of Texas.

## ASSERTED PATENTS

9.      On December 31, 2002, United States Patent No. 6,502,135 ("the '135 patent") entitled "Agile Network Protocol for Secure Communications with Assured System Availability" was duly and legally issued with Edmund Colby Munger, Douglas Charles

Schmidt, Robert Dunham Short, III, Victor Larson, Michael Williamson as the named inventors after full and fair examination. VirnetX is the owner of all rights, title, and interest in and to the '135 patent and possesses all rights of recovery under the '135 patent. A copy of the '135 patent is attached as Exhibit A.

10.     On January 4, 2005, United States Patent No. 6,839,759 ("the '759 patent") entitled "Method for Establishing Secure Communication Link Between Computers of Virtual Private Network Without User Entering Any Cryptographic Information" was duly and legally issued with Victor Larson, Robert Dunham Short, III, Edmund Colby Munger, and Michael Williamson as the named inventors after full and fair examination. VirnetX is the owner of all rights, title, and interest in and to the '759 patent and possesses all rights of recovery under the '759 patent. A copy of the '759 patent is attached as Exhibit B.

11.     On March 6, 2007, United States Patent No. 7,188,180 ("the '180 patent") entitled "Method for Establishing Secure Communication Link Between Computers of Virtual Private Network" was duly and legally issued with Victor Larson, Robert Dunham Short, III, Edmund Colby Munger, and Michael Williamson as the named inventors after full and fair examination. VirnetX is the owner of all rights, title, and interest in and to the '180 patent and possesses all rights of recovery under the '180 patent. A copy of the '180 patent is attached as Exhibit C.

12.     On August 26, 2008, United States Patent No. 7,418,504 ("the '504 patent") entitled "Agile Network Protocol for Secure Communications Using Secure Domain Names" was duly and legally issued with Victor Larson, Robert Dunham Short, III, Edmund Colby Munger, and Michael Williamson as the named inventors after full and fair examination.

VirnetX is the owner of all rights, title, and interest in and to the '504 patent and possesses all rights of recovery under the '504 patent. A copy of the '504 patent is attached as Exhibit D.

13. On February 10, 2009, United States Patent No. 7,490,151 ("the '151 patent") entitled "Establishment of a Secure Communication Link Based on a Domain Name Service (DNS) Request" was duly and legally issued with Edmund Colby Munger, Robert Dunham Short, III, Victor Larson, and Michael Williamson as the named inventors after full and fair examination. VirnetX is the owner of all rights, title, and interest in and to the '151 patent and possesses all rights of recovery under the '151 patent. A copy of the '151 patent is attached as Exhibit E.

## COUNT ONE

## PATENT INFRINGEMENT BY AASTRA

14. VirnetX incorporates by reference paragraphs 1-13 as if fully set forth herein. As described below, Aastra has infringed and/or continues to infringe the '135 patent.

15. Aastra's Clearspan platform, Pointspan platform, 6725ip telephone, 6721ip telephone, 6739i telephone, 6730i telephone, 6731i telephone, 6753i (53i) telephone, 6755i (55i) telephone, 6757i (57i) telephone, 6757i CT (57i CT) telephone, M670i (536M) Expansion Module, M675i (560M) Expansion Module, 9143i telephone, 9480i telephone, and 9480i CT telephone infringe at least system claims 10 and 12 of the '135 patent. Aastra makes, uses, sells, offers for sale, exports, imports, supplies, and/or distributes within and from the United States these products and thus directly infringes at least claims 10 and 12 of the '135 patent.

16. The use of Aastra's Clearspan platform, Pointspan platform, 6725ip telephone, 6721ip telephone, 6739i telephone, 6730i telephone, 6731i telephone, 6753i (53i) telephone,

6755i (55i) telephone, 6757i (57i) telephone, 6757i CT (57i CT) telephone, M670i (536M) Expansion Module, M675i (560M) Expansion Module, 9143i telephone, 9480i telephone, and 9480i CT telephone as intended by Aastra infringes at least method claims 1, 3, 7, and 9 of the '135 patent.  Aastra uses these products and thus directly infringes at least claims 1, 3, 7, and 9 of the '135 patent.

