# Exhibit A

E-FILED IN OFFICE - CL
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
**23-C-01896-S1**
**3/22/2023 6:02 PM**
**TIANA P. GARNER, CLERK**

## IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| Patricia Bell, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.    23-C-01896-S1 |
| | ) | |
| JAY E. JOHNSON; MARK LEGARDA; | ) | |
| MARTIN RUSSO; MATTHEW EAST; | ) | **JURY TRIAL DEMANDED** |
| DOUG BONDAR; MARK BARNES; | ) | |
| NANCY LIVINGSTON; KENDALL PATIENT | ) | |
| RECOVERY U.S., LLC; CARDINAL | ) | |
| HEALTH, INC. and JOHN DOE NOS. 1-10, | ) | |
| | ) | |
| Defendants. | ) | |

## RENEWAL[1] COMPLAINT FOR DAMAGES

Plaintiff Patricia Bell hereby files this Complaint for Damages against Defendants

Kendall Patient Recovery U.S., LLC, Cardinal Health, Inc. Jay E. Johnson, Mark Legarda,

Martin Russo; Matthew East, Doug Bondar, Mark Barnes, Nancy Livingston, and John Does

Nos. 1-10 (collectively referred to as the "Defendants"), showing this Court as follows:

### INTRODUCTION

1.      This action arises from injuries sustained by Patricia Bell as a proximate result of

exposure to ethylene oxide that was used on, stored on, and emitted from the premises owned,

operated, and/or controlled by Defendants. Defendants' unsafe practices using ethylene oxide for

sterilizing medical products, by and through their employees and agents, resulted in the escape

and emission of this toxic organic compound from the premises owned and/or controlled by

these entities, and contaminated the air in the adjacent community where Patricia Bell lived

---

[1] This is a renewal action as to Defendant Kendall Patient Recovery U.S., LLC only.

and/or worked.  As a proximate result of Defendants' unsafe ethylene oxide emissions, Plaintiff

contracted and was diagnosed with and is suffering from Breast Cancer.

2.      The State Court of Gwinnett County has original jurisdiction over this matter, and

this action is not subject to federal jurisdiction or removal to federal court under the provisions of

28 U.S.C. § 1331 or 1332 because the claims asserted in this action relate to a tort committed in

the State of Georgia, only Georgia state law claims are asserted, and one or more of the parties in

interest properly joined and served as a defendant in this action is a citizen of and domiciled in

the state in which the action has been brought. *See* 28 U.S.C. § 1441(b).

### RENEWAL ACTION AS TO SOME DEFENDANTS

3.      This is a renewal action as to Defendant Kendall Patient Recovery U.S., LLC

filed within the original statute of limitations pursuant to O.C.G.A. § 9-2-61.[2] The prior dismissal

against Defendant Kendall Patient Recovery U.S., LLC was not based on the merits and was

without prejudice. Plaintiff's claims in the present action are the same claims based on the same

facts and circumstances as the original action.

4.      Plaintiff properly served Defendant Kendall Patient Recovery U.S., LLC within

the statute of limitations, and the action renewed herein was not void and was such a valid action

as may be renewed under O.C.G.A. § 9-2-61.

5.      Pursuant to O.C.G.A. § 9-2-61, Plaintiff is entitled to re-file this suit within six

months of the dismissal date.

6.      Plaintiff has paid any and all costs from the dismissed action and all other

conditions precedent have been met.

---

[2] As to Defendants Cardinal Health, Inc., Jay Johnson, Mark Legarda, Martin Russo; Matthew East, Mark Barnes, Doug Bondar, Nancy Livingston, and John Does Nos. 1-10, this is a new filing.

**PARTIES, JURISDICTION AND VENUE**

7.      Patricia Bell ("Plaintiff") is a citizen, domicile, and resident of Georgia, and submits to the jurisdiction of this Court by filing this Complaint.

8.      Defendant Kendall Patient Recovery U.S., LLC ("KPR") was a limited liability company registered to do business in Georgia until its dissolution on August 19, 2022. Pursuant to O.C.G.A. § 14-4-161, Defendant KPR may be served with legal process through its registered agent at the time of dissolution, CT Corporation System located at 289 S Culver St., Lawrenceville, Gwinnett County, Georgia, 30046-4805.  Defendant KPR is subject to the *in personam* jurisdiction of this Court as it transacted significant business in Georgia, including owning and operating the medical sterilization facility located at 1430 Marvin Griffin Road, Augusta, Georgia 30913.

9.      Defendant Cardinal Health, Inc. is an Ohio corporation and can be served with legal process at its principal place of business located at 7000 Cardinal Place, Dublin, OH 43017. Cardinal Health is the parent company KPR.  Cardinal Health is subject to the *in personam* jurisdiction of this Court as it transacts significant business in Georgia. Cardinal Health, through its ownership, agency, joint venture, and as an alter ego of KPR, is responsible for its own negligence in the management and control of KPR and is also vicariously liable for KPR's negligent conduct.

10.     Defendant Mark Legarda ("Legarda") is a resident, domiciliary, and citizen of Columbia County, Georgia and can be served with legal process at 4112 Fox Bruch Drive, Evans, GA 30809-4856. Defendant Legarda has worked as the Sterilization Manager for KPR at the Augusta Facility since 2015. At all times relevant to this Complaint, Defendant Legarda acted in the course and scope of his employment and was an agent of KPR and Cardinal Health.

3

Legarda is liable for his own tortious acts/inactions and KPR and Cardinal Health are vicariously liable for the tortious acts of its employees and agents through the doctrine of respondeat superior.

11.     Defendant Jay Johnson ("Johnson") is a resident, domiciliary, and citizen of Columbia County, Georgia and can be served with legal process at 896 Sturbridge Dr, Evans, GA 30809-4516. Defendant Johnson was the Environmental Health, Safety Manager for KPR at the Augusta Facility from 2018 to 2021. At all times relevant to this Complaint, Defendant Johnson acted in the course and scope of his employment and was an agent of KPR and Cardinal Health. Johnson is liable for his own tortious acts/inactions and KPR and Cardinal Health are vicariously liable for the tortious acts of its employees and agents through the doctrine of respondeat superior.

12.     Defendant Martin Russo ("Russo") is a resident of Florida and can be served with legal process at 113 Sugarberry Drive, Jupiter, Florida 33458-7143. Defendant Russo was the Director of Operations for KPR at the Augusta Facility from 2014 to 2018. At all times relevant to this Complaint, Defendant Russo acted in the course and scope of his employment and was an agent of KPR and Cardinal Health. Russo is liable for his own tortious acts/inactions and KPR and Cardinal Health are vicariously liable for its employees and agents through the doctrine of respondeat superior.

13.     Defendant Matthew East ("East") is a resident, domiciliary, and citizen of Columbia County, Georgia and can be served with legal process at 2013 Pheasant Creek Dr 7C, Augusta, GA 30907-9222. Defendant East was the Environmental Health, Safety Manager for KPR at the Augusta Facility from 2005 through 2018. At all times relevant to this Complaint, Defendant East acted in the course and scope of his employment and was an agent of KPR and

Cardinal Health. East is liable for his own tortious acts/inactions and KPR and Cardinal Health

are vicariously liable for its employees and agents through the doctrine of respondeat superior.

14.     Defendant Doug Bondar ("Bondar") is a resident, domiciliary, and citizen of

Columbia County, Georgia and can be served with legal process at 757 Locks Way, Augusta,

GA 30907-4973. Defendant Bondar was the Senior Sterilization Manager for KPR at the

Augusta Facility from 1991 through 2013. Defendant Bondar designed and maintained the

sterilization system at the Augusta Facility and was responsible for overall equipment design,

specifications, installation, emission control systems, and sterilization process development. At

all times relevant to this Complaint, Defendant Bondar acted in the course and scope of his

employment and was an agent of KPR and Cardinal Health. Bondar is liable for his own tortious

acts/inactions and KPR and Cardinal Health are vicariously liable for its employees and agents

through the doctrine of respondeat superior,

15.     Defendant Mark Barnes ("Barnes") is a resident, domiciliary, and citizen of

McDuffie County, Georgia and can be served with legal process at 5328 Adams Chapel Rd.,

Dearing, GA 30808-2532. Defendant Barnes has worked as a Process Specialist in the

Sterilization Department for KPR at the Augusta Facility since 2009. Barnes's duties include

maintaining and repairing all sterilization equipment at the Augusta Facility. At all times relevant

to this Complaint, Defendant Barnes acted in the course and scope of his employment and was

an agent of KPR and Cardinal Health. Barnes is liable for his own tortious acts/inactions and

KPR and Cardinal Health are vicariously liable for their employees' and agents' tortious

acts/inactions through the doctrine of respondeat superior.

16.     Defendant Nancy Livingston ("Livingston") is a resident, domiciliary, and citizen

of Richmond County, Georgia and can be served with legal process at 3413 Gary Cir., Augusta,

GA 30906-3775. Defendant Livingston has worked as a Sterility Release Technician in the Sterilization Department for KPR at the Augusta Facility since 2012. At all times relevant to this Complaint, Defendant Livingston acted in the course and scope of his employment and was an agent of KPR and Cardinal Health. Livingston is liable for her own tortious acts/inactions and KPR and Cardinal Health are vicariously liable for their employees' and agents' tortious acts/inactions through the doctrine of respondeat superior.

17.     KPR and Cardinal Health have, at all relevant times, operated a facility in Richmond County, Georgia that sterilizes medical equipment using the chemical ethylene oxide ("EtO"). The facility (the "Augusta Facility") is located at 1430 Marvin Griffin Road, Augusta, Georgia 30913 and was opened in 1968.

18.     At all times relevant to this Complaint, Defendants Johnson, Legarda, Russo, East, Bondar, Barnes, and Livingston were high-level supervisors, managers, and/or operators employed by KPR and Cardinal Health at the Augusta Facility (hereinafter referred to as the "Augusta Managers"). At all times relevant to this Complaint, the Augusta Managers were acting in the course and scope of their employment and were agents of Cardinal Health and KPR (collectively, the "KPR Defendants"). The Augusta Managers were responsible for the operation, management, and/or control of the Augusta Facility, including the Augusta Facility's handling of EtO. Cardinal Health and KPR are vicariously liable for the tortious acts and omissions of all of their employees and agents, including, but not limited to, the Augusta Managers and any other individuals and agents who are determined to have contributed to Plaintiff's harm and damages.

19.     Defendants John Does No. 1 through 10 are believed to be Georgia or foreign corporations, partnerships, associations, adult individuals, or other legal entities that have transacted business in the State of Georgia and are responsible for the injuries and damages

incurred by Plaintiff. Once the identity and the whereabouts of the John Doe Defendants are established, said Defendant(s) will be served with a copy of summons and complaint as provided by law. Defendants John Does No. 1 through 10 are subject to the jurisdiction and venue of this Court.

20.     Jurisdiction is proper because all Defendants are residents of Georgia or are subject to the exercise of long-arm jurisdiction pursuant to O.C.G.A. § 9-10-91 et seq.. Defendants have transacted substantial business in Georgia, created and continue to maintain a public nuisance in Georgia, and committed tortious acts and omissions in Georgia, including the tortious acts and omissions giving rise to this Complaint.

21.     Venue is proper in this Court as one or more of the Defendants are citizens of and/or maintain a registered agent for service of process in Gwinnett County, Georgia and this suit is brought against Defendants as joint tortfeasors. G.A. Const. Art. I, § 2, ¶¶ III, IV & VI; O.C.G.A. §§ 9-10-31, 9-10-93, 14-2-510.

22.     This Court has jurisdiction over the subject matter of this Complaint and the Defendants.

## STATUTE OF LIMITATIONS

### Misrepresentation and Concealment

23.     Defendants negligently misrepresented, altered, and concealed the true nature and extent of EtO emissions from the Augusta Facility from government entities and the public in general, subjecting Plaintiff and those who live and work in the nearby community to an elevated cancer risk. These facts were not discovered until recently. Therefore, Plaintiff's claims are timely brought before the Court.

### Public Nuisance

24.     Pursuant to Georgia law, "[t]he rule that the statute of limitations does not run in favor of a nuisance, only applies to public nuisances, and grows out of the impropriety of imputing laches to the public." *See Davis v. City of Forsyth*, 275 Ga. App. 747, 750 (2005) (citing *Anneberg v. Kurtz*, 197 Ga. 188, 194(2) (1944)).  Plaintiff's public nuisance claims are timely brought before the court.

## RICO

25.     Pursuant to O.C.G.A. § 16-14-8, a plaintiff shall have five years from the last act to commence a civil lawsuit based upon the corrupt dealings of an organization. Therefore, Plaintiff's Rico claims are timely brought before the court.

## RELEVANT FACTS

26.     Plaintiff lived and/or worked in close proximity to Defendants' facility

27.     Plaintiff was diagnosed with Breast Cancer as a result of substantial chronic exposure to carcinogens emitted from Defendants' facility.

28.     At the time of diagnosis, Plaintiff was unaware that the disease was caused by exposure to Ethylene Oxide.

## <u>Ethylene Oxide</u>

29.     Ethylene oxide ("EtO") is an industrial organic chemical compound made by reacting ethylene and oxygen.

30.     At room temperature, EtO is a colorless gas with a sweet, ether-like odor that is rapidly absorbed after inhalation.[3]

---

[3] Agency for Toxic Substances and Disease Registry, "Medical Management Guidelines for Ethylene Oxide" https://www.atsdr.cdc.gov/MMG/MMG.asp?id=730&tid=133

31.     Solutions of EtO can penetrate human skin. Most exposures to EtO occur by inhalation or skin contact.

32.     In its gaseous form, EtO leaves no residue on the items it contacts.

33.     EtO is heavier than air, and can cause asphyxiation if exposure occurs in enclosed, poorly ventilated, or low-lying areas.

34.     EtO's sweet odor does not provide sufficient warning of hazardous concentrations, as EtO's odor is detected at 500 parts per million (ppm), while OSHA's (Occupational Health and Safety Administration) permissible exposure limit is 1 ppm averaged over eight hours.

35.     EtO is a highly reactive and mutagenic agent that reacts with many constituents of body tissue causing cellular and tissue dysfunction and destruction.

36.     Although EtO was first synthesized in 1859, it achieved industrial importance during World War I as a precursor to both the coolant ethylene glycol (anti-freeze) and the chemical weapon mustard gas.

37.     Due to its flammability and extreme explosiveness, EtO is used as a main component of thermobaric weapons and must be handled and shipped as a refrigerated liquid to control its hazardous nature.

38.     The half-life of EtO in the atmosphere, assuming ambient concentrations of $5 \times 10^5$ hydroxyl radicals/cm$^3$, is 211 days. EtO degrades by reaction with hydroxyl radicals that are photochemically produced. Atmospheric EtO is not removed by rain or absorption into aqueous aerosols.[4]

39.     Since the 1940's, EtO has been known to be mutagenic in many organisms, from viruses to mammals, by causing chromosomal damage.

---

[4] https://www.ncbi.nlm.nih.gov/books/NBK304417/

40.     Exposure to elevated levels of EtO has been shown to cause lymphoid cancers and tumors of the brain, lung, connective tissue, uterus, and mammary gland in animals exposed by inhalation, as well as an increase in mononuclear cell leukemia and brain tumors in rats.

41.     In a 1977 article, the National Institute of Occupational Safety and Health ("NIOSH") concluded that occupational exposure to ethylene oxide may increase the frequency of genetic mutations in humans. The NIOSH report also raised concerns about the potential carcinogenicity of ethylene oxide.

42.     In 1981, NIOSH released a subsequent report which recommended that EtO be regarded in the workplace as a potential occupational carcinogen. NIOSH based its recommendation on new evidence of EtO's carcinogenic, mutagenic, and reproductive hazards, including studies demonstrating that EtO induced cancer in experimental animals. Specifically, the studies showed an increase in instances of leukemia in line with increases of EtO concentrations, in addition to other adverse effects on reproductive health. An epidemiological investigation of Swedish workers exposed to EtO also revealed increased incidences of leukemia and other cancers.

43.     In 1984, the Occupational Safety and Health Administration (OSHA) promulgated a stricter standard of permissible exposure limits for occupational exposure to EtO. The basis for this action was OSHA's determination, based on epidemiological and experimental evidence, that EtO "presents a carcinogenic, mutagenic, genotoxic, reproductive, neurologic and sensitization hazard to workers."[5]

44.     In 1985, the U.S. Department of Health and Human Services published the Fourth Annual Report on Carcinogens and classified EtO as reasonably anticipated to be a human carcinogen.

---

[5] 49 FR 25734-01, 1984 WL 146443.

45.     In the early 1990s, NIOSH published the largest and most informative epidemiological study of ethylene oxide. The study analyzed over 18,000 employees working with EtO at fourteen different industrial facilities sterilizing medical equipment and food spices. The study found sufficient evidence to support a causal link between exposure to ethylene oxide and increased mortality from lymphatic and hematopoietic cancers. Follow-up studies have additionally demonstrated an association between EtO exposure and breast cancer.

