# Exhibit B

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| EUNICE LAMBERT, on behalf of decedent FELICIA LAMBERT, | * * * | |
| Plaintiff, | * * | |
| v. | * * | CV 121-111 |
| KENDALL PATIENT RECOVERY U.S., LLC, a Delaware limited liability corporation, | * * * * | |
| Defendant. | * | |

# O R D E R

Plaintiff Eunice Lambert, as Administratix of the Estate of her daughter, Decedent Felicia Lambert ("Decedent"), brings claims against Defendant Kendall Patient Recovery, U.S., LLC ("KPR") for negligence, willful and wanton misconduct, private nuisance, and ultrahazardous activity/strict liability. (Am. Compl., Doc. 27, at 17-23.) Defendant filed a motion to dismiss in lieu of answering Plaintiff's Amended Complaint. (Doc. 30.) For the following reasons, Defendant's motion is **GRANTED**.

## I. BACKGROUND

Plaintiff originally filed suit against Defendant on July 19, 2021 (Doc. 1) and Defendant moved to dismiss the original Complaint on September 7, 2021 (Doc. 10). Then in October 2021, Plaintiff

filed a motion for leave to file an amended complaint (Doc. 23) which the Court granted on October 15, 2021 (Doc. 25) and in turn denied as moot Defendant's first motion to dismiss (Id.). On October 22, 2021, Plaintiff filed her Amended Complaint (Am. Compl.) and Defendant moved to dismiss it on November 26, 2021 (Doc. 30). Plaintiff filed a response in opposition (Doc. 31) and Defendant replied in support (Doc. 33). Therefore, the motion has been fully briefed and is ready for the Court's review.

The Amended Complaint brings four claims against Defendant for the harm it caused Decedent from emissions of toxic ethylene oxide ("EtO"). (Am. Compl., at 1.) Defendant operates an industrial medical sterilization plant in Augusta, Georgia that uses and emits EtO as part of its sterilization process. (Id.) Plaintiff states, without citation, that EtO "is an odorless, colorless gas that is dangerous, toxic, carcinogenic, and mutagenic." (Id. at 5.) Further, it "is highly reactive, readily taken up by the lungs, efficiently absorbed into the blood stream, and easily distributed throughout the human body." (Id.)

Plaintiff's claims are brought pursuant to 28 U.S.C. § 1332(a) because the Parties are citizens of different states and the amount in controversy exceeds $75,000. (Id. at 3.) Decedent lived approximately 5-6 miles from Defendant's facility from 1981-1982 and between 1986-2015. (Id. at 16.) From 2003 to 2008, she also attended school about 5 miles from the facility. (Id.) Decedent

2

was diagnosed with acute myelogenous leukemia in 2014 and passed away in 2015. (Id.) She experienced pain and suffering before she passed. (Id.) Decedent "consistently inhaled air in and around her home, school, and in the Augusta area" which Plaintiff alleges contained EtO from Defendant. (Id.) Neither Plaintiff nor Decedent noticed Decedent's medical condition was wrongfully caused or that it was caused by Defendant's EtO emissions until December 2019. (Id.) Plaintiff does not allege how such connection was discovered.

Plaintiff brings a negligence claim, alleging Defendant breached its duty in "one or more" ways. (Id. at 17.) Plaintiff then alleges six acts that *could* be how Defendant breached its duty:

> a. Emitting dangerous volumes of EtO into the air from its facility;
> b. Disregarding safe methods to adequately control EtO emissions from its facility;
> c. Failing to control and report fugitive emissions of EtO;
> d. Failing to comply with Georgia's limits on EtO concentrations;
> e. Failing to warn or advise those who live or work in the community that they were being exposed to EtO; and
> f. Subjecting those who live and work nearby its facility to an elevated cancer risk.

