IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>PLAINTIFF,<br><br>v.<br><br>$58,740.00 IN UNITED STATES CURRENCY,<br><br>DEFENDANT. | Civil Action No. |

**VERIFIED COMPLAINT FOR FORFEITURE**

COMES NOW plaintiff United States of America, by Ryan K. Buchanan, United States Attorney, and Norman L. Barnett, Assistant United States Attorney, for the Northern District of Georgia, and shows the Court the following in support of its Verified Complaint for Forfeiture:

**NATURE OF THE ACTION**

1. This is a civil forfeiture action against $58,740.00 in United States currency ("Defendant Currency") that the U.S. Drug Enforcement Administration ("DEA") seized from Darren Mason at Hartfield-Jackson Atlanta International Airport on or about October 19, 2022 following a consensual encounter between DEA agents and Mason while Mason was waiting to board Delta Flight 412 to Los

Angeles, California.

2. Defendant Currency is presently being maintained by the United States Marshals Service in a secure account.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355.

4. This Court has in rem jurisdiction over the Defendant Currency pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(A) because the acts or omissions giving rise to the forfeiture occurred in this district, and pursuant to 28 U.S.C. § 1395 because the property is located in this district.

## BASIS FOR FORFEITURE

### Relevant Statutes

6. The Defendant Currency is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) on the grounds that it was furnished or intended to be furnished in exchange for a controlled substance, constitutes proceeds traceable to such an exchange, or was used or intended to be used to facilitate a violation of 21 U.S.C. § 841.

7.      The Defendant Currency also is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) on the grounds that it constitutes or was derived from proceeds traceable to a violation of a "specified unlawful activity."

8.      18 U.S.C. § 1956(c)(7) defines, in relevant part, a "specified unlawful activity" as any act or activity constituting an offense listed in 18 U.S.C. § 1961(1).

9.      18 U.S.C. § 1961(1) includes, as part of the list of offenses, "dealing in a controlled substance or listed chemical."

## Factual Background

*Seizure of the Defendant Currency*

10.     On or about October 19, 2022, DEA task force officers, while working to identify individuals possessing illegal drugs and/or large amounts of money, established surveillance near Gate A31 at Hartsfield-Jackson International Airport to conduct random consensual encounters of passengers boarding Delta Flight 412, to Los Angeles, California.

11.     TFOs Jarrod Browder and David Fikes observed a man later identified as Darren Mason running up to the gate area to scan his boarding pass.

12.     The TFOs observed that Mason appeared nervous and was looking around as he ran up to the gate.

13.     TFO Browder approached Mason and identified himself using his

DEA TFO credentials.

14. TFO Browder asked Mason if he could speak with Mason about his travels and asked Mason for identification.

15. Mason then appeared to become irate and began screaming, "why are y'all f***ing with me?"

16. Mason continued to be boisterous in the area where passengers were waiting to board the flight.

17. Based on the training and experience of officers involved in this investigation, drug couriers and traffickers become loud or make a scene during interactions with law enforcement officers to deter law enforcement officers from stopping them and to alert others that law enforcement officers are present.

18. TFO Browder de-escalated the interaction with Mason.

19. Mason then presented TFO Browder with a Georgia driver's license identifying himself as Darren Lars Mason.

20. TFO Browder explained that he works at the airport and conducts random interdiction stops looking for illegal drugs and people carrying large sums of U.S. currency.

21. TFO Browder asked Mason if he was carrying any illegal narcotics.

22. Mason, in response, said he was not.

23. TFO Browder then asked Mason if he was carrying any large sums of U.S. currency over $5,000.00.

24. In response, Mason said he was carrying around $30,000.00.

25. TFO Browder asked Mason if he had checked any bags.

26. Mason responded and confirmed that he checked a bag and that it contained a firearm.

27. TFO Browder asked Mason if he could search Mason's black cross body bag and Louis Vuitton duffle bag.

28. Mason gave TFO Browder verbal consent to search both bags.

29. TFO Browder searched the black cross body bag and observed a large amount of United States currency wrapped in three "$10,000.00" bank straps.

30. TFO Browder also searched the Louis Vuitton duffle bag and observed more U.S. currency in the main compartment of the bag.

31. TFO Browder also observed a small brown liquid medicine bottle in a pocket inside of the main compartment of the Louis Vuitton bag.

32. Mason later told Browder that the liquid in the medicine bottle was "lean."

33. Based on the training and experience of law enforcement officers involved in this investigation, promethazine with codeine is commonly referred

to as lean.

34. TFO Browder then asked Mason how much U.S. currency he was carrying.

35. Mason answered, about $42,000.00, which is a different estimate than the one previously provided by Mason.

36. TFO Browder observed a large bulge in the right front pocket of Mason's pants.

37. Based on this observation, TFO Browder asked Mason what the bulge was.

38. In response, Mason pulled an undetermined amount of U.S. currency out of is his right front pocket.

39. TFO Browder again asked Mason how much U.S. currency he was carrying.

40. Mason again responded that he was carrying around $42,000.00.

41. TFO Browder asked Mason what the reason for his travel was.

42. In response, Mason said he was going to Los Angeles to kick it and shop.

43. TFO Browder asked Mason when he purchased the ticket for his flight to Los Angeles.

44. Mason, in response, said he purchased the ticket on October 18, which was the day before his interaction with DEA on October 19, 2022.

45. According to Mason's flight itinerary, he purchased a one-way ticket to Los Angeles.

46. TFO Browder also asked Mason where he was going to stay in Los Angeles.

47. According to Mason, he did not have a hotel reservation.

48. TFO Browder asked Mason what kind of work he did.

49. Mason responded and said that he owned several businesses.

50. Then, TFO Browder asked Mason if he could show where the money came from out of the bank.

51. In response, Mason said that he could and that he is often paid in cash.

52. Mason attempted to show TFO Browder $23,000.00 in withdrawals but could not show cash withdrawals in that amount.

53. TFO Browder explained to Mason that his story did not add up regarding his travel plans and why he was carrying so much money.

54. DEA seized the money located in Mason's black cross-body bag, his Louis Vuitton bag, and his pocket.

55. The U.S. currency in Mason's black cross-body bag, his Louis Vuitton

bag, and pocket was later identified as Defendant Currency.

56. An official count of the Defendant Currency determined that it totaled $58,740.00 in United States currency.

57. Defendant Currency consisted of various denominations of U.S. Currency, including:

- 415 $100.00 bills,
- 114 $50.00 bills, and
- 573 $20.00 bills.

58. TFO Fikes witnessed TFO Browder place the Defendant Currency in a self-sealing evidence envelope and seal the envelope in Mason's presence.

59. TFOs transported the Defendant Currency to the Atlanta Field Division High Value Evidence Vault where it was held prior to an official count.

60. On October 26, 2022, Lord, a certified narcotics detection canine conducted an open-air sniff on the Defendant Currency with his handler Officer Jared Nuttall with the Brookhaven Police Department.

61. Lord gave a positive alert to the Defendant Currency.

62. Mason's criminal history includes convictions for the following offenses:

- violation of the uniform controlled substances act in Stuttgart,

Arkansas in 2005 and

- purchase, possession, manufacture, distribution or sale of marijuana in Douglas County, Georgia in 2018

63. On August 12, 2022, Mason was arrested in Fulton County, Georgia for possession of methamphetamine with intent to distribute, trafficking in cocaine, illegal drugs, marijuana or methamphetamine, and possession of firearm or knife during commission of or attempt to commit certain felonies.

*Administrative Proceedings*

64. DEA began administrative forfeiture proceedings against the Defendant Currency and sent notice to Mason.

65. On or about January 11, 2023, the DEA received an administrative claim from Mason where he asserted ownership of the Defendant Currency.

66. After receiving the claim, the DEA referred this matter to the United States Attorney's Office for judicial forfeiture proceedings, as required by 18 U.S.C. § 983(a)(3)(A).

**CONCLUSION**

67. Based on the foregoing, the Defendant Currency is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6) on the grounds that it was furnished or was intended to be furnished in exchange for a controlled

substance, that it constitutes proceeds traceable to such an exchange, or that it was used or was intended to be used to facilitate the possession of a controlled substance in violation of 21 U.S.C. § 841.

68.     The Defendant Currency is also subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C), because it constitutes or was derived from proceeds traceable to a specified unlawful activity, namely the illegal distribution of controlled substances.

WHEREFORE, the United States prays:

(1) that the Court forfeit the Defendant Currency to the United States of America;

(2) that the Court award Plaintiff the costs of this action; and

(3) that Plaintiff have such other and further relief as the Court deems just and proper under the facts and circumstances of this case.

This 11th day of April 2023.

                        Respectfully submitted,

        RYAN K. BUCHANAN
        *United States Attorney*
        *600 U.S. Courthouse*
        *75 Ted Turner Drive SW*
        *Atlanta, GA 30303*
        *(404) 581-6000   fax (404) 581-6181*

/s/NORMAN L. BARNETT
   *Assistant United States Attorney*
      Georgia Bar No. 153292
      norman.barnett@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| PLAINTIFF, | Civil Action No. |
| v. | |
| $58,740.00 IN UNITED STATES CURRENCY, | |
| DEFENDANT. | |

**VERIFICATION OF COMPLAINT FOR FORFEITURE**

I, Jarrod Browder, have read the Complaint for Forfeiture in this action and state that its contents are true and correct to the best of my knowledge and belief based upon my personal knowledge of the case and upon information obtained from other law enforcement personnel.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

This __11__ day of April 2023.

*Jarrod R. Browder*
_____
JARROD BROWDER
TASK FORCE OFFICER
DRUG ENFORCEMENT ADMINISTRATION