

Exhibit C

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

```
LORETTA BROWNMAN, et al.,        *
                                 *
        Plaintiffs,              *
                                 *
             v.                  *
                                 *       CV 121-112
KENDALL PATIENT RECOVERY U.S.,   *
LLC, a Delaware limited          *
liability corporation,           *
                                 *
        Defendant.               *
                                 *
```

## O R D E R

Plaintiffs, 23 individuals, bring this suit against Defendant Kendall Patient Recovery, U.S., LLC ("KPR") for negligence, willful and wanton misconduct, private nuisance, and ultrahazardous activity/strict liability. (Compl., Doc. 1, at 32-38.) Defendant filed a motion to dismiss in lieu of answering Plaintiffs' Complaint. (Doc. 10.) For the following reasons, Defendant's motion is **GRANTED**.

## I. BACKGROUND

On July 19, 2021, Plaintiffs filed their Complaint and Defendant moved to dismiss it on September 7, 2021 (Doc. 10). Plaintiffs filed a response in opposition (Doc. 23) and Defendant

replied in support (Doc. 31). Therefore, the motion has been fully briefed and is ready for the Court's review.

The Complaint brings four claims against Defendant for the harm it caused Plaintiffs due to emissions of toxic ethylene oxide ("EtO"). (Compl., at 2.) Defendant operates an industrial medical sterilization plant in Augusta, Georgia that uses and emits EtO as part of its sterilization process. (Id.) Plaintiffs state, without citation, that EtO "is an odorless, colorless gas that is dangerous, toxic, carcinogenic, and mutagenic." (Id. at 6.) Further, it "is highly reactive, readily taken up by the lungs, efficiently absorbed into the blood stream, and easily distributed throughout the human body." (Id.)

Plaintiffs' claims are brought pursuant to 28 U.S.C. § 1332(a) because the Parties are citizens of different states and the amount in controversy exceeds $75,000. (Id. at 4.) All Plaintiffs lived within 6 miles of Defendant's facility at various times from 1966 to now. (Id. at 17-32.) Of note, three Plaintiffs claim to have worked "at" or "in and around" the KPR facility. (Id. at 28, 30.) Plaintiffs have been diagnosed with numerous health complications since 1988, including miscarriages and various forms of cancer. (Id.) Plaintiffs "consistently . . . inhaled contaminated air in and around [their] home[s], [their] work, and in the areas surrounding the KPR facility" which Plaintiffs allege contained EtO from Defendant. (Id. at 17-32.) Plaintiffs failed to notice

their medical conditions were wrongfully caused or that they were caused by Defendant's EtO emissions, and they do not allege how or when the connection was discovered.

Plaintiffs now assert various claims against Defendant. First, they bring a negligence claim, alleging Defendant breached its duty in "one or more" ways. (Id. at 32.) Plaintiffs allege six breaches of Defendant's duty:

> a. Emitting dangerous volumes of EtO into the air from its facility;
> b. Disregarding safe methods to adequately control EtO emissions from its facility;
> c. Failing to control and report fugitive emissions of EtO;
> d. Failing to comply with Georgia's limits on EtO concentrations;
> e. Failing to warn or advise those who live or work in the community that they were being exposed to EtO; and
> f. Subjecting those who live and work nearby its facility to an elevated cancer risk.

(Id. at 32-33.) They state "[a]s a proximate result of one of the aforesaid negligent acts or omissions, Plaintiffs suffered injuries of a personal and pecuniary nature." (Id. at 33.) Next, Plaintiffs allege willful and wanton misconduct because "Defendant owed a duty to refrain from willful and wanton misconduct and/or conduct which exhibited an indifference and/or conscious disregard to the health, safety, and well-being of Plaintiffs." (Id.) They list the same six alleged breaches and assert Defendant acted with "a conscious disregard for the known dangers its EtO posed to its neighbors." (Id. at 34.)   Third, Plaintiffs allege a private

3

nuisance claim, arguing "Defendant's emissions of carcinogenic EtO interfere with Plaintiffs' enjoyment of property and cause hurt, inconvenience, or damage to Plaintiffs, including their ability to breathe air free of a carcinogenic toxin in the air on their property." (Id. at 35-36.) Finally, Plaintiffs bring a claim of ultrahazardous activity/strict liability, arguing Defendant's use and emission of EtO constitutes an ultrahazardous activity and created a high degree of risk to those who live and work in the surrounding area. (Id. at 37-38.) They argue that because the actions are ultrahazardous, Defendant "is strictly liable for any injuries proximately resulting therefrom." (Id. at 38.)

Defendant moves to dismiss Plaintiffs' Complaint for a variety of reasons. (Doc. 10.) First, it argues the Court lacks subject matter jurisdiction over Plaintiffs' claims because their injuries are not traceable to its conduct. (Id. at 4-8.) It also moves to dismiss Plaintiff Armstrong's claims under the Workers' Compensation Act. (Id. at 8.) Alternatively, Defendant moves to dismiss for failure to state a claim. (Id. at 8.) Defendant argues there is a two-year statute of limitations for personal injury actions; therefore, any of Plaintiffs' claims before August 3, 2019 are time-barred and not subject to tolling. (Id. at 9-11.) Additionally, it argues Plaintiffs fail to state claims for any of the four alleged counts, and Defendant is not liable under a theory of strict liability because Georgia does not classify

these acts as inherently dangerous.  (Id. at 11-25.)   The Court
addresses Defendant's arguments below.

## II. LEGAL STANDARD

In considering a motion to dismiss under Rule 12(b)(6), the
Court tests the legal sufficiency of the complaint.  Scheuer v.
Rhodes, 416 U.S. 232, 236 (1974), *overruled on other grounds by*
Davis v. Scherer, 468 U.S. 183 (1984).  Pursuant to Federal Rule
of Civil Procedure 8(a)(2), a complaint must contain "a short and
plain statement of the claim showing that the pleader is entitled
to relief" to give the defendant fair notice of both the claim and
the supporting grounds.  Bell Atl. Corp. v. Twombly, 550 U.S. 544,
555 (2007).   Although "detailed factual allegations" are not
required, Rule 8 "demands more than an unadorned, the-defendant-
unlawfully-harmed-me accusation."   Ashcroft v. Iqbal, 556 U.S.
662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

A plaintiff's pleading obligation "requires more than labels
and conclusions, and a formulaic recitation of the elements of a
cause of action will not do."  Twombly, 550 U.S. at 555.   "Nor
does a complaint suffice if it tenders 'naked assertions' devoid
of 'further factual enhancement.'"  Iqbal, 556 U.S. at 678 (quoting
Twombly, 550 U.S. at 557).   The Court need not accept the
pleading's legal conclusions as true, only its well-pleaded facts.
Id. at 677-79.   Furthermore, "the court may dismiss a complaint

5

pursuant to [Rule 12(b)(6)] when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (citing Exec. 100, Inc. v. Martin Cnty., 922 F.2d 1536, 1539 (11th Cir. 1991)).

### III. DISCUSSION

The Court first addresses Defendant's argument regarding subject matter jurisdiction and then addresses its additional grounds for dismissal.

#### A. Subject Matter Jurisdiction

First, Defendant argues the Court lacks subject matter jurisdiction over Plaintiffs' claims because the "Complaint does not plausibly show that their alleged injuries are attributable to EtO emissions at all, much less [Defendant's] conduct," and speculation does not satisfy the traceability requirements for standing. (Doc. 10, at 4, 8.) Defendant argues "Plaintiffs rely on a speculative chain of possibilities to reach the unsupported conclusion that their alleged injuries are actually traceable to [Defendant's] conduct, rather than something else." (Id. at 4-5.) Overall, Defendant asserts Plaintiffs lack standing because they "offer only speculation that (1) their injuries were caused by EtO and (2) any EtO that caused their injuries was emitted by

6

[Defendant]." (Id. at 7.) Defendant argues Plaintiffs' referenced studies "contradict those conclusory allegations and show that their alleged injuries not only could have been, but were statistically much more likely to have been, caused by an independent source or a third party." (Id.)

In response, Plaintiffs assert that "to establish Article III standing at the pleading stage" in harmful emission cases, they "need only allege that Defendant discharges a pollutant into the community that causes or contributes to the kinds of injuries they suffered." (Doc. 23, at 2.) They rely on various precedents to argue Article III traceability is a "low bar" in these types of cases. (Id. at 5-8.) Defendant rebuts these assertions, arguing Plaintiffs' standard "is not the standard for pleading traceability *in the context of harmful emissions*. This is the standard for pleading traceability *in the context of citizen suits under the Clean Water Act ("CWA")*." (Doc. 31, at 2 (emphasis in original)). Defendant argues all the cases Plaintiffs cite for the "low-bar" traceability standard involve the CWA or Clean Air Act ("CAA"), not personal injury claims, and those cases are materially distinct from the case at hand - one in which courts require a higher showing of traceability. (Id. at 3-4.)

Standing is an essential, limiting aspect on the power of the federal courts. Spokeo, Inc. v. Robins, 578 U.S. 330, 337 (2016). Only plaintiffs who "have (1) suffered an injury in fact, (2) that

is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision" have standing to sue. Id. at 338 (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992)). Here, the second element, traceability, is contested.

"The traceability prong means it must be likely that the injury was caused by the conduct complained of and not by the independent action of some third party not before the court." Friends of the Earth, Inc. v. Gaston Copper Recycling Corp., 204 F.3d 149, 154 (4th Cir. 2000). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." Spokeo, 578 U.S. at 338 (citation omitted). "[A]t the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." Id. (citation omitted).

Citing CWA and CAA cases, Plaintiffs assert they must only satisfy a low bar for traceability. (Doc. 23, at 6-8 (citing Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs, 781 F.3d 1271 (11th Cir. 2015); Jones Creek Invs., LLC v. Columbia Cnty., 98 F. Supp. 3d 1279 (S.D. Ga. 2015); New Manchester Resort & Golf, LLC v. Douglasville Dev., LLC, 734 F. Supp. 2d 1326 (N.D. Ga. 2010)). However, Defendant is correct in arguing that in these types of cases, "Congress authorized any person with 'an interest which is or may be adversely affected' to bring a civil suit to correct violations of the CWA" and "gave citizens the right to

protect intangible 'interests' in the environment." (See Doc. 31, at 3-4 (citing 33 U.S.C. § 1365(g); Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc., 528 U.S. 167, 182 (2000)).) The Eleventh Circuit recognized as much in Black Warrior Riverkeeper, where it found allegations of aesthetic harm, recreational harm, and threat to Plaintiffs' members "health by drinking water . . . [fell] within the zone of interests contemplated by the CWA and [the National Environmental Policy Act ("NEPA")]." Black Warrior Riverkeeper, 781 F.3d at 1280.

As Defendant argues, "Plaintiffs are not suing to protect intangible interests in the environment or to enforce federal law. They are suing to recover for alleged bodily injuries." (Doc. 31, at 4.) Therefore, Defendant argues the facts in this case differentiate it from those which warrant the low-bar traceability standard called for in CWA and CAA cases. (Id.) Further, Defendant argues Plaintiffs fail to allege their injuries are fairly traceable to its conduct because the link between its conduct and their injuries is too attenuated. (Doc. 10, at 4.) As it argues, "Plaintiffs simply have not alleged facts supporting an inference that alleged emissions from [Defendant's] facility caused them any exposure above background levels of EtO." (Doc. 31, at 6.)

The Court agrees the traceability standard utilized in CWA and CAA cases is materially distinct from the standard utilized in

9

tort cases. As stated by a sister court deciding a tort case in this circuit, "the [CWA and CAA] cases Plaintiffs rely upon for this proposition are not binding on this Court [in this context] and all concern the discharge by one or two defendants of pollutants into waterways." <u>Coffie v. Fla. Crystals Corp.</u>, 460 F. Supp. 3d 1297, 1305 (S.D. Fla. 2020) (citations omitted). The low bar of traceability required to establish CWA and CAA standing is different than the traditional level of traceability required in tort cases, like this harmful emissions case. <u>Compare</u> <u>Adinolfe v. United Tech. Corp.</u>, 768 F.3d 1161, 1164 (11th Cir. 2014) (finding a plaintiff's injuries fairly traceable in the tort context where "the plaintiffs claimed [defendant's] chemicals migrated to [the subject property where they resided] via the southward-flowing aquifer underlying both [defendant's] plant and [plaintiffs' property]," among other allegations) <u>with</u> <u>Black Warrior Riverkeeper</u>, 781 F.3d at 1280 (analyzing whether that plaintiff's claims fell "within the zone of interests contemplated by the CWA and NEPA"); <u>Jones Creek Invs.</u>, 98 F. Supp. 3d at 1298 (enumerating the traceability requirements "in a [CWA] case"); <u>and</u> <u>New Manchester Resort & Golf</u>, 734 F. Supp. 2d at 1333-34 (same). For tort cases in which Congress has not specially provided a lower standard of traceability, the Court is not empowered to utilize the lower bar it has authorized for cases in a different context.

As such, for this toxic tort case, the Court must utilize the traditional standard for traceability.

To satisfy the traditional traceability requirement, Plaintiffs must allege injuries that are "fairly traceable" to Defendant's actions. Spokeo, 578 U.S. at 338. "[I]t must be likely that the injury was caused by the conduct complained of and not by the independent action of some third party not before the Court." Gaston Copper Recycling Corp., 204 F.3d at 154 (citation omitted). Although proving causation is not required at the motion to dismiss stage, "there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party." Lujan, 504 U.S. at 560-61 (alterations adopted and citation and quotations omitted); see also Debernardis v. IQ Formulations, LLC, 942 F.3d 1076, 1088 (11th Cir. 2019) ("To establish standing, a plaintiff must allege that her injury is fairly traceable to the challenged conduct of the defendant. Under this requirement, the line of causation between the alleged conduct and the injury must not be too attenuated." (citations and quotations omitted)).

In this case, Plaintiffs allege the census tract in which Defendant's facility is located has a heightened potential cancer risk of 64 parts per one million due to exposure of air toxins. (Compl., at 13.) Further, they allege they have lived, worked, or

11

gone to school near Defendant's facility for extended periods of time. (Id. at 17-32.)  They allege they "inhaled contaminated air" in and around their home, work, and in the areas surrounding Defendant's facility and "[a]s a result," were diagnosed with various health conditions.  (Id.)

Even accepting all of Plaintiffs' allegations as true, all but three Plaintiffs' injuries cannot be plausibly traced to this Defendant's emissions.  Plaintiffs describe the Augusta-area census tract with elevated EtO emissions that raise the rate of medical conditions like theirs; they also plead they lived or went to school or work in the area around the facility.  (Id.) Crucially, however, Plaintiffs fail to allege their homes, schools, and workplaces were actually within the census tract with the heightened risk of medical conditions due to EtO.  Instead, they vaguely allege they inhaled air in and around their home, school, workplace, and in the Augusta area.  (Id.)  Nowhere do Plaintiffs allege they resided, worked, or went to school within the elevated-risk census tract or in any other particular concrete area in which Defendant caused elevated EtO emission levels.  To allow Plaintiffs to proceed without any allegations of how far Defendant's pollution stretched (even if only to their front doors) would be to allow any Augusta-area resident - indeed, any resident of an indefinite area surrounding Defendant's plant, to sue Defendant for its EtO emissions.  Those injuries could not be

fairly traced to this Defendant's emissions. Without more information – even just slightly more than a threadbare allegation that Defendant's EtO emissions reached Plaintiffs' residences, offices, or schools - Plaintiffs have failed to provide facts that would allow the plausible inference that their injuries are fairly traceable to Defendant's activities. Article III requires more than a claim of exposure merely because Plaintiffs live or work near a source of pollution; Plaintiffs must at least plead facts allowing the Court to plausibly find their injuries were fairly traceable to Defendant's alleged emissions. In all, the Court finds traceability is too speculative and attenuated to establish standing in this case because there is no evidence Plaintiffs were ever even within the area of heightened risk.

However, three exceptions exist to this finding. First, Plaintiff Sabrina Watkins alleges she "worked in or around the KPR facility" between 2000 and 2004. (Id. at 30.) Plaintiff Susan Kelly alleges she "worked in or around the KPR facility" between 1989 and 2003." (Id.) And Plaintiff Alopecia Armstrong "worked at the KPR facility" between 1990 and 1997." (Id. at 24.) These Plaintiffs *have* claimed they worked within the designated census tract where Defendant's facility sits - specifically, they claim they spent years inside or around the facility itself. In these instances, the Court finds these Plaintiffs' injuries *are* fairly traceable to Defendant's alleged conduct; therefore, Plaintiffs

13

Watkins, Kelly, and Armstrong (hereinafter the "Remaining Plaintiffs") have standing to pursue their claims.

In sum, all of the Plaintiffs except Plaintiffs Watkins, Kelly, and Armstrong lack standing, and their claims are accordingly **DISMISSED WITHOUT PREJUDICE**. The Court will address Defendant's other grounds for dismissal for the Remaining Plaintiffs.

**B. Failure to State a Claim**

Defendant moves to dismiss the Remaining Plaintiffs' claims under Rule 12(b)(6) for failure to state a claim. (Doc. 10, at 8.) The Court will first address Defendant's arguments below.

1. Statute of Limitations

First, Defendant argues Plaintiffs' claims are barred by the two-year statute of limitations. (Id. at 9-11.) Plaintiffs believe the discovery rule applies and therefore their claims are not barred. (Doc. 23, at 20-23.)

This is a diversity action, so the Court must apply Georgia's statute of limitations to determine whether Plaintiffs' Complaint is timely. See Cambridge Mut. Fire Ins. Co. v. City of Claxton, 720 F.2d 1230, 1232 (11th Cir. 1983) ("[S]tate statutes of limitations are substantive laws and must be followed by federal courts in diversity actions." (citation omitted)). Georgia law provides "actions for injuries to the person shall be brought within two years after the right of action accrues . . . ."

14

O.C.G.A. § 9-3-33; see also Adair v. Baker Bros., Inc., 366 S.E.2d 164, 165 (Ga. Ct. App. 1988) ("[A]n action to recover for personal injuries is, in essence, a personal injury action, and, regardless of whether it is based upon an alleged breach of an implied warranty or is based upon an alleged tort, the limitations statute governing actions for personal injuries is controlling."); Daniel v. Am. Optical Corp., 304 S.E.2d 383 (Ga. 1983) (holding that O.C.G.A. § 9-3-33 applies to personal injury actions brought under theories of strict liability and negligence).

The remaining, traceable claims are for the following injuries: Plaintiff Armstrong's breast cancer in 2007; Plaintiff Kelly's lump removal in her right breast in 1997, colon cancer in 2016, a uterine tumor in 2020, and two miscarriages at unknown times; and Plaintiff Watkins's five miscarriages between 1999 and 2017. (Compl., at 24, 30-31.) Under the discovery rule, "[a] cause of action will not accrue . . . until the plaintiff discovers or in the exercise of reasonable diligence should have discovered not only that [s]he has been injured but also that [the] injury may have been caused by the defendant's conduct." King v. Seitzingers, Inc., 287 S.E.2d 252, 254 (Ga. Ct. App. 1981). However, this rule only applies for continuing torts. M.H.D. v. Westminster Schs., 172 F.3d 797, 804-05 (11th Cir. 1999) ("[I]n Georgia the discovery rule only applies to cases involving 'continuing torts,' where the plaintiff's injury developed from

15

prolonged exposure to the defendant's tortious conduct." (citation omitted)). Because the Remaining Plaintiffs allege they were exposed to EtO emissions for years which ultimately caused their injuries, the Court will assume they suffered from continuing torts.

The Remaining Plaintiffs' injuries, respectively, occurred in 2007; 1997, 2016, and 2020; and between 1997 and 2017. (Compl., at 24, 30-31.) These were accordingly the times each Remaining Plaintiff discovered each respective injury. However, no Remaining Plaintiff alleges when she actually realized her injuries were wrongfully caused or caused by Defendant's EtO emissions – instead, they simply state "[a]t the time of [the] diagnosis, [Plaintiffs] did not have notice that [their] medical condition was wrongfully caused or that it was caused by the Defendant's emission of [EtO]." (Id.) Plaintiffs do not allege how they "discovered" this link, or when they discovered it. Defendant argues "a bare allegation that a plaintiff 'could not have reasonably learned' of the facts on which [her] claim was based, 'without more, is insufficient to satisfy the pleading requirements as to tolling.'" (Doc. 31, at 11 (quoting Patel v. Diplomat 1419VA Hotels, LLC, 605 F. App'x 965, 966 (11th Cir. 2015)). Plaintiffs cite to Dollar v. Monsanto Co., No. 2:20-cv-78, 2021 WL 2300788, at *4 (S.D. Ga. June 4, 2021) in support of their tolling argument, noting that in Dollar, the Court "den[ied

a] motion to dismiss where plaintiff alleged she did not know that husband's death was caused by exposure to Defendant's products until one year before suit." (See Doc. 23, at 22.) Importantly, Plaintiffs ignore that the Dollar plaintiff alleged she "'did not know, nor through the exercise of reasonable diligence should she have known or discovered' that [her] injuries were caused by exposure to Defendant's . . . products." 2021 WL 2300788, at *5.

Pursuant to the discovery rule in Georgia, the statute of limitations will not run until Plaintiffs knew, or through the exercise of reasonable diligence should have discovered, not only their injuries but also the causal connection between their injuries and the negligent conduct. See King, 287 S.E.2d at 255. Therefore, tolling would be appropriate if Plaintiffs alleged they could not have known prior to July 19, 2019 that their injuries were caused by Defendant. However, the Complaint simply states Plaintiffs "did not have notice that [their] medical condition[s] [were] wrongfully caused or that [they were] caused by Defendant's emissions of [EtO]." (Compl., at 24, 30-31.) There are no allegations that reasonable diligence could not have uncovered the cause of Plaintiffs' injuries. In Plaintiffs' response to the motion to dismiss, they argue "there's no indication - certainly nothing apparent from the face of the complaint - that they knew or should have known that Defendant's EtO emissions were the cause of [their injuries] at the time." (Doc. 23, at 22.) That is

17

precisely the problem; there is no explanation or allegation that
Plaintiffs could not have discovered the alleged linkage to
Defendant with reasonable diligence. Furthermore, it is
Plaintiffs' responsibility to demonstrate tolling is appropriate.
See Patel, 605 F. App'x at 966 (11th Cir. 2015) ("[T]he statute of
limitations bars [plaintiff's] claims unless [plaintiff] alleged
facts supporting tolling of the statute of limitations.") Based
on this, the Court finds the statute of limitations has run on the
Remaining Plaintiffs' tort claims except for Plaintiff Kelly's
diagnosis of a uterine tumor in 2020. (Compl., at 31.) Since the
action was filed in July 2021, an injury from 2020 falls within
the two-year statute of limitations.

The Court also notes Plaintiffs' argument that "the statute
of limitations on a continuous tort claim is tolled until the
plaintiff's exposure to the ongoing hazard ends — either through
defendant's abatement of it, defendant's warning plaintiff of it,
or plaintiff's removal from it." (Doc. 23, at 22 (citation
omitted).) Plaintiffs accordingly claim that "for the Plaintiffs
who continue to live near Defendant's facility, the statute of
limitations hasn't even started running, regardless of when their
claims accrued." (Id. at 23.) This argument fails because, as
described above, Plaintiffs' claims are only traceable to their
employment in or at the Defendant's facility; their claims for
living "near" the facility are not sufficiently traceable to

Defendant. The continuous exposure, then, ended for Plaintiff Armstrong in 1997, for Plaintiff Watkins in 2004, and for Plaintiff Kelly in 2003. (Compl., at 24, 30-31.) The two-year statute of limitations for continuous torts accordingly started to run as of those dates.

In sum, Plaintiffs' claims – with the exception of Plaintiff Kelly's claim resulting from her 2020 uterine cancer diagnosis – are barred by the statute of limitation and are hereby **DISMISSED**.[1]

2. Failure to State a Claim

The only remaining claim is Plaintiff Kelly's 2020 diagnosis of a uterine tumor. (Compl., at 31.) Plaintiff Kelly alleges she worked "in and around" Defendant's facility between 1989 and 2003. (Id. at 30.) She brings claims for negligence, willful and wanton misconduct, private nuisance, and strict liability based on ultrahazardous activity. (Id. at 32-38.) The Court addresses each claim below, and notes that from this point forward, the Court will refer to Plaintiff Kelly simply as "Plaintiff."

a. Negligence

First, Plaintiff brings a claim for negligence. (Compl., at 32.) She alleges "Defendant owed a duty to exercise reasonable care in the operation of its facility, including the emission of

---

[1] Because Plaintiff Armstrong's claims are barred under the statute of limitations and Plaintiff alleges she was exposed to the EtO outside work as well, the Court does not address Defendant's argument regarding the Workers' Compensation Act. (See Doc. 10, at 8; Doc. 23, at 23-24.)

EtO." (Id.) She claims "Defendant breached its duty in one of more of the" six ways listed above, which the Court repeats for ease of reference:

> a. Emitting dangerous volumes of EtO into the air from its facility;
> b. Disregarding safe methods to adequately control EtO emissions from its facility;
> c. Failing to control and report fugitive emissions of EtO;
> d. Failing to comply with Georgia's limits on EtO concentrations;
> e. Failing to warn or advise those who live or work in the community that they were being exposed to EtO; and
> f. Subjecting those who live and work nearby its facility to an elevated cancer risk.

(Id. at 32-33.) She claims she was injured "[a]s a proximate result of one of the aforesaid negligent acts or omissions." (Id. at 33.)

> To state a cause of action for negligence in Georgia, the following elements are essential: (1) a legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty.

Johnson v. Wal-Mart Stores East, LP, No. CV 617-003, 2018 WL 3863530, at *3 (S.D. Ga. July 30, 2018) (citing Bradley Ctr., Inc. v. Wessner, 296 S.E.2d 693 (Ga. 1982)). Defendant challenges Plaintiff's assertions on each of these elements, and the Court will address them in turn.

First, Defendant argues Plaintiff was not owed any duty by Defendant, so it cannot satisfy the first element of negligence. (Doc. 10, at 12-15.) Specifically, it argues the factual allegations in the Complaint do not support Plaintiff's allegations that Defendant "[f]ail[ed] to control and report fugitive emissions of EtO" because "Plaintiff[] do[es] not identify any control or reporting requirements that exist for such emission, much less with which [Defendant] failed to comply." (Id. at 12-13 (citing Compl., at 32).) Defendant argues the Plaintiff does not support her allegations that Defendant "fail[ed] to comply with Georgia's limits on EtO concentrations" because Plaintiff "do[es] not identify any legal limits that [Defendant] exceeded at any time." (Id.) Defendant also argues "[e]ven assuming EtO caused Plaintiff['s] injuries, such harm was not foreseeable based on contemporary information, and [Defendant] did not have a duty to protect against an unforeseeable harm." (Id. at 14-19.)

"Negligence is premised on, among other things, a duty owed by the defendant to the plaintiff." Dep't of Labor v. McConnell, 828 S.E.2d 352, 358 (Ga. 2019). Defendant does not owe a legal duty "to all the world not to subject others to an unreasonable risk of harm." Id. at 816 (alteration omitted); see also Baker v. G4S Secure Solutions (USA) Inc., No. 4:18-cv-267, 2020 WL 5096520, at *4 (S.D. Ga. Aug. 28, 2020). Rather, "a legal duty sufficient to support liability in negligence is either a duty imposed by a

valid statutory enactment of the legislature or a duty imposed by a recognized common law principle declared in the reported decisions of [Georgia's] appellate courts." Dutt v. Mannar & Co., 841 S.E.2d 132, 134 (Ga. Ct. App. 2020) (citation and quotation omitted), cert. denied (Nov. 2, 2020); see also Rasnick v. Krishna Hosp., Inc., 713 S.E.2d 835, 837 (Ga. 2011) (A "duty can arise either from a valid legislative enactment, that is, by statute, or be imposed by a common law principle recognized in the caselaw".) Regarding foreseeability, "it is not necessary that [Defendant] should have been able to anticipate the particular consequences which ensued [from the alleged tort]"; rather, "[i]t is sufficient if, in ordinary prudence, [Defendant] might have foreseen that some injury would result from [its] act or omission, and that consequences of a generally injurious nature might result." Johnson v. 3M, 563 F. Supp. 3d 1253, 1321 (N.D. Ga. 2021) (citing Sims v. Am. Cas. Co., 206 S.E.2d 121, 127 (Ga. Ct. App. 1974)); see also Ellington v. Tolar Constr. Co., 227 S.E.2d 336, 339 (Ga. 1976) ("Negligence consists of exposing another to whom one owes a duty, or exposing oneself, to a foreseeable unreasonable probability of harm.")

Plaintiff claims Defendant owed her several duties. First, she alleges Georgia courts have recognized that "[a]s a general matter, 'the possessor of land has a duty of reasonable care for conduct on the land that poses a risk of physical harm to persons

22

not on the land.'"[2]   (Doc. 23, at 10 (quoting Restatement 3d of

Torts: Physical & Emotional Harm § 54(a)) (alterations adopted).)

She also cites <u>Howell Gas of Athens, Inc. v. Coile</u>, 146 S.E.2d

145, 149 (Ga. Ct. App. 1965) for the proposition that "[a]

landowner who, himself or by others under his direction or

permission, negligently or unskillfully performs an act on his

premises which may and does inflict injury on an adjoining owner

is liable for the damage so caused."   (Doc. 23, at 10.)   She

accordingly claims that "one using dangerous chemicals on their

property – like Defendant here – has 'a duty to exercise reasonable

care in their use and disposal of' the chemicals so as to avoid

injury to those nearby."  (<u>Id.</u> (citing <u>Johnson</u>, 563 F. Supp. 3d at

1324).)    Second, Plaintiff claims Defendant's foreseeability

argument fails because "the risks of cancer and miscarriages from

EtO emissions were foreseeable to Defendant." (<u>Id.</u> at 12.)  Third,

she argues "Defendant does not dispute that its sterilization

facility has exceeded Georgia's Acceptable Ambient Concentration

[("AAC")] for [EtO]," and that "even assuming that Defendant

---

[2] Defendant points out that Plaintiff does not assert this duty in her Complaint. (Doc. 31, at 13.)  It claims "Plaintiff[] attempt[s] to cure the deficiencies in [her] Complaint by identifying a new duty in [her] response brief: a duty of reasonable care in the use and disposal of chemicals."   (Doc. 31, at 13.) "However, Plaintiff[] cannot amend the Complaint by argument in [her] response brief."   <u>Id.</u>   Defendant thus asks the Court to ignore the argument.   In her Complaint, Plaintiff simply alleges "Defendant owed a duty to exercise reasonable care in the operation of its facility." (Compl., at 32.)  The Court will assume, *arguendo*, that Plaintiff sufficiently pled this duty in her Complaint, ultimately finding that even considering this newly asserted duty, Defendant is still entitled to judgment as a matter of law.

complied with all governmental regulations regarding EtO emissions, regulatory compliance is not a free pass from liability." (Id.)

The Court again notes "[t]he Georgia Supreme Court [recently] held that there is no general legal duty 'to all the world not to subject others to an unreasonable risk of harm.'" Johnson, 563 F. Supp. 3d at 1320 (quoting McConnell, 828 S.E.2d at 358 n.4) (alterations omitted). And it is Plaintiff's duty to allege the elements of negligence. Joyner v. Lifeshare Mgmt. Grp., LLC, No. CV 417-174, 2018 WL 6092743, at *3 (S.D. Ga. 2018) ("In order to sustain a claim for negligence, a plaintiff must be able to establish '(1) a legal duty . . . .'")

Here, Plaintiff claims Defendant had a duty, as the possessor of land, "to persons . . . not on the land." (Doc. 23, at 10 (citation omitted).) But as the Court noted above, Defendant has no duty to the world at large. Plaintiff tries to rely on Johnson for the proposition that a company using dangerous chemicals on its property has a duty to exercise reasonable care in the use and disposal of such to avoid injury to those nearby. (Id. (citing Johnson, 563 F. Supp. 3d at 1324).) However, Defendant correctly points out that the Johnson decision explicitly drew on a long history of Georgia common law that "recognize[s] a duty not to engage in conduct that will result *in pollution of state waters (including non-navigable streams)* rendering them unfit for their

24

ordinary purposes by downstream users." Johnson, 563 F. Supp. 3d at 1321 (citations omitted) (emphasis added). The Johnson court cited six Georgia appellate cases that describe the common law duty, as well as "Georgia's statutory scheme which provides that pollution of a stream is a trespass." Id. at 1321-22. Here, Plaintiff does not cite to a single Georgia appellate case outlining a common law duty to be free from air pollution, and her claim that Defendant owes a duty to her because it allegedly pollutes the air around its facility proves too much.

As to Plaintiff's allegations that Defendant "fail[ed] to control and report fugitive emissions of EtO" and "fail[ed] to comply with Georgia's limits on EtO concentrations," she argues Defendant does not dispute its facility exceeded Georgia's AAC for EtO. (Compl., at 32; Doc. 23, at 12.) Plaintiff alleges "[t]he AAC is the maximum allowable air concentration of toxic air pollutants like [EtO]," and the annual AAC for EtO is ".00033 $\mu g/m^3$" while the highest ground level concentration of EtO around Defendant's facility was .0618 $\mu g/m^3$ – over 187 times the AAC. (Compl., at 16-17.) Defendant argues Plaintiff "do[es] not identify any legal limits that [Defendant] exceeded at any time," specifically arguing that "Plaintiff[] omit[s] that the AAC is not a regulatory limit on EtO emissions, but only part of a guidance document used by the [Georgia Environmental Protection Division] in evaluating permit applications." (Doc. 10, at 13.) Plaintiff

cites Adinolfe, 768 F.3d at 1174 for the proposition that "while the applicable regulatory standard may be instructive for a trier of fact as evidence of what the government deems safe for the public, it does not amount to an all-purpose benchmark for determining as a matter of law how much one can reasonably [pollute], much less a threshold issue that plaintiffs must preemptively address at the pleading stage." (Doc. 23, at 12.)

While Plaintiff utilizes the AAC standard, she makes no allegation it is a statutory limit on emissions. Her cited Georgia case, Assoc. Health Sys., Inc. v. Jones, 366 S.E.2d 147 (Ga. Ct. App. 1988) holds that "compliance with a *legislative* enactment will not prevent a finding of negligence where a reasonable person would have taken additional precautions." (Doc. 23, at 12 n.4 (emphasis added).) But Plaintiff has not shown the AAC is a *legislative* enactment. Therefore, it does not create a duty in Georgia, where duties are those "imposed by a valid statutory enactment of the legislature or . . . imposed by a recognized common law principle declared in the reported decisions of [Georgia's] appellate courts." Dutt, 841 S.E.2d at 134. Moreover, Plaintiff's cited cases do not stand for exactly the proposition she claims. The cases hold regulatory *compliance* does not necessarily show a defendant has *not* breached its duty; the cases do not hold that a regulation, by itself, can create such a duty. Indeed, the ability of a plaintiff to defeat a negligence claim by

Case 1:23-cv-00999-JRR-ABC Document 14-33 Filed 04/23/23 Page 28 of 35

showing compliance with a regulatory standard would actually be evidence that the regulatory standard creates a duty - the fact that compliance with a regulation cannot defeat breach of a duty illustrates the regulation does not, without more, create a duty on its own. Accordingly, Plaintiff fails to assert a duty owed by Defendant, and her negligence claim fails as a matter of law.

### b. Willful and Wanton Misconduct

Next, Plaintiff makes a claim for willful and wanton misconduct, in which she alleges "Defendant owed a duty to refrain from willful and wanton misconduct and/or conduct which exhibited an indifference and/or conscious disregard to the health, safety, and well-being of Plaintiff[] and those living and working in the area surrounding its facility." (Compl., at 33.) Plaintiff claims Defendant breached its duty in the same six ways it allegedly committed negligence. (Id. at 33-34.) Lastly, Plaintiff asserts "Defendant acted in a way that shows a conscious disregard for the known dangers its EtO posed to its neighbors." (Id. at 34.) She claims Defendant "knew of the specific dangers associated with EtO exposure, knew of the regulatory regime built up around it because it was so noxious, but nevertheless emitted thousands of pounds of it into the air around Plaintiff['s] home[]." (Id.) Plaintiff also asserts Defendant failed to warn her of the risks of EtO exposure "despite being in a position of superior knowledge with regard to these facts." (Id.)

27

> To establish wil[l]ful and wanton conduct, a claimant
> must demonstrate that the defendant engaged in "conduct
> such as to evidence a wil[l]ful intention to inflict the
> injury, or else was so reckless or so charged with
> indifference to the consequences as to justify the jury
> in finding a wantonness equivalent in spirit to actual
> intent."

Watson Used Cars, LLC v. Kirkland, 805 S.E.2d 920, 923 (Ga. Ct. App. 2017). Defendant argues Plaintiff's claim for willful and wanton misconduct fails for the same reasons as her negligence claim, and that Plaintiff has not pled facts alleging its acts were "so reckless or so charged with indifference to the consequences as to justify a finding of wantonness equivalent in spirit to actual intent." (Doc. 10, at 22 (citing McNeal Loftis v. Helmey, 462 S.E.2d 789, 790 (Ga. Ct. App. 1995)).) Plaintiff counterargues that her "allegations that Defendant discharged vast amounts of EtO in an area where Plaintiff[] lived and worked, despite wide-spread knowledge at the time that EtO was dangerous to humans, raises a plausible inference that Defendant acted with conscious or reckless indifference to the consequences of its actions." (Doc. 23, at 16.) She cites to Letart v. Union Carbide Corp, 461 F. Supp. 3d 391 (S.D. W.Va. 2020), a district court case from West Virginia that found a defendant's EtO emissions to be willful and wanton conduct. (Id.)

Plaintiff's allegations of "conscious disregard" are insufficient to give rise to a claim for willful or wanton misconduct. In Georgia, a "plaintiff cannot recover unless the

defendant's conduct 'was such to evince a willful intention to inflict the injury, or else was so reckless or so charged with indifference to the consequences as to justify the jury in finding a wantonness equivalent in spirit to actual intent.'" <u>Arrington v. Trammell</u>, 62 S.E.2d 451, 454 (Ga. Ct. App. 1950) (citations omitted). Here, Plaintiff alleges Defendant knew EtO was dangerous, knew of the "regulatory regime built up around it," and "nevertheless emitted thousands of pounds of it into the air around Plaintiff['s] home[]." (Compl., at 34.) However, Plaintiff has failed to allege behavior so egregious that a jury could find it meets the high bar of "willful and wanton." While true Defendant knew EtO was emitted from its facility, it was permitted to do so by law. (Doc. 10, at 23.) For Plaintiff's allegations to rise to the level of willful or wanton, she would have had to plead that Defendant acted with so much indifference it is equivalent in spirit to actual intent, and she failed to do so. As Defendant correctly points out, Plaintiff failed to allege that Defendant knew the use of EtO at its facility would result in Plaintiff's harm. (Doc. 31, at 21.) Furthermore, there are no allegations that Defendant should have known it would cause harm to Plaintiff – the only allegations are that dangers exist with EtO, Defendant nevertheless emitted it into the air, and failed to warn Plaintiffs. This is insufficient to allege a claim for willful or wanton conduct under Georgia law and thus this claim is dismissed.

c. *Private Nuisance*

Next, Plaintiff makes a private nuisance claim, alleging "Defendant's emissions of carcinogenic EtO interfere with Plaintiff['s] enjoyment of property and cause hurt, inconvenience, or damage to Plaintiff[], including [her] ability to breathe air free of a carcinogenic toxin in the air on [her] property. (Compl., at 35-36.) Defendant argues Plaintiff failed to state a claim for private nuisance because "a nuisance claim cannot be predicated on an act authorized by and performed in accordance with the law." (Doc. 10, at 23.) Defendant asserts Plaintiff fails to allege it "violated its permit, i.e., its legal authorization for EtO emissions, [therefore] the nuisance claim must fail." (Id.) In response, Plaintiff argues the Georgia Supreme Court has rejected Defendant's argument, finding "state environmental laws do not attempt to alter general rules of law with regard to private nuisances and will not impede a private individual in an action to enjoin a nuisance." (Doc. 23, at 16-17 (quoting Superior Farm Mgmt., L.L.C. v. Montgomery, 513 S.E.2d 215, 218 (Ga. 1999)) (alterations adopted).) Further, Defendant argues "the hallmark of a nuisance claim is some invasion of the plaintiff's interest in land." (Doc. 31, at 21 (quoting Blondell v. Courtney Station, 865 S.E.2d 589, 601 (Ga. Ct. App. 2021).) It asserts that Georgia law does not recognize any right to breathe

30

air free from carcinogens and Plaintiff has not provided any other allegation of injury to her real property. (Id. at 22.)

In Georgia, "[a] nuisance is anything that causes hurt, inconvenience, or damage to another and the fact that the act may otherwise be lawful shall not keep it from being a nuisance." City of Douglasville v. Queen, 514 S.E.2d 195, 199 (Ga. 1999) (citing O.C.G.A. § 48-1-1). "That which the law authorizes to be done, if done as the law authorizes, cannot be a nuisance. . . . Thus, where the act is lawful in itself, it becomes a nuisance only when conducted in an illegal manner to the hurt, inconvenience or damage of another." Id. (citing Mayor & C. of Savannah v. Palmerio, 249 S.E.2d 224 (Ga. 1978)). "[W]hile a physical invasion is generally necessary, noise, odors and smoke which impair the landowners' enjoyment of his property are also actionable nuisances, if, and only if, a partial condemnation of the property results." Jordan v. Ga. Power Co., 466 S.E.2d 601, 606 (Ga. Ct. App. 1995) (citations omitted).

First, there are no allegations Defendant is in violation of any statute or common law duty; in fact, the law permits Defendant's EtO emissions through a permitting process and there are no allegations its emissions were conducted in an illegal manner. Although Plaintiff draws the Court's attention to Defendant's AAC levels being higher than recommended, there is no allegation this violates a Georgia law or common law duty.

31

Further, Defendant asserts the AAC is not a regulatory limit, but only a guideline used by the Georgia Environmental Protection Division for permit applications. (Doc. 10, at 13.) Second, Plaintiff has failed to allege any condemnation to her property. While she alleges the EtO "invaded and contaminated the areas surrounding [Defendant's] facility" and impeded on her right to breathe clean air, she offers nothing more to state a claim for nuisance or the enjoyment of her property. As outlined above, this is insufficient to state a claim for private nuisance; therefore, Plaintiff's claim fails as a matter of law.

### d. Ultrahazardous Activity and Strict Liability

Finally, Plaintiff asserts a claim for ultrahazardous activity and strict liability, claiming Defendant's use and emission of EtO constitutes an ultrahazardous activity, EtO will always be inherently dangerous, the activities are dangerous and offer little to no value to the surrounding community, and because its activities are ultrahazardous, Defendant is strictly liable for injuries proximately resulting therefrom. (Compl., at 37-38.) Defendant moves to dismiss this claim because "Georgia has only found a few activities, none of which are analogous to emitting EtO, that are inherently dangerous to justify strict liability." (Doc. 10, at 24.) Further, it argues Plaintiffs must identify a statute that establishes strict liability because there is no common law strict liability in Georgia. (Id.) Finally, Defendant

argues emitting EtO within government limits is not inherently dangerous as a matter of law. (Id. at 25.) In response, Plaintiff agrees Georgia has only found a few activities that justify strict liability but argues "there is nothing in applicable precedent either expressly or implicitly limiting the doctrine of strict liability for abnormally dangerous activities to those activities that have historically been recognized as such." (Doc. 23, at 18 (quoting Parker v. Brush Wellman, Inc., 377 F. Supp. 2d 1290, 1303 (N.D. Ga. 2005), aff'd sub nom. 230 F. App'x 878 (11th Cir. 2007)) (alterations adopted).) Plaintiff argues this is a question for a jury, and thus should not be decided as a matter of law. (Id. at 19.) In rebuttal, Defendant again argues Plaintiff's claim fails because she does not identify a statute establishing strict liability. (Doc. 31, at 24-25.)

"In Georgia there is no common law cause of action for strict liability in tort." Watkins v. Barber-Colman Co., Inc., 625 F.2d 714, 716 (5th Cir. 1980) (citing Wansor v. George Hantsho Co., 252 S.E.2d 623 (1979)). Therefore, a cause of action must be based on a statute codified by the Georgia Code. See id.; see also Stiltjes v. Ridco Exterminating Co., 343 S.E.2d 715, 717 (Ga. Ct. App. 1986), superseded in part by Stiltjes v. Ridco Exterminating Co., 350 S.E.2d 856 (Ga. Ct. App. 1986). Defendant therefore correctly argues Plaintiff has failed to provide a statute upon which she

bases her strict liability claim; thus, it fails as a matter of law.

### IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's motion to dismiss (Doc. 10) is **GRANTED** and this matter is **DISMISSED**. Specifically, Plaintiffs Watkins, Kelly, and Armstrong's claims are dismissed with prejudice and all the other Plaintiffs' claims are dismissed without prejudice. The Clerk is **DIRECTED** to **TERMINATE** all pending motions and deadlines, if any, and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this 23rd day of September, 2022.

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA