

# Exhibit D

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| TIMOTHY PRESNELL, | * | |
| Plaintiff, | * | |
| v. | * | CV 122-071 |
| KENDALL PATIENT RECOVERY U.S., LLC, a Delaware limited liability corporation, | * | |
| Defendant. | * | |

O R D E R

Plaintiff Timothy Presnell brings claims against Defendant Kendall Patient Recovery, U.S., LLC ("KPR") for negligence, willful and wanton misconduct, private nuisance, and ultrahazardous activity/strict liability. (Doc. 1, at 17-23.) Defendant moves to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction and failure to state a claim. (Doc. 23, at 1.) For the following reasons, Defendant's motion is **GRANTED**.

I. BACKGROUND

Plaintiff originally filed suit against Defendant on June 2, 2022 (Doc. 1), and Defendant moved to dismiss the Complaint on July 15, 2022 (Doc. 23). Plaintiff filed a response in opposition

(Doc. 24), and Defendant replied in support of its motion (Doc. 28).[1] Therefore, the motion has been fully briefed and is ready for the Court's review.

Plaintiff brings four claims against Defendant for the harm it caused Plaintiff from emissions of toxic ethylene oxide ("EtO"). (Doc. 1, at 1.) Defendant operates an industrial medical sterilization plant in Augusta, Georgia that uses and emits EtO as part of its sterilization process. (Id. at 2.) Plaintiff states, without citation, that EtO "is an odorless, colorless gas that is dangerous, toxic, carcinogenic, and mutagenic," and that it "is highly reactive, readily taken up by the lungs, efficiently absorbed into the blood stream, and easily distributed throughout the human body." (Id. at 5.)

Plaintiff's claims are brought pursuant to 28 U.S.C. § 1332(a) because the Parties are citizens of different states and the amount in controversy exceeds $75,000. (Id. at 3.) Plaintiff worked 2.1 miles away from Defendant's facility from 1991-2021. (Id. at 16.) Plaintiff was diagnosed with non-Hodgkin's lymphoma in June 2020. (Id. at 17.) Plaintiff "consistently and without any knowledge that he was doing so, inhaled contaminated air in and around his work, and in the areas surrounding the KPR facility. (Id. at 16.) At the time of his diagnosis, Plaintiff did not have notice that

---

[1] Defendant submitted two identical documents in reply, Document 27 and Document 28. The Court refers to Document 28 in this motion.

2

his medical condition was wrongfully caused or that it was caused by Defendant's EtO emissions. (Id. at 17.) Plaintiff does not allege how such connection was discovered.

First, Plaintiff brings a negligence claim, alleging Defendant breached its duty in "one or more" ways. (Id.) Plaintiff then alleges six acts that *could* be how Defendant breached its duty:

> a. Emitting dangerous volumes of EtO into the air from its facility;
> b. Disregarding safe methods to adequately control EtO emissions from its facility;
> c. Failing to control and report fugitive emissions of EtO;
> d. Failing to comply with Georgia's limits on EtO concentrations;
> e. Failing to warn or advise those who live or work in the community that they were being exposed to EtO; and
> f. Subjecting those who live and work nearby its facility to an elevated cancer risk.

(Id. at 17-18.) Plaintiff states that "[a]s a proximate result of one of the aforesaid negligent acts or omissions, Plaintiff suffered injuries of a personal and pecuniary nature." (Id. at 18.) Next, Plaintiff alleges willful and wanton misconduct because "Defendant owed a duty to refrain from willful and wanton misconduct and/or conduct which exhibited an indifference and/or conscious disregard to the health, safety, and well-being of Plaintiff." (Id.) He again lists the six "possible" actions outlined above and asserts Defendant acted with "a conscious disregard for the known dangers its EtO posed to its neighbors."

3

(Id. at 18-19.) Third, Plaintiff alleges a private nuisance claim, arguing "Defendant's emissions of carcinogenic EtO interfere with Plaintiff's enjoyment of property and cause hurt, inconvenience, or damage to Plaintiff, including his ability to breathe air free of a carcinogenic toxin in the air at his workplace." (Id. at 20-21.) And finally, Plaintiff brings a claim of ultrahazardous activity/strict liability, arguing Defendant's use and emission of EtO constitutes an ultrahazardous activity and created a high degree of risk to those who live and work in the surrounding area. (Id. at 22.) He argues that because the actions are ultrahazardous, Defendant "is strictly liable for any injuries proximately resulting therefrom." (Id. at 23.)

Defendant moves to dismiss Plaintiff's Complaint for two reasons. (See Doc. 23.) First, it argues the Court lacks subject matter jurisdiction over Plaintiff's claims because Plaintiff's injuries are not traceable to Defendant's conduct. (Id. at 4-9.) Alternatively, Defendant moves to dismiss for failure to state a claim. (Id. at 9-24.) The Court addresses Defendant's arguments below.

## II. LEGAL STANDARD

In considering a motion to dismiss under Rule 12(b)(6), the Court tests the legal sufficiency of the complaint. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), *overruled on other grounds by*

4

Davis v. Scherer, 468 U.S. 183 (1984). Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of both the claim and the supporting grounds. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

A plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). The Court need not accept the pleading's legal conclusions as true, only its well-pleaded facts. Id. at 677-79. Furthermore, "the court may dismiss a complaint pursuant to [Rule 12(b)(6)] when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (citing Exec. 100, Inc. v. Martin Cnty., 922 F.2d 1536, 1539 (11th Cir. 1991)).

5

## III. DISCUSSION

First, the Court addresses Defendant's argument regarding subject matter jurisdiction.[2] Defendant argues the Court lacks subject matter jurisdiction over Plaintiff's claims because the Complaint "does not plausibly show that Plaintiff's alleged injuries are attributable to EtO emissions at all, much less [Defendant's] conduct," and "[s]peculation does not satisfy the traceability requirement for Plaintiff to have standing." (Doc. 23, at 5, 9.) Defendant argues "Plaintiff relies on a speculative chain of possibilities to reach the unsupported conclusion that his alleged injuries are traceable to [Defendant's] conduct, rather than other factors." (Id. at 5.) Overall, Defendant asserts Plaintiff lacks standing because he "offers only speculation that (1) his injuries were caused by EtO and (2) any EtO that may have caused his injuries was emitted by the [Defendant's facility]." (Id. at 9.) Defendant argues Plaintiff's referenced studies contradict those conclusory allegations and instead show the "alleged injuries not only could have been, but were statistically much more likely to have been, caused by an independent source or a third party." (Id.)

---

[2] This Court recently dismissed similar claims in Lambert v. Kendall Patient Recovery U.S., LLC, No. 121-111, 2022 WL 3139966 (S.D. Ga. Aug. 5, 2022) and Browman v. Kendall Patient Recovery U.S., LLC, No. 121-112, 2022 WL 4451339 (S.D. Ga. Sept. 23, 2022). The Court's analysis of subject matter jurisdiction in the case at hand mirrors the analysis found in these related cases. See Lambert, 2022 WL 3139966, at *3-5; Browman, 2022 WL 4451339, at *2-5.

6

In response, Plaintiff argues that "to establish Article III standing at the pleading stage" in harmful emission cases, he "need only allege that Defendant discharges a pollutant into the community that causes or contributes to the kinds of injuries he suffered." (Doc. 24, at 1.) He relies on various cases to argue Article III traceability is a "low bar" in these types of cases. (Id. at 4-5.) Defendant rebuts these assertions, arguing Plaintiff's standard "is not the standard for pleading traceability *in the 'context of harmful emissions,'* . . . [t]his is the standard for pleading traceability *in the specific context of citizen suits under the Clean Water Act ('CWA')*." (Doc. 28, at 2-3.) Defendant argues the cases Plaintiff cites for the "low-bar" traceability standard involve the CWA, and are not claims for alleged bodily injury, thus are not applicable to the case at hand. (Id. at 4.)

Standing is an essential, limiting aspect on the power of the federal courts. Spokeo, Inc. v. Robins, 578 U.S. 330, 337 (2016). Only plaintiffs who "have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision" have standing to sue. Id. at 338 (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992)). Here, the second element, traceability, is contested.

7

"The traceability prong means it must be likely that the injury was caused by the conduct complained of and not by the independent action of some third party not before the court." Friends of the Earth, Inc. v. Gaston Copper Recycling Corp., 204 F.3d 149, 154 (4th Cir. 2000) (citation omitted). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." Spokeo, 578 U.S. at 338 (citation omitted). "[A]t the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." Id. (citation and footnote omitted).

Citing CWA cases, Plaintiff asserts he must only satisfy a low bar for traceability. (Doc. 24, at 4-5 (citing Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs, 781 F.3d 1271, 1280 (11th Cir. 2015); Jones Creek Invs., LLC v. Columbia Cnty., 98 F. Supp. 3d 1279, 1298 (S.D. Ga. 2015); Mrosek v. Peachtree City, No. 3:12-cv-0094, 2014 WL 11279463, at *4 (N.D. Ga. Dec. 22, 2014), aff'd, 631 F. App'x 757 (11th Cir. 2015)).) However, Defendant is correct in arguing that in these types of cases, "Congress gave citizens the right to protect intangible 'interests' in the environment." (See Doc. 28, at 3 (citing 33 U.S.C. § 1365(g); Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n, 453 U.S. 1, 16-17 (1981)).) The Eleventh Circuit recognized as much in Black Warrior Riverkeeper, where it found allegations of aesthetic harm, recreational harm, and threat to

8

Plaintiffs' members "health by drinking water . . . . [fell] within the zone of interests contemplated by the CWA and [the National Environmental Policy Act ("NEPA")]." 781 F.3d at 1280.

As Defendant argues, "Plaintiff is not suing to protect intangible interests in the environment or to enforce federal law. He is suing to recover for an alleged bodily injury." (Doc. 28, at 4.) Therefore, Defendant argues the facts in this case differentiate it from those which warrant the low-bar standard called for in CWA cases. (Id.) Further, Defendant argues Plaintiff fails to allege his injuries are fairly traceable to its conduct because the link between its conduct and Plaintiff's injury is too attenuated. (Id. at 4-5.) As it argues, "Plaintiff has not alleged facts supporting an inference that alleged emissions from [Defendant's facility] caused any exposure above background levels of EtO." (Id. at 6.)

The Court agrees the traceability standard utilized in CWA cases is materially distinct from the standard utilized in tort cases. As stated by a sister court deciding a tort case in this circuit, "the [CWA] cases [Plaintiff relies] upon for this proposition are not binding on this Court [in this context] and all concern the discharge by one or two defendants of pollutants into waterways." Coffie v. Fla. Crystals Corp., 460 F. Supp. 3d 1297, 1305 (S.D. Fla. 2020) (citations omitted). The low bar of traceability required to establish CWA standing is different than

9

the traditional level of traceability required in tort cases, like this harmful emissions case. Compare Adinolfe v. United Tech. Corp., 768 F.3d 1161, 1164 (11th Cir. 2014) (finding a plaintiff's injuries fairly traceable in the tort context where "[t]he plaintiffs claimed [defendant's] chemicals migrated to [the subject property where they resided] via the southward-flowing aquifer underlying both [defendant's] plant and [plaintiffs' property]," among other allegations), with Black Warrior Riverkeeper, 781 F.3d at 1280 (analyzing whether that plaintiff's claims fell "within the zone of interests contemplated by the CWA and NEPA"), Jones Creek Invs., 98 F. Supp. 3d at 1298 (enumerating the traceability requirements "in a [CWA] case"), and Mrosek, 2014 WL 11279463, at *4 (same). For tort cases in which Congress has not specially provided a lower standard of traceability, the Court is not empowered to utilize the lower bar it has authorized for cases in a different context. As such, for this toxic tort case the Court must utilize the traditional standard for traceability.

To satisfy the traditional traceability requirement, Plaintiff must allege injuries that are "fairly traceable" to Defendant's actions. Spokeo, 578 U.S. at 338. "[I]t must be likely that the injury was caused by the conduct complained of and not by the independent action of some third party not before the court." Gaston Copper Recycling Corp., 204 F.3d at 154 (citation omitted). Although proving causation is not required at the motion

10

to dismiss stage, "there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly . . . traceable to the challenged action of the defendant, and not the result of the independent action of some third party." Lujan, 504 U.S. at 560-61 (alterations adopted and citation and quotations omitted); see also Debernardis v. IQ Formulations, LLC, 942 F.3d 1076, 188 (11th Cir. 2019) ("To establish standing, a plaintiff must allege that her injury is fairly traceable to the challenged conduct of the defendant. Under this requirement, the line of causation between the alleged conduct and the injury must not be too attenuated.") (citations and quotations omitted).

In this case, Plaintiff alleges the census tract in which Defendant's facility is located has a heightened potential cancer risk of 64 parts per one million due to exposure of air toxins.[3] (Doc. 1, at 12.) Further, he alleges he worked 2.1 miles away from Defendant's facility for about thirty years, from 1991-2021. (Id. at 16.) Plaintiff alleges he "consistently and without any knowledge that he was doing so, inhaled contaminated air in and

---

[3] Defendant asserts that the 2014 National Air Toxics Assessment ("NATA") misidentified the facility's address as 2102 Old Savannah Road in Census Tract 13245010400, whereas the 2017 NATA correctly identified the facility's address as 1430 Marvin Griffin Road, in Census Tract 13245010600. (Doc. 23, at 8 n.15.) Defendant asserts that Census Tract 13245010600 has a lower cancer risk from toxic air pollutants than does tract 13245010400, and, because the facility is in Census Tract 13245010600, not tract 13245010400, "Plaintiff does not allege that any cancer risk in the tract where the Facility is located was *caused by EtO*." (Id. at 8-9.) This discrepancy does not change the Court's analysis because Plaintiff does not allege that he worked within the same census tract as Defendant's facility, regardless of which tract the facility is in.

around his work, and in the areas surrounding the KPR facility." (Id.)

Even accepting all of Plaintiff's allegations as true, Plaintiff's injuries cannot be plausibly traced to this Defendant's emissions. Plaintiff describes the Augusta-area census tract with elevated EtO emissions that raise the rate of cancer like his; he also pleads he worked 2.1 miles from the facility. (Id. at 11, 16.) Crucially, however, Plaintiff fails to allege Plaintiff's work was within the census tract with the heightened risk of cancer – instead he vaguely alleges he "inhaled contaminated air in and around his work, and in the areas surrounding the KPR facility." (Id. at 16.) Nowhere does Plaintiff allege he worked *within* the elevated-risk census tract or in any other particular concrete area in which Defendant caused elevated risks of cancer. To allow Plaintiff to proceed without any allegation of how far Defendant's pollution stretched (even if only to Plaintiff's front door) would be to allow any Augusta-area resident – indeed, any resident of an indefinite area surrounding Defendant's plant, to sue Defendant for its EtO emissions. Those injuries could not be fairly traced to this Defendant's emissions. Without more information – even just slightly more than a threadbare allegation that Defendant's EtO emissions reached Plaintiff's work - Plaintiff has failed to provide facts that would allow the plausible inference that his injuries are fairly

12

traceable to Defendant's activities. Article III requires more than a claim of exposure merely because Plaintiff worked within 2.1 miles of the pollution; Plaintiff must at least plead facts allowing the Court to plausibly find his injury was fairly traceable to Defendant's alleged pollution. In all, the Court finds traceability is too speculative and attenuated to establish standing in this case because there is no evidence Plaintiff was even ever within the area of heightened risk. Therefore, Plaintiff lacks standing,[4] and his Complaint shall be **DISMISSED**.

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's motion to dismiss (Doc. 23) is **GRANTED** and this matter is **DISMISSED WITHOUT PREJUDICE**. The Clerk is **DIRECTED** to **TERMINATE** all pending motions and deadlines, if any, and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this 13th day of February, 2023.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[4] Because the Court lacks subject matter jurisdiction over Plaintiff's claims, the Court does not address the remaining arguments.