E-FILED IN OFFICE - CE
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA

23-A-02810-9

4/4/2023 2:18 PM
TIANA P. GARNER, CLERK

## IN THE SUPERIOR COURT OF GWINNETT COUNTY

## STATE OF GEORGIA

| | | |
|---|---|---|
| K UNION COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action File No: |
| | ) | |
| 2070 BEAVER RUIN CENTER, LLC. | ) | 23-A-02810-9 |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Comes now, K Union Company and hereby files this Complaint for Declaratory

Judgment pursuant to OCGA 9-4-2 and shows this honorable court as follows:

## STATEMENT OF JURISDICTION

1.

Plaintiff, K Union Company is a Georgia corporation doing business as a gas station and

convenience store at 2070 Beaver Ruin Rd., Norcross, Georgia. Plaintiff's representative is

Sandip Patel Sharp and all times relevant herein acted as Plaintiff's agent.

2.

The Defendant is Beaver Ruin Center LLC, a Georgia limited liability company.

Defendant owns the premises known as 2070 Beaver Ruin Rd. Defendant is Plaintiff's landlord.

Defendant's representative is Rita Sharp and all times relevant herein acted as Defendant's agent.

3.

The controversy in this case is whether Plaintiff and Defendant have entered an

enforceable 5-year lease beginning on January 1, 2023. Plaintiff believes so but Defendant has

given Plaintiff notice to vacate the premises. Defendant considers Plaintiff a tenant at will. Plaintiff files this petition for declaratory relief.

**STATEMENT OF FACTS**

4.

Approximately 12 years ago, Plaintiff assumed the existing lease at 2070 Beaver Ruin Rd. and began doing business as a convenience store and gas station. Plaintiff renewed this lease pursuant to its terms through May 1, 2022. (Exhibit 1) At all time, Defendant was Plaintiff's landlord.

5.

On May 1, 2022 the lease expired by its own terms but Plaintiff continued to operate the business at 2070 Beaver Ruin Rd. without a formal lease and as a tenant at will.

6.

Plaintiff paid rent as required by Defendant until December 31, 2022.

7.

In December 2022, Defendant approached Plaintiff to renew the leasehold. Plaintiff and Defendant had oral and written communications regarding the terms of the new formal lease.

8.

On January 10, 2023 Defendant presented Plaintiff with a document entitled "Notice of Lease Extension" (Exhibit 2). This document sets out the term, the rent, and other pertinent items. The document also referred back to the original formal lease.

9.

Defendant instructed Plaintiff to sign Exhibit 2 and return it. Upon receipt, Defendant represented to Plaintiff that "I will sign and send you the completed document". (Exhibit 3)

10.

Plaintiff wanted to continue doing business at 2070 Beaver Ruin Rd. and complied with Defendant's instructions, signed the document (Exhibit 2) and on January 15, 2023 returned it to Defendant.

11.

On January 18, 2023 Defendant acknowledged receipt of the Plaintiff's signed lease and informed Plaintiff that another party was interested in leasing the premises and had offered Defendant $50,000 plus $25,000 cash for real estate agent. By then, Plaintiff and Defendant already had an enforceable lease. (Exhibit 4)

12.

Through January, February, and March 2023, Plaintiff paid the rent as specified in the lease and Defendant accepted the rent payments.

13.

On March the 27, 2023 Defendant sent Plaintiff an e-mail demanding possession of the premises on June 1, 2023. (Exhibit 5)

## LEGAL CLAIM FOR DECLARATORY RELIEF

14.

Based upon the lease signed by Plaintiff and the parties' contemporaneous correspondences, Plaintiff and Defendant have entered a five-year lease beginning on January 1, 2023.

15.

Defendant takes the position that Plaintiff has been converted to a tenant at will because of her failure to execute the lease agreement.

16.

There can be no controversy as to whether the lease satisfies the statute of frauds. In addition, Plaintiff has preformed pursuant to the terms of the lease.

17.

The only question remaining is whether the Defendant's failure to execute the lease notwithstanding her assertions otherwise saves it from honoring the obligations contained therein.

WHEREFORE Plaintiff asks this Court to declare whether the lease is valid and enforceable.

Respectfully submitted by:

*/s/ Mark Harper*
MARK C. HARPER
Georgia Bar No. 328315
Attorney for Plaintiff

Mayer and Harper
50 Hurt Plaza SE
Suite 1640
Atlanta, Georgia 30303
404.584.9588 (telephone)
404.832.830m (facsimile)
mharper@mayerharper.com

## COMMERCIAL LEASE CONTRACT

STATE OF GEORGIA
COUNTY OF GWINNETT

THIS LEASE, made this __01__ day of __May__, 2007, by and between R S Beaver Ruin Center, LLC, a Georgia limited liability company, first party, (hereinafter called "Landlord") and Saniya & K Stores, Inc., a Georgia corporation, second party (hereinafter called "Tenant");

### WITNESSETH:

### 1.   DEFINITIONS:

The following terms as defined below, are used generally in this Lease. Additional terms, as employed in the specific Sections hereunder, are defined pursuant to those Sections.

"Additional Rental" is defined in Section 5 of this Lease.

"Base Rental" means the monthly rental calculated and payable pursuant to Section 4 of this Lease.

"Gasoline Equipment" means the underground storage tanks, underground lines, and petroleum dispensing equipment currently located on the Property.

"Landlord" is defined in the first paragraph of this Lease.

"Property" means the Gasoline Equipment, the Personal Property Equipment, and that certain leaseable floor area of approximately 2000 square feet in the Shopping Center as hereinafter defined, including any improvements thereon, and more commonly known as the Property located at 2070 Beaver Ruin Road, Unit D, Norcross, Gwinnett County, Georgia, 30071 according to the present system of numbering utilized in Norcross, Gwinnett County, Georgia.

" Personal Property Equipment" means the equipment, fixtures, and coolers inside the building on the Property.

"Shopping Center" means those certain buildings and all improvements located at 2070 Beaver Ruin Road, Norcross, Georgia, which is collectively known as the R S Beaver Ruin Center.

"Tenant" is defined in the first paragraph of this Lease.

"Total Rental" means Base Rental and Additional Rental as may be then due and owing to Landlord under this Lease.

### 2.   DEMISED PREMISES:

The Landlord, for an in consideration of the rentals, covenants, agreements, and stipulations hereinafter mentioned, reserved and contained, to be paid, kept and performed by the Tenant, has leased and rented, and by these presents does lease and rent unto the Tenant, and the Tenant hereby agrees to lease and take upon the terms and conditions which hereinafter appear, the Property.

### 3.   LEASE TERM:

3.1   The term of this Lease shall commence on the 1st day of May, 2007 (hereinafter the "Commencement Date"), and shall continue until April 30, 2012, at midnight, unless sooner terminated as hereinafter provided (said period shall hereinafter be called the "Lease Term").

3.2   Tenant shall have the option to extend the Lease Term for two (2) successive terms of five (5) years each, with each additional five (5) year term being referred to as the "Extended Term." Upon failure of Tenant to give Landlord written notice sixty (60) days in

PLAINTIFF'S
EXHIBIT
1

1

advance of the expiration of the Lease Term or any extension of this Lease, of Tenant's intent not to extend this Lease, this Lease shall automatically renew and shall continue in full force and effect for the next Extended Term, it being the purpose and intent of this paragraph that should Tenant give no written notice to Landlord, at any time whatsoever, this Lease shall expire fifteen (15) years from the Commencement Date. Further, for each Extended Term, all agreements, terms, covenants, and conditions (except the rental, which is set forth below for each Extended Term) shall be the same as set forth herein for the Lease Term.

4.  BASE RENTAL:

4.1  The Tenant agrees to pay to the Landlord rental as set forth below during the Lease Term payable promptly in monthly increments on the first day of each month in advance, during the Lease Term. Said rental payments shall hereinafter be referred to as the "Base Rental". The aforesaid payments of rent are to be made payable to Landlord and mailed or delivered promptly to Landlord at 5995 Nelson Road, Longmont, Colorado, 80503, or at such other place as Landlord may from time to time designate in writing to Tenant. For the Lease Term and any Extended Term, the Base Rental shall be as follows:

YEAR ONE [4/1/07 to 3/31/08] BASE RENTAL

| | |
|---|---|
| May & June 2007 | $0.00/month |
| July, August & September 2007 | $2500.00/month |
| October 2007 through April 2008 | $3000.~  ~th |

YEAR TWO through YEAR FIVE BASE RENTAL

Using $3000.00/month as the Base Rental for Year 1, the Base Rental for year two (2) through year five (5) shall increase by three percent (3%) over the previous years Base Rental on the yearly anniversary of the Lease (May 1).

4.2  For each Extended Term of this Lease, the following Base Rental shall be due and payable to Landlord by Tenant:

First Five (5) Year Extended Term Base Rental

For first year of the First Five (5) Year Extended Term, the Base Rental shall be $22.00 per square foot. For each subsequent year of the First Five (5) Year Term, on the yearly anniversary of the Lease (May 1) the Base Rental shall increase by three percent (3%) over the previous year's Base Rental.

Second Five (5) Year Extended Term Base Rental

For first year of the Second Five (5) Year Extended Term the Base Rental shall be the prevailing market rate on the first day of the Second Five (5) Year Extended Term. Notwithstanding the market rate at that time, the Base Rental shall not be less than the previous year's Base Rental and the same shall increase by three percent (3%) on the yearly anniversary (May 1) of the Lease.

5.  ADDITIONAL RENTAL:

In addition to the Base Rental required to be paid pursuant to the terms of this Lease, Tenant agrees to pay, as additional rent, all sums and other charges required to be paid by Tenant pursuant to other provisions to this Lease, whether or not the same be designated "Additional Rental" (hereinafter called "Additional Rental"), and Landlord shall have the same remedies for Tenant's failure to pay same when and as required, as if it constituted Base Rental.

6.    SECURITY DEPOSIT:

Tenant shall deposit with Landlord upon execution of this Lease $4,000.00 as a security deposit which shall be held by Landlord, without liability to Tenant for any interest thereon, as security for the full and faithful performance by Tenant of each and every term, covenant and condition of this Lease.  If any of the rents or other charges or sums shall by Tenant to Landlord shall be overdue and unpaid or should Landlord make payments on behalf of Tenant, or should Tenant fail to perform any of the terms of this Lease, then Landlord may, at its option, appropriate and apply the security deposit, or so much thereof as may be necessary to compensate Landlord toward the payment of the rents, charges or other sums due from Tenant, or towards any loss, damage or expense sustained by Landlord resulting from such default on the part of Tenant; and in such event Tenant shall upon demand restore the security deposit to the original sum deposited.  In the event Tenant furnishes Landlord with proof that all utility bills have been paid through the date of Lease termination, and performs all of Tenant's other obligations under this Lease, the security deposit shall be returned in full to Tenant within thirty (30) days after the date of the expiration or sooner termination of the term of this Lease and the surrender of the Premises by Tenant in compliance with the provisions of this Lease.

7.    COMMON AREA MAINTENANCE

7.1    Landlord covenants and agrees that it shall maintain, or cause to be maintained, the common areas in good order and repair.  The common areas shall consist of all parking areas, landscaped areas, sidewalks, driveways, entrances, and exits, all as they may from time to time exist and be available to all tenants of the Shopping Center, their employees, agents, customers, licensees and invitees.

7.2    As used in this Lease, "Common Area Costs" shall mean costs reasonably incurred, without duplication, for (i) the operation, maintenance, repair, supervision and management of the Common Areas , (ii) repair of the parking area (but not repaving or putting a new coat thereon), (iii) repainting and restriping the parking area, (iv) cleaning, sweeping and other janitorial services, (v) sanitation, (vi) maintenance of refuse receptacles, (vii) replanting existing landscaping, (viii) Shopping Center signs, directional signs and other markers, and (ix) up-keep of lighting and other utilities.

8.    PROPORTIONATE SHARE OF COMMON AREA COSTS, TAXES AND INSURANCE AND PROPERTY TAXES AND INSURANCE:

During the Lease Term, Tenant agrees to reimburse Landlord, Tenant's proportionate share of Landlord's annual total costs for Common Area Costs, real property ad valorem taxes for the Shopping Center and insurance costs for the Shopping Center, as well as real property and personal property ad valorem taxes and insurance costs for the Property. Tenant's proportionate share of these costs shall be due and payable monthly as follows:

Commencing upon the Commencement Date and continuing each year thereafter, Tenant shall pay its proportionate share of these cost in the amount of $440.00 per month, which is computed by multiplying $2.64 by 2000 (total square footage of the Property) then dividing by twelve (12).  At the end of each year, Landlord shall determine the actual total of these costs for the year, and any additional amounts owed by Tenant for Tenant's proportionate share of these costs for any year over the amount set forth above shall be paid by Tenant to Landlord within fifteen (15) days of written demand by Landlord. Thereafter, the Tenant's monthly share of these costs shall be readjusted based on the previous year's increase.

9.    CONSTRUCTION OF THIS AGREEMENT:

No failure of Landlord to exercise any power given Landlord hereunder to insist upon strict compliance by Tenant with his obligation hereunder, and no custom or practice of the parties at variance with the terms hereof shall constitute a waiver of Landlord's right to demand exact compliance with the terms hereof.

3

10.    **UTILITIES, ELECTRICITY AND OTHERS:**

Tenant shall be solely responsible for all charges for water, gas, electricity, telephone, garbage pickup and other utility services used, rendered, supplied, or imposed upon the Property regardless of who is the supplier and shall indemnify Landlord and save it harmless against any liability or charges on account thereof. If Tenant does not pay said utility charges when due, Landlord may pay same, and such payment shall be added as Additional Rental hereunder.

11.    **USE OF PROPERTY:**

8.1    The Property shall be used for a convenience food and gasoline retail outlet. The Property shall not be used for any illegal purposes; nor in any manner to create any nuisance or trespass; nor in any manner to vitiate the insurance or increase the rate of insurance on the Property.

12.    **RESERVATION OF EASEMENT BY LANDLORD:**

Landlord reserves and retains for itself, its employees, customers, agents, invitees, and successors in interest, a non-exclusive easement for pedestrian and vehicular access, ingress, and egress in, on, to, over, across, and through the parking lot, driveways, entrances, and exits of the Property for the benefit of Landlord's adjacent property.

13.    **MAINTENANCE AND REPAIR:**

13.1    Landlord shall be solely responsible for maintaining and repairing the roof, foundations and exterior walls of the Property (exclusive of all glass and exclusive of all exterior doors) and underground utility and sewer pipes outside the exterior walls of the building.

13.2    Tenant shall be solely responsible for any and all other maintenance and repairs, including, but not limited to stoppage of plumbing in the interior, the interior walls, floors, and ceilings. Further, Tenant shall be responsible for any and all repairs which are necessitated by the negligence of the Tenant, its agents, employees and/or customers.

13.3    Notwithstanding Tenant's obligation to maintain and repair the underground petroleum storage tanks (the "Tanks") on the Property, the Tenant shall be under no obligation to replace the Tanks. Likewise, the Landlord shall be under no obligation to replace the tanks. As such, if it is determined, by written opinion from an environmental engineer or the Environmental Protection Division of the Georgia Department of Natural Resources, that the Tanks must be replaced, and Landlord chooses not to replace the Tanks, Tenant may terminate this Lease by giving Landlord written notice of Tenant's intent to cancel this Lease and the Lease shall be of no further force and effect.

13.4    Landlord gives to Tenant exclusive contr°⁺       ˜ Property and Landlord shall be under no obligation to inspect same.

13.5    Tenant shall promptly report in writing to Landlord any defective condition known to it which Landlord is required to repair, and failure to so report such defect shall make Tenant responsible to Landlord for any liability incurred by Landlord by reason of such defect.

14.    **ACCEPTANCE OF THE PROPERTY AND ALTERATIONS AND ADDITIONS BY TENANT:**

14.1    Tenant accepts the Property and any common areas in its present condition and as suited for the uses intended by Tenant.

14.2    Upon delivery of possession of the Property to the Tenant, the Tenant shall have the right to make, at its expense, certain additions, alterations, and installations to the Property as follows:

4

a.  Installation of store equipment, including but not limited to, freezers, coolers, sinks, partition walls, shelving, counters, and other necessary equipment, together with the necessary plumbing and electrical wiring to service the said equipment, and installation thereof.

b.  Exterior and interior signs, together with electrical wiring.

During the Lease Term, or any extension thereof, the Tenant shall have the right to maintain, modify, replace, relocate, or add to, the above additions, alterations or installations, as needed, in its sole discretion and at his expense.

14.3    The Tenant shall have the right to make changes or alterations, additions, or improvements to the building and parking lot located on the Property, or to construct additional improvements on the Property subject to the following conditions:

a.  Tenant shall not make any such alteration, change or addition to the interior or exterior of the building without first submitting to the Landlord plans thereof and obtaining the Landlord's written consent thereto, which consent may be denied in Landlord's sole discretion.

b.  The total costs of such alterations or additions approved by the Landlord shall be at the Tenant's expen...

c.  Tenant shall obtain the necessary consents, authorizations and permits from the appropriate governmental authorities before commencing work, and Tenant shall permit no mechanic's lien to be filed against the Property as a result of Tenant's work.

d.  Landlord shall have the right to inspect the construction during the course thereof.

14.4    Except as otherwise set forth herein, Tenant shall not make any additions, alterations, or improvements to the Property without the written consent of Landlord, which may be denied in Landlord's sole discretion.

15.    REAL ESTATE TAXES:

15.1    Tenant shall pay during the Lease Term all real property ad valorem taxes and personal property taxes, charges, and assessments (including, without limitation, general and special assessments no matter how designated), of every kind and nature for the Property. Tenant agrees to reimburse Landlord for said taxes as set forth in Section 8 hereof.

15.2    Tenant shall be responsible for payment of any and all personal property ad valorem taxes and assessments payable with respect to the personal property owned by the Tenant and used on the Property during the Lease Term.

16.    INSURANCE:

16.1    Tenant shall be responsible for payment of the cost of any insurance on Tenant's personal property used on the Property throughout the Lease Term.

16.2    Tenant shall be responsible for the payment of the cost of Hazard (Fire) Insurance and property damage insurance covering the Property at a level of coverage equal to the greater of the insurable value or the replacement value of the Property as determined by Landlord.

16.3    Tenant shall at all times during the Lease Term and any extension or

5

renewal thereof maintain in full force and effect the following insurance in standard form generally in use in Georgia, with insurance companies authorized to do business in said State, and which show Landlord as additional insured:

        a.      Comprehensive public liability insurance _____ amount of at least Two Million Dollars ($2,000,000.00) for any occurrence resulting in bodily or personal injury to or the death of one person and consequential damages arising therefrom, and in the amount of at least Three Million Dollars ($3,000,000.00) for any occurrence resulting in bodily or personal injury or death to more than one person and consequential damages arising therefrom.

        b.      Comprehensive Property damage insurance covering liability for damage to all Property in the amount of at least Five Hundred Thousand Dollars ($500,000.00) for each occurrence.

        16.4    Tenant agrees to reimburse Landlord for insurance costs as set forth in Section 8 hereof.

## 17.   DESTRUCTION OF OR DAMAGE TO PROPERTY:

        17.1    In case of damage to or destruction of any part of the Property, Landlord shall promptly restore, repair, replace, or rebuild the same so as to put such Property in the same condition it was prior to such damage or destruction. Such restoration or repairs shall be commenced no later than thirty (30) days after a loss, and the work shall be prosecuted by the Landlord with reasonable diligence. All insurance proceeds received under any insurance policy shall be payable to the Landlord and Tenant, jointly, and shall be applied to the payment of such work with the excess, if any, being the sole property of the Landlord. Landlord and Tenant mutually agree to place the entire responsibility for the burden of casualty loss on the insurance company and in that regard, Landlord and Tenant, therefore, do hereby mutually release and discharge each other from any and all claims and liabilities arising from or caused by any hazard covered by insurance on the Property regardless of the cause of damage or loss, regardless of whether the cause of damage was due to negligence of the Landlord or the Tenant, or any of their respective agents, servants or employees; but said mutual release shall apply only to the extent of the coverage afforded by the above described insurance policy.

        17.2    Notwithstanding Section 17.1 above, Tenant shall be liable to Landlord for any damage to or destruction of any part or all of the Property not covered by insurance except where such damage to or destruction of any part or all of the Property arises out of the negligence or willful misconduct of Landlord, Landlord's agents, employees or contractors.

        17.3    The rent payable under this Lease shall abate in proportion to the impairment of the use that can reasonably be made of the Property as determined by the immediate prior use of the Property by the Tenant, until the Property is rebuilt or repaired.

## 18.   GOVERNMENTAL ORDERS:

        Tenant agrees, at its own expense, to promptly comply with all requirements of any legally constituted public authority made necessary by reason of Tenant's occupancy of the Property. Landlord agrees to promptly comply with any such requirements if not made necessary by reason of Tenant's occupancy.

## 19.   CONDEMNATION:

        19.1    If the whole of the Property shall be taken or condemned for any public or quasi-public use under any statute by right of eminent domain or by private purchase in lieu of such taking, or if any part of the Property is so taken and the part not so taken is insufficient for the efficient operation of Tenant's business, this Lease and the term granted by it shall cease and expire as respect to the entire Property on the date when possession shall be taken by the condemning authority. All rents and other charges shall be prorated and paid to that date, and

Landlord shall refund to Tenant all rents and other charges paid by Tenant in respect to any period subsequent to such date. In the event of a permanent partial taking of less than the entire Property, resulting in the remainder of the Property being usable by Tenant as an economically useful entity in the manner then used by it, Landlord shall repair the portion of the Property not so taken and this Lease will continue with rent equitably abated on account of such permanent partial taking.

19.2   In either a permanent full taking or a permanent partial taking, neither the rights of Landlord or Tenant to recover compensation and damage caused by any condemnation from the condemnor, shall be prejudiced. It is further understood and agreed that neither the Tenant nor the Landlord shall have any rights in any award made to the other by any condemnation authority.

20.   **ENVIRONMENTAL COMPLIANCE:**

20.1   Tenant agrees to keep the underground storage tanks located upon the Property in compliance with all requirements of State and Federal law for underground storage tanks and petroleum dispensing equipment, including, but not limited to, the Georgia Underground Storage Tank Act, O.C.G.A. Chapter 12-13-1, et. seq.; the Rules of the Georgia Department of Natural Resources, GA. Complete R. and Regs. r. 391-3-15, et. seq.; and the Technical Standards and Corrective Action Requirements for Owners & Operators of Underground Storage Tanks, 40 C.F.R. 280, et. seq. (hereinafter the "UST Regulations").

20.2   Tenant shall provide Landlord written proof on at least an annual basis, and monthly, if requested by Landlord, that Tenant is in compliance as required in Section 20.1 above.

20.3   Tenant agrees to indemnify and save harmless Landlord from and against any and all liability or loss, of any kind or nature, that Landlord may sustain as a result of any and all claims, demands, costs or judgments arising from any contamination on the Property or adjacent property during the Lease Term, or any extension thereof, caused by the actions of or inactions of Tenant, including any costs or other expenses incidental to any remedial plan or site remediation mandated by the Environmental Protection Division of the Georgia Department of Natural Resources, or any other governmental agency or entity with jurisdiction, for petroleum discharges on the Property during the Lease Term or any extension thereof.

21.   **TENANT IMPROVEMENTS AND REMOVAL OF FIXTURES:**

Except as otherwise set forth herein, Tenant shall have the right to . . . .e at any time and from time to time. either at or before the expiration or termination of this Lease, any or all of Tenant's personal property or trade fixtures, whether or not attached to the realty, except for any Gasoline Equipment or Personal Property Equipment located upon the Property. The Tenant agrees to repair any damage that may be incurred by such removal.

22.   **DEFAULT AND REMEDIES:**

22.1   Events of Default. The occurrence of any of the following shall constitute events of default:

a.   Any part, portion or component of the Total Rental, or any other sums payable under this Lease or any extension thereof are not received when due;

b.   Any petition is filed by or against Tenant, or any limited partnership of which the Tenant may serve as general partner, under any Section or chapter of the Federal Bankruptcy Code, and, in the case of any such petition filed by or against Tenant, or any limited partnership of which the Tenant may serve as general partner, such petition is not dismissed within sixty (60) days after the date of such filing;

c. Tenant becomes insolvent or transfers Property in an attempt to defraud creditors;

d. Tenant makes an assignment for the benefit of creditors;

e. A receiver is appointed for any of the Tenant's assets; or

f. Tenant breaches or fails to comply with any term, provision, condition or covenant of this Lease.

22.2    Remedies. If the Tenant shall default pursuant to the provisions of Subsection 22.1a. or fails to comply with the provisions of Section 20.1 and/or 20.2, and fails to cure such default within ten (10) days after the date of the receipt of written notice thereof from Landlord; or if under any other event of default by Tenant under Subsection 22.1, Tenant fails to cure such default within thirty (30) days after the receipt of written notice of default from Landlord, the occurrence of an event of default, Landlord may do or perform any one or any combination of the following in addition to, and not in limitation of, any other remedy or right prescribed or permitted to it by law or by this Lease if the events of default are not cured within the period described above, or such longer period as Landlord, in the e   of its reasonable discretion may allow, given exigent circumstances, after written notice by Landlord to Tenant of any such default after written notice by Landlord to Tenant of any such default:

a. Acceleration of Rent. Landlord may, at its option declare the entirety of all Base Rental and Additional Rental due under the terms of this Lease for the entirety of the unexpired portion of the Lease Term immediately due and payable in full, whereupon the same shall become immediately due and payable.

b. Landlord may re-enter and take possession of the Property without terminating this Lease and sublease the Property in its entirety for the account of the Tenant, holding Tenant liable for the difference between the Total Rental due under the terms of the instant Lease Agreement and any net Rentals received upon subletting.

c. Landlord may terminate this Lease, and exclude Tenant from possession of the Property and use Landlord's best efforts to lease the same for the account of the Tenant, holding the Tenant liable for the entirety of the Total Rental due under the terms of this Lease for the entirety of the unexpired portion of the Lease Term, less any net proceeds obtained from Landlord's efforts to lease the Property for Tenant's account.

d. Landlord may take whatever action at law or in equity which may appear necessary or desirable to collect the Total Rental due hereunder for the unexpired portion of th  Lease Term, or to enforce the performance and observance    , other obligation, agreement, or covenant contained in this Lease, or to recover any and all damages suffered by Landlord as a result of Tenant's violation or breach of any term, condition or provision of this Lease.

e. No remedy herein conferred upon the Landlord is intended to be exclusive of any other available remedy or remedies, but each and every such remedy shall be cumulative and shall be in addition to every other remedy given under this Lease, or now or hereafter existing at law or in equity, or by statute.

f. Alternatively, Landlord may seek the remedy of specific performance to require the performance by the Tenant of the act, duty, or responsibility required of it under the Lease, which remedy shall be mutually available to Landlord or Tenant through arbitration, as set forth in Section 23 below.

8

g. In the event that Tenant should default under any provision of this Lease, or should Tenant hold over and continue ~~ion after the termination of the expiration of the Lease Term, and should Landlord employ attorneys or incur other expenses for the collection of rent or other charges payable under this Lease or the enforcement or performance or observation of any obligation or agreement on the part of Tenant herein contained, Tenant agrees that Tenant will, on demand therefore, pay to Landlord fifteen percent (15%) of all sums due hereunder as, or in lieu of, attorneys fees, in addition to all other actual expenses incurred by Landlord.

h. All amounts of money payable by Tenant to Landlord hereunder (including without limitation Total Rental) shall, if not paid when due, bear interest from the date due, or declared due hereunder, until paid at the rate of Twelve percent (12.0%) per annum. In addition, on any check returned for non-payment, Tenant shall pay a service charge of $25.00 or five percent (5%) of the face amount of the check, whichever is greater.

23.   **ARBITRATION AFTER DEFAULT:**

Except as to a default pursuant to the provision of Subsection 22.1n., and 22.1f. of this Lease, any controversy which shall arise between the Tenant and Landlord regarding the rights, duties, liabilities or responsibilities hereunder of either party, shall be settled by arbitration. The parties agree that the decision of the arbitration panel will be final, binding, irrevocable and enforceable as provided under the Georgia Arbitration Act (O.C.G.A. 9-9, et seq.), which shall govern and control any arbitration proceedings between the parties hereto. Such arbitration shall be before a disinterested arbitrator, if one can be agreed upon; oth.... before three (3) disinterested arbitrators, one named by each party and one by the two thus chosen. The expense of arbitration proceedings shall be paid by the non-prevailing party, and the arbitration panel shall designate in their written opinion who prevails. In the event neither party fully prevails, said panel may distribute the costs on a pro rata basis, as under comparative negligence findings in a court of law. The prevailing party shall also recover all other expenses in the same pro rata basis, including a reasonable attorney's fee. The parties agree that the commencement of arbitration proceedings shall automatically stay the running of all time periods set forth in this Lease until the final conclusion of said arbitration proceedings, or entry of final judgment or decree of a court of competent jurisdiction confirming, modifying or correcting the award.

24.   **EXTERIOR SIGNS and EXTERIOR EQUIPMENT:**

Except as otherwise set forth herein, Tenant may **not** place any signs upon the outside walls or roof of or grounds surrounding the Property or any equipment on the exterior of the building, without the written consent of Landlord which may not be unreasonably withheld. Tenant shall be responsible to Landlord for any damage caused by installation, use, or maintenance of said any signs, and Tenant agrees upon removal of said signs to repair all damage incident to such removal.

25.   **EFFECT OF TERMINATION OF LEASE:**

No termination of this Lease prior to the normal ending thereof, by lapse of time or otherwise, shall affect Landlord's right to collect Base Rental, Addi_ _ental, and any other charges due Landlord by Tenant.

26.   **LANDLORD'S TITLE:**

Except as to current liens on the Property, Landlord represents and warrants to Tenant that it has fee simple, marketable title to the Property, can lease the Property to Tenant. This

Lease shall be subject to and subordinate to any security deed, security agreement or lien now or hereafter placed on the Property.

27.    NO ESTATE IN LAND:

This Lease shall create the relationship of Landlord and Tenant between the parties hereto; no estate shall pass out of Landlord. Tenant has only a usufruct, not subject to levy and sale.

28.    ATTORNEY'S FEES & HOMESTEAD:

If any rental owing under this Lease is collected by or through an attorney at law, or if Landlord employs an attorney at law to enforce any of the other terms or conditions of this Lease, Tenant agrees to pay to Landlord fifteen percent (15%) attorney's fees hereunder for attorneys' fees, which shall constitute Additional Rental hereunder. Tenant waives all homestead rights and exemptions which it may have under any law as against any obligation owing under this Lease. Tenant hereby assigns to Landlord Tenant's homestead and exemption.

29.    RIGHTS CUMULATIVE:

All rights, powers and privileges conferred hereunder upon parties hereto shall be cumulative but not restrictive to those given by law.

30.    SERVICE OF NOTICE:

Tenant hereby appoints as Tenant's agent to receive service of all dispossessory or distraint proceedings and notices hereunder, and all notices required under this Lease, the person in charge of Property at the time, or occupying same; and if no person is in charge of, or occupying the Property, then such service of notice may be made by attaching the same on the main entrance to the Property. A copy of all notices under this Lease shall also be sent to such other address as Tenant may from time to time designate in writing to Landlord.

All notices required by law or by this Lease to given to the parties shall be given by depositing same in registered or certified U.S. Mail, postage prepaid, and addressed as follows:

For Landlord:      R S Beaver Ruin Center, LLC
                   Attention: Ms. Rita Sharp
                   5995 Nelson Road
                   Longmont, Colorado 80503

                   With a copy to:
                   Moore, Clarke, DuVall & Rodgers, P. C.
                   Attn: Willis A. DuVall, Jr.
                   2829 Old Dawson Road
                   Albany, Georgia 31707


For Tenant:        Saniya & K. Stores, Inc.
                   Attn: Yunus H. Kalavant
                   2070 Beaver Ruin Road, Unit D
                   Norcross, Georgia 30071

                   With a copy to :
                   W. Steed Scott Esq.
                   729 Piedmont Avenue
                   Atlanta, Georgia 30308

or to such other address as Landlord or Tenant may from time to time designate in writing to the other.

10

31. **SUCCESSORS AND ASSIGNS, GOVERNING LAW AND BINDING EFFECT:**

"Landlord" as used in this Lease shall include first party, its representatives, assigns and successors in title to the Property. "Tenant" shall include second party, its representatives, assigns and successors and if this Lease shall be validly assigned or sublet, shall include also Tenant's assignees or subtenants. "Landlord", and "Tenant", include male and female, singular and plural, corporation, partnership or individual, as may fit the particular parties. The laws and case decisions of the State of Georgia shall govern the validity, interpretation, performance and enforcement of this Lease. Except as otherwise provided herein, this Lease shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

32. **TIME OF THE ESSENCE:**

In all instances where Tenant is required by the terms and provi... of this Lease to pay and sum or to do any act at a particular indicated time or within any indicated period, it is understood and agreed that time is of the essence.

33. **WAIVER OF CLAIMS:**

To the extent permitted by law, Landlord and Landlord's agents, employees and contractors shall not be liable for, and Tenant hereby indemnifies, holds harmless and releases Landlord, his agents, employees and contractors from and against any and all claims for damage to persons or Property sustained by Tenant or any person claiming through Tenant resulting from any fire, accident, occurrence or condition in or upon the Property of which it shall be a part except where such claims arise solely out of the gross negligence or willful misconduct of Landlord, Landlord's agents, employees or contractors.

34. **RECORDATION:**

Landlord and Tenant agree that no part of this Lease shall be recorded.

35. **WAIVER:**

No waiver by Landlord or Tenant of any violation or breach of this agreement by the other party shall bar said non-waiving party from insisting upon strict performance of any covenant or condition of this Lease in case of a subsequent breach or violation thereof.

36. **ADA REQUIREMENTS:**

Tenant shall be responsible for complying with the Americans w' .bilities act (ADA) in the Property. Within ten (10) days after receipt, Landlord and Tenant shall advise the other party in writing, and provide the other with copies of (as applicable), any notices alleging violation of the Americans with Disabilities Act of 1990 ("ADA") relating to any portion of the Property; any claims made or threatened in writing regarding noncompliance with the ADA and relating to any portion of the Property; or any governmental or regulatory actions or investigations instituted or threatened regarding noncompliance with the ADA and relating to any portion of the Property or the Premises.

37. **ASSIGNMENT OF LEASE:**

Tenant may not assign or sublet any interest in this Lease, without the prior written consent of the Landlord, which written consent shall not be unreasonably denied by Landlord. However, notwithstanding Landlord's written consent for the Lease to be assigned or sublet, Tenant and any Guarantor of this Lease shall remain liable to Landlord throughout the Lease Term or Extended Lease Term then in effect.

38. INDEMINITY AND WAIVER OF CLAIMS:

Except as to the extent caused by the gross negligence or willful misconduct of Landlord or any of its trustees, members, principals, beneficiaries, partners, officers, directors, employees, lenders and agents (the "Landlord Related Parties"), Tenant hereby waives all claims against and releases Landlord and Landlord Related Parties from all claims for any injury to or death of persons, damage to property or business loss in any manner related to (a) Force Majeure, (b) acts of third parties, (c) the bursting or leaking of any tank, water closet, drain or other pipe, (d) the inadequacy or failure of any security services, personnel or equipment, or (e) any matter not within the reasonable control of Landlord. Except as to the extend caused by the gross negligence or willful misconduct of Landlord or Landlord Related Parties, Tenant shall indemnify, defend and hold Landlord and Landlord Related Parties harmless against and from all liabilities, obligations, damages, penalties, claims, actions, costs, charges and expenses, including, without limitation, reasonable attorneys' fees and other professional fees (if and to the extend permitted by Law)(collectively referred to as "Losses"), which may be imposed upon, incurred by or asserted against Landlord or any of the Landlord Related Parties by any third party and arising out of or in connection with any damage or injury occurring on the Property or any acts or omissions (including violations of Law) of Tenant, the Tenant Related Parties or any of Tenant's transferees, contractors or licenses. Except as to the extent caused by the gross negligence or willful misconduct of Tenant Related Parties, Landlord shall indemnify, defend and hold Tenant, its trustees, members, principals, beneficiaries, partners, directors, employees and agents ("Tenant Related Parties") harmless against and from all Losses which may be ?    ~d upon, incurred by or asserted against Tenant or any of the Tenant Related Parties by any third party and arising out of or in connection with any damage or injury occurring in the common areas of the Shopping Center or the acts or omissions (including violations of Law) of Landlord or Landlord Related Parties.

39. ENTIRE AGREEMENT:

This Lease contains the entire agreement of the parties hereto and no representations, inducements, promises or agreements, oral or otherwise, between the parties, not embodied herein unless contained in a modification in writing executed by all of the parties hereto, shall be of any force or effect.

40. SPECIAL STIPULATIONS:

Insofar as the following special Stipulations conflict with any of the foregoing provisions, the Special Stipulations shall control:

a)   Tenant intends to install a new cash register for the Property which shall remain the property of Tenant at the end of this Lease;

b)   Tenant shall have ten (10) days from the date of execution of this Lease by all parties to conduct any and all testing of the Gasoline Equipment (the "Inspection Period"), and if in Tenant's sole discretion the Gasoline Equipment is not satisfactory to Tenant, Tenant may notify Landlord in writing of any deficiencies in the Equipment that require repair. By June 10, 2007, Landlord shall notify Tenant in writing of the repairs Landlord is willing to complete at Landlord's cost. If Tena...  ..not satisfied with the repairs Landlord is willing to complete, Tenant shall notify Landlord in writing by June 20, 2007 of Tenant's intent to terminate this Lease, and thereafter neither party shall have any further obligation to the other regarding this Lease.

c)   This Lease may be executed in any number of counterparts, each of which shall be an original, but all of which together shall constitute one and the same instrument.

Case 1:23-mi-99999-UNA   Document 1150-2   Filed 04/12/23   Page 17 of 27

IN WITNESS WHEREOF, the duly authorized corporate officers of Landlord and Tenant herein have hereunto set their hands and seals the day and year first above written.

**LANDLORD**

R S Beaver Ruin Center, LLC,
a Georgia limited liability company

By:_____
Print Name:_____
Title:_____

Signed, sealed and delivered
as to Landlord in the presence of:                                              (CORPORATE SEAL)

_____
Unofficial Witness

_____
Notary Public
My commission expires: _____

[Signatures Continued on Following Page]

13

TENANT

Saniya & K Stores, Inc.,
a Georgia corporation

By: _____
Print Name: YUNUS H KALAYANT
Title: PRECIDENT

Attest: _____
Print Name: _____
Title: _____

Signed, sealed and delivered                    (CORPORATE SEAL)
as to Tenant in the presence of:
_____
Unofficial Witness

_____
Notary Public
My commission expires: _____

### Guaranty of Commercial Lease Contract

For and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration paid for or delivered to the undersigned, Yunus H. Kalavant (hereinafter referred to as "Guarantor"), Guarantor does hereby unconditionally guaranty to Landlord the full and prompt payment and performance of any and all obligations of Tenant to Landlord under the above-referenced Commercial Lease Contract.

This 15 day of MAY _____, 2007.

GUARANTOR

_____
Yunus H. Kalavant
SGN: 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

Signed, sealed and delivered
this the _____ day of _____, 2007
in the presence of:

_____
Unofficial Witness

_____
Notary Public
My commission expires: _____
S:\Real Estate Albany 2007\Sharp-9642.001\Final Commercial Lease Contract. Doc

14

Notice of Lease Extension R S Beaver Ruin Center LLC

Date 1/11/2023

To: Rita Sharp, RS Beaver Ruin Center LLC

[illegible] at 2020 Beaver Ruin Center Norcross GA [illegible]

[illegible] for a period commencing on 1/1/2023 and terminating on 1/31/2024

[illegible]

[illegible]

Additional requirements:

[illegible]

[illegible]

[illegible]

[illegible]

Sandip Patel [illegible]

Rita Sharp, Landlord

Sandip patel
iPhone



PLAINTIFF'S
EXHIBIT

2

# Notice of Lease Extension R S Beaver Ruin Center LLC

**Date 1/11/2023**

To: Rita Sharp, RS Beaver Ruin Center LLC

Please be advised that the undersigned, as Lessee under a certain lease for premises known as **2070 Beaver Ruin Center Norcross, GA Convenience and Gas Store** and dated 5/15/2007 (Lease), does hereby exercise his/ her option to exten.... .e term of said Lease for a period commencing on 1/1/2023 and terminating on 1/31/2027.

During extended term, Lessee shall pay rent of $4167 base per month plus monthly CAM charges. Current CAM as of 1/1/2023 is $687, to be adjusted periodically as necessary. Base rent will increase by 4% per annum on the first day of the year.

Rent is due the first day of each month via direct deposit. If rent is not received in whole on or before the 5th day of the month, this lease extension will be null and void.

**Additional requirements:**

Tennant to increase deposit by $2000 (total of $6000).

Tennant to supply contact information for gas supplier and U Haul representative.

Tennant to provide a copy of U Haul contract, current Certificate of Insurance, and all current state and federal inspections.

This lease extension will be in effect upon signatures of all parties AND receipt of all additional requirements as listed above.

_____
**Sandip Patel**, Lessee                         date

_____
**Rita Sharp**, Landlord                          date

Fwd: Jan .rent

From: Sandip Patel (sandip8674@yahoo.com)

To:   pateld0404@yahoo.com

Date: Wednesday, January 18, 2023 at 09:11 PM EST

Sandip patel
iPhone

Begin forwarded message:

> **From: Rita Sharp <rita@ritasharp.com>**
> **Date: January 10, 2023 at 6:13:20 PM EST**
> **To: Sandip Patel <sandip8674@yahoo.com>**
> **Subject: Jan .rent**
>
> Hello Mr. Patel
> I have received your wire  for Januarys rent $4,854.00. I will be emailing you the
> addendum to renew our lease for 5 years with the new stipulations.Please sign it
> and return to me . I will sign  and send you the completed document.
> Rita Sharp



PLAINTIFF'S
EXHIBIT
3

Fwd: lease otions

From: Sandip Patel (sandip8674@yahoo.com)

To:     pateld0404@yahoo.com

Date:   Monday, March 27, 2023 at 04:58 PM EDT

Sandip patel
iPhone

Begin forwarded message:

> **From:** Sandip H Patel <sandip8674@yahoo.com>
> **Date:** January 18, 2023 at 11:04:15 PM EST
> **To:** "D. Patel" <pateld0404@yahoo.com>
> **Subject: Fwd: lease otions**

Sent from my iPhone

Begin forwarded message:

> **From:** Rita Sharp <rita@ritasharp.com>
> **Date:** January 18, 2023 at 12:25:32 PM EST
> **To:** Sandip Patel <sandip8674@yahoo.com>
> **Subject: lease otions**



Hello Mr. Patel

I have received a off from a person who
wants to lease the convince store

space and before I would agree to his offer I wanted to ask you if you are interested in matching his offer .

1. $33 dollars a sq ft which is $5,500.00 base rent,  plus the triple net Cam

2.New Gas dispenser and repair and updating canopy and signs

3.remodel the  bathroom

4. new lighting and floors and paint interior.

5. $50,000. cash to me and $25,000.00 cash to the realestate agent
Please let me know by 1/24/2023 if you want to match this offer.


Rita

# Fwd: Meeting at 2070 Beaver Ruin Road

From: Sandip Patel (sandip8674@ymail.com)

To:     mharper@mayerharper.com; pateld0404@yahoo.com

Date:   Monday, March 27, 2023 at 04:16 PM EDT

Sandip patel
iPhone

Begin forwarded message:

> **From:** Sandip Patel <sandip8674@ymail.com>
> **Date:** March 27, 2023 at 4:14:06 PM EDT
> **To:** Mharper@mayerharper.com
> **Subject: Fwd: Meeting at 2070 Beaver Ruin Road**

Sandip patel
iPhone

Begin forwarded message:

> **From:** Adam Dewit <adewit@quingroup.com>
> **Date:** March 27, 2023 at 2:44:36 PM EDT
> **To:** Rita Sharp <rita@ritasharp.com>, Sandip Patel <sandip8674@ymail.com>
> **Subject: Meeting at 2070 Beaver Ruin Road**

Mr. Patel,

Good afternoon.



The new tenant's lease is commencing on a date, and 2023.

The new tenant and I will be touring the property this Wednesday afternoon at 3:00. If you're interested in talking with the new tenant regarding your inventory – please let me know if you're available to meet on Wednesday afternoon.

My contact information is below - if you have any questions, just let me know.

Respectfully,

Adam DeWit
419-260-6388 Cell
706-750-0626 Direct
adewit@quingroup.com


5855 Jimmy Carter Blvd, Suite 210
Norcross, GA 3007

www.quingroup.com


-----Original Message-----
From: Rita Sharp <rita@ritasharp.com>
Sent: Monday, March 27, 2023 12:59 PM
To: Sandip Patel <sandip8674@ymail.com>; Adam Dewit <adewit@quingroup.com>
Subject: Meeting

Hello Sandi
You will be getting a email from Adam De... he is managing the c store for me, to arrange a meeting .
I have had eye surgery and am not able handle the transition to the new tenant which is planned for June first at this time.
Thanks Rita

E-FILED IN OFFICE - MX
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA

**23-A-02810-9**

4/4/2023 3:43 PM

TIANA P. GARNER, CLERK

## IN THE SUPERIOR COURT OF GWINNETT COUNTY

## STATE OF GEORGIA

K UNION COMPANY,          )
                               )

          Plaintiff,       )

       v.                  )     Civil Action File No: 23-A-02810-9
                               )

2070 BEAVER RUIN CENTER, LLC.   )
                               )

          Defendants.    )
                               )
                               )

## <u>AMENDMENT TO THE COMPLAINT TO CORRECT A MISNOMER</u>

Comes now Plaintiff and pursuant to OCGA 9-11-21 corrects the misnomer of the Defendant's corporate name. The Defendant's correct corporate name is **RS Beaver Ruin Center, LLC.**

Plaintiff amends its complaint so that, hence forward, the caption above reflects the correct legal name of the Defendant corporation:

**RS Beaver Ruin Center, LLC.**

Respectfully submitted by:

*/s/ Mark Harper*
MARK C. HARPER
Georgia Bar No. 328315
Attorney for Plaintiff

Mayer and Harper
50 Hurt Plaza SE
Suite 1640
Atlanta, Georgia 30303
404.584.9588 (telephone)
404.832.830m (facsimile)
mharper@mayerharper.com

E-FILED IN OFFICE - CE
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
23-A-02810-9
4/4/2023 2:18 PM
TIANA P. GARNER, CLERK

IN THE SUPERIOR COURT OF _GWINNETT_ COUNTY
STATE OF GEORGIA

_K UNION COMPANY_

CIVIL ACTION
NUMBER _23-A-02810-9_

_____

PLAINTIFF

VS.

_2070 BEAVER RUIN CENTER LLC_

_____

DEFENDANT

## SUMMONS

TO THE ABOVE NAME DEFENDANT:

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney whose name and address is:

MARK HARPER
50 HURT PLZ SE
Ste 1640
Atlanta, GA 30303

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This _____ day of _4th day of April, 2023_

Tiana P. Garner

Clerk of Superior Court

BY _Calah Everett_

Deputy Clerk