# EXHIBIT A

E-FILED IN OFFICE - CE
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
23-A-01895-1
3/8/2023 2:17 PM
TIANA P. GARNER, CLERK

## IN THE SUPERIOR COURT OF GWINNETT COUNTY

## STATE OF GEORGIA

**Craig Fritz** and **Kimberly Fritz**
1278 Crumbley Road
McDonough, GA 30252

23-A-01895-1

**PLAINTIFFS**          **CIVIL ACTION NUMBER:** _____

**VS**

**State Farm Fire and Casualty Company**
**RA: Corporation Service Company**
2 Sun Court, Suite 400
Peachtree Corners, GA 30092

**DEFENDANT**

---

## SUMMONS

---

### TO THE ABOVE-NAMED DEFENDANT:

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiffs' attorney, whose name and address is:

**Michael D. Turner**
**Attorney For the Plaintiffs**
**THE HUGGINS LAW FIRM, LLC**
**110 Norcross Street**
**Roswell, GA 30075**
**770-913-6229**
mdturner@lawhuggins.com

an Answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.          8th day of March, 2023

This _____ day of _____, 2023.

Tiana P. Garner,
Clerk of Superior Court

BY: _Alah Everett_____
Deputy Clerk

# This Page Intentionally Left Blank to Separate Documents

E-FILED IN OFFICE - CE
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
**23-A-01895-1**
**3/8/2023 2:17 PM**
TIANA P. GARNER, CLERK

## IN THE SUPERIOR COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| **CRAIG FRITZ AND** | ) |
| **KIMBERLY FRITZ,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **CIVIL ACTION FILE NO.:** |
| | ) |
| **STATE FARM FIRE AND CASUALTY** | ) |
| **COMPANY,** | ) |
| **a foreign corporation,** | ) 23-A-01895-1 |
| | ) |
| **Defendant.** | ) |

## COMPLAINT

**COMES NOW** Plaintiffs **Craig Fritz and Kimberly Fritz,** by and through the undersigned counsel, and files this Complaint for breach of first party property insurance contract and bad faith denial of insurance coverage against Defendant, **State Farm Fire and Casualty Company,** and in support hereof, states as follows:

### PARTIES

1.

Plaintiffs are adult resident citizens of Henry County, Georgia.

2.

Upon information and belief, Defendant is a foreign insurance company, registered to transact business in, and in fact transacts business in, the State of Georgia. Defendant is in the business of insuring risks and properties located throughout the United States, including Georgia. Defendant maintains an office at 2 Sun Court, Suite 400, Peachtree Corners, GA 30092 where it may be served with process through its registered agent, Corporation Service Company, as identified by the state of Georgia Secretary of State registry.

## JURISDICTION AND VENUE

3.

This Court has subject matter jurisdiction over this action for breach of contract and bad faith denial of an insurance claim because the breached contract was entered into, and concerned property in, the state of Georgia and the amount in controversy exceeds $15,000.00. This Court has personal jurisdiction over Defendant because Defendant is transacting business and insuring properties in the state of Georgia and has appointed a registered agent for service of process in Georgia pursuant to O.C.G.A. § 33-4-1 and O.C.G.A. § 33-4-4.

4.

Venue is proper in this Court because Defendant has a registered agent doing business in Gwinnett County pursuant to O.C.G.A. § 33-4-1, O.C.G.A. § 33-4-4.

5.

In addition, by virtue of the express terms of the insurance policy at issue, Defendant has consented to jurisdiction and venue of this Court.

## THE POLICY

6.

Prior to March 15, 2022, and in consideration of the premiums paid to Defendant by the Plaintiffs, Defendant issued a policy with Policy No. 11E8J9038 (the "Policy"). Upon request from the insured, Defendant provided a copy of the Policy. A true and accurate copy of the Policy received from Defendant is attached hereto as Exhibit "A."

7.

The Policy provides numerous coverages for the real and personal property located at 1278 Crumbley Road, McDonough, GA 30252 (the "Insured Property," "Property," or the "home"). The

2

Policy likewise insures against loss due to Water, subject to a deductible of per occurrence. (*See* Ex. A).

8.

The Policy is an all-perils policy providing coverage for sudden and accidental direct physical loss to the dwelling, other structures, and personal property. The Policy covers property repairs and personal property on a full replacement cost basis. (*See* Ex. A).

9.

The Policy covers various types of expenses, including reasonable and necessary costs incurred for temporary repairs to protect covered property from further imminent covered loss and additional living expenses. (*See* Ex. A).

## SUDDEN AND ACCIDENTAL DAMAGE TO THE INSURED PROPERTY

10.

On or about March 15, 2022, the above-referenced property suffered damage from a sudden and accidental direct physical Loss resulting from Water (the "Loss"). The Policy was in effect at the time of the Loss.

11.

Plaintiffs promptly and timely notified Defendant of the damage to the Property resulting from the Loss and made a claim pursuant to the Policy. As a result, Defendant assigned an adjuster ("Adjuster") to investigate Plaintiffs' claim for sudden and accidental direct physical loss. The Adjuster was authorized as Defendant's representative and agent for purposes of the claim.

3

12.

At all times, Plaintiffs made themselves and the Property available to, and fully cooperated with, the Defendant and its representative and agent to inspect and investigate the damages caused by the loss.

13.

Defendant, through its authorized representative and agent, Adjuster, performed a site inspection of the Property.

14.

Defendant's authorized representative and agent, Adjuster, incurred the duty of acting with due diligence in achieving a proper disposition of the Plaintiffs' claim when Adjuster undertook the handling of the claim.

15.

Defendant, through its authorized representative and agent, Adjuster, grossly underestimated the scope of loss suffered by the Plaintiffs as a result of the Water event. Defendant failed to properly indemnify the Plaintiffs and estimated Plaintiffs' total loss to be $17,588.04. Plaintiffs' deductible is per occurrence, and Defendant withheld in recoverable depreciation; thus, after deductions for depreciation and Plaintiffs' deductible, Defendant claims Plaintiffs were due as indemnification under the Policy. A true and accurate copy of the Defendant's estimate is attached hereto as Exhibit "B."

16.

As a result of Defendant's gross underestimation, Plaintiffs requested multiple times that Defendant reconsider its position regarding Defendant's estimate. Defendant refused to comply with the Plaintiffs' requests and continued to frivolously and baselessly deny any additional

4

payment on Plaintiffs' claim. Furthermore, the Defendant continued to ignore the opinions of the Plaintiffs' experts as to the extent of damage and the amount it will cost the Plaintiffs' to be properly indemnified for the Loss.

17.

Plaintiffs made repeated requests for payment of the claim, including a written demand sent to Defendant on August 31, 2022. A true and accurate copy of the written demand is attached hereto as Exhibit "C." Despite this demand for $67,355.45 less previous payments and the applicable deductible, Defendant continued to frivolously deny Plaintiffs' claim without just cause when, under one or more portions of the Policy, the obligation to settle the claim became reasonably clear.

18.

The Plaintiffs' August 31, 2022, correspondence (Ex. C) to Defendant was a letter of representation from Plaintiff's counsel and a formal 60-Day demand, pursuant to the guidelines set forth in O.C.G.A. §33-4-6. After putting Defendant on notice of a potential lawsuit through the formal 60-Day demand, the Defendant continued to deny Plaintiffs' claim without just cause.

19.

Defendant did not act fairly or honestly toward the Plaintiffs, or with due regard to the Plaintiffs' claim and interests, when Defendant, under all circumstances articulated herein, failed to indemnify the Plaintiffs for their damages in direct breach of the terms and conditions of the Policy.

20.

Plaintiffs have fulfilled all conditions precedent and contractual obligations under the Policy prior to this lawsuit, or the same were waived.

5

21.

There exists a genuine, justifiable controversy between the Plaintiffs and the Defendant as to whether Defendant is responsible for further indemnification owed to the Plaintiffs as a result of the Loss. Plaintiff has exhausted every reasonable means possible to resolve this dispute with the Defendant. With no other option, Plaintiffs were constrained to hire legal counsel, incur additional expenses, and file this lawsuit.

22.

Plaintiffs have suffered loss under the Policy in an amount to be determined at trial.

## COUNT I: BREACH OF CONTRACT

23.

Plaintiffs hereby adopt, re-allege, and incorporate their allegations set forth in Paragraphs 1-22 of this Complaint as if fully set forth herein.

24.

Plaintiffs have performed all conditions precedent to the Defendant's obligation to perform under the Policy including, without limitation, the timely payment of premiums, timely notice of the claim, and post loss obligations, or the Defendant has waived any and all other conditions.

25.

Under the terms of the Policy, Defendant is required to fully indemnify the Plaintiffs for the damages sustained from the Loss.

26.

Despite Plaintiffs' timely written demand, Defendant failed to provide full indemnification to the Plaintiffs under the terms of the Policy.

6

27.

Defendant failed to act in good faith and fair dealing under the terms of the Policy by refusing to properly investigate and fully indemnify the Plaintiffs according to the terms of the Policy.

28.

As a result of the Defendant's denying and delaying payment in Plaintiffs' claim, Plaintiffs sustained additional covered losses from mitigation and temporary repairs of the direct physical damage to the Property in an amount to be determined at trial.

29.

The Plaintiffs suffered damages as a direct result of Defendant's failure to indemnify the Plaintiffs for their loss.

30.

All foregoing conduct constitutes a breach of contract that has resulted in damages to the Plaintiffs.

31.

**WHEREFORE,** Plaintiffs pray for this Court to enter an award in Plaintiffs' favor of compensatory damages, attorneys' fees, pre- and post-judgment interest, and such other and further relief as the Court may deem just and proper.

## COUNT II: BAD FAITH PURSUANT TO O.C.G.A. § 33-4-6

32.

Plaintiffs hereby adopt, re-allege, and incorporate their allegations set forth in Paragraphs 1-32 of this Complaint as if fully set forth herein.

7

33.

By failing to achieve a proper disposition of Plaintiffs' claim, Defendant acted frivolously, and without a reasonable basis or justification, in contravention of its duty of good faith and fair dealing.

34.

Defendant did not attempt in good faith to settle the Plaintiffs' claim when it could have, and should have, done so under all attendant circumstances had it acted fairly and honestly toward the Plaintiffs and with due regard for the Plaintiffs' interests.

35.

Defendant's failures to adjust Plaintiffs' claim in good faith include, but are not limited to:

(1) Knowingly misrepresenting to claimants, and insureds, relevant facts or policy provisions relating to coverages at issue (*see* O.C.G.A. § 33-6-34(1));

(2) Failing to acknowledge with reasonable promptness pertinent communications with respect to claims arising under its policies (*see* O.C.G.A. § 33-6-34(2));

(3) Failing to adopt and implement procedures for the prompt investigation and settlement of claims arising under its policies (*see* O.C.G.A. § 33-6-34(3));

(4) Not attempting in good faith to effectuate prompt, fair, and equitable settlement of claims submitted in which liability has become reasonable clear (*see* O.C.G.A. § 33-6-34(4));

(5) Compelling insureds or beneficiaries to institute suits to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in suits brought by them (*see* O.C.G.A. § 33-6-34(5));

(6) Refusing to pay claims without conducting a reasonable investigation (*see* O.C.G.A. § 33-6-34(6));

8

(7) When requested by the insured in writing, failing to affirm or deny coverage of claims within a reasonable time after having completed its investigation related to such claim or claims (*see* O.C.G.A. § 33-6-34(7)); and

(8) When requested by the insured in writing, failing in the case of payments or offers of compromise to provide promptly a reasonable and accurate explanation of the basis for such action (or, in the case of claims denials, providing said denial to the insured in writing) (*see* O.C.G.A. § 33-6-34(10)).

36.

The above and foregoing actions of Defendant constitute bad faith pursuant to O.C.G.A. § 33-4-6, as the Defendant refused to pay Plaintiffs' covered loss within sixty (60) days after Plaintiffs' timely written demand (Ex. C) for payment without a reasonable basis for doing so.

37.

Defendant frivolously, and without a reasonable basis, denied proper indemnification to the Plaintiffs for their covered loss.

38.

Defendant's refusal to indemnify the Plaintiffs was done frivolously, without a reasonable basis, and in bad faith.

39.

As a result of Defendant's above-referenced bad faith breach of the Policy issued to the Plaintiff, and pursuant to O.C.G.A. § 33-4-6(a), Defendant is liable for penalties in the amount of "not more than fifty percent (50%) of the liability of the insurer for the loss, or \$5,000.00, whichever is greater, and all reasonable attorneys' fees for the prosecution of the action against the Insurer."

9

40.

**WHEREFORE,** Plaintiffs pray for this Court to enter an award, in Plaintiffs' favor, of the statutory award in an amount of fifty percent (50%) of the total compensatory damages awarded or $5,000.00, whichever is greater, along with a statutory allowance for reasonable attorneys' fees in prosecuting this action, pursuant to O.C.G.A. § 33-4-6, for Defendant's unfair claims settlement practices and bad faith refusal to pay Plaintiffs' loss claim when it could and should have done so, had it acted fairly and reasonably toward the insured.

## **DEMAND FOR JURY TRIAL**

41.

Plaintiffs request a trial by Jury on all counts of the Complaint.

## **PRAYER FOR RELIEF**

42.

**WHEREFORE,** Plaintiffs request that after due proceedings are had, all appropriate penalties be assessed against the Defendant and that the Plaintiffs receive any and all damages at law to which they are justly entitled, and thus prays for judgment against the Defendant, as follows:

a. That this Court grant judgment in favor of the Plaintiffs and against Defendant in an amount to be determined at trial for breach of insurance contract.

b. Compensatory damages, including all damages to the Plaintiffs by the Defendant and any resulting expenses.

c. Bad faith damages in an amount of fifty percent (50%) of the total compensatory damages awarded or $5,000.00, whichever is greater, for Defendant's bad faith delay, denial, and its

10

intentional, frivolous failure to conduct a reasonable investigation of the Plaintiffs' claim

without a reasonable basis;

d.  Plaintiffs' attorneys' fees and costs of suit in this action;

e.  Plaintiffs' consultant and expert fees;

f.  Pre- and post-judgment interest in the maximum amount allowed by law;

g.  All statutory penalties;

h.  Any and all applicable multipliers; and,

i.  Any and all other relief that the Court may deem just and proper, whether such relief sounds

in law or equity.

Dated, this 8th day of March, 2023.

RESPECTFULLY SUBMITTED,

**The Huggins Law Firm, LLC**
110 Norcross Street
Roswell, GA 30075
(o) (770) 913-6229
(e) remington@lawhuggins.com
(e) mdturner@lawhuggins.com

J. Remington Huggins, Esq.
Georgia Bar No.: 348736
Michael D. Turner, Esq.
Georgia Bar No.: 216414

*Attorneys for the Plaintiff*

11

# EXHIBIT A



This policy is one of the broadest forms available today, and provides you with outstanding value for your insurance dollars. However, we want to point out that every policy contains limitations and exclusions. Please read your policy carefully, especially "Losses Not Insured" and all exclusions.

# State Farm®
# **Homeowners Policy**

**Georgia**
HW-2111

# HOMEOWNERS POLICY
## TABLE OF CONTENTS

| | |
|---|---|
| AGREEMENT | 1 |
| DEFINITIONS | 1 |
| DEDUCTIBLE | 5 |
| SECTION I – PROPERTY COVERAGES | 5 |
| COVERAGE A – DWELLING | 5 |
| Dwelling | 5 |
| Other Structures | 5 |
| Property Not Covered | 5 |
| COVERAGE B – PERSONAL PROPERTY | 5 |
| Property Covered | 5 |
| Special Limits of Liability | 6 |
| Property Not Covered | 6 |
| COVERAGE C – LOSS OF USE | 8 |
| Additional Living Expense | 8 |
| Fair Rental Value | 8 |
| Prohibited Use | 8 |
| SECTION I – ADDITIONAL COVERAGES | 8 |
| Debris Removal | 8 |
| Temporary Repairs | 9 |
| Trees, Shrubs, and Landscaping | 9 |
| Fire Department Service Charge | 9 |
| Property Removed | 9 |
| Credit Card, Bank Fund Transfer Card, Forgery, and Counterfeit Money | 9 |
| Power Interruption | 10 |
| Refrigerated Products | 10 |
| Arson Reward | 10 |
| Volcanic Action | 10 |
| Collapse | 10 |
| Locks and Remote Devices | 11 |
| Fuel Oil Release | 11 |
| Tear Out | 11 |
| Home Certification | 11 |

| | |
|---|---|
| INFLATION COVERAGE | 11 |
| SECTION I – LOSSES INSURED | 12 |
| COVERAGE A – DWELLING | 12 |
| COVERAGE B – PERSONAL PROPERTY | 12 |
| SECTION I – LOSSES NOT INSURED | 14 |
| SECTION I – LOSS SETTLEMENT | 18 |
| COVERAGE A – DWELLING | 18 |
| A1 – Replacement Cost Loss Settlement – Similar Construction | 18 |
| A2 – Replacement Cost Loss Settlement – Common Construction | 19 |
| COVERAGE B – PERSONAL PROPERTY | 19 |
| B1 – Limited Replacement Cost Loss Settlement | 19 |
| B2 – Depreciated Loss Settlement | 20 |
| SECTION I – CONDITIONS | 20 |
| Insurable Interest and Limit of Liability | 20 |
| Your Duties After Loss | 20 |
| Loss to a Pair or Set | 21 |
| Appraisal | 21 |
| Other Insurance | 22 |
| Suit Against Us | 22 |
| Our Option | 22 |
| Loss Payment | 22 |
| Abandonment of Property | 22 |
| Mortgagee Clause | 22 |
| No Benefit to Bailee | 23 |
| Recovered Property | 23 |
| Assignment of Claim | 23 |
| SECTION II – LIABILITY COVERAGES | 23 |
| COVERAGE L – PERSONAL LIABILITY | 23 |
| COVERAGE M – MEDICAL PAYMENTS TO OTHERS | 23 |

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

**SECTION II – ADDITIONAL COVERAGES**.............24
 Claim Expenses ...............................................24
 First Aid Expenses ...........................................24
 Damage to Property of Others ..........................24
**SECTION II – EXCLUSIONS**..................................25
**SECTION II – CONDITIONS**...................................28
 Limit of Liability................................................28
 Severability of Insurance ..................................28
 Duties After Loss ..............................................28
 Coverage M Requirements ...............................29
 Payment of Claim – Coverage M or Damage
  to Property of Others .....................................29
 Suit Against Us..................................................29
 Bankruptcy of an Insured ..................................29
 Other Insurance – Coverage L ...........................29
**SECTION I AND SECTION II – CONDITIONS**.............29
 Policy Period ....................................................29
 Concealment or Fraud.......................................29
 Liberalization Clause .........................................30
 Waiver or Change of Policy Provisions ............30
 Cancellation......................................................30
 Nonrenewal ......................................................30
 Assignment of Policy ........................................31

 Subrogation and Reimbursement.....................31
 Death ...............................................................31
 Conformity to State Law...................................31
 Premium ..........................................................31
 Right to Inspect................................................32
 Joint and Individual Interests............................32
 Change of Policy Address ................................32
 Electronic Delivery............................................32
 Our Rights Regarding Claim Information.........32
 Duties Regarding Claim Information.................33
**OPTIONAL POLICY PROVISIONS**............................33
 Option AI – Additional Insured..........................33
 Option BP – Business Property.........................33
 Option BU – Business Pursuits .........................33
 Option FA – Firearms ........................................34
 Option ID – Increased Dwelling Limit ...............34
 Option IO – Incidental Business ........................35
 Option JF – Jewelry and Furs............................35
 Option OL – Building Ordinance or Law............36
 Option SG – Silverware and Goldwar7
  Theft ................................................................37

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

## HOMEOWNERS POLICY
### AGREEMENT

*We* agree to provide the insurance described in this policy:

1. based on *your* payment of premium, in a form acceptable to *us*, for the coverages *you* chose;

2. based on *your* compliance with all applicable provisions of this policy; and

3. based on the information *you* have given *us* and *your* statements in this agreement.

*You* agree, by acceptance of this policy, that:

1. *you* will pay premiums when due and comply with the provisions of this policy;

2. the statements in this agreement are *your* statements and are true;

3. *we* insure *you* on the basis *your* statements are true; and

4. this policy contains all of the agreements between *you* and *us* and any of *our* agents.

Unless otherwise indicated in the application, *you* state that during the five years preceding the time of *your* application for this insurance *you* have not had any losses, insured or not.

When *you* request changes to this policy, or the information or factors used to calculate the premium for this policy changes during the policy period, *we* may adjust the premium in accordance with the change during the policy period and *you* must pay any additional premium due within the time *we* specify.

### DEFINITIONS

*We* define the following words and phrases for use throughout this policy. These definitions apply to the singular, plural, and possessive forms of these words and phrases. Defined words and phrases are printed in bold italics.

1. *"actual cash value"* means the value of the damaged part of the property at the time of loss, calculated as the estimated cost to repair or replace such property, less a deduction to account for pre-loss depreciation. For this calculation, all components of this estimated cost including, but not limited to:

    a. materials, including any tax;

    b. labor, including any tax; and

    c. overhead and profit;

    are subject to depreciation.

    The depreciation deduction may include such considerations as:

    a. age;

    b. condition;

    c. reduction in useful life;

    d. obsolescence; and

    e. any pre-loss damage including wear, tear, or deterioration;

of the damaged part of the property.

2. *"bodily injury"* means physical injury, sickness, or disease to a person. This includes required care, loss of services, and death resulting therefrom.

    *Bodily injury* does not include:

    a. any of the following which are communicable: disease, bacteria, parasite, virus, or other organism, any of which are transmitted by any *insured* to any other person;

    b. the actual or alleged exposure to any such disease, bacteria, parasite, virus, or other organism by any *insured* to any other person; or

    c. emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person.

3. *"building structure"* means a structure fully enclosed with permanent walls and a roof. A permanent wall or roof does not include any kind of temporary materials including but not limited to tarps, plastic sheeting, or other similar material. A structure that is otherwise fully enclosed with permanent walls and a roof, that is undergoing repairs due to a recent *loss insured*, using materials such as tarps, plastic sheeting, or other similar material, is still considered a *building structure*.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

A *building structure* includes:

a. the foundation supporting the structure, including:

(1) slabs;

(2) basement walls;

(3) crawl space walls;

(4) footings; and

(5) gravel, stone, or sand, used as fill material and located not more than 12 inches directly below a slab described in item a.(1), including water supply lines, domestic water pipes, and sewer pipes located within this fill material; and

b. wall-to-wall carpeting attached to the structure.

4. *"business"* means any full-time or part-time activity, trade, profession, employment, or occupation or a commercial, mercantile, or industrial undertaking of an economic nature. It does not matter whether it is continuous or regular, is a secondary or supplemental source of income, or is an *insured's* principal means of livelihood. Profit and profit motive are irrelevant.

*Business* does not include:

a. volunteer activities for a not-for-profit or nonprofit organization or public agency for which no money is received other than payment of expenses;

b. incidental and infrequent personal economic activity such as a hobby, garage or yard sale, or traditional farm activities when the farm products are intended only for the personal use of the *insured*;

c. any occasional or part-time self-employed activity by a person under 19 years of age that involves no employees or subcontracted independent contractors and is a type of activity normally performed by persons under 19 years of age, including but not limited to, child care, lawn mowing, or paper delivery;

d. the ownership, maintenance, or use of systems and equipment used to generate electrical power up to but not exceeding 125 percent of

the actual electrical power usage by the *residence premises* in the 12-month period prior to the date of the loss; or

e. ownership of the *residence premises* by the person or organization shown in the *Declarations* as Additional Insured.

5. *"Declarations"* means the policy *Declarations*, any amended *Declarations*, the most recent renewal *Declarations*, an Evidence of Insurance form, or any endorsement changing any of these.

6. *"diminution in value"* means any reduction in the value of any covered property prior to or following repair or replacement as compared to the value of that property immediately before the loss.

7. *"dwelling"* means the *building structure* on the *residence premises* used as the primary private residence and includes structures attached to the *dwelling*.

8. *"fungus"* means any type or form of *fungus*, including mold, mildew, mycotoxins, spores, scents, or byproducts produced or released by fungi.

9. *"insured"* means:

a. *you*;

b. *your relatives*; and

c. any other person under the age of 21 in the care of a person described above.

Under Section II, *insured* also means:

d. the person or organization legally responsible for animals or watercraft to which this policy applies. However, the animal or watercraft must be owned by *you* or a person included in 9.b. or 9.c. above. A person or organization using or having custody of these animals or watercraft in the course of a *business*, or without permission of the owner, is not an *insured*; and

e. with respect to any vehicle to which this policy applies, any person while engaged in *your* employment or the employment of a person included in 9.b. or 9.c. above.

10. *"insured location"* means:

a. the *residence premises*;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

b. the part of any other premises, other structures, and grounds used by *you* as a residence. This includes premises, structures, and grounds *you* acquire while this policy is in effect for *your* use as a residence;

c. any premises used by *you* in connection with the premises included in 10.a. or 10.b. above;

d. any part of a premises not owned by an *insured* but where an *insured* is temporarily residing;

e. land owned by or rented to an *insured* on which a one or two family dwelling is being constructed as a residence for an *insured*;

f. individual or family cemetery plots or burial vaults owned by an *insured*;

g. any part of a premises occasionally rented to an *insured* for purposes other than *business*;

h. vacant land owned by or rented to an *insured*. For the purposes of this definition, vacant land does not include:

   (1) farm land;

   (2) land containing a residence; or

   (3) land containing fences, corrals, boat docks, tool sheds, barns, grain bins, and similar structures, unless they are used solely for the personal use of the *insured*; or

i. farm land (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations.

11. *"loss insured"* means a loss as described under SECTION I – LOSSES INSURED, COVERAGE A – DWELLING and SECTION I – LOSSES INSURED, COVERAGE B – PERSONAL PROPERTY.

12. *"motor vehicle"*, when used in Section II of this policy, means:

a. a land *motor vehicle* designed for travel on public roads or subject to motor vehicle registration;

b. a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration;

c. a "recreational or utility vehicle" while off an *insured location*. "Recreational or utility vehicle" means a motorized vehicle designed for recreation or utility purposes, used principally off public roads, and that is owned or leased by an *insured*. This includes, but is not limited to, a motorized all-terrain vehicle, side-by-side vehicle, utility work vehicle, amphibious vehicle, dune buggy, go-cart, golf cart, snowmobile, trailbike, minibike, and personal assistive mobility device. "Leased" does not include temporary rental;

d. a "locomotive" while off an *insured location*. "Locomotive" means a self-propelled vehicle for pulling or pushing freight or passenger cars on tracks that is large enough to carry a person and is owned or leased by an *insured*. "Leased" does not include temporary rental;

e. a bulldozer, track loader, backhoe, high-hoe, trencher, grader, crane, self-propelled scraper, excavator, pipe-layer, cherry picker, telehandler, logging vehicle, mining vehicle, or road building vehicle that is owned or leased by an *insured* while off an *insured location*. "Leased" does not include temporary rental; and

f. any vehicle while being towed or pushed by or carried on a vehicle included in 12.a. through 12.e. above.

The following are not *motor vehicles*:

a. a boat, camper, home, or utility trailer not being towed or pushed by or carried on a vehicle included in 12.a. through 12.e. above;

b. a motorized land vehicle in storage on an *insured location* not intended to be operated for an extended period of time and rendered inoperable by placing the vehicle on blocks or removing parts essential for its operation;

c. a motorized golf cart while used for golfing purposes;

d. a motorized vehicle or trailer designed to assist persons with disabilities that is not designed for travel on public roads or subject to motor vehicle registration; or

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

e. a commercially manufactured two, three, or four wheeled personal conveyance powered only by or assisted by an unmodified motor or engine with a manufacturer's power rating of no more than 1 horsepower and capable of a top speed of no more than 20 miles per hour.

13. *"occurrence"*, when used in Section II of this policy, means an accident, including accidental exposure to conditions, which first results in:

a. *bodily injury*; or

b. *property damage*;

during the policy period. All *bodily injury* and *property damage* resulting from one accident, series of related accidents, or from continuous and repeated exposure to the same general conditions is considered to be one *occurrence*.

14. *"property damage"* means physical damage to or destruction of tangible property, including loss of use of this property. Theft or conversion of property by any *insured* is not *property damage*.

15. *"relative"* means any person related to *you* by:

a. blood;

b. adoption;

c. marriage; or

d. civil union, domestic partnership, or other substantially similar legal relationship that is recognized and valid in the state where, and at the time when, the legal relationship was established;

and who resides primarily with *you*.

16. *"residence employee"* means an employee of an *insured*, or an employee leased to an *insured* by a labor leasing firm under an agreement between an *insured* and the labor leasing firm, who performs duties, including household or domestic services, in connection with the maintenance or use of the *residence premises*. This includes employees who perform similar duties elsewhere for *you*. This does not include employees while performing duties in connection with the *business* of an *insured*.

17. *"residence premises"* means:

a. the one, two, three, or four family dwelling, other structures and grounds; or

b. that part of any other *building structure*;

where *you* reside and which is shown in the *Declarations*.

18. *"State Farm Companies"* means one or more of the following:

a. State Farm Mutual Automobile Insurance Company;

b. State Farm Fire and Casualty Company; and

c. subsidiaries or affiliates of either 18.a. or 18.b. above.

19. *"vacant dwelling"* means:

a. a dwelling:

(1) that has not been occupied as a residence for more than 30 consecutive days immediately before the loss; and

(2) where a predominant amount of personal property has been removed or is absent such that the dwelling is not functional as a habitual place of residence.

A dwelling will be considered occupied only if it is being used as a habitual place of residence with *your* knowledge and approval.

b. A dwelling that is under active construction will not be considered a *vacant dwelling*. A dwelling is under active construction when it is:

(1) being built as a new structure;

(2) being repaired due to damage otherwise covered by this policy; or

(3) undergoing substantial improvements, renovations, remodeling, or modifications;

and the construction results in substantial continuing activities by persons associated with the construction project at the premises during the relevant time periods.

20. *"we"*, *"us"*, and *"our"* mean the Company shown in the *Declarations*.

21. *"you"* and *"your"* mean the person or persons shown as "Named Insured" in the *Declarations*. If a "Named Insured" shown in the *Declarations* is a human being, then *you* and *your* include:

a. a spouse of a "Named Insured";

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

b. a party to a civil union with a "Named Insured";

c. a domestic partner of a "Named Insured"; or

d. a person in a substantially similar legal relationship with a "Named Insured";

if such relationship is recognized and valid in the state where, and at the time when, the legal relationship was established, so long as the person in the above relationship resides primarily with that "Named Insured".

## DEDUCTIBLE

In case of loss under this policy, *we* will pay, subject to specified policy limits, only that part of the amount of the loss that exceeds the deductible amount shown in the *Declarations*. Deductibles will be applied per occurrence. Deductibles apply to specific losses as described in this policy.

## SECTION I – PROPERTY COVERAGES

### COVERAGE A – DWELLING

1. **Dwelling.** *We* cover the *dwelling* and materials and supplies located on or adjacent to the *residence premises* for use in the construction, alteration, or repair of the *dwelling* or other structures on the *residence premises*.

2. **Other Structures.** *We* cover other structures on the *residence premises*, separated from the *dwelling* by clear space. Structures connected to the *dwelling* by only a fence, utility line, or similar connection are considered to be other structures.

   *We* do not cover other structures:

   a. not permanently attached to or otherwise forming a part of the realty;

   b. used either completely or in part for *business* purposes unless such use consists solely of office space for paperwork, computer work, or use of a telephone, and consists solely of activities that are:

      (1) duties of the *insured's* employment by another; and

      (2) performed solely by the *insured*; or

   c. rented or held for rental unless:

      (1) rented to a person who is a tenant of the *dwelling;*

      (2) rented for use solely as a private garage; or

      (3) rented either completely or in part, for exclusive use as a residence, for no more than 30 nights in the 12-month period prior to the date of the loss.

3. **Property Not Covered.** *We* do not cover:

   a. land, including the land necessary to support any Coverage A property. *We* also do not cover:

      (1) any costs required to replace, rebuild, stabilize, or otherwise restore the land; or

      (2) the costs of repair techniques designed to compensate for or prevent land instability to any property, whether or not insured under Coverage A;

   b. trees, shrubs, live or artificial plants, lawns, or artificial grass, except as provided in **SECTION I – ADDITIONAL COVERAGES, Trees, Shrubs, and Landscaping;** or

   c. systems and equipment used to generate electrical power exceeding 125 percent of the actual electrical power usage by the *residence premises* in the 12-month period prior to the date of the loss.

### COVERAGE B – PERSONAL PROPERTY

1. **Property Covered.**

   a. *We* cover personal property owned or used by an *insured* while it is anywhere in the world. This includes structures not permanently attached to or otherwise forming a part of the realty. At *your* request, *we* will cover personal property:

      (1) owned by others while the property is on the part of the *residence premises* occupied exclusively by an *insured*;

      (2) owned by a guest or a *residence employee*, while the property is in any other residence occupied by an *insured*; and

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

(3) owned by roomers, boarders, tenants, and other residents, any of whom are related to *you*.

b.  *We* cover personal property usually located at an *insured's* residence, other than the *residence premises*, for up to $1,000 or 10% of the Coverage B limit, whichever is greater. This limitation does not apply to personal property:

(1) in a newly acquired principal residence for the first 30 days after *you* start moving the property there. If the *residence premises* is a newly acquired principal residence, personal property in *your* immediate past principal residence is not subject to this limitation for the first 30 days after the inception of this policy; and

(2) of a student who is an *insured* while located at a residence away from the *residence premises*.

**Special Limits of Liability.** These limits do not increase the Coverage B limit. The special limit for each of the following categories is the total limit for each loss for all property in that category:

a.  $200 on money, coins, and medals, including any of these that are a part of a collection, bank notes, bullion, gold other than goldware, silver other than silverware, and platinum;

b.  $1,500 on property used or intended for use in a *business*, including merchandise held as samples or for sale or for delivery after sale, while on the *residence premises*. This coverage is limited to $750 on such property away from the *residence premises*.

Electronic data processing system equipment or the recording or storage media used with that equipment is not included under this coverage, and is addressed in item c. below;

c.  $10,000 on electronic data processing system equipment used or intended for use in a *business*, including but not limited to computers, tablets, mobile personal communication equipment, global positioning systems, mobile personal electronic devices used for the reproduction of sound,

and standard media or non-media equipment for use with the above devices;

d.  $1,500 on securities, checks, cashiers checks, travelers checks, money orders, gift certificates, gift cards, rechargeable debit cards, phone cards and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, and tickets;

e.  $1,500 on watercraft of all types and outboard motors, including their trailers, furnishings, and equipment;

f.  $1,500 on trailers not used with watercraft;

g.  $2,500 on stamps, trading cards, and comic books, including any of these that are a part of a collection;

h.  $2,500 for loss by theft of firearms;

i.  $2,500 for loss by theft of silverware and goldware;

j.  $5,000 on any one article and $10,000 in the aggregate for loss by theft of any rug, carpet (except wall-to-wall carpet), tapestry, wall-hanging, or other similar article;

k.  $1,000 on commercially manufactured two, three, or four wheeled personal conveyances powered only by or assisted by an unmodified motor or engine with a manufacturer's power rating of no more than 1 horsepower and capable of a top speed of no more than 20 miles per hour. This does not include such conveyances that are:

(1) designed for assisting persons with disabilities;

(2) not designed for travel on public roads; and

(3) not subject to motor vehicle registration; and

l.  $1,000 for loss by theft of jewelry, watches, fur, garments and garments trimmed with fur, and precious and semi-precious stones.

2.  **Property Not Covered.** *We* do not cover:

a.  articles separately described and specifically insured in this or any other insurance;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

Case 1:23-mi-99999-UNA   Document 1191-1   Filed 04/13/23   Page 25 of 185

b. animals, birds, or fish;

c. any engine-propelled or motor-propelled vehicle or machine, including parts, designed for movement on land, except as provided in **Special Limits of Liability**, item k. However, **we** do cover those vehicles or machines:

   (1) that are:

      (a) not designed for travel on public roads; and

      (b) not subject to motor vehicle registration;

   (2) and that are:

      (a) used primarily to service the **insured location**; or

      (b) designed for assisting persons with disabilities;

d. any electronic equipment, devices, or accessories designed for the recording, reproduction, or storage of audio, video, photos, or other data that is permanently installed in or permanently fastened to an engine-propelled or motor-propelled vehicle or hard-wired directly to the vehicle's electrical system. **We** also do not cover removable products that may be used with the equipment or devices described above, including but not limited to tapes, discs, videos, or memory cards while in an engine-propelled or motor-propelled vehicle;

e. aircraft and parts. This does not apply to unmanned aircraft systems used as model aircraft and operated solely for recreational or hobby purposes;

f. property of roomers, boarders, tenants, and other residents not related to **you**;

g. property regularly rented or held for rental to others by an **insured**. This does not apply to property of an **insured**:

   (1) in a sleeping room when the **dwelling** is rented in part, for use as a permanent residence, by either one or two full-time roomers or boarders; or

   (2) on the **residence premises** if it is rented, either completely or in part, for exclusive use as a residence, for no more than 30 nights in the 12-month period prior to the date of the loss;

h. property rented or held for rental to others away from the **residence premises**;

i. any radio devices or transmitters, global positioning systems, radar or laser detectors, antennas, and all other similar equipment that is permanently installed in or permanently fastened to an engine-propelled or motor-propelled vehicle or that is hard-wired directly to the vehicle's electrical system;

j. books or records of accounts receivable, abstracts or other journals, architectural or technical drawings, card index systems, or other records. This does not apply to any recording or storage media for electronic data processing. **We** will cover the cost of blank books, cards, or other blank material plus the cost of labor **you** incur for transcribing or copying such records;

k. recording or storage media for electronic data processing that cannot be replaced with property of like kind and quality on the current retail market;

l. purchased or created audio, video, photos, or other data that cannot be replaced with like kind and quality on the current retail market and that is transferred or downloaded onto mobile communication equipment, global positioning systems, or electronic devices designed for the recording, reproduction, or storage of audio, video, photos, or other data;

m. contraband, or any property used in the course of illegal consumption, possession, import, export, or trade;

n. outdoor hardscape property used for aesthetic purposes except as provided in **SECTION I – ADDITIONAL COVERAGES, Trees, Shrubs, and Landscaping**; or

o. electronic currency, digital currency, virtual currency, crypto-currency, and other similar mediums of exchange.

© , Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

**COVERAGE C – LOSS OF USE**

The most *we* will pay for the sum of all losses combined under **Additional Living Expense**, **Fair Rental Value**, and **Prohibited Use** is the limit of liability shown in the *Declarations* for **Coverage C – Loss of Use**.

1. **Additional Living Expense.** When a *loss insured* causes the *residence premises* to become uninhabitable, *we* will pay the reasonable and necessary increase in cost incurred by an *insured* to maintain their normal standard of living for up to 24 months. *Our* payment is limited to incurred costs for the shortest of:

   a. the time required to repair or replace the premises;

   b. the time required for *your* household to settle elsewhere; or

   c. 24 months.

   This period of time is not limited by the expiration of this policy.

   *We* will not pay more than the limit of liability shown in the *Declarations* for **Coverage C – Loss of Use**. Any normal expenses that are reduced or discontinued due to a *loss insured* will be subtracted from any amount owed.

2. **Fair Rental Value.** When a *loss insured* causes that part of the *residence premises* rented to others or held for rental by *you* to become uninhabitable, *we* will pay its fair rental value. Payment will be for the shortest time required to repair or replace the part of the premises rented or held for rental, but not to exceed 12 months. This period of time is not limited by the expiration of this policy. Fair rental value will not include any expense that does not continue while that part of the *residence premises* rented or held for rental is uninhabitable.

3. **Prohibited Use.** *We* will pay Additional Living Expense and Fair Rental Value, for a continuous period not to exceed two weeks, beginning when a civil authority issues an order of evacuation or prohibits *your* use of the *residence premises*, provided that:

   a. direct physical damage occurs to any property, other than covered property located on the *residence premises*, arising from a cause of loss that would be a *loss insured* under this policy

if the damage had occurred to property on the *residence premises*;

b. the *residence premises* is within one mile of property damaged by a cause of loss identified in 3.a. above; and

c. the action of the civil authority is taken in response to:

   (1) dangerous physical conditions resulting from the continuation of the cause of loss identified in 3.a. above;

   (2) dangerous physical conditions resulting from the damage caused by the cause of loss identified in 3.a. above; or

   (3) the need to gain free access to property damaged by the cause of loss identified in 3.a. above.

*We* will not pay for loss or expense due to cancellation of a lease or agreement.

**SECTION I – ADDITIONAL COVERAGES**

The following Additional Coverages are subject to all the terms, provisions, exclusions, and conditions of this policy.

1. **Debris Removal.** *We* will pay the reasonable expenses *you* incur in the removal of debris of covered property damaged by a *loss insured*. This expense is included in the limit applying to the damaged property. The following coverages and limits also apply:

   a. When the amount payable for the property damage plus the debris removal exceeds the limit for damaged property, an additional 5% of that limit is available for debris removal expense. This additional amount of insurance does not apply to **SECTION I – ADDITIONAL COVERAGES**, **Trees, Shrubs, and Landscaping.**

   b. *We* will also pay up to $1,000 total for each loss to cover the reasonable expenses *you* incur in the removal of tree debris and stumps from the *residence premises*, unless otherwise excluded. This coverage applies when:

      (1) the tree has caused a *loss insured* to Coverage A property; or

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

(2) the tree debris felled by windstorm, hail, or weight of snow or ice blocks:

   (a) the driveway, on the *residence premises,* and prevents land *motor vehicle* access to or from the *dwelling*; or

   (b) a ramp designed to assist persons with disabilities, on the *residence premises*, and prevents access to or from a *building structure*.

2. **Temporary Repairs.** If damage is caused by a *loss insured, we* will pay the reasonable and necessary cost *you* incur for temporary repairs to covered property to protect the property from further immediate damage or loss. This coverage does not increase the limit applying to the property being repaired.

3. **Trees, Shrubs, and Landscaping.** *We* will pay for accidental direct physical loss to outdoor:

   a. trees, shrubs, live or artificial plants, and lawns;

   b. artificial grass; and

   c. hardscape property used for aesthetic purposes not permanently affixed to realty;

   on the *residence premises*, caused by the following perils: **Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles** (not owned or operated by a resident of the *residence premises*), **Vandalism or malicious mischief**, or **Theft**.

   The limit for this coverage, including the removal of debris, will not exceed 5% of the amount shown in the *Declarations* for **COVERAGE A – DWELLING**. *We* will not pay more than $750 for any one outdoor tree, shrub, plant, or hardscape item, including debris removal expense. This coverage may increase the limit otherwise applicable. *We* will not pay for any loss to property grown for *business* purposes.

4. **Fire Department Service Charge.** *We* will pay up to $500 per occurrence for fire department charges incurred when the fire department is called to save or protect Coverage A property from fire, lightning, or explosion. No deductible applies to this coverage. This coverage may increase the limit otherwise applicable.

5. **Property Removed.** *We* will pay for any accidental direct physical loss to covered property while being removed from a premises endangered by a *loss insured*. This coverage also applies to the property

for up to 30 days while removed. *We* will also pay for reasonable expenses incurred by *you* for the removal and return of the covered property. This coverage does not increase the limit applying to the property being removed.

6. **Credit Card, Bank Fund Transfer Card, Forgery, and Counterfeit Money.**

   a. *We* will pay up to $1,000 for:

      (1) the legal obligation of an *insured* to pay because of the theft or unauthorized use of credit cards and bank fund transfer cards issued to or registered in an *insured's* name. If an *insured* has not complied with all terms and conditions under which the cards are issued, *we* will not pay for use by an *insured* or anyone else;

      (2) loss to an *insured* caused by forgery or alteration of any check or negotiable instrument; and

      (3) loss to an *insured* through acceptance in good faith of counterfeit United States or Canadian paper currency.

      No deductible applies to this coverage.

      *We* will not pay more than the limit stated above for forgery or alteration committed by any one person. This limit applies when the forgery or alteration involves one or more instruments in the same loss.

   b. *We* will not pay for loss arising out of *business* pursuits or dishonesty of an *insured*.

   c. Defense:

      (1) *We* may make any investigation and settle any claim or suit that *we* decide is appropriate. *Our* obligation to defend claims or suits ends when the amount *we* pay for the loss equals *our* limit of liability.

      (2) If claim is made or a suit is brought against an *insured* for liability under the Credit Card or Bank Fund Transfer Card coverage, *we* will provide a defense. This defense is at *our* expense by counsel of *our* choice.

      (3) *We* have the option to defend at *our* expense an *insured* or an *insured's* bank

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

against any suit for the enforcement of payment under the Forgery coverage.

7. **Power Interruption.** *We* will pay for accidental direct physical loss caused directly or indirectly by a change of temperature that results from power interruption that takes place on the *residence premises*. The power interruption must be caused by a *loss insured* occurring on the *residence premises*. The power lines off the *residence premises* must remain energized. This coverage does not increase the limit applying to the damaged property.

8. **Refrigerated Products.** Coverage B is extended to cover the contents of deep freeze or refrigerated units on the *residence premises* for loss due to power failure or mechanical failure. If mechanical failure or power failure is known to *you*, all reasonable means must be used to protect the property insured from further damage or this coverage is void. Power failure or mechanical failure does not include:

   a. removal of a plug from an electrical outlet; or

   b. turning off an electrical switch unless caused by a *loss insured*.

   This coverage does not increase the limit applying to the damaged property.

9. **Arson Reward.** *We* will pay \$1,000 for information that leads to an arson conviction in connection with a fire loss to property covered by this policy. This coverage may increase the limit otherwise applicable. However, the \$1,000 limit will not be increased regardless of the number of persons providing information.

10. **Volcanic Action.** *We* will pay for accidental direct physical loss to a covered *building structure* or covered property contained in a *building structure* resulting from the eruption of a volcano when the loss is directly and immediately caused by:

    a. airborne volcanic shock waves;

    b. ash, dust, or particulate matter; or

    c. lava flow.

    *We* will also pay for the removal of that ash, dust, or particulate matter that has caused accidental direct physical loss to a covered *building structure* or covered property contained in a *building structure*.

All volcanic eruptions that occur within any 168-hour period will be considered one volcanic eruption.

This coverage does not increase the limit applying to the damaged property.

11. **Collapse.** *We* will pay for accidental direct physical loss to covered property involving the abrupt, entire collapse of a *building structure* or any part of a *building structure*.

    a. Collapse means the abrupt and entire falling down, caving in, or falling into pieces of a *building structure* or any part of a *building structure*. Collapse does not include any of the following:

       (1) settling, cracking, crumbling, deterioration, shrinking, bulging, expansion, sagging, bowing, leaning, or bending;

       (2) substantial structural impairment;

       (3) imminent or threatened collapse;

       (4) a *building structure* or any part of a *building structure* that is in danger of falling down or caving in; or

       (5) a part of a *building structure* that is standing even if:

           (a) it has separated from another part of the *building structure*; or

           (b) it shows evidence of settling, cracking, crumbling, deterioration, shrinking, bulging, expansion, sagging, bowing, leaning, or bending.

    b. The collapse must be directly and immediately caused by one or more of the following:

       (1) perils described in **SECTION I – LOSSES INSURED, COVERAGE B – PERSONAL PROPERTY**. These perils apply to *building structures* covered under Coverage A or Coverage B for loss insured by this Additional Coverage;

       (2) decay or deterioration of, or damage from animals, birds, or insects to:

           (a) a connector; or

           (b) a structural member of a *building structure*;

10

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

The decay, deterioration, or damage must be hidden from view and unknown to all *insureds* prior to the collapse;

(3) weight of contents, equipment, animals, or people;

(4) weight of ice, snow, sleet, or rain that collects on a roof, porch, or deck; or

(5) use of defective material or methods in the construction (includes remodeling or renovation) of the *building structure*, if the collapse occurs during the course of the construction of the *building structure*.

Loss to awnings, fences, patios, pavement, swimming pools, underground pipes, flues, drains, cesspools, septic tanks, foundations (including slabs, basement walls, and crawl space walls), retaining walls, bulkheads, piers, wharfs, docks, trellises, or antennas and their supporting structures is not included under items (2), (3), and (4) immediately above unless the loss is the direct and immediate result of the collapse of a *building structure* or any part of a *building structure*.

This coverage does not increase the limit applying to the damaged property.

12. **Locks and Remote Devices.** *We* will pay up to $1,000 for each loss for the reasonable expenses *you* incur to rekey, replace, recode, program, or reprogram locks on exterior doors to the *dwelling* or other structures located on the *residence premises* when the keys or remote devices used with those doors are part of a covered theft loss. This coverage includes remote devices designed solely for locking, unlocking, opening, or closing doors, including garage doors and gates.

No deductible applies to this coverage.

13. **Fuel Oil Release.** *We* will pay up to $10,000 for each loss for accidental direct physical loss to covered property caused by the abrupt and accidental escape of liquid fuel oil from a fixed household tank, apparatus, or pipes that are part of a heating unit for the *dwelling*. This includes damage to covered property resulting from an accidental spill or overflow of fuel oil in the course of filling a fixed household tank.

This coverage includes surface clean up only. *We* will not pay for:

a. the cost to repair or replace the fuel oil tank, apparatus, and pipes; or

b. the cost of testing, monitoring, removing, treating, or detoxifying of soil, air, or water.

This coverage does not increase the limit applying to the damaged property.

14. **Tear Out.** If a *loss insured* to Coverage A property is caused by water, steam, or sewage escaping from a system or appliance, *we* will also pay the reasonable cost *you* incur to tear out and replace only that particular part of the *building structure* necessary to gain access to the specific point of that system or appliance from which the water, steam, or sewage escaped. *We* will not pay for the cost of repairing or replacing the system or appliance itself. This coverage does not increase the limit applying to Coverage A property.

15. **Home Certification.** If damage to covered property is caused by a *loss insured*, *we* will pay the reasonable increase in cost to repair or replace only the damaged property to maintain the *dwelling's* FORTIFIED HOME or FORTIFIED FOR SAFER LIVING certification in place at the time of the loss. This coverage does not increase the limit applying to the damaged property.

*We* will not pay:

a. any increase in cost until the repair or replacement of the property is complete; or

b. for increased costs resulting from enforcement of any ordinance or law regulating the construction or repair of the *dwelling* except as provided under **OPTIONAL POLICY PROVISIONS, Option OL – Building Ordinance or Law.**

This coverage does not apply if Loss Settlement provision A2 – Replacement Cost Loss Settlement – Common Construction is shown in the *Declarations.*

**INFLATION COVERAGE**

The limits of liability shown in the *Declarations* for Coverage A, Coverage B, and when applicable, Option ID will be increased at the same rate as the increase in the Inflation Coverage Index shown in the *Declarations.*

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

To find the limits on a given date:

1. divide the Index on that date by the Index as of the effective date of this Inflation Coverage provision; then

2. multiply the resulting factor by the limits of liability for Coverage A, Coverage B, and Option ID separately.

The limits of liability will not be reduced to less than the amounts shown in the *Declarations*.

If during the term of this policy the Coverage A limit of liability is changed at *your* request, the effective date of this Inflation Coverage provision is changed to coincide with the effective date of such change.

## SECTION I – LOSSES INSURED

### COVERAGE A – DWELLING

*We* will pay for accidental direct physical loss to the property described in Coverage A, unless the loss is excluded or limited in **SECTION I – LOSSES NOT IN-SURED** or otherwise excluded or limited in this policy. However, loss does not include and *we* will not pay for, any *diminution in value*.

### COVERAGE B – PERSONAL PROPERTY

*We* will pay for accidental direct physical loss to the property described in Coverage B caused by the following perils, unless the loss is excluded or limited in **SECTION I – LOSSES NOT INSURED** or otherwise excluded or limited in this policy. However, loss does not include and *we* will not pay for, any *diminution in value*.

1. **Fire or lightning.**

2. **Windstorm or hail.** This peril does not include loss to property contained in a structure caused by rain, snow, sleet, sand, or dust. This limitation does not apply when the direct force of wind or hail damages the structure causing an opening in a roof or wall and the rain, snow, sleet, sand, or dust enters through this opening.

   This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard motors, only while inside a *building structure*.

3. **Explosion.**

4. **Riot or civil commotion.**

5. **Aircraft,** including self-propelled missiles and spacecraft.

6. **Vehicles,** meaning accidental direct physical loss to covered property caused by the weight, force, power, or movement of a vehicle.

   a. This includes:

      (1) the impact of a vehicle;

      (2) an object propelled from the tire or body of a vehicle;

      (3) the upset or collision of a vehicle with a stationary object or other vehicle, including damage to personal property carried on the exterior of the vehicle; or

      (4) a vehicle door or trunk lid being closed on personal property.

   b. This peril does not include loss:

      (1) to personal property that falls off a vehicle and strikes the ground, any other surface, or any object;

      (2) caused by shifting of the load being carried in or on a vehicle; or

      (3) to the vehicle itself unless the vehicle is property covered under **COVERAGE B – PERSONAL PROPERTY** and the loss is caused by the weight, force, power, or movement of another vehicle.

7. **Smoke,** meaning abrupt and accidental damage from smoke.

   This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. **Vandalism or malicious mischief,** meaning only willful and malicious damage to or destruction of property.

9. **Theft,** including attempted theft and loss of property from a known location when it is probable that the property has been stolen.

   This peril does not include:

   a. loss of a precious or semi-precious stone from its setting;

   b. loss caused by theft:

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

(1) committed by an *insured* or by any other person regularly residing on the *insured location*. Property of a student who is an *insured* is covered while located at a residence away from the *residence premises*, if the theft is committed by a person who is not an *insured*;

(2) in or to a dwelling under construction or of materials and supplies for use in the construction until the dwelling is completed and occupied; or

(3) from the part of a *residence premises* rented to others:

    (a) caused by a tenant, members of the tenant's household, or the tenant's employees unless the *residence premises* is rented, either completely or in part, for exclusive use as a residence, for no more than 30 nights in the 12-month period prior to the date of the loss;

    (b) of money, bank notes, bullion, gold, goldware, silver, silverware, pewterware, platinum, coins, and medals;

    (c) of securities, checks, cashiers checks, travelers checks, money orders, gift certificates, gift cards, rechargeable debit cards, phone cards, and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, tickets, and stamps; or

    (d) of jewelry, watches, fur garments and garments trimmed with fur, and precious and semi-precious stones; or

c. loss caused by theft that occurs away from the *residence premises* of:

(1) property while at any other residence owned, rented to, or occupied by an *insured*, except while an *insured* is temporarily residing there. Property of a student who is an *insured* is covered while at a residence away from the *residence premises*;

(2) watercraft of all types, including their furnishings, equipment, and outboard motors; or

(3) trailers and campers designed to be pulled by or carried on a vehicle.

If the *residence premises* is a newly acquired principal residence, property in the immediate past principal residence will not be considered property away from the *residence premises* for the first 30 days after the inception of this policy.

10. **Falling objects.** This peril does not include loss to property contained in a structure unless the roof or an exterior wall of the structure is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow, or sleet** that causes damage to property contained in a structure.

12. **Abrupt and accidental discharge or overflow** of water, steam, or sewage from within a plumbing, heating, air conditioning, or automatic fire protective sprinkler system, or from within a household appliance.

This peril does not include loss:

a. to the system or appliance from which the water, steam, or sewage escaped;

b. caused by or resulting from:

    (1) freezing;

    (2) water or sewage from outside the *residence premises* plumbing system that enters through sewers or drains, or water that enters into and overflows from within a sump pump, sump pump well, or any other system designed to remove subsurface water that is drained from the foundation area; or

    (3) the pressure from or presence of tree, shrub, or plant roots; or

c. that occurs or develops over a period of time and is caused by or resulting from:

    (1) condensation or the presence of humidity, moisture, or vapor; or

    (2) seepage or leakage of water, steam, or sewage that is:

13

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

(a) continuous;

(b) repeating;

(c) gradual;

(d) intermittent;

(e) slow; or

(f) trickling.

13. **Abrupt and accidental tearing asunder, cracking, burning, or bulging** of a steam or hot water heating system, an air conditioning system, an automatic fire protective sprinkler system, or an appliance for heating water.

This peril does not include loss:

a. caused by or resulting from freezing; or

b. that occurs or develops over a period of time and is caused by or resulting from:

   (1) condensation or the presence of humidity, moisture, or vapor; or

   (2) seepage or leakage of water or steam that is:

      (a) continuous;

      (b) repeating;

      (c) gradual;

      (d) intermittent;

      (e) slow; or

      (f) trickling.

14. **Freezing** of a plumbing, heating, air conditioning, or automatic fire protective sprinkler system, or of a household appliance.

This peril does not include:

a. loss to a portable hot tub or portable spa unless **you** have used reasonable care to prevent freezing; or

b. loss on the **residence premises** unless **you** have used reasonable care to:

   (1) maintain heat in the **building structure** at 55 degrees Fahrenheit or higher; or

   (2) shut off the water supply and drain the system and appliances of water.

   However, if the **building structure** is protected by an automatic fire protective sprinkler system, **you** must use reasonable care to continue the water supply and maintain heat in the **building structure** at 55 degrees Fahrenheit or higher for coverage to apply.

15. **Abrupt and accidental damage** to electrical appliances, devices, fixtures, and wiring from an increase or decrease of artificially generated electrical current. **We** will pay up to $3,000 under this peril for each damaged item described above.

16. **Breakage of glass**, meaning damage to personal property caused by breakage of glass that is a part of a structure on the **residence premises. We** will not pay for loss or damage to the glass.

17. **Wild bears or deer**, meaning damage caused by wild bears or deer to property located in a **building structure**.

## SECTION I – LOSSES NOT INSURED

1. **We** will not pay for any loss to the property described in Coverage A that consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through m. below, regardless of whether the loss occurs abruptly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

   a. collapse, except as specifically provided in **SECTION I – ADDITIONAL COVERAGES, Collapse**;

   b. freezing of a plumbing, heating, air conditioning, or automatic fire protective sprinkler system or

   of a household appliance; or discharge, leakage, or overflow from within the system or appliance caused by freezing. This does not apply if **you** have used reasonable care to:

   (1) maintain heat in the **building structure** at 55 degrees Fahrenheit or higher; or

   (2) shut off the water supply and drain the system and appliances of water.

   However, if the **building structure** is protected by an automatic fire protective sprinkler system, **you** must use reasonable care to continue the water supply and maintain heat in the

14

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

**building structure** at 55 degrees Fahrenheit or higher for coverage to apply;

c. freezing, thawing, pressure, or weight of water, ice, snow, or sleet, whether driven by wind or not, to:

   (1) a swimming pool, hot tub, or spa, including their covers, filtration, and circulation systems; or

   (2) an awning, fence, pavement, patio, foundation (including slabs, basement walls, crawl space walls, and footings), retaining wall, bulkhead, pier, wharf, or dock;

d. theft in or to a dwelling under construction, or of materials and supplies for use in the construction, until the dwelling is completed and occupied;

e. theft, vandalism, malicious mischief, or breakage of glass and safety glazing materials if the dwelling is a **vacant dwelling**;

f. seepage or leakage of water, steam, or sewage that occurs or develops over a period of time:

   (1) and is:

      (a) continuous;

      (b) repeating;

      (c) gradual;

      (d) intermittent;

      (e) slow; or

      (f) trickling; and

   (2) from a:

      (a) heating, air conditioning, or automatic fire protective sprinkler system;

      (b) household appliance; or

      (c) plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings, or floors.

**We** also will not pay for losses arising from condensation or the presence of humidity, moisture, or vapor that occurs or develops over a period of time.

Item f. does not apply if the seepage or leakage of water, steam, or sewage is hidden from view within the walls, ceilings, or floors, and unknown by the **insured**;

g. wear, tear, decay, marring, scratching, deterioration, inherent vice, latent defect, or mechanical breakdown;

h. corrosion, electrolysis, or rust;

i. wet or dry rot;

j. contamination or pollution, meaning the presence, discharge, dispersal, seepage, migration, release, or escape of contaminants or pollutants at or from any source. This does not apply if the presence, discharge, dispersal, seepage, migration, release, or escape is itself caused by a peril described in **SECTION I – LOSSES INSURED, COVERAGE B – PERSONAL PROPERTY**.

   (1) Contaminants and pollutants include but are not limited to any:

      (a) solid, liquid, gaseous, or thermal irritant, including smoke from agricultural smudging or industrial operations, smog, soot, vapor, fumes, acids, alkalis, chemicals, pathogens, noxious substances, asbestos, or lead;

      (b) contaminants or pollutants resulting from any natural resource extraction activities; or

      (c) fuel oil except as specifically provided in **SECTION I – ADDITIONAL COVERAGES, Fuel Oil Release**.

   (2) **We** also will not pay for:

      (a) losses arising from contamination or pollution caused by or resulting from defective building materials, nuclear substances, and waste. Waste includes materials to be recycled, reconditioned, or reclaimed;

      (b) the cost to extract contaminants or pollutants from land, water, or air, or the cost to remove, restore, or replace contaminated or polluted land, water, or air; or

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

(c) the cost of testing, monitoring, cleaning, removing, containing, treating, detoxifying, neutralizing, remediating, disposing of, or assessing the effects of contaminants or pollutants;

k. settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations (including slabs, basement walls, crawl space walls, and footings), walls, floors, roofs, or ceilings;

l. all animals, birds, or insects.

  (1) This includes:

    (a) nesting, infestation, gnawing, feeding, breeding, or discharge or release of waste products or secretions by animals, birds, or insects;

    (b) costs to remove animals, birds, or insects from the covered property; and

    (c) costs to prevent the animals, birds, or insects from returning to the property;

  (2) However, *we* will pay for:

    (a) losses caused by wild bears or deer; and

    (b) the breakage of glass or safety glazing material that is a part of a *building structure*, when caused by animals, birds, or insects; or

m. pressure from or presence of tree, shrub, or plant roots.

However, *we* will pay for any resulting loss from items a. through l. unless the resulting loss is itself a Loss Not Insured as described in this Section.

2. *We* will not pay for, under any part of this policy, any loss that would not have occurred in the absence of one or more of the following excluded events. *We* will not pay for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs abruptly or gradually, involves isolated or widespread damage, occurs on or off the *residence premises*, arises from any natural or external forces, or occurs as a result of any combination of these:

a. **Ordinance or Law**, meaning enforcement of any ordinance or law regulating the construction, repair, or demolition of a *building structure* or other structure.

b. **Earth Movement**, meaning the sinking, rising, shifting, expanding, or contracting of earth, all regardless of whether combined with water, sewage, or any material carried by, or otherwise moved by the earth. Earth movement includes but is not limited to:

  (1) earthquake;

  (2) landslide, mudslide, or mudflow;

  (3) sinkhole or subsidence;

  (4) movement resulting from:

    (a) improper compaction;

    (b) site selection;

    (c) natural resource extraction activities; or

    (d) excavation;

  (5) erosion;

  (6) pressure by surface or subsurface earth or fill; or

  (7) any volcanic activity, except as specifically provided in **SECTION I – ADDITIONAL COVERAGES, Volcanic Action**.

However, *we* will pay for any accidental direct physical loss by fire, explosion other than explosion of a volcano, or theft resulting from earth movement, provided the resulting loss is itself a *loss insured*.

c. **Water**, meaning:

  (1) flood;

  (2) surface water. This does not include water solely caused by the release of water from a swimming pool, spigot, sprinkler system, hose, or hydrant;

  (3) waves (including tidal wave, tsunami, and seiche);

  (4) tides or tidal water;

  (5) overflow of any body of water (including any release, escape, or rising of any body

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

of water, or any water held, contained, controlled, or diverted by a dam, levee, dike, or any type of water containment, diversion, or flood control device);

(6) spray or surge from any of the items c.(1) through c.(5) described above, all whether driven by wind or not;

(7) water or sewage from outside the *residence premises* plumbing system that enters through sewers or drains, or water or sewage that enters into and overflows from within a sump pump, sump pump well, or any other system designed to remove subsurface water that is drained from the foundation area;

(8) water or sewage below the surface of the ground, including water or sewage that exerts pressure on, or seeps or leaks through a *building structure*, sidewalk, driveway, swimming pool, or other structure; or

(9) material carried or otherwise moved by any of the water or sewage, as described in items c.(1) through c.(8) above.

However, *we* will pay for any accidental direct physical loss by fire, explosion, or theft resulting from water, provided the resulting loss is itself a *loss insured*.

d. **Neglect**, meaning neglect of the *insured* to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered.

e. **War**, including any undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon will be considered a warlike act even if accidental.

f. **Nuclear Hazard**, meaning any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke.

However, *we* will pay for any accidental direct physical loss by fire resulting from the nuclear hazard, provided the resulting fire loss is itself a *loss insured*.

g. **Fungus**, including:

(1) any loss of use or delay in rebuilding, repairing, or replacing covered property, including any associated cost or expense, due to interference at the *residence premises* or location of the rebuilding, repair, or replacement of that property, by *fungus*;

(2) any remediation of *fungus*, including the cost or expense to:

(a) remove the *fungus* from covered property or to repair, restore, or replace that property;

(b) tear out and replace any part of the *building structure* or other property as needed to gain access to the *fungus*; or

(c) contain, treat, detoxify, neutralize or dispose of or in any way respond to or assess the effects of the *fungus*; or

(3) the cost of any testing or monitoring of air or property to confirm the type, absence, presence, or level of *fungus*, whether performed prior to, during, or after removal, repair, restoration, or replacement of covered property.

However, item g. does not apply if *fungus* results from an accidental direct physical loss caused by fire or lightning.

h. **Intentional Losses.** If any *insured* intentionally causes or procures a loss to property covered under this policy, *we* will not pay any *insured* for this loss. This applies regardless of whether the *insured* is charged with or convicted of a crime.

17

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

This does not apply to:

(1) an *insured* who did not participate in, co-operate in, or contribute to causing or pro-curing the loss; or

(2) a claim of an innocent *insured*, to the extent of the innocent *insured's* interest in the covered property, if the loss:

(a) arises out of family violence against an innocent *insured*; and

(b) is caused by an intentional act of an *insured* against whom a family violence complaint is brought.

3. *We* will not pay for, under any part of this policy, any loss consisting of one or more of the items below. Further, *we* will not pay for any loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to, or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

a. conduct, act, failure to act, or decision of any person, group, organization, or governmental

body whether intentional, wrongful, negligent, or without fault; .

b. defect, weakness, inadequacy, fault, or un-soundness in:

(1) planning, zoning, development, surveying, or siting;

(2) design, specifications, workmanship, re-pair, construction, renovation, remodeling, grading, or compaction;

(3) materials used in repair, construction, renovation, remodeling, grading, or com-paction; or

(4) maintenance;

of any property (including land, structures, or improvements of any kind) whether on or off the *residence premises*; or

c. weather conditions.

However, *we* will not pay for any resulting loss from items 3.a., 3.b., and 3.c. unless the resulting loss is itself a Loss Not Insured as described in this Section.

# SECTION I – LOSS SETTLEMENT

Only the **Loss Settlement Provisions** shown in the *Declarations* apply. *We* will settle covered property losses according to the following. However, the valuation of any covered property losses does not include, and *we* will not pay, any amount for *diminution in value*.

## COVERAGE A – DWELLING

1. **A1 – Replacement Cost Loss Settlement – Simi-lar Construction.**

a. *We* will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the *Declarations*, the damaged part of the property covered under **SECTION I – PROPERTY COVERAGES, COVERAGE A – DWELLING**, except for wood fences, subject to the following:

(1) until actual repair or replacement is com-pleted, *we* will pay only the *actual cash value* of the damaged part of the property, up to the applicable limit of liability shown

in the *Declarations*, not to exceed the cost to repair or replace the damaged part of the property;

(2) when the repair or replacement is actually completed, *we* will pay the covered addi-tional amount *you* actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the *Declarations*, whichever is less;

(3) to receive any additional payments on a replacement cost basis, *you* must com-plete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify *us* within 30 days after the work has been completed; and

(4) *we* will not pay for increased costs result-ing from enforcement of any ordinance or

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

law regulating the construction, repair, or demolition of a *building structure* or other structure, except as provided under **OPTIONAL POLICY PROVISIONS, Option OL – Building Ordinance or Law**.

b. Wood Fences: *We* will pay the *actual cash value* for loss or damage to wood fences, not to exceed the limit of liability shown in the *Declarations* for **COVERAGE A – Other Structures**.

2. **A2 – Replacement Cost Loss Settlement – Common Construction.**

a. *We* will pay the cost to repair or replace with common construction and for the same use on the premises shown in the *Declarations*, the damaged part of the property covered under **SECTION I – PROPERTY COVERAGES, COVERAGE A – DWELLING**, except for wood fences, subject to the following:

(1) *we* will pay only for repair or replacement of the damaged part of the property with common construction techniques and materials commonly used by the building trades in standard new construction. *We* will not pay the cost to repair or replace obsolete, antique, or custom construction with like kind and quality;

(2) until actual repair or replacement is completed, *we* will pay only the *actual cash value* of the damaged part of the property, up to the applicable limit of liability shown in the *Declarations*, not to exceed the cost to repair or replace the damaged part of the property as described in a.(1) above;

(3) when the repair or replacement is actually completed as described in a.(1) above, *we* will pay the covered additional amount *you* actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the *Declarations*, whichever is less;

(4) to receive any additional payments on a replacement cost basis, *you* must complete the actual repair or replacement of the damaged part of the property within

two years after the date of loss, and notify *us* within 30 days after the work has been completed; and

(5) *we* will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair, or demolition of a *building structure* or other structure, except as provided under **OPTIONAL POLICY PROVISIONS, Option OL – Building Ordinance or Law**.

b. Wood Fences: *We* will pay the *actual cash value* for loss or damage to wood fences, not to exceed the limit of liability shown in the *Declarations* for **COVERAGE A – Other Structures**.

**COVERAGE B – PERSONAL PROPERTY**

1. **B1 – Limited Replacement Cost Loss Settlement.**

a. *We* will pay the cost to repair or replace property covered under **SECTION I – PROPERTY COVERAGES, COVERAGE B – PERSONAL PROPERTY**, except for property listed in item b. below, subject to the following:

(1) until repair or replacement is completed, *we* will pay only the *actual cash value* of the damaged property;

(2) after repair or replacement is completed, *we* will pay the difference between the *actual cash value* and the cost *you* have actually and necessarily spent to repair or replace the property; and

(3) if property is not repaired or replaced within two years after the date of loss, *we* will pay only the *actual cash value*.

b. *We* will pay market value at the time of loss for:

(1) antiques, fine arts, paintings, statuary, and similar articles which by their inherent nature cannot be replaced with new articles;

(2) articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs, and collectors items; and

(3) property not useful for its intended purpose.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017    HW-2111

However, *we* will not pay an amount exceeding the smallest of the following for items a. and b. above:

(1) *our* cost to replace at the time of loss;

(2) the full cost of repair;

(3) any special limit of liability described in this policy; or

(4) any applicable Coverage B limit of liability.

2. **B2 – Depreciated Loss Settlement.**

a. *We* will pay the *actual cash value* for property covered under **SECTION I – PROPERTY COVERAGES, COVERAGE B – PERSONAL PROPERTY**, except for property listed in item b. below.

b. *We* will pay market value at the time of loss for:

(1) antiques, fine arts, paintings, statuary, and similar articles which by their inherent nature cannot be replaced with new articles;

(2) articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs, and collectors items; and

(3) property not useful for its intended purpose.

However, *we* will not pay an amount exceeding the smallest of the following for items a. and b. above:

(1) *our* cost to replace at the time of loss;

(2) the full cost of repair;

(3) any special limit of liability described in this policy; or

(4) any applicable Coverage B limit of liability.

## SECTION I – CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, *we* will not be liable:

a. to the *insured* for an amount greater than the *insured's* interest; or

b. for more than the applicable limit of liability.

2. **Your Duties After Loss.** After a loss to which this insurance may apply, *you* must cooperate with *us* in the investigation of the claim and also see that the following duties are performed:

a. give immediate notice to *us* or *our* agent and also notify:

(1) the police if the loss is caused by theft, vandalism, or any other criminal act; and

(2) the credit card company or bank if the loss involves a credit card or bank fund transfer card;

b. protect the property from further damage or loss and also:

(1) make reasonable and necessary temporary repairs required to protect the property; and

(2) keep an accurate record of repair expenses;

c. prepare an inventory of damaged or stolen personal property:

(1) showing in detail the quantity, description, age, replacement cost, and amount of loss; and

(2) attaching all bills, receipts, and related documents that substantiate the figures in the inventory;

d. as often as *we* reasonably require:

(1) exhibit the damaged property;

(2) provide *us* with any requested records and documents and allow *us* to make copies;

(3) while not in the presence of any other *insured*:

(a) give statements; and

(b) submit to examinations under oath; and

(4) produce employees, members of the *insured's* household, or others for examination under oath to the extent it is within the *insured's* power to do so; and

e. submit to *us*, within 60 days after the loss, *your* signed, sworn proof of loss that sets forth, to the best of *your* knowledge and belief:

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

(1) the time and cause of loss;

(2) interest of the *insured* and all others in the property involved and all encumbrances on the property;

(3) other insurance that may cover the loss;

(4) changes in title or occupancy of the property during the term of this policy;

(5) specifications of any damaged structure and detailed estimates for repair of the damage;

(6) an inventory of damaged or stolen personal property described in 2.c.;

(7) receipts for additional living expenses incurred and records supporting the fair rental value loss; and

(8) evidence or affidavit supporting a claim under **SECTION I – ADDITIONAL COVERAGES, Credit Card, Bank Fund Transfer Card, Forgery, and Counterfeit Money** coverage, stating the amount and cause of loss.

3. **Loss to a Pair or Set.** In case of loss to a pair or set, *we* may choose to:

   a. repair or replace any part to restore the pair or set to its value before the loss; or

   b. pay the difference between the depreciated value of the property before the loss and the depreciated value of the property after the loss.

4. **Appraisal.** If *you* and *we* fail to agree on the amount of loss, either party can demand that the amount of the loss be set by appraisal. Only *you* or *we* may demand appraisal. A demand for appraisal must be in writing. *You* must comply with **SECTION I – CONDITIONS, Your Duties After Loss** before making a demand for appraisal. At least 10 days before demanding appraisal, the party seeking appraisal must provide the other party with written, itemized documentation of a specific dispute as to the amount of the loss, identifying separately each item being disputed.

   a. Each party will select a competent, disinterested appraiser and notify the other party of

the appraiser's identity within 20 days of receipt of the written demand for appraisal.

   b. The appraisers will then attempt to set the amount of the loss of each item in dispute as specified by each party, and jointly submit to each party a written report of agreement signed by them. In all instances the written report of agreement will be itemized and state separately the *actual cash value*, replacement cost, and if applicable, the market value of each item in dispute.

   The written report of agreement will set the amount of the loss of each item in dispute.

   c. If the two appraisers fail to agree upon the amount of the loss within 30 days, unless the period of time is extended by mutual agreement, they will select a competent, disinterested umpire and will submit their differences to the umpire. If the appraisers are unable to agree upon an umpire within 15 days:

      (1) *you* or *we* may make a written application for a judge of a court of record in the same state and county (or city if the city is not within a county) where the *residence premises* is located to select an umpire;

      (2) the party requesting the selection described in item c.(1) must provide the other party:

         (a) written notice of the intent to file, identifying the specific location and identity of the court at least 10 days prior to submission of the written application; and

         (b) a copy of the written application; and

      (3) a written report of agreement, as required in item b., signed by any two (appraisers or appraiser and umpire) will set the amount of the loss of each item in dispute. In all instances the written report of agreement will be itemized and state separately the *actual cash value*, replacement cost, and if applicable, the market value of each item in dispute.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

d. To qualify as an appraiser or umpire for a loss to property described in **COVERAGE A – DWELLING**, a person must be one of the following and be licensed or certified as required by the applicable jurisdiction:

(1) an engineer or architect with experience and training in building construction, repair, estimating, or investigation of the type of property damage in dispute;

(2) an adjuster or public adjuster with experience and training in estimating the type of property damage in dispute; or

(3) a contractor with experience and training in the construction, repair, and estimating of the type of property damage in dispute.

e. A person may not serve as an appraiser or umpire if that person, any employee of that person, that person's employer, or any employee of their employer:

(1) has performed services for either party with respect to the claim at issue in the appraisal; or

(2) has a financial interest in the outcome of the claim at issue in the appraisal.

f. Each party will be responsible for the compensation of their selected appraiser. Reasonable expenses of the appraisal and the reasonable compensation of the umpire will be paid equally by **you** and **us**.

g. **You** and **we** do not waive any rights by demanding or submitting to an appraisal, and retain all contractual rights to determine if coverage applies to each item in dispute.

h. Appraisal is only available to determine the amount of the loss of each item in dispute. The appraisers and the umpire have no authority to decide:

(1) any other questions of fact;

(2) questions of law;

(3) questions of coverage;

(4) other contractual issues; or

(5) to conduct appraisal on a class-wide basis.

i. Appraisal is a non-judicial proceeding and does not provide for or require arbitration. Neither party will be awarded attorney fees. The appraisal award may not be entered as a judgment in a court.

j. A party may not demand appraisal after that party brings suit or action against the other party relating to the amount of loss.

5. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, **we** will pay only **our** share of the loss. **Our** share is the proportion of the loss that the applicable limit under this policy bears to the total amount of insurance covering the loss.

6. **Suit Against Us.** No action will be brought against **us** unless there has been full compliance with all of the policy provisions. Any action by any party must be started within one year after the date of loss or damage.

However, if the action results from a loss caused by fire or lightning, the action must be started within two years after the date of loss or damage.

7. **Our Option. We** may repair or replace any part of the property damaged or stolen with similar property. Any property **we** pay for or replace becomes **our** property.

8. **Loss Payment. We** will adjust all losses with **you**. **We** will pay **you** unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after **we** receive **your** proof of loss and:

a. reach agreement with **you**;

b. there is an entry of a final judgment; or

c. there is a filing of an appraisal award with **us**.

9. **Abandonment of Property. We** need not accept any property abandoned by an **insured**.

10. **Mortgagee Clause.** The word "mortgagee" includes trustee.

a. If a mortgagee is named in this policy, any loss payable under Coverage A will be paid to the mortgagee and **you**, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

b. If *we* deny *your* claim that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

(1) notifies *us* of any change in ownership, occupancy, or substantial change in risk of which the mortgagee is aware;

(2) pays on demand any premium due under this policy, if *you* have not paid the premium; and

(3) submits a signed, sworn statement of loss within 60 days after receiving notice from *us* of *your* failure to do so. Policy conditions relating to **Appraisal**, **Suit Against Us**, and **Loss Payment** apply to the mortgagee.

c. If *we* cancel this policy, the mortgagee will be notified at least 10 days before the date cancellation takes effect. Proof of mailing will be proof of notice.

d. If *we* pay the mortgagee for any loss and deny payment to *you*:

(1) *we* are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

(2) at *our* option, *we* may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, *we* will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

e. Subrogation does not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

11. **No Benefit to Bailee.** *We* will not recognize an assignment or grant coverage for the benefit of a person or organization holding, storing, or transporting property for a fee. This applies regardless of any other provision of this policy.

12. **Recovered Property.** If either *you* or *we* recover any property after loss settlement, that party must give the other prompt notice. At *your* option, *you* may keep the property or *we* will return it to *you*. Otherwise, it will become *our* property. If *you* choose to keep the property, the loss payment will be adjusted based on the amount *you* received for the recovered property.

13. **Assignment of Claim.** Assignment to another party of any of *your* rights or duties under this policy regarding any claim, or any part of any claim, will be void and *we* will not recognize any such assignment, unless *we* give *our* written consent. However, once *you* have complied with all policy provisions, *you* may assign to another party, in writing, payment of claim proceeds otherwise payable to *you*.

## SECTION II -- LIABILITY COVERAGES

### COVERAGE L -- PERSONAL LIABILITY

If a claim is made or a suit is brought against an *insured* for damages because of *bodily injury* or *property damage* to which this coverage applies, caused by an *occurrence*, *we* will:

1. pay up to *our* limit of liability for the damages for which the *insured* is legally liable. *We* will not pay for criminal restitution; and

2. provide a defense at *our* expense by counsel of *our* choice. *We* may make any investigation and settle any claim or suit that *we* decide is appropriate. *Our* obligation to defend any suit ends when the amount *we* pay for damages, to effect settlement or satisfy a judgment resulting from the *occurrence*, equals *our* limit of liability. *We* will not provide a defense to any *insured* for criminal prosecution or proceedings.

### COVERAGE M -- MEDICAL PAYMENTS TO OTHERS

*We* will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing *bodily injury*. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, rehabilitation, pharmaceuticals, orthopedic devices, prosthetic devices, and funeral services. This coverage applies only:

1. to a person on the *insured location* with the permission of an *insured*;

2. to a person off the *insured location*, if the *bodily injury*:

a. arises out of a condition on the *insured location* or the ways immediately adjoining;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

b. is caused by the activities of an *insured*;

c. is caused by a *residence employee* in the course of the *residence employee's* employment by an *insured*; or

d. is caused by an animal owned by or in the care of an *insured*; or

3. to a *residence employee* if the *occurrence* causing *bodily injury* occurs off the *insured location* and arises out of or in the course of the *residence employee's* employment by an *insured*.

### SECTION II – ADDITIONAL COVERAGES

The following Additional Coverages are subject to all the terms, provisions, exclusions, and conditions of this policy.

*We* will pay for the following in addition to the limits of liability:

1. **Claim Expenses.** *We* will pay:

   a. expenses *we* incur and costs taxed against an *insured* in suits *we* defend. Taxed costs do not include attorney fees;

   b. premiums on bonds required in suits *we* defend, but not for bond amounts greater than the Coverage L limit. *We* are not obligated to apply for or furnish any bond;

   c. reasonable expenses an *insured* incurs at *our* request. This includes actual loss of earnings (but not loss of other income) up to $250 per day for aiding *us* in the investigation or defense of claims or suits;

   d. interest the *insured* is legally liable to pay on damages payable under Coverage L above before a judgment, but only the interest on the lesser of:

      (1) that part of the damages *we* pay; or

      (2) the Coverage L limit; and

   e. interest on the entire judgment that accrues after entry of the judgment and before *we* pay or tender, or deposit in court that part of the judgment that does not exceed the limit of liability that applies.

2. **First Aid Expenses.** *We* will pay expenses for first aid to others incurred by an *insured* for *bodily injury*

covered under this policy. *We* will not pay for first aid to *you* or any other *insured*.

3. **Damage to Property of Others.**

   a. *We* will pay for *property damage* to property of others caused by the activities of an *insured*.

   b. *We* will not pay more than the smallest of the following amounts:

      (1) replacement cost at the time of loss;

      (2) full cost of repair; or

      (3) the limit of liability shown in the *Declarations* for **Damage to Property of Others** for any one *occurrence*.

   c. *We* will not pay for *property damage*:

      (1) for a loss that is recoverable under Section I of this policy. *We* also will not pay for any applicable deductible regardless of whether the amount of the loss exceeds the deductible;

      (2) caused intentionally by an *insured* 13 years of age or older;

      (3) to property, other than a rented golf cart, owned by, or rented to an *insured*, a tenant of an *insured*, or a resident in *your* household;

      (4) arising out of:

         (a) *business* pursuits;

         (b) any act or omission in connection with a premises an *insured* owns, rents, or controls, other than the *insured location*;

         (c) a condition on the *insured location* or the ways immediately adjoining; or

         (d) the ownership, maintenance, or use of a *motor vehicle*, aircraft, or watercraft, including airboat, air cushion, personal watercraft, sail board, or similar type watercraft; or

      (5) if a payment is made under **COVERAGE L – PERSONAL LIABILITY** for the same *property damage*.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

## SECTION II – EXCLUSIONS

1. Coverage L and Coverage M do not apply to:

   a. *bodily injury* or *property damage* that:

      (1) was a result of a:

         (a) willful and malicious; or

         (b) criminal;

         act or omission of the *insured*;

      (2) was intended by the *insured*; or

      (3) would have been expected by the *insured* based on a reasonable person standard.

      However, exclusions a.(2) and a.(3) above do not apply to *bodily injury* or *property damage* resulting from the use of reasonable force to protect persons or property.

      Exclusions a.(1), a.(2), and a.(3) above apply to all *bodily injury* or *property damage* even if the:

      (1) *bodily injury* or *property damage* was sustained by a different person, entity, or property than was expected or intended;

      (2) *bodily injury* or *property damage* was of a different kind, quality, or degree than was expected or intended;

      (3) *insured* lacked the mental capacity to control his or her conduct;

      (4) *insured* was not charged with or convicted of a criminal act or omission; or

      (5) *insured* was impaired by drugs or alcohol;

   b. *bodily injury* or *property damage* arising out of *business* pursuits of any *insured*, except as provided in item c. below. This exclusion does not apply to activities that are ordinarily incident to non-*business* pursuits;

   c. *bodily injury* or *property damage* arising out of the rental of any part of any premises by any *insured*. This exclusion does not apply:

      (1) to the rental of the *residence premises*:

         (a) either completely or in part, for exclusive use as a residence, for up to 30 nights in the 12-month period prior to the date of the loss;

         (b) in part, for use as a permanent residence, by either one or two full-time roomers or boarders; or

         (c) in part, as an office, school, studio, or private garage;

      (2) when the *dwelling* on the *residence premises* is a two, three, or four family *dwelling* and *you* occupy one part and rent the other part to others;

      (3) to farm land (without buildings), rented to others, but not to exceed a total of 500 acres, regardless of the number of locations; or

      (4) to activities that are ordinarily incident to non-*business* pursuits;

   d. *bodily injury* or *property damage* arising out of the rendering or failing to render professional services;

   e. *bodily injury* or *property damage* arising out of any premises currently owned or rented to any *insured* which is not an *insured location*. This exclusion does not apply to *bodily injury* to a *residence employee* arising out of and in the course of the *residence employee's* employment by an *insured*;

   f. *bodily injury* or *property damage* arising out of the ownership, maintenance, use, loading, or unloading of:

      (1) an aircraft. This exclusion does not apply to the ownership, maintenance, use, loading, or unloading of unmanned aircraft systems used as model aircraft:

         (a) solely for recreational or hobby purposes;

         (b) designed to be operated within the visual line of sight of the operator and operated within the visual line of sight of the operator; and

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

(c) weighing not more than 55 pounds at the time of operation;

unless the ownership, maintenance, use, loading, or unloading of such aircraft results in:

(a) *property damage* to any aircraft; or

(b) *bodily injury* or *property damage* resulting from interference with an aircraft carrying people regardless of whether the *bodily injury* or *property damage* is sustained by people or property on the aircraft or not;

(2) a *motor vehicle* owned or operated by or rented or loaned to any *insured*; or

(3) a watercraft:

(a) owned by or rented to any *insured* if it has inboard or inboard-outdrive motor power of more than 50 horsepower;

(b) owned by or rented to any *insured* if it is a sailing vessel, with or without auxiliary power, 26 feet or more in overall length;

(c) powered by one or more outboard motors with more than 25 total horsepower owned by any *insured*;

(d) designated as an airboat, air cushion, or similar type of craft; or

(e) owned by any *insured* if it is a personal watercraft using a water jet pump powered by an internal combustion engine as the primary source of propulsion.

This exclusion does not apply to *bodily injury* to a *residence employee* arising out of and in the course of the *residence employee's* employment by an *insured*. Exclusion f.(3) does not apply while the watercraft is on the *residence premises*;

g. *bodily injury* or *property damage* arising out of:

(1) the entrustment by any *insured* to any person;

(2) the supervision by any *insured* of any person;

(3) any liability statutorily imposed on any *insured*; or

(4) any liability assumed through an unwritten or written agreement by any *insured*;

with regard to the ownership, maintenance, or use of any aircraft, watercraft, or *motor vehicle* not covered under Section II of this policy;

h. *bodily injury* or *property damage* caused directly or indirectly by war, including undeclared war, or any warlike act including destruction, seizure, or use for a military purpose, or any consequence of these. Discharge of a nuclear weapon will be considered a warlike act even if accidental;

i. *bodily injury* to any *insured* within the meaning of part 9.a., 9.b., or 9.c. of the definition of *insured*.

This exclusion also applies to any claim made or suit brought against any *insured* within the meaning of part 9.a., 9.b., or 9.c. of the definition of *insured* to share damages with or repay someone else who may be obligated to pay damages because of the *bodily injury* sustained by any *insured* within the meaning of part 9.a., 9.b., or 9.c. of the definition of *insured*;

j. any claim made or suit brought against any *insured* by:

(1) any person in the care of any *insured* because of child care services provided by or at the direction of:

(a) any *insured*;

(b) any employee of any *insured*; or

(c) any other person actually or apparently acting on behalf of any *insured*; or

(2) any person who makes a claim because of *bodily injury* to any person in the care of any *insured* because of child care services provided by or at the direction of:

(a) any *insured*;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

(b) any employee of any *insured*; or

(c) any other person actually or apparently acting on behalf of any *insured*.

This exclusion does not apply to the occasional child care services provided by any *insured*, or to the part-time child care services provided by any *insured* under 19 years of age;

k. *bodily injury* or *property damage* arising out of an *insured's* participation in, or preparation or practice for, any prearranged or organized race, speed or demolition contest, or similar competition involving a motorized land vehicle or motorized watercraft. This exclusion does not apply to a sailing vessel less than 26 feet in overall length with or without auxiliary power;

l. *bodily injury* or *property damage* arising out of the use, sale, manufacture, distribution, delivery, transfer, or possession, by any *insured*, of any substance that is illegal or is a controlled substance under either federal or state law.

This exclusion does not apply to:

(1) the legitimate use of legally prescribed drugs, under either federal or state law, by a person following orders of a licensed health care professional; or

(2) an *insured* who did not knowingly participate or cooperate in the acts described in paragraph l. above;

m. *bodily injury* or *property damage* arising out of any actual, alleged, or threatened:

(1) sexual harassment, sexual molestation, or sexual misconduct;

(2) physical or mental abuse; or

(3) corporal punishment;

by the *insured*;

n. *bodily injury* or *property damage* arising out of the actual, alleged, or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any *fungus* at or from any source or location.

*We* also do not cover any loss, cost, or expense arising out of any:

(1) request, demand, order, or statutory or regulatory requirement that any *insured* or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, remediate, dispose of, or in any way respond to or assess the effects of *fungus*; or

(2) claim or suit for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, disposing of, or in any way responding to or assessing the effects of *fungus*; or

o. *bodily injury* or *property damage* arising out of the ownership, maintenance, or use of systems and equipment used to generate electrical power exceeding 125 percent of the actual electrical power usage by the *residence premises* in the 12-month period prior to the date of the loss.

2. Coverage L does not apply to:

a. liability:

(1) for *your* share of any loss assessment charged against all members of any type of association of property owners; or

(2) imposed on or assumed by any *insured* through any unwritten or written contract or agreement. This exclusion does not apply to liability for damages that the *insured* would have in absence of the contract or agreement;

b. *property damage* to property owned by any *insured* at the time of the *occurrence*;

c. *property damage* to property rented to, used or occupied by, or in the care, custody, or control of any *insured* at the time of the *occurrence*. This exclusion does not apply to *property damage* caused by fire, smoke, explosion, or abrupt and accidental damage from water;

d. *bodily injury* to a person eligible to receive any benefits required to be provided or voluntarily provided by an *insured* under a workers'

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

compensation, non-occupational disability, or occupational disease law;

e. *bodily injury* or *property damage* for which an *insured* under this policy is also an insured under a nuclear energy liability policy or would be an insured but for its termination upon exhaustion of its limit of liability. A nuclear energy liability policy is a policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors;

f. *bodily injury* or *property damage* arising out of any real property any *insured* has sold or transferred. This includes but is not limited to *bodily injury* or *property damage* arising out of known, unknown, hidden, or alleged property conditions, problems, or defects.

This exclusion also applies to any *property damage* to the sold or transferred real property itself.

However, this exclusion does not apply to:

(1) *bodily injury* arising out of fire, smoke, explosion, electrocution, or carbon monoxide poisoning; or

(2) *property damage* arising out of fire, smoke, or explosion.

3. Coverage M does not apply to *bodily injury*:

a. to a *residence employee* if it occurs off the *insured location* and does not arise out of or in the course of the *residence employee's* employment by an *insured*;

b. to a person eligible to receive any benefits required to be provided or voluntarily provided under any workers' compensation, non-occupational disability, or occupational disease law;

c. to a person other than a *residence employee* of an *insured*, regularly residing on any part of the *insured location*; or

d. from nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

## SECTION II – CONDITIONS

1. **Limit of Liability.** The Coverage L limit is shown in the *Declarations*. This is the limit for all damages from each *occurrence* for the policy period in which the *bodily injury* or *property damage* first occurs, regardless of the number of *insureds*, claims made, or persons injured. No additional limits or coverage will be available for the *occurrence* under any additional policy periods while this policy remains in force.

    The Coverage M limit is shown in the *Declarations*. This is *our* limit for all medical expenses for *bodily injury* to one person as the result of one accident.

2. **Severability of Insurance.** This insurance applies separately to each *insured*. This condition does not increase *our* limit of liability for any one *occurrence*.

3. **Duties After Loss.** In case of an accident or *occurrence*, the *insured* must cooperate with *us* in the investigation, settlement, or defense of any claim or suit and also perform the following duties

that apply. *You* must cooperate with *us* in seeing that these duties are performed:

a. give written notice to *us* or *our* agent as soon as possible, which sets forth:

(1) the identity of this policy and the *insured*;

(2) reasonably available information on the time, place, and circumstances of the accident or *occurrence*; and

(3) names and addresses of any claimants and available witnesses;

b. immediately forward to *us* every notice, demand, summons, or other process relating to the accident or *occurrence*;

c. at *our* request, assist in:

(1) making settlement;

28

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

(2) the enforcement of any right of contribution or indemnity against a person or organization who may be liable to an *insured*;

(3) the conduct of suits and attend hearings and trials; and

(4) securing and giving evidence and obtaining the attendance of witnesses;

d. under **SECTION II – ADDITIONAL COVERAGES, Damage to Property of Others**, exhibit the damaged property if within the *insured's* control; and

e. the *insured* must not, except at the *insured's* own cost, voluntarily make payments, assume obligations, or incur expenses. This does not apply to expense for first aid to others at the time of the *bodily injury*.

4. **Coverage M Requirements.** *We* may require the following in regard to any Coverage M claim:

a. written proof of claim, under oath if required, as soon as possible from the injured person, or when appropriate, someone acting on behalf of that person;

b. the injured person's submission to physical examinations by a physician selected by *us* when and as often as *we* reasonably require; and

c. any authorizations from the injured person as *we* may require.

5. **Payment of Claim – Coverage M or Damage to Property of Others.** Payment under either of these is not an admission of liability by an *insured* or *us*.

6. **Suit Against Us.** No action will be brought against *us* unless there has been compliance with the policy provisions.

No one will have the right to join *us* as a party to an action against an *insured*. Further, no action with respect to Coverage L will be brought against *us* until the obligation of the *insured* has been determined by final judgment on the merits, after an actual trial or by an agreement signed by *us*; but *we* will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable Limit of Liability.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an *insured* will not relieve *us* of *our* obligation under this policy.

8. **Other Insurance – Coverage L.** This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

## SECTION I AND SECTION II – CONDITIONS

1. **Policy Period.** This policy applies only to loss under Section I or *bodily injury* or *property damage* under Section II that occurs during the period this policy is in effect.

2. **Concealment or Fraud.**

a. This policy is void as to *you* and any other *insured* if *you* or any other *insured* under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

However, this condition applies only to facts or circumstances:

(1) on which *we* rely and are either:

(a) material; or

(b) made with intent to deceive; or

(2) that contribute to the loss.

b. No failure of a policy condition before the loss and no breach of a promissory warranty affects *our* obligations under this policy unless such failure or breach exists at the time of loss and either:

(1) increases the risk at the time of loss; or

(2) contributes to the loss.

Item 2.b. does not apply to failure to tender payment of premium.

c. Violation of this condition by an *insured* does not apply to a claim of an innocent *insured*, to

29

HW-2111

the extent of the innocent *insured's* interest in the covered property, if the loss:

(1) arises out of family violence against an innocent *insured*; and

(2) is caused by an intentional act of an *insured* against whom a family violence complaint is brought.

3. **Liberalization Clause.** If *we* adopt any revision that would broaden coverage under this policy without additional premium, within 60 days prior to or during the period this policy is in effect, the broadened coverage will immediately apply to this policy.

4. **Waiver or Change of Policy Provisions.** A waiver or change of any provision of this policy must be in writing by *us* to be valid. *Our* request for an appraisal or examination does not waive any of *our* rights.

5. **Cancellation.**

a. *You* may cancel this policy at any time by giving *us* advance written notice of the date cancellation is to take effect. If only *your* interest is affected, the effective date of cancellation will be the later of:

(1) the date *we* receive *your* notice of cancellation; or

(2) the date specified in the notice.

However, upon receipt of *your* notice of cancellation, *we* may waive the requirement that the notice be in writing by confirming the date and time of cancellation to *you* in writing.

b. *We* may cancel this policy only for the reasons stated in this condition. *We* will notify *you* in writing of the date cancellation takes effect. This cancellation notice may be delivered to *you*, or mailed to *you* at *your* mailing address shown in the *Declarations*. Proof of mailing will be sufficient proof of notice:

(1) When *you* have not paid the premium, *we* may cancel at any time by notifying *you* at least 10 days before the date cancellation takes effect. This condition applies whether the premium is payable to *us* or

*our* agent or under any finance or credit plan.

(2) When this policy has been in effect for less than 60 days and is not a renewal with *us*, *we* may cancel for any reason. *We* may cancel by notifying *you* at least 30 days before the date cancellation takes effect.

(3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with *us*, *we* may cancel:

(a) if there has been a material misrepresentation of fact that, if known to *us*, would have caused *us* not to issue this policy; or

(b) if the risk has changed substantially since this policy was issued.

*We* may cancel this policy by notifying *you* at least 30 days before the date cancellation takes effect.

(4) When this policy is written for a period longer than one year, *we* may cancel for any reason at anniversary. *We* may cancel by notifying *you* at least 30 days before the date cancellation takes effect.

c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded. The return premium will be pro rata.

d. The return premium may not be refunded with the notice of cancellation or when this policy is returned to *us*. In such cases, *we* will refund it within a reasonable time after the date cancellation takes effect.

e. If *we* cancel this policy, *we* will notify any mortgagee shown in this policy in accordance with Georgia state insurance law.

6. **Nonrenewal.** *We* may elect not to renew this policy. If *we* elect not to renew, a written notice will be delivered to *you*, or mailed to *you* at *your* mailing address shown in the *Declarations*. The notice will be mailed or delivered at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

If *we* elect not to renew this policy, *we* will notify any mortgagee shown in this policy in accordance with Georgia state insurance law.

7. **Assignment of Policy.** Assignment of this policy will be void and *we* will not recognize any such assignment, unless *we* give *our* written consent.

8. **Subrogation and Reimbursement.**

   a. **Subrogation.**

   - (1) Applicable to SECTION I:

     If any *insured* to or for whom *we* make payment under this policy has rights to recover damages from another, those rights are transferred to *us* to the extent of *our* payment. That *insured* must do everything necessary to secure *our* rights and must do nothing after loss to impair them. However before a loss, an *insured* may waive in writing all rights of recovery against any person.

   (2) Applicable to SECTION II:

     If any *insured* has rights to recover all or part of any payment *we* have made under this policy, those rights are transferred to *us*. An *insured* must do nothing after loss to impair them. At *our* request, an *insured* will bring suit or transfer those rights to *us* and help *us* enforce them.

     Subrogation does not apply under Section II to **Medical Payments to Others** or **Damage to Property of Others**.

   b. **Reimbursement.**

     If *we* make payment under this policy and any *insured* to or for whom *we* make payment recovers or has recovered from another person or organization, then the *insured* to or for whom *we* make payment must:

     (1) hold in trust for *us* the proceeds of any recovery; and

     (2) reimburse *us* to the extent of *our* payment.

9. **Death.** If *you* die:

   a. *we* insure the legal representative of the deceased. This condition applies only with respect

to the premises and property of the deceased covered under this policy at the time of death;

b. *insured* includes:

   (1) any member of *your* household who is an *insured* at the time of *your* death, but only while a resident of the *residence premises*; and

   (2) with respect to *your* property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

10. **Conformity to State Law.** When a policy provision is in conflict with the applicable law of the state in which this policy is issued, the law of the state will apply.

11. **Premium.**

    a. Unless as otherwise provided by an alternative payment plan in effect with the *State Farm Companies* with respect to the premium for this policy, the premium is due and payable in full on or before the first day of the policy period shown in the most recently issued *Declarations*.

    b. The renewal premium for this policy will be based upon the rates in effect, the coverages carried, the applicable limits, deductibles, and other elements that affect the premium applicable at the time of renewal.

    c. The premium for this policy may vary based upon:

       (1) the purchase of other products or services from the *State Farm Companies*;

       (2) the purchase of products or services from an organization that has entered into an agreement or contract with the *State Farm Companies*. The *State Farm Companies* do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization; or

       (3) an agreement, concerning the insurance provided by this policy, that the *State Farm Companies* has with an organization

31

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

of which **you** are a member, employee, subscriber, licensee, or franchisee.

d.   **Your** purchase of this policy may allow:

   (1)   **you** to purchase or obtain certain coverages, coverage options, coverage deductibles, coverage limits, or coverage terms on other products from the **State Farm Companies**, subject to their applicable eligibility rules; or

   (2)   the premium or price for other products or services purchased by **you**, including non-insurance products or services, to vary. Such other products or services must be provided by the **State Farm Companies** or by an organization that has entered into an agreement or contract with the **State Farm Companies**. The **State Farm Companies** do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization.

12.   **Right to Inspect.**

   a.   **We** have the right but are not obligated to perform the following:

      (1)   make inspections and surveys of the **insured location** at any time;

      (2)   provide **you** with reports on conditions **we** find; or

      (3)   recommend changes.

      Any inspections, surveys, reports, or recommendations relate only to insurability and the premiums to be charged.

   b.   **We** do not:

      (1)   make safety inspections;

      (2)   undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public;

      (3)   warrant that conditions are safe or healthful; or

      (4)   warrant that conditions comply with laws, regulations, codes, or standards.

   This condition applies to **us** and to any rating, advisory, rate service, or similar organization that makes

insurance inspections, surveys, reports, or recommendations on **our** behalf.

13.   **Joint and Individual Interests.** When there are two or more Named Insureds, each acts for all to cancel or change this policy.

14.   **Change of Policy Address. We** may change the Named Insured's policy address as shown in the **Declarations** and in **our** records to the most recent address provided to **us** by:

   a.   **you**; or

   b.   the United States Postal Service.

15.   **Electronic Delivery.** With **your** consent, **we** may electronically deliver any document or notice, including a notice to renew, nonrenew, or cancel, instead of mailing it or delivering it by other means. Proof of transmission will be sufficient proof of notice.

16.   **Our Rights Regarding Claim Information.**

   a.   **We** will collect, receive, obtain, use, and retain all the items described in item b.(1) below and use and retain the information described in item b.(3)(b) below, in accordance with applicable federal and state laws and regulations and consistent with the performance of **our** business functions.

   b.   Subject to 16.a. above, **we** will not be restricted in or prohibited from:

      (1)   collecting, receiving, or obtaining records, receipts, invoices, medical bills, medical records, wage information, salary information, employment information, data, and any other information;

      (2)   using any of the items described in item b.(1) above; or

      (3)   retaining:

         (a)   any of the items in item b.(1) above; or

         (b)   any other information **we** have in **our** possession as a result of **our** processing, handling, or otherwise resolving claims submitted under this policy.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

c. **We** may disclose any of the items in b.(1) above and any of the information described in item b.(3)(b) above:

(1) to enable performance of **our** business functions;

(2) to meet **our** reporting obligations to insurance regulators;

(3) to meet **our** reporting obligations to insurance data consolidators;

(4) to meet other obligations required by law; and

(5) as otherwise permitted by law.

d. **Our** rights under 16.a., 16.b., and 16.c. above will not be impaired by any:

(1) authorization related to any claim submitted under this policy; or

(2) act or omission of an **insured** or a legal representative acting on an **insured's** behalf.

17. **Duties Regarding Claim Information.** An **insured** or a legal representative acting on an **insured's** behalf must provide **us** with any requested authorizations related to the claim. **Our** rights as set forth under **Our Rights Regarding Claim Information** of this policy will not be impaired by any:

a. authorization related to the claim; or

b. act or omission of an **insured** or a legal representative acting on an **insured's** behalf.

## OPTIONAL POLICY PROVISIONS

Each Optional Policy Provision applies only as shown in the **Declarations** and is subject to all the terms, provisions, exclusions, and conditions of this policy.

**Option AI – Additional Insured.** The definition of **insured** is extended to include the person or organization shown in the **Declarations** as an Additional Insured or whose name is on file with **us**. Coverage is with respect to:

1. **SECTION I – Coverage A, Coverage B**, or **Coverage C**; or

2. **SECTION II – Coverage L** and **Coverage M** but only with respect to the **residence premises**. This coverage does not apply to **bodily injury** to an employee arising out of or in the course of the employee's employment by the person or organization.

This option applies only with respect to the location shown in the **Declarations**.

**Option BP – Business Property.** The **COVERAGE B – PERSONAL PROPERTY**, **Special Limits of Liability**, item b., for property used or intended for use in a **business**, including merchandise held as samples or for sale or for delivery after sale, is changed as follows:

The $1,500 limit is replaced with the amount shown in the **Declarations** for this option.

**Option BU – Business Pursuits. SECTION II – EXCLUSIONS**, item 1.b. is modified as follows:

1. Section II coverage applies to the **business** pursuits of an **insured** who is a:

a. clerical office employee, salesperson, collector, messenger; or

b. teacher (except college, university, and professional athletic coaches), school principal, or school administrator;

while acting within the scope of the above listed occupations.

2. However, no coverage is provided:

a. for **bodily injury** or **property damage** arising out of a **business** owned or financially controlled by the **insured** or by a partnership of which the **insured** is a partner or member;

b. for **bodily injury** or **property damage** arising out of the rendering of or failure to render professional services of any nature (other than teaching or school administration). This exclusion includes but is not limited to:

(1) computer programming, architectural, engineering, or industrial design services;

(2) medical, surgical, dental, or other services or treatment conducive to the health of persons or animals; and

(3) beauty or barber services or treatment;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017
HW-2111

c. for **bodily injury** to a fellow employee of the **insured** injured in the course of employment; or

d. when the **insured** is a member of the faculty or teaching staff of a school or college:

   (1) for **bodily injury** or **property damage** arising out of the maintenance, use, loading, or unloading of:

      (a) draft or saddle animals, including vehicles for use with them; or

      (b) aircraft, **motor vehicles**, recreational **motor vehicles** or watercraft, airboats, air cushions, or personal watercraft which use a water jet pump powered by an internal combustion engine as the primary source of propulsion;

      owned, operated, or hired by or for the **insured** or employer of the **insured** or used by the **insured** for the purpose of instruction in the use thereof; or

   (2) under **Coverage M** for **bodily injury** to a student arising out of corporal punishment administered by or at the direction of the **insured**.

**Option FA – Firearms.** Firearms are covered for accidental direct physical loss or damage.

The limits for this option are shown in the **Declarations**. The first amount is the limit for any one article; the second amount is the aggregate limit for each loss.

The following additional provisions apply:

1. **We** will not pay for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

   a. mechanical breakdown, wear and tear, or gradual deterioration;

   b. all animals, birds, or insects, including nesting, infestation, gnawing, feeding, breeding, or discharge or release of waste products or secretions by animals, birds, or insects. However, **we** will pay for losses caused by wild bears or deer;

c. any process of refinishing, renovating, or repairing;

d. dampness of atmosphere or extremes of temperatures;

e. inherent defect or faulty manufacture;

f. rust, fouling, or explosion of firearms;

g. breakage, marring, scratching, tearing, or denting unless caused by fire, thieves, or accidents to conveyances; or

h. infidelity of an **insured's** employees or persons to whom the insured property may be entrusted or rented;

2. **Our** limit for loss by any Coverage B peril except theft is the limit shown in the **Declarations** for Coverage B, plus the aggregate limit;

3. **Our** limits for loss by theft are those shown in the **Declarations** for this option. These limits apply in lieu of the Coverage B theft limit; and

4. **Our** limits for loss by any covered peril except those in items 2. and 3. above are those shown in the **Declarations** for this option.

**Option ID – Increased Dwelling Limit. We** will settle losses to damaged **building structures** covered under **COVERAGE A – DWELLING** according to the **Loss Settlement Provision** shown in the **Declarations**.

If the amount **you** actually and necessarily spend to repair or replace damaged **building structures** exceeds the applicable limit of liability shown in the **Declarations**, **we** will pay the additional amounts not to exceed:

1. the Option ID limit of liability shown in the **Declarations** to repair or replace the **dwelling**; or

2. 10% of the Option ID limit of liability to repair or replace **building structures** covered under **COVERAGE A – DWELLING, Other Structures.**

**Report Increased Values. You** must notify **us** within 90 days of the start of construction on any new **building structure** costing $5,000 or more; or any additions to or remodeling of **building structures** that increase their values by $5,000 or more. **You** must pay any additional premium due for the increased value. **We** will not pay more than the applicable limit of liability shown in the **Declarations** if **you** fail to notify **us** of the increased value within 90 days.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017 HW-2111

**Option IO – Incidental Business.** The coverage provided by this option applies only to that incidental **business** occupancy on file with **us**.

1. **COVERAGE A – DWELLING, Other Structures**, item 2.b. is deleted.

2. **COVERAGE B – PERSONAL PROPERTY** is extended to include equipment, supplies, and furnishings usual and incidental to this **business** occupancy. This Optional Policy Provision does not include electronic data processing system equipment or the recording or storage media used with that equipment or merchandise held as samples or for sale or for delivery after sale.

   The Option IO limits are shown in the **Declarations**. The first limit applies to property on the **residence premises**. The second limit applies to property while off the **residence premises**. These limits are in addition to the **COVERAGE B – PERSONAL PROPERTY, Special Limits of Liability** on property used or intended for use in a **business**.

3. Under Section II, the **residence premises** is not considered **business** property because an **insured** occupies a part of it as an incidental **business**.

4. **SECTION II – EXCLUSIONS**, item 1.b. is replaced with the following:

   b. **bodily injury** or **property damage** arising out of **business** pursuits of any **insured**, except as provided in item c. below. This exclusion does not apply to activities that are ordinarily incident to non-**business** pursuits or to **business** pursuits of an **insured** that are necessary or incidental to the use of the **residence premises** as an incidental **business**;

5. This insurance does not apply to:

   a. **bodily injury** to an employee of an **insured** arising out of the **residence premises** as an incidental **business** other than to a **residence employee** while engaged in the employee's employment by an **insured**;

   b. **bodily injury** to a student arising out of corporal punishment administered by or at the direction of the **insured**;

c. liability arising out of any acts, errors, or omissions of an **insured**, or any other person for whose acts an **insured** is liable, resulting from the preparation or approval of data, plans, designs, opinions, reports, programs, specifications, supervisory inspections, or engineering services in the conduct of an **insured's** incidental **business** involving data processing, computer consulting, or computer programming; or

d. any claim made or suit brought against any **insured** by:

   (1) any person in the care of any **insured** because of child care services provided by or at the direction of:

      (a) any **insured**;

      (b) any employee of any **insured**; or

      (c) any other person actually or apparently acting on behalf of any **insured**; or

   (2) any person who makes a claim because of **bodily injury** to any person in the care of any **insured** because of child care services provided by or at the direction of:

      (a) any **insured**;

      (b) any employee of any **insured**; or

      (c) any other person actually or apparently acting on behalf of any **insured**.

   Coverage M does not apply to any person indicated in d.(1) and d.(2) above.

   This exclusion does not apply to the occasional child care services provided by any **insured**, or to the part-time child care services provided by any **insured** under 19 years of age.

**Option JF – Jewelry and Furs.** Jewelry, watches, fur garments and garments trimmed with fur, precious and semi-precious stones, gold other than goldware, silver other than silverware, and platinum are covered for accidental direct physical loss or damage.

The limits for this option are shown in the **Declarations**. The first amount is the limit for any one article; the second amount is the aggregate limit for each loss. All provisions and exclusions of **SECTION I – LOSSES**

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

INSURED, **COVERAGE B – PERSONAL PROPERTY, Theft** apply to Option JF.

The following additional provisions apply:

1. **We** will not pay for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

    a. mechanical breakdown, wear and tear, or gradual deterioration;

    b. all animals, birds or insects, including nesting, infestation, gnawing, feeding, breeding, or discharge or release of waste products or secretions by animals, birds, or insects. However, **we** will pay for losses caused by wild bears or deer;

    c. inherent vice; or

    d. seizure or destruction under quarantine or customs regulations;

2. **Our** limit for loss by any Coverage B peril except theft is the limit shown in the **Declarations** for Coverage B, plus the aggregate limit;

3. **Our** limits for loss by theft are those shown in the **Declarations** for this option. These limits apply in lieu of the Coverage B theft limit; and

4. **Our** limits for loss by any covered peril except those in items 2. and 3. above are those shown in the **Declarations** for this option.

**Option OL – Building Ordinance or Law.**

1. **Coverage Provided.** The total limit of insurance provided by this option will not exceed an amount equal to the Option OL percentage shown in the **Declarations** of the Coverage A limit shown in the **Declarations** at the time of the loss, as adjusted by the Inflation Coverage provisions of this policy. This is an additional amount of insurance and applies to **building structures** on the **residence premises**.

2. **Damaged Portions of Building Structure.** When a **building structure** covered under **COVERAGE A – DWELLING** is damaged by a **loss insured**, **we** will pay for the increased cost to repair or rebuild the physically damaged portion of the **building structure** caused by the enforcement of a building, zoning, or land use ordinance or law if the enforcement is directly caused by the same **loss insured** and the

requirement is in effect at the time the **loss insured** occurs.

3. **Undamaged Portions of Damaged Building Structure.** When a **building structure** covered under **COVERAGE A – DWELLING** is damaged by a **loss insured**, **we** will also pay for:

    a. the cost to demolish and clear the site of the undamaged portions of the **building structure** caused by the enforcement of a building, zoning, or land use ordinance or law if the enforcement is directly caused by the same **loss insured** and the requirement is in effect at the time the **loss insured** occurs; and

    b. loss to the undamaged portion of the **building structure** caused by enforcement of any ordinance or law if:

        (1) the enforcement is directly caused by the same **loss insured**;

        (2) the enforcement requires the demolition of portions of the same **building structure** not damaged by the same **loss insured**;

        (3) the ordinance or law regulates the construction or repair of the **building structure**, or establishes zoning or land use requirements at the described premises; and

        (4) the ordinance or law is in force at the time of the occurrence of the same **loss insured**; or

    c. legally required changes to the undamaged portion of the **building structure** caused by the enforcement of a building, zoning, or land use ordinance or law, if:

        (1) the enforcement is directly caused by the same **loss insured**;

        (2) the requirement is in effect at the time the **loss insured** occurs; and

        (3) the legally required changes are made to the undamaged portions of specific **building structure** features, systems, or components that have been physically damaged by the **loss insured**.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

*We* will not pay for legally required changes to specific *building structure* features, systems, or components that have not been physically damaged by the *loss insured*.

4. **Building Ordinance or Law Coverage Limitations.**

   a.  *We* will not pay for any increased cost of construction:

      (1)  until the *building structure* is actually repaired or replaced at the same or another premises in the same general vicinity;

      (2)  unless the repairs or replacement are made as soon as reasonably possible after the loss, not to exceed two years; and

      (3)  due to any original or subsequent construction, addition, modification, renovation, remodel, or repair to a *building structure* that did not comply with a building, zoning, or land use ordinance or law in effect when the construction, addition, modification, renovation, remodel, or repair was performed.

   b.  *We* will not pay more under this coverage than the amount *you* actually spend:

      (1)  for the increased cost to repair or rebuild the *building structure* at the same or another premises in the same general vicinity if relocation is required by ordinance or law; and

      (2)  to demolish and clear the site of the undamaged portions of the *building structure* caused by enforcement of building, zoning, or land use ordinance or law.

   *We* will not pay for more than a *building structure* of the same height, floor area, and style on the same or similar premises as the *building structure*, subject to the limit provided in paragraph 1. **Coverage Provided** of this option.

**Option SG – Silverware and Goldware Theft.** The **COVERAGE B – PERSONAL PROPERTY, Special Limits of Liability**, item i., for theft of silverware and goldware is increased to be the amount shown in the *Declarations* for this option.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

# EXHIBIT B

FRITZ, KIMBERLY

11-31P1-54F



**State Farm**
**P.O. Box 106169**
**Atlanta, GA  30348-6169**
**Fax: 1-844-236-3646**
**statefarmfireclaims@statefarm.com**

# Structural Damage Claim Policy

This estimate is priced based on estimated market pricing for the cost of materials, labor, and other factors at the time of the loss.

Adjustments in market pricing and timing of the repairs may impact the final cost of covered repairs. Should you or the contractor you select have questions concerning our estimate, please contact us. If your contractor's estimate is higher than ours, you should contact us prior to beginning repairs. State Farm will work with you and your contractor to determine the actual and necessary cost of covered repairs at the time repairs will be completed, subject to policy terms, conditions and limits.

• We want you to receive quality repair work to restore the damages to your property.

• We will provide you with a detailed estimate of the scope of the damage and costs of repairs. Should the contractor you select have questions concerning our estimate, they should contact your claim representative directly.

• Depending upon the complexity of your repair, our estimate may or may not include an allowance for general contractor's overhead and profit. If you have questions regarding general contractor's overhead and profit and whether general contractor services are appropriate for your loss, please contact your claim representative before proceeding with repairs.

• There may be building codes, ordinances, laws, or regulations that affect the repairs of your property. These items may or may not be covered by your policy. Please contact your claim representative if you have any questions regarding coverage which may be available under your policy.

• State Farm® cannot authorize any contractor to proceed with work on your property. Repairs should proceed only with your authorization.

• State Farm does not guarantee the quality of the workmanship of any contractor or guarantee that the work will be accomplished within any specific time frame.

• It is understood that the contractor is hired by you, our insured, and that they work for you - not State Farm.

If you have any questions or need additional information regarding your claim, please contact your claim representative immediately.

11-31P1-54F

# & StateFarm®   **Building Estimate Summary Guide**

**This summary guide is based on a sample estimate and is provided for reference only.**
**Please refer to the estimate for specifics of your claim.**

---

### State Farm Insurance

| | | | |
|---|---|---|---|
| Insured: | Smith, Joe & Jane | Estimate: | 00-0000-000 |
| Property: | 1 Main Street | Claim number: | 00-0000-000 |
| | Anywhere, IL 00000-0000 | Policy Number: | 00-00-0000-0 |
| Type of Loss: | Other | Price List: | ILBL8F_MAR 13 |
| Deductible: | $1,000.00 | | Restoration/Service/ Remodel F = Factored In, D = Do Not Apply |

### Summary for Dwelling

| | | | |
|---|---|---|---|
| Line Item Total 1 | | | 5,953.10 |
| Material Sales Tax | @ | 10.000% x 1,520.00 | |
| Subtotal | | | 6,105.10 |
| General Contractor Overhead 2 | @ | 10.0% x 6,105.10 | 610.51 |
| General Contractor Profit | @ | 10.0% x 6,105.10 | |
| Replacement Cost Value (Including General Contractor Overhead and Profit 3 | | | 7,326.12 |
| Less Depreciation (Including Taxes) 4 | | | (832.50) |
| Less General Contractor Overhead & Profit on Recoverable & | | | |
| Non - recoverable Depreciation | | | (166.50) |
| Less Deductible 5 | | | |
| Net Actual Cash Value Payment 6 | | | |

### Maximum Additional Amounts Available If Incurred:

| | |
|---|---|
| Total Line Item Depreciation (Including Taxes) 4 | 832.50 |
| Less Non - recoverable Depreciation (Including Taxes) 7 | |
| Subtotal | 312.50 |
| General Contractor O&P on Depreciation | 166.50 |
| Less General Contractor O&P on Non - recoverable Depreciation | |
| Subtotal | |
| Total Maximum Additional Amounts Available If Incurred 8 | |
| Total Amount of Claim If Incurred 9 | |

---

Claim Representative

**ALL AMOUNTS PAYABLE ARE SUBJECT TO THE TERMS, CONDITIONS AND LIMITS OF YOUR POLICY.**

---

1. **Line Item Total –** Total value of all line items in the estimate plus possible adjustments for *labor minimums. Labor Minimum* is to cover a certain minimum number of hours for drive-time, set up time and applicable administrative costs and repairs.

2. **General Contractor's Overhead and Profit –** General contractor's charge for coordinating your repairs.

3. **Replacement Cost Value (RCV) –** Estimated cost to repair or replace damaged property.

4. **Depreciation –** The decrease in the value of property over a period of time due to wear, tear, condition, and obsolescence. A portion or all of this amount may be eligible for replacement cost benefits.

5. **Deductible –** The insurer will pay for losses, up to the policy limits, in excess of your applicable deductible.

6. **Net Actual Cash Value Payment (ACV) –** The repair or replacement cost of the damaged part of the property less *depreciation* and *deductible.*

7. **Non Recoverable Depreciation –** *Depreciation* applied to items that are not eligible for replacement cost benefits.

8. **Total Maximum Additional Amount if Incurred –** Total amount of recoverable depreciation after actual repair or replacement of the property.

9. **Total Amount of Claim if Incurred –** Total amount of the claim, including *net actual cash value payment and total maximum additional amount available if incurred.*

---

## State Farm

FRITZ, KIMBERLY                                                                              11-31P1-54F

| Insured: | FRITZ, KIMBERLY | Estimate: | 11-31P1-54F |
|---|---|---|---|
| Property: | 1278 CRUMBLEY RD | Claim Number: | 1131P154F |
| | MCDONOUGH, GA 30252-4427 | Policy Number: | 11E8J9038 |
| Home: | 404-944-3177 | Price List: | GAAT28_MAR22 |
| Cellular: | 404-944-3177 | | Restoration/Service/Remodel |
| Type of Loss: | Water Damage | | |
| Deductible: | $4,226.00 | | |
| Date of Loss: | 3/15/2022 | | |
| Date Inspected: | 3/31/2022 | | |

### Summary for Coverage A - Dwelling - 37 Water Damage and Freezing

| | |
|---|---|
| Line Item Total | 31,614.51 |
| Material Sales Tax | 951.52 |
| Subtotal | 32,566.03 |
| General Contractor Overhead | 3,256.69 |
| General Contractor Profit | 3,256.69 |
| Replacement Cost Value (Including General Contractor Overhead and Profit) | 39,079.41 |
| Less Deductible | (4,226.00) |
| Less Prior Claim Payment | (13,362.42) |
| Net Payment | $21,490.99 |

Sands, Shamaria

**ALL AMOUNTS PAYABLE ARE SUBJECT TO THE TERMS, CONDITIONS AND LIMITS OF YOUR POLICY.**

**State Farm**

FRITZ, KIMBERLY

11-31P1-54F

**11-31P1-54F**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | GCO&P | RCV |
|---|---|---|---|---|---|
| 1. Dumpster load - Approx. 20 yards, 4 tons of debris | 1.00 EA | 440.00 | 0.00 | 88.00 | 528.00 |
| **Total:  11-31P1-54F** | | | **0.00** | **88.00** | **528.00** |

**Main Level**



| Kitchen | | | | | Height: 8' |
|---|---|---|---|---|---|
| 395.11 SF Walls | | | 159.78 SF Ceiling | | |
| 554.89 SF Walls & Ceiling | | | 159.78 SF Floor | | |
| 53.00 LF Ceil. Perimeter | | | 48.67 LF Floor Perimeter | | |

| **Missing Wall - Goes to Floor** | | 4' 4" X 6' 8" | **Opens into HALL** | | |
|---|---|---|---|---|---|
| **Door** | | 1' 9" X 6' 8" | **Opens into PANTRY** | | |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | GCO&P | RCV |
|---|---|---|---|---|---|
| Floors | | | | | |
| 2. Vinyl floor covering (sheet goods) | 50.00 SF | 2.77 | 6.68 | 29.04 | 174.22 |
| 3. Tile floor covering - per specs from ind. tile analysis | 159.78 SF | 11.17 * | 51.13 | 367.16 | 2,203.03 |
| 4. Mortar bed for tile floors | 159.78 SF | 4.95 | 25.31 | 163.24 | 979.46 |
| 61. R&R Baseboard - 3 1/4" | 48.67 LF | 4.41 | 6.07 | 44.16 | 264.87 |
| 62. Paint baseboard - two coats | 48.67 LF | 1.46 | 0.54 | 14.32 | 85.92 |
| Walls | | | | | |
| 59. Texture drywall - light hand texture | 395.11 SF | 1.00 | 2.21 | 79.46 | 476.78 |
| 60. Paint the walls - one coat | 395.11 SF | 0.66 | 4.11 | 52.98 | 317.86 |
| 56. Detach & Reset Window drapery - hardware | 2.00 EA | 31.82 | 0.00 | 12.72 | 76.36 |
| Plumbing | | | | | |
| 63. Detach & Reset Sink - double basin | 1.00 EA | 188.07 | 0.05 | 37.64 | 225.76 |

**State Farm**

### CONTINUED - Kitchen

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | GCO&P | RCV |
|---|---|---|---|---|---|
| Cabinets | | | | | |
| 6. R&R Cabinetry - upper (wall) units | 12.00 LF | 161.37 | 101.39 | 407.56 | 2,445.39 |
| 7. R&R Cabinetry - lower (base) units | 12.00 LF | 225.51 | 162.96 | 573.82 | 3,442.90 |
| 64. R&R Countertop - post formed plastic laminate | 12.00 LF | 60.36 | 36.29 | 152.12 | 912.73 |
| 8. Toe kick - pre-finished wood - 1/2" | 3.20 LF | 10.44 | 1.11 | 6.90 | 41.42 |
| 66. Detach & Reset Cabinet knob or pull | 26.00 EA | 3.07 | 0.00 | 15.96 | 95.78 |
| Appliances | | | | | |
| 68. Detach & Reset Dishwasher | 1.00 EA | 260.73 | 0.00 | 52.14 | 312.87 |
| 69. Detach & Reset Refrigerator - top freezer - 14 to 18 cf | 1.00 EA | 42.30 | 0.00 | 8.46 | 50.76 |
| 70. Detach & Reset Range - freestanding - electric | 1.00 EA | 31.73 | 0.00 | 6.34 | 38.07 |
| 9. Content Manipulation charge - per hour | 4.00 HR | 39.43 | 0.00 | 31.54 | 189.26 |
| **Totals: Kitchen** | | | **397.85** | **2,055.56** | **12,333.44** |



| Dining | | Height: 8' |
|---|---|---|
| | 248.67 SF Walls | 120.00 SF Ceiling |
| | 368.67 SF Walls & Ceiling | 120.00 SF Floor |
| | 31.08 LF Ceil. Perimeter | 31.08 LF Floor Perimeter |

**Missing Wall**                    **2' 3" X 8'**                    **Opens into LIVING_ROOM**

**State Farm**

FRITZ, KIMBERLY                                                                                   11-31P1-54F

| Subroom: Hall (1) | | | | | Height: 8' |
|---|---|---|---|---|---|

|  | | |
|---|---|---|
| 223.11 SF Walls | | 65.07 SF Ceiling |
| 288.18 SF Walls & Ceiling | | 65.07 SF Floor |
| 31.50 LF Ceil. Perimeter | | 27.17 LF Floor Perimeter |

| **Missing Wall** | 10' 10" X 8' | **Opens into DINING** |
|---|---|---|
| **Missing Wall** | 3' 4" X 8' | **Opens into LIVING_ROOM** |
| **Missing Wall - Goes to Floor** | 4' 4" X 6' 8" | **Opens into KITCHEN** |
| **Door** | 2' 5" X 6' 8" | **Opens into BEDROOM_B** |
| **Door** | 2' 5" X 6' 8" | **Opens into BATH** |
| **Door** | 1' 3" X 6' 8" | **Opens into CLOSET** |
| **Door** | 2' 5" X 6' 8" | **Opens into BEDROOM_A1** |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | GCO&P | RCV |
|---|---|---|---|---|---|
| Floors | | | | | |
| 10. R&R Wood floor - per specs from independent wood analysis | 185.07 SF | 8.26 * | 49.45 | 315.64 | 1,893.77 |
| 79. Sand, stain, and finish wood floor | 185.07 SF | 3.78 | 15.25 | 142.98 | 857.79 |
| 80. Add for dustless floor sanding | 185.07 SF | 1.01 | 0.00 | 37.38 | 224.30 |
| 78. Vapor barrier - 15# felt | 185.07 SF | 0.22 | 0.74 | 8.28 | 49.74 |
| Hardware | | | | | |
| 73. R&R Casing - 5" - hardwood | 19.00 LF | 7.03 | 7.54 | 28.22 | 169.33 |
| 11. R&R Baseboard - 3 1/4" | 48.83 LF | 4.41 | 6.09 | 44.30 | 265.73 |
| 74. R&R Quarter round - 3/4" | 58.25 LF | 1.95 | 3.31 | 23.38 | 140.28 |
| 72. Paint casing - oversized - one coat | 0.00 LF | 1.06 | 0.00 | 0.00 | 0.00 |
| 12. Paint baseboard - two coats | 58.25 LF | 1.46 | 0.65 | 17.16 | 102.86 |
| 75. Seal & paint base shoe or quarter round | 58.25 LF | 0.80 | 0.51 | 9.42 | 56.53 |
| 76. Seal & paint trim - two coats | 148.00 LF | 1.44 | 1.42 | 42.90 | 257.44 |

**CONTINUED - Dining**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | GCO&P | RCV |
|---|---|---|---|---|---|
| 13. Content Manipulation charge - per hour | 2.00 HR | 39.43 | 0.00 | 15.78 | 94.64 |
| **Totals: Dining** | | | **84.96** | **685.44** | **4,112.41** |



| **Bedroom B** | | | | | **Height: 8'** |
|---|---|---|---|---|---|
| | 330.67 SF Walls | | | 106.33 SF Ceiling | |
| | 437.00 SF Walls & Ceiling | | | 106.33 SF Floor | |
| | 41.33 LF Ceil. Perimeter | | | 41.33 LF Floor Perimeter | |

**Door**                     2' 5" X 6' 8"          **Opens into HALL**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | GCO&P | RCV |
|---|---|---|---|---|---|
| 14. R&R Wood floor - per specs from independent wood analysis | 106.33 SF | 8.26 * | 28.41 | 181.34 | 1,088.04 |
| 84. Sand, stain, and finish wood floor | 106.33 SF | 3.78 | 8.76 | 82.14 | 492.83 |
| 85. Add for dustless floor sanding | 106.33 SF | 1.01 | 0.00 | 21.48 | 128.87 |
| 86. Vapor barrier - 15# felt | 106.33 SF | 0.22 | 0.43 | 4.76 | 28.58 |
| Walls | | | | | |
| 15. Paint the walls and ceiling - two coats | 437.00 SF | 0.98 | 8.74 | 87.40 | 524.40 |
| Hardware | | | | | |
| 81. Baseboard - 3 1/4" | 26.00 LF | 3.95 | 3.24 | 21.18 | 127.12 |
| 82. Paint baseboard - two coats | 41.33 LF | 1.46 | 0.46 | 12.16 | 72.96 |
| 83. Paint door slab only - 2 coats (per side) | 1.00 EA | 37.67 | 0.65 | 7.68 | 46.00 |

**CONTINUED - Bedroom B**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | GCO&P | RCV |
|---|---|---|---|---|---|
| 16. Content Manipulation charge - per hour | 2.00 HR | 39.43 | 0.00 | 15.78 | 94.64 |
| **Totals: Bedroom B** | | | **50.69** | **433.92** | **2,603.44** |



| Bedroom A | | | | | Height: 8' |
|---|---|---|---|---|---|
| | 348.00 SF Walls | | | 118.22 SF Ceiling | |
| | 466.22 SF Walls & Ceiling | | | 118.22 SF Floor | |
| | 43.50 LF Ceil. Perimeter | | | 43.50 LF Floor Perimeter | |

| Door | | 2' 5" X 6' 8" | Opens into HALL | | |
|---|---|---|---|---|---|
| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | GCO&P | RCV |

Floors

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | GCO&P | RCV |
|---|---|---|---|---|---|
| 17. R&R Wood floor - per specs from independent wood analysis | 118.22 SF | 8.26 * | 31.59 | 201.62 | 1,209.71 |
| 87. Sand, stain, and finish wood floor | 118.22 SF | 3.78 | 9.74 | 91.32 | 547.93 |
| 88. Add for dustless floor sanding | 118.22 SF | 1.01 | 0.00 | 23.88 | 143.28 |
| 89. Vapor barrier - 15# felt | 118.22 SF | 0.22 | 0.47 | 5.30 | 31.78 |
| Walls | | | | | |
| 20. Paint the walls and ceiling - two coats | 466.22 SF | 0.98 | 9.32 | 93.24 | 559.46 |
| Hardware | | | | | |
| 90. Baseboard - 3 1/4" | 26.00 LF | 3.95 | 3.24 | 21.18 | 127.12 |
| 91. Paint baseboard - two coats | 43.50 LF | 1.46 | 0.49 | 12.80 | 76.80 |

**State Farm**

**CONTINUED - Bedroom A**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | GCO&P | RCV |
|---|---|---|---|---|---|
| 92. Paint door slab only - 2 coats (per side) | 1.00 EA | 37.67 | 0.65 | 7.68 | 46.00 |
| 21. Content Manipulation charge - per hour | 1.00 HR | 39.43 | 0.00 | 7.88 | 47.31 |
| **Totals: Bedroom A** | | | **55.50** | **464.90** | **2,789.39** |



| Bath | | | | | Height: 8' |
|---|---|---|---|---|---|
| | 246.67 SF Walls | | | 56.21 SF Ceiling | |
| | 302.88 SF Walls & Ceiling | | | 56.21 SF Floor | |
| | 30.83 LF Ceil. Perimeter | | | 30.83 LF Floor Perimeter | |

**Door**                          **2' 5" X 6' 8"**                 **Opens into HALL**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | GCO&P | RCV |
|---|---|---|---|---|---|
| 22. R&R Tile floor covering - per specs from ind. tile analysis | 13.00 SF | 13.69 * | 4.16 | 36.44 | 218.57 |
| 23. Mortar bed for tile floors | 56.21 SF | 4.95 | 8.90 | 57.42 | 344.56 |
| 24. Vinyl floor covering (sheet goods) | 12.00 SF | 2.77 | 1.60 | 6.96 | 41.80 |
| 25. Toe kick - unfinished wood - 1/2" | 2.58 LF | 9.52 | 0.73 | 5.06 | 30.35 |
| Walls | | | | | |
| 93. Paint the walls - one coat | 246.67 SF | 0.66 | 2.57 | 33.08 | 198.45 |
| Hardware | | | | | |
| 104. Vanity | 3.00 LF | 221.71 | 41.64 | 141.34 | 848.11 |
| 105. Detach & Reset Vanity top - one sink - cultured marble | 0.00 LF | 52.49 | 0.00 | 0.00 | 0.00 |

**CONTINUED - Bath**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | GCO&P | RCV |
|---|---|---|---|---|---|
| 94. R&R Baseboard - 3 1/4" | 24.00 LF | 4.41 | 3.00 | 21.76 | 130.60 |
| 96. R&R Interior door unit | 1.00 EA | 300.34 | 16.80 | 63.44 | 380.58 |
| 100. Detach & Reset Door knob - interior | 1.00 EA | 21.24 | 0.00 | 4.24 | 25.48 |
| 97. Paint door slab only - 2 coats (per side) | 1.00 EA | 37.67 | 0.65 | 7.68 | 46.00 |
| 98. Paint door or window opening - 2 coats (per side) | 1.00 EA | 31.52 | 0.39 | 6.38 | 38.29 |
| 99. Paint door/window trim & jamb - 2 coats (per side) | 1.00 EA | 31.52 | 0.39 | 6.38 | 38.29 |
| 95. Paint baseboard - one coat | 24.00 LF | 0.96 | 0.17 | 4.64 | 27.85 |
| Plumbing | | | | | |
| 103. Detach & Reset Toilet | 1.00 EA | 271.75 | 0.60 | 54.48 | 326.83 |
| **Totals: Bath** | | | **81.60** | **449.30** | **2,695.76** |



| Pantry | | | | | Height: 8' |
|---|---|---|---|---|---|

| 81.33 SF Walls | 6.42 SF Ceiling |
|---|---|
| 87.75 SF Walls & Ceiling | 6.42 SF Floor |
| 10.17 LF Ceil. Perimeter | 10.17 LF Floor Perimeter |

| Door | | 1' 9" X 6' 8" | Opens into KITCHEN | | |
|---|---|---|---|---|---|
| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | GCO&P | RCV |
| Floors | | | | | |
| 26. Tile floor covering - per specs from ind. tile analysis | 1.00 SF | 11.17 * | 0.32 | 2.30 | 13.79 |
| 27. Mortar bed for tile floors | 6.42 SF | 4.95 | 1.02 | 6.56 | 39.36 |

**State Farm**

## CONTINUED - Pantry

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | GCO&P | RCV |
|---|---|---|---|---|---|
| Walls | | | | | |
| 108. Paint the walls - one coat | 81.33 SF | 0.66 | 0.85 | 10.92 | 65.45 |
| Hardware | | | | | |
| 109. Baseboard - 3 1/4" | 10.17 LF | 3.95 | 1.27 | 8.30 | 49.74 |
| 110. Paint baseboard - one coat | 10.17 LF | 0.96 | 0.07 | 1.98 | 11.81 |
| 111. R&R Interior door unit | 1.00 EA | 300.34 | 16.80 | 63.44 | 380.58 |
| 112. Detach & Reset Door knob - interior | 1.00 EA | 21.24 | 0.00 | 4.24 | 25.48 |
| 113. Paint door slab only - 2 coats (per side) | 1.00 EA | 37.67 | 0.65 | 7.68 | 46.00 |
| 114. Paint door or window opening - 2 coats (per side) | 1.00 EA | 31.52 | 0.39 | 6.38 | 38.29 |
| 115. Paint door/window trim & jamb - 2 coats (per side) | 1.00 EA | 31.52 | 0.39 | 6.38 | 38.29 |
| 116. Seal & paint closet shelving - single shelf | 1.00 EA | 51.88 | 0.36 | 10.46 | 62.70 |
| **Totals: Pantry** | | | **22.12** | **128.64** | **771.49** |



| Closet | | | | | Height: 8' |
|---|---|---|---|---|---|
| | 69.33 SF Walls | | 4.63 SF Ceiling | | |
| | 73.97 SF Walls & Ceiling | | 4.63 SF Floor | | |
| | 8.67 LF Ceil. Perimeter | | 8.67 LF Floor Perimeter | | |

| Door | | 1' 3" X 6' 8" | Opens into HALL | | |
|---|---|---|---|---|---|
| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | GCO&P | RCV |

Floors

## State Farm

FRITZ, KIMBERLY

11-31P1-54F

### CONTINUED - Closet

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | GCO&P | RCV |
|---|---|---|---|---|---|
| 28. Carpet | 4.63 SF | 2.87 | 0.80 | 2.82 | 16.91 |
| 29. Carpet pad | 4.63 SF | 0.61 | 0.19 | 0.60 | 3.61 |
| Walls | | | | | |
| 117. Paint the walls - one coat | 69.33 SF | 0.66 | 0.72 | 9.30 | 55.78 |
| Hardware | | | | | |
| 118. Baseboard - 3 1/4" | 8.67 LF | 3.95 | 1.08 | 7.08 | 42.41 |
| 119. Paint baseboard - one coat | 8.67 LF | 0.96 | 0.06 | 1.68 | 10.06 |
| 120. R&R Interior door unit | 1.00 EA | 300.34 | 16.80 | 63.44 | 380.58 |
| 121. Detach & Reset Door knob - interior | 1.00 EA | 21.24 | 0.00 | 4.24 | 25.48 |
| 122. Paint door slab only - 2 coats (per side) | 1.00 EA | 37.67 | 0.65 | 7.68 | 46.00 |
| 123. Paint door or window opening - 2 coats (per side) | 1.00 EA | 31.52 | 0.39 | 6.38 | 38.29 |
| 124. Paint door/window trim & jamb - 2 coats (per side) | 1.00 EA | 31.52 | 0.39 | 6.38 | 38.29 |
| 125. Seal & paint closet shelving - single shelf | 1.00 EA | 51.88 | 0.36 | 10.46 | 62.70 |
| **Totals: Closet** | | | **21.44** | **120.06** | **720.11** |



| Living Room | | | Height: 8' |
|---|---|---|---|
| | 531.44 SF Walls | 366.54 SF Ceiling | |
| | 897.99 SF Walls & Ceiling | 366.54 SF Floor | |
| | 69.42 LF Ceil. Perimeter | 65.83 LF Floor Perimeter | |

| **Missing Wall** | 3' 6" X 8' | **Opens into HALL** |
|---|---|---|
| **Missing Wall** | 2' 3" X 8' | **Opens into DINING** |
| **Missing Wall** | 3' 2" X 8' | **Opens into STAIRS** |

| Subroom: Hall (1) | | | Height: 8' |
|---|---|---|---|
| | 186.78 SF Walls | 38.65 SF Ceiling | |
| | 225.42 SF Walls & Ceiling | 38.65 SF Floor | |
| | 26.33 LF Ceil. Perimeter | 22.75 LF Floor Perimeter | |

| **Missing Wall - Goes to Floor** | 3' 7" X 6' 8" | **Opens into LIVING_ROOM** |
|---|---|---|

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | GCO&P | RCV |
|---|---|---|---|---|---|
| Floors | | | | | |
| 30. R&R Wood floor - per specs from independent wood analysis | 405.19 SF | 8.26 * | 108.27 | 691.04 | 4,146.18 |
| 129. Sand, stain, and finish wood floor | 405.19 SF | 3.78 | 33.39 | 313.00 | 1,878.01 |
| 130. Add for dustless floor sanding | 405.19 SF | 1.01 | 0.00 | 81.84 | 491.08 |
| 131. Vapor barrier - 15# felt | 405.19 SF | 0.22 | 1.62 | 18.14 | 108.90 |
| Hardware | | | | | |
| 126. R&R Casing - 5" - hardwood | 19.00 LF | 7.03 | 7.54 | 28.22 | 169.33 |
| 127. Paint casing - oversized - one coat | 0.00 LF | 1.06 | 0.00 | 0.00 | 0.00 |
| Walls | | | | | |
| 128. Paint the walls and ceiling - two coats | 1,123.41 SF | 0.98 | 22.47 | 224.68 | 1,348.09 |
| 132. Paint baseboard - one coat | 88.58 LF | 0.96 | 0.64 | 17.12 | 102.80 |

**State Farm**

FRITZ, KIMBERLY

11-31P1-54F

**CONTINUED - Living Room**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | GCO&P | RCV |
|---|---|---|---|---|---|
| 31. Content Manipulation charge - per hour | 4.00 HR | 39.43 | 0.00 | 31.54 | 189.26 |
| **Totals: Living Room** | | | **173.93** | **1,405.58** | **8,433.65** |

| | **Stairs** | | | | **Height: 15' 6"** |
|---|---|---|---|---|---|



126.75 SF Walls
160.53 SF Walls & Ceiling
10.83 LF Ceil. Perimeter

33.78 SF Ceiling
58.97 SF Floor
12.89 LF Floor Perimeter

| **Missing Wall** | | 3' 2" X 15' 5 15/16" | **Opens into Exterior** | | |
|---|---|---|---|---|---|
| **Missing Wall** | | 3' 2" X 15' 5 15/16" | **Opens into LIVING_ROOM** | | |
| **Missing Wall** | | 10' 6" X 15' 5 15/16" | **Opens into Exterior** | | |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | GCO&P | RCV |
|---|---|---|---|---|---|
| 133. Paint baseboard - one coat | 12.89 LF | 0.96 | 0.09 | 2.50 | 14.96 |
| **Totals: Stairs** | | | **0.09** | **2.50** | **14.96** |

Area Totals: Main Level

2,787.86 SF Walls
1,100.81 SF Floor
1,100.81 Floor Area
1,431.00 Exterior Wall Area

1,075.62 SF Ceiling
1,164.93 Total Area
159.00 Exterior Perimeter
of Walls

3,863.49 SF Walls and Ceiling
342.89 LF Floor Perimeter
356.67 LF Ceil. Perimeter
2,661.11 Interior Wall Area

| **Total: Main Level** | | | **888.18** | **5,745.90** | **34,474.65** |
|---|---|---|---|---|---|

**Basement**

## State Farm

FRITZ, KIMBERLY

11-31P1-54F



| Storage | | | | | Height: 8' |
|---|---|---|---|---|---|
| | 578.67 SF Walls | | | 316.98 SF Ceiling | |
| | 895.65 SF Walls & Ceiling | | | 316.98 SF Floor | |
| | 72.33 LF Ceil. Perimeter | | | 72.33 LF Floor Perimeter | |

**Door**      2' 11" X 6' 8"      **Opens into BEDROOM**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | GCO&P | RCV |
|---|---|---|---|---|---|
| Ceiling | | | | | |
| 32. 1/2" drywall - hung, taped, ready for texture | 316.98 SF | 2.46 | 14.96 | 158.96 | 953.69 |
| 34. Seal & paint acoustic ceiling (popcorn) texture | 316.98 SF | 1.25 | 8.37 | 80.92 | 485.52 |
| Walls- No damage to the walls in Storage area | | | | | |
| 36. Content Manipulation charge - per hour | 3.00 HR | 39.43 | 0.00 | 23.66 | 141.95 |
| **Totals: Storage** | | | **23.33** | **263.54** | **1,581.16** |



| Bedroom | | | | | Height: 8' |
|---|---|---|---|---|---|
| | 516.00 SF Walls | | | 258.56 SF Ceiling | |
| | 774.56 SF Walls & Ceiling | | | 258.56 SF Floor | |
| | 64.50 LF Ceil. Perimeter | | | 64.50 LF Floor Perimeter | |

**Door**      2' 11" X 6' 8"      **Opens into STORAGE**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | GCO&P | RCV |
|---|---|---|---|---|---|
| Ceiling | | | | | |
| 134. 1/2" drywall - hung, taped, ready for texture | 290.56 SF | 2.46 | 13.71 | 145.70 | 874.19 |
| 135. Seal & paint acoustic ceiling (popcorn) texture | 258.56 SF | 1.25 | 6.83 | 66.00 | 396.03 |
| Hardware | | | | | |
| 37. Baseboard - 3 1/4" | 64.50 LF | 3.95 | 8.05 | 52.58 | 315.41 |

**CONTINUED - Bedroom**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | GCO&P | RCV |
|---|---|---|---|---|---|
| 38. Paint baseboard - one coat | 64.50 LF | 0.96 | 0.46 | 12.48 | 74.86 |
| 39. Content Manipulation charge - per hour | 3.00 HR | 39.43 | 0.00 | 23.66 | 141.95 |
| Walls | | | | | |
| 42. Paint the walls - two coats | 516.00 SF | 0.98 | 10.32 | 103.20 | 619.20 |
| 41. Seal the surface area w/latex based stain blocker - one coat | 100.00 SF | 0.61 | 0.64 | 12.32 | 73.96 |
| **Totals: Bedroom** | | | **40.01** | **415.94** | **2,495.60** |

Area Totals: Basement

| | | |
|---|---|---|
| 1,094.67 SF Walls | 575.53 SF Ceiling | 1,670.20 SF Walls and Ceiling |
| 575.53 SF Floor | 616.03 Total Area | 136.83 LF Floor Perimeter |
| 575.53 Floor Area | 105.50 Exterior Perimeter of Walls | 136.83 LF Ceil. Perimeter |
| 949.50 Exterior Wall Area | | 1,094.67 Interior Wall Area |

| **Total: Basement** | | | **63.34** | **679.48** | **4,076.76** |
|---|---|---|---|---|---|

| **Line Item Totals: 11-31P1-54F** | | | **951.52** | **6,513.38** | **39,079.41** |
|---|---|---|---|---|---|

## Grand Total Areas:

| | | |
|---|---|---|
| 3,882.53 SF Walls | 1,651.16 SF Ceiling | 5,533.69 SF Walls and Ceiling |
| 1,676.35 SF Floor | | 479.72 LF Floor Perimeter |
| | | 493.50 LF Ceil. Perimeter |
| 1,676.35 Floor Area | 1,780.97 Total Area | 3,755.78 Interior Wall Area |
| 2,380.50 Exterior Wall Area | 264.50 Exterior Perimeter of Walls | |

## Trade Summary

Includes all applicable Tax, General Contractor O&P, and Labor Minimums

| DESCRIPTION | LINE ITEM QTY | REPL. COST TOTAL | GCO&P | ACV | NON-REC. DEPREC. | MAX ADDL. AMT AVAIL. |
|---|---|---|---|---|---|---|
| **APP      APPLIANCES** | | | | | | |
| Detach & Reset Dishwasher | 1.00 EA | $312.87 | $52.14 | $312.87 | $0.00 | $0.00 |
| Detach & Reset Refrigerator - top freezer - 14 to 18 cf | 1.00 EA | $50.76 | $8.46 | $50.76 | $0.00 | $0.00 |
| Detach & Reset Range - freestanding - electric | 1.00 EA | $38.07 | $6.34 | $38.07 | $0.00 | $0.00 |
| **TOTAL APPLIANCES** | | **$401.70** | **$66.94** | **$401.70** | **$0.00** | **$0.00** |
| **CAB      CABINETRY** | | | | | | |
| R&R Countertop - post formed plastic laminate | 12.00 LF | $912.73 | $152.12 | $912.73 | $0.00 | $0.00 |
| Detach & Reset Cabinet knob or pull | 26.00 EA | $95.78 | $15.96 | $95.78 | $0.00 | $0.00 |
| R&R Cabinetry - lower (base) units | 12.00 LF | $3,442.90 | $573.82 | $3,442.90 | $0.00 | $0.00 |
| Toe kick - pre-finished wood - 1/2" | 3.20 LF | $41.42 | $6.90 | $41.42 | $0.00 | $0.00 |
| Toe kick - unfinished wood - 1/2" | 2.58 LF | $30.35 | $5.06 | $30.35 | $0.00 | $0.00 |
| R&R Cabinetry - upper (wall) units | 12.00 LF | $2,445.39 | $407.56 | $2,445.39 | $0.00 | $0.00 |
| Vanity | 3.00 LF | $848.11 | $141.34 | $848.11 | $0.00 | $0.00 |
| **TOTAL CABINETRY** | | **$7,816.68** | **$1,302.76** | **$7,816.68** | **$0.00** | **$0.00** |
| **CON      CONTENT MANIPULATION** | | | | | | |
| Content Manipulation charge - per hour | 19.00 HR | $899.01 | $149.84 | $899.01 | $0.00 | $0.00 |
| **TOTAL CONTENT MANIPULATION** | | **$899.01** | **$149.84** | **$899.01** | **$0.00** | **$0.00** |
| **DMO      GENERAL DEMOLITION** | | | | | | |
| Dumpster load - Approx. 20 yards, 4 tons of debris | 1.00 EA | $528.00 | $88.00 | $528.00 | $0.00 | $0.00 |
| **TOTAL GENERAL DEMOLITION** | | **$528.00** | **$88.00** | **$528.00** | **$0.00** | **$0.00** |
| **DOR      DOORS** | | | | | | |
| R&R Interior door unit | 3.00 EA | $1,141.74 | $190.32 | $1,141.74 | $0.00 | $0.00 |
| **TOTAL DOORS** | | **$1,141.74** | **$190.32** | **$1,141.74** | **$0.00** | **$0.00** |
| **DRY      DRYWALL** | | | | | | |
| 1/2" drywall - hung, taped, ready for texture | 607.54 SF | $1,827.88 | $304.66 | $1,827.88 | $0.00 | $0.00 |
| Texture drywall - light hand texture | 395.11 SF | $476.78 | $79.46 | $476.78 | $0.00 | $0.00 |
| **TOTAL DRYWALL** | | **$2,304.66** | **$384.12** | **$2,304.66** | **$0.00** | **$0.00** |
| **FCC      FLOOR COVERING - CARPET** | | | | | | |
| Carpet | 4.63 SF | $16.91 | $2.82 | $16.91 | $0.00 | $0.00 |
| Carpet pad | 4.63 SF | $3.61 | $0.60 | $3.61 | $0.00 | $0.00 |
| **TOTAL FLOOR COVERING - CARPET** | | **$20.52** | **$3.42** | **$20.52** | **$0.00** | **$0.00** |
| **FCT      FLOOR COVERING - CERAMIC TILE** | | | | | | |

Note: Slight variances may be found within report sections due to rounding

## Trade Summary

Includes all applicable Tax, General Contractor O&P, and Labor Minimums

| DESCRIPTION | LINE ITEM QTY | REPL. COST TOTAL | GCO&P | ACV | NON-REC. DEPREC. | MAX ADDL. AMT AVAIL. |
|---|---|---|---|---|---|---|
| **FCT      FLOOR COVERING - CERAMIC TILE** | | | | | | |
| Mortar bed for tile floors | 222.41 SF | $1,363.38 | $227.22 | $1,363.38 | $0.00 | $0.00 |
| R&R Tile floor covering - per specs from ind. tile analysis | 13.00 SF | $218.57 | $36.44 | $218.57 | $0.00 | $0.00 |
| Tile floor covering - per specs from ind. tile analysis | 160.78 SF | $2,216.82 | $369.46 | $2,216.82 | $0.00 | $0.00 |
| **TOTAL FLOOR COVERING - CERAMIC TILE** | | **$3,798.77** | **$633.12** | **$3,798.77** | **$0.00** | **$0.00** |
| **FCV      FLOOR COVERING - VINYL** | | | | | | |
| Vinyl floor covering (sheet goods) | 62.00 SF | $216.02 | $36.00 | $216.02 | $0.00 | $0.00 |
| **TOTAL FLOOR COVERING - VINYL** | | **$216.02** | **$36.00** | **$216.02** | **$0.00** | **$0.00** |
| **FCW      FLOOR COVERING - WOOD** | | | | | | |
| Vapor barrier - 15# felt | 814.81 SF | $219.00 | $36.48 | $219.00 | $0.00 | $0.00 |
| Sand, stain, and finish wood floor | 814.81 SF | $3,776.56 | $629.44 | $3,776.56 | $0.00 | $0.00 |
| Add for dustless floor sanding | 814.81 SF | $987.53 | $164.58 | $987.53 | $0.00 | $0.00 |
| R&R Wood floor - per specs from independent wood analysis | 814.81 SF | $8,337.70 | $1,389.64 | $8,337.70 | $0.00 | $0.00 |
| **TOTAL FLOOR COVERING - WOOD** | | **$13,320.79** | **$2,220.14** | **$13,320.79** | **$0.00** | **$0.00** |
| **FNC      FINISH CARPENTRY / TRIMWORK** | | | | | | |
| R&R Baseboard - 3 1/4" | 121.50 LF | $661.20 | $110.22 | $661.20 | $0.00 | $0.00 |
| Baseboard - 3 1/4" | 135.34 LF | $661.80 | $110.32 | $661.80 | $0.00 | $0.00 |
| R&R Casing - 5" - hardwood | 38.00 LF | $338.66 | $56.44 | $338.66 | $0.00 | $0.00 |
| R&R Quarter round - 3/4" | 58.25 LF | $140.28 | $23.38 | $140.28 | $0.00 | $0.00 |
| **TOTAL FINISH CARPENTRY / TRIMWORK** | | **$1,801.94** | **$300.36** | **$1,801.94** | **$0.00** | **$0.00** |
| **FNH      FINISH HARDWARE** | | | | | | |
| Detach & Reset Door knob - interior | 3.00 EA | $76.44 | $12.72 | $76.44 | $0.00 | $0.00 |
| **TOTAL FINISH HARDWARE** | | **$76.44** | **$12.72** | **$76.44** | **$0.00** | **$0.00** |
| **MBL      MARBLE - CULTURED OR NATURAL** | | | | | | |
| Detach & Reset Vanity top - one sink - cultured marble | 0.00 LF | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| **TOTAL MARBLE - CULTURED OR NATURAL** | | **$0.00** | **$0.00** | **$0.00** | **$0.00** | **$0.00** |
| **PLM      PLUMBING** | | | | | | |
| Detach & Reset Sink - double basin | 1.00 EA | $225.76 | $37.64 | $225.76 | $0.00 | $0.00 |
| Detach & Reset Toilet | 1.00 EA | $326.83 | $54.48 | $326.83 | $0.00 | $0.00 |
| **TOTAL PLUMBING** | | **$552.59** | **$92.12** | **$552.59** | **$0.00** | **$0.00** |
| **PNT      PAINTING** | | | | | | |

Note: Slight variances may be found within report sections due to rounding

## Trade Summary

Includes all applicable Tax, General Contractor O&P, and Labor Minimums

| DESCRIPTION | LINE ITEM QTY | REPL. COST TOTAL | GCO&P | ACV | NON-REC. DEPREC. | MAX ADDL. AMT AVAIL. |
|---|---|---|---|---|---|---|
| **PNT    PAINTING** | | | | | | |
| Seal & paint acoustic ceiling (popcorn) texture | 575.54 SF | $881.55 | $146.92 | $881.55 | $0.00 | $0.00 |
| Paint baseboard - one coat | 208.81 LF | $242.34 | $40.40 | $242.34 | $0.00 | $0.00 |
| Paint baseboard - two coats | 191.75 LF | $338.54 | $56.44 | $338.54 | $0.00 | $0.00 |
| Paint casing - oversized - one coat | 0.00 LF | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Seal & paint closet shelving - single shelf | 2.00 EA | $125.40 | $20.92 | $125.40 | $0.00 | $0.00 |
| Paint door slab only - 2 coats (per side) | 5.00 EA | $230.00 | $38.40 | $230.00 | $0.00 | $0.00 |
| Paint door/window trim & jamb - 2 coats (per side) | 3.00 EA | $114.87 | $19.14 | $114.87 | $0.00 | $0.00 |
| Paint door or window opening - 2 coats (per side) | 3.00 EA | $114.87 | $19.14 | $114.87 | $0.00 | $0.00 |
| Paint the walls - one coat | 792.44 SF | $637.54 | $106.28 | $637.54 | $0.00 | $0.00 |
| Paint  - two coats | 2,542.63 SF | $3,051.15 | $508.52 | $3,051.15 | $0.00 | $0.00 |
| Seal the surface area w/latex based stain blocker - one coat | 100.00 SF | $73.96 | $12.32 | $73.96 | $0.00 | $0.00 |
| Seal & paint base shoe or quarter round | 58.25 LF | $56.53 | $9.42 | $56.53 | $0.00 | $0.00 |
| Seal & paint trim - two coats | 148.00 LF | $257.44 | $42.90 | $257.44 | $0.00 | $0.00 |
| **TOTAL PAINTING** | | **$6,124.19** | **$1,020.80** | **$6,124.19** | **$0.00** | **$0.00** |
| **WDT    WINDOW TREATMENT** | | | | | | |
| Detach & Reset Window drapery - hardware | 2.00 EA | $76.36 | $12.72 | $76.36 | $0.00 | $0.00 |
| **TOTAL WINDOW TREATMENT** | | **$76.36** | **$12.72** | **$76.36** | **$0.00** | **$0.00** |
| **TOTALS** | | **$39,079.41** | **$6,513.38** | **$39,079.41** | **$0.00** | **$0.00** |

Note:  Slight variances may be found within report sections due to rounding

Date:    10/7/2022 1:43 PM

**State Farm**

FRITZ, KIMBERLY

11-31P1-54F

### Recap of Taxes, Overhead and Profit

|  | GC Overhead (10%) | GC Profit (10%) | Material Sales Tax (8%) | Storage Rental Tax (8%) | Local Food Tax (4%) |
|---|---|---|---|---|---|
| **Line Items** | 3,256.69 | 3,256.69 | 951.52 | 0.00 | 0.00 |
| **Total** | 3,256.69 | 3,256.69 | 951.52 | 0.00 | 0.00 |

## State Farm

FRITZ, KIMBERLY

## Recap by Room

| | | |
|---|---:|---:|
| **Estimate: 11-31P1-54F** | 440.00 | 1.39% |
| **Area: Main Level** | | |
| Kitchen | 9,880.03 | 31.25% |
| Dining | 3,342.01 | 10.57% |
| Bedroom B | 2,118.83 | 6.70% |
| Bedroom A | 2,268.99 | 7.18% |
| Bath | 2,164.86 | 6.85% |
| Pantry | 620.73 | 1.96% |
| Closet | 578.61 | 1.83% |
| Living Room | 6,854.14 | 21.68% |
| Stairs | 12.37 | 0.04% |
| **Area Subtotal: Main Level** | 27,840.57 | 88.06% |
| **Area: Basement** | | |
| Storage | 1,294.29 | 4.09% |
| Bedroom | 2,039.65 | 6.45% |
| **Area Subtotal: Basement** | 3,333.94 | 10.55% |
| **Subtotal of Areas** | 31,614.51 | 100.00% |
| **Total** | 31,614.51 | 100.00% |

## State Farm

### Recap by Category

| General Contractor O&P Items | Total | % |
|---|---|---|
| **APPLIANCES** | 334.76 | 0.86% |
| **CABINETRY** | 6,169.80 | 15.79% |
| **CONTENT MANIPULATION** | 749.17 | 1.92% |
| **GENERAL DEMOLITION** | 440.00 | 1.13% |
| **DOORS** | 901.02 | 2.31% |
| **DRYWALL** | 1,889.66 | 4.84% |
| **FLOOR COVERING - CARPET** | 16.11 | 0.04% |
| **FLOOR COVERING - CERAMIC TILE** | 3,074.81 | 7.87% |
| **FLOOR COVERING - VINYL** | 171.74 | 0.44% |
| **FLOOR COVERING - WOOD** | 10,812.53 | 27.67% |
| **FINISH CARPENTRY / TRIMWORK** | 1,451.15 | 3.71% |
| **FINISH HARDWARE** | 63.72 | 0.16% |
| **PLUMBING** | 459.82 | 1.18% |
| **PAINTING** | 5,016.58 | 12.84% |
| **WINDOW TREATMENT** | 63.64 | 0.16% |
| **General Contractor O&P Items Subtotal** | 31,614.51 | 80.90% |
| **Material Sales Tax** | 951.52 | 2.43% |
| **General Contractor Overhead** | 3,256.69 | 8.33% |
| **General Contractor Profit** | 3,256.69 | 8.33% |
| **Total** | 39,079.41 | 100.00% |

## State Farm

## Time & Material Breakdown

| General Contractor O&P Items | Quantity | Unit Price | Total Cost |
|---|---|---|---|
| **APPLIANCES** | | | |
| Contractor Labor - | | | |
| General Laborer | 1.88 HR | 39.430 | 74.03* |
| Plumber | 2.09 HR | 125.000 | 260.73* |
| | | **Labor:** | **334.76** |
| | | **APPLIANCES Subtotal:** | **334.76** |
| **CABINETRY** | | | |
| Material - | | | |
| Construction adhesive | 0.06 TB | 5.590 | 0.34 |
| 4d finish nails (based on 5 lb box) | 0.03 LB | 2.898 | 0.08* |
| Toe kick - unfinished wood - 1/2" | 2.87 LF | 3.120 | 8.94* |
| Toe kick - pre-finished wood - 1/2" | 3.55 LF | 3.852 | 13.69* |
| Countertop - post formed | 12.25 LF | 36.900 | 451.90* |
| Silicone caulk - 10 oz tube | 0.23 TB | 7.490 | 1.70* |
| Cabinetry - upper unit | 12.00 LF | 105.612 | 1,267.32* |
| Cabinetry - lower unit | 12.00 LF | 169.745 | 2,037.00* |
| Vanity | 3.00 LF | 173.498 | 520.50* |
| | | **Material:** | **4,301.47** |
| Contractor Labor - | | | |
| Demolition Laborer | 5.07 HR | 45.610 | 231.24 |
| Carpenter - Finish, Trim/Cabinet | 17.90 HR | 90.380 | 1,617.60* |
| Carpenter - Finish, Trim/Cabinet | 0.21 HR | 92.020 | 19.49* |
| | | **Labor:** | **1,868.33** |
| | | **CABINETRY Subtotal:** | **6,169.80** |
| **CONTENT MANIPULATION** | | | |
| Contractor Labor - | | | |
| General Laborer | 19.00 HR | 39.430 | 749.17 |
| | | **Labor:** | **749.17** |
| | | **CONTENT MANIPULATION Subtotal:** | **749.17** |
| **GENERAL DEMOLITION** | | | |
| Equipment - | | | |
| Dumpster - Approx. 20 yds, 4 ton of debris | 1.00 LO | 440.000 | 440.00 |
| | | **Equipment:** | **440.00** |
| | | **GENERAL DEMOLITION Subtotal:** | **440.00** |
| **DOORS** | | | |
| Material - | | | |
| 6d finish nails (based on 5 lb box) | 0.45 LB | 3.120 | 1.41* |
| Interior door - Colonist - pre-hung unit | 3.00 EA | 134.703 | 404.10* |
| Casing - 3 1/4" | 112.78 LF | 1.980 | 223.31* |
| Wood shims | 0.32 BN | 4.310 | 1.36* |
| | | **Material:** | **630.18** |

## State Farm

FRITZ, KIMBERLY

| General Contractor O&P Items | Quantity | Unit Price | Total Cost |
|---|---|---|---|
| Contractor Labor - | | | |
| Demolition Laborer | 1.24 HR | 45.610 | 56.64* |
| Carpenter - Finish, Trim/Cabinet | 2.37 HR | 90.380 | 214.20 |
| | | **Labor:** | **270.84** |
| | | **DOORS Subtotal:** | **901.02** |
| **DRYWALL** | | | |
| Material - | | | |
| Gypsum board, 1/2" | 712.34 SF | 0.435 | 309.87 |
| Metal corner bead | 33.54 LF | 0.345 | 11.57 |
| Drywall joint compound - 50 lb box | 3.91 BX | 12.400 | 48.52* |
| Drywall nails (based on 25 to 50 lb box) | 1.59 LB | 1.967 | 3.13 |
| Drywall screws - grabber - (based on 25 to 50 lb box) | 3.19 LB | 3.410 | 10.87* |
| Joint tape - 500' roll | 0.41 RL | 5.265 | 2.15* |
| | | **Material:** | **386.11** |
| Contractor Labor - | | | |
| Drywall Installer/Finisher | 14.52 HR | 103.580 | 1,503.55* |
| | | **Labor:** | **1,503.55** |
| | | **DRYWALL Subtotal:** | **1,889.66** |
| **FLOOR COVERING - CARPET** | | | |
| Material - | | | |
| Carpet - Allowance | 4.62 SF | 2.126 | 9.83* |
| Carpet seaming tape - 66 lf per roll | 0.01 RL | 13.560 | 0.13* |
| Carpet pad - rebond, 6 lb | 4.87 SF | 0.485 | 2.36 |
| | | **Material:** | **12.41** |
| Contractor Labor - | | | |
| Flooring Installer | 0.05 HR | 61.170 | 3.33* |
| | | **Labor:** | **3.33** |
| Equipment - | | | |
| Carpet power stretcher | 0.01 DA | 35.321 | 0.25* |
| Carpet seaming iron | 0.01 DA | 16.069 | 0.12* |
| | | **Equipment:** | **0.37** |
| | **FLOOR COVERING - CARPET Subtotal:** | | **16.11** |
| **FLOOR COVERING - CERAMIC TILE** | | | |
| Material - | | | |
| Ceramic tile grout - 25 lb bag | 2.76 BG | 17.160 | 47.36 |
| Thinset - multipurpose latex fortified - 50 lb bag | 2.76 BG | 19.122 | 52.77* |
| Metal lath for plaster application | 234.03 SF | 0.430 | 100.63 |
| Dry-set mortar - 50 lb bag | 30.88 BG | 11.002 | 339.74 |
| Tile - material per specs from ind. tile analysis | 193.18 SF | 3.080 | 594.99 |
| | | **Material:** | **1,135.49** |
| Contractor Labor - | | | |
| Tile/Cultured Marble Installer | 17.91 HR | 100.690 | 1,803.83* |
| Demolition Laborer | 0.72 HR | 45.610 | 32.76* |

**State Farm**

FRITZ, KIMBERLY                                                                                     11-31P1-54F

| General Contractor O&P Items | Quantity | Unit Price | Total Cost |
|---|---|---|---|
| | | Labor: | 1,836.59 |
| Equipment - | | | |
| Ceramic tile saw | 0.64 DA | 60.000 | 38.23* |
| Cement/mortar mixer, 6 cubic foot | 1.07 DA | 60.120 | 64.50* |
| | | Equipment: | 102.73 |
| FLOOR COVERING - CERAMIC TILE Subtotal: | | | 3,074.81 |
| **FLOOR COVERING - VINYL** | | | |
| Material - | | | |
| Vinyl floor - Allowance | 62.06 SF | 1.461 | 90.66* |
| Vinyl floor adhesive - 1 gallon | 0.41 GL | 22.978 | 9.51* |
| Floor patching compound - 5 lb box | 0.25 BX | 13.580 | 3.37* |
| | | Material: | 103.54 |
| Contractor Labor - | | | |
| Flooring Installer | 1.11 HR | 61.170 | 68.20* |
| | | Labor: | 68.20 |
| FLOOR COVERING - VINYL Subtotal: | | | 171.74 |
| **FLOOR COVERING - WOOD** | | | |
| Material - | | | |
| Nails for hardwood flooring nailer - (1000 count box) | 7.72 BX | 22.113 | 170.71 |
| Wood floor - material per specs from ind. wood analysis | 904.52 SF | 2.820 | 2,550.76* |
| 15 lb ASTM roofing felt | 2.06 RL | 19.777 | 40.74 |
| Wood filler for hardwood flooring | 2.14 GL | 42.550 | 90.90* |
| Polyurethane finish for wood floors | 6.57 GL | 58.940 | 387.46* |
| Sanding belt - walk behind sander, 100 grit | 3.53 EA | 8.980 | 31.70 |
| Sanding belt - walk behind sander, 20-36 grit | 3.53 EA | 9.490 | 33.49* |
| Sanding belt - walk behind sander, 50-80 grit | 3.53 EA | 9.210 | 32.51 |
| Sanding screen - floor sander, 120 grit | 3.53 EA | 5.960 | 21.04 |
| Sanding screen - floor sander, 60 grit | 3.53 EA | 8.650 | 30.53 |
| Sanding screen - floor sander, 80 grit | 3.53 EA | 7.360 | 25.98 |
| Sanding disk - floor edge sander | 3.53 EA | 1.291 | 4.56 |
| Stain - wood flooring | 3.56 GL | 50.854 | 181.08* |
| | | Material: | 3,601.46 |
| Contractor Labor - | | | |
| Demolition Laborer | 42.16 HR | 45.610 | 1,922.96* |
| Wood Flooring Installer | 79.54 HR | 49.580 | 3,943.69* |
| | | Labor: | 5,866.65 |
| Equipment - | | | |
| Hardwood flooring nailing tool | 3.22 DA | 38.000 | 122.22* |
| Hardwood flooring edge sander | 2.75 DA | 39.995 | 109.98* |
| Hardwood flooring drum sander | 2.75 DA | 64.000 | 176.00 |
| Hardwood floor sander - screen | 2.75 DA | 41.193 | 113.27* |
| Dustless sanding equipment | 0.81 DA | 1,010.000 | 822.95* |
| | | Equipment: | 1,344.42 |
| FLOOR COVERING - WOOD Subtotal: | | | 10,812.53 |

**FINISH CARPENTRY / TRIMWORK**

## State Farm

FRITZ, KIMBERLY

11-31P1-54F

| General Contractor O&P Items | Quantity | Unit Price | Total Cost |
|---|---|---|---|
| Material - | | | |
| 6d finish nails (based on 5 lb box) | 2.33 LB | 3.120 | 7.27 |
| Baseboard - 3 1/4" finger-jointed pine | 270.94 LF | 1.458 | 395.04* |
| Casing - 5" hardwood | 40.04 LF | 4.686 | 187.65* |
| Quarter round, 3/4" | 61.45 LF | 0.660 | 40.56 |
| | | **Material:** | **630.52** |
| Contractor Labor - | | | |
| Demolition Laborer | 1.87 HR | 45.610 | 85.17* |
| Carpenter - Finish, Trim/Cabinet | 8.14 HR | 90.380 | 735.46* |
| | | **Labor:** | **820.63** |
| | **FINISH CARPENTRY / TRIMWORK Subtotal:** | | **1,451.15** |
| **FINISH HARDWARE** | | | |
| Contractor Labor - | | | |
| Hardware Installer | 1.19 HR | 53.420 | 63.72* |
| | | **Labor:** | **63.72** |
| | **FINISH HARDWARE Subtotal:** | | **63.72** |
| **PLUMBING** | | | |
| Material - | | | |
| Silicone caulk - 10 oz tube | 0.09 TB | 7.841 | 0.68* |
| Caulking - acrylic - 10 oz tube | 0.08 TB | 5.350 | 0.42* |
| Brass bolts used to secure bowl to the floor - two | 1.00 EA | 3.861 | · 3.86 |
| Wax ring closet gasket | 1.00 EA | 3.159 | 3.16 |
| | | **Material:** | **8.12** |
| Contractor Labor - | | | |
| Plumber | 1.43 HR | · 131.410 | 187.39* |
| Plumber | 2.11 HR | 125.000 | 264.31* |
| | | **Labor:** | **451.70** |
| | **PLUMBING Subtotal:** | | **459.82** |
| **PAINTING** | | | |
| Material - | | | |
| Caulking - acrylic | 4.67 TB | 2.850 | 13.32* |
| Latex paint | 22.18 GL | 43.634 | 967.93* |
| Painter's putty | 0.85 GL | 21.067 | 17.94* |
| 160 - 180 grit sandpaper - per sheet | 15.11 SH | 0.701 | 10.59 |
| Sealer - stain blocker - latex based | 3.04 GL | 24.804 | 75.40 |
| | | **Material:** | **1,085.18** |
| Contractor Labor - | | | |
| Painter | 57.66 HR | 68.180 | 3,931.40* |
| | | **Labor:** | **3,931.40** |
| | **PAINTING Subtotal:** | | **5,016.58** |

**WINDOW TREATMENT**

Contractor Labor -

## State Farm

FRITZ, KIMBERLY

| General Contractor O&P Items | Quantity | Unit Price | Total Cost |
|---|---|---|---|
| Hardware Installer | 1.19 HR | 53.420 | 63.64* |
| | | Labor: | 63.64 |
| | WINDOW TREATMENT Subtotal: | | 63.64 |

| | | |
|---|---|---|
| **Material** | | 11,894.48 |
| **Labor** | | 17,832.51 |
| **Equipment** | | 1,887.52 |
| **General Contractor O&P Items Subtotal** | | 31,614.51 |
| Material Sales Tax | | 951.52 |
| General Contractor Overhead | | 3,256.69 |
| General Contractor Profit | | 3,256.69 |
| **Total** | | 39,079.41 |

Main Level





Main Level

Basement



Bedroom

Storage

Basement

# EXHIBIT C



**Michael D. Turner, Esq.**
110 Norcross Street
Roswell, GA 30075
mdturner@lawhuggins.com
(770) 913-6229

August 31, 2022

State Farm Fire and Casualty Company
P.O. Box 88049
Atlanta, GA 30356

**Sent Via email:**
statefarmfireclaims@statefarm.com

Re:  Named Insured(s):  Craig Fritz and Kimberly Fritz
     Policy Number:    11E8J9038
     Claim Number:     1131P154F
     Date of Loss:     March 15, 2022

To Whom it May Concern:

I have been retained by Craig Fritz and Kimberly Fritz ("Your Insured") to represent them regarding the above referenced property insurance claim. All further communication regarding this claim should be directed to my office.

Please also accept this letter as a formal demand for a **certified copy of the relevant insurance policy, to include the original policy, any renewals, and any endorsements.** We also request a copy of any and all repair estimates drafted to date, **as well as a payment sheet or payment log detailing all insurance proceeds issued to date for this claim.**

My client has complied with all conditions contained in the insurance policy. My client is at a loss as to why State Farm Fire and Casualty Company ("State Farm") has not afforded the proper coverage under the applicable policy. This lack of good faith has forced Your Insured to retain my legal services in order to fairly settle their claim. It is our belief that State Farm has violated the Unfair Claims Settlement Practice Act pursuant to O.C.G.A. § 33-6-34 and has breached the insurance policy.

Bad faith claims handling triggers additional liability on your part under O.C.G.A. § 33-4-6 that includes the amount of the claim, plus a penalty of an additional fifty percent (50%) of the value of the claim and reasonable attorneys' fees and costs.

Therefore, per the enclosed spreadsheets of damages to Your Insured's property, we are hereby making formal demand that you settle the above claim for the sum of **$83,187.99, less previous payments and the applicable deductible.** The invoice & estimate of damages is attached for your review. This demand is being made pursuant to O.C.G.A. § 33-4-6, and you have sixty (60) days in which to make payment on this claim or be subject to a lawsuit containing a claim for breach of contract and bad faith seeking all compensation allowed by law, including attorneys' fees and a penalty of fifty percent (50%) of the loss amount.

To: State Farm Fire and Casualty Company
Client: Craig Fritz and Kimberly Fritz
August 31, 2022
Page **2** of **2**

This letter constitutes a "proper demand" for payment under O.C.G.A. § 33-4-6. If you contend that a proper demand has not been made, you must immediately notify us of the reasons for such allegation. Otherwise, it will be assumed you agree this letter constitutes a proper demand.

The purpose of this correspondence is to encourage State Farm to resolve Your Insured's claim in a fair and equitable manner in hopes of avoiding litigation. If you fail to respond to this letter with an offer of settlement that is acceptable to Your Insured, we will have no alternative other than recommending to Your Insured that a lawsuit be filed against you.

Payment must be received in my office within sixty (60) days of your receipt of this letter in order to avoid a suit for bad faith penalties and attorney's fees. Any check issued should list Huggins Law Firm, LLC as sole payee. Any objection to these payment terms shall be submitted in writing to Huggins Law Firm, LLC within 10 days of receipt of this letter.

I look forward to working with you to resolve this matter quickly and amicably. Please feel free to contact me should you have any questions regarding this formal 60-day demand. Should you have any questions or concerns, please reach out to me at mdturner@lawhuggins.com or by phone at (770) 913-6229.

Sincerely,

Michael D. Turner, Esq.
Attorney at Law

MDT/aak
Encl.

Client:       KIMBERLY FRITZ
Property:     1278 CRUMBLEY RD
              MCDONOUGH, GA 30252

Operator:     CNAADJUS

Estimator:    Clifford N. Austin III, MBA, SCLA, CPCU          Business:   (816) 888-1702

Type of Estimate:
Date Entered:    6/30/2022              Date Assigned:

Price List:       GAAT8X_MAR22
Labor Efficiency: Restoration/Service/Remodel
Estimate:         KIMBERLYDAWN



| Kitchen | | | | | | Height: 8' |
|---|---|---|---|---|---|---|

| 404.00 SF Walls | 158.79 SF Ceiling |
|---|---|
| 562.79 SF Walls & Ceiling | 158.79 SF Floor |
| 17.64 SY Flooring | 50.00 LF Floor Perimeter |
| 53.00 LF Ceil. Perimeter | |

**Missing Wall - Goes to Floor**     3' X 6' 8"          **Opens into HALLWAY**

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 1. Detach & Reset Dishwasher | 1.00 EA | 260.73 | 0.00 | 0.00 | 0.00 | 52.14 | 312.87 |
| 2. Refrigerator - Remove & reset | 1.00 EA | | 0.00 | 42.30 | 0.00 | 8.46 | 50.76 |
| 3. Range - electric - Remove & reset | 1.00 EA | | 0.00 | 31.73 | 0.00 | 6.34 | 38.07 |
| 4. Window drapery - hardware - Detach & reset | 2.00 EA | | 0.00 | 31.82 | 0.00 | 12.72 | 76.36 |
| WALLS | | | | | | | |
| 5. Texture drywall - smooth / skim coat | 404.00 SF | | 0.00 | 1.65 | 4.00 | 134.12 | 804.72 |
| 6. Paint the walls - one coat | 404.00 SF | | 0.00 | 0.66 | 4.73 | 54.26 | 325.63 |
| 7. R&R Baseboard - 3 1/4" | 50.00 LF | | 0.46 | 3.95 | 7.02 | 45.50 | 273.02 |
| 8. Paint baseboard - two coats | 50.00 LF | | 0.00 | 1.46 | 0.63 | 14.72 | 88.35 |
| 9. Detach & Reset Sink - double basin | 1.00 EA | 188.07 | 0.00 | 0.00 | 0.06 | 37.64 | 225.77 |
| 10. R&R Countertop - post formed plastic laminate | 12.00 LF | | 4.17 | 56.19 | 40.82 | 153.02 | 918.16 |

POST FORMED LAMINATE COUNTERTOP SCREWED AND GLUED TO LOWER CABINETS. WILL BE UNABLE TO BE RESET AFTER REMOVAL DUE TO DAMAGE FROM GLUE TRANSFER.

| 11. R&R Cabinetry - lower (base) units - High grade | 12.00 LF | | 7.55 | 271.40 | 241.05 | 717.70 | 4,306.15 |

LOWER CABS ARE BUILT ONSITE AND CANNOT BE BOUGHT OFF OF THE SHELF.

| 12. Seal & paint cabinetry - lower - inside and out | 12.00 LF | | 0.00 | 40.34 | 6.07 | 98.04 | 588.19 |
| 13. R&R Toe kick - pre-finished wood - 1/2" | 3.20 LF | | 1.89 | 10.44 | 1.23 | 8.14 | 48.83 |
| 14. R&R Cabinetry - upper (wall) units - High grade | 12.00 LF | | 7.55 | 204.76 | 169.07 | 543.36 | 3,260.15 |

UPPER CABS ARE BUILT ONSITE AND CANNOT BE BOUGHT OFF OF THE SHELF.

| 15. Detach & Reset Cabinet knob or pull | 26.00 EA | 3.07 | 0.00 | 0.00 | 0.00 | 15.96 | 95.78 |
| 16. Seal & paint cabinetry - upper - inside and out | 12.00 LF | | 0.00 | 33.64 | 5.08 | 81.76 | 490.52 |
| FLOOR | | | | | | | |
| 17. R&R Sheathing - OSB - 1/2" | 159.78 SF | | 0.56 | 2.41 | 18.26 | 98.58 | 591.39 |

**CONTINUED - Kitchen**

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| OLD MORTAR BED CANNOT BE REMOVED TO CREATE A SMOOTH SURFACE FOR INSTALLATION OF NEW TILE WITHOUT DAMAGING EXISTING SHEATHING. | | | | | | | |
| 18. Mortar bed for tile floors | 159.78 SF | | 0.00 | 4.95 | 28.47 | 163.88 | 983.26 |
| 19. Tile floor covering - per specs from ind. tile analysis | 159.78 SF | | 0.00 | 11.17 | 62.99 | 369.54 | 2,217.27 |
| 20. Vinyl floor covering (sheet goods) | 50.00 SF | | 0.00 | 2.77 | 7.52 | 29.20 | 175.22 |
| 21. Content Manipulation charge - per hour | 4.00 HR | | 0.00 | 39.43 | 0.00 | 31.54 | 189.26 |
| TWO WORKERS 2 HOURS EACH TO REMOVE AND RESET CONTENTS | | | | | | | |

| Totals: Kitchen | | | | | 597.00 | 2,676.62 | 16,059.73 |
|---|---|---|---|---|---|---|---|



**Dining Room**                                                          Height: 8'

324.00 SF Walls                        119.88 SF Ceiling
443.88 SF Walls & Ceiling              119.88 SF Floor
13.32 SY Flooring                      39.83 LF Floor Perimeter
43.83 LF Ceil. Perimeter



**Subroom: Hallway (1)**                                                 Height: 8'

289.33 SF Walls                        61.38 SF Ceiling
350.71 SF Walls & Ceiling              61.38 SF Floor
6.82 SY Flooring                       35.00 LF Floor Perimeter
42.00 LF Ceil. Perimeter

| Missing Wall - Goes to Floor | 3' X 6' 8" | Opens into KITCHEN |
|---|---|---|
| Missing Wall | 3' 2" X 8' | Opens into LIVING_ROOM |
| Missing Wall - Goes to Floor | 4' X 6' 8" | Opens into DINING_ROOM |

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 22. Content Manipulation charge - per hour | 4.00 HR | | 0.00 | 39.43 | 0.00 | 31.54 | 189.26 |
| TWO WORKERS 2 HOURS EACH TO REMOVE AND RESET CONTENTS | | | | | | | |
| WALLS | | | | | | | |
| 23. R&R Casing - 5" - hardwood | 19.00 LF | | 0.51 | 6.52 | 8.48 | 28.42 | 170.47 |
| 24. Paint casing - oversized - two coats | 19.00 LF | | 0.00 | 1.56 | 0.36 | 6.00 | 36.00 |
| ROOM ENTRY OPENING | | | | | | | |
| 25. Texture drywall - smooth / skim coat | 613.33 SF | | 0.00 | 1.65 | 6.07 | 203.62 | 1,221.68 |

## CONTINUED - Dining Room

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 26.  Paint the walls - two coats | 613.33 SF | | 0.00 | 0.98 | 13.80 | 122.98 | 737.84 |
| 27.  Baseboard - 3 1/4" | 48.83 LF | | 0.00 | 3.95 | 6.86 | 39.96 | 239.70 |
| 28.  R&R Baseboard - 3 1/4" | 26.00 LF | | 0.46 | 3.95 | 3.65 | 23.68 | 141.99 |
| 29.  Paint baseboard - two coats | 74.83 LF | | 0.00 | 1.46 | 0.94 | 22.04 | 132.23 |
| 30.  R&R Quarter round - 3/4" | 74.83 LF | | 0.17 | 1.78 | 4.78 | 30.14 | 180.84 |
| 31.  Seal & paint base shoe or quarter round | 74.83 LF | | 0.00 | 0.80 | 0.74 | 12.12 | 72.72 |
| 32.  Seal & paint trim - two coats | 148.00 LF | | 0.00 | 1.44 | 1.60 | 42.94 | 257.66 |

REMAINING TRIM IN ROOM TO MATCH REASONABLE APPEARANCE

FLOOR

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 33.  R&R Sheathing - OSB - 1/2" | 185.07 SF | | 0.56 | 2.41 | 21.15 | 114.16 | 684.97 |

WATER DAMAGTE TO SHEATHING DUE TO PROLONGED EXPOSURE CAUSING DETERIORATION AND WEAKNESS TO SHEATHING EVEN AFTER DRYING.

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 34.  Vapor barrier - 15# felt | 185.07 SF | | 0.00 | 0.22 | 0.83 | 8.30 | 49.85 |
| 35.  R&R Oak flooring - #1 common - no finish | 185.07 SF | | 2.36 | 8.47 | 98.44 | 420.54 | 2,523.29 |
| 36.  Sand, stain, and finish wood floor | 185.07 SF | | 0.00 | 3.78 | 17.16 | 143.36 | 860.08 |
| 37.  Add for dustless floor sanding | 185.07 SF | | 0.00 | 1.01 | 0.00 | 37.38 | 224.30 |

Totals:  Dining Room      184.86    1,287.18    7,722.88

| al (A1) | Bedroom B | | | | | | Height: 8' |
|---|---|---|---|---|---|---|---|

Bedroom B

330.67 SF Walls      106.33 SF Ceiling
437.00 SF Walls & Ceiling      106.33 SF Floor
11.81 SY Flooring      41.33 LF Floor Perimeter
41.33 LF Ceil. Perimeter

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 38.  Content Manipulation charge - per hour | 4.00 HR | | 0.00 | 39.43 | 0.00 | 31.54 | 189.26 |

TWO WORKERS 2 HOURS EACH TO REMOVE AND RESET CONTENTS

CEILING

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 39.  R&R Acoustic ceiling (popcorn) texture | 106.33 SF | | 0.46 | 1.22 | 0.57 | 35.84 | 215.04 |
| 40.  Seal & paint acoustic ceiling (popcorn) texture | 106.33 SF | | 0.00 | 1.25 | 3.16 | 27.22 | 163.29 |

WALLS

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 41.  Texture drywall - smooth / skim coat | 330.67 SF | | 0.00 | 1.65 | 3.27 | 109.78 | 658.66 |

KIMBERLYDAWN      7/1/2022      Page: 4

## CONTINUED - Bedroom B

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 42. Paint the walls - two coats | 330.67 SF | | 0.00 | 0.98 | 7.44 | 66.30 | 397.80 |
| 43. R&R Baseboard - 3 1/4" | 26.00 LF | | 0.46 | 3.95 | 3.65 | 23.68 | 141.99 |
| 44. Paint baseboard - two coats | 41.33 LF | | 0.00 | 1.46 | 0.52 | 12.16 | 73.02 |
| 45. R&R Quarter round - 3/4" | 41.33 LF | | 0.17 | 1.78 | 2.64 | 16.64 | 99.88 |
| 46. Seal & paint base shoe or quarter round | 41.33 LF | | 0.00 | 0.80 | 0.41 | 6.70 | 40.17 |
| 47. Paint door slab only - 2 coats (per side) | 2.00 EA | | 0.00 | 37.67 | 1.46 | 15.36 | 92.16 |
| 48. Paint door or window opening - 2 coats (per side) | 2.00 EA | | 0.00 | 31.52 | 0.88 | 12.78 | 76.70 |
| 49. Paint door/window trim & jamb - 2 coats (per side) | 2.00 EA | | 0.00 | 31.52 | 0.88 | 12.78 | 76.70 |
| FLOOR | | | | | | | |
| 50. R&R Sheathing - OSB - 1/2" | 185.07 SF | | 0.56 | 2.41 | 21.15 | 114.16 | 684.97 |

WATER DAMAGTE TO SHEATHING DUE TO PROLONGED EXPOSURE CAUSING DETERIORATION AND WEAKNESS TO SHEATHING EVEN AFTER DRYING.

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 51. Vapor barrier - 15# felt | 185.07 SF | | 0.00 | 0.22 | 0.83 | 8.30 | 49.85 |
| 52. R&R Oak flooring - #1 common - no finish | 185.07 SF | | 2.36 | 8.47 | 98.44 | 420.54 | 2,523.29 |
| 53. Sand, stain, and finish wood floor | 185.07 SF | | 0.00 | 3.78 | 17.16 | 143.36 | 860.08 |
| 54. Add for dustless floor sanding | 185.07 SF | | 0.00 | 1.01 | 0.00 | 37.38 | 224.30 |

Totals: Bedroom B                         162.46    1,094.52    6,567.16

**Bedroom A**                                                                 Height: 8'

362.67 SF Walls                          128.44 SF Ceiling
491.10 SF Walls & Ceiling                128.44 SF Floor
14.27 SY Flooring                        45.33 LF Floor Perimeter
45.33 LF Ceil. Perimeter

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 55. Content Manipulation charge - per hour | 4.00 HR | | 0.00 | 39.43 | 0.00 | 31.54 | 189.26 |

TWO WORKERS 2 HOURS EACH TO REMOVE AND RESET CONTENTS

CEILING

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 56. R&R Acoustic ceiling (popcorn) texture | 128.44 SF | | 0.46 | 1.22 | 0.69 | 43.30 | 259.77 |
| 57. Seal & paint acoustic ceiling (popcorn) texture | 128.44 SF | | 0.00 | 1.25 | 3.82 | 32.88 | 197.25 |

WALLS

KIMBERLYDAWN                                              7/1/2022        Page: 5

## CONTINUED - Bedroom A

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 58. Texture drywall - smooth / skim coat | 362.67 SF | | 0.00 | 1.65 | 3.59 | 120.40 | 722.40 |
| 59. Paint the walls - two coats | 362.67 SF | | 0.00 | 0.98 | 8.16 | 72.72 | 436.30 |
| 60. R&R Baseboard - 3 1/4" | 26.00 LF | | 0.46 | 3.95 | 3.65 | 23.68 | 141.99 |
| 61. Paint baseboard - two coats | 45.33 LF | | 0.00 | 1.46 | 0.57 | 13.36 | 80.11 |
| 62. R&R Quarter round - 3/4" | 45.33 LF | | 0.17 | 1.78 | 2.90 | 18.26 | 109.56 |
| 63. Seal & paint base shoe or quarter round | 45.33 LF | | 0.00 | 0.80 | 0.45 | 7.36 | 44.07 |
| 64. Paint door slab only - 2 coats (per side) | 2.00 EA | | 0.00 | 37.67 | 1.46 | 15.36 | 92.16 |
| 65. Paint door or window opening - 2 coats (per side) | 2.00 EA | | 0.00 | 31.52 | 0.88 | 12.78 | 76.70 |
| 66. Paint door/window trim & jamb - 2 coats (per side) | 2.00 EA | | 0.00 | 31.52 | 0.88 | 12.78 | 76.70 |
| FLOOR | | | | | | | |
| 67. R&R Sheathing - OSB - 1/2" | 185.07 SF | | 0.56 | 2.41 | 21.15 | 114.16 | 684.97 |

WATER DAMAGTE TO SHEATHING DUE TO PROLONGED EXPOSURE CAUSING DETERIORATION AND WEAKNESS TO SHEATHING EVEN AFTER DRYING.

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 68. Vapor barrier - 15# felt | 185.07 SF | | 0.00 | 0.22 | 0.83 | 8.30 | 49.85 |
| 69. R&R Oak flooring - #1 common - no finish | 185.07 SF | | 2.36 | 8.47 | 98.44 | 420.54 | 2,523.29 |
| 70. Sand, stain, and finish wood floor | 185.07 SF | | 0.00 | 3.78 | 17.16 | 143.36 | 860.08 |
| 71. Add for dustless floor sanding | 185.07 SF | | 0.00 | 1.01 | 0.00 | 37.38 | 224.30 |

| | | | | | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| Totals: Bedroom A | | | | | 164.63 | 1,128.16 | 6,768.76 |



**Bathroom**            Height: 8'

224.00 SF Walls            43.56 SF Ceiling
267.56 SF Walls & Ceiling            29.56 SF Floor
3.28 SY Flooring            28.00 LF Floor Perimeter
28.00 LF Ceil. Perimeter

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| WALLS | | | | | | | |
| 72. Texture drywall - smooth / skim coat | 224.00 SF | | 0.00 | 1.65 | 2.22 | 74.36 | 446.18 |
| 73. Paint the walls - two coats | 224.00 SF | | 0.00 | 0.98 | 5.04 | 44.90 | 269.46 |
| 74. R&R Baseboard - 3 1/4" | 28.00 LF | | 0.46 | 3.95 | 3.93 | 25.48 | 152.89 |
| 75. Paint baseboard - two coats | 28.00 LF | | 0.00 | 1.46 | 0.35 | 8.26 | 49.49 |

## CONTINUED - Bathroom

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 76. R&R Vanity | 3.00 LF | | 7.55 | 221.71 | 46.85 | 146.94 | 881.57 |
| 77. Vanity top - Detach & reset | 3.00 LF | | 0.00 | 52.49 | 0.05 | 31.52 | 189.04 |
| 78. Seal & paint vanity - inside and out | 3.00 LF | | 0.00 | 38.15 | 1.44 | 23.18 | 139.07 |
| 79. Detach & Reset Mirror - 1/4" plate glass | 15.00 SF | 5.71 | 0.00 | 0.00 | 0.00 | 17.14 | 102.79 |
| 80. Detach & Reset Towel bar | 1.00 EA | 15.64 | 0.00 | 0.00 | 0.00 | 3.12 | 18.76 |
| 81. R&R Interior door unit | 1.00 EA | | 18.88 | 281.46 | 18.91 | 63.86 | 383.11 |
| 82. Paint door slab only - 2 coats (per side) | 2.00 EA | | 0.00 | 37.67 | 1.46 | 15.36 | 92.16 |
| 83. Paint door or window opening - 2 coats (per side) | 2.00 EA | | 0.00 | 31.52 | 0.88 | 12.78 | 76.70 |
| 84. Paint door/window trim & jamb - 2 coats (per side) | 2.00 EA | | 0.00 | 31.52 | 0.88 | 12.78 | 76.70 |
| 85. Detach & Reset Door knob - interior | 1.00 EA | 21.24 | 0.00 | 0.00 | 0.00 | 4.24 | 25.48 |
| FLOOR | | | | | | | |
| 86. Toilet - Detach & reset | 1.00 EA | | 0.00 | 271.75 | 0.67 | 54.50 | 326.92 |
| 87. R&R Sheathing - OSB - 1/2" | 56.21 SF | | 0.56 | 2.41 | 6.43 | 34.68 | 208.06 |

OLD MORTAR BED CANNOT BE REMOVED TO CREATE A SMOOTH SURFACE FOR INSTALLATION OF NEW TILE WITHOUT DAMAGING EXISTING SHEATHING.

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 88. Mortar bed for tile floors | 56.21 SF | | 0.00 | 4.95 | 10.02 | 57.64 | 345.90 |
| 89. Tile floor covering - per specs from ind. tile analysis | 56.21 SF | | 0.00 | 11.17 | 2.93 | 126.16 | 756.96 |
| 90. Vinyl floor covering (sheet goods) | 12.00 SF | | 0.00 | 2.77 | 1.80 | 7.00 | 42.04 |

Totals: Bathroom                    103.86    763.90   4,583.28



| Pantry | | | | | | | Height: 8' |
|---|---|---|---|---|---|---|---|

86.67 SF Walls                      7.29 SF Ceiling
93.96 SF Walls & Ceiling            7.29 SF Floor
0.81 SY Flooring                    10.83 LF Floor Perimeter
10.83 LF Ceil. Perimeter

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| WALLS | | | | | | | |
| 91. Texture drywall - smooth / skim coat | 86.67 SF | | 0.00 | 1.65 | 0.86 | 28.78 | 172.65 |
| 92. Paint the walls - two coats | 86.67 SF | | 0.00 | 0.98 | 1.95 | 17.38 | 104.27 |
| 93. R&R Baseboard - 3 1/4" | 10.83 LF | | 0.46 | 3.95 | 1.52 | 9.86 | 59.14 |

**CONTINUED - Pantry**

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 94. Paint baseboard - two coats | 10.83 LF | | 0.00 | 1.46 | 0.14 | 3.18 | 19.13 |
| 95. R&R Interior door unit | 1.00 EA | | 18.88 | 281.46 | 18.91 | 63.86 | 383.11 |
| 96. Paint door slab only - 2 coats (per side) | 2.00 EA | | 0.00 | 37.67 | 1.46 | 15.36 | 92.16 |
| 97. Paint door or window opening - 2 coats (per side) | 2.00 EA | | 0.00 | 31.52 | 0.88 | 12.78 | 76.70 |
| 98. Paint door/window trim & jamb - 2 coats (per side) | 2.00 EA | | 0.00 | 31.52 | 0.88 | 12.78 | 76.70 |
| 99. Detach & Reset Door knob - interior | 1.00 EA | 21.24 | 0.00 | 0.00 | 0.00 | 4.24 | 25.48 |
| 100. Seal & paint closet shelving - single shelf | 1.00 EA | | 0.00 | 51.88 | 0.40 | 10.46 | 62.74 |
| FLOOR | | | | | | | |
| 101. R&R Sheathing - OSB - 1/2" | 7.29 SF | | 0.56 | 2.41 | 0.83 | 4.50 | 26.98 |

OLD MORTAR BED CANNOT BE REMOVED TO CREATE A SMOOTH SURFACE FOR INSTALLATION OF NEW TILE WITHOUT DAMAGING EXISTING SHEATHING.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 102. Mortar bed for tile floors | 7.29 SF | | 0.00 | 4.95 | 1.30 | 7.48 | 44.87 |
| 103. Tile floor covering - per specs from ind. tile analysis | 7.29 SF | | 0.00 | 8.65 | 0.38 | 12.70 | 76.14 |

Totals: Pantry                                                                29.51      203.36      1,220.07



**Closet**                                                                 **Height: 8'**

86.67 SF Walls                      7.13 SF Ceiling
93.79 SF Walls & Ceiling            7.13 SF Floor
0.79 SY Flooring                    10.83 LF Floor Perimeter
10.83 LF Ceil. Perimeter

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| WALLS | | | | | | | |
| 104. Texture drywall - smooth / skim coat | 86.67 SF | | 0.00 | 1.65 | 0.86 | 28.78 | 172.65 |
| 105. Paint the walls - two coats | 86.67 SF | | 0.00 | 0.98 | 1.95 | 17.38 | 104.27 |
| 106. R&R Baseboard - 3 1/4" | 10.83 LF | | 0.46 | 3.95 | 1.52 | 9.86 | 59.14 |
| 107. Paint baseboard - two coats | 10.83 LF | | 0.00 | 1.46 | 0.14 | 3.18 | 19.13 |
| 108. R&R Interior door unit | 1.00 EA | | 18.88 | 281.46 | 18.91 | 63.86 | 383.11 |
| 109. Paint door slab only - 2 coats (per side) | 2.00 EA | | 0.00 | 37.67 | 1.46 | 15.36 | 92.16 |
| 110. Paint door or window opening - 2 coats (per side) | 2.00 EA | | 0.00 | 31.52 | 0.88 | 12.78 | 76.70 |

**CONTINUED - Closet**

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 111. Paint door/window trim & jamb - 2 coats (per side) | 2.00 EA | | 0.00 | 31.52 | 0.88 | 12.78 | 76.70 |
| 112. Detach & Reset Door knob - interior | 1.00 EA | 21.24 | 0.00 | 0.00 | 0.00 | 4.24 | 25.48 |
| 113. Seal & paint closet shelving - single shelf | 1.00 EA | | 0.00 | 51.88 | 0.40 | 10.46 | 62.74 |
| FLOOR | | | | | | | |
| 114. Carpet pad | 7.13 SF | | 0.00 | 0.61 | 0.33 | 0.94 | 5.62 |
| 115. Carpet | 7.13 SF | | 0.00 | 2.87 | 1.39 | 4.38 | 26.23 |

| Totals: Closet | | | | | 28.72 | 184.00 | 1,103.93 |

---



**Living Room**                                                                 **Height: 8'**

505.33 SF Walls                                    288.03 SF Ceiling
793.36 SF Walls & Ceiling                          288.03 SF Floor
32.00 SY Flooring                                  62.67 LF Floor Perimeter
65.67 LF Ceil. Perimeter

| **Missing Wall** | 3' X 8' | **Opens into STAIRS** |
| **Missing Wall** | 3' 2" X 8' | **Opens into HALLWAY** |



**Subroom: Room10 (1)**                                                         **Height: 8'**

190.67 SF Walls                                    38.65 SF Ceiling
229.31 SF Walls & Ceiling                          38.65 SF Floor
4.29 SY Flooring                                   23.33 LF Floor Perimeter
26.33 LF Ceil. Perimeter

| **Missing Wall - Goes to Floor** | | 3' X 6' 8" | | **Opens into LIVING_ROOM** | | | |
|---|---|---|---|---|---|---|---|
| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
| 116. Content Manipulation charge - per hour | 4.00 HR | | 0.00 | 39.43 | 0.00 | 31.54 | 189.26 |
| TWO WORKERS 2 HOURS EACH TO REMOVE AND RESET CONTENTS | | | | | | | |
| WALLS | | | | | | | |
| 117. R&R Casing - 5" - hardwood | 19.00 LF | | 0.51 | 6.52 | 8.48 | 28.42 | 170.47 |
| 118. Paint casing - oversized - two coats | 19.00 LF | | 0.00 | 1.56 | 0.36 | 6.00 | 36.00 |
| ROOM ENTRY OPENING | | | | | | | |
| 119. Texture drywall - smooth / skim coat | 696.00 SF | | 0.00 | 1.65 | 6.89 | 231.06 | 1,386.35 |

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 120. Paint the walls - two coats | 696.00 SF | | 0.00 | 0.98 | 15.66 | 139.56 | 837.30 |
| 121. R&R Baseboard - 3 1/4" | 86.00 LF | | 0.46 | 3.95 | 12.07 | 78.28 | 469.61 |
| 122. Paint baseboard - two coats | 86.00 LF | | 0.00 | 1.46 | 1.08 | 25.34 | 151.98 |
| 123. R&R Quarter round - 3/4" | 86.00 LF | | 0.17 | 1.78 | 5.50 | 34.64 | 207.84 |
| 124. Seal & paint base shoe or quarter round | 86.00 LF | | 0.00 | 0.80 | 0.85 | 13.94 | 83.59 |
| 125. Seal & paint trim - two coats | 96.00 LF | | 0.00 | 1.44 | 1.04 | 27.84 | 167.12 |

REMAINING TRIM IN ROOM TO MATCH REASONABLE APPEARANCE

FLOOR

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 126. R&R Sheathing - OSB - 1/2" | 405.19 SF | | 0.56 | 2.41 | 46.31 | 249.94 | 1,499.67 |

WATER DAMAGTE TO SHEATHING DUE TO PROLONGED EXPOSURE CAUSING DETERIORATION AND WEAKNESS TO SHEATHING EVEN AFTER DRYING.

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 127. Vapor barrier - 15# felt | 405.19 SF | | 0.00 | 0.22 | 1.82 | 18.18 | 109.14 |
| 128. R&R Oak flooring - #1 common - no finish | 405.19 SF | | 2.36 | 8.47 | 215.52 | 920.76 | 5,524.49 |
| 129. Sand, stain, and finish wood floor | 405.19 SF | | 0.00 | 3.78 | 37.56 | 313.84 | 1,883.02 |
| 130. Add for dustless floor sanding | 405.19 SF | | 0.00 | 1.01 | 0.00 | 81.84 | 491.08 |

Totals: Living Room          353.14    2,201.18    13,206.92

---

**Stairs**                      **Height: 15' 6"**

247.96 SF Walls          31.00 SF Ceiling
278.96 SF Walls & Ceiling      54.86 SF Floor
6.10 SY Flooring          24.82 LF Floor Perimeter
21.00 LF Ceil. Perimeter

| **Missing Wall** | | 3' X 15' 5 15/16" | | **Opens into LIVING_ROOM** | | | |
|---|---|---|---|---|---|---|---|
| **Missing Wall** | | 3' X 15' 5 15/16" | | **Opens into Exterior** | | | |

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| WALLS | | | | | | | |
| 131. Texture drywall - smooth / skim coat | 247.96 SF | | 0.00 | 1.65 | 2.46 | 82.32 | 493.91 |
| 132. Paint the walls - two coats | 247.96 SF | | 0.00 | 0.98 | 5.58 | 49.72 | 298.30 |
| 133. Paint baseboard - two coats | 24.82 LF | | 0.00 | 1.46 | 0.31 | 7.30 | 43.85 |
| FLOOR | | | | | | | |
| 134. Clean and deodorize carpet | 54.86 SF | | 0.00 | 0.50 | 0.05 | 5.50 | 32.98 |

Totals: Stairs          8.40    144.84    869.04

| Total: Main Level | | | | | 1,632.58 | 9,683.76 | 58,101.77 |

**Basement**

| Storage | | | | | | | Height: 8' |

580.00 SF Walls
898.22 SF Walls & Ceiling
35.36 SY Flooring
72.50 LF Ceil. Perimeter

318.22 SF Ceiling
318.22 SF Floor
72.50 LF Floor Perimeter

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 135. Content Manipulation charge - per hour | 12.00 HR | | 0.00 | 39.43 | 0.00 | 94.64 | 567.80 |
| TWO WORKERS 3 HOURS EACH TO REMOVE AND RESET CONTENTS | | | | | | | |
| CEILING | | | | | | | |
| 136. R&R 1/2" drywall - hung, taped, floated, ready for paint | 318.22 SF | | 0.41 | 2.83 | 17.18 | 209.66 | 1,257.87 |
| 137. Acoustic ceiling (popcorn) texture | 318.22 SF | | 0.00 | 1.22 | 1.72 | 77.98 | 467.93 |
| 138. Seal & paint acoustic ceiling (popcorn) texture | 318.22 SF | | 0.00 | 1.25 | 9.45 | 81.46 | 488.69 |
| WALLS | | | | | | | |
| 139. R&R 1/2" drywall - hung, taped, floated, ready for paint | 580.00 SF | | 0.41 | 2.83 | 31.32 | 382.10 | 2,292.62 |
| 140. Texture drywall - smooth / skim coat | 580.00 SF | | 0.00 | 1.65 | 5.74 | 192.54 | 1,155.28 |
| 141. Seal/prime then paint the walls (2 coats) | 580.00 SF | | 0.00 | 0.96 | 9.92 | 113.34 | 680.06 |
| 142. R&R Baseboard - 3 1/4" | 72.50 LF | | 0.46 | 3.95 | 10.18 | 66.00 | 395.91 |
| 143. Paint baseboard - two coats | 72.50 LF | | 0.00 | 1.46 | 0.91 | 21.36 | 128.12 |
| 144. R&R Interior door unit | 1.00 EA | | 18.88 | 281.46 | 18.91 | 63.86 | 383.11 |
| 145. Paint door slab only - 2 coats (per side) | 2.00 EA | | 0.00 | 37.67 | 1.46 | 15.36 | 92.16 |
| 146. Paint door or window opening - 2 coats (per side) | 2.00 EA | | 0.00 | 31.52 | 0.88 | 12.78 | 76.70 |
| 147. Paint door/window trim & jamb - 2 coats (per side) | 2.00 EA | | 0.00 | 31.52 | 0.88 | 12.78 | 76.70 |
| 148. Detach & Reset Door knob - interior | 1.00 EA | 21.24 | 0.00 | 0.00 | 0.00 | 4.24 | 25.48 |
| FLOOR | | | | | | | |
| 149. Clean floor - Heavy | 318.22 SF | | 0.00 | 0.66 | 0.29 | 42.06 | 252.38 |

| Totals: Storage | | | | | 108.84 | 1,390.16 | 8,340.81 |

KIMBERLYDAWN

7/1/2022          Page: 11



**Bedroom**

Height: 8'

516.00 SF Walls
774.56 SF Walls & Ceiling
28.73 SY Flooring
64.50 LF Ceil. Perimeter

258.56 SF Ceiling
258.56 SF Floor
64.50 LF Floor Perimeter

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 150. Content Manipulation charge - per hour | 12.00 HR | | 0.00 | 39.43 | 0.00 | 94.64 | 567.80 |
| TWO WORKERS 3 HOURS EACH TO REMOVE AND RESET CONTENTS | | | | | | | |
| CEILING | | | | | | | |
| 151. R&R 1/2" drywall - hung, taped, floated, ready for paint | 258.56 SF | | 0.41 | 2.83 | 13.96 | 170.34 | 1,022.03 |
| 152. Acoustic ceiling (popcorn) texture | 258.56 SF | | 0.00 | 1.22 | 1.40 | 63.36 | 380.20 |
| 153. Seal & paint acoustic ceiling (popcorn) texture | 258.56 SF | | 0.00 | 1.25 | 7.68 | 66.18 | 397.06 |
| 154. Ceiling fan - Detach & reset | 1.00 EA | | 0.00 | 228.71 | 0.00 | 45.74 | 274.45 |
| WALLS | | | | | | | |
| 155. Detach & Reset Window blind - PVC - 2" - 14.1 to 20 SF | 1.00 EA | 31.82 | 0.00 | 0.00 | 0.00 | 6.36 | 38.18 |
| 156. R&R 1/2" drywall - hung, taped, floated, ready for paint | 516.00 SF | | 0.41 | 2.83 | 27.86 | 339.96 | 2,039.66 |
| 157. Texture drywall - smooth / skim coat | 516.00 SF | | 0.00 | 1.65 | 5.11 | 171.30 | 1,027.81 |
| 158. Seal/prime then paint the walls (2 coats) | 516.00 SF | | 0.00 | 0.96 | 8.82 | 100.84 | 605.02 |
| 159. R&R Baseboard - 3 1/4" | 64.50 LF | | 0.46 | 3.95 | 9.06 | 58.72 | 352.23 |
| 160. Paint baseboard - two coats | 64.50 LF | | 0.00 | 1.46 | 0.81 | 19.00 | 113.98 |
| 161. R&R Interior door unit | 1.00 EA | | 18.88 | 281.46 | 18.91 | 63.86 | 383.11 |
| 162. Paint door slab only - 2 coats (per side) | 2.00 EA | | 0.00 | 37.67 | 1.46 | 15.36 | 92.16 |
| 163. Paint door or window opening - 2 coats (per side) | 2.00 EA | | 0.00 | 31.52 | 0.88 | 12.78 | 76.70 |
| 164. Paint door/window trim & jamb - 2 coats (per side) | 2.00 EA | | 0.00 | 31.52 | 0.88 | 12.78 | 76.70 |
| 165. Detach & Reset Door knob - interior | 1.00 EA | 21.24 | 0.00 | 0.00 | 0.00 | 4.24 | 25.48 |
| FLOOR | | | | | | | |
| 166. R&R Carpet pad | 258.56 SF | | 0.12 | 0.61 | 11.87 | 40.12 | 240.74 |
| 167. R&R Carpet | 258.56 SF | | 0.27 | 2.87 | 50.50 | 172.48 | 1,034.86 |
| Totals: Bedroom | | | | | 159.20 | 1,458.06 | 8,748.17 |

| Total: Basement | | | | | 268.04 | 2,848.22 | 17,088.98 |

### Electrical/Mechanical

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 168. Rewire - average residence - copper wiring | 1,200.00 SF | | 0.00 | 4.50 | 66.96 | 1,093.40 | 6,560.36 |
| ALLOWANCE TO REWIRE DUE TO SOAKING OF WIRING, ELECTRICAL BOXES AND OUTLETS | | | | | | | |
| 169. Clean ductwork - Interior (PER REGISTER) | 12.00 EA | | 0.00 | 33.22 | 0.10 | 79.74 | 478.48 |
| ALLOWANCE TO CLEAN DUCTWORK DUE TO WATER AND DEBRIS INSIDE SYSTEM | | | | | | | |
| Totals: Electrical/Mechanical | | | | | 67.06 | 1,173.14 | 7,038.84 |

### Debris Removal

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 170. Dumpster load - Approx. 20 yards, 4 tons of debris | 1.00 EA | | 440.00 | 0.00 | 0.00 | 88.00 | 528.00 |
| Totals: Debris Removal | | | | | 0.00 | 88.00 | 528.00 |

### Labor Minimums Applied

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 171. Vinyl floor covering labor minimum | 1.00 EA | | 0.00 | 115.49 | 0.00 | 23.10 | 138.59 |
| 172. Window treatment repair | 1.00 EA | | 0.00 | 38.09 | 0.00 | 7.62 | 45.71 |
| 173. Tile / marble labor minimum | 1.00 EA | | 0.00 | 145.47 | 0.00 | 29.10 | 174.57 |
| 174. Mirror/shower door labor minimum | 1.00 EA | | 0.00 | 47.90 | 0.00 | 9.58 | 57.48 |
| 175. Finish hardware labor minimum | 1.00 EA | | 0.00 | 11.71 | 0.00 | 2.34 | 14.05 |
| Totals: Labor Minimums Applied | | | | | 0.00 | 71.74 | 430.40 |
| Line Item Totals: KIMBERLYDAWN | | | | | 1,967.68 | 13,864.86 | 83,187.99 |

## Grand Total Areas:

| | | | | | |
|---|---|---|---|---|---|
| 4,147.96 | SF Walls | 1,567.24 | SF Ceiling | 5,715.19 | SF Walls and Ceiling |
| 1,577.10 | SF Floor | 175.23 | SY Flooring | 508.99 | LF Floor Perimeter |
| 0.00 | SF Long Wall | 0.00 | SF Short Wall | 525.17 | LF Ceil. Perimeter |

| | | | | | |
|---|---|---|---|---|---|
| 1,577.10 | Floor Area | 1,688.43 | Total Area | 3,900.00 | Interior Wall Area |
| 2,337.00 | Exterior Wall Area | 259.67 | Exterior Perimeter of Walls | | |

| | | | | | |
|---|---|---|---|---|---|
| 0.00 | Surface Area | 0.00 | Number of Squares | 0.00 | Total Perimeter Length |
| 0.00 | Total Ridge Length | 0.00 | Total Hip Length | | |

## Summary

| | |
|---|---|
| Line Item Total | 67,355.45 |
| Material Sales Tax | 1,967.68 |
| Subtotal | 69,323.13 |
| Overhead | 6,932.43 |
| Profit | 6,932.43 |
| **Replacement Cost Value** | **$83,187.99** |
| **Net Claim** | **$83,187.99** |

Clifford N. Austin III, MBA, SCLA, CPCU

## Recap of Taxes, Overhead and Profit

|  | Overhead (10%) | Profit (10%) | Material Sales Tax (9%) | Storage Rental Tax (9%) | Local Food Tax (5%) |
|---|---|---|---|---|---|
| Line Items | 6,932.43 | 6,932.43 | 1,967.68 | 0.00 | 0.00 |
| Total | 6,932.43 | 6,932.43 | 1,967.68 | 0.00 | 0.00 |

## Recap by Room

**Estimate: KIMBERLYDAWN**

| Area: Main Level | | |
|---|---|---|
| Kitchen | 12,786.11 | 18.98% |
| Dining Room | 6,250.84 | 9.28% |
| Bedroom B | 5,310.18 | 7.88% |
| Bedroom A | 5,475.97 | 8.13% |
| Bathroom | 3,715.52 | 5.52% |
| Pantry | 987.20 | 1.47% |
| Closet | 891.21 | 1.32% |
| Living Room | 10,652.60 | 15.82% |
| Stairs | 715.80 | 1.06% |
| **Area Subtotal: Main Level** | **46,785.43** | **69.46%** |
| **Area: Basement** | | |
| Storage | 6,841.81 | 10.16% |
| Bedroom | 7,130.91 | 10.59% |
| **Area Subtotal: Basement** | **13,972.72** | **20.74%** |
| Electrical/Mechanical | 5,798.64 | 8.61% |
| Debris Removal | 440.00 | 0.65% |
| Labor Minimums Applied | 358.66 | 0.53% |
| **Subtotal of Areas** | **67,355.45** | **100.00%** |
| **Total** | **67,355.45** | **100.00%** |

## Recap by Category

| O&P Items | Total | % |
|---|---|---|
| **APPLIANCES** | 334.76 | 0.40% |
| **CABINETRY** | 7,166.56 | 8.61% |
| **CLEANING** | 636.10 | 0.76% |
| **CONTENT MANIPULATION** | 1,734.92 | 2.09% |
| **GENERAL DEMOLITION** | 4,864.20 | 5.85% |
| **DOORS** | 1,407.30 | 1.69% |
| **DRYWALL** | 12,568.21 | 15.11% |
| **ELECTRICAL** | 5,400.00 | 6.49% |
| **FLOOR COVERING - CARPET** | 924.60 | 1.11% |
| **FLOOR COVERING - CERAMIC TILE** | 3,580.91 | 4.30% |
| **FLOOR COVERING - VINYL** | 287.23 | 0.35% |
| **FLOOR COVERING - WOOD** | 12,946.18 | 15.56% |
| **FINISH CARPENTRY / TRIMWORK** | 2,463.80 | 2.96% |
| **FINISH HARDWARE** | 133.55 | 0.16% |
| **FRAMING & ROUGH CARPENTRY** | 2,852.68 | 3.43% |
| **LIGHT FIXTURES** | 228.71 | 0.27% |
| **MARBLE - CULTURED OR NATURAL** | 157.47 | 0.19% |
| **MIRRORS & SHOWER DOORS** | 133.55 | 0.16% |
| **PLUMBING** | 459.82 | 0.55% |
| **PAINTING** | 8,795.88 | 10.57% |
| **TILE** | 145.47 | 0.17% |
| **WINDOW TREATMENT** | 133.55 | 0.16% |
| **O&P Items Subtotal** | 67,355.45 | 80.97% |
| **Material Sales Tax** | 1,967.68 | 2.37% |
| **Overhead** | 6,932.43 | 8.33% |
| **Profit** | 6,932.43 | 8.33% |
| **Total** | 83,187.99 | 100.00% |

1    1-image19 (2)
     Date Taken: 4/26/2022



2    2-DSC_0463
     Date Taken: 6/12/2022



3   3-DSC_0464
    Date Taken: 6/12/2022



4   4-DSC_0465
    Date Taken: 6/12/2022



5    5-DSC_0466
     Date Taken: 6/12/2022



6    6-DSC_0467
     Date Taken: 6/12/2022



7   7-DSC_0468
    Date Taken: 6/12/2022



8   8-DSC_0469
    Date Taken: 6/12/2022



9    9-DSC_0470
     Date Taken: 6/12/2022



10   10-DSC_0471
     Date Taken: 6/12/2022



11  11-DSC_0472
    Date Taken: 6/12/2022



12  12-DSC_0473
    Date Taken: 6/12/2022



13   13-DSC_0474
     Date Taken: 6/12/2022



14   14-DSC_0475
     Date Taken: 6/12/2022



15   15-DSC_0476
     Date Taken: 6/12/2022



16   16-DSC_0477
     Date Taken: 6/12/2022



17   17-DSC_0480
     Date Taken: 6/12/2022



18   18-DSC_0481
     Date Taken: 6/12/2022



19   19-DSC_0482
     Date Taken: 6/12/2022



20   20-DSC_0483
     Date Taken: 6/12/2022



21   21-DSC_0484
     Date Taken: 6/12/2022



22   22-DSC_0485
     Date Taken: 6/12/2022



23   23-DSC_0486
     Date Taken: 6/12/2022



24   24-DSC_0488
     Date Taken: 6/12/2022



25   25-DSC_0489
     Date Taken: 6/12/2022



26   26-DSC_0490
     Date Taken: 6/12/2022



27   27-DSC_0491
Date Taken: 6/12/2022



28   28-DSC_0492
Date Taken: 6/12/2022



29 29-DSC_0493
   Date Taken: 6/12/2022



30 30-DSC_0494
   Date Taken: 6/12/2022



31  31-DSC_0495
    Date Taken: 6/12/2022



32  32-DSC_0496
    Date Taken: 6/12/2022



33   33-DSC_0497
     Date Taken: 6/12/2022



34   34-DSC_0498
     Date Taken: 6/12/2022



35   35-DSC_0499
     Date Taken: 6/12/2022



36   36-DSC_0500
     Date Taken: 6/12/2022



37   37-DSC_0502
      Date Taken: 6/12/2022



38   38-DSC_0503
      Date Taken: 6/12/2022



39   39-DSC_0506
     Date Taken: 6/12/2022



40   40-DSC_0507
     Date Taken: 6/12/2022



41   41-DSC_0509
     Date Taken: 6/12/2022



42   42-DSC_0510
     Date Taken: 6/12/2022



43   43-DSC_0511
     Date Taken: 6/12/2022



44   44-DSC_0512
     Date Taken: 6/12/2022



45   45-DSC_0513
     Date Taken: 6/12/2022



46   46-DSC_0514
     Date Taken: 6/12/2022



47   47-DSC_0515
     Date Taken: 6/12/2022



48   48-DSC_0516
     Date Taken: 6/12/2022



49   49-DSC_0517
     Date Taken: 6/12/2022



50   50-DSC_0518
     Date Taken: 6/12/2022



51   51-DSC_0519
     Date Taken: 6/12/2022



52   52-DSC_0520
     Date Taken: 6/12/2022



53 53-DSC_0521
   Date Taken: 6/12/2022



54 54-DSC_0522
   Date Taken: 6/12/2022



55   55-DSC_0523
     Date Taken: 6/12/2022



56   56-DSC_0524
     Date Taken: 6/12/2022



57   57-DSC_0525
     Date Taken: 6/12/2022



58   58-DSC_0526
     Date Taken: 6/12/2022



59   59-DSC_0527
     Date Taken: 6/12/2022



60   60-DSC_0528
     Date Taken: 6/12/2022



61   61-DSC_0529
     Date Taken: 6/12/2022



62   62-DSC_0530
     Date Taken: 6/12/2022



63  63-DSC_0531
    Date Taken: 6/12/2022



64  64-DSC_0532
    Date Taken: 6/12/2022



65   65-DSC_0533
     Date Taken: 6/12/2022



66   66-DSC_0534
     Date Taken: 6/12/2022



67 67-DSC_0535
Date Taken: 6/12/2022



68 68-DSC_0536
Date Taken: 6/12/2022



69   69-DSC_0537
     Date Taken: 6/12/2022



70   70-DSC_0538
     Date Taken: 6/12/2022



71   71-DSC_0539
     Date Taken: 6/12/2022



72   72-DSC_0540
     Date Taken: 6/12/2022



73  73-DSC_0541
    Date Taken: 6/12/2022



74  74-DSC_0542
    Date Taken: 6/12/2022



75   75-DSC_0543
     Date Taken: 6/12/2022



76   76-DSC_0544
     Date Taken: 6/12/2022



77   77-DSC_0545
     Date Taken: 6/12/2022



78   78-DSC_0546
     Date Taken: 6/12/2022



79  79-DSC_0547
    Date Taken: 6/12/2022



80  80-DSC_0548
    Date Taken: 6/12/2022



81  81-DSC_0549
    Date Taken: 6/12/2022



82  82-DSC_0550
    Date Taken: 6/12/2022



83   83-DSC_0551
     Date Taken: 6/12/2022



84   84-DSC_0552
     Date Taken: 6/12/2022



85   85-DSC_0553
     Date Taken: 6/12/2022



86   86-DSC_0554
     Date Taken: 6/12/2022



87   87-DSC_0555
     Date Taken: 6/12/2022



88   88-DSC_0556
     Date Taken: 6/12/2022



89  89-DSC_0557
    Date Taken: 6/12/2022



90  90-DSC_0558
    Date Taken: 6/12/2022



91   91-DSC_0559
     Date Taken: 6/12/2022



92   92-DSC_0560
     Date Taken: 6/12/2022



93   93-DSC_0561
     Date Taken: 6/12/2022



94   94-image0 (6)
     Date Taken: 4/26/2022



95   95-image1 (4)
Date Taken: 4/26/2022



96   96-image2 (4)
Date Taken: 4/26/2022



97 97-image3 (4)
Date Taken: 4/26/2022



98 98-image4 (4)
Date Taken: 4/26/2022



99 99-image5 (3)
   Date Taken: 4/26/2022



100 100-image6 (3)
    Date Taken: 4/26/2022



101  101-image7 (3)
     Date Taken: 4/26/2022



102  102-image8 (4)
     Date Taken: 4/26/2022



103  103-image9 (3)
       Date Taken: 4/26/2022



104  104-image10 (2)
       Date Taken: 4/26/2022



105 105-image11 (3)
  Date Taken: 4/26/2022



106 106-image12 (3)
  Date Taken: 4/26/2022



107  107-image13 (1)
     Date Taken: 4/26/2022



108  108-image14 (1)
     Date Taken: 4/26/2022



109  109-image15 (1)
     Date Taken: 4/26/2022



110  110-image16 (1)
     Date Taken: 4/26/2022



111  111-image17 (1)
     Date Taken: 4/26/2022



112  112-image18 (1)
     Date Taken: 4/26/2022



Main Level





Main Level



# This Page Intentionally Left Blank to Separate Documents

E-FILED IN OFFICE - SR
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
23-A-01895-1
4/13/2023 9:35 AM
TIANA P. GARNER, CLERK

## IN THE SUPERIOR COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

CRAIG FRITZ and                          )
KIMBERLY FRITZ,                          )
                                         )
        Plaintiffs,         )    CIVIL ACTION:
                                         )    FILE NO.: <u>23-A-01895-1</u>
        v.                  )
                                         )
STATE FARM FIRE AND CASUALTY             )
COMPANY, a foreign corporation,          )
                                         )
        Defendant.          )
_____  )

### STATE FARM FIRE AND CASUALTY COMPANY'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' COMPLAINT

COMES NOW, State Farm Fire and Casualty Company ("State Farm"), Defendant in the above-styled action, and hereby files its Affirmative Defenses and Answer to Plaintiffs Craig Fritz and Kimberly Fritz's Complaint and responds as follows:

### FIRST AFFIRMATIVE DEFENSE

Plaintiffs' Complaint fails to state a claim against State Farm upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

To the extent that Plaintiffs seek to assert a claim for breach of contract against State Farm for purported damage (the "Loss") to property located at 1278 Crumbley Road, McDonough, Georgia 30252 (the "Property"), which is the subject of Plaintiffs' Complaint, Plaintiffs' action should be dismissed because State Farm did not breach its contract with Plaintiffs and, at all times relevant to this action, has acted in accordance with the terms and conditions of State Farm homeowners policy number 11-E8-J903-8 (the "Policy") and all applicable Georgia law.

### THIRD AFFIRMATIVE DEFENSE

State Farm has not breached any duty owed under its insurance contract with Plaintiffs and, therefore, Plaintiffs may not recover from State Farm in any sum or manner whatsoever.

### FOURTH AFFIRMATIVE DEFENSE

To the extent that the Complaint seeks, or is construed as seeking, to recover bad faith penalties or attorneys' fees under O.C.G.A. § 33-4-6 against State Farm, such remedies are not available to Plaintiffs, as Plaintiffs failed to satisfy the substantive and/or procedural requirements for making a bad faith claim as required under O.C.G.A. § 33-4-6.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiffs may not recover from State Farm under the Policy because Plaintiffs breached the terms and conditions of the Policy.

### SIXTH AFFIRMATIVE DEFENSE

To the extent Plaintiffs have alleged causes of action for attorneys' fees pursuant to O.C.G.A. §§ 13-6-11 or 9-15-14, Plaintiffs' Complaint fails to state a claim against State Farm upon which relief can be granted.

### SEVENTH AFFIRMATIVE DEFENSE

State Farm is not indebted to Plaintiffs for the sum sought or in any amount whatsoever.

### EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs are barred from recovering the amount asserted in their Complaint because these alleged damages are speculative and Plaintiffs did not actually incur and/or are not likely to incur these damages.

### NINTH AFFIRMATIVE DEFENSE

Plaintiffs' alleged damages, if any, are limited by the coverage limits and conditions set

forth in the Policy.

## TENTH AFFIRMATIVE DEFENSE

Plaintiffs may not recover for any damages that occurred outside the subject policy period, or more than one year before March 8, 2023.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiffs may not recover any additional benefits under the Policy because Plaintiffs failed to satisfy their duties as required under the Policy. Specifically, the Policy provides in **SECTION I – CONDITIONS:**

> 2. **Your Duties After Loss**. After a loss to which this insurance may apply, ***you*** must cooperate with ***us*** in the investigation of the claim and also see that the following duties are performed:
>
>   a. give immediate notice to ***us*** or ***our*** agent . . .
>
>   b. protect the property from further damage or loss and also:
>
>     (1) make reasonable and necessary temporary repairs required to protect the property; and
>
>     (2) keep an accurate record of repair expenses;
>
>   c. prepare an inventory of damaged or stolen personal property:
>
>     (1) showing in detail the quantity, description, age, replacement cost, and amount of loss; and
>
>     (2) attaching all bills, receipts, and related documents that substantiate the figures in the inventory;
>
>   d. as often as ***we*** reasonably require:
>
>     (1) exhibit the damaged property;
>
>     (2) provide ***us*** with records and documents we request and allow ***us*** to make copies;

. . .

e.      submit to **us**, within 60 days after the loss, **your** signed, sworn proof of loss which sets forth, to the best of **your** knowledge and belief:

(1)      the time and cause of loss;

(2)      interest of the **insured** and all others in the property involved and all encumbrances on the property;

(3)      other insurance which may cover the loss;

(4)      changes in title or occupancy of the property during the term of this policy;

(5)      specifications of any damaged building and detailed estimates for repair of the damage;

(6)      an inventory of damaged or stolen personal property described in 2.c.;

(7)      receipts for additional living expenses incurred and records supporting the fair rental value loss; and

. . .

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiffs are not entitled to recover from State Farm because the Claim is not payable in accordance with the terms and provisions of the Policy. Specifically, the Policy provides in **SECTION I – CONDITIONS**:

8.      **Loss Payment**.  **We** will adjust all losses with **you**.  **We** will pay **you** unless some other person is named in the policy or is legally entitled to receive payment.  Loss will be payable 60 days after **we** receive **your** proof of loss and:

a.      reach agreement with **you**;

b.      there is an entry of a final judgment; or

c.      there is a filing of an appraisal award with **us**.

-4-

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiffs cannot maintain a claim for replacement cost benefits against State Farm because the Policy provides that State Farm will pay no more than the actual cash value to repair the covered damage to the dwelling unless actual repair or replacement is complete and the insureds have submitted documentation to State Farm establishing that the expense has been incurred. Marchman v. Grange Mut. Ins. Co., 232 Ga. App. 481, 483 (1998).

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiffs are unable to recover the damages set forth in their Complaint because this amount does not reflect the reasonable cost to replace or repair the alleged damages resulting from a covered cause of loss to the Property with equivalent construction for equivalent use and to return Plaintiffs to their pre-loss condition.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiffs may not recover from State Farm under the Policy because Plaintiffs failed to satisfy the conditions precedent to recovery. Specifically, the Policy provides in **SECTION I – CONDITIONS**:

> **6.**   **Suit Against Us**.  No action will be brought against **us** unless there has been full compliance with all of the policy provisions. Any action by any party must be started within one year after the date of loss or damage.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiffs are unable to recover for any alleged damages under **COVERAGE A – DWELLING** to the extent those damages did not result from a fortuitous loss and/or "accidental direct physical loss to property" as required by the Policy. The Policy provides in **SECTION I – LOSSES INSURED**:

**COVERAGE A – DWELLING**

*We* will pay for accidental direct physical loss to the property described in Coverage A, unless the loss is excluded or limited in **SECTION I – LOSSES NOT INSURED** or otherwise excluded or limited in this policy. However, loss does not include and *we* will not pay for, any *diminution in value*.

<u>**SEVENTEENTH AFFIRMATIVE DEFENSE**</u>

Plaintiffs may not recover from State Farm because the Policy specifically excludes coverage for Plaintiffs' claimed damages. Specifically, the Policy provides:

**SECTION I – LOSSES NOT INSURED**

1.      *We* will not pay for any loss to the property described in Coverage A which consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through m. below, regardless of whether the loss occurs abruptly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

   . . .

   f.      seepage or leakage of water, steam, or sewage that occurs or develops over a period of time:

      (1) and is:

         (a) continuous;

         (b) repeating;

         (c) gradual;

         (d) intermittent;

         (e) slow; or

         (f) trickling; and

      (2) from a:

(a) heating, air condition, or automatic fire protective sprinkler system;

(b) household appliance; or

(c) plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings, or floors.

***We*** will also not pay for losses arising from condensation or the presence of humidity, moisture, or vapor that occurs or develops over a period of time.

Item f. does not apply if the seepage or leakage of water, steam, or sewage is hidden from view within the walls, ceilings, or floors, and unknown by the ***insured***.

g.      wear, tear, decay, marring, scratching, deterioration, inherent vice, latent defect or mechanical breakdown;

h.      corrosion, electrolysis, or rust;

. . .

k.      settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations (including slabs, basement walls, crawl space walls, and footings), walls, floors, roofs, or ceilings;

. . .

However, ***we*** will pay for any resulting loss from items a. through l. unless the resulting loss is itself a Loss Not Insured as described in this Section.

. . .

2.      *We* will not pay for, under any part of this policy, any loss that would not have occurred in the absence of one or more of the following excluded events. *We* will not pay for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs abruptly or gradually, involves isolated or widespread damage, occurs on or off the ***residence premises***, arises from any natural or external forces, or occurs as a result of any combination of these:

. . .

   d.   **Neglect**, meaning neglect of the ***insured*** to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered.

. . .

3.      *We* will not pay for, under any part of this policy, any loss consisting of one or more of the items below. Further, *we* will not pay for any loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to, or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

. . .

   b.   defect, weakness, inadequacy, fault, or unsoundness in:

      (1)   planning, zoning, development, surveying, or siting;

      (2)   design, specifications, workmanship, repair, construction, renovation, remodeling, grading, or compaction;

      (3)   materials used in repair, construction, renovation, remodeling, grading, or compaction; or

      (4)   maintenance;

-8-

of any property (including land, structures, or improvements of any kind) whether on or off the ***residence premises***; …

. . .

### EIGHTEENTH AFFIRMATIVE DEFENSE

To the extent that Plaintiffs seek additional amounts in excess of the "actual cash value" of damage to the Property, Plaintiffs may not recover because Plaintiffs failed to comply with the policy terms and conditions relating to loss settlement. The Policy provides in **SECTION I – LOSS SETTLEMENT**:

Only the **Loss Settlement Provisions** shown in the ***Declarations*** apply. ***We*** will settle covered property losses according to the following. However, the valuation of any covered property losses does not include, and ***we*** will not pay, any amount for ***diminution in value***.

**COVERAGE A – DWELLING**

1.  **A1 – Replacement Cost Loss Settlement – Similar Construction**.

    a.  ***We*** will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the ***Declarations***, the damaged part of the property covered under **SECTION I – PROPERTY COVERAGES**, **COVERAGE A – DWELLING**, except for wood fences, subject to the following:

        (1)  until actual repair or replacement is completed, ***we*** will pay only the ***actual cash value*** of the damaged part of the property, up to the applicable limit of liability shown in the ***Declarations***, not to exceed the cost to repair or replace the damaged part of the property;

        (2)  when the repair or replacement is actually completed, ***we*** will pay the covered additional amount ***you*** actually and necessarily spend to repair or replace the

-9-

damaged part of the property, or an amount up to the applicable limit of liability shown in the ***Declarations***, whichever is less;

(3)　to receive any additional payments on a replacement cost basis, ***you*** must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify ***us*** within 30 days after the work has been completed; and

(4)　***we*** will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair or demolition of a ***building structure*** or other structure, except as provided under **OPTIONAL POLICY PROVISIONS, Option OL – Building Ordinance or Law**.

b.　Wood Fences: ***We*** will pay the ***actual cash value*** for loss or damage to wood fences, not to exceed the limit of liability shown in the ***Declarations*** for **COVERAGE A – Other Structures**.

### NINETEENTH AFFIRMATIVE DEFENSE

State Farm is not liable to Plaintiffs because Plaintiffs failed to properly mitigate their damages.

### TWENTIETH AFFIRMATIVE DEFENSE

Plaintiffs are estopped from recovering from State Farm benefits related to any exaggerated or exacerbated damages to the Property and personal property due to Plaintiffs' failure to mitigate their damages or protect the Property as required by the Policy, among other reasons.

### TWENTY-FIRST AFFIRMATIVE DEFENSE

The facts and circumstances forming the basis of Plaintiffs' Complaint were brought about by, and as a result of, Plaintiffs' conduct for which there is no coverage under the Policy, and Plaintiffs are therefore estopped or precluded from recovery herein.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

No act or omission on the part of State Farm caused or contributed to any of the alleged injuries or damages claimed by Plaintiffs and, therefore, Plaintiffs are not entitled to recover from State Farm.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

To the extent that Plaintiffs attempt to impose duties upon State Farm aside from those set forth in the Policy, Plaintiffs' claims fail in both fact and law. Georgia law does not impose extra-contractual duties on insurers or their adjusters when adjusting claims asserted by insureds. Moreover, at all times relevant hereto, State Farm has acted in good faith and in accordance with the terms and conditions of the Policy.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the doctrines of waiver and estoppel.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

State Farm denies that the damages alleged in the Complaint were proximately caused by any conduct on the part of State Farm.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

To the extent that Plaintiffs seek to establish a cause of action against State Farm based on the provisions of Georgia's Unfair Claims Settlement Practices Act contained in O.C.G.A. § 33-6-34, Plaintiffs fail to state a claim upon which relief could be granted. By its express terms, the Unfair Claims Settlement Practices Act does not create a private cause of action. O.C.G.A. § 33-6-37.

## <u>TWENTY-SEVENTH AFFIRMATIVE DEFENSE</u>

State Farm expressly reserves the right to assert any and all affirmative defense(s) and matter(s) in avoidance as may be disclosed during the course of additional investigation and discovery. Subject to and without waiving any of their other respective rights, jurisdictional or legal defenses, or objections, State Farm responds to the specific allegations contained in the individual and enumerated paragraphs of the Complaint as follows:

### <u>PARTIES</u>

1.

Upon information and belief, State Farm admits that Plaintiffs are residents of Henry County, Georgia.

2.

State Farm admits the allegations in Paragraph 2 of the Complaint, in part. State Farm admits that it maintains a registered agent in Gwinnett County, Georgia. State Farm responds further that it is incorporated in, and its principal place of business is in, Bloomington, Illinois and that it is a citizen of the State of Illinois. State Farm denies all remaining allegations in Paragraph

### <u>JURISDICTION AND VENUE</u>

3.

In response to the allegations contained in Paragraph 3 of the Complaint, State Farm states that it does not dispute the personal or subject matter jurisdiction of this Court.

4.

In response to the allegations contained in Paragraph 4 of the Complaint, State Farm states that it does not dispute venue in this Court.

5.

In response to the allegations contained in Paragraph 5 of the Complaint, State Farm responds that the Policy speaks for itself, and it denies all allegations contained in Paragraph 5 of the Complaint that are in direct contravention of the express language of the Policy.

## **THE POLICY**

6.

In response to the allegations contained in Paragraph 6 of the Complaint, State Farm responds that the Policy speaks for itself, and it denies all allegations contained in Paragraph 6 of the Complaint that are in direct contravention of the express language of the Policy. Responding further, State Farm admits that a true and accurate copy of policy no. 11-E8-J903-8 is attached to the Complaint as Exhibit "A."

7.

In response to the allegations contained in Paragraph 7 of the Complaint, State Farm responds that the Policy speaks for itself, and it denies all allegations contained in Paragraph 7 of the Complaint that are in direct contravention of the express language of the Policy. State Farm admits that the Property is insured under the Policy, subject to all terms, conditions, and exclusions contained within the Policy and applicable Georgia law.

8.

In response to the allegations contained in Paragraph 8 of the Complaint, State Farm responds that the Policy speaks for itself, and it denies all allegations contained in Paragraph 8 of the Complaint that are in direct contravention of the express language of the Policy. State Farm admits that the Property is insured under the Policy, subject to all terms, conditions, and exclusions contained within the Policy and applicable Georgia law.

-13-

9.

In response to the allegations contained in Paragraph 9 of the Complaint, State Farm responds that the Policy speaks for itself, and it denies all allegations contained in Paragraph 9 of the Complaint that are in direct contravention to the express language of the Policy. State Farm admits that the Property is insured under the Policy, subject to all terms, conditions, and exclusions contained within the Policy and applicable Georgia law.

## **SUDDEN AND ACCIDENTAL DAMAGE TO THE INSURED PROPERTY**

10.

In response to the allegations contained in Paragraph 10 of the Complaint, State Farm admits only that Property sustained water damage. State Farm cannot admit or deny when the Loss occurred or the remaining allegations contained in Paragraph 10 of the Complaint and, thus, it denies the same.

11.

In response to the allegations contained in Paragraph 11 of the Complaint, State Farm admits only that Plaintiffs made a claim under the Policy and that State Farm assigned adjusters to investigate Plaintiffs' claim for the purported Loss. State Farm denies the remaining allegations contained in Paragraph 11 of the Complaint.

12.

In response to the allegations contained in Paragraph 12 of the Complaint, State Farm admits only that Plaintiffs made the Property available to State Farm to inspect and investigate the purported Loss. State Farm denies that Plaintiffs fully cooperated with State Farm and all remaining allegations contained in Paragraph 12 of the Complaint.

13.

In response to the allegations contained in Paragraph 13 of the Complaint, State Farm admits that one of its adjusters, Shamaria Sands, performed a site inspection of the Property.

14.

In response to the allegations contained in Paragraph 14 of the Complaint, State Farm admits only that its representative, Shamaria Sands, investigated aspects of the Loss and the Claim. Except as otherwise admitted herein, State Farm denies all remaining allegations contained in Paragraph 14 of the Complaint. State Farm denies that it owed any duty to Plaintiffs beyond that set forth in the Policy.

15.

In response to the allegations contained in Paragraph 15 of the Complaint, State Farm admits that its final repair estimate is attached to the Complaint as Exhibit "B." However, State denies that the amount asserted in Paragraph 15 is the amount reflected in Exhibit "B" as well as all remaining allegations contained in Paragraph 15.

16.

State Farm denies the allegations contained in Paragraph 16 of the Complaint.

17.

In response to the allegations contained in Paragraph 17 of the Complaint, State Farm admits only that it received the written communication requesting payment that is attached as Exhibit "C" to the Complaint. State Farm denies that the amount cited in Paragraph 17 is the amount reflected in Exhibit "C" and all remaining allegations contained in Paragraph 17 of the Complaint.

18.

In response to the allegations contained in Paragraph 18 of the Complaint, State Farm responds that Exhibit "C" to the Complaint speaks for itself, and it denies all remaining allegations contained in Paragraph 18 of the Complaint.

19.

State Farm denies the allegations contained in Paragraph 19 of the Complaint.

20.

State Farm denies the allegations contained in Paragraph 20 of the Complaint.

21.

State Farm denies the allegations contained in Paragraph 21 of the Complaint.

22.

State Farm denies the allegations contained in Paragraph 22 of the Complaint.

## COUNT I: BREACH OF CONTRACT

23.

To the extent a response is required to the allegations contained in Paragraph 23 of the Complaint, State Farm hereby incorporates by reference its responses to Paragraphs 1 through 22 as if each were fully set forth herein.

24.

State Farm denies the allegations contained in Paragraph 24 of the Complaint.

25.

State Farm denies the allegations contained in Paragraph 25 of the Complaint, as stated.

26.

State Farm denies the allegations contained in Paragraph 26 of the Complaint.

-16-

27.

State Farm denies the allegations contained in Paragraph 27 of the Complaint.

28.

State Farm denies the allegations contained in Paragraph 28 of the Complaint.

29.

State Farm denies the allegations contained in Paragraph 29 of the Complaint.

30.

State Farm denies the allegations contained in Paragraph 30 of the Complaint.

31.

Paragraph 31 of the Complaint does not contain allegations that require a response from State Farm, but State Farm denies the relief sought and any allegations relied upon in seeking such relief.

## COUNT II: BAD FAITH PURSUANT TO O.C.G.A. § 33-4-6

32.

To the extent a response is required to the allegations contained in Paragraph 32 of the Complaint, State Farm hereby incorporates by reference its responses to Paragraphs 1 through 31 as if each were fully set forth herein.

33.

State Farm denies the allegations contained in Paragraph 33 of the Complaint.

34.

State Farm denies the allegations contained in Paragraph 34 of the Complaint.

35.

State Farm denies the allegations contained in Paragraph 35 of the Complaint, including

all subparts.

36.

State Farm denies the allegations contained in Paragraph 36 of the Complaint.

37.

State Farm denies the allegations contained in Paragraph 37 of the Complaint.

38.

State Farm denies the allegations contained in Paragraph 38 of the Complaint.

39.

State Farm denies the allegations contained in Paragraph 39 of the Complaint.

40.

Paragraph 40 of the Complaint does not contain allegations that require a response from State Farm, but State Farm denies the relief sought and any allegations relied upon in seeking such relief.

## **DEMAND FOR JURY TRIAL**

41.

Paragraph 41 of the Complaint does not contain allegations that require a response from State Farm, but State Farm denies the relief sought and any allegations relied upon in seeking such relief.

## **PRAYER FOR RELIEF**

42.

State Farm denies the allegations contained in Paragraph 42 of the Complaint, including all subparts.

43.

State Farm denies each and every remaining allegation contained in the Complaint not specifically admitted herein, including all of Plaintiffs' requests for relief.

WHEREFORE, State Farm requests that the following relief be granted:

a)      That Plaintiffs' Complaint be dismissed with prejudice;

b)      That State Farm be awarded assessments, interest, and late charges, in amounts to be proven at trial;

c)      That State Farm be awarded its reasonable attorneys' fees and costs incurred in asserting its rights through this action;

d)      That State Farm be awarded such other and further relief as this Court deems just and proper.

This 13th day of April, 2023.

Respectfully submitted,

**SWIFT, CURRIE, McGHEE & HIERS**

*/s/ Mark T. Dietrichs*
Mark T. Dietrichs, Esq.
Georgia Bar No. 221722
Kyle A. Ference, Esq.
Georgia Bar No. 683043
***Attorneys for Defendant State Farm
Fire and Casualty Company***

Swift, Currie, McGhee & Hiers, LLP
1420 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia 30309-3231
Office: (404) 874-8800
Fax: (404) 888-6199
Mark.Dietrichs@swiftcurrie.com
Kyle.Ference@swiftcurrie.com

-19-

## CERTIFICATE OF SERVICE

This is to certify that I have this day electronically filed the foregoing ***STATE FARM FIRE AND CASUALTY COMPANY'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT*** with the Clerk of Court by e-filing same using the Odyssey File & Serve System which will automatically send e-mail notification of said filing to the following attorney of record:

J. Remington Huggins, Esq.
Michael D. Turner, Esq.
THE HUGGINS LAW FIRM, LLC
110 Norcross Street
Roswell, GA 30075
remington@lawhuggins.com
mdturner@lawhuggins.com
***Attorney for Plaintiffs***

This <u>13th</u> day of <u>April</u>, 2023.

Respectfully submitted,

**SWIFT, CURRIE, McGHEE & HIERS**

*/s/ Mark T. Dietrichs*
Mark T. Dietrichs, Esq.
Georgia Bar No. 221722
Kyle A. Ference, Esq.
Georgia Bar No. 683043
***Attorneys for Defendant State Farm Fire and Casualty Company***

Swift, Currie, McGhee & Hiers, LLP
1420 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia 30309-3231
Office: (404) 874-8800
Fax: (404) 888-6199
Mark.Dietrichs@swiftcurrie.com
Kyle.Ference@swiftcurrie.com