# Exhibit F

# SETTLEMENT DEMAND

*McKibben Johnson, LLC*

## EFFIE EURINE

CBCS Received 11/29/2022

11/29/2022



### McKIBBEN JOHNSON, LLC
THE PERSONAL INJURY ADVOCATES
2295 Parklake Drive NE, Suite 434
Atlanta, Georgia 30345

FELICIA N. JOHNSON
fjohnson@mckibbenjohnson.com

TELEPHONE: 770-854-0400
FACSIMILE: 770-783-8984

November 21, 2022

**BY PRIORITY MAIL – SIGNATURE CONFIRMATION**

Ms. Alyssa Hinderman
CBCS Claim Services
800 Main Street
Dubuque, IA 52001

> RE:  Our Client:      Effie Eurine
>      Your Insured:    CRST Malone Inc.
>      Your Operator:   Yahajamon Cox
>      Date of Loss:    February 24, 2022
>      Your Claim No.:  CRS182746

### CONFIDENTIAL OFFER TO COMPROMISE DISPUTED CLAIM

Dear Ms. Hinderman:

This office represents Ms. Effie Eurine, who was injured by your operator on February 24, 2022. It is our understanding that the policy limits available to protect your insured from a larger judgment are $4,000,000.00. This understanding is predicated on information provided by your company, and we are expressly relying on your representation that policy limits are the amount stated. If your company contends the applicable policy limits are greater or less than the amount specified herein, please let us know your position within 10 days of receipt of this letter, as this information could materially alter the amount and other content of this demand.

Pursuant to O.C.G.A. § 9-11-67.1 and the common law, we are providing to you a reasonable opportunity to promptly settle substantial claims against your insured for an amount within policy limits. By timely accepting this offer, you will protect your insured from the following: Personal responsibility to pay a judgment in excess of policy limits; protracted litigation (not including that which may be necessary to make other insurance claims); the time and expense of attending depositions, participating in discovery and attending trial; the emotional cost attendant to reliving the collision and the harm caused to others by your insured's negligence; financial loss and other damages attributed to credit reports and ratings; litigation costs and attorneys' fees; and other losses typically caused by a failure to timely settle claims.

CBCS Received 11/29/2022
11/29/2022

## MOTOR COMMON OR CONTRACT CARRIERS

O.C.G.A. §40-2-140(c) provides that it shall be permissible under this article for any person having a cause of action arising under this article to join in the same action the motor common carrier or motor common carrier and the insurance carrier, whether arising in tort or contract. This is the one instance where Georgia law allows a direct action against the insurer of a motor vehicle in a lawsuit, in the event that this matter is not settled out of court.

## FACTS OF THE COLLISION AND NEGLIGENCE OF YOUR INSURED DRIVER

Liability appears not to be an issue in this matter. On February 28, 2022, Mr. Cox negligently and carelessly crashed into the rear end of Ms. Loretta Miller's vehicle, while she was traveling on Interstate Highway 75 at its intersection with Highway 20/81. Ms. Eurine was a passenger in Ms. Miller's vehicle. *See* Motor Vehicle Crash Report enclosed as Exhibit "A." **As you know, this is a clear liability case of reckless misconduct in which your insured was "Following Too Closely" in violation of O.C.G.A § 40-6-49.** *Id.* The impact from that violent collision totaled Ms. Miller's vehicle. *See* Photographs of Property Damage enclosed as Exhibit "B." Thus, there should be no dispute about your insured's legal responsibility to compensate Ms. Eurine for her injuries and damages.

## OUR CLIENT'S INJURIES AND TREATMENT RECEIVED

As a direct and proximate result of Yahajamon Cox's negligence, Ms. Eurine has suffered significant injuries, medical expenses and compensatory damages. Her damages include mental and physical pain, suffering and loss of enjoyment of life.

**As you can see from the Compendium of Medical Records enclosed as Exhibit "C," Ms. Eurine has suffered injuries to her neck, right and left shoulder blades, back, and head.** While at the scene, Ms. Eurine felt an immediate discomfort. Thus, she presented to Wellstar Spalding Regional Medical Center. After a thorough evaluation, Dr. Jehangir Pirzada diagnosed Ms. Eurine with Sprain of ligaments of cervical spine (S13.4XXA. Ms. Eurine was also prescribed Ketorolac 10 mg, Cyclobenzaprine 10 mg, and Lidocaine 5% patch. Upon discharge, she was advised to follow up with a physical therapist. Ms. Eurine was experiencing pain. Thus, she presented to Dr. Robert Howard of Absolute Healthcare & Rehab Center for further evaluation. After a thorough evaluation, Ms. Eurine was diagnosed with Cervical Sprain (S13.4XXA), Thoracic Sprain (S23.3XXA), Headache post-trauma (G44.309), and Muscle Spasms (M62.830). He also referred Ms. Eurine to chiropractic treatment. Due to unresolved pain, Ms. Eurine was referred to Resurgens Orthopaedics for further evaluation. After a thorough examination, Ms. Eurine was diagnosed with Low back pain (M54.50), Neck pain (M54.2), Cervical spondylosis (M47.812), and Lumbar spondylosis (M47.896. Ms. Eurine was prescribed Cyclobenzaprine 5 mg. Due to Ms. Eurine's injuries and complaints, Ms. Eurine was

referred for MRIs of the Lumbar and Cervical Spines. The impressions revealed the following:

1. At L2-3: Minimal disc bulge, biforaminal small caudal extrusions, mild-moderate facet arthropathy and flavum thickening results in mild stenosis.
2. At L3-4: Moderate severe facet arthropathy, moderate flavum thickening, mild grade 1 anterolisthesis of L3, uncovered mild-moderate disc bulge with biforaminal extension and biforaminal minimal facet osteophytes results in mild-moderate central and mild biforminal stenosis with mild lateral and posterior dural effacement by prominent epidural fat.
3. At L4-5: Severe right, moderate left facet arthropathy, right foraminal facet osteophyte, moderate disc narrowing, moderate grade 1 anterolisthesis of L4, greater on the right, uncovered disc bulge, lateralizing to the right with small right foraminal cranial extrusion and ligamentum flavum thickening with short pedicles at L5 results in moderate central, minimal left and moderate to moderate severe right foraminal stenosis with L4 nerve root abutment by disc without compressive deformity.
4. At L5-S1: Severe disc narrowing, mild retrolisthesis of L5, mild-moderate disc bulge with biforaminal extension with left central protrusion with 7 mm AP diameter, moderate facet arthropathy and prominent epidural fat results in mild-moderate central canal stenosis with ventral thecal sac deformity by the disc bulge and left central disc protrusion with complete ablation of the CSF space within the thecal sac secondary to epidural fat with moderate right and moderate severe left foraminal stenosis with biformainal L5 nerve root contact by disc with probable left L5 nerve root impingement between disc and pedicle.
5. At C2-3: Mild disc bulge, mild biformaminal disc-osteophyte complexes, moderate left facet arthropathy results in minimal central, minimal right and moderate left foraminal stenosis.
6. At C3-4: Mild disc bulge, minimal-small biforaminal disc-osteophyte complexes, mild left facet arthropathy results in mild central, mild right and mild-moderate left foraminal stenosis.
7. At C4-5: Mild-moderate disc bulge, left foraminal minimal disc-osteophyte complex with small right posterolateral-foraminal disc-osteophyte complex with mild left and moderate right facet arthropathy results in mild-moderate central canal stenosis mild ventral cord abutment without deformity, mild-moderate left and moderate to moderate severe right foraminal stenosis.
8. At C5-6: Mild disc bulge, biforaminal small disc-osteophyte complexes results in minimal central and mild biforaminal stenosis.
9. At C6-7: Mild disc bulge, right posterolateral minimal disc protrusion, left foraminal small disc-osteophyte complex results in minimal central, minimal right and mild-moderate left foraminal stenosis.
10. At C7-T1: Minimal biforaminal disc-osteophyte complexes, mild-moderate facet arthropathy results in mild-moderate biforaminal stenosis.

As a result to Ms. Eurine's diagnoses, she was referred to BenchMark Physical Therapy for additional treatment. Ms. Eurine presented to Dr. Calvin McMillan, and he diagnosed Ms. Eurine with Cervicalgia (M54.2) and Vertebrogenic low back pain (M54.51). Dr. McMillan recommended that Ms. Eurine receive physical therapy twice a week for six weeks. *Id.*

Suffice it to say, this clear liability car wreck has caused Ms. Eurine significant pain, suffering and loss of enjoyment of life. **Despite months of medical evaluation, care and treatment, Ms. Eurine continues to experience neck and back pain, resulting in sleep disturbances, difficulty concentrating and overall loss of enjoyment of life.**

## SPECIAL DAMAGES

Ms. Eurine has been issued numerous medical bills as a result of the treatment required to address her injuries. As detailed below, the total current medical bills are $17,483.70 (thus far). The following charts summarize Ms. Eurine's medical expenses:

| **Wellstar Spalding Regional Hospital** | $ 7,914.70 |
|---|---|
| **Georgia Emergency Group** | $     TBD |
| **S & S Imaging** | $     TBD |
| **Absolute Healthcare and Rehab Ctr** | $ 3,469.00 |
| **Resurgens Orthopaedics** | $ 6,100.00 |
| **BenchMark Physical Therapy** | $ 2,751.00 |
| **TOTAL MEDICAL EXPENSES** | $ 17,483.70 |

The corresponding records and bills are enclosed for your review and enclosed as Exhibit "D". The Georgia Emergency Group bill will be supplemented upon receipt of the same.

## GENERAL DAMAGES

Ms. Eurine is also entitled to compensation for her physical and mental pain and suffering, interference with normal living, interference with enjoyment of life, impairment of bodily health and vigor, loss of the capacity to labor, fear of the extent of her injuries and limits on her daily activities. Ms. Eurine has been painfully injured as a result of this crash. Georgia law requires that she also be compensated for pain and suffering. Pain and suffering is defined as follows:

> Damages for physical and emotional pain, discomfort, anxiety, hardship, distress, suffering, inconvenience, physical impairment, mental anguish, disfigurement, loss of enjoyment of life, loss of society and companionship, loss of consortium, injury to reputation, and all other nonpecuniary losses of any kind or nature.

Georgia law presumes that pain and suffering accompanies a physical injury. (See, *White v. Hammond*, 129 Ga. App. 408 (1973); *Cochran v. Lynch*, 126 Ga. App. 866 (1972). Pain and suffering includes mental suffering, anxiety, shock, and worry, as examples of what might also be included under mental pain and suffering. (*Williams v. Vinson*, 104 Ga. App. 886, 893 (1961). Pain and suffering also includes diminished capacity to labor. (*Myrick v. Stephanos*, 220 Ga. App. 520, 521(2) (1996).

## MATERIAL TERMS OF SETTLEMENT

Pursuant to O.C.G.A. § 9-11-67.1 and the common law, we are providing this reasonable opportunity to settle claims against your insured under the terms below. <u>Please note that some of the material terms are conditions of acceptance and not conditions of performance</u>. If you fail to timely perform a condition of acceptance, there will be no settlement agreement and we will be forced to file a lawsuit against your insured.  **<u>Time is of the essence for each and every condition.</u>**

1.    You have 30 days from your receipt of this offer to provide to us a written statement pursuant to O.C.G.A. § 9-11-67.1(b) as to whether you agree to all of the terms of this offer.

2.    The amount of monetary payment demanded is One Hundred, Eighty Thousand and 00/100 ($180,000.00). The payment must be made payable to MS. EFFIE EURINE AND HER ATTORNEYS – McKIBBEN JOHNSON LLC. The monetary payment must be actually received by the undersigned no later than ten (10) days after you provide a written statement of agreement. **<u>Our timely receipt of payment is an essential element of acceptance.</u>** If you do not ensure that we receive timely payment, within the deadline, there will be no settlement, and we will be forced to file a lawsuit against your insured.

3.    The party or parties to be released if this offer is accepted will be those released in accordance with the terms of the Release.

4.    The type of release offered is a General Release.

5.    The claims to be released are those released pursuant to a General Release.

Failure to accept this offer in strict compliance with the demanded terms constitutes a rejection of this offer, which includes any counteroffers. Any offers made by Yahajamon Cox and CRST Malone Inc. subsequent to receipt of this Demand for anything less than the offer shall be treated as a rejection of our demand for settlement and you shall be deemed to have forfeited the balance of time afforded you under the "Expiration Date," which is thirty (30) days after the receipt of this demand. If you do not timely fulfill all conditions of acceptance, this offer will be deemed rejected, and we will file a lawsuit against your insured to recover the total amount of losses caused by your insured instead of the limited amount afforded by your coverage and other coverage that may be available.

This firm's Tax Identification Number is: 26-3320170. We will be happy to provide a signed W-9 upon your request, but your request does not extend any time limits under this offer.

## DEMAND PURSUANT TO O.C.G.A. § 51-12-14

This demand is additionally made pursuant to O.C.G.A. § 51-12-14. However, in order to harmonize the terms of O.C.G.A. § 51-12-14 with the terms of O.C.G.A. § 9-11-67.1, the time period for you to pay the amount demanded shall be the longer period contained in O.C.G.A. § 9-11-67.1 as set forth in this demand. If you fail to accept this demand and timely pay the amount demanded, this demand is automatically withdrawn, and we will seek interest against your insured on the amount demand.

## DUTY TO AVOID BAD FAITH

Failure to consummate this settlement within the allotted time may be a violation of your duty to use ordinary care and good faith in handling a claim against an insured. *See, Smoot v. State Farm Mutual Automobile Insurance Company*, 299 F.2d. 525, 523 (5th Cir. 1962). As you are aware, an insurance company has a duty to give "at least equal consideration to the interests of the insured" and the "same faithful consideration it gives its own interest." *Southern Gen. Ins. Co. v. Holt*, 200 Ga. App. 759 (1991); *Jones v. Southern Home Ins. Co.*, 135 Ga. App. 385 (1975); *Great American Ins. Co. v. Exum*, 123, Ga. App. 515 (1971). Even a negligent failure to compromise a claim may give rise to tort liability to the insured. *Delancy v. St. Paul Fire & Marine Ins. Co.*, 947 F.2d 1536 (11th Cir. 1991); *Home Ins. Co. v. North River Insurance Co.*, 192 Ga. App. 551 (1989). Failure to comply within a reasonable time limit for such settlement may also give rise to liability of an insurer for the full amount of a jury verdict in the underlying case. *Holt*, 200 Ga. App. 759.

## INADMISSIBILITY IN LATER PROCEEDINGS

This letter constitutes an offer to compromise a claim. Consequently, this letter, and the information it contains, cannot be used at trial and does not constitute any admissions against our client's interests. O.C.G.A. § 24-4-408. This offer to compromise is made pursuant to O.C.G.A. § 24 3 37 which provides: ". . . admissions or propositions made with a view to a compromise are not proper evidence." It is made in that light and is not made as an "admission against interest" and is, therefore, inadmissible as evidence should a lawsuit ensue. Thus, there is a distinction between this offer to compromise and an admission against interest. See, *Charter Mortgage Company v. Ahouse*, 165 Ga. App 497 (1983), citing with approval, *Teasley v. Bradley*, 110 Ga. 497, 507 (1900); see also Judge Felton's special concurrence in *Swanson v. Hodges*, 96 Ga. App. 540 (1957); *Broyles v. Haas*, 48 Ga. App. 321, 323(1933).

In making this offer, and all offers made in the future regarding this claim, we are **NOT** agreeing to sign any type of indemnification agreement, nor am I personally agreeing to sign off on any documents that might potentially create an attorney-client conflict. Please understand that any acceptance of any offer on our behalf does not contemplate any specific terms not specifically negotiated.

### CONCLUSION

CBCS Claims has an opportunity to resolve this claim for an amount that is within CRST's coverage. We look forward to your timely response.

Regards,

Felicia N. Johnson

FNJ/
cc:   Ms. Effie Eurine (w/o Enclosures)