# Exhibit A

EFILED IN OFFICE
CLERK OF SUPERIOR COURT
FULTON COUNTY, GEORGIA

**2023CV374692**

DEC 29, 2022 03:57 PM

Cathelene Robinson, Clerk
Fulton County Superior Court

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

| | |
|---|---|
| VICKI HARRIS and<br>MICHAEL HARRIS,<br><br>    Plaintiffs,<br><br>vs.<br><br>MERCER GLOBAL ADVISORS, INC.,<br>E*TRADE SAVINGS BANK, and<br>E*TRADE SECURITIES, LLC,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)   Civil Action No. _____<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiffs Vicki Harris ("Ms. Harris") and Michael Harris ("Mr. Harris") (together "Plaintiffs") submit the following Complaint against Defendants Mercer Global Advisors, Inc. ("Mercer"), E*TRADE Savings Bank, and E*TRADE Securities, LLC (together "E*TRADE")(collectively the "Defendants").

### Introduction

1.

This is an action to correct unlawful practices, to vindicate Plaintiffs' rights, and to make Plaintiffs whole. This is brought by Plaintiffs against Defendants for breach of contract and breach of fiduciary duties, and for attorneys' fees for forcing Plaintiffs to litigate to seek recovery of the substantial losses incurred by Plaintiffs as a result of Defendants' breach of their fiduciary duties.

### Jurisdiction and Venue

2.

1

This court has subject matter jurisdiction of this claim under Article IV, Section 1, Paragraph 1 of the Georgia Constitution.

3.

Venue properly lies in this court pursuant to O.C.G.A. § 33-4-1 (2) and Article IV, Section 2, Paragraph 6 of the Georgia Constitution because both Mercer and E*TRADE have places of doing business in Fulton County, Georgia.

**The Parties**

4.

Mercer Global Advisors, Inc. is a Delaware Corporation qualified to do business in Georgia, with its principal place of business at 1200 17th Street, Suite 500, Denver, CO  80202. Mercer can be served with process through its registered agent, CT Corporations System, 289 S. Culver Street, Lawrenceville, GA  30046.

5.

E*TRADE Savings Bank is a Delaware Corporation doing business as E*TRADE Advisor Services and is qualified to do business in Georgia.  E*TRADE can be served with process at its headquarters located at 7103 South Revere Parkway, Centennial, CO  80112.

6.

E*TRADE Securities, LLC is a Delaware limited liability company qualified to do business in Georgia, with its principal place of business at 671 North Glebe Road, Arlington, VA 22203.  E*TRADE Securities, LLC can be served with process through its registered agent, CT Corporations System, 289 S. Culver Street, Lawrenceville, GA  30046.

7.

Plaintiff Vicki Harris is a natural person who is now and has been a resident of the State of Georgia at all times relevant to the facts of this Complaint.

8.

Plaintiff Michael Harris is a natural person who is now and has been a resident of the State of Georgia at all times relevant to the facts of this Complaint.

**Factual Background**

9.

Plaintiff is the daughter of Lois Walsh ("Walsh") and has been named the Executor of the Estate of Lois Walsh. Walsh passed away on July 8, 2020.

10.

For approximately one decade before her death, Walsh had an E*TRADE IRA account (the "Self-Directed Account") for which Walsh self-directed her own investments in consultation with E*TRADE financial consultant, Ronald Ryan McCallum.

11.

On October 15, 2018, Walsh signed her updated beneficiary designation form for the Self-Directed Account (a true and correct copy of which is attached as Exhibit A), designating the following beneficiaries in the noted percentages: Vicki Harris (30%); Michael Harris (10%); Robert Toepfert (10%);[1] Rick Toepfert (10%); Roger Toepfert (10%); Daniel Walsh (10%); Patricia Walsh (10%); and Amy Gentry (10%) (the "Operative Beneficiary Designation"). The Operative Beneficiary Designation was submitted to Mr. McCallum at E*TRADE on May 1, 2019.

12.

---

[1] Robert Toepfert is now deceased. The Estate of Robert J. Toepfert should now be substituted for his beneficiary interest in Ms. Walsh's accounts.

3

Walsh suffered from Parkinson's disease and her cognitive and physical health declined markedly in the years leading up to her death.

13.

As a result of this cognitive decline, Mr. McCallum recommended to Walsh that she consider hiring Mercer Global Advisors, Inc., an investment advisory company with which E*TRADE has a referral relationship, to manage her investments.

14.

On January 14, 2020 (six months prior to her death), Walsh accepted E*TRADE's recommendation and met with Nicholas Campbell and Devin Farrell of Mercer in Walsh's home without any family member present despite Walsh's compromised cognitive health.

15.

During this meeting, Walsh signed Retirement Account Applications pre-prepared by Mercer to transfer the balance in her Self-Directed Account into two new E*TRADE accounts for which Mercer would serve as Investment Advisor ("Mercer Managed Accounts").  A true and correct copy of the Mercer Managed Account applications are attached as Exhibit B.

16.

One of the Mercer Managed Account applications had a post-it note placed on it by Mercer indicating that the beneficiary section of the applications is "Recommended but Optional."

17.

On February 6, 2020, Plaintiff Ms. Harris, Executor of Walsh's Estate, had a phone conversation with Mr. McCallum of E*TRADE and learned for the first time of the January 14, 2020 meeting between Walsh and Mercer and that the Mercer Managed Accounts were opened.

Ms. Harris asked Walsh about the January 14 meeting and Walsh did not recall signing any paperwork or account applications with Mercer.

18.

Walsh entered hospice on or about July 1, 2020.

19.

Shortly thereafter, an emergency meeting was held among Ms. Harris, Walsh's attorney Brigette Palmer, and Mercer representative Nick Campbell during which time Campbell represented to Ms. Harris that the beneficiaries of the Mercer Managed Accounts were "already set up" and that Ms. Harris needed to only submit Walsh's death certificate to Mercer following Walsh's death and that Mercer would be distributing the IRA checks to Walsh's beneficiaries.

20.

Contrary to the representations made by Mr. Campbell to Ms. Harris during this call, the beneficiaries for the Mercer Managed Accounts were not "already set up" and there were no beneficiary designations for the Mercer Managed Accounts. E*TRADE had the beneficiary designation form for the Self-Directed Accounts, but neither E*TRADE nor Mercer had a beneficiary designation form for the Mercer Managed Accounts.

21.

Two weeks after Walsh's death, Mr. Campbell told Ms. Harris that he had received Walsh's Operative Beneficiary Designation from Mr. McCallum, which differed significantly from the default beneficiary provisions applicable to the Mercer Managed Accounts.

22.

Recognizing this difference and the significant financial implications associated with it, Mr. Campbell asked Ms. Harris if her brothers would be willing to "disclaim" their default percentage of 25% and agree to take the 10% that Walsh designated them to receive.

23.

The parties involved – Walsh, Ms. Harris, Mercer, and E*TRADE—all understood the Operative Beneficiary Designation to be the one that Walsh intended to control the distribution percentages to the beneficiaries of her IRA account regardless of whether the account was the Self-Directed Account or the Mercer Managed Accounts.

24.

Accordingly, the Mercer representatives—Mr. Campbell and Mr. Farrell—who visited with Walsh in her home on January 14, 2020, did not insist that Walsh, whom they knew to have considerable cognitive decline, which was the impetus for Mr. McCallum's referral, did not request that Walsh provide new beneficiary designation forms for the Mercer Managed Accounts. This is further confirmed by Mr. Campbell's verbal assurances to Ms. Harris and Walsh's attorney in July 2020 that the beneficiaries for the Mercer Managed Accounts were "already set up."

25.

Failure to abide by Walsh's Operative Beneficiary Designation would result in drastically different distribution amounts to Walsh's children, including Plaintiff, and would completely eliminate the asset distributions to four of Walsh's Operative Beneficiary Designation beneficiaries.

## COUNT I
## BREACH OF FIDUCIARY DUTIES ARISING *EX CONTRACTU*

26.

Plaintiffs incorporate paragraphs 1-25 above as if set forth fully herein.

27.

The Defendants owed Walsh and her beneficiaries, including Plaintiffs, fiduciary duties with regard to her IRA accounts, including candor, diligence and responsible behavior.

28.

Defendants breached their fiduciary duties by failing to require Walsh to have a family member or legal representative present at the January 14, 2020 meeting while knowing of Walsh's cognitive decline.

29.

Defendants further breached their fiduciary duties by failing to require Walsh to provide beneficiary designations for the Mercer Managed Accounts while knowing of Walsh's cognitive decline, the Operative Beneficiary Designations, and the financial magnitude of the effect of this failure.

30.

Defendants additionally breached their fiduciary duties by negligently or knowingly providing false information to Ms. Harris and Walsh's attorney regarding the Mercer Managed Accounts' beneficiary designation being "already set up".

31.

As a result of Defendants' actions and omissions outlined above, Defendants have breached one or more fiduciary duties owed to Plaintiffs.

32.

Plaintiffs have suffered damages by the breach of fiduciary duties and are entitled to damages in an amount to be determined by the enlightened conscience of the factfinder, including interest thereon.

## COUNT II
## NEGLIGENT MISREPRESENTATION AGAINST MERCER

33.

Plaintiffs incorporate paragraphs 1 - 32 above as if fully set forth herein.

34.

Defendant Mercer negligently supplied false information regarding the status of Walsh's beneficiary designations to Plaintiff Ms. Harris and Walsh's attorney.

35.

Plaintiffs reasonably relied to their financial detriment on Defendant Mercer's representation that Walsh's beneficiary designations for the Mercer Managed Accounts were "all set up".

36.

Defendant Mercer's negligent misrepresentation of the status of the Mercer Managed Accounts' beneficiary designations and Plaintiffs' reasonable reliance thereon proximately caused financial harm to both Plaintiffs as Ms. Harris will receive five (5) percent less of the total Walsh account amounts under the default beneficiary designation than she would have under the Operative Beneficiary Designation and Mr. Harris will receive nothing instead of the ten (10) percent he would have received under the Operative Beneficiary Designation.

## COUNT III
## EXPENSES OF LITIGATION UNDER O.C.G.A. § 13-6-11

37.

Plaintiffs incorporate paragraphs 1-36 above as if set forth fully herein.

38.

Defendants have acted in bad faith, have been stubbornly litigious, and have put Plaintiffs to the unnecessary trouble and expense of having to engage counsel and to resort to litigation to enforce their legal rights against Defendants in that, *inter alia*:

(a) Defendants have refused to apply to Operative Beneficiary Designation to the disbursement of Walsh's accounts;

(b) Defendants have refused to take ownership of the breaches of fiduciary duties and negligent misrepresentation, each pointing the finger at the other regarding these issues.

39.

Defendants' conduct justifies an award of Plaintiffs' expenses of litigation against Defendants under O.C.G.A § 13-6-11.

WHEREFORE, Plaintiff respectfully demands that she be granted the following relief:

(a) An Order whereby Defendants are required to disburse the Walsh IRA funds in accordance with her Operative Beneficiary Designation;

(b) A declaratory judgment indicating that Defendants have breached their fiduciary duties to Plaintiffs;

(c) In the alternative, damages reflecting the difference in amounts Plaintiffs actually receive if the IRS funds are disbursed according to the E*TRADE agreement's default beneficiary provision and the amounts Plaintiffs would have received if the IRA funds were disbursed according to the Operative Beneficiary Designation plus prejudgment interest thereon;

(e) Compensatory damages in an amount to be determined by the court, for Plaintiffs' emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life and special damages caused by Defendants' breach of fiduciary duties;

(e) Reasonable attorneys' fees together with any and all other costs associated with this action pursuant to O.C.G.A. § 13-6-11; and

(f) Other and further relief as the Court deems just and proper.

Respectfully submitted this 29th day of December, 2022.

       /s/ Leslie M. Bassett
Leslie M. Bassett, Georgia Bar No. 477037
Nancy B. Pridgen, Georgia Bar No. 587949
PRIDGEN BASSETT LAW, LLC
138 Bulloch Avenue
Roswell, Georgia  30075
(404) 551-5884 direct
(678) 812-3654 facsimile
leslie@pridgenbassett.com
nancy@pridgenbassett.com

*Counsel for Plaintiff*

10