UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

JENNIFER WAGNER,

    Plaintiff,

v.

GREENBERG TRAURIG LLP
and DAVID KURZWEIL,

    Defendants.

_____/

Civil Action File No.

_____

**JURY TRIAL DEMANDED**

## **COMPLAINT**

Plaintiff, Jennifer Wagner ("Ms. Wagner" or "Plaintiff") brings this Complaint against Greenberg Traurig LLP ("Greenberg") and David Kurzweil ("Mr. Kurzweil") and sets forth the following claims under the Americans with Disabilities Act, as amended by the ADA Amendments Act of 2008, 42 U.S.C. § 12101 *et seq*. (the "ADA"):

## **INTRODUCTION**

1.    Jennifer Wagner is an experienced legal assistant who spent decades supporting elite attorneys at top-tier firms such as Sutherland, Asbill & Brennan LLP, now known as Eversheds Sutherland (US), LLP ("Sutherland") and Duane Morris LLP ("Duane Morris"), including more than 20 years assisting a former president of the State Bar of Georgia.

2.     Greenberg Traurig LLP ("Greenberg") is a multinational law firm, and David Kurzweil ("Mr. Kurzweil") is one of its controlling partners. Mr. Kurzweil's book of business is so lucrative that Greenberg not only tolerates but condones and even facilitates misconduct from Mr. Kurzweil, including discrimination against and harassment of workers.

3.     Ms. Wagner has a chronic and serious medical condition that constitutes a disability as defined by the ADA and that was manageable before she went to work for Greenberg and Mr. Kurzweil. Specifically, Ms. Wagner has degenerative disc disease, the treatment and medication for which exacerbate her chronic pancreatitis.

4.     When Mr. Kurzweil and others at Greenberg learned of her illness, they harassed and discriminated against her, ultimately terminating her employment.

5.     Greenberg and Mr. Kurzweil sought to cover up their misconduct by creating a pretext for firing her.

6.     Defendants fabricated a negative performance history.

7.     Defendants pretended to engage in an interactive process for purposes of reasonable accommodation when they were, instead, using the process to frame their defense.

8.     Defendants' misconduct was willful, and Ms. Wagner is entitled to exemplary damages in addition to compensatory and actual damages, as well

as attorneys' fees and expenses, and she expressly seeks all relief available and appropriate under the ADA and all federal statutes providing remedies for violations of the ADA

## **PARTIES, JURISDICTION, AND VENUE**

9.     Greenberg Traurig LLP is a limited liability partnership formed under New York law, is registered to do business in Georgia as a foreign limited liability partnership, conducts (and at all relevant times conducted) business throughout the world and in Atlanta, Fulton County, Georgia, and has as its registered agent for service of process CorpDirect Agents, Inc., 289 South Culver Street, Lawrenceville, Georgia 30046. Greenberg acts towards its employees through various agents, including but not limited to individuals named as such herein, and Greenberg is liable for the conduct of its agents acting as such and for the damages Greenberg and its agents caused to Ms. Wagner. At all relevant times, Greenberg was an employer as that term is defined in the ADA, and it was a joint employer with Mr. Kurzweil.

10.     Defendant David Kurzweil was the attorney Ms. Wagner was hired and assigned primarily to work for at Greenberg. As such, he was one of her supervisors. Mr. Kurzweil is an owner of Greenberg and a key partner at Greenberg. As such, Mr. Kurzweil controls Greenberg with respect to its operations in Georgia and with respect to Greenberg's Global Restructuring & Bankruptcy Practice and its Financial Institutions Practice and is personally

liable, jointly and severally with Greenberg and others, for damages he caused to Ms. Wagner. At all relevant times, Mr. Kurzweil was an employer as that term is defined in the ADA, and he was a joint employer with Greenberg.

11.   Jennifer Wagner was a resident of Georgia at all relevant times and submits to the jurisdiction of this Court. At all relevant times, Ms. Wagner was an employee of Greenberg and Kurzweil as that term is defined in the ADA.

12.   These claims present federal questions because Plaintiff seeks to enforce rights codified in federal statutes including the ADA. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights), and 42 U.S.C. § 12101 *et seq*.

13.   Venue is proper in this Court because Greenberg, Mr. Kurzweil, and their agents committed unlawful employment practices here, as contemplated by 42 U.S.C. § 12117 and 42 U.S.C. § 2000e–5(f)(3). The acts and omissions giving rise to these claims occurred in Atlanta, Fulton County, Georgia.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

14.   Ms. Wagner has satisfied all administrative prerequisites to perfecting her claims under the ADA. Specifically, Ms. Wagner timely filed a Charge of Discrimination with the Equal Employment Opportunity

Commission, which issued notice of a right to sue. Ms. Wagner brings this action within 90 days of receipt of notice of her right to sue.

15.    Ms. Wagner has complied with all other conditions precedent to the assertion of her claims in this lawsuit.

## FACTS SUPPORTING CLAIMS

16.    Ms. Wagner began working for Greenberg and Mr. Kurzweil on or about January 19, 2021, and was an employee as that term is defined under the ADA.

17.    Ms. Wagner was a qualified individual because she was able to perform the essential functions of her job with or without reasonable accommodation.

18.    At all relevant times, Ms. Wagner had a physical impairment substantially limiting one or more major life activities, had a record of impairment, and was regarded as having an impairment.

19.    From her hiring until Mr. Kurzweil and others at Greenberg learned of her chronic and serious medical condition that constitutes a disability under the ADA, she received positive evaluations of her performance.

20.    Prior to her employment with Greenberg, Ms. Wagner had worked for more than two decades as a legal assistant, first at Sutherland and then at Duane Morris, spending most of her career as legal assistant to William D. Barwick, a former president of the State Bar of Georgia.

21.     While employed with Sutherland and Duane Morris, Ms. Wagner's duties and workload included assisting multiple attorneys at once and performing paralegal tasks, and her performance at both Sutherland and Duane Morris was deemed outstanding, including by former Bar President Barwick.

22.     When Ms. Wagner's long-time supervisor Mr. Barwick retired and Ms. Wagner's potential availability became known, Greenberg recruited her based on her reputation for outstanding work. In fact, although Ms. Wagner was recovering from neurosurgery, Greenberg pressured her to start work earlier than she preferred. Ms. Wagner agreed because Greenberg was allowing employees in staff positions such as hers to work remotely.

23.     On April 21, 2021, Greenberg legal assistant Michelle Thompson told Ms. Wagner to come into the office the following day, and Ms. Wagner notified Greenberg, including Ms. Thompson, that she had been coughing for two days and would not go into the office the next day.

24.     In mid-May, in anticipation of being in the office on May 17, 2021, Ms. Wagner reviewed Greenberg's protocols related to the worldwide coronavirus pandemic ("Greenberg's Covid Protocols"), and saw that Greenberg's Covid Protocols required employees to wear masks in common areas but not in their offices or at their workstations.

25.     On May 17, 2021, Ms. Wagner went in to the office and performed her work while complying with Greenberg's Covid Protocols.

26.     While working on May 17, 2021, Ms. Wagner began to feel ill due to the fact that her chronic and serious medical condition was flaring up. Ms. Wagner sent Mr. Kurzweil an email asking to speak with him but was ignored. Ms. Wagner sent Mr. Kurzweil another email informing Mr. Kurzweil that she was leaving to go to the emergency room.

27.     While Ms. Wagner was receiving treatment at the emergency room, she received a call on her cell phone from Greenberg Manager of Shareholder Services/HR Julie Robinson, who stated that Mr. Kurzweil had told her that Ms. Wagner was sick and going to the emergency room.

28.     Ms. Wagner returned to work the next day, May 18, 2021, and again performed her work while complying with Greenberg's Covid Protocols. While in common areas, Ms. Wagner wore a mask. While at her work station, as authorized by Greenberg's Covid Protocols, she generally did not wear a mask. Ms. Wagner wears eyeglasses to read her computer screen, and wearing a mask causes her eyeglasses to become fogged so that she cannot see.

29.     The day that Ms. Wagner returned to work, Mr. Kurzweil approached her work station and complained about her vaccination status and about her not wearing a mask at her workstation.

30.     In response to Mr. Kurzweil's complaint, Ms. Wagner immediately put on her mask.

31.     Later that same day, Mr. Kurzweil approached Ms. Wagner's workstation again, asking where a particular document was. Ms. Wagner was wearing a mask at the time but left her nose uncovered so that her eyeglasses would not become fogged.

32.     In response to Mr. Kurzweil's query regarding the location of a document, Ms. Wagner stood up to show him its location.

33.     When Ms. Wagner stood up, Mr. Kurzweil reacted out of proportion to the circumstances, throwing up his hand, leaping back, and shouting loud enough for her co-workers to hear, in sum and substance, "I already told you how uncomfortable you make me!" Mr. Kurzweil again complained about Ms. Wagner's vaccination status.

34.     Greenberg's discrimination and harassment continued after that and involved management-level employees of Greenberg, including its personnel department.

35.     Two days after Mr. Kurzweil shouted at Ms. Wagner, on May 20, 2021, Greenberg rewrote its Covid Protocols, tailoring them so that Ms. Wagner was not allowed to be in Mr. Kurzweil's presence.

36.    Ms. Wagner had been performing the essential functions of her job for months while working remotely, and so she still could perform the essential functions of her job.

37.    Greenberg's discrimination and harassment took a mental and physical toll on Ms. Wagner, with the consequent stress exacerbating her condition.

38.    On May 25, 2021, Ms. Wagner notified Mr. Kurzweil and Greenberg that she was not feeling well but stated she would attend to pressing matters if contacted on her cell phone. She made this notification by sending an email to all Greenberg employees to whom she directly reported, including Mr. Kurzweil, as well as other members of the team to which she was assigned.

39.    In late May or early June, a telephone conversation occurred among Ms. Wagner, Ms. Robinson, and Greenberg business director Tony Hatchett to follow up on Ms. Wagner's May 25 email. During the telephone conversation, Ms. Robinson stated, in sum and substance, that beginning June 9, Ms. Wagner needed to be in the office three days a week if she did not have an ADA accommodation in place by then. Ms. Wagner stated that she would address it with her neurologist at an appointment already scheduled with him for early June.

40.     On June 7, 2021, Ms. Wagner was admitted to the hospital for treatment of her pancreatitis, stayed for two nights, and was discharged on June 9, 2021.

41.     Ms. Wagner's hospital stay required follow-up medical treatment, including ongoing medications and additional visits to the doctor.

42.     Ms. Wagner informed Greenberg of her hospital admission on June 7, 2021.

43.     On or before June 9, 2021, Ms. Wagner provided Greenberg with her physician's written certification of a serious medical condition that constitutes a disability under the ADA and his recommendation that she be allowed to continue to work remotely for the next year.

44.     Greenberg's harassment intensified. While pretending to engage in an interactive process, Greenberg, for the first time, criticized her job performance and also critiqued her personal life.

45.     A few days after her hospital stay, Ms. Wagner notified Ms. Robinson that she had lost her personal cell phone and was in the process of replacing it, and Greenberg told her this demonstrated that Ms. Wagner was not qualified to perform her job.

46.     Because the primary issue appeared to be Mr. Kurzweil's distaste and fear that he would catch a disease, Ms. Wagner inquired about transferring into a different assistant position. Greenberg criticized Ms.

10

Wagner for suggesting that accommodation and said Ms. Wagner's making of suggestions reflected Ms. Wagner's lack of qualifications.

47.     Greenberg balked at continued remote work, and Ms. Wagner indicated she believed alternative accommodations could be made. Greenberg stated that Ms. Wagner's suggestions and inquiries were themselves the proof that she could not perform the essential requirements of her job. In an effort to understand Greenberg's position, Ms. Wagner asked Greenberg to identify the essential requirements of the job, and Greenberg responded with a verbal attack. When Ms. Wagner asked for an opportunity to review Greenberg's information (such as it was) with her physician, Greenberg refused to give her sufficient time to be seen by her doctor.

48.     Put simply, Greenberg used the interactive process to find reasons to terminate Ms. Wagner's employment.

49.     On July 7, 2021, Greenberg sent Ms. Wagner a letter terminating her employment.

50.     Greenberg's months of discrimination and harassment took a tremendous toll on Ms. Wagner, causing a precipitous decline in her mental and physical health. Ms. Wagner has been unable to return to work and will not be able to return to work.

## COUNT 1
## DISCRIMINATION AND FAILURE TO ACCOMMODATE
## IN VIOLATION OF THE ADA
### *ACTUAL DISABILITY*

51.    Ms. Wagner incorporates by reference all of the preceding paragraphs of the Complaint.

52.    Ms. Wagner is a qualified individual with a disability. Ms. Wagner's disability substantially limited one or more major life activities.

53.    Nevertheless, Ms. Wagner was able to perform the essential functions of her job with Defendants.

54.    Ms. Wagner requested a reasonable accommodation from Defendants relating to her disability: that she be permitted to continue to work remotely as she had been doing for months or that she be allowed to change positions or that she be allowed some other accommodation.

55.    Defendants denied Ms. Wagner the reasonable accommodation that she requested and terminated her employment.

56.    Defendants' denial and termination was an intentional and willful violation of the ADA in violation of Ms. Wagner's rights thereunder.

57.    Ms. Wagner is entitled to an award of lost wages, compensatory and punitive damages, attorneys' fees and costs, and other relief available under the ADA and all federal statutes providing remedies for violations of the ADA.

## COUNT 2
## DISCRIMINATION AND FAILURE TO ACCOMMODATE
## IN VIOLATION OF THE ADA
### *REGARDED AS DISABLED*

58.    Ms. Wagner incorporates by reference all of the preceding paragraphs of the Complaint.

59.    Ms. Wagner was a qualified individual with a disability.

60.    Defendants regarded Ms. Wagner as being disabled.

61.    Defendants disliked working with, or even near, someone they regarded as disabled.

62.    Defendants terminated Ms. Wagner based on their view of her as disabled.

63.    Defendants pretended to engage in an interactive dialogue for purposes of reasonable accommodation when in fact they were using the process to establish a pretext for terminating her employment.

64.    Defendants' termination of Ms. Wagner was an intentional and willful violation of the ADAAA in violation of Ms. Wagner's rights thereunder.

65.    Ms. Wagner is entitled to an award of lost wages, compensatory and punitive damages, attorneys' fees and costs, and other relief available under the ADA and all federal statutes providing remedies for violations of the ADA.

## COUNT 3
## RETALIATION IN VIOLATION OF THE ADA

66.    Ms. Wagner incorporates by reference all of the preceding paragraphs of the Complaint.

67.    Ms. Wagner was a qualified individual with a disability, having suffered from a chronic and serious medical condition that constitutes a disability as defined under the ADA.

68.    Ms. Wagner's disability substantially limited one or more of her major life activities.

69.    Ms. Wagner was able to perform the essential functions of her job with Defendants.

70.    Ms. Wagner requested a reasonable accommodation from Defendants relating to her disability.

71.    Ms. Wagner's request for a reasonable accommodation constitutes protected conduct under the ADA.

72.    Defendants terminated Ms. Wagner in retaliation for her protected conduct of requesting a reasonable accommodation under the ADA.

73.    Defendants terminated Ms. Wagner in retaliation for her protected conduct under the ADA.

74.    Defendants' termination of Ms. Wagner was an intentional and willful violation of the ADA in violation of Ms. Wagner's rights thereunder.

75.   Ms. Wagner is entitled to an award of lost wages, compensatory and punitive damages, attorneys' fees and costs, and other relief available under the ADA and all federal statutes providing remedies for violations of the ADA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Jennifer Wagner, demands trial by jury and prays for the following relief:

(i)   That the Court take jurisdiction of this matter;

(ii)   That process be served;

(iii)   That Ms. Wagner be awarded a declaratory judgment that Defendants have violated the ADA, 42 U.S.C. § 12101 *et seq.*;

(iv)   That the Court enter a permanent injunction, prohibiting Defendants from engaging in unlawful employment practices in violation of the ADA;

(v)   That the Court award Ms. Wagner back pay and all benefits, privileges, and rights previously denied;

(vi)   That the Court order front pay;

(vii)   That the Court award Ms. Wagner liquidated, compensatory, and punitive damages in an amount to be determined by the trier of fact;

(viii) That the Court award Ms. Wagner her costs in this action

and reasonable attorneys' fees;

(ix)    That the Court grant to Ms. Wagner the right to have a trial by

jury on all issues triable to a jury; and

(x)    That the Court grant such additional relief as the Court deems

proper and just.

Dated: April 17, 2023.

Respectfully submitted,

/s/  *Elizabeth Graddy*
Elizabeth Graddy, Esq.
Georgia Bar No. 056838
Sanchez-Medina, Gonzalez, Quesada, et al.
3355 Lenox Road, Suite 750
Atlanta, Georgia 30326
Telephone:  (404) 863-8789
Telecopier:  (404) 393-5560
egraddy@ SMGQLAW.com

*Counsel for Plaintiff*