FILED 3/16/2023 4:49 PM CLERK OF SUPERIOR COURT DEKALB COUNTY GEORGIA

### IN THE SUPERIOR COURT OF DEKALB COUNTY
### STATE OF GEORGIA

Chulhaeng Huh

Case No.:   23CV3067

_____

_____

Plaintiff

VS

Lemonade Insurance Company

RA: United Corporate Services, Inc.

4228 First Avenue, Suite 14, Tucker, GA, 30084

Defendant

# SUMMONS

## TO THE ABOVE NAMED DEFENDANT(S):

You are hereby summoned and required to file electronically with the Clerk of said court at https://efilega.tylerhost.net/ofsweb and serve upon the Plaintiff's attorney, whose name, address and email is:

An answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This ____16____ day of ____March____, 20__23__.

Honorable Debra DeBerry
Clerk of Superior Court
    /s/ Emmanuel May
By_____
      Deputy Clerk

E-Filing and E-Service

Pursuant to the Superior Court of DeKalb County's E-File Order, dated December 27, 2016, and available at www.dksuperiorclerk.com/civil, the parties must file all documents electronically through eFileGA unless expressly exempted under the Rule. All orders and notices from the Court will be electronically filed and served through eFileGA. The parties must register for an eFileGA account, link their service contact information with the case and the party represent, and take whatever steps are necessary to ensure that correspondence from eFileGA reaches the parties' inboxes. To access eFileGA, please go to http://www.odysseyefilega.com/

Instructions: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.

EXHIBIT A

FILED 3/16/2023 4:49 PM CLERK OF SUPERIOR COURT DEKALB COUNTY GEORGIA

## IN THE SUPERIOR COURT OF DEKALB COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| CHULHAENG HUH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE NO.: |
| | ) | |
| LEMONADE INSURANCE COMPANY, | ) | 23CV3067 |
| a foreign corporation, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### COMPLAINT

**COMES NOW** Plaintiff **Chulhaeng Huh**, by and through the undersigned counsel, and files this Complaint for breach of first party property insurance contract and bad faith denial of insurance coverage against Defendant, **Lemonade Insurance Company**, and in support hereof, states as follows:

### PARTIES

1.

Plaintiff is an adult resident citizen of Colombia County, Georgia.

2.

Upon information and belief, Defendant is a foreign insurance company, registered to transact business in, and in fact transacts business in, the State of Georgia. Defendant is in the business of insuring risks and properties located throughout the United States, including Georgia. Defendant maintains an office at 4228 First Avenue, Suite 14, Tucker, GA, 30084 where it may be served with process through its registered agent, United Corporate Services, Inc., as identified by the state of Georgia Secretary of State registry.

## JURISDICTION AND VENUE

3.

This Court has subject matter jurisdiction over this action for breach of contract and bad faith denial of an insurance claim because the breached contract was entered into, and concerned property in, the state of Georgia and the amount in controversy exceeds $15,000.00. This Court has personal jurisdiction over Defendant because Defendant is transacting business and insuring properties in the state of Georgia and has appointed a registered agent for service of process in Georgia pursuant to O.C.G.A. § 33-4-1 and O.C.G.A. § 33-4-4.

4.

Venue is proper in this Court because Defendant has a registered agent doing business in Dekalb County pursuant to O.C.G.A. § 33-4-1, O.C.G.A. § 33-4-4.

5.

In addition, by virtue of the express terms of the insurance policy at issue, Defendant has consented to jurisdiction and venue of this Court.

## THE POLICY

6.

Prior to March 16, 2022, and in consideration of the premiums paid to Defendant by the Plaintiff, Defendant issued a policy with Policy No. LP229F11F06 (the "Policy"). A true and accurate copy of the Policy is attached hereto as Exhibit "A."

7.

The Policy provides numerous coverages for the real and personal property located at 1009 Peninsula Crossing, Evans, GA 30809 (the "Insured Property," "Property," or the "home"). The

2

Policy likewise insures against loss due to Hail and Wind, subject to a deductible of $1.000.00 per occurrence. (*See* Ex. A).

8.

The Policy is an all-perils policy providing coverage for sudden and accidental direct physical loss to the dwelling, other structures, and personal property. The Policy covers property repairs and personal property on a full replacement cost basis. (*See* Ex. A).

9.

The Policy covers various types of expenses, including reasonable and necessary costs incurred for temporary repairs to protect covered property from further imminent covered loss and additional living expenses. (*See* Ex. A).

## **SUDDEN AND ACCIDENTAL DAMAGE TO THE INSURED PROPERTY**

10.

On or about March 16, 2022, the above-referenced property suffered damage from a sudden and accidental direct physical loss resulting from Hail and Wind (the "Loss"). The Policy was in effect at the time of the Loss.

11.

Plaintiff promptly and timely notified Defendant of the damage to the Property resulting from the Loss and made a claim pursuant to the Policy. As a result, Defendant assigned an adjuster ("Adjuster") to investigate Plaintiff's claim for sudden and accidental direct physical loss. The Adjuster was authorized as Defendant's representative and agent for purposes of the claim.

12.

At all times, Plaintiff made themselves and the Property available to, and fully cooperated with, the Defendant and its representative and agent to inspect and investigate the damages caused by the loss.

13.

Defendant, through its authorized representative and agent, Adjuster, performed a site inspection of the Property.

14.

Defendant's authorized representative and agent, Adjuster, incurred the duty of acting with due diligence in achieving a proper disposition of the Plaintiff's claim when Adjuster undertook the handling of the claim.

15.

Defendant, through its authorized representative and agent, Adjuster, grossly underestimated the scope of loss suffered by the Plaintiff as a result of the Hail and Wind event. Defendant failed to properly indemnify the Plaintiff and denied Plaintiff's claim for insurance benefits in its entirety. A true and accurate copy of the Defendant's denial is attached hereto as Exhibit "B."

16.

As a result of Defendant's gross underestimation, Plaintiff requested multiple times that Defendant reconsider its position regarding Defendant's estimate. Defendant refused to comply with the Plaintiff's requests and continued to frivolously and baselessly deny any additional payment on Plaintiff's claim. Furthermore, the Defendant continued to ignore the opinions of the

Plaintiff's experts as to the extent of damage and the amount it will cost the Plaintiff to be properly indemnified for the Loss.

17.

Plaintiff made repeated requests for payment of the claim, including a written demand sent to Defendant on December 1, 2022. A true and accurate copy of the written demand is attached hereto as Exhibit "C."  Despite this demand for $54,044.64 less previous payments and the applicable deductible, Defendant continued to frivolously deny Plaintiff's claim without just cause when, under one or more portions of the Policy, the obligation to settle the claim became reasonably clear.

18.

The Plaintiff's December 1, 2022, correspondence (Ex. C) to Defendant was a letter of representation from Plaintiff's counsel and a formal 60-Day demand, pursuant to the guidelines set forth in O.C.G.A. §33-4-6. After putting Defendant on notice of a potential lawsuit through the formal 60-Day demand, the Defendant continued to deny Plaintiff's claim without just cause.

19.

Defendant did not act fairly or honestly toward the Plaintiff, or with due regard to the Plaintiff's claim and interests, when Defendant, under all circumstances articulated herein, failed to indemnify the Plaintiff for their damages in direct breach of the terms and conditions of the Policy.

20.

Plaintiff has fulfilled all conditions precedent and contractual obligations under the Policy prior to this lawsuit, or the same were waived.

21.

There exists a genuine, justifiable controversy between the Plaintiff and the Defendant as to whether Defendant is responsible for further indemnification owed to the Plaintiff as a result of the Loss. Plaintiff has exhausted every reasonable means possible to resolve this dispute with the Defendant. With no other option, Plaintiff was constrained to hire legal counsel, incur additional expenses, and file this lawsuit.

22.

Plaintiff has suffered loss under the Policy in an amount to be determined at trial.

### COUNT I: BREACH OF CONTRACT

23.

Plaintiff hereby adopts, re-alleges, and incorporates their allegations set forth in Paragraphs 1-22 of this Complaint as if fully set forth herein.

24.

Plaintiff has performed all conditions precedent to the Defendant's obligation to perform under the Policy including, without limitation, the timely payment of premiums, timely notice of the claim, and post loss obligations, or the Defendant has waived any and all other conditions.

25.

Under the terms of the Policy, Defendant is required to fully indemnify the Plaintiff for the damages sustained from the Loss.

26.

Despite Plaintiff's timely written demand, Defendant failed to provide full indemnification to the Plaintiff under the terms of the Policy.

27.

Defendant failed to act in good faith and fair dealing under the terms of the Policy by refusing to properly investigate and fully indemnify the Plaintiff according to the terms of the Policy.

28.

As a result of the Defendant's denying and delaying payment in Plaintiff's claim, Plaintiff sustained additional covered losses from mitigation and temporary repairs of the direct physical damage to the Property in an amount to be determined at trial.

29.

The Plaintiff suffered damages as a direct result of Defendant's failure to indemnify the Plaintiff for their loss.

30.

All foregoing conduct constitutes a breach of contract that has resulted in damages to the Plaintiff.

31.

**WHEREFORE,** Plaintiff prays for this Court to enter an award in Plaintiff's favor of compensatory damages, attorneys' fees, pre- and post-judgment interest, and such other and further relief as the Court may deem just and proper.

### <u>COUNT II: BAD FAITH PURSUANT TO O.C.G.A. § 33-4-6</u>

32.

Plaintiff hereby adopts, re-alleges, and incorporates their allegations set forth in Paragraphs 1-31 of this Complaint as if fully set forth herein.

33.

By failing to achieve a proper disposition of Plaintiff's claim, Defendant acted frivolously, and without a reasonable basis or justification, in contravention of its duty of good faith and fair dealing.

34.

Defendant did not attempt in good faith to settle the Plaintiff's claim when it could have, and should have, done so under all attendant circumstances had it acted fairly and honestly toward the Plaintiff and with due regard for the Plaintiff's interests.

35.

Defendant's failures to adjust Plaintiff's claim in good faith include, but are not limited to:

(1) Knowingly misrepresenting to claimants, and insureds, relevant facts or policy provisions relating to coverages at issue (*see* O.C.G.A. § 33-6-34(1));

(2) Failing to acknowledge with reasonable promptness pertinent communications with respect to claims arising under its policies (*see* O.C.G.A. § 33-6-34(2));

(3) Failing to adopt and implement procedures for the prompt investigation and settlement of claims arising under its policies (*see* O.C.G.A. § 33-6-34(3));

(4) Not attempting in good faith to effectuate prompt, fair, and equitable settlement of claims submitted in which liability has become reasonable clear (*see* O.C.G.A. § 33-6-34(4));

(5) Compelling insureds or beneficiaries to institute suits to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in suits brought by them (*see* O.C.G.A. § 33-6-34(5));

(6) Refusing to pay claims without conducting a reasonable investigation (*see* O.C.G.A. § 33-6-34(6));

(7) When requested by the insured in writing, failing to affirm or deny coverage of claims within a reasonable time after having completed its investigation related to such claim or claims (*see* O.C.G.A. § 33-6-34(7)); and

(8) When requested by the insured in writing, failing in the case of payments or offers of compromise to provide promptly a reasonable and accurate explanation of the basis for such action (or, in the case of claims denials, providing said denial to the insured in writing) (*see* O.C.G.A. § 33-6-34(10)).

36.

The above and foregoing actions of Defendant constitute bad faith pursuant to O.C.G.A. § 33-4-6, as the Defendant refused to pay Plaintiff's covered loss within sixty (60) days after Plaintiff's timely written demand (Ex. C) for payment without a reasonable basis for doing so.

37.

Defendant frivolously, and without a reasonable basis, denied proper indemnification to the Plaintiff for their covered loss.

38.

Defendant's refusal to indemnify the Plaintiff was done frivolously, without a reasonable basis, and in bad faith.

39.

As a result of Defendant's above-referenced bad faith breach of the Policy issued to the Plaintiff, and pursuant to O.C.G.A. § 33-4-6(a), Defendant is liable for penalties in the amount of "not more than fifty percent (50%) of the liability of the insurer for the loss, or $5,000.00, whichever is greater, and all reasonable attorneys' fees for the prosecution of the action against the Insurer."

40.

**WHEREFORE,** Plaintiff prays for this Court to enter an award, in Plaintiff's favor, of the statutory award in an amount of fifty percent (50%) of the total compensatory damages awarded or $5,000.00, whichever is greater, along with a statutory allowance for reasonable attorneys' fees in prosecuting this action, pursuant to O.C.G.A. § 33-4-6, for Defendant's unfair claims settlement practices and bad faith refusal to pay Plaintiff's loss claim when it could and should have done so, had it acted fairly and reasonably toward the insured.

## DEMAND FOR JURY TRIAL

41.

Plaintiff requests a trial by Jury on all counts of the Complaint.

## PRAYER FOR RELIEF

42.

**WHEREFORE**, Plaintiff requests that after due proceedings are had, all appropriate penalties be assessed against the Defendant and that the Plaintiff receive any and all damages at law to which they are justly entitled, and thus prays for judgment against the Defendant, as follows:

a.  That this Court grant judgment in favor of the Plaintiff and against Defendant in an amount to be determined at trial for breach of insurance contract.

b.  Compensatory damages, including all damages to the Plaintiff by the Defendant and any resulting expenses.

c.  Bad faith damages in an amount of fifty percent (50%) of the total compensatory damages awarded or $5,000.00, whichever is greater, for Defendant's bad faith delay, denial, and its

10

intentional, frivolous failure to conduct a reasonable investigation of the Plaintiff's claim without a reasonable basis;

d.  Plaintiff's attorneys' fees and costs of suit in this action;

e.  Plaintiff's consultant and expert fees;

f.  Pre- and post-judgment interest in the maximum amount allowed by law;

g.  All statutory penalties;

h.  Any and all applicable multipliers; and,

i.  Any and all other relief that the Court may deem just and proper, whether such relief sounds in law or equity.

Respectfully submitted, this 16th day of March, 2023.

For: The Huggins Law Firm, LLC,

*/s/ Foster L. Peebles*

**The Huggins Law Firm, LLC**
110 Norcross Street
Roswell, GA 30075
(o) (770) 913-6229
(e) mdturner@lawhuggins.com
(e) fpeebles@lawhuggins.com

Foster L. Peebles, Esq.
Georgia Bar No.: 410852
Michael D. Turner, Esq.
Georgia Bar No.: 216414

*Attorneys for the Plaintiff*

11

EXHIBIT A

# You're Amazing.

You're now part of a special group of people, who participate in making history. Together, we'll be able to make insurance an honest, simple and fun experience.

Thanks for joining, we're sure you're gonna love it here :)



© Copyright 2017 by LEMONADE INSURANCE COMPANY (a stock company) | 5 Crosby, New York, NY 10013 | help@lemonade.com | LEM-DEC-01



5 Crosby St., New York, NY 10013
HOMEOWNERS POLICY DECLARATIONS

POLICY NUMBER
LP229F11F06

POLICY START DATE
Jun 28, 2022 12:01am

POLICY EXPIRES ON
Jun 28, 2023 12:01am

NAME OF INSURED
Chulhaeng Huh
Eunae Ma

INSURED PROPERTY ADDRESS
1009 Peninsula Crossing,
Evans, GA, 30809

INSURED EMAIL
ragatoruf@hotmail.com

MORTGAGEE
South State Bank, N.A.
ISAOA, Attn: Mortgage
Servicing
P.O. Box 961292
Ft. Worth, TX 76161-0292
Loan Number #90946388

COVERAGE SUMMARY

| COVERAGE | MAXIMUM AMOUNT | COST |
|---|---|---|
| Dwelling | $600,000 | Included |
| Other Structures | $60,000 | Included |
| Personal Property | $320,000 | Included |
| Loss Of Use | $180,000 | Included |
| Personal Liability | $300,000 | Included |
| Medical Payments To Others | $1,000 | Included |
| Portable Electronics | $1,500 | Included |
| Mold Property Damage | $30,000 | Included |
| Extended Reconstruction Cost | 25% | $4.5 |
| $1,000 Deductible | | -$76 |
| **Total Premium** | | **$1,839 ($1,839/yr)** |

Copyright 2017 by LEMONADE INSURANCE COMPANY (a stock company) | 5 Crosby St., New York, NY 10013 | help@lemonade.com | LEM-DEC-01

DISCOUNTS

| FOR | AMOUNT |
|---|---|
| **Fire Protection** | $123.00 |
| Fire Extinguisher | |
| Local Fire Alarm | |
| Local Smoke Alarm | |
| **Theft Protection** | $78.00 |
| Deadbolts | |
| Local Burglar Alarm | |
| **Water Protection** | $38.00 |
| Alarm | |
| **Wind Protection** | $56.00 |
| Storm Shutters | |
| **Insurance Score** | $143.00 |
| **Structure** | $334.00 |
| **Total Discount** | **$772.00 (Annual)** |

Copyright 2017 by LEMONADE INSURANCE COMPANY (a stock company) | 5 Crosby St., New York, NY 10013 | help@lemonade.com | LEM-DEC-01

ADDITIONAL DOCUMENTS ATTACHED TO THIS POLICY

Extended Reconstruction Cost

Scheduled Personal Property Terms

Swimming Pool Exclusion

Special Provisions

Canine Liability Exclusion Endorsement

Trampoline Exclusion

Anti-Fraud Statement

OFAC (Office Of Foreign Assets Control) Notice

Mold Coverage

Copyright 2017 by LEMONADE INSURANCE COMPANY (a stock company) | 5 Crosby St., New York, NY 10013 | help@lemonade.com | LEM-DEC-01



HOMEOWNERS POLICY

In witness whereof, Lemonade Insurance Company has caused this policy to be signed by its president and secretary.

Daniel Schreiber
President and CEO

William D. Latza
Secretary

Copyright 2017 by LEMONADE INSURANCE COMPANY (a stock company) | 5 Crosby St., New York, NY 10013 | help@lemonade.com | LEM-DEC-01

## LEMONADE HOMEOWNERS FORM

## TABLE OF CONTENTS

AGREEMENT ..... 2
DEFINITIONS ..... 2
SECTION I - PROPERTY COVERAGES ..... 4
A. Coverage A – Dwelling ..... 4
B. Coverage B – Other Structures ..... 4
C. Coverage C – Personal Property ..... 4
D. Coverage D – Loss Of Use ..... 6
E. Additional Coverages ..... 6
SECTION I - PERILS INSURED AGAINST ..... 10
SECTION I - EXCLUSIONS ..... 13
SECTION I - CONDITIONS ..... 15
A. Insurable Interest And Limit Of Liability ..... 15
B. Deductible ..... 15
C. Duties After Loss ..... 15
D. Loss Settlement ..... 16
E. Loss To A Pair Or Set ..... 18
F. Appraisal ..... 18
G. Other Insurance And Service Agreement ..... 18
H. Suit Against Us ..... 18
I. Our Option ..... 18
J. Loss Payment ..... 18
K. Abandonment Of Property ..... 18
L. Mortgage Clause ..... 18
M. No Benefit To Bailee ..... 19
N. Recovered Property ..... 19
O. Volcanic Eruption Period ..... 19
P. Policy Period ..... 19
Q. Concealment Or Fraud ..... 19
R. Loss Payable Clause ..... 19
SECTION II – LIABILITY COVERAGES ..... 19
A. Coverage E – Personal Liability ..... 19
B. Coverage F – Medical Payments To Others ..... 20
SECTION II - EXCLUSIONS ..... 20
SECTION II – ADDITIONAL COVERAGES ..... 22
SECTION II - CONDITIONS ..... 23
A. Limit Of Liability ..... 23
B. Severability Of Insurance ..... 24
C. Duties After "Occurrence" ..... 24
D. Duties Of An Injured Person – Coverage F – Medical Payments To Others ..... 24
E. Payment Of Claim – Coverage F – Medical Payments To Others ..... 24
F. Suit Against Us ..... 24
G. Bankruptcy Of An "Insured" ..... 24
H. Other Insurance ..... 24
I. Policy Period ..... 24
J. Concealment or Fraud ..... 24
SECTIONS I AND II – CONDITIONS ..... 25
A. Liberalization Clause ..... 25
B. Waiver Or Change Of Policy Provisions ..... 25
C. Cancellation ..... 25
D. Nonrenewal ..... 25
E. Assignment ..... 25
F. Subrogation ..... 25
G. Death ..... 26

Includes copyrighted material of Insurance Services Office, Inc., with its permission

# LEMONADE HOMEOWNERS FORM

**AGREEMENT**

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

**DEFINITIONS**

**A.** In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance.

**B.** In addition, certain words and phrases are defined as follows:

1. "Aircraft Liability", "Hovercraft Liability", "Motor Vehicle Liability" and "Watercraft Liability", subject to the provisions in **b.** below, mean the following:

    **a.** Liability for "bodily injury" or "property damage" arising out of the:

    **(1)** Ownership of such vehicle or craft by an "insured";

    **(2)** Maintenance, occupancy, operation, use, loading or unloading of such vehicle or craft by any person;

    **(3)** Entrustment of such vehicle or craft by an "insured" to any person;

    **(4)** Failure to supervise or negligent supervision of any person involving such vehicle or craft by an "insured"; or

    **(5)** Vicarious liability, whether or not imposed by law, for the actions of a child or minor involving such vehicle or craft.

    **b.** For the purpose of this definition:

    **(1)** Aircraft means any contrivance used or designed for flight, including but not limited to, aircraft used or designed to carry people or cargo, model aircraft, drones or hobby aircraft;

    **(2)** Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

    **(3)** Watercraft means a craft principally designed to be propelled on or in water by wind, engine power or electric motor; and

    **(4)** Motor vehicle means a "motor vehicle" as defined in **7.** below.

2. "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

3. "Business" means:

    **a.** A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

    **b.** Any other activity engaged in for money or other compensation, except the following:

    **(1)** One or more activities, not described in **(2)** through **(4)** below, for which no "insured" receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period;

    **(2)** Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

    **(3)** Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

    **(4)** The rendering of home day care services to a relative of an "insured".

4. "Employee" means an employee of an "insured", or an employee leased to an "insured" by a labor leasing firm under an agreement between an "insured" and the labor leasing firm, whose duties are other than those performed by a "residence employee".

5. "Insured" means:

    **a.** You and residents of your household who are:

    **(1)** Your relatives; or

    **(2)** Other persons under the age of 21 and in your care or the care of a resident of your household who is your relative;

   **b.** A student enrolled in school full-time, as defined by the school, who was a resident of your household before moving out to attend school, provided the student is under the age of:

     **(1)** 24 and your relative; or

     **(2)** 21 and in your care or the care of a resident of your household who is your relative; or

   **c.** Under Section **II**, with respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person described in **5.a.** or **b.** "Insured" does not mean a person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner.

   Under both Sections **I** and **II**, when the word an immediately precedes the word "insured", the words an "insured" together mean one or more "insureds".

**6.** "Insured location" means:

   **a.** The "residence premises";

   **b.** The part of other premises, other structures and grounds used by you as a residence; and

     **(1)** Which is shown in the Declarations; or

     **(2)** Which is acquired by you during the policy period for your use as a residence;

   **c.** Any premises used by you in connection with a premises described in **a.** and **b.** above;

   **d.** Any part of a premises:

     **(1)** Not owned by an "insured"; and

     **(2)** Where an "insured" is temporarily residing;

   **e.** Vacant land, other than farm land, owned by or rented to an "insured";

   **f.** Land owned by or rented to an "insured" on which a one-, two-, three- or four-family dwelling is being built as a residence for an "insured";

   **g.** Individual or family cemetery plots or burial vaults of an "insured"; or

   **h.** Any part of a premises occasionally rented to an "insured" for other than "business" use.

**7.** "Motor vehicle" means:

   **a.** A self-propelled land or amphibious vehicle of any kind, including, but not limited to hoverboards, powered scooters, mini-bikes, or motorcycles; or

   **b.** Any trailer or semitrailer which is being carried on, towed by or hitched for towing by a vehicle described in **a.** above.

**8.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

   **a.** "Bodily injury"; or

   **b.** "Property damage".

**9.** "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

**10.** "Residence employee" means:

   **a.** An employee of an "insured", or an employee leased to an "insured" by a labor leasing firm, under an agreement between an "insured" and the labor leasing firm, whose duties are related to the maintenance or use of the "residence premises", including household or domestic services; or

   **b.** One who performs similar duties elsewhere not related to the "business" of an "insured".

   A "residence employee" does not include a temporary employee who is furnished to an "insured" to substitute for a permanent "residence employee" on leave or to meet seasonal or short-term workload conditions.

**11.** "Residence premises" means:

   **a.** The one-family dwelling where you reside;

   **b.** The two-, three- or four-family dwelling where you reside in at least one of the family units; or

   **c.** That part of any other building where you reside;

   and which is shown as the "residence premises" in the Declarations.

"Residence premises" also includes other structures and grounds at that location.

## SECTION I – PROPERTY COVERAGES

**A.  Coverage A – Dwelling**

    **1.**  We cover:

        **a.**  The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

        **b.**  Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises".

    **2.**  We do not cover land, including land on which the dwelling is located.

**B.  Coverage B – Other Structures**

    **1.**  We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

    **2.**  We do not cover:

        **a.**  Land, including land on which the other structures are located;

        **b.**  Other structures rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage;

        **c.**  Other structures from which any "business" is conducted; or

        **d.**  Other structures used to store "business" property. However, we do cover a structure that contains "business" property solely owned by an "insured" or a tenant of the dwelling, provided that "business" property does not include gaseous or liquid fuel, other than fuel in a permanently installed fuel tank of a vehicle or craft parked or stored in the structure.

    **3.**  The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage **A.** Use of this coverage does not reduce the Coverage **A** limit of liability.

**C.  Coverage C – Personal Property**

    **1.  Covered Property**

        We cover personal property owned or used by an "insured" while it is anywhere in the world. After a loss and at your request, we will cover personal property owned by:

        **a.**  Others while the property is on the part of the "residence premises" occupied by an "insured"; or

        **b.**  A guest (who is not a roomer or boarder in the "residence premises") or a "residence employee", while the property is in any residence occupied by an "insured".

    **2.  Limit For Property At Other Locations**

        **a.  Other Residences**

            Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises", is 10% of the limit of liability for Coverage **C,** or $1,000, whichever is greater. However, this limitation does not apply to personal property:

            **(1)**  Moved from the "residence premises" because it is:

                **(a)**  Being repaired, renovated or rebuilt; and

                **(b)**  Not fit to live in or store property in; or

            **(2)**  In a newly acquired principal residence for 30 days from the time you begin to move the property there.

        **b.  Self-storage Facilities**

            Our limit of liability for personal property owned or used by an "insured" and located in a self-storage facility is $1,000. However, this limitation does not apply to personal property:

            **(1)**  Moved from the "residence premises" because it is:

                **(a)**  Being repaired, renovated or rebuilt; and

                **(b)**  Not fit to live in or store property in; or

        Includes copyrighted material of Insurance Services Office, Inc.,        **LEM 03 05 18**
<br>with its permission

**(2)** Usually located in an "insured's" residence, other than the "residence premises".

3.  **Special Limits Of Liability**

The special limit for each category shown below is the total limit for each loss for all property in that category. These special limits do not increase the Coverage **C** limit of liability.

**a.** $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, coins, electronic currency, medals, scrip, stored value cards and smart cards.

**b.** $1,500 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

This limit includes the cost to research, replace or restore the information from the lost or damaged material.

**c.** $1,500 on watercraft of all types, including their trailers, furnishings, equipment and outboard engines or motors.

**d.** $1,500 on trailers or semitrailers not used with watercraft of all types.

**e.** $1,500 for loss by theft of jewelry, watches, furs, precious and semiprecious stones.

**f.** $2,500 for loss by theft of firearms and related equipment.

**g.** $2,500 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware, platinumware, platinum-plated ware and pewterware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.

**h.** $2,500 on property, on the "residence premises", used primarily for "business" purposes.

**i.** $1,500 on property, away from the "residence premises", used primarily for "business" purposes.

**j.** $1,500 on portable electronic equipment, which include:

**(1)** Laptop computers;

**(2)** Mobile phones, including smart phones;

**(3)** Tablets;

**(4)** E-readers;

**(5)** Handheld game consoles;

**(6)** Personal navigation devices;

**(7)** Electronic health or fitness monitoring devices;

**(8)** Portable media players, including wireless devices designed to be connected to the internet;

**(9)** Headphones, earbuds and other audio peripherals designed to be used with the equipment listed in **j.(1)-(8)**.

**k.** $1,500 on model or hobby aircraft not used or designed:

**(1)** To carry people or cargo; or

**(2)** For "business".

4.  **Property Not Covered**

We do not cover:

**a.** Articles separately described and specifically insured, regardless of the limit for which they are insured, in this or other insurance;

**b.** Animals, birds or fish;

**c.** "Motor vehicles". This includes a "motor vehicle's" equipment and parts.

**d.** Aircraft, meaning any contrivance used or designed for flight, including any parts whether or not attached to the aircraft. We do cover model or hobby aircraft, other than drones, not used or designed to carry people or cargo as provided in **C.3.Special Limits of Liability**, paragraph **k.** under **Section I – Property Coverages**;

**e.** Hovercraft, including any and parts. Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

    **f.**  Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";

    **g.**  Property in an apartment regularly rented or held for rental to others by an "insured", except as provided in **E.10.** Landlord's Furnishings under Section **I** – Property Coverages;

    **h.**  Property rented or held for rental to others off the "residence premises";

    **i.**  "Business" data, including such data stored in:

        **(1)**  Books of account, drawings or other paper records; or

        **(2)**  Computers and related equipment.

        We do cover the cost of blank recording or storage media and of prerecorded computer programs available on the retail market;

    **j.**  Credit cards, electronic fund transfer cards or access devices used solely for deposit, withdrawal or transfer of funds except as provided in **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section **I** – Property Coverages; or

    **k.**  Water or steam.

## D.  Coverage D – Loss Of Use

The limit of liability for Coverage **D** is the total limit for the coverages in **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use below.

### 1.  Additional Living Expense

If a loss covered under Section **I** makes that part of the "residence premises" where you reside not fit to live in, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living for up to 24 months.

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

### 2.  Fair Rental Value

If a loss covered under Section **I** makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the fair rental value of such premises less any expenses that do not continue while it is not fit to live in.

Payment will be for the shortest time required to repair or replace such premises.

### 3.  Civil Authority Prohibits Use

If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against, we cover the loss as provided in **1.** Additional Living Expense and **2.** Fair Rental Value above for no more than two weeks.

### 4.  Loss Or Expense Not Covered

We do not cover loss or expense due to cancellation of a lease or agreement.

The periods of time under **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use above are not limited by expiration of this policy.

## E.  Additional Coverages

### 1.  Debris Removal

    **a.**  We will pay your reasonable expense for the removal of:

        **(1)**  Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

        **(2)**  Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

        This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit is available for such expense.

    **b.**  We will also pay your reasonable expense, up to $1,000, for the removal from the "residence premises" of:

        **(1)**  Your trees felled by the peril of Windstorm or Hail or Weight of Ice, Snow or Sleet; or

**(2)** A neighbor's trees felled by a Peril Insured Against under Coverage **C**;

provided the trees:

**(1)** Damage a covered structure; or

**(2)** Do not damage a covered structure, but:

    **(a)** Block a driveway on the "residence premises" which prevents a "motor vehicle", that is registered for use on public roads or property, from entering or leaving the "residence premises"; or

    **(b)** Block a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling building.

The $1,000 limit is the most we will pay in any one loss, regardless of the number of fallen trees. No more than $500 of this limit will be paid for the removal of any one tree.

This coverage is additional insurance.

**2. Reasonable Repairs**

**a.** We will pay the reasonable cost incurred by you for the necessary measures taken solely to protect covered property that is damaged by a Peril Insured Against from further damage.

**b.** If the measures taken involve repair to other damaged property, we will only pay if that property is covered under this policy and the damage is caused by a Peril Insured Against. This coverage does not:

**(1)** Increase the limit of liability that applies to the covered property; or

**(2)** Relieve you of your duties, in case of a loss to covered property, described in **C.4.** under Section **I** – Conditions.

**3. Trees, Shrubs And Other Plants**

We cover trees, shrubs, plants or lawns, on the "residence premises", for loss caused by the following Perils Insured Against:

**a.** Fire or Lightning;

**b.** Explosion;

**c.** Riot or Civil Commotion;

**d.** Aircraft;

**e.** Vehicles not owned or operated by a resident of the "residence premises";

**f.** Vandalism or Malicious Mischief; or

**g.** Theft.

We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns. No more than $500 of this limit will be paid for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

This coverage is additional insurance.

**4. Fire Department Service Charge**

We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

This coverage is additional insurance. No deductible applies to this coverage.

**5. Property Removed**

We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed.

This coverage does not change the limit of liability that applies to the property being removed.

**6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money**

**a.** We will pay up to $500 for:

**(1)** The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

**(2)** Loss resulting from theft or unauthorized use of an electronic fund transfer card or access device used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

**(3)** Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

**(4)** Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

This coverage is additional insurance. No deductible applies to this coverage.

**b.** We do not cover:

**(1)** Use of a credit card, electronic fund transfer card or access device:

**(a)** By a resident of your household;

**(b)** By a person who has been entrusted with either type of card or access device; or

**(c)** If an "insured" has not complied with all terms and conditions under which the cards are issued or the devices accessed; or

**(2)** Loss arising out of "business" use or dishonesty of an "insured".

**c.** If the coverage in **a.** above applies, the following defense provisions also apply:

**(1)** We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

**(2)** If a suit is brought against an "insured" for liability under **a.(1)** or **(2)** above, we will provide a defense at our expense by counsel of our choice.

**(3)** We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under **a.(3)** above.

**7. Loss Assessment**

**a.** We will pay up to $1,000 for your share of loss assessment charged during the policy period against you, as owner or tenant of the "residence premises", by a corporation or association of property owners. The assessment must be made as a result of direct loss to property, owned by all members collectively, of the type that would be covered by this policy if owned by you, caused by a Peril Insured Against under Coverage **A,** other than:

**(1)** Earthquake; or

**(2)** Land shock waves or tremors before, during or after a volcanic eruption.

The limit of $1,000 is the most we will pay with respect to any one loss, regardless of the number of assessments. We will only apply one deductible, per unit, to the total amount of any one loss to the property described regardless of the number of assessments.

**b.** We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

**c.** Paragraph **P.** Policy Period under Section **I** – Conditions does not apply to this coverage.

This coverage is additional insurance.

**8. Collapse**

**a.** The coverage provided under this Additional Coverage – Collapse applies only to an abrupt collapse.

**b.** For the purpose of this Additional Coverage – Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

**c.** This Additional Coverage – Collapse does not apply to:

**(1)** A building or any part of a building that is in danger of falling down or caving in;

**(2)** A part of a building that is standing, even if it has separated from another part of the building; or

**(3)** A building or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

       Includes copyrighted material of Insurance Services Office, Inc., with its permission       **LEM 03 05 18**

**d.** We insure for direct physical loss to covered property involving abrupt collapse of a building or any part of a building if such collapse was caused by one or more of the following:

    **(1)** The Perils Insured Against named under Coverage **C**;

    **(2)** Decay, of a building or any part of a building, that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse;

    **(3)** Insect or vermin damage, to a building or any part of a building, that is hidden from view, unless the presence of such damage is known to an "insured" prior to collapse;

    **(4)** Weight of contents, equipment, animals or people;

    **(5)** Weight of rain which collects on a roof; or

    **(6)** Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

**e.** Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under **d.(2)** through **(6)** above, unless the loss is a direct result of the collapse of a building or any part of a building.

**f.** This coverage does not increase the limit of liability that applies to the damaged covered property.

**9. Glass Or Safety Glazing Material**

    **a.** We cover:

        **(1)** The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window;

        **(2)** The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window when caused directly by earth movement; and

        **(3)** The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

    **b.** This coverage does not include loss:

        **(1)** To covered property which results because the glass or safety glazing material has been broken, except as provided in **a.(3)** above; or

        **(2)** On the "residence premises" if the dwelling has been vacant for more than 60 consecutive days immediately before the loss, except when the breakage results directly from earth movement as provided in **a.(2)** above. A dwelling being constructed is not considered vacant.

    **c.** This coverage does not increase the limit of liability that applies to the damaged property.

**10. Landlord's Furnishings**

We will pay up to $2,500 for your appliances, carpeting and other household furnishings, in each apartment on the "residence premises" regularly rented or held for rental to others by an "insured", for loss caused by a Peril Insured Against in Coverage **C**, other than Theft.

This limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss.

This coverage does not increase the limit of liability applying to the damaged property.

**11. Ordinance Or Law**

    **a.** You may use up to 10% of the limit of liability that applies to Coverage **A** for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

        **(1)** The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

        **(2)** The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

        **(3)** The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

   **b.** You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in **a.** above.

   **c.** We do not cover:

      **(1)** The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

      **(2)** The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants in or on any covered building or other structure.

   Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

   This coverage is additional insurance.

**12. Grave Markers**

   We will pay up to $5,000 for grave markers, including mausoleums, on or away from the "residence premises" for loss caused by a Peril Insured Against under Coverage **C.**

   This coverage does not increase the limits of liability that apply to the damaged covered property.

## SECTION I – PERILS INSURED AGAINST

**A. Coverage A – Dwelling And Coverage B – Other Structures**

   **1.** We insure against direct physical loss to property described in Coverages **A** and **B.**

   **2.** We do not insure, however, for loss:

      **a.** Excluded under Section **I** – Exclusions;

      **b.** Involving collapse, including any of the following conditions of property or any part of the property:

         **(1)** An abrupt falling down or caving in;

         **(2)** Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

         **(3)** Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to **(1)** or **(2)** above;

      except as provided in **E.8.** Collapse under Section **I** – Property Coverages; or

      **c.** Caused by:

         **(1)** Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This provision does not apply if you have used reasonable care to:

            **(a)** Maintain heat in the building; or

            **(b)** Shut off the water supply and drain all systems and appliances of water.

         However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

         For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment;

         **(2)** Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

            **(a)** Fence, pavement, patio, hot tub or swimming pool;

            **(b)** Footing, foundation, bulkhead, wall, or any other structure or device that supports all or part of a building, or other structure;

            **(c)** Retaining wall or bulkhead that does not support all or part of a building or other structure; or

            **(d)** Pier, wharf or dock;

         **(3)** Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

     Includes copyrighted material of Insurance Services Office, Inc., with its permission     **LEM 03 05 18**

**(4)** Vandalism and malicious mischief, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 60 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

**(5)** Mold, fungus or wet rot. However, we do insure for loss caused by mold, fungus or wet rot that is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure if such loss results from the accidental discharge or overflow of water or steam from within:

   **(a)** A plumbing, heating, air conditioning or automatic fire protective sprinkler system, or a household appliance, on the "residence premises"; or

   **(b)** A storm drain, or water, steam or sewer pipes, off the "residence premises".

   For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment; or

**(6)** Any of the following:

   **(a)** Wear and tear, marring, deterioration;

   **(b)** Mechanical breakdown, latent defect, inherent vice or any quality in property that causes it to damage or destroy itself;

   **(c)** Smog, rust or other corrosion, or dry rot;

   **(d)** Smoke from agricultural smudging or industrial operations;

   **(e)** Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against named under Coverage **C.**

   Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

   **(f)** Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings;

   **(g)** Birds, rodents or insects;

   **(h)** Nesting or infestation, or discharge or release of waste products or secretions, by any animals; or

   **(i)** Animals owned or kept by an "insured".

**Exception To c.(6)**

Unless the loss is otherwise excluded, we cover loss to property covered under Coverage **A** or **B** resulting from an accidental discharge or overflow of water or steam from within a:

   **(i)** Storm drain, or water, steam or sewer pipe, off the "residence premises"; or

   **(ii)** Plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the "residence premises". This includes the cost to tear out and replace any part of a building, or other structure, on the "residence premises", but only when necessary to repair the system or appliance. However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the "residence premises".

We do not cover loss to the system or appliance from which this water or steam escaped.

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

Section **I** – Exclusion **A.3.** Water, Paragraphs **a.** and **c.** that apply to surface water and water below the surface of the ground do not apply to loss by water covered under **c.(5)** and **(6)** above.

Under **2.b.** and **c.** above, any ensuing loss to property described in Coverages **A** and **B** not precluded by any other provision in this policy is covered.

 Includes copyrighted material of Insurance Services Office, Inc., with its permission

**B. Coverage C – Personal Property**

We insure for direct physical loss to the property described in Coverage **C** caused by any of the following perils unless the loss is excluded in Section **I** – Exclusions.

**1. Fire Or Lightning**

**2. Windstorm Or Hail**

This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building. This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

**3. Explosion**

**4. Riot Or Civil Commotion**

**5. Aircraft**

This peril includes self-propelled missiles and spacecraft.

**6. Vehicles**

**7. Smoke**

This peril means sudden and accidental damage from smoke, including the emission or puffback of smoke, soot, fumes or vapors from a boiler, furnace or related equipment.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

**8. Vandalism Or Malicious Mischief**

This peril does not include loss to property on the "residence premises", and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 60 consecutive days immediately before the loss.

**9. Theft**

    **a.** This peril includes attempted theft and loss of property from a known place when it is likely that the property has been stolen.

    **b.** This peril does not include loss caused by theft:

        **(1)** Committed by an "insured";

        **(2)** In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

        **(3)** From that part of a "residence premises" rented by an "insured" to someone other than another "insured"; or

        **(4)** That occurs off the "residence premises" of:

            **(a)** Trailers, semitrailers and campers;

            **(b)** Watercraft of all types, and their furnishings, equipment and outboard engines or motors; or

            **(c)** Property while at any other residence owned by, rented to, or occupied by an "insured", except while an "insured" is temporarily living there. Property of an "insured" who is a student is covered while at the residence the student occupies to attend school as long as the student has been there at any time during the 90 days immediately before the loss.

**10. Falling Objects**

This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

**11. Weight Of Ice, Snow Or Sleet**

This peril means weight of ice, snow or sleet which causes damage to property contained in a building.

**12. Accidental Discharge Or Overflow Of Water Or Steam**

    **a.** This peril means accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

    **b.** This peril does not include loss:

    Includes copyrighted material of Insurance Services Office, Inc., with its permission    

    **(1)** To the system or appliance from which the water or steam escaped;

    **(2)** Caused by or resulting from freezing except as provided in Peril Insured Against **14.** Freezing;

    **(3)** On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises"; or

    **(4)** Caused by mold, fungus or wet rot unless hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

  **c.** In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

  **d.** Section **I** – Exclusion **A.3.** Water, Paragraphs **a.** and **c.** that apply to surface water and water below the surface of the ground do not apply to loss by water covered under this peril.

### 13. Sudden And Accidental Tearing Apart, Cracking, Burning Or Bulging

This peril means sudden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

We do not cover loss caused by or resulting from freezing under this peril.

### 14. Freezing

  **a.** This peril means freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, but only if you have used reasonable care to:

    **(1)** Maintain heat in the building; or

    **(2)** Shut off the water supply and drain all systems and appliances of water.

    However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

  **b.** In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

### 15. Sudden And Accidental Damage From Artificially Generated Electrical Current

This peril does not include loss to electronic components or circuitry that is a part of appliances, fixtures, computers, home entertainment units or other types of electronic apparatus.

### 16. Volcanic Eruption

This peril does not include loss caused by earthquake, land shock waves or tremors.

## SECTION I – EXCLUSIONS

**A.** We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

### 1. Ordinance Or Law

Ordinance Or Law means any ordinance or law:

  **a.** Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This Exclusion **A.1.a.** does not apply to the amount of coverage that may be provided for in **E.11.** Ordinance Or Law under Section **I** – Property Coverages;

  **b.** The requirements of which result in a loss in value to property; or

  **c.** Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

    Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This Exclusion **A.1.** applies whether or not the property has been physically damaged.

### 2. Earth Movement

Earth Movement means:

  **a.** Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

    **b.**  Landslide, mudslide or mudflow;

    **c.**  Subsidence or sinkhole; or

    **d.**  Any other earth movement including earth sinking, rising or shifting.

This Exclusion **A.2.** applies regardless of whether any of the above, in **A.2.a.** through **A.2.d.,** is caused by an act of nature or is otherwise caused.

However, direct loss by fire, explosion or theft resulting from any of the above, in **A.2.a.** through **A.2.d.,** is covered.

**3.   Water**

This means:

    **a.**  Flood, surface water, waves, including tidal wave and tsunami, tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind, including storm surge;

    **b.**  Water which:

        **(1)**  Backs up through sewers or drains; or

        **(2)**  Overflows or is otherwise discharged from a sump, sump pump or related equipment;

    **c.**  Water below the surface of the ground, including water which exerts pressure on, or seeps, leaks or flows through a building, sidewalk, driveway, patio, foundation, swimming pool or other structure; or

    **d.**  Waterborne material carried or otherwise moved by any of the water referred to in **A.3.a.** through **A.3.c.** of this exclusion.

This Exclusion **A.3.** applies regardless of whether any of the above, in **A.3.a.** through **A.3.d.,** is caused by an act of nature or is otherwise caused.

This Exclusion **A.3.** applies to, but is not limited to, escape, overflow or discharge, for any reason, of water or waterborne material from a dam, levee, seawall or any other boundary or containment system.

However, direct loss by fire, explosion or theft resulting from any of the above, in **A.3.a.** through **A.3.d.,** is covered.

**4.   Power Failure**

Power Failure means the failure of power or other utility service if the failure takes place off the "residence premises". But if the failure results in a loss from a Peril Insured Against on the "residence premises", we will pay for the loss caused by that covered peril.

**5.   Neglect**

Neglect means neglect of an "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

**6.   War**

War includes the following and any consequence of any of the following:

    **a.**  Undeclared war, civil war, insurrection, rebellion, occupation, or revolution;

    **b.**  Warlike act by a military force or military personnel; or

    **c.**  Destruction, seizure or use for a military purpose.

    **d.**  Accidental or intentional discharge of a nuclear, chemical or electromagnetic weapon.

**7.   Intentional Loss**

Intentional Loss means any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

In the event of such loss, no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss.

**8.   Governmental Action**

Governmental Action means the destruction, confiscation or seizure of property described in Coverage **A**, **B** or **C** by order of any governmental or public authority.

This exclusion does not apply to such acts ordered by any governmental or public authority that are taken at the time of a fire to prevent its spread, if the loss caused by fire would be covered under this policy.

**B.** We do not insure for loss to property described in Coverages **A** and **B** caused by any of the following. (However, any ensuing loss to property described in Coverages **A** and **B** not precluded by any other provision in this policy is covered.)

**1.** Weather conditions. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in **A.** above to produce the loss.

**2.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**3.** Faulty, inadequate or defective:

    **a.** Planning, zoning, development, surveying, siting, permitting;

    **b.** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

    **c.** Materials used in repair, construction, renovation or remodeling; or

    **d.** Maintenance;

of part or all of any property whether on or off the "residence premises".

## SECTION I – CONDITIONS

### A. Insurable Interest And Limit Of Liability

Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

**1.** To an "insured" for more than the amount of such "insured's" interest at the time of loss; or

**2.** For more than the applicable limit of liability.

### B. Deductible

Unless otherwise noted in this policy, the following deductible provision applies, with respect to any one loss:

**1.** Subject to the applicable limit of liability, we will pay only that part of the total of all loss payable that exceeds the deductible amount shown in the Declarations.

**2.** If two or more deductibles under this policy apply to the loss, only the highest deductible amount will apply.

### C. Duties After Loss

In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:

**1.** Give prompt notice to us or our agent;

**2.** Notify the police in case of loss by theft;

**3.** Notify the credit card or electronic fund transfer card or access device company in case of loss as provided for in **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section **I** – Property Coverages;

**4.** Protect the property from further damage. If repairs to the property are required, you must:

    **a.** Make reasonable and necessary repairs to protect the property; and

    **b.** Keep an accurate record of repair expenses;

**5.** Cooperate with us in the investigation of a claim;

**6.** Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

**7.** As often as we reasonably require:

    **a.** Show the damaged property;

    **b.** Provide us with records and documents we request and permit us to make copies; and

    **c.** Submit to examination under oath, while not in the presence of another "insured", and sign the same;

**8.** Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

    **a.** The time and cause of loss;

   **b.** The interests of all "insureds" and all others in the property involved and all liens on the property;

   **c.** Other insurance which may cover the loss;

   **d.** Changes in title or occupancy of the property during the term of the policy;

   **e.** Specifications of damaged buildings and detailed repair estimates;

   **f.** The inventory of damaged personal property described in **6.** above;

   **g.** Receipts for additional living expenses incurred and records that support the fair rental value loss; and

   **h.** Evidence or affidavit that supports a claim under **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section **I** – Property Coverages, stating the amount and cause of loss.

**D. Loss Settlement**

In this Condition **D.,** the terms "cost to repair or replace" and "replacement cost" do not include the increased costs incurred to comply with the enforcement of any ordinance or law, except to the extent that coverage for these increased costs is provided in **E.11.** Ordinance Or Law under Section **I** – Property Coverages. Covered property losses are settled as follows:

**Coverage A and Coverage B**

Buildings covered under Coverage **A** or **B** at replacement cost without deduction for depreciation, subject to the following:

**1.** If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, without deduction for depreciation, but not more than the least of the following amounts:

   **a.** The limit of liability under this policy that applies to the building;

   **b.** The replacement cost of that part of the building damaged with material of like kind and quality and for like use; or

   **c.** The necessary amount actually spent to repair or replace the damaged building.

If the building is rebuilt at a new premises, the cost described in **b.** above is limited to the cost which would have been incurred if the building had been built at the original premises.

**2.** If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

   **a.** The actual cash value of that part of the building damaged; or

   **b.** That proportion of the cost to repair or replace, without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

**3.** To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

   **a.** Excavations, footings, foundations, piers, or any other structures or devices that support all or part of the building, which are below the undersurface of the lowest basement floor;

   **b.** Those supports described in **a.** above which are below the surface of the ground inside the foundation walls, if there is no basement; and

   **c.** Underground flues, pipes, wiring and drains.

**4.** We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss as noted in **1.** and **2.** above.

However, if the cost to repair or replace the damage is both:

   **a.** Less than 5% of the amount of insurance in this policy on the building; and

   **b.** Less than $2,500;

we will settle the loss as noted in **1.** and **2.** above whether or not actual repair or replacement is complete.

5. You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss to buildings on an actual cash value basis. You may then make claim for any additional liability according to the provisions of this Condition **D.** Loss Settlement, provided you notify us, within 180 days after the date of loss, of your intent to repair or replace the damaged building.

## Coverage C

### 1. Eligible Property

    **a.** Covered losses to the following property are settled at replacement cost at the time of the loss:

        **(1)** Coverage **C;** and

        **(2)** If covered in this policy:

            **(a)** Awnings, outdoor antennas and outdoor equipment; and

            **(b)** Carpeting and household appliances

        whether or not attached to buildings.

    **b.** This method of loss settlement will also apply to the following articles or classes of property if they are separately described and specifically insured in this policy and not subject to agreed value loss settlement:

        **(1)** Jewelry;

        **(2)** Furs and garments:

            **(a)** Trimmed with fur; or

            **(b)** Consisting principally of fur;

        **(3)** Cameras, projection machines, films and related articles of equipment;

        **(4)** Musical equipment and related articles of equipment;

        **(5)** Silverware, silver-plated ware, goldware, gold-plated ware and pewterware, but excluding:

            **(a)** Pens or pencils;

            **(b)** Flasks;

            **(c)** Smoking implements; or

            **(d)** Jewelry; and

        **(6)** Golfer's equipment meaning golf clubs

    Personal Property Replacement Cost loss settlement will not apply to other classes of property separately described and specifically insured.

### 2. Ineligible Property

    Property listed below is not eligible for replacement cost loss settlement. Any loss will be settled at actual cash value at the time of loss but not more than the amount required to repair or replace.

    **a.** Antiques, fine arts, paintings and similar articles of rarity or antiquity, which cannot be replaced.

    **b.** Memorabilia, souvenirs, collectors items and similar articles, whose age or history contribute to their value.

    **c.** Articles not maintained in good or workable condition.

    **d.** Articles that are outdated or obsolete and are stored or not being used.

### 3. Replacement Cost Loss Settlement Condition

    The following loss settlement condition applies to all property described in **1.** above:

    **a.** We will pay no more than the least of the following amounts:

        **(1)** Replacement cost at the time of loss without deduction for depreciation;

        **(2)** The full cost of repair at the time of loss;

        **(3)** The limit of liability that applies to Coverage C, if applicable;

        **(4)** Any applicable special limits of liability stated in this policy; or

        **(5)** For loss to any item described in **1.b.(1) – (6)** above, the limit of liability that applies to the item.

     **b.**  If the cost to repair or replace the property described in **1.** above is more than $500, we will pay no more than the actual cash value for the loss until the actual repair or replacement is complete.

     **c.**  You may make a claim for loss on an actual cash value basis and then make claim for any additional liability in accordance with this endorsement provided you notify us, within 180 days after the date of the loss, of your intent to repair or replace the damaged property.

**4.**  Covered property losses are settled at Replacement Cost value at the time of loss but not more than the amount required to repair or replace.

## E. Loss To A Pair Or Set

In case of loss to a pair or set we may elect to:

**1.**  Repair or replace any part to restore the pair or set to its value before the loss; or

**2.**  Pay the difference between actual cash value of the property before and after the loss.

## F. Appraisal

If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

**1.**  Pay its own appraiser; and

**2.**  Bear the other expenses of the appraisal and umpire equally.

## G. Other Insurance And Service Agreement

If a loss covered by this policy is also covered by:

**1.**  Other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss; or

**2.**  A service agreement, this insurance is excess over any amounts payable under any such agreement. Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

## H. Suit Against Us

No action can be brought against us unless there has been full compliance with all of the terms under Section **I** of this policy and the action is started within two years after the date of loss.

## I. Our Option

If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with material or property of like kind and quality.

## J. Loss Payment

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

**1.**  Reach an agreement with you;

**2.**  There is an entry of a final judgment; or

**3.**  There is a filing of an appraisal award with us.

## K. Abandonment Of Property

We need not accept any property abandoned by an "insured".

## L. Mortgage Clause

**1.**  If a mortgage is named in this policy, any loss payable under Coverage **A** or **B** will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

**2.**  If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

    Includes copyrighted material of Insurance Services Office, Inc., with its permission    **LEM 03 05 18**

      **a.** Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

      **b.** Pays any premium due under this policy on demand if you have neglected to pay the premium; and

      **c.** Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Paragraphs **F.** Appraisal, **H.** Suit Against Us and **J.** Loss Payment under Section **I** – Conditions also apply to the mortgagee.

   **3.** If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

   **4.** If we pay the mortgagee for any loss and deny payment to you:

      **a.** We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

      **b.** At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

   **5.** Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

**M. No Benefit To Bailee**

We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

**N. Recovered Property**

If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

**O. Volcanic Eruption Period**

One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

**P. Policy Period**

This policy applies only to loss which occurs during the policy period.

**Q. Concealment Or Fraud**

We provide coverage to no "insureds" under this policy if, whether before or after a loss, an "insured" has:

   **1.** Intentionally concealed or misrepresented any material fact or circumstance;

   **2.** Engaged in fraudulent conduct; or

   **3.** Made false statements;

relating to this insurance.

**R. Loss Payable Clause**

If the Declarations shows a loss payee for certain listed insured personal property, the definition of "insured" is changed to include that loss payee with respect to that property.

If we decide to cancel or not renew this policy, that loss payee will be notified in writing.

**SECTION II – LIABILITY COVERAGES**

**A. Coverage E – Personal Liability**

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

   **1.** Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

   **2.** Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

**B. Coverage F – Medical Payments To Others**

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury". Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees". As to others, this coverage applies only:

**1.** To a person on the "insured location" with the permission of an "insured"; or

**2.** To a person off the "insured location", if the "bodily injury":

    **a.** Arises out of a condition on the "insured location" or the ways immediately adjoining;

    **b.** Is caused by the activities of an "insured";

    **c.** Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or

    **d.** Is caused by an animal owned by or in the care of an "insured".

## SECTION II – EXCLUSIONS

**A. "Motor Vehicle Liability"**

Coverages **E** and **F** do not apply to any "motor vehicle liability".

**B. "Watercraft Liability"**

Coverages **E** and **F** do not apply to any "watercraft liability".

**C. "Aircraft Liability"**

This policy does not cover "aircraft liability".

**D. "Hovercraft Liability"**

This policy does not cover "hovercraft liability".

**E. Coverage E – Personal Liability And Coverage F – Medical Payments To Others**

Coverages **E** and **F** do not apply to the following:

**1. Expected Or Intended Injury**

"Bodily injury" or "property damage" which is expected or intended by an "insured", even if the resulting "bodily injury" or "property damage":

    **a.** Is of a different kind, quality or degree than initially expected or intended; or

    **b.** Is sustained by a different person, entity or property than initially expected or intended.

However, this Exclusion **E.1.** does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force by an "insured" to protect persons or property;

**2. "Business"**

"Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured".

This Exclusion E.2. applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

**3. Professional Services**

"Bodily injury" or "property damage" arising out of the rendering of or failure to render professional services;

**4. "Insured's" Premises Not An "Insured Location"**

"Bodily injury" or "property damage" arising out of a premises:

    **a.** Owned by an "insured";

    **b.** Rented to an "insured"; or

    **c.** Rented to others by an "insured";

that is not an "insured location";

          Includes copyrighted material of Insurance Services Office, Inc., with its permission          **LEM 03 05 18**

5. **Harassment**

"Bodily injury" or "property damage" arising out of actual, alleged or threatened discrimination or harassment due to age, race, color, sex, religion, national origin, sexual preference, handicapped status, or any other type of unlawful discrimination;

6. **Communicable Disease**

"Bodily injury" or "property damage" which arises out of the transmission of any communicable disease by an "insured";

7. **Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse**

"Bodily injury" or "property damage" arising out of sexual molestation, corporal punishment or physical or mental abuse;

8. **Controlled Substance**

"Bodily injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the lawful orders of a licensed health care professional;

9. **Rental Property**

"Bodily injury" or "property damage" arising out of the rental of any part of any premises by any insured. This exclusion does not apply:

  **a.** To the rental of the "residence premises":

    **(1)** Either completely or in part, for exclusive use as a residence, for up to a total of seven (7) nights in the 12-month period prior to the date of the loss; or

    **(2)** In part, for use as a permanent residence, by either one or two full-time roomers or boarders; or

  **b.** With respect to the portions of the dwelling not regularly occupied by you, when the dwelling on the "residence premises" is a two, three, or four family dwelling and you occupy one part and rent the other part to others;

10. **Pollutants and Contaminants**

"Bodily injury" or "property damage" arising out of the actual, alleged, or threatened presence, discharge, dispersal, seepage, migration, release, escape of, or exposure to contaminants or pollutants at or from any source or location.

Contaminants and pollutants include but are not limited to any solid, liquid, gaseous, or thermal irritant, including smoke from agricultural smudging or industrial operations, smog, soot, vapor, fumes, acids, alkalis, chemicals, pathogens, noxious substances, fuel oil, asbestos, or lead.

This exclusion does not apply to bodily injury or property damage arising out of smoke or fumes caused by fire or explosion. We also do not cover:

  **a.** Any loss, cost, or expense arising out of any request, demand, order, or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, remediate, dispose of, or in any way respond to or assess the effects of contaminants or pollutants;

  **b.** Any loss, cost, or expense arising out of any claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, disposing of, or in any way responding to or assessing the effects of contaminants or pollutants; or

  **c.** Contamination or pollution arising out of actually or allegedly defective building materials, nuclear substances, or waste. Waste includes materials to be recycled, reconditioned, or reclaimed; or

11. **Criminal Acts**

"Bodily injury" or "property damage" arising out of criminal, dishonest or fraudulent acts or omissions by or at the direction of an insured person, even if such insured person is not actually charged with or convicted of a crime, including if the insured person enters a no-contest plea.

**F.   Coverage E – Personal Liability**

Coverage **E** does not apply to:

1. Liability:

   a. For any loss assessment charged against you as a member of an association, corporation or community of property owners, except as provided in **D.** Loss Assessment under Section **II** – Additional Coverages;

   b. Under any contract or agreement entered into by an "insured". However, this exclusion does not apply to written contracts:

      **(1)** That directly relate to the ownership, maintenance or use of an "insured location"; or

      **(2)** Where the liability of others is assumed by you prior to an "occurrence";

   unless excluded in **a.** above or elsewhere in this policy;

2. "Property damage" to property owned by an "insured". This includes costs or expenses incurred by an "insured" or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an "insured location";

3. "Property damage" to property rented to, occupied or used by or in the care of an "insured". This exclusion does not apply to "property damage" caused by fire, smoke or explosion;

4. "Bodily injury" to any person eligible to receive any benefits voluntarily provided or required to be provided by an "insured" under any:

   a. Workers' compensation law;

   b. Non-occupational disability law; or

   c. Occupational disease law;

5. "Bodily injury" to you or an "insured" as defined under Definition **5.a.** or **b.**

   This exclusion also applies to any claim made or suit brought against you or an "insured" to:

   a. Repay; or

   b. Share damages with;

   another person who may be obligated to pay damages because of "bodily injury" to an "insured".

6. "Bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured".

7. "Bodily injury" or "property damage" arising out of any real property any insured has sold or transferred. This includes but is not limited to "bodily injury" or "property damage" arising out of known, unknown, hidden, or alleged property conditions, problems, or defects. This exclusion also applies to any property damage to the sold or transferred real property itself.

## G. Coverage F – Medical Payments To Others

Coverage **F** does not apply to "bodily injury":

1. To a "residence employee";

2. To any person eligible to receive benefits voluntarily provided or required to be provided under any:

   a. Workers' compensation law;

   b. Non-occupational disability law; or

   c. Occupational disease law; or

3. To any person regularly residing on any part of the "insured location".

## SECTION II – ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

## A. Claim Expenses

We pay:

1. Expenses we incur and costs taxed against an "insured" in any suit we defend;

2. Premiums on bonds required in a suit we defend, but not for bond amounts more than the Coverage **E** limit of liability. We need not apply for or furnish any bond;

3. Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit; and

4. Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

**B. First Aid Expenses**

We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to an "insured".

**C. Damage To Property Of Others**

1. We will pay, at replacement cost, up to $1,000 per "occurrence" for "property damage" to property of others caused by an "insured".

2. We will not pay for "property damage":

   a. To the extent of any amount recoverable under Section **I**;

   b. Caused intentionally by an "insured" who is 13 years of age or older;

   c. To property owned by an "insured";

   d. To property owned by or rented to a tenant of an "insured" or a resident in your household; or

   e. Arising out of:

      **(1)** A "business" engaged in by an "insured"; or
      **(2)** Any act or omission in connection with a premises owned, rented or controlled by an "insured", other than the "insured location".

**D. Loss Assessment**

1. We will pay up to $1,000 for your share of loss assessment charged against you, as owner or tenant of the "residence premises", during the policy period by a corporation or association of property owners, when the assessment is made as a result of:

   a. "Bodily injury" or "property damage" not excluded from coverage under Section **II** – Exclusions; or

   b. Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided such person:

      **(1)** Is elected by the members of a corporation or association of property owners; and
      **(2)** Serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

2. Paragraph **I.** Policy Period under Section **II** – Conditions does not apply to this Loss Assessment Coverage.

3. Regardless of the number of assessments, the limit of $1,000 is the most we will pay for loss arising out of:

   a. One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

   b. A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

4. We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

## SECTION II – CONDITIONS

**A. Limit Of Liability**

Our total liability under Coverage **E** for all damages resulting from any one "occurrence" will not be more than the Coverage **E** Limit Of Liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence".

Our total liability under Coverage **F** for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage **F** Limit Of Liability shown in the Declarations.

**B.  Severability Of Insurance**

This insurance applies separately to each "insured". This condition will not increase our limit of liability for any one "occurrence".

**C.  Duties After "Occurrence"**

In case of an "occurrence", you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed:

1.  Give written notice to us or our agent as soon as is practical, which sets forth:

    a.  The identity of the policy and the "named insured" shown in the Declarations;

    b.  Reasonably available information on the time, place and circumstances of the "occurrence"; and

    c.  Names and addresses of any claimants and witnesses;

2.  Cooperate with us in the investigation, settlement or defense of any claim or suit;

3.  Promptly forward to us every notice, demand, summons or other process relating to the "occurrence";

4.  At our request, help us:

    a.  To make settlement;

    b.  To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

    c.  With the conduct of suits and attend hearings and trials; and

    d.  To secure and give evidence and obtain the attendance of witnesses.

5.  With respect to **C.** Damage To Property Of Others under Section **II** – Additional Coverages, submit to us within 60 days after the loss a sworn statement of loss and show the damaged property, if in an "insured's" control;

6.  No "insured" shall, except at such "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury".

**D.  Duties Of An Injured Person – Coverage F – Medical Payments To Others**

1.  The injured person or someone acting for the injured person will:

    a.  Give us written proof of claim, under oath if required, as soon as is practical; and

    b.  Authorize us to obtain copies of medical reports and records.

2.  The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

**E.  Payment Of Claim – Coverage F – Medical Payments To Others**

Payment under this coverage is not an admission of liability by an "insured" or us.

**F.  Suit Against Us**

1.  No action can be brought against us unless there has been full compliance with all of the terms under this Section **II.**

2.  No one will have the right to join us as a party to any action against an "insured".

3.  Also, no action with respect to Coverage **E** can be brought against us until the obligation of such "insured" has been determined by final judgment or agreement signed by us.

**G.  Bankruptcy Of An "Insured"**

Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

**H.  Other Insurance**

This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

**I.  Policy Period**

This policy applies only to "bodily injury" or "property damage" which occurs during the policy period.

**J.  Concealment Or Fraud**

We do not provide coverage to an "insured" who, whether before or after a loss, has:

1. Intentionally concealed or misrepresented any material fact or circumstance;
2. Engaged in fraudulent conduct; or
3. Made false statements;

relating to this insurance.

## SECTIONS I AND II – CONDITIONS

### A. Liberalization Clause

If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

1. A subsequent edition of this policy; or
2. An amendatory endorsement.

### B. Waiver Or Change Of Policy Provisions

A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

### C. Cancellation

1. You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.
2. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice.
   a. When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.
   b. When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.
   c. When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:
      (1) If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or
      (2) If the risk has changed substantially since the policy was issued.

      This can be done by letting you know at least 30 days before the date cancellation takes effect.
   d. When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.
3. When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.
4. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

### D. Nonrenewal

We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

### E. Assignment

Assignment of this policy will not be valid unless we give our written consent.

### F. Subrogation

An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

Subrogation does not apply to Coverage **F** or Paragraph **C.** Damage To Property Of Others under Section **II** – Additional Coverages.

**G. Death**

If any person named in the Declarations or the spouse, if a resident of the same household, dies, the following apply:

1. We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death; and

2. "Insured" includes:

    a. An "insured" who is a member of your household at the time of your death, but only while a resident of the "residence premises"; and

    b. With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

POLICY NUMBER:

**HOMEOWNERS**
**HO 04 20 05 11**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# SPECIFIED ADDITIONAL AMOUNT OF INSURANCE FOR COVERAGE A – DWELLING

**SCHEDULE**

| Additional Amount Of Insurance | % |
|---|---|
| The Additional Amount Of Insurance is determined by multiplying the Coverage **A** Limit Of Liability shown in the Declarations by the percentage amount shown above. | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

To the extent that coverage is provided, we agree to provide an additional amount of insurance in accordance with the following provisions:

**A.** If you have:

  **1.** Allowed us to adjust the Coverage **A** limit of liability and the premium in accordance with:

    **a.** The property evaluations we make; and

    **b.** Any increases in inflation; and

  **2.** Notified us, within 30 days of completion, of any improvements, alterations or additions to the building insured under Coverage **A** which increase the replacement cost of the building by 5% or more;

the provisions of this endorsement will apply after a loss, provided you elect to repair or replace the damaged building.

**B.** If there is a loss to the building insured under Coverage **A** that exceeds the Coverage **A** Limit Of Liability shown in the Declarations, for the purpose of settling that loss only:

  **1.** We will provide an additional amount of insurance, up to the amount described in the Schedule above; and

  **2.** Section I – Condition **D. Loss Settlement** Paragraph **2.** is replaced by Paragraphs **2., 3.,** and **4.** as follows:

    **2.** The building insured under Coverage **A** at replacement cost without deduction for depreciation. We will pay no more than the smallest of the following amounts:

      **a.** The replacement cost of that part of the building damaged with material of like kind and quality and for like use;

    **b.** The necessary amount actually spent to repair or replace the damaged building; or

    **c.** The limit of liability under this policy that applies to the building, plus any additional amount provided by this endorsement.

    If the building is rebuilt at a new premises, the cost described in **a.** above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

    **3.** We will pay no more than the actual cash value of the damage until actual repair or replacement is complete.

    **4.** You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss to the building on an actual cash value basis. You may then make claim for any additional liability on a replacement cost basis, provided you notify us, within 180 days after the date of loss, of your intent to repair or replace the damaged building.

All other provisions of this policy apply.

LEM-2028 (06-17)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SCHEDULED PERSONAL PROPERTY ENDORSEMENT

SCHEDULE

| | Class Of Personal Property | Amount Of Insurance | Premium |
|---|---|---|---|
| 1. | **Jewelry,** as scheduled below. | $ | $ |
| 2. | **Furs** and garments trimmed with fur or consisting principally of fur, as scheduled below. | $ | $ |
| 3. | **Cameras,** projection machines, films and related articles of equipment, as listed below. | $ | $ |
| 4. | **Musical Instruments** and related articles of equipment, as listed below. You agree not to perform with these instruments for pay unless specifically provided under this policy. | $ | $ |
| 5. | **Silverware,** silver-plated ware, goldware, gold-plated ware and pewterware, but excluding pens, pencils, flasks, smoking implements or jewelry. | $ | $ |
| 6. | **Golfer's Equipment,** meaning golf clubs, golf clothing and golf equipment. | $ | $ |
| 7.a. | **Fine Arts,** as scheduled below. This premium is based on your statement that the property insured is located at the following address:<br><br>at<br><br>at | Total Fine Arts Amount<br><br>$ | $ |
| 7.b. | For an additional premium, Paragraph **5.b.** under **C. Perils Insured Against** is deleted only for the articles marked with a double asterisk (**) in the Schedule below. | Amount of 7.b. only<br>$ | $ |
| 8. | **Postage Stamps** | $ | $ |
| 9. | **Rare And Current Coins** | $ | $ |
| 10. | **Bicycles** | $ | $ |
| 11. | **Motorized Golf Carts, Ground Maintenance** Vehicles, Snowmobiles or **Vehicles for Handicapped Person** | $ | $ |
| 12. | **Outboard Motor Boats, Motors and Trailers** | $ | $ |
| 13. | **Other Personal Property (including Collectibles)** | $ | $ |

| Type of Property | Description | Amount Of Insurance |
|---|---|---|
| | | $ |
| | | $ |
| | | $ |

**THE AMOUNTS SHOWN FOR EACH ITEM IN THIS SCHEDULE ARE LIMITED BY THE LOSS SETTLEMENT CONDITION IN PARAGRAPH F.2.**

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**LEM-2028 (08-17)**       Contains copyright material of the Insurance Services Office, Inc, 2010, used with permission

This insurance modifies insurance under the following forms:

Lemonade Homeowners Form

Lemonade Renters Form

Lemonade Condo Form

We cover the classes of personal property which are indicated in the Schedule above by an amount of insurance. This coverage is subject to the:

1. Definitions;

2. Section I – Conditions; and

3. Sections I and II – Conditions;

in the policy and all provisions of this endorsement.

Any deductible stated in this policy does not apply to this coverage.

**A. Newly Acquired Property – Jewelry, Furs, Cameras And Musical Instruments Only**

   1. We cover newly acquired property of a class of property already insured. The lesser of the following limits applies:

      a. 25% of the amount of insurance for that class of property; or

      b. $10,000.

   2. When you acquire new property, you must:

      a. Report these objects to us within 30 days; and

      b. Pay the additional premium from the date acquired.

**B. Newly Acquired Fine Arts**

   When Fine Arts are scheduled, we cover objects of art acquired during the policy period for their actual cash value. However, we will pay no more than 25% of the amount of insurance for fine arts scheduled. For coverage to apply for newly acquired fine arts, you must:

   1. Report these objects to us within 90 days; and

   2. Pay the additional premium from the date acquired.

**C. Perils Insured Against**

   We insure against direct loss to property described only if that loss is a physical loss to property; however, we do not insure loss caused by any of the following:

   1. Wear and tear, gradual deterioration or inherent vice.

   2. Insects or vermin.

   3. War, including the following and any consequence of any of the following:

      a. Undeclared war, civil war, insurrection, rebellion or revolution;

      b. Warlike act by a military force or military personnel; or

      c. Destruction, seizure or use for a military purpose.

   Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

   4. Nuclear Hazard, to the extent set forth in the Nuclear Hazard Clause of Section I – Conditions.

   5. If Fine Arts are covered:

      a. Repairing, restoration or retouching process;

      b. Breakage of art glass windows, glassware, statuary, marble, bric-a-brac, porcelains and similar fragile articles. We cover loss by breakage if caused by:

         (1) Fire or lightning;

         (2) Explosion, aircraft or collision;

         (3) Windstorm, earthquake or flood;

**LEM-2028 (08-17)**      Contains copyright material of the Insurance Services Office,
Inc, 2010, used with permission

**(4)** Malicious damage or theft;

**(5)** Derailment or overturn of a conveyance.

We do not insure loss, from any cause, to property on exhibition at fairgrounds or premises of national or international expositions unless the premises are covered by this policy.

**6.** If Postage Stamps or Rare And Current Coins collections are covered:

**a.** Fading, creasing, denting, scratching, tearing or thinning;

**b.** Transfer of colors, inherent defect, dampness, extremes of temperature, or depreciation;

**c.** Being handled or worked on;

**d.** The disappearance of individual stamps, coins or other articles unless the item is:

**(1)** Described and scheduled with a specific amount of insurance; or

**(2)** Mounted in a volume and the page it is attached to is also lost; or

**e.** Shipping by mail other than registered mail. However, we do not insure loss, from any cause, to property in the custody of transportation companies or not part of a stamp or coin collection.

**D. Territorial Limits**

We cover the property described worldwide.

**E. Special Provisions**

**1.** Fine Arts: You agree that the covered property will be handled by competent packers

**2.** Golfer's Equipment includes your other clothing while contained in a locker when you are playing golf. We cover golf balls for loss by fire or burglary, provided there are visible marks of forcible entry into the building, room or locker.

**3.** Postage Stamps includes the following owned by or in the custody or control of the "insured":

**a.** Due, envelope, official, revenue, match and medicine stamps;

**b.** Covers, locals, reprints, essays, proofs and other philatelic property; or

**c.** Books, pages and mounting of items in **a.** and **b.**

**4.** Rare And Current Coins includes the following owned by or in custody or control of the "insured":

**a.** Medals, paper money, bank notes;

**b.** Tokens of money and other numismatic property; or

**c.** Coin albums, containers, frames, cards and display cabinets in use with such collection.

**F. Conditions**

**1. Loss Clause**

The amount of insurance under this endorsement will not be reduced except for a total loss of a scheduled article. We will refund the unearned premium applicable to such article after the loss or you may apply it to the premium due for the replacement of the scheduled article.

**2. Loss Settlement**

Covered property losses are settled as follows:

**a. Fine Arts**

**(1)** We will pay, for each article designated in the Schedule, the full amount shown in the Schedule which is agreed to be the value of that article or property. At our request, you will surrender that article or property to us if not lost or stolen.

**(2)** If the scheduled article or property is a pair or set, or consists of several parts when complete, we will pay the full amount shown in the Schedule for that pair, set or complete article. At our request, you will surrender that article or property to us if not lost or stolen.

**(3)** In the event lost or stolen property is recovered and we have paid you the full amount shown in the Schedule for that property, you will surrender that property to us.

**(4)** We will, at your request, sell back to you, at a price you and we agree upon, any class of property or scheduled article you surrendered to us to comply with the terms in **(1)**, **(2)** or **(3)** above.

**b. POSTAGE STAMPS OR RARE AND CURRENT COIN COLLECTION**

**IN CASE OF LOSS TO ANY SCHEDULED ITEM, THE AMOUNT TO BE PAID WILL BE DETERMINED IN**

**LEM-2028 (08-17)**        Contains copyright material of the Insurance Services Office, Inc, 2010, used with permission

ACCORDANCE WITH PARAGRAPH 2.c. OTHER PROPERTY.

WHEN COINS OR STAMPS ARE COVERED ON A BLANKET BASIS, WE WILL PAY THE CASH MARKET VALUE AT TIME OF LOSS BUT NOT MORE THAN $1,000 ON ANY UNSCHEDULED COIN COLLECTION NOR MORE THAN $250 FOR ANY ONE STAMP, COIN OR INDIVIDUAL ARTICLE OR ANY ONE PAIR, STRIP, BLOCK, SERIES SHEET, COVER, FRAME OR CARD.

WE WILL NOT PAY A GREATER PROPORTION OF ANY LOSS ON BLANKET PROPERTY THAN THE AMOUNT INSURED ON BLANKET PROPERTY BEARS TO THE CASH MARKET VALUE AT TIME OF LOSS.

c. OTHER PROPERTY

(1) THE VALUE OF THE PROPERTY INSURED IS NOT AGREED UPON BUT WILL BE ASCERTAINED AT THE TIME OF LOSS OR DAMAGE. WE WILL NOT PAY MORE THAN THE LEAST OF THE FOLLOW-ING AMOUNTS:

(a) THE ACTUAL CASH VALUE OF THE PROPERTY AT THE TIME OF LOSS OR DAMAGE;

(b) THE AMOUNT FOR WHICH THE PROPERTY COULD REASONABLY BE EXPECTED TO BE RE-PAIRED TO ITS CONDITION IMMEDIATELY PRIOR TO LOSS;

(c) THE AMOUNT FOR WHICH THE ARTICLE COULD REASONABLY BE EXPECTED TO BE RE-PLACED WITH ONE SUBSTANTIALLY IDENTICAL TO THE ARTICLE LOST OR DAMAGED; OR

(d) THE AMOUNT OF INSURANCE.

(2) THE ACTUAL CASH VALUE CONDITION IN PARAGRAPH (1)(a) ABOVE DOES NOT APPLY IF, AT THE TIME OF LOSS, COVERAGE C - PERSONAL PROPERTY COVERED IN THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED ISSUBJECT TO REPLACEMENT COST LOSS SETTLEMENT.

3. PAIR, SET OR PARTS OTHER THAN FINE ARTS

a. LOSS TO A PAIR OR SET

IN CASE OF A LOSS TO A PAIR OR SET WE MAY ELECT TO:

(1) REPAIR OR REPLACE ANY PART TO RESTORE THE PAIR OR SET TO ITS VALUE BEFORE THE LOSS; OR

(2) PAY THE DIFFERENCE BETWEEN ACTUAL CASH VALUE OF THE PROPERTY BEFORE AND AFTER THE LOSS.

b. PARTS

IN CASE OF A LOSS TO ANY PART OF COVERED PROPERTY, CONSISTING OF SEVERAL PARTS WHEN COMPLETE, WE WILL PAY FOR THE VALUE OF THE PART LOST OR DAMAGED.

Contains copyright material of the Insurance Services Office, Inc, 2010, used with permission

LEM-3002 (02-20)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

# SWIMMING POOL, DIVING BOARD, AND SLIDE LIABILITY EXCLUSION

This insurance modifies insurance under the following forms:

Homeowners 3 – Special Form

Homeowners 4 – Contents Broad Form

Homeowners 6 – Unit-Owners Form

**SECTION II – EXCLUSIONS**

**E.  Coverage E – Personal Liability And Coverage F – Medical Payments To Others**

The following exclusion is added:

Coverages E and F do not apply to the following:

**Swimming Pools, Diving Boards, and Slides**

"Bodily injury" or "property damage" arising from or in any way involving, directly or indirectly, a swimming pool, diving board, slide or similar structure, regardless of cause.

We shall have no duty to investigate, defend, or indemnify any claim or suit seeking such damages.

All other terms and conditions of your policy remain unchanged.

LEM-2029 (11-17)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SPECIAL PROVISIONS – GEORGIA

This insurance modifies insurance under the following forms:

Lemonade Homeowners Form

Lemonade Renters Form

Lemonade Condo Form

## SECTION I – PROPERTY COVERAGES

**E.   Additional Coverages**

   **7.   Collapse**

   Paragraph **c.(2)** is replaced by the following:

   **(2)**  A part of a building that is standing, even if it has separated from another part of the building. However, if any part of the interior dwelling building separates from another part of the interior of the dwelling building, with the result that any part of the interior dwelling building cannot be occupied for its intended purpose, then this Paragraph **c.(2)** does not apply to that part of the building; or

   (This is Paragraph **D.7.c.(2)** in Form **LEM 06.**)

## SECTION I – EXCLUSIONS

Paragraph **7. Intentional Loss** is replaced by the following:

   **7.   Intentional Loss**

   **a.**   Intentional Loss means any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

   In the event of such loss, no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss.

   **b.**   However, this exclusion will not apply to deny payment to an innocent co-"insured" if the loss:

   **(1)**  Arose out of family violence; and

   **(2)**  Is caused by the intentional act of an "insured" against whom a family violence complaint is brought for the act causing the loss.

   **c.**   If we pay a claim pursuant to Paragraph **8.b.,** our payment to the innocent co-"insured" is limited to that "insured's" insurable interest in the property. In no event will we pay more than the Limit of Liability.

## SECTION I – CONDITIONS

In Form **LEM 03**:

The lead-in paragraph in Paragraph **D. Loss Settlement** is replaced by the following:

   In this Condition **D.,** the terms "cost to repair or replace" and "replacement cost" do not include:

   **1.**   Any compensation for actual or perceived reduction in the market value of any property; or

   **2.**   The increased costs incurred to comply with the enforcement of any ordinance or law, except to the extent that coverage for these increased costs is provided in **E.11.** Ordinance Or Law under Section **I** – Property Coverages.

   Covered property losses are settled as follows:

In Form **LEM 06:**

The last paragraph in Paragraph **D. Loss Settlement** is replaced by the following:

   In this provision, the terms "repaired" or "replaced" do not include:

    **a.** Any compensation for actual or perceived reduction in the market value of any property; or

    **b.** The increased costs incurred to comply with the enforcement of any ordinance or law, except to the extent that coverage for these increased costs is provided in **D.10.** Ordinance Or Law under Section **I** – Property Coverages.

**L. Mortgage Clause**

Paragraph **3.** is replaced by the following:

**3.** If we decide to cancel or not renew this policy, the mortgagee will be notified at least 30 days before the date cancellation or nonrenewal takes effect. If the policy has been in effect for less than 60 days or is cancelled for nonpayment of premium, the mortgagee will be notified at least 10 days before the date cancellation takes effect.

(This Condition does not apply to Form **LEM 04.**)

## SECTION II – EXCLUSIONS

**E. Coverage E – Personal Liability And Coverage F – Medical Payments To Others**

Paragraph **8.** is replaced in all forms:

**8. Controlled Substance**

"Bodily injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs.

However, this exclusion does not apply:

**(1)** To the legitimate use of prescription drugs by a person following the lawful orders of a licensed health care professional; or

**(2)** Where the involvement with controlled substance(s) is not within the knowledge of any "insured".

Paragraph **10. Pollutants and Contaminants** is deleted in all forms.

**G. Coverage F – Medical Payments To Others**

Paragraph **1.** is replaced in all forms:

Coverage **F** does not apply to "bodily injury":

1. To a "residence employee" if the "bodily injury":

    a. Occurs off the "insured location"; and

    b. Does not arise out of or in the course of the "residence employee's" employment by an "insured";

## SECTIONS I AND II – CONDITIONS

**C. Cancellation**

Paragraphs **1., 2., 2.a., 2.b., 2.c.** and **4.** are replaced by the following:

**1.** You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect, subject to the following:

    **a.** If only your interest is affected, the effective date of cancellation will be the later of the following:

        **(1)** The date we receive your notice of cancellation; or

        **(2)** The date specified in the notice.

    However, upon our receipt of your notice of cancellation, we may waive the requirement that the notice state the future effective date of cancellation, as provided in either **1.a.(1)** or **1.a.(2)** above, by confirming to you in writing the date and time of cancellation.

    **b.** If by statute, regulation or contract, this policy may not be cancelled unless notice is given to a governmental agency, mortgagee or other third party, we will mail or deliver at least 10 days' notice to you and the third party as soon as practicable after receiving your request for cancellation.

    Our notice will state the effective date of cancellation, which will be the later of the following:

        **(1)** 10 days from the date of mailing or delivering our notice; or

        **(2)** The effective date of cancellation stated in your notice to us.

2. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice, together with our reasons for cancellation, may be delivered to you, or mailed to you at your last known mailing address. A receipt provided by, or such other evidence of mailing as prescribed or accepted by, the U.S. Postal Service will be sufficient proof of notice.

   a. When you have not paid the premium, whether payable to us or to our agent, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

   b. When this policy has been in effect for 60 days or less and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the cancellation effective date takes effect.

   c. When this policy has been in effect for more than 60 days, or at any time if it is a renewal with us, we may cancel only for one or more of the following reasons:

      (1) Upon discovery of fraud, concealment of a material fact or material misrepresentation made by, or with the knowledge of, any "insured" in obtaining this policy, continuing the policy, or presenting a claim under this policy;

      (2) Upon the occurrence of a change in the risk which substantially increases any hazard insured against; or

      (3) Upon the violation, by the "insured", of any of the material terms or conditions of the policy.

      This can be done by letting you know at least 30 days before the date cancellation takes effect.

4. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it no later than the date cancellation takes effect.

Paragraph **D. Nonrenewal** is replaced by the following:

### D. Nonrenewal

We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your last known mailing address, and to any lienholder named in the policy, written notice, together with our reasons for nonrenewal, at least 30 days before the expiration date of this policy.

A receipt provided by, or such other evidence of mailing as prescribed or accepted by, the U.S. Postal Service will be sufficient proof of notice.

The following provision is added:

### H. Our Right To Recompute Premium

We established the premium for this policy based on the statements you made in the application for insurance. We have the right to recompute the premium if we later obtain information which affects the premium we charged.

All other provisions of this policy apply.

LEM-3004 (02-17)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**
# CANINE LIABILITY EXCLUSION ENDORSEMENT

This insurance modifies insurance under the following forms:

Lemonade Homeowners Form

Lemonade Renters Form

Lemonade Condo Form

### SCHEDULE

---

**Description Of Canine(s):** Wolf-hybrids and/or any canine with a prior bite history as documented by an previous insurance claim, police report, or civil complaint.
Note: This Exclusion Endorsement does not apply to the listed breeds if the dog(s) is Certified as a Seeing Guide Dog, Hearing Dog or is Trained to Assist the Physically Disabled.

---

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

---

**SECTION II – EXCLUSIONS**

**E.  Coverage E – Personal Liability And Coverage F – Medical Payments To Others**

The following exclusion is added:

Coverages **E** and **F** do not apply to the following:

**Canines**

"Bodily injury" or "property damage" arising out of direct physical contact with a canine described in the Schedule that is owned by or in the care, custody or control of an "insured".

All other terms and conditions of your policy remain unchanged.

**LEM-3004 (02-17)**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

LEM 3003 (02-20)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY
# TRAMPOLINE LIABILITY EXCLUSION

This insurance modifies insurance under the following forms:

Homeowners 3 – Special Form

Homeowners 4 – Contents Broad Form

Homeowners 6 – Unit-Owners Form

## SECTION II – EXCLUSIONS

**E.   Coverage E – Personal Liability And Coverage F – Medical Payments To Others**

The following exclusion is added:

Coverages E and F do not apply to the following:

**Trampolines**

"Bodily injury" or "property damage" or arising from or in any way involving, directly or indirectly, any trampoline, bounce house or inflatable slide, regardless of cause.

We shall have no duty to investigate, defend, or indemnify any claim or suit seeking such damages.

All other terms and conditions of the policy remain unchanged.

**LEM-3003 (02-20)**  © Copyright 2020 by LEMONADE INSURANCE COMPANY

IL N 001 09 03

# FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

© ISO Properties, Inc., 2003

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

       © ISO Properties, Inc., 2004

LEM-2031 (10-17)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIMITED FUNGI, WET OR DRY ROT, OR BACTERIA COVERAGE – GEORGIA

## SCHEDULE

| | | |
|---|---|---|
| These limits of liability apply to the total of all loss or costs payable under this endorsement, regardless of the number of "occurrences", the number of claims made, or the number of locations insured under this endorsement and listed in this Schedule. | | |
| 1. | Section I – Property Coverage Limit Of Liability for the Additional Coverage "Fungi", Wet Or Dry Rot, Or Bacteria | $ |
| 2. | Section II – Coverage E Aggregate Sublimit of Liability f or "Fungi", Wet Or Dry Rot, Or Bacteria | $  50,000 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | |

This insurance modifies insurance under the following forms:

Lemonade Homeowners Form

**DEFINITIONS**

The following definition is added:

**"Fungi"**

  **a.** "Fungi" means any type or form of fungus, including mold or mildew, and any mycoto xins, spores, scents or by-products produced or released by fungi.

  **b.** Under Section **II**, this does not include any fungi that are, are on, or are contained in, a good or product intended for consumption.

**SECTION I – PROPERTY COVERAGES**

**E. Additional Coverages**

The following Additional Coverage is added:

**13. "Fungi", Wet Or Dry Rot, Or Bacteria**

  **a.** The amount shown in the Schedule above is the most we will pay for:

    **(1)** The total of all loss payable under Se ction **I** – Property Coverages caused by "fungi", wet or dry rot, or bacteria;

    **(2)** The cost to remove "fungi", wet or dry rot, or bacteria from property covered under Section  **I** – Property Coverages;

    **(3)** The cost to tear out and replace any part of the building or other covered property as needed to gain access to the "fungi", wet or dry rot, or bacteria; and

    **(4)** The cost of testing of air or property to confirm the absence, presence or le vel of "fungi", wet or dry rot, or bacteria whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reason to believe that there is the presence o f "fungi", wet or dry rot, or bacteria.

  **b.** The coverage described in **a.** only applies when such loss or costs are a result of a Peril Insured Against that occurs during the policy period and only if all reasonable means were used to save and preserve the pr operty from further damage at and after the time the Peril Insured Against occurred.

  **c.** The amount shown in the Schedule for this coverage is the most we will pay for the t otal of all loss or costs payable under this Add itional Coverage regardless of the:

**b.** The coverage described in **a.** only applies when such loss or costs are a result of a Peril Insured Against that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at and after the time the Peril Insured Against occurred.

**c.** The amount shown in the Schedule for this coverage is the most we will pay for the total of all loss or costs payable under this Additional Coverage regardless of the:

**(1)** Number of locations insured under this endorsement; or

**(2)** Number of claims made.

This coverage does not increase the limit of liability applying to the damaged covered property.

## SECTION I – PERILS INSURED AGAINST

In Form **LEM 03:**

## A. Coverage A – Dwelling And Coverage B – Other Structures

Paragraph **2.c.(5)** is replaced by the following:

**(5)** Caused by constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

Paragraph **2.c.(6)(c)** is replaced by the following:

**(c)** Smog, rust or other corrosion;

## B. Coverage C – Personal Property

### 12. Accidental Discharge Or Overflow Of Water Or Steam

Paragraph **b.(4)** is replaced by the following:

**(4)** Caused by constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

## SECTION I – EXCLUSIONS

Exclusion **A.10.** is added:

**"Fungi", Wet Or Dry Rot, Or Bacteria**

"Fungi", Wet Or Dry Rot, Or Bacteria meaning the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot, or bacteria.

This exclusion does not apply:

**a.** When "fungi", wet or dry rot, or bacteria results from fire or lightning;

**b.** To the extent coverage is provided for in the "Fungi", Wet Or Dry Rot, Or Bacteria Additional Coverage under Section I – Property Coverages with respect to loss caused by a Peril Insured Against other than fire or lightning; or

**c.** With respect to "fungi", wet or dry rot, or bacteria that is located on the portion of the covered property that must be repaired or replaced because of direct physical damage caused by a Peril Insured Against.

However, the exclusion shall continue to apply to:

**(1)** The cost to treat, contain, remove or dispose of "fungi", wet or dry rot, or bacteria beyond that which is required to repair or replace the covered property physically damaged by a Peril Insured Against;

**(2)** The cost of any testing of air or property to confirm the absence, presence or level of "fungi", wet or dry rot or bacteria whether performed prior to, during or after removal, repair, restoration or replacement; and

**(3)** Any increase in loss under Coverage **D** – Loss Of Use and Additional Coverage **1.** Debris Removal resulting from **c.(1)** and **(2)**.

Direct loss by a Peril Insured Against resulting from "fungi", wet or dry rot, or bacteria is covered.

## SECTION I – CONDITIONS

Condition **P. Policy Period** is replaced by the following:

### P. Policy Period

This policy applies to loss or costs which occur during the policy period.

## SECTION II – CONDITIONS

Condition **A. Limit Of Liability** is replaced by the following:

### A. Limit Of Liability

Our total liability under Coverage **E** for all damages resulting from any one "occurrence" will not be more than the Coverage **E** Limit Of Liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions will be considered to be the result of one "occurrence".

Our total liability under Coverage **F** for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage **F** Limit Of Liability shown in the Declarations.

However, our total liability under Coverage **E** for the total of all damages arising directly or indirectly, in whole or in part, out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi", wet or dry rot, or bacteria will not be more than the Section **II** – Coverage **E** Aggregate Sublimit Of Liability for "Fungi", Wet Or Dry Rot, Or Bacteria. That sublimit is the amount shown in the Schedule. This is the most we will pay regardless of the:

**1.** Number of locations insured under the policy to which this endorsement is attached;

**2.** Number of persons injured;

**3.** Number of persons whose property is damaged;

**4.** Number of "insureds"; or

**5.** Number of "occurrences" or claims made.

This sublimit is within, but does not increase, the Coverage **E** limit of liability. It applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations.

With respect to damages arising out of "fungi", wet or dry rot, or bacteria described in Condition **A.** Limit Of Liability of this endorsement, Condition **B. Severability Of Insurance** is replaced by the following:

### B. Severability Of Insurance

This insurance applies separately to each "insured" except with respect to the Aggregate Sublimit of Liability described in this endorsement under Section **II** – Conditions, **A.** Limit Of Liability. This condition will not increase the limit of liability for this coverage.

All other provisions of the policy apply.

Policy No LP229F11F06                                           LEM-AdvAction01 (01-19)

# NOTICE: CREDIT AND CREDIT BASED INFORMATION
## Adverse Action Notification

### Disclosure in accordance with 15 U.S.C. §1681

In connection with this insurance, we reviewed your credit report or obtained a credit-based insurance score from the credit reporting agency, TransUnion. TransUnion provides us with a TrueRisk® Property Score.  According to TransUnion, "TrueRisk is an industry-leading, credit-based insurance score that uses TransUnion's individual-level credit data to predict the potential loss ratio for a given consumer seeking an insurance policy."

TransUnion address and toll free telephone number is:

TransUnion LLC
2 Baldwin Place
P.O. Box 1000
Chester, PA 19016
800-888-4213

We use this score to determine your Initial Tier pursuant to our filed rating plan. In your case, TransUnion reported that as of May 01, 2022, your numerical credit score was 679. The range of possible credit scores under this model ranged from 300-900.  Our filed rating plan uses a "neutral" factor TrueRisk score range of 577-635. Unfortunately, your credit score was lower because of the following factors:

    - Number of bank revolving accounts is between 2 and 9.

    - Months since most recent bank revolving trade opened is between 1 and 5.

    - Number of consumer-initiated inquiries during the past 24 months is between 1 and 5.

    - Number of credit card accounts opened in the last 6 months is one or more.

Please be advised that this premium decision was Lemonade's, and not TransUnion. The credit reporting agency will not be to provide you with the reasons that the premium decision was made.

However, Under the Federal Fair Credit Reporting Act (15 U.S.C. § 1681), you have the right to get a copy of your credit report for free. You have 60 days from receiving this notice to ask for it from the credit reporting agency. If you do obtain your free credit report, the report will indicate all the negative factors which contributed to your credit score. You may also dispute the accuracy or completeness of any information in a consumer report directly with that consumer reporting agency.

The Company will provide exceptions to rates, rating classifications, or underwriting rules for a consumer whose credit information has been directly influenced by extraordinary life events, including, but not limited to, a catastrophic illness or injury; the death of spouse, child, or parent; temporary loss of employment; divorce; identity theft; and military deployment overseas. In such cases, the company shall assign a neutral credit score.