IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SIMPLEX DESIGNS, LLC, § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> TIGHTLINE DEVELOPMENT, § <br> LLC, § <br> § <br> Defendant. § <br> § | Civil Action No. _____ <br><br> JURY TRIAL DEMANDED |

**COMPLAINT FOR DECLARATORY JUDGMENT OF PATENT NON-INFRINGEMENT AND VIOLATION OF GEORGIA LAW**

Plaintiff Simplex Designs, LLC ("Simplex" or "Plaintiff") for its complaint against Defendant TightLine Development, LLC ("TightLine" or "Defendant"), alleges as follows:

**NATURE OF THE ACTION**

1. Simplex brings this action seeking (1) a declaratory judgment that Simplex's Watson Extraction System ("Watson") does not infringe any claim of United States Patent No. 10,751,070 ("the '070 patent," attached hereto as Exhibit A) under 35 U.S.C. § 271 (or any sub-section thereof), (2) a judgment that TightLine has violated O.C.G.A. § 10-1-370 *et seq*., (3) a judgment that TightLine has violated

O.C.G.A. § 10-1-770 *et seq.*, and (4) a judgment that TightLine has tortiously interfered with Simplex's business relations.

2. Simplex seeks this necessary relief because TightLine, which claims to be the owner of the '070 patent, has falsely alleged that Simplex infringes at least one claim of the '070 patent. TightLine's actions have thus (i) cast uncertainty over Simplex's businesses, products, and customers, distributors, and end-users; (ii) injured and are injuring Simplex's businesses, business relationships, and potential business relationships; and (iii) created a concrete and immediate justiciable controversy between Simplex and TightLine. Accordingly, Simplex brings this case to clear its name, protect itself against TightLine's meritless claims, and receive relief for all damage done by TightLine's false infringement allegations.

## PARTIES

3. Plaintiff Simplex Designs, LLC is a limited liability company organized and existing under the laws of the State of Wyoming with a principal place of business at 3075 Breckinridge Blvd, Suite 465, Duluth, GA 30096.

4. On information and belief, Defendant TightLine Development, LLC is a limited liability company organized and existing under the laws of the State of Georgia with a principal place of business at 5883 Glenridge Dr. NE, Suite 175 Atlanta, GA 30328.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 2201, 1331, and 1338(a) because this action arises under the patent laws, and Simplex seeks relief under the Federal Declaratory Judgment Act. The Court further has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

6. This Court has personal jurisdiction over TightLine at least because TightLine is at home in the state of Georgia, where it is incorporated.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 and in this Division pursuant to Northern District of Georgia Local Rule 3.1(B)(1)(a) at least because Defendant resides in this judicial District and this judicial Division.

## BACKGROUND

8. Hip pain and disabilities plague millions of people worldwide. To relieve hip pain and disabilities, it is sometimes necessary to remove and replace damaged bone and cartilage with prosthetic components. This procedure is known as a total hip replacement, and in the United States alone, more than 450,000 total hip replacements are performed each year. While the initial success rate for hip replacements is extremely high, many of these replacements fail over time and require revision surgery wherein the original implant is removed and replaced with

a new implant. The goal of this revision surgery is to remove the implant with minimum damage to the bone tissue, but it is often difficult to remove an existing implant without damaging the bone surrounding the implant.

9. Recognizing this issue and the growing number of patients requiring revision surgeries, the founders of Simplex knew there must be a better way to remove failed implants. After years of R&D and multiple successful case studies,[1] Simplex recently shipped its first orders of the Watson Extraction System: a revolutionary bone conserving technology designed to improve user application and surgical outcomes in hip revision surgeries.

10. Yet despite Simplex's and Watson's successes, as discussed in further detail below, TightLine has falsely alleged on numerous occasions that Simplex infringes the '070 patent.

### THE '070 PATENT

11. The '070 patent is titled "Femoral Hip Stem Explant System and Methods of Using the Same," and states on its cover that it was issued August 25, 2020 to named inventors John E. Pendleton of Atlanta, GA; Daniel H. Hursh of

---

[1] *See, e.g.*, Kevin M. Sagers, et. al., *Removing Well-Fixed Collared and Noncollared Tapered Hip Stems Without an Extended Trochanteric Osteotomy Using a Novel Stem Removal System*, Arthroplasty Today 11 (2021) 146-150, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8435937/.

4

Roswell, GA; and Thomas L. Bradbury of Atlanta, GA. The '070 patent includes a Certificate of Correction stating that TightLine is the assignee. On information and belief, TightLine is the owner by assignment of the '070 patent. A true and correct copy of the '070 patent is attached hereto as Exhibit A.

## DISPUTE BETWEEN SIMPLEX AND TIGHTLINE CONCERNING THE '070 PATENT

12. On April 30, 2021, TightLine, through its counsel, sent a letter to Mr. Jose S. Rivera, Jr., the President and Co-Founder of Rivera Surgical LLC ("April 2021 letter"). Ex. B. In the April 2021 letter, TightLine stated that it owns the '070 patent and that it has "become aware of Rivera Surgical's marketing and sale of its 'Watson Extraction System'." *Id*. TightLine warned Mr. Rivera "that Tightline [] takes intellectual property issues very seriously," and it attached the '070 patent to the letter. *Id*. Mr. Rivera understood the April 2021 Letter to be a threat that TightLine would file a patent infringement lawsuit accusing Rivera Surgical LLC of infringing the '070 patent by making, using, offering to sell, or selling its Watson Extraction System, a series of specifically developed instruments designed to facilitate the removal of a non-cemented femoral stem implant during hip surgery.[2] The Watson Extraction System, also known simply as "Watson," was Rivera

---

[2] As discussed below, *infra* ¶ 14, Rivera Surgical LLC's version of the Watson Extraction System is substantially similar to Simplex's Watson.

Surgical LLC's only product and embodied certain patented technology developed by Mr. Rivera. On information and belief, the '070 patent is the only patent assigned to TightLine.

13.   Then, during the November 2021 American Association of Hip and Knee Surgeons conference in Dallas, Texas, Mr. Ottie Pendleton (TightLine's President) told Mr. Michael Turner (a Senior Director of Marketing at Smith & Nephew plc[3]) that Rivera Surgical LLC was infringing TightLine's patent and that TightLine was "going to bury" Rivera Surgical LLC. On information and belief, Mr. Pendleton was referring to the '070 patent and a patent infringement lawsuit. On information and belief, Mr. Pendleton made these statements to dissuade Smith & Nephew plc from doing business with Rivera Surgical LLC.

14.   With this threat of litigation still outstanding, Rivera Surgical LLC sold its intellectual property—including U.S. Patent No. 11,191,651, entitled "Implant Removal Tool"[4]—to Simplex. In the years following this sale, Simplex has continued to develop and now sells and distributes Watson, which remains substantially similar to the version originally developed by Rivera Surgical LLC.

---

[3] Smith & Nephew plc is one of the world's leaders in the orthopedic industry.
[4] Simplex also purchased U.S. Patent Application Nos. 63/199,654; 63/202,053; 17/127,006; 17/387,805; and 17/515,941; PCT Application No. PCT/US20/27692; and Trademark Registration No. 6,997,122 ("WATSON EXTRACTION SYSTEM").

15. Since Simplex's purchase of Rivera Surgical LLC's intellectual property rights, TightLine has continued making baseless patent infringement accusations to Simplex's potential business partners and customers. In March 2022, at the American Academy of Orthopedic Surgeons in Chicago, Illinois, Mr. Pendleton met with Mr. Matt Reike (a Senior Director of Global Business Development and Strategy at DePuy Synthes[5]) and told him that TightLine was going to sue Simplex for infringing the '070 patent. Mr. Pendleton further threatened that if DePuy Synthes partnered with or purchased Simplex, TightLine would file a patent infringement lawsuit against DePuy Synthes. On information and belief, Mr. Pendleton made these statements to dissuade DePuy Synthes from doing business with Simplex.

16. In approximately December 2022, a DePuy Synthes employee contacted Dr. Charlie DeCook (a member of Simplex) and asked whether TightLine had filed a patent infringement complaint against Simplex concerning Watson. This DePuy Synthes employee further informed Dr. DeCook that DePuy Synthes's attorneys were aware of TightLine's patent infringement allegations. Similarly, Dr. DeCook spoke with Ms. Simran Sabharwal (a Senior Director of Marketing at Smith

---

[5] DePuy Synthes—the orthopedic division of Johnson & Johnson—is a pioneer of innovative hip implants and one of the top orthopedic companies in the world.

7

& Nephew plc) and she expressed a concern that Watson might be facing a patent infringement suit. On information and belief, Ms. Sabharwal was referring to TightLine's '070 patent infringement allegations.

17. Then, during the week of April 3, 2023, another DePuy Synthes employee told Dr. Andrew Cooper (another member of Simplex) that DePuy Synthes viewed TightLine as serious in its litigation threats concerning the '070 patent.

18. Most recently, on April 14, 2023, Mr. Stephen White (a DePuy Synthes Vice President of Research and Development) informed Mr. Jon Mrkonich (Simplex's Manager) that Depuy Synthes would allow its distributors to sell Watson but would also warn its distributors of TightLine's looming threat of a patent infringement lawsuit. On information and belief, this will limit distribution of Watson and harm Simplex by reducing the number of potential customers for and sales of Watson.

19. Simplex began shipping Watson on April 15, 2023. While DePuy Synthes is allowing Simplex to utilize its independent distributors for the sale of Watson in the United States, on information and belief, DePuy Synthes is not allowing Simplex to use DePuy Synthes's direct sales force because of TightLine's persistent patent infringement threats. Without the support of DePuy Synthes's

8

nationwide, direct sales force, Simplex has suffered and/or will suffer injury in the form of lost sales and market share, and Simplex will continue to until TightLine's infringement threat is removed.

20. Since TightLine began accusing Simplex of infringing the '070 patent, Simplex has maintained that it does not infringe any claim of the '070 patent.

21. Accordingly, an actual and justiciable controversy exists between Simplex and TightLine concerning whether Simplex infringes one or more claims of the '070 patent. Simplex now seeks a declaratory judgment that Simplex does not infringe the '070 patent.

22. Simplex further seeks judgment that, in making these baseless and bad faith accusations of patent infringement in an effort to disrupt and interfere with Simplex's business, TightLine violated O.C.G.A. §§ 10-1-370 *et seq*., 10-1-770 *et seq*., and tortiously interfered with business relations under Georgia law.

## CLAIMS FOR RELIEF

### COUNT ONE: DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '070 PATENT

23. This is a claim for judgment of non-infringement of the '070 patent. The allegations of the foregoing paragraphs above are repeated as though fully set forth herein.

9

24. Simplex is not infringing and has not infringed, directly or indirectly, literally or under the doctrine of equivalents, willfully or otherwise, any claim of the '070 patent.

25. As a result of the acts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

26. The '070 patent has three independent claims. Independent claim 1 recites:

1. A medial blade for removing a hip implant from a femur, the medial blade comprising a medial cutting blade having a proximal end and a distal end and wherein the medial cutting blade conforms to the geometry of the medial portion of the hip implant and is configured to cut through femur growing into the medial portion of the hip implant and further comprises a slot opening defined through a central portion of the medial blade between the proximal end of the medial blade and the distal end of the medial blade and wherein the slot opening is sized and shaped such that a portion of the hip implant can pass through the slot opening so that the medial blade does not undesirably engage the hip implant restricting access of the medial cutting blade when removing the hip implant.

27. Watson does not include every claimed feature of independent claim 1 of the '070 patent. Watson does not include, among other things, the claimed "slot opening defined through a central portion of the medial blade between the proximal end of the medial blade and the distal end of the medial blade."

28. Independent Claim 8 recites:

8. A system for removing a hip implant from a femur, the system comprising:

(a) a first blade having a proximal end and a distal end and the first blade further comprising a cutting blade having a proximal end and a distal end; and

(b) a handle,

wherein the first blade is attachable to the handle and wherein the distal end of the cutting blade includes a cutting tip configured to cut through bone growth from the femur into the hip implant thereby facilitating removal of the hip implant and wherein the cutting blade is configured to conform to the geometry of a portion of the hip implant and wherein the first blade comprises an elongated slot opening defined in the first blade between the proximal end of the first blade and the distal end of the first blade and wherein the elongated slot opening is defined in a central portion of the first blade and the central portion has a blade width greater than the blade width of the proximal end of

the first blade and greater than the blade width of the distal end of the first blade.

29. Watson does not include every claimed feature of independent claim 8 of the '070 patent. Watson does not include, among other things, the claimed "central portion has a blade width greater than the blade width of the proximal end of the first blade and greater than the blade width of the distal end of the first blade."

30. Independent Claim 19 recites:

19. A system for removing a hip implant from a femur, the system comprising:

(a) a first blade having a proximal end and a distal end and the first blade further comprising a cutting blade having a proximal end and a distal end; and

(b) a handle,

wherein the first blade is attachable to the handle and wherein the distal end of the cutting blade includes a cutting tip configured to cut through bone growth from the femur into the hip implant or through bone cement surrounding the hip implant, thereby facilitating removal of the hip implant and wherein the cutting blade is configured to conform to the geometry of a portion of the hip implant and wherein the first blade comprises an elongated slot opening defined between the proximal end of the first blade and the distal end of the first blade and wherein the elongated slot opening is sized and

shaped such that a portion of the hip implant can pass through the slot opening so that the first blade does not undesirably engage the hip implant restricting access of the cutting blade when removing the hip implant.

31. Watson does not include every claimed feature of independent claim 19 of the '070 patent. Watson does not include, among other things, the claimed "elongated slot opening defined between the proximal end of the first blade and the distal end of the first blade."

32. For at least these reasons, Simplex has not infringed and does not infringe any claim of the '070 patent.

33. A judicial declaration is necessary and appropriate so that Simplex may ascertain its rights regarding the '070 patent.

### COUNT TWO: VIOLATION OF GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT, O.C.G.A. § 10-1-370

34. Simplex reincorporates and realleges the allegations of the foregoing paragraphs as though fully set forth herein.

35. Upon information and belief, TightLine has made false and/or misleading statements of fact to Simplex's business partners and prospective business partners concerning Simplex, its business practices, and its products, and has otherwise disparaged Simplex and its business practices, and its products.

36. Upon information and belief, TightLine's statements were made in bad faith, and TightLine knew or should have known that its statements to Simplex's business partners and prospective business partners were false and/or misleading.

37. Upon information and belief, TightLine's actions constitute unfair and deceptive trade practices in violation of O.C.G.A. § 10-1-370 *et seq*.

38. Based upon TightLine's unlawful conduct, Simplex has suffered injury to its business and its reputation, thereby entitling it to an injunction and the recovery of its damages, including punitive damages.

**COUNT THREE: VIOLATION OF GEORGIA BAD FAITH PATENT ASSERTION ACT, O.C.G.A. § 10-1-770**

39. Simplex reincorporates and realleges the allegations of the foregoing paragraphs as though fully set forth herein.

40. Upon information and belief, TightLine has made a bad faith assertion of patent infringement against Simplex based on its sale of and offer to sell Watson.

41. Upon information and belief, TightLine failed to conduct an adequate infringement analysis prior to asserting patent infringement claims against Simplex. For example, TightLine did not conduct a meaningful analysis comparing the claims of the '070 patent to Watson in connection with whether Watson includes the claimed "slot opening defined through a central portion of the medial blade between the proximal end of the medial blade and the distal end of the medial blade."

42. Upon information and belief, TightLine's assertion of patent infringement against Simplex is meritless, made in bad faith, and TightLine knew, or should have known, that its assertions are meritless.

43. Upon information and belief, TightLine's actions constitute a bad faith assertion of patent infringement in violation of O.C.G.A. § 10-1-770 *et seq*.

44. Based upon TightLine's unlawful conduct, Simplex has suffered injury to its business and its reputation, thereby entitling it to an injunction and the recovery of its damages, including punitive damages and attorneys' fees.

## COUNT FOUR: TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS UNDER GEORGIA LAW

45. Simplex reincorporates and realleges the allegations of the foregoing paragraphs as though fully set forth herein.

46. TightLine acted improperly and without privilege in repeatedly and falsely telling Simplex's business partners and prospective business partners that Simplex infringes the '070 patent.

47. TightLine purposely and with malice with intent to injure falsely accused Simplex of infringing the '070 patent.

48. Upon information and belief, TightLine induced Smith & Nephew plc to not enter into a business relationship with Simplex. Upon information and belief,

15

TightLine induced DePuy Synthes to not allow Simplex to use DePuy Synthes's direct sales force.

49.  Simplex has suffered financial injury from TightLine's tortious interference with Simplex's business relations.

50.  As explained above, *supra* ¶¶ 26-32, TightLine's infringement allegations are objectively baseless.

51.  Further, TightLine's infringement allegations demonstrated subjective bad faith.  TightLine never presented Rivera Surgical LLC or Simplex with infringement claim charts, and TightLine never directly approached Simplex. Rather, TightLine in bad faith spread falsehoods to Simplex's business partners and prospective business partners in an apparent attempt to interfere with Simplex's business relations.

52.  Based upon TightLine's unlawful conduct, Simplex has suffered injury to its business and its reputation, thereby entitling it to an injunction and the recovery of its damages, including punitive damages and attorneys' fees.

## JURY TRIAL DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury of all issues so triable in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

A.     The Court enter a declaratory judgment that Simplex is not infringing and has not infringed, directly or indirectly, literally or under the doctrine of equivalents, willfully or otherwise, any claim of the '070 patent;

B.     Preliminarily and permanently enjoining TightLine, its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with it who receive actual notice by personal service or otherwise, from asserting or threatening to assert against Simplex or its customers, potential customers, or users of any Plaintiff products, any charge of infringement of any claims of the '070 patent;

C.     The Court declare this case "exceptional" under 35 U.S.C. § 285 and award to Simplex its costs and attorneys' fees;

D.     The Court enter judgment that TightLine has violated the Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-370 *et seq.*;

E.     The Court enter judgement that TightLine has violated the Georgia Bad Faith Patent Assertion Act, O.C.G.A. § 10-1-770 *et seq.*;

F.     The Court enter judgment that TightLine has tortiously interfered with Simplex's business relations under Georgia law;

  G. The Court enter judgment entitling Simplex to recovery of its damages, including punitive damages, costs and attorneys' fees for TightLine's violation of Georgia law; and

  H. The Court grant Simplex such other and further relief as this Court may deem just and proper.

Dated: April 17, 2023     Respectfully submitted,

             /s/ *Coby S. Nixon*
             Coby S. Nixon
             Georgia Bar No. 545005
             cnixon@taylorenglish.com
             **TAYLOR ENGLISH DUMA LLP**
             1600 Parkwood Circle, Suite 200
             Atlanta, Georgia 30339
             Phone: (770) 434-6868
             Facsimile: (770) 434-7376

             Scott A. McKeown (*pro hac vice forthcoming*)
             Matthew J. Rizzolo (*pro hac vice forthcoming*)
             Brendan F. McLaughlin (*pro hac vice forthcoming*)
             **ROPES & GRAY LLP**
             2099 Pennsylvania Avenue
             Washington, DC 20036
             Tel: 202 508 4600
             Fax: 202 508 4650
             Scott.mckeown@ropesgray.com
             Matthew.rizzolo@ropesgray.com
             Brendan.mclaughlin@ropesgray.com

             Alexis Ramsey (*pro hac vice forthcoming*)
             **ROPES & GRAY LLP**
             1900 University Ave. Sixth Floor

East Palo Alto, CA 94303-2284
Tel: (650) 617-4000
Fax: (650) 617-4090
Alexis.ramsey@ropesgray.com

*Attorneys for Plaintiff Simplex Designs, LLC*

## LOCAL RULE 7.1D CERTIFICATION

The undersigned hereby certifies that the foregoing COMPLAINT FOR DECLARATORY JUDGMENT OF PATENT NON-INFRINGEMENT AND VIOLATION OF GEORGIA LAW was prepared in Times New Roman, 14 point font, in compliance with Local Rule 5.1.

*/s/ Coby S. Nixon*
Coby S. Nixon
Georgia Bar No. 545005

*Attorney for Plaintiff*
*Simplex Designs, LLC*