**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| SUSANNE KASAHARA, | ) | |
| | ) | |
| Plaintiffs, | ) | CIVIL ACTION |
| | ) | File No. |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| SMARSH, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Susanne Kasahara ("Plaintiff" or "Ms. Kasahara") hereby files this Complaint against Defendant Smarsh, Inc. ("Defendant" or "Smarsh") for Damages and Equitable Relief, stating as follows:

## INTRODUCTION

1.

Plaintiff asserts claims for discrimination and retaliation under the Age Discrimination in Employment Act, ("ADEA"), 29 U.S.C. § 621 *et seq*., Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Americans with Disabilities Act Amendments Act of 2008 ("ADA"), 42 U.S.C. § 12101 *et seq*. Plaintiff also asserts claims for interference and retaliation in

violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*

2.

Ms. Kasahara seeks back pay and lost economic benefits of her employment, liquidated damages, front pay in lieu of reinstatement, compensatory damages, punitive damages, and her reasonable attorneys' fees and costs of litigation in an amount to be determined at trial.

## JURISDICTION AND VENUE

3.

Plaintiff's claims under Title VII, the ADEA, the ADA, and the FMLA present federal questions over which this Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

4.

This Court is an appropriate venue for Plaintiff's claims pursuant to 28 U.S.C. § 1391b(2).

## THE PARTIES

5.

Ms. Kasahara is a resident of Georgia. She subjects herself to the jurisdiction of this Court.

6.

Ms. Kasahara is a 54-year-old female and an individual with a disability as that term is defined under the ADA.

7.

Specifically, Ms. Kasahara is a person with a disability because she suffers from Post-Traumatic Stress Disorder (PTSD) as a result of her military service as well as chronic fatigue syndrome.

8.

At all relevant times, Ms. Kasahara was a "qualified individual" with a disability because she was able to perform the essential functions of her job with or without a reasonable accommodation.

9.

Plaintiff's PTSD and chronic fatigue syndrome are serious health conditions as defined by the FMLA.

10.

At all times relevant to this action, Plaintiff was an "employee" of Defendant within the meaning of the ADEA, Title VII, and the ADA.  At all times relevant to this action, Plaintiff was an "eligible employee" within the meaning of the FMLA.

11.

Defendant Smarsh is a foreign profit corporation with its principal office address at 851 SW 6th Ave, Suite 800, Portland, Oregon, 97204.

12.

Defendant maintains an office at, among other locations, 7000 Central Pkwy #1100, Sandy Springs, GA 30328.

13.

At all times relevant to this action, Defendant Smarsh was an "employer" within the meaning of the ADEA, Title VII, the ADA, and the FMLA.

14.

Smarsh may be served with process by delivering a copy of the Summons and Complaint to its registered agent, CT Corporation System, 289 S. Culver Street, Lawrenceville, GA 30046-4805.

## **ADMINSTRATIVE PROCEEDINGS**

15.

Plaintiff has satisfied all administrative prerequisites to perfect her claims of discrimination and retaliation under Title VII, the ADEA, and the ADA. Specifically, she timely filed Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging sex discrimination, age discrimination, disability discrimination, and retaliation and timely filed this lawsuit following receipt of a

Notice of Right to Sue Letter.

16.

Plaintiff also timely filed a complaint with the Occupational Safety and Health Administration ("OSHA") alleging violations of § 1057 of the Consumer Financial Protection Act ("CFPA") based on Smarsh's retaliation against Plaintiff because of her whistleblowing activities at Smarsh. Plaintiff's CFPA complaint is still under investigation by OSHA as of the time of Plaintiff filing this Complaint. Once OSHA completes its investigation, Plaintiff may seek leave to amend this Complaint to add a claim for retaliation under the CFPA.

## STATEMENT OF FACTS

### Background

17.

Ms. Kasahara worked for Actient starting in March 2017, and when Smarsh acquired Actient in January 2018, Ms. Kasahara was the only technical product manager chosen to stay on and move over to Smarsh.

18.

Plaintiff was employed by Defendant Smarsh as a Senior Product Manager and worked for the company from January 2018 until her termination on July 25, 2022.

19.

Ultimately, Ms. Kasahara was the Senior Product Manager at Smarsh for the Data Services team, the Platform Product Services team, the Migration Services team, and also provided support for multi-team initiatives for the Product Management Services team.

20.

In contrast, her peers, the other Product Managers, had responsibility for only one team each.

21.

Ms. Kasahara had a brief break from her service to Platform Product Services for roughly three months in 2022 but was then assigned Platform Product Services and Migration SST along with Data Services during the second quarter. Despite this, Ms. Kasahara never received a promotion from Smarsh.

22.

Plaintiff is also a veteran and suffers from Post-Traumatic Stress Disorder because of her military service as well as chronic fatigue syndrome.

23.

Smarsh knew of Ms. Kasahara's disabilities because during her tenure at Smarsh, she notified the Data Services Director, HR, a Director, a Vice President, and her manager, Jordan Collier, of this.

24.

Kyle Campos served as Executive Vice President during the relevant time period. After Mr. Campos' arrival in 2018, Ms. Kasahara reported to Mr. Campos.

25.

From this point forward, Ms. Kasahara began to experience numerous instances of discrimination. An early example was Ms. Kasahara being removed or excluded from important meetings on a project in which she was providing data to a major client.

## Female Employees Aged 40 and Over Experience Discrimination Under Mr. Campos

26.

In approximately August 2020, Mr. Campos and Vice President Clint Hill approached Ms. Kasahara and told her they had in mind a substantially younger male candidate, Jordan Collier (age - 30's), to hire for director of product

management on platform side, which is a position for which Ms. Kasahara has trained a number of individuals.

27.

Ms. Kasahara asked Mr. Campos and Mr. Hill about her serving in this position because she had been acting director for the last two and a half years without any promotion. Ms. Kasahara proposed that she and Mr. Collier work together as equals.

28.

Mr. Campos, however, refused her request and did not promote her.

29.

Despite Mr. Campos' unjustified and discriminatory refusal to promote Ms. Kasahara, she worked diligently to assist Mr. Collier in building a platform product team.

30.

Ms. Kasahara was not the only woman who experienced discrimination under Mr. Campos's leadership.

31.

In approximately May 2021, Smarsh hired Harley Dickey, a 30-year-old woman, to work on storing and housing data for a number of substantial clients.

Ms. Dickey worked with Jon Utter (Engineering Manager) and Wesley Ashkinazy (Manager of Data Services).

32.

Within about a month, however, Ms. Dickey experienced her own difficulties with anyone accepting or valuing her input.

33.

Ms. Dickey reached out to Ms. Kasahara and said she was not able to get any meetings with Mr. Campos about the product.

34.

Ms. Dickey complained to Ms. Kasahara about the "good ole boys club" (or words to that effect) that existed under Mr. Campos.

35.

In or around October 2021 Mr. Utter criticized Ms. Dickey's performance to Ms. Kasahara. Mr. Utter told Ms. Kasahara that he had thought working with someone Ms. Dickey's age would be good because he did not like working with more senior people.

36.

He also told Ms. Kasahara he was previously part of an age discrimination lawsuit or complaint filed by former employee Mark Elliot who "was too old to be doing what he was doing."

37.

During this same time, Smarsh tasked Ms. Kasahara with working with Mr. Utter and Mr. Ashkinazy on a critical project. As part of the project, they were to report weekly to Mr. Campos.

38.

Ms. Kasahara recognized that the product in its current state was not adequate to meet the client's needs. When she attempted to raise these concerns – both to Mr. Ashkinazy and Mr. Utter – and in team meetings with Mr. Campos, they were dismissive of her concerns.

39.

In fact, Mr. Ashkinazy and Mr. Utter told Ms. Kasahara to stop bringing up these issues and began to exclude her from meetings and critical communications related to the project.

40.

Mr. Utter and Mr. Ashkinazy also did the same thing to another female colleague who expressed complaints.

41.

Shortly thereafter, Ms. Kasahara was leading a group meeting with several individuals in which Mr. Ashkinazy degraded Ms. Kasahara's work as not useful or important.

## Ms. Kasahara Complains about Sex Discrimination

42.

Ms. Kasahara complained of this mistreatment to Mr. Collier and complained of the "bro team" atmosphere.

43.

Plaintiff's complaint to Mr. Collier constituted opposition to sex discrimination and protected activity under Title VII.

## Smarsh's Discriminatory Treatment Extends to Her Disabilities

44.

Then Mr. Hill, without any invitation from Ms. Kasahara talked about the "Anxious Achiever" therapy he was going through and basically, told her she needed to understand she was the problem or she would face a tough future.

45.

In addition to being a veiled reference to Ms. Kasahara's PTSD, Mr. Hill's suggestion that Ms. Kasahara was somehow the problem is another instance of discriminatory conduct.

## Ms. Kasahara Learns That Smarsh Hid Information from Her in a Slack Channel Reserved for Men and Younger Women

46.

During this same time, Mr. Campos humiliated Ms. Kasahara in a public conversation over the Slack channel when Ms. Kasahara simply asked where a product demonstration would take place. These details had not been made clear to her and she observed during the meeting that she clearly was not receiving other important information.

47.

In fact, Ms. Kasahara later learned from a male co-worker that Mr. Campos had set up a separate Slack channel called "Platform leadership." Her co-worker questioned why she had not been included and sent Ms. Kasahara the information for the channel.

48.

Ms. Kasahara discovered that the group included all the males in her scope of work as well as Ms. Dickey and another substantially younger female (who was later promoted to a director position).

49.

The channel contained very specific directions, instructions, and decisions that Ms. Kasahara needed to do her job. Ms. Kasahara had been devoting substantial extra time to find out all this information when it had been right there in the channel from which she was intentionally excluded.

**Ms. Kasahara Complains of Sex and Age Discrimination**

50.

On December 16, 2021, Ms. Kasahara again opposed and complained of discrimination when she told Mr. Collier that Mr. Utter was being protected and favored by Mr. Campos and Mr. Ashkinazy while she was being excluded and left out of important meetings.

51.

Ms. Kasahara engaged in protected opposition activity under Title VII and the ADEA when she complained of sex and age discrimination with respect to Smarsh's treatment of her as compared to Mr. Utter.

## **Ms. Kasahara Seeks a Reasonable Accommodation of Medical Leave for One Week and Smarsh Retaliates**

52.

On January 23, 2022, Ms. Kasahara passed out at her home and had to seek medical care. She informed Mr. Collier she was in the ER because she had fallen and hit her head.

53.

When Ms. Kasahara returned to work after about a week away, she discovered that not only was she still being left out of meetings, but that Smarsh had taken away her products and her team. Mr. Collier told her she had a new framework and would be working with Mr. Utter (31 years old).

54.

Based on Ms. Kasahara's injury and medical care, Smarsh regarded her as disabled.

55.

In late February 2022, Ms. Kasahara was leading a meeting with numerous other individuals. Mr. Ashkinazy stated his team no longer needed any services from Ms. Kasahara because they were not useful.

56.

This was humiliating for Ms. Kasahara.

57.

Moreover, Mr. Ashkinazy became more disruptive in Ms. Kasahara's meetings with other teams and undermined her authority.

## Ms. Kasahara Again Complains of Discrimination

58.

That month, Ms. Kasahara again complained to Mr. Collier about Mr. Ashkinazy's discriminatory and retaliatory treatment.

59.

Ms. Kasahara's complaint of discrimination and retaliation constituted protected opposition activity under Title VII, the ADEA, and the ADA.

## Ms. Kasahara Requests Reasonable Accommodations for Her Disabilities and FMLA Leave

60.

In March 2022, Ms. Kasahara engaged in further protected activity when she discussed her Chronic Fatigue Syndrome with a Human Resources representative and stated that she was interested in pursuing reasonable accommodations and FMLA leave, which she said would likely be over the summer of 2022.

## Smarsh Fails to Promote Ms. Kasahara and Promotes Younger, Less Experienced Employees Instead

### 61.

During this same time period, Ms. Kasahara let Mr. Collier know she was interested in an upcoming promotion opportunity for principal product manager.

### 62.

Mr. Collier confirmed that she would be promoted once the roles were approved by HR.

### 63.

Ms. Kasahara was not promoted.

### 64.

Instead, Mr. Utter, a less experienced male, was promoted and continued to exclude Ms. Kasahara from important meetings.

### 65.

Mr. Collier even acknowledged later that Mr. Utter, unlike Ms. Kasahara, was not a "product person."

### 66.

In May 2022, Smarsh promoted the substantially younger Ms. Dickey to Senior Platform Product Manager, a move of two levels, which made her equivalent to Ms. Kasahara.

67.

Again, Smarsh did not promote Ms. Kasahara.

### Ms. Kasahara Files an EEOC Charge of Discrimination

68.

Ms. Kasahara filed her first charge of discrimination on July 20, 2022, in Oregon and the EEOC there referred her to file in Georgia, which she did on July 21, 2022.

69.

Ms. Kasahara initially notified Smarsh of the filing of her charge via her personal email, then from her Smarsh account on July 22, 2022.

### Smarsh Terminates Ms. Kasahara

70.

On July 25, 2022, Smarsh terminated Ms. Kasahara's employment. Smarsh claimed that Ms. Kasahara's position had been eliminated.

71.

Smarsh's claim that Ms. Kasahara's role was eliminated ignores the fact that other individuals – including Ms. Dickey and Mr. Utter were promoted before the alleged reduction in force even though Ms. Kasahara was more qualified for those positions.

72.

Everyone who was promoted from May 2022 to July 2022 was spared their job.

73.

All these promotions were men under 30 and women under 35.

74.

In fact, Ms. Kasahara's other counterpart Lynne Jennings (61 years old) also was terminated.

75.

Ms. Jennings was terminated before Ms. Kasahara, and Smarsh posted for Ms. Jennings' previous position in solutions engineering rather than offer it back to Ms. Jennings.

## COUNT I
## Sex Discrimination in Violation of Title VII

76.

Plaintiff incorporates by reference paragraphs one through 75 as if fully restated herein.

77.

Plaintiffs is an "employee" as defined by Title VII, 42 U.S.C. § 2000e *et seq.*

78.

Defendant is an "employer" as defined by Title VII, 42 U.S.C. § 2000e *et seq.*

79.

Defendant discriminated against Plaintiff in the terms and conditions of Plaintiff's employment when it denied her promotions and terminated her.

80.

Defendant denied Plaintiff promotions and terminated Plaintiff because she is a woman.

81.

In the alternative, Plaintiff's sex was a "motivating factor" in Defendant's decision to deny Plaintiff promotions and terminate her employment, even if there are legitimate non-discriminatory reasons that also motivated these actions.

82.

As a direct and proximate result of the Defendant's discriminatory actions, Plaintiff has suffered damages including emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

83.

Plaintiff is entitled to an award of back pay and benefits, compensatory

damages, reinstatement or front pay, attorney's fees, and all other appropriate damages, remedies, and other relief available under Title VII and all federal statutes providing remedies for violations of Title VII.

84.

Defendant acted intentionally and maliciously with respect to Plaintiff, entitling Plaintiff to recover punitive damages against Defendant.

85.

Additionally, or in the alternative, Defendant undertook its unlawful conduct recklessly with respect to Plaintiff and her federally protected rights, entitling Plaintiff to recover punitive damages against Defendant.

## COUNT II
## Retaliation in Violation of Title VII

86.

Plaintiff incorporates by reference paragraphs one through 75 as if fully restated herein.

87.

Plaintiff is an "employee" as defined by Title VII, 42 U.S.C. § 2000e *et seq.*

88.

Defendant is an "employer" as defined by Title VII, 42 U.S.C. § 2000e *et seq.*

20

89.

Plaintiff engaged in protected activity by complaining verbally and in writing to Defendant's HR department regarding the sex discrimination that she faced and by filing a Charge of Discrimination with the EEOC and forwarding that charge to Defendant.

90.

Defendant retaliated against Plaintiff by engaging in actions that were materially adverse when it denied her promotions and terminated her.

91.

But for Plaintiff engaging in protected activity, Defendant would not have denied her promotions or terminated her.

92.

As a direct and proximate result of the Defendant's retaliatory actions, Plaintiff has suffered damages including emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

93.

Plaintiff is entitled to an award of back pay and benefits, compensatory damages, reinstatement or front pay, attorney's fees, and all other appropriate damages, remedies, and other relief available under Title VII and all federal

statutes providing remedies for violations of Title VII.

94.

Defendant acted intentionally and maliciously with respect to Plaintiff, entitling Plaintiff to recover punitive damages against Defendant.

95.

Additionally, or in the alternative, Defendant undertook its unlawful conduct recklessly with respect to Plaintiff and her federally protected rights, entitling Plaintiff to recover punitive damages against Defendant.

## **COUNT III**
## **Age Discrimination in Violation of the ADEA**

96.

Plaintiff incorporates by reference paragraphs one through 75 as if fully restated herein.

97.

Plaintiff is a member of the protected age group in that she is over the age of 40 years old.

98.

Plaintiff was 54 years old at the time of her termination and, at all relevant times, was an employee protected by the ADEA.

99.

At the time of her termination, Plaintiff was qualified for the position she held, based on her performance and years of experience in the industry.

100.

Plaintiff was replaced by a younger individual or individuals outside of her protected class.

101.

By terminating Plaintiff and replacing her with a younger individual or individuals, Smarsh knowingly and intentionally discriminated against Plaintiff on account of her age.

102.

In taking these adverse actions against Plaintiff, Smarsh unlawfully discriminated against her on the basis of her age in violation of the ADEA.

103.

Plaintiff is entitled to an award of back pay and benefits, front pay, liquidated damages, injunctive relief, attorneys' fees, and all other appropriate damages, remedies, and other relief available under the ADEA and all federal statutes providing remedies for violations of the ADEA.

## COUNT IV
## Retaliation in Violation of the ADEA

104.

Plaintiff incorporates by reference paragraphs one through 75 as if fully restated herein.

105.

Plaintiff engaged in protected activity under the ADEA when she complained of age discrimination on December 16, 2021.

106.

Plaintiff engaged in further protected activity when she filed her EEOC Charge, and when she forwarded that charge to Defendant.

107.

Defendant unlawfully retaliated against Plaintiff, including, but not limited to, terminating her employment after she complained about discrimination.

108.

Defendant's actions, in subjecting Plaintiff to retaliation for engaging in protected activity by complaining of, and opposing, age discrimination and retaliation in the workplace, constitutes unlawful intentional retaliation in violation of the ADEA.

109.

Defendant's termination of Plaintiff's employment was in direct retaliation for her protected conduct of reporting age-based discrimination and harassment and for filing her EEOC Charge.

110.

As a result of Defendant's unlawful actions, Plaintiff has suffered loss of income and benefits compensable under the ADEA, for which Defendant is liable.

111.

Defendant violated the ADEA willfully and wantonly, and intentionally.

112.

Plaintiff is entitled to an award of back pay and benefits, front pay, liquidated damages, injunctive relief, attorneys' fees, and all other appropriate damages, remedies, and other relief available under the ADEA and all federal statutes providing remedies for violations of the ADEA.

<b><u>COUNT V</u></b><br>
<b><u>Failure to Accommodate a Disability in</u></b><br>
<b><u>Violation of the ADA</u></b>

113.

Plaintiff incorporates by reference paragraphs one through 75 as if fully restated herein.

25

114.

Plaintiffs is a qualified individual with a disability. Plaintiff's disabilities substantially limited one or more major life activities.

115.

Nonetheless, Plaintiff was able to perform the essential functions of her job with or without a reasonable accommodation.

116.

Plaintiff requested reasonable accommodations from Defendant relating to her disability, including intermittent leave.

117.

Defendant denied Plaintiff's request for accommodations when it terminated her.

118.

As a direct and proximate result of the Defendant's discriminatory actions, Plaintiff has suffered damages including emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

119.

Plaintiff is entitled to an award of back pay and benefits, compensatory damages, reinstatement or front pay, attorney's fees, and all other appropriate

damages, remedies, and other relief available under the ADA and all federal statutes providing remedies for violations of the ADA.

120.

Defendant acted intentionally and maliciously with respect to Plaintiff, entitling Plaintiff to recover punitive damages against Defendant.

121.

Additionally, or in the alternative, Defendant undertook its unlawful conduct recklessly with respect to Plaintiff and her federally protected rights, entitling Plaintiff to recover punitive damages against Defendant.

**COUNT VI**
**Discrimination in**
**Violation of the ADA-Regarded As Disabled**

122.

Plaintiff incorporates by reference paragraphs one through 75 as if fully restated herein.

123.

Defendant terminated Plaintiff because it regarded her as being disabled.

124.

Defendant's termination of Plaintiff was an intentional and willful violation of the ADA in violation of Plaintiff's rights thereunder.

27

125.

As a direct and proximate result of the Defendant's discriminatory actions, Plaintiff has suffered damages including emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

126.

Plaintiff is entitled to an award of back pay and benefits, compensatory damages, reinstatement or front pay, attorney's fees, and all other appropriate damages, remedies, and other relief available under the ADA and all federal statutes providing remedies for violations of the ADA.

127.

Defendant acted intentionally and maliciously with respect to Plaintiff, entitling Plaintiff to recover punitive damages against Defendant.

128.

Additionally, or in the alternative, Defendant undertook its unlawful conduct recklessly with respect to Plaintiff and her federally protected rights, entitling Plaintiff to recover punitive damages against Defendant.

## **COUNT VII**
## **Retaliation in**
## **Violation of the ADA**

129.

Plaintiff incorporates by reference paragraphs one through 75 as if fully restated herein.

130.

Plaintiff is a qualified individual with a disability. Plaintiff's disabilities substantially limited one or more major life activities.

131.

Plaintiff was able to perform the essential functions of her job with Defendant.

132.

Plaintiff requested reasonable accommodations from Defendant relating to her disabilities, including but not limited to, requesting intermittent leave and also filed a Charge of Discrimination with the EEOC which she forwarded to Defendant.

133.

Plaintiff's requests for reasonable accommodations and her EEOC Charge constituted protected conduct under the ADA.

134.

Defendant terminated Plaintiff in retaliation for her protected conduct of requesting reasonable accommodations under the ADA.

135.

Defendant's termination of Plaintiff was an intentional and willful violation of the ADA in violation of Plaintiff's rights thereunder.

136.

As a direct and proximate result of the Defendant's retaliatory actions, Plaintiff has suffered damages including emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

137.

Plaintiff is entitled to an award of back pay and benefits, compensatory damages, reinstatement or front pay, attorney's fees, and all other appropriate damages, remedies, and other relief available under Title VII and all federal statutes providing remedies for violations of Title VII.

138.

Defendant acted intentionally and maliciously with respect to Plaintiff, entitling Plaintiff to recover punitive damages against Defendant.

139.

Additionally, or in the alternative, Defendant undertook its unlawful conduct recklessly with respect to Plaintiff and her federally protected rights, entitling Plaintiff to recover punitive damages against Defendant.

## COUNT VIII
## Interference in Violation of the FMLA

140.

Plaintiff incorporates by reference paragraphs one through 75 as if fully restated herein.

141.

Plaintiff was an eligible employee with a serious health condition as that term is defined by the FMLA and accompanying regulations, specifically 29 U.S.C. § 2611(11) and 29 C.F.R. § 825.113.

142.

When Defendant terminated Plaintiff, Defendant was aware that she would need to take FMLA leave in the future.

143.

Defendant terminated Plaintiff before she could utilize FMLA leave to which she was entitled.

144.

Defendant's actions in interfering with Plaintiff's FMLA leave were committed with reckless disregard for her right to take up to twelve work weeks of leave time for a serious health condition and in violation of the FMLA, 29 U.S.C. § 2615(a)(1).

145.

The effect of Defendant's FMLA interference has been to deprive Plaintiff of a job, as well as income in the form of wages and other economic benefits of employment due to her because of her right to leave under the FMLA.

146.

Plaintiff is entitled to both equitable and monetary relief for Defendant's violation of the FMLA, specifically 29 U.S.C. § 2617(a)(1)(A) and (B), including back pay, front pay or reinstatement, attorney's fees and costs of litigation.

147.

Plaintiff is also entitled to liquidated damages for Defendant's willful violation of her rights under the FMLA, 29 U.S.C. § 2617(a)(1)(A)(iii).

## COUNT IX
## Retaliation in Violation of the FMLA

148.

Plaintiff incorporates by reference paragraphs one through 75 as if fully restated herein.

149.

Plaintiff was an eligible employee with a serious health condition as that term is defined by the FMLA and accompanying regulations, specifically 29 U.S.C. § 2611(11) and 29 C.F.R. § 825.113.

150.

Defendant intentionally retaliated against Plaintiff by terminating her, because of her anticipated use of protected leave, and doing so shortly after she requested FMLA leave.

151.

Defendant's retaliatory conduct was committed with reckless disregard for Plaintiff's right to be free from discriminatory treatment for exercising her rights under the FMLA, specifically 29 U.S.C. § 2615(a)(1)(2).

152.

Defendant's actions in interfering with Plaintiff's FMLA leave were committed with reckless disregard for her right to take up to twelve work weeks of

leave time for a serious health condition and in violation of the FMLA, 29 U.S.C. § 2615(a)(1).

### 153.

The effect of Defendant's FMLA interference has been to deprive Plaintiff of a job, as well as income in the form of wages and other economic benefits of employment due to her because of her right to leave under the FMLA.

### 154.

Plaintiff is entitled to both equitable and monetary relief for Defendant's violation of the FMLA, specifically 29 U.S.C. § 2617(a)(1)(A) and (B), including back pay, front pay or reinstatement, attorney's fees and costs of litigation.

### 155.

Plaintiff is also entitled to liquidated damages for Defendant's willful violation of her rights under the FMLA, 29 U.S.C. § 2617(a)(1)(A)(iii).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands a TRIAL BY JURY and requests the following relief:

    a.    a declaratory judgment that Defendant violated Title VII, the ADEA, the ADA, and the FMLA;

b.      a permanent injunction, prohibiting Defendant from engaging in unlawful employment practices in violation of Title VII, the ADEA, the ADA, and the FMLA;

c.      full back pay from the date of Plaintiff's termination, taking into account all raises to which Plaintiff would have been entitled but for Defendant's unlawful failures to promote Plaintiff and unlawful termination, and all fringe and pension benefits of employment, with prejudgment interest thereon;

d.      reinstatement to Plaintiff's former position with Defendant at the same pay grade, or in the alternative, front pay to compensate Plaintiff for lost future wages, benefits and pension;

e.      compensatory damages in an amount to be determined by the enlightened conscience of the jury, for Plaintiff's emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life and special damages;

f.      liquidated damages under the ADEA and the FMLA;

g.      punitive damages under Title VII and the ADA to deter Defendant from engaging in unlawful conduct in the future;

h.      attorneys' fees and costs; and

i.      all other and further relief as this Court deems just and proper.

Respectfully submitted,

*/s/ Thomas J. Mew, IV*
Thomas J. Mew, IV
Georgia Bar No. 503447
**BUCKLEY BALA WILSON MEW LLP**
600 Peachtree Street, NE, Suite 3900
Atlanta, GA  30308
Telephone: (404) 781-1100
Facsimile: (404) 781-1101
tmew@bbwmlaw.com
*Counsel for Plaintiff*