EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974.  See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br>☐ FEPA<br>☒ EEOC | Agency(ies) Charge No(s):<br>410-2023-03403 |
|---|---|---|

NA  and EEOC
*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* Mrs. Sharis McCrary (sharmonti@gmail.com) | Home Phone *(Incl. Area Code)* 404-384-9793 | Date of Birth 12/27/79 |
|---|---|---|
| Street Address 9197 Brave Ct. | City, State and ZIP Code Jonesboro, GA 30236 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others.  (If more than two, list under PARTICULARS below.)

| Name City of College Park GA | No. Employees, Members 200+ | Phone No. *(Include Area Code)* 404-559-2894 |
|---|---|---|
| Street Address   City, State and ZIP Code 3667 Main Street College Park GA 30337 | | |
| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
| Street Address City, State and ZIP Code | | |

**Rec'd U.S. EEOC Atlanta District Office 11/22/2022**

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☒ RACE ☐ COLOR ☒ SEX ☐ RELIGION ☐ NATIONAL ORIGIN
☒ RETALIATION ☐ AGE ☐ DISABILITY ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest 4/21    Latest 11/22
☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s))*:

My name is Sharis McCrary and I am an African-American female.  From September 2021 to November 2022, I have served as interim Chief of Police of College Park, Ga.  I have a 20 plus year background in law enforcement in College Park, and was the first black female to be appointed to the rank of lieutenant in the College Park PD.  In 2018, I was named the first female deputy police chief in College Park.

In April 2021, then Chief of Police Ferman Willford was asked to resign. The tradition in College Park has been that the deputy chief serves as interim chief until a new chief is selected: this protocol has been followed for multiple male deputy chiefs over the past two decades. But in my case, College Park deviated from its normal practices by installing a white male interim chief, Thomas Kuzniacki.  Members of the community were told by certain officials that I had turned down the appointment, which was not accurate.

In September 2021, I was finally named interim chief after several civil rights organizations in College Park openly advocated for my selection: I am the first black woman to hold the position of Police Chief in College Park. I discovered during 2022 that in a variety of ways, I was not afforded the same privileges and responsibilities that have been extended to other interim chiefs. For one thing, while it has been customary in College Park to maintain the interim chief as long as that person performs the job to the satisfaction of the City Council and City Manager, during my entire tenure,  a "nationwide search process" has been conducted. This search process has been stretched out over the past 14 months.

During this lengthy search process, I have been subjected to a level of interference that other chiefs, including interims, have not faced. The five member exclusively male city council has attempted to direct me to demote senior officers for non-performance based reasons, while prior chiefs and interim chiefs have had full leeway to structure their internal leadership team. One male city council member told me in front of a senior officer who had applied for my position that I needed to "step it up" if I wanted to be selected as chief, and the same officer was questioned in my presence about "what kind of job" I was doing: in my years with the department, I have never seen a male chief upbraided in front of a subordinate.

410-2023-03403

I have encountered examples of overt sexist behavior and comments from city decisionmakers. While I was Deputy Chief in 2021, I learned that a community activist was circulating a petition that I should be appointed Chief. The newly elected Mayor of College Park Bianca Motley Broom directed me to contact this individual to declare that I had no interest in becoming Chief; when I made it clear to the Mayor that becoming Chief was an ambition of mine, she told me "that is not going to happen" and that I should be content to "share [my] vision" with the white male Chief instead of holding the position myself. I took Mayor Broom's comment as a suggestion that the city was not prepared to elevate a woman, or a black woman, to the rank of Chief.  On another occasion , a council member told me that he was not inclined to support a female because "look at what happened the last time" a woman was appointed to a senior public safety role, referring to a black female fire chief who briefly served in her position several years ago.

As the summer of 2022 progressed, several things happened that were disconcerting. First, in July 2022, the black female City Manager Darnetta Tyus was abruptly fired after less than five months on the job. Ms. Tyus was the official in charge of the search process for the Chief's job and was about to move forward with identifying final candidates.  She was replaced with a white male, Jackson Myers (whom the city deliberately does not list on its website). After her firing, a council member remarked to me that there was an expectation that Ms. Tyus was going to file what he called a "girl's lawsuit", which I found to be an odd and belittling choice of words to refer to Title VII and to a mature woman. Mr. Myers has since taken over the selection process for Police Chief.

In the fall of 2022, I was openly told by a high ranking white male officer, Colonel David Block, that a deal had been developed between council members that I would be selected as chief if I appointed him as deputy chief with the understanding that he would be "in charge" of most major decisions and would be the police department's primary contact with the council. I refused to make this deal in part because it involved Block and in part because I knew that every other chief in the 20-plus years I served in the department had been given full authority to pick the deputy chief and been the council's primary point of contact with city government.

Block also warned me that there was a backup plan: if I would not take the deal, College Park would promote another black female candidate who would consent to Block being the behind the scenes leader, and that the Council believed this maneuver would spare the city from being sued by me for race or gender discrimination.

Since late summer, I have had an increasingly hostile relationship with the new white male city manager, who under the city charter is my direct supervisor. Mr. Myers has been openly disrespectful in meetings and in the presence of other personnel. In August, 2022, I wrote a letter complaining about this behavior to the Mayor and City Council and copied the city manager as my direct report. Since then, he has started to ignore calls and emails, has refused to sign off on standard annual leave requests, and has not authorized payment of invoices for leadership training classes that I needed to attend, when the city has paid these invoices without question for my predecessors. I have told Mayor Bloom that I believe that sexism was a major reason for the unprofessional treatment I was experiencing from the city manager.

Last week. the week of November 14, 2022, a city official approached me to tell me that she had been asked to serve on the final interview committee for Police Chief by the City Manager and that she was informed that while I was to to be interviewed, I was the one candidate who could not be considered.

At the city council meeting on the night of November 21, 2022, I was informed by email while attending a council meeting that I was not going to be selected as the city's next Chief of Police.

I believe that my non-selection as Police Chief is at least partly motivated by my gender and my combined status as a black woman, which violates my rights under Title VII of the Civil Rights Act of 1964.  I also believe that I have been subjected to a retaliatory hostile environment after my complaints about discriminatory mistreatment and that my non-selection was retaliation for my written complaint to the Mayor and City Council about the City Manager, who has overseen the selection process for a new Chief. These acts violate the retaliation provision of Title VII.

Rec'd
U.S. EEOC
Atlanta District Office
11/22/2022

Doc ID: 061afbd41a0c859c5f0c70a8e566f5dfb697ef26

410-2023-03403

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br><br>SIGNATURE OF COMPLAINANT |
| 11 / 22 / 2022　　　　*[signature]*<br><br>Date　　　　Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(*month, day, year*) |

Rec'd
U.S. EEOC
Atlanta District Office
11/22/2022

Doc ID: 061afbd41a0c859c5f0c70a8e566f5dfb697ef26

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws).  Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination.  This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions.  A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of.  Without a written charge, EEOC will ordinarily not act on the complaint.  Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed.  Charges may be clarified or amplified later by amendment.  It is not mandatory that this form be used to make a charge.

## NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA.  Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements.  You will be told which agency will handle your charge.  When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter.  Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so <u>within 15 days</u> of your receipt of its findings.  Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge.  Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.