**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **KIMBERLY HARRISON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION NO:** |
| **v.** ) | _____ |
| ) | |
| **EQUIFAX INFORMATION** ) | |
| **SERVICES LLC and LAFAYETTE** ) | |
| **FEDERAL CREDIT UNION,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |
| ) | |

## COMPLAINT

1.     This is an action for damages brought by an individual consumer, Kimberly Harrison, against Equifax Information Services LLC ("Equifax") and Lafayette Federal Credit Union ("Lafayette") for several violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* (the "FCRA").

## PRELIMINARY STATEMENT

2.     When Congress enacted the FCRA it found that the "banking system is dependent upon fair and accurate credit reporting.  Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods

undermine the public confidence which is essential to the continued functioning of the banking system." 15 U.S.C. § 1681(a)(1).

3.     Congress recognized that consumer reporting agencies ("CRAs") "have assumed a vital role in assembling and evaluating consumer credit and other information on consumers." 15 U.S.C. § 1681(a)(3). Therefore, Congress found that there "is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4).

4.     The FCRA requires that when a CRA prepares a credit report, it must "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

5.     Consumers can submit disputes to CRAs regarding the accuracy or completeness of any information in their credit file. Upon receipt of the dispute, the FCRA requires that the CRA conduct a reasonable reinvestigation of any information that is disputed by a consumer to determine if the information is accurate. The CRA must notify the source of the disputed information about the consumer's dispute. The CRA must provide the source with all relevant information received from the consumer. The CRA must review and consider all relevant

information provided by the consumer in conducting the reinvestigation. The CRA must delete or modify information that is found to be inaccurate or incomplete, or that cannot be verified.  The CRA must complete the reinvestigation within 30 days, or within 45 days if the dispute is based on a free annual credit report.  The CRA must send the consumer written results of the reinvestigation and a credit report that is based on the consumer's file as that file is revised as a result of the reinvestigation. 15 U.S.C. § 1681i(a).

6.     Additionally, the FCRA imposes duties on persons who furnish information to a consumer reporting agency (a "furnisher").  *See* 15 U.S.C. §§ 1681s-2(a), (2), (4), (5).  Specifically, the furnisher must take certain actions after receipt of notice of a consumer dispute from a consumer reporting agency.  15 U.S.C. § 1681s-2-(b)(1)(A-E).[1]

7.     Section 1681s-2(b) of the FCRA establishes a mechanism for consumers to dispute the accuracy or completeness of information that furnishers provide to CRAs.  After a consumer has submitted a dispute to a CRA, the CRA must notify the furnisher of the disputed information.  15 U.S.C. § 1681i(a)(2).  The CRA must provide this notice of dispute within five days of receipt of the dispute

---

[1] Plaintiff asserts a claim against Lafayette under Section 1681s-2(b), and not under Section 1681s-2(a).

and must include "all relevant information" provided by the consumer.  15 § U.S.C. 1681i(a)(2)(B).

8.     Once a furnisher receives notice of a dispute from a CRA, Section 1681s-2(b) requires that the furnisher "shall" (1) conduct an investigation with respect to the disputed information; (2) review all relevant information provided by the CRA in connection with the dispute; and (3) report the results of the investigation to the CRA. 15 § U.S.C. 1681s-2(b)(1)(A)-(C).

9.     Should the investigation determine that the disputed information is inaccurate or incomplete or cannot be verified, the furnisher must modify, delete, or permanently block the reporting of that information to CRAs, as appropriate based on the results of the reinvestigation.  15 U.S.C. § 1681s-2(b)(1)(E).

10.     The Eleventh Circuit Court of Appeals has instructed that furnishers must conduct a "reasonable" reinvestigation that involves "a detailed inquiry," "systematic examination" or "searching inquiry" into a consumer's dispute. *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1302-03 (11th Cir. 2016).

11.     This lawsuit is based on Defendants' multiple violations of the aforementioned provisions of the FCRA.

## JURISDICTION AND VENUE

12.   This Court has federal question jurisdiction over Plaintiff's FCRA claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

13.   Venue is proper in this Court under 28 U.S.C. § 1391 as Plaintiff is a resident of this district and a substantial part of the events and omissions giving rise to the claims occurred in this district.

## PARTIES

14.   Ms. Harrison is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

15.   Ms. Harrison is a resident of Cobb County, Georgia.

16.   Defendant Equifax is a CRA as defined by 15 U.S.C. § 1681a(f), and it has a principal place of business located at 1550 Peachtree Street, N.W., Atlanta, Georgia 30309-2402

17.   Defendant Lafayette is a federal credit union with its headquarters located at 2701 Tower Oaks Boulevard, Rockville, Maryland 20852.

18.   Defendant Lafayette is a person who furnishes information to consumer reporting agencies under the FCRA, 15 U.S.C. § 1681s-2, and it conducts substantial and regular business activities in this judicial district.

## FACTUAL ALLEGATIONS

19.     In early 2022, Ms. Harrison and her husband obtained a personal loan for several hundred thousand dollars for a home improvement project.

20.     Shortly after Plaintiff and her husband obtained the loan, Defendant Lafayette purchased the loan, and Defendant Lafayette split the loan into three separate loans, each with different account numbers.   One loan account number ended with 021, one ended with 022, and one ended with 023.

21.     In or about May 2022, Ms. Harrison noticed that Defendant Equifax was reporting five loans with Defendant Lafayette, instead of three.

22.     When Ms. Harrison investigated, she discovered that Defendant Equifax was reporting the loan ending in 021 twice, and the loan ending in 022 twice.

23.     Defendant Equifax was double reporting these loans on both Ms. Harrison's consumer report as well as her husband's consumer report.

24.     By double reporting these two loans, Defendant Equifax was making Ms. Harrison's account balances appear greatly inflated.   Thus, Ms. Harrison's potential creditors would be led to believe that Ms. Harrison had a significant amount more of outstanding debt than she actually has.

Ms. Harrison's First Dispute

25.     In June 2022, Ms. Harrison contacted Defendant Lafayette and disputed this erroneous information.

26.     On June 10, 2022, Defendant Lafayette called Ms. Harrison and left her a voicemail.  In the voicemail, Defendant Lafayette's representative apologized for the error: "I do apologize Lafayette was having a technical issue where accounts would be reported multiple times.  Lafayette is correcting this issue now and getting this corrected with the credit bureaus."

27.     In June 2022, Ms. Harrison and her husband each also filed disputes with Defendant Equifax about the double reporting.  In the disputes, Ms. Harrison and her husband informed Defendant Equifax that two accounts were each reporting twice.

28.     Defendant Equifax received Ms. Harrison's dispute.

29.     Upon information and belief, Defendant Equifax sent Defendant Lafayette all relevant information about Ms. Harrison's dispute that it received from Ms. Harrison.

30.     Defendant Lafayette did not conduct a reasonable reinvestigation with respect to the disputed information.

31.     Upon information and belief, Defendant Lafayette reported to Defendant Equifax that it had verified the account was reporting accurately.

32.     In July 2022, Defendant Equifax sent Ms. Harrison the results of its reinvestigation.

33.     Defendant Equifax did not delete the duplicated and erroneous accounts.

34.     Instead, Defendant Equifax reported that, with respect to the account ending in 022, "the prior paying history has been deleted from this account."  But Defendant Equifax did not delete the duplicative account.

35.     Defendant Equifax provided no response to Ms. Harrison's dispute about the second duplicative account for the account ending in 021.

36.     Defendant Equifax did not conduct a reasonable reinvestigation into Ms. Harrison's dispute.

37.     Defendant Equifax simply parroted the results of Defendant Lafayette's reinvestigation results, and took no steps of its own to determine whether the accounts were duplicated and erroneous.

38.     Similar to Ms. Harrison's experience, Defendant Equifax did not delete the duplicated and erroneous accounts from Ms. Harrison's husband's consumer report either.

Ms. Harrison's Second Dispute

39.     After receiving Defendant Equifax's response, Ms. Harrison sent Defendant Equifax a second dispute in August 2022.  In the dispute, Ms. Harrison again informed Defendant Equifax that two accounts were each reporting twice.

40.     Ms. Harrison's husband also sent Defendant Equifax a second dispute in August 2022.

41.     Defendant Equifax received Ms. Harrison's second dispute.

42.     Defendant Equifax received Mr. Harrison's second dispute.

43.     Upon information and belief, Defendant Equifax sent Defendant Lafayette all relevant information about Ms. Harrison's second dispute that it received from Ms. Harrison.

44.     Defendant Lafayette did not conduct a reasonable reinvestigation with respect to the disputed information.

45.     Upon information and belief, Defendant Lafayette again reported to Defendant Equifax that it had verified the account was reporting accurately.

46.     In September 2022, Defendant Equifax sent Ms. Harrison the results of its reinvestigation into her second dispute.

47.     Defendant Equifax did not delete the duplicated and erroneous accounts.

48.     Instead, Defendant Equifax stated that, with respect to the account ending in 022, "this account is currently reporting as a single account entry on Equifax's credit file."

49.     This was inaccurate, as the account was appearing twice.

50.     Defendant Equifax again provided no response to Ms. Harrison's dispute about the second duplicative account for the account ending in 021.

51.     Defendant Equifax did not conduct a reasonable reinvestigation into Ms. Harrison's second dispute.

52.     Defendant Equifax simply parroted the results of Defendant Lafayette's reinvestigation results, and took no steps of its own to determine whether the accounts were duplicated and erroneous.

53.     Even though Defendant Equifax did not delete the duplicated and erroneous accounts from Ms. Harrison's consumer report, it did delete those same duplicative and erroneous accounts from Ms. Harrison's husband's consumer report as a result of his second dispute.

Ms. Harrison's Third Dispute

54.     In October 2022, Ms. Harrison filed a third dispute with Defendant Equifax.  In the dispute, Ms. Harrison again informed Defendant Equifax that two accounts were each reporting twice.

55.     Defendant Equifax received Ms. Harrison's third dispute.

56.     Upon information and belief, Defendant Equifax again sent Defendant Lafayette all relevant information about Ms. Harrison's dispute that it received from Ms. Harrison.

57.     Defendant Lafayette did not conduct a reasonable reinvestigation with respect to the disputed information.

58.     Upon information and belief, Defendant Lafayette again reported to Defendant Equifax that it had verified the accounts were reporting accurately.

59.     In November 2022, Defendant Equifax sent Ms. Harrison the results of its reinvestigation into her third dispute.

60.     Defendant Equifax did not delete the duplicated and erroneous accounts.

61.     Instead, Defendant Equifax reported that, with respect to the account ending in 021, "the prior paying history has been deleted from this account."  Again, Defendant Equifax failed to delete the duplicated accounts.

62.     Defendant Equifax provided no response to Ms. Harrison's dispute about the second duplicative account for the account ending in 022.

63.     Defendant Equifax did not conduct a reasonable reinvestigation into Ms. Harrison's third dispute.

64.     Defendant Equifax simply parroted the results of Defendant Lafayette's reinvestigation results, and took no steps of its own to determine whether the accounts were duplicated and erroneous.

65.     Nonetheless, around the time Ms. Harrison received Equifax's dispute results, she also discovered that the erroneous and duplicative accounts had been removed from her consumer report.

66.     Ms. Harrison was relieved, as she believed that this time-consuming and aggravating situation was behind her.

Defendant Equifax's Reinsertion of the Duplicative Accounts

67.     But in February 2023, Ms. Harrison received a letter from Defendant Equifax informing her that it was reinserting the account number ending in 022 into her consumer report.

68.     According to the letter, "the company that furnished the account information recently requested to have the account information reinserted on your Equifax credit file and submitted a certification that the account belong to you and the information below is complete and accurate."

69.     When Ms. Harrison reviewed her Equifax consumer report, she discovered that Defendant Equifax had reinserted not only the account number

ending in 022 into her consumer report a second time, but also the account number ending in 021 a second time.

70.     Despite reinserting the account number ending in 021 into Ms. Harrison's consumer report a second time, Defendant Equifax failed to provide Ms. Harrison with any of the information required under 15 U.S.C. § 1681i.

71.     Ms. Harrison's aggravation was through the roof.  She could not believe that Defendants were re-igniting this issue.

72.     Once she received Defendant Equifax's notification, Ms. Harrison also contacted Defendant Lafayette.

73.     In response to Ms. Harrison's communication with Defendant Lafayette, Defendant Lafayette sent Ms. Harrison a registered letter stating that the issue would be fixed within 30 days.

Ms. Harrison's Fourth Dispute

74.     In addition, Ms. Harrison filed a fourth dispute with Defendant Equifax in February 2023.  In the dispute, Ms. Harrison again informed Defendant Equifax that two accounts were each reporting twice.

75.     Defendant Equifax received Ms. Harrison's fourth dispute.

76.     Upon information and belief, Defendant Equifax sent Defendant Lafayette all relevant information about Ms. Harrison's dispute that it received from Ms. Harrison.

77.     Defendant Lafayette did not conduct a reasonable reinvestigation with respect to the disputed information.

78.     Upon information and belief, Defendant Lafayette reported to Defendant Equifax that it had verified the accounts were reporting accurately.

79.     In March 2023, Defendant Equifax sent Ms. Harrison the results of its reinvestigation into her fourth dispute.

80.     Defendant Equifax did not delete the duplicated and erroneous accounts.

81.     Instead, Defendant Equifax stated that, with respect to the account ending in 021, Defendant Lafayette had verified that the current status and the prior paying history are being reporting correctly.

82.     Defendant Equifax provided no response to Ms. Harrison's dispute about the second duplicative account for the account ending in 022.

83.     Defendant Equifax did not conduct a reasonable reinvestigation into Ms. Harrison's fourth dispute.

84.     Defendant Equifax simply parroted the results of Defendant Lafayette's reinvestigation results, and took no steps of its own to determine whether the accounts were duplicated and erroneous.

85.     All the while Defendant Equifax was reporting duplicative and erroneous information, it was also advertising to Ms. Harrison potential credit opportunities.

86.     One particular credit opportunity involved an email advertisement Defendant Equifax sent to Ms. Harrison for an Apple credit card.

87.     Ms. Harrison applied for the Apple credit card, but her application was denied because her "debt is too high relative to your income."

88.     Ms. Harrison's debt was too high because Defendant Equifax was double-reporting two of the three loans with Defendant Lafayette.

89.     To this day, Defendant Equifax continues to report two duplicative accounts for Defendant Lafayette with the same account numbers.

## FIRST CLAIM FOR RELIEF

### (against Lafayette)

### (15 U.S.C. § 1681s-2(b))

90.     Plaintiff re-alleges and incorporates all other factual allegations set forth in this Complaint.

91.     Defendant Lafayette violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's disputes.

92.     Defendant Lafayette understood the nature of Plaintiff's disputes when it received them from Equifax.

93.     Defendant Lafayette violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by Defendant Equifax.

94.     Defendant Lafayette violated 15 U.S.C. § 1681s-2(b)(1)(E) by failing to modify, delete, or permanently block the reporting of the inaccurate and derogatory information it was reporting in Plaintiff's files.

95.     As a result of Defendant Lafayette's failure to comply with the requirements of the FCRA, Plaintiff has suffered, and continues to suffer, actual damages, including credit denials, lost opportunity to receive credit, economic loss, damage to reputation, reduction in credit score, invasion of privacy, emotional distress, and interference with normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury.

96.     The violations by Defendant Lafayette were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, Defendant Lafayette was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

97.     Plaintiff is entitled to recover attorney fees pursuant to 15 U.S.C. §1681o(a) or, alternatively, 15 U.S.C. 1681o(a).

## SECOND CLAIM FOR RELIEF

### (against Equifax)

### (15 U.S.C. § 1681i(a))

98.     Plaintiff re-alleges and incorporates all other factual allegations set forth in this Complaint.

99.     After Plaintiff sent her disputes, Defendant Equifax violated 15 U.S.C. § 1681i(a)(1) by failing to conduct reasonable reinvestigations to determine whether the disputed information was inaccurate and record the current status of the disputed information or delete the item from Plaintiff's file.

100.    After Plaintiff sent her disputes, Defendant Equifax violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff.

101.    After Plaintiff sent her disputes, Defendant Equifax violated 15 U.S.C. § 1681i(a)(5) by failing to promptly delete the disputed inaccurate information from Plaintiff's file or modify the items of information upon a lawful reinvestigation.

102.    As a result of Defendant Equifax's failure to comply with the requirements of the FCRA, Plaintiff has suffered, and continues to suffer, actual

damages, credit denials, lost opportunity to receive credit, economic loss, damage to reputation, reduction in credit score, invasion of privacy, emotional distress, and interference with normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury.

103.   The violations by Defendant Equifax were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, Defendant Equifax was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

104.   Plaintiff is entitled to recover attorney fees pursuant to 15 U.S.C. §1681o(a) or, alternatively, 15 U.S.C. 1681o(a).

### THIRD CLAIM FOR RELIEF

### (against Equifax)

### (15 U.S.C. § 1681i(a)(5))

105.   Plaintiff re-alleges and incorporates all other factual allegations set forth in this Complaint.

106.   Defendant Equifax violated 15 U.S.C. § 1681i(a)(5)(B) by failing to provide Plaintiff with a "(I) a statement that the disputed information has been reinserted; (II) the business name and address of any furnisher of information contacted and the telephone number of such furnisher, if reasonably available, or of

any furnisher of information that contacted the consumer reporting agency, in connection with the reinsertion of such information; and (III) a notice that the consumer has the right to add a statement to the consumer's file disputing the accuracy or completeness of the disputed information."

107.   Defendant Equifax further violated 15 U.S.C. § 1681i(a)(5)(C) by failing to "maintain reasonable procedures designed to prevent the reappearance in a consumer's file, and in consumer reports on the consumer, of information that is deleted pursuant to this paragraph (other than information that is reinserted in accordance with subparagraph (B)(i))."

108.   Defendant Equifax knew or should have known about its obligations under the FCRA.  These obligations are well established in the plain language of the FCRA, in the promulgations of the Federal Trade Commission, and in well-established case law.

109.   Defendant Equifax obtained or had available substantial written materials that apprised it of its duties under the FCRA.

110.   Despite knowing of these legal obligations, Defendant Equifax acted consciously in breaching its known duties and deprived Plaintiff of her rights under the FCRA.

111.   As a result of these FCRA violations by Defendant Equifax, Plaintiff has suffered, and continues to suffer, actual damages, credit denials, lost opportunity to receive credit, economic loss, damage to reputation, reduction in credit score, invasion of privacy, emotional distress, and interference with normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury.

112.   The violations by Defendant Equifax were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, Defendant Equifax was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

113.   Plaintiff is entitled to recover attorney fees pursuant to 15 U.S.C. §1681o(a) or, alternatively, 15 U.S.C. 1681o(a).

### FOURTH CLAIM FOR RELIEF

### (against Equifax)

### (15 U.S.C. § 1681e(b))

114.   Plaintiff re-alleges and incorporates all other factual allegations set forth in this Complaint.

115.   Defendant Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports furnished regarding Plaintiff.

116.   Defendant Equifax furnished inaccurate reports about Plaintiff stating that she had duplicative accounts with Defendant Lafayette.

117.   Before issuing reports stating that Plaintiff had duplicative accounts with Defendant Lafayette, Defendant Equifax possessed information showing that this was not true.

118.   Defendant Equifax knew or should have known about its obligations under the FCRA.  These obligations are well established in the plain language of the FCRA, in the promulgations of the Federal Trade Commission, and in well-established case law.

119.   Defendant Equifax obtained or had available substantial written materials that apprised it of its duties under the FCRA.

120.   Despite knowing of these legal obligations, Defendant Equifax acted consciously in breaching its known duties and deprived Plaintiff of her rights under the FCRA.

121.   As a result of these FCRA violations by Defendant Equifax, Plaintiff has suffered, and continues to suffer, actual damages, lost opportunities to receive

credit, economic loss, damage to reputation, reduction in credit score, emotional distress, and interference with normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury.

122.   The violations by Defendant Equifax were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, Defendant Equifax was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

123.   Plaintiff is entitled to recover attorney fees pursuant to 15 U.S.C. §1681o(a) or, alternatively, 15 U.S.C. 1681o(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.   Actual damages to be determined by the jury, or statutory damages of $100 to $1,000, to be determined by the jury;

2.   Punitive damages, to be determined by the jury;

3.   Attorneys' fees; and

4.   Costs of the action.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury.

DATED: April 18, 2023

By: /s/ Andrew L. Weiner
    Jeffrey B. Sand
    Ga. Bar No. 181568
    Andrew L. Weiner
    Ga. Bar No. 808278
    WEINER & SAND LLC
    800 Battery Avenue SE
    Suite 100
    Atlanta, GA  30339
    (404) 205-5029 (Tel.)
    (866) 800-1482 (Fax)
    js@wsjustice.com
    aw@wsjustice.com

*Counsel for Plaintiff*