IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

PLEASANT PRAIRIE LOGISTICS, LLC,   *
                                    *
        Plaintiff,                  *
                                    *
v.                                  *        CIVIL FILE ACTION NO.
                                    *
JAMES R. MONROE, WILLIAM            *
SELLERS, ROBIN WINGO AND            *
NO BOUNDARIES                       *
TRANSPORTATION, INC.,               *
                                    *
Defendants.                         *
_____     *

## COMPLAINT FOR DAMAGES

Plaintiff, Pleasant Prairie Logistics, LLC ("PPL"), serves this Complaint for

Damages against Defendants James R. Monroe, William Sellers, Robin Wingo and

No Boundaries Transportation, Inc., respectfully showing the Court as follows:

## PARTIES

1.

Plaintiff PPL is a logistics transportation company organized and existing

under the laws of Wisconsin, with its principal office located at 10801 Corporate

Drive, Pleasant Prairie, WI, 53158. At all times material, PPL was and is duly

authorized to conduct business in the State of Georgia. PPL subjects itself this Court's jurisdiction and venue.

2.

Defendant James R. Monroe is a resident of Rockdale County, Georgia. Defendant may be served with a copy of the Summons and Complaint at his residence, believed to be, 1525 Grayson Highway, Apt 205, Grayson, Georgia 30017. Defendant is subject to this Court's jurisdiction and venue.

3.

Defendant William Sellers is a resident of Holmes County, Florida. He may be served with a copy of the Summons and Complaint at his address as the registered agent of Defendant, No Boundaries Transportation, Inc.: 3330 Highway 2, Bonifay, Florida 32425 and/or 3328 Highway 2, Bonifay, Florida 32425. Defendant is subject to this Court's jurisdiction and venue.

4.

Defendant Robin Wingo is a resident of Gwinnett County, Georgia. Defendant may be served with a copy of the Summons and Complaint at her residence, believed to be, 140 Annie Chandler Trail, Lawrenceville, Georgia, 30045. Defendant is subject to this Court's jurisdiction and venue.

5.

Defendant No Boundaries Transportation, Inc. is a logistics company organized under the laws of Florida, duly authorized and licensed to transact and conduct business in the State of Georgia and may be served with a copy of the Summons and Complaint through its registered agent, Defendant William Sellers, at 3330 Highway 2, Bonifay, Holmes County, Florida, 32425 and/or 3328 Highway 2, Bonifay, Holmes County, Florida, 32425. Defendant is subject to this Court's jurisdiction and venue.

## JURISDICTION AND VENUE

6.

Jurisdiction is proper under 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. Moreover, upon information and belief, during all times material hereto, the Defendants transacted business within the State of Georgia, have committed tortious acts within the State of Georgia.

7.

Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this claim occurred in this judicial district.

## BACKGROUND

8.

Defendant Monroe was hired by PPL on August 16, 2013 to serve as the Vice President of Car Haul Operations.

9.

Defendant Monroe's main responsibility as PPL's agent and Vice President of Car Haul Operations, was to broker PPL's car haul transportation loads and create, induce, and generate car haul revenue from PPL's clients and customers, on PPL's behalf, for which he was solely responsible.

10.

Defendant Monroe was responsible for overseeing car haul transportation policies, standards and steps taken in accordance with transportation business and PPL's customers' needs.

11.

Defendant Monroe was also responsible for managing PPL's car haul transport business resources, including manpower, resources and outside suppliers.

12.

Defendant Monroe contracted, on PPL's behalf, with several customers including, but not limited to, Vance/Mercedes and WWL/Nissan, which resulted in revenue that for and on PPL's behalf.

13.

Defendant Wingo was a PPL agent and employee receiving a salaried compensation to assist with administrative logistics with PPL with access to PPL's confidential information and trade secrets, including rates and client information.

**a. Defendant Monroe and Defendant Wingo failed to disclose their conflicts of interest.**

14.

Defendant Monroe primarily brokered car haul loads to a motor carrier company owned and operated by Defendant William Sellers, BST Auto Transport, Inc.

15.

Defendant Monroe and Defendant Sellers, however, went into business together on or around September 1, 2017, establishing their own logistics company, Defendant No Boundaries Transportation, Inc.

16.

Defendant Sellers is named as No Boundaries Transportation, Inc.'s registered agent and President. Defendant Monroe is named as Vice President.

17.

Upon information and belief, Defendant Sellers was and remains the President, managing partner, and or owner/operator of No Boundaries Transportation, Inc.

18.

Upon information and belief, Defendant Monroe was the Vice President, managing partner, and or owner/operator of No Boundaries Transportation, Inc., while he was an agent and Vice President of Car Haul Operations for PPL.

19.

Defendant Monroe never disclosed this conflict of interest to PPL. Defendant Monroe continued providing assurances to PPL that it could rely upon his representation as a PPL agent, in exchange for payment of his annual wages/bonuses.

20.

Despite the conflict of interest, Defendant Monroe continued to broker car haul transportation work to Defendant Sellers and his company, BST Transportation, Inc.

21.

Upon information and belief, Defendant Monroe, in concert with Defendant Sellers, was corresponding with PPL customers for work to be performed by No Boundaries Transportation, Inc. for over the road car haul loads from various locations.

22.

Upon information and belief, Defendant Wingo participated and assisted with the improper self-dealing by sending PPL's confidential information and trade secrets to Defendant Monroe, Defendant Sellers and No Boundaries Transportation, Inc.

23.

Defendant Wingo was intertwined in the self-dealing scheme, taking on a work email address with No Boundaries Transportation, Inc. to facilitate the self-dealing and accepting weekly compensation from Defendants Monroe, Defendant

Sellers and No Boundaries transportation, Inc., while remaining a PPL agent and employee.

24.

Upon information and belief, Defendant Monroe, in concert with Defendants Sellers and Wingo, misrepresented his employment duties as PPL's Vice President of Car Haul Operations to mislead and direct PPL's customer revenue opportunities to No Boundaries Transportation, Inc.

25.

Upon information and belief, Defendant Monroe, in concert with Defendants Sellers and Wingo, improperly used PPL's trade secrets and/or confidential information to the Defendants benefit, and to PPL's detriment.

26.

Upon information and belief, Defendant Monroe, acting in concert with Defendants Sellers and Wingo, steered business from PPL to Defendant No Boundaries Transportation, Inc. with purposeful and malicious intent.

27.

Indeed, Defendant Monroe discussed rates and used other trade secret information from PPL while speaking with PPL's customers, to direct business to Defendant No Boundaries Transportation, Inc. While at the same time, Defendant

Monroe maintained an agency relationship with PPL, as its Vice President of Car Haul Operations, including compensation and bonuses.

**PPL's car haul revenues began to tumble around 2017.**

28.

Defendant Monroe did not submit, nor secure this same business for PPL. PPL's car haul revenue began a precipitous fall beginning after 2017, when Defendants formed No Boundaries Transportation, Inc.

29.

Upon information and belief, PPL's car haul revenues dropped from $15,171,272.00 to $7,666,477.00 from 2017 to 2018 because of Defendants actions and omissions.

30.

Upon information and belief, PPL's car haul revenues dropped from $7,666,477.00 to $3,390,615.00 from 2018 to 2019 because of Defendants actions and omissions.

31.

Upon information and belief, PPL's car haul revenues dropped from $3,390,615.00 to $1,123,946.00 from 2019 to 2020 because of Defendants actions and omissions.

32.

Upon information and belief, PPL's car haul revenues dropped from $1,123,946.00 to $341,766.00 from 2020 to 2021 because of Defendants actions and omissions.

33.

Defendant Monroe was eventually terminated on February 3, 2023. Prior to that, PPL did not know Defendant Monroe, Defendant Wingo and Defendant Sellers were acting in concert to tortiously interfere and defraud PPL through their company, No Boundaries Transportation, Inc.

34.

PPL's business is an asset/property that is entitled to protection from tortious interferences by any employee, person, or company.

35.

Defendants' actions and/or omissions, induced PPL's car haul clients and customers to discontinue business relationships and/or induced third parties against dealing with PPL, by steering car haul business and revenues to Defendants Monroe, Seller and No Boundaries Transportation, Inc.

36.

As the actual and proximate cause of Defendants' intentional efforts, PPL's business relationships with Vance/Mercedes, WWL/Nissan, Adessa, Manheim, Chrysler, Ford, Volkswagen and others were obstructed, interfered and/or self-dealed.

## **COUNT I**
### **Tortious Interference with Business Relations**

37.

PPL re-alleges and incorporates by reference, the allegations set forth in paragraphs 1 through 36.

38.

PPL had profitable business relations and car haul revenue from Vance/Mercedes, WWL/Nissan, Adessa, Manheim, Chrysler, Ford, Volkswagen, and others.

39.

Defendants knew of PPL's business relations with Vance/Mercedes, WWL/Nissan, Adessa, Manheim, Chrysler, Ford, Volkswagen, and others, and the profitable nature of the car haul revenue generated with PPL's trade secret information, contacts, and confidential information.

40.

Defendants committed intentional and unjustified acts designed to interfere with and/or disrupt PPL's profitable business relations for their personal profit and benefit.

41.

Defendants intentional and unjustified acts were improper, wrongful and without privilege.

42.

Defendants acted maliciously, and with intent, to injure and interfere with and disrupt PPL's otherwise profitable business relations and car haul revenue.

43.

As the actual and proximate result of Defendants' wrongful acts, PPL has been damaged in a yet undetermined amount, but which amount is greatly in excess of the jurisdictional limits required pursuant to 28 U.S.C. §1332.

44.

WHEREFORE, Plaintiff, Pleasant Prairie Logistics, LLC, respectfully prays for judgment on Count I against Defendants for compensatory damages in such amount as shall be proved at trial, plus interest, attorneys' fees and expenses, court

costs and punitive damages, and such other and further relief as this Court may deem just and proper.

## COUNT II
### Breach of Fiduciary Duty Against Defendant James R. Monroe

45.

Plaintiffs re-allege and incorporate by reference, the allegations set forth in paragraphs 1 through 44.

46.

PPL and Defendant Monroe, as PPL's Vice President of Car Haul Operations, were in a confidential relationship, as set forth in O.C.G.A. § 23-2-58, and Defendant Monroe owed a fiduciary duty to PPL. In performing this duty, Defendant Monroe was obligated to avoid pursing any interest or taking any act adverse to the Plaintiffs' interests.

47.

Defendant Monroe, acting in conspiracy with Defendant Sellers and Defendant No Boundaries Transportation, Inc., intentionally breached the confidential relationship, and the attendant fiduciary duties, to PPL by acts including, but not being limited to, the following:

  a. misappropriating PPL's trade secret information, contacts, and confidential information for self-dealing purposes;

13

b.  interfering with and/or disrupting PPL's profitable business relations for their personal profit and benefit, and in an effort to obtain financial advantage for the Defendants;

c.  actively working with others against the interests of PPL;

d.  misrepresenting important matters and information to PPL's customers and clients; and,

e.  withholding information from PPL that Defendant Monroe had a duty to disclose.

48.

As the actual and proximate result of Defendants' wrongful acts, PPL has been damaged in a yet undetermined amount, but which amount is greatly in excess of the jurisdictional limits required pursuant to 28 U.S.C. §1332.

49.

WHEREFORE, Plaintiff, Pleasant Prairie Logistics, LLC, respectfully prays for judgment on Count II against Defendants for compensatory damages in such amount as shall be proved at trial, plus interest, attorneys' fees and expenses, court costs and punitive damages, and such other and further relief as this Court may deem just and proper.

**<u>COUNT III</u>**
**Breach of Fiduciary Duty Against Defendant Robin Wingo**

50.

Plaintiffs re-allege and incorporate by reference, the allegations set forth in paragraphs 1 through 49.

51.

PPL and Defendant Wingo were in a confidential relationship, as set forth in O.C.G.A. § 23-2-58, and Defendant Wingo owed a fiduciary duty to PPL. In performing this duty, Defendant Wingo was obligated to avoid pursing any interest or taking any act adverse to the Plaintiffs' interests.

52.

Defendant Wingo, acting in conspiracy with Defendant Monroe, Defendant Sellers and Defendant No Boundaries Transportation, Inc., intentionally breached the confidential relationship and the attendant fiduciary duties to PPL by acts including, but not being limited to the following:

a. misappropriating PPL's trade secret information, contacts, and confidential information for self-dealing purposes;

b. interfering with and/or disrupting PPL's profitable business relations for their personal profit and benefit, and in an effort to obtain financial advantage for the Defendants;

c. actively working with others against the interests of PPL; and,

d. withholding information from the PPL that Defendant Monroe had a duty to disclose.

15

53.

As the actual and proximate result of Defendants' wrongful acts, PPL has been damaged in a yet undetermined amount, but which amount is greatly in excess of the jurisdictional limits required pursuant to 28 U.S.C. §1332.

54.

WHEREFORE, Plaintiff, Pleasant Prairie Logistics, LLC respectfully prays for judgment on Count II against Defendants for compensatory damages in such amount as shall be proved at trial, plus interest, attorneys' fees and expenses, court costs and punitive damages; and such other and further relief as this Court may deem just and proper.

**<u>COUNT IV</u>**
**Fraud**

55.

Plaintiffs re-allege and incorporate by reference, the allegations set forth in paragraphs 1 through 54.

56.

Defendants owed a duty to PPL, both as a result of their agent/principal relationship, and at common law, of honest dealings.

57.

Defendants intentionally breached this duty by acts of fraud including, but not being limited to, the following:

    a. conspiring to acquire/develop car haul business and revenue with PPL trade secrets, contacts and confidential information, while making false representations to PPL's clients and costumers that the Defendants were working on behalf of PPL;

    b. soliciting and obtaining car haul revenue from third parties upon false representations; and,

    c. misrepresenting the nature of the car haul revenue induced, without revealing that Defendants, rather than PPL, would profit from such car haul business.

58.

PPL justifiably relied, to their detriment, on both the knowingly false representations made by the Defendants and on Defendants' silences that were intended to mislead PPL.

59.

As the actual and proximate result of Defendants' wrongful acts, PPL has been damaged in a yet undetermined amount, but which amount is greatly in excess of the jurisdictional limits required pursuant to 28 U.S.C. §1332.

60.

WHEREFORE, Plaintiff, Pleasant Prairie Logistics, LLC, respectfully prays for judgment on Count III against Defendants for compensatory damages in such amount as shall be proved at trial, plus interest, attorneys' fees and expenses, court costs and punitive damages; and such other and further relief as this Court may deem just and proper.

## COUNT IV
### Punitive Damages

61.

Plaintiffs re-allege and incorporate by reference, the allegations set forth in paragraphs 1 through 60.

62.

Defendants' actions in tortiously interfering with PPL's business relationships and opportunities, in breaching their fiduciary duty to PPL, in committing fraud, and by engaging in a pattern of intentionally disrupting and obstructing PPL's car haul revenue for their self-dealing, show by clear and convincing evidence that Defendants' misconduct was intentional, willful, wanton, oppressive, malicious, fraudulent, and reckless.

63.

Defendants' actions evidence such an entire want, or lack of care, as to raise

the presumption of a conscious indifference to the consequences of their actions.

64.

PPL is entitled to a judgment against the Defendants, in a bifurcated hearing and following a specific jury finding pursuant to O.C.G.A. § 51-12-5.1 for punitive and exemplary damages, in an amount to be determined by the enlightened conscience of impartial jurors, to punish and deter the Defendants from repeating such conduct in the future.

## COUNT V
### Expenses of the litigation

65.

Plaintiffs re-allege and incorporate by reference, the allegations set forth in paragraphs 1 through 64.

66.

Defendants have acted in bad faith and have been stubbornly litigious or have caused PPL unnecessary trouble and expense. PPL is entitled to recover their expenses of litigation, including reasonable attorney's fees, as a result of Defendants' bad faith, stubborn litigiousness, and causing PPLs unnecessary trouble and expense pursuant to O.C.G.A. § 13-6-11.

67.

Additionally, PPL is entitled to an award of reasonable attorney's fees upon

a finding that the Defendants committed any one of the following alleged tortious actions: breach of fiduciary duty, fraud or tortious interference.

68.

PPL is also entitled to recover their expenses of litigation, including reasonable attorney's fees, as a result of Defendants' violations.

<strong><u>PRAYER FOR RELIEF</u></strong>

**WHEREFORE,** Plaintiff, Pleasant Prairie Logistics, LLC, prays for a judgment against Defendants in which this Court orders as follows:

a. That PPL be awarded judgment in this action against Defendants;

b. That PPL to recover all legally cognizable damages of every kind, however denominated, from Defendants;

c. That PPL recover all of its reasonable attorney's fees and expenses of litigation incurred by in the prosecution of this action;

d. That PPL recover from Defendants all costs incurred by PPL in this action;

e. That PPL recover all additional remedies and/or relief of every kind that this Court may deem just and proper; and,

f. That this case be tried by a jury to the extent allowed by law.

Respectfully submitted this 18th day of April, 2023.

*/s/ Kenneth R. Cantrell, III*
M. Austin Moretz
Georgia Bar No. 529307
Kenneth R. Cantrell, III
Georgia Bar No. 282431
tmlgaservice@gallowaylawfirm.com

GALLOWAY, JOHNSON,
TOMPKINS, BURR & SMITH
A Professional Law Corporation 990
Hammond Drive, Suite 210
Atlanta, GA 30328
Phone: (678) 951-5100
Fax:   (678) 951-1510