IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| PRINCIPAL NATIONAL LIFE INSURANCE COMPANY | ) ) ) |
| Plaintiff | ) ) ) CIVIL ACTION FILE NUMBER |
| v. | ) ) _____ |
| BENITA ALLEN | ) ) |
| Defendant | ) |

## COMPLAINT FOR RESCISSION

Now comes Principal National Life Insurance Company ("Principal") and brings this complaint for rescission of Policy Number 9668246 issued on the life of Xavier Renard Cannada ("Cannada" or "the Decedent"), showing the Court the following:

## Parties

1.

Principal is a corporation organized and existing under the laws of the State of Iowa, maintaining its principal place of business in Des Moines, Iowa. Principal is authorized to do business in the State of Georgia.

2.

Defendant Benita Allen ("Allen") is a citizen of the State of Georgia, residing in Rockdale County, Georgia.

**Jurisdiction and Venue**

3.

Principal brings this action pursuant to the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, seeking a declaration that Policy Number 9668246 ("the Policy") was void *ab initio* due to fraudulent and material misrepresentations made by Cannada and Allen in the application for the Policy. Therefore, the entire value of the Policy, in the Face Amount of $500,000, is in controversy.

4.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1132 because (a) there is diversity of citizenship between the parties, and (b) the amount in controversy, exclusive of interest and costs, exceeds $75,000.

5.

Venue is proper in this United States District Court pursuant to 28 U.S.C. § 1391(b)(1) because Allen resides in this District.

**Cause of Action**

6.

This is an action for rescission of an individual term life insurance policy under Georgia law based on fraudulent misrepresentations in the Application for the Policy which were material to the risk undertaken by Principal.

**The Application and The Policy**

7.

Cannada completed an Individual Life Insurance Application for a 20-year Term life insurance policy with a face amount of $500,000 on April 19, 2021.

8.

The Application indicated the Owner and Primary Beneficiary would be Benita Allen, relationship "Other," and that Allen would be paying the premiums for the Policy.

9.

Cannada submitted the Application electronically on April 19, 2021, and both Cannada and Allen e-signed Part C of the Application on April 19, 2021.

10.

After clarification of issues regarding Cannada's driver's license and the relationship with Allen (who is the mother of one of Cannada's children and was referred to as his fiancé), Principal issued the Policy with a Policy Date of June 9, 2021, a Risk Class of Super Preferred Nontobacco, and a Face Amount of $500,000.

11.

Cannada e-signed a Supplemental Statement and the Part D Agreement/Acknowledgment of Delivery on June 9, 2021 and Allen e-signed Part D on June 10, 2021.

3

12.

Principal delivered the Policy to Allen by letter of June 14, 2021 and noted that, per her request, the Policy Date had been updated to June 10, 2021.

13.

A copy of the Policy, including the Application, which is attached to and incorporated into the Policy, is attached as **Exhibit A.**

14.

Cannada answered "No" to Part B, Question #2b: "In the last five years have you: . . . pled guilty to or been convicted of a felony or misdemeanor?"

15.

Cannada answered "No" to Part B, Question #3: "In the last ten years have you used any tobacco or nicotine products?"

16.

Cannada answered "No" to Part B, Question #18c: "In the last ten years, have you been treated for or been diagnosed by a member of the medical profession as having: . . . asthma, bronchitis, emphysema, sleep apnea, tuberculosis or any other disease or disorder of the lungs or respiratory system?"

17.

Part C of the Application, signed by Cannada and Allen on April 19, 2021, contained the following under the caption "**AGREEMENT**":

**Statements in Application.** I represent that all statements in this application are true and complete to the best of my knowledge and belief and were correctly recorded before I signed my name below. I understand and agree that the statements in the application, including statements by the Proposed Insured in any medical questionnaire that becomes a part of this application, shall be the basis of any insurance issued. I also understand that misrepresentations can mean denial of an otherwise valid claim and rescission of the policy during the contestable period.

18.

Part D, the "Agreement/Acknowledgment of Delivery, signed by Cannada on

June 9, 2021 and by Allen on June 10, 2021, contained the following language:

**AGREEMENT: Statements in Application.** I have read all the questions and answers obtained during the application process, including Part B on the primary Proposed Insured. I represent all statements are true and complete to the best of my knowledge and belief and were correctly recorded before I signed my name below. I have also signed a copy of this Agreement/Acknowledgment of Delivery included with my policy. I understand and agree the statements in the application, including all of its parts and statements by the Proposed Insured in any medical questionnaire or supplement, will be the basis for and form a part of the policy. I understand that misrepresentations can mean denial of an otherwise valid claim and rescission of the policy during the contestable period.
. . .
**Warning:** Any person who knowingly presents a false statement in an application for insurance may be guilty of a criminal offense and subject to penalties under state law.

**Principal's Contestability Review**

19.

Allen notified Principal of Cannada's death on April 11, 2022. A copy of the electronic Death Notice Form is attached as **Exhibit B.**

20.

Allen submitted an Individual Life Insurance Claim Form for the proceeds of the Policy dated April 13, 2022. A copy of the claim form is attached as **Exhibit C**.

21.

Cannada's mother submitted an Affidavit of Next of Kin dated April 13, 2022. A copy of the affidavit is attached as **Exhibit D.**

22.

The Georgia Death Certificate indicated Cannada died on April 9, 2022 due to multiple gunshot wounds. A copy of the death certificate is attached as **Exhibit E.**

23.

Because Cannada died within the contestable period, Principal initiated a routine contestable review.

24.

Principal enlisted Broyles Claim Decision Support ("Broyles") to assist with gathering information relevant to its review.

25.

Broyles obtained Cannada's criminal and medical records and interviewed Allen on April 19, 2022.

26.

Cannada's medical records indicated that he had a history of asthma and was noted within the ten years preceding the Application to smoke half a pack of cigarettes per day.

27.

Cannada should have answered "Yes" to Question #3 on Part B of the Application: "In the last ten years have you used any tobacco or nicotine products?"

28.

Cannada should have answered "Yes" to Question #18c on Part B of the Application: "In the last ten years, have you been treated for or been diagnosed by a member of the medical profession as having: . . . asthma. . . ."

29.

Cannada's criminal records, obtained by Broyles from the Dekalb County Clerk of Court of Decatur, Georgia, the Georgia Felon Criminal Database, and the State of Georgia Criminal Records, indicated the following:

(a)     **December 27, 2006:** Cannada was charged with felony violation of the Georgia Controlled Substances Act (for possession of cocaine);

(b)     **June 21, 2007:** Cannada pled guilty to one count of violation of the Georgia Controlled Substances Act;

(c)     **June 10, 2009:** Cannada was charged with misdemeanor obstruction of officers which was dismissed on August 25, 2009;

(d)     **September 15, 2010:** Cannada was charged with battery against a pregnant female, family violence battery, and simple assault;

(e)     **September 17, 2010:** Cannada was charged with simple assault, battery, and family violence battery;

(f)     **April 3, 2011:** Cannada was charged with simple battery, battery, family violence battery, and disorderly conduct;

(g)     **April 4, 2011:** Cannada was charged with simple battery;

(h)     **June 22, 2011:** Cannada was charged with criminal trespass, simple battery, simple assault, and disorderly conduct;

(i)     **December 8, 2011:** Cannada was charged with simple battery;

(j)     **December 9, 2011:** Cannada was charged with simple battery;

(k)     **January 31, 2012:** Cannada was charged with cruelty to children, interference with a call for emergency help, family violence battery, and simple battery;

(l)     **October 21, 2014:** Cannada pled guilty to two counts of family violence battery, two counts of simple battery, one count of cruelty to children, and

8

one count of interference with call for emergency help; the criminal records indicate that Cannada served time in the Georgia Diagnostic and Classification State Prison in connection with these charges;

(m)   **February 23, 2017:** Cannada was charged with family violence battery second or subsequent offense (for pulling braids out of Allen's head), first degree burglary (for breaking into Allen's home with the intent to commit a felony), terroristic threats (for threatening to commit a crime of violence with the purpose of terrorizing another person), cruelty to children in the third degree (for intentionally allowing his minor child to witness commission of family violence battery on Allen), and simple assault;

(n)   **March 14, 2017:** Cannada was charged with child abandonment for non-support;

(o)   **June 22, 2017:** Cannada was charged with criminal trespass (for intentionally damaging the walls at Allen's home), simple battery – family violence (for slapping Allen in the face), family violence battery second or subsequent offense (for pulling braids out of Allen's head), and disorderly conduct; and

(p)   **May 14, 2019:** Cannada pled guilty to burglary in the first degree, 2 counts of battery family violence, 1 count of simple battery – family violence, criminal trespass, cruelty to children in the third degree, and terroristic threats, and was sentenced to 7 years, with 2 years confinement and the remainder to be served

on probation. Cannada received a total of 1 month and 2 days credit for time served and was further ordered to enter into and successfully complete a domestic violence intervention program, to have no violent contact with the victim, and to possess no weapons.

30.

Burglary in the first degree is a felony. *See* O.C.G.A. § 16-7-1(b).

31.

Criminal trespass is a misdemeanor. *See* O.C.G.A. § 16-7-21(d).

32.

Disorderly conduct is a misdemeanor. *See* O.C.G.A. § 16-11-39(b).

33.

Simple assault and simple battery committed between persons who are parents of the same child are considered misdemeanors "of a high and aggravated nature." *See* O.C.G.A. § 16-5-20(d); O.C.G.A. § 16-5-23(f).

34.

Battery is a misdemeanor, s*ee* O.C.G.A. § 16-5-23.1(c), except that a third or subsequent conviction for battery against the same victim is a felony, *see* O.C.G.A. § 16-5-23.1(e).

35.

Family violence battery is a misdemeanor for the first conviction, but a second or subsequent conviction against the same victim or another victim is a felony. *See* O.C.G.A. § 16-5-23.1(f)(2)(A)-(B).

36.

Interference with a domestic violence emergency call is a Class B misdemeanor. *See* O.C.G.A. § 13A-6-137(b).

37.

Battery against a pregnant female is a misdemeanor "of a high and aggravated nature." *See* O.C.G.A. § 16-5-23.1(h).

38.

The first or second conviction for cruelty to children in the third degree is a misdemeanor, but a third or subsequent conviction is a felony. *See* O.C.G.A. § 16-5-70(e)(3).

39.

Terroristic threats are misdemeanors unless a threat suggests the death of the threatened individual, in which case it is a felony. *See* O.C.G.A. § 16-11-37(d)(1).

40.

Cannada should have answered "Yes" to Question #2b on Part B of the Application: "In the last five years have you: . . . pled guilty to or been convicted of a felony or misdemeanor?"

41.

By letter dated November 21, 2022, Principal notified Allen of its determination that life insurance benefits were not payable under the Policy because the Policy was null and void from its inception due to the intentional, material misstatements and omissions regarding Cannada's medical and criminal history in the Application, and that Principal had rescinded and voided the Policy.

42.

Principal enclosed with the November 21, 2022 letter a check in the amount of $247.61, which represented a complete refund of all premiums paid for the Policy, plus interest.

43.

Principal also enclosed a Rescission Agreement for Allen to sign in connection with negotiation of the premium refund check.

44.

A copy of the November 21, 2022 letter, with enclosures, is attached as **Exhibit F.**

45.

Principal sent a follow up letter to Allen on January 6, 2023, and informed her that, if Principal did not receive the signed Rescission Agreement by February 6, 2023, Principal may need to file an action and obtain a court order rescinding the Policy. A copy of the January 6, 2023 letter is attached as **Exhibit G.**

46.

To date, Allen has refused to accept the refund of premiums.

47.

Instead, on December 28, 2022, Allen initiated a complaint with the Georgia Office of Commissioner of Insurance and Safety Fire ("the Commissioner's Office").

48.

Allen sent multiple copies of Principal's November 21, 2022 letter and the enclosed Recission Agreement and premium refund check to the Commissioner's Office.

49.

Principal responded to the Commissioner's Office by letter of January 6, 2023, in which Principal explained its investigation and resulting determination that the Policy would not have been issued if Principal had been provided with all of the facts and missing information during the Application and Underwriting process.

50.

A copy of the letter to the Commissioner's Office dated January 6, 2023 is attached as **Exhibit H**.

**Grounds for Rescission**

51.

A policy of insurance is a contract of utmost good faith, which is issued on the basis of the information provided by the applicant in his application for insurance.

52.

The application for insurance contains questions worded to elicit from a proposed insured a true and complete disclosure of all facts within the scope of the knowledge of the proposed insured and pertaining to the insurability of the proposed insured.

53.

The Application and Agreement/Acknowledgment of Delivery signed by Cannada and Allen contained multiple representations by Cannada and Allen that the answers to the questions in the Application were true and accurate, and Cannada and Allen acknowledged that Principal would rely on the representations in the Application when determining whether and in what amount to offer coverage.

54.

Cannada misrepresented his health history to Principal on the Application by omitting his history of asthma and tobacco use.

55.

Cannada and Allen misrepresented Cannada's criminal history to Principal on the Application and Agreement/Acknowledgment of Delivery by omitting an extensive criminal history, Cannada's guilty plea on May 14, 2019 to several crimes committed against Allen and their minor child, and Cannada's sentence of 7 years, with 2 in confinement and the remainder to be served on probation.

56.

This information was known to Cannada and Allen before the Application was completed, and they did not disclose this information despite specific inquiry in the Application to which this information was relevant and responsive.

57.

Had Principal been aware of Cannada's true health history, it would have re-questioned Cannada regarding tobacco use and, if Cannada had admitted to current use, the Policy would have been issued as Preferred Tobacco rather than Super Preferred Nontobacco.

58.

Had Principal been aware of Cannada's true criminal history, Principal would have declined to offer any life insurance coverage to Cannada.

59.

The underwriting guidelines used by Principal with respect to "Probation/Parole" and "Criminal History" would have required Principal to decline coverage to Cannada because the guidelines provide that:

(a)    For individuals who currently are on probation or parole, coverage should be declined, with possible reconsideration once they are out of jail and/or off probation or parole for at least 12 months;

(b)    Individuals with multiple felonies or "major felonies" (*i.e.*, murder, rape, organized crime, espionage, drug trafficking, crimes against children, or terrorist acts) should be declined;

(c)    Consideration should not be given to individuals with patterns of multiple or persistent offenses or those with extensive criminal histories; and

(d)    Individuals with criminal profiles of violent behavior should be declined.

60.

After reviewing the criminal records, Principal's underwriter provided an underwriting opinion on October 11, 2022, which: noted the charges with respect to

which Cannada entered a guilty plea on May 14, 2019; noted the resulting sentence; and noted that Cannada would have been on probation when the Application was taken on April 19, 2021.

61.

The underwriter therefore concluded that Cannada would have been disqualified from coverage because:

(a)    Principal does not offer coverage for any applicant who is on probation;

(b)    Principal does not offer coverage to applicants who have been convicted of a felony;

(c)    Principal does not offer coverage to any applicant who has been convicted of crimes against children; and

(d)    Principal does not offer coverage to applicants involved in terrorist activity.

62.

Principal has tendered a check to Allen for a refund of all premiums paid for the Policy, plus interest.

**Count One – Rescission**

63.

Principal adopts and incorporates by reference Paragraphs 1 through 62 above as if set forth herein verbatim.

17

64.

Under O.C.G.A. § 33-24-7(b):

Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless:

(1) Fraudulent;

(2) Material either to the acceptance of the risk or to the hazard assumed by the insurer; or

(3) The insurer in good faith would either not have issued the policy or contract or would not have issued a policy or contract in as large an amount or at the premium rate as applied for or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been known to the insurer as required either by the application for the policy or contract or otherwise.

65.

Cannada's failure to disclose his true and complete health history and criminal history constitutes an omission and concealment of facts rendering the statements made during the application and underwriting process for the Policy incorrect and misrepresentations.

66.

Cannada and Allen were aware when they signed the Application and the Agreement/Acknowledgment of Delivery that Cannada had pled guilty to multiple crimes for which he served time in confinement and continued to be on probation at the time the Application was taken.

67.

Cannada and Allen knew that the representations in the Application were false and that Cannada did not disclose his complete health history and criminal history at the time they signed the Application and the Agreement/Acknowledgment of Delivery.

68.

Cannada and Allen made misrepresentations, omissions, concealment of facts, and incorrect statements for the purpose of obtaining life insurance.

69.

Canada and Allen acknowledged that the representations in the Application would be relied on by Principal in determining whether Cannada qualified for issuance of the Policy, thus they intended for Principal to rely on the responses in the Application.

70.

Principal did rely on the responses in the Application and did not know that the responses were untrue and incomplete.

71.

Principal relied on the responses in the Application to its detriment and damage in accepting Cannada's Application for life insurance.

72.

The aforesaid misrepresentations, omissions, concealment of facts, and incorrect statements were fraudulent.

73.

The aforesaid misrepresentations, omissions, concealment of facts, and incorrect statements were material to the acceptance of the risk and to the hazard assumed by Principal.

74.

Principal, in good faith, would not have accepted the Application and would not have issued life insurance coverage insuring Cannada's life had the true and complete facts been known to it.

75.

Principal tendered a refund of all premiums paid for the Policy, plus interest, but Allen has rejected the tender to date.

76.

Principal is entitled to rescind the Policy and have the Policy adjudged by this Court to be void *ab initio* and of no effect by reason of the matters set forth above on all of the grounds provided by O.C.G.A. § 33-24-7(b).

77.

Principal is entitled to recover its attorney's fees incurred in bringing this complaint for rescission.

WHEREFORE, Principal National Life Insurance Company respectfully requests:

(a) That judgment be entered in its favor;

(b) That Policy Number 9668246 be adjudged by this Court to be rescinded, void *ab initio,* and of no effect;

(c) That it be awarded its reasonable attorney fees and costs associated with the bringing of its complaint; and

(d) That it have such other and further relief to which it is entitled.

This 20th day of April, 2023.

s/ *Nikole M. Crow*
Nikole M. Crow
Georgia Bar No. 198359

s/ *Brendan H. White*
Brendan H. White
Georgia Bar No. 458315

Attorneys for Principal National
Life Insurance Company

WOMBLE BOND DICKINSON (US) LLP
271 17th Street, N.W., Suite 2400
Atlanta, Georgia 30363-1017
(404) 872-7000 (telephone)
(404) 888-7490 (facsimile)
nikole.crow@wbd-us.com
brendan.white@wbd-us.com