

Exhibit A



Life insurance

# Congratulations
## on securing financial protection

Your
insurance policy
has arrived

 Principal®

**Principal National Life
Insurance Company**

June 9, 2021

RE      Xavier Cannada

        Policy  9668246


Thank you for applying to Principal National Life Insurance Company for your insurance coverage.  We welcome you to the Principal family.

Included in your policy is a copy of your application including the completed Part B application.  Please review the information on the Part B application carefully before signing. If you notice any incorrect or incomplete information, contact your representative shown below.  The entire application will become part of your insurance policy.

>   You authorized us to draw funds directly from your bank account. Electronic fund transfers will be scheduled to draw on your policy date in the amount of $20.25 monthly.

>   This amount pertains only to this policy. Your total withdrawal amount will be greater if additional policies are included on the Electronic Funds Transfer Payment Plan.

If you have questions about your insurance coverage, please contact your financial representative or call our office at the toll free number listed below.  You are a valued customer and we thank you for choosing the Principal for your insurance needs.

Sincerely,

Life New Business
Individual Life Division
1-800-247-9988

Your financial representative:  Life Quotes Inc, (800) 556-9393

 **Principal**®

**Principal National Life**
**Insurance Company**
Des Moines, IA 50392-0001

### STATEMENT OF POLICY COST AND BENEFIT INFORMATION
Policy Form ICC17 SN 104

**This statement was prepared on:** June 14, 2021

| | | | |
|---|---|---|---|
| **Insured's Name:** | Xavier Cannada | **Policy Number:** | 9668246 |
| **Age & Gender:** | 32 - Male | **Policy Date:** | June 10, 2021 |
| **Risk Class:** | Super Preferred Nontobacco | **Face Amount:** | $500,000 |
| | | **Expiration Date:** | June 9, 2084 |

Your **Term Life Insurance** policy provides a level death benefit prior to the expiration date.  Level premiums during the Initial Level Premium Period, and increasing annually thereafter until the expiration date.  The following table shows Guaranteed Annual Premiums and death benefits at the beginning of the year.

| Policy Year | Guaranteed Annual Premium | Death Benefit |
|:---:|:---:|:---:|
| 1 | 235.49 | 500000 |
| 2 | 235.49 | 500000 |
| 3 | 235.49 | 500000 |
| 4 | 235.49 | 500000 |
| 5 | 235.49 | 500000 |
| 6 | 235.49 | 500000 |
| 7 | 235.49 | 500000 |
| 8 | 235.49 | 500000 |
| 9 | 235.49 | 500000 |
| 10 | 235.49 | 500000 |
| 15 | 235.49 | 500000 |
| 20 | 235.49 | 500000 |
| 30 | 8541.25 | 500000 |
| 34 | 13010.00 | 500000 |
| 63 | 371160.00 | 500000 |

An explanation of the intended use of the indices shown below, are included in the Life Insurance Buyer's Guide.

| INTEREST ADJUSTED INDICES | GUARANTEED BASIS | |
|---|:---:|:---:|
| | 10 Year | 20 Year |
| Net Payment Cost Index | $0.47 | $0.47 |
| Surrender Cost Index | $0.47 | $0.47 |

The Interest Adjusted Indices were calculated using an assumed annual interest rate of 5.00%.

**PRIMARY SERVICING PRODUCER:** Life Quotes Inc
8205 Cass Ave Ste 102
Darien IL  60561-5319

**TERM LIFE INSURANCE POLICY.  Benefits payable at the death of the Insured prior to the Policy Expiration Date and while this policy is in force.  Premiums are level during the Initial Level Premium Period.  After the Initial Level Premium Period, premiums generally increase annually until the Policy Expiration Date, subject to guaranteed maximums.  This policy is renewable to the Policy Expiration Date and renewal premiums are payable during continuance of the policy.  There is a Conversion Privilege as described in the policy.  This policy is non-participating.**

This policy is a legal contract between You, as owner(s), and Us, Principal National Life Insurance Company, a stock company.  Your policy is issued based on the information in the application and payment of premiums as shown on the Data Pages.  We will pay the benefits of this policy in accordance with its provisions.

**RIGHT TO EXAMINE POLICY.  IT IS IMPORTANT TO US THAT YOU ARE SATISFIED WITH THIS POLICY. IF YOU ARE NOT SATISFIED, YOU MAY RETURN YOUR POLICY TO EITHER YOUR AGENT OR OUR HOME OFFICE WITHIN TEN DAYS OF THE DATE YOU RECEIVED IT.  IF THIS POLICY IS A REPLACEMENT POLICY, YOU MAY RETURN YOUR POLICY TO EITHER YOUR AGENT OR OUR HOME OFFICE WITHIN 30 DAYS OF THE DATE YOU RECEIVED IT, OR SUCH LATER DATE AS MAY BE REQUIRED BY APPLICABLE LAW IN THE STATE WHERE THE POLICY IS DELIVERED OR ISSUED FOR DELIVERY.  IF YOU RETURN YOUR POLICY UNDER THIS PROVISION, WE WILL REFUND ANY PREMIUM PAID.  YOUR POLICY WILL THEN BE CONSIDERED VOID FROM ITS INCEPTION AND THE PARTIES SHALL BE IN THE SAME POSITION AS IF NO POLICY HAD BEEN ISSUED.  PLEASE READ YOUR POLICY CAREFULLY SO YOU MAY BETTER USE ITS MANY BENEFITS.**

For any questions regarding this policy, please contact Your agent or Our Home Office at 1-800-247-9988 or www.Principal.com.

This policy starts on the Policy Date and will stay in force until the earlier of the Policy Expiration Date shown on the Data Pages or death of the Insured so long as You satisfy the requirements outlined in Your policy.

Secretary

President

State Department of Insurance:  GEORGIA
(404) 656-2056

**Principal®**

**Principal National Life
Insurance Company**
711 High Street
Des Moines, IA 50392-0001

ICC17 SN 104

9668246

# TABLE OF CONTENTS

**Subject**                                                                                                      **Page**

Data Pages.................................................................................................................. 3
Definitions In This Policy........................................................................................... 4
Purchasing And Keeping The Policy In Force............................................................ 5
    Premium Payments.............................................................................................. 5
    Premium Changes............................................................................................... 5
    Grace Period....................................................................................................... 5
    Termination.......................................................................................................... 6
    Request for Cancellation..................................................................................... 6
    Reinstatement..................................................................................................... 6
Renewal Privilege...................................................................................................... 6
Conversion Privilege.................................................................................................. 7
    The New Policy................................................................................................... 7
    Riders.................................................................................................................. 7
Death Proceeds......................................................................................................... 7
Benefit Payment Options........................................................................................... 8
    Benefit Payment Conditions................................................................................ 8
    Description Of Benefit Payment Options............................................................. 9
Owner, Beneficiary, Assignment.............................................................................. 10
    Owner................................................................................................................ 10
    Beneficiary........................................................................................................ 10
    Change Of Owner Or Beneficiary...................................................................... 10
    Benefit Instructions........................................................................................... 10
    Assignment....................................................................................................... 10
General Information.................................................................................................. 11
    The Contract..................................................................................................... 11
    Alterations......................................................................................................... 11
    Face Amount Adjustments................................................................................ 11
    Risk Reclassification......................................................................................... 11
    Incontestability.................................................................................................. 12
    Misstatement Of Age Or Gender....................................................................... 12
    Suicide.............................................................................................................. 12
    Conformity with Interstate Insurance Product Regulation Commission Standards....... 12

A copy of the application and any additional benefits provided by rider follow the last page of this policy.

**DATA PAGES**

---

**Term Life Insurance**

---

## POLICY DATA

| | |
|---|---|
| **Policy Number:** | 9668246 |
| **Owner(s) Name:** | Benita Allen |

For additional owners or subsequent ownership changes, see application or letter(s) of acknowledgement.

| | |
|---|---|
| **Insured's Name:** | Xavier Cannada |
| **Insured's Risk Class:** | Super Preferred Nontobacco |
| **Insured's Age and Gender:** | 32,  Male |
| **Policy Date:** | June 10, 2021 |
| **Policy Expiration Date:** | June 9, 2084 |
| **Final Conversion Date:** | June 9, 2036 |

The Final Conversion Date is the earlier of the Insured's Attained Age 70 and the end of Policy Year 15.

| | |
|---|---|
| **Face Amount:** | $500,000 |
| **Minimum Face Amount:** | $200,000 |
| **Initial Level Premium Period:** | 20 years |
| **Premium and Premium Frequency at Issue:** | $235.49      Annual |

| **Premium Payment Frequency Options** | Premium | Annualized Premium | Premium Payment Frequency Charge Included* |
|---|---|---|---|
| **Total Annual Premium:** | $235.49 | $235.49 | $0.00 |
| Semi-Annual Premium: | $120.69 | $241.38 | $5.89 |
| Quarterly Premium: | $61.82 | $247.28 | $11.79 |
| Pre-authorized Withdrawal Premium: | $20.25 | $243.00 | $7.51 |

**\*There is an additional charge for premium payment frequencies other than annual.**

# TABLE OF PREMIUMS

### Based on Policy Face Amount

| Policy Year | Guaranteed Annual Premium | Policy Year | Guaranteed Annual Premium | Policy Year | Guaranteed Annual Premium |
|---|---|---|---|---|---|
| 1 | $235.49 | 22 | $4,755.00 | 43 | $34,898.75 |
| 2 | 235.49 | 23 | 5,177.50 | 44 | 39,465.00 |
| 3 | 235.49 | 24 | 5,600.00 | 45 | 44,470.00 |
| 4 | 235.49 | 25 | 5,990.00 | 46 | 49,978.75 |
| 5 | 235.49 | 26 | 6,363.75 | 47 | 56,072.50 |
| 6 | 235.49 | 27 | 6,753.75 | 48 | 63,027.50 |
| 7 | 235.49 | 28 | 7,208.75 | 49 | 71,055.00 |
| 8 | 235.49 | 29 | 7,777.50 | 50 | 80,447.50 |
| 9 | 235.49 | 30 | 8,541.25 | 51 | 90,961.25 |
| 10 | 235.49 | 31 | 9,483.75 | 52 | 103,197.50 |
| 11 | 235.49 | 32 | 10,540.00 | 53 | 117,383.75 |
| 12 | 235.49 | 33 | 11,726.25 | 54 | 133,877.50 |
| 13 | 235.49 | 34 | 13,010.00 | 55 | 152,971.25 |
| 14 | 235.49 | 35 | 14,391.25 | 56 | 174,941.25 |
| 15 | 235.49 | 36 | 15,870.00 | 57 | 199,787.50 |
| 16 | 235.49 | 37 | 17,511.25 | 58 | 226,746.25 |
| 17 | 235.49 | 38 | 19,363.75 | 59 | 255,492.50 |
| 18 | 235.49 | 39 | 21,541.25 | 60 | 285,018.75 |
| 19 | 235.49 | 40 | 24,125.00 | 61 | 314,545.00 |
| 20 | 235.49 | 41 | 27,212.50 | 62 | 343,746.25 |
| 21 | 4,348.75 | 42 | 30,803.75 | 63 | 371,160.00 |

Premiums for any additional riders attached to this policy will be in addition to the premiums shown above. All premiums shown include an annual policy fee of: $75.00

These Data pages Prepared On:  June 14, 2021

*Gregg G. Lilo*

President

Principal National Life Insurance Company
Des Moines, Iowa 50392-0001

# DEFINITIONS IN THIS POLICY

All of the following defined terms and phrases and certain items on Your Data Pages are capitalized throughout the policy.  Please read them carefully as they will help You understand the policy provisions.

**ADJUSTMENT DATE** is the Monthly Date on or next following Our approval of a requested adjustment.

**ATTAINED AGE** means the Insured's age on the birthday nearest to the Policy Date, plus the number of complete Policy Years that have elapsed since the Policy Date.

**DATA PAGES** are the pages of this policy which contain information specific to You, to the Insured and the policy.  Current or revised Data Pages may be sent to You from time to time which reflect the current status of Your policy.

**EFFECTIVE DATE** is the date on which all requirements for issuance of a policy have been satisfied.

**FACE AMOUNT** is the amount used to determine the death benefit provided by the policy.  The Face Amount is shown on the Data Pages.

**HOME OFFICE** is the address shown on Your policy cover page or such other address We provide.

**INITIAL LEVEL PREMIUM PERIOD** is the number of Policy Years from the Policy Date during which the premium remains level.  The Initial Level Premium Period is shown on the Data Pages.

**INSURED** is the person named as the Insured on the Data Pages of the policy.  The Insured may or may not be the owner.

**MONTHLY DATE** is the day of the month which is the same as the day of the Policy Date.  The Monthly Date will never be the 29th, 30th, or 31st of any month.

**NOTICE** is a communication that is acceptable to Us in form and substance and that We receive in Our Home Office.  We will require You to use a form We provide for certain Notices, including, for example, a policy surrender, a change of beneficiary, or a request to adjust Your policy.

**POLICY DATE** is the date from which Monthly Dates, Policy Years, and policy anniversaries are determined.  The Policy Date is shown on the Data Pages.  The Policy Date will never be the 29th, 30th, or 31st of any month.

**POLICY YEAR** is the one year period beginning on the Policy Date and ending one day before the policy anniversary and each subsequent one year period beginning on a policy anniversary.

      Example:  If the Policy Date is November 21, 2017, the first Policy Year ends on November 20, 2018.  The first policy anniversary falls on November 21, 2018.

**WE, OUR, US, THE COMPANY** is Principal National Life Insurance Company.

**YOU, YOUR** is the owner(s) of this policy.

# PURCHASING AND KEEPING THE POLICY IN FORCE

**PREMIUM PAYMENTS**

Your first premium must be paid in advance of the policy becoming effective and is due on the Policy Date.  After that, future premium due dates are determined by the frequency You select.

1. Annual premiums are due on the first day of each Policy Year.
2. Semi-annual premiums are due on the first day of each Policy Year and six months thereafter.
3. Quarterly premiums are due on the first day of each Policy Year and every three months thereafter.
4. Pre-authorized withdrawal premiums are due on the same day in each month as the Policy Date.

You may change the frequency of the premium payments with Our approval.  However, if You choose a premium payment frequency other than annual, an additional charge, as shown on the Data Page, will apply over and above the guaranteed annual premium.

Premiums are payable when due.  All premiums are to be sent to the address We provide in Your premium notice.  Premium payments must be honored on first presentment by Your financial institution to be considered a payment.  We will give a receipt to You on request.

**PREMIUM CHANGES**

Premiums during the Initial Level Premium Period, excluding rider premiums, are listed in the Table of Premiums on Your Data Pages and will not change unless the policy is adjusted as described elsewhere in the policy.

Premiums following the Initial Level Premium Period, excluding rider premiums, may change but will never be greater than the premiums listed in the Table of Premiums.  Any such change in the premiums:

1. will be effective on the policy anniversary next following the date We mail the notice to You;
2. will be made on a uniform basis for insureds having the same plan, age at issue, Policy Date, gender where applicable, risk class, and tobacco status;
3. will be based on Our expectation as to Our future investment earnings, expenses, state and federal taxes, mortality and persistency experience, market conditions, and revenue for profit; and
4. will not apply to any riders attached to this policy, unless the rider provides for an increase or decrease in premiums.

**GRACE PERIOD**

Except for the first premium, a grace period of 31 days will be allowed for the payment of each premium. If a premium is not received in Our Home Office when due, Your policy will enter a grace period.  We will mail a notice of impending policy termination to You at Your last address known to Us and to any assignee on record at least 30 days prior to termination.  This notice will tell You the required premium, payment instructions and the grace period end date.  If, by the end of the grace period, You have not paid to Our Home Office the required premium, Your policy, including privileges and rights of the owner(s), will terminate without value effective on the premium due date.  A premium payment must be honored on first presentment by Your financial institution to be considered a payment.

If the Insured dies during a grace period, We will pay the death proceeds to the beneficiary(ies) subject to the Death Proceeds section of this policy.  Any pro rata premium due will be deducted from the death proceeds.

**TERMINATION**

All Your policy privileges and rights under this policy terminate on the date:
1.   the Insured dies; or
2.   the policy expires, or is converted; or
3.   premiums are due and unpaid as described in the Grace Period provision; or
4.   We receive Your Notice to cancel it.

**REQUEST FOR CANCELLATION**

You may cancel Your policy in full by sending Us Notice.  Coverage ends on the date We receive Your Notice to cancel the policy.  Upon cancellation of this policy, a refund of premiums, if any, for the remainder of the period for which premiums were paid will be sent to Your last known address.

**REINSTATEMENT**

If Your policy terminates as described in the Grace Period provision, You may reinstate it, although possibly at a different risk class, provided:
1.   such reinstatement is prior to the Policy Expiration Date as shown on the Data Pages;
2.   not more than three years have elapsed since Your policy terminated;
3.   You supply evidence which satisfies Us that the Insured is alive and insurable under Our underwriting guidelines then in effect; and
4.   You pay all past due premiums.  We reserve the right to charge interest on past due premiums at 6% compounded annually from their respective due dates.

Reinstatement will be effective on the Monthly Date on or next following the date We approve it.  Your Policy Date will remain the original Policy Date.  Upon reinstatement, We will send You Data Pages that reflect the current status of Your policy.

# RENEWAL PRIVILEGE

You may renew this policy without evidence of insurability for successive one year periods for the premium shown in the Table of Premiums on the Data Pages.  No period of renewal may extend beyond the Policy Expiration Date shown on the Data Pages.

Renewal will be effective upon payment of the required premium on or before its due date or during the grace period.

# CONVERSION PRIVILEGE

This policy may be converted in whole or in part, without evidence of insurability, by submitting a Notice requesting conversion any time prior to and including the Final Conversion Date shown on Your Data Pages. The conversion will be allowed provided this policy is in force and is not in a grace period.

**THE NEW POLICY**

The Face Amount of the new policy:
1. may not exceed the Face Amount of this policy; and
2. may not be less than the minimum Face Amount allowed for the policy selected, according to Our underwriting guidelines then in effect.

Premiums and values for the new policy will be based on:
1. a risk class most comparable to the risk class of this policy;
2. rates in effect on the date of the conversion; and
3. the Insured's Attained Age on the date of conversion.

The new policy will be any form of life insurance policy, except term insurance, available under Our underwriting guidelines then in effect.  The first premium for the new policy must be paid in advance of the policy becoming effective and is due on the new policy's Effective Date.  The periods specified in the Suicide and Incontestability provisions will not begin again for the new policy, and will be measured from the Effective Date of this policy.  If the new policy is not accepted, we will restore the Face Amount of Your policy to the Face Amount that existed prior to the conversion.

The date of conversion and the new policy's Effective Date will be the date We approve the Notice for conversion.

**RIDERS**

Any riders on this policy will cease upon full conversion.  Similar riders may be issued with the new policy without evidence of insurability, subject to the provisions in the new riders and subject to Our rules in effect on the date of conversion.  The following conditions must be satisfied:
1. the rider is on this policy; and
2. the rider is available at the Attained Age of the Insured on the new policy's Policy Date; and
3. premiums are not being waived due to the Insured's disability under a similar rider on this policy.

# DEATH PROCEEDS

We will pay the death proceeds to the beneficiary(ies) subject to the provisions of the policy, after We receive:
1. Notice and due proof that the Insured died while the policy was in force and prior to the Policy Expiration Date;  Due proof of the Insured's death consists of a certified copy of the death certificate of the Insured; and
2. sufficient information to determine Our liability, the extent of the liability and the appropriate payee legally entitled to the proceeds; and
3. sufficient evidence that any legal impediments to payment of proceeds that depend on the action of parties other than Us are resolved.  Legal impediments to payment include, but are not limited to (a) the establishment of guardianships and conservatorships; (b) the appointment and qualification of trustees, executors and administrators; and (c) the submission of information required to satisfy state and federal reporting requirements.

We require notification of the Insured's death as soon as it occurs, or as soon thereafter as is reasonably possible.  The death proceeds, determined as of the date of the Insured's death, will be:

    A   the Face Amount of this policy as shown on the Data Pages; plus
    B   death proceeds from any benefit rider on the Insured's life; plus
    C   any premium paid and applied beyond the month in which the death occurred; less
    D   any pro rata premium due.

Any premium received after the date of death will be paid to the beneficiary(ies) and will not be included in the calculation of the death proceeds. With Our consent a different arrangement for return of premium may be specified prior to the payment of death proceeds.

Interest on death proceeds shall accrue and be payable from the date of death.  Interest shall accrue at the rate or rates applicable to the policy for funds left on deposit.  In determining the effective annual rate or rates, We will use the rate in effect on the date of death.

Interest shall accrue at the effective annual rate determined in the previous paragraph, plus additional interest at a rate of 10% annually beginning with the date that is 31 calendar days from the latest of Our receipt of items 1, 2, and 3 above to the date the claim is paid.

## BENEFIT PAYMENT OPTIONS

In lieu of a lump sum payment, You may elect a benefit payment option for payment of the death proceeds.  If no benefit payment option has been elected before the Insured's death, the beneficiary may apply the death proceeds to a benefit payment option.

Once the proceeds are applied under a benefit payment option, this policy is terminated and a supplementary contract is issued.  The Company reserves the right, as its discretion, to provide a supplementary contract issued by itself, by an affiliated company, or by a non-affiliated issuer of annuity contracts.

### BENEFIT PAYMENT CONDITIONS

Election of any benefit payment option is subject to the following conditions:

1.   Any amount payable to an assignee will be paid in one lump sum.  Any remaining proceeds will then be applied to the elected benefit payment option.
2.   No changes may be made to the benefit payment option once a supplementary contract is issued.
3.   The proceeds applied must be at least $25,000.00.
4.   Benefit payment options are restricted if the recipient of benefits is not a natural person.
5.   We reserve the right to require evidence of age, gender where applicable, and continuing survival.
6.   Under Options B, C, D, and E, one of the persons on whose life payments are based must be the owner, Insured, or beneficiary.

**DESCRIPTION OF BENEFIT PAYMENT OPTIONS**

OPTION A, CUSTOM: A custom benefit arrangement can be designed with the Company's written approval.

OPTION B, LIFE INCOME: We will make benefit payments during the person's lifetime.  Payments cease when the person dies.

OPTION C, LIFE INCOME WITH GUARANTEED PERIOD: We will make benefit payments for the longer of the person's lifetime or a guaranteed period that You select.  If the person dies after payments begin but before the end of the guaranteed period, the remaining payments will be paid to the named beneficiary(ies) under the benefit payment option.

OPTION D, JOINT AND SURVIVOR LIFE INCOME: We will make benefit payments during the lifetime of two persons.  Payments cease when both persons have died.

OPTION E, JOINT AND SURVIVOR LIFE INCOME WITH GUARANTEED PERIOD:  We will make benefit payments for the longer of the lifetimes of two persons or a guaranteed period that You select.  If both persons die after payments begin but before the end of the guaranteed period, the remaining payments will be paid to the named beneficiary(ies) under the benefit payment option.

BENEFIT OPTIONS B, C, D, and E: Benefit payments will be in an amount We determine but not less than guaranteed by this section.  The minimum amount of benefit payments will be determined using the 2012 Individual Annuity Mortality Period Life Table with mortality projected on a full generation basis using Projection Scale G2 and 0.25% interest.

Benefit payments at the time of their commencement will not be less than those that would be provided by the application of the death proceeds to purchase a single consideration immediate annuity contract at purchase rates offered by Us at the time to the same class of annuitants whether the annuity benefits are payable in fixed or variable amounts or both.

Benefit payments are based on the year of annuity commencement, age and gender of the payee except where prohibited by state or federal laws.

# OWNER, BENEFICIARY, ASSIGNMENT

**OWNER**

The owner(s) is as named in the application unless You change ownership as provided in the Change of Owner Or Beneficiary provision.  As owner(s), You may exercise every right and privilege provided by Your policy, subject to the rights of any irrevocable beneficiary(ies).  Your ownership rights and privileges continue while Your policy is in force.  If an owner dies before the policy terminates, the surviving owner(s), if any, shall succeed to that person's ownership interest, unless otherwise specified.  If all owners die before the policy terminates, the policy will pass to the Insured.  With Our consent You may specify a different arrangement for contingent ownership.

**BENEFICIARY**

The beneficiary(ies) named in the application will receive the death proceeds unless You change the beneficiary designation as provided in the Change of Owner Or Beneficiary provision.  If any beneficiary dies before the Insured, We will pay the death proceeds to any surviving beneficiary(ies) according to terms of the beneficiary designation then in effect.  If no beneficiary(ies) survives the Insured, the death proceeds will be paid to the surviving owner(s) in equal percentages or, if applicable, to the last surviving owner's estate unless otherwise specified.

If the beneficiary is not a natural person, We may require proof the beneficiary is a validly existing entity immediately prior to making payment but no later than 180 days following the death of the Insured.  If proof cannot be provided, then the beneficiary will be deemed to NOT have survived the Insured's death.

**CHANGE OF OWNER OR BENEFICIARY**

You may change the owner(s) or beneficiary(ies) of this policy by sending Us Notice.  The beneficiary designation cannot be changed without the consent of any irrevocable beneficiary(ies).  Unless otherwise specified by You, the change is effective as of the date You signed the Notice.  However, the rights of the beneficiary and new Owner are subordinate to any payments made or actions taken by Us prior to Our receipt of the Notice.  We may require that You send Us this policy so We can record the change.  We may restrict changes in ownership in order to satisfy applicable laws or regulations.

**BENEFIT INSTRUCTIONS**

While the Insured is alive, You may send Us instructions for the payment of the death proceeds under one of the benefit payment options.  Such instructions, or change of instructions, must be in a format We specify.  We must receive and process the arrangement You choose before any payment is made.  If You change beneficiary(ies), prior benefit instructions are revoked.

**ASSIGNMENT**

You may assign Your policy by providing Us with an original or a certified copy of the assignment which must be in a form acceptable to Us.  We assume no responsibility for the assignment's validity.  An assignment does not change the ownership of the policy.  The rights of beneficiaries, whenever named, except for irrevocable beneficiaries named prior to Our receipt in Our Home Office of the assignment, become subordinate to those of the assignee.  Unless otherwise specified by You, the assignment becomes effective on the date the Notice of assignment is signed.  However, the rights of the assignee are subordinate to any payments made or actions taken by Us prior to Our receipt of the Notice of assignment.  We may restrict assignments in order to satisfy applicable laws or regulations.

# GENERAL INFORMATION

**THE CONTRACT**

This policy, the attached application(s) and riders or endorsements, any amendments to the application(s), any adjustment and reinstatement application(s), and the Data Pages make up the entire contract.  If We send You revised Data Pages, the Data Pages are to be attached to and made a part of this policy.  Where revised Data Pages conflict with the previously issued Data Pages, the revised Data Pages will govern. All statements made in the application(s), an adjustment application(s), or any amendments to the application(s) will be considered representations and not warranties.  No statement, unless made in an application(s), or amendments thereto, will be used to void Your policy (or void an adjustment in case of an adjustment application(s)) or to defend against a claim.

**ALTERATIONS**

This policy may be altered by mutual agreement between You and The Company, or as necessary to comply with applicable law.  Any alteration must be in writing and signed by one of Our corporate officers.  No one else, including the agent, may change the policy or waive any provisions.

**FACE AMOUNT ADJUSTMENTS**

The policy Face Amount will decrease as a result of:
1.  a partial term conversion as described in the Conversion Privilege section; or
2.  a requested Face Amount decrease.  Requested decreases may not be made during the first Policy Year.  The maximum cumulative Face Amount decrease that will be allowed in Policy Years two through five is 35% of the Initial Face Amount.

For either of the above Face Amount adjustments, the Face Amount may not be decreased below the Minimum Face Amount shown on the Data Pages.  The Face Amount may not be increased.  Any adjustment request is subject to Our approval.

Any excess premiums will be refunded.  We will send You revised Data Pages reflecting any adjustment in Face Amount.

**RISK RECLASSIFICATION**

You may request a change in risk class while Your policy is in force by sending Us Notice.  Any reclassification will be subject to Our then current underwriting guidelines.  Any new risk class will be a risk class We determine but will not be less favorable than the Insured's current risk class.  The risk reclassification will be effective on the Monthly Date following approval. We will send You revised Data Pages reflecting the new risk classification.

**INCONTESTABILITY**

With respect to material misstatements made in the initial application(s) for this policy, We will not contest this policy after the policy has been in force during the lifetime of the Insured for two years from the Policy Date.  With respect to material misstatements made in any subsequent application(s) or reinstatement application(s), We will not contest the coverage resulting from such application(s) after the coverage has been in force during the lifetime of the Insured for two years after the date of the change.  The time limits in this Incontestability provision do not apply to fraudulent misrepresentations, when permitted by applicable law in the state where this policy is delivered or issued for delivery, or to any attached rider that provides benefits in the event of total disability.

**MISSTATEMENT OF AGE OR GENDER**

If the age, or gender where applicable, of the Insured has been misstated, the death benefit will be the amount the premium would have purchased at the correct age, or gender where applicable, of the Insured.

**SUICIDE**

This policy's death proceeds will not be paid if the Insured dies by suicide, while sane or insane, within two years of the Policy Date.  Instead, We will return all premiums paid.  This amount will be paid to the beneficiary(ies) of the policy.

**CONFORMITY WITH INTERSTATE INSURANCE PRODUCT REGULATION COMMISSION STANDARDS**

This policy was approved under the authority of the Interstate Insurance Product Regulation Commission and issued under the Commission standards.  Any provision of this policy that on the provision's effective date is in conflict with the applicable Interstate Insurance Product Regulation Commission standards for this product type in effect as of the provision's effective date of Commission policy approval is hereby amended to conform to the applicable Interstate Insurance Product Regulation Commission standards in effect as of the provision's effective date of Commission policy approval.

**This page is left intentionally blank**

 **Principal**

**Principal Life Insurance Company**
**Principal National Life Insurance Company**
Members of Principal Financial Group®

Only one company is the issuer and responsible for obligations of any given
policy and is hereinafter referred to as "the Company".

P.O. Box 10431
Des Moines, IA  50306-0431

**Supplemental
Statement**

| Name |
| --- |
| Xavier Cannada |

| Date of Birth | Date Application Signed | File Number(s) |
| --- | --- | --- |
| ▮ / ▮ | 04/19/2021 | 9668246 |

☐ Yes   ☒ No   1. Have you consulted or been treated by a member of the medical profession for an illness or injury since the date of application? If yes, provide details. _____

_____

_____

_____

_____

☐ Yes   ☐ No   2. (Disability Insurance only) Have you changed jobs or employment since the date of application, or do you intend to change jobs or employment within the next 6 months? If yes, provide details.

_____

_____

_____

_____

☐ Yes   ☒ No   3. Have you applied for other life, disability or health insurance since the date of application? If yes, please provide details including carrier name, amount applied for, action taken, and the intent of the coverage that was applied for with the other carrier._____

_____

_____

_____

_____

I represent that all statements recorded above are true and complete to the best of my knowledge and belief and were correctly recorded before I signed my name below. I understand and agree that these statements will become part of my application and any policy issued on it.

Signature of Proposed Insured (If age 15 or over)
X *Xavier Cannada (Jun 9, 2021 11:11 EDT)*

Signature of Parent (If Proposed Insured is under age 18)
X

| Date | Signature of Licensed Agent/Broker/Representative | License Number |
| --- | --- | --- |
| | X *Michael Cellini* | |
| | Michael Cellini (Jun 10, 2021 12:27 CDT) | |

ICC17 AA 3443 N-1        (03/17)

Page 1 of 1

This completed document is for restricted use only. No part may be copied nor disclosed without prior consent of The Principal®.

 **Principal**

☐ **Principal Life Insurance Company**
☒ **Principal National Life Insurance Company**
*Members of Principal Financial Group®*

P.O. Box 10431
Des Moines, IA 50306-0431

*Individual*
*Life Insurance*
*Application*

Only one company is the issuer and responsible for obligations of any given policy and is hereinafter referred to as "the Company".

## PART A

### 1. PERSONAL INFORMATION ABOUT THE PROPOSED INSURED

| Name (First, Middle, Last)  Xavier Cannada | Sex  ☒ Male   ☐ Female | Date of Birth  ██████████ |
|---|---|---|
| Primary Residence Street Address  ███████████████ | Social Security Number  ███ - ██ - █████ | Birthplace (State, or Country if not U.S.)  GA |

| City, State, Zip Code  Atlanta, GA 30316 | Driver's License Number  None | State Issued |
|---|---|---|

| Phone Number  ( 470 ) 809-2589  ☐ Cell  ☒ Other | Occupation  See Part B for details |
|---|---|

| Email Address  imzaybo@gmail.com | Workplace Zip Code |
|---|---|

### 2. BASIC COVERAGE APPLIED FOR

Product 20 Year Term

Policy Planned Premium $ 32.59

Face Amount (excluding riders)
$ 500,000

Premium Frequency: (choose one)
☐ Annual  ☐ Semi Annual  ☐ Quarterly  ☐ Single Pay

Death Benefit Option if applicable:
☐ Option 1:  Level Face Amount
☐ Option 2:  Face + Accumulated/Policy Value
☐ Option 3:  Face + Premiums Paid Less
Partial Surrenders

☒ EFT (complete EFT form + attach sample check)
List Bill Number _____
☐ Annual  ☐ Semi Annual  ☐ Quarterly  ☐ Monthly
Unscheduled Premium $ _____

Payor:  Is someone other than the Proposed Insured or Owner going to be paying the premiums?
If yes, please provide:
Name and Address Benita Allen, ██████████████ , Conyers, GA 30013
Date of Birth ███████████   Tax ID Number ███████████

### 3. BENEFITS/RIDERS (Some riders are not available with all products)

☐ Children Term – Amount $ _____
☐ Conversion Extension
☐ Extended No Lapse Guarantee
☐ Four Year Term
☐ Salary Increase – Amount $ _____

☐ Supplemental Benefit
☐ Surrender Value Enhancement
☐ Waiver of Premium/Specified Premium
☐ Waiver of Monthly Deductions/Monthly Policy Charges
☐

### 4. BENEFICIARY INFORMATION. The requested personal information will help the Company locate your beneficiary(ies) at the time of a death claim.

| Primary Beneficiary  Benita Allen | SSN/TIN  ████████ | Relationship to Proposed Insured  Other |
|---|---|---|
| Address (Street, City, State, Zip)  ██████████████ , Conyers, GA 30013 | | |

| Primary Beneficiary | SSN/TIN | Relationship to Proposed Insured |
|---|---|---|
| Address (Street, City, State, Zip) | | |

| Contingent Beneficiary | SSN/TIN | Relationship to Proposed Insured |
|---|---|---|
| Address (Street, City, State, Zip) | | |

| Contingent Beneficiary | SSN/TIN | Relationship to Proposed Insured |
|---|---|---|
| Address (Street, City, State, Zip) | | |

| Proposed Insured Name  Xavier Cannada |
|---|

## 5. OWNERSHIP INFORMATION (Complete if different than the Insured)

| Owner Name (If trust, provide name of trust*) Benita Allen | Relationship to Proposed Insured Other |
|---|---|
| Primary Residence Street Address ████████ | Taxpayer Identification Number ████████ |
| City, State, Zip Code Conyers, GA 30013 | Date of Birth (If trust, provide date of trust*) ████████ |
| Email Address ballen8582@me.com | |
| **Joint Owner Name** | Relationship to Proposed Insured |
| Primary Residence Street Address | Taxpayer Identification Number |
| City, State, Zip Code | Date of Birth |
| Email Address | |
| **Contingent Owner Name** | Relationship to Proposed Insured |

**\* Submit copy of trust with this application.**

## 6. CHANGE OF OWNERSHIP

(a) Is there an intention that any group of investors will obtain any right, title, or interest in any policy issued on the life of the Proposed Insured(s) as a result of this application? ............ ☐ Yes  ☒ No
If yes, explain. _____

(b) Will you borrow money to pay the premiums for this policy or have someone else pay these premiums for you in return for an assignment of policy values back to them? ........... ☐ Yes  ☒ No
If yes, explain and complete premium financing acknowledgment form. _____

## 7. OTHER INSURANCE

(a) Is there other life insurance or annuities in force or applied for?........................................ ☐ Yes  ☒ No
(If yes, list all other life insurance or annuities in force or currently being applied for, even if sold, assigned, or viaticated.)

| Insured's Name | Company | Amount | Policy Number | Check if Pending | Year Issued | Primary Purpose |
|---|---|---|---|---|---|---|
| | | $ | | ☐ | | |
| | | $ | | ☐ | | |
| | | $ | | ☐ | | |
| | | $ | | ☐ | | |

(b) If coverage is pending, will all pending coverage be accepted? ........................................... ☐ Yes  ☐ No
If no, explain. _____

(c) Have you transferred or assigned any right, title, or interest in any life insurance or annuity contract other than absolute assignment for Internal Revenue Code 1035 exchange? ....... ☐ Yes  ☒ No
If yes, explain. _____

## 8. REPLACEMENT

(a) Will the insurance applied for with this application replace or affect any of the owner's other life or annuity contracts (including pending coverage provided with a binding receipt)? .......... ☐ Yes  ☒ No
If yes, list company name(s) and policy number(s) and provide necessary forms:
_____
_____

(b) Is this an Internal Revenue Code section 1035 exchange? ................................................. ☐ Yes  ☒ No

*This completed document is for restricted use only. No part may be copied nor disclosed without prior consent of The Principal®.*

Proposed Insured Name Xavier Cannada

## 9. MEDICAL QUESTION

Within the last ten years, has the Proposed Insured been treated for or been diagnosed by a member of the medical profession as having a heart condition, chest pain, stroke, cancer, diabetes, alcohol abuse or drug dependency? ............................................................ ☐ Yes  ☐ No
(If yes, explain below.)

Details (including dates and healthcare provider's name/address)

Not asked. See Part B for details.

**(Continue to next page)**

*This completed document is for restricted use only. No part may be copied nor disclosed without prior consent of The Principal®.*

 **Principal®**

**Principal Life Insurance Company**
**Principal National Life Insurance Company**
*Members of Principal Financial Group®*

P.O. Box 10431
Des Moines, IA 50306-0431

*Individual*
*Life and Disability*
*Insurance*
*Application*

Only one company is the issuer and responsible for obligations of any given policy and is hereinafter referred to as "the Company".

Proposed Insured  Xavier Cannada _____

Policy Number (If known) _____

## PART B
All references to "you" mean the Proposed Insured. If the Proposed Insured is a minor and the questions are being answered by a parent/guardian on behalf of the minor, "your child" will be substituted for "you" in the questions below.

## ACTIVITIES/HEALTH HABITS

1. Please respond to the following questions:

   a. In the last five years have you become a member of the military, military reserve, or National Guard, whether active or inactive, or have you entered into a written agreement to become a member at a future date?.................................................................... ☐ Yes ☒ No

   b. In the last five years have you piloted any type of aircraft, or do you intend to within the next two years? .................................................................................................................. ☐ Yes ☒ No

   c. In the last five years have you engaged in scuba/skin diving, motor sport racing, skydiving, bungee jumping, aerial sports, rock or mountain climbing, or martial arts, or do you intend to within the next two years? .......................................................... ☐ Yes ☒ No

   d. In the last two years have you lived outside the United States or Canada, or do you intend to within the next two years? (If yes, explain below) ......................................... ☐ Yes ☒ No

   e. In the last two years have you traveled outside the United States or Canada, or do you intend to within the next two years? (If yes, explain below) ................................. ☐ Yes ☒ No

2. In the last five years have you:

   a. been in a motor vehicle accident in which you were found to be at fault, pled guilty to or been convicted of driving while intoxicated or pled guilty to or been convicted of more than one moving violation? (If yes, explain below) ......................................................... ☐ Yes ☒ No

   b. pled guilty to or been convicted of a felony or misdemeanor? (If yes, explain below)........ ☐ Yes ☒ No

3. In the last ten years have you used any tobacco or nicotine products?................................ ☐ Yes ☒ No

   **(Indicate date last used and amount per day)**

   a. ☐ cigarettes _____  d. ☐ pipe _____

   b. ☐ cigars _____  e. ☐ chewing tobacco/snuff _____

   c. ☐ nicotine patch/gum _____  f. ☐ other _____

4. In the last ten years have you consumed alcoholic beverages?.......................................... ☐ Yes ☒ No

   If yes, date last used? _____ Number of drinks per week: _____

5. In the last ten years have you used cocaine, marijuana, methamphetamines, barbiturates or other controlled substances not prescribed by a physician? ...................................... ☐ Yes ☒ No

6. In the last ten years have you been advised by a member of the medical profession to limit or discontinue the use of alcohol or drugs; or sought or received counseling or medical treatment because of your alcohol or drug use? ...................................................... ☐ Yes ☒ No

## DETAILS TO QUESTIONS 1-6

| Quest. # | Include dates and details as requested above. |
|---|---|
|  | Please see the end of the form for response details |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

*This completed document is for restricted use only. No part may be copied nor disclosed without prior consent of The Principal®.*

 **Principal**®  **Principal Life Insurance Company**
**Principal National Life Insurance Company**
*Members of Principal Financial Group*®

P.O. Box 10431
Des Moines, IA 50306-0431

*Individual*
*Life and Disability*
*Insurance*
*Application*

Only one company is the issuer and responsible for obligations of any
given policy and is hereinafter referred to as "the Company".

Proposed Insured  Xavier Cannada

Policy Number (If known)

## PART B – (Continued)

### INCOME/OCCUPATION

**For Life, complete questions 7 and 8. For DI, complete questions 7-17. In all cases, Part B continues on the next page.**

7. Annual income from occupation  $30,000          Other Income  None
   Source of other income                           Net Worth (Assets – Liabilities) $ Unknown

8. Primary occupation  Construction                 mployer  Temp agency

. Current  mployment Information
   a.  ype of business or industry
   b.  ob title
   c.  hat are your job activities and percentage of time spent in each?


   d.  ow many hours do you usually work per week in your primary job?
   e.  otal number of employees:  ull-time _____  Part-time _____  Sub-contracted _____
   f.  ow many employees do you supervise? _____

10.  ow long have you been employed by your current employer? _____ (If less than two years,
     provide details below, e.g., employers, occupations and dates for last five years.)

11. Do you work out of your home? (If yes, how many hours per week? _____ )          ☐ Yes  ☐ No

12. Do you have any other part-time or full-time jobs? (If yes, explain below)............................  ☐ Yes  ☐ No

13. Are you actively at work on a full-time basis without medical restriction?
    (If no, explain below).......................................................................................................  ☐ Yes  ☐ No

14. Do you intend to change jobs or employment in the next 6 months? (If yes, explain below)  ☐ Yes  ☐ No

15.  ithin the last five years, have you requested or received any type of disability benefits
     (including workers' compensation and state disability) for an injury or illness?
     (If yes, explain below)..................................................................................................  ☐ Yes  ☐ No

16. Do you have an ownership interest in any business you work for?......................................  ☐ Yes  ☐ No
    If yes, ownership percentage _____  length of ownership _____

    ype of business:  ☐ C Corporation        ☐ S Corporation        ☐ Partnership
                       ☐ Sole Proprietorship  ☐  imited  iability Company  ☐ Other _____

17.  ave you, or any business owned in whole or part by you, ever been in bankruptcy or any
     similar proceedings? (If yes, provide date discharged, type and chapter) ............................  ☐ Yes  ☐ No

### DETAILS TO QUESTIONS 7-17

| Quest. # | Include dates and details as requested above. |
|----------|-----------------------------------------------|
|          | Please see the end of the form for response details |
|          |                                               |
|          |                                               |
|          |                                               |
|          |                                               |

*This completed document is for restricted use only. No part may be copied nor disclosed without prior consent of The Principal*®.

 **Principal**® | **Principal Life Insurance Company**
**Principal National Life Insurance Company**
*Members of Principal Financial Group*®

P.O. Box 10431
Des Moines, IA 50306-0431

*Individual*
*Life and Disability*
*Insurance*
*Application*

Only one company is the issuer and responsible for obligations of any
given policy and is hereinafter referred to as "the Company".

Proposed Insured  Xavier Cannada _____

Policy Number (If known) _____

PART B – (Continued)

**MEDICAL HISTORY (Provide details to yes answers, questions 18-20 below)**

18. In the last ten years, have you been treated for or been diagnosed by a member of the medical profession as having:

   a. high blood pressure, heart attack, chest pain, heart murmur, irregular heart beat, stroke, or any other disease or disorder of the heart or blood vessels? .......................... ☐ Yes ☒ No

   b. cancer or a tumor, cyst or growth? ..................................................................... ☐ Yes ☒ No

   c. asthma, bronchitis, emphysema, sleep apnea, tuberculosis or any other disease or disorder of the lungs or respiratory system? ................................................................. ☐ Yes ☒ No

   d. seizure, paralysis, headaches, multiple sclerosis or any other disease or disorder of the brain or nervous system? ................................................................................ ☐ Yes ☒ No

   e. chronic fatigue, stress, depression, anxiety or any other emotional or psychological disorder? .......................................................................................................... ☐ Yes ☒ No

   f. hepatitis, colitis, ulcer, cirrhosis, irritable bowel or any other disease or disorder of the liver, gallbladder, pancreas or digestive tract? .......................................................... ☐ Yes ☒ No

   g. diabetes, borderline diabetes, sugar in the urine, thyroid disorder or any other disease or disorder of the glandular system? ......................................................................... ☐ Yes ☒ No

   h. kidney stones, nephritis, any blood or protein in the urine, sexually transmitted disease, prostate disorder, breast disorder or any other disease or disorder of the urinary or reproductive system? ............................................................................ ☐ Yes ☒ No

   i. back or neck pain, disc problems, spinal sprain or strain, sciatica, arthritis, carpal tunnel syndrome, or any other disease or disorder of the bones, joints, or muscles? ...... ☐ Yes ☒ No

   j. any disease or disorder of the eyes, ears, nose, throat or skin? ..................................... ☐ Yes ☒ No

   k. any disease or disorder of the immune system, except those related to the Human Immunodeficiency Virus (AIDS virus)? ............................................................... ☐ Yes ☒ No

19. (DI Only) Are you currently pregnant or have you been diagnosed by a member of the medical profession as having complications of pregnancy in the last ten years? ................. ☐ Yes ☐ No

20. In the last ten years, have you been diagnosed by a member of the medical profession or tested positive for Human Immunodeficiency Virus (AIDS virus) or Acquired Immunodeficiency Syndrome (AIDS)? ................................................................... ☐ Yes ☒ No

**DETAILS TO QUESTIONS 18-20**

| Quest. # | For yes answers, include dates, details, diagnosis, types and results of treatment, healthcare provider's full name and address. |
|---|---|
|  | Please see the end of the form for response details |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

 **Principal**®

**Principal Life Insurance Company**
**Principal National Life Insurance Company**
*Members of Principal Financial Group*®

P.O. Box 10431
Des Moines, IA 50306-0431

*Individual Life and Disability Insurance Application*

Only one company is the issuer and responsible for obligations of any given policy and is hereinafter referred to as "the Company".

Proposed Insured  Xavier Cannada

▮▮▮▮▮▮▮▮▮▮. Policy Number (If known) _____

## PART B – (Continued)

### MEDICAL HISTORY (Provide details to yes answers, questions 21-26 below)

21. Who is your Primary Physician or medical facility you have seen in the last five years?   ☒ None

   a. Name _____  Phone Number _____

   Street _____  City _____  State ___  Zip _____

   b. Date last seen, reason and details _____

22. In the last five years:

   a. have you had any medical tests (excluding tests for HIV (AIDS Virus), hospitalization, illness or injury not provided in response to a previous question? (If yes, explain below) ........................................................................ ☐ Yes ☒ No

   b. have you consulted a doctor, chiropractor, psychiatrist, psychologist, counselor, therapist or other healthcare provider not provided in response to a previous question? (If yes, explain below) ........................................................ ☐ Yes ☒ No

23. Are you taking or have you been advised by a member of the medical profession in the last five years to take any medication or supplement (including medicinal marijuana) or treatment not provided in response to a previous question? (If yes, explain below) ............ ☐ Yes ☒ No

24. Current Ht. 5'10"   Wt. 160lb  Have you lost more than 10 lbs. in the last year? ....... ☐ Yes ☒ No

   If yes, _____ lbs./kgs. Provide details of weight loss.

25. a. Has either of your natural parents lived to at least age 60? ............................................. ☒ Yes ☐ No

   b. Has any of your natural parents or siblings been diagnosed or treated by a member of the medical profession for diabetes, cancer, stroke or heart disease? ............................ ☐ Yes ☒ No

   If yes, provide details (i.e., relationship, type of disease, age diagnosed, current age or age at death):

   _____
   _____

26. Have you ever had any life, health or disability insurance rated, modified or declined? (If yes, explain below) ................................................................................ ☐ Yes ☒ No

### DETAILS TO QUESTIONS 21-26

| Quest. # | Include dates and details as requested above. |
|---|---|
|  | Please see the end of the form for response details |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

*This completed document is for restricted use only. No part may be copied nor disclosed without prior consent of The Principal*®.

 **Principal®**

**Principal Life Insurance Company**
**Principal National Life Insurance Company**
*Members of Principal Financial Group®*

P.O. Box 10431
Des Moines, IA 50306-0431

*Individual*
*Life and Disability*
*Insurance*
*Application*

Only one company is the issuer and responsible for obligations of any
given policy and is hereinafter referred to as "the Company".

Proposed Insured Xavier Cannada

Policy Number (If known)

| Quest. # | Include dates and details as requested. |
|---|---|
| Q08 | Job duties: Wallpaper sander |



**Principal Life Insurance Company**
**Principal National Life Insurance Company**
*Members of Principal Financial Group®*

| P.O. Box 10431
| Des Moines, IA 50306-0431

*Individual*
*Life Insurance*
*Application*

Only one company is the issuer and responsible for obligations of any given policy and is hereinafter referred to as "the Company".

## PART C – AGREEMENT/AUTHORIZATION TO OBTAIN AND DISCLOSE INFORMATION

### AGREEMENT

**Statements In Application:** I represent that all statements in this application are true and complete to the best of my knowledge and belief and were correctly recorded before I signed my name below. I understand and agree that the statements in the application, including statements by the Proposed Insured in any medical questionnaire that becomes a part of this application, shall be the basis of any insurance issued. I also understand that misrepresentations can mean denial of an otherwise valid claim and rescission of the policy during the contestable period.

I understand that the policy(ies) delivered to me may be from a different issuer than what was listed in the application. I understand and agree that my acceptance of the policy(ies) shall be considered an amendment to this application. Each policy has only one issuing company and that issuer is solely responsible for the obligations under that policy.

**When Policy Coverage Becomes Effective:** I understand and agree that if a policy is issued as applied for with a premium deposit paid, policy coverage will become effective as of issuance. The Company agrees to pay any proceeds pursuant to policy terms subject to the acceptance of the proposed owner and signing of Part D, if applicable.

I understand and agree that if a policy is issued as other than applied for or without a premium deposit (C.O.D.), then policy coverage is not effective and the Company shall incur no policy liability unless:

1) A policy issued on this application has been physically delivered to and accepted by the owner and the first premium paid; and

2) At the time of such delivery and payment, the person to be insured is actually in the state of health and insurability represented in this application, medical questionnaire, or amendment that becomes a part of this application; and

3) The Part D or the Acknowledgment of Delivery form is signed by me and the Proposed Insured (if different than me) and dated at delivery.

If these conditions are met, the policy is deemed effective on the Policy Date stated in the policy data pages.

**Limitation of Authority:** I understand and agree that no agent, broker, licensed representative, telephone interviewer, or medical examiner has any authority to determine insurability, or to make, change or discharge any contract, or to waive any of the Company's rights. The Company's right to truthful and complete answers to all questions on this application and on any medical questionnaire that becomes a part of this application may not be waived. No knowledge of any fact on the part of any agent, broker, licensed representative, telephone interviewer, medical examiner or other person shall be considered knowledge of the Company unless such fact is stated in the application.

**If my employer or trustee is the owner and beneficiary on this application:** I agree to allow my employer to purchase insurance on my life. I understand that my employer or trustee will have all present and future rights of ownership and will also be the beneficiary of the policy, including any attached riders. There is no obligation, on my part, to pay the policy premiums. I acknowledge that as an employee, the employer or trustee has an insurable interest in my life. I understand and agree that my employer will be a direct or indirect beneficiary of all or a portion of the death proceeds payable under the policy and that my administrators, estate, heirs and assignees have no rights to the policy. I understand that the maximum face amount for which I could be insured at the time of issuance is subject to underwriting guidelines, but will not exceed 30 times my salary up to a maximum of $30,000,000. I further authorize my employer or trustee to increase (subject to the maximum indicated above) or decrease the amount of insurance on my life in the future without another consent from me and without further notice to me as long as I am employed by/associated with the employer. I consent to and authorize my employer, trustees, or their successors to continue to be the owner and beneficiary of this policy(ies) indefinitely including after the end of my employment by the employer.

### AUTHORIZATION

I authorize any insurance (or reinsuring) company, consumer reporting agency, governmental agency, insurance agent, broker, licensed representative, or any other organization, institution or person having personal information (including physical, mental, drug or alcohol use history) regarding me, the named proposed insured, to provide to the Company, its representatives or reinsurers, any such data. I authorize the Company or its representative to conduct a telephone interview in connection with my application for insurance.

I understand and agree to sign any authorization that is required to authorize any doctor, hospital, clinic, health care provider, laboratory, pharmacy benefit manager or any other institution having personal information (including physical, mental, drug or alcohol use history) regarding the named proposed insured to provide the Company, its representatives or reinsurers any such data. I understand that if I refuse to sign an authorization to release my complete medical record, the Company may not be able to process my application for life insurance coverage.

*This completed document is for restricted use only. No part may be copied nor disclosed without prior consent of The Principal®.*

**PART C – AGREEMENT/AUTHORIZATION TO OBTAIN AND DISCLOSE INFORMATION (CONTINUED)**

I authorize the Medical Information Bureau (MIB, Inc.) to furnish the above data to the Company, its representative or its reinsurers. I authorize the Company or its representative to release any such data to MIB, Inc. or as required by law. Notwithstanding any other provision in this form, the authorization to release data to the MIB, Inc. shall survive the termination of this form to the extent necessary to confirm, correct or update previously supplied data to the MIB, Inc. Data released may include results of my medical examination or tests requested by the Company. I understand that the data obtained by use of this authorization will be used by the Company to determine eligibility for insurance.

I agree that this authorization shall be valid for 24 months from the date of this application, unless an earlier date is required by applicable law in the state where the policy is delivered or issued for delivery. I may revoke this authorization for information not then obtained. Such revocation must be in writing. It will not be effective until received at the Company's Home Office. I agree a photocopy of this authorization is as valid as the original. I have received a copy of this authorization. I have received a copy of the "Notice of Insurance Information Practices," which includes notice required by any Fair Credit Reporting Act. It also describes MIB, Inc.

**C.O.D. or Advance Premium Paid:**

[x] This application is C.O.D. and I have not been given any Conditional Receipt with this application.

[ ] I have paid $ _____ as an advance premium with this application which is no less than one month's advance premium and I have been given the Life Insurance Conditional Receipt. In return I have read, understand, and agree to its terms.

[ ] I have submitted an Absolute Assignment form with this application and I have been given the Life Insurance 1035 Conditional Receipt. In return I have read, understand, and agree to its terms.

**Warning:** Any person who knowingly presents a false statement in an application for insurance may be guilty of a criminal offense and subject to penalties under state law.

---

**As a proposed owner of this contract, I certify under penalty of perjury that:**
1. The number shown on this form is my correct Taxpayer Identification Number (or I am waiting for a number to be issued to me), and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and
   Exempt Payee code (if any): _____
3. I am a U.S. Citizen or other U.S. Person (as defined in the instructions to Form W-9), and
4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.
   FATCA code (if any): _____

You must cross out item 2 above, if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return.

If any proposed owners are not a U.S. person or entity, submit a valid Form W-8BEN (foreign individual) or W-8BEN-E (foreign entity). If you are claiming treaty benefits, provide the required U.S. or foreign tax identifying number as required in the instructions. Failure to submit a valid Form W-8BEN or W-8BEN-E or to provide a required tax identifying number will result in mandatory withholding of 30% of the taxable portion of the payment.

**The IRS does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.**

---

**Signatures –** Please read all of the above Agreements, Authorizations, and Certification before signing below.

Signature of Proposed Insured (If age 15 or over)
X  *Xxxxxx (Apr 19, 2021 14:31 EDT)*

Signature of Parent (If Proposed Insured is under age 18 and Parent has not signed as Owner)
X

Signature of Owner(s), if other than Proposed Insured. If corporation, an officer other than the Proposed Insured must sign and include officer's title. If joint ownership or Trust, all joint owners/trustees must sign. If signing as a Trustee include `Trustee' as title.

| | Title |
|---|---|
| X  *(Apr 19, 2021 14:33 EDT)* | |
| X | Title |
| X | Title |

| Signed at: City | State | Date | Signature of Licensed Agent/Broker/Representative | License Number |
|---|---|---|---|---|
| | GA | | X Michael D Cellini Signed per producer's written authorization | 3308177 |

Printed Name of Agent/Broker/Representative
Michael D Cellini

*This completed document is for restricted use only. No part may be copied nor disclosed without prior consent of The Principal®.*

**Principal®**

☐ **Principal Life Insurance Company**
☒ **Principal National Life Insurance Company**
Members of Principal Financial Group®
Only one company is the issuer and responsible for obligations of any given
policy and is hereinafter referred to as "the Company".

P.O. Box 10431
Des Moines, IA  50306-0431

**Individual Life Insurance Application**

Proposed Insured  Xavier Cannada                                              D.O.B. ▮▮▮▮▮▮▮

## PART D  - AGREEMENT/ACKNOWLEDGMENT OF DELIVERY

**AGREEMENT: Statements In Application:** I have read all the questions and answers obtained during the application process, including Part B on the primary Proposed Insured. I represent all statements are true and complete to the best of my knowledge and belief and were correctly recorded before I signed my name below. I have also signed a copy of this Agreement/Acknowledgment of Delivery included with my policy. I understand and agree the statements in the application, including all of its parts and statements by the Proposed Insured in any medical questionnaire or supplement, will be the basis for and form a part of the policy. I understand that misrepresentations could mean denial of an otherwise valid claim and rescission of the policy during the contestable period.

**When Policy Coverage Becomes Effective:** I understand and agree that if a policy is issued as applied for with a premium deposit paid, policy coverage will become effective as of issuance. The Company agrees to pay any proceeds pursuant to policy terms subject to the acceptance of the proposed owner and signing of Part D, if applicable.

I understand and agree that if a policy is issued as other than applied for or without a premium deposit (C.O.D.), then policy coverage is not effective and the Company shall incur no policy liability unless:

1) A policy issued on this application has been physically delivered to and accepted by the owner and the first premium paid; and

2) At the time of such delivery and payment, the person to be insured is actually in the state of health and insurability represented in the application, medical questionnaire, or amendment that becomes a part of this application; and

3) This form is signed by me and the Proposed Insured (if different than me) and dated at delivery.

If these conditions are met, the policy is deemed effective on the Policy Date stated in the policy data pages.

**When an Adjustment Becomes Effective:** I understand and agree that if I apply to adjust my policy coverage, any adjustment approved by the Company is effective as of the Adjustment Date shown on the new data pages for the policy, provided that I and the proposed insured (if different than me) sign this form and any amendment form, if applicable, and return such forms to the Company within 30 days of the adjustment delivery date.

**Limitation of Authority:** I understand and agree no agent, broker, licensed representative, telephone interviewer, or medical examiner has any authority to determine insurability, or to make, change or discharge any contract, or to waive any of the Company's rights. The Company's right to truthful and complete answers to all questions on the application and on any medical questionnaire that becomes a part of this application may not be waived. No knowledge of any fact on the part of any agent, broker, licensed representative, telephone interviewer, medical examiner or other person shall be considered knowledge of the Company unless such fact is stated in the application.

**ACKNOWLEDGMENT OF DELIVERY:**

I acknowledge policy numbered  9668246                                              was delivered to me today and is based on the life of  Xavier Cannada                                              .

**INSURABILITY DATES:**

If a premium deposit was submitted with Part A and C of the application, I verify that all information in Part B of the application is true and complete to the best of my knowledge and belief and is correctly recorded as of 04/19/2021                .

If the application was submitted without a premium deposit (C.O.D.), I verify that all information in the Part A and B of the application including all parts and statements by the Proposed Insured in any medical questionnaire or supplement accurately reflects the Proposed Insured's health and insurability as of the date I sign this form.

**Warning:**  Any person who knowingly presents a false statement in an application for insurance may be guilty of a criminal offense and subject to penalties under state law.

| Signature of Proposed Insured (If age 15 or over) | Signature of Parent (if proposed insured is under age 18 and Parent has not signed as Owner) | |
|---|---|---|
| X  *[signature]* | X | |
| Signature of Owner(s) (If other than Proposed Insured). If corporation, an officer other than the Proposed Insured must sign, include officer's title. If joint ownership or Trust, all joint owners/trustees must sign, include 'Trustee' after signature. | | |
| X  *[signature]* | Title | |
| X | Title | |
| X | Title | |
| Date | | |

ICC17 AA 1900 N-1          (03/17)                                                        Last Page

This completed document is for restricted use only. No part may be copied nor disclosed without prior consent of The Principal®.

**This page is left intentionally blank**

**TERM LIFE INSURANCE POLICY.  Benefits payable at the death of the Insured prior to the Policy Expiration Date and while this policy is in force.  Premiums are level during the Initial Level Premium Period.  After the Initial Level Premium Period, premiums generally increase annually until the Policy Expiration Date, subject to guaranteed maximums.  This policy is renewable to the Policy Expiration Date and renewal premiums are payable during continuance of the policy.  There is a Conversion Privilege as described in the policy.  This policy is non-participating.**

**Life Insurance Buyer's Guide**

This guide can help you when you shop for life insurance. It discusses how to:

- Find a Policy That Meets Your Needs and Fits Your Budget
- Decide How Much Insurance You Need
- Make Informed Decisions When You Buy a Policy

Prepared by the National Association of Insurance Commissioners

The National Association of Insurance Commissioners is an association of state insurance regulatory officials. This association helps the various insurance departments to coordinate insurance laws for the benefit of all consumers.

This guide does not endorse any company or policy.

Reprinted by
Principal Life Insurance Company
Principal National Life Insurance Company
Home Office: Des Moines, Iowa

---

**IMPORTANT THINGS TO CONSIDER**

1. Review your own insurance needs and circumstances. Choose the kind of policy that has benefits that most closely fit your needs. Ask an agent or company to help you.

2. Be sure that you can handle premium payments. Can you afford the initial premium? If the premium increases later and you still need insurance, can you still afford it?

3. Don't sign an insurance application until you review it carefully to be sure all the answers are complete and accurate.

4. Don't buy life insurance unless you intend to stick with your plan. It may be very costly if you quit during the early years of the policy.

5. Don't drop one policy and buy another without a thorough study of the new policy and the one you have now. Replacing your insurance **may be costly.**

6. Read your policy carefully. Ask your agent or company about anything that is not clear to you.

7. Review your life insurance program with your agent or company every few years to keep up with the changes in your income and your needs.

---

**Buying Life Insurance**

When you buy life insurance, you want coverage that fits your needs.

**First,** decide how much you need--and for how long--and what you can afford to pay. Keep in mind the major reason you buy life insurance is to cover the financial effects of unexpected or untimely death. Life insurance can also be one of many ways you plan for the future.

**Next,** learn what kinds of policies will meet your needs and pick the one that best suits you.

**Then**, choose the combination of policy premium and benefits that emphasizes protection in case of early death, or benefits in case of long life, or a combination of both.

It makes good sense to ask a life insurance agent or company to help you. An agent can help you review your insurance needs and give you information about the available policies. If one kind of policy doesn't seem to fit your needs, ask about others.

This guide provides only basic information. You can get more facts from a life insurance agent or company or from your public library.

**What About the Policy You Have Now?**

If you are thinking about dropping a life insurance policy, here are some things you should consider:

- If you decide to replace your policy, don't cancel your old policy until you have received the new one. You then have a minimum period to review your new policy and decide if it is what you wanted.
- It may be costly to replace a policy. Much of what you paid in the early years of the policy you have now, paid for the company's cost of selling and issuing the policy. You may pay this type of cost again if you buy a new policy.
- Ask your tax advisor if dropping your policy could affect your income taxes.
- If you are older or your health has changed, premiums for the new policy will often be higher. You will not be able to buy a new policy if you are not insurable.
- You may have valuable rights and benefits in the policy you now have that are not in the new one.

- If the policy you have now no longer meets your needs, you may not have to replace it. You might be able to change your policy or add to it to get the coverage or benefits you now want.
- At least in the beginning, a policy may pay no benefits for some causes of death covered in the policy you have now.

In all cases, if you are thinking of buying a new policy, check with the agent or company that issued you the one you have now.  When you bought your old policy, you may have seen an illustration of the benefits of your policy.  Before replacing your policy, ask your agent or company for an updated illustration. Check to see how the policy has performed and what you might expect in the future, based on the amounts the company is paying now.

## How Much Do You Need?

Here are some questions to ask yourself:

- How much of the family income do I provide? If I were to die early, how would my survivors, especially my children, get by? Does anyone else depend on me financially, such as a parent, grandparent, brother or sister?
- Do I have children for whom I'd like to set aside money to finish their education in the event of my death?
- How will my family pay final expenses and repay debts after my death?
- Do I have family members or organizations to whom I would like to leave money?
- Will there be estate taxes to pay after my death?
- How will inflation affect future needs?

As you figure out what you have to meet these needs, count the life insurance you have now, including any group insurance where you work or veteran's insurance. Don't forget Social Security and pension plan survivor's benefits. Add other assets you have: savings, investments, real estate and personal property. Which assets would your family sell or cash in to pay expenses after your death?

## What Is the Right Kind of Life Insurance?

All policies are not the same. Some give coverage for your lifetime and others cover you for a specific number of years. Some build up cash values and others do not. Some policies combine different kinds of insurance, and others let you change from one kind of insurance to another. Some policies may offer other benefits while you are still living. Your choice should be based on your needs and what you can afford.

There are two basic types of life insurance: **term insurance** and **cash value insurance**. Term insurance generally has lower premiums in the early years, but does not build up cash values that you can use in the future. You may combine cash value life insurance with term insurance for the period of your greatest need for life insurance to replace income.

**Term Insurance** covers you for a term of one or more years. It pays a death benefit only if you die in that term. Term insurance generally offers the largest insurance protection for your premium dollar. It generally does not build up cash value.

You can renew most term insurance policies for one or more terms even if your health has changed.  Each time you renew the policy for a new term, premiums may be higher. Ask what the premiums will be if you continue to renew the policy. Also ask if you will lose the right to renew the policy at some age. For a higher premium, some companies will give you the right to keep the policy in force for a guaranteed period at the same price each year. At the end of that time you may need to pass a physical examination to continue coverage, and premiums may increase.

You may be able to trade many term insurance policies for a cash value policy during a conversion period--even if you are not in good health. Premiums for the new policy will be higher than you have been paying for the term insurance.

**Cash Value Life Insurance** is a type of insurance where the premiums charged are higher at the beginning than they would be for the same amount of term insurance. The part of the premium that is not used for the cost of insurance is invested by the company and builds up a cash value that may be used in a variety of ways. You may borrow against a policy's cash value by taking a policy loan. If you don't pay back the loan and the interest on it, the amount you owe will be subtracted from the benefits when you die, or from the cash value if you stop paying premiums and take out the remaining cash value. You can also use your cash value to keep insurance protection for a limited time or to buy a reduced amount without having to pay more premiums. You also can use the cash value to increase your income in retirement or to help pay for needs such as a child's tuition without canceling the policy. However, to build up this cash value, you must pay higher premiums in the earlier years of the policy. Cash value life insurance may be one of several types; whole life, universal life and variable life are all types of cash value insurance.

**Whole Life Insurance** covers you for as long as you live if your premiums are paid. You generally pay the same amount in premiums for as long as you live. When you first take out the policy, premiums can be several times higher than you would pay initially for the same amount of term insurance. But they are smaller than the premiums you would eventually pay if you were to keep renewing a term policy until your later years.

Some whole life policies let you pay premiums for a shorter period such as 20 years, or until age 65. Premiums for these policies are higher since the premium payments are made during a shorter period.

**Universal Life Insurance** is a kind of flexible policy that lets you vary your premium payments. You can also adjust the face amount of your coverage. Increases may require proof that you qualify for the new death benefit. The premiums you pay (less expense charges) go into a policy account that earns interest. Charges are deducted from the account. If your yearly premium payment plus the interest your account earns is less than the charges, your account value will become lower. If it keeps dropping, eventually your coverage will end. To prevent that, you may need to start making premium payments, or increase your premium payments, or lower your death benefits. Even if there is enough in your account to pay the premiums, continuing to pay premiums yourself means that you build up more cash value.

**Variable Life Insurance** is a kind of insurance where the death benefits and cash values depend on the investment performance of one or more separate accounts, which may be invested in mutual funds or other investments allowed under the policy. Be sure to get the prospectus from the company when buying this kind of policy and STUDY IT CAREFULLY. You will have higher death benefits and cash value if the underlying investments do well. Your benefits and cash value will be lower or may disappear if the investments you chose didn't do as well as you expected. You may pay an extra premium for a guaranteed death benefit.

**Life Insurance Illustrations**

You may be thinking of buying a policy where cash values, death benefits, dividends or premiums may vary based on events or situations the company does not guarantee (such as interest rates). If so, you may get an illustration from the agent or company that helps explain how the policy works. The illustration will show how the benefits that are not guaranteed will change as interest rates and other factors change. The illustration will show you what the company guarantees. It will also show you what **could** happen in the future. Remember that nobody knows what will happen in the future. You should be ready to adjust your financial plans if the cash value doesn't increase as quickly as shown in the illustration. You will be asked to sign a statement that says you understand that some of the numbers in the illustration are not guaranteed.

**Finding a Good Value in Life Insurance**

After you have decided which kind of insurance is best for you, compare similar policies from different companies to find which one is likely to give you the best value for your money. A simple comparison of the premiums is not enough. There are other things to consider. For example:

- Do premiums or benefits vary from year to year?
- How much do the benefits build up in the policy?
- What part of the premiums or benefits is not guaranteed?
- What is the effect of interest on money paid and received at different times on the policy?

Once you have decided which type of policy to buy, you can use a cost comparison index to help you compare similar policies. Life insurance agents or companies can give you information about several different kinds of indexes that each work a little differently. One type helps you compare the costs between two policies if you give up the policy and take out the cash value. Another helps you compare your costs if you don't give up your policy before its coverage ends. Some help you decide what kind of questions to ask the agent about the numbers used in the illustration. Each index is useful in some ways, but they all have shortcomings. Ask your agent which will be most helpful to you. Regardless of which index you use, compare index numbers only for similar policies--those that offer basically the same benefits, with premiums payable for the same length of time.

Remember that no one company offers the lowest cost of **all** ages for **all** kinds and amounts of insurance. You should also consider other factors:

- How quickly does the cash value grow? Some policies have low cash values in the early years that build quickly later on. Other policies have a more level cash value build-up. A year-by-year display of values and benefits can be very helpful. (The agent or company will give you a policy summary or an illustration that will show benefits and premiums for selected years.)
- Are there special policy features that particularly suit your needs?
- How are nonguaranteed values calculated? For example, interest rates are important in determining policy returns. In some companies increases reflect the average interest earnings on all of that company's policies regardless of when issued. In others, the return for policies issued in a recent year, or a group of years, reflects the interest earnings on that group of policies; in this case, amounts paid are likely to change more rapidly when interest rates change.

 **Principal**

**Principal Life Insurance Company**
**Principal National Life Insurance Company**
*Members of Principal Financial Group®*
P.O. Box 10431
Des Moines, IA 50306-0431

## Addendum To Life Insurance Buyer's Guide

After you have decided which kind of life insurance fits your needs, look for a good buy. Your chances of finding a good buy are better if you use two types of index numbers that have been developed to aid in shopping for life insurance.  One is called the "Surrender Cost Index" and the other is the "Net Payment Cost Index."  It will be worth your time to try to understand how these indexes are used, but in any event, use them only for comparing the relative costs of similar policies. LOOK FOR POLICIES WITH LOW COST INDEX NUMBERS.

What is Cost?

"Cost" is the difference between what you pay and what you get back. If you pay a premium for life insurance and get nothing back, your cost for the death protection is the premium.  If you pay a premium and get something back later on, such as a cash value, your cost is smaller than the premium.

The cost of some policies can also be reduced by dividends; these are called "participating" policies. Companies may tell you what their current dividends are, but the size of future dividends is unknown today and cannot be guaranteed. Dividends actually paid are set each year by the company.

Some policies do not pay dividends. These are called "guaranteed cost" or "nonparticipating" policies. Every feature of a guaranteed cost policy is fixed so that you know in advance what your future cost will be.

The premiums and cash values of a participating policy are guaranteed, but the dividends are not. Premiums for participating policies are typically higher than for guaranteed cost policies, but the cost to you may be higher or lower, depending on the dividends actually paid. What are Cost Indexes?

In order to compare the cost of policies, you need to look at:
1.  Premiums
2.  Cash Values
3.  Dividends

Cost Indexes use one or more of these factors to give you a convenient way to compare relative costs of similar policies. When you compare costs, an adjustment must be made to take into account that money is paid and received at different times. It is not enough to just add up the premiums you will pay and to subtract the cash values and dividends you expect to get back. These indexes take care of the arithmetic for you. Instead of having to add, subtract and multiply and divide many numbers yourself, you just compare the index numbers which you can get from life insurance agents and companies.

1.  **Life Insurance Surrender Cost Index**. This index is useful if you consider the level of the cash values to be of primary importance to you.  It helps you compare costs if at some future point in time, such as 10 or 20 years, you were to surrender the policy and take its cash value.

DD 2714                                     Page 1 of 2

2. **Life Insurance Net Payment Cost Index**  This index is useful if your main concern is the benefits that are to be paid at your death and if the level of cash values is of secondary importance to you. It helps you compare costs at some future point in time, such as 10 or 20 years, if you continue paying premiums on your policy and do not take its cash value.

There is another number called the E uivalent Level Annual Dividend. It shows the part dividends play in determining the cost index of a participating policy. Adding a policy's E uivalent Level Annual Dividend to its cost index allows you to compare total costs of similar policies before deducting dividends. However, if you make any cost comparisons of a participating policy with a non-participating policy, remember that the total cost of the participating policy will be reduced by dividends, but the cost of the non-participating policy will not change.

How Do I Use Cost Indexes?

The most important thing to remember when using cost indexes is that a policy with a small index number is generally a better buy than a comparable policy with a larger index number. The following rules are also important:

1. Cost comparisons should only be made between similar plans of life insurance. Similar plans are those which provide essentially the same basic benefits and re uire premium payments for approximately the same period of time. The closer policies are to being identical, the more reliable the cost comparison will be.

2. Compare index numbers only for the kind of policy, for your age and for the amount you intend to buy. Since no one company offers the lowest cost for all types of insurance at all ages and for all amounts of insurance, it is important that you get the indexes for the actual policy, age and amount which you intend to buy. Just because a Shopper's Guide tells you that one company's policy is a good buy for a particular age and amount, you should not assume that all of that company's policies are equally good buys.

3. Small differences in index numbers could be offset by other policy features, or differences in the  uality of service you may expect from the company or its agent. Therefore, when you find small differences in cost indexes, your choice should be based on something other than cost.

4. In any event, you will need other information on which to base your purchase decision. Be sure you can afford the premiums, and that you understand its cash values, dividends and death benefits. You should also make a judgment on how well the life insurance company or agent will provide service in the future to you as a policyholder.

5. These life insurance cost indexes apply to new policies and should not be used to determine whether you should drop a policy you have already owned for a while, in favor of a new one. If such a replacement is suggested, you should ask for information from the company which issued the old policy before you take action.



# PRIVACY NOTICE

This Notice is provided on behalf of the following
companies of the Principal Financial Group®:
Principal Life Insurance Company
Principal National Life Insurance Company
Principal Trust Company
Principal Life Insurance Company Variable Life Separate Account
Principal National Life Insurance Company Variable Life Separate Account
Principal Life Insurance Company Separate Account B
Employers Dental Services, Inc. / Principal Dental Services, Inc.

## Protecting your privacy

This Notice is required by law. It tells how we handle personal information.

This Notice applies to:

- people who own or apply for our products or services for personal use.
- employee benefit plan participants and beneficiaries.

Please note that in this Notice, "you" refers to <u>only</u> these people. The Notice does <u>not</u> apply to an employer plan sponsor or group policyholder.

## We protect information we collect about you

We follow strict standards to safeguard personal information. These standards include limiting access to data and regularly testing our security technology.

## How we collect information

We collect data about you as we do business with you. Some of the sources of this data are as follows:

- **Information we obtain when you apply or enroll for products or services.** You may provide facts such as your  name; address; Social Security number; financial status; and, when applicable, health history.
- **Information we obtain from others.** This may include claim reports, medical records, when applicable, credit reports, property values and similar data.
- **Information we obtain through our transactions and experience with you.** This includes your claims history, payment and investment records, and account values and balances.
- **Information we obtain through the Internet.** This includes data from online forms you complete. It also includes data we collect when you visit our websites.

## How we share information

We may share personal information about you or about former customers, plan participants or beneficiaries among companies within the Principal Financial Group or with others for several reasons, including:

- to assist us in servicing your account;
- to help design and improve products;
- to protect against potential identity theft or unauthorized transactions;
- in response to a subpoena or for other legal purposes;
- to prevent fraud;
- to comply with inquiries from government agencies or other regulators;
- with others that service your account, or that perform services on our behalf; and
- with your consent, at your request or as allowed by law.

## Medical information

We do not share medical information among companies of the Principal Financial Group or with others except:

- when needed to service your policies, accounts, claims or contracts;
- when laws protecting your privacy permit it; or
- when you consent.

## Accuracy of information

We strive for accurate records. Please tell us if you receive any incorrect materials from us. We will make the appropriate changes.

**Companies within the Principal Financial Group**

Several companies within the Principal Financial Group are listed at the top of this Notice. The companies of the Principal Financial Group are leading providers of retirement savings, investment, and insurance products.

**More information**

This Privacy Notice governs information that you provide to Principal (or that we otherwise receive) when you apply for or receive a product or service used primarily for personal, family or household purposes. We may collect additional information depending on the nature of your relationship with Principal or if you interact with us through our website or other digital technologies. Details about how we protect and use this additional information, including information about your privacy rights under California law such as the California Consumer Privacy Act, are available online at www.principal.com/privacy-policies.

If you do not have access to www.principal.com/privacy-policies, please contact us at 1-800-986-3343 to have a copy mailed to you.

You may write to us if you have questions about our Privacy Notice. Contact our Privacy Officer at P.O. Box 14582, Des Moines, Iowa 50306-3582.

*Receipt of this notice does not mean your application has been accepted.*

*We may change our privacy practices at times. We will give you a revised notice when required by law.*

*Our privacy practices comply with all applicable laws. If a state's privacy laws are more restrictive than those stated in this Notice, we comply with those laws.*

*Your agent, broker, registered representative, consultant or advisor may have a different privacy policy.*

**Principal**®

 **Principal®**

**Principal National Life Insurance Company**
**Principal Life Insurance Company**
*Members of Principal Financial Group®*

P.O. Box 10431
Des Moines, IA 50306-0431

***eDelivery Payment Options***

Only one company is the issuer and responsible for obligations of any given policy and is hereinafter referred to as "the Company".

**Policy Number:** 9668246

## Choose your Payment Frequency

☒ ʼAnnual          $235.49

☐ ʼSemi-Annual  $120.69

☐ ʼQuarterly      $61.82

☐ Monthly         $20.25          We will continue to draft this amount for future recurring monthly premiums. Premium notices will not be mailed.

☐ **Draft for future recurring premiums**          Check this box to have future recurring quarterly, semi-annual, or annual premiums drafted from your account. Premium notices will be mailed.

## Choose your Payment Method

☒ **Option 1 – EFT from your bank account**

Pay the initial premium (or shortage) due based on your Policy Effective Date by an Electronic Funds Transfer (EFT).

*Name of Financial Institution   Fort sill national bank

*Type of Account:

☒ **Checking**     ☐ **Savings**

*Account Ownership:

☒ **Personal**     ☐ **Organization**

████████████████████████████████████████████

(9 digits, typically located on bottom left of check)          (Include all preceding zeros on your account number)

We are unable to draw funds if any of the required fields marked with an asterisk (*) are left blank, incomplete, or if this form is not signed. Any Conditional Receipt coverage will be void. Refer to the Conditional Receipt (AA 3432) for terms and conditions.

I understand if the withdrawal requests are dishonored by the Company, whether with or without cause, that the Company shall be under no liability. This authorization will remain in effect until cancelled either by myself, the Company or the financial institution. Any applicable refunds will be refunded back to the policy owner regardless of who the payee is.

X _____          _____
*Bank Account Holder Signature          Date

☐ **Option 2 – EFT from another Payor's bank account**

Principal will email this form directly to the Payor to complete.

Name of Payor   _____

Email address of Payor   _____

X _____          _____
Policy Owner Signature          Date

*Insurance products from Principal Financial Group® (Principal®) are issued by*
*Principal National Life Insurance Company (except in New York) and Principal Life Insurance Company.*
*This completed document is for restricted use only. No part may be copied nor disclosed without prior consent of Principal®.*

Delivery requirements included within the policy:

- Part D-Sign on Delivery
- Cash on Delivery          $20.25
- Supplemental Statement of Health