IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GREGORY SMITH-SPIERS,

    Plaintiff,

    Civil Action File No.

vs.

SGK ENTERTAINMENT
GROUP, LLC d/b/a THE DAILY
DRAFT and SEAN DAILY,

    Defendants.

## COMPLAINT

Plaintiff Gregory Smith-Spiers ("Smith-Spiers") brings this Complaint against Defendants SGK Entertainment Group, LLC d/b/a The Daily Draft ("SGK") and Ahmed Daily ("Daily") (collectively referred to as "Defendants") as follows:

**INTRODUCTION**

1.

This is a wage and hour case.

2.

SGK operates a bar and restaurant in Woodstock, Georgia known as The Daily Draft.

3.

SGK employed Smith-Spiers as a bartender and later as a key holder and bar manager from approximately October 21, 2022 to March 21, 2023. During that time SGK failed to compensate Smith-Spiers for all hours he worked; failed to pay him

minimum wages; and failed to compensate him at one-and-one-half times his regular hourly rate for all hours he worked in excess of 40 hours in a work week.

### 4.

SGK terminated Smith-Spiers' employment in retaliation for his requests to be properly paid minimum and overtime wages in accordance with the FLSA.

### 5.

In addition to his federal causes of action, Smith-Spiers asserts pendent state law claims for (1) breach of contract, (2) quantum meruit and (3) promissory estoppel which arise out of the same set of operating facts as his federal claims, *i.e.* SGK's failure to pay Smith-Spiers any wages for his "working interview" and three days of training; and failure to pay him at agreed upon rates for all hours worked from January 15, 2023 through March 21, 2023.

### (a) **Jurisdiction and Venue**

### 6.

This Court has subject matter jurisdiction over the present action under Article III, § 2 of the United States Constitution, FLSA §16(b), 29 U.S.C. § 216(b) and 28 U. S.C § 1331, because this case arises under the FLSA, a federal statute that affects interstate commerce.

### 7.

Venue properly lies in the Northern District of Georgia under 28 U.S.C. § 1391 because SGK conducts business in Georgia, within this judicial district and a

substantial portion of the events giving rise to the claims herein arose in this judicial district.

**(b) The Parties**

8.

Smith-Spiers resides in Cobb County, Georgia.

9.

SGK employed Smith-Spiers as a bartender and later as a key holder and bar manager from approximately October 21, 2022 through March 21, 2023.

10.

At all times material hereto, Smith-Spiers was an "employee" of SGK within the meaning of the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

11.

SGK employed Smith-Spiers at The Daily Draft located at 8594 Main Street, Woodstock, Georgia.

12.

SGK is a domestic limited liability company organized under the laws of the State of Georgia.

13.

At all times material hereto, SGK was an "employer" of Smith-Spiers within the meaning of FLSA § 3(d), 29 U.S.C. §203(d).

14.

SGK is subject to the personal jurisdiction of this Court.

15.

SGK may be served with process through its registered agent Sean R. Daily 647 Hendon Road, Woodstock, GA, 30339.

16.

At all times material hereto, Daily was an owner and/or manager of SGK.

17.

At all times material hereto, Daily was a managing member of SGK.

18.

At all times material hereto, Smith-Spiers was an "employee" of Daily within the meaning of the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

19.

At all times material hereto, Daily was an "employer" of Smith-Spiers within the meaning of FLSA § 3(d), 29 U.S.C. §203(d).

20.

Daily is subject to the personal jurisdiction of this Court.

21.

Daily may be served with process Daily 647 Hendon Road, Woodstock, GA, 30339 or wherever he may be located.

22.

At all times material hereto, Smith-Spiers was "engaged in commerce" as an individual employee of SGK within the meaning of 3(s)(1(A) and (B).

**(c) Enterprise Coverage:**

23.

At all times material hereto, SGK was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA, 29 U.S.C. § 203(s)(1)(A)(i) and (ii) and (s)(1)(B).

24.

During 2022, SGK had two or more "employees engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

25.

During 2023, SGK had two or more "employees engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

26.

During 2022, SGK had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." within the meaning of 29 U.S.C. § 203(s)(1)(A).

27.

During 2023, SGK had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." within the meaning of 29 U.S.C. § 203(s)(1)(A).

28.

During 2022, SGK had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

29.

During 2023, SGK had or is expected to have an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

30.

At all times material hereto, SGK has been an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of FLSA § 3(s)(1), 29 U.S.C. § 203(s)(1).

31.

At all times material hereto, in the course of his duties for SGK, Smith-Spiers used or handled the following, among others, instruments of interstate commerce: computers, cash, cash registers, credit cards, credit card machines, office furniture, office supplies, dishware, glassware, food, beer, wine, and liquor.

**(d) Daily is an employer under the FLSA**

32.

At all times material hereto, Daily was an owner and/or manager of SGK.

33.

At all times material hereto, Daily had authority to make business decisions on behalf of SGK.

34.

At all times material hereto, Daily exercised operational control over Smith-Spiers' work activities.

35.

At all times material hereto, Daily managed the day-to-day operation of SGK.

36.

At all times material hereto, SGK vested Daily with supervisory authority over Smith-Spiers.

37.

At all times material hereto, Daily exercised supervisory authority over Smith-Spiers.

38.

At all times material hereto, Daily scheduled Smith-Spiers' working hours or supervised the scheduling of Smith-Spiers' working hours.

39.

At all times material hereto, Daily exercised authority and supervision over Smith-Spiers' compensation.

40.

At all times material hereto, Daily had authority to hire employees on behalf of SGK.

41.

At all times material hereto, Daily had authority to terminate employees of SGK.

42.

At all times material hereto, Daily had authority to discipline employees of SGK.

43.

At all times material hereto, Daily acted directly or indirectly in the interest of SGK in relation to Smith-Spiers.

44.

At all times material hereto, Daily was an "employer" of Smith-Spiers within the meaning of 29 U.S.C. § 203(d).

**(e) Lack of FLSA Exemptions**

45.

At all times material hereto, Smith-Spiers was not exempt from the minimum wage requirements of the FLSA by reason of any exemption.

46.

At all times material hereto, Smith-Spiers was not exempt from the maximum hours requirements of the FLSA by reason of any exemption.

47.

At all times material hereto, SGK did not employ Smith-Spiers in a bona fide professional capacity within the meaning of 29 USC § 213 (a)(1).

48.

At all times material hereto, SGK did not employ Smith-Spiers in a bona fide administrative capacity within the meaning of 29 USC § 213 (a)(1).

49.

At all times material hereto, SGK did not employ Smith-Spiers in a bona fide executive capacity within the meaning of 29 USC § 213 (a)(1).

50.

At all times material hereto, SGK did not employ Smith-Spiers in the capacity of an "outside salesman" so as to be exempt from the minimum and maximum hour requirements of 29 USC § 213 (a)(1).

51.

SGK has failed to meet the requirements for any of the exemptions from the application of the minimum or overtime wage requirements of the Fair Labor Standards Act set forth in 29 U.S.C. § 213.

**(f) Additional Factual Allegations**

52.

At all times during the Relevant Time Period, SGK failed to compensate Smith-Spiers on a salaried basis.

53.

At all times during the Relevant Time Period, SGK compensated Smith-Spiers on an hourly rate basis.

54.

SGK employed Smith-Spiers as a bartender from approximately October 21, 2022 through January 14, 2023.

55.

At all times during the period from October 21, 2022 through January 14, 2023, SGK compensated Smith-Spiers at a rate of $2.13 plus tips.

56.

At all times during the period from October 21, 2022 through January 14, 2023, Smith-Spiers regularly worked 30-40 hours per week.

57.

SGK employed Smith-Spiers as a key holder and bar manager from approximately January 15, 2023 through March 21, 2023.

58.

On or about January 14, 2023, Defendants had a meeting with staff wherein Smith-Spiers' position was changed to key holder and bar manager.

59.

During the January 14, 2023 meeting, Defendants advised Smith-Spiers that his rate of pay would vary depending on the duties he performed during each work shift.

60.

During the January 14, 2023 meeting, Defendants advised Smith-Spiers that he would be paid at a rate of $12.00 on a tipped shift wherein he performed bartending duties; $16.00 on a non-tipped shift wherein he did not perform bartending duties but performed managerial duties such as taking inventory, ordering and reorganizing; and $18.00 when he worked as the shift manager.

61.

Throughout the period from January 15, 2023 through March 21, 2023, Defendant Daily's daughter, Mia Daily, often accessed Defendants' point of sale system and reduced Smith-Spiers' pay rate.

62.

Throughout the period from January 15, 2023 through March 21, 2023, Defendant Daily's daughter, Mia Daily, accessed Defendants' point of sale system and changed Smith-Spiers' pay rate to $2.13 per hour, including for shifts wherein he received no tips.

63.

Throughout the period from January 15, 2023 through March 21, 2023, Defendants failed to compensate Smith-Spiers for approximately 90 hours at the agreed upon rate of $16.00 per hour for shifts wherein he did not receive any tips.

64.

Throughout the period from January 15, 2023 through March 21, 2023, there were several days wherein Smith-Spiers could not properly clock-in for his shifts.

65.

Throughout the period from January 15, 2023 through March 21, 2023, Smith-Spiers was assured by SGK's management that they would clock him in and/or add the corrected time to his next paycheck.

66.

Throughout the period from January 15, 2023 through March 21, 2023, Defendants failed to compensate Smith-Spiers for all hours wherein he could not properly clock-in for his scheduled shifts.

67.

During the period from January 14, 2023 through March 21, 2023, regularly worked 45-52 hours per week.

68.

During the Relevant Time Period, Defendants were aware of the actual number of hours Smith-Spiers worked during each work week.

69.

During the Relevant Time Period, Defendants knew or should have known that the FLSA applied to Smith-Spiers.

70.

Defendants knew or should have known that the Minimum Wage requirements of the FLSA applied to Smith-Spiers.

71.

Section 6 of the FLSA (29 U.S.C. § 206) requires that Defendants compensate Smith-Spiers at a rate of no less than $7.25 per hour for every hour worked in a work week.

72.

Defendants knew or should have known that the Section 6 of the FLSA requires that Defendants compensate Smith-Spiers at a rate of at least $7.25 per hour for every hour he worked in a work week.

73.

During his first week of employment in October 2022, Defendants failed to compensate Smith-Spiers at a rate of $7.25 per hour for each hour he worked.

74.

At all times relevant from January 15, 2023 through March 21, 2023, Defendants failed to compensate Smith-Spiers at a rate of $7.25 per hour for each hour he worked.

75.

At all times relevant from January 15, 2023 through March 21, 2023, Defendants willfully failed to compensate Smith-Spiers at a rate of $7.25 per hour for each hour he worked.

76.

Defendants knew or should have known that the Maximum Hours requirements of the FLSA applied to Smith-Spiers.

77.

Section 7 of the FLSA, 29 U.S.C. § 207, requires that Defendants compensate Smith-Spiers at a rate of one–and–one–half times his regular rate for all time worked in excess of forty (40) hours in a work week.

78.

Defendants knew or should have known that the Section 7 of the FLSA requires that Defendants compensate Smith-Spiers a premium for all time worked in excess of forty hours in a given workweek.

79.

During the period from January 15, 2023 through March 21, 2023, Smith-Spiers regularly worked more than forty (40) hours during a given workweek.

80.

During the period from January 15, 2023 through March 21, 2023, Defendants failed to pay Smith-Spiers at one-and-one-half times his regular rate for time worked in excess of forty (40) hours in any and all workweek.

81.

Upon information and belief, in failing or refusing to pay Smith-Spiers minimum and overtime wages as required by the FLSA, Defendants have not relied on any letter ruling from the Department of Labor indicating that Smith-Spiers was not entitled to minimum and/or overtime wages.

82.

Defendants' conduct constitutes willful violations of 29 U.S.C. § 206 and § 207 of the FLSA, entitling Smith-Spiers to all relief afforded under the FLSA, including the award of liquidated damages.

83.

Defendants further failed to pay Smith-Spiers any wages for a "working interview" on October 21, 2022 and for three (3) days of training thereafter during his first week of employment in October 2022.

84.

During the January 14, 2023 staff meeting, Defendants promised to pay Smith-Spiers at a rate of $12.00, $16.00 or $18.00 depending on the duties he performed during each work shift.

85.

During the period from January 15, 2023 through March 21, 2023, Defendants failed to pay Smith-Spiers at the promised rates of $12.00, $16.00 or $18.00 for each shift he worked.

86.

Beginning in or about February 2023, Smith-Spiers complained to Defendants regarding his unpaid minimum and overtime wages.

87.

On March 21, 2023, Daily terminated Smith-Spiers' employment.

88.

On March 21, 2023, Daily terminated Smith-Spiers' employment in retaliation for requesting to be properly compensated in accordance with the FLSA.

## COUNT 1 - FAILURE TO PAY MINIMUM WAGE

89.

The allegations in paragraphs 1-88 above are incorporated herein by reference.

90.

At all times material hereto, Smith-Spiers was an employee covered by the FLSA and entitled to the minimum wage protections set forth in FLSA § 6(a), 29 U.S.C. § 206(a).

91.

During Smith-Spiers first week of employment with Defendants, Defendants failed to pay Smith-Spiers any wages.

92.

During his first week of employment in October 2022, Defendants failed to compensate Smith-Spiers at an hourly rate above or equal to the minimum wage as established in accordance with 29 U.S.C. § 206.

93.

During his first week of employment in October 2022, Defendants willfully failed to compensate Smith-Spiers at an hourly rate above or equal to the minimum wage as established in accordance with Section 6 of the FLSA.

94.

During the period from January 15, 2023 through March 21, 2023, Defendants failed to compensate Smith-Spiers at an hourly rate above or equal to the minimum wage as established in accordance with 29 U.S.C. § 206.

95.

During the period from January 15, 2023 through March 21, 2023, Defendants willfully failed to compensate Smith-Spiers at an hourly rate above or equal to the minimum wage as established in accordance with Section 6 of the FLSA.

96.

Defendants were not entitled to apply the $2.25 per hour tip credit to Smith-Spiers during the period from January 15, 2023 through March 21, 2023 for shifts wherein he did not receive tips.

97.

As a result of the underpayment of minimum wages as alleged above, Smith-Spiers is entitled to payment of minimum wages in an amount to be determined at trial, in accordance with 29 U.S.C. § 216(b).

98.

As a result of the underpayment of minimum wages as alleged above, Smith-Spiers is entitled to liquidated damages in accordance with 29 U.S.C. § 216(b).

99.

As a result of the underpayment of minimum wages as alleged above, Smith-Spiers is entitled to reimbursement of his costs of litigation, including his reasonable attorneys' fees pursuant to 29 U.S.C. § 216(b).

## COUNT 2 - FAILURE TO PAY OVERTIME

100.

The allegations in paragraphs 1-88 above are incorporated herein by reference.

101.

At all times during the Relevant Time Period, Smith-Spiers was an employee covered by the FLSA and entitled to the overtime protections set forth in FLSA § 7(a), 29 U.S.C. § 207(a).

102.

During the period from January 15, 2023 through March 21, 2023, Smith-Spiers regularly worked in Defendants' employ in excess of forty (40) hours during each work week.

103.

During the period from January 15, 2023 through March 21, 2023, Defendants failed to pay Smith-Spiers at one-and-one-half times his regular rate for time worked in excess of forty (40) hours during each work week.

104.

During the period from January 15, 2023 through March 21, 2023, Defendants willfully failed to pay Smith-Spiers at one–and–one–half times his regular rate for work in excess of forty (40) hours during each work week.

105.

Smith-Spiers is entitled to payment of overtime in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

106.

As a result of the underpayment of overtime compensation as alleged above, Smith-Spiers is entitled to liquidated damages in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

107.

As a result of the underpayment of overtime compensation as alleged above, Smith-Spiers is entitled to his litigation costs, including his reasonable attorneys' fees in accordance with FLSA § 16(b); 29 U.S.C. § 216(b).

## COUNT 3 - BREACH OF CONTRACT

108.

The allegations in paragraphs 1-88 above are incorporated by reference.

109.

At all times material, Smith-Spiers and SGK were parties to a contract of employment (hereafter "the Contract").

110.

The Contract provided that SGK would pay Smith-Spiers for work that was performed by Smith-Spiers on behalf of and for the benefit of Defendants.

111.

SGK's failure to pay Smith-Spiers any wages for a "working interview" on October 21, 2022 and for three (3) days of training thereafter during his first week of employment in October 2022 constitutes a breach of the Contract.

112.

During the January 14, 2023 staff meeting, SGK advised Smith-Spiers that he would be paid at a rate of either $12.00, $16.00 or $18.00 depending on the duties he performed during each work shift.

113.

During the period from January 15, 2023 through March 21, 2023, SGK failed to pay Smith-Spiers at the agreed upon rates of either $12.00, $16.00 or $18.00 for each shift he worked.

114.

SGK's failure to pay Smith-Spiers for his agreed upon hourly rates for approximately 90 hours that he worked during the period from January 15, 2023 through March 21, 2023 constitutes a breach of the Contract.

115.

During the period from January 15, 2023 through March 21, 2023, SGK failed to pay Smith-Spiers for all hours he worked wherein he could not properly clock-in.

116.

SGK's failure to pay Smith-Spiers for all hours he worked wherein he could not properly clock-in from January 15, 2023 through March 21, 2023 constitutes a breach of the Contract.

117.

As the direct and foreseeable result of these breaches, Smith-Spiers has sustained and continues to sustain damages in an amount to be proved at trial.

**COUNT 4 – QUANTUM MERUIT**

118.

The allegations in paragraphs 1-88 above are incorporated herein by reference.

119.

During the period from October 21, 2022 through January 14, 2023, Smith-Spiers served as a bartender for SGK.

120.

During the period from January 15, 2023 through March 21, 2023, Smith-Spiers served as a key holder and bar manager for SGK.

121.

Smith-Spiers' services as a bartender, key holder and bar manager for SGK as described above was valuable to SGK.

122.

SGK requested Smith-Spiers' services as a bartender, key holder and bar manager.

123.

SGK knowingly accepted Smith-Spiers' services.

124.

The receipt of Smith-Spiers' services for SGK without compensation would be unjust.

125.

Smith-Spiers expected to be compensated at the time he provided his services as a bartender, key holder and bar manager.

126.

Smith-Spiers is entitled to a recover from SGK the reasonable value of the services he provided as a bartender, key holder and bar manager, the exact sum to be determined at trial.

### COUNT 5 - PROMISSORY ESTOPPEL

127.

The allegations in paragraphs 1-88 above are incorporated herein by reference.

128.

SGK promised to pay Smith-Spiers in return for services he performed on its behalf.

129.

SGK should have reasonably expected that Smith-Spiers would induce action in reliance of said promise, *i.e.,* serve as a bartender, key holder and/or bar manager.

130.

SGK's promise induced Smith-Spiers to act in reliance thereof, *i.e.,* to serve as a bartender, key holder and/or bar manager for Defendants, to his detriment.

131.

Smith-Spiers' service as a bartender, key holder and bar manager for SGK conferred a benefit on SGK.

132.

During Smith-Spiers' first week of employment, SGK failed to pay him any wages for a "working interview" on October 21, 2022 and for three (3) days of training thereafter in accordance with their promise.

133.

During the Relevant Time Period from January 15, 2023 through March 21, 2023, SGK failed to pay Smith-Spiers hourly rates in accordance with their promise.

134.

During the Relevant Time Period from January 15, 2023 through March 21, 2023, SGK failed to pay Smith-Spiers for all hours he worked wherein he could not properly clock-in.

135.

Smith-Spiers relied on SGK's promise to pay him as agreed.

136.

Smith-Spiers' reliance on SGK's promise to pay him wages as agreed was reasonable.

137.

Injustice can only be avoided by enforcement of SGK's promise.

138.

Smith-Spiers is entitled to a recover from SGK the reasonable value of the hours he worked during his first week of employment in October 2022, in an amount to be determined at trial.

139.

Smith-Spiers is entitled to be paid the agreed upon rates of either $12.00,
$16.00 or $18.00 for the hours he worked during the period from January 15, 2023
through March 21, 2023, in an amount to be determined at trial.

## COUNT 6 – ILLEGAL RETALIATION

140.

The allegations in all previous paragraphs are incorporated by reference as if fully
set out in this paragraph.

141.

In or about February 2023, Smith-Spiers complained to Daily regarding
Defendants' failure to properly compensate him for all hours worked.

142.

Smith-Spiers's requests to be properly compensated for all hours he worked in
the manner required by the FLSA constitutes protected activity within the meaning
of the 29 U.S.C. § 215(a)(3).

143.

On or about March 21, 2023, SGK terminated Smith-Spiers' employment.

144.

Prior to terminating his employment, Defendants never counseled, warned,
suspended or disciplined Smith-Spiers in any manner whatsoever.

145.

SGK terminated Smith-Spiers' employment in retaliation for his protected
activity in violation of 29 U.S.C. § 215(a)(3).

146.

As a result of SGK's unlawful retaliation, Smith-Spiers has suffered loss of employment, emotional distress, loss of income, and other employee benefits in amounts to be proven at trial.

147.

Smith-Spiers is entitled to special and compensatory damages due to SGK's unlawful retaliatory discharge in an amount to be determined at trial.

148.

As a result of SGK's unlawful retaliation, Smith-Spiers is entitled to liquidated damages in accordance with 29 U.S.C. § 216(b).

149.

As a result of SGK's unlawful retaliation, SGK is indebted to Smith-Spiers for his costs of litigation, including his reasonable attorneys' fees, in accordance with 29 U.S.C. § 216(b).

WHEREFORE, Smith-Spiers respectfully prays:

1. That his claims be tried before a jury;

2. That he be awarded due but unpaid minimum wages in an amount to be determined at trial against Defendants, jointly and severally;

3. That he be awarded due but unpaid overtime wages in an amount to be determined at trial against Defendants, jointly and severally;

4. That he be awarded liquidated damages against Defendants, jointly and severally;

5. That he be awarded damages in an amount to be proved at trial against

   Defendant SGK for the state law claims herein asserted in amounts to be proven

   at trial;

6. That he be awarded amounts to be determined at trial against Defendant SGK in

   compensatory damages arising from Defendants' unlawful retaliatory acts,

   including emotional damages, lost income, and lost benefits;

7. That the Court order Defendant SGK to reinstate him to his former position or

   provide him front pay in lieu of reinstatement;

8. That he be awarded nominal damages; and

9. For such other and further relief as the Court deems just and proper.

Respectfully submitted,

|  | DELONG CALDWELL BRIDGERS FITZPATRICK & BENJAMIN, LLC |
|---|---|
| 101 MARIETTA STREET SUITE 2650 ATLANTA, GEORGIA 30303 (404) 979-3150 (404) 979-3170 (f) kevin.fitzpatrick@dcbflegal.com charlesbridgers@dcbflegal.com | /s/ KEVIN D. FITZPATRICK, JR. KEVIN D. FITZPATRICK. JR. GA. BAR NO. 262375 /s/CHARLES R. BRIDGERS CHARLES R. BRIDGERS GA. BAR NO. 080791 COUNSEL FOR PLAINTIFF |