**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION**

| | |
|---|---|
| **Jaycee Brown,** | |
| *On behalf of himself and those similarly situated*, | **Case No.** |
| **Plaintiff,** | **Judge** |
| | **Magistrate Judge** |
| **v.** | |
| **MUY Pizza-Tejas, LLC; MUY Pizza Southeast, LLC; James Bodenstedt; John Doe 1–20; Doe Corporation 1–10** | **Jury Demand Endorsed Hereon** |
| **Defendants.** | |

## CLASS AND COLLECTIVE ACTION COMPLAINT

### Introduction

1.      Jaycee Brown, on behalf of himself and all similarly situated individuals, brings this action against Defendants MUY Pizza-Tejas, LLC; MUY Pizza Southeast, LLC; James Bodenstedt; John Doe 1–20; and Doe Corporation 1–10 ("Defendants"). Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiff and similarly situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA") and for unjust enrichment.

2.      Defendants operate and/or operated approximately 352 Pizza Hut locations across the United States (the "Defendants' Pizza Hut stores").

1

3.        Defendants operate and/or operated multiple Pizza Hut location in Georgia.

4.        Defendants repeatedly and willfully violated the Fair Labor Standards Act by failing to adequately reimburse delivery drivers for their delivery-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wage for all hours worked.

5.        Defendants maintain a policy and practice of underpaying their delivery drivers in violation of the FLSA.

6.        All delivery drivers at the Defendants' Pizza Hut stores, including Plaintiff, have been subject to the same employment policies and practices, including policies and practices with respect to wages and reimbursement for expenses.

7.        Plaintiff brings this action on behalf of himself and similarly situated current and former delivery drivers nationwide who elect to opt in pursuant to FLSA, 29 U.S.C. § 216(b) to remedy violations of the FLSA by Defendants.

8.        Plaintiff also brings this action on behalf of himself and current and former delivery drivers in Georgia, pursuant to Federal Rule of Civil Procedure 23, for unjust enrichment.

**Jurisdiction and Venue**

9.        Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

10.        Venue in this Court is proper under 28 U.S.C. § 1391(b) because Plaintiff works in this District, Defendants do business in this district, and a substantial part of the events giving rise to the claim herein occurred in this district.

**Parties**

**Plaintiff**

**Jaycee Brown**

2

11.     Plaintiff is a resident of Georgia.

12.     Plaintiff is an "employee" of all of the Defendants as defined in the FLSA.

13.     Plaintiff has given written consent to join this action (attached to this Complaint as Exhibit A).

**<u>Defendants</u>**

**MUY Pizza-Tejas, LLC**

14.     Defendant MUY Pizza-Tejas, LLC is a foreign limited liability company, authorized to do business under the laws of the state of Georgia, with its principal place of business at 17890 Blanco Road, Ste 401, San Antonio, TX 78232-1031.

15.     Upon information and belief, MUY Pizza-Tejas, LLC owned and operated Pizza Hut Pizza stores in Georgia until approximately September 28, 2021.

16.     Upon information and belief, MUY Pizza-Tejas, LLC owned approximately 352 Pizza Hut stores in Georgia and various other states.

17.     MUY Pizza-Tejas, LLC is owned and operated by James Bodenstedt.

18.     MUY Pizza-Tejas, LLC is one of the entities that entered into a franchise agreement with Pizza Hut to operate the Defendants' Pizza Hut stores.

19.     From the beginning of the relevant time period until on or about September 28, 2021, MUY Pizza-Tejas, LLC could command where, when, and how much labor was performed by the delivery drivers at the Defendants' Pizza Hut stores.

20.     From the beginning of the relevant time period until on or about September 28, 2021, MUY Pizza-Tejas, LLC had substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

21.     From the beginning of the relevant time period until on or about September 28, 2021, upon information and belief, MUY Pizza-Tejas, LLC applied or caused to be applied substantially

the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

22.     From the beginning of the relevant time period until on or about September 28, 2021, MUY Pizza-Tejas, LLC had direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

23.     From the beginning of the relevant time period until on or about September 28, 2021, MUY Pizza-Tejas, LLC maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

24.     From the beginning of the relevant time period until on or about September 28, 2021, MUY Pizza-Tejas, LLC was an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

25.     From the beginning of the relevant time period until on or about September 28, 2021, MUY Pizza-Tejas, LLC had been an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

26.     MUY Pizza-Tejas, LLC's gross revenue exceeded $500,000 per year.

**MUY Pizza Southeast, LLC**

27.     Defendant MUY Pizza Southeast, LLC is a foreign limited liability company, authorized to do business under the laws of the state of Georgia, with its principal place of business at 17890 Blanco Road, Ste 401, San Antonio, TX 78232-1031.

28.     Upon information and belief, MUY Pizza Southeast, LLC owned approximately 352 Pizza Hut stores in Georgia and various other states.

29.     MUY Pizza Southeast, LLC is owned and operated by James Bodenstedt.

30.     MUY Pizza Southeast, LLC is one of the entities that entered into a franchise agreement with Pizza Hut to operate the Defendants' Pizza Hut stores.

31.     From the beginning of the relevant time period until on or about September 28, 2021, MUY Pizza Southeast, LLC could command where, when, and how much labor was performed by the delivery drivers at the Defendants' Pizza Hut stores.

32.     From the beginning of the relevant time period until on or about September 28, 2021, MUY Pizza Southeast, LLC had substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

33.     From the beginning of the relevant time period until on or about September 28, 2021, upon information and belief, MUY Pizza Southeast, LLC applied or caused to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

34.     From the beginning of the relevant time period until on or about September 28, 2021, MUY Pizza Southeast, LLC had direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

35.     From the beginning of the relevant time period until on or about September 28, 2021, MUY Pizza Southeast, LLC maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

36.     From the beginning of the relevant time period until on or about September 28, 2021, MUY Pizza Southeast, LLC was an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

37.     From the beginning of the relevant time period until on or about September 28, 2021, MUY Pizza Southeast, LLC had been an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

38.     MUY Pizza Southeast, LLC's gross revenue exceeded $500,000 per year.

**James Bodenstedt**

39.     James Bodenstedt is the founder and CEO of MUY Pizza-Tejas, LLC and MUY Pizza Southeast, LLC.

40.     James Bodenstedt resided in Texas for some of the relevant time period, but, upon information and belief, now lives in Italy or England.

41.     Prior to selling Defendants' Pizza Hut stores in 2021, James Bodenstedt operated MUY Pizza-Tejas, LLC, MUY Pizza Southeast, LLC and other legal entities involved in the operation of Defendants' Pizza Hut stores, hundreds of Wendy's stores, and dozens of Taco Bell stores from the companies' headquarters on 17890 Blanco Road, Suite 401, San Antonio, TX 78232.

42.     James Bodenstedt is a person who has entered into a franchise agreement with Pizza Hut to operate the Defendants' Pizza Hut stores.

43.     During the time period when Defendants' Pizza Hut stores were owned and operated by the Defendants' Pizza Hut stores, James Bodenstedt could command where, when, and how much labor is performed by the delivery drivers at the Defendants' Pizza Hut stores.

44.     James Bodenstedt is individually liable to the Defendants' Pizza Hut stores' delivery drivers for the time period when Defendants' Pizza Hut stores were owned and operated by the

6

Defendants' Pizza Hut stores, under the definitions of "employer" set forth in the FLSA, because he owned and operated the Defendants' Pizza Hut stores, served as a manager of MUY Pizza-Tejas, LLC and MUY Pizza Southeast, LLC, ultimately controlled significant aspects of the Defendants' Pizza Hut stores' day-to-day functions, and ultimately had control over compensation and reimbursement of employees.  29 U.S.C. § 203(d).

45.      During the time period when Defendants' Pizza Hut stores were owned and operated by the Defendants' Pizza Hut stores, by virtue of his role as founder and CEO of MUY Pizza-Tejas, LLC and MUY Pizza Southeast, LLC, James Bodenstedt had financial control over the operations at each of the Defendants' Pizza Hut stores.

46.      During the time period when Defendants' Pizza Hut stores were owned and operated by the Defendants' Pizza Hut stores, by virtue of his role as founder and CEO of MUY Pizza-Tejas, LLC and MUY Pizza Southeast, LLC, James Bodenstedt had a role in significant aspects of the Defendants' Pizza Hut stores' day to day operations.

47.      During the time period when Defendants' Pizza Hut stores were owned and operated by the Defendants' Pizza Hut stores, by virtue of his role as founder and CEO of MUY Pizza-Tejas, LLC and MUY Pizza Southeast, LLC, James Bodenstedt had control over the Defendants' Pizza Hut stores' pay policies.

48.      During the time period when Defendants' Pizza Hut stores were owned and operated by the Defendants' Pizza Hut stores, by virtue of his role as founder and CEO of MUY Pizza-Tejas, LLC and MUY Pizza Southeast, LLC, James Bodenstedt had power over personnel and payroll decisions at the Defendants' Pizza Hut stores, including but not limited to influence of delivery driver pay.

49.      During the time period when Defendants' Pizza Hut stores were owned and operated

by the Defendants' Pizza Hut stores, by virtue of his role as founder and CEO of MUY Pizza-Tejas, LLC and MUY Pizza Southeast, LLC, James Bodenstedt had the power to hire, fire and discipline employees, including delivery drivers at Defendants' Pizza Hut stores.

50.     During the time period when Defendants' Pizza Hut stores were owned and operated by the Defendants' Pizza Hut stores, by virtue of his role as founder and CEO of MUY Pizza-Tejas, LLC and MUY Pizza Southeast, LLC, James Bodenstedt has had the power to stop any illegal pay practices that harmed delivery drivers at the Defendants' Pizza Hut stores.

51.     At all relevant times, by virtue of his role as founder and CEO of MUY Pizza-Tejas, LLC and MUY Pizza Southeast, LLC, James Bodenstedt has had the power to transfer the assets and liabilities of the Defendants' Pizza Hut stores.

52.     At all relevant times, by virtue of his role as founder and CEO of MUY Pizza-Tejas, LLC and MUY Pizza Southeast, LLC, James Bodenstedt has had the power to declare bankruptcy on behalf of the Defendants' Pizza Hut stores.

53.     At all relevant times, by virtue of his role as founder and CEO of MUY Pizza-Tejas, LLC and MUY Pizza Southeast, LLC, James Bodenstedt has had the power to enter into contracts on behalf of each of the Defendants' Pizza Hut stores.

54.     James Bodenstedt had authority to alter any aspect of Defendants' Pizza Hut stores' operations during the time period when Defendants' Pizza Hut stores were owned and operated by the Defendants' Pizza Hut stores.

55.     At all relevant times, by virtue of his role as founder and CEO of MUY Pizza-Tejas, LLC and MUY Pizza Southeast, LLC, James Bodenstedt has had the power to close, shut down, and/or sell each of the Defendants' Pizza Hut stores.

56.     In 2021, James Bodenstedt did sell Defendants' Pizza Hut stores at a substantial

personal profit.

57.     During the time period when Defendants' Pizza Hut stores were owned and operated by the Defendants' Pizza Hut stores, by virtue of his role as founder and CEO of MUY Pizza-Tejas, LLC and MUY Pizza Southeast, LLC, James Bodenstedt had authority over the overall direction of each of Defendants' Pizza Hut stores and was ultimately responsible for their operations.

58.     At all relevant times, by virtue of his role as founder and CEO of MUY Pizza-Tejas, LLC and MUY Pizza Southeast, LLC, James Bodenstedt had authority over the overall direction of MUY Pizza-Tejas, LLC and MUY Pizza Southeast, LLC.

59.     MUY Pizza-Tejas, LLC and MUY Pizza Southeast, LLC and the Defendants' Pizza Hut stores function for James Bodenstedt's profit.

60.     James Bodenstedt had influence over how the Defendants' Pizza Hut stores can run more profitably and efficiently.

61.     James Bodenstedt valued Defendants' Pizza Hut stores based on the cash flows generated at each of Defendants' Pizza Hut stores.

62.     Along with 352 Pizza Hut locations, Bodenstedt and his executive team sold their interest in 85 Taco Bell locations, 318 Wendy's locations, 25 real property locations, the corporate headquarters office, and the corporate aircraft. In 2021, James Bodenstedt sold Defendants' Pizza Hut stores and other fast food stores for over $1 billion.

63.     James Bodenstedt retained liability for the claims asserted by delivery drivers in this case despite selling Defendants' Pizza Hut stores' assets.

64.     James Bodenstedt had the authority to insist that the sale of these businesses, comprising 17 different transactions, be completed by October 2021.

65.     James Bodenstedt was personally involved in the details of the sale of Defendants'

Pizza Hut stores, and authority to decide what proposals were acceptable and what proposals were not.

66.     James Bodenstedt had authority to set the compensation for the employees who worked for the Defendants' Pizza Hut stores.

67.     For example, James Bodenstedt had the authority to decide what personnel to hire. In or about 2011, James Bodenstedt made the decision to hire a chief legal officer, a chief information officer, and other executives.

68.     James Bodenstedt had the authority to decide how to compensate employees. He gave equity shares of the company to a number of employees, including the director of operations, CIO, CFO, chief people officer, chief pilot, and various second in commands. In total, Bodenstedt compensated 17 people by giving them equity in the company.

69.     At the time Defendants' Pizza Hut stores were sold by Bodenstedt, delivery drivers at Defendants' Pizza Hut stores were paid minimum wage and were reimbursed a per-delivery amount, an amount that did not change depending on the length of the delivery and did not cover all of the drivers' vehicle expenses. Bodenstedt had the authority to increase the amounts paid to delivery drivers as compensation and reimbursement, but chose not to.

70.     James Bodenstedt had influence over all aspects of the Defendants' Pizza Hut stores operations and had authority to change its practices.

71.     For example, James Bodenstedt decided MUY's call center operations would go paperless, that wages would be paid by direct deposit to a pay card instead of paper checks, that training materials and hiring forms would be available online, and that delivery orders would be taken from a centralized call center rather than on location at the restaurants.

**Doe Corporation 1–10**

72.     Upon information and belief, Defendants own, operate, and control other entities and/or limited liability companies that also comprise part of the Defendants' Pizza Hut stores, and qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Pizza Hut stores as that term is defined by the FLSA.

73.     Upon information and belief, James Bodenstedt owns and operates, in whole or in part, a number of other entities that make up part of the Defendants' Pizza Hut stores which may include, but are not limited to, MUY Consulting, LLC and MUY Brands, LLC.

74.     Upon information and belief, the franchisor, Pizza Hut, may also be liable as an employer of the delivery drivers employed at Defendants' Pizza Hut stores.

75.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**John Doe 1–10**

76.     Upon information and belief, there are additional individuals who also qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Pizza Hut stores as that term is defined by the FLSA.

77.     Upon information and belief, James Bodenstedt has entered into co-owner relationships with a number of his managers and business partners, and those individuals might also qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Pizza Hut stores as that term is defined by the FLSA.

78.     Upon information and belief, there are at least seventeen executive level employees who work or worked for the Defendants who have/had an equity interest in the Defendants who may be liable to the delivery drivers for the violations claimed herein. Those individuals include, but are not limited to, Chief Financial Officer John Haynie, Vice President of Operations for the Pizza Hut

locations Jim Mooney, Chief Legal Officer Dawson Bremer, Chief People Officer Grant Stewart, and Chief Information Officer Dan Karam.

79.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

## Facts

## Class-wide Factual Allegations

80.     During all relevant times, Defendants have operated the Defendants' Pizza Hut stores.

81.     The primary function of the Defendants' Pizza Hut stores was to sell pizza and other food items to customers, whether they dine in, carry out, or have their food delivered.

82.     Defendants' Pizza Hut stores employed delivery drivers.

83.     Plaintiff and the similarly situated persons that Plaintiff seeks to represent are former delivery drivers employed by Defendants at the Defendants' Pizza Hut stores.

84.     All delivery drivers employed at the Defendants' Pizza Hut stores over the last three years have had essentially the same job duties—to deliver pizza and other food items to customers.

85.     Drivers at the Defendants' Pizza Hut stores worked "dual jobs".

86.     Delivery drivers' inside job duties were not completed simultaneously with their tipped job duties.

87.     Delivery drivers' inside job duties were not related to the tipped job duties.

88.     At all relevant times, Plaintiff and similarly situated delivery drivers have been paid minimum wage, slightly above minimum wage, or minimum wage minus a tip credit for the hours they work while completing deliveries.

89.     Defendants required delivery drivers to maintain and pay for operable, safe, and

legally compliant automobiles to use in delivering Defendants' pizza and other food items.

90.     Defendants required delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing charges, cellphone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

91.     Pursuant to such requirements, Plaintiff and other similarly situated employees purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, financing charges, and incur cellphone and data charges all for the primary benefit of Defendants.

92.     Defendants required delivery drivers at Defendants' Pizza Hut stores to provide cellphones to use while completing deliveries for Defendants.

93.     Defendants required delivery drivers to maintain and pay for operable cellphones to use in delivering Defendants' pizza and other food items.

94.     The Defendants' Pizza Hut stores did not reimburse the delivery drivers' cellphone expenses.

95.     The Defendants' Pizza Hut stores did not track or record the delivery drivers' cellphone expenses.

96.     Defendants reimbursed delivery drivers' automobile expenses based on a per delivery rate.

97.     Defendants' Pizza Hut stores did not track or record the delivery drivers' actual automobile expenses.

98.     Defendants' Pizza Hut stores did not collect receipts from their delivery drivers related to the expenses they incur while completing deliveries.

13

99.     Defendants did not collect receipts of delivery drivers' gasoline purchases during weeks when the delivery drivers work for Defendants.

100.    Defendants did not collect receipts of delivery drivers' automobile maintenance, repair, and parts purchased or paid for during weeks when the delivery drivers work for Defendants.

101.    Defendants did not collect receipts of delivery drivers' monthly or annual automobile insurance costs.

102.    Defendants did not collect receipts of delivery drivers' automobile registration costs.

103.    Defendants did not collect receipts of delivery drivers' automobile financing or purchase costs.

104.    Defendants did not collect any other receipts from delivery drivers related to the automobile expenses they incur as delivery drivers at Defendants' Pizza Hut stores.

105.    Defendants' Pizza Hut stores did not reimburse their delivery drivers based on the actual expenses the delivery drivers incur.

106.    Defendants' Pizza Hut stores did not reimburse their delivery drivers for the actual expenses delivery drivers incur.

107.    Defendants' Pizza Hut stores did not reimburse their delivery drivers' automobile expenses at the IRS standard business mileage rate.

108.    Defendants' Pizza Hut stores did not even reasonably approximate the delivery drivers' automobile expenses.

109.    Defendants reimbursed delivery drivers at Defendants' Pizza Hut stores using a per-delivery reimbursement rate that is less than the IRS standard business mileage rate.

110.    According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

a.     2019: 58 cents/mile
b.     2020: 57.5 cents/mile
c.     2021: 56 cents/mile

111.    The delivery drivers at the Defendants' Pizza Hut stores have incurred even more in expenses than those contemplated by the IRS standard business mileage rate—*e.g.*, cellphone and data charges.

112.    The delivery drivers at Defendants' Pizza Hut stores advanced a business expense, interest free, to Defendants when they provided cars to use at work.

113.    Defendants benefited from the delivery drivers spending time off the clock repairing and maintaining their vehicles.

114.    Defendants benefited from the delivery drivers storing their vehicles when they are not being used to complete deliveries for Defendants.

115.    Defendants benefited from delivery drivers taking on the risk of using their vehicles to drive for Defendants' business.

116.    But for the delivery drivers using their own cars to make deliveries for Defendants' business, Defendants would have had to expend substantially more money and take on substantially more risk to operate their business.

117.    In 2021, Defendants sold their fast food franchise business, which included Defendants' Pizza Hut stores, for $1 billion.

118.    As a result of the automobile and other job-related expenses incurred by Plaintiff and other similarly situated delivery drivers, they were deprived of minimum wages guaranteed to them by the FLSA.

119.    At all relevant times, Defendants have applied the same pay policies, practices, and procedures to all delivery drivers at the Defendants' Pizza Hut stores.

120.     All of Defendants' delivery drivers had similar experiences to that of Plaintiff. They completed similar job duties, were subject to the same reimbursement policy; received similar reimbursement payments; incurred similar automobile expenses; completed deliveries of similar distances and at similar frequencies; and were paid at or near the applicable minimum wage rate before deducting unreimbursed vehicle costs.

121.     Regardless of the precise amount of the reimbursements paid at any given point in time, Defendants' reimbursement formula has resulted in an unreasonable underestimation of delivery drivers' automobile expenses throughout the recovery period, causing systematic violations of the minimum wage laws.

122.     Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. *See* 29 C.F.R. § 531.35.

123.     Defendants have willfully failed to pay federal minimum wage to Plaintiff and similarly situated delivery drivers at the Defendants' Pizza Hut stores.

124.     Defendants' policy of under-reimbursement unjustly enriched them at the expense of their delivery drivers. Under-reimbursing delivery drivers allows Defendants to shift business expenses onto their employees, which confers various benefits on Defendants beyond and in excess of the direct savings from violating wage laws.

125.     All of Defendants' delivery drivers conferred a benefit on Defendants by providing cellphones to use when delivering pizza and other food items for Defendants.

126.     All of Defendants' delivery drivers conferred a benefit on Defendants by providing vehicles to deliver pizza and other food items for Defendants.

16

**Plaintiff's Individual Factual Allegations**

**Jaycee Brown**

127.    Plaintiff had worked for Defendants as a pizza delivery driver at the Defendants' Pizza Hut stores from 2017 through the selling of the stores in September 2021.

128.    Plaintiff worked dual jobs—one inside the store, and one outside the store.

129.    Plaintiff delivered pizza and other food items to Defendants' customers' homes and businesses.

130.    When he was not making deliveries, Plaintiff worked inside the restaurant, completing tasks such as taking orders, doing dishes, sweeping, cashing customers out, and/or doing other tasks necessary for the operation of the restaurant.

131.    Plaintiff's inside job duties were not completed at the same time as his on-the-road job duties.

132.    Plaintiff's inside job duties were not related to his tipped job duties.

133.    Plaintiff was required to use his own car to deliver pizzas.

134.    Plaintiff was required to use his own cellphone when delivering pizzas.

135.    Plaintiff made $7.25 when he first started with Defendants and got a yearly raise equating to around $.10 a year for all hours worked.

136.    Plaintiff was reimbursed per delivery while completing deliveries for Defendants.

137.    Plaintiff made $.88 per delivery.

138.    Plaintiff was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

139.    Plaintiff was required to maintain and pay for an operable cellphone to use in delivering Defendants' pizza and other food items.

140.    Plaintiff was required to incur and/or pay job-related expenses, including but not

limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cellphone service, GPS service, automobile financing, and other equipment necessary for delivery drivers to complete their job duties.

141.    Plaintiff purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, automobile financing, and incurred cellphone and data charges all for the primary benefit of Defendants.

142.    Defendants did not track the actual expenses incurred by Plaintiff.

143.    Defendants did not ask Plaintiff to provide receipts of the expenses he incurred while delivering pizzas and other food items for Defendants.

144.    Defendants' Pizza Hut stores did not collect receipts from Plaintiff related to the expenses he incurred while completing deliveries.

145.    Defendants did not collect receipts of Plaintiff's gasoline purchases during weeks when he worked for Defendants.

146.    Defendants did not collect receipts of Plaintiff's automobile maintenance, repair, and parts purchased or paid for during weeks when he worked for Defendants.

147.    Defendants did not collect receipts of Plaintiff's monthly or annual automobile insurance costs.

148.    Defendants did not collect receipts of Plaintiff's automobile registration costs.

149.    Defendants did not collect receipts of Plaintiff's automobile financing or purchase costs.

150.    Defendants did not collect any other receipts from Plaintiff related to the automobile expenses he incurred as a delivery driver at Defendants' Pizza Hut stores.

151.     Defendants did not track the cellphone expenses incurred by Plaintiff.

152.     Defendants did not ask Plaintiff to provide records of cellphone expenses he incurred while delivering pizzas for Defendants.

153.     Defendants did not collect receipts of Plaintiff's cellphone data plan expenses.

154.     Defendants did not reimburse Plaintiff for his cellphone expenses.

155.     Defendants did not reimburse Plaintiff based on his actual delivery-related expenses.

156.     Plaintiff was not reimbursed at the IRS standard mileage rate for the miles he drove while completing deliveries.

157.     During all relevant times, Defendants have failed to adequately reimburse Plaintiff for automobile and other job-related expenses.

158.     Plaintiff regularly made approximately 3-4 deliveries per hour during the hours he worked as a delivery driver.

159.     Plaintiff regularly drove approximately 8 miles round trip per delivery.

160.     In 2021, for example, the IRS business mileage reimbursement was $.56 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. Based on Plaintiff's estimate of 8 miles per delivery, Defendants reimbursed Plaintiff $.11 per mile ($.88 per delivery / 8 miles per delivery). As a result, Plaintiff estimates that Defendants under-reimbursed him by $.45 per mile ($.56-$.11=$.45), $3.60 per delivery ($.45 × 8 miles per delivery), and $12.60 per hour ($3.60 × 3.5 deliveries per hour).

161.     As a result of unreimbursed automobile expenses and other job-related expenses, Defendants have failed to pay Plaintiff minimum wage as required by law.

162.     Defendants have been unjustly enriched by Plaintiff in that he used his own vehicle

and incurred vehicle-related expenses for Defendants' benefit.

163.     Defendants have been unjustly enriched by Plaintiff in that he used his own cellphone and incurred cellphone-related expenses for Defendants' benefit.

## Collective Action Allegations

164.     Plaintiff brings the First Count on behalf of himself and all similarly situated current and former delivery drivers employed at the Defendants' Pizza Hut stores owned, operated, and controlled by Defendants, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

165.     At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked and failing to reimburse delivery drivers for automobile expenses and other job-related expenses. Plaintiff's claims are essentially the same as those of the FLSA Collective.

166.     Defendants' unlawful conduct is pursuant to a corporate policy or practice.

167.     Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked and to fully reimburse for "tools of the trade."

168.     Defendants' unlawful conduct has been widespread, repeated, and consistent.

169.     The First Count is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

170.     In recognition of the services Plaintiff have rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

## Class Action Allegations

171.     Plaintiff brings the Second Count under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at Defendants' Pizza Hut stores in the State of Georgia between the date four years prior to the filing of the original complaint and the date of final judgment in this matter ("Rule 23 Unjust Enrichment Class").

172.     Excluded from the Rule 23 Unjust Enrichment Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Unjust Enrichment Class.

173.     The number and identity of the Rule 23 Unjust Enrichment Class members are ascertainable from Defendants' records.

174.     The hours assigned and worked, the positions held, deliveries completed, and the rates of pay and reimbursements paid for each Rule 23 Unjust Enrichment Class member and the benefits conferred by the Rule 23 Unjust Enrichment Class members and realized by Defendants are determinable from Defendants' records.

175.     For the purpose of notice and other purposes related to this action, the Rule 23 Unjust Enrichment Class members' names and contact information are readily available from Defendants.

176.     Notice can be provided by means permissible under Rule 23 for the Rule 23 Unjust Enrichment Class members.

177.     The Rule 23 Unjust Enrichment Class members are so numerous that joinder of all members is impracticable.

21

178.     The disposition of the Rule 23 Unjust Enrichment Class members' claims as a class will benefit the parties and the Court.

179.     Upon information and belief, there are more than 40 Rule 23 Unjust Enrichment Class members.

180.     Plaintiff's claims are typical of those claims which could be alleged by any class member in the Rule 23 Unjust Enrichment Class, and the relief sought is typical of the relief which would be sought by a Rule 23 Unjust Enrichment Class member in separate actions.

181.     Plaintiff and the Rule 23 Unjust Enrichment Class members have unjustly enriched Defendants in the same way—by providing automobiles for use in their business at no cost to Defendants.

182.     Plaintiff and the Rule 23 Unjust Enrichment Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

183.     By seeking to represent the interests of the Rule 23 Unjust Enrichment Class members, Plaintiff are exercising and intend to exercise their right to engage in concerted activity for the mutual aid or benefit of himself and their co-workers.

184.     Plaintiff are able to fairly and adequately protect the interests of the Rule 23 Unjust Enrichment Class and have no interests antagonistic to the Rule 23 Unjust Enrichment Class.

185.     Plaintiff are represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

186.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit

similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual Rule 23 Unjust Enrichment Class members are small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Rule 23 Unjust Enrichment Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in significant saving of these costs. The prosecution of separate actions by individual class members would create a risk of inconsistent and/or varying adjudications with respect to the individual Rule 23 Unjust Enrichment Class members, establishing incompatible standards of conduct for Defendants and resulting in the impairment of the Rule 23 Unjust Enrichment Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

187.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

188.    Common questions of law and fact exist as to the Rule 23 Unjust Enrichment Class that predominate over any questions only affecting Plaintiff and the Rule 23 Unjust Enrichment Class members individually and include, but are not limited to:

> a.    Whether Plaintiff and the Rule 23 Class members were subject to a common expense reimbursement policy;
>
> b.    Whether Plaintiff and the Rule 23 Unjust Enrichment Class were subject to a

policy that required them to maintain and pay for safe, operable, and legally compliant automobiles to use in completing deliveries;

c. Whether Plaintiff and the Rule 23 Unjust Enrichment Class members were subject to a common policy that required them to provide cellphones to use when completing deliveries for Defendants;

d. Whether Plaintiff and the Rule 23 Unjust Enrichment Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

e. Whether Defendants collected and maintained records of Plaintiff and the Rule 23 Unjust Enrichment Class members' actual vehicle expenses;

f. Whether Defendants reimbursed Plaintiff and the Rule 23 Unjust Enrichment Class members for their actual expenses;

g.   Whether Defendants reimbursed Plaintiff and the Rule 23 Unjust Enrichment Class members at the IRS standard business mileage rate for the miles they drove in making deliveries;

h. Whether Defendants reimbursed Plaintiff and the Rule 23 Unjust Enrichment Class members based on a reasonable approximation of the expenses they incurred;

i. Whether Defendants properly reimbursed Plaintiff and the Rule 23 Unjust Enrichment Class members;

j. Whether Plaintiff and the Rule 23 Unjust Enrichment Class conferred a benefit on Defendants that Defendants were aware of;

k. Whether Defendants accepted the benefits conferred on them by Plaintiff and the Rule 23 Unjust Enrichment Class;

l. Whether it would be unjust for Defendants to retain the benefit conferred on them by Plaintiff and the Rule 23 Unjust Enrichment Class without compensating for it;

m. The nature and extent of class-wide injury and the measure of damages for those injuries.

189.    In recognition of the services Plaintiff has rendered and will continue to render to the Rule 23 Unjust Enrichment Class, Plaintiff will request payment of a service award upon resolution of this action.

## Causes of Action

### Count 1
### Failure to Pay Minimum Wages - Fair Labor Standards
### Act (On Behalf of Plaintiff and the FLSA Collective)

190.     Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

191.     Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

192.     Defendants pay Plaintiff and the FLSA Collective at or close to minimum wage for all hours worked.

193.     Defendants required and continue to require Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket and failed to properly reimburse Plaintiff and the FLSA Collective for said expenses.

194.     By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

195.     Plaintiff and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

196.     As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

### Count 2
### Unjust Enrichment
### (On Behalf of Plaintiff and Rule 23 Unjust Enrichment Class)

197.     Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

25

198.     The Rule 23 Unjust Enrichment Class members at the Defendants' Pizza Hut stores have conferred a benefit on Defendants by using their own cars and cellphones to perform work for Defendants.

199.     Defendants are aware of and have accepted the benefit conferred on them by Rule 23 Unjust Enrichment Class members.

200.     It would be unjust for Defendants to be permitted to retain the benefit conferred on them by the Rule 23 Unjust Enrichment Class members without commensurate compensation.

201.     Plaintiff and the Rule 23 Unjust Enrichment Class members are entitled to equitable restitution of the benefits they have conferred on Defendants within the four years preceding the filing of this complaint.

**WHEREFORE**, Plaintiff prays for all of the following relief:

A.     Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and his counsel to represent the collective action members.

B.     Unpaid minimum wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

C.     Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

D.     Designation of Plaintiff as representative of the Rule 23 Unjust Enrichment Class, and counsel of record as Class Counsel for the Class.

E.     Liquidated damages under the FLSA.

F.     An award of restitution as a result of unjust enrichment to the Rule 23 Unjust

Enrichment Class.

G.      An award of prejudgment and post-judgment interest.

H.      An award of costs and expenses of this action, together with reasonable attorneys'

fees and expert fees.

I.      Such other legal and equitable relief as the Court deems appropriate.

Respectfully submitted,

*/s/ Gary R. Kessler*
Gary R. Kessler P.C. (GA Bar# 416562)
2573 Apple Valley Road NE
Atlanta, GA 30319
Telephone: (404) 909-8100
gkessler@martensonlaw.com

and

Andrew R. Biller (pro hac vice application forthcoming)
Andrew P. Kimble (pro hac vice application forthcoming)
Biller & Kimble, LLC
8044 Montgomery Rd., Ste. 515
Cincinnati, OH 45236
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*akimble@billerkimble.com*
*abiller@billerkimble.com*

www.billerkimble.com

*Counsel for Plaintiffs*

27

## <u>JURY DEMAND</u>

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

<u>*/s/ Gary R. Kessler*</u>
Gary R. Kessler
