**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **DAVID LATTAL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION NO:** |
| **v.** | ) | _____ |
| | ) | |
| **EQUIFAX INFORMATION** | ) | |
| **SERVICES LLC, TRUIST** | ) | |
| **FINANCIAL CORPORATION, and** | ) | |
| **BENEFICIAL STATE BANK,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## COMPLAINT

1.      This is an action for damages brought by an individual consumer, David Lattal, against Equifax Information Services LLC ("Equifax"), Truist Financial Corporation ("Truist") and Beneficial State Bank ("Beneficial") for several violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* (the "FCRA").

## PRELIMINARY STATEMENT

2.      When Congress enacted the FCRA it found that the "banking system is dependent upon fair and accurate credit reporting.  Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods

undermine the public confidence which is essential to the continued functioning of the banking system."  15 U.S.C. § 1681(a)(1).

3.     Congress recognized that consumer reporting agencies ("CRAs") "have assumed a vital role in assembling and evaluating consumer credit and other information on consumers."  15 U.S.C. § 1681(a)(3).  Therefore, Congress found that there "is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy."  15 U.S.C. § 1681(a)(4).

4.     The FCRA requires that when a CRA prepares a credit report, it must "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."  15 U.S.C. § 1681e(b).

5.     Consumers can submit disputes to CRAs regarding the accuracy or completeness of any information in their credit file.  Upon receipt of the dispute, the FCRA requires that the CRA conduct a reasonable reinvestigation of any information that is disputed by a consumer to determine if the information is accurate.  The CRA must notify the source of the disputed information about the consumer's dispute. The CRA must provide the source with all relevant information received from the consumer.  The CRA must review and consider all relevant

information provided by the consumer in conducting the reinvestigation. The CRA must delete or modify information that is found to be inaccurate or incomplete, or that cannot be verified. The CRA must complete the reinvestigation within 30 days, or within 45 days if the dispute is based on a free annual credit report. The CRA must send the consumer written results of the reinvestigation and a credit report that is based on the consumer's file as that file is revised as a result of the reinvestigation. 15 U.S.C. § 1681i(a).

6.     Additionally, the FCRA imposes duties on persons who furnish information to a consumer reporting agency (a "furnisher"). *See* 15 U.S.C. §§ 1681s-2(a), (2), (4), (5). Specifically, the furnisher must take certain actions after receipt of notice of a consumer dispute from a consumer reporting agency. 15 U.S.C. § 1681s-2-(b)(1)(A-E).[1]

7.     Section 1681s-2(b) of the FCRA establishes a mechanism for consumers to dispute the accuracy or completeness of information that furnishers provide to CRAs. After a consumer has submitted a dispute to a CRA, the CRA must notify the furnisher of the disputed information. 15 U.S.C. § 1681i(a)(2). The CRA must provide this notice of dispute within five days of receipt of the dispute

---

[1] Plaintiff asserts a claim against Defendants Truist and Beneficial under Section 1681s-2(b), and not under Section 1681s-2(a).

and must include "all relevant information" provided by the consumer.  15 § U.S.C. 1681i(a)(2)(B).

8.      Once a furnisher receives notice of a dispute from a CRA, Section 1681s-2(b) requires that the furnisher "shall" (1) conduct an investigation with respect to the disputed information; (2) review all relevant information provided by the CRA in connection with the dispute; and (3) report the results of the investigation to the CRA. 15 § U.S.C. 1681s-2(b)(1)(A)-(C).

9.      Should the investigation determine that the disputed information is inaccurate or incomplete or cannot be verified, the furnisher must modify, delete, or permanently block the reporting of that information to CRAs, as appropriate based on the results of the reinvestigation.  15 U.S.C. § 1681s-2(b)(1)(E).

10.      The Eleventh Circuit Court of Appeals has instructed that furnishers must conduct a "reasonable" reinvestigation that involves "a detailed inquiry," "systematic examination" or "searching inquiry" into a consumer's dispute. *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1302-03 (11th Cir. 2016).

11.      This lawsuit is based on Defendants' multiple violations of the aforementioned provisions of the FCRA.

4

## JURISDICTION AND VENUE

12.    This Court has federal question jurisdiction over Plaintiff's FCRA claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

13.    Venue is proper in this Court under 28 U.S.C. § 1391 as Plaintiff is a resident of this district and a substantial part of the events and omissions giving rise to the claims occurred in this district.

## PARTIES

14.    Mr. Lattal is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

15.    Defendant Equifax is a CRA as defined by 15 U.S.C. § 1681a(f).

16.    Defendant Equifax has a principal place of business located at 1550 Peachtree Street, N.W., Atlanta, Georgia 30309-2402.

17.    Defendant Equifax can be served through its registered agent, Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

18.    Defendant Truist is a corporation with its headquarters located at 214 North Tryon Street, Charlotte, North Carolina 28202.

19.     Defendant Truist can be served through its registered agent, Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

20.     Defendant Truist is a person who furnishes information to consumer reporting agencies under the FCRA, 15 U.S.C. § 1681s-2, and it conducts substantial and regular business activities in this judicial district.

21.     Defendant Beneficial is a federal credit union with its headquarters located at 1438 Webster Street, Suite 100, Oakland, CA 94612.

22.     Defendant Beneficial can be served through its registered agent, Richard H. Harvey, located at 1438 Webster Street, Suite 100, Oakland, CA 94612.

23.     Defendant Beneficial is a person who furnishes information to consumer reporting agencies under the FCRA, 15 U.S.C. § 1681s-2, and it conducts substantial and regular business activities in this judicial district.

## FACTUAL ALLEGATIONS

24.     In early 2023, Mr. Lattal sought to bring current his accounts with Defendants Truist and Beneficial.

25.     To do so, Mr. Lattal first closed his account with Truist.  Truist confirmed that Mr. Lattal's account was closed via a letter dated January 14, 2023.

26.     Second, Mr. Lattal made a payment to his Truist account on January 19, 2023.

27.     Once Mr. Lattal made this payment, he had no balance remaining with Defendant Truist.

28.     Mr. Lattal's January 23, 2023 Truist account statement reflects the January 19th payment, as well as the fact that Mr. Lattal's balance following the payment was "$0.00."

29.     With respect to Beneficial, Mr. Lattal made a payment of $57.09 to his Beneficial account on January 5, 2023.

30.     Once Mr. Lattal made this payment, he had no balance remaining with Beneficial.

31.     Mr. Lattal's February 3, 2023 statement showed the January 5th payment.

32.     The statement also showed that Beneficial actually owed money to Mr. Lattal, as it reflected that Mr. Lattal's balance owed following the payment was "$(0.29)."

33.     Once he made the payments and closed his Truist account, Mr. Lattal discovered that Equifax was reporting that his Truist account was still open, and both his Truist and Beneficial accounts still had outstanding balances.

Mr. Lattal Disputes With Defendant Equifax

34.     To correct these errors, Mr. Lattal filed a dispute with Equifax.

35.     Mr. Lattal's dispute concerned Equifax's reporting of his Truist account.

36.     In the dispute, Mr. Lattal informed Equifax that it was improperly reporting his Truist account as open and as having a balance, and he provided Equifax with proof that the account was closed and had no balance.

37.     Equifax received Mr. Lattal's dispute.

38.     Upon information and belief, Equifax sent Truist all relevant information about Mr. Lattal's dispute that it received from Mr. Lattal.

39.     Truist did not conduct a reasonable reinvestigation with respect to the disputed information.

40.     For example, upon information and belief, Truist did not review its records showing that the account had been closed, including the January 14th letter it sent to Mr. Lattal.

41.     Upon information and belief, Truist reported to Equifax that it had verified the disputed information was reporting accurately.

42.     In February 2023, Equifax sent Mr. Lattal the results of its reinvestigation.

43.   Equifax did not correct the erroneous information.

44.   Instead, Equifax reported that "[t]his creditor has verified to our company that this account has not been closed."

45.   The very next day, Equifax sent Mr. Lattal another set of results of its reinvestigation.

46.   In this second set of dispute results, Equifax told Mr. Lattal that it had modified the "historical account information" in its report.

47.   Equifax had, indeed, changed the historical account information to show that as of 12/22, the account had no balance.  However, elsewhere in Equifax's dispute results, it still showed that as of 2/24/2023, the account still had a balance amount of $1,760.

48.    These two fields were facially inconsistent, as they showed a balance in one field, but no balance in another field.

49.   Equifax did not conduct a reasonable reinvestigation into Mr. Lattal's dispute.

50.   Equifax simply parroted the results of Truist's reinvestigation results, and took no steps of its own to reconcile the inconsistent information and to determine whether the account information was erroneous.

Mr. Lattal Disputes Again With Defendant Equifax

51.     Shortly thereafter, Mr. Lattal filed another dispute with Equifax.

52.     In the dispute, Mr. Lattal again informed Equifax that it was improperly reporting his Truist account as open and as having a balance.  He also informed Equifax that it was erroneously reporting his Beneficial account as well.

53.     Equifax received Mr. Lattal's dispute.

54.     Upon information and belief, Defendant Equifax sent Truist and Beneficial all relevant information about Mr. Lattal's dispute that it received from Mr. Lattal.

55.     Truist and Beneficial did not conduct reasonable reinvestigations with respect to the disputed information.

56.     For example, upon information and belief, Truist did not review its records showing that the account had been closed, including the January 14th letter it sent to Mr. Lattal.

57.     Similarly, upon information and belief, Beneficial did not review its records showing that the account had no balance.

58.     Upon information and belief, Truist and Beneficial reported to Defendant Equifax that they had verified the disputed information was reporting accurately.

10

59.     In March 2023, Defendant Equifax sent Mr. Lattal the results of its reinvestigation.

60.     Defendant Equifax did not correct the erroneous accounts.

61.     Instead, with respect to Mr. Lattal's Beneficial account, Defendant Equifax reported that "[t]his creditor has verified to our company that this account has not been closed."

62.     Defendant Equifax's dispute results still showed a $57 balance on Mr. Lattal's Beneficial account.

63.     This was inaccurate, as the account had no balance at that time.

64.     With respect to Mr. Lattal's Truist account, Equifax reported that "[t]his creditor has verified to our company that this account has not been closed. The following fields have been modified: additional information*historical account information."

65.     Equifax had, indeed, amended the historical account information to zero for "01/23."  This was correct.

66.     But Equifax went a step further and inserted an account balance of $1,760 for "02/23."  This was inaccurate.

67. Equifax also still reported that the date of last activity and date of last payment were "12/2022." These fields were inaccurate as well, as Mr. Lattal had made his final payment to Truist in January 2023.

68. Equifax did not conduct a reasonable reinvestigation into Mr. Lattal's dispute.

69. Equifax simply parroted the results of Beneficial and Truist's reinvestigation results, and took no steps of its own to reconcile the inconsistent information and to determine whether the account information was erroneous.

Mr. Lattal Disputes Yet Again With Defendant Equifax

70. Still with no success in correcting the obvious errors, Mr. Lattal filed yet another dispute with Equifax.

71. In the dispute, Mr. Lattal again informed Equifax that it was improperly reporting his Truist account as open and as having a balance. He also informed Equifax that it was erroneously reporting his Beneficial account as well.

72. Equifax received Mr. Lattal's dispute.

73. Upon information and belief, Equifax sent Truist and Beneficial all relevant information about Mr. Lattal's dispute that it received from Mr. Lattal.

74. Truist and Beneficial did not conduct reasonable reinvestigations with respect to the disputed information.

75.    For example, upon information and belief, Truist did not review its records showing that the account had been closed, including the January 14th letter it sent to Mr. Lattal.

76.    Similarly, upon information and belief, Beneficial did not review its records showing that the account had no balance.

77.    Upon information and belief, Truist and Beneficial reported to Equifax that they had verified the disputed information was reporting accurately.

78.    In April 2023, Equifax sent Mr. Lattal the results of its reinvestigation.

79.    Equifax did not correct the erroneous accounts.

80.    Instead, with respect to Mr. Lattal's Beneficial account, Equifax reported that "[t]his creditor has verified to our company that the balance is being reported correctly."

81.    Equifax's dispute results still showed a $57 balance on Mr. Lattal's Beneficial account.

82.    This balance was inaccurate.

83.    With respect to Mr. Lattal's Truist account, Equifax reported that "[t]his creditor has verified to our company this this account has not been closed. The following fields have been modified: additional information."

84.     Defendant Equifax had, indeed, amended the historical account information.  But oddly, it had amended not just the field for January 2023 when Mr. Lattal made his final payment and closed his account, but it amended every month it was reporting.  It has changed 12/22 from $1,244 to $1,289, 1/23 from $0 to $1,244, 2/23 from $1,760 to $0, and it had now added a balance of $1,760 to 3/23.

85.     These were all inaccurate.

86.     Equifax was also still reporting that the date of last activity and date of last payment were "12/2022."  These too were inaccurate, as Mr. Lattal had made his final payment to Truist in January 2023.

87.     Equifax did not conduct a reasonable reinvestigation into Mr. Lattal's dispute.

88.     Equifax simply parroted the results of Beneficial and Truist's reinvestigation results, and took no steps of its own to reconcile the inconsistent information and to determine whether the account information was erroneous.

89.     Mr. Lattal also filed a complaint with the Consumer Financial Protection Bureau (the "CFPB") concerning the reporting of his Truist account on his Equifax consumer report.

90.     Truist sent Mr. Lattal a letter in response to his CFPB complaint.

91.     In the letter, Truist told Mr. Lattal that its "records indicate that the account was closed on January 13, 2023, and the last payment was received on January 19, 2023."  It also told Mr. Lattal that "[w]e have determined that the account is reporting correctly."

92.     Despite Truist's confirmation that the account was closed and the last payment was received in January 2023, Mr. Lattal's Equifax reports continued to show the opposite.

93.     Equifax also responded to a complaint Mr. Lattal had filed with the CFPB:

> In your complaint, you indicated that there were inaccurate items reporting on your credit file.  Equifax has completed its investigation, including contacting the furnished of the information, where applicable.  A summary of the results are listed below:  Trade: TRUIST BANK THIS ITEM HAS BEEN UPDATED TO REPORT AS PAID IN FULL.  ADDITIONAL INFORMATION HAS BEEN PROVIDED FROM THE ORIGINAL SOURCE REGARDING THIS ITEM.  THE FOLLOWING FIELDS HAVE BEEN MODIFIED: ACTIVITY DESIGNATOR, BALANCE, SCHEDULED PAYMENT, CLOSED DATE, DATE OF LAST ACTIVITY/DATE OF FIRST DELINQUENCY, ADDITIONAL INFORMATION.

94.     Believing the issues had been resolved, in April 2023, Mr. Lattal reviewed his Equifax consumer report.

95.     Unfortunately, nothing had changed.

96.     Equifax was still reporting Mr. Lattal's Truist and Beneficial accounts as open and with a balance.

97.     Aggravatingly for Mr. Lattal, neither Experian nor Trans Union was reporting the inaccurate information that Equifax had on his consumer report.

98.     For example, Experian was accurately reporting that Mr. Lattal's Truist account was "Paid, Closed/Never Late."

99.     But Equifax refused to report the accurate information.

100.    All the while Defendants were inaccurately reporting Mr. Lattal's balances and allegedly open accounts and failing to properly reinvestigate his disputes, they were also hampering his ability to obtain credit.

101.    As one example, Mr. Lattal applied for a credit card with the Department of the Interior Federal Credit Union in April 2023.

102.    Upon information and belief, Equifax provided this potential creditor with Mr. Lattal's consumer report that contained the inaccurate information.

103.    This potential creditor denied Mr. Lattal's application.

## FIRST CLAIM FOR RELIEF

### (against Truist and Beneficial)

### (15 U.S.C. § 1681s-2(b))

104.   Plaintiff re-alleges and incorporates all other factual allegations set forth in this Complaint.

105.   Defendants Truist and Beneficial violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's disputes.

106.   Defendants Truist and Beneficial understood the nature of Plaintiff's disputes when they received them from Equifax.

107.   Defendants Truist and Beneficial violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by Defendant Equifax.

108.   Defendants Truist and Beneficial violated 15 U.S.C. § 1681s-2(b)(1)(E) by failing to modify, delete, or permanently block the reporting of the inaccurate and derogatory information they were reporting in Plaintiff's files.

109.   As a result of Defendants Truist and Beneficial's failures to comply with the requirements of the FCRA, Plaintiff has suffered, and continues to suffer, actual damages, including credit denials, lost opportunity to receive credit, economic loss, damage to reputation, reduction in credit score, invasion of privacy, emotional distress, and interference with normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury.

110.   The violations by Defendants Truist and Beneficial were willful, rendering them liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.   Alternatively, Defendants Truist and Beneficial were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

111.   Plaintiff is entitled to recover attorney fees pursuant to 15 U.S.C. §1681o(a) or, alternatively, 15 U.S.C. 1681o(a).

## SECOND CLAIM FOR RELIEF

### (against Equifax)

### (15 U.S.C. § 1681i(a))

112.   Plaintiff re-alleges and incorporates all other factual allegations set forth in this Complaint.

113.   After Plaintiff sent his disputes, Defendant Equifax violated 15 U.S.C. § 1681i(a)(1) by failing to conduct reasonable reinvestigations to determine whether the disputed information was inaccurate and record the current status of the disputed information or delete the item from Plaintiff's file.

114.   After Plaintiff sent his disputes, Defendant Equifax violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff.

115.   After Plaintiff sent his disputes, Defendant Equifax violated 15 U.S.C. § 1681i(a)(5) by failing to promptly delete the disputed inaccurate information from Plaintiff's file or modify the items of information upon a lawful reinvestigation.

116.   As a result of Defendant Equifax's failure to comply with the requirements of the FCRA, Plaintiff has suffered, and continues to suffer, actual damages, credit denials, lost opportunity to receive credit, economic loss, damage to reputation, reduction in credit score, invasion of privacy, emotional distress, and interference with normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury.

117.   The violations by Defendant Equifax were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, Defendant Equifax was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

118.   Plaintiff is entitled to recover attorney fees pursuant to 15 U.S.C. §1681o(a) or, alternatively, 15 U.S.C. 1681o(a).

## THIRD CLAIM FOR RELIEF

### (against Equifax)

### (15 U.S.C. § 1681e(b))

119.   Plaintiff re-alleges and incorporates all other factual allegations set forth in this Complaint.

120.   Defendant Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports furnished regarding Plaintiff.

121.   Before issuing Plaintiff's consumer reports, Defendant Equifax possessed information showing that the information it was reporting was not true.

122.   Defendant Equifax knew or should have known about its obligations under the FCRA.  These obligations are well established in the plain language of the FCRA, in the promulgations of the Federal Trade Commission, and in well-established case law.

123.   Defendant Equifax obtained or had available substantial written materials that apprised it of its duties under the FCRA.

124.   Despite knowing of these legal obligations, Defendant Equifax acted consciously in breaching its known duties and deprived Plaintiff of his rights under the FCRA.

125.   As a result of these FCRA violations by Defendant Equifax, Plaintiff has suffered, and continues to suffer, actual damages, lost opportunities to receive credit, economic loss, damage to reputation, reduction in credit score, emotional

distress, and interference with normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury.

126.   The violations by Defendant Equifax were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, Defendant Equifax was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

127.   Plaintiff is entitled to recover attorney fees pursuant to 15 U.S.C. §1681o(a) or, alternatively, 15 U.S.C. 1681o(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.   Actual damages to be determined by the jury, or statutory damages of $100 to $1,000, to be determined by the jury;

2.   Punitive damages, to be determined by the jury;

3.   Attorneys' fees; and

4.   Costs of the action.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury.

DATED: April 21, 2023

By: /s/ Andrew L. Weiner
    Jeffrey B. Sand
    Ga. Bar No. 181568
    Andrew L. Weiner
    Ga. Bar No. 808278
    WEINER & SAND LLC
    800 Battery Avenue SE
    Suite 100
    Atlanta, GA  30339
    (404) 205-5029 (Tel.)
    (866) 800-1482 (Fax)
    js@wsjustice.com
    aw@wsjustice.com

    *Counsel for Plaintiff*