**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| NATALIA SUTHERLAND and MARIA SUTHERLAND, as Surviving Children of ANDREW REED SUTHERLAND, Decedent, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION FILE NO.: |
| v. | ) | |
| | ) | _____ |
| BUTTS COUNTY, GEORGIA; BUTTS COUNTY SHERIFF'S OFFICE; GARY LONG, in his Individual and Official Capacities; JOSEPH MANNING, in his Individual and Official Capacities; ANTHONY DUPREE, in his Individual Official Capacities; TERRY SMITH, in his Individual and Official Capacities; EMMETT LEWIS, in his Individual and Official Capacities; KALEB HILL, in his Individual and Official Capacities; CALEB BROOKS, in his Individual and Official Capacities; BRANDON BOYD, in his Individual and Official Capacities; CHRISTIN MILLER, in her Individual and Official Capacities; ANTONIO LEE, in his Individual and Official Capacities; CONSTANCE ADAMS, in her Individual and Official Capacities; SOUTHERN HEALTH PARTNERS, INC.; AMANDA ALLEN, in her Individual and Official Capacities; and NETANYA SAWYER, in her Individual and Official Capacities; and JOHN DOE(S) 1-10, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Plaintiffs file this Complaint for Damages and Demand for Jury Trial[1] against Defendants, respectfully showing the Court as follows:

## PARTIES, JURISDICTION, & VENUE

1. Plaintiff Natalia Sutherland is a citizen and resident of California and submits herself to the jurisdiction of this Court.

2. Plaintiff Maria Sutherland is a citizen and resident of California and submits herself to the jurisdiction of this Court.

3. Decedent Anthony Reed Sutherland was not married at the time of his death. Decedent Anthony Reed Sutherland was a resident of Maryland at the time of his death. Plaintiffs Natalia Sutherland and Maria Sutherland, both over the age of 18, are the only children of Decedent. Plaintiffs are the proper parties to bring this wrongful death action.

4. Defendant Butts County is a political subdivision of the State of Georgia. Defendant Butts County is subject to the jurisdiction and venue of this Court. Service upon Butts County may be perfected by delivering a Summons and copy of this

---

[1] Plaintiffs are currently in the process of setting up the Estate in Maryland. It is Plaintiff's intention to amend this Complaint and add an Estate claim as soon as the Estate has been established in Maryland.

Complaint to a majority of its Commissioners, whose names and addresses are as follows:

    a. Ken Rivers, First District Commissioner, 609 Four Points Road, Jackson, Georgia 30233

    b. Robert L. Henderson, Sr., Second District Commissioner, 340 Cenie Road, Flovilla, Georgia 30216

    c. Joe Brown, Jr., Third District Commissioner, 158 Ridgeway Road, Jackson, Georgia 30233

    d. J. Keith Douglas, Fourth District Commissioner and Chairman, 493 Clyde's Way, Jackson, Georgia 30233

    e. Russ Crumbley, Fifth District Commissioner and Vice Chairman, 408 Halls Bridge Road, Jackson, Georgia 30233

5. Defendant Butts County Sheriff's Office performs law enforcement services in Butts County and operates the Butts County Detention Center. The Butts County Sheriff's Office may be served by delivering a Summons and copy of this Complaint to Sheriff Gary Long at 835 Ernest Biles Drive, Jackson, Georgia 30233. The Sheriff's Office is subject to the jurisdiction and venue of this Court.

6. Prior to filing this Complaint, within 12 months of the negligent acts or omissions of Defendants, Plaintiffs served upon Butts County, Georgia; Butts

County Sheriff's Office; and Butts County Sheriff, Gary Long, a proper and timely *ante litem* notice in compliance with the laws of the State of Georgia, specifically, OCGA § 36-11-1. A copy of the *ante litem* notice is attached hereto as Exhibit "A," along with proof of service.

7. Defendant Gary Long is a resident of Butts County. At all times relevant to this action, Defendant Long was the Butts County Sheriff. Defendant Long may be served with process by delivering a Summons and copy of this Complaint to him at his place of business at 835 Ernest Biles Drive, Jackson, Georgia 30233. Defendant Long is subject to the jurisdiction and venue of this Court.

8. Defendant Joseph Manning is a resident of Butts County. At all times relevant to this action, Defendant Manning was acting within the scope of his authority and as an agent, employee, and/or detention officer for Defendant Butts County Sheriff's Office. Defendant Manning is sued in his individual and official capacities for the negligent performance of ministerial acts. Defendant Manning may be served with process by delivering a Summons and copy of this Complaint to him at his residence, 2489 Highway 36 East, Jackson, Georgia 30233. Defendant Manning is subject to the jurisdiction and venue of this Court.

9. Defendant Anthony Dupree is a resident of Butts County. At all times relevant to this action, Defendant Dupree was acting within the scope of his authority and as

an agent, employee, and/or detention officer for Defendant Butts County Sheriff's Office. Defendant Dupree is sued in his individual and official capacities for the negligent performance of ministerial acts. Defendant Dupree may be served with process by delivering a Summons and copy of this Complaint to him at his residence, 134 Watkins Park Pool Road, Jackson, Georgia 30233. Defendant Dupree is subject to the jurisdiction and venue of this Court.

10. Defendant Terry Smith is a resident of Butts County. At all times relevant to this action, Defendant Smith was acting within the scope of his authority and as an agent, employee, and/or detention officer for Defendant Butts County Sheriff's Office. Defendant Smith is sued in his individual and official capacities for the negligent performance of ministerial acts. Defendant Smith may be served with process by delivering a Summons and copy of this Complaint to him at his residence, 219 Shiloh Road, Jenkinsburg, Georgia 30234. Defendant Smith is subject to the jurisdiction and venue of this Court.

11. Defendant Emmett Lewis is a resident of Bibb County. At all times relevant to this action, Defendant Lewis was acting within the scope of his authority and as an agent, employee, and/or detention officer for Defendant Butts County Sheriff's Office. Defendant Lewis is sued in his individual and official capacities for the negligent performance of ministerial acts. Defendant Lewis may be served with

process by delivering a Summons and copy of this Complaint to him at his residence, 7940 Knoxville Road, Lizella, Georgia 31082. Defendant Lewis is subject to the jurisdiction and venue of this Court.

12. Defendant Kaleb Hill is a resident of Butts County. At all times relevant to this action, Defendant Hill was acting within the scope of his authority and as an agent, employee, and/or detention officer for Defendant Butts County Sheriff's Office. Defendant Hill is sued in his individual and official capacities for the negligent performance of ministerial acts. Defendant Hill may be served with process by delivering a Summons and copy of this Complaint to him at his residence, 234 Brooks Road, Jackson, Georgia 30233. Defendant Hill is subject to the jurisdiction and venue of this Court.

13. Defendant Caleb Brooks is a resident of Henry County. At all times relevant to this action, Defendant Brooks was acting within the scope of his authority and as an agent, employee, and/or detention officer for Defendant Butts County Sheriff's Office. Defendant Brooks is sued in his individual and official capacities for the negligent performance of ministerial acts. Defendant Brooks may be served with process by delivering a Summons and copy of this Complaint to him at his residence, 189 Vintage Trail, McDonough, Georgia 30253. Defendant Brooks is subject to the jurisdiction and venue of this Court.

14. Defendant Brandon Boyd is a resident of Lamar County. At all times relevant to this action, Defendant Boyd was acting within the scope of his authority and as an agent, employee, and/or detention officer for Defendant Butts County Sheriff's Office. Defendant Boyd is sued in his individual and official capacities for the negligent performance of ministerial acts. Defendant Boyd may be served with process by delivering a Summons and copy of this Complaint to him at his residence, 123 Charleston Lane, Milner, Georgia 30257. Defendant Boyd is subject to the jurisdiction and venue of this Court.

15. Defendant Christin Miller is a resident of Butts County. At all times relevant to this action, Defendant Miller was acting within the scope of her authority and as an agent, employee, and/or detention officer for Defendant Butts County Sheriff's Office. Defendant Miller is sued in her individual and official capacities for the negligent performance of ministerial acts. Defendant Miller may be served with process by delivering a Summons and copy of this Complaint to her at her residence, 169 Ambrose Circle, Jackson, Georgia 30234. Defendant Miller is subject to the jurisdiction and venue of this Court.

16. Defendant Antonio Lee is a resident of Fayette County. At all times relevant to this action, Defendant Lee was acting within the scope of his authority and as an agent, employee, and/or Major for Defendant Butts County Sheriff's Office.

Defendant Lee is sued in his individual and official capacities for the negligent performance of ministerial acts. Defendant Lee may be served with process by delivering a Summons and copy of this Complaint to him at his residence, 295 Fairfield Circle, Fayetteville, Georgia 30214. Defendant Lee is subject to the jurisdiction and venue of this Court.

17. Defendant Constance Adams is a resident of Newton County. At all times relevant to this action, Defendant Adams was acting within the scope of her authority and as an agent, employee, and/or Sergeant for Defendant Butts County Sheriff's Office. Defendant Adams is sued in her individual and official capacities for the negligent performance of ministerial acts. Defendant Adams may be served with process by delivering a Summons and copy of this Complaint to her at her residence, 230 Cypress Drive, Covington, Georgia 30016. Defendant Adams is subject to the jurisdiction and venue of this Court.

18. Defendant Southern Health Partners, Inc. (hereinafter "Defendant Southern Health Partners") is a for profit, Delaware corporation with a principal place of business located at 2030 Hamilton Place Boulevard, Suite 140, Chattanooga, Tennessee 37421. Defendant Southern Health Partners may be served with process by serving its Registered Agent, The Corporation Company (FL), at 106 Colony Park Dr., Suite 800-B, Cumming, Forsyth County, Georgia 30040.

19. In April 2021, Defendant Southern Health Partners contracted with Defendant Butts County Sheriff's Office to provide medical services to inmates at the Butts County Detention Center.

20. In April 2021, Defendant Southern Health Partners contracted with Defendant Butts County Sheriff's Office to provide mental health services to inmates at the Butts County Detention Center.

21. Defendant Amanda Allen is a resident of Butts County. At all times relevant to this action, Defendant Allen was acting within the scope of her authority and as an agent, employee, and/or nurse for Defendant Southern Health Partners and/or Defendant Butts County Sheriff's Office. Defendant Allen is sued in her individual and official capacities for the negligent performance of ministerial acts. Defendant Allen may be served with process by delivering a Summons and copy of this Complaint to her at her residence, 1741 Highway 36 East, Jackson, Georgia 30233. Defendant Allen is subject to the jurisdiction and venue of this Court.

22. Defendant Netanya Sawyer is a resident of Spalding County. At all times relevant to this action, Defendant Sawyer was acting within the scope of her authority and as an agent, employee, and/or nurse for Defendant Southern Health Partners and/or Defendant Butts County Sheriff's Office. Defendant Sawyer is sued in her individual and official capacities for the negligent performance of ministerial

acts. Defendant Sawyer may be served with process by delivering a Summons and copy of this Complaint to her at her residence, 102 Garnett Lane, Griffin, Georgia 30224. Defendant Sawyer is subject to the jurisdiction and venue of this Court.

23. Defendant(s) John Doe 1-10 (hereinafter "Defendant(s) Doe") is/are Butts County Sheriff's Office detention officer(s) or employee(s). At all times relevant to this action, Defendant(s) Doe was/were acting within the scope of his/her/their authority and as agent(s) of Defendant Butts County, Georgia and/or Defendant Butts County Sheriff's Office. Defendant Does include, but are not limited to, a Butts County Sheriff's Office officer Mayes, whose first name is not known; a Butts County Sheriff's Office officer Worley, whose first name is not known; a Butts County Sheriff's Office officer Addison, whose first name is not known; and a Butts County Sheriff's Office officer D. Nunn, whose first name is not known.

24. Service upon Defendant(s) Doe will be perfected upon identification of the Butts County Sheriff's Office officer(s) who has/have committed the wrongful and/or negligent acts alleged in this Complaint.

25. Defendants Manning, Dupree, Smith, Lewis, Hill, Brooks, Boyd, Miller, Lee, Adams, and Doe(s) are collectively referred to as the "Detention Center employees."

26. This cause of action for the wrongful death of Andrew Reed Sutherland arises out of the negligent acts and/or omissions of the employees and/or agents of Defendant Butts County, Georgia.

27. This cause of action for the wrongful death of Andrew Reed Sutherland arises out of the negligent acts and/or omissions of the employees and/or agents of Defendant Butts County Sheriff's Office and Defendant Long.

28. This cause of action for the wrongful death of Andrew Reed Sutherland arises out of the negligent acts and/or omissions of the nurses and staff of Defendant Southern Health Partners.

29. This cause of action for the wrongful death of Andrew Reed Sutherland arises out of the negligent acts and/or omissions of Defendant Allen.

30. This cause of action for the wrongful death of Andrew Reed Sutherland arises out of the negligent acts and/or omissions of Defendant Sawyer.

31. The Court may exercise jurisdiction over the subject matter of this action.

## **FACTUAL ALLEGATIONS**

32. Plaintiffs re-allege and incorporate by reference all allegations contained in paragraphs 1 through 31 as if fully alleged herein.

33. On Friday, April 23, 2021, Decedent Andrew Reed Sutherland (hereinafter referred to as "Decedent") was arrested for theft by shoplifting and public indecency.

34. On Friday, April 23, 2021, Decedent was taken into custody by the Butts County Sheriff's Office.

35. Decedent was held at the Butts County Detention Center.

36. The Butts County Detention Center is operated and controlled by the Butts County Sheriff's Office and its employees, officers, and/or agents.

37. Defendant Butts County Sheriff's Office is liable for the negligent acts and/or omissions committed within the course and scope of employment and/or agency by its employees, officers, and/or agents.

38. During booking Decedent told medical staff and Butts County Sheriff's Office employees he had mental health problems, specifically, bi-polar disorder.

39. During booking, Decedent told medical staff and Butts County Sheriff's Office employees he did not have medication for his bi-polar disorder with him.

40. After booking, Decedent was placed in Holding Cell 7 with other inmates.

41. Defendant Southern Health Partners is liable for the negligent acts and/or omissions committed within the course and scope of employment and/or agency by its employees, nurses, and/or agents.

42. On Saturday, April 24, 2021, Defendant Allen performed an intake evaluation on Decedent.

43. Decedent advised Defendant Allen he had mental health problems, specifically, bi-polar disorder.

44. Decedent advised Defendant Allen he did not have medication for his bi-polar disorder with him.

45. Decedent advised Defendant Allen he had attempted suicide in 2015

46. Defendant Allen never sought to have Decedent evaluated by a medical doctor.

47. Defendant Allen never sought to have Decedent evaluated by a mental health professional.

48. Defendant Allen never sought to obtain medication for Decedent.

49. In addition to April 24, 2021, Defendant Allen worked on April 25, 2021 and April 26, 2021.

50. Defendant Allen did not have contact with Decedent on April 25, 2021.

51. Defendant Allen did not have contact with Decedent on April 26, 2021.

52. On Saturday, April 24, 2021, at approximately 1820 hours, inmates in Holding Cell 7 with Decedent began knocking and/or banging on the window of Holding Cell 7.

53. Defendant Hill and Defendant Brooks opened the door to Holding Cell 7 and the inmates inside forced Decedent out of Holding Cell 7.

54. When forced out of Holding Cell 7, Decedent briefly tried to get away, but was detained by Defendant Hill and Defendant Brooks.

55. After speaking with Decedent, it was obvious Decedent was not in his right state of mind.

56. Inmates in Holding Cell 7 advised Defendant Hill and/or Defendant Brooks that Decedent had been trying to fight them.

57. Inmates in Holding Cell 7 advised Defendant Hill and/or Defendant Brooks that Decedent was talking to himself.

58. Inmates in Holding Cell 7 advised Defendant Hill and/or Defendant Brooks that Decedent ate feces out of the toilet.

59. Inmates in Holding Cell 7 advised Defendant Hill and/or Defendant Brooks that Decedent had purposefully fallen face forward to the floor of the cell two to four times, catching himself right before he hit the floor, nonetheless, still hitting the floor with force.

60. Inmates in Holding Cell 7 advised Defendant Hill and/or Defendant Brooks that Decedent had stated, "I need to die."

61. Defendant Hill knew Decedent did not have medication.

62. Defendant Brooks knew Decedent did not have medication.

63. Decedent was placed in T Hall, T-1.

64. While in T Hall, T-1, Decedent purposefully fell backward and hit his head on the floor.

65. Defendant Hill heard Decedent fall and hit his head.

66. Defendant Hill and Defendant Mays entered T Hall, T-1 and asked Decedent questions.

67. Decedent would answer some questions but would not answer some questions.

68. Defendant Hill checked the back of Decedent's head and found a knot on the back of Decedent's head.

69. Decedent was placed in Holding Cell 3.

70. Defendant John Doe, believed to be an EMS officer with the last name of Nunn, checked on Decedent in Holding Cell 3.

71. After Defendant John Doe, believed to be an EMS officer with the last name of Nunn, left Holding Cell 3, Decedent began forward hitting his head against the window of the door.

72. No Detention Center employees sought to have Decedent evaluated by a medical doctor.

73. No Detention Center employees sought to have Decedent evaluated by a mental health professional.

74. No Detention Center employees sought to obtain medication for Decedent.

75. Defendant Boyd asked Decedent why he was hitting his head against the window of the door.

76. When Defendant Boyd asked Decedent why he was hitting his head against the window of the door, Decedent responded, "I want to kill myself."

77. Defendant Brooks asked Decedent to stop hitting his head on the window of the door.

78. Defendant Brooks and Defendant Hill opened the door to Holding Cell 3 and Decedent began screaming for them to close the door.

79. Defendant Brooks asked Decedent what he was doing and Decedent replied he needed to go back to Holding Cell 7 "to get fucked."

80. While in Holding Cell 3, Decedent said he was hitting his head because he was ashamed.

81. While in Holding Cell 3, Decedent said he needed to die.

82. While in Holding Cell 3, Decedent said he did not have medication for bi-polar with him.

83. While in Holding Cell 3, Decedent said he needed medication because he was extreme bi-polar.

84. Decedent was placed in a suicide suit.

85. Decedent was placed in a restraint chair.

86. While in the restraint chair, Decedent asked for water and was given water.

87. Decedent tried to suffocate himself with the water.

88. Decedent was transported in a restraint chair to Medical 1.

89. Decedent was in the restraint chair for approximately 45 minutes.

90. Decedent was placed on suicide watch on April 26, 2021.

91. Defendant Sawyer spoke with Decedent on April 26, 2021.

92. Defendant Sawyer placed Decedent on suicide watch on April 26, 2021.

93. On April 26, 2021, Decedent advised Defendant Sawyer of his mental health condition.

94. On April 26, 2021, Decedent advised Defendant Sawyer he was bi-polar.

95. On April 26, 2021, Decedent advised Defendant Sawyer he did not have medication.

96. Defendant Sawyer never sought to have Decedent evaluated by a medical doctor.

97. Defendant Sawyer never sought to have Decedent evaluated by a mental health professional.

98. Defendant Sawyer never sought to obtain medication for Decedent.

99. Medical 1 has one camera.

100. Medical 1 has one camera and the inmate in Medical 1 can be seen 24/7 via video feed in the Control Tower.

101. There are no nurses on duty at night at the Butts County Detention Center.

102. In a video from Medical 1 taken on April 26, 2021, at timestamp 16:29:06, Decedent fell down and got back up. He was on the ground approximately 50 seconds.

103. In a video from Medical 1 taken on April 26, 2021, at timestamp 16:32:00, Decedent jerks uncontrollably.

104. In a video from Medical 1 taken on April 26, 2021, at timestamp 16:32:00, it appears as if Decedent suffers a seizure.

105. In a video from Medical 1 taken on April 26, 2021, at timestamp 16:32:42, Decedent got up.

106. In a video from Medical 1 taken on April 26, 2021, at timestamp 16:27:10, Decedent fell and got back up.

107. In a video from Medical 1 taken on April 26, 2021, at timestamp 19:20:35, Decedent fell backwards.

108. In a video from Medical 1 taken on April 26, 2021, at timestamp 19:21:10, Decedent got back up.

109. In a video from Medical 1 taken on April 26, 2021, at timestamp 19:22:33, Decedent fell forward and caught himself with his hands.

110. Decedent laid on the ground.

111. Decedent began having spasms.

112. In a video from Medical 1 taken on April 26, 2021, at timestamp 19:24:50, the door to Medical 1 was opened and it appears as if Defendant Dupree speaks with Decedent.

113. When Defendant Manning came on shift on April 26, 2021, he was warned by fellow officer and his cousin, Taylor Brooks, that Decedent was suicidal.

114. When Defendant Manning came on shift on April 26, 2021, he was warned by fellow officer and his cousin, Taylor Brooks, to watch Decedent very closely.

115. After Defendant Manning came on shift he got busy and took his eyes off of Decedent for 15 to 30 minutes.

116. After Defendant Manning came on shift he got busy and took his eyes off of Decedent for 15 to 30 minutes, when he looked at Decedent he was laying on the floor on his back.

117. Defendant Manning notified the officer in charge, Defendant Dupree, he thought Decedent had fallen but wasn't sure.

118. Defendant Manning witnessed Decedent fall forward and catch himself with his hands, which was reported to Defendant Dupree.

119. On April 26, 2021, Defendant Smith was told Decedent had fallen. Defendant Smith went to check on Decedent. Decedent was laying on the floor. Decedent was breathing very hard. Defendant Smith left Decedent lying on the floor.

120. On April 26, 2021, a telephone call was placed to Defendant Lee and he was informed of the behavior, falls, and/or condition of Decedent.

121. At 5:31 a.m. on April 27, 2021, a Detention Center employee entered Medical 1 to check on Decedent.

122. At 5:31 a.m., on April 27, 2021, Defendant Smith entered Medical 1 to check on Decedent.

123. At 7:50 a.m., on April 27, 2021, Defendant Lewis entered Medical 1 to check on Decedent.

124. Between 5:31 a.m. and 7:50 a.m., on April 27, 2021, no Detention Center employee entered Medical 1 to check on Decedent.

125. Between 5:31 a.m. and 7:50 a.m., on April 27, 2021, no Detention Center employee performed in-person surveillance of Decedent.

126. Between 5:31 a.m. and 7:50 a.m., on April 27, 2021, no Detention Center employee checked on Decedent.

127. Between 5:31 a.m. and 7:50 a.m., on April 27, 2021, no Detention Center employee checked on Decedent.

128. On April 27, 2021, after coming on duty, Defendant Lee reviewed camera footage and noticed Decedent laying naked on the floor of Medical 1.

129. Defendant Lee radioed Defendant Lewis to check on Decedent.

130. When Defendant Lewis entered Medical 1, Decedent was laying on the floor on his stomach.

131. When Defendant Lewis entered Medical 1, Decedent was not responsive.

132. When Defendant Lewis entered Medical 1, one side of Decedent's face was swollen.

133. When Defendant Lewis entered Medical 1, one of Decedent's eyes would not open.

134. When Defendant Lewis entered Medical 1, foam was coming out of Decedent's mouth.

135. When Defendant Lewis entered Medical 1, Decedent's arms were stiff.

136. When Defendant Lewis entered Medical 1, Decedent's feet were pointed.

137. At 8:12 a.m., on April 27, 2021, Decedent was taken out of Medical 1 by emergency responders to be transported to Atrium Health Navicent Medical Center, in Macon, Georgia.

138. Detention Center employees failed to properly monitor the video feed from Medical 1.

139. Decedent was diagnosed with a subdural hemorrhage.

140. Decedent died on May 10, 2021.

141. Postmortem blood alcohol testing of evidence taken from Decedent on May 13, 2021 was negative.

142. Postmortem toxicology testing of evidence taken from Decedent on May 13, 2021 was negative for all drugs tested.

143. The Butts County Sheriff's Office has a ministerial policy/procedure that mandates that inmates who are suicidal, assaultive, escape risks, mentally/emotionally disordered, or recovering from intoxicants shall receive in-person surveillance of at least every 15 minutes.

144. Based on this suicide watch policy/procedure, Decedent was required to be on 15-minute in-person surveillance checks by employees without discretion.

145. The suicide watch policy/procedure requires that employees perform the 15-minnute in-person surveillance checks on a non-consistent basis within the 15-minute time frame.

146. Complying with this suicide watch policy/procedure and having Decedent checked in-person every 15 minutes did not require the exercise of any personal

deliberation or judgment by any employee, officer, or staff member of the Butts County Sheriff's Office.

147. The Detention Center employees had no discretion to skip any 15-minute in-person check.

148. The Detention Center employees had a non-discretionary duty to check Decedent every 15 minutes.

149. The Detention Center employees had a non-discretionary duty to check Decedent on a non-consistent basis within the 15-minute time frame.

150. The Detention Center employees failed to comply with their non-discretionary duties and breached their ministerial duties to provide in-person surveillance checks on Decedent every 15 minutes.

151. The Detention Center employees failed to comply with their non-discretionary duties and breached their ministerial duties to provide in-person surveillance checks on a non-consistent basis within the 15-minute time frame.

152. No one at the Butts County Detention Center, including Detention Center employees, Defendant Southern Health Partners, and Defendants Allen and Sawyer, provided in-person surveillance of Decedent between 5:31 a.m. and 7:50 a.m., on April 27, 2021.

153. Entries on the Suicide Watch Record for April 27, 2021 do not accurately reflect checks performed by Detention Center employees.

154. The Suicide Watch Record for April 27, 2021 was falsified.

155. Detention Center employees put false information in the Suicide Watch Record for April 27, 2021.

156. Defendant Butts County Sheriff's Office did not have adequate staff to devote appropriate attention to Decedent.

157. Defendant Butts County Sheriff's Office should not have held Decedent in its custody.

158. Defendant Butts County Sheriff's Office should not have held Decedent in its custody after April 24, 2021.

159. Defendant Butts County Sheriff's Office should not have held Decedent in its custody after April 25, 2021.

160. Defendant Butts County Sheriff's Office should not have held Decedent in its custody after April 26, 2021.

161. Defendant Butts County Sheriff's Office should have transferred Decedent out of the Butts County Detention Center for medical and/or mental healthcare on April 24, 2021.

162. Defendant Butts County Sheriff's Office should have transferred Decedent out of the Butts County Detention Center for medical and/or mental healthcare on April 25, 2021.

163. Defendant Butts County Sheriff's Office should have transferred Decedent out of the Butts County Detention Center for medical and/or mental healthcare on April 26, 2021.

164. Defendant Southern Health Partners and its employees and/or agents had a duty to perform Suicide Watch visual checks on Decedent on April 26, 2021.

165. Defendant Southern Health Partners and its employees and/or agents had a duty to perform Suicide Watch visual checks on Decedent on April 27, 2021.

166. Defendant Sawyer failed to perform Suicide Watch visual checks on Decedent on April 26, 2021.

167. Defendant Sawyer failed to perform Suicide Watch visual checks on Decedent on April 27, 2021.

168. Defendant Allen failed to perform Suicide Watch visual checks on Decedent on April 26, 2021.

169. Defendant Allen failed to perform Suicide Watch visual checks on Decedent on April 27, 2021.

## CAUSE OF ACTION

## COUNT I

## (Negligent Performance of Ministerial Acts in Individual Capacities)

170. Plaintiffs re-allege and incorporate by reference all allegations contained in paragraphs 1 through 169 as if fully alleged herein.

171. The Detention Center employees and Defendant Long had duties to exercise ordinary care in performing their duties at the Butts County Detention Center.

172. The Detention Center employees and Defendant Long breached these duties in the following ways:

    a.  Failing to perform in person surveillance on Decedent between 5:31 a.m. and 7:50 a.m., on April 27, 2021;

    b.  Failing to have Mr. Sutherland evaluated by a medical doctor and/or mental health professional;

    c.  Failing to obtain medication for Mr. Sutherland for his bi-polar disorder;

    d.  Failing to assess whether the Butts County Sheriff's Office could provide the appropriate level of care necessary for Mr. Sutherland;

e.  Failing to assess that the Butts County Sheriff's Office could not provide the medical and/or mental healthcare needed by Mr. Sutherland;

f.  Failing to recognize and seek for Mr. Sutherland to receive care and treatment outside of the Butts County Detention Center when his condition became beyond the level of care of the Butts County Sheriff's Office;

g.  Failing to have Mr. Sutherland transferred out of the Butts County Detention Center for evaluation, care, and treatment;

h.  Failing to follow policies and procedures of the Butts County Sheriff's Office, including but not limited to, Suicide Watch policy and procedure;

i.  Failing to follow policies and procedures of Southern Health Partners, Inc., including but not limited to, Suicide Watch policy and procedure;

j.  Failing to perform visual checks on Mr. Sutherland every fifteen minutes while he was on Suicide Watch; and

k.  Failing to appropriately document the Suicide Watch Record; and

l.  Failing to perform visual checks on Mr. Sutherland every fifteen minutes on a non-consistent basis within the 15 minute time frame.

173. The above failures by the Detention Center employees and Defendant Long proximately caused Decedent's injuries, suffering, and death.

174. Defendants Butts County and Butts County Sheriff's Office are liable for the actions and/or failures to act by the Detention Center employees and Defendant Long.

175. Plaintiffs are entitled to recover from Defendants Butts County and Butts County Sheriff's Office damages for the full value of the life of Decedent in an amount to be determined by the enlightened conscience of the jury pursuant to the Georgia Wrongful Death Act, OCGA 51-4-1, *et seq*.

## COUNT II

### (Negligent Performance of Ministerial Acts in Official Capacities)

176. Plaintiffs re-allege and incorporate by reference all allegations contained in paragraphs 1 through 175 as if fully alleged herein.

177. The Detention Center employees and Defendant Long had duties to exercise ordinary care in performing their duties at the Butts County Detention Center.

178. The Detention Center employees and Defendant Long breached these duties in the following ways:

      a. Failing to perform in person surveillance on Decedent between 5:31 a.m. and 7:50 a.m., on April 27, 2021;

b. Failing to have Mr. Sutherland evaluated by a medical doctor and/or mental health professional;

c. Failing to obtain medication for Mr. Sutherland for his bi-polar disorder;

d. Failing to assess whether the Butts County Sheriff's Office could provide the appropriate level of care necessary for Mr. Sutherland;

e. Failing to assess that the Butts County Sheriff's Office could not provide the medical and/or mental healthcare needed by Mr. Sutherland;

f. Failing to recognize and seek for Mr. Sutherland to receive care and treatment outside of the Butts County Detention Center when his condition became beyond the level of care of the Butts County Sheriff's Office;

g. Failing to have Mr. Sutherland transferred out of the Butts County Detention Center for evaluation, care, and treatment;

h. Failing to follow policies and procedures of the Butts County Sheriff's Office, including but not limited to, Suicide Watch policy and procedure;

    i.  Failing to follow policies and procedures of Southern Health Partners, Inc., including but not limited to, Suicide Watch policy and procedure;

    j.  Failing to perform visual checks on Mr. Sutherland every fifteen minutes while he was on Suicide Watch; and

    k.  Failing to appropriately document the Suicide Watch Record; and

    l.  Failing to perform visual checks on Mr. Sutherland every fifteen minutes on a non-consistent basis within the 15 minute time frame.

179. The above failures by the Detention Center employees and Defendant Long proximately caused Decedent's injuries, suffering, and death.

180. Defendants Butts County and Butts County Sheriff's Office are liable for the actions and/or failures to act by the Detention Center employees and Defendant Long.

181. Plaintiffs are entitled to recover from Defendants Butts County and Butts County Sheriff's Office damages for the full value of the life of Decedent in an amount to be determined by the enlightened conscience of the jury pursuant to the Georgia Wrongful Death Act, OCGA 51-4-1, *et seq*.

## COUNT III

## (Negligence of Butts County, Butts County Sheriff's Office,

## and Defendant Long)

182. Plaintiffs re-allege and incorporate by reference all allegations contained in paragraphs 1 through 181 as if fully alleged herein.

183. Defendants Butts County, Butts County Sheriff's Office, Defendant Long, and their employees, officers, agents, and others acting on their behalf had a duty to exercise ordinary care in their interaction and supervision of inmates at Butts County Detention Center.

184. Defendants Butts County, Butts County Sheriff's Office, Defendant Long, and their employees, officers, agents, and others acting on their behalf breached this duty in the following ways:

   a. Failing to perform in person surveillance on Decedent between 5:31 a.m. and 7:50 a.m., on April 27, 2021;

   b. Failing to have Mr. Sutherland evaluated by a medical doctor and/or mental health professional;

   c. Failing to obtain medication for Mr. Sutherland for his bi-polar disorder;

d.  Failing to assess whether the Butts County Sheriff's Office could provide the appropriate level of care necessary for Mr. Sutherland;

e.  Failing to assess that the Butts County Sheriff's Office could not provide the medical and/or mental healthcare needed by Mr. Sutherland;

f.  Failing to recognize and seek for Mr. Sutherland to receive care and treatment outside of the Butts County Detention Center when his condition became beyond the level of care of the Butts County Sheriff's Office;

g.  Failing to have Mr. Sutherland transferred out of the Butts County Detention Center for evaluation, care, and treatment;

h.  Failing to follow policies and procedures of the Butts County Sheriff's Office, including but not limited to, Suicide Watch policy and procedure;

i.  Failing to follow policies and procedures of Southern Health Partners, Inc., including but not limited to, Suicide Watch policy and procedure;

j.  Failing to perform visual checks on Mr. Sutherland every fifteen minutes while he was on Suicide Watch; and

k.  Failing to appropriately document the Suicide Watch Record; and

l.   Failing to perform visual checks on Mr. Sutherland every fifteen minutes on a non-consistent basis within the 15 minute time frame.

185. The above failures proximately caused Decedent's injuries, suffering, and death.

186. Defendants Butts County, Butts County Sheriff's Office, and Defendant Long are liable for the actions and/or failures to act by the Detention Center employees and Defendant Long.

187. Plaintiffs are entitled to recover from Defendants Butts County, Butts County Sheriff's Office, and Defendant Long damages for the full value of the life of Decedent in an amount to be determined by the enlightened conscience of the jury pursuant to the Georgia Wrongful Death Act, OCGA 51-4-1, *et seq*.

## COUNT IV

### (Ordinary Negligence as to Defendant Southern Health Partners)

188. Plaintiffs re-allege and incorporate by reference all allegations contained in paragraphs 1 through 187 as if fully alleged herein.

189. The nurses and staff of Defendant Southern Health Partners owed Decedent a legal duty to provide him with proper evaluation, monitoring, care, treatment, supervision, and services with reasonable care and skill.

190. The nurses and staff of Defendant Southern Health Partners failed to act with reasonable care and skill in their evaluation, monitoring, care, treatment, supervision, and services to Decedent.

191. The failure of the nurses and staff of Defendant Southern Health Partners to act with reasonable care and skill in their evaluation, monitoring, care, treatment, supervision, and services to Decedent proximately caused Decedent's injuries, suffering, and death.

192. Defendant Southern Health Partners is liable for the negligence of its nurses and staff.

193. Plaintiffs are entitled to recover from Defendant Southern Health Partners damages for the full value of the life of Decedent in an amount to be determined by the enlightened conscience of the jury pursuant to the Georgia Wrongful Death Act, OCGA 51-4-1, *et seq*.

## COUNT V

### (Professional Negligence as to Defendant Southern Health Partners)

194. Plaintiffs re-allege and incorporate by reference all allegations contained in paragraphs 1 through 193 as if fully alleged herein.

195. The nurses and staff of Defendant Southern Health Partners owed Decedent a legal duty to provide him with that degree of care that other nurses and staff, acting

in a reasonably prudent manner, would have exercised under the same or similar circumstances, in their care and treatment of Decedent.

196. The nurses and staff of Defendant Southern Health Partners were negligent and failed to use that degree of care that other nurses and staff, acting in a reasonably prudent manner, would have exercised under the same or similar circumstances, in their care and treatment of Decedent in, at least, the following respects:

    a.  Failing to have Mr. Sutherland evaluated by a medical doctor and/or mental health professional;

    b.  Failing to obtain medication for Mr. Sutherland for his bi-polar disorder;

    c.  Failing to assess whether the Butts County Sheriff's Office; Southern Health Partners, Inc.; Nurse Allen; and Nurse Sawyer could provide the appropriate level of care necessary for Mr. Sutherland;

    d.  Failing to assess that the Butts County Sheriff's Office; Southern Health Partners, Inc.; Nurse Allen; and Nurse Sawyer could not provide the medical and/or mental healthcare needed by Mr. Sutherland;

    e.  Failing to recognize and seek for Mr. Sutherland to receive care and treatment outside of the Butts County Detention Center when his

condition became beyond the level of care of the Butts County Sheriff's Office; Southern Health Partners, Inc.; Nurse Allen; and Nurse Sawyer;

f.  Failing to have Mr. Sutherland transferred out of the Butts County Detention Center for evaluation, care, and treatment;

g.  Failing to follow policies and procedures of Southern Health Partners, Inc., including but not limited to, Suicide Watch policy and procedure;

h.  Failing to perform visual checks on Mr. Sutherland every fifteen minutes while he was on Suicide Watch;

i.  Failing to observe Mr. Sutherland twice per shift;

j.  Failing to document the Suicide Watch Record;

k.  Failing to check the Suicide Watch Record completed by Butts County Detention Center employees to ensure checks were being done;

l.  Failing to instruct and/or correct Butts County Detention Center employees that suicide watch checks should be performed on a non-consistent basis within the 15 minute time frame; and

m. Failing to provide clinical advocacy for a patient whose medical and/or mental healthcare needs could not be met by the Butts County Sheriff's Office; Southern Health Partners, Inc.; Nurse Allen; and Nurse Sawyer.

197. The above-described negligent acts and/or omissions of the nurses and staff of Defendant Southern Health Partners, proximately caused Decedent's injuries, suffering, and death.

198. Pursuant to O.C.G.A. §§ 9-11-9.1 and 24-7-702,703, the Affidavit of Nathan R. Strahl, MD, Ph.D., who is qualified as an expert witness on the issues raised in this Complaint for Damages and Demand for Jury Trial, is attached as Exhibit "B" and incorporated herein by reference. The Affidavit sets forth at least one negligent act or omission concerning the care and treatment of Decedent by the nurses and staff of Defendant Southern Health Partners, and sets forth the factual bases for such negligent acts and/or omissions that caused the injuries, suffering, and death of Decedent. The Affidavit may not be inclusive of each negligent act and/or omission, and Plaintiffs reserve the right to allege and prove additional negligent acts and/or omissions.

## COUNT VI

### (Ordinary Negligence as to Defendants Allen and Sawyer)

199. Plaintiffs re-allege and incorporate by reference all allegations contained in paragraphs 1 through 198 as if fully alleged herein.

200. Defendants Allen and Sawyer owed Decedent a legal duty to provide him with proper evaluation, monitoring, care, treatment, supervision, and services with reasonable care and skill.

201. Defendants Allen and Sawyer failed to act with reasonable care and skill in their evaluation, monitoring, care, treatment, supervision, and services to Decedent.

202. The failure of Defendants Allen and Sawyer to act with reasonable care and skill in their evaluation, monitoring, care, treatment, supervision, and services to Decedent proximately caused Decedent's injuries, suffering, and death.

203. Plaintiffs are entitled to recover from Defendants Allen and Sawyer damages for the full value of the life of Decedent in an amount to be determined by the enlightened conscience of the jury pursuant to the Georgia Wrongful Death Act, OCGA 51-4-1, *et seq*.

## COUNT VII

**(Professional Negligence as to Defendants Allen and Sawyer)**

204. Plaintiffs re-allege and incorporate by reference all allegations contained in paragraphs 1 through 203 as if fully alleged herein.

205. Defendants Allen and Sawyer owed Decedent a legal duty to provide him with that degree of care that other nurses and staff, acting in a reasonably prudent

manner, would have exercised under the same or similar circumstances, in their care and treatment of Decedent.

206. Defendants Allen and Sawyer were negligent and failed to use that degree of care that other nurses and staff, acting in a reasonably prudent manner, would have exercised under the same or similar circumstances, in their care and treatment of Decedent in, at least, the following respects:

a. Failing to have Mr. Sutherland evaluated by a medical doctor and/or mental health professional;

b. Failing to obtain medication for Mr. Sutherland for his bi-polar disorder;

c. Failing to assess whether the Butts County Sheriff's Office; Southern Health Partners, Inc.; Nurse Allen; and Nurse Sawyer could provide the appropriate level of care necessary for Mr. Sutherland;

d. Failing to assess that the Butts County Sheriff's Office; Southern Health Partners, Inc.; Nurse Allen; and Nurse Sawyer could not provide the medical and/or mental healthcare needed by Mr. Sutherland;

e. Failing to recognize and seek for Mr. Sutherland to receive care and treatment outside of the Butts County Detention Center when his

condition became beyond the level of care of the Butts County Sheriff's Office; Southern Health Partners, Inc.; Nurse Allen; and Nurse Sawyer;

f.  Failing to have Mr. Sutherland transferred out of the Butts County Detention Center for evaluation, care, and treatment;

g.  Failing to follow policies and procedures of Southern Health Partners, Inc., including but not limited to, Suicide Watch policy and procedure;

h.  Failing to perform visual checks on Mr. Sutherland every fifteen minutes while he was on Suicide Watch;

i.  Failing to observe Mr. Sutherland twice per shift;

j.  Failing to document the Suicide Watch Record;

k.  Failing to check the Suicide Watch Record completed by Butts County Detention Center employees to ensure checks were being done;

l.  Failing to instruct and/or correct Butts County Detention Center employees that suicide watch checks should be performed on a non-consistent basis within the 15 minute time frame; and

m. Failing to provide clinical advocacy for a patient whose medical and/or mental healthcare needs could not be met by the Butts County Sheriff's Office; Southern Health Partners, Inc.; Nurse Allen; and Nurse Sawyer.

207. The above-described negligent acts and/or omissions of Defendants Allen and Sawyer, proximately caused Decedent's injuries, suffering, and death.

208. Pursuant to O.C.G.A. §§ 9-11-9.1 and 24-7-702,703, the Affidavit of Nathan R. Strahl, MD, Ph.D., who is qualified as an expert witness on the issues raised in this Complaint for Damages and Demand for Jury Trial, is attached as Exhibit "B" and incorporated herein by reference. The Affidavit sets forth at least one negligent act or omission concerning the care and treatment of Decedent by Defendants Allen and Sawyer, and sets forth the factual bases for such negligent acts and/or omissions that caused the injuries, suffering, and death of Decedent. The Affidavit may not be inclusive of each negligent act and/or omission, and Plaintiffs reserve the right to allege and prove additional negligent acts and/or omissions.

## PUNITIVE DAMAGES

209. Plaintiffs re-allege and incorporate by reference all allegations contained in paragraphs 1 through 208 as if fully alleged herein.

210. The actions of all Defendants showed willful misconduct, malice, wantonness, oppression, and an entire want of care raising the presumption of their conscious indifference to consequences.

211. Plaintiffs are entitled to recover punitive damages pursuant to OCGA § 51-12-5.1 in an amount to be determined by the jury at trial.

**WHEREFORE,** Plaintiffs pray:

(a)   That Summons and Process be issued and served upon Defendants;

(b)   For a trial by a jury;

(c)   Plaintiffs be awarded a sum to compensate for the injuries, wrongful death, and loss of enjoyment of life of Andrew Reed Sutherland;

(d)   Plaintiffs be awarded a sum for the full value of the life of Andrew Reed Sutherland, including both tangible and intangible losses, without any deduction of necessary or other personal expenses that would have been incurred by Andrew Reed Sutherland had he lived;

(e)   Plaintiffs be awarded punitive damages in an amount determined by the enlightened conscience of a fair and impartial jury;

(f)   For recovery of attorney's fees and all costs of litigation against Defendants; and

(g)   That Plaintiffs recover such other and further relief as this Court deems just and proper.

This 21st day of April 2023.

<div style="margin-left:50%">

*/s/ Clayton Cain*
CLAYTON CAIN
Georgia Bar No. 961772
clayton@caininjurylaw.com
*Attorney for Plaintiffs*

</div>

**CAIN INJURY LAW**
521 Scenic Hwy South
Lawrenceville, Georgia 30046
(678) 377-2246 Telephone
(678) 377-2245 Facsimile

<div align="right">

/s/ Dustin E. Davies
DUSTIN E. DAVIES
Georgia Bar No. 266071
dustin@dhgainjurylaw.com
*Attorney for Plaintiffs*

</div>

**DAVIES HOTHEM INJURY LAW**
977 Enota Avenue, NE
Gainesville, Georgia 30501
(678) 780-7817 Telephone
(678) 250-6330 Facsimile

**Clayton Cain, Esq.**
*Admitted in Georgia and*
*Alabama*
**John A. Mays Jr., Esq.**
*Admitted in Georgia*



April 19, 2022

| VIA FEDEX OVERNIGHT DELIVERY NO.: 7766 2125 8400<br><br>Butts County Board of Commissioners<br>625 West 3rd Street<br>Jackson, Georgia 30233 | VIA FEDEX OVERNIGHT DELIVERY NO.: 7766 2140 6096<br><br>Butts County Attorney<br>Attn: Andrew J. Welch III<br>2200 Keys Ferry Court<br>McDonough, GA 30253 |
|---|---|
| VIA FEDEX OVERNIGHT DELIVERY NO.: 7766 2149 4816<br><br>Butts County Manager<br>Attn: Brad Johnson<br>625 West 3rd Street<br>Jackson, Georgia 30233 | VIA FEDEX OVERNIGHT DELIVERY NO.: 7766 2155 0691<br><br>Sheriff Gary Long<br>Butts County Sheriff's Office<br>835 Ernest Biles Drive<br>Jackson, Georgia 30233 |
| VIA FEDEX OVERNIGHT DELIVERY NO.: 7766 2164 4909<br><br>Butts County Detention Center<br>ATTN: Division Commander –<br>Major Stewart Cawthon<br>835 Ernest Biles Drive<br>Jackson, Georgia 30233 | |

**EXHIBIT
A**

RE:   **NOTICE OF CLAIM PURSUANT TO O.C.G.A. § 36-11-1**

| | |
|---|---|
| **Our Client(s):** | **Estate of Andrew Reed Sutherland; Natalia and Maria Sutherland as next of kin** |
| **Date of Death:** | **May 10, 2021** |
| **Location:** | **Butts County Jail** |

Dear Sir/Madame:

Please be advised that our firm has been retained to represent Ms. Natalia Sutherland, Ms. Maria Sutherland, and the Estate of Andrew Reed Sutherland for claims against Butts County, the Butts County Jail and staff, and the Butts County Sheriff arising out of the death of Andrew Reed Sutherland on or about May 10, 2021. On or about the previously mentioned date, Andrew Sutherland was an inmate at Butts County Detention Center. The purpose of this letter is to comply with any ante litem notice requirements.

## FACTS

On April 23, 2021, Andrew Sutherland was arrested for urinating in public and stealing milk and a hat from a local gas station after his car had broken down on Interstate 75. He was reportedly on his way from Florida to Maryland. He had a history of serious mental illness and suicide attempts. Between his initial booking and April 27, 2021, Mr. Sutherland exhibit obvious signs of suicide whereby he would repeatedly bang his head against hard object, such as the door and glass windows. He vocalized his suicidal intentions to jail staff and, by all accounts, behaved in a manner consistent with someone experiencing severe mental health distress with clear intentions and abilities to injury himself.

During intake, Mr. Sutherland stated in 2015, he attempted suicide three times by putting himself in a sleeping bag, banging his head, and hanging himself in the woods. Shortly thereafter, while in a holding cell with other inmates, others witnessed Mr. Sutherland intentionally falling flat on his face from a standing position. Other inmates reported him saying very bizarre things and intentionally trying to pick fights. He expressed to multiple inmates that "I need to die." His behavior was so bizarre and dangerous to himself that the other inmates in the holding cell called the attention of deputies and shoved him out of the cell when they responded. Upon being released from the holding cell, deputies had to tackle and restrain Mr. Sutherland who was clearly not in a right state of mind.

Mr. Sutherland was taken to the "drunk tank" after initial holding cell where he then intentionally fell backwards to the floor from a standing position, striking his head. There was a noticeable lump on his head. He was examined by EMS and allowed to remain in the drunk tank. Later, he was seen banging his head against wall. Mr. Sutherland reported he was severely bipolar and was off his medications. He expressed wanting to die. Deputies then put him in a suicide garment and escorted him to a medical cell where he again attempted to hit his head and stated, "I need to die". By April 26, 2021, he was put on suicide watch with directions to check on him every 15 minutes.

On August 26, 2021, video footage apparently shows Mr. Sutherland again intentionally falling from a standing position to the floor. At timestamp 16:29:06, Mr. Sutherland fell down and got back up. He was on the ground for approximately 50 seconds. At timestamp 16:32:00, it appeared Mr. Sutherland experienced a seizure. At time stamp 16:32:42, Mr. Sutherland got up. At time stamp 16:27:10, Mr. Sutherland fell and got back up. At time stamp 19:20:35, Mr. Sutherland fell backwards. At time stamp 19:21:10, Mr. Sutherland got back up. At time stamp 19:22:33, Mr. Sutherland fell forward and caught himself with his hands. He laid down and began having spasms. It was not until 19:24:50 that a deputy entered his cell to check on him. Those in charge of monitoring Mr. Sutherland during this time included Deputy Anthony Dupree, Deputy Terry Smith, and Deputy Joseph Manning.

Deputy Manning admitted that he took his eyes off the camera for approximately 15 to 30 minutes due to getting busy. When he looked back at the camera, Mr. Sutherland was on his back on the ground. After seeing Mr. Sutherland's condition, Deputy Manning called for Deputy Dupree to check him. Deputy Manning allegedly had a conversation with Mr. Sutherland for fifteen (15) minutes. Later on, Deputy Smith entered his cell and found Mr. Sutherland snoring loudly and lying on his stomach. Deputy Smith instructed Mr. Sutherland to get off the floor and onto his bed, but he declined. Deputy Smith allowed him to continue lying on the floor and left him without further assistance.

On August 27, 2021, around 7:00 a.m., Deputy Emmett Lewis found Mr. Sutherland in his cell barely responsive. His left eye and side of face was swollen and he was breathing heavily. A nurse was summoned and examined Mr. Sutherland. He was lying face down, his hands were balled up, and his feet were pointed. The nurse determined he was going into shock. EMS was summoned and by 8:13 a.m. Mr. Sutherland was finally taken by ambulance to Navicent Medical Center in Macon, Georgia as a patient. Mr. Sutherland was in a coma for days before

eventually being removed from life support and pronounced dead on May 10, 2021 at Navicent Medical Center in Macon, Georgia.

Butts County, Butts County Sheriff, and Butts County Deputies listed herein were negligent in failing to recognize an obvious suicidal patient who needed immediate medical treatment and failed to provide necessary medical treatment or alternative interventions to prevent Mr. Sutherland's death. From the moment he was incarcerated, he informed jail staff of his mental health condition, that he was off his medications, and that he had suicidal tendencies in the past, specifically including striking his head on purpose to kill himself. The jail and deputies were clearly on notice with regard to his condition and simply refused to provide appropriate medical treatment and refused to "1013" Mr. Sutherland to a local hospital despite not having 24-hour medical care at the jail.

## DAMAGES

My clients are presenting a wrongful death claim and a survival action claim on account of the Butts County's negligence. Andrew Sutherland was fifty-seven (57) years old when he left behind two daughters, next of kin Natalia and Maria Sutherland. Natalia Sutherland, who will likely be appointed the administrator of Mr. Sutherland's forthcoming estate, will also present a survival action pursuant to O.C.G.A. § 51-4-5. In that regard, Mr. Sutherland's pre-death pain and suffering was unquestionably significant based on the violent nature of his traumatic brain injury and time in a coma prior to his death. Damages sought on account of the non-economic losses for the survival action are $5,000,000.00. Damages sought for the wrongful death claim are $10,000,000.00.

Pursuant to O.C.G.A. § 36-11-1, as counsel for Ms. Natalia Sutherland, Ms. Maria Sutherland, and the Estate of Andrew Reed Sutherland, I am presenting this wrongful death and estate claim for general damages, special damages, and any other damages allowed under Georgia law within the twelve-month period required by statute. We are demanding $5,000,000.00 for his survival action and $10,000,000.00 as the full value of the life of Mr. Sutherland for his wrongful death claim, for a total of $15,000,000.00. If you contend this letter does not provide you with sufficient notice pursuant to O.C.G.A. § 36-11-1, or comply with any notice provision statute, please advise me immediately in writing. Otherwise, we will understand that you deem it sufficient and in full compliance with Georgia law.

Please direct all communications and correspondence regarding this claim to my office. If you have any questions or need any further information, please do not

hesitate to contact me at [clayton@caininjurylaw.com](mailto:clayton@caininjurylaw.com) or 678.377.2246. Thank you for your cooperation in this matter, and I look forward to hearing from you soon.

Sincerely,

**CAIN & MAYS TRIAL LAWYERS**

*/s/ Clayton Cain*

Clayton Cain, Esq.
John A. Mays, Jr.

Enclosures (GBI Investigation Report)

Dear Customer,

The following is the proof-of-delivery for tracking number: 776621406096

---

**Delivery Information:**

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivered To: | |
| Signed for by: | | Delivery Location: | 2200 Keys Ferry Court |
| Service type: | FedEx Standard Overnight | | |
| Special Handling: | Deliver Weekday | | MC DONOUGH, GA, 30253 |
| | | Delivery date: | Apr 20, 2022 15:51 |

**Shipping Information:**

| | | | |
|---|---|---|---|
| Tracking number: | 776621406096 | Ship Date: | Apr 19, 2022 |
| | | Weight: | |

**Recipient:**
Andrew J. Welch III, Butts County Attorney
2200 Keys Ferry Court
MC DONOUGH, GA, US, 30253

**Shipper:**
Clayton Cain, Cain Injury Law
521 Scenic Highway
LAWRENCEVILLE, GA, US, 30046

**Reference**                          A. Sutherland

Proof-of-delivery details appear below; however, no signature is available for this FedEx Express shipment

because a signature was not required.

Thank you for choosing FedEx

April 21, 2023

Dear Customer,

The following is the proof-of-delivery for tracking number: 776621258400

---

**Delivery Information:**

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivered To: | |
| Signed for by: | T.LUNCEFORD | Delivery Location: | 625 W 3RD ST |
| Service type: | FedEx Standard Overnight | | |
| Special Handling: | Deliver Weekday | | JACKSON, GA, 30233 |
| | | Delivery date: | Apr 20, 2022 12:40 |

**Shipping Information:**

| | | | |
|---|---|---|---|
| Tracking number: | 776621258400 | Ship Date: | Apr 19, 2022 |
| | | Weight: | |

**Recipient:**
Butts County Board of Commissioners
625 West 3rd Street
JACKSON, GA, US, 30233

**Shipper:**
John Mays, Cain & Mays Trials Lawyers
521 Scenic Highway
LAWRENCEVILLE, GA, US, 30046

**Reference**          A. Sutherland



Thank you for choosing FedEx

Dear Customer,

The following is the proof-of-delivery for tracking number: 776621644909

---

**Delivery Information:**

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivered To: | |
| Signed for by: | J.GOODRUM | Delivery Location: | 835 ERNEST BILES DR |
| Service type: | FedEx Standard Overnight | | |
| Special Handling: | Deliver Weekday | | JACKSON, GA, 30233 |
| | | Delivery date: | Apr 20, 2022 13:36 |

**Shipping Information:**

| | | | |
|---|---|---|---|
| Tracking number: | 776621644909 | Ship Date: | Apr 19, 2022 |
| | | Weight: | |

**Recipient:**
Division Commander, Major Cawthon, Butts County Detention Center
835 Ernest Biles Drive
JACKSON, GA, US, 30233

**Shipper:**
Clayton Cain, Cain Injury Law
521 Scenic Highway
LAWRENCEVILLE, GA, US, 30046

**Reference**   A. Sutherland

Signature Proof of Delivery is not currently available for this Tracking Number.  Availability of signature
images may take up to 5 days after delivery date. Please try later, or contact Customer Service at
1.800.Go.FedEx(R) 800.463.3339.

Thank you for choosing FedEx

Dear Customer,

The following is the proof-of-delivery for tracking number: 776621550691

---

**Delivery Information:**

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivered To: | |
| Signed for by: | J.GOODRUM | Delivery Location: | 835 ERNEST BILES DR |
| Service type: | FedEx Standard Overnight | | |
| Special Handling: | Deliver Weekday | | JACKSON, GA, 30233 |
| | | Delivery date: | Apr 20, 2022 13:36 |

**Shipping Information:**

| | | | |
|---|---|---|---|
| Tracking number: | 776621550691 | Ship Date: | Apr 19, 2022 |
| | | Weight: | |

**Recipient:**
Sheriff Gary Long, Butts County Sheriff's Office
825 Ernest Biles Drive
JACKSON, GA, US, 30233

**Shipper:**
Clayton Cain, Cain Injury Law
521 Scenic Highway
LAWRENCEVILLE, GA, US, 30046

**Reference**                           A. Sutherland

Signature Proof of Delivery is not currently available for this Tracking Number.  Availability of signature
images may take up to 5 days after delivery date. Please try later, or contact Customer Service at
1.800.Go.FedEx(R) 800.463.3339.

Thank you for choosing FedEx

April 21, 2023

Dear Customer,

The following is the proof-of-delivery for tracking number: 776621494816

---

**Delivery Information:**

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivered To: | |
| Signed for by: | T.LUNCEFORD | Delivery Location: | 625 W 3RD ST |
| Service type: | FedEx Standard Overnight | | |
| Special Handling: | Deliver Weekday | | JACKSON, GA, 30233 |
| | | Delivery date: | Apr 20, 2022 12:40 |

**Shipping Information:**

| | | | |
|---|---|---|---|
| Tracking number: | 776621494816 | Ship Date: | Apr 19, 2022 |
| | | Weight: | |

Recipient:
Brad Johnson, Butts County Manager
625 West 3rd Street
JACKSON, GA, US, 30233

Shipper:
Clayton Cain, Cain Injury Law
521 Scenic Highway
LAWRENCEVILLE, GA, US, 30046

Reference          A. Sutherland



Thank you for choosing FedEx

**STATE OF NORTH CAROLINA**      )
                                   )

**COUNTY OF DURHAM**             )

<u>**AFFIDAVIT OF NATHAN R. STRAHL, M.D., Ph.D.**</u>

**PERSONALLY APPEARED,** before the undersigned officer duly authorized to administer oaths in this State, Nathan R. Strahl, M.D., Ph.D., who after being duly sworn deposes and states as follows:

1.

My name is Nathan R. Strahl, M.D., Ph.D. I am over the age of eighteen (18) and I am competent to give this Affidavit. This Affidavit is based upon my personal knowledge obtained through my education, training, experience, and expertise, as well as my review of the records and information identified herein, and familiarity with the standards of medical/nursing care in the United States.

2.

I am a physician licensed in the State of North Carolina.

3.

I have been licensed by the State of North Carolina as a physician since 1984.

4.

I have continuously and consistently practiced medicine since 1984.

5.

In 1966, I graduated *cum laude* from the University of Pittsburgh with a Pharmacy degree. I obtained a Master's degree in Pharmaceutical Chemistry from the University of Pittsburgh in 1968. In 1971, I earned a Ph.D. in Biopharmaceutics and Pharmacokinetics from the State University of New York at Buffalo. I graduated from medical school at the University of North

EXHIBIT
B

Carolina at Chapel Hill School of Medicine in 1983. From 1983 to 1986, I was a Psychiatry resident at Duke University Medical Center. From 1986 to 1987, I served as Chief Resident in Psychiatry at Duke University Medical Center.

<div align="center">6.</div>

I am board certified in Psychiatry and am a Diplomate of the American Board of Psychiatry and Neurology. I am a member of the American Psychiatric Association; North Carolina Psychiatric Association; and Fellow of the American Foundation for Pharmaceutical Education.

<div align="center">7.</div>

I currently serve in the following positions:

| | |
|---|---|
| 2015-PRESENT | PSYCHIATRIST, PSYCHIATRIC ADMISSIONS UNIT, DEPARTMENT OF SAFETY, CENTRAL PRISON, RALEIGH, NC. PATIENTS POPULATION INCLUDES SUBSTANCE USE DISORDERS, PTSD, SCHIZOPHRENIA, DEPRESSION, BIPOLAR DISORDER, SUICIDAL BEHAVIOR AND SUICIDE ATTEMPTS |
| 2007-PRESENT | OPIOID RECOVERY PROGRAM UTILIZING BUPRENORPHINE |
| 1987-PRESENT | PRIVATE PSYCHIATRIC PRACTICE IN GENERAL, SUBSTANCE ABUSE AND FORENSIC PSYCHIATRY, DURHAM, NC |
| 1987-2019 | CONSULTING ASSOCIATE, DUKE UNIVERSITY MEDICAL CENTER, DURHAM, NC |
| 1985-2019 | PSYCHIATRIST, PROVIDING CLAIMANT EVALUATIONS FOR SOCIAL SECURITY DISABILITY DETERMINATION SERVICES (OVER 5000 COMPLETED) |
| 1992-2019 | PSYCHIATRIST, PROVIDING EXPERT TESTIMONY TO ADMINISTRATIVE LAW JUDGES, SOCIAL SECURITY DISABILITY |

DETERMINATION SERVICES, RALEIGH, NC AND GREENSBORO, NC (OVER 750 COMPLETED)

1987-PRESENT    PSYCHIATRIST, PROVIDING EXPERT TESTIMONY IN FORENSIC PSYCHIATRY, INCLUDING CAPITAL AND CIVIL CASES, IN BOTH FEDERAL AND STATE COURTS FOR BOTH PROSECUTION AND DEFENSE

1998-PRESENT    EXTENSIVE LECTURING ACROSS THE COUNTRY FOR A NUMBER OF PHARMACEUTICAL COMPANIES

8.

I have an extensive background and experience in evaluating, assessing, and treating people with mental health issues, including bipolar disorder, schizophrenia, depression, suicidal behavior, and suicide attempts, specifically, within prisons/detention centers/correctional institutions.

9.

Since 1987, I have had a psychiatric practice in general, substance abuse, and forensic psychiatry in Durham, North Carolina. In that same time period, I have served as a Consulting Associate with Duke University Medical Center in Durham, North Carolina.

10.

Since 2015, I have served a psychiatrist in the Psychiatric Admissions Unit, Department of Safety, Central Prison, in Raleigh, North Carolina. In that capacity, I evaluate, assess, identify conditions, and render care and treatment to prisoners with substance abuse disorders, post-traumatic stress disorder, schizophrenia, depression, bipolar disorder, suicidal behavior, and suicide attempts. My practice in the prison/detention center/correctional institution setting has also

included serving as a psychiatrist for the North Carolina Department of Corrections and Federal Correctional Institute in Butner, North Carolina.

<div align="center">11.</div>

A true and correct copy of my *Curriculum Vitae* is attached hereto as Exhibit 1 and is incorporated herein by reference.

<div align="center">12.</div>

I have given presentations and authored scholarly books in psychiatry, as set forth in my *Curriculum Vitae*.

<div align="center">13.</div>

At the time of the acts or omissions discussed in this Affidavit, I was licensed by the appropriate regulatory agency to practice medicine in the State of North Carolina. For at least three of the last five years, prior to the incident described in this Affidavit, I have actively practiced medicine with sufficient frequency to establish an appropriate level of knowledge concerning performance of the procedures, identifying and diagnosing the conditions, and the rendering of the care and treatment that was negligently performed or rendered negligently by the employees or agents of Southern Health Partners, Inc., Amanda Allen, and Netanya Sawyer, whose conduct is at issue in this case. I have actual professional knowledge and experience in the evaluation, assessment, medication administration, documentation, observation, and care and treatment of patients like Andrew Reed Sutherland, who suffer from bipolar disorder, have suicidal behavior, and who have engaged in accidental injury/self-inflected harm, in a prison/detention center/correctional institution setting.

14.

Since 1984, I have actively practiced medicine in the State of North Carolina with sufficient frequency to establish an appropriate level of knowledge regarding general medical/nursing care, as well as medical/nursing care for patients suffering from mental health issues, including, but not limited to substance abuse disorders, post-traumatic stress disorder, schizophrenia, depression, bipolar disorder, suicidal behavior, and suicide attempts, in prison/detention center/correctional institution settings, with respect to the negligent acts and omissions by the employees or agents of Southern Health Partners, Inc., Amanda Allen, and Netanya Sawyer, whose conduct is at issue in this case.

15.

For at least three of the last five years, prior to the incident described in this Affidavit, I have supervised or instructed registered nurses (RNs) and licensed practical nurses (LPNs), and have knowledge of the standard of care employed by RNs and LPNs, with respect to medical/nursing care in a prison/detention center/correctional institution setting, including, but not limited to, patient evaluation, assessment, medication administration, documentation, observation, and care and treatment of patients like Andrew Reed Sutherland, who suffer from bipolar disorder and have suicidal behavior, in a prison/detention center/correctional institution setting.

16.

In connection with giving this Affidavit, I have reviewed the records and information identified in Exhibit 2 attached hereto and incorporated herein by reference.

17.

Based upon my review of the records and information identified in Exhibit 2, I understand the following to be true:

Andrew Reed Sutherland, age 57, was arrested for theft by shoplifting and public indecency, on Friday, April 23, 2021. He was taken into custody by the Butts County Sheriff's Office and held at the Butts County Detention Center. During booking, Mr. Sutherland told Butts County Sheriff's Office employees he had mental health problems, specifically, bipolar disorder, and that he did not have medication for his bi-polar disorder with him. Mr. Sutherland was placed in Holding Cell 7 with other inmates.

On Saturday, April 24, 2021, Amanda Allen, who was an employee or agent of Southern Health Partners, Inc., performed an intake evaluation on Mr. Sutherland. Mr. Sutherland advised Nurse Allen he had mental health problems, specifically, bipolar disorder, and that he did not have medication for his bipolar disorder with him. Mr. Sutherland also advised Nurse Allen he had attempted suicide in 2015. Nurse Allen never sought to have Mr. Sutherland evaluated by a medical doctor and/or mental health professional; did not seek to obtain medication for Mr. Sutherland; and did not seek to have him transferred out of the detention center for further evaluation, care, or treatment. Although Nurse Allen also worked at the Butts County Detention Center on April 25, 2021 and April 26, 2021, she had no interaction with Mr. Sutherland on those dates.

On Saturday, April 24, 2021, at approximately 1820 hours, inmates in Holding Cell 7 with Decedent began knocking and/or banging on the window of Holding Cell 7. Inmates in Holding Cell 7 advised detention center employees Mr. Sutherland had been trying to fight them; was talking to himself; ate feces out of the toilet; had purposefully fallen face forward to the floor of the cell two to four times, catching himself right before he hit the floor, nonetheless, still hitting the floor with force; and stated, "I need to die."

After speaking with Mr. Sutherland, detention center employees observed it was obvious Mr. Sutherland was not in the right state of mind. Detention center employees knew Mr. Sutherland had mental issues and did not have medication.

Mr. Sutherland was placed in T Hall, T-1. While in T Hall, T-1, Mr. Sutherland purposefully fell backward and hit his head on the floor. Mr. Sutherland was then placed in Holding Cell 3 and was seen by an emergency medical services ("EMS") officer.

After the EMS officer left Holding Cell 3, Mr. Sutherland began forward hitting his head against the window of the door. When asked why he was hitting his head against the window of the door, Mr. Sutherland responded, "I want to kill myself." Mr. Sutherland also said he was hitting his head because he was ashamed; he needed to die; and he did not have medication for his bi-polar disorder with him.

Mr. Sutherland was placed in a suicide suit and in a restraint chair. While in the restraint chair, Mr. Sutherland asked for water and was given water. Mr. Sutherland tried to suffocate himself with the water. He was transported in a restraint chair to Medical 1.

On April 26, 2021, Nurse Sawyer spoke with Mr. Sutherland and placed him on suicide watch. When speaking with Mr. Sutherland, on April 26, 2021, Mr. Sutherland advised Nurse Sawyer he was bi-polar and did not have medication with him. Nurse Sawyer never sought to have Mr. Sutherland evaluated by a medical doctor and/or mental health professional, never sought to obtain medication for Mr. Sutherland, and never sought to have Mr. Sutherland transferred out of the Butts County Detention Center for further evaluation, care, or treatment.

According to Georgia Bureau of Investigation Special Agent Ryan Hilton, in a video from Medical 1 taken on April 26, 2021, at timestamp 16:29:06, Mr. Sutherland fell down and got back up. He was on the ground approximately 50 seconds. At timestamp 16:32:00, Mr. Sutherland jerks

uncontrollably. At timestamp 16:32:00, it appears as if Mr. Sutherland suffers a seizure. At timestamp 16:32:42, Mr. Sutherland got up. At timestamp 16:27:10, Mr. Sutherland fell and got back up. At timestamp 19:20:35, Mr. Sutherland fell backwards. At timestamp 19:21:10, Mr. Sutherland got back up. At timestamp 19:22:33, Mr. Sutherland fell forward and caught himself with his hands. Mr. Sutherland laid on the ground and began having spasms. At timestamp 19:24:50, the door to Medical 1 was opened and someone speaks with Mr. Sutherland.

At 5:31 a.m., on April 27, 2021, a detention center employee entered Medical 1 to check on Mr. Sutherland. At 7:50 a.m., on April 27, 2021, detention center employee Emmett Lewis entered Medical 1 to check on Mr. Sutherland. Between 5:31 a.m. and 7:50 a.m., on April 27, 2021, no detention center employee, Southern Health Partners, Inc. employee or agent, Nurse Allen, or Nurse Sawyer entered Medical 1 to check on Mr. Sutherland.

On April 27, 2021, after coming on duty, Major Antonio Lee reviewed camera footage and noticed Mr. Sutherland laying naked on the floor of Medical 1. Major Lee radioed Emmett Lewis to check on Mr. Sutherland. When Emmett Lewis entered Medical 1, Mr. Sutherland was laying on the floor on his stomach; was not responsive; one side of his face was swollen; one of his eyes would not open; his arms were stiff; and his feet were pointed.

At or around 8:12 a.m., on April 27, 2021, Mr. Sutherland was taken out of Medical 1 by emergency responders to be transported to Atrium Health Navicent Medical Center, in Macon, Georgia. Mr. Sutherland was diagnosed with a subdural hemorrhage and died on May 10, 2021. Items listed on the Death Certificate as "Immediate Cause" of death are: subdural hemorrhage and multiple falls.

18.

It is my opinion, to a reasonable degree of medical/nursing certainty, that the conduct of the employees or agents of Southern Health Partners, Inc., Amanda Allen, and Netanya Sawyer breached the standard of care other RNs and LPNs, in general medical/nursing care, acting in a reasonably prudent manner, would have exercised under the same or similar circumstances, in their care and treatment of Andrew Reed Sutherland, in at least the following respects:

(a) Failing to have Mr. Sutherland evaluated by a medical doctor and/or mental health professional;

(b) Failing to obtain medication for Mr. Sutherland for his bi-polar disorder;

(c) Failing to assess whether the Butts County Sheriff's Office; Southern Health Partners, Inc.; Nurse Allen; and Nurse Sawyer could provide the appropriate level of care necessary for Mr. Sutherland;

(d) Failing to assess that the Butts County Sheriff's Office; Southern Health Partners, Inc.; Nurse Allen; and Nurse Sawyer could not provide the medical and/or mental healthcare needed by Mr. Sutherland;

(e) Failing to recognize and seek for Mr. Sutherland to receive care and treatment outside of the Butts County Detention Center when his condition became beyond the level of care of the Butts County Sheriff's Office; Southern Health Partners, Inc.; Nurse Allen; and Nurse Sawyer;

(f) Failing to have Mr. Sutherland transferred out of the Butts County Detention Center for evaluation, care, and treatment;

(g) Failing to follow policies and procedures of Southern Health Partners, Inc., including but not limited to, Suicide Watch policy and procedure;

(h) Failing to perform visual checks on Mr. Sutherland every fifteen minutes while he was on Suicide Watch;

(i) Failing to observe Mr. Sutherland twice per shift;

(j) Failing to document the Suicide Watch Record;

(k) Failing to check the Suicide Watch Record completed by Butts County Detention Center employees to ensure checks were being done;

(l) Failing to instruct and/or correct Butts County Detention Center employees that suicide watch checks should be performed on a consistent basis with variability as to timing within the 15 minute time frame; and

(m) Failing to provide clinical advocacy for a patient whose medical and/or mental healthcare needs could not be met by the Butts County Sheriff's Office; Southern Health Partners, Inc.; Nurse Allen; and Nurse Sawyer.

19.

It is my opinion, to a reasonable degree of medical/nursing certainty, that the above-listed breaches of the standard of care by the employees or agents of Southern Health Partners, Inc., Amanda Allen, and Netanya Sawyer proximately caused and/or contributed to the death of Andrew Reed Sutherland.

20.

I base my opinions on the facts in this case obtained through the records and information identified in Exhibit 2 that I have reviewed; my background, education, training, and experience; knowledge as a psychiatrist; practice in prisons/detention centers/correctional institutions; and familiarity with the standards of medical/nursing care in the United States. When I treat a patient, it is often necessary to rely upon statements from other providers and review of records from other

providers and facilities. By reviewing the facts obtained in this case from records and information and applying those facts to my knowledge, I have formed my opinions.

21.

This Affidavit is written to comply with the requirements of O.C.G.A. §§ 9-11-9.1 and 24-7-702, 703 and as such, sets forth at least one violation of the standard of care by the employees or agents of Southern Health Partners, Inc., Amanda Allen, and Netanya Sawyer in their care and treatment of Andrew Reed Sutherland. This Affidavit is not necessarily a summary of all opinions I may hold in this matter, nor a listing of every material breach of the standard of care. Therefore, I specifically reserve the right to supplement and/or amend any opinions set forth herein as additional records, video, recordings, and testimony is made available through discovery.

**FURTHER AFFIANT SAYETH NOT.**

This ⎯⎯ day of April, 2023.

NATHAN R. STRAHL, M.D., Ph.D.

Sworn to and subscribed before me
this ⎯⎯ day of April, 2023.

NOTARY PUBLIC

# Exhibit 1

# NATHAN R. STRAHL, M.D., Ph.D.

*PRACTICE OF PSYCHIATRY*

3326 DURHAM-CHAPEL HILL BLVD., SUITE B-110

DURHAM, NC  27707

---------

OFFICE TELEPHONE:  (919) 493-8399

CELL PHONE:  (919) 810-3345

FAX: (419) 821-8741

e-mail:  nathan_strahl@yahoo.com

# CURRICULUM VITAE

*EDUCATION:*

| | | |
|---|---|---|
| 1958-1962 | **ACADEMIC DIPLOMA** | **TAYLOR ALLDERDICE HIGH SCHOOL,** PITTSBURGH, PA |
| 1962-1966 | **B.S.** | **CUM LAUDE UNIVERSITY OF PITTSBURGH,** PITTSBURGH, PA (PHARMACY) |
| 1966-1968 | **M.S.** | **UNIVERSITY OF PITTSBURGH,** PITTSBURGH, PA (PHARMACEUTICAL CHEMISTRY) |
| 1968-1971 | **Ph.D.** | **STATE UNIVERSITY OF NEW YORK AT BUFFALO,** BUFFALO, NY (BIOPHARMACEUTICS AND PHARMACOKINETICS) |
| 1980-1983 | **M.D.** | **UNIVERSITY OF NORTH CAROLINA AT CHAPEL HILL,** CHAPEL HILL, NC (MEDICAL DEGREE) |
| 1983-1986 | **RESIDENCY** | **DUKE UNIVERSITY MEDICAL CENTER,** DURHAM, NC (PSYCHIATRY) |
| 1986-1987 | **CHIEF RESIDENT** | **DUKE UNIVERSITY MEDICAL CENTER,** DURHAM, NC (CHIEF RESIDENT IN PSYCHIATRY) |

*EXPERIENCE:*

| | |
|---|---|
| 2015-PRESENT | PSYCHIATRIST, PSYCHIATRIC ADMISSIONS UNIT, DEPARTMENT OF SAFETY, CENTRAL PRISON, RALEIGH, NC. PATIENTS POPULATION INCLUDES SUBSTANCE USE DISORDERS, PTSD, SCHIZOPHRENIA, DEPRESSION, BIPOLAR DISORDER, SUICIDAL BEHAVIOR AND SUICIDE ATTEMPTS |
| 2007-PRESENT | OPIOID RECOVERY PROGRAM UTILIZING BUPRENORPHINE |
| 1987-PRESENT | PRIVATE PSYCHIATRIC PRACTICE IN GENERAL, SUBSTANCE ABUSE AND FORENSIC PSYCHIATRY, DURHAM, NC |
| 1987-PRESENT | CONSULTING ASSOCIATE, DUKE UNIVERSITY MEDICAL CENTER, DURHAM, NC |
| 1985-PRESENT | PSYCHIATRIST, PROVIDING CLAIMANT EVALUATIONS FOR SOCIAL SECURITY DISABILITY DETERMINATION SERVICES (OVER 5000 COMPLETED) |
| 1992-PRESENT | PSYCHIATRIST, PROVIDING EXPERT TESTIMONY TO ADMINISTRATIVE LAW JUDGES, SOCIAL SECURITY DISABILITY DETERMINATION SERVICES, RALEIGH, NC AND GREENSBORO, NC (OVER 750 COMPLETED) |
| 1987-PRESENT | PSYCHIATRIST, PROVIDING EXPERT TESTIMONY IN FORENSIC PSYCHIATRY, INCLUDING CAPITAL AND CIVIL CASES, IN BOTH FEDERAL AND STATE COURTS FOR BOTH PROSECUTION AND DEFENSE |
| 1998-PRESENT | EXTENSIVE LECTURING ACROSS THE COUNTRY FOR A NUMBER OF PHARMACEUTICAL COMPANIES |
| 1992-2000 | PSYCHIATRIST, PROVIDING TREATMENT FOR ALZHEIMER'S PATIENTS, BRIAN CENTER, DURHAM, NC |
| 1985-1996 | PSYCHIATRIST, NORTH CAROLINA DEPARTMENT OF CORRECTIONS, AT ODOM, CALEDONIA, LILLINGTON, AND CENTRAL PRISONS, NORTH CAROLINA |
| 1986-1992 | PSYCHIATRIST, FEDERAL CORRECTIONAL INSTITUTE, BUTNER, NC |

*EXPERIENCE, CONTINUED:*

| | |
|---|---|
| 1985-1991 | PSYCHIATRIST, RANDOLPH COUNTY MENTAL HEALTH CENTER, ASHEBORO, NC |
| 1988-1990 | PSYCHIATRIST, LOUISBURG MENTAL HEALTH CENTER, LOUISBURG, NC |
| 1998-2002 | MEDICAL DIRECTOR, RALEIGH METHADONE TREATMENT CENTER, RALEIGH, NC |
| 1992-2002 | PSYCHIATRIST, PROVIDING SERVICES FOR INPATIENT DETOXIFICATION FROM ALCOHOL AND DRUGS, DURHAM REGIONAL HOSPITAL, DURHAM, NC |
| 1971-1980 | ASSOCIATE PROFESSOR OF PHARMACY, WITH TENURE, COLLEGE OF PHARMACY, UNIVERSITY OF NEW MEXICO, ALBUQUERQUE, NEW MEXICO |
| 1966-1971 | REGISTERED PHARMACIST, PA AND NY |

*CURRENT BOARD CERTIFICATIONS:*
DIPLOMATE, AMERICAN BOARD OF PSYCHIATRY AND NEUROLOGY

*AWARDS, HONORS AND PROFESSIONAL ASSOCIATIONS*:
PSYCHIATRIST, LICENSED TO PRACTICE MEDICINE IN THE STATE OF NORTH CAROLINA
MEMBER, AMERICAN PSYCHIATRIC ASSOCIATION
MEMBER, NORTH CAROLINA PSYCHIATRIC ASSOCIATION
FELLOW, AMERICAN FOUNDATION FOR PHARMACEUTICAL EDUCATION
DEAN'S LIST (1964-1966)
GALEN PHARMACEUTICAL SOCIETY OF PITTSBURGH AWARD (1966)
MERCK AWARD (1966)
ALPHA ZETA OMEGA AWARD (1964)
AMERICAN FOUNDATION FOR PHARMACEUTICAL EDUCATION UNDERGRADUATE AWARD (1964-1965, 1965-1966)
WOMEN OF GALEN SCHOLARSHIP AWARD (1964-1965)
WOMEN'S AUXILIARY ALPHA ZETA OMEGA AWARD (1963-1964)
UNIVERSITY SCHOLARSHIP (1962-1963, 1965-1966)
SENATORIAL SCHOLARSHIP (1962-1963)
RHO CHI HONOR SOCIETY
VICE PRESIDENT, RHO CHI PHARMACEUTICAL HONOR SOCIETY (1966)

***AWARDS, HONORS AND PROFESSIONAL ASSOCIATIONS, CONTINUED***:
   KAPPA PSI PHARMACEUTICAL SOCIETY
   PRESIDENT, GRADUATE STUDENT ASSOCIATION OF THE
   DEPARTMENT OF PHARMACEUTICS (1970-1971)
   AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS
   AMERICAN ASSOCIATION OF COLLEGES OF PHARMACIES
   AMERICAN PHARMACEUTICAL ASSOCIATION
   AMERICAN PSYCHIATRIC ASSOCIATION
   SOUTHERN MEDICAL ASSOCIATION

***ABSTRACT AND PRESENTATIONS***:
   STRAHL, N. R., AND BARR, W. H., "INTESTINAL DRUG ABSORPTION
        AND METABOLISM III: GLYCINE CONJUGATION OF BENZOIC
        ACID IN RAT INTESTINAL TISSUE," 117TH ANNUAL MEETING
        OF THE AMERICAN PHARMACEUTICAL ASSOCIATION,
        WASHINGTON, DC., APRIL 12-17, 1970.
   STRAHL, N. R., AND BARR, W. H., "INTESTINAL DRUG ABSORPTION
        AND METABOLISM IV: THE RELATIONSHIP OF THE VOLUME OF
        DISTRIBUTION OF INTESTINAL TISSUE TO THE
        INTERPRETATION OF ABSORPTION MECHANISMS," 118TH
        ANNUAL MEETING OF THE AMERICAN PHARMACEUTICAL
        ASSOCIATION, SAN FRANCISCO, CALIFORNIA, MARCH
        27-APRIL 2, 1971.
   STRAHL, N. R., "COLD REMEDIES: PAST, PRESENT, AND FUTURE,"
        NEW MEXICO STATE PHARMACEUTICAL ASSOCIATION
        MEETING, CLOVIS, NEW MEXICO, JANUARY 16, 1972.
        STRAHL, N. R., "BRAND NAME OR GENERIC EQUIVALENT, WHICH DO
        YOU CHOOSE? ", NEW MEXICO STATE PHARMACEUTICAL
        ASSOCIATION MEETING, ALBUQUERQUE, NM, MAY 27-29, 1972.
   STRAHL, N. R., TESTIMONY-SENATE BILL 20, "PERMITTING
        SUBSTITUTION OF GENERIC EQUIVALENTS," STATE SENATE
        PUBLIC AFFAIRS COMMITTEE HEARINGS, SANTA FE, NM,
        FEBRUARY 7 AND 14, 1973.
   STRAHL, N. R., "BIOPHARMACEUTICAL IMPLICATIONS OF DRUG
        BIOAVAILABILITY," PHARMACEUTICAL REPRESENTATIVES
        OF NEW MEXICO, ALBUQUERQUE, NM, SEPTEMBER 14, 1973.
   STRAHL, N. R., "RELATING TO THE PHYSICIAN ON DRUG
        BIOAVAILABILITY ISSUES," PHARMACEUTICAL
        REPRESENTATIVES OF NEW MEXICO, ALBUQUERQUE, NM,
        MAY 8, 1974.
   STRAHL, N. R., TESTIMONY, NEW MEXICO SENATE AND HOUSE
        COMMITTEE HEARINGS ON DRUG SUBSTITUTION BILLS,
        SANTA FE, NM, 1974-1978.

*ABSTRACTS AND PRESENTATIONS, CONTINUED:*

STRAHL, N. R., "GENERIC CONSIDERATIONS ON BIOAVAILABILITY OF DRUGS," NEW MEXICO STATE PHARMACEUTICAL ASSOCIATION MEETING, SANTA FE, NM, JANUARY 15, 1975.

STRAHL, N. R., "IMPACT OF BIOAVAILABILITY ON THE PHARMACIST AND PHYSICIAN," ROSWELL, NM, MARCH 3, 1976

STRAHL, N. R., FUNDAMENTALS OF ABSORPTION OF DRUGS FROM THE GI TRACT," NEW MEXICO STATE PHARMACEUTICAL ASSOCIATION MEETING, LAS VEGAS, FARMINGTON, DEMING, CLOVIS, AND ALBUQUERQUE, NM SEPTEMBER/OCTOBER, 1977.

STRAHL, N. R., "SALICYLATE THERAPY IN PATIENTS WITH RHEUMATOID ARTHRITIS," BERNALILLO COUNTY MEDICAL CENTER MEETING, ALBUQUERQUE, NM, AUGUST 8, 1978.

STRAHL, N. R., "IMPACT OF FEDERAL REGULATIONS ON GENERIC SUBSTITUTION OF DRUGS," AACP-NABP MEETING, ALBUQUERQUE, NM, OCTOBER 16, 1978.

STRAHL, N. R., "FUNDAMENTALS OF PHARMACOKINETICS," NEW MEXICO SOCIETY OF HOSPITAL PHARMACISTS MEETING, ALBUQUERQUE, NM SEPTEMBER 22, 1979.

STRAHL, N. R., "ASSESSMENT AND MANAGEMENT OF THE CHARACTER DISORDERED PATIENT BEHIND PRISON WALLS," PSYCHIATRY GRAND ROUNDS, DUKE MEDICAL CENTER, JULY 10, 1986.

STRAHL, N. R., LECTURES TO PSYCHIATRY RESIDENTS IN TRAINING, DUKE UNIVERSITY MEDICAL CENTER, IN THE AREA OF SUBSTANCE ABUSE, 1991-PRESENT.

*PUBLICATIONS:*

STRAHL, N.R., AND BARR, W.H., "INTESTINAL DRUG ABSORPTION AND METABOLISM III: GLYCINE CONJUGATION AND ACCUMULATION OF BENZOIC ACID IN RAT INTESTINAL TISSUES, " J. PHARM. SCI., 60, 278 (1971).
BARR, W. H., GERBRACHT, L., LETCHER, K., PLAUT, M., AND STRAHL, N.R., "ASSESSMENT OF BIOLOGICAL AVAILABILITY OF DIFFERENT TETRACYCLINE PRODUCTS IN MAN FOLLOWING SINGLE AND MULTIPLE DOSES," PHARMACOL. AND THERAP., 13, 97 (1972).

STRAHL, N.R., "ASCORBIC ACID-ASPIRIN," EVALUATION OF DRUG INTERACTION, 2ND EDITION, THE AMER.PHARM. ASSOC. P. 12, 1976.

STRAHL, N. R., "DIAZEPAM-ALCOHOL," EVALUATION OF DRUG INTERACTIONS, 2ND EDITION, THE AMERICAN PHARMACEUTICAL ASSOCIATION, P. 47, 1976.

**PUBLICATIONS, CONTINUED:**

STRAHL, N. R., LEWIS, H., AND FARGEN, R., COMPARISON OF GAS CHROMATOGRAPHIC AND SPECTROPHOTOMETRIC METHODS OF DETERMINATION OF CAFFEINE IN COFFEES AND TEAS," J. AGR. FOOD CHEM., 25, 233 (1977).

STRAHL, N. R., AND LOPEZ, S., INFLUENCE OF PARTITION COEFFICIENT ON INTESTINAL ABSORPTION OF ALKYL AMINES," J. PHARM. SCI., 67, 1041 (1978).
ABRAHAM, D. J., STRAHL, N. R., AND WILLIAM, L., "SYNTHESIS OF POTENTIAL ONCOLYTIC AGENTS AND INHIBITORS OF ALKALINE PHOSPHATES," SUBMITTED TO J. MED. CHEM.

STRAHL,  N. R., SEARLES, R. P., AND WEBER, S. S., "NON-LINEAR KINETIC MODEL FOR THE ASSESSMENT OF STEADY-STATE PLASMA LEVELS OF SALICYLATES IN PLASMA,"  J. PHARM. SCI.
STRAHL, N. R., JACK, B., AND BALZANO, R., "SENSITIVITY AND SPECIFICITY OF FOUR SPECTROMETRIC DETERMINATIONS FOR SALICYLATE IN PLASMA," J. PHARM. SCI.
STRAHL, N.R., SANCHEZ, G., AND THOMPSON, B., "ROUTINE SPECTROPHOTOMETRIC DETERMINATION OF SALICYLATE IN PLASMA MICROSAMPLES," IN PREPARATION FOR SUBMISSION TO ARTHRITIS AND RHEUMATISM.

STRAHL, N. R., BIOLOGICAL EFFECTS OF PHYSICAL AND PSYCHOLOGICAL TRAUMA; ENCYCLOPEDIA OF TRAUMA, CHARLES R. GIGLEY, PH.D., 2012.

**BOOKS:**

STRAHL, NATHAN R, **CLINICAL STUDY GUIDE FOR THE ORAL BOARDS IN PSYCHIATRY**,  **4TH EDITION**, AMERICAN PSYCHIATRIC PRESS, Inc., RELEASED 04/1/2013.

STRAHL, NATHAN R, **FREEDOM FROM ADDICTION TO NARCOTIC PAINKILLERS AND HEROIN,** 1st EDITION, MARNA PUBLISHING COMPANY, RELEASED MARCH 2015.

STRAHL, NATHAN R., **THE PAIN OF PAINKILLERS AND THE HELL OF HEROIN**, 1ST EDITION, MARNA PUBLISHING COMPANY, SCHEDULED RELEASE DATE: OCTOBER, 2017.

# Exhibit 2

1.  Georgia Bureau of Investigation Region 6 Investigative Summary
2.  Audio of Amanda Allen Interview
3.  Audio of Netanya Sawyer Interview
4.  Inmate Medical Check Logs
5.  Suicide Watch Logs
6.  Tower Logs
7.  May 7, 2021 Jail Incident/Disciplinary Report by Brandon Boyd
8.  April 27, 2021 Jail Incident/Disciplinary Report by Emmett Lewis
9.  Med 1 Video Footage 4/2621 at 03:26 through 4/26 21 at 13:22
10. Med 1 Video Footage 4/26/21 at 22:55 through 4/27/21 at 08:33
11. Autopsy Report
12. Blood Alcohol – Postmortem Report
13. Toxicology – Postmortem
14. Photographs of items taken from Andrew Reed Sutherland when detained