# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| DUCT DOCTOR USA, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | MDL DOCKET NO. |
| | : | |
| CREATIVE BUILDING SOLUTIONS, LLC; BEA MANAGEMENT, LLC; BENJAMIN ALLISON; TAKASHI YANO; and BROOKS INGRASSIA, | : : : : : | CIVIL ACTION NO. |
| | : | |
| Defendants. | : | |

## INTRODUCTION

1. Duct Doctor USA, Inc. is the national franchisor of Duct Doctor® franchises, which offer truck powered air duct cleaning services.

2. Defendants are former franchisees who are subject to post-term obligations pursuant to their Franchise Agreement and continue to operate a business that competes with the Plaintiff and its franchisees.

3. Defendants also continued to use the Plaintiff's trademarks after the termination of their Franchise Agreement and continue to use Plaintiff's proprietary equipment package, business systems, and bargained for location to market and run a Competing Business.

4. Duct Doctor, USA, Inc. commences this action to enforce its rights and protect

1

its valuable trademarks and proprietary equipment package by seeking an injunction that enjoins Defendants from operating the Competing Business, using Duct Doctor's trademarks in the operation of the Competing Business, and complying with the demand to return or destroy Duct Doctor's proprietary equipment package.

## PARTIES

5. Plaintiff, Duct Doctor USA, Inc. ("Plaintiff" or "Duct Doctor") is a Georgia corporation with its principal place of business located at 5555 Oakbrook Parkway, Suite 660, Norcross, Georgia 30093.

6. At all times referred to herein, Duct Doctor has engaged in business as a national franchisor of Duct Doctor franchises, which offer residential and commercial air duct cleaning and other indoor air quality services under the mark "Duct Doctor®."

7. Defendant, Creative Building Solutions, LLC ("CBS") is a Missouri Limited Liability Company with its principal place of business located at 4130 Northeast Port Drive, Lee's Summit, Missouri, 64064 (the "Franchisee Address").

8. Defendant, BEA Management, LLC ("BEA") is a Missouri Limited Liability Company with a place of business at 4130 Northeast Port Drive, Lee's Summit, Missouri, 64064. BEA is the principal owner of CBS with one hundred percent (100%) ownership.

9. Defendant, Benjamin Allison ("Allison") is a citizen and resident of Leavenworth County, Kansas.

10. Defendant, Takashi Yano ("Yano") is a citizen and resident of Johnson County, Kanas.

11. Defendant, Brooks Ingrassia ("Ingrassia") is a citizen and resident of Cass County, Missouri.

12. Collectively, CBS, BEA, Allison, Yano, and Ingrassia are "Defendants."

13. CBS operated their Duct Doctor franchise within the Missouri counties of Jackson, Clay, and Platte (the "Franchisee Territory"). Defendants continue to operate a competing business within the same Franchisee Territory and at the same Franchisee Address, performing the same service offerings, with the same employees, and mostly the same clients or customers.

## JURISDICTION AND VENUE

14. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 in that Plaintiff's claims against Defendants are based upon trademark and trade dress infringement under the Lanham Act, 15 U.S.C. § 1501, et seq.

15. The Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332 in that Plaintiff's amount in controversy against Defendants exceed the sum or value of $75,000 and is between citizens of different States pursuant to 28 U.S.C. § 1332 (a).

16. Venue for this action is predicated upon Section 15.7 of the Franchise Agreement determining Venue for litigation shall be any court of general jurisdiction in Gwinnett County, Georgia or the United States District Court for the Northern District of Georgia, Atlanta Division.

## BACKGROUND

17. On July 8, 2019, Duct Doctor and CBS entered into a Franchise Agreement pursuant to which Defendants obtained the right and undertook the obligation to operate a Duct Doctor franchise in the Franchise Territory (the "Franchise Agreement"). A true and correct copy of the Franchise Agreement is attached as "Exhibit A."

18. On July 8, 2019, Duct Doctor and CBS entered into a Consent to Transfer and Release Agreement (the "CTRA") pursuant to which Duct Doctor consented to the transfer of ownership from CBS to BEA, whereby BEA will be the sole member of CBS. A true and correct copy of the CTRA is attached as "Exhibit B."

19. On July 8, 2019, the Franchise Agreement was amended so that the term would expire on February 10, 2023. A true and correct copy of the Amendment to the Franchise Agreement is attached as "Exhibit C."

20. On July 8, 2019, Allison and Yano entered into a Personal Guaranty of Franchisee's Principal Owners, pursuant to which they agreed to be personally liable

for any breach of contract by Franchisee and agreed to abide by the non-compete and confidentiality provisions. A true and correct copy of Schedule D of the Franchise Agreement is attached as "Exhibit D."

21. On July 8, 2019, Allison and Ingrassia entered into an Agreement Not to Compete and Confidentiality Agreement, pursuant to which they agreed to abide by the non-compete and non-solicitation provisions for twenty-four (24) months within fifty (50) miles of the Franchisee Territory and the Protected Territory of any other Duct Doctor Franchisee. A true and correct copy of Schedule E of the Franchise Agreement is attached as "Exhibit E."

22. Duct Doctor is the licensor of trademarks registered at the United States Patent and Trademark Office on the Principal Register as follows (the "Marks"):

| REGISTRATION NO. | EFFECTIVE DATE OF REGISTRATION | MARK |
|---|---|---|
| 5189880 | April 25, 2017 | DUCT DOCTOR |

23. Duct Doctor is the licensee of a proprietary equipment package from their affiliate, IAQ, Inc., which is installed in the Franchisees trucks to perform duct cleaning services. IAQ, Inc. is the sole approved vendor of the truck-mounted cleaning equipment used by Duct Doctor franchisees.

24. Duct Doctor provides a variety of air duct cleaning and indoor air quality improvement services, as well as, a comprehensive system (the "System") that

includes the Marks, proprietary equipment package, know-how relating to Duct Doctor services, advertising, marketing, sales techniques, and training programs.

25. Duct Doctor and franchisees are licensed to use the Marks to operate under Duct Doctor's System pursuant to the terms and conditions of the Franchise Agreement entered into by each franchisee.

26. Duct Doctor's franchisees are also licensed to use Duct Doctor's proprietary equipment package, procedures, standards, and specifications for operation, all of which are disclosed to Duct Doctor franchisees in confidence.

27. Defendants Franchise Agreement expired on February 10, 2023.

28. Duct Doctor offered Defendants the option to renew the Franchise Agreement, but Defendants refused to renew the Franchise Agreement.

## FRANCHISE AGREEMENT

29. Under each Franchise Agreement, Duct Doctor franchisees have agreed to abide by and comply with the non-compete (the "Non-compete") and non-solicitation provisions (the "Non-solicitation"), pursuant to Sections 11.4.3 and 11.4.4 of the Franchise Agreement, respectively.

30. In relevant part, the Non-compete reads:

> "Franchisee covenants that it will not, for a period of twenty-four (24) months after the expiration, non-renewal, transfer, or termination of this Agreement, regardless of the cause of termination, or within twenty-four (24) months of the sale of the Franchised Business or any interest

6

       in the Franchisee, either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person or entity, own, manage, operate, maintain, engage in, consult with, or have any interest in any Competing Business within fifty (50) miles of the Protected Territory of the former Franchised Business or within fifty (50) miles and the Protected Territory of any other Duct Doctor Franchisee.

       <u>See</u> "Exhibit A" at § 11.4.3.

31. In relevant part, the Non-solicitation reads:

       "Franchisee covenants that it will not, for a period of twenty-four (24) months after the expiration, non-renewal, or termination of this Agreement, regardless of the cause of termination, or within twenty-four (24) months of the sale of the Franchised Business or any interest in Franchisee, solicit business from customers of Franchisee's former Franchised Business, or contact any of Franchisor's suppliers or vendors for any competitive business purpose, or solicit any of its former employees, or the employees of any Duct Doctor Franchised Business operated by another franchisee, Franchisor or Franchisor's affiliates to discontinue employment."

       <u>See</u> Exhibit "A" at § 11.4.4.

32. In addition to the Franchise Agreement, Allison and Yano have agreed to abide by and comply with the non-compete and confidentiality provisions, pursuant to the Personal Guaranty of Franchisee's Principal Owners (the "Personal Guaranty").

33. In relevant part, the Personal Guaranty reads:

       "…to be personally bound by, and personally liable for the breach of, each and every provision in the Agreement (including any amendment or modification of the Agreement), both monetary obligations and obligations to take or refrain from taking specific actions or to engage

7

> or refrain from engaging in specific activities, including the non-competition, confidentiality, transfer, and arbitration requirements."

See "Exhibit D."

34. In addition to the Franchise Agreement, Allison and Ingrassia have agreed to abide by and comply with the non-compete and non-solicitation provisions, pursuant to the Agreement Not to Compete and Confidential Agreement (the "Personal Non-Compete").

35. In relevant part, the Personal Non-Compete reads:

> "Covenant Not to Compete After the Term of the Franchise Agreement. Owners covenants that he/she will not, beginning with the date of the termination, expiration, or non-renewal of the Franchise Agreement, and continuing for two (2) years thereafter, within Franchisee's Protected Territory or former Protected Territory, or within fifty (50) miles of the boundary of the Franchisee's Protected Territory or former Protected Territory, individually or jointly with others, by, through, on behalf of, or in conjunction with, any person or entity: (i) own, maintain, operate, engage in, or have any interest in, any business engaged in a Competitive Business, without Franchisee's and Franchisor's prior written consent, except that Owner may passively own or hold less than five percent (5%) of the shares of any publicly-traded business engaged in a Competing Activity; (ii) act as a director, officer, partner, member, employee, independent contractor, consultant, principal, agent, or proprietary, or otherwise, or participate or assist in the establishment or operation of, any business engaged in a Competitive Business."

See "Exhibit E" at 2.2.

36. In addition, under each Franchise Agreement, Duct Doctor's franchisees have agreed to abide by and comply with the Post Term Obligations Upon Expiration,

pursuant to Section 14.1 of the Franchise Agreement.

37. In relevant part, the Post-Term Obligations Upon Expiration reads:

> 14.1.2: "…cease to be a franchisee of Franchisor under this Agreement and cease to operate the former Franchised Business under the System. Franchisee must not thereafter, directly or indirectly, represent to the public that the former Franchised Business is or was operated or in any way be connected with the Duct Doctor Franchise Systems, or hold itself out as a present of former Franchisee of Franchisor;"
>
> …
>
> 14.1.4: "…return to Franchisor the Operations Manual, Confidential Information, and all trade secrets, confidential materials, and other property owned by Franchisor. Franchisee may not retain a copy or record of any of the foregoing, provided, however, that Franchisee may retain its copy of this Agreement, any correspondence between the parties, and any other document which Franchisee reasonably needs for compliance with any applicable provision of law. Business cards, brochures, marketing materials and other promotional materials must be returned to Franchisor. Upon Franchisor's request, Franchisee must sell all of its product or chemical inventory to Franchisor at Franchisee's cost;"
>
> 14.1.5: "…provide Franchisor a complete list of Franchisee's employees, clients, customers, and contacts and their respective addresses and any outstanding obligations Franchisee may have to any third parties, and all business records of Franchisee that Franchisor may request;"
>
> 14.1.6: "…cease to use in any manner whatsoever, including in Franchisee's business operations and advertising, any methods, procedures, technology, or other component of the Duct Doctor System in which Franchisor has any right, title, or interest…"
>
> …

> 14.1.8.1: "Franchisee shall offer the truck cab and chassis along with the proprietary body and equipment package to Franchisor's affiliate which will purchase the foregoing items based on the following valuation: (i) the cab and chassis will be valued at Blue Book value, (ii) the proprietary body and equipment package will be valued at the current book value or the original cost minus reasonable depreciation. Franchisee shall make an election to sell the combined cab, chassis, and equipment or may retain the cab and chassis. Should Franchisee elect to retain the cab and chassis, it shall deliver the truck to Franchisor's headquarters for removal of the body and equipment package at Franchisee's expense."
>
> 14.1.8.2: Franchisee may, in the alternative dispose of the truck-mounted air-duct cleaning apparatus by having it destroyed by a commercial disposal company acceptable to Franchisor and providing Franchisor with certification of destruction in a form acceptable to Franchisor."
>
> See "Exhibit A" at § 14.1

## FRANCHISEE'S OPERATION OF THE COMPETING BUSINESS AND USE OF DUCT DOCTOR'S TRADEMARKS IN THE COMPETING BUSINESS

38. Plaintiff has become aware that Defendants are still operating a competing business under the name "Complete Service Group, LLC" ("CSG") (the "Competing Business").

39. The Competing Business operates within the same territory and out of the same location that the franchisee operated the franchised business, performing the same service offerings, with the same employees, and mostly the same clients or customers.

40. The Competing Business continued to use Duct Doctor trademarks in their operations, including online at ductdoctorkc.com (the "Website"), despite not renewing their Franchise Agreement on February 10, 2023. The Website remained up and directed prospective clients and customers to call the former Franchisee's phone number until March 10, 2023 (approximately a month). The number is active but is currently being used by CSG. In addition, there are numerous examples of the trademarks being used online and in other marketing materials after the expiration of the Franchise Agreement.

41. Plaintiff subsequently wrote to Defendants and demanded compliance with their non-compete, non-solicitation, and post-term obligations (the "Demand Letter"). Plaintiff highlighted the continued operation of the Competing Business in connection with their former Duct Doctor franchisee, unauthorized use of Duct Doctor's trademarks, and failure to comply with their post-term obligations including the refusal to return or destroy the prosperity equipment package. A true and correct copy of the Demand Letter is attached as "Exhibit F."

42. In addition to the violation of the non-compete and non-solicitation provisions, Defendants are also in violation of the post-term obligations upon expiration.

43. Defendants are still holding themselves out as former franchisees of Duct

Doctor in their marketing or promotional materials and in conversations with prospective clients or customers, pursuant to Section 14.1.2 of the Franchise Agreement.

44. Defendants have failed to return to Duct Doctor the Operations Manual, Confidential Information, and all trade secrets, confidential materials, and other property owned by Duct Doctor, pursuant to Section 14.1.4 of the Franchise Agreement.

45. Defendants have failed to provide Duct Doctor with a complete list of employees, clients, customer, and contacts, pursuant to Section 14.1.5 of the Franchise Agreement.

46. Defendants have failed to cease to use Duct Doctor's trademarks and any other mark and indica of operation associated with Duct Doctor System including stationary and other printed material and remove all trade dress, physical characteristics, color combinations, and other indications of operation under Duct Doctor's System from the location of the business and the vehicles used in the business, pursuant to Section 14.1.6 of the Franchise Agreement.

47. Defendants have failed to comply with Duct Doctor's repeated requests to return or destroy the proprietary equipment package, pursuant to Sections 14.1.8.1 and 14.1.8.2 of the Franchise Agreement.

48. Defendants remain in operation of the Competing Business in violation of their contractual obligations pursuant to Sections 11.4.3, 11.4.4 and 14.1 of the Franchise Agreement, as well as, the Personal Guaranty and Section 2.2 of the Personal Non-Compete.

## COUNT I
## BREACH OF CONTRACT – OPERATION OF THE COMPETING BUSINESS

49. Plaintiff Duct Doctor incorporates by reference the facts set forth in paragraphs 1 through 48 above as though set forth at length herein.

50. Defendants are former franchisees, subject to their non-compete and non-solicitation provisions pursuant to the Franchise Agreement. The Franchise Agreement has expired, it was not renewed, and is otherwise ended.

51. Defendants are engaged in the business of operating the Competing Business within the same territory and out of the same location that the franchisee operated the franchised business, performing the same service offerings, with the same employees, and mostly the same clients or customers.

52. The acts, practices, and conduct of Defendants in operating the Competing Business constitutes a material breach of the Franchise Agreement and constitutes a misuse of the confidential information, Marks and System.

53. Duct Doctor has been and will continue to be irreparably harmed by the

former franchisees' operation of the Competing Business.

54. Despite Plaintiff's demand to comply with the non-compete, Defendants continue to operate the Competing Business.

**WHEREFORE**, Plaintiff Duct Doctor USA, Inc. demands judgment in its favor and against Defendants as follows:

    a. A preliminary and permanent injunction enjoining Defendants and their agents, employees, and any person acting in concert with them for a period of twenty-four (24) months after the date of compliance with the court order from having any interest in the Franchisee, either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person or entity, own, manage, operate, maintain, engage in, consult with, or have any interest in any Competing Business within fifty (50) miles of the Protected Territory of the former Franchised Business or within fifty (50) miles and the Protected Territory of any other Duct Doctor Franchisee;

    b. Attorneys' fees and costs of this action pursuant to Sections 14.8.4 and 15.3 of the Franchise Agreement; and

    c. Such further relief as this Court deems just and proper.

## COUNT II
## BREACH OF CONTRACT – VIOLATION OF POST TERM

**OBLIGATIONS**

55. Plaintiff Duct Doctor incorporates by reference the facts set forth in paragraphs 1 through 48 above as though set forth at length herein.

56. Defendants are former franchisees, subject to their post-term obligations pursuant to the Franchise Agreement. The Franchise Agreement has expired, it was not renewed, and is otherwise ended.

57. Despite Plaintiff's demand to comply with the post-term obligations, Defendants have continuously refused to do so.

58. Defendants have failed to comply with several of their post-term obligations pursuant to Section 14.1 of the Franchise Agreement, despite numerous requests for compliance.

59. Defendants have failed to return or destroy the proprietary equipment package pursuant to Section 14.1.8.1 and 14.1.8.2 of the Franchise Agreement.

60. Defendants have also failed to provide a complete list of employees, clients, customer, and contacts, pursuant to Section 14.1.5 of the Franchise Agreement.

61. The acts, practices, and conduct of Defendants in failing to comply with post-term obligations constitutes a material breach of the Franchise Agreement and constitutes a misuse of the confidential information, Marks and System.

62. Duct Doctor has been and will continue to be irreparably harmed by the

former franchisees' continued use of the proprietary equipment package and solicitation from client or customer lists.

**WHEREFORE**, Plaintiff Duct Doctor USA, Inc. demands judgment in its favor and against Defendants as follows:

   a. A preliminary and permanent injunction enjoining Defendants and their agents, employees, and any person acting in concert with them to return the proprietary equipment package pursuant to Section 14.1.8.1 of the Franchise Agreement or destroy the proprietary equipment package pursuant to Section 14.1.8.2 of the Franchise Agreement; and provide the required list to Plaintiff Duct Doctor.

   b. Attorneys' fees and costs of this action pursuant to Sections 14.8.4 and 15.3 of the Franchise Agreement; and

   c. Such further relief as this Court deems just and proper.

## COUNT III
## TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

63. Plaintiff Duct Doctor incorporates by reference the facts set forth in paragraphs 1 to 48 above as though set forth at length herein.

64. Defendants have utilized and benefits from the Marks in operation of the Competing Business without authorization from Duct Doctor.

65. Defendants willfully intended to trade on Duct Doctor's reputation and cause

dilution of the marks.

66. Defendants are guilty of trademark infringement pursuant to the Lanham Act, 15 U.S.C. §1051, et seq. Defendants' usage of the Marks constitutes a false designation of origin and is likely to cause confusion, mistake or deception as to it being affiliated, connected or associated with Duct Doctor in violation of 15 U.S.C. §1125(a). Defendants' conduct is also a violation of the common law of unfair competition and is an unfair trade practice under common law.

67. Defendants continued operation of the Competing Business and use of trademarks in the Competing Business as set forth above has caused and will cause Duct Doctor irreparable injury in that customers are being deceived by Defendants as a result of their continued use of the Duct Doctor's System and Marks; Duct Doctor will have difficulty franchising Defendant's trading areas, which includes the area Duct Doctor exclusively granted to Defendant; business will be diverted from Duct Doctor's Marks; Duct Doctor's Marks will be diluted and taken from Duct Doctor's control; and Duct Doctor will lose profits and revenues which, because of Defendant's conduct, cannot be readily calculated.

68. Duct Doctor has no adequate remedy at law because Duct Doctor cannot be adequately compensated for the deprivation and dilution of the consumer recognition and goodwill built up under the Marks as a result of Defendants' conduct.

69. Duct Doctor's immediate and irreparable harm will continue unless Defendants are enjoined from continuing to use of the Marks.

**WHEREFORE**, Plaintiff Duct Doctor, USA, Inc. demands judgment in its favor and against Defendants as follows:

 a. A preliminary and permanent injunction enjoining Defendants and their agents, employees and any person acting in concert with them from infringing on Duct Doctor USA, Inc.'s trademarks in any manner whatsoever not licensed under the Franchise Agreement;

 b. An accounting of and judgment for the profits to which Plaintiff Duct Doctor USA, Inc. may be entitled as a result of Defendants' infringement;

 c. Treble damages pursuant to 15 U.S.C. § 1117;

 d. Punitive Damages;

 e. Attorneys' fees and costs of this action pursuant to Sections 14.1.8.4 and 15.3 of the Franchise Agreement; and

 f. Such further relief as this Court deems just and proper.

## COUNT IV
## MISAPPROPRIATION OF TRADE SECRETS

70. Plaintiff Duct Doctor incorporates by reference the facts set forth in paragraphs 1 through 48 above as though set forth at length herein.

71. Defendant continues to make use of Duct Doctor's Marks and System through both their physical and internet presence.

72. It is because of Duct Doctor's resources spent in educating Defendant in the System that Defendant has the trade knowledge to continue operating the Competing Business.

73. Defendant knowingly used and continues to use Duct Doctor's System and Marks for economic benefit as they have operated and continue operating the Competing Business.

74. Duct Doctor is injured by Defendant's actions by way of dilution of the Marks and Defendant's continuous use of Duct Doctor's System.

**WHEREFORE**, Plaintiff Duct Doctor, USA, Inc. demands judgment in its favor and against Defendants as follows:

    a. A preliminarily and permanent injunction that enjoins Defendants and their agents, employees and any person acting in concert with them from utilizing any trade secrets of Plaintiff Duct Doctor USA, Inc. in any manner whatsoever not licensed under the Franchise Agreement,

    b. An accounting of and judgment for the profits to which Plaintiff Duct Doctor USA, Inc. may be entitled as a result of Defendants' misappropriation;

    c. Treble damages pursuant to 15 U.S.C. § 1117;

    d. Punitive Damages;

    e. Attorneys' fees and costs of this action pursuant to Sections 14.1.8.4 and 15.3 of the Franchise Agreement; and

    f. Such further relief as this Court deems just and proper.

Dated: April 21, 2023

                                             By:  Mark L. Seigel
                                                        Attorneys for Plaintiff,
                                                        Duct Doctor USA, Inc.
                                                        Georgia Bar No. 634617
                                                        The Seigel Law Firm LLC
                                                        1397 Carroll Dr. NW
                                                        Atlanta, GA 30318
                                                        770-395-5924 (direct)
                                                        seigel@addipvalue.com