# EXHIBIT E

**FRANCHISE AGREEMENT**
**SCHEDULE "E"**

**AGREEMENT NOT TO COMPETE AND CONFIDENTIALITY AGREEMENT**

THIS AGREEMENT (the "Agreement") is made and entered into the __8th__ day of July, 2019 (the "Effective Date"), by and between **DUCT DOCTOR USA, INC.**, a Georgia corporation ("Franchisor"), **CREATIVE BUILDNG SOLUTIONS, LLC**, a Missouri limited liability company ("Franchisee"), and BENJAMIN ALLISON and BROOKS M. INGRASSIA, individual residents of the state of Missouri, ("Owner" or "I").

**RECITALS**

A. Owner is an owner of equity in or a key employee of Franchisee, a franchisee of Franchisor pursuant to a Franchise Agreement dated __Jul 08 2019__ (the "Franchise Agreement").

B. Franchisor owns a wide variety of confidential information and trade secrets. Franchisor is granting Franchisee and Owner access to its confidential information, trade secrets, and other methods and procedures. Franchisor needs to secure the confidentiality of its confidential information, the secrecy of its trade secrets, and its other methods and procedures, so that Franchisor's legitimate interests, including without limitation the interests of Franchisor's other franchisees, and the integrity and goodwill of Franchisor and its affiliates, and the integrity of Franchisor and such affiliates' various businesses, are protected.

C. Franchisor would not have entered into the franchise relationship with Franchisee unless Franchisee agreed to have Owner sign this Covenant, agree to be bound by it, and agree to comply with it.

NOW, THEREFORE, in consideration of the foregoing, and for other good and valuable consideration, the receipt and sufficiency of all of which Owner hereby acknowledges, Owner hereby covenants, warrants, represents, and agrees as follows:

1. **Definitions**. As used in this Covenant:

    1.1 Competitive Business. "Competitive Business" will mean: (i) owning, maintaining, operating, engaging in, or having any interest in, any business that offers for sale, sells, or delivers residential and commercial air duct cleaning and indoor air quality services as are offered by Duct Doctor franchised businesses, as such services are modified from time to time, or any services confusingly similar thereto (a "Competitive Business"), other than another business operating under an agreement with Franchisor or any affiliate of Franchisor; (ii) acting as a director, officer, partner, member, employee, independent contractor, consultant, principal, or proprietor, or participating or assisting in the establishment or operation of any business engaged in a Competitive Business; or (iii) diverting or attempting to divert any business from Franchisee's Duct Doctor business, or from any businesses operating under the Franchisor's System, or from other systems Franchisor or its affiliates may develop.

    1.2 Confidential Information. "Confidential Information" means any information that Franchisor discloses to Franchisee that Franchisor designates as confidential, or that, by its nature, would reasonably be expected to be held in confidence or kept secret, whether such disclosure occurred prior to or after the Effective Date of this Agreement. Without limiting the definition of "Confidential Information," all the following shall be conclusively presumed to be Confidential Information whether

- 3 -

or not Franchisor designates them as such: (i) all information that Franchisor has marked or designated as confidential; (ii) Franchisor's Operations Manual, together with all similar directives and documentation; (iii) Franchisor's training programs and the material contained in them; (iv) Franchisor's methods, system, equipment, and agreements, related to the development, opening, and operation of Duct Doctor businesses; (v) Franchisor's cost information; and (vi) all other information that Franchisor provides to Franchisee in confidence, except where such information is a Trade Secret.

1.3 Trade Secret. "Trade Secret" means information that derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who may obtain economic value from its disclosure or use, whether Franchisee or Owner obtained such information prior to or after the Effective Date of the Franchise Agreement. Without limiting the definition of "Trade Secret," all the following shall be conclusively presumed to be Trade Secrets whether or not Franchisor designates them as such: (i) all customer lists, whether related to the franchised business or otherwise, and the contact information of such customers; (ii) Franchisor's advertising, marketing, and public relations strategies; (iii) Franchisor's marketing analyses; (iv) products and services that Franchisor proposes to introduce, but that it has not yet introduced; and (v) Franchisor's expansion plans.

1.4 System. "System" will mean businesses operating under the "Duct Doctor" trademarks, trade names, service marks, logotypes, and other commercial symbols.

2. **Covenant Not to Compete**.

2.1 Covenant Not to Compete During the Term of the Franchise Agreement. Owner agrees that he/she will not, during the term of the Franchise Agreement, individually or jointly with others, directly or indirectly, by, though, on behalf of, or in conjunction with, any person or entity: (i) own, maintain, operate, engage in, or have any interest in, any business engaged in a Competitive Business, other than as an owner of Franchisee, without Franchisee's and Franchisor's prior written consent, except that Owner may passively own or hold less than five percent (5%) of the shares of any publicly-traded business engaged in a Competitive Business; (ii) act as a director, officer, employee, independent contractor, consultant, principal, agent, or proprietor, or otherwise participate or assist in the establishment or operation of, directly or indirectly, any business engaged in a Competitive Business; or (iii) divert or attempt to divert any business from Franchisee's Duct Doctor business, from Franchisor, or from any businesses operating under the Franchisor's System or other systems Franchisor or its affiliates may develop.

2.2 Covenant Not to Compete After the Term of the Franchise Agreement. Owner covenants that he/she will not, beginning with the date of the termination, expiration, or non-renewal of the Franchise Agreement, and continuing for two (2) years thereafter, within Franchisee's Protected Territory or former Protected Territory, or within fifty (50) miles of the boundary of the Franchisee's Protected Territory or former Protected Territory, individually or jointly with others, by, though, on behalf of, or in conjunction with, any person or entity: (i) own, maintain, operate, engage in, or have any interest in, any business engaged in a Competitive Business, without Franchisee's and Franchisor's prior written consent, except that Owner may passively own or hold less than five percent (5%) of the shares of any publicly-traded business engaged in a Competing Activity; (ii) act as a director, officer, partner, member, employee, independent contractor, consultant, principal, agent, or proprietor, or otherwise, or participate or assist in the establishment or operation of, any business engaged in a Competitive Business.

Creative Building Solutions, LLC
Duct Doctor Franchise Agreement

3. **Ownership and Protection of Confidential Information and Trade Secrets**.

  3.1 Ownership.  Owner acknowledges and agrees that Franchisor's Confidential Information and Trade Secrets are and shall remain Franchisor's sole and exclusive property and that: (i) they are expressly copyrighted by copyright notice and hence protected under the U.S. Copyright Act, or they are unpublished works nonetheless protected under the U.S. Copyright Act; (ii) they include Franchisor's valuable confidential information and trade secrets; and (iii) Franchisor has made and will continue to make substantial investment in the Confidential Information and Trade Secrets, which investment may be recouped only if Franchisor's rights set forth in the provisions of the Franchise Agreement governing the protection of Franchisor's intellectual property, Franchisor's rights set forth in this Agreement, Franchisor's rights established by law, and Franchisor's other rights arising out of or related to Franchisor's intellectual property, are honored.

  3.2 Acknowledgments.  Owner acknowledges and agrees that the Confidential Information and Trade Secrets are not, by definition, generally known in the trade; that they are beyond Owner's present skill and experience; and that for Owner to develop such Confidential Information and Trade Secrets on its own would be expensive, time-consuming, and difficult.  Owner further acknowledges and agrees that the Confidential Information and Trade Secrets would, if disclosed to a third party or used by me in violation of this Agreement, provide the third party or me with an unfair competitive advantage, and that they would be economically valuable to the third party or me in the development of a competing business or otherwise.

  3.3 Protection.  In recognition, acknowledgment, and agreement with this Agreement, and in consideration of Franchisor's grant of a Duct Doctor Franchise to Franchisee, and in further consideration of the disclosure of the Confidential Information and Trade Secrets to me, Owner covenants, warrants, represents, and agrees that:

    3.3.1  He/she will not, during the term of the Franchise Agreement: (i) appropriate or use any Confidential Information or Trade Secret for any purpose other than the operation of Franchisee's franchised business; (ii) use any Confidential Information or Trade Secret at any place except Franchisee's franchised business; (iii) disclose or reveal any portion of the Confidential Information or Trade Secrets to any person, other than to Franchisee's directors, officers, owners, management employees, and others who have a legitimate business need to know of them in order to further the operation of Employer's franchised business; or (iv) disclose any Confidential Information or Trade Secret to any other person or entity except as Franchisee or Franchisor expressly authorize.

    3.3.2  He/she will not, for two (2) years after the termination or non-renewal of the Franchise Agreement: (i) appropriate or use any Confidential Information for any purpose; or (ii) disclose any Confidential Information to any other person or entity.

    3.3.3  He/she will not, at any time after the termination or non-renewal of the Franchise Agreement: (i) appropriate or use any Trade Secret for any purpose; or (ii) disclose any Trade Secret to any other person or entity.

    3.3.4  He/she will not copy, duplicate, record, or otherwise reproduce any of the Confidential Information or Trade Secrets, in whole or in part; store such Confidential Information or Trade Secrets in a computer database; or otherwise make such Confidential Information or Trade

Secrets available to any third party, except as set forth in this Agreement or as Franchisor specifically authorizes.

  3.3.5 He/she will at all times use my best efforts to prevent unauthorized copying or disclosure of any Confidential Information or Trade Secrets.

  3.3.6 Franchisor may from time to time modify the form of confidentiality agreement that Franchisor requires individuals like Owner to sign. If Franchisor modifies such form, Owner will, on Franchisee's or Franchisor's request, duly execute, date, and deliver originals of such modified confidentiality agreement to Franchisee or Franchisor so that Franchisee or Franchisor actually receives such originals by the end of ten (10) days after Franchisee's or Franchisor's request for them.

4. **Unfair Competition**. Owner acknowledges and agrees that, and hereby directs any third party construing this Agreement, including without limitation any court, mediator, master, or other party acting as a trier of fact or law, to conclusively presume that: (i) any breach by Owner of Sections 2 or 3 of this Agreement constitutes a deceptive and unfair trade practice and unfair competition; and (ii) Section 3 of this Agreement are Franchisee's and Franchisor's reasonable effort under the circumstances to maintain the confidentiality of Franchisee's or Franchisor's Confidential Information and the secrecy of their Trade Secrets.

5. **Works Made for Hire**. If Franchisee directs Owner to create works derived from any Confidential Information or Trade Secrets, such works shall be deemed works made for hire and Franchisee shall own all copyrights in such works, subject to its obligations to assign such rights to Franchisor.

6. **Burden of Proof**. If a dispute arises as to whether particular information is Confidential Information or a Trade Secret, Owner agrees that it will bear the burden of proving that such information is outside the ambit of "Confidential Information" or "Trade Secrets" subject to this Agreement.

7. **Remedies**. If Owner defaults under this Agreement, or if Owner threatens any default, or if any default appears to be imminent, Owner acknowledges and agrees that: (i) Employer and Franchisor shall be entitled to all remedies at law or in equity or otherwise for such default or threatened or imminent default; and (ii) Employer and Franchisor shall be entitled, in addition to any other remedies Employer and Franchisor may have at law or in equity or otherwise, to a preliminary and permanent injunction and a decree for specific performance of the terms of this Agreement without the necessity of showing actual or threatened damage and without being required to furnish a bond or other security.

8. **Directives**. If there is any dispute related to this Agreement, Owner hereby directs any third party construing this Agreement, including without limitation any court, mediator, master, or other party acting as a trier of fact or law:

  8.1 To conclusively presume that the restrictions set forth in Sections 2 and 3 are reasonable and necessary in order to protect: (i) Franchisee's and Franchisor's legitimate business interests, including without limitation the interests of Franchisor's other franchisees, the interests of Franchisor's franchisees and sub franchisees, and the integrity of the System; (ii) the confidentiality of Franchisor's confidential information and the secrecy of Franchisor's trade secrets; (iii) Franchisor's investment in the System; and (iv) the goodwill associated with the System.

Creative Building Solutions, LLC
Duct Doctor Franchise Agreement

        8.2  To conclusively presume that Sections 2 and 3 were made freely and voluntarily by me, as a skilled and experienced businessperson to whom Franchisee and Franchisor delivered good and valuable consideration.

        8.3  To conclusively presume that the restrictions set forth in Section 2 will not unduly burden my ability to earn a livelihood.

        8.4  To conclusively presume that Owner's violation of any of the terms of Section 2 of this Covenant: (i) was accompanied by the misappropriation and inevitable disclosure of Franchisee's and Franchisor's confidential information, trade secrets, and other methods and procedures; and (ii) constitutes a deceptive and unfair trade practice and unfair competition.

9. **Enforcement**.  Owner acknowledges and agrees that:

    9.1  Each of the covenants set forth in this Agreement shall be construed as independent of any other covenant or provision of this Agreement.  If all or any portion of a covenant set forth in this Agreement is held unreasonable or unenforceable by a court or agency having valid jurisdiction in an unappealed final decision in a proceeding to which Franchisor is a party, Owner will be bound by any lesser covenant subsumed within the terms of such covenant that imposes the maximum duty permitted by law, as if the resulting covenant were separately stated in and made a part of Sections 2 or 3.

    9.2  Franchisor shall have the right, in its sole discretion, to reduce the scope of any covenant set forth in Sections 2 or 3 of this Agreement, or any portion thereof, without my consent, effective immediately on delivery by Franchisor of written notice of such reduction to me; and Owner will immediately comply with any covenant as so modified.

    9.3  The existence of any claims Owner may have against Franchisee or Franchisor, whether or not they arise from this Agreement, shall not constitute a defense to the enforcement by Franchisee or Franchisor of the provisions of this Agreement.

10. **Injunctive Relief**.  Owner agrees that any failure to comply with the requirements of this Agreement will cause Franchisee and Franchisor irreparable harm for which they have no adequate remedy at law.  Therefore, Owner agrees that Franchisee and Franchisor will have the right to injunctive relief, including without limitation a decree for specific performance, to compel Owner to comply with this Agreement, without the necessity of showing actual or threatened damage and without being required to furnish a bond or other security.

11. **Construction**.

    11.1    Governing Law.  All matters arising out of or related to this Agreement, including without limitation all matters arising out of or related to the making, existence, construction, enforcement, and sufficiency of performance of this Agreement, shall be determined exclusively in accordance with, and governed exclusively by, the laws of the State of Georgia applicable to agreements made and to be entirely performed in the State of Georgia, which laws shall prevail in the event of any conflict of laws.

    11.2    Forum, Venue, and Jurisdiction.  In the event of any dispute arising out of or related to this Agreement, including without limitation any dispute arising out of or related to the making of this Agreement, such dispute shall be resolved exclusively through litigation.  The exclusive forum and

venue for such litigation shall be the state or federal court having jurisdiction over the subject matter in or for the city or county where Franchisor's principal place of business is located. Owner hereby irrevocably accepts and submits to, generally and unconditionally, the exclusive jurisdiction of any such state or federal court having jurisdiction over the subject matter and hereby waive all defenses based on jurisdiction, venue, or forum non conveniens.

       11.3      <u>Waiver of Trial By Jury</u>. I hereby waive trial by jury in any litigation arising out of or related to this Agreement.

       11.4      <u>Attorneys' Fees</u>. In the event of any dispute or litigation arising out of or related to this Agreement, including without limitation any dispute or litigation arising out of or related to the making of this Agreement, Owner will pay Franchisee and Franchisor, on demand, their costs, including without limitation their reasonable attorneys' fees and costs, and further including without limitation their reasonable attorneys' fees and costs of appeal, and further including without limitation their reasonable attorneys' fees and costs of collection, so that they actually receive such amounts by the end of ten (10) days after they demand payment. In the event of any default under this Agreement, Owner will pay Franchisee and Franchisor, on demand, their costs arising out of or related to such default, including without limitation their reasonable attorneys' fees and costs, and further including without limitation their reasonable attorneys' fees and costs of collection, so that they actually receive such amounts by the end of ten (10) days after they demand payment.

12. **Miscellaneous**.

       12.1      <u>Construe in Favor of Enforcement</u>. In the event of any dispute, litigation, or like event or occurrence arising out of or related to my obligations set forth in this Agreement, or arising out of or related to the matters set forth in this Agreement, Owner hereby directs any third party construing this Agreement, including without limitation any court, mediator, master, or other party acting as trier of fact or law, to construe the provisions of the Covenants contained herein broadly in favor of enforcement.

       12.2      <u>Merger; Entire Agreement, Compliance</u>. This Agreement sets forth the entire agreement between Franchisee and Franchisor on the one hand, and Owner on the other hand, fully superseding any and all prior negotiations, agreements, representations, or understandings, whether oral or written, related to the subject matter of this Agreement. Owner hereby expressly affirms that there are no oral or written agreements, "side-deals," arrangements, or understandings between Franchisee or Franchisor on the one hand, and Owner on the other hand, except as expressly set forth in this Agreement. No course of dealing, whether occurring before or after the date Owner signed this Agreement, shall operate to amend, terminate, or waive any express written provision of this Agreement.

       12.3      <u>Partial Invalidity</u>. If any provision of this Agreement is declared invalid or unenforceable, such provision shall be modified to the minimum extent necessary to make it valid and enforceable; and if it cannot be so modified, then severed. The balance of this Agreement shall remain in full force and effect, and Owner agrees that it would have signed it as so modified.

       12.4      <u>Successors and Assigns</u>. This Agreement shall be binding on the parties, their personal representatives, successors, heirs, and assigns.

Creative Building Solutions, LLC
Duct Doctor Franchise Agreement

**[SIGNATURES ON FOLLOWING PAGE]**

  IN WITNESS WHEREOF, agreeing to be legally bound hereby, the parties have duly executed and delivered this Agreement as of the date set forth above.

**Owner:**

*Ben Allison*
_____
Benjamin Allison

Date: __Jul 08 2019_____, 20_____

**Key Employee:**

*Brooks M Ingrassia*
_____
Brooks M. Ingrassia

Date: __Jul 08 2019_____, 20__

**Franchisor:**

**Duct Doctor USA, Inc.**

By: *Glade Stricklin*_____
  Kenneth S. Stricklin, CEO

**Franchisee:**

**Creative Building Solutions, LLC**

By: *Ben Allison*_____
Benjamin Allison, President of BEA Management, LLC, Its Sole Member

- 9 -

Creative Building Solutions, LLC
Duct Doctor Franchise Agreement

**[SIGNATURES ON FOLLOWING PAGE]**

  IN WITNESS WHEREOF, agreeing to be legally bound hereby, the parties have duly executed and delivered this Agreement as of the date set forth above.

**Owner:**

*Ben Allison*
_____
Benjamin Allison

Date: __Jul 08 2019_____, 20_____

**Key Employee:**

*Brooks M Ingrassia*
_____
Brooks M. Ingrassia

Date: __Jul 08 2019_____, 20__

**Franchisor:**

**Duct Doctor USA, Inc.**

By: *Glade Stricklin*_____
  Kenneth S. Stricklin, CEO

**Franchisee:**

**Creative Building Solutions, LLC**

By: *Ben Allison*_____
Benjamin Allison, President of BEA Management, LLC, Its Sole Member

- 9 -

Creative Building Solutions, LLC
Duct Doctor Franchise Agreement