**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
Atlanta Division**

| | |
|---|---|
| PENTAGON FEDERAL CREDIT UNION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.  ) | CIVIL ACTION |
| ) | |
| DIPITO LLC d/b/a SD MOTORWERKS, ) | FILE NO. _____ |
| ) | |
| Defendant. ) | |
| ) | |

## **COMPLAINT**

Pentagon Federal Credit Union ("PenFed") brings this action against Dipito LLC d/b/a SD Motorwerks ("SD Motorwerks") for breaching an Indirect Lending Dealer Agreement by failing to confirm the identity of two borrowers before selling two loans to PenFed and for failing to perfect title with respect to those loans and two additional loans it sold to PenFed.

### **PARTIES**

1.     PenFed is a federally chartered credit union with its principal place of business in McLean, Virginia.

2.     Dipito LLC is a limited liability company organized under the laws of Montana with its principal place of business in San Diego, California and may be

1

served with process at Montana Registered Agent, LLC, 1001 S. Main Street, Suite 49, Kalispell, Montana 59901.

3.     Upon information and belief, Dipito LLC has two members, Carrie Sorrento and Richard Hagen, both of whom are citizens of California.

4.     Dipito LLC operates a used car dealership in San Diego, California, under the assumed name "SD Motorwerks" ("Dipito LLC" and "SD Motorwerks" are used interchangeably throughout this complaint).

5.     In or around May of 2014, SD Motorwerks entered into an indirect lending dealer agreement ("the Agreement") with CRIF Select Corporation ("CRIF").

6.     CRIF is a Delaware corporation with its principal place of business in Atlanta, Georgia.

7.     The Agreement provides that CRIF would assist in selling retail installment sales contracts originated by SD Motorwerks to participating creditors and sets forth the terms and conditions under which such sales would be made.

8.     Section 10.G. of the Agreement provides that the creditors who purchase contracts originated by SD Motorwerks pursuant to the Agreement are "intended third-party beneficiaries of this Agreement and that the benefits of this

Agreement and any warranties, representations and obligations of [SD Motorwerks] hereunder will extend to applicable Creditors."

9.     PenFed is a creditor, and therefore an intended third party beneficiary, under the terms of the Agreement.

## JURISDICTION AND VENUE

10.     Section 10.H. of the Agreement contains a choice-of-law clause providing that "[the] Agreement, the entire relationship of the Parties [t]hereto, and any litigation between the Parties shall be governed by and construed in accordance with, and interpreted pursuant to the laws of the State of Georgia[.]"

11.     Section 10.H. of the Agreement also contains the following forum selection clause:

> The parties hereby irrevocably agree that jurisdiction and venue in any action brought by any Party pursuant to an agreement will exclusively lie in any federal or state court located in Fulton County, Georgia. By execution and delivery of an agreement, each party, on behalf of itself and its permitted successors and assigns, irrevocably submits to the jurisdiction of any such court over itself and its property with respect to any such action. The Parties hereby waive any objection that such court is an improper or inconvenient forum for the resolution of such action.

12.     Contractual waivers of personal jurisdiction, such as the waiver set forth in Section 10.H. of the Agreement at issue, are valid and enforceable under Georgia law. Accordingly, this Court has personal jurisdiction over SD Motorwerks.

13.     Forum selection clauses, such as the one set forth in Section 10.H. of the Agreement at issue, are valid and enforceable under Georgia law. Accordingly, this Court is a proper venue for disputes arising out of the Agreement.

14.     This forum bears a reasonable relationship to the subject matter of the agreement because CRIF's principal place of business is Atlanta, Georgia.

15.     The choice-of-law and forum selection clauses are reasonable because they ensure that the Agreement will be interpreted consistently even though the Agreement contemplates transactions involving multiple creditors who may be located in different states.

16.     This Court has subject matter jurisdiction over the dispute in this case under 28 U.S.C. § 1332(a) because the parties are citizens of different states—PenFed is a citizen of Virginia and SD Mortorwerks is a citizen of California—and the amount in controversy exceeds $75,000 exclusive of interest and costs.

## FACTS

The Indirect Lending Dealer Agreement

17.     Section 2.F. of the Agreement provides as follows:

> [SD Motorwerks] shall transfer title to the Collateral to [PenFed] and perfect all liens within a reasonable amount of time or as required by law or regulation. If [SD Motorwerks] fails to do so, [SD Motorwerks] shall immediately repurchase said Contract for the unpaid

principal balance plus accrued but unpaid interest as of the
date of repurchase.

18.    Section 6.A. of the Agreement provides that SD Motorwerks represents
and warrants certain facts throughout the duration of the Agreement.

19.    Pursuant to Section 6.A.vi, SD Motowerks represents and warrants that
each contract it assigns to PenFed is "valid, binding and enforceable in accordance
with the terms contained therein" and that PenFed "shall have a valid first security
interest in the Collateral described in and covered by such Contract."

20.    Pursuant to Section 6.A.vii, SD Motorwerks represents and warrants
that each contract it assigns to PenFed is "genuine and has been properly executed
by the consumer."

21.    SD Motorwerks makes the following representations and warranties
pursuant to Section 6.A.xiii with respect to each contract it assigns to PenFed:

> To the best of [SD Motorwerks'] knowledge based on
> commercially reasonable due diligence, the consumer and
> all co-signers and guarantors are of legal age and
> competence to enter into contracts and possess a current
> and valid driver's license with a copy retained at the
> dealership. [SD Motorwerks] has verified that the
> consumer as shown on the Contract is the person taking
> delivery of the Collateral and that the consumer will not
> be providing the vehicle to a third party, regardless of
> whether or not that third-party is a co-signer. [SD
> Motorwerks] shall validate the identity of the consumer
> utilizing government ID's, credit bureaus or other
> necessary documents.

22.     In the event of a default or material breach of any provision in the Agreement, Section 6.D. obligates SD Motorwerks to repurchase any contracts it sold to PenFed:

> In addition to any other remedies provided in this Agreement, upon default or material breach by [SD Motorwerks] of any provision of this agreement, including but not limited to warranties, CRIF or [PenFed] shall have the option to require [SD Motorwerks] to repurchase within five (5) business days any Contract then held by any Creditor. Such repurchase shall be made by payment of the then unpaid principal balance of the Contract, together with accrued but unpaid Interest thereon. Upon receipt of full payment, the Contract and any interest in the Collateral shall be assigned to [SD Motorwerks] "as is", "where is", and "with all faults" as of the date of repurchase without any representation or warranty whatsoever as to the condition, fitness for any particular purpose, merchantability, or any other warranty, express or implied, concerning the Contract and the Collateral and without recourse of any kind against CRIF or [PenFed]. The repurchase obligation does not supersede [SD Motorwerks'] continuing obligation to indemnify and hold harmless CRIF and [PenFed] and their respective officers, directors, agents and employees as provided herein. In the event of any default by [SD Motorwerks], any amounts otherwise owed to [SD Motorwerks] may be offset against [SD Motorwerks'] obligations hereunder.

23.     In the event that SD Motorwerks' defaults or breaches any of the foregoing warranties, Section 6.C. requires SD Motorwerks' to indemnify PenFed as follows:

Upon [SD Motorwerks'] default or breach of the warranties set forth herein, [SD Motorwerks] shall indemnify and hold harmless CRIF and [PenFed] and their respective officers, directors, agents and employees from and against all damages, losses, lawsuits, claims, settlements, judgments or fines of any nature whatsoever, arising out of such default including but not limited to reasonable attorneys' fees and costs; provided, however, that CRIF and/or [PenFed] may defend themselves against all such losses and claims, in which case [SD Motorwerks] shall, within seven (7) days after written demand from CRIF and/or [PenFed], reimburse all costs and expenses, including reasonable attorneys' fees, incurred in such defense. [SD Motorwerks] need not be named in, or otherwise included in any such claim, lawsuit or enforcement action resulting from such default in order for [SD Motorwerks] indemnity obligations to arise.

<u>The Smith Contract</u>

24.    On March 26, 2022, SD Motorwerks sold a vehicle to Dale Smith pursuant to a retail installment sales contract ("the Smith Contract") with an interest rate of 3.64% per annum.

25.    SD Motorwerks assigned the Smith Contract to PenFed pursuant to the Agreement.

26.    When it assigned the Smith Contract to PenFed, SD Motorwerks executed a Title Guaranty ("the Smith Title Guaranty") that guaranteed SD Motorwerks would "file a perfected first lien security interest in the Vehicle in favor of PenFed as lienholder" within 30 days of March 28, 2022.

27.   The Smith Title Guaranty provides that SD Motorwerks will be liable to PenFed for the full amount due to PenFed under the Smith Contract if SD Motorwerks fails to perfect the lien as required.

28.   The Smith Title Guaranty also provides that "[SD Motorwerks] also agrees to be liable for all fees and costs, including attorneys fee[]s incurred by PenFed in enforcing the terms of this Guaranty."

29.   On October 27, 2022, PenFed demanded that SD Motorwerks repurchase the Smith Contract because 90 days had passed, and SD Motorwerks had not transferred title to PenFed or perfected all liens as required under Section 2.F. of the Agreement and the Smith Title Guaranty.

30.   SD Motorwerks still has not transferred title to the collateral to PenFed, perfected all liens, or repurchased the Smith Contract.

31.   The principal balance of the Smith Contract is $38,192.34.

The Okudan Contract

32.    On May 11, 2022, SD Motorwerks sold a vehicle to Jessica Okudan pursuant to a retail installment sales contract ("the Okudan Contract") with an interest rate of 8.99% per annum.

33.   SD Motorwerks assigned the Okudan Contract to PenFed pursuant to the Agreement.

34.     When it assigned the Okudan Contract to PenFed, SD Motorwerks executed a Title Guaranty ("the Okudan Title Guaranty") that guaranteed SD Motorwerks would "file a perfected first lien security interest in the Vehicle in favor of PenFed as lienholder" within 30 days of May 11, 2022.

35.     The Okudan Title Guaranty provides that SD Motorwerks will be liable to PenFed for the full amount due to PenFed under the Okudan Contract if SD Motorwerks fails to perfect the lien as required.

36.     The Okudan Title Guaranty also provides that "[SD Motorwerks] also agrees to be liable for all fees and costs, including attorneys fee[]s incurred by PenFed in enforcing the terms of this Guaranty."

37.     On October 27, 2022, PenFed demanded that SD Motorwerks repurchase the Okudan Contract because 90 days had passed, and SD Motorwerks had not filed a perfected lien in favor of PenFed as required under Section 2.F. of the Agreement and the Okudan Title Guaranty.

38.     SD Motorwerks still has not transferred title to the collateral to PenFed, perfected all liens, or repurchased the Okudan Contract.

39.     The principal balance of the Okudan Contract is $42,162.59.

### The Morris Contract

40.     On June 21, 2022, SD Motorwerks entered into a retail installment sales contract with a 4.79% interest rate with a person purporting to be Charles Morris ("the Morris Contract").

41.     SD Motorwerks assigned the Morris Contract to PenFed pursuant to the Agreement.

42.     When it assigned the Morris Contract to PenFed, SD Motorwerks executed a Title Guaranty ("the Morris Title Guaranty") that guaranteed SD Motorwerks would "file a perfected first lien security interest in the Vehicle in favor of PenFed as lienholder" within 30 days of June 22, 2022.

43.     The Morris Title Guaranty provides that SD Motorwerks will be liable to PenFed for the full amount due to PenFed under the Morris Contract if SD Motorwerks fails to perfect the lien as required.

44.     The Morris Title Guaranty also provides that "[SD Motorwerks] also agrees to be liable for all fees and costs, including attorneys fee[]s incurred by PenFed in enforcing the terms of this Guaranty."

45.     Mr. Morris informed PenFed that he did not sign the Morris Contract, did not authorize anybody to sign it on his behalf, and did not receive the collateral described in the Morris Contract, or any other collateral, from SD Motorwerks.

46.     PenFed investigated the circumstances surrounding the Morris Contract and determined that SD Motorwerks did not properly identify the consumer before delivering the vehicle described in the Morris Contract.

47.     On October 27, 2022, PenFed demanded that SD Motorwerks repurchase the Morris Contract because it had breached several of the warranties in Section 6.A. of the Agreement.

48.     SD Motorwerks has not transferred title to the collateral to PenFed, perfected all liens, or repurchased the Morris Contract.

49.     The principal balance of the Morris Contract is $57,193.09.

The Romero Contract

50.     On May 2, 2022, SD Motorwerks entered into a retail installment sales contract with a 4.49% interest rate with a person purporting to be Jesus Romero. ("the Romero Contract").

51.     SD Motorwerks assigned the Romero Contract to PenFed pursuant to the Agreement.

52.     When it assigned the Romero Contract to PenFed, SD Motorwerks executed a Title Guaranty ("the Romero Title Guaranty") that guaranteed SD Motorwerks would "file a perfected first lien security interest in the Vehicle in favor of PenFed as lienholder" within 30 days of May 2, 2022.

53.     The Romero Title Guaranty provides that SD Motorwerks will be liable to PenFed for the full amount due to PenFed under the Romero Contract if SD Motorwerks fails to perfect the lien as required.

54.     The Romero Title Guaranty also provides that "[SD Motorwerks] also agrees to be liable for all fees and costs, including attorneys fee[]s incurred by PenFed in enforcing the terms of this Guaranty."

55.     Mr. Romero informed PenFed that he did not sign the Romero Contract, did not authorize anybody to sign it on his behalf, and did not receive the collateral described in the Romero Contract, or any other collateral, from SD Motorwerks.

56.     PenFed investigated the circumstances surrounding the Romero Contract and determined that SD Motorwerks did not properly identify the consumer before delivering the vehicle described in the Romero Contract.

57.     On October 27, 2022, PenFed demanded that SD Motorwerks repurchase the Romero Contract because it had breached several of the warranties in Section 6.A. of the Agreement.

58.     SD Motorwerks has not transferred title to the collateral to PenFed, perfected all liens, or repurchased the Romero Contract.

59.     The principal balance of the Romero Contract is $91,190.66.

## COUNT I
(Breach of Contract—The Smith Contract)

60.    PenFed incorporates the allegations in paragraphs 1 through 59 of the complaint as though set forth fully herein.

61.    By failing to transfer title or perfect all liens within a reasonable amount of time after assigning the Smith Contract to PenFed, SD Motorwerks materially breached Sections 2.F. and 6.A.vi. of the Agreement and the Smith Guaranty.

62.    SD Motorwerks also materially breached Sections 2.F. and 6.D. of the Agreement by failing to immediately repurchase the Smith Contract upon demand.

63.    As a result of SD Motorwerks' material breaches of the Agreement, PenFed has suffered damages in the amount of $38,192.34, which is the principal balance of the Smith Contract, plus unpaid interest that continues to accrue.

## COUNT II
(Breach of Contract—The Okudan Contract)

64.    PenFed incorporates the allegations in paragraphs 1 through 63 of the complaint as though set forth fully herein.

65.    By failing to transfer title or perfect all liens within the required amount of time after assigning the Okudan Contract to PenFed, SD Motorwerks materially breached Sections 2.F. and 6.A.vi. of the Agreement and the Okudan Title Guaranty.

66.     SD Motorwerks also materially breached Sections 2.F. and 6.D. of the Agreement by failing to immediately repurchase the Okudan Contract upon demand.

67.     As a result of SD Motorwerks' material breaches of the Agreement, PenFed has suffered damages in the amount of $42,162.59, which is the principal balance of the Okudan Contract, plus unpaid interest that continues to accrue.

## COUNT III
(Breach of Contract—The Morris Contract)

68.     PenFed incorporates the allegations in paragraphs 1 through 67 of the complaint as though set forth fully herein.

69.     SD Motorwerks materially breached the warranties in sub-sections vi, vii, and xiii, of Section 6.A. of the Agreement when it assigned the Morris Contract to PenFed because the Morris Contract was not executed by Mr. Morris, and, therefore, is not valid, binding, or enforceable against him, and because SD Motorwerks did not verify the identity of the person to whom it delivered the collateral.

70.     SD Motorwerks also materially breached Section 6.D. of the Agreement by failing to repurchase the Morris Contract within five business days of PenFed's demand.

14

71.     By failing to transfer title or perfect all liens within the required amount of time after assigning the Morris Contract to PenFed, SD Motorwerks materially breached Sections 2.F. and 6.A.vi. of the Agreement and the Morris Title Guaranty.

72.     SD Motorwerks also materially breached Sections 2.F. and 6.D. of the Agreement by failing to immediately repurchase the Morris Contract upon demand after failing to transfer title or perfect all liens within the required amount of time.

73.     As a result of SD Motorwerks' material breaches of the Agreement and the Morris Title Guaranty, PenFed has suffered damages in the amount of $57,193.09, which is the principal balance of the Morris Contract, plus unpaid interest that continues to accrue.

## COUNT IV
(Breach of Contract—The Romero Contract)

74.     PenFed incorporates the allegations in paragraphs 1 through 73 of the complaint as though set forth fully herein.

75.     SD Motorwerks materially breached the warranties in sub-sections vi, vii, and xiii, of Section 6.A. of the Agreement when it assigned the Romero Contract to PenFed because the Romero Contract was not executed by Mr. Romero, and, therefore, is not valid, binding, or enforceable against Mr. Romero, and because SD Motorwerks did not verify the identity of the person to whom it delivered the collateral.

76.     SD Motorwerks also materially breached Section 6.D. of the Agreement by failing to repurchase the Romero Contract within five business days of PenFed's demand.

77.     By failing to transfer title or perfect all liens within the required amount of time after assigning the Romero Contract to PenFed, SD Motorwerks materially breached Sections 2.F. and 6.A.vi. of the Agreement and the Romero Title Guaranty.

78.     SD Motorwerks also materially breached Sections 2.F. and 6.D. of the Agreement by failing to immediately repurchase the Romero Contract upon demand after failing to transfer title or perfect all liens within the required amount of time.

78.     As a result of SD Motorwerks' material breaches of the Agreement and the Romero Title Guaranty, PenFed has suffered damages in the amount of $57,193.09, which is the principal balance of the Romero Contract, plus unpaid interest that continues to accrue.

**COUNT V**
(Attorney's Fees)

79.     PenFed incorporates the allegations in paragraphs 1 through 78 of the complaint as though set forth fully herein.

80.     Section 6.C. requires SD Motorwerks to indemnify and hold harmless PenFed against all attorneys' fees incurred as a result of SD Motorwerks' breaches of the warranties set forth in the Agreement.

81.     In addition, the Smith Title Guaranty, the Okudan Title Guaranty, the Morris Title Guaranty, and the Romero Title Guaranty provide that SD Motorwerks is liable for costs and attorneys' fees PenFed must incur in order to enforce the title guaranties.

82.     PenFed is therefore entitled to recover attorneys' fees from SD Motorwerks.

WHEREFORE, PenFed respectfully requests that the Court enter judgment in its favor in the following amounts:

a.      With respect to Count I, $38,192.34 plus prejudgment interest in the amount of 3.64% per annum from March 26, 2022, until the date of the judgment;

b.      With respect to Count II, $42,162.59 plus prejudgment interest in the amount of 8.99% per annum from May 11, 2022, until the date of the judgment;

c.      With respect to Count III, $57,193.09 plus prejudgment interest in the amount of 4.79% per annum from June 22, 2022, until the date of the judgment;

d.      With respect to Count IV, $91,190.66 plus prejudgment interest in the amount of 4.49% per annum from May 3, 2022, until the date of the judgment;

e.      Post-judgment interest; and

f.      The amount of reasonable costs and attorneys' fees incurred by PenFed in connection with this action.

Dated: April 24, 2023.

**PENTAGON FEDERAL CREDIT UNION**

*/s/ Jennifer T. McLean*

_____

C. DAVID HAILEY
Georgia State Bar No. 317195
JENNIFER T. MCLEAN
Georgia State Bar No. 703991

MOZLEY, FINLAYSON & LOGGINS, LLP
1050 Crown Pointe Parkway, Suite 1500
Atlanta, Georgia 30338-7704
Telephone: (404) 256-0700
Facsimile: (404) 250-9355
dhailey@mflallaw.com
jmclean@mfllaw.com

Michael A. Graziano (*pro hac vice* anticipated)
D.C. Bar Number is 984534
Virginia Bar No. 74938
ECKERT SEAMANS CHERIN & MELLOTT, LLC 1717 Pennsylvania Avenue, NW, Suite 1200
Washington, D.C.  20006
Telephone: (202) 659-6671
Facsimile: (202) 659-6699
mgraziano@eckertseamans.com

*Counsel for Pentagon Federal Credit Union*