Fulton County Superior Court
***EFILED***TTM
Date: 3/28/2023 8:00 PM
Cathelene Robinson, Clerk

# IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

Adeyemo Aromolaran,

        Plaintiff(s),

vs.

Case No.: 2023CV377321

The Bank of New York Mellon, F/K/A The Bank of New York, Successor to JPMorgan Chase Bank N.A., as Indenture Trustee, on Behalf of the Holders of the Terwin Mortgage Trust 2006-HFR, Asset-Backed Security, Series 2006-HF1, Specialized Loan Servicing LLC and Realistry Acquisitions, LLC,

        Defendant(s).

_____/

## AFFIDAVIT OF SERVICE

Personally appeared before me the undersigned officer duly authorized to administer oaths, Mitchell Davidson, who, after being duly sworn, deposes and states the following:

1.

Affiant states that he/she is appointed by this Court to serve process. The statements made are true and correct and are based upon my personal knowledge.

2.

I served Specialized Loan Servicing LLC with a Summons, General Civil and Domestic Relations Case Filing Information Form, Complaint for Wrongful Foreclosure, Temporary Restraining Order, and Interlocutory Injunction, Verification, Exhibits A - D, and Certification by leaving the documents with Pamela Jordan, agent at United Agent Group Inc., Registered Agent of Specialized Loan Servicing LLC at said person's place of employment/place of business located at 2985 Gordy Parkway, 1st Floor, Marietta, GA 30066 on March 24, 2023 at 1:00 PM.

Signed and sworn to before me on this 27 day of March , 20 23 by an affiant who is personally known to me or produced identification.

_____
Notary Public

**Mitchell Davidson**
Express Legal Services LLC
860 Johnson Ferry Rd.
Atlanta, GA 30342
(678) 648-6330

JOYCE PATE WHEELER
MY COMMISSION EXPIRES
NOTARY PUBLIC
BARTOW COUNTY, GEORGIA
FEBRUARY 04, 2026

*5146198*

Fulton County Superior Court
***EFILED***TTM
Date: 3/28/2023 8:00 PM
Cathelene Robinson, Clerk

# IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

**Adeyemo Aromolaran,**

         Plaintiff(s),

vs.

**The Bank of New York Mellon, F/K/A The Bank of New York, Successor to JPMorgan Chase Bank N.A., as Indenture Trustee, on Behalf of the Holders of the Terwin Mortgage Trust 2006-HFR, Asset-Backed Security, Series 2006-HF1, Specialized Loan Servicing LLC and Realistry Acquisitions, LLC,**

         Defendant(s).

_____/

**Case No.: 2023CV377321**

## AFFIDAVIT OF SERVICE

    Personally appeared before me the undersigned officer duly authorized to administer oaths, Danny Davidson, who, after being duly sworn, deposes and states the following:

<div align="center">1.</div>

    Affiant states that he/she is appointed by this Court to serve process. The statements made are true and correct and are based upon my personal knowledge.

<div align="center">2.</div>

    I served Realistry Acquisitions, LLC with a Summons, General Civil and Domestic Relations Case Filing Information Form, Complaint for Wrongful Foreclosure, Temporary Restraining Order, and Interlocutory Injunction, Verification, Exhibits A - D, and Certification by leaving the documents with Collins Brown, Registered Agent of Realistry Acquisitions, LLC at said person's place of employment/place of business located at 1105 W. Peachtree Street, NE, Suite 1000, Atlanta, GA 30309 on March 27, 2023 at 11:32 AM.

Description of person process was left with:

Sex: Male - Ethnicity: White - Hair: Brown - Age: 30-40 - Height: 5ft 08in - Weight: 180 lbs
Other: Glasses

Signed and sworn to before me on
this 28 day of March, 2023
by an affiant who is personally known to me
or produced identification.



**Danny Davidson**
Express Legal Services LLC
860 Johnson Ferry Rd.
Atlanta, GA 30342
(678) 648-6330



Notary Public





*5146199*

Fulton County Superior Court
***EFILED***TTM
Date: 3/28/2023 8:00 PM
Cathelene Robinson, Clerk

# IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

**Adeyemo Aromolaran,**

      Plaintiff(s),

vs.

**The Bank of New York Mellon, F/K/A The Bank of New York, Successor to JPMorgan Chase Bank N.A., as Indenture Trustee, on Behalf of the Holders of the Terwin Mortgage Trust 2006-HFR, Asset-Backed Security, Series 2006-HF1, Specialized Loan Servicing LLC and Realistry Acquisitions, LLC,**

      Defendant(s).

**Case No.: 2023CV377321**

---

## AFFIDAVIT OF SERVICE

Personally appeared before me the undersigned officer duly authorized to administer oaths, Rodney McClellan, who, after being duly sworn, deposes and states the following:

1.

Affiant states that he/she is appointed by this Court to serve process. The statements made are true and correct and are based upon my personal knowledge.

2.

I served The Bank of New York Mellon, f/k/a The Bank of New York, Successor to JPMorgan Chase Bank N.A., as Indenture Trustee, On Behalf of the Holders of the Terwin Mortgage Trust 2006-HF1, Asset-Backed Securities, Series 2006-HF1 with a Summons, General Civil and Domestic Relations Case Filing Information Form, Complaint for Wrongful Foreclosure, Temporary Restraining Order, and Interlocutory Injunction, Verification, Exhibits A - D, and Certification by leaving the documents with Jane Richardson, agent at CT Corporation System, Registered Agent of The Bank of New York Mellon, f/k/a The Bank of New York, Successor to JPMorgan Chase Bank N.A., as Indenture Trustee, On Behalf of the Holders of the Terwin Mortgage Trust 2006-HF1, Asset-Backed Securities, Series 2006-HF1 at said person's place of employment/place of business located at 289 S. Culver St., Lawrenceville, GA 30046 on March 23, 2023 at 2:21 PM.

Signed and sworn to before me on
this **24** day of **March**, 20**23**
by an affiant who is personally known to me
or produced identification.

_____
Notary Public

**Rodney McClellan**
Express Legal Services LLC
860 Johnson Ferry Rd.
Atlanta, GA 30342
(678) 648-6330







*5146197*

Fulton County Superior Court
***EFILED***TV
Date: 3/13/2023 12:00 AM
Cathelene Robinson, Clerk

**General Civil and Domestic Relations Case Filing Information Form**

☒ Superior or ☐ State Court of ____FULTON_____ County

| For Clerk Use Only | | |
|---|---|---|
| Date Filed ___3/13/2023_____ | Case Number | 2023CV377321 |
| **MM-DD-YYYY** | | |

**Plaintiff(s)**
AROMOLARA ADEYEMO

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|
| | | | | |
| Last | First | Middle I. | Suffix | Prefix |
| | | | | |
| Last | First | Middle I. | Suffix | Prefix |
| | | | | |
| Last | First | Middle I. | Suffix | Prefix |

**Defendant(s)**
SEE ATTACH

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|
| | | | | |
| Last | First | Middle I. | Suffix | Prefix |
| | | | | |
| Last | First | Middle I. | Suffix | Prefix |
| | | | | |
| Last | First | Middle I. | Suffix | Prefix |

**Plaintiff's Attorney** TIMOTHY W. BAILEY   **State Bar Number** 032275   **Self-Represented** ☐

**Check one case type and one sub-type in the same box (if a sub-type applies):**

**General Civil Cases**
- ☐ Automobile Tort
- ☐ Civil Appeal
- ☐ Contempt/Modification/Other Post-Judgment
- ☐ Contract
- ☐ Garnishment
- ☐ General Tort
- ☐ Habeas Corpus
- ☐ Injunction/Mandamus/Other Writ
- ☐ Landlord/Tenant
- ☐ Medical Malpractice Tort
- ☐ Product Liability Tort
- ☒ Real Property
- ☐ Restraining Petition
- ☐ Other General Civil

**Domestic Relations Cases**
- ☐ Adoption
- ☐ Contempt
  - ☐ Non-payment of child support, medical support, or alimony
- ☐ Dissolution/Divorce/Separate Maintenance/Alimony
- ☐ Family Violence Petition
- ☐ Modification
  - ☐ Custody/Parenting Time/Visitation
- ☐ Paternity/Legitimation
- ☐ Support – IV-D
- ☐ Support – Private (non-IV-D)
- ☐ Other Domestic Relations

☐ Check if the action is related to another action pending or previously pending in this court involving some or all of the same: parties, subject matter, or factual issues. If so, provide a case number for each.

_____          _____
**Case Number**                    **Case Number**

☒ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in OCGA § 9-11-7.1.

☐ Is a foreign language or sign-language interpreter needed in this case? If so, provide the language(s) required.

_____
**Language(s) Required**

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

Defendants

1.      The Bank of New York Mellon, f/k/a The Bank of New York, Successor to JPMorgan Chase Bank N.A., as Indenture Trustee, On Behalf of the Holders of the Terwin Mortgage Trust 2006-HF1, Asset-Backed Securities, Series 2006-HF1

2.      Specialized Loan Servicing LLC

3.      Realistry Acquisitions, LLC

Fulton County Superior Court
***EFILED***TV
Date: 3/13/2023 12:00 AM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
### STATE OF GEORGIA

ADEYEMO AROMOLARAN,                    )
                                       )
      **Plaintiff,**                 )
                                       )
vs.                                    )   Case No.: _____
                                       )   2023CV377321
THE BANK OF NEW YORK MELLON,           )
                                       )
F/K/A THE BANK OF NEW YORK,            )
                                       )
SUCCESSOR TO JPMORGAN CHASE            )
                                       )
BANK N.A., AS INDENTURE TRUSTEE,       )
                                       )
ON BEHALF OF THE HOLDERS OF THE        )
                                       )
TERWIN MORTGAGE TRUST 2006-HF1,        )
                                       )
ASSET-BACKED SECURITIES, SERIES        )
                                       )
2006-HF1, SPECIALIZED LOAN             )
                                       )
SERVICING LLC AND REALISTRY            )
                                       )
ACQUISITIONS, LLC,                     )
                                       )
      **Defendants**                 )

## CERTIFICATION

The undersigned hereby certifies to the Court that he is the attorney for the Plaintiff in the above-styled action and that this Certification is given pursuant to O.C.G.A. §9-11-65(b).  The attorney further certifies that the following efforts were made to give Defendants notice of this Complaint for Wrongful Foreclosure, Temporary Restraining Order and Interlocutory Injunction:

1.     On March 9, 2023 the undersigned called Collins Brown, Registered Agent for Realistry Acquisitions, LLC at his law firm and left a voice-message. On March 10,

Page - 1

The Bailey Firm, LLC
506 Roswell Street
Building 200, Suite 230
Marietta, GA 30060
770-293-1214
Facsimile 770-293-1216
tim@baileyfirmllc.net

2023 the undersigned spoke with Daniel Greene, attorney for Realistry Acquisitions, LLC and advised him that Plaintiff would be filing this Complaint for Temporary Restraining Order.

2. On March 9, 2023 the undersigned called Defendant Specialized Loan Servicing LLC at the phone number on their website and spoke with "Gabby." The undersigned explained the reason for the call, but "Gabby" refused to provide the name of its Registered Agent.

3. On March 9, 2023 the undersigned called McCalla Raymer Leibert Pierce, LLC at the main phone number and left a voice-message for Foreclosure Team 7. No one responded. On March 10, 2023 in the morning the undersigned called McCalla Raymer Leibert Pierce, LLC and spoke with the receptionist who advised the undersigned that Kimberly Wright was in charge of the file. The undersigned left a voice message. Later, at approximately 3:00 p.m. of the same day the undersigned called McCalla Raymer Leibert Pierce, LLC again and asked the receptionist for Kimberly Wright. The receptionist advised the undersigned that Ms. Wright was gone for the day and would return Monday morning, and that no one else in the firm could speak with the undersigned about the file. The undersigned emailed Ms. Wright on March 10, 2023 advising her of the Complaint for Wrongful Foreclosure, Temporary Restraining Order and Interlocutory Injunction to be filed.

The Bailey Firm, LLC
506 Roswell Street
Building 200, Suite 230
Marietta, GA 30060
770-293-1214
Facsimile 770-293-1216
tim@baileyfirmllc.net

This *12* day of March, 2023.

Timothy W. Bailey, Esq.
GA Bar No. 032275
Attorney for Plaintiff

The Bailey Firm, LLC
506 Roswell Street
Suite 230
Marietta, GA 30060
T:  770-293-1214
F:  770-293-1216
tim@baileyfirmllc.net

The Bailey Firm, LLC
506 Roswell Street
Building 200, Suite 230
Marietta, GA 30060
770-293-1214
Facsimile 770-293-1216
tim@baileyfirmllc.net

Defendants

1.   The Bank of New York Mellon, f/k/a The Bank of New York, Successor to JPMorgan Chase Bank N.A., as Indenture Trustee, On Behalf of the Holders of the Terwin Mortgage Trust 2006-HF1, Asset-Backed Securities, Series 2006-HF1

2.   Specialized Loan Servicing LLC

3.   Realistry Acquisitions, LLC

Fulton County Superior Court
***EFILED***TV
Date: 3/13/2023 12:00 AM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| ADEYEMO AROMOLARAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Case No.: _____ |
| | ) |
| THE BANK OF NEW YORK MELLON, | ) |
| | ) |
| F/K/A THE BANK OF NEW YORK, | ) |
| | ) |
| SUCCESSOR TO JPMORGAN CHASE | ) |
| | ) |
| BANK N.A., AS INDENTURE TRUSTEE, | ) |
| | ) |
| ON BEHALF OF THE HOLDERS OF THE | ) |
| | ) |
| TERWIN MORTGAGE TRUST 2006-HF1, | ) |
| | ) |
| ASSET-BACKED SECURITIES, SERIES | ) |
| | ) |
| 2006-HF1, SPECIALIZED LOAN | ) |
| | ) |
| SERVICING LLC AND REALISTRY | ) |
| | ) |
| ACQUISITIONS, LLC, | ) |
| | ) |
| Defendants | ) |

Case No.: 2023CV377321

## COMPLAINT FOR WRONGFUL FORECLOSURE, TEMPORARY RESTRAINING ORDER, AND INTERLOCUTORY INJUNCTION

Comes now Plaintiff and files this Complaint for Wrongful Foreclosure, Temporary

Restraining Order and Interlocutory Injunction and shows this Court as follows:

1.

Defendant The Bank of New York Mellon, f/k/a The Bank of New York, Successor to

JPMorgan Chase Bank N.A., as Indenture Trustee, On Behalf of the Holders of the Terwin Mortgage

Trust 2006-HF1, Asset-Backed Securities, Series 2006-HF1 ("Defendant Bank of New York") is a

Page - 1

The Bailey Firm, LLC
506 Roswell Street
Building 200, Suite 230
Marietta, GA 30060
770-293-1214
Facsimile 770-293-1216
tim@baileyfirmllc.net

national banking association and may be served through its legal counsel McCalla Raymer Leibert Pierce, LLC at 1544 Old Alabama Road, Roswell, Georgia 30076, and is subject to the jurisdiction and venue of this Court.

2.

Defendant Specialized Loan Servicing LLC ("Defendant Specialized") is a Delaware limited liability company and may be served through its Registered Agent United Agent Group Inc., 2985 Gordy Parkway, 1st Floor, Marietta, Georgia 30066, Cobb County, Georgia and is subject to the jurisdiction and venue of this Court.

3.

Defendant Realistry Acquisitions, LLC ("Defendant Realistry") is a Georgia limited liability company and may be served through its Registered Agent Collins Brown, 1105 W. Peachtree Street, NE, Suite 1000, Atlanta, Georgia 30309, Fulton County, Georgia and is subject to the jurisdiction and venue of this Court.

4.

Defendants are subject to the jurisdiction of this Court, and venue is proper in Fulton County.

5.

Plaintiff owns real property in Gwinnett County, Georgia commonly known as 3491 Glen Summit Lane, Snellville, Georgia 30039, as more particularly described as follows:

All that tract or parcel of land lying and being in Land Lots 320 and 336 of the 4th District of Gwinnett County, Georgia, being Lot 51, Block A, Glen Ridge Subdivision, Unit One, as per plat thereof recorded in Plat book 85, Page 200, Gwinnett County, Georgia records, which plat is incorporated herein by reference (the "Property").

The Bailey Firm, LLC
506 Roswell Street
Building 200, Suite 230
Marietta, GA 30060
770-293-1214
Facsimile 770-293-1216
tim@baileyfirmllc.net

6.

Plaintiff obtained title to the Property by Warranty Deed dated July 31, 2001 and recorded in Deed Book 24208, Page 48, Gwinnett County, Georgia records.

7.

Plaintiff $125,600.00 from Argent Mortgage Company, LLC and to secure said loan Plaintiff conveyed the Property to Argent Mortgage Company, LLC by Security Deed dated August 22, 2005, and recorded in Deed Book 44178, Page 52, Gwinnett County, Georgia records, as subsequently assigned to Mortgage Electronic Registration Systems, Inc. ('MERS'), a Delaware Corporation, its successors or assigns, as Nominee for JPMorgan Chase Bank, National Association, by Assignment of Mortgage/Deed dated December 12, 2008 and record in Deed Book 49234, Page 74, Gwinnett County, Georgia records, as subsequently assigned to JPMC Specialty Mortgage LLC by Assignment of Security Deed dated September 26, 2011 and record in Deed Book 50906, Page 211, Gwinnett County, Georgia records (the "$125,600.00 Security Deed"). JPMC Specialty Mortgage LLC cancelled the $125,600.00 Security Deed by Cancellation of Security Deed dated March 6, 2020, and recorded in Deed Book 57317, Page 92. True and correct copies of the $125,600.00 Security Deed, assignments and cancellation are attached hereto as Exhibit "A."

8.

Plaintiff borrowed $31,400.00 from Argent Mortgage Company, LLC and to secure said loan Plaintiff conveyed the Property to Argent Mortgage Company, LLC by Security Deed dated August 22, 2005, and recorded in Deed Book 44178, Page 72, Gwinnett County, Georgia records (the "$31,400.00 Security Deed").  A true and correct copy of the $31,400.00 Security Deed is

Page - 3

The Bailey Firm, LLC
506 Roswell Street
Building 200, Suite 230
Marietta, GA 30060
770-293-1214
Facsimile 770-293-1216
tim@baileyfirmllc.net

attached hereto as Exhibit "B." There is no assignment or cancellation of the $31,400.00 Security

Deed recorded in the Gwinnett County, Georgia records.

## **WRONGFUL FORECLOSURE**

9.

Plaintiff hereby re-alleges and incorporates each and every paragraph herein.

10.

McCalla Raymer Leibert Pierce, LLC (the "Foreclosing Attorney") sent Plaintiff a letter

dated October 31, 2022 (the "Foreclosure Letter") falsely claiming that Defendant Bank of New

York held the $31,400.00 Security Deed and Defendant Specialized was the servicer for the loan

associated with it. A true and correct copy of the Foreclosure Letter is attached hereto as Exhibit

"C." The Foreclosure Letter further stated Defendant Bank of New York would foreclose on the

Property on the first Tuesday in December, 2022 (December 6, 2022) (the "Foreclosure Sale").

11.

The Foreclosure Letter further stated that Defendant Specialized was the entity having full

authority to negotiate, amend and modify the $31,400.00 Security Deed. In reliance upon this

representation, Plaintiff contact Defendant Specialized on at least three occasions. Each time

representatives of Defendant Specialized refused to communicate with Plaintiff.

12.

On December 6, 2022, representatives of Auction.com, apparently acting on behalf of the

Foreclosing Attorney, Defendant Bank of New York and Defendant Specialized, conducted the

Foreclosure Sale of the Property. The Property was originally purchased by a third party at this sale,

but said party withdrew its bid, and the "on-line" bid of Defendant Realistry was accepted.

The Bailey Firm, LLC
506 Roswell Street
Building 200, Suite 230
Marietta, GA 30060
770-293-1214
Facsimile 770-293-1216
timid.baileyfirmllc.net

13.

A Deed Under Power was executed by Defendant Specialized, as attorney-in-fact for Defendant Bank of New York, as attorney-in-fact for Plaintiff in favor of Defendant Realistry, dated February 16, 2023 and recorded in Deed Book 60456, Page 311, Gwinnett County, Georgia records (the "Deed Under Power"). A true and correct copy of the Deed Under Power is attached hereto as Exhibit "D."

14.

Defendant Bank of New York initiated the Foreclosure Sale and Deed Under Power ostensibly due to Plaintiff's default under the $31,400.00 Security Deed. However, Defendant Bank of New York has never held the $31,400.00 Security Deed because it was never assigned to Defendant Bank of New York.

15.

Not being the owner of the $31,400.00 Security Deed, Defendant Bank of New York did not have the power to foreclose on the Property.

16.

O.C.G.A. §44-14-62 provides "The security instrument or assignment thereof vesting the secured creditor with title to the security instrument shall be filed prior to the time of sale in the office of the clerk of the superior court of the county in which the real property is located." *See also In Re: Cummings,* 173 B.R. 959, 963 (Bankr. N.D. Ga. 1994) ("Common sense suggests that an assignee of a note and security deed cannot foreclose upon the security until there has been an actual assignment. Since Anderson had no assignment of the Fleet note and security deed, his foreclosure of the subject property is null and void.").

Page - 5

The Bailey Firm, LLC
506 Roswell Street
Building 200, Suite 230
Marietta, GA 30060
770-293-1214
Facsimile 770-293-1216
tim@baileyfirmllc.net

17.

The Foreclosure Sale and Deed Under Power should be deemed null and void.

18.

The Foreclosure Sale constituted a wrongful foreclosure of Plaintiff's Property.

19.

A Notice of Lis Pendens is being filed contemporaneously with this Complaint.

WHEREFORE Plaintiff hereby prays for the following relief:

a.  that process issue and be served upon Defendants in accordance with law;

b.  that Plaintiff have a judgment against Defendants compelling the foreclosure reversal;

c.  that Plaintiff have a judgment decreeing the Foreclosure Sale null and void, the Deed Under Power null and void and that title to the Property vests in Plaintiff;

d.  that Plaintiff recover its reasonable attorney fees and expenses of litigation pursuant to O.C.G.A. § 13-6-11; and

e.  such other relief as is just and equitable under the circumstances.

## TEMPORARY RESTRAINING ORDER

20.

Plaintiff hereby re-alleges and incorporates each and every paragraph herein.

21.

OC.G.A. §9-5-1 provides "Equity, by a writ of injunction, may restrain proceedings in another or the same court...."

Page - 6

The Bailey Firm, LLC
506 Roswell Street
Building 200, Suite 230
Marietta, GA 30060
770-293-1214
Facsimile 770-293-1216
r.m@baileyfirmllc.net

22.

Defendant Realistry filed a Dispossessory Action again Plaintiff in the Gwinnett County, Magistrate Court, on December 28, 2022 (the "Dispossessory Action"), seeking to evict Plaintiff from the Property. The Dispossessory Action came on for trial on January 25, 2023, but Defendant Realistry did not appear and it was dismissed. Defendant Realistry filed a Motion to Vacate Dismissal and Reinstate Case (sic). Said Motion is to be heard Wednesday, March 15, 2023, and if granted the parties are to move forward with trial.

23.

If the Dispossessory Action moves forward, Plaintiff will be unable to present evidence that the Foreclosure Sale is invalid and the Deed Under Power void, because under Georgia law title is not a relevant issue in a dispossessory action.

24.

Therefore, despite the wealth of evidence described herein (and more), Plaintiff is at risk of losing the Property, while this very case is pending and even though he may win the day in the end.

25.

Therefore, Plaintiff requests that this Court enjoin the Dispossessory Action from proceeding until this Wrongful Foreclosure action is concluded, because only then will the parties know who is the actual owner of the Property.

26.

If the Dispossessory Action is allowed to proceed, Plaintiff may lose his Property and the equity therein, not because he does not have a valid defense, but because of the interplay of Georgia laws. Plaintiff is without a way to protect himself. Therefore, Plaintiff would be greatly prejudiced.

The Bailey Firm, LLC
506 Roswell Street
Building 200, Suite 230
Marietta, GA 30060
770-293-1214
Facsimile 770-293-1216
tim@baileyfirmllc.net

27.

Any prejudice to Defendant Realistry by staying the Dispossessory Action would be minimal because if Defendant Realistry prevails the delay would only be for a short time, and because Defendant is more than protected by the significant equity in the Property.

28.

Pursuant to O.C.G.A. § 9-11-65, this Court should grant immediate injunctive relief to preserve the status quo by staying the Dispossessory Action. Failure to grant a temporary restraining order will cause Plaintiff to suffer substantial hardship as well as that of third parties. "The purpose for granting interlocutory injunctions is to preserve the status quo, as well as balance the conveniences of the parties, pending a final adjudication of the case." *Wright v. Atlanta Dwellings, Inc.*, 272 Ga. 231,233 (2000) (quoting *Benton v. Patel*, 257 Ga, 669, 672 (1987). "Trial courts enjoy broad discretion in deciding whether an interlocutory injunction should be imposed, though the power to do so shall be prudently and cautiously exercised.... The trial court's exercise of its discretion will not be disturbed by an appellate court unless a manifest abuse of that discretion is shown or unless there was no evidence on which to base the ruling." *Bernochi v. Forucci, 279 Ga. 460, 461 (2005)*. "A trial court may issue an interlocutory injunction to maintain the status quo until the final hearing if, by balancing the relative conveniences of the parties, it determines that they favor the party seeking the injunction." *Ayer v. Norfolk Timber Inv., LLC*, 291 Ga. App. 409, 410 (2008) (quoting *Hampton Island Founders v. Liberty Capital, 283 Ga. 289, 293 (2008));* *See Hampton Island Founders v. Liberty Capital, 283 Ga. 289, 293* (stating that the purpose of an interlocutory injunction is "to maintain the status quo pending a final adjudication om the merits of the case").

Page - 8

The Bailey Firm, LLC
506 Roswell Street
Building 200, Suite 230
Marietta, GA 30060
770-293-1214
Facsimile 770-293-1216
tim(a baileyfirmllc.net

29.

Among the factors a trial court can consider are whether: (1) there is a substantial threat that the moving party will suffer irreparable injury if the injunction is not granted; (2) the threatened injury to the moving party outweighs the threatened harm that the injunction may do to the party being enjoined; (3) there is a substantial likelihood that the moving party will prevail on the merits of its claims at trial; and (4) granting the interlocutory injunction will not not disserve the public interest. *SRB Investment Services, LLLP v. Branch Banking and Trust Co.*, 289 Ga. 1, 5 (2011). Stated otherwise, an interlocutory injunction is a "device to keep the parties in order to prevent one from hurting the other whilst their respective rights are under adjudication." *Grossi Consulting, LLC v. Sterling Currency Group, LLC*, 290 Ga. 386, 388 (2012) (citing *Price v. Empire Land Co.*, 218 Ga. 80, 85 (1962).

30.

As shown from the facts recited herein, unless the Dispossessory Action is immediately enjoined, Plaintiff will suffer immediate and irreparable injury in that Plaintiff will be evicted from the Property.

31.

Attached hereto is the certificate of Plaintiff's attorney showing efforts to give notice and reasons why notice should not be required.

The Bailey Firm, LLC
506 Roswell Street
Building 200, Suite 230
Marietta, GA 30060
770-293-1214
Facsimile 770-293-1216
tim@baileyfirmllc.net

**WHEREFORE**, Plaintiff prays for the following:

a) That the Court issue a temporary restraining order staying the Dispossessory Action;

b) That the Court set down at the earliest possible time a hearing on an interlocutory injunction in this case;

c) That upon said hearing in this case, the Court issue an interlocutory injunction staying the Dispossessory Action until the conclusion of this wrongful foreclosure action;

d) That upon a final hearing in this case, said interlocutory injunction be made permanent; and

e) Such other and further relief as this Court deems just and equitable.

Timothy W. Bailey, Esq.
GA Bar No. 032275
Attorney for Plaintiff

The Bailey Firm, LLC
506 Roswell Street
Suite 230
Marietta, GA 30060
T:  770-293-1214
F:  770-293-1216
tim@baileyfirmllc.net

The Bailey Firm, LLC
506 Roswell Street
Building 200, Suite 230
Marietta, GA 30060
770-293-1214
Facsimile 770-293-1216
tim@baileyfirmllc.net

STATE OF _GEORGIA_
COUNTY OF _FAYETTE_

VERIFICATION

Personally appeared before me an officer duly authorized to administer oaths came Adeyemo Aromolaran who states under oath that while the language and choice of words is that of Plaintiff's attorney and not necessarily his own, the facts set forth in the Complaint for Wrongful Foreclosure, Temporary Restraining Order and Interlocutory Injunction are true and correct.

_____
Adeyemo Aromolaran

Sworn to and subscribed
before me this _11_ day of March, 2023

_____
Notary Public

GHULAM M. GULAMALI
NOTARY PUBLIC
GWINNETT COUNTY
STATE OF GEORGIA
Commission # W-00569854
My Comm. Expires Aug. 10, 2026

BK 4 4 1 7 8 PG 0 0 5 2

Return To:

Argent Mortgage Company, LLC
P.O. Box 5047
Rolling Meadows, IL 60008

05 AUG 29 PM 2: 00

TOM LAWLER, CLERK

Prepared By:Argent Mortgage Company, LLC

Nations Title Agency of Georgia, Inc
Likens & Blomquist P A
125 TownPark Drive, Ste 200
Kennesaw GA 30144
05GA07053

Jared Hartwell
44 South Broadway, 16th
Flr White Plains, NY 10604

---

[Space Above This Line For Recording Data]

## SECURITY DEED

GEORGIA INTANGIBLE TAX PAID

$ 378.00

TOM LAWLER
SUPERIOR COURT GWINNETT
COUNTY, GEORGIA

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated August 22, 2005
together with all Riders to this document.
(B) "Borrower" is ADEYEMO AROMOLARAN

Borrower is the grantor under this Security Instrument.
(C) "Lender" is Argent Mortgage Company, LLC

Lender is a Limited Liability Company
organized and existing under the laws of Delaware

0082680497 -9607

GEORGIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                Form 3011  1/01

-6(GA) (0005)

Page 1 of 15                    08/22/2005 7:16:46

VMP MORTGAGE FORMS  (800)521-7291

140768-69

d06-01g1 (05/2005)Rev 01

48

EXHIBIT
A

GSCCCA org - Image Index
44178 ·
00053

BK44176PG0053

Lender is the grantee under this Security Instrument

(D) "Note" means the promissory note signed by Borrower and dated August 22, 2005
The Note states that Borrower owes Lender one hundred twenty-five thousand six
hundred and 00/100                                                                    Dollars
(U.S. $125,600.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than September 1, 2035
(E) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower The following
Riders are to be executed by Borrower [check box as applicable].

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(K) "Escrow Items" means those items that are described in Section 3
(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq ) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter  As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA

0082608497-9607

6(GA) (0006)                Page 2 of 15      XXXXXXXX    08/22/2005 7 16 46      Form 3011  1/01

866-02ga (05/2005)Rev 01

GSCCCA.org - Image Index
44178
00054

BK44178PG0054

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in the
County                          of                          GWINNETT                  :
      [Type of Recording Jurisdiction]              [Name of Recording Jurisdiction]
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF:

Parcel ID Number: 4-320-208                          which currently has the address of
3491 GLEN SUMMIT LANE                                                  [Street]
Snellville                                  [City] , Georgia  30039           [Zip Code]
("Property Address"):

      TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."
      BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
      THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.
      UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
      1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

0082680407-9607
      initials AK
-6(GA) (0008)          Page 3 of 15          08/22/2005 7 16 46   Form 3011 1/01

d06-03fs3 (05/2005)Rev 01

BK 4 4 1 7 8 PG 0 0 5 5

currency  However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15 Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current  If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower  If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, unt l the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay to Lender Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

0082688497 - 9607
08/22/2005 7:16 46   Form 3011  1/01

-6(GA) :0005)          Page 4 of 15

d0644(a /05/31/05) Rev 01

GSCCCA.org - Image Index
44178
00056

BK 4 4 1 7 8 PG 0 0 5 6

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded, or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

0082688497 -9607

-6(GA) 9904 04        Page 5 of 15        06/22/2005 7 16:46        Form 3011 3/99

GSCCCA.org - Image Index
44178
00057

BK 4 4 1 7 8 PG 0 0 5 7

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

0082680497 - 9607

-6(GA) (0005).                    Page 6 of 15          08/22/2005 7:16:46      Form 3011   1/01

d06-06ga (05/2005)Rev. 01

GSCCCA.org - Image Index
44178
00058

BK44178PG0058

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying

0082600497 - 9607
Initials
-6(GA) (0005)        Page 7 of 15        08/22/2005 7 16:46        Form 3011  1/01

d0e 07ga (05/2005)Rev 01

BK 4 4 I 7 8 PG 0 0 5 9

reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

0082680497 - 9607
Initials ___
-6(GA) (0005)    Page 8 of 15    XXXXXXXX    08/22/2005 7:16:46    Form 3011 1/01

d06 08ga (05/2005)Rev 01

SCCCA.org - Image Index
44178
00060

BK 4 4 I 7 8 PG 0 0 6 0

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2

0082680697 -9607
Initials

-6(GA) (0005)      Page 9 of 15      08/22/2005 7:16:46      Form 3011 1/01

G06-09ga (05/2005)(Rev. 01)

GSCCCA.org - Image Index
44178
00061

BK44178PG0061

**12. Borrower Not Released; Forbearance By Lender Not a Waiver** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

0082680497 - 9607

Initials

-6(GA) (0005)          Page 10 of 15          44178 PG64          08/22/2005 7:16:46          Form 3011 1/01

d06 10ge (05/2005)Rev 01

GSCCCA.org - Image Index
44178
00062

BK 4 4 1 7 8 PG 0 0 6 2

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

-6(GA) (0005)          Page 11 of 15          08/22/2005 7:16:46          Form 3011 1/01

0082680497 - 9607

d06-11ga (05/2005)Rev 01

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

0082680497 -9607

-6(GA) (0005). 	Page 12 of 15 	08/22/2005 7:16:46 	Form 3011  1/01

d06-12ga (05/2005)Rev 01

3/9/2023, 6:24 PM

GSCCCA.org - Image Index
44178
00064

BK44178PG0064

NON-UNIFORM COVENANTS Borrower and Lender further covenant and agree as follows.

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waiver of Homestead. Borrower waives all rights of homestead exemption in the Property.

25. Assumption Not a Novation. Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

26. Security Deed. This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby

0082684497 -9607

6(GA) (0005)        Page 13 of 15        08/22/2005 7 16.46        Form 3011 1/01

d0(-13ga (05/2005) Rev 0!

BK44178PG0065

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed, sealed and delivered this Security Instrument.

_____ (Seal)                                    (Seal)
ADEYEMO AROW OLARAN

                 (Seal)                                    (Seal)

                 (Seal)                                    (Seal)

                 (Seal)                                    (Seal)

d06-14j.a (05/2005)Rev.01

GSCCCA.org - Image Index
44178
00066

BK 44178 PG 0066

STATE OF GEORGIA,                          DeKalb County ss:

Signed, sealed and delivered in the presence of   Peter Becker and

NICCLE FLAGG



_____
Unofficial Witness

_____
Notary Public
State of Georgia

[Notary Seal: PETER L. BECKER / NOTARY PUBLIC / EXPIRES JUNE 1, 2007 / DEKALB COUNTY, GEORGIA]



Page 15 of 15          0082580497 - 9807
                       06/22/2005 7:16:45 AM

400-15GA (05/2005)Rev.01

3/9/2023, 6:24 PM

GSCCCA.org - Image Index

44178·
00067

BK 4 4 1 7 8 PG 0 0 6 7

## LEGAL DESCRIPTION

All that tract or parcel of land lying and being in Land Lots 320 and 336, of the 4th District of Gwinnett County, Georgia, and being Lot/s 51 in Block "A" of Glen Ridge Subdivision, Unit One, according to a plat thereof recorded in Plat Book 85, page 200, in the Office of the Clerk of the Superior Court of Gwinnett, Georgia Records, to which plat reference is made for a more detailed description.

LEGAL GSCA07053

GSCCCA.org - Image Index
44178
00068
https://search.gsccca.org/Imaging/HTML5viewer.aspx?id=43762473

BK 4 4 1 7 8 PG 0 0 6 8

GEORGIA

GRANTOR: ADEYEMO AROMOLARAN

LENDER: Argent Mortgage Company, ...C

DATE OF SECURITY DEED: August 22, 2005

## WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY (1) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE DEBT AND THE POWER OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; (2) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR.

Signed, Sealed and delivered in the presence of:

_____ (Seal)
ADEYEMO AROMOLARAN                Grantor

_____ (Seal)
                                 -Grantor

_____ (Seal)
                                 Grantor

Notary Public

_____ (Seal)
                                 -Grantor

## CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attorney and Notary personally appeared the undersigned closing attorney, who, having been first duly sworn according to law, under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of the Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights.  After said review with and explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn to and subscribed before me                                    on the date set forth above.

_____
Notary Public

_____
Closing Attorney

## FORECLOSURE CLOSING DISCLOSURE

O.C.G.A. Section 7-1-1014(3) requires that we inform you that if you fail to meet any condition or term of the documents that you sign in connection with obtaining a mortgage loan you may lose the property that serves as collateral for the mortgage loan through foreclosure.

_____
ADEYEMO AROMOLARAN

_____

960(GA)  ...

1/94

3.9.2023  6:24 PM

GSCCCA.org - Image Index
44178
00069

BK44178PG0069

## ADJUSTABLE RATE RIDER
### (LIBOR Six-Month-Index (As Published in the Wall Street Journal)- Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 22nd day of August , 2005   and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to Argent Mortgage Company, LLC (the "Lender") of the same date and covering the property described in the Security Instrument and located at

3491 GLEN SUMMIT LANE, Snellville, GA  30039
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of  6.350 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**
   (A) Change Dates
The interest rate I will pay may change on the first day of  September, 2008  , and on that day every sixth  month thereafter  Each date on which my interest rate could change is called a "Change Date."

   (B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index   The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in the Wall Street Journal.  The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information  The Note Holder will give me notice of this choice.

Initials   HA

Loan Number: 0082680497 - 9607

610-1 (Rev 1/01)          Page 1 of 3                   08/22/2005 7:16:45 AM

GSCCCA.org - Image Index
44178
00070

BK44178PG0070

**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding six percentage points ( 6.000 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than **8.350%** or **less than 6.350%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One( 1.000 %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 12.350)% or less than 6.350)%.

**(E) Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Initials ___

Loan Number: 0082680497 - 9607

510-3 (Rev 1/01)                    Page 2 of 3                    08/22/2005 7.16:46 AM

GSCCCA.org   Image Index
4417&
00071

https://search.gsccca.org/imaging/HTML5Viewer.aspx?id=4398247

BK 44178 PG 0071

If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing. If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)     _____ (Seal)
Borrower ABEYEMI AROMOLARAN            Borrower


_____ (Seal)     _____ (Seal)
Borrower                               Borrower


Loan Number: 0082680497 - 9607


610 X Rev .03.            Page 3 of 3            08/22/2005 7 16:46 AM

GSCCCA.org - Image Index
49234
00074

BK 4 9 2 3 4 PG 0 0 7 4

FILED & RECORDED
CLERK SUPERIOR COURT
GWINNETT COUNTY, GA

2009 JAN -9 PM 2: 00

TOM LAWLER, CLERK

When Recorded Return To:
CITI RESIDENTIAL LENDING INC
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683

Assignor L#: 0082680497
Assignee L#: 0082680497
Investor L#: 0082680497
MIN: 100015000826804974
Effective Date: 12/31/2008

## ASSIGNMENT OF MORTGAGE/DEED

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, CITI RESIDENTIAL LENDING INC., AS ATTORNEY-IN-FACT FOR ARGENT MORTGAGE COMPANY, LLC, WHOSE ADDRESS IS 10801 E. 6TH STREET , RANCHO CUCAMONGA, CA 91730, (ASSIGNOR), by these presents does convey, grant, sell, assign, transfer and set over the described mortgage/deed together with the certain note(s) described therein together with all interest secured thereby, all liens, and any rights due or to become due thereon to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ('MERS') A DELAWARE CORPORATION, ITS SUCCESSORS OR ASSIGNS, AS NOMINEE FOR JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, PO BOX 2026, FLINT, MI 48501, (ASSIGNEE).
Said mortgage/deed is executed by ADEYEMO AROMOLARAN to ARGENT MORTGAGE COMPANY, L.L.C. and recorded in Deed Book 44178 page 0052 and/or as Instr Number 140768 in the office of the Clerk of the Superior Court of GWINNETT County, Georgia.

In witness whereof, the undersigned has set his hand has hereunto set their hands THIS 12TH DAY OF DECEMBER IN THE YEAR 2008
CITI RESIDENTIAL LENDING INC., AS ATTORNEY-IN-FACT FOR ARGENT MORTGAGE COMPANY, LLC

By:

CRYSTAL MOORE VICE PRESIDENT

CHRIS JONES ASST. SECRETARY

VILMA CASTRO WITNESS

Signed and delivered on the date above shown

STATE OF FLORIDA COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me THIS 12TH DAY OF DECEMBER IN THE YEAR 2008 by CRYSTAL MOORE and CHRIS JONES, personally known to me to be the VICE PRESIDENT and ASST SECRETARY, respectively, of CITI RESIDENTIAL LENDING INC., AS ATTORNEY-IN-FACT FOR ARGENT MORTGAGE COMPANY, LLC, a corporation, on behalf of said corporation.

Bryan J. Bly
Notary Public, State of Florida
Commission # DD 691055
Expires July 01, 2011
Bonded Through National Notary Assn.

BRYAN J. BLY Notary Public
My commission expires: 07/01/2011

Document Prepared By: Jessica Fretwell/NTC,2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152
CRI.AS 9241834 12/31 WAMU CJ1999943  MIN 100015000826804974 MERS PHONE 1-888-679-MERS
form5/FRMGA1

*9241834*

0002210

7

GSCCCA.org - Image Index
50906
00211

BK50906 PG0211

-FILED AND RECORDED
CLERK SUPERIOR COURT
GWINNETT COUNTY GA

2011 OCT -5 PM 2:00

TOM LAWLER, CLERK

1031-63967
Aldridge Connors, LLP
780 Johnson Ferry Road
Suite 600
Atlanta, GA 30342

**Loan #: 0082680497**

## ASSIGNMENT OF SECURITY DEED

**— Contact JPMORGAN CHASE BANK, N.A. for this instrument 780 Kansas Lane, Suite A, Monroe, LA 71203, telephone # (866) 756-8747, which is responsible for receiving payments.**

**FOR GOOD AND VALUABLE CONSIDERATION**, the sufficiency of which is hereby acknowledged, the undersigned, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, ITS SUCCESSORS AND ASSIGNS. (ASSIGNOR), (MERS Address: P.O. Box 2026, Flint, Michigan 48501-2026)** by these presents does convey, grant, sell, assign, transfer and set over the described Security Deed together with the certain Note(s) described therein together with all interest secured thereby, all liens and any rights due or to become due thereon to **JPMC SPECIALTY MORTGAGE LLC, WHOSE ADDRESS IS 700 Kansas Lane, MC 8000, Monroe, LA 71203 (866)756-8747, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).**

Said Security Deed is executed by **ADEYEMO AROMOLARAN** to **ARGENT MORTGAGE COMPANY LLC** and recorded in Deed Book 44178, Page 52, and/or as Instrument # n/a in the office of the Clerk of the Superior Court of GWINNETT County, Georgia.

In witness whereof, the undersigned has hereunto set their hands on 09/26/2011 (MM/DD/YYYY).

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, ITS SUCCESSORS AND ASSIGNS**

By: Richard H. Eubanks [signature] — Richard H. Eubanks, Vice President

And: H. Adem [signature] — Hanna Adem, Vice President

Witness: [signature] Benito E Caldwell

Witness: [signature] Donna M. Mulholland

STATE OF OHIO COUNTY OF FRANKLIN
The foregoing instrument was acknowledged before me on 09/26/2011 (MM/DD/YYYY) by Richard H. Eubanks and Hanna Adem as Vice President and Vice President, respectively of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC ("MERS") AS NOMINEE FOR JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, ITS SUCCESSORS AND ASSIGNS, who, being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me or produced identification. Type of identification ~

[signature]
Michelle L. Burr
Notary Public - State of OHIO
Commission expires: 11/26/2011

MICHELLE L. BURR
NOTARY PUBLIC, STATE OF OHIO
FRANKLIN COUNTY
My Comm. Expires November 26, 2011

**Document Prepared By:** E. Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152
JPCFA 14800836 – CHASE DP3282158 MIN 100015000826804974 MERS PHONE 1-888-679-MERS
FRMGA1

*14800836*

0079618

GSCCCA.org - Image Index

DEED B: 57317 P: 00092
03/11/2020 02:10 PM Pgs: 1 Fees: $25.00

Richard T. Alexander, Jr., Clerk of Superior Court
Gwinnett County, GA

## CANCELLATION OF SECURITY DEED
Pursuant to Ga. Code Ann. § 44-14-67

The indebtedness referred to in that certain deed to secure debt from ADEYEMO AROMOLARAN to ARGENT MORTGAGE COMPANY, LLC dated August 22, 2005 and recorded on August 29, 2005 in Volume/Book 44178 at Page 0052 and/or as Document 140768-69 in the Office of the Clerk of the Superior Court of GWINNETT County, Georgia having been paid in full and the undersigned being the present record holder and owner of such deed, the clerk of such Superior Court is authorized and directed to cancel that deed of record as provided in Code Section 44-14-4 of the O.C.G.A. for other mortgage cancellations

Property Address: 3491 GLEN SUMMIT LANE, SNELLVILLE, GA 30039

TAX PARCEL ID NUMBER: , ,

Date: March 6, 2020

JPMC SPECIALTY MORTGAGE LLC F/K/A WM SPECIALTY MORTGAGE LLC

ARCOLA FREEMAN
Vice President

Signed, sealed and delivered
in the presence of:

EDNIQUE WILLIAMS
UNOFFICIAL WITNESS

IRA D BROWN - 16206, NOTARY PUBLIC and OFFICIAL WITNESS
COUNTY/PARISH OF OUACHITA
STATE OF Louisiana
LIFETIME COMMISSION

Prepared by:
Janice Garrison
Lien Release
JPMorgan Chase Bank, N.A.
700 Kansas Lane
Mail Code LA4-3120
Monroe, LA 71203

Record and Return to:
ADEYEMO AROMOLARAN
3491 GLEN SUMMIT LN
SNELLVILLE, GA 30039-7604

Loan Number: 0082680497
Outbound Date: 03/05/20

MERS Phone - 888-679-6377
MERS Address: P.O. Box 2026, Flint, MI 48501-2026
MERS MIN: 100015000826804974

GAXG
00/21/18GC

GSCCCA.org - Image Index
44178
00072

BK 44178 PG 0072

RECORDED
CLERK SUPERIOR COURT
GWINNETT COUNTY GA

05 AUG 29 PM 2:00

TOM LAWLER, CLERK

EXHIBIT
B

Nations Title Agency of Georgia Inc
Likens & Blomquist, P A
125 TownPark Drive Ste 200
Kennesaw GA 30144
05GA07315

After Recordation Return to:
Argent Mortgage Company, LLC

P O Box 5047
Rolling Meadows, IL 60008

GEORGIA INTANGIBLE TAX PAID
$  94.50
TOM LAWLER
SUPERIOR COURT GWINNETT
COUNTY, GEORGIA

## SECURITY DEED

THIS DEED is made this 22nd                day of August, 2005                , between the Grantor,
ADEYEMO AROMOLARAN

(herein "Borrower"), and the Grantee,

Argent Mortgage Company, LLC
, a corporation organized and
existing under the laws of Delaware                                    , whose address is
One City Boulevard West  Orange, CA 92868
(herein "Lender").

WHEREAS, Borrower is indebted to Lender in the principal sum of U.S. $ 31,400.00
which indebtedness is evidenced by Borrower's note dated August 22, 2005
and extensions and renewals thereof (herein "Note"), providing for monthly installments of principal and interest, with the
balance of the indebtedness, if not sooner paid, due and payable on September 1, 2035

TO SECURE to Lender the repayment of the indebtedness evidenced by the Note, with interest thereon; the payment of all
other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed to Secure Debt; and the
performance of the covenants and agreements of Borrower herein contained, Borrower does hereby grant and convey to Lender
and Lender's successors and assigns, with power of sale, the following described property located in the County of
GWINNETT                                                                                  State of Georgia
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF:

Parcel ID Number: 4 320 208
which has the address of 3491 GLEN SUMMIT LANE                          [Street]
Snellville                   [City] Georgia 30039        [ZIP Code] (herein "Property Address");

TO HAVE AND TO HOLD such property unto Lender and Lender's successors and assigns forever, together with all the
improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents, all of which shall be
deemed to be and remain a part of the property covered by this Deed, and all of the foregoing, together with said property (or the
leasehold estate if this Deed is on a leasehold) are hereinafter referred to as the "Property"

0086330792

GEORGIA - SECOND MORTGAGE  1/80 - FNMA/FHLMC UNIFORM INSTRUMENT
0086330792 - 9607                                  08/22/2005 7 30 43

AM76GA (02   )                        Form 3811                  140769
Page 1 of 4                            11/91

VMP Mortgage Solutions (800)521-7291
AM76GA1   (05/2005) Rev 02

3/9 2023, 6:38 PM

GSCCCA.org - Image Index
44178-
00073

BK4 4 I 78 PG0073

Borrower covenants that: Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior security deed, mortgage or deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Deed, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

**4. Prior Deeds to Secure Debt; Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any security deed, mortgage, deed of trust or other security agreement with a lien which has priority over this Deed, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any security deed, mortgage, deed of trust or other security agreement with a lien which has priority over this Deed.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed is on a leasehold. If this Deed is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any security deed, mortgage, deed of trust or other security agreement with a lien which has priority over this Deed.

0086330792

Form 3811

08/27/2005  7:30:43 AM
0086330792 · 9607

GSCCCA.org - Image Index
4417&
00074

BK 4 4 I 7 8 PG 0 0 7 4

10. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

11. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Deed, but does not execute the Note, (a) is co-signing this Deed only to grant and convey that Borrower's interest in the Property to Lender under the terms of this Deed, (b) is not personally liable on the Note or under this Deed, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed or the Note, without that Borrower's consent and without releasing that Borrower or modifying this Deed as to that Borrower's interest in the Property.

12. **Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

13. **Governing Law; Severability.** The state and local laws applicable to this Deed shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of federal law to this Deed. In the event that any provision or clause of this Deed or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Deed and the Note are declared to be severable. As used herein, "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

14. **Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Deed at the time of execution or after recordation hereof.

15. **Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

16. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Deed. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Deed.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Deed. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Deed without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Acceleration; Remedies.** Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Deed, including the covenants to pay when due any sums secured by this Deed, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed, and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Deed to be immediately due and payable without further demand and may invoke the power of sale herein granted and Borrower hereby appoints Lender the agent and attorney-in-fact for Borrower to exercise said power of sale) and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Lender shall mail a copy of a notice of sale to Borrower in the manner provided in paragraph 12 hereof and shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Lender may determine. Lender or Lender's designee may purchase the Property at any sale.

Lender shall deliver to the purchaser Lender's deed to the Property in fee simple and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable attorneys' fees and costs of title evidence; (b) to all sums secured by this Deed; and (c) the excess, if any, to the person or persons legally entitled thereto. The power and agency hereby granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of said indebtedness as provided by law.

If the Property is sold pursuant to this paragraph 17, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at such sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.

18. **Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Deed due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed discontinued at any time prior to the earlier to occur of (i) the fifth day before sale of the Property pursuant to the power of sale contained in this Deed or (ii) entry of a judgment enforcing this Deed if (a) Borrower pays Lender all sums which would be then due under this

0086330792

08/22/2005 7:30:43 AM

0086330792 - 9607

AM76GA3 05/2004 Rev 02

GSCCCA.org - Image Index
44178
00075
https://search.gsccca.org/imaging...aspx?ID=4345270

BK 4 4 1 7 8 PG 0 0 7 5

Deed and the Note had no acceleration occurred. (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Deed. (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Deed, and in enforcing Lender's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees, and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Deed, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Deed shall continue unimpaired. Upon such payment and cure by Borrower this Deed and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

**19. Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed. Lender and the receiver shall be liable to account only for those rents actually received.

**20. Release.** Upon payment of all sums secured by this Deed of Trust, Lender shall release this Deed of Trust without charge to Borrower. Borrower shall pay all costs of recordation, if any.

**21. Waiver of Homestead.** Borrower hereby waives all right of homestead exemption in the Property.

**22. Assumption Not a Novation.** Lender's acceptance of an assumption of the obligations of this Deed and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

**23. Deed to Secure Debt.** This conveyance is to be construed under the existing laws of the State of Georgia as a security deep passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

### REQUEST FOR NOTICE OF DEFAULT
### AND FORECLOSURE UNDER SUPERIOR
### MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed of Trust to give Notice to Lender, at Lender's address set forth on page one of this Deed of Trust, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, Borrower has executed this Deed of Trust.

Signed, sealed and delivered
in the presence of:



_____                    _____ (Seal)
Unofficial Witness                             ADEYEMO AROMOLARAN        -Borrower

                                               _____ (Seal)
                                                                         -Borrower

_____ (Seal)             _____ (Seal)
                          -Borrower                                      -Borrower

_____ (Seal)             _____ (Seal)
                          -Borrower                                      -Borrower

_____ (Seal)             _____ (Seal)
                          -Borrower                                      -Borrower

                                                           *(Sign Original Only)*

_____                    _____
Notary Public                                  County

[Notary Seal: PETER L. BECKER / NOTARY PUBLIC / DEKALB COUNTY, GEORGIA]

06/22/2005  7 30:43

Page 4 of 4

0086330792 - 9607

a)0-4GA (05/2005)Rev.02

GSCCCA.org - Image Index
44178
00076

BK 44178 PG0076

## LEGAL DESCRIPTION

All that tract or parcel of land lying and being in Land Lots 320 and 336, of the 4th District of Gwinnett County, Georgia, and being Lot/s 51 in Block "A" of Glen Ridge Subdivision, Unit One, according to a plat thereof recorded in Plat Book 85, page 200, in the Office of the Clerk of the Superior Court, of Gwinnett, Georgia Records, to which plat reference is made for a more detailed description

LEGAL: 05GA07315

https://search.gsccca.org/imaging/HTML5Viewer.aspx?id=4398249

GSCCCA.org - Image Index

44178
00077

BK 4 4 1 7 8 PG 0 0 7 7

GEORGIA

GRANTOR: ADEYEMO AROMOLARAN

LENDER: Argent Mortgage Company, LLC

DATE OF SECURITY DEED: August 22, 2005

## WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE **RIGHT TO ACCELERATE** THE DEBT AND THE **POWER OF ATTORNEY** GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; (2) **WAIVES** ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR:

Signed, Sealed and delivered in the presence of:

_____ (Seal)
ADEYEMO AROMOLARAN                Grantor

_____ (Seal)
-Grantor

_____ (Seal)
-Grantor

Notary Public

_____ (Seal)
-Grantor

## CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of the Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with and explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn to and subscribed before me

on the date set forth above

_____
Closing Attorney

## FORECLOSURE CLOSING DISCLOSURE

O.C.G.A. Section 7-1-1014(3) requires that we inform you that if you fail to meet any condition or term of the documents that you sign in connection with obtaining a mortgage loan you may lose the property that serves as collateral for the mortgage loan through foreclosure.

_____
ADEYEMO AROMOLARAN

-960(GA) (9401.04                 WMP MORTGAGE FORMS - (800)521-7291                                  1/94

BK44178PG0078

FILED AND RECORDED
CLERK SUPERIOR COURT
GWINNETT COUNTY, GA

~~Return To:~~
Irwin Mortgage Corporation
Attn  Final Documents
P O. Box 6107
Indianapolis, IN 46206-6107

05 AUG 29  PM 2: 00

TOM LAWLER, CLERK

Prepared By:

*Lisa Obey*

**WHEN RECORDED RETURN TO:**
Old Republic Title
Attn: Escrow Dept.
320 Springside Dr
Suite 320
Akron, OH 44333

005390500

———————————————[Space Above This Line For Recording Data]———————————————

# SECURITY DEED

MIN  1000139-0079918454-8

**GEORGIA INTANGIBLE TAX PAID**
$ __462.00__
**TOM LAWLER**
**SUPERIOR COURT GWINNETT**
**COUNTY, GEORGIA**

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated July 22, 2005,
together with all Riders to this document.
**(B) "Borrower"** is Loretta A Brown* and Timothy L Brown , wife and husband.

    * HITA LORETTA A ZIMMERMAN

Borrower is the grantor under this Security Instrument.
**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the grantee under
this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an
address and telephone number of P O. Box 2026, Flint, MI 48501-2026, tel (888) 679-MERS.

46180689                                                    0079918454

GEORGIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS         Form 3011  1/01

(comp)-6A(GA) (0505) 01
Page 1 of 16          Initials

VMP MORTGAGE FORMS  (800)521-7291

140770

44

GSCCCA.org - Image Index
44178
00079

BK44178PG0079

(D) "Lender" is Irwin Mortgage Corporation

Lender is a Corporation
organized and existing under the laws of The State of Indiana
Lender's address is 10500 Kincaid Drive, Fishers, IN  46038

(E) "Note" means the promissory note signed by Borrower and dated July 22, 2005
The Note states that Borrower owes Lender One Hundred Fifty Three Thousand Five
Hundred Ninety Seven and 00/100                                                Dollars
(U.S. $ 153,597 00        ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than April 1, 2032
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property "
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower The following
Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☑ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

Waiver of Borrower's Rights

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used

46150689

DD79918454

Initials

-6A(GA) (0005) 01                        Page 2 of 16                        Form 3011  1/01

GSCCCA.org
44178
00080
Image Index

BK 4 4 1 7 8 PG 0 0 8 0

in this Security Instrument. "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS, with power of sale, the following described property located in the

County                                          of Gwinnett
        [Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]

Situate, lying and being in Land Lot 240 of the District of Gwinnett
County, Georgia:
Being Lot 44, Block B, Oak Park on the River Subdivision, Unit Two, Phase
II, according to plat recorded in Plat Book 61, Page 133, Revised at Plat
Book 68, Page 37, Gwinnett County, Georgia Records, which plats are
incorporated herein by reference

Parcel ID Number: 7240-138                              which currently has the address of
1536 Shetland Pony Ct                                                    [Street]
Suwanee                                          [City] , Georgia 30024      [Zip Code]
("Property Address"):

    TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

46180689                                             0079918454

-6A(GA) (0008) 01                  Page 3 of 14                      Form 3011   1/01

GSCCCA.org - Image Index
44178
00081

BK44178PG0081

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

46196689                                                    0679918454

3.9.2023 4:28 PM

GSCCCA.org - Image Index
44178
00082

BK44178PG0082

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.  **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

44182589

0079918454

-6A(GA) (0008) 01                Page 5 of 14              Form 3011  1/01

GSCCCA org - Image Index
44178
00083

BK44178PG0083

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

46280E89

-6A(GA) (0008) 01

2079928454

Initials Qb S

Form 3011 1/01

GSCCCA org - Image Index
44178
00084

BK 4 4 1 7 8 PG 0 0 8 4

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying

46180685

0079916454

-6A(GA) (0005) 01

Page 7 of 14

Form 3011  1/01

GSCCCA.org - Image Index
44178
00085

BK 44178 PG 0085

reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

46180689

0079918454

-6A(GA) (0005)(01)                    Page 8 of 14                    Form 3011  1/01

BK44178PG0086

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

46180689

0079918454

-6A(GA) (0006).01    Page 9 of 14    Form 3011  1/01

3 9 2023  6:28 PM

GSCCCA.org - Image Index
44178
00087

BK44178PG0087

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

46180689

0079918454

Form 3011 1/01

@ -6A(GA)

Page 10 of 16

3 0 2023  6:28 PM

GSCCCA org - Image Index
44178
00088

BK44178PG0088

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

46180689

0079918454

GSCCCA -6A(GA) (0008) 01

Page 11 of 14

Form 3011 1/01

GSCCCA.org - Image Index
44178
00089

BK44178PG0089

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21 (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

1E180689                                              0079918454

6A(GA) (0005) 01                     Page 12 of 14                    Form 3011  1/01

BK44178PG0090

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waiver of Homestead. Borrower waives all rights of homestead exemption in the Property.

25. Assumption Not a Novation. Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

26. Security Deed. This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

46180689

0079918454

Page 13 of 14

-6A(GA) (0005) 01

Form 3011 1/01

GSCCCA.org - Image Index
44178
00091

BK44178PG0091

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

_____ (Seal)
Loretta A Brown          -Borrower

_____ (Seal)
Timothy L Brown          -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

STATE OF GEORGIA,                    Gwinnett          County ss:
Signed, sealed and delivered in the presence of:

_____
Unofficial Witness

_____
Notary Public,          Gwinnett          County
State of Georgia

46180689

0079918454

Form 3011 1/01

-6A(GA) (0005).01          Page 16 of 16

3-9-2023. 6:28 PM

GSCCCA.org - Image Index
44178
00092

BK44178PG0092

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 22nd                     day of
July, 2005                                  , and is incorporated into and shall be
deemed to amend and supplement the Mortgage. Deed of Trust, or Security Deed (the "Security
Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to
Irwin Mortgage Corporation

                                                                                        (the
"Lender") of the same date and covering the Property described in the Security Instrument and located at:

1536 Shetland Pony Ct
Suwanee, GA 30024
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other
such parcels and certain common areas and facilities, as described in The Covenants, Conditions
& Restrictions of Record

(the "Declaration"). The Property is a part of a planned unit development known as

Oak Park on the River Subdivision
[Name of Planned Unit Development]

(the "PUD") The Property also includes Borrower's interest in the homeowners association or equivalent
entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the
uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument,
Borrower and Lender further covenant and agree as follows:

A. PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's
Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of
incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii)
any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when
due, all dues and assessments imposed pursuant to the Constituent Documents.

46180693                                                            0079918454
MULTISTATE PUD RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT           Form 3150 1/01
Page 1 of 3                                                    Initials:
-7R (0008)               VMP MORTGAGE FORMS - (800)521-7291

3.9.2023  6:28 PM

GSCCCA.org - Image Index

44178
00093

BK 4 4 1 7 8 PG 0 0 9 3

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

46180693

Initials: _Eb_   0079918454
                  3

Page 2 of 3    Form 3150 1/01

@ -7R (0008)

3/9/2023, 6:28 PM

BK44178PG0094

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider

_____ (Seal)
Loretta A Brown               -Borrower

_____ (Seal)
Timothy L Brown               -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

0079918454

46180693

-7R (0008)          Page 3 of 3          Form 3150 1/01

3/9/2023, 6:28 PM

GSCCCA.org - Image Index
44178
00095

https://search.gsccca.org/imaging/HTML5Viewer.aspx?id=4398249...

BK 44178 PG 0095

GEORGIA -

GRANTOR: Loretta A Brown and Timothy L Brown, wife and husband

LENDER: Irwin Mortgage Corporation

DATE OF SECURITY DEED: July 22, 2005

## WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE **RIGHT TO ACCELERATE** THE DEBT AND THE **POWER OF ATTORNEY** GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; (2) **WAIVES** ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR:

Signed, Sealed and delivered in the presence of:

_____ (Seal)
Loretta A Brown -Grantor

_____ (Seal)
Timothy L Brown -Grantor

_____ (Seal)
-Grantor

_____ (Seal)
-Grantor

Notary Public

## CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of the Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with and explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn to and subscribed before me

DEBRA L. KIRKPATRICK
Notary Public, Gwinnett County, Georgia
My Commission Expires Nov. 3, 2008

on the date set forth above

_____
Notary Public

_____
CLB Republic Title    Closing Attorney

## FORECLOSURE CLOSING DISCLOSURE

O.C.G.A. Section 7-1-1014(3) requires that we inform you that if you fail to meet any condition or term of the documents that you sign in connection with obtaining a mortgage loan you may lose the property that serves as collateral for the mortgage loan through foreclosure.

_____
Loretta A Brown

_____
Timothy L Brown

_____

_____

-960(GA) (9405).05

1/94



**BORROWER COPY**

LAW OFFICES
## McCalla Raymer Leibert Pierce, LLC
1544 Old Alabama Road
Roswell, Ga 30076

TELEPHONE: (770) 643-2148
FAX: (770) 643-4062

October 31, 2022

Adeyemo Aromolaran
3491 Gln Smt Ln
Snellville, GA 30039

RE:     NOTICE OF NONJUDICIAL FORECLOSURE SALE

Servicing Lender's #:      XXXXXX8828
Our File #:                5688619-FT7
Borrower                   Adeyemo Aromolaran
Property:                  3491 Glen Summit Lane
                           Snellville, Georgia  30039

**BE ADVISED THAT UNDER FEDERAL LAW, THIS LAW FIRM MAY BE DEEMED A DEBT COLLECTOR. ANY INFORMATION OBTAINED MAY BE USED FOR THE PURPOSE OF COLLECTING A DEBT.**

Dear Sir or Madam:

This loan was referred to our office for a nonjudicial foreclosure due to your default under the terms of your loan documents. The actions we have been retained to take are limited to actions in furtherance and in support of a nonjudicial foreclosure pursuant to Georgia law. This notice is sent to you in accordance with Georgia law.

The entire amount of the outstanding balance of principal and interest owed on the loan and any other authorized charges are due and payable. Additionally, the terms of your note call for the addition of attorneys' fees to the debt when an attorney is retained to enforce the security interest. Georgia law (O.C.G.A Section 13-1-11) allows ten (10) days from your receipt of this letter to pay the entire amount owed. After that time, the full amount of attorneys' fees allowed by Georgia law may be added to the debt.

If you are currently subject to the protections of any automatic stay in bankruptcy or have obtained a discharge in a bankruptcy proceeding nothing stated herein should be interpreted as an attempt by this firm to impose personal liability for the debt.

The referenced property is scheduled to be auctioned at foreclosure  Enclosed is a copy of the Notice of Sale submitted for publication in the County's legal newspaper.  Note that the sale is scheduled for the first Tuesday in December, 2022, and will be held within the legal hours of sale at the Gwinnett County Courthouse.

The Bank of New York Mellon, f/k/a The Bank of New York, as successor to JPMorgan Chase Bank N. A. as Indenture Trustee , on behalf of the holders of the Terwin Mortgage Trust 2006-HF1, Asset-backed Securities, Series 2006-HF1 holds the Security Deed to your property and Specialized Loan Servicing LLC services your loan.  The entity that has full authority to negotiate, amend, and modify all terms of the mortgage with the debtor, as servicer, is:

Specialized Loan Servicing LLC, 6200 S. Quebec St., Suite 300, Greenwood Village, CO  80111, 800-306-6059.

Please contact the entity above directly should you wish to inquire about what, if any, loss mitigation options may be available to you. Note, however, that such entity is not required by law to negotiate, amend or modify the terms of the loan.

Please note that this letter is being sent to you in order to comply with Georgia statutory law requirements for a nonjudicial foreclosure.  For further information regarding this foreclosure sale, or to ask us to request reinstatement or payoff figures from your lender as permitted, you may call our office at (770) 643-2148 and ask for Foreclosure Team FT7.  Please also notify this office if you are currently under bankruptcy protection and no relief has been granted to your lender.

Sincerely,

McCalla Raymer Leibert Pierce, LLC

Enclosure

Original via certified mail
Copy also sent by first class mail

## SERVICEMEMBERS' CIVIL RELIEF ACT NOTICE

Active duty members of the United States Army, Navy, Air Force, Marine Corps, Coast Guard, and all officers of the Public Health Service or the National Oceanic and Atmospheric Administration detailed by proper authority for active duty, as well as their dependents, have certain rights and privileges under the Servicemembers Civil Relief Act, 50 App. U.S.C.A. §§ 501 et seq.

If you own the property being foreclosed, and you are, or have been within the last twelve months, an active duty "person in the military service," or a protected person defined in 50 App. U.S.C.A. §§ 511 through 516, the lender may be required to provide you additional procedural protections before it can take possession of the property being foreclosed. This notice is to ensure that you are fully advised of your rights.

In particular, the provisions contained in 50 App. U.S.C.A. § 533 are designed for the benefit of persons in the military service whose ability to comply with the terms of their mortgage obligation is materially affected by reason of their military service.

If you are, or have been within the last twelve months, a "person in the military service," or if you believe that you are a protected person or entitled to relief under the Servicemembers Civil Relief Act, please contact this office immediately by mail or by phone as follows:

MCCALLA RAYMER LEIBERT PIERCE, LLC
1544 Old Alabama Road
Roswell, GA 30076
Telephone:   (770) 643-2148
Toll Free:   (800) 275-7171
Fax:   (866) 221-4918
Attention:   FT7

Assistance may also be available to you through the Department of Defense's Military One Source (www.militaryonesource.mil) which provides a toll-free assistance line for servicemembers: 1-800-342-9647.

**BORROWER COPY**

NOTICE OF SALE UNDER POWER

NOTICE OF SALE UNDER POWER

GEORGIA, GWINNETT COUNTY

*Argent 5/22/2005*

Under and by virtue of the Power of Sale contained in a Security Deed given by Adeyemo Aromolaran to Argent Mortgage Company LLC, dated August 22, 2005, recorded in Deed Book 44178, Page 72, Gwinnett County, Georgia Records, as last transferred to The Bank of New York Mellon, f/k/a The Bank of New York, as successor to JPMorgan Chase Bank N. A. as Indenture Trustee , on behalf of the holders of the Terwin Mortgage Trust 2006-HF1, Asset-backed Securities, Series 2006-HF1 by assignment recorded in Deed Book 57204, Page 272, Gwinnett County, Georgia Records, conveying the after-described property to secure a Note in the original principal amount of THIRTY-ONE THOUSAND FOUR HUNDRED AND 0/100 DOLLARS ($31,400.00), with interest thereon as set forth therein, there will be sold at public outcry to the highest bidder for cash before the courthouse door of Gwinnett County, Georgia, or at such place as may be lawfully designated as an alternative, within the legal hours of sale on the first Tuesday in December, 2022, the following described property:

*Argent to close 5/22/2005*

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

The debt secured by said Security Deed has been and is hereby declared due because of, among other possible events of default, failure to pay the indebtedness as and when due and in the manner provided in the Note and Security Deed. The debt remaining in default, this sale will be made for the purpose of paying the same and all expenses of this sale, as provided in the Security Deed and by law, including attorney's fees (notice pursuant to O.C.G.A. § 13-1-11 having been given).

Said property will be sold subject to any outstanding ad valorem taxes (including taxes which are a lien, but not yet due and payable), the right of redemption of any taxing authority, any matters which might be disclosed by an accurate survey and inspection of the property, any assessments, liens, encumbrances, zoning ordinances, restrictions, covenants, and any matters of record including, but not limited to, those superior to the Security Deed first set out above. Said property will be sold on an "as-is" basis without any representation, warranty or recourse against the above-named or the undersigned.

The Bank of New York Mellon, f/k/a The Bank of New York, as successor to JPMorgan Chase Bank N. A. as Indenture Trustee , on behalf of the holders of the Terwin Mortgage Trust 2006-HF1, Asset-backed Securities, Series 2006-HF1 is the holder of the Security Deed to the property in accordance with OCGA § 44-14-162.2.

The entity that has full authority to negotiate, amend, and modify all terms of the mortgage with the debtor is: Specialized Loan Servicing LLC, 6200 S. Quebec St., Suite 300, Greenwood Village, CO 80111, 800-306-6059.

Note, however, that such entity is not required by law to negotiate, amend or modify the terms of the loan

To the best knowledge and belief of the undersigned, the party in possession of the property is Adeyemo Aromolaran or a tenant or tenants and said property is more commonly known as **3491 Glen Summit Lane, Snellville, Georgia 30039**. Should a conflict arise between the property address and the legal description the legal description will control.

The sale will be conducted subject (1) to confirmation that the sale is not prohibited under the U.S. Bankruptcy Code and (2) to final confirmation and audit of the status of the loan with the holder of the security

deed.

The Bank of New York Mellon, f/k/a The Bank of New York, as successor to JPMorgan Chase Bank N. A. as Indenture Trustee , on behalf of the holders of the Terwin Mortgage Trust 2006-HF1, Asset-backed Securities, Series 2006-HF1
       as Attorney in Fact for
Adeyemo Aromolaran

McCalla Raymer Leibert Pierce, LLC
1544 Old Alabama Road
Roswell, GA 30076
www.foreclosurehotline.net

EXHIBIT "A"

All that tract or parcel of land lying and being in Land Lots 320 and 336, of the 4th District of Gwinnett County, Georgia, and being Lot/s 51 in Block "A" of Glen Ridge Subdivision, Unit One, according to a plat thereof recorded in Plat Book 85, page 200, in the Office of the Clerk of the Superior Court of Gwinnett, Georgia Records, to which plat reference is made for a more detailed description.

SUBJECT TO that certain security deed from Adeyemo Aromolaran to JPMorgan Chase Bank, N.A., dated February 13, 2020, and recorded in Deed Book 57284, page 662, Gwinnett County, Georgia Records. Said security deed shall not be divested by the foreclosure sale herein described of the security deed in Deed Book 44178, Page 72.

MR/jay    12/6/22
Our file no. 5688619 - FT7

Mccalla Raymer Leibert Pierce
1544 Old Alabama Rd
Roswell GA 30076

 

$0.81⁰
US POSTAGE
FIRST-CLASS
FROM 30076
10/31/2022
stamps
endicia

Adeyemo Aromolaran
3491 Gln Smt Ln
Snellville GA 30039

Exhibit B.



DEED B: 60456 P: 00311
02/28/2023 11:55 AM Pgs: 10 Fees: $25.00
TTax: $0.00
Tiana P Garner, Clerk of Superior Court
Gwinnett County, GA
PT-61 #: 0672023003983
ERECORDED
eFile Participant IDs: 2386668649,7067927936

Return To:                                       CROSS INDEX TO DEED
Realistry Acquisitions, LLC                       BOOK 44178, PAGE 72,
3107 Peachtree Rd NE , Unit 1701                  GWINNETT COUNTY,
Atlanta, GA 30305                                 GEORGIA RECORDS

STATE OF
COUNTY OF

### DEED UNDER POWER

THIS INDENTURE, effective as of the 6th day of December, 2022, by Adeyemo Aromolaran (hereinafter collectively to as "Borrower"), acting through this duly appointed attorney in fact, The Bank of New York Mellon, f/k/a The Bank of New York, as successor to JPMorgan Chase Bank N. A. as Indenture Trustee , on behalf of the holders of the Terwin Mortgage Trust 2006-HF1, Asset-backed Securities, Series 2006-HF1 (hereinafter referred to as "Lender"), as Party of the First Part, and Realistry Acquisitions, LLC as Party of the Second Part;

### W I T N E S S E T H :

WHEREAS, Borrower executed and delivered that certain Security Deed to Argent Mortgage Company LLC, its successors and assigns, which is recorded in Deed Book 44178, Page 72, Gwinnett County, Georgia Records, as last transferred to Lender by assignment, recorded in Deed Book 57204, Page 272, Gwinnett County, Georgia Records, conveying the after-described property to secure a Note in the original principal amount of THIRTY-ONE THOUSAND FOUR HUNDRED AND 0/100 DOLLARS ($31,400.00);

WHEREAS, default in the payment of the required installments under said Note occurred, and by reason of said default, Lender elected, pursuant to the terms of the Security Deed and Note, and declared the entire principal and interest immediately due and payable; and

Page 1        McCalla Raymer Leibert Pierce, LLC
              5688619-FT7/chr
              12/06/22

3/9/2023, 6:29 PM

WHEREAS, said entire indebtedness still being in default, Lender on behalf of Borrower, and according to the terms of said Security Deed, did advertise said property for sale once a week for 4 Weeks immediately preceding said sale in a newspaper in Gwinnett, Georgia, wherein the Sheriff carried his advertisements; and

WHEREAS, notice was given in compliance with Georgia Laws 1981, Volume I, Page 834, codified as O.C.G.A. Section 44-14-162.2 and Section 44-14-162.4. The notice so required was rendered by mailing a copy of the Notice of Sale submitted to the publisher (to the "Debtor" (as that term is defined in O.C.G.A. Section 44-14-162.1) at least thirty days prior to the foreclosure sale date; and

WHEREAS, Lender did expose said property for sale to the highest bidder for cash on the first Tuesday in December, 2022 within the legal hours of sale at the usual place for conducting Sheriff's sales in Gwinnett before the Courthouse door, or at such place as may be lawfully designated as an alternative, and offered said property for sale at public outcry; and

WHEREAS, the said property was knocked off to the Party of the Second Part, who was the highest and best bidder for cash, at and for the sum of TWO HUNDRED FIVE THOUSAND NINE HUNDRED AND 0/100 DOLLARS ($205,900.00).

NOW THEREFORE, in consideration of the premises and said sum of money and by virtue of and in the exercise of the power of sale contained in the Security Deed, the Party of the First Part has bargained, sold, granted and conveyed, and by these presents does hereby bargain, sell, grant and convey to the Party of the Second Part, said party's representatives, heirs, successors and assigns, the following described property:

> All that tract or parcel of land lying and being in Land Lots 320 and 336, of the 4th District of Gwinnett County, Georgia, and being Lots 51 in Block "A" of Glen Ridge Subdivision, Unit One, according to a plat thereof recorded in Plat Book 85, page 200, in the Office of the Clerk of the Superior Court of Gwinnett, Georgia Records, to which plat reference is made for a more detailed description.
>
> SUBJECT TO that certain security deed from Adeyemo Aromolaran to JPMorgan Chase Bank, N.A., dated February 13, 2020, and recorded in Deed Book 57284, page 662, Gwinnett County, Georgia Records. Said security deed shall not be divested by the foreclosure sale herein described of the security deed in Deed Book 44178, Page 72.

Commonly known as:  3491 Glen Summit Lane, Snellville, GA  30039

TOGETHER WITH all and singular the rights, members and appurtenances thereto appertaining; also all the estate, right, title, interest, claim or demand of the Party of the First Part, or said Party's representatives, heirs, successors and assigns, legal, equitable or otherwise, whatsoever, in and to the same.

THIS CONVEYANCE IS SUBJECT TO any outstanding ad valorem taxes (including taxes which are a lien, but not yet due and payable), any matters which might be disclosed by an accurate survey and inspection of the property, any assessments, liens, encumbrances, zoning ordinances, restrictions, covenants, and matters of record superior to the Security Deed.

| | |
|---|---|
| Page 2 | McCalla Raymer Leibert Pierce, LLC |
| | 5688619-FT7/chr |
| | 12/06/22 |

DEED B: 60456 P: 00313  02/28/2023 11:55 AM
23D011573 Page 3 of 10

TO HAVE AND TO HOLD the said property and every part thereof unto the said Party of the
Second Part, and said party's representatives, heirs, successors and assigns, to said Party's own proper
use, benefit and behoof in FEE SIMPLE, in as full and ample a manner as the said Party of the First Part
or said Party's representatives, heirs, successors and assigns, did hold and enjoy the same.

IN WITNESS WHEREOF, Lender as Agent and Attorney in Fact for Borrower has hereunto
affixed Lender's hand and seal on this, _____ **FEB 1 6 2023** .

Signed, sealed and delivered                      Specialized Loan Servicing LLC, as
in the presence of:                               attorney-in-fact for

_Henrietta Parrish_ (signature)
Unofficial Witness                                **The Bank of New York Mellon, f/k/a The Bank
Name:   Henrietta Parrish                         of New York, as successor to JPMorgan Chase
                                                  Bank N. A. as Indenture Trustee , on behalf of
                                                  the holders of the Terwin Mortgage Trust
_Katherine Pfeufer_ (signature)                   2006-HF1, Asset-backed Securities, Series
Notary Public                                     2006-HF1,
Name:   Katherine Pfeufer                         as attorney in fact for Adeyemo Aromolaran
My Commission Expires: 02/17/2026
(Seal)                                            _signature_
                                                  Grantor
                                                  Name:    Steven B. Ross
┌─────────────────────────────────┐              Title:   Second Assistant Vice President
│   KATHERINE PFEUFER              │
│   NOTARY PUBLIC                  │              _signature_
│   STATE OF COLORADO              │              Grantor
│   NOTARY ID 20224008801          │              Name:    Matthew Hopry
│ MY COMMISSION EXPIRES 02/17/2026 │              Title:   Assistant Vice President
└─────────────────────────────────┘

┌──────────────────────────────────────────┐
│ Power of Attorney Attached as Exhibit "A" │
└──────────────────────────────────────────┘

McCalla Raymer Leibert Pierce, LLC
                    5688619-FT7/chr
                    12/06/22

## COLORADO NOTARIAL ACKNOWLEDGMENT

STATE OF COLORADO       )

COUNTY OF ARAPAHOE )

The foregoing instrument was acknowledged before me this ___**FEB 1 6 2023**___ by
___Steven B. Ross_____ (Date)
            Second Assistant Vice President AND *Matthew Hopky* Assistant Vice President
                                    (Name, Title)
Specialized Loan Servicing LLC, a Delaware Limited Liability Company, on behalf of the LLC.

*Kat Pfn* Katherine Pfeufer

(Notary Seal)

**Notary's Official Signature**

*02/17/2026*

**Commission Expiration**

KATHERINE PFEUFER
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20224006801
MY COMMISSION EXPIRES 02/17/2026

| Description of document this notarial certificate is being attached to: | |
|---|---|
| Type / Title of Document: | Deed Under Power |
| Date of Document: | FEB 1 6 2023 |
| Number of Pages: | 3 |
| Additional Signers (other than those named in notarial certificate) | 1 witness, 2 signers, 1 Notary Witness |

3/4/2023  6:29 PM

GSCCCA.org - Image Index

DEED B: 60456 P: 00315 02/28/2023 11:55 AM
23D011573 Page 5 of 10

Exhibit "A"

## LIMITED POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS, that the undersigned, **THE BANK OF NEW YORK MELLON, f/k/a THE BANK OF NEW YORK**, successor in interest to **JPMorgan Chase Bank, N.A., as Indenture Trustee**, having its office at 240 Greenwich Street, New York, NY, 10286 (the "Bank"), hereby appoints **Specialized Loan Servicing LLC**, having its address at 6200 S. Quebec Street Greenwood Village, CO 80111, to be the Bank's true and lawful Attorney-in-Fact (the "Attorney") to act in the name, and on behalf, of the Bank with power to do only the following in connection with those certain Trusts listed on **Schedule A** on behalf of the Bank:

1       The modification or re-recording of a Mortgage or Deed of Trust, where said modification or re-recordings is for the purpose of correcting the Mortgage or Deed of Trust to conform same to the original intent of the parties thereto or to correct title errors discovered after such title insurance was issued and said modification or re- recording, in either instance, does not adversely affect the lien of the Mortgage as insured.

2.      The subordination of the lien of a Mortgage or Deed of Trust to an easement in favor of a public utility company of a government agency or unit with powers of eminent domain; this section shall include, without limitation, the execution of partial satisfactions/releases, partial reconveyances or the execution or requests to trustees to accomplish same.

3.      The conveyance of the properties to the mortgage insurer, or the closing of the title to the property to be acquired as real estate owned, or conveyance of title to real estate owned.

4       The completion of loan assumption agreements and modification agreements.

5.      The full or partial satisfaction release of a Mortgage or Deed of Trust or full conveyance upon payment and discharge of all sums secured thereby, including, without limitation, cancellation of the related Mortgage Note.

6.      The assignment of any Mortgage or Deed of Trust and the related Mortgage Note, in connection with the repurchase of the mortgage loan secured and evidenced thereby.

7.      The full assignment of a Mortgage or Deed of Trust upon payment and discharge of all sums secured thereby in conjunction with the refinancing thereof, including, without limitation, the assignment of the related Mortgage Note.

8.      With respect to a Mortgage or Deed of Trust, the foreclosure, the taking of a deed in lieu of foreclosure or the completion of judicial or non-judicial foreclosure or termination, cancellation or rescission of termination, cancellation or rescission of any such foreclosure, including, without limitation, any and all of the following acts:

a.      the substitution of trustee(s) serving under a Deed of Trust, in accordance with state law and the Deed of Trust;

b.      the preparation and issuance of statements of breach or non-performance;

c.      the preparation and filing of notices of default and/or notices of sale;

d.      the cancellation/rescission of notices of default and/or notices of sale;

GSCCCA.org - Image Index

DEED B: 60456 P: 00316  02/28/2023 11:55 AM
23D011573  Page 6 of 10

e.  the taking of a deed in lieu of foreclosure; and

f.  the preparation and execution of such other documents and performance of such other actions as may be necessary under the terms of the Mortgage, Deed of Trust or state law to expeditiously complete said transactions in paragraphs 8 a. through 8 e., above; and

9.  To execute and deliver estate-related documents (i.e. petition applications, affidavits) for the purpose of seeking the appointment of a fiduciary for the estate of the deceased borrower(s); and

10.  To execute any other documents referred to in the above-mentioned documents or that are ancillary or related thereto or contemplated by the provisions thereof; and

11.  To do all things necessary or expedient to give effect to the aforesaid documents including, but not limited to, completing any blanks therein, making any amendments, alterations and additions thereto, to endorse which may be considered necessary by the Attorney, to endorse on behalf of the Trustee all checks, drafts and/or negotiable instruments made payable to the Trustee in respect of the documents, and executing such other documents as may be considered by the Attorney necessary for such purposes.

The relationship of the Bank and the Attorney under this Power of Attorney is intended by the parties to be that of an independent contractor and not that of a joint venturer, partner or agent.

**This Power of Attorney is effective for one (1) year from the date hereof or the earlier** of (i) revocation by the Bank, (ii) the Attorney shall no longer be retained on behalf of the Bank or an affiliate of the Bank; or (iii) the expiration of one year from the date of execution.

The authority granted to the attorney-in-fact by the Power of Attorney is not transferable to any other party or entity.

This Power of Attorney shall be governed by, and construed in accordance with, the laws of the State of New York without regard to its conflicts of law principles.

All actions heretofore taken by said Attorney, which the Attorney could properly have taken pursuant to this Power of Attorney, be, and hereby are, ratified and affirmed.

[Signature page follows]

3 9 2023 6 29 PM

GSCCCA.org - Image Index

DEED B: 60456 P: 00317 02/28/2023 11:55 AM
23D011573 Page 7 of 10

IN WITNESS WHEREOF, The Bank of New York Mellon, f/k/a The Bank of New York, successor in interest to JPMorgan Chase Bank, N.A., as Indenture Trustee, pursuant to the applicable sale relating to the Trusts listed on Schedule A attached hereto and these present to be signed and acknowledged in its name and behalf by Gerard F. Facendola, its duly elected and authorized Director and Philip Reinle, its duly elected and authorized Vice President this 17th day of May, 2022.

THE BANK OF NEW YORK MELLON, f/k/a THE BANK OF NEW YORK, successor in interest to JPMorgan Chase Bank, N.A., as Indenture Trustee

By: _____
Name: Gerard F. Facendola
Title:  Director

By: _____
Name: Philip Reinle
Title:  Vice President

Witness: _____
Name: Scott Uitterdijk

Witness: _____
Name: Edward Cofie

## ACKNOWLEDGEMENT

STATE OF NEW YORK          )
                           )
COUNTY OF NEW YORK         )

On the 17th day of May 2022 before me, the undersigned, personally appeared Gerard F. Facendola and Philip Reinle known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose names are subscribed to the within instrument and acknowledged to me that they executed the same in their capacities, and that by their signatures on the instrument, the individuals, or the person upon behalf of which the individuals acted, executed the instrument.

IN WITNESS THEREOF, I have hereunto set my hand and affixed by official seal the day and year in this certificate first above written

_____
Notary Public

My Commission Expires: _____

ALEXANDER TITUS YORKE
NOTARY PUBLIC, STATE OF NEW YORK
NO. 01YO6...
QUALIFIED IN KING... COUNTY
MY COMMISSION EXPIRES...

GSCCCA.org - Image Index

DEED B: 60456 P: 00318 02/28/2023 11:55 AM
23D011573 Page 8 of 10

## SCHEDULE A

| IC# | TRUST |
|---|---|
| 127, 128, 5946 & 5973 | The Bank of New York Mellon, f/k/a The Bank of New York, successor in interest to JPMorgan Chase Bank N.A. as Indenture Trustee on behalf of the Holders of Terwin Mortgage Trust 2005-9HGS, Asset-Backed Securities, TMTS Series 2005-9HGS |
| 141, 142, 5947, & 5960 | The Bank of New York Mellon, f/k/a The Bank of New York, successor in interest to JPMorgan Chase Bank N.A. as Indenture Trustee, on behalf of the holders of the Terwin Mortgage Trust 2006-2HGS, Asset-backed Securities, Series 2006-2HGS |
| 143, 144, 5950, & 5970 | The Bank of New York Mellon, f/k/a The Bank of New York, successor in interest to JPMorgan Chase Bank N. A. as Indenture Trustee, on behalf of the holders of the Terwin Mortgage Trust 2006-HF-I, Asset-backed Securities, Series 2006-HF-I |
| 146, 147, & 5945 | The Bank of New York Mellon, f/k/a The Bank of New York, successor in interest to JPMorgan Chase Bank N. A. as Indenture Trustee, on behalf of the holders of the Terwin Mortgage Trust 2006-4SL, Asset-Backed Securities, Series 2006-4SL |
| 149, 150, 649, 5941, & 5956 | The Bank of New York Mellon f/k/a The Bank of New York, successor in interest to JPMorgan Chase Bank, N.A. as Indenture Trustee, on behalf of the holders of the Terwin Mortgage Trust 2006-6, Asset-Backed Securities, Series 2006-6 |

3/9/2023  6:29 PM

GSCCCA org - Image Index

## Exhibit A

| Investor Code | Investor Code Name | Deal Language |
|---|---|---|
| 127 | TMTS 2005 - 9HGS | The Bank of New York Mellon, f/k/a The Bank of New York, as successor to JPMorgan Chase Bank N. A. as Indenture Trustee on behalf of the Holders of Terwin Mortgage Trust 2005-9HGS, Asset-Backed Securities, TMTS Series 2005-9HGS |
| 128 | TMTS 2005 - 9HGS HELOC | The Bank of New York Mellon, f/k/a The Bank of New York, as successor to JPMorgan Chase Bank N. A. as Indenture Trustee on behalf of the Holders of Terwin Mortgage Trust 2005-9HGS, Asset-Backed Securities, TMTS Series 2005-9HGS |
| 141 | TMTS 2006 - 2HGS | The Bank of New York Mellon, f/k/a The Bank of New York, as successor to JPMorgan Chase Bank N. A. as Indenture Trustee, on behalf of the holders of the Terwin Mortgage Trust 2006-2HGS, Asset-backed Securities, Series 2006-2HGS |
| 142 | TMTS 2006 - 2HGS HELOC | The Bank of New York Mellon, f/k/a The Bank of New York, as successor to JPMorgan Chase Bank N. A. as Indenture Trustee , on behalf of the holders of the Terwin Mortgage Trust 2006-2HGS, Asset-backed Securities, Series 2006-2HGS |
| 143 | TMTS 2006 - HF1 | The Bank of New York Mellon, f/k/a The Bank of New York, as successor to JPMorgan Chase Bank N. A. as Indenture Trustee  on behalf of the holders of the Terwin Mortgage Trust 2006-HF1, Asset-backed Securities, Series 2006-HF1 |
| 144 | TMTS 2006 - HF1 HELOC | The Bank of New York Mellon, f/k/a The Bank of New York, as successor to JPMorgan Chase Bank N. A. as Indenture Trustee , on behalf of the holders of the Terwin Mortgage Trust 2006-HF-I, Asset-backed Securities, Series 2006-HF-I |
| 146 | TMTS 2006 - 4SL | The Bank of New York Mellon, f/k/a The Bank of New York, as successor to JPMorgan Chase Bank N. A. as Indenture Trustee , on behalf of the holders of the Terwin Mortgage Trust 2006-4SL, Asset-Backed Securities, Series 2006-4SL |
| 147 | TMTS 2006 - 4SL HELOC | The Bank of New York Mellon, f/k/a The Bank of New York, as successor to JPMorgan Chase Bank N. A. as Indenture Trustee , on behalf of the holders of the Terwin Mortgage Trust 2006-4SL, Asset-Backed Securities, Series 2006-4SL |
| 149 | TMTS 2006 - 6 CES | The Bank of New York Mellon f/k/a The Bank of New York, as successor to JPMorgan Chase Bank, N.A. as Indenture Trustee, on behalf of the holders of the Terwin Mortgage Trust 2006-6, Asset-Backed Securities, Series 2006-6 |
| 150 | TMTS 2006 - 6 HELOC | The Bank of New York Mellon f/k/a The Bank of New York, as successor to JPMorgan Chase Bank, N.A. as Indenture Trustee, on behalf of the holders of the Terwin Mortgage Trust 2006-6, Asset-Backed Securities, Series 2006-6 |
| 649 | TMTS 2006-6 (DSI) | The Bank of New York Mellon f/k/a The Bank of New York, as successor to JPMorgan Chase Bank, N.A. as Indenture Trustee, on behalf of the holders of the Terwin Mortgage Trust 2006-6, Asset-Backed Securities, Series 2006-6 |
| 5941 | TMTS 2006 - 6 HELOC | The Bank of New York Mellon f/k/a The Bank of New York, as successor to JPMorgan Chase Bank, N.A. as Indenture Trustee, on behalf of the holders of the Terwin Mortgage Trust 2006-6, Asset-Backed Securities, Series 2006-6 |
| 5945 | TMTS 2006 - 4SL HELOC | The Bank of New York Mellon, f/k/a The Bank of New York, as successor to JPMorgan Chase Bank N. A. as Indenture Trustee  on behalf of the holders of the Terwin Mortgage Trust 2006-4SL, Asset-Backed Securities, Series 2006-4SL |
| 5946 | TMTS 2005 - 9HGS HELOC | The Bank of New York Mellon, f/k/a The Bank of New York, as successor to JPMorgan Chase Bank N. A. as Indenture Trustee on behalf of the Holders of Terwin Mortgage Trust 2005-9HGS, Asset-Backed Securities, TMTS Series 2005-9HGS |
| 5947 | TMTS 2006 - 2HGS HELOC | The Bank of New York Mellon, f/k/a The Bank of New York, as successor to JPMorgan Chase Bank N. A. as Indenture Trustee , on behalf of the holders of the Terwin Mortgage Trust 2006-2HGS, Asset-backed Securities, Series 2006-2HGS |
| 5950 | TMTS 2006 - HF1 HELOC | The Bank of New York Mellon, f/k/a The Bank of New York, as successor to JPMorgan Chase Bank N. A. as Indenture Trustee  on |

GSCCCA.org - Image Index

https://search.gsccca.org/imaging/HTML5Viewer.aspx?id=83104...

DEED B: 60456 P: 00320 02/28/2023 11:55 AM
23D011573 Page 10 of 10

| | | |
|---|---|---|
| | | behalf of the holders of the Terwin Mortgage Trust 2006-HF-I, Asset-backed Securities, Series 2006-HF-I |
| 5956 | TMTS 2006 - 6 CES | The Bank of New York Mellon f/k/a The Bank of New York, as successor to JPMorgan Chase Bank, N.A. as Indenture Trustee, on behalf of the holders of the Terwin Mortgage Trust 2006-6, Asset-Backed Securities, Series 2006-6 |
| 5960 | TMTS 2006 - 2HGS | The Bank of New York Mellon, f/k/a The Bank of New York, as successor to JPMorgan Chase Bank N. A. as Indenture Trustee, on behalf of the holders of the Terwin Mortgage Trust 2006-2HGS, Asset-backed Securities, Series 2006-2HGS |
| 5970 | TMTS 2006 - HF1 | The Bank of New York Mellon, f/k/a The Bank of New York, as successor to JPMorgan Chase Bank N. A. as Indenture Trustee , on behalf of the holders of the Terwin Mortgage Trust 2006-HF1, Asset-backed Securities, Series 2006-HF1 |
| 5973 | TMTS 2005 - 9HGS | The Bank of New York Mellon, f/k/a The Bank of New York, as successor to JPMorgan Chase Bank N. A. as Indenture Trustee on behalf of the Holders of Terwin Mortgage Trust 2005-9HGS, Asset-Backed Securities, TMTS Series 2005-9HGS |

Fulton County Superior Court
***EFILED***T\
Date: 3/13/2023 12:00 AM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| ADEYEMO AROMOLARAN, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | 2023CV377321 |
| vs. | ) | Case No.: _____ |
| | ) | |
| THE BANK OF NEW YORK MELLON, | ) | |
| | ) | |
| F/K/A THE BANK OF NEW YORK, | ) | |
| | ) | |
| SUCCESSOR TO JPMORGAN CHASE | ) | |
| | ) | |
| BANK N.A., AS INDENTURE TRUSTEE, | ) | |
| | ) | |
| ON BEHALF OF THE HOLDERS OF THE | ) | |
| | ) | |
| TERWIN MORTGAGE TRUST 2006-HF1, | ) | |
| | ) | |
| ASSET-BACKED SECURITIES, SERIES | ) | |
| | ) | |
| 2006-HF1, SPECIALIZED LOAN | ) | |
| | ) | |
| SERVICING LLC AND REALISTRY | ) | |
| | ) | |
| ACQUISITIONS, LLC, | ) | |
| | ) | |
| **Defendants** | ) | |

## CERTIFICATION

The undersigned hereby certifies to the Court that he is the attorney for the Plaintiff in the above-styled action and that this Certification is given pursuant to O.C.G.A. §9-11-65(b). The attorney further certifies that the following efforts were made to give Defendants notice of this Complaint for Wrongful Foreclosure, Temporary Restraining Order and Interlocutory Injunction:

1.    On March 9, 2023 the undersigned called Collins Brown, Registered Agent for Realistry Acquisitions, LLC at his law firm and left a voice-message. On March 10,

Page - 1

The Bailey Firm, LLC
506 Roswell Street
Building 200, Suite 230
Marietta, GA 30060
770-293-1214
Facsimile 770-293-1216
tim@baileyfirmllc.net

2023 the undersigned spoke with Daniel Greene, attorney for Realistry Acquisitions, LLC and advised him that Plaintiff would be filing this Complaint for Temporary Restraining Order.

2.      On March 9, 2023 the undersigned called Defendant Specialized Loan Servicing LLC at the phone number on their website and spoke with "Gabby." The undersigned explained the reason for the call, but "Gabby" refused to provide the name of its Registered Agent.

3.      On March 9, 2023 the undersigned called McCalla Raymer Leibert Pierce, LLC at the main phone number and left a voice-message for Foreclosure Team 7. No one responded. On March 10, 2023 in the morning the undersigned called McCalla Raymer Leibert Pierce, LLC and spoke with the receptionist who advised the undersigned that Kimberly Wright was in charge of the file. The undersigned left a voice message. Later, at approximately 3:00 p.m. of the same day the undersigned called McCalla Raymer Leibert Pierce, LLC again and asked the receptionist for Kimberly Wright. The receptionist advised the undersigned that Ms. Wright was gone for the day and would return Monday morning, and that no one else in the firm could speak with the undersigned about the file. The undersigned emailed Ms. Wright on March 10, 2023 advising her of the Complaint for Wrongful Foreclosure, Temporary Restraining Order and Interlocutory Injunction to be filed.

The Bailey Firm, LLC
506 Roswell Street
Building 200, Suite 230
Marietta, GA 30060
770-293-1214
Facsimile 770-293-1216
tim@thebaileyfirmllc.net

This _12_ day of March, 2023.

Timothy W. Bailey, Esq.
GA Bar No. 032275
Attorney for Plaintiff

The Bailey Firm, LLC
506 Roswell Street
Suite 230
Marietta, GA 30060
T:  770-293-1214
F:  770-293-1216
tim@baileyfirmllc.net

The Bailey Firm, LLC
506 Roswell Street
Building 200, Suite 230
Marietta, GA 30060
770-293-1214
Facsimile 770-293-1216
tim@baileyfirmllc.net

MAR 2 4 2023

# IN THE SUPERIOR COURT OF FULTON COUNTY, GEORGIA
### 136 PRYOR STREET, ROOM C-103, ATLANTA, GEORGIA 30303
### SUMMONS

|  |  |
|---|---|
| _____ | ) Case |
|  | ) No.: _____ 2023CV377321 |
|  | ) |
| _____ | ) |
| **Plaintiff,** | ) |
|  | ) |
| **vs.** | ) |
|  | ) |
| _____ | ) |
|  | ) |
| _____ | ) |
| **Defendant** | ) |
|  | ) |
|  | ) |
|  | ) |

TO THE ABOVE NAMED DEFENDANT(S):

You are hereby summoned and required to file electronically with the Clerk of said Court at https://efilega.tylerhost.net/ofsweb (unless you are exempt from filing electronically) and serve upon plaintiff's attorney, whose name and address is:

An answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service; unless proof of service of this complaint is not filed within five (5) business days of such service. Then time to answer shall not commence until such proof of service has been filed. **IF YOU FAIL TO DO SO, JUDGMENT BY DEFAULT WILL BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

This_____3/13/2023_____day of_____, 20_____

Honorable Cathelene "Tina" Robinson
Clerk of Superior Court
By_____
                    Deputy Clerk

To defendant upon whom this petition is served:
This copy of complaint and summons was served upon you _____, 20_____

Deputy Sherriff

**Instructions: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum is used**

Fulton County Superior Cour
***EFILED***TV
Date: 3/13/2023 12:00 AM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY, GEORGIA
### 136 PRYOR STREET, ROOM C-103, ATLANTA, GEORGIA 30303
**SUMMONS**

**ADEYEMO AROMOLARAN**

) Case
) No.:   2023CV377321
)
)
)
**Plaintiff,**                                )
)
**vs.**                                        )
Specialized Loan Servicing LLC              )
)
)
**Defendant**                               )
)
)
)
)

TO THE ABOVE NAMED DEFENDANT(S):

You are hereby summoned and required to file electronically with the Clerk of said Court at
https://efilega.tylerhost.net/ofsweb (unless you are exempt from filing electronically) and serve upon
plaintiff's attorney, whose name and address is:

The Bailey Firm, LLC
506 Roswell Street, Suite 230
Marietta, Georgia  30060

An answer to the complaint which is herewith served upon you, within 30 days after service of this
summons upon you, exclusive of the day of service; unless proof of service of this complaint is not filed
within five (5) business days of such service. Then time to answer shall not commence until such proof of
service has been filed. **IF YOU FAIL TO DO SO, JUDGMENT BY DEFAULT WILL BE TAKEN
AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

This _____3/13/2023_____ day of _____, 20 _____

Honorable Cathelene "Tina" Robinson
Clerk of Superior Court
By _Tracey Vaughn_____
Deputy Clerk

To defendant upon whom this petition is served:
This copy of complaint and summons was served upon you _____, 20_____

Deputy Sherriff

Instructions: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum is used

Fulton County Superior Court
***EFILED***TV
Date: 3/13/2023 12:00 AM
Cathelene Robinson, Clerk

# IN THE SUPERIOR COURT OF FULTON COUNTY, GEORGIA

### 136 PRYOR STREET, ROOM C-103, ATLANTA, GEORGIA 30303

## SUMMONS

ADEYEMO AROMOLARAN

) Case
) No.:

2023CV377321

)
)

**Plaintiff,**

)
)
)

**vs.**

)
)

The Bank of New York Mellon, f/k/a The Bank of New York, Successor to JPMorgan Chase Bank N.A., as Indenture Trustee,

)
)
)

On Behalf of the Holders of the Terwin Mortgage Trust 2006-HF1, Asset-Backed Securities, Series 2006-HF1

)
)

**Defendant**

)
)
)
)
)

TO THE ABOVE NAMED DEFENDANT(S):

You are hereby summoned and required to file electronically with the Clerk of said Court at https://efilega.tylerhost.net/ofsweb (unless you are exempt from filing electronically) and serve upon plaintiff's attorney, whose name and address is:

The Bailey Firm, LLC
506 Roswell Street, Suite 230
Marietta, Georgia  30060

An answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service; unless proof of service of this complaint is not filed within five (5) business days of such service. Then time to answer shall not commence until such proof of service has been filed. **IF YOU FAIL TO DO SO, JUDGMENT BY DEFAULT WILL BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

This _____3/13/2023_____day of_____, 20 _____

Honorable Cathelene "Tina" Robinson
Clerk of Superior Court
By_____
                              Deputy Clerk

To defendant upon whom this petition is served:
This copy of complaint and summons was served upon you _____, 20_____

Deputy Sherriff

**Instructions: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum is used**

Fulton County Superior Court
***EFILED***MH
Date: 4/21/2023 5:14 PM
Cathelene Robinson, Clerk

**IN THE SUPERIOR COURT OF FULTON COUNTY**
**STATE OF GEORGIA**

| | |
|---|---|
| ADEYEMO AROMOLARAN, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   CASE NO.: <u>2023CV377321</u> |
| | ) |
| THE BANK OF NEW YORK MELLON, | ) |
| F/K/A THE BANK OF NEW YORK, | ) |
| SUCCESSOR TO JPMORGAN CHASE | )   **JURY TRIAL DEMANDED** |
| BANK N.A., AS INDENTURE TRUSTEE, | ) |
| ON BEHALF OF THE HOLDERS OF THE | ) |
| TERWIN MORTGAGE TRUST 2006-HF1, | ) |
| ASSET-BACKED SECURITIES, SERIES | ) |
| 2006-HF1, SPECIALIZED LOAN | ) |
| SERVICING LLC AND REALISTRY | ) |
| ACQUISITIONS, LLC, | ) |
| | ) |
|     Defendants. | ) |

## <u>DEFENDANT SPECIALIZED LOAN SERVICING LLC'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT FOR WRONGFUL FORECLOSURE, TEMPORARY RESTRAINING ORDER, AND INTERLOCUTORY INJUNCTION</u>

Specialized Loan Servicing, LLC ("**Defendant**" or "**SLS**"), by and through its undersigned counsel of record, serves its Answer and Affirmative Defenses to Plaintiff Adeyemo O. Aromolaran's Complaint for Wrongful Foreclosure, Temporary Restraining Order, and Interlocutory Injunction, showing this Honorable Court as follows:

### <u>FIRST DEFENSE</u>

Plaintiff's Complaint ("Complaint") fails to state a claim for which relief can be granted against SLS. The Complaint should, therefore, be dismissed.

### <u>SECOND DEFENSE</u>

No act or omission of SLS caused or contributed to any of Plaintiff's alleged injuries or damages.

1

## THIRD DEFENSE

The Complaint is barred because any damage sustained by Plaintiff was caused in whole or in part by the actions or inactions of Plaintiff or others, but not by the actions or inactions of Defendant SLS.

## FOURTH DEFENSE

The Complaint is barred because Plaintiff is not entitled to the relief requested, as the allowance of such relief would unjustly enrich Plaintiff.

## FIFTH DEFENSE

Defendant SLS is an improper party to this civil action, and therefore should never have been named as a defendant. Thompson-El v. Bank of Am., N.A., 327 Ga. App. 309, 759 S.E.2d 49 (2014).

## SIXTH DEFENSE

Plaintiff's alleged damages were caused by its own acts and/or omissions.

## SEVENTH DEFENSE

Plaintiff has expressly waived the claims in this action and/or is estopped from bringing the instant action and asserting the claims set forth in Plaintiff's Complaint.

## EIGTH DEFENSE

By way of further defense and responding specifically to each and every allegation of Plaintiff's Complaint, SLS states as follows:

1.

Defendant lacks information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1 of Plaintiff's Complaint, Defendant can neither admit nor deny the allegations set forth in Paragraph 1 of Plaintiff's Complaint.

2.

2

Defendant SLS admits that is a Foreign Limited Liability Company and principal place of business is 6200 S. Quebec Street, Suite 300, Greenwood Village, CO 80111. However, it may be served through its Registered Agent, United Agent Group, Inc., 2985 Gordy Parkway, 1st Floor, Marietta, GA, 30066. Defendant denies the remaining allegations set forth in Paragraph 2 of Plaintiff's Complaint.

3.

Defendant SLS lacks information sufficient to form a belief as to the truth of the allegations contained in Paragraph 3 of Plaintiff's Complaint, Defendant can neither admit nor deny the allegations set forth in Paragraph 3 of Plaintiff's Complaint.

4.

Defendant SLS denies the allegations set forth in Paragraph 4 of Plaintiff's Complaint.

5.

Defendant SLS denies the allegations set forth in Paragraph 5 of Plaintiff's Complaint.

6.

Defendant SLS lacks asserts the title to the Property dated July 31, 2001, and recorded in Deed Book 24208, Page 48, Gwinnett County, Georgia records may speak for itself. Otherwise, denied.

7.

Defendant SLS asserts the Security Deed, assignments and cancellations may speak for themselves. Otherwise, denied.

8.

Defendant SLS asserts the referenced Security Deed may speak for itself. Otherwise, denied.

**WRONGFUL FORESCLOSURE**

9.

Defendant SLS incorporates and restates each and every response to Paragraphs 1 to 8 of Plaintiff's Complaint as if fully stated here.

10.

Defendant SLS denies the allegations set forth in Paragraph 10 of Plaintiff's Complaint.

11.

Defendant SLS denies the allegations set forth in Paragraph 11 of Plaintiff's Complaint.

12.

Defendant SLS admits a foreclosure sale was held. Otherwise, denied.

13.

Defendant SLS asserts the Deed Under Power speaks for itself. Otherwise, denied.

14.

Defendant SLS denies the allegations set forth in Paragraph 14 of Plaintiff's Complaint.

15.

Defendant SLS denies the allegations set forth in Paragraph 15 of Plaintiff's Complaint.

16.

Defendant SLS assert the statute speaks for itself. To the extent, Paragraph 16 suggest any wrong doing by Defendant SLS it is denied.

17.

Defendant SLS denies the allegations set forth in Paragraph 17 of Plaintiff's Complaint.

18.

Defendant SLS denies the allegations set forth in Paragraph 18 of Plaintiff's Complaint.

4

19.

Defendant SLS denies the allegations set forth in Paragraph 19 of Plaintiff's Complaint.

Defendant SLS denies that Plaintiff is entitled to any of the forms of relief requested in the WHEREFORE paragraph immediately following Paragraph 19 of Plaintiff's Complaint, including Subparagraphs (a) through (e).

**<u>TEMPORARY RESTRAINING ORDER</u>**

20.

Defendant SLS incorporates and restates each and every response to Paragraphs 1 to 19 of Plaintiff's Complaint as if fully stated here.

21.

Paragraph 21 of Plaintiff's Complaint states legal conclusions that do not require a response from Defendant SLS. To the extent a response is required, Defendant denies the allegations contained in Paragraph 21 of Plaintiff's Complaint.

22.

Defendant SLS lacks information sufficient to form a belief as to the truth of the allegations contained in Paragraph 22 of Plaintiff's Complaint, Defendant can neither admit nor deny the allegations set forth in Paragraph 22 of Plaintiff's Complaint.

23.

Defendant SLS denies the allegations set forth in Paragraph 23 of Plaintiff's Complaint.

24.

Defendant SLS denies the allegations set forth in Paragraph 24 of Plaintiff's Complaint.

25.

Defendant SLS denies the allegations contained in Paragraph 25 of Plaintiff's Complaint.

26.

Defendant SLS denies the allegations set forth in Paragraph 26 of Plaintiff's Complaint.

27.

Defendant SLS denies the allegations set forth in Paragraph 27 of Plaintiff's Complaint.

28.

Defendant SLS denies the allegations set forth in Paragraph 28 of Plaintiff's Complaint.

29.

Defendant SLS asserts the cited authority speaks for itself. Otherwise, denied.

30.

Defendant SLS denies the allegations set forth in Paragraph 30 of Plaintiff's Complaint.

31.

Defendant SLS denies the allegations set forth in Paragraph 31 of Plaintiff's Complaint.


Defendant denies that Plaintiff is entitled to any of the forms of relief requested in the WHEREFORE paragraph immediately following Paragraph 31 of Plaintiff's Complaint, including subparagraphs (a) through (e) contained therein.

Any allegation not expressly admitted in the within Answer to Plaintiff's Complaint is hereby expressly denied.

WHEREFORE, Defendant, Specialized Loan Servicing, LLC. respectfully prays for the following:

A.      That Plaintiff's Complaint against Defendant be dismissed and discharged without any liability to Defendant;

B.      That all costs of the action be taxed against the Plaintiff;

C.      That Defendant be granted a trial by jury of twelve on all issues so triable, and

D.      For any and all other relief the Court deems just under the circumstances

Dated this <u>21st</u> day of April, 2023.

                                  **_/s/ Kenny Cantrell_**
                                  TODD M. LADOUCEUR
                                  Georgia Bar No.: 64051
                                  KENNETH R. CANTRELL III
                                  GEORGIA BAR NO.: 282431
                                  *Attorneys for Defendant, Specialized Loan Servicing, LLC*

GALLOWAY, JOHNSON, TOMPKINS, BURR & SMITH, P.L.C.
990 Hammond Drive, Suite 210
Atlanta, GA 30328
Telephone: (678) 951-1500
Facsimile:  (678) 951-1510
Email: tmlgaservice@gallowaylawfirm.com

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

|  |  |  |
|---|---|---|
| ADEYEMO  AROMOLARAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: <u>2023CV377321</u> |
| | ) | |
| THE BANK OF NEW YORK MELLON, | ) | |
| F/K/A THE BANK OF NEW YORK, | ) | |
| SUCCESSOR TO JPMORGAN CHASE | ) | |
| BANK N.A., AS INDENTURE TRUSTEE, | ) | |
| ON BEHALF OF THE HOLDERS OF THE | ) | |
| TERWIN MORTGAGE TRUST 2006-HF1, | ) | |
| ASSET-BACKED SECURITIES, SERIES | ) | |
| 2006-HF1, SPECIALIZED LOAN | ) | |
| SERVICING LLC AND REALISTRY | ) | |
| ACQUISITIONS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a true and correct copy of the within and foregoing ***Defendant Specialized Loan Servicing, LLC's Answer and Affirmative Defenses to Plaintiff's Complaint*** upon all parties to this matter by electronically filing same using the Court's Efile GA system, which will automatically notify all parties, to wit:

<div align="center">

Timothy W. Bailey
GA Bar No. 032275
The Bailey Firm, LLC
506 Roswell Street, Suite 230
Marietta, GA 30060
tim@baileyfirmllc.net
*Attorney for Plaintiff*

</div>

Dated this <u>21st</u> day of April, 2023.

<div align="right">

*/s/ Kenny Cantrell*
TODD M. LADOUCEUR
Georgia Bar No.: 64051
KENNETH R. CANTRELL III

</div>

<div align="center">8</div>

GEORGIA BAR NO.: 282431
*Attorneys for Defendant, Specialized Loan
Servicing, LLC*

GALLOWAY, JOHNSON, TOMPKINS, BURR & SMITH, P.L.C.
990 Hammond Drive, Suite 210
Atlanta, GA 30328
Telephone: (678) 951-1500
Facsimile:  (678) 951-1510
tmlgaservice@gallowaylawfirm.com

Fulton County Superior Court
***EFILED***MH
Date: 4/21/2023 5:14 PM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| ADEYEMO AROMOLARAN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CIVIL ACTION FILE |
| THE BANK OF NEW YORK | ) | NO.: 2023CV377321 |
| MELLON, F/K/A/ THE BANK OF | ) | |
| NEW YORK, SUCCESSOR TO | ) | |
| JPMORGAN CHASE BANK N.A., | ) | |
| AS INDENTURE TRUSTEE, ON | ) | |
| BEHALF OF THE HOLDERS OF | ) | |
| THE TERWIN MORTGAGE TRUST | ) | |
| 2006-HF1, ASSET-BACKED | ) | |
| SECURITIES, SERIES 2006-HF1, | ) | |
| SPECIALIZED LOAN SERVICING | ) | |
| LLC, AND REALISTRY | ) | |
| ACQUISTIONS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

### NOTICE OF FILING NOTICE OF REMOVAL

TO:   Clerk of Court and the Honorable Judges
of the Superior Court of Fulton County

**THE BAILEY FIRM, LLC**
Timothy W. Bailey, Esq.
Georgia Bar No.: 032275
506 Roswell Street
Marietta, GA 30060
T: 770-293-1214
F: 770-293-1216
Email: tim@baileyfirmllc.net
Attorney for Plaintiff

PLEASE TAKE NOTICE THAT Defendant, Specialized Loan Servicing, LLC has filed

the attached Notice of Removal of the above-captioned case with the United States District Court

for the Northern District of Georgia, Atlanta Division, on April 21, 2023.  The filing of the Notice

of Removal, together with the filing of this Notice with this Court, will serve to complete the full

removal of this case to federal court, precluding this Court from further proceedings in this action

unless and until this case is remanded.


Respectfully submitted,

*/s/Kenneth R. Cantrell*
Kenneth R. Cantrell, III
Georgia Bar No. 282431



GALLOWAY, JOHNSON, TOMPKINS, BURR & SMITH
A Professional Law Corporation
990 Hammond Drive, Suite 210
Atlanta, Georgia  30328
Telephone:     (678) 951-5100
Facsimile:     (678) 951-1510
Email: tmlgaservice@gallowayjohnson.com
**Attorney for Defendant, Specialized**
**Loan Servicing, LLC**

**IN THE SUPERIOR COURT OF FULTON COUNTY**
**STATE OF GEORGIA**

| | |
|---|---|
| ADEYEMO AROMOLARAN | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| THE BANK OF NEW YORK | ) |
| MELLON, F/K/A/ THE BANK OF | ) |
| NEW YORK, SUCCESSOR TO | ) |
| JPMORGAN CHASE BANK N.A., | ) |
| AS INDENTURE TRUSTEE, ON | ) |
| BEHALF OF THE HOLDERS OF | ) |
| THE TERWIN MORTGAGE TRUST | ) |
| 2006-HF1, ASSET-BACKED | ) |
| SECURITIES, SERIES 2006-HF1, | ) |
| SPECIALIZED LOAN SERVICING | ) |
| LLC, AND REALISTRY | ) |
| ACQUISTIONS, LLC, | ) |
| | ) |
| Defendants. | ) |

CIVIL ACTION FILE
NO.: 2023CV377321

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served upon all counsel of record by electronic mail and/or by depositing same in the United States Mail, properly addressed and postage prepaid, this 21st day of April, 2023, as follows:

**THE BAILEY FIRM, LLC**
Timothy W. Bailey, Esq.
Georgia Bar No.: 032275
506 Roswell Street
Marietta, GA 30060
T: 770-293-1214
F: 770-293-1216
Email: tim@baileyfirmllc.net
Attorney for Plaintiff

/s/ Kenneth R. Cantrell

_____
Kenneth R. Cantrell, III
Georgia Bar No.: 282431


GALLOWAY, JOHNSON, TOMPKINS, BURR & SMITH
A Professional Law Corporation
990 Hammond Drive, Suite 210
Atlanta, Georgia 30328
Telephone:      (678) 951-5100
Facsimile:      (678) 951-1510
Email: tmlgaservice@gallowayjohnson.com
**Attorney for Defendant, Specialized**
**Loan Servicing, LLC**