**<u>Exhibit C</u>**

## FORBEARANCE AGREEMENT

This **FORBEARANCE AGREEMENT** (this "Agreement") dated as of September 30, 2022 (the "Agreement Date") and effective as of the date that all conditions set forth in Section 10 hereof have been met in Lender's sole discretion (the "Effective Date") is by and among **1221 LOCUST LLC**, a Missouri limited liability company ("Locust"), **1221 LOCUST LEASE MANAGER LLC**, a Missouri limited liability company ("Locust Lease", and together with Locus, the "Borrowers"), **DEEPAK PATEL** ("D. Patel"), **PUSHPABEN PATEL** ("P. Patel"), **JORDAN HAAS** ("JOHass"), **JUNE HAAS** ("JUHaas"), **KUNAL MODY** ("K. Mody"), **CRYSTAL PATEL** ("C. Patel"), **RAMESH MODY** ("R. Mody"), and **SMITA MODY** ("S. Mody", and together with D. Patel, P. Patel, JOHaas, JUHass, K. Mody, C. Patel, and R. Mody, the "Guarantors" and Guarantors together with the Borrowers, the "Obligors"), **ACCESS POINT FINANCIAL, LLC**, a Delaware limited liability company (the "Lender"), and **1221 LOCUST INDIVIDUAL MEMBER,** LLC, a Missouri limited liability company (the "Pledgor").

## WITNESSETH:

**WHEREAS**, Borrowers and Lender are parties to that certain Loan Agreement dated June 28, 2019 (the "Original Loan Agreement"), as amended by that certain Loan Modification Agreement dated December 29, 2020 (the "Loan Modification" and together with the Original Loan Agreement, the "Loan Agreement"), pursuant to which Borrowers and Lender agreed to the loan transaction described therein (the "Loan");

**WHEREAS**, Borrower executed that certain Promissory Note dated June 28, 2019, in the original principal of $27,250,000.00 (the "Note");

**WHEREAS**, Borrowers executed in favor of Lender that certain Fee and Leasehold Deed of Trust and Security Agreement dated June 28, 2019, recorded in the Office of the Recorder of Deeds, City of St. Louis on July 11, 2019 in Book 07112019-0168, as amended by that certain Modification to Fee and Leasehold Deed of Trust and Security Agreement dated, December 29, 2020, recorded in the Office of the Recorder of Deeds, City of St. Louis on December 31, 2020 in Book 12312020-0070 (collectively, as amended and/or modified, the "Deed of Trust");

**WHEREAS**, Borrowers executed in favor of Lender that certain Assignment of Leases and Rents dated June 28, 2019, recorded in the Office of the Recorder of Deeds, City of St. Louis on July 11, 2019 in Book 07112019-0169 (the "ALR");

**WHEREAS**, Lender and Pledgor entered into that certain Pledge Agreement dated June 28, 2019 (the "Pledge Agreement");

**WHEREAS**, Guarantors executed in favor of Lender that certain Guaranty Agreement (the "Guaranty");

1

**WHEREAS**, Locust Lease, Lender and Signature Bank (the "Cash Management Bank") entered into (i) that certain Cash Management Agreement (Springing) dated on or about December 31, 2021 (the "CMA") and (ii) that certain Deposit Control Account Agreement (the "DACA", and together with the Loan Agreement, the Note, the Deed of Trust, the ALR, the Pledge Agreement, the Guaranty, the CMA and all other documents entered contemporaneously therewith, the "Loan Documents");

**WHEREAS**, Lender notified Cash Management Bank on or about February 16, 2022 that the commencement of a Cash Management Period commenced under the CMA;

**WHEREAS**, Obligors have notified Lender that Borrower's hotels do generate sufficient revenue for Borrowers to meet their obligations under the Loan Documents with respect to payments of required escrows, debt service and operating expenses;

**WHEREAS**, given the inability to generate sufficient revenue to pay required escrows, debt service and operating expenses, Borrowers have requested that Lender allow Borrowers to defer a certain portion of debt service payments and modify the provisions of the CMA to enable Borrowers to bring past-due accounts payable current and to otherwise stabilize the property and Lender is willing to do the same pursuant to the terms and conditions set forth herein;

**WHEREAS**, Borrowers acknowledge and agree that (i) they will be in default under the Loan Documents for failing to make the full debt service payments as required by the Loan Documents and (ii) are in default in the payment of indebtedness (other than the obligations to Lender) beyond the applicable grace period as required by Section 7.1(h) of the Deed of Trust (the "Existing Events of Default");

**WHEREAS**, Borrowers, Guarantors, and Lender each acknowledge that the terms of this Agreement reflect the parties' forbearance and is not a novation or extinguishment of, the Loan Agreement and the other Loan Documents and, except as expressly modified herein, all terms, conditions, rights and obligations as set out in the Loan Documents are hereby reaffirmed and shall otherwise remain in full force and effect as originally written and agreed.

## **AGREEMENT**:

For and in consideration of the mutual covenants and the fulfillment of the conditions set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

1.      Recitals.  The foregoing recitals are confirmed by Lender and Borrowers as true and correct and are incorporated herein by reference.  The recitals are a substantive, contractual part of this Agreement.

2.      Definitions.  Capitalized terms appearing herein and not otherwise defined shall have the meanings ascribed to such terms in the Loan Agreement, unless the context hereof shall otherwise require or provide.

3.      Forbearance.  Unless the Forbearance Period is sooner terminated as provided in Section 3(e) below, Lender hereby agrees to forbear from the exercise of any of the remedies

under the Loan Agreement, the other Loan Documents and/or applicable law in connection with the Existing Events of Default for a period (the "Forbearance Period") beginning effective as of the Effective Date through and including December 31, 2022 (the "Forbearance Termination Date"), subject to the terms and conditions set forth herein. Lender has no further commitment or obligation to make any further Loans or provide any further financing to Borrowers.

(a)  Forbearance Limited to Existing Events of Default. Lender's forbearance shall be limited solely to the exercise of remedies arising under the Loan Documents, applicable law or otherwise as a result of the Existing Events of Default, and Lender shall not be deemed to have waived any remedies with respect to any other existing breach or Default occurring thereunder during the Forbearance Period, or any breach of this Agreement. Lender represents that it does not have knowledge of any breach or Default under the Loan Documents as of the date hereof other than the Existing Events of Default.

(b)  No New Event of Default. During the Forbearance Period, there shall occur no Default under any Loan Document or this Agreement other than the Existing Events of Default, nor shall there be a breach or failure of any warranty, representation or covenant as described in this Agreement.

(c)  Notice Requirements Satisfied. Borrower acknowledges that all notice requirements set forth in the Loan Documents and imposed upon Lender in connection with the Existing Events of Default, and the exercise of its remedies therefor (together with all applicable cure and/or grace periods) have been satisfied (or shall be deemed to have been satisfied by this Agreement) without exception, and that upon the expiration or earlier termination of the Forbearance Period, Lender shall, with respect to the Existing Events of Default, have the full right and power to exercise all remedies granted to it thereunder.

(d)  Agreement in the Nature of Forbearance Only; Reservation of Rights. Borrower hereby acknowledges that Lender's obligations under this Agreement are in the nature of a conditional forbearance only, and that Lender has not made any agreement or commitment to modify or extend the Loan Documents except as set forth herein, and that, upon the termination of the Forbearance Period, Lender shall have the immediate right to exercise its remedies under the Loan Documents. In accordance with the terms of this Agreement, Lender hereby reserves all rights and remedies available to it.

(e)  Termination of the Forbearance Period. The Forbearance Period shall end on the first to occur of the following:

(i)  End of Forbearance Period. The occurrence of the Forbearance Termination Date.

(ii)  Breach. A breach by Borrower of any of the conditions, covenants, agreements, terms, representations and/or warranties set forth in this Agreement.

(iii)    New Default.   The occurrence of any Default under the Loan Documents notwithstanding any cure rights, other than the Existing Events of Default.

(iv)    Creditor Judgment and Enforcement Action.   The entry of a final judgment against Borrower or Pledgor in favor of any creditor(s) of Borrower in an amount in excess of $50,000, which judgment is not otherwise covered by insurance.

(v)    Bankruptcy.   A proceeding shall be commenced by or against Borrower or Pledgor seeking liquidation, reorganization, bankruptcy or other relief with respect to their debts under any Debtor Relief Law or seeking the appointment of a trustee, receiver, liquidator, custodian, or other similar official with respect to Borrower or any of its assets; provided, however, if the proceeding is in the nature of an "involuntary" bankruptcy case or a lawsuit or proceeding seeking the appointment of a trustee, receiver, liquidator or custodian over Borrower and/or its assets (any such proceeding, an "Involuntary Proceeding"), the Forbearance Period shall only be terminated as a result of such Involuntary Proceeding if such Involuntary Proceeding is not dismissed within forty-five (45) days after such Involuntary Proceeding is commenced.

(vi)    Proceeding by Borrower.   Borrower or Pledgor initiates any judicial, administrative or arbitration proceeding against Lender.

4.    Payments.

(a)    Beginning on October 1, 2022 and continuing on the first (1st) of each month during the Forbearance Period, and provided no Event of Default exists other than the Existing Events of Default, (i) the Modification Accrual Rate under the Loan Documents shall remain at fifteen percent (15.0%) per annum, and (ii) the Borrower shall pay to Lender interest only in arrears, payable at the rate of six percent (6.0%) per annum (the "Forbearance Payment Rate") on the unpaid principal balance outstanding under the Note.  The difference between interest accruing on the unpaid principal balance outstanding under the Note at the Modification Accrual Rate and the Forbearance Payment Rate (said difference hereinafter, the "Forbearance Deferred Accrued Interest") will be added monthly to the unpaid principal balance of the Note and will accrue interest at the same rate as the balance of the unpaid principal balance. The unpaid principal balance due and payable under the Note, including all Forbearance Deferred Accrued Interest, will be immediately due and payable on the Maturity Date, without notice or demand.

(b)    Upon termination of the Forbearance Period, Borrower shall resume making payments as set forth in Section II.A.4 of the Loan Modification.

5.    Amendments to Cash Management Agreement and Section 3(l) of the Loan Agreement.   Commencing on the Effective Date and continuing during the Forbearance Period only, Section 1(a) of the CMA and Section 3(l) of the Loan Agreement are amended to provide for payments from the Cash Management Account in the following order of priority:

(a)     First, the amount to be escrowed for property taxes as described in the Loan Documents;

(b)     Second, the amount to be escrowed for insurance as described in the Loan Documents;

(c)     Third, the amount for payment of unpaid interest owing pursuant to Section 4(a) of this Agreement;

(d)     Fourth, the amount for payment of Operating Expenses of the Property for the applicable period as set forth in a budget covering the cash flow forecast of receipts and disbursements anticipated to be received and paid for during the Forbearance Period, in form and substance acceptable to Lender (the "Forbearance Budget") attached hereto as **Exhibit A**;

(e)     Fifth, the amount necessary for partial or complete payment of the amounts set forth on the attached schedule attached hereto as **Exhibit B** (the "Accounts Payable Schedule");

(f)     Sixth, all remaining funds to be deposited into the Cash Collateral Reserve Account to be used for distributions on the next Payment Date.

6.     Amendment to Pledge Agreement.  Pledgor is the legal and beneficial owner of one hundred percent (100%) of the limited liability company membership interest (the "Lease Membership Interest") in Locust Lease.  As the owner of the Lease Membership Interest, Pledgor acknowledges that it benefits from the relief Lender is providing to Locust Lease in this Agreement.  As a condition to Lender entering into this Agreement, Lender requires that the Pledge Agreement be amended.  Accordingly, with Pledgor's consent, the Pledge Agreement is hereby by amended by deleting Section 2 in its entirety and replacing it with the following:

"**2.     Obligations Secured.**  This Agreement is made, and the pledge and security interest created hereby is granted to Access Point, to the secure the payment and performance of all obligations of Tenant to Access Point under the Note and Security Instrument."

7.     Guarantor Reaffirmations.  Guarantors hereby reaffirm all the terms and provisions of the Guaranty and agree that such Guaranty shall continue to be valid and enforceable until all liabilities of the Guarantors under the Guaranty have been paid in full.  Guarantors acknowledge that the Guaranty is a valid obligation of Guarantors, enforceable in accordance with its terms, without any counterclaim, defense or setoff.  Guarantors affirm that this Agreement shall in no manner affect the obligations of the Guarantors under the Guaranty.

8.     Continuing Obligations of Borrowers.  Lender's agreement to forbear from exercising any of its remedies as a result of the Existing Events of Default during the Forbearance Period shall be subject to and conditioned upon each of the following:

(a)     Borrowers shall (i) pay all amounts due pursuant to Sections 5(a) through (e) of this Agreement, whether through cash flow from the property or through an equity

5

investment, and (ii) have brought current any payables listed on the Accounts Payable Schedule that are over thirty (30) days past-due by no later than November 30, 2022, whether through cash flow from the property or through an equity investment, and (iii) shall provide evidence of (i) and (ii) to Lender by no later than November 30, 2022; and

(b)    on or before every other Monday (with the first such report due on the third Monday following the Effective Date), Borrowers shall provide a report to Lender detailing the actual cash receipts and disbursements for the prior two weeks compared to those forecasted in the Forbearance Budget for such two-week period.

9.    Remedies.  Upon termination of the Forbearance Period:

(a)    Lender's agreement to forbear shall terminate automatically without further act or action by Lender and Lender shall have the immediate right to exercise its rights and remedies under the Loan Documents, including the Guaranty, hereunder and/or applicable law or in equity;

(b)    Provided that Borrower does not provide to Lender within ten (10) days after termination of the Forbearance Period (i) proof of payment in full of all amounts on Accounts Payable Schedule and (ii) payment in full of all amounts of interest deferred for the months of October 2022, November 2022 and December 2022 hereunder compared to what would have otherwise been due under the Loan Modification, Lender may declare any or all of the indebtedness owed by Borrowers immediately due and payable without demand or notice;

(c)    Lender may take any steps in any bankruptcy case filed by or against Borrowers to protect Lender's rights, including without limitation Lender's rights as a secured creditor;

(d)    Provided that Borrower does not provide to Lender within ten (10) days after termination of the Forbearance Period (i) proof of payment in full of all amounts on Accounts Payable Schedule and (ii) payment in full of all amounts of interest deferred for the months of October 2022, November 2022 and December 2022 hereunder compared to what would have otherwise been due under the Loan Modification, Lender may exercise any and all rights to conduct a foreclosure sale and/or UCC sale of all or any portion of the collateral securing the indebtedness;

(e)    Provided that Borrower does not provide to Lender within ten (10) days after termination of the Forbearance Period (i) proof of payment in full of all amounts on Accounts Payable Schedule and (ii) payment in full of all amounts of interest deferred for the months of October 2022, November 2022 and December 2022 hereunder compared to what would have otherwise been due under the Loan Modification, Lender shall be entitled to the appointment of a receiver, as a matter of right for the properties that secure the loan, without notice or hearing, and without regard to the value of the property or solvency of Borrowers.  Borrowers consent to the appointment of such receiver, waive any and all defenses to such appointment, agree not to oppose or interfere with any application therefor by Lender and consents to the receiver not posting a bond; and

(f)     Lender shall be entitled to collect from Borrowers reasonable expenses, costs and fees, including Lender's actual attorneys' fees with respect or related to the Loan Documents or their enforcement and drafting and negotiation of this Agreement.

10.     <u>Conditions to Effectiveness</u>.  This Agreement shall not be effective until the following conditions precedent have been satisfied or waived:

(a)     Receipt by Lender of counterparts of this Agreement executed by Borrowers, Guarantors and Pledgor;

(b)     No Default (other than the Existing Events of Default) shall exist;

(c)     The representations and warranties set forth in the Loan Documents and in <u>Section 13</u> hereof shall be true and correct in all material respects, except to the extent already limited by materiality, in which case such representations and warranties shall be true and correct in all respects; and

(d)     Receipt by Lender of such other documents, instruments and certificates as reasonably requested by Lender.

Upon the satisfaction or waiver by Lender, in its sole and absolute discretion, of the conditions set forth in this <u>Section 10</u>, this Agreement shall be effective as of the Effective Date.

11.     <u>Conditions Subsequent to this Agreement</u>.  This Agreement is subject to the satisfaction of the following conditions subsequent by no later than October 10, 2022:

(a)     Receipt by Lender of updated financial statements from Guarantors, including current P&L statements and mortgage statements for each hotel asset, including any mezzanine, equipment or Pace loans or other debt on such properties;

(b)     Receipt by Lender of report detailing how any additional funding freed up as a result of the modifications herein will be applied to operating expenses and the amounts set forth on Accounts Payable Schedule;

(c)     Receipt by Lender of a full and detailed accounting of the approximately $514,000 in the OpEx Reserve funds received from Twain Community Partners III LLC (the "<u>Bridge Lender</u>") pursuant to that certain Bridge Loan Agreement between Locust and Bridge Lender dated December 29, 2020;

(d)     Receipt by Lender of information detailing the source of $750,000 in "Key Money" identified as a source of funds in Borrowers' projections, including information regarding receipt of the funds, how such funds were utilized;

(e)     Receipt by Lender of complete operating projections and budget for 2023;

(f)     Receipt by Lender of a report detailing the history of payments made by Locust Lease pursuant to the Lease dated June 28, 2019 between Locust and Locust Lease for the property located at 1221 Locust Street, St. Louis, Missouri;

(g)     Receipt by Lender of an updated sources and uses statement that incorporates all payables and a debt service reserve or capitalized debt service shortfall; and

(h)     Receipt by Lender of an update on the status of payment of the various historic tax credits from Borrowers' tax credit consultant.

12.     <u>Ratification of Loan Documents and Indebtedness</u>.  Borrowers, and Lender agree that the liens, assignments and security interests created by the Loan Documents shall continue and carry forward until all obligations under the Loan Documents are paid and performed in full. Borrowers further agree that such liens, assignments and security interests are hereby ratified and affirmed as valid and subsisting against the property described in the Loan Documents and that this Agreement shall in no manner vitiate, affect or impair the Loan Documents (except as expressly modified in this Agreement) and that such liens, assignments, and security interests shall not in any manner be waived, released, altered or modified.  Borrowers further agree that, as of September 29, 2022, the amount of not less than $23,900,698.58 is due and owing by Borrowers under the Loan Documents.  Borrowers acknowledge and agree that the obligations include, and Borrowers owe to Lender, all of Lender's reasonable expenses, costs and fees, including Lender's actual attorneys' fees actually incurred in the enforcement of the Loan Documents and drafting and negotiation of this Agreement.  The amounts owing under the Loan Documents as set forth herein shall not constitute or be deemed to constitute any waiver, release or impairment of any kind of the rights of Lender to recalculate the entire outstanding balance of the Loan Documents to include any and all other interest, charges, costs and fees, all of which rights are hereby expressly reserved.

13.     <u>Representations and Warranties</u>.  Borrowers hereby certify that, after giving effect to this Agreement:

(a)     Except as otherwise disclosed to Lender in writing or provided herein, the representations and warranties contained in the Loan Agreement or in any other Loan Document are true and correct in all material respects on and as of the Effective Date (except to the extent already limited by materiality, in which case such representations and warranties are true and correct in all respects), except to the extent that such representations and warranties specifically refer to an earlier date, in which case they are true and correct as of such earlier date;

(b)     this Agreement has been duly authorized, executed and delivered by Borrowers and constitutes a legal, valid and binding obligation of Borrowers, except as may be limited by general principles of equity or by the effect of any applicable Debtor Relief Law; and

(c)     other than the Existing Events of Default, no Default exists.

14.     <u>Scope of Agreement</u>.  Any and all other provisions of the Loan Agreements and any other Loan Documents are hereby amended and modified wherever necessary and even though not specifically addressed herein, so as to conform to the amendments and modifications set forth in this Agreement.

15. <u>Limitation on Agreements</u>.  The matters set forth herein are limited in scope as described herein and shall not be deemed (a) to be a consent under, or waiver of, any other term or condition of the Loan Agreement or any of the other Loan Documents, or (b) to prejudice any right or rights which Lender now has or may have in the future under, or in connection with the Loan Agreement, the other Loan Documents or any of the documents referred to herein or therein.

16. <u>Governing Law and Venue</u>.  This Agreement shall in all respects be governed by, and construed in accordance with, the laws of the State of Georgia.

17. <u>Headings</u>.  Section headings in this Agreement are included herein for convenience of reference only and shall not constitute a part of this Agreement for any other purpose.

18. <u>Loan Document</u>.  This Agreement is a Loan Document and is subject to all provisions of the Loan Agreements applicable to Loan Documents, all of which are incorporated in this Agreement by reference the same as if set forth in this Agreement verbatim.

19. <u>Enforceability</u>.  Should any one or more of the provisions of this Agreement be determined to be illegal or unenforceable as to one or more of the parties hereto, all other provisions nevertheless shall remain effective and binding on the parties hereto.

20. <u>No Novation</u>.  This Agreement is given as an amendment and modification of, and not as a payment of, the obligations of Borrowers under the Loan Agreement and the other Loan Documents and is not intended to constitute a novation of the Loan Agreement or any other Loan Document.  All of the indebtedness, liabilities and obligations owing by Borrowers under the Loan Agreement and the other Loan Documents shall continue.

21. <u>Successors and Assigns</u>.  This Agreement shall be binding upon and inure to the benefit of Borrowers, Lender, and each of their respective successors, assigns and legal representatives; <u>provided</u>, <u>however</u>, that Borrowers may not, without the prior consent of Lender, assign any rights, powers, duties or obligations hereunder.  Lender, may sell, transfer, or assign any of its rights hereunder or under any of the Loan Documents at any time without notice to or consent of Borrowers.

22. <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original (including electronic copies) but all of which together shall constitute one and the same instrument.  Facsimile or other electronic signatures hereto, including PDF of DocuSign, shall be effective as manually executed originals.

23. <u>Confidentiality</u>.  Borrowers shall not disclose the terms and conditions of this Agreement without the express written consent of Lender, which consent shall not unreasonably be withheld.  Notwithstanding the foregoing, Borrowers may disclose the terms and conditions of this Agreement to their attorneys, advisors, potential capital providers, potential "take out" lenders, and to any other Persons as required by law or legal process.  Lender and its attorneys and advisors are permitted to disclose information regarding Borrowers, the Loan Documents, and the terms and conditions of this Agreement in accordance with the terms of the Loan Agreement or in any legal proceeding.

24.    <u>Reaffirmation</u>.   Except as expressly modified, waived or released herein, by execution of this Agreement, Borrowers hereby reaffirm all of the terms and provisions of the Loan Documents and agree that such Loan Documents shall continue to be valid and enforceable until the obligations are paid in full and all liabilities of each Borrower under the Loan Documents have been satisfied.  Borrowers acknowledges that the Loan Documents constitute the valid obligations of Borrowers, enforceable in accordance with their respective terms, without any counterclaim, defense or setoff.

25.    <u>Waiver and Release</u>.  Obligors warrant and represent to Lender that the loans evidenced by the Loan Documents are not subject to any credits, charges, claims, or rights of offset or deduction of any kind or character whatsoever and, as a material part of the consideration for Lender and Lenders entering into this Agreement, each Obligor agrees as follows (the "<u>Release Provision</u>"):

(a)    EACH OBLIGOR HEREBY RELEASES AND FOREVER DISCHARGES LENDER, AND THEIR PREDECESSORS, SUCCESSORS, ASSIGNS, OFFICERS, MANAGERS, DIRECTORS, MEMBERS, SHAREHOLDERS, EMPLOYEES, AGENTS, ATTORNEYS, REPRESENTATIVES, PARENT CORPORATIONS, SUBSIDIARIES, AND AFFILIATES (HEREINAFTER ALL OF THE ABOVE COLLECTIVELY REFERRED TO AS "<u>RELEASED PARTIES</u>") JOINTLY AND SEVERALLY FROM ANY AND ALL CLAIMS, COUNTERCLAIMS, DEMANDS, DAMAGES, DEBTS, AGREEMENTS, COVENANTS, SUITS, CONTRACTS, OBLIGATIONS, LIABILITIES, ACCOUNTS, OFFSETS, RIGHTS, ACTIONS, AND CAUSES OF ACTION OF ANY NATURE WHATSOEVER OCCURRING PRIOR TO THE DATE HEREOF, INCLUDING, WITHOUT LIMITATION, ALL CLAIMS, DEMANDS, AND CAUSES OF ACTION FOR CONTRIBUTION AND INDEMNITY, WHETHER ARISING AT LAW OR IN EQUITY, PRESENTLY POSSESSED, WHETHER KNOWN OR UNKNOWN, WHETHER LIABILITY BE DIRECT OR INDIRECT, LIQUIDATED OR UNLIQUIDATED, PRESENTLY ACCRUED, WHETHER ABSOLUTE OR CONTINGENT, FORESEEN OR UNFORESEEN, AND WHETHER OR NOT HERETOFORE ASSERTED ("<u>CLAIMS</u>"), WHICH EACH OBLIGOR MAY HAVE OR CLAIM TO HAVE AGAINST ANY RELEASED PARTIES.

(b)    Each Obligor agrees not to sue any Released Parties or in any way assist any other Person in suing any Released Parties with respect to any Claim released herein. The Release Provision may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit, or other proceeding that may be instituted, prosecuted, or attempted in breach of the release contained herein.

(c)    Each Obligor acknowledges, warrants, and represents to Released Parties that:

(i)    Each Obligor has read and understands the effect of the Release Provision.  Each Obligor has had the assistance of independent counsel of its own choice, or has had the opportunity to retain such independent counsel, in reviewing, discussing, and considering all the terms of the Release Provision; and

10

if counsel was retained, counsel for each Obligor has read and considered the Release Provision and advised each Obligor to execute the same. Before execution of this Agreement, each Obligor has had adequate opportunity to make whatever investigation or inquiry it may deem necessary or desirable in connection with the subject matter of the Release Provision.

(ii)    Each Obligor is not acting in reliance on any representation, understanding, or agreement not expressly set forth herein. Each Obligor acknowledges that the Released Parties have not made any representation with respect to the Release Provision except as expressly set forth herein.

(iii)    Each Obligor has executed this Agreement and the Release Provision thereof as its free and voluntary act, without any duress, coercion, or undue influence exerted by or on behalf of any Person.

(iv)    Obligors are the sole owner of the Claims released by the Release Provision, and Borrowers have not heretofore conveyed or assigned any interest in any such Claims to any other Person.

(d)    Each Obligor understands that the Release Provision was a material consideration in the agreement of Lender and Lenders to enter into this Agreement.

(e)    It is the express intent of each Obligor that the release and discharge set forth in the Release Provision be construed as broadly as possible in favor of the Released Parties so as to foreclose forever the assertion by any Obligor of any claims released hereby against Released Parties.

(f)    If any term, provision, covenant, or condition of the Release Provision is held by a court of competent jurisdiction to be invalid, illegal, or unenforceable, the remainder of the provisions shall remain in full force and effect.

26.    <u>WAIVER OF JURY TRIAL</u>. TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, EACH OBLIGOR HEREBY IRREVOCABLY AND EXPRESSLY WAIVES ALL RIGHT TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM (WHETHER BASED UPON CONTRACT, TORT, OR OTHERWISE) ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY OF THE OTHER LOAN DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY OR THE ACTIONS OF LENDER IN THE NEGOTIATION, ADMINISTRATION, OR ENFORCEMENT HEREOF OR THEREOF. THIS PROVISION IS A MATERIAL INDUCEMENT FOR LENDER TO ENTER INTO THIS AGREEMENT. OBLIGORS AGREE THAT NO REPRESENTATIVE OR AGENT OF LENDER, NOR LENDER COUNSEL, HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT LENDER WOULD NOT SEEK TO ENFORCE THIS WAIVER OR RIGHT TO JURY TRIAL PROVISION IN THE EVENT OF LITIGATION. NO REPRESENTATIVE OR AGENT OF LENDERS, NOR LENDER'S COUNSEL, HAS THE AUTHORITY TO WAIVE, CONDITION OR MODIFY THIS PROVISION.

**THIS AGREEMENT, THE LOAN AGREEMENT AS AMENDED BY THIS AGREEMENT, AND THE OTHER LOAN DOCUMENTS AS AMENDED BY THIS AGREEMENT REPRESENT THE FINAL AGREEMENT AMONG THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.  THERE ARE NO UNWRITTEN ORAL AGREEMENTS AMONG THE PARTIES.**

*[Remainder of page intentionally left blank.  Signature pages follow.]*

IN WITNESS WHEREOF, the Borrower, the Pledgor, the Lender and the Lender have caused this Agreement to be executed as of the day and year first above written.

**BORROWERS:**

**1221 LOCUST LLC**, a Missouri limited liability company

By: 1221 Locust Managing Member, LLC, a Missouri limited liability company, its Managing Member

By: _____ [SEAL]
    Kunal Mody
    Manager

By: _____ [SEAL]
    Jordan Haas
    Manager

**1221 LOCUST LEASE MANAGER LLC**, a Missouri limited liability company

By: _____ [SEAL]
    Kunal Mody
    Manager

By: _____ [SEAL]
    Jordan Haas
    Manager

**PLEDGOR:**

**1221 LOCUST INDIVIDUAL MEMBER, LLC**, a Missouri limited liability company

By: _____ [SEAL]
    Kunal Mody
    Manager

By: _____ [SEAL]
    Jordan Haas
    Manager

[Signature Page to Forbearance Agreement]

IN WITNESS WHEREOF, the Borrower, the Pledgor, the Lender and the Lender have caused this Agreement to be executed as of the day and year first above written.

### BORROWERS:

**1221 LOCUST LLC**, a Missouri limited liability company

By: 1221 Locust Managing Member, LLC, a
    Missouri limited liability company, its
    Managing Member

By: _____ [SEAL]
    Kunal Mody
    Manager

By: _____ [SEAL]
    Jordan Haas
    Manager

**1221 LOCUST LEASE MANAGER LLC**, a
Missouri limited liability company

By: _____ [SEAL]
    Kunal Mody
    Manager

By: _____ [SEAL]
    Jordan Haas
    Manager

### PLEDGOR:

**1221 LOCUST INDIVIDUAL MEMBER,**
**LLC**, a Missouri limited liability company

By: _____ [SEAL]
    Kunal Mody
    Manager

By: _____ [SEAL]
    Jordan Haas
    Manager

GUARANTORS:

*Deepak V. Patel*

DEEPAK PATEL, an individual

*Pushpa D. Patel*

PUSHPABEN PATEL, an individual

_____

JORDAN HAAS, an individual

_____

JUNE HAAS, an individual

_____

KUNAL MODY, an individual

_____

CRYSTAL PATEL, an individual

_____

RAMESH MODY, an individual

_____

SMITA MODY, an individual

[SIGNATURES CONTINUE ON THE FOLLOWING PAGE]

[Signature Page to Forbearance Agreement]

**GUARANTORS**:

_____
**DEEPAK PATEL**, an individual


_____
**PUSHPABEN PATEL**, an individual

_____
**JORDAN HAAS**, an individual

_____
**JUNE HAAS**, an individual


_____
**KUNAL MODY**, an individual


_____
**CRYSTAL PATEL**, an individual


_____
**RAMESH MODY**, an individual


_____
**SMITA MODY**, an individual


[SIGNATURES CONTINUE ON THE FOLLOWING PAGE]


[Signature Page to Forbearance Agreement]

**GUARANTORS:**

_____
**DEEPAK PATEL**, an individual

_____
**PUSHPABEN PATEL**, an individual

_____
**JORDAN HAAS**, an individual

_____
**JUNE HAAS**, an individual

_____
**KUNAL MODY**, an individual

_____
**CRYSTAL PATEL**, an individual

_____
**RAMESH MODY**, an individual

_____
**SMITA MODY**, an individual

[SIGNATURES CONTINUE ON THE FOLLOWING PAGE]

[Signature Page to Forbearance Agreement]

**LENDER**:

**ACCESS POINT FINANCIAL, LLC**, a
Delaware limited liability company

By: _William E. Schachat_
Name: _William E. Schachat_
Title: _Managing Director_

## Exhibit A

**FORBEARANCE BUDGET**

Redacted

**Exhibit B**

**ACCOUNTS PAYABLE SCHEDULE**

Redacted

## AMENDMENT TO FORBEARANCE AGREEMENT

This **AMENDMENT TO FORBEARANCE AGREEMENT** (this "Amendment") dated as of October 6, 2022 (the "Amendment Date") is by and among **1221 LOCUST LLC**, a Missouri limited liability company ("Locust"), **1221 LOCUST LEASE MANAGER LLC**, a Missouri limited liability company ("Locust Lease", and together with Locus, the "Borrowers"), **DEEPAK PATEL** ("D. Patel"), **PUSHPABEN PATEL** ("P. Patel"), **JORDAN HAAS** ("JOHass"), **JUNE HAAS** ("JUHaas"), **KUNAL MODY** ("K. Mody"), **CRYSTAL PATEL** ("C. Patel"), **RAMESH MODY** ("R. Mody"), and **SMITA MODY** ("S. Mody", and together with D. Patel, P. Patel, JOHaas, JUHass, K. Mody, C. Patel, and R. Mody, the "Guarantors" and Guarantors together with the Borrowers, the "Obligors"), **ACCESS POINT FINANCIAL, LLC**, a Delaware limited liability company (the "Lender"), and **1221 LOCUST INDIVIDUAL MEMBER,** LLC, a Missouri limited liability company (the "Pledgor").

## WITNESSETH:

**WHEREAS**, Borrowers, Guarantors, Pledgor and Lender are parties to that certain Forbearance Agreement dated as of September 30, 2022 (the "Forbearance Agreement");

**WHEREAS**, pursuant to the Forbearance Agreement, the parties intended for Forbearance Payment Rate to be applied to amounts due from Borrowers in October 2022;

**WHEREAS**, the parties are entering into this Amendment to clarify the parties intentions;

**WHEREAS**, Borrowers, Guarantors, and Lender each acknowledge that the terms of this Amendment reflect an amendment to the parties' forbearance and is not a novation or extinguishment of, the Forbearance Agreement, Loan Agreement and the other Loan Documents and, except as expressly modified herein, all terms, conditions, rights and obligations as set out in the Forbearance Agreement and Loan Documents are hereby reaffirmed and shall otherwise remain in full force and effect as originally written and agreed.

## AGREEMENT:

For and in consideration of the mutual covenants and the fulfillment of the conditions set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

1.      Recitals.  The foregoing recitals are confirmed by Lender and Borrowers as true and correct and are incorporated herein by reference.  The recitals are a substantive, contractual part of this Amendment.

2.      Definitions.  Capitalized terms appearing herein and not otherwise defined shall have the meanings ascribed to such terms in the Forbearance Agreement or Loan Agreement, as applicable, unless the context hereof shall otherwise require or provide.

1

3.      Amendment to Section 4(a).  Section 4(a) of the Forbearance Agreement is hereby deleted in its entirety and simultaneously replaced with the following:

(a)    Retroactive to September 1, 2022 and continuing on the first (1st) of each month during the Forbearance Period, and provided no Event of Default exists other than the Existing Events of Default, (i) the Modification Accrual Rate under the Loan Documents shall remain at fifteen percent (15.0%) per annum, and (ii) the Borrower shall pay to Lender interest only in arrears, payable at the rate of six percent (6.0%) per annum (the "Forbearance Payment Rate") on the unpaid principal balance outstanding under the Note.  The difference between interest accruing on the unpaid principal balance outstanding under the Note at the Modification Accrual Rate and the Forbearance Payment Rate (said difference hereinafter, the "Forbearance Deferred Accrued Interest") will be added monthly to the unpaid principal balance of the Note and will accrue interest at the same rate as the balance of the unpaid principal balance. The unpaid principal balance due and payable under the Note, including all Forbearance Deferred Accrued Interest, will be immediately due and payable on the Maturity Date, without notice or demand.

4.      Conditions to Effectiveness.  This Amendment shall not be effective until the following conditions precedent have been satisfied or waived:

(a)      Receipt by Lender of counterparts of this Amendment executed by Borrowers, Guarantors and Pledgor;

5.      This Amendment is given as an amendment and modification of, and not as a payment of, the obligations of Borrower under the Forbearance Agreement, Loan Agreement and the other Loan Documents and is not intended to constitute a novation of the Forbearance Agreement, Loan Agreement or any other Loan Document.  All of the terms of the Forbearance Agreement are incorporated herein by reference.  All of the indebtedness, liabilities and obligations owing by Borrower under the Loan Agreement and the other Loan Documents shall continue.

**THIS AMENDMENT, THE FORBEARANCE AGREEMENT AS AMENDED BY THIS AMENDMENT, AND THE OTHER LOAN DOCUMENTS AS AMENDED BY THIS AMENDMENT REPRESENT THE FINAL AGREEMENT AMONG THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.  THERE ARE NO UNWRITTEN ORAL AGREEMENTS AMONG THE PARTIES.**

[SIGNATURES PAGES FOLLOW]

IN WITNESS WHEREOF, the Borrower, the Pledgor, the Lender and the Lender have caused this Amendment to be executed as of the day and year first above written.

**BORROWERS:**

**1221 LOCUST LLC**, a Missouri limited liability company

By: 1221 Locust Managing Member, LLC, a Missouri limited liability company, its Managing Member

By: _____ [SEAL]
    Kunal Mody
    Manager

By: _____ [SEAL]
    Jordan Haas
    Manager

**1221 LOCUST LEASE MANAGER LLC**, a Missouri limited liability company

By: _____ [SEAL]
    Kunal Mody
    Manager

By: _____ [SEAL]
    Jordan Haas
    Manager

**PLEDGOR:**

**1221 LOCUST INDIVIDUAL MEMBER, LLC**, a Missouri limited liability company

By: _____ [SEAL]
    Kunal Mody
    Manager

By: _____ [SEAL]
    Jordan Haas
    Manager

[Signature Page to Amendment to Forbearance Agreement]

IN WITNESS WHEREOF, the Borrower, the Pledgor, the Lender and the Lender have caused this Amendment to be executed as of the day and year first above written.

**BORROWERS:**

**1221 LOCUST LLC**, a Missouri limited liability company

By: 1221 Locust Managing Member, LLC, a Missouri limited liability company, its Managing Member

    By: _____ [SEAL]
         Kunal Mody
         Manager

    By: _____ [SEAL]
         Jordan Haas
         Manager

**1221 LOCUST LEASE MANAGER LLC**, a Missouri limited liability company

By: _____ [SEAL]
     Kunal Mody
     Manager

By: _____ [SEAL]
     Jordan Haas
     Manager

**PLEDGOR:**

**1221 LOCUST INDIVIDUAL MEMBER, LLC**, a Missouri limited liability company

By: _____ [SEAL]
     Kunal Mody
     Manager

By: _____ [SEAL]
     Jordan Haas
     Manager

[Signature Page to Amendment to Forbearance Agreement]

**GUARANTORS:**

*Deepak. V. Patel*

**DEEPAK PATEL**, an individual

*Pushpa D. Patel.*

**PUSHPABEN PATEL**, an individual

_____

**JORDAN HAAS**, an individual

_____

**JUNE HAAS**, an individual

_____

**KUNAL MODY**, an individual

_____

**CRYSTAL PATEL**, an individual

_____

**RAMESH MODY**, an individual

_____

**SMITA MODY**, an individual

[SIGNATURES CONTINUE ON THE FOLLOWING PAGE]

[Signature Page to Amendment to Forbearance Agreement]

**GUARANTORS:**

_____
**DEEPAK PATEL**, an individual

_____
**PUSHPABEN PATEL**, an individual

_____
**JORDAN HAAS**, an individual

_____
**JUNE HAAS**, an individual

_____
**KUNAL MODY**, an individual

_____
**CRYSTAL PATEL**, an individual

_____
**RAMESH MODY**, an individual

_____
**SMITA MODY**, an individual

[SIGNATURES CONTINUE ON THE FOLLOWING PAGE]

[Signature Page to Amendment to Forbearance Agreement]

**GUARANTORS:**

_____
**DEEPAK PATEL**, an individual


_____
**PUSHPABEN PATEL**, an individual


_____
**JORDAN HAAS**, an individual


_____
**JUNE HAAS**, an individual


_____
**KUNAL MODY**, an individual


_____
**CRYSTAL PATEL**, an individual


_____
**RAMESH MODY**, an individual


_____
**SMITA MODY**, an individual


**[SIGNATURES CONTINUE ON THE FOLLOWING PAGE]**


[Signature Page to Amendment to Forbearance Agreement]

**LENDER:**

**ACCESS POINT FINANCIAL, LLC,** a Delaware limited liability company

By: _____
Name: William E. Schacher
Title: Managing Director

[Signature Page to Amendment to Forbearance Agreement]