IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| STEVEVANUS RICHARDSON ) | |
| ) | |
| v. ) | Civ. No. _____ |
| ) | |
| ANTHONY BLINKEN, UNITED STATES ) | PETITION FOR WRIT OF |
| SECRETARY OF STATE; ) | HABEAS CORPUS |
| MERRICK GARLAND, UNITED STATES ) | PURSUANT TO |
| ATTORNEY GENERAL; ) | 28 U.S.C. § 2241 |
| THOMAS E. BROWN, UNITED STATES ) | |
| MARSHAL, NOTHERN DISTRICT ) | |
| OF GEORGIA; ) | Oral Argument Requested |
| BRICK TRIPP, WARDEN, ROBERT A. ) | |
| DEYTON DETENTION FACILITY. ) | |

**PETITION FOR WRIT OF HABEAS CORPUS
PURSUANT TO 28 U.S.C. § 2241**

Stevevanus Richardson submits the instant petition to appeal from the magistrate court's certification of extradition of Mr. Richardson to the Sint Maarten. *See In the Matter of the Extradition of Stevevanus Richardson*, 1:22-mj-804-JKL, Doc. 31 (N. D. Ga. April 14, 2023). For the reasons set forth below, the Court should reverse the magistrate court's decision and deny Mr. Richardson's extradition.

**I.     PARTIES**

Mr. Richardson is in federal custody at the Robert A. Deyton Detention Facility at 11866 Hastings Bridge Road, Lovejoy, Georgia 30250.

1

Anthony Blinken is the United States Secretary of State and a legal custodian of Mr. Richardson. His address is United States Department of State, 2201 C. Street N.W., Washington, D.C. 20520.

Merrick Garland is the United States Attorney General and a legal custodian of Mr. Richardson. His address is United States Department of Justice, 950 Pennsylvania Avenue N.W., Washington, D.C. 20530.

Thomas E. Brown is the United States Marshal for the Northern District of Georgia and is a legal custodian of Mr. Richardson. His address is 75 Ted Turner Drive S.W., Atlanta, Georgia 30303.

Brick Tripp is the Warden of the Robert A. Deyton Detention Facility and is a legal custodian of Mr. Richardson. His address is 11866 Hastings Bridge Road, Lovejoy, Georgia 30250.

## II.  JURISDICTION AND VENUE

This Court has jurisdiction under 28 U.S.C. § 2241, the habeas statute. It also has jurisdiction under 28 U.S.C. § 1331, which states that district courts have original jurisdiction over actions under treaties of the United States; Article I § 9, Clause 2 of the United States Constitution (the Suspension Clause); and common law.

Venue lies in the United States District Court of the Northern District of Georgia because Mr. Richardson is detained at the Robert A. Deyton Detention

Facility in Lovejoy, Georgia under the color of the authority of the United States, in violation of the constitution, laws, or treaties thereof. 28 U.S.C. §§ 1391, 2241.

### III. PROCEDURAL HISTORY

On August 12, 2022, the United States initiated an extradition proceeding against Mr. Richardson by filing a Complaint pursuant to 18 U.S.C. § 3184 and the extradition treaty (the "Treaty") between the United States and the Kingdom of the Netherlands (the "Netherlands"), which applies to Sint Maarten. (1:22-mj-181, Doc. 1). In the Complaint, the United States requested that the Court issue a warrant to arrest Richardson under Article 11 of the Treaty, which provides for the provisional arrest of a fugitive pending a formal request for extradition. *Id*. On that same day, an arrest warrant was issued for Richardson based on two Sint Maarten offenses that occurred on December 31, 2018 – (1) co-perpetrating the manslaughter of M. Gomez Lopez ("Victim 1"), in violation of Sint Maarten Criminal Code ("SMCC") Article 2:259; and (2) co-perpetrating the attempted manslaughter of W. James ("Victim 2"), in violation of SMCC Articles 1:119 and 2:259. *Id*. On September 8, 2022, the United States Marshals Service executed the warrant, arresting Richardson in the Northern District of Georgia.

On September 12, 2022, Richardson made an initial court appearance (1:22-mj- 804, Doc. 1), and the government filed a Memorandum of Extradition Law and Request for Detention Pending Extradition Proceedings (Doc. 4). On October 25,

2022, the Court issued an Order of Detention without prejudice. (Doc. 8) On November 10, 2022, Richardson filed a Motion to Terminate Provisional Arrest and Dismiss Case. (Doc. 9). The government subsequently filed a response and sur-reply at the direction of the Court to Richardson's Motion to Dismiss. (Doc. 14, 19).

The government filed a copy of the Netherlands' extradition request with the Court on December 9, 2022; the extradition request was submitted to the U.S. Department of State by diplomatic note dated October 31, 2022. (Doc 11-1). The request seeks Richardson's extradition on charges of manslaughter, attempted manslaughter, assault, and two firearms offenses, although the firearms offenses were not forwarded to the Court for consideration. (*See* Doc 11-1 at 2). On February 16, 2023, the magistrate court denied Richardson's Motion to Dismiss. (Doc. 21)

The magistrate court subsequently heard oral argument and accepted written argument by both parties regarding certification of extradition. (Docs. 20, 22, 25).

On April 14, 2023, the magistrate court issued an Extradition Certification and Order of Commitment, wherein the court certified Mr. Richardson's extradition to Sint Maarten. (Doc. 31)

Mr. Richardson has remained in custody at the Robert A. Deyton Detention Facility since the date of his arrest.

## IV. STATEMENT OF FACTS

### A. The Criminal Proceedings in Sint Maarten

On March 11, 2020, the Court of First Instance of Sint Maarten pronounced Mr. Richardson not guilty of manslaughter and attempted manslaughter related to shootings outside of a nightclub in Sint Maarten. (Doc. 22-3). The court examined evidence, heard testimony, and concluded that Mr. Richardson and his co-defendant Mr. Ottley's actions were taken in self-defense. (*Id.*).

The prosecutor appealed the not-guilty verdict. Unlike appellate courts in the United States, the intermediate appellate court in Sint Maarten may set aside a trial court's verdict and impose its own, which is what happened in Mr. Richardson's case. The appellate court disagreed with the trial court's finding of self-defense, found Mr. Richardson guilty of manslaughter and attempted manslaughter, and sentenced him, in absentia, to 18 years in custody. (Doc. 26-5, at 69-86). Mr. Richardson was traveling to the United States the day he was convicted and sentenced by the Sint Maarten appellate court. Following the order setting aside his not-guilty verdict, Mr. Richardson's attorneys in Sint Maarten appealed the decision to the Supreme Court in the Hague. This appeal is pending.

## B. Prison Conditions in Sint Maarten

Both the European Court of Human Rights and the Netherlands Institute for Human Rights have investigated the conditions in the jails and prisons in Sint Maarten and have concluded that they are not fit for housing human beings. *See Corallo v. The Netherlands* (No. 29593/17), Eur. Ct. H.R. (2018); Dept. for Execution of Judgments of the ECHR, Netherlands Institute for Human Rights, *Communication with regard to the execution of the judgment of the European Court of Human Rights in the case of Corallo v. The Netherlands*, Feb. 14, 2019, at 2 (NIHR Report). There are numerous issues with the prisons and jails in Sint Maarten. They are unsanitary, there is inadequate ventilation, detainees spend long hours in multi-person cells, and they lack access to medical attention, sunlight, protection from violence, and programing or educational resources. Corallo at ¶ 231. Indeed, the United States Department of State has recognized that "prison conditions in some detention centers on Sint Maarten . . . do not meet minimum international standards." U.S. Department of State, *2021 Country Reports on Human Rights Practices: Netherlands*, https://www.state.gov/reports/2021-countr-reports - on-human-rights-practices/netherlands/ (last visited Feb. 27, 2023 at 1:13 PM). These conditions worsened after Hurricanes Irma and Maria. NIHR Report at 2.

These issues are exacerbated, and caused in part, by the lack of space. Kim Hendriksen, *Prisoners: situation in Sint Maarten's prison still bad*, CARIBBEAN

NETWORK (Dec. 15, 2021), https://caribbeannetwork.ntr.nl/2021/12/15/prisoners-situation-in-sintmaartens-prison-still-bad. Point Blanche Prison, the main detention facility in Sint Maarten, has a maximum capacity of 80 males and 7 females. Sint Maarten Parliament, *Py22-23 Public Meeting #12*, at 1:30-1:33, YOUTUBE (Jan. 19, 2023), https://www.youtube.com/watch?v=R9nHMQvFwdo, at 1:31:53-1:32:09. Curiously, despite the impacts of hurricanes and seemingly worsening conditions, the capacity for male detainees at Point Blanche has increased from 70 to 80 over the last few years. *Id.* at 1:33:14-1:33:29. Because of this overcrowding, many people awaiting trial will be detained at police stations, where they are only supposed to be held for a maximum of ten days. *See* NIHR Report at 2; Hendriksen, *Prisoners: situation in Sint Maarten's prison still bad*.

The lack of capacity in the jails in prisons in Sint Maarten has also led to arbitrary detention. While some people awaiting trial are held at police station or Point Blanche prison, many others are released. There is no apparent reason for this disparate treatment. *Py22-23 Public Meeting #12*, at 1:32:26-1:33:12. Indeed, some people convicted by a trial court in Sint Maarten will be released, or a prison sentence will not be imposed "regardless of the offense . . . because an even somewhat human form of detention is no longer possible." NIHR Report at 3; *Py22-23 Public Meeting #12*, at 1:32:26-1:33:12. Indeed, someone in Mr.

7

Richardson's position—who was acquitted at the trial level and awaiting a final ruling form an appellate court—would not ordinally be brought into custody.

### C. The Netherlands Have Refused Extradition of People Based on Inhumane Conditions

Notably, judges in the Netherlands have refused extradition of people because of the "inhumane" conditions citing, the European convention on human rights. See, https://www.theguardian.com/world/2019/may/10/dutch-court-blocks-extradition-of-man-to-inhumane-uk-prisons, last accessed February 28, 2023. The Dutch Court noted:

> The situation is still not good and the letter of 24 April 2019 [from the director general of prisons] gives no assurance that the situation is now different from before. Nor is there a guarantee that the person claimed will not be placed in HMP Bedford, HMP Birmingham or HMP Liverpool after surrender.
> . . . .
> In these circumstances, the expectation that the situation will improve rapidly is not sufficient to assume that the real risk of inhumane treatment has actually disappeared. The already established real danger of inhuman or degrading treatment in these establishments has not been eliminated.

*Id.* The Netherlands does not comply with its own treaty obligations where, as here, the conditions of confinement would be inhumane or degrading.

### V.     LAWS AND REGULATIONS REGARING EXTRADITION

Extradition is governed by U.S.C. § 3184 *et seq*. Extradition hearings are generally conducted by magistrate courts. The magistrate judge then certifies, or

8

declines to certify, that the relator, or respondent, is extraditable under the statute and relevant treaty.

The magistrate court's decision to certify, or not to certify, is reviewable through a petition for writ of habeas corpus.

The Fifth Amendment guarantees that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. This amendment guarantees procedural due process as well as substantive due process.

## VI. CLAIMS FOR RELIEF

Mr. Richardson has been denied due process. In fulfilling Sint Maarten's request to extradite Mr. Richardson, the federal government is facilitating cruel and unusual punishment. Additionally, as Mr. Richardson was acquitted by the Court of First Instance, the federal government is permitting a violation of his right against double jeopardy. Moreover, because Mr. Richardson's conviction is on appeal, the extradition request was deficient, and the magistrate court lacked sufficient evidence to certify extradition. For these reasons, Mr. Richardson asks this Court to prohibit the United States from extraditing him and to order that he be released from custody.

### A. Extraditing Mr. Richardson is Tantamount to Imposing Cruel and Unusual Punishment

The prison conditions in Sint Maarten are inhumane, and amount to cruel and unusual punishment. Moreover, the way in which Sint Maarten and the

Netherlands choose who will serve a sentence in inhumane conditions and who will be released is arbitrary. By fulfilling this extradition request, the United States government is subjecting Mr. Richardson to cruel and unusual punishment without any due process. Though judicial review of a request for extradition is limited, this Court has noted that extradition is still "subject to the constraints of the Constitution," and the reviewing court must ensure that extradition would not run afoul of constitutional protections. *Martin v. Warden, Atlanta Pen*, 993 F.2d 824, 829 (11th Cir. 1993). Reason being, "[t]he constitutional rights of individuals, including the right to due process, are superior to the government's treaty obligations." *Id. See also Mironescu v. Costner*, 480 F.3d 664, 670 (4th Cir. 2007) ("[T]he Executive . . . lacks the discretion to extradite a fugitive when extradition would violate his constitutional rights."); *Ahmad v. Wigen*, 726 F. Supp. 389, 412 (E.D.N.Y. 1989), *aff'd*, 910 F.2d 1063 (2d Cir. 1990) ("[T]he courts are not, and cannot be, a rubber stamp for the other branches of government in the exercise of extradition jurisdiction.").

Substantive Due process requires that the government "protect or care for citizens in two situations: first, in custodial and other settings in which the state has limited the individuals' ability to care for themselves; and second, when the state affirmatively places a particular individual in a position of danger the individual would not otherwise have faced." *Gregory v. City of Rogers, Ark.*, 974

F.2d 1006, 1010 (8th Cir. 1992). In other words, the government cannot aid and abet the deprivation of someone's liberty by affirmatively placing them in harm's way. Taking steps to allow for cruel and unusual punishment, which would otherwise be prohibited by the Eighth Amendment, or arbitrary punishment generally, amounts to a violation of due process. *Gayle v. Meade*, No. 20-21553-CIV, 2020 WL 3041326, at *17 (S.D. Fla. June 6, 2020). *See Ahmad*, 726 F. Supp. 389, 412-15 (noting international standard that extradition should be refused based on "anticipation of torture, cruel conditions of incarceration or lack of due process").

 Mr. Richardson is presently in federal custody and is, therefore, at the will of the United States government. The government must protect Mr. Richardson's constitutional rights and, indeed, has a duty not to place Mr. Richardson in harm's way because it has taken him into custody and is holding him against his will. *See Santamorena v. Georgia Mil. Coll.*, 147 F.3d 1337, 1340 (11th Cir. 1998) (defining "special relationship" the state has with persons in custody). Because Mr. Richardson is in federal custody and has no control over whether he is extradited, whether he will be subject to the cruel and inhumane conditions in the prisons of Sint Maarten without any form of due process is entirely up to the federal government. The Court should not allow this decision to go unchecked. The federal government must work within the bounds of the constitution, as "[t]he constitutional rights of individuals, including the right to due process, are superior

to the government's treaty obligations." *Martin*, 993 F.2d at 829. Extraditing Mr. Richardson to Sint Maarten would violate due process and this Court should prohibit the United States government from doing so.

### B. The Second Prosecution of Mr. Richardson Violated his Fifth Amendment Right Against Double Jeopardy

The extradition treaty between the United States and Sint Maarten provides that "[e]xtradition shall not be granted when . . . the person sought is otherwise immune from prosecution for the offense for which extradition is requested by reason of the law in the Requested State relating to prior jeopardy." Article 5(b). Here, the requested state is the United States of America, and, of course, the Fifth Amendment to the United States Constitution protects a person's right to not be "put in jeopardy of life or limb" twice for the same offense.

The first appeal of Mr. Richardson's case, which resulted in a conviction, violated his right against double jeopardy. The Court of First Instance heard evidence, considered testimony, and ultimately found Mr. Richardson not guilty by reason of self-defense. On appeal, the intermediate appellate court did not simply find that the trial court erred, it set aside the not-guilty verdict and imposed its own guilty verdict. In essence, the appellate court held a second trial and convicted Mr. Richardson for an offense that he was previously acquitted of. This is repugnant to the laws of the United States and, pursuant to Article 5(b) of the

treaty, the government should not be permitted to extradite Mr. Richardson to Sint Maarten as doing so would violate his constitutional rights.

### C. The Netherland's Formal Extradition Request was Deficient

The Kingdom of the Netherlands failed to satisfy its obligations in submitting its formal extradition request, and so the request itself is deficient. Accordingly, the government should be prohibited from extraditing him and Mr. Richardson should be released. Pursuant to Article 11, Paragraph 4, of the Extradition Treaty, an individual's "[p]rovisional arrest shall be terminated if, within a period of 60 days after the apprehension of the person sought, the Requested State has not received the formal request for extradition *and the supporting documents mentioned in Article 9*." (emphasis added).

Article 9 outlines the documents that must be provided to the United States by the Kingdom of the Netherlands when requesting extradition pursuant to this treaty, which includes "if the convicted person [for whom extradition is sought] was sentenced, the request for extradition shall be accompanied by the original or certified copy of the sentence imposed, a statement that the sentence has final and binding effect and is enforceable and a statement showing to what extent the sentence has not been carried out." Although the Netherlands claims that Mr. Richardson's sentence is final, that statement is immediately contradicted by its acknowledgment that Mr. Richardson's case has been appealed and, therefore, is

13

still pending: "The defendant has filed an appeal in cassation as the Supreme Court in The Hague (Hoge Raad). The judgement as a whole is therefore not final yet." Mr. Richardson's sentence cannot be final while his judgement is not. Indeed, just as Mr. Richardson's initial acquittal was appealed and overturned, his current conviction and sentence are subject to his pending appeal and, therefore, are not final. As such, the Netherlands has not provided documentation showing that Mr. Richardson's sentence is final as required by the Treaty. Similarly, the Netherlands has not provided any documentation regarding "what extent the sentence has not been carried out." Therefore, the Netherlands has not complied with its Treaty obligations and this Court should prohibit the government from extraditing Mr. Richardson.

### D. The Magistrate Court Lacked Sufficient Evidence to Find Probable Cause

Because of the procedural posture of Mr. Richardson's case, the magistrate court erred in only relying on the "conviction" imposed by the Sint Maarten court of appeals. The government offered no contemporaneous evidence of the accusations against Mr. Richardson. Indeed, all the evidence cited by the government came from the translated summary of the evidence found within the court of appeals order.

Before an extradition request can be granted, the court must determine "whether there is evidence sufficient to sustain the charge under the provisions of

the proper treaty or convention, or, in other words, whether there is probable cause." *Santos v. Thomas*, 830 F.3d 987, 991 (9th Cir. 2016) (*en banc*) (citations omitted). While the overall "extradition process is shared between the executive and judicial branches," the "probable cause determination has been placed squarely in the judiciary's hands." *Santos*, 830 F.3d at 991, 1007. The extradition judge does not "serve merely as a rubber stamp," but must "make an independent determination that the accused committed the crimes alleged." *In re Extradition of Platko*, 2123 F. Supp. 2d 1129, 1239 (S.D. Cal. 2002) (citations omitted).

The government bears the burden of offering "evidence that 'will support a reasonable belief that [the extraditee] was guilty of the crime charged.'" *In re Extradition of Okeke*, 1996 WL 622213, *5 (D.N.J. Sept. 5, 1996) (quoting *Ahmad v. Wigen*, 910 F.2d 1063, 1066 (2d Cir. 1990)). While "the government's evidence need only be properly authenticated" to be admitted, Courts have cautioned against "conflat[ing] the admissibility standard with the standard required to satisfy probable cause." *Santos*, 830 F.3d at 1006. "Simply because evidence has been authenticated does not mean any evidence the government submits is sufficient to satisfy probable cause. Were that the case, the judiciary's role in the extradition process would be meaningless." *Id.* Instead, the court must "assess whether, based on the evidence, the person could be brought to trial for the same crime in the United States." *Id.* at 993.

15

The government, and the magistrate court, relied on Mr. Richardson's "conviction" to support a finding of probable cause. As an initial matter, whether a conviction *in absentia* is considered a conviction or an accusation is an open question. *See Haxhiaj v. Hackman*, 528 F.3d 282, 291 (4th Cir. 2008). This distinction is important, though, because the Court may determine that probable cause exists solely on the existence of a judgment of conviction, but if extradition is sought based on an accusation, the Court must consider other evidence. *See Spatola v. United States*, 925 F.2d 615, 618 (2d Cir. 1991).

Mr. Richardson was acquitted at the trial level while he was still present in Sint Maarten. Sint Maarten's Court of First Instance found that no crime was committed because Mr. Richardson acted in self-defense. While Mr. Richardson was absent, however, the appellate court reversed, finding that he did not act in self-defense. Mr. Richardson has appealed this finding to the highest court, and the order finding him not guilty may be reinstated. Considering these circumstances, the magistrate court should have considered Mr. Richardson's "conviction" as a mere allegation. It should have also required more evidence than the appellate court's ruling to find probable cause. But it did not. The magistrate court relied solely on the findings of the appellate court, which was improper. Without any other supporting evidence of the alleged offenses, the magistrate court lacked sufficient evidence to certify extradition.

## VII. REQUEST FOR ORAL ARGUMENT AND A BRIEFING SCHEDULE

Mr. Richardson requests oral argument on this petition for a writ of habeas corpus. Mr. Richardson also requests that the Court issue a schedule for further briefing. Mr. Richardson would like to submit a more comprehensive memorandum of law in support of all the claims and arguments asserted herein.

## VIII. PRAYER FOR RELIEF

Mr. Richardson asks that the Court grant the following relief:

- Block the extradition of Mr. Richardson to Sint Maarten
- Reverse the magistrate court's order of certification of extradition;
- Permanently enjoin the United States Department of State from surrendering Mr. Richardson;
- Direct the United States Department of States to deny extradition;
- Order Mr. Richardson's immediate release from custody;
- Issue a briefing schedule and set oral argument before ruling on Mr. Richardson's request for habeas relief;
- Order any further relief the Court deems just and proper.

Dated: This 27th day of April, 2023.

Respectfully submitted,

*s/ Benjamin Black Alper*
BENJAMIN BLACK ALPER
Georgia Bar No. 940406
Attorney for Petitioner

**ALPER LEGAL, P.C.**
1205 Johnson Ferry Road Suite 136,
#359
Marietta, Georgia 30068
404.736.3939
ben@alperlegal.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing pleading has been formatted in Book Antiqua 13 pt., in accordance with Local Rule 5.1B, and was electronically filed this day with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all counsel of record.

Dated:  This 27th day of April, 2023.

                                              _s/ Benjamin Black Alper_
                                              BENJAMIN BLACK ALPER
                                              Georgia Bar No. 940406
                                              Attorney for Petitioner

**ALPER LEGAL, P.C.**
1205 Johnson Ferry Road Suite 136,
#359
Marietta, Georgia 30068
404.736.3939
ben@alperlegal.com