IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,
    PLAINTIFF,

    *v.*

$32,780.00 IN UNITED STATES
CURRENCY,
    DEFENDANT.

Civil Action No.

## VERIFIED COMPLAINT FOR FORFEITURE

NOW COMES plaintiff United States of America, by Ryan K. Buchanan, United States Attorney, and Radka T. Nations, Assistant United States Attorney for the Northern District of Georgia, and shows the Court the following in support of its Verified Complaint for Forfeiture:

## NATURE OF THE ACTION

1.    This is a civil forfeiture action against $32,780.00 in United States currency ("Defendant Currency") that agents with the United States Drug Enforcement Administration ("DEA") seized from Malcolm Conner on or about October 28, 2022, at the Hartsfield-Jackson Atlanta International Airport located at 6000 North Terminal Parkway, Atlanta, Georgia 30320, within the Northern District of Georgia.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over this action pursuant to Title 28, United States Code, Sections 1345 and 1355.

3.      This Court has *in rem* jurisdiction over the Defendant Currency pursuant to Title 28, United States Code, Section 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district.

4.      Venue is proper in this district pursuant to Title 28, United States Code, Section 1355(b)(1)(A) because the acts or omissions giving rise to the forfeiture occurred in this district and pursuant to Title 28, United States Code, Section 1395 because the property is located in this district.

5.      The Defendant Currency is presently being held in a government account maintained by the United States Marshals Service.

## BASIS FOR FORFEITURE
### Relevant Statutes

6.      The Defendant Currency is subject to forfeiture pursuant to Title 21, United States Code, Section 881(a)(6) on the grounds that it was furnished or intended to be furnished in exchange for a controlled substance, constitutes proceeds traceable to such an exchange, or was used or intended to be used to facilitate a violation of Title 21, United States Code, Section 841.

2

7.     The Defendant Currency is also subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) on the grounds that it constitutes or was derived from proceeds traceable to a violation of a "specified unlawful activity."

8.     Title 18, United States Code, Section 1956(c)(7) defines, in relevant part, a "specified unlawful activity" as any act or activity constituting an offense listed in Title 18, United States Code, Section 1961(1).

9.     Title 18, United States Code, Section 1961(1) includes, as part of the list of offenses, "dealing in a controlled substance or listed chemical."

**Factual Background**
***Seizure of Defendant Currency***

10.     On or about October 28, 2022, DEA Task Force Officer David E. Fikes was at the Atlanta Airport conducting random interdiction at Gate B-36 for Delta Flight 356 to Sacramento, California.

11.     Task Force Officer Fikes approached an individual, later identified as Conner, who was waiting in line to board Flight 356 and who appeared to be very nervous. Specifically, Task Force Officer Fikes noticed Conner pacing in a circle in the hallway at the dead end of the terminal. When the gate agent made an announcement for a particular seating class to board the flight, Conner turned around and walked very quickly to the line of passengers waiting to board. As

Conner got in line to board the plane, Task Force Officer Fikes noticed that Conner locked eyes on DEA Task Force Officer Browder who was standing at the front of the line with the gate agent. Based on Connor's nervous behavior before he got in line, Task Force Officer Fikes approached Conner.

12.     Task Force Officer Fikes identified himself as a DEA law enforcement officer and asked to speak with Conner.

13.     Conner agreed to speak with Task Force Officer Fikes.

14.     Task Force Officer Fikes asked Conner for his identification.

15.     Conner provided Task Force Officer Fikes with a driver's license issued by the State of Georgia.

16.     Task Force Officer Fikes explained to Conner that he was with the DEA searching for illegal narcotics and drug proceeds at the airport.

17.     Conner replied that he was not carrying illegal narcotics.

18.     Task Force Officer Fikes asked Conner if he was carrying a large amount of cash, or cash over $5,000.

19.     Conner replied that he was carrying approximately $8,000 in his bag and another $10,000.00 in his suitcase.

20.     Officer Fikes asked Conner whether that was all of the currency that he had, and Conner said that it was.

4

21.     Task Force Officer Fikes asked Conner why he was traveling with such a large amount of cash.

22.     Conner stated, "my uncle does drop shipping in California, and I am taking it to him."

23.     Conner carried two bags with him: (1) a leather cross-body bag, and (2) a black and grey checkered hard-shell suitcase.

24.     Task Force Officer Fikes asked Conner if he had permission to search his bag and suitcase.

25.     Conner consented to a search of his bag and suitcase.

26.     During the search of Conner's hard-shell suitcase, Task Force Officer Fikes observed a large amount of United States currency located inside a zipper pocket of a pair of brown pants under a blanket inside the suitcase.

27.     When Task Force Officer Fikes located the currency inside the pants, Conner stated, "That's the $10,000."

28.     Task Force Officer Fikes continued to search the suitcase and located another large amount of United States currency underneath a black pair of pants inside the suitcase.

29.     Task Force Officer Fikes asked Conner how much money was in the second bundle of United States currency and Conner stated, "That's part of the

$10,000."

30.     Task Force Officer Fikes searched Conner's cross-body bag and located another large amount of United States currency at the bottom of the bag.

31.     Task Force Officer Fikes also observed that Conner had a large stack of United States currency in the front pocket of the pants he wore.

32.     Conner told Task Force Officer Fikes that he had about $2,000 in his pants pocket.

33.     Task Force Officer Fikes asked Conner the reason for his travel to Sacramento.

34.     Conner responded that he was taking money to his uncle. Conner further told Task Force Officer Fikes that his uncle worked for a company named Sanders & Son that did "drop shipping."

35.     Conner also told Task Force Officer Fikes that he was taking money to California that his uncle had left in Atlanta at some point.

36.     Conner identified himself as an attorney and called another person on his cellular telephone who Conner identified as an attorney named Jasmine Blake Stewart.

37.     The woman who answered the call told Task Force Officer Fikes that Conner was one of her employees at her criminal defense law firm.

38.     The woman on the call further stated that many of the firm's clients paid in cash.

39.     Task Force Officer Fikes asked the woman on the call if she was claiming ownership to the Defendant Currency.

40.     Conner replied: "No. None of it is hers."

41.     Right after that, Conner hang up the call.

42.     Task Force Officer Fikes asked Conner for proof of the source of the cash.

43.     Conner accessed a bank account from his cell phone to and began to quickly scroll up and down the screen in an apparent attempt to show Task Force Officer Fikes what Conner appeared to describe as banking transactions. However, Conner refused to allow Task Force Officer Fikes to scroll through, or review, the information himself.

44.     Upon further questioning about his travels, Conner told Task Force Officer Fikes that he was planning to return to Atlanta in about two to three days and then later stated that he only planned to stay in California for one day and would return the following day.

45.     Task Force Officer Fikes told Conner that the DEA was seizing the currency due to his inconsistent stories and would hold the currency pending

further investigation.

46.     Task Force Officer Fikes asked Conner whether all of the money belonged to him, and Conner stated that it did.

47.     Task Force Officer Fikes asked Conner for his uncle's contact information.

48.     Conner declined to provide his uncle's name or information, stating "You don't need his information. You took it off of me, it's all mine."

49.     Task Force Officer Fikes told Conner that he was free to board the flight.

50.     Task Force Officer Fikes observed Conner sit down near the gate for about two minutes. Conner eventually stood up and walked toward the exit of the airport.

51.     Conner did not board Flight 356.

52.     On that same day, Task Force Officer Fikes transported the Defendant Currency to the DEA Atlanta Division office located at 75 Ted Turner Drive, S.W. in Atlanta, Georgia.

53.     DEA Task Force Officer Cole and Task Force Officer Fikes arranged for Officer Fikes' Police Work Dog, "K9 Bane," to perform an open-air sniff for the odor of illegal narcotics on the Defendant Currency.

54.     K9 Bane is certified to detect five illegal narcotics, including marijuana, cocaine, heroin, MDMA (Ecstasy), and methamphetamine.

55.     K9 Bane gave a positive alert to the odor of narcotics on the Defendant Currency.

56.     On November 2, 2022, Officer Fikes transported the Defendant Currency seized from Conner to the cash handling company Loomis, to conduct an official count.

57.     Loomis determined the Defendant Currency totaled $32,780 in the following denominations:

| Denomination | Number of Bills | Amount |
|---|---|---|
| $100 | 150 | $15,000.00 |
| $50 | 83 | $4,150.00 |
| $20 | 677 | $13,540.00 |
| $10 | 7 | $70.00 |
| $5 | 2 | $10.00 |
| $1 | 10 | $10.00 |
| Total: | 2,279 | $32, 780.00 |

### *Administrative Proceedings*

58.     On January 31, 2023, Conner, on his own behalf, filed an administrative claim to the Defendant Currency with DEA, asserting that he is the

owner of the Defendant Currency.

59.     Pursuant to Title 18, United States Code, Section 983(a)(3), DEA then referred the matter for judicial forfeiture proceedings to the U.S. Attorney's Office for the Northern District of Georgia.

## CONCLUSION

60.     Based on the foregoing, the Defendant Currency is subject to forfeiture to the United States pursuant to Title 21, United States Code, Section 881(a)(6) on the grounds that it was furnished or was intended to be furnished in exchange for a controlled substance, that it constitutes proceeds traceable to such an exchange, or that it was used or was intended to be used to facilitate the possession of a controlled substance in violation of Title 21, United States Code, Section 841.

61.     The Defendant Currency is also subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), because it constitutes or was derived from proceeds traceable to a specified unlawful activity, namely, the illegal distribution of controlled substances.

WHEREFORE, the United States prays:

(1)     that the Court forfeit the Defendant Currency to the United States of America;

(2)     that the Court award Plaintiff the costs of this action; and

(3)     that Plaintiff have such other and further relief as the Court deems

just and proper under the facts and circumstances of this case.

This 27th day of April 2023.

Respectfully submitted,

RYAN K. BUCHANAN
   *United States Attorney*
   600 U.S. Courthouse
   75 Ted Turner Drive SW
   Atlanta, GA 30303
   (404) 581-6000   fax (404) 581-6181

/s/ RADKA T. NATIONS
   *Assistant United States Attorney*
   Georgia Bar No. 618248
   Radka.Nations2@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>            PLAINTIFF,<br><br>            *v.*<br><br>$32,780.00 IN UNITED STATES<br>CURRENCY,<br>            DEFENDANT. | Civil Action No. |

## **VERIFICATION OF COMPLAINT FOR FORFEITURE**

I, David E. Fikes, have read the Complaint for Forfeiture in this action and state that its contents are true and correct to the best of my knowledge and belief based upon my personal knowledge of the case and upon information obtained from other law enforcement personnel.

Pursuant to Title 28, United States Code, Section 1746, I declare under penalty of perjury that the foregoing is true and correct.

This 27th day of April 2023.

*David Fikes*
_____
**DAVID E. FIKES**
Task Force Officer
U.S. Drug Enforcement Administration