## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NO.: 1:22-MJ-716-JKL |
| | ) | |
| DANTE JEVON | ) | |
| ERICSON OTTLEY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MOTION TO TERMINATE PROVISIONAL ARREST AND DISMISS CASE

**COMES NOW** Defendant, **DANTE JEVON ERICSON OTTLEY,** by and through his undersigned counsel, and hereby files his Motion To Terminate Provisional Arrest and Dismiss Case. In support of this Motion, Defendants show as follows:

1.

Defendant was provisionally arrested on September 8, 2022 at the request of the Kingdom of the Netherlands pursuant to its treaty with the United States. A copy of the Extradition Treaty between the United States and the Kingdom of the Netherlands is attached hereto as **Exhibit A.**

2.

Pursuant to Article 11, Paragraph 4, of the Extradition Treaty, an individual's

"Provisional arrest shall be terminated if, within a period of 60 days after the apprehension of the person sought, the Requested State has not received the formal request for extradition and the supporting documents mentioned in Article 9."[1]

3.

As of the date of this filing, it has been 63 days since Defendant's provisional arrest.  Defendant has not been provided with any formal request for extradition or any of the supporting documents required pursuant to the treaty, nor has Defendant been notified that such documents have been provided to the United States.  Therefore, pursuant to the terms of the treaty, Defendant requests that his provisional arrest be terminated, that his case be dismissed, and that he be released from custody immediately.

---

[1] Article 9 outlines the documents that must be provided to the United States by the Kingdom of the Netherlands when requesting extradition pursuant to this treaty.

WHEREFORE, for all the foregoing reasons, Defendant respectfully prays for the relief requested herein.

Respectfully submitted, the 10th day of November, 2022.

*s/ Mildred Geckler Dunn*

Mildred Geckler Dunn
Georgia Bar No. 323373
Attorney for Defendant

Federal Defender Program, Inc.
Suite 1500; Centennial Tower
101 Marietta Street NW
Atlanta, Georgia  30303
404/688-7530
millie_dunn@fd.org

# EXHIBIT A

# EXTRADITION

**Agreement Amending the**
**Treaty of June 24, 1980**
**Between the**
**UNITED STATES OF AMERICA**
**and the NETHERLANDS**


Signed at The Hague September 29, 2004

*with*

Annex

*and*

Exchange of Notes



NOTE BY THE DEPARTMENT OF STATE

Pursuant to Public Law 89—497, approved July 8, 1966
(80 Stat. 271; 1 U.S.C. 113)—

". . .the Treaties and Other International Acts Series issued
under the authority of the Secretary of State shall be competent
 evidence . . . of the treaties, international agreements other than
treaties, and proclamations by the President of such treaties and
international agreements other than treaties, as the case may be,
therein contained, in all the courts of law and equity and of maritime
jurisdiction, and in all the tribunals and public offices of the
United States, and of the several States, without any further proof
or authentication thereof."

# NETHERLANDS

## Extradition

*Agreement amending the treaty of June 24, 1980.*
*Signed at The Hague September 29, 2004;*
*Transmitted by the President of the United States of America*
*to the Senate September 28, 2006 (Treaty Doc. 109-14,*
*109th Congress, 2d Session);*
*Reported favorably by the Senate Committee on Foreign Relations*
*July 29, 2008 (Senate Executive Report No. 110-12,*
*110th Congress, 2d Session);*
*Advice and consent to ratification by the Senate*
*September 23, 2008;*
*Ratified by the President December 11, 2008;*
*Exchange of Instruments of Ratification at*
*Washington September 29, 2009;*
*Entered into force February 1, 2010.*
*With annex and exchange of notes.*

**AGREEMENT COMPRISING THE INSTRUMENT AS CONTEMPLATED
BY ARTICLE 3(2) OF THE AGREEMENT ON EXTRADITION BETWEEN
THE UNITED STATES OF AMERICA AND THE EUROPEAN UNION
SIGNED AT WASHINGTON ON 25 JUNE 2003,
AS TO THE APPLICATION OF THE EXTRADITION TREATY
BETWEEN THE UNITED STATES OF AMERICA
AND THE KINGDOM OF THE NETHERLANDS
SIGNED AT THE HAGUE ON 24 JUNE 1980**

The Government of United States of America

and

the Government of the Kingdom of the Netherlands,

have agreed as follows:

*Article 1*

As contemplated by Article 3(2) of the Agreement on Extradition between the United States of America and the European Union signed 25 June 2003 (hereafter "the U.S.-EU Extradition Agreement"), the Governments of the United States of America and the Kingdom of the Netherlands acknowledge that, in accordance with the provisions of this Agreement, the bilateral Extradition Treaty between the United States of America and the Kingdom of the Netherlands signed 24 June 1980 (hereafter "the 1980 Extradition Treaty") is applied in relation to the U.S.-EU Extradition Agreement, under the following terms:

1

a)   Pursuant to Article 5(1) of the U.S.-EU Extradition Agreement, Article 9(1) of the Annex to this Agreement shall be applied in place of Article 9(1) of the 1980 Extradition Treaty;

b)   Pursuant to Article 5(2) of the U.S.-EU Extradition Agreement, Article 9(6) of the Annex to this Agreement shall be applied in place of Article 9(6) of the 1980 Extradition Treaty;

c)   Pursuant to Article 7(1) of the U.S.-EU Extradition Agreement, Article 9(7) of the Annex to this Agreement shall be applied to supplement the provisions of the 1980 Extradition Treaty;

d)   Pursuant to Article 8(2) of the U.S.-EU Extradition Agreement, Article 10(3) of the Annex to this Agreement shall be applied to supplement the provisions of the 1980 Extradition Treaty;

e)   Pursuant to Article 10 of the U.S.-EU Extradition Agreement, Article 14 of the Annex to this Agreement shall be applied in place of Article 14 of the 1980 Extradition Treaty;

f)   Pursuant to Article 13 of the U.S.-EU Extradition Agreement, Article 7(1) of the Annex to this Agreement shall be applied in place of Article 7(1) of the 1980 Extradition Treaty;

g)   Pursuant to Article 14 of the U.S.-EU Extradition Agreement, Article 10 *bis* of the Annex to this Agreement shall be applied to supplement the provisions of the 1980 Extradition Treaty.

*Article 2*

The Annex to this Agreement reflects the text of the provisions of the 1980 Extradition Treaty and the U.S.-EU Extradition Agreement as a result of paragraph 1 of this Agreement.  This integrated text shall apply upon entry into force of this Agreement.

2

### Article 3

This Agreement shall apply to the United States of America and the Kingdom of the Netherlands in Europe. The Application of the 1980 Extradition Treaty to the Netherlands Antilles and Aruba shall remain unaffected by the U.S.-EU Extradition Agreement. Accordingly, this Agreement shall not apply to the Netherlands Antilles or Aruba unless the United States of America and the European Union, by exchange of diplomatic notes in accordance with Article 20(1)(b) of the U.S.-EU Extradition Agreement, agree to extend its application to them. Such application may be terminated in accordance with Article 20(2) of the U.S.-EU Extradition Agreement.

### Article 4

In accordance with Article 16 of the U.S.-EU Extradition Agreement, this Agreement shall apply to offenses committed before as well as after it enters into force.

### Article 5

This Agreement shall not apply to requests for extradition made prior to its entry into force.

### Article 6

(a) This Agreement shall be subject to the completion by the United States of America and the Kingdom of the Netherlands of their respective applicable internal procedures for entry into force. The Governments of the United States of America and the Kingdom of the Netherlands shall thereupon exchange instruments indicating that such measures have been completed. This Agreement shall enter into force on the date of entry into force of the U.S.-EU Extradition Agreement.

3

(b) In the event of termination of the U.S.-EU Extradition Agreement, this Agreement shall be terminated at the same time and application of the original text of the 1980 Extradition Treaty shall resume six months after the notice of termination.

IN WITNESS WHEREOF, the undersigned, being duly authorized by their respective Governments, have signed this Agreement.

DONE at _The Hague_ , in duplicate, _29 September 2004_ , in the English and Dutch languages, both texts being equally authentic.

For the Government of the  
United States of America

For the Government of the  
Kingdom of the Netherlands

4

ANNEX

ARTICLE 1:  Obligation to Extradite

The Contracting Parties agree to extradite to each other, subject to the provisions described in this Treaty, persons found in the territory of one of the Contracting Parties who have been charged with an offense, found guilty of committing an offense, or are wanted for the enforcement of a judicially pronounced penalty involving a deprivation of liberty or detention order.

ARTICLE 2:  Extraditable Offenses and Jurisdiction

1.      Extraditable offenses under this Treaty are:

a.      Offenses referred to in the Appendix to this Treaty which are punishable under the laws of both Contracting Parties;

b.      Offenses, whether listed in the Appendix to this Treaty or not, provided they are punishable under the Federal laws of the United States of America and the laws of the Kingdom of the Netherlands.

In this connection it shall not matter whether or not the laws of the Contracting Parties place the offense within the same category of offenses or denominate an offense by the same terminology.

2.      Extradition shall be granted in respect of an extraditable offense:

a.      For prosecution, if the offense is punishable under the laws of both Contracting Parties by deprivation of liberty for a period exceeding one year;

b.      For the imposition of a penalty or detention order, if the offense is punishable under the laws of both Contracting Parties by deprivation of liberty for a period exceeding one year; or

c.      For the enforcement of a penalty or detention order for such an offense, if the duration of the penalty or detention order still to be served amounts to at least four months.

5

3. Extradition shall be granted in respect of an extraditable offense committed outside the territory of the Requesting State if:

a. The courts of the Requested State would be competent to exercise jurisdiction in similar circumstances, or

b. The person sought is a national of the Requesting State.

4. Subject to the conditions set out in paragraphs 1, 2 and 3, extradition shall also be granted:

a. For attempts to commit or participation in an extraditable offense, including participation in an association of persons whose intention it is to commit the offense;

b. For any extraditable offense when, for the purpose of granting jurisdiction to the United States Government, transportation of persons or property, the use of the mails or other means of carrying out interstate or foreign commerce is also an element of the specific offense.

5. When extradition has been granted in respect of an extraditable offense, it may also be granted in respect of any other extraditable offense which would otherwise not be extraditable only by reason of the operation of paragraph 2.

ARTICLE 3:  Territorial Application

For the purpose of this Treaty the territory of a Contracting Party shall include all territory under the jurisdiction of that Contracting Party, including airspace and territorial waters.

ARTICLE 4:  Political and Military Offenses

1. Extradition shall not be granted when in the view of the Requested State the offense for which extradition is requested is of a political character, is connected with an offense of a political character, or it is established that extradition is requested for political purposes.

6

2. For the purpose of this Treaty a murder or willful crime against the life or physical integrity of a Head of State or Head of Government of one of the Contracting Parties or of a member of that person's family, including attempts to commit such offenses, shall not be deemed to be offenses within the meaning of paragraph 1.

3. Extradition shall not be granted when the offense for which extradition is requested is a purely military offense.

4. It shall be the responsibility of the Executive Authority of the Requested State to decide on any question raised under this Article, except to the extent that the national laws of that State expressly grant such powers to its courts.

ARTICLE 5:  Prior Jeopardy for the Same Offense

Extradition shall not be granted when:

a. The person sought is being proceeded against, has been prosecuted, or has been tried and convicted or acquitted by the Requested State for the offense for which extradition is requested; or,

b. The person sought is otherwise immune from prosecution for the offense for which extradition is requested by reason of the law in the Requested State relating to prior jeopardy.

ARTICLE 6:  Lapse of Time

Extradition shall not be granted when the prosecution or the enforcement of the penalty for the offense for which extradition has been sought has become barred by lapse of time according to the law of the Requested State.

ARTICLE 7:  Capital Punishment and Special Circumstances

1. Where the offense for which extradition is sought is punishable by death under the laws in the Requesting State and not punishable by death under the laws in the Requested State, the Requested State may grant extradition on the condition that the death penalty shall not be imposed on the person sought, or if for procedural reasons such condition cannot be complied with by the Requesting State, on condition that the death penalty if imposed

7

shall not be carried out. If the Requesting State accepts extradition subject to conditions pursuant to this Article, it shall comply with the conditions. If the Requesting State does not accept the conditions, the request for extradition may be denied.

2.   In special circumstances, having particular regard to the age, health or other personal condition of the person sought, the Executive Authority of the Requested State may refuse extradition if it has reason to believe that extradition will be incompatible with humanitarian considerations.

ARTICLE 8:  Extradition of Nationals

1.   In the event there is a treaty in force between the Contracting Parties on the execution of foreign penal sanctions, neither Contracting Party may refuse to extradite its own nationals solely on the basis of their nationality.

2.   As long as there is no treaty in force between the Contracting Parties on the execution of foreign penal sanctions, neither Contracting Party shall be bound to extradite its own nationals, but the Executive Authority of the Requested State shall, if not prevented by the law of that State, have the power to extradite them if, in its discretion, it be deemed proper to do so.

3.   If extradition is not granted solely on the basis of the nationality of the person sought, the Requested State shall, at the request of the Requesting State, submit the case to its competent authorities for the purpose of prosecution, provided that the offense constitutes a criminal offense under the law of that State and that State has jurisdiction over the offense.

ARTICLE 9:  Extradition Procedures and Required Documents

1.   The request for extradition and supporting documents shall be transmitted through the diplomatic channel, which shall include transmission as provided for in paragraph 7 of this Article.

2.   The request for extradition shall be accompanied by:

a.   All available information concerning the identity, nationality, and probable location of the person sought;

8

b.  A statement of the facts of the case including, if possible, the time and location of the crime;

c.  The provisions of the law describing the essential elements and the designation of the offense for which extradition is requested;

d.  The provisions of the law describing the punishment for the offense;

e.  The provisions of the law providing for jurisdiction when the offense was committed outside of the territory of the Requesting State.

3.  A request for extradition relating to a person sought for the purpose of prosecution shall be accompanied by:

a.  The original or a certified copy of the warrant of arrest issued by a judge or other competent judicial officer of the Requesting State; and

b.  Such evidence as, according to the law of the Requested State, would justify that person's arrest and committal for trial if the offense had been committed there, including evidence establishing that the person sought is the person to whom the warrant of arrest refers.

4.  A request for extradition relating to a convicted person shall be accompanied by:

a.  The original or certified copy of the judgment of conviction pronounced by a court of the Requesting State;

b.  Evidence establishing that the person sought is the person to whom the conviction refers.

If the person was found guilty but not sentenced, the request for extradition shall be accompanied by a statement to that effect by the appropriate court and by the original or certified copy of the warrant of arrest.

If the convicted person was sentenced, the request for extradition shall be accompanied by the original or certified copy of the sentence imposed, a statement that the sentence has final and binding effect and is enforceable and a statement showing to what extent the sentence has not been carried out.

5.  The documents to be submitted in support of the request for extradition, in accordance with this Article and Article 10, shall be translated into the language of the Requested State.

9

6.  Documents that bear the certificate or seal of the Ministry of Justice, or Ministry or Department responsible for foreign affairs, of the Requesting State shall be admissible in extradition proceedings in the Requested State without further certification, authentication, or other legalization. "Ministry of Justice" shall, for the United States of America, mean the United States Department of Justice; and, for the Kingdom of the Netherlands, the Ministry of Justice of the Netherlands, or, should territorial application of this Treaty be extended in accordance with Article 20 (1)(b) of the U.S.-EU Extradition Agreement, as specified in the exchange of diplomatic notes pursuant thereto.

7.  If the person whose extradition is sought is held under provisional arrest by the Requested State, the Requesting State may satisfy its obligation to transmit its request for extradition and supporting documents through the diplomatic channel pursuant to paragraph 1 of this Article, by submitting the request and documents to the Embassy of the Requested State located in the Requesting State. In that case, the date of receipt of such request by the Embassy shall be considered to be the date of receipt by the Requested State for purposes of applying the time limit that must be met under Article 11 of this Treaty to enable the person's continued detention.

ARTICLE 10: Additional Evidence

1.  If the competent authority of the Requested State considers that the evidence furnished in support of the request for the extradition of a person sought is not sufficient to fulfill the requirements of this Treaty, that State shall request the submission of necessary additional evidence. The Requested State may set a time limit for the submission of such evidence and, upon the Requesting State's application, may grant a reasonable extension of such time limit.

2.  If the person sought has been taken into custody and the additional evidence or information submitted is not sufficient, or if such evidence or information is not received within the period specified by the Requested State, that person may be discharged from custody. However, such discharge shall not bar either the continued consideration of the request on

10

the basis of supplemented documents, or, if a final decision has already been taken, the submission of a subsequent request for the same offense. In such a case it shall be sufficient if reference is made in the subsequent request to the supporting documents already submitted, provided these documents will be available at the extradition proceedings.

3. Such additional evidence or information may be requested and furnished directly between the United States Department of Justice and the Ministry of Justice of the Netherlands.

Article 10 bis: Sensitive information in a request

Where the Requesting State contemplates the submission of particularly sensitive information in support of its request for extradition, it may consult the Requested State to determine the extent to which the information can be protected by the Requested State. If the Requested State cannot protect the information in the manner sought by the Requesting State, the Requesting State shall determine whether the information shall nonetheless be submitted.

ARTICLE 11: Provisional Arrest

1. In case of urgency, either Contracting Party may request the provisional arrest of any accused or convicted person. Application for provisional arrest may be made either through the diplomatic channel or directly between the United States Department of Justice and the Ministry of Justice in the Netherlands or, should application of this Treaty be extended in accordance with Article 20 (1)(b) of the U.S.-EU Extradition Agreement, as specified in the exchange of diplomatic notes pursuant thereto.

2. The application shall contain: a description of the person sought, including, if available, the person's nationality; a brief statement of the facts of the case including, if possible, the time and location of the offense; a statement of the existence of a warrant of arrest or a judgment of conviction against that person; and a statement that a request for extradition of the person sought will follow.

11

3. On receipt of such an application the Requested State shall take the appropriate steps to secure the arrest of the person sought. The Requesting State shall be promptly notified of the result of its application.

4. Provisional arrest shall be terminated if, within a period of 60 days after the apprehension of the person sought, the Requested State has not received the formal request for extradition and the supporting documents mentioned in Article 9.

5. The termination of provisional arrest pursuant to paragraph (4) shall not prejudice the extradition of the person sought if the extradition request and the supporting documents mentioned in Article 9 are delivered at a later date.

ARTICLE 12: Decision and Surrender

1. The Requested State shall promptly communicate through the diplomatic channel to the Requesting State the decision on the request for extradition.

2. The Requested State shall give the reasons for any complete or partial rejection of the request for extradition.

3. If the extradition has been granted, surrender of the person sought shall take place within such time as may be prescribed by the law of the Requested State. The competent authorities of the Contracting Parties shall agree on the time and place of the surrender of the person sought. If, however, that person is not removed from the territory of the Requested State within such time as may be agreed, that person may be set at liberty and the Requested State may subsequently refuse extradition for the same offense.

ARTICLE 13: Delayed Decision and Temporary Surrender

After a decision on a request for extradition has been rendered in the case of a person who is being proceeded against or is serving a sentence in the territory of the Requested State for a different offense, the Requested State may:

12

    a.    Defer the surrender of the person sought until the conclusion of the proceedings against that person, or the full execution of any punishment that may be or may have been imposed; or

    b.    Temporarily surrender the person sought to the Requesting State solely for the purpose of prosecution. The person so surrendered shall be kept in custody while in the Requesting State and returned at the conclusion of the proceedings against that person in accordance with conditions to be determined by mutual agreement of the Contracting Parties.

## ARTICLE 14: Requests for Extradition or Surrender made by Several States

1. If the Requested State receives requests from the Requesting State and from any other State or States for the extradition of the same person, either for the same offense or for different offenses, the Executive Authority of the Requested State shall determine to which State, if any, it will surrender the person.

2. If the Kingdom of the Netherlands receives an extradition request from the United States of America and a request for surrender pursuant to the European arrest warrant for the same person, either for the same offense or for different offenses, its Executive Authority shall determine to which State, if any, it will surrender the person.

3. In making its decision under paragraphs 1 and 2 of this Article, the Requested State shall consider all of the relevant factors, including, but not limited to, the following:

    a.    whether the requests were made pursuant to a treaty;

    b.    the places where each of the offenses was committed;

    c.    the respective interests of the requesting States;

    d.    the seriousness of the offenses;

    e.    the nationality of the victim;

    f.    the possibility of any subsequent extradition between the requesting States; and

    g.    the chronological order in which the requests were received from the requesting States.

13

ARTICLE 15:  Rule of Speciality

1.   A person extradited under this Treaty shall not be detained, tried or punished in the territory of the Requesting State for an offense other than that for which extradition has been granted, nor be extradited by that State to a third State, unless:

a.   That person has left the territory of the Requesting State after extradition and has voluntarily returned to it;

b.   That person has not left the territory of the Requesting State within 30 days after being free to do so; or

c.   The Executive Authority of the Requested State has consented to detention, trial, or punishment of that person for an offense other than that for which extradition was granted, or to extradition to a third State. For this purpose, the Requested State may require the submission of any document or statement mentioned in Article 9, including any statement made by the extradited person with respect to the offense concerned.

These stipulations shall not apply to offenses committed after extradition.

2.   If the charge for which the person was extradited is legally altered in the course of proceedings, that person may be prosecuted or sentenced provided the offense under its new legal description is:

a.   Based on the same set of facts contained in the extradition request and its supporting documents; and

b.   Punishable by the same maximum penalty as, or a lesser maximum penalty than, the offense for which that person was extradited.

ARTICLE 16:  Simplified Extradition

If the extradition of a person sought is not obviously precluded by the law of the Requested State and provided the person sought irrevocably agrees in writing to extradition after personally being advised by a judge or competent magistrate of other rights granted in formal extradition proceedings and the protection afforded by them that this person would lose, the Requested State may grant extradition without a formal extradition proceeding having taken place. In this case Article 15 shall not be applicable.

14

ARTICLE 17: Surrender of Property

1.  To the extent permitted under the law of the Requested State and subject to the rights of third parties, which shall be duly respected, all articles, instruments, objects of value or documents relating to the offense, whether or not used for its execution, or which in any other manner may be evidence for the prosecution, shall at the request of the Requesting State be seized and surrendered upon the granting of the extradition. The property mentioned in this Article shall be handed over even if the extradition cannot be effected due to the death, escape or disappearance of the person sought.

2.  The Requested State may condition the surrender of property upon a satisfactory assurance from the Requesting State that the property will be returned to the Requested State as soon as possible.

ARTICLE 18: Transit

1.  Either Contracting Party may authorize the other transit through its territory of a person surrendered by a third State. The Contracting Party requesting transit shall provide the information mentioned in Article 11, paragraph 2, through channels provided in that Article. No such authorization is required where air transportation is used and no landing is scheduled on the territory of the other Contracting Party.

2.  If an unscheduled landing on the territory of the other Contracting Party occurs, transit shall be subject to the provisions of paragraph 1. That Contracting Party may detain the person to be transited for a period of 96 hours while awaiting the request for transit.

ARTICLE 19: Expenses

1.  The Requested State shall review for legal sufficiency documentation in support of an extradition request prior to submission to its judicial authorities and shall present the request of the Requesting State to such authorities.

15

2.      Expenses related to the translation of documents supporting the request for extradition and to the transportation of the person sought shall be borne by the Requesting State. All other expenses related to the extradition request and proceedings shall be borne by the Requested State. No pecuniary claim, arising out of the arrest, detention, examination and surrender of persons sought under the terms of this Treaty, shall be made by the Requested State against the Requesting State.

ARTICLE 20:  Denunciation
Either Contracting Party may terminate this Treaty at any time by giving notice to the other Party and the termination shall be effective six months after the date of receipt of such notice.

16

APPENDIX: SCHEDULE OF OFFENSES

1.  Murder; assault with intent to commit murder.

2.  Manslaughter.

3.  Malicious wounding; inflicting grievous bodily harm.

4.  Arson.

5.  Rape; indecent assault; incest; bigamy.

6.  Unlawful sexual acts with or upon children under the age specified by the laws of both the Requesting and Requested States.

7.  Wilful abandonment of a minor or other dependent person when the life of that minor or that dependent person is or is likely to be injured or endangered.

8.  Kidnapping; abduction; false imprisonment.

9.  Robbery; burglary; larceny; embezzlement.

10. Fraud, including obtaining property, money or valuable securities by false pretenses, deceit, falsehood, or other fraudulent means.

11. Bribery, including soliciting, offering and accepting.

12. Extortion.

13. Receiving, possessing or transporting anything of value knowing it to have been unlawfully obtained.

14. Offenses relating to criminal breach of trust.

15. An offense against the laws relating to counterfeiting and forgery; including the forging of seals, trademarks, documents, or use of such forgeries.

16. An offense against the laws relating to international transfers of funds.

17. An offense against the laws relating to importation, exportation or transit of goods, articles, or merchandise, including violations of the customs laws.

18. Offenses relating to slavery or the illegal transporting of persons.

19. Offenses against the laws relating to bankruptcy.

20. Offenses against the laws relating to prohibition of private monopoly or unfair trade practices.

21. Perjury; subornation of perjury; making a false statement to a government agency or official.

22. Offenses relating to wilful evasion of taxes and duties.

17

23. Any act or omission intended or likely to: (a) endanger the safety of an aircraft in flight or of any person on board such aircraft; or (b) destroy or render any aircraft incapable of flight.

24. Any unlawful seizure or exercise of control of an aircraft in flight by force or violence, or by threat of force or violence, or by any other form of intimidation.

25. Any unlawful act or omission intended or that is likely to endanger the safety of any person in a railway train or in any vessel or other means of transportation.

26. Piracy, mutiny, or any mutinous act committed on board a vessel.

27. Malicious damage to property.

28. Offenses against the laws relating to the traffic in, or the possession, production or manufacture of narcotic drugs, cannabis, psychotropic drugs, cocaine and its derivatives, and other dangerous drugs and chemicals.

29. Offenses against laws relating to poisonous chemicals or substances injurious to health.

30. Offenses against the laws relating to firearms, ammunition, explosives, incendiary devices or nuclear materials.

31. Offenses against the laws relating to the abuse of official authority.

32. Offenses against the laws relating to obstruction of justice.

33. Offenses relating to securities and commodities.

34. Facilitating or permitting the escape of a person from custody.

35. Incitements to violence.

36. Any other act for which extradition may be granted in accordance with the laws of both Contracting Parties.

18

**VERDRAG BEVATTENDE HET INSTRUMENT BEDOELD IN ARTIKEL 3,
TWEEDE LID, VAN DE OVEREENKOMST BETREFFENDE UITLEVERING
TUSSEN DE VERENIGDE STATEN VAN AMERIKA EN DE EUROPESE UNIE,
ONDERTEKEND TE WASHINGTON OP 25 JUNI 2003,
INZAKE DE TOEPASSING VAN HET UITLEVERINGSVERDRAG
TUSSEN DE VERENIGDE STATEN VAN AMERIKA EN
HET KONINKRIJK DER NEDERLANDEN, ONDERTEKEND TE
'S-GRAVENHAGE OP 24 JUNI 1980**

De Regering van de Verenigde Staten van Amerika

en

de Regering van het Koninkrijk der Nederlanden,

zijn het volgende overeengekomen:

*Artikel 1*

Zoals voorzien in artikel 3, tweede lid, van de Overeenkomst betreffende uitlevering tussen de Europese Unie en de Verenigde Staten van Amerika, ondertekend te Washington D.C. op 25 juni 2003 (hierna te noemen "de VS-EU-Uitleveringsovereenkomst"), bevestigen de Regeringen van het Koninkrijk der Nederlanden en de Verenigde Staten van Amerika dat het bilaterale uitleveringsverdrag tussen het Koninkrijk der Nederlanden en de Verenigde Staten van Amerika, ondertekend te 's-Gravenhage op 24 juni 1980 (hierna te noemen het Uitleveringsverdrag van 1980) met betrekking tot de VS-EU-Uitleveringsovereenkomst wordt toegepast onder de volgende voorwaarden:

1

a. Ingevolge artikel 5, eerste lid, van de VS-EU-Uitleveringsovereenkomst, wordt artikel 9, eerste lid, opgenomen in de bijlage bij dit Verdrag, toegepast in plaats van artikel 9, eerste lid, van het Uitleveringsverdrag van 1980;

b. Ingevolge artikel 5, tweede lid, van de VS-EU-Uitleveringsovereenkomst, wordt artikel 9, zesde lid, opgenomen in de bijlage bij dit Verdrag, toegepast in plaats van artikel 9, zesde lid, van het Uitleveringsverdrag van 1980;

c. Ingevolge artikel 7, eerste lid, van de VS-EU-Uitleveringsovereenkomst, wordt artikel 9, zevende lid, opgenomen in de bijlage bij dit Verdrag, toegepast ter aanvulling van de bepalingen van het Uitleveringsverdrag van 1980;

d. Ingevolge artikel 8, tweede lid, van de VS-EU-Uitleveringsovereenkomst, wordt artikel 10, derde lid, opgenomen in de bijlage bij dit Verdrag, toegepast ter aanvulling van de bepalingen van het Uitleveringsverdrag van 1980;

e. Ingevolge artikel 10 van de VS-EU-Uitleveringsovereenkomst, wordt artikel 14, opgenomen in de bijlage bij dit Verdrag, toegepast in plaats van artikel 14 van het Uitleveringsverdrag van 1980;

f. Ingevolge artikel 13 van de VS-EU-Uitleveringsovereenkomst, wordt artikel 7, eerste lid, opgenomen in de bijlage bij dit Verdrag, toegepast in plaats van artikel 7, eerste lid, van het Uitleveringsverdrag van 1980;

g. Ingevolge artikel 14 van de VS-EU-Uitleveringsovereenkomst, wordt artikel 10*bis*, opgenomen in de bijlage bij dit Verdrag, toegepast ter aanvulling van de bepalingen van het Uitleveringsverdrag van 1980.

### Artikel 2

Ingevolge artikel 1 van dit Verdrag bevat de bijlage bij dit Verdrag de tekst van de bepalingen van het Uitleveringsverdrag van 1980 en van de VS-EU-Uitleveringsovereenkomst. Vanaf de inwerkingtreding van dit Verdrag is deze integrale tekst van toepassing.

2

*Artikel 3*

Dit Verdrag is van toepassing in de Verenigde Staten van Amerika en op het grondgebied van het Koninkrijk der Nederlanden in Europa. De VS-EU-Uitleveringsovereenkomst laat de toepassing van het Uitleveringsverdrag van 1980 op de Nederlandse Antillen en Aruba onverlet. Dit Verdrag is dus niet van toepassing op de Nederlandse Antillen en Aruba, tenzij de Europese Unie en de Verenigde Staten van Amerika door middel van de uitwisseling van diplomatieke nota's in overeenstemming met artikel 20, eerste lid, onderdeel b, van de VS-EU-Uitleveringsovereenkomst overeenkomen dat de territoriale toepassing wordt uitgebreid tot de Nederlandse Antillen en Aruba. Deze toepassing kan worden beëindigd in overeenstemming met artikel 20, tweede lid, van de VS-EU-Uitleveringsovereenkomst.

*Artikel 4*

Ingevolge artikel 16 van de VS-EU-Uitleveringsovereenkomst is dit Verdrag van toepassing op strafbare feiten die vóór of na de inwerkingtreding ervan zijn gepleegd.

*Artikel 5*

Dit Verdrag is niet van toepassing op uitleveringsverzoeken ingediend voorafgaand aan de inwerkingtreding ervan.

*Artikel 6*

a.   Met het oog op de inwerkingtreding van dit Verdrag dienen het Koninkrijk der Nederlanden en de Verenigde Staten van Amerika hun onderscheiden interne procedures te hebben voltooid. De regeringen van het Koninkrijk der Nederlanden en de Verenigde Staten van Amerika zullen de akten uitwisselen waaruit blijkt dat deze procedures zijn voltooid. Dit Verdrag treedt in werking op de datum waarop de VS-EU-Uitleveringsovereenkomst in werking treedt.

3

b.   In geval van beëindiging van de VS-EU-Uitleveringsovereenkomst wordt dit Verdrag op hetzelfde tijdstip beëindigd en zal de oorspronkelijke tekst van het Uitleveringsverdrag van 1980 zes maanden na de kennisgeving van beëindiging weer worden toegepast.

TEN BLIJKE WAARVAN de ondergetekenden, daartoe naar behoren gemachtigd door hun respectieve regeringen, dit Verdrag hebben ondertekend.

GEDAAN te Den Haag , in tweevoud, op 29 september 2004 in de Engelse en de Nederlandse taal, zijnde beide teksten gelijkelijk authentiek.

Voor de Regering van de                    Voor de Regering van het
Verenigde Staten van Amerika               Koninkrijk der Nederlanden

4

BIJLAGE

Artikel 1  Verplichting tot uitlevering

De Verdragsluitende Partijen komen overeen, met inachtneming van de in dit Verdrag opgenomen bepalingen personen aan elkaar uit te leveren die worden aangetroffen op het grondgebied van een van de Verdragsluitende Partijen en tegen wie een strafvervolging is ingesteld, die schuldig zijn bevonden aan het plegen van een strafbaar feit of die worden gezocht met het oog op de tenuitvoerlegging van een door de rechter opgelegde straf of maatregel, welke vrijheidsbeneming met zich mede brengt.

Artikel 2  Feiten die tot uitlevering kunnen leiden en rechtsmacht

1.    Feiten die tot uitlevering kunnen leiden krachtens dit Verdrag zijn:

a.    feiten, vermeld in het Aanhangsel bij dit Verdrag, die strafbaar zijn krachtens de wetten van beide Verdragsluitende Partijen;

b.    feiten, al dan niet in het Aanhangsel bij dit Verdrag opgenomen, mits zij strafbaar zijn krachtens de federale wetten van de Verenigde Staten van Amerika en de wetgeving van het Koninkrijk der Nederlanden.

In dit verband is het niet van belang of de wetten van de Verdragsluitende Partijen het feit onder dezelfde categorie strafbare feiten rangschikken dan wel een feit met dezelfde termen aanduiden.

2.    Uitlevering wordt toegestaan voor feiten die tot uitlevering kunnen leiden:

a.    met het oog op vervolging, indien het feit krachtens het recht van beide Verdragsluitende Partijen strafbaar is gesteld met een vrijheidsstraf van meer dan een jaar;

b.    met het oog op de oplegging van een straf of maatregel, indien het feit krachtens het recht van beide Verdragsluitende Partijen strafbaar is gesteld met een vrijheidsstraf van meer dan een jaar; of

c.    met het oog op de tenuitvoerlegging van een straf of maatregel wegens een zodanig feit, indien het gedeelte van de straf of maatregel, dat nog niet is ondergaan, de duur van ten minste vier maanden heeft.

5

3. Uitlevering wordt toegestaan voor feiten die tot uitlevering kunnen leiden en die zijn gepleegd buiten het grondgebied van de verzoekende Staat indien:

a. de rechters van de aangezochte Staat in gelijksoortige omstandigheden bevoegd zouden zijn daarover rechtsmacht uit te oefenen, of

b. de opgeëiste persoon onderdaan is van de verzoekende Staat.

4. Met inachtneming van de in het eerste tot en met het derde lid vermelde voorwaarden wordt uitlevering eveneens toegestaan:

a. voor poging tot of deelneming aan strafbare feiten die tot uitlevering kunnen leiden, daarbij inbegrepen deelneming aan een vereniging van personen wier oogmerk het is het strafbare feit te plegen;

b. voor ieder feit dat tot uitlevering kan leiden wanneer, met het oog op verlening van rechtsmacht aan de Regering van de Verenigde Staten, het vervoer van personen of goederen, of het gebruik van de posterijen of andere middelen voor de handel tussen de Staten of met het buitenland mede een element van het desbetreffende strafbare feit vormt.

5. Wanneer uitlevering is toegestaan voor een feit dat tot uitlevering kan leiden, kan zij tevens worden toegestaan voor andere feiten die anders, uitsluitend ten gevolge van de werking van het tweede lid, niet tot uitlevering zouden kunnen leiden.

### Artikel 3  Territoriale toepasselijkheid

Voor de toepassing van dit Verdrag omvat het grondgebied van een Verdragsluitende Partij het gehele grondgebied onder de rechtsmacht van die Verdragsluitende Partij, met inbegrip van het luchtruim en de territoriale wateren.

### Artikel 4  Politieke en militaire delicten

1. Uitlevering wordt niet toegestaan wanneer het strafbare feit waarvoor zij wordt verzocht volgens de aangezochte Staat van politieke aard is of samenhangt met een strafbaar feit van politieke aard, dan wel wanneer wordt aangetoond dat het verzoek tot uitlevering met een politiek oogmerk is gedaan.

6

2.  Voor de toepassing van dit Verdrag wordt moord of een opzettelijk gepleegd misdrijf gericht tegen het leven of de lichamelijke integriteit van een Staatshoofd of Regeringsleider van een van de Verdragsluitende Partijen of van een lid van het gezin van een zodanige persoon, daaronder begrepen pogingen om een dergelijk feit te plegen, niet geacht een strafbaar feit in de zin van het eerste lid te zijn.

3.  Uitlevering wordt niet toegestaan wanneer het strafbare feit waarvoor zij wordt verzocht een zuiver militair delict is.

4.  Het is de verantwoordelijkheid van de uitvoerende autoriteit van de aangezochte Staat een beslissing te nemen over kwesties die uit hoofde van dit artikel worden opgeworpen, behalve voor zover de nationale wetten van die Staat die bevoegdheid uitdrukkelijk aan diens rechters toekennen.

Artikel 5  Voorafgaande strafvervolging ter zake van hetzelfde feit

Uitlevering wordt niet toegestaan wanneer:

a.  de opgeëiste persoon door de aangezochte Staat ter zake van het feit waarvoor uitlevering wordt verzocht wordt vervolgd, vervolgd is geweest, of is berecht en veroordeeld of vrijgesproken; of

b.  uit anderen hoofde tegen de opgeëiste persoon geen vervolging kan worden ingesteld ter zake van het feit waarvoor uitlevering wordt verzocht, krachtens het recht in de aangezochte Staat met betrekking tot het effect van een voorafgaande strafvervolging.

Artikel 6  Verjaring

Uitlevering wordt niet toegestaan wanneer volgens het recht van de aangezochte Staat het recht tot vervolging of tenuitvoerlegging van straf ter zake van het feit waarvoor uitlevering werd verlangd, is vervallen door verjaring.

Artikel 7  Doodstraf en bijzondere omstandigheden

1.  Wanneer op het feit waarvoor uitlevering wordt verzocht krachtens het recht van de verzoekende Staat doch niet krachtens het recht van de aangezochte Staat de doodstraf is gesteld, kan de aangezochte Staat aan

7

de uitlevering de voorwaarde verbinden dat de doodstraf niet aan de opgeëiste persoon wordt opgelegd of, indien de verzoekende Staat om procedurele redenen niet aan deze voorwaarde kan voldoen, de voorwaarde dat de doodstraf, indien deze wordt opgelegd, niet ten uitvoer zal worden gelegd. Indien de verzoekende Staat instemt met de uitlevering op de in dit artikel genoemde voorwaarden, moet hij die voorwaarden naleven. Indien de verzoekende Staat de voorwaarden niet aanvaardt, kan het uitleveringsverzoek worden geweigerd.

2.  De uitvoerende autoriteit van de aangezochte Staat kan in bijzondere situaties, met name gezien de leeftijd of gezondheid van de opgeëiste persoon, of andere persoonlijke omstandigheden, uitlevering weigeren, indien zij redenen heeft om van oordeel te zijn dat uitlevering onverenigbaar is met humanitaire overwegingen.

### Artikel 8  Uitlevering van onderdanen

1.  Ingeval er tussen de Verdragsluitende Partijen een verdrag van kracht is betreffende de tenuitvoerlegging van buitenlandse strafrechtelijke sancties, kan geen van beide Verdragsluitende Partijen weigeren haar eigen onderdanen uit te leveren uitsluitend op grond van hun nationaliteit.

2.  Zo lang er tussen de Verdragsluitende Partijen geen verdrag van kracht is betreffende de tenuitvoerlegging van buitenlandse strafrechtelijke sancties, is geen van beide Verdragsluitende Partijen verplicht haar eigen onderdanen uit te leveren, maar de uitvoerende autoriteit van de aangezochte Staat heeft, indien de wet van die Staat zich daartegen niet verzet, de bevoegdheid hen uit te leveren indien dat, naar het oordeel van de genoemde autoriteit, aangewezen wordt geacht.

3.  Indien uitlevering niet wordt toegestaan uitsluitend op grond van de nationaliteit van de opgeëiste persoon, draagt de aangezochte Staat, op verzoek van de verzoekende Staat, de zaak voor vervolging aan zijn bevoegde autoriteiten over, mits het feit een strafbaar feit oplevert naar het recht van die Staat en die Staat rechtsmacht over het feit heeft.

8

Artikel 9  Procedure met betrekking tot uitlevering en vereiste stukken

1.  Het verzoek tot uitlevering en stukken ter ondersteuning daarvan worden langs diplomatieke weg toegezonden, daaronder begrepen toezending voorzien in het zevende lid van dit artikel.

2.  Bij het verzoek tot uitlevering dienen te worden gevoegd:

a.  alle beschikbare gegevens betreffende de identiteit, de nationaliteit, en de vermoedelijke verblijfplaats van de opgeëiste persoon;

b.  een uiteenzetting van de desbetreffende feiten, met inbegrip, indien mogelijk, van het tijdstip waarop en de plaats waar het misdrijf werd gepleegd;

c.  de wetsbepalingen houdende de wezenlijke elementen en de benaming van het strafbare feit waarvoor uitlevering wordt verzocht;

d.  de wetsbepalingen houdende de straf die op het delict is gesteld;

e.  de wetsbepalingen houdende toekenning van rechtsmacht ingeval het strafbare feit buiten het grondgebied van de verzoekende Staat werd gepleegd.

3.  Bij een verzoek tot uitlevering met betrekking tot een persoon die wordt gezocht met het oog op vervolging dienen te worden gevoegd:

a.  het origineel of een gewaarmerkt afschrift van het bevel tot aanhouding, opgemaakt door een rechter of andere bevoegde rechterlijke autoriteit van de verzoekende Staat; en

b.  het bewijsmateriaal dat, volgens het recht van de aangezochte Staat, de aanhouding en dagvaarding van die persoon zou rechtvaardigen indien het feit in die Staat zou zijn gepleegd, met inbegrip van bewijsmateriaal waaruit blijkt dat de persoon wiens uitlevering wordt verzocht degene is op wie het bevel tot aanhouding betrekking heeft.

4.  Bij een verzoek tot uitlevering met betrekking tot een veroordeelde persoon dienen te worden gevoegd:

a.  het origineel of een gewaarmerkt afschrift van het veroordelend vonnis, uitgesproken door een rechter van de verzoekende Staat;

9

b.  bewijsmateriaal waaruit blijkt dat de opgeëiste persoon degene is op wie de veroordeling betrekking heeft.

Indien de desbetreffende persoon schuldig werd verklaard maar hem geen straf werd opgelegd, dienen bij het verzoek tot uitlevering te worden gevoegd een verklaring dienaangaande van de desbevoegde rechter en het origineel of een gewaarmerkt afschrift van het bevel tot aanhouding.

Indien de desbetreffende persoon werd veroordeeld, dienen bij het verzoek tot uitlevering te worden gevoegd het origineel of een gewaarmerkt afschrift van het uitgesproken vonnis, een verklaring dat het vonnis kracht van gewijsde heeft en vatbaar voor tenuitvoerlegging is, en een verklaring waaruit blijkt in hoeverre het vonnis niet ten uitvoer is gelegd.

5.  De stukken die overeenkomstig dit artikel en artikel 10 ter ondersteuning van het verzoek tot uitlevering moeten worden overgelegd, dienen in de taal van de aangezochte Staat te worden vertaald.

6.  Stukken die voorzien zijn van het waarmerk of het zegel van het ministerie van Justitie of het ministerie van Buitenlandse Zaken van de verzoekende Staat zijn zonder nadere certificering, waarmerking of andere vorm van legalisering toelaatbaar in uitleveringsprocedures in de aangezochte Staat. Onder ministerie van Justitie wordt voor de Verenigde Staten van Amerika verstaan het Department of Justice van de Verenigde Staten en voor het Koninkrijk der Nederlanden het ministerie van Justitie van Nederland, of, indien de territoriale toepassing van dit Verdrag overeenkomstig artikel 20, eerste lid, onderdeel b, van de VS-EU-Uitleveringsovereenkomst wordt uitgebreid, als omschreven in de ingevolge daarvan uitgewisselde diplomatieke nota's.

7.  Indien de persoon om wiens uitlevering wordt verzocht, door de aangezochte Staat voorlopig is aangehouden, kan de verzoekende Staat voldoen aan de verplichting om zijn uitleveringsverzoek en de stukken ter ondersteuning langs diplomatieke weg overeenkomstig het eerste lid van dit artikel toe te zenden door in de verzoekende Staat het verzoek en de stukken over te leggen aan de ambassade van de aangezochte Staat in de

10

verzoekende Staat. In dat geval wordt met het oog op de termijn die uit hoofde van artikel 11, van dit Verdrag in acht moet worden genomen om de persoon in hechtenis te kunnen houden, de datum van ontvangst van het verzoek door de ambassade beschouwd als de datum van ontvangst ervan door de aangezochte Staat.

<u>Artikel 10 Aanvullend bewijsmateriaal</u>

1. Indien de bevoegde autoriteit van de aangezochte Staat van oordeel is dat het bewijsmateriaal, verschaft ter ondersteuning van het verzoek tot uitlevering van een opgeëiste persoon, niet toereikend is om te voldoen aan de vereisten van dit Verdrag, verzoekt die Staat om overlegging van het nodige aanvullende bewijsmateriaal. De aangezochte Staat kan een termijn stellen voor de overlegging van zodanig bewijsmateriaal en, op verzoek van de verzoekende Staat, een redelijke verlenging van die termijn toestaan.

2. Indien de opgeëiste persoon zich in detentie bevindt en het aanvullend bewijsmateriaal of de aanvullende gegevens, die zijn overgelegd, niet toereikend zijn of indien zodanig bewijsmateriaal of zodanige gegevens niet binnen de door de aangezochte Staat aangegeven termijn zijn ontvangen, kan hij uit het voorarrest worden ontslagen. Een dergelijk ontslag verhindert evenwel noch de verdere behandeling van het verzoek op basis van alsnog overgelegde stukken, noch, indien reeds een onherroepelijke beslissing is genomen, de indiening van een nieuw verzoek voor hetzelfde feit. In dat geval is het voldoende indien in het nieuwe verzoek wordt verwezen naar de overgelegde stukken ter ondersteuning van het eerdere verzoek, mits die stukken voor de uitleveringsprocedure voorhanden zijn.

3. Dergelijk aanvullend bewijs of aanvullende informatie kan rechtstreeks worden gevraagd en uitgewisseld tussen het ministerie van Justitie van Nederland en het Department of Justice van de Verenigde Staten.

11

Artikel 10 bis  Gevoelige informatie in een verzoek

Indien de verzoekende Staat overweegt bijzonder gevoelige informatie over te leggen ter ondersteuning van zijn uitleveringsverzoek, kan hij de aangezochte Staat raadplegen om na te gaan in hoeverre de informatie door de aangezochte Staat kan worden beschermd. Indien de aangezochte Staat de informatie niet overeenkomstig de wensen van de verzoekende Staat kan beschermen, bepaalt de verzoekende Staat of de informatie desondanks wordt overgelegd.

Artikel 11  Voorlopige aanhouding

1.  In geval van spoed kan elke Verdragsluitende Partij de voorlopige aanhouding verzoeken van ieder die wordt vervolgd of is veroordeeld. Het verzoek tot voorlopige aanhouding kan worden gedaan hetzij langs diplomatieke weg, hetzij in rechtstreeks contact tussen het Department of Justice van de Verenigde Staten en het ministerie van Justitie in Nederland of, indien de territoriale toepassing van dit Verdrag overeenkomstig artikel 20, eerste lid, onderdeel b, van de VS-EU-Uitleveringsovereenkomst wordt uitgebreid, als omschreven in de ingevolge daarvan uitgewisselde diplomatieke nota's.

2.  Het verzoek dient te bevatten: een beschrijving van de gezochte persoon, met inbegrip, indien beschikbaar, van zijn nationaliteit; een kort overzicht van de desbetreffende feiten, met inbegrip, indien mogelijk, van het tijdstip waarop en de plaats waar het feit werd gepleegd; een verklaring betreffende het bestaan van een bevel tot aanhouding van of een veroordelend vonnis tegen die persoon, en een verklaring dat een verzoek tot uitlevering van de gezochte persoon zal volgen.

3.  Na ontvangst van een zodanig verzoek neemt de aangezochte Staat de nodige maatregelen met het oog op de aanhouding van de gezochte persoon. Aan de verzoekende Staat wordt onverwijld kennis gegeven van het gevolg dat aan zijn verzoek is gegeven.

12

4. De voorlopige aanhouding wordt beëindigd indien de aangezochte Staat niet binnen 60 dagen na de inhechtenisneming van de gezochte persoon het officiële verzoek tot uitlevering en de in artikel 9 vermelde stukken ter ondersteuning daarvan heeft ontvangen.

5. De beëindiging van de voorlopige aanhouding volgens het vierde lid vormt geen beletsel voor de uitlevering van de opgeëiste persoon indien het verzoek tot uitlevering en de in artikel 9 vermelde documenten ter ondersteuning daarvan op een latere datum worden overgelegd.

Artikel 12 Beslissing en overlevering

1. De aangezochte Staat deelt de verzoekende Staat onverwijld langs diplomatieke weg zijn beslissing omtrent het verzoek tot uitlevering mede.

2. De aangezochte Staat geeft de redenen voor een gehele of gedeeltelijke afwijzing van het verzoek tot uitlevering op.

3. Indien uitlevering is toegestaan, vindt overlevering van de opgeëiste persoon plaats binnen de termijn die is voorgeschreven door de wet van de aangezochte Staat. De bevoegde autoriteiten van de Verdragsluitende Partijen bepalen in onderling overleg het tijdstip en de plaats van de overlevering van de opgeëiste persoon. Indien die persoon echter niet binnen de overeengekomen termijn uit het grondgebied van de aangezochte Staat is verwijderd, kan hij in vrijheid worden gesteld en kan de aangezochte Staat daarna zijn uitlevering voor hetzelfde feit weigeren.

Artikel 13 Uitgestelde beslissing en tijdelijke overlevering

Wanneer een beslissing op een verzoek tot uitlevering is genomen ten aanzien van iemand die wordt vervolgd of die een straf ondergaat op het grondgebied van de aangezochte Staat wegens een ander strafbaar feit, kan de aangezochte Staat:

a. de overlevering van de opgeëiste persoon uitstellen totdat de strafrechtelijke procedure tegen hem is beëindigd of de eventueel op te leggen of opgelegde straf volledig ten uitvoer is gelegd; of

13

b. de opgeëiste persoon tijdelijk aan de verzoekende Staat overleveren uitsluitend ten behoeve van de instelling van een vervolging. De aldus overgeleverde persoon dient tijdens zijn verblijf in de verzoekende Staat in hechtenis te worden gehouden en dient na afloop van de gerechtelijke behandeling van zijn zaak te worden teruggezonden overeenkomstig in onderling overleg tussen de Verdragsluitende Partijen vast te stellen voorwaarden.

### Artikel 14  Samenloop van verzoeken tot uitlevering of overlevering

1. Indien de aangezochte Staat van de verzoekende Staat en van een andere Staat of andere Staten een verzoek tot uitlevering van dezelfde persoon ontvangt, hetzij voor hetzelfde feit hetzij voor andere feiten, beslist de uitvoerende autoriteit van de aangezochte Staat of en aan welke Staat betrokkene wordt overgeleverd.

2. Indien het Koninkrijk der Nederlanden voor dezelfde persoon een verzoek tot uitlevering van de Verenigde Staten van Amerika en een verzoek tot overlevering op basis van een Europees aanhoudingsbevel ontvangt, beslist zijn uitvoerende autoriteit of en aan welke Staat betrokkene wordt overgeleverd.

3. Bij zijn beslissing krachtens het eerste en tweede lid van dit artikel houdt de aangezochte Staat rekening met alle relevante factoren waaronder, zij het niet uitsluitend:

a. of de verzoeken krachtens een verdrag zijn gedaan;

b. de plaats waar elk van de strafbare feiten is begaan;

c. de onderscheiden belangen van de verzoekende Staten;

d. de ernst van de strafbare feiten;

e. de nationaliteit van het slachtoffer;

f. de mogelijkheid van latere uitlevering tussen de verzoekende Staten; en

g. de volgorde waarin de verzoeken van de verzoekende Staten zijn ontvangen.

14

## Artikel 15  Specialiteitsbeginsel

1.   De krachtens dit Verdrag uitgeleverde persoon wordt niet in hechtenis gesteld, berecht of gestraft op het grondgebied van de verzoekende Staat ter zake van een ander feit dan datgene waarvoor uitlevering werd toegestaan, noch wordt hij door die Staat aan een derde Staat uitgeleverd, tenzij:

a.   die persoon na zijn uitlevering het grondgebied van de verzoekende Staat heeft verlaten en vrijwillig daarheen is teruggekeerd;

b.   die persoon het grondgebied van de verzoekende Staat niet heeft verlaten binnen 30 dagen na daartoe de vrijheid te hebben gehad; of

c.   de uitvoerende autoriteit van de aangezochte Staat heeft ingestemd met zijn hechtenis, berechting of bestraffing ter zake van een ander feit dan datgene waarvoor uitlevering werd toegestaan, of met uitlevering aan een derde Staat.  Met het oog hierop kan de aangezochte Staat de overlegging verlangen van in artikel 9 vermelde stukken of verklaringen, met inbegrip van door de uitgeleverde persoon afgelegde verklaringen met betrekking tot het desbetreffende feit.

Deze bepalingen zijn niet van toepassing op na uitlevering gepleegde feiten.

2.   Indien de tenlastelegging op grond waarvan de persoon was uitgeleverd in de loop van de procedure op wettelijke wijze wordt gewijzigd, kan die persoon worden vervolgd of berecht, mits het strafbare feit volgens zijn nieuwe wettelijke omschrijving:

a.   is gebaseerd op hetzelfde samenstel van feiten dat is vervat in het verzoek tot uitlevering en de stukken ter ondersteuning daarvan; en

b.   op dat feit volgens zijn nieuwe wettelijke omschrijving een zelfde maximumstraf is gesteld als, of een lagere maximumstraf is gesteld dan, op het feit waarvoor die persoon was uitgeleverd.

## Artikel 16  Vereenvoudigde uitlevering

Indien de uitlevering van een opgeëiste  persoon niet kennelijk naar het recht van de aangezochte Staat is uitgesloten, en mits de opgeëiste   persoon onherroepelijk schriftelijk instemt met uitlevering na in persoon door een rechter of bevoegde rechterlijke autoriteit op de hoogte te zijn gesteld van andere, in

15

formele uitleveringsprocedures toegekende rechten en van de waarborgen waarmee deze zijn omkleed en die hem zouden ontvallen, kan de aangezochte Staat uitlevering toestaan zonder dat een formele uitleveringsprocedure plaatsvindt. In dat geval is artikel 15 niet van toepassing.

Artikel 17  Overdracht van voorwerpen

1.  Op verzoek van de verzoekende Staat worden, voor zover dat naar het recht van de aangezochte Staat is toegestaan en behoudens de rechten van derden, die naar behoren dienen te worden geëerbiedigd, alle voorwerpen, werktuigen, zaken van waarde of stukken, die verband houden met het strafbare feit, ongeacht of zij voor het plegen daarvan zijn gebruikt, of die op enige andere wijze bewijsmateriaal voor het openbaar ministerie kunnen vormen, in beslag genomen en overgedragen nadat de uitlevering is toegestaan.  De in dit artikel vermelde voorwerpen worden overgedragen zelfs wanneer de uitlevering niet kan plaatsvinden ten gevolge van het overlijden, de ontvluchting of de verdwijning van de opgeëiste persoon.

2.  De aangezochte Staat kan als voorwaarde voor de overdracht van voorwerpen verlangen dat de verzoekende Staat een genoegzame verzekering geeft dat de voorwerpen zo spoedig mogelijk aan de aangezochte Staat zullen worden teruggegeven.

Artikel 18  Doortocht

1.  Elk van beide Verdragsluitende Partijen kan aan de andere Verdragsluitende Partij de doortocht door zijn grondgebied toestaan van een door een derde Staat overgeleverde persoon.  De Verdragsluitende Partij die de doortocht verzoekt, dient de in artikel 11, tweede lid, vermelde gegevens te verstrekken langs de in dat artikel voorziene wegen.  Een zodanige toestemming is niet vereist in geval van vervoer door de lucht, waarbij geen landing op het grondgebied van de andere Verdragsluitende Partij is voorzien.

16

2. Indien een onvoorziene landing op het grondgebied van de andere Verdragsluitende Partij plaatsvindt, is op de doortocht het bepaalde in het eerste lid van toepassing. Die Verdragsluitende Partij kan de over te leveren persoon gedurende 96 uur in hechtenis stellen in afwachting van het verzoek tot doortocht.

Artikel 19  Kosten

1. De aangezochte Staat controleert of de documentatie ter ondersteuning van een verzoek tot uitlevering aan de wettelijke vereisten voldoet alvorens deze aan zijn gerechtelijke autoriteiten voor te leggen, en stelt het verzoek van de verzoekende Staat die autoriteiten in handen.

2. De kosten van de vertaling van stukken ter ondersteuning van het verzoek tot uitlevering en van het vervoer van de opgeëiste persoon worden gedragen door de verzoekende Staat. Alle andere kosten gemaakt uit hoofde van het verzoek tot uitlevering en de uitleveringsprocedure worden gedragen door de aangezochte Staat. De aangezochte Staat kan financiële vorderingen, ingesteld naar aanleiding van de aanhouding en de inhechtenisneming van, het onderzoek met betrekking tot en de overlevering van opgeëiste personen krachtens de bepalingen van dit Verdrag, niet op de verzoekende Staat verhalen.

Artikel 20  Opzegging

Elk van beide Verdragsluitende Partijen kan dit Verdrag te allen tijde beëindigen door daarvan aan de andere Partij kennis te geven, en de beëindiging wordt van kracht zes maanden na de datum van ontvangst van die kennisgeving.

17

## AANHANGSEL LIJST VAN STRAFBARE FEITEN

1. Moord; aanslag met het oogmerk tot het plegen van moord.

2. Doodslag.

3. Opzettelijke verwonding; het toebrengen van zwaar lichamelijk letsel.

4. Opzettelijke brandstichting.

5. Verkrachting; aanranding van de eerbaarheid; incest; dubbel huwelijk.

6. Onwettige seksuele handelingen met of met betrekking tot kinderen onder de leeftijd als is bepaald in de wetgeving van zowel de verzoekende als de aangezochte Staat.

7. Opzettelijke verlating van een minderjarige of andere afhankelijke persoon, wanneer daardoor het leven van die minderjarige of andere afhankelijke persoon schade wordt toegebracht of naar alle waarschijnlijkheid zal worden toegebracht, dan wel dat leven in gevaar wordt gebracht of naar alle waarschijnlijkheid zal worden gebracht.

8. Wederrechtelijke vrijheidsberoving; schaking; ongerechtvaardigde opsluiting.

9. Roof; inbraak; diefstal; verduistering.

10. Bedrog, waaronder begrepen het verkrijgen van goederen, geld of waardepapieren door middel van valse voorspiegelingen, misleiding, leugens of andere bedrieglijke middelen.

11. Omkoperij, waaronder begrepen het vragen van een gift of belofte, het doen van een aanbod en het aanvaarden van een aanbod.

12. Afpersing.

13. Het in ontvangst nemen, bezitten of vervoeren van een zaak van waarde in de wetenschap dat deze door misdrijf is verkregen (heling).

14. Feiten met betrekking tot strafbaar gesteld misbruik van vertrouwen.

15. Strafbare feiten met betrekking tot valse munterij en valsheid in geschrifte; daarbij inbegrepen vervalsing van zegels, handelsmerken, officiële stukken, dan wel het gebruik van zodanige vervalsingen.

16. Strafbare feiten met betrekking tot het internationale verkeer van betaalmiddelen.

17. Strafbare feiten met betrekking tot de in-, uit- of doorvoer van goederen, artikelen of handelswaren, waaronder begrepen overtreding van de douanewetten.

18. Strafbare feiten met betrekking tot slavernij of mensenroof.

18

19. Strafbare feiten met betrekking tot het faillissement.

20. Strafbare feiten met betrekking tot het verbod van privaatrechtelijke monopolies of oneerlijke handelspraktijken.

21. Meineed; het aanzetten tot meineed; het afleggen van een valse verklaring ten overstaan van een overheidsinstelling of -functionaris.

22. Strafbare feiten met betrekking tot het opzettelijk ontduiken van belastingen en accijnzen.

23. Ieder handelen of nalaten waarvan te duchten is dat daardoor: (a) de veiligheid van een luchtvaartuig dat zich in de lucht bevindt of van personen aan boord van een zodanig luchtvaartuig in gevaar wordt gebracht; of (b) een luchtvaartuig wordt vernietigd of onklaar gemaakt.

24. Iedere onwettige overmeestering of het op onrechtmatige wijze onder zijn macht brengen van een luchtvaartuig dat zich in de lucht bevindt, door middel van dwang of geweld, bedreiging met dwang of geweld dan wel enige andere vorm van vreesaanjaging.

25. Ieder onwettig handelen of nalaten met de bedoeling of waarvan te duchten dat daardoor de veiligheid van personen in een trein, een vaartuig of enig ander vervoermiddel in gevaar wordt gebracht.

26. Zeeroof, muiterij of insubordinatie aan boord van een vaartuig.

27. Het opzettelijk toebrengen van schade aan goederen.

28. Strafbare feiten met betrekking tot de handel in, bezit van of de productie of vervaardiging van verdovende middelen, cannabis, psychotrope stoffen, cocaïne en de derivaten daarvan, en andere gevaarlijke middelen en chemicaliën.

29. Strafbare feiten met betrekking tot giftige chemicaliën of stoffen die schadelijk zijn voor de gezondheid.

30. Strafbare feiten met betrekking tot vuurwapens, munitie, explosieven, brandverwekkende apparaten of nucleaire stoffen.

31. Strafbare feiten met betrekking tot misbruik van ambtelijk gezag en ambtelijke bevoegdheden.

32. Strafbare feiten met betrekking tot het belemmeren van de loop van het recht.

33. Strafbare feiten met betrekking tot effecten en handelswaren.

34. Het vergemakkelijken of het mogelijk maken dat een persoon uit detentie ontvlucht.

19

35.   Opruiing tot geweldpleging.

36.   Iedere andere gedraging waarvoor uitlevering kan worden toegestaan overeenkomstig de wetten van beide Verdragsluitende Partijen.

20

No. 34

I have the honor to refer to the Agreement between the United States of America
and the Kingdom of the Netherlands, signed this day, comprising the instrument as
contemplated by Article 3(2) of the Agreement on Extradition between the United States
of America and the European Union signed at Washington 25 June 2003, as to the
application of the Extradition Treaty between the United States of America and the
Kingdom of the Netherlands signed at The Hague 24 June 1980. In view of the signature
of this instrument, I wish to clarify the legal status of certain notes relating to the 1980
Extradition Treaty and to the 2003 U.S.-EU Extradition Agreement.

On 31 December 1985, the Government of the Kingdom of the Netherlands
conveyed to the Government of the United States of America a diplomatic note
confirming that, inter alia, the 1980 Extradition Treaty continues to apply to the
Netherlands Antilles and to Aruba. The Extradition Agreement signed this day provides
that the application of the 1980 Extradition Treaty to the Netherlands Antilles and to
Aruba shall remain unaffected by the 2003 U.S.-EU Extradition Agreement. As a result,

the 1980 Extradition Treaty in its original form shall continue to apply to the Netherlands Antilles and to Aruba.

On 11 July 1991, the United States of America and the Kingdom of the Netherlands exchanged diplomatic notes constituting an understanding between the two governments regarding the extradition of nationals pursuant to the 1980 Extradition Treaty. This exchange of diplomatic notes shall continue to be applied in relation to Article 8 of the annex to the Extradition Agreement signed this day.

It is also noted that the 2003 U.S.-EU Extradition Agreement includes an explanatory note that "reflects understandings regarding the application of certain provisions of the Agreement" and constitutes an integral part of it. The understandings set forth in the explanatory notes are binding upon both the parties to the 2003 U.S.-EU Extradition Agreement and the member states of the European Union, and thus are applicable as well to the corresponding provisions of the Extradition Agreement signed this day.

If the foregoing understandings are shared by the Kingdom of the Netherlands, I have the honor to propose that this Note and Your Excellency's Note in reply shall constitute an understanding between the two Governments.

I avail myself of this opportunity to renew to Your Excellency the assurances of my highest consideration.

Embassy of the United States of America,

The Hague, September 29, 2004.



His Excellency
Mr. C.M. Sobel
Ambassador of the United States of America
At the Hague

The Hague, 29 September 2004

I have the honor to acknowledge receipt of your Note of today's date, which reads as follows:

"I have the honor to refer to the Agreement between the United States of America and the Kingdom of the Netherlands, signed this day, comprising the instrument as contemplated by Article 3(2) of the Agreement on Extradition between the United States of America and the European Union signed at Washington 25 June 2003, as to the application of the Extradition Treaty between the United States of America and the Kingdom of the Netherlands signed at the Hague 24 June 1980. In view of the signature of this instrument, I wish to clarify the legal status of certain notes relating to the 1980 Extradition Treaty and to the 2003 U.S.-EU Extradition Agreement.

On 31 December 1985, the Government of the Kingdom of the Netherlands conveyed to the Government of the United States of America a diplomatic note confirming that, inter alia, the 1980 Extradition Treaty continues to apply to the Netherlands Antilles and to Aruba. The Extradition Agreement signed this day provides that the application of the 1980 Extradition Treaty to the Netherlands Antilles and to Aruba shall remain unaffected by the 2003 U.S.-EU Extradition Agreement. As a result, the 1980 Extradition Treaty in its original form shall continue to apply to the Netherlands Antilles and to Aruba.

On 11 July 1991, the United States of America and the Kingdom of the Netherlands exchanged diplomatic notes constituting an understanding between the two governments regarding the extradition of nationals



pursuant to the 1980 Extradition Treaty. This exchange of diplomatic notes shall continue to be applied in relation to Article 8 of the annex to the Extradition Agreement signed this day.

It is also noted that the 2003 U.S.-EU Extradition Agreement includes an explanatory note that "reflects understandings regarding the application of certain provisions of the Agreement" and constitutes an integral part of it. The understandings set forth in the explanatory notes are binding upon both the parties to the 2003 U.S.-EU Extradition Agreement and the member states of the European Union, and thus are applicable as well to the corresponding provisions of the Extradition Agreement signed this day.

If the foregoing understandings are shared by the Kingdom of the Netherlands, I have the honor to propose that this Note and Your Excellency's Note in reply shall constitute an understanding between the two Governments.

I avail myself of this opportunity to renew to Your Excellency the assurances of my highest consideration".

I have the honor to confirm that the understanding described above is also the understanding of the Kingdom of the Netherlands and that Your Excellency's Note together with this Reply Note shall constitute an understanding between the two Governments.

I avail myself of this opportunity to renew to Your Excellency the assurances of my highest consideration.


Mr. J.P.H. Donner
Minister of Justice