IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>*v.*<br><br>DANTE JEVON ERICSON OTTLEY | Criminal Action No.<br><br>1:22-mj-716-JKL |

**Sur-Reply to Defendant's Motion to Terminate Provisional Arrest and Dismiss Case**

The United States of America, by Ryan K. Buchanan, United States Attorney, and Leanne M. Marek, Assistant United States Attorney for the Northern District of Georgia, acting at the request of the Kingdom of The Netherlands, files, at the direction of the Court, this Sur-Reply to Defendant's Motion to Terminate Provisional Arrest and Dismiss Case. Even considering the arguments raised by the Defendant for the first time in his reply brief, his motion is moot because the U.S. Department of State has received a timely extradition request from The Netherlands and the Defendant is no longer held pursuant to a provisional arrest. In any event, his arguments about whether the extradition request complies with Article 9 of the Treaty, including whether his criminal sentence is final or whether he is immune from prosecution because of the United States's laws relating to prior jeopardy, relate to whether certification of extradition is appropriate. These issues should therefore be reserved for the extradition

600 U.S. Courthouse, 75 Ted Turner Drive S.W., Atlanta, GA 30303
(404) 581-6000 fax (404) 581-6181

1

hearing. But even if the Court were to consider them now, they are meritless and should be rejected. Accordingly, the Court should deny Defendant's Motion to Terminate Provisional Arrest and Dismiss Case.

## 1. Ottley's Fails to Address Why His Claims are not Moot

As argued in the United States's response brief, Ottley's claims regarding his provisional arrest are moot as he now is being held on the basis of The Netherlands's formal extradition request, and not its provisional arrest request. *See*, *e.g.*, *Martinez v. United States*, 828 F.3d 451, 470 (6th Cir. 2016) (en banc) ("provisional arrest ended when Mexico submitted its formal extradition request, which means, as the panel majority correctly concluded, that his challenges to that arrest are moot."); *In re Extradition of Taylor*, No. 20-MJ-1069-DLC, 2020 WL 3893049, at *1 (D. Mass. July 10, 2020) ("[W]hile the motion was still pending, Japan submitted its formal request for the respondents' extradition to the State Department . . . effectively mooting any issues relating to the legitimacy of the provisional arrest warrants, and leaving only the issue of bail for consideration."). As these cases make clear, challenges to the provisional arrest are moot once the formal request has been received by the State Department.

Ottley's failure to respond to this argument is telling. The law is clear that he is now being held on the basis of The Netherlands's formal extradition request, thereby mooting all issues regarding the propriety of the provisional arrest.

Ottley cites no cases that contradict this principle, and the government is aware of none.

Further, double jeopardy does not apply to extradition proceedings. *See Collins v. Loisel*, 262 U.S. 426, 429 (1923) ("[I]t has been consistently held that . . . a fugitive from justice may be arrested in extradition proceedings a second time upon a new complaint charging the same crime, where he was discharged by the magistrate on the first complaint or the complaint was withdrawn."). Accordingly, if the Court were to terminate these proceedings based on a purported violation of the treaty's provisional arrest provision, The Netherlands' formal request for extradition could be used to pursue Ottley's re-arrest. *See* Article 11(5) of the U.S.-Netherlands treaty ("The termination of provisional arrest pursuant to paragraph (4) shall not prejudice the extradition of a person sought if the extradition request and the supporting documents mentioned in Article 9 are delivered at a later date."). Thus, dismissal of the complaint would serve no practical purpose at this juncture.

The Court should deny the Defendant's Motion to Dismiss solely because it is moot and reserve ruling on Ottley's remaining arguments when determining whether to certify the extradition request.

## 2. Even if Ottley's Claims Were Not Moot, They Lack Merit

Because Ottley's motion to dismiss should be denied as moot, the Court need not reach Ottley's remaining arguments presented in his reply. However, even if

the Court were to reach those arguments as part of its analysis on Ottley's motion to dismiss, it should reject them for the reasons summarized below.

### a. Ottley's Appeal Does Not Render the Extradition Request Improper

In its extradition request, The Netherlands stated that, notwithstanding Ottley's appeal to the Supreme Court in the Hague, "the Appeal Court's decision with regard to the detention is [sic] has final and binding effect and is enforceable, because the detention was ordered by the Court of Appeal and that decision cannot be appealed as such." Doc. 16-1 at 79. Nevertheless, Ottley claims that The Netherlands failed to provide "a statement that the sentence has final and binding effect and is enforceable" in its extradition request, as required by Article 9(4). This argument misinterprets the Treaty. The fact that Ottley has appealed his conviction in The Netherlands does not mean that the sentencing decision of the competent court is no longer has "final and binding effect" or is no longer "enforceable." Indeed, Ottley does not claim that any sentencing proceedings remain outstanding or that his sentence could not currently be enforced. Ottley appears to be in the same posture as a U.S. defendant who has been convicted and sentenced while pursuing an appeal or habeas petition. In that scenario, the conviction is treated as final, and the sentence can begin to be served, even though it could be potentially altered as a result of a separate ongoing legal proceeding.

If the Court were to interpret Article 9(4) in a way that required a sentence to be unchangeable or not subject to any form of future legal challenge, extradition would never be permitted under the Treaty because a conviction and related sentence can always be appealed, collaterally challenged, or even commuted. Defendants would therefore be emboldened to file frivolous attacks on their convictions for the sole purpose of avoiding extradition. The Court should avoid interpreting the Treaty in such a manner.

### b. The Information Provided by The Netherlands Shows the Extent to Which the Sentence Was Carried Out

The Netherlands provided the necessary information regarding the Defendant's sentence and the amount of time remaining for the sentence in compliance with Article 9(4). The Treaty requires "a statement showing to what extent the sentence has not been carried out." (Article 9(4)(b)). The Netherlands's request includes the following information: (1) Ottley was sentence to 20 years' imprisonment "minus pretrial detention"; (2) Ottley was first taken into custody on the manslaughter and attempted manslaughter charges for which is extradition is sought on or about January 2, 2019; and (3) the trial court's decision that released Ottley from custody was issued on March 11, 2020. [Doc. 16-1 at 43, 44, 61, 69]. More directly, the extradition request states, "In this case that means that the 15 months that Ottley spent in pretrial detention (from January 2019 up to and including March 2020) will be deducted from the 20 years imposed by the Court of Appeal. Thus, the sentence has not been carried out yet." Doc. 16-1 at

44. Accordingly, The Netherlands provided the necessary information to determine the extent to which Ottley's 20-year sentence has not been carried out and therefore complied with Article 9(4).

### c. Article 5 Does Not Bar Ottley's Extradition

Ottley claims, without citation to any cases in support, that Article 5(b) of the Treaty bars his extradition as a United States citizen because his right to be free from double jeopardy under the U.S. Constitution was violated when he was convicted by the Court of Appeal after having been acquitted by the trial court. As briefly discussed below, he is incorrect for several reasons.

As a preliminary matter, double jeopardy is irrelevant to this case because Ottley has not been prosecuted in St. Maarten more than one time for the same offense. He was subjected to one prosecution in St. Maarten in accordance with their criminal laws. As explained below, St. Maarten and the United States have different criminal procedure laws, but that does not change the fact that he has not been prosecuted more than once by the same sovereign.

Moreover, the U.S. Constitution does not apply to criminal proceedings in The Netherlands, and nothing in Article 5 establishes otherwise. Instead, the language of the Treaty is all that is relevant for purposes of considering to what extent double-jeopardy principles govern Ottley's extradition.

Article 5 states:

Extradition shall not be granted when:

a. The person sought is being proceeded against, has been prosecuted, or has been tried and convicted or acquitted by the Requested State for the offense for which extradition is requested; or,
b. The person sought is otherwise immune from prosecution for the offense for which extradition is requested by reason of the law in the Requested State related to prior jeopardy.

For extradition requests submitted by The Netherlands, Article 5(a) bars extradition when the person sought has already been prosecuted in the United States for the same offense for which extradition is sought. This clause essentially seeks to operate as the double jeopardy provision under the U.S. constitution would had all of the proceedings been domestic. Article 5(b) provides that, if extradition is not otherwise barred by Article 5(a), extradition may still be prohibited if U.S. double jeopardy law otherwise provides for immunity from prosecution. Article 5(a) and 5(b) must be read in conjunction because Article 5(b) refers to a person sought being "otherwise" immune from prosecution; the "otherwise" immune provision refers to a basis for immunity distinct from the double jeopardy protections already addressed by Article 5(a). As noted above, Article 5(a) already contains the protection granted by U.S. double jeopardy law, which protects against extradition where the person sought has been tried for the same offense in the United States. While Article 5(b) may account for a provision of law relevant in The Netherlands when the United States is the country requesting extradition, there is no basis under U.S. law to be "otherwise immune from prosecution" that is "related to prior jeopardy" in this case. Accordingly, in

this case, Article 5(b) does not add anything to what Article 5(a) already covers and does not pose any additional bar to Ottley's extradition.

Because it is undisputed that Ottley has not been prosecuted, let alone acquitted, in the United States of the same or even a similar offense for which extradition is requested, Article 5 does not apply. *See In the Matter of Grynsztein*, No. 15-mc-80918, 2015 WL 6039845, at *6 (S.D. Fla. Oct. 15, 2015) (holding that Article 5 of the Treaty between the United States and the Netherlands did not apply to a defendant who was previously acquitted of certain criminal charges in the Netherlands but had not been acquitted of those charges in the United States).

Moreover, Ottley's argument inappropriately seeks an interpretation of Article 5 that would essentially preclude extraditions to a requesting country simply because their criminal procedures differ from those in the United States. Such an interpretation should be avoided because it contradicts general extradition law and practice. Individuals are commonly extradited to countries with different criminal procedures than the United States. St. Maarten's criminal procedure provides for a de novo review of the facts of a case by an appellate court. While that differs from the criminal procedure of the United States, that is not a basis to dismiss the provisional arrest. Indeed, the Treaty, particularly Article 5, does not apply the U.S. Constitution to The Netherlands, regardless of Ottley's status as a citizen of both countries.

**Conclusion**

For the forgoing reasons, the government respectfully requests that the Defendant's motion to dismiss be denied as moot and that the Court reserve ruling on the Defendant's remaining arguments as they apply to certification of the extradition request and not dismissal of a provisional arrest.

Respectfully submitted,

RYAN K. BUCHANAN
*United States Attorney*

*Leanne Marek*

/s/ LEANNE M. MAREK
*Assistant United States Attorney*
Georgia Bar No. 270935
Leanne.marek@usdoj.gov

600 U.S. Courthouse, 75 Ted Turner Drive S.W., Atlanta, GA 30303
(404) 581-6000  fax (404) 581-6181

9

## Certificate of Service

The United States Attorney's Office served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

      Millie Dunn

January 31, 2023

      /s/ LEANNE M. MAREK
      LEANNE M. MAREK
      *Assistant United States Attorney*