IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN THE MATTER OF<br>THE EXTRADITION OF<br>DANTE JEVON ERICSON OTTLEY | CASE NO.: 1:22-MJ-716-JKL |

### ORDER

This matter is before the Court on Dante Jevon Ericson Ottley's Motion to Terminate Provisional Arrest and Dismiss Case. [Doc. 14.] For the reasons that follow, the motion is **DENIED**.

### BACKGROUND

On August 9, 2022, the United States swore out a complaint in support of Ottley's provisional arrest towards extradition. [Doc. 1.] The complaint indicated that the Government of Sint Maarten had asked the United States for Ottley's provisional arrest under Article 11 of an extradition treaty between the United States of America and the Kingdom of the Netherlands. [*Id.* at 1.[1]] According to

---

[1] In the United States' notice of filing the formal extradition request on December 5, 2022, the United States clarified that the complaint for provisional arrest referred to an outdated version of the treaty and that the operative treaty is the "Extradition Treaty Between the United States of America and the Kingdom of

the complaint, Ottley had been charged with manslaughter, attempted manslaughter, and possession of a firearm in violation Sint Maarten's Criminal Code in connection with a shooting at a nightclub in Sint Maarten. [*Id.* at 2-4.] A trial judge convicted him of the gun charge and acquitted him of the manslaughter charges. [*Id.* at 3-4.] The prosecutor appealed, and on March 31, 2022, the "Joint Court of Justice of Aruba, Curaçao, Sint Maarten and of Bonaire, Sint Eustatius, and Saba" (the "Court of Appeals") reversed the trial court's judgment, convicted him of manslaughter, attempted manslaughter, and possession of a firearm, and sentenced him to twenty years' imprisonment. [*Id.* at 4-5.] On April 1, 2022, the day after the Court of Appeals convicted and sentenced Ottley, he entered the United States. [*Id.* at 5.]

On September 8, 2022, Ottley was arrested on the complaint. [Doc. 1.] On November 10, 2022, he filed the "Motion to Terminate Provisional Arrest and

---

the Netherlands, U.S.-Neth., June 24, 1980, 35 U.S.T. 1334, and Agreement Compromising the Instrument as Contemplated by Article 3(2) of the Agreement on Extradition between the United States and the European Union signed 25 June 2003, as to the Application of the Extradition Treaty between the United States of America and the Kingdom of the Netherlands, signed at the Hague on 24 June 1980, signed September 29, 2004" (the "Treaty"). [Doc. 16 at 1-2.] There does not appear to be any material difference between the two versions of the treaty for present purposes.

2

Dismiss Case" presently before the Court. [Doc. 14.] In his motion, he argues that the Treaty required the Kingdom of the Netherlands to submit a formal request for extradition within 60 days following his arrest, but that as of the date of his motion, 63 days had passed and no formal request for extradition had been submitted. [*Id.*]

On December 9, 2022, the United States filed a Notice of Filing Extradition Request. [Doc. 16.] The Notice includes a declaration signed by Stacey Hauf, an attorney with the United States Department of State, in which she indicates that the Embassy of the Kingdom of the Netherlands submitted a diplomatic note dated October 31, 2022 requesting Ottley's extradition to serve a sentence in Sint Maarten. [Doc. 11-1 at 1.] Her declaration also indicates that the Ministry of Justice of Sint Maarten submitted supplemental information in the case by a letter dated November 22, 2022 to the United States Department of Justice. [*Id.* at 1-2.] It appears that the October 31 diplomatic note was received by the State Department on November 1, 2022. [*Id.* at 4.] It is not clear when the November 22, 2022 supplement was received by United States authorities.

On December 21, the United States filed its response to the motion to dismiss. [Doc. 19.] The United States presents a letter from the United States Department of State indicating that, on November 1, 2022, it received a formal request for

Ottley's extradition from the government of the Netherlands. [Doc. 19-1.] The United States argues that because the State Department received the formal extradition request on November 1, 2022, within the 60-day deadline imposed by the Treaty, Ottley's motion is moot because he is now being held on the basis of The Netherland's formal extradition request. [*Id.* at 2-3.] Alternatively, the United States contends, even if his motion is not moot, his arguments are meritless because the State Department received the formal extradition request. [*Id.* at 3-4.]

On reply, Ottley raises a number of new arguments in support of his motion. [Doc. 22.] First, he argues that the formal request for extradition was incomplete because it omitted that Ottley is a naturalized United States citizen and national. [*Id.* at 2.] Second, he contends that the Netherlands did not provide "a statement that the sentence has final and binding effect and is enforceable and a statement showing to what extent the sentence has not been carried out," as mandated by the Treaty. [*Id.*] In particular, he maintains that the extradition request that the Netherlands submitted is materially incomplete—and thus unenforceable—because (1) his sentence is not final because he appealed it to the Supreme Court in the Hague and, thus, there is no statement that the sentence is final or binding; and (2) there is no documentation indicating the extent to which the sentence has

4

not been carried out. [*Id.* at 2-3.] Third, he argues that, even if the documentation satisfied the Treaty requirements, it was not submitted within the 60-day period because the required information about finality and completion of his sentence was contained in a supplemental request submitted to the United States no earlier than November 22, 2022, some 15 days too late. [*Id.* at 3.] Finally, he contends that because he is a United States citizen, he is "deemed under the United States Constitution to be acquitted forever of the changes by the acquittal of the first Court and there could be no *de novo* review of the evidence by another court within the same sovereign." [*Id.* at 4.]

The United States filed a surreply on January 31, 2023. [Doc. 25.] It argues (1) Ottley did not respond to its contention that the filing of the formal extradition request mooted his challenge to the provisional arrest; (2) even if dismissal were appropriate, doing so would serve no practical purpose because double jeopardy does not apply to extradition proceedings and he would be simply re-arrested on the formal request for extradition; and (3) his motion is meritless because his sentence remains binding and final even though it is on appeal to the Supreme Court in the Hague, the information provided by the Netherlands shows the extent to

5

which the sentence was carried out, and the Treaty does not bar his extradition. [*Id.*]

## DISCUSSION

Article 11 of the Treaty sets out the procedure by which the state seeking extradition can request the provisional arrest of an "accused or convicted person." [Doc. 16-1 at 18.] Relevant for present purposes is paragraph 4 of Article 11, which imposes deadline of 60 days after arrest for the requesting state to formally request the person's extradition. It states,

> Provisional arrest shall be terminated if, within a period of 60 days after the apprehension of the person claimed, the Requested State has not received the formal request for extradition and the supporting documents mentioned in Article 9.

[*Id*. at 19.]

Article 9, meanwhile, sets out the procedure for extradition, including the information and documentation necessary to request extradition. As to a convicted person, a request for extradition must include:

- all available information concerning the identity, nationality, and probable location of the person sought;
- the original or certified copy of the judgment of conviction pronounced by a court of the Requesting State;
- evidence establishing that the person sought is the person to whom the conviction refers; and

6

- if the person was sentenced, (1) the original or certified copy of the sentence imposed; (2) a statement that the sentence has final and binding effect and is enforceable; and (3) a statement showing the extent to which the sentence has not been carried out.

[Doc. 16-1 at 15-16.]

Turning first to Ottley's contention that the formal request for extradition is defective because it does not disclose his status as a naturalized United States citizen, Ottley is correct that nothing in the extradition package indicates that he holds United States citizenship. Instead, the request simply notes that Ottley was born in Sint Maarten, implying that he holds citizenship there. [*See* Doc. 16-1 at 77.] But the mere absence of that information does not, at this point, warrant dismissal of this action because the Treaty requires the requesting state to provide ***available*** information about an individual [*see* Doc. 16-1 at 15], and it is unclear whether information about his United States citizenship was available to the authorities requesting his extradition.[2] Thus, this issue is not ripe.

The Court next turns to Ottley's arguments that the formal extradition request the Netherlands submitted on November 1, 2022 was incomplete because it did not set forth information "regarding the finality and completion of [his]

---

[2] The Court further notes that the parties agree that Ottley holds United States citizenship, but neither party cites to evidence supporting this fact.

7

sentence," but rather was contained in the supplemental request dated November 22, 2022. [Doc. 22 at 3.] On the contrary, the request did provide a statement showing the extent to which the sentence had not been carried out, specifically indicating that Ottley had been sentenced to 20 years' imprisonment; that he spent 15 months in pretrial detention, which will be deducted from his sentence; and that the sentence has not been carried out yet. [Doc. 16-1 at 44.] Also contrary to Ottley's argument otherwise, the extradition request provides information about the final and binding effect of the judgment, stating:

> OTTLEY appealed this verdict at the Supreme Court in The Hague. This appeal is still pending. However, the Supreme Court only reviews the procedure that has been followed in appeal. The Supreme Court won't take any decisions about the facts of the case. ***The verdict of the Court of Appeal ordering the immediate arrest of OTTLEY is therefore already enforceable.*** In this phase, OTTLEY cannot request the suspension or termination of his detention.

[*Id.* (emphasis added).]

But even assuming for the sake of argument that the extradition request was materially incomplete until at least November 22, 2022, the relief that Ottley seeks—his immediate release and dismissal of this action—is not appropriate because Paragraph 5 of Article 11 of the Treaty provides that "termination of provisional arrest" for failure to provide the information required by Article 9 "shall not prejudice the extradition of the person sought if the request for extradition and

8

the necessary documents mentioned in Article 9 are delivered at a later date." [Doc. 16-1 at 19.]

Nor is the Court persuaded by Ottley's related argument that because he has appealed the appellate court's conviction, there is no final and binding sentence. As Ottley accurately points out, the November 22 supplement states that Richardson had appealed his conviction to the Supreme Court in the Hague, and, thus, "[t]he judgement as a whole is . . . not final yet." [Doc. 16-1 at 79.] But the supplement also states that "the Appeal Court's decision with regard to the detention has final and binding effect and is enforceable, because the detention was ordered by the Court of Appeal and that decision cannot be appealed as such." [*Id.*] If the Treaty were read as Ottley suggests, a fugitive who has appealed a conviction would be immune from extradition—a decidedly absurd result. The better and, frankly, much more reasonable interpretation is that a sentence is final and binding if the sentence can begin to be served.

Finally, Ottley contends that he is exempt from extradition because the United States Constitution prohibits double jeopardy. In his view, because in the United States an appellate court could not convict him on charges on which he was

9

acquitted in a trial court, the treaty does not permit his extradition. The Court is constrained to disagree.

Article 5 provides that extradition must not be granted in the following two circumstances:

> (a) The person sought is being proceeded against, has been prosecuted, or has been tried and convicted or acquitted by the Requested State for the offense for which extradition is requested; or,
>
> (b) The person sought is otherwise immune from prosecution for the offense for which extradition is requested by reason of the law in the Requested State relating to prior jeopardy.

[Doc. 16-1 at 14.] Neither of these provisions prohibit Ottley's extradition here.

Paragraph 5(a) recognizes the principle that "the requested state does not extradite a person if he has already been prosecuted in that state for the acts on the basis of which extradition is sought, whether that prosecution resulted in conviction or acquittal." Restatement (Third) of Foreign Relations Law § 476 (1987). That provision does not bar Ottley's extradition because the "Requested State"—*i.e.*, the United States—has not proceeded against, prosecuted, convicted, or sentenced for offenses for which extradition is requested.

Nor does Paragraph 5(b) help Ottley. That provision bars the extradition of a person who would be "otherwise immune from prosecution" under the law of the Requested State. It does not, as Ottley contends, grant a U.S. citizen extraterritorial

protection from proceedings in a foreign county that—if carried out here—would violate the double jeopardy provisions of the United States Constitution. In the absence of any law in the United States that would otherwise grant him immunity from prosecution in Sint Maarten, Article 5(b) does not bar his extradition.

## CONCLUSION

For the foregoing reasons, Ottley's motion to terminate his arrest and dismiss the case [Doc. 14] is **DENIED**.

IT IS SO ORDERED, this 16th day of February, 2023.

_____
JOHN K. LARKINS III
United States Magistrate Judge