IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| KRISTY FORRESTER, | Civil Action No. |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| VEHO TECH, INC., | |
| Defendant. | |

## COMPLAINT FOR DAMAGES

COMES NOW, Kristy Forrester ("Plaintiff" or "Ms. Forrester"), by and through her undersigned counsel, and files this, her Complaint for Damages, and shows the Court as follows:

## NATURE OF COMPLAINT

1.

Plaintiff brings this action for damages, and reasonable attorney fees against Defendant Veho Tech, Inc. ("Defendant") for violations of her rights under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12111 et seq. ("ADA").

## JURISDICTION AND VENUE

### 2.

Plaintiff invokes the jurisdiction of this court pursuant to 28 U.S.C. §§ 1331, and 42 U.S.C. § 2000e-5(f).

### 3.

The unlawful employment practices alleged in this Complaint were committed within this district. In accordance with 28 U.S.C. § 1391, and 42 U.S.C. §2000(e)-5(f), venue is appropriate in this Court.

## ADMINISTRATIVE PROCEDURES

### 4.

Plaintiff has fulfilled all conditions necessary to proceed with this cause of action under the ADA. Plaintiff filed her Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 29, 2022; the EEOC issued its Notice of Right to Sue on April 19, 2023.

### 5.

Plaintiff timely files this action within ninety (90) days of receipt of the Notice of Right to Sue from the EEOC.

## **PARTIES**

6.

Plaintiff is a Female citizen of the United States of America and is subject to the jurisdiction of this Court.

7.

At all times relevant, Defendant was qualified and licensed to do business in Georgia, and at all times material hereto has conducted business within this District.

8.

At all such times, Plaintiff was an "employee" of Defendant as defined under the ADA at 42 U.S.C. § 12111(4). During all times relevant hereto, Defendant had employed fifteen (15) or more employees for the requisite duration under the ADA. Defendant is therefore covered under the ADA in accordance with 42 U.S.C. § 12111(5).

9.

Defendant may be served with process by delivering a copy of the summons and complaint to its Registered Agent, Legalinc Corporate Services, Inc., located at 1870 The Exchange, Suite 200 #44, Atlanta, GA, 30339, USA.

## FACTUAL ALLEGATIONS

10.

On or about September 2021, Ms. Forrester began working for Defendant as a Driver.

11.

On or around March 1, 2022, Ms. Forrester was promoted to Grounds Operations Associate ("GOA").

12.

On or around April 1, 2022, one of Defendant's Leads, Fayreen "Fay" Morgan, had a male employee follow Ms. Forrester to the restroom to see if she had permission to use the restroom from Ms. Morgan.

13.

Ms. Forrester reported Ms. Morgan's behavior to Defendant.

14.

On or around May 1, 2022, Ms. Forrester was promoted to Driver Ambassador and continued performing her regular warehouse duties as a GOA.

15.

Ms. Morgan spread rumors about Ms. Forrester, stating that she was sleeping with her manager, Adrian Golden, and was receiving unfair advancement.

16.

Ms. Morgan also spread a rumor that Ms. Forrester must be a lesbian since she was 37 years old at the time and did not have any kids.

17.

On or around May 20, 2022, Ms. Forrester was injured while unloading heavy boxes of around 60 lbs. each that were stacked five rows high.

18.

Ms. Forrester asked Defendant if she could be moved to another task because of the strain on her neck.

19.

Defendant informed Ms. Forrester that she would have to continue unloading the boxes until she submitted a doctor's excuse.

20.

Ms. Forrester's position description stated that she would only be required to lift up to 50 lbs.

21.

Ms. Forrester would not have applied for the job if she knew she would have to lift more than the 50 lb. weight limit.

22.

Ms. Forrester had a preexisting medical condition, so unloading 60 lb. boxes caused muscle spasms, pain, and inflammation in her neck.

23.

When Ms. Forrester met with her primary care physician, she was placed on a 15 lb. weight limit restriction.

24.

Ms. Forrester informed her manager, Adrian Golden, of her weight limit restriction.

25.

Mr. Golden approved Ms. Forrester's request for light duty work.

26.

Ms. Morgan did not agree with Mr. Golden's decision to give Ms. Forrester light duty work.

27.

Ms. Morgan started asking other Leads to write false reports about Ms. Forrester's work performance.

28.

On May 23, 2022, Ms. Morgan's cousin, Osei Bello, who is also a Manager for Defendant, submitted a Veho Written Warning Google form documenting a purported conduct issue with Ms. Forrester.

29.

Mr. Bello never told Ms. Forrester he had an issue with her conduct or that he was giving her a written warning.

30.

Ms. Forrester was not provided with a copy or otherwise informed of the May 23, 2022, written warning against her by Mr. Bello.

31.

On or around June 12, 2022, Ms. Forrester provided Defendant with medical documentation regarding her light duty restriction.

32.

On or around June 13, 2022, Victor Leary submitted a Veho Written Warning indicating a "Final" warning against Ms. Forrester for insubordination.

33.

Mr. Bello was present on June 13, 2022, and sent Ms. Forrester home.

34.

Mr. Leary and Mr. Bello did not inform Ms. Forrester that Mr. Leary was issuing her a Final Written Warning on or around June 13, 2022, and did not provide her with a copy of the warning.

35.

Ms. Forrester complained about the incident from June 13, 2022, to Defendant.

36.

On or around June 14, 2022, Mr. Golden told Ms. Forrester that Mr. Bello should not have sent her home.

37.

Mr. Golden paid Ms. Forrester for the hours she was not able to work on June 13, 2022.

38.

On or around June 28, 2022, Ms. Morgan submitted a Written Warning against Ms. Forrester indicating a purported conduct issue.

39.

Ms. Morgan did not inform Ms. Forrester that she was giving her a Written Warning on or around June 28, 2022, and did not provide her with a copy of the warning.

40.

This same day, Ms. Forrester reported bullying, harassment, questions about her sexual orientation, and a hostile work environment in the warehouse to Defendant.

41.

Ms. Forrester also asked Defendant for an emergency transfer to work remotely since she was experiencing medical and harassment issues that needed to be addressed immediately.

42.

Ms. Forrester informed Defendant that Mr. Leary told her she was the "slowest and weakest person in the warehouse."

43.

Ms. Forrester informed Defendant again of her medical history and restrictions.

44.

Ms. Forrester informed Defendant that another employee stated that Ms. Forrester should never have applied for the job and that it was not fair to the team that Ms. Forrester had a medical restriction.

45.

Ms. Forrester also informed Defendant that there were several other people in the warehouse with lifting restrictions who were provided reasonable accommodations.

46.

Defendant did not complete an investigation into her complaints.

47.

On or around July 5, 2022, Ms. Forrester submitted medical documentation to Defendant concerning her restriction.

48.

On or around July 6, 2022, Team Lead Nairu Liendo submitted a Written Warning against Ms. Forrester indicating purported insubordination and "avoiding to do the job."

49.

Ms. Liendo did not inform Ms. Forrester that she was giving her a Written Warning on or around July 6, 2022, and did not provide her with a copy of the warning.

50.

Ms. Forrester was not provided with a copy or otherwise informed that she was being issued a written warning by Ms. Liendo.

10

51.

On or around July 12, 2022, Mr. Leary forwarded the June 13th Written Warning email he wrote against Ms. Forrester to Ms. Morgan.

52.

On or around July 14, 2022, after Ms. Forrester left the warehouse around 12:00 PM, Ms. Morgan emailed management, including Ms. Forrester, and complained about Ms. Forrester.

53.

Ms. Morgan alleged that Ms. Forrester was evading work.

54.

Ms. Morgan alleged that Ms. Forrester was creating a hostile environment.

55.

Ms. Morgan alleged that Ms. Forrester was bullying her.

56.

Ms. Morgan alleged that Ms. Forrester was given unfair advancement.

57.

Ms. Morgan also alleged in her July 14, 2022, email that she informed Mr. Golden of her concerns and he did not address them.

58.

The same day, around 3:00 PM, Mr. Golden called Ms. Forrester and terminated her.

59.

Ms. Forrester contacted Mr. Fike in HR and he told her that she was not fired and that an investigation would be conducted.

60.

Mr. Fike also told Ms. Forrester to go online and apply for another Veho position.

61.

Defendant did not hire Ms. Forrester for any of the positions she applied to.

62.

Ms. Forrester asked Mr. Fike about her earning options while he investigated the termination.

63.

Ms. Forrester informed Mr. Fike that she felt blindsided by the written warnings because she had never seen them and expressed her displeasure with the poor communication concerning her medical notice.

64.

Ms. Forrester also informed Mr. Fike that she had been reporting Ms. Morgan's behavior since April 2022 and Ms. Morgan's email confirmed her complaints.

65.

Ms. Forrester informed Mr. Fike that the majority of the managers, including Ms. Morgan, were promoted through nepotism, which Veho was strongly against according to guidelines, so she did not understand how her raise and promotion were unfair to Ms. Morgan.

66.

Ms. Forrester also informed Mr. Fike that a manager, Courtney (LNU), had hired her wife, Chassidy (LNU), and promoted her at the same time.

67.

In this same conversation, Ms. Forrester asked Mr. Fike if there was any way Defendant could accommodate her by allowing her to work the door for Launch since it did not involve heavy unloading.

68.

Ms. Forrester told Mr. Fike that another employee, Emmanuel (LNU), was always given the privilege of working the door for Launch after his injury and asked if she could too.

69.

At the very least, Ms. Forrester asked if she could be allowed to work three days for Launch and use her remaining Paid Time Off (PTO).

70.

Ms. Forrester informed Mr. Fike that in addition to her previous complaints, Ms. Morgan was also selling alcoholic drinks in the warehouse and allowing employees to drink while at work.

71.

Mr. Bello was also aware that Ms. Morgan was selling alcoholic drinks to employees and allowing them to drink while at work.

72.

On or around July 19, 2022, Mr. Fike informed Ms. Forrester that drinking on the job was a terminable offense.

73.

On or around July 20, 2022, Mr. Fike informed Ms. Forrester that he was upholding the termination.

74.

Although Defendant purports to provide a legitimate non-discriminatory reason for the adverse action, this reason is a pre-text. Plaintiff was an individual with a disability, as defined by the Americans with Disabilities Act, as amended.

75.

Plaintiff requested a reasonable accommodation of her disabilities.

76.

Specifically, Plaintiff requested light duty work.

77.

Defendant failed to engage in the interactive process with Plaintiff, even though doing so would not have been an undue hardship.

78.

Defendant terminated Plaintiff because she had a record of a disability and/or because it regarded her as disabled and/or because she engaged in protective activity.

79.

But for Plaintiff's disability status and/or request for a reasonable accommodation of the same, she would not have suffered the adverse employment action.

80.

Plaintiff was treated less favorably in the terms or conditions of employment than others outside of her protected class, i.e. non-disabled employees and/or employees who did not request a reasonable accommodation for her disability.

## CLAIMS FOR RELIEF

## COUNT I:  DISABILITY DISCRIMINATION IN VIOLATION OF ADA

81.

Plaintiff re-alleges paragraphs 10-80 as if set forth fully herein.

82.

Plaintiff had a physical impairment which substantially limits one or more major life activities including but not limited to moving, lifting, bending, twisting, pushing, pulling, working, and standing.

83.

Plaintiff's physical impairment is a "disability" within the meaning of the ADA, as amended.

84.

Defendant was aware of Plaintiff's disability.

85.

Defendant regarded Plaintiff as having a disability such that she is a person with a disability and/or perceived disability within the meaning of the ADA, as amended.

86.

Plaintiff has a record of having a disability and/or perceived disability such that she is a person with a disability within the meaning of the ADA, as amended.

87.

At all times relevant to this action, Plaintiff was a qualified individual with a known or perceived disability as defined in the ADA.

88.

Defendant terminated Plaintiff's employment because of her disability, perceived disability, or record of having a disability.

89.

Defendant terminated Plaintiff's employment because of her accommodation requests.

90.

By terminating Plaintiff's employment because of her disability, perceived disability, or record of having a disability, Defendant violated the ADA, as amended.

91.

Although Defendant purports to provide a legitimate non-discriminatory reason for the adverse action, this reason is a pre-text for disability discrimination.

92.

Defendant treated other employees outside Plaintiff's protected class differently.

93.

Defendant's actions in subjecting Plaintiff to different terms and conditions of employment constitutes unlawful discrimination on the basis of this violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12111 *et seq.*, 42 U.S.C. 2000e et seq. and 42 U.S.C. section 1981A.

94.

Defendant has willfully and wantonly disregarded Plaintiff's rights, and Defendant's discrimination against Plaintiff was undertaken in bad faith.

95.

The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity and has otherwise adversely affected her status as an employee because of her disability.

96.

As a direct and proximate result Defendant's violation of the ADA, Plaintiff

has been made the victim of acts that have adversely affected her psychological and physical well-being.

97.

As a result of Defendant's discriminatory actions against Plaintiff, she has suffered lost compensation and benefits, emotional distress, inconvenience, humiliation, and other indignities.

98.

Pursuant to the ADA, as amended, Plaintiff is entitled to damages including but not limited to back pay and lost benefits, reinstatement, compensatory damages, equitable relief, attorneys' fees, costs of litigation and all other relief recoverable under the ADA, as amended.

99.

Defendant discriminated against Plaintiff, and, in failing and refusing to take any appropriate remedial action to remedy the unlawful employment practices, has not only deprived Plaintiff of equal employment opportunities, but exhibited malice or reckless indifference to the federally protected rights of Plaintiff.

100.

Plaintiff thus seeks compensatory and punitive damages pursuant to §102(a)(1) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(b).

## COUNT II:  FAILURE TO ACCOMMODATE IN VIOLATION OF ADA

101.

Plaintiff re-alleges paragraphs 10-80 as if set forth fully herein.

102.

Plaintiff has a physical impairment which substantially limits one or more major life activities including but not limited to moving, lifting, bending, twisting, pushing, pulling, and standing.

103.

Plaintiff's physical impairment is a "disability" within the meaning of the ADA, as amended.

104.

Defendant was aware of Plaintiff's disability.

105.

At all times relevant to this action, Plaintiff was a qualified individual with a known or perceived disability as defined in the ADA.

106.

Plaintiff was able to perform the essential functions of her job with a reasonable accommodation.

107.

Plaintiff requested that Defendant accommodate her disability by giving her light duty work.

108.

Upon receiving Plaintiff's request for an accommodation, Defendant failed to meaningfully engage in the interactive process with Plaintiff regarding her request for a reasonable accommodation of her disability.

109.

Defendant refused to provide Plaintiff with reasonable accommodations, even though to do so would not impose an undue hardship.

110.

By refusing to accommodate Plaintiff, Defendant violated the ADA, as amended.

111.

Defendant has willfully and wantonly disregarded Plaintiff's rights, and Defendant's failure to accommodate Plaintiff's disability was undertaken in bad faith.

112.

The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity and has otherwise adversely affected her status as an employee because of her disability.

113.

As a direct and proximate result Defendant's violation of the ADA, Plaintiff has been made the victim of acts that have adversely affected her psychological and physical well-being.

114.

As a result of Defendant's discriminatory actions against Plaintiff, she has suffered lost compensation and benefits, emotional distress, inconvenience, humiliation, and other indignities.

115.

Pursuant to the ADA, as amended, Plaintiff is entitled to damages including but not limited to back pay and lost benefits, reinstatement, compensatory damages, equitable relief, attorneys' fees, costs of litigation and all other relief recoverable under the ADA, as amended.

116.

Defendant discriminated against Plaintiff, and, in failing and refusing to take any appropriate remedial action to remedy the unlawful employment practices, has not only deprived Plaintiff of equal employment opportunities, but exhibited malice or reckless indifference to the federally protected rights of Plaintiff.

117.

Plaintiff thus seeks compensatory and punitive damages pursuant to §102(a)(1) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(b).

## COUNT III:  RETALIATION IN VIOLATION OF THE ADA, AS AMENDED

118.

Plaintiff re-alleges paragraphs 10-80 as if set forth fully herein.

119.

Plaintiff has a physical impairment which substantially limits one or more major life activities including but not limited to moving, lifting, bending, twisting, pushing, pulling, and standing.

120.

Plaintiff's physical impairment is a "disability" within the meaning of the ADA, as amended.

121.

Defendant was aware of Plaintiff's disability.

122.

At all times relevant to this action, Plaintiff was a qualified individual with a known or perceived disability as defined in the ADA.

123.

Defendant terminated Plaintiff for requesting an accommodation for her disability and/or perceived disability.

124.

Plaintiff's request for an accommodation of her disability and/or perceived disability constitutes protected conduct under the ADA, as amended.

125.

Defendant retaliated against Plaintiff by terminating her employment on the basis of her request for an accommodation.

126.

Defendant terminated Plaintiff's employment within a close temporal proximity to Plaintiff's accommodation requests.

127.

Defendant's proffered reasons for terminating Plaintiff's employment are a pretext designed to hide Defendant's retaliatory motive.

128.

Defendant's retaliatory actions against Plaintiff were in violation of the ADA, as amended.

129.

Defendant willfully and wantonly disregarded Plaintiff's rights, and Defendant's retaliation against Plaintiff was undertaken in bad faith.

130.

As a result of Defendant's retaliatory actions against Plaintiff, she has suffered lost compensation and benefits, emotional distress, inconvenience, humiliation, and other indignities.

131.

Pursuant to the ADA, as amended, Plaintiff is entitled to damages including but not limited to back pay and lost benefits, reinstatement, compensatory damages, equitable relief, attorneys' fees, costs of litigation and all other relief recoverable under the ADA, as amended.

132.

Defendant discriminated against Plaintiff, and, in failing and refusing to take any appropriate remedial action to remedy the unlawful employment practices, has not only deprived Plaintiff of equal employment opportunities, but exhibited malice or reckless indifference to the federally protected rights of Plaintiff.

133.

Plaintiff thus seeks compensatory and punitive damages pursuant to §102(a)(1) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(b).

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment as follows:

(a) General damages for mental and emotional suffering caused by Defendant's misconduct;

(b) Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts, including ratification, condonation and approval of said acts;

(c) Special damages and/or liquidated damages for lost wages and benefits and prejudgment interest thereon;

(d) Reasonable attorney's fees and expenses of litigation;

(e) Trial by jury as to all issues;

(f) Prejudgment interest at the rate allowed by law;

(g) Declaratory relief to the effect that Defendant has violated Plaintiff's statutory rights;

(h) Injunctive relief of reinstatement, or front pay in lieu thereof, and prohibiting Defendant from further unlawful conduct of the type described herein; and

(i) All other relief to which she may be entitled.

*[Signature on following page.]*

26

Respectfully submitted this 27th day of April 2023.

**BARRETT & FARAHANY**

s/ *Ianna O. Richardson*

Ianna O. Richardson
Georgia Bar No. 655153

*Counsel for Plaintiff*

P.O. Box 530092
Atlanta, Georgia 30353
(404) 214-0120
ianna@justiceatwork.com