**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**Atlanta Division**

| | |
|---|---|
| HANNAH LEWIS MARLOW, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No: _____ |
| | ) |
| EXPERIAN INFORMATION | ) |
| SOLUTIONS, INC. | ) |
| | ) |
| and | ) |
| | ) |
| SOUTHWEST RECOVERY | ) |
| SERVICES, INC. | ) |
| | ) |
| and | ) |
| | ) |
| ATLANTICUS SERVICES | ) |
| CORPORATION d/b/a | ) |
| FORTIVA RETAIL CREDIT | ) |
| | ) |
| and | ) |
| | ) |
| THE BANK OF MISSOURI, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, HANNAH LEWIS MARLOW, by and through

the undersigned Counsel, and as for her Complaint against Defendants, EXPERIAN

INFORMATION SOLUTIONS, INC. ("Experian"), SOUTHWEST RECOVERY

SERVICES, INC. ("SRS"), ATLANTICUS SERVICES CORPORATION, d/b/a FORTIVA RETAIL CREDIT and THE BANK OF MISSOURI (these last two entities are collectively referred to as "TBOM/ATLS/FORTIVA"), states as follows:

## PRELIMINARY STATEMENT

1.      This is an action for actual, statutory, and punitive damages, costs, and attorneys' fees brought pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681x ("FCRA").

2.      Today in America there are three major consumer reporting agencies ("CRAs"), Trans Union, LLC, Equifax Information Services, LLC and Experian Information Solutions, Inc.

3.      The FCRA demands that CRAs utilize reasonable procedures to assure the maximum possible accuracy of the information they report. 15 U.S.C. § 1681e(b). When a consumer disputes an item of information, the agency must investigate the dispute and, if the information cannot be verified, delete it. 15 U.S.C. § 1681i.

4.      This requirement of reasonable procedures designed to ensure the maximum possible accuracy of information CRAs report is meaningful, and no mere formality. It is not enough for them to simply parrot information they receive from

entities like SRS and TBOM/ATLS/FORTIVA, particularly where a consumer makes a dispute about information reported.

5.     When a consumer disputes information through the CRAs, those disputes are transmitted to the party furnishing the information. In this matter, Defendants SRS and TBOM/ATLS/FORTIVA are such furnishers. The FCRA demands that each party separately conduct a reasonable investigation of the consumer's dispute and correct or delete information they learn to be inaccurate or cannot otherwise verify.

6.     Plaintiff brings claims under Section 1681e(b) of the FCRA against Experian because it reported inaccurate information about her concerning fraudulent accounts with SRS and TBOM/ATLS/FORTIVA.  When Plaintiff disputed these inaccuracies, Experian did not reasonably investigate, also violating § 1681i.

7.     The Consumer Financial Protection Bureau has noted, "experience indicates that [CRAs] lack incentives and under-invest in accuracy" Consumer Fin. Prot. Bureau, Supervisory Highlights Consumer Reporting Special Edition 21 (Issue 14, March 2, 2017).  This is particularly true as to how Experian has complied with its now 50-year-old obligation to conduct a meaningful accuracy investigation.

8.     Experian has been repeatedly sued by consumers, sanctioned by regulators and reprimanded by both District and Appellate courts to do more than an

automated parroting of what their customer-creditors instruct. Had Experian followed that advice and heeded those warnings, Plaintiff would not have been harmed.

9. Likewise, SRS and TBOM/ATLS/FORTIVA violated the FCRA, § 1681s-2(b), when they received Plaintiff's disputes from Experian and failed to reasonably investigate those disputes. Instead, discovery will show that all SRS and TBOM/ATLS/FORTIVA did was consult their own records about the accounts and confirm to Experian the inaccurate information they were already reporting.

## JURISDICTION AND VENUE

10. The jurisdiction for this Court is conferred by 15 U.S.C. § 1681p and 28 § U.S.C. 1367.

11. Venue is proper in this District and Division as the violations described in this Complaint occurred in this District, and each of the Defendants transact business within this District.

## PARTIES

12. The Plaintiff is a natural person and a "consumer" as defined by 15 U.S.C. § 1681a(c). Plaintiff is a resident of this District.

13. Experian is a corporation, authorized to do business in the State of Georgia through its registered agent located in Lawrenceville, Georgia. Experian

may be served with the summons and Complaint through its registered agent, to wit: CT Corporation System, 289 Culver St., Lawrenceville, GA  30046-4805.

14.    Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f) (hereinafter, a "CRA"). Upon information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

15.    Experian disburses such consumer reports to third parties under contract for monetary compensation.

16.    Southwest Recovery Services, Inc. is a corporation, authorized to conduct business in the State of Georgia through its registered agent located in Roswell, Georgia.  It may be served with the summons and Complaint through its registered agent, to wit: Registered Agent Solutions, Inc., 900 Old Roswell Lakes Parkway, Suite 310, Roswell, GA  30076.

17.    Southwest Recovery Services, Inc. is a "furnisher" as governed by 15 U.S.C. § 1681s-2.

18.    Atlanticus Services Corporation is a corporation, authorized to conduct business in the State of Georgia through its registered agent located in Peachtree Corners, Georgia.  Atlanticus Services Corporation manages Fortiva Retail Credit

("Fortiva") accounts.  It may be served with the summons and Complaint through its registered agent, to wit: Corporation Services Company, 2 Sun Court, Suite 400, Peachtree Corners, GA 30092.

19.     The Bank of Missouri is engaged in the business of consumer lending, including in this District, and issues a second look point of sale consumer credit program through Fortiva Retail Credit that is managed by Atlanticus Services Corporation.   It may be served with the summons and Complaint through its registered agent, to wit: Jason G. Crowell, 916 N. Kingshighway St., Perryville, MO 63775-1204.

20.     Collectively, SRS, The Bank of Missouri, Atlanticus and Fortiva (TBOM/ATLS/FORTIVA) are "furnishers" as governed by 15 U.S.C. § 1681s-2.

## FACTUAL ALLEGATIONS

### *Sections 1681e(b) and 1681i(a) of the Fair Credit Reporting Act Require Substantive Investigations and Prohibit Mere "Parroting" of the Defendant's Creditor-Customers*

21.     "Congress enacted FCRA in 1970 out of concerns about abuses in the consumer reporting industry. See S. Rep. No. 91-517, at 3 (1969); 116 Cong. Rec. 35941 (1970) (statement of Sen. Proxmire); *id.* at 36570 (statement of Rep. Sullivan); . . .. In enacting FCRA Congress adopted a variety of measures designed to ensure that agencies report accurate information." *Dalton v. Capital Associated*

*Indus., Inc.*, 257 F.3d 409, 414–15 (4th Cir. 2001). "In recognition of the critical role that CRAs play in the credit markets and the serious consequences borne by consumers because of inaccurate information disseminated in consumer credit reports prepared by CRAs, Congress placed on a CRA what can only be described as very high legal duties of care, set forth . . . in 15 U.S.C. §§ 1681e(b), 1681i(a)(1)(A), and 1681i(a)(3)(A)." *Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011).

22.    "Section 1681e(b) sets forth the CRAs' overall du[t]y:

(b) Accuracy of report. Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

*Burke,* 2011 WL 1085874, at *4.

23.    "The . . . FCRA . . . was crafted to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995) (citations omitted). "'These consumer-oriented objectives support a liberal construction of the FCRA,' and any interpretation of this remedial statute must reflect those objectives." *Cortez v. Trans Union, LLC,* 617 F.3d 688, 706 (3d Cir. 2010) (quoting *Guimond,* 45 F.3d at 1333).

24.      Section 1681i(a) on the other hand requires much more from a CRA

after a consumer has placed it on notice of an inaccuracy through her dispute:

> [I]f the completeness or accuracy of any item of information contained
> in a consumer's file at a consumer reporting agency is disputed by the
> consumer and the consumer notifies the agency directly . . .  of such
> dispute, the agency shall, free of charge, conduct a reasonable
> reinvestigation to determine whether the disputed information is
> inaccurate and record the current status of the disputed information, or
> delete the item from the file . . .  before the end of the 30-day period[.]

15 U.S.C.A. § 1681i(a)(1)(A).

25.      Section § 1681i(a) imposes "a duty . . . to make reasonable efforts to

investigate and correct inaccurate or incomplete information brought to its attention

by the consumer." *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1160

(11th Cir. 1991). "[T]he term 'investigation' is defined as '[a] detailed inquiry or

systematic examination' or 'a searching inquiry.'" *Hinkle v. Midland Credit Mgmt.,*

*Inc.*, 827 F.3d 1295, 1303 (11th Cir. 2016) (citations omitted).

26.      It has long been the law that a CRA, such as Experian, does not fulfill

its "grave responsibility" to conduct a reinvestigation of a consumer's dispute by

merely contacting the creditor who supplied the dispute item. *See, e.g.*, *Pinner v.*

*Schmidt,* 805 F.2d 1258, 1262 (5th Cir.1986) (concluding it was unreasonable for a

credit reporting agency to contact only the creditor in its reinvestigation of a disputed

debt); *Collins v. Experian Info. Sols., Inc.*, 775 F.3d 1330, 1333 (11th Cir.), *on reh'g*

*sub nom. Collins v. Equable Ascent Fin., LLC*, 781 F.3d 1270 (11th Cir. 2015); *Carlisle v. Nat'l Commercial Servs., Inc.*, No. 1:14-CV-515-TWT-LTW, 2016 WL 4544368, at *9 (N.D. Ga. July 22, 2016), *report & recommendation adopted,* No. 1:14-cv-515-TWT, 2016 WL 4532219 (N.D. Ga. Aug. 29, 2016) ("[A] reasonable factfinder could find that merely contacting [the creditor] was not sufficient to determine whether the disputed information was inaccurate.")

27.     That "grave responsibility" imposed by the FCRA reinvestigation requirement" must consist of something more than merely parroting information received from other sources."  *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997).  Accordingly, "a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute." *Id.* The Court held that Trans Union's reading of Section 1681i(a) to require only parroting "would require it only to replicate the effort it must undertake in order to comply with § 1681e(b)[,] render[ing] the two sections largely duplicative of each other." *Id.*

28.     As the Fourth Circuit explained in *Johnson v. MBNA*:

The key term at issue here, "investigation," is defined as "[a] detailed inquiry or systematic examination." Am. Heritage Dictionary 920 (4th ed.2000); *see* Webster's Third New Int'l Dictionary 1189 (1981) (defining "investigation" as "a searching inquiry").

29.     Further, as Experian is aware, the Eastern District of Virginia has held that even though the term "investigation" is not used in § 1681e(b), it is clear that Experian has a duty to conduct a reasonable initial investigation pursuant to § 1681e(b) as well as § 1681i(a) and that this is "central" to the CRAs' duties of care under that portion of the Act:

> This conclusion flows from the plain meaning of both [§1681e(b) and §1681i(a)]. For example, Section 1681e(b) requires (1) "reasonable procedures" that (2) "assure" (3) "maximum possible accuracy." To "assure" means "to make sure or certain: put beyond all doubt." *Webster's Third New International Dictionary* 133 (1993). "Maximum" means the "greatest in quantity or highest degree attainable" and "possible" means something "falling within the bounds of what may be done, occur or be conceived . . . ." *Id.* at 1396, 1771. It is difficult to imagine how "maximum possible accuracy" could be guaranteed without an adequate investigation. Likewise, Section 1681i(a)(1)(A) requires a "reinvestigation," necessarily implying that an "investigation" was required to have been performed in the first instance.

*Burke*, 2011 WL 1085874, at *4.

30.     Today, furnishers such as SRS and TBOM/ATLS/FORTIVA, have their own independent duties under the FCRA, principally those found at 15 U.S.C. §1681s-2.  But while Experian's duties under §1681e(b) were enacted in 1970 and have governed since, the duties on furnishers are much recent, enacted on in 1996.  THE CONSUMER CREDIT REPORTING REFORM ACT OF 1996, Pub. L. No. 104-208 (1996).

10

### *The Theft of Plaintiff's Identity*

31.    In approximately 2018, Plaintiff's passport and social security card were stolen in Detroit, Michigan.  In February 2021, Plaintiff started receiving credit monitoring alerts that her credit score had decreased. Upon investigation, Plaintiff discovered that she had been the victim of identity theft and accounts had been opened in her name without her knowledge and consent.

32.    Plaintiff did not receive any notices of delinquent accounts, payments, or charges for any of the accounts and liabilities the identity thief obtained using Plaintiff's personal identifying information.

33.    Upon discovery, Plaintiff filed a police report and contacted Fortiva directly and thereafter, the credit bureaus to dispute the fraudulent accounts.

34.    Plaintiff did not learn about the SRS collection account until months later when she learned that it was reporting on her Experian report.

35.    Due to the defamatory, inaccurate, and derogatory reporting of the accounts related to identity theft, particularly the fraud accounts reported by Defendants ("Fraud Accounts"), Plaintiff's credit was significantly negatively impacted.

36.    Due to the defamatory nature and reporting of the inaccurate Fraud Accounts by Defendants, Plaintiff experienced and suffered from depression,

humiliation, and anxiety due to her financial devastation compounded with her inability to build or utilize credit to make purchases. Plaintiff was also denied housing based on her credit score.

37.    Plaintiff used Experian's online dispute portal and sent dispute letters to Experian regarding the fraudulent accounts and inaccurate reporting.

### *Plaintiff Disputes the Inaccuracies with The CRAs*

38.    On or about May 2021, Plaintiff made an online dispute through Experian's online dispute portal regarding a fraudulent TBOM/ATLS/FORTIVA account reporting derogatorily about her (the "TBOM/ATLS/FORTIVA Account").

39.    On May 17, 2021, Experian responded with its dispute results to inform Plaintiff that the TBOM/ATLS/FORTIVA Account was verified as accurate and would continue to be reported in Plaintiff's consumer file.

40.     In or around October 2021, Plaintiff filed a second online dispute regarding the fraudulent TBOM/ATLS/FORTIVA Account through Experian's online dispute portal.

41.    On or about October 14, 2021, Experian forwarded Plaintiff its dispute results that again advised that the TBOM/ATLS/FORTIVA Account had been

verified as accurate.  The account was reporting as past due with a balance of $1,809. The account was not reporting as disputed by the consumer.

42.    On or after October 14, 2021, Plaintiff again disputed the TBOM/ATLS/FORTIVA Account through Experian's online dispute portal.

43.    On or about November 8, 2021, Experian again advised for the third time that the derogatory TBOM/ATLS/FORTIVA Account had been verified as accurate.  The account was not being reported as disputed.

44.    On or after November 8, 2021, Plaintiff again disputed the fraudulent TBOM/ATLS/FORTIVA Account through Experian's online dispute portal.

45.    On or about November 29, 201, Experian advised for the fourth time that the derogatory TBOM/ATLS/FORTIVA Account had been verified as reporting accurately.  The account was reporting with a past due balance of $1,809 and was not reported as in dispute by the consumer.  (The disputes set forth in ¶¶ 38-44 above are collectively referred to herein as the "TBOM/ATLS/FORTIVA Disputes")

46.    As of January 6, 2022, a review of the Plaintiff's Experian credit file revealed that the TBOM/ATLS/FORTIVA Account was still reporting derogatorily. Further, the account was not reporting as disputed by the consumer.

47.    On or about February 23, 2022, Plaintiff obtained a copy of her Experian Consumer Disclosure and learned that the TBOM/ATLS/FORTIVA

Account was no longer reporting, however a fraudulent SRS collection account (the "SRS Account") was reporting with a balance of $15,111.  The underlying account associated with this collection was reported as Compass Property Management.  Plaintiff has never had any relationship with either SRS or Compass Property Management.

48.    On or after February 23, 2022, Plaintiff disputed the SRS Account through Experian's online dispute portal.

49.    On March 15, 2022, Experian forwarded Plaintiff its dispute results.  Experian advised that the SRS Account had been verified as accurate.  The SRS Account was reporting as disputed by consumer.

50.    On June 9, 2022, Plaintiff forwarded Experian a written dispute letter via Certified Mail, Return Receipt requested to dispute the SRS Account.  Experian received the Plaintiff's dispute on June 10, 2022.  (The disputes described in ¶¶ 48-50 above are collectively referred to herein as the "SRS Disputes."  The TBOM/ATLS/FORTIVA Disputes and the SRS Disputes are collectively referred to herein as the "Disputes.")

51.    Plaintiff did not receive a Dispute response as a result of her June 9, 2022 dispute letter from Experian.

52.   On August 9, 2022, Plaintiff obtained a copy of her Experian Consumer Disclosure.  Upon review, the SRS Account was still reporting derogatorily with a balance of $15,111.  The SRS Account was reporting as disputed by consumer.

53.   On April 6, 2023, Plaintiff obtained a copy of her Experian Consumer Disclosure, upon review she noted that the SRS Account was still reporting derogatorily as a collection account with a balance of $15,111.  The account reported that an FCRA investigation had been completed and the consumer disagreed with the outcome.

### Experian Did Not and Does Not
### Conduct Any Investigation of Most Consumer Disputes

54.   Unknown to the Plaintiff until this lawsuit, it has long been the practice of Experian to refuse to perform that statutorily mandated FCRA investigation and instead delegate all action in response to consumer disputes to a third-party outsource vendor located overseas.

55.   Experian uses a sister company, Experian Chile (or Experian Costa Rica), located in Santiago, Chile to process its mail disputes. Experian long ago lost the argument that testimony from these dispute agents requires more than a garden-variety Rule 30 notice. *Calderon v. Experian Info. Sols., Inc.*, 290 F.R.D. 508, 510 (D. Idaho 2013). Such was confirmed in a recent case in the Eastern District of

Virginia with Plaintiff's Counsel opposing, wherein Experian produced its Chilean dispute investigator for remote deposition through a Rule 30(b)(1) notice without opposition. *Sublett v. Nissan of Richmond, LLC, et al.*, No. 3:20-cv-156 (E.D. Va.). To the extent Experian would argue here that it cannot produce its Chilean dispute agents pursuant to a Rule 30 notice, then Plaintiff will pursue his 1681i failure-to-investigate claim on the same theory—no investigation was conducted by the CRA.

56.    Experian uses low-wage employees to work quickly to process consumer dispute letters received, skimming the letters and selecting one or a handful of codes from a dropdown menu to best describe the consumer's detailed dispute information in 2 digits.  For example, the most common relevant code is: "01 Not his/her."

57.    These dispute agents are not allowed to do any of these things: contact the consumer; use the telephone or e-mail to investigate; research; contact the furnisher directly; or take longer than 5 minutes per dispute.

58.    The dispute processing agents are not hired to perform actual FCRA investigations. Instead, the agent's sole responsibility is to read consumer dispute letters, select one of a handful of common dispute codes from a drop-down menu and then click that code.

59.     Experian itself did not conduct any reinvestigation of Plaintiff's disputes.  Instead, it merely caused them to be removed from its control to be saved within a database by an overseas data-processing vendor.

60.     In fact, Experian strongly encourages consumers to make disputes through its online portal. When consumers do so, the consumer has to click one of just a few available dispute reasons (such as "The balance and/or past due amount are/is incorrect"). The online dispute then is outputted into the "e-Oscar" system described below without ever touching human hands or being read by human eyes at Experian. It gets sent to Experian's creditor customer, such as SRS and TBOM/ATLS/FORTIVA, for that creditor customer's sole review and consideration.

61.     Regardless of whether these statements are correct, Experian believes that it cannot direct, control, manage or reliably influence the employees of their respective third-party outsource vendors.

62.     Experian, itself, did not conduct any reinvestigation of Plaintiff's disputes. Instead, it merely caused them to be removed from its control to be saved within a database by an overseas data-processing vendor.

***Experian Forwarded Plaintiff's***
***Disputes to TBOM/ATLS/FORTIVA and SRS, Who Did Nothing***

63.     In each instance in which the Plaintiff disputed the TBOM/ATLS/FORTIVA and SRS accounts with Experian, Experian forwarded Plaintiff's disputes to TBOM/ATLS/FORTIVA and/or SRS using an electronic system called "e-Oscar," which is an industry-wide process by which such disputes are electronically communicated to furnishers and dispute results sent back to Experian.

64.     e-Oscar is also the system by which TBOM/ATLS/FORTIVA and SRS has agreed it will accept such consumer disputes from Experian.

65.     Under such circumstances, TBOM/ATLS/FORTIVA and SRS became obligated under the FCRA to investigate Plaintiff's disputes.

66.     Plaintiff's disputes to Experian regarding the TBOM/ATLS/FORTIVA account, made in an attempt to have TBOM/ATLS/FORTIVA investigate her disputes, went unanswered through four disputes to Experian. TOMB/ATLS/FORTIVA verified the fraudulent account as accurately reporting to Experian at least four times. The TBOM/ATLS/FORTIVA account was deleted from her Experian file at some point prior to February 2022.

67.     Plaintiff's disputes to Experian regarding the SRS account, in an attempt to have SRS investigate her disputes, resulted in SRS verifying the account and the account continues to report on the Plaintiff's Experian credit report to this day.

68.     TBOM/ATLS/FORTIVA failed to investigate Plaintiff's disputes.

69.     SRS failed to investigate Plaintiff's disputes.

70.     The information furnished by TBOM/ATLS/FORTIVA and SRS to Experian was at all times inaccurate.

71.     On or about a date better known to Defendants, Experian furnished Plaintiff's disputes to TBOM/ATLS/FORTIVA and SRS.

72.     TBOM/ATLS/FORTIVA failed to reasonably investigate Plaintiff's disputes that it received from Experian in violation of § 1681s-2(b)(1)(A) of the FCRA.

73.     SRS failed to reasonably investigate Plaintiff's disputes that it received from Experian in violation of § 1681s-2(b)(1)(A) of the FCRA.

74.     Defendant TBOM/ATLS/FORTIVA further violated 15 U.S.C. § 1681s-2(b)(1)(E) by failing to accurately correct and update or delete the fraudulent account information after receiving Plaintiff's disputes from Experian.

75.     Defendant SRS further violated 15 U.S.C. § 1681s-2(b)(1)(E) by failing to accurately correct and update or delete the fraudulent account after receiving Plaintiff's disputes from Experian and prior to the commencement of this action.

76.     Experian responded to Plaintiff's disputes, claiming the TBOM/ATLS/FORTIVA and SRS information reported was verified as accurate and the information was updated. This response confirms that Experian communicated Plaintiff's disputes to TBOM/ATLS/FORTIVA and SRS.

### *Plaintiff Suffered Actual Harm*

77.     Experian continued to report the derogatory TBOM/ATLS/FORTIVA accounts on Plaintiff's credit reports (the "Credit Reports") to third-parties, despite being notified that this information was false up until sometime prior to February 9, 2022.

78.     Experian continued to report the derogatory SRS Account on Plaintiff's Credit Reports and is still reporting the SRS A account, despite being notified that this information was false.

79.     Plaintiff has been attempting to resolve these matters with Experian and her credit has been significantly destroyed by Defendants' failure to correct the inaccurate reporting.

80.     As a result of the defamatory nature of the inaccurate credit reporting,

Plaintiff has suffered damages, including, but not limited to:

     a.     Stress associated with the multiple disputes of the fraudulent accounts including anxiety and humiliation associated with financial stress;

     b.     Monies lost by attempting to fix her credit, e.g., communication costs, postage for disputes;

     c.     Loss of time and expending effort attempting to cure the error;

     d.     Mental anguish, stress, aggravation, and other related impairments to the enjoyment of life.

     e.     Stress associated with attempting to resolve this matter in the last year.

     f.     Plaintiff was denied housing as a result of her credit score.

### *Defendants' Conduct Was Willful*

81.     The FCRA allows for a remedy for a "willful" violation. A willful act

or violation includes, "not only knowing violations of [the statute], but reckless ones

as well." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, at 57 (2007). A "reckless"

action includes conduct whereby "the company ran a risk of violating the law

substantially greater than the risk associated with a reading that was merely careless." *Id*. at 69.

82.    Proof of willfulness includes, for example, "evidence that other consumers have lodged complaints similar to" the one made by the Plaintiff and a failure to make the correction right away. *Dalton*, 257 F.3d at 418; *Saunders v. Branch Banking & Trust Co. of Va*., 526 F.3d 142, 151 (4th Cir. 2008).

83.    As detailed above, the FCRA section at issue here, and informative guidance, have been around now for over 50 years. The language of § 1681e(b) has not changed. Experian's dispute investigation obligations under § 1681i(a) has not changed. The FCRA's caution of Defendants' "grave responsibilities" to ensure accuracy has not changed.

84.    Experian has received thousands of disputes and other complaints regarding the creditors at issue in this case-sufficient to require a reasonable company to at least examine or investigate further before blindly accepting further reporting.

85.    In many of these FCRA lawsuits brought by a consumer, Experian was a named co-defendant.

86.     Experian knew or should have known of this litigation history. Experian uses and has access to PACER to investigate and monitor such consumer complaints.

87.     The CFPB has maintained a Consumer Complaint database since 2017. It receives a small percentage of the total consumer credit reporting complaints made nationwide, as many multiples more are made directly to the Defendant, and/or to other government agencies, attorneys, or non-profit organizations.

88.     Experian regularly receives unredacted consumer dispute details from this database.

89.     Since the database began accepting complaints in 2017, the CFPB has sent hundreds of thousands of consumer credit reporting complaints to Experian.

90.     Further, over 33,000 of the CFPB complaints as to Experian were based largely on their failure to reasonably investigate consumer disputes.

91.     Just in the last 12 months alone, Experian has been sued by consumers alleging their violation of the FCRA over 2,000 times. Most of these alleged that Experian violated § 1681i(a) by failing to conduct a lawful reinvestigation of the consumer's accuracy dispute. This complaint history has been true for nearly every year over the last decade.

92.     While the thousands of consumer complaints and hundreds of thousands of consumer disputes alone would have put Experian on notice of the failures of its dispute investigation procedures in ensuring accuracy, numerous Federal District and Circuit Courts have placed Experian on notice that it  may not merely "parrot" what its creditor- customer tells it if the consumer had provided a substantive and detailed dispute.

93.     Experian has had had actual notice from numerous other courts that its blind ACDV "parroting" was unlawful. *See, e.g.*, *Centuori v. Experian Info. Sols., Inc.*, 431 F. Supp. 2d 1002, 1008 (D. Ariz. 2006) ("'The grave responsibility imposed by [the FCRA] must consist of something more than merely parroting information received from other sources.'").

94.     Experian has repeatedly been criticized by federal and state regulators and consumer groups for the refusal or failure to conduct substantive reinvestigations.

95.     In 2015, a large group of state Attorneys General forced a consent order from Experian by which Experian was required to develop procedures necessary to

comply with the FCRA.  The AG Settlement required amongst many changes and mandates that Experian comply with § 1681i(a).[1]

96.     The AG Settlement also required Experian to conduct significant research and data gathering-even creating a "working group" to address these issues, and to develop special procedures to handle disputes as in this case. Notwithstanding these requirements, Experian did not meaningfully comply with the AG Settlement in these regards.

97.     Experian is also aware of substantive and detailed criticism by public interest groups about their automated dispute system. For example, in 2009, the National Consumer Law Center ("NCLC"), the organization that publishes the leading legal treatise in this field, also published a scathing research paper detailing the actual process followed by the CRAs when a consumer makes a dispute. That report was updated in 2019. AUTOMATED INJUSTICE REDUX Ten Years after a Key Report, Consumers Are Still Frustrated Trying to Fix Credit Reporting Errors, National Consumer Law Center, February 2019. ("NCLC Report").[2]

98.     The NCLC Report summarized its context:

---

[1] *Available at* https://www.ohioattorneygeneral.gov/Files/Briefing-Room/News-Releases/Consumer-Protection/2015-05-20-CRAs-AVC.aspx.
[2] *Available at* https://www.nclc.org/images/pdf/credit_reports/automated-injustice-redux.pdf.

Ten years ago, the National Consumer Law Center (NCLC) issued Automated Injustice: How a Mechanized Dispute System Frustrates Consumers Seeking to Fix Errors in their Credit Reports, the landmark report on the serious dysfunctions in the American credit reporting system. Since then, the Consumer Financial Protection Bureau (CFPB) began exercising supervision authority over the Big Three credit bureaus (Equifax, Experian and TransUnion), and started the difficult task of compelling them to reform their procedures and practices. A coalition of more than 30 state Attorneys General reached a breakthrough settlement with the credit bureaus in 2015, requiring an array of reforms. Despite these very laudable achievements, the credit bureaus and the companies that supply them with information still have serious problems in ensuring the accuracy of credit reports, affecting millions of American consumers. The dispute process required by the Fair Credit Reporting Act (FCRA) that was intended to fix these problems remains ineffective and biased.

99.     Among many of Experian's accuracy failures, the NCLC Report discovered:

- Insufficient Information Conveyed and Considered in Investigation. Credit bureaus use the highly automated e-OSCAR system to convey disputes to furnishers, primarily using shorthand two- or three-digit codes, and at most only a line or two of text in a minority of instances. The credit bureaus use the same four or five codes over 80% of the time.

- Failure to Transmit Information Submitted by the Consumer. Credit bureaus failed to send supporting documentation submitted by consumers to furnishers, in clear violation of the FCRA.

- Perfunctory Credit Bureau Investigations. Credit bureaus limit the role of their employees who handle disputes, or of the foreign workers employed by their offshore vendors, to

> little more than selecting these two- or three-digit codes. Workers do not examine documents, contact consumers by phone or email, or exercise any form of human discretion in resolving a dispute.
>
> • Credit Bureaus Always Side with Furnishers. Credit bureaus are universally biased in favor of furnishers and against consumers in disputes. In a practice known as "parroting," credit bureaus blindly adopted the response of the furnisher without performing any independent review.

NCLC Report at 6.

100.   Defendants TBOM/ATLS/FORTIVA and SRS have had actual notice of established law defining their duties under § 1681s-2(b).  The leading case in this regard is the Fourth Circuit's decision, *Johnson v. MBNA Am. Bank, NA*. 357 F.3d 426 (4th Cir. 2004). *Johnson* and its progeny long ago established that the § 1681s-2(b)(1)(A) directive to furnishers to "conduct an investigation with respect to the disputed information" required a "reasonable investigation," that is, a "careful" or "searching inquiry," as opposed to a "superficial" one, "to determine whether the disputed information can be verified." *Johnson*, 357 F.3d at 430–31.

101.   This standard for an investigation requires more than a superficial data conformity check of verifying that the data contained in a furnisher's computer records is the same as that reported to the CRAs. In a decision adopting the Fourth Circuit's *Johnson* standard, the Court of Appeals for the Ninth Circuit explained:

27

> The Fourth Circuit's reasoning in *Johnson* is entirely persuasive. *By its ordinary meaning, an "investigation" requires an inquiry likely to turn up information about the underlying facts and positions of the parties, not a cursory or sloppy review of the dispute.* Moreover, like the Fourth Circuit, we have observed that "a primary purpose for the FCRA [is] to protect consumers against inaccurate and incomplete credit reporting." *Nelson*, 282 F.3d at 1060. *A provision that required only a cursory investigation would not provide such protection; instead, it would allow furnishers to escape their obligations by merely rubber stamping their earlier submissions, even where circumstances demanded a more thorough inquiry.*

*Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1162–63 (9th Cir. 2009) (emphasis added).

102.    TBOM/ATLS/FORTIVA and SRS also had actual knowledge of the Fourth Circuit's decision, *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 146–47 (4th Cir. 2008), as well as cases that thereafter adopted and followed it, which held that a furnisher that fails to report a debt it knows is disputed as disputed would be in violation § 1681s-2(b).

103.    Despite the notice, TBOM/ATLS/FORTIVA and SRS have refused to change their dispute investigation process because it would cost too much money to do so.

104.    Despite the notice and judicial, regulatory and public interest criticism, Experian and furnishers have refused to change their dispute investigation process because it would cost too much money to do so.

105.   Defendants' procedures imposed on the Plaintiff an unjustifiably and unreasonable risk of harm that could have been mitigated or avoided with just modest imposition.

## CLAIMS FOR RELIEF

### COUNT I:
### VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681e(b)
### (Experian)

106.   Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the Credit Reports and credit files they published and maintained concerning the Plaintiff.

107.   As a result of this conduct, action, and inaction of Experian, the Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

108.   The violations by Experian were willful, rendering Experian liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, if Experian is negligent, Plaintiff is entitled to recover under 15 U.S.C. § 1681o.

109.   Plaintiff is entitled to recover costs and attorneys' fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT II:**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT 15**
**U.S.C. § 1681i(a)(1)**
**(Experian)**

110.   Experian violated 15 U.S.C. § 1681i(a)(1) by failing to conduct a reasonable reinvestigation to determine whether the disputed Fraud Accounts were inaccurate and record the current status of the disputed information or delete the item from the Plaintiff's credit files.

111.   Experian violated 15 U.S.C. §1681i(a)(4) by failing to consider all relevant information submitted by Plaintiff with the Disputes.

112.   Experian violated 15 U.S.C. §1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate information from Plaintiff's credit files or modify the item of information upon a lawful reinvestigation.

113.   As a result of Experian's violations of 15 U.S.C. § 1681i(a), Plaintiff suffered actual damages, including but not limited to:  loss of credit, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

114.   The violations by Experian were willful rendering Experian liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C.

§ 1681n.  In the alternative, Experian was negligent, entitling Plaintiff to recovery under 15 U.S.C. §1681o.

115.   Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

### COUNT III:
### VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681s-2(b)(1)(A) and (B)
### (TBOM/ATLS/FORTIVA and SRS)

116.   On one or more occasions within the past two years, by example only and without limitation, TBOM/ATLS/FORTIVA and SRS violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's Disputes.

117.   On one or more occasions within the past two years, by example only and without limitation, TBOM/ATLS/FORTIVA and SRS violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by Experian.

118.   Based on the manner in which Experian responded to – or did not respond to Plaintiff's Disputes, representing that TBOM/ATLS/FORTIVA and SRS had "verified" the supposed accuracy of its reporting, Plaintiff alleges Experian did in fact forward the Plaintiff's dispute via an ACDV to TBOM/ATLS/FORTIVA and SRS .

119.   TBOM/ATLS/FORTIVA and SRS understood the nature of Plaintiff's Disputes when it received the ACDVs from Experian.

120.   Notwithstanding the above, TBOM/ATLS/FORTIVA and SRS follow a standard and systemically unlawful process when it receives the ACDV dispute.  Basically, TBOM/ATLS/FORTIVA and SRS only review its own internal computer screens for the account and repeat back to the ACDV system the same information it already has reported to Experian.

121.   When TBOM/ATLS/FORTIVA and SRS receive a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether or not the information already in its computer system is itself accurate.

122.   As a result of TBOM/ATLS/FORTIVA and SRS's violations of 15 U.S.C. §1681s-2(b)(1)(A) and (B), Plaintiff suffered actual damages, including but not limited to:  loss of credit, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

123.   TBOM/ATLS/FORTIVA and SRS' FCRA violations were willful rendering each individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.  In the alternative, TBOM/ATLS/FORTIVA and SRS were negligent, entitling Plaintiff to recovery under 15 U.S.C. §1681o.

124.   Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from TBOM/ATLS/FORTIVA and SRS in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

**COUNT IV:**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681s-2(b)(1)(C) and (D)**
**(TBOM/ATLS/FORTIVA)**

125.   On one or more occasions within the past two years, by example only and without limitation, TBOM/ATLS/FORTIVA violated 15 U.S.C. § 1681s-2(b)(1)(C) and (D) by publishing false information within the Plaintiff's credit files in response to her TBOM/ATLS/FORTIVA Disputes without also including a notation that the account was disputed and by failing to correctly report the results of accurate investigation to Experian.

126.   TBOM/ATLS/FORTIVA "verified" to Experian the supposed accuracy of its reporting but failed to include the notation in the Plaintiff's consumer file that the account was "in dispute".

127.   As a result of TBOM/ATLS/FORTIVA's violations of 15 U.S.C. §1681s-2(b)(1)(C) and (D), Plaintiff suffered actual damages, including but not limited to:  loss of credit, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

128.   TBOM/ATLS/FORTIVA's FCRA violations were willful rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.  In the alternative, TBOM/ATLS/FORTIVA was negligent, entitling Plaintiff to recovery under 15 U.S.C. §1681o.

129.   Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from TBOM/ATLS/FORTIVA in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

**COUNT IV:**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681s-2(b)(1)(E)**
**(TBOM/ATLS/FORTIVA and SRS )**

130.    TBOM/ATLS/FORTIVA and SRS violated 15 U.S.C. § 1681s-2(b)(1)(E) by failing to accurately correct and update or delete Plaintiff's information after receiving Plaintiff's Disputes from Experian and prior to the commencement of this action. This failure to correct Plaintiff's information resulted from TBOM/ATLS/FORTIVA and SRS' failure to investigate as articulated herein, after TBOM/ATLS/FORTIVA and SRS received notice of Plaintiff's Disputes from Experian.

131. As a result of this conduct, action and inaction of TBOM/ATLS/FORTIVA and SRS, the Plaintiff suffered actual damages, including

but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

132.   TBOM/ATLS/FORTIVA and SRS' FCRA violations were willful rendering each individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.  In the alternative, TBOM/ATLS/FORTIVA and SRS were negligent, entitling Plaintiff to recovery under 15 U.S.C. §1681o.

133.   Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from TBOM/ATLS/FORTIVA and SRS  in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff demands judgment and actual, statutory, and punitive damages against Defendants, jointly and severally; for her attorneys' fees and costs; for pre-judgment and post-judgment interest at the legal rate, specific

performance and injunctive relief, and such other relief the Court deems just and proper.

       Dated:  April 27, 2023

                          Respectfully submitted,

By:  */s/John A. Love*

        John A. Love
        **LOVE CONSUMER LAW**
        2500 Northwinds Parkway
        Suite 330
        Alpharetta, GA 30009
        (404) 855 – 3600 – Telephone
        (404) 301-2300 - Fax
        Email:  tlove@loveconsumerlaw.com

        Craig C. Marchiando, *pro hac vice forthcoming*
        Leonard A. Bennett, *pro hac vice forthcoming*
        **CONSUMER LITIGATION ASSOCIATES, P.C.**
        763 J. Clyde Morris Blvd., Suite 1-A
        Newport News, VA 23601
        (757) 930-3660 – Telephone
        (757) 930-3662 – Facsimile

        Email:  craig@clalegal.com
        Email:  lenbennett@clalegal.com

        Drew D. Sarrett, *pro hac vice forthcoming*
        **CONSUMER LITIGATION ASSOCIATES, P.C.**
        626 E. Broad Street, Suite 300
        Richmond, Virginia 23219

Telephone: (804) 905-9900
Facsimile: (757) 930-3662
Email: drew@clalegal.com

*Counsel for Plaintiff*