UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> DILLARD'S, INC., <br><br> Defendant. | <br><br><br> CIVIL ACTION NO. <br><br><br><br> JURY TRIAL DEMAND |

## COMPLAINT

This is an action under Title I of the Civil Rights Act of 1991, and Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), to correct unlawful, employment practices and to provide appropriate relief to Shiellah Tobert ("Tobert"), who was adversely affected by them. The Equal Employment Opportunity Commission (the "Commission" or "EEOC") alleges that Defendant Dillard's, Inc., ("Defendant") subjected Tobert to adverse employment actions, including terminating her employment, because she engaged in statutorily protected activity, in violation of Title VII.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to: Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3), 42 U.S.C. § 2000e-6, and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Northern District of Georgia, Atlanta Division.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission" or "EEOC"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. Defendant is a department store chain.

5. Defendant owns and operates approximately 300 department stores in 29 states.

6. At all times relevant to this lawsuit, Defendant owned Store Number 0260, located at 7000 North Point Circle, Alpharetta, Georgia 30022 (the "Store").

7. At all relevant times, Defendant has conducted business in the State of Georgia and has continuously maintained at least 15 employees.

8. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under 42 U.S.C. § 2000e(b).

## **ADMINISTRATIVE PROCEDURES**

9. More than thirty days prior to the institution of this lawsuit, Tobert filed a Charge of Discrimination with the Commission alleging violations of Title VII by Defendant.

10. On May 17, 2022, the Commission issued a Letter of Determination finding reasonable cause to believe that Defendant had violated Title VII and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

11. The Commission engaged in communications with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the Letter of Determination.

12. The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

13. On September 19, 2022, the Commission issued to Defendant a Notice

of Failure of Conciliation.

14. All conditions precedent to the institution of this lawsuit have been fulfilled.

**STATEMENT OF FACTS**

15. On or about January 22, 2008, Tobert began her employment with Defendant at the Store.

16. Tobert worked as a Sales Associate at the Store from approximately January 22, 2008, until approximately August 1, 2020.

17. Prior to February 2020, Tobert worked in the Store's Men's Cremieux department.

18. While working in the Store's Men's Cremieux department, Tobert was among the top 4 Sales Associates for the Store for several years.

19. In or about October 2019, Tobert informed the Store Manager that she was pregnant and needed an accommodation for a pregnancy-related complication.

20. Tobert supplied a doctor's note with her accommodation request.

21. Tobert's accommodation request comprised, *inter alia*, short, as-needed sitting breaks.

22. Tobert's request was granted by Defendant.

23. In or around January 2020, the prior Store Manager left and was

replaced by a New Store Manager.

24. On or about February 15, 2020, Tobert informed the New Store Manager of her pregnancy accommodation.

25. The New Store Manager instructed Tobert to obtain another doctor's note supporting her accommodation because the one the Store had wasn't good enough.

26. On or about February 20, 2020, the New Store Manager informed Tobert that she would be transferred from the Men's Cremieux department to the Ladies Swimwear department.

27. Tobert did not want to transfer to the Ladies Swimwear department.

28. Ladies Swimwear was a seasonal department.

29. Tobert felt that she would not be able to meet her sales goals in Ladies Swimwear.

30. At all relevant times, the policy or practice of the Store regarding departmental transfers of high performing Sales Associates was that such transfers were both (1) optional and (2) accompanied by a pay increase—typically $1.00 per hour.

31. At the time of the transfer, Tobert was a high performing Sales Associate.

32. Tobert's transfer to the Ladies Swimwear department was not optional.

33. Tobert's transfer to the Ladies Swimwear department was not accompanied by a pay increase.

34. On or about March 7, 2020, Tobert complained to the District Manager that the New Store Manager's transfer of her was discriminatory and was based on her race, African American, and pregnancy.

35. Upon information and belief, the New Store Manager was immediately informed of Tobert's complaint.

36. Approximately two weeks after Tobert's complaint, the New Store Manager reduced her work hours.

37. Upon discovering her hours were reduced, Tobert asked the New Store Manager for the criteria used by Defendant to decide which employees would have their hours reduced.

38. The New Store Manager told Tobert that the decision was based on quarterly sales, with employees who had lower sales having their hours reduced.

39. Tobert was among the highest sellers for the quarter.

40. The New Store Manager verified that Tobert's quarterly sales did not qualify her for hours reduction.

41. However, he did not alter the decision to cut her hours.

42. On or about April 4, 2020, the Store furloughed all non-salaried workers due to the COVID-19 pandemic, including Tobert.

43. On or about May 1, 2020, the New Store Manager began calling employees to return to work as the Store was to reopen on or about May 7, 2020.

44. On or about May 1, 2020, the New Store Manager called Tobert to "check on her" and see if she had had her baby.

45. During the May 1st call, the New Store Manager did not ask Tobert whether she wanted to return to work.

46. On or about June 16, 2020, the New Store Manager and the Assistant Manager called Tobert.

47. During the call, the New Store Manager informed Tobert that if she did not hear from Defendant prior to July 4, 2020 about returning to work, she would be terminated.

48. By the time of this call, Tobert had become aware that other furloughed employees had been asked by Defendant to return to work.

49. Tobert then asked the New Store Manager for the criteria used by Defendant to determine which employees were eligible to return to work.

50. The New Store Manager informed Tobert that Defendant was selecting those employees to return to work who were ready and willing to do so.

51. Tobert informed the New Store Manager and the Assistant Manager that she was ready and willing to return to work but she had not been asked to return.

52. However, during the call, neither manager asked Tobert to return to work.

53. On or around July 3, 2020, Tobert contacted the New Store Manager via email to inquire about her employment status.

54. The New Store Manager subsequently called Tobert.

55. During the call on or about July 3, 2020, the New Store Manager gave Tobert "two options": Tobert could either "quit now" or stay on furlough for another month in the hopes that business conditions improved.

56. Tobert still was not asked to return to work.

57. Tobert responded by email and text message and informed the New Store Manager that she did not want to quit and would elect to remain on furlough on the hopes that she could return to work.

58. On or about July 29, 2020, the New Store Manager called Tobert to inform her that she was being terminated effective August 1, 2020.

59. Tobert was told that she was being terminated due to a reduction in force.

60. Later, Tobert learned that other furloughed employees were still being called to return to work.

61. When she contacted the New Store Manager, he told Tobert that returning employees had answered their phones and expressed a willingness to work while she declined to return.

62. Tobert denies ever being contacted in May, June or July 2020 by the New Store Manager and asked to return to work.

63. The New Store Manager further claimed that there was not enough work in the Ladies Swimwear department.

64. Defendant moved another part-time employee to the Ladies Swimwear department and ultimately offered Tobert's position of full-time Ladies Swimwear Sales Associate to that employee.

65. Upon information and belief, Defendant hired new full time employees throughout the 2020 furlough period.

## STATEMENT OF CLAIMS

### Retaliation

66. Since at least March 2020, Defendant has engaged in unlawful employment practices in violation of Title VII by terminating Tobert for engaging in protected activity.

67. The Commission realleges and incorporates by reference the allegations set forth in paragraphs 1 through 65 as if fully asserted herein.

68. Tobert's complaint that her transfer to another department was discriminatory based on her race and pregnancy was statutorily protected activity.

69. Almost immediately after her complaint, Defendant subjected Tobert to materially adverse employment actions, including but not limited to: (1) including Tobert among the low performing employees whose hours were cut in mid-March 2020 despite her undisputed record of superior performance; (2) deliberately excluding Tobert from waves of employees who were called back from furlough beginning in May 2020, approximately two months after her complaint; and (3) terminating Tobert in July 2020.

70. These adverse actions were taken by Defendant *because* Tobert engaged in statutorily protected activity.

71. There is a causal connection between Tobert's complaint and Defendant's adverse actions based on close temporal proximity.

72. The effects of the practice(s) complained of above have been to deprive Tobert of equal employment opportunities and otherwise adversely affect her status as an employee because she engaged in protected activity.

73. The unlawful employment practices complained of above were intentional.

74. The unlawful employment practices complained of above were done with malice and/or with reckless indifference to Tobert's federally protected rights.

## PRAYER FOR RELIEF

**WHEREFORE,** the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns and all persons in active concert or participation with Defendant, from engaging in any employment practice which retaliates against employees who engage in protected activities by subjecting them to adverse employment actions.

B. Order Defendant to institute and carry out policies, practices and programs which provide equal employment opportunities for all employees who engage in protected activities and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant to make Tobert whole, by providing appropriate back pay in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of Defendant's unlawful employment practices.

D.     Order Defendant to make Tobert whole, by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

E.     Order Defendant to make Tobert whole, by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices described above, including inconvenience, emotional pain and suffering, anxiety, stress, depression, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

F.     Order Defendant to pay Tobert punitive damages for its malicious and reckless conduct described above, in amounts to be determined at trial.

G.     Grant such further relief as the Court deems necessary and proper in the public interest.

H.     Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by this Complaint.

Respectfully submitted,

GWENDOLYN YOUNG REAMS
Acting General Counsel

        MARCUS G. KEEGAN
        Regional Attorney

        LAKISHA DUCKETT ZIMBABWE
        Assistant Regional Attorney

        <u>/s/ *Adam T. Mills*</u>

        Adam T. Mills
        Trial Attorney
        Georgia Bar No. 123930
        U.S. Equal Employment Opportunity
        Commission
        Atlanta District Office
        100 Alabama St., SW, Suite 4R30
        Atlanta, GA 30303
        adam.mills@eeoc.gov
        P: 470-531-4807
        F: 404-562-6905