IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| KEYSHAWN HENDERSON, | ) |
| | ) Civil Action |
| Plaintiff, | ) No. |
| v. | ) |
| | ) |
| KINDERCARE EDUCATION LLC, | ) |
| D/B/A CRÈME DE LA CRÈME OF | ) JURY TRIAL DEMANDED |
| EAST COBB , | ) |
| | ) |
| Defendant. | |

## FIRST COMPLAINT FOR DAMAGES

COMES NOW, Plaintiff Keyshawn Henderson ("Plaintiff") and files this Complaint against Defendant Kindercare Education, LLC, d/b/a Crème de la Crème of East Cobb ("Defendant"), and shows the following:

### I.    Nature of Amended Complaint

1.

Plaintiff brings this action to obtain full and complete relief and to redress the unlawful employment practices described herein.

2.

With this action, Plaintiff brings a discrimination claim for damages pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII").

## II. Jurisdiction and Venue

3.

The jurisdiction of this Court is invoked pursuant to 29 U.S.C. §216(b), and 28 U.S.C. §1331.

4.

Defendant does business in this district and is subject to specific jurisdiction over the claims asserted herein. In addition, a substantial part of the acts and omissions that give rise to Plaintiff's claims occurred in this district. Accordingly, venue in this Court is proper pursuant to 29 U.S.C. §1391.

5.

Plaintiff timely filed a charge of discrimination with the EEOC. Upon Plaintiff's request, the EEOC issued a notice of right to sue with respect to Plaintiff's charge. This action has been filed within 90 days of the receipt of the notice of right to sue.

## III. Parties and Facts

6.

Plaintiff is a resident of the State of Georgia.

7.

Plaintiff is a gay, African-American male.

8.

Plaintiff began working for the employer on February 11, 2022, as a STEM Teacher/Coordinator and after a brief departure, returned to this position in August of 2022.

9.

Upon Plaintiff's return he was subjected to racial and gender discrimination by his white coworkers and supervisor, including comments due to his skin color and gender.

10.

For example, the Director of Crème de la Crème, a white woman named Jenny (LNU), told Plaintiff that she wanted to hire him because he was gay and black and it would be good for the kids to be exposed to that.

11.

On another occasion, Plaintiff was told that the lead infant teacher over Group A, Shaunte (LNU), said that Plaintiff was "flaunting his gayness around the classroom," and that it was "disgusting" and "too much."

12.

Plaintiff's sister, Taylor Henderson ("Taylor"), is also employed by Defendant.

13.

When Taylor asked Shaunte why she had said this about Plaintiff, Shaunte replied, "Everyone talks about everyone."

14.

During the last full week of August 2022, Charlotte (LNU), a white woman who managed the kitchen, became angry with Plaintiff for asking her a question too many times.

15.

Charlotte yelled at Plaintiff and told him that, "he was not supposed to ask her questions," and that he was "out of place."

16.

Plaintiff told Charlotte that they were both adults, and could discuss the situation without being rude.

17.

Jenny observed this interaction and told Plaintiff that he handled it well.

18.

When Plaintiff went to sit at the front desk, Charlotte approached him and leaned over his desk towards him.

19.

Plaintiff put his hands up and leaned away from Charlotte.

20.

Jenny later told Plaintiff that he was "being aggressive" in his interactions with Charlotte, because of "his hand movements."

21.

Plaintiff told Jenny that the comment seemed related to his race, which offended him.

22.

Jenny responded to Plaintiff's concerns about racism by telling him that he was being "aggressive," and "rude," and that he had "hurt her feelings."

23.

The same week, Plaintiff took time off from work.

24.

Plaintiff had received permission to take his time off.

25.

On September 1, 2022, Plaintiff returned to work.

26.

After Plaintiff clocked in, he went into one of the classrooms.

27.

When Plaintiff entered the classroom, Shaunte started yelling at him that he was not supposed to be there.

28.

Shaunte told Plaintiff he was fired and banned from the property.

29.

An employee who worked at the front desk, Briona, told Plaintiff that one of the managers told her that Plaintiff was not allowed to work because he had "no call, no showed," last week.

30.

Plaintiff asked Briona why multiple everyone but him was told that he was not allowed on the premises.

31.

A parent of one of the students approached Plaintiff, and told him that two other employees were talking about Plaintiff and the parent felt that the discussion was inappropriate.

32.

Brionna told Plaintiff that it was probably best that he leave entirely.

33.

Plaintiff attempted to call Jenny; she did not answer.

34.

Plaintiff went outside and called his mother; he was crying from the stress of the situation and being told by employees who were not his manager that he was no longer welcome on the premises.

35.

Plaintiff subsequently went back to the school to speak with Briona.

36.

Shortly after Plaintiff returned to the building, police officers arrived at the employer's location.

37.

The officers told Plaintiff that Charlotte had called 911.

38.

Later Jenny contacted Plaintiff.

39.

Jenny told Plaintiff that he was not fired, and that he was only on a "paid suspension."

40.

Jenny told Plaintiff that he had a "kind heart," and she still wanted him to work there.

41.

Jenny told Plaintiff that everything would have been avoided if she had been present when Plaintiff returned to work.

42.

A few weeks later, on September 16, 2022, Betsy Green, Regional Manager for Defendant, called Plaintiff and told him that Defendant had conducted an investigation and that Plaintiff's employment was terminated.

43.

Defendant sent Plaintiff a Termination Memorandum, which stated that he was terminated due to "instigating and engaging in verbal fighting in the presence of children, fellow Team Members, and parents."

44.

The Termination Memorandum stated that Defendant was concerned that Plaintiff would "escalate to physical violence."

45.

Plaintiff had not made any threats of physical violence.

46.

At no time did Plaintiff act in a physically threatening manner.

47.

Plaintiff kept a physical distance from Charlotte at all times.

48.

At the time of his termination, Plaintiff had no disciplinary record.

49.

Defendant terminated Plaintiff's employment because of his race, sex/gender, and sexual orientation, in violation of Title VII. As a result of Defendant's unlawful actions, Plaintiff has suffered damages, including lost wages and emotional distress.

**CLAIMS FOR RELIEF**

**COUNT I:  RACE DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

50.

Plaintiff re-alleges paragraphs 1-49 as if set forth fully herein.

51.

Defendant's actions in subjecting Plaintiff to different terms and conditions of employment constitutes unlawful discrimination on the basis of his race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et seq.

52.

Defendant has willfully and wantonly disregarded Plaintiff's rights, and its discrimination against Plaintiff was undertaken in bad faith.

53.

The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity and has otherwise adversely affected his status as an employee because of his race.

54.

As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has been made the victim of acts that have adversely affected his economic, psychological, and physical well-being.

55.

Accordingly, Defendant is liable for the damages Plaintiff has sustained as a result of Defendant's unlawful discrimination.

# COUNT II: COLOR DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

56.

Plaintiff re-alleges paragraphs 1-49 as if set forth fully herein.

57.

Defendant's actions in subjecting Plaintiff to different terms and conditions of employment constitutes unlawful discrimination on the basis of his color in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et seq.

58.

Defendant has willfully and wantonly disregarded Plaintiff's rights, and its discrimination against Plaintiff was undertaken in bad faith.

59.

The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity and has otherwise adversely affected his status as an employee because of his color.

60.

As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has been made the victim of acts that have adversely affected his economic, psychological, and physical well-being.

61.

Accordingly, Defendant is liable for the damages Plaintiff has sustained as a result of Defendant's unlawful discrimination.

## **COUNT III:  SEXUAL ORIENTATION DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

62.

Plaintiff re-alleges paragraphs 1-49 as if set forth fully herein.

63.

Defendant's actions in subjecting Plaintiff to different terms and conditions of employment constitutes unlawful discrimination on the basis of his sexual orientation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et seq.

64.

Defendant has willfully and wantonly disregarded Plaintiff's rights, and its discrimination against Plaintiff was undertaken in bad faith.

65.

The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity and has otherwise adversely affected his status as an employee because of his sexual orientation.

66.

As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has been made the victim of acts that have adversely affected his economic, psychological, and physical well-being.

67.

Accordingly, Defendant is liable for the damages Plaintiff has sustained as a result of Defendant's unlawful discrimination.

## **COUNT IV: RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

68.

Plaintiff re-alleges paragraphs 1-49 as if set forth fully herein.

69.

Defendant's actions, as detailed above, in terminating Plaintiff because of his protected activity constitutes unlawful intentional retaliation in violation of Title VII.

70.

Defendant willfully and wantonly disregarded Plaintiff's rights, and Defendant's retaliation against Plaintiff was untertaken in bad faith.

71.

Accordingly, Defendant is liable for the damages Plaintiff has sustained as a result of Defendant's unlawful retaliation.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment as follows:
(a) General damages for mental and emotional suffering caused by Defendant's misconduct;

(b) Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts, including ratification, condonation and approval of said acts;

(c) Reasonable attorney's fees and expenses of litigation;

(d) Trial by jury as to all issues;

(e) Prejudgment interest at the rate allowed by law;

(f) Declaratory relief to the effect that Defendant has violated Plaintiff's statutory rights;

(g) Injunctive relief of reinstatement, or front pay in lieu thereof, and prohibiting Defendant from further unlawful conduct of the type described herein; and

(h) All other relief to which  may be entitled.

**BARRETT & FARAHANY**
*s/ Kira Fonteneau*
Kira Fonteneau
Georgia Bar No. 103355
Counsel for Plaintiff

OF COUNSEL:
Barrett & Faranhany
2 20th Street North Ste 900
Birmingham, AL 35203
(205) 390-1980
kira@justiceatwork.com