# **<u>Exhibit 1</u>**

Case 1:23-mi-99999-UNA   Document 1409-1   Filed 04/28/23   Page 2 of 14

E-FILED IN OFFICE - IT
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA

**22-A-04544-11**
**5/26/2022 1:56 PM**
TIANA P. GARNER, CLERK

IN THE SUPERIOR COURT OF GWINNETT COUNTY
STATE OF GEORGIA

| | |
|---|---|
| ELLIS REFINANCE PORTFOLIO, LLC<br><br>      Plaintiff,<br><br>v.<br><br>NEWREZ, LLC d/b/a SHELLPOINT MORTGAGE SERVICING,<br><br>      Defendant. | CIVIL ACTION FILE NO. 22-A-04544-11 |

# VERIFIED COMPLAINT

COMES NOW, ELLIS REFINANCE PORTFOLIO, LLC and files this, its Verified Complaint against NewRez, LLC d/b/a Shellpoint Mortgage Servicing, respectfully showing this honorable Court the following:

## PARTIES, JURISDICTION, AND VENUE

1.

Plaintiff Ellis Refinance Portfolio, LLC ("Ellis") is a Delaware limited liability company and by virtue of filing this Complaint, submits itself to the jurisdiction of this Court.

2.

Defendant NewRez, LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint") is a Delaware limited liability company authorized to do business in the State of Georgia and which shall be subject to the jurisdiction of this Court following service of process upon its registered agent, Corporation Service Company at 2 Sun Court, Suite 400, Peachtree Corners, Gwinnett County, Georgia 30092.

1

3.

This Court has subject matter jurisdiction over the matters set forth in this action.

4.

Venue over the matters set forth in this action is proper in this Court based on the location of Shellpoint's registered agent in Gwinnett County, Georgia.

## FACTUAL BACKGROUND

5.

On October 11, 2019, Ellis obtained a loan from 5 Arch Funding Corp. in the amount of $14,148,750.00, identified as loan number 0670671494 (the "Loan").

6.

The Loan is secured by 144 single-family residential properties owned by Ellis and located in the State of Georgia.

7.

Of the properties securing the loan, one is located in Henry County, one is located in Clayton County, and 142 are located in DeKalb County.

8.

The Loan is currently serviced by Shellpoint, pursuant to a contract between Shellpoint and the current holder of the Loan, U.S. Bank, National Association (the "Holder").

9.

Shellpoint is paid for its servicing activities by taking a portion of each monthly payment tendered by Ellis on the Loan.

10.

As part of its servicing obligations, Shellpoint collects Ellis's monthly payments on the Loan and diverts a portion of such payments into an escrow account for the payment of real property taxes for the properties securing the Loan.

11.

Shellpoint manages this escrow account for the benefit of Ellis, and Shellpoint is responsible for ensuring payments from the escrow account are promptly and properly tendered to the appropriate tax commissioner for the protection of the Properties.

12.

For the 142 properties securing the Loan which are located in DeKalb County, the first installment of the DeKalb County property tax obligation for tax year 2021 was due on September 23, 2021, and the second installment was due on November 15, 2021.

13.

For 137 of the 142 properties securing the Loan which are located in DeKalb County, Shellpoint made the first installment payment of property taxes to DeKalb County but failed to make the second installment payment of property taxes on or before November 15, 2021 (collectively, the "Subject Properties").

14.

In December of 2021, Ellis informed Shellpoint that the property tax obligations for the Subject Properties had not been properly made by Shellpoint, and that the property taxes were now delinquent for the Subject Properties.

15.

In response, Shellpoint advised on January 4, 2022 that it had "opened the request to have it reviewed and paid asap."

16.

After follow-up communications from Ellis, Shellpoint responded on January 7, 2022 by stating "This was sent to management to expedite as of now we have an estimated time to be completed by 01/18/2022."

17.

Ellis had countless email and telephone communications with Shellpoint in the months that followed in a good faith effort to get Shellpoint to honor its obligations and pay the property taxes.

18.

In these communications, Shellpoint often apologized for the delay in paying the taxes and offered assurances that the issue was being reviewed or escalated, and that it would be corrected.

19.

On February 28, 2022, Shellpoint sent an email to Ellis which listed 35 of the Subject Properties and stated that "Taxes are paid current" for each.

20.

Shellpoint's statement that the "Taxes are paid current" was false, as the listed Subject Properties still had unpaid balances for the second property tax payment.

21.

On May 3, 2022 Shellpoint sent an email to Ellis which again stated, "Taxes are paid."

22.

Shellpoint's statement that the "Taxes are paid" was again false, as the listed Subject Properties still had unpaid balances for the second property tax payment.

23.

Despite numerous communications and warnings from Ellis to Shellpoint regarding the unpaid property taxes, Shellpoint failed to fully pay the property taxes for the Subject Properties, resulting in tens of thousands of dollars in interest and fees accruing on top of the outstanding property tax amounts.

24.

On May 13, 2021, the Subject Properties were levied upon due to the unpaid property taxes, and the Subject Properties have been scheduled to be auctioned by the DeKalb County Sheriff on the steps of the DeKalb County Courthouse on July 5, 2022.

25.

Ellis advised Shellpoint that its failure to fully pay the property taxes for the Subject Properties had resulted in the levies and the tax sales scheduled for July, but Shellpoint continues to refuse to take substantive action to resolve the issue and pay the unpaid tax balances.

26.

Notices regarding the tax sales were sent by DeKalb County directly to the Subject Properties, leading to inquiries from Ellis's tenants and concerns about future ownership changes for the Subject Properties.

27.

Ellis has also been inundated by calls and messages from wholesale real estate purchasers and investors who have learned of the scheduled tax sales and believe the ownership of the Subject Properties may be distressed and that Ellis may be inclined to sell.

28.

Ellis and its representatives have also been contacted by representatives of DeKalb County to discuss the significant balance of unpaid taxes and the scheduled tax sale.

## COUNT ONE – BREACH OF CONTRACT

29.

Ellis incorporates the above paragraphs as if set forth herein.

30.

The servicing contract between Shellpoint and the Holder obligates Shellpoint to properly manage the Loan's escrow accounts, and to promptly and properly pay the property taxes for the Subject Properties for Ellis (the "Servicing Contract").

31.

In failing to promptly and properly pay the property taxes for the Subject Properties and correctly manage the Loan's escrow account containing funds designated for the payment of property taxes, Shellpoint has breached the Servicing Contract.

32.

Though not a party to the Servicing Contract, Ellis has standing to enforce the Servicing Contract as a third-party beneficiary pursuant to O.C.G.A. § 9-2-20(b).

33.

Ellis has been injured by Shellpoint's breach of the Servicing Contract.

34.

Shellpoint is therefore liable to Ellis for all damages flowing from such breach in an amount to be proven at trial.

## COUNT TWO – BREACH OF GOOD FAITH AND FAIR DEALING

35.

Ellis incorporates the above paragraphs as if set forth herein.

36.

Shellpoint has a duty of good faith and fair dealing in the performance of its duties and obligations under the Servicing Contract.

37.

Shellpoint is in breach and continues to breach the duty of good faith and fair dealing by refusing to pay the property taxes for the Subject Properties despite its numerous assurances that it would do so.

38.

Shellpoint is therefore liable to Ellis for all damages flowing from Shellpoint's breach of its duty of good faith and fair dealing in an amount to be proven at trial.

## COUNT THREE – CONVERSION OF FUNDS

39.

Ellis incorporates the above paragraphs as if set forth herein.

40.

Shellpoint remains in possession of escrowed funds belonging to Ellis which were escrowed with the specific and sole purpose that they be used to pay property taxes for the properties securing the Loan.

41.

Shellpoint has refused to use these escrowed funds to pay property taxes on the Subject Properties, and instead retains such escrowed funds for its own purposes.

42.

As such, Shellpoint has wrongfully converted Ellis's funds escrowed specifically to pay property taxes.

43.

Ellis has suffered injury as a result of Shellpoint's wrongful conversion.

44.

Shellpoint is subject to disgorgement of all wrongfully converted funds and liable to Ellis for all damages flowing from injuries incurred as a result of Shellpoint's wrongful conversion in an amount to be determined at trial.

## **COUNT FOUR – FRAUD**

45.

Ellis incorporates the above paragraphs as if set forth herein.

46.

Shellpoint repeatedly assured Ellis that Shellpoint would promptly resolve the property tax issue when it knew this was false.

47.

Shellpoint repeatedly stated to Ellis that the property taxes had been paid when it knew this was not the case due to property tax funds remaining in escrow.

48.

Shellpoint made these fraudulent statements in an effort to appease Ellis, induce Ellis to pay the property taxes directly, and induce Ellis to continue paying Shellpoint's servicing fees while the property taxes remained unpaid.

49.

Ellis has suffered significant injuries as a result of Shellpoint's fraudulent statements which currently include, but are not limited to: greatly increased tax liabilities, increased administrative and employee expense, damage to business and business reputation, and damage to credit.

50.

Shellpoint is liable to Ellis for all damages flowing from such injuries in an amount to be proven at trial.

**COUNT FIVE – NEGLIGENCE**

51.

Ellis incorporates the above paragraphs as if set forth herein.

52.

By accepting Ellis's payments and escrowing Ellis's funds for the payment of property taxes, Shellpoint assumed a duty to promptly and properly make property tax payments on behalf of Ellis as a loan servicer.

53.

In failing to make the property tax payments promptly and properly for the Subject Properties, Shellpoint breached this duty.

54.

Shellpoint's breach has caused significant injuries to Ellis which currently include, but are not limited to: greatly increased tax liabilities, increased administrative and employee expense, damage to business and business reputation, and damage to credit.

55.

Shellpoint is liable for all damages flowing from the injuries incurred by Ellis in an amount to be proven at trial.

## COUNT SIX – PUNITIVE DAMAGES

56.

Ellis incorporates the above paragraphs as if set forth herein.

57.

The actions and omissions of Shellpoint in failing to pay the property taxes on the Subject Properties rise to the level of willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would rise to the presumption of conscious indifference to the consequences, as contemplated by O.C.G.A. § 51-12-5.1(b).

58.

Shellpoint is therefore liable to Ellis for punitive damages under O.C.G.A. § 51-12-5.1(b) entitling Ellis to all punitive damages pursuant to O.C.G.A. § 51-12-5.1(b) in an amount to be determined at trial.

## COUNT SEVEN – ATTORNEY'S FEES AND EXPENSES OF LITIGATION

59.

Ellis incorporates the above paragraphs as if set forth herein.

60.

The actions and omissions of Shellpoint amount to bad faith and stubborn litigiousness as those terms are used in O.C.G.A. § 13-6-11..

61.

The actions and omissions of Shellpoint have caused and continue to cause Ellis unnecessary trouble and expenses as those terms are used in O.C.G.A. § 13-6-11.

62.

Ellis is therefore entitled to an award of reasonable attorney's fees and expenses of litigation against and from Shellpoint pursuant to O.C.G.A. § 13-6-11 in an amount to be proven at trial.

WHEREFORE, Ellis respectfully prays that this Court:

(a) Cause summons and process to issue against Shellpoint as required by law;

(b) Enter judgment in favor of Ellis and against Shellpoint;

(c) Award monetary damages in favor of Ellis and against Shellpoint for general and special damages, punitive damages, and attorney's fees and expenses of litigation pursuant to O.C.G.A. § 13-6-11 in an amount to be proven at trial;

(d) Allow for trial by jury of all issues so triable; and,

(e) Award such other and further relief as this Court deems appropriate, just, and equitable.

**JURY TRIAL DEMANDED**

This 26th day of May, 2022.

WILLIAMS TEUSINK, LLC

/S/ David Metzger
David Metzger
Georgia Bar No. 363534

11

The High House
309 Sycamore Street
Decatur, Georgia 30030
Telephone: (404) 373-9590
Email: dmetzger@williamsteusink.com

*Counsel for Ellis Refinance Portfolio, LLC*

IN THE SUPERIOR COURT OF GWINNETT COUNTY
STATE OF GEORGIA

| | |
|---|---|
| ELLIS REFINANCE PORTFOLIO, LLC<br><br>　　Plaintiff,<br><br>v.<br><br>NEWREZ, LLC d/b/a SHELLPOINT MORTGAGE SERVICING,<br><br>　　Defendant. | CIVIL ACTION FILE NO. 22-A-04544-11 |

## VERIFICATION

PERSONALLY APPEARED before me, an officer duly authorized by law to administer oaths, William Ellis, as the managing member of Ellis Refinance Portfolio, LLC, who after first being duly sworn, states that he has read the foregoing *Verified Complaint* and that the factual information contained therein is true and correct.

Sworn to and subscribed before
me this 26 day of May, 2022.

_____
Notary Public
My Commission Expires: 1/22/23

ELLIS REFINANCE PORTFOLIO, LLC

_____
William Ellis, Managing Member

13