# Exhibit A



**SOCIAL SECURITY ADMINISTRATION**

Office of Hearings Operations
2nd Floor
10155 Eagle Drive
Covington, GA 30014-3804

Date: August 17, 2022

Michelle Marie Eason
2417 Winshire Drive
Decatur, GA 30035

## Notice of Decision – Unfavorable

I carefully reviewed the facts of your case and made the enclosed decision.  Please read this notice and my decision.

**If You Disagree With My Decision**

If you disagree with my decision, you may file an appeal with the Appeals Council.

**How To File An Appeal**

To file an appeal you or your representative must ask in writing that the Appeals Council review my decision.  The preferred method for filing your appeal is by using our secure online process available at https://www.ssa.gov/benefits/disability/appeal.html.

You may also use our Request for Review form (HA-520) or write a letter.  The form is available at https://www.ssa.gov/forms/ha-520.html.  Please write the Social Security number associated with this case on any appeal you file.  You may call (800) 772-1213 with questions.

Please send your request to:

>   Appeals Council
>   **5107 Leesburg Pike**
>   **Falls Church, VA 22041-3255**

**Time Limit To File An Appeal**

You must file your written appeal **within 60 days** of the date you get this notice.  The Appeals Council assumes you got this notice 5 days after the date of the notice unless you show you did not get it within the 5-day period.

Form HA-L76-OP2 (03-2010)

**Suspect Social Security Fraud?**
Please visit http://oig.ssa.gov/r or call the Inspector General's Fraud Hotline
at 1-800-269-0271 (TTY 1-866-501-2101).

See Next Page

Michelle Marie Eason (BNC#: 21FN179H70145)                                          Page 2 of 3

The Appeals Council will dismiss a late request unless you show you had a good reason for not filing it on time.

**What Else You May Send Us**

You or your representative may send us a written statement about your case. You may also send us new evidence. You should send your written statement and any new evidence **with your appeal**. Sending your written statement and any new evidence with your appeal may help us review your case sooner.

**How An Appeal Works**

The Appeals Council will consider your entire case. It will consider all of my decision, even the parts with which you agree. Review can make any part of my decision more or less favorable or unfavorable to you. The rules the Appeals Council uses are in the Code of Federal Regulations, Title 20, Chapter III, Part 404 (Subpart J).

The Appeals Council may:

- Deny your appeal,
- Return your case to me or another administrative law judge for a new decision,
- Issue its own decision, or
- Dismiss your case.

The Appeals Council will send you a notice telling you what it decides to do. If the Appeals Council denies your appeal, my decision will become the final decision.

**The Appeals Council May Review My Decision On Its Own**

The Appeals Council may review my decision even if you do not appeal. If the Appeals Council reviews your case on its own, it will send you a notice within 60 days of the date of this notice.

**When There Is No Appeals Council Review**

If you do not appeal and the Appeals Council does not review my decision on its own, my decision will become final. A final decision can be changed only under special circumstances. You will not have the right to Federal court review.

**New Application**

You have the right to file a new application at any time, but filing a new application is not the same as appealing this decision. If you disagree with my decision and you file a new application instead of appealing, you might lose some benefits or not qualify for benefits at all. My decision could also be used to deny a new application for benefits if the facts and issues are the same. If you disagree with my decision, you should file an appeal within 60 days.

Form HA-L76-OP2 (03-2010)

See Next Page

Michelle Marie Eason (BNC#: 21FN179H70145)                                      Page 3 of 3

**If You Have Any Questions**

1. Visit www.ssa.gov for fast, simple, and secure online service.
2. Call us at **1-800-772-1213**, weekdays from 8:00 am to 7:00 pm. If you are deaf or hard of hearing, call TTY **1-800-325-0778**. Please mention this notice and decision when you call.
3. You may also call your local office at (877) 626-9909.

Social Security
3554 Covington Hwy
Decatur, GA 30032-9803

**How are we doing?** Go to www.ssa.gov/feedback to tell us.

William L. Hogan
Administrative Law Judge

Enclosures:
Decision Rationale


cc:     Kathleen Flynn
        315 W. Ponce De Leon
        Avenue, Suite 940
        Decatur, GA 30030

Form HA-L76-OP2 (03-2010)

**SOCIAL SECURITY ADMINISTRATION**
Office of Hearings Operations

**DECISION**

| **IN THE CASE OF** | **CLAIM FOR** |
|---|---|
| | Period of Disability and Disability Insurance Benefits |
| Michelle Marie Eason | |
| (Claimant) | |
| | 21FN179H70145 |
| (Wage Earner) | (Beneficiary Notice Control Number) |
| | *Social Security Number removed for your protection* |

**JURISDICTION AND PROCEDURAL HISTORY**

On March 29, 2021, the claimant protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning July 2, 2020. The claim was denied initially on July 14, 2021, and upon reconsideration on February 21, 2022. Thereafter, the claimant filed a written request for hearing received on March 10, 2022 (20 CFR 404.929 *et seq.*). On July 26, 2022, the undersigned held a telephone hearing due to the extraordinary circumstance presented by the Coronavirus Disease 2019 (COVID-19) Pandemic. All participants attended the hearing by telephone. The claimant agreed to appear by telephone before the hearing, and confirmed such agreement at the start of the hearing. The claimant was represented by Brynne Holt, an attorney, during the hearing. Kathleen Flynn, an attorney, is the claimant's primary representative. Barry Murphy, an impartial vocational expert, also appeared at the hearing.

The claimant submitted or informed the Administrative Law Judge about all written evidence at least five business days before the date of the claimant's scheduled hearing (20 CFR 404.935(a)).

**ISSUES**

The issue is whether the claimant is disabled under sections 216(i) and 223(d) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

There is an additional issue whether the insured status requirements of sections 216(i) and 223 of the Social Security Act are met. The claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through December 31, 2021 (hereinafter "the date last insured"). Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.

See Next Page

After careful consideration of all the evidence, the undersigned concludes the claimant was not under a disability within the meaning of the Social Security Act from July 2, 2020, through the date last insured.

## **APPLICABLE LAW**

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 404.1520(a)). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the undersigned must determine whether the claimant is engaging in substantial gainful activity (20 CFR 404.1520(b)). Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 404.1572(a)). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 404.1572(b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that she has demonstrated the ability to engage in SGA (20 CFR 404.1574 and 404.1575). If an individual engages in SGA, she is not disabled regardless of how severe her physical or mental impairments are and regardless of her age, education, and work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the undersigned must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 404.1520(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 404.1522, Social Security Rulings (SSRs) 85-28 and 16-3p). If the claimant does not have a severe medically determinable impairment or combination of impairments, she is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, the undersigned must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526). If the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listing and meets the duration requirement (20 CFR 404.1509), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the undersigned must first determine the claimant's residual functional capacity (20 CFR 404.1520(e)). An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. In making this finding, the undersigned must

See Next Page

consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e) and 404.1545; SSR 96-8p).

Next, the undersigned must determine at step four whether the claimant has the residual functional capacity to perform the requirements of her past relevant work (20 CFR 404.1520(f)). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established.  In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b) and 404.1565).  If the claimant has the residual functional capacity to do her past relevant work, the claimant is not disabled.  If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 404.1520(g)), the undersigned must determine whether the claimant is able to do any other work considering her residual functional capacity, age, education, and work experience.  If the claimant is able to do other work, she is not disabled.  If the claimant is not able to do other work and meets the duration requirement, she is disabled.  Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration.  In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 404.1512 and 404.1560(c)).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, the undersigned makes the following findings:

**1.   The claimant last met the insured status requirements of the Social Security Act on December 31, 2021.**

**2.   The claimant did not engage in substantial gainful activity during the period from her alleged onset date of July 2, 2020 through her date last insured of December 31, 2021 (20 CFR 404.1571** *et seq.***).**

**3.   Through the date last insured, the claimant had the following severe impairments: idiopathic intracranial hypertension; status post-COVID; migraine headaches; cognitive impairment; depressive disorder; anxiety disorder; PTSD; symptomatic epilepsy/epileptic syndromes with seizures; fibromyalgia; neuropathy; and neuralgia (20 CFR 404.1520(c)).**

The above medically determinable impairments significantly limit the ability to perform basic work activities as required by SSR 85-28.

The claimant also alleged that she cannot work because of dyslexia and vision loss (B2E). The undersigned finds no evidence of a severe dyslexia impairment. Indeed, as indicated below, the

See Next Page

record shows that all of the claimant's past relevant work was skilled in nature (ranging from SVP 6 to 8) suggesting that any dyslexia did not significantly interfere with her work-related functioning abilities.

The undersigned recognizes that, in his July 1, 2020 decision, the Administrative Law Judge found a "severe" vision impairment, and concluded that she can maintain frequent field of vision. (B1A). However, ophthalmology notes from March 2019 showed that she exhibited essentially unremarkable visual acuity with glasses, namely, 20/30 in the right eye and 20/25 in the left eye (B32F). Moreover, during her July 2022 hearing, the claimant testified that she could read normal print, including a book, magazine or newspaper with her prescription glasses, although the print can be blurry (Hearing). In July 2020, the Administrative Law Judge did not have the benefit of this most recent testimony, which (in conjunction with Exhibit B32F) shows that she does not have a severe vision impairment.

**4.   Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).**

As noted in the previous decision of the Administrative Law Judge, the claimant's impairments do not meet or equal any listings (B1A), and there is no new evidence since that decision to contradict this conclusion.

The severity of the claimant's mental impairments, considered singly and in combination, did not meet or medically equal the criteria of listings 12.02, 12.04, 12.06, and 12.15.  In making this finding, the undersigned has considered whether the "paragraph B" criteria were satisfied.  To satisfy the "paragraph B" criteria, the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning.  An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis.  A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.

In understanding, remembering or applying information, the claimant had a moderate limitation. In interacting with others, the claimant had a moderate limitation. With regard to concentrating, persisting or maintaining pace, the claimant had a moderate limitation. As for adapting or managing oneself, the claimant had experienced a moderate limitation. The undersigned notes that the claimant certainly testified about problems affecting all these areas of functioning, including symptoms, such as brain fog, difficulty with memory and concentration, panic attacks, feeling overwhelmed in public, neglect of personal care tasks, etc. (Hearing). However, as discussed below, the medical record from the period relevant to this decision contains nothing to substantiate these subjective allegations. Indeed, as discussed below, the only medical evidence in the period relevant to this decision consists of a few phone calls to a neurologist for renewal of medications, without any evidence of actual medical visits (B45F). In sum, nothing in the current medical evidence contradicts the July 1, 2020 conclusion of the Administrative Law Judge regarding moderate limitations with respect to the "paragraph B" criteria.

See Next Page

Michelle Marie Eason (BNC#: 21FN179H70145)                              Page 5 of 10

Because the claimant's mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria were not satisfied.

The undersigned has also considered whether the "paragraph C" criteria were satisfied.  In this case, the evidence fails to establish the presence of the "paragraph C" criteria. This paragraph is not satisfied because there is no evidence that the claimant has only marginal adjustment skills with only a minimal capacity to adapt to changes in her environment or to demands that are not already part of her life.

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process.  The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning.  The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

**5.     After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can lift and/or carry 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk (with normal breaks) 6 hours in an 8-hour workday, and sit (with normal breaks) 6 hours in an 8-hour workday. She can occasionally push/pull with the bilateral upper extremities. She is limited to simple tasks and can concentrate for two-hour segments of time. She can tolerate occasional changes in work setting, and occasional interaction with general public. The claimant is unable to meet fast-paced, high production demands.**

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p. The undersigned also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities.  For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities.

See Next Page

Michelle Marie Eason (BNC#: 21FN179H70145)                                         Page 6 of 10

The claimant alleged that she cannot work because of PTSD, depression, idiopathic intracranial hypertension, migraines, fibromyalgia, and residual effects of COVID-19 infection (B2E). During the hearing, the claimant testified to significant psychological problems, including brain fog (in part due to COVID), difficulty with memory and concentration, depression, social isolation, neglect of activities of daily living, anxiety with panic attacks, difficulty regulating emotions, etc. For example, the claimant stated that she needed reminders to eat, and that her home was a "disaster" because she neglected chores. She said that she feels overwhelmed in public. She said that she has a lot of panic attacks related to stress. She testified that she essentially did not talk to anyone other than her mother for approximately one year after breaking up with her significant other in 2020. The claimant stated that she essentially "blanked out" the period from mid-2020 to late 2021. The claimant also complained of essentially daily migraine headaches with associated sensitivity to light, sounds and smells.  (Hearing).

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

As a matter of background, the undersigned notes that, on July 1, 2020, an Administrative Law Judge found the claimant capable of performing light work as defined in 20 CFR 404.1567(b), with lifting and carrying twenty pounds occasionally and ten pounds frequently and standing and walking six hours and sitting six hours in an eight-hour workday, and unlimited pushing and pulling. The Administrative Law Judge further found that the claimant was able to maintain frequent field of vision (observation with fixed eyes).[1] He also found that the claimant was limited to simple tasks, and could concentrate and persist for two-hour segments; her adaptation was limited to occasional changes in the work setting; she was limited to occasional interaction with the public, and she was unable to meet fast-paced, high-production demands. Notably, the Administrative Law Judge considered voluminous medical evidence through April 14, 2020. (B1A). On November 19, 2020, the Appeals Council denied the claimant's request for review of the Administrative Law Judge's decision.

Amongst other evidence, in his July 1, 2020 decision, the Administrative Law Judge considered the August 2018 psychological evaluation with Gary Santavicca, Ph.D., who diagnosed the claimant with a cognitive impairment, major depressive disorder, severe without psychotic features, and unspecified anxiety disorder. The undersigned recognizes that the WAIS-IV administered by Dr. Santavicca yielded very low scores, including a full-scale IQ of only 57, which was in the very low range. However, Dr. Santavicca stated that the claimant's performance on the test of malingering suggested malingering in the context of the evaluation; that testing suggested insufficient effort during the evaluation; and that the test results should be interpreted with caution. As such, the undersigned finds that the low WAIS-IV score was not

---

[1] As noted above, current evidence shows that the claimant does not have a severe vision impairment, based in large part on the claimant's most recent testimony. As such, her current residual functional capacity does not contain any vision-related limitations.

See Next Page

conclusively valid, and that the claimant does not have a medically determinable impairment of borderline functioning or an intellectual disorder. (B26F).

Additional evidence available to the Administrative Law Judge as of July 1, 2020 included the following: The diagnosis of migraine with aura, intractable, with status migrainosus, in April 2019 (B33F). In May 2019, the claimant sought emergency room treatment for a migraine headache. However, the physical examination was unremarkable, and inconsistent with disabling symptoms and limitations. For example, the claimant was not acutely distressed. She appeared alert and oriented x 4, pleasant and cooperative. She had normal affect, insight and concentration. She ambulated without difficulty, and moved all extremities. She had good strength and tone. A CT of the head showed no acute intracranial abnormality. (B34F/31-41). Neurology treatment notes in July 2019 showed that the claimant was diagnosed with and prescribed medication for seizures (she was also diagnosed with localization-related symptomatic epilepsy and epileptic syndromes with complex partial seizures). However, the neurologist noted that her EEG and brain MRI studies were unremarkable. The claimant was also diagnosed with and prescribed medication for intractable headaches. (B33F; B36F). Neurology notes in November 2019 showed that the claimant complained of worsening migraines, as well as seizure episodes that came on only during sleep. She was diagnosed with conditions that included migraine without aura, intractable with status migrainosus, essential tremor, unsteadiness of feet, insomnia, and localized-related symptomatic epilepsy and epileptic syndromes with complex partial seizures. Yet, despite her complaints, the physical examination was unremarkable. For instance, the claimant was not acutely distressed. She was pleasant, and alert and oriented x 3. She exhibited fluent speech and unremarkable memory. Her gait was normal as well. (B39F/2). Moreover, the claimant sought counseling for major depressive disorder and PTSD with Carla Cargal, LPC from June 2018 to September 2018, and then again from May 2019 to November 2019, with multiple cancelations, especially in 2019. (B41F). The claimant also followed up with her psychiatrist for major depressive disorder and PTSD in August 2019 (B42F). However, there is no evidence of any subsequent psychiatric follow up after August 2019, or counseling after November 2019.

Having considered a significant amount of medical evidence, including the evidence discussed above, the Administrative Law Judge found that the claimant was not disabled as of July 1, 2020, imposing the residual functional capacity identified above.

Although the above-mentioned decision of the Administrative Law Judge was rendered before the claimant's current alleged onset date of disability, the current record contains minimal medical evidence after April 14, 2020, and certainly no evidence to impose any significant additional functional limitations. Indeed, the only medical evidence since that time consists of telephone/email communication between the claimant and her neurologist addressing medication refills; it does not document any actual treatment visits, virtual or otherwise. (B45F). Specifically, this exhibit shows that the claimant did not show up for her February 2020 appointment (B45F/6, 9). On, or about, April 28, 2020, called her neurologist for refills of medication, including clonazepam and Ketamine nasal spray. (B45F/7-9). In September 2020, her neurologist called in refills for medication that include Medrol Dosepak, Ondansetron Hydrochloride, Ketamine nasal spray, Gabitril, and folic acid. Notably, the treatment provider stated that the claimant has not been seen in almost a year, since November 2019. (B45F/5). In

See Next Page

March 2021, the claimant's neurologist called in refills of medication that included clonazepam, Gabitril, folic acid, Ketamine nasal spray, Imitrex for migraine, Migranal spray, Medrol Dosepak and Ondansetron Hydrochloride (B45F/1-2).

Nothing in this medical evidence – notably, the *only* medical evidence in the approximately 2-year period since her alleged onset date of disability in the present case – suggests symptom worsening or indeed, any uncontrolled symptoms. The lack of any medical follow up in the period relevant to this decision cannot be attributed to an inability to access medical care. In fact, the claimant also testified that she was on her husband's insurance from her alleged onset date of disability through December 2021 (Hearing). Therefore, the undersigned finds that the claimant's allegations of disabling symptoms and limitations is simply not documented in the medical evidence of record in the period relevant to this decision. Instead, the undersigned finds that the lack of any medical treatment visits since July 2, 2020 (and only a few renewals for prescriptions) is inconsistent with the claimant's statements about the intensity, persistence, and limiting effects of her symptoms.

As for medical opinion(s) and prior administrative medical finding(s), the undersigned cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources. The undersigned has fully considered the medical opinions and prior administrative medical findings as follows:

With respect to the claimant's current case, the State agency medical and psychological consultants found insufficient evidence to assess the claimant's functioning in the period relevant to this decision (B5A).

Any other opinion evidence predates the period relevant to this decision and, indeed, has been considered in the July 1, 2020 decision of the Administrative Law Judge. For example, on April 14, 2020, the claimant's treating counselor, Carla Cargal, LPC found very significant limitations. For instance, she stated that the claimant had marked limitations in understanding, remembering or applying information; interacting with others; concentrating, persisting or maintaining pace, and adaptation or self management. (B43F; B44F). However, the Administrative Law Judge had this statement available at the time of his July 1, 2020 decision (B1A/28). In fact, he addressed this opinion, although he appears to have misspelled Mrs. Cargal's name, identifying her as "counselor Cargill" (B1A/15). The Administrative Law Judge found that Mrs. Cargal's opinions were unpersuasive. The undersigned arrives at the same conclusion. For example, her opinion is not supported by her own treatment notes, which document numerous cancellations by the claimant; her treatment notes also show that she had not seen the claimant since November 2019, i.e. 5 months before she rendered her opinion. (B41F). Her opinion is also inconsistent with a total lack of treatment visits since November 2019, and especially since July 2020. Somewhat curiously, Mrs. Cargal also stated that the claimant's marked limitations existed since childhood (B43F/3), even though the record shows that the claimant has a significant and fairly long history of skilled employment (B2E; B10D; Hearing). This further shows that Mrs. Cargal overestimated the claimant's functional limitations.

See Next Page

**6.    Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).**

The claimant had past relevant work as an office manager (169.167-034, SVP 7, sedentary); assistant finance manager (186.167-086, SVP 8, sedentary); administrative assistant (201.362-030, SVP 6, sedentary) (B2E; B10D; Hearing). As required by SSR 82-62, this work was substantial gainful activity, was performed long enough for the claimant to achieve average performance, and was performed within the relevant period. Per the testimony of the vocational expert, the claimant was unable to perform past relevant work as actually or generally performed.

**7.    The claimant was born on August 16, 1981 and was 40 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).**

**8.    The claimant has at least a high school education (20 CFR 404.1564).**

**9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).**

**10.   Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).**

In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11).  When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14).  If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).

Through the date last insured, if the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21.  However, the claimant's ability to perform all or substantially all of the requirements of this level of work was impeded by additional limitations.  To determine the extent to which these limitations erode the unskilled light occupational base, through the date last insured, the Administrative Law Judge asked the vocational expert whether jobs existed in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity.  The vocational expert testified that given all of these factors the

See Next Page

individual would have been able to perform the requirements of representative occupations such as:

| Occupation | Dictionary of Occupational Titles (DOT) Code | Exertional Level | Specific Vocational Preparation (SVP) Level | Approximate Number of Jobs Nationally |
|---|---|---|---|---|
| office helper | 239.567-010 | Light | 2 (unskilled) | 13,000 |
| laundry sorter | 361.687-014 | Light | 2 (unskilled) | 12,400 |
| shipping and receiving clerk | 222.387-074 | Light | 2 (unskilled) | 12,600 |

Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles. To the extent that the DOT does not specifically address certain functions/limitations – for instance, it does not address production pace, exposure to general public and co-workers – the vocational expert said that his testimony was based on his education training and experience (Hearing). The undersigned has relied on this expertise in accepting the testimony of the vocational expert.

Based on the testimony of the vocational expert, the undersigned concludes that, through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy.  A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

**11.  The claimant was not under a disability, as defined in the Social Security Act, at any time from July 2, 2020, the alleged onset date, through December 31, 2021, the date last insured (20 CFR 404.1520(g)).**

## DECISION

Based on the application for a period of disability and disability insurance benefits protectively filed on March 29, 2021, the claimant was not disabled under sections 216(i) and 223(d) of the Social Security Act through December 31, 2021, the last date insured.

/s/ *William L. Hogan*

William L. Hogan
Administrative Law Judge

August 17, 2022
Date

# LIST OF EXHIBITS

## Payment Documents/Decisions

| Component | No. | Description | Received | Dates | Pages |
|---|---|---|---|---|---|
| T1I | B1A | ALJ Hearing Decision | | 2020-07-01 | 28 |
| T1I | B2A | DDE T-2 Initial by DDS, MD | | 2021-07-14 | 21 |
| T1I | B3A | Initial Disability Determination Transmittal by State Agency, Title II | | 2021-07-14 | 1 |
| T1I | B4A | Reconsideration Disability Determination Transmittal by State Agency, Title II | | 2022-02-21 | 1 |
| T1I | B5A | DDE T-2 Recon PRT1 by DDS, MD | | 2022-02-21 | 7 |

## Jurisdictional Documents/Notices

| Component | No. | Description | Received | Dates | Pages |
|---|---|---|---|---|---|
| T1I | B1B | SSA-1696 - Claimant's Appointment of a Representative - Kathleen Flynn, Esq. | | 2021-03-29 | 4 |
| T1I | B2B | Fee Agreement for Representation before SSA - Kathleen Flynn, Esq. | | 2021-03-29 | 1 |
| T1I | B3B | T2 Notice of Disapproved Claim | | 2021-07-14 | 6 |
| T1I | B4B | Request for Reconsideration | | 2021-08-19 | 1 |
| T1I | B5B | T2 Disability Reconsideration Notice | | 2022-02-21 | 4 |
| T1I | B6B | Request for Hearing by ALJ | | 2022-03-10 | 2 |
| T1I | B7B | Outgoing ODAR Correspondence | | 2022-03-15 | 16 |
| T1I | B8B | Request for Hearing Acknowledgement Letter | | 2022-03-18 | 15 |

| Component | No. | Description | Dates | Pages |
|---|---|---|---|---|
| T1I | B9B | COVID Hearing Agreement Form | 2022-03-18 | 18 |
| T1I | B10B | Request for Hearing Acknowledgement Letter | 2022-03-21 | 20 |
| T1I | B12B | Report of Contact | 2022-03-15 | 1 |
| T1I | B11B | Notice Of Hearing Reminder | 2022-07-01 | 4 |
| T1I | B13B | Report of Contact | 2022-07-13 | 1 |
| T1I | B14B | Report of Contact | 2022-07-19 | 1 |
| T1I | B15B | Report of Contact | 2022-07-27 | 1 |
| T1I | B16B | SSA-1696 - Claimant's Appointment of a Representative | 2022-07-22 | 5 |

## Non-Disability Development

| Component | No. | Description | Received | Dates | Pages |
|---|---|---|---|---|---|
| T1I | B1D | Application for Disability Insurance Benefits | | 2021-03-29 | 5 |
| T1I | B2D | Lead Protective Filing Worksheet | | 2021-03-29 | 3 |
| T1I | B3D | Application for Disability Insurance Benefits | | 2021-03-30 | 5 |
| T1I | B4D | Summary Earnings Query | | 2022-04-29 | 1 |
| T1I | B5D | New Hire, Quarter Wage, Unemployment Query (NDNH) | | 2022-04-29 | 1 |
| T1I | B6D | Detailed Earnings Query | | 2022-04-29 | 4 |
| T1I | B7D | Certified Earnings Records | | 2022-04-29 | 3 |
| T1I | B8D | Certified Earnings Records | | 2022-07-13 | 3 |
| T1I | B9D | Detailed Earnings Query | | 2022-07-13 | 4 |
| T1I | B10D | Summary Earnings Query | | 2022-07-13 | 1 |
| T1I | B11D | New Hire, Quarter Wage, Unemployment Query (NDNH) | | 2022-07-13 | 1 |

## Disability Related Development

| Component | No. | Description | Received | Source | Dates | Pages |
|---|---|---|---|---|---|---|

| Component | No. | Description | | Source | Dates | Pages |
|---|---|---|---|---|---|---|
| T1I | B1E | Disability Report - Field Office | | Field Office | to 2021-03-30 | 3 |
| T1I | B2E | Disability Report - Adult | | Field Office | to 2021-03-30 | 8 |
| T1I | B3E | Disability Report - Field Office | | Field Office | to 2021-08-19 | 2 |
| T1I | B4E | Disability Report - Appeals | | Field Office | to 2021-08-19 | 7 |
| T1I | B5E | Disability Report - Field Office | | Field Office | to 2022-03-11 | 2 |
| T1I | B6E | Disability Report - Appeals | | Field Office | to 2022-03-11 | 6 |
| T1I | B7E | Claimant questionnaire (generic) | | Oho - Covington, Ga | to 2022-04-29 | 20 |
| T1I | B8E | Exhibit List to Rep PH2E | | Oho - Covington, Ga | to 2022-04-29 | 22 |
| T1I | B9E | Resume of Vocational Expert | | Barry Murphy | to 2022-07-13 | 1 |

## Medical Records

| Component | No. | Description | Received | Source | Dates | Pages |
|---|---|---|---|---|---|---|
| T1I | B1F | Office Treatment Records | | Gastroenterology Specialist Of Dekalb | 2016-07-13 to 2016-09-02 | 14 |
| T1I | B2F | Office Treatment Records | | Atlanta Heart Specialist | 2016-06-06 to 2016-09-16 | 13 |
| T1I | B3F | Office Treatment Records | | Ga Cancer Specialist And Dekalb Mc | 2016-06-03 to 2016-10-12 | 53 |
| T1I | B4F | Office Treatment Records | | Atlanta Ent Specialist | 2016-06-27 to 2017-09-18 | 48 |
| T1I | B5F | Emergency Department Records | | Dekalb Medical Center | 2016-06-12 to 2017-09-20 | 166 |
| T1I | B6F | Hospital Records | | Wellstar Kennestone Hospital | 2017-11-02 to 2017-11-03 | 20 |
| T1I | B7F | Office Treatment Records | | Eye Consultants Of Atlanta - Rajat Ghaiy, Md | 2016-06-14 to 2017-11-21 | 27 |

| | | | | | |
|---|---|---|---|---|---|
| T1I | B8F | Office Treatment Records | Wmg Neurosurgery - Rishi Gupta, Md | 2018-01-10 to 2018-01-10 | 7 |
| T1I | B9F | Radiology Report | Wellstar Cobb Imaging Center | 2018-01-18 to 2018-01-19 | 4 |
| T1I | B10F | Office Treatment Records | A.Paulsen, Md | 2017-05-10 to 2018-02-06 | 4 |
| T1I | B11F | Office Treatment Records | Dekalb Neurology Group | 2016-06-20 to 2018-02-08 | 64 |
| T1I | B12F | Office Treatment Records | Emory Healthcare | 2016-06-30 to 2018-03-20 | 18 |
| T1I | B13F | Emergency Department Records | Dekalb Medical Center At Hillandale | to 2018-04-02 | 14 |
| T1I | B14F | Office Treatment Records | Dekalb Neurology Group | 2018-02-15 to 2018-04-06 | 10 |
| T1I | B15F | Office Treatment Records | Maria Walker, Md | 2015-07-01 to 2018-04-12 | 74 |
| T1I | B16F | Office Treatment Records | Eye Consultants Of Atlanta - Rajat Ghaiy, Md | to 2018-05-11 | 3 |
| T1I | B17F | Office Treatment Records | Emory Healthcare - Felicia Goldstein PhD | to 2018-05-25 | 5 |
| T1I | B18F | Office Treatment Records | A. Paulson, Md - Rockdale Psychiatric Associates | to 2018-05-29 | 9 |
| T1I | B19F | Office Treatment Records | Wmg Neurosurgery - Rishi Gupta, Md | to 2018-06-06 | 6 |

| | | | | | |
|---|---|---|---|---|---|
| T1I | B20F | Office Treatment Records | Eye Consultants Of Atlanta - Rajat Ghaiy, Md | to 2018-06-22 | 4 |
| T1I | B21F | Office Treatment Records | Dekalb Neurology Group | to 2018-07-11 | 2 |
| T1I | B22F | Office Treatment Records | Dekalb Mpg - Atlanta Ent Specialists - Shivan Amin Md | 2017-09-18 to 2018-07-25 | 24 |
| T1I | B23F | Office Treatment Records | Eye Consultant Of Atlanta | to 2018-08-14 | 3 |
| T1I | B24F | Office Treatment Records | Mid Town Neurology | 2018-04-12 to 2018-08-15 | 11 |
| T1I | B25F | Office Treatment Records | A. Paulson, Md | 2018-04-23 to 2018-08-27 | 6 |
| T1I | B26F | CE Psychology | Gary Santavicca, Ph.D. | to 2018-08-30 | 14 |
| T1I | B27F | Office Treatment Records | Carla Cargal, Lpc | to 2018-10-05 | 9 |
| T1I | B28F | Office Treatment Records | Ferhana Najam,Md - Emory Decatur Rheumatology | to 2018-10-17 | 7 |
| T1I | B29F | Office Treatment Records | Snap Finger Woods Family Practice | 2018-04-03 to 2018-12-12 | 14 |
| T1I | B30F | Office Treatment Records | Maria Walker, Md | to 2019-02-25 | 3 |
| T1I | B31F | Office Treatment Records | A. Paulson, Md | 2018-11-26 to 2019-02-26 | 2 |
| T1I | B32F | Office Treatment Records | Eye Consultants Of Atlanta | to 2019-03-05 | 2 |
| T1I | B33F | Office Treatment Records | Midtown Neurology | to 2019-04-02 | 2 |

| | | | | | |
|---|---|---|---|---|---|
| T1I | B34F | Emergency Department Records | Dekalb Medical Center At Hillandale | 2018-05-16 to 2019-05-18 | 50 |
| T1I | B35F | Office Treatment Records | Dekalb Neurology Group | 2019-04-11 to 2019-07-10 | 6 |
| T1I | B36F | Office Treatment Records | Dekalb Neurology Group - Ov Reports | 2019-04-11 to 2019-07-10 | 6 |
| T1I | B37F | Office Treatment Records | Midtown Neurology | 2019-04-02 to 2019-09-04 | 17 |
| T1I | B38F | Office Treatment Records | Midtown Neurology | 2019-04-02 to 2019-11-11 | 19 |
| T1I | B39F | Office Treatment Records | Midtown Neurology | 2018-08-15 to 2019-11-11 | 26 |
| T1I | B40F | Office Treatment Records | Carla Cargal, Lpc   Rockdale Psychiatric Associates | 2018-06-15 to 2019-11-13 | 45 |
| T1I | B41F | Office Treatment Records | Carla Cargal, Lpc | 2018-06-15 to 2019-11-13 | 43 |
| T1I | B42F | Office Treatment Records | A. Paulson Md | 2019-05-09 to 2019-11-26 | 3 |
| T1I | B43F | Office Treatment Records | Carla Cargal, Lpc | to 2020-04-14 | 5 |
| T1I | B44F | Office Treatment Records | Rockdale Psychiatric Associates | to 2020-04-14 | 5 |
| T1I | B45F | Office Treatment Records | Midtown Neurology | 2020-04-28 to 2021-03-02 | 9 |