**IN THE U.S. DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : | |
| | : | |
| | : | |
| Applicant, | : | |
| | : | |
| V. | : | Case No. |
| | : | |
| JOHN N. MATSON and SOUTH BAY ACQUISITIONS, LLC, | : | |
| | : | |
| | : | |
| Respondents. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF SECURITIES AND
EXCHANGE COMMISSION'S APPLICATION FOR AN ORDER TO SHOW
CAUSE AND FOR AN ORDER REQUIRING OBEDIENCE TO SUBPOENA**

The Securities and Exchange Commission ("Commission") respectfully

submits this memorandum of law in support of its Application for an Order to Show

Cause and for an Order Requiring Obedience to Subpoena ("Application").

For the reasons set forth below, and in the accompanying Declaration of

Commission Senior Counsel Kyle Bradley ("Bradley Decl."), the Commission asks

that the Court enter an order, in the form attached to the Commission's application,

directing Respondents John N. Matson ("Matson") and South Bay Acquisitions, LLC

("South Bay") to comply with the Commission's investigative subpoenas.

## INTRODUCTION

The Commission is conducting a non-public investigation entitled *In the Matter of South Bay Acquisitions, LLC*, (Internal File No. A-04043) (the "South Bay Investigation") to determine whether any of the federal securities laws have been violated.  Among other things, the South Bay investigation is probing: (i) whether South Bay is offering unregistered securities to the public in the form of promissory notes; (ii) whether Matson counseled advisory clients to invest in South Bay's promissory notes subject to a conflict of interest without sufficient disclosure; (iii) why the South Bay promissory notes stopped making interest payments; and (iv) whether Matson and/or South Bay misappropriated investor funds.  Bradley Decl., ¶3.  As part of the South Bay investigation, the Commission staff issued investigative subpoenas to Respondent Matson (seeking documents and testimony) and to Respondent South Bay (seeking only documents).

The documents and testimony called for by the subpoenas are relevant to the South Bay Investigation.  Nevertheless, Respondents have refused to comply.  Accordingly, the Commission requests that the Court issue an order directing them to show cause why they should not be ordered to produce documents responsive to the subpoenas and appear for investigative testimony, and failing such a showing, ordering them to fully comply.

## FACTS

Until recently, Respondent Matson worked in the securities industry.[1]  Prior to
December 2022, Matson worked as a brokerage registered representative and an
investment adviser representative, and was registered with the Commission in both
capacities.  Bradley Decl. ¶4.  Matson has since been barred from association with
any FINRA member, effectively ending his career as a registered representative of a
broker or investment adviser.

Respondent South Bay is a California limited liability company that issues
securities in the form of promissory notes.  Bradley Decl. ¶5.  The Commission
believes that Matson and South Bay are connected because the individual who,
according to corporate filings with the California Secretary of States' office, owns

---

[1] On December 19, 2022, Matson settled rule violations alleged by the Financial
Industry Regulatory Authority ("FINRA") by agreeing to a Letter of Acceptance,
Waiver and Consent ("AWC").  *See* FINRA Letter of Acceptance, Waiver and
Consent No. 2022076684401 (FINRA AWC 2022076684401 John Nicholas
Matson.pdf).  One of the sanctions imposed was a bar from associating with any
FINRA member.  Notably, the primary rule violation underlying the AWC was
Matson's refusal to produce information and documents to FINRA in connection
with its investigation of Matson.  The FINRA investigation, like the
Commission's, focused on Matson's recommendation of promissory notes that
ceased making promised interest payments.

and operates South Bay – Jan M. Souza – appears to be Matson's spouse.[2]  *Id.*, Exhs. A and B.  South Bay has not filed a registration statement with the Commission, as generally required under securities law, to provide a foundation of disclosure supporting the issuance of those securities.  Bradley Decl. ¶6.

In November 2022, the Commission opened an investigation into possible violations of the antifraud provisions of the federal securities laws by Matson and/or South Bay.  Bradley Decl. ¶7.  The Commission's investigation to this point suggests that, prior to being barred, Matson advised several advisory clients, to whom he owes a fiduciary duty of utmost loyalty (and, consequently, full disclosure of any possible conflicts of interest), to invest in South Bay's promissory notes.  *Id.*

On December 14, 2022, the Commission issued an Order Directing Private Investigation and Designating Officers to Take Testimony (the "Formal Order") in the South Bay investigation.  Bradley Decl. ¶8.  A Formal Order is the mechanism by which the Commission delegates its statutory subpoena power to its staff.  Among other things, the Formal Order:

(i)      directed, pursuant to Section 20(a) of the Securities Act of 1933

("Securities Act"), 15 U.S.C. § 77t(a), Section 21(a) of the Securities

---

[2] Information gathered by the staff strongly supports the conclusion that Souza is Matson's spouse, though Respondents' refusal to respond to the Commission's requests has made this fact difficult to verify with certainty.  Bradley Decl. ¶7.

Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u(a), and Section

209(a) of the Investment Advisers Act of 1940 ("Advisers Act"), 15 U.S.C. §

80b-9(a), that the Commission staff conduct a private investigation to

determine whether any persons or entities had engaged in acts or practices in

violation of various provisions of the securities laws; and

(ii)    designated, pursuant to Section 19(c) of the Securities Act, 15 U.S.C §

77s(c), Section 21(b) of the Exchange Act, 15 U.S.C. § 78u(b), and Section

209(b) of the Advisers Act, 15 U.S.C. § 80b-9(b), certain individuals,

including Senior Counsel Bradley, as officers of the Commission

empowered to administer oaths and affirmations, subpoena witnesses,

compel their attendance, take evidence, and require the production of any

books, papers, correspondence, memoranda, or other records deemed

relevant or material to the investigation.  Bradley Decl., ¶8.[3]

Senior Counsel Bradley and other staff from the Commission's Atlanta

Regional Office, acting on behalf of the Commission pursuant to the Formal Order,

issued separate subpoenas to Matson and South Bay on December 21, 2022 and

---

[3] Because formal orders are typically non-public, the Commission has not included
a copy of the Formal Order with this Application.  Should the Court like to see it,
the Commission stands ready to provide a copy, but respectfully requests that the
Court allow the Commission to submit the Formal Order for *in camera* review.

served them via UPS overnight.[4]  Bradley Decl. ¶9, Exhs. C and D.  Both December

21, 2022 subpoenas requested documents, and the subpoena to Matson also required

him to appear for investigative testimony.  *Id*.  The December 21, 2022 subpoenas

required Respondents to produce documents on or before January 13, 2023.

Matson's testimony was set for February 10, 2023.  *Id*.

The December 21, 2022 South Bay subpoena was sent to the registered agent

identified on South Bay filings made with the California Secretary of State's office,

Jan M. Souza.  Bradley Decl. ¶10, Exhs. A and B.  The December 21, 2022 South

Bay subpoena was addressed using the "principal address" on file with that office.

*Id*.  Based on information gathered by the Commission, the "principal address" for

South Bay appears to be a residence Souza and Matson shared at the time.  *Id*.  The

following day, December 22, 2022, UPS confirmed that the package containing the

South Bay subpoena was delivered and reported receiving a signature that UPS read

as "Jam."  Bradley Decl. ¶11, Exh. E.

The December 21, 2022 subpoena to Matson was sent to him at the same

address as the subpoena to South Bay because Matson listed that address as his

residence on forms filed with FINRA, and as stated, the staff believes Matson and

---

[4] The Commission has authority to serve administrative subpoenas via commercial
courier service.  *See* 17 C.F.R. §§ 201.150(c)(3) and 201.232(c).

Souza both lived there at the time.  Bradley Decl. ¶12, Exh. F.  UPS similarly confirmed that the package containing the December 21, 2022 subpoena to Matson was delivered on December 22, 2022 and likewise reported receiving a signature that UPS read as "Jam."  Bradley Decl. ¶13, Exh. G.

Neither party produced any documents by January 13, 2023.  The staff repeatedly called both Respondents during this time.  The staff was successful in reaching Matson and explained the need to comply.  Bradley Decl. ¶14.  During such a call on January 25, 2023, Matson indicated he had moved, and confirmed his new address.  When the staff indicated it was going to serve another subpoena, Matson explained that he was living with his son, and asked that any new subpoena be served via email to avoid upsetting his son.   Matson provided an email address for that purpose.  Bradley Decl. ¶15.  Accommodating his request, the staff – that day – issued a second subpoena to Matson seeking testimony as well as the same documents previously requested, and served it using the email address provided by Matson.  Bradley Decl. ¶16, Exh. H.  When issuing the January 25 Matson subpoena, the staff revised the dates for compliance to February 8, 2023 (documents) and March 22, 2023 (testimony) to give Matson another opportunity to timely comply. *Id*.

Matson did not produce any documents on or before February 8, 2023.  On February 17, 2023, the staff contacted Matson via email to follow up on the subpoena, and did so again on March 7, 2023.  Bradley Decl. ¶17, Exhs. I and J. Matson responded on March 7, stating "I have not been able to find any counsel to handle this.  I do not have documents that you are requesting."  Bradley Decl., ¶18, Exh. K.  The staff replied on March 8, asking for details of Matson's search for responsive documents and also offering, for Matson's convenience, to conduct his testimony via videoconference.  Bradley Decl. ¶19, Exh. L.  Though Matson never responded to that offer, he sent an email to the staff on March 21, 2023 – the day before his scheduled testimony – claiming that "South Bay has only 2 clients," but did not address his failure to produce documents and appear for testimony.  Bradley Decl. ¶20, Exh. M.  The staff responded the next day, March 22, 2023, and reiterated that the Commission expected compliance with its subpoenas.  Bradley Decl. ¶21, Exh. N.

With respect to South Bay, the December 21, 2022 subpoena was, as explained above, sent to the LLC's registered agent at its principal address on file with the California Secretary of State.  Nevertheless, because the staff had not heard from South Bay or Souza, the staff elected to send another subpoena to a different address.  Bradley Decl., ¶22.  On March 9, 2023, the staff issued a second subpoena

to South Bay using an address obtained from a law enforcement database, which, not coincidentally, was the same address that Matson provided (i.e., the son's house) in January.  The March 9, 2023 subpoena to South Bay sought similar documents to those originally requested, though it included a few additional categories of documents, and had a return date of March 30, 2023.  Bradley Decl., ¶23, Exh. O. Though UPS confirmed that the package containing the March 9, 2023 subpoena was delivered on March 10, 2023 and signed for by "Jan," South Bay has not responded and has produced no documents.  Bradley Decl. ¶24, Exh. P.

## ARGUMENT

In connection with an ongoing investigation, the Commission issued a Formal Order pursuant to Section 20(a) of the Securities Act, 15 U.S.C. § 77t(a), Section 21(a) of the Exchange Act, 15 U.S.C.§ 78u(a), and Section 209(a) of the Advisers Act, 15 U.S.C. § 80b-9(a), and designated officers authorized to issue subpoenas pursuant to Section 19(c) of the Securities Act, 15 U.S.C. § 77s(c), Section 21(b) of the Exchange Act, 15 U.S.C. § 78u(b) and Section 209(b) of the Advisers Act, 15 U.S.C. § 80b-9(b).  As one of the designated officers, Senior Counsel Bradley issued such subpoenas here.  These actions are not only within the Commission's statutory authority; they represent the core of the Commission's investigative and enforcement duties.

Respondents have refused to comply with the Commission's subpoenas, and the Commission has statutory authority to seek an order from this Court compelling their compliance.  Jurisdiction for seeking such an order is conferred upon this Court, and venue properly lies within the Northern District of Georgia, because the investigation is being conducted by the Commission's Atlanta Regional Office.  *See* Section 22(b) of the Securities Act, 15 U.S.C. § 77v(b), Section 21(c) of the Exchange Act, 15 U.S.C. § 78u(c) and Section 209(c) of the Advisers Act, 15 U.S.C. §80b-9(c) ("In case of contumacy by, or refusal to obey a subpoena issued to, any person, the Commission may invoke the aid of any court of the United States within which the jurisdiction of which such investigation or proceeding is carried on . . . in requiring the attendance and testimony of witnesses and the production of books, papers, correspondence, memoranda, and other records.")

The law is clear that a federal district court should enforce an administrative subpoena if the information sought is "within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant." *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950).  "It is well-settled that the role of a district court in a proceeding to enforce an administrative subpoena is sharply limited; inquiry is appropriate only into whether the evidence sought is

material and relevant to a lawful purpose of the agency." *United States v. Florida Azalea Specialists*, 19 F.3d 620, 623 (11th Cir. 1994), *quoting EEOC v. Kloster Cruise Ltd.*, 939 F.2d 920, 922 (11th Cir. 1991).

In evaluating SEC subpoena enforcement requests, courts within this circuit have required the Commission to demonstrate the following: "'(1) that the investigation will be conducted pursuant to a legitimate purpose, (2) that the inquiry may be relevant to the purpose, (3) that the information sought is not already within the Commissioner's possession, and (4) that the administrative steps required . . . have been followed.'" *SEC v. Huff*, 664 F. Supp. 2d 1288, 1294 (S.D. Fla. 2009), *quoting United States v. Powell*, 379 U.S. 48, 57-58 (1964). A respondent seeking to defeat enforcement of a Commission subpoena "shoulders the burden of showing that the subpoena is unreasonable or was issued in bad faith or for an improper purpose, or that compliance would be unnecessarily burdensome." *Huff*, 664 F. Supp. 2d at 1294 (internal citations omitted).

In the present matter, the Commission has demonstrated, through the Bradley Declaration, that it has satisfied the requirements for enforcement of the subpoenas. *See RNR Enter's., Inc. v. SEC*, 122 F.3d 93, 97 (2d Cir. 1997) ("'An affidavit from a government official is sufficient to establish a prima facie showing that these requirements have been met.'") (*quoting In re McVane*, 44 F.3d 1127,

11

1136 (2d Cir. 1995)).  First, the Commission's South Bay Investigation is being conducted for a legitimate purpose within the Commission's authority to investigate, i.e., to determine whether any persons or entities have violated provisions of the federal securities laws.  For example, Section 209(a) of the Advisers Act, 15 U.S.C. § 80b-9(a), and parallel provisions in the Securities Act (15 U.S.C. § 77t(a)) and Exchange Act (15 U.S.C. §78u(a)), expressly authorize the Commission to investigate suspected violations of those Acts and the rules thereunder, such as, e.g., Section 206 and Rule 206(4)-2.  Thus, the South Bay Investigation is being conducted for a legitimate purpose within the Commission's authority.  *See SEC v. Arthur Young & Co.*, 584 F.2d 1018, 1024 (D.C. Cir. 1978) (matters under investigation were "all areas of legitimate concern to the Commission in the discharge of its statutory responsibilities").

Second, the information that the Commission is seeking is relevant to the South Bay Investigation.  To satisfy this requirement, the Commission need only show that the information sought is "not plainly incompetent or irrelevant to any lawful purpose."  *Id.* at 1029 (*quoting Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 509 (1943)); *see also SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 741 (1984) (the Commission has "broad authority to conduct investigations into possible violations of the federal securities laws and to demand the production of evidence

relevant to such investigations"); *SEC v. Dresser Industries, Inc.*, 628 F.2d 1368, 1379 (D.C. Cir. 1980) (*en banc*) (Congress authorized the Commission "in its discretion, [to] make such investigations as it deems necessary" into possible violations of the securities laws). The subpoenas call for Matson and South Bay to provide information such as: (1) their financial account statements showing any securities transactions and the movement of funds; (2) their communications and agreements with each other; (3) a list of South Bay's investors or potential investors; (4) their communications and agreements with investors or potential investors; and (5) their communications and agreements with any person or entity that solicited investors on their behalf. Bradley Decl., Exhs. C, D, H and O. All of this information is relevant to determining whether any violations of the federal securities laws have occurred here. Thus, the subpoenas seek information that is relevant to the Commission's statutory duties. *RNR Enter's., Inc.*, 122 F.3d at 97.

Third, the Commission staff does not possess the information sought in the subpoenas. Bradley Decl. ¶23. Neither Matson nor South Bay has produced any requested documents, and Matson has not testified. Respondents are the most efficient source, and in many instances, the only source of this information.

Finally, the subpoenas comply with applicable administrative procedures. In particular, an officer designated by the Commission issued the subpoenas. Bradley

13

Decl. ¶¶4(ii) and 6; *see also* Exchange Act Section 21(b), 15 U.S.C. § 78u(b) (authorizing issuance of subpoenas); Advisers Act Section 209(b), 15 U.S.C. § 80b-9(b) (same).  Further, the Commission staff properly served the subpoenas. Bradley Decl. ¶¶6, 9, and 10; *see also* 17 C.F.R. §§ 201.150(c)(3) and 201.232(c) (authorizing service of administrative subpoenas via commercial courier service).

The proposed order, submitted herewith, provides that Respondents shall produce the subpoenaed documents by a date certain, and Matson shall submit himself for sworn investigative testimony three weeks after that document production.  That sequencing will allow time for the Commission to review the documents and prepare for the testimony so as to be as efficient as possible.  If the documents are produced on the same day as the sworn testimony, or with little time between the production and the testimony, there is an increased risk that multiple testimony sessions will be required to address questions raised by the documents. The Commission therefore asks that the Court enter an order, such as the proposed order, directing Respondents to comply with the subpoena, first, by producing the requested documents by a date certain, and then, appearing for testimony.

## <u>CONCLUSION</u>

For the foregoing reasons, the Commission respectfully requests that the Court order Respondents to show cause why they should not comply with the

subpoenas, and absent such a showing, thereafter order Respondents to comply

fully with the Commission's subpoenas.

This 1st day of May, 2023.

Respectfully submitted,

*/s/W. Shawn Murnahan*
W. Shawn Murnahan
Senior Trial Counsel
Georgia Bar No. 529940
murnahanw@sec.gov

M. Graham Loomis
Regional Trial Counsel
Georgia Bar No. 457868
loomism@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
950 East Paces Ferry Road, NE, Suite 900
Atlanta, GA 30326
Tel: (404) 842-7616
Fax: (703)-813-9364

## LOCAL RULE 7.1 CERTIFICATION

I hereby certify that the foregoing was prepared in accordance with font and point selections approved by the Court in Local Rule 5.1B.

This 1st day of May, 2023

/s/ W. Shawn Murnahan
W. Shawn Murnahan

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a true and correct copy of the foregoing document by filing it with the Clerk of Court using the CM/ECF system. That filing system will automatically send e-mail notification of such filing to the registered counsel of record.

This 1st day of May, 2023

/s/W. Shawn Murnahan
W. Shawn Murnahan