**IN THE U.S. DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | : | |
| | : | |
| **Applicant,** | : | |
| | : | |
| **V.** | : | **Case No.** |
| | : | |
| **JOHN N. MATSON and SOUTH BAY ACQUISITIONS, LLC,** | : | |
| | : | |
| **Respondents.** | : | |

**DECLARATION OF KYLE BRADLEY IN SUPPORT OF SEC'S
APPLICATION FOR AN ORDER TO SHOW CAUSE AND FOR AN
<u>ORDER REQUIRING OBEDIENCE TO A SUBPOENA</u>**

I, Kyle Bradley, pursuant to 28 U.S.C. § 1746, do hereby declare as follows:

1.     I am employed as an attorney in the Enforcement Division in the Atlanta Regional Office of the Applicant Securities and Exchange Commission ("Commission").

2.     I submit this Declaration in support of the Commission's Application for an Order to Show Cause and for an Order Requiring Obedience to a Subpoena directing Respondents John N. Matson ("Matson") and South Bay Acquisitions, LLC ("South Bay") to comply with investigative subpoenas served upon them in

connection with the Commission's non-public investigation entitled <u>In the Matter</u> <u>of South Bay Acquisitions, LLC</u> (Internal File No. A-04043) (the "South Bay Investigation").  Unless otherwise indicated, I make the statements herein based on my own personal knowledge, as well as a review of publicly available information and documentary evidence.

3.      I have been involved in the Commission's South Bay Investigation since November 11, 2022.  The investigation concerns, among other things, whether any persons or entities have engaged in acts constituting violations of various provisions of the federal securities laws by probing, among other things: (i) whether South Bay is offering unregistered securities to the public in the form of promissory notes; (ii) whether Matson counseled advisory clients to invest in South Bay's promissory notes subject to a conflict of interest without sufficient disclosure; (iii) why the South Bay promissory notes stopped making interest payments; and (iv) whether Matson and/or South Bay misappropriated investor funds.

4.      Prior to December 2022, Matson worked as a brokerage registered representative and an investment adviser representative, and was registered with the Commission in both capacities.  Based on my research, and review of FINRA

Letter of Acceptance, Waiver and Consent No. 2022076684401, Matson has since
been barred from association with any FINRA member.

5.      Respondent South Bay is a California limited liability company that
issues securities in the form of promissory notes.  According to corporate filings
with the California Secretary of States' office, South Bay's only manager and its
registered agent for service of process is Jan M. Souza.  Based on the information
gathered in the South Bay investigation to date, I believe that Souza is Matson's
spouse.  Attached as **Exhibit A** to this Declaration is a true and correct copy of the
search results from the California Secretary of State's business search engine.
Attached as **Exhibit B** are true and correct copies of South Bay's April 28, 2016
and November 9, 2021 Statements of Information filed with the California
Secretary of State's office.

6.      Based on my search of Commission records, I see no evidence that
South Bay has filed a registration statement with the Commission in connection
with its promissory notes.

7.      In November 2022, the Commission opened an investigation into
possible violations of the antifraud provisions of the federal securities laws by
Matson and/or South Bay.  Based on the information gathered in the South Bay
investigation to this point, it appears that prior to being barred, Matson advised

multiple advisory clients, to whom he owes a fiduciary duty, to invest in South Bay's promissory notes.

8.      On December 14, 2022, the Commission issued an Order Directing Private Investigation and Designating Officers to Take Testimony (the "Formal Order") in the South Bay Investigation.  Among other things, the Formal Order:

(i)     directed, pursuant to Section 20(a) of the Securities Act of 1933 ("Securities Act") 15 U.S.C. § 77t(a), Section 21(a) of the Securities Exchange Act of 1934 ("Exchange Act") 15 U.S.C.§ 78u(a), and Section 209(a) of the Investment Advisers Act of 1940 ("Advisers Act") 15 U.S.C. 80b-9(a) that the Commission staff conduct a private investigation to determine whether any persons or entities had engaged in acts or practices in violation of various provisions of the securities laws; and

(ii)    designated, pursuant to Section 19(c) of the Securities Act 15 U.S.C § 77s(c), Section 21(b) 15 U.S.C. § 78u(b) of the Exchange Act, and Section 209(b) of the Advisers Act 15 U.S.C. § 80b-9(b) certain individuals, including myself, as officers of the Commission empowered to administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence, and require the production of

any books, papers, correspondence, memoranda, or other records

deemed relevant or material to the investigation.

9.     On December 21, 2022, I sent separate subpoenas issued pursuant to

the Formal Order to Matson and South Bay.  Both December 21, 2022 subpoenas

requested documents, and the subpoena to Matson also required him to appear for

investigative testimony.  The December 21, 2022 subpoenas required Respondents

to produce documents on or before January 13, 2023.  Matson's testimony was set

for February 10, 2023.  Attached to this Declaration as **Exhibit C** is a true and

correct copy of the December 21, 2022 subpoena issued to South Bay.  Attached as

**Exhibit D** is a true and correct copy of the December 21, 2022 subpoena issued to

Matson.

10.     The December 21, 2022 South Bay subpoena was sent to the

registered agent identified on South Bay filings made with the California Secretary

of State's office, Jan M. Souza.  The December 21, 2022 South Bay subpoena was

addressed using the "principal address" on file with that office.  Based on

information gathered in the South Bay investigation so far, the "principal address"

for South Bay appears to be a residence Souza and Matson shared at the time.

11.     The following day, December 22, 2022, UPS confirmed that the

package containing the South Bay subpoena was delivered and reported receiving a

signature that UPS read as "Jam."  Attached to this Declaration as **Exhibit E** is a true and correct copy of the UPS delivery confirmation for the December 21, 2022 subpoena to South Bay.

12.     I sent the December 21, 2022 subpoena to Matson at the same address as the subpoena to South Bay.  I did this because Matson listed that address as his residence on forms filed with FINRA, and because the information gathered in the South Bay investigation at that time caused me to believe Matson and Souza both lived there at the time.  Attached to this Declaration as **Exhibit F** is a true and correct copy of the Composite Information profile in the FINRA database for John N. Matson, CRD# 1796541.

13.     The following day, December 22, 2022, UPS confirmed that the package containing the Matson subpoena was delivered and reported receiving a signature that UPS read as "Jam."  Attached to this Declaration as **Exhibit G** is a true and correct copy of the UPS delivery confirmation for the December 21, 2022 subpoena to Matson.

14.     Neither party produced any documents by January 13, 2023.  At that point, I began repeatedly calling both Respondents using phone numbers discovered during the investigation.  I was successful in reaching Matson and explained the need to comply.

15.     I reached Matson via phone on January 25, 2023.  Discussing the

subpoena, Matson indicated he had moved and provided a different address, in San

Diego, CA.  When I told him I intended to send another subpoena to him, Matson

explained that he was living with his son, and asked that any new subpoena be

served via email to avoid upsetting his son.  He provided me with an email address

for that purpose.

16.     After the January 25, 2023 call with Matson, I issued, that day, a

second subpoena to him seeking testimony as well as the same documents

previously requested, and served it using the email address provided by Matson.

Since the production and testimony dates set out in the December 21, 2022

subpoena had already passed, I revised the dates for compliance to February 8,

2023 (documents) and March 22, 2023 (testimony).  Attached to this Declaration

as **Exhibit H** is a true and correct copy of the cover email and January 25, 2023

subpoena sent to Matson.

17.     Matson did not produce any documents on or before February 8,

2023.  On February 17, 2023, I contacted Matson via email to follow up on the

subpoena, and did so again on March 7, 2023.  Attached to this Declaration as

**Exhibit I** is a true and correct copy of my email correspondence to Matson on

February 17, 2023, and attached as **Exhibit J** is a true and correct copy of my email correspondence to Matson on March 7, 2023.

18.    Matson responded to my email message on March 7, stating "I have not been able to find any counsel to handle this.  I do not have documents that you are requesting."  Attached to this Declaration as **Exhibit K** is a true and correct copy of Matson's email correspondence to me on March 7, 2023.

19.    In response to Matson's statement that he did not have any responsive documents, I replied on March 8, asking for details of Matson's search for responsive documents.  I also offered, for Matson's convenience, to conduct his testimony via videoconference.  Attached to this Declaration as **Exhibit L** is a true and correct copy of my email correspondence to Matson on March 8, 2023.

20.    Matson responded to me via email on March 21, 2023.  In the message, he made some claims about South Bay's business, including the assertion that "South Bay has only 2 clients."  Though his testimony was, pursuant to the January 25, 2023 subpoena, scheduled for the following day, Matson did not respond to my offer to hold the testimony via videoconference, or acknowledge his testimony obligation.  In addition, he did not address his failure to produce documents.  Attached to this Declaration as **Exhibit M** is a true and correct copy of Matson's email correspondence to me on March 21, 2023.

21.    I replied the next day, March 22, 2023.  Attached to this Declaration as **Exhibit N** is a true and correct copy of my email correspondence to Matson on March 22, 2023.

22.    With respect to South Bay, the December 21, 2022 subpoena was, as explained above, sent to the LLC's registered agent at its principal address on file with the California Secretary of State.  Nevertheless, because the staff had not heard from South Bay or Souza, the staff elected to send another subpoena to a different address.

23.    On March 9, 2023, I sent a second subpoena to South Bay using an address I obtained from a law enforcement database.  I noted that it was the same address that Matson provided (i.e., the son's house) in January.  The March 9, 2023 subpoena to South Bay sought similar documents to those originally requested, though it included a few additional categories of documents, and had a return date of March 30, 2023.  Attached to this Declaration as **Exhibit O** is a true and correct copy of the March 9, 2023 subpoena to South Bay.

24.    UPS confirmed that the package containing the March 9, 2023 subpoena was delivered on March 10, 2023 and that they received a signature that they read as "Jan."  South Bay has not responded and has produced no documents.  Attached to this Declaration as **Exhibit P** is a true and correct copy of the UPS

delivery confirmation for the March 9, 2023 subpoena to South Bay.

25.     To my knowledge, the Commission is not in possession of the

information sought in the subpoena.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the

foregoing is true and correct.

Executed on May 1, 2023.

_Kyle a. Bradley_ by WSM with express permission

Kyle Bradley
Senior Counsel
Securities and Exchange Commission

# EXHIBIT A

## California
*Secretary of State*

**Business**   UCC

Login

Home

Search

Forms

Help

# Business Search

The California Business Search provides access to available information for **corporations**, **limited liability companies** and **limited partnerships** of record with the California Secretary of State, with **free PDF copies** of over 17 million imaged business entity documents, including the most recent imaged Statements of Information filed for Corporations and Limited Liability Companies.

Currently, information for Limited Liability Partnerships (e.g. law firms, architecture firms, engineering firms, public accountancy firms, and land survey firms), General Partnerships, and other entity types are **not contained** in the California Business Search. If you wish to obtain information about LLPs and GPs, submit a Business Entities Order paper form to request copies of filings for these entity types. Note: This search is not intended to serve as a name reservation search. To reserve an entity name, select Forms on the left panel and select Entity Name Reservation ? Corporation, LLC, LP.

### Basic Search

A Basic search can be performed using an entity name or entity number. When conducting a search by an entity number, where applicable, **remove "C" from the entity**

## SOUTH BAY ACQUISITIONS, LLC (201133210111)



**Request Certificate**

| | |
|---|---|
| *Initial Filing Date* | 11/16/2011 |
| *Status* | **Active** |
| *Standing - SOS* | Good |
| *Standing - FTB* | Good |
| *Standing - Agent* | Good |
| *Standing - VCFCF* | Good |
| *Formed In* | CALIFORNIA |
| *Entity Type* | **Limited Liability Company - CA** |
| *Principal Address* | **534 23RD ST MANHATTAN BEACH, CA 90266** |
| *Mailing Address* | **534 23RD ST MANHATTAN BEACH,CA90266** |
| *Statement of Info Due Date* | 11/30/2023 |
| *Agent* | **Individual JAN M SOUZA 534 23RD ST MANHATTAN BEACH, CA 90266** |



**View History**        **Request Access**

Skip to main content State

## California
*Secretary of State*

**Business**    **UCC**

Home

Search

Forms

Help

*Limited Partnerships, Cooperatives, Name Reservations, Foreign Name Reservations, Unincorporated Common Interest Developments, and Out of State Associations). The basic search performs a contains ?keyword? search. The Advanced search allows for a ?starts with? filter. To search entities that have a status other than active or to refine search criteria, use the **Advanced** search feature.*

### Advanced Search

*An Advanced search is required when searching for publicly traded disclosure information or a status other than active.*

*An Advanced search allows for searching by specific entity types (e.g., Nonprofit Mutual Benefit Corporation) or by entity groups (e.g., All Corporations) as well as searching by ?begins with? specific search criteria.*

**Disclaimer:** *Search results are limited to the 500 entities closest matching the entered search criteria. If your desired search result is not found within the 500 entities provided, please refine the search criteria using the Advanced search function for additional results/entities. The California Business Search is updated as documents are approved. The data provided is not a complete or certified record.*

*Although every attempt has*

Skip to main content *State*

# SOUTH BAY ACQUISITIONS, LLC (201133210111)



**Request Certificate**

| | |
|---|---|
| *Initial Filing Date* | **11/16/2011** |
| *Status* | **Active** |
| *Standing - SOS* | **Good** |
| *Standing - FTB* | **Good** |
| *Standing - Agent* | **Good** |
| *Standing - VCFCF* | **Good** |
| *Formed In* | **CALIFORNIA** |
| *Entity Type* | **Limited Liability Company - CA** |
| *Principal Address* | **534 23RD ST MANHATTAN BEACH, CA 90266** |
| *Mailing Address* | **534 23RD ST MANHATTAN BEACH,CA90266** |
| *Statement of Info Due Date* | **11/30/2023** |
| *Agent* | **Individual JAN M SOUZA 534 23RD ST MANHATTAN BEACH, CA 90266** |



**View History**          **Request Access**

## California
*Secretary of State*

Home

Search

Forms

Help

**Business**    **UCC**

*responsible for any loss, consequence, or damage resulting directly or indirectly from reliance on the accuracy, reliability, or timeliness of the information that is provided. All such information is provided "as is." To order certified copies or certificates of status, (1) locate an entity using the search; (2)select Request Certificate in the right-hand detail drawer; and (3) complete your request online.*

south bay a    🔍

Advanced ⌄

Results: 1

| Entity Information | Initial Filing Date |
|---|---|
| SOUTH BAY ACQUISITIONS, LLC (201133210111) > | 11/16/201 |

# SOUTH BAY ACQUISITIONS, LLC (201133210111)



**Request Certificate**

| | |
|---|---|
| *Initial Filing Date* | **11/16/2011** |
| *Status* | **Active** |
| *Standing - SOS* | **Good** |
| *Standing - FTB* | **Good** |
| *Standing - Agent* | **Good** |
| *Standing - VCFCF* | **Good** |
| *Formed In* | **CALIFORNIA** |
| *Entity Type* | **Limited Liability Company - CA** |
| *Principal Address* | **534 23RD ST MANHATTAN BEACH, CA 90266** |
| *Mailing Address* | **534 23RD ST MANHATTAN BEACH,CA90266** |
| *Statement of Info Due Date* | **11/30/2023** |
| *Agent* | **Individual JAN M SOUZA 534 23RD ST MANHATTAN BEACH, CA 90266** |



**View History**    **Request Access**

© 2023 CA Secretary of State

# EXHIBIT B

**Secretary of State**
Statement of No Change
(Limited Liability Company)

**LLC-12NC**

21-F93370

# FILED

In the office of the Secretary of State
of the State of California

NOV 09, 2021

**IMPORTANT — Read instructions** before completing this form.  This form may be used only if a complete Statement of Information has been filed previously and there has been no change.

**Filing Fee – $20.00**

**Copy Fee –** $1.00;
            Certification Fee - $5.00 plus copy fee

*This Space For Office Use Only*

---

1. **Limited Liability Company Name** (Enter the **exact** name of the LLC as it is recorded with the California Secretary of State.  Note: If you registered in California using an alternate name, see instructions.)

SOUTH BAY ACQUISITIONS, LLC

---

| 2.  **12-Digit Secretary of State File Number** | 3.  **State, Foreign Country or Place of Organization** (only if formed outside of California) |
|---|---|
| 201133210111 | CALIFORNIA |

---

4. **No Change Statement** (Do not alter the No Change Statement.  If there has been any change, please complete a Statement of Information (Form LLC-12).)

*There has been no change in any of the information contained in the previous complete Statement of Information filed with the California Secretary of State.*

---

5. The information contained herein is true and correct.

| 11/09/2021 | JAN M SOUZA | MEMBER | |
|---|---|---|---|
| Date | Type or Print Name of Person Completing the Form | Title | Signature |

---

**Return Address (Optional)**  (For communication from the Secretary of State related to this document, or if purchasing a copy of the filed document, enter the name of a person or company and the mailing address. This information will become public when filed. (SEE INSTRUCTIONS BEFORE COMPLETING.)

Name: ⌐                                    ⌐

Company:

Address:

City/State/Zip: ⌊                                    ⌋

LLC-12NC (REV 01/2017)

2017 California Secretary of State
www.sos.ca.gov/business/be

16-713960



# State of California
## Secretary of State

**STATEMENT OF INFORMATION** 125
(Limited Liability Company)
Filing Fee $20.00. If this is an amendment, see instructions.
**IMPORTANT — READ INSTRUCTIONS BEFORE COMPLETING THIS FORM**

L

**FILED**
Secretary of State
State of California

APR 2 8 2016

This Space For Filing Use Only

1.  **LIMITED LIABILITY COMPANY NAME**

SOUTH BAY ACQUISITIONS, LLC

**File Number and State or Place of Organization**

2.  SECRETARY OF STATE FILE NUMBER 201133210111

3.  STATE OR PLACE OF ORGANIZATION (If formed outside of California)

**No Change Statement**

4.  If there have been any changes to the information contained in the last Statement of Information filed with the California Secretary of State, or no Statement of Information has been previously filed, this form must be completed in its entirety.

☐ If there has been no change in any of the information contained in the last Statement of Information filed with the California Secretary of State, check the box and proceed **to Item 15.**

**Complete Addresses for the Following** (Do not abbreviate the name of the city. Items 5 and 7 cannot be P.O. Boxes.)

| | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 5. STREET ADDRESS OF PRINCIPAL OFFICE<br>534 23RD ST | MANHATTAN BEACH, CA | | 90266 |
| 6. MAILING ADDRESS OF LLC, IF DIFFERENT THAN ITEM 5 | CITY | STATE | ZIP CODE |
| 7. STREET ADDRESS OF CALIFORNIA OFFICE<br>534 23RD ST, | CITY<br>MANHATTAN BEACH, CA | STATE<br>CA | ZIP CODE<br>90266 |

**Name and Complete Address of the Chief Executive Officer, If Any**

| 8. NAME<br>JAN M. SOUZA | ADDRESS<br>534 23RD ST | CITY<br>MANHATTAN BEACH, CA | STATE | ZIP CODE<br>90266 |
|---|---|---|---|---|

**Name and Complete Address of Any Manager or Managers, or if None Have Been Appointed or Elected, Provide the Name and Address of Each Member** (Attach additional pages, if necessary.)

| 9. NAME<br>JAN M. SOUZA | ADDRESS<br>534 23RD ST | CITY<br>MANHATTAN BEACH, CA | STATE | ZIP CODE<br>90266 |
|---|---|---|---|---|
| 10. NAME | ADDRESS | CITY | STATE | ZIP CODE |
| 11. NAME | ADDRESS | CITY | STATE | ZIP CODE |

**Agent for Service of Process** If the agent is an individual, the agent must reside in California and Item 13 must be completed with a California address, a P.O. Box is not acceptable. If the agent is a corporation, the agent must have on file with the California Secretary of State a certificate pursuant to California Corporations Code section 1505 and Item 13 must be left blank.

12. NAME OF AGENT FOR SERVICE OF PROCESS
JAN M. SOUZA

| 13. STREET ADDRESS OF AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, IF AN INDIVIDUAL<br>534 23RD ST | CITY<br>MANHATTAN BEACH, CA | STATE<br>CA | ZIP CODE<br>90266 |
|---|---|---|---|

**Type of Business**

14. DESCRIBE THE TYPE OF BUSINESS OF THE LIMITED LIABILITY COMPANY
MANAGEMENT SERVICES

15. THE INFORMATION CONTAINED HEREIN, INCLUDING ANY ATTACHMENTS, IS TRUE AND CORRECT.

| 3/26/2016 | JAN M. SOUZA | MEMBER | |
|---|---|---|---|
| DATE | TYPE OR PRINT NAME OF PERSON COMPLETING THE FORM | TITLE | SIGNATURE |

LLC-12 (REV 01/2014)

APPROVED BY SECRETARY OF STATE

# EXHIBIT C



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
950 East Paces Ferry Road, N.E., Suite 900
Atlanta, GA 30326-1382

ATLANTA
REGIONAL OFFICE

December 21, 2022

<u>**Via UPS**</u>

South Bay Acquisitions, LLC
*c/o* Jan M. Souza
534 23rd Street
Manhattan Beach, CA  90266

      Re:    <u>In the Matter of South Bay Acquisitions, LLC (A-04043)</u>

Dear Ms. Souza:

      The staff of the Atlanta Regional Office of the United States Securities and Exchange Commission is conducting an investigation in the matter identified above.  The enclosed subpoena has been issued to you as part of this investigation.  The subpoena requires you to provide us documents.

      Please read the subpoena and this letter carefully.  This letter answers some questions you may have about the subpoena.  You should also read the enclosed SEC Form 1662.  If you do not comply with this subpoena, the SEC may bring an action in Federal Court to enforce this subpoena.  Failure to comply with a court order enforcing this subpoena may result in the court imposing a fine, imprisonment or both.

<u>**Producing Documents**</u>

*What materials do I have to produce?*

      The subpoena requires you to provide us the documents described in the attachment to the subpoena.  You must provide these documents by January 13, 2023.  The attachment to the subpoena defines some terms (such as "document") before listing what you must provide.

      You should produce each and every document in your possession, custody, or control, including any documents that are not in your immediate possession but that you have the ability to obtain.  All responsive documents shall be produced as they are kept in the usual course of business, and shall be organized and labeled to correspond with the numbered paragraphs in the subpoena attachment.  In that regard, documents should be produced in a unitized manner, *i.e.*, delineated with staples or paper clips to identify the document boundaries.

Documents responsive to this subpoena may be in electronic or paper form.  Electronic documents such as email should be produced in accordance with the attached document entitled SEC Data Delivery Standards (the "Standards").  If you have any questions concerning the production of documents in an electronic format, please contact me as soon as possible but in any event before producing documents.  **All electronic documents responsive to the document subpoena, including all metadata, must also be secured and retained in their native software format and stored in a safe place.**  The staff may later request or require that you produce the native format.

For documents in paper format, you may send the originals, or, if you prefer, you may send copies of the originals.  The Commission cannot reimburse you for the copying costs.  If you are sending copies, the staff requests that you scan (rather than photocopy) hard copy documents and produce them in an electronic format consistent with the Standards.  Alternatively, you may send us photocopies of the documents in paper format.  **If you choose to send copies, you <u>must</u> secure and retain the originals and store them in a safe place.**  The staff may later request or require that you produce the originals.

Whether you scan or photocopy documents, the copies must be identical to the originals, including even faint marks or print.  Also, please note that if copies of a document differ in any way, they are considered separate documents and you must send each one.  For example, if you have two copies of the same letter, but only one of them has handwritten notes on it, you must send both the clean copy and the one with notes.

If you <u>do</u> send us scanned or photocopied documents, please put an identifying notation on each page of each document to indicate that you produced it, and number the pages of all the documents submitted.  (For example, if Jane Doe sends documents to the staff, she may number the pages JD-1, JD-2, JD-3, etc., in a blank corner of the documents.)  Please make sure the notation and number do not conceal any writing or marking on the document.  If you send us originals, please do not add any identifying notations.

In producing a photocopy of an original document that contains post-it(s), notation flag(s), or other removable markings or attachments which may conceal all or a portion of the markings contained in the original document, photocopies of the original document both with and without the relevant post-it(s), notation flag(s), or removable markings or attachments should be produced.

*Do I need to send anything else?*

You should enclose a list briefly describing each item you send.  The list should state to which numbered paragraph(s) in the subpoena attachment each item responds.  A copy of the subpoena should be included with the documents that are produced.

Passwords for documents, files, compressed archives, and encrypted media should be provided separately either via email addressed to ENF-CPU@sec.gov, or in a separate cover letter mailed separately from the data. **Password correspondence should reference case number, case name and requesting SEC staff member.**

Please include a cover letter stating whether you believe you have met your obligations under the subpoena by searching carefully and thoroughly for everything called for by the subpoena, and sending it all to us. **Correspondence should reference case number, case name and requesting SEC staff member.**

Please also provide a narrative description describing what you did to identify and collect documents responsive to the subpoena.  At a minimum, the narrative should describe:

- who searched for documents;

- who reviewed documents found to determine whether they were responsive;

- what sources were searched (e.g., computer files, CDs, DVDs, thumb drives, flash drives, online storage media, hard copy files, diaries, datebooks, planners, filing cabinets, home office, work office, voice mails, home email, webmail, work email, backup tapes or other media);

- what third parties, if any, were contacted to obtain responsive documents (e.g., phone companies for phone records, brokerage firms for brokerage records); and

- where the original electronic and hardcopy documents are maintained and by whom.

For any documents that qualify as records of regularly conducted activities under Federal Rule of Evidence 902(11), please complete a business records certification (a sample of which is enclosed) and return it with the document production.

*What if I do not send everything described in the attachment to the subpoena?*

The subpoena requires you to send <u>all</u> the materials described in it.  If, for any reason – including a claim of attorney-client privilege – you do not produce something called for by the subpoena, you should submit a list of what you are not producing.  The list should describe each item separately, noting:

- its author(s);

- its date;

- its subject matter;

- the name of the person who has the item now, or the last person known to have it;

- the names of everyone who ever had the item or a copy of it, and the names of everyone who was told the item's contents;

- the reason you did not produce the item; and

- the specific request in the subpoena to which the document relates.

If you withhold anything on the basis of a claim of attorney-client privilege or attorney work product protection, you should identify the attorney and client involved.  If you withhold anything on the basis of the work product doctrine, you should also identify the litigation in anticipation of which the document was prepared.

If documents responsive to this subpoena no longer exist because they have been lost, discarded, or otherwise destroyed, you should identify such documents and give the date on which they were lost, discarded or destroyed.

*Where should I send the materials?*

Please send the materials to:

ENF-CPU (U.S. Securities & Exchange Commission)
14420 Albemarle Point Pl.
Suite 102
Chantilly, VA 20151-1750

For smaller electronic productions under 10MB in size, the materials may be emailed to the following email address: ENF-CPU@sec.gov.

## Other Important Information

*May I have a lawyer help me respond to the subpoena?*

Yes. You have the right to consult with and be represented by your own lawyer in this matter. Your lawyer may also advise and accompany you when you testify. We cannot give you legal advice.

*What will the Commission do with the materials I send and/or the testimony I provide?*

The enclosed SEC Form 1662 explains how we may use the information you provide to the Commission. This form also has other important information for you. Please read it carefully.

*Has the Commission determined that anyone has done anything wrong?*

This investigation is a non-public, fact-finding inquiry. We are trying to determine whether there have been any violations of the federal securities laws. The investigation and the subpoena do not mean that we have concluded that you or anyone else has violated the law. Also, the investigation does not mean that we have a negative opinion of any person, entity or security.

*Important Policy Concerning Settlements*

Please note that, in any matter in which enforcement action is ultimately deemed to be warranted, the Division of Enforcement will not recommend any settlement to the Commission unless the party wishing to settle certifies, under penalty of perjury, that all documents responsive to Commission subpoenas and formal and informal document requests in this matter have been produced.

*I have read this letter, the subpoena, and the SEC Form 1662, but I still have questions.  What should I do?*

If you have any other questions, you may call me at 404-842-7643.  If you are represented by a lawyer, you should have your lawyer contact me.

Sincerely,

Kyle A. Bradley
Senior Counsel
Division of Enforcement

Enclosures:    Subpoena and Attachment
               SEC Data Delivery Standards
               SEC Form 1662
               Business Records Certification



# SUBPOENA

# UNITED STATES OF AMERICA
## SECURITIES AND EXCHANGE COMMISSION

**In the Matter of South Bay Acquisitions, LLC (<u>A-04043</u>)**

To:   South Bay Acquisitions, LLC
534 23rd Street
Manhattan Beach, CA  90266

---

☒   **YOU MUST PRODUCE** everything specified in the Attachment to this subpoena to officers of the Securities and Exchange Commission, at the place, date and time specified below:

ENF-CPU, U.S. Securities and Exchange Commission, 14420 Albemarle Point Pl, Suite 102, Chantilly, VA 20151-1750, no later than January 13, 2023 at 9:30 a.m.

---

### FEDERAL LAW REQUIRES YOU TO COMPLY WITH THIS SUBPOENA.
If you do not comply with this subpoena, the SEC may bring an action in Federal Court to enforce this subpoena. Failure to comply with a court order enforcing this subpoena may result in the court imposing a fine, imprisonment, or both.

By:   _____       Date:   _____12/21/2022_____
Kyle A. Bradley, Senior Counsel
U.S. Securities and Exchange Commission
950 E. Paces Ferry Road NE, Suite 900
Atlanta, Georgia  30326

I am an officer of the U.S. Securities and Exchange Commission authorized to issue subpoenas in this matter.  The Securities and Exchange Commission has issued a formal order authorizing this investigation under: Section 20(a) of the Securities Act of 1933, Section 21(a) of the Securities Exchange Act of 1934, and Section 209(a) of the Investment Advisers Act of 1940.

---

NOTICE TO WITNESS:       If you claim a witness fee or mileage, submit this subpoena with the claim voucher.

**SUBPOENA ATTACHMENT FOR SOUTH BAY ACQUISITIONS, LLC**
**December 21, 2022**
In the Matter of South Bay Acquisitions, LLC (A-04043)

**A.    Definitions**

As used in this subpoena, the words and phrases listed below shall have the following meanings:

1.    "SBA" means the entity doing business under the name "South Bay Acquisitions, LLC" including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

2.    "Person" means a natural person, firm, association, organization, partnership, business, trust, corporation, bank or any other private or public entity.

3.    A "Representative" of a Person means any present or former family members, officers, executives, partners, joint-venturers, directors, trustees, employees, consultants, accountants, attorneys, agents, or any other representative acting or purporting to act on behalf of the Person.

4.    "Investor" means any person or entity that was solicited to or invested in SBA. This includes any debt or equity investments.

5.    "Matson" means (i) John Matson and/or (ii) any present or former representative of Wiedeman.

6.    "Finder" means any person or entity that solicited investors on behalf of SBA.

7.    "Bank Account" means any account held at a bank, savings and loan, credit union, or similar financial institution.

8.    "Financial Account" means any account held at a brokerage firm, Bank Account, or similar financial institution.

9.    "Document" shall include, but is not limited to, any written, printed, or typed matter including, but not limited to all drafts and copies bearing notations or marks not found in the original, letters and correspondence, interoffice communications, slips, tickets, records, worksheets, financial records, accounting documents, bookkeeping documents, memoranda, reports, manuals, telephone logs, telegrams, facsimiles, messages of any type, telephone messages, voice mails, tape recordings, notices, instructions, minutes, summaries, notes of meetings, file folder markings, and any other organizational indicia, purchase orders, information recorded by photographic process, including microfilm and microfiche, computer printouts, spreadsheets, and other electronically stored information, including but not limited to writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations that are stored in any medium from which information can be retrieved, obtained,

1

manipulated, or translated.

10.     "Communication" means any correspondence, contact, discussion, e-mail, instant message, or any other kind of oral or written exchange or transmission of information (in the form of facts, ideas, inquiries, or otherwise) and any response thereto between two or more Persons or entities, including, without limitation, all telephone conversations, face-to-face meetings or conversations, internal or external discussions, or exchanges of a Document or Documents.

11.     "Concerning" means directly or indirectly, in whole or in part, describing, constituting, evidencing, recording, evaluating, substantiating, concerning, referring to, alluding to, in connection with, commenting on, relating to, regarding, discussing, showing, analyzing or reflecting.

12.     An "Agreement" means any actual or contemplated (i) written or oral Agreement; (ii) term or provision of such Agreement; or (iii) amendment of any nature or termination of such Agreement.  A request for any Agreement among or between specified parties includes a request for all Documents Concerning (i) any actual or contemplated Agreement among or between such parties, whether or not such Agreement included any other Person; (ii) the drafting or negotiation of any such Agreement; (iii) any actual or contemplated demand, request or application for any such Agreement, and any response thereto; and (iv) any actual or contemplated objection or refusal to enter into any such Agreement, and any response thereto.

13.     The term "Reviewed" means examined, assessed, considered, analyzed or evaluated.

14.     The terms "you" and "your" means the Person or entity to whom this subpoena was issued.

15.     To the extent necessary to bring within the scope of this subpoena any information or Documents that might otherwise be construed to be outside its scope:

        a.     the word "or" means "and/or";
        b.     the word "and" means "and/or";
        c.     the functional words "each," "every" "any" and "all" shall each be deemed to include each of the other functional words;
        d.     the masculine gender includes the female gender and the female gender includes the masculine gender; and
        e.     the singular includes the plural and the plural includes the singular.

**B.     Instructions**

1.     Unless otherwise specified, the subpoena calls for production of the original Documents and all copies and drafts of same.  Documents responsive to this subpoena may be in electronic or paper form.  Electronic Documents such as

email should be produced in accordance with the attached Document entitled SEC Data Delivery Standards.  All electronic Documents responsive to the Document subpoena, including all metadata, should also be produced in their native software format.

2.      For Documents in paper format, you may send the originals, or, if you prefer, you may send copies of the originals.  The Commission cannot reimburse you for the copying costs.  If you are sending copies, the staff requests that you scan (rather than photocopy) hard copy Documents and produce them in an electronic format consistent with the SEC Data Delivery Standards.  Alternatively, you may send us photocopies of the Documents in paper format.  If you choose to send copies, you <u>must</u> secure and retain the originals and store them in a safe place.  The staff may later request or require that you produce the originals.

3.      Whether you scan or photocopy Documents, the copies must be identical to the originals, including even faint marks or print.  Also, please note that if copies of a Document differ in any way, they are considered separate Documents and you must send each one.  For example, if you have two copies of the same letter, but only one of them has handwritten notes on it, you must send both the clean copy and the one with notes.

4.      In producing a photocopy of an original Document that contains post-it(s), notation flag(s), or other removable markings or attachments which may conceal all or a portion of the markings contained in the original Document, photocopies of the original Document both with and without the relevant post-it(s), notation flag(s), or removable markings or attachments should be produced.

5.      Documents should be produced as they are kept in the ordinary course of business or be organized and labeled to correspond with the categories in this request.  In that regard, Documents should be produced in a unitized manner, i.e.., delineated with staples or paper clips to identify the Document boundaries.

6.      Documents should be labeled with sequential numbering (bates-stamped).

7.      You must produce all Documents created during, or Concerning, the period January 1, 2014 to the present, unless otherwise specified.

8.      The scope of any given request should not be limited or narrowed based on the fact that it calls for Documents that are responsive to another request.

9.      You are not required to produce exact duplicates of any Documents that have been previously produced to the Securities and Exchange Commission staff **in connection with this matter**.  If you are not producing Documents based upon a prior production, please identify the responsive Documents that were previously produced.

10.     For any Documents that qualify as records of regularly conducted activities under Federal Rule of Evidence 902(11), please complete a business records

certification (a sample of which is enclosed) and return it with the Document production.

11.     This subpoena covers all Documents in or subject to your possession, custody or control, including all Documents that are not in your immediate possession but that you have the ability to obtain, that are responsive, in whole or in part, to any of the individual requests set forth below.  If, for any reason – including a claim of attorney-client privilege – you do not produce something called for by the request, you should submit a list of what you are not producing.  The list should be produced as an Excel file and describe each item separately, noting:

    a.     its author(s);
    b.     its date;
    c.     its subject matter;
    d.     the name of the Person who has the item now, or the last Person known to have it;
    e.     the names of everyone who ever had the item or a copy of it, and the names of everyone who was told the item's contents;
    f.     the basis upon which you are not producing the responsive Document;
    g.     the specific request in the subpoena to which the Document relates;
    h.     the attorney(s) and the client(s) involved; and
    i.     in the case of the work product doctrine, the litigation for which the Document was prepared in anticipation.

12.     If Documents responsive to this subpoena no longer exist because they have been lost, discarded, or otherwise destroyed, you should identify such Documents and give the date on which they were lost, discarded or destroyed.

## C.     **Documents to be Produced**

1.     All Financial Account statements for accounts held in or for the benefit of SBA. This includes any jointly-held accounts;

2.     All Communications with any Investors or potential Investors Concerning SBA;

3.     All Communications Concerning any Investors;

4.     All Communications with Matson or any Finder;

5.     All Agreements with any Investors including, but not limited to, investment, subscription, and promissory note agreements;

6.     All Documents Concerning or evidencing any payments to Investors, Matson, or any Finder by SBA; and

7.     All Agreements between Matson or any Finder and SBA.

# SECURITIES AND EXCHANGE COMMISSION
## Washington, D.C. 20549

## Supplemental Information for Persons Requested to Supply
## Information Voluntarily or Directed to Supply Information
## Pursuant to a Commission Subpoena

### A.  False Statements and Documents

Section 1001 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> [W]hoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully--
> (1)  falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
> (2)  makes any materially false, fictitious, or fraudulent statement or representation; or
> (3)  makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry.

Section 1519 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States . . ., or in relation to or contemplation of any such matter.

### B.  Testimony

If your testimony is taken, you should be aware of the following:

1.  *Record*.  Your testimony will be transcribed by a reporter. If you desire to go off the record, please indicate this to the Commission employee taking your testimony, who will determine whether to grant your request. The reporter will not go off the record at your, or your counsel's, direction.

2.  *Counsel*.  You have the right to be accompanied, represented and advised by counsel of your choice. Your counsel may advise you before, during and after your testimony; question you briefly at the conclusion of your testimony to clarify any of the answers you give during testimony; and make summary notes during your testimony solely for your use. If you are accompanied by counsel, you may consult privately.

If you are not accompanied by counsel, please advise the Commission employee taking your testimony if, during the testimony, you desire to be accompanied, represented and advised by counsel. Your testimony will be adjourned once to afford you the opportunity to arrange to be so accompanied, represented or advised.

You may be represented by counsel who also represents other persons involved in the Commission's investigation. This multiple representation, however, presents a potential conflict of interest if one client's interests are or may be adverse to another's. If you are represented by counsel who also represents other persons involved in the investigation, the Commission will assume that you and counsel have discussed and resolved all issues concerning possible conflicts of interest. The choice of counsel, and the responsibility for that choice, is yours.

3.  *Transcript Availability*.  Rule 6 of the Commission's Rules Relating to Investigations, 17 CFR 203.6, states:

> A person who has submitted documentary evidence or testimony in a formal investigative proceeding shall be entitled, upon written request, to procure a copy of his documentary evidence or a transcript of his testimony on payment of the appropriate fees: *Provided, however*, That in a nonpublic formal investigative proceeding the Commission may for good cause deny such request. In any event, any witness, upon proper identification, shall have the right to inspect the official transcript of the witness' own testimony.

If you wish to purchase a copy of the transcript of your testimony, the reporter will provide you with a copy of the appropriate form. Persons requested to supply information voluntarily will be allowed the rights provided by this rule.

4.  *Perjury*.  Section 1621 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> Whoever--

> (1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare,

SEC 1662 (09-21)

> depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or

> (2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true.

5.   *Fifth Amendment and Voluntary Testimony*. Information you give may be used against you in any federal, state, local or foreign administrative, civil or criminal proceeding brought by the Commission or any other agency.

You may refuse, in accordance with the rights guaranteed to you by the Fifth Amendment to the Constitution of the United States, to give any information that may tend to incriminate you.

If your testimony is not pursuant to subpoena, your appearance to testify is voluntary, you need not answer any question, and you may leave whenever you wish. Your cooperation is, however, appreciated.

6.   *Formal Order Availability*. If the Commission has issued a formal order of investigation, it will be shown to you during your testimony, at your request. If you desire a copy of the formal order, please make your request in writing.

## C.  Submissions and Settlements

Rule 5(c) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(c), states:

> Persons who become involved in . . . investigations may, on their own initiative, submit a written statement to the Commission setting forth their interests and position in regard to the subject matter of the investigation. Upon request, the staff, in its discretion, may advise such persons of the general nature of the investigation, including the indicated violations as they pertain to them, and the amount of time that may be available for preparing and submitting a statement prior to the presentation of a staff recommendation to the Commission for the commencement of an administrative or injunction proceeding. Submissions by interested persons should be forwarded to the appropriate Division Director or Regional Director with a copy to the staff members conducting the investigation and should be clearly referenced to the specific investigation to which they relate. In the event a recommendation for the commencement of an enforcement proceeding is presented by the staff, any submissions by interested persons will be forwarded to the Commission in conjunction with the staff memorandum.

The staff of the Commission routinely seeks to introduce submissions made pursuant to Rule 5(c) as evidence in Commission enforcement proceedings, when the staff deems appropriate.

Rule 5(f) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(f), states:

> In the course of the Commission's investigations, civil lawsuits, and administrative proceedings, the staff, with appropriate authorization, may discuss with persons involved the disposition of such matters by consent, by settlement, or in some other manner. It is the policy of the Commission, however, that the disposition of any such matter may not, expressly or impliedly, extend to any criminal charges that have been, or may be, brought against any such person or any recommendation with respect thereto. Accordingly, any person involved in an enforcement matter before the Commission who consents, or agrees to consent, to any judgment or order does so solely for the purpose of resolving the claims against him in that investigative, civil, or administrative matter and not for the purpose of resolving any criminal charges that have been, or might be, brought against him. This policy reflects the fact that neither the Commission nor its staff has the authority or responsibility for instituting, conducting, settling, or otherwise disposing of criminal proceedings. That authority and responsibility are vested in the Attorney General and representatives of the Department of Justice.

## D.  Freedom of Information Act

The Freedom of Information Act, 5 U.S.C. 552 (the "FOIA"), generally provides for disclosure of information to the public. Rule 83 of the Commission's Rules on Information and Requests, 17 CFR 200.83, provides a procedure by which a person can make a written request that information submitted to the Commission not be disclosed under the FOIA. That rule states that no determination as to the validity of such a request will be made until a request for disclosure of the information under the FOIA is received. Accordingly, no response to a request that information not be disclosed under the FOIA is necessary or will be given until a request for disclosure under the FOIA is received. If you desire an acknowledgment of receipt of your written request that information not be disclosed under the FOIA, please provide a duplicate request, together with a stamped, self-addressed envelope.

**E. Authority for Solicitation of Information**

*Persons Directed to Supply Information Pursuant to Subpoena*. The authority for requiring production of information is set forth in the subpoena. Disclosure of the information to the Commission is mandatory, subject to the valid assertion of any legal right or privilege you might have.

*Persons Requested to Supply Information Voluntarily*. One or more of the following provisions authorizes the Commission to solicit the information requested: Sections 19 and/or 20 of the Securities Act of 1933; Section 21 of the Securities Exchange Act of 1934; Section 321 of the Trust Indenture Act of 1939; Section 42 of the Investment Company Act of 1940; Section 209 of the Investment Advisers Act of 1940; and 17 CFR 202.5. Disclosure of the requested information to the Commission is voluntary on your part.

**F. Effect of Not Supplying Information**

*Persons Directed to Supply Information Pursuant to Subpoena*. If you fail to comply with the subpoena, the Commission may seek a court order requiring you to do so. If such an order is obtained and you thereafter fail to supply the information, you may be subject to civil and/or criminal sanctions for contempt of court. In addition, Section 21(c) of the Securities Exchange Act of 1934, Section 42(c) of the Investment Company Act of 1940, and Section 209(c) of the Investment Advisers Act of 1940 provide that fines and terms of imprisonment may be imposed upon any person who shall, without just cause, fail or refuse to attend and testify or to answer any lawful inquiry, or to produce books, papers, correspondence, memoranda, and other records in compliance with the subpoena.

*Persons Requested to Supply Information Voluntarily*. There are no direct sanctions and thus no direct effects for failing to provide all or any part of the requested information.

**G. Principal Uses of Information**

The Commission's principal purpose in soliciting the information is to gather facts in order to determine whether any person has violated, is violating, or is about to violate any provision of the federal securities laws or rules for which the Commission has enforcement authority, such as rules of securities exchanges and the rules of the Municipal Securities Rulemaking Board. Facts developed may, however, constitute violations of other laws or rules. Information provided may be used in Commission and other agency enforcement proceedings. Unless the Commission or its staff explicitly agrees to the contrary in writing, you should not assume that the Commission or its staff acquiesces in, accedes to, or concurs or agrees with, any position, condition, request, reservation of right, understanding, or any other statement that purports, or may be deemed, to be or to reflect a limitation upon the Commission's receipt, use, disposition, transfer, or retention, in accordance with applicable law, of information provided.

**H. Routine Uses of Information**

The Commission often makes its files available to other governmental agencies, particularly United States Attorneys and state prosecutors. There is a likelihood that information supplied by you will be made available to such agencies where appropriate. Whether or not the Commission makes its files available to other governmental agencies is, in general, a confidential matter between the Commission and such other governmental agencies.

Set forth below is a list of the routine uses which may be made of the information furnished.

1. To appropriate agencies, entities, and persons when (1) the SEC suspects or has confirmed that there has been a breach of the system of records, (2) the SEC has determined that as a result of the suspected or confirmed breach there is a risk of harm to individuals, the SEC (including its information systems, programs, and operations), the Federal Government, or national security; and (3) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the SEC's efforts to respond to the suspected or confirmed breach or to prevent, minimize, or remedy such harm.

2. To other Federal, state, local, or foreign law enforcement agencies; securities self-regulatory organizations; and foreign financial regulatory authorities to assist in or coordinate regulatory or law enforcement activities with the SEC.

3. To national securities exchanges and national securities associations that are registered with the SEC, the Municipal Securities Rulemaking Board; the Securities Investor Protection Corporation; the Public Company Accounting Oversight Board; the Federal banking authorities, including, but not limited to, the Board of Governors of the Federal Reserve System, the Comptroller of the Currency, and the Federal Deposit Insurance Corporation; state securities regulatory agencies or organizations; or regulatory authorities of a foreign government in connection with their regulatory or enforcement responsibilities.

4. By SEC personnel for purposes of investigating possible violations of, or to conduct investigations authorized by, the Federal securities laws.

5. In any proceeding where the Federal securities laws are in issue or in which the Commission, or past or present members of its staff, is a party or otherwise involved in an official capacity.

6. In connection with proceedings by the Commission pursuant to Rule 102(e) of its Rules of Practice, 17 CFR 201.102(e).

7. To a bar association, state accountancy board, or other Federal, state, local, or foreign licensing or oversight authority; or professional association or self-regulatory authority to the extent that it performs similar functions (including the Public Company Accounting Oversight Board) for investigations or possible disciplinary action.

8. To a Federal, state, local, tribal, foreign, or international agency, if necessary to obtain information relevant to the SEC's decision concerning the hiring or retention of an employee; the issuance of a security clearance; the letting of a contract; or the issuance of a license, grant, or other benefit.

9. To a Federal, state, local, tribal, foreign, or international agency in response to its request for information concerning the hiring or retention of an employee; the issuance of a security clearance; the reporting of an investigation of an employee; the letting of a contract; or the issuance of a license, grant, or other benefit by the requesting agency, to the extent that the information is relevant and necessary to the requesting agency's decision on the matter.

10. To produce summary descriptive statistics and analytical studies, as a data source for management information, in support of the function for which the records are collected and maintained or for related personnel management functions or manpower studies; may also be used to respond to general requests for statistical information (without personal identification of individuals) under the Freedom of Information Act.

11. To any trustee, receiver, master, special counsel, or other individual or entity that is appointed by a court of competent jurisdiction, or as a result of an agreement between the parties in connection with litigation or administrative proceedings involving allegations of violations of the Federal securities laws (as defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)) or pursuant to the Commission's Rules of Practice, 17 CFR 201.100 through 900 or the Commission's Rules of Fair Fund and Disgorgement Plans, 17 CFR 201.1100 through 1106, or otherwise, where such trustee, receiver, master, special counsel, or other individual or entity is specifically designated to perform particular functions with respect to, or as a result of, the pending action or proceeding or in connection with the administration and enforcement by the Commission of the Federal securities laws or the Commission's Rules of Practice or the Rules of Fair Fund and Disgorgement Plans.

12. To any persons during the course of any inquiry, examination, or investigation conducted by the SEC's staff, or in connection with civil litigation, if the staff has reason to believe that the person to whom the record is disclosed may have further information about the matters related therein, and those matters appeared to be relevant at the time to the subject matter of the inquiry.

13. To interns, grantees, experts, contractors, and others who have been engaged by the Commission to assist in the performance of a service related to this system of records and who need access to the records for the purpose of assisting the Commission in the efficient administration of its programs, including by performing clerical, stenographic, or data analysis functions, or by reproduction of records by electronic or other means. Recipients of these records shall be required to comply with the requirements of the Privacy Act of 1974, as amended, 5 U.S.C. 552a.

14. In reports published by the Commission pursuant to authority granted in the Federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), which authority shall include, but not be limited to, section 21(a) of the Securities Exchange Act of 1934, 15 U.S.C. 78u(a)).

15. To members of advisory committees that are created by the Commission or by Congress to render advice and recommendations to the Commission or to Congress, to be used solely in connection with their official designated functions.

16. To any person who is or has agreed to be subject to the Commission's Rules of Conduct, 17 CFR 200.735-1 through 200.735-18, and who assists in the investigation by the Commission of possible violations of the Federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), in the preparation or conduct of enforcement actions brought by the Commission for such violations, or otherwise in connection with the Commission's enforcement or regulatory functions under the Federal securities laws.

17. To a Congressional office from the record of an individual in response to an inquiry from the Congressional office made at the request of that individual.

18. To members of Congress, the press, and the public in response to inquiries relating to particular Registrants and their activities, and other matters under the Commission's jurisdiction.

19. To prepare and publish information relating to violations of the Federal securities laws as provided in 15 U.S.C. 78c(a)(47)), as amended.

20. To respond to subpoenas in any litigation or other proceeding.

21. To a trustee in bankruptcy.

22. To any governmental agency, governmental or private collection agent, consumer reporting agency or commercial reporting agency, governmental or private employer of a debtor, or any other person, for collection,

including collection by administrative offset, Federal salary offset, tax refund offset, or administrative wage garnishment, of amounts owed as a result of Commission civil or administrative proceedings.

23. To another Federal agency or Federal entity, when the SEC determines that information from this system of records is reasonably necessary to assist the recipient agency or entity in (1) responding to a suspected or confirmed breach or (2) preventing, minimizing, or remedying the risk of harm to individuals, the recipient agency or entity (including its information systems, programs, and operations), the Federal Government, or national security, resulting from a suspected or confirmed breach.

* * * * *

*Small Business Owners*: The SEC always welcomes comments on how it can better assist small businesses. If you would like more information, or have questions or comments about federal securities regulations as they affect small businesses, please contact the Office of Small Business Policy, in the SEC's Division of Corporation Finance, at 202-551-3460. If you would prefer to comment to someone outside of the SEC, you can contact the Small Business Regulatory Enforcement Ombudsman at http://www.sba.gov/ombudsman or toll free at 888-REG-FAIR. The Ombudsman's office receives comments from small businesses and annually evaluates federal agency enforcement activities for their responsiveness to the special needs of small business.



# U.S. Securities and Exchange Commission

## Data Delivery Standards

This document describes the technical requirements for paper and electronic document productions to the U.S. Securities and Exchange Commission (SEC).   **_Any questions or proposed file formats other than those described below must be discussed with the legal and technical staff of the SEC Division of Enforcement prior to submission._**

General Instructions...................................................................................................................................... 1

Delivery Formats ........................................................................................................................................... 2

   I.  Imaged Productions........................................................................................................................3

     1.  Images.............................................................................................................................. 3

     2.  Image Cross-Reference File ............................................................................................ 3

     3.  Data File .......................................................................................................................... 3

     4.  Text ................................................................................................................................. 3

     5.  Linked Native Files......................................................................................................... 3

   II.  Native File Productions without Load Files ................................................................................. 4

   III.  Adobe PDF File Productions .................................................................................................... 4

   IV.  Audio Files................................................................................................................................ 4

   V.  Video Files ................................................................................................................................. 4

   VI.  Electronic Trade and Bank Records .......................................................................................... 4

   VII.  Electronic Phone Records ....................................................................................................... 4

   VIII.  Audit Workpapers ................................................................................................................. 5

   IX.  Mobile Device Data .................................................................................................................. 5

**General Instructions**

<span style="color:red">Due to COVID-19 restrictions the current, temporary mailing address for all <u>physical productions</u> sent to the SEC is:
**ENF-CPU (U.S. Securities & Exchange Commission), 14420 Albemarle Point Place, Suite 102, Chantilly, VA 20151-1750**</span>

Electronic files must be produced in their native format, i.e. the format in which they are ordinarily used and maintained during the normal course of business.  For example, an MS Excel file must be produced as an MS Excel file rather than an image of a spreadsheet.  _**(Note:  An Adobe PDF file is <u>not</u> considered a native file unless the document was initially created as a PDF.)**_

In the event produced files require the use of proprietary software not commonly found in the workplace, the SEC will explore other format options with the producing party.

The proposed use of file de-duplication methodologies or _computer-assisted review_ or _technology-assisted review_ (TAR) during the processing of documents must be discussed with and approved by the legal and technical staff of the Division of Enforcement (ENF).  If your production will be de-duplicated it is vital that you 1) preserve any unique metadata associated with the duplicate files, for example, custodian name and file location and, 2) make that unique metadata part of your production to the SEC.

Rev 8/2021

General requirements for **ALL** document productions are:

1.  A cover letter must be included with each production and should include the following information:
    a.  Case number, case name and requesting SEC staff member name
    b.  A list of each piece of media included in the production with its unique production volume number
    c.  A list of custodians, identifying the Bates range for each custodian
    d.  The time zone in which the emails were standardized during conversion
    e.  Whether the production contains native files produced from Mac operating system environments
2.  Data can be produced on CD, DVD, thumb drive, etc., using the media requiring the least number of deliverables and labeled with the following:
    a.  Case number
    b.  Production date
    c.  Producing party
    d.  Bates range (if applicable)
3.  All submissions must be organized by **custodian** unless otherwise instructed.
4.  All document family groups, i.e. email attachments, embedded files, etc., should be produced together and children files should follow parent files sequentially in the Bates numbering.
5.  All load-ready collections should include only one data load file and one image pointer file.
6.  All load-ready text must be produced as separate document-level text files.
7.  All load-ready collections should account for custodians in the custodian field.
8.  All load-ready collections must provide the extracted contents of any container files to ensure all relevant files are produced as separate records.
9.  Audio files should be separated from data files if both are included in the production.
10. Only alphanumeric characters and the underscore character are permitted in file names and folder names. Special characters are not permitted.
11. All electronic productions submitted on media must be produced using industry standard self-extracting encryption software.
12. The SEC uses 7zip to access compressed files. Note that the SEC **cannot** accept files that use AES-256 Jpeg or pkAES-256-Cert Deflate compression methods, even if the files are created with 7zip. If you have any questions or need additional information, please reach out to the requesting SEC staff member.
13. Electronic productions of 20 GB or less are strongly encouraged to be submitted via Secure File Transfer. All Secure File Transfers should be sent to the SEC Centralized Production Unit (ENF-CPU@sec.gov) with a CC to the requesting SEC staff member. If you do not have your own Secure File Transfer application, you may reach out to the requesting SEC staff member for a link to the SEC system in order to upload your production. If using the SEC Secure File Transfer system, you will NOT be able to CC individuals outside the SEC on your upload transmission. Note that the SEC **cannot** accept productions made using file sharing sites such as Google Drive, Microsoft Office 365 or Dropbox.
14. Productions containing BSA or SAR material must be delivered on encrypted physical media. The SEC **cannot** accept electronic transmission of BSA or SAR material. Any BSA or SAR material produced should be segregated and appropriately marked as BSA or SAR material, or should be produced separately from other case related material.
15. Passwords for electronic documents, files, compressed archives and encrypted media must be provided separately either via email or in a cover letter apart from the media.
16. All electronic productions should be produced free of computer viruses.
17. Before producing forensically collected images, parties should reach out to the requesting SEC staff member in order to discuss appropriate handling.
18. Before producing unique data sets (large sets of relational data, website reconstruction, chat room data, etc.), parties should reach out to the requesting SEC staff member in order to discuss an appropriate production format.
19. Additional technical descriptions can be found in the addendum to this document.

**\*Please note that productions sent to the SEC via United States Postal Service are subject to Mail Irradiation, and as a result electronic productions may be damaged.\***

**Delivery Formats**

I.  **Imaged Productions**
    The SEC prefers that all scanned paper and electronic file collections be produced in a structured format including industry standard load files, Bates numbered image files, native files and searchable document-level text files.

1.  **Images**
    a.  Black and white images must be 300 DPI Group IV single-page TIFF files
    b.  Color images must be produced in JPEG format
    c.  File names cannot contain embedded spaces or special characters (including the comma)
    d.  Folder names cannot contain embedded spaces or special characters (including the comma)
    e.  All image files must have a unique file name, i.e. Bates number
    f.  Images must be endorsed with sequential Bates numbers in the lower right corner of each image
    g.  The number of image files per folder should not exceed 2,000 files
    h.  Excel spreadsheets should have a placeholder image named by the Bates number of the file
    i.  AUTOCAD/photograph files should be produced as a single page JPEG file

2.  **Image Cross-Reference File**
    The image cross-reference file (.LOG or .OPT) links the images to the database records. It should be a comma-delimited file consisting of seven fields per line with a line in the cross-reference file for every image in the database with the following format:

    *ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount*

3.  **Data File**
    The data file (.DAT) contains all of the fielded information that will be loaded into the database.

    a.  The first line of the .DAT file must be a header row identifying the field names
    b.  The .DAT file must use the following *Concordance*® default delimiters:
        Comma ¶ ASCII character (020)
        Quote þ ASCII character (254)
    c.  If the .DAT file is produced in Unicode format it must contain the byte order marker
    d.  Date fields should be provided in the format: mm/dd/yyyy
    e.  Date and time fields must be two separate fields
    f.  The time zone must be included in all time fields
    g.  If the production includes imaged emails and attachments, the attachment fields must be included to preserve the parent/child relationship between an email and its attachments
    h.  An OCRPATH field must be included to provide the file path and name of the extracted text file on the produced storage media.  The text file must be named after the FIRSTBATES.  Do not include the text in the .DAT file.
    i.  For productions with native files, a LINK field must be included to provide the file path and name of the native file on the produced storage media. The native file must be named after the FIRSTBATES.
    j.  BEGATTACH and ENDATTACH fields must be two separate fields
    k.  A complete list of metadata fields is available in **Addendum A** to this document

4.  **Text**
    Text must be produced as separate document-level text files, not as fields within the .DAT file. The text files must be named per the FIRSTBATES/Image Key and the full path to the text file (OCRPATH) should be included in the .DAT file. Text files may be in either ANSI or Unicode format, however, ALL text files must be in the same format within the same production. Note that productions containing text with foreign characters must produce text files in Unicode format to preserve the foreign characters. Text files must be in a separate folder, and the number of text files per folder should not exceed 2,000 files. There should be no special characters (including commas) in the folder names. For redacted documents, provide the full text for the redacted version.

5.  **Linked Native Files**
    Copies of original email and native file documents/attachments must be included for all electronic productions.
    a.  Native file documents must be named per the FIRSTBATES number
    b.  The full path of the native file must be provided in the .DAT file for the LINK field
    c.  The number of native files per folder should not exceed 2,000 files

**II.   Native File Production without Load Files**

With prior approval, native files may be produced without load files. The native files must be produced as they are maintained in the normal course of business and organized by custodian-named file folders. When approved, native email files (.PST or .MBOX) may be produced. A separate folder should be provided for each custodian.

**III.   Adobe PDF File Production**

With prior approval, Adobe PDF files may be produced in native file format.

1. All PDFs must be unitized at the document level, i.e., each PDF must represent a discrete document.
2. PDF files should be produced in separate folders named by the custodian. The folders should not contain any special characters (including commas).
3. All PDF files must contain embedded text that includes all discernible words within the document, not selected text or image only. This requires all layers of the PDF to be flattened first.
4. If PDF files are Bates endorsed, the PDF files must be named by the Bates range.

**IV.   Audio Files**

Audio files from telephone recording systems must be produced in a format that is playable using Microsoft Windows Media Player™. Additionally, the call information (metadata) related to each audio recording MUST be provided. The metadata file must be produced in a delimited text format. Field names must be included in the first row of the text file. The metadata must include, at a minimum, the following fields:

1) Caller Name:            Caller's name or account/identification number
2) Originating Number:    Caller's phone number
3) Called Party Name:     Called party's name
4) Terminating Number:    Called party's phone number
5) Date:                  Date of call
6) Time:                  Time of call
7) Filename:              Filename of audio file

**V.   Video Files**

Video files must be produced in a format that is playable using Microsoft Windows Media Player™.

**VI.   Electronic Trade and Bank Records**

When producing electronic trade records, bank records, or financial statements, provide the files in one of the following formats:

1. MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

2. Delimited text file with header information detailing the field structure. The preferred delimiter is a vertical bar "|". If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

**VII.   Electronic Phone Records**

When producing electronic phone records, provide the files in the following format:

1. MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details (i.e. dates in a date format, numbers in an appropriate numerical format, and numbers with leading zeroes as text).
   a. The metadata that must be included is outlined in **Addendum B** of this document. Each field of data must be loaded into a separate column.  For example, Date and Start_Time must be produced in separate columns and not combined into a single column containing both pieces of information.  Any fields of data that are provided in addition to those listed in **Addendum B** must also be loaded into separate columns.

## VIII. Audit Workpapers

The SEC prefers for workpapers to be produced in two formats: (1) With Bates numbers in accordance with the SEC Data Delivery Standards; and (2) in native format or if proprietary software was used, on a standalone laptop with the appropriate software loaded so that the workpapers may be reviewed as they would have been maintained in the ordinary course of business. The laptop must have printing capability, and when possible, the laptop should be configured to enable a Virtual Machine (VM) environment.

## IX. Mobile Device Data

Before producing mobile device data (including but not limited to text messages) parties should reach out to the requesting SEC staff member in order to discuss the appropriate production format.

U.S. Securities and Exchange Commission
Data Delivery Standards

## ADDENDUM A

The metadata of electronic document collections should be extracted and provided in a .DAT file using the field definition and formatting described below:

| Field Name | Sample Data | Description |
|---|---|---|
| FIRSTBATES | EDC0000001 | First Bates number of native file document/email |
| LASTBATES | EDC0000001 | Last Bates number of native file document/email **The LASTBATES field should be populated for single page documents/emails. |
| ATTACHRANGE | EDC0000001 - EDC0000015 | Bates number of the first page of the parent document to the Bates number of the last page of the last attachment "child" document |
| BEGATTACH | EDC0000001 | First Bates number of attachment range |
| ENDATTACH | EDC0000015 | Last Bates number of attachment range |
| PARENT_BATES | EDC0000001 | First Bates number of parent document/Email **This PARENT_BATES field should be populated in each record representing an attachment "child" document |
| CHILD_BATES | EDC0000002; EDC0000014 | First Bates number of "child" attachment(s); can be more than one Bates number listed depending on the number of attachments **The CHILD_BATES field should be populated in each record representing a "parent" document |
| CUSTODIAN | Smith, John | Email: Mailbox where the email resided Native: Name of the individual or department from whose files the document originated |
| FROM | John Smith | Email: Sender Native: Author(s) of document **semi-colon should be used to separate multiple entries |
| TO | Coffman, Janice; LeeW [mailto:LeeW@MSN.com] | Recipient(s) **semi-colon should be used to separate multiple entries |
| CC | Frank Thompson [mailto: frank_Thompson@cdt.com] | Carbon copy recipient(s) **semi-colon should be used to separate multiple entries |
| BCC | John Cain | Blind carbon copy recipient(s) **semi-colon should be used to separate multiple entries |
| SUBJECT | Board Meeting Minutes | Email: Subject line of the email Native: Title of document (if available) |
| FILE_NAME | BoardMeetingMinutes.docx | Native: Name of the original native file, including extension |
| DATE_SENT | 10/12/2010 | Email: Date the email was sent Native: (empty) |
| TIME_SENT/TIME _ZONE | 07:05 PM GMT | Email: Time the email was sent/ Time zone in which the emails were standardized during conversion. Native: (empty) **This data must be a separate field and cannot be combined with the DATE_SENT field |
| TIME_ZONE | GMT | The time zone in which the emails were standardized during conversion. Email: Time zone Native: (empty) |

6

| | | |
|---|---|---|
| LINK | D:\001\ EDC0000001.msg | Hyperlink to the email or native file document **The linked file must be named per the FIRSTBATES number |
| MIME_TYPE | application/msword | The content type of an email or native file document as identified/extracted from the header |
| FILE_EXTEN | MSG | The file type extension representing the email or native file document; will vary depending on the format |
| AUTHOR | John Smith | Email: (empty) Native: Author of the document |
| LAST_AUTHOR | Jane Doe | Email: (empty) Native: Last Author of the document |
| DATE_CREATED | 10/10/2010 | Email: (empty) Native: Date the document was created |
| TIME_CREATED/TIME_ZONE | 10:25 AM GMT | Email: (empty) Native: Time the document was created including time zone **This data must be a separate field and cannot be |
| DATE_MOD | 10/12/2010 | Email: (empty) Native: Date the document was last modified |
| TIME_MOD/TIME_ZONE | 07:00 PM GMT | Email: (empty) Native: Time the document was last modified including the time zone **This data must be a separate field and cannot be |
| DATE_ACCESSD | 10/12/2010 | Email: (empty) Native: Date the document was last accessed |
| TIME_ACCESSD/TIME_ZONE | 07:00 PM GMT | Email: (empty) Native: Time the document was last accessed including the time zone **This data must be a separate field and cannot be |
| PRINTED_DATE | 10/12/2010 | Email: (empty) Native: Date the document was last printed |
| FILE_SIZE | 5,952 | Size of native file document/email in KB |
| PGCOUNT | 1 | Number of pages in native file document/email |
| PATH | J:\Shared\SmithJ\October Agenda.doc | Email: (empty) Native: Path where native file document was stored including original file name. |
| INTFILEPATH | Personal Folders\Deleted Items\Board Meeting Minutes.msg | Email: original location of email including original file name. Native: (empty) |
| INTMSGID | <000805c2c71b$75977050$cb 8306d1@MSN> | Email: Unique Message ID Native: (empty) |

7

| | | |
|---|---|---|
| HEADER | Return-Path: <example_from@dc.edu> X-SpamCatcher-Score:1[X] Received:from[136.167.40.119] (HELO dc.edu) by fe3.dc.edu (CommuniGate Pro SMTP4.1.8) with ESMTP-TLS id 61258719 for example_to@mail.dc.edu; Mon, 23 Aug 2004 11:40:10 -0400 Message-ID: <4129F3CA.2020509@dc.edu> Date: Mon, 23 Aug 2005 11:40:36 -400 From: Taylor Evans <example_from@dc.edu> User-Agent:Mozilla/5.0 (Windows;U; Windows NT 5.1; en-US;rv:1.0.1) Gecko/20020823 Netscape/7.0 X-Accept-Language:en-us,en MIME-Version:1.0 To: Jon Smith <example_to@mail.dc.edu> Subject:Business Development Meeting Content-Type: text/plain;charset=us-ascii; format=flowed Content-Transfer-Encoding:7bit | Email: The email header information Native: (empty) |
| MD5HASH | d131dd02c5e6eec4693d9a069 8aff95c 2fcab58712467eab4004583eb 8fb7f89 | MD5 Hash value of the document. |
| OCRPATH | TEXT/001/EDC0000001.txt | Path to extracted text of the native file |

Sample Image Cross-Reference File:

```
IMG0000001,,E:\001\IMG0000001.TIF,Y,,,
IMG0000002,,E:\001\IMG0000002.TIF,,,,
IMG0000003,,E:\001\IMG0000003.TIF,,,,
IMG0000004,,E:\001\IMG0000004.TIF,Y,,,
IMG0000005,,E:\001\IMG0000005.TIF,Y,,,
IMG0000006,,E:\001\IMG0000006.TIF,,,,
```

Rev 8/2021

U.S. Securities and Exchange Commission
Data Delivery Standards

## **ADDENDUM B**

For Electronic Phone Records, include the following fields in separate columns:

For Calls:

1) Account Number
2) Connection Date – Date the call was received or made
3) Connection Time – Time call was received or made
4) Seizure Time – Time it took for the call to be placed in seconds
5) Originating Number – Phone that placed the call
6) Terminating Number – Phone that received the call
7) Elapsed Time – The length of time the call lasted, preferably in seconds
8) End Time – The time the call ended
9) Number Dialed – Actual number dialed
10) IMEI Originating – Unique id to phone used to make call
11) IMEI Terminating– Unique id to phone used to receive call
12) IMSI Originating – Unique id to phone used to make call
13) IMSI Terminating- Unique id to phone used to receive call
14) Call Codes – Identify call direction or other routing information
15) Time Zone – Time Zone in which the call was received or placed, if applicable


For Text messages:

1) Account Number
2) Connection Date – Date the text was received or made
3) Connection Time – Time text was received or made
4) Originating Number – Who placed the text
5) Terminating Number – Who received the text
6) IMEI Originating – Unique id to phone used to make text
7) IMEI Terminating– Unique id to phone used to receive text
8) IMSI Originating - Unique id to phone used to make text
9) IMSI Terminating- Unique id to phone used to receive text
10) Text Code – Identify text direction, or other text routing information
11) Text Type Code – Type of text message (sent SMS, MMS, or other)
12) Time Zone – Time Zone in which the call was received or placed, if applicable


For Mobile Data Usage:

1) Account Number
2) Connection Date – Date the data was received or made
3) Connection Time – Time data was received or made
4) Originating number – Number that used data
5) IMEI Originating – Unique id of phone that used data
6) IMSI Originating - Unique id of phone that used data
7) Data or Data codes – Identify data direction, or other data routing information
8) Time Zone – Time Zone in which the call was received or placed, if applicable

Rev 8/2021

### DECLARATION OF _____[*Insert Name*] CERTIFYING RECORDS OF REGULARLY CONDUCTED BUSINESS ACTIVITY

I, the undersigned, _____[*insert name*], pursuant to 28 U.S.C. § 1746, declare that:

1.  I am employed by _____ [*insert name of company*] as _____[*insert position*] and by reason of my position am authorized and qualified to make this declaration.

    _____

    _____

    _____[*if possible supply additional information as to how person is qualified to make declaration, e.g., I am custodian of records, I am familiar with the company's recordkeeping practices or systems, etc.]*

2.  I further certify that the documents [*attached hereto or submitted herewith*] [*circle one*] and stamped _____[*insert bates range*] are true copies of records that were:

    > (a) made at or near the time of the occurrence of the matters set forth therein, by, or from information transmitted by, a person with knowledge of those matters;

    > (b) kept in the course of regularly conducted business activity; and

    > (c) made by the regularly conducted business activity as a regular practice.

    I declare under penalty of perjury that the foregoing is true and correct. Executed on _____[*date*].

    _____
    [*Name*]

EXHIBIT D



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
950 East Paces Ferry Road, N.E., Suite 900
Atlanta, GA 30326-1382

ATLANTA
REGIONAL OFFICE

December 21, 2022

**Via UPS**

John Matson
534 23rd Street
Manhattan Beach, CA  90266

Re:     In the Matter of South Bay Acquisitions, LLC (A-04043)

Dear Mr. Matson:

The staff of the Atlanta Regional Office of the United States Securities and Exchange Commission is conducting an investigation in the matter identified above.  The enclosed subpoena has been issued to you as part of this investigation.  The subpoena requires you to provide us documents and give sworn testimony.

Please read the subpoena and this letter carefully.  This letter answers some questions you may have about the subpoena.  You should also read the enclosed SEC Form 1662.  If you do not comply with this subpoena, the SEC may bring an action in Federal Court to enforce this subpoena.  Failure to comply with a court order enforcing this subpoena may result in the court imposing a fine, imprisonment or both.

**Producing Documents**

*What materials do I have to produce?*

The subpoena requires you to provide us the documents described in the attachment to the subpoena.  You must provide these documents by January 13, 2023.  The attachment to the subpoena defines some terms (such as "document") before listing what you must provide.

You should produce each and every document in your possession, custody, or control, including any documents that are not in your immediate possession but that you have the ability to obtain.  All responsive documents shall be produced as they are kept in the usual course of business, and shall be organized and labeled to correspond with the numbered paragraphs in the subpoena attachment.  In that regard, documents should be produced in a unitized manner, *i.e.*, delineated with staples or paper clips to identify the document boundaries.

Documents responsive to this subpoena may be in electronic or paper form.  Electronic documents such as email should be produced in accordance with the attached document entitled SEC Data Delivery Standards (the "Standards").  If you have any questions concerning the production of documents in an electronic format, please contact me as soon as possible but in any event before producing documents.  **All electronic documents responsive to the document subpoena, including all metadata, must also be secured and retained in their native software format and stored in a safe place.**  The staff may later request or require that you produce the native format.

For documents in paper format, you may send the originals, or, if you prefer, you may send copies of the originals.  The Commission cannot reimburse you for the copying costs.  If you are sending copies, the staff requests that you scan (rather than photocopy) hard copy documents and produce them in an electronic format consistent with the Standards.  Alternatively, you may send us photocopies of the documents in paper format.  **If you choose to send copies, you <u>must</u> secure and retain the originals and store them in a safe place.**  The staff may later request or require that you produce the originals.

Whether you scan or photocopy documents, the copies must be identical to the originals, including even faint marks or print.  Also, please note that if copies of a document differ in any way, they are considered separate documents and you must send each one.  For example, if you have two copies of the same letter, but only one of them has handwritten notes on it, you must send both the clean copy and the one with notes.

If you <u>do</u> send us scanned or photocopied documents, please put an identifying notation on each page of each document to indicate that you produced it, and number the pages of all the documents submitted.  (For example, if Jane Doe sends documents to the staff, she may number the pages JD-1, JD-2, JD-3, etc., in a blank corner of the documents.)  Please make sure the notation and number do not conceal any writing or marking on the document.  If you send us originals, please do not add any identifying notations.

In producing a photocopy of an original document that contains post-it(s), notation flag(s), or other removable markings or attachments which may conceal all or a portion of the markings contained in the original document, photocopies of the original document both with and without the relevant post-it(s), notation flag(s), or removable markings or attachments should be produced.

*Do I need to send anything else?*

You should enclose a list briefly describing each item you send.  The list should state to which numbered paragraph(s) in the subpoena attachment each item responds.  A copy of the subpoena should be included with the documents that are produced.

Passwords for documents, files, compressed archives, and encrypted media should be provided separately either via email addressed to [ENF-CPU@sec.gov](mailto:ENF-CPU@sec.gov), or in a separate cover letter mailed separately from the data. **Password correspondence should reference case number, case name and requesting SEC staff member.**

Please include a cover letter stating whether you believe you have met your obligations under the subpoena by searching carefully and thoroughly for everything called for by the

subpoena, and sending it all to us. **Correspondence should reference case number, case name and requesting SEC staff member.**

Please also provide a narrative description describing what you did to identify and collect documents responsive to the subpoena. At a minimum, the narrative should describe:

- who searched for documents;

- who reviewed documents found to determine whether they were responsive;

- what sources were searched (e.g., computer files, CDs, DVDs, thumb drives, flash drives, online storage media, hard copy files, diaries, datebooks, planners, filing cabinets, home office, work office, voice mails, home email, webmail, work email, backup tapes or other media);

- what third parties, if any, were contacted to obtain responsive documents (e.g., phone companies for phone records, brokerage firms for brokerage records); and

- where the original electronic and hardcopy documents are maintained and by whom.

For any documents that qualify as records of regularly conducted activities under Federal Rule of Evidence 902(11), please complete a business records certification (a sample of which is enclosed) and return it with the document production.

*What if I do not send everything described in the attachment to the subpoena?*

The subpoena requires you to send <u>all</u> the materials described in it. If, for any reason – including a claim of attorney-client privilege – you do not produce something called for by the subpoena, you should submit a list of what you are not producing. The list should describe each item separately, noting:

- its author(s);

- its date;

- its subject matter;

- the name of the person who has the item now, or the last person known to have it;

- the names of everyone who ever had the item or a copy of it, and the names of everyone who was told the item's contents;

- the reason you did not produce the item; and

- the specific request in the subpoena to which the document relates.

If you withhold anything on the basis of a claim of attorney-client privilege or attorney work product protection, you should identify the attorney and client involved. If you withhold anything on the basis of the work product doctrine, you should also identify the litigation in anticipation of which the document was prepared.

If documents responsive to this subpoena no longer exist because they have been lost, discarded, or otherwise destroyed, you should identify such documents and give the date on which they were lost, discarded or destroyed.

*Where should I send the materials?*

Please send the materials to:

> ENF-CPU (U.S. Securities & Exchange Commission)
> 14420 Albemarle Point Pl.
> Suite 102
> Chantilly, VA 20151-1750

For smaller electronic productions under 10MB in size, the materials may be emailed to the following email address:  ENF-CPU@sec.gov.

## Testifying

*Where and when do I testify?*

The subpoena requires you to come to the Commission's offices at 950 East Paces Ferry Road NE, Suite 900, Atlanta, Georgia 30326 at 9:30 AM ET on February 10, 2023 to testify under oath in the matter identified on the subpoena.

A background questionnaire is also enclosed.  During your testimony, the staff intends to ask background questions concerning, among other things, your residences, telephone numbers, education and employment.  To expedite that part of the testimony, we request that you complete the enclosed questionnaire on a voluntary basis and provide it to the staff prior to your testimony.

## Other Important Information

*May I have a lawyer help me respond to the subpoena?*

Yes.  You have the right to consult with and be represented by your own lawyer in this matter.  Your lawyer may also advise and accompany you when you testify.  We cannot give you legal advice.

*What will the Commission do with the materials I send and/or the testimony I provide?*

The enclosed SEC Form 1662 explains how we may use the information you provide to the Commission.  This form also has other important information for you.  Please read it carefully.

*Has the Commission determined that anyone has done anything wrong?*

This investigation is a non-public, fact-finding inquiry.  We are trying to determine whether there have been any violations of the federal securities laws.  The investigation and the subpoena do not mean that we have concluded that you or anyone else has violated the law.

Also, the investigation does not mean that we have a negative opinion of any person, entity or security.

*Important Policy Concerning Settlements*

　　　　Please note that, in any matter in which enforcement action is ultimately deemed to be warranted, the Division of Enforcement will not recommend any settlement to the Commission unless the party wishing to settle certifies, under penalty of perjury, that all documents responsive to Commission subpoenas and formal and informal document requests in this matter have been produced.

*I have read this letter, the subpoena, and the SEC Form 1662, but I still have questions.  What should I do?*

　　　　If you have any other questions, you may call me at 404-842-7643.  If you are represented by a lawyer, you should have your lawyer contact me.

　　　　　　　　　　　　　　　Sincerely,

　　　　　　　　　　　　　　　Kyle A. Bradley
　　　　　　　　　　　　　　　Senior Counsel
　　　　　　　　　　　　　　　Division of Enforcement


Enclosures:　　　Subpoena and Attachment
　　　　　　　　　SEC Data Delivery Standards
　　　　　　　　　SEC Form 1662
　　　　　　　　　Background Questionnaire
　　　　　　　　　Business Records Certification



# SUBPOENA

# UNITED STATES OF AMERICA
## SECURITIES AND EXCHANGE COMMISSION

**In the Matter of South Bay Acquisitions, LLC (A-04043)**

To:     John Matson
        534 23rd Street
        Manhattan Beach, CA  90266

---

☒     **YOU MUST PRODUCE** everything specified in the Attachment to this subpoena to officers of the Securities and Exchange Commission, at the place, date and time specified below:

ENF-CPU, U.S. Securities and Exchange Commission, 14420 Albemarle Point Pl, Suite 102, Chantilly, VA 20151-1750, no later than January 13, 2023 at 9:30 a.m.

---

☒     **YOU MUST TESTIFY** before officers of the Securities and Exchange Commission, at the place, date and time specified below:

Securities and Exchange Commission, Atlanta Regional Office, 950 East Paces Ferry Road NE, Suite 900, Atlanta, Georgia  30326, February 10, 2023 at 9:30AM ET.

---

**FEDERAL LAW REQUIRES YOU TO COMPLY WITH THIS SUBPOENA**.
If you do not comply with this subpoena, the SEC may bring an action in Federal Court to enforce this subpoena. Failure to comply with a court order enforcing this subpoena may result in the court imposing a fine, imprisonment, or both.

By: _____          Date:    ___12/21/2022___
    Kyle A. Bradley, Senior Counsel
    U.S. Securities and Exchange Commission
    950 E. Paces Ferry Road NE, Suite 900
    Atlanta, Georgia  30326

I am an officer of the U.S. Securities and Exchange Commission authorized to issue subpoenas in this matter.  The Securities and Exchange Commission has issued a formal order authorizing this investigation under: Section 20(a) of the Securities Act of 1933, Section 21(a) of the Securities Exchange Act of 1934, and Section 209(a) of the Investment Advisers Act of 1940.

---

NOTICE TO WITNESS:      If you claim a witness fee or mileage, submit this subpoena with the claim voucher.

**SUBPOENA ATTACHMENT FOR JOHN MATSON**
**December 21, 2022**
<u>In the Matter of South Bay Acquisitions, LLC (A-04043)</u>

## A.      <u>Definitions</u>

As used in this subpoena, the words and phrases listed below shall have the following meanings:

1.  "SBA" means the entity doing business under the name "South Bay Acquisitions, LLC" including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

2.  "Person" means a natural person, firm, association, organization, partnership, business, trust, corporation, bank or any other private or public entity.

3.  A "Representative" of a Person means any present or former family members, officers, executives, partners, joint-venturers, directors, trustees, employees, consultants, accountants, attorneys, agents, or any other representative acting or purporting to act on behalf of the Person.

4.  "Relevant Investors" means any brokerage or advisory client or any other person or entity that was solicited to or invested in SBA.  This includes any debt or equity investments.

5.  "Bank Account" means any account held at a bank, savings and loan, credit union, or similar financial institution.

6.  "Financial Account" means any account held at a brokerage firm, Bank Account, or similar financial institution.

7.  "Document" shall include, but is not limited to, any written, printed, or typed matter including, but not limited to all drafts and copies bearing notations or marks not found in the original, letters and correspondence, interoffice communications, slips, tickets, records, worksheets, financial records, accounting documents, bookkeeping documents, memoranda, reports, manuals, telephone logs, telegrams, facsimiles, messages of any type, telephone messages, voice mails, tape recordings, notices, instructions, minutes, summaries, notes of meetings, file folder markings, and any other organizational indicia, purchase orders, information recorded by photographic process, including microfilm and microfiche, computer printouts, spreadsheets, and other electronically stored information, including but not limited to writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations that are stored in any medium from which information can be retrieved, obtained, manipulated, or translated.

8.  "Communication" means any correspondence, contact, discussion, e-mail, instant message, or any other kind of oral or written exchange or transmission of

information (in the form of facts, ideas, inquiries, or otherwise) and any response thereto between two or more Persons or entities, including, without limitation, all telephone conversations, face-to-face meetings or conversations, internal or external discussions, or exchanges of a Document or Documents.

9.    "Concerning" means directly or indirectly, in whole or in part, describing, constituting, evidencing, recording, evaluating, substantiating, concerning, referring to, alluding to, in connection with, commenting on, relating to, regarding, discussing, showing, analyzing or reflecting.

10.   An "Agreement" means any actual or contemplated (i) written or oral Agreement; (ii) term or provision of such Agreement; or (iii) amendment of any nature or termination of such Agreement.  A request for any Agreement among or between specified parties includes a request for all Documents Concerning (i) any actual or contemplated Agreement among or between such parties, whether or not such Agreement included any other Person; (ii) the drafting or negotiation of any such Agreement; (iii) any actual or contemplated demand, request or application for any such Agreement, and any response thereto; and (iv) any actual or contemplated objection or refusal to enter into any such Agreement, and any response thereto.

11.   The term "Reviewed" means examined, assessed, considered, analyzed or evaluated.

12.   The terms "you" and "your" means the Person or entity to whom this subpoena was issued.

13.   To the extent necessary to bring within the scope of this subpoena any information or Documents that might otherwise be construed to be outside its scope:

a.    the word "or" means "and/or";
b.    the word "and" means "and/or";
c.    the functional words "each," "every" "any" and "all" shall each be deemed to include each of the other functional words;
d.    the masculine gender includes the female gender and the female gender includes the masculine gender; and
e.    the singular includes the plural and the plural includes the singular.

## B.    **Instructions**

1.    Unless otherwise specified, the subpoena calls for production of the original Documents and all copies and drafts of same.  Documents responsive to this subpoena may be in electronic or paper form.  Electronic Documents such as email should be produced in accordance with the attached Document entitled SEC Data Delivery Standards.  All electronic Documents responsive to the Document subpoena, including all metadata, should also be produced in their native software format.

2

2.      For Documents in paper format, you may send the originals, or, if you prefer, you may send copies of the originals.  The Commission cannot reimburse you for the copying costs.  If you are sending copies, the staff requests that you scan (rather than photocopy) hard copy Documents and produce them in an electronic format consistent with the SEC Data Delivery Standards.  Alternatively, you may send us photocopies of the Documents in paper format.  If you choose to send copies, you <u>must</u> secure and retain the originals and store them in a safe place.  The staff may later request or require that you produce the originals.

3.      Whether you scan or photocopy Documents, the copies must be identical to the originals, including even faint marks or print.  Also, please note that if copies of a Document differ in any way, they are considered separate Documents and you must send each one.  For example, if you have two copies of the same letter, but only one of them has handwritten notes on it, you must send both the clean copy and the one with notes.

4.      In producing a photocopy of an original Document that contains post-it(s), notation flag(s), or other removable markings or attachments which may conceal all or a portion of the markings contained in the original Document, photocopies of the original Document both with and without the relevant post-it(s), notation flag(s), or removable markings or attachments should be produced.

5.      Documents should be produced as they are kept in the ordinary course of business or be organized and labeled to correspond with the categories in this request.  In that regard, Documents should be produced in a unitized manner, i.e.., delineated with staples or paper clips to identify the Document boundaries.

6.      Documents should be labeled with sequential numbering (bates-stamped).

7.      You must produce all Documents created during, or Concerning, the period January 1, 2014 to the present, unless otherwise specified.

8.      The scope of any given request should not be limited or narrowed based on the fact that it calls for Documents that are responsive to another request.

9.      You are not required to produce exact duplicates of any Documents that have been previously produced to the Securities and Exchange Commission staff **in connection with this matter**.  If you are not producing Documents based upon a prior production, please identify the responsive Documents that were previously produced.

10.     For any Documents that qualify as records of regularly conducted activities under Federal Rule of Evidence 902(11), please complete a business records certification (a sample of which is enclosed) and return it with the Document production.

11.     This subpoena covers all Documents in or subject to your possession, custody or

control, including all Documents that are not in your immediate possession but that you have the ability to obtain, that are responsive, in whole or in part, to any of the individual requests set forth below.  If, for any reason – including a claim of attorney-client privilege – you do not produce something called for by the request, you should submit a list of what you are not producing.  The list should be produced as an Excel file and describe each item separately, noting:

a.    its author(s);
b.    its date;
c.    its subject matter;
d.    the name of the Person who has the item now, or the last Person known to have it;
e.    the names of everyone who ever had the item or a copy of it, and the names of everyone who was told the item's contents;
f.    the basis upon which you are not producing the responsive Document;
g.    the specific request in the subpoena to which the Document relates;
h.    the attorney(s) and the client(s) involved; and
i.    in the case of the work product doctrine, the litigation for which the Document was prepared in anticipation.

12.    If Documents responsive to this subpoena no longer exist because they have been lost, discarded, or otherwise destroyed, you should identify such Documents and give the date on which they were lost, discarded or destroyed.

## C.    <u>**Documents to be Produced**</u>

1.    All Financial Account statements for accounts held in or for the benefit of you or for which you have signature authority.  This includes any jointly-held accounts;

2.    All Communications with any Relevant Investors Concerning SBA;

3.    All Agreements with any Relevant Investors including, but not limited to, investment advisory and brokerage agreements;

4.    All Documents including, but not limited to, investment, subscription, and promissory note agreements Concerning SBA;

5.    All Documents Concerning or evidencing any payments to Relevant Investors by you or SBA;

6.    All Documents Concerning or evidencing any payments to you by SBA;

7.    All Agreements between you and SBA; and

8.    All Communications between you and SBA.

## BACKGROUND QUESTIONNAIRE

**Please respond to the following questions in the space provided.  If you need additional space for any response, you may attach additional pieces of paper.**

Today's date:  _____

   1.  What is your full name?

     _____

   2.  Have you ever been known by any other name?  Yes __ No __

     If yes, list each such name and the period(s) in which you were known by that name.

     _____
     _____
     _____

   3.  Date and Place of Birth?

     _____

   4.  Country of Citizenship?

     _____

   5.  Marital Status?  Married __ Divorced __ Single __

     If you have ever been married, state for each marriage: (i) the date(s) of the marriage; (ii) the name of your spouse; (iii) your spouse's birth name, if different; (iv) your spouse's age; and (v) your spouse's occupation.

     _____
     _____
     _____

   6.  List the names, ages and occupations of your children, if any.

     _____
     _____
     _____

   7.  List all residences you occupied at any time during the last five years, including vacation homes, beginning with your current residence.  For each residence, state the address, dates of residence, and all telephone numbers (including facsimile numbers) listed at that address.

     _____
     _____
     _____
     _____

Background Questionnaire
Page 2

8. List all telephone numbers and telecommunication services that were in your name or that you regularly used at any time during the last five years.  Include all residential, business, cellular, credit card, and VOIP telephone numbers, including those listed in your response to question 7, and services such as GoogleVoice, Skype, video conference services.  For each telephone number, state the name(s) of the corresponding carrier(s) (*e.g.*, AT&T, Verizon, Vonage, Skype, etc.).

_____
_____
_____

9. List the universal resource locator (URL) for all websites or blogs that you established or for which you had the authority to control content, at any time during the last five years.  For each website, state the name(s) of the domain name registrar (*e.g.* GoDaddy) through which the URL was obtained, the name(s) of all individuals or entities who provided web site hosting or design services, whether the website contained primarily business or personal information, and the time period in which it was active.

_____
_____
_____

10. List all electronic mail addresses and social networking accounts (*e.g.* Facebook, LinkedIn, Twitter, Instagram, Flickr, and Google+) that were in your name or that you regularly used at any time during the last five years.  Include all personal, business and shared electronic mail addresses and social networking accounts.  For each electronic mail address and social networking account, state the name(s) of the corresponding internet service provider(s) (*e.g.*, Google, Yahoo, AOL, or your employer), whether the address was used primarily for business or personal correspondence, and the time period in which it was active.

_____
_____
_____
_____
_____

11. List all usernames for instant messaging and similar electronic communication services (including, but not limited to, Bloomberg, Skype, whatsapp), other than those listed in your response to questions 8 through 10, that were in your name or that you regularly used at any time during the last five years.  Include all personal, business and shared addresses.  For each username, state the name(s) of the communication service provider (*e.g.*, Google, AOL, etc.), whether the address was used primarily for business or

Background Questionnaire
Page 3

personal correspondence, the time period in which it was active, and the name of the software application(s) (*e.g.*, GTalk, ICQ, MSN Messenger) you used to access it.

_____
_____
_____

12. List all internet message boards or discussion forums (including, but not limited to, Money Maker Group, PNQI Message Board, Investors Hub Daily) of which you were a member or on which you posted any messages at any time during the last five years.  For each message board or discussion forum, state the service provider and your member name or identification information.

_____
_____
_____

PUBLICLY-HELD COMPANIES

13. Are you now, or have you ever been, an officer or director of any publicly-held company?  Yes __  No __

If yes, identify each such company, its CUSIP, and any exchange on which it is or was listed, and state your positions (including membership on any Board or management committees) and the dates you held each position.

_____
_____
_____
_____
_____
_____
_____
_____

14. Are you now, or have you ever been, a beneficial owner, directly or indirectly, of five per cent or more of any class of equity securities of any publicly held company?  Yes __ No __

If yes, identify each such company, its CUSIP, and any exchange on which it is or was listed, and state the amount, percentage, and dates of your ownership.

_____
_____
_____

Background Questionnaire
Page 4

<u>PRIVATELY-HELD COMPANIES</u>

15.    Are you now, or have you ever been, a beneficial owner, directly or indirectly, of any privately-held company (*i.e.*, corporation, partnership, limited liability company or other corporate form)?   Yes___ No___

    If yes, identify each such company, including address and other contact information, and state your positions and the dates you held each position.

    _____
    _____
    _____

16.    Are you now, or have you ever been, a manager or a member of any privately-held company (*i.e.*, corporation, partnership, limited liability company or other corporate form)?  Yes___ No___

    If yes, identify each such company, including address and other contact information, and state your positions and the dates you held each position.

    _____
    _____
    _____

<u>SECURITIES ACCOUNTS</u>

17. List all securities or brokerage accounts that you have held in your name, individually or jointly, at any time during the last five years.  Include all foreign accounts.  For each such account, identify: (i) the brokerage firm; (ii) the location of the branch where your account is or was held; (iii) your broker; (iv) the type of account (*i.e.*, cash, margin or IRA); (v) the account number; and (vi) whether any person has ever held discretionary authority or power of attorney over the account; if so, name such person(s).

    _____
    _____
    _____
    _____
    _____

18. List all securities or brokerage accounts (including foreign accounts), other than those listed in your answer to question 17, in which you had any direct or indirect beneficial

Background Questionnaire
Page 5

interest at any time during the last five years.  For each such account, provide the information requested by question 17.

_____
_____
_____
_____
_____
_____

19. List all securities or brokerage accounts (including foreign accounts), other than those listed in your answer to question 17 or 18, over which you had any control at any time during the last five years.  For each such account, provide the information requested by question 17.

_____
_____
_____
_____
_____
_____

## BANK ACCOUNTS

20. List all accounts you have held in your name at any financial institution (*i.e.*, bank, thrift, or credit union) at any time during the last five years.  Include all foreign accounts.  For each such account, identify: (i) the financial institution; (ii) the address of the branch at which your account is or was held; (iii) the type of account (*i.e.*, checking, savings, money market or IRA); (iv) the account number; and (v) whether any person has ever had discretionary authority or power of attorney over the account; if so, name such person(s).

_____
_____
_____
_____
_____
_____

21. List all accounts at financial institutions (including foreign accounts), other than those listed in your answer to question 20, in which you had any direct or indirect beneficial interest at any time during the last five years.  For each such account, provide the information requested by question 20.

_____
_____
_____
_____
_____
_____

Background Questionnaire
Page 6

22. List all accounts at financial institutions (including foreign accounts), other than those listed in your answer to question 20 or 21, over which you had any control at any time during the last five years.  For each such account, provide the information requested by question 20.

_____
_____
_____
_____
_____
_____

23. List any other accounts (including foreign accounts), other than those listed in your answers to questions 20 through 22, that were held in your name, in which you had any direct or indirect beneficial interest, or over which you had any control, that you have used to transfer funds in the last five years, including, but not limited to, PayPal accounts. For each such account, provide the information requested by question 20.

_____
_____
_____

## PRIOR PROCEEDINGS

24. Have you ever testified in any proceeding conducted by the staff of the Securities and Exchange Commission, a U.S. or foreign federal or state agency, a U.S. or foreign federal or state court, a stock exchange, the Financial Industry Regulatory Authority ("FINRA") or any other self-regulatory organization ("SRO"), or in any arbitration proceeding related to securities transactions?  Yes __  No __

If yes, for each such proceeding, identify: (i) the title of the proceeding; (ii) the organization or agency; and (iii) the date(s) on which you testified.

_____
_____
_____
_____

25. Have you ever been deposed in connection with any court proceeding?  Yes __  No __

If yes, for each such proceeding, identify: (i) the title of the proceeding, and (ii) the date(s) on which you were deposed.

_____
_____

Background Questionnaire
Page 7

_____
_____

26. Have you ever been named as a defendant or respondent in any action or proceeding brought by the SEC, any other U.S. or foreign federal agency, a state securities agency, FINRA, an SRO, or any exchange?  Yes __ No __

If yes, for each such proceeding, identify: (i) the title of the proceeding; (ii) the agency or tribunal; (iii) the substance of the allegations; (iv) the outcome of the proceeding; and (v) the date of the outcome.

_____
_____
_____
_____

27. Have you ever been a defendant in any action (other than those listed in response to question 26) alleging violations of the federal securities laws?  Yes __ No __

If yes, for each such proceeding, identify: (i) the title of the proceeding; (ii) the court or tribunal; (iii) the outcome of the proceeding; and (iv) the date of the outcome.

_____
_____
_____
_____

28. Have you ever been a defendant in any criminal proceeding other than one involving a minor traffic offense?  Yes __ No __

If yes, for each such proceeding, identify: (i) the title of the proceeding; (ii) the court or tribunal; (iii) the outcome of the proceeding; and (iv) the date of the outcome.

_____
_____
_____
_____

Background Questionnaire
Page 8

## EDUCATIONAL HISTORY

29. Provide the requested information about each educational institution that you have attended, beginning with the most recent and working backward to the date that you completed high school.

Name of School
_____

| City | State | Country | Zip Code |
|---|---|---|---|

Dates of Attendance: Month/Year to Month/Year          Degree/Major          Month/Year of Degree

Name of School
_____

| City | State | Country | Zip Code |
|---|---|---|---|

Dates of Attendance: Month/Year to Month/Year          Degree/Major          Month/Year of Degree

Name of School
_____

| City | State | Country | Zip Code |
|---|---|---|---|

Dates of Attendance: Month/Year to Month/Year          Degree/Major          Month/Year of Degree

Name of School
_____

| City | State | Country | Zip Code |
|---|---|---|---|

Dates of Attendance: Month/Year to Month/Year          Degree/Major          Month/Year of Degree

30. Other than courses taken in connection with institutions listed in response to question 29, list any securities, accounting or business related courses taken since high school.  For each such course, identify the date that the course was completed and the name of the institution or organization that offered the course.

_____
_____
_____
_____

Background Questionnaire
Page 9

<u>PROFESSIONAL LICENSES/CLUBS</u>

31. Do you hold, or have you ever held, any professional license?  Yes__  No __

    If yes, for each such license, identify: (i) the license number or attorney bar number;
    (ii) the licensing organization; (iii) the date the license was awarded; (iv) the date such
    license terminated, if applicable; (v) the date(s) of any disciplinary proceeding(s) against
    you: and (vi) the outcome of any such disciplinary proceeding (*e.g.*, reprimand,
    suspension, revocation).

    _____
    _____
    _____
    _____

32. Are you, or have you ever been, a member of any professional or business club or
    organization?   Yes __  No __

    If yes, list for each: (i) the name of the club or organization; (ii) its address; (iii) the
    date(s) of your membership; and (iv) service in any governance roles (*e.g.*, board
    member, committee member, etc.) including title and dates of service.

    _____
    _____
    _____
    _____

33. Are you, or have you been in the last five years, a member of any social clubs, charities
    or nonprofit organizations?   Yes ___  No ___

    If yes, list for each: (i) the name of the social club, charity or nonprofit organization;
    (ii) its address; (iii) the date(s) of your membership; and (iv) service in any governance
    roles (*e.g.*, board member, committee member, etc.) including title and dates of service..

    _____
    _____
    _____
    _____

<u>EMPLOYMENT HISTORY</u>

34. Are you, or have you ever been, an employee of a broker, dealer, investment adviser,
    investment company, municipal securities dealer, municipal advisor, transfer agent, or

Background Questionnaire
Page 10

nationally recognized statistical rating organization?   Yes ____   No ____

If yes, list for each: (i) the jurisdiction of the entity; (ii) your CRD number; (iii) the entity's CRD number; (iv) the entity's SEC File number; (v) the entity's CUSIP number; and (vi) any foreign registration information similar to the foregoing.

_____
_____
_____
_____
_____
_____
_____

35. State your employment activities, beginning with the present and working backward to the date that you completed high school and attach a recent copy of your resume or curriculum vitae.

| Employer's Name/Self-Employment | | | |
|---|---|---|---|
| Employer's Street Address | | | Telephone Number |
| City | State | Country | Zip Code |
| Title | Dates of Employment | | Supervisor |
| Title | Dates of Employment | | Supervisor |
| Title | Dates of Employment | | Supervisor |
| Title | Dates of Employment | | Supervisor |

| Employer's Name/Self-Employment | | | |
|---|---|---|---|
| Employer's Street Address | | | Telephone Number |
| City | State | Country | Zip Code |
| Title | Dates of Employment | | Supervisor |
| Title | Dates of Employment | | Supervisor |
| Title | Dates of Employment | | Supervisor |
| Title | Dates of Employment | | Supervisor |

Background Questionnaire
Page 11

Employer's Name/Self-Employment

| Employer's Street Address | | | Telephone Number | |
|---|---|---|---|---|
| City | State | Country | Zip Code | |
| Title | Dates of Employment | | Supervisor | |
| Title | Dates of Employment | | Supervisor | |
| Title | Dates of Employment | | Supervisor | |
| Title | Dates of Employment | | Supervisor | |

Employer's Name/Self-Employment

| Employer's Street Address | | | Telephone Number | |
|---|---|---|---|---|
| City | State | Country | Zip Code | |
| Title | Dates of Employment | | Supervisor | |
| Title | Dates of Employment | | Supervisor | |
| Title | Dates of Employment | | Supervisor | |
| Title | Dates of Employment | | Supervisor | |

Employer's Name/Self-Employment

| Employer's Street Address | | | Telephone Number | |
|---|---|---|---|---|
| City | State | Country | Zip Code | |
| Title | Dates of Employment | | Supervisor | |
| Title | Dates of Employment | | Supervisor | |
| Title | Dates of Employment | | Supervisor | |
| Title | Dates of Employment | | Supervisor | |

Background Questionnaire
Page 12

| Employer's Name/Self-Employment | | | |
| --- | --- | --- | --- |
| Employer's Street Address | | | Telephone Number |
| City | State | Country | Zip Code |
| Title | Dates of Employment | | Supervisor |
| Title | Dates of Employment | | Supervisor |
| Title | Dates of Employment | | Supervisor |
| Title | Dates of Employment | | Supervisor |

## CONTINUE ON ADDITIONAL SHEETS IF NECESSARY

# SECURITIES AND EXCHANGE COMMISSION
## Washington, D.C. 20549

## Supplemental Information for Persons Requested to Supply
## Information Voluntarily or Directed to Supply Information
## Pursuant to a Commission Subpoena

**A.  False Statements and Documents**

Section 1001 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> [W]hoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully--
> (1)  falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
> (2)  makes any materially false, fictitious, or fraudulent statement or representation; or
> (3)  makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry.

Section 1519 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States . . ., or in relation to or contemplation of any such matter.

**B.  Testimony**

If your testimony is taken, you should be aware of the following:

1.  *Record*.  Your testimony will be transcribed by a reporter. If you desire to go off the record, please indicate this to the Commission employee taking your testimony, who will determine whether to grant your request. The reporter will not go off the record at your, or your counsel's, direction.

2.  *Counsel*.  You have the right to be accompanied, represented and advised by counsel of your choice. Your counsel may advise you before, during and after your testimony; question you briefly at the conclusion of your testimony to clarify any of the answers you give during testimony; and make summary notes during your testimony solely for your use. If you are accompanied by counsel, you may consult privately.

If you are not accompanied by counsel, please advise the Commission employee taking your testimony if, during the testimony, you desire to be accompanied, represented and advised by counsel. Your testimony will be adjourned once to afford you the opportunity to arrange to be so accompanied, represented or advised.

You may be represented by counsel who also represents other persons involved in the Commission's investigation. This multiple representation, however, presents a potential conflict of interest if one client's interests are or may be adverse to another's. If you are represented by counsel who also represents other persons involved in the investigation, the Commission will assume that you and counsel have discussed and resolved all issues concerning possible conflicts of interest. The choice of counsel, and the responsibility for that choice, is yours.

3.  *Transcript Availability*.  Rule 6 of the Commission's Rules Relating to Investigations, 17 CFR 203.6, states:

> A person who has submitted documentary evidence or testimony in a formal investigative proceeding shall be entitled, upon written request, to procure a copy of his documentary evidence or a transcript of his testimony on payment of the appropriate fees: *Provided, however*, That in a nonpublic formal investigative proceeding the Commission may for good cause deny such request. In any event, any witness, upon proper identification, shall have the right to inspect the official transcript of the witness' own testimony.

If you wish to purchase a copy of the transcript of your testimony, the reporter will provide you with a copy of the appropriate form. Persons requested to supply information voluntarily will be allowed the rights provided by this rule.

4.  *Perjury*.  Section 1621 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> Whoever--
>
> (1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare,

SEC 1662 (09-21)

> depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or
>
> (2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true.

5.   *Fifth Amendment and Voluntary Testimony*. Information you give may be used against you in any federal, state, local or foreign administrative, civil or criminal proceeding brought by the Commission or any other agency.

You may refuse, in accordance with the rights guaranteed to you by the Fifth Amendment to the Constitution of the United States, to give any information that may tend to incriminate you.

If your testimony is not pursuant to subpoena, your appearance to testify is voluntary, you need not answer any question, and you may leave whenever you wish. Your cooperation is, however, appreciated.

6.   *Formal Order Availability*. If the Commission has issued a formal order of investigation, it will be shown to you during your testimony, at your request. If you desire a copy of the formal order, please make your request in writing.

## C.  Submissions and Settlements

Rule 5(c) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(c), states:

> Persons who become involved in . . . investigations may, on their own initiative, submit a written statement to the Commission setting forth their interests and position in regard to the subject matter of the investigation. Upon request, the staff, in its discretion, may advise such persons of the general nature of the investigation, including the indicated violations as they pertain to them, and the amount of time that may be available for preparing and submitting a statement prior to the presentation of a staff recommendation to the Commission for the commencement of an administrative or injunction proceeding. Submissions by interested persons should be forwarded to the appropriate Division Director or Regional Director with a copy to the staff members conducting the investigation and should be clearly referenced to the specific investigation to which they relate. In the event a recommendation for the commencement of an enforcement proceeding is presented by the staff, any submissions by interested persons will be forwarded to the Commission in conjunction with the staff memorandum.

The staff of the Commission routinely seeks to introduce submissions made pursuant to Rule 5(c) as evidence in Commission enforcement proceedings, when the staff deems appropriate.

Rule 5(f) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(f), states:

> In the course of the Commission's investigations, civil lawsuits, and administrative proceedings, the staff, with appropriate authorization, may discuss with persons involved the disposition of such matters by consent, by settlement, or in some other manner. It is the policy of the Commission, however, that the disposition of any such matter may not, expressly or impliedly, extend to any criminal charges that have been, or may be, brought against any such person or any recommendation with respect thereto. Accordingly, any person involved in an enforcement matter before the Commission who consents, or agrees to consent, to any judgment or order does so solely for the purpose of resolving the claims against him in that investigative, civil, or administrative matter and not for the purpose of resolving any criminal charges that have been, or might be, brought against him. This policy reflects the fact that neither the Commission nor its staff has the authority or responsibility for instituting, conducting, settling, or otherwise disposing of criminal proceedings. That authority and responsibility are vested in the Attorney General and representatives of the Department of Justice.

## D.  Freedom of Information Act

The Freedom of Information Act, 5 U.S.C. 552 (the "FOIA"), generally provides for disclosure of information to the public. Rule 83 of the Commission's Rules on Information and Requests, 17 CFR 200.83, provides a procedure by which a person can make a written request that information submitted to the Commission not be disclosed under the FOIA. That rule states that no determination as to the validity of such a request will be made until a request for disclosure of the information under the FOIA is received. Accordingly, no response to a request that information not be disclosed under the FOIA is necessary or will be given until a request for disclosure under the FOIA is received. If you desire an acknowledgment of receipt of your written request that information not be disclosed under the FOIA, please provide a duplicate request, together with a stamped, self-addressed envelope.

**E.  Authority for Solicitation of Information**

*Persons Directed to Supply Information Pursuant to Subpoena*. The authority for requiring production of information is set forth in the subpoena. Disclosure of the information to the Commission is mandatory, subject to the valid assertion of any legal right or privilege you might have.

*Persons Requested to Supply Information Voluntarily*. One or more of the following provisions authorizes the Commission to solicit the information requested: Sections 19 and/or 20 of the Securities Act of 1933; Section 21 of the Securities Exchange Act of 1934; Section 321 of the Trust Indenture Act of 1939; Section 42 of the Investment Company Act of 1940; Section 209 of the Investment Advisers Act of 1940; and 17 CFR 202.5. Disclosure of the requested information to the Commission is voluntary on your part.

**F.  Effect of Not Supplying Information**

*Persons Directed to Supply Information Pursuant to Subpoena*. If you fail to comply with the subpoena, the Commission may seek a court order requiring you to do so. If such an order is obtained and you thereafter fail to supply the information, you may be subject to civil and/or criminal sanctions for contempt of court. In addition, Section 21(c) of the Securities Exchange Act of 1934, Section 42(c) of the Investment Company Act of 1940, and Section 209(c) of the Investment Advisers Act of 1940 provide that fines and terms of imprisonment may be imposed upon any person who shall, without just cause, fail or refuse to attend and testify or to answer any lawful inquiry, or to produce books, papers, correspondence, memoranda, and other records in compliance with the subpoena.

*Persons Requested to Supply Information Voluntarily*. There are no direct sanctions and thus no direct effects for failing to provide all or any part of the requested information.

**G.  Principal Uses of Information**

The Commission's principal purpose in soliciting the information is to gather facts in order to determine whether any person has violated, is violating, or is about to violate any provision of the federal securities laws or rules for which the Commission has enforcement authority, such as rules of securities exchanges and the rules of the Municipal Securities Rulemaking Board. Facts developed may, however, constitute violations of other laws or rules. Information provided may be used in Commission and other agency enforcement proceedings. Unless the Commission or its staff explicitly agrees to the contrary in writing, you should not assume that the Commission or its staff acquiesces in, accedes to, or concurs or agrees with, any position, condition, request, reservation of right, understanding, or any other statement that purports, or may be deemed, to be or to reflect a limitation upon the Commission's receipt, use, disposition, transfer, or retention, in accordance with applicable law, of information provided.

**H.  Routine Uses of Information**

The Commission often makes its files available to other governmental agencies, particularly United States Attorneys and state prosecutors. There is a likelihood that information supplied by you will be made available to such agencies where appropriate. Whether or not the Commission makes its files available to other governmental agencies is, in general, a confidential matter between the Commission and such other governmental agencies.

Set forth below is a list of the routine uses which may be made of the information furnished.

1. To appropriate agencies, entities, and persons when (1) the SEC suspects or has confirmed that there has been a breach of the system of records, (2) the SEC has determined that as a result of the suspected or confirmed breach there is a risk of harm to individuals, the SEC (including its information systems, programs, and operations), the Federal Government, or national security; and (3) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the SEC's efforts to respond to the suspected or confirmed breach or to prevent, minimize, or remedy such harm.

2. To other Federal, state, local, or foreign law enforcement agencies; securities self-regulatory organizations; and foreign financial regulatory authorities to assist in or coordinate regulatory or law enforcement activities with the SEC.

3. To national securities exchanges and national securities associations that are registered with the SEC, the Municipal Securities Rulemaking Board; the Securities Investor Protection Corporation; the Public Company Accounting Oversight Board; the Federal banking authorities, including, but not limited to, the Board of Governors of the Federal Reserve System, the Comptroller of the Currency, and the Federal Deposit Insurance Corporation; state securities regulatory agencies or organizations; or regulatory authorities of a foreign government in connection with their regulatory or enforcement responsibilities.

4. By SEC personnel for purposes of investigating possible violations of, or to conduct investigations authorized by, the Federal securities laws.

5. In any proceeding where the Federal securities laws are in issue or in which the Commission, or past or present members of its staff, is a party or otherwise involved in an official capacity.

6. In connection with proceedings by the Commission pursuant to Rule 102(e) of its Rules of Practice, 17 CFR 201.102(e).

7. To a bar association, state accountancy board, or other Federal, state, local, or foreign licensing or oversight authority; or professional association or self-regulatory authority to the extent that it performs similar functions (including the Public Company Accounting Oversight Board) for investigations or possible disciplinary action.

8. To a Federal, state, local, tribal, foreign, or international agency, if necessary to obtain information relevant to the SEC's decision concerning the hiring or retention of an employee; the issuance of a security clearance; the letting of a contract; or the issuance of a license, grant, or other benefit.

9. To a Federal, state, local, tribal, foreign, or international agency in response to its request for information concerning the hiring or retention of an employee; the issuance of a security clearance; the reporting of an investigation of an employee; the letting of a contract; or the issuance of a license, grant, or other benefit by the requesting agency, to the extent that the information is relevant and necessary to the requesting agency's decision on the matter.

10. To produce summary descriptive statistics and analytical studies, as a data source for management information, in support of the function for which the records are collected and maintained or for related personnel management functions or manpower studies; may also be used to respond to general requests for statistical information (without personal identification of individuals) under the Freedom of Information Act.

11. To any trustee, receiver, master, special counsel, or other individual or entity that is appointed by a court of competent jurisdiction, or as a result of an agreement between the parties in connection with litigation or administrative proceedings involving allegations of violations of the Federal securities laws (as defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)) or pursuant to the Commission's Rules of Practice, 17 CFR 201.100 through 900 or the Commission's Rules of Fair Fund and Disgorgement Plans, 17 CFR 201.1100 through 1106, or otherwise, where such trustee, receiver, master, special counsel, or other individual or entity is specifically designated to perform particular functions with respect to, or as a result of, the pending action or proceeding or in connection with the administration and enforcement by the Commission of the Federal securities laws or the Commission's Rules of Practice or the Rules of Fair Fund and Disgorgement Plans.

12. To any persons during the course of any inquiry, examination, or investigation conducted by the SEC's staff, or in connection with civil litigation, if the staff has reason to believe that the person to whom the record is disclosed may have further information about the matters related therein, and those matters appeared to be relevant at the time to the subject matter of the inquiry.

13. To interns, grantees, experts, contractors, and others who have been engaged by the Commission to assist in the performance of a service related to this system of records and who need access to the records for the purpose of assisting the Commission in the efficient administration of its programs, including by performing clerical, stenographic, or data analysis functions, or by reproduction of records by electronic or other means. Recipients of these records shall be required to comply with the requirements of the Privacy Act of 1974, as amended, 5 U.S.C. 552a.

14. In reports published by the Commission pursuant to authority granted in the Federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), which authority shall include, but not be limited to, section 21(a) of the Securities Exchange Act of 1934, 15 U.S.C. 78u(a)).

15. To members of advisory committees that are created by the Commission or by Congress to render advice and recommendations to the Commission or to Congress, to be used solely in connection with their official designated functions.

16. To any person who is or has agreed to be subject to the Commission's Rules of Conduct, 17 CFR 200.735-1 through 200.735-18, and who assists in the investigation by the Commission of possible violations of the Federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), in the preparation or conduct of enforcement actions brought by the Commission for such violations, or otherwise in connection with the Commission's enforcement or regulatory functions under the Federal securities laws.

17. To a Congressional office from the record of an individual in response to an inquiry from the Congressional office made at the request of that individual.

18. To members of Congress, the press, and the public in response to inquiries relating to particular Registrants and their activities, and other matters under the Commission's jurisdiction.

19. To prepare and publish information relating to violations of the Federal securities laws as provided in 15 U.S.C. 78c(a)(47)), as amended.

20. To respond to subpoenas in any litigation or other proceeding.

21. To a trustee in bankruptcy.

22. To any governmental agency, governmental or private collection agent, consumer reporting agency or commercial reporting agency, governmental or private employer of a debtor, or any other person, for collection,

including collection by administrative offset, Federal salary offset, tax refund offset, or administrative wage garnishment, of amounts owed as a result of Commission civil or administrative proceedings.

23. To another Federal agency or Federal entity, when the SEC determines that information from this system of records is reasonably necessary to assist the recipient agency or entity in (1) responding to a suspected or confirmed breach or (2) preventing, minimizing, or remedying the risk of harm to individuals, the recipient agency or entity (including its information systems, programs, and operations), the Federal Government, or national security, resulting from a suspected or confirmed breach.

\* \* \* \* \*

*Small Business Owners*: The SEC always welcomes comments on how it can better assist small businesses. If you would like more information, or have questions or comments about federal securities regulations as they affect small businesses, please contact the Office of Small Business Policy, in the SEC's Division of Corporation Finance, at 202-551-3460. If you would prefer to comment to someone outside of the SEC, you can contact the Small Business Regulatory Enforcement Ombudsman at http://www.sba.gov/ombudsman or toll free at 888-REG-FAIR. The Ombudsman's office receives comments from small businesses and annually evaluates federal agency enforcement activities for their responsiveness to the special needs of small business.



# U.S. Securities and Exchange Commission

## <u>Data Delivery Standards</u>

This document describes the technical requirements for paper and electronic document productions to the U.S. Securities and Exchange Commission (SEC).   ***Any questions or proposed file formats other than those described below must be discussed with the legal and technical staff of the SEC Division of Enforcement prior to submission.***

General Instructions................................................................................................................................ 1

Delivery Formats .................................................................................................................................... 2

   I.  Imaged Productions.........................................................................................................................3

      1.  Images.......................................................................................................................... 3

      2.  Image Cross-Reference File ....................................................................................... 3

      3.  Data File ..................................................................................................................... 3

      4.  Text ............................................................................................................................. 3

      5.  Linked Native Files .................................................................................................... 3

   II.  Native File Productions without Load Files ...................................................................... 4

   III.  Adobe PDF File Productions .......................................................................................... 4

   IV.  Audio Files ....................................................................................................................... 4

   V.  Video Files ......................................................................................................................... 4

   VI.  Electronic Trade and Bank Records ................................................................................ 4

   VII.  Electronic Phone Records ............................................................................................. 4

   VIII.  Audit Workpapers ...................................................................................................... 5

   IX.  Mobile Device Data ....................................................................................................... 5

**General Instructions**

<span style="color:red">Due to COVID-19 restrictions the current, temporary mailing address for all <u>physical productions</u> sent to the SEC is:</span>
<span style="color:red">**ENF-CPU (U.S. Securities & Exchange Commission), 14420 Albemarle Point Place, Suite 102, Chantilly, VA 20151-1750**</span>

Electronic files must be produced in their native format, i.e. the format in which they are ordinarily used and maintained during the normal course of business.  For example, an MS Excel file must be produced as an MS Excel file rather than an image of a spreadsheet. *(Note:  An Adobe PDF file is <u>not</u> considered a native file unless the document was initially created as a PDF.)*

In the event produced files require the use of proprietary software not commonly found in the workplace, the SEC will explore other format options with the producing party.

The proposed use of file de-duplication methodologies or *computer-assisted review* or *technology-assisted review* (TAR) during the processing of documents must be discussed with and approved by the legal and technical staff of the Division of Enforcement (ENF).  If your production will be de-duplicated it is vital that you 1) preserve any unique metadata associated with the duplicate files, for example, custodian name and file location and, 2) make that unique metadata part of your production to the SEC.

Rev 8/2021

General requirements for **ALL** document productions are:

1. A cover letter must be included with each production and should include the following information:
   a. Case number, case name and requesting SEC staff member name
   b. A list of each piece of media included in the production with its unique production volume number
   c. A list of custodians, identifying the Bates range for each custodian
   d. The time zone in which the emails were standardized during conversion
   e. Whether the production contains native files produced from Mac operating system environments
2. Data can be produced on CD, DVD, thumb drive, etc., using the media requiring the least number of deliverables and labeled with the following:
   a. Case number
   b. Production date
   c. Producing party
   d. Bates range (if applicable)
3. All submissions must be organized by **custodian** unless otherwise instructed.
4. All document family groups, i.e. email attachments, embedded files, etc., should be produced together and children files should follow parent files sequentially in the Bates numbering.
5. All load-ready collections should include only one data load file and one image pointer file.
6. All load-ready text must be produced as separate document-level text files.
7. All load-ready collections should account for custodians in the custodian field.
8. All load-ready collections must provide the extracted contents of any container files to ensure all relevant files are produced as separate records.
9. Audio files should be separated from data files if both are included in the production.
10. Only alphanumeric characters and the underscore character are permitted in file names and folder names. Special characters are not permitted.
11. All electronic productions submitted on media must be produced using industry standard self-extracting encryption software.
12. The SEC uses 7zip to access compressed files. Note that the SEC **cannot** accept files that use AES-256 Jpeg or pkAES-256-Cert Deflate compression methods, even if the files are created with 7zip. If you have any questions or need additional information, please reach out to the requesting SEC staff member.
13. Electronic productions of 20 GB or less are strongly encouraged to be submitted via Secure File Transfer. All Secure File Transfers should be sent to the SEC Centralized Production Unit (ENF-CPU@sec.gov) with a CC to the requesting SEC staff member. If you do not have your own Secure File Transfer application, you may reach out to the requesting SEC staff member for a link to the SEC system in order to upload your production. If using the SEC Secure File Transfer system, you will NOT be able to CC individuals outside the SEC on your upload transmission. Note that the SEC **cannot** accept productions made using file sharing sites such as Google Drive, Microsoft Office 365 or Dropbox.
14. Productions containing BSA or SAR material must be delivered on encrypted physical media. The SEC **cannot** accept electronic transmission of BSA or SAR material. Any BSA or SAR material produced should be segregated and appropriately marked as BSA or SAR material, or should be produced separately from other case related material.
15. Passwords for electronic documents, files, compressed archives and encrypted media must be provided separately either via email or in a cover letter apart from the media.
16. All electronic productions should be produced free of computer viruses.
17. Before producing forensically collected images, parties should reach out to the requesting SEC staff member in order to discuss appropriate handling.
18. Before producing unique data sets (large sets of relational data, website reconstruction, chat room data, etc.), parties should reach out to the requesting SEC staff member in order to discuss an appropriate production format.
19. Additional technical descriptions can be found in the addendum to this document.

**\*Please note that productions sent to the SEC via United States Postal Service are subject to Mail Irradiation, and as a result electronic productions may be damaged.\***

**Delivery Formats**

**I.  Imaged Productions**

The SEC prefers that all scanned paper and electronic file collections be produced in a structured format including industry standard load files, Bates numbered image files, native files and searchable document-level text files.

**1.  Images**

   a.  Black and white images must be 300 DPI Group IV single-page TIFF files
   b.  Color images must be produced in JPEG format
   c.  File names cannot contain embedded spaces or special characters (including the comma)
   d.  Folder names cannot contain embedded spaces or special characters (including the comma)
   e.  All image files must have a unique file name, i.e. Bates number
   f.  Images must be endorsed with sequential Bates numbers in the lower right corner of each image
   g.  The number of image files per folder should not exceed 2,000 files
   h.  Excel spreadsheets should have a placeholder image named by the Bates number of the file
   i.  AUTOCAD/photograph files should be produced as a single page JPEG file

**2.  Image Cross-Reference File**

The image cross-reference file (.LOG or .OPT) links the images to the database records. It should be a comma-delimited file consisting of seven fields per line with a line in the cross-reference file for every image in the database with the following format:

   *ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount*

**3.  Data File**

The data file (.DAT) contains all of the fielded information that will be loaded into the database.

   a.  The first line of the .DAT file must be a header row identifying the field names
   b.  The .DAT file must use the following *Concordance*® default delimiters:
       Comma ¶ ASCII character (020)
       Quote þ ASCII character (254)
   c.  If the .DAT file is produced in Unicode format it must contain the byte order marker
   d.  Date fields should be provided in the format: mm/dd/yyyy
   e.  Date and time fields must be two separate fields
   f.  The time zone must be included in all time fields
   g.  If the production includes imaged emails and attachments, the attachment fields must be included to preserve the parent/child relationship between an email and its attachments
   h.  An OCRPATH field must be included to provide the file path and name of the extracted text file on the produced storage media.  The text file must be named after the FIRSTBATES.  Do not include the text in the .DAT file.
   i.  For productions with native files, a LINK field must be included to provide the file path and name of the native file on the produced storage media. The native file must be named after the FIRSTBATES.
   j.  BEGATTACH and ENDATTACH fields must be two separate fields
   k.  A complete list of metadata fields is available in **Addendum A** to this document

**4.  Text**

Text must be produced as separate document-level text files, not as fields within the .DAT file. The text files must be named per the FIRSTBATES/Image Key and the full path to the text file (OCRPATH) should be included in the .DAT file. Text files may be in either ANSI or Unicode format, however, ALL text files must be in the same format within the same production. Note that productions containing text with foreign characters must produce text files in Unicode format to preserve the foreign characters. Text files must be in a separate folder, and the number of text files per folder should not exceed 2,000 files. There should be no special characters (including commas) in the folder names. For redacted documents, provide the full text for the redacted version.

**5.  Linked Native Files**

Copies of original email and native file documents/attachments must be included for all electronic productions.
   a.  Native file documents must be named per the FIRSTBATES number
   b.  The full path of the native file must be provided in the .DAT file for the LINK field
   c.  The number of native files per folder should not exceed 2,000 files

U.S. Securities and Exchange Commission
Data Delivery Standards

**II.    Native File Production without Load Files**

With prior approval, native files may be produced without load files. The native files must be produced as they are maintained in the normal course of business and organized by custodian-named file folders. When approved, native email files (.PST or .MBOX) may be produced. A separate folder should be provided for each custodian.

**III.   Adobe PDF File Production**

With prior approval, Adobe PDF files may be produced in native file format.

1.  All PDFs must be unitized at the document level, i.e., each PDF must represent a discrete document.
2.  PDF files should be produced in separate folders named by the custodian. The folders should not contain any special characters (including commas).
3.  All PDF files must contain embedded text that includes all discernible words within the document, not selected text or image only. This requires all layers of the PDF to be flattened first.
4.  If PDF files are Bates endorsed, the PDF files must be named by the Bates range.

**IV.    Audio Files**

Audio files from telephone recording systems must be produced in a format that is playable using Microsoft Windows Media Player™. Additionally, the call information (metadata) related to each audio recording MUST be provided. The metadata file must be produced in a delimited text format. Field names must be included in the first row of the text file. The metadata must include, at a minimum, the following fields:

1)  Caller Name:          Caller's name or account/identification number
2)  Originating Number:   Caller's phone number
3)  Called Party Name:    Called party's name
4)  Terminating Number:   Called party's phone number
5)  Date:                 Date of call
6)  Time:                 Time of call
7)  Filename:             Filename of audio file

**V.     Video Files**

Video files must be produced in a format that is playable using Microsoft Windows Media Player™.

**VI.    Electronic Trade and Bank Records**

When producing electronic trade records, bank records, or financial statements, provide the files in one of the following formats:

1.  MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

2.  Delimited text file with header information detailing the field structure. The preferred delimiter is a vertical bar "|". If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

**VII.   Electronic Phone Records**

When producing electronic phone records, provide the files in the following format:

1.  MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details (i.e. dates in a date format, numbers in an appropriate numerical format, and numbers with leading zeroes as text).

    a.  The metadata that must be included is outlined in **Addendum B** of this document. Each field of data must be loaded into a separate column. For example, Date and Start_Time must be produced in separate columns and not combined into a single column containing both pieces of information. Any fields of data that are provided in addition to those listed in **Addendum B** must also be loaded into separate columns.

Rev 8/2021

## VIII. Audit Workpapers

The SEC prefers for workpapers to be produced in two formats: (1) With Bates numbers in accordance with the SEC Data Delivery Standards; and (2) in native format or if proprietary software was used, on a standalone laptop with the appropriate software loaded so that the workpapers may be reviewed as they would have been maintained in the ordinary course of business. The laptop must have printing capability, and when possible, the laptop should be configured to enable a Virtual Machine (VM) environment.

## IX. Mobile Device Data

Before producing mobile device data (including but not limited to text messages) parties should reach out to the requesting SEC staff member in order to discuss the appropriate production format.

U.S. Securities and Exchange Commission
Data Delivery Standards

## ADDENDUM A

The metadata of electronic document collections should be extracted and provided in a .DAT file using the field definition and formatting described below:

| Field Name | Sample Data | Description |
|---|---|---|
| FIRSTBATES | EDC0000001 | First Bates number of native file document/email |
| LASTBATES | EDC0000001 | Last Bates number of native file document/email<br>**The LASTBATES field should be populated for single page documents/emails. |
| ATTACHRANGE | EDC0000001 - EDC0000015 | Bates number of the first page of the parent document to the Bates number of the last page of the last attachment "child" document |
| BEGATTACH | EDC0000001 | First Bates number of attachment range |
| ENDATTACH | EDC0000015 | Last Bates number of attachment range |
| PARENT_BATES | EDC0000001 | First Bates number of parent document/Email<br>**This PARENT_BATES field should be populated in each record representing an attachment "child" document |
| CHILD_BATES | EDC0000002; EDC0000014 | First Bates number of "child" attachment(s); can be more than one Bates number listed depending on the number of attachments<br>**The CHILD_BATES field should be populated in each record representing a "parent" document |
| CUSTODIAN | Smith, John | Email: Mailbox where the email resided<br>Native: Name of the individual or department from whose files the document originated |
| FROM | John Smith | Email: Sender<br>Native: Author(s) of document<br>**semi-colon should be used to separate multiple entries |
| TO | Coffman, Janice; LeeW [mailto:LeeW@MSN.com] | Recipient(s)<br>**semi-colon should be used to separate multiple entries |
| CC | Frank Thompson [mailto: frank_Thompson@cdt.com] | Carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| BCC | John Cain | Blind carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| SUBJECT | Board Meeting Minutes | Email: Subject line of the email<br>Native: Title of document (if available) |
| FILE_NAME | BoardMeetingMinutes.docx | Native: Name of the original native file, including extension |
| DATE_SENT | 10/12/2010 | Email: Date the email was sent<br>Native: (empty) |
| TIME_SENT/TIME_ZONE | 07:05 PM GMT | Email: Time the email was sent/ Time zone in which the emails were standardized during conversion.<br>Native: (empty)<br>**This data must be a separate field and cannot be combined with the DATE_SENT field |
| TIME_ZONE | GMT | The time zone in which the emails were standardized during conversion.<br>Email: Time zone<br>Native: (empty) |

6

| LINK | D:\001\ EDC0000001.msg | Hyperlink to the email or native file document<br>**The linked file must be named per the FIRSTBATES number |
|---|---|---|
| MIME_TYPE | application/msword | The content type of an email or native file document as identified/extracted from the header |
| FILE_EXTEN | MSG | The file type extension representing the email or native file document; will vary depending on the format |
| AUTHOR | John Smith | Email: (empty)<br>Native: Author of the document |
| LAST_AUTHOR | Jane Doe | Email: (empty)<br>Native: Last Author of the document |
| DATE_CREATED | 10/10/2010 | Email: (empty)<br>Native: Date the document was created |
| TIME_CREATED/TIME_ZONE | 10:25 AM GMT | Email: (empty)<br>Native: Time the document was created including time zone<br>**This data must be a separate field and cannot be |
| DATE_MOD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last modified |
| TIME_MOD/TIME_ZONE | 07:00 PM GMT | Email: (empty)<br>Native: Time the document was last modified including the time zone<br>**This data must be a separate field and cannot be |
| DATE_ACCESSD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last accessed |
| TIME_ACCESSD/TIME_ZONE | 07:00 PM GMT | Email: (empty)<br>Native: Time the document was last accessed including the time zone<br>**This data must be a separate field and cannot be |
| PRINTED_DATE | 10/12/2010 | Email: (empty)<br>Native: Date the document was last printed |
| FILE_SIZE | 5,952 | Size of native file document/email in KB |
| PGCOUNT | 1 | Number of pages in native file document/email |
| PATH | J:\Shared\SmithJ\October Agenda.doc | Email: (empty)<br>Native: Path where native file document was stored including original file name. |
| INTFILEPATH | Personal Folders\Deleted Items\Board Meeting Minutes.msg | Email: original location of email including original file name.<br>Native: (empty) |
| INTMSGID | <000805c2c71b$75977050$cb8306d1@MSN> | Email: Unique Message ID<br>Native: (empty) |

7

| HEADER | Return-Path: <example_from@dc.edu> X-SpamCatcher-Score:1[X] Received:from[136.167.40.119] (HELO dc.edu) by fe3.dc.edu (CommuniGate Pro SMTP4.1.8) with ESMTP-TLS id 61258719 for example_to@mail.dc.edu; Mon, 23 Aug 2004 11:40:10 -0400 Message-ID: <4129F3CA.2020509@dc.edu> Date: Mon, 23 Aug 2005 11:40:36 -400 From: Taylor Evans <example_from@dc.edu> User-Agent:Mozilla/5.0 (Windows;U; Windows NT 5.1; en-US;rv:1.0.1) Gecko/20020823 Netscape/7.0 X-Accept-Language:en-us,en MIME-Version:1.0 To: Jon Smith <example_to@mail.dc.edu> Subject:Business Development Meeting Content-Type: text/plain;charset=us-ascii; format=flowed Content-Transfer-Encoding:7bit | Email: The email header information Native: (empty) |
|---|---|---|
| MD5HASH | d131dd02c5e6eec4693d9a069 8aff95c 2fcab58712467eab4004583eb 8fb7f89 | MD5 Hash value of the document. |
| OCRPATH | TEXT/001/EDC0000001.txt | Path to extracted text of the native file |

Sample Image Cross-Reference File:

```
IMG0000001,,E:\001\IMG0000001.TIF,Y,,,
IMG0000002,,E:\001\IMG0000002.TIF,,,,
IMG0000003,,E:\001\IMG0000003.TIF,,,,
IMG0000004,,E:\001\IMG0000004.TIF,Y,,,
IMG0000005,,E:\001\IMG0000005.TIF,Y,,,
IMG0000006,,E:\001\IMG0000006.TIF,,,,
```

Rev 8/2021

## ADDENDUM B

For Electronic Phone Records, include the following fields in separate columns:

For Calls:

1) Account Number
2) Connection Date – Date the call was received or made
3) Connection Time – Time call was received or made
4) Seizure Time – Time it took for the call to be placed in seconds
5) Originating Number – Phone that placed the call
6) Terminating Number – Phone that received the call
7) Elapsed Time – The length of time the call lasted, preferably in seconds
8) End Time – The time the call ended
9) Number Dialed – Actual number dialed
10) IMEI Originating – Unique id to phone used to make call
11) IMEI Terminating– Unique id to phone used to receive call
12) IMSI Originating – Unique id to phone used to make call
13) IMSI Terminating- Unique id to phone used to receive call
14) Call Codes – Identify call direction or other routing information
15) Time Zone – Time Zone in which the call was received or placed, if applicable

For Text messages:

1) Account Number
2) Connection Date – Date the text was received or made
3) Connection Time – Time text was received or made
4) Originating Number – Who placed the text
5) Terminating Number – Who received the text
6) IMEI Originating – Unique id to phone used to make text
7) IMEI Terminating– Unique id to phone used to receive text
8) IMSI Originating - Unique id to phone used to make text
9) IMSI Terminating- Unique id to phone used to receive text
10) Text Code – Identify text direction, or other text routing information
11) Text Type Code – Type of text message (sent SMS, MMS, or other)
12) Time Zone – Time Zone in which the call was received or placed, if applicable

For Mobile Data Usage:

1) Account Number
2) Connection Date – Date the data was received or made
3) Connection Time – Time data was received or made
4) Originating number – Number that used data
5) IMEI Originating – Unique id of phone that used data
6) IMSI Originating - Unique id of phone that used data
7) Data or Data codes – Identify data direction, or other data routing information
8) Time Zone – Time Zone in which the call was received or placed, if applicable

Rev 8/2021

### DECLARATION OF _____[*Insert Name*] CERTIFYING RECORDS
### OF REGULARLY CONDUCTED BUSINESS ACTIVITY

I, the undersigned, _____[*insert name*], pursuant to 28 U.S.C. § 1746, declare that:

1. I am employed by _____ [*insert name of company*] as _____[*insert position*] and by reason of my position am authorized and qualified to make this declaration.

   _____
   _____
   _____[*if possible supply additional information as to how person is qualified to make declaration, e.g., I am custodian of records, I am familiar with the company's recordkeeping practices or systems, etc.]*

2. I further certify that the documents [*attached hereto or submitted herewith*] [*circle one*] and stamped _____[*insert bates range*] are true copies of records that were:

   > (a) made at or near the time of the occurrence of the matters set forth therein, by, or from information transmitted by, a person with knowledge of those matters;

   > (b) kept in the course of regularly conducted business activity; and

   > (c) made by the regularly conducted business activity as a regular practice.

   I declare under penalty of perjury that the foregoing is true and correct. Executed on _____[*date*].


   _____
   [*Name*]

# EXHIBIT E

**From:** UPS
**To:** Bradley, Kyle
**Subject:** UPS Delivery Notification, Tracking Number 1ZA3749A2497755018
**Date:** Thursday, December 22, 2022 7:37:19 PM

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.



## Hello, your package has been delivered.

**Delivery Date:** Thursday, 12/22/2022
**Delivery Time:** 4:35 PM
**Left At:** RESIDENTIAL
**Signed by:** JAM



| Set Delivery Instructions | Manage Preferences | View My Packages |
|---|---|---|

### SEC ATLANTA REG OFFICE

| | |
|---|---|
| **Tracking Number:** | 1ZA3749A2497755018 |
| **Ship To:** | SOUTH BAY ACQUISITIONS, LLC<br>534 23RD STREET<br>MANHATTAN BEACH, CA 902662205<br>US |
| **Number of Packages:** | 1 |
| **UPS Service:** | UPS Next Day Air® |
| **Package Weight:** | 0.5 LBS |
| **Reference Number:** | A-4043 |

 Download the UPS mobile app

© 2022 United Parcel Service of America, Inc. UPS, the UPS brandmark, and the color brown are trademarks of United Parcel Service of America, Inc. All rights reserved.

All trademarks, trade names, or service marks that appear in connection with UPS's services are the property of their respective owners.

Please do not reply directly to this email.

**Manage Your UPS My Choice Delivery Alerts**

**Review the UPS Privacy Notice**

**Review the UPS My Choice Service Terms**



# EXHIBIT F

# Composite Information

**Individual CRD#:** [1796541](#)                    **Individual Name: MATSON, JOHN N**

| | |
|---|---|
| **Full Legal Name** | MATSON, JOHN NICHOLAS |
| **Social Security Number** | ████████ |
| **Date Of Birth** | 03/30/1957 |
| **Residential Address** | 534 23RD STREET<br>MANHATTAN BEACH, CA 90266,  United States |
| **Reportable Disclosures?** | Yes |
| **Statutory Disqualification Status** | Requires Review / **Last Updated** |
| **Has Material Difference in Disclosure?** | No |
| **Current CE Status** | REQUIRED |

| **Disclosure Counts – Current Disclosures** | **Criminal** | **Regulatory Action** | **Customer Complaint** | **Other** |
|---|---|---|---|---|
| | 0 | 1 | 2 | 2 |

| **Disclosure Counts – Historical Disclosures** | **Criminal** | **Regulatory Action** | **Customer Complaint** | **Other** |
|---|---|---|---|---|
| | 0 | 0 | 1 | 3 |

© 2023 FINRA. All rights reserved. FINRA is a registered trademark of the Financial Industry Regulatory Authority, Inc.
Privacy │ Legal │ Term  & Condition

EXHIBIT G

| | |
|---|---|
| **From:** | UPS |
| **To:** | Bradley, Kyle |
| **Subject:** | UPS Delivery Notification, Tracking Number 1ZA3749A2491427133 |
| **Date:** | Thursday, December 22, 2022 7:37:18 PM |

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.



## Hello, your package has been delivered.

**Delivery Date:**   Thursday, 12/22/2022
**Delivery Time:**   4:35 PM
**Left At:**   RESIDENTIAL
**Signed by:**   JAM



| Set Delivery Instructions | Manage Preferences | View My Packages |
|---|---|---|

## SEC ATLANTA REG OFFICE

| | |
|---|---|
| **Tracking Number:** | 1ZA3749A2491427133 |
| **Ship To:** | JOHN MATSON<br>534 23RD STREET<br>MANHATTAN BEACH, CA 902662205<br>US |
| **Number of Packages:** | 1 |
| **UPS Service:** | UPS Next Day Air® |
| **Package Weight:** | 0.5 LBS |
| **Reference Number:** | A-4043 |

 Download the UPS mobile app

© 2022 United Parcel Service of America, Inc. UPS, the UPS brandmark, and the color brown are trademarks of United Parcel Service of America, Inc. All rights reserved.

All trademarks, trade names, or service marks that appear in connection with UPS's services are the property of their respective owners.

Please do not reply directly to this email.

**Manage Your UPS My Choice Delivery Alerts**

**Review the UPS Privacy Notice**

**Review the UPS My Choice Service Terms**



EXHIBIT H

| | |
|---|---|
| **From:** | Shelton, Katherine K (Contractor) |
| **To:** | matsonjon@gmail.com |
| **Cc:** | Bradley, Kyle |
| **Subject:** | smail A-4043 In the Matter of South Bay Acquisitions, LLC |
| **Date:** | Wednesday, January 25, 2023 3:57:32 PM |
| **Attachments:** | A-4043 John Matson Subpoena 2023-01-25.pdf |

Mr. Matson,

Attached please find correspondence and a subpoena from Senior Counsel Kyle Bradley.  This subpoena is being served via email per your request.

**Katie Shelton (Contractor)**
Senior Law Clerk, C2 Alaska LLC
U.S. Securities and Exchange Commission
Atlanta Regional Office
950 E. Paces Ferry Rd. NE, Suite 900
Atlanta, GA 30326
404-842-5736
sheltonka@sec.gov



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
950 East Paces Ferry Road, N.E., Suite 900
Atlanta, GA 30326-1382

ATLANTA
REGIONAL OFFICE

January 25, 2023

**Via Electronic Communication (matsonjon@gmail.com)**

John Matson
534 23rd Street
Manhattan Beach, CA  90266

Re:   In the Matter of South Bay Acquisitions, LLC (A-04043)

Dear Mr. Matson:

The staff of the Atlanta Regional Office of the United States Securities and Exchange Commission is conducting an investigation in the matter identified above.  The enclosed subpoena has been issued to you as part of this investigation.  The subpoena requires you to provide us documents and give sworn testimony.

Please read the subpoena and this letter carefully.  This letter answers some questions you may have about the subpoena.  You should also read the enclosed SEC Form 1662.  If you do not comply with this subpoena, the SEC may bring an action in Federal Court to enforce this subpoena.  Failure to comply with a court order enforcing this subpoena may result in the court imposing a fine, imprisonment or both.

**Producing Documents**

*What materials do I have to produce?*

The subpoena requires you to provide us the documents described in the attachment to the subpoena.  You must provide these documents by February 8, 2023.  The attachment to the subpoena defines some terms (such as "document") before listing what you must provide.

You should produce each and every document in your possession, custody, or control, including any documents that are not in your immediate possession but that you have the ability to obtain.  All responsive documents shall be produced as they are kept in the usual course of business, and shall be organized and labeled to correspond with the numbered paragraphs in the subpoena attachment.  In that regard, documents should be produced in a unitized manner, *i.e.*, delineated with staples or paper clips to identify the document boundaries.

Documents responsive to this subpoena may be in electronic or paper form.  Electronic documents such as email should be produced in accordance with the attached document entitled SEC Data Delivery Standards (the "Standards").  If you have any questions concerning the production of documents in an electronic format, please contact me as soon as possible but in any event before producing documents.  **All electronic documents responsive to the document subpoena, including all metadata, must also be secured and retained in their native software format and stored in a safe place.**  The staff may later request or require that you produce the native format.

For documents in paper format, you may send the originals, or, if you prefer, you may send copies of the originals.  The Commission cannot reimburse you for the copying costs.  If you are sending copies, the staff requests that you scan (rather than photocopy) hard copy documents and produce them in an electronic format consistent with the Standards.  Alternatively, you may send us photocopies of the documents in paper format.  **If you choose to send copies, you <u>must</u> secure and retain the originals and store them in a safe place.**  The staff may later request or require that you produce the originals.

Whether you scan or photocopy documents, the copies must be identical to the originals, including even faint marks or print.  Also, please note that if copies of a document differ in any way, they are considered separate documents and you must send each one.  For example, if you have two copies of the same letter, but only one of them has handwritten notes on it, you must send both the clean copy and the one with notes.

If you <u>do</u> send us scanned or photocopied documents, please put an identifying notation on each page of each document to indicate that you produced it, and number the pages of all the documents submitted.  (For example, if Jane Doe sends documents to the staff, she may number the pages JD-1, JD-2, JD-3, etc., in a blank corner of the documents.)  Please make sure the notation and number do not conceal any writing or marking on the document.  If you send us originals, please do not add any identifying notations.

In producing a photocopy of an original document that contains post-it(s), notation flag(s), or other removable markings or attachments which may conceal all or a portion of the markings contained in the original document, photocopies of the original document both with and without the relevant post-it(s), notation flag(s), or removable markings or attachments should be produced.

*Do I need to send anything else?*

You should enclose a list briefly describing each item you send.  The list should state to which numbered paragraph(s) in the subpoena attachment each item responds.  A copy of the subpoena should be included with the documents that are produced.

Passwords for documents, files, compressed archives, and encrypted media should be provided separately either via email addressed to <u>ENF-CPU@sec.gov</u>, or in a separate cover letter mailed separately from the data. **Password correspondence should reference case number, case name and requesting SEC staff member.**

Please include a cover letter stating whether you believe you have met your obligations under the subpoena by searching carefully and thoroughly for everything called for by the

subpoena, and sending it all to us. **Correspondence should reference case number, case name and requesting SEC staff member.**

Please also provide a narrative description describing what you did to identify and collect documents responsive to the subpoena.  At a minimum, the narrative should describe:

- who searched for documents;

- who reviewed documents found to determine whether they were responsive;

- what sources were searched (e.g., computer files, CDs, DVDs, thumb drives, flash drives, online storage media, hard copy files, diaries, datebooks, planners, filing cabinets, home office, work office, voice mails, home email, webmail, work email, backup tapes or other media);

- what third parties, if any, were contacted to obtain responsive documents (e.g., phone companies for phone records, brokerage firms for brokerage records); and

- where the original electronic and hardcopy documents are maintained and by whom.

For any documents that qualify as records of regularly conducted activities under Federal Rule of Evidence 902(11), please complete a business records certification (a sample of which is enclosed) and return it with the document production.

*What if I do not send everything described in the attachment to the subpoena?*

The subpoena requires you to send <u>all</u> the materials described in it.  If, for any reason – including a claim of attorney-client privilege – you do not produce something called for by the subpoena, you should submit a list of what you are not producing.  The list should describe each item separately, noting:

- its author(s);

- its date;

- its subject matter;

- the name of the person who has the item now, or the last person known to have it;

- the names of everyone who ever had the item or a copy of it, and the names of everyone who was told the item's contents;

- the reason you did not produce the item; and

- the specific request in the subpoena to which the document relates.

If you withhold anything on the basis of a claim of attorney-client privilege or attorney work product protection, you should identify the attorney and client involved.  If you withhold anything on the basis of the work product doctrine, you should also identify the litigation in anticipation of which the document was prepared.

If documents responsive to this subpoena no longer exist because they have been lost, discarded, or otherwise destroyed, you should identify such documents and give the date on which they were lost, discarded or destroyed.

*Where should I send the materials?*

Please send the materials to:

> ENF-CPU (U.S. Securities & Exchange Commission)
> 14420 ALBEMARLE POINT PL
> Suite 102
> CHANTILLY, VA 20151-1750

For smaller electronic productions under 10MB in size, the materials may be emailed to the following email address:  ENF-CPU@sec.gov.

## Testifying

*Where and when do I testify?*

The subpoena requires you to come to the Commission's offices at 950 East Paces Ferry Road NE, Suite 900, Atlanta, Georgia 30326 at 9:30AM ET on March 22, 2023 to testify under oath in the matter identified on the subpoena.

A background questionnaire is also enclosed.  During your testimony, the staff intends to ask background questions concerning, among other things, your residences, telephone numbers, education and employment.  To expedite that part of the testimony, we request that you complete the enclosed questionnaire on a voluntary basis and provide it to the staff prior to your testimony.

## Other Important Information

*May I have a lawyer help me respond to the subpoena?*

Yes.  You have the right to consult with and be represented by your own lawyer in this matter.  Your lawyer may also advise and accompany you when you testify.  We cannot give you legal advice.

*What will the Commission do with the materials I send and/or the testimony I provide?*

The enclosed SEC Form 1662 explains how we may use the information you provide to the Commission.  This form also has other important information for you.  Please read it carefully.

*Has the Commission determined that anyone has done anything wrong?*

This investigation is a non-public, fact-finding inquiry.  We are trying to determine whether there have been any violations of the federal securities laws.  The investigation and the subpoena do not mean that we have concluded that you or anyone else has violated the law.

Also, the investigation does not mean that we have a negative opinion of any person, entity or security.

*Important Policy Concerning Settlements*

Please note that, in any matter in which enforcement action is ultimately deemed to be warranted, the Division of Enforcement will not recommend any settlement to the Commission unless the party wishing to settle certifies, under penalty of perjury, that all documents responsive to Commission subpoenas and formal and informal document requests in this matter have been produced.

*I have read this letter, the subpoena, and the SEC Form 1662, but I still have questions. What should I do?*

If you have any other questions, you may call me at 404-842-7643. If you are represented by a lawyer, you should have your lawyer contact me.

Sincerely,

Kyle A. Bradley
Senior Counsel
Division of Enforcement


Enclosures:      Subpoena and Attachment
                 SEC Data Delivery Standards
                 SEC Form 1662
                 Background Questionnaire
                 Business Records Certification



# SUBPOENA

# UNITED STATES OF AMERICA
## SECURITIES AND EXCHANGE COMMISSION

**In the Matter of South Bay Acquisitions, LLC (A-04043)**

To:     John Matson
        534 23rd Street
        Manhattan Beach, CA  90266

---

☒     **YOU MUST PRODUCE** everything specified in the Attachment to this subpoena to officers of the Securities and Exchange Commission, at the place, date and time specified below:

      ENF-CPU, U.S. Securities and Exchange Commission, 14420 Albemarle Point Pl, Suite 102, Chantilly, VA 20151-1750, no later than February 8, 2023 at 9:30 a.m.

---

☒     **YOU MUST TESTIFY** before officers of the Securities and Exchange Commission, at the place, date and time specified below:

      Securities and Exchange Commission, Atlanta Regional Office, 950 East Paces Ferry Road NE, Suite 900, Atlanta, Georgia  30326, March 22, 2023 at 9:30AM ET.

---

### FEDERAL LAW REQUIRES YOU TO COMPLY WITH THIS SUBPOENA.
If you do not comply with this subpoena, the SEC may bring an action in Federal Court to enforce this subpoena. Failure to comply with a court order enforcing this subpoena may result in the court imposing a fine, imprisonment, or both.

By:    _Kyle Bradley_____     Date:     ___01/25/2023___
       Kyle A. Bradley, Senior Counsel
       U.S. Securities and Exchange Commission
       950 E. Paces Ferry Road NE, Suite 900
       Atlanta, Georgia  30326

I am an officer of the U.S. Securities and Exchange Commission authorized to issue subpoenas in this matter.  The Securities and Exchange Commission has issued a formal order authorizing this investigation under: Section 20(a) of the Securities Act of 1933, Section 21(a) of the Securities Exchange Act of 1934, and Section 209(a) of the Investment Advisers Act of 1940.

---

NOTICE TO WITNESS:     If you claim a witness fee or mileage, submit this subpoena with the claim voucher.

**SUBPOENA ATTACHMENT FOR JOHN MATSON**
**January 25, 2023**
<u>In the Matter of South Bay Acquisitions, LLC (A-04043)</u>

**A.**   <u>**Definitions**</u>

As used in this subpoena, the words and phrases listed below shall have the following meanings:

1.   "SBA" means the entity doing business under the name "South Bay Acquisitions, LLC" including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

2.   "Person" means a natural person, firm, association, organization, partnership, business, trust, corporation, bank or any other private or public entity.

3.   A "Representative" of a Person means any present or former family members, officers, executives, partners, joint-venturers, directors, trustees, employees, consultants, accountants, attorneys, agents, or any other representative acting or purporting to act on behalf of the Person.

4.   "Relevant Investors" means any brokerage or advisory client or any other person or entity that was solicited to or invested in SBA.  This includes any debt or equity investments.

5.   "Bank Account" means any account held at a bank, savings and loan, credit union, or similar financial institution.

6.   "Financial Account" means any account held at a brokerage firm, Bank Account, or similar financial institution.

7.   "Document" shall include, but is not limited to, any written, printed, or typed matter including, but not limited to all drafts and copies bearing notations or marks not found in the original, letters and correspondence, interoffice communications, slips, tickets, records, worksheets, financial records, accounting documents, bookkeeping documents, memoranda, reports, manuals, telephone logs, telegrams, facsimiles, messages of any type, telephone messages, voice mails, tape recordings, notices, instructions, minutes, summaries, notes of meetings, file folder markings, and any other organizational indicia, purchase orders, information recorded by photographic process, including microfilm and microfiche, computer printouts, spreadsheets, and other electronically stored information, including but not limited to writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations that are stored in any medium from which information can be retrieved, obtained, manipulated, or translated.

8.   "Communication" means any correspondence, contact, discussion, e-mail, instant message, or any other kind of oral or written exchange or transmission of

1

information (in the form of facts, ideas, inquiries, or otherwise) and any response thereto between two or more Persons or entities, including, without limitation, all telephone conversations, face-to-face meetings or conversations, internal or external discussions, or exchanges of a Document or Documents.

9.    "Concerning" means directly or indirectly, in whole or in part, describing, constituting, evidencing, recording, evaluating, substantiating, concerning, referring to, alluding to, in connection with, commenting on, relating to, regarding, discussing, showing, analyzing or reflecting.

10.    An "Agreement" means any actual or contemplated (i) written or oral Agreement; (ii) term or provision of such Agreement; or (iii) amendment of any nature or termination of such Agreement.  A request for any Agreement among or between specified parties includes a request for all Documents Concerning (i) any actual or contemplated Agreement among or between such parties, whether or not such Agreement included any other Person; (ii) the drafting or negotiation of any such Agreement; (iii) any actual or contemplated demand, request or application for any such Agreement, and any response thereto; and (iv) any actual or contemplated objection or refusal to enter into any such Agreement, and any response thereto.

11.    The term "Reviewed" means examined, assessed, considered, analyzed or evaluated.

12.    The terms "you" and "your" means the Person or entity to whom this subpoena was issued.

13.    To the extent necessary to bring within the scope of this subpoena any information or Documents that might otherwise be construed to be outside its scope:

   a.    the word "or" means "and/or";
   b.    the word "and" means "and/or";
   c.    the functional words "each," "every" "any" and "all" shall each be deemed to include each of the other functional words;
   d.    the masculine gender includes the female gender and the female gender includes the masculine gender; and
   e.    the singular includes the plural and the plural includes the singular.

## B.    **Instructions**

1.    Unless otherwise specified, the subpoena calls for production of the original Documents and all copies and drafts of same.  Documents responsive to this subpoena may be in electronic or paper form.  Electronic Documents such as email should be produced in accordance with the attached Document entitled SEC Data Delivery Standards.  All electronic Documents responsive to the Document subpoena, including all metadata, should also be produced in their native software format.

2.      For Documents in paper format, you may send the originals, or, if you prefer, you may send copies of the originals.  The Commission cannot reimburse you for the copying costs.  If you are sending copies, the staff requests that you scan (rather than photocopy) hard copy Documents and produce them in an electronic format consistent with the SEC Data Delivery Standards.  Alternatively, you may send us photocopies of the Documents in paper format.  If you choose to send copies, you <u>must</u> secure and retain the originals and store them in a safe place.  The staff may later request or require that you produce the originals.

3.      Whether you scan or photocopy Documents, the copies must be identical to the originals, including even faint marks or print.  Also, please note that if copies of a Document differ in any way, they are considered separate Documents and you must send each one.  For example, if you have two copies of the same letter, but only one of them has handwritten notes on it, you must send both the clean copy and the one with notes.

4.      In producing a photocopy of an original Document that contains post-it(s), notation flag(s), or other removable markings or attachments which may conceal all or a portion of the markings contained in the original Document, photocopies of the original Document both with and without the relevant post-it(s), notation flag(s), or removable markings or attachments should be produced.

5.      Documents should be produced as they are kept in the ordinary course of business or be organized and labeled to correspond with the categories in this request.  In that regard, Documents should be produced in a unitized manner, i.e.., delineated with staples or paper clips to identify the Document boundaries.

6.      Documents should be labeled with sequential numbering (bates-stamped).

7.      You must produce all Documents created during, or Concerning, the period January 1, 2014 to the present, unless otherwise specified.

8.      The scope of any given request should not be limited or narrowed based on the fact that it calls for Documents that are responsive to another request.

9.      You are not required to produce exact duplicates of any Documents that have been previously produced to the Securities and Exchange Commission staff **in connection with this matter**.  If you are not producing Documents based upon a prior production, please identify the responsive Documents that were previously produced.

10.      For any Documents that qualify as records of regularly conducted activities under Federal Rule of Evidence 902(11), please complete a business records certification (a sample of which is enclosed) and return it with the Document production.

11.      This subpoena covers all Documents in or subject to your possession, custody or

control, including all Documents that are not in your immediate possession but that you have the ability to obtain, that are responsive, in whole or in part, to any of the individual requests set forth below.  If, for any reason – including a claim of attorney-client privilege – you do not produce something called for by the request, you should submit a list of what you are not producing.  The list should be produced as an Excel file and describe each item separately, noting:

    a.      its author(s);
    b.      its date;
    c.      its subject matter;
    d.      the name of the Person who has the item now, or the last Person known to have it;
    e.      the names of everyone who ever had the item or a copy of it, and the names of everyone who was told the item's contents;
    f.      the basis upon which you are not producing the responsive Document;
    g.      the specific request in the subpoena to which the Document relates;
    h.      the attorney(s) and the client(s) involved; and
    i.      in the case of the work product doctrine, the litigation for which the Document was prepared in anticipation.

12.    If Documents responsive to this subpoena no longer exist because they have been lost, discarded, or otherwise destroyed, you should identify such Documents and give the date on which they were lost, discarded or destroyed.

## C.    **Documents to be Produced**

1.    All Financial Account statements for accounts held in or for the benefit of you or for which you have signature authority.  This includes any jointly-held accounts;

2.    All Communications with any Relevant Investors Concerning SBA;

3.    All Agreements with any Relevant Investors including, but not limited to, investment advisory and brokerage agreements;

4.    All Documents including, but not limited to, investment, subscription, and promissory note agreements Concerning SBA;

5.    All Documents Concerning or evidencing any payments to Relevant Investors by you or SBA;

6.    All Documents Concerning or evidencing any payments to you by SBA;

7.    All Agreements between you and SBA; and

8.    All Communications between you and SBA.

## BACKGROUND QUESTIONNAIRE

**Please respond to the following questions in the space provided.  If you need additional space for any response, you may attach additional pieces of paper.**

Today's date:  _____

1.  What is your full name?
    _____

2.  Have you ever been known by any other name?  Yes __ No __

    If yes, list each such name and the period(s) in which you were known by that name.
    _____
    _____
    _____

3.  Date and Place of Birth?
    _____

4.  Country of Citizenship?
    _____

5.  Marital Status?  Married __ Divorced __ Single __

    If you have ever been married, state for each marriage: (i) the date(s) of the marriage; (ii) the name of your spouse; (iii) your spouse's birth name, if different; (iv) your spouse's age; and (v) your spouse's occupation.
    _____
    _____
    _____

6.  List the names, ages and occupations of your children, if any.
    _____
    _____
    _____

7.  List all residences you occupied at any time during the last five years, including vacation homes, beginning with your current residence.  For each residence, state the address, dates of residence, and all telephone numbers (including facsimile numbers) listed at that address.
    _____
    _____
    _____
    _____

Background Questionnaire
Page 2

8.  List all telephone numbers and telecommunication services that were in your name or
    that you regularly used at any time during the last five years.  Include all residential,
    business, cellular, credit card, and VOIP telephone numbers, including those listed in
    your response to question 7, and services such as GoogleVoice, Skype, video conference
    services.  For each telephone number, state the name(s) of the corresponding carrier(s)
    (*e.g.*, AT&T, Verizon, Vonage, Skype, etc.).

    _____
    _____
    _____

9.  List the universal resource locator (URL) for all websites or blogs that you established or
    for which you had the authority to control content, at any time during the last five years.
    For each website, state the name(s) of the domain name registrar (*e.g.* GoDaddy) through
    which the URL was obtained, the name(s) of all individuals or entities who provided web
    site hosting or design services, whether the website contained primarily business or
    personal information, and the time period in which it was active.

    _____
    _____
    _____

10. List all electronic mail addresses and social networking accounts (*e.g.* Facebook,
    LinkedIn, Twitter, Instagram, Flickr, and Google+) that were in your name or that you
    regularly used at any time during the last five years.  Include all personal, business and
    shared electronic mail addresses and social networking accounts.  For each electronic
    mail address and social networking account, state the name(s) of the corresponding
    internet service provider(s) (*e.g.*, Google, Yahoo, AOL, or your employer), whether the
    address was used primarily for business or personal correspondence, and the time period
    in which it was active.

    _____
    _____
    _____
    _____
    _____

11. List all usernames for instant messaging and similar electronic communication services
    (including, but not limited to, Bloomberg, Skype, whatsapp), other than those listed in
    your response to questions 8 through 10, that were in your name or that you regularly
    used at any time during the last five years.  Include all personal, business and shared
    addresses.  For each username, state the name(s) of the communication service provider
    (*e.g.*, Google, AOL, etc.), whether the address was used primarily for business or

Background Questionnaire
Page 3

personal correspondence, the time period in which it was active, and the name of the software application(s) (*e.g.*, GTalk, ICQ, MSN Messenger) you used to access it.

_____
_____
_____

12. List all internet message boards or discussion forums (including, but not limited to, Money Maker Group, PNQI Message Board, Investors Hub Daily) of which you were a member or on which you posted any messages at any time during the last five years.  For each message board or discussion forum, state the service provider and your member name or identification information.

_____
_____
_____

## PUBLICLY-HELD COMPANIES

13. Are you now, or have you ever been, an officer or director of any publicly-held company?  Yes __  No __

If yes, identify each such company, its CUSIP, and any exchange on which it is or was listed, and state your positions (including membership on any Board or management committees) and the dates you held each position.

_____
_____
_____
_____
_____
_____
_____

14. Are you now, or have you ever been, a beneficial owner, directly or indirectly, of five per cent or more of any class of equity securities of any publicly held company?  Yes __ No __

If yes, identify each such company, its CUSIP, and any exchange on which it is or was listed, and state the amount, percentage, and dates of your ownership.

_____
_____
_____

Background Questionnaire
Page 4

<u>PRIVATELY-HELD COMPANIES</u>

15.     Are you now, or have you ever been, a beneficial owner, directly or indirectly, of any privately-held company (*i.e.*, corporation, partnership, limited liability company or other corporate form)?  Yes___ No___

      If yes, identify each such company, including address and other contact information, and state your positions and the dates you held each position.

      _____
      _____
      _____

16.     Are you now, or have you ever been, a manager or a member of any privately-held company (*i.e.*, corporation, partnership, limited liability company or other corporate form)?  Yes___ No___

      If yes, identify each such company, including address and other contact information, and state your positions and the dates you held each position.

      _____
      _____
      _____

<u>SECURITIES ACCOUNTS</u>

17.    List all securities or brokerage accounts that you have held in your name, individually or jointly, at any time during the last five years.  Include all foreign accounts.  For each such account, identify: (i) the brokerage firm; (ii) the location of the branch where your account is or was held; (iii) your broker; (iv) the type of account (*i.e.*, cash, margin or IRA); (v) the account number; and (vi) whether any person has ever held discretionary authority or power of attorney over the account; if so, name such person(s).

      _____
      _____
      _____
      _____
      _____

18.    List all securities or brokerage accounts (including foreign accounts), other than those listed in your answer to question 17, in which you had any direct or indirect beneficial

Background Questionnaire
Page 5

interest at any time during the last five years.  For each such account, provide the
information requested by question 17.

_____
_____
_____
_____
_____

19. List all securities or brokerage accounts (including foreign accounts), other than those
listed in your answer to question 17 or 18, over which you had any control at any time
during the last five years.  For each such account, provide the information requested by
question 17.

_____
_____
_____
_____
_____

## BANK ACCOUNTS

20. List all accounts you have held in your name at any financial institution (*i.e.*, bank, thrift,
or credit union) at any time during the last five years.  Include all foreign accounts.  For
each such account, identify: (i) the financial institution; (ii) the address of the branch at
which your account is or was held; (iii) the type of account (*i.e.*, checking, savings,
money market or IRA); (iv) the account number; and (v) whether any person has ever had
discretionary authority or power of attorney over the account; if so, name such person(s).

_____
_____
_____
_____
_____

21. List all accounts at financial institutions (including foreign accounts), other than those
listed in your answer to question 20, in which you had any direct or indirect beneficial
interest at any time during the last five years.  For each such account, provide the
information requested by question 20.

_____
_____
_____
_____
_____

Background Questionnaire
Page 6

22. List all accounts at financial institutions (including foreign accounts), other than those listed in your answer to question 20 or 21, over which you had any control at any time during the last five years.  For each such account, provide the information requested by question 20.

_____
_____
_____
_____
_____
_____

23. List any other accounts (including foreign accounts), other than those listed in your answers to questions 20 through 22, that were held in your name, in which you had any direct or indirect beneficial interest, or over which you had any control, that you have used to transfer funds in the last five years, including, but not limited to, PayPal accounts. For each such account, provide the information requested by question 20.

_____
_____
_____

PRIOR PROCEEDINGS

24. Have you ever testified in any proceeding conducted by the staff of the Securities and Exchange Commission, a U.S. or foreign federal or state agency, a U.S. or foreign federal or state court, a stock exchange, the Financial Industry Regulatory Authority ("FINRA") or any other self-regulatory organization ("SRO"), or in any arbitration proceeding related to securities transactions?  Yes __  No __

If yes, for each such proceeding, identify: (i) the title of the proceeding; (ii) the organization or agency; and (iii) the date(s) on which you testified.

_____
_____
_____
_____

25. Have you ever been deposed in connection with any court proceeding?  Yes __  No __

If yes, for each such proceeding, identify: (i) the title of the proceeding, and (ii) the date(s) on which you were deposed.

_____
_____

Background Questionnaire
Page 7

_____
_____

26. Have you ever been named as a defendant or respondent in any action or proceeding brought by the SEC, any other U.S. or foreign federal agency, a state securities agency, FINRA, an SRO, or any exchange?  Yes __ No __

   If yes, for each such proceeding, identify: (i) the title of the proceeding; (ii) the agency or tribunal; (iii) the substance of the allegations; (iv) the outcome of the proceeding; and (v) the date of the outcome.

   _____
   _____
   _____
   _____

27. Have you ever been a defendant in any action (other than those listed in response to question 26) alleging violations of the federal securities laws?  Yes __ No __

   If yes, for each such proceeding, identify: (i) the title of the proceeding; (ii) the court or tribunal; (iii) the outcome of the proceeding; and (iv) the date of the outcome.

   _____
   _____
   _____
   _____

28. Have you ever been a defendant in any criminal proceeding other than one involving a minor traffic offense?  Yes __ No __

   If yes, for each such proceeding, identify: (i) the title of the proceeding; (ii) the court or tribunal; (iii) the outcome of the proceeding; and (iv) the date of the outcome.

   _____
   _____
   _____
   _____

Background Questionnaire
Page 8

<u>EDUCATIONAL HISTORY</u>

29. Provide the requested information about each educational institution that you have attended, beginning with the most recent and working backward to the date that you completed high school.

Name of School
_____

| City | State | Country | Zip Code |
|---|---|---|---|

Dates of Attendance: Month/Year to Month/Year          Degree/Major          Month/Year of Degree

Name of School
_____

| City | State | Country | Zip Code |
|---|---|---|---|

Dates of Attendance: Month/Year to Month/Year          Degree/Major          Month/Year of Degree

Name of School
_____

| City | State | Country | Zip Code |
|---|---|---|---|

Dates of Attendance: Month/Year to Month/Year          Degree/Major          Month/Year of Degree

Name of School
_____

| City | State | Country | Zip Code |
|---|---|---|---|

Dates of Attendance: Month/Year to Month/Year          Degree/Major          Month/Year of Degree

30. Other than courses taken in connection with institutions listed in response to question 29, list any securities, accounting or business related courses taken since high school.  For each such course, identify the date that the course was completed and the name of the institution or organization that offered the course.

_____
_____
_____
_____

Background Questionnaire
Page 9

PROFESSIONAL LICENSES/CLUBS

31. Do you hold, or have you ever held, any professional license?  Yes__  No __

    If yes, for each such license, identify: (i) the license number or attorney bar number;
    (ii) the licensing organization; (iii) the date the license was awarded; (iv) the date such
    license terminated, if applicable; (v) the date(s) of any disciplinary proceeding(s) against
    you: and (vi) the outcome of any such disciplinary proceeding (*e.g.*, reprimand,
    suspension, revocation).

    _____
    _____
    _____
    _____

32. Are you, or have you ever been, a member of any professional or business club or
    organization?   Yes __  No __

    If yes, list for each: (i) the name of the club or organization; (ii) its address; (iii) the
    date(s) of your membership; and (iv) service in any governance roles (*e.g.*, board
    member, committee member, etc.) including title and dates of service.

    _____
    _____
    _____
    _____

33. Are you, or have you been in the last five years, a member of any social clubs, charities
    or nonprofit organizations?   Yes ___  No ___

    If yes, list for each: (i) the name of the social club, charity or nonprofit organization;
    (ii) its address; (iii) the date(s) of your membership; and (iv) service in any governance
    roles (*e.g.*, board member, committee member, etc.) including title and dates of service..

    _____
    _____
    _____
    _____

EMPLOYMENT HISTORY

34. Are you, or have you ever been, an employee of a broker, dealer, investment adviser,
    investment company, municipal securities dealer, municipal advisor, transfer agent, or

Background Questionnaire
Page 10

nationally recognized statistical rating organization?   Yes ____  No ____

If yes, list for each: (i) the jurisdiction of the entity; (ii) your CRD number; (iii) the entity's CRD number; (iv) the entity's SEC File number; (v) the entity's CUSIP number; and (vi) any foreign registration information similar to the foregoing.

_____

_____

_____

_____

_____

_____

_____

35. State your employment activities, beginning with the present and working backward to the date that you completed high school and attach a recent copy of your resume or curriculum vitae.

Employer's Name/Self-Employment
_____

| Employer's Street Address | | | Telephone Number |
|---|---|---|---|
| City | State | Country | Zip Code |
| Title | Dates of Employment | | Supervisor |
| Title | Dates of Employment | | Supervisor |
| Title | Dates of Employment | | Supervisor |
| Title | Dates of Employment | | Supervisor |

Employer's Name/Self-Employment

| Employer's Street Address | | | Telephone Number |
|---|---|---|---|
| City | State | Country | Zip Code |
| Title | Dates of Employment | | Supervisor |
| Title | Dates of Employment | | Supervisor |
| Title | Dates of Employment | | Supervisor |
| Title | Dates of Employment | | Supervisor |

Background Questionnaire
Page 11

| Employer's Name/Self-Employment | | | |
|---|---|---|---|

| Employer's Street Address | | Telephone Number | |
|---|---|---|---|

| City | State | Country | Zip Code |
|---|---|---|---|

| Title | Dates of Employment | | Supervisor |
|---|---|---|---|
| Title | Dates of Employment | | Supervisor |
| Title | Dates of Employment | | Supervisor |
| Title | Dates of Employment | | Supervisor |

| Employer's Name/Self-Employment | | | |
|---|---|---|---|

| Employer's Street Address | | Telephone Number | |
|---|---|---|---|

| City | State | Country | Zip Code |
|---|---|---|---|

| Title | Dates of Employment | | Supervisor |
|---|---|---|---|
| Title | Dates of Employment | | Supervisor |
| Title | Dates of Employment | | Supervisor |
| Title | Dates of Employment | | Supervisor |

| Employer's Name/Self-Employment | | | |
|---|---|---|---|

| Employer's Street Address | | Telephone Number | |
|---|---|---|---|

| City | State | Country | Zip Code |
|---|---|---|---|

| Title | Dates of Employment | | Supervisor |
|---|---|---|---|
| Title | Dates of Employment | | Supervisor |
| Title | Dates of Employment | | Supervisor |
| Title | Dates of Employment | | Supervisor |

Background Questionnaire
Page 12

| Employer's Name/Self-Employment | | | |
|---|---|---|---|
| Employer's Street Address | | | Telephone Number |
| City | State | Country | Zip Code |
| Title | Dates of Employment | | Supervisor |
| Title | Dates of Employment | | Supervisor |
| Title | Dates of Employment | | Supervisor |
| Title | Dates of Employment | | Supervisor |

## CONTINUE ON ADDITIONAL SHEETS IF NECESSARY

# SECURITIES AND EXCHANGE COMMISSION
## Washington, D.C. 20549

## Supplemental Information for Persons Requested to Supply Information Voluntarily or Directed to Supply Information Pursuant to a Commission Subpoena

### A. False Statements and Documents

Section 1001 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> [W]hoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully--
> (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
> (2) makes any materially false, fictitious, or fraudulent statement or representation; or
> (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry.

Section 1519 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States . . ., or in relation to or contemplation of any such matter.

### B. Testimony

If your testimony is taken, you should be aware of the following:

1. *Record*.  Your testimony will be transcribed by a reporter. If you desire to go off the record, please indicate this to the Commission employee taking your testimony, who will determine whether to grant your request. The reporter will not go off the record at your, or your counsel's, direction.

2. *Counsel*.  You have the right to be accompanied, represented and advised by counsel of your choice. Your counsel may advise you before, during and after your testimony; question you briefly at the conclusion of your testimony to clarify any of the answers you give during testimony; and make summary notes during your testimony solely for your use. If you are accompanied by counsel, you may consult privately.

If you are not accompanied by counsel, please advise the Commission employee taking your testimony if, during the testimony, you desire to be accompanied, represented and advised by counsel. Your testimony will be adjourned once to afford you the opportunity to arrange to be so accompanied, represented or advised.

You may be represented by counsel who also represents other persons involved in the Commission's investigation. This multiple representation, however, presents a potential conflict of interest if one client's interests are or may be adverse to another's. If you are represented by counsel who also represents other persons involved in the investigation, the Commission will assume that you and counsel have discussed and resolved all issues concerning possible conflicts of interest. The choice of counsel, and the responsibility for that choice, is yours.

3. *Transcript Availability*.  Rule 6 of the Commission's Rules Relating to Investigations, 17 CFR 203.6, states:

> A person who has submitted documentary evidence or testimony in a formal investigative proceeding shall be entitled, upon written request, to procure a copy of his documentary evidence or a transcript of his testimony on payment of the appropriate fees: *Provided, however*, That in a nonpublic formal investigative proceeding the Commission may for good cause deny such request. In any event, any witness, upon proper identification, shall have the right to inspect the official transcript of the witness' own testimony.

If you wish to purchase a copy of the transcript of your testimony, the reporter will provide you with a copy of the appropriate form. Persons requested to supply information voluntarily will be allowed the rights provided by this rule.

4. *Perjury*.  Section 1621 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> Whoever--

> (1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare,

SEC 1662 (09-21)

> depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or

> (2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true.

5.    *Fifth Amendment and Voluntary Testimony*. Information you give may be used against you in any federal, state, local or foreign administrative, civil or criminal proceeding brought by the Commission or any other agency.

You may refuse, in accordance with the rights guaranteed to you by the Fifth Amendment to the Constitution of the United States, to give any information that may tend to incriminate you.

If your testimony is not pursuant to subpoena, your appearance to testify is voluntary, you need not answer any question, and you may leave whenever you wish. Your cooperation is, however, appreciated.

6.    *Formal Order Availability*. If the Commission has issued a formal order of investigation, it will be shown to you during your testimony, at your request. If you desire a copy of the formal order, please make your request in writing.

## C.  Submissions and Settlements

Rule 5(c) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(c), states:

> Persons who become involved in . . . investigations may, on their own initiative, submit a written statement to the Commission setting forth their interests and position in regard to the subject matter of the investigation. Upon request, the staff, in its discretion, may advise such persons of the general nature of the investigation, including the indicated violations as they pertain to them, and the amount of time that may be available for preparing and submitting a statement prior to the presentation of a staff recommendation to the Commission for the commencement of an administrative or injunction proceeding. Submissions by interested persons should be forwarded to the appropriate Division Director or Regional Director with a copy to the staff members conducting the investigation and should be clearly referenced to the specific investigation to which they relate. In the event a recommendation for the commencement of an enforcement proceeding is presented by the staff, any submissions by interested persons will be forwarded to the Commission in conjunction with the staff memorandum.

The staff of the Commission routinely seeks to introduce submissions made pursuant to Rule 5(c) as evidence in Commission enforcement proceedings, when the staff deems appropriate.

Rule 5(f) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(f), states:

> In the course of the Commission's investigations, civil lawsuits, and administrative proceedings, the staff, with appropriate authorization, may discuss with persons involved the disposition of such matters by consent, by settlement, or in some other manner. It is the policy of the Commission, however, that the disposition of any such matter may not, expressly or impliedly, extend to any criminal charges that have been, or may be, brought against any such person or any recommendation with respect thereto. Accordingly, any person involved in an enforcement matter before the Commission who consents, or agrees to consent, to any judgment or order does so solely for the purpose of resolving the claims against him in that investigative, civil, or administrative matter and not for the purpose of resolving any criminal charges that have been, or might be, brought against him. This policy reflects the fact that neither the Commission nor its staff has the authority or responsibility for instituting, conducting, settling, or otherwise disposing of criminal proceedings. That authority and responsibility are vested in the Attorney General and representatives of the Department of Justice.

## D.  Freedom of Information Act

The Freedom of Information Act, 5 U.S.C. 552 (the "FOIA"), generally provides for disclosure of information to the public. Rule 83 of the Commission's Rules on Information and Requests, 17 CFR 200.83, provides a procedure by which a person can make a written request that information submitted to the Commission not be disclosed under the FOIA. That rule states that no determination as to the validity of such a request will be made until a request for disclosure of the information under the FOIA is received. Accordingly, no response to a request that information not be disclosed under the FOIA is necessary or will be given until a request for disclosure under the FOIA is received. If you desire an acknowledgment of receipt of your written request that information not be disclosed under the FOIA, please provide a duplicate request, together with a stamped, self-addressed envelope.

### E.  Authority for Solicitation of Information

*Persons Directed to Supply Information Pursuant to Subpoena*. The authority for requiring production of information is set forth in the subpoena. Disclosure of the information to the Commission is mandatory, subject to the valid assertion of any legal right or privilege you might have.

*Persons Requested to Supply Information Voluntarily*. One or more of the following provisions authorizes the Commission to solicit the information requested: Sections 19 and/or 20 of the Securities Act of 1933; Section 21 of the Securities Exchange Act of 1934; Section 321 of the Trust Indenture Act of 1939; Section 42 of the Investment Company Act of 1940; Section 209 of the Investment Advisers Act of 1940; and 17 CFR 202.5. Disclosure of the requested information to the Commission is voluntary on your part.

### F.  Effect of Not Supplying Information

*Persons Directed to Supply Information Pursuant to Subpoena*. If you fail to comply with the subpoena, the Commission may seek a court order requiring you to do so. If such an order is obtained and you thereafter fail to supply the information, you may be subject to civil and/or criminal sanctions for contempt of court. In addition, Section 21(c) of the Securities Exchange Act of 1934, Section 42(c) of the Investment Company Act of 1940, and Section 209(c) of the Investment Advisers Act of 1940 provide that fines and terms of imprisonment may be imposed upon any person who shall, without just cause, fail or refuse to attend and testify or to answer any lawful inquiry, or to produce books, papers, correspondence, memoranda, and other records in compliance with the subpoena.

*Persons Requested to Supply Information Voluntarily.* There are no direct sanctions and thus no direct effects for failing to provide all or any part of the requested information.

### G.  Principal Uses of Information

The Commission's principal purpose in soliciting the information is to gather facts in order to determine whether any person has violated, is violating, or is about to violate any provision of the federal securities laws or rules for which the Commission has enforcement authority, such as rules of securities exchanges and the rules of the Municipal Securities Rulemaking Board. Facts developed may, however, constitute violations of other laws or rules. Information provided may be used in Commission and other agency enforcement proceedings. Unless the Commission or its staff explicitly agrees to the contrary in writing, you should not assume that the Commission or its staff acquiesces in, accedes to, or concurs or agrees with, any position, condition, request, reservation of right, understanding, or any other statement that purports, or may be deemed, to be or to reflect a limitation upon the Commission's receipt, use, disposition, transfer, or retention, in accordance with applicable law, of information provided.

### H.  Routine Uses of Information

The Commission often makes its files available to other governmental agencies, particularly United States Attorneys and state prosecutors. There is a likelihood that information supplied by you will be made available to such agencies where appropriate. Whether or not the Commission makes its files available to other governmental agencies is, in general, a confidential matter between the Commission and such other governmental agencies.

Set forth below is a list of the routine uses which may be made of the information furnished.

1. To appropriate agencies, entities, and persons when (1) the SEC suspects or has confirmed that there has been a breach of the system of records, (2) the SEC has determined that as a result of the suspected or confirmed breach there is a risk of harm to individuals, the SEC (including its information systems, programs, and operations), the Federal Government, or national security; and (3) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the SEC's efforts to respond to the suspected or confirmed breach or to prevent, minimize, or remedy such harm.

2. To other Federal, state, local, or foreign law enforcement agencies; securities self-regulatory organizations; and foreign financial regulatory authorities to assist in or coordinate regulatory or law enforcement activities with the SEC.

3. To national securities exchanges and national securities associations that are registered with the SEC, the Municipal Securities Rulemaking Board; the Securities Investor Protection Corporation; the Public Company Accounting Oversight Board; the Federal banking authorities, including, but not limited to, the Board of Governors of the Federal Reserve System, the Comptroller of the Currency, and the Federal Deposit Insurance Corporation; state securities regulatory agencies or organizations; or regulatory authorities of a foreign government in connection with their regulatory or enforcement responsibilities.

4. By SEC personnel for purposes of investigating possible violations of, or to conduct investigations authorized by, the Federal securities laws.

5. In any proceeding where the Federal securities laws are in issue or in which the Commission, or past or present members of its staff, is a party or otherwise involved in an official capacity.

6. In connection with proceedings by the Commission pursuant to Rule 102(e) of its Rules of Practice, 17 CFR 201.102(e).

7. To a bar association, state accountancy board, or other Federal, state, local, or foreign licensing or oversight authority; or professional association or self-regulatory authority to the extent that it performs similar functions (including the Public Company Accounting Oversight Board) for investigations or possible disciplinary action.

8. To a Federal, state, local, tribal, foreign, or international agency, if necessary to obtain information relevant to the SEC's decision concerning the hiring or retention of an employee; the issuance of a security clearance; the letting of a contract; or the issuance of a license, grant, or other benefit.

9. To a Federal, state, local, tribal, foreign, or international agency in response to its request for information concerning the hiring or retention of an employee; the issuance of a security clearance; the reporting of an investigation of an employee; the letting of a contract; or the issuance of a license, grant, or other benefit by the requesting agency, to the extent that the information is relevant and necessary to the requesting agency's decision on the matter.

10. To produce summary descriptive statistics and analytical studies, as a data source for management information, in support of the function for which the records are collected and maintained or for related personnel management functions or manpower studies; may also be used to respond to general requests for statistical information (without personal identification of individuals) under the Freedom of Information Act.

11. To any trustee, receiver, master, special counsel, or other individual or entity that is appointed by a court of competent jurisdiction, or as a result of an agreement between the parties in connection with litigation or administrative proceedings involving allegations of violations of the Federal securities laws (as defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)) or pursuant to the Commission's Rules of Practice, 17 CFR 201.100 through 900 or the Commission's Rules of Fair Fund and Disgorgement Plans, 17 CFR 201.1100 through 1106, or otherwise, where such trustee, receiver, master, special counsel, or other individual or entity is specifically designated to perform particular functions with respect to, or as a result of, the pending action or proceeding or in connection with the administration and enforcement by the Commission of the Federal securities laws or the Commission's Rules of Practice or the Rules of Fair Fund and Disgorgement Plans.

12. To any persons during the course of any inquiry, examination, or investigation conducted by the SEC's staff, or in connection with civil litigation, if the staff has reason to believe that the person to whom the record is disclosed may have further information about the matters related therein, and those matters appeared to be relevant at the time to the subject matter of the inquiry.

13. To interns, grantees, experts, contractors, and others who have been engaged by the Commission to assist in the performance of a service related to this system of records and who need access to the records for the purpose of assisting the Commission in the efficient administration of its programs, including by performing clerical, stenographic, or data analysis functions, or by reproduction of records by electronic or other means. Recipients of these records shall be required to comply with the requirements of the Privacy Act of 1974, as amended, 5 U.S.C. 552a.

14. In reports published by the Commission pursuant to authority granted in the Federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), which authority shall include, but not be limited to, section 21(a) of the Securities Exchange Act of 1934, 15 U.S.C. 78u(a)).

15. To members of advisory committees that are created by the Commission or by Congress to render advice and recommendations to the Commission or to Congress, to be used solely in connection with their official designated functions.

16. To any person who is or has agreed to be subject to the Commission's Rules of Conduct, 17 CFR 200.735-1 through 200.735-18, and who assists in the investigation by the Commission of possible violations of the Federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), in the preparation or conduct of enforcement actions brought by the Commission for such violations, or otherwise in connection with the Commission's enforcement or regulatory functions under the Federal securities laws.

17. To a Congressional office from the record of an individual in response to an inquiry from the Congressional office made at the request of that individual.

18. To members of Congress, the press, and the public in response to inquiries relating to particular Registrants and their activities, and other matters under the Commission's jurisdiction.

19. To prepare and publish information relating to violations of the Federal securities laws as provided in 15 U.S.C. 78c(a)(47)), as amended.

20. To respond to subpoenas in any litigation or other proceeding.

21. To a trustee in bankruptcy.

22. To any governmental agency, governmental or private collection agent, consumer reporting agency or commercial reporting agency, governmental or private employer of a debtor, or any other person, for collection,

including collection by administrative offset, Federal salary offset, tax refund offset, or administrative wage garnishment, of amounts owed as a result of Commission civil or administrative proceedings.

23. To another Federal agency or Federal entity, when the SEC determines that information from this system of records is reasonably necessary to assist the recipient agency or entity in (1) responding to a suspected or confirmed breach or (2) preventing, minimizing, or remedying the risk of harm to individuals, the recipient agency or entity (including its information systems, programs, and operations), the Federal Government, or national security, resulting from a suspected or confirmed breach.

\* \* \* \* \*

*Small Business Owners*: The SEC always welcomes comments on how it can better assist small businesses. If you would like more information, or have questions or comments about federal securities regulations as they affect small businesses, please contact the Office of Small Business Policy, in the SEC's Division of Corporation Finance, at 202-551-3460. If you would prefer to comment to someone outside of the SEC, you can contact the Small Business Regulatory Enforcement Ombudsman at http://www.sba.gov/ombudsman or toll free at 888-REG-FAIR. The Ombudsman's office receives comments from small businesses and annually evaluates federal agency enforcement activities for their responsiveness to the special needs of small business.



# U.S. Securities and Exchange Commission

## Data Delivery Standards

This document describes the technical requirements for paper and electronic document productions to the U.S. Securities and Exchange Commission (SEC). **_Any questions or proposed file formats other than those described below must be discussed with the legal and technical staff of the SEC Division of Enforcement prior to submission._**

General Instructions........................................................................................................................... 1

Delivery Formats .............................................................................................................................. 2

   I.  Imaged Productions................................................................................................................3

      1.  Images................................................................................................................... 3

      2.  Image Cross-Reference File ................................................................................. 3

      3.  Data File ............................................................................................................... 3

      4.  Text ...................................................................................................................... 3

      5.  Linked Native Files.............................................................................................. 3

   II.  Native File Productions without Load Files ........................................................................ 4

   III.  Adobe PDF File Productions ............................................................................................. 4

   IV.  Audio Files......................................................................................................................... 4

   V.  Video Files .......................................................................................................................... 4

   VI.  Electronic Trade and Bank Records ................................................................................... 4

   VII.  Electronic Phone Records ................................................................................................ 4

   VIII.  Audit Workpapers .......................................................................................................... 5

   IX.  Mobile Device Data ......................................................................................................... 5

**General Instructions**

The current mailing address for all physical productions sent to the SEC is:
**ENF-CPU (U.S. Securities & Exchange Commission), 14420 Albemarle Point Place, Suite 102, Chantilly, VA 20151-1750**

Electronic files must be produced in their native format, i.e. the format in which they are ordinarily used and maintained during the normal course of business. For example, an MS Excel file must be produced as an MS Excel file rather than an image of a spreadsheet. *(Note:  An Adobe PDF file is _not_ considered a native file unless the document was initially created as a PDF.)*

In the event produced files require the use of proprietary software not commonly found in the workplace, the SEC will explore other format options with the producing party.

The proposed use of file de-duplication methodologies or *computer-assisted review* or *technology-assisted review* (TAR) during the processing of documents must be discussed with and approved by the legal and technical staff of the Division of Enforcement (ENF). If your production will be de-duplicated it is vital that you 1) preserve any unique metadata associated with the duplicate files, for example, custodian name and file location and, 2) make that unique metadata part of your production to the SEC.

Rev 01/2023

General requirements for **ALL** document productions are:

1. A cover letter must be included with each production and should include the following information:
   a. Case number, case name and requesting SEC staff member name
   b. A list of each piece of media included in the production with its unique production volume number
   c. A list of custodians, identifying the Bates range for each custodian
   d. A list of redacted documents and the redaction reason
   e. The time zone in which the emails were standardized during conversion
   f. Whether the production contains native files produced from Mac operating system environments
2. Data can be produced on CD, DVD, thumb drive, etc., using the media requiring the least number of deliverables and labeled with the following:
   a. Case number
   b. Production date
   c. Producing party
   d. Bates range (if applicable)
3. All submissions must be organized by **custodian** unless otherwise instructed.
4. All document family groups, i.e. email attachments, embedded files, etc., should be produced together and children files should follow parent files sequentially in the Bates numbering.
5. All load-ready collections should include only one data load file and one image pointer file.
6. All load-ready text must be produced as separate document-level text files.
7. All load-ready collections should account for custodians in the custodian field.
8. All load-ready collections must provide the extracted contents of any container files to ensure all relevant files are produced as separate records.
9. Audio files should be separated from data files if both are included in the production.
10. Only alphanumeric characters and the underscore character are permitted in file names and folder names. Special characters are not permitted.
11. All electronic productions submitted on media must be produced using industry standard self-extracting encryption software.
12. The SEC uses 7zip to access compressed files. Note that the SEC **cannot** accept files that use AES-256 Jpeg or pkAES-256-Cert Deflate compression methods, even if the files are created with 7zip. If you have any questions or need additional information, please reach out to the requesting SEC staff member.
13. Electronic productions of 20 GB or less are strongly encouraged to be submitted via Secure File Transfer. All Secure File Transfers should be sent to the SEC Centralized Production Unit (ENF-CPU@sec.gov) with a CC to the requesting SEC staff member. If you do not have your own Secure File Transfer application, you may reach out to the requesting SEC staff member for a link to the SEC system in order to upload your production. If using the SEC Secure File Transfer system, you will NOT be able to CC individuals outside the SEC on your upload transmission. Note that the SEC **cannot** accept productions made using file sharing sites such as Google Drive, Microsoft Office 365 or Dropbox.
14. Productions containing BSA or SAR material must be encrypted. Secure File Transfer applications may be used to produce BSA or SAR material. BSA or SAR material should be segregated and appropriately marked as BSA or SAR, or should be produced separately from other case related records.
15. Passwords for electronic documents, files, compressed archives and encrypted media must be provided separately either via email or in a cover letter apart from the media.
16. All electronic productions should be produced free of computer viruses.
17. Before producing forensically collected images, parties should reach out to the requesting SEC staff member in order to discuss appropriate handling.
18. Before producing unique data sets (large sets of relational data, website reconstruction, chat room data, etc.), parties should reach out to the requesting SEC staff member in order to discuss an appropriate production format.
19. Additional technical descriptions can be found in the addendum to this document.

   **\*Please note that productions sent to the SEC via United States Postal Service are subject to Mail Irradiation, and as a result electronic productions may be damaged.\***

**Delivery Formats**

**I.   Imaged Productions**

The SEC prefers that all scanned paper and electronic file collections be produced in a structured format including industry standard load files, Bates numbered image files, native files and searchable document-level text files. Bates numbers should not contain spaces. Hyphens ( - ) and underscores ( _ ) are acceptable.

**1.   Images**

a.   Black and white images must be 300 DPI Group IV single-page TIFF files
b.   Color images must be produced in JPEG format
c.   File names cannot contain embedded spaces or special characters (including the comma)
d.   Folder names cannot contain embedded spaces or special characters (including the comma)
e.   All image files must have a unique file name, i.e. Bates number
f.   Images must be endorsed with sequential Bates numbers in the lower right corner of each image
g.   The number of image files per folder should not exceed 2,000 files
h.   Excel spreadsheets should have a placeholder image named by the Bates number of the file
i.   AUTOCAD/photograph files should be produced as a single page JPEG file

**2.   Image Cross-Reference File**

The image cross-reference file (.LOG or .OPT) links the images to the database records. It should be a comma-delimited file consisting of seven fields per line with a line in the cross-reference file for every image in the database with the following format:

*ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount*

**3.   Data File**

The data file (.DAT) contains all of the fielded information that will be loaded into the database.

a.   The first line of the .DAT file must be a header row identifying the field names
b.   The .DAT file must use the following *Concordance*® default delimiters:
Comma ¶ ASCII character (020)
Quote þ ASCII character (254)
c.   If the .DAT file is produced in Unicode format it must contain the byte order marker
d.   Date fields should be provided in the format: mm/dd/yyyy
e.   Date and time fields must be two separate fields
f.   The time zone must be included in all time fields
g.   If the production includes imaged emails and attachments, the attachment fields must be included to preserve the parent/child relationship between an email and its attachments
h.   An OCRPATH field must be included to provide the file path and name of the extracted text file on the produced storage media.  The text file must be named after the FIRSTBATES.  Do not include the text in the .DAT file.
i.   For productions with native files, a LINK field must be included to provide the file path and name of the native file on the produced storage media. The native file must be named after the FIRSTBATES.
j.   BEGATTACH and ENDATTACH fields must be two separate fields
k.   A complete list of metadata fields is available in **Addendum A** to this document

**4.   Text**

Text must be produced as separate document-level text files, not as fields within the .DAT file. The text files must be named per the FIRSTBATES/Image Key and the full path to the text file (OCRPATH) should be included in the .DAT file. Text files may be in either ANSI or Unicode format, however, ALL text files must be in the same format within the same production. Note that productions containing text with foreign characters must produce text files in Unicode format to preserve the foreign characters. Text files must be in a separate folder, and the number of text files per folder should not exceed 2,000 files. There should be no special characters (including commas) in the folder names. For redacted documents, provide the full text for the redacted version.

**5.   Linked Native Files**

Copies of original email and native file documents/attachments must be included for all electronic productions.
a.   Native file documents must be named per the FIRSTBATES number
b.   The full path of the native file must be provided in the .DAT file for the LINK field
c.   The number of native files per folder should not exceed 2,000 files

**II.     Native File Production without Load Files**

With prior approval, native files may be produced without load files. Native file productions should not be Bates numbered. Native files must be produced as they are maintained in the normal course of business and organized by custodian-named file folders. Native email files (.PST or .MBOX) must be separated by custodian.

**III.    Adobe PDF File Production**

With prior approval, Adobe PDF files may be produced in native file format.

1.  All PDFs must be unitized at the document level, i.e., each PDF must represent a discrete document.
2.  PDF files should be produced in separate folders named by the custodian. The folders should not contain any special characters (including commas).
3.  All PDF files must contain embedded text that includes all discernible words within the document, not selected text or image only. This requires all layers of the PDF to be flattened first.
4.  If PDF files are Bates endorsed, the PDF files must be named by the Bates range.

**IV.    Audio Files**

Audio files from telephone recording systems must be produced in a format that is playable using Microsoft Windows Media Player™. Additionally, the call information (metadata) related to each audio recording MUST be provided. The metadata file must be produced in a delimited text format. Field names must be included in the first row of the text file. The metadata must include, at a minimum, the following fields:

1)  Caller Name:            Caller's name or account/identification number
2)  Originating Number:  Caller's phone number
3)  Called Party Name:   Called party's name
4)  Terminating Number: Called party's phone number
5)  Date:                      Date of call
6)  Time:                      Time of call
7)  Filename:                Filename of audio file

**V.     Video Files**

Video files must be produced in a format that is playable using Microsoft Windows Media Player™.

**VI.    Electronic Trade and Bank Records**

When producing electronic trade records, bank records, or financial statements, provide the files in one of the following formats:

1.  MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

2.  Delimited text file with header information detailing the field structure. The preferred delimiter is a vertical bar "|". If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

**VII.   Electronic Phone Records**

When producing an MS Excel spreadsheet for electronic phone records, provide the files in the following format:

1.  MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details (i.e. dates in a date format, numbers in an appropriate numerical format, and numbers with leading zeroes as text).
    a.  The metadata that must be included is outlined in **Addendum B** of this document. Each field of data must be loaded into a separate column. For example, Date and Start_Time must be produced in separate columns and not combined into a single column containing both pieces of information. Any fields of data that are provided in addition to those listed in **Addendum B** must also be loaded into separate columns.

## VIII. Audit Workpapers

The SEC prefers for workpapers to be produced in two formats: (1) With Bates numbers in accordance with the SEC Data Delivery Standards; and (2) in native format or if proprietary software was used, on a standalone laptop with the appropriate software loaded so that the workpapers may be reviewed as they would have been maintained in the ordinary course of business. The laptop must have printing capability, and when possible, the laptop should be configured to enable a Virtual Machine (VM) environment.

## IX. Mobile Device Data

Before producing any mobile device data (including but not limited to text messages and application data) parties should reach out to the requesting SEC staff member in order to discuss the appropriate production format.

Rev 01/2023

## ADDENDUM A

The metadata of electronic document collections should be extracted and provided in a .DAT file using the field definition and formatting described below:

| Field Name | Sample Data | Description |
|---|---|---|
| FIRSTBATES | EDC0000001 | First Bates number of native file document/email |
| LASTBATES | EDC0000001 | Last Bates number of native file document/email<br>**The LASTBATES field should be populated for single page documents/emails. |
| ATTACHRANGE | EDC0000001 - EDC0000015 | Bates number of the first page of the parent document to the Bates number of the last page of the last attachment "child" document |
| BEGATTACH | EDC0000001 | First Bates number of attachment range |
| ENDATTACH | EDC0000015 | Last Bates number of attachment range |
| PARENT_BATES | EDC0000001 | First Bates number of parent document/Email<br>**This PARENT_BATES field should be populated in each record representing an attachment "child" document |
| CHILD_BATES | EDC0000002; EDC0000014 | First Bates number of "child" attachment(s); can be more than one Bates number listed depending on the number of attachments<br>**The CHILD_BATES field should be populated in each record representing a "parent" document |
| CUSTODIAN | Smith, John | Email: Mailbox where the email resided<br>Native: Name of the individual or department from whose files the document originated |
| FROM | John Smith | Email: Sender<br>Native: Author(s) of document<br>**semi-colon should be used to separate multiple entries |
| TO | Coffman, Janice; LeeW [mailto:LeeW@MSN.com] | Recipient(s)<br>**semi-colon should be used to separate multiple entries |
| CC | Frank Thompson [mailto: frank_Thompson@cdt.com] | Carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| BCC | John Cain | Blind carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| SUBJECT | Board Meeting Minutes | Email: Subject line of the email<br>Native: Title of document (if available) |
| FILE_NAME | BoardMeetingMinutes.docx | Native: Name of the original native file, including extension |
| DATE_SENT | 10/12/2010 | Email: Date the email was sent<br>Native: (empty) |
| TIME_SENT/TIME _ZONE | 07:05 PM GMT | Email: Time the email was sent/ Time zone in which the emails were standardized during conversion.<br>Native: (empty)<br>**This data must be a separate field and cannot be combined with the DATE_SENT field |
| TIME_ZONE | GMT | The time zone in which the emails were standardized during conversion.<br>Email: Time zone<br>Native: (empty) |

Rev 01/2023

| LINK | D:\001\ EDC0000001.msg | Hyperlink to the email or native file document<br>**The linked file must be named per the FIRSTBATES number |
| --- | --- | --- |
| MIME_TYPE | application/msword | The content type of an email or native file document as identified/extracted from the header |
| FILE_EXTEN | MSG | The file type extension representing the email or native file document; will vary depending on the format |
| AUTHOR | John Smith | Email: (empty)<br>Native: Author of the document |
| LAST_AUTHOR | Jane Doe | Email: (empty)<br>Native: Last Author of the document |
| DATE_CREATED | 10/10/2010 | Email: (empty)<br>Native: Date the document was created |
| TIME_CREATED/TIME_ZONE | 10:25 AM GMT | Email: (empty)<br>Native: Time the document was created including time zone<br>**This data must be a separate field and cannot be combined with the DATE_CREATED field |
| DATE_MOD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last modified |
| TIME_MOD/TIME_ZONE | 07:00 PM GMT | Email: (empty)<br>Native: Time the document was last modified including the time zone<br>**This data must be a separate field and cannot be combined with the DATE_MOD field |
| DATE_ACCESSD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last accessed |
| TIME_ACCESSD/TIME_ZONE | 07:00 PM GMT | Email: (empty)<br>Native: Time the document was last accessed including the time zone<br>**This data must be a separate field and cannot be combined with the DATE_ACCESSD field |
| PRINTED_DATE | 10/12/2010 | Email: (empty)<br>Native: Date the document was last printed |
| FILE_SIZE | 5,952 | Size of native file document/email in KB |
| PGCOUNT | 1 | Number of pages in native file document/email |
| PATH | J:\Shared\SmithJ\October Agenda.doc | Email: (empty)<br>Native: Path where native file document was stored including original file name. |
| INTFILEPATH | Personal Folders\Deleted Items\Board Meeting Minutes.msg | Email: original location of email including original file name.<br>Native: (empty) |
| INTMSGID | <000805c2c71b$75977050$cb8306d1@MSN> | Email: Unique Message ID<br>Native: (empty) |

7

| HEADER | Return-Path: <example_from@dc.edu> X-SpamCatcher-Score:1[X] Received:from[136.167.40.119] (HELO dc.edu) by fe3.dc.edu (CommuniGate Pro SMTP4.1.8) with ESMTP-TLS id 61258719 for example_to@mail.dc.edu; Mon, 23 Aug 2004 11:40:10 -0400 Message-ID: <4129F3CA.2020509@dc.edu> Date: Mon, 23 Aug 2005 11:40:36 -400 From: Taylor Evans <example_from@dc.edu> User-Agent:Mozilla/5.0 (Windows;U; Windows NT 5.1; en-US;rv:1.0.1) Gecko/20020823 Netscape/7.0 X-Accept-Language:en-us,en MIME-Version:1.0 To: Jon Smith <example_to@mail.dc.edu> Subject:Business Development Meeting Content-Type: text/plain;charset=us-ascii; format=flowed Content-Transfer-Encoding:7bit | Email: The email header information Native: (empty) |
|---|---|---|
| SHA256 | AD6128C5CA40164AF71A1E FC800E12D2F195CE07BB5F8 C813B0888A2DDE6A06F | SHA-256 hash value of the document. |
| OCRPATH | TEXT/001/EDC0000001.txt | Path to extracted text of the native file |

Sample Image Cross-Reference File:

```
IMG0000001,,E:\001\IMG0000001.TIF,Y,,,
IMG0000002,,E:\001\IMG0000002.TIF,,,,
IMG0000003,,E:\001\IMG0000003.TIF,,,,
IMG0000004,,E:\001\IMG0000004.TIF,Y,,,
IMG0000005,,E:\001\IMG0000005.TIF,Y,,,
IMG0000006,,E:\001\IMG0000006.TIF,,,,
```

Rev 01/2023

## **ADDENDUM B**

For Electronic Phone Records, include the following fields in separate columns:

For Calls:

1) Account Number
2) Connection Date – Date the call was received or made
3) Connection Time – Time call was received or made
4) Seizure Time – Time it took for the call to be placed in seconds
5) Originating Number – Phone that placed the call
6) Terminating Number – Phone that received the call
7) Elapsed Time – The length of time the call lasted, preferably in seconds
8) End Time – The time the call ended
9) Number Dialed – Actual number dialed
10) IMEI Originating – Unique id to phone used to make call
11) IMEI Terminating– Unique id to phone used to receive call
12) IMSI Originating – Unique id to phone used to make call
13) IMSI Terminating- Unique id to phone used to receive call
14) Call Codes – Identify call direction or other routing information
15) Time Zone – Time Zone in which the call was received or placed, if applicable

For Text messages:

1) Account Number
2) Connection Date – Date the text was received or made
3) Connection Time – Time text was received or made
4) Originating Number – Who placed the text
5) Terminating Number – Who received the text
6) IMEI Originating – Unique id to phone used to make text
7) IMEI Terminating– Unique id to phone used to receive text
8) IMSI Originating - Unique id to phone used to make text
9) IMSI Terminating- Unique id to phone used to receive text
10) Text Code – Identify text direction, or other text routing information
11) Text Type Code – Type of text message (sent SMS, MMS, or other)
12) Time Zone – Time Zone in which the call was received or placed, if applicable

For Mobile Data Usage:

1) Account Number
2) Connection Date – Date the data was received or made
3) Connection Time – Time data was received or made
4) Originating number – Number that used data
5) IMEI Originating – Unique id of phone that used data
6) IMSI Originating - Unique id of phone that used data
7) Data or Data codes – Identify data direction, or other data routing information
8) Time Zone – Time Zone in which the call was received or placed, if applicable

Rev 01/2023

**DECLARATION OF _____[*Insert Name*] CERTIFYING RECORDS
OF REGULARLY CONDUCTED BUSINESS ACTIVITY**

I, the undersigned, _____[*insert name*], pursuant to 28 U.S.C. § 1746, declare
that:


1.  I am employed by _____ [*insert name of company*] as
    _____[*insert position*] and by reason of my position am authorized and
    qualified to make this declaration.

    _____

    _____
    _____[*if possible supply additional information as to how person is qualified to
    make declaration, e.g., I am custodian of records, I am familiar with the company's
    recordkeeping practices or systems, etc.]*

2.  I further certify that the documents [*attached hereto or submitted herewith*] [*circle one*]
    and stamped _____[*insert bates range*] are true copies of records that
    were:

    >   (a) made at or near the time of the occurrence of the matters set forth therein, by,
    >   or from information transmitted by, a person with knowledge of those matters;

    >   (b) kept in the course of regularly conducted business activity; and

    >   (c) made by the regularly conducted business activity as a regular practice.

    I declare under penalty of perjury that the foregoing is true and correct. Executed on
    _____[*date*].



    _____
    [*Name*]

EXHIBIT I

**From:**       Bradley, Kyle
**To:**         matsonjon@gmail.com
**Subject:**    SEC Matter No. A-04043 smail
**Date:**       Friday, February 17, 2023 1:46:00 PM

Mr. Matson:

I am following up on my voicemail from earlier today regarding the subpoena that was issued to you by the U.S. Securities and Exchange Commission on January 25, 2023.  As noted in the subpoena, production of documents was required by February 8, 2023.  To date, we have not received any production nor any communication regarding an extension from you or an attorney representing you.  If you, as you indicated you were in the process of doing in our January 31, 2023 phone call, have retained counsel, please have them contact me immediately.  If not, please contact me to discuss the required production and testimony.

Regards,

Kyle

Kyle Bradley
Senior Counsel – Division of Enforcement
U.S. Securities and Exchange Commission
950 E. Paces Ferry Road NE, Suite 900
Atlanta, Georgia  30326
404-842-7643

PRIVILEGED AND CONFIDENTIAL: This e-mail message (and any attachments) from the United States Securities and Exchange Commission is for the exclusive use of the intended recipient(s) and may contain confidential and privileged information. If you are not the intended recipient, please do not read, distribute, or take action in reliance upon this message. If you have received this message in error, please notify the sender immediately by return e-mail and promptly delete this message and its attachments from your computer system. Be advised that no privileges are waived by the transmission of this message.

# EXHIBIT J

**From:**     Bradley, Kyle
**To:**       matsonjon@gmail.com
**Subject:**  SEC Matter No. A-04043 smail
**Date:**     Tuesday, March 7, 2023 2:45:00 PM

Mr. Matson:

This e-mail is a follow-up to my previous communications on February 17 and voicemail from earlier today.  We have not heard from you or any counsel you may have retained regarding the subpoena issued to you by the U.S. Securities and Exchange Commission on January 25, 2023.  Likewise, we have not received the production called for by the subpoena.  As I noted in my voicemail earlier today, if we do not hear from you or any counsel you may have retained by the close of business tomorrow, we will take all appropriate legal action to enforce the subpoena and seek all available legal remedies.

Regards,


Kyle


Kyle Bradley
Senior Counsel – Division of Enforcement
U.S. Securities and Exchange Commission
950 E. Paces Ferry Road NE, Suite 900
Atlanta, Georgia  30326
404-842-7643


PRIVILEGED AND CONFIDENTIAL: This e-mail message (and any attachments) from the United States Securities and Exchange Commission is for the exclusive use of the intended recipient(s) and may contain confidential and privileged information. If you are not the intended recipient, please do not read, distribute, or take action in reliance upon this message. If you have received this message in error, please notify the sender immediately by return e-mail and promptly delete this message and its attachments from your computer system. Be advised that no privileges are waived by the transmission of this message.

# EXHIBIT K

| | |
|---|---|
| **From:** | matsonjon@gmail.com |
| **To:** | Bradley, Kyle |
| **Subject:** | RE: SEC Matter No. A-04043 smail |
| **Date:** | Tuesday, March 7, 2023 3:06:56 PM |

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

I have not been able to find any counsel to handle this. I do not have documents that you are requesting

--- Originally sent by bradleyky@sec.gov on Mar 7, 2023 11:45 AM ---

This
  message was sent securely using

Zix
®

Mr. Matson:

This e-mail is a follow-up to my previous
  communications on February 17 and voicemail from earlier today.  We
  have not heard from you or any counsel you may have retained
  regarding the subpoena issued to you by the U.S. Securities and
  Exchange Commission on January 25, 2023.  Likewise, we have not
  received the production called for by the subpoena.  As I noted in
  my voicemail earlier today, if we do not hear from you or any
  counsel you may have retained by the close of business tomorrow,  we
  will take all appropriate legal action to enforce the subpoena and
  seek all available legal remedies.

Regards,

Kyle

Kyle Bradley

Senior
  Counsel – Division of Enforcement

U.S.
  Securities and Exchange Commission

950
  E. Paces Ferry Road NE, Suite 900

Atlanta,
  Georgia  30326

404-842-7643

PRIVILEGED
  AND CONFIDENTIAL: This e-mail message (and any attachments) from
  the United States Securities and Exchange Commission is for the
  exclusive use of the intended recipient(s) and may  contain
  confidential and privileged information. If you are not the
  intended recipient, please do not read, distribute, or take action
  in reliance upon this message. If you have received this message
  in error, please notify the sender immediately by return  e-mail
  and promptly delete this message and its attachments from your
  computer system. Be advised that no privileges are waived by the
  transmission of this message.

This message was secured by

  Zix

®

.

This message was secured by Zix(R).

EXHIBIT L

| | |
|---|---|
| **From:** | Bradley, Kyle |
| **To:** | matsonjon@gmail.com |
| **Subject:** | RE: SEC Matter No. A-04043 smail |
| **Date:** | Wednesday, March 8, 2023 11:28:00 AM |

Mr. Matson:

Thank you for contacting us.  Per the subpoena, you were required to produce records and communications that we believe are in your custody and/or control.  To this end, please explain the search you conducted to identify responsive records and why certain records, such as your financial account records, were not produced. Furthermore, the subpoena calls for your testimony on March 22, 2023.  While the subpoena calls for the testimony to occur at the Atlanta Regional Office, we can, for your convenience, conduct the testimony via video teleconference.  Please confirm that you will attend and whether you would prefer to do so via video teleconference, which will require you to participate on a device with video capabilities.

Regards,

Kyle

-----Original Message-----
From: matsonjon@gmail.com <matsonjon@gmail.com>
Sent: Tuesday, March 7, 2023 3:07 PM
To: Bradley, Kyle <bradleyky@SEC.GOV>
Subject: RE: SEC Matter No. A-04043 smail

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.


I have not been able to find any counsel to handle this. I do not have documents that you are requesting

--- Originally sent by bradleyky@sec.gov on Mar 7, 2023 11:45 AM ---



This

   message was sent securely using


Zix
®









Mr. Matson:

This e-mail is a follow-up to my previous
communications on February 17 and voicemail from earlier today.  We
have not heard from you or any counsel you may have retained
regarding the subpoena issued to you by the U.S. Securities and
Exchange Commission on January 25, 2023.  Likewise, we have not
received the production called for by the subpoena.  As I noted in
my voicemail earlier today, if we do not hear from you or any
counsel you may have retained by the close of business tomorrow,  we
will take all appropriate legal action to enforce the subpoena and
seek all available legal remedies.

Regards,

Kyle

Kyle Bradley

Senior
  Counsel – Division of Enforcement

U.S.
  Securities and Exchange Commission

950
  E. Paces Ferry Road NE, Suite 900

Atlanta,
  Georgia  30326

404-842-7643

PRIVILEGED
  AND CONFIDENTIAL: This e-mail message (and any attachments) from
  the United States Securities and Exchange Commission is for the
  exclusive use of the intended recipient(s) and may  contain
  confidential and privileged information. If you are not the

intended recipient, please do not read, distribute, or take action in reliance upon this message. If you have received this message in error, please notify the sender immediately by return e-mail and promptly delete this message and its attachments from your computer system. Be advised that no privileges are waived by the transmission of this message.

This message was secured by

   Zix

  ®
 .

This message was secured by Zix(R).

EXHIBIT M

| | |
|---|---|
| **From:** | matsonjon@gmail.com |
| **To:** | Bradley, Kyle |
| **Subject:** | RE: SEC Matter No. A-04043 smail |
| **Date:** | Tuesday, March 21, 2023 1:58:37 PM |

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

This message was sent securely using Zix®

Hi Kyle,

South bay has only 2 clients.  Alice Krell and Mary Myers.
Alice Krell invested $ 600,000 over the years and has been paid approximately $ 700,000 over this period.  She continues to receive $ 2500 a month from South Bay.
Mary Myers invested $ 300,000 and has been paid approximately $ 150,000 so far and is receiving $ 3000 a month as per agreement.

Regards,
John Matson

--- Originally sent by bradleyky@sec.gov on Mar 7, 2023 12:45 PM ---

This message was sent securely using Zix ®

Mr. Matson:


This e-mail is a follow-up to my previous communications on February 17 and voicemail from earlier today.  We have not heard from you or any counsel you may have retained regarding the subpoena issued to you by the U.S. Securities and Exchange Commission on January 25, 2023.  Likewise, we have not received the production called for by the subpoena.  As I noted in my voicemail earlier today, if we do not hear from you or any counsel you may have retained by the close of business tomorrow, we will take all appropriate legal action to enforce the subpoena and seek all available legal remedies.



Regards,



Kyle



Kyle Bradley

Senior Counsel – Division of Enforcement

U.S. Securities and Exchange Commission

950 E. Paces Ferry Road NE, Suite 900

Atlanta, Georgia  30326

404-842-7643


PRIVILEGED AND CONFIDENTIAL: This e-mail message (and any attachments) from the United States Securities and Exchange Commission is for the exclusive use of the intended recipient(s) and may contain confidential and privileged information. If you are not the intended recipient, please do not read, distribute, or take action in reliance upon this message. If you have received this message in error, please notify the sender immediately by return e-mail and promptly delete this message and its attachments from your computer system. Be advised that no privileges are waived by the transmission of this message.

This message was secured by **Zix** [®] .

This message was secured by **Zix**[®].

# EXHIBIT N

| | |
|---|---|
| **From:** | Bradley, Kyle |
| **To:** | matsonjon@gmail.com |
| **Subject:** | RE: SEC Matter No. A-04043 smail |
| **Date:** | Wednesday, March 22, 2023 10:49:00 AM |

Mr. Matson:

Per my previous communications, including our conversation Monday, we expect compliance with the subpoena issued to you on January 25, 2023, calling for the production of documents and your attendance at testimony, which was scheduled for today.  Based on our previous communications, it is my understanding that you do not intend to comply with the subpoena.  If my understanding is incorrect, please notify me by the close of business today.  If you have retained counsel, please have them contact me immediately.

Regards,

Kyle

**From:** matsonjon@gmail.com <matsonjon@gmail.com>
**Sent:** Tuesday, March 21, 2023 1:58 PM
**To:** Bradley, Kyle <bradleyky@SEC.GOV>
**Subject:** RE: SEC Matter No. A-04043 smail

> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

> This message was sent securely using Zix®

Hi Kyle,

South bay has only 2 clients.  Alice Krell and Mary Myers.
Alice Krell invested $ 600,000 over the years and has been paid approximately $ 700,000 over this period.  She continues to receive $ 2500 a month from South Bay.
Mary Myers invested $ 300,000 and has been paid approximately $ 150,000 so far and is receiving $ 3000 a month as per agreement.

Regards,
John Matson

--- Originally sent by bradleyky@sec.gov on Mar 7, 2023 12:45 PM ---

> This message was sent securely using Zix®

Mr. Matson:

This e-mail is a follow-up to my previous communications on February 17 and voicemail from

earlier today.  We have not heard from you or any counsel you may have retained regarding the subpoena issued to you by the U.S. Securities and Exchange Commission on January 25, 2023.  Likewise, we have not received the production called for by the subpoena.  As I noted in my voicemail earlier today, if we do not hear from you or any counsel you may have retained by the close of business tomorrow, we will take all appropriate legal action to enforce the subpoena and seek all available legal remedies.


Regards,


Kyle


Kyle Bradley
Senior Counsel – Division of Enforcement
U.S. Securities and Exchange Commission
950 E. Paces Ferry Road NE, Suite 900
Atlanta, Georgia  30326
404-842-7643

PRIVILEGED AND CONFIDENTIAL: This e-mail message (and any attachments) from the United States Securities and Exchange Commission is for the exclusive use of the intended recipient(s) and may contain confidential and privileged information. If you are not the intended recipient, please do not read, distribute, or take action in reliance upon this message. If you have received this message in error, please notify the sender immediately by return e-mail and promptly delete this message and its attachments from your computer system. Be advised that no privileges are waived by the transmission of this message.


This message was secured by **Zix** ® .


This message was secured by **Zix**®.

EXHIBIT O



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
950 East Paces Ferry Road, N.E., Suite 900
Atlanta, GA 30326-1382

ATLANTA
REGIONAL OFFICE

March 9, 2023

<u>**Via UPS**</u>

South Bay Acquisitions, LLC
*c/o* Jan M. Souza
████████████████
San Diego, CA  92124

   Re: <u>In the Matter of South Bay Acquisitions, LLC (A-04043)</u>

Dear Ms. Souza:

   The staff of the Atlanta Regional Office of the United States Securities and Exchange Commission is conducting an investigation in the matter identified above.  The enclosed subpoena has been issued to you as part of this investigation.  The subpoena requires you to provide us documents.

   Please read the subpoena and this letter carefully.  This letter answers some questions you may have about the subpoena.  You should also read the enclosed SEC Form 1662.  If you do not comply with this subpoena, the SEC may bring an action in Federal Court to enforce this subpoena.  Failure to comply with a court order enforcing this subpoena may result in the court imposing a fine, imprisonment or both.

<u>**Producing Documents**</u>

*What materials do I have to produce?*

   The subpoena requires you to provide us the documents described in the attachment to the subpoena.  You must provide these documents by March 30, 2023.  The attachment to the subpoena defines some terms (such as "document") before listing what you must provide.

   You should produce each and every document in your possession, custody, or control, including any documents that are not in your immediate possession but that you have the ability to obtain.  All responsive documents shall be produced as they are kept in the usual course of business, and shall be organized and labeled to correspond with the numbered paragraphs in the subpoena attachment.  In that regard, documents should be produced in a unitized manner, *i.e.*, delineated with staples or paper clips to identify the document boundaries.

Documents responsive to this subpoena may be in electronic or paper form.  Electronic documents such as email should be produced in accordance with the attached document entitled SEC Data Delivery Standards (the "Standards").  If you have any questions concerning the production of documents in an electronic format, please contact me as soon as possible but in any event before producing documents.  **All electronic documents responsive to the document subpoena, including all metadata, must also be secured and retained in their native software format and stored in a safe place.**  The staff may later request or require that you produce the native format.

For documents in paper format, you may send the originals, or, if you prefer, you may send copies of the originals.  The Commission cannot reimburse you for the copying costs.  If you are sending copies, the staff requests that you scan (rather than photocopy) hard copy documents and produce them in an electronic format consistent with the Standards.  Alternatively, you may send us photocopies of the documents in paper format.  **If you choose to send copies, you <u>must</u> secure and retain the originals and store them in a safe place.**  The staff may later request or require that you produce the originals.

Whether you scan or photocopy documents, the copies must be identical to the originals, including even faint marks or print.  Also, please note that if copies of a document differ in any way, they are considered separate documents and you must send each one.  For example, if you have two copies of the same letter, but only one of them has handwritten notes on it, you must send both the clean copy and the one with notes.

If you <u>do</u> send us scanned or photocopied documents, please put an identifying notation on each page of each document to indicate that you produced it, and number the pages of all the documents submitted.  (For example, if Jane Doe sends documents to the staff, she may number the pages JD-1, JD-2, JD-3, etc., in a blank corner of the documents.)  Please make sure the notation and number do not conceal any writing or marking on the document.  If you send us originals, please do not add any identifying notations.

In producing a photocopy of an original document that contains post-it(s), notation flag(s), or other removable markings or attachments which may conceal all or a portion of the markings contained in the original document, photocopies of the original document both with and without the relevant post-it(s), notation flag(s), or removable markings or attachments should be produced.

*Do I need to send anything else?*

You should enclose a list briefly describing each item you send.  The list should state to which numbered paragraph(s) in the subpoena attachment each item responds.  A copy of the subpoena should be included with the documents that are produced.

Passwords for documents, files, compressed archives, and encrypted media should be provided separately either via email addressed to <u>ENF-CPU@sec.gov</u>, or in a separate cover letter mailed separately from the data. **Password correspondence should reference case number, case name and requesting SEC staff member.**

Please include a cover letter stating whether you believe you have met your obligations under the subpoena by searching carefully and thoroughly for everything called for by the subpoena, and sending it all to us. **Correspondence should reference case number, case name and requesting SEC staff member.**

Please also provide a narrative description describing what you did to identify and collect documents responsive to the subpoena.  At a minimum, the narrative should describe:

- who searched for documents;

- who reviewed documents found to determine whether they were responsive;

- what sources were searched (e.g., computer files, CDs, DVDs, thumb drives, flash drives, online storage media, hard copy files, diaries, datebooks, planners, filing cabinets, home office, work office, voice mails, home email, webmail, work email, backup tapes or other media);

- what third parties, if any, were contacted to obtain responsive documents (e.g., phone companies for phone records, brokerage firms for brokerage records); and

- where the original electronic and hardcopy documents are maintained and by whom.

For any documents that qualify as records of regularly conducted activities under Federal Rule of Evidence 902(11), please complete a business records certification (a sample of which is enclosed) and return it with the document production.

*What if I do not send everything described in the attachment to the subpoena?*

The subpoena requires you to send <u>all</u> the materials described in it.  If, for any reason – including a claim of attorney-client privilege – you do not produce something called for by the subpoena, you should submit a list of what you are not producing.  The list should describe each item separately, noting:

- its author(s);

- its date;

- its subject matter;

- the name of the person who has the item now, or the last person known to have it;

- the names of everyone who ever had the item or a copy of it, and the names of everyone who was told the item's contents;

- the reason you did not produce the item; and

- the specific request in the subpoena to which the document relates.

If you withhold anything on the basis of a claim of attorney-client privilege or attorney work product protection, you should identify the attorney and client involved.  If you withhold anything on the basis of the work product doctrine, you should also identify the litigation in anticipation of which the document was prepared.

If documents responsive to this subpoena no longer exist because they have been lost, discarded, or otherwise destroyed, you should identify such documents and give the date on which they were lost, discarded or destroyed.

*Where should I send the materials?*

Please send the materials to:

ENF-CPU (U.S. Securities & Exchange Commission)
14420 Albemarle Point Place
Suite 102
Chantilly, VA 20151-1750

For smaller electronic productions under 10MB in size, the materials may be emailed to the following email address:  ENF-CPU@sec.gov.

## Other Important Information

*May I have a lawyer help me respond to the subpoena?*

Yes.  You have the right to consult with and be represented by your own lawyer in this matter.  Your lawyer may also advise and accompany you when you testify.  We cannot give you legal advice.

*What will the Commission do with the materials I send and/or the testimony I provide?*

The enclosed SEC Form 1662 explains how we may use the information you provide to the Commission.  This form also has other important information for you.  Please read it carefully.

*Has the Commission determined that anyone has done anything wrong?*

This investigation is a non-public, fact-finding inquiry.  We are trying to determine whether there have been any violations of the federal securities laws.  The investigation and the subpoena do not mean that we have concluded that you or anyone else has violated the law.  Also, the investigation does not mean that we have a negative opinion of any person, entity or security.

*Important Policy Concerning Settlements*

Please note that, in any matter in which enforcement action is ultimately deemed to be warranted, the Division of Enforcement will not recommend any settlement to the Commission unless the party wishing to settle certifies, under penalty of perjury, that all documents responsive to Commission subpoenas and formal and informal document requests in this matter have been produced.

*I have read this letter, the subpoena, and the SEC Form 1662, but I still have questions.  What should I do?*

      If you have any other questions, you may call me at 404-842-7643.   If you are represented by a lawyer, you should have your lawyer contact me.

Sincerely,

Kyle A. Bradley
Senior Counsel
Division of Enforcement


Enclosures:     Subpoena and Attachment
                  SEC Data Delivery Standards
                  SEC Form 1662
                  Business Records Certification



# SUBPOENA

# UNITED STATES OF AMERICA
## SECURITIES AND EXCHANGE COMMISSION

**In the Matter of South Bay Acquisitions, LLC (A-04043)**

To:   South Bay Acquisitions, LLC
      *c/o* Jan M. Souza
      ███████████████
      San Diego, CA  92124

☒   **YOU MUST PRODUCE** everything specified in the Attachment to this subpoena to officers of the Securities and Exchange Commission, at the place, date and time specified below:

ENF-CPU, U.S. Securities and Exchange Commission, 14420 Albemarle Point Pl, Suite 102, Chantilly, VA 20151-1750, no later than March 30, 2023 at 9:30 a.m.

---

**FEDERAL LAW REQUIRES YOU TO COMPLY WITH THIS SUBPOENA**.
If you do not comply with this subpoena, the SEC may bring an action in Federal Court to enforce this subpoena. Failure to comply with a court order enforcing this subpoena may result in the court imposing a fine, imprisonment, or both.

By: _____        Date: _____03/09/2023_____
   Kyle A. Bradley, Senior Counsel
   U.S. Securities and Exchange Commission
   950 E. Paces Ferry Road NE, Suite 900
   Atlanta, Georgia  30326

I am an officer of the U.S. Securities and Exchange Commission authorized to issue subpoenas in this matter.  The Securities and Exchange Commission has issued a formal order authorizing this investigation under: Section 20(a) of the Securities Act of 1933, Section 21(a) of the Securities Exchange Act of 1934, and Section 209(a) of the Investment Advisers Act of 1940.

---

NOTICE TO WITNESS:      If you claim a witness fee or mileage, submit this subpoena with the claim voucher.

**SUBPOENA ATTACHMENT FOR SOUTH BAY ACQUISITIONS, LLC**
**March 9, 2023**
<u>In the Matter of South Bay Acquisitions, LLC (A-04043)</u>

**A.**   <u>**Definitions**</u>

As used in this subpoena, the words and phrases listed below shall have the following meanings:

1.   "SBA" means the entity doing business under the name "South Bay Acquisitions, LLC" including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

2.   "Person" means a natural person, firm, association, organization, partnership, business, trust, corporation, bank or any other private or public entity.

3.   A "Representative" of a Person means any present or former family members, officers, executives, partners, joint-venturers, directors, trustees, employees, consultants, accountants, attorneys, agents, or any other representative acting or purporting to act on behalf of the Person.

4.   "Investor" means any person or entity that was solicited to or invested in SBA. This includes any debt or equity investments.

5.   "Matson" means (i) John Matson and/or (ii) any present or former representative of Wiedeman.

6.   "Finder" means any person or entity that solicited investors on behalf of SBA.

7.   "Bank Account" means any account held at a bank, savings and loan, credit union, or similar financial institution.

8.   "Financial Account" means any account held at a brokerage firm, Bank Account, or similar financial institution.

9.   "Document" shall include, but is not limited to, any written, printed, or typed matter including, but not limited to all drafts and copies bearing notations or marks not found in the original, letters and correspondence, interoffice communications, slips, tickets, records, worksheets, financial records, accounting documents, bookkeeping documents, memoranda, reports, manuals, telephone logs, telegrams, facsimiles, messages of any type, telephone messages, voice mails, tape recordings, notices, instructions, minutes, summaries, notes of meetings, file folder markings, and any other organizational indicia, purchase orders, information recorded by photographic process, including microfilm and microfiche, computer printouts, spreadsheets, and other electronically stored information, including but not limited to writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations that are stored in any medium from which information can be retrieved, obtained,

manipulated, or translated.

10.   "Communication" means any correspondence, contact, discussion, e-mail, instant message, or any other kind of oral or written exchange or transmission of information (in the form of facts, ideas, inquiries, or otherwise) and any response thereto between two or more Persons or entities, including, without limitation, all telephone conversations, face-to-face meetings or conversations, internal or external discussions, or exchanges of a Document or Documents.

11.   "Concerning" means directly or indirectly, in whole or in part, describing, constituting, evidencing, recording, evaluating, substantiating, concerning, referring to, alluding to, in connection with, commenting on, relating to, regarding, discussing, showing, analyzing or reflecting.

12.   An "Agreement" means any actual or contemplated (i) written or oral Agreement; (ii) term or provision of such Agreement; or (iii) amendment of any nature or termination of such Agreement.  A request for any Agreement among or between specified parties includes a request for all Documents Concerning (i) any actual or contemplated Agreement among or between such parties, whether or not such Agreement included any other Person; (ii) the drafting or negotiation of any such Agreement; (iii) any actual or contemplated demand, request or application for any such Agreement, and any response thereto; and (iv) any actual or contemplated objection or refusal to enter into any such Agreement, and any response thereto.

13.   The term "Reviewed" means examined, assessed, considered, analyzed or evaluated.

14.   The terms "you" and "your" means the Person or entity to whom this subpoena was issued.

15.   To the extent necessary to bring within the scope of this subpoena any information or Documents that might otherwise be construed to be outside its scope:

a.   the word "or" means "and/or";
b.   the word "and" means "and/or";
c.   the functional words "each," "every" "any" and "all" shall each be deemed to include each of the other functional words;
d.   the masculine gender includes the female gender and the female gender includes the masculine gender; and
e.   the singular includes the plural and the plural includes the singular.

## B.   Instructions

1.   Unless otherwise specified, the subpoena calls for production of the original Documents and all copies and drafts of same.  Documents responsive to this subpoena may be in electronic or paper form.  Electronic Documents such as

2

email should be produced in accordance with the attached Document entitled SEC Data Delivery Standards.  All electronic Documents responsive to the Document subpoena, including all metadata, should also be produced in their native software format.

2.      For Documents in paper format, you may send the originals, or, if you prefer, you may send copies of the originals.  The Commission cannot reimburse you for the copying costs.  If you are sending copies, the staff requests that you scan (rather than photocopy) hard copy Documents and produce them in an electronic format consistent with the SEC Data Delivery Standards.  Alternatively, you may send us photocopies of the Documents in paper format.  If you choose to send copies, you <u>must</u> secure and retain the originals and store them in a safe place.  The staff may later request or require that you produce the originals.

3.      Whether you scan or photocopy Documents, the copies must be identical to the originals, including even faint marks or print.  Also, please note that if copies of a Document differ in any way, they are considered separate Documents and you must send each one.  For example, if you have two copies of the same letter, but only one of them has handwritten notes on it, you must send both the clean copy and the one with notes.

4.      In producing a photocopy of an original Document that contains post-it(s), notation flag(s), or other removable markings or attachments which may conceal all or a portion of the markings contained in the original Document, photocopies of the original Document both with and without the relevant post-it(s), notation flag(s), or removable markings or attachments should be produced.

5.      Documents should be produced as they are kept in the ordinary course of business or be organized and labeled to correspond with the categories in this request.  In that regard, Documents should be produced in a unitized manner, i.e.., delineated with staples or paper clips to identify the Document boundaries.

6.      Documents should be labeled with sequential numbering (bates-stamped).

7.      You must produce all Documents created during, or Concerning, the period January 1, 2011 to the present, unless otherwise specified.

8.      The scope of any given request should not be limited or narrowed based on the fact that it calls for Documents that are responsive to another request.

9.      You are not required to produce exact duplicates of any Documents that have been previously produced to the Securities and Exchange Commission staff **in connection with this matter**.  If you are not producing Documents based upon a prior production, please identify the responsive Documents that were previously produced.

10.     For any Documents that qualify as records of regularly conducted activities under Federal Rule of Evidence 902(11), please complete a business records

certification (a sample of which is enclosed) and return it with the Document production.

11.  This subpoena covers all Documents in or subject to your possession, custody or control, including all Documents that are not in your immediate possession but that you have the ability to obtain, that are responsive, in whole or in part, to any of the individual requests set forth below.  If, for any reason – including a claim of attorney-client privilege – you do not produce something called for by the request, you should submit a list of what you are not producing.  The list should be produced as an Excel file and describe each item separately, noting:

    a.    its author(s);
    b.    its date;
    c.    its subject matter;
    d.    the name of the Person who has the item now, or the last Person known to have it;
    e.    the names of everyone who ever had the item or a copy of it, and the names of everyone who was told the item's contents;
    f.    the basis upon which you are not producing the responsive Document;
    g.    the specific request in the subpoena to which the Document relates;
    h.    the attorney(s) and the client(s) involved; and
    i.    in the case of the work product doctrine, the litigation for which the Document was prepared in anticipation.

12.  If Documents responsive to this subpoena no longer exist because they have been lost, discarded, or otherwise destroyed, you should identify such Documents and give the date on which they were lost, discarded or destroyed.

**C.**  **Documents to be Produced**

1.  All Financial Account statements for accounts held in or for the benefit of SBA. This includes any jointly-held accounts;

2.  Information sufficient to identify all members and principals of SBA;

3.  Information sufficient to identify all Investors in SBA;

4.  Information sufficient to identify all sources of income and profits of SBA;

5.  All Communications with any Investors or potential Investors Concerning SBA;

6.  All Communications Concerning any Investors;

7.  All Communications with Matson or any Finder;

8.  All Agreements with any Investors including, but not limited to, investment, subscription, and promissory note agreements;

9.  All Documents Concerning or evidencing any payments to Investors, Matson, or any Finder by SBA; and

10.  All Agreements between Matson or any Finder and SBA.

# SECURITIES AND EXCHANGE COMMISSION
## Washington, D.C. 20549

## Supplemental Information for Persons Requested to Supply Information Voluntarily or Directed to Supply Information Pursuant to a Commission Subpoena

### A. False Statements and Documents

Section 1001 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> [W]hoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully--
> (1)  falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
> (2)  makes any materially false, fictitious, or fraudulent statement or representation; or
> (3)  makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry.

Section 1519 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States . . ., or in relation to or contemplation of any such matter.

### B. Testimony

If your testimony is taken, you should be aware of the following:

1. *Record*.  Your testimony will be transcribed by a reporter. If you desire to go off the record, please indicate this to the Commission employee taking your testimony, who will determine whether to grant your request. The reporter will not go off the record at your, or your counsel's direction.

2. *Counsel*.  You have the right to be accompanied, represented and advised by counsel of your choice. Your counsel may advise you before, during and after your testimony; question you briefly at the conclusion of your testimony to clarify any of the answers you give during testimony; and make summary notes during your testimony solely for your use. If you are accompanied by counsel, you may consult privately.

If you are not accompanied by counsel, please advise the Commission employee taking your testimony if, during the testimony, you desire to be accompanied, represented and advised by counsel. Your testimony will be adjourned once to afford you the opportunity to arrange to be so accompanied, represented or advised.

You may be represented by counsel who also represents other persons involved in the Commission's investigation. This multiple representation, however, presents a potential conflict of interest if one client's interests are or may be adverse to another's. If you are represented by counsel who also represents other persons involved in the investigation, the Commission will assume that you and counsel have discussed and resolved all issues concerning possible conflicts of interest. The choice of counsel, and the responsibility for that choice, is yours.

3. *Transcript Availability*.  Rule 6 of the Commission's Rules Relating to Investigations, 17 CFR 203.6, states:

> A person who has submitted documentary evidence or testimony in a formal investigative proceeding shall be entitled, upon written request, to procure a copy of his documentary evidence or a transcript of his testimony on payment of the appropriate fees: *Provided, however*, That in a nonpublic formal investigative proceeding the Commission may for good cause deny such request. In any event, any witness, upon proper identification, shall have the right to inspect the official transcript of the witness' own testimony.

If you wish to purchase a copy of the transcript of your testimony, the reporter will provide you with a copy of the appropriate form. Persons requested to supply information voluntarily will be allowed the rights provided by this rule.

4. *Perjury*.  Section 1621 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> Whoever--
>
> (1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare,

SEC 1662 (09-21)

depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or

(2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true.

5. *Fifth Amendment and Voluntary Testimony*. Information you give may be used against you in any federal, state, local or foreign administrative, civil or criminal proceeding brought by the Commission or any other agency.

You may refuse, in accordance with the rights guaranteed to you by the Fifth Amendment to the Constitution of the United States, to give any information that may tend to incriminate you.

If your testimony is not pursuant to subpoena, your appearance to testify is voluntary, you need not answer any question, and you may leave whenever you wish. Your cooperation is, however, appreciated.

6. *Formal Order Availability*. If the Commission has issued a formal order of investigation, it will be shown to you during your testimony, at your request. If you desire a copy of the formal order, please make your request in writing.

## C. Submissions and Settlements

Rule 5(c) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(c), states:

Persons who become involved in . . . investigations may, on their own initiative, submit a written statement to the Commission setting forth their interests and position in regard to the subject matter of the investigation. Upon request, the staff, in its discretion, may advise such persons of the general nature of the investigation, including the indicated violations as they pertain to them, and the amount of time that may be available for preparing and submitting a statement prior to the presentation of a staff recommendation to the Commission for the commencement of an administrative or injunction proceeding. Submissions by interested persons should be forwarded to the appropriate Division Director or Regional Director with a copy to the staff members conducting the investigation and should be clearly referenced to the specific investigation to which they relate. In the event a recommendation for the commencement of an enforcement proceeding is presented by the staff, any submissions by interested persons will be forwarded to the Commission in conjunction with the staff memorandum.

The staff of the Commission routinely seeks to introduce submissions made pursuant to Rule 5(c) as evidence in Commission enforcement proceedings, when the staff deems appropriate.

Rule 5(f) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(f), states:

In the course of the Commission's investigations, civil lawsuits, and administrative proceedings, the staff, with appropriate authorization, may discuss with persons involved the disposition of such matters by consent, by settlement, or in some other manner. It is the policy of the Commission, however, that the disposition of any such matter may not, expressly or impliedly, extend to any criminal charges that have been, or may be, brought against any such person or any recommendation with respect thereto. Accordingly, any person involved in an enforcement matter before the Commission who consents, or agrees to consent, to any judgment or order does so solely for the purpose of resolving the claims against him in that investigative, civil, or administrative matter and not for the purpose of resolving any criminal charges that have been, or might be, brought against him. This policy reflects the fact that neither the Commission nor its staff has the authority or responsibility for instituting, conducting, settling, or otherwise disposing of criminal proceedings. That authority and responsibility are vested in the Attorney General and representatives of the Department of Justice.

## D. Freedom of Information Act

The Freedom of Information Act, 5 U.S.C. 552 (the "FOIA"), generally provides for disclosure of information to the public. Rule 83 of the Commission's Rules on Information and Requests, 17 CFR 200.83, provides a procedure by which a person can make a written request that information submitted to the Commission not be disclosed under the FOIA. That rule states that no determination as to the validity of such a request will be made until a request for disclosure of the information under the FOIA is received. Accordingly, no response to a request that information not be disclosed under the FOIA is necessary or will be given until a request for disclosure under the FOIA is received. If you desire an acknowledgment of receipt of your written request that information not be disclosed under the FOIA, please provide a duplicate request, together with a stamped, self-addressed envelope.

### E.  Authority for Solicitation of Information

*Persons Directed to Supply Information Pursuant to Subpoena*. The authority for requiring production of information is set forth in the subpoena. Disclosure of the information to the Commission is mandatory, subject to the valid assertion of any legal right or privilege you might have.

*Persons Requested to Supply Information Voluntarily*. One or more of the following provisions authorizes the Commission to solicit the information requested: Sections 19 and/or 20 of the Securities Act of 1933; Section 21 of the Securities Exchange Act of 1934; Section 321 of the Trust Indenture Act of 1939; Section 42 of the Investment Company Act of 1940; Section 209 of the Investment Advisers Act of 1940; and 17 CFR 202.5. Disclosure of the requested information to the Commission is voluntary on your part.

### F.  Effect of Not Supplying Information

*Persons Directed to Supply Information Pursuant to Subpoena*. If you fail to comply with the subpoena, the Commission may seek a court order requiring you to do so. If such an order is obtained and you thereafter fail to supply the information, you may be subject to civil and/or criminal sanctions for contempt of court. In addition, Section 21(c) of the Securities Exchange Act of 1934, Section 42(c) of the Investment Company Act of 1940, and Section 209(c) of the Investment Advisers Act of 1940 provide that fines and terms of imprisonment may be imposed upon any person who shall, without just cause, fail or refuse to attend and testify or to answer any lawful inquiry, or to produce books, papers, correspondence, memoranda, and other records in compliance with the subpoena.

*Persons Requested to Supply Information Voluntarily*. There are no direct sanctions and thus no direct effects for failing to provide all or any part of the requested information.

### G.  Principal Uses of Information

The Commission's principal purpose in soliciting the information is to gather facts in order to determine whether any person has violated, is violating, or is about to violate any provision of the federal securities laws or rules for which the Commission has enforcement authority, such as rules of securities exchanges and the rules of the Municipal Securities Rulemaking Board. Facts developed may, however, constitute violations of other laws or rules. Information provided may be used in Commission and other agency enforcement proceedings. Unless the Commission or its staff explicitly agrees to the contrary in writing, you should not assume that the Commission or its staff acquiesces in, accedes to, or concurs or agrees with, any position, condition, request, reservation of right, understanding, or any other statement that purports, or may be deemed, to be or to reflect a limitation upon the Commission's receipt, use, disposition, transfer, or retention, in accordance with applicable law, of information provided.

### H.  Routine Uses of Information

The Commission often makes its files available to other governmental agencies, particularly United States Attorneys and state prosecutors. There is a likelihood that information supplied by you will be made available to such agencies where appropriate. Whether or not the Commission makes its files available to other governmental agencies is, in general, a confidential matter between the Commission and such other governmental agencies.

Set forth below is a list of the routine uses which may be made of the information furnished.

1. To appropriate agencies, entities, and persons when (1) the SEC suspects or has confirmed that there has been a breach of the system of records, (2) the SEC has determined that as a result of the suspected or confirmed breach there is a risk of harm to individuals, the SEC (including its information systems, programs, and operations), the Federal Government, or national security; and (3) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the SEC's efforts to respond to the suspected or confirmed breach or to prevent, minimize, or remedy such harm.

2. To other Federal, state, local, or foreign law enforcement agencies; securities self-regulatory organizations; and foreign financial regulatory authorities to assist in or coordinate regulatory or law enforcement activities with the SEC.

3. To national securities exchanges and national securities associations that are registered with the SEC, the Municipal Securities Rulemaking Board; the Securities Investor Protection Corporation; the Public Company Accounting Oversight Board; the Federal banking authorities, including, but not limited to, the Board of Governors of the Federal Reserve System, the Comptroller of the Currency, and the Federal Deposit Insurance Corporation; state securities regulatory agencies or organizations; or regulatory authorities of a foreign government in connection with their regulatory or enforcement responsibilities.

4. By SEC personnel for purposes of investigating possible violations of, or to conduct investigations authorized by, the Federal securities laws.

5. In any proceeding where the Federal securities laws are in issue or in which the Commission, or past or present members of its staff, is a party or otherwise involved in an official capacity.

6. In connection with proceedings by the Commission pursuant to Rule 102(e) of its Rules of Practice, 17 CFR 201.102(e).

7. To a bar association, state accountancy board, or other Federal, state, local, or foreign licensing or oversight authority; or professional association or self-regulatory authority to the extent that it performs similar functions (including the Public Company Accounting Oversight Board) for investigations or possible disciplinary action.

8. To a Federal, state, local, tribal, foreign, or international agency, if necessary to obtain information relevant to the SEC's decision concerning the hiring or retention of an employee; the issuance of a security clearance; the letting of a contract; or the issuance of a license, grant, or other benefit.

9. To a Federal, state, local, tribal, foreign, or international agency in response to its request for information concerning the hiring or retention of an employee; the issuance of a security clearance; the reporting of an investigation of an employee; the letting of a contract; or the issuance of a license, grant, or other benefit by the requesting agency, to the extent that the information is relevant and necessary to the requesting agency's decision on the matter.

10. To produce summary descriptive statistics and analytical studies, as a data source for management information, in support of the function for which the records are collected and maintained or for related personnel management functions or manpower studies; may also be used to respond to general requests for statistical information (without personal identification of individuals) under the Freedom of Information Act.

11. To any trustee, receiver, master, special counsel, or other individual or entity that is appointed by a court of competent jurisdiction, or as a result of an agreement between the parties in connection with litigation or administrative proceedings involving allegations of violations of the Federal securities laws (as defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)) or pursuant to the Commission's Rules of Practice, 17 CFR 201.100 through 900 or the Commission's Rules of Fair Fund and Disgorgement Plans, 17 CFR 201.1100 through 1106, or otherwise, where such trustee, receiver, master, special counsel, or other individual or entity is specifically designated to perform particular functions with respect to, or as a result of, the pending action or proceeding or in connection with the administration and enforcement by the Commission of the Federal securities laws or the Commission's Rules of Practice or the Rules of Fair Fund and Disgorgement Plans.

12. To any persons during the course of any inquiry, examination, or investigation conducted by the SEC's staff, or in connection with civil litigation, if the staff has reason to believe that the person to whom the record is disclosed may have further information about the matters related therein, and those matters appeared to be relevant at the time to the subject matter of the inquiry.

13. To interns, grantees, experts, contractors, and others who have been engaged by the Commission to assist in the performance of a service related to this system of records and who need access to the records for the purpose of assisting the Commission in the efficient administration of its programs, including by performing clerical, stenographic, or data analysis functions, or by reproduction of records by electronic or other means. Recipients of these records shall be required to comply with the requirements of the Privacy Act of 1974, as amended, 5 U.S.C. 552a.

14. In reports published by the Commission pursuant to authority granted in the Federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), which authority shall include, but not be limited to, section 21(a) of the Securities Exchange Act of 1934, 15 U.S.C. 78u(a)).

15. To members of advisory committees that are created by the Commission or by Congress to render advice and recommendations to the Commission or to Congress, to be used solely in connection with their official designated functions.

16. To any person who is or has agreed to be subject to the Commission's Rules of Conduct, 17 CFR 200.735-1 through 200.735-18, and who assists in the investigation by the Commission of possible violations of the Federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), in the preparation or conduct of enforcement actions brought by the Commission for such violations, or otherwise in connection with the Commission's enforcement or regulatory functions under the Federal securities laws.

17. To a Congressional office from the record of an individual in response to an inquiry from the Congressional office made at the request of that individual.

18. To members of Congress, the press, and the public in response to inquiries relating to particular Registrants and their activities, and other matters under the Commission's jurisdiction.

19. To prepare and publish information relating to violations of the Federal securities laws as provided in 15 U.S.C. 78c(a)(47)), as amended.

20. To respond to subpoenas in any litigation or other proceeding.

21. To a trustee in bankruptcy.

22. To any governmental agency, governmental or private collection agent, consumer reporting agency or commercial reporting agency, governmental or private employer of a debtor, or any other person, for collection,

including collection by administrative offset, Federal salary offset, tax refund offset, or administrative wage garnishment, of amounts owed as a result of Commission civil or administrative proceedings.

23. To another Federal agency or Federal entity, when the SEC determines that information from this system of records is reasonably necessary to assist the recipient agency or entity in (1) responding to a suspected or confirmed breach or (2) preventing, minimizing, or remedying the risk of harm to individuals, the recipient agency or entity (including its information systems, programs, and operations), the Federal Government, or national security, resulting from a suspected or confirmed breach.

* * * * *

*Small Business Owners*: The SEC always welcomes comments on how it can better assist small businesses. If you would like more information, or have questions or comments about federal securities regulations as they affect small businesses, please contact the Office of Small Business Policy, in the SEC's Division of Corporation Finance, at 202-551-3460. If you would prefer to comment to someone outside of the SEC, you can contact the Small Business Regulatory Enforcement Ombudsman at http://www.sba.gov/ombudsman or toll free at 888-REG-FAIR. The Ombudsman's office receives comments from small businesses and annually evaluates federal agency enforcement activities for their responsiveness to the special needs of small business.



# U.S. Securities and Exchange Commission

## <u>Data Delivery Standards</u>

This document describes the technical requirements for paper and electronic document productions to the U.S. Securities and Exchange Commission (SEC).   ***<u>Any questions or proposed file formats other than those described below must be discussed with the legal and technical staff of the SEC Division of Enforcement prior to submission.</u>***

General Instructions.................................................................................................................................. 1

Delivery Formats ...................................................................................................................................... 2

   I.  Imaged Productions...................................................................................................................3

       1.  Images ................................................................................................................... 3

       2.  Image Cross-Reference File ................................................................................. 3

       3.  Data File .............................................................................................................. 3

       4.  Text ...................................................................................................................... 3

       5.  Linked Native Files.............................................................................................. 3

  II.  Native File Productions without Load Files ............................................................. 4

  III.  Adobe PDF File Productions ................................................................................... 4

  IV.  Audio Files............................................................................................................... 4

  V.  Video Files ............................................................................................................... 4

  VI.  Electronic Trade and Bank Records ........................................................................ 4

  VII.  Electronic Phone Records ...................................................................................... 4

  VIII.  Audit Workpapers ................................................................................................. 5

  IX.  Mobile Device Data ................................................................................................ 5

**General Instructions**

<span style="color:red">The current mailing address for all <u>physical productions</u> sent to the SEC is:</span>
<span style="color:red">**ENF-CPU (U.S. Securities & Exchange Commission), 14420 Albemarle Point Place, Suite 102, Chantilly, VA 20151-1750**</span>

Electronic files must be produced in their native format, i.e. the format in which they are ordinarily used and maintained during the normal course of business.  For example, an MS Excel file must be produced as an MS Excel file rather than an image of a spreadsheet.  *(Note:  An Adobe PDF file is <u>not</u> considered a native file unless the document was initially created as a PDF.)*

In the event produced files require the use of proprietary software not commonly found in the workplace, the SEC will explore other format options with the producing party.

The proposed use of file de-duplication methodologies or *computer-assisted review* or *technology-assisted review* (TAR)  during the processing of documents must be discussed with and approved by the legal and technical staff of the Division of Enforcement (ENF).  If your production will be de-duplicated it is vital that you 1) preserve any unique metadata associated with the duplicate files, for example, custodian name and file location and, 2) make that unique metadata part of your production to the SEC.

General requirements for **ALL** document productions are:

1.  A cover letter must be included with each production and should include the following information:
    a.  Case number, case name and requesting SEC staff member name
    b.  A list of each piece of media included in the production with its unique production volume number
    c.  A list of custodians, identifying the Bates range for each custodian
    d.  A list of redacted documents and the redaction reason
    e.  The time zone in which the emails were standardized during conversion
    f.  Whether the production contains native files produced from Mac operating system environments
2.  Data can be produced on CD, DVD, thumb drive, etc., using the media requiring the least number of deliverables and labeled with the following:
    a.  Case number
    b.  Production date
    c.  Producing party
    d.  Bates range (if applicable)
3.  All submissions must be organized by **custodian** unless otherwise instructed.
4.  All document family groups, i.e. email attachments, embedded files, etc., should be produced together and children files should follow parent files sequentially in the Bates numbering.
5.  All load-ready collections should include only one data load file and one image pointer file.
6.  All load-ready text must be produced as separate document-level text files.
7.  All load-ready collections should account for custodians in the custodian field.
8.  All load-ready collections must provide the extracted contents of any container files to ensure all relevant files are produced as separate records.
9.  Audio files should be separated from data files if both are included in the production.
10. Only alphanumeric characters and the underscore character are permitted in file names and folder names. Special characters are not permitted.
11. All electronic productions submitted on media must be produced using industry standard self-extracting encryption software.
12. The SEC uses 7zip to access compressed files. Note that the SEC **cannot** accept files that use AES-256 Jpeg or pkAES-256-Cert Deflate compression methods, even if the files are created with 7zip. If you have any questions or need additional information, please reach out to the requesting SEC staff member.
13. Electronic productions of 20 GB or less are strongly encouraged to be submitted via Secure File Transfer. All Secure File Transfers should be sent to the SEC Centralized Production Unit (ENF-CPU@sec.gov) with a CC to the requesting SEC staff member. If you do not have your own Secure File Transfer application, you may reach out to the requesting SEC staff member for a link to the SEC system in order to upload your production. If using the SEC Secure File Transfer system, you will NOT be able to CC individuals outside the SEC on your upload transmission. Note that the SEC **cannot** accept productions made using file sharing sites such as Google Drive, Microsoft Office 365 or Dropbox.
14. Productions containing BSA or SAR material must be encrypted. Secure File Transfer applications may be used to produce BSA or SAR material. BSA or SAR material should be segregated and appropriately marked as BSA or SAR, or should be produced separately from other case related records.
15. Passwords for electronic documents, files, compressed archives and encrypted media must be provided separately either via email or in a cover letter apart from the media.
16. All electronic productions should be produced free of computer viruses.
17. Before producing forensically collected images, parties should reach out to the requesting SEC staff member in order to discuss appropriate handling.
18. Before producing unique data sets (large sets of relational data, website reconstruction, chat room data, etc.), parties should reach out to the requesting SEC staff member in order to discuss an appropriate production format.
19. Additional technical descriptions can be found in the addendum to this document.

**\*Please note that productions sent to the SEC via United States Postal Service are subject to Mail Irradiation, and as a result electronic productions may be damaged.\***

**Delivery Formats**

**I.   Imaged Productions**

The SEC prefers that all scanned paper and electronic file collections be produced in a structured format including industry standard load files, Bates numbered image files, native files and searchable document-level text files. Bates numbers should not contain spaces. Hyphens ( - ) and underscores ( _ ) are acceptable.

1.   **Images**
   a.   Black and white images must be 300 DPI Group IV single-page TIFF files
   b.   Color images must be produced in JPEG format
   c.   File names cannot contain embedded spaces or special characters (including the comma)
   d.   Folder names cannot contain embedded spaces or special characters (including the comma)
   e.   All image files must have a unique file name, i.e. Bates number
   f.   Images must be endorsed with sequential Bates numbers in the lower right corner of each image
   g.   The number of image files per folder should not exceed 2,000 files
   h.   Excel spreadsheets should have a placeholder image named by the Bates number of the file
   i.   AUTOCAD/photograph files should be produced as a single page JPEG file

2.   **Image Cross-Reference File**
   The image cross-reference file (.LOG or .OPT) links the images to the database records. It should be a comma-delimited file consisting of seven fields per line with a line in the cross-reference file for every image in the database with the following format:

   *ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount*

3.   **Data File**
   The data file (.DAT) contains all of the fielded information that will be loaded into the database.

   a.   The first line of the .DAT file must be a header row identifying the field names
   b.   The .DAT file must use the following *Concordance*® default delimiters:
        Comma ¶ ASCII character (020)
        Quote þ ASCII character (254)
   c.   If the .DAT file is produced in Unicode format it must contain the byte order marker
   d.   Date fields should be provided in the format: mm/dd/yyyy
   e.   Date and time fields must be two separate fields
   f.   The time zone must be included in all time fields
   g.   If the production includes imaged emails and attachments, the attachment fields must be included to preserve the parent/child relationship between an email and its attachments
   h.   An OCRPATH field must be included to provide the file path and name of the extracted text file on the produced storage media.  The text file must be named after the FIRSTBATES.  Do not include the text in the .DAT file.
   i.   For productions with native files, a LINK field must be included to provide the file path and name of the native file on the produced storage media. The native file must be named after the FIRSTBATES.
   j.   BEGATTACH and ENDATTACH fields must be two separate fields
   k.   A complete list of metadata fields is available in **Addendum A** to this document

4.   **Text**
   Text must be produced as separate document-level text files, not as fields within the .DAT file. The text files must be named per the FIRSTBATES/Image Key and the full path to the text file (OCRPATH) should be included in the .DAT file. Text files may be in either ANSI or Unicode format, however, ALL text files must be in the same format within the same production. Note that productions containing text with foreign characters must produce text files in Unicode format to preserve the foreign characters. Text files must be in a separate folder, and the number of text files per folder should not exceed 2,000 files. There should be no special characters (including commas) in the folder names. For redacted documents, provide the full text for the redacted version.

5.   **Linked Native Files**
   Copies of original email and native file documents/attachments must be included for all electronic productions.
   a.   Native file documents must be named per the FIRSTBATES number
   b.   The full path of the native file must be provided in the .DAT file for the LINK field
   c.   The number of native files per folder should not exceed 2,000 files

U.S. Securities and Exchange Commission
Data Delivery Standards

**II.   Native File Production without Load Files**

With prior approval, native files may be produced without load files. Native file productions should not be Bates numbered. Native files must be produced as they are maintained in the normal course of business and organized by custodian-named file folders. Native email files (.PST or .MBOX) must be separated by custodian.

**III.   Adobe PDF File Production**

With prior approval, Adobe PDF files may be produced in native file format.

1. All PDFs must be unitized at the document level, i.e., each PDF must represent a discrete document.
2. PDF files should be produced in separate folders named by the custodian. The folders should not contain any special characters (including commas).
3. All PDF files must contain embedded text that includes all discernible words within the document, not selected text or image only. This requires all layers of the PDF to be flattened first.
4. If PDF files are Bates endorsed, the PDF files must be named by the Bates range.

**IV.   Audio Files**

Audio files from telephone recording systems must be produced in a format that is playable using Microsoft Windows Media Player™. Additionally, the call information (metadata) related to each audio recording MUST be provided. The metadata file must be produced in a delimited text format. Field names must be included in the first row of the text file. The metadata must include, at a minimum, the following fields:

1) Caller Name:        Caller's name or account/identification number
2) Originating Number:  Caller's phone number
3) Called Party Name:   Called party's name
4) Terminating Number:  Called party's phone number
5) Date:              Date of call
6) Time:              Time of call
7) Filename:          Filename of audio file

**V.   Video Files**

Video files must be produced in a format that is playable using Microsoft Windows Media Player™.

**VI.   Electronic Trade and Bank Records**

When producing electronic trade records, bank records, or financial statements, provide the files in one of the following formats:

1. MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

2. Delimited text file with header information detailing the field structure. The preferred delimiter is a vertical bar "|". If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

**VII.   Electronic Phone Records**

When producing an MS Excel spreadsheet for electronic phone records, provide the files in the following format:

1. MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details. Data must be formatted in its native format (i.e. dates in a date format, numbers in an appropriate numerical format, and numbers with leading zeroes as text).
   a. The metadata that must be included is outlined in **Addendum B** of this document. Each field of data must be loaded into a separate column. For example, Date and Start_Time must be produced in separate columns and not combined into a single column containing both pieces of information. Any fields of data that are provided in addition to those listed in **Addendum B** must also be loaded into separate columns.

## VIII. Audit Workpapers

The SEC prefers for workpapers to be produced in two formats: (1) With Bates numbers in accordance with the SEC Data Delivery Standards; and (2) in native format or if proprietary software was used, on a standalone laptop with the appropriate software loaded so that the workpapers may be reviewed as they would have been maintained in the ordinary course of business. The laptop must have printing capability, and when possible, the laptop should be configured to enable a Virtual Machine (VM) environment.

## IX. Mobile Device Data

Before producing any mobile device data (including but not limited to text messages and application data) parties should reach out to the requesting SEC staff member in order to discuss the appropriate production format.

## ADDENDUM A

The metadata of electronic document collections should be extracted and provided in a .DAT file using the field definition and formatting described below:

| Field Name | Sample Data | Description |
|---|---|---|
| FIRSTBATES | EDC0000001 | First Bates number of native file document/email |
| LASTBATES | EDC0000001 | Last Bates number of native file document/email<br>**The LASTBATES field should be populated for single page documents/emails. |
| ATTACHRANGE | EDC0000001 - EDC0000015 | Bates number of the first page of the parent document to the Bates number of the last page of the last attachment "child" document |
| BEGATTACH | EDC0000001 | First Bates number of attachment range |
| ENDATTACH | EDC0000015 | Last Bates number of attachment range |
| PARENT_BATES | EDC0000001 | First Bates number of parent document/Email<br>**This PARENT_BATES field should be populated in each record representing an attachment "child" document |
| CHILD_BATES | EDC0000002; EDC0000014 | First Bates number of "child" attachment(s); can be more than one Bates number listed depending on the number of attachments<br>**The CHILD_BATES field should be populated in each record representing a "parent" document |
| CUSTODIAN | Smith, John | Email: Mailbox where the email resided<br>Native: Name of the individual or department from whose files the document originated |
| FROM | John Smith | Email: Sender<br>Native: Author(s) of document<br>**semi-colon should be used to separate multiple entries |
| TO | Coffman, Janice; LeeW [mailto:LeeW@MSN.com] | Recipient(s)<br>**semi-colon should be used to separate multiple entries |
| CC | Frank Thompson [mailto: frank_Thompson@cdt.com] | Carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| BCC | John Cain | Blind carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| SUBJECT | Board Meeting Minutes | Email: Subject line of the email<br>Native: Title of document (if available) |
| FILE_NAME | BoardMeetingMinutes.docx | Native: Name of the original native file, including extension |
| DATE_SENT | 10/12/2010 | Email: Date the email was sent<br>Native: (empty) |
| TIME_SENT/TIME_ZONE | 07:05 PM GMT | Email: Time the email was sent/ Time zone in which the emails were standardized during conversion.<br>Native: (empty)<br>**This data must be a separate field and cannot be combined with the DATE_SENT field |
| TIME_ZONE | GMT | The time zone in which the emails were standardized during conversion.<br>Email: Time zone<br>Native: (empty) |

6

| LINK | D:\001\ EDC0000001.msg | Hyperlink to the email or native file document **The linked file must be named per the FIRSTBATES number |
|---|---|---|
| MIME_TYPE | application/msword | The content type of an email or native file document as identified/extracted from the header |
| FILE_EXTEN | MSG | The file type extension representing the email or native file document; will vary depending on the format |
| AUTHOR | John Smith | Email: (empty) Native: Author of the document |
| LAST_AUTHOR | Jane Doe | Email: (empty) Native: Last Author of the document |
| DATE_CREATED | 10/10/2010 | Email: (empty) Native: Date the document was created |
| TIME_CREATED/TIME_ZONE | 10:25 AM GMT | Email: (empty) Native: Time the document was created including time zone **This data must be a separate field and cannot be combined with the DATE_CREATED field |
| DATE_MOD | 10/12/2010 | Email: (empty) Native: Date the document was last modified |
| TIME_MOD/TIME_ZONE | 07:00 PM GMT | Email: (empty) Native: Time the document was last modified including the time zone **This data must be a separate field and cannot be combined with the DATE_MOD field |
| DATE_ACCESSD | 10/12/2010 | Email: (empty) Native: Date the document was last accessed |
| TIME_ACCESSD/TIME_ZONE | 07:00 PM GMT | Email: (empty) Native: Time the document was last accessed including the time zone **This data must be a separate field and cannot be combined with the DATE_ACCESSD field |
| PRINTED_DATE | 10/12/2010 | Email: (empty) Native: Date the document was last printed |
| FILE_SIZE | 5,952 | Size of native file document/email in KB |
| PGCOUNT | 1 | Number of pages in native file document/email |
| PATH | J:\Shared\SmithJ\October Agenda.doc | Email: (empty) Native: Path where native file document was stored including original file name. |
| INTFILEPATH | Personal Folders\Deleted Items\Board Meeting Minutes.msg | Email: original location of email including original file name. Native: (empty) |
| INTMSGID | <000805c2c71b$75977050$cb 8306d1@MSN> | Email: Unique Message ID Native: (empty) |

Rev 01/2023

| HEADER | Return-Path: <example_from@dc.edu> X-SpamCatcher-Score:1[X] Received:from[136.167.40.119] (HELO dc.edu) by fe3.dc.edu (CommuniGate Pro SMTP4.1.8) with ESMTP-TLS id 61258719 for example_to@mail.dc.edu; Mon, 23 Aug 2004 11:40:10 -0400 Message-ID: <4129F3CA.2020509@dc.edu> Date: Mon, 23 Aug 2005 11:40:36 -400 From: Taylor Evans <example_from@dc.edu> User-Agent:Mozilla/5.0 (Windows;U; Windows NT 5.1; en-US;rv:1.0.1) Gecko/20020823 Netscape/7.0 X-Accept-Language:en-us,en MIME-Version:1.0 To: Jon Smith <example_to@mail.dc.edu> Subject:Business Development Meeting Content-Type: text/plain;charset=us-ascii; format=flowed Content-Transfer-Encoding:7bit | Email: The email header information Native: (empty) |
|---|---|---|
| SHA256 | AD6128C5CA40164AF71A1E FC800E12D2F195CE07BB5F8 C813B0888A2DDE6A06F | SHA-256 hash value of the document. |
| OCRPATH | TEXT/001/EDC0000001.txt | Path to extracted text of the native file |

Sample Image Cross-Reference File:

```
IMG0000001,,E:\001\IMG0000001.TIF,Y,,,
IMG0000002,,E:\001\IMG0000002.TIF,,,,
IMG0000003,,E:\001\IMG0000003.TIF,,,,
IMG0000004,,E:\001\IMG0000004.TIF,Y,,,
IMG0000005,,E:\001\IMG0000005.TIF,Y,,,
IMG0000006,,E:\001\IMG0000006.TIF,,,,
```

## **ADDENDUM B**

For Electronic Phone Records, include the following fields in separate columns:

For Calls:

1) Account Number
2) Connection Date – Date the call was received or made
3) Connection Time – Time call was received or made
4) Seizure Time – Time it took for the call to be placed in seconds
5) Originating Number – Phone that placed the call
6) Terminating Number – Phone that received the call
7) Elapsed Time – The length of time the call lasted, preferably in seconds
8) End Time – The time the call ended
9) Number Dialed – Actual number dialed
10) IMEI Originating – Unique id to phone used to make call
11) IMEI Terminating– Unique id to phone used to receive call
12) IMSI Originating – Unique id to phone used to make call
13) IMSI Terminating- Unique id to phone used to receive call
14) Call Codes – Identify call direction or other routing information
15) Time Zone – Time Zone in which the call was received or placed, if applicable

For Text messages:

1) Account Number
2) Connection Date – Date the text was received or made
3) Connection Time – Time text was received or made
4) Originating Number – Who placed the text
5) Terminating Number – Who received the text
6) IMEI Originating – Unique id to phone used to make text
7) IMEI Terminating– Unique id to phone used to receive text
8) IMSI Originating - Unique id to phone used to make text
9) IMSI Terminating- Unique id to phone used to receive text
10) Text Code – Identify text direction, or other text routing information
11) Text Type Code – Type of text message (sent SMS, MMS, or other)
12) Time Zone – Time Zone in which the call was received or placed, if applicable

For Mobile Data Usage:

1) Account Number
2) Connection Date – Date the data was received or made
3) Connection Time – Time data was received or made
4) Originating number – Number that used data
5) IMEI Originating – Unique id of phone that used data
6) IMSI Originating - Unique id of phone that used data
7) Data or Data codes – Identify data direction, or other data routing information
8) Time Zone – Time Zone in which the call was received or placed, if applicable

**DECLARATION OF _____[*Insert Name*] CERTIFYING RECORDS
OF REGULARLY CONDUCTED BUSINESS ACTIVITY**

I, the undersigned, _____[*insert name*], pursuant to 28 U.S.C. § 1746, declare
that:

1.  I am employed by _____ [*insert name of company*] as
    _____[*insert position*] and by reason of my position am authorized and
    qualified to make this declaration.

    _____

    _____
    _____[*if possible supply additional information as to how person is qualified to
    make declaration, e.g., I am custodian of records, I am familiar with the company's
    recordkeeping practices or systems, etc.]*

2.  I further certify that the documents [*attached hereto or submitted herewith*] [*circle one*]
    and stamped _____[*insert bates range*] are true copies of records that
    were:

    (a) made at or near the time of the occurrence of the matters set forth therein, by,
    or from information transmitted by, a person with knowledge of those matters;

    (b) kept in the course of regularly conducted business activity; and

    (c) made by the regularly conducted business activity as a regular practice.

    I declare under penalty of perjury that the foregoing is true and correct. Executed on
    _____[*date*].


    _____
    [*Name*]

# EXHIBIT P

| | |
|---|---|
| **From:** | UPS |
| **To:** | Bradley, Kyle |
| **Subject:** | UPS Delivery Notification, Tracking Number 1ZA3749AA292573496 |
| **Date:** | Friday, March 10, 2023 1:23:24 PM |

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.



## Hello, your package has been delivered.

**Delivery Date:**   Friday, 03/10/2023
**Delivery Time:**   10:19 AM
**Left At:**   RESIDENTIAL
**Signed by:**   Jan



| | | |
|---|---|---|
| Set Delivery Instructions | Manage Preferences | View My Packages |

### SEC ATLANTA REG OFFICE

| | |
|---|---|
| **Tracking Number:** | 1ZA3749AA292573496 |
| **Ship To:** | SOUTH BAY ACQUISITIONS, LLC <br> ███████████ <br> SAN DIEGO, CA 921241555 <br> US |
| **Number of Packages:** | 1 |
| **UPS Service:** | UPS Next Day Air® |
| **Package Weight:** | 0.5 LBS |
| **Reference Number:** | A-4043 |

 Download the UPS mobile app

© 2023 United Parcel Service of America, Inc. UPS, the UPS brandmark, and the color brown are trademarks of United Parcel Service of America, Inc. All rights reserved.

All trademarks, trade names, or service marks that appear in connection with UPS's services are the property of their respective owners.

Please do not reply directly to this email.

**Manage Your UPS My Choice Delivery Alerts**

**Review the UPS Privacy Notice**

**Review the UPS My Choice Service Terms**