# EXHIBIT A

E-FILED IN OFFICE - CE
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
23-A-01365-11
2/20/2023 5:13 PM
TIANA P. GARNER, CLERK

**IN THE SUPERIOR COURT OF GWINNETT COUNTY**
**STATE OF GEORGIA**

| | |
|---|---|
| P1 FINANCE, a Division of Peach State Federal Credit Union,<br><br>Plaintiff,<br>v.<br><br>NATIONAL LIABILITY & FIRE INSURANCE COMPANY, TBF ASSOCIATES, INC., JR TOWING & TRUCK REPAIR CORP., and KINGMAN TRANSPORT, LLC,<br><br>Defendants. | Civil Action File No.<br><br>23-A-01365-11 |

## VERIFIED COMPLAINT

**COMES NOW** Plaintiff, P1 Finance, a Division of Peach State Federal Credit Union (hereinafter "Plaintiff") and hereby states the following as its Complaint in the above-referenced matter:

1.

Defendant National Liability & Fire Insurance Company ("Defendant National Liability") is subject to the jurisdiction and venue of this Court pursuant to the provisions of Ga Const. Art. 6, § 2, ¶ IV.

2.

Defendant TBF Associates, Inc. ("Defendant TBF") is subject to the jurisdiction and venue of this Court pursuant to the forum selection clause in the Agreement described below.

3.

Defendant JR Towing & Truck Repair Corp. ("Defendant JR Towing") is subject to the jurisdiction and venue of this Court pursuant to the forum selection clause in the Agreement described below.

4.

Defendant Kingman Transport, LLC ("Defendant Kingman Transport") is subject to the jurisdiction and venue of this Court pursuant to the forum selection clause in the Agreement described below.

**COUNT 1 – BREACH OF CONTRACT – (AGAINST DEFENDANT TBF)**

5.

Defendant TBF entered into two (2) Premium Finance Agreements and Disclosure Statements (collectively "TBF Agreements"), pursuant to which Defendant TBF obtained loans in the combined principal amount of $467,603.26 to finance the payment of its insurance premiums for certain insurance policies (collectively the "TBF policies"). True and correct copies of the TBF Agreements are attached hereto collectively as Exhibit "A".

6.

Defendant TBF agreed to make payments pursuant to the terms and conditions set forth in the TBF Agreements.

7.

Defendant TBF defaulted on the TBF Agreements for, among other things, failure to pay Plaintiff in accordance with the terms of the TBF Agreements. See TBF Account Statement, a true and correct copy of which is attached hereto as Exhibit "B".

8.

As of February 2, 2023, Defendant TBF is indebted to Plaintiff in the total principal amount of $223,438.78, plus accrued interest in the amount of $38,319.75, and continuing to accrue thereafter at the default rate of 18% (or $113.09 per day), and late charges and other fees in the amount of $2,575.97.

9.

The Plaintiff has made demand upon Defendant TBF for payment of said indebtedness, but Defendant TBF has steadfastly failed and refused to pay said sums.

10.

The TBF Agreements contain provisions for reasonable attorneys' fees. Plaintiff intends to enforce said provisions. Pursuant to the provisions of O.C.G.A. § 13-1-11, Defendant TBF has 10 days from the receipt of this notice to pay the principal and interest owing without incurring liability for attorneys' fees.

**COUNT 2 – UNJUST ENRICHMENT (AGAINST DEFENDANT NATIONAL LIABILITY)**

11.

Defendant National Liability is the insurer of the TBF insurance policies that were financed by the TBF Agreements.

12.

As set forth in the TBF Agreements, the laws of the state of the issuance of the policies governs. The TBF policies were issued in the State of New York.

13.

The TBF policies were cancelled effective February 25, 2022, and Defendant National Liability was formally notified of the cancellation on February 22, 2022. See Notice of Cancellation, a true and correct copy of which is attached hereto as Exhibit "C." On March 3, 2022, Defendant National Liability was again notified of the cancellation after Defendant TBF's payment returned due to insufficient funds.

14.

Pursuant to NY Banking Law § 576(1)(f) and NY Insurance Law § 3428(d), upon the cancellation of a financed insurance policy, the insurance carrier must return the gross unearned

premiums due under the insurance contract to the premium finance agency within sixty (60) days of the effective date of cancellation of the policy.

15.

Despite receipt of the Notice of Cancellation, and repeated demands, Defendant National Liability has failed to return the gross unearned premiums to Plaintiff, in violation of the New York statutes cited above.

16.

Defendant National Liability has been unjustly enriched by retaining the unearned gross premiums due under the insurance policies.

17.

Defendant National Liability indebted to Plaintiff as to the TBF policies in the combined amount of $361,279.30.

**COUNT 3 – BREACH OF CONTRACT – (AGAINST DEFENDANT JR TOWING)**

18.

Defendant JR Towing entered into a Premium Finance Agreement and Disclosure Statement (the "JR Towing Agreement"), pursuant to which Defendant JR Towing obtained a loan in the principal amount of $525,262.57 to finance the payment of its insurance premiums for certain insurance policies (collectively the "JR Towing policies"). A true and correct copy of the JR Towing Agreement is attached hereto as Exhibit "D".

19.

Defendant JR Towing agreed to make payments pursuant to the terms and conditions set forth in the JR Towing Agreement.

20.

Defendant JR Towing defaulted on the JR Towing Agreement for, among other things, failure to pay Plaintiff in accordance with the terms of the JR Towing Agreement. See JR Towing Account Statement, a true and correct copy of which is attached hereto as Exhibit "E".

21.

As of February 2, 2023, Defendant JR Towing is indebted to Plaintiff in the total principal amount of $46,901.79, plus accrued interest in the amount of $5,758.17, and continuing to accrue thereafter at the default rate of 18% (or $29.67 per day), and late charges and other fees in the amount of $13,101.88.

22.

The Plaintiff has made demand upon Defendant JR Towing for payment of said indebtedness, but Defendant JR Towing has steadfastly failed and refused to pay said sums.

23.

The JR Towing Agreement contains a provision for reasonable attorneys' fees. Plaintiff intends to enforce said provision. Pursuant to the provisions of O.C.G.A. § 13-1-11, Defendant JR Towing has 10 days from the receipt of this notice to pay the principal and interest owing without incurring liability for attorneys' fees.

**COUNT 4 – UNJUST ENRICHMENT (AGAINST DEFENDANT NATIONAL LIABILITY)**

24.

Defendant National Liability is the insurer of the JR Towing insurance policies that were financed by the JR Towing Agreement.

25.

As set forth in the JR Towing Agreement, the laws of the state of the issuance of the policies governs. The JR Towing policies were issued in the State of New York.

26.

The JR Towing policies were cancelled effective June 9, 2022, and Defendant National Liability was formally notified of the cancellation on June 6, 2022. See Notices of Cancellation, true and correct copies of which are attached hereto collectively as Exhibit "F."

27.

Pursuant to NY Banking Law § 576(1)(f) and NY Insurance Law § 3428(d), upon the cancellation of a financed insurance policy, the insurance carrier must return the gross unearned premiums due under the insurance contract to the premium finance agency within sixty (60) days of the effective date of cancellation of the policy.

28.

Despite receipt of the Notices of Cancellation, and repeated demands, Defendant National Liability has failed to return the gross unearned premiums to Plaintiff, in violation of the New York statutes cited above.

29.

Defendant National Liability has been unjustly enriched by retaining the unearned gross premiums due under the insurance policies.

30.

Defendant National Liability indebted to Plaintiff as to the JR Towing policies in the combined amount of $143,596.59.

**COUNT 5 – BREACH OF CONTRACT – (AGAINST DEFENDANT KINGMAN TRANSPORT)**

31.

Defendant Kingman Transport entered into a Premium Finance Agreement and Disclosure Statement (the "Kingman Transport Agreement"), pursuant to which Defendant Kingman Transport obtained a loan in the principal amount of $36,297.00 to finance the payment of its

insurance premium for a certain insurance policy (the “Kingman Transport policy”). A true and correct copy of the Kingman Transport Agreement is attached hereto as Exhibit “G”.

32.

Defendant Kingman Transport agreed to make payments pursuant to the terms and conditions set forth in the Kingman Transport Agreement.

33.

Defendant Kingman Transport defaulted on the Kingman Transport Agreement for, among other things, failure to pay Plaintiff in accordance with the terms of the Kingman Transport Agreement. See Kingman Transport Account Statement, a true and correct copy of which is attached hereto as Exhibit “H”.

34.

As of February 2, 2023, Defendant Kingman Transport is indebted to Plaintiff in the total principal amount of $8,606.12, plus accrued interest in the amount of $6,207.25, and continuing to accrue thereafter at the default rate of 18% (or $4.58 per day), and late charges and other fees in the amount of $286.85.

35.

The Plaintiff has made demand upon Defendant Kingman Transport for payment of said indebtedness, but Defendant Kingman Transport has steadfastly failed and refused to pay said sums.

36.

The Kingman Transport Agreement contains a provision for reasonable attorneys' fees. Plaintiff intends to enforce said provision. Pursuant to the provisions of O.C.G.A. § 13-1-11, Defendant Kingman Transport has 10 days from the receipt of this notice to pay the principal and interest owing without incurring liability for attorneys’ fees.

**COUNT 6 – UNJUST ENRICHMENT (AGAINST DEFENDANT NATIONAL LIABILITY)**

37.

Defendant National Liability is the insurer of the Kingman Transport insurance policy that was financed by the Kingman Transport Agreement.

38.

As set forth in the Kingman Transport Agreement, the laws of the state of the issuance of the policy governs. The Kingman Transport policy was issued in the State of Utah.

39.

The Kingman Transport policy was cancelled effective March 18, 2019, and Defendant National Liability was formally notified of the cancellation on March 18, 2019. Defendant Kingman Transport then made payment which returned due to insufficient funds on April 12, 2019. At that time, Defendant National Liability was then again notified of the cancellation on April 12, 2019. See Notices of Cancellation, true and correct copies of which are attached hereto collectively as Exhibit "I."

40.

Pursuant to UT ST § 31A-21-305(2)(d), upon the cancellation of a financed insurance policy, the insurance carrier must return the gross unearned premiums due under the insurance contract to the premium finance agency.

41.

Despite receipt of the Notices of Cancellation, and repeated demands, Defendant National Liability has failed to return the gross unearned premiums to Plaintiff, in violation of the Utah statute cited above.

42.

Defendant National Liability has been unjustly enriched by retaining the unearned gross premium due under the insurance policy.

43.

Defendant National Liability indebted to Plaintiff as to the Kingman Transport policy in the amount of $22,020.18.

**WHEREFORE**, the Plaintiff demands Judgment against the Defendants as follows:

a)  As to Count 1, against Defendant TBF in the total principal amount of $223,438.78, plus accrued interest in the amount of $38,319.75 through February 2, 2023, and continuing to accrue thereafter at the default rate of 18% (or $113.09 per day), and late charges and other fees in the amount of $2,575.97, and statutory attorneys' fees pursuant to O.C.G.A. § 13-1-11;

b)  As to Count 2, against Defendant National Liability in the total principal amount of $361,279.30;

c)  As to Count 3, against Defendant JR Towing in the total principal amount of $46,901.79, plus accrued interest in the amount of $5,758.17 through February 2, 2023, and continuing to accrue thereafter at the default rate of 18% (or $29.67 per day), and late charges and other fees in the amount of $13,101.88, and statutory attorneys' fees pursuant to O.C.G.A. § 13-1-11; and

d)  As to Count 4, against Defendant National Liability in the total principal amount of $143,596.59;

e) As to Count 5, against Defendant Kingman Transport in the total principal amount of $8,606.12 plus accrued interest in the amount of $6,207.25 through February2, 2023, and continuing to accrue thereafter at the default rate of 18% (or $4.58 per day), and late charges and other fees in the amount of $286.85, and statutory attorneys' fees pursuant to O.C.G.A. § 13-1-11;

f) As to Count 6, against Defendant National Liability in the total principal amount of $22,020.18; and

g) Post-judgment interest and costs of Court

**RESPECTFULLY SUBMITTED**, this 20th day of February, 2023.

*/s/ Jeremy B. Ross*
JEREMY B. ROSS
Georgia State Bar No. 367880

AUBREY THRASHER, LLC
1170 Peachtree Street NE, Suite 1925
Atlanta, Georgia 30309
(404) 978-1355
jross@aubreythrasher.com
Attorneys for Plaintiff

**IN THE SUPERIOR COURT OF GWINNETT COUNTY**
**STATE OF GEORGIA**

| P1 FINANCE, a Division of Peach State Federal Credit Union,<br><br>Plaintiff,<br>v.<br><br>NATIONAL LIABILITY & FIRE INSURANCE COMPANY, TBF ASSOCIATES, INC., JR TOWING & TRUCK REPAIR CORP., and KINGMAN TRANSPORT, LLC,<br><br>Defendants. | Civil Action File No.<br><br>23-A-01365-11 |
|---|---|

## VERIFICATION

Personally appeared before the undersigned subscribing officer, duly authorized to administer oaths, Ashley Dunoff, Accounts Receivable Manager, P1 Finance, a Division of Peach State Federal Credit Union, who after being duly sworn, deposes and says that she has reviewed the Verified Complaint in the above-styled action and that the facts contained therein are based upon her personal knowledge and are true and correct.

This 9 day of February, 2023.

Ashley Dunoff
Accounts Receivable Manager
P1 Finance, a Division of Peach State Federal Credit Union

Sworn to and subscribed before me
this 9 day of February, 2023.

NOTARY PUBLIC
My commission expires: 02.09.2026



DocuSign Envelope ID: 0AC39B3E-8098-4447-91D0-BDA2519D9142

# PREMIUM FINANCE AGREEMENT AND DISCLOSURE STATEMENT

**Quote:** [redacted]

P.O. Box 922025 PFA@P1Finance.com
Norcross, GA 30010-2025
(phone) 877-395-6770 (fax) 404-745-0737

- [✓] COMMERCIAL
- [ ] PERSONAL
- [✓] NEW CONTRACT
- [ ] ENDORSEMENT TO EXISTING

| BORROWER (Insured): Name and Address (as stated in policy) | PRODUCER (Agent/Broker): Name and Place of Business |
|---|---|
| TBF Associates Inc<br><br>14 Taft Avenue<br>Inwood, NY 11096<br>TELEPHONE: (516) 371-3555 FAX: | ACRISURE, LLC-TCE Insurance Services (Staten Isl)<br>201 EDWARD CURRY AVE<br><br>Staten Island, NY 10314<br>TELEPHONE: (718)370-3131 x. 103 FAX: (718)954-8985 |

In consideration of the premium(s) paid, or to be paid, by Lender on behalf of the Borrower, Borrower promises to pay to the order of P1 Finance, A Division of PSFCU, the Total of Payments, subject to the provisions hereinafter set forth.

**FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT**

| 1. TOTAL PREMIUM(s) | 2. DOWN PAYMENT | 3. UNPAID PREMIUM BALANCE | 4. FL DOC STAMP CHG | 5. AMOUNT FINANCED | 6. FINANCE CHARGE | 7. TOTAL OF PAYMENTS | 8. DEFERRED PAYMENT PRICE |
|---|---|---|---|---|---|---|---|
| $446,315.33 | $79,241.08 | $367,074.25 | $0.00 | $367,074.25 | $8,379.45 | $375,453.70 | $454,694.78 |

| 9. ANNUAL PERCENT RATE the cost of your credit at a yearly rate | | 10. AMOUNT OF EACH PAYMENT | 11. NUMBER OF PAYMENTS | 12. WHEN FIRST PAYMENT IS DUE |
|---|---|---|---|---|
| 4.95% | YOUR PAYMENT SCHEDULE WILL BE > | $37,545.37 | 10 Monthly | 11/25/2021 |

**SECURITY:** You are giving a security interest in any and all policies or other collateral listed on the Agreement.
**LATE CHARGE:** See Disclosure Statement, item number (3) three.
**PREPAYMENT:** If you pay off the loan early, you may be entitled to a refund of part of the finance charge.
**AMORTIZATION SCHEDULE:** Check box for amortization detail. [ ]

**BOX #3 ABOVE:** Paid to insurance companies, intermediary brokers or Agents listed here and in the Schedule of Policies.
**BOX #4 ABOVE:** Official fees paid to Florida Department of Revenue.
**FLORIDA DOCUMENTARY STAMP TAX:** Required by law when the amount Indicated in box #4 has been paid or will be paid directly to the Florida Department Of Revenue. Certificate of Registration #650370655-15-01.

**SCHEDULE OF POLICIES**

| POLICY PREFIX AND NUMBER | EFFECTIVE DATE OF POLICY OR ANNUAL INSTALLMENT | (1) FULL NAME OF INSURANCE COMPANY AND BRANCH OFFICE ADDRESS (2) NAME AND ADDRESS OF GENERAL AGENT TO WHICH POLICY PREMIUMS PAID | TYPE OF COVERAGE | MINIMUM EARNED PREMIUM | POLICY TERMS IN MONTHS COVERED BY PREMIUM | PREMIUM AMOUNT |
|---|---|---|---|---|---|---|
| TBA | 10/25/2021 | National Liability & Fire Insurance<br>CRC Group (Woodbury, NY)<br>175 Froelich Farm Blvd Woodbury, NY 11797 | COMMERCIAL AUTO (W/O FILINGS) | 0% | 12 | Prem: $123,060.00<br>Taxes: $160.00<br>Fees: $6,153.00 |

114,098

Notes: **(1)** If a check is tendered for the down payment and the check is dishonored, this Agreement shall be deemed not to have been accepted even if notification of acceptance has been issued by Lender; **(2)** Rescinding or otherwise invalidating any of the policies is equivalent to cancellation of the policy(ies); **(3)** Non-Payment may result in cancellation of the policies.

**Additional Policies Found on Page Two**

**NOTICE TO INSURED: 1. DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACE. 2. YOU ARE ENTITLED TO A COMPLETELY FILLED IN COPY OF THIS AGREEMENT. 3. UNDER THE LAW, YOU HAVE THE RIGHT TO PAY OFF IN ADVANCE THE FULL AMOUNT UNDER CERTAIN CONDITIONS TO OBTAIN A PARTIAL REFUND OF THE SERVICE CHARGE.**

THE UNDERSIGNED BORROWER AND OR ITS REPRESENTATIVE INSURANCE AGENT OR BROKER HAS SIGNED THIS LOAN AGREEMENT WHICH CONSISTS OF THIS PAGE, THE DISCLOSURE STATEMENT AND ANY ADDITIONAL PAGES WHICH MAY CONTAIN A SCHEDULE OF POLICIES. EACH HAVE RECEIVED A COPY OF THIS LOAN AGREEMENT AND AGREE TO ALL OF THE TERMS OF THIS AGREEMENT, NOW THEREFORE ON

THIS 26th DAY OF Oct, 2021

DocuSigned by:

X [signature]
SIGNATURE OF BORROWER
(If Corporation, Title of Officer Signing

**AGENT/BROKER CERTIFICATION**

The undersigned Agent/Broker, hereinafter referred to as "Agent", hereby represents and warrants that all policies listed in this agreement have been issued and delivered, and are in force and effect, that the policies listed in this agreement are not currently nor have they ever been the subject of any other premium finance agreement, that the down payment as shown in the contract has been paid (in good funds), that all policies therein were issued by the agency, and that all information, including the cancellation provisions effecting the return premium, for any of the policy(ies) listed has been accurately represented in the quote and any and all fully earned provisions that exist in the policies named in this loan have been disclosed. The Agent warrants that the above contract evidences a bona fide and legal transaction, that the Borrower is of legal age and as the capacity to contract, and if signed in corporate capacity, that the signatory has the authority to sign on behalf of such entity, that the Borrower has not filed for or is not preparing to file for bankruptcy protection, that the Borrower's signature is genuine, and that Agent has delivered a copy to the Borrower. Agent agrees that if any warranties contained in this Agreement are found to be untrue, it will immediately remit to Lender the full amount then remaining unpaid on this premium finance agreement. Upon termination of this Agreement or cancellation or rescission of any scheduled policies, the Agent agrees to pro-rata return any and all premiums, commissions, premium finance fees, risk management fees, and, Broker fees to Lender within ten (10) business days of receipt or according to applicable state law.

X Susan Diano
PRINT NAME OF AGENT OR BROKER

X [signature]
SIGNATURE OF AGENT OR BROKER

FOR FIN CO. USE

DocuSign Envelope ID: 0AC39B3E-8098-4447-91D0-BDA2519D9142

# PREMIUM FINANCE AGREEMENT AND DISCLOSURE STATEMENT

P1 FINANCE

Insured Name: TBF Associates Inc

Quote: [redacted]

**ADDITIONAL POLICIES**

| POLICY PREFIX AND NUMBER | EFFECTIVE DATE OF POLICY OR ANNUAL INSTALLMENT | (1) FULL NAME OF INSURANCE COMPANY AND BRANCH OFFICE ADDRESS (2) NAME AND ADDRESS OF GENERAL AGENT TO WHICH POLICY PREMIUMS IS PAID | TYPE OF COVERAGE | MINIMUM EARNED PREMIUM | POLICY TERMS IN MONTHS COVERED BY PREMIUM | PREMIUM AMOUNT |
|---|---|---|---|---|---|---|
| | 10/25/2021 | National Fire & Marine/National Indemnity(OmahaNE)<br>CRC Group (Woodbury, NY)<br>175 Froelich Farm Blvd Woodbury, NY 11797 | EXCESS AUTO | 25% | 12 | Prem: $291,388.00<br>Taxes: $10,985.33<br>Fees: $14,569.00 |
| | | | | | | Prem:<br>Taxes:<br>Fees: |
| | | | | | | Prem:<br>Taxes:<br>Fees: |
| | | | | | | Prem:<br>Taxes:<br>Fees: |
| | | | | | | Prem:<br>Taxes:<br>Fees: |
| | | | | | | Prem:<br>Taxes:<br>Fees: |
| | | | | | | Prem:<br>Taxes:<br>Fees: |
| | | | | | | Prem:<br>Taxes:<br>Fees: |
| | | | | | | Prem:<br>Taxes:<br>Fees: |
| | | | | | | Prem:<br>Taxes:<br>Fees: |
| | | | | | | Prem:<br>Taxes:<br>Fees: |
| | | | | | | Prem:<br>Taxes:<br>Fees: |
| | | | | | | Prem:<br>Taxes:<br>Fees: |
| | | | | | | Prem:<br>Taxes:<br>Fees: |
| | | | | | | Prem:<br>Taxes:<br>Fees: |
| | | | | | TOTAL OF PREMUMS ON PAGE 2: | $316,942.33 |

[redacted]

DocuSign Envelope ID: 0AC39B3E-8098-4447-91D0-BDA2519D9142

**WITNESSETH:** ___ ___SURE STATEMENT

P1 Finance, a Division of PSFCU, will hereinafter be referred to as "Lender", this Premium Finance Agreement will hereinafter be referred to as "Agreement", and the person/entity listed on Page 1 of the finance agreement under the section titled Borrower shall be hereinafter referred to as "Borrower".  That in consideration of the payment by the Lender to the respective insurance companies, or their agents, of the balance of the premiums upon the policies hereinbefore described in this Agreement(which policies have been issued and delivered to the Borrower at his request), the Borrower promises to pay to the Lender the amount shown in the completed schedule in this Agreement under the caption "Total of Payments", with service charge thereon as in said Schedule of Policies provided; and the Borrower agrees to the following terms set forth by the Lender:

1.   To secure all liabilities owed from the Borrower to the Lender, the Borrower assigns to the Lender all of their right, title, and interest in the insurance policies listed in this Agreement, and all rights therein including all dividends, unearned premiums and unearned commissions.

2.   The Borrower hereby irrevocably appoints the Lender as its attorney-in-fact with full power and authority to cancel the policies listed in this Agreement for default in payment. The insurance companies and/or its Agents listed in this Agreement are hereby authorized and directed, upon the request of the Lender, to cancel said policies and pay to the order of the Lender all gross, unearned premiums, commissions and fees thereon without proof of default hereunder or of breach hereof. Interest will continue to accrue on unpaid balances, and the Borrower shall remain liable for any deficiency together with interest at the highest allowable legal rate. In event of any breach by the Lender, Borrower's recovery is limited to the finance charge received in the Agreement by the Lender. Borrower waives a claim to consequential or other damages. The Borrower is liable for all sums due under this Agreement, and the Lender may, but is not bound to seek to recover its collateral. Borrower authorizes Lender to file a UCC Financing Statement on the assets of Borrower to further secure the repayment of debt owed to Lender.

3.   If any installment due hereunder is not paid within five (5) days of the due date, Borrower agrees to pay a delinquency and collections charge of 5% of the delinquent installment, or the maximum allowed by applicable law. If any installment due hereunder is not paid within fifteen (15) days of the due date, Borrower acknowledges and agrees that Lender may send notice of cancellation to the insurer which issued each of the policies listed in this Agreement.  If the Lender incurs collections costs for amounts due from Borrower, the Borrower agrees to pay reasonable attorney fees and other collection costs up to the maximum allowed by law. This contract will be construed by the laws of the state of issuance.  Borrower consents to jurisdiction in the civil courts of Gwinnett County, Georgia and waives any right to claim lack of personal jurisdiction in such court, for any proceedings to enforce the obligations of this Agreement.

4.   The Borrower agrees that the Lender may endorse the Borrower's name on any check or draft for all monies that become due from the company and apply the same as payment of this agreement, returning any excess amount equal to or greater than one dollar ($1.00) to the Borrower.

5.   In the event the payment made to Lender is returned because of insufficient funds, the Borrower agrees to pay the Lender all non-sufficient fund charges up to the maximum allowed by law.  All checks are accepted subject to collection.  No payment of any kind is deemed made until funds have cleared and been received.

6.   If a policy listed in this Agreement is not issued at the time this Agreement is executed, the Borrower gives the Lender the authority to fill in the name of the insuring company or authorized agent, policy number, and the due date of the first payment.  Upon request of the Borrower, the Lender may advance to the Borrower's agent or the insuring company any additional premiums that may become due, less normal down payment, adding the advance amount, plus any finance charge, to the Borrower's present contract.

7.   The Borrower recognizes and agrees that the Lender is a lender and not an insurer and that the Lender assumes no liability hereunder as an insurer. The Borrower agrees that all payments hereunder shall be made directly to the Lender or third party designated by Lender and payment by the Borrower to any other person, firm, insurance agent, or insurance company shall not constitute payment to the Lender. Borrower further agrees and understands that the intermediary broker, Agent, or insurance company whose name appears on the Premium Finance Agreement is not a representative of the Lender and has no authority to promise anything on behalf of the Lender. Furthermore, the Borrower understands that the Lender makes no warranties or representations concerning the financed coverage nor has it played any part in the selection, structuring, or acquisition of Borrower's insurance coverage.

8.   The Lender shall have the right to accept any payment or payments from the Borrower after the notice of cancellation has been sent to the insurance company(ies) and may apply them as a reduction of the indebtedness hereunder, and neither the acceptance nor the application of any such payment or payments shall constitute an undertaking on the part of the Lender to reinstate such insurance or constitute a waiver of any default hereunder. In the event the Lender requests reinstatement of such insurance, the Lender assumes no responsibility that such request will be received or honored by the insurance company, and the Borrower must verify the existence of coverage directly with the insurance company or its agent.

9.   Interest on the loan is earned each month according to the policy effective date based on the Rule of 78's or as otherwise required by law.  If the Borrower pays off the balance prior to maturity, they may receive a refund of a portion of the total finance charges.  No refund need be made if it is less than $1.00 or maximum allowable by applicable law.  Payment due dates will start on the date provided in Box 12 and continue each consecutive monthly, quarterly, semiannually, or annual payments as specified in Box 11.

10. In all cases, the Agreement is subject to approval and acceptance by the Lender.  Lender may decline the loan, known as a Premium Finance Agreement, for any reason at its discretion.  No contract is deemed in force until the Lender issues a notice of acceptance.

11. Borrower shall not assign the policy (except to mortgagees) without prior written consent of Lender.  Lender shall assign this loan to a funding source, at its discretion, payoff and reassign same, including the terms and conditions herein, to an alternative funding source, at any time during the term of this Agreement.

12. The money advanced by the Lender is only for the premium as determined at the time this Agreement is accepted by Lender.  Lender's payment shall not be applied by the insurance company to pay for any additional premiums owed by Borrower for any reason whatsoever.  Borrower agrees to pay the insurance company directly for any additional premiums which become due for any reason including, but not limited to an audit.  Lender may however, at its option, finance the additional premium according to the written agreement as stated above in section 6.

13. In the event of Fraud or any other type of misrepresentation, the Lender has the right to declare a default in the loan at any time at its discretion.  Any default under any Agreement between the Borrower and the Lender shall be deemed and is a default under all agreements between such parties.  All unearned premiums due to the Borrower  whether from the insurance financed pursuant to this Agreement or any other agreement between Borrower and the Lender shall be security for and collateralize all loans made to the Borrower.  Additionally, in the event of a default by the Borrower, the Lender may treat all assets of the Borrower as collateral under this Agreement, and may declare the remaining principal amount, with all accrued interest and fees, immediately due and payable.

14. The Borrower recognizes and agrees that their insurance Agent may add a fee to the base annual percentage rate as compensation for administering of the premium finance agreement where allowed by law.  All parties to this transaction agree that these fees will be earned on a pro-rata basis.

15. This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Agreement and all of which, when taken together, will be deemed to constitute one and the same agreement.  The exchange of copies of this Agreement including signature pages received by electronic or facsimile transmission shall constitute effective execution and delivery of this Agreement and may be used in lieu of the original Agreement for all purposes. Electronic or written signatures of the parties shall be deemed to be original.

16. Borrower agrees and acknowledges to authorize PSFCU to open a limited account on behalf of Borrower and at no cost, to facilitate the funding of this loan. The details and terms related to the account are available at: www.PeachStateFCU.org/business/savings/premiumfinance and which terms are incorporated by reference in this Agreement.

**THE BORROWER REPRESENTS AND WARRANTS AS FOLLOWS:**

That all financial information or financial representations given to Lender are true and correct in all respects, and fully and accurately present the financial conditions reflected therein.  The execution, delivery and performance of this Agreement by Borrower is within the requisite corporate or limited liability company power, and has been duly authorized. This Agreement, when duly executed and delivered, and accepted by the Lender will constitute legal, valid, and binding obligations of Borrower and will be applicable to and secure the payment and performance of this Agreement.

There are no actions, suits, or proceedings pending or to the knowledge of Borrower, threatened against or affecting the Borrower, or involving the validity or enforceability of this Agreement. There are no liens on or security interest in the collateral.  That (a) all the Borrowers or insureds are listed on the Agreement and that if all are not listed, then the one who is listed is authorized to act on behalf of all the Borrowers or insured; (b) no other party is entitled to any notice other than the one set forth on the face of the Agreement; (c) the Lender may, at its option, advance the premiums which are the subject of the Agreement to the insurance company, the intermediary broker or the Agent/Broker; (d) the Agreement contains the entire agreement between parties; (e) The Agent/Broker is the agent of the Borrower and that the Agent/Broker does not have the authority to make any representations on behalf of the Lender.  Borrower is not in default with respect to any order, writ, injunction, decree or demand of any court or any Governmental Authority.  The Borrower is not a Debtor under any bankruptcy proceedings of Title 11 of the U.S. Statues nor have any such proceedings been threatened.  Borrower is not insolvent and is not the subject of any actions or receiverships.  Borrower is not in any default with any other lender.

# PREMIUM FINANCE AGREEMENT AND DISCLOSURE STATEMENT

**Quote:** [redacted]

P.O. Box 922025 PFA@P1Finance.com
Norcross, GA 30010-2025
(phone) 877-395-6770 (fax) 404-745-0737

- [✓] COMMERCIAL
- [ ] PERSONAL
- [ ] NEW CONTRACT
- [✓] ENDORSEMENT TO EXISTING

| **BORROWER (Insured): Name and Address (as stated in policy)** | **PRODUCER (Agent/Broker): Name and Place of Business** |
|---|---|
| TBF Associates Inc<br><br>14 Taft Avenue<br>Inwood, NY 11096<br>TELEPHONE: (516) 371-3555 FAX: | ACRISURE, LLC-TCE Insurance Services (Staten Isl)<br>201 EDWARD CURRY AVE<br><br>Staten Island, NY 10314<br>TELEPHONE: (718)370-3131 x. 103 FAX: (718)954-8985 |

In consideration of the premium(s) paid, or to be paid, by Lender on behalf of the Borrower, Borrower promises to pay to the order of P1 Finance, A Division of PSFCU, the Total of Payments, subject to the provisions hereinafter set forth.

**FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT**

| 1. TOTAL PREMIUM(s) | 2. DOWN PAYMENT | 3. UNPAID PREMIUM BALANCE | 4. FL DOC STAMP CHG | 5. AMOUNT FINANCED | 6. FINANCE CHARGE | 7. TOTAL OF PAYMENTS | 8. DEFERRED PAYMENT PRICE |
|---|---|---|---|---|---|---|---|
| $134,088.68 | $33,559.67 | $100,529.01 | $0.00 | $100,529.01 | $2,463.95 | $102,992.96 | $136,552.63 |

| 9. ANNUAL PERCENT RATE the cost of your credit at a yearly rate | | 10. AMOUNT OF EACH PAYMENT | 11. NUMBER OF PAYMENTS | 12. WHEN FIRST PAYMENT IS DUE |
|---|---|---|---|---|
| 4.95% | YOUR PAYMENT SCHEDULE WILL BE > | $12,874.12 | 8 Monthly | 1/25/2022 |

**SECURITY:** You are giving a security interest in any and all policies or other collateral listed on the Agreement.
**LATE CHARGE:** See Disclosure Statement, item number (3) three.
**PREPAYMENT:** If you pay off the loan early, you may be entitled to a refund of part of the finance charge.
**AMORTIZATION SCHEDULE:** Check box for amortization detail. [ ]

**BOX #3 ABOVE:** Paid to insurance companies, intermediary brokers or Agents listed here and in the Schedule of Policies.
**BOX #4 ABOVE:** Official fees paid to Florida Department of Revenue.
**FLORIDA DOCUMENTARY STAMP TAX:** Required by law when the amount indicated in box #4 has been paid or will be paid directly to the Florida Department Of Revenue. Certificate of Registration #650370655-15-01.

**SCHEDULE OF POLICIES**

| POLICY PREFIX AND NUMBER | EFFECTIVE DATE OF POLICY OR ANNUAL INSTALLMENT | (1) FULL NAME OF INSURANCE COMPANY AND BRANCH OFFICE ADDRESS (2) NAME AND ADDRESS OF GENERAL AGENT TO WHICH POLICY PREMIUMS PAID | TYPE OF COVERAGE | MINIMUM EARNED PREMIUM | POLICY TERMS IN MONTHS COVERED BY PREMIUM | PREMIUM AMOUNT |
|---|---|---|---|---|---|---|
| 73TRB004313 | 11/14/2021 | National Liability & Fire Insurance<br>CRC Group (Woodbury, NY)<br>175 Froelich Farm Blvd Woodbury, NY 11797 | COMMERCIAL AUTO (W/O FILINGS) | 0% | 11 | Prem: $35,755.00<br>Taxes: $0.00<br>Fees: $50.00 |

Notes: (1) If a check is tendered for the down payment and the check is dishonored, this Agreement shall be deemed not to have been accepted even if notification of acceptance has been issued by Lender; (2) Rescinding or otherwise invalidating any of the policies is equivalent to cancellation of the policy(ies); (3) Non-Payment may result in cancellation of the policies.

**Additional Policies Found on Page Two**

**NOTICE TO INSURED: 1. DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACE. 2. YOU ARE ENTITLED TO A COMPLETELY FILLED IN COPY OF THIS AGREEMENT. 3. UNDER THE LAW, YOU HAVE THE RIGHT TO PAY OFF IN ADVANCE THE FULL AMOUNT UNDER CERTAIN CONDITIONS TO OBTAIN A PARTIAL REFUND OF THE SERVICE CHARGE.**

THE UNDERSIGNED BORROWER AND OR ITS REPRESENTATIVE INSURANCE AGENT OR BROKER HAS SIGNED THIS LOAN AGREEMENT WHICH CONSISTS OF THIS PAGE, THE DISCLOSURE STATEMENT AND ANY ADDITIONAL PAGES WHICH MAY CONTAIN A SCHEDULE OF POLICIES. EACH HAVE RECEIVED A COPY OF THIS LOAN AGREEMENT AND AGREE TO ALL OF THE TERMS OF THIS AGREEMENT, NOW THEREFORE ON

THIS 20th DAY OF JAN. 2022

X [signature]
SIGNATURE OF BORROWER
(If Corporation, Title of Officer Signing

**AGENT/BROKER CERTIFICATION**

The undersigned Agent/Broker, hereinafter referred to as "Agent", hereby represents and warrants that all policies listed in this agreement have been issued and delivered, and are in force and effect, that the policies listed in this agreement are not currently nor have they ever been the subject of any other premium finance agreement, that the down payment as shown in the contract has been paid (in good funds), that all policies therein were issued by the agency, and that all information, including the cancellation provisions effecting the return premium, for any of the policy(ies) listed has been accurately represented in the quote and any and all fully earned provisions that exist in the policies named in this loan have been disclosed. The Agent warrants that the above contract evidences a bona fide and legal transaction, that the Borrower is of legal age and as the capacity to contract, and if signed in corporate capacity, that the signatory has the authority to sign on behalf of such entity, that the Borrower has not filed for or is not preparing to file for bankruptcy protection, that the Borrower's signature is genuine, and that Agent has delivered a copy to the Borrower. Agent agrees that if any warranties contained in this Agreement are found to be untrue, it will immediately remit to Lender the full amount then remaining unpaid on this premium finance agreement. Upon termination of this Agreement or cancellation or rescission of any scheduled policies, the Agent agrees to pro-rata return any and all premiums, commissions, premium finance fees, risk management fees, and, Broker fees to Lender within ten (10) business days of receipt or according to applicable state law.

X Susan Bruno
PRINT NAME OF AGENT OR BROKER

X [signature]
SIGNATURE OF AGENT OR BROKER

**FOR FIN CO. USE**

# PREMIUM FINANCE AGREEMENT AND DISCLOSURE STATEMENT

Insured Name: TBF Associates Inc **Quote: 395673.1**

| ADDITIONAL POLICIES | | | | | | |
|---|---|---|---|---|---|---|
| POLICY PREFIX AND NUMBER | EFFECTIVE DATE OF POLICY OR ANNUAL INSTALLMENT | (1) FULL NAME OF INSURANCE COMPANY AND BRANCH OFFICE ADDRESS (2) NAME AND ADDRESS OF GENERAL AGENT TO WHICH POLICY PREMIUMS IS PAID | TYPE OF COVERAGE | MINIMUM EARNED PREMIUM | POLICY TERMS IN MONTHS COVERED BY PREMIUM | PREMIUM AMOUNT |
| 72XAS006938 | 11/14/2021 | National Fire & Marine/National Indemnity(OmahaNE)<br>CRC Group (Woodbury, NY)<br>175 Froelich Farm Blvd Woodbury, NY 11797 | EXCESS AUTO | 0% | 11 | Prem: $94,713.00<br>Taxes: $3,570.68<br>Fees: $0.00 |
| | | | | | | Prem:<br>Taxes:<br>Fees: |
| | | | | | | Prem:<br>Taxes:<br>Fees: |
| | | | | | | Prem:<br>Taxes:<br>Fees: |
| | | | | | | Prem:<br>Taxes:<br>Fees: |
| | | | | | | Prem:<br>Taxes:<br>Fees: |
| | | | | | | Prem:<br>Taxes:<br>Fees: |
| | | | | | | Prem:<br>Taxes:<br>Fees: |
| | | | | | | Prem:<br>Taxes:<br>Fees: |
| | | | | | | Prem:<br>Taxes:<br>Fees: |
| | | | | | | Prem:<br>Taxes:<br>Fees: |
| | | | | | | Prem:<br>Taxes:<br>Fees: |
| | | | | | | Prem:<br>Taxes:<br>Fees: |
| | | | | | | Prem:<br>Taxes:<br>Fees: |
| | | | | | | Prem:<br>Taxes:<br>Fees: |
| | | | | | TOTAL OF PREMUMS ON PAGE 2: | $98,283.68 |

**WITNESSETH:**

## DISCLOSURE STATEMENT

P1 Finance, a Division of PSFCU, will hereinafter be referred to as "Lender", this Premium Finance Agreement will hereinafter be referred to as "Agreement", and the person/entity listed on Page 1 of the finance agreement under the section titled Borrower shall be hereinafter referred to as "Borrower". That in consideration of the payment by the Lender to the respective insurance companies, or their agents, of the balance of the premiums upon the policies hereinbefore described in this Agreement(which policies have been issued and delivered to the Borrower at his request), the Borrower promises to pay to the Lender the amount shown in the completed schedule in this Agreement under the caption "Total of Payments", with service charge thereon as in said Schedule of Policies provided; and the Borrower agrees to the following terms set forth by the Lender:

1. To secure all liabilities owed from the Borrower to the Lender, the Borrower assigns to the Lender all of their right, title, and interest in the insurance policies listed in this Agreement, and all rights therein including all dividends, unearned premiums and unearned commissions.

2. The Borrower hereby irrevocably appoints the Lender as its attorney-in-fact with full power and authority to cancel the policies listed in this Agreement for default in payment. The insurance companies and/or its Agents listed in this Agreement are hereby authorized and directed, upon the request of the Lender, to cancel said policies and pay to the order of the Lender all gross, unearned premiums, commissions and fees thereon without proof of default hereunder or of breach hereof. Interest will continue to accrue on unpaid balances, and the Borrower shall remain liable for any deficiency together with interest at the highest allowable legal rate. In the event of any breach by the Lender, Borrower's recovery is limited to the finance charge received in the Agreement by the Lender. Borrower waives a claim to consequential or other damages. The Borrower is liable for all sums due under this Agreement, and the Lender may, but is not bound to seek to recover its collateral. Borrower authorizes Lender to file a UCC Financing Statement on the assets of Borrower to further secure the repayment of debt owed to Lender.

3. If any installment due hereunder is not paid within five (5) days of the due date, Borrower agrees to pay a delinquency and collections charge of 5% of the delinquent installment, or the maximum allowed by applicable law. If any installment due hereunder is not paid within fifteen (15) days of the due date, Borrower acknowledges and agrees that Lender may send notice of cancellation to the insurer which issued each of the policies listed in this Agreement. If the Lender incurs collections costs for amounts due from Borrower, the Borrower agrees to pay reasonable attorney fees and other collection costs up to the maximum allowed by law. This contract will be construed by the laws of the state of issuance. Borrower consents to jurisdiction in the civil courts of Gwinnett County, Georgia and waives any right to claim lack of personal jurisdiction in such court, for any proceedings to enforce the obligations of this Agreement.

4. The Borrower agrees that the Lender may endorse the Borrower's name on any check or draft for all monies that become due from the company and apply the same as payment of this agreement, returning any excess amount equal to or greater than one dollar ($1.00) to the Borrower.

5. In the event the payment made to Lender is returned because of insufficient funds, the Borrower agrees to pay the Lender all non-sufficient fund charges up to the maximum allowed by law. All checks are accepted subject to collection. No payment of any kind is deemed made until funds have cleared and been received.

6. If a policy listed in this Agreement is not issued at the time this Agreement is executed, the Borrower gives the Lender the authority to fill in the name of the insuring company or authorized agent, policy number, and the due date of the first payment. Upon request of the Borrower, the Lender may advance to the Borrower's agent or the insuring company any additional premiums that may become due, less normal down payment, adding the advance amount, plus any finance charge, to the Borrower's present contract.

7. The Borrower recognizes and agrees that the Lender is a lender and not an insurer and that the Lender assumes no liability hereunder as an insurer. The Borrower agrees that all payments hereunder shall be made directly to the Lender or third party designated by Lender and payment by the Borrower to any other person, firm, insurance agent, or insurance company shall not constitute payment to the Lender. Borrower further agrees and understands that the intermediary broker, Agent, or insurance company whose name appears on the Premium Finance Agreement is not a representative of the Lender and has no authority to promise anything on behalf of the Lender. Furthermore, the Borrower understands that the Lender makes no warranties or representations concerning the financed coverage nor has it played any part in the selection, structuring, or acquisition of Borrower's insurance coverage.

8. The Lender shall have the right to accept any payment or payments from the Borrower after the notice of cancellation has been sent to the insurance company(ies) and may apply them as a reduction of the indebtedness hereunder, and neither the acceptance nor the application of any such payment or payments shall constitute an undertaking on the part of the Lender to reinstate such insurance or constitute a waiver of any default hereunder. In the event the Lender requests reinstatement of such insurance, the Lender assumes no responsibility that such request will be received or honored by the insurance company, and the Borrower must verify the existence of coverage directly with the insurance company or its agent.

9. Interest on the loan is earned each month according to the policy effective date based on the Rule of 78's or as otherwise required by law. If the Borrower pays off the balance prior to maturity, they may receive a refund of a portion of the total finance charges. No refund need be made if it is less than $1.00 or maximum allowable by applicable law. Payment due dates will start on the date provided in Box 12 and continue each consecutive monthly, quarterly, semiannually, or annual payments as specified in Box 11.

10. In all cases, the Agreement is subject to approval and acceptance by the Lender. Lender may decline the loan, known as a Premium Finance Agreement, for any reason at its discretion. No contract is deemed in force until the Lender issues a notice of acceptance.

11. Borrower shall not assign the policy (except to mortgagees) without prior written consent of Lender. Lender shall assign this loan to a funding source, at its discretion, payoff and reassign same, including the terms and conditions herein, to an alternative funding source, at any time during the term of this Agreement.

12. The money advanced by the Lender is only for the premium as determined at the time this Agreement is accepted by Lender. Lender's payment shall not be applied by the insurance company to pay for any additional premiums owed by Borrower for any reason whatsoever. Borrower agrees to pay the insurance company directly for any additional premiums which become due for any reason including, but not limited to an audit. Lender may however, at its option, finance the additional premium according to the written agreement as stated above in section 6.

13. In the event of Fraud or any other type of misrepresentation, the Lender has the right to declare a default in the loan at any time at its discretion. Any default under any Agreement between the Borrower and the Lender shall be deemed and is a default under all agreements between such parties. All unearned premiums due to the Borrower whether from the insurance financed pursuant to this Agreement or any other agreement between Borrower and the Lender shall be security for and collateralize all loans made to the Borrower. Additionally, in the event of a default by the Borrower, the Lender may treat all assets of the Borrower as collateral under this Agreement, and may declare the remaining principal amount, with all accrued interest and fees, immediately due and payable.

14. The Borrower recognizes and agrees that their insurance Agent may add a fee to the base annual percentage rate as compensation for administering of the premium finance agreement where allowed by law. All parties to this transaction agree that these fees will be earned on a pro-rata basis.

15. This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Agreement and all of which, when taken together, will be deemed to constitute one and the same agreement. The exchange of copies of this Agreement including signature pages received by electronic or facsimile transmission shall constitute effective execution and delivery of this Agreement and may be used in lieu of the original Agreement for all purposes. Electronic or written signatures of the parties shall be deemed to be original.

16. Borrower agrees and acknowledges to authorize PSFCU to open a limited account on behalf of Borrower and at no cost, to facilitate the funding of this loan. The details and terms related to the account are available at: www.PeachStateFCU.org/business/savings/premiumfinance and which terms are incorporated by reference in this Agreement.

**THE BORROWER REPRESENTS AND WARRANTS AS FOLLOWS:**

That all financial information or financial representations given to Lender are true and correct in all respects, and fully and accurately present the financial conditions reflected therein. The execution, delivery and performance of this Agreement by Borrower is within the requisite corporate or limited liability company power, and has been duly authorized. This Agreement, when duly executed and delivered, and accepted by the Lender will constitute legal, valid, and binding obligations of Borrower and will be applicable to and secure the payment and performance of this Agreement.

There are no actions, suits, or proceedings pending or to the knowledge of Borrower, threatened against or affecting the Borrower, or involving the validity or enforceability of this Agreement. There are no liens on or security interest in the collateral. That (a) all the Borrowers or insureds are listed on the Agreement and that if all are not listed, then the one who is listed is authorized to act on behalf of all the Borrowers or insured; (b) no other party is entitled to any notice other than the one set forth on the face of the Agreement; (c) the Lender may, at its option, advance the premiums which are the subject of the Agreement to the insurance company, the intermediary broker or the Agent/Broker; (d) the Agreement contains the entire agreement between parties; (e) The Agent/Broker is the agent of the Borrower and that the Agent/Broker does not have the authority to make any representations on behalf of the Lender. Borrower is not in default with respect to any order, writ, injunction, decree or demand of any court or any Governmental Authority. The Borrower is not a Debtor under any bankruptcy proceedings of Title 11 of the U.S. Statues nor have any such proceedings been threatened. Borrower is not insolvent and is not the subject of any actions or receiverships. Borrower is not in any default with any other lender.

## Payment Schedule & History for Account # [redacted] (TBF Associates Inc)

Click on a payment description for printable receipt

| Date | Pmt. # | Description | Amount | Applied to: Principal | Interest | Setup Fee | Late Charge | NSF Fee | Cancel Fee | Convenience Fee | Processing Fee | Collection Expense | MW Fee | Down | Entered by |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/8/2021 9:19:03 AM | | Insured: Installment eCheck | $9,386.35 | $9,386.35 | | | | | | | | | | | sjaynes |
| 11/15/2021 2:03:36 PM | | Insured: Installment eCheck | $9,386.35 | $9,386.35 | | | | | | | | | | | sjaynes |
| 11/22/2021 3:26:47 PM | | Insured: Installment eCheck | $9,386.35 | $9,386.35 | | | | | | | | | | | sjaynes |
| 11/25/2021 12:00:00 AM | 1 | Payment Due | $37,545.37 | $36,021.83 | $1,523.54 | | | | | | | | | | System |
| 11/29/2021 8:51:08 AM | | Insured: Installment ACH Withdrawal | $9,386.32 | $9,386.32 | | | | | | | | | | | adunoff |
| 11/29/2021 2:04:33 PM | | Insured: Installment eCheck | $9,386.35 | $9,386.35 | | | | | | | | | | | sjaynes |
| 12/7/2021 9:24:27 AM | | Insured: Reversal ACH Withdrawal Refund to insured | ($9,386.32) | ($9,386.32) | | | | | | | | | | | adunoff |
| 12/25/2021 12:00:00 AM | 2 | Payment Due | $37,545.37 | $36,174.19 | $1,371.18 | | | | | | | | | | System |
| 12/27/2021 8:42:45 AM | | Insured: Installment ACH Withdrawal | $37,545.34 | $36,021.80 | $1,523.54 | | | | | | | | | | adunoff |
| 1/28/2022 3:11:54 PM | | Insured: Installment eCheck | $18,772.70 | $18,772.70 | | | | | | | | | | | sjaynes |
| 1/31/2022 10:49:20 AM | | Endorsement #73TRB004313 Amt. Fin. $26816.25 Total Interest $657.28 | $0.00 | | | | | | | | | | | | NLachhman |
| 1/31/2022 10:49:20 AM | | Endorsement #72XAS006938 Amt. Fin. $73712.76 Total Interest $1806.67 | $0.00 | | | | | | | | | | | | NLachhman |
| 2/4/2022 12:00:00 AM | 3 | Payment Due | $49,971.41 | $48,205.04 | $1,766.37 | | | | | | | | | | System |
| 2/9/2022 4:00:39 PM | | Late Fee | $2,520.97 | | | | $2,520.97 | | | | | | | | adunoff |
| 2/22/2022 4:01:35 PM | | Cancel Fee | $15.00 | | | | | | $15.00 | | | | | | adunoff |
| 2/25/2022 10:17:17 AM | | Insured: Installment eCheck | $34,182.76 | $30,275.61 | $1,371.18 | | $2,520.97 | | $15.00 | | | | | | sjaynes |
| 3/2/2022 9:11:42 AM | | Insured: Reversal eCheck Insufficient Funds | ($34,182.76) | ($30,275.61) | ($1,371.18) | | ($2,520.97) | | ($15.00) | | | | | | adunoff |
| 3/2/2022 9:11:44 AM | | NSF Fee for reversal of eCheck | $20.00 | | | | | $20.00 | | | | | | | adunoff |
| 3/4/2022 12:00:00 AM | 4 | Payment Due | $45,222.49 | $43,676.91 | $1,545.58 | | | | | | | | | | System |

| | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/24/2022 1:25:53 PM | | Principal | $3,584.60 | $3,584.60 | | | | | | | | | | | adunoff |
| 3/24/2022 1:25:53 PM | | Agent: Return Premium Bank Draft ACH - PSFCU | $3,584.60 | $2,213.42 | $1,371.18 | | | | | | | | | | adunoff |
| 3/25/2022 1:47:48 PM | | Collection Expense Adjustment | $20.00 | | | | | | | | | $20.00 | | | adunoff |
| **4/4/2022 12:00:00 AM** | **5** | **Payment Due** | **$41,721.58** | **$40,396.80** | **$1,324.78** | | | | | | | | | | **System** |
| **5/4/2022 12:00:00 AM** | **6** | **Payment Due** | **$41,721.58** | **$40,617.59** | **$1,103.99** | | | | | | | | | | **System** |
| 5/10/2022 3:13:38 PM | | Insured: Installment eCheck | $30,000.00 | $30,000.00 | | | | | | | | | | | adunoff |
| **6/4/2022 12:00:00 AM** | **7** | **Payment Due** | **$41,721.58** | **$40,838.40** | **$883.18** | | | | | | | | | | **System** |
| 6/16/2022 12:03:13 PM | | General Agent: Return Premium Check 2137203 | $8,841.60 | $7,075.23 | $1,766.37 | | | | | | | | | | adunoff |
| 6/16/2022 12:03:14 PM | | Principal | $8,841.60 | $8,841.60 | | | | | | | | | | | adunoff |
| 6/21/2022 1:05:01 PM | | Insured: Installment eCheck | $15,000.00 | $15,000.00 | | | | | | | | | | | adunoff |
| **7/4/2022 12:00:00 AM** | **8** | **Payment Due** | **$41,721.58** | **$41,059.19** | **$662.39** | | | | | | | | | | **System** |
| 7/15/2022 1:56:14 PM | | Insured: Installment eCheck | $10,000.00 | $10,000.00 | | | | | | | | | | | adunoff |
| 8/2/2022 10:29:12 AM | | Insured: Installment eCheck | $15,000.00 | $15,000.00 | | | | | | | | | | | adunoff |
| **8/4/2022 12:00:00 AM** | **9** | **Payment Due** | **$41,721.58** | **$41,279.98** | **$441.60** | | | | | | | | | | **System** |
| 8/17/2022 11:36:15 AM | | General Agent: Return Premium Check 2145016 | $24,400.83 | $22,855.25 | $1,545.58 | | | | | | | | | | adunoff |
| 8/17/2022 11:36:16 AM | | Principal | $24,400.83 | $24,400.83 | | | | | | | | | | | adunoff |
| 8/22/2022 1:16:50 PM | | Insured: Installment eCheck | $5,000.00 | $5,000.00 | | | | | | | | | | | adunoff |
| **9/4/2022 12:00:00 AM** | **10** | **Payment Due** | **$41,721.63** | **$41,500.84** | **$220.79** | | | | | | | | | | **System** |
| 9/12/2022 10:37:28 AM | | Insured: Installment eCheck | $5,000.00 | $5,000.00 | | | | | | | | | | | adunoff |
| 9/26/2022 2:56:13 PM | | Insured: Installment eCheck | $5,000.00 | $5,000.00 | | | | | | | | | | | adunoff |
| 9/30/2022 10:39:24 AM | | Insured: Installment eCheck | $5,000.00 | $5,000.00 | | | | | | | | | | | adunoff |
| 10/12/2022 11:27:22 AM | | Insured: Installment eCheck | $5,000.00 | $5,000.00 | | | | | | | | | | | adunoff |
| 10/18/2022 2:39:20 PM | | General Agent: Return Premium Check 2150347 | $21,005.46 | $19,680.68 | $1,324.78 | | | | | | | | | | adunoff |
| 10/18/2022 2:39:21 PM | | Principal | $21,005.46 | $21,005.46 | | | | | | | | | | | adunoff |
| 10/25/2022 1:19:37 PM | | Insured: Installment eCheck | $5,000.00 | $5,000.00 | | | | | | | | | | | adunoff |
| 2/2/2023 2:15:32 PM | | Collection Expense | $38,319.75 | | | | | | | | | $38,319.75 | | | adunoff |

| | | Adjustment | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **TOTAL PAYMENTS RECEIVED:** | | | **$251,695.93** | **$244,164.48** | **$7,531.45** | **$0.00** | **$0.00** | **$0.00** | **$0.00** | **$0.00** | **$0.00** | **$0.00** | **$0.00** | **$0.00** | |
| **TOTAL ACCOUNT RECEIVABLES:** | | | **$519,342.38** | **$467,603.26** | **$10,843.40** | **$0.00** | **$2,520.97** | **$20.00** | **$15.00** | **$0.00** | **$0.00** | **$38,339.75** | **$0.00** | **$0.00** | |
| **CURRENT BALANCE (WITHOUT WRITE-OFFS):** | | | **$267,646.45** | **$223,438.78** | **$3,311.95** | **$0.00** | **$2,520.97** | **$20.00** | **$15.00** | **$0.00** | **$0.00** | **$38,339.75** | **$0.00** | **$0.00** | |

©2023 FinancePro. All Rights Reserved

*******************************************************************

Premium Financing By P1 Finance

*******************************************************************

Notice Date: 3/2/2022

From:
P1 Finance
PO Box 922025

Norcross, GA 30010
Ph. 877.395.6770 Fax 404.745.0737
customerservice@p1finance.com

To Carrier:
National Fire & Marine/National Indemnity(OmahaNE)
Berkshire Hathaway Co. 1314 Douglas St Ste 1400
Omaha NE 68102
Ph:402-536-3000
Fax:402-536-3350
autosupport@nationalindemnity.com

*******************************************************************

RE: CANCELLATION NOTICE EFFECTIVE: 2/25/2022

*******************************************************************

Insured: TBF Associates Inc
14 Taft Avenue
Inwood NY 11096

Agent: ACRISURE, LLC-TCE Insurance Services (Staten Isl)
201 EDWARD CURRY AVE
Staten Island NY 10314

General Agent: CRC Group (Woodbury, NY)
175 Froelich Farm Blvd
Woodbury NY 11797

AccountNumber: [redacted]
Effective Date: 10/25/2021
Policy Numbers: [redacted]

In compliance with the applicable state code, the lender hereby certifies that notice of intent to cancel was previously sent on the above listed policy. The insured has failed to cure all defaults. The lender hereby instructs the insurance company to cancel the insurance policy effective: 2/25/2022

FOR NY AUTO POLICIES ONLY: Proof of financial security is required to be maintained continuously throughout the registration period. If you do not keep your insurance in force during the entire registration period, your registration will be subject to suspension. If your vehicle is still uninsured after 90 days, your driver's license will be suspended. To avoid these penalties you must surrender your registration certificate and plates before your insurance expires. By law your insurance carrier is required to report specific termination information to the Commissioner of Motor Vehicles.

If you have a lapse in coverage of 90 days or less, the law permits you to avoid a suspension of your registration by the payment of a civil penalty for each day or any portion thereof up to 90 days for which your insurance was not in effect.

This civil penalty option applies only once during any 36-month period. The civil penalties are:

-- 1 to 30 day lapse--$8 per each day of lapse
-- 31 to 60 day lapse--$240 plus $10 per day for days 31 to 60
-- 61 to 90 day lapse--$540 plus $12 per day for days 61 to 90

For Hire (FH) Vehicles: Proof of financial security is required to be maintained throughout the registration period. If you do not keep

********************************************************************

Premium Financing By P1 Finance

********************************************************************

Notice Date: 3/2/2022

From:
P1 Finance
PO Box 922025

Norcross, GA 30010
Ph. 877.395.6770 Fax 404.745.0737
customerservice@p1finance.com

To Carrier:
National Liability & Fire Insurance (Omaha NE)
1314 Douglas St, Ste 1400
Omaha NE 68102-1944
Ph:402-536-3000
Fax:402-536-3030
autosupport@nationalindemnity.com

********************************************************************

RE: CANCELLATION NOTICE EFFECTIVE: 2/25/2022

********************************************************************

Insured: TBF Associates Inc
14 Taft Avenue
Inwood NY 11096

Agent: ACRISURE, LLC-TCE Insurance Services (Staten Isl)
201 EDWARD CURRY AVE
Staten Island NY 10314

General Agent: CRC Group (Woodbury, NY)
175 Froelich Farm Blvd
Woodbury NY 11797

AccountNumber: [redacted]
Effective Date: 10/25/2021
Policy Numbers: [redacted]

In compliance with the applicable state code, the lender hereby certifies that notice of intent to cancel was previously sent on the above listed policy. The insured has failed to cure all defaults. The lender hereby instructs the insurance company to cancel the insurance policy effective: 2/25/2022

FOR NY AUTO POLICIES ONLY: Proof of financial security is required to be maintained continuously throughout the registration period. If you do not keep your insurance in force during the entire registration period, your registration will be subject to suspension. If your vehicle is still uninsured after 90 days, your driver's license will be suspended. To avoid these penalties you must surrender your registration certificate and plates before your insurance expires. By law your insurance carrier is required to report specific termination information to the Commissioner of Motor Vehicles.

If you have a lapse in coverage of 90 days or less, the law permits you to avoid a suspension of your registration by the payment of a civil penalty for each day or any portion thereof up to 90 days for which your insurance was not in effect.

This civil penalty option applies only once during any 36-month period. The civil penalties are:

-- 1 to 30 day lapse--$8 per each day of lapse
-- 31 to 60 day lapse--$240 plus $10 per day for days 31 to 60
-- 61 to 90 day lapse--$540 plus $12 per day for days 61 to 90

For Hire (FH) Vehicles: Proof of financial security is required to be maintained throughout the registration period. If you do not keep



# PREMIUM FINANCE AGREEMENT AND DISCLOSURE STATEMENT

Quote: [redacted]

P.O. Box 922025 PFA@P1Finance.com
Norcross, GA 30010-2025
(phone) 877-395-6770 (fax) 404-745-0737

- [✓] COMMERCIAL
- [ ] PERSONAL
- [✓] NEW CONTRACT
- [ ] ENDORSEMENT TO EXISTING

| BORROWER (Insured): Name and Address (as stated in policy) | PRODUCER (Agent/Broker): Name and Place of Business |
|---|---|
| JR Towing & Truck Repair Corp<br><br>1179 Longwood Avenue<br>Bronx NY 10474<br>TELEPHONE: 718-328-8300 FAX: | ACRISURE, LLC-TCE Insurance Services (Staten Isl)<br>201 EDWARD CURRY AVE<br><br>Staten Island, NY 10314<br>TELEPHONE: (718)370-3131 x. 103 FAX: (718)954-8985 |

In consideration of the premium(s) paid, or to be paid, by Lender on behalf of the Borrower, Borrower promises to pay to the order of P1 Finance, A Division of PSFCU, the Total of Payments, subject to the provisions hereinafter set forth.

## FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT

| 1. TOTAL PREMIUM(s) | 2. DOWN PAYMENT | 3. UNPAID PREMIUM BALANCE | 4. FL DOC STAMP CHG | 5. AMOUNT FINANCED | 6. FINANCE CHARGE | 7. TOTAL OF PAYMENTS | 8. DEFERRED PAYMENT PRICE |
|---|---|---|---|---|---|---|---|
| $618,055.97 | $92,793.40 | $525,262.57 | $0.00 | $525,262.57 | $8,438.63 | $533,701.20 | $626,494.60 |

| 9. ANNUAL PERCENT RATE the cost of your credit at a yearly rate | | 10. AMOUNT OF EACH PAYMENT | 11. NUMBER OF PAYMENTS | 12. WHEN FIRST PAYMENT IS DUE |
|---|---|---|---|---|
| 3.49% | YOUR PAYMENT SCHEDULE WILL BE > | $53,370.12 | 10 Monthly | 10/4/2021 |

**SECURITY:** You are giving a security interest in any and all policies or other collateral listed on the Agreement.
**LATE CHARGE:** See Disclosure Statement, item number (3) three.
**PREPAYMENT:** If you pay off the loan early, you may be entitled to a refund of part of the finance charge.
**AMORTIZATION SCHEDULE:** Check box for amortization detail [ ]

**BOX #3 ABOVE:** Paid to insurance companies, intermediary brokers or Agents listed here and in the Schedule of Policies.
**BOX #4 ABOVE:** Official fees paid to Florida Department of Revenue.
**FLORIDA DOCUMENTARY STAMP TAX:** Required by law when the amount indicated in box #4 has been paid or will be paid directly to the Florida Department Of Revenue. Certificate of Registration #650370655-15-01.

## SCHEDULE OF POLICIES

| POLICY PREFIX AND NUMBER | EFFECTIVE DATE OF POLICY OR ANNUAL INSTALLMENT | (1) FULL NAME OF INSURANCE COMPANY AND BRANCH OFFICE ADDRESS (2) NAME AND ADDRESS OF GENERAL AGENT TO WHICH POLICY PREMIUMS PAID | TYPE OF COVERAGE | MINIMUM EARNED PREMIUM | POLICY TERMS IN MONTHS COVERED BY PREMIUM | PREMIUM AMOUNT |
|---|---|---|---|---|---|---|
| 72XAS006817 | 9/4/2021 | National Fire & Marine/National Indemnity(OmahaNE)<br>CRC Group (Woodbury, NY)<br>175 Froehlich Farm Blvd Woodbury, NY 11797 | COMMERCIAL AUTO (WITH FILINGS) | 0% | 12 | Prem: $387,506.00<br>Taxes: $14,608.97<br>Fees: $0.00 |

Notes: **(1)** If a check is tendered for the down payment and the check is dishonored, this Agreement shall be deemed not to have been accepted even if notification of acceptance has been issued by Lender; **(2)** Rescinding or otherwise invalidating any of the policies is equivalent to cancellation of the policy(ies); **(3)** Non-Payment may result in cancellation of the policies.

**Additional Policies Found on Page Two**

**NOTICE TO INSURED: 1. DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACE. 2. YOU ARE ENTITLED TO A COMPLETELY FILLED IN COPY OF THIS AGREEMENT. 3. UNDER THE LAW, YOU HAVE THE RIGHT TO PAY OFF IN ADVANCE THE FULL AMOUNT UNDER CERTAIN CONDITIONS TO OBTAIN A PARTIAL REFUND OF THE SERVICE CHARGE.**

THE UNDERSIGNED BORROWER AND OR ITS REPRESENTATIVE INSURANCE AGENT OR BROKER HAS SIGNED THIS LOAN AGREEMENT WHICH CONSISTS OF THIS PAGE, THE DISCLOSURE STATEMENT AND ANY ADDITIONAL PAGES WHICH MAY CONTAIN A SCHEDULE OF POLICIES. EACH HAVE RECEIVED A COPY OF THIS LOAN AGREEMENT AND AGREE TO ALL OF THE TERMS OF THIS AGREEMENT. NOW THEREFORE ON

THIS 21 DAY OF October 20 21

x [signature]
SIGNATURE OF BORROWER
(If Corporation, Title of Officer Signing

**AGENT/BROKER CERTIFICATION**

The undersigned Agent/Broker, hereinafter referred to as "Agent", hereby represents and warrants that all policies listed in this agreement have been issued and delivered, and are in force and effect; that the policies listed in this agreement are not currently nor have they ever been the subject of any other premium finance agreement; that the down payment as shown in the contract has been paid (in good funds); that all policies therein were issued by the agency; and that all information, including the cancellation provisions affecting the return premium, for any of the policy(ies) listed has been accurately represented in the quote and any and all fully earned premiums that exist in the policies named in this loan have been disclosed. The Agent warrants that the above contract evidences a bona fide and legal transaction, that the Borrower is of legal age and has the capacity to contract, and if signed in corporate capacity, that the signatory has the authority to sign on behalf of such entity; that the Borrower has not filed for or is not preparing to file for bankruptcy protection; that the Borrower's signature is genuine, and that Agent has delivered a copy to the Borrower. Agent agrees that if any warranties contained in this Agreement are found to be untrue, it will immediately remit to Lender the full amount then remaining unpaid on this premium finance agreement. Upon termination of this Agreement or cancellation or rescission of any scheduled policies, the Agent agrees to pro-rata return any and all premiums, commissions, premium finance fees, risk management fees, and Broker fees to Lender within ten (10) business days of receipt or according to applicable state law.

Anthony DeFeo [handwritten]
PRINT NAME OF AGENT OR BROKER

x [signature]
SIGNATURE OF AGENT OR BROKER

FOR FIN CO. USE

# PREMIUM FINANCE AGREEMENT AND DISCLOSURE STATEMENT

Insured Name: JR Towing & Truck Repair Corp

Quote: [redacted]

ADDITIONAL POLICIES

| POLICY PREFIX AND NUMBER | EFFECTIVE DATE OF POLICY OR ANNUAL INSTALLMENT | (1) FULL NAME OF INSURANCE COMPANY AND BRANCH OFFICE ADDRESS (2) NAME AND ADDRESS OF GENERAL AGENT TO WHICH POLICY PREMIUMS IS PAID | TYPE OF COVERAGE | MINIMUM EARNED PREMIUM | POLICY TERMS IN MONTHS COVERED BY PREMIUM | PREMIUM AMOUNT |
|---|---|---|---|---|---|---|
| | 9/4/2021 | National Liability & Fire Insurance<br>CRC Group (Woodbury, NY)<br>175 Froelich Farm Blvd Woodbury, NY 11797 | EXCESS AUTO | 0% | 12 | Prem $215,841.00<br>Taxes $0.00<br>Fees $100.00 |
| | | | | | | Prem<br>Taxes<br>Fees |
| | | | | | | Prem<br>Taxes<br>Fees |
| | | | | | | Prem<br>Taxes<br>Fees |
| | | | | | | Prem<br>Taxes<br>Fees |
| | | | | | | Prem<br>Taxes<br>Fees |
| | | | | | | Prem<br>Taxes<br>Fees |
| | | | | | | Prem<br>Taxes<br>Fees |
| | | | | | | Prem<br>Taxes<br>Fees |
| | | | | | | Prem<br>Taxes<br>Fees |
| | | | | | | Prem<br>Taxes<br>Fees |
| | | | | | | Prem<br>Taxes<br>Fees |
| | | | | | | Prem<br>Taxes<br>Fees |
| | | | | | | Prem<br>Taxes<br>Fees |
| | | | | | | Prem<br>Taxes<br>Fees |
| | | | | | TOTAL OF PREMUMS ON PAGE 2 | $215,941.00 |

**DISCLOSURE STATEMENT**

**WITNESSETH:**

P1 Finance, a Division of PSFCU, will hereinafter be referred to as "Lender", this Premium Finance Agreement will hereinafter be referred to as "Agreement", and the person/entity listed on Page 1 of the finance agreement under the section titled Borrower shall be hereinafter referred to as "Borrower". That in consideration of the payment by the Lender to the respective insurance companies, or their agents, of the balance of the premiums upon the policies hereinbefore described in this Agreement (which policies have been issued and delivered to the Borrower at his request) the Borrower promises to pay to the Lender the amount shown in the completed schedule in this Agreement under the caption "Total of Payments", with service charge thereon as in said Schedule of Policies provided, and the Borrower agrees to the following terms set forth by the Lender:

1. To secure all liabilities owed from the Borrower to the Lender, the Borrower assigns to the Lender all of their right, title, and interest in the insurance policies listed in this Agreement, and all rights therein including all dividends, unearned premiums and unearned commissions.

2. The Borrower hereby irrevocably appoints the Lender as its attorney-in-fact with full power and authority to cancel the policies listed in this Agreement for default in payment. The insurance companies and/or its Agents listed in this Agreement are hereby authorized and directed, upon the request of the Lender, to cancel said policies and pay to the order of the Lender all gross unearned premiums, commissions and fees thereon without proof of default hereunder or of breach hereof. Interest will continue to accrue on unpaid balances, and the Borrower shall remain liable for any deficiency together with interest at the highest allowable legal rate. In the event of any breach by the Lender, Borrower's recovery is limited to the finance charge received in the Agreement by the Lender. Borrower waives a claim to consequential or other damages. The Borrower is liable for all sums due under this Agreement, and the Lender may, but is not bound to seek to recover its collateral. Borrower authorizes Lender to file a UCC Financing Statement on the assets of Borrower to further secure the repayment of debt owed to Lender.

3. If any installment due hereunder is not paid within five (5) days of the due date, Borrower agrees to pay a delinquency and collections charge of 5% of the delinquent installment, or the maximum allowed by applicable law. If any installment due hereunder is not paid within fifteen (15) days of the due date, Borrower acknowledges and agrees that Lender may send notice of cancellation to the insurer which issued each of the policies listed in this Agreement. If the Lender incurs collections costs for amounts due from Borrower, the Borrower agrees to pay reasonable attorney fees and other collection costs up to the maximum allowed by law. This contract will be construed by the laws of the state of issuance. Borrower consents to jurisdiction in the civil courts of Gwinnett County, Georgia and waives any right to claim lack of personal jurisdiction in such court, for any proceedings to enforce the obligations of this Agreement.

4. The Borrower agrees that the Lender may endorse the Borrower's name on any check or draft for all monies that become due from the company and apply the same as payment of this agreement, returning any excess amount equal to or greater than one dollar ($1.00) to the Borrower.

5. In the event the payment made to Lender is returned because of insufficient funds, the Borrower agrees to pay the Lender all non-sufficient fund charges up to the maximum allowed by law. All checks are accepted subject to collection. No payment of any kind is deemed made until funds have cleared and been received.

6. If a policy listed in this Agreement is not issued at the time this Agreement is executed, the Borrower gives the Lender the authority to fill in the name of the insuring company or authorized agent, policy number, and the due date of the first payment. Upon request of the Borrower, the Lender may advance to the Borrower's agent or the insuring company any additional premiums that may become due, less normal down payment, adding the advance amount, plus any finance charge, to the Borrower's present contract.

7. The Borrower recognizes and agrees that the Lender is a lender and not an insurer and that the Lender assumes no liability hereunder as an insurer. The Borrower agrees that all payments hereunder shall be made directly to the Lender or third party designated by Lender and payment by the Borrower to any other person, firm, insurance agent, or insurance company shall not constitute payment to the Lender. Borrower further agrees and understands that the intermediary broker, Agent, or insurance company whose name appears on the Premium Finance Agreement is not a representative of the Lender and has no authority to promise anything on behalf of the Lender. Furthermore, the Borrower understands that the Lender makes no warranties or representations concerning the financed coverage nor had it played any part in the selection, structuring, or acquisition of Borrower's insurance coverage.

8. The Lender shall have the right to accept any payment or payments from the Borrower after the notice of cancellation has been sent to the insurance company(ies) and may apply them as a reduction of the indebtedness hereunder, and neither the acceptance nor the application of any such payment or payments shall constitute an undertaking on the part of the Lender to reinstate such insurance or constitute a waiver of any default hereunder. In the event the Lender requests reinstatement of such insurance, the Lender assumes no responsibility that such request will be received or honored by the insurance company, and the Borrower must verify the existence of coverage directly with the insurance company or its agent.

9. Interest on the loan is earned each month according to the policy effective date based on the Rule of 78's or as otherwise required by law. If the Borrower pays off the balance prior to maturity, they may receive a refund of a portion of the total finance charges. No refund need be made if it is less than $1.00 or maximum allowable by applicable law. Payment due dates will start on the date provided in Box 12 and continue each consecutive monthly, quarterly, semiannually, or annual payments as specified in Box 11.

10. In all cases, the Agreement is subject to approval and acceptance by the Lender. Lender may decline the loan, known as a Premium Finance Agreement, for any reason at its discretion. No contract is deemed in force until the Lender issues a notice of acceptance.

11. Borrower shall not assign the policy (except to mortgagees) without prior written consent of Lender. Lender shall assign this loan to a funding source, at its discretion, payoff and reassign same, including the terms and conditions herein, to an alternative funding source, at any time during the term of this Agreement.

12. The money advanced by the Lender is only for the premium as determined at the time this Agreement is accepted by Lender. Lender's payment shall not be applied by the insurance company to pay for any additional premiums owed by Borrower for any reason whatsoever. Borrower agrees to pay the insurance company directly for any additional premiums which become due for any reason including, but not limited to an audit. Lender may however, at its option, finance the additional premium according to the written agreement as stated above in section 6.

13. In the event of Fraud or any other type of misrepresentation, the Lender has the right to declare a default in the loan at any time at its discretion. Any default under any Agreement between the Borrower and the Lender shall be deemed and is a default under all agreements between such parties. All unearned premiums due to the Borrower whether from the insurance financed pursuant to this Agreement or any other agreement between Borrower and the Lender shall be security for and collateralize all loans made to the Borrower. Additionally, in the event of a default by the Borrower, the Lender may treat all property of the Borrower as collateral under the Agreement, and may declare the remaining principal amount, with all accrued interest and fees, immediately due and payable.

14. The Borrower recognizes and agrees that their insurance Agent may add a fee to the base annual percentage rate as compensation for administering of the premium finance agreement where allowed by law. All parties to this transaction agree that these fees will be earned on a pro rata basis.

15. This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Agreement and all of which, when taken together, will be deemed to constitute one and the same agreement. The exchange of copies of this Agreement including signature pages received by electronic or facsimile transmission shall constitute effective execution and delivery of this Agreement and may be used in lieu of the original Agreement for all purposes. Electronic or written signatures of the parties shall be deemed to be original.

16. Borrower agrees and acknowledges to authorize PSFCU to open a limited account on behalf of Borrower and at no cost to facilitate the funding of this loan. The details and terms related to the account are available at www.PeachStateFCU.org/business-savings/premiumfinance and which terms are incorporated by reference in this Agreement.

THE BORROWER REPRESENTS AND WARRANTS AS FOLLOWS:

That all financial information or financial representations given to Lender are true and correct in all respects, and fully and accurately present the financial conditions reflected therein. The execution, delivery and performance of this Agreement by Borrower is within the requisite corporate or limited liability company power, and has been duly authorized. This Agreement, when duly executed and delivered, and accepted by the Lender will constitute legal, valid, and binding obligations of Borrower and will be applicable to and secure the payment and performance of this Agreement.

There are no actions, suits, or proceedings pending or to the knowledge of Borrower, threatened against or affecting the Borrower, or involving the validity or enforceability of this Agreement. There are no liens on or security interest in the collateral. That (a) all the Borrowers or insureds are listed on the Agreement and that if all are not listed, then the one who is listed is authorized to act on behalf of all the Borrowers or insureds; (b) no other party is entitled to any notice other than the one set forth on the face of the Agreement; (c) the Lender may, at its option, advance the premiums which are the subject of the Agreement to the insurance company, the intermediary broker or the Agent/Broker; (d) the Agreement contains the entire agreement between parties; (e) The Agent/Broker is the agent of the Borrower and that the Agent/Broker does not have the authority to make any representations on behalf of the Lender. Borrower is not in default with respect to any order, writ, injunction, decree or demand of any court or any Governmental Authority. The Borrower is not a Debtor under any bankruptcy proceedings of Title 11 of the U.S. Statutes nor have any such proceedings been threatened. Borrower is not insolvent and is not the subject of any actions or receiverships. Borrower is not in any default with any other lender.

## Payment Schedule & History for Account #[redacted] (JR Towing & Truck Repair Corp)

Click on a payment description for printable receipt

| Date | Pmt. # | Description | Amount | *Applied to:* | | | | | | | | | | | Entered by |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Principal | Interest | Setup Fee | Late Charge | NSF Fee | Cancel Fee | Convenience Fee | Processing Fee | Collection Expense | MW Fee | Down | |
| 10/4/2021 12:00:00 AM | 1 | Payment Due | $53,370.12 | $51,835.82 | $1,534.30 | | | | | | | | | | System |
| 10/21/2021 12:15:34 PM | | Agent: Installment Statement Payable 2 payments retained. | $106,740.24 | $105,205.94 | $1,534.30 | | | | | | | | | | System |
| 10/22/2021 3:46:43 PM | | Insured: Installment eCheck | $13,342.53 | $13,342.53 | | | | | | | | | | | sjaynes |
| 10/27/2021 2:57:38 PM | | Insured: Installment eCheck | $13,342.53 | $13,342.53 | | | | | | | | | | | lsullivan1 |
| 10/29/2021 9:14:52 AM | | Insured: Installment eCheck | $13,342.53 | $13,342.53 | | | | | | | | | | | lsullivan1 |
| 11/4/2021 12:00:00 AM | 2 | Payment Due | $53,370.12 | $51,989.25 | $1,380.87 | | | | | | | | | | System |
| 11/9/2021 8:11:10 AM | | Insured: Installment eCheck | $13,342.53 | $13,342.53 | | | | | | | | | | | sjaynes |
| 11/22/2021 8:11:59 AM | | Insured: Installment eCheck | $13,342.53 | $13,342.53 | | | | | | | | | | | sjaynes |
| 12/6/2021 8:27:27 AM | | Insured: Installment eCheck | $13,342.53 | $11,808.23 | $1,534.30 | | | | | | | | | | sjaynes |
| 12/14/2021 4:34:04 PM | | Insured: Installment eCheck | $13,342.53 | $13,342.53 | | | | | | | | | | | sjaynes |
| 12/16/2021 12:57:37 PM | | Agent: Reversal Statement Payable Repost 1 pymt | ($106,740.24) | ($105,205.94) | ($1,534.30) | | | | | | | | | | adunoff |
| 12/16/2021 12:58:37 PM | | Agent: Installment Bank Draft Statement Payable - | $53,370.12 | $51,989.25 | $1,380.87 | | | | | | | | | | adunoff |
| 12/16/2021 4:00:44 PM | | Late Fee | $2,668.51 | | | | $2,668.51 | | | | | | | | adunoff |
| 12/19/2021 12:00:00 AM | 3 | Payment Due | $53,370.12 | $52,142.68 | $1,227.44 | | | | | | | | | | System |
| 12/20/2021 9:29:31 AM | | Agent: Reversal Bank Draft Statement Payable - Funding per BV | ($53,370.12) | ($51,989.25) | ($1,380.87) | | | | | | | | | | adunoff |
| 12/20/2021 4:01:41 PM | | Late Fee | $2,668.51 | | | | $2,668.51 | | | | | | | | adunoff |
| 12/22/2021 8:22:52 AM | | Insured: Installment eCheck | $13,342.53 | $13,342.53 | | | | | | | | | | | sjaynes |
| 12/29/2021 3:16:41 PM | | Insured: Installment eCheck | $13,312.53 | $13,312.53 | | | | | | | | | | | sjaynes |
| 12/29/2021 3:20:04 PM | | Late Fee Fixing since they are doing | ($5,337.02) | | | | ($5,337.02) | | | | | | | | sjaynes |

| | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | **weekly payments Adjustment** | | | | | | | | | | | | | |
| 1/10/2022 8:04:35 AM | | Insured: Installment eCheck | $13,342.53 | $11,961.66 | $1,380.87 | | | | | | | | | | sjaynes |
| 1/18/2022 8:23:59 AM | | Insured: Installment eCheck | $13,342.53 | $13,342.53 | | | | | | | | | | | sjaynes |
| 1/26/2022 8:41:18 AM | | Insured: Installment eCheck | $13,342.53 | $13,342.53 | | | | | | | | | | | sjaynes |
| **1/26/2022 4:00:49 PM** | | **Late Fee** | **$2,668.51** | | | | **$2,668.51** | | | | | | | | **adunoff** |
| 2/2/2022 4:00:57 PM | | Cancel Fee | $15.00 | | | | | | $15.00 | | | | | | adunoff |
| 2/3/2022 2:11:00 PM | | Insured: Installment eCheck | $13,342.53 | $13,342.53 | | | | | | | | | | | sjaynes |
| **2/3/2022 2:12:01 PM** | | **Late Fee Adjustment** | **$2,668.51** | | | | **$2,668.51** | | | | | | | | **sjaynes** |
| **2/4/2022 12:00:00 AM** | **4** | **Payment Due** | **$51,132.41** | **$50,058.40** | **$1,074.01** | | | | | | | | | | **System** |
| 2/10/2022 2:29:04 PM | | Insured: Installment eCheck | $13,342.53 | $12,115.09 | $1,227.44 | | | | | | | | | | lsullivan1 |
| 2/17/2022 1:13:48 PM | | Principal | $15,663.96 | $15,663.96 | | | | | | | | | | | adunoff |
| 2/17/2022 1:13:48 PM | | Agent: Return Premium Bank Draft ACH - PSFCU | $15,663.96 | $15,663.96 | | | | | | | | | | | adunoff |
| 2/17/2022 4:00:22 PM | | Cancel Fee | $15.00 | | | | | | $15.00 | | | | | | adunoff |
| 2/22/2022 11:29:30 AM | | Insured: Installment eCheck | $13,342.53 | $13,342.53 | | | | | | | | | | | sjaynes |
| 3/1/2022 8:28:35 AM | | Insured: Installment eCheck | $13,342.53 | $13,342.53 | | | | | | | | | | | sjaynes |
| 3/7/2022 3:22:30 PM | | Insured: Installment eCheck | $13,342.53 | $12,268.52 | $1,074.01 | | | | | | | | | | sjaynes |
| **3/8/2022 12:00:00 AM** | **5** | **Payment Due** | **$51,132.41** | **$50,211.83** | **$920.58** | | | | | | | | | | **System** |
| **3/14/2022 5:04:08 PM** | | **Late Fee** | **$2,556.62** | | | | **$2,556.62** | | | | | | | | **aoverly2.0** |
| 3/16/2022 4:00:16 PM | | Cancel Fee | $15.00 | | | | | | $15.00 | | | | | | adunoff |
| 3/17/2022 8:06:36 AM | | Insured: Installment eCheck | $13,342.53 | $13,342.53 | | | | | | | | | | | sjaynes |
| 3/24/2022 8:48:34 AM | | Insured: Installment eCheck | $13,342.53 | $13,342.53 | | | | | | | | | | | sjaynes |
| **3/28/2022 12:00:00 AM** | **6** | **Payment Due** | **$51,132.41** | **$50,365.26** | **$767.15** | | | | | | | | | | **System** |
| 4/1/2022 8:28:59 AM | | Insured: Installment eCheck | $13,542.53 | $13,542.53 | | | | | | | | | | | sjaynes |
| **4/4/2022 4:02:29 PM** | | **Late Fee** | **$2,556.62** | | | | **$2,556.62** | | | | | | | | **adunoff** |
| 4/8/2022 8:12:55 AM | | Insured: Installment eCheck | $13,342.53 | $12,421.95 | $920.58 | | | | | | | | | | kfaflik1 |
| 4/19/2022 8:11:17 AM | | Insured: Installment eCheck | $13,342.53 | $13,342.53 | | | | | | | | | | | kfaflik1 |

| | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/20/2022 4:32:22 PM | | Cancel Fee | $15.00 | | | | | | $15.00 | | | | | | aoverly2.0 |
| 4/26/2022 2:42:40 PM | | Insured: Installment eCheck | $13,342.53 | $13,342.53 | | | | | | | | | | | adunoff |
| **4/28/2022 12:00:00 AM** | **7** | **Payment Due** | **$40,129.67** | **$39,515.95** | **$613.72** | | | | | | | | | | **System** |
| 5/9/2022 9:47:28 AM | | Insured: Installment eCheck | $13,342.53 | $13,342.53 | | | | | | | | | | | kfaflik1 |
| **5/9/2022 4:01:58 PM** | | **Late Fee** | **$2,556.62** | | | | **$2,556.62** | | | | | | | | **adunoff** |
| 5/11/2022 4:00:09 PM | | Cancel Fee | $15.00 | | | | | | $15.00 | | | | | | adunoff |
| 5/13/2022 8:43:21 AM | | Insured: Installment eCheck | $10,342.53 | $9,575.38 | $767.15 | | | | | | | | | | kfaflik1 |
| 5/24/2022 11:34:57 AM | | Insured: Installment eCheck | $10,342.53 | $10,342.53 | | | | | | | | | | | adunoff |
| 5/25/2022 1:43:24 PM | | General Agent: Return Premium Check 2138513 | $44,010.96 | $43,397.24 | $613.72 | | | | | | | | | | adunoff |
| 5/25/2022 1:43:25 PM | | Principal | $44,010.96 | $44,010.96 | | | | | | | | | | | adunoff |
| **5/28/2022 12:00:00 AM** | **8** | **Payment Due** | **$37,799.34** | **$37,339.05** | **$460.29** | | | | | | | | | | **System** |
| 6/6/2022 9:21:57 AM | | Insured: Installment eCheck | $10,032.42 | $10,032.42 | | | | | | | | | | | kfaflik1 |
| 6/14/2022 9:25:50 AM | | General Agent: Reversal Check 2138513 Repost as RP | ($44,010.96) | ($43,397.24) | ($613.72) | | | | | | | | | | adunoff |
| 6/14/2022 9:25:50 AM | | Principal Reverse entry | ($44,010.96) | ($44,010.96) | | | | | | | | | | | adunoff |
| 6/14/2022 9:26:29 AM | | Principal | $44,010.96 | $44,010.96 | | | | | | | | | | | adunoff |
| 6/14/2022 9:26:29 AM | | General Agent: Return Premium Bank Draft Repost check #213851 | $44,010.96 | $43,397.24 | $613.72 | | | | | | | | | | adunoff |
| 6/15/2022 4:06:53 PM | | Insured: Installment eCheck | $10,032.42 | $10,032.42 | | | | | | | | | | | kfaflik1 |
| 6/16/2022 12:03:04 PM | | General Agent: Return Premium Check 2140414 | $6,291.90 | $6,291.90 | | | | | | | | | | | adunoff |
| 6/16/2022 12:03:05 PM | | Principal | $6,291.90 | $6,291.90 | | | | | | | | | | | adunoff |
| 6/21/2022 12:56:55 PM | | Insured: Reversal eCheck insufficient funds | ($10,032.42) | ($10,032.42) | | | | | | | | | | | adunoff |
| 6/21/2022 12:56:57 PM | | NSF Fee for reversal of eCheck | $20.00 | | | | | $20.00 | | | | | | | adunoff |
| 6/21/2022 4:20:20 PM | | Insured: Installment eCheck | $10,032.42 | $10,032.42 | | | | | | | | | | | kfaflik1 |
| **6/28/2022 12:00:00 AM** | **9** | **Payment Due** | **$32,324.61** | **$32,017.75** | **$306.86** | | | | | | | | | | **System** |
| 6/29/2022 8:14:10 AM | | Insured: Installment eCheck | $10,032.42 | $9,572.13 | $460.29 | | | | | | | | | | kfaflik1 |
| 6/30/2022 12:45:30 PM | | Agent: Installment eCheck | $699.10 | $699.10 | | | | | | | | | | | adunoff |
| 6/30/2022 12:45:48 PM | | Agent: Reversal eCheck Repost as RP | ($699.10) | ($699.10) | | | | | | | | | | | adunoff |

| | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6/30/2022 12:46:15 PM | | Agent: Return Premium Bank Draft Repost echeck | $699.10 | $699.10 | | | | | | | | | | | adunoff |
| 6/30/2022 12:46:16 PM | | Principal | $699.10 | $699.10 | | | | | | | | | | | adunoff |
| 7/6/2022 10:43:36 AM | | Insured: Installment eCheck | $9,508.10 | $9,508.10 | | | | | | | | | | | kfaflik1 |
| 7/15/2022 8:11:25 AM | | Insured: Installment eCheck | $9,449.83 | $9,449.83 | | | | | | | | | | | jortiz |
| 7/22/2022 8:53:46 AM | | Insured: Installment eCheck | $9,449.83 | $9,449.83 | | | | | | | | | | | kfaflik1 |
| **7/28/2022 12:00:00 AM** | **10** | **Payment Due** | **$32,324.62** | **$32,171.21** | **$153.41** | | | | | | | | | | **System** |
| 8/8/2022 9:13:09 AM | | Insured: Installment eCheck | $9,449.83 | $9,142.97 | $306.86 | | | | | | | | | | kfaflik1 |
| 9/22/2022 11:51:38 AM | | General Agent: Return Premium Check 2147957 | $3,672.90 | $3,672.90 | | | | | | | | | | | adunoff |
| 9/22/2022 11:51:39 AM | | Principal | $3,672.90 | $3,672.90 | | | | | | | | | | | adunoff |
| 9/22/2022 11:51:39 AM | | Principal | $7,276.55 | $7,276.55 | | | | | | | | | | | adunoff |
| 9/22/2022 11:51:39 AM | | General Agent: Return Premium Check 2147957 | $7,276.55 | $7,276.55 | | | | | | | | | | | adunoff |
| 2/2/2023 2:24:23 PM | | Collection Expense Default Interest Adjustment | $5,604.76 | | | | | | | | | $5,604.76 | | | adunoff |
| **TOTAL PAYMENTS RECEIVED:** | | | **$486,646.00** | **$478,360.78** | **$8,285.22** | **$0.00** | **$0.00** | **$0.00** | **$0.00** | **$0.00** | **$0.00** | **$0.00** | **$0.00** | **$0.00** | |
| **TOTAL ACCOUNT RECEIVABLES:** | | | **$552,407.84** | **$525,262.57** | **$8,438.63** | **$0.00** | **$13,006.88** | **$20.00** | **$75.00** | **$0.00** | **$0.00** | **$5,604.76** | **$0.00** | **$0.00** | |
| **CURRENT BALANCE (WITHOUT WRITE-OFFS):** | | | **$65,761.84** | **$46,901.79** | **$153.41** | **$0.00** | **$13,006.88** | **$20.00** | **$75.00** | **$0.00** | **$0.00** | **$5,604.76** | **$0.00** | **$0.00** | |

©2023 FinancePro. All Rights Reserved



**877.395.6770**          **Notice Date:** 6/6/2022

| | |
|---|---|
| PO Box 922025<br>Norcross, GA 30010 | **RE: Cancellation Notice Effective 6/9/2022** |
| | Account Number: ▇▇▇▇▇▇▇ |
| Insured: JR Towing & Truck Repair Corp<br>1179 Longwood Avenue<br>Bronx NY 10474 | Effective Date:   9/4/2021 |
| | Policy Number(s): ▇▇▇▇▇▇▇ |
| Agent:   ACRISURE, LLC-TCE Insurance<br>Services (Staten Isl)<br>201 EDWARD CURRY AVE<br>Staten Island NY 10314 | In compliance with the applicable state code, the lender hereby certifies that notice of intent to cancel was previously sent on the above-listed policy. The insured has failed to cure all defaults. The lender hereby instructs the insurance company to cancel the insurance policy effective: 6/9/2022. |
| TO:      CRC Group (Woodbury, NY)<br>175 Froelich Farm Blvd<br>Woodbury NY 11797 | |
| | Carrier:   National Fire & Marine/National Indemnity(OmahaNE)<br>Berkshire Hathaway Co. 1314 Douglas St Ste 1400<br>Omaha NE 68102 |

FOR NY AUTO POLICIES ONLY: Proof of financial security is required to be maintained continuously throughout the registration period. If you do not keep your insurance in force during the entire registration period, your registration will be subject to suspension. If your vehicle is still uninsured after 90 days, your driver's license will be suspended. To avoid these penalties you must surrender your registration certificate and plates before your insurance expires. By law, your insurance carrier is required to report specific termination information to the Commissioner of Motor Vehicles.

If you have a lapse in insurance coverage of 90 days or less, the law permits you to avoid a suspension of your registration by the payment of a civil penalty for each day or any portion thereof up to 90 days for which your insurance was not in effect. This civil penalty option applies only once during any 36-month period. The civil penalties are:

- 1 to 30 day lapse: $8 per each day of lapse
- 31 to 60 day lapse: $240 plus $10 per day for days 31 to 60
- 61 to 90 day lapse: $540 plus $12 per day for days 61 to 90

For Hire (FH) Vehicles: Proof of financial security is required to be maintained throughout the registration period. If you do not keep your insurance in force continuously during the registration period your registration will be revoked. To avoid this penalty you must surrender your registration certificate and plates before your insurance expires. By law, your insurance carrier is required to report specific termination information to the Commissioner of Motor Vehicles.



**877.395.6770** **Notice Date:** 6/6/2022

PO Box 922025
Norcross, GA 30010

Insured: JR Towing & Truck Repair Corp
1179 Longwood Avenue
Bronx NY 10474

Agent: ACRISURE, LLC-TCE Insurance Services (Staten Isl)
201 EDWARD CURRY AVE
Staten Island NY 10314

TO: CRC Group (Woodbury, NY)
175 Froelich Farm Blvd
Woodbury NY 11797

**RE: Cancellation Notice Effective 6/9/2022**

Account Number: [redacted]

Effective Date: 9/4/2021

Policy Number(s): [redacted]

In compliance with the applicable state code, the lender hereby certifies that notice of intent to cancel was previously sent on the above-listed policy. The insured has failed to cure all defaults. The lender hereby instructs the insurance company to cancel the insurance policy effective: 6/9/2022.

Carrier: National Liability & Fire Insurance (Omaha NE)
1314 Douglas St, Ste 1400
Omaha NE 68102-1944

FOR NY AUTO POLICIES ONLY: Proof of financial security is required to be maintained continuously throughout the registration period. If you do not keep your insurance in force during the entire registration period, your registration will be subject to suspension. If your vehicle is still uninsured after 90 days, your driver's license will be suspended. To avoid these penalties you must surrender your registration certificate and plates before your insurance expires. By law, your insurance carrier is required to report specific termination information to the Commissioner of Motor Vehicles.

If you have a lapse in insurance coverage of 90 days or less, the law permits you to avoid a suspension of your registration by the payment of a civil penalty for each day or any portion thereof up to 90 days for which your insurance was not in effect. This civil penalty option applies only once during any 36-month period. The civil penalties are:

- 1 to 30 day lapse: $8 per each day of lapse
- 31 to 60 day lapse: $240 plus $10 per day for days 31 to 60
- 61 to 90 day lapse: $540 plus $12 per day for days 61 to 90

For Hire (FH) Vehicles: Proof of financial security is required to be maintained throughout the registration period. If you do not keep your insurance in force continuously during the registration period your registration will be revoked. To avoid this penalty you must surrender your registration certificate and plates before your insurance expires. By law, your insurance carrier is required to report specific termination information to the Commissioner of Motor Vehicles.

...pe ID: 0E2EC073-06BE-488F-A833-F525B615E035

## ...ENT AND DISCLOSURE STATEMENT

P1
FINANCE

Quote: [redacted]

PO Box 924438
Norcross, GA 30010
(phone) 844-217-5674 (fax) Pfa@p1financ

- [✓] COMMERCIAL
- [ ] PERSONAL
- [✓] NEW CONTRACT
- [ ] ENDORSEMENT TO EXISTING

| BORROWER (Insured): Name and Address (as stated in policy) | PRODUCER (Agent/Broker): Name and Place of Business |
|---|---|
| KINGMAN TRANSPORT LLC<br>133 W 510 S<br><br>American Fork, UT 84003<br>TELEPHONE: 801.400.6353 FAX: | Mountain Meadow Insurance LLC<br>3189 West Erda Way<br><br>Tooele, UT 84074<br>TELEPHONE: 435-830-4652 FAX: 435-884-6141 |

In consideration of the premium(s) paid, or to be paid, by Lender on behalf of the Borrower, Borrower promises to pay to the order of P1 Finance the Total of Payments, subject to the provisions hereinafter set forth.

**FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT**

| 1. TOTAL PREMIUM(s) | 2. DOWN PAYMENT | 3. UNPAID PREMIUM BALANCE | 4. FL DOC STAMP CHG | 5. AMOUNT FINANCED | 6. FINANCE CHARGE | 7. TOTAL OF PAYMENTS | 8. DEFERRED PAYMENT PRICE |
|---|---|---|---|---|---|---|---|
| $48,396.00 | $12,099.00 | $36,297.00 | $0.00 | $36,297.00 | $1,738.08 | $38,035.08 | $50,134.08 |

| 9. ANNUAL PERCENT RATE the cost of your credit at a yearly rate | | 10. AMOUNT OF EACH PAYMENT | 11. NUMBER OF PAYMENTS | 12. WHEN FIRST PAYMENT IS DUE |
|---|---|---|---|---|
| 11.35% | YOUR PAYMENT SCHEDULE WILL BE > | $4,226.12 | 9 Monthly | 10/1/2018 |

**SECURITY:** You are giving a security interest in any and all policies or other collateral listed on the Agreement.
**LATE CHARGE:** See Disclosure Statement, item number (3) three.
**PREPAYMENT:** If you pay off the loan early, you may be entitled to a refund of part of the finance charge.
**AMORTIZATION SCHEDULE:** Check box for amortization detail. ☐

**BOX #3 ABOVE:** Paid to insurance companies, intermediary brokers or Agents listed here and in the Schedule of Policies.
**BOX #4 ABOVE:** Official fees paid to Florida Department of Revenue.
**FLORIDA DOCUMENTARY STAMP TAX:** Required by law when the amount Indicated in box #4 has been paid or will be paid directly to the Florida Department Of Revenue. Certificate of Registration #650370655-15-01.

**SCHEDULE OF POLICIES**

| POLICY PREFIX AND NUMBER | EFFECTIVE DATE OF POLICY OR ANNUAL INSTALLMENT | (1) FULL NAME OF INSURANCE COMPANY AND BRANCH OFFICE ADDRESS (2) NAME AND ADDRESS OF GENERAL AGENT TO WHICH POLICY PREMIUMS PAID | TYPE OF COVERAGE | MINIMUM EARNED PREMIUM | POLICY TERMS IN MONTHS COVERED BY PREMIUM | PREMIUM AMOUNT |
|---|---|---|---|---|---|---|
| | 9/1/2018 | National Indemnity Company<br>Burns & Wilcox<br>280 S 400 W Suite 200 Salt Lake City, UT 84101 | COMMERCIAL AUTO (WITH FILINGS) | 0% | 12 | Prem: $48,396.00<br>Taxes: $0.00<br>Fees: $0.00 |

Notes: **(1)** If a check is tendered for the down payment and the check is dishonored, this Agreement shall be deemed not to have been accepted even if notification of acceptance has been issued by Lender; **(2)** Rescinding or otherwise invalidating any of the policies is equivalent to cancellation of the policy(ies); **(3)** Non-Payment may result in cancellation of the policies.

**NOTICE TO INSURED: 1. DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACE. 2. YOU ARE ENTITLED TO A COMPLETELY FILLED IN COPY OF THIS AGREEMENT. 3. UNDER THE LAW, YOU HAVE THE RIGHT TO PAY OFF IN ADVANCE THE FULL AMOUNT UNDER CERTAIN CONDITIONS TO OBTAIN A PARTIAL REFUND OF THE SERVICE CHARGE.**

THE UNDERSIGNED BORROWER AND OR ITS REPRESENTATIVE INSURANCE AGENT OR BROKER HAS SIGNED THIS LOAN AGREEMENT WHICH CONSISTS OF THIS PAGE, THE DISCLOSURE STATEMENT AND ANY ADDITIONAL PAGES WHICH MAY CONTAIN A SCHEDULE OF POLICIES. EACH HAVE RECEIVED A COPY OF THIS LOAN AGREEMENT AND AGREE TO ALL OF THE TERMS OF THIS AGREEMENT, NOW THEREFORE ON

THIS 30th DAY OF August 20 18

DocuSigned by:
x Eric Hernandez
CC8B242459E44... SIGNATURE OF BORROWER
(If Corporation, Title of Officer Signing

**AGENT/BROKER CERTIFICATION**

The undersigned Agent/Broker, hereinafter referred to as "Agent", hereby represents and warrants that all policies listed in this agreement have been issued and delivered, and are in force and effect, that the policies listed in this agreement are not currently nor have they ever been the subject of any other premium finance agreement, that the down payment as shown in the contract has been paid (in good funds), that all policies therein were issued by the agency, and that all information, including the cancellation provisions effecting the return premium, for any of the policy(ies) listed has been accurately represented in the quote and any and all fully earned provisions that exist in the policies named in this loan have been disclosed. The Agent warrants that the above contract evidences a bona fide and legal transaction, that the Borrower is of legal age and as the capacity to contract, and if signed in corporate capacity, that the signatory has the authority to sign on behalf of such entity, that the Borrower has not filed for or is not preparing to file for bankruptcy protection, that the Borrower's signature is genuine, and that Agent has delivered a copy to the Borrower. Agent agrees that if any warranties contained in this Agreement are found to be untrue, it will immediately remit to Lender the full amount then remaining unpaid on this premium finance agreement. Upon termination of this Agreement or cancellation or rescission of any scheduled policies, the Agent agrees to pro-rata return any and all premiums, commissions, premium finance fees, risk management fees, and, Broker fees to Lender within ten (10) business days of receipt or according to applicable state law. Agent agrees to indemnify P1 Finance against any damages, costs or expenses incurred in connection with any untrue, misleading or fraudulent representation or warranty made by Agent hereunder.

x Kyle Mathews
PRINT NAME OF AGENT OR BROKER

DocuSigned by:
x Kyle Mathews
D5C8... SIGNATURE OF AGENT OR BROKER

FOR FIN CO. USE

DocuSign Envelope ID: 0E2EC073-06BE-488F-A833-F525B615E035

WITNESSETH: ... SURE STATEMENT

PA Finance will hereinafter be referred to as "Lender", this Premium Finance Agreement will hereinafter be referred to as "Agreement", and the person/entity listed on Page 1 of the finance agreement under the section titled Borrower shall be hereinafter referred to as "Borrower". That in consideration of the payment by the Lender to the respective insurance companies, or their agents, of the balance of the premiums upon the policies heretofore described in this Agreement(which policies have been issued and delivered to the Borrower at his request), the Borrower promises to pay to the Lender the amount shown in the completed schedule in this Agreement under the caption "Total of Payments", with service charge thereon as in said Schedule of Policies provided; and the Borrower agrees to the following terms set forth by the Lender:

1. To secure all liabilities owed from the Borrower to the Lender, the Borrower assigns to the Lender all of their right, title, and interest in the insurance policies listed in this Agreement, and all rights therein including all dividends, unearned premiums and unearned commissions.

2. The Borrower hereby irrevocably appoints the Lender as its attorney-in-fact with full power and authority to cancel the policies listed in this Agreement for default in payment. The insurance companies and/or its Agents listed in this Agreement are hereby authorized and directed, upon the request of the Lender, to cancel said policies and to pay to the order of the Lender all gross, unearned premiums, commissions and fees thereon without proof of default hereunder or of breach hereof. Interest will continue to accrue on unpaid balances, and the Borrower shall remain liable for any deficiency together with interest at the highest allowable legal rate. In the event of any breach by the Lender, Borrower's recovery is limited to the finance charge received in the Agreement by the Lender. Borrower waives a claim to consequential or other damages. The Borrower is liable for all sums due under this Agreement, and the Lender may, but is not bound to seek to recover its collateral. Borrower authorizes Lender to file a UCC financing statement to perfect Lender's security interest.

3. If any installment due hereunder is not paid within five (5) days of the due date, Borrower agrees to pay a delinquency and collections charge of 5% of the delinquent installment, or the maximum allowed by applicable law. If any installment due hereunder is not paid within fifteen (15) days of the due date, Borrower acknowledges and agrees that Lender may send notice of cancellation to the insurer which issued each of the policies listed in this Agreement. If the Lender incurs collections costs for amounts due from Borrower, the Borrower agrees to pay reasonable attorney fees and other collection costs up to the maximum allowed by law. This contract will be construed by the laws of the state of issuance. Borrower consents to jurisdiction in the civil courts of Gwinnett County, Georgia and waives any right to claim lack of personal jurisdiction in such court, for any proceedings to enforce the obligations of this Agreement.

4. The Borrower agrees that the Lender may endorse the Borrower's name on any check or draft for all monies that become due from the company and apply the same as payment of this agreement, returning any excess amount equal to or greater than one dollar ($1.00) to the Borrower.

5. In the event the payment made to Lender is returned because of insufficient funds, the Borrower agrees to pay the Lender all non-sufficient fund charges up to the maximum allowed by law. All checks are accepted subject to collection. No payment of any kind is deemed made until funds have cleared and been received.

6. If a policy listed in this Agreement is not issued at the time this Agreement is executed, the Borrower gives the Lender the authority to fill in the name of the insuring company or authorized agent, policy number, and the due date of the first payment. Upon request of the Borrower, the Lender may advance to the Borrower's agent or the insuring company any additional premiums that may become due, less normal down payment, adding the advance amount, plus any finance charge, to the Borrower's present contract.

7. The Borrower recognizes and agrees that the Lender is a lender and not an insurer and that the Lender assumes no liability hereunder as an insurer. The Borrower agrees that all payments hereunder shall be made directly to the Lender or third party designated by Lender and payment by the Borrower to any other person, firm, insurance agent, or insurance company shall not constitute payment to the Lender. Borrower further agrees and understands that the intermediary broker, Agent, or insurance company whose name appears on the Premium Finance Agreement is not a representative of the Lender and has no authority to promise anything on behalf of the Lender. Furthermore, the Borrower understands that the Lender makes no warranties or representations concerning the financed coverage nor has it played any part in the selection, structuring, or acquisition of Borrower's insurance coverage.

8. The Lender shall have the right to accept any payment or payments from the Borrower after the notice of cancellation has been sent to the insurance company(ies) and may apply them as a reduction of the indebtedness hereunder, and neither the acceptance nor the application of any such payment or payments shall constitute an undertaking on the part of the Lender to reinstate such insurance or constitute a waiver of any default hereunder. In the event the Lender requests reinstatement of such insurance, the Lender assumes no responsibility that such request will be received or honored by the insurance company, and the Borrower must verify the existence of coverage directly with the insurance company or its agent.

9. Interest on the loan is earned each month according to the policy effective date based on the Rule of 78's or as otherwise required by law. If the Borrower pays off the balance prior to maturity, they may receive a refund of a portion of the total finance charges. No refund need be made if it is less than $1.00 or maximum allowable by applicable law. Payment due dates will start on the date provided in Box 12 and continue each consecutive monthly, quarterly, semiannually, or annual payments as specified in Box 11.

10. In all cases, the Agreement is subject to approval and acceptance by the Lender. Lender may decline the loan, known as a Premium Finance Agreement, for any reason at its discretion. No contract is deemed in force until the Lender issues a notice of acceptance.

11. Borrower shall not asign the policy (except to mortgagees) without prior written consent of Lender. USPF shall assign this loan to a funding source, at its discretion, payoff and reassign same, including the terms and conditions herein, to an alternative funding source, at any time during the term of this Agreement.

12. The money advanced by the Lender is only for the premium as determined at the time this Agreement is accepted by Lender. Lender's payment shall not be applied by the insurance company to pay for any additional premiums owed by Borrower for any reason whatsoever. Borrower agrees to pay the insurance company directly for any additional premiums which become due for any reason including, but not limited to an audit. Lender may however, at its option, finance the additional premium according to the written agreement as stated above in section 6.

13. In the event of Fraud or any other type of misrepresentation, the Lender has the right to declare a default in the loan at any time at its discretion. Any default under any Agreement between the Borrower and the Lender shall be deemed and is a default under all agreements between such parties. All unearned premiums due to the Borrower whether from the insurance financed pursuant to this Agreement or any other agreement between Borrower and the Lender shall be security for and collateralize all loans made to the Borrower. Additionally, in the event of a default by the Borrower, the Lender may treat all assets of the Borrower as collateral under this Agreement, and may declare the remaining principal amount, with all accrued interest and fees, immediately due and payable.

14. The Borrower recognizes and agrees that their insurance Agent may add a fee to the base annual percentage rate as compensation for administering of the premium finance agreement where allowed by law. All parties to this transaction agree that these fees will be earned on a pro-rata basis.

15. This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Agreement and all of which, when taken together, will be deemed to constitute one and the same agreement. The exchange of copies of this Agreement including signature pages received by electronic or facsimile transmission shall constitute effective execution and delivery of this Agreement and may be used in lieu of the original Agreement for all purposes. Electronic or written signatures of the parties shall be deemed to be original.

**THE BORROWER REPRESENTS AND WARRANTS AS FOLLOWS:**

That all financial information or financial representations given to Lender are true and correct in all respects, and fully and accurately present the financial conditions reflected therein. The execution, delivery and performance of this Agreement by Borrower is within the requisite corporate or limited liability company power, and has been duly authorized. This Agreement, when duly executed and delivered, and accepted by the Lender will constitute legal, valid, and binding obligations of Borrower and will be applicable to and secure the payment and performance of this Agreement.

There are no actions, suits, or proceedings pending or to the knowledge of Borrower, threatened against or affecting the Borrower, or involving the validity or enforceability of this Agreement. There are no liens on or security interest in the collateral. That (a) all the Borrowers or insureds are listed on the Agreement and that if all are not listed, then the one who is listed is authorized to act on behalf of all the Borrowers or insured; (b) no other party is entitled to any notice other than the one set forth on the face of the Agreement; (c) the Lender may, at its option, advance the premiums which are the subject of the Agreement to the insurance company, the intermediary broker or the Agent/Broker; (d) the Agreement contains the entire agreement between parties; (e) The Agent/Broker is the agent of the Borrower and that the Agent/Broker does not have the authority to make any representations on behalf of the Lender. Borrower is not in default with respect to any order, writ, injunction, decree or demand of any court or any Governmental Authority. The Borrower is not a Debtor under any bankruptcy proceedings of Title 11 of the U.S. Statues nor have any such proceedings been threatened. Borrower is not insolvent and is not the subject of any actions or receiverships. Borrower is not in any default with any other lender.

DS
EH

**Payment Schedule & History for Account # [redacted] (KINGMAN TRANSPORT LLC)**

Click on a payment description for printable receipt

| Date | Pmt. # | Description | Amount | Applied to: Principal | Interest | Setup Fee | Late Charge | NSF Fee | Cancel Fee | Convenience Fee | Processing Fee | Collection Expense | MW Fee | Down | Entered by |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/1/2018 12:00:00 AM | 1 | Payment Due | $2,537.42 | $2,194.11 | $343.31 | | | | | | | | | | System |
| 10/9/2018 4:18:35 PM | | Late Fee | $211.31 | | | | $211.31 | | | | | | | | adishroom |
| 10/22/2018 4:24:42 PM | | Cancel Fee | $15.00 | | | | | | $15.00 | | | | | | adishroom |
| 11/1/2018 12:00:00 AM | 2 | Payment Due | $2,537.42 | $2,230.84 | $306.58 | | | | | | | | | | System |
| 11/30/2018 3:56:44 PM | | Insured: Installment eCheck | $4,750.00 | $4,750.00 | | | | | | | | | | | cscott1 |
| 12/1/2018 12:00:00 AM | 3 | Payment Due | $2,537.42 | $2,267.91 | $269.51 | | | | | | | | | | System |
| 12/6/2018 3:58:14 PM | | Late Fee | $211.31 | | | | $211.31 | | | | | | | | adishroom |
| 12/26/2018 4:04:47 PM | | Cancel Fee | $15.00 | | | | | | $15.00 | | | | | | scambron |
| 1/1/2019 12:00:00 AM | 4 | Payment Due | $2,537.42 | $2,305.33 | $232.09 | | | | | | | | | | System |
| 1/8/2019 12:04:19 PM | | General Agent: Cancel Return Premium Check 119624 | $15,198.30 | $15,198.30 | | | | | | | | | | | cfisher1 |
| 1/9/2019 10:49:58 AM | | General Agent: Reversal Check 119624 per CScott to post as spread | ($15,198.30) | ($15,198.30) | | | | | | | | | | | cfisher1 |
| 1/9/2019 10:52:24 AM | | General Agent: Return Premium Bank Draft REPOST | $15,198.30 | $15,198.30 | | | | | | | | | | | cfisher1 |
| 1/9/2019 10:52:25 AM | | Principal | $15,198.30 | $15,198.30 | | | | | | | | | | | cfisher1 |
| 1/9/2019 2:50:44 PM | | Principal Reverse entry | ($15,198.30) | ($15,198.30) | | | | | | | | | | | scambron |
| 1/9/2019 2:50:44 PM | | General Agent: Reversal Bank Draft REPOST Repost before installment per Cindy. | ($15,198.30) | ($15,198.30) | | | | | | | | | | | scambron |
| 1/9/2019 2:51:14 PM | | Insured: Reversal eCheck Repost after RP per Cyndi | ($4,750.00) | ($4,750.00) | | | | | | | | | | | scambron |
| 1/9/2019 2:52:21 PM | | Principal | $15,198.30 | $15,198.30 | | | | | | | | | | | scambron |
| 1/9/2019 2:52:21 PM | | General Agent: Return Premium Bank Draft REPOST | $15,198.30 | $15,198.30 | | | | | | | | | | | scambron |
| 1/9/2019 2:54:03 PM | | Insured: Installment | $4,750.00 | $4,100.11 | $649.89 | | | | | | | | | | scambron |

| | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Bank Draft REPOST | | | | | | | | | | | | | |
| **1/9/2019 3:57:57 PM** | | **Late Fee agreed to waive 1 late fee Adjustment** | **($211.31)** | | | | **($211.31)** | | | | | | | | **cscott1** |
| 1/9/2019 3:58:11 PM | | Cancel Fee agreed to waive 1 cancel fee Adjustment | ($15.00) | | | | | | ($15.00) | | | | | | cscott1 |
| 1/15/2019 7:57:52 AM | | Convenience Fee | $2.00 | | | | | | | $2.00 | | | | | cscott1 |
| 1/15/2019 7:57:52 AM | | Insured: Installment ACH Withdrawal 913867 | $5,627.99 | $4,898.08 | $501.60 | | $211.31 | | $15.00 | $2.00 | | | | | cscott1 |
| **2/1/2019 12:00:00 AM** | **5** | **Payment Due** | **$2,199.68** | **$2,005.37** | **$194.31** | | | | | | | | | | **System** |
| **2/6/2019 4:02:55 PM** | | **Late Fee** | **$126.87** | | | | **$126.87** | | | | | | | | **adunoff** |
| 2/19/2019 4:04:06 PM | | Cancel Fee | $15.00 | | | | | | $15.00 | | | | | | adunoff |
| **3/1/2019 12:00:00 AM** | **6** | **Payment Due** | **$2,199.68** | **$2,043.50** | **$156.18** | | | | | | | | | | **System** |
| 3/4/2019 3:23:19 PM | | Agent: Installment eCheck | $1,688.70 | $1,688.70 | | | | | | | | | | | lsullivan1 |
| 3/4/2019 3:24:39 PM | | Insured: Installment eCheck | $2,000.00 | $1,805.69 | $194.31 | | | | | | | | | | lsullivan1 |
| 3/4/2019 3:39:36 PM | | Agent: Reversal eCheck Reapply as RP | ($1,688.70) | ($1,688.70) | | | | | | | | | | | adunoff |
| 3/4/2019 3:40:05 PM | | Insured: Reversal eCheck Repost after RP applied | ($2,000.00) | ($1,805.69) | ($194.31) | | | | | | | | | | adunoff |
| 3/4/2019 3:40:46 PM | | Principal | $1,688.70 | $1,688.70 | | | | | | | | | | | adunoff |
| 3/4/2019 3:40:46 PM | | Agent: Return Premium Bank Draft Repost echeck as RP | $1,688.70 | $1,688.70 | | | | | | | | | | | adunoff |
| 3/4/2019 3:41:30 PM | | Insured: Installment Bank Draft Repost echeck | $2,000.00 | $1,805.69 | $194.31 | | | | | | | | | | adunoff |
| **3/6/2019 4:01:41 PM** | | **Late Fee** | **$109.98** | | | | **$109.98** | | | | | | | | **adunoff** |
| 3/18/2019 4:01:01 PM | | Cancel Fee | $15.00 | | | | | | $15.00 | | | | | | adunoff |
| **4/1/2019 12:00:00 AM** | **7** | **Payment Due** | **$2,199.68** | **$2,082.00** | **$117.68** | | | | | | | | | | **System** |
| 4/5/2019 7:54:17 AM | | Insured: Installment eCheck | $4,865.89 | $4,325.18 | $273.86 | | $236.85 | | $30.00 | | | | | | lsullivan1 |
| 4/12/2019 10:31:19 AM | | Insured: Reversal eCheck Insufficient Funds | ($4,865.89) | ($4,325.18) | ($273.86) | | ($236.85) | | ($30.00) | | | | | | adunoff |
| 4/12/2019 10:31:21 AM | | NSF Fee for reversal of eCheck | $20.00 | | | | | $20.00 | | | | | | | adunoff |
| **5/1/2019 12:00:00 AM** | **8** | **Payment Due** | **$2,199.68** | **$2,120.86** | **$78.82** | | | | | | | | | | **System** |

| | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **6/1/2019 12:00:00 AM** | **9** | **Payment Due** | **$2,199.68** | **$2,160.08** | **$39.60** | | | | | | | | | | **System** |
| 12/30/2019 11:49:43 AM | | Agent: Installment eCheck | $4,500.00 | $4,226.14 | $273.86 | | | | | | | | | | adunoff |
| 11/30/2022 1:13:34 PM | | Agent: Reversal eCheck Rvs to collect full payoff from insured | ($4,500.00) | ($4,226.14) | ($273.86) | | | | | | | | | | adunoff |
| 11/30/2022 1:17:50 PM | | Agent: Installment Bank Draft Repost agent echeck | $4,500.00 | $4,226.14 | $273.86 | | | | | | | | | | adunoff |
| 2/2/2023 2:33:45 PM | | Collection Expense Adjustment | $6,088.83 | | | | | | | | | $6,088.83 | | | adunoff |
| **TOTAL PAYMENTS RECEIVED:** | | | **$33,764.99** | **$31,917.02** | **$1,619.66** | **$0.00** | **$211.31** | **$0.00** | **$15.00** | **$2.00** | **$0.00** | **$0.00** | **$0.00** | **$0.00** | |
| **TOTAL ACCOUNT RECEIVABLES:** | | | **$44,639.07** | **$36,297.00** | **$1,738.08** | **$0.00** | **$448.16** | **$20.00** | **$45.00** | **$2.00** | **$0.00** | **$6,088.83** | **$0.00** | **$0.00** | |
| **CURRENT BALANCE (WITHOUT WRITE-OFFS):** | | | **$10,874.08** | **$4,379.98** | **$118.42** | **$0.00** | **$236.85** | **$20.00** | **$30.00** | **$0.00** | **$0.00** | **$6,088.83** | **$0.00** | **$0.00** | |

©2023 FinancePro. All Rights Reserved