IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JAWONE ROBINSON,<br><br>    Plaintiff,<br><br>    v.<br><br>ORLANDO JILES, EDGAR DESANTOS, and CITY OF FAIRBURN, GEORGIA,<br><br>    Defendants. | Civil Action No.<br><br>**COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff Jawone Robinson brings this action against defendants Orlando Jiles, Edgar DeSantos, and City of Fairburn, Georgia ("Defendants") and alleges as follows:

## FACTUAL BACKGROUND

**I.    Defendant DeSantos and Jiles' Excessive Force Against Plaintiff**

1.    On December 21, 2021, defendant Edgar DeSantos conducted a traffic stop of Plaintiff on suspicion that Plaintiff committed a traffic infraction.

2.    Plaintiff rolled down his window, sat in his car, spoke calmly to Detective DeSantos, and handed Detective DeSantos his driver's license when asked.

1

3. Detective DeSantos, however, began accusing Plaintiff of appearing "nervous" and "running."

4. After approximately four minutes, defendant Officer Jiles arrived at the scene.

5. Detective DeSantos then instructed Plaintiff to get out of his car.

6. Just five seconds after telling Plaintiff to get out of the car, Detective DeSantos ordered Officer Jiles to give Detective DeSantos a Taser.

7. Officer Jiles approached the driver's side window with his Taser drawn.

8. 12 seconds after he had first told Plaintiff to get out of the car, Detective DeSantos began yelling orders to Officer Jiles to, "tase him, tase him, tase him."

9. 20 seconds after Detective DeSantos first told Plaintiff to get out of the car, Officer Jiles reached his Taser inside the car, aimed it at Plaintiff's face from mere inches away, and fired it twice.

10. Two of the Taser probes hit Plaintiff in the face, one directly in his left eye.

11. Plaintiff was unarmed and both of his hands were visible and empty at all times prior to the Taser deployment.

12. Plaintiff did not make any threats or give any objective indicator that he posed a risk of harm to the officers or anyone else.

13. In his incident report, Detective DeSantos stated that dispatch advised him that Plaintiff was "armed and dangerous." But the dispatcher did not, in fact, do so.

14. Although Plaintiff was clearly severely injured and the Taser probe was still in his eye, the Defendants threatened to tase him again and handcuffed him rather than rendering aid and before even calling for medical aid:



15. Plaintiff was eventually taken to Grady Hospital, where he underwent emergency surgery to remove his left eye.

16. Plaintiff incurred medical bills of $125,280.76 for that procedure and related medical care.

17. Tasers do not cause neuromuscular incapacitation unless the two probes strike the subject at least 12 inches apart.

18. For the probes to spread 12 inches apart, the Taser must be deployed from at least four feet away from the subject.

19. Under no circumstances, therefore, will a Taser achieve the intended effect of neuromuscular incapacitation when reached through a car window and deployed on a person sitting inside.

20. The only effect of deploying a Taser from mere inches away is to cause injury and pain.

21. Similarly, in addition to the obvious likelihood of injury, a Taser will not achieve neuromuscular incapacitation if the probes strike the subject in the face.

22. The only effect of deploying a Taser aimed at the face is to cause injury and pain.

## II.  Fairburn Police Department's Unconstitutional Use of Force Customs and Policies

23. TASER International instructs law enforcement officers to deploy electronic control devices in the lower center of mass and advises that critical injury or death may occur if deployed into the upper chest, neck, or head.

24. The use of a Taser in the upper chest, head, and neck area creates a substantial likelihood of causing death or serious bodily injury.  Accordingly, the use of a Taser in such a manner constitutes deadly force and may only be employed to apprehend a suspected felon who possesses a deadly weapon or poses an immediate threat of serious physical harm to the officer or someone else.

25. Fairburn's express, written policies instruct and permit officers to use unnecessary, gratuitous, and disproportionate force against citizens as a matter of routine procedure when conducting stops and making arrests.

26. Fairburn's Standard Operating Procedure 11-2 instructs officers to use "less lethal," though still potentially lethal Tasers, to, among other things, "prevent or interrupt a crime against property," and when "making lawful arrests and overcoming resistance to such arrests and preventing escape from custody."

27. Fairburn's use of force policy does not require that a suspect be actively resisting an officer or pose any danger to anyone prior to the use of a Taser in any manner.

28. Moreover, Fairburn's use of force policy permits the targeting of the head and neck with a taser on any suspect, which constitutes deadly force.

29. Fairburn's use of force policy makes no reference to the *Graham* factors which every officer must consider in determining whether and/or the extent to which physical force is reasonably necessary to make an arrest or search. Instead, the policy provides blanket authorization to officers to use varying degrees of physical force as a matter of routine procedure when making arrests and searches.

30. Fairburn's use of force policies do not require officers to attempt common de-escalation tactics typically required of reasonable law enforcement officers prior to the use of force.

31. The United States Supreme Court has repeatedly emphasized that no force is authorized unless there exists an objectively reasonable need to use such force based on the extent of physical safety threat confronting the officer.

32. The use of even minimal physical force is not authorized "under normal circumstances."

33. Fairburn's use of force policy directed officers to violate the Fourth Amendment by instructing officers to use unnecessary force as a matter of routine procedure when making arrests and searches under normal circumstances, regardless of whether the suspect poses any physical threat.

6

34. A reasonable officer reading Fairburn's use of force policies would necessarily believe that he had blanket authorization to use Tasers as a matter of routine procedure when making arrests and searches, including against non-resisting citizens.

35. Indeed, the Fairburn Police Department Review Board reviewed the use of force against Plaintiff and concluded that it was "reasonable" and in compliance with Fairburn policy.

36. Accordingly, Fairburn has approved of and ratified the unconstitutional use of force by its officers against Plaintiff.

## PARTIES

37. Plaintiff Jawone Robinson is a resident of Georgia.

38. Defendant Edgar DeSantos is an individual who was a Detective with the Fairburn Police Department at all relevant times. Defendant DeSantos acted within the course and scope of his employment with the City of Fairburn and acted under color of state law.

39. Defendant Orlando Jiles is an individual who was a Police Officer with the Fairburn Police Department at all relevant times. Defendant Jiles acted within the course and scope of his employment with the City of Fairburn and acted under color of state law.

40.     Defendant City of Fairburn is a duly created and existing political entity under the laws of the state of Georgia that has the capacity to sue and be sued and is being sued in connection with duties that it owes as a municipal government.

## JURISDICTION AND VENUE

41.     This Court has jurisdiction over the federal claims asserted herein pursuant to 28 U.S.C. §§ 1331 and 1343 and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

42.     Defendants are residents of the State of Georgia and are subject to the personal jurisdiction of this Court.

43.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the subject incident occurred in Fairburn, Georgia, which is located within the Northern District of Georgia.

## CLAIMS FOR RELIEF

**Count I:     42 U.S.C. § 1983 Violation of Fourth and Fourteenth Amendments by Defendant Orlando Jiles**

44.     Plaintiff incorporates paragraphs 1 through 43 as if fully stated here.

45.     At all times relevant to this complaint, Defendant Jiles was an Officer with the Fairburn Police Department.  Defendant Jiles was:

    a.     Acting under color of law;

  b. Acting within the course and scope of his employment by Fairburn; and

  c. Acting pursuant to ordinances, regulations, customs, and policies of Fairburn.

 46. Plaintiff had a clearly established constitutional right to be free from the use of excessive force.

 47. Plaintiff was suspected of minor traffic infractions.

 48. Plaintiff was unarmed.

 49. Plaintiff did not pose any threat to the safety of the Defendants or anyone else.

 50. Nonetheless, Defendant Jiles aimed a Taser at Plaintiff's face from mere inches away and deployed it twice, striking Plaintiff's face and eye.

 51. There is no factual or legal justification for Defendant Jiles' use of force against Plaintiff.

 52. Defendants Jiles' use of force against Plaintiff was objectively unreasonable, was not necessary for any legitimate law enforcement need, and was entirely punitive.

 53. As a direct and proximate result of Defendant Jiles' violation of Plaintiff's constitutional rights, Plaintiff suffered severe physical injury and pain, permanent blindness of the left eye, and incurred medical bills of $125,280.76.

**Count II:    42 U.S.C. § 1983 Violation of Fourth and Fourteenth Amendments by Defendant Edgar DeSantos**

54. Plaintiff incorporates paragraphs 1 through 43 above as if fully stated here.

55. At all times relevant to this complaint, Defendant DeSantos was a Detective with the Fairburn Police Department. Defendant DeSantos was:

    a. Acting under color of law;

    b. Acting within the course and scope of his employment by Fairburn; and

    c. Acting pursuant to ordinances, regulations, customs, and policies of Fairburn.

56. Plaintiff had a clearly established constitutional right to be free from the use of excessive force.

57. Plaintiff was suspected of minor traffic infractions.

58. Plaintiff was unarmed.

59. Plaintiff did not pose any threat to the safety of the Defendants or anyone else.

60. Nonetheless, Detective DeSantos as a higher-ranking officer expressly instructed Defendant Jiles to use force against Plaintiff that was excessive and in violation of his constitutional rights.

61. Additionally, even if he had not instructed Defendant Jiles to engage in unconstitutional conduct, Defendant DeSantos had a duty to intervene in and prevent or stop Defendant Jiles' use of excessive force and he failed to do so.

62. As a direct and proximate result of Defendant DeSantos' violation of Plaintiff's constitutional rights, Plaintiff suffered severe physical injury and pain, permanent blindness of the left eye, and incurred medical bills of $125,280.76.

**Count III:  Assault and Battery Pursuant to Georgia Law by Defendants Jiles and Fairburn**

63. Plaintiff incorporates paragraphs 1 through 43 above as if fully stated here.

64. Defendant Jiles committed assault and battery against Plaintiff in violation of O.C.G.A. §§ 51-1-13 and 51-1-14 when he intentionally deployed a Taser into Plaintiff's face and eye.

65. Defendant Jiles' assault and battery directly and proximately caused Plaintiff severe physical injury and pain, permanent blindness of the left eye, and medical bills of $125,280.76.

66. Defendant Jiles' attack on Plaintiff was intentional, malicious, and carried out with an intent to cause Plaintiff harm.

67. Accordingly, Defendant Jiles' conduct was not protected by official immunity, and he is liable to Plaintiff for assault and battery under Georgia law.

68. An employer is vicariously liable for its employee's intentional tort if the tortious act was authorized by the employer prior to its commission, ratified after its commission, or committed within the scope of employment. Accordingly, Fairburn is vicariously liable for Defendant Jiles' assault and battery of Plaintiff.

**Count IV:   42 U.S.C. § 1983 Violation of Fourth and Fourteenth Amendments by Fairburn**

69. Plaintiff incorporates paragraphs 1 through 43 as if fully stated here.

70. Fairburn was responsible for promulgating and enforcing customs, practices, policies, and procedures regarding the use of force by Fairburn Police Department officers.

71. Fairburn created, enforced, or allowed to exist policies and customs that permitted and encouraged the unreasonable use of force in violation of the fourth and fourteenth amendments.

72. Fairburn created, enforced, or allowed to exist policies and customs that did not require officers to receive adequate use of force training.

73. Fairburn created, enforced, or allowed to exist policies and customs that did not require officers to receive adequate training in the use of potentially lethal electronic control devices.

74. Fairburn created, enforced, or allowed to exist policies and customs that did not require officers to receive adequate training in de-escalation, verbal defusing techniques, and active listening skills.

75. Fairburn's promulgation and enforcement of inappropriate customs, practices, policies, and procedures, and failure to promulgate and enforce necessary customs, practices, policies, and procedures caused, among other things:

    a. Fairburn Police Department officers to engage in reckless and unnecessarily dangerous use of force tactics;

    b. Fairburn Police Department officers to escalate unnecessary emotional interactions with citizens;

    c. Fairburn Police Department officers to fail to de-escalate emotional interactions with citizens; and

    d. Fairburn Police Department officers to recklessly or intentionally use electronic control devices in a manner that cause risk of serious bodily injury and death.

76. Fairburn policymakers reviewed the use of force against Plaintiff and determined that it was in accordance with the intent of their policies and no disciplinary or corrective actions of any kind were warranted.

77. Accordingly, Fairburn has ratified Defendants Jiles and DeSantos' conduct, and it is therefore chargeable to the city.

78. Fairburn's promulgation and enforcement of unconstitutional customs, practices, policies, and procedures directly and proximately caused

Plaintiff severe physical injury and pain, permanent blindness of the left eye, and incurred medical bills of $125,280.76.

## **PUNITIVE DAMAGES AND ATTORNEYS' FEES**

79. Defendants' conduct as described above shows willful misconduct, malice, fraud, wantonness, oppression, and an entire want of care which is sufficient to establish that Defendants acted with conscious indifference to the consequences of their actions.

80. Defendants acted with malice and/or reckless and callous indifference to Plaintiff's state and federal rights.

81. Accordingly, punitive damages should be imposed pursuant to O.C.G.A. § 51-12-5.1 and other applicable laws to deter future violations of fundamental constitutional rights.

82. Defendants have acted in bad faith, have been stubbornly litigious, and/or have caused Plaintiff unnecessary trouble and expense, which entitle Plaintiff to attorneys' fees and expenses of litigation pursuant to O.C.G.A. § 13-6-11.

83. Plaintiff is additionally entitled to attorneys' fees pursuant to 42 U.S.C. § 1988.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that he have a trial before a jury on all issues and judgment against Defendants as follows

a. An award of compensatory damages for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest;

b. An award of punitive damages in favor of Plaintiff;

c. An award of reasonable costs and attorneys' fees; and

d. Such other and further relief as the Court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

**DATED**:  May 5, 2023.

/s/ Eric S. Fredrickson
Eric S. Fredrickson
Georgia Bar No. 489783
Matthew S. Harman
Georgia Bar No: 327169

**HARMAN LAW FIRM LLC**
3575 Piedmont Road, NE
Bldg 15, Suite 1040
Atlanta, GA 30505
Telephone:  (404) 554-0777
Facsimile:  (404) 424-9370
Email:  mharman@harmanlaw.com
         efredrickson@harmanlaw.com

*Attorneys for Plaintiff*