**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

JORDAN MCDUFFIE,

    Plaintiff,

      v.

ANTONIO VIVES,
WALMART, INC.,
WAL-MART STORES EAST, LP,
CITY OF RIVERDALE,

    Defendants.

Civil Action No.:

**<u>JURY TRIAL DEMANDED</u>**

**<u>COMPLAINT</u>**

1.    This case is about the false arrest and imprisonment of Jordan McDuffie, a young black man, by Antonio Vives, an off-duty Riverdale police officer moonlighting as an unlicensed armed security guard for Walmart. Walmart hired Vives to enforce the store's policies despite Vives' turbulent career in law enforcement, filled with short stints at different departments, reprimands, suspensions, demotions, and complaints about his dangerous, disrespectful, and unlawful conduct—a checkered past that foreseeably led to this kind of incident.

2.    Days before Christmas 2021, Vives was working inside Walmart when he walked toward the exit to assist with loss prevention and with an improperly parked vehicle. Instead of fully leaving the store, he abruptly stopped

in the middle of the busy exit doorway, blocking most of it, with his back towards customers.

3.      McDuffie had finished shopping and went to leave moments after Vives stopped in the doorway. McDuffie politely said, "excuse me," and passed by Vives.

4.      After McDuffie passed by, Vives asked him to stop and come back. When McDuffie realized that Vives was talking to him and complied, Vives arrested him for battery and obstruction, cuffed him, and took him to jail.

5.      Conclusive video evidence shows that Vives did not have arguable probable cause to arrest McDuffie for battery or anything else.[1] In the video, McDuffie is the first customer (wearing a backpack) to pass by Vives. The video shows that McDuffie does not make physical conduct with Vives that anyone could consider insulting, provoking, or intentional.

6.      Vives justified this arrest by lying in his police report. He claimed McDuffie "immediately ran into [him]" and "made physical contact with [his] body and firearm" by "pushing [him] out of his way." He claimed McDuffie "used his shoulder" to "strike a police officer from behind."

7.      But the video evidence conclusively shows that none of that was true.

---

[1] This video is also available here: bit.ly/mcduffievives.

8.      Two Walmart employees watched the video with Vives, who asked them if he erred in handcuffing McDuffie. The two Walmart employees confirmed that they believed the arrest was proper—despite the video showing McDuffie clearly did nothing wrong. McDuffie was sitting in the room handcuffed at the time, and the two Walmart employees could have intervened to prevent McDuffie from going to jail instead of ratifying Vives' conduct, encouraging him to continue and escalate the unlawful detention.

9.      Months later, all charges against McDuffie were dismissed due to insufficient evidence.

## JURISDICTION AND VENUE

10.     This is a civil and constitutional rights action arising under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution.  This Court has jurisdiction of federal claims under 28 U.S.C. §§ 1331 and 1343 and supplemental jurisdiction of pendent state law claims under 28 U.S.C. § 1337.

11.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391 because the events giving rise to Plaintiff's claims arose in this district and division.

## PARTIES

12.     Plaintiff Jordan McDuffie is a United States citizen.

13.     Defendant Antonio Vives is sued in his individual capacity. At all times relevant to this complaint, Vives acted under the color of law by virtue of his uniformed presence as a Riverdale Police Department officer. At all times relevant to this complaint, Vives also acted within the scope and authority of his employment for the Riverdale Police Department and for Defendants Walmart, Inc. and Wal-Mart Stores East, LP.

14.     Defendant Walmart, Inc. is a Delaware corporation with its principal place of business in Arkansas. Walmart, Inc. is liable under state law *respondeat superior* for Vives' tortious conduct and for its own negligence in hiring, training, and retaining Vives.

15.     Defendant Wal-Mart Stores East, LP is a Delaware corporation with its principal place of business in Arkansas. Wal-Mart Stores East, LP is liable under state law *respondeat superior* for Vives' tortious conduct and for its own negligence in hiring, training, and retaining Vives.

16.     Collectively, Walmart, Inc. and Wal-Mart Stores East, LP are referred to as Walmart.

17.     The City of Riverdale is a Georgia municipality subject to suit.

## FACTS

### McDuffie Arrested Without Any Arguable Basis

18.     On December 20, 2021, at approximately 6:30pm, the Riverdale Walmart Supercenter was busy with holiday shoppers.

19.     At that time, Vives was working on behalf of Walmart "assisting with loss prevention" and responding to a potential "improperly parked vehicle" on Walmart premises.

20.     In addition to those roles, Vives was also tasked with ensuring the orderly ingress and egress of customers at Walmart.

21.     Vives was also responsible for enforcing Walmart's policies and procedures, including rules of decorum.

22.     Walmart paid Vives to provide services to Walmart both as a uniformed off-duty security officer and as a representative of Walmart who was authorized to carry out Walmart policies and procedures.

23.     Despite the store being busy with customers coming in and out of the automatic doors, Vives suddenly stopped himself in the middle of the door, obstructing people coming in and out.

24.     Jordan McDuffie was inside Walmart, and, having completed his business, walked towards the door to leave.

25.     Vives was walking in front of McDuffie as both walked towards the exit door.

26.     Vives abruptly stopped in the middle of the door.

27.     Noting that Vives was obstructing a portion of the door, McDuffie politely said, "excuse me," and walked by Vives.

28.     Based on the video, it is not clear that McDuffie made any physical contact with Vives.

29.     In fact, McDuffie walked and angled his body so that he would not make any contact with Vives. But Vives suddenly turned into McDuffie, resulting in the slightest of contact between Vives' arm and McDuffie's torso.

30.     The physical contact with was minimal, caused by Vives' conduct, and obviously not harmful, offensive, or intentional.

31.     Vives knew that McDuffie did not intend to make any contact whatsoever, and indeed that McDuffie tried to avoid making any contact.

32.     The video shows that Vives does not react as if he has been battered.

33.     The next customer who went through the door, who appears to be a white woman, made physical contact with Vives, but Vives did not demand that she stop or arrest her for battery.

34.     Vives set out to arrest McDuffie knowing McDuffie had done nothing wrong.

35.     Vives then demanded that McDuffie stop walking to his vehicle.

36.     McDuffie complied with Vives' command once he understood that Vives was seriously speaking to him.

37.     Vives then arrested McDuffie and brought him back into the Walmart.

38.     At no time did Vives or anyone else suspect McDuffie of theft or any other offense.

39.     Vives charged McDuffie with simple battery in violation of O.C.G.A. § 16-5-23 and obstruction in violation of O.C.G.A. § 16-10-24.

40.     There was no arguable probable cause for any of these charges.

41.     Vives' theory for simple battery was that McDuffie "immediately ran into [Vives]" and "made physical contact with [Vives'] body and firearm" by "pushing [Vives] out of his way."

42.     But the video shows that each of these statements in Vives' police report are false.

43.     Vives' theory for obstruction was that McDuffie did not immediately stop when asked.

44.     But McDuffie initially had no reason to think that Vives was seriously speaking to him, and McDuffie stopped once he understood that Vives was serious about addressing him.

45.     McDuffie also had no obligation to stop because Vives has no justification to detain him.

46.     Under Georgia law, persons are entitled to resist an unlawful arrest and there was no arguable probable cause for any offense.

47.     Vives called for other law enforcement officers to transport Plaintiff and to book him into the Clayton County Jail on falsified charges.

48.     Before McDuffie was transferred to jail, Vives and two Walmart employees watched the same video of Plaintiff's false arrest linked and described in this Complaint. McDuffie was in the room, handcuffed, while Vives and the two Walmart employees watched the video.

49.     Vives asked the two Walmart employees to confirm that the arrest was justified.

50.     The two Walmart employees confirmed that the arrest was appropriate despite the video evidence showing that Plaintiff did nothing unlawful.

51.     At the time of his seizure, there was no arguable probable cause for any offense, including any charge of obstruction or simple battery.

52.    Based on Vives' fabrications, McDuffie spent three days in jail, had to post more than $3,000 bond and hire an attorney, and was prosecuted for nearly two months.

53.    Before trial, all charges were dismissed.

<u>Walmart's Negligence in Hiring Vives</u>

54.    Vives was armed with a firearm while working security for Walmart.

55.    Vives was not licensed as a private security business or guard under O.C.G.A. § 43-38-1, *et seq*.

56.    Walmart was not licensed as a private security business under O.C.G.A. § 43-38-1, *et seq*.

57.    Georgia law requires than any person performing armed private security maintain a license and comply with training and monitoring requirements.

58.    Vives and Walmart did not comply with the provisions of O.C.G.A. § 43-38-1, *et seq*. because they did not have the required license or training.

59.    Walmart also knew or should have known that Vives was an unsuitable person to work as an armed security guard.

60.    Walmart knew, or should have known, that Vives failed to proceed past a probationary period as an officer with the LaGrange Police Department, based on extensive documented misconduct, including:

a.  numerous citizen complaints,

b.  an improper vehicular pursuit,

c.  failure to make a required police report,

d.  insubordination,

e.  "alarming" baseless accusations of traffic violations,

f.  failure to consider exculpatory information,

g.  reckless driving,

h.  failure to report use of force, and

i.  the department's overall conclusion that he was not a suitable officer.

61.     Walmart knew, or should have known, that Vives was demoted in his next role as a law enforcement officer, suspended for three days, and put on exclusively administrative duties, for the Clayton County Sheriff's Office as a result of additional misconduct, including:

a.  insubordination,

b.  a dangerous and improper vehicle pursuit, in which Vives disregarded direct orders to discontinue a pursuit, drove the wrong way on the interstate, and conducted a PIT maneuver (after having been told to discontinue a pursuit) that resulted in a crash involving another law enforcement officer, and

c.  citizen complaints.

62.    Public records also show that Vives resigned from the Clayton County Sheriff's Office during an internal investigation into his conduct. This investigation ultimately found against Vives, but no discipline was imposed because he had already left. He was nevertheless then hired by Riverdale as a police officer and by Walmart as an unlicensed, armed security guard.

63.    Walmart failed to respond to these numerous red flags and instead permitted and empowered Vives to work as an armed security guard.

<u>Riverdale's Failure to Comply with the Open Records Act</u>

64.     Vives wore a body camera while working for Walmart on December 20, 2021.

65.    As indicated in his incident report, Vives' body camera was on and operational during his interaction with McDuffie.

66.    After McDuffie's arrest, Vives or other Riverdale Police Department officers obtained video from Walmart showing the interaction between McDuffie and Vives in furtherance of Vives' prosecution of McDuffie.

67.    McDuffie, via counsel, repeatedly requested these videos.

68.    The City of Riverdale refused to provide the requested video.

69.     There was no open investigation, and no other exemption to the Open

Records Act would apply.

70.     Only after being provided with a demand letter, a draft of this lawsuit,

and an additional Open Records Act request did the City of Riverdale belatedly

provide some of the requested video.

**<u>COUNT I</u>**
***Illegal Seizure***
***under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments***
***Against Vives and Walmart***

71.     Plaintiff was subjected to a warrantless arrest, despite evidence that

demonstrated Plaintiff's innocence.

72.     By causing Plaintiff to be handcuffed and then ultimately transported

to jail, Defendant Vives arrested Plaintiff.

73.     At the time of the arrest, no reasonable police officer could have

believed that there was probable cause or arguable probable cause to believe

Plaintiff committed any criminal offense.

74.     Defendants' actions were the proximate cause of Plaintiff's arrest and

detention.

75.     Prior to his arrest, Plaintiff had not committed any offense that would

authorize his arrest.

76.    Defendants did not know any information that could support a reasonable belief that probable cause existed to arrest Plaintiff for any offense.

77.    Defendants knowingly and willfully acted in the complete absence of probable cause and with malice in causing Plaintiff to be arrested and prosecuted.

78.    Plaintiff suffered damages as a result, including financial losses, emotional losses, and the loss of liberty.

79.    Any objectively reasonable law enforcement officer would have known that causing a citizen to be arrested under the circumstances shown by the video evidence violated the Fourth and Fourteenth Amendments of the United States Constitution.

80.    Vives was acting within the course and scope of his employment with Walmart and was acting to effectuate Walmart's policies and procedures at the time of McDuffie's arrest.

81.    Vives and Walmart jointly participated in the common objective of jailing and prosecuting Plaintiff. After arresting and handcuffing McDuffie, Vives brought him back into Walmart and watched the security video together with two Walmart employees. These employees agreed with and encouraged Vives's unlawful arrest, despite watching video evidence that showed that McDuffie did not commit a crime or do anything wrong. At the time, McDuffie was still in the

room and could have avoided going to jail had the Walmart employees intervened to oppose his arrest instead of encouraging it.

82.     In the alternative, Walmart ratified Vives's conduct through the actions of the two employees described in the prior paragraph.

## COUNT II
### *False Imprisonment, False Arrest, and/or Malicious Prosecution under state law against Vives and Walmart*

83.     Defendant Vives detained and then arrested Plaintiff without any justification whatsoever.

84.     When he detained and then arrested Plaintiff, Vives knew for a fact that Plaintiff had not committed any offense, but he arrested him anyway.

85.     Defendant Vives was acting as a Walmart employee and/or an authorized representative of Walmart when he arrested Plaintiff.

86.     Defendant Vives was tasked with carrying out Walmart policies as an authorized Walmart representative at the time he arrested Plaintiff.

87.     At all times relevant to this complaint, Vives acted within the scope and authority of his employment for Walmart.

88.     At all times relevant to this complaint, Vives acted in furtherance of Walmart's interests by acting as a security guard.

89.    At all times relevant to this complaint, Walmart paid Vives for his services as a security guard.

90.    At all times relevant to this complaint, Vives served as an authorized representative to carry out all Walmart policies.

91.    Walmart controlled the time of Vives' performance of his duties, meaning that they controlled the hours he worked—he was not free to work whenever he wanted.

92.    Walmart set specific hours that Vives was to work for Walmart, while off-duty from the Riverdale Police Department.

93.     Walmart controlled the place of Vives' performance of his duties, meaning that he was provided a location in the front of the store where he was instructed to be based.

94.    Walmart required Vives to be posted at a specific location at the front of the store.

95.    Walmart did not allow Vives to work from home, from his car, or from any place of his choosing in the Walmart.

96.    Walmart controlled the manner of Vives performance of his duties, meaning that he was provided instructions and guidelines about how to perform his role as a security guard for Walmart.

97.   Additionally, Walmart controlled the manner of Vives' performance of his duties by providing Vives with Walmart policies that he was required to understand and carry out as an authorized Walmart representative.

98.   When Vives arrested Plaintiff, he acted within the scope of his employment as a Walmart security guard and in furtherance of Walmart's interests.

99.   Specifically, Vives states in his police report that, when he blocked the exit and then arrested McDuffie, he "was assisting loss prevention at Walmart with a reported improperly parked vehicle." Vives was therefore in the discharge of duties for the company when he committed the unjustified tort.

100.   Two other Walmart employees participated in, agreed with, and encouraged Vives's unlawful arrest and detention of McDuffie and ratified Vives' wrongful conduct.

101.   Walmart knew that Vives unlawfully arrested Plaintiff, but Walmart unreasonably failed to forward conclusive exculpatory evidence to Riverdale Police Department or Clayton County prosecutors.

102.   Walmart is liable for the torts of its employee Vives and its two employees who assisted Vives and encouraged and ratified his conduct.

103.   To the extent Vives was an independent contractor, Walmart is liable because Vives' work as an unlicensed private security guard was unlawful and

inherently dangerous, because Walmart controlled the time and manner of the work, because two of its employees jointly participated in the detention with Vives, and because Walmart ratified Vives' wrongs, including by failing to intervene in an unlawful arrest and prosecution.

### COUNT III
### *Negligence*
### *Against Vives and Walmart*

104.   Defendants had a duty to exercise reasonable care towards Plaintiff.

105.   Vives was negligent in that he unreasonably believed Plaintiff had committed the offense of battery and obstruction, when he had done nothing coming close to committing those offenses.

106.   Vives was negligent in that he stopped himself abruptly in the middle of a crowded door, leading to a confrontation with a customer.

107.   Vives was negligent *per se* in that he operated as an individual engaged in the private security business without the required license, testing, oversight, or training required by Georgia law. *See* O.C.G.A. § 43-38-1, *et seq.*

108.   The purpose of Chapter 38, which "shall be liberally construed," is to "safeguard[] the citizens of this state by regulation of the private detective and private security business," which is "in the public interest." O.C.G.A. § 43-38-2. McDuffie, as a citizen of this state, is within the class of persons that Chapter 38 is

intended to protect, and the harm McDuffie suffered is the type of injury that the statute is intended to protect against.

109.   Walmart is liable for the negligence of its employee Vives.

110.   Walmart is liable for the negligence of its two other employees who participated in and encouraged the detention despite viewing video evidence that showed that McDuffie had done nothing wrong.

111.   Walmart is also liable for its own acts of negligence.

112.   Walmart was negligent in that it failed to investigate or perform any due diligence as to whether Vives was a suitable person to perform security duties at Walmart.

113.   Based on Vives' lack of the required license, testing, training, and oversight required by O.C.G.A. § 43-38-1, *et seq.*, and based on Vives' documented history of involvement in incidents that escalated dangerously, and his general failure to stay consistently employed at any law enforcement agency, Vives was not a suitable person to perform security duties at Walmart.

114.   Walmart was negligent in failing to intervene and stop the unlawful arrest of one of its customers.

115.   Walmart was negligent in failing alert any authorities that Vives had committed an unlawful arrest at Walmart, leading to a longer detention and prosecution of McDuffie than he should have suffered.

116.   As a direct and proximate result of Defendants' negligence, Plaintiff was injured and suffered damages related to his arrest and prosecution.

117.   Vives is not entitled to official immunity because he was working for a private business at the time of the tortious conduct and because he acted with actual malice.

## COUNT IV
### Tortious Misconduct
### Against Vives and Walmart

118.   Plaintiff was a customer-invitee of Vives and Walmart.

119.   Plaintiff was subjected to abusive, opprobrious, insulting, or slanderous conduct by Defendants.

120.   Defendants falsely accused Plaintiff of having committed a crime by force when they knew he had done no such thing.

121.   Defendants breached their duty to protect Plaintiff from injury caused by the tortious misconduct of their agents.

## COUNT V
### *Intentional Infliction of Emotional Distress*
### *Against Vives and Walmart*

122.    Defendants engaged in reckless and intentional conduct in causing Plaintiff to be arrested for no reason whatsoever.

123.    Walmart took no action to intervene to stop Vives' unlawful arrest of Plaintiff. Instead, two other Walmart employees agreed with and encouraged it.

124.    Such conduct is extreme and outrageous.

125.    Such conduct caused Plaintiff severe emotional distress.

## COUNT VI
### *Battery*
### *Against Vives and Walmart*

126.    Defendants unlawfully touched Plaintiff's body in a harmful and offensive manner.

127.    Plaintiff was injured as a result of Defendants' actions.

## COUNT VII
### *Punitive Damages*
### *Against Vives and Walmart*

128.    Defendants acted with conscious indifference or reckless disregard for the consequences of their actions, such that an award of punitive damages is authorized under state and federal law.

## COUNT VIII
### *Open Records Act Violations*
### *Against City of Riverdale*

129.    The Georgia Open Records Act grants a right to the public to inspect and copy public records that are prepared, maintained, and received in the course of operation of a public office or agency. O.C.G.A. § 50-18-70(a)-(b).

130.    The City of Riverdale is a Georgia municipality and is therefore subject to the requirements of the Open Records Act under O.C.G.A. § 50-18-70(b).

131.    Plaintiff is an individual entitled to enforce the Georgia Open Records Act under O.C.G.A. § 50-18-73(a).

132.    Plaintiff requested public records as defined in O.C.G.A. § 50-18-70(a), including video from Vives' body camera and Walmart surveillance video that the Riverdale Police Department collected and maintained.

133.    Vives' own incident report admits that his "BWC" was "in use" during the incident.

134.    Riverdale initially refused to produce the requested video.

135.    Riverdale's decision to withhold responsive records violated the Georgia Open Records Act.

136.   Riverdale failed and refused to provide access to records not subject to exemption within the required time limits, frustrated access to records, and/or negligently failed to produce requested records as required.

137.   Riverdale's belated decision—after receiving a demand letter and copy of this lawsuit—to produce at least some of the video that Plaintiff requested does not relieve Riverdale of liability for its intentional or negligent violation of the Act.

138.   Plaintiff seeks statutory penalties, attorneys' fees, and an order that Riverdale produce any withheld records.

### COUNT IX
*Attorneys' Fees*
*Against all Defendants*

139.   Defendants have acted in bad faith, been stubbornly litigious, and caused Plaintiff unnecessary trouble and expense through the events giving rise to this action as well as in Defendants' course of conduct in this litigation.

140.   Plaintiff requests reasonable attorneys' fees and expenses associated with this litigation, and such fees and expenses are appropriate under O.C.G.A. § 13-6-11 and O.C.G.A. § 50-18-73.

141.   Plaintiff is also entitled to attorneys' fees under 42 U.S.C. § 1988.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff requests this Court:

a) Hold a trial by jury on all issues so triable;

b) Award nominal, compensatory, special, and punitive damages to

Plaintiff against Defendants in an amount to be proven at trial;

c) Award Plaintiff attorneys' fees under 42 U.S.C. § 1988 and state law;

d) Tax all costs of this action against Defendants;

e) Order that Riverdale produce all requested records; and

f) Award any additional or alternative legal or equitable relief that is just

and appropriate.

Respectfully submitted, this 5th day of May, 2023.

> _/s/Zack Greenamyre_
> Zack Greenamyre
> Georgia Bar No. 293002
> Samantha Funt
> Georgia Bar No. 943783

MITCHELL SHAPIRO GREENAMYRE & FUNT, LLP
3490 Piedmont Road, Suite 650
Atlanta, Georgia 30305
Phone: 404-812-4747
Fax: 404-812-4740
zack@mitchellshapiro.com
sam@mitchellshapiro.com

> _/s/ Max Marks_
> Max Marks
> Georgia Bar No. 477397

THE BLOCK FIRM, LLC
309 E. Paces Ferry Road, Suite 400
Atlanta, Georgia 30305
Phone: (404) 919-5320
max.marks@blockfirmllc.com