**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| RELATION INSURANCE, INC. | |
| Plaintiff, | Case No.: |
| v. | _____ |
| TODD BRYANT | |
| Defendant. | |

**RELATION INSURANCE, INC.'S VERIFIED
COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**

Plaintiff Relation Insurance, Inc. ("Relation" or "Plaintiff") states as follows for its complaint against its former employee, Defendant Todd Bryant ("Bryant"):

**NATURE OF THE CASE**

1.       Until March 2023, Bryant was a longtime and senior employee of Relation who was paid more than a million dollars annually, who recently received almost a million dollars in compensation as part of a corporate acquisition, and who entered into employment agreements and various amendments thereto periodically since January 1, 2008. All of Bryant's employment agreements, including the most recent version applicable to this case, contain non-competition, non-solicitation, and non-disclosure provisions that Bryant (through counsel) heavily negotiated with Relation.

2.      Despite these valid and enforceable post-employment restrictions that he freely negotiated and entered into with Relation, Bryant recently accepted new employment with Alliant Insurance Services ("Alliant"), a direct competitor to Relation, that plainly violates his non-competition restriction with Relation. Bryant then embarked on a brazen campaign to solicit Relation's customers to attempt to move their business away from Relation and to his new employer. He and/or others acting in concert with him have also targeted and approached multiple Relation employees with whom he formerly worked and improperly solicited them to join Bryant at Alliant.

3.      Pursuant to the terms of Bryant's effective Employment Agreement, Relation intends to initiate arbitration proceedings against him. However, at this stage, preliminary injunctive relief, and expedited discovery in support thereof, is necessary and warranted against both Bryant and all those acting in concert with him. Such injunctive relief and associated expedited discovery will operate to prevent Bryant, and all others acting in concert with him, from further effectuating what has already been revealed as a plan to violate Bryant's post-employment obligations and damage the customer goodwill that Relation has invested millions of dollars to cultivate and grow and disrupt Relation's workforce.

4.     In the absence of preliminary injunctive relief, Relation faces an immediate risk of irreparable harm to its customer relationships and goodwill and to the stability of its workforce. Moreover, the entry of injunctive relief will preserve the meaningfulness of arbitration by preventing Bryant from continuing to irreversibly change the status quo, and render the arbitration process a hollow formality.

## PARTIES, JURISDICTION AND VENUE

5.     Relation is an insurance brokerage and risk management firm. It is a corporation organized under the laws of Delaware, with its principal place of business in California.

6.     Bryant is an individual domiciled in Georgia.

7.     This Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

8.     As detailed below, this lawsuit also involves an employment agreement that contains an arbitration provision that is enforceable by this Court pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*.

9.     This Court has personal jurisdiction over Bryant because he lives in Georgia, worked for Relation in this judicial district, and negotiated the Employment Agreement that is at issue in this lawsuit in this judicial district.

10.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) and (b)(3) because a substantial part of the events giving rise to the claims in this lawsuit occurred in this judicial district and because Bryant is otherwise subject to personal jurisdiction in this judicial district.

## FACTUAL ALLEGATIONS

**I.    Relation's Business and Todd Bryant's History with the Company**

11.     Relation is a leading insurance brokerage company that offers business insurance, employee benefits solutions, personal insurance, retirement services, and risk-management services throughout the United States. Relation provides the full spectrum of these services to clients that do business in this judicial district and in the State of Georgia and operates two physical locations within Georgia.

12.     Bryant has been a successful insurance producer operating from the Atlanta area for many years. Prior to December 2007, Bryant was one of two owners of an insurance brokerage firm named Group & Executive Benefits, Inc., often doing business as "Bryant Wharton".

13.     In December 2007, the owners of Bryant Wharton, including Bryant himself, caused Bryant Wharton to enter into an Asset Purchase Agreement with Relation Insurance, Inc. f/k/a Ascension Insurance, Inc. (hereinafter "Relation")[1]. In that transaction, Bryant Wharton sold to Relation (among other things) all its client relationships, accounts and property, as well as all of the goodwill generated by or associated with its business point for significant sums of money. Bryant himself, as one of two owners, personally benefited from the asset sale to Relation.

14.     In conjunction with the Asset Purchase Agreement, Bryant (represented by counsel) entered into an Employment Agreement with Relation with an effective date of January 1, 2008.

15.     On December 14, 2012, Relation and Bryant amended and restated that original employment agreement with an Amended and Restated Employment Agreement (the "Agreement"). A copy of the Agreement is attached as Exhibit 1.

16.     The Agreement was negotiated between the parties and Bryant was represented by an attorney of his choice during those negotiations.

17.     The Agreement continued for a three-year initial term and then extended for successive one-year terms thereafter unless either party provided the

---

[1] On August 25, 2017, Ascension Insurance Inc. changed its name to Relation Insurance, Inc.

other with thirty days' written notice of an intend not to further extend the Agreement for another term.

18.     On November 19, 2013, Relation delivered a Notice of Non-Extension of the Agreement to Bryant. However, Relation later rescinded that notice, and Relation and Bryant negotiated and entered into a First Amendment to Amended and Restated Employment Agreement (the "First Amendment"). A copy of the First Amendment is attached as Exhibit 2. The effective date of the First Amendment was January 1, 2014.

19.     On November 30, 2016, Relation again delivered a Notice of Non-Extension of the Agreement to Bryant. However, Relation again rescinded that notice, and Relation and Bryant again negotiated and entered into a Second Amendment to Amended and Restated Employment Agreement (the "Second Amendment"). A copy of the Second Amendment is attached as Exhibit 3. The effective date of the Second Amendment was January 1, 2017.

20.     On January 27, 2017, Bryant delivered a Notice of Non-Extension to Relation. However, Bryant later rescinded that notice, and Bryant and Relation negotiated and entered into a Third Amendment to Amended and Restated Employment Agreement (the "Third Amendment"). A copy of the Third

Amendment is attached as Exhibit 4. The effective date of the Third Amendment was July 21, 2017.

## II.   Relevant Restrictions in Bryant's Agreement, As Amended

21.    In the Agreement, as amended from time to time, Bryant agreed to the following valid and enforceable non-disclosure restriction:

> 6.2 *Confidential Information.* Executive [Bryant] agrees that Executive shall not (other than as required by Executive's job duties with [Relation]) reveal to anyone any Confidential Information, and Executive further agrees that Executive will not use in any way any Confidential Information of [Relation], other than in connection with Executive's work for [Relation]. The obligations of confidentiality and restrictions on use set forth in the immediately preceding sentence shall remain in effect for the duration of Executive's employment with [Relation] and for a period of twenty-four (24) months thereafter, provided that, as to any item of Confidential Information that continues to be a Trade Secret under applicable law, such obligations of confidentiality and restrictions on use shall remain in effect as to such item for the maximum time allowed by applicable law. Executive agrees to deliver to [Relation] at the termination of Executive's employment, or at any other time [Relation] may request, all Confidential Information (including all copies thereof and any electronic versions of such materials) that Executive may then possess or have under Executive's control (including all such Confidential Information in electronic form).

22.    In the Agreement, as amended from time to time, Bryant agreed to the additional non-disclosure restriction, which is valid and enforceable:

> 6.4 *Third Party Information.* Executive [Bryant] understands that [Relation] will receive from third parties confidential or proprietary information ("Third Party Information") that may be subject to a duty on the part of [Relation] to maintain the confidentiality of such

information and to use it only for certain limited purposes. Without in any way limiting the provisions of Section 6.2, above, Executive will hold the Third Party Information in the strictest confidence and will not disclose to anyone (other than personnel of the Employer who need to know such information in connection with their work for the Employer) or use, except in connection with Executive's work for the Employer, Third Party Information unless expressly authorized by [Relation] in writing or unless and to the extent, in each case with prior written consent of such third party, the Third Party Information (a) becomes generally known to and available for use by the public other than as a result of Executive's acts or omissions to act, (b) was known to Executive prior to Executive's employment with [Relation], or (c) is required to be disclosed pursuant to any applicable law or court order. The obligations of confidentiality and restrictions on use set forth in the immediately preceding sentence shall remain in effect for the duration of Executive's employment with the Employer and for a period of twenty-four (24) months thereafter, provided that, as to any item of Third Party Information that continues to be a Trade Secret under applicable law, such obligations of confidentiality and restrictions on use shall remain in effect as to such item for the maximum time allowed by applicable law.

23.     In the Agreement, as amended from time to time, Bryant agreed to a valid and enforceable non-competition and non-solicitation restrictions, which are effective for "a period of twenty-four (24) months after the termination of Executive's [Bryant] employment with the Employer [Relation] for any reason (the "Restriction Period"), and which state:

6.6(A) [Executive will not] (i) in the Territory engage, either directly or indirectly . . . in any business that Competes with the Business Unit (as defined in Section 3.1) or other operations of [Relation]. For purposes of this Section 6.6(A), the term "Territory" shall mean the 100-mile radius from 5825 Medlock Bridge Parkway, Johns Creek, Georgia, and the term "Compete with" means conducts, sells,

authorizes, offers or provides activities, products or services of the type conducted, sold, authorized, offered, or provided by [Relation] within twenty-four (24) months prior to termination of Executive's employment with Employer.

***

6.6(B) [Executive will not] either directly or indirectly by assisting others, solicit or attempt to solicit any business from any Clients or Prospective Clients with whom Executive had Material Contact for the purpose of providing Insurance Products or Insurance Services that are competitive with or are the same, similar to, or of the type conducted, authorized, offered, or provided by [Relation] within two (2) years prior to the termination of Executive's employment.

***

6.6(C) [Executive will not] either directly or indirectly by assisting others, induct Clients or induce Prospective Clients with whom Executive had Material Contact to terminate, cancel, not renew or not place business with [Relation].

***

6.6(D) [Executive will not] perform or supervise the performance of Insurance Services of the type sold or provided by [Relation] within two (2) years prior to the termination of Executive's employment on behalf of any Clients or on behalf of Prospective Clients with whom Executive had Material Contact.

***

6(E) [Executive will not] either on Executive's own account or on behalf of any person, organization or entity, recruit or solicit for employment, attempt to recruit or solicit for employment, or induct or endeavor to cause to leave employment of [Relation] any employee of [Relation]  (y) with whom Executive came into contact during Executive's last twelve (12) months of employment with [Relation],

or about whom Executive obtained Confidential Information during
Executive's employment with [Relation], and (z) who is known by
Executive at the time of such recruitment, solicitation, inducement,
endeavor, or attempt to then be employed by [Relation].

24.     In the Agreement, as amended from time to time, Bryant agreed to a

valid and enforceable non-disparagement provision that states:

> 6.7 *Non-Disparagement*. Executive [Bryant] agrees that, during the
> Employment Period and for a reasonable period of time thereafter (not
> to be shorter than the Restriction Period), Executive shall not
> disparage or encourage others to disparage [Relation] or any of
> [Relation's] respective past and present employees, officers, directors,
> members, managers, investors, products, or services. For purposes of
> this Agreement, the term "disparage" includes, without limitation,
> comments or statements to the press, to [Relation] employees or to
> any individual or entity with whom [Relation] has or is actively
> pursuing a business relationship (including, without limitation, any
> actual or potential vendor, supplier, customer or distributor) that
> would adversely affect in any manner: (a) the conduct of any business
> of [Relation] (including, without limitation, any business plans or
> prospects) or (b) the business reputation of [Relation].

25.     Bryant agreed that the above-referenced contractual restrictions, and

others not expressly listed in this Complaint, were "reasonable and necessary" for

the protection of Relation's business interests.

26.     Bryant agreed that irreparable injury would result to Relation if he

breached such restrictions.

27.     And, Bryant agreed that in the event of his actual or threatened breach

of such restrictions, Relation would have no adequate remedy at law.

28.     Consequently, in the event of an actual or threatened breach of any of the provisions in Section 6 of the Agreement, Bryant agreed that Relation "shall be entitled to immediate injunctive and other equitable relief, without the necessity of posting a bond or other security, in order to enforce, or prevent any violations, of the provisions [of Section 6 of the Agreement]."

29.     Moreover, Bryant agreed and acknowledged that the restrictions contained in Section 6 of the Agreement would not preclude him from earning a livelihood, and Bryant also agreed that the restrictions in Section 6 of the Agreement do not unreasonably impose limitations on his ability to earn a living. Rather, Bryant agreed and acknowledged that the potential harm to the Relation on the non-enforcement of Section 6 of the Agreement "outweighs any potential harm to [Bryant] of its enforcement by injunction or otherwise."

### III.     Relation's Notice of Non-Renewal to Bryant and Bryant's Resignation

30.     At 6:15 p.m. ET on March 13, 2023, Relation issued a Notice of Non-Renewal to Bryant and informed him that it did not wish to extend his employment under the Agreement, and that as a result, Bryant's employment would terminate effective April 15, 2023. A copy of Relation's Notice of Non-Renewal is attached as Exhibit 5.

31.     Relation was free to decide not to extend Bryant's employment for any reason, or no reason at all.

32.     In its Notice of Non-Renewal, Relation confirmed to Bryant that his compensation and employee benefits would remain unchanged through April 15, 2023.

33.     Before 7:30 p.m. ET, Bryant confirmed receipt of the Notice of Non-Renewal within an hour of its transmission by contacting Relation's CEO and Chief Revenue Officer.

34.     At 9:10 p.m. ET, Bryant sent an email to Relation's CEO and Chief Revenue Officer titled a "Plan for a better outcome for Relation and me." A copy of Bryant's March 13, 2023 email is attached as Exhibit 6.

35.     In that email, Bryant asserted, among other things, that "Relation [had] zero chance of keeping most of my key accounts," and that a decision by Relation to sell certain accounts to Bryant would create a "win-win" scenario for him and Relation because it would provide Relation with more than "$0 for a bunch of accounts."

36.     Between 8:12 and 8:15 p.m. ET, after Bryant received the Notice of Non-Renewal, a Relation employee that had worked closely with Bryant attempted

to access Relation's computer systems, and in particular, sought access to customer information.

37.    The employee in question did not customarily work after regular business hours, and the attempted computer access after 8:00 p.m. ET was anomalous.

38.    This same employee again attempted to access Relation's customer information stored on its computer systems between 11:35 and 11:36 p.m. ET later that night.

39.    The employee in question did not customarily work after regular business hours, making the attempted computer access after 11:30 p.m. ET even more anomalous than the computer activity from earlier that same evening.

40.    The following day, Bryant continued his communications with Relation, this time expressly listing seventeen Relation customers and stating that "some of these will be gone in a week." Bryant's March 14, 2023 email is attached as Exhibit 7.

41.    As alleged below, the customers that have transitioned their business away from Relation since the Non-Renewal of Bryant's employment are all customers that Bryant stated would "be gone in a week."

42.     Bryant's threats to against Relation's customers did not even stop there, as Bryant stated that he had other clients that "may be as solid" (meaning, as likely as those expressly listed to quickly leave Relation) but that he wanted to only "provide the list the ones [sic] where [he was] certain."

43.     On March 14, 2023, in addition to receiving the above-referenced communications (and others) from Bryant, Relation also received calls from others inquiring about Bryant's employment with Relation. Relation believes and has reason to suspect that Bryant falsely told third parties that he had been terminated by Relation, and indeed, these third parties would have had no reason to know that Relation had sent its Notice of Non-Renewal to Bryant just hours prior unless Bryant had engaged in such communications.

44.     On March 15, 2023, a Relation employee with whom Bryant had worked closely resigned from Relation. Upon her resignation, the employee informed Relation that Bryant had been communicating with her frequently since the delivery of his Notice of Non-Renewal, and that she intended to follow him to his next place of employment. That employee has now accepted employment at Alliant to work with Bryant.

45.     Bryant, through counsel, wrote to Relation at 3:49 p.m. ET on Sunday, March 19, 2023, and resigned, effective at 11:59 p.m. that same day.

**IV.    Bryant Joins Alliant and Violates the Restrictive Covenants in the Agreement**

46.     On or around March 29, 2023, Bryant announced on social media that he had joined Alliant.

47.     Although Bryant's online announcement identified his work location as Richmond, Virginia, Bryant was physically located near Atlanta at the time of that announcement.

48.     On March 30, 2023, Relation sent correspondence to Alliant placing it on notice of Bryant's Employment Agreement and post-employment obligations to Relation. A copy of Relation's correspondence is attached as Exhibit 8.

49.     Despite receiving that notice, Alliant has either failed or refused to require Bryant to adhere to his post-employment obligations to Relation. Bryant, for his part, has continued to breach such obligations.

50.     On April 6, 2023, Relation received notice that one of its customers that had been serviced by Bryant, Fayette County, had appointed Alliant as its broker-of-record. On information and belief, Fayette County did not arrive at its decision to transfer its business away from Relation and to Alliant independent of actions undertaken by Bryant and/or those acting in concert with Bryant, and

instead, the decision was proximately caused by direct or indirect actions taken by Bryant and/or those acting in concert with him, in violation of the Agreement.

51.     Since Bryant's resignation, Relation received notice that one of its customers that had been serviced by Bryant, Greater Atlanta Christian Schools, Inc. ("Greater Atlanta Christian"), had appointed Alliant as its broker-of-record. On information and belief, Greater Atlanta Christian did not arrive at its decision to transfer its business away from Relation and to Alliant independent of actions undertaken by Bryant and/or those acting in concert with Bryant, and instead, the decision was proximately caused by direct or indirect actions taken by Bryant and/or those acting in concert with him, in violation of the Agreement.

52.     Since Bryant's resignation, Relation received notice that one of its customers that had been serviced by Bryant, Metro Waterproofing, had appointed Alliant as its broker-of-record. On information and belief, Metro Waterproofing did not arrive at its decision to transfer its business away from Relation and to Alliant independent of actions undertaken by Bryant and/or those acting in concert with Bryant, and instead, the decision was proximately caused by direct or indirect actions taken by Bryant and/or those acting in concert with him, in violation of the Agreement.

53.     Metro Waterproofing is a customer account that Bryant's former company expressly sold to Relation as part of the 2007 Asset Purchase Agreement.

54.     Since Bryant's resignation, Relation received notice that one of its customers that had been serviced by Bryant, Coweta County, had appointed Alliant as its broker-of-record. On information and belief, Coweta County did not arrive at its decision to transfer its business away from Relation and to Alliant independent of actions undertaken by Bryant and/or those acting in concert with Bryant, and instead, the decision was proximately caused by direct or indirect actions taken by Bryant and/or those acting in concert with him, in violation of the Agreement.

55.     On April 24, 2023, Relation received notice that one of its customers that had been serviced by Bryant, Weissman, P.C., would be discontinuing its relationship with Relation and moving its business to another agent.  On information and belief, Weissman, P.C., is moving with Bryant to Alliant.  Further, on information and belief, Weissman, P.C., did not arrive at its decision to transfer its business away from Relation independent of actions undertaken by Bryant and/or those acting in concert with Bryant, and instead, the decision was proximately caused by direct or indirect actions taken by Bryant and/or those acting in concert with him, in violation of the Agreement.

56.     Upon information and belief, Weissman, P.C. is an entity formerly known as Weissman Nowack, a customer account that Bryant's former company expressly sold to Relation as part of the 2007 Asset Purchase Agreement.

57.     Since Bryant's resignation, Relation received notice that one of its customers that had been serviced by Bryant, the City of Alpharetta, had appointed Alliant as its broker-of-record.  On information and belief, the City of Alpharetta did not arrive at its decision to transfer its business away from Relation and to Alliant independent of actions undertaken by Bryant and/or those acting in concert with Bryant, and instead, the decision was proximately caused by direct or indirect actions taken by Bryant and/or those acting in concert with him, in violation of the Agreement.

58.     The City of Alpharetta is a customer account that Bryant's former company expressly sold to Relation as part of the 2007 Asset Purchase Agreement.

59.     Since Bryant's resignation, Relation received notice that one of its customers that had been serviced by Bryant, Lark Builders, had appointed Alliant as its broker-of-record.  On information and belief, Lark Builders did not arrive at its decision to transfer its business away from Relation and to Alliant independent of actions undertaken by Bryant and/or those acting in concert with Bryant, and

instead, the decision was proximately caused by direct or indirect actions taken by Bryant and/or those acting in concert with him, in violation of the Agreement.

60.     In addition, Bryant and/or others acting in concert with him, have begun soliciting Relation's employees to join him at Alliant in violation of the employee non-solicitation provision in the Agreement.

61.     On or around April 17, 2023, Trang Nguyen, a former Relation employee who worked directly with Bryant, resigned her employment with Relation to join Alliant.

62.     On or around the same day, another employee notified Relation that Bryant and/or others acting in concert with Bryant had contacted her and solicited her to resign from Relation and accept employment at Alliant. Unlike Ms. Nguyen, this second employee declined Bryant's offer and decided to remain employed by Relation.

## CAUSES OF ACTION
## COUNT ONE – BREACH OF CONTRACT

63.     Relation restates and incorporates the allegations contained in paragraphs 1 through 62 of the Complaint as though fully set forth herein.

64.     Bryant and Relation are parties to the Agreement.

65.     All provisions in the Agreement, including those modified by the First Amendment, Second Amendment, and Third Amendment, constitute enforceable promises, and, so, the Agreement is enforceable in its entirety.

66.     Relation has satisfied all conditions precedent necessary to demand performance by Bryant.

67.     The Agreement is supported by adequate consideration.

68.     The Agreement's restrictive covenants are reasonable and enforceable as to time and scope, and are necessary to protect Relation's legitimate business interests, including but not limited to its goodwill, confidential, proprietary, and/or trade secret information, relationships with its current and/or prospective customers, relationships with its employees and the stability of its workforce.

69.     Bryant breached the Agreement's non-competition provision by accepting employment with Alliant, a direct competitor of Relation, in Georgia.

70.     Bryant's breach of the Agreement's non-competition provision is ongoing and continuous.

71.     Bryant breached the Agreement's customer non-solicitation provision by soliciting and accepting and servicing the insurance business of at least the Relation customers alleged above, and on information and belief, multiple other Relation customers.

72.     On information and belief, Bryant has continued and will continue to breach the Agreement's customer non-solicitation provision as evidenced by, among other things, his statements to Relation in the aftermath of receiving the Notice of Non-Renewal and the defection, within weeks, of at least those longstanding Relation customers referenced above.

73.     Bryant breached the Agreement's employee non-solicitation provision by soliciting, or acting in concert with parties who have solicited, at least two Relation employees to resign their employment with Relation and accept employment with Alliant, as alleged above, and on information and belief, other Relation employees with whom Bryant worked directly throughout his employment with Relation.

74.     On information and belief, Bryant, acting directly or through others, has plans to continue to breach the Agreement's employee non-solicitation provision. Indeed, the employees targeted to date by Bryant, or those acting in concert with Bryant, were not selected "at random," and instead, were targeted as persons with whom Bryant had worked during his employment with Relation. The targeted approach to these Relation employees by Bryant, or those acting in concert with him, suggest that other employees who formerly worked with Bryant at Relation will be targeted in the future.

75.     As a direct and proximate result of Bryant's breaches, among others known and to be discovered, Relation has suffered and continues to suffer damages, including but not limited to, lost business, lost profits, costs of hiring and retaining former and new employees, costs of retaining customers, and damage to goodwill.

76.     Bryant's unlawful conduct entitles Relations to equitable remedies, including preliminary injunctive relief, as agreed to by Bryant in the Agreement.

## COUNT TWO – BREACH OF FIDUCIARY DUTY

77.     Relation restates and incorporates the allegations contained in paragraphs 1 though 62 of the Complaint as though fully set forth herein.

78.     During his employment with Relation, Bryant was an agent of Relation, and was vested with authority, real or ostensible, to create obligations on behalf of Relation bringing third parties, i.e., customers, into contractual relations with Relation.

79.     On information and belief, while still employed by Relation, Bryant breached his fiduciary duty to Relation by encouraging and/or inducing customers of Relation to terminate and/or cancel their business relationship with Relation and transition their insurance accounts to companies other than Relation.

80.     As a direct and proximate result of Bryant's breach of his fiduciary duty, Relation has suffered and will continue to suffer monetary damages.

81.     Bryant's unlawful conduct entitles Relations to legal and equitable remedies, including monetary damages in an amount in excess of $75,000.00, to be determined after discovery or at trial.

### COUNT THREE – BREACH OF DUTY OF LOYALTY

82.     Relation restates and incorporates the allegations contained in paragraphs 1 through 62 of the Complaint as though fully set forth herein.

83.     During his employment with Relation, Bryant owed Relation a duty of loyalty, faithful service and regard for Relation's interests.

84.     Relation placed special trust and confidence in Bryant, investing a substantial amount of time and resources in him in the form of training, access to Confidential Information, as defined in the Agreement and otherwise, and access to established customers.

85.     Bryant accepted such trust and confidence.

86.     On information and belief, Bryant breached his duty of loyalty to Relation by actively encouraging and/or inducing customers of Relation to terminate and/or cancel their business relationship with Relation and transition their insurance accounts to companies other than Relation.

87.     As a direct and proximate result of Bryant's breach, Relation has

suffered and will continued to suffer monetary damages.

88.     Bryant's unlawful conduct entitles Relations to legal and equitable

remedies, including monetary damages in an amount in excess of $75,000.00, to be

determined after discovery or at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Relation demands judgment against Bryant as follows:

A.     A preliminary injunction, enjoining and restraining Bryant, and all

those acting in concert with him from (a), violating or participating in the violation

of, any of the terms of Bryant's Agreement with Relation; (b) soliciting or

attempting to solicit and Relation customer or prospective customer with whom

Bryant had Material Contact for the purpose of providing Insurance Products or

Insurance Services that are competitive with or are the same, similar to, or of the

type conducted, authorized, offered or provided by Relation; (c) inducing Relation

customers or prospective customers with whom Bryant had Material Contact to

terminate, cancel, not renew or not place business with Relation; (d)  performing or

supervising the performance of Insurance Services of the type sold or provided by

Relation on behalf of Relation customers or prospective customers with whom

Bryant had Material Contact; and/or (e) from soliciting or employing any employee of Relation;

B.     An order requiring Bryant to preserve all documents, electronically stored information, and other information relevant to the factual allegations and claims contained within this Complaint, including any communications, text messages, or emails on personal email devices, by and between Bryant and Alliant and/or Bryant and any Relation customer or vendor (including insurance carriers) and/or Bryant and any representative of a current or former Relation customer or vendor (including insurance carriers);

C.     An order granting preliminary injunctive relief as separately may be requested at a preliminary injunction hearing;

D.     An order compelling expedited discovery pursuant to F.R.C.P. 26(d)(1).

E.     And order, awarding any and all other and available relief as the Court deems proper and just.

Dated: May 8, 2023                              Respectfully submitted,

                                                **RELATION INSURANCE
                                                SERVICES, INC.**

                                                By: */s/ Rachel P. Kaercher*
                                                        One of its attorneys

Rachel P. Kaercher
LITTLER MENDELSON, P.C.
3424 Peachtree Road, NE, Suite 1200
Atlanta, Georgia 30326
Phone:        (404) 233-0330
Email:         rkaercher@littler.com

-and-

James M. Witz (motion for pro hac
vice admission forthcoming)
Richard T. Kienzler (motion for pro
hac vice admission forthcoming)
LITTLER MENDELSON, P.C.
321 North Clark Street, Suite 1100
Chicago, Illinois 60654
Phone:        (312) 795-3254
Email:         jwitz@littler.com
               rkienzler@littler.com