# EXHIBIT D



# FRANCHISE AGREEMENT

# EXHIBIT B

# TABLE OF CONTENTS

**Section**                                                                           **Page**

1.  GRANT OF FRANCHISE ................................................................................. 1
2.  TERM, RENEWAL AND BUYBACK.................................................................. 1
3.  TERRITORY ................................................................................................... 2
4.  FEES AND PAYMENTS ................................................................................... 3
5.  OBLIGATIONS OF FRANCHISOR ................................................................. 6
6.  OBLIGATIONS OF FRANCHISEE ................................................................. 7
7.  REPORTS AND REVIEW ............................................................................... 12
8.  TERMINATION .............................................................................................. 12
9.  POST-TERMINATION OBLIGATIONS .......................................................... 14
10. ADDITIONAL IN-TERM AND POST-TERM COVENANTS ............................ 15
11. OPTION TO PURCHASE ASSETS ................................................................. 17
12. CONFIDENTIAL INFORMATION ................................................................. 17
13. INDEPENDENT CONTRACT AND INDEMNIFICATION.............................. 18
14. DEATH OR INCAPACITY ............................................................................. 18
15. ASSIGNABILITY AND FIRST RIGHT OF REFUSAL .................................... 19
16. NON-WAIVER OF BREACH .......................................................................... 21
17. GOVERNING LAW ........................................................................................ 21
18. MODIFICATION ............................................................................................ 22
19. RELEASE OF PRIOR CLAIMS ...................................................................... 22
20. NOTICES ....................................................................................................... 22
21. FULL UNDERSTANDING ............................................................................. 22
22. ACKNOWLEDGMENTS ................................................................................. 23
23. SEVERABILITY ............................................................................................. 23
24. COUNTERPARTS AND ELECTRONIC SIGNATURE .................................... 23
25. HEADINGS .................................................................................................... 23
26. GUARANTY ................................................................................................... 23

Signature Page ................................................................................................. 25
Schedule A – Territory ..................................................................................... A-1
Schedules B-1 to B-5 – Special Stipulations ................................................. B-1-B-5

## 1. GRANT OF FRANCHISE

Liberty Tax Service ("Liberty," "Liberty Tax") has developed a system for the operation of tax return preparation offices. The Liberty system utilizes special marketing techniques and operating procedures to facilitate the provision of tax return preparation and related services.

You, meaning the franchisee and all signators identified on the signature page to this franchise agreement ("Agreement" or "Franchise Agreement"), in your personal capacity, have applied for a franchise that utilizes Liberty's system and Liberty's trade names, service marks, and trademarks (collectively, the "Marks") ("Franchised Business" or "Franchise"). Subject to the terms of this Agreement, Liberty grants to you a Liberty Tax Service franchise. This Agreement will allow you to operate a tax return preparation business using Liberty's system and Liberty's Marks within the territory described on Schedule A ("Territory"). This agreement shall only grant you a Liberty franchise and grants no rights to you associated with any other brand or concept owned and/or operated by SiempreTax LLC ("SiempreTax"), Liberty Tax, Inc., Liberty's affiliates, or other entities controlling, controlled by or under common control with Liberty ("Affiliated Companies"). You agree to abide by the terms of this Agreement.

You recognize and agree that the nature of the tax return preparation business is such that complete uniformity is not always practical or desirable and that Liberty, in Liberty's sole discretion, may vary the terms of this Agreement and the standards of operation of the Franchised Business to accommodate the peculiarities of a particular situation and/or territory. You have no recourse against Liberty if other franchisees are granted allowances that you are not granted.

## 2. TERM, RENEWAL AND BUYBACK

    **a. Term.** This Agreement will be effective for a five year term beginning on the effective date specified on the signature page of this Agreement ("Effective Date").

    **b. Renewal.** You may renew for another five year term by signing Liberty's then current franchise agreement if you have met the Target Volume specified in Section 6(f) of this Agreement, you are otherwise in compliance with this Agreement, and no event has occurred that would give Liberty the right to terminate this Agreement. You may continue to renew future franchise agreements in this manner if you, and every other entity in which you hold an ownership interest, are in compliance with all agreements between you and Liberty or you and the Affiliated Companies. To renew, you must execute a general release of all claims that you might have against Liberty and the Affiliated Companies, and must also execute Liberty's then current Franchise Agreement which may contain materially different terms. Liberty may not raise royalties or advertising fees that you pay to Liberty upon any future renewal, or impose a renewal fee. Further, upon renewal, Liberty may not change the boundaries of your Territory, the level and type of territorial exclusivity or the territorial rights you have. Other terms and conditions may vary. If you wish to renew, you must notify Liberty in writing at least one hundred and eighty (180) days before the expiration of this Agreement.

    **c. Buyback.** Between May 1 and August 31 of any year, Liberty has the right to purchase your Franchised Business for the greater of $150,000 or 200% of the Gross Receipts of the Territory for the previous twelve months, or such shorter time as an office in the Territory may have been in operation.

You understand that this is a premium price above fair value and does not vest any rights in you. The term "Gross Receipts" as used in this Agreement means all revenue from all services and products offered by the Franchised Business (including, but not limited to, revenue from individual, corporate, estate and partnership tax returns), excluding only customer discounts, any transmitter, software or electronic filing fee, and sales tax, but not service fees for credit card transactions.

## 3. TERRITORY

a. **Territory Generally.** Your Territory is described in Schedule A of this Agreement ("Territory").

b. **General Rights & Restrictions.** You may operate as many tax return preparation offices in the Territory as you determine to be appropriate. You may not operate outside your Territory. Liberty may grant franchises for areas outside your Territory or operate company offices in such areas. Except as described below, Liberty may not establish franchised or company owned outlets offering income tax preparation services using the Marks at a physical location in your Territory. Additionally, Liberty may not offer income tax preparation services through other channels of distribution at a physical location in your Territory except as described herein. Liberty and the Affiliated Companies may establish franchised or company owned outlets in your Territory that operate income tax preparation services under different trademarks and may operate or franchise a different line of business. Liberty may distribute Liberty tax return preparation products and services by means other than retail or storefront locations in your Territory, including the sale of gift cards for this service. No other franchisee using the Marks may operate a tax return preparation office in your Territory. Liberty may advertise in your Territory. You may not advertise in areas outside your Territory or in media that extends outside your Territory, without Liberty's express written approval. You agree that in the event of a mapping error, as determined by us, which results in a territory population which exceeds 35,000, Liberty may re-size your Territory.

c. **Misplaced Offices.** If you locate an office outside your Territory, even if Liberty approved such site location, you agree upon discovery of this fact to promptly abandon the office and refrain from any further targeted solicitation (e.g. direct mail, telephone calls, etc.) of customers residing in the territory containing the misplaced office. If Liberty learns that Liberty or another franchisee has erroneously located an office in your Territory, you agree to accept the abandonment of the office and, in the case of a misplaced office operated by another franchisee, the discontinuation of further targeted solicitation of customers located in your Territory, in full satisfaction of any claim against Liberty, Liberty's past and present employees, and Liberty's past and present franchisees, in relation to the misplaced office. Liberty has a reasonable time to correct any such error after Liberty learns of it.

d. **National and Regional Retail Business Outlets.** Liberty may negotiate agreements with national or regional retail businesses. If there is an outlet of such a national or regional business in your Territory that is subject to such an agreement, you may choose to operate a tax return preparation service office in that outlet by communicating that decision to Liberty by December 1 before a given Tax Season, or such earlier date provided by Liberty in order to meet the requirements of that business. If you choose not to operate in an outlet that exists in your Territory, Liberty may operate in that outlet in your Territory and all associated revenue and expenses shall belong to Liberty. Additionally, Liberty

will retain the right to service the customers associated with that outlet in the future. The term "Tax Season" means the time period of January 2 – April 30.

## 4. FEES AND PAYMENTS

**a. Initial and Resale Franchise Fee.** The initial franchise fee and resale franchise fees are $40,000. The resale franchise fee applies to a territory that has been previously sold. If a territory includes existing operations, the total cost will vary depending upon the Gross Receipts of the Territory and other pertinent market and economic factors.

**b. Down Payment and Approval.** You must submit a minimum of 20% of the initial or resale franchise fee as a deposit after you have held the Liberty Franchise Disclosure Document for at least fourteen (14) calendar days and prior to attending Effective Operations Training ("EOT"). Liberty will refund this deposit to you upon your request at any time before you attend EOT. If you receive financing, you will be required to submit a deposit of up to $25,000 for your operational expenses ("Operational Supply Deposit"), and may be required to attend and pass Liberty's Guerilla Marketing Interactive training ("GMi Training") or other required training, prior to closing. We will refund to you the initial or resale franchise fee (including deposits) if we do not approve your application or if you do not pass EOT in accordance with Liberty's passing standards, provided that you return to us all materials that we distributed to you during training. After closing, Liberty will hold and make available for return to you any Operational Supply Deposit that you were required to submit, upon your written request to Liberty with substantiation as to the expenses to be paid by you with the Operational Supply Deposit. We do not pay interest on the Operational Supply Deposit. The initial and resale franchise fee is fully earned and nonrefundable when both parties execute this Agreement.

**c. Reverse Royalty.** If Liberty receives tax preparation fees from individuals located in your Territory through the use of Liberty's online tax preparation services while you have a Liberty Tax Service office open in that Territory, Liberty agrees to use commercially reasonable means to track and identify those revenues and pay or credit to you 14% of those tax preparation fees within sixty (60) days after the end of each Tax Season in its sole discretion.

**d. Royalties.** You must pay a royalty to Liberty in the amount of 14% of Gross Receipts subject to the following minimums ("Minimum Royalties"):

i) **Year One.** For the period ending April 30 following the Effective Date of this Agreement, if you operated or were required to have operated an office in the Territory for any part of Tax Season ending in that April, the minimum royalty is $5,000 per Territory.

ii) **Year Two.** For the period beginning May 1 following the Effective Date of this Agreement through the following April 30, the minimum royalty is $8,000 per Territory.

iii) **Year Three and Beyond.** Thereafter, the minimum royalty is $11,000 per Territory for each successive period beginning May 1 through the following April 30.

iv) **Developed Territory.** For a territory that contains or that had in the most recent Tax Season prior to the Effective Date of this Agreement, an existing company, franchisee or

other Liberty tax preparation office ("Developed Territory"), you must pay royalties as set forth above depending upon how long any office has been operated in the Territory. For example, if it is your first year operating in a territory but an office has been operated in the Territory by Liberty or another franchisee through one Tax Season, then the Territory would be subject to Year Two royalties for the year that you first operate in the Territory. An office includes, but is not limited to, locations such as kiosks or temporary locations where tax return preparation services are provided.

    v) **SiempreTax Conversion/Opt In.** The definition of Developed Territory also includes a territory that contains or that had in the most recent Tax Season prior to the Effective Date of this Agreement, an existing SiempreTax tax preparation office. For such a Territory, you must pay royalties as set forth above depending upon how long any office has been operated in the Territory.

    **e. Area Developers.** If you are in or become part of an area covered by an Area Developer, Liberty may pay to the Area Developer a portion of the initial franchisee fee and royalties that you pay to Liberty.

    **f. Advertising Fee.** You must pay an advertising fee of 5% of the Gross Receipts each month.

    **g. Payment Period.** You must pay the royalty owed by the 5th of each month based on Gross Receipts for the preceding month, and any balance owed to achieve Minimum Royalty on May 5 for each fiscal year ending April 30. You must pay advertising fees by the 5th of each month based on Gross Receipts for the preceding month. Liberty reserves the right to modify this payment schedule in Liberty's Operations Manual.

    **h. Interest.** You must pay interest of 12% (compounded daily) per year, or the maximum permitted by law if less, on any amounts owed to Liberty that are more than fifteen (15) days past due.

    **i. Transfer Fee.** If you transfer your Franchised Business, or an interest in the Franchised Business that results in a change in control of the Franchised Business, you must pay Liberty a transfer fee of $5,000 at the time of transfer. This fee is subject to increase or decrease in future franchise agreements by the amount of change in the *Consumer Price Index – All Urban Consumers*, published by the U.S. Department of Labor, or a reasonably similar successor index, from the index as of the Effective Date.

    **j. Customer Refunds, Penalty and Interest, Send a Friend.** If you do not resolve a customer service complaint or pay penalty and interest on an erroneous return prepared in your office, or misdeliver a customer check, or fail to pay a Send a Friend or E-Send a Friend referral, and the customer contacts Liberty, and Liberty believes there is a reasonable basis for the claim, Liberty may issue a refund of fees paid by the customer, pay to the customer the penalty and interest or amount of misdelivered check, or pay the Send a Friend referral, and bill you. You agree to pay the charges. Your obligation to pay penalty and interest for tax return preparation errors made during the operation of the Franchised Business continues after the expiration, termination or transfer of this Agreement and/or sale of the Franchised Business.

**k. Automatic Payment Transfer.** All of the tax preparation, transmitter, software, and electronic filing fees, and any rebates that you receive from Financial Products or customers who purchase Financial Products, and all other revenue due to Franchisee under this Agreement and all other agreements with Liberty and the Affiliated Companies, shall initially be paid to Liberty. The term "Financial Products" as used in this Agreement means refund-based loan programs and/or a means for customers to obtain a refund using electronic deposit services that Liberty, or a company associated with Liberty, may offer to you. Liberty will remit any remaining balance to you from the above described fees and rebates after deducting monies you owe to Liberty, and/or SiempreTax if applicable, and deducting monies to hold for application to upcoming amounts due to Liberty and/or SiempreTax including, but not limited to, unbilled royalties.

**l. Sales or Gross Receipts Tax.** If required by the state or locality where your Territory is located, the initial franchise fee, royalties, and advertising fees will be subject to sales or gross receipts tax. You must pay these taxes to Liberty at the same time and in the same manner as you pay the royalties and fees to Liberty.

**m. Transmitter, Software, or Electronic Filing Fee.** Liberty reserves the right to impose a fee charged to you or your customers related to transmission of Financial Products, the provision of software, or the electronic filing of tax returns and, if charged to customers, may rebate a portion of the fee to you. Liberty may vary the dollar amount of the fee and may change its name. Any such fee is not included in your Gross Receipts.

**n. Call Center.** If you elect to use Liberty's call center to handle customer appointments, customer follow up, tax school calls, or other calls, you must pay to Liberty a fee for each such call pursuant to Liberty's schedule of call center charges. This schedule is subject to future modification by Liberty.

**o. Cash in a Flash Financing Set up Fee.** If you elect to apply for cash in a flash financing through Liberty, you must pay to Liberty any set up fee that Liberty imposes pursuant to Liberty's schedule of fees. This schedule is subject to future modification by Liberty.

**p. Assessment Related to Understatement of Revenues.** Pursuant to the rights and obligations specified in Section 7 of this Agreement, if Liberty determines that you are underreporting Gross Receipts, you must pay to Liberty additional royalties and interest in the amount of 12% per annum on the undisclosed amount as determined by Liberty. If the excess determined following a review of your operations, books and records is more than two percent (2%) of the Gross Receipts for the period in question, you must also pay the costs of the review. All such amounts may be billed to your accounts and notes receivable balance with Liberty. Additionally, if a review results from your failure to maintain and/or provide records as required in Section 7, you must pay the costs of the review, regardless of the result. The costs of any review pursuant to the terms of this Agreement shall be determined by Liberty. Liberty's acceptance of payments of royalties or Gross Receipts reports shall be without prejudice and shall in no case constitute a waiver of Liberty's rights to claim any delinquent royalties, or to require a review of your operations, books and records, as provided for herein.

## 5. OBLIGATIONS OF FRANCHISOR

**a. Training.** Liberty provides for new franchisees a required five (5) day or longer EOT and a required one (1) day Hands on Training ("HOT") taught by an existing franchisee at their Liberty Tax office. Franchisees that receive financing may also be required to attend and pass Liberty's GMi Training. Liberty does not charge for EOT, HOT or GMi Training but you are responsible for all expenses you incur as a result of training, such as travel, lodging and meals.

**b. Operations Manual.** Liberty will loan you a copy of Liberty's Operations Manual ("Manual") to offer guidance in the operation of your Franchised Business.

**c. Site Selection.** Liberty provides guidance and advice to you regarding the selection of the location of your office(s). You may not sign a lease or locate an office until Liberty approves the location of your office. Liberty's approval of the location of a site is not a guarantee of success in that location or a warranty or assurance as to any aspect of the office or its location.

**d. Advertising and Marketing.** Liberty raises fees related to marketing through the advertising fees paid under Liberty's franchise agreements. Liberty will contribute advertising fees from company offices. Liberty disburses advertising fees to develop, produce, distribute and/or conduct advertising programs, marketing programs, public relations, and marketing research. Liberty spends advertising fees on a national, regional or local basis for television, electronic, radio and print advertising as Liberty determines to be appropriate. Liberty may produce advertising in-house and/or through an advertising agency. Liberty pays all costs of such activities, including a share of corporate overhead related to advertising and marketing, with advertising fees. You may also use your own advertising material provided that Liberty first approves it for compliance.

**e. Software.** Liberty provides tax return preparation software.

**f. Tax and Technical Support.** Liberty provides reasonable telephone and/or internet support for your questions regarding federal and state individual income tax return preparation, electronic filing, and the use of software specified by Liberty. However, Liberty will not provide support on any equipment that does not meet Liberty's then current specifications or issues related to the operating system of a computer.

**g. Electronic Filing.** Liberty provides the ability to file individual federal and certain individual state tax returns electronically, if such method of filing is reasonably available from the respective taxing authority. You must have and maintain a valid Electronic Filing Identification Number ("EFIN").

**h. Financial Products.** If reasonably available and feasible (in Liberty's sole determination), Liberty will offer you the ability to participate in Financial Products. If offered, your participation in Financial Products programs is subject to mutual agreement between you, Liberty and the Financial Products provider.

**i. Operational Support.** Liberty advises you in the budgeting for and operation of your Franchised Business. Liberty's approval of your budget is not a guarantee of success.

**j. Advanced and Update Training and Conference Calls.** Liberty provides and may require your attendance at advanced training for experienced franchisees. Liberty also provides and requires attendance by all franchisees at update training. Liberty may offer advanced and update training at various sites that Liberty selects across the country, or Liberty may offer such training through the internet or electronically. The agenda for advanced training varies, but often will focus on improving business management skills in order to increase profitability. Liberty does not charge for advanced or update training, but you are responsible for all expenses that you incur as a result of attending training, such as travel, lodging and meals. Liberty may also require that you attend a reasonable number of toll free conference calls to learn the latest operational and marketing tips. Such calls may either be attended live or through online replay.

**k. Supply Source.** Liberty may offer for sale or locate a source for purchasing supplies, forms and equipment that may be necessary to conduct the Franchised Business, as reasonably determined by Liberty.

**l. Leasing.** Liberty may make arrangements to refer you to a company that offers leasing of furniture, fixtures, signs, equipment, and possibly provides loans for franchise fees and working capital. These leasing or loan programs will be financed and administered by a third party. Liberty cannot guarantee that you will be offered leasing or loans, as the third party company will make individual determinations.

**m. Financing through Liberty.** Liberty may, in Liberty's sole discretion, provide financing for a portion of the initial franchise fee or other costs associated with the Franchised Business. The terms of such financing are subject to change. You must be in compliance with this Agreement to qualify for any such financing and may be required to obtain certain certifications and trainings including, but not limited to, Affordable Care Act certification and completion of GMi Training. Further, if Liberty provides financing to you, you agree to submit monthly financial information to Liberty including, but not limited to, an income statement, balance sheet, and supporting documents. You agree to provide any requested documents at the time and in the format required by Liberty.

**n. Group Discounts.** Liberty may provide you with the opportunity to participate in group purchasing programs that offer group discounts. The discounts and terms for these opportunities will vary.

**o. Area Developers.** In those areas where Liberty presently or in the future uses an Area Developer, Liberty reserves the right to delegate some portion of the responsibility for certain duties to the Area Developer including, but not limited to, site selection assistance, limited marketing assistance, and operating assistance. Area Developers do not have any authority to approve advertising or marketing material of any kind.

## 6. OBLIGATIONS OF FRANCHISEE

**a. Training.** You must attend and successfully complete Liberty's EOT and HOT before you may operate a Liberty office. Liberty may allow or require a general manager to attend on your behalf.

b. **Use of Liberty Marks.**

(i) **Liberty allows you to use Liberty's Marks.** Liberty allows you to use Liberty's Marks to hold out your Liberty Tax Service business to the public. You agree to exclusively use Liberty's Marks as Liberty develops them for this purpose only.

(ii) **You must obtain prior advertising approval.** You must either use pre-approved advertising templates that Liberty or Liberty's approved vendors provide, or you must obtain Liberty's prior written consent before using the Marks in any way and before using any marketing or promotional material, including internet advertising.

(iii) **No private website allowed.** You may not have a website for your Franchised Business, or utilize mobile apps or other digital marketing, without Liberty's prior written approval.

(iv) **Marketing to National Companies.** You must obtain written permission from Liberty before marketing on the premises (building and parking lot) of any national company. National companies include, by way of example, Wal-Mart, K-mart, and Sears.

(v) **No use of "Liberty" within a company name.** You may not use the word "JTH" "Dona Libertad," "Liberty," "Libtax", "Siempre", "SiempreTax," "SiempreTax+" or the name, or any portion of the name of Liberty's Affiliated Companies, as any part of the name of a corporation, LLC or other entity except as may be agreed between you and such company in a separate franchise agreement for that company. However, "Liberty Tax Service" followed by your entity number shall be your "doing business as" name for an entity that owns this Franchise, sometimes also called your "assumed name," "trading as" name, or "fictitious name."

(vi) **No confusingly similar marks.** You agree not to use any marks which could be confused with Liberty's Marks.

(vii) **Liberty may update or change Liberty's Marks.** Liberty may replace, modify or add to the Marks. If Liberty replaces, modifies or creates additional marks, you agree to update or replace your signs, supplies, etc., to reflect the new marks in the time frame Liberty provides and at your own expense. Liberty will not change exterior signage requirements more than once every four (4) years unless legally required.

c. **Signs.** You must display an exterior lighted sign at each of your offices. Liberty must approve all signs before you order or display them.

d. **Starting Date.** In a territory that did not have an existing company owned or franchisee owned tax preparation office in the most recent Tax Season ("Undeveloped Territory"), you agree to begin operation and be open for business no later than January 8 following the Effective Date of this Agreement and agree to be open for business no later than January 2 for each year thereafter. For a Developed Territory, you agree to begin operations and be open for business no later than January 2 following the Effective Date of this Agreement and for every year thereafter.

e. **Operating Hours.** You agree to exercise your best efforts to promote the Franchised Business and agree, at a minimum, to be open for business during the hours specified in the Operations Manual.

DocuSign Envelope ID: F359F251-FB59-4C26-912A-945BAF1F3F57

**f. Target Volume.** You must use your best efforts to promote the Franchised Business. Beginning in your fifth (5th) Tax Season and continuing in each Tax Season thereafter, you must prepare at least 1,000 federal income tax returns in your Territory ("Target Volume").

**g. Software.** You must use the software that Liberty provides. You may not use, install or have any other federal or state personal income tax return preparation or electronic filing software on any computers used in the Franchised Business, without Liberty's prior written consent.

**h. Telephone Number and Email Account.** You must obtain and maintain a Liberty Tax Service telephone number to be used solely to transact the Franchised Business. You may purchase a white and yellow page listing through Liberty's approved vendor and may be required to purchase a yellow page advertisement and/or contribute to a group listing or advertisement per Liberty's recommendations. You also must provide and maintain an email account sufficient for communications between you and Liberty.

**i. Equipment.** You must obtain and use a computer system that meets Liberty's current specifications and any modifications to these specifications. All work stations must be purchased from Liberty's approved vendor including, but not limited to, tax return preparation and processing computers. Liberty may update the specifications. When the specifications are updated, you must update or upgrade the computer system, at your sole cost. Specifications will not be updated during a Tax Season except upon an emergency, as reasonably determined by Liberty.

**j. Insurance.** During the term of this Agreement, you must procure and maintain an insurance policy or policies with at least the following coverage or such other coverage as may be specified in the Operations Manual: (i) comprehensive general liability of $1 million per office and (ii) worker's compensation as required by your state law. Liberty may require you to obtain additional insurance, such as errors and omissions insurance, as may be specified in the Manual. You must name Liberty as an additional insured on all policies required by this Agreement or the Manual.

**k. Electronic Filing.** If Liberty provides or recommends a source for electronically filing tax returns, you are required to offer electronic filing and to use this source exclusively for all electronic filing.

**l. Financial Products.** If Liberty negotiates an agreement with a third party Provider to allow you to offer Financial Products, you are required to exclusively use such Providers as Liberty designates and to offer Financial Products to your customers.

**m. Operations Manual.** You acknowledge the importance of consistency of quality, service and operation among all Liberty Tax franchised offices and, therefore, agree to operate the Franchised Business in conformity with all standards to be maintained, techniques and operating procedures that Liberty may prescribe in Liberty's manuals or otherwise in writing, and to refrain from deviating therefrom without Liberty's prior written consent. Liberty will loan you a copy of the Manual and provide you with other relevant manuals. Liberty may modify the Manual or any other manual, in order to adjust for competitive changes, technological advancements, legal requirements and attempts to improve in the marketplace. You agree to operate the Franchised Business according to the manuals

and any modifications including, but not limited to, the Manual, as may be updated or supplemented by memoranda, bulletin, email or other similar mechanism that together with the Manual, contain the mandatory and suggested procedures and specifications that are prescribed for the Franchised Business.

**n. Participation.** You agree that the services of the Franchised Business will be provided under your direct supervision and control and/or under the direct supervision and control of a full-time general manager who has been approved by, and not later disapproved by Liberty. Liberty will not approve a general manager prior to their successful completion of EOT.

**o. Return Check.** You must prepare each income tax return accurately and in accordance with federal, state and local laws. You must check each return thoroughly.

**p. Tax School.** If you complete EOT before September 1 of the year of the Effective Date of this Agreement, and during every year after your first Tax Season regardless of EOT, you must conduct an intensive 6 to 10 week tax course in the period of September through December in accordance with the specifications in the Manual. Additionally, you must conduct a one-week tax course during every January, including the January of your first (1st) Tax Season, in accordance with the specifications in the Manual.

**q. Employee Training.** You shall conduct and require each of your employees to attend an employee policy and procedure training course as specified by Liberty. You are solely responsible for hiring, firing, compensating, paying applicable payroll taxes and day to day supervision and control over your employees. You acknowledge and agree that Liberty shall not, and shall have no right or authority to, control your employees. Liberty shall have no right or authority with respect to the hiring, termination, discipline, work schedules, pay rates or pay methods of your employees. You acknowledge and agree that all employees shall be your exclusive employees and shall not be employees of Liberty nor joint employees of you and Liberty. Liberty neither dictates nor controls labor or employment matters for franchisees and their employees.

**r. Customer Service.** You shall employ and train sufficient personnel to accommodate all customers without undue delay. You shall provide all services and abide by all customer service policies described in the Manual, including, but not limited to, the money back guarantee. You must operate in a manner that protects Liberty's goodwill, reputation and Marks.

**s. Office Condition.** You shall maintain offices that are neat and professional in appearance. Further, you may not offer products or services through your Liberty offices other than the franchise services authorized here (i.e., tax preparation, electronic filing, and Financial Products, all processed and reported through Liberty's systems) without Liberty's prior written approval.

**t. Supplies and Furniture.** You agree that in order to establish a standard and consistent delivery of Liberty Tax services, certain items must be used in the operation of the Franchised Business. You must use the items required in the Manual (e.g. client envelopes and folders, interview worksheets, interior signs sets). You are responsible for the cost of all items needed to conduct the Franchised Business including, but not limited to, supplies, furniture, equipment, leasing and real estate costs.

**u. Laws and Regulations.** You agree to comply with all federal, state and local laws, regulations, ordinances and the like, and to be responsible for such compliance by all employees of the Franchised Business. You will abide by all legal requirements and be solely responsible for securing any necessary permits, certificates, licenses and consents to operate your business. You will not request or require that any customer of the Franchised Business waive, or permit you to disclaim your or any employee's responsibility to comply with any legal requirements or applicable laws. If requested by Liberty, you agree to report any noncompliance with federal or state tax laws or regulations by the Franchised Business and/or its employees to the IRS and/or any applicable state taxing authority. You also agree to provide Liberty with notice of any reports of non-compliance you have filed.

**v. Audits.** If the IRS or any governmental agency audits or investigates your Liberty operations, or any tax preparer employed in the Franchised Business, or otherwise requires that you, or such tax preparer, provide documents to the IRS or other governmental agency related to the Franchised Business, you agree to notify Liberty immediately upon receiving notice of the audit, investigation or request for documents and comply and cooperate with any such lawful investigation or demand for information. You further agree to cause all employees of the Franchised Business to comply and cooperate with any such lawful investigation or demand for information. You agree to immediately provide Liberty with a copy of any notice of audit, subpoena or request for documents. You agree to immediately provide Liberty with a copy of the findings of any audit or investigation. You hereby waive any right to privacy, confidentiality and similar protections and restrictions with respect to any such audit or investigation. You authorize the IRS, and any governmental agency, to disclose information to Liberty and its representatives related to any such audit or investigation and provide copies of any requested information. You hereby authorize Liberty to make such requests for information.

**w. EFIN.** For an Undeveloped Territory, you must obtain an EFIN from the IRS prior to operation and no later than January 2 of your first Tax Season, and provide us with satisfactory documentation that you have received a valid EFIN. For a Developed Territory, you will be required to obtain a valid EFIN prior to operation, and provide us with satisfactory documentation, in Liberty's determination, that you have received a valid EFIN. After obtaining an EFIN pursuant to the above provisions, you will be required to maintain a valid EFIN throughout the term of this Agreement. You agree to comply with all of the requirements of IRS Publication 3112, 1345 or any applicable successor publications relevant to EFINs, as well as all applicable state laws and regulations related to electronic filing. You hereby authorize the IRS and any state tax authority to disclose to Liberty the reasons for any EFIN denial or suspension and to provide Liberty with copies of all EFIN application materials, suspension and denial notices.

**x. Site Selection and Leases.** As described in Section 5(c), Liberty provides guidance to you regarding the selection of the location of your office and all office locations must be approved by Liberty prior to your execution of a lease for that site. Unless otherwise agreed in writing, you are required to attempt to ensure that any lease entered into for an approved location contains a provision that the lessor consents to an assignment of the lease to Liberty with the right to sublease at Liberty's option. You agree to provide Liberty with a copy of the lease for each approved location within seven (7) days of execution.

## 7. REPORTS AND REVIEW

**a. Gross Receipt Report.** You must send Liberty a Gross Receipt report in the manner and form and at the times Liberty specifies. Presently, you must report your Gross Receipts on the fifth (5th) of the month for Gross Receipts received during the prior month. You agree that Liberty has the right to lock your Gross Receipt report at any time.

**b. Profit and Loss.** By May 30 of each year, you must send Liberty an unaudited profit and loss statement of the Franchised Business, in the manner and form Liberty specifies, for the twelve (12) month period ending April 30.

**c. Review.** You agree to permit Liberty and/or Liberty's agents the right to enter your Liberty Tax offices during normal, required business hours, without prior notice, and inspect your operations and inspect and copy all of your paper and electronic business books and records related to the Franchised Business and any other operations taking place at your Franchised Business. This includes, but is not limited to, the right to inspect and copy all tax returns and bank statements that may be indicative of revenues from the Franchised Business. Liberty also has the right to require that you implement a plan to resolve issues that Liberty discovers. You agree to comply with any such plan imposed.

**d. Mail Reviews.** If Liberty requests a copy of your customer receipts (paper and/or electronic) or any other business records, including, but not limited to customer taxpayer records related to the Franchised Business, you must send Liberty these records at your expense within five (5) days of receiving Liberty's request.

**e. Electronic Review.** Liberty may cause programs to run on your computer systems that may send information to Liberty. Liberty agrees that the use of such programs will not unreasonably interfere with your operation of the Franchised Business and you agree to allow such programs to run without interference by you. You hereby grant Liberty the right to access the computer systems in your office and authorize Liberty to obtain any and all information related to the Franchised Business. You acknowledge that Liberty will use information obtained from your computer system to make business decisions.

**f. Costs of Review.** Depending on the circumstances, you may be responsible for the costs of a review as more fully set forth in Section 4(p).

**g. Background Information.** During the term of this Agreement, you authorize Liberty to obtain background information related to your employment, credit and financial history, as well as your criminal and driving records.

## 8. TERMINATION

**a. Nonrenewal.** You may terminate this Agreement by not renewing; that is, by not notifying Liberty in writing of your desire to renew at least one hundred eighty (180) days prior to the expiration

of this Agreement. If you terminate pursuant to this Section, you must still comply with all of the post-termination provisions of this Agreement.

**b. Termination Without Notice and Opportunity to Cure.** Liberty may terminate this Agreement without notice and the opportunity to cure for any of the following reasons:

(i) If you become insolvent, are unable to pay debts as they come due or take any steps to seek protection from creditors, or if a receiver (permanent or temporary) is appointed by a creditor or a court of competent authority, or if you make a general assignment for the benefit of creditors;

(ii) If a final judgment of record against you or your Franchised Business remains unsatisfied for thirty (30) days or longer;

(iii) If you breach 6(v) of this Agreement, or if you fail to notify us about or comply with any governmental investigation or audit or, if we determine that you, or someone acting under your supervision and control, has committed a material violation of any law, ordinance, rule or regulation of a governmental agency or department reasonably associated with the operation of the Franchised Business, committed any act that is or could be, in Liberty's determination, harmful, prejudicial or injurious to the Liberty brand or any of the Affiliated Companies or any employee, franchisee, area developer or agent of such companies, or if the IRS or any federal, state or local governmental entity or agency initiates a criminal, civil or administrative proceeding or takes any administrative action against you or the Franchised Business relating to compliance with applicable tax laws and regulations, and such proceeding or action is not resolved or dismissed in favor of you, or the Franchised Business, within thirty (30) days of its initiation;

(iv) If you abandon the Franchised Business or discontinue the active operation of any active office of the Franchised Business for three (3) business days during any Tax Season or seven (7) business days otherwise, except where active operation was not reasonably possible or where specifically approved by Liberty in writing prior thereto;

(v) If you fail to open for business in the Territory by January 2 or January 8 of any year, as specified pursuant to Section 6(d);

(vi) If you operate any offices or advertise outside the Territory without Liberty's permission;

(vii) If you fail to meet the Target Volume specified in Section 6(f) above in the Territory during your fifth Tax Season or in any Tax Season thereafter;

(viii) If you fail to use the software, electronic filing services or Financial Products Liberty provides or recommends;

(ix) If you do not obtain an EFIN from the IRS for each office in the Territory prior to operation or, at the latest, by January 2 of your first Tax Season, or if any of your EFINs

are suspended by the IRS or any state taxing authority for any reason at any time thereafter or you are expelled from the e-file program;

(x) If you include a materially false representation or omission of fact in your Confidential Franchise Application to Liberty or if you under-report Gross Receipts, falsify financial data, make a false submission with regard to any required reports or otherwise commit an act of fraud with respect to your acquisition or operation of the Franchised Business or your rights or obligations under this Agreement;

(xi) If you commit three (3) or more breaches of this Agreement, the Operations Manual, or any other agreement (including promissory notes) with Liberty or the Affiliated Companies, in any twelve (12) month period regardless of whether such breaches were cured after notice; or

(xii) If you fail to timely execute all documents necessary for renewal.

c. **Termination with Notice and Opportunity to Cure.** No fewer than seven (7) days after Liberty has sent you notice of your opportunity to cure, Liberty may terminate this Agreement if:

(i) You, or any entity in which you are affiliated, violate any term or condition of this Agreement, the Operations Manual, or any other agreement with Liberty or the Affiliated Companies;

(ii) Any amount owing to Liberty or the Affiliated Companies, whether related to the Territory or not, is more than thirty (30) days past due, or Liberty determines that you have materially and substantively underreported revenue;

(iii) You fail to comply with IRS standards applicable to e-file providers as stated in IRS Publications 3112, 1345 or another or successor IRS publication applicable to e-file providers or you fail to comply with state or local regulations related to electronic filing; or

(iv) You are more than sixty (60) days in default of any loan, lease or sublease agreement with a third party, affecting the Franchised Business.

## 9. POST-TERMINATION OBLIGATIONS

Upon expiration, termination, transfer or nonrenewal of this Agreement for any reason by any party, including a sale of the Franchised Business, you must immediately:

a. Sell to Liberty (if Liberty elects pursuant to Section 11) any or all equipment, signs, trade fixtures, and furnishings used in the Franchised Business, or if Liberty does not so elect, remove all Marks or other distinguishing indicia from all of your offices and other premises; and

b. Stop identifying yourself as a Liberty Tax franchisee, never hold out as a former Liberty Tax franchisee and forever cease the use of any of the Marks or any other marks that may be confused with the Marks; and

c. Stop using all literature and forms received from Liberty and other items bearing the Marks; and

d. Pay to Liberty all amounts owing to Liberty, whether related to the Territory or not; and

e. Transfer to Liberty all telephone numbers, listings and advertisements used in relation to the Franchised Business and deliver to Liberty copies of such documents of transfer; and

f. Assign to Liberty (if Liberty elects) any interest that you have in any lease, sublease or any other agreement related to the Franchised Business; and

g. Deliver to Liberty any original and all copies, including electronic copies and media, of lists and other sources of information containing the names, addresses, e-mail addresses, or phone numbers of customers of the Franchised Business; and

h. Deliver to Liberty any original and all copies, including electronic copies and media, containing customer tax returns, files, and records; and

i. Deliver to Liberty all copies of the Manual and any updates; and

j. Cancel all fictitious name listings which you have filed that utilize any of the Marks; and

k. Adhere to all applicable provisions contained herein including, but not limited to, the post-term covenants not to compete and not to solicit.

## 10. ADDITIONAL IN-TERM AND POST-TERM COVENANTS

a. **In-Term Covenant Not to Compete.** During the term of this Agreement, you agree not to directly or indirectly, for a fee or charge, in the United States or Canada, prepare or electronically file income tax returns, or offer Financial Products, except, if applicable, in your capacity as a SiempreTax or Liberty Tax franchisee pursuant to a valid SiempreTax or Liberty franchise agreement.

b. **Post-Term Covenant Not to Compete.** For a period of two (2) years following the termination, expiration, transfer or other disposition of the Franchised Business, or your removal as a signator to this Agreement, you agree not to directly or indirectly, for a fee or charge, prepare or electronically file income tax returns, or offer Financial Products, within the Territory or within twenty-five (25) miles of the boundaries of the Territory except, if applicable, in your capacity as a SiempreTax or Liberty Tax franchisee pursuant to a valid SiempreTax or Liberty franchise agreement.

c. **Liquidated Monetary Damages.** If you fail to comply with either of the above covenants not to compete, you agree to pay Liberty, as partial liquidated monetary damages, royalties and advertising fees as set forth in Section 4 of this Agreement against the greater of: (1) the total Gross Receipts

during your last fiscal year (May 1- April 30) of operation for each Territory in which you are in breach; or (2) the total revenue you received in breach of a covenant not to compete. The greater of these two dollar figures shall be multiplied by two (2) to give consideration to lost repeat and referral business to Liberty. You acknowledge that any breach of the covenants not to compete causes damage to the integrity of Liberty's franchised system, loss of franchisee and customer goodwill and irreparable harm. You specifically acknowledge that the full measure of these damages is greater than that specified herein.

    **d. Covenant Not to Solicit.** For a period of two (2) years following the termination, expiration, transfer or other disposition of the Franchised Business, or your removal as a Signator to this Agreement, you agree that you will not, within the Territory or within twenty-five (25) miles of the boundaries of the Territory, directly or indirectly solicit any person or entity served by any of your prior Liberty offices within the last twelve (12) months that were a Liberty franchisee, for the purpose of offering such person or entity, for a fee or charge, income tax preparation, electronic filing of tax returns, or Financial Products except, if applicable, in your capacity as a SiempreTax or Liberty Tax franchisee pursuant to a valid SiempreTax or Liberty franchise agreement. You further agree for a period of two (2) years following the termination, expiration, transfer or other disposition of the Franchised Business, or your removal as a Signator to this Agreement, not to employ or solicit for employment without Liberty's prior written consent any of Liberty's employees or those of any other of Liberty's franchisees, or induce any such employee to leave his or her employ.

    **e. Covenant Not to Lease.** You agree that during the term of this Agreement, you will not lease, sub-lease, assign or guaranty a lease in the Territory to or for a person or entity who will offer income tax preparation at such an office. You also agree that upon the termination or expiration of this Agreement, if Liberty or a duly authorized Liberty franchisee desires to use any of your former Liberty office locations in the Territory, you will use reasonable good faith efforts to help Liberty secure possession of the office locations through a lease assignment or otherwise. Otherwise, you agree to use reasonable, good faith efforts to ensure that, for a twenty-four (24) month period after non-renewal or termination of this Agreement, no person or entity will offer income tax preparation at the properties where your former Liberty offices were located. Good faith efforts include a duty not to sub-lease or assign the leases of your office location to a person or entity who will offer income tax preparation at such office locations.

    **f. No Harmful Acts.** You agree not to disparage Liberty or the Affiliated Companies, including their current and former employees, directors or agents. You also agree not to do any act that is, in Liberty's determination, harmful, prejudicial or injurious to Liberty or the Affiliated Companies, including their current and former employees, directors or agents.

    **g. Section 10 Conditions Required for Grant of Franchise.** You hereby acknowledge that the qualifications to be a Liberty franchisee are special, unique and extraordinary, and that Liberty would not enter into this Agreement without the inclusion of the conditions set forth in Section 10.

    **h. Waivers.** You acknowledge and agree that the provisions of Section 10 are reasonable, valid and not contrary to the public interest. You waive all defenses to the strict enforcement of Section 10. You further agree that Liberty is entitled to a temporary restraining order, preliminary and/or permanent injunction for any breach of duties under any of the non-monetary obligations of Sections 9

DocuSign Envelope ID: 350E251-F859-4C25-B9A9-9145AA51F3E57

and 10. You hereby waive any requirement that Liberty post a bond related to any temporary restraining order or injunctions requested as a result of an alleged violation of Sections 9 and 10.

    **i. Survival.** The covenants contained in Section 10 shall survive any termination or expiration of this Agreement.

    **j. Severability.** If any covenant or provision within Section 10 is determined to be void or unenforceable, in whole or in part, it shall be deemed severed and removed from this Agreement and shall not affect or impair the validity of any other covenant or provision of this Agreement. Further, these obligations are considered independent of any other provision in this Agreement, and the existence of any claim or cause of action by either party to this Agreement against the other, whether based upon this Agreement or otherwise, shall not constitute a defense to the enforcement of these obligations.

## 11. OPTION TO PURCHASE ASSETS

Upon termination or expiration of this Agreement, you hereby grant Liberty or its assignee the option to purchase from you some or all of the assets (including, but not limited to, supplies, equipment, signs, furnishings and fixtures) of the Franchised Business. Liberty may exercise this option by transmitting notice to you within thirty (30) days from the effective date of expiration or termination. If Liberty elects to exercise this option, the purchase price for the assets of the Franchised Business, will be the "adjusted book value" as described below. Liberty will have the right to set off and reduce the purchase price by any and all amounts owed by you to Liberty or any of Liberty's affiliates. The "adjusted book value" is the book value of the assets of the Franchised Business as listed on the balance sheet in the financial statements of the Franchised Business as of the date of the termination or expiration. There shall be no allocation for goodwill or any similar adjustment in the adjusted book value.

## 12. CONFIDENTIAL INFORMATION

    **a. Disclosure.** Liberty possesses confidential information including, but not limited to, methods of operation, service and other methods, techniques, formats, specifications, procedures, information, systems, knowledge of and experience in operating and franchising offices, customer information and marketing information ("Confidential Information"). Liberty may disclose some or all of the Confidential Information to you and your representatives while you operate the Franchised Business. During the term of this Agreement and following the expiration or termination of this Agreement, you covenant not to directly or indirectly communicate, divulge, or use any Confidential Information for your personal benefit or the benefit of any other person or legal entity except as specifically provided by the terms of this Agreement or permitted by Liberty in writing prior to disclosure. Upon the transfer, expiration, termination or nonrenewal of this Agreement, you agree that you will never use or disclose, and will not permit any of your representatives to use or disclose, Liberty's Confidential Information in any manner whatsoever, including, without limitation, in the design, development or operation of any business substantially similar to the Franchised Business. This provision shall not apply to information that: (i) at the time of disclosure is readily available to the public; (ii) after disclosure becomes readily available to the trade or public other than through breach of this Agreement; (iii) is subsequently lawfully and in good faith obtained by you from an independent third

party without breach of this Agreement; (iv) was in your possession prior to the date of Liberty's disclosure to you; or (v) is disclosed to others in accordance with the terms of a prior written authorization between you and Liberty. The protections granted in this Section shall be in addition to all other protections for Confidential Information provided by law or equity.

**b. Interest.** You will acquire no interest in Liberty's Confidential Information, but are provided the right to use Confidential Information disclosed to you for the purposes of developing and operating the Franchised Business pursuant to this Agreement. You acknowledge that it would be an unfair method of competition to use or duplicate any Confidential Information other than in connection with the operation of the Franchised Business. No part of the Liberty Tax franchise system nor any document or exhibit forming any part thereof shall be distributed, utilized or reproduced in any form or by any means, without Liberty's prior written consent.

**c. Use.** You agree that you will: (i) refrain from using Confidential Information for any purpose other than the operation of the Franchised Business pursuant to this Agreement; (ii) maintain absolute confidentiality of Confidential Information during and after the term of this Agreement; (iii) not make unauthorized copies of any portion of Confidential Information; and (iv) adopt and implement all reasonable procedures, including, but not limited to, those required by Liberty, to prevent unauthorized use of or disclosure of Confidential Information, including, but not limited to, restrictions on disclosure to your employees and the use of nondisclosure and non-competition clauses in employment agreements with employees that have access to Confidential Information.

## 13. INDEPENDENT CONTRACT AND INDEMNIFICATION

You and Liberty are independent contractors to each other. Neither you nor Liberty are an agent, fiduciary, partner, employee, or a participant in a joint venture and neither you nor Liberty have the authority to hold out as such to third parties. You do not have any authority to bind or obligate Liberty. Liberty is not and will not be liable for any act, omission, debt, or other obligation of yours.

You are responsible for all claims, demands, losses, damages and/or contractual liability to third parties which may arise at any time related to your operation of the Franchised Business. You agree to defend, indemnify and hold Liberty, Liberty's parent company and Affiliated Companies and their employees harmless from all claims, demands, losses, damages, and/or contractual liability (including attorney's fees) to third parties. You agree to reasonable cooperation in the defense of any claim. Liberty and the Affiliated Companies shall have the right to control settlement and selection of counsel and defense of any claim.

## 14. DEATH OR INCAPACITY

**a. Assistance and Reimbursement.** In the event of the death or incapacity of Franchisee, Liberty is entitled, but not required, to render assistance to maintain smooth and continued operation of the Franchised Business. Liberty shall be entitled to reimbursement from Franchisee or Franchisee's estate for reasonable expenditures incurred.

**b. Time Requirements.** Pursuant to this Section, death or incapacity shall not be grounds for termination of this Agreement unless:

i) Franchisee or his/her legal representative fails for a period of one hundred eighty (180) days after such death or incapacity to commence action to assign this Agreement according to controlling state law regarding the affairs of a deceased or incapacitated person and the terms of this Agreement; or

ii) Such assignment is not completed within one (1) year after death or incapacity.

c. **Termination.** Liberty shall have the right to terminate this Agreement if one of the conditions listed in 14(b) are not satisfied within the time frame provided. Nothing in this Section shall be construed to limit the provisions of Section 8 regarding termination. Further, the terms and conditions of Section 15 apply to a transfer upon death or incapacity.

## 15. ASSIGNABILITY AND FIRST RIGHT OF REFUSAL

a. **Assignability Generally.** Liberty may assign this Agreement to an assignee who agrees to remain bound by its terms. Liberty does not permit a sub-license of the Franchise. Your interest under this Agreement or your ownership in the Franchise may be transferred or assigned only if you comply with the provisions in this Section and such transfer is approved by Liberty in writing. No interest may be transferred unless you are in full compliance with this Agreement and current in all monies owed to Liberty. Liberty may require any transfer of an ownership interest in this Agreement to be joined by all signatories to this Agreement, except in the case of death or legal disability.

b. **First Right of Refusal.** If you have received and desire to accept a signed, bona fide offer to purchase or otherwise transfer the Franchise or any interest in the Franchise, Liberty shall have the option ("Right of First Refusal") to purchase the Franchise or interest. You shall offer the Right of First Refusal by providing written notice to Liberty and including a copy of the signed offer to purchase that you received (collectively "Notice"). Liberty shall have the right to purchase the Franchise or interest in the Franchise for the price and upon the terms set out in the Notice; however, Liberty may substitute cash for any non-cash form of payment proposed and Liberty shall have sixty (60) days after the exercise of Liberty's Right of First Refusal to close the purchase. Liberty will notify you in writing within fifteen (15) days of receipt of the Notice if it plans to exercise the Right of First Refusal. Upon the transmission of notice by Liberty that it plans to exercise the Right of First Refusal, there shall immediately arise between Liberty and Franchisee, or its owners, a binding contract of purchase and sale at the price and terms contained in the Notice previously provided by you.

c. **Transfer to Controlled Entity.** A transfer to a "Controlled Entity" shall not trigger the Right of First Refusal. A "Controlled Entity" is an entity in which Franchisee (or Franchisee's managers, members, owners, partners, shareholders or officers as of the date of this Agreement) is the beneficial owner of 100% of each class of voting ownership interest. At the time of the desired transfer of interest to a Controlled Entity, you must notify Liberty in writing of the name of the Controlled Entity and the name and address of each officer, director, shareholder, member, partner, or similar person and their respective ownership interest, and provide Liberty with the applicable organizational documents of the business entity. Each such person of the Controlled Entity shall sign, on behalf of the business entity and in their respective individual capacity, the amendment and release forms and/or franchise agreement as required by Liberty at the time of transfer. Currently, Liberty does not charge a transfer

fee for this type of transaction. Upon transfer, a new EFIN must be obtained pursuant to Section 6(w) herein.

 d. **Transfer of Interest Within Franchisee.** A transfer of interest within a Franchisee that is an entity shall not trigger the Right of First Refusal provided that only the percentage ownership is changing and not the identity of the owners. At the time of the desired transfer of interest within an entity, you must notify Liberty in writing of the name and address of each officer, director, shareholder, member, partner or similar person and their respective ownership interest prior to and following the proposed transfer and provide Liberty with the applicable organizational documents of the business entity. Each such person of the Controlled Entity shall sign, on behalf of the business entity and in their individual capacity, the amendment and release forms and/or franchise agreement as required by Liberty at the time of transfer. Further, if the transfer of interest results in a change in control of the entity, you must pay to Liberty the transfer fee required at the time of transfer.

 e. **Right of First Refusal Not Exercised By Liberty.** If Liberty does not exercise the Right of First Refusal, you may transfer the Franchise or ownership interest therein according to the terms set forth in the Notice, provided that you satisfy the conditions of Sections 15(f) below and complete the sale within ninety (90) days from the date that Liberty received Notice from you. If you do not conclude the proposed sale transaction within this ninety (90) day period, Liberty's Right of First Refusal shall continue in full force and effect.

 f. **Additional Requirements and Restrictions Regarding Transfers.**

 i) The proposed transferee(s) must complete Liberty's franchise application and pass Liberty's application screening in place at the time of transfer;

 ii) The proposed transferee(s) must sign the Liberty amendment forms and/or the then current franchise agreement and must personally assume and be bound by all of the terms, covenants and conditions therein;

 iii) The proposed transferee(s) must attend and successfully complete EOT and HOT;

 iv) You shall sign the transfer and release forms required by Liberty at the time of transfer and pay the transfer fee described in Section 4(i) of this Agreement; and

 v) Except as to approved transfers within the Liberty system as described in this Section, you may not give, transfer or sell all or substantially all of the assets of your Franchised Business during the term of this Agreement, or for a two (2) year period after its expiration or termination, to a person or entity who might be reasonably expected to use any such assets to offer income tax preparation in the Territory or within ten (10) miles of the boundaries of the Territory.

 g. **Writing Required.** No amendment, change, or modification of this Agreement and no waiver of any right under this Agreement will be effective unless in a written document that is signed by an authorized representative of Liberty.

## 16. NON-WAIVER OF BREACH

The failure of either party hereto to enforce any of the terms or conditions of this Agreement shall not be deemed a waiver of such terms or conditions or of either party's rights thereafter to enforce each and every term and condition of this Agreement.

## 17. GOVERNING LAW

**a. Virginia Law.** This Agreement is effective upon its acceptance in Virginia by Liberty's authorized officer. Virginia law governs all claims that in any way relate to or arise out of this Agreement or any of the dealings of the parties hereto, or dealings between you and any of the Affiliated Companies. Liberty, the Affiliated Companies and their respective present or former employees, agents, officers and directors are collectively referred to in this Section as the "Liberty Parties." However, the Virginia Retail Franchising Act does not apply to any claims by or on your behalf if the Territory shown on Schedule A is outside of Virginia.

**b. Jurisdiction and Venue.** In any suit brought by any or all of the Liberty Parties, that in any way relates to or arises out of this Agreement or any of the dealings of the dealings between you and any or all of the Liberty Parties, you consent to venue and personal jurisdiction in the state and federal court of the city or county of Liberty's National Office (presently Virginia Beach, Virginia state courts and the United States District Court in Norfolk, Virginia). In any suit brought against any or all of the Liberty Parties, including their present or former employees or agents, that in any way relates to or arises out of this Agreement or any of the dealings between you and any or all of the Liberty Parties, venue shall be proper only in the federal court district and division located nearest Liberty's National Office (presently the U.S. District Court in Norfolk, Virginia), or if neither federal subject matter nor diversity jurisdiction exists, in the city or county state court where Liberty's National Office is located (presently the City of Virginia Beach, Virginia).

**c. Jury Waiver.** In any trial between you and any or all of the Liberty Parties, that in any way relates to or arises out of this Agreement or any of the dealings between you and any or all of the Liberty Parties, you and Liberty waive the rights to a jury trial and agree to have such action tried by a judge.

**d. Class Action Waiver.** You agree that any claim you may have against any or all of the Liberty Parties shall be brought individually and you shall not join such claim with claims of any other person or entity or bring, join or participate in a class action against any or all of the Liberty Parties.

**e. No Punitive Damages.** In any lawsuit, dispute or claim between or against you or the Liberty Parties that in any way relates to or arises out of this Agreement or any of the dealings between you and the Liberty parties, you and Liberty waive the rights, if any, to seek or recover punitive or exemplary damages.

**f. Area Developers.** If your Territory is or becomes located in an Area Developer area, you agree not to bring any claim, including a lawsuit, against the Area Developer, or its owners, employees or independent contractors, except as to a claim unrelated to the Liberty franchise, such as an automobile

accident. Area Developers are a third party beneficiary of this clause. Further, you agree that if you breach this clause, you will pay to Liberty and/or the Area Developer all attorney fees and other costs that Liberty and the Area Developer incur to defend the Area Developer in such an action, regardless of who prevails.

g. **Survival.** Any provisions of this Agreement that by their nature extend beyond the expiration or termination of this Agreement, shall survive termination or expiration of this Agreement and be fully binding and enforceable as though termination or expiration had not occurred.

## 18. MODIFICATION

No modifications to this Agreement will have any effect unless such modification is in writing and signed by you and by Liberty's authorized officer. However, Liberty may modify the provisions of the Operations Manual without your consent.

## 19. RELEASE OF PRIOR CLAIMS

By executing this Agreement, the undersigned entity, if any, and individuals, on behalf of yourselves and your heirs, legal representatives, successors and assigns, and each assignee of this Agreement, hereby forever release and discharge Liberty, its past and present employees, agents, area developers, officers and directors, including Liberty's parent, subsidiary and affiliated corporations, their respective past and present employees, agents, officers and directors, from any and all claims relating to or arising out of any franchise agreement between the parties executed prior to the date of this Agreement, and all other claims relating to any dealings between any of the parties. However, this release does not apply to Liberty's renewal obligations the same or similar to those in Section 2(b) above, as contained in any prior or other franchise agreement.

## 20. NOTICES

You shall give any notice or request hereunder by mail or courier, postage fully prepaid, delivered personally to Liberty's CEO at Liberty's National Office, presently 1716 Corporate Landing Parkway, Virginia Beach, Virginia, 23454, Telephone: (757) 493-8855. Liberty may also give any such notice to you in the same manner at the address indicated below the Franchisee's signature on this Agreement, or such other more current address as Liberty may have for you. Liberty may also give notice to you by e-mail.

## 21. FULL UNDERSTANDING

This Agreement is the entire agreement between you and Liberty. This Agreement supersedes all other prior oral and written agreements and understandings between you and Liberty with respect to the subject matter herein. Nothing in this or in any related agreement, however, is intended to disclaim the representations Liberty made in the Franchise Disclosure Document Liberty furnished to you.

## 22. ACKNOWLEDGMENTS

You acknowledge that you have read Liberty's franchise disclosure document and this Agreement and that you are familiar with their contents. You acknowledge that you have independently investigated the business offered hereunder and base your decision to purchase solely on such investigation. Except as may be stated in Item 19 of Liberty's Franchise Disclosure Document, you acknowledge that no person is authorized to make and no person has made any representations to you as to the actual, projected or potential sales, volumes, revenues, profits or success of any Liberty Tax franchise. You further acknowledge and agree that you are not a third party beneficiary to any agreement between Liberty and any other franchisee.

## 23. SEVERABILITY

If any covenant or provision within this Agreement is determined to be void or unenforceable, in whole or in part, it shall be deemed severed and removed from this Agreement and shall not effect or impair the validity of any other covenant or provision of this Agreement and no covenant or provision of this Agreement shall be deemed to be dependent upon any other unless specifically expressed herein.

## 24. COUNTERPARTS AND ELECTRONIC SIGNATURE

This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, but such counterparts shall constitute one and the same instrument. Delivery of an executed counterpart of a signature page to this Agreement by facsimile or in electronic (e.g. "pdf") format shall be effective as delivery of a manually executed counterpart of this Franchise Agreement. The words "execution," "signed," "signature," and words of similar import in the Franchise Agreement shall be deemed to include electronic or digital signatures or the keeping of records in electronic form, each of which shall be of the same effect, validity and enforceability as manually executed signatures or a paper-based recordkeeping system, as the case may be, to the extent and as provided for under applicable law, including the Electronic Signatures in Global and National Commerce Act of 2000 (15 USC § 7001 et seq.) or any other similar state or federal laws.

## 25. HEADINGS

The headings of the various sections of this Agreement have been inserted for reference only and shall not be deemed to have any legal effect or meaning.

## 26. GUARANTY

The Franchisee named at the top of the following page agrees to abide by the terms of this Agreement. The signature of an individual or individuals constitutes their personal agreement to such terms. The signature of an individual or individuals on behalf of an entity constitutes the entity's agreement to such terms.

The individual signators signing on behalf of franchisee also agree jointly and severally to perform all the obligations in and relating to this Agreement, including, but not limited to, all obligations related to

the covenants not to compete, covenants not to solicit, confidentiality obligations, obligations to make payments specified herein, pay any other promissory notes and other debts due to Liberty, pay for products later ordered from Liberty and the obligations stated in **Section 17 above concerning governing law, including but not limited to, the application of Virginia law, the jurisdiction and venue clause, the jury waiver, the class action waiver, and the limitation to compensatory damages only.** If the Franchise Agreement is held in the name of a business entity and it is later determined by Liberty that the entity is no longer valid or in good standing with the laws of the applicable state of organization or that an individual has been removed as a part of the business entity pursuant to applicable state law or otherwise, Liberty shall have the right to modify the Franchise Agreement to reflect the then current business structure with the signatures of only those that remain as valid members, officers, partners, directors or sole proprietor of the then current business structure. All signators specifically agree to indemnify Liberty, pursuant to the terms of Section 13, related to the removal of parties under this provision. All Signators waive any right to presentment, demand or notice of non-performance and the right to require Liberty to proceed against the other Signators. Except as specified herein, no person or entity is a third-party beneficiary of this Agreement.

*Signatures on Following Page*

Franchisee: _____ **KAPDAS Tax Services, LLC** _____   Entity Number: ____ **6017** ___

**SIGNATORS:**

By: *Kimberly P. Shaw* _____   By: _____
      (Signature)                             (Signature)

_____ Kimberly P. Shaw _____   _____
      (Printed Name)                          (Printed Name)

Title: *Owner / President* _____   Title: _____

Address: *475 Pimol Holland* _____   Address: _____

*McDonough, GA 30252* _____   _____

Ownership Percentage: ____ %   Ownership Percentage: ____ %


By: _____   By: _____
      (Signature)                             (Signature)

_____   _____
      (Printed Name)                          (Printed Name)

Title: _____   Title: _____

Address: _____   Address: _____

_____   _____

Ownership Percentage: ____ %   Ownership Percentage: ____ %


**JTH TAX, INC. d/b/a**
**LIBERTY TAX SERVICE**

DocuSigned by:

By: _____
      935C505731B4405

Printed Name: ____ **John Hewitt** ____

Title: ____ CEO ____

Effective Date: 2/4/2016 _____

## SCHEDULE "A" TO THE FRANCHISE AGREEMENT

### Territory

**The Franchise Territory\* is as follows:**

**GA304**

NORTHWEST of and including SR-20 from I-75 to SR-81.
NORTH of and including SR-81 from SR-20 to the Henry/Clayton County Line.
EAST of and including the Henry/Clayton County Line from SR-81 to I-75.
SOUTHWEST of and excluding I-75 from the Henry/Clayton County Line to Eagles Landing Pkwy.
SOUTHEAST of and excluding Eagles Landing Pkwy from I-75 to US-23.
SOUTHWEST of and excluding US-23 from Eagles Landing Pkwy to SR-351.
NORTH of and including SR-351 from US-23 to I-75.
SOUTHWEST of and excluding I-75 from SR-351 to SR-20.



Copyright © 1988-2005 Microsoft Corporation and/or its suppliers. All rights reserved. Portions © 1990-2005 InstallShield Software Corporation. All rights reserved. Certain mapping and direction data © 2005 NAVTEQ. All rights reserved. NAVTEQ and NAVTEQ ON BOARD are trademarks of NAVTEQ. © 2005 Tele Atlas North America, Inc. All rights reserved. Tele Atlas and Tele Atlas North America are trademarks of Tele Atlas, Inc.

\*Note: When a Territory description includes a road, avenue, street, parkway, highway, route or similar roadway, the Territory includes the U.S. Postal addresses assigned to either side of the roadway. When a Territory description excludes a road, avenue, street, parkway, highway, route or similar roadway, the Territory excludes the U.S. Postal addresses assigned to either side of such roadway. If a map of the Territory is attached, the map approximates the Territory, but the above legal description controls as to the Territory's precise boundaries.