# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| KEVIN TAYLOR, ) | |
| ) | Civil Action File No. _____ |
| Plaintiff, ) | |
| ) | |
| v. ) | **JURY TRIAL DEMANDED** |
| ) | |
| BELLSOUTH ) | |
| TELECOMMUNICATIONS, LLC , ) | |
| d/b/a AT&T, ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES

Plaintiff Kevin Taylor ("Plaintiff" or "Mr. Taylor") files this Complaint for Equitable Relief and Damages against Defendant BellSouth Telecommunications, LLC d/b/a/ AT&T ("Defendant" or "BellSouth") showing the Court the following:

### INTRODUCTION

1. This is an action for race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII") and 42 U.S.C. § 1981 ("§ 1981"). Mr. Taylor seeks injunctive and declaratory relief, back pay and lost benefits, front pay or reassignment to a Service Technician position with commensurate compensation and benefits, compensatory and punitive damages, and attorney's fees and costs of litigation.

1

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights).

3. Venue is proper in this district and division under 28 U.S.C. § 1391 because Defendant BellSouth conducts business in this district and division and the unlawful actions and practices alleged herein were committed within the Northern District of Georgia.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

4. Mr. Taylor timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission within 180 days of the occurrence of the acts of which he complains.

5. Mr. Taylor received a Notice of Right to Sue from the EEOC relating to his charge of discrimination, charge number 450-2022-05036.

6. Mr. Taylor brings this suit within ninety (90) days of the receipt of his Notice of Right to Sue.

## THE PARTIES

7. Mr. Taylor is a citizen of the United States and a resident of the State of Georgia. Mr. Taylor submits himself to the jurisdiction of this Court.

8. At all times relevant to this Complaint, Mr. Taylor was an employee of BellSouth.

9. Mr. Taylor is a Black male.

10. Mr. Taylor is an employee under Title VII.

11. BellSouth is a covered employer under Title VII.

12. BellSouth conducts business in the State of Georgia and is, therefore, subject to personal jurisdiction in Georgia.

13. BellSouth may be served with summons and a copy of the Complaint in this action by delivering process to its registered agent for service of process, CT Corporation System, 289 S. Culver Street, Lawrenceville, Georgia 30046.

## STATEMENT OF FACTS

13. Mr. Taylor first worked in Georgia as a Service Technician, a core position, for BellSouth from 2005-2010 when he was laid off.

14. Mr. Taylor was laid off from approximately December 2010 through early April 2013.

15. In approximately late April 2013, Mr. Taylor applied for a two-year job as a Facility Technician in Fort Lauderdale, Florida.

16. Mr. Taylor accepted the position to get back on payroll until a Service Technician position opened.

17. In January 2014, Mr. Taylor used his return rights to bid for, and received, a Service Technician position in Covington, Georgia.

18. Mr. Taylor worked as a Service Technician in the Atlanta metro area until November 2019, when he was laid off a second time.

19. Mr. Taylor chose to stay on the payroll with BellSouth in order to keep his seniority; and trained to become a Machine Operator.

20. The Machine Operator position paid approximately $15.00 per hour less than the Service Technician position and did not offer the possibility of substantial overtime work at a rate of 1.5 times his hourly rate up to 50 hours per week and double time pay over 50 hours per week.

21. The Machine Operator job was to be temporary until a Service Technician position opened that Mr. Taylor could bid for.

22. In January 2020, after the approximately three week-long Machine Operator training, Mr. Taylor was dispatched to jobs, accompanied by an experienced Machine Operator, "D", who was there to help him, and give on the job training/direction as needed.

23. Mr. Taylor began to receive efficiency, dispatch efficiency, and quality scores on each job.

24. In March 2020, Mr. Taylor began to be dispatched on his own.

25. Also in March 2020, COVID-19 escalated with more and more people working from home, with a high demand for internet.

26. Service Technicians were responsible for running internet cable.

27. Mr. Taylor's second level supervisor, Amber Johnson, asked Mr. Taylor to move back to the Service Technician role on an emergency basis and Mr. Taylor told Ms. Johnson that he was interested.

28. Robert Vaughn (Caucasian), Mr. Taylor's direct supervisor, learned of Ms. Johnson's request and falsely told Ms. Johnson that the Union would not allow Mr. Taylor to move to the Service Technician role.

29. Mr. Vaughn is not a Union representative and has no authority to speak on behalf of the Union.

30. Mr. Taylor told Mr. Vaughn he wanted and needed the Service Technician position because of the increase in pay associated with the position.

31. Mr. Vaughn denied the reassignment.

32. Mr. Taylor called BellSouth's ethics hotline to report that Mr. Vaughn spoke on behalf of the Union, which is a violation of the collective bargaining agreement, thereby preventing Mr. Taylor form being reassigned as a Service Technician.

33. As a Machine Operator in 2020, Mr. Taylor had certain metrics to meet: efficiency, dispatch efficiency, and quality.

34. Efficiency and dispatch efficiency are quantitative measurements; however, quality is subjective.

35. Mr. Vaughn, several times each month, put comments in Mr. Taylor's file without telling Mr. Taylor as required by Bellsouth policy and the collective bargaining agreement.

36. BellSouth's policy and the collective bargaining agreement call for the employee to be told anytime a comment is put into his file so that the employee can grieve the discipline.

37. If the employee does not improve on the issue, the comment is formalized, and the employee is given a write up.

38. Mr. Taylor was not made aware of any comments Mr. Vaughn was tainting his file with and was never issued a write-up for the alleged repeated violations.

39. When Mr. Taylor was given his 2020 performance review he was surprised to learn that he did not pass his review because he failed to meet two out of the three metrics.

40. Mr. Taylor was not able to meet the efficiency mark because Mr.

Vaughn refused to allow Mr. Taylor to use a Zahn, a riding machine, instead of the 410 Ditch Witch, that had to be pushed.

41. The slower machine prevented Mr. Taylor from passing the efficiency metric.

42. Mr. Vaughn let the newer employees, with less seniority use the Zahn instead of Mr. Taylor.

43. During his review, Mr. Taylor also became aware of the negative quality comments Mr. Vaughn had been putting in his file which prevented him from passing the quality metric.

44. After receiving his performance review, Mr. Taylor again called the ethics line and complained about Mr. Vaughn.

45. Mr. Taylor complained that Mr. Vaughn was putting comments about quality issues in the files of the Black employees and was not doing it to the Caucasian employees.

46. In approximately August 2021, Mr. Vaughn and Mr. Rush visited a customer's home to investigate damage that occurred during a service call.

47. During the visit, the customer, a Black woman, described damage that had been done by three Mexican males who drove a Ditch Witch across her yard a damaged a pipe.

48. Mr. Vaughn told the Black woman that AT&T does not hire Mexicans.

49. When Mr. Taylor and Steve went on a follow up call to this customer's home the next day, she complained about Mr. Vaughn's discriminatory remark about the Mexicans and provided a Ring video evidencing the comments.

50. Steve provided the discriminatory video to the Office of the President of AT&T and confirmed that Mr. Taylor had also seen the video footage and was a witness to the customer's complaint.

51. In January 2022, a Service Technician position opened in Douglasville, Georgia.

52. BellSouth's policy and the collective bargaining agreement state that an employee that has gone through a layoff can come back to the same position, in the same area, within five years, and have the first priority of all seniority, for the position.

53. Mr. Taylor put in a bid for the Service Technician position in Douglasville and contractually should have been given the reassignment.

54. Mr. Taylor's new supervisor as of February 2021, Don Rush, was contacted by staffing and asked to remove Mr. Vaughn's quality comments from Mr. Taylor's file so he would pass two of the three metrics and be reassigned to Service Technician.

55. Mr. Rush claimed he did not know how to remove the comments, despite having previously done it for another employee, Brandon Lupoe.

56. Mr. Taylor passed two out of three metrics on his 2021 performance review and should have been given the Service Technician position based on his seniority.

57. Mr. Rush did not sign Mr. Taylor's review until February 2022, and at that time, the Service Technician position had already been given to Michael McCauley, a Caucasian male.

## COUNT I
## Discrimination in Violation of Title VII

58. Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

59. Bellsouth discriminated against Mr. Taylor in work assignments, including failing to reassign him to a Service Technician position in January 2022, and instead assigned the Service Technician position to Michael McCauley, a Caucasian male with less seniority.

60. Bellsouth also papered Mr. Taylor's file and assigned him inferior work equipment in violation of Bellsouth's policies and the collective bargaining agreement because of his race.

61. Bellsouth's stated reasons for its adverse actions against Mr. Taylor are pretext for race discrimination.

62. Bellsouth's discriminatory treatment of Mr. Taylor violates Title VII.

63. Bellsouth willfully and wantonly disregarded Mr. Taylor's rights under Title VII and acted in reckless disregard for Mr. Taylor's rights under Title VII.

64. Bellsouth's discriminatory actions against Mr. Taylor were taken in bad faith.

65. As a result of Bellsouth's discriminatory treatment of Mr. Taylor, Mr. Taylor has suffered lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

66. Pursuant to Title VII, Mr. Taylor is entitled to damages including, back pay and lost benefits, front pay and/or assignment to the Service Technician, compensatory damages, punitive damages, attorney's fees and costs of litigation, and all other relief recoverable under Title VII.

## COUNT II
### Discrimination in Violation of 42 U.S.C. § 1981

67. Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

68. Bellsouth discriminated against Mr. Taylor in work assignments including failing to reassign him to a Service Technician position in 2020 and failing

to reassign him to a Service Technician position in January 2022 and instead assigning the Service Technician position to Michael McCauley, a Caucasian male with less seniority.

69. Bellsouth also papered Mr. Taylor's file and assigned him inferior work equipment in violation of Bellsouth's policies and the collective bargaining agreement because of his race.

70. Bellsouth's stated reasons for its adverse actions against Mr. Taylor are pretext for race discrimination.

71. Bellsouth's discriminatory treatment of Mr. Taylor violated 42 U.S.C. § 1981.

72. Bellsouth willfully and wantonly disregarded Mr. Taylor's rights under Section 1981 and acted in reckless disregard for Mr. Taylor's rights under Section 1981.

73. Bellsouth's discriminatory actions against Mr. Taylor were taken in bad faith.

74. As a result of Bellsouth's discriminatory treatment of Mr. Taylor, Mr. Taylor has suffered lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

75. Pursuant to Section 1981, Mr. Taylor is entitled to damages including,

back pay and lost benefits, front pay and/or reassignment to a Service Technician position, compensatory damages, punitive damages, attorney's fees and costs of litigation pursuant to 42 U.S.C. § 1988, and all other relief recoverable under Section 1981.

## COUNT III
### Retaliation in Violation of 42 U.S.C. § 1981

76. Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

77. Mr. Taylor engaged in protected activity under § 1981 by making internal complaints to Bellsouth alleging race discrimination.

78. Bellsouth's actions, in subjecting Mr. Taylor to retaliation for engaging in protected activity by complaining of, and opposing, race discrimination, constitute unlawful intentional retaliation in violation of § 1981.

79. Bellsouth willfully and wantonly disregarded Mr. Taylor's rights, and Bellsouth's retaliation against Mr. Taylor was undertaken in bad faith.

80. As a result of Bellsouth's unlawful actions, Mr. Taylor has suffered lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

81. Pursuant to § 1981, Mr. Taylor is entitled to damages, including back pay and lost benefits, front pay and/or reassignment to a Service Technician position,

compensatory damages, punitive damages, attorney's fees and costs of litigation pursuant to 42 U.S.C. § 1988, and all other relief recoverable under Section 1981.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands a TRIAL BY JURY and that the following relief be granted:

(a)  A declaration that Defendant has violated the rights of Mr. Taylor under the federal statutes listed above;

(b)  A permanent injunction against Defendant enjoining Defendant from further violations of the federal statutes listed above;

(c)  Judgment in Mr. Taylor's favor and against Defendant under all counts of this Complaint;

(d)  An order that Defendant make Mr. Taylor whole by providing for his out-of-pocket losses as well as back pay in an amount equal to the sum of any wages, salary, employment benefits or other compensation denied or lost as a result of Defendant's unlawful and discriminatory acts, taking into account all raises to which Mr. Taylor would have been entitled, together with interest thereon, all in an amount to be proven at trial;

(e)  Order that Mr. Taylor be reassigned to the Service Technician position or, in the alternative, be awarded front pay;

(f)     Grant to Mr. Taylor compensatory damages, in an amount to be determined by the enlightened conscience of the jury, for Mr. Taylor's emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life and special damages;

(g)     Grant to Mr. Taylor punitive damages in an amount to be determined by the enlightened conscience of the jury to be sufficient to punish Defendant for its conduct toward Mr. Taylor and deter Defendant from similar conduct in the future for Defendant's willful and intentional violations of federal law;

(h)     Grant to Mr. Taylor a trial by jury on all issues so triable;

(i)     Grant to Mr. Taylor his reasonable attorney's fees and reasonable expert witness fees together with any and all other costs associated with this action; and

(j)     Grant such additional monetary and equitable relief as the Court deems proper and just.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

Respectfully submitted this 8th day of May 2023

**LEGARE, ATTWOOD & WOLFE, LLC**

 **Cheryl B. Legare**
Georgia Bar No. 038553
cblegare@law-llc.com

125 Clairemont Ave, Suite 380
Decatur, Georgia 30030
Tel: (470) 823-4000
Fax: (470) 201-1212
Counsel for Plaintiff