**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**

| | |
|---|---|
| **KHADIJAH Z. ARTIS**, on behalf of herself and all others similarly situated, | Case No. |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| **NEXTGEN HEALTHCARE, INC.,** | |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiff Khadijah Artis ("Plaintiff"), individually and on behalf of all similarly situated persons, alleges the following against NextGen Healthcare, Inc. ("NextGen" or "Defendant") based upon personal knowledge with respect to herself and on information and belief derived from, among other things, investigation by her counsel and review of public documents as to all other matters:

## I.      INTRODUCTION

1.      Plaintiff brings this class action against NextGen for its failure to properly secure and safeguard Plaintiff's and other similarly situated patients' personally identifiable information ("PII"), including names, dates of birth, Social Security numbers, and addresses (the "Private Information"), from criminal hackers.

2.      NextGen, founded in 1974 and based in Atlanta, Georgia, is a software and services company that serves numerous healthcare entities across the country.

1

3.      Based on the Notice filed by Defendant and sent to impacted patients, it was alerted to suspicious activity on its systems on or around March 30, and later determined that cybercriminals had accessed its systems between March 29 and April 14, 2023 (the "Data Breach"). Notably, NextGen was also the victim of a separate ransomware attack in January of 2023, yet it failed to adequately enhance its data security practices following this earlier breach, thus opening the door for this subsequent attack on its systems.

4.      Plaintiff and "Class Members" (defined below) were, and continue to be, at significant risk of identity theft and various other forms of personal, social, and financial harm. The risk will remain for their respective lifetimes.

5.      The Private Information compromised in the Data Breach contained highly sensitive patient data, representing a gold mine for data thieves. The data included, but is not limited to, the names, dates of birth, addresses, and Social Security numbers of roughly 1.05 million patients that NextGen collected and maintained.

6.      Armed with the Private Information accessed in the Data Breach, data thieves can commit a variety of crimes including, *e.g.*, opening new financial accounts in Class Members' names, taking out loans in Class Members' names, using Class Members' names to obtain medical services, using Class Members' information to obtain government benefits, filing fraudulent tax returns using Class Members' information, obtaining driver's licenses in Class Members' names but with another person's photograph, and giving false information to police during an arrest.

7.      There has been no assurance offered by NextGen that all personal data or copies of data have been recovered or destroyed, or that Defendant has adequately enhanced its data security practices sufficient to avoid a similar breach of its network in the future, especially considering NextGen's very recent history of now multiple data breaches impacting its network and systems.

8.     Therefore, Plaintiff and Class Members have suffered and are at an imminent, immediate, and continuing increased risk of suffering, ascertainable losses in the form of identity theft and other fraudulent misuse of their Private Information, out-of-pocket expenses incurred to remedy or mitigate the effects of the Data Breach, and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach.

9.     Plaintiff brings this class action lawsuit to address NextGen's inadequate safeguarding of Class Members' Private Information that it collected and maintained.

10.    The potential for improper disclosure and theft of Plaintiff's and Class Members' Private Information was a known risk to NextGen, and thus NextGen was on notice that failing to take necessary steps to secure the Private Information left it vulnerable to an attack.

11.    Upon information and belief, NextGen failed to properly monitor and properly implement security practices with regard to its computer network and systems that housed the Private Information. Had NextGen properly monitored its networks, it would have been able to prevent the Data Breach and/or discover and mitigate the impacts of the Data Breach sooner.

12.    Plaintiff's and Class Members' identities are now at risk because of NextGen's negligent conduct as the Private Information that NextGen collected and maintained is now in the hands of data thieves and other unauthorized third parties.

13.    Plaintiff seeks to remedy these harms on behalf of herself and all similarly situated individuals whose Private Information was accessed and/or compromised during the Data Breach.

14.    Accordingly, Plaintiff, on behalf of herself and the Class, asserts claims for negligence, negligence *per se*, breach of third-party beneficiary contract, bailment, breach of confidence, unjust enrichment, and declaratory/injunctive relief.

## II.   **PARTIES**

15.   Plaintiff Artis, is, and at all times mentioned herein was, an individual citizen of the State of Oklahoma.

16.   Defendant NextGen's headquarters are located at 3525 Piedmont Road NE, Building 6, Suite 700, Atlanta, Georgia, in Fulton County.

## III.   **JURISDICTION AND VENUE**

17.   The Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Upon information and belief, the number of class members is over 100, many of whom have different citizenship from NextGen. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

18.   This Court has jurisdiction over NextGen because NextGen operates in and/or maintains its principal place of business within this District.

19.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events giving rise to this action occurred in this District and NextGen has harmed Class Members residing in this District.

## IV.   **FACTUAL ALLEGATIONS**

### A. *NextGen's Business and Collection of Plaintiff's and Class Members' Private Information*

20.   NextGen is a U.S.-based provider of electronic health record software. Founded in 1974, NextGen is headquartered in Atlanta, Georgia and serves healthcare entities across the United States.

21.   NextGen employs more than 2,800 people and generates approximately $625 million in annual revenue.

4

22.     As a condition of receiving NextGen's services, NextGen requires that its customers turn over their patients' highly sensitive personal and health information.

23.     In its Privacy Policy, NextGen promises that its customers' patients' data will be protected from unauthorized disclosure. Specifically, NextGen states that it will only disclose patient information as is necessary to "[c]omply with applicable law and regulations," "[p]erform under and enforce the terms and conditions under which [its] products and services are provided," "protect [its] rights, reputation, and property…," "[s]upport [its] auditing, compliance and corporate governance functions," and "[t]ransfer or assign the information that [it has] collected from users in connection with a corporate transaction…"[1]

24.     Thus, because of the highly sensitive and personal nature of the information NextGen acquires and stores with respect to its patients, NextGen, promises to, among other things: keep patients' Private Information private; comply with industry standards related to data security and the maintenance of its patients' Private Information; inform its patients of its legal duties relating to data security and comply with all federal and state laws protecting patients' Private Information; only use and release patients' Private Information for reasons that relate to the services it provides; and provide adequate notice to patients if their Private Information is disclosed without authorization.

25.     By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' Private Information, NextGen assumed legal and equitable duties it owed to them and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' Private Information from unauthorized disclosure and exfiltration.

---

[1] *See* https://www.nextgen.com/privacy-policy (last visited on May 8, 2023).

26.     Plaintiff and Class Members relied on NextGen to keep their Private Information confidential and securely maintained and to only make authorized disclosures of this Information, which it ultimately failed to do.

**B. *The Data Breach and Defendant's Inadequate Notice to Plaintiff and Class Members***

27.     According to Defendant's Notice, it learned of unauthorized access to its computer systems on or around March 30, yet the unauthorized access continued through mid-April.

28.     Through the Data Breach, the unauthorized cybercriminal(s) accessed and exfiltrated a cache of highly sensitive Private Information, including Plaintiff's and Class Members' Social Security numbers.

29.     Other than providing only two years of free credit monitoring that Plaintiff and Class Members would have to affirmatively sign up for, along with a call center number that victims could contact with questions, NextGen offered no other substantive assistance to victims like Plaintiff and Class Members to protect themselves. On information and belief, NextGen sent a similar generic letter to all other individuals affected by the Data Breach.

30.     NextGen had obligations created by contract, industry standards, common law, and representations made to Plaintiff and Class Members through its Privacy Policy on its Website to keep Plaintiff's and Class Members' Private Information confidential and to protect it from unauthorized access and disclosure.

31.     Plaintiff and Class Members provided their Private Information to NextGen's customers with the reasonable expectation and mutual understanding that NextGen would comply with its obligations to keep such Information confidential and secure from unauthorized access and to provide timely notice of any security breaches.

32.     NextGen's data security obligations were particularly important given the substantial increase in cyberattacks on the healthcare industry in recent years.

33.     NextGen knew or should have known that its electronic records would be targeted by cybercriminals.

### C. The Healthcare Sector is Particularly Susceptible to Data Breaches

34.     NextGen was on notice that companies in the healthcare industry are susceptible targets for data breaches.

35.     NextGen was also on notice that the FBI has been concerned about data security in the healthcare industry. In August 2014, after a cyberattack on Community Health Systems, Inc., the FBI warned companies within the healthcare industry that hackers were targeting them. The warning stated that "[t]he FBI has observed malicious actors targeting healthcare related systems, perhaps for the purpose of obtaining the Protected Healthcare Information (PHI) and/or Personally Identifiable Information (PHI)."[2]

36.     The healthcare sector reported the second largest number of data breaches among all measured sectors in 2018, with the highest rate of exposure per breach.[3] In 2022, the largest growth in compromises occurred in the healthcare sector.[4]

37.     Indeed, when compromised, healthcare related data is among the most sensitive and personally consequential. A report focusing on healthcare breaches found that the "average total

---

[2] Jim Finkle, *FBI Warns Healthcare Firms that they are Targeted by Hackers*, Reuters (Aug. 2014), *available at* https://www.reuters.com/article/us-cybersecurity-healthcare-fbi/fbi-warns-healthcare-firms-they-are-targeted-by-hackers-idUSKBN0GK24U20140820 (last visited on May 8, 2023).

[3] Identity Theft Resource Center, *2018 End-of-Year Data Breach Report, available at*: https://www.idtheftcenter.org/2018-data-breaches/ (last visited on May 8, 2023).

[4] Identity Theft Resource Center, *2022 End-of-Yeare Data Breach Report, available at*: https://www.idtheftcenter.org/wp-content/uploads/2023/01/ITRC_2022-Data-Breach-Report_Final-1.pdf (last visited on May 8, 2023).

cost to resolve an identity theft-related incident … came to about $20,000," and that the victims were often forced to pay out-of-pocket costs for healthcare they did not receive in order to restore coverage.[5]

38.    Almost 50 percent of the victims lost their healthcare coverage as a result of the incident, while nearly 30 percent said their insurance premiums went up after the event. Forty percent of the customers were never able to resolve their identity theft at all. Data breaches and identity theft have a crippling effect on individuals and detrimentally impact the economy as a whole.[6]

39.    Healthcare related breaches have continued to rapidly increase because electronic patient data is seen as a valuable asset. "Hospitals have emerged as a primary target because they sit on a gold mine of sensitive personally identifiable information for thousands of patients at any given time. From social security and insurance policies, to next of kin and credit cards, no other organization, including credit bureaus, have so much monetizable information stored in their data centers."[7]

40.    As a provider of electronic health record software for healthcare entities, NextGen knew, or should have known, the importance of safeguarding patient Private Information entrusted to it, and of the foreseeable consequences if such data were to be disclosed. These consequences include the significant costs that would be imposed on NextGen's customers' patients as a result

---

[5] Elinor Mills, *Study: Medical identity theft is costly for victims*, CNET (March 3, 2010), *available at:* https://www.cnet.com/news/privacy/study-medical-identity-theft-is-costly-for-victims/ (last visited on May 8, 2023).

[6] *Id.*

[7] Inside Digital Health, *How to Safeguard Hospital Data from Email Spoofing Attacks*, April 4, 2019, *available at*: https://www.chiefhealthcareexecutive.com/view/how-to-safeguard-hospital-data-from-email-spoofing-attacks (last visited on May 8, 2023).

of a breach. NextGen failed, however, to take adequate cybersecurity measures to prevent the Data

Breach from occurring.

### D. NextGen Failed to Comply with FTC Guidelines

41.     The Federal Trade Commission ("FTC") has promulgated numerous guides for

businesses which highlight the importance of implementing reasonable data security practices.

According to the FTC, the need for data security should be factored into all business decision

making. Indeed, the FTC has concluded that a company's failure to maintain reasonable and

appropriate data security for consumers' sensitive personal information is an "unfair practice" in

violation of Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. *See, e.g.,*

*FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

42.     In October 2016, the FTC updated its publication, *Protecting Personal*

*Information: A Guide for Business*, which established cybersecurity guidelines for businesses. The

guidelines note that businesses should protect the personal customer information that they keep,

properly dispose of personal information that is no longer needed, encrypt information stored on

computer networks, understand their network's vulnerabilities, and implement policies to correct

any security problems. The guidelines also recommend that businesses use an intrusion detection

system to expose a breach as soon as it occurs, monitor all incoming traffic for activity indicating

someone is attempting to hack into the system, watch for large amounts of data being transmitted

from the system, and have a response plan ready in the event of a breach.

43.     The FTC further recommends that companies not maintain PII longer than is

needed for authorization of a transaction, limit access to sensitive data, require complex passwords

to be used on networks, use industry-tested methods for security, monitor the network for

suspicious activity, and verify that third-party service providers have implemented reasonable security measures.

44.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data by treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by the FTCA. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

45.     As evidenced by the Data Breach, NextGen failed to properly implement basic data security practices. Even more egregious is that it failed to do so following the January 2023 ransomware attack that impacted its systems and network. NextGen's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and Class Members' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA.

46.     NextGen was at all times fully aware of its obligation to protect the Private Information of its customers' patients yet failed to comply with such obligations. Defendant was also aware of the significant repercussions that would result from its failure to do so.

### E. NextGen Failed to Comply with Industry Standards

47.     As noted above, experts studying cybersecurity routinely identify businesses within the healthcare sector as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

48.     Some industry best practices that should be implemented by businesses within the healthcare sector dealing with sensitive patient PII like NextGen include but are not limited to: educating all employees, implementing strong password requirements, implementing multilayer security including firewalls, implementing anti-virus and anti-malware software, encrypting all

sensitive data, implementing multi-factor authentication, backing up data, and limiting which employees can access sensitive data. As evidenced by the Data Breach, Defendant failed to follow some or all of these industry best practices.

49.     Other best cybersecurity practices that are standard in the industry include installing appropriate malware detection software; monitoring and limiting network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protecting physical security systems; and training staff regarding these points. As evidenced by the Data Breach, Defendant also failed to follow these cybersecurity best practices.

50.     Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

51.     Defendant failed to comply with these accepted standards, thereby permitting the Data Breach to occur.

### F. NextGen *Breached its Duty to Safeguard Plaintiff's and Class Members' Private Information*

52.     In addition to its obligations under federal and state laws and industry standards, NextGen owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. NextGen owed a duty to its customers and Plaintiff and Class Members to provide reasonable data security,

11

including consistency with industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected the Private Information of Class Members

53.     NextGen breached these obligations and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer systems and data. NextGen's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

a.     Failing to maintain an adequate data security system that would reduce the risk of data breaches and cyberattacks;

b.     Failing to adequately protect patients' Private Information;

c.     Failing to properly monitor its own data security systems for existing intrusions;

d.     Failing to sufficiently train its employees regarding the proper handling of its patients Private Information;

e.     Failing to fully comply with FTC guidelines for cybersecurity in violation of the FTCA; and

f.     Otherwise breaching its duties and obligations to protect Plaintiff's and Class Members' Private Information.

54.     NextGen negligently and unlawfully failed to safeguard Plaintiff's and Class Members' Private Information by allowing cyberthieves to access its computer network and systems which contained unsecured and unencrypted Private Information.

55.     Had NextGen remedied the deficiencies in its information storage and security systems, followed industry guidelines, and adopted security measures recommended by experts in the field, it could have prevented intrusion into its information storage and security systems and, ultimately, the theft of Plaintiff's and Class Members' confidential Private Information.

56.     Accordingly, Plaintiff's and Class Members' lives have been severely disrupted by the Data Breach and now face current harms and an increased risk of future harms that include, but are not limited to, fraud and identity theft.

### G. NextGen Should Have Known that Cybercriminals Target PII to Carry Out Fraud and Identity Theft

57.     The FTC hosted a workshop to discuss "informational injuries," which are injuries that consumers like Plaintiff and Class Members suffer from privacy and security incidents such as data breaches or unauthorized disclosure of data.[8] Exposure of highly sensitive personal information that a consumer wishes to keep private may cause harm to the consumer, such as the ability to obtain or keep employment. Consumers' loss of trust in e-commerce also deprives them of the benefits provided by the full range of goods and services available which can have negative impacts on daily life.

58.     Any victim of a data breach is exposed to serious ramifications regardless of the nature of the data that was breached. Indeed, the reason why criminals steal information is to monetize it. They do this by selling the spoils of their cyberattacks on the black market to identity thieves who desire to extort and harass victims or to take over victims' identities in order to engage in illegal financial transactions under the victims' names.

59.     Because a person's identity is akin to a puzzle, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity or to otherwise harass or track the victim. For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more

---

[8] *FTC Information Injury Workshop, BE and BCP Staff Perspective,* Federal Trade Commission, (October 2018), *available at* https://www.ftc.gov/system/files/documents/reports/ftc-informational-injury-workshop-be-bcp-staff-perspective/informational_injury_workshop_staff_report_-_oct_2018_0.pdf (last visited on May 8, 2023).

information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails.

60.     In fact, as technology advances, computer programs may scan the Internet with a wider scope to create a mosaic of information that may be used to link compromised information to an individual in ways that were not previously possible. This is known as the "mosaic effect." Names and dates of birth, combined with contact information like telephone numbers and email addresses, are very valuable to hackers and identity thieves as it allows them to access users' other accounts.

61.     Thus, even if certain information was not purportedly involved in the Data Breach, the unauthorized parties could use Plaintiff's and Class Members' Private Information to access accounts, including, but not limited to, email accounts and financial accounts, to engage in a wide variety of fraudulent activity against Plaintiff and Class Members.

62.     For these reasons, the FTC recommends that identity theft victims take several time-consuming steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert on their account (and an extended fraud alert that lasts for 7 years if someone steals the victim's identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a freeze on their credit, and correcting their credit reports.[9] However, these steps do not guarantee protection from identity theft but can only mitigate identity theft's long-lasting negative impacts.

---

[9] *See IdentityTheft.gov,* Federal Trade Commission, *available at* https://www.identitytheft.gov/Steps (last visited May 8, 2023).

63.     Identity thieves can also use stolen personal information, such as Social Security numbers, for a variety of crimes, including credit card fraud, phone or utilities fraud, bank fraud, to obtain a driver's license or official identification card in the victim's name but with the thief's picture, to obtain government benefits, or to file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's Social Security number, rent a house in the victim's name, receive medical services in the victim's name, and even give the victim's personal information to police during an arrest resulting in an arrest warrant being issued in the victim's name.

64.     In fact, a study by the Identity Theft Resource Center[10] shows the multitude of harms caused by fraudulent use of PII:



---

[10] Steele, Jason, *Credit Card and ID Theft Statistics*, CreditCards.com (October 23, 2017), *available at* https://www.creditcards.com/credit-card-news/credit-card-security-id-theft-fraud-statistics-1276/ (last visited on May 8, 2023).

65.     The ramifications of NextGen's failure to keep its customers' patients' Private Information secure are long lasting and severe. Once it is stolen, fraudulent use of such and resulting damage to victims may continue for years.

66.     It must also be noted that there may be a substantial time lag between when harm occurs and when it is discovered, and also between when PII is stolen and when it is misused. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:[11]

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

67.     PII is a valuable commodity to identity thieves. Once the information has been compromised, criminals often trade the information on the dark web for years.

68.     As a result, Plaintiff and Class Members are at an increased risk of fraud and identity theft, including medical identity theft, for many years into the future. Thus, Plaintiff and Class Members have no choice but to vigilantly monitor their accounts for many years to come.

### H. Plaintiff's and Class Members' Damages

69.     Plaintiff and Class Members have been damaged by the compromise of their Private Information in the Data Breach.

70.     Plaintiff and Class Members entrusted their Private Information to Defendants' clients in order to receive healthcare services.

---

[11] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO (June 2007), *available at* https://www.gao.gov/assets/270/262904.html (last visited May 8, 2023).

71.     Plaintiff's Private Information was subsequently compromised as a direct and proximate result of the Data Breach, which Data Breach resulted from Defendant's inadequate data security practices.

72.     As a direct and proximate result of NextGen's actions and omissions, Plaintiff and Class Members have been harmed and are at an imminent, immediate, and continuing increased risk of harm, including but not limited to, having medical services billed in their names, loans opened in their names, tax returns filed in their names, utility bills opened in their names, credit card accounts opened in their names, and other forms of identity theft.

73.     Further, as a direct and proximate result of NextGen's conduct, Plaintiff and Class Members have been forced to spend time dealing with the effects of the Data Breach.

74.     Plaintiff and Class Members also face a substantial risk of being targeted in future phishing, data intrusion, and other illegal schemes through the misuse of their Private Information, since potential fraudsters will likely use such Private Information to carry out such targeted schemes against Plaintiff and Class Members.

75.     The Private Information maintained by and stolen from Defendant's systems, combined with publicly available information, allows nefarious actors to assemble a detailed mosaic of Plaintiff and Class Members, which can also be used to carry out targeted fraudulent schemes against Plaintiff and Class Members.

76.     Additionally, Plaintiff and Class Members have spent and will continue to spend significant amounts of time to monitor their accounts and records including, *e.g.*, medical records and explanations of benefits, for misuse.

77.     Finally, Plaintiff and Class Members have suffered or will suffer actual injury as a direct and proximate result of the Data Breach in the form of out-of-pocket expenses and the value

of their time reasonably incurred to remedy or mitigate the effects of the Data Breach. These losses include, but are not limited to, the following:

    a.   Monitoring for and discovering fraudulent charges;

    b.   Canceling and reissuing credit and debit cards;

    c.   Purchasing credit monitoring and identity theft prevention;

    d.   Addressing their inability to withdraw funds linked to compromised accounts;

    e.   Taking trips to banks and waiting in line to obtain funds held in limited accounts;

    f.   Placing "freezes" and "alerts" with credit reporting agencies;

    g.   Spending time on the phone with or at a financial institution to dispute fraudulent charges;

    h.   Contacting financial institutions and closing or modifying financial accounts;

    i.   Resetting automatic billing and payment instructions from compromised credit and debit cards to new ones;

    j.   Paying late fees and declined payment fees imposed as a result of failed automatic payments that were tied to compromised cards that had to be cancelled; and

    k.   Closely reviewing and monitoring bank accounts and credit reports for additional unauthorized activity for years to come.

78.    Moreover, Plaintiff and Class Members, in consideration of Defendant's recent history of data breaches, have an interest in ensuring that their Private Information, which is

believed to still be in the possession of NextGen, is protected from future breaches by the implementation of adequate data security measures and safeguards, including but not limited to, ensuring that the storage of data or documents containing highly sensitive personal and health information of its patients is not accessible online, that access to such data is password-protected, and that such data is properly encrypted.

79.     As a direct and proximate result of NextGen's actions and inactions, Plaintiff and Class Members have suffered a loss of privacy and have suffered cognizable harm, including an imminent and substantial future risk of harm, in the forms set forth above.

## V.     CLASS ACTION ALLEGATIONS

80.     Plaintiff brings this action individually and on behalf of all other persons similar situated, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(1), 23(b)(2), and 23(b)(3).

81.     Specifically, Plaintiff proposes the following Nationwide Class (also referred to herein as the "Class"), subject to amendment as appropriate:

> **Nationwide Class**
>
> All individuals in the United States who had Private Information stolen as a result of the Data Breach, including all who were sent a notice of the Data Breach.

82.     Excluded from the Class are Defendant and its parents or subsidiaries, any entities in which it has a controlling interest, as well as its officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns. Also excluded is any Judge to whom this case is assigned as well as their judicial staff and immediate family members.

83.     Plaintiff reserves the right to modify or amend the definitions of the proposed Nationwide Class and/or add subclasses before the Court determines whether certification is appropriate.

84.     The proposed Class meets the criteria for certification under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

85.     <u>Numerosity</u>. The Class Members are so numerous that joinder of all members is impracticable. Though the exact number and identities of Class Members are unknown at this time, based on information and belief, the Class consists of over 1 million patients of NextGen clients whose data was compromised in the Data Breach. The identities of Class Members are ascertainable through NextGen's records, Class Members' records, publication notice, self-identification, and other means.

86.     <u>Commonality</u>. There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

> a.  Whether NextGen engaged in the conduct alleged herein;
>
> b.  Whether NextGen's conduct violated the FTCA;
>
> c.  When NextGen learned of the Data Breach;
>
> d.  Whether NextGen's response to the Data Breach was adequate;
>
> e.  Whether NextGen unlawfully lost or disclosed Plaintiff's and Class Members' Private Information;
>
> f.  Whether NextGen failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the Private Information compromised in the Data Breach;
>
> g.  Whether NextGen's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

h. Whether NextGen's data security systems prior to and during the Data Breach were consistent with industry standards;

i. Whether NextGen owed a duty to Class Members to safeguard their Private Information;

j. Whether NextGen breached its duty to Class Members to safeguard their Private Information;

k. Whether hackers obtained Class Members' Private Information via the Data Breach;

l. Whether NextGen had a legal duty to provide timely and accurate notice of the Data Breach to Plaintiff and the Class Members;

m. Whether NextGen breached its duty to provide timely and accurate notice of the Data Breach to Plaintiff and Class Members;

n. Whether NextGen knew or should have known that its data security systems and monitoring processes were deficient;

o. What damages Plaintiff and Class Members suffered as a result of NextGen's misconduct;

p. Whether NextGen's conduct was negligent;

q. Whether NextGen's conduct was *per se* negligent;

r. Whether NextGen was unjustly enriched;

s. Whether Plaintiff and Class Members are entitled to actual and/or statutory damages;

t. Whether Plaintiff and Class Members are entitled to additional credit or identity monitoring and monetary relief; and

u. Whether Plaintiff and Class Members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

87.   <u>Typicality</u>. Plaintiff's claims are typical of those of other Class Members because Plaintiff's Private Information, like that of every other Class Member, was compromised in the Data Breach. Plaintiff's claims are typical of those of the other Class Members because, *inter alia*, all Class Members were injured through the common misconduct of NextGen. Plaintiff is advancing the same claims and legal theories on behalf of herself and all other Class Members, and there are no defenses that are unique to Plaintiff. The claims of Plaintiff and those of Class Members arise from the same operative facts and are based on the same legal theories.

88.   <u>Adequacy of Representation</u>. Plaintiff will fairly and adequately represent and protect the interests of Class Members. Plaintiff's counsel is competent and experienced in litigating class actions, including data privacy litigation of this kind.

89.   <u>Predominance</u>. NextGen has engaged in a common course of conduct toward Plaintiff and Class Members in that all of Plaintiff's and Class Members' data was stored on the same computer systems and unlawfully accessed and exfiltrated in the same way. The common issues arising from NextGen's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

90.   <u>Superiority</u>. A Class action is superior to other available methods for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a Class action, most Class

Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for NextGen. In contrast, conducting this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

91.     Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2). NextGen has acted and/or refused to act on grounds generally applicable to the Class such that final injunctive relief and/or corresponding declaratory relief is appropriate to the Class as a whole.

92.     Finally, all members of the proposed Class are readily ascertainable. NextGen has access to the names and addresses and/or email addresses of Class Members affected by the Data Breach. Class Members have already been preliminarily identified and sent notice of the Data Breach by NextGen.

## CLAIMS FOR RELIEF

### COUNT I
### NEGLIGENCE
### (ON BEHALF OF PLAINTIFF AND THE NATIONWIDE CLASS)

93.     Plaintiff restates and realleges all of the allegations stated above and hereafter as if fully set forth herein.

94.     NextGen knowingly collected, came into possession of, and maintained Plaintiff's and Class Members' Private Information, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such Information from being disclosed, compromised, lost, stolen, and misused by unauthorized parties.

95.     NextGen knew or should have known of the risks inherent in collecting the Private Information of Plaintiff and Class Members and the importance of adequate security. NextGen was on notice because, on information and belief, it knew or should have known that it would be an attractive target for cyberattacks.

96.     NextGen owed a duty of care to Plaintiff and Class Members whose Private Information was entrusted to it. NextGen's duties included, but were not limited to, the following:

    a. To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting Private Information in its possession;

    b. To protect patients' Private Information using reasonable and adequate security procedures and systems compliant with industry standards;

    c. To have procedures in place to prevent the loss or unauthorized dissemination of Private Information in its possession;

    d. To employ reasonable security measures and otherwise protect the Private Information of Plaintiff and Class Members pursuant to the FTCA;

    e. To implement processes to quickly detect a data breach and to timely act on warnings about data breaches; and

    f. To promptly notify Plaintiff and Class Members of the Data Breach, and to precisely disclose the type(s) of information compromised.

97.     NextGen's duty to employ reasonable data security measures arose, in part, under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

98.    NextGen's duty also arose because Defendant was bound by industry standards to protect its patients' confidential Private Information.

99.    Plaintiff and Class Members were foreseeable victims of any inadequate security practices on the part of Defendant, and NextGen owed them a duty of care to not subject them to an unreasonable risk of harm.

100.    NextGen, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiff's and Class Members' Private Information within NextGen's possession.

101.    NextGen, by its actions and/or omissions, breached its duty of care by failing to provide, or acting with reckless disregard for, fair, reasonable, or adequate computer systems and data security practices to safeguard the Private Information of Plaintiff and Class Members.

102.    NextGen, by its actions and/or omissions, breached its duty of care by failing to promptly identify the Data Breach and then failing to provide prompt notice of the Data Breach to the persons whose Private Information was compromised.

103.    NextGen breached its duties, and thus was negligent, by failing to use reasonable measures to protect Class Members' Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

      a.    Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

      b.    Failing to adequately monitor the security of its networks and systems;

      c.    Failing to periodically ensure that its email system maintained reasonable data security safeguards;

      d.    Allowing unauthorized access to Class Members' Private Information;

e.   Failing to comply with the FTCA; and

f.   Failing to detect in a timely manner that Class Members' Private Information had been compromised.

104.   NextGen had a special relationship with Plaintiff and Class Members. Plaintiff's and Class Members' willingness to entrust NextGen with their Private Information was predicated on the understanding that NextGen would take adequate security precautions. Moreover, only NextGen had the ability to protect its systems (and the Private Information that it stored on them) from attack.

105.   NextGen's breach of duties owed to Plaintiff and Class Members caused Plaintiff's and Class Members' Private Information to be compromised and exfiltrated,  as alleged herein.

106.   NextGen's breaches of duty also caused a substantial, imminent risk to Plaintiff and Class Members of identity theft, loss of control over their Private Information, and/or loss of time and money to monitor their accounts for fraud.

107.   As a result of NextGen's negligence in breach of its duties owed to Plaintiff and Class Members, Plaintiff and Class Members are in danger of imminent harm in that their Private Information, which is still in the possession of third parties, will be used for fraudulent purposes.

108.   NextGen also had independent duties under state laws that required it to reasonably safeguard Plaintiff's and Class Members' Private Information and promptly notify them about the Data Breach.

109.   As a direct and proximate result of NextGen's negligent conduct, Plaintiff and Class Members have suffered damages as alleged herein and are at imminent risk of further harm.

110.   The injury and harm that Plaintiff and Class Members suffered was reasonably foreseeable.

111.    Plaintiff and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

112.    In addition to monetary relief, Plaintiff and Class Members are also entitled to injunctive relief requiring NextGen to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members.

### COUNT II
### NEGLIGENCE *PER SE*
### (ON BEHALF OF PLAINTIFF AND THE NATIONWIDE CLASS)

113.    Plaintiff restates and realleges the allegations in paragraphs 1 to 92 as if fully set forth herein.

114.    Pursuant to Section 5 of the FTCA, NextGen had a duty to provide fair and adequate computer systems and data security to safeguard the Private Information of Plaintiff and Class Members.

115.    NextGen breached its duties to Plaintiff and Class Members under the FTCA by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information.

116.    Specifically, NextGen breached its duties by failing to employ industry-standard cybersecurity measures in order to comply with the FTCA, including but not limited to proper segregation, access controls, password protection, encryption, intrusion detection, secure destruction of unnecessary data, and penetration testing.

117.    The FTCA prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice of failing to use reasonable measures to protect PII (such as the Private Information compromised in the Data Breach). The FTC rulings

and publications described above, and the industry-standard cybersecurity measures also set forth above form part of the basis of NextGen's duty in this regard.

118.   It was reasonably foreseeable, particularly given the growing number of data breaches of Private Information within the healthcare industry, that the failure to reasonably protect and secure Plaintiff's and Class Members' Private Information in compliance with applicable laws would result in an unauthorized third-party gaining access to NextGen's networks, databases, and computers that stored Plaintiff's and Class Members' unencrypted Private Information.

119.   Plaintiff and Class Members are within the class of persons that the FTCA is intended to protect and NextGen's failure to comply with such constitutes negligence *per se*.

120.   Plaintiff's and Class Members' Private Information constitutes personal property that was stolen due to NextGen's negligence, resulting in harm, injury, and damages to Plaintiff and Class Members.

121.   As a direct and proximate result of NextGen's negligence *per se*, Plaintiff and the Class have suffered, and continue to suffer, injuries and damages arising from the unauthorized access of their Private Information, including but not limited to damages from the compromise and exfiltration of their Private Information, as well as the lost time and effort to mitigate the actual and potential impact of the Data Breach on their lives.

122.   As a direct and proximate result of NextGen's negligent conduct, Plaintiff and Class Members have suffered injury and are entitled to compensatory and consequential damages in an amount to be proven at trial.

123.   In addition to monetary relief, Plaintiff and Class Members are also entitled to injunctive relief requiring NextGen to, *inter alia*, strengthen its data security systems and

monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members.

<u>**COUNT III**</u>
**BREACH OF THIRD-PARTY BENEFICIARY CONTRACT**
**(ON BEHALF OF PLAINTIFF AND THE NATIONWIDE CLASS)**

124.    Plaintiff restates and realleges the allegations in paragraphs 1-92 as if fully set forth herein.

125.    Upon information and belief, NextGen entered into a contract to provide services to Plaintiff's and Class Members' respective medical providers.

126.    Upon information and belief, these contracts are virtually identical to the contracts entered into between NextGen and all of its medical provider customers around the country whose patients were also affected by the Data Breach.

127.    These contracts were made expressly for the benefit of Plaintiff and the Class, as it was their Private Information that NextGen agreed to receive and protect through its services. Thus, the benefit of collection and protection of the Private Information belonging to Plaintiff and the Class was the direct and primary objective of the contracting parties.

128.    NextGen knew that if it were to breach these contracts with its customers, the customers' patients, including Plaintiff and the Class, would be harmed by, among other harms, fraudulent transactions.

129.    NextGen breached its contracts with the medical providers affected by this Data Breach when it failed to use reasonable data security measures that could have prevented the Data Breach.

130.    As foreseen, Plaintiff and the Class were harmed by NextGen's failure to use reasonable data security measures to store patient information, including but not limited to the risk of harm through the loss of their Private Information.

131.    Accordingly, Plaintiffs and the Class are entitled to damages in an amount to be determined at trial, along with their costs and attorneys' fees incurred in this action.

## COUNT IV
## BAILMENT
## (ON BEHALF OF PLAINTIFF AND THE NATIONWIDE CLASS)

132.    Plaintiff restates and realleges the allegations in paragraphs 1-92 as if fully set forth herein.

133.    NextGen acquired and was obligated to safeguard the Private Information of Plaintiff and Class Members.

134.    NextGen accepted possession and took control of Plaintiff's and Class Members' Private Information under such circumstances that the law imposes an obligation to safeguard the property of another.

135.    Specifically, a constructive bailment arises when a defendant, as is the case here, takes lawful possession of the property of another and has a duty to account for that property, without intending to appropriate it.

136.    Constructive bailments do not require an express assumption of duties, and may arise from the bare fact of the thing coming into the actual possession and control of a person fortuitously, or by mistake as to the duty or ability of the recipient to effect the purpose contemplated by the absolute owner.

137.    During the bailment, NextGen owed a duty to Plaintiff and Class Members to exercise reasonable care, diligence and prudence in protecting their Private Information.

138.    NextGen breached its duty of care by failing to take appropriate measures to safeguard and protect Plaintiff's and Class Members' Private Information, resulting in the unlawful and unauthorized access to and misuse of such Information.

139.    As a direct and proximate result of NextGen's breach of duty, Plaintiff and Class Members have suffered compensable damages that were reasonably foreseeable to Defendant, including but not limited to, the damages set forth herein.

**COUNT V**
**BREACH OF CONFIDENCE**
**(ON BEHALF OF PLAINTIFF AND THE NATIONWIDE CLASS)**

140.    Plaintiff restates and realleges the allegations in paragraphs 1-92 as if fully set forth herein.

141.    At all times during its possession and control of Plaintiff's and Class Members' Private Information, Defendant was fully aware of the confidential, novel, and sensitive nature of such Private Information provided to it.

142.    As alleged herein and above, Defendant's possession and control of Plaintiff's and Class Members' highly sensitive Private Information was governed by the expectations of Plaintiff and Class Members that their Private Information would be collected, stored, and protected in confidence, and that it would not be disclosed to unauthorized third parties.

143.    Plaintiff and Class Members provided their respective Private Information with the understanding that it would be protected and not disseminated to any unauthorized parties.

144.    Plaintiff and Class Members also provided their respective Private Information with the understanding that precautions would be taken to protect it from unauthorized disclosure, and that these precautions would at least include basic principles of information security practices.

145.    Defendant voluntarily received, in confidence, Plaintiff's and Class Members' Private Information with the understanding that the Private Information would not be disclosed or disseminated to the public or any unauthorized third parties.

146.    Due to Defendant's failure to prevent, detect, and/or avoid the Data Breach from occurring by, *inter alia*, failing to follow best information security practices to secure Plaintiff's and Class Members' Private Information, Plaintiff's and Class Members' Private Information was disclosed and misappropriated to unauthorized criminal third parties beyond Plaintiff's and Class Members' confidence, and without their express permission.

147.    But for Defendant's unauthorized disclosure of Plaintiff's and Class Members' Private Information, their Private Information would not have been compromised, stolen, viewed, accessed, and used by unauthorized third-party criminals. Defendant's Data Breach was the direct and legal cause of the theft of Plaintiff's and Class Members' Private Information, as well as the resulting damages.

148.    The injury and harm Plaintiff and Class Members suffered was the reasonably foreseeable result of Defendant's unauthorized disclosure of Plaintiff's and Class Members' Private Information. Defendant knew or should have known that its security systems were insufficient, especially in light of its January 2023 data breach which proceeded the Data Breach at issue in this Complaint, to protect the Private Information that is coveted and misused by thieves worldwide.

149.    Defendant also failed to observe industry standard information security practices.

150.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members suffered damages as alleged herein.

## COUNT VI
## UNJUST ENRICHMENT
## (ON BEHALF OF PLAINTIFF AND THE NATIONWIDE CLASS)

151.    Plaintiff restates and realleges the allegations in paragraphs 1-92 as if fully set forth herein.

152.    Plaintiff and Class Members conferred a monetary benefit on NextGen. Specifically, they provided Defendant with their Private Information.

153.    In exchange, Plaintiff and Class Members should have received from Defendant data storage that was compliant with and maintained in accordance with Defendant's pre-existing duties to secure such Information under federal law and industry standards and were entitled to have Defendant protect their Private Information with adequate security.

154.    Defendant knew that Plaintiff and Class Members conferred a benefit on them and accepted or retained that benefit. Defendant profited from Plaintiff's and Class Members' Private Information for business purposes.

155.    Defendant failed to secure Plaintiff's and Class Members' Private Information and therefore, did not provide full compensation for the benefit that Plaintiff's and Class Members' Private Information provided.

156.    Defendant acquired the Private Information through inequitable means as they failed to disclose the inadequate data security practices previously alleged.

157.    As a direct and proximate result of NextGen's conduct, Plaintiff and Class Members have suffered and/or will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity to control how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized

use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their Private Information, which remains in NextGen's possession and is subject to further unauthorized disclosures so long as NextGen fails to undertake appropriate and adequate measures to protect Private Information in its continued possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

158.    Plaintiff and Class Members are entitled to full refunds, restitution, and/or damages from NextGen and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by NextGen from its wrongful conduct. This can be accomplished by establishing a constructive trust from which the Plaintiff and Class Members may seek restitution or compensation.

159.    Plaintiff and Class Members may not have an adequate remedy at law against NextGen, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

**COUNT VII**
**DECLARATORY JUDGMENT**
**(ON BEHALF OF PLAINTIFF AND THE NATIONWIDE CLASS)**

160.    Plaintiff restates and realleges the allegations in paragraphs 1-92 as if fully set forth herein.

161.    Under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant

further necessary relief. Furthermore, the Court has broad authority to restrain acts that are tortious and violate the terms of the federal laws and regulations described herein.

162.   NextGen owes a duty of care to Plaintiff and Class Members, which required it to adequately secure Plaintiff's and Class Members' Private Information.

163.   NextGen still possesses Private Information regarding Plaintiff and Class Members.

164.   Plaintiff alleges that NextGen's data security measures remain inadequate. Furthermore, Plaintiff continues to suffer injury as a result of the compromise of her Private Information and the risk remains that further compromises of their Private Information will occur in the future, especially in light of NextGen's recent history of data breaches.

165.   Under its authority pursuant to the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a.   NextGen owes a legal duty to secure its customers' patients' Private Information and to timely notify its customers' patients of a data breach under the common law, HIPAA, and the FTCA;

b.   NextGen's existing security measures do not comply with its explicit or implicit contractual obligations and duties of care to provide reasonable security procedures and practices that are appropriate to protect its customers' patients' Private Information; and

c.   NextGen continues to breach this legal duty by failing to employ reasonable data security measures to safeguard patients' Private Information.

166.   This Court should also issue corresponding prospective injunctive relief requiring NextGen to employ adequate security protocols consistent with legal and industry standards to protect patients' Private Information, including the following:

a.  Order NextGen to provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members.

b.  Order that, to comply with Defendant's explicit or implicit contractual obligations and duties of care, NextGen must implement and maintain reasonable security measures, including, but not limited to:

    i.  engaging third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on NextGen's systems on a periodic basis, and ordering NextGen to promptly correct any problems or issues detected by such third-party security auditors;

    ii.  engaging third-party security auditors and internal personnel to run automated security monitoring;

    iii.  auditing, testing, and training its security personnel regarding any new or modified procedures;

    iv.  segmenting its user applications by, among other things, creating firewalls and access controls so that if one area is compromised, hackers cannot gain access to other portions of NextGen's systems;

    v.  conducting regular database scanning and security checks;

    vi.  routinely and continually conducting internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

vii.     meaningfully educating its users about the threats they face with regard to the security of their Private Information, as well as the steps NextGen's customers' patients should take to protect themselves.

167.    If an injunction is not issued, Plaintiff will suffer irreparable injury and will lack an adequate legal remedy to prevent another data breach at NextGen. The risk of another such breach is real, immediate, and substantial. If another breach at NextGen occurs, Plaintiff will not have an adequate remedy at law because many of the resulting injuries are not readily quantifiable.

168.    The hardship to Plaintiff if an injunction does not issue exceeds the hardship to NextGen if an injunction is issued. Plaintiff will likely be subjected to substantial, continued identity theft and other related damages if an injunction is not issued. On the other hand, the cost of NextGen's compliance with an injunction requiring reasonable prospective data security measures is relatively minimal, and NextGen has a pre-existing legal obligation to employ such measures.

169.    Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing a subsequent data breach at NextGen, thus preventing future injury to Plaintiff and other patients whose Private Information would be further compromised.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and the Nationwide Class described above, seeks the following relief:

a.    An order certifying this action as a Class action under Fed. R. Civ. P. 23, defining the Class as requested herein, appointing the undersigned as Class counsel, and

finding that Plaintiff is a proper representative of the Nationwide Class requested herein;

b.  Judgment in favor of Plaintiff and Class Members awarding them appropriate monetary relief, including actual damages, statutory damages, equitable relief, restitution, disgorgement, and statutory costs;

c.  An order providing injunctive and other equitable relief as necessary to protect the interests of the Class as requested herein;

d.  An order instructing NextGen to purchase or provide funds for lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members;

e.  An order requiring NextGen to pay the costs involved in notifying Class Members about the judgment and administering the claims process;

f.  A judgment in favor of Plaintiff and Class Members awarding them prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and expenses as allowable by law; and

g.  An award of such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all triable issues.

DATED:  May 8, 2023                    Respectfully submitted,

**HIRSH LAW OFFICE, LLC**              **SIRI & GLIMSTAD LLP**
 _/s/Michael R. Hirsh, GBN 357220      Mason A. Barney (*pro hac vice* to be filed)
2295 Towne Lake Pkwy.                  Tyler J. Bean (*pro hac vice* to be filed)
Suite 116-181                          745 Fifth Avenue, Suite 500
Woodstock, Georgia 30189               New York, New York 10151
678-653-9907                           Tel: (212) 532-1091
Michael@Hirsh.law                      E: mbarney@sirillp.com
*Counsel for Plaintiff*                E: tbean@sirillp.com