## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

MEDIT CORP., and
MEDIT USA LLC,

                    Plaintiffs,

        v.

RENEW DIGITAL, LLC,

                    Defendant.

C.A. No.

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiffs, Medit Corp. ("Medit") and Medit USA LLC ("Medit USA"), by

their undersigned attorneys, as and for their Complaint against defendant Renew

Digital, LLC, allege as follows:

1.      This is an action by a medical device manufacturer against a retailer

engaged in the unauthorized online resale of dental imaging devices.  The retailer,

Renew Digital, LLC ("Defendant" or "Renew"), has infringed and continues to

infringe upon Medit's trademarks, and has engaged and continues to engage in

unlawful, unfair, deceptive, and fraudulent business acts and practices, including deceptive advertising.

2.     Defendant is committing and has committed these unlawful and tortious acts on a large scale and has severely harmed Plaintiffs by depriving Plaintiffs of revenue and by harming their goodwill, brand, and business reputation throughout the United States, and specifically in the State of Georgia, where Defendant is located, and in the State of California, where Medit USA is located.

3.     These acts are particularly egregious because Defendant refused to respond to multiple communications from Plaintiffs seeking to resolve this issue. Moreover, Defendant's acts acutely affect the public interest because they are likely (and upon information and belief are intended) to confuse consumers as to the nature, characteristics, and pricing of an imaging device used in dental procedures.

4.     Plaintiffs bring this action to enjoin Defendant's unlawful and tortious conduct, and to obtain damages in the form of at least disgorgement of profits, restitution, compensatory damages, exemplary and punitive damages, and/or recovery of reasonable attorneys' fees and costs.

## THE PARTIES

5.     Medit is a South Korean Corporation with its headquarters located at 8, Yangpyeong-ro 25-gil, Yeongdeungpo-gu, Seoul, Korea.

6.     Medit USA is a wholly owned subsidiary of Medit that markets and sells Medit products in the United States.  Medit USA is organized under the laws of the State of Delaware and has its principal place of business at 236 E 3rd St, Long Beach, California, 90802.

7.     On information and belief, Defendant Renew Digital, LLC is a Georgia limited liability company with its headquarters at 3719 N. Peachtree Rd., Building 200, Ste. 250, Chamblee, Georgia, 30341.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over this action under 15 U.S.C. § 1121, 28 U.S.C. § 1331, and 28 U.S.C § 1338(a), because Plaintiffs' Counts I and III arise under the federal Lanham Act, 15 U.S.C. § 1051, *et seq*.

9.     This Court has supplemental jurisdiction over Counts II, IV, V, VI, and VII, under 28 U.S.C. § 1367(a) because those counts are substantially related to the federal Lanham Act counts.

10.     This Court has personal jurisdiction over Defendant because Defendant is a citizen of the State of Georgia and has a principal place of business

3

in Georgia, and in this judicial district.  This Court also has personal jurisdiction

over Defendant because the causes of action pled herein arise from Defendant

transacting business in Georgia, among other places, and Defendant causing

tortious injury to Plaintiffs by acts or omissions in Georgia.

11.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1)

because Defendant's principal place of business is in this juridical district, and

under 28 U.S.C. §§ 1391(b)(2)-(3), because a substantial part of the events or

omissions giving rise to the claims for relief herein occurred in this judicial

district, and because Defendant is subject to the Court's personal jurisdiction for

the claims alleged herein.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

12.     Since its founding in 2000, Medit has specialized in providing cutting-

edge 3D measurement tools and CAD/CAM solutions for the dental industry. Its

product offerings range from large desktop scanners to handheld wireless intraoral

scanners to provide 3D renderings of a patient's mouth.

13.     Medit has a long history of disrupting the dental equipment industry

with its products. For example, Medit was the first company to offer a blue light

dental lab scanner in its Identica Blue 3D Scanner. In 2014, the Identica Blue 3D

Scanner was awarded the IDEA award by the Industrial Designers Society of

America. In 2022, Medit was awarded five Intraoral Scanner Awards from the Institute of Digital Dentistry, including Biggest Overachiever – Medit i600, Most Innovative Company, Best Community Support, Best Scanner Software Apps, and People's Choice Award 1st Place – Medit i700.

14.     Through its long history of being an industry leader and of developing award-winning products, Medit has amassed substantial goodwill from the purchasing public.

15.     Recently, Medit developed and brought to market the Medit i700, the latest version of Medit's award winning intraoral scanner. The Medit i700 is a plug-and-play system that utilizes Medit's latest Medit Link software suite to facilitate intraoral scans of a patient's mouth at more than 70 frames per second – the fastest among all the products in its class.



16.    Over the course of the last two decades, Medit has diligently protected its development process and associated intellectual property, acquiring over 40 patents and obtaining numerous federal registrations for the valuable trademarks associated with its products.

17.    Medit is the owner of the right, title, and interest in and to, *inter alia,* the following trademarks registered on the Principal Register of the United States Patent and Trademark Office (collectively, the "Asserted Marks"): U.S. Trademark Reg. No. 5,450,284 for MEDIT in class 10, U.S. Trademark Reg. No. 5,538,240 for MEDIT in class 40, U.S. Trademark Reg. No. 6,044,453 for MEDIT in class 9, U.S. Trademark Reg. No. 5,958,180, for Medit Link in classes 10, 40, 42, and 44, and U.S. Trademark Reg. No. 6,998,441 for i700 in class 10 for use in at least the fields of optical scanners, 3D dental scanners, and medical instruments. True and correct copies of the certificates of registration for each of the Asserted Marks are attached hereto as collective Exhibit A.

18.    Upon information and belief, without authorization from Medit, Defendant has sold and continues to sell intraoral scanner products bearing the Asserted Marks. Defendant advertises that it sells "unused" Medit products in their "original packaging" at a "certified pre-owned price." This gives the misimpression that the end user is buying a genuine Medit product, but in reality,

6

the product the end user is purchasing is materially different from genuine Medit

products, and Defendant's actions therefore infringe the Asserted Marks.

**The Unauthorized Medit Products**

19.     The products at issue (hereinafter the, "Unauthorized Medit

Products") are intraoral scanner products that bear one or more of the Asserted

Marks and that are advertised, promoted, marketed, offered for sale, and/or sold

by Defendant. Upon information and belief, the Unauthorized Medit Products

include at least products that Defendant purport to be Medit's i700 intraoral

scanner, but that are materially different from the Medit i700 intraoral scanner

sold by Medit and by Medit's authorized resellers.

20.     As explained throughout this Complaint, Medit has spent years

designing, developing, marketing, and selling its award-winning products.

Through its advertising, promotional, and marketing efforts, Medit has amassed

substantial goodwill in the Asserted Marks and, among the purchasing public,

Medit's products bearing those trademarks are instantly recognizable and are seen

as high-quality, innovative, and dependable.

21.     Defendant is not authorized to sell Medit products, and has no interest

in maintaining the crucial goodwill and support that the Asserted Marks bring –

other than to freeride on the Asserted Marks' value to turn a profit. Despite this,

Defendant markets, advertises, and sells Unauthorized Medit Products to end users in the United States.

22.     While the Medit i700 intraoral scanner is advertised as "brand new in the box", there are a number of material differences between genuine Medit products and the Unauthorized Medit Products sold by Defendant. Exemplary material differences are set forth below.

**Lack of Manufacturer Warranty**

23.     Medit offers a warranty ("Medit Warranty") to customers who purchase genuine Medit products directly from either Medit or from one of Medit's authorized resellers; the Medit Warranty applies only to these specific customers. As part of the Medit Warranty, authorized personnel, authorized components, authorized firmware, and authorized testing and other equipment is available in servicing genuine Medit products. Third parties such as the Defendant are unable to offer an equivalent warranty, since they lack the proprietary information and equipment that Medit, the manufacturer of the i700 intraoral scanner, has access to and in fact uses to perform its warranty services.

24.     The Medit Warranty applies only to customers who purchase Medit's products either directly from Medit or from an authorized Medit reseller. Accordingly, purchasers who do not purchase products directly from Medit or

directly from an authorized Medit reseller are not entitled to the Medit Warranty

for service, repair, or replacement of products.

25.    Instead, customers who purchase an Unauthorized Medit Product

from Defendant – including the purported i700 product – are limited to the

warranty offered by Defendant. Defendant's offered warranty is identified on their

website.



**WHAT'S INCLUDED**

The Medit i700 intraoral scanner from Renew Digital
includes two autoclavable scanning tips, desk and wall
mount holders, a Windows 10 laptop, training, and a
comprehensive repair and/or replacement warranty.



**WHAT'S INCLUDED**

🏅 **WARRANTY**

Need help with your intraoral scanner? No problem.
Our full team of Support professionals is here to
help answer any question. Need a repair? Also, no
worries. Just send us your scanner, and we'll happily
send a replacement while we repair yours.



| ‹ | › |      3/3

26.     Defendant's warranty offers to provide a replacement scanner "while we repair yours." Defendant is not an authorized Medit reseller and is therefore neither authorized to, nor qualified to, repair Medit products. Defendant does not have access to OEM replacement parts and any repairs will therefore materially alter the physical composition of the Medit product.

27.     On information and belief, consumers consider this difference between the Medit Warranty and the Defendant's warranty to be important to a decision about whether to purchase the products, and are unaware that the Unauthorized Medit Products are not provided with manufacturer repairs or replacement. This harms the consumer.

28.     Defendant's sale of the Unauthorized Medit Products using the Asserted Marks, combined with its statements regarding its purported warranty, is causing consumer confusion and is likely to continue to cause consumer confusion as to the source of the Unauthorized Medit Products.  Upon information and belief, these statements are intended to cause such confusion.  The statements create an erroneous impression that the Unauthorized Medit Products are covered by a manufacturer's warranty. In reality, as set forth above, the warranty provided by Defendant (if any) is not the Medit Warranty, is materially different from the Medit Warranty, and is not comparable to the Medit Warranty.

**Differences in Customer Support**

29.     As part of the bargained-for exchange for its products, Medit provides invaluable technical customer support in connection with the sale of genuine Medit products. Indeed, the Institute of Digital Dentistry stated that "[y]ear after year, Medit blows the entire industry away with their gold-standard customer support" and named Medit as providing the "Best Community Support" in 2022.[1] Consumers purchasing Unauthorized Medit Products do not receive this customer support.

30.     Medit also operates educational programs through its authorized resellers, providing in-person training and support to dentists who purchased Medit products either directly from Medit or through an authorized Medit reseller.

31.     Consumers purchasing Unauthorized Medit Products from Defendant – including the purported Medit i700 – are limited to the customer support provided by Defendant. Defendant did not create the i700 intraoral scanner, and does not have the information or expertise to provide the same level of customer support to customers.

32.     On information and belief, consumers consider this difference to be important to a decision about whether to purchase the products, yet are unaware

---

[1] https://instituteofdigitaldentistry.com/news/the-intraoral-scanner-awards-2022/

the Unauthorized Medit Products lack this important feature. This harms the consumer.

33.    This difference constitutes a material difference between the Unauthorized Medit Products and genuine Medit products, it erodes Medit's reputation and goodwill represented by the Asserted Marks, and it is further causing consumer confusion and likely to continue to cause consumer confusion as to the source of the Unauthorized Medit Products.

**Lack of an Intellectual Property Indemnity**

34.    With respect to genuine Medit products, Medit provides an intellectual property indemnity to the purchaser. In connection with this indemnity, under certain circumstances and subject to certain conditions in the indemnity contract, Medit will defend lawsuits or other proceedings brought against the purchaser in which it is alleged that the design or construction of the genuine Medit product infringes a patent, copyright, or trademark (and/or replace, modify, or return any such product accused of infringement).

35.    Buyers of Unauthorized Medit Products sold by Defendant are not entitled to receive Medit's intellectual property indemnity. On information and belief, consumers consider this difference to be important to a decision about

whether to purchase the products, yet are unaware that the Unauthorized Medit Products sold by Defendant lack this important feature. This harms the consumer.

36.    This difference constitutes a material difference between the Unauthorized Medit Products and genuine Medit products, it erodes Medit's reputation and goodwill represented by the Asserted Marks, and it is further causing consumer confusion and likely to continue to cause consumer confusion as to the source of the Unauthorized Medit Products.

**Other Material Differences**

37.    Discovery may reveal additional material differences. Any other material differences that exist are also likely to cause consumer confusion and erode the goodwill represented by the Asserted Marks.

38.    The Medit Warranty, quality assurances, services, licenses and support discussed above for customers of genuine Medit products is not discretionary; Medit provides these services and quality assurances to all, or at least substantially all, customers of genuine Medit products. Consumers who purchase genuine Medit products from Medit or an authorized Medit reseller are therefore assured that the genuine Medit products are predictably and consistently accompanied by the Medit Warranty, quality assurances, services, licenses and support discussed above.

13

**Other Unfair, Deceptive, and Fraudulent Conduct**

39.     Defendant competes with Plaintiffs and their authorized dealer network, and uses unfair, deceptive, and fraudulent means to do so.

40.     Defendant's website displays a price comparison for the purported i700 with the price $17,995 stricken through and the price $12,995 displayed below it.



41.     This is false and deceptive in multiple respects.  First, this suggests to a reasonable consumer that Defendant's normal price for the i700 is $17,995. Upon information and belief, Defendant has never sold the i700 for $17,995. Instead, it appears that $17,995 is the highest price Defendant could find for the i700 on the internet.  Defendant provides no disclosures to clarify the meaning of the price comparison.

42.     Second, for the reasons stated above concerning the material differences between purported i700s sold by Defendant and i700s sold by authorized Medit resellers, the price comparison compares non-identical items. Defendant provides no disclosure of this fact.

43.     Third, the price comparison states "overstock special."  "Overstock" means "a supply or quantity in excess of demand or requirements," falsely suggesting that there is inadequate market demand for the i700.  In reality, the i700 is not overstocked.  Instead, Defendant is selling the product at a discounted price by circumventing (and freeriding off of) the authorized reseller network.  Again, Defendant provides no disclosure of this fact.

44.     Fourth, Defendant's website states that "[a]ccess to the Medit Link software is included with every i700 intraoral scanner purchase from Renew Digital," falsely suggesting that access to the Medit Link software is a benefit of purchasing from Defendant. In reality, the Medit Link software is offered by Medit free of charge and is readily available to anyone. Once again, Defendant does not disclose this fact.

45.     The product description is also deceptive.  It states, for example, that the i700 listed for sale is "unused in it's [sic] original packaging from Renew Digital."  A reasonable consumer would understand this to mean that the product is

identical to i700s sold by Plaintiffs, yet for the reasons stated above, the products are materially different.

46.     Likewise, the product description calls the i700 "an ideal entry point into intraoral scanning," which a reasonable consumer would understand to mean that the i700 is an entry-level product.  In fact, the i700 is a highly advanced and specialized medical device.

47.     Defendant's website currently makes each of the forgoing false, unfair, deceptive and fraudulent statements as of the date of this Complaint, and has made the same or substantially similar statements since at least March 23, 2023.  On information and belief, Defendants have made such statements for a significantly longer period, to be proven at trial.

## COUNT I
## TRADEMARK INFRINGEMENT AND FEDERAL UNFAIR COMPETITION (MEDIT)

48.     Medit incorporates each preceding paragraph as if fully stated herein.

49.     Medit is the owner of the Asserted Marks.

50.     The Asserted Marks are on the Principal Register of the United States Patent and Trademark Office.

51.     Defendant is not an authorized Medit reseller. Yet Defendant advertises, promotes, markets, offers for sale, and sells, Unauthorized Medit Products to customers in the United States, without authorization from Medit.

52.     The Unauthorized Medit Products bear the Asserted Marks.

53.     Through extensive and continuous use, the Asserted Marks and the goodwill associated with them in the United States and throughout the world are of significant value, are highly distinctive and arbitrary and fanciful, and have become universally associated in the public mind with Medit, its products and services, and the very highest quality and reputation.

54.     The Unauthorized Medit Products are materially different from genuine Medit products at least because they are not offered with the Medit Warranty, Medit customer support, Medit repair services, or Medit in-person training.  Consumers find these differences material when making decisions as to the source from where they will purchase a Medit product.

55.     On information and belief, Defendant does not communicate to consumers that Defendant is not an authorized Medit reseller and that Defendant does not offer the Medit Warranty or Medit support.

56.    Defendant's advertising, promotion, marketing, offering for sale, and sale, of the Unauthorized Medit Products is causing consumer confusion and mistake, and is deceiving the purchasing public, and is likely to continue to do so.

57.    Defendant's actions described above and specifically, without limitation, its unauthorized use of the Asserted Marks in commerce to advertise, promote, market, and sell the Unauthorized Medit Products throughout the United States, including in Georgia, constitute federal unfair competition and trademark infringement in violation of at least 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a).

58.    Defendant's unauthorized use in commerce of the Asserted Marks with respect to the Unauthorized Medit Products constitutes a false designation of origin and a false association that wrongfully and falsely designates the Unauthorized Medit Products as originating from Medit or being associated, affiliated, connected, approved, or sponsored by Medit.

59.    Defendant's conduct is intended to exploit the goodwill and reputation associated with the Asserted Marks.

60.    Defendant's actions, if not enjoined, will continue.  Medit has suffered and continues to suffer damages in an amount to be proven at trial, consisting of, among other things, diminution in the value of, and goodwill

associated with, the Asserted Marks as well as injury to Medit's business.  Medit

is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

61.     Pursuant to 15 U.S.C. § 1117, Medit is entitled to recover damages in

an amount to be determined at trial, profits made by Defendant in connection with

the Unauthorized Medit Products, and the costs associated with this action.

62.     Upon information and belief, Defendant's actions are deliberate,

intentional, and willful. Defendant's bad faith is evidenced, in part, by the

egregious and prominent use of the Asserted Marks in connection with the sale of

the Unauthorized Medit Products, the extensive nature of the infringement, and

Defendant's refusal to respond to multiple communications from Medit seeking to

resolve these issues. Because of the willful nature of Defendant's wrongful acts,

Medit is entitled to an award of treble damages and increased profits under 15

U.S.C. § 1117.

63.     Because this is an exceptional case, Medit is also entitled to recover

its costs of suit and attorneys' fees pursuant to 15 U.S.C. § 1117.

## COUNT II
## COMMON LAW TRADEMARK INFRINGEMENT (MEDIT)

64.     Medit incorporates each preceding paragraph as if fully stated herein.

65.     Through its prior and continuous use of its Asserted Marks in

commerce, Medit's Asserted Marks have become widely known, and Medit has

been identified in the public mind as the manufacturer of the intraoral scanner products to which it applies the Asserted Marks.

66.     Through its prior and continuous use of its Asserted Marks in commerce, Medit enjoys common law rights in the Asserted Marks.

67.     Defendant is not an authorized Medit reseller, yet Defendant advertises, promotes, markets, offers for sale, and sells, Unauthorized Medit Products to customers in the United States, and specifically to customers in Georgia.

68.     The Unauthorized Medit Products bear the Asserted Marks. Defendant's use of the Asserted Marks is without any permission, license, or other authorization from Medit.

69.     The Unauthorized Medit Products are materially different than genuine Medit products at least because they are not offered with the Medit Warranty, Medit customer support, Medit repair services, or Medit in-person training.  Consumers find these differences material when making decisions as to the source from where they will purchase a Medit product.

70.     On information and belief, Defendant does not communicate to consumers that Defendant is not an authorized Medit reseller and that Defendant does not offer the Medit Warranty or Medit support.

71.     Defendant's unauthorized use in commerce in Georgia of the Asserted Marks with respect to the Unauthorized Medit Products constitutes a false designation of origin and a false association that wrongfully and falsely designates the Unauthorized Medit Products as originating from Medit or being associated, affiliated, connected, approved, or sponsored by Medit.

72.     Defendant's conduct is intended to exploit the goodwill and reputation associated with the Asserted Marks.

73.     On information and belief, Defendant acted with knowledge of the Asserted Marks, without regard to the likelihood of confusion of the public created by Defendant's activities.

74.     Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the Asserted Marks, to the great and irreparable injury of Medit.

75.     Defendant's acts constitute common law trademark infringement under the laws of the State of Georgia, have created actual confusion, a likelihood of confusion, and will continue to create a likelihood of confusion, all to the irreparable injury of Medit unless restrained by this Court. Medit has no adequate remedy at law for this injury.

Case 1:23-mi-99999-UNA   Document 1499   Filed 05/09/23   Page 22 of 37


76.     As a result of Defendant's past and ongoing acts of infringement, Medit has been damaged in an amount not as yet determined or ascertained. In light of Defendant's intentional and confusing use of the Asserted Marks, however, Medit is entitled to all remedies available to it under law, including, but not limited to, compensatory damages, disgorgement of profits, treble damages, punitive damages, and costs and attorneys' fees.

## COUNT III
## FALSE ADVERTISING IN
## VIOLATION OF LANHAM ACT SECTION 43(a)

77.     Plaintiffs incorporate each preceding paragraph as if fully stated herein.

78.     Defendant made false and misleading statements of fact in a commercial advertisement, namely its webpage advertising the Medit i700, about the i700.  As discussed above, these statements include:

a.      Defendant's price comparison;

b.      Defendant's statements regarding a purported warranty for the i700;

c.      Defendant's statements and omissions regarding customer service and intellectual property indemnity;

d.   Defendant's statements regarding purported training on the i700;

e.   Defendant's statements regarding access to the Medit Link software;

f.   Defendant's statement that the i700 is "unused in it's [sic] original packaging from Renew Digital";

g.   Defendant's statement that the i700 "is an ideal entry point into intraoral scanning";

h.   Defendant's statement that the i700 is an "overstock special".

79.   These statements had the capacity to deceive a substantial segment of potential customers, and did indeed deceive customers, as indicated by statements to Plaintiffs from distributors, and by Plaintiffs' lost sales.

80.   Defendant's deceptive statements are material because they are likely to influence a customer's purchasing decision.  Indeed, they relate to key characteristics of the i700.  Furthermore, statements to Plaintiffs by distributors and Plaintiffs' lost sales underscore the materiality of these misrepresentations.

81.   Each of Defendant's deceptive statements were made in interstate commerce.  They were made on a website to a global audience by Defendant,

which is located in Georgia, regarding products sold by Plaintiffs, which are based in California and Korea.

82.    As a direct and proximate result of Defendant's acts alleged in this complaint, Plaintiffs have suffered and are suffering harm in the form of lost revenue, loss of goodwill and harm to brand and commercial reputation.  Remedies at law are not adequate to fully redress these harms.

83.    Defendant's acts constitute false advertising and false representations in violation of 15 U.S.C. § 1125(a)(1)(B).

## COUNT IV
## VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE § 17200 ET SEQ. AS TO MEDIT USA

84.    Medit USA incorporates each preceding paragraph as if fully stated herein.

85.    California's Unfair Competition Law ("UCL") prohibits "unfair competition," which is defined broadly to include "any unlawful, unfair or fraudulent business act or practice."

86.    Defendant violated the UCL by making advertising statements on its website related to the Medit i700 which are fraudulent and likely to deceive a reasonable person.  As discussed above, these statements include:

a.   Defendant's price comparison;

b.   Defendant's statements regarding a purported warranty for the i700;

c.   Defendant's statements and omissions regarding customer service and intellectual property indemnity;

d.   Defendant's statements regarding purported training on the i700;

e.   Defendant's statements regarding included access to the Medit Link software;

f.   Defendant's statement that the i700 is "unused in it's [sic] original packaging from Renew Digital";

g.   Defendant's statement that the i700 "is an ideal entry point into intraoral scanning";

h.   Defendant's statement that the i700 is an "overstock special".

87.   Defendant's other violations of law, as alleged in this Complaint, constitute unlawful business practice under the UCL.  These include Defendant's violation of trademark laws and Defendant's violations of California's False Advertising Law.

88.     On information and belief, Defendant's fraudulent and unlawful acts were directed at Medit USA in the State of California.  On information and belief, these fraudulent and unlawful acts were calculated to give Defendant an unfair advantage in the competitive marketplace against Medit USA and to unfairly disadvantage Medit USA.

89.     Defendant's website shows that it ships the i700 to California consumers.

90.     Defendant's fraudulent and unlawful acts directly and proximately harmed, and continue to harm, Medit USA in the State of California, including through lost revenue, loss of goodwill and harm to brand and commercial reputation.  Remedies at law are not adequate to fully redress these harms.

## COUNT V
## VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW, CAL. BUS. & PROF. CODE § 17500 ET SEQ. AS TO MEDIT USA

91.     Medit USA incorporates each preceding paragraph as if fully stated herein.

92.     California's False Advertising Law ("FAL") prohibits false or deceptive advertising.

93.     Defendant violated the FAL by making misleading statements of fact in a commercial advertisement, namely its webpage advertising the Medit i700, about the i700.  As discussed above, these statements include:

a.      Defendant's price comparison;

b.      Defendant's statements regarding a purported warranty for the i700;

c.      Defendant's statements and omissions regarding customer service and intellectual property indemnity;

d.      Defendant's statements regarding purported training on the i700;

e.      Defendant's statements regarding included access to the Medit Link software;

f.      Defendant's statement that the i700 is "unused in it's [sic] original packaging from Renew Digital";

g.      Defendant's statement that the i700 "is an ideal entry point into intraoral scanning";

h.      Defendant's statement that the i700 is an "overstock special".

94.     In each instance, Defendant knew or should have known that the statement was false or misleading.  Upon information and belief, Defendant or its

representatives authored the statements for the purpose of encouraging the

purchase of the i700, and had all of the information necessary to establish the false

or misleading character of the statements readily available to them.  On

information and belief, Defendants knew these statements to be false or

misleading.  At a minimum, Defendant failed to exercise reasonable care regarding

the statements on its own website.

95.    On information and belief, Defendant's false and misleading

statements were intended to competitively disadvantage Medit USA in the State of

California and give Defendant an unfair advantage in the competitive marketplace.

96.    Defendant's website shows that it ships the i700 to California

consumers.

97.    Defendant's deceptive advertising directly and proximately harmed,

and continue to harm, Medit USA in the State of California, including through lost

revenue, loss of goodwill and harm to brand and commercial reputation.  Remedies

at law are not adequate to fully redress these harms.

## COUNT VI
## VIOLATION OF GEORGIA'S UNIFORM DECEPTIVE TRADE PRACTICES ACT, O.C.G.A. § 10-1-370 ET SEQ.

98.    Plaintiffs incorporate each preceding paragraph as if fully stated

herein.

99.     Defendant's misleading statements on its website about the i700 were unfair and deceptive.  As discussed above, these statements include:

    a.      Defendant's price comparison;

    b.      Defendant's statements regarding a purported warranty for the i700;

    c.      Defendant's statements and omissions regarding customer service and intellectual property indemnity;

    d.      Defendant's statements regarding purported training on the i700;

    e.      Defendant's statements regarding included access to the Medit Link software;

    f.      Defendant's statement that the i700 is "unused in it's [sic] original packaging from Renew Digital";

    g.      Defendant's statement that the i700 "is an ideal entry point into intraoral scanning";

    h.      Defendant's statement that the i700 is an "overstock special".

100.    These statements had the capacity to deceive a substantial segment of potential customers, and did indeed deceive customers, as indicated by statements to Plaintiffs from distributors, and by Plaintiffs' lost sales.

101.   Defendant's deceptive statements are material because they are likely to influence a customer's purchasing decision.  Indeed, the relate to key characteristics of the i700.  Furthermore, statements to Plaintiffs by distributors and Plaintiffs' lost sales underscore the materiality of these misrepresentations.

102.   Defendant's deceptive business practices directly and proximately harmed Plaintiffs in the State of Georgia and by acts in Georgia, including through lost revenue, loss of goodwill and harm to brand and commercial reputation. Remedies at law are not adequate to fully redress these harms.

## COUNT VII
## COMMON LAW UNFAIR COMPETITON

103.   Plaintiffs incorporate each preceding paragraph as if fully stated herein.

104.   Defendant's misleading statements on its website about the i700 were unfair and deceptive.  As discussed above, these statements include:

    a.    Defendant's price comparison;

    b.    Defendant's statements regarding a purported warranty for the i700;

c.   Defendant's statements and omissions regarding customer service and intellectual property indemnity;

d.   Defendant's statements regarding purported training on the i700;

e.   Defendant's statements regarding included access to the Medit Link software;

f.   Defendant's statement that the i700 is "unused in it's [sic] original packaging from Renew Digital";

g.   Defendant's statement that the i700 "is an ideal entry point into intraoral scanning";

h.   Defendant's statement that the i700 is an "overstock special".

105.   These statements had the capacity to deceive a substantial segment of potential customers, and did indeed deceive customers, as indicated by statements to Plaintiffs from distributors, and by Plaintiffs' lost sales.

106.   Defendant's deceptive statements are material because they are likely to influence a customer's purchasing decision.  Indeed, they relate to key characteristics of the i700.  Furthermore, statements to Plaintiffs by distributors and Plaintiffs' lost sales underscore the materiality of these misrepresentations.

107.    Defendant's deceptive business practices directly and proximately

harmed Plaintiffs, including through lost revenue, loss of goodwill and harm to

brand and commercial reputation.

## **JURY DEMAND**

Plaintiffs demand a jury trial for all claims so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment and relief as follows:

1.      That this Court enter judgment against Defendant as indicated below:

    a.  that Defendant has committed and is committing acts of trademark

        infringement, false designation of origin, and unfair competition with

        respect to the Asserted Marks in violation of 15 U.S.C. § 1114, 15

        U.S.C. § 1125(a), and common law;

    b.  that Defendant has willfully and knowingly committed and is

        committing acts of trademark infringement with respect to the

        Asserted Marks in violation of 15 U.S.C. § 1114, 15 U.S.C. § 1125(a),

        and common law.

2.      Under 15 U.S.C. §1117, common law, all other applicable statutes,

and the equitable powers of this Court, Defendant, together with its successors and

assigns and all persons who act in concert with them or on their behalf, pay all

actual, compensatory, liquidated, treble, and/or statutory damages, including but not limited to all lost profits, suffered by Medit with respect to Defendant's trademark infringement of the Asserted Marks.

3.     Under 15 U.S.C. § 1117, common law, all other applicable statutes, and the equitable powers of this Court, Defendant, together with its successors and assigns and all persons who act in concert with them or on their behalf, disgorge all profits obtained by Defendant by virtue of their infringement of the Asserted Marks.

4.     An award of three times the amount of compensatory damages and increased profits pursuant to 15 U.S.C. § 1117(a).

5.     An award of three times such profits or damages, whichever amount is greater, together with a reasonable attorneys' fees, pursuant to 15 U.S.C. §1117(b).

6.     An award of statutory damages pursuant to 15 U.S.C. §1117(c).

7.     Under 15 U.S.C. § 1051 *et seq.*, preliminarily and permanently enjoin Defendant, together with its successors and assigns and all persons who act in concert with them or on their behalf, from:

      a.   using, imitating, copying, or making any other infringing use of the Asserted Marks and any other mark now or hereafter confusingly similar or identical thereto;

b. manufacturing, assembling, producing, distributing, offering for
distribution, circulating, selling, offering for sale, advertising,
importing, promoting, or displaying any good or services under the
Asserted Marks;

c. using any false designation of origin or false description or statement
which can, or is likely to, lead the public or individuals to erroneously
believe that any good or service has been provided, produced,
distributed, offered for distribution, circulated, sold, offered for sale,
imported, advertised, promoted, displayed, licensed, sponsored,
approved, or authorized by Medit, when such is not true in fact;

d. engaging in any act which is likely to injure Plaintiffs' business
reputation;

e. engaging in any other activity constituting infringement of the
Asserted Marks;

f. assisting, aiding, or abetting any other person or business entity in
engaging in or performing any of the activities referred to in
subparagraphs (a)-(d) above.

8. Under O.C.G.A. § 10-1-370 *et seq*., California Business and
Professions Code, sections 17203 and 17535, all other applicable statutes and the

equitable powers of this Court, Defendant, together with its successors and assigns and all persons who act in concert with them or on their behalf, be permanently enjoined from engaging in any of the unlawful, unfair and fraudulent business acts and practices and deceptive advertising described in this Complaint, and be required to take such actions and adopt such measures as are necessary to prevent Defendant from engaging in any further such acts, practices and advertising.

9.    Under California Business and Professions Code, sections 17203 and 17535, all other applicable statutes and the equitable powers of this Court, Defendant, together with its successors and assigns and all persons who act in concert with them or on their behalf, be ordered to restore to Plaintiffs all money and property that Defendant deprived Plaintiffs of by means of the unlawful, unfair and fraudulent business acts and practices and deceptive advertising described in this Complaint.

10.    Under O.C.G.A. § 10-1-373, 15 U.S. Code § 1117 and all other applicable statutes, for the costs of suit, including all attorneys' fees incurred by Medit in investigating, readying, bringing, and prosecuting each and every cause of action asserted herein.

11.    An order that Defendant account to Medit for any and all profits earned as a result of Defendant's acts in violation of Medit's rights.

12.    For Plaintiffs' actual damages in an amount to be proven at trial.

13.    For exemplary and punitive damages to the extent allowed by law.

14.    An order granting pre-judgment interest on any recovery by Medit.

15.    For such other and further relief as the Court may deem to be just and

proper.


Dated:  May 9 2023                        Respectfully submitted,

                                          **DLA PIPER LLP (US)**

                                          */s/Brendan Krasinski*
                                          Brendan Krasinski
                                          Georgia Bar No. 159089
                                          1201 West Peachtree Street, Suite 2900
                                          Atlanta, GA 30309
                                          Tel: 404.736.7800
                                          Fax: 404.682.7800
                                          brendan.krasinski@dlapiper.com

                                          Justin Park
                                          Brian J. Boyle
                                          *(pro hac vice motions forthcoming)*
                                          **DLA PIPER LLP (US)**
                                          500 Eighth Street, NW
                                          Washington, DC 20004
                                          Tel: 202.799.4000
                                          Fax: 202.799.5000
                                          justin.park@us.dlapiper.com
                                          brian.boyle@us.dlapiper.com

Safraz Ishmael
Christopher Deck
*(pro hac vice motions forthcoming)*
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110-1447
Tel: 617.406.6000
Fax: 617.406.6100
safraz.ishmael@us.dlapiper.com
christopher.deck@us.dlapiper.com

ATTORNEYS FOR PLAINTIFFS
MEDIT CORP. and MEDIT USA LLC