# Exhibit A

 **SOCIAL SECURITY ADMINISTRATION**

Office of Hearings Operations
2nd Floor
4100 Old Milton Pkwy
Alpharetta, GA 30005–4442

Date: June 06, 2022

James Kiwon Yoon
3651 Terrasol Trl SW
Lilburn, GA 30047

## Notice of Decision – Unfavorable

I carefully reviewed the facts of your case and made the enclosed decision. Please read this notice and my decision.

**If You Disagree With My Decision**

If you disagree with my decision, you or your representative may submit written exceptions to the Appeals Council.  "Written exceptions" are your statements explaining why you disagree with my decision.  Please write the Social Security number associated with this case on any written exceptions you send.

Please send your written exceptions to:

**Appeals Council
5107 Leesburg Pike
Falls Church, VA 22041–3255**

**Or Fax:  (833) 763–0406**

If you need help, you may file in person at any Social Security or hearing office.

**Time Limit To File Written Exceptions (30 Days)**

You must file your written exceptions with the Appeals Council **within 30 days** of the date you get this notice.  The Appeals Council assumes that you got this notice within 5 days after the date of the notice unless you show that you did not get it within the 5–day period.

Form HA–L76–OP2 (03–2010)

**Suspect Social Security Fraud?**
**Please visit http://oig.ssa.gov/r or call the Inspector General's Fraud Hotline**
**at 1–800–269–0271 (TTY 1–866–501–2101).**

See Next Page

James Kiwon Yoon (BNC#: 21T3971B81795)          Page 2 of 3

If you need more time to file your written exceptions, you must file a written request with the Appeals Council.  You must file the request for an extension within 30 days of the date you get this notice.  If you request more than 30 days, you must explain why you need the extra time.  The Appeals Council will decide whether to grant your request for more than a 30-day extension.

## How Written Exceptions Work

The Appeals Council will consider your entire case.  It will consider all of my decision, even the parts with which you agree.  The Appeals Council's action may be more or less favorable or unfavorable to you.  The rules the Appeals Council uses are in the Code of Federal Regulations, Title 20, Chapter III, Part 404 (Subpart J).

The Appeals Council may:

- Find that there is no reason to change my decision,
- Dismiss your case,
- Return your case to me or another administrative law judge for a new decision, or
- Issue its own decision.

The Appeals Council will send you a notice telling you what it decides to do.  If the Appeals Council does not change my decision, my decision will become the final decision after remand.  Any future claim you file will not change a final decision on this claim if the facts and issues are the same.

## The Appeals Council May Review My Decision On Its Own

The Appeals Council may review my decision even if you do not file written exceptions.  The Appeals Council will notify you within 60 days of the date of this notice if it decides to review your case.

## Filing An Action In Federal District Court

If you do not file written exceptions and the Appeals Council does not review my decision on its own, my decision will become final on the 61st day following the date of this notice.  After my decision becomes final, you will have 60 days to file a new civil action in Federal district court.  You will lose the right to a court review if you do not file a civil action during the 60-day period starting with the day my decision becomes final.  However, you can ask the Appeals Council to give you more time to file a civil action.  The Appeals Council will grant your request for more time only if you can show a good reason for needing more time.  We will not send you any more notices about your right to file in Federal district court.

Form HA-L76-OP2 (03-2010)

James Kiwon Yoon (BNC#: 21T3971B81795)                    Page 3 of 3

**New Application**

You have the right to file a new application at any time, but filing a new application is not the same as filing exceptions to my decision or filing a civil action in Federal court.  If you disagree with my decision and you file a new application instead of filing written exceptions or appealing to Federal court, you might lose some benefits or not qualify for benefits at all.  My decision could also be used to deny a new application for benefits if the facts and issues are the same.   If you think my decision is wrong, you should file your exceptions within 30 days or file a new civil action between the 61st and 121st days after the date of this notice.

**If You Have Any Questions**

1. Visit www.ssa.gov for fast, simple, and secure online service.
2. Call us at **1–800–772–1213**, weekdays from 8:00 am to 7:00 pm. If you are deaf or hard of hearing, call TTY **1–800–325–0778**. Please mention this notice and decision when you call.
3. You may also call your local office at (877) 803–6320.

Social Security
4365 Shackleford Rd
Norcross, GA 30093–2931

**How are we doing?** Go to www.ssa.gov/feedback to tell us.

James Conlon
Administrative Law Judge

Enclosures:
Decision Rationale

cc:   Kathleen Flynn
      315 W. Ponce De Leon
      Avenue, Suite 940
      Decatur, GA 30030

**SOCIAL SECURITY ADMINISTRATION**
**Office of Hearings Operations**

**DECISION**

**IN THE CASE OF**                                    **CLAIM FOR**

                                                     Period of Disability and Disability
James Kiwon Yoon                                     Insurance Benefits
(Claimant)

(Wage Earner)                                        (Social Security Number)


## JURISDICTION AND PROCEDURAL HISTORY

This case is before the undersigned Administrative Law Judge on remand from the Appeals Council pursuant to a remand from the United States District Court for the NORTHERN DISTRICT GEORGIA.  On May 24, 2022, the undersigned held a telephone hearing due to the extraordinary circumstance presented by the Coronavirus Disease 2019 (COVID–19) Pandemic.  All participants attended the hearing by telephone. The claimant agreed to appear by telephone before the hearing, and confirmed such agreement at the start of the hearing (Exh. 35B). The claimant is represented by Kathleen Flynn, an attorney.  Brynne Holt represented the claimant at the hearing (Exh. 39B).  James Cowart, an impartial vocational expert, also appeared at the hearing (Exh. 56E).

Pursuant to the District Court remand order, Appeals Council has directed the undersigned to:
● Give further consideration to the medical source opinion(s) and prior administrative medical findings pursuant to the provisions of 20 CFR 404.1520c.
● Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and Social Security Ruling 85 –16 and 96–8p).
● If warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83–14). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT)

James Kiwon Yoon (BNC#: 21T3971B81795)                    Page 2 of 12

and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00 –4p).

The claimant is alleging disability since September 1, 2017.

If the claimant wishes that written evidence be considered at the hearing, then the claimant must submit or inform the Administrative Law Judge about the evidence no later than five business days before the date of the scheduled hearing (20 CFR 404.935(a)). Pursuant to 20 CFR 404.935(b), if the claimant misses this deadline but submits or informs the Administrative Law Judge about written evidence before the hearing decision is issued, the Administrative Law Judge will accept the evidence if: (1) an action of the Social Security Administration misled the claimant; (2) the claimant had a physical, mental, educational, or linguistic limitation(s) that prevented submitting or informing the Administrative Law Judge about the evidence earlier, or (3) some other unusual, unexpected, or unavoidable circumstance beyond the claimant's control prevented the claimant from submitting or informing the Administrative Law Judge about the evidence earlier.

The claimant submitted or informed the Administrative Law Judge about additional written evidence less than five business days before the scheduled hearing date.  The undersigned Administrative Law Judge finds that the requirements of 20 CFR 404.935(b) are satisfied and admits this evidence into the record.

## ISSUES

The issue is whether the claimant is disabled under sections 216(i) and 223(d) of the Social Security Act.  Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

There is an additional issue whether the insured status requirements of sections 216(i) and 223 of the Social Security Act are met.  The claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through December 31, 2022.  Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.

After careful consideration of all the evidence, the undersigned concludes the claimant has not been under a disability within the meaning of the Social Security Act from September 1, 2017, through the date of this decision.

## APPLICABLE LAW

See Next Page

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 404.1520(a)).  The steps are followed in order.  If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the undersigned must determine whether the claimant is engaging in substantial gainful activity (20 CFR 404.1520(b)).  Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful.  "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 404.1572(a)).  "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 404.1572(b)).  Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA (20 CFR 404.1574 and 404.1575).  If an individual engages in SGA, he is not disabled regardless of how severe his physical or mental impairments are and regardless of his age, education, and work experience.  If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the undersigned must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 404.1520(c)).  An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities.  An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 404.1522, Social Security Rulings (SSRs) 85-28 and 16-3p).  If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled.  If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, the undersigned must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).  If the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listing and meets the duration requirement (20 CFR 404.1509), the claimant is disabled.  If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the undersigned must first determine the claimant's residual functional capacity (20

CFR 404.1520(e)).  An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments.  In making this finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e) and 404.1545; SSR 96–8p).

Next, the undersigned must determine at step four whether the claimant has the residual functional capacity to perform the requirements of his past relevant work (20 CFR 404.1520(f)).  The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established.  In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b) and 404.1565).  If the claimant has the residual functional capacity to do his past relevant work, the claimant is not disabled.  If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 404.1520(g)), the undersigned must determine whether the claimant is able to do any other work considering his residual functional capacity, age, education, and work experience.  If the claimant is able to do other work, he is not disabled.  If the claimant is not able to do other work and meets the duration requirement, he is disabled.  Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration.  In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 404.1512 and 404.1560(c)).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, the undersigned makes the following findings:

**1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.**

**2.  The claimant has not engaged in substantial gainful activity since September 1, 2017, the alleged onset date (20 CFR 404.1571 *et seq.*).**

**3.  The claimant has the following severe impairments: post–traumatic stress disorder (PTSD), depressive disorder, anxiety disorder (20 CFR 404.1520(c)).**

The above medically determinable impairments significantly limit the ability to perform basic work activities as required by SSR 85–28.

The record also reveals that the claimant was diagnosed with migraine headache disorder (Exh. 17F).  In April 2021, the claimant was seen for follow-up of headache.  He reported that he tried a nasal spray, which had been prescribed on the previous visit, which he found more effective (Exh. 17F, p. 6).  On physical examination, he appeared in no distress.  He followed multi-step commands, had fluent speech and appeared alert (Exh. 17F, p. 7).  He testified that the suffered from migraine headaches, with a frequency of one to two per week.  He stated that he took medication, which helped with symptoms.  He stated that symptoms were worse in the past.  As there is no evidence showing this impairment causes any more than a minimal effect on the ability to do basic physical work activities, it is found to be non–severe.

The undersigned considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity.

**4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).**

The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.06, and 12.11.  In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied.  To satisfy the "paragraph B" criteria, the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning.  An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis.  A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.

In understanding, remembering or applying information, the claimant has a mild limitation.  The claimant testified that he had some problems with short-term memory.  He has been noted to have some memory difficulties due to PTSD symptoms (Exh. 12F, p. 84).  However, treatment notes generally indicate that cognition has been consistent with the claimant being attentive, with intact or grossly intact memory (Exh. 12F, pp. 27, 49 and 91 and 19F, pp. 99, 105, 114 and 127).  Such findings reflect no more than mild limitation in this domain.

In interacting with others, the claimant has a moderate limitation.  He testified that he had problems getting along with others and replied that he tried to

avoid people.  He stated that he had some problems with anger.  At his most recent job, he stated that he had problems with his supervisors.  The claimant has been assessed as anxious, with a mildly depressed mood.  However, progress notes show that he has been assessed with good eye contact (Exh. 17F, p. 35 and 20F, p. 202, 226, 235).  He has also been noted to have clear and coherent speech (Exhs. 20F, p. 248 and 21F, p. 6).  He has appeared calm and cooperative (Exh. 20F, p. 248).  He has reported having meaningful family relationships (Exh. 21F, p. 6).   These objective findings show largely intact social functioning and indicate no more than moderate limitation in this area.

With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation.  The claimant testified that he experienced problems with concentration and difficulty maintaining focus.  Attention and concentration have been described as fair (Exh. 20F, p. 20).  However,  A number of treatment notes show that he has also reported having good concentration (Exh. 7F, pp. 20, 34, 39).  He has been assessed as alert and attentive (Exh. 19F, p. 255).  Therefore, the lack of significant concentration or attention deficits in the record is consistent with a moderate, and not a marked, limitation in this area.

As for adapting or managing oneself, the claimant has experienced a moderate limitation.  When completing the function reports, the claimant indicated that he was able to drive, but needed to be accompanied by his wife to reduce possibility of anxiety attacks or anger outbursts (Exh. 35E, p. 54).  He has reported suicidal ideation during a number of examinations.  However, treatment notes show that he has been assessed with good insight (Exh. 17F, p. 35).  20F, p. 202, 226, 235 and 248).  Progress notes show that he drove himself to evaluations a number of times (Exhs. 19F, pp. 109 and 123, 20F, pp. 105, 120, 131 and 139, 23F, p. 27).  He has been assessed with ability to make logical decisions (Exh. 20F, p. 78).  Such evidence reflects no more than moderate limitation in this domain.

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.

The undersigned has also considered whether the "paragraph C" criteria are satisfied.  In this case, the evidence fails to establish the presence of the "paragraph C" criteria.  The record does not establish that the claimant has only marginal adjustment, that is, a minimal capacity to adapt to changes in the claimant's environment or to demands that are not already part of the claimant's daily life.

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process.  The mental residual functional capacity assessment used at steps 4 and 5 of the sequential

evaluation process requires a more detailed assessment of the areas of mental functioning.  The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

**5.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he is limited to simple, routine and repetitive tasks and simple, work-related decisions.  Changes in the work setting are limited to simple, workplace changes.  The claimant is limited to occasional interaction with supervisors, co-workers and the public.**

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p. The undersigned also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities.  For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities.

In the initial disability report, the claimant alleged disability due PTSD, with major depressive disorder, migraine and hallucination  He indicated that she stopped working on September 1, 2017 (Exh. 3E, p. 2).  At reconsideration, the claimant initially noted no change in his conditions, for better or worse, in physical or mental conditions.  Since the last report, he denied any new physical or mental conditions (Exhs. 9E, p. 2).  On a subsequent reconsideration report, the claimant indicated that there had been a change in his conditions.  In addition to the initial alleged impairments, he noted that he was a wounded warrior and received VA benefits (Exh. 12E, p. 2).  The claimant essentially

testified that he suffered from PTSD and had nightmares.  He stated that he had flashbacks several days a week.  He recalled feeling paranoid and experiencing suicidal ideation.  He recalled experiencing anxiety as well.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent because the objective evidence found in treatment notes does not support the level of severity of limitations alleged.  Viewed as a whole, documentary evidence of the claimant's overall treatment and findings are not indicative of disabling limitations.  To be sure, abnormalities are present, as noted above and as accounted for in the residual functional capacity.  A psychiatry note in January 2020 shows he reported that his mood was "depressed"  He declined trauma recovery program (Exh. 7F, p. 43).  He was alert and oriented, with good eye contact, neatly groomed, calm and cooperative.  There was no agitation or retardation.  Speech was normal.  His mood was "mildly" depressed.  Insight and judgment were good (Exh. 7F, p. 44).

In November 2020, he was seen for follow-up of PTSD, major depressive disorder and unspecified anxiety disorder.  He reported having a depressed and anxious mood, attributed to the election and "civil unrest" after the election.  He denied thoughts of self-harm. He reported auditory and visual hallucinations, irritability, anger, outbursts, social isolation, flashbacks and intrusive thoughts (Exh. 17F, p. 34).  Examination shows he was alert and oriented.  He exhibited good eye contact and appeared calm and cooperative.  There was no agitation or retardation noted.  The claimant exhibited clear and coherent speech.  His mood was depressed and anxious.  However, he denied auditory and visual hallucinations during examination.  His thought process was goal-directed.  Insight and judgment were good (Exh. 17F, p. 35).

The claimant underwent a consultative psychological evaluation with Dr. McDonald in March 2021.  There was diagnosis of PTSD and persistent depressive disorder.  Dr. McDonald determined that the claimant may have mild difficulty interacting with co-workers, supervisors and the public due to his social avoidance and difficulty sustaining interactions with others.
Dr. McDonald opined that overall capacity to understand and remember simple and detailed instructions was average.  The doctor determined that the claimant demonstrated mild difficulty focusing and sustaining attention to complete tasks during the examination.   The doctor concluded that the claimant seemed to have mild difficulty adapting to day-to-day stressors.

See Next Page

Dr. McDonald determined that the claimant appeared cognitively and emotionally capable of managing funds (Exh. 16F).  The undersigned finds the opinion of Dr. McDonald is partially persuasive, as the doctor personally examined the claimant.  The doctor has knowledge of SSA program policies and evidentiary requirements.  However, the mild limitations regarding interacting with others, average ability to remember detailed instructions and mild difficulty adapting to day–to–day stressors are not supported by the totality of the evidence of record.  The claimant reported being easily startled and anxious.  The claimant has also reported experiencing anger, distrust of others and isolation from others (Exh. 35E, p. 2).

A mental health note on January 13, 2022, he "adamantly" denied any suicidal or homicidal ideation, intent or plan.  He stated that he last had ideations on January 4, 2022, which were triggered by fireworks.  Attention and concentration were normal, memory was grossly intact.  There were no auditory or visual hallucinations noted (Exh. 20F, pp. 24 to 25).

As for medical opinions and prior administrative medical findings, we will not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical findings or medical opinion, including those from your medical sources. We fully considered the medical opinions and prior administrative medical findings in your case. The undersigned has considered the mental opinions of the State agency consultants, Dr. Garmon and Dr. Massey.  The consultants assessed the claimant with mild limitation in understanding, remembering, or applying information, moderate limitation in interacting with others, moderate limitation in concentrating, persisting, or maintaining pace, and mild limitation in adapting or managing oneself (Exhs. 2A and 4A).   The undersigned finds these opinions somewhat persuasive because they reflect the opinions of the mental health professionals who had an opportunity to review a large portion of the record.  However, the undersigned does not find these opinions fully persuasive because the claimant has reported difficulty with concentration and attention, which have been described as fair.  Additionally, the claimant has complained of anxiety, anger outbursts and suicidal ideation.  The claimant testified that he had difficulty getting along with the supervisor on his last job.  His attention and concentration have been described as fair, along with fair insight.  Therefore, the undersigned finds the totality of the evidence of record supports moderate limitation in concentrating, persisting or maintaining pace and in adapting or managing oneself.   As such, the undersigned finds the claimant is capable of performing the full range of work, but finds that he is limited to simple, routine and repetitive tasks and simple, work–related decisions.  Changes in the work setting are limited to simple, workplace changes.  The claimant is further limited to occasional interaction with supervisors, co–workers and the public.

The undersigned has considered the opinion of Wanda Banhan, MPAS, PA–C. Ms. Banhan opined that the claimant had poor to no abilities to relate to co–

workers, deal with the public, interact with supervisors, deal with stress or maintain attention and concentration and had "fair," defined as severely limited ability to function, to poor or no ability in understanding and memory and "fair" abilities in making social adjustments.  The claimant was assessed with marked limitation in all areas of mental functioning (Exh. 6F).  The undersigned finds the opinion of
Ms. Banhan is not persuasive, as it is not supported by the overall evidence of record.  Subsequent evidence of record, including examination by Ms. Banhan shows improvement in symptoms.  For example, subsequent treatment notes show no observed problems with memory (Exh. 23F, pp. 30, 58 and 73).  During one of his most recent documented mental examinations in with Ms. Banhan in April 2022, the claimant reported some mood improvement and denied plans of self-harm (Exh. 23F, p. 32).  He reported fair concentration and fair concentration (Exh. 23F, p. 33).  He demonstrated good eye contact and appeared calm and cooperative.  There was no agitation or retardation.  His speech was clear and coherent.  He appeared depressed, but denied auditory and visual hallucinations.  Insight and judgment were good (Exh. 23F, p. 34).  Therefore, the undersigned finds that the overall evidence of record supports a finding that the claimant has no more than mild limitation in ability to understanding, remembering or applying information and no more than moderate limitation in interacting with others, in concentrating, persisting or maintaining pace and in adapting or managing oneself.

The claimant also receives 70 percent service-connected disability through the VA for PTSD and tinnitus (Exh. 10F, p. 96). However, the undersigned has not provided articulation about this evidence that is inherently neither valuable nor persuasive in accordance with 20 CFR 404.1520b(c) and 416.920b(c).

Based on the foregoing, the undersigned finds the claimant has the above residual functional capacity assessment, which is supported by the consistency of the evidence of record, including the claimant's subjective complaints, objective evidence, and opinions from examining and non-examining physicians. It is reasonable to limit the claimant to the full range of work activity. The nature of the claimant's treatment, findings made during the course of his treatment, and the claimant's own statements about his limitations and daily activities do not support a more restrictive finding. The totality of the evidence supports the claimant's ability to perform the full range of work activity, with additional mental limitations, as of his alleged onset date.

**6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565).**

The claimant has past relevant work as a underwriter (DOT #169.267-046), sedentary and skilled work, SVP 7, bookkeeper (DOT #210.382-014), sedentary and skilled work, SVP 6, paramedic (DOT #079.364-026), very heavy and skilled work, SVP 6. As required by SSR 82-62, this work was substantial gainful

activity, was performed long enough for the claimant to achieve average performance, and was performed within the relevant period. The vocational expert testified that an individual with the claimant's profile and above described residual functional capacity assessment would be unable to return to the claimant's past relevant work.  Accordingly, the claimant is unable to perform past relevant work as actually or generally performed.

**7.   The claimant was born on March 10, 1977 and was 40 years old, which is defined as a younger individual age 18–49, on the alleged disability onset date (20 CFR 404.1563).**

**8.   The claimant has at least a high school education (20 CFR 404.1564).**

**9.   Transferability of job skills is not material to the determination of disability because using the Medical–Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82–41 and 20 CFR Part 404, Subpart P, Appendix 2).**

**10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).**

In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical–Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical–vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83–11).  When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical–vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83–12 and 83–14).  If the claimant has solely nonexertional limitations, section 204.00 in the Medical–Vocational Guidelines provides a framework for decisionmaking (SSR 85–15).

The claimant's ability to perform work at all exertional levels has been compromised by nonexertional limitations.  To determine the extent to which these limitations erode the occupational base of unskilled work at all exertional levels, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity.  The vocational

expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as: 1. Blender, laborer (DOT #520.687−010), very heavy work, SVP 1, 45,000 jobs nationally 2. Yard worker (DOT #301.687−018), heavy work, SVP 2, 40,000 jobs nationally and stacker (DOT #222.587−046), medium work, SVP 2, 20,000 jobs nationally.

Pursuant to SSR 00−4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.  To the extent that the vocational expert's testimony is inconsistent with or not addressed in the DOT, the undersigned relies on the vocational expert's education and work experience.

Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.  A finding of "not disabled" is therefore appropriate under the framework of section 204.00 in the Medical−Vocational Guidelines.

**11. The claimant has not been under a disability, as defined in the Social Security Act, from September 1, 2017, through the date of this decision (20 CFR 404.1520(g)).**

<u>DECISION</u>

Based on the application for a period of disability and disability insurance benefits protectively filed on June 13, 2018, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.

/s/ James  Conlon

James Conlon
Administrative Law Judge

June 06, 2022
Date

# LIST OF EXHIBITS

## Payment Documents/Decisions

| Component | No. | Description | Received | Dates | Pages |
|---|---|---|---|---|---|
| X83 | 1A | Initial Disability Determination by State Agency, Title II | | 2018-10-05 | 1 |
| X83 | 2A | INT T2/DDE/MRFC signed by DDS MD:PRT | | 2018-10-05 | 11 |
| X83 | 3A | Reconsideration Disability Determination by State Agency, Title II | | 2019-02-20 | 1 |
| X83 | 4A | RC T2/DDE/MRFC signed by DDS MD:PRT | | 2019-02-20 | 11 |
| X83 | 5A | ALJ Hearing Decision | | 2019-08-27 | 15 |
| X83 | 6A | AC Order | | 2019-10-24 | 6 |
| T1I | 7A | Complaint | | | 25 |
| T1I | 8A | Decision of U.S. District Court | | 2021-05-28 | 2 |
| T1I | 9A | Decision of U.S. District Court | | 2021-05-28 | 1 |
| T1I | 10A | EAJA Award | | | 2 |
| T1I | 11A | AC Order | | 2021-09-02 | 7 |

## Jurisdictional Documents/Notices

| Component | No. | Description | Received | Dates | Pages |
|---|---|---|---|---|---|
| X83 | 1B | T2 Notice of Disapproved Claim | | 2018-10-09 | 4 |
| X83 | 2B | Request for Reconsideration | | 2018-12-07 | 1 |

| | | | | |
|-----|------|---------------------------------------------------------------|-----------|----|
| X83 | 3B   | T2 Disability Reconsideration Notice                          | 2019–02– 21 | 4 |
| X83 | 4B   | Request for Hearing by ALJ                                    | 2019–04– 15 | 3 |
| X83 | 5B   | Request for Hearing Acknowledgement Letter                   | 2019–04– 22 | 14 |
| X83 | 6B   | Objection to Video Hearing                                    | 2019–04– 24 | 16 |
| X83 | 7B   | Hearing Notice                                                | 2019–05– 17 | 20 |
| X83 | 8B   | Acknowledge Notice of Hearing                                 | 2019–06– 27 | 1 |
| X83 | 9B   | Notice Of Hearing Reminder                                    | 2019–07– 24 | 1 |
| X83 | 10B  | Request for Review of Hearing Decision/Order                 | 2019–09– 04 | 3 |
| X83 | 11B  | Representative Fee Agreement – Kathleen Flynn, 25/6000        | 2019–09– 04 | 1 |
| X83 | 12B  | Appointment of Representative – Kathleen Flynn               | 2019–09– 04 | 1 |
| X83 | 13B  | AC Correspondence                                             | 2019–09– 05 | 5 |
| X83 | 14B  | Request for Hearing Acknowledgement Letter                   | 2019–11– 05 | 15 |
| X83 | 15B  | Objection to Video Hearing                                    | 2019–11– 12 | 1 |
| X83 | 16B  | Hearing Notice                                                | 2020–01– 15 | 29 |
| X83 | 17B  | Acknowledge Notice of Hearing                                 | 2020–01– 23 | 2 |
| X83 | 18B  | Notice Of Hearing Reminder                                    | 2020–03– 19 | 6 |
| X83 | 19B  | SSA–1696 – Claimant's Appointment of a Representative        | 2020–03– 25 | 2 |

| X83 | 20B | SSA–1693 – Fee Agreement for Representation before SSA | | 2020–03–25 | 2 |
| X83 | 21B | SSA–1696– SUP1 – Claimant's Revocation of the Appointment of a Representative | Subsequent to hearing | 2020–03–25 | 2 |
| LEX | 22B | Request for Review of Hearing Decision/Order | | 2020–05–18 | 3 |
| X83 | 23B | T2 Notice of Disapproved Claim | | 2021–03–30 | 9 |
| X83 | 24B | Request for Hearing Acknowledgement Letter | | 2021–09–15 | 15 |
| X83 | 26B | Hearing Notice | | 2021–10–08 | 25 |
| X83 | 27B | Acknowledge Notice of Hearing – signed by Claimant | | 2021–10–13 | 1 |
| X83 | 25B | Report of Contact – CVTA Accepted | | 2021–09–20 | 1 |
| X83 | 29B | Notice Of Hearing Reminder | | 2021–12–29 | 6 |
| X83 | 28B | SSA–1696–SUP2 – Representative's Withdrawal of Acceptance of Appointment – Erica Dempsey, Esq. only | | 2021–12–21 | 1 |
| X83 | 30B | SSA–1696 – Claimant's Appointment of a Representative | | 2020–10–01 | 7 |
| X83 | 31B | Fee Agreement for Representation before SSA | | 2020–10–01 | 1 |

| X83 | 32B | SSA−1696−SUP2 − Representative's Withdrawal of Acceptance of Appointment − Ida Comerford, Esq. − Fee withdrawn | | 2022−02−09 | 1 |
|-----|-----|-----|-----|-----|-----|
| X83 | 33B | Right to Representation | | 2022−02−11 | 6 |
| X83 | 34B | Hearing Notice | | 2022−02−16 | 18 |
| X83 | 35B | Acknowledge Notice of Hearing | | 2022−03−01 | 1 |
| X83 | 36B | Prior Representative's Waiver of Fee − Kenneth Hiller, Esq. | | 2022−04−21 | 2 |
| X83 | 37B | Notice Of Hearing Reminder | | 2022−04−26 | 6 |
| X83 | 38B | Fee Agreement for Representation before SSA | | 2022−05−23 | 1 |
| X83 | 39B | SSA−1696 − Claimant's Appointment of a Representative | | 2022−05−23 | 4 |

## **<u>Non−Disability Development</u>**

| Component | No. | Description | Received | Dates | Pages |
|-----------|-----|-------------|----------|-------|-------|
| X83 | 1D | VA Disability Rating Verification | | 2018−04−11 | 30 |
| X83 | 2D | Application for Disability Insurance Benefits | | 2018−06−22 | 7 |
| X83 | 4D | Detailed Earnings Query | | 2019−04−18 | 4 |
| X83 | 5D | Summary Earnings Query | | 2019−04−18 | 1 |
| X83 | 6D | Certified Earnings Records | | 2019−04−18 | 2 |

| X83 | 7D | New Hire, Quarter Wage, Unemployment Query (NDNH) | | 2019–04–18 | 2 |
|-----|------|------|------|------|-----|
| X83 | 3D | Amendment to T2 Application | | 2018–06–22 | 4 |
| X83 | 8D | VA Disability Rating Verification | | 2019–01–02 | 2 |
| X83 | 9D | Detailed Earnings Query | | 2019–07–25 | 4 |
| X83 | 10D | New Hire, Quarter Wage, Unemployment Query (NDNH) | | 2019–07–25 | 2 |
| X83 | 11D | Summary Earnings Query | | 2019–07–25 | 1 |
| X83 | 12D | Certified Earnings Records | | 2019–07–25 | 2 |
| X83 | 13D | VA Disability Rating Verification | | 2009–07–06 | 9 |
| X83 | 14D | VA Disability Rating Verification – 10/6/2008 Rating Decision | Subsequent to hearing | 2009–07–15 | 7 |
| X83 | 15D | Amendments the 4/6/18 Rating Decision | | 2018–06–04 | 17 |
| X83 | 16D | Summary Earnings Query | | 2019–11–13 | 1 |
| X83 | 17D | New Hire, Quarter Wage, Unemployment Query (NDNH) | | 2019–11–13 | 2 |
| X83 | 18D | Detailed Earnings Query | | 2019–11–13 | 4 |
| X83 | 19D | Certified Earnings Records | | 2019–11–13 | 2 |
| X83 | 20D | Certified Earnings Records | | 2020–03–25 | 2 |
| X83 | 21D | Detailed Earnings Query | | 2020–03–25 | 4 |

| X83 | 22D | New Hire, Quarter Wage, Unemployment Query (NDNH) | | 2020−03− 25 | 2 |
| X83 | 23D | Summary Earnings Query | | 2020−03− 25 | 1 |
| X83 | 24D | Detailed Earnings Query | | 2021−09− 30 | 4 |
| X83 | 25D | Summary Earnings Query | | 2021−09− 30 | 1 |
| X83 | 26D | New Hire, Quarter Wage, Unemployment Query (NDNH) | | 2021−09− 30 | 1 |
| X83 | 27D | Detailed Earnings Query | | 2022−01− 13 | 4 |
| X83 | 28D | Summary Earnings Query | | 2022−01− 13 | 1 |
| X83 | 29D | New Hire, Quarter Wage, Unemployment Query (NDNH) | | 2022−01− 13 | 1 |
| X83 | 30D | Certified Earnings Records | | 2022−01− 13 | 3 |
| X83 | 31D | Detailed Earnings Query | | 2022−04− 28 | 4 |
| X83 | 32D | Summary Earnings Query | | 2022−04− 28 | 1 |
| X83 | 33D | New Hire, Quarter Wage, Unemployment Query (NDNH) | | 2022−04− 28 | 1 |
| X83 | 34D | Certified Earnings Records | | 2022−04− 28 | 3 |

## Disability Related Development

| Compone nt | No. | Description | Received Source | Dates | Pages |
|---|---|---|---|---|---|
| X83 | 1E | Disability Report − Field Office | | to 2018− 06−22 | 3 |
| X83 | 2E | Work History Report | James Yoon | to 2018− 06−22 | 9 |

| | | | | | |
|---|---|---|---|---|---|
| X83 | 3E | Disability Report – Adult | | to 2018–06–22 | 8 |
| X83 | 4E | HIT SSA–827 Issue | Va Medical Center | to 2018–06–22 | 1 |
| X83 | 5E | Work History Report | James Yoon | to 2018–07–22 | 12 |
| X83 | 6E | Function Report – Adult | | to 2018–07–22 | 12 |
| X83 | 7E | HIT SSA–827 Issue | Va Medical Center | to 2018–08–03 | 1 |
| X83 | 8E | Disability Report – Field Office | | to 2019–01–09 | 2 |
| X83 | 9E | Disability Report – Appeals | | to 2019–01–09 | 7 |
| X83 | 10E | Function Report – Adult | | to 2019–02–18 | 11 |
| X83 | 11E | Function Report – Adult | | to 2019–02–18 | 9 |
| X83 | 12E | Disability Report – Appeals | | to 2019–04–15 | 8 |
| X83 | 13E | Disability Report – Field Office | | to 2019–04–15 | 2 |
| X83 | 14E | Exhibit List to Rep PH2E | | to 2019–04–18 | 12 |
| X83 | 15E | Work Activity Report EE | | to 2019–04–18 | 1 |
| X83 | 16E | Work Background | | to 2019–07–08 | 1 |
| X83 | 17E | Recent Medical Treatment | | to 2019–07–08 | 1 |
| X83 | 18E | Medications | | to 2019–07–08 | 2 |
| X83 | 19E | Misc Disability Development and Documentation | | to 2019–07–30 | 7 |
| X83 | 21E | Resume of Vocational Expert | Lane Westcott | to 2019–08–06 | 2 |
| X83 | 20E | Report of Contact | | to 2019–08–02 | 1 |
| X83 | 22E | Representative Brief | Kathleen Flynn | to 2019–09–04 | 7 |

| X83 | 23E | Statement of Claimant or Other Person | James Yoon | to 2019–10–02 | 2 |
| X83 | 24E | Exhibit List to Rep PH2E | Atl North Oho | to 2019–11–18 | 11 |
| X83 | 25E | Recent Medical Treatment | James Yoon | to 2020–01–07 | 2 |
| X83 | 26E | Work Background | James Yoon | to 2020–01–07 | 4 |
| X83 | 27E | Medications | James Yoon | to 2020–01–07 | 6 |
| X83 | 29E | Correspondence regarding efforts to obtain evidence | Kathleen Flynn, Rep | to 2020–03–11 | 3 |
| X83 | 30E | Correspondence regarding efforts to obtain evidence | Kathleen Flynn, Rep | to 2020–03–16 | 3 |
| X83 | 28E | Resume of Vocational Expert | Rena Serkin | to 2020–01–23 | 2 |
| LEX | 31E | Representative Brief | Kathleen Flynn | to 2020–05–18 | 8 |
| X83 | 32E | Work History Report | | to 2020–09–09 | 9 |
| X83 | 33E | Disability Report – Adult | | to 2020–09–09 | 7 |
| X83 | 34E | Disability Report – Field Office | | to 2020–09–09 | 3 |
| X83 | 35E | Function Report – Adult | Yoon, James Kiwon | to 2020–09–24 | 9 |
| X83 | 36E | Work History Report | Yoon, James Kiwon | to 2020–09–24 | 10 |
| X83 | 37E | Disability Report – Field Office | | to 2021–04–19 | 2 |
| X83 | 38E | Disability Report – Appeals | | to 2021–04–19 | 7 |
| X83 | 39E | Function Report – Adult | James Kiwon Yoon | to 2021–05–11 | 8 |
| X83 | 40E | Misc Disability Development and Documentation | Dept Of Veterans Affairs | to 2009–07–06 | 10 |
| X83 | 41E | Misc Disability Development and Documentation | Dept Of Veterans Affairs | to 2009–07–15 | 8 |

| | | | | | |
|---|---|---|---|---|---|
| X83 | 42E | Misc Disability Development and Documentation | Dept Of Veterans Affairs | to 2018–04–06 | 13 |
| X83 | 43E | Misc Disability Development and Documentation | Dept Of Veterans Affairs | to 2018–05–30 | 18 |
| X83 | 44E | Exhibit List to Rep PH2E – to Kathleen Flynn | Atlanta North Oho | to 2021–09–30 | 11 |
| X83 | 45E | Work Background | Claimant | to 2021–10–20 | 2 |
| X83 | 46E | Recent Medical Treatment | Claimant | to 2021–10–20 | 1 |
| X83 | 47E | Medications | Claimant | to 2021–10–20 | 2 |
| X83 | 48E | Correspondence regarding efforts to obtain evidence | Kathleen Flynn, Esq. | to 2021–12–22 | 2 |
| X83 | 49E | Resume of Vocational Expert | Michael C. Dorsey | | 2 |
| X83 | 50E | Work Background | Claimant | to 2022–03–11 | 1 |
| X83 | 51E | Medications | Claimant | to 2022–03–16 | 1 |
| X83 | 52E | Report of Contact | | to 2022–03–31 | 1 |
| X83 | 53E | Report of Contact | | to 2022–03–31 | 1 |
| X83 | 54E | Report of Contact | | to 2022–03–31 | 1 |
| X83 | 55E | Correspondence regarding efforts to obtain evidence | | to 2022–04–26 | 2 |
| X83 | 56E | Resume of Vocational Expert | James N. Cowart | to 2022–05–09 | 2 |
| X83 | 57E | Correspondence regarding efforts to obtain evidence | | to 2022–05–19 | 2 |
| X83 | 58E | Representative Correspondence | | 2022–05–23 to | 1 |

**Medical Records**

| Compone nt | No. | Description | Received | Source | Dates | Pages |
|---|---|---|---|---|---|---|
| X83 | 1F | Hospital Records | | Atlanta Vamc | 2017–11–22 to 2018–09–14 | 92 |
| X83 | 2F | Progress Notes | | Atlanta Vamc | 2017–11–22 to 2019–03–01 | 183 |
| X83 | 3F | HIT MER | | Veterans Affairs (Va) | 2018–05–21 to 2019–04–18 | 90 |
| X83 | 4F | Progress Notes | | River Parc Internal Medicine | 2012–08–10 to 2016–05–23 | 26 |
| X83 | 5F | Hospital Records | | Atlanta Va Medical Center | 2019–04–29 to 2019–09–17 | 49 |
| X83 | 6F | Medical Assessment Mental Ability–Work Related Activities | | Wanda Banham, Mpas, Pa–C | to 2019–11–01 | 5 |
| X83 | 7F | Hospital Records | | Atlanta Va Medical Center | 2019–08–23 to 2020–01–07 | 106 |
| X83 | 8F | Medical Evidence of Record | | Atlanta Va Medical Center | 2020–01–15 to 2020–03–16 | 29 |
| X83 | 9F | Hospital Records | Subsequ ent to hearing | Atlanta Va Medical Center | 2020–01–15 to 2020–03–05 | 41 |
| X83 | 10F | Misc Medical Records | | Dept Of Veterans Affairs | 2005–12–08 to 2015–06–24 | 716 |

| | | | | | |
|---|---|---|---|---|---|
| X83 | 11F | Progress Notes | River Parc Internal Medicine | 2012–08–10 to 2016–05–23 | 27 |
| X83 | 12F | Progress Notes | Va Medical Center | 2010–12–02 to 2018–11–08 | 412 |
| X83 | 13F | Medical Assessment Mental Ability–Work Related Activities | Wanda Banhan Mpas Pa–C | to 2019–11–01 | 6 |
| X83 | 14F | Progress Notes | Atlanta Va Medical Center | 2010–09–22 to 2020–07–20 | 408 |
| X83 | 15F | Progress Notes | Atlanta Va Medical Center | 2020–08–17 to 2020–11–05 | 258 |
| X83 | 16F | Consultative Examination Report | Daniel Welch Mcdonald PhD – CE | to 2021–03–24 | 5 |
| X83 | 17F | Progress Notes | Federal Jhie | 2021–05–03 to 2021–07–02 | 312 |
| X83 | 18F | Progress Notes | Federal Jhie | 2021–04–30 to 2021–07–07 | 78 |
| X83 | 19F | Progress Notes | Dept Of Vet Affairs Atlanta Vamc | 2021–04–27 to 2021–09–23 | 290 |
| X83 | 20F | Progress Notes | Atlanta Va Medical Center | 2021–09–23 to 2022–01–18 | 253 |
| X83 | 21F | Progress Notes | Atlanta Va Medical Center | to 2022–01–19 | 7 |

| X83 | 22F | Progress Notes | Atlanta Va Medical Center | 2021-01-22 to 2021-03-31 | 37 |
| X83 | 23F | Hospital Records | Atlanta Va Medical Center | 2022-01-24 to 2022-05-17 | 76 |
| X83 | 24F | Medical Evidence of Record | Dept Of Veterans Affairs Current Rating | 2020-03-29 to 2020-03-29 | 3 |