# Exhibit A

 **SOCIAL SECURITY ADMINISTRATION**

Office of Hearings Operations
Room 2909
26 Federal Plaza
New York, NY 10278-2999

Date: August 17, 2022

Dominique C. Calhoun on behalf of

234 Laurel Street
Buffalo, NY 14208-2005

## Notice of Decision – Unfavorable

I carefully reviewed the facts of your case and made the enclosed decision. Please read this notice and my decision.

### If You Disagree With My Decision

If you disagree with my decision, you may file an appeal with the Appeals Council.

### How To File An Appeal

To file an appeal you or your representative must ask in writing that the Appeals Council review my decision. The preferred method for filing your appeal is by using our secure online process available at https://www.ssa.gov/benefits/disability/appeal.html.

You may also use our Request for Review form (HA-520) or write a letter. The form is available at https://www.ssa.gov/forms/ha-520.html. Please write the Social Security number associated with this case on any appeal you file. You may call (800) 772-1213 with questions.

Please send your request to:

**Appeals Council
5107 Leesburg Pike
Falls Church, VA 22041-3255**

### Time Limit To File An Appeal

You must file your written appeal **within 60 days** of the date you get this notice. The Appeals Council assumes you got this notice 5 days after the date of the notice unless you show you did not get it within the 5-day period.

Form HA-L76-OP2 (03-2010)

**Suspect Social Security Fraud?
Please visit http://oig.ssa.gov/r or call the Inspector General's Fraud Hotline
at 1-800-269-0271 (TTY 1-866-501-2101).**

See Next Page

(BNC#: 21SZ901A36275)                                    Page 2 of 3

The Appeals Council will dismiss a late request unless you show you had a good reason for not filing it on time.

**What Else You May Send Us**

You or your representative may send us a written statement about your case. You may also send us new evidence. You should send your written statement and any new evidence **with your appeal**. Sending your written statement and any new evidence with your appeal may help us review your case sooner.

**How An Appeal Works**

The Appeals Council will consider your entire case. It will consider all of my decision, even the parts with which you agree. Review can make any part of my decision more or less favorable or unfavorable to you. The rules the Appeals Council uses are in the Code of Federal Regulations, Title 20, Chapter III, Part 416 (Subpart N).

The Appeals Council may:

- Deny your appeal,
- Return your case to me or another administrative law judge for a new decision,
- Issue its own decision, or
- Dismiss your case.

The Appeals Council will send you a notice telling you what it decides to do. If the Appeals Council denies your appeal, my decision will become the final decision.

**The Appeals Council May Review My Decision On Its Own**

The Appeals Council may review my decision even if you do not appeal. If the Appeals Council reviews your case on its own, it will send you a notice within 60 days of the date of this notice.

**When There Is No Appeals Council Review**

If you do not appeal and the Appeals Council does not review my decision on its own, my decision will become final. A final decision can be changed only under special circumstances. You will not have the right to Federal court review.

**New Application**

You have the right to file a new application at any time, but filing a new application is not the same as appealing this decision. If you disagree with my decision and you file a new application instead of appealing, you might lose some benefits or not qualify for benefits at all. If you disagree with my decision, you should file an appeal within 60 days.

Form HA-L76-OP2 (03-2010)

See Next Page

(BNC#: 21SZ901A36275)                                      Page 3 of 3

**If You Have Any Questions**

1. Visit www.ssa.gov for fast, simple, and secure online service.
2. Call us at **1-800-772-1213**, weekdays from 8:00 am to 7:00 pm. If you are deaf or hard of hearing, call TTY **1-800-325-0778**. Please mention this notice and decision when you call.
3. You may also call your local office at (855) 881-0213.

                              Social Security
                              Suite 200
                              478 Main Street
                              Buffalo, NY 14202-9813

**How are we doing?** Go to www.ssa.gov/feedback to tell us.

                              Seth I Grossman
                              Administrative Law Judge

Enclosures:
Decision Rationale

cc:   Ida M. Comerford
      Law Office Of Kenneth Hiller
      6000 N. Bailey Ave
      Ste 1 A
      Amherst, NY 14226



**SOCIAL SECURITY ADMINISTRATION**
**Office of Hearings Operations**

**DECISION**

| **IN THE CASE OF** | **CLAIM FOR** |
|---|---|
| | Supplemental Security Income |
| (Claimant) | |
| | 21SZ901A36275 |
| (Wage Earner) | (Beneficiary Notice Control Number) |
| | *Social Security Number removed for your protection* |

## JURISDICTION AND PROCEDURAL HISTORY

On August 7, 2020, an application for supplemental security income was protectively filed on behalf of the claimant, an individual under age 18, with an alleged disability onset date of May 6, 2017. The claim was denied initially on May 20, 2021, and upon reconsideration on September 17, 2021. Thereafter, a written request for hearing was filed on September 30, 2021. On June 15, 2022, the undersigned held a telephone hearing due to the extraordinary circumstance presented by the Coronavirus Disease 2019 (COVID-19) Pandemic. All participants attended the hearing by telephone. The claimant and Dominique Calhoun, the claimant's mother, agreed to appear by telephone before the hearing, and confirmed such agreement at the start of the hearing. (12E). The claimant is represented by Ida M. Comerford, an attorney, and was represented at the hearing by Jeanne Murray, an attorney.

## ISSUE AND APPLICABLE LAW

The issue is whether the claimant is disabled under section 1614(a)(3)(C) of the Social Security Act. To make this determination, the undersigned has considered all relevant evidence based on the requirements of 20 CFR 416.924.

A claimant under the age of 18 is considered disabled if they have a physical or mental impairment, or combination of impairments, that results in marked and severe functional limitations, and that have lasted, or can be expected to last for a continuous period of not less than 12 months, or can be expected to result in death. Additionally, an individual that is engaging in substantial gainful activity (SGA), is not considered disabled under our rules.

A three-step sequential evaluation process is used to determine whether a claimant under age 18 is disabled (20 CFR 416.924(a)). If it is determined that the claimant is not disabled at step 1 or 2 of the evaluation process, the evaluation ends at that step. The three steps are: (1) Is the claimant engaging in SGA? (2) Does the claimant have an impairment or combination of impairments that is severe? (3) Does the claimant's impairment or combination of impairments meet, medically equal, or functionally equal a listed impairment?



See Next Page

Case 1:23-mi-99999-UNA   Document 1542-1   Filed 05/11/23   Page 7 of 19

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, the undersigned makes the following findings:

**1. The claimant was born on May 6, 2015. Therefore, she was a preschooler on August 7, 2020, the date application was filed, and is currently a school-age child (20 CFR 416.926a(g)(2)).**

**2. The claimant has not engaged in substantial gainful activity since August 7, 2020, the application date (20 CFR 416.924(b) and 416.971 *et seq.*).**

At step one, the undersigned must determine whether the claimant is engaging in SGA, defined as work that involves significant physical or mental activities and that is done for pay or profit (20 CFR 416.972). There is no evidence of work activity on or after the application date.

**3. The claimant has the following severe impairments: history of elevated lead level; speech and language delay; borderline intellectual functioning (20 CFR 416.924(c)).**

At step two, the undersigned must determine if the claimant has a severe impairment, defined as a medically determinable impairment that causes more than minimal functional limitations, or a combination of impairments that causes more than minimal functional limitations.

**4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).**

At step three, the undersigned must first determine whether the claimant has an impairment or combination of impairments that meets or medically equals the severity of one of our medical listings. These listings describe impairments that cause marked and severe functional limitations. In making this determination, the undersigned must consider the combined effect of all medically determinable impairments, even those that are not severe. If the severity of the impairment(s) meets or medically equals the medical criteria in a listing, the claimant is disabled under our rules.

The undersigned has considered the Listing of Impairments but the medical evidence does not establish that the claimant's impairment(s), individually or in combination, meet or equal in severity the criteria of a listed impairment.

Listing 111.09, Communication Impairment, is not met because the claimant's clarity and content of speech is not significantly affected, the claimant has effective verbal communication for age, and has no impairment of hearing. 112.02 is not met because the claimant does not have clinically significant deviation in normal cognitive development or significant cognitive decline with extreme limitation of one, or marked limitation of two of the following areas of mental functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself. The claimant's

See Next Page

(BNC#: 21SZ901A36275)  Page 3 of 8

mental disorder is also not "serious and persistent as defined in the listings. Listing 112.05 is not met because the claimant does not have significant deficits in adaptive functioning manifested by dependence upon others for personal needs in excess of age-appropriate dependence. Furthermore, the claimant does not have extreme limitation of one, or marked limitation of two of the following areas of mental functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself.

### 5. The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a).

If the claimant has a severe impairment or combination of impairments that does not meet or medically equal any listing, the undersigned must determine whether the claimant has an impairment or combination of impairments that functionally equals the listings. When determining functional equivalence, the undersigned evaluates the "whole child" (see Social Security Ruling 09-1p), by considering how the claimant functions at home, at school, and in the community; the interactive and cumulative effects of all of the claimant's medically determinable impairments on the claimant's activities; and the type, extent, and frequency of help the claimant needs.

The undersigned must consider how the claimant functions in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. To functionally equal the listings, the claimant's impairment or combination of impairments must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. Our rules explain that a claimant has a "marked" limitation in a domain when her impairment(s) "interferes seriously" with the ability to independently initiate, sustain, or complete activities, and a claimant has an "extreme" limitation" in a domain when her impairment(s) "interferes very seriously" with these same abilities. In making this assessment, the undersigned must compare how appropriately, effectively and independently the claimant performs activities compared to the performance of other children of the same age who do not have impairments (20 CFR 416.926a).

Based on the requirements of 20 CFR 416.924a(a) and SSR 09-2p, the undersigned has considered all of the relevant evidence in the case record. "All of the relevant evidence" includes objective medical evidence and other relevant evidence from medical sources; information from other sources, such as school teachers, family members, or friends; the claimant's statements (including statements from the claimant's parent(s) or other caregivers); and any other relevant evidence in the case record, including how the claimant functions over time and in all settings (i.e., at home, at school, and in the community).

 The undersigned finds that the claimant has:
- less than a marked limitation in acquiring and using information;
- less than a marked limitation in attending and completing tasks;
- less than a marked limitation in interacting and relating with others;
- no limitation in moving about and manipulating objects;



See Next Page

(BNC#: 21SZ901A36275)  Page 4 of 8

- <u>no</u> limitation in the ability to care for herself; and
- <u>less than a marked</u> limitation in health and physical well-being.

In determining the degree of limitation in each of the six domains of functioning, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSR 09-2p through 8p, and 16-3p.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine the claimant's functional limitations.

The claimant alleges disability due to lead poisoning, heart murmur, learning disabled, and behavioral problems (1E). The claimant's mother testified that she has high anxiety and she cannot stay on task. She sees a counselor at school. She stated that the claimant does not sleep well at night sometimes due to her anxiety. Her teeth have weak enamel. She stated that the claimant has an IEP, and she has problems with her speech. She gets speech therapy which helped, but she still has trouble. Her grades are reportedly average, but improved from last year. She stated that the counseling and speech helped. She stated that the claimant needs help and guidance with homework, and she gets reminders at school. She has one friend and she plays with other kids but she argues with them if things do not go her way. The claimant had a high level of lead, and the pediatrician is monitoring it. She gets anxiety from almost everything. She is not good at listening to directions, and may forget in a short time and has to be reminded three to four times. She does not remember to do chores. She is aware of dangers, and because of her anxiety she thinks everything is dangerous. She participates in gym and dance classes. She has big outbursts and needs help to calm down, which can take up to an hour.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the allegations concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record.

Pediatric treatment records indicate that the claimant has a history of elevated lead levels in her blood. Lab results from September 26, 2019 showed an elevated lead level of 8 mcg/dL (1F at 14). However, her well child visit on that date states that she eats well, was sleeping well, and was doing well in pre-kindergarten (Id. at 9). Her examination was normal except for a heart

See Next Page

murmur, and she was noted to have normal development. (Id. at 10). At a well visit on January 4, 2021, the claimant was noted to have a good appetite, no issues with sleep, she was interactive, and she was in first grade and reportedly liked school and reading. She plays with her siblings. (3F at 2). Her examination was normal, and it was noted that she was "doing well overall" (Id. at 4).

Subsequent records show that the claimant was seen on April 2, 2021 for urinary frequency, and referred to urology, but there is no indication that she followed through with this referral (13F at 2). She was also seen for scalp lesions on April 26, 2022, and was diagnosed with tinea capitis and prescribed medication (Id. at 8). However, at this appointment, her physical examination was otherwise normal. (Id.).

The claimant was referred to the Committee on Special Education due to concerns with her speech and language development. She underwent a psycho-educational evaluation on May 11, 2021. Cognitive testing yielded scores in the average range of intellectual functioning. However, her academic skills were tested to be in the below average to low range. It was noted that she presents as a friendly girl who enjoys coming to school, however she does require discipline at home for being defiant and demonstrating aggression toward her siblings. Her mother described her as a night owl and sometimes struggles to fall asleep. She can be sensitive to what others think of her but she enjoys meeting new people and making friends. Her teacher noted that she presents as well-liked in the classroom, and did not express social-emotional or behavioral concerns in the classroom. The psychologist noted that due to a degree of natural consequences of the COVID-19 pandemic, her academic skills are not on grade-level but are felt to be fairly commensurate with her peers. Her in-school attendance was poor and was affecting her overall academic growth and progress. (5F at 1-4).

An IEP dated May 2021 indicates that the claimant was classified with a speech or language impairment. A speech and language evaluation dated March 25, 2021 showed that her overall language score fell within normal limits, but she scored poorly on several subtests. Her teacher reported that she takes longer to process verbal information, and her attention-to-task wavers. She benefits from repetition of directions and information. Based on that information, her receptive language skills were judged to be moderately delayed. Her expressive skills were also judged to be moderately delayed. It was noted that her speech production was considered within normal limits for her age, but her phonological awareness skills are below average, negatively affecting her ability to read. She was able to initiate and use language for a variety of intents, and she uses appropriate eye contact. She was easily distracted and often in motion in her chair which affects her ability to follow directions in a group setting. Reportedly, she gets along with other children and adults. (5F at 7). Student strengths were noted to be that she likes school, and socially, she was developing her peer relationships and she gets along with peers, but she can at times show defiance when she is frustrated (Id. at 8). There were no physical concerns noted, and she was able to participate in physical activities. She did not need a behavioral intervention plan. (Id. at 9). She was given speech/language services three times in a six-day cycle, while in school, but otherwise remained in a general education classroom (Id. at 10). Progress reports from speech/language therapy indicate that the claimant was progressing satisfactorily (12F at 4).



See Next Page

The claimant underwent a consultative speech and language evaluation on March 30, 2021 with Dawn Grasso-Megyeri, M.S., CCC-SLP (4F). The claimant was cooperative and attentive throughout the evaluation. Results of the evaluation showed the claimant to have a moderate expressive language delay, however, she had normal findings regarding her voice, fluency, hearing, articulation, and pragmatics. She was able to provide answers to social and test questions, she was able to initiate and maintain eye contact, and she indicated during testing when she did not know an answer. Ms. Grasso-Megyeri diagnosed a moderate expressive language delay, but opined that the claimant was able to communicate in an effective manner using appropriate vocal quality and fluency, able to understand and follow directions, able to make her wants and needs known, and that her delay in language was not considered significant as it is not likely to impact her educational success. Speech and language therapy services were not recommended. (4F). This opinion is persuasive because it is supported by the examination findings and it is consistent with the other evidence of record.

The claimant also underwent a consultative child intelligence examination on May 6, 2015 with Janine Ippolito, Psy.D. (6F). Her attitude toward the evaluation was cooperative and friendly. She appeared relaxed and comfortable throughout the testing session. She recalled and understood instructions, and her style of responding was mostly deliberate, orderly, and self-correcting, although at times she appeared to purposely choose incorrect responses. She worked slowly, and attention and concentration was age-appropriate. She did not evidence significant emotional distress during the evaluation. The test results yielded a full scale IQ score of 75, which was in the borderline range of ability. The claimant's father indicated that she was able to pull her clothing on and off, fasten zippers independently, but needs assistance fastening buttons and tying shoes. She is reportedly able to wash her face and hands, brush her teeth, take a bath independently, but needs help toileting. She can feed herself finger foods, drink from a cup, and use utensils when eating. She has hobbies including dancing and spends a typical day going to school, dancing, playing with her siblings and playing on her tablet. Dr. Ippolito wrote that based on the claimant's presentation during the evaluation and responses, she does not appear to have any significant deficits in adaptive functioning for her age. Dr. Ippolito did not diagnose any mental impairments. Dr. Ippolito opined that the claimant presents as able to attend to adequately maintain appropriate social behavior, respond appropriately to changes in the environment, learn in accordance to cognitive functioning, ask questions and request assistance in an age-appropriate manner, be aware of danger and take needed precautions, and interact adequately with peers and adults with no evidence of limitations. She can attend to, follow, and understand age-appropriate directions and sustain concentration and complete age-appropriate tasks with mild limitations. (6F). This opinion is persuasive because it is supported by examination findings and it is generally consistent with the other evidence of record.

The DDS medical consultants opined that the claimant has less than marked limitations in the acquiring and using information domain, attending and completing tasks domain, and interacting and relating with others domain, and no limitations in the moving about and manipulating objects domain, caring for yourself domain, and health and physical well-being domain. (1A, 3A). These opinions are generally persuasive because they are well-supported by the objective medical evidence and education records. However, the undersigned finds that the claimant has a less than marked limitation in the health and physical well-being domain due to the history of elevated lead levels and heart murmur.

See Next Page

In light of the above evidence, the undersigned finds that the claimant has less than marked limitations in the acquiring and using information domain. This is supported by the consultative examination showing a full scale IQ score of 75 (6F). She has some moderate delays in expressive language (4F). However, the claimant's education records indicate that she has average cognitive abilities, and that she is behind academically due to the pandemic and because of school absences. (5F at 1-4). She is in a general education classroom with no services aside from speech and language therapy (5F at 10).

The claimant has less than marked limitations in the attending and completing tasks domain. The child intelligence evaluation indicates that the claimant's motor behavior was somewhat restless, at times she appeared to be purposely selecting incorrect responses. However, she worked slowly and her attention and concentration was age-appropriate. She was deliberate, orderly, and self-correcting. The examiner concluded the claimant had mild limitations regarding sustaining concentration and completing age-appropriate tasks. (6F). Her teacher reported that she takes longer to process verbal information, and her attention-to-task wavers. She benefits from repetition of directions and information (5F at 7). Although she has some problems in this domain, I find that, based on the above, her problems are less than marked.

The claimant has less than marked limitations in the interacting and relating with others domain. She speech and language evaluation indicated moderate expressive language delays (4F). The claimant's mother testified that she has improved with speech and language therapy over the last year. She reportedly gets along with peers and adults, and did not need a behavioral intervention plan (5F at 7, 9). She also plays with her siblings, but can become aggressive at times (testimony). Her problems in this domain are less than marked.

The claimant has less than marked limitations in the health and physical well-being domain. She has a history of elevated lead levels in her blood, and had a heart murmur. However, her physical examinations were largely normal and she was noted to be developing normally at well child visits (1F).

The claimant has no limitations in the moving about and manipulating objects domain or the caring for yourself domain. She has age-appropriate activities of daily living according to the consultative examiner (6F). She has no problems with her gross motor or fine motor skills and participates in physical activities at school (5F). She also reportedly likes to dance (6F).

Accordingly, the claimant does not have an impairment or combination of impairments that functionally equals a listing, because the claimant does not have either "marked" limitations in two domains of functioning or "extreme" limitation in one domain of functioning.

**6.    The undersigned finds that the claimant has not been disabled, as defined in the Social Security Act, since August 7, 2020, the date the application was filed (20 CFR 416.924(a)).**

## DECISION



See Next Page

(BNC#: 21SZ901A36275)                              Page 8 of 8

Based on the application for supplemental security income protectively filed on August 7, 2020, the claimant is not disabled under section 1614(a)(3)(C) of the Social Security Act.

/s/ *Seth J Grossman*

Seth I Grossman
Administrative Law Judge

August 17, 2022
Date



# LIST OF EXHIBITS

## Payment Documents/Decisions

| Component | No. | Description | Received | Dates | Pages |
|---|---|---|---|---|---|
| X82 | 1A | Disability Determination Explanation DC Initial MDI MD | | 2021-05-18 | 12 |
| X82 | 2A | Disability Determination Transmittal T16 Initial | | 2021-05-18 | 1 |
| X82 | 3A | Disability Determination Explanation DC Recon MD | | 2021-09-16 | 13 |
| X82 | 4A | Disability Determination Transmittal T16 Recon | | 2021-09-16 | 1 |

## Jurisdictional Documents/Notices

| Component | No. | Description | Received | Dates | Pages |
|---|---|---|---|---|---|
| X82 | 1B | Application for Supplemental Security Income Benefits | | 2020-08-14 | 7 |
| X82 | 2B | T16 Notice of Disapproved Claim | | 2021-05-20 | 8 |
| X82 | 3B | SSA-1696 - Claimant's Appointment of a Representative | | 2021-07-19 | 4 |
| X82 | 4B | Fee Agreement for Representation before SSA | | 2021-07-19 | 1 |
| X82 | 5B | Misc Jurisdictional Documents/Notices | | 2021-07-19 | 1 |
| X82 | 6B | T16 Disability Reconsideration Notice | | 2021-09-17 | 12 |
| X82 | 7B | Misc Jurisdictional Documents/Notices | | 2021-09-30 | 1 |
| X82 | 8B | Request for Hearing Acknowledgement Letter | | 2021-10-22 | 15 |
| X82 | 9B | Outgoing ODAR Correspondence | | 2021-11-26 | 16 |



| Component | No. | Description | Received | | Dates | Pages |
|---|---|---|---|---|---|---|
| X82 | 10B | COVID Hearing Agreement Form | | | 2021-12-23 | 2 |
| X82 | 11B | Hearing Notice | | | 2022-04-05 | 16 |
| X82 | 12B | Fee Agreement for Representation before SSA | | | 2021-08-03 | 1 |
| X82 | 13B | SSA-1696 - Claimant's Appointment of a Representative | | | 2021-08-03 | 4 |
| X82 | 14B | Acknowledge Notice of Hearing | | | 2022-04-12 | 2 |
| X82 | 15B | Notice Of Hearing Reminder | | | 2022-05-18 | 6 |

## Non-Disability Development

| Component | No. | Description | Received | | Dates | Pages |
|---|---|---|---|---|---|---|
| X82 | 1D | Application for Supplemental Security Income Benefits | | | 2020-08-14 | 7 |
| X82 | 2D | New Hire, Quarter Wage, Unemployment Query (NDNH) | | | 2022-04-27 | 1 |
| X82 | 3D | Summary Earnings Query | | | 2022-04-27 | 1 |
| X82 | 4D | Detailed Earnings Query | | | 2022-04-27 | 1 |
| X82 | 5D | Certified Earnings Records | | | 2022-06-11 | 1 |

## Disability Related Development

| Component | No. | Description | Received | Source | Dates | Pages |
|---|---|---|---|---|---|---|
| X82 | 1E | Disability Report - Child | | M Eaton (Father) | to 2020-08-14 | 6 |
| X82 | 2E | Disability Report - Field Office | | FO | to 2020-08-14 | 2 |
| X82 | 3E | Questionnaire for Children Claiming SSI Benefits | | D Calhoun | to 2020-08-14 | 8 |
| X82 | 4E | Function Report - Child Age 3 to 6 | | D Calhoun | to 2020-08-14 | 10 |
| X82 | 5E | Disability Report - Appeals | | I Comerford | to 2021-07-20 | 6 |

| Component | No. | Description | Received | Source | Dates | Pages |
|---|---|---|---|---|---|---|
| X82 | 6E | Disability Report - Field Office | | FO | to 2021-07-20 | 2 |
| X82 | 7E | Authorization for Source to Release Information to SSA | | | to 2021-09-17 | 2 |
| X82 | 8E | Disability Report - Field Office | | FO | to 2021-10-05 | 2 |
| X82 | 9E | Disability Report - Appeals | | I Comerford | to 2021-10-05 | 7 |
| X82 | 10E | Exhibit List to Rep PH2E | | Oho | to 2021-04-27 | 11 |
| X82 | 11E | Correspondence regarding efforts to obtain evidence | | Comerford & Murray | 2022-05-16 to 2022-05-16 | 1 |
| X82 | 12E | Request for Change in Time/Place of Disability Hearing | | Murray | to 2022-06-02 | 1 |
| X82 | 13E | Representative Correspondence | | | to 2022-07-15 | 2 |

## Medical Records

| Component | No. | Description | Received | Source | Dates | Pages |
|---|---|---|---|---|---|---|
| X82 | 1F | Progress Notes | | Niagara Pediatrics | 2018-06-13 to 2019-01-04 | 34 |
| X82 | 2F | Progress Notes | | Oishei Children's Hospital | 2018-06-13 to 2019-09-27 | 65 |
| X82 | 3F | Progress Notes | | Oishei Children's Hospital | to 2021-01-04 | 5 |
| X82 | 4F | CE Speech/Language | | D. Grasso Megyri Ms | to 2021-03-30 | 5 |
| X82 | 5F | Individualized Education Plan | | Buffalo Public Schools | to 2021-05-11 | 12 |
| X82 | 6F | CE Child Psychology | | J Ippolito Psyd | to 2021-05-13 | 5 |
| X82 | 7F | DDS Medical Evaluation Document | | DDS | to 2021-05-13 | 3 |
| X82 | 8F | Individualized Education Plan | | Buffalo Public Schools | 2021-05-11 to 2021-05-14 | 13 |



| | | | | | |
|---|---|---|---|---|---|
| X82 | 9F  | Medical Source - No MER Available | Oishei Children's Hospital | to 2021-08-23 | 1 |
| X82 | 10F | DDS Medical Evaluation Document | DDS | to 2021-09-15 | 3 |
| X82 | 11F | Individualized Education Plan | Hillside Park Academy | 2021-05-20 to 2022-04-26 | 9 |
| X82 | 12F | Individualized Education Plan | Hillery Park Academy | to 2021-11-23 | 4 |
| X82 | 13F | Office Treatment Records | Niagara Street Pediatrics | 2021-01-05 to 2022-04-27 | 20 |

FIRST-CLASS MAIL
PRESORTED
POSTAGE & FEES
PAID
SOCIAL SECURITY
ADMINISTRATION
PERMIT NO. G-11

PC7

**SOCIAL SECURITY ADMINISTRATION**
OFFICE OF CENTRAL OPERATIONS
1500 WOODLAWN DR
BALTIMORE MD 21241-1500

**OFFICIAL BUSINESS**
PENALTY FOR PRIVATE USE, $300



