## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **JADA WRIGHT NICHOLS,** | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| **v.** | ) | **Civil Action File No.:** |
| | ) | |
| **CHILDREN'S HEALTHCARE** | ) | |
| **OF ATLANTA, INC., TIMOTHY** | ) | **JURY TRIAL DEMANDED** |
| **STACY, SANDHYA PADIYAR** | ) | |
| | ) | |
| *Defendants.* | ) | |

_____

## <u>COMPLAINT</u>

Plaintiff JADA WRIGHT NICHOLS ("Ms. Wright"), files this Complaint against Children's Healthcare of Atlanta, Inc., ("CHOA"), Timothy Stacy, and Sandhya Padiyar, collectively ("Defendants") to vindicate her rights and recover all permissible damages under controlling law because Defendants violated Ms. Wright's rights pursuant to Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e Et seq.), and pursuant to 42 U.S.C. § 1981, to be free from racial discrimination and disparate treatment, including retaliation, regarding Ms. Wright's compensation, terms, conditions, or privileges of employment.

## INTRODUCTION

### 1.

Ms. Wright is an African-American female, aged 47 and single mother of a young daughter. During her professional career, Ms. Wright has, herself, won much praise and accolades for her work as an occupational therapist and maternal wellness consultant and educator specializing in occupational therapy, massage therapy, lactation support, childbirth education and more in the public health arena.

### 2.

'No good deed goes unpunished' however, because despite Ms. Wright's individual and team success as an employee of Defendants, these Defendants have intentionally and willfully violated Ms. Wright's right to be free from race-based discrimination in her employment.

### 3.

Defendants discriminated against Ms. Wright by racial harassment and verbal abuse of her and other African-American employees; and through a discriminatory schematic that allowed Caucasians to receive better on-the-job treatment compared to African-American workers similarly situated.

4.

During her time as a professional lactation consultant at CHOA, Ms. Wright worked at the Egleston Campus in Decatur, DeKalb County, Georgia, and when Ms. Wright began to document and complain of racial disparities and a hostile workplace, Defendants began to malign Ms. Wright and began a series of attacks that ultimately led to her wrongful termination in 2021.

5.

Notably, when Ms. Wright put the concerns about these racial disparities and disparate treatment and abuse in writing and forwarded such concerns to CHOA supervisors, Ms. Wright experienced retaliation and all previous accolades ceased even though performance was high.

6.

All the while Ms. Wright was making these concerns regarding racial disparities, discrimination and understaffing known to the Defendants, her immediate supervisor, Defendant Padiyar was making harsh, racial verbal attacks to the African-American employees under her supervision.

7.

Ms. Wright also documented these actions and put in writing her concerns about this racial discrimination and hostile work environment for her and other African-American employees. Ms. Wright reported these concerns in or about

October 2021, to Defendant Timothy Stacy, who was the supervisor of Defendant Padiyar.

8.

Dissatisfied with being discriminated against, and retaliated against for complaining of the unlawful discrimination acts, Ms. Wright lodged a complaint with the Equal Employment Opportunity Commission ("EEOC") which granted her a right to sue under Title VII of the Civil Rights Act of 1964 *inter alia* relevant and applicable laws.

9.

Moving away from the specifics regarding Ms. Wright, Defendants' own actions (and omissions) support the allegation that Defendants have instituted and continue to cultivate an anti-African-American work environment.

10.

The hostile work environment that Ms. Wright exposed has seen several Black women resign specifically because of CHOA's *de facto* endorsement of Defendant Padiyar's abuse; for example, when one Black female employee, also tired of the discrimination and abuse, asked to be transferred to another department, Padiyar stated that she was "going to make her next two weeks hell."

11.

All of this was occurring simultaneously as Ms. Wright was reporting her complaints to Defendant Stacy, the director, who never specifically addressed the complaints or offered any support, or inquired any further.

12.

Consequently, there was a ramping up of the abuse and hostility, during the three weeks between the reporting and Ms. Wright's ultimate termination by Defendants in November 2021.

## JURISDICTION AND VENUE

13.

Plaintiff incorporates Paragraphs 1 through 12 by reference and incorporates said paragraphs herein as if they were a part hereof.

14.

Jurisdiction is proper under 28 U.S.C. § 1331 and 1343(a)(4). Venue is proper under 28 U.S.C. § 1391(b) and L.R. 3.1(B)(3) because (1) a substantial part of the events and omissions giving rise to Ms. Wright's claims occurred in this District and Division and (2) Defendants reside and transact business in this District and Division.

## ADMINISTRATIVE EXHAUSTION

### 15.

Plaintiff incorporates Paragraphs 1 through 14 by reference and incorporates said paragraphs herein as if they were a part hereof.

### 16.

Ms. Wright has satisfied all procedural and administrative requirements with respect to filing this lawsuit.

## **PARTIES**

### 17.

Plaintiff incorporates Paragraphs 1 through 16 by reference and incorporates said paragraphs herein as if they were a part hereof.

### 18.

**Plaintiff Jada Wright Nichols** is an African-American citizen of the United States; aged forty-seven (47), she is a single mom raising her 10-year-old daughter. She is a resident of Georgia and pursuant to U.S. law, as an African-American woman, Ms. Wright is a member of a "protected class." (*See* 42 U.S.C. § 2000e–2(a)(1) and 42 U.S.C. § 1981.)

### 19.

During all times relevant to this Complaint, Ms. Wright was employed as a lactation consultant, by Children's Healthcare of Atlanta, Inc., first as a part-time employee in 2018, then as a full-time employee in 2019 through her termination in

November 2021. During her tenure at CHOA, Ms. Wright received the "Catch me At My Best" award for outstanding employee performance on multiple occasions in under two years' time.

20.

Ms. Wright holds a Master of Occupational Therapy from Nova Southeastern University and a Bachelor of Science from Tennessee State University.

21.

Ms. Wright is Board Certified, an International Board Certified Lactation Consultant (IBCLC) from the International Board of Lactation Examiners; a Certified Lactation Counselor (CLC) from the Academy of Lactation Policy & Practice; Breastfeeding Peer Counselor from ROSE Breastfeeding and Breastfeeding USA; a Certified Lymphedema Therapist from the Academy of Lymphatic Studies; a Certified, Registered, and Licensed Massage Therapist (LMT) from the Academy of Somatic Healing Arts; and a Holistic Health Counselor from the Institute for Integrative Nutrition.

22.

Ms. Wright has held membership with the American Occupational Therapy Association; American Massage Therapy Association; International

Lactation Consultants Association; and the United States Breastfeeding Committee's Lactation Support Professionals Constellation.

23.

**Defendant Children's Healthcare of Atlanta, Inc.**, is a duly incorporated nonprofit corporation with more than 5,000 employees, doing business in Georgia and is subject to the jurisdiction of this Court. The CHOA corporation operates three children's hospitals: Scottish Rite Hospital in North Fulton County; Egleston Hospital in DeKalb County, and Hughes Spalding Hospital in downtown Atlanta (associated with the Grady Health System) and CHOA's primary academic-research partner is Emory University School of Medicine. CHOA is building a new hospital in the City of Brookhaven in DeKalb County and CHOA operates several urgent-care centers throughout metropolitan Atlanta. CHOA is a 501(c)(3) tax-exempt organization and as such **must abide by and follow all federal and state laws**. Defendant may be served via its Registered Agent, CSC of Cobb County, Inc., at 192 Anderson Street SE, Suite 125, Marietta, Georgia 30060.

24.

**Defendant Timothy Stacy** is director of pharmacy and clinical nutrition, at Children's Healthcare of Atlanta, Inc., and at all times relevant was one of the decision makers with respect to the employment and termination of Jada Wright

Nichols. Additionally, at all times relevant to this Complaint, Stacy was the immediate supervisor of Defendant Sandhya Padiyar who was the direct supervisor of Plaintiff. Defendant may be served at his office at the CHOA's Egleston Hospital at 1405 Clifton Road, Atlanta, Georgia 30322.

25.

**Defendant Sandhya Padiyar** is manager of clinical nutrition at Children's Healthcare of Atlanta, Inc., and at all times relevant was one of the decision makers with respect to the employment and termination of Jada Wright Nichols. Additionally, at all times relevant to this Complaint, Padiyar was the immediate supervisor of Plaintiff. Defendant may be served at her office at the CHOA's Egleston Hospital at 1405 Clifton Road, Atlanta, Georgia 30322.

## STATEMENT OF FACTS

26.

Plaintiff incorporates Paragraphs 1 through 25 by reference and incorporates said paragraphs herein as if they were a part hereof.

### A.    About Ms. Wright

27.

Plaintiff began working as a part-time employee of CHOA in April 2018 as a lactation consultant at CHOA's Egleston Hospital campus.

28.

CHOA controlled the terms and conditions of work hours and pay for Ms. Wright during her employment at CHOA as a lactation consultant.

29.

Ms. Wright did such a terrific job, and as a result helped the hospital improve its overall breast-feeding rate in the Neonatal Intensive Care Unit from 55 percent to approximately 90 percent that she was hired on fulltime in in February 2019.

30.

During her tenure from 2019 through 2021 Ms. Wright began recognizing and voicing concern about disparate treatment of African-American employees and how Black employees were being verbally abused by supervisors at CHLOA, especially by Defendant Padiyar.

31.

Even amid tough conditions of employment, Ms. Wright maintained a 90-percent range breast-feeding rate in addition to increasing the rate in the Cardiac Intensive Care Unit as well;  this outstanding professional leadership, even under tortuous conditions, helped CHOA yield national acclaim—being

recognized by *U.S. News & World Report* as having one of the top 20 Neonatal Intensive Care Units in the United States.

32.

Notably, Ms. Wright in her own right was recognized as many as five times as one of CHOA's top employees for her individual performance—earning the high honor of the company's "Catch Me At My Best" award for outstanding employee performance. The award is nominated by peers and/or patients' family members.

33.

Ms. Wright accomplished and earned accolades even while for much of the time of her full-time employment she worked in a hostile and understaffed work environment.

34.

Ms. Wright was the only full-time lactation consultant at Egleston Hospital—managing and caring for a patient load that ranged from 75 to 90 infants and toddlers week to week (and all in the midst of the coronavirus pandemic). **In comparison, at much of the same time at the Scottish Rite Hospital, there were more than the equivalent of three lactation consultants on staff with a smaller patient case load**, with patients that were not as acutely sick as those at Egleston Hospital.

**B**.    **Ms. Wright complains about racial disparities within CHOA**

35.

In the summer of 2020, the only help that Ms. Wright did have with her excessive patient load was a part-time technician.

36.

The technician also was an African-American woman. CHOA furloughed that technician in mid-2020.

37.

It was at that point that Ms. Wright could no longer constrain her concern over the inequality happening to her at Egleston, so, in July 2020, Ms. Wright wrote Defendant Timothy Stacy, the director of the Clinical Nutrition Department and copied her direct supervisor, Defendant Sandhya Padiyar, complaining of the discriminating practices.

38.

Similarly situated Caucasian lactation consultant employees at Scottish Rite did not have to suffer any furloughs or reduction of staff—again in the middle of the pandemic.

39.

Ms. Wright warned CHOA that the understaffing of the operation at Egleston Hospital, which was led by African Americans and also cares for more

African-American babies than Scottish Rite Hospital, was unsafe to the babies and other patients, was unethical and failed to provide the standard of care required of a children's hospital.

40.

Ms. Wright's complaint to Defendant Stacy fell on deaf ears and was ignored as there was no response to her complaints.

41.

Ms. Wright's immediate supervisor, Defendant Padiyar, did respond in anger that Ms. Wright would make a complaint of such magnitude in writing, and thereafter increased disparate treatment of Plaintiff, including finding every opportunity to discipline or malign Ms. Wright's performance—all aimed at plotting to terminate Plaintiff from her employment at CHOA.

**C.**   **Defendants racially discriminate against Ms. Wright**

42.

On or about after Ms. Wright sent the July 2020 complaint letter regarding the discrimination and racial disparities in staffing, her direct supervisor, Defendant Padiyar began using the time-honored technique in harassment and retaliation to build a "paper trail" to fire Ms. Wright.

43.

Ms. Wright who had received all sorts of accolades, including as many as five times the "Catch Me At My Best" award, no longer received any such accolades, even though the hospital's breast-feeding **rates under Ms. Wright still were hovering at 90 percent**.

44.

As a result of the high breast-feeding rates, the hospital and Emory University were able to improve their standing and secure millions of dollars in grants from the federal government.

45.

Defendant Padiyar "wrote up" or issued a written warning to Ms. Wright for allegedly not being compliant with CHOA's annual flu immunization, when actually Plaintiff did get the immunization shot from an outside pharmacy which was documented.

46.

Defendants accused Ms. Wright of "theft of time" by alleging that Plaintiff on several occasions failed to enter a Paid Time Off (PTO) time code while filling out her timesheet on days she allegedly did not work—when in actuality, (during the pandemic) Ms. Wright was working from home under an agreement by and between CHOA and her direct supervisor.

47.

Many CHOA employees were afforded a flexible, work-from-home schedule that was established for Ms. Wright at the beginning of her employment—in 2018—and used greatly during the pandemic.

48.

In addition to working from home, Ms. Wright even worked weekends and evening hours in the hospital building; in fact, when asked, early on at the outset of this pandemic-era workaround agreement how to document the coming in on weekends or evenings, Defendant Padiyar said: "don't worry about it, you're salary, I know you're doing your work, and nobody really cares."

49.

Ms. Padiyar displayed an ongoing bias against her African-American (Black) employees. She repeatedly called the Black women in her employ, dumb or lazy. She constantly berated them—and only them.

50.

On one occasion, Padiyar yelled at a Black nutrition technician so harshly that it made a resident physician, who happened to be in the office, so uncomfortable, that the physician stopped eating her lunch and left the area.

51.

What's more, most of the workers in the Clinical Nutrition Department became accustomed to these unlawful racially abusive rants and outbursts of Defendant Padiyar.

52.

Padiyar spoke negatively about the people in departments that are comprised of predominantly Black employees, such as environmental services (EVS), nutrition, and supply chain, also calling these African-American employees dumb, and lazy nitwits.

**D**.   **Ms. Wright complains of racial hostility toward African-American employees which leads to her dismissal just weeks later**

53.

In October 2021, Ms. Wright and other Black employees began to grow tired of what became over time constant humiliation and degradation by Defendants.

54.

Plaintiff formally complained about what Black employees perceived and believed was an ongoing racial bias by Defendant Padiyar against Ms. Wright and other Black employees.

55.

Padiyar repeatedly called the African-American women in her employ, dumb or lazy and she constantly berated them, **and only them**.

56.

Padiyar's verbal abuse and mistreatment was happening at the same time that the complaint(s) from Ms. Wright were brought to the attention of Defendant Timothy Stacy the Nutrition Department's director.

57.

Defendant Stacy never specifically addressed the complaints from Ms. Wright, nor offered any support, or inquired any further.

58.

Defendant Stacy referred the complaints from Ms. Wright to Tammy Reynolds, the hospital's human resources representative.

59.

The process that the CHOA Human Resources Department representative told Ms. Wright would take place as a result of her complaints never occurred.

60.

There was an immediate and absolute ramping up of abuse and hostility, during the three weeks between the reporting and Ms. Wright's termination.

61.

The workplace at Egleston under Padiyar became a dreaded, isolated, and impossible workspace for African Americans.

62.

On or about November 21, 2021, Defendants completed their scheme and terminated Ms. Wright, which she believes was because she participated in a protective activity under federal law.

**E.    Ms. Wright files her EEOC Complaint for racial discrimination and retaliation**

63.

Similarly situated Caucasian colleagues received different treatment at CHOA, including but not limited to better staffing for White employees compared to the African-American staff members; suffering racial discrimination and verbal abuse that created a hostile work environment which was cultivated and condoned by Defendants.

64.

CHOA was put on notice by Plaintiff of the discrimination and retaliation multiple times by Plaintiff; and then Ms. Wright's employment was terminated in November 2021.

65.

CHOA's firing of Ms. Wright caused her to lose her main source of income for her and her family's livelihood even as the country was still trying to combat and survive the coronavirus pandemic.

66.

Ms. Wright—fearing and believing that she had been targeted, discriminated against and retaliated against based on her race—filed a Charge of Discrimination with the EEOC, on or about February 7, 2022.

67.

The EEOC conducted a federal investigation and also recommended that CHOA and Ms. Wright hold mediation to resolve the matter.

68.

CHOA refused to mediate with Ms. Wright.

69.

One year later—to the day— after Ms. Wright had filed a charge with the EEOC, on February 7, 2023, the U.S. Equal Employment Opportunity Commission ended its investigation and issued Jada Wright Nichols a NOTICE OF HER RIGHT TO SUE which was received by Ms. Wright on February 10, 2023.

## COUNT I
## DISCRIMINATION BASED ON RACE IN VIOLATION OF
## TITLE VII, 42 U.S.C. 2000 Et seq.
(Against Defendant Children's Healthcare of Atlanta, Inc.)

70.

Plaintiff fully incorporates the facts and assertions found in paragraphs 1-69, as if fully stated herein to support all allegations made in this Count.

71.

Based on the facts and assertions incorporated to support this Count, Defendants discriminated against Plaintiff based on her race by denying her equal staffing on the job that Ms. Wright's similarly situated Caucasian employees enjoyed, and as a result of Defendants' race-based discrimination Ms. Wright was effectively disparately treated in the workplace, making her job harder to perform compared to her White colleagues at Scottish Rite Hospital. Moreover, race was a motivating factor in regard to both the termination of Ms. Wright and forcing her to work understaffed.

72.

Because of Defendants race-based discrimination, Ms. Wright is entitled to all permissible damages under law.

## COUNT II
## RETALIATION BASED ON RACE IN VIOLATION OF
## TITLE VII,  42 U.S.C. 2000 Et seq.
(Against Defendant Children's Healthcare of Atlanta, Inc.)

73.

Plaintiff now fully incorporates the facts and assertions found in paragraphs 1-72, as if fully stated herein to support all allegations made in this Count.

74.

Based on the facts and assertions incorporated to support this Count, Defendants retaliated against Plaintiff based on her race by unfairly and unlawfully disciplining Ms. Wright and ultimately terminating her employment at CHOA because Ms. Wright consistently complained to her superiors about the gross disparities between Caucasian and African-American employees and the ongoing verbal abuse and racial discriminatory actions of the Defendants with respect to African-Americans in what was a hostile work environment.

75.

Because of Defendants race-based retaliation, Ms. Wright is entitled to all permissible damages under law, including equitable relief.

## COUNT III
## DISCRIMINATION AND RETALIATION BASED ON RACE
## IN VIOLATION OF  42 U.S.C. § 1981
(Against all Defendants)

76.

Plaintiff now fully incorporates the facts and assertions found in paragraphs 1-75, as if fully stated herein to support all allegations made in this Count.

77.

Based on the facts and assertions incorporated to support this Count, Defendants have intentionally discriminated and retaliated against Ms. Wright in direct violation of 42. U.S.C. § 1981, including in the form of disparate treatment, because of Ms. Wright's race and because of her known opposition to being subjected to race-based discrimination. Based on the facts and assertions incorporated to support this Count, Defendants' discrimination and retaliation caused Ms. Wright irreparable harm by unlawfully taking away her livelihood and any chance at being able to seek and obtain another salaried position at CHOA, an opportunity which is still enjoyed by Ms. Wright's similarly situated White colleagues who have not been disciplined the same as Ms. Wright for similar alleged infractions, and who have not been fired because of complaining about illegal discrimination or disparate treatment of members of a protected class participating in a protected activity.

## COUNT IV
## PUNITIVE DAMAGES

78.

Plaintiff now fully incorporates the facts and assertions found in paragraphs 1-77, as if fully stated herein to support all allegations made in this Count.

79.

Because the Defendants' unconstitutional conduct, individually and collectively, caused serious injury to Plaintiff and demonstrated deliberate indifference toward Plaintiff's constitutional right to be free, and enjoy all the privileges and immunities guaranteed to her as a U.S. citizen in the United States Constitution and applicable laws; and that the actions of Defendants were willful, wanton, and demonstrated that entire want of care which raises the presumption of a conscious indifference to consequences, consequently, Ms. Wright is entitled to punitive damages and a Judgment against Defendant of no less than three-million ($3,000,000) dollars, "to punish [Defendant's] reprehensible conduct and to deter its future occurrence," and because the facts herein evince that "the defendant acted, or failed to act, with the specific intent to cause harm" to Plaintiff and "by clear and convincing evidence that the defendant['s] actions showed willful misconduct and malice.

## COUNT V
## ATTORNEY FEES AND COSTS OF LITIGATION

80.

Plaintiff now fully incorporates the facts and assertions found in paragraphs 1-79, as if fully stated herein to support all allegations made in this Count.

81.

Due to Defendants' actions, bad faith and stubbornly litigious conduct, Plaintiff asks this Court to grant attorney fees, under 42 U.S.C. § 1988 and all other expenses she is entitled to recover under O.C.G.A. § 13-6-11, due to Defendant's causing Plaintiff unnecessary trouble and expense, for which she is entitled to attorney fees under all applicable laws.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Jada Wright Nichols respectfully prays and requests a trial by jury and judgment of this Honorable Court against Defendant as follows:

(a) The process issue and service be had on Defendant;

(b) That judgment be granted in favor of the Plaintiff against the Defendants, jointly and severally, for the injuries of Plaintiff;

(c) That Plaintiff recover all damages permissible by law, to include compensatory damages, punitive damages and special damages, including

lost income and future lost income, damages for her reduction in earning

capacity and other expenses in an amount not less ten-million dollars

($10,000,000);

(d) Plaintiff recovers all costs of litigation, including reasonable attorney fees;

(e) That a jury trial be had on all issues so triable; and

(f) That this Court enter and award such other and further relief to which

Plaintiff may be entitled as a matter of law or equity, or which the Court so

determines to be just and proper.

Respectfully submitted this 11th day of May 2023.

**/s/ MARIO WILLIAMS**
Mario Williams
Ga. Bar No. 235254

**HDR, LLC**
44 Broad Street NW Suite 200
Atlanta, GA 30303
P: 404-254-0442
mwilliams@hdrattorneys.com

**/s/ DAVID BETTS**
David Betts
Ga. Bar No. 055850

**BETTS & ASSOCIATES**
44 Broad Street NW Suite 200
Atlanta, GA 30303
P: 404-254-0442
davidbetts@bettslaw.net
***Counsel for Plaintiff***