# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| GLENDA HARRELSON, individually and on behalf of all similarly situated persons, | |
| Plaintiff, | Civil Action No. _____ |
| v. | |
| WONWON GROUP INC. d/b/a VOLCANO STEAK & SUSHI, | **JURY TRIAL DEMANDED** |
| Defendant. | |

## <u>COLLECTIVE ACTION COMPLAINT</u>

Plaintiff Glenda Harrelson brings this Collective Action Complaint on behalf of herself, and all others similarly situated, against Defendant Wonwon Group Inc. d/b/a Volcano Steak & Sushi ("Volcano" or "Defendant"), alleging systemic violations of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* ("FLSA"). Plaintiff's Consent to Join is attached hereto as Exhibit A. Plaintiff shows the Court as follows:

## INTRODUCTION AND NATURE OF THE ACTION

1.      Defendant willfully violated the FLSA in the following ways with respect to Plaintiff and those similarly situated:

> a.      Defendant, as a regular and routine practice, required Plaintiff and those similarly situated to work in excess of forty (40) hours per workweek, without paying them at a rate of one-and-one-half their regular rate of pay for all hours worked in excess of 40 instead paying them a straight time subminimum wage for all hours worked in violation of the FLSA.

> b.      Defendant, as a regular and routine practice, required Plaintiff and those similarly situated to: (i) spend time on work "directly supporting" tips for continuous periods of time exceeding thirty (30) minutes while taking a tip credit for that work time; and/or (ii) spend time performing work not part of the tipped occupation while taking a tip credit for that work time.  Defendant violated the FLSA by taking a tip credit against its minimum wage obligations for time (i) Plaintiff and those similarly situated performed work "directly supporting" tips in excess of thirty (30) continuous minutes, and/or (ii) Plaintiff and those similarly

situated performed work that was not part of the tipped occupation.

c.   Defendant, as a regular and routine practice, required Plaintiff and those similarly situated to "tip out" fifty (50) percent or thirty (30) percent of their tips, depending on whether they were working in the hibachi area or dining room, respectively.  On information and belief, a substantial percentage of Plaintiff's tips were retained by Defendant and/or converted to management and/or employees who did not customarily and regularly receive tips.

d.   Defendant, as a regular and routine practice, failed to provide Plaintiff and those similarly situated with a disclosure compliant with 29 C.F.R. §§ 531.54 and 531.59(b), which require Defendant, in advance of taking a tip credit, to inform employees: (i) of the amount of the cash wage to be paid by the employer to the tipped employee; (ii) of the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer, which amount may not exceed the value of the tips actually received by the

3

employee; (iii) that all tips received by the employee must be retained by the employee, except for tips contributed to a valid tip pool limited to employees who customarily and regularly receive tips; (iv) that the tip credit shall not apply to any employee who has not been informed by the employer of the provisions for a tip credit; and (v) for employers that require tip pools, any required tip-pool contribution amount.   As a consequence, Defendant violated the FLSA by taking a tip credit against Defendant's minimum wage obligations.

2.      Pursuant to the FLSA, Defendant is liable to Plaintiff, and those similarly situated, for unlawfully withheld tips, unpaid minimum wages, unpaid overtime wages, liquidated damages, interest, and reasonable attorneys' fees and costs.

## **JURISDICTION AND VENUE**

3.      Pursuant to 28 U.S.C. § 1331 and § 1343, this Court has federal question jurisdiction over the individual and collective FLSA claims.

4.      Pursuant to 28 U.S.C. § 1391 and Local Rule 3.1(B), venue is proper in this Court because the majority of the unlawful employment practices described

herein were committed within the Atlanta Division of the Northern District of Georgia.

## **PARTIES**

5.      Plaintiff is a resident of the State of Georgia.

6.      Defendant owns and operates multiple restaurants with a steakhouse and sushi bar.

7.      Defendant employed Plaintiff from on or about July 1, 2022, until April 22, 2023.  At all relevant times, Plaintiff worked as a non-exempt employee in the position of Server.

8.      Defendant is a for-profit Georgia corporation with its principal place of business in Gwinnett County, Georgia, at 1600 Pleasant Hill Road, Duluth, Georgia 30096.

9.      Defendant may be served with process through its registered agent, Qin Shui Chen, at 152 Carroll Circle, Carrollton, Georgia 30117.

10.      Defendant is governed by and subject to 29 U.S.C. §§ 206 and 207.

11.      Defendant is governed by and subject to 29 U.S.C. § 203(m)(2)(B).

12.      At all relevant times, Defendant has been, and continues to be, an "employer" engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 201 *et seq.*

13.     At all relevant times, in the course of Defendant's business operations, Defendant's employees, including Plaintiff, have handled or otherwise used materials that have been moved or produced in interstate commerce.

14.     At all relevant times, Defendant has had two or more "employees engaged in commerce or in the production of goods for commerce," as defined in 29 U.S.C. § 203(s)(1)(A)(i).

15.     At all relevant times, Defendant has had two or more "employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A)(i).

16.     On information and belief, at all relevant times, Defendant has had an annual gross volume of sales or business done in excess of $500,000.

17.     At all relevant times, Defendant was an "employer" of Plaintiff and other similarly situated persons as that term is defined by 29 U.S.C. § 203(d).

## <u>COLLECTIVE ACTION ALLEGATIONS</u>

18.     Plaintiff brings this action on behalf of herself and all other similarly situated persons, pursuant to 29 U.S.C. § 216(b).

19.     Plaintiff seeks to represent the following two groups of similarly situated persons pursuant to 29 U.S.C. § 216(b):

6

a.   First, all persons who were, or are, employed by Defendant as Servers, or performing materially similar work as Servers, at any time within three years prior to the filing if this Complaint and who worked in excess of 40 hours per week and were not paid at an overtime rate of one-and-one half their regular rate of pay for all hours worked over 40, and were instead paid straight time at a subminimum wage for all hours worked (the "Overtime Collective").

b.   Second, all persons who were, or are, employed by Defendant as Servers, or performing materially similar work as Servers, at any time within three years prior to the filing of this Complaint (the "Minimum Wage and Tip Collective").

20.   The Overtime Collective and the Minimum Wage and Tip Collective are so numerous that joinder of all members is impracticable.  Although the precise number of such persons is unknown, and the facts upon which the calculation of that number is dependent are in the sole possession of Defendant, upon information and belief, there are more than 25 members in the Overtime Collective and the Minimum Wage and Tip Collective, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys, and/or knowledge of their claims.

21.   Plaintiff will fairly and adequately protect the interests of the members of the Overtime Collective and the Minimum Wage and Tip Collective and has

retained counsel who is experienced and competent in the fields of wage and hour law and collective action litigation.

22.     Questions of law and fact common to the members of the Overtime Collective and the Minimum Wage and Tip Collective predominate over questions that may affect only individual members because Defendant has acted on grounds generally applicable to all members of the Overtime Collective and the Minimum Wage and Tip Collective.

## STATEMENT OF FACTS

23.     Defendant operates multiple restaurants with a steakhouse and sushi bar.

24.     Defendant employed Plaintiff as a Server from on or about July 1, 2022, until April 22, 2023.

25.     Defendant employs, and has employed in the statutory period, a number of individuals as Servers, who they pay on an hourly basis and classify as non-exempt under the FLSA.

26.     Defendant pays its Servers at a subminimum wage rate of $4.00 per hour and claims a tip credit against minimum wage.

27.     As a Server, Plaintiff's job duties included, *inter alia*, waiting on tables, preparing food, and cleaning.

I.      **Failure to Pay Overtime Wages at the Required Rate in Violation of the FLSA**

28.     On information and belief, throughout the relevant time period, Defendant required Plaintiff and other Servers to work in excess of 40 hours per workweek.

29.     For example, Plaintiff typically worked five (5) to six (6) days per week throughout the entirety of her employment with Defendant, although there were several weeks in which she was required to work seven (7) days per week.

30.     Merely as examples, during the week of August 1, 2022, Plaintiff worked five days, totaling approximately 55 hours; during the week of October 3, 2022, Plaintiff worked five days totaling approximately 55 hours; during the week of January 2, 2023, Plaintiff worked six days, totaling approximately 61 hours; during the week of February 20, 2023, Plaintiff worked five days, totaling approximately 51 hours; during the week of March 27, 2023, Plaintiff worked six days, totaling approximately 61 hours; and during the week of April 10, 2023, Plaintiff was scheduled to work six consecutive days, totaling approximately 57 hours that week.  Plaintiff will be able to identify substantially more workweeks in discovery once Defendant's records are produced.

31.    Despite working substantial hours in excess of 40 each workweek, Defendant paid Plaintiff straight time at a subminimum wage for all hours worked regardless of the number of hours worked.

32.    Plaintiff's hourly rate of $4.00 per hour failed to compensate Plaintiff at the overtime rate of one-and-one half her regular rate of pay for any of the substantial overtime hours she worked during the relevant time period.

33.    Plaintiff and members of the Overtime Collective regularly worked in excess of 40 hours per workweek.

34.    On information and belief, Defendant paid other members of the Overtime Collective straight time at a subminimum wage for all hours worked regardless of the number of hours worked, including during weeks in which they worked in excess of 40 hours per workweek.

35.    Plaintiff and other Servers complained to Defendant's General Manager, David David, about Defendant's failure to pay them overtime wages at the appropriate rate mandated by the FLSA for time worked in excess of 40 per week.

36.    When Servers complained and/or inquired about why Defendant only paid them straight time for all hours worked, management, and in particular Mr. David David, would (1) become noticeably upset; (2) inform employees that if they did not like the manner in which Defendant compensated employees, that they could

quit; (3) reduce employee hours and/or refuse to provide Servers with a schedule for the following week; (4) threaten termination; and/or (5) threaten to report allegedly undocumented employees to immigration authorities.

37.  Defendant knew or should have known that Plaintiff and members of the Overtime Collective regularly worked in excess of 40 hours per workweek.

38.  Each and every week that Plaintiff and members of the Overtime Collective worked in excess of 40 hours per workweek, Defendant failed to pay them at the appropriate overtime rate for time worked in excess of 40 hours per week.

39.  Each and every week that Plaintiff worked in excess of 40 per workweek, which were the vast majority of her workweeks with Defendant, Defendant failed to pay her at the rate of one-and-one half her regular rate of pay for time worked in excess of 40 per workweek.

40.  Defendant regularly, and as a routine policy and practice, failed to pay and continues to fail to pay, Plaintiff and other members of the Overtime Collective at the overtime rate of one-and-one half their regular rate of pay for all hours worked in excess of 40 per workweek.

41.  On information and belief, Defendant's unlawful conduct described herein is pursuant to a policy or practice of minimizing labor costs by violating the FLSA.

42.     Defendant was, or should have been, aware that the FLSA requires it to pay non-exempt employees overtime wages at a rate of one-and-one-half their regular rate of pay for all time worked in excess of 40 hours per workweek.

## II.     "Directly Supporting" Work for Continuous Periods Exceeding Thirty (30) Minutes in Violation of the FLSA and/or Work Not Part of the Tipped Occupation

43.     In addition to Plaintiff's and other Servers' normal job duties in actively serving customers, they were also required to complete numerous pre-shift and post-shift closing duties.

44.     Defendant's hours of operation vary depending on the day of the week: at the restaurant at which Plaintiff worked, the schedule was as follows: (1) Monday through Thursday, Defendant was open for lunch from 11:30 am to 3:00 pm and for dinner from 4:30 pm to 10:00 pm; (2) on Friday, Defendant was open for lunch from 11:30 am to 3:00 pm and for dinner from 4:30 pm to 10:30 pm; and (3) on Saturday and Sunday, Defendant remained open throughout the day from 11:30 am to 11:00 pm.

45.     Plaintiff and other Servers who worked the lunch shift were required to report to work at 10:45 am to begin their pre-shift duties.

46.     Pre-shift lunch duties included: (1) cleaning the hibachi grills with soap and a towel; (2) cleaning the dining area by wiping down tables and chairs; (3) filling

soy sauce containers as needed; (4) cleaning and wiping down the bar area and chairs; (5) ensuring glasses and plates were clean and set out; (6) ensuring the patio area was clean; (7) rolling silverware; (8) placing plastic liners in garbage cans; and (9) placing napkins and silverware in the hibachi, dining, and bar areas.

47.   Additionally, pre-shift dinner duties included: preparing 10-15 salad trays, preparing soup bowls by adding ingredients such as onion leaves and miso to each bowl, preparing sweet tea, and ensuring glasses and other dishes were placed in the hibachi area (collectively with pre-shift lunch duties, the "Pre-Shift Duties").

48.   It took Plaintiff and other Servers approximately 45 minutes to complete their Pre-Shift Duties.

49.   At closing, Plaintiff and other Servers' duties included: dumping left over salad into a bucket; washing used salad trays; wiping down the refrigerator; sweeping the kitchen floor; sorting silverware; wiping and cleaning the server kitchen area; refilling juice; refilling green tea bags; wiping down and refilling salt and pepper shakers and the sugar caddies; restocking to-go stations; changing over the trash cans; returning all pitchers to the dishwasher; cleaning and refilling dressings; storing refrigerated items as needed, including sauces, lemons, cherries, and leftover soup; cleaning the hibachi and miso soup pots on evenings when there is no food runner working to do so; cleaning all server trays and shelves; cleaning

13

tea urns; wiping down beverage machines; refilling soy sauce containers; sweeping the hibachi floor if they were assigned to the hibachi area that evening; sweeping the dining room floor if they were assigned to the dining room that evening; and cleaning tables, including clearing plates and other dishes, when there was no busboy working to do so (collectively the "Closing Duties").

50.    It took Plaintiff and other Servers approximately 30 to 60 minutes to complete their Closing Duties.

51.    Further, throughout the relevant time period, Defendant implemented a system intended to punish Plaintiff and other Servers for tardiness.   More specifically, if Plaintiff and other Servers were late to their shifts, Defendant assigned them additional Pre-Shift and Closing Duties.   In fact, the schedule Defendant posted each week noted that if Plaintiff or other Servers were "10 minute[s] or more late," they would receive "3 side work," meaning that they would receive 2 additional tasks during Closing Duties.

52.    On days in which Plaintiff and other Servers were required to complete additional duties due to tardiness, it typically took them longer to complete their Closing Duties.

53.    When Plaintiff and other Servers spent more than 30 continuous minutes during pre-shift and post-shift periods on work "directly supporting" tips

14

and/or work that was not part of the tipped occupation, the FLSA prohibited Defendant from claiming a tip credit against their minimum wage obligations to Plaintiff and other Servers for such time.  Instead, Defendant was, and is, required to pay minimum wages for those hours worked in excess of 30 continuous minutes for work "directly supporting" tips and/or work that was not part of the tipped occupation.

54.     When Plaintiff and other Servers spent time performing work that is not part of the tipped occupation, the FLSA required Defendant to pay them full minimum wages for all such time worked.

### III.    Mandatory "Tip Out" in Violation of the FLSA

55.     Defendant regularly paid Plaintiff and other Servers a base subminimum wage of $4.00 per hour.

56.     In addition to the hourly wage, Plaintiff and other Servers received tips from Defendant's customers for their service.

57.     Of the tips they received, Plaintiff and other Servers were required to "tip out."  During this "tip out" process, Plaintiff and other Servers were required to "tip out" or surrender 50% of the tips they received while working in Defendant's hibachi area.  Additionally, Plaintiff and other Servers were required to "tip out" or surrender 30% of the tips they received while working in the dining room.

58.    Plaintiff and other Servers asked Defendant's management, including Mr. David David, about where the "tip out" amounts were being distributed; however,  Mr. David David refused to provide Plaintiff and other Servers with this information.

59.    On information and belief, a substantial percentage of Plaintiff's and other Servers' tips were retained by Defendant and/or converted to management and/or employees who did not customarily and regularly receive tips.

**IV.    Failure to Provide Tip Credit Notice in Violation of the FLSA**

60.    Throughout the relevant time period, Defendant did not provide Plaintiff and other Servers with a disclosure compliant with 29 C.F.R. §§ 531.54 and 531.59(b), which require Defendant, in advance of taking a tip credit, to inform employees: (i) of the amount of the cash wage to be paid by the employer to the tipped employee; (ii) of the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer, which amount may not exceed the value of the tips actually received by the employee; (iii) that all tips received by the employee must be retained by the employee, except for tips contributed to a valid tip pool limited to employees who customarily and regularly receive tips; (iv) that the tip credit shall not apply to any employee who

16

has not been informed by the employer of the provisions for a tip credit; and (v) for employers that require tip pools, any required tip-pool contribution amount.

61.     Due to Defendant's failure to provide notice, Defendant failed to meet the requirements of taking a tip credit under the FLSA for Plaintiff and other Servers. Accordingly, Defendant was obligated to pay Servers full minimum wage for all time worked up to 40 hours per week, and full overtime wages at the lawful rate for all time worked in excess of 40 hours per week.

### V.     Summary of FLSA Violations and Remedies

62.     As a consequence of the numerous violations set forth in this Collective Action Complaint, Defendant is liable to Plaintiff and all similarly situated individuals for: (1) the tips unlawfully withheld pursuant to the unlawful "tip out" process; (2) full minimum wages for all time worked; and (3) all unpaid overtime wages.  Defendant is additionally liable for an equal amount of liquidated damages, interest, and reasonable attorneys' fees and costs.

63.     On information and belief, Defendant's unlawful conduct described herein is pursuant to a policy or practice of minimizing labor costs by violating the FLSA.

64.     Defendant's unlawful withholding of tips from Plaintiff and other members of the Minimum Wage and Tip Collective was willful and was not in good faith.

65.     Defendant's FLSA violations were willful and were not in good faith.

## COUNT ONE
### (Individual FLSA Claim Asserted by Plaintiff Against Defendant)
### <u>Willful Failure to Pay Overtime Wages In Violation of the FLSA</u>

66.     At all relevant times, Defendant was, and continues to be, an employer engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 207.

67.     At all relevant times, Plaintiff was engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 207.

68.     On information and belief, at all relevant times, Defendant had gross annual revenues in excess of $500,000.

69.     At all relevant times, Defendant employed Plaintiff within the meaning of the FLSA.

70.     The overtime wage provisions set forth in the FLSA apply to Defendant and protect Plaintiff.

71.     The FLSA requires employers, such as Defendant, to compensate non-exempt employees, such as Plaintiff, at a rate of one-and-one half their regular rate of pay for all time worked in excess of 40 hours per week.

72.     Despite working substantial hours in excess of 40 each workweek, Defendant paid Plaintiff straight time at a subminimum wage for all hours worked regardless of the number of hours worked.

73.     Plaintiff's hourly rate of $4.00 per hour failed to compensate Plaintiff at the overtime rate of one-and-one half her regular rate of pay for any of the substantial overtime hours she worked during the relevant time period.

74.     Defendant regularly, and as a routine policy and practice, failed to pay Plaintiff overtime wages at one-and-one half her regular rate for all time worked in excess of 40 hours per week.

75.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).  Because Defendant's violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

76.     Defendant did not make a good faith effort to comply with the FLSA with respect to its compensation of Plaintiff.

77.     Due to Defendant's FLSA violations, Plaintiff is entitled to recover from Defendant her unpaid overtime wages for each workweek within the limitations period, an additional and equal amount of liquidated damages, interest, and reasonable attorneys' fees and costs of litigation.

**COUNT TWO**
**(Collective FLSA Claim Asserted Against Defendant)**
**Willful Failure to Pay Overtime Wages In Violation of the FLSA**

78.     Plaintiff seeks to represent the following collective group of employees:

> All persons who were, or are, employed by Defendant as Servers, or performing materially similar work as Servers, at any time within three years prior to the filing if this Complaint and who worked in excess of 40 hours per week and were not paid at an overtime rate of one-and-one half their regular rate of pay for all hours worked over 40, and were instead paid straight time at a subminimum wage for all hours worked.

This is the "Overtime Collective."

79.     At all relevant times, Defendant was, and continues to be, an employer engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 207.

80.     At all relevant times, Plaintiff and other members of the Overtime Collective were engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 207.

81.    On information and belief, at all relevant times, Defendant had gross annual revenues in excess of $500,000.

82.    At all relevant times, Defendant employed, and/or continues to employ, members of the Overtime Collective within the meaning of the FLSA.

83.    The overtime wage provisions set forth in the FLSA apply to Defendant and protect Plaintiff and other members of the Overtime Collective.

84.    Plaintiff and members of the Overtime Collective regularly worked in excess of 40 hours per workweek.

85.    On information and belief, Defendant paid Plaintiff and other members of the Overtime Collective straight time at a subminimum wage for all hours worked regardless of the number of hours worked, including during weeks in which they worked in excess of 40 per week.

86.    The FLSA requires employers, such as Defendant, to compensate non-exempt employees, such as Plaintiff and other members of the Overtime Collective, at a rate of one-and-one half their regular rate of pay for all time worked in excess of 40 hours per week.

87.    Defendant regularly, and as a routine policy and practice, failed to pay Plaintiff and other members of the Overtime Collective overtime wages at one-and-one half their regular rate for all time worked in excess of 40 hours per week, during

workweeks in which Plaintiff and other members of the Overtime Collective worked in excess of 40 hours and worked off the clock.

## COUNT THREE
**(Individual FLSA Claim Asserted by Plaintiff Against Defendant)**
**Willful Failure to Pay Minimum Wage In Violation of the FLSA**

88.     At all relevant times, Defendant was and continues to be, an employer engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 206.

89.     At all relevant times, Plaintiff was engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 206.

90.     On information and belief, at all relevant times, Defendant had gross annual revenues in excess of $500,000.

91.     At all relevant times, Defendant employed Plaintiff within the meaning of the FLSA.

92.     The minimum wage provisions set forth in the FLSA apply to Defendant and protect Plaintiff.

93.     The FLSA requires employers, such as Defendant, to minimally compensate employees, such as Plaintiff, at the federal minimum wage for each hour worked.

94.     Defendant engaged in a routine and widespread pattern, policy, and practice of violating the FLSA by requiring Plaintiff to "tip out" or surrender 50%

22

of her tips when she worked in Defendant's hibachi area, and 30% of her tips when she worked in the dining room.  On information and belief, Plaintiff's tips were retained by Defendant and/or converted to management and/or employees who did not customarily and regularly receive tips.  Defendant's unlawful practices thereby invalidated the tip credit it purported to take against its minimum wage payment obligations, requiring Defendant to pay Plaintiff at the federal minimum wage for all hours worked during the relevant time period.

95.     Defendant further engaged in a routine and widespread pattern, policy, and practice of violating the FLSA by requiring Plaintiff to spend more than 30 continuous minutes performing work "directly supporting" tips and/or work that was not part of the tipped occupation.   Defendant required Plaintiff to spend approximately 45 minutes on Pre-Shift Duties and approximately 30 to 60 minutes on Closing Duties, exceeding 30 continuous minutes performing work "directly supporting" tips and/or work that was not part of the tipped occupation.  The FLSA requires Defendant to pay Plaintiff at the federal minimum wage for time spent performing work "directly supporting" tips in excess of 30 minutes and/or work that was not part of the tipped occupation.

96.     Additionally, Defendant further failed to provide Plaintiff with a full disclosure compliant with 29 C.F.R. §§ 531.54 and 531.59(b).  In advance of taking

a tip credit, Defendant failed to inform Plaintiff that: (i) the amount of the cash wage to be paid by the employer to the tipped employee; (ii) the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer, which amount may not exceed the value of the tips actually received by the employee; (iii) that all tips received by the employee must be retained by the employee, except for tips contributed to a valid tip pool limited to employees who customarily and regularly receive tips; (iv) that the tip credit shall not apply to any employee who has not been informed by the employer of the provisions for a tip credit; and (v) for employers that require tip pools, any required tip-pool contribution amount.  As a consequence, Defendant violated the FLSA by taking a tip credit against Defendant's minimum wage obligations.

97.    Defendant is liable to Plaintiff for, *inter alia*, the full amount of minimum wage at a rate of $7.25 per hour for all hours worked during the statutory period.

98.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).  Because Defendant's violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

99.     Defendant did not make a good faith effort to comply with the FLSA with respect to its compensation of Plaintiff.

100.    Due to Defendant's FLSA violations, Plaintiff is entitled to recover from Defendant her full unpaid minimum wages for each workweek within the limitations period, an additional and equal amount of liquidated damages, interest, and reasonable attorneys' fees and costs of litigation.

**COUNT FOUR**
**(Collective FLSA Claim Asserted Against Defendant)**
**<u>Willful Failure to Pay Minimum Wage in Violation of the FLSA</u>**

101.    Plaintiff seeks to represent the following collective group of employees:

> All persons who were, or are, employed by Defendant as Servers, or performing materially similar work as Servers, at any time within three years prior to the filing of this Complaint.

This is the "Minimum Wage and Tip Collective."

102.    At all relevant times, Defendant was, and continues to be, an employer engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 206.

103.    At all relevant times, Plaintiff and other members of the Minimum Wage and Tip Collective were engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 206.

104.   On information and belief, at all relevant times, Defendant had gross annual revenues in excess of $500,000.

105.   At all relevant times, Defendant employed, and/or continues to employ, Plaintiff and members of the Minimum Wage and Tip Collective within the meaning of the FLSA.

106.   The minimum wage provisions set forth in the FLSA apply to Defendant and protect Plaintiff and other members of the Minimum Wage and Tip Collective.

107.   The FLSA requires employers, such as Defendant, to compensate non-exempt employees, such as Plaintiff and other members of the Minimum Wage and Tip Collective, at the federal minimum wage for each hour worked.

108.   Defendant engaged in a routine and widespread pattern, policy, and practice of violating the FLSA by requiring Plaintiff and other members of the Minimum Wage and Tip Collective to "tip out" or surrender 50% of their tips when they worked in Defendant's hibachi area, and 30% of their tips when they worked in the dining room.  On information and belief, Plaintiff and other members of the Minimum Wage and Tip Collectives' tips were retained by Defendant and/or converted to management and/or employees who did not customarily and regularly receive tips.  Defendant's unlawful practices thereby invalidated the tip credit they

purported to take against their minimum wage payment obligations, requiring Defendant to pay Plaintiff and other members of the Minimum Wage and Tip Collective at the federal minimum wage for all hours worked during the relevant time period.

109.   Defendant further engaged in a routine and widespread pattern, policy, and practice of violating the FLSA by requiring Plaintiff and other members of the Minimum Wage and Tip Collective to spend more than 30 continuous minutes performing work "directly supporting" tips and/or work that was not part of the tipped occupation.  Defendant required Plaintiff and other members of the Minimum Wage and Tip Collective to spend approximately 45 minutes on Pre-Shift Duties and 30 to 60 minutes on Closing Duties, exceeding 30 continuous minutes performing work "directly supporting" tips and/or work that was not part of the tipped occupation.  The FLSA requires Defendant to pay Plaintiff and other members of the Minimum Wage and Tip Collective at the federal minimum wage for time spent performing work "directly supporting" tips in excess of 30 minutes and/or work that was not part of the tipped occupation.

110.   Additionally, Defendant further failed to provide Plaintiff and other members of the Minimum Wage and Tip Collective with a full disclosure compliant with 29 C.F.R. §§ 531.54 and 531.59(b).  In advance of taking a tip credit, Defendant

failed to inform Plaintiff that: (i) the amount of the cash wage to be paid by the employer to the tipped employee; (ii) the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer, which amount may not exceed the value of the tips actually received by the employee; (iii) that all tips received by the employee must be retained by the employee, except for tips contributed to a valid tip pool limited to employees who customarily and regularly receive tips; (iv) that the tip credit shall not apply to any employee who has not been informed by the employer of the provisions for a tip credit; and (v) for employers that require tip pools, any required tip-pool contribution amount.  As a consequence, Defendant violated the FLSA by taking a tip credit against Defendant's minimum wage obligations.

111.   Defendant did not compensate Plaintiff and members of the Minimum Wage and Tip Collective at the minimum wage for all time worked during the relevant time period.

112.   The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).  Because Defendant's violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

113.   Defendant did not make a good faith effort to comply with the FLSA with respect to its compensation of Plaintiff and other members of the Minimum Wage and Tip Collective.

114.   Due to Defendant's FLSA violations, Plaintiff and other members of the Minimum Wage and Tip Collective are entitled to recover from Defendant their unpaid minimum wages for each workweek within the limitations period, an additional and equal amount of liquidated damages, interest, and reasonable attorneys' fees and costs of litigation.

**COUNT FIVE**
**(Individual FLSA Claim Asserted by Plaintiff Against Defendant)**
**<u>Unlawful Tip Withholding in Violation of the FLSA</u>**

115.   At all relevant times, Defendant was, and continues to be, an employer engaged in commerce within the meaning of the FLSA.

116.   At all relevant times, Plaintiff was engaged in commerce or in the production of goods for commerce within the meaning of the FLSA.

117.   On information and belief, at all relevant times, Defendant had gross annual revenues in excess of $500,000.

118.   At all relevant times, Defendant employed Plaintiff within the meaning of the FLSA.

119.   The tipped wage provisions set forth in the FLSA apply to Defendant and protect Plaintiff.

120.   The FLSA prohibits employers, such as Defendant, from retaining employee tips, regardless of whether or not the employer takes a tip credit.

121.   The FLSA prohibits employers, such as Defendant, who seek to take a tip credit, from distributing employees' tips to employees who do not customarily and regularly receive tips.

122.   Defendant engaged in a routine and widespread pattern, policy and practice of violating the FLSA by keeping tips from its employees in a manner not consistent with a valid tip pooling arrangement.

123.   In addition to the hourly wage, Plaintiff received tips from Defendant's customers for their service.

124.   Of the tips she received, Plaintiff was required to "tip out."  During this "tip out" process, Plaintiff was required to "tip out" or surrender 50% of the tips she received while working in Defendant's hibachi area.   Additionally, Plaintiff was required to "tip out" 30% of the tips she received while working in the dining room.

125.   On information and belief, Defendant unlawfully retained a portion of Plaintiff's tips.

126.   The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 203(m)(2)(B).   Because Defendant's violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

127.   Defendant did not make a good faith effort to comply with the FLSA with respect to their compensation of Plaintiff.

128.   Due to Defendant's FLSA violations, Plaintiff is entitled to recover from Defendant all tips unlawfully withheld, an additional equal amount as liquidated damages, interest, and attorneys' fees and costs.

**COUNT SIX**
**(Collective FLSA Claim Asserted Against Defendant)**
**<u>Unlawful Tip Withholding in Violation of the FLSA</u>**

129.   Plaintiff seeks to represent the following collective groups of employees:

> All persons who were, or are, employed by Defendant as Servers, or performing materially similar work as Servers, at any time within three years prior to the filing of this Complaint.

This is the "Minimum Wage and Tip Collective," coterminous with Count Four.

130.   At all relevant times, Defendant was, and continues to be, an employer engaged in commerce within the meaning of the FLSA.

131.   At all relevant times, Plaintiff and other members of the Minimum Wage and Tip Collective were engaged in commerce or in the production of goods for commerce within the meaning of the FLSA.

132.   On information and belief, at all relevant times, Defendant had gross annual revenues in excess of $500,000.

133.   At all relevant times, Defendant employed Plaintiff and other members of the Minimum Wage and Tip Collective within the meaning of the FLSA.

134.   The tipped wage provisions set forth in the FLSA apply to Defendant and protect Plaintiff and other members of the Minimum Wage and Tip Collective.

135.   The FLSA prohibits employers, such as Defendant, from retaining employee tips, regardless of whether or not the employer takes a tip credit.

136.   The FLSA prohibits employers, such as Defendant, who seek to take a tip credit, from distributing employees' tips to employees who do not customarily and regularly receive tips.

137.   Defendant engaged in a routine and widespread pattern, policy and practice of violating the FLSA by keeping tips from its employees in a manner not consistent with a valid tip pooling arrangement.

138.   In addition to the hourly wage, Plaintiff and other members of the Minimum Wage and Tip Collective received tips from Defendant's customers for their service.

139.   Of the tips they received, Plaintiff and other members of the Minimum Wage and Tip Collective were required to "tip out."  During this "tip out" process, Plaintiff and other members of the Minimum Wage and Tip Collective were required to "tip out" or surrender 50% of the tips they received while working in Defendant's hibachi area.  Additionally, Plaintiff and other members of the Minimum Wage and Tip Collective were required to "tip out" 30% of the tips they received while working in the dining room.

140.   On information and belief, Defendant unlawfully retained a portion of Plaintiff's and other members of the Minimum Wage and Tip Collectives' tips.

141.   The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 203(m)(2)(B).  Because Defendant's violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

142.   Defendant did not make a good faith effort to comply with the FLSA with respect to their compensation of Plaintiff and other members of the Minimum Wage and Tip Collective.

143.   Due to Defendant's FLSA violations, Plaintiff and other members of the Minimum Wage and Tip Collective are entitled to recover from Defendant all tips unlawfully withheld, an additional equal amount as liquidated damages, interest, and attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the Overtime Collective and the Minimum Wage and Tip Collective, demand a **TRIAL BY JURY** and request the following relief:

a)   Designation of this action as a collective action and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated persons in the Overtime Collective and the Minimum Wage and Tip Collective as defined herein, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Join pursuant to 29 U.S.C. § 216(b) and tolling of the statute of limitations;

b)   A declaratory judgment that Defendant's practices complained of herein are unlawful under the FLSA;

c)   An award of unpaid overtime wages due under the FLSA to Plaintiff and the Overtime Collective;

d)      An award of liquidated damages as a result of Defendant's failure to pay overtime wages to Plaintiff and the Overtime Collective;

e)      An award in the amount of the unlawfully withheld tips in violation of the FLSA to Plaintiff and the Minimum Wage and Tip Collective;

f)      An award of liquidated damages as a result of Defendant's unlawful withholding of tips to Plaintiff and the Minimum Wage and Tip Collective;

g)      An award of unpaid minimum wages due under the FLSA to Plaintiff and the Minimum Wage and Tip Collective;

h)      An award of liquidated damages as a result of Defendant's failure to pay minimum wages to Plaintiff and the Minimum Wage and Tip Collective;

i)      An award of prejudgment and post-judgment interest;

j)      An award of costs and expenses of this action, including reasonable attorneys' and expert fees and costs; and

k)      Such other further relief as the Court deems just and proper.

Dated this 11th day of May 2023.

Respectfully submitted,

*/s/ Justin M. Scott*
Justin M. Scott
Georgia Bar No. 557463
Tierra M. Monteiro
Georgia Bar No. 743224

35

SCOTT EMPLOYMENT LAW, P.C.
160 Clairemont Avenue, Suite 610
Decatur, Georgia 30030
Telephone: 678.780.4880
Facsimile: 478.575.2590
jscott@scottemploymentlaw.com
tmonteiro@scottemploymentlaw.com

Counsel for Plaintiff