# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# (ATLANTA DIVISION)

| | |
|---|---|
| BRIANNA L. COVERDALE,<br><br>             Plaintiff,<br><br>v.<br><br>FIRST ADVANTAGE<br>BACKGROUND SERVICES, CORP.,<br><br>             Defendant. | **Case No.:**<br><br>**COMPLAINT AND<br>DEMAND FOR JURY TRIAL**<br><br>   1. **FCRA, 15 USC § 1681** *et seq.* |

## COMPLAINT

Brianna Coverdale ("Plaintiff" or "Ms. Coverdale") by and through her counsel brings the following Complaint against First Advantage Background Services, Corporation ("Defendant" or "First Advantage") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of an employment background check report wherein Defendant published to Plaintiff's potential employer adverse information that falsely portrayed Plaintiff as a convicted felon for manslaughter and for possession of a firearm, as well as various misdemeanors, when Plaintiff has ***no*** criminal record and none of these crimes are attributable to her.

1

## INTRODUCTION

1.     This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2.     Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis.  It sells consumer reports generated from its database and furnishes these consumer reports to employers who use the reports to make decisions regarding whether to offer employment to certain consumers.

3.     Defendant falsely reported to Plaintiff's prospective employer that Plaintiff was convicted of felony possession of cocaine and misdemeanor possession of cannabis.  Defendant's reporting is grossly inaccurate and untrue.

4.     Plaintiff has never been charged with a crime in her life.

5.     Plaintiff's prospective employer ordered an employment purposed consumer report about Plaintiff from Defendant.  Plaintiff's prospective employer denied Plaintiff's job application after receiving a consumer report for employment purposes from Defendant, which included the inaccurate misdemeanor and felony convictions, which do not belong to Plaintiff.

6.     Defendant's inaccurate reporting could have easily been avoided had Defendant reviewed the widely available underlying public court records from

Delaware regarding the felony and misdemeanor convictions prior to publishing Plaintiff's report to her prospective employer.

7.     Had Defendant performed even a cursory review of the underlying public court records, it would have discovered that the criminal records belong to a different consumer, Plaintiff's male twin brother, who is wholly distinguishable from Plaintiff as a *male* with a *different first and middle name*, and a *different Social Security number*.

8.     Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

9.     Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking employment by prejudicing their prospective employers with inaccurate criminal record information.

10.     Defendant's inaccurate report cost Plaintiff a good paying job and job security.

11.     As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and

advancements in the future; loss of time and money trying to correct her background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

12.     As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA; and for failing to notify the consumer of the fact that public record information was being reported by it, together with the name and address of the person to whom such information was being reported, in violation of the FCRA, 15 U.S.C. § 1681k.

## **PARTIES**

13.     Brianna Coverdale ("Plaintiff" or "Ms. Coverdale") is a natural person residing in Wilmington, Delaware, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

14.     Defendant First Advantage Background Services, Corporation. ("First Advantage") is incorporated in Florida and its principal place of business is located at 1 Concourse Parkway NE, Suite 200, Atlanta, Georgia, 30328. First Advantage can be served through its registered agent, Corporation Service Company.

4

15. Among other things, Defendant sells background checks to employers for their use in deciding whether to offer employment to prospective employees or to take adverse action such as termination, failure to hire, or failure to promote. These reports are provided in connection with a business transaction initiated by the employer.

16. Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for employment purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## **JURISDICTION AND VENUE**

17. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

19.     Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing.   Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

20.     While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports.  15 U.S.C. § 1681.

21.     Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

22.     Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

## THE FCRA'S PROTECTIONS FOR JOB APPLICANTS

23.    Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates employment background check reports like the one Defendant prepared in Plaintiff's name.

24.    The FCRA provides several protections for job applicants who are the subject of background checks for purposes of securing employment, housing, and other purposes.

25.    In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like Defendant, are "consumer reporting agencies."  15 U.S.C. §§ 1681a(d) and (f).

26.    The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

27.    Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

28.    Under 15 U.S.C. § 1681k, consumer reporting agencies are required to "notify the consumer of the fact that public record information is being reported by

7

the consumer reporting agency, together with the name and address of the person to whom such information is being reported."

29.     Defendant disregarded its duties under the FCRA with respect to Plaintiff's background check report.

## DEFENDANT'S ILLEGAL BUSINESS PRACTICES

30.     Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data.  As a result of the increasing availability of this data, there has been a boom in the background check industry.

31.     As summarized in a recent report by the Consumer Financial Protection Bureau[1], a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening.  CFPB Report at 4.

32.     The criminal background check industry takes in revenues in excess of three billion dollars, annually.[2]

33.     Background checks are generally created by running automated searches through giant databases of aggregated public record data.  The reports are

---

[1] CFPB, Market Snapshot: Background Screening Reports (Oct. 2019), https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf  ("CFPB Report").

[2] IBISWorld, Inc., *Background Check Services in the US: Report Snapshot*, available at http://www.ibisworld.com/industry/background-check-services.html.

created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating background checks.

34.   Background check companies, like Defendant, collect millions of criminal records from many sources with data from county, state, and federal level sources.  The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

35.   Given that Defendant is in the business of selling background checks, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

36.   Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

37.   Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

38.   Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

39.   Appropriate quality control review of Plaintiff's report would have made clear that Defendant was reporting misdemeanor and felony convictions that belong to an unrelated consumer who has a different middle name and date of birth than Plaintiff.

40.   As a provider of background check reports, Defendant First Advantage should be aware of the FCRA requirements and is a member of the Professional Background Screening Association ("PBSA").  PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

## FACTS

### Plaintiff Applies for a Job with Federal Express

41.   On or about February 22, 2023, Plaintiff applied for a warehouse position with Federal Express ("FedEx").  Plaintiff already has a fulltime warehouse job but she applied to FedEx because she needed a second job and extra income because she is trying to save money so she can move into her own apartment for the first time.

42.   Upon applying to FedEx, Plaintiff successfully completed an interview and passed a drug test.

43.     On February 22, 2023, Plaintiff was offered a part-time position with Fed Ex at approximately $16.50-$17.00/hour. Plaintiff's offer was contingent upon a background check ("employment report").

**First Advantage Published an Inaccurate Background Check Report to FedEx**

44.     FedEx contracted with Defendant First Advantage to conduct background checks, including criminal background checks, on its prospective employees.

45.     On or about February 22, 2023, FedEx ordered a criminal background check on Plaintiff from Defendant First Advantage.

46.     On or about March 7, 2023, in accordance with its standard procedures, First Advantage completed its employment report about Plaintiff and sold the same to FedEx.

47.     Within that employment report, First Advantage published inaccurate information about Plaintiff.

48.     Specifically, Defendant's employment report about Plaintiff included two grossly inaccurate and stigmatizing misdemeanor and felony drug convictions from New Castle County, Delaware, which appeared in the employment report as follows:

Felony, Misdemeanor Or Other WILMINGTON, NEW CASTLE, DE

Status:  Complete
Score:  Decisional

Date Completed: 07/Mar/2023

| | |
|---|---|
| Record Source | NEW CASTLE COUNTY SUPERIOR AND COMMON PLEAS COURTS |
| Search Results | Record Found |
| Search Type | FELONY & MISDEMEANOR RECORD SEARCH |
| Date of Search | 24/Feb/2023 |
| Search Period | 02/08/2013 - 02/08/2023 |
| Address City Covered | WILMINGTON |
| Address County Covered | NEW CASTLE |
| Address State Covered | DE |
| Location | COUNTY COURTHOUSE WILMINGTON NEW CASTLE COUNTY |
| Given Name Searched | BRIANNA COVERDALE |
| Developed Name Searched | BRIANNA COVERDALE |

| | |
|---|---|
| Case Reference # | 2006004121 |
| Case Date | 30/Jul/2020 |
| Name on File | BRIAN L COVERDALE |
| Address on File | 1129 11TH ST., WILMINGTON, DE |
| DoB on File | XX/XX/XXXX |

12

| | |
|---|---|
| Charge | MANSLAUGHTER |
| Charge Type | FELONY |
| Disposition | GUILTY |
| Disposition Date | 15/Jul/2021 |
| Sentence | SENTENCE TERMS DRUG REHABILITATION EDUCATION FUND.; COSTS UNSPECIFIED / SUSPENDED; SENTENCE TERMS NO CONTACT VICTIM. COMPLETE DRUG AND ALCOHOL TREATMENT PROGRAM. COMPLETE PROGRAM OF INSTRUCTION. MENTAL HEALTH AND SUBSTANCE ABUSE EVALUATION AND RECOMMENDED TREATMENT.; PROBATION 2 YEARS; PRISON 20 YEARS / SUSPENDED 11 YEARS |
| Charge | DRIVING UNDER THE INFLUENCE OF ALCOHOL |
| Charge Type | MISDEMEANOR |
| Disposition | GUILTY |
| Disposition Date | 15/Jul/2021 |
| Sentence | VICTIM COMPENSATION FUND; FINE 500 |

| | |
|---|---|
| Case Reference # | 2003011608 |
| Case Date | 25/Mar/2020 |
| Name on File | BRIAN L COVERDALE |
| Address on File | 1129 11TH ST., WILMINGTON, DE |
| DoB on File | XX/XX/XXXX |
| Charge | POSSESS FIREARM DURING COMMISSION OF FELONY |
| Charge Type | FELONY |
| Disposition | GUILTY |
| Disposition Date | 15/Jul/2021 |
| Sentence | COSTS UNSPECIFIED / SUSPENDED; PRISON 3 YEARS |

| | |
|---|---|
| Case Reference # | 2005004222 |
| Case Date | 08/Jun/2020 |
| Name on File | BRIAN L COVERDALE |
| Address on File | 1129 11TH ST., WILMINGTON, DE |
| DoB on File | XX/XX/XXXX |
| Charge | POSSESSION OF MARIJUANA |
| Charge Type | MISDEMEANOR |

CID - 250142154

| | |
|---|---|
| Charge | FAIL TO OBEY EMERGENCY ORDER |
| Charge Type | MISDEMEANOR |
| Disposition | PENDING COURT DATE NOT AVAILABLE |
| Disposition Date | 23/Feb/2023 |
| Sentence | SENTENCE TERMS LAST COURT DATE WAS ON 02/23/2023 |
| Source Status History | |
| Status Date | Description |
| 22/Feb/2023 12:50:04 PM | Search in progress. Estimated completion by 02/24/2023 |

The criminal convictions reported by First Advantage about Plaintiff to FedEx **do not** belong to Plaintiff.

49.     Plaintiff has never been charged with or convicted of a crime in her life.

50.     A cursory review of the widely available underlying public court records confirms that the records belong to her twin brother, a male, Brian L. Coverdale ("Convicted Felon Coverdale").

51.     Had Defendant First Advantage actually consulted or obtained the widely available underlying public court records regarding the convictions, it would have seen obvious discrepancies between her brother and Plaintiff.

52.     The discrepancies that should have caused Defendant to realize Plaintiff is not the same person as Convicted Felon Coverdale include the following:

(a)     Plaintiff's legal name is Brianna Leigh Coverdale and the criminal records belong to Brian Lee Coverdale, listed as "Brian L. Coverdale" and clearly indicated on the face of the

14

employment report and in the widely available public records
from New Castle County, Delaware;

(b)     Plaintiff is a female and her brother is a male;

(c)     Plaintiff's Social Security number, which was provided to
Defendant is contained on the face of the subject employment
report is entirely different than that of her brother.

53.    The sole reason the inaccurate criminal records were reported as
belonging to Plaintiff was that Defendant failed to follow reasonable procedures to
assure the maximum possible accuracy of the information it published within the
employment report it sold about Plaintiff to Plaintiff's prospective employer.

54.    Defendant failed to use strict procedures to ensure its report about
Plaintiff contained information that was complete and up to date.

55.    Had Defendant followed reasonable procedures, it would have
discovered that the inaccurate, stigmatizing criminal convictions belong to an
entirely different person than Plaintiff, with a different gender than Plaintiff, a
different first and middle name than Plaintiff, and a different Social Security
Number.

56.    In preparing and selling a consumer report about Plaintiff, wherein
Defendant published to Plaintiff's prospective employer inaccurate information

about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

57.     The sole reason the adverse information that otherwise should have been excluded was included in the employment purposed consumer report was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the employment report it sold about Plaintiff to Plaintiff's current employer.

58.     Had Defendant followed reasonable procedures, it would have discovered that the suspension record was not a conviction record and antedated the report by more than seven years and accordingly, should not have been reported.

59.     In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's prospective employer adverse information that otherwise should have been excluded because it antedated the report by more than seven years, Defendant violated 15 U.S.C. § 1681c.

60.     Further, Plaintiff was not informed by Defendant First Advantage that it had provided the public record information likely to have an adverse impact on employment to Plaintiff's employer at the time the information was provided.

61.     Accordingly, Plaintiff was not afforded an opportunity to dispute and correct the inaccurate report *before* Defendant published the inaccurate report

containing the adverse information to Plaintiff's employer and before Plaintiff's employer made an adverse decision to terminate Plaintiff's employment.

62.     The FCRA has an employment-specific provision designed to address the very kind of harm that the Plaintiff suffered as a result of Defendant's conduct when public records are likely to have an adverse effect on employment, which is to either provide an immediate notice to the applicant at the time it published public records to the user of the report or it must maintain strict procedures to ensure the public record information is complete and up to date.

63.     Defendant violated 15 U.S.C. § 1681k(a) because it failed to comply with either subsection § 1681k(a)(1) by failing to notify Plaintiff that it had provided adverse public record information to Plaintiff's employer at the time it provided the public record information to Plaintiff's employer; or subsection § 1681k(a)(2) by failing to maintain strict procedures to ensure the adverse public record information it reported about Plaintiff was complete and up to date.

**FedEx Denies Plaintiff's Job Application**

64.    On or about March 8, 2023, **only one day after her report was completed**, Plaintiff was notified by FedEx that her employment application was denied as a direct result of the false criminal history reported by First Advantage.

65.    Plaintiff was not informed by Defendant First Advantage that it had provided the criminal public record information likely to have an adverse impact on employment and was not allowed an opportunity to dispute and correct the inaccurate information before FedEx made an adverse decision not to offer her employment.

66.    Shortly thereafter, Plaintiff obtained a copy of the subject employment report and was shocked and humiliated upon reviewing and realizing that the serious criminal convictions of her brother were published in the employment report Defendant sold about Plaintiff to FedEx.

67.    FedEx had made its decision to withdraw the employment offer before Plaintiff ever saw the inaccurate report.

68.    Plaintiff was very panicked, confused, and concerned about the impact of having someone else's criminal convictions reported on the subject employment report – specifically, the impact of the same on her future.

69.     Plaintiff is in nursing school and is worried about the impact of the false reporting on her prospects for employment and training.

70.     Specifically, Defendant First Advantage matched Plaintiff and her brother (with a different name, a different gender, and Social Security number) and published the criminal records of her twin brother onto the employment report about Plaintiff and sold that report to Plaintiff's prospective employer.  This exculpatory public record information was widely available to Defendant prior to publishing Plaintiff's employment report to FedEx, but Defendant failed to perform even a cursory review of such information.

## CLAIMS FOR RELIEF
### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy
### (Defendant First Advantage)

71.     Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

72.     Defendant First Advantage is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

73.     At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

74.    At all times pertinent hereto, the above-mentioned employment report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

75.    Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the employment report it sold about Plaintiff as well as the information it published within the same.

76.    As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct her background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

77.    Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

78.    Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT II**
**15 U.S.C. § 1681k(a)(1)**
**Failure to Provide "At the time" Notice**
**(Defendant First Advantage)**

79.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

80.    The FCRA imposes specific requirements on consumer reporting agencies, like Defendant, that sell and distribute a consumer report for employment purposes that include public records.

81.    Specifically, 15 U.S.C. § 1681k(a) requires that a consumer reporting agency which furnishes a consumer report for employment purposes and which for that purpose compiles and reports items of information on consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment shall (1) at the time such public record information is reported to the user of such consumer report, notify the consumer of the fact that public record information is being reported by the consumer reporting agency, together with the name and address of the person to whom such information is being reported; or (2) maintain strict procedures designed to insure that whenever public

21

record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date.  For purposes of this paragraph, items of public record relating to arrests, indictments, convictions, suits, tax liens, and outstanding judgments shall be considered up to date if the current public record status of the item at the time of the report is reported.

82.    Upon information and belief, Defendant First Advantage violated 15 U.S.C. § 1681k(a) because it failed to notify Plaintiff of the adverse public records information it had provided to FedEx at the time it provided her consumer report to FedEx, and it failed to maintain **strict** procedures to ensure the adverse information it reported about Plaintiff was complete and up to date.

83.    Defendant's consumer report about Plaintiff was furnished for employment purposes and contained one or more public records of the type that may adversely affect an employer's hiring decision.

84.    Plaintiff did not learn of the adverse information in Defendant's consumer report until after FedEx informed her of the adverse action.

85.    Plaintiff did not even know that Defendant First Advantage had provided a consumer report for employment purposes (which included adverse public records information) to FedEx until after FedEx had decided to rescind the job offer previously extended to Plaintiff.

22

86.     Defendant failed to comply with the rigors of 15 U.S.C. § 1681k(a)(2) and therefore must necessarily rely upon its compliance with § 1681k(a)(1).

87.     Upon information and belief, Defendant did not send to Plaintiff the requisite notice pursuant to 15 U.S.C. § 1681k(a)(1).

88.     Upon information and belief, Defendant did not itself or by its own court researchers or vendors attempt to verify the completeness or current status of the public records pursuant to 15 U.S.C. § 1681k(a)(2), within thirty days before it furnishes and resells these records in one of its reports.

89.     Defendant violated 15 U.S.C. § 1681k(a)(1) by failing to provide the required FCRA notices to Plaintiff.

90.     As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct her background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

91.    Defendant First Advantage willfully violated 15 U.S.C. § 1681k(a)(1) in that its conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

92.    Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i.    Determining that Defendant negligently and/or willfully violated the FCRA;

ii.    Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii.    Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv.    Granting further relief, in law or equity, as this Court may deem appropriate and just.

## **<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Respectfully submitted this 11th day of May 2023.

>*/s/Jenna Dakroub*
>Jenna Dakroub, GA #385021
>**CONSUMER ATTORNEYS**
>8245 N. 85th Way
>Scottsdale, AZ 85258
>T: (602) 807-1525
>F: (718) 715-1750
>E: jdakroub@consumerattorneys.com
>
>*Attorney for Plaintiff,*
>*Brianna L. Coverdale,*