IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| 1STWEST MERGERS & ACQUISITIONS LLC, | ) ) ) | CIVIL ACTION FILE NO: _____ |
| Plaintiff, | ) ) ) | JURY TRIAL DEMAND |
| v. | ) ) | |
| BARON REEVES, INC. F/K/A FOUNDERS KITCHEN & BATH, INC., | ) ) ) | |
| Defendant. _____ | ) ) | |

## COMPLAINT

Plaintiff 1stWEST Mergers & Acquisitions LLC ("1stWEST") submits this Complaint against Baron Reeves, Inc. f/k/a Founders Kitchen & Bath, Inc. ("Founders") and alleges as follows:

### THE PARTIES

1. Plaintiff 1stWEST is a Colorado limited liability company with its principal place of business at 2922 Evergreen Parkway, #B310, Evergreen, CO 80439.

2. 1stWEST has one member, Ted Rieple, who is a resident of the State of Colorado.

3. Defendant Founders is a Georgia corporation with its principal place of business at 1755 Founders Parkway, Alpharetta, GA 30009.

4. Founders may be served with process by and through its Registered Agent, Billy Reeves, Jr., located at 1755 Founders Parkway, Alpharetta, Georgia 30009.

5. Founders used to be known as "Founders Kitchen & Bath, Inc." On May 5, 2022, Founders changed its name to "Baron Reeves, Inc."

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction under 28 U.S.C. § 1332. The amount in controversy exceeds $75,000 and there is complete diversity between the parties.

7. This Court has personal jurisdiction over Founders because Founders' principal place of business is in the State of Georgia.

8. Venue is proper in this Court under 28 U.S.C. § 1391 because Founders resides within this judicial district and a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

**GENERAL ALLEGATIONS**

**I.   Founders entered into a written services agreement with 1stWEST.**

9.   1stWEST is a full-service investment banking and advisory firm. Among other services, 1stWEST works with its corporate clients to help them buy and sell businesses.

10.   While 1stWEST's team has experience across markets, it focuses on mergers and acquisitions with a sales price of $10 million to $200 million.

11.   In August 2017, 1stWEST and Founders entered into a written services agreement ("Agreement"), which is attached to this Complaint as Exhibit A.

12.   Pursuant to the Agreement, Founders engaged 1stWEST "to act as its financial advisor in connection with a possible Transaction" under which a third party would purchase Founders or some of its assets.

13.   The Agreement also provides that for the term of the Agreement, "1stWEST will be the exclusive representative of the Company with respect to finding and executing one or more Transactions."

14.   In exchange, Founders agreed to pay 1stWEST compensation for its services.

15. Along with a retainer, Founders promised to pay a "Transaction Fee." The Transaction Fee is calculated as a percentage of the total consideration paid to Founders in a Transaction.

16. The Agreement also includes a list of "Carved Out Companies," which are the companies with whom Founders had had previous negotiations. If the Transaction involved one of these Carved Out Companies, the Transaction Fee would be reduced by one-half.

17. The amount of the Transaction Fee is determined by the rate schedule set out below:

| Total Consideration Paid to Founders | Transaction Fee | Transaction Fee, Carved Out Company |
|---|---|---|
| Under $20M | 3.0% | 1.50% |
| $20M–$25M | 3.50% | 1.75% |
| $25M–$30M | 4.0% | 2.0% |
| $30M or more | 5.0% | 2.50% |

18. The Transaction Fee is "payable in full in cash upon the signing of the final, closing documents of the Transaction."

19. Founders also agreed to reimburse 1stWEST for reasonable expenses it incurred in connection with the Agreement, including but not limited to travel costs.

20. The initial term of the Agreement was "for a period of thirty (30) days," and after that, it "shall be automatically renewed for successive periods of thirty (30) days until terminated."

21. Any termination or other notice under the Agreement must be in writing.

22. If Founders were to terminate the Agreement, that termination "shall not affect 1stWEST's[] right to the Transaction Fee in the event a Transaction is consummated within twelve (12) months after termination of this Agreement with a party identified by 1stWEST during the term of this Agreement or where 1stWEST's work product was employed . . . ."

23. Finally, the Agreement includes a provision that if Founders does not pay the Transaction Fee "in full at closing to 1stWEST," then Founders must "pay attorney fees and other expenses reasonably incurred by 1stWEST in the collection of the Transaction Fee."

## II.  1stWEST performs services for Founders for years.

24. Once the parties executed the Agreement, 1stWEST immediately got to work searching for prospective suitors to purchase Founders or its assets.

25. Within a short period of time, 1stWEST contacted Ferguson Enterprises, LLC ("Ferguson") to gauge its interest in acquiring Founders.

26. In September 2017, 1stWEST introduced Ferguson to Founders' two co-owners, Billy Reeves, Jr. and Robbie Baron.

27. Ferguson expressed interest in a potential deal, and so 1stWEST worked with Ferguson to execute a confidentiality agreement that would allow 1stWEST to share Founders' sensitive business information.

28. 1stWEST then sent Ferguson confidential information that 1stWEST had prepared regarding the potential acquisition of Founders.

29. In late October 2017, 1stWEST organized and hosted an on-site meeting and dinner with representatives from 1stWEST, Ferguson, and Founders.

30. Soon after the meeting and dinner, a Ferguson representative called 1stWEST and said that Ferguson liked the Founders business, but that Billy Reeves was an obstacle to the deal's progression due to concerns about his behavior and inappropriate regalia in Reeves' office that Ferguson's lead representative believed would potentially open Ferguson up to future litigation by employees, and reputational risk to Ferguson.

31. After that, the conversation with Ferguson went dormant for some period of time.

32. Undeterred, 1stWEST continued to look for other potential buyers. Over the next six years, 1stWEST surfaced *twenty-six* separate prospective purchasers.

33. These twenty-six entities did not just express some interest in a deal; each one signed a confidentiality agreement and received a confidential memorandum and financial information about Founders (all prepared by 1stWEST).

34. In surfacing these twenty-six prospective purchasers, 1stWEST spent considerable resources—both time and money—in finding, traveling to, and negotiating a potential deal.

35. To date, Founders has never terminated or attempted to terminate the Agreement, in writing or otherwise.

**III.   Unbeknownst to 1stWEST, Founders negotiates a deal with Ferguson.**

36. In February 2023, 1stWEST called Robbie Barron—as 1stWEST had many times before—to alert him to another potential buyer who had expressed interest in a deal with Founders.

37. In that phone call, 1stWEST learned for the first time that Founders had already found a buyer and closed the Transaction.

38. 1stWEST learned some time later that the purchaser in the Transaction was Ferguson.

39. On information and belief, the Transaction involved at least $15,000,000 in total consideration paid to Founders.

40. On information and belief, Founders used 1stWEST's work product in its negotiations with Ferguson.

41. Ferguson is not one of the Carve Out Companies listed in the Agreement.

42. As a result, under the plain terms of the Agreement, 1stWEST is entitled to a Transaction Fee of at least $450,000.

43. Founders has never paid any portion of the Transaction Fee.

44. Founders has also never reimbursed 1stWEST for the reasonable expenses it incurred in providing services to Founders.

45. Since 1stWEST learned about the Transaction, it has incurred and continues to incur attorney fees and costs in trying to collect the Transaction Fee.

46. Founders has never paid any portion of those attorney fees and costs.

47. 1stWEST has repeatedly demanded that Founders remit the Transaction Fee, reimburse 1stWEST for its expenses, and cover 1stWEST's attorney fees. Founders has refused to do so.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

48. 1stWEST incorporates the allegations above as if fully set forth in this paragraph.

49. The Agreement is a binding and enforceable contract between the parties that is supported by adequate consideration.

50. 1stWEST fully performed all of its obligations under the Agreement.

51. Founders materially breached the Agreement by, among other things, (i) improperly using the work product prepared by 1stWEST to consummate the Transaction with Ferguson; (ii) violating the exclusivity provision by consummating a transaction for which 1stWEST was not the exclusive representative of Founders; (iii) not reimbursing 1stWEST for its reasonable expenses; (iv) not paying the Transaction Fee; and (v) not paying 1stWEST's reasonable attorney fees and costs incurred in recovering the Transaction Fee.

52. Founders has no adequate defense that would justify or excuse these breaches.

53. 1stWEST has suffered substantial damages that were directly and proximately caused by Founders' breaches.

54. Founders has acted in bad faith, been stubbornly litigious, and has caused 1stWEST unnecessary trouble and expense. Therefore, in addition to being

entitled to recover its attorneys' fees and costs under the Agreement, Founders is entitled to an award of its attorneys' fees and the costs of this litigation pursuant to O.C.G.A. § 13-6-11.

### PRAYER FOR RELIEF

WHEREFORE, 1stWEST requests that the Court enter a judgment in its favor and against Founders as follows:

A. Damages in an amount to be determined at trial;

B. 1stWEST's reasonable attorney fees and costs that it has incurred in this matter;

C. Prejudgment interest; and

D. All other relief that this Court deems just and proper.

### JURY DEMAND

1stWEST hereby demands a trial by jury of all issues so triable.

DATE: May 12, 2023

                                                            BERMAN FINK VAN HORN P.C.

                                        By:   */s/ Neal F. Weinrich*
                                                      Neal F. Weinrich, Esq.
                                                      Georgia Bar No. 294586
                                                      nweinrich@bfvlaw.com
                                                      3475 Piedmont Road, NE

Suite 1640
Atlanta, Georgia 30305
(404) 261-7711
(404) 233-1943 (Facsimile)


HOLLAND & HART LLP

Christopher M. Jackson
(*Motion for Admission Pro Hac Vice to be filed*)
555 17th Street, Suite 3200
Denver, Colorado 80202
(303) 295-8000
(303) 295-8261 (Facsimile)
CMJackson@hollandhart.com
*Attorneys for Plaintiff*