17.     In addition, Aastra provides its Clearspan platform, Pointspan platform, 6725ip telephone, 6721ip telephone, 6739i telephone, 6730i telephone, 6731i telephone, 6753i (53i) telephone, 6755i (55i) telephone, 6757i (57i) telephone, 6757i CT (57i CT) telephone, M670i (536M) Expansion Module, M675i (560M) Expansion Module, 9143i telephone, 9480i telephone, and 9480i CT telephone to resellers, consultants, and end-user customers in the United States who, in turn, use these products to infringe at least claims 1, 3, 7, 9, 10, and 12 of the '135 patent.

18.     Aastra indirectly infringes by inducing infringement by resellers, consultants, and end-user customers, in accordance with 35 U.S.C. § 271(b), because Aastra actively induces infringement of the '135 patent by resellers, consultants, and end-user customers.

19.     Aastra indirectly infringes the '135 patent by contributing to infringement by resellers, consultants, and end-user customers, in accordance with 35 U.S.C. § 271(c), because Aastra offers to sell or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

20.     Aastra has infringed and/or continues to infringe one or more claims of the '135 patent as set forth above.  Aastra is liable for direct infringement, as well as indirect infringement by way of inducement and/or contributory infringement, for the '135 patent pursuant to 35 U.S.C. § 271 (a), (b), (c), and/or (f) as set forth above.  For VirnetX's claims of indirect infringement, Aastra's resellers, consultants, and end-user customers are direct infringers of the '135 patent.

21.     Aastra's acts of infringement have caused damage to VirnetX.  VirnetX is entitled to recover from Aastra the damages sustained by VirnetX as a result of Aastra's wrongful acts in an amount subject to proof at trial.  In addition, the infringing acts and practices of Aastra has caused, is causing, and, unless such acts and practices are enjoined by the Court, will continue to cause immediate and irreparable harm to VirnetX for which there is no adequate remedy at law, and for which VirnetX is entitled to injunctive relief under 35 U.S.C. § 283.

22.     Aastra has received actual notice of infringement by virtue of the filing of this lawsuit.  Aastra has also received constructive notice, as VirnetX has complied with the requirements of 35 U.S.C. § 287.

## COUNT TWO

## PATENT INFRINGEMENT BY APPLE

23.     VirnetX incorporates by reference paragraphs 1-22 as if fully set forth herein. As described below, Apple has infringed and/or continues to infringe the '135 and '151 patents.

24.     Apple's iPhone, iPhone 3G, iPhone 3GS, iPhone 4, iPod Touch, and iPad, when configured and operating in a system as specified by Apple, infringe at least system claims 10

and 12 of the '135 patent.  Apple makes and/or uses these systems and thus directly infringes at least claims 10 and 12 of the '135 patent.

25.     The use of Apple's iPhone, iPhone 3G, iPhone 3GS, iPhone 4, iPod Touch, and iPad as intended by Apple infringes at least method claims 1, 3, 7, 8, and 9 of the '135 patent. Apple uses these products and thus directly infringes at least claims 1, 3, 7, 8, and 9 of the '135 patent.

26.     In addition, Apple provides its iPhone, iPhone 3G, iPhone 3GS, iPhone 4, iPod Touch, and iPad to others, such as resellers and end-user customers, in the United States who, in turn, use these products to infringe at least claims 1, 3, 7, 8, 9, 10, and 12 of the '135 patent.

27.     Apple indirectly infringes by inducing infringement by others, such as resellers and end-user customers, in accordance with 35 U.S.C. § 271(b), because Apple actively induces infringement of the '135 patent by others, such as resellers and end-user customers.

28.     Apple indirectly infringes the '135 patent by contributing to infringement by others, such as resellers and end-user customers, in accordance with 35 U.S.C. § 271(c), because Apple offers to sell or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

29.     Apple's iPhone, iPhone 3G, iPhone 3GS, iPhone 4, iPod Touch, and iPad infringe at least apparatus claims 1 and 6 of the '151 patent.   Apple makes, uses, sells, offers for sale, imports, exports, imports, supplies, and/or distributes within and from the United States these products and thus directly infringes at least claims 1 and 6 of the '151 patent.

30.     Apple's iPhone, iPhone 3G, iPhone 3GS, iPhone 4, iPod Touch, and iPad, as well as Apple's servers, master discs, and other media that store, cache, or distribute iPhone OS, infringe at least computer readable media claims 7, 12, and 13 of the '151 patent.  Apple makes, uses, sells, offers for sale, imports, exports, imports, supplies, and/or distributes within and from the United States these products and media and thus directly infringes at least claims 7, 12 and 13 of the '151 patent.

31.     In addition, Apple provides its iPhone, iPhone 3G, iPhone 3GS, iPhone 4, iPod Touch, and iPad and media that store, cache, or distribute iPhone OS to others, such as resellers and end-user customers, in the United States who, in turn, use these products to infringe at least claims 1, 6, 7, 12, and 13 of the '151 patent.

32.     Apple indirectly infringes by inducing infringement by others, such as resellers and end-user customers, in accordance with 35 U.S.C. § 271(b), because Apple actively induces infringement of the '151 patent by others, such as resellers and end-user customers.

33.     Apple indirectly infringes the '151 patent by contributing to infringement by others, such as resellers and end-user customers, in accordance with 35 U.S.C. § 271(c), because Apple offers to sell or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

34.     Apple has infringed and/or continues to infringe one or more claims of the '135 and '151 patents as set forth above.  Apple is liable for direct infringement, as well as indirect infringement by way of inducement and/or contributory infringement, for the '135 and '151

patents pursuant to 35 U.S.C. § 271 (a), (b), (c), and/or (f) as set forth above.  For VirnetX's claims of indirect infringement, Apple's resellers, consultants, and end-user customers are direct infringers of the '135 and '151 patents.

35.     Apple's acts of infringement have caused damage to VirnetX.  VirnetX is entitled to recover from Apple the damages sustained by VirnetX as a result of Apple's wrongful acts in an amount subject to proof at trial.  In addition, the infringing acts and practices of Apple have caused, are causing, and, unless such acts and practices are enjoined by the Court, will continue to cause immediate and irreparable harm to VirnetX for which there is no adequate remedy at law, and for which VirnetX is entitled to injunctive relief under 35 U.S.C. § 283.

36.     Apple has received actual notice of infringement by virtue of the filing of this lawsuit.  Apple has also received constructive notice, as VirnetX has complied with the requirements of 35 U.S.C. § 287.

### COUNT THREE

### PATENT INFRINGEMENT BY CISCO

37.     VirnetX incorporates by reference paragraphs 1-36 as if fully set forth herein. As described below, Cisco has infringed and/or continues to infringe the '135, '759, '180, and '504 patents.

38.     Cisco's Unified 6900, 7900, 8900, and 9990 Series IP Phones, IP Communicator, TelePresence System 3200, 3000, 1300 Series, 1100, 1000 and 500, Unified Communications Manager Business Edition, Unified Communications Manager Express, Unified Communications Manager (including certain versions formerly known as Unified CallManager), ASA 5500 Series Adaptive Security Appliances, SPA 301, 303, 501G, 502G,

504G, 508G, 509G, 525G/525G2, SPA962, SPA942, SPA941, SPA932, SPA922, SPA921, and SPA901 IP Phones, and SIP Proxy Server infringe at least system claims 10 and 12 of the '135 patent.  Cisco makes, uses, sells, offers for sale, exports, imports, supplies, and/or distributes within and from the United States these products and thus directly infringes at least claims 10 and 12 of the '135 patent.

39.      The use of Cisco's Unified 6900, 7900, 8900, and 9990 Series IP Phones, IP Communicator, TelePresence System 3200, 3000, 1300 Series, 1100, 1000 and 500, Unified Communications Manager Business Edition, Unified Communications Manager Express, Unified Communications Manager (including certain versions formerly known as Unified CallManager), ASA 5500 Series Adaptive Security Appliances, SPA 301, 303, 501G, 502G, 504G, 508G, 509G, 525G/525G2, SPA962, SPA942, SPA941, SPA932, SPA922, SPA921, and SPA901 IP Phones, and SIP Proxy Server as intended by Cisco infringes at least method claims 1-5, 7, 9, and 13 of the '135 patent.  Cisco uses these products and thus directly infringes at least claims 1-5, 7, 9, and 13 of the '135 patent.

40.      In addition, Cisco provides its Unified 6900, 7900, 8900, and 9990 Series IP Phones, IP Communicator, TelePresence System 3200, 3000, 1300 Series, 1100, 1000 and 500, Unified Communications Manager Business Edition, Unified Communications Manager Express, Unified Communications Manager (including certain versions formerly known as Unified CallManager), ASA 5500 Series Adaptive Security Appliances, SPA 301, 303, 501G, 502G, 504G, 508G, 509G, 525G/525G2, SPA962, SPA942, SPA941, SPA932, SPA922, SPA921, and SPA901 IP Phones, and SIP Proxy Server to resellers, consultants, and end-user customers in the United States who, in turn, use these products to infringe claims 1-5, 7, 9-10, and 12-13 of the '135 patent.

41.     Cisco indirectly infringes by inducing infringement by resellers, consultants, and end-user customers, in accordance with 35 U.S.C. § 271(b), because Cisco actively induces infringement of the '135 patent by resellers, consultants, and end-user customers.

42.     Cisco indirectly infringes the '135 patent by contributing to infringement by resellers, consultants, and end-user customers, in accordance with 35 U.S.C. § 271(c), because Cisco offers to sell or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

43.     Cisco's 800, 1800, 1900, 2800 and 2900 Series Integrated Service Routers, ASA 5500 Series Adaptive Security Appliances, 3800 and 3900 Series Integrated Service Routers, 7200 Series Routers, 7301 Routers, Catalyst 6500 Series Switches, ASR 1000 Series Routers, AnyConnect VPN Client, and VPN Client, as well as Cisco's servers, master discs, and other media that store, cache, or distribute Cisco's software, infringe at least computer readable media claims 16-17, 23-24, and 26-29 of the '759 patent.  Cisco makes, uses, sells, offers for sale, exports, imports, supplies, and/or distributes within and from the United States these products and media and thus directly infringes at least claims 16-17, 23-24, and 26-29 of the '759 patent.

44.     The use of Cisco's 800, 1800, 1900, 2800 and 2900 Series Integrated Service Routers, ASA 5500 Series Adaptive Security Appliances, 3800 and 3900 Series Integrated Service Routers, 7200 Series Routers, 7301 Routers, Catalyst 6500 Series Switches, ASR 1000 Series Routers, AnyConnect VPN Client, and VPN Client as intended by Cisco infringes at

least method claims 1-2, 8-9, and 11-14 of the '759 patent.  Cisco uses these products and thus directly infringes at least claims 1-2, 8-9, and 11-14 of the '759 patent.

45.     In addition, Cisco provides its 800, 1800, 1900, 2800 and 2900 Series Integrated Service Routers, ASA 5500 Series Adaptive Security Appliances, 3800 and 3900 Series Integrated Service Routers, 7200 Series Routers, 7301 Routers, Catalyst 6500 Series Switches, ASR 1000 Series Routers, AnyConnect VPN Client, VPN Client, and media that store, cache, or distribute Cisco's software to resellers, consultants, and end-user customers in the United States who, in turn, use these products to infringe claims 1-2, 8-9, 11-14, 16-17, 23-24, and 26-29 of the '759 patent.

46.     Cisco indirectly infringes by inducing infringement by resellers, consultants, and end-user customers, in accordance with 35 U.S.C. § 271(b), because Cisco actively induces infringement of the '759 patent by resellers, consultants, and end-user customers.

47.     Cisco indirectly infringes the '759 patent by contributing to infringement by resellers, consultants, and end-user customers, in accordance with 35 U.S.C. § 271(c), because Cisco offers to sell or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

48.     Cisco's 870, 880, 890, 1800, 1900, 2800, 2900, 3800 and 3900 Series Integrated Series Routers, 1841, 2800, and 3800 Series Integrated Series Routers, 7200 Series Routers, 7301 Routers, ASR 1000 Series Routers, 7200VXR Routers, 7600 Series Routers, and Catalyst 6500 Series Routers infringe at least system claims 33 and 35 of the '180 patent.  Cisco makes,

uses, sells, offers for sale, exports, imports, supplies, and/or distributes within and from the United States these products and thus directly infringes at least claims 33 and 35 of the '180 patent.

49.     Cisco's 870, 880, 890, 1800, 1900, 2800, 2900, 3800 and 3900 Series Integrated Series Routers, 1841, 2800, and 3800 Series Integrated Series Routers, 7200 Series Routers, 7301 Routers, ASR 1000 Series Routers, 7200VXR Routers, 7600 Series Routers, and Catalyst 6500 Series Routers, as well as Cisco's servers, master discs, and other media that store, cache, or distribute Cisco's software, infringe at least computer readable media claims 17, 20, 26, 28, 30 of the '180 patent.  Cisco makes, uses, sells, offers for sale, exports, imports, supplies, and/or distributes within and from the United States these products and media and thus directly infringes at least claims 17, 20, 26, 28, 30 of the '180 patent.

50.     The use of Cisco's 870, 880, 890, 1800, 1900, 2800, 2900, 3800 and 3900 Series Integrated Series Routers, 1841, 2800, and 3800 Series Integrated Series Routers, 7200 Series Routers, 7301 Routers, ASR 1000 Series Routers, 7200VXR Routers, 7600 Series Routers, and Catalyst 6500 Series Routers as intended by Cisco infringes at least method claims 1, 4, 10, 12, and 14 of the '180 patent.  Cisco uses these products and thus directly infringes at least claims 1, 4, 10, 12, and 14 of the '180 patent.

51.     In addition, Cisco provides its 870, 880, 890, 1800, 1900, 2800, 2900, 3800 and 3900 Series Integrated Series Routers, 1841, 2800, and 3800 Series Integrated Series Routers, 7200 Series Routers, 7301 Routers, ASR 1000 Series Routers, 7200VXR Routers, 7600 Series Routers, Catalyst 6500 Series Routers, and media that store, cache, or distribute Cisco's software to resellers, consultants, and end-user customers in the United States who, in turn, use

these products to infringe at least claims 1, 4, 10, 12, 14, 17, 20, 26, 28, 30, 33, and 35 of the '180.

52.     Cisco indirectly infringes by inducing infringement by resellers, consultants, and end-user customers, in accordance with 35 U.S.C. § 271(b), because Cisco actively induces infringement of the '180 patent by resellers, consultants, and end-user customers.

53.     Cisco indirectly infringes the '180 patent by contributing to infringement by resellers, consultants, and end-user customers, in accordance with 35 U.S.C. § 271(c), because Cisco offers to sell or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

54.     Cisco's Unified 6900, 7900, 8900, and 9990 Series IP Phones, IP Communicator, TelePresence System 3200, 3000, 1300 Series, 1100, 1000 and 500, Unified Communications Manager Business Edition, Unified Communications Manager Express, and Unified Communications Manager (including certain versions formerly known as Unified CallManager), infringe at least system claims 1, 2, 5, 14-17, 19-23, and 26-35 of the '504 patent.  Cisco makes, uses, sells, offers for sale, exports, imports, supplies, and/or distributes within and from the United States these products and thus directly infringes at least claims 1, 2, 5, 14-17, 19-23, and 26-35 of the '504 patent.

55.     Cisco's Unified 6900, 7900, 8900, and 9990 Series IP Phones, IP Communicator, TelePresence System 3200, 3000, 1300 Series, 1100, 1000 and 500, Unified Communications Manager Business Edition, Unified Communications Manager Express, and

Unified Communications Manager (including certain versions formerly known as Unified CallManager), as well as Cisco's servers, master discs, and other media that store, cache, or distribute Cisco's software, infringe at least computer readable media claims 36, 38-41, 43-47, and 50-59 of the '504 patent.  Cisco makes, uses, sells, offers for sale, exports, imports, supplies, and/or distributes within and from the United States these products and media and thus directly infringes at least claims 36, 38-41, 43-47, and 50-59 of the '504 patent.

56.     The use of Cisco's Unified 6900, 7900, 8900, and 9990 Series IP Phones, IP Communicator, TelePresence System 3200, 3000, 1300 Series, 1100, 1000 and 500, Unified Communications Manager Business Edition, Unified Communications Manager Express, and Unified Communications Manager (including certain versions formerly known as Unified CallManager), as intended by Cisco infringes at least method claim 60 of the '504 patent. Cisco uses these products and thus directly infringes at least claim 60 of the '504 patent.

57.     In addition, Cisco provides its Unified 6900, 7900, 8900, and 9990 Series IP Phones, IP Communicator, TelePresence System 3200, 3000, 1300 Series, 1100, 1000 and 500, Unified Communications Manager Business Edition, Unified Communications Manager Express, Unified Communications Manager (including certain versions formerly known as Unified CallManager), and media that store, cache, or distribute Cisco's software to resellers, consultants, and end-user customers in the United States who, in turn, use these products to infringe at least claims 1, 2, 5, 14-17, 19-23, 26-36, 38-41, 43-47, and 50-60 of the '504 patent.

58.     Cisco indirectly infringes by inducing infringement by resellers, consultants, and end-user customers, in accordance with 35 U.S.C. § 271(b), because Cisco actively induces infringement of the '504 patent by resellers, consultants, and end-user customers.

59.     Cisco indirectly infringes the '504 patent by contributing to infringement by resellers, consultants, and end-user customers, in accordance with 35 U.S.C. § 271(c), because Cisco offers to sell or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

60.     Cisco has infringed and/or continues to infringe one or more claims of the '135, '759, '180, and '504 patents as set forth above.  Cisco is liable for direct infringement, as well as indirect infringement by way of inducement and/or contributory infringement, for the '135, '759, '180, and '504 patents pursuant to 35 U.S.C. § 271 (a), (b), (c), and/or (f) as set forth above.  For VirnetX's claims of indirect infringement, Cisco's resellers, consultants, and end-user customers are direct infringers of the '135, '759, '180, and '504 patents.

61.     Cisco's acts of infringement have caused damage to VirnetX.  VirnetX is entitled to recover from Cisco the damages sustained by VirnetX as a result of Cisco's wrongful acts in an amount subject to proof at trial.  In addition, the infringing acts and practices of Cisco has caused, is causing, and, unless such acts and practices are enjoined by the Court, will continue to cause immediate and irreparable harm to VirnetX for which there is no adequate remedy at law, and for which VirnetX is entitled to injunctive relief under 35 U.S.C. § 283.

62.     Cisco has received actual notice of infringement prior to an by virtue of the filing of this lawsuit.  Cisco has also received constructive notice, as VirnetX has complied with the requirements of 35 U.S.C. § 287.

63.    Cisco has willfully infringed and/or does willfully infringe the '135, '759, '180 and '504 patents.

## COUNT FOUR

## PATENT INFRINGEMENT BY NEC

64.    VirnetX incorporates by reference paragraphs 1-63 as if fully set forth herein. As described below, NEC has infringed and/or continues to infringe the '135 and '504 patents.

65.    The use of NEC's SV7000 Communications Server, SV8100 Communications Server, SV8300 Communications Server, SV8500 Communications Server, NEC DT710 IP Terminal,  DT730 IP Terminal, DT750 IP Terminal, SP350 Softphone, and SP30 Softphone as intended by NEC infringes at least method claim 13 of the '135 patent.  NEC uses these products and thus directly infringes at least claim 13 of the '135 patent.

66.    In addition, NEC provides its SV7000 Communications Server, SV8100 Communications Server, SV8300 Communications Server, SV8500 Communications Server, NEC DT710 IP Terminal,  DT730 IP Terminal, DT750 IP Terminal, SP350 Softphone, and SP30 Softphone to NEC resellers, consultants, and end-user customers in the United States who, in turn, use these products to infringe at least claim 13 of the '135 patent.

67.    NEC indirectly infringes by inducing infringement by resellers, consultants, and end-user customers, in accordance with 35 U.S.C. § 271(b), because NEC actively induces infringement of the '135 patent by resellers, consultants, and end-user customers.

68.    NEC indirectly infringes the '135 patent by contributing to infringement by resellers, consultants, and end-user customers, in accordance with 35 U.S.C. § 271(c), because NEC offers to sell or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a

patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

69.     NEC's SV7000 Communications Server, SV8100 Communications Server, SV8300 Communications Server, SV8500 Communications Server, NEC DT710 IP Terminal, DT730 IP Terminal, DT750 IP Terminal, SP350 Softphone, and SP30 Softphone infringe at least system claims 1, 2, 5, 14-17, 19-23, and 26-35 of the '504 patent.  NEC makes, uses, sells, offers for sale, exports, imports, supplies, and/or distributes within and from the United States these products and thus directly infringes at least claims 1, 2, 5, 14-17, 19-23, and 26-35 of the '504 patent.

70.     NEC's SV7000 Communications Server, SV8100 Communications Server, SV8300 Communications Server, SV8500 Communications Server, NEC DT710 IP Terminal, DT730 IP Terminal, DT750 IP Terminal, SP350 Softphone, and SP30 Softphone, as well as NEC's servers, master discs, and other media that store, cache, or distribute NEC's software, infringe at least computer readable media claims 36, 38-41, 43-47, and 50-59 of the '504 patent.  NEC makes, uses, sells, offers for sale, exports, imports, supplies, and/or distributes within and from the United States these products and media and thus directly infringes at least claims 36, 38-41, 43-47, and 50-59 of the '504 patent.

71.     The use of NEC's SV7000 Communications Server, SV8100 Communications Server, SV8300 Communications Server, SV8500 Communications Server, NEC DT710 IP Terminal,  DT730 IP Terminal, DT750 IP Terminal, SP350 Softphone, and SP30 Softphone as intended by NEC infringes at least method claim 60 of the '504 patent.  NEC uses these products and thus directly infringes at least claim 60 of the '504 patent.

72.    In addition, NEC provides its SV7000 Communications Server, SV8100 Communications Server, SV8300 Communications Server, SV8500 Communications Server, NEC DT710 IP Terminal,  DT730 IP Terminal, DT750 IP Terminal, SP350 Softphone, SP30 Softphone, and media that store, cache, or distribute NEC's software to resellers, consultants, and end-user customers in the United States who, in turn, use these products to infringe at least claims 1, 2, 5, 14-17, 19-23, 26-36, 38-41, 43-47, and 50-60 of the '504 patent.

73.    NEC indirectly infringes by inducing infringement by resellers, consultants, and end-user customers, in accordance with 35 U.S.C. § 271(b), because NEC actively induces infringement of the '504 patent by resellers, consultants, and end-user customers.

74.    NEC indirectly infringes the '504 patent by contributing to infringement by resellers, consultants, and end-user customers, in accordance with 35 U.S.C. § 271(c), because NEC offers to sell or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

75.    NEC has infringed and/or continues to infringe one or more claims of the '135 and '504 patents as set forth above.  NEC is liable for direct infringement, as well as indirect infringement by way of inducement and/or contributory infringement, for the '135 and '504 patents pursuant to 35 U.S.C. § 271 (a), (b), (c), and/or (f) as set forth above.  For VirnetX's claims of indirect infringement, NEC's resellers, consultants, and end-user customers are direct infringers of the '135 and '504 patents.

76.     NEC's acts of infringement have caused damage to VirnetX.  VirnetX is entitled to recover from NEC the damages sustained by VirnetX as a result of NEC's wrongful acts in an amount subject to proof at trial.  In addition, the infringing acts and practices of NEC has caused, is causing, and, unless such acts and practices are enjoined by the Court, will continue to cause immediate and irreparable harm to VirnetX for which there is no adequate remedy at law, and for which VirnetX is entitled to injunctive relief under 35 U.S.C. § 283.

77.     NEC has received actual notice of infringement by virtue of the filing of this lawsuit.  NEC has also received constructive notice, as VirnetX has complied with the requirements of 35 U.S.C. § 287.

## DEMAND FOR JURY TRIAL

VirnetX hereby demands a jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, VirnetX prays for the following relief:

1.     A judgment that Aastra, Apple, Cisco, and NEC have directly infringed the '135 patent, contributorily infringed the '135 patent, and/or induced the infringement of the '135 patent;

2.     A judgment that Cisco has directly infringed the '759 patent, contributorily infringed the '759 patent, and/or induced the infringement of the '759 patent;

3.     A judgment that Cisco has directly infringed the '180 patent, contributorily infringed the '180 patent, and/or induced the infringement of the '180 patent;

4.     A judgment that Cisco and NEC have directly infringed the '504 patent, contributorily infringed the '504 patent, and/or induced the infringement of the '504 patent;

5.      A judgment that Apple has directly infringed the '151 patent, contributorily infringed the '151 patent, and/or induced the infringement of the '151 patent;

6.      A preliminary and permanent injunction preventing Aastra, Apple, Cisco, and NEC and their respective officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, from directly infringing, contributorily infringing, and/or inducing the infringement of the '135 patent;

7.      A preliminary and permanent injunction preventing Cisco and its respective officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, from directly infringing, contributorily infringing, and/or inducing the infringement of the '759 patent;

8.      A preliminary and permanent injunction preventing Cisco and its respective officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, from directly infringing, contributorily infringing, and/or inducing the infringement of the '180 patent;

9.      A preliminary and permanent injunction preventing Cisco and NEC and their respective officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, from directly infringing, contributorily infringing, and/or inducing the infringement of the '504 patent;

10.      A preliminary and permanent injunction preventing Apple and its respective officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, from directly infringing, contributorily infringing, and/or inducing the infringement of the '151 patent;

11.     A judgment that Cisco's infringement of the '135, '759, '180 and '504 patents has been willful;

12.     This case be found an exceptional case, entitling VirnetX to attorneys' fees incurred in prosecuting this action;

13.     A judgment and order requiring Defendants to pay VirnetX damages under 35 U.S.C. § 284, including supplemental damages for any continuing post-verdict infringement up until entry of the final judgment, with an accounting, as needed, and treble damages for willful infringement as provided by 35 U.S.C. § 284;

14.     A judgment and order requiring Defendants to pay VirnetX the costs of this action (including all disbursements);

15.     A judgment and order requiring Defendants to pay VirnetX pre-judgment and post-judgment interest on the damages awarded;

16.     A judgment and order requiring that in the event a permanent injunction preventing future acts of infringement is not granted, that VirnetX be awarded a compulsory ongoing licensing fee; and

17.     Such other and further relief as the Court may deem just and proper.

DATED:  August 11, 2010                    Respectfully submitted,

**McKOOL SMITH, P.C.**

/s/ Douglas A. Cawley
Douglas A. Cawley, *Lead Attorney*
Texas State Bar No. 04035500
E-mail: dcawley@mckoolsmith.com
Luke F. McLeroy
Texas State Bar No. 24041455
E-mail: lmcleroy@mckoolsmith.com
Bradley W. Caldwell
Texas State Bar No. 24040630
E-mail: bcaldwell@mckoolsmith.com
Jason D. Cassady
Texas State Bar No. 24045625
E-mail: jcassady@mckoolsmith.com
**McKool Smith P.C.**
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

Sam F. Baxter
Texas State Bar No. 01938000
E-mail: sbaxter@mckoolsmith.com
**McKool Smith P.C.**
104 East Houston, Suite 300
Marshall, Texas 75670
Telephone: (903) 923-9000
Telecopier: (903) 923-9099

Robert M. Parker
Texas State Bar No. 15498000
rmparker@pbatyler.com
Robert Christopher Bunt
Texas State Bar No. 00787165
rcbunt@pbatyler.com
**Parker, Bunt & Ainsworth, P.C.**
100 East Ferguson, Suite 1114
Tyler, Texas 75702
Telephone: (903) 531-3535
Telecopier: (903) 533-9687

**ATTORNEYS FOR PLAINTIFF
VIRNETX INC.**