46.     In 1994, as a result of these findings, the World Health Organization ("WHO") listed EtO as a Group 1 human carcinogen—the agency's highest risk classification—finding ethylene oxide to be carcinogenic to humans.

47.     In 2000, the U.S. National Institutes of Health ("NIH") revised EtO's designation as "reasonably anticipated to be a human carcinogen" to "known to be a human carcinogen" based on sufficient evidence of carcinogenicity from human epidemiological studies and studies on carcinogenetic mechanisms of EtO.[6]

48.     In December of 2016, in its IRIS study, the U.S. Environmental Protection Agency ("EPA") changed its designation of EtO from "probably carcinogenic" to "carcinogenic." The IRIS study is incorporated by reference herein.[7]

49.     The International Agency for Research on Cancer (IARC), in 2018, categorized EtO as carcinogenic to humans.

50.     A large epidemiologic study performed by NIOSH, on sterilizer workers exposed to EtO, reported positive exposure-response trends to lymphohematopoietic cancer mortality, primarily in males and in particular for lymphoid cancer (i.e., non-Hodgkin lymphoma [NHL],

---

[6] https://ntp.niehs.nih.gov/ntp/roc/content/profiles/ethyleneoxide.pdf
[7] Evaluation of the Inhalation Carcinogenicity of Ethylene Oxide, published December 2016. https://cfpub.epa.gov/ncea/iris/iris_documents/documents/toxreviews/1025tr.pdf

myeloma, and lymphocytic leukemia), and for breast cancer mortality in females. The positive exposure-response trend for female breast cancer was confirmed in an incidence study based on the same worker cohort. (Steenland et al., 2003). There is further supporting evidence for an association between EtO and breast cancer from additional studies.

51.     Non-occupational exposure to EtO may also come from tobacco, residues in spices, and other food products (Jensen, 1988; Fowles et al., 2001) and some skin-care products (Kreuzer, 1992). EtO is also formed during the combustion of fossil fuel, but the amount is expected to be negligible. Any non-occupational exposures to EtO are considered minor.[8]

### EtO's Regulatory Framework

52.     Air pollutants are defined as either criteria air pollutants or hazardous air pollutants by the U.S. Environmental Protection Agency ("EPA"). EtO is classified and regulated as a Hazardous Air Pollutant ("HAP") by the EPA.

53.     HAPs, or air toxics, are designated as such because they are either known or suspected carcinogens, or causative agents of other serious health problems such as neurological, reproductive, or respiratory problems.

54.     The Clean Air Act ("CAA") identifies EtO as a HAP because it is carcinogenic in humans, is highly mutagenic and teratogenic (an agent or factor that causes malformation of an embryo) and has significant acute and sub-chronic exposure health effects.

55.     Unlike criteria air pollutants, air toxics regulated by the EPA, like EtO, have no universal, predefined risk levels that clearly delineate acceptable or unacceptable thresholds.

---

[8] Ethylene Oxide, in Chemical Agents and Related Occupations,
https://www.ncbi.nlm.nih.gov/books/NBK304417/

56.     Under Section 112 of the Clean Air Act (Air Toxics), the EPA is required to develop national emission standards for hazardous air pollutants ("NESHAP") for source categories that have been identified as major and area sources of HAPs.

57.     The NESHAP requirement applies to sources that use at least 1 ton of EtO in sterilization operations in each 12-month period.

58.     Despite stating that it has no predefined risk level for acceptable exposure levels, the EPA has implemented a two-step risk-based decision framework for the NESHAP program which first sets an upper limit of acceptable risk at 1-in-10,000, or 100-in-1 million, lifetime cancer risk for the most exposed person. A cancer risk of 1 in 10,000 means that if 10,000 people are exposed to the same concentration of a pollutant continuously over 70 years, one person would likely contract cancer from this exposure. This risk is in addition to any risk borne by a person not exposed to the air toxic.

59.     In order to protect as many people as possible, the NESHAP framework next sets a target of an individual lifetime risk level of no higher than 1-in-1 million. Other health and risk factors are considered in order to complete an overall judgement on acceptability.[9]

60.     Georgia EPD regulates air quality in the State of Georgia under the Georgia Air Quality Act, and also implements regulations under the Clean Air Act pursuant to a delegation of authority from the EPA.

61.     Georgia EPD's level of concern for EtO is 0.02 micrograms per cubic meter ($\mu g/m^3$) of air, which represents an additional cancer risk of 100 cases for every million people exposed over the course of their lifetime.[10]

---

[9] https://www.epa.gov/national-air-toxics-assessment/nata-frequent-questions#risk1
[10] https://www.epa.gov/il/ethylene-oxide-emissions-frequent-questions

62.     In the course of regulating air quality, Georgia EPD coordinates with the EPA in the adoption of rules and relies upon information and studies done by the EPA. The Georgia EPD does not require any stricter testing, reporting, recording, or risk assessment than the EPA.

63.     In 2006, the EPA began a 10-year study to better understand the risks of EtO to human health. The results prompted the agency to move EtO from the list of chemicals that could cause cancer to the list of those that definitively cause cancer. The EPA also updated a key risk number for the chemical to reflect that EtO was 30 times more likely to cause certain types of cancers than scientists had previously predicted.

64.     In 2018, the EPA used that new risk value to create a periodic report that assesses health risks from releases of airborne toxins in the U.S. That report, called the National Air Toxics Assessment ("NATA"), flagged 109 census tracts across the country where cancer risks were higher because of exposure to airborne toxins. Most of the risks were driven by EtO.

### Cancer Cluster – Augusta, GA

65.     For the community surrounding the KPR sterilization facility in Augusta, NATA lists a total cancer risk of 64-in-1 million, based on KPR's self-reported emissions for 2014.[11]

66.     The EPA deems the cancer risk from pollution to be unacceptable when it exceeds 100 cases for every one million people who are exposed to a chemical over the course of their lifetime.

67.     The 2018 NATA is a model created on the assumed exposure of a facility's *self-reported* 2014 emissions. The Augusta Facility's self-reported emissions have historically been considerably higher than in recent years, which suggests the cancer risks surrounding KPR's facility are vastly understated. Moreover, prior to the 2018 NATA study, ***KPR retroactively***

---

[11] https://gispub.epa.gov/NATA/

***reduced its 2014 emissions by nearly 1,000 pounds***. Thus, the actual cancer risk is likely magnitudes higher.

## **KPR's Operations**

68.     KPR began operations in Georgia in Augusta, Georgia in 1968.

69.     In 1968, KPR began using, and continues to use, EtO to sterilize medical devices in Augusta, Georgia.

70.     KPR's Augusta, Georgia facility has continuously used EtO since opening without any known long-term periods of non-use. Through this process, KPR emits EtO into the air, allowing it to disburse and be carried by wind throughout the area surrounding its facility.

71.     Resultingly, local residents and workers have been exposed to carcinogenic EtO for decades, all while KPR knew that EtO is dangerous, toxic, mutagenic, and carcinogenic.

72.     Before 1987, KPR did not report or provide measurements for the amount of EtO its sterilization facility regularly released into the atmosphere.

73.     The EPA maintains a Toxic Release Inventory ("TRI") which includes annual self-reported emissions data from industrial facilities using EtO and other toxic chemicals that pose a threat to human health and the environment.

74.     A review of TRI data shows EtO emissions from KPR's Augusta Facility over the course of more than twenty years. *See* Figures 1-3.



(**Figure 1**, showing EtO emissions from the Augusta Facility between 1987 and 1998).



(**Figure 2**, showing emissions from KPR between 1999 and 2018)

75.     For the first time in its history, KPR self-reported emissions in 1987 and admitted that 54,994 lbs. of EtO was released into the atmosphere that year. By 1989, KPR's EtO emissions surged to 110,524 lbs.

16

| Year | Fugitive Emissions (in lbs) | Stack Emissions (in lbs) |
|---|---|---|
| 1988 | 0 | 54,990 |
| 1989 | 3,697 | 106,827 |
| 1990 | 21,000 | 83,000 |
| 1991 | 40,000 | 12,000 |
| 1992 | 32,000 | 13,000 |
| 1993 | 32,500 | 13,000 |
| 1994 | 28,845 | 13,966 |
| 1995 | 27,310 | 13,781 |
| 1996 | 16,100 | 14,800 |
| 1997 | 16,078 | 12,661 |
| 1998 | 14,334 | 11,188 |
| 1999 | 12,044 | 300 |
| 2000 | 11,320 | 292 |
| 2001 | 11,914 | 553 |
| 2002 | 7,977 | 542 |
| 2003 | 8,336 | 682 |
| 2004 | 8,348 | 664 |
| 2005 | 6,926 | 602 |
| 2006 | 6,065 | 580 |
| 2007 | 5,812 | 558 |
| 2008 | 5,534 | 493 |
| 2009 | 3,965 | 207 |
| 2010 | 2,929 | 200 |
| 2011 | 1,237 | 179 |
| 2012 | 1,264 | 182 |
| 2013 | 1,089 | 144 |
| 2014 | 250 | 72 |
| 2015 | 250 | 79 |
| 2016 | 250 | 73 |
| 2017 | 145 | 139 |
| 2018 | 137 | 122 |

**(Figure 3) (*On 6/29/2017, KPR retroactively reduced its 2014-15 reported EtO emissions).**

76.     From 1999 to 2008, KPR consistently emitted between approximately 6,000 and

12,500 lbs of carcinogenic EtO annually from the Augusta Facility. From 1992 to 1998, KPR

17

consistently emitted between approximately 25,500 and 45,000 lbs of EtO annually. From 1987 to 1991, KPR emitted between approximately 52,000 and 110,500 lbs of EtO annually.

77.     The data and figures appear to show that EtO emissions from the Augusta Facility drastically decreased after 2013. However, on June 29, 2017, in response to the EPA's December 2016 publication confirming that EtO is carcinogenic in humans via long-term inhalation exposure, Defendant Russo of KPR retroactively revised the Augusta Facility's 2014-2015 EtO emissions reported to the EPA, including reducing its 2014[12] emissions from 1,236 to 322 pounds and its 2015[13] emissions from 1,297 to 329 pounds. In total, KPR reduced its 2014-2015 reported EtO emissions by 1,882 pounds.

78.     Defendants retroactively reduced KPR's 2014-2015 reported EtO emissions for the purpose of concealing the true nature and extent of the Augusta Facility's EtO emissions, misleading GA EPD and other government entities, and ensuring that the Augusta Facility did not get flagged as causing an elevated cancer risk in the EPA's 2018 National Air Toxics Assessment.[14]

79.     A significant portion of KPR's EtO emissions include fugitive emissions from leaking valves and other equipment. Fugitive emissions occur when EtO escapes from anywhere other than the facility's stack and is not captured by pollution controls. These emissions are only based on estimates due to their elusive nature. Between 1991 and 2018, KPR's fugitive emissions

---

[12] https://enviro.epa.gov/enviro/tri_formr_partone_v2.get_thisone?rpt_year=2014&dcn_num=1314215598297&ban_flag=Y (last accessed March 19, 2023).
[13] https://enviro.epa.gov/enviro/tri_formr_partone_v2.get_thisone?rpt_year=2015&dcn_num=1315215598311&ban_flag=Y (last accessed March 19, 2023).
[14] Every three years, beginning in 1996, the U.S. EPA prepares a National Air Toxics Assessment.

were greater that than the controlled emissions and in 1999 they reached approximately 40x the controlled emissions. *See* Figure 3.

80.     On August 14, 2002, KPR reported that "[a] door gasket failed and caused 15.92 pounds of ethylene oxide to be vented to the atmosphere," prompting a response from EPD's Emergency Response Team.[15]

81.     On October 16, 2002, Doug Bondar of KPR reported that "[t]hat personnel first had knowledge of the release of an unknown quantity [later determined to be 45 pounds] of Ethylene Oxide at 0800 Hours. They then took the time to calculate the amount of release and once they determined that the amount exceeded the Rq they contacted their local Ema, The Fire Department, Dnr and Nrc."[16] This report prompted a response from EPD's Emergency Response Team.

82.     On August 7, 2004, Doug Bondar of KPR reported that 29.6 pounds of ethylene oxide had been released into the atmosphere due to a system malfunction, prompting a response from EPD's Emergency Response Team.[17]

83.     On March 28, 2005, KPR reported that 35.42 pounds of ethylene oxide had leaked into the atmosphere over a 64-hour period from a "1/4 Inch Tube Instrumentation Manual Plug Valve," prompting a response from EPD's Emergency Response Team.[18]

84.     On February 26, 2006, a KPR employee reported that "there was a release of 42.9 lbs. of ethylene oxide inside the facility into the waste water stream from a reclamation tank due to regular drainage," prompting a response from EPD's Emergency Response Team.[19]

---

[15] https://cts.gaepd.org/Public/ComplaintDetails/18374
[16] https://cts.gaepd.org/Public/ComplaintDetails/19697
[17] https://cts.gaepd.org/Public/ComplaintDetails/28390
[18] https://cts.gaepd.org/Public/ComplaintDetails/31597
[19] https://cts.gaepd.org/Public/ComplaintDetails/37364

85.     On September 18, 2006, KPR reported that 15.66 pounds of ethylene oxide had leaked into the atmosphere after "a shaft seal failed" causing "a series of small leaks over 2 hours," prompting a response from EPD's Emergency Response Team.[20]

86.     On March 22, 2007, KPR reported that 18 pounds of ethylene oxide had leaked due to the malfunction of a gas sterilizing equipment, prompting a response from EPD's Emergency Response Team.[21]

87.     On October 8, 2007, KPR reported that 27.15 pounds of ethylene oxide had been released from a recovery tank due to an unknown cause, prompting a response from EPD's Emergency Response Team.[22]

88.     On July 7, 2008, Doug Bondar of KPR reported that 19.5 pounds of ethylene oxide had been released into the atmosphere due to "a leaking check valve," prompting a response from EPD's Emergency Response Team. [23]

89.     On March 17, 2010, Matthew East of KPR reported that 11.58 pounds of ethylene oxide had leaked due to a "A Slow Deteriation [sic] Of A Seal In A Sterilizing Machine," prompting a response from EPD's Emergency Response Team.[24] GA EPD later determined that the final amount of EtO released was actually 13.7 pounds.

90.     On May 22, 2011, KPR reported a release of 15.39 pounds of ethylene oxide due to a "a faulty circulation fan gasket," prompting a response from EPD's Emergency Response Team.[25]

---

[20] https://cts.gaepd.org/Public/ComplaintDetails/41831
[21] https://cts.gaepd.org/Public/ComplaintDetails/45247
[22] https://cts.gaepd.org/Public/ComplaintDetails/48970
[23] https://cts.gaepd.org/Public/ComplaintDetails/53051
[24] https://cts.gaepd.org/Public/ComplaintDetails/61382
[25] https://cts.gaepd.org/Public/ComplaintDetails/65400

91.     On October 20, 2012, KPR reported that approximately 12 pounds of ethylene oxide was released to the atmosphere due to a broken gasket on the sterilizer door, prompting a response from EPD's Emergency Response Team.[26]

92.     KPR's operation of its Augusta Facility, and EtO sterilization, is regulated based on its Air Quality Permit ("Permit"), which GA EPD issued to KPR in accordance with the provisions of the Georgia Air Quality Act, O.C.G.A. § 12-9-1, *et seq*.

93.     KPR claims it is in full compliance with laws and regulations surrounding the safe use of EtO, that its facility has a permit for EtO emissions, and that its facility operates well below the threshold allowed by its permit.

94.     The Augusta Managers all personally witnessed, directed, cooperated, controlled, and/or participated in the improper disposal and/or release of fugitive emissions of EtO from the Augusta Facility.

95.     Since as early as 1991, Defendant Bondar has personally witnessed, directed, cooperated, controlled, and/or participated in the improper disposal and/or release of fugitive emissions of EtO from the Augusta Facility.

96.     Since as early as 2005, Defendant East has personally witnessed, directed, cooperated, controlled, and/or participated in the improper disposal and/or release of fugitive emissions of EtO from the Augusta Facility

97.     Since as early as 2015, Defendant Legarda has personally witnessed, directed, cooperated, controlled, and/or participated in the improper disposal and/or release of fugitive emissions of EtO from the Augusta Facility.

---

[26] https://cts.gaepd.org/Public/ComplaintDetails/69547

98.     Since as early as 2009, Defendant Barnes has personally witnessed, directed, cooperated, controlled, and/or participated in the improper disposal and/or release of fugitive emissions of EtO from the Augusta Facility.

99.     Since as early as 2018, Defendant Johnson has personally witnessed, directed, cooperated, controlled, and/or participated in the improper disposal and/or release of fugitive emissions of EtO from the Augusta Facility.

100.    Since as early as 2013, Defendant Livingston has personally witnessed, directed, cooperated, controlled, and/or participated in the improper disposal and/or release of fugitive emissions of EtO from the Augusta Facility.

101.    EtO is released daily into the atmosphere from KPR's Augusta Facility, not only through the stack atop the Facility but also as unmonitored fugitive emissions.

102.    The overall design of the Augusta Facility and the lack of training received by KPR employees partially contributed to the facility's fugitive emissions.

103.    USEPA defines "fugitive emissions" in the regulations promulgated under Title V of the Clean Air Act as "those emissions which could not reasonably pass through a stack, chimney, vent, or other functionally-equivalent opening." 40 CFR § 70.2.

104.    Ga. Comp. R. & Regs. 391-3-1-.02(2)(a)(l) provides: "No person owning, leasing or controlling the operation of any air contaminant sources shall willfully, negligently or through failure to provide necessary equipment or facilities or to take necessary precautions, cause, permit, or allow the emission from said air contamination source or sources of such quantities of air contaminants as will cause, or tend to cause, by themselves or in conjunction with other air contaminants a condition of air pollution in quantities or characteristics or of a duration which is injurious or which unreasonably interferes with the enjoyment of life or use of property in such

area of the State as is affected thereby. Complying with any of the other paragraphs of these rules and regulations or any subparagraphs thereof, shall in no way exempt a person from this provision."

## CAUSES OF ACTION[27]

## COUNT I: NEGLIGENCE (STATE STATUTORY AND COMMON LAW)
### (*All Defendants*)

105.    Principles of negligence, including the applicable duties, breach, causation and damages for harm done are set forth under Georgia law in Title 51, Chapters 1, 2, and 12, as well as Georgia common law.

106.    Plaintiff was exposed to harmful levels of EtO as a proximate result of the acts and omissions of each KPR Defendant and John Does No. 1-10, individually and collectively (collectively referred to in Count I as "Defendant" or "Defendants").

107.    As a proximate result of each Defendants' negligent acts and omissions, individually and collectively, Plaintiff developed and was otherwise diagnosed as suffering from cancer.

108.    At all times relevant to this Complaint, each Defendant owed a duty to exercise reasonable care in the operation of the Augusta Facility, including regulating the emission of EtO and truthfully disclosing to the public the accurate levels of EtO being released into the air.

109.    At all times relevant hereto, each Defendant knew, or should have known, of the carcinogenic properties of EtO generally and also of that being omitted due to the work being conducted at the Augusta Facility.

---

[27] None of these claims involve the construction or application of federal law.

110.     At all times relevant hereto, each Defendant knew or should have known the foreseeability of harm to others, like Plaintiff, if they emitted dangerous amounts of EtO into the air via direct emissions and fugitive emissions.

111.     Defendants breached their duty in one or more of the following ways:

a.  Emitting excessive, unnecessary, and/or dangerous volumes of EtO into the air from the Augusta Facility;

b.  Using EtO as part of its sterilization process when safer alternatives could accomplish the same or similar business purposes without presenting the same level of risk to human health and well-being;

c.  Disregarding safe methods to adequately control EtO emissions from the Augusta Facility;

d.  Failing to provide necessary equipment or facilities and/or take necessary precautions to prevent the improper disposal and/or release of fugitive emissions of EtO from the Augusta Facility;

e.  Witnessing, directing, cooperating, controlling, causing, allowing, contributing to, and/or participating in the improper disposal and/or release of fugitive emissions of EtO from the Augusta Facility;

f.  Failing to report fugitive emissions of EtO;

g.  Repeatedly allowing large quantities of EtO to be released into the surrounding community from the Augusta Facility due to a lack of diligence and prolonged operator error;

h.  Placing their own economic interest above the health and well-being of those who live or work in the community near the Augusta Facility;

i.  Failing to warn or advise Plaintiff, as well as those who live or work in the community near the Augusta Facility, that they were and are being exposed to EtO;

j.  Failing to warn or advise Plaintiff, as well as those who live or work in the community near the Augusta Facility that they were and are breathing in EtO;

k.  Failing to warn and/or advise Plaintiff, as well as those who live or work in the community near the Augusta Facility, that it was emitting, and continues to emit, a known carcinogen into the air from its Augusta Facility;

l.  Failing to employ safe policies, procedures, or methods to adequately control, reduce, minimize, and/or mitigate EtO emissions from the Augusta Facility;

m.  Failing to adequately study and test the effect of its EtO emission from the Augusta Facility on the quality of air;

n.  Misleading national, state, and local government entities and the public in general about the nature and extent of EtO emissions from the Augusta Facility;

o.  Concealing the nature and extent of EtO emissions from the Augusta Facility from government entities and the public;

p.  Failing to adequately study and test the effect of its EtO emissions from the Augusta Facility on the health and well-being of those who live and work in the nearby community; and

q.  Subjecting Plaintiff and those who live and work near the Augusta Facility to an elevated cancer risk.

112.    The Defendants were additionally negligent in the hiring, training, supervision, and retention of their employees and agents, and other employees and agents who participated in the activities of the Augusta Facility.

113.     Defendants' negligent, grossly negligent, willful, wanton, and reckless conduct, as described herein, was the proximate cause of Plaintiff's illness and injuries, as a result of which Plaintiff has suffered damages in the form of medical expenses, physical disability, mental and physical pain and suffering, extreme emotional distress, and other damages as can be proven at a trial of this action.

114.     Plaintiff is entitled to recover damages against each Defendant for their individual and collective acts of negligence in an amount to be proven at trial.

### COUNT II: PUBLIC NUISANCE (GEORGIA COMMON LAW)
### *(All Defendants)*

115.     At all relevant times, the KPR Defendants (collectively referred to in Count II as "Defendant" or "Defendants") knew or should have known EtO to be hazardous and harmful to humans.

116.     At all relevant times, Defendants knew or should have known that the levels of EtO gas emitted from the Augusta Facility would have a toxic, poisonous, and deleterious effect upon the health, safety, and wellbeing of people living and working in the community.

117.     Defendants knew or should have known that the levels of EtO gas emitting from the Augusta Facility have a toxic, poisonous, and deleterious effect upon the health, safety, and wellbeing of persons breathing it on a regular basis.

118.     Despite having knowledge that the levels of EtO gas emitting from the Augusta Facility would have a toxic, poisonous, and deleterious effect upon those in the surrounding community, Defendants continued their operation, maintenance, and use of the Augusta Facility, and Defendants still continue their operation, maintenance, and use of the Augusta Facility and continue to endanger the general public who live and work in the area surrounding the Augusta

Facility by causing the those in the community to breathe air containing high levels of EtO on a routine and constant basis, causing a substantially elevated risk of cancer.

119.    Defendants misled national, state, and local government leaders and regulators regarding Defendants' emissions and leaks of EtO into the surrounding community.

120.    Defendants' emissions of carcinogenic EtO caused direct harm to everyone in the community who came into contact with its hazardous emissions.

121.    Defendants had a duty to warn, identify, and disclose the presence of the toxic levels of EtO gas emitting from the Augusta Facility and have failed to warn the public of the toxic, poisonous, and deleterious effect upon the health, safety, and wellbeing of those in the community where Defendants conducts their business.

122.    The tortious actions and omissions of Defendants constitute a public nuisance, causing dangers to all members of the public who come into contact with it, and caused special damage to Plaintiff, including but not limited to extreme mental and emotional damage and physical pain and suffering. Because of the tortious actions of Defendants, Plaintiff has sustained and will continue to sustain severe and permanent damage to Plaintiff's health due to the emission of EtO.

123.    Defendants thereby knowingly and/or recklessly subjected a considerable and increasing number of individuals from the public at large to the harm inherent in exposure to the levels of its emissions of carcinogenic EtO.

124.    The tortious actions of Defendants constitute a public nuisance and caused special damage to Plaintiff's health, including but not limited to extreme mental and emotional damage and physical pain and suffering.

125.     Defendants failed to act on their knowledge of the toxic levels of EtO gas emitting from the Augusta Facility and failed to act to correct, prevent, or warn of the general public of the dangerous environment created through Defendants' emissions of EtO, which continuously invaded and contaminated the areas surrounding the Augusta Facility including Plaintiff's places of work. Defendants' failure to take appropriate action to remedy or reduce the danger to the public, including Plaintiff, allowed the toxic emissions from the Augusta Facility to continue unabated, thereby creating a nuisance that continues to this day.

126.     As a proximate result of the Defendants' operation, maintenance, and use of the Augusta Facility, and the public nuisance created thereby, Plaintiff, and the general public's, right to breathe clean air without dangerous levels of carcinogens such as EtO was eliminated and/or severely diminished.

127.     As a proximate result of Defendants' operation, maintenance, and use of the Augusta Facility, and the public nuisance created thereby, EtO continuously invaded and contaminated the community surrounding the Augusta Facility, including Plaintiff's places of work.

128.     As a proximate result of Defendants' use and emission of EtO, and the public nuisance created thereby, Plaintiff and the general public were exposed to and inhaled a significant, meaningful, and more than *de minimis* amount of EtO.

129.     As a proximate result of Defendants' use and emission of EtO, and the public nuisance created thereby, all members of the general public who came into contact with it suffered damages, and specifically, Plaintiff suffered special harm and sustained and will continue to sustain special damages, including but not limited to, severe and permanent damage to Plaintiff's health due to the emission of EtO and Plaintiff's exposure to it.

130.     As a proximate result of Plaintiff's inhalation of EtO from the Augusta Facility, Plaintiff has suffered damages in the form of medical expenses, physical disability, mental and physical pain and suffering, extreme emotional distress, and other damages to be proven at trial.

## COUNT III: PUBLIC NUISANCE (O.C.G.A. § 41-1-3, *et. seg.*)
### *(All Defendants)*

131.     A public nuisance is one that "tends to the immediate annoyance of the public in general, is manifestly injurious to the public health or safety, or tends greatly to corrupt the manners and morals of the public." The negligence by the KPR Defendants (collectively referred to in Count III as "Defendant" or "Defendants") in failing to act to correct, prevent, or warn the general public of the dangerous environment created through Defendants' emissions of EtO, which continuously invaded and contaminated the areas surrounding the Augusta Facility, including Plaintiff's places of work, was and is injurious to public health and safety and contributes to the corruption of the manners and morals of the public, including, but not limited to, the residents in the areas surrounding the Augusta Facility and all other members of the general public who came near the facility..

132.     Defendants knew or should have known that the levels of EtO gas emitting from the Augusta Facility would have a toxic, poisonous, and deleterious effect upon the health, safety, and wellbeing of persons breathing the gas on a regular basis.

133.     Despite having knowledge that the levels of EtO gas emitting from the Augusta Facility would have a toxic, poisonous, and deleterious effect upon those in the surrounding community, Defendants continued their operation, maintenance, and use of the Augusta Facility, and Defendants continue its operation, maintenance, and use of the Augusta Facility and continue to endanger the general public who live and work in the area surrounding the Augusta

Facility by causing the those in the community to breathe air containing high levels of EtO on a routine and constant basis, causing a substantially elevated risk of cancer.

134.     Defendants misled state and local government leaders and regulators regarding Defendants' emissions and leaks of EtO into the surrounding community.

135.     Defendants' emissions of carcinogenic EtO caused direct harm to everyone in the community who came into contact with its hazardous emissions.

136.     Defendants had a duty to warn, identify, and disclose the presence of the toxic levels of EtO gas emitting from its Augusta Facility and have failed to warn the public of the toxic, poisonous, and deleterious effect upon the health, safety, and wellbeing of those in the community where Defendants conduct their business.

137.     The tortious actions and omissions of Defendants constitute a public nuisance, causing dangers to all members of the public who come into contact with it, and causing special damage to Plaintiff, including but not limited to extreme mental and emotional damage and physical pain and suffering. Because of the tortious actions of Defendants, Plaintiff has sustained and will continue to sustain severe and permanent damage to Plaintiff's health due to the emission of EtO.

138.     Defendants thereby knowingly and/or recklessly subjected a considerable and increasing number of individuals from the public at large to the harm inherent in the levels of its emissions of carcinogenic EtO.

139.     The tortious actions of Defendants constitute a public nuisance and caused special damage to Plaintiff's health, including but not limited to extreme mental and emotional damage and physical pain and suffering.

140.     Defendants failed to act on their knowledge of the toxic levels of EtO gas emitting from its Augusta Facility and failed to act to correct, prevent, or warn the general public of the dangerous environment created through Defendants' emissions of EtO, which continuously invaded and contaminated the areas surrounding the Augusta Facility, including Plaintiff's places of work. Defendants' failure to take appropriate action to remedy or reduce the danger to the public, including Plaintiff, allowed the toxic emissions from the Augusta Facility to continue unabated, thereby creating a nuisance that continues to this day.

141.     As a proximate result of the Defendants' operation, maintenance, and use of the Augusta Facility, and the public nuisance created thereby, Plaintiff, and the general public's, right to breathe clean air without dangerous levels of carcinogens such as EtO was eliminated and/or severely diminished.

142.     As a proximate result of Defendants' operation, maintenance, and use of the Augusta Facility, and the public nuisance created thereby, EtO continuously invaded and contaminated the community surrounding the Augusta Facility, including Plaintiff's places of work.

143.     As a proximate result of Defendants' use and emission of EtO, and the public nuisance created thereby, Plaintiff and the general public was exposed to and inhaled a significant, meaningful, and more than *de minimis* amount of EtO.

144.     As a proximate result of Defendants' use and emission of EtO, and the public nuisance created thereby, all members of the general public who came into contact with it suffered damages, and specifically Plaintiff suffered special damages and sustained and will continue to sustain special damages, including but not limited to, severe and permanent damage to Plaintiff's health due to the emission of EtO.

145.     As a proximate result of Plaintiff's inhalation of EtO from the Augusta Facility,

Plaintiff has suffered damages in the form of medical expenses, physical disability, mental and

physical pain and suffering, extreme emotional distress, and other damages to be proven at trial.

**COUNT IV: PRIVATE NUISANCE**
**(GEORGIA COMMON LAW AND O.C.G.A. § 41-1-4, *et seq*)**
***(All Defendants)***

146.     The right of enjoyment of person and private property is an absolute right of every

citizen.

147.     At all relevant times, Defendants knew or should have known that EtO is

hazardous and harmful to humans.

148.     At all relevant times, Defendants knew or should have known that the levels of

EtO gas emitted from the Augusta Facility would have a toxic, poisonous, and deleterious effect

upon the health, safety, and wellbeing of people living and working in the community.

149.     Defendants knew or should have known that the levels of EtO gas emitting from

the Augusta Facility would have a toxic, poisonous, and deleterious effect upon the health,

safety, and wellbeing of persons breathing it on a regular basis.

150.     Defendants' operation, maintenance, and use of the Augusta Facility caused those

who live and work in the area surrounding the Augusta Facility to breath air contaminated with

high levels of EtO on a routine and constant basis, causing a substantially elevated risk of cancer.

151.     Defendant' emissions of carcinogenic EtO interfere with Plaintiff's enjoyment of

property and cause hurt, inconvenience, or damage to Plaintiff.

152.     As a proximate result of the Defendants' operation, maintenance, and use of the

Augusta Facility, Plaintiff's right to breathe clean air without dangerous levels of carcinogens

such as EtO was eliminated and/or severely diminished.

153.     As a proximate result of Defendants' operation, maintenance, and use of the Augusta Facility, EtO continuously invaded and contaminated the areas surrounding the Augusta Facility, including Plaintiff's residence(s) and/or places of work.

154.     As a proximate result of Defendants' use and emission of EtO, Plaintiff was exposed to and inhaled a significant, meaningful, and more than *de minimis* amount of EtO.

155.     As a proximate result of Defendants' use and emission of EtO, Plaintiff sustained and will continue to sustain severe and permanent damage to Plaintiff's health due to the emission of EtO.

156.     As a proximate result of Plaintiff's inhalation of EtO from the Augusta Facility, Plaintiff has suffered special damages in the form of medical expenses, physical disability, mental and physical pain and suffering, extreme emotional distress, and other damages to be proven at trial.

## COUNT V: ULTRAHAZARDOUS ACTIVITY/STRICT LIABILITY
## (GEORGIA COMMON LAW)
### *(Defendants)*

157.     Defendants' use and emission of EtO from the Augusta Facility constitutes an ultrahazardous activity.

158.     Cardinal Health and KPR own and operate the Augusta Facility in which it knowingly allowed the storage, use, and emission of dangerous levels of EtO which constitutes an ultrahazardous activity.

159.     Cardinal Health and KPR carried out its ultrahazardous activities by and through the Augusta Managers.

160.     Defendants' use and emission of EtO created a high degree of risk to those who live and work in the surrounding area. Further, the likelihood of cancer caused by Defendants' use and emission of EtO is significantly higher than the level of acceptable risk.

161.     Defendants' use and emission of EtO is especially inappropriate given the densely populated residential and commercial area in which the Augusta Facility is located.

162.     The activities, as conducted by each and every Defendant, are exceedingly dangerous and offer little to no value to the surrounding community.

163.     Because Defendants' activities are ultrahazardous, they are strictly liable for any injuries proximately resulting therefrom.

164.     As a proximate result of Defendants' ultrahazardous activities, Plaintiff was exposed to and inhaled carcinogenic amounts of EtO.

165.     As a proximate result of Plaintiff's inhalation of EtO from the Augusta Facility, Plaintiff has suffered damages in the form of medical expenses, physical disability, mental and physical pain and suffering, extreme emotional distress, and other damages as can be proven at a trial of this action.

## COUNT VII: *RESPONDEAT SUPERIOR* AND/OR VICARIOUS LIABILITY
## (GEORGIA COMMON LAW AND OCGA §§ 10-6-51, 10-6-60, 51-2-1, 51-2-2, 51-2-5)
### (*Cardinal Health and KPR*)

166.     Upon information and belief, at all times pertinent to this Complaint, the Augusta Managers were employees and/or agents of KPR and Cardinal Health.

167.     Upon information and belief, at all times pertinent to this Complaint, the Augusta Managers were acting within the course and scope of their employment and/or agency with KPR Cardinal Health.

168.     Upon information and belief, at all times pertinent to this Complaint, the Augusta Managers were acting in furtherance of the interests of KPR Cardinal Health.

169.     Cardinal Health and KPR are therefore liable under the doctrines of *respondeat superior*, vicarious liability and/or statutory employer liability for the tortious acts and/or omissions of their employees and/or agents.

170.     As a proximate cause of the acts and omissions of KPR and Cardinal Health, by and through the Augusta Managers, Plaintiff has suffered damages in the form of medical expenses, physical disability, mental and physical pain and suffering, extreme emotional distress, and other damages as can be proven at a trial of this action.

## COUNT VIII: GEORGIA RICO (RACKETEER INFLUENCE AND CORRUPT ORGANIZATIONS) (O.C.G.A. § 16-14-3, *et seq*)
### (*All Defendants*)

171.     The Georgia RICO Act prohibits any person from engaging in certain enumerated activities through a pattern of racketeering or conspiracy.

172.     The KPR Defendants constitute an "enterprise" under O.C.G.A. § 16-14-3(3). Defendants' enterprise has, and has had, for all times relevant to this Complaint, a continuity of structure and a shared common purpose and scheme or pattern of hiding the dangerous environment created through emissions of EtO, which continuously invaded and contaminated the areas surrounding the Augusta Facility.

173.     The Augusta Managers were employed by or were associated with KPR as defined by O.C.G.A. § 16-14-4(b).  For purposes of Count XIII, the Augusta Managers, KPR, and Cardinal Health are collectively referred to as Defendant and/or Defendants.

174.     Defendants are jointly and severally liable to Plaintiff for this Racketeer Influenced and Corrupt Organization ("RICO") cause of action, and Defendants are each an agent of one another and a co-conspirator with the other relating to the acts alleged herein.

175.     Defendants agreed to enter into a conspiracy to violate Georgia law, including but not limited to O.G.C.A. § 16-14-3(5)(A) and 5(B).

176.     These offenses were part of a systematic and ongoing pattern of racketeering activity, which Defendants participated in directly through a pattern of racketeering activities.

177.     Through this behavior, Defendants engaged in racketeering activities as defined in O.C.G.A. § 16-14-3(5)(B) and (5)(A) including, but not limited to, (xxii) false statements and concealment of facts, mail fraud, and wire fraud.

178.     Defendants' use and emission of EtO created a high degree of risk to those who live and work in the surrounding area. Further, the likelihood of cancer caused by Defendants' use and emission of EtO is significantly higher than the level of acceptable risk.

179.      Defendants knew, or should have known, that the levels of EtO gas emitting from the Augusta Facility would have a toxic, poisonous, and deleterious effect upon the health, safety, and wellbeing of persons breathing it on a regular basis.

180.     Since at least 1991, Defendant Bondar has misled government entities and the public in general about the nature and extent of EtO emissions from the Augusta Facility by regularly reporting that the Augusta Facility emits significantly less amounts of EtO than actually emitted and by consistently failing to report EtO leaks from the Augusta Facility in excess of 10 lbs to EPD.

181.     Since at least 1991, Defendant Bondar has concealed from the public the nature and extent of EtO emissions from the Augusta Facility by regularly reporting that the Augusta Facility

emits significantly less amounts of EtO than actually emitted, and by consistently failing to report EtO leaks from the Augusta Facility in excess of 10 lbs to EPD.

182.    Since at least 2005, Defendant East has misled government entities and the public in general about the nature and extent of EtO emissions from the Augusta Facility by regularly reporting that the Augusta Facility emits significantly less amounts of EtO than actually emitted and by consistently failing to report EtO leaks from the Augusta Facility in excess of 10 lbs to EPD.

183.    Since at least 2005, Defendant East has concealed from the public the nature and extent of EtO emissions from the Augusta Facility by regularly reporting that the Augusta Facility emits significantly less amounts of EtO than actually emitted and by consistently failing to report EtO leaks from the Augusta Facility in excess of 10 lbs to EPD.

184.    Since at least 2015, Defendant Legarda has misled government entities and the public in general about the nature and extent of EtO emissions from the Augusta Facility by regularly reporting that the Augusta Facility emits significantly less amounts of EtO than actually emitted, retroactively reducing the Augusta Facility's 2014-2017 EtO emissions data reported to the EPA, and by consistently failing to report EtO leaks from the Augusta Facility in excess of 10 lbs. to EPD.

185.    Since at least 2015, Defendant Legarda has concealed from the public the nature and extent of EtO emissions from the Augusta Facility by regularly reporting that the Augusta Facility emits significantly less amounts of EtO than actually emitted, retroactively reducing the Augusta Facility's 2014-2017 EtO emissions data reported to the EPA, and by consistently failing to report EtO leaks from the Augusta Facility in excess of 10 lbs. to EPD.

186.     Since at least 2009, Defendant Barnes has misled state government entities and the public in general about the nature and extent of EtO emissions from the Augusta Facility by regularly reporting that the Augusta Facility emits significantly less amounts of EtO than actually emitted and by consistently failing to report EtO leaks from the Augusta Facility in excess of 10 lbs. to EPD.

187.     Since at least 2009, Defendant Barnes has concealed from the public the nature and extent of EtO emissions from the Augusta Facility by regularly reporting that the Augusta Facility emits significantly less amounts of EtO than actually emitted and by consistently failing to report EtO leaks from the Augusta Facility in excess of 10 lbs. to EPD.

188.     Since at least 2018, Defendant Johnson has misled state government entities and the public in general about the nature and extent of EtO emissions from the Augusta Facility by regularly reporting that the Augusta Facility emits significantly less amounts of EtO than actually emitted and by consistently failing to report EtO leaks from the Augusta Facility in excess of 10 lbs. to EPD.

189.     Since at least 2018, Defendant Johnson has concealed from the public the nature and extent of EtO emissions from the Augusta Facility by regularly reporting that the Augusta Facility emits significantly less amounts of EtO than actually emitted and by consistently failing to report EtO leaks from the Augusta Facility in excess of 10 lbs. to EPD.

190.     Since at least 2013, Defendant Livingston has misled state government entities and the public in general about the nature and extent of EtO emissions from the Augusta Facility by regularly reporting that the Augusta Facility emits significantly less amounts of EtO than actually emitted and by consistently failing to report EtO leaks from the Augusta Facility in excess of 10 lbs. to EPD.

191.     Since at least 2013, Defendant Livingston has concealed from the public the nature and extent of EtO emissions from the Augusta Facility by regularly reporting that the Augusta Facility emits significantly less amounts of EtO than actually emitted and by consistently failing to report EtO leaks from the Augusta Facility in excess of 10 lbs. to EPD.

192.     On June 29, 2017, in response to the EPA's December 2016 publication confirming that EtO is carcinogenic in humans via long-term inhalation exposure, Defendant Bondar retroactively reduced the Augusta Facility's 2014-15 EtO emissions by nearly 1,000 pounds for the purpose of (1) concealing the true nature and extent of the Augusta Facility's EtO emissions, and (2) ensuring that the Augusta Facility did not get flagged as causing an elevated cancer risk in the EPA's 2018 National Air Toxics Assessment.

193.     The emissions data reported by Defendant Bondar intentionally failed to the Augusta Facility's actual emissions. In doing so, Defendant made false and/or misleading representations regarding Defendants' EtO emissions and normal operating procedures. In so doing, Defendants utilized wires to cover up the true extent of the Augusta Facility's EtO emissions and EtO destruction efficiency.

194.     Defendants were aware that these statements and representations were not true and/or were misleading at the time they were made. This constitutes racketeering activity by the Defendants which was part of a common and continuous pattern of fraudulent schemes, perpetrated for the same or similar purposes and constituting a "pattern of racketeering activity."

195.     Through these racketeering activities, the Defendants deceived state and regulatory officials as well as the general public, including Plaintiff. As a direct result of these racketeering activities directed toward government officials and the general public, Plaintiff was exposed to and inhaled carcinogenic amounts of EtO.

196.     As a proximate result of Plaintiff's inhalation of EtO from the Augusta, Plaintiff has suffered damages in the form of medical expenses, physical disability, mental and physical pain and suffering, extreme emotional distress, and other damages to be proven at trial.

## COUNT IX: PUNITIVE DAMAGES (O.C.G.A. § 51-12-5.1)
### *(All Defendants)*

197.     At all times relevant, Defendants owed a duty to refrain from willful and wanton misconduct and/or conduct which exhibited an indifference and/or conscious disregard to the health, safety, and well-being of Plaintiff and those living and working in the area surrounding the Augusta Facility.

198.     The conduct of each Defendant as set forth hereinabove showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of a conscious indifference to consequences.

199.     Accordingly, punitive damages should be imposed against each defendant pursuant O.C.G.A. § 51-12-5.1 and other applicable laws to punish and deter each Defendant from repeating or continuing such unlawful conduct, in an amount to be proven at trial.

## COUNT X: ATTORNEY'S FEES AND EXPENSES OF LITIGATION
### (O.C.G.A. § 13-6-11)
### *(All Defendants)*

200.     Defendants' actions constitute willful, intentional, and tortious conduct. Every intentional tort involves an element of bad faith that entitles a person to recover the expenses of litigation, including attorney's fees.

201.     The actions of Defendants and their agents and representatives have caused Plaintiff unnecessary trouble and expense.

202.     Plaintiff is entitled to recover attorney's fees and the expense of litigation from the Defendants pursuant to O.C.G.A. § 13-6-11.

**WHEREFORE, Plaintiff prays**:

    a.   That process issue according to law;

    b.   That each Defendant be served with a copy of Plaintiff's Complaint and show cause why the prayers for relief requested by Plaintiff herein should not be granted;

    c.   That Plaintiff be granted a trial by jury in this matter;

    d.   That the Court enter a judgment against each Defendant for all general and compensatory damages allowable to Plaintiff;

    e.   That the Court enter a judgment against each Defendant for all special damages allowable to Plaintiff;

    f.   That the Court enter a judgment against each Defendant for treble damages allowable to Plaintiff under Georgia RICO law;

    g.   That the Court enter a judgment against each Defendant serving to award Plaintiff punitive damages under the provisions of O.C.G.A. § 51-12-5.1 and as otherwise provided by law;

    h.   That the Court enter a judgment against each Defendant serving to award Plaintiff attorney's fees and expenses of litigation under the provisions of O.C.G.A. § 13-6-11 and as otherwise provided by law;

    i.   That the Court enter a judgment against each Defendant for all other relief sought by Plaintiff under this Complaint;

    j.   That the costs of this action be cast upon Defendants; and

    k.   That the Court grant Plaintiff such further relief which the Court deems just and appropriate.

Respectfully submitted this 22nd day of March, 2023.

**PENN LAW LLC**

*/s/ Darren W. Penn*
DARREN W. PENN
Georgia Bar No. 571322
darren@pennlawgroup.com
WILLIAM L. BALLARD
Georgia Bar No. 035625
bill@pennlawgroup.com
JOHN D. HADDEN
Georgia Bar No.
john@pennlawgrouop.com
ALEXANDRA "SACHI" COLE
Georgia Bar No. 696892
sachi@pennlawgroup.com
KEVIN M. KETNER
Georgia Bar No. 418233
kevin@pennlawgroup.com

4200 Northside Parkway, NW
Building One, Suite 100
Atlanta, Georgia 30327
Phone/Fax: (404) 961-7655

E-FILED IN OFFICE - MB
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-01896-S1**

**3/29/2023 6:19 PM**

**TIANA P. GARNER, CLERK**

**IN THE STATE COURT OF GWINNETT COUNTY**
**STATE OF GEORGIA**

PATRICIA BELL,

      Plaintiff,

v.

JAY E. JOHNSON; MARK LEGARDA;
MARTIN RUSSO; MATTHEW EAST;
DOUG BONDAR; MARK BARNES;
NANCY LIVINGSTON; KENDALL
PATIENT RECOVERY U.S., LLC;
CARDINAL HEALTH, INC. and JOHN
DOE NOS. 1-10,

      Defendants.

C.A. No. 23-C-01896-S1

## ENTRY OF APPEARANCE

NOW COMES Georgia L. Bennett of the law firm of Baker and Hostetler, LLP, and

hereby enters her appearance as counsel of Defendants, Kendall Patient Recovery U.S., LLC

and Cardinal Health, Inc.  Please include her on all future communications concerning this

matter.

      Name:      Georgia L. Bennett
      State Bar No: 495910
      Address:    Baker Hostetler
                1170 Peachtree Street | Suite 2400
                Atlanta, GA 30309
      Telephone: (404) 946.9810
      E-mail:     gbennett@bakerlaw.com

Respectfully submitted, this 29th day of March, 2023.

                */s/ Georgia L. Bennett*
                S. Derek Bauer
                Georgia Bar No. 042537
                dbauer@bakerlaw.com
                Georgia L. Bennett
                Georgia Bar No. 495910
                gbennett@bakerlaw.com
                **BAKER & HOSTETLER, LLP**
                1170 Peachtree Street, Suite 2400
                Atlanta, Georgia 30309
                Telephone:  404-256-8425

Matthew D. Thurlow
*(Pro Hac Vice Forthcoming)*
mthurlow@bakerlaw.com
**BAKER & HOSTETLER LLP**
1050 Connecticut Avenue NW, Suite 1100
Washington, DC 20036
Telephone:  202-861-1681

W. Charles Ross
Georgia Bar No. 615217
cross@powelledwards.com
**POWELL & EDWARDS PC**
P.O. Box 1390
Lawrenceville, Georgia 30046
Telephone: (770) 962-0100

*Counsel for Defendants Kendall Patient
Recovery U.S., LLC and Cardinal Health,
Inc.*

2

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of March, 2023, I electronically filed the foregoing with the Clerk of Court using the Court's electronic filing system, which will automatically send email notification of such filing to all counsel of record.

*/s/ Georgia L. Bennett*

Georgia L. Bennett
Georgia Bar No. 495910

3

E-FILED IN OFFICE - MB
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
**23-C-01896-S1**
**3/30/2023 1:44 PM**
TIANA P. GARNER, CLERK

## IN THE STATE COURT OF GWINNETT COUNTY
### STATE OF GEORGIA

PATRICIA BELL,

      **Plaintiff,**

Vs.

JAY E. JOHNSON; MARK LEGARDA;
MARTIN RUSSO; MATHEW EAST; DOUG
BONDAR; MARK BARNES, NANCY
LIVINGSTON; KENDALL PATIENT
RECOVERY U.S., LLC; CARDINAL HEALTH,
INC., AND JOHN DOE NOS. 1-10,

      **Defendant's.**

**Civil Action
File No.: 23-C-01896-S1**

State of Georgia
Walton County

### AFFIDAVIT OF SERVICE

Personally, appeared before the undersigned, an officer duly authorizes by law to administer oaths, James Basham a United States Citizen and over the age of 18 years after being duly sworn, deposes and states that the statements set forth below are true and accurate.

1.

On **March 25, 2023**, at approximately **9:56 a.m., Jay E. Johnson**, Defendant, in the above referenced matter, was personally served with the Summons, Renewal Complaint for Damages, and General Civil and Domestic Relations Case Filing Information Form. Service was perfected on Jay E. Johnson, at his residence, located at 896 Starbridge Court, Evans, Georgia 30809.

Sworn to and subscribed before me
this 29th day of March 2023.

_____
NOTARY PUBLIC
My commission expires on 11/21/25

_____
Affiant, James Basham

FILED IN OFFICE
CLERK STATE COURT
GWINNETT COUNTY, GA

IN THE STATE COURT OF GWINNETT COUNTY    2022 NOV 21  PM 3: 16

STATE OF GEORGIA    TIANA P. GARNER, CLERK

IN RE: Permanent Process Servers

Case Number:    22 C 06375-3

## ORDER OF APPOINTMENT

The application of the undersigned permanent process server having been read and considered, said applicant is hereby appointed permanent process server of this court pursuant to O.C.G.A. § 9-11-4(c), from the date of this order **up to and including January 4, 2024.**

This order allows the applicant to serve as a process server in Gwinnett County State Court matters only, on an annual renewable basis.

SO ORDERED this ___21st___ day of ___November___, 20__22__.

_Carla Brown (Nov 21, 2022 08:33 EST)_

Presiding Judge
Gwinnett County State Court

Applicant:

Name    **JAMES STEVEN BASHAM**

Address    **3520 STONEY CREEK WAY**

**LOGANVILLE, GEORGIA 30052**

**404-886-4499**

E-FILED IN OFFICE - MB
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-01896-S1**

**3/30/2023 1:44 PM**
TIANA P. GARNER, CLERK

## IN THE STATE COURT OF GWINNETT COUNTY
### STATE OF GEORGIA

**PATRICIA BELL,**

     **Plaintiff,**

**Vs.**

**JAY E. JOHNSON; MARK LEGARDA;
MARTIN RUSSO; MATHEW EAST; DOUG
BONDAR; MARK BARNES, NANCY
LIVINGSTON; KENDALL PATIENT
RECOVERY U.S., LLC; CARDINAL HEALTH,
INC., AND JOHN DOE NOS. 1-10,**

     **Defendant's.**

**Civil Action
File No.: 23-C-01896-S1**

**State of Georgia
Walton County**

### AFFIDAVIT OF SERVICE

     Personally, appeared before the undersigned, an officer duly authorizes by law to administer oaths, James Basham a United States Citizen and over the age of 18 years after being duly sworn, deposes and states that the statements set forth below are true and accurate.

1.

     On **March 25, 2023,** at approximately **9 :10 a.m., Mark Barnes,** Defendant, in the above referenced matter, was sub-served with the Summons, Renewal Complaint for Damages, and General Civil and Domestic Relations Case Filing Information Form. Service was perfected on Grace Barnes (white female, 40's, 120 pounds, black hair), a person of suitable age who resides in the residence with Mark Barnes. Service was perfected at 5328 Adams Chapel Road, Dearing, Georgia 30808.

Sworn to and subscribed before me
this 29th day of March 2023.

_____
NOTARY PUBLIC
My commission expires on 11/21/25

_____
Affiant, James Basham





FILED IN OFFICE
CLERK STATE COURT
GWINNETT COUNTY, GA

IN THE STATE COURT OF GWINNETT COUNTY

2022 NOV 21 PM 3:16

STATE OF GEORGIA

TIANA P. GARNER, CLERK

IN RE: Permanent Process Servers

Case Number:      22 C 06375-3

### ORDER OF APPOINTMENT

The application of the undersigned permanent process server having been read and considered, said applicant is hereby appointed permanent process server of this court pursuant to O.C.G.A. § 9-11-4(c), from the date of this order **up to and including January 4, 2024.**

This order allows the applicant to serve as a process server in Gwinnett County State Court matters only, on an annual renewable basis.

SO ORDERED this ___21st___ day of ___November___, 20 22.

___Carla Brown (Nov 21, 2022 08:33 EST)___
Presiding Judge
Gwinnett County State Court

Applicant:

Name        **JAMES STEVEN BASHAM**

Address     **3520 STONEY CREEK WAY**

            **LOGANVILLE, GEORGIA 30052**

            **404-886-4499**

E-FILED IN OFFICE - MB
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-01896-S1**

**3/30/2023 1:44 PM**
TIANA P. GARNER, CLERK

## IN THE STATE COURT OF GWINNETT COUNTY
### STATE OF GEORGIA

| | |
|---|---|
| PATRICIA BELL, | |
| **Plaintiff,** | Civil Action |
| | File No.: 23-C-01896-S1 |
| **Vs.** | |
| JAY E. JOHNSON; MARK LEGARDA; MARTIN RUSSO; MATHEW EAST; DOUG BONDAR; MARK BARNES, NANCY LIVINGSTON; KENDALL PATIENT RECOVERY U.S., LLC; CARDINAL HEALTH, INC., AND JOHN DOE NOS. 1-10, | |
| **Defendant's.** | |

**State of Georgia**
**Walton County**

### AFFIDAVIT OF SERVICE

Personally, appeared before the undersigned, an officer duly authorizes by law to administer oaths, James Basham a United States Citizen and over the age of 18 years after being duly sworn, deposes and states that the statements set forth below are true and accurate.

1.

On March 25, 2023, at approximately 10:15 a.m., Mark Legarda, Defendant, in the above referenced matter, was sub-served the within Summons, Renewal Complaint for Damages, and General Civil and Domestic Relations Case Filing Information Form. Service was perfected at 4112 Fox Brush Drive, Evans, Georgia 30809.

2.

At the time of service, a Hispanic female, approximately 50 years of age, 5' 5", 140 pounds, and black hair answered the door to the residence. When I asked for Mark Legarda, the female stated that she did not know Mark Legarda, and that Mark Legarda did not reside in the residence. I then asked the female for her name at which time she told me that she was not going to give me her name. I informed her that I know that Mr. Mark Legarda owns the residence and that the vehicles parked in the driveway are registered to Mark and Leticia Legarda. The female then told me that she owned the vehicles and did not know Mr. Legarda. The female refused to accept the service documents at which time the documents were dropped served at the front door of the residence in the presence of the female and she was notified that she was served.

Affidavit of Service
Patricia Bell vs. Mark Legarda, et al.
State Court, Gwinnett County, Georgia
Civil Action No.: 23-C-01896-S1

3.

       Columbia County, Georgia property and tax records reflect the residence at 4112 Fox Brush Drive,

Evans, Columbia County, Georgia 30809 is owned by Mark A. Legarda and Leticia M. Legarda, and the

property has Homestead Exemption. Two (2) vehicles parked in the driveway at the time were also

registered to Mark Legarda and Leticia Legarda at 4112 Fox Brush Drive, Evans, Georgia 30809. Additional

investigation further indicated that Mark A. Legarda and Leticia Legarda to be husband and wife.

Sworn to and subscribed before me
this 29th day of March 2023.

_____
NOTARY PUBLIC
My commission expires on 11/21/25

_____
Affiant, James Basham

FILED IN OFFICE
CLERK STATE COURT
GWINNETT COUNTY, GA

IN THE STATE COURT OF GWINNETT COUNTY 2022 NOV 21 PM 3:16

STATE OF GEORGIA          TIANA P. GARNER, CLERK

IN RE: Permanent Process Servers

Case Number:          22 C 06375-3

## ORDER OF APPOINTMENT

The application of the undersigned permanent process server having been read and considered, said applicant is hereby appointed permanent process server of this court pursuant to O.C.G.A. § 9-11-4(c), from the date of this order **up to and including January 4, 2024.**

This order allows the applicant to serve as a process server in Gwinnett County State Court matters only, on an annual renewable basis.

SO ORDERED this ___21st___ day of ___November___, 20_22_.

_____
Carla Brown (Nov 21, 2022 08:33 EST)
Presiding Judge
Gwinnett County State Court

Applicant:

Name          **JAMES STEVEN BASHAM**

Address       **3520 STONEY CREEK WAY**

              **LOGANVILLE, GEORGIA 30052**

              **404-886-4499**

E-FILED IN OFFICE - MB
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-01896-S1**
**3/30/2023 1:44 PM**
TIANA P. GARNER, CLERK

IN THE STATE COURT OF GWINNETT COUNTY

STATE OF GEORGIA

| | | |
|---|---|---|
| Patricia C. Bell, | : | |
| Plaintiff, | : | CIVIL ACTION |
| Vs. | : | NUMBER 23-C-01896-S1 |
| Cardinal Health, Inc., | : | |
| Defendant. | : | |

## <u>AFFIDAVIT OF SERVICE</u>

PERSONALLY appeared before me, the undersigned officer duly authorized by law to administer oaths in the State of Ohio, Jim Silvania, who after being duly sworn, deposes and states as follows:

1.

I hereby certify I am a citizen of the United States, over the age of 18 years, and I am not a party to this action or related by blood or marriage to any of the parties.  I have no interest in the outcome of this matter. Pursuant to the Ohio Civil Statues, I am qualified to serve Legal Process.

2.

On Monday, March 27, 2023, at approximately 11:30 a.m., I personally served Cardinal Health, Inc. of Dublin, Ohio with the Summons, General civil and domestic relations case filing information form, and Renewal complaint for damages by delivering same to CT Corporation System, the registered agent for Cardinal Health, Inc., at 4400 Easton Commons Way, Suite 125, Columbus, Ohio 43219.

FURTHER AFFIANT SAYETH NOT.

This 29th day of March, 2023.

_____(L.S.)
JIM SILVANIA, Affiant
Special Agent for Service of Process

Sworn to and subscribed before me on
This 29th day of March, 2023.

_____
Notary Public
My commission expires: 08/01/2024



JONATHAN M MOORE
Notary Public, State of Ohio
My Comm. Expires 08-01-2024

E-FILED IN OFFICE - MB
Case 1:23-mi-99999-UNA   Document 1120-1   Filed 04/11/23   Page 55 of 102 CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-01896-S1**

**3/31/2023 2:37 PM**

TIANA P. GARNER, CLERK

**AFFIDAVIT OF SERVICE**

| Case: 23-C-01896-S1 | Court: IN THE STATE COURT OF GWINNETT COUNTY, STATE OF GEORGIA | County: GWINNETT, GA | Job: 8612856 (BELL V. RUSSO) |
|---|---|---|---|
| **Plaintiff / Petitioner:** Patricia C. Bell | | **Defendant / Respondent:** Martin Russo | |
| **Received by:** Michael R. Meyer | | **For:** Dial Services, Inc. | |
| **To be served upon:** Martin Russo | | | |

I, Michael R. Meyer, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected. I was authorized by law to make service of the documents and informed said person of the contents herein

| **Recipient Name / Address:** | Martin Russo, 113 SUGARBERRY DRIVE, JUPITER, FL 33458-7143 |
|---|---|
| **Manner of Service:** | Personal/Individual, Mar 28, 2023, 8:54 am EDT |
| **Documents:** | Summons, General Civil and Domestic Relations Case Filing Information, Renewal Complaint for Damages (Received Mar 24, 2023 at 5:56pm EDT) |

**Additional Comments:**
1) Successful Attempt: Mar 28, 2023, 8:54 am EDT at 113 SUGARBERRY DRIVE, JUPITER, FL 33458-7143 received by Martin Russo. Age: 55-65; Ethnicity: Tan Complexion; Gender: Male; Weight: 185; Height: 6'2"; Hair: Gray; Other: Wearing glasses, mostly bald, curly hair, left premises in a bronze Lexus RX350 after service. Basef upon inquiry the defendant is unmarried and not in the service of the United States Military. ;

Under penalties of perjury, I swear or affirm that, pursuant to Fla. Stat. 92.525 that I have read the foregoing and the facts stated there are true. I am over the age of 18, I have no interest in the above action, and am a Certified Process Server in good standing in the county in which service was made.

STATE OF FLORIDA

COUNTY OF PALM BEACH

Sworn to (or affirmed) and subscribe before me by means of
[X] physical presence or [ ] online notarization, this
30 day of MARCH, 2023, by Michael R. Meyer.

_____
Michael R. Meyer                    Date  3/30/23
15th Circuit of Florida CPS #2016   17th
Circuit of Florida SPS #1460

_____
Notary Public - State of Florida

Dial Services, Inc.
367 Athens Highway Suite 1000, Judah Crossing
Loganville, GA 30052

_____
Print, Type or Stamp Commissioned Name of Notary Public

Personally Known [X] OR Produced Identification [ ]

Type of Identification produced: _____

DANIELLE MYRTER
Notary Public, State Of Florida
Commission No. HH 235449
My Commission Expires: 3/3/2026

E-FILED IN OFFICE - MB
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-01896-S1**
**3/29/2023 5:17 PM**
TIANA P. GARNER, CLERK

## IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

PATRICIA BELL,

        Plaintiff,

v.

JAY E. JOHNSON; MARK LEGARDA;
MARTIN RUSSO; MATTHEW EAST;
DOUG BONDAR; MARK BARNES;
NANCY LIVINGSTON; KENDALL
PATIENT RECOVERY U.S., LLC;
CARDINAL HEALTH, INC. and JOHN
DOE NOS. 1-10,

        Defendants.

C.A. No. 23-C-01896-S1

## LIMITED APPEARANCE NOTICE OF RELATED CASES

Defendants Kendall Patient Recovery U.S., LLC and Cardinal Health, Inc. ("Defendants"),

while preserving all defenses, affirmative or otherwise, pursuant to Uniform State Court Rules 3.2

and 4.8, file this Notice of Related Cases.

Pursuant to Rule 3.2, "[w]hen practical, all actions involving substantially the same parties,

or substantially the same subject matter, or substantially the same factual issues, whether pending

simultaneously or not, shall be assigned to the same judge."  Rule 4.8 similarly provides that

counsel should notify the court of related actions "pending in and assigned to a particular judge of

a superior court in the same circuit involving some or all of the same subject matter, or some or

all of the same factual issues."  The court will then make a determination "as to which judge the

action or actions should be assigned."  Ga. Unif. St. Ct. R. 4.8.

On March 22, 2023, Plaintiff Patricia Bell ("Plaintiff") filed a Renewal Complaint for

Damages.  That same day, fifteen other individuals filed suit in the State Court of Gwinnett County,

naming the nine listed defendants and John Does 1-10 and each asserting that they were injured

due to exposure to ethylene oxide, a chemical used to sterilize medical equipment.  The complaints contain nearly identical allegations.  Each plaintiff brings claims for negligence, public nuisance, private nuisance, ultrahazardous activity/strict liability, respondeat superior/vicarious liability, Georgia RICO, punitive damages and attorneys' fees.  The suits therefore involve substantially the same parties, subject matter, and factual issues.  To date, the following are the sixteen related cases pending in this Court in order of filing.

| No. | Case | Civil Action Number | Judge Assigned |
|---|---|---|---|
| 1. | *Lambert v. Johnson et al.* | 23-C-01893-S5 | Hon. Erica K. Dove |
| 2. | *Betts v. Johnson et al.* | 23-C-01894-S6 | Hon. Veronica Cope |
| 3. | *Bell v. Johnson et al.* | 23-C-01896-S1 | Hon. Emily J. Brantley |
| 4. | *Browman v. Johnson et al.* | 23-C-01897-S2 | Hon. Shawn F. Bratton |
| 5. | *Holmes v. Johnson et al.* | 23-C-01898-S3 | Hon. Carla Brown |
| 6. | *Coleman v. Johnson et al.* | 23-C-01899-S4 | Hon. Ronda S. Colvin |
| 7. | *Jones v. Johnson et al.* | 23-C-01900-S5 | Hon. Erica K. Dove |
| 8. | *Snow v. Johnson et al.* | 23-C-01901-S6 | Hon. Veronica Cope |
| 9. | *Dunn v. Johnson et al.* | 23-C-01910-S5 | Hon. Erica K. Dove |
| 10. | *Pugh v. Johnson et al.* | 23-C-01911-S6 | Hon. Veronica Cope |
| 11. | *Williams v. Johnson et al.* | 23-C-01912-S7 | Hon. Jaletta L. Smith |
| 12. | *Washington v. Johnson et al.* | 23-C-01913-S1 | Hon. Emily J. Brantley |
| 13. | *Taylor v. Johnson et al.* | 23-C-01914-S2 | Hon. Shawn F. Bratton |
| 14. | *Presnell v. Johnson et al.* | 23-C-01916-S4 | Hon. Ronda S. Colvin |
| 15. | *Smith v. Johnson et al.* | 23-C-01917-S5 | Hon. Erica K. Dove |
| 16. | *Knight v. Johnson et al.* | 23-C-01918-S6 | Hon. Veronica Cope |

Pursuant to Rules 3.2 and 4.8, Defendants respectfully request that these cases be assigned to the same judge.

Respectfully submitted, this 29th day of March, 2023.

/s/ W. Charles Ross
W. Charles Ross
Georgia Bar No. 615217
cross@powelledwards.com
**POWELL & EDWARDS PC**
P.O. Box 1390
Lawrenceville, Georgia 30046
Telephone: (770) 962-0100

S. Derek Bauer
Georgia Bar No. 042537
dbauer@bakerlaw.com
Georgia L. Bennett
Georgia Bar No. 495910
gbennett@bakerlaw.com
**BAKER & HOSTETLER, LLP**
1170 Peachtree Street, Suite 2400
Atlanta, Georgia 30309
Telephone:  404-256-8425

Matthew D. Thurlow
*(Pro Hac Vice Forthcoming)*
mthurlow@bakerlaw.com
**BAKER & HOSTETLER LLP**
1050 Connecticut Avenue NW, Suite 1100
Washington, DC 20036
Telephone:  202-861-1681

*Counsel for Defendants Kendall Patient Recovery U.S., LLC and Cardinal Health, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of March, 2023, I electronically filed the foregoing with the Clerk of Court using the Court's electronic filing system, which will automatically send email notification of such filing to all counsel of record.

*/s/ W. Charles Ross*
W. CHARLES ROSS
Georgia Bar No. 615217

E-FILED IN OFFICE - MB
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-01896-S1**
**4/6/2023 9:36 AM**
TIANA P. GARNER, CLERK

## IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| PATRICIA BELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| KENDALL PATIENT RECOVERY U.S., LLC; | ) | 23-C-01896-S1 |
| CARDINAL HEALTH, INC.; JAY E. JOHNSON; | ) | |
| MARK LEGARDA; MARTIN RUSSO; | ) | |
| MATTHEW EAST; DOUG BONDAR; | ) | |
| MARK BARNES; NANCY LIVINGSTON, | ) | |
| JOHN DOE NOS. 1-10; AND | ) | |
| ABC CORPORATION NOS. 1-10, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>PLAINTIFF'S BRIEF REGARDING ASSIGNMENT OF RELATED CASES</u>

Plaintiff Patricia Bell, along with 15 others, filed suit against the above-listed defendants for claims arising from exposure to ethylene oxide (EtO), a highly toxic carcinogen, emitted from a medical equipment sterilization plant in Augusta, Georgia. As Defendants have correctly notified the Court, these cases are related and should be assigned to a single judge. Plaintiff acknowledges that the decision of assignment of these cases is in the discretion of the judges, but submits this brief to apprise the judges of the distinct issues involved that, Plaintiff contends, weigh in favor of assigning these cases to Judge Emily Brantley. To Plaintiff's counsel's knowledge, Judge Brantley is presiding over all other EtO personal injury cases filed in Gwinnett County and is well versed in the nuances and distinct issues involved in this subject matter.[1]

---

[1] Should Judge Brantley not wish to take these cases, Plaintiff has no objection to the cases being assigned to Judge Dove consistent with Defendants' request.

- 1 -

**Other pending similar cases**

The undersigned law firm has 205 cases pending against Becton Dickinson and C.R. Bard for injuries resulting from chronic exposure to EtO released into the residential communities surrounding their Covington, Georgia facility. Several other firms have collectively filed approximately 100 cases on behalf of other plaintiffs who similarly allege injuries resulting from the Covington facility's toxic emissions. Moreover, at least one suit has been filed in Gwinnett State Court against Sterigenics US LLC for injuries resulting from EtO released from its Smyrna, Georgia sterilization plant. All of these cases are pending before Judge Brantley.

**Factors relevant to assignment**

In their brief, Defendants downplay the significance of the common causative factor in the similar cases pending before Judge Brantley: chronic EtO exposure. While routine discovery and evidentiary efforts will touch on facility-specific matters, such as policies and procedures, uniform causation issues centering on EtO exposure will predominate this litigation.

EtO cases are not typical. These toxic tort actions involve novel, distinct issues of science, causation, and proof. To counsel's knowledge, only two EtO cases have proceeded to trial, both in Illinois. Among other things, these highly technical cases will have significant overlap in terms of experts, especially on general and specific causation.[2] Judge Brantley has already created a discovery/case management framework for these related matters, including entering an electronically stored information (ESI) protocol. Building these cases on this existing foundation promotes judicial economy and efficiency. In the 300+ cases Plaintiff's counsel are

---

[2] Indeed, given the novelty and similarity of the issues involved in these cases and the other ethylene oxide cases already pending in this venue, it may have been appropriate to designate these as related cases at the time of filing.

aware of, four have been specially set for trial, with the first set for this fall (the Sterigenics case), and three more next year (Becton Dickinson/C.R. Bard cases).

Finally, Plaintiff vehemently disputes any claim that Plaintiff suggesting assignment to Judge Brantley, one of the first three judges assigned to these cases, constitutes any form of "judge shopping." Plaintiff (and his counsel) are satisfied that any member of the Gwinnett bench could appropriately handle these cases, and Plaintiff's counsel did not select Judge Brantley to preside over the cases involving Becton Dickinson and C.R. Bard; rather, they were assigned by the Court.[3] But given Judge Brantley's specific familiarity with the nuances and unique issues involved in these cases, Plaintiff believes judicial economy and efficiency considerations weigh in favor of her assignment.

## Conclusion

Should Judge Brantley agree to accept the related cases, Plaintiff requests that they be transferred to her/Division S1. If she does not, then Plaintiff agrees to transfer the cases to Judge Dove/Division S5.

Respectfully submitted this 6th day of April, 2023.

**PENN LAW LLC**

*/s/ Darren W. Penn*
DARREN W. PENN
Georgia Bar No. 571322
darren@pennlawgroup.com

---

[3] When Plaintiff's counsel filed their initial cases against Becton Dickinson and C.R. Bard, each were assigned to different judges, similar to what happened here. After the Judges and Clerk's Office discussed the matter internally, the cases were all assigned to Judge Brantley. This is reflected in Section XII of the State Court Case Management Order titled, "Becton, Dickinson, and Company Case Assignments," entered on September 1, 2021.

- 3 -

WILLIAM L. BALLARD
Georgia Bar No. 035625
bill@pennlawgroup.com
ALEXANDRA "SACHI" COLE
Georgia Bar No. 696892
sachi@pennlawgroup.com
JOHN D. HADDEN
Georgia Bar No. 141317
KEVIN M. KETNER
Georgia Bar No. 418233
kevin@pennlawgroup.com

4200 Northside Parkway, NW
Building One, Suite 100
Atlanta, Georgia 30327
Phone/Fax: (404) 961-7655

## CERTIFICATE OF SERVICE

This is to certify that I have this day served all parties to this matter with a copy of the

foregoing **PLAINTIFF'S BRIEF REGARDING ASSIGNMENT OF RELATED CASES**

via Odyssey/EFileGA electronic filing system which serves all parties of record, addressed as

follows:

W. Charles Ross
POWELL & EDWARDS, PC
P.O. Box 1390
Lawrenceville, Georgia 30046
cross@powelledwards.com
*Attorney for Kendall Patient Recovery US, LLC and Cardinal Health, Inc.*

S. Derek Bauer
Georgia L. Bennett
Baker & Hostetler, LLP
1170 Peachtree Street
Suite 2400
Atlanta, Georgia 30309
dbauer@bakerlaw.com
gbennett@bakerlaw.com
*Attorneys for Kendall Patient Recovery US, LLC and Cardinal Health, Inc.*

Respectfully submitted this 6th day of April, 2023.

**PENN LAW LLC**

*/s/ Darren W. Penn*
DARREN W. PENN
Georgia Bar No. 571322
darren@pennlawgroup.com
WILLIAM L. BALLARD
Georgia Bar No. 035625
bill@pennlawgroup.com
JOHN D. HADDEN
Georgia Bar No. 141317
john@pennlawgrouop.com

- 5 -

ALEXANDRA "SACHI" COLE
Georgia Bar No. 696892
sachi@pennlawgroup.com
KEVIN M. KETNER
Georgia Bar No. 418233
kevin@pennlawgroup.com

4200 Northside Parkway, NW
Building One, Suite 100
Atlanta, Georgia 30327
Phone/Fax: (404) 961-7655

E-FILED IN OFFICE - MB
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-01896-S1**

**4/3/2023 9:08 PM**

TIANA P. GARNER, CLERK

# IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

PATRICIA BELL,

        Plaintiff,

v.

JAY E. JOHNSON; MARK LEGARDA;
MARTIN RUSSO; MATTHEW EAST;
DOUG BONDAR; MARK BARNES;
NANCY LIVINGSTON; KENDALL
PATIENT RECOVERY U.S., LLC;
CARDINAL HEALTH, INC. and JOHN
DOE NOS. 1-10,

        Defendants.

C.A. No. 23-C-01896-S1

## DEFENDANTS' MOTION IN SUPPORT OF NOTICE OF RELATED CASES

Defendants Kendall Patient Recovery U.S., LLC ("KPR"), Cardinal Health, Inc., Mark Legarda, Martin Russo, Matthew East, Doug Bondar, Mark Barnes, Nancy Livingston, and Jay Johnson ("Defendants"), while preserving all defenses, affirmative or otherwise, pursuant to Uniform Superior Court Rule 3.2, file, or consent to the filing of, this Motion in Support of the Notice of Related Cases. Time is of the essence in bringing this Motion because Defendants' procedural and substantive deadlines for responding to all of the sixteen (16) related complaints (hereinafter "KPR cases") are pending. In accordance with the Uniform Superior Court Rules, the KPR cases should be transferred to Division S5 because that is the Court the first KPR complaint was assigned to and has the lowest docket number.

## I.    BACKGROUND

Plaintiff Patricia Bell ("Plaintiff") filed her Renewal Complaint for Damages on March 22, 2023. On March 29, 2023, Defendants KPR and Cardinal Health, Inc. filed a Limited Appearance Notice of Related Cases, pursuant to Uniform Rules 3.2 and 4.8, in this and fifteen other related

actions.  To date, the following are the sixteen related KPR cases pending in this Court in order of

filing, the *Lambert* case being the first-filed overall.

| No. | Case | Civil Action Number | Judge Assigned |
|-----|------|---------------------|----------------|
| 1. | *Lambert v. Johnson et al.* | 23-C-01893-S5 | Hon. Erica K. Dove |
| 2. | *Betts v. Johnson et al.* | 23-C-01894-S6 | Hon. Veronica Cope |
| 3. | *Bell v. Johnson et al.* | 23-C-01896-S1 | Hon. Emily J. Brantley |
| 4. | *Browman v. Johnson et al.* | 23-C-01897-S2 | Hon. Shawn F. Bratton |
| 5. | *Holmes v. Johnson et al.* | 23-C-01898-S3 | Hon. Carla Brown |
| 6. | *Coleman v. Johnson et al.* | 23-C-01899-S4 | Hon. Ronda S. Colvin |
| 7. | *Jones v. Johnson et al.* | 23-C-01900-S5 | Hon. Erica K. Dove |
| 8. | *Snow v. Johnson et al.* | 23-C-01901-S6 | Hon. Veronica Cope |
| 9. | *Dunn v. Johnson et al.* | 23-C-01910-S5 | Hon. Erica K. Dove |
| 10. | *Pugh v. Johnson et al.* | 23-C-01911-S6 | Hon. Veronica Cope |
| 11. | *Williams v. Johnson et al.* | 23-C-01912-S7 | Hon. Jaletta L. Smith |
| 12. | *Washington v. Johnson et al.* | 23-C-01913-S1 | Hon. Emily J. Brantley |
| 13. | *Taylor v. Johnson et al.* | 23-C-01914-S2 | Hon. Shawn F. Bratton |
| 14. | *Presnell v. Johnson et al.* | 23-C-01916-S4 | Hon. Ronda S. Colvin |
| 15. | *Smith v. Johnson et al.* | 23-C-01917-S5 | Hon. Erica K. Dove |
| 16. | *Knight v. Johnson et al.* | 23-C-01918-S6 | Hon. Veronica Cope |

Each KPR complaint names the nine listed defendants and John Does 1-10.  Each plaintiff

asserts that they were injured due to exposure to ethylene oxide ("hereinafter "EtO"), a chemical

used by KPR to sterilize medical equipment in Augusta, Georgia.  The complaints contain nearly

identical allegations.  Each plaintiff brings claims for negligence, public nuisance, private

nuisance, ultrahazardous activity/strict liability, respondeat superior/vicarious liability, Georgia RICO, punitive damages, and attorneys' fees.  In short, the KPR cases involve substantially the same issues and parties.

## II.   LEGAL AUTHORITY

Uniform Superior Court Rule 3.2 provides that "[w]hen practical, all actions involving substantially the same factual issues, whether pending simultaneously or not, shall be assigned to the same judge…Generally, such actions will be assigned to the judge to whom the action with the lower action number is assigned."

## III.   ARGUMENT AND CITATION TO AUTHORITIES

As discussed further below, following Rule 3.2, Defendants believe that all of the KPR cases should be transferred to Division S5 because that is the initial Court assignment and lowest docket number for the KPR cases.

The KPR cases should be immediately transferred to Division S5 because sixteen different plaintiffs are currently pursuing the same legal theories on nearly identical facts in sixteen separates cases before eight different Gwinnett County State Court judges.  Each of the eight different judges assigned to the KPR cases could impose different schedules, interpret the law and facts slightly differently, and rule differently on procedural, discovery, and substantive motions. Transfer to Division S5 is therefore needed as soon as possible to ensure consistent and fair treatment of Defendants.  In addition, it is burdensome and unnecessary for Defendants to respond piecemeal to sixteen individual lawsuits that all involve common questions.  Defendants should not be required to duplicate their litigation efforts sixteen times in order to fulfill substantially the same obligations to the Court.  Litigation of sixteen separate cases also needlessly adds substantial administrative and litigation costs for individual and corporate defendants.

Out of an abundance of caution, Defendants believe it is important to address an issue raised by plaintiffs' counsel in an email communication with the Clerk of Court subsequent to the Defendants' filing of its Limited Appearance Notice of Related Cases. In the email, plaintiffs' counsel noted that Judge Brantley is currently assigned to cases against BD Bard for a release of EtO in Covington, Georgia and another case against Sterigenics, for a release of EtO in Smyrna, Georgia. (Exhibit 1.)  While plaintiffs' counsel did not request the KPR cases to be transferred to Judge Brantley, it should also be noted that other than the KPR cases involving the alleged release of EtO, there is nothing similar in the cases that would require any deviation from the rule that the case should be assigned to the Court where the first cases or the case with lowest docket number was assigned.  The KPR cases involve a single medical sterilization facility in Richmond County, Georgia, and have little in common with other EtO cases pending in Gwinnett County, which involve completely different parties, different facilities, and different factual allegations (including different alleged exposures to EtO).

Judicial assignments are straightforward under the Uniform Superior Court Rules.  Rule 3.2 provides that "[w]hen practical, all actions involving substantially the same parties, or substantially the same subject matter, or substantially the same factual issues…shall be assigned to the same judge."   Rule 3.2 also provides that selecting the judge for related cases is uncontroversial: "the judge to whom the original action…is assigned.  Generally…the judge to whom the action with the lower action number is assigned."  This makes sense, as the "assignment system is designed to prevent any persons choosing the judge to whom an action is to be assigned." Ga. Unif. Super. Ct. R. 3.1.  If there was room for substantive argument between the parties as to who should hear related cases, the parties could put a thumb on the scale in choosing the judge. Instead, the Rules provide for a straightforward, easily applied procedural assignment mechanism.

Creating such a streamlined assignment system is common in courts.  *See, e.g.*, *Stewart v. O'Neill*, 225 F. Supp. 2d 16, 18 (D.D.C. 2002) (noting its Local Civil Rule assigns motions to consolidate to the "judge to whom the earliest-numbered case is assigned").  Accordingly, these cases should be heard by the judge with the lowest action number.  In this case, that is Honorable Erika K. Dove.

## IV.    CONCLUSION

For the foregoing reasons, pursuant Uniform Rule 3.2, Defendants respectfully request that these aforementioned cases be assigned to Division S5.

Respectfully submitted, this 3rd day of April, 2023.

/s/ Georgia L. Bennett
W. Charles Ross
Georgia Bar No. 615217
cross@powelledwards.com
**POWELL & EDWARDS PC**
P.O. Box 1390
Lawrenceville, Georgia 30046
Telephone: (770) 962-0100

S. Derek Bauer
Georgia Bar No. 042537
dbauer@bakerlaw.com
Georgia L. Bennett
Georgia Bar No. 495910
gbennett@bakerlaw.com
**BAKER & HOSTETLER, LLP**
1170 Peachtree Street, Suite 2400
Atlanta, Georgia 30309
Telephone:  404-256-8425

Matthew D. Thurlow
*(Pro Hac Vice Forthcoming)*
mthurlow@bakerlaw.com
**BAKER & HOSTETLER LLP**
1050 Connecticut Avenue NW, Suite 1100
Washington, DC 20036
Telephone:  202-861-1681

*Counsel for Defendants Kendall Patient*
*Recovery U.S., LLC, Cardinal Health, Inc.,*

*Mark Legarda, Martin Russo, Mark Barnes,*
*Nancy Livingston, and John Doe Nos. 1-10*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 3rd day of April, 2023, I electronically filed the foregoing with the Clerk of Court using the Court's electronic filing system, which will automatically send email notification of such filing to all counsel of record.

*/s/ Georgia L. Bennett* _____

Georgia L. Bennett
Georgia Bar No. 495910

# EXHIBIT 1

**Bennett, Georgia L.**

| | |
|---|---|
| **From:** | Garner, Tiana <Tiana.Garner@gwinnettcounty.com> |
| **Sent:** | Friday, March 31, 2023 11:27 AM |
| **To:** | 'Darren Penn'; 'Chuck Ross' |
| **Cc:** | Bauer, S. Derek; Bennett, Georgia L.; 'Bill Ballard'; 'John Hadden'; 'Sachi Cole'; 'Kevin Ketner' |
| **Subject:** | RE: Notice of Related Cases |

[External Email: Use caution when clicking on links or opening attachments.]

Mr. Ross and Mr. Penn,

I've checked with my staff and when these cases were filed initially, the clerk was not notified of any other related actions so the cases were assigned pursuant to the standing order for assignment of cases. At this point, in order for these cases to be transferred to a particular division, we will require a transfer order. Since Mr. Ross filed a Notice of Related Action in all 16 cases, the clerk's office will await further direction from the court, if any. Thank you.



**Gwinnett**
CLERK OF COURT

**Tiana P. Garner, Esq.** | Clerk of Court
770.822.8124

Clerk of Court Tiana P. Garner
75 Langley Drive
Lawrenceville, GA 30046

Online Court Docket: www.gwinnettcourts.com

eRecording of real estate documents is available through https://efile.gsccca.org.

You can now e-file your cases and pleadings in Gwinnett County Superior, State and Magistrate Courts with www.efileGa.com. Save time with e-filing!

No information contained in this communication is intended as legal advice and should not be interpreted as such. You must contact an attorney for all legal advice. This email message may contain confidential, proprietary and/or privileged information. It is intended only for the use of the intended recipient(s). If you have received it in error, please immediately advise the sender by reply email and then delete this email message. Any disclosure, copying, distribution or use of the information contained in this email message to or by anyone other than the intended recipient is strictly prohibited.

**From:** Darren Penn <darren@pennlawgroup.com>
**Sent:** Wednesday, March 29, 2023 10:49 PM
**To:** Chuck Ross <cross@powelledwards.com>; Garner, Tiana <Tiana.Garner@gwinnettcounty.com>
**Cc:** S. Derek Bauer - BakerHostetler (dbauer@bakerlaw.com) <dbauer@bakerlaw.com>; Bennett, Georgia L.

<gbennett@bakerlaw.com>; Bill Ballard <bill@pennlawgroup.com>; John Hadden <john@pennlawgroup.com>; Sachi Cole <sachi@pennlawgroup.com>; Kevin Ketner <Kevin@pennlawgroup.com>
**Subject:** Re: Notice of Related Cases

**CAUTION:** This email originated from outside of Gwinnett County Government. Maintain caution when opening links, attachments, or responding. When in doubt, contact phishing@gwinnettcounty.com.

Ms. Garner,

I'm not sure how all the case assignment rules work, but I will point out that Judge Emily Brantley is the judge on over 300 cases involving the release of ethylene oxide in Covington by BD Bard and other defendants and is also the judge in a Sterigenics case involving the release of ethylene oxide in Smyrna Georgia.  These cases against KPR and other defendants also deal with the release of ethylene oxide.

Darren W. Penn



**PENN LAW LLC**

4200 Northside Parkway, NW
Building One, Suite 100
Atlanta, Georgia 30327

(404) 961‑7655   *Telephone/Fax*

www.pennlawgroup.com

This email may contain confidential and privileged material for the sole use of the intended recipient(s).  Any review, use, distribution or disclosure by others is strictly prohibited.  If you are not the intended recipient (or authorized to receive for the recipient), please contact the sender by reply email and delete all copies of this message.

---

**From:** Chuck Ross <cross@powelledwards.com>
**Date:** Wednesday, March 29, 2023 at 6:08 PM
**To:** tiana.garner@gwinnettcounty.com <tiana.garner@gwinnettcounty.com>
**Cc:** S. Derek Bauer - BakerHostetler (dbauer@bakerlaw.com) <dbauer@bakerlaw.com>, Bennett, Georgia L. <gbennett@bakerlaw.com>, Darren Penn <darren@pennlawgroup.com>, Bill Ballard <bill@pennlawgroup.com>, John Hadden <john@pennlawgroup.com>, Sachi Cole <sachi@pennlawgroup.com>, Kevin Ketner <Kevin@pennlawgroup.com>
**Subject:** Notice of Related Cases

Ms. Garner,

Attached, please find courtesy copies of sixteen (16) Notices of Related Cases that I have filed this date. Please let me know if you have any difficulty opening the zipped folder.

Thank you.

Chuck Ross

**W. Charles "Chuck" Ross,** *Partner*
Phone: (770) 962-0100 | Fax: (770) 963-3424
Post Office Box 1390, Lawrenceville, GA 30046
***www.PowellEdwards.com***



*Voted Best of Gwinnett, 2016, 2017, 2018, 2019, 2020, 2021, 2022*

This email may contain material that is CONFIDENTIAL, PRIVILEGED and/or ATTORNEY WORK PRODUCT for the sole use of the intended recipient. Any review, reliance, distribution or forwarding by others without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

E-FILED IN OFFICE - CL
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-01896-S1**

**3/24/2023 4:17 PM**
TIANA P. GARNER, CLERK

## IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| **PATRICIA BELL,** | |
| **Plaintiff,** | **Civil Action** |
| | **File No.: 23-C-01896-S1** |
| **Vs.** | |
| **JAY E. JOHNSON; MARK LEGARDA; MARTIN RUSSO; MATHEW EAST; DOUG BONDAR; MARK BARNES, NANCY LIVINGSTON; KENDALL PATIENT RECOVERY U.S., LLC; CARDINAL HEALTH, INC., AND JOHN DOE NOS. 1-10,** | |
| **Defendant's.** | |

**State of Georgia**
**Walton County**

### AFFIDAVIT OF SERVICE

Personally, appeared before the undersigned, an officer duly authorizes by law to administer oaths, James Basham a United States Citizen and over the age of 18 years after being duly sworn, deposes and states that the statements set forth below are true and accurate.

1.

On **March 23, 2023,** at approximately **6:00 p.m., Doug Bonder,** Defendant, in the above referenced matter, was personally served with the Summons, Renewal Complaint for Damages, and General Civil and Domestic Relations Case Filing Information Form. Service was perfected on Doug Bonder ( white male, 6'1, 180 pounds, 60 years of age). Service was perfected at 757 Locks Way, Augusta, Georgia 30907.

Sworn to and subscribed before me
this 24th day of March 2023.

_____
NOTARY PUBLIC
My commission expires on 11/21/25

_____
Affiant, James Basham

LADONNA S GAUNTT
NOTARY PUBLIC
WALTON COUNTY, GEORGIA

FILED IN OFFICE
CLERK STATE COURT
GWINNETT COUNTY, GA



IN THE STATE COURT OF GWINNETT COUNTY      2022 NOV 21   PM 3:16

STATE OF GEORGIA          TIANA P. GARNER, CLERK

IN RE: Permanent Process Servers

Case Number:          22 C 06375-3

## ORDER OF APPOINTMENT

The application of the undersigned permanent process server having been read and considered, said applicant is hereby appointed permanent process server of this court pursuant to O.C.G.A. § 9-11-4(c), from the date of this order **up to and including January 4, 2024.**

This order allows the applicant to serve as a process server in Gwinnett County State Court matters only, on an annual renewable basis.

SO ORDERED this ___21st___ day of ___November___, 20_22_.

_____
Carla Brown (Nov 21, 2022 08:33 EST)
Presiding Judge
Gwinnett County State Court

Applicant:

Name          **JAMES STEVEN BASHAM**

Address       **3520 STONEY CREEK WAY**

              **LOGANVILLE, GEORGIA 30052**

              **404-886-4499**

E-FILED IN OFFICE - CL
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-01896-S1**

**3/24/2023 4:17 PM**
TIANA P. GARNER, CLERK

**IN THE STATE COURT OF GWINNETT COUNTY**
**STATE OF GEORGIA**

PATRICIA BELL,

    **Plaintiff,**

                                    |     **Civil Action**
**Vs.**                                |     **File No.: 23-C-01896-S1**

JAY E. JOHNSON; MARK LEGARDA;
MARTIN RUSSO; MATHEW EAST; DOUG
BONDAR; MARK BARNES, NANCY
LIVINGSTON; KENDALL PATIENT
RECOVERY U.S., LLC; CARDINAL HEALTH,
INC., AND JOHN DOE NOS. 1-10,

    **Defendant's.**

**State of Georgia**
**Walton County**

### <u>AFFIDAVIT OF SERVICE</u>

    Personally, appeared before the undersigned, an officer duly authorizes by law to administer oaths, James Basham a United States Citizen and over the age of 18 years after being duly sworn, deposes and states that the statements set forth below are true and accurate.

1.

    On **March 23, 2023,** at approximately **5:50 p.m., Matthew East,** Defendant, in the above referenced matter, was personally served with the Summons, Renewal Complaint for Damages, and General Civil and Domestic Relations Case Filing Information Form. Service was perfected on Matthew East (, white male, 6'0, 170 pounds, 40 years of age). Service was perfected at 2013 Pheasant Creek Drive, Augusta, Georgia 30907.

Sworn to and subscribed before me
this 24th day of March 2023.

_____
NOTARY PUBLIC
My commission expires on 11/21/25

_____
Affiant, James Basham



FILED IN OFFICE
CLERK STATE COURT
GWINNETT COUNTY, GA

IN THE STATE COURT OF GWINNETT COUNTY

2022 NOV 21  PM 3: 16

STATE OF GEORGIA

TIANA P. GARNER, CLERK

IN RE: Permanent Process Servers

Case Number:  **22 C 06375-3**

## ORDER OF APPOINTMENT

The application of the undersigned permanent process server having been read and considered, said applicant is hereby appointed permanent process server of this court pursuant to O.C.G.A. § 9-11-4(c), from the date of this order **up to and including January 4, 2024.**

This order allows the applicant to serve as a process server in Gwinnett County State Court matters only, on an annual renewable basis.

SO ORDERED this ___21st___ day of ___November___, 20 22.

Carla Brown (Nov 21, 2022 08:33 EST)

Presiding Judge
Gwinnett County State Court

Applicant:

Name      **JAMES STEVEN BASHAM**

Address   **3520 STONEY CREEK WAY**

**LOGANVILLE, GEORGIA 30052**

**404-886-4499**

E-FILED IN OFFICE - MB
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-01896-S1**

**4/3/2023 1:46 PM**
TIANA P. GARNER, CLERK

## IN THE STATE COURT OF GWINNETT COUNTY
### STATE OF GEORGIA

PATRICIA BELL,

      **Plaintiff,**

Vs.

JAY E. JOHNSON; MARK LEGARDA;
MARTIN RUSSO; MATHEW EAST; DOUG
BONDAR; MARK BARNES, NANCY
LIVINGSTON; KENDALL PATIENT
RECOVERY U.S., LLC; CARDINAL HEALTH,
INC., AND JOHN DOE NOS. 1-10,

      **Defendant's.**

Civil Action
File No.: 23-C-01896-S1

State of Georgia
Walton County

### AFFIDAVIT OF SERVICE

      Personally, appeared before the undersigned, an officer duly authorizes by law to administer oaths, James Basham a United States Citizen and over the age of 18 years after being duly sworn, deposes and states that the statements set forth below are true and accurate.

1.

      On **March 24, 2023**, at approximately **1:30 p.m., Kendall Patient Recovery US, LLC,** Defendant, in the above referenced matter, was served with the Summons, Renewal Complaint for Damages, and General Civil and Domestic Relations Case Filing Information Form.  Service was perfected on Rane Richardson, an authorized agent of CT Corporation System, the reported Registered Agent of Kendall Patient RecoveryUS, LLC. Service was perfected at 289 S. Culver Street, Lawrenceville, Georgia 30046.

Sworn to and subscribed before me
this 31st day of March 2023.

_____
NOTARY PUBLIC
My commission expires on 11/21/25

_____
Affiant, James Basham





FILED IN OFFICE
CLERK STATE COURT
GWINNETT COUNTY, GA

IN THE STATE COURT OF GWINNETT COUNTY

2022 NOV 21  PM 3: 16

STATE OF GEORGIA

TIANA P. GARNER, CLERK

IN RE: Permanent Process Servers

Case Number: 22 C 06375-3

## ORDER OF APPOINTMENT

The application of the undersigned permanent process server having been read and considered, said applicant is hereby appointed permanent process server of this court pursuant to O.C.G.A. § 9-11-4(c), from the date of this order **up to and including January 4, 2024.**

This order allows the applicant to serve as a process server in Gwinnett County State Court matters only, on an annual renewable basis.

SO ORDERED this __21st__ day of __November__, 20_22_.

_Carla Brown (Nov 21, 2022 08:33 EST)_

Presiding Judge
Gwinnett County State Court

Applicant:

Name     **JAMES STEVEN BASHAM**

Address   **3520 STONEY CREEK WAY**

          **LOGANVILLE, GEORGIA 30052**

          **404-886-4499**

E-FILED IN OFFICE - CL
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-01896-S1**

**3/24/2023 4:17 PM**
TIANA P. GARNER, CLERK

## IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

PATRICIA BELL,

      **Plaintiff,**

Vs.

JAY E. JOHNSON; MARK LEGARDA;
MARTIN RUSSO; MATHEW EAST; DOUG
BONDAR; MARK BARNES, NANCY
LIVINGSTON; KENDALL PATIENT
RECOVERY U.S., LLC; CARDINAL HEALTH,
INC., AND JOHN DOE NOS. 1-10,

      **Defendant's.**

**Civil Action
File No.: 23-C-01896-S1**

State of Georgia
Walton County

### AFFIDAVIT OF SERVICE

Personally, appeared before the undersigned, an officer duly authorizes by law to administer oaths, James Basham a United States Citizen and over the age of 18 years after being duly sworn, deposes and states that the statements set forth below are true and accurate.

1.

On **March 23, 2023,** at approximately **6:34 p.m., Nancy Livingston,** Defendant. in the above referenced matter, was sub-served with the Summons, Renewal Complaint for Damages, and General Civil and Domestic Relations Case Filing Information Form. Service was perfected on Joe Livingston (Brother, black male, 5'5, 150 pounds, 50 years of age), a person of suitable age who stated that he resides in the residence with Nancy Livingston. Service was perfected at 3413 Gary Circle, Augusta, Georgia 30906.

Sworn to and subscribed before me
this 24th day of March 2023.

_____
NOTARY PUBLIC
My commission expires on 11/21/25

_____
Affiant, James Basham

LADONNA S GAUNTT
NOTARY PUBLIC
WALTON COUNTY, GEORGIA



FILED IN OFFICE
CLERK STATE COURT
GWINNETT COUNTY, GA

IN THE STATE COURT OF GWINNETT COUNTY

STATE OF GEORGIA

2022 NOV 21  PM 3: 16

TIANA P. GARNER, CLERK

IN RE: Permanent Process Servers

Case Number: **22 C 06375-3**

### ORDER OF APPOINTMENT

The application of the undersigned permanent process server having been read and considered, said applicant is hereby appointed permanent process server of this court pursuant to O.C.G.A. § 9-11-4(c), from the date of this order **up to and including January 4, 2024.**

This order allows the applicant to serve as a process server in Gwinnett County State Court matters only, on an annual renewable basis.

SO ORDERED this ___21st___ day of ___November___, 20_22_.

_Carla Brown (Nov 21, 2022 08:33 EST)_

Presiding Judge
Gwinnett County State Court

Applicant:

Name **JAMES STEVEN BASHAM**

Address **3520 STONEY CREEK WAY**

**LOGANVILLE, GEORGIA 30052**

**404-886-4499**

E-FILED IN OFFICE - MB
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-01896-S1**

**4/3/2023 8:55 AM**

TIANA P. GARNER, CLERK

## IN THE STATE COURT OF GWINNETT COUNTY
### STATE OF GEORGIA

**BARBARA BETTS,**

    **Plaintiff,**

**Vs.**

**JAY E. JOHNSON; MARK LEGARDA; MARTIN RUSSO; MATHEW EAST; DOUG BONDAR; MARK BARNES, NANCY LIVINGSTON; KENDALL PATIENT RECOVERY U.S., LLC; CARDINAL HEALTH, INC., AND JOHN DOE NOS. 1-10,**

    **Defendant's.**

**Civil Action**
**File No.: 23-C-01894-S6**

**State of Georgia**
**Walton County**

### AFFIDAVIT OF SERVICE

    Personally, appeared before the undersigned, an officer duly authorizes by law to administer oaths, James Basham a United States Citizen and over the age of 18 years after being duly sworn, deposes and states that the statements set forth below are true and accurate.

1.

    On **March 24, 2023,** at approximately **1:30 p.m., Kendall Patient Recovery US, LLC,** Defendant, in the above referenced matter, was served with the Summons, Renewal Complaint for Damages, and General Civil and Domestic Relations Case Filing Information Form.  Service was perfected on Rane Richardson, an authorized agent of CT Corporation System, the reported Registered Agent of Kendall Patient Recovery US, LLC. Service was perfected at 289 S. Culver Street, Lawrenceville, Georgia 30046.

Sworn to and subscribed before me
this 31st day of March 2023.

_____
NOTARY PUBLIC
My commission expires on 11/21/25

_____
Affiant, James Basham





FILED IN OFFICE
CLERK STATE COURT
GWINNETT COUNTY, GA

IN THE STATE COURT OF GWINNETT COUNTY

2022 NOV 21  PM 3: 16

STATE OF GEORGIA

TIANA P. GARNER, CLERK

IN RE: Permanent Process Servers

Case Number:   22  C  06375-3

### ORDER OF APPOINTMENT

The application of the undersigned permanent process server having been read and considered, said applicant is hereby appointed permanent process server of this court pursuant to O.C.G.A. § 9-11-4(c), from the date of this order **up to and including January 4, 2024.**

This order allows the applicant to serve as a process server in Gwinnett County State Court matters only, on an annual renewable basis.

SO ORDERED this  21st  day of  November  , 20 22 .

_____
Carla Brown (Nov 21, 2022 08:33 EST)
Presiding Judge
Gwinnett County State Court

Applicant:

Name     **JAMES STEVEN BASHAM**

Address   **3520 STONEY CREEK WAY**

**LOGANVILLE, GEORGIA 30052**

**404-886-4499**

E-FILED IN OFFICE - CL
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-01896-S1**

**3/22/2023 6:02 PM**

**TIANA P. GARNER, CLERK**

## General Civil and Domestic Relations Case Filing Information

**Form** ☐ **Superior or** ☒ **State Court of** __GWINNETT_____ **County**

| For Clerk Use Only | |
|---|---|
| | 23-C-01896-S1 |
| **Date Filed** _____ | **Case Number** _____ |
| **MM-DD-YYYY** | |

**Plaintiff(s)**                                                        **Defendant(s)**

Bell   Patricia                                                 · Johnson   Jay   E.

Last        First        Middle I.   Suffix   Prefix       Last        First        Middle I.   Suffix   Prefix

                                                            · Legarda   Mark

Last        First        Middle I.   Suffix   Prefix       Last        First        Middle I.   Suffix   Prefix

                                                            · Russo   Martin

Last        First        Middle I.   Suffix   Prefix       Last        First        Middle I.   Suffix   Prefix

                                                            East   Matthew

Last        First        Middle I.   Suffix   Prefix       Last        First        Middle I.   Suffix   Prefix

**Plaintiff's Attorney** __Darren W. Penn_____        **(See Defs. 5-19 attached)**

                                                            **Bar Number** __571322____   **Self-Represented** ☐

### Check One Case Type in One Box

| **General Civil Cases** | **Domestic Relations Cases** |
|---|---|
| ☐ **Automobile Tort** | ☐ **Adoption** |
| ☐ **Civil Appeal** | ☐ **Dissolution/Divorce/Separate** |
| ☐ **Contract** | **Maintenance** |
| ☐ **Garnishment** | ☐ **Family Violence Petition** |
| ☒ **General Tort** | ☐ **Paternity/Legitimation** |
| ☐ **Habeas Corpus** | ☐ **Support – IV-D** |
| ☐ **Injunction/Mandamus/Other Writ** | ☐ **Support – Private (non-IV-D)** |
| ☐ **Landlord/Tenant** | ☐ **Other Domestic Relations** |
| ☐ **Medical Malpractice Tort** | |
| ☐ **Product Liability Tort** | **Post-Judgment – Check One Case Type** |
| ☐ **Real Property** | ☐ **Contempt** |
| ☐ **Restraining Petition** | ☐ **Non-payment of child support,** |
| ☐ **Other General Civil** | **medical support, or alimony** |
| | ☐ **Modification** |
| | ☐ **Other/Administrative** |

☐ Check if the action is related to another action(s) pending or previously pending in this court involving some or all of the same parties, subject matter, or factual issues. If so, provide a case number for each.

_____        _____
        **Case Number**                                **Case Number**

☒ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in O.C.G.A. § 9-11-7.1.

☐ Is an interpreter needed in this case? If so, provide the language(s) required. _____
                                                            **Language(s) Required**

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

_____
_____

Version 1.1.18

**DEFENDANTS LIST**

Doug Bondar

Mark Barnes

Nancy Livingston

Kendall Patient Recovery US, LLC.

Cardinal Health, Inc.

John Does Nos. 1-10

E-FILED IN OFFICE - MB
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-01896-S1**

**3/29/2023 5:17 PM**

**TIANA P. GARNER, CLERK**

IN THE STATE COURT OF GWINNETT COUNTY

STATE OF GEORGIA

PATRICIA BELL                           :
                                        :        C.A. NO: 23-C-01896-S1
            Plaintiff,                  :
                                        :
    VS.                                 :
                                        :
JAY E. JOHNSON; MARK LEGARDA;           :
MARTIN RUSSO; MATTHEW EAST;             :
DOUG BONDAR; MARK BARNES;               :
NANCY LIVINGSTON; KENDALL               :
PATIENT RECOVERY U.S., LLC;             :
CARDINAL HEALTH, INC. and JOHN          :
DOE NOS. 1-10,                          :

            Defendants.

## **ENTRY OF APPEARANCE**

COMES NOW, W. Charles Ross of the firm Powell & Edwards, PC and hereby enters his

appearance as additional counsel on behalf of Defendants Kendall Patient Recovery U.S., LLC

and Cardinal Health, Inc., in the above-styled action.

This 29th day of March, 2023.

                        /s/ W. Charles Ross
                        W. Charles Ross
                        Georgia Bar No. 615217
                        Attorney for Defendants Kendall Patient Recovery
                        U.S., LLC and Cardinal Health, Inc.

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 29th day of March, 2023, I electronically filed the foregoing with the Clerk of Court using the Court's electronic filing system, which will automatically send email notification of such filing to all counsel of record.

/s/ W. Charles Ross
W. Charles Ross
Georgia Bar No. 615217
Attorney for Defendants Kendall Patient Recovery
U.S., LLC and Cardinal Health, Inc.

POWELL & EDWARDS, PC
P.O. Box 1390
Lawrenceville, Georgia 30046
Phone (770) 962-0100
Fax    (770) 963-3424
cross@powelledwards.com

E-FILED IN OFFICE - MB
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-01896-S1**

**3/29/2023 6:19 PM**
**TIANA P. GARNER, CLERK**

## IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

PATRICIA BELL,

        Plaintiff,

v.

JAY E. JOHNSON; MARK LEGARDA;
MARTIN RUSSO; MATTHEW EAST;
DOUG BONDAR; MARK BARNES;
NANCY LIVINGSTON; KENDALL
PATIENT RECOVERY U.S., LLC;
CARDINAL HEALTH, INC. and JOHN
DOE NOS. 1-10,

        Defendants.

C.A. No. 23-C-01896-S1

## ENTRY OF APPEARANCE

NOW COMES S. Derek Bauer of the law firm of Baker and Hostetler, LLP, and hereby enters his appearance as counsel of Defendants, Kendall Patient Recovery U.S., LLC and Cardinal Health, Inc.  Please include him on all future communications concerning this matter.

    Name:      S. Derek Bauer
    State Bar No: 042537
    Address:   Baker Hostetler
              1170 Peachtree Street | Suite 2400
              Atlanta, GA 30309
    Telephone: (404) 256.8425
    E-mail:    dbauer@bakerlaw.com

Respectfully submitted, this 29th day of March, 2023.

                    */s/ S. Derek Bauer*
                    W. Charles Ross
                    Georgia Bar No. 615217
                    cross@powelledwards.com
                    **POWELL & EDWARDS PC**
                    P.O. Box 1390
                    Lawrenceville, Georgia 30046
                    Telephone: (770) 962-0100

                    S. Derek Bauer
                    Georgia Bar No. 042537
                    dbauer@bakerlaw.com
                    Georgia L. Bennett
                    Georgia Bar No. 495910

gbennett@bakerlaw.com
**BAKER & HOSTETLER, LLP**
1170 Peachtree Street, Suite 2400
Atlanta, Georgia 30309
Telephone:  404-256-8425

Matthew D. Thurlow
*(Pro Hac Vice Forthcoming)*
mthurlow@bakerlaw.com
**BAKER & HOSTETLER LLP**
1050 Connecticut Avenue NW, Suite 1100
Washington, DC 20036
Telephone:  202-861-1681

*Counsel for Defendants Kendall Patient Recovery U.S., LLC and Cardinal Health, Inc.*

2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 29th day of March, 2023, I electronically filed the foregoing with the Clerk of Court using the Court's electronic filing system, which will automatically send email notification of such filing to all counsel of record.

*/s/ S. Derek Bauer*
S. Derek Bauer
Georgia Bar No. 042537

3

E-FILED IN OFFICE - CL
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-01896-S1**
**3/22/2023 6:02 PM**
**TIANA P. GARNER, CLERK**

# IN THE STATE COURT OF GWINNETT COUNTY

## STATE OF GEORGIA

Patricia C. Bell

_____

_____

_____

PLAINTIFF

VS.

Cardinal Health, Inc.

_____

7000 Cardinal Place

_____

Dublin, Ohio 43017

_____

DEFENDANT

CIVIL ACTION
NUMBER:_____   **23-C-01896-S1**

# SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

   You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

   Darren W. Penn
   Penn Law LLC
   4200 Northside Parkway, N.W.
   Building One, Suite 100
   Atlanta, Georgia 30327
   (404) 961-7655

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This _____ day of _____,   20_____.

   23rd day of March, 2023

Tiana P. Garner
**Clerk of State Court**

By _____

**Deputy Clerk**

**INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.**

SC-1 Rev. 2011

E-FILED IN OFFICE - CL
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-01896-S1**

**3/22/2023 6:02 PM**

**TIANA P. GARNER, CLERK**

# IN THE STATE COURT OF GWINNETT COUNTY

## STATE OF GEORGIA

Patricia C. Bell

_____

_____

_____

PLAINTIFF

CIVIL ACTION
NUMBER: **23-C-01896-S1**
_____

VS.

Doug Bondar

_____

757 Locks Way

_____

Augusta, GA 30907-4973

_____

DEFENDANT

## SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

Darren W. Penn

Penn Law LLC

4200 Northside Parkway, N.W.

Building One, Suite 100

Atlanta, Georgia 30327

(404) 961-7655

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This _____ day of _____, 20_____.

23rd day of March, 2023

Tiana P. Garner
Clerk of State Court

By_____

**Deputy Clerk**

**INSTRUCTIONS:** Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.

SC-1 Rev. 2011

E-FILED IN OFFICE - CL
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-01896-S1**
**3/22/2023 6:02 PM**
TIANA P. GARNER, CLERK

## IN THE STATE COURT OF GWINNETT COUNTY

## STATE OF GEORGIA

Patricia C. Bell

_____

_____

_____

**PLAINTIFF**

VS.

Jay E. Johnson

_____

896 Sturbridge Drive
_____

Evans, Georgia 30809-4516
_____

**DEFENDANT**

CIVIL ACTION
NUMBER: **23-C-01896-S1**
_____

## SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

   You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

   Darren W. Penn
   Penn Law LLC
   4200 Northside Parkway, N.W.
   Building One, Suite 100
   Atlanta, Georgia 30327
   (404) 961-7655

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This _____ day of _____, 20_____.
23rd day of March, 2023

Tiana P. Garner
**Clerk of State Court**

By _____
**Deputy Clerk**

**INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.**

**SC-1 Rev. 2011**

E-FILED IN OFFICE - CL
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
**23-C-01896-S1**
**3/22/2023 6:02 PM**
**TIANA P. GARNER, CLERK**

# IN THE STATE COURT OF GWINNETT COUNTY

## STATE OF GEORGIA

Patricia C. Bell

_____

_____

_____

CIVIL ACTION
NUMBER: **23-C-01896-S1**
_____

PLAINTIFF

VS.

Kendall Patient Recovery US, LLC

_____

c/o Reg. Agernt: CT Corporation System

_____

289 S Culver Street

_____

Lawrenceville, Georgia 30046-4805
DEFENDANT

## SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

   **You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:**

>    Darren W. Penn
>    Penn Law LLC
>    4200 Northside Parkway, N.W.
>    Building One, Suite 100
>    Atlanta, Georgia 30327
>    (404) 961-7655

**an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.**

**This** _____ **day of** _____, **20_____.**

   23rd day of March, 2023

> Tiana P. Garner
> **Clerk of State Court**

By _____

**Deputy Clerk**

**INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.**

SC-1 Rev. 2011

E-FILED IN OFFICE - CL
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-01896-S1**
**3/22/2023 6:02 PM**
**TIANA P. GARNER, CLERK**

## IN THE STATE COURT OF GWINNETT COUNTY

## STATE OF GEORGIA

Patricia C. Bell

_____

_____

_____

PLAINTIFF

VS.

Mark Barnes
_____

5328 Adams Chapel Road
_____

Dearing, Georgia 30808-2532
_____

DEFENDANT

CIVIL ACTION
NUMBER:_____

23-C-01896-S1

## SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

   **You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:**

Darren W. Penn
Penn Law LLC
4200 Northside Parkway, N.W.
Building One, Suite 100
Atlanta, Georgia 30327
(404) 961-7655

**an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.**

**This** _____ **day of** _____ **,   20_____.**

23rd day of March, 2023

Tiana P. Garner
**Clerk of State Court**

By_____

**Deputy Clerk**

**INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.**

**SC-1 Rev. 2011**

E-FILED IN OFFICE - CL
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
**23-C-01896-S1**
**3/22/2023 6:02 PM**
TIANA P. GARNER, CLERK

# IN THE STATE COURT OF GWINNETT COUNTY

## STATE OF GEORGIA

Patricia C. Bell

_____

_____

_____

PLAINTIFF

VS.

Mark Legarda

_____

4112 Fox Brunch Drive

_____

Evans, Georgia 30809-4856

_____

DEFENDANT

CIVIL ACTION
NUMBER: **23-C-01896-S1**_____

# SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

Darren W. Penn
Penn Law LLC
4200 Northside Parkway, N.W.
Building One, Suite 100
Atlanta, Georgia 30327
(404) 961-7655

**an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.**

**This** _____ **day of** _____, **20**_____.

23rd day of March, 2023

Tiana P. Garner
Clerk of State Court

By _____

**Deputy Clerk**

**INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.**

SC-1 Rev. 2011

E-FILED IN OFFICE - CL
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-01896-S1**

**3/22/2023 6:02 PM**

**TIANA P. GARNER, CLERK**

## IN THE STATE COURT OF GWINNETT COUNTY

## STATE OF GEORGIA

Patricia C. Bell

_____

_____

_____

CIVIL ACTION
NUMBER:_____

**23-C-01896-S1**

PLAINTIFF

VS.

Martin Russo

_____

113 Sugarberry Drive

_____

Jupiter, Florida 33458-7143

_____

DEFENDANT

## SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

   You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

        Darren W. Penn
        Penn Law LLC
        4200 Northside Parkway, N.W.
        Building One, Suite 100
        Atlanta, Georgia 30327
        (404) 961-7655

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This _____ day of _____,   20_____.

        23rd day of March, 2023

                                    Tiana P. Garner
                                    **Clerk of State Court**

By_____

                                    **Deputy Clerk**

**INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.**

**SC-1 Rev. 2011**

E-FILED IN OFFICE - CL
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
**23-C-01896-S1**
**3/22/2023 6:02 PM**
**TIANA P. GARNER, CLERK**

IN THE STATE COURT OF GWINNETT COUNTY

STATE OF GEORGIA

Patricia C. Bell

_____

_____

_____

PLAINTIFF

VS.

Matthew East

_____

2013 Pheasant Creek Drive, 7C

_____

Augusta, Gerogia 30907-9222

_____

DEFENDANT

**23-C-01896-S1**

CIVIL ACTION
NUMBER:_____

# SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

   You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

   Darren W. Penn
   Penn Law LLC
   4200 Northside Parkway, N.W.
   Building One, Suite 100
   Atlanta, Georgia 30327
   (404) 961-7655

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**This** _____ **day of** _____, **20_____.**

   23rd day of March, 2023

Tiana P. Garner
**Clerk of State Court**

By_____

**Deputy Clerk**

**INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.**

**SC-1 Rev. 2011**

E-FILED IN OFFICE - CL
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
**23-C-01896-S1**
**3/22/2023 6:02 PM**
**TIANA P. GARNER, CLERK**

## IN THE STATE COURT OF GWINNETT COUNTY

## STATE OF GEORGIA

Patricia C. Bell

_____

_____

_____

CIVIL ACTION 23-C-01896-S1
NUMBER:_____

PLAINTIFF

VS.

Nancy Livingston

_____

3413 Gary Circle

_____

Augusta, Georgia 30906-3775

_____

DEFENDANT

## SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

   You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

   Darren W. Penn
   Penn Law LLC
   4200 Northside Parkway, N.W.
   Building One, Suite 100
   Atlanta, Georgia 30327
   (404) 961-7655

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**This** _____ **day of** _____, **20_____.**

   23rd day of March, 2023

Tiana P. Garner
**Clerk of State Court**

By _____

**Deputy Clerk**

**INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.**

**SC-1 Rev. 2011**