(Id. at 17-18.) She states that "[a]s a proximate result of one of the aforesaid negligent acts or omissions, Decedent suffered injuries of a personal and pecuniary nature." (Id. at 18.) Next, Plaintiff alleges willful and wanton misconduct because "Defendant

3

owed a duty to refrain from willful and wanton misconduct and/or conduct which exhibited an indifference and/or conscious disregard to the health, safety, and well-being of Decedent." (Id.) She again lists the six "possible" actions outlined above and asserts Defendant acted with "a conscious disregard for the known dangers its EtO posed to its neighbors." (Id. at 19.) Third, Plaintiff alleges a private nuisance claim, arguing "Defendant's emissions of carcinogenic EtO interfered with Decedent's enjoyment of property and caused hurt, inconvenience, or damage to Decedent, including her ability to breathe air on her property free of a carcinogenic toxin." (Id. at 20-21.) And finally, Plaintiff brings a claim of ultrahazardous activity/strict liability, arguing Defendant's use and emission of EtO constitutes an ultrahazardous activity and created a high degree of risk to those who live and work in the surrounding area. (Id. at 21-22.) She argues that because the actions are ultrahazardous, Defendant "is strictly liable for any injuries proximately resulting therefrom." (Id. at 22.)

Defendant moves to dismiss Plaintiff's Amended Complaint for a variety of reasons. (Doc. 30.) First, it argues the Court lacks subject matter jurisdiction over Plaintiff's claims because Decedent's injuries are not traceable to its conduct. (Id. at 4-8.) Alternatively, Defendant moves to dismiss for failure to state a claim. (Id. at 8.) Defendant argues it did not exist and did

4

not operate the relevant facility until 2017. (Id. at 8-9.) Further, there is a two-year statute of limitations for personal injury actions Plaintiff is attempting to negate; however, the discovery rule does not apply here because it is a claim by Decedent's estate. (Id. at 9-10.) Additionally, it argues Plaintiff fails to state a claim for any of the four alleged counts, and Defendant is not liable under a theory of strict liability because Georgia does not classify these acts as inherently dangerous. (Id. at 10-24.) The Court addresses Defendant's arguments below.

## II. LEGAL STANDARD

In considering a motion to dismiss under Rule 12(b)(6), the Court tests the legal sufficiency of the complaint. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), *overruled on other grounds by* Davis v. Scherer, 468 U.S. 183 (1984). Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of both the claim and the supporting grounds. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

5

A plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). The Court need not accept the pleading's legal conclusions as true, only its well-pleaded facts. Id. at 677-79. Furthermore, "the court may dismiss a complaint pursuant to [Rule 12(b)(6)] when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (citing Exec. 100, Inc. v. Martin Cnty., 922 F.2d 1536, 1539 (11th Cir. 1991)).

### III. DISCUSSION

The Court first addresses Defendant's argument regarding subject matter jurisdiction and then addresses Defendant's statute of limitations argument.

#### A. Subject Matter Jurisdiction

First, Defendant argues the Court lacks subject matter jurisdiction over Plaintiff's claims because the Amended Complaint "does not plausibly show that the [D]ecedent's alleged injuries are attributable to EtO emissions at all, much less [Defendant's]

6

conduct," and speculation does not satisfy the traceability requirements for standing. (Doc. 30, at 4, 7.) Defendant argues "Plaintiff relies on a speculative chain of possibilities to reach the unsupported conclusion that the [D]ecedent's alleged injuries are actually traceable to [Defendant's] conduct, rather than something else." (Id. at 4.) Overall, Defendant asserts Plaintiff lacks standing because she "offers only speculation that (1) the [D]ecedent's injuries were caused by EtO and (2) any EtO that may have caused the [D]ecedent's injuries was emitted by [Defendant]." (Id. at 7.) Defendant argues Plaintiff's referenced studies contradict her conclusory allegations and instead show the "alleged injuries not only could have been, but were statistically much more likely to have been, caused by an independent source or a third party." (Id.)

In response, Plaintiff argues that "to establish Article III standing at the pleading stage" in harmful emission cases, she "need only allege that Defendant discharges a pollutant into the community that causes or contributes to the kinds of injuries she suffered." (Doc. 31, at 1.) She relies on various cases to argue Article III traceability is a "low bar" in these types of cases. (Id. at 4-5.) Defendant rebuts these assertions, arguing Plaintiff's standard "is not the standard for pleading traceability *in the context of harmful emissions*. This is the standard for pleading traceability *in the context of citizen suits*

7

*under the Clean Water Act ("CWA")."* (Doc. 33, at 3-4 (emphasis in original)). Defendant argues all the cases Plaintiff cites for the "low-bar" traceability standard involve the CWA or Clean Air Act ("CAA"), not personal injury claims, and those cases are materially distinct from the case at hand – one in which courts require a higher showing of traceability. (Id. at 4-5.)

1. Analysis

Standing is an essential, limiting aspect on the power of the federal courts. Spokeo, Inc. v. Robins, 578 U.S. 330, 337 (2016). Only plaintiffs who "have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision" have standing to sue. Id. at 338 (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992)). Here, the second element, traceability, is contested.

"The traceability prong means it must be likely that the injury was caused by the conduct complained of and not by the independent action of some third party not before the court." Friends of the Earth, Inc. v. Gaston Copper Recycling Corp., 204 F.3d 149, 154 (4th Cir. 2000). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." Spokeo, 578 U.S. at 338 (citation omitted). "[A]t the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." Id. (citation omitted).

Citing CWA and CAA cases, Plaintiff asserts she must only satisfy a low bar for traceability. (Doc. 31, at 5-7 (citing Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs, 781 F.3d 1271 (11th Cir. 2015); Jones Creek Invs., LLC v. Columbia Cnty., 98 F. Supp. 3d 1279 (S.D. Ga. 2015); New Manchester Resort & Golf, LLC v. Douglasville Dev., LLC, 734 F. Supp. 2d 1326 (N.D. Ga. 2010)). However, Defendant is correct in arguing that in these types of cases, "Congress authorized any person with 'an interest which is or may be adversely affected' to bring a civil suit to correct violations of the CWA" and "gave citizens the right to protect intangible 'interests' in the environment." (See Doc. 33, at 4-5 (citing 33 U.S.C. § 1365(g); Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc., 528 U.S. 167, 182 (2000)).) The Eleventh Circuit recognized as much in Black Warrior Riverkeeper, where it found allegations of aesthetic harm, recreational harm, and threat to Plaintiffs' members "health by drinking water . . . [fell] within the zone of interests contemplated by the CWA and [the National Environmental Policy Act ("NEPA")]." Black Warrior Riverkeeper, 781 F.3d at 1280.

As Defendant argues, "Plaintiff is not suing to protect intangible interests in the environment or to enforce federal law. She is suing to recover for an alleged personal injury." (Doc. 33, at 5.) Therefore, Defendant argues the facts in this case differentiate it from those which warrant the low-bar standard

9

called for in CWA and CAA cases. (Id.) Further, Defendant argues Plaintiff fails to allege Decedent's injuries are fairly traceable to its conduct because the link between its conduct and Plaintiff's injury is too attenuated. (Doc. 30, at 4.) As it argues, "Plaintiff simply has not alleged facts supporting an inference that alleged emissions from KPR's facility caused any exposure above background levels of EtO." (Doc. 33, at 7.)

The Court agrees the traceability standard utilized in CWA and CAA cases is materially distinct from the standard utilized in tort cases. As stated by a sister court deciding a tort case in this circuit, "the [CWA and CAA] cases [Plaintiff relies] upon for this proposition are not binding on this Court [in this context] and all concern the discharge by one or two defendants of pollutants into waterways." Coffie v. Fla. Crystals Corp., 460 F. Supp. 3d 1297, 1305 (S.D. Fla. 2020) (citations omitted). The low bar of traceability required to establish CWA and CAA standing is different than the traditional level of traceability required in tort cases, like this harmful emissions case. Compare Adinolfe v. United Tech. Corp., 768 F.3d 1161, 1164 (11th Cir. 2014) (finding a plaintiff's injuries fairly traceable in the tort context where "the plaintiffs claimed [defendant's] chemicals migrated to [the subject property where they resided] via the southward-flowing aquifer underlying both [defendant's] plant and [plaintiffs' property]," among other allegations) with Black Warrior

10

Riverkeeper, 781 F.3d at 1280 (analyzing whether that plaintiff's claims fell "within the zone of interests contemplated by the CWA and NEPA"); Jones Creek Invs., 98 F. Supp. 3d at 1298 (enumerating the traceability requirements "in a [CWA] case"); and New Manchester Resort & Golf, 734 F. Supp. 2d at 1333-34 (same). For tort cases in which Congress has not specially provided a lower standard of traceability, the Court is not empowered to utilize the lower bar it has authorized for cases in a different context. As such, for this toxic tort case the Court must utilize the traditional standard for traceability.

To satisfy the traditional traceability requirement, Plaintiff must allege injuries that are "fairly traceable" to Defendant's actions. Spokeo, 578 U.S. at 338. "[I]t must be likely that the injury was caused by the conduct complained of and not by the independent action of some third party not before the Court." Gaston Copper Recycling Corp., 204 F.3d at 154 (citation omitted). Although proving causation is not required at the motion to dismiss stage, "there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party." Lujan, 504 U.S. at 560-61 (alterations adopted and citation and quotations omitted); see also Debernardis v. IQ Formulations, LLC, 942 F.3d 1076, 1088 (11th Cir. 2019) ("To establish standing, a plaintiff

11

must allege that her injury is fairly traceable to the challenged conduct of the defendant. Under this requirement, the line of causation between the alleged conduct and the injury must not be too attenuated." (citations and quotations omitted)).

In this case, Plaintiff alleges the census tract in which Defendant's facility is located has a heightened potential cancer risk of 64 parts per one million due to exposure of air toxins. (Am. Compl., at 11.) Further, she alleges Decedent lived about 5-6 miles from Defendant's facility most of her life. (Id. at 16.) Between 2003 and 2008, she also attended school 5 miles from Defendant's facility. (Id.) Plaintiff alleges Decedent "consistently inhaled air in and around her home, school, and in the Augusta area" and "[a]s a result, [Decedent] was diagnosed with acute myelogenous leukemia in 2014." (Id.)

Even accepting all of Plaintiff's allegations as true, Decedent's injuries cannot be plausibly traced to this Defendant's emissions. Plaintiff describes the Augusta-area census tract with elevated EtO emissions that raise the rate of cancer like Decedent's; she also pleads she lived about 5-6 miles from the facility. (Id. at 11, 16.) Crucially, however, Plaintiff fails to allege Decedent's home and school were within the census tract with the heightened risk of cancer – instead she vaguely alleges Decedent "inhaled air in and around her home, school, and in the Augusta area." (Id. at 16.) Nowhere does Plaintiff allege

12

Decedent resided or went to school *within* the elevated-risk census tract or in any other particular concrete area in which Defendant caused elevated risks of cancer. To allow Plaintiff to proceed without any allegation of how far Defendant's pollution stretched (even if only to Decedent's front door) would be to allow any Augusta-area resident – indeed, any resident of an indefinite area surrounding Defendant's plant to sue Defendant for its EtO emissions. Those injuries could not be fairly traced to this Defendant's emissions. Without more information – even just slightly more than a threadbare allegation that Defendant's EtO emissions reached Decedent's residence or school – Plaintiff has failed to provide facts that would allow the plausible inference that Decedent's injuries are fairly traceable to Defendant's activities. Article III requires more than a claim of exposure merely because Decedent's residence was within a 5 or 6-mile radius of pollution; Plaintiff must at least plead facts allowing the Court to plausibly find Decedent's injury was fairly traceable to Defendant's alleged pollution. In all, the Court finds traceability is too speculative and attenuated to establish standing in this case because there is no evidence Plaintiff was even ever within the area of heightened risk. Therefore, Plaintiff lacks standing, and her Amended Complaint shall be **DISMISSED**.

13

## B. Failure to State a Claim

Even if Plaintiff had established standing, Defendant additionally moved to dismiss the Amended Complaint under Rule 12(b)(6) for failure to state a claim. (Doc. 30, at 8.) The Court will address Defendant's statute of limitations argument. Defendant argues Plaintiff's claims are barred by the two-year statute of limitations and the discovery rule does not apply to claims belonging to a decedent's estate. (Id. at 9-10.) Plaintiff believes the discovery rule applies and therefore her claims are not barred. (Doc. 31, at 21.)

This is a diversity action, so the Court must apply Georgia's statute of limitations to determine whether Plaintiff's Amended Complaint is timely. See Cambridge Mut. Fire Ins. Co. v. City of Claxton, 720 F.2d 1230, 1232 (11th Cir. 1983) ("[S]tate statutes of limitations are substantive laws and must be followed by federal courts in diversity actions." (citation omitted)). Georgia law provides "actions for injuries to the person shall be brought within two years after the right of action accrues . . . ." O.C.G.A. § 9-3-33; see also Adair v. Baker Bros., Inc., 366 S.E.2d 164, 165 (Ga. Ct. App. 1988) ("[A]n action to recover for personal injuries is, in essence, a personal injury action, and, regardless of whether it is based upon an alleged breach of an implied warranty or is based upon an alleged tort, the limitations statute governing actions for personal injuries is controlling."); Daniel

14

v. Am. Optical Corp., 304 S.E.2d 383 (Ga. 1983) (holding that O.C.G.A. § 9-3-33 applies to personal injury actions brought under theories of strict liability and negligence). Here, Plaintiff's claims are based on an injury to Decedent and therefore O.C.G.A. § 9-3-33 applies.

Plaintiff brings claims on behalf of Decedent for her leukemia caused by alleged EtO emissions. (Am. Compl., at 1, 18-19.) Under the discovery rule, "[a] cause of action will not accrue . . . until the plaintiff discovers or in the exercise of reasonable diligence should have discovered not only that [s]he has been injured but also that [the] injury may have been caused by the defendant's conduct." King v. Seitzingers, Inc., 287 S.E.2d 252, 254 (Ga. Ct. App. 1981). However, this rule only applies for continuing torts. M.H.D. v. Westminster Schs., 172 F.3d 797, 804-05 (11th Cir. 1999) ("[I]n Georgia the discovery rule only applies to cases involving 'continuing torts,' where the plaintiff's injury developed from prolonged exposure to the defendant's tortious conduct." (citation omitted)). Because Plaintiff alleges Decedent was exposed to EtO emissions for years which ultimately caused her leukemia, the Court will assume Decedent suffered from a continuing tort.

Decedent was diagnosed with acute myelogenous leukemia in 2014 and passed away in 2015. (Am. Compl., at 16.) Based on this, she discovered her injury in 2014. However, Plaintiff alleges

15

neither she nor Decedent noticed it was wrongfully caused or caused by Defendant's EtO emissions until December 2019. (Id.) Plaintiff does not allege how she "discovered" this link, but only gives the date. Defendant argues "a bare allegations that a plaintiff 'could not have reasonably learned' of the facts on which her claim was based, 'without more, is insufficient to satisfy the pleading requirements as to tolling.'" (Doc. 33, at 9 (quoting Patel v. Diplomat 1419VA Hotels, LLC, 605 F. App'x 965, 966 (11th Cir. 2015)). In opposition, Plaintiff cites to Dollar v. Monsanto Co., No. 2:20-cv-78, 2021 WL 2300788, at *4 (S.D. Ga. June 4, 2021) for holding "a claim for wrongful death damages accrues by virtue of the decedent's passing, whereas a claim for damages in a survival action accrues in the same way it would have had the decedent not passed." (See Doc. 31, at 21-22.)

Pursuant to the discovery rule in Georgia, the statute of limitations will not run until Decedent knew, or through the exercise of reasonable diligence should have discovered, not only her injury but also the causal connection between her injury and the negligent conduct. See King, 287 S.E.2d at 255. Therefore, tolling would be appropriate if Plaintiff alleged she could not have known prior to 2019 that Decedent's injuries were caused by Defendant. However, the Amended Complaint simply states neither Plaintiff nor Decedent "had notice that [Decedent's] medical condition was wrongfully caused or that it was caused by

16

Defendant's emissions." (Am. Compl., at 16.) There are no allegations that reasonable diligence could not have uncovered the cause of Decedent's leukemia. In Plaintiff's response to the motion to dismiss, she argues she "did not begin to suspect that Defendant was emitting EtO, or that Defendant's EtO emissions were the cause of Decedent's medical condition, until after Decedent's death." (Doc. 31, at 23.) Once again, however, there is no explanation or allegation that neither she nor Decedent could not have discovered the alleged linkage to Defendant with reasonable diligence. Based on this, the Court finds the statute of limitations on Plaintiff's tort claims has run and this is an additional ground for dismissal.

### IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's motion to dismiss (Doc. 30) is **GRANTED** and this matter is **DISMISSED**. The Clerk is **DIRECTED** to **TERMINATE** all pending motions and deadlines, if any, and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this 5th day of August 2022